## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES                           CIVIL ACTION
CONSOLIDATED LITIGATION

                                                        NO. 05-4182

PERTAINS TO:  LEVEE AND MRGO                      SECTION "K"(2)
MASTER CONSOLIDATED CLASS ACTION COMPLAINTS

### ORDER

Before the Court is a Motion to Strike Admiralty Claims Against the United States (Doc. 5855) in which the United States of America and the United States Army Corps of Engineers ("the United States" or "the Government") move to strike, for lack of subject matter jurisdiction, all admiralty claims set forth in the MRGO Master Consolidated Class Action Complaint (Doc. 3415) ("MRGO Master Complaint") and the Superseding Master Consolidated Class Action Complaint (Doc. 3420) ("Levee Master Complaint").  These cases arise out of damages caused by the breaches of various floodwalls and levees  and overtopping of other levees as a result of Hurricane Katrina.  Plaintiffs have sued a number of defendants, including the Government for damages.

Plaintiffs have brought these class actions against the United States alleging jurisdiction based on 28 U.S.C. § 1346(b) (United States as defendant) and 28 U.S.C. § 2671, *et seq*. (Federal Tort Claims Act) ("FTCA"), 28 U.S.C. §1332(d)(2) as amended by the Class Action Fairness Act of 2005 ("CAFA").    Alternatively, plaintiffs  have alleged claims against the United States pursuant to Admiralty Extension Act, ("AEA"), 46 U.S.C. §30101 (formerly 46 U.S.C. app. § 740),  the Suits in Admiralty Act ("SAA"), 46 U.S.C. § 30901-30918 (formerly 46 U.S.C. app. §

741-52),  and the Public Vessels Act ("PVA"), 46 U.S.C. § 31101-31113 (formerly 46 U.S.C. app. § 781-90).[1]

This alternative pleading is necessitated by the fact that claims brought under the FTCA, which essentially provides a vehicle for suit against the United States for a state law based tort claim,  cannot be brought under the SAA/PVA/AEA, which provide for the prosecution of admiralty claims against the United States, or in the instance of the AEA, claims which arise by virtue of vessel negligence the effects of which are felt on land.   In other words, the FTCA and the SAA/PVA/AEA statutory schemes are mutually exclusive.  As a further complication, the requirements for filing suit and the applicable statute of limitations are different for both schemes and where a litigant is unaware, these differences can lead to a claim being barred for his or her failure to act in accordance with the proper statute's filing requirements.

The Government seeks to strike the admiralty claims as being immaterial based on the fact that plaintiffs' claims have no basis in admiralty law, whereas there is a basis for the claims under the FTCA.   For the reasons that follow, the Court finds merit in this motion.

## I.      Standard to Apply

The Government seeks to strike paragraphs 9 and 10 of the Master Levee Complaint and paragraph 1(d) of the Master MRGO Complaint where the allegations of admiralty jurisdiction can be found.  The Government maintains that this action is appropriate under Fed. R.Civ. P.

---

[1]The Court has previously dismissed claims arising under the Water Pollution Control Act, 33 U.S.C. §§ 125, *et seq. See In re Katrina Canal Breaches Consolidated* Litigation, 2007 WL 763742 (E.D.La. March 9, 2007)(plaintiffs conceded that there was no private cause of action for purposes of that motion); *Berthelot v. Boh Bros. Const. Co., L.L.C.*, 2006 WL 2256996 (E.D. La. July 19, 2006) (WPCA addresses on-going pollution concerns, not the alleged results of catastrophic flooding).  The Court re-iterates these reasons herein and will not address that statute herein.

12(f) which allows the Court to strike immaterial matter.  As noted, it reasons that because there is no basis for admiralty jurisdiction for these claims as contemplated under Rule 12(b)(1), these allegations should be stricken.  In addition, the Government has stated that if the Court deems it more appropriate to address the issue of admiralty jurisdiction under Fed. R. Civ. P. 12(b)(1) or (6), it has no objection thereto.

As stated in *Doe v. Roman Catholic diocese of Galveston-Houston*, 2006 WL 2413721 (S.D.Tex. Aug. 18, 2006):

> A motion to strike material from a pleading is made under Rule 12(f). It allows a court to strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." A Rule 12(f) motion is not a motion to dismiss for failure to state a claim upon which relief may be granted. If it does not involve a purportedly insufficient defense, it simply tests whether a pleading contains inappropriate material. When a Rule 12(f) motion to strike challenges the sufficiency of an affirmative defense, the standards for a Rule 12(f) motion to strike and a Rule 12(b)(6) motion to dismiss are "mirror image[s.]" *Canadian St. Regis Band of Mohawk Indians v. New York*, 278 F.Supp.2d 313, 332 (N.D.N.Y.2003) (internal quotation marks and citations omitted); *see also Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1351, 1358 (5th Cir.1983); *Siemens Med. Solutions USA, Inc. v. Sunrise Med. Tech., Inc.*, No. Civ. 3:04-CV-2711-H, 2005 WL 615747, *5 (N.D.Tex. Mar. 16, 2005).
>
> The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Because of "the limited importance of pleadings in federal practice," motions to strike pursuant to Rule 12(f) are disfavored. *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D.Cal.1996).

*Id.* at *2.  Nonetheless, such a motion's efficacy was recognized in *Smith v. Sentry Ins.*, 1986 WL 443 (N.D.Ga. Sept. 19, 1986).

There, in a Age Discrimination in Employment Act ("ADEA") suit, the court had before it a motion to strike jurisdictional allegations which did not properly support the ADEA claim. Jurisdiction there was properly based on 28 U.S.C. § 1337.  As such, allegations of jurisdiction

3

based on § 1331 (federal question jurisdiction), 1332 (diversity) and 1343 (require action under color of state law) were inapplicable.  Defendants had moved pursuant to Rule 12(b)(6) to strike "claims."  However, the Court in agreeing that these inapplicable bases should be stricken stated:

> Although the court is in full agreement with defendants' observations, there is no motion sanctioned by the Federal Rules which contemplates dismissal of jurisdictional allegations. Such a motion is not, like the previous motions discussed, a Rule 12(b)(6) motion for failure to state a claim because these allegations do not purport to state a claim. They only purport to provide a basis for this court's subject matter jurisdiction. Nor is this motion a motion for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). It is clear that this court has subject matter jurisdiction over this action pursuant to the Age Discrimination in Employment Act. 29 U.S.C. § 626. Defendants' motion is really a motion to strike. Fed.R.Civ.P. 12(f).

*Id. at* *2.  For those reasons, the court granted the motion finding the jurisdictional allegations as

immaterial.

Thus, in order to rule on this motion, the Court must examine the statutes invoked and determine whether there is any claim stated against the United States that properly arises under admiralty jurisdiction or whether these claims against the Government arise under the FTCA.

## II.      The Statutes Invoked

### A.      The FTCA

The FTCA is a limited waiver of sovereign immunity that subjects the United States to liability to the same extent as a private party for personal injury or property loss caused by the negligence of its employees in the course and scope of their employment.  *Tindall by Tindall v. United States*, 901 F.2d 53, 55 (5th Cir. 1990).  The law of the state where the negligent act or

omission occurs determines its liability, although it is not subject to liability under theories of strict liability.  *Id.*

> Specifically, section 1346(b) provides that federal district courts:
>
> have exclusive jurisdiction of civil actions on claims against the United States for money damages, . . . for injury or loss of property, or personal injury or death cased by the negligent or wrongful act of commission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the Untied States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).


> **B.     SAA/PVA**

There are only two specific waivers of the Government's sovereign immunity in the context of admiralty jurisdiction. These are the afore-mentioned Suits in Admiralty Act and the Public Vessels Act.

> The Suits in Admiralty Act provides:
>
> In a case in which, if **a vessel were privately owned** or operated, or if cargo were privately owned or possessed, or **if a private person or property** were involved, a civil action in admiralty could be maintained, a civil action in admiralty in personam may be brought against the United States or a federally-owned corporation.

46 U.S.C. § 30903 (formerly §742).  This remedy is exclusive of any other action arising out of the same subject matter against the officer, employee or agent of the United States. 46 U.S.C. § 30904.  The purpose of this statute was "to prevent the possibility of the seizure or arrest of U.S. vessels, which provide valuable national services in time of both war and peace, and to allow a remedy to be sought *in personam*." Robert Force,  *FJC: Admiralty & Maritime Law*  189-2.

5

Initially, the SAA permitted a suit against the Government in cases involving Government merchant vessels and Government cargoes "in cases where if such vessel were privately owned or operated, or if such cargo were privately owned and possessed, a proceeding in admiralty could be maintained." *DeBardeleben marine Corp. v. United States*, 451 F.2d 140, 143 (5th Cir. 1971).  However, because of gross confusion arising out of an overlap with the SAA and another statute, the Tucker Act, Congress in 1960 amended the SAA.

At that time, the phrase "if a private person or property were involved"  was added to the first sentence of the statute.  *Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir. 1989).  The Fifth Circuit has concluded that this amendment was "'intended to bring all admiralty claims against the United States within the ambit of the [Suits in Admiralty Act], whether or not involving government cargoes of vessel(s).'" *Id.*  at 1062 *citing, inter alia,  Trautman v. Buck Steber, Inc.*, 693 F.2d 440, 445 (5th Cir. 1982).   Thus, "if a proceeding in admiralty could be asserted against a private person in the Government's position, then the suits in Admiralty Act will provide a jurisdictional hook on which to hang a claim against the Government." *Id.*

The Public Vessels Act provides:

> (a) In general.–a civil action in personam in admiralty may be brought , or an impleader filed, against the United States for–
> (1) **damages caused by a public vessel** of the United States; or
> (2) compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States.

46 U.S.C. 31102 (emphasis added).  This statute was enacted to fill a gap caused by an anomaly in the SAA–that is to prevent the seizure of public vessels such as warships, that had been excluded from the SAA. In 1960,  Congress tried to alleviate confusion that had arisen as to the applicability of each act to different types of vessel–that is the difference between "public

vessels" and "merchant vessels".  As a result of the amendments, the SAA became applicable on

its face to public vessels, but Congress did not repeal the PVA.  Thomas J. Schoenbaum,

*Admiralty and Maritime Law*, §20-1 at 372.  As such, each act operates as a waiver of sovereign

immunity of the United States in admiralty cases, essentially providing a "jurisdictional hook"

upon which **to hang a traditional admiralty claim.**  *Stiward v. United States,* 2005 WL

3543736, * (E.D. La. October 13, 2005) (Duval, J.) *citing William v. Central Gulf Line*, 874 F.2d

1058, 1059 (5th Cir. 1989) (emphasis added).


### C.      The AEA

The third statute concerning maritime jurisdiction invoked by plaintiffs is the Admiralty

Extension Act ("AEA"), which provides:

> (a) **In general**.–the admiralty and maritime jurisdiction of the United States
> extends to and includes cases of injury or damage, to persons or property, caused by a
> vessel on navigable waters, even though the injury or damage is done or consummated on
> land.
> (b)**Procedure.**–A civil action in a case under subsection (a) may be brought in
> rem or in personam according to the principles of law and the rules of practice applicable
> in cases whether the injury or damage has been done and consummated on navigable
> waters.
> (c)**Actions against United States.**–
>
> (1) **Exclusive remedy**.–In a civil action against the United States for injury or
> damage done or consummated on land by a vessel on navigable waters, chapter 309
> [SAA] or 311 [PVA] of this title, as appropriate, provides the exclusive remedy.
>
> (2)**Administrative claim**.–A civil action described in paragraph (1) may not be
> brought until the expiration or the 6-month period after the claim has been presented in
> writing to the agency owning or operating the vessel causing the injury or damage.

46 U.S.C. 30101.  With the passage of the AEA, Congress extended admiralty and maritime

jurisdiction  through subsection (a) and (b) to include all cases of damage or injury, to persons or

property, caused by a vessel on navigable water, where such damage or injury is actually done or consummated on land.

Subsection (c) clearly establishes the waivers to sovereign immunity contemplated in the SAA and PVA apply equally "for injury or damage done or consummated on land by a vessel on navigable waters." Furthermore, there are specific procedures and administrative processes set forth in the AEA for the prosecution of a claim against the United States thereunder. The remedies are exclusive and subject to the six-month expiration period from the filing of the claim with the proper agency. 46 U.S.C. § 30101(c)(2).

### a.      Requirement of Vessel Action

The Fifth Circuit has interpreted this statute to require for a suit to lie under the AEA that the injury be caused "by a vessel." The Fifth Circuit noted that the AEA by its express terms so states. In *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey*, 183 F.3d 453, 456 (5th Cir. 1999), the plaintiffs, who were attorneys, sought to enforce a contract for attorneys' fees for work they had done in pursuing a suit for back wages and penalty wages. They invoked admiralty jurisdiction. The court first found that in a suit for tortious interference with the contract, the impact of the tort would not be on navigable waters, so it had to examine the plaintiffs' contention that the AEA applied to extend the admiralty jurisdiction since plaintiffs suffered an injury on land that was caused by a vessel on navigable water. The Court rejected this argument. It stated:

> "the Supreme Court has clearly indicated that the Act means the vessel and her appurtenances, and does not include those performing actions for the vessel. *See Victory Carriers, Inc. v. Law*, 404 U.S. 202, 210-12, 92 S. Ct. 418, 30 L.Ed.2d 383 (1971) (clarifying that jurisdiction in *Guitierrez* [*v. Waterman S.S. Corp.*],

8

> turned solely on the fact that the injury was caused by an appurtenance of the
> ship.  Because the complained of conduct was not caused by the vessel itself or its
> appurtenances, appellants' claims do not fall under the ambit of [the AEA.]

*Id.*

More recently, in *Dahlen v. Gulf Crews, Inc.*, 281 F.3d 487 (5th Cir. 2002), the Fifth

Circuit reiterated, "In order to invoke maritime jurisdiction under the Extension Act, a plaintiff

injured on shore must allege that the injury was caused by  'a defective appurtenance of a ship on

navigable waters.'" *Id.* at 493 *citing Margin v. Sea-land Services, Inc.*, 812 F.2d 973, 975 (5th

Cir. 1987).  It further noted in that case the Supreme Court has noted that "when deciding to

extend admiralty jurisdiction under the Act, the courts should act with caution." *Dahlen*, 281

F.3d at 493, *citing Victory Carriers, Inc. v. Law,* 404 U.S. 202, 210-211, 92 S.Ct. 418, 30

L.Ed.2d 383 (1971).

In *Agguirre v. Greensport Indus. Park, LP*, 2006 WL 31445 (S.D. Tex. Feb. 7 2006), a

longshoreman brought suit in federal court alleging admiralty jurisdiction  for damages against

the shipper of cargo and the owner of the terminal where he was injured based on his being

injured in an automobile collision between his personal vehicle and a yard hustler transporting

discharged cargo.  Recognizing that he had not been injured on the water, he relied on the AEA

to provide jurisdiction.  The court there rejected the invitation and provided the following

enlightening explanation:

> However, the Admiralty Extension Act ("AEA") extends the admiralty
> and maritime jurisdiction of the federal courts to "cases of damage or injury, to
> person or property, caused by a vessel on navigable water, notwithstanding that
> such damage or injury be done or consummated on land." 46 App. U.S.C. § 740.
> The Supreme Court carefully considered the AEA in *Gutierrez v. Waterman S.S.
> Corp.,* 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963), a case wherein a
> longshoreman sued a vessel owner for injuries he sustained after slipping on
> beans that had scattered about a dock. *See id.* at 207, 83 S.Ct. at 1186. The beans

9

were dislodged from defective cargo containers while the containers were being unloaded from the defendant's vessel. *See id.* The Court deemed the longshoreman's allegations sufficient to invoke maritime jurisdiction under the AEA, holding that such jurisdiction exists "when it is alleged that the shipowner commits a tort while or before the ship is being unloaded, the impact of which is felt ashore at a time and place not remote of the wrongful act." *Id.* at 210, 83 S.Ct. at 1188.

The Supreme Court refined its *Gutierrez* holding in a later case, *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383 (1971). In *Victory,* the Supreme Court was faced with the task of deciding whether to extend admiralty jurisdiction to encompass the claims of an individual who had sustained injuries while loading cargo on to a vessel with a forklift. *See id.* at 203, 92 S.Ct. at 326. The Court ultimately declined to apply the AEA, reasoning that state law traditionally governed accidents such as that with which the Court was faced. *See id.* at 211-12, 92 S.Ct. at 425. The Court distinguished *Gutierrez,* stating that "[t]he decision in *Gutierrez* turned, not on the 'function' of the [plaintiff], but, rather, upon the fact that his injury was caused by an appurtenance of a ship, the defective cargo containers ..." *Id.* at 210-11, 92 S.Ct. at 424. The Court also implored lower courts to proceed with caution in dealing with the extension of admiralty jurisdiction under the AEA. *See id.* at 212, 92 S.Ct. at 425.

After interpreting the holdings in *Gutierrez* and *Victory,* the Fifth Circuit concluded that the AEA applies to a vessel and her appurtenances "and does not include those performing actions for the vessel." *Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F.3d 453, 456 (5th Cir.1999). "The vessel or its defective appurtenance must be the proximate cause of the accident." *Margin,* 812 F.2d at 975. **Accordingly, the Court must ask whether Plaintiff alleges that "a vessel or its defective appurtenance" proximately caused his injuries. For purposes of the AEA, "vessel" is defined by the Rules Construction Act as "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3.** Here, Plaintiff alleges injury as the result of a motor vehicle accident. Though the accident did occur during the unloading of a vessel, it was not caused by the vessel or any defective appurtenance thereof. *See In re Nolty J. Theriot, Inc.,* 841 F.Supp. 209 (S.D.Tex.1994). Plaintiff points to poor lighting, negligent driving, and inappropriate container stacking in the yard as possible proximate causes of the accident. None of these are the vessel or appurtenances thereto. Accordingly, the AEA does not provide this Court with jurisdiction over this case. There being no other basis for jurisdiction, the Court has no power to preside over this dispute.

*Id.* at *2-3 (emphasis added).  As one commentator noted, "It is crucial to AEA jurisdiction that the injury emanate from a vessel in navigable waters.  The mere fact that a vessel may be involved in an activity is not enough."  Robert Force,  *FJC: Admiralty & Maritime Law* 6-1.

### b.    Owned or Operated

In addition, if plaintiffs' claims do not implicate a wrong actually committed by a United States' vessel or by a vessel over which the United States had operational control such as in the instance of a bareboat or demise charter then the AEA does not provide a cause of action against the United States.  *See generally*, *Alexander v. United States*, 63 F.3d 8310 (9th Cir. 1995) (seaman could not bring suit against the United States where it did not possess operational control over vessel on which plaintiff was injured); *Williams v. Central Gulf Lines*, 874 F.2d 1058 (5th Cir. 1989); *Hodnett v. United States*, 2003 WL 22764581 (E.D. Va. Aug. 11, 2003).

This requirement is underscored by subsection (c)(2) of the AEA which prohibits a suit being filed "until the expiration or the 6-month period after the claim has been presented in writing to the agency **owning or operating the vessel causing the injury or damage.**" 46 U.S.C. 30101(c)(2).  *Anderson v. United States*, 317 F.3d 1235 (11th Cir. 2003); Thomas Schoenbaum, *2 Admiralty and Maritime Law* §20-1 (4th ed.).

Thus, the Court must now review the complaints in question to ascertain if there are any factual allegations wherein plaintiffs have alleged  that a vessel or its defective appurtenance owned or operated by the United States proximately caused their injuries.

### III.    The Complaints[2]

#### A.    Superseding Levee Master Consolidated Class Action Complaint

The factual allegations in the Master Levee Complaint focus on a number of aspects of the levees  and floodwalls over which the Corps had some responsibility.  With respect to the 17th Street Canal, plaintiffs contend that a dredging permit issued by the Corps which allowed the Sewerage and Water Board to increase the capacity of the levee was a major cause of the breach there.  (¶¶ 25-55).  In addition, plaintiffs maintain that the I-walls that were erected were improperly designed and constructed.  (¶¶ 56-72).  Likewise, they argue that the design and construction of the London Avenue Canal was faulty.[3]  They allege also allege that the Corps was responsible for the creation of  "Hurricane Alley" through the wetlands as a result of the dredging, placement and its responsibility for the Inner Harbor Navigation Canal ("IHNC"), the Gulf Intracoastal Waterway ("GIWW") and MRGO.  (¶¶ 89-103).  Finally, plaintiffs allege that the Corps failed in its Congressional mandate with respect to the building and  maintenance of the levee system around New Orleans as envisioned in the Lake Pontchartrain, Louisiana and Vicinity, Hurricane Protection Project ("LVPHPP").  (¶¶ 104-127).

Plaintiffs then allege in Count I of the Allegations of Fault  that the Corps was at fault for allowing the dredging as described, negligently failed to follow federal regulations and its own engineering standards and procedures with respect to the dredging permit for the 17th St. Canal and violated the River & Harbors Act in so doing.  Finally at ¶ 203 of the complaint, plaintiffs

---

[2]Since this motion was filed, an amendment to the Levee Master Complaint was allowed; however, it was agreed among counsel that the amendments thereto did not affect this motion and as such the Court will use the Levee Master Complaint as noted as the basis for its ruling.

[3]Similar allegations are lodged with respect to the Orleans Avenue Canal in the First Amended Superseding Complaint and are likewise disposed of by the Court's ruling on this motion.

invoke Federal Maritime/Admiralty Law including the Admiralty Extension Act based on the allegation that the "dredging permit decision-making and activity relate to traditional maritime matters, activity, and commerce. Moreover, the flood damage of which plaintiffs in proposed Subclasses One, Two and Five complain, directly resulted from dredging activity involving vessels on navigable water."

In Count II, plaintiffs reiterate that the Corps allegedly failed in the design of the 17th Street Canal levees and flood walls.  Count III contains similar allegations with respect to the London Avenue Canal levees and flood walls.  Count IV contains the allegations of wrongdoing with respect to  MRGO as it concerns the design, construction, operation and maintenance of it, and plaintiffs specifically allege the Corps violated several federal and state statutes thereby. Plaintiffs also note that the Corps illegally and improperly transported or otherwise disposed of dredge spoil, including, but not limited to negligent and illegal placement of said spoil as spoil banks.  Count V concerns IHNC and contains no allegations that would invoke a maritime or admiralty claim.   Count VI pertains to the Orleans Levee District and is irrelevant for purposes of this motion.  Count VII concerns the LPVHPP and reiterates that the Corps failed in its legal responsibility to devise, implement and maintain the LPVHPP.  Finally, state law claims are made in Count VIII which are likewise irrelevant for purposes of this motion.

There are no specific allegations of any vessel, much less a vessel owned or operated by the United States, causing any of the damages to plaintiffs.

### B.        MRGO Master Consolidated Class Action Complaint

Count One of this complaint concerns allegations of wrong-doing as they pertain to the

MRGO.  Plaintiffs contend that the Corps was negligent in the design, engineering, inspecting

and/or construction of the waterway in its failure to recognize that it would allegedly act as a

funnel magnifying storm surge identified with hurricanes. Also, the Corps allegedly failed to

properly armor the levees on both banks of the MRGO.  In addition, it allegedly failed to account

for the devastation of the wetlands which resulted in the loss of a natural buffer for storm surge.

(¶ 23).

Plaintiffs also contend that the Corps failed to maintain and properly dredge the MRGO

by maintaining its design depth which exacerbated the funneling effect.  In addition, the design

failed to incorporate bank stabilization measures which caused higher salt-water intrusion that

further destroyed the wetlands. (¶24.  In doing so, plaintiffs contend that a number of statutes

and regulations, both state and federal were violated, as well as the Corps failed to follow

Congressional dictates, recommendations by its on engineers.  In addition, plaintiffs maintain

that the Corps ignored the warnings of the consequences of these actions.  As a result, plaintiffs

maintain that the accelerated hurricane surge overwhelmed the flood protection put in place by

the Corps at the Forty Arpent Canal and the Industrial Canal.

Count Two contends that the MRGO created a nuisance for which plaintiffs are entitled

to recover damages.

Count Three concerns certain actions that were taken to enlarge and deepen the IHNC

Industrial Canal Lock which plaintiffs contend undermined a portion of the East Bank flood wall

along the Industrial Canal.  Washington Group International was hired by the Corps to level and

clear abandoned industrial sites along the IHNC/Industrial Canal between the flood wall which task included the removal of wharfage, salvage, debris and other materials from the IHNC/Industrial Canal and/or its banks which allegedly undermined the integrity of the flood wall along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish. (¶ 42). The allegations here do not identify a United States' vessel or a vessel operated by it that allegedly caused this harm.

As to the Washington Group there are allegations that it failed to follow proper procedures in performing its work; that it failed to comply with appropriate regulations and standards; that it failed to notice the damage it caused and failed to call that damage to the attention of the appropriate authorities. (¶ 45). As to the Corps, plaintiffs maintain that is was negligent for allowing the work to proceed; for failing to caution the Washington Group about the potential damage; for failing to monitor and/or properly inspect the work; by failing to adequately evaluate the potential damage to the floodwall; failing to correct the damage; failing to discharge its duty to maintain the integrity of the floodwall system there. (¶47).

Count Four does not concern the Corps' actions. Count Five deals with the IHNC/Industrial Canal and the New Orleans East Back Levee failures at the hand of the Corps. The allegations here concern the non-use of proper materials and design flaws. There are no allegations concerning any maritime activity with respect to the Corps or the Orleans Levee District.

Count Six concerns the LPVHPP and the allegedly negligent and inherently dangerous designed used by the Corps including the shift from the Barrier Plan to the High Level Plan, the

use of outdated data in making its calculations, and the violations of its own design and construction criteria.

Again, there are no allegations concerning harm caused by a vessel owned or operated by the United States in these allegations.


IV.    **Analysis**

**Master Levee Complaint**

The allegations against the United States center on failures in the design and maintenance of the levees, not that any vessel owned by it or operated it damaged the levees. Specifically, as to the claims pertaining to the 17th Street Canal, the Orleans Avenue Canal and the London Avenue Canal, this Court found in its Order and Reasons rendered on June 29, 2007 (Doc. 6175) that none of these waterways constitute navigable water for purposes of admiralty jurisdiction, thus the AEA is unavailable to plaintiffs as a basis for jurisdiction for an action against the Corps.

Likewise, in the Master Levee Complaint, the Court finds that there can be no admiralty jurisdiction arising out of allegations concerning alleged defalcations of the Corps with respect to the planning and implementation of the MRGO, the GIWW, the creation of "Hurricane Alley" or the like. Furthermore, the general allegations of the Corps' failures with respect to the implementation of the LPVHPP do not support admiralty jurisdiction. Again, there are no allegations concerning a specific vessel causing specific injury on navigable water which caused the flooding at issue herein as required under subsection (a) of the AEA. Tort law principles applied through the Federal Tort Claim Act will provide the proper basis for determining the

16

Corps liability in this regard.  These claims indeed concern a shore-based plan of levee and

waterway maintenance over many years that allegedly weakened levees and/or created a storm

surge.   Thus, the Motion to Strike will be granted in this regard with respect to allegations in the

Levee Complaint concerning MRGO and LPVHPP.

### Master MRGO Complaint

For the same reasons as stated above, there is no admiralty jurisdiction that lies with

respect to Corps for its alleged transgressions as alleged with respect to MRGO, GIWW,

Hurricane Alley and the like.  These allegations do not allege any wrongful action by a vessel

directly causing damage to persons or property on land; these allegations concern planning by

engineers with respect to hurricane protection and a navigational canal. There is simply

insufficient allegations as to the location prong in *Grubart* to support admiralty jurisdiction.

Likewise, as to the allegations concerning  IHNC as found in Count III of the complaint,

there are no allegations concerning specific vessels causing specific injury.  Furthermore, with

respect to the Corps,  the allegations of negligence focus on land based operations–failing to stop

the work, failing to monitor the project; and failing to correct the damage; failing to discharge its

duty to maintain the integrity of the floodwall system there.   These are not maritime activities.

Likewise, the Motion to Strike will be granted in this respect as well.

Plaintiffs have cited certain cases trying to demonstrate that this Court should entertain

admiralty jurisdiction because dredging is a particularly maritime activity.  Indeed, "dredging"

can and does implicate admiralty jurisdiction.  However, potential admiralty jurisdiction for this

suit arises solely under the AEA and it is constrained by the AEA's provisions. Thus, the cases

cited are inapposite.  Plaintiffs raise *Lakes of Gum Cove Hunting & Fishing, L.L.D. v. Weeks Marine, Inc.* ,  182 F. Supp. 2d 537 (W.D.La. 2001) to demonstrate that where damage was alleged to have resulted from dredging of the Calcasieu River Ship Canal and the disposal thereof caused harm to an adjacent land-owner, admiralty jurisdiction properly lied.  However, that case is distinguishable the  one at bar for a number of reasons.  In that case there was a specific vessel which had accomplished a specific task that had caused damage on land.  Again, there are no such allegations in the complaint. Secondly, while the suit was dismissed based on untimeliness under the AEA,  there was no specific discussion as to who owned or operated the vessel or whether the Government had operational control.  As to *Southern Natural Gas Company v. Pontchartrain Mat'ls, Inc.*, 711 F.2d 1251 (5th Cir. 1983), the Corps was held liable under the Suits in Admiralty Act for its failure to warn and include specific restriction in extending dredging permits; however, the damages were caused on the water and the AEA was not implicated. Finally, as to *In re Ingram Barge*, 2007 WL 837181 (March 14, 2007), it would appear that there is a specific allegation of "negligent dredging by vessels operated by the U.S. Army corps of Engineers and its contractors."  *Id.* at *1. There are no such allegations in the instant complaints.

The fact that admiralty jurisdiction for the Government's alleged general failure to provide adequate flood control is unavailable is supported by  *National Union Fire Insurance Co. v. United States*, 436 F. Supp. 1078 (D.C. Tenn. 1977).  In *National Union*, plaintiffs sought damages for the alleged failure of the Corps to control flooding where that flooding caused damage to a warehouse.  In that suit, the United States was sued by an insurance company seeking subrogation to the rights of a steel company which had suffered water damage to a

quantity of its stock stored in a warehouse.  The water damage at issue was allegedly caused by

the Corps' negligence in failing to exercise proper flood control procedures in connection with its

maintenance of certain dams on the Cumberland River where the warehouse sat on its banks.

Plaintiffs there sued under the SAA and the Court considered the scope of admiralty jurisdiction

including its expansion under the AEA.  In discussing the locality[4] aspects of this jurisdictional

inquiry, the Court noted that *Executive Jet Aviation v. City of Cleveland*, 409 U.S. 249 91973)

requires a maritime connection.

      In rejecting the exercise of maritime jurisdiction over the case, the Court wrote:

> It thus appears clear that the proper focus in applying the maritime
> connection doctrine is the activity being carried on by the destructive party.
> However, this perspective does not obviate the necessity to apprise the activity in
> terms of its actual effects as well as its general nature. Thus, while control of the
> water level does generally involve considerations affecting navigation and
> commerce upon the water, the only actual impact of concern in this instance is the
> flooding of a shore-based warehouse. Viewed in this way, it becomes more
> difficult to perceive an actual maritime incident for which the unique principles
> and procedures of admiralty are pertinent. Had the rising water caused boats to
> break from their moorings and sustain damage, or inundated a barge and
> destroyed its cargo, this court would have little difficulty in finding admiralty
> jurisdiction. **However, where the actual untoward consequence is of a kind**
> **which can readily be dealt with by resort to established common law tort**
> **principles, it makes no sense to dredge up (no pun intended) a whole body of**
> **law whose purpose and history is inextricably bound up in matters**
> **concerning maritime commerce**. It should not be overlooked that the
> navigability of the Cumberland, which is a sine qua non of admiralty jurisdiction,
> had nothing whatever to do with the injuries sustained in this case. It is not
> inconceivable that a stopped up storm drain, during an abnormally heavy rainfall,
> could have resulted in essentially the same damage to the material in the
> warehouse. And in such a case, a suit against the municipality (assuming no
> immunity) alleging negligent failure to keep the sewers cleared of debris, could
> easily be disposed of within the contours of state tort law. The fact that the
> alleged culprit in the instant case was the Corps of Engineers and that the

---

[4]The Court notes that this case pre-dates *Grubart*; nonetheless, the discussion concerning what constitutes a maritime activity is helpful and was indeed cited by plaintiffs in their acquiescence that there is no admiralty jurisdiction with respect to the allegations arising from damages caused by MRGO.

destructive force happened to be a navigable stream does not alter the availability, viability, and indeed, the preferability of state law for disposing of this case.

*Id.* at 1083.

Based on the foregoing review of both the Master Levee Complaint and the Master MRGO Complaint, the Court finds that because there are no allegations that (1) a vessel or vessels caused the damages complained of and (2) that the vessel(s) were owned or operationally controlled by the United States,  there is no viable claim under the AEA, and thus, the invocation of admiralty jurisdiction is immaterial and can be dismissed.  Accordingly,

**IT IS ORDERED** that  the  Motion to Strike Admiralty Claims Against the United States (Doc. 5855) is **GRANTED**.

New Orleans, Louisiana, this  29th  day of August, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**