UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES *      Civil Action No. 05-4182
                                *      Consolidated Litigation
_____ *
                                *      Section "K"
PERTAINS TO:                    *
RECORD DOCUMENT # 7225,         *      New Orleans, Louisiana
7269                            *      August 24, 2007
                                *
* * * * * * * * * * * * * * * *

MOTIONS HEARING,
BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Consol Plaintiffs:        Bruno & Bruno
                              By:  JOSEPH M. BRUNO, ESQ.
                              855 Baronne Street
                              New Orleans, Louisiana 70113

                              Gainsburgh, Benjamin, David,
                               Meunier & Warshauer
                              By:  GERALD E. MEUNIER, ESQ.
                              Energy Centre
                              1100 Poydras Street, Suite 2800
                              New Orleans, Louisiana 70163

                              Law Offices of Robert M. Becnel
                              By:  ROBERT M. BECNEL, ESQ.
                              425 West Airline Highway, Suite B
                              LaPlace, Louisiana 70068

                              Lambert & Nelson
                              By:  HUGH P. LAMBERT, ESQ.
                              By:  LINDA NELSON, ESQ.
                              701 Magazine Street
                              New Orleans, Louisiana 70130

```
APPEARANCES (Cont'd.):

For the Defendant,          U.S. Department of Justice
United States of America:   Torts Branch, Civil Division
                            By:  TRACI L. COLQUETTE, ESQ.
                            By:  RICHARD STONE, ESQ.
                            (BY TELEPHONE)
                            Benjamin Franklin Station
                            Post Office Box 888
                            Washington, DC 20044

        Court Audio Operator:      Bonnie G. Hebert

        Transcriptionist:          Dorothy Bourgeois
                            c/o U.S. District Court
                            500 Poydras Street, Room C151
                            New Orleans, Louisiana 70130
                            (504) 589-7721
```

Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

P R O C E E D I N G S

(Friday, August 24, 2007)

(Call to Order of the Court)

THE COURT:  Good morning.

(All Counsel respond, "Good morning, Your Honor.")

THE CLERK:  Judge, I've already got her set on the phone, so you just need to press it on speaker.

THE COURT:  I'm going to take it off of hold now. Hello?

MS. COLQUETTE:  Good morning.

THE COURT:  Okay.  I think we are at the point where Sheena is going to announce the case and then we can make our appearances for the record.

Sheena, you will announce the case, please.

THE CLERK:  This is Civil Action 05-4182 and this is *In Re:  Katrina Canal Breaches Consolidated Litigation*.  We are here on two motions, Document Number 7269 and 7225.

THE COURT:  Do you want to make your appearances, please?

MR. BRUNO:  Good morning, Your Honor, Joseph Bruno, Plaintiff's Liaison.

MR. MEUNIER:  Gerry Meunier, Plaintiff's Liaison.

MS. COLQUETTE:  Good morning, Your Honor, Traci Colquette for the United States.  I also have Richard Stone with me.

1          THE COURT:  Thank you.

2          MR. LAMBERT:  Hugh Lambert, on the Steering

3    Committee.

4          MR. BECNEL:  Robert Becnel, on the Steering Committee

5    and on behalf of Daniel Becnel, Jr.

6          THE COURT:  Thank you very much.

7          Before we commence the discussion let me give you

8    some preliminary thoughts that I have had and I hate to discuss

9    a ruling that hasn't been actually signed, but I was working on

10   it this morning and I'm pretty -- until it's signed it's not

11   done, but I'm going to tell you what I think I'm going to do,

12   and to see how that affects this.  And I'm going to tell you

13   what I think, then I'll hear from you.

14         I am, today, in all likelihood, going to grant the

15   Government's Motion to Strike the admiralty allegations in the

16   master complaint, the MRGO complaint, and I'm going to find

17   that this is a Federal Tort Claims Act case.  I understand that

18   that's not the final word on the matter if the matter is

19   appealed.  But clearly, if it is a Federal Tort Claim action,

20   then the imminent problem that is faced here is not so

21   imminent, because it's the admiralty extension act situation

22   that drives this motion.

23         Now, certainly Counsel for the Plaintiffs may

24   disagree with my ruling and have every right to ultimately

25   appeal it, but you really, whether it's an admiralty or vis-à-

1  vis the Government, to me, it seems whether it's an admiralty

2  or just under the Federal Tort Claim Act because it can't -- it

3  has to be one or the other, that doesn't diminish any rights as

4  I see it, and again, I can be enlightened by the Plaintiffs.

5  The only issue is whether there's some latches that might apply

6  that would bring in other Defendants who have been let out.

7          And so, to let you know in advance, because of that

8  ruling and my belief that it is correct and that it would be

9  affirmed on appeal, I am reluctant to grant the relief sought.

10  I was reluctant anyhow, but reluctant because in this case

11  we're talking about the 100,000 people and their admitted

12  quagmire of administrative issues and legal issues and

13  financial issues that concern the Court greatly.  And again,

14  it's up to the Plaintiffs but if the ruling is not appealed,

15  then it's clearly an FTCA case and nobody's case has prescribed

16  or is about to prescribe.

17          So, that's sort of where I am and I thought it would

18  be fair to at least let you know that.

19          MR. BRUNO:  Judge, thank you.

20          THE COURT:  Now, I am open for discussion.

21          MR. BRUNO:  Sure.  Judge, thank you very much.  And

22  frankly, it's interesting because I rise and I stand before you

23  as court-appointed Liaison Counsel but I'm going to step out of

24  that role just for one second.  Joe Bruno as a lawyer agrees

25  with everything that you just said.  The difficulty that I have

6

1    to face is that I, my personal view is what it is and I have to

2    put it aside, because I am acting in a role at your --

3                THE COURT:  Right.

4                MR. BRUNO:  -- your view in the Court and in the

5    community.  So, and again, privately, I'll tell you it's the

6    right ruling.  But I cannot speak for -- Joe Bruno doesn't have

7    the power even as court-appointed liaison to speak for all of

8    the lawyers in the case and all of the people in the community

9    that might have a different view.

10               THE COURT:  Absolutely.  I understand that,

11   completely.

12               MR. BRUNO:  So, I stand before you with that

13   conundrum.  Now, for me the issue is not quite as difficult

14   because it's about what harm is brought to any party in this

15   litigation by the Court allowing us to do what we think we need

16   to do, just to preserve a legal right.  So, before I get there,

17   let me just elucidate what I had in mind with regard to the

18   money and the procedure and all that business, if you don't

19   mind?

20               THE COURT:  Go ahead.

21               MR. BRUNO:  Okay.  First, some non-participating

22   lawyer would be appointed.  This person would not be permitted

23   to accept a referral of a case or would be told they couldn't

24   accept a request for hiring by anybody in the group, that's

25   number one.

1          Number two, this person --

2          THE COURT:  A request for hiring; let me make sure I

3     understood that now.

4          MR. BRUNO:  In other words, if anybody after the

5     thing was filed said, "You know what I think I want you to be

6     my lawyer."

7          He would be instructed to tell that person, "I'm not

8     permitted to accept your representation.  I direct you to go

9     find a lawyer if you want one."  In other words, it's not in

10    any way intended to allow anybody to have some financial reward

11    by virtue of this appointment.  Okay, that's number one.

12         THE COURT:  All right.

13         MR. BRUNO:  Number two, we don't expect this person

14    to work for free.  So, we would ask Your Honor to set some

15    reasonable hourly rate and we, Plaintiff's Committee, would

16    accept the financial responsibility for all of those costs.

17    All right, so that's the financial component of this thing.

18         Now, the next thing that we would contemplate is that

19    we would file this --

20         THE COURT:  Who represents these people if the

21    Government files a motion?  I assume he's representing them --

22    he or she, the court-appointed attorney, is obligated to

23    represent them and I would assume, since he filed suit for

24    them, until such time --

25         MR. BRUNO:  Right.

1          THE COURT:  -- as they obtain representation, what if

2    they don't?

3          MR. BRUNO:  Well, if you would --

4          THE COURT:  Go ahead.

5          MR. BRUNO:  Judge, I have thought through that.

6          THE COURT:  And has it --

7          MR. BRUNO:  Because remember, what are we about?  We

8    are simply trying to preserve the rights.  So, this is what I'm

9    proposing to Your Honor for your consideration.

10          THE COURT:  Right.

11          MR. BRUNO:  The sole and only purpose of this

12   exercise is to preserve the rights, nothing more, nothing less.

13   There is no reason why it would not be appropriate to file, and

14   again the filing would be only against the United States of

15   America, no other Defendants because Judge, there is no need.

16   There are class actions pending, those rights are preserved.

17   It's just the Government and it's a maritime claim that would

18   include the FTCA claim only because as a matter of law we can't

19   split the cause of action.

20          But our view would be that the case would be as soon

21   as the Government was served, administratively closed.  I've

22   had some discussions with Robin about the fact that even if

23   Your Honor does not grant this relief, I representing I think

24   it's at last count 70,000 people, have to file the thing

25   anyway.  So, I've got 70,000 versus 325,000 and I have

1    suggested to Robin I recognize that if you wanted to, you have

2    the right to test each and every claimant.

3           And I said to Robin, "How about we agree to save that

4    for another day and let this Court decide the very important

5    immunity issues."

6           THE COURT:  The fundamental underlying issues.

7           MR. BRUNO:  The fundamental underlying because you

8    know what, it just doesn't get you anywhere.

9           THE COURT:  Right.

10          MR. BRUNO:  To start that battle when we have so many

11   other important issues to resolve.

12          THE COURT:  I agree.

13          MR. BRUNO:  So, what I'm thinking Judge, and I'm

14   thinking out loud now, because I'm open to any suggestions.

15   You know, I'm just thinking to myself, why wouldn't you,

16   exactly what you do, exactly what you did in the insurance

17   cases, because you recall, those cases were filed for the sole

18   purpose of interrupting prescription so that we could continue

19   the dialogue and settle cases and with the exception of two

20   insurance companies --

21          THE COURT:  Is there anybody that filed suit on

22   behalf of these people for the Federal Tort Claim Act?  Because

23   right now, when they file this suit based on the ruling I'm

24   about to make, they've got no action, at least right now.

25          MR. BRUNO:  I'm sorry, I missed that Judge.

1          THE COURT:  Well --

2          MR. BRUNO:  Can you say that again, please?

3          THE COURT:  The people, the 100,000 people; is

4   anybody going to bring a federal -- who is going to bring the

5   Federal Tort Claim Action for them, because --

6          MR. BRUNO:  But --

7          THE COURT:  -- you can only bring one or the other.

8   And right now, as a result of my ruling that's going to occur

9   today, and as I've said I'm virtually certain there is -- the

10  suit is right now a chimera in the sense that there is, by my

11  opinion, no admiralty jurisdiction.

12         MR. BRUNO:  Right.

13         THE COURT:  So, I assume that protection there, but

14  it's very confusing to the lay person.

15         MR. BRUNO:  Right.

16         THE COURT:  And somebody asked me a question the

17  other day, they're talking to my staff about, "What's this

18  deal, Judge?"

19         MR. BRUNO:  Right.

20         THE COURT:  And I can imagine what you go through

21  because I have to be very constrained in my response to anyone

22  about this kind of stuff.  So, it's confusing to the people at

23  large.  What I'm hoping is that frankly, it's a tort claim, the

24  word gets out.

25         MR. BRUNO:  But we're not there.

1           THE COURT:  But this gets pretty confusing.

2           MR. BRUNO:  Right.  Well Judge, and again, and I have

3    told you my personal views, what it is.

4           THE COURT:  Right.

5           MR. BRUNO:  But so I have to accept that everybody

6    doesn't agree with me.  So, in order to preserve the claim, I

7    have to file the claim.  When I do file the claim, I can't

8    split the cause of action, so when I file the claim, I have to

9    make not only the maritime claim, but the FTCA claim.

10          THE COURT:  In the alternative, you mean?

11          MR. BRUNO:  Of course.  And what's even better about

12   it, if I could persuade the Government to forebear, I would

13   invite that the same motion be filed.  I would invite

14   Your Honor to make the same ruling, and I would invite, you

15   know, that to become the law of the case and I would invite

16   anybody who wants to take an appeal to take an appeal.  And if

17   there is no appeal, and that part of the case is done and over

18   with, and we again, administratively close the case, because

19   there's absolutely no purpose in having all of those people

20   before the Court.  That's the whole reason why we're asking you

21   to certify a class.

22          So, I think, Judge, that the only -- the only

23   downside to this, and it is somewhat disturbing to me; the only

24   downside to this is that we will have preserved the claims of

25   some folks in this community who don't understand that their

1   maritime claim may be lost if they don't file.  That's the only

2   downside.  So, you're the Government and I've said this to them

3   and I'll say it again, you've told the world, you've told me

4   and you've told Judge Duval, you're immune.  So, why on earth

5   would you fight so hard simply against an opportunity to simply

6   preserve the claim, nothing more, nothing less?  I'm not

7   looking for 300 lawsuits or 400 lawyers or anything.

8           Their position is -- there is no change.  The only

9   difference between this process and the opposition is that

10  those people are unprotected.  Now, let's get to that precise

11  issue because I'm thinking to myself, okay, the other guy says

12  to me, "Well, why on earth should you be interested in

13  protecting those people?"

14          I mean you know, everybody's got brains in their

15  heads, if they had brains enough to file a Form 95 they should

16  have brains enough to hire a lawyer, et cetera, et cetera, et

17  cetera.  Well, I don't have to tell you about the breadth and

18  the depth of this catastrophe.  I sure don't have to tell you

19  about the socioeconomic status of most of the people in this

20  community, and I don't have to tell you about the fact that

21  most people in this community have no clue as to what they need

22  to be doing or not doing relative to their claims.  This is a

23  unique, unique circumstance.

24          And so, because of the numbers, the sheer numbers of

25  people, because of the extraordinary lack of information and

1   knowledge that many of these folks have, I think under these

2   circumstances, with very precise, very to the extent that we as

3   humans can do so, complete protections. I want to protect the

4   Government, I don't want them to have to spend another dollar

5   that they shouldn't have to spend. I want it to be tight. I

6   want it to be closed. I want to let us do our business. All I

7   ask for is that we preserve these claims.

8           Now Gerry Meunier, if Your Honor please, would like

9   to share a few words on the law, the legal basis.

10          THE COURT: Okay. And before Gerry does, I'm

11  interested in some of the things that I asked, what kind of

12  notice did we give to these people?

13          MR. BRUNO: I forgot.

14          THE COURT: You know, I don't like to issue an order

15  like this that's -- I don't know if I'm creating Frankenstein.

16  One, I don't know if I should or can create Frankenstein.

17          MR. BRUNO: I understand, Your Honor. Right.

18          THE COURT: And I don't know if it will be a

19  Frankenstein. It might be, you know, a great --

20          MR. BRUNO: Okay.

21          THE COURT: But I don't know, so how do we notify

22  these people? Who pays for that? What are their time limits?

23          MR. BRUNO: Right.

24          THE COURT: I mean, I would like to have all of this

25  now because I'm getting this at the last minute.

1           MR. BRUNO:  I forgot.  I forgot.  I guess I just

2    forgot.

3           THE COURT:  Right.  No, and I may have interrupted

4    you.  Go ahead.

5           MR. BRUNO:  We have thought about that.  What we

6    would propose to do is send a postcard at our expense, the

7    Plaintiff's expense.  Of course, we wouldn't be the sender.

8    The court-appointed person -- and again, we want to keep this

9    -- we want to keep our distance from this person.

10          THE COURT:  Right.

11          MR. BRUNO:  And I have to share with you, the list is

12   not public anyway.  This is something that has -- I have it but

13   I'm under constraint not to willingly throw this thing around

14   now.

15          THE COURT:  Right.

16          MR. BRUNO:  So, we would envision a postcard that

17   would be sent to all 350,000 people.  And it would say, "I

18   have filed a lawsuit on your behalf to preserve the maritime

19   claim," or words to that effect.  "If you have a lawyer, your

20   lawyer" --

21          THE COURT:  Not only preserve the maritime claim,

22   apparently you're also preserving the tort claim, even though

23   it's not right because you're alleging that alternatively.

24   Even though that is not eminent, it is not eminent.

25          MR. BRUNO:  It is not eminent and I don't have to.

15

```
 1              THE COURT:  But it would be eminent --

 2              MR. BRUNO:  Here is my conundrum there and maybe I

 3    can be, you know, --

 4              THE COURT:  But I understand what you're doing.

 5              MR. BRUNO:  I know Your Honor is not in the business

 6    of giving any advisory opinions, so I would say this guardedly.

 7    But the fact of the matter is you're right, I don't have to

 8    file the FTCA but for the notion that I think our law says you

 9    can't split your cause of action.  So, once you come into this

10    courthouse and you make the claim against Defendant A --

11              THE COURT:  I think that the alternative claim, if I

12    were filing the suit, I would certainly be making it.

13              MR. BRUNO:  Right.

14              THE COURT:  Because I don't really feel like I have a

15    very good -- if I'm the lawyer, a pretty risky admiralty

16    jurisdiction.

17              MR. BRUNO:  Right.  And so, but it's the inability --

18              THE COURT:  So yes, I think if you -- as the lawyer

19    would do the right thing to do.

20              MR. BRUNO:  Well, if I believed, Judge, that I could

21    do this without filing an FTCA claim that would be fine.  But I

22    think the problem is that if I do so, I'm splitting my clients'

23    cause of action and I don't know that I can do that.  So, I

24    think to be the advocate that I would like to be, which is the

25    best that I can be.
```

1          THE COURT:  Right, I understand.

2          MR. BRUNO:  I think I've got to evaluate the law.  I

3   don't think I can split my cause so I filed a claim to

4   interrupt.  I preserved the claim.  I make the FTCA claim and

5   then I zip it up.  And by meaning, by that I mean the case is

6   administratively closed to allow us to do our other difficult

7   business.

8          THE COURT:  And I interrupted you and that's probably

9   what happened the last time.  Go back to the notice provision,

10  please.

11         MR. BRUNO:  All right, yes.  We would without

12  question send -- and I'm thinking about a postcard that would

13  advise people that this has occurred.  It would advise people

14  that my role was no more, nothing more than to preserve this

15  claim that if you have a lawyer, please advise or some process

16  by which they would advise not the person who advises us,

17  because I think at that point we could then record information

18  as to who this lawyer would be at our own expense, and that we

19  would simply put those folks on a mailing list for any, you

20  know, motions et cetera that might be filed, although I

21  wouldn't think that any would be necessary, because we would

22  close the case.

23         So, and then we would further advise them if you

24  don't have a lawyer, you don't need one until we advise in the

25  future that you need one.  And I'm thinking there, that you

1    really don't need a lawyer until such time as we've won the

2    case.  We've been up to the Supreme Court, libel has been

3    established and now we want to talk about individual damages,

4    which is not anytime soon, I can assure the Court, and I'm sure

5    you know that.

6              So, I just don't see it, Judge, except that this is

7    an opportunity for the United States to --

8              THE COURT:  You see, I would be inclined to say if

9    you don't notify me back, you're out, within a certain period

10   of time because if I did this, because we're filing suits for

11   people who may not want to file a suit, if they haven't.

12             MR. BRUNO:  Well, except that --

13             THE COURT:  I don't know if they do or don't.

14             MR. BRUNO:  Well, except that they wouldn't --

15             THE COURT:  I mean we're getting very, very

16   patrimonious here, sir.

17             MR. BRUNO:  Well, in the ordinary case I would agree

18   with you.  But in this unique circumstance, given the flooding

19   and the devastation, to me the fact that a person has filed a

20   Form 95 --

21             THE COURT:  Well you know, if you get a notice saying

22   let me know one way or the other, you know, I just think that

23   you know, that that would be we're going into a land that I

24   don't even, you know --

25             MR. BRUNO:  And Judge --

1           THE COURT:  And when you filed this suit, the Court

2   said on behalf of these people, you may not want to file the

3   suit.  And the suit -- you're saying that it would only become

4   active -- who is going to represent them when motions are

5   filed?

6           MR. BRUNO:  I don't envision any motions.  I'm doing

7   a closed case.  What motions would be filed?

8           THE COURT:  Well because the motions are going to

9   affect their case.

10          MR. BRUNO:  Well Judge, we have accepted that

11  responsibility.

12          THE COURT:  I mean, what is the responsibility of the

13  court-appointed attorney?  He represents these people.

14          MR. BRUNO:  Right.

15          THE COURT:  So, I mean does he get a chance to weigh

16  in if a motion is filed on aspects of the general -- I

17  understand what you're saying, but in the -- is there some

18  motion that affects their rights?

19          MR. BRUNO:  Well Judge, remember, you've already

20  appointed me and others.

21          THE COURT:  I understand.

22          MR. BRUNO:  To act in that capacity.

23          THE COURT:  I understand.

24          MR. BRUNO:  We already have that responsibility.  We

25  suggest that the class action status is appropriate in the

1   case.  I already have that obligation to ascertain whether or

2   not I need to file a motion or not file a motion.  This is

3   nothing more than a procedural backup.  The other government --

4           THE COURT:  So, you're saying that only the person

5   who actually represents these people by court-appointed, by

6   court-appointment, really doesn't do a thing?

7           MR. BRUNO:  He doesn't do anything.

8           THE COURT:  Which their case is closed, and even if

9   their rights are jeopardized, that you and the others would

10  take up that mantle?

11          MR. BRUNO:  We already have that responsibility.

12          THE COURT:  I have to think about this a little bit,

13  but you know, I'm definitely going to -- whatever I do, there

14  is going to be a notice -- I mean, I'm just telling you that

15  right now.  There's going to be a notice where it's sent and

16  somebody is going to have to pay for it, where if you don't

17  respond in "X" months, you're out.

18          MR. BRUNO:  Well Judge, let's take this --

19          THE COURT:  I'm sorry, but that's the way it's going

20  to be.

21          MR. BRUNO:  Well --

22          THE COURT:  I'm not going to let this linger.

23          MR. BRUNO:  Well, let me --

24          THE COURT:  And there's too many things, there's a

25  lot of money involved, who is going to represent these people?

1   You know, there's no class action yet.  And what if I don't

2   certify the class?  Who is going to represent those people?

3           MR. BRUNO:  Here's a thought --

4           THE COURT:  Who is going to pay all of the costs?

5   You know --

6           MR. BRUNO:  Well, I know but here's a thought.  But

7   for --

8           THE COURT:  And what if I have to sever the case

9   eventually?

10          MR. BRUNO:  But --

11          THE COURT:  What about all of that?

12          MR. BRUNO:  Well, but for -- but for this crazy

13  admiralty thing, all right, which is what it is, if this was a

14  pure FTCA claim, you would have the same 325,000 people who

15  wouldn't have to file a lawsuit, who wouldn't have to do

16  anything until such time as we won the case.

17          THE COURT:  Well, you know you're saying that

18  assuming --

19          MR. BRUNO:  Because the Government --

20          THE COURT:  That's what I think you have, is an FTCA

21  case.

22          MR. BRUNO:  That's exactly what I've got.

23          THE COURT:  So that --

24          MR. BRUNO:  I know, but you're concerned about

25  something that won't happen.

21

```
 1              THE COURT:  And I think everything else is --
 2   frankly, I think it's frivolous.  I think the admiralty claim
 3   is frivolous.
 4              MR. BRUNO:  It may well be.
 5              THE COURT:  And therefore, I'm doing something over
 6   what, with respect of the admiralty claim that I don't think
 7   exists.
 8              MR. BRUNO:  Well, the question I ask --
 9              THE COURT:  And I'm not sure of all of the
10   ramifications.
11              MR. BRUNO:  Well Judge, and you're right, but I ask
12   myself what --
13              THE COURT:  And I have been given this a short -- and
14   let me tell you, the shorter something is, the less time I
15   have, the less likely I am to grant it.
16              MR. BRUNO:  Judge, I realize that.
17              THE COURT:  Just keep that in mind.
18              MR. BRUNO:  I totally do.
19              THE COURT:  You all are right and, you know, I
20   understand what you're doing.
21              MR. BRUNO:  Well, yes.  But what is troubling me is,
22   is that without any admiralty claims we have a set of
23   circumstances that we are required to accept.  Those
24   circumstances are these:  350,000 FTCA claims in the universe
25   that are out there.  Thankfully, the law says you don't have to
```

22

```
1    file a lawsuit, so they're there.

2              THE COURT:  Until denial.

3              MR. BRUNO:  Precisely.

4              THE COURT:  On the FTCA.

5              MR. BRUNO:  So, there's nothing in the law that

6    requires these people to do anything.

7              THE COURT:  What if the Government starts denying?

8              MR. BRUNO:  Well, I guess what if, if they would do

9    something as insane as that, we would deal with it.  But right

10   now --

11             THE COURT:  Well, you.  You mean -- what about the

12   lawyer who represents these people by virtue of a court-

13   appointed curator or whatever he or she is?

14             MR. BRUNO:  Exactly.

15             THE COURT:  Well, what is their duty, you know?

16             MR. BRUNO:  Their duty would be to notify them of the

17   need to hire private counsel to exercise those rights.

18             THE COURT:  Right.

19             MR. BRUNO:  And my point is you wouldn't have to do

20   that until such time it becomes necessary to make them active.

21   In a normal class action scenario, the law is pretty clear in

22   the class action here, and that is you can't really make

23   somebody do something until there is some reason to do it.  You

24   are not required, for example, to file a notice of claim in a

25   class action.  You are not required -- you're not even in some
```

1    instances, some courts say you're not even required to file a

2    proof of claim until you get farther along in the process where

3    the likelihood of recovery is pretty high.

4              THE COURT:  No question.

5              MR. BRUNO:  So --

6              THE COURT:  I understand that.

7              MR. BRUNO:  And so, we've got -- you see Judge, we've

8    got these parallel universes out there which I think give us a

9    lot of guidance, and we can, you know, we can choose to be

10   guided by that or not.  I'm here only because --

11             THE COURT:  This isn't a way to get the tort claim

12   filed, the FTCA claim filed?

13             MR. BRUNO:  I don't want it -- Judge, Joe Bruno now,

14   let me get out of my liaison hat, role, whatever.  I don't want

15   to file any case that I don't have to file.  If I didn't have

16   this maritime thing hanging over my head, I wouldn't file a

17   single solitary suit, I only need one.  In fact, that's what

18   has guided the Robinson thinking.  You only need, you know, a

19   few people.

20             THE COURT:  As long as you have a class action.

21             MR. BRUNO:  Well yeah, to protect them.  That's why

22   we're doing what we're doing.  So, no, there is no real --

23   there is no real need if this were -- if I had a final

24   resolution and I take the responsibility, I talk about this,

25   you know, and I prevailed upon Your Honor to ask the Government

1    to file this motion a long time ago.

2              THE COURT:  Yes, you did.

3              MR. BRUNO:  Okay, you know, and it's not anybody's

4    fault, I should have asked you on -- I should have asked this

5    question two years ago.

6              THE COURT:  Well, I am glad though we are at least --

7              MR. BRUNO:  We are where we are.

8              THE COURT:  Yes.

9              MR. BRUNO:  And the problem is where we are, is next

10   Wednesday is the death knell for this claim.  Even though I

11   don't like the claim, it is the death knell for the claim.  And

12   so, we have asked ourselves with that knowledge, what is our

13   responsibility?  And I have to at least come before you and

14   make this request.

15             THE COURT:  Okay.

16             MR. BRUNO:  And if I may let Gerry just --

17             THE COURT:  As I understand it, Mr. Bruno, you're

18   saying no notification to the Plaintiffs, the 70,000 or however

19   many there are.  How many are there, by the way, just for the

20   record?

21             MR. BRUNO:  350,000.

22             THE COURT:  No, no, no.  I mean the ones you'd be

23   filing suit for.

24             MR. BRUNO:  Oh, I'm filing suit for --

25             THE COURT:  No, no, the ones that a court-appointed

1   attorney, if appointed, would represent?  Do we know how many

2   there are?

3           MR. BRUNO:  350,000 people.

4           THE COURT:  Wait a minute.

5           MR. BRUNO:  I know what you're asking me, why don't I

6   subtract out?

7           THE COURT:  Yes.

8           MR. BRUNO:  Here's the thing, let me tell you.

9           THE COURT:  I thought that you and Mr. Becnel --

10          MR. BRUNO:  I know Lockheed Martin is a really

11   special name and you think boy, that's a jet airplane

12   manufacturer.  However, when you look at that government

13   database, Bruno is spelled 8,000 different ways and it's not a

14   hard name to misspell.

15          THE COURT:  Well, let me just say I misunderstood the

16   entire scope of this motion.  Are you saying this court-

17   appointed attorney would represent everyone who has filed it?

18          MR. BRUNO:  Not represent.  Judge, they're not

19   representing anybody.

20          THE COURT:  Well, yes, they are.

21          MR. BRUNO:  All they're doing --

22          THE COURT:  When you put your name on a pleading, you

23   are.

24          MR. BRUNO:  Judge, well then let me --

25          THE COURT:  And unless we --

1          MR. BRUNO:  Let me share --

2          THE COURT:  Well, tell me what --

3          MR. BRUNO:  Let me tell you --

4          THE COURT:  But wait, wait.  Tell me, answer my

5     questions directly.  Are you telling me that this person,

6     whoever I appointed, will be filing suit on behalf of all the

7     people who have filed a Form 95?

8          MR. BRUNO:  Before March 1, yes.

9          THE COURT:  Before March 1?

10         MR. BRUNO:  Yes.

11         THE COURT:  Well, I thought you were filing the suit

12    and Mr. Becnel was filing the suit?

13         MR. BRUNO:  What I have in mind, let me share with

14    you what the problem is.

15         THE COURT:  Okay, because that's something that's

16    brand new to me right now.

17         MR. BRUNO:  Well Judge, here's the problems that

18    you're not aware of, and we could --

19         THE COURT:  Yes, you know it's -- tell me what I'm

20    not aware of.

21         MR. BRUNO:  Well, I can slice and dice this thing any

22    way the Court directs.  Here is the problem.

23         THE COURT:  That's not how this was presented to me

24    at the last -- it certainly wasn't clear to me in the

25    conference we had that this is for the unrepresented parties.

1          MR. BRUNO:  It is.  It is for the unrepresented

2   parties.  Now, the question is, and again, I'm an advocate on

3   trying to make certain that I don't make a mistake.  I've got

4   this database and the database is, how shall I say it politely?

5   Imperfect.

6          THE COURT:  Okay.

7          MR. BRUNO:  It is imperfect.  There are -- we have

8   compared the form to the data and the form has data that has

9   not been picked up on the computer thing, whatever you want to

10  call it, the data has been missed, totally missed.  So yes, I

11  could rely on the database as being accurate.  I could remove

12  everybody who was represented and I could, yes, Your Honor,

13  file only on behalf of those people who are unrepresented, yes.

14  Since you asked me a direct question, I believe I gave you my

15  honest answer.

16          My preference would be, because the little postcard

17  is going to say if you're represented, please contact Bruno and

18  Meunier and tell them, and that solves that problem.  I don't

19  see the problem.  I'm trying --

20          THE COURT:  Well, you would have one suit though?

21  You and Becnel -- in other words, there would be only one suit

22  filed?

23          MR. BRUNO:  I'm trying to file only one lawsuit.

24          THE COURT:  A lawsuit with a non lawyer?  But then

25  how could he file a suit on behalf of people that you

 1 represent?  I'm very confused about that.

 2          MR. BRUNO:  Well Judge, it's --

 3          MR. MEUNIER:  Joe, let me address it?

 4          MR. BRUNO:  Sure, go ahead.

 5          THE COURT:  Go ahead.

 6          MR. MEUNIER:  Good morning, Your Honor, Gerry

 7 Meunier.

 8          THE COURT:  And don't worry, Government, you're

 9 certainly going to have a chance to weigh in here.  You're

10 being -- we'll give everybody equal time.

11          Go ahead, Mr. Meunier.  Mr. Meunier is now speaking.

12          MR. MEUNIER:  Your Honor, let me get to that

13 practical question you asked but first cover some other points,

14 if you don't mind.

15          THE COURT:  Okay.

16          MR. MEUNIER:  First of all, I appreciate your

17 indication of your ruling today.  I'd like for clarification if

18 you don't mind.  Are you granting a dismissal of all maritime

19 claims in both the MRGO and the levee cases?

20          THE COURT:  Yes.  I mean when I say until I have

21 signed it, you know, not lightning or I may have something

22 else, but I'd say it's 99.9.

23          MR. MEUNIER:  I understand.

24          THE COURT:  But yes, that answers your questions,

25 yes.

1           MR. MEUNIER:  And you understand, Judge, as Joe has

2   indicated this morning that the contemplated filings which will

3   occur on August 29, next Wednesday, will assert both ADA

4   admiralty and FTCA against the Corps.

5           THE COURT:  I understand.

6           MR. MEUNIER:  Because we feel you have to allege

7   both.

8           THE COURT:  Right.

9           MR. MEUNIER:  I should -- I'm compelled to say,

10  Your Honor, that the preservation of the ADA maritime claims

11  against the Government may not simply be an academic matter to

12  some, that for example --

13          THE COURT:  Well, I understand that.  If they want to

14  -- and if I don't grant this remedy and if they want to appeal,

15  that's up to them.

16          MR. MEUNIER:  Okay.

17          THE COURT:  But they're putting the Plaintiffs at

18  risk at that.

19          MR. MEUNIER:  Well, I understand but the --

20          THE COURT:  The unrepresented Plaintiffs.  That's

21  their choice.

22          MR. MEUNIER:  The substantive law advantage for

23  example of comparative fault allocation is real in terms of the

24  comparison between admiralty and Louisiana law through the

25  FTCA, so this is not just let's cover the bases.

1          THE COURT:  Oh, I know.

2          MR. MEUNIER:  There is some substance to the need,

3     okay?

4          THE COURT:  Oh, I understand.  I understand that

5     there are differences, including latches, yes.

6          MR. MEUNIER:  And notwithstanding Your Honor's view,

7     and shared by Joe Bruno, that there is a wispy basis for the

8     maritime claims.  Frankly Judge, there's a good faith

9     disagreement about it, given the involvement of navigable

10    waters.

11         THE COURT:  Well, I have read the brief and I -- what

12    ship?  And you'll see it in the ruling I'm making.

13         MR. MEUNIER:  Yes.

14         THE COURT:  And anyway, I will accept the fact that

15    there is a good faith disagreement.

16         MR. MEUNIER:  Right.

17         THE COURT:  But I don't think it's very meritorious

18    but go ahead.

19         MR. MEUNIER:  And Judge, you may be entirely right,

20    but here is the problem and we all know it, it is that as we

21    stand here today --

22         THE COURT:  Yes, and you know, I know you're going to

23    talk about I'm being asked to do something no one has ever

24    done, ever, and at this, in this context, ever.

25         MR. MEUNIER:  Well, that may be true, there's so much

1    about this case that you could say the same thing.

2            THE COURT:  I agree.

3            MR. MEUNIER:  But since your judgment on maritime

4    claims is not final, will not be final, will be appealable, may

5    be subject to reversal, the approaching deadline is no less

6    important.

7            THE COURT:  I agree, all district court judgments are

8    subject to reversal.

9            MR. MEUNIER:  And so the approaching deadline is no

10   less potentially a problem, no less potentially dispositive,

11   and no less real a problem, notwithstanding your indications.

12           THE COURT:  Right.

13           MR. MEUNIER:  So, we still have this deadline to deal

14   with despite what you indicate your ruling will be.  And

15   Your Honor, in the Ferry Frost and in the asbestos and in the

16   Propulsid cases, all of which have been referenced in the

17   pleadings; well the asbestos case --

18           THE COURT:  Well, I sent I think on the asbestos

19   thing, I --

20           MR. MEUNIER:  The asbestos actually came from the

21   Court.

22           THE COURT:  Yes.

23           MR. MEUNIER:  And I've read it, it's a long case.  It

24   took a while to print it out.

25           THE COURT:  It's 232 pages or something like that.

1           MR. MEUNIER:  But the common thread in all of -- two

2   common threads, in the <u>Ferry Frost</u>, asbestos, Propulsid cases:

3   You have a discernible group of claimants who are subject to

4   the Court's jurisdiction and they face a deadline, and on that

5   deadline, unless certain action is taken, they will forever

6   lose certain legal rights and remedies.  That's one common

7   thread.

8           The other common thread is that there's no counsel of

9   record in any of those cases, absent appointment, to take care

10  of those people, to take action on their behalf.  So, the way I

11  look at it, Your Honor, is that those same common threads that

12  tie all those cases together are just here.  And the question

13  is if there is that situation where the underlying rationale

14  for doing something on your part is there, as it was in those

15  cases; do you have the authority and then we lead to the other

16  questions of what next?

17          The Court has equitable authority to do this.  And in

18  fact, there's excellent language in the asbestos case citing

19  Rule 17.  I don't have to reiterate that, the Court has seen it

20  that says pretty clearly that you have the equitable power to

21  provide independent representation on behalf of persons who are

22  not in a position to protect their own interests.  So, if you

23  find that these people are not in a position to protect their

24  own interests --

25          THE COURT:  I'm not sure what I'm basing that finding

1   upon.

2           MR. MEUNIER:  Well --

3           THE COURT:  They're not minors, they're not -- well,

4   some of them may be interdict.

5           MR. MEUNIER:  Well, but as this case tells us --

6           THE COURT:  I don't know who had --

7           MR. MEUNIER:  -- it's not the power under Rule 17.

8   In fact, the rules have not been -- it has been broadly

9   interpreted and not limited to infants or incompetents, all

10  right?

11          THE COURT:  True, true.

12          MR. MEUNIER:  So, let's --

13          THE COURT:  I'm just not sure and I'm basing that

14  they're not able to discern, this is where all presume to know

15  the law, well, why they are not able to get a lawyer and why

16  they're not able to file a suit.  There has been a lot of --

17  but anyway --

18          MR. MEUNIER:  Well --

19          THE COURT:  I can just say it.

20          MR. MEUNIER:  But well, Judge, if --

21          THE COURT:  But I don't know it.

22          MR. MEUNIER:  But if the basis for deciding that they

23  are not at risk is --

24          THE COURT:  No, I'm not -- I'm saying they are

25  definitely at risk.  They may have chosen -- I don't know if

34

1  it's because they are uninformed, they don't want to file suit,

2  I don't know why.

3         MR. MEUNIER:  Well Your Honor, I don't know how much

4  of this you can take judicial notice of, but I will tell you as

5  an officer of the Court that I get calls every day, I get e-

6  mails every day not from lay people, lawyers asking me what's

7  up, what do we do?  What do we do with this approaching

8  deadline?  This is not uncomplicated.

9         THE COURT:  No, I agree.  I agree with that.

10        MR. MEUNIER:  And the template as Joe says is --

11        THE COURT:  I agree.

12        MR. MEUNIER:  -- is a community that's topsy-turvy.

13  So, I don't see how you could not frankly perceive that there

14  is a group of people out there who are either not represented

15  because they filed the wrong claim forms, and we know that's

16  true in a number of cases, or they got a claim form off the

17  internet that identifies a lawyer but the lawyer doesn't even

18  know that they have filed.

19        I think frankly that that's a phenomenon that we as

20  officers of the court can tell you exist.  You can take

21  judicial notice of it.  That's the at risk population.

22        THE COURT:  Okay, all right.

23        MR. MEUNIER:  Now, so if you have the authority under

24  Rule 17 in the manual for complex litigation, and I've cited

25  Section 10 which is a broad conferral of your appointive

1  authority in complex litigation.  If you had the authority and

2  if the common threads are here, and if the precedent in those

3  cases allows it, then I believe the question becomes:  Sure, I

4  can protect these people by doing something rather

5  extraordinary, I have the power to do it, but then what

6  happens?

7          And let me, if you don't mind Judge, share my

8  thoughts.

9          THE COURT:  Are you going to also talk about my --

10  and you can do it when you want, but I want to understand what

11  happened to either your suits, Mr. Becnel's suits, or

12  Mr. Bruno's suits.

13          MR. MEUNIER:  Yes, yes.

14          THE COURT:  Because I'm very, very concerned about

15  that.

16          MR. MEUNIER:  Let me talk about that.

17          THE COURT:  Because that's a curve ball to me.

18          MR. MEUNIER:  I have --

19          THE COURT:  Maybe it shouldn't be, but it is.  Go

20  ahead.

21          MR. MEUNIER:  I have prepared, and I am circulating

22  with Joe's help, to a number of attorneys in both MRGO and the

23  levee, a combined FTCA, AEA action against the Corps.  It will

24  be filed on August 29th and a number of those actions will be

25  filed on August 29th.  I know of attorneys who say regardless

1    of what Mr. Bruno and Mr. Meunier come up with as a joint plan,

2    I'm going to file mine and I'm going to attach my list and I'm

3    going to protect the people I know I represent.

4              So, this Court is going to get multiple filings.  So,

5    I think --

6              THE COURT:  I would assume that, and apparently

7    multiple plaintiffs.

8              MR. MEUNIER:  Multiple plaintiffs.

9              THE COURT:  What I'm saying, duplicate plaintiffs.

10             MR. MEUNIER:  Duplicate, overlapping, no doubt about

11   it.

12             THE COURT:  Overlapping, that's better.

13             MR. MEUNIER:  You're going to get overlapping.  I

14   will have a list of some people and lo and behold the same

15   people may show up on another list.  All of these things will

16   be filed, and that's going to happen.  And there is nothing

17   going to stop it, and so the question is:  We have all of these

18   multiple filings, but do we still have an at risk population

19   who has fallen through the cracks?

20             Now, and that's where the appointed counsel filing

21   comes in.  And it is an overlap filing.  The way it could

22   happen is, that the appointed attorney ad hoc files something

23   with the global risk that makes it clear that he's only

24   appointed to represent those on that list who are not already

25   represented by other counsel.

1          THE COURT:  That's a nightmare.  Don't you know who

2    is -- at least who you -- why can't you file at least suits to

3    protect your clients?

4          MR. MEUNIER:  And I will, I will.

5          THE COURT:  But why does the other guy then or the

6    other, the appointed person have to -- is the appointed person

7    filing a suit for every FTCA, every Form 95, excuse me, claim?

8          MR. MEUNIER:  Yes.

9          THE COURT:  So I mean, that's a nightmare for these

10   clerks, it's a nightmare.  It's a nightmare because you have a

11   person who at that point he's representing them, they are also

12   then represented by other people who file suits.

13         MR. MEUNIER:  No, he's by definition representing

14   only unrepresenteds and people who have not been covered by

15   other filings.

16         THE COURT:  And so, how do we cull all of that out if

17   he files for all of them?

18         MR. MEUNIER:  Well, that's what happens next, Judge,

19   and that's the concrete follow up action, if I may.  And I

20   think what I had conceived here was that after this happens,

21   and the only purpose -- the only purpose is to make sure that

22   the claim is preserved for everybody.  That's the only purpose.

23   And that has been done, because you've got attorneys filing for

24   the people they know they represent and you've got an appointed

25   attorney filing for everybody who is unrepresented and

1  everybody that attorneys may not know they represent.

2          THE COURT:  Well, and everybody that they know they

3  represent, apparently.

4          MR. MEUNIER:  Well, no, no.

5          THE COURT:  What you're telling me is they're filing

6  for the whole universe.

7          MR. MEUNIER:  No, not if it can be crafted in a way

8  to where his appointment is limited to represent that category

9  of people.

10         THE COURT:  I know, but the names on the suit --

11         MR. MEUNIER:  Well, if --

12         THE COURT:  What you're telling me is that the names

13  on the suit -- and these lawsuits mean something.  You know,

14  there are certain responsibilities that occur when you file

15  one.  I would hate to be the person that's appointed.  But

16  nonetheless, the order could be crafted that way and it's going

17  to have to be crafted very quickly.

18         MR. MEUNIER:  Right.

19         THE COURT:  If I do it.

20         MR. MEUNIER:  Right.

21         THE COURT:  And I have reservations about it.  You

22  know, I have a lot of reservations about a lot of things.  But

23  you're going to have this suit, again, which is new to me, this

24  suit that names people who are clearly represented and that you

25  know are represented.  So, you've got the suit filed by people

1    who are represented.

2            MR. MEUNIER:  Right.

3            THE COURT:  Even though the appointment is, so I

4    assume that a mass pleading then, a bunch of pleadings coming

5    in saying we're going to -- because this is duplicative, we ask

6    that this be dismissed or do you have -- I'm just wondering

7    what you do about it.

8            MR. MEUNIER:  Well Judge, the follow up --

9            THE COURT:  Go ahead.

10           MR. MEUNIER:  I think the follow up would be --

11           THE COURT:  What is the point -- tell me the point of

12   not leaving the names off of the people you, Mr. Becnel and

13   Mr. Bruno are filing.  What is the point?

14           MR. MEUNIER:  Well no, if -- believe me, if we had

15   the time to take the Corp's database of 350,000 people --

16           THE COURT:  So, when you file, you --

17           MR. MEUNIER:  -- and cull that list and say, okay, we

18   know all of these people have signed agreements with Bruno; we

19   know all of these people have signed agreements with

20   Gainsburgh; and just go through that process and then come up

21   with a list of names of people who are either unrepresented or

22   who filed something with some attorney on it and the attorney

23   says, "But I don't represent you."

24           THE COURT:  But you're going to be in there, but all

25   of you are going to be filing suits -- oh, I see.  You may not

1  be filing suits.  You, this Committee, may not be filing suits

2  on all August the 29th because you would be protected by the

3  omnibus filing in essence, although there will be other people

4  who will be filing?

5         MR. MEUNIER:  Right, I think so.

6         THE COURT:  Is that what you --

7         MR. MEUNIER:  What I'm trying to tell you, Judge, is

8  that there are some attorneys who are going to file on August

9  29th no matter what, because they want to protect their people.

10         THE COURT:  But if I grant this, this group would not

11  be filing a separate suit right at this point?

12         MR. MEUNIER:  Right.  Our hope would be that we

13  combine forces in one global filing with the appointed attorney

14  that captures the entire list, and that our people are within

15  that group and protected.  I'm just alerting the Court:  Please

16  don't think that with that done you're not going to get other

17  attorneys filing with their lists attached.

18         THE COURT:  Well, no, I understand that.

19         MR. MEUNIER:  And there is going to be an overlap.

20         THE COURT:  I understand.

21         MR. MEUNIER:  There is going to be an overlap.

22         THE COURT:  I understand that.

23         MR. MEUNIER:  Okay.

24         THE COURT:  I'm just wondering how do you start

25  allocating clients?

```
 1              MR. MEUNIER:  How do you then discern who is who?

 2              THE COURT:  Right.

 3              MR. MEUNIER:  And I think that's the next step and

 4    what, you see, my concept was that the first order of business

 5    after this happens and you've got the thing filed, is a process

 6    by which with this curator/attorney's involvement, we can

 7    actually discern who it is, who is a pro se in this case.  And

 8    that's what you ultimately get to.  And in Vioxx and Propulsid,

 9    you know, every time we have a meeting in the Vioxx case,

10    there's a report on Pro Se's.  They are protected through some

11    liaison who stands up and says, "Judge Fallon, here is what is

12    happening with the Pro Se."

13              Now, they're not taking action, they're not

14    responding to motions, but the judge knows they are there,

15    there's a population by name that can be identified, they don't

16    have lawyers.  And there is a liaison to the court that is

17    speaking for and on behalf of those people.  And that's

18    ultimately what you get to here, are the Pro Se's who don't

19    have attorneys, but who will have been protected by the filing

20    on August 29$^{th}$.

21              THE COURT:  Let me tell you something, and I might as

22    well tell you something that's on my mind, is that worst case

23    scenario for you, I don't grant this motion.  And one of the

24    reasons being that I think it's a tempest in a teapot, over the

25    admiralty, to preserve the admiralty claim.  That's what I
```

1    think and it's too tangled for me to -- and getting past the

2    authority thing, I'm going to have to hear from the Government.

3    But then, so but then how do we protect the FTCA claims?

4            I may get another motion at some point to the same

5    degree that at least at that time you would have sorted out

6    who's who.  This is one of those things we're rushing.  We are

7    rushing and I don't know exactly what we're creating, frankly,

8    to preserve the admiralty rights which in all due respect, I

9    know that people think are there, but --

10           MR. MEUNIER:  Well, that's it --

11           THE COURT:  -- they sure haven't pled it.

12           MR. MEUNIER:  That's it, Judge.

13           THE COURT:  All right.  I mean --

14           MR. MEUNIER:  We can take our time and we can discern

15    the Pro Se's, you're right.  And we can ultimately get to the

16    point where we've got a population of Pro Se's and you can

17    protect them and we can have a liaison and all of that, and we

18    can do it deliberately and thoroughly and the Government, no

19    one will have any problems with it.  The only difference will

20    be that a deadline will have been missed.

21           THE COURT:  Right.

22           MR. MEUNIER:  And --

23           THE COURT:  I understand that.

24           MR. MEUNIER:  And I again reiterate that it's not

25    purely academic in the views of some.

1          THE COURT:  Well, I'm not saying it's academic.

2          MR. MEUNIER:  And if the Court's --

3          THE COURT:  I know there are nuances in the admiralty

4    and I'm just saying so far, looking at these pleadings, we seem

5    a little --

6          MR. MEUNIER:  And well, but if the Court's decision

7    is appealed and if it is reversed, then it will have proven

8    true that a number of Pro Se's and a number of people who don't

9    know -- whose attorneys don't even know they're there --

10         THE COURT:  That's true.

11         MR. MEUNIER:  -- will have missed out --

12         THE COURT:  And I guess that's the appellant's call,

13   if I don't do it.

14         MR. BRUNO:  Judge, I just -- I have visited with

15   Loretta on this point and what -- so you know what this looks

16   like.  If you deny my motion this is what we will file.  We

17   will file this master complaint.  Loretta has agreed to allow

18   us to file a disk as an attachment.

19         THE COURT:  Right.

20         MR. BRUNO:  She has indicated to me that if you are

21   suing on behalf of more than 5,000 people she'll take the disk.

22   If you're suing for 5,000 people or less, she wants a piece of

23   paper with all of the names.  So, what we had contemplated,

24   again, if you deny this motion, Exhibit A, Joe Bruno's clients,

25   boom.  Exhibit B, Hugh Lambert's clients; Exhibit C, Gerry

```
 1   Meunier's clients, and there will be some overlap.  There will

 2   be, because we're not -- we're imperfect.

 3             I mean, I wish I could spend my day culling through

 4   65,000 names.  I would prefer to spend that energy on other

 5   things, so there will be this filing.  And the only difference

 6   between what we file and what you permit us to file would be

 7   Exhibit E, will be the list that the court-appointed person

 8   would be filing on behalf of.  That's the only difference now,

 9   nothing else.

10             THE COURT:  I understand that.

11             MR. BRUNO:  And I want to zip this thing up just as

12   fast as I zipped up the insurance thing.

13             THE COURT:  Well, let me go back to the admiralty

14   issue and then I think it's time for the Government to speak.

15   I have looked at these pleadings.  We've got two ways to get to

16   the Government, the Suits in Admiralty Act and the Public

17   Vessels Act.  There's no public vessel mentioned in any of the

18   pleadings.  There's no allegation that would invoke, in my

19   opinion, the Suits in Admiralty Act.  There's no allegation.

20   It's simply not in the pleadings, so they're not there.  We

21   have looked at them really, really closely.

22             So, no ship, forget navigability.  No ship, no case.

23   And they're not there.  They're not there.  And so, what the

24   heck are we talking about?

25             MR. MEUNIER:  Well Your Honor, the Admiralty
```

```
 1   Extension Act claim is predicated on vessel activity at least

 2   to the damage on land.

 3               THE COURT:  No, but is there an allegation though?  I

 4   know what it's for.

 5               MR. MEUNIER:  Yes, sure.

 6               THE COURT:  But is there an allegation that the

 7   Government chartered a vessel or owned a vessel?

 8               MR. MEUNIER:  Well --

 9               THE COURT:  I mean the Admiralty Extension Act gives

10   no specific cause of action.

11               MR. MEUNIER:  If the Government for example permits

12   vessels to dredge either in the Seventeenth Street Canal or in

13   the MRGO and it's done under Government authority, and it's

14   done with the knowledge and forbearance and can only occur

15   through the power of the Government, and if that dredging by

16   vessels in the MRGO and the Seventeenth Street Canal, assuming

17   both are navigable waterways.

18               THE COURT:  MRGO, certainly.

19               MR. MEUNIER:  Leads to flooding on land, I think

20   there's a colorable Admiralty claim.

21               THE COURT:  Well, I have looked at the pleading and

22   somehow nobody said that the Government -- if the Government

23   lets it.  I don't know; I haven't seen that.  If the Government

24   lets it, it's a private, you know.

25               MR. MEUNIER:  Well Your Honor, we have talked at
```

1   length about the dredging activity in the Seventeenth Street

2   Canal.

3            THE COURT:  I know, but is there any allegation that

4   the Government chartered the vessel?

5            MR. MEUNIER:  Well, the Government permitted the

6   dredging.

7            THE COURT:  I understand.  I understand about

8   permitting the dredging.

9            MR. MEUNIER:  I mean, if the basis for the Court's

10  ruling is that there's no allegation that vessel activity in

11  the Seventeenth Street Canal and/or MRGO --

12           THE COURT:  Not vessel activity.  It could be if a

13  private contractor, just because --

14           MR. MEUNIER:  Well --

15           THE COURT:  You know, I haven't seen anything that

16  would invoke the -- so I'm not sure what we're talking about.

17  But anyway, we have a disagreement on that, but I understand.

18           MR. MEUNIER:  Okay, Judge.

19           THE COURT:  I think it's time for the Government to

20  speak.

21           MS. COLQUETTE:  Thank you, Your Honor.  And I'll keep

22  my comments very brief.

23           THE COURT:  You don't have to.  None of us are being

24  brief today, including the Court.

25           MS. COLQUETTE:  Okay.

1      THE COURT:  None of like this dropped in our lap, I'm

2  sure, but go ahead.

3      MS. COLQUETTE:  Thank you.  Your Honor, we oppose the

4  appointment of a Special Master, particularly in light of the

5  Court's --

6      THE COURT:  All right, hold on.  I've got to make it

7  a little louder here since they have to take this down, it's

8  being recorded.  Okay, go ahead.

9      MS. COLQUETTE:  Your Honor, particularly in light of

10  the Court's indication that it's going to dismiss the Admiralty

11  claims, this is just unnecessary.  There is no showing that any

12  of these claimants desire representation or that they desire

13  that an Admiralty suit be filed on their behalf.  They haven't

14  requested it, they haven't authorized it.  There has been no

15  showing that they're incompetent to protect their own rights.

16  All of these people have already filed Form 95.  There are no

17  exigent circumstances here because they have known for at least

18  six months.  The Plaintiff's GNC have known for at least six

19  months that this was going to be an issue.

20      There is just -- there is no reason to grant such

21  extraordinary relief, particularly in light of a lot of the

22  questions that are left unanswered.  As the Court pointed out

23  we don't know what to expect or the notice requirements, how

24  that would be done, how long people would be given to respond.

25  We don't know who would represent who.  We don't know who would

1    respond to motions on behalf of these parties.  And finally,

2    these people could be prejudiced if they are forced into

3    federal court against their will or without requesting to be

4    there.  The Government could still deny administrative claims;

5    that's still a possibility.  And if that's the case, then these

6    people might lose their rights to sue.

7           THE COURT:  Can you tell me why they would lose their

8    right to sue?  I didn't quite understand it.  If I allow this

9    pleading that would name these people, the only place they can

10   sue is in federal court.  If I were to name these people, if I

11   were to allow this and they plead the Admiralty Extension Act

12   and the FTCA, tell me why they would be prejudiced, again?  I'm

13   not quite following that.

14          MS. COLQUETTE:  Well Your Honor, if we choose to deny

15   the claim in order to protect ourselves, the formal denial of

16   the claim starts the six months statute of limitations running

17   under 28 USC 2401(b).  They have six months then to file suit.

18          If for some reason the suit that was filed on their

19   behalf is flawed or is dismissed --

20          THE COURT:  Let's say the Court -- and that would be

21   because the Court -- the primary reason is the Court did not

22   have the authority, let's say, to do that, that if the Court of

23   Appeal were to rule that the Court abused its discretion in

24   applying Rule 17 in the manual on complex litigation; for some

25   reason, because appeal is always as it is in the Admiralty

1    context, an issue.

2            You're saying, let's say that I exceeded my authority

3    in doing this and this suit is dismissed.  Then you're saying

4    that if the six months would have been running, that these

5    people might be out; is that what you're saying?

6            MS. COLQUETTE:  Yes, Your Honor, if we had issued

7    denial letters.

8            THE COURT:  Right.

9            MS. COLQUETTE:  The denial letter, the formal denial

10   letter is what triggers the --

11           THE COURT:  No question.  The Court is well aware of

12   that.  I know they haven't been done, but if in the event the

13   Government decided to do that, and I'm wrong about this, it

14   could be an issue.  I understand.

15           MS. COLQUETTE:  All right.

16           THE COURT:  Hold on.

17           MR. BRUNO:  Judge?

18           THE COURT:  We have some rebuttal to that.

19           MR. BRUNO:  Yes.  Judge, here is -- and let me serve

20   notice on the Government right now.  March 1, 2008, the same

21   problem will raise its ugly head.  My thinking and my hopes and

22   my dreams relative to the FTCA rests on a belief, now law, a

23   hope, not law, that the Government won't issue a letter of

24   denial.  If my Government on September the 1st of 2007 issues a

25   blanket --

1          MS. COLQUETTE:  Your Honor, can you ask him to speak

2     up, please?

3          THE COURT:  Mr. Bruno?

4          MR. BRUNO:  I said if on September the 1st, 2007 my

5     Government decides to issue a letter of denial for everybody

6     who has filed an FTCA claim -- forget about the Admiralty,

7     forget it.  On March 1, 2008 I come before the Court and ask

8     for the same relief.  All of my thinking in the past, and I

9     have expressed this to the Court and to the Government on any

10    number of occasions, rests on a hope, a hope that the

11    Government would act responsibly and not issue a letter of

12    denial.

13         But the fact that they can, the fact that they might

14    is what starts this whole process anew and which is why I come

15    before you, agreeing with this Court, privately, not in my

16    role, please understand, because you're right on the Admiralty

17    claim.  You're right.  But the problem doesn't go away, it's

18    still there, and if the problem --

19         THE COURT:  I had sort of mentioned that in the sense

20    that in the event the Government did issue denial letters, I'm

21    sure I would have another motion even if I denied this one.

22         MR. BRUNO:  Identical.

23         THE COURT:  Saying protect my FTCA claim at least,

24    Judge, you've torpedoed my Admiralty claim.

25         MR. BRUNO:  Right.  And here's the last part of the

1    puzzle, and quite candidly, a problem of my making.

2         THE COURT:  Yes?

3         MR. BRUNO:  I have been public since the hurricane in

4    telling the public:  You don't have to hire me.  I urge you to

5    file the claim.  I didn't want to appear as someone who was

6    hustling cases or trying to improve my, you know, financial

7    stake in this thing, whatever it is.  And so, there are a lot

8    of people out there who believe, rightly, wrongly, or otherwise

9    that somehow or other I and these gentlemen and ladies are

10   doing something to protect their rights.

11        And as I said, Judge, I absolutely understand and

12   agree with everything that you've said, and that's why the

13   proposal I made is a proposal which is designed so that you

14   don't work, so that they don't work, so that Loretta Whyte does

15   not work.

16        THE COURT:  What about the harm?

17        MR. BRUNO:  But simply, you know --

18        THE COURT:  And I understand what you're saying,

19   you've all made good pleas.  But what about the point, what if

20   I do this in the Court of Appeal in the Fifth Circuit, and the

21   Fifth Circuit says I'm wrong?  What kind of -- does that put

22   the clients -- does the Government have a point there?  Does

23   that put the clients in a bind if these letters --

24        MR. BRUNO:  Well, let's walk through the scenario.

25   Okay, if the Fifth Circuit says that they didn't have the power

52

1   to file the lawsuit so I guess the lawsuit is not filed?  I

2   don't know.  But if it's not filed, then --

3             THE COURT:  But I didn't have the authority to do so.

4             MR. BRUNO:  All right.

5             THE COURT:  But let's assume it's --

6             MR. BRUNO:  Fair enough.  Where is the harm?  The

7   case is still out, as if it was never filed.  Again, I've

8   zipped it up, I've got it -- I mean we have agreed --

9             THE COURT:  But am I affecting the FTCA claims?

10  That's what I'm concerned about.

11            MR. BRUNO:  The FTCA claim is there, no harm, because

12  the FTCA claims have simply been preserved.  And once again --

13            THE COURT:  Well, if it's thrown out, the FTCA claim

14  was never brought.  And in order to get this decision --

15            MR. BRUNO:  I don't have to bring the FTCA claim.

16  The good news is -- here is the good news.  The only good news

17  is that --

18            THE COURT:  I'm talking about if the denial letter --

19            MR. BRUNO:  Well --

20            THE COURT:  I mean, I'm thinking the worst thing.

21            MR. BRUNO:  I understand.

22            THE COURT:  If the denial letters come out on

23  September 1st, let's say?

24            MR. BRUNO:  I am going to file -- I'm coming back to

25  you.

1          THE COURT:  And these people still are unrepresented

2     and my authority is wrong, so --

3          MR. BRUNO:  So --

4          THE COURT:  So, they may be lulled into a sense that

5     they're okay, when they're not?

6          MR. BRUNO:  No, no, no, no, no, because at least I'll

7     have time.  At least I'll have some breathing time, because at

8     least I'll be able to say to the public between now and -- I've

9     got six months.  The first thing that I need to know is whether

10    my Government -- and I say that advisedly, my Government will

11    issue a letter of denial.  Once that happens I have six months.

12    I can go on TV and I can do the PR thing.  At least I will have

13    done what I can do.

14         THE COURT:  Okay.

15         MR. BRUNO:  At least.

16         THE COURT:  I understand.

17         MR. BRUNO:  Now, so if the Fifth Circuit rules

18    against Your Honor and says, you know, and we're painfully

19    aware that that's a likelihood; but I say so what?  I still

20    have the role that I have.  I'm still court-appointed counsel.

21    I'm still going to do everything in my power to protect.  And

22    what I hope to do, and I have offered this to the Government a

23    thousand times; whatever we do, we do in such a fashion that

24    you don't spend a penny.  You're not at risk for anything.

25    You're not required to do anything.

54

1          THE COURT:  It just had a lot more claimants than

2    they might have had otherwise, right, sir?

3          MR. BRUNO:  No, they've got them anyway.  The FTCA --

4          THE COURT:  Well, they've got the forms.  They may

5    not have filed them.

6          MR. BRUNO:  They've got the forms.  They've --

7    nothing has changed.  They still have the forms which, by the

8    way, they're not investigating, but that's a whole 'nother

9    issue.  They're not administratively evaluating them, but that

10   piece of paper is sitting on somebody's desk on Leek Avenue.

11   That piece of paper will continue to sit there until such time

12   as my Government issues a letter of denial.

13          So, there is no difference if I'd agree and the Court

14   sanctions a request by the Government to do nothing, there is

15   no harm whatsoever to the Government and there's no harm to the

16   people and that lets us go about our business of determining

17   whether or not this theory that we've presented to you holds

18   any water or not.  Let the Fifth Circuit do whatever it's going

19   to do to us, but let's focus on the substantive issues in this

20   case, which is you've heard until I'm sure you don't want to

21   hear it any more.  But that's what this ought to be about.

22          THE COURT:  Well, let me ask the Government a

23   question.

24          Mr. Meunier spoke about the legal authority of the

25   Court to do this.  If the Government would like to rejoin and

1    give me its position, its legal position on that issue, legal

2    argument on that issue, my authority to do this?

3              MS. COLQUETTE:  Well Your Honor, Mr. Meunier

4    referenced the asbestos cases and those are distinguishable

5    from the situation here.  In that case the Court appointed a

6    Special Master to represent the interests of potential unknown

7    future claimants to a limited trust fund when, because the

8    latent period for assess of injuries was so long.  We don't

9    have anything like that situation here.

10             Here, the only potential Plaintiffs have already

11   filed Form 95s on or before March 1st, 2007.  They already --

12   we already know who all of those people are.  They know who

13   they are.  They can exercise their rights and make an

14   individual decision to sue or not to sue.  There's just no

15   reason under these circumstances for the Court to take

16   extraordinary steps of forcing these people into federal court

17   when there has been absolutely no showing that they have

18   requested it, that they desire it, or that they're incompetent

19   to represent their own rights.

20             THE COURT:  All right.  All right?

21             MR. LAMBERT:  Your Honor, just very briefly.

22             THE COURT:  You might state your name, sir.

23             MR. LAMBERT:  Hugh Lambert.

24             THE COURT:  Mr. Lambert is speaking.

25             MR. LAMBERT:  Your Honor, the --

1          THE COURT:  Yes, you might go up to the mike so the

2    Government can hear you.

3          MR. LAMBERT:  With regard to the competency of the

4    people to represent themselves or to know when they need to be

5    represented, or to file suit; there's a great deal of confusion

6    between what a Form 95 is.  I've never heard of one, quite

7    frankly, until recently.  And a lot of my friends, at whatever

8    education level, have absolutely no idea what the difference

9    between a Form 95 is that they've filed with the Government and

10   a lawsuit, in terms of protecting their rights.

11         So, the idea that this is not confusing is I think

12   inaccurate.

13         THE COURT:  Well, what is particularly confusing,

14   frankly, is the difference statute of limitations that applies

15   to the AEA, if in fact this is an Admiralty claim, and the

16   Federal Tort Claims Act.  That is confusing.

17         MR. LAMBERT:  That's correct.

18         THE COURT:  Certainly to a lay person and to some

19   lawyers who didn't know about it.

20         MR. LAMBERT:  Exactly.  And you know, we forget that

21   a lot of people that are -- whose rights will be affected next

22   week, don't even live in New Orleans right now.  They are still

23   displaced.

24         THE COURT:  Well --

25         MR. LAMBERT:  And a lot of people, quite frankly, try

1   very hard not to think about Katrina every day, though we all

2   do, particularly this group.  But the idea that it's in the

3   forefront of everyone's mind is just inaccurate.

4           The next thing is, Your Honor, that these lawsuits

5   are going to be filed and I think getting down to the nut

6   cutting, Exhibit A, B, C --

7           THE COURT:  Don't ever say that in the Fifth Circuit.

8           MR. LAMBERT:  Sir?

9           MR. BRUNO:  Yes, don't discuss the case on that.

10          THE COURT:  Yes.

11          MR. LAMBERT:  Oh, the nut thing?

12          MR. BRUNO:  Yes.

13          THE COURT:  Yes.

14          MR. BRUNO:  Say it again, why don't you?

15          THE COURT:  I'm perhaps, as a district judge --

16          MR. LAMBERT:  Sensitive to that term?

17          THE COURT:  Less sensitive, because that's what we

18   do.  But anyway, go ahead.  Go ahead.

19          MR. BRUNO:  It's like a hardware term.

20          MR. LAMBERT:  Boy, I stepped into that one.

21          MR. BRUNO:  Yes, this is a hardware term.

22          MR. LAMBERT:  I'm sorry about that, Your Honor.

23          THE COURT:  That's quite all right.

24          MR. LAMBERT:  Anyway, the point is, is that the

25   difference between what happens --

1            THE COURT:  Excuse us.

2            MR. BRUNO:  And you wonder why I don't want you to

3    speak.

4            MR. LAMBERT:  That's okay.  We all need a little bit

5    of laughter now and then, I swear.

6            THE COURT:  You're right about that.  Go ahead,

7    Counsel.

8            MR. LAMBERT:  The difference between what happens if

9    Your Honor allows the appointment of an individual to protect

10   the rights of these individuals and what happens if you allow

11   that and what you don't is simply that there's another

12   attachment.  And it's not the clerk's office that's going to

13   work out the problems that you foresee of whether Mr. Meunier

14   and Mr. Becnel or myself or the special appointee represent the

15   individuals.  That's going to be worked out by a computer and

16   reviewed by an outfit like Danny Clavier and there's going to

17   be a little while to figure out how this goes and when it's

18   over, it will be all in a neat package and nobody will ever

19   have to be concerned about it in this courthouse.

20           THE COURT:  Okay.  I'll accept that.

21           MR. LAMBERT:  The idea that that's going to be the

22   Court's responsibility is wrong.

23           The next thing is the wording of the notice.  I'm

24   sure it will be worked out between the Government and

25   Your Honor and the lawyers that are here, present today, as

1   well as this individual who is appointed.  And I believe firmly

2   that we could all figure that out.

3              THE COURT:  While you're up, and somebody else may

4   want to weigh in.  Since I have to consider all of this and

5   it's a lot to consider in a short time and as everyone has

6   pointed out, are there, in the event that I would grant this

7   motion; any suggestions as to who the lucky person would be

8   that would get this appointment?

9              MR. BRUNO:  Yes, Vernon Thomas.

10             MR. LAMBERT:  I don't know who that is, but that's

11  fine with me.

12             THE COURT:  I don't either.

13             MR. LAMBERT:  But my point is, Your Honor --

14             THE COURT:  Mr. Vernon Thomas; can you give me a

15  little background on Mr. Thomas?

16             MR. BRUNO:  Vernon Thomas is a local lawyer who

17  participated in the CSX Gentilly litigation.  He was -- he lost

18  his house, all of his houses.  He's a lawyer.  He's African

19  American.  He's a great guy.

20             THE COURT:  Okay.  All right, that's one suggestion.

21  Any --

22             Go ahead, Mr. Lambert.  I didn't mean to interrupt

23  you.  I just thought about that.

24             MR. LAMBERT:  That's not a problem.  Now, we can give

25  you a list of -- I mean Your Honor can make his own list.

1           THE COURT:  Sure.

2           MR. LAMBERT:  It doesn't really matter, because the

3   work that this individual is going to have to do has to do with

4   more of making sure that the people that are operating the

5   culling out of who belongs in what category is done fairly and

6   properly and transparently.

7           THE COURT:  Okay.

8           MR. LAMBERT:  And I think that it's a computer job

9   but it needs to have some overlooking.  The lawsuit itself will

10  not be different in that the thing that happens is, is that it

11  gets to be more simplified.  Now, I know Your Honor may ask

12  himself why is it that this hasn't happened before now?  And

13  the answer to that is I can't even look at the list of 350,000

14  people.  There's an agreement with the Government for some

15  unknown Homeland Security reason which seems to just raise its

16  head every time somebody doesn't want to show somebody

17  something; but the point is, is that we can't do that right

18  now.  It's not a document that's available to be weeded

19  through.

20          I don't want to use any other little phrases like

21  that.  Is weeded through okay?

22          THE COURT:  Sifted through.

23          MR. LAMBERT:  Sifted through, thank you.  But the

24  point is, is that we can do that in whatever protected

25  environment the Government requires, because it ultimately

1  simply means that a person doesn't lose their rights because of

2  this confusion.

3          And Your Honor, more importantly, at the point in

4  time when an individual receives his or her notice that says

5  your rights have been protected and you've got this amount of

6  time to do something; that person at that point in time,

7  Your Honor, is welcome to say, "I don't want to do anything.  I

8  want you to remove my name from this list.  No harm, no foul.

9  I just don't want to be involved."

10          And if that's the case, fine.  But as Joe points out,

11  that's down the road.  And so, the real issues in the case

12  won't be affected by this filing.  The very first point made

13  was, is that if the Government's right and they're protected,

14  it doesn't matter whether there's ten people or 350,000 people,

15  they are just as immune from one circumstance to the other.

16  It's just that individual who is confused that we're asking you

17  to protect.

18          And I have to raise one more issue, and that's

19  because I've been asked to.  Attorney General Foti is

20  considering filing the same action if the Court doesn't allow

21  the individual appointment.  The problem is an issue of

22  standing and whether or not his office allows him to protect

23  individuals as opposed to just the State's interest which

24  obviously he's involved in with regard to --

25          THE COURT:  Another intriguing new issue.

62

1          MR. LAMBERT:  It is.  But the point is, Your Honor,

2   that there's a lot of concern about this and it's simplified if

3   Your Honor will just grab a hold of it.

4          THE COURT:  Okay.  I understand.  Let me tell you

5   though that anybody who has been before this Court or that who

6   knows how the Court operates, we are all constructed a certain

7   way.  I have to have some intellectual legal basis to do this.

8   And I've got to be convinced that it's sound enough for me to

9   do it, no matter.  And I'm not going to do it just because it

10  feels good.

11         MR. LAMBERT:  No, no.  And I understand, Your Honor.

12         THE COURT:  Just keep that in mind.

13         MR. LAMBERT:  But I think Mr. Meunier --

14         THE COURT:  I've got to be convinced of that and I'm

15  going to, you know, I only have about two or three hours to

16  make a decision here, apparently.

17         MR. LAMBERT:  I think, Your Honor, Mr. Meunier

18  outlined that.

19         THE COURT:  He did.  And I think that's -- as Peggy

20  Lee said in the song, I think:  That's all there is.

21         MR. LAMBERT:  That's really all there is.

22         THE COURT:  All right.

23         MR. MEUNIER:  Thank you, Judge.

24         MR. BECNEL:  Thank you, Judge.

25         MR. LAMBERT:  And thank you very much, Your Honor.

 1          THE COURT:  All right.  If the Government would like

 2    any last word, you're certainly welcome to, or any words.

 3    You're still, your position, I understand it; is there anything

 4    else that you would like to say?

 5          MS. COLQUETTE:  I don't think so, Your Honor.  I

 6    think we have -- I think I have said everything that I have to

 7    say.

 8          THE COURT:  Right.

 9          MS. COLQUETTE:  Thank you.

10          THE COURT:  Thank you very much.

11          MS. COLQUETTE:  All right.

12          MR. BRUNO:  Thank you, Judge.

13          THE COURT:  We will try to get something out

14    forthwith.

15          How much time do you need?  Tell me your --

16          MR. BRUNO:  We can turn this around within 24 hours.

17    It's just a -- it's a disk and it's just an attachment, or it's

18    not.

19          THE COURT:  And the disk did come from the

20    Government, correct?

21          MR. BRUNO:  Yes.

22          MR. MEUNIER:  Yes.

23          MR. BRUNO:  Yes, Your Honor.

24          THE COURT:  All right.  Thank you all very much.  We

25    are going to adjourn and I'm going to repair to my chambers.

64

1    Thank you.

2        (All Counsel respond, "Thank you, Your Honor.")

3                      *    *    *    *    *

4                    (Hearing is Concluded)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# **C E R T I F I C A T E**

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**/s/Dorothy M. Bourgeois**                **_8/28/07_**
**Dorothy M. Bourgeois**                    **Date**