UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES   *       Civil Action No. 05-4182
                                *       Consolidated Litigation
_____ *
                                *       Section "K"
PERTAINS TO:                    *
RECORD DOCUMENT # 1731,         *       New Orleans, Louisiana
2345, 2382, 2919                *       February 28, 2007
                                *
* * * * * * * * * * * * * * * * *


                    MOTIONS HEARING,
        BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
               UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Consol Plaintiffs:          Ashton R. O'Dwyer, Jr., Attorney
                                  At Law
                                By:  ASHTON R. O'DWYER, JR., ESQ.
                                6034 St. Charles Avenue
                                New Orleans, Louisiana 70118


For the State of                Louisiana Department of Justice
Louisiana:                      Office of Attorney General,
                                Litigation Division
                                By:  PHYLLIS GLAZER, ESQ.
                                By:  MICHAEL KELLER, ESQ.
                                601 Poydras Street, Suite 1725
                                New Orleans, Louisiana 70130


For the Defendant,              Oats & Hudson
Louisiana Department of         By:  MICHAEL DURAN, SR., ESQ.
Transportation:                 Gordon Square
                                100 East Vermilion Street
                                Suite 400
                                Lafayette, Louisiana 70501

2

APPEARANCES (Cont'd.):


Court Audio Operator:          Bonnie G. Hebert


Transcriptionist:              Dorothy Bourgeois
                               c/o U.S. District Court
                               500 Poydras Street, Room C151
                               New Orleans, Louisiana 70130
                               (504) 589-7721

Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

**I N D E X**

| PLAINTIFF EXHIBITS: | Marked | Received |
|---|---|---|
| P-1  8 Photographs of Ashton O'Dwyer's Wounds | 17 | 17 |
| P-2  Public Records Act Request | 18 | 18 |
| P-3  Public Records Act Request | 18 | 18 |
| P-4  Public Records Act Request | 18 | 18 |

4

```
 1                   P R O C E E D I N G S

 2                  (Wednesday, February 28, 2007)

 3                    (Call to Order of the Court)

 4            THE COURT:  Good morning.

 5       (All Counsel respond, "Good morning, Your Honor.")

 6            THE CLERK:  This is Civil Action 05-4182 consolidated

 7   with reference to 06-4389, 06-1699, also 06-5786.  These are

 8   the four motions this morning and this is In Re:  Katrina Canal

 9   Breaches Consolidated Litigation.

10            THE COURT:  Do you want to make your appearances,

11   please?

12            MR. O'DWYER:  Ashton O'Dwyer for Plaintiffs,

13   Your Honor.

14            THE COURT:  Thank you, sir.

15            MS. GLAZER:  Phyllis Glazer for the State of

16   Louisiana and all of the State Defendants sued in those three

17   cases.

18            THE COURT:  Thank you.  Before we -- and you can be

19   seated, the Court has got to give a little monologue before we

20   start.  Before the Court today is a Motion to Dismiss involving

21   Case Number 06-4389 and 06-6099 filed by the State of

22   Louisiana, Governor Blanco, the State of Louisiana through the

23   Department of Transportation and Development, otherwise

24   referred to as DOTD, the State of Louisiana through the

25   Military Department, Office of Homeland Security and Emergency
```

1    Preparedness, Colonel Jeff Smith, the State of Louisiana

2    through the Department of Social Services or DSS, Secretary Ann

3    S. Williams, State of Louisiana through the Department of

4    Public Safety & Corrections or DPSC, and Secretary Richard L.

5    Stalder.

6           That's Document 1731 just for the record.  As this

7    particular umbrella, the docket numbers have become so

8    voluminous that referring to them is helpful.

9           Document 2345, which is a Motion for Sanctions filed

10   by the State of Louisiana based on Rule 11 and 28 USC Section

11   1927.

12          Document 2382, which is Plaintiff's Motion to

13   Disqualify the Louisiana Department of Justice's Counsel of

14   Record for all state and state agency Defendants.

15          And then, Document 2919 is a Motion to Dismiss

16   Defendants in 06-5786 filed by the State of Louisiana, Governor

17   Blanco, DOTD, Johnny Bradberry, Secretary of DOTD, State of

18   Louisiana through the DPSC, the Secretary of DPSC, Richard L.

19   Stalder; and those are the motions that we have.

20          I'm going to go through a timeline of the Court's

21   understanding of what has occurred by filings in this matter,

22   and then either of you, or both of you, can certainly tell me

23   any significant filings that I have omitted.

24          On 9/19/05, 05-4181 was filed.  It was amended eleven

25   times.  Then on 3/09/06 there was a motion -- for a period of

1    time after 9/19/05.  Then, on 3/09/06 a Motion for Leave to

2    file the twelfth amended complaint attempting to allege the

3    applicability of general maritime law to the claims was filed,

4    and the Motion for Leave was denied.

5            There was an appeal taken to that denial and on May

6    10th, '06 that appeal was denied.  The Motion for

7    Reconsideration of the appeal was denied on 5/22/06.

8            On 6/21/06 a twelfth amended complaint was allowed to

9    be filed to 4181, and that added additional Defendants, B&K

10   Construction, Burk-Kleinpeter, Geotech, Inc., Pittman

11   Construction and the Washington Group International, alleging

12   negligence with respect to services on all the canals.  Also,

13   CSX was added re the Industrial Canal.

14           Then on July 19th, '06 I issued an order and reasons

15   dismissing the State and other Defendants and I stated in that

16   ruling that, one, the eleventh amendment immunity attaches to

17   state actors and that, two, qualified immunity as to all 1983

18   claims against Governor Blanco applied.  I stated unequivocally

19   that the wholesale list of federal jurisdictional grounds

20   bordered on the absurd and found it, quote, verging on the

21   sanctionable at Page 12 of that order.  That of course is the

22   listing of a lot of federal statutes without any specific

23   allegation as to how the nexus, the factual nexus of the case

24   made that statute applicable and to which Defendant that

25   statute applied, or if all or part of the Defendants.

1          I found that the pleadings were conclusory, non-

2   specific and incomprehensible.  I also noted that the

3   hyperbolic language would not be tolerated and might subject

4   the Plaintiff's attorney to sanctions.

5          A judgment was entered and there are appeals on that

6   ruling and other rulings that have been filed by the Court.

7   And my understanding is those appeals are still viable.  I note

8   that the State indicated that the costs were not paid but it's

9   my understanding and Mr. O'Dwyer can correct me if I'm wrong,

10  after I finish; but my understanding is those appeals are

11  viable and that the costs were paid.  They were reinstated and

12  the costs were paid.

13         On August 4th, '06 Boh Brothers filed Motions for

14  Sanctions -- filed a Motion for Sanctions.

15         On August 17th, '06, Plaintiffs filed -- and it's the

16  same -- it seems to me, they have many, many Plaintiffs named,

17  but it seems to be, at least it's substantial to the same

18  Plaintiffs, filed 06-4389 against the State of Louisiana

19  through the Department of -- through the DOTD and Secretary

20  Bradberry, alleging here the general maritime law as the basis

21  for the Court's original subject matter jurisdiction.  Okay.

22         This case also named Mayor Nagin, the president of

23  the Sewerage & Water Board, the Sewerage & Water Board, the

24  Board of Commissioners, the Port of New Orleans, various

25  engineers and other similar Defendants.  I'm not naming them

1    all, also CSX, et cetera.  And it seems to relate to the

2    failure of the Defendants to discharge their duties in relation

3    to the MRGO, the Gulf Intracoastal Waterway, the Industrial

4    Canal and the London Canal and the Seventeenth Street Canal.

5          On August 27th -- excuse me, on August 22nd, '06,

6    8/22/06, Mr. O'Dwyer responded with a Motion for Sanctions

7    against Boh Brothers' counsel.

8          And on August 26th, '06 Mr. O'Dwyer filed what is to

9    become here, Number 06-5786 in state court.  It was later

10   removed to this Court.

11         On September 6th, '06 there was a hearing on the Boh

12   Brothers/O'Dwyer sanctions motion.  I ruled from the bench and

13   I did not impose any monetary sanctions and reiterated my

14   warnings concerning the pleadings in this matter, among other

15   things.

16         On September 08, '06, Number 06-5786 was removed to

17   federal court from the state court by B&K Construction.

18         On 9/19/06 the Plaintiffs filed Number 06-6099 which

19   is entitled, quote, Protective Refiled Complaint for

20   Compensatory and Exemplary Damages and Reasonable Attorneys

21   Fees and Taxable Costs.  This seems, to the Court, to be

22   extremely similar to 05-4181.

23         On 9/22/06 the DOTD is dismissed from 05-4181, 05-

24   6073 and 06-0020 based on sovereign immunity.

25         On 9/26/06 the DOTD was served with 06-4389.

1          We have a note that on October 23rd, '06 the DOTD and

2     other moving Defendants were served with 06-6099.

3          And on 1/11/07 the Plaintiffs request service on the

4     06-5786 case.

5          Those are the timelines that I have and let me lay

6     down the protocol for this hearing.  I do not need to hear oral

7     argument on the Motions to Dismiss, and I'm going to make my

8     ruling on those in just a minute.  I am going to hear 15

9     minutes of oral argument, each, on the sanctions motion.  In

10    fact, I'll give you 20 minutes each.  That's what the Court of

11    Appeal gives you.  Twenty minutes each on the sanctions motion

12    and five minutes each on the Motion to Disqualify.

13         On the substantive motions, the Court has already

14    ruled and it is on appeal that sovereign immunity applies here

15    and it has not been waived.  Mr. O'Dwyer has argued that it has

16    been waived.  The Court finds that argument extremely

17    unpersuasive.  But again, it's on appeal.

18         The Court has ruled that in the responder type cases

19    that under the circumstances -- for the reasons stated,

20    basically in its ruling of July 19th, 2006 that qualified

21    immunity applies, reference the 1983 claims, and those are the

22    only claims that the Court finds that are stated against the

23    Defendants that are federal claims.  The Court has already

24    admonished Mr. O'Dwyer for a litany of federal statutes that

25    were not connecting the dots, in essence.  In other words, a

1   panoply of statutes, a panoply of Defendants and no allegations

2   that connect the specific statutes to the specific Defendants.

3   This is clearly not an appropriate pleading method.  I have

4   advised Mr. O'Dwyer of this.  It is the Court's -- and not

5   supposed to be divining rods, and that's my view.

6        Again, that may be on appeal as well.  It is my view.

7   It shall be my view, and it is my view that pleadings that

8   simply list numerous federal statutes and lots of defendants

9   and don't say which statutes apply to which defendants or just,

10   and they just say all of them apply to all defendants; but if

11   there's no factual nexus connecting that, then that is

12   meaningless to me, and improper, as I have stated.

13        Therefore, as to Document 1731, the Motion to Dismiss

14   in 06-4389 and 06-6099, I'm going to grant the Motion to

15   Dismiss the State of Louisiana, Governor Blanco, the DOTD, the

16   Office of Homeland Security and Emergency Preparedness, the

17   DSS, and the individual Defendants to the extent that they're

18   still in their official capacity.  The defense in there would

19   be the state, the sovereign immunity.  To the extent that

20   they're named in their individual capacity, I find that

21   qualified immunity applies for the same reasons I found in the

22   ruling in 4181, 05-4181, which is presently on appeal.  So,

23   that disposed of Document 1731 and a judgment will be entered

24   accordingly so that Mr. O'Dwyer can -- even though I'm going to

25   issue a Rule 54 judgment, since it doesn't dispose of the

1   entire case, unless for some reason I dispose of the entire

2   case later on, so that he will have an opportunity to appeal.

3            Now, the State has filed a Motion to Dismiss 5786

4   which is the remove case, and saying that service is not

5   accomplished in accordance with the statute, that is Louisiana

6   Revised Statute 13:5107(d)(1), which requires service to be

7   requested within 90 days of the commencement of the action; if

8   not, (d)(2) requires the action to be dismissed without

9   prejudice after a contradictory motion is heard.

10           Let me ask the State a couple of questions on this,

11  and I'm going to give you a chance on this, Mr. O'Dwyer.  The

12  State is contending that service has not been made in this case

13  according to the Louisiana Statue?

14           MS. GLAZER:  Yes, Judge.

15           THE COURT:  Which would mean that the case would be

16  dismissed without prejudice by this Court?

17           MS. GLAZER:  Yes.

18           THE COURT:  Against the Defendants named therein?

19           MS. GLAZER:  The State Defendants.

20           THE COURT:  The State Defendants?

21           MS. GLAZER:  Yes.

22           THE COURT:  And of course, you're not contending that

23  the Court has jurisdiction over?

24           MS. GLAZER:  Right.

25           THE COURT:  The removal was by another party?

1          MS. GLAZER:  Yes.

2          THE COURT:  And I assume the State's at least the

3    strategy here is for if they are going to be sued, you want to

4    be sued in state court?

5          MS. GLAZER:  Yes, Judge.

6          THE COURT:  Okay.  Mr. O'Dwyer, on that specific

7    motion do you have anything to add as to the one, the remove

8    case?

9          MR. O'DWYER:  Your Honor, not that I haven't already

10   said in my pleadings.  I think that where this is going is I'm

11   going to be looking at a plea of prescription, and I realize

12   that the law on this issue is against me.  I fouled up.  But

13   take it out on me; don't take it out on my clients.  That's all

14   I have to say.

15         THE COURT:  Okay.  I assume it is the State's

16   position that a dismissal without prejudice -- that because

17   there was no service there was no interruption of prescription;

18   is that what the State position is?  I mean, I'm not --

19         MS. GLAZER:  Exactly.

20         THE COURT:  Okay.  So Mr. O'Dwyer's point is that as

21   a result of that, the suit may well be -- against the State

22   Defendants may well be prescribed?

23         MS. GLAZER:  A later suit if filed in CDC would be

24   prescribed.  That's the argument.

25         THE COURT:  I understand Mr. O'Dwyer's argument but

1   unfortunately, I am obligated to follow the law in this matter.

2   And therefore, I grant the State's Motion to Dismiss without

3   prejudice in Number 06-5786 in that service was not

4   accomplished pursuant to Louisiana Revised Statute

5   13:5107(d)(1).

6           Okay.  With all of that done, let's get to the

7   motions, the sanctions and the Motion to Disqualify.  I'm

8   giving you each 15 minutes and I guess Mr. O'Dwyer, since they

9   filed the -- do you want to take your Motion to Disqualify

10  first?

11          MR. O'DWYER:  Your Honor, I wanted to make two brief

12  points to record on the record, objections to Your Honor's

13  ruling.

14          THE COURT:  Certainly.

15          MR. O'DWYER:  The first objection, Your Honor, is on

16  the waiver argument.  I originally cited to the Court Civil

17  Action Numbers 05-4157 and 06-3813, among others, as indicating

18  a persistent and systematic invocation of the jurisdiction of

19  federal court.  It has since come to my attention, Your Honor,

20  that there are two additional cases that I wish to specifically

21  refer to on the record.  I'm not sure whether Your Honor is

22  fully apprised of them, or not.

23          THE COURT:  Okay.

24          MR. O'DWYER:  The first one was a suit filed by

25  Governor Blanco.  I believe the State was a defendant.  I do

```
1    not have the civil action number.  I believe the primary

2    defendant was the Department of the Interior.

3              THE COURT:  Yes, sir.

4              MR. O'DWYER:  And the case had to do --

5              THE COURT:  I'm familiar with that case.  Is that the

6    offshore leasing?

7              MR. O'DWYER:  Yes, it is, Your Honor.

8              THE COURT:  Yes, I'm familiar with it.

9              MR. O'DWYER:  All right.  The second case that only

10   recently came to my attention, quite by accident, is Number 06-

11   3552.  For some reason this case was under the radar of myself

12   and a number of other counsel in the 05-4182 umbrella.

13   Apparently, the State of Louisiana, through Attorney General

14   Charles C. Foti is a party plaintiff to that case representing

15   the State of Louisiana and the people of Louisiana.  And I

16   believe that legal repercussions or ramifications flow from

17   that and the other action cited, and I wanted to put that on

18   the record.

19             THE COURT:  But now that --

20             MR. O'DWYER:  The only other point that I would make,

21   Your Honor.

22             THE COURT:  Go ahead, sir.

23             MR. O'DWYER:  The only other point that I would make

24   is that --

25             THE COURT:  I am right about your -- excuse me for
```

1    interrupting you, but I am right about -- your appeals are

2    viable.

3              MR. O'DWYER:  Yes.

4              THE COURT:  Yes.

5              MR. O'DWYER:  I do want to correct one thing.  On

6    Monday I hand-delivered a cashier's check to Deputy Clerk

7    Allison Lopez at the Fifth Circuit and got a receipt.  There

8    are three Katrina Canal appeals.  I am in default on the last

9    $455 in fees which were otherwise due last Monday.  I don't

10   have it right now.  I hope to have it by tomorrow.  But I'm in

11   default on that one.

12             THE COURT:  Okay.

13             MR. O'DWYER:  But she and the Chief Clerk have told

14   me they are not going to dismiss my appeal, they are going to

15   cut me some slack.

16             THE COURT:  Yes, the last time I looked at it, your

17   appeals were fine.

18             MR. O'DWYER:  They're fine.

19             THE COURT:  Okay.

20             MR. O'DWYER:  All right.  Your Honor, the dismissal

21   of individual Defendants sued as -- sued in their individual

22   capacities as opposed to their official capacities, I

23   respectfully submit that Your Honor is in error on that issue,

24   because my claims against those individuals arise under the

25   Court's supplemental jurisdiction and the waiver of sovereign

1   immunity contained in Article 12 Section 10(a) of the Louisiana

2   Constitution of 1974 and Title 9, Section 2738.1, and I also

3   maintain that the responder allegations -- I don't know exactly

4   what civil action number they apply to -- do not afford those

5   actors in their individual capacities immunity under Louisiana

6   Revised Statutes, Title 9, Section 735.

7          And I have also alleged willful misconduct, so I

8   wanted to put that on the record as well.

9          THE COURT:  Thank you, sir.

10          MR. O'DWYER:  And I will appeal your ruling.

11          THE COURT:  Thank you, sir.

12          MR. O'DWYER:  Your judgment.

13          THE COURT:  And I will enter it so you --

14          MR. O'DWYER:  And thank you for the 54(b)

15   certification.

16          THE COURT:  Right.  But just to get that, that's the

17   appropriate way to do it.

18          MR. O'DWYER:  All right.

19          THE COURT:  Does the State have anything to add to

20   what Mr. O'Dwyer said on that issue?

21          MS. GLAZER:  No, Judge.

22          THE COURT:  Okay.  With that, Mr. O'Dwyer, we

23   probably ought to take the Motion to Disqualify before I hear

24   the Motion for Sanctions.

25          MR. O'DWYER:  All right.

1              THE COURT:  And let's just take five minutes on

2    that.

3              MR. O'DWYER:  All right.

4              THE COURT:  But it looked to me, and tell me if I'm

5    wrong; it looked to me like -- look, I am not even -- I am

6    assuming the accuracy and I don't have case, that you went

7    through a terrible experience as a result of Hurricane Katrina

8    and the aftermath and what happened to you.  I'm not sure why

9    though that that experience is visited -- those sins are

10   visited upon the Attorney General.  And then, I guess that's

11   what I'm interested in.

12             MR. O'DWYER:  All right.  Your Honor, I'll begin my

13   argument by offering and introducing and filing into evidence

14   as Plaintiff's Exhibit 1 through 8, photographs of my wounds.

15   May I?

16             THE COURT:  Yes, you may do so.  Go ahead.

17             MR. O'DWYER:  All right.

18             THE COURT:  I have seen them.

19             MR. O'DWYER:  All right.  I was shot in both thighs

20   repeatedly with a 12 gauge shotgun loaded with beanbag rounds

21   and I was a bloody mess.  My right thigh got infected and

22   swelled to twice its normal size.  I was treated for eight days

23   at the Combat Support Hospital where the wound had to be

24   drained, repacked, unpacked, and lanced every day.  It wasn't a

25   pleasant experience.

1        The Saturday before this criminal gangland style hit,

2   I was visited at my home by two employees of the Louisiana

3   Department of Justice; one is a member of the Bar of this

4   court, Mr. Burton Guidry, the other was an investigator.  I

5   thought it was a social visit.  I now realize that it was

6   something a lot more sinister than that.  I have not been able

7   to identify who ordered the hit; however, I have made Public

8   Records Act requests which I will mark for identification and

9   offer, introduce and file into evidence as Plaintiff's Exhibits

10  2, 3 and 4, to the Louisiana State Police, the Department of

11  Public Safety and Corrections and to the Louisiana Department

12  of Justice.

13        THE COURT:  And that's Exhibit 2?

14        MR. O'DWYER:  Exhibits 2, 3 and 4 are the Public

15  Records Act requests, Your Honor.

16        THE COURT:  All right.

17        MR. O'DWYER:  The lawyer who was handling the

18  response to discovery in litigation and the Public Records Act

19  requests is Counsel in this case, Mr. Michael Keller; and other

20  than a letter that I got from Assistant Attorney General

21  Charles Breaux on January 24 of '04 (sic) which really told me

22  nothing that I didn't already know, there has been no response

23  by the State parties to the Public Records Act requests or the

24  discovery, I maintain, because Mr. Keller, an employee of the

25  LDOJ is keeping a lid on it.

1          Now, I don't think you have to be a rocket scientist

2  to figure out that there is a connection between them coming to

3  my house on Saturday September the 17th and the State Police

4  coming to my house in the middle of the night, for nothing, on

5  the 19th, and telling me that I'm coming with them.  Who

6  ordered the hit?  This is something out of All the Kings Men.

7          THE COURT:  You were arrested on September the 19th?

8          MR. O'DWYER:  No, sir.  I maintain I was not

9  arrested.

10          THE COURT:  Well, what --

11          MR. O'DWYER:  My property was trespassed upon by the

12  State Police who pulled in my driveway at five after midnight,

13  while I'm sitting outside watching television with no criminal

14  activity whatsoever going on.  I told them to get off the

15  property, that they were not authorized to be there, unless

16  they were coming to serve a warrant or make an arrest.

17          And I was told in no uncertain terms, "Sir, you are

18  coming with us."

19          All of this is in my papers.

20          THE COURT:  Right.

21          MR. O'DWYER:  In my affidavit.

22          THE COURT:  Right.  I did see that.

23          MR. O'DWYER:  Et cetera.  Has anyone been sanctioned,

24  Your Honor, for the criminal conduct that was committed against

25  me?  I can't even find out from the LDOJ who dispatched the

1   State Police to my house.  There have to be radio records.

2   There have to be dispatcher's logs.  What they heck were they

3   doing coming to 6034 St. Charles Avenue at five after midnight

4   on September 19, 2005 when you saw yourself the looters that

5   ran rampant through the city for weeks after the storm.  And it

6   was necessary to come to my house, to get poor little Ashton

7   O'Dwyer, who is now being accused of harassing the State of

8   Louisiana?

9          Your Honor, I respectfully submit they have to get

10  serious.  And there are some coincidences about what heat I

11  have been under since filing my litigation.  I conceded to you

12  on, I believe it was September the 6th when we were here for

13  the Boh Brothers sanctions motion, that I brought a lot of it

14  on myself, and for that I plead guilty.  But when you compare

15  what happened to me with what they are now claiming against me,

16  there is such a disparity in the conduct and nobody has been

17  sanctioned yet, and yet, here I am again, defending myself on a

18  sanctions motion, from the State of Louisiana who declared war

19  on me.  They are at war with me, make no mistake about that.

20          Let me make another point, Your Honor.  I understand

21  that you dismissed the claims against them individually, as

22  individual department heads.  I disagree with that.  I thought

23  that on a 12(b) motion you would have to take my allegations

24  against them as true for purposes of deciding the motion.  What

25  I respectfully submit that Your Honor has done is instead of

```
 1   looking at my allegations --

 2              THE COURT:  Okay.  But what does this have to do with

 3   the disqualification motion, sir?  Stick to the

 4   disqualification motion.

 5              MR. O'DWYER:  Yes, sir.

 6              THE COURT:  I found sovereign immunity, qualified

 7   immunity, that's it.  You appealed it.  So, enough said.

 8              MR. O'DWYER:  Okay.

 9              THE COURT:  And I have already described your

10   pleadings.

11              MR. O'DWYER:  All right.

12              THE COURT:  And I don't want to do that again, to

13   you.

14              MR. O'DWYER:  Yes, Your Honor.

15              THE COURT:  All right.

16              MR. O'DWYER:  I apologize.  Disqualification:  I have

17   alleged that the State of Louisiana declared war on me by

18   sending the police to my house on September the 19th.  Before

19   that, Charles Plattsmier had been in touch with my former law

20   partners.  Do you know about the misconduct allegations?

21              THE COURT:  No, sir.

22              MR. O'DWYER:  You don't know about all of that?

23   Okay.  I made an allegation against Mr. Keller on I believe it

24   was March 20th of '06.  I accused him of having threatened me.

25   I reported that threat to Your Honor.
```

22

1          THE COURT:  Some of that is in these papers.

2          MR. O'DWYER:  All right.

3          THE COURT:  Yes, I do already know about that.

4          MR. O'DWYER:  In October I encountered Mr. Deal who

5    was sitting over there.  He is a former law partner of mine and

6    I haven't seen a counter affidavit from him or anybody in his

7    office.  But I aver that he was in communication with my law

8    partners during the week after the September the 11th meeting

9    in Baton Rouge and the criminal hit on me on September the 19th

10   by the State Police about a week later, eight days later.

11          He also made a comment to me that I reported to you

12   in my papers, about a broomstick.  And when I compare what they

13   have had to do to respond to state officials being sued in an

14   official capacity or the agency sued in an official capacity,

15   and contrast that with their conduct; the fact that I sued them

16   in timely filed actions did not put them to any undue work.  I

17   just don't think that we could compare apples and apples.

18   We're comparing apples and oranges.

19          I'll submit the --

20          THE COURT:  All right, thank you.

21          MR. O'DWYER:  -- disqualification issue, Your Honor.

22          THE COURT:  Thank you, sir.

23          MS. GLAZER:  Judge, I'm arguing today, being the only

24   attorney of record who has not been accused of threatening

25   Ashton O'Dwyer in any way.  The allegations made repeatedly on

1   the record against Michael Keller and Paul Deal are -- they are

2   ridiculous.  They are lies.  They are unsubstantiated.

3   Mr. O'Dwyer has been accusing Michael of threatening him since,

4   I don't know, around St. Patrick's Day last year, yet never

5   says what it is that Michael said to him, except that it was

6   couched in terms of sanctions.  He calls the Motion for

7   Sanctions that will be heard in a few minutes a threat.

8            We have no idea what his grounds are to seek

9   disqualification, other than the fact that Mike and Paul upset

10  him in some way.  I can find no law supporting that that is the

11  proper grounds for disqualification of an entire state agency

12  from its statutory obligation, its Constitutional obligation to

13  defend the State of Louisiana.

14           THE COURT:  It looks like Mr. O'Dwyer, one of the

15  things he seems to be arguing is that there is an essence of

16  conspiracy of the State of Louisiana and its agencies,

17  including the Department of Justice to harass and intimidate

18  and in essence --

19           MR. O'DWYER:  Silence him.

20           THE COURT:  Well, what did you say, sir?

21           MS. GLAZER:  Silence him.

22           THE COURT:  Silence him.  That's good, okay.  And of

23  course, your task is to say why the Department of Justice in

24  particular should not be recused from representing the State of

25  Louisiana in this matter.

24

 1            MS. GLAZER:  Well --

 2            THE COURT:  Has there been anything linking the

 3    Department of Justice to this, to your understanding, to this

 4    alleged intimidation, other than defending the lawsuits?

 5            MS. GLAZER:  To the arrest, to his arrest?

 6            THE COURT:  Yes.

 7            MS. GLAZER:  No.  The Department of Justice had

 8    absolutely nothing to do with --

 9            THE COURT:  Well, he says he wasn't arrested; to his

10    whatever occurred?

11            MS. GLAZER:  Oh, to the incident of September the

12    19th?

13            THE COURT:  Yes.

14            MS. GLAZER:  No, the Department of Justice had

15    nothing to do with that, with that incident.

16            THE COURT:  Now, there has been obviously tension

17    between the attorneys.  And if one attorney threatened, I

18    wouldn't necessarily disqualify the entire Department of

19    Justice if one attorney for the Department of Justice was

20    acting untoward.  I might ask that they appoint someone else.

21    But you, on behalf of the other attorneys, you deny that any,

22    at least any specific threats were made; is that what I

23    understand?

24            MS. GLAZER:  I can say with 100 percent certainty

25    that the attorneys with the Louisiana Department of Justice

1   have since the outset of this litigation acted with nothing but

2   restraint and professionalism at the highest level when faced

3   with some serious accusations of misconduct and threats and

4   intimidation coming from the Plaintiffs.  We have kept our

5   mouths shut.

6           THE COURT:  Okay, thank you.

7           The Court is going to deny the Motion for

8   Disqualification.  I don't think that there is a sufficient

9   showing that the Department of Justice cannot represent its

10  client the State of Louisiana in this matter, or that the

11  Department of Justice was involved in the unfortunate events

12  that occurred to Mr. O'Dwyer in September.  So, I'm going to

13  deny that motion.

14          Let's take up the Motion for Sanctions.

15          MS. GLAZER:  Judge, you went through the procedural

16  history of this entire case and so you're extremely familiar

17  with the fact that the State of Louisiana hasn't just been sued

18  once, that the State did not ask for sanctions with respect to

19  05-4181 the first filed case, or for 06-5786, as it was filed

20  in state court and Rule 11 doesn't apply there.  This is solely

21  for the protective refiled complaint and 06-4389 which the

22  State avers clearly violate both Rule 11 and 28 USC 1927.

23          Number 06-4389 was filed in violation of a number of

24  this Court's orders including the restrictions on amendment of

25  the complaint in 05-4181, whereas the complaint, Mr. O'Dwyer

1    and the Plaintiffs were not allowed to amend to add those

2    admiralty and maritime claims; so he -- since he was denied

3    leave to amend, he filed another lawsuit.  Well, that's a

4    violation of Rule 11.

5           In addition, 06-4389 raises a lot of the same claims

6    against a lot of the same parties that were dismissed in 05-

7    4181 and are currently on appeal, thus divesting the Court of

8    jurisdiction.  That same argument applies in 06-6099, in which

9    the Plaintiffs admit that a number of the claims, if not all of

10   them as against the State Defendants were currently on appeal

11   at the time they filed the complaint; yet nonetheless they

12   filed it anyway.  They put a self-serving conclusory statement

13   in there that they didn't file these claims for any improper

14   purpose, yet there's no other possible explanation besides

15   harassment.

16          Under Rule 11 a pattern of conduct of an attorney can

17   show harassment that it doesn't need to be, you know, that mens

18   rea intent.  He didn't intend to harass, but his conduct has

19   been harassing.  Repeatedly suing the State over and over and

20   over again in federal court is harassment.  Even though we can

21   waive our sovereign immunity in each individual case,

22   continuously refiling the same case in the hopes that maybe we

23   will waive our sovereign immunity is harassment under Rule 11.

24          In addition, it's unreasonable and malicious and

25   vexatious multiplication of litigation that until these other

1   lawsuits were filed, was proceeding through the proper

2   channels, you know, the motions, then dismissals, then appeals;

3   but yet we have to come back and do this all over again in

4   addition to responding to the appeals that are ongoing.  We

5   think that this is not -- this Motion for Sanctions was not a

6   personal attack on Plaintiff's Counsel, but rather an attack on

7   Plaintiff's Counsel's litigation tactics, his pleadings and the

8   content thereof.

9          THE COURT:  Let me ask you:  What are you asking in

10  sanctions?  What are you asking the Court to do?

11         MS. GLAZER:  Monetary sanctions in this case are

12  clearly appropriate, considering the amount of extra work we

13  have had to do to defend the same lawsuit over and over again.

14  But beyond that, as employees of the State of Louisiana,

15  representatives of the State of Louisiana, we think a

16  suspension from the practice of law is appropriate in this

17  situation.

18         THE COURT:  Well, you realize that before the Court

19  would do that the Court would go to the court en banc?

20         MS. GLAZER:  Yes, Judge.

21         THE COURT:  And that would be -- all right.  So, what

22  kind of monetary sanctions are you asking for?

23         MS. GLAZER:  For reimbursement of the excess costs.

24         THE COURT:  What are we talking about there, just so

25  I'll have some context?

1           MS. GLAZER:  Well Judge, I don't know.  We haven't

2   calculated it, but we have records.

3           THE COURT:  All right, reimbursement of what?

4           MS. GLAZER:  Of the costs of bringing this motion,

5   the Motions to Dismiss that you just decided.

6           THE COURT:  All right.  I've got the general idea.

7   Anything else?

8           MS. GLAZER:  That's it, Judge.

9           THE COURT:  Mr. O'Dwyer?

10          MR. O'DWYER:  First of all, Your Honor, I wanted to

11  make the point that as Ashton O'Dwyer views his obligations to

12  this Court, he first recognizes that his first obligation is to

13  the profession, the practice of law.  The second obligation

14  that he recognizes is to his clients.  And I don't want to say

15  the Court comes in third, but that's where you are in the

16  pecking order.

17          All I did in filing my litigations in which it's very

18  simple to add a sentence; Governor Blanco in her individual and

19  official capacity and the State of Louisiana -- Judge, what I'm

20  trying to tell you -- what I'm trying to say to you is that I

21  was attempting to preserve my clients' rights on a record that

22  I would be able to appeal.  And in each of the three cases at

23  issue, there were good and valid professional reasons for me

24  filing the actions.  The first one, the maritime cause of

25  action, because Your Honor and Magistrate Wilkinson had denied

1  me leave to amend, I still felt, because that matter was on

2  appeal, I had to get an action filed within the year prior to

3  August 29 of 2006, and that I did.  Not for any ulterior reason

4  or to harass Ms. Glazer or Mr. Keller or Mr. Deal, but simply

5  to protect my clients' rights on a cold record when the case

6  was on appeal.

7          The second action:  The second action filed in

8  federal court was to preserve responder causes of action.

9          THE COURT:  Okay.

10         MR. O'DWYER:  That is --

11         THE COURT:  Let's make sure we've got that.  That's

12  06-6099, which we're talking about?

13         MR. O'DWYER:  No, sir.

14         THE COURT:  Is that 06-4389?

15         MR. O'DWYER:  Oh, I'm sorry, Your Honor.  You are

16  correct.  It is 06-6099.

17         THE COURT:  Okay.  And you had filed that case and

18  had filed 4181, and had some adverse rulings and you took an

19  appeal?

20         MR. O'DWYER:  Yes.

21         THE COURT:  What difference is -- how is 6099

22  different than 4181?

23         MR. O'DWYER:  First of all, it includes additional

24  State Defendants and it makes very specific allegations of

25  fault dealing with disaster preparation and response.  Do you

1    want me to show you -- well, I don't have a copy of it.   Just

2    one second, Your Honor.

3         (Pause)

4              THE COURT:  I have them here.

5              MR. O'DWYER:  All right.

6         (Pause)

7              THE COURT:  Okay, you might tell me what -- I'm

8    looking at 6099.  Do you have a copy of it?

9              MR. O'DWYER:  I don't have a copy of it.  My

10   secretary did not print it for me last night.

11             THE COURT:  Okay.  I'm looking at 6099.  But you can

12   tell me, as best you can then, what you think is different in

13   that?

14             MR. O'DWYER:  Well, I believe that my factual

15   allegations about the failure of the State actors to properly

16   prepare for a hurricane and then respond to the event which hit

17   us all on August 29th, are pleaded more articulately than they

18   were in 05-4181, and in addition, included additional

19   defendants.  05-4141 only included the Governor, the State, and

20   the LTOD.

21             THE COURT:  Okay.

22             MR. O'DWYER:  That's the short answer to your

23   question.

24             THE COURT:  All right.

25             MR. O'DWYER:  The third action, I filed in state

1    court and I'll level with you, I didn't know about this obscure

2    service statute, okay?  When I went to law school the rule was

3    if you file a case timely in a court of competent jurisdiction

4    that interrupts prescription.  And I needed to have, I thought,

5    on behalf of my clients to protect their rights, an action

6    filed against the State Defendants in state court where the

7    State would be unable to urge immunity under the Eleventh

8    Amendment.

9            I said this on the record in Magistrate Wilkinson's

10   court of the call docket on January 5th.  I'm saying it again

11   now, and I put it in my papers.  The reason is perfectly

12   obvious to any lawyer who does litigation work, I was

13   preserving my clients' rights by suing the State Defendants in

14   state court within the year.  I wanted to have a viable action

15   to avoid them --

16           THE COURT:  I don't think --

17           MR. O'DWYER:  -- in the event they won on the

18   Eleventh Amendment issue in the Fifth Circuit.

19           THE COURT:  They're not asking for sanctions for that

20   suit, is my understanding.

21           MR. O'DWYER:  They're not?

22           THE COURT:  No.

23           MR. O'DWYER:  Oh, okay.

24           THE COURT:  Is that correct?

25           MR. KELLER:  That's correct.

1          MR. O'DWYER:  Well, I'm explaining to you that my

2   averment in my affidavit that I did not do this with an

3   ulterior malevolent motive to harass anyone; I had good and

4   valid reasons for protecting my clients' rights and doing what

5   I did in all three cases.  And if I had to do it over again,

6   I'd do the same thing.  And I included a paragraph, I believe

7   it's in 06-4389 where I specifically invoked the talismanic

8   language in the United States Code that they are now seeking

9   sanctions against me for; I think I fit an exception there,

10  Your Honor.

11          And I can't help but come back to this.  I am under

12  attack.  You sanction me today; Plattsmier, who I will say on

13  the record is a man without honor, is going to bring

14  disciplinary charges against me.  He, Justice Kitty Kimble and

15  the State of Louisiana are in the middle of what has been done

16  to me since Katrina and what was done to me on September 19,

17  2006 and no one has been sanctioned.

18          Your Honor, I'm walking on eggs now.  But when I

19  appeared before you on September the 6th and you explained to

20  me that you had been very busy and I congratulate you on your

21  very well reasoned, factually accurate decision of December;

22  you know what I'm talking about, and I know you don't have time

23  for this.  But then, I asked you whether you thought you might

24  not be the right guy to determine whether or not I was guilty

25  of sanctionable conduct.  And I'm just reurging that now.  I'm

1   at your mercy.

2           THE COURT:  All right, sir.

3           MR. O'DWYER:  And I hope you understand the positions

4   that I have advocated in my defense this morning.

5           THE COURT:  Thank you, sir.

6           Do you want a couple of minutes rebuttal?

7           MS. GLAZER:  No, Judge.  I think enough has been

8   said.

9           THE COURT:  All right, just one second.

10      (Pause)

11          THE COURT:  All right, I'm going to take this one

12  under advisement and I think I have ruled on the others.  I

13  will issue judgments, as I've stated, on the motions so that

14  you will have an appeal right so you can consolidate them, I

15  guess, with the other ones.  But I'll take the sanctions motion

16  under advisement and think about it a bit.

17          Mr. O'Dwyer, just whether I'm the right guy or not,

18  you know, I'm the one who has heard it all.  So, somebody would

19  have to -- I think I probably am.  Now, if I rule against you,

20  you may disagree with that and the other side may disagree with

21  that if I rule against them, but I have seen it all unfold.

22  I've got the timeline, I've looked at it, I've been the one to

23  talk to you.

24          The only advice I might give you is, and this is not

25  anything to do with the sanctions, is that I respect your

1  ability, you're a bright man.  Because of the tremendous

2  emotional involvement in this, and you may have done this, when

3  you file pleadings in the future you might run it by somebody

4  you really respect, just to edit a bit, because we all can get

5  emotionally involved in things and lose our perspective.

6        And with that, I will take the matter under

7  advisement.

8                    *   *   *   *   *

9                (Hearing is Concluded)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

35

# **C E R T I F I C A T E**

      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**/s/Dorothy M. Bourgeois**                              **8/29/07**
**Dorothy M. Bourgeois**                                  **Date**