UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION<br><br>_____<br><br>PERTAINS TO:  LEVEE<br>    *Sims*, 06-5116<br>    *Richard*, 06-5118<br>    *DePass*, 06-5127<br>    *Adams*, 06-5128<br>    *Bourgeois*, 06-5131<br>    *Ferdinand*, 06-5132<br>    *Christophe*, 06-5134<br>    *Williams*, 06-5137<br>    *Porter*, 06-5140<br>    *Augustine*, 06-5142<br>_____ | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION<br>NO. 05-4182 "K" (2)<br>JUDGE DUVAL<br>MAG. WILKINSON |

**DEFENDANT UNITED STATES' REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS**

In these cases which arise out of the alleged "failure of the flood protection system" in New Orleans,[1] the United States of America has moved for a dismissal under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction.  This Court lacks jurisdiction

---

[1] *Adams* Compl. at 1-2; *Augustine* Compl. at 1-2; *Bourgeois* Compl. at 2; *Christophe* Compl. at 1; *DePass* Compl. at 1-2; *Ferdinand* Compl. at 2; *Porter* Compl. at 1; *Richard* Compl. at 1; *Sims* Compl. at 2; *Williams* Compl. at 2.

because "no liability of any kind shall attach to or rest upon the United States for any damage from or by floods or floodwaters at any place . . . ." 33 U.S.C. § 702c.  The broad sweep of this blunt prohibition ensures that sovereign immunity will "protect the Government from 'any' liability associated with flood control."  *United States v. James,* 478 U.S. 597, 608 (1986).  It certainly mandates dismissal of these ten actions which seek to impose liability for damage that occurred "as a result of inundation due to flood water which overcame the flood control system designed and constructed by the United States Army Corps of Engineers . . . ."[2]

To avoid dismissal, Plaintiffs propose a construction § 702c that would provide piecemeal protection against flood damage liability. They say § 702c's plenary prohibition applies only to certain neighborhoods that were flooded by Hurricane Katrina.  They therefore describe in detail the separate sources of the floodwaters that they say caused the asserted flood damage in each of their neighborhoods.  They have, however, misconstrued the controlling legal authorities that guide this Court's interpretation of § 702c.  These authorities reveal that immunity does indeed attach to the floodwaters at issue in these ten cases in which it is alleged that "the flooding which brought plaintiffs' losses was due to incomplete protection, lower than authorized structures and levee sections with erodible materials."[3]  Plaintiffs' construction of the immunity provision is incompatible with the plain language of the statute and is inimical to the

---

[2]*Adams* Compl. ¶ 13; *Augustine* Compl. ¶ 13; *Bourgeois* Compl. ¶ 16; *Christophe* Compl. ¶ 13; *Ferdinand* Compl. ¶ 16; *Porter* Compl. ¶ 12; *Richards* Compl. ¶ 13; *Williams* Compl. ¶ 14; *see also DePass* Compl. ¶¶ 8-9; *Sims* Compl. ¶¶ 8-9.

[3]*Adams* Amended Compl. ¶¶ 10.B–10.C; *Augustine* Amended Compl. ¶¶ 10.B–10.C; *Bourgeois* Amended Compl. ¶¶ 10.B–10.C; *Christophe* Amended Compl. ¶¶ 10.B–10.C; *DePass* Amended Compl. ¶¶ 10.B–10.C; *Ferdinand* Amended Compl. ¶¶ 10.B–10.C; *Porter* Amended Compl. ¶¶ 10.B–10.C; *Richard* Amended Compl. ¶¶ 10.B–10.C; *Sims* Amended Compl. ¶¶ 10.B–10.C; *Williams* Amended Compl. ¶¶ 10.B–10.C; *see also Richard* ¶¶ 11, 16-18 (alleging additional negligent acts and omissions related to flood control).

intent of Congress, which was "to ensure beyond doubt" that the United States be protected "from 'any' liability associated with flood control." *James,* 478 U.S. at 608.

## ARGUMENT

### Section 702c Requires Dismissal Because the Alleged Damages Were Caused by Floodwaters With a Nexus to a Flood Control Project.

Plaintiffs attempt to evade § 702c by asserting that immunity "does not attach to floodwaters emanating from state designed and operated drainage 'outfall' canals," even if the resulting damage was "proximately caused by the defective design and operation of [the] federal portion of those canals." Opp. at 14. Plaintiffs also assert that § 702c "does not even arguably apply to flooding from" other canals that were "designed, constructed and operated" by the state, "[n]or does immunity attach to flooding from the Michoud Canal, the MRGO, the Intercoastal Waterway or the Industrial Canal, as they were not 'designed or operated . . . for flood control purposes.'" *Id.*

Plaintiffs' arguments are based on a patent misreading of *Central Green Co. v. United States,* in which the Supreme Court made it crystal clear that § 702c immunity turns on "the character of the waters that cause the relevant damage *rather than* the relation between that damage and flood control project." 531 U.S. 425, 437 (2001) (emphasis added). The Court emphasized that "the text of the statute directs us to determine the scope of the immunity conferred, not by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage and the purposes behind their release." *Id.* at 434. The Court's anchoring of its statutory construction in the text leaves little doubt that "the character of the waters" is an allusion to the phrase "floods or flood waters," so that the inquiry to be undertaken in assessing whether immunity attaches is an inquiry into whether the "waters

3

that cause[d] the relevant damage" can be correctly characterized as a flood or as floodwaters. *Id.* at 434, 437.

Plaintiffs fundamentally misconstrue *Central Green* by misunderstanding the import of the phrase "character of the waters." *See* Opp. at 14. n.27. Because the pivotal inquiry examines whether the damage was "from or by floods or flood waters" rather than from waters of another character, the attachment of immunity does *not* turn on *the source* of the floodwaters. The source of the floodwaters plays no role in the analysis.[4] This is certainly true if, as is alleged here, the floodwaters had a nexus to a federal project. The allegation that the relevant damage occurred "as a result of inundation due to flood water which overcame the flood control system designed and constructed by the United States Army Corps of Engineers,"[5] is sufficient to trigger the attachment of immunity. *See* R.D. 6194 (order on motion to certify *Robinson* ruling for interlocutory appeal) at 4-5. As the Court of Appeals observed in *Graci v. United States,* "the purpose of § [702c] was to place a limit on the amount of money that Congress would spend in connection with flood control programs. Congress undoubtedly realized that the cost of extensive flood control projects would be great and determined that those costs should not have

---

[4]Plaintiffs therefore err in suggesting that immunity does not attach to these floodwaters because they emanated from waterways that antedated the LPVHPP and whose "design or operation" was essentially unchanged by the flood control project. *See* Opp. at 5-6, 19. Plaintiffs' misguided notion that the waterways themselves had to be designed or operated, at least in part, for flood control purposes stems from Plaintiffs' radical redefinition of the phrase "the character of the waters." *See id.* at 14 & n.27. *Central Green* certainly did *not* define "the character of the waters" as "all waters that flow through a federal facility designed and operated, at least in part, for flood control purposes." *Id.* at 26. If it had, flooding from Lake Pontchartain itself (or, for that matter, the Mississippi River) could give rise to liability for flood damage.

[5]*Adams* Compl. ¶ 13; *Augustine* Compl. ¶ 13; *Bourgeois* Compl. ¶ 16; *Christophe* Compl. ¶ 13; *Ferdinand* Compl. ¶ 16; *Porter* Compl. ¶ 12; *Richards* Compl. ¶ 13; *Williams* Compl. ¶ 14; *see also DePass* Compl. ¶¶ 8-9; *Sims* Compl. ¶¶ 8-9.

added to them the floodwater damages that might occur in spite of federal flood control efforts." 456 F.2d 20, 25 (5th Cir. 1971) (citations omitted).

Whether the floodwaters that overwhelmed the federal project caused the asserted damage directly or indirectly is irrelevant. "Congress did not limit this immunity to damages done directly by inundation, but provided for immunity also from damage resulting 'from . . . flood waters.'" *Fla. E.C. Ry. v. United States,* 519 F.2d 1184, 1192 (5th Cir. 1975). Immunity attaches regardless of whether the damage was "from" or "by" a flood or floodwaters. Plaintiffs therefore err in suggesting that liability can be imposed for damage directly caused by waters that backed up from state canals as a result of the floodwaters that the federal project failed to control. *See* Opp. at 7-8, 14, 25-26. If the waters that inundated Plaintiffs' properties were backwaters "proximately caused by the defective design and operation of" a federal flood control project, *id.* at 14, the United States is immune to liability for that damage just as surely as if the damage had directly resulted from the very floodwaters that "overcame the flood control system."[6]

The suggestion that § 702c does not cover damage caused by backwaters has uniformly been rejected by the Courts of Appeals. In *Pierce v. United States,* 650 F.2d 202 (9th Cir. 1981), "[t]he Government impounded flood waters behind [a] dam to minimize flood damage to downstream landowners. . . . The impoundment caused the flood waters to back up and effectively submerge large parts of appellants' land, which [was] upstream from the dam." *Id.* at

---

[6]*Adams* Compl. ¶ 13; *Augustine* Compl. ¶ 13; *Bourgeois* Compl. ¶ 16; *Christophe* Compl. ¶ 13; *Ferdinand* Compl. ¶ 16; *Porter* Compl. ¶ 12; *Richards* Compl. ¶ 13; *Williams* Compl. ¶ 14; *see also DePass* Compl. ¶¶ 8-9; *Sims* Compl. ¶¶ 8-9.

The Fifth Circuit's interpretation of the statutory phrase "from or by" disposes of Plaintiffs' argument that § 702c does not apply because the floodwaters that directly impacted Plaintiffs' property did not first "pass through a federal flood control facility." Opp. at 17. *Central Green* certainly did not establish a "threshold" rule requiring that such a "nexus" exist in order for immunity to attach. *Id.* at 16-17.

5

203. The appellants "argue[d] that damage resulting from backwater is not within the scope of the immunity statute . . . ." *Id.* They further argued "that the damage to their property resulted, not from the Government's attempts at flood control, *e.g.,* release of flood waters, but rather from backwaters that resulted from the Government's impoundment of the floodwaters. It is appellants' contention that section 702c does not grant the Government immunity against liability for the tort of trespass by backwater." *Id.* at 204. Citing numerous cases, including cases directly on point, the court rejected the appellants' argument, finding that it was "without merit." *Id.* The Ninth Circuit subscribed to the holding of the Eighth Circuit in *Taylor v. United States,* 590 F.2d 263 (8th Cir. 1979), that "there is no distinction between flood waters and backwaters for purposes of section 702c . . . ." *Id.* "This holding is consistent with the broad language and purpose of the immunity statute." *Id.* (citations omitted).

The Eighth Circuit adhered to the holding of *Taylor* in two later suits in which damage was alleged to have been caused by backwaters. In *Burlison v. United States,* 627 F.2d 121 (8th Cir. 1980), the plaintiffs attempted to evade § 702c by asserting that their damage was "not due to 'floods or flood waters' within the contemplation of 33 U.S.C. § 702c" because it resulted from the building of "an access road with inadequately sized culverts," which "became clogged with trees and other debris . . . causing water to back-up over plaintiffs' land." *Id.* at 121. Based on this causal theory, the plaintiffs "argue[d] that section 702c should not apply in this situation because the back up was a 'man-made flood' caused solely by the negligence of the government, and not by 'unusual or extraordinary climatic conditions.'" *Id.* The court rejected not only the attempt to restrict immunity to floodwaters triggered by "natural" rather than "man-made" causes but also the argument that § 702c does not apply "if the damage has been caused by 'back waters.'" *Id.* (citing *Taylor*); *see also Portis v. Folk Constr. Co.,* 694 F.2d 520, 522-23 (8th Cir.

1982) (§ 702c provides immunity to liability for damage caused by water backing up from cofferdam); *McClaskey v. United States,* 386 F.2d 807, 808 (9th Cir. 1967).

In the present cases, therefore, it is immaterial that the floodwaters that allegedly caused the asserted damage "emanat[ed] from state designed and operated drainage 'outfall' canals" or from other canals that were "designed, constructed and operated" by non-federal entities.  Opp. at 14.  The material allegation is that the flooding from these waterways was "proximately caused by the defective design and operation of [the] federal portion of those canals" and "the failure of the federal floodworks."  *Id.*; *see also id.* at 26-28.  Plaintiffs expressly contend that "the state drainage works failed because of failure of federal 'designed and operated' flood works . . . ." *Id.* at 14; *see also id.* at 26-28. The contention that § 702c does not attach to these floodwaters because they were backwaters that did not "'flow through a federal [flood control] facility" lacks merit.  *Id.* at 14 & n.27.

Equally unfounded is Plaintiffs' contention that the "inclusion of portions of MRGO, [G]IWW and [the] Industrial Canal in the Lake Pontchartrain and Vicinity Hurricane Protection Plan" does not connect the floodwaters emanating from those waterways to a flood control project and thereby establish beyond doubt that § 702c immunity attaches.  *Id.* at 14; *see also id.* at 19.  Plaintiffs' reliance on this Court's denial of the United States' motion to dismiss *Robinson* is wholly unfounded.  *See* Opp. at 11.  The Court's ruling in that case was predicated on the existence of a factual dispute concerning the nature and existence of levees along certain stretches of the MRGO.  *See* R.D. 6194 (Order and Reasons), at 5-6.  The issue was "not ripe for adjudication" in *Robinson* "because of the substantial factual dispute over the existence over flood control levees along Reach 2 of the MRGO."  *Id.* at 5.  The issue "ha[d] been vigorously contested," and a factual dispute had been created by declarations that negated allegations in the

7

complaint. *See id.* In these ten cases, however, there is no factual dispute concerning the existence of flood control levees along the MRGO, the GIWW, or the Industrial Canal. Plaintiffs have averred that their "property was lost and or damaged as a result of inundation due to flood water which overcame the flood control system designed and constructed by the United States Army Corps of Engineers,"[7] and there is no evidence that any of the relevant damage resulted from floodwaters unconnected with a flood control project.

Plaintiffs argue that the United States bears the burden of establishing that all of the floodwaters "have the required nexus to a flood control project." Opp. at 6; *see also id.* at 20-21. But Flood Control Act immunity is implicated by Plaintiffs' complaints, which on their face allege that the relevant damages were caused by floodwaters, indeed floodwaters that levees and floodwalls failed to control. Plaintiffs have explicitly pled that their damages resulted from "flood water which overcame the flood control system designed and constructed by the United States Army Corps of Engineers,"[8] and from "flooding . . . due to incomplete protection, lower than authorized structures and levee sections with erodible materials."[9] Consequently, on the face of the complaints, Flood Control Act immunity attaches to these waters and bars these

---

[7] *Adams* Compl. ¶ 13; *Augustine* Compl. ¶ 13; *Bourgeois* Compl. ¶ 16; *Christophe* Compl. ¶ 13; *Ferdinand* Compl. ¶ 16; *Porter* Compl. ¶ 12; *Richards* Compl. ¶ 13; *Williams* Compl. ¶ 14; *see also DePass* Compl. ¶¶ 8-9; *Sims* Compl. ¶¶ 8-9.

[8] *Adams* Compl. ¶ 13; *Augustine* Compl. ¶ 13; *Bourgeois* Compl. ¶ 16; *Christophe* Compl. ¶ 13; *Ferdinand* Compl. ¶ 16; *Porter* Compl. ¶ 12; *Richards* Compl. ¶ 13; *Williams* Compl. ¶ 14; *see also DePass* Compl. ¶¶ 8-9; *Sims* Compl. ¶¶ 8-9.

[9] *Adams* Amended Compl. ¶¶ 10.B–10.C; *Augustine* Amended Compl. ¶¶ 10.B–10.C; *Bourgeois* Amended Compl. ¶¶ 10.B–10.C; *Christophe* Amended Compl. ¶¶ 10.B–10.C; *DePass* Amended Compl. ¶¶ 10.B–10.C; *Ferdinand* Amended Compl. ¶¶ 10.B–10.C; *Porter* Amended Compl. ¶¶ 10.B–10.C; *Richard* Amended Compl. ¶¶ 10.B–10.C; *Sims* Amended Compl. ¶¶ 10.B–10.C; *Williams* Amended Compl. ¶¶ 10.B–10.C; *see also Richard* ¶¶ 11, 16-18 (alleging additional negligent acts and omissions related to flood control).

actions. It is Plaintiffs' burden, not the United States', to establish subject matter jurisdiction by showing that 33 U.S.C.§ 702c does not bar their claims. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). They have failed to carry this burden. There is nothing in the record of these cases that controverts Plaintiffs' averments that the flood and the floodwaters which caused their damage were connected with a flood control project.[10]

Plaintiffs' reliance on *Graci v. United States,* 456 F.2d 20 (5th Cir. 1971), is also misplaced. *See* Opp. at 14, 23-25. At most, *Graci* stands for the general proposition that the United States may be subject to liability if "the flooding is unconnected with a flood control project." *James v. United States,* 760 F.3d 590, 602 (5th Cir. 1985) (en banc) (citing *Graci*), *rev'd on other grounds,* 478 U.S. 597 (1986); *see also James,* 478 U.S. at 601-02 n.2 (*Graci* "held that [§ 702c] conferred immunity only for floods or floodwaters connected with a flood control project").[11] Plaintiffs, however, cite it for the specific proposition that liability for

---

[10]Plaintiffs are conclusively bound by these factual averments, *Morales v. Dep't of the Army,* 947 F.2d 766, 769 (5th Cir.1991); *Davis v. A.G. Edwards & Son, Inc.,* 823 F.2d 105, 108 (5th Cir.1987); *White v. ARCO/Polymers, Inc.,* 720 F.2d 1391, 1396 (5th Cir.1983), and they are sufficient to bring § 702c to bear. *See* R.D. 6194 (Order and Reasons), at 4-5.

[11]As noted above and in the United States' moving papers, it is not clear that *Graci* can be reconciled with *Central Green. See* Mot. at 13-14. In *Central Green* the Court redirected the focus of the § 702c inquiry away from "the character of the federal project and the purposes it serves" and back to "the character of the waters that cause the relevant damage." 531 U.S. at 434. In so doing, the Court hewed to the plain meaning of the text of § 702c, which as the Court pointed out, "does not include the words 'flood control project.'" *Id.* Taking notice of the lower courts' mistaken reliance on "admittedly confusing dicta" in its *James* opinion, the Court in *Central Green* directed courts to "resort to the text of the statute, as illuminated by our holding in *James*" to determine whether *the water* that caused the relevant damage is covered by § 702c. *Central Green,* 531 U.S. at 431; *accord id.* at 437. The Court flatly stated that "the text of the statute directs us to determine the scope of the immunity conferred, *not by the character of the federal project or the purposes it serves,* but by the character of the waters that cause the relevant damage and the purposes behind their release." *Central Green,* 531 U.S. at 434 (emphasis added). The Court held that the application of § 702c turns on "the character of the waters that cause the relevant damage *rather than* the relation between that damage and a flood control
(continued...)

"floodwater damage caused by the negligence of the United States in constructing the MRGO . . . [is] not barred by §702(c)." Opp. at 23. That fact-bound formulation of the *Graci* holding has no application to the present cases because it was founded on the absence of any connection between either the challenged conduct or the flooding and a flood control project. *See Graci,* 456 F.2d at 27; *cf. Callaway v. United States,* 568 F.2d 684, 686-87 & n.1 (10th Cir. 1978) (distinguishing *Graci* as case that "do[es] not involve flood control projects"). There was no connection with a flood control project for a very simple reason: the LPVHPP had not even been authorized, much less constructed when the events that gave rise to *Graci* transpired. *Graci* arose from the Hurricane Betsy flood, which stormed ashore in September of 1965. 301 F. Supp. 947, 948-49 (E.D. La. 1969), *aff'd,* 456 F.2d 20 (1971). Construction of the LPVHPP was not authorized until the following month. *See* Pub. L. No. 89-231, 79 Stat. 1073, 1077 (Oct. 27, 1965).

Although Hurricane Betsy inundated many of the same areas that would be inundated by Hurricane Katrina forty years later, Betsy's floodwaters did not have to surmount any federally constructed flood-control levees, floodwalls or related works in order to inundate Orleans and St. Bernard Parishes. *See Graci,* 456 F.2d at 22; *Graci,* 435 F. Supp. 189, 191-95 (E.D. La. 1977). *Graci* therefore provides no support whatsoever for an imposition of liability in these cases.

Properly understood, *Graci* mandates dismissal of these actions in which it is alleged that the relevant damage was caused by floodwaters that the LPVHPP failed to control. As noted, authoritative readings of the case by both the en banc Court of Appeals itself and the Supreme

---

[11](...continued)
project." *Id.* at 437 (emphasis added); *see also In re Katrina Canal Breaches Lit.,* — F.3d — , 2200004, at *28 n.16. Under the plain language of § 702c, as construed by the Supreme Court, the cases at bar, which seek to impose liability for "damage from or by floods or floodwaters," must be dismissed.

Court portray it as standing for the general proposition that the United States can be held liable for flood damage "[i]f the flooding is unconnected with flood control projects." 760 F.2d 590, 602 (5th Cir. 1985) (en banc), *rev'd on other grounds,* 478 U.S. 597 (1986); *accord James,* 478 U.S. at 601-02 n.2; *James,* 740 F.2d 365, 369 (5th Cir. 1984) (panel decision vacated upon grant of rehearing en banc). These glosses on *Graci* reveal that the case, assuming it has any post-*Central Green* vitality, mandates dismissal of the present cases in which it is alleged that "the flooding which brought plaintiffs' losses was due to incomplete protection, lower than authorized structures and levee sections with erodible materials."[12] The flooding at issue in the present cases was not "unconnected with flood control projects."

Application of § 702c here would be consistent with the "rationale" attributed to § 702c by *Graci* inasmuch as holding the United States immune would prevent flood damages from being added to the cost of flood control works. *See Graci,* 456 F.2d at 24. The goal of the provision was to ensure that "at any place where there is damage 'from' or 'by' a flood or flood waters in spite of and notwithstanding federal flood control works no liability of any kind may attach to or rest upon the United States therefor." *Id.* (quoting *Nat'l Mfg. Co. v. United States,* 210 F.2d 263 (8th Cir. 1954), *cert. denied,* 347 U.S. 967 (1954)); *see also E. Ritter & Co. v. Dep't of the Army,* 874 F.2d 1236, 1239 (8th Cir. 1989) ("the congressional intent of § 702c was to keep the government entirely free from liability when floods occur, despite attempted control by federal projects); *Valley Cattle Co. v. United States,* 258 F. Supp. 12, 16 (D. Haw. 1966) (§

---

[12]*Adams* Amended Compl. ¶¶ 10.B–10.C; *Augustine* Amended Compl. ¶¶ 10.B–10.C; *Bourgeois* Amended Compl. ¶¶ 10.B–10.C; *Christophe* Amended Compl. ¶¶ 10.B–10.C; *DePass* Amended Compl. ¶¶ 10.B–10.C; *Ferdinand* Amended Compl. ¶¶ 10.B–10.C; *Porter* Amended Compl. ¶¶ 10.B–10.C; *Richard* Amended Compl. ¶¶ 10.B–10.C; *Sims* Amended Compl. ¶¶ 10.B–10.C; *Williams* Amended Compl. ¶¶ 10.B–10.C; *see also Richard* ¶¶ 11, 16-18 (alleging additional negligent acts and omissions related to flood control).

702c "was aimed at flooding occurring in areas involved in actual or potential flood control projects."). From *National Manufacturing Co.* and other cases, the Fifth Circuit concluded that "the purpose of § [702c] was to place a limit on the amount of money that Congress would spend in connection with flood control programs. Congress undoubtedly realized that the cost of extensive flood control projects would be great and determined that those costs should not have added to them the floodwater damages that might occur in spite of federal flood control efforts." *Graci,* 456 F.2d at 25; *see also id.* at 25 n.7. "'[I]mmunity from liability for floodwater damage arising in connection with flood control works was the condition on which the government decided to enter into the area of nationwide flood control programs.'" *Id.* at 26 (quoting *Graci,* 301 F. Supp. at 952).

Inasmuch as the Fifth Circuit in *Graci* concluded that § 702c is intended "'to keep the Government entirely free from liability for damages when loss occurs, notwithstanding the works undertaken by the Government to minimize it,'" *id.* at 26 (quoting *Peterson v. United States,* 367 F.2d 271, 276 (9th Cir. 1966)), *Graci* mandates dismissal of the present actions in which it is expressly pled that loss occurred "notwithstanding the works undertaken by the Government to minimize it."

Plaintiffs' final attempt at avoiding dismissal rests on the argument that liability for flood damage can be imposed because the LPVHPP was incomplete. *See* Opp. at 9-10, 12. This argument is foreclosed by the "sweeping" retention of sovereign immunity in the Flood Control Act. *James,* 478 U.S. at 608. Section 702c must be construed broadly, "to ensure beyond doubt" that the United States is protected "from 'any' liability associated with flood control." *Id.* Indisputably, the flood and floodwaters at issue in these cases were the very eventuality that the LPVHPP was intended to avert. The project was authorized "for hurricane-flood protection on

12

Lake Pontchartrain, Louisiana, . . . substantially in accordance with the recommendations of the Chief of Engineers in House Document Numbered 231, Eighty-ninth Congress." Pub. L. No. 89-298, 79 Stat. 1073, 1077 (1965).  The referenced House Document makes clear that this project was intended to protect against hurricane-induced flooding of Orleans and St. Bernard Parishes. *See, e.g.,* H.R. Doc. No. 89-231 (1965), at ix, 1-2 , 7, 10, 28.  Therefore, even if, as Plaintiffs contend, the project was incomplete when Hurricane Katrina struck, Opp. at 20, it would be incompatible with § 702c and inimical to the intent of Congress to hold that liability can "attach to or rest upon the United States for any damage from or by floods or flood waters" in the very parishes that Congress sought to protect when it authorized the LPVHPP.  *See E. Ritter & Co.,* 874 F.2d at 1239; *Graci,* 456 F.2d at 24-26; *Nat'l Mfg. Co.,* 210 F.2d at 270-71.  As the Fifth Circuit has expressly recognized, "the United States is protected from liability for damages caused by 'floods or flood waters' in connection with flood control projects . . . ." *Fla. E.C. Ry,* 519 F.2d at 1191.

     Undoubtedly, the damages at issue in these consolidated cases were caused by a flood and its floodwaters "in connection with" a flood control project.  That the Katrina flood occurred "'in spite of and notwithstanding federal flood control works,'" *Graci,* 456 F.2d at 24 (citation omitted), is too well known to be subject to dispute, *see Preston v. Tenet Healthsys. Mem. Med. Ctr.,* 485 F.3d 804, 817 & n.6; *cf. In re Katrina Canal Breaches Lit.,* — F.3d — , 2007 WL 2200004, at *21 ("massive inundation of water . . . occurred when the levees in New Orleans ruptured."), *25 ("canals' overflowing into the City of New Orleans [was] due to the levee ruptures").  Under the circumstances admitted by Plaintiffs and widely known throughout the jurisdiction of this Court, the Flood Control Act of 1928, 33 U.S.C. § 702c, bars Plaintiffs' claims.

13

## CONCLUSION

For these reasons, the United States' motion to dismiss should be granted.

                Respectfully submitted,

                PETER D. KEISLER
                Assistant Attorney General

                C. FREDERICK BECKNER III
                Deputy Assistant Attorney General

                PHYLLIS J. PYLES
                Director, Torts Branch

                JAMES G. TOUHEY, JR.
                Assistant Director, Torts Branch

                <u>s/ Robin D. Smith</u>
                ROBIN D. SMITH
                Senior Trial Counsel
                Torts Branch, Civil Division
                U.S. Department of Justice
                Benjamin Franklin Station, P.O. Box 888
                Washington, D.C.  20044
                (202) 616-4448 / (202) 616-5200 (Fax)
                Attorneys for the Defendant United States

## **CERTIFICATE OF SERVICE**

    I certify that on August 31, 2007, a true copy of the United States' Reply Memorandum in Support of its Motion to Dismiss was served upon all counsel of record by ECF.

                                                s/ Robin D. Smith
                                                   Robin D. Smith