UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES                    CIVIL ACTION
CONSOLIDATED LITIGATION
                                                NO. 05-4182

PERTAINS TO: O'Dwyer 06-6099                    SECTION "K" (2)
             RESPONDER

**UNITED STATES' MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS**

Defendant, United States of America, through undersigned counsel, respectfully submits

this memorandum in support of its *Motion to Dismiss.*

I.      **SUMMARY OF ARGUMENT**

None of the statutes, regulations or other sources of jurisdiction asserted by Plaintiffs in

this action, save the Federal Tort Claims Act, 28 U.S.C. § 2671, et. seq. (FTCA), operates as a

potential basis for the Court's exercise of subject matter jurisdiction of Plaintiffs' tort claims

against the United States.   The FTCA is the sole basis for bringing these tort claims against the

United States; however, it is unavailing to the Plaintiffs for two reasons.   First, Plaintiffs failed

to exhaust their administrative remedies under the FTCA before filing this lawsuit.  This failure

is jurisdictional and precludes the Court from entertaining such claims.   Second, assuming that

one or more of the Plaintiffs fully complied with the notice provisions of the FTCA before this

lawsuit was filed and that their claims may be deemed denied for the purposes of section 2675 of

the FTCA, such claims nonetheless should be dismissed, with prejudice, for lack of subject

matter jurisdiction because the challenged conduct on the part of the United States, and its

agencies, the United States Army Corps of Engineers (Corps of Engineers) and the Federal

Emergency Management Agency (FEMA), falls squarely within the FTCA discretionary function

exception, 28 U.S.C § 2680(a).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

The instant action is one of at least 16 Hurricane Katrina-related tort lawsuits pending in this Court  which have been filed or co-filed by attorney Ashton R. O'Dywer, Jr.  and which name the United States and various non-federal parties as defendants (the "O'Dwyer Actions").[1] Several of these lawsuits allege negligence on the part of the United States in the design, construction and maintenance of the levee system in and around New Orleans and the Mississippi River-Gulf Outlet (MRGO).  Some allege negligence on the part of the United States in connection with its permitting of dredging activities in and along the Industrial Canal and/or other water bodies.  One alleges that the United States and other parties unlawfully squatted on and trespassed over property owned by Mr. O'Dwyers' relatives, while two of the lawsuits - i.e., the instant lawsuit and Civil Action No.  05- 4181 - generally allege negligence on the part of the United States in its response to Hurricane Katrina.[2]  Because of the nature of the allegations in the instant lawsuit, it is denominated as a "RESPONDER" action pursuant to the Court's previous orders.   All (or most) of the O'Dwyer Actions (as well as many other Hurricane Katrina-related actions filed by other lawyers)  have been consolidated with the second-filed O'Dywer Action, No. 05-4182.

---

[1] Civil Action Nos.  05-4181, 05-4182, 06-4024,06-4237, 06-4389, 06-6310, 06–5771, 06-5786, 06-3788, 06-7280, 06-10811, 06-5672, 06-5162, 07-647, 07-3500, and 07-3612. Ashton O'Dwyer is himself a pro se plaintiff in Civil Action No. 05-4181.

[2] As noted by this Court in its Order and Reasons, dated July 19, 2006, Civil Action No. 05-4181 also alleges "defalcations relating to the adequacy and construction of the canals and flood walls that failed in the wake of Hurricane Katrina . . ."

In the first of the two O'Dwyer "responder" actions, *Berthelot, et al. v. Boh Brothers Construction Company, L.L.C., et al.,* C.A. No. 05-4181 (*"Berthelot I*), various defendants, including the United States, filed motions to dismiss.  The United States' motion to dismiss sought dismissal under Fed. R. Civil P. 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction.   By its Order and Reasons, dated July 19, 2006, (the "Dismissal Order") the Court granted the United States' motion to dismiss, finding that the plaintiffs had failed to exhaust their administrative remedies under the Federal Tort Claims Act (FTCA) prior to bringing suit and that, therefore, their claims were premature.[3]   The Court observed in the Dismissal Order that "Plaintiff(s) must re-file this suit as against the United States, assuming that each has given appropriate notice to the United States under the FTCA as set forth in the statute and the regulations."[4]   In addition, the Court rejected the other jurisdictional bases, statutory and otherwise, which had been raised in Plaintiffs' eleven (11) amendments to the original Complaint and which were properly before the Court at the time the United States' motion to dismiss was heard.[5]   Plaintiffs subsequently appealed the Dismissal Order to the United States Court of

---

[3] By the Dismissal Order, the Court also granted motions to dismiss filed by various other defendants.

[4] Page 33, Dismissal Order.

[5] Such alleged jurisdictional bases were: (1) the Second, Fifth and Fourteenth Amendments to the United States Constitution; (2) 28 U.S.C. § 1331; (3) Title XI of the Civil Rights Act; (4) 42 U.S.C. §§ 1983, 1985, 1986 and 1988; (5) The Class Action Fairness Act, 28 U.S.C. § 1332; (5) The Oil Pollution Act of 1990; (6) The Comprehensive Environmental Response Compensation and Liability Act; (7) The Federal Water Pollution Control Act; (8) The Clean Water Act; (9) The Clean Air Act; (10) The National Environmental Policy Act; (11) The Toxic Substances Control Act; (12) The Resource Conservation and Recovery Act; (13) The Louisiana Air Control Act; (14) The Louisiana Water Control Act; and (15) The Louisiana Oil Spill Prevention and Response Act.

Appeals for the Fifth Circuit.   That appeal is pending.

On September 16, 2006, approximately 2 months after the Court entered its Dismissal Order in *Berthelot I*,  Mr. O'Dwyer filed the instant lawsuit. The complaint in this case is entitled "Protective Refiled Complaint For Compensatory and Exemplary Damages, and For Reasonable Attorney's Fees and Taxable Costs In a Class Action Lawsuit" (the "Protective Re-filed Complaint").   The Protective Re-filed Complaint renames the same federal and non-federal defendants and re-alleges three of the jurisdictional bases set forth in *Berthelot I*; namely, 28 U.S.C. §§ 1331, 1346 and 2671, et seq.   In addition, it asserts four new bases for subject matter jurisdiction: (1)  Section 5 of the Flood Control Act of 1941, as amended (33 U.S.C. § 701 and 33 C.F.R. § 203); (2)  "legislation which authorized the Lake Pontchartrain and Vicinity, Louisiana Hurricane Protection Project" [sic]; (3) The Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5121, et seq.; and (4) the Homeland Security Presidential Directive 5.[6]   The twenty-one (21) defalcations and violations alleged to have been committed by the United States on pages 25-27 of the Protective Re-filed Complaint can be readily distilled into one over-arching, general charge, i.e., that the United States' pre-and post-storm response to Hurricane Katrina was inadequate.   This generalized description of Plaintiffs' claims against the United States is supported by Plaintiffs' own averments in Section XVII of the Protective Re-filed Complaint.[7]

---

[6] Section IV, pp. 21-22, Protective Refiled Complaint.

[7] Section XVII of the Protective Re-filed Complaint states: "With particular reference to the United States, plaintiffs aver that pre-hurricane planning and post-hurricane response, or the negligent, illegal failure to respond, is not immunized by either the Flood Control Act of 1928 or Section 305 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act."

Prior to filing the instant motion to dismiss, the United States previously sought and received three extensions of time to file responsive pleadings in this action.  Under the third extension order, the United States' responsive pleading deadline was set for September 7, 2007. Accordingly, this motion to dismiss is timely.

**III.   ARGUMENT**

**A.   All Statutory and Other Bases Asserted By Plaintiffs In Their Protective Re-filed Complaint, Including The Federal Tort Claims Act, Fail To Provide This Court With Subject Matter Jurisdiction Over The Claims Asserted By Plaintiffs Against The United States.   Consequently, this Court Should Grant the Government's Motion to Dismiss.**

Other than the FTCA, the Plaintiffs have alleged no basis, statutory or otherwise, upon which this Court could potentially entertain the tort claims asserted against the United States in this lawsuit.  None of the alleged jurisdictional bases, save the FTCA, operates to waive the sovereign immunity of the United States for claims sounding in tort.  The FTCA waiver of sovereign immunity, however, is a limited one, and does not extend to acts that are discretionary in nature.  In this case, all of the duties and functions alleged to have been violated by the United States are purely discretionary.  Thus, the FTCA waiver of sovereign immunity does not extend to Plaintiffs' claims against the United States.   For this reason, this Court lacks subject matter jurisdiction over Plaintiffs' claims.  Alternatively, subject matter jurisdiction over Plaintiffs' claims does not exist because Plaintiffs failed to exhaust their administrative remedies under the FTCA prior to filing this lawsuit.

**1.   Sovereign Immunity**

The principle of sovereign immunity bars suits against the United States unless Congress has explicitly waived its immunity.  *United States v. Dalm*, 494 U.S. 596, 609-10 (1990);

*Koehler v. United States*, 153 F.3d 263, 265 (5ᵗʰ Cir.1998).   In suits against the United States, the

plaintiff bears the burden of establishing the sovereign's consent to be sued.   *Lundeen v. Mineta*,

291 F.2d 300 (5ᵗʰ Cir.2002); *Ramming v. United States*, 281 F.3d 158 (5ᵗʰ Cir.2001).   The

consent to be sued, i.e., the waiver of the Federal Government's sovereign immunity, must be

"unequivocally expressed in statutory text, and will not be implied.   *Lane v. Pena*, 518 U.S. 187,

192 (1996).   Waivers of sovereign immunity are narrowly construed in favor of the United

States.   *Id.* "To sustain a claim that the Government is liable for awards of monetary damages,

the waiver of sovereign immunity must extend unambiguously to such monetary claims.   *Id.*

    **2.**    **Discussion of the Jurisdictional Bases Asserted By Plaintiffs**

    **a.**    **The Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. § 5121, et seq.) (The "Stafford Act").**

This Court has previously ruled in another Hurricane Katrina-related tort case against

President Bush, FEMA, and various non-federal defendants, i.e., *Armstead v. Nagin*, C.A. No.

05-6438, that the Stafford Act contains no express waiver of sovereign immunity for actions

seeking monetary damages against the Government.[8]  On the basis of this ruling, the Court

granted the federal defendants' motion to dismiss the lawsuit against them.

In addition to containing no express waiver of sovereign immunity for claims such as

Plaintiffs' in this case, the Stafford Act precludes judicial review of discretionary functions.

"The Federal Government shall not be liable for any claim based upon the exercise or

---

[8] 2006WL3861769 (E.D.La), Dec. 29, 2006.  *See, also, Johnson v. FEMA*, 2007 WL 1592978 (E.D.La 2007) wherein Judge Sarah Vance declined to find a waiver of sovereign immunity in the provisions of the Stafford Act for a lawsuit brought by a plaintiff who claimed monetary damages for FEMA's alleged failure to provide him with monetary assistance following Hurricane Katrina and another hurricane ten years earlier.

performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter." 42 U.S.C. § 5148.   This Court correctly pointed out in its *Armstead* decision that "the relevant duties of the President under the Stafford Act, many of which have been delegated to FEMA, are couched in discretionary language."  These discretionary functions, as noted by the Court, include directing federal agencies to (a) utilize its authorities and resources in support of State and local assistance efforts; (b) coordinate all disaster relief assistance; (c)  assist State and local governments in emergency assistance; (d) provide assistance essential to meeting immediate threats to life and property resulting from a major disaster, including performing on public or private lands or waters any work or services essential to saving lives and protecting and preserving property or public health and safety and (e) provide financial assistance to address personal property, transportation, and other necessary expenses or serious needs resulting from a major disaster.

None of the "duties" alleged by Plaintiffs to have been violated by the United States are mandated by the Stafford Act.   Accordingly, the Stafford Act cannot operate as a jurisdictional spring board for Plaintiffs to have their monetary claims heard by this Court.  The Court should, therefore, reject Plaintiffs' assertion that the Stafford Act operates to waive the Government's sovereign immunity from the monetary claims asserted against the United States.

**b.    28 U.S.C. § 1331.**

This statute confers subject matter jurisdiction to federal district courts over civil actions arising under the Constitution, laws or treaties of the United States.   It does not itself operate as a waiver of the Government's sovereign immunity from suit.   Hence, it does not confer subject

matter jurisdiction to this Court over the particular monetary claims asserted by the Plaintiffs against the United States in this lawsuit.

      **c.**    **28 U.S.C. § 1346**.

This statute confers subject matter jurisdiction over claims against the United States in (1) actions for federal tax refunds [subpart (a)(1)]; actions, not exceeding $10,000, founded upon the Constitution, Act of Congress or regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort [subpart (a)(2)], and actions seeking monetary damages which are brought under the provisions of the FTCA [subpart (b)((1)].   It is in section 1346(b)(1) that this Court's subject matter jurisdiction over Plaintiffs' tort claims against the United States would necessarily arise, if they are not otherwise excepted from the FTCA waiver of sovereign immunity.  However, as will be discussed subsequently in this memorandum, the FTCA waiver of sovereign immunity does not extend to the kinds of claims Plaintiffs assert against the United States in this lawsuit, nor have the Plaintiffs complied with the administrative exhaustion requirements of the FTCA.  For these reasons, the Court is precluded from exercising subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1346.

      **d.**    **Section 5 of the Flood Control Act of 1941, as amended (33 U.S.C. § 701 and 33 C.F.R. § 203).**

Plaintiffs' Protective Re-filed Complaint conclusorily asserts that the Flood Control Act (FCA) provides the necessary underpinning for the Court's exercise of jurisdiction over the tort claims asserted by Plaintiffs against the United States.   However, nothing in the FCA remotely operates to confer jurisdiction on this Court over the kind and type of tortious conduct alleged by the Plaintiffs (i.e., inadequacy of the United States' pre-and post-hurricane planning and

response), or, for that matter, over any other kind or type of tort claim against the United States.

Nor does the FCA contain an express waiver of sovereign immunity for claims against the United

States.  The FCA, however,  does immunize the United States from damages "from or by floods

or flood waters at any place".[9]

Neither Section 5 of the FCA (33 U.S.C. § 701n) nor the regulations promulgated under

Section 5 (33 C.F.R. § 203, et. seq.), both of which Plaintiffs cite as bases for the Court's

exercise of subject matter jurisdiction,[10] mandate the carrying out of any of the duties alleged to

have been violated by the United States.[11]   Section 5 of the FCA authorizes the expenditure of

emergency funds by the Chief of Engineers for the United States Army Corps of Engineers for

the following reasons and under the following circumstances:

 "in preparation for emergency response to any natural disaster, in flood fighting
and rescue operations, or in the repair of restoration of any flood control work
threatened or destroyed by flood, including the strengthening, raising, extending,
or other modification thereof as may be necessary *in the discretion of the Chief of
Engineers* for the adequate functioning of the work for flood control, or in the
implementation of nonstructural alternatives to the repair or restoration of such
flood control if requested by the non-Federal sponsor; in the emergency protection
of federally authorized hurricane or shore protection being threatened when *in the
discretion of the Chief of Engineers* such protection is warranted to protect against
imminent and substantial loss to life and property; in the repair and restoration of
any federally authorized hurricane or shore protective structure damaged or
destroyed by wind, wave, or water action of other than an ordinary nature when *in
the discretion of the Chief of Engineers* such repair is warranted for the adequate
functioning of the structure for hurricane or shore protections. . . The Chief of
Engineers, *in the exercise of his discretion*, is further authorized to provide
emergency supplies of clean water, on such terms as he determines to be
advisable, to any locality which he finds is confronted with a source of
contaminated water causing or likely to cause a substantial threat to the public

---

[9]  33 U.S.C. § 702c.

[10] Section IV, p. 20, Protective Re-filed Complaint.

[11] Pages 25-27, Protective Re-filed Complaint.

health and welfare of the inhabitants of the locality. (Italics supplied).

Clearly, all acts authorized to be taken by the Chief of Engineers under Section 5 of the Flood Control Act are, by its express provisions, completely discretionary in nature.  Assuming, for the sake of argument only, that such duties properly may be construed as mandatory, it is possible (if certain requisites are met, i.e., exhaustion of administrative remedies and a final, reviewable agency action) that Section 5 of the FCA would support an action brought under the Administrative Procedures Act (APA),  5 U.S.C. § 701, *et. seq.*   However, Plaintiffs do not plead jurisdiction under the APA in their Protective Re-filed Complaint.  Nor does the APA allow for the award of  monetary damages against the United States, the singular remedy sought by the Plaintiffs in instant action. *See Armstead, supra* at 8.

>    **e.**    **Legislation Which Authorized the Lake Pontchartrain and Vicinity, Louisiana Hurricane Protection Project.**

Plaintiffs fail to provide the citation for, or otherwise specify, the particular legislation that they assert provides this Court with subject matter jurisdiction over their claims against the United States.   It is assumed that Plaintiffs are referring to Public Laws 89-298, 102-104 and 102-377. These public laws were discussed in this Court's Order and Reasons  in *Berthelot I.*   Nothing in these laws even arguably waives the United States' sovereign immunity from claims that Plaintiffs present in this lawsuit, or otherwise confers subject matter jurisdiction on this Court over such claims.

>    **f.**    **Homeland Security Presidential Directive 5.**

The United States assumes that Plaintiffs' reference to "Homeland Security Presidential Directive 5" is actually a reference to Homeland Security Presidential Directive/HSPD-5 (2003 WL 604606 (Feb. 28, 2003) (HSPD-5).   A copy of HSPD-5 is attached hereto as

Attachment 1.

HSPD-5 has been unsuccessfully asserted by different plaintiffs in another Hurricane Katrina-related lawsuit against the Government as being a source of jurisdiction over claims that the Government failed to follow their lawful duties to the plaintiffs in the aftermath of Hurricane Katrina. *Freeman v. United States Department of Homeland Security,* 2007 WL 1296206 (E.D. La.2007).

In *Freeman*, Judge Zainey noted that the stated purpose of HSPD-5 is "to enhance the ability of the United States to manage domestic incidents by establishing a single, comprehensive national incident management systems" and that the "main goal of HSPD-5 was to come up with a plan so that all levels of government would have the capability to work together to prevent and respond to terrorist attacks, major disasters, and other emergencies." *Freeman* at 7. Under Section (16) of HSPD-5, the President directed Secretary of Homeland Security to develop a National Response Plan (NRP) with the requirement that the NRP "integrate Federal Government domestic prevention, preparedness, response, and recovery plans into one all-discipline, all hazards plan." *Id*.

Subpart (a) of Section (16) of HSPD-5 provides that the "NRP . . . shall, with respect to response to domestic incidents, provide the structure and mechanisms for national level policy and operational direction for Federal support to State and local incident managers and for exercising direct Federal authorities and responsibilities, as appropriate. Further, subpart (b) of Section (16) of  HSPD-5 directs that the NRP include a "consistent approach to reporting incidents, providing assessments, and making recommendations to the President, the Secretary, and the Homeland Security Council."

In the *Freeman case*, Judge Zainey declined to find that HSPD-5 and the NRP were sources of mandatory directives or duties imposed on the United States such that they would support the plaintiffs' contention that these documents provided an independent cause of action against the United States (i.e., that the documents themselves waived the Government's sovereign immunity with respect to actions asserting a violation of such directives or duties), or that violation[s] of the directives or duties set forth in these documents were actionable under the FTCA or the Stafford Act.[12] "It is a questionable legal proposition to say the least", wrote Judge Zainey, "that this document [the version of the NRP relied upon by plaintiffs] could be used as imposing a mandatory, non-discretionary duty under federal law, the likes of which could be used to overcome the United States' sovereign immunity." *Freeman* at 7. Additionally, Judge Zainey found the plaintiffs' reliance on the NRP to be "problematic because [it] does not prescribe a specific course of conduct for federal employees to follow" and that "implicit in the structure of this generalized document is the discretion and flexibility that the affected agencies retain to allocate their limited resources in response to a disaster such as Hurricane Katrina." *Id.* The NRP, wrote Judge Zainey, "simply does not provide a source of non-discretionary *duties* imposed on the [Federal] Defendants under federal law." *Freeman* at 8.

The United States submits that Judge Zainey applied the proper rationale and analysis in *Freeman* to reach the conclusions that (1) HSPD-5 and the NRP did not confer subject matter jurisdiction on this Court over the plaintiffs' claims against the United States and (2) that the FTCA barred the plaintiffs' claims against the United States under the Act's discretionary

---

[12] As Judge Zainey noted later in his decision, the discretionary duties and functions imposed by the NRP and the HSPD-5 are precisely those kinds of duties and functions which fit within the FTCA discretionary function exception. *Freeman* at 8.

function exception.   Further, the United States submits that the same or like rationale and analysis is appropriate and proper in the evaluation of the jurisdictional underpinnings of the claims asserted  against the United States in the action *sub judice*.   The foregoing submission is grounded upon the fact that the gravamen of the claims of the plaintiffs in *Freeman* is fundamentally the same as that which the Plaintiffs in this case assert - i.e., that the Government failed to adequately respond to the disaster caused by Hurricane Katrina.   The only difference between the kinds of allegations made by the plaintiffs in *Freeman* and those made by the Plaintiffs herein relates to the time frame within which the "inadequate response" by the Government is alleged to have occurred.   In the instant lawsuit, Plaintiffs allege defalcations and inadequacies in the United States' response to the hurricane both *before and after* it made landfall, whereas the *Freeman* plaintiffs faulted the United States for its post-disaster response only.    This temporal difference, however, is immaterial from a jurisdictional-analysis standpoint and does not require that either the United States' motion to dismiss or the Plaintiffs' claims be subjected to a fundamentally different jurisdictional analysis than that which was performed in by Judge Zainey in *Freeman.* At their core, both cases present the same genre of "responder" claims against the United States.

> **g.      The Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671, et seq; 28 U.S.C. § 1346(b)(1).**

The FTCA is the sole basis of recovery for tort claims against the United States.  *In re Supreme Beef Processors, Inc.,* 468 F.3d 248, 252 n. 4 (5th Cir.2006).  It acts as a limited waiver of sovereign immunity. *U.S. v. Orleans,* 425 U.S. 807, 807-08 (1976); *Brown v. United States*, 653 F.2d 196, 198 (5th Cir.1981).  "The waiver is limited in that Congress has carved out exceptions, i.e., it has declared that the United States' sovereign immunity is still preserved as to certain torts." *Saks, Inc. v. U.S.*, 218 Fed.Appx.350 (5th Cir.2007)(citing *Dolan v. U.S. Postal*

*Service*, 546 U.S. 481 (2006)).   The FTCA waiver of sovereign immunity for tort claims should

be narrowly construed in favor of the United States. *Leleux v. U.S.* 178 F.3d 750, 755 (5th

Cir.1999); *Ware v. U.S.,* 626 F.2d 1278, 1286 (5th Cir.1980).

> **(i)**      **The Law Governing the Application of the FTCA Discretionary Function Exception To Shield the United States from Certain Types of Tort Claims.**

The discretionary function exception of the FTCA is codified at 28 U.S.C. § 2680(a).  It

provides that the FTCA waiver of sovereign immunity does not apply to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary duty on the part of a federal agency or an employee of the Government, whether or not the discretion involve be abused.

In determining whether the FTCA discretionary function exception applies in any given

case, the United States Supreme Court decision in *Berkovitz v. U.S.,* 486 U.S. 531 (1988) provides

the federal judiciary with the following guidance:

> " [I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exceptions applies . . ." *Id.* at 536.  In its examination of the conduct at issue, the court must first consider whether the conduct involves an element of judgment or choice for the acting employee. *Id.*  If a federal statute, regulation, or policy specifically prescribes a course of action to be followed by the employee, then the discretionary function exception does not apply to the challenged conduct because, in such circumstances, the employee has no rightful option but to adhere to the directive.  *Id.*   However, if the challenged conduct involves an element of judgment, the court must look then to whether the judgment is the kind that  the discretionary function exception was designed to shield. *Id.*  "The basis for the discretionary function exceptions was Congress' desire to 'prevent judicial second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Id.* at 536-37 (citing *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).  Properly construed, the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy.  *Id.* at 537 (citing *Dalehite v. U.S.,* 346 U.S. 15, 36 (1953) ("Where

there is room for policy judgment and decision, there is discretion.").   "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves permissible exercise of policy judgment." *Id.*

**(ii)    The FTCA Discretionary Function Exception Insulates the United States From Liability to the Plaintiffs in this Case.**

On pages 25-27 of the Protective Re-filed Complaint, Plaintiffs set forth the corpus of their allegations against the United States.  Here, the Plaintiffs allege that the United States, acting through FEMA and/or the Corps of Engineers, violated nineteen (19) separate "duties" to the Plaintiffs in the days preceding and following the landfall of Hurricane Katrina.[13]   The first of these alleged violations is an over-arching one that appears to generally describe, sum up, and encapsulate the more specific alleged violations that follow it.   In this allegation, Plaintiffs fault the United States for

> [V]iolating the clear provisions of the Flood Control Act of 1941, as amended, the Robert T. Stafford Disaster Relief and Emergency Assistance Act, Homeland Security Presidential Directive 5, the Department of Defense Manual for Civil Emergencies, and numerous sections of Title 33, Code of Federal Regulations, including Section 203, among other rules, regulations, manuals, procedures and customs.

The specific provisions or sections of these "laws, regulations, rules, manuals, procedures and customs", however, are not identified by Plaintiffs.  Nor do Plaintiffs establish, or even attempt to establish, in their pleadings a nexus or link between such laws, etc. and the specific alleged defalcations, (b) - (t), that follow paragraph (a).

For the reasons discussed previously in this memorandum,  the Flood Control Act, the Stafford Act (and /or the regulations promulgated thereunder, 33 C.F.R. § 201 et. seq.) and

---

[13] The specific violations are listed alphabetically in paragraphs "(a) - (t)".

HSPD-5 do not provide a source of non-discretionary duties or directives that could be used to overcome the United States' sovereign immunity.   Also, it is extremely difficult to envision how a Department of Defense manual for civil emergencies could be used for such purpose as well.[14]

Plaintiffs' claims in this lawsuit against the United States can survive dismissal on subject matter jurisdiction grounds if they have exhausted their administrative remedies and if the challenged conduct on the part of the United States falls outside of the particular categories of torts that are excepted from the waiver of sovereign immunity under the FTCA.   Neither condition is met in this case.   The conduct challenged by the Plaintiffs in this case fits squarely within discretionary function exception of the FTCA, and the administrative remedies were not exhausted by Plaintiffs prior to filing their lawsuit.

The timing, nature, and scope of the United States' preparation for, and response to, Hurricane Katrina were matters that quintessentially involved elements of judgment and choice on the part of the federal officials who were authorized to make, and who actually made, such judgments and choices.   The judgments and decisions were based on the public policy embodied in the provisions of the Stafford Act and applicable regulations, as well as in HSPD-5, which together create a flexible framework under which federal officials are authorized to take discretionary precautionary and remedial action to assist State and local authorities in dealing with natural disasters and national emergencies.

It cannot be seriously disputed that conditions associated with major disasters and emergencies are seldom, if ever, static.   Indeed, they are always fluid.   Under such circumstances, it is imperative that the decision-making process employed by federal agency officials involve

---

[14] Plaintiffs do not identify the manual by either date or edition, nor do they attach a copy of the manual as an exhibit to their Protective Re-filed Complaint.

discretion to formulate and use their best judgments in responding to fluid, constantly-changing conditions and events.   No two disasters or emergencies are ever identical; thus, each disaster or emergency must be individually evaluated and assessed in determining the appropriate federal emergency response.  If the hands of  federal officials were tied by rigid, inflexible directives and rules mandating a particular course of action or response to disasters and emergencies, there can be little doubt that this kind of predetermined, non-discretionary response mechanism or protocol would be ill-suited to achieve the maximum level of protection to public health and safety that would be possible.  The Stafford Act, its applicable regulations, and the HSPD-5 provide critically-needed flexibility on the part of federal officials to respond to disasters and emergencies by giving them unfettered discretion to formulate and implement their best judgments in their efforts to protect life and property and to minimize, to the greatest extent possible, the impact of the disaster on the public.  That any such judgments and choices may later be criticized or proven not to have been the best judgment or choice in hindsight does not alter the fact that they are discretionary and are shielded from a later lawsuit by the FTCA.

The conduct challenged by Plaintiffs in this particular lawsuit is the Government's pre-and post storm response to Hurricane Katrina.[15]   Assuming, for the purpose of this motion only, that Plaintiffs could establish a *prima facie* case of negligence with regard to one or more of their allegations (which is denied), their lawsuit still would not be actionable against the United States because the challenged decisions and judgments at issue are precisely the kinds of decisions and

---

[15] This fact is clear from the specific allegations in the Protective Re-filed Complaint, as well as from Ashton O'Dwyer, Jr.'s 17, 2006 letter to the Corps of Engineers and FEMA (Exhibit "A" to the Protective Re-filed Complaint) which states in its penultimate paragraph: "The above-identified individual claims against your agencies include claims arising out of the deficient preparations for and deficient response to Hurricane KATRINA [sic] and its aftermath by your agencies, which caused damage to my clients."

judgments that the FTCA discretionary function exception shields the United States from liability.

### 3.   The Court Lacks Subject Matter Jurisdiction Over the Plaintiffs' Claims Because Plaintiffs Failed To Exhaust Their Administrative Remedies Under the FTCA and Applicable Regulations Prior to Filing this Lawsuit.

On Pages 21 - 23 of the Protective Re-filed Complaint, Plaintiffs allege that they satisfied

the administrative exhaustion prerequisites of section 2675 of the FTCA before filing their

lawsuit.  They identify three factual circumstances which they claim support this contention.

First, they assert that a motion to dismiss filed by the United States in C.A. No. 06-2688,  another

Hurricane Katrina-related tort action  filed by different plaintiffs, "constitutes a denial of any and

all claims against the Government by the Citizenry of the Greater New Orleans Metropolitan

Area."[16]   Second, Plaintiffs allege that Ashton O'Dwyer, Jr.'s delivery to the Corps of Engineers

of a copy of the Complaints filed in C.A. Nos.  05-4181 and 05-4237, accompanied by a FOIA

request for documents and other tangible things relating to"litigation involving the United States

of America, acting by and through its agency and instrumentality, the U.S. Army Corps of

Engineers" operated as the "'functional equivalents' of valid administrative claims . . . pursuant to

the provisions of 28 U.S.C. § 2675", and that "more than six months have now elapsed since the

claims were first presented. . ." [17]   Finally, Plaintiffs assert that Mr. O'Dwyer's  Feb. 16, 2006,

letter to the Corps of Engineers and FEMA [18] constitutes the "functional equivalents of claims in

writing for sums certain" under the FTCA, and that the failure of the United States to act on their

claims within six months is properly deemed a denial of such claims, opening the way for them to

---

[16] Section V, Page 21, Protective Re-filed Complaint.

[17] Section VI, Page 22, Protective Re-filed Complaint.

[18] Exhibit "A", Protective Re-filed Complaint.

file the instant lawsuit. [19]   For the reasons set forth below, these three contentions are devoid of merit.

As this Court has previously stated in its Order and Reasons entered in *Berthelot I*, [20] section 2675 of the FTCA precludes the filing of a tort action against the United States unless the claimant first presents the claim to the appropriate federal agency and the agency either has denied the claim in writing or has failed to dispose of the claim within six months following presentment. A suit filed before the six-month period has run must be dismissed.  *McNeil v. United States,* 508 U.S. 106, 133 S.Ct. 1980 (1991).

The right to sue the United States in tort exists only by virtue of the FTCA.  This statute waives the sovereign immunity of the United States for tort actions, but only under limited circumstances.  It also fixes the terms and conditions upon which suit against the United States may be instituted.  *Plyler v. U.S.*. 900 F.2d 41, 42 (4th Cir.1990).  "Strict adherence to procedural requirements" of section 2675(a) is required.  *McNeil, supra*, 508 U.S. at 113.  "Suits filed [under the FTCA] must be filed in exact compliance with the terms of consent. . ." *Gregory v. Mitchell*, 634 F.2d 199,  (5th Cir.1981).

As established by the attached Declaration of Angela Drinkwitz, the only named Plaintiff - out of the hundreds listed in the lawsuit- that the Corps of Engineers can say with certainty ever submitted an SF-95 to it is Maureen O'Dwyer.[21]  The Declaration of Edward Broyles establishes

---

[19] Section VII, Page 22, Protective Re-filed Complaint.

[20] Pages 30 and 31, Order and Reasons.

[21] The Declaration of Angela Drinkwitz reflects that she caused  the Corps of Engineers' administrative claim records to be checked against the names of the plaintiffs listed in Mr. O'Dwyer's February 16, 2006 letter.  There were hits (sometimes multiple hits) on names that either mirrored or closely resembled the names of the individually-listed plaintiffs.  However, as

that none of the named Plaintiffs has submitted any SF-95s to FEMA.[22]   Additionally, none of the

claims submitted to the Corps of Engineers that  may be possibly connected to any of the named

Plaintiffs has been formally denied or otherwise acted upon by the agency, save the claim of

Maureen O'Dwyer.   Further, of all the claims submitted to the Corps of Engineers that  may be

possibly connected to the named Plaintiffs, only Maureen O'Dwyer's SF-95  was submitted to the

Corps of Engineers more than six months prior to the filing of this lawsuit.[23]   Thus, this lawsuit

would be timely only with respect to the claims asserted by Maureen O'Dwyer, ***assuming that***

***her SF-95 otherwise meets the established criteria for an administrative claim under the FTCA***

***and applicable regulations***.   However, for the reasons set forth below, the SF-95 of Maureen

O'Dwyer fails to satisfy the notice requirements of section 2675(a) of the FTCA and applicable

regulations; therefore, it is insufficient to trigger the running of the United States' six-month claim

response period under section 2675(a).

---

no social security numbers or other identifying information on the individually-named plaintiffs
were provided to the Corps of Engineers by Mr. O'Dwyer,  it is not possible for the Corps of
Engineers to determine conclusively whether it has received claims from ***any*** of the individually-
listed plaintiffs, save Maureen O'Dwyer.  Also, even if one assumes from the Corps of
Engineers' "hit" data that it may have received a claim from one or more of the other
individually-listed plaintiffs, the Drinkwitz Declaration states that all of the claims that match or
closely resemble the names of the individually-listed (other than the claim of of Maureen
O'Dwyer) were submitted to the Corps of Engineers less than six months before the instant
lawsuit was filed..

   [22] Paragraph 7, Broyles Declaration.

   [23]  A copy of the SF-95 of Maureen O'Dwyer is attached hereto as Attachment 2. Ashton
O'Dwyer, Jr. also submitted a SF-95 to the Corps of Engineers on his own behalf more than six
months prior to the filing of the instant lawsuit.  However, Ashton O'Dwyer, Jr., is not a named
plaintiff in this action.  The Ashton O'Dwyer, Jr, SF-95 is discussed by the Court on Page 31 of
its Order and Reasons, filed  in *Berthelot I*.   The Court ruled in that case, that other than perhaps
the SF-95 of Ashton O'Dwyer, Jr., and the one filed by him on behalf of his sister, Maureen
O'Dwyer, any purported attempt by Ashton O'Dwyer, Jr. to make any claim on behalf of any
other plaintiff named in the complaint "[was] woefully deficient."

The minimum requirements for notice under section 2675(a) are set forth at 28 C.F.R. §

14.2.  This regulation provides as follows:

> (A) For the purposes of the provisions of 28 U.S.C. 2401(b), 2672
> and 2675, a claim shall be deemed to have been presented when a
> Federal agency receives from a claimant, his duly authorized agent
> or legal representative, an executed Standard Form 95 or other
> written notification of an incident, accompanied by a claim for
> money damages in a sum certain for injury or loss of property,
> personal injury, or death alleged to have occurred by reason of the
> incident; and the title or legal capacity of the person signing, and is
> accompanied by evidence of his authority to present a claim on
> behalf of the claimant as agent, executor, administrator, parent,
> guardian or other representative.

As this Court has previously noted in its dismissal ruling in another action, *Berthelot, et al.*

*v. Boh Brothers Construction Co., L.L.C., et al.*, Civil Action No. 06-1885 (*Berthelot II*), the

foregoing regulation has been interpreted by the courts to require at a minimum (1) written notice

of the claim sufficient to enable the agency to investigate, (2) placement of a value on the claim,

and (3) authorization by claimant.   *Montaya v. United States*, 841 F.2d 102, 104 (5th Cir.1988).

Also, no specific form is required so long as the foregoing particular information is provided.

*Graubarth v. United States,* 2005 WL 3543763 (E.D.La.2005).

> **(a)**     **The United States' Filing of a Motion to Dismiss in a Separate Proceeding,
> C.A. No. 06-2688, Does Not Operate As, or Constitute, the Functional
> Equivalent of a Denial of Any Claims Validly Made by Any Plaintiffs in
> Connection With The Instant Lawsuit.**

Plaintiffs cite no authority for the proposition that motion to dismiss filed by the United

States in *Robinson, et al. v. United States, et al.,* C.A. No. 06-2268, a separate Hurricane Katrina-

related tort action involving different plaintiffs, can operate as an agency denial of any

administrative claims that any of the Plaintiffs in this action may have submitted.  Such a

proposition is frivolous on its face..

21

**(b)** **Ashton O'Dwyer's Delivery to the Corps of Engineers of a Copy of the Complaints filed in C.A. Nos. 05-4181 and 05-4237, Accompanied By a FOIA Request, Does Not Operate as the Functional Equivalent of Notice under Section 2675(a) of the FTCA and Applicable Regulations.**

This Court previously rejected an identical "functional equivalent" argument made by Plaintiffs' counsel, Ashton O'Dwyer, Jr., in *Berthelot II*.[24]  In that case, Mr. O'Dwyer argued (as his clients contend here) that his presentation to the Corps of Engineers of the complaints filed in C.A. Nos. 05-4181 and 05-4237 were the "functional equivalents" of notice under section 2675(a).   In rejecting this argument, this Court stated:

> In the instant case, plaintiffs maintain that . . .(1) the presentation of the complaints in C.A. Nos. 05-4181 and 05-4237 as part of a request for information and documents made pursuant to the Freedom of Information Act ("FOIA") . . .suffices.  Contrary to plaintiffs' contentions, this action is not the "functional equivalent" of what is required under the applicable regulations.  There is no personal information concerning the specific injuries or damages incurred by any one of the named plaintiffs.  Indeed, not even an address is provided for any of the named plaintiffs in these complaints, nor is there a specific indication of the amount of damages any plaintiff seeks and whether such damages are for property damage or personal injuries.  Furthermore, while the plaintiffs in C.A. No. 05-4181 are most of the plaintiffs in this Complaint, neither of the complaints demonstrate that counsel is authorized to represent each name plaintiff and each potential class member.

For the same reasons stated by this Court above, the complaints in C.A. Nos. 05-4181 and 05-4237 do not serve as proper notice under the FCTA in this case, either.

**(c)** **Mr. O'Dwyer's Feb. 17, 2006, Letter Does Not Constitute The "Functional Equivalent" of Notice Under Section 2675(a) of the FTCA and Applicable Regulations.**

Mr. O'Dwyer's letter, a copy of which is attached to Plaintiffs' Protective Re-filed

---

[24] Order and Reasons, dated April 24, 2007.

Complaint as Exhibit "A", fails to satisfy the statutory and regulatory notice requirements for all of the reasons that the complaints in C.A. Nos. 05-4181 and 05-2637 do not satisfy such requirements, save one.[25]   Hence, the administrative exhaustion requirements of section 2675(a) are not met by Mr. O'Dwyer's submission of the letter to the Corps of Engineers.

>    **(d)**    **Maureen O'Dwyer's Administrative Claim Is Inadequate to Constitute Notice Under Section 2675(a) of the FTCA and Applicable Regulations.**

Acting as the purported "agent, legal representative and attorney-in-fact" for his sister, Maureen O'Dwyer, Ashton O'Dwyer, Jr. prepared and submitted a SF-95 form, dated January 20, 2006.   It was received by the Corps of Engineers on January 31, 2006.[26]  This SF-95 is attached hereto as Exhibit USA-2 and was discussed in the Order and Reasons issued by the Court in *Berthelot I* .   However, in that case, the Court did not find it necessary, for the purpose of acting upon the Government's motion to dismiss, to determine whether either Maureen O'Dwyer's SF-95 or the SF-95 submitted by Ashton O'Dwyer, Jr. on his own behalf[27] met the minimum criteria for proper notice under section 2675(a) and applicable regulations.

The United States submits that Maureen O'Dwyer's SF-95 should not be considered as adequate notice under section 2675(a) or 28 C.F.R. § 14.2 because it was not accompanied by evidence of Mr. O'Dwyer's authority to present a claim on her behalf as her "agent, executor,

---

[25] At best, the letter complies with only one of the regulatory criteria: the statement of a sum certain in damages.

[26] The Court previously made this finding in *Berthelot I.  See* Order and Reasons at 19.

[27] As mentioned previously, Ashton O'Dwyer, Jr.'s SF-95 is not at issue here because Ashton O'Dwyer is not a named plaintiff in the lawsuit.

administrator, parent, guardian or other representative." [28]   Mr. O'Dwyer's failure to submit a

Power of Attorney, Legal Representation Agreement or Contract, or any other written

documentation evidencing his purported representative relationship with his sister, Maureen

O'Dwyer, renders the SF-95 deficient for the purposes of notice under the FTCA.   Should this

Court conclude that Maureen O'Dwyer's SF-95 is deficient, then the running of the six-month

period under section 2675(a) has never commenced relative to Maureen O'Dwyer's claims against

the United States, and the Protective Re-filed Complaint is premature with respect to her claims.

Consequently, the Court would lack subject matter jurisdiction to hear her claims on this basis

alone.  *Martinez v. United States*, 778 F.2d 694, 697 (5th Cir.1984); *Wadsworth v. United States*,

721 F.2d 503, 505-06 (5th Cir.1981).

## IV.    CONCLUSION

For the foregoing reasons, the Protective Re-filed Complaint should be dismissed as

against the United States for lack of subject matter jurisdiction.  None of the jurisdictional bases

asserted by Plaintiffs in the Protective Re-filed Complaint (with the exception of the FTCA)

potentially provides this Court with subject matter jurisdiction over the claims asserted against the

United States.   Additionally, no subject matter jurisdiction lies under the FTCA because the

challenged conduct of the United States falls within its discretionary function exception, and

because none of the named Plaintiffs exhausted their administrative remedies before the

institution of this lawsuit.  The Complaint is premature not only with respect the claims of

Maureen O'Dwyer and those of any other named plaintiffs who may have actually submitted

valid claims to the Corps of Engineers, it is premature, as well, with respect to the named

---

[28] *See* Exhibit C, Drinkwitz Declaration.

24

plaintiffs who have yet to submit claims.

Assuming, for the sake of argument only, that Maureen O'Dwyer has satisfied all of the requirements for proper notice under section 2675(a) and 28 C.F.R. § 14.2, that she has properly and timely exhausted her administrative remedies, and that this lawsuit is not premature with respect to her claims, this Court should nonetheless dismiss her claims with prejudice because, as discussed above, the government conduct that her claims put at issue falls squarely within the discretionary function exception of the FTCA.   As a result, such claims are barred under the principle of sovereign immunity.

UNITED STATES OF AMERICA, by

DAVID R. DUGAS
UNITED STATES ATTORNEY

s/ James L. Nelson
James L. Nelson, LBN 9934
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana 70801
Telephone: (225) 389-0443
Fax: (225) 389-0685
E-mail: jim.nelson@usdoj.gov