UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

*severed from Abadie*, 06-5164

LESLEY DIROSA, LOUIS DIROSA,
        **Plaintiffs**

VS.

STATE FARM FIRE AND CASUALTY
COMPANY,
        **Defendant**

CIVIL ACTION
NO. 05-4182
SECTION "K" (2)

CIVIL ACTION
No. 07-2499
SECTION "K" (2)

### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE UNENFORCEABILITY OF THE ANTI-CONCURRENT CAUSE CLAUSE

NOW COMES, through undersigned counsel, Defendant, State Farm Fire and Casualty Company ("State Farm"), who submits this memorandum of law in opposition to Plaintiffs' Motion for Partial Summary Judgment [ECF No. 6901]. In support thereof, Defendant states:

### INTRODUCTION

Plaintiffs demand that the Court give them judgment as a matter of law "that the so-called anti-concurrent causation clause in State Farm's All-Risk Homeowner's Policy is inapplicable to their loss suffered as a result of Hurricane Katrina and the failed New Orleans levee system." (Memorandum in Support of the Motion for Partial Summary Judgment on the Unenforceability

of the Anti-Concurrent Cause Clause ("Pl. Mem.") [ECF No. 6901-2] at 2.) However, Plaintiffs have failed to provide this Court with a complete factual context for their motion. Significantly, Plaintiffs have failed to disclose in their Statement of Facts, Motion for Summary Judgment, or Memorandum that State Farm made payments to them for losses determined to have been independently caused by wind. State Farm made total payments to Plaintiffs in the amount of $40,639.12. This omission is significant given that Plaintiffs' argument is largely premised on their assertion that enforcement of the anti-concurrent causation language in their homeowners policy would lead to an absurd result and render coverage illusory.

The clause at issue excludes coverage for damages caused by flooding even when "other causes acted concurrently or in any sequence with" the flooding to cause the loss. As this Court previously recognized, the anti-concurrent cause clause is implicated only in cases that "present a combination of forces that caused damages." *In re Katrina Canal Breaches Consol. Litig.*, 466 F. Supp. 2d 729, 762 (E.D. La. 2006), *aff'd in relevant part and vacated in part on other grounds*, ___ F.3d ___, 2007 WL 2200004 (5th Cir. Aug. 2, 2007). Here, Plaintiffs have not presented any competent summary judgment evidence that the damages to their home and its contents were caused by a "combination of forces." As noted above, State Farm made payments to Plaintiffs for losses that it determined were caused by wind damage and denied only that part of the claim determined to be caused by water damage. On the other hand, Plaintiffs concede that their home was flooded as a result of a levee breach. Indeed, Plaintiffs made a claim under their flood policy and accepted the limits of that policy. Which losses claimed by Plaintiffs were caused by independent wind damage and which were caused by flood is a disputed question of fact that

2

cannot be resolved on this summary judgment record.[1]

Further, Plaintiffs' challenge to the lead-in language to the water damage exclusion in their State Farm homeowners policy fails on the merits. The lead-in language that Plaintiffs ask this Court to hold "is inapplicable" to their claim provides the contractual standard for the application of the policy's water damage exclusion. It states that "any loss which would not have occurred in the absence of" certain excluded events, including water damage, is not covered under the policy, "regardless of" the operation or effect of other causes of the loss. (Pl. Ex. A [ECF 6901-3] at 10 [ECF p.15].) Plaintiffs incorrectly claim that the lead-in language is ambiguous in the context of hurricane loss, but do not even attempt to explain how the lead-in language could be construed to have two or more reasonable meanings, which is the definition of ambiguity employed by the Louisiana courts. In fact, courts in Louisiana and across the country have uniformly held that State Farm's lead-in language is clear, unambiguous, and enforceable as written. Indeed, as discussed herein, the Fifth Circuit recently upheld a similar anti-concurrent causation provision in a homeowners insurance policy as unambiguous and enforceable. Further, this Court has previously found the lead-in language to State Farm's water damage exclusion to be clear and unambiguous. Judge Barbier came to the same conclusion.[2] Thus, Plaintiffs' attempt to invalidate the lead-in language contravenes fundamental principles of Louisiana law that require that an insurance contract be enforced as written and given its plain and ordinary meaning.

For these reasons and those set forth below, Plaintiffs' motion should be denied both

---

[1] Plaintiffs do not seek such a determination by their motion for summary judgment. Instead, the only issue presented is the enforceability of the anti-concurrent cause provision of their homeowners' policy.

[2] This issue has also been briefed and is scheduled to be heard by Judge Fallon on September 12, 2007. *See Bruno v. State Farm Fire & Cas. Co.*, No. 06-4374, Document Nos. 80, 102, 111.

because it is based upon erroneous contentions as to Louisiana law and because substantial disputed issues of material fact exist.

## FACTUAL BACKGROUND

As of August 29, 2005, Plaintiffs' home, located at 5211 Marcia Drive, in New Orleans, Louisiana, was insured under a State Farm homeowners insurance policy (the "Policy"). The Policy provided coverage limits in the amount of $335,940 for damage to the dwelling and any dwelling extension and $229,540 for damage to the contents.[3] Plaintiffs admit that their home was located in the Lakeview area of New Orleans, so that flood waters from a levee breach entered their home.[4] Plaintiffs had flood insurance. They made a claim against their flood policy and received the limits of coverage ($250,000 for structural damage, $47,500 for damage to contents).

Shortly following Hurricane Katrina, Plaintiffs filed a claim under their State Farm homeowners policy seeking insurance payments for damage to their home and its contents sustained during Hurricane Katrina. After investigating the claim, State Farm determined that some of Plaintiffs' losses were caused independently by wind and made total payments to Plaintiffs in the amount of $40,639.12. State Farm denied that portion of the claim that it determined would not have occurred in the absence of flood damage.[5]

Subsequently, on August 28, 2006, Plaintiffs filed suit, as part of the mass consolidated action *Abadie, et al. v. Aegis Security Insurance Company, et al.*, No. 06-5164. Plaintiffs' claim was severed by this Court on March 27, 2007. Plaintiffs filed their Supplemental and Amending

---

[3] Pl. Ex. A [ECF 6901-3].

[4] Pl. Statement of Uncontested Facts ¶ 6.

[5] State Farm Fire and Casualty Company's Statement of Contested Facts Regarding Plaintiffs' Motion for Partial Summary Judgment ¶ 5.

4

Complaint on April 25, 2007.

## ARGUMENT

I. **THE LEAD-IN LANGUAGE TO STATE FARM'S WATER DAMAGE EXCLUSION IS CLEAR, UNAMBIGUOUS, AND ENFORCEABLE, AND EXCLUDES LOSSES THAT WOULD NOT HAVE OCCURRED IN THE ABSENCE OF WATER DAMAGE**

A. **Unambiguous Provisions in Insurance Policies Must Be Enforced as Written**

The interpretation of an insurance policy is a question of law for the court to decide. *See Am. Deposit Ins. Co. v. Myles*, 00-2457, p. 5 (La. 4/25/01), 783 So. 2d 1282, 1286. Louisiana courts interpret insurance policies according to the general rules of contract interpretation set forth in the Civil Code. *See Ledbetter v. Concord Gen. Corp.*, 95-0809 (La. 1/6/96), 665 So. 2d 1166, 1169, *amended on other grounds by* 95-0809 (La. 4/18/96), 671 So. 2d 915. As the Fifth Circuit recently stated:

> "The words of a contract must be given their generally prevailing meaning." La. Civ.Code Ann. art. 2047 (1987); *see also Cadwallader [v. Allstate Ins. Co.*, 02-1637, p. 3, 848 So. 2d 577, 580]. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Ann. art. 2046 (1987). "If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." *Cadwallader*, 848 So. 2d at 580.

*In re Katrina Canal Breaches Litig.*, ___ F.3d ___, 2007 WL 2200004, at *12 (5th Cir. Aug. 2, 2007) ("*Katrina Canal Breaches II*").

Plaintiffs' homeowners policy excludes "water damage," which is defined to include "flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not." (Pl. Ex. A [ECF 6901-3] at 10 [ECF p.15].) The Policy's water damage exclusion is prefaced by lead-in language that provides that water damage (and other "excluded events" to which the lead-in language applies) is not covered, even when a covered peril is a concurrent cause of the loss. Appearing in a Section entitled

"Losses Not Insured," the water damage exclusion, with the lead-in language, states:

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these . . . .

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not . . . .

(*Id.*) As is evident, the water damage (or flood) exclusion is prefaced by general lead-in language that defines the scope and application of the exclusion. Although commonly referred to as an "anti-concurrent cause" provision, the lead-in paragraph not only negates the effect of "concurrent," antecedent, or sequential causes of loss on the enumerated "excluded events" (including water damage), but also makes irrelevant the cause of the excluded event itself. Thus, under the relevant policy language, water damage is not covered if the damage would not have occurred in the absence of flood, waves, tidal water, or the overflow of a body of water, even if there are other contributing causes of loss (such as wind) that are not excluded under the policy. **However, the homeowners policy provides coverage for independent wind damage that** *would have* **occurred in the absence of water damage.**

A similar provision was recently held to be unambiguous and enforceable by the Fifth Circuit. In *Leonard v. Nationwide Mutual Insurance Co.*, ___ F.3d ___, 2007 WL 2446794 (5th Cir. Aug. 30, 2007), the policy at issue stated: "We do not cover loss to any property resulting directly or indirectly from any of the following. *Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss. . . .*" *Id.* at *2 (emphasis and

6

alteration in original).   The Fifth Circuit explained:   "Commonly referred to as an 'anticoncurrent-causation clause,' or 'ACC clause,' this prefatory language denies coverage whenever an excluded peril and a covered peril combine to damage a dwelling or personal property.'" *Id.* As the Fifth Circuit held, "[t]he clause unambiguously excludes coverage for water damage 'even if another peril' – e.g., wind – 'contributed concurrently or in any sequence to cause the loss.'" *Id.* at *7.[6]

Plaintiffs attempt to get around the fact that State Farm's water damage exclusion and the lead-in language preceding it plainly and unambiguously state that coverage is not provided for any loss which would not have occurred in the absence of flood, surface water, waves, etc., whether driven by wind or not, by grossly distorting the policy's language.   In particular, Plaintiffs claim that the policy provides that "if a covered peril such as wind initially caused the loss four to five hours before *one drop of water* became involved, State Farm could exclude the entire loss because of the presence of flood water damage at any time subsequent thereto." (Pl. Mem. at 4-5 (emphasis added).) **This is decidedly *not* State Farm's position.  Rather, State Farm has consistently made clear that, even when flood waters have caused substantial damage to insured property, the homeowners policy still provides coverage for any damage independently attributable to wind.** Thus, under the "lead-in" provision to the water damage exclusion, when the damage is attributable to the combined and indivisible effect of wind and water, it is excluded from coverage because such damage "would not have occurred in the absence of" the excluded water peril. By contrast, when a hurricane causes only wind damage or

---

[6] Significantly, the Fifth Circuit relied upon *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293 (Ala. 1999), a case where the Alabama Supreme Court upheld the anti-concurrent cause language in State Farm's policy.   The Fifth Circuit noted that the State Farm homeowners policy at issue in *Slade* "contained an ACC clause substantively indistinguishable from the one contested here." *Leonard*, 2007 WL 2446794, at *11.

causes wind damage that is separate from and independent of excluded water damage, that damage is covered, whether it occurred before, at the same time as, or after the excluded water damage. For example, if the lower story of a house is flooded and the roof is damaged at the same time by wind, the roof damage is covered. This is so because the wind damage in this example would have occurred "in the absence of" storm surge flooding, so neither the water damage exclusion nor the lead-in provision enters into the coverage analysis. As the Fifth Circuit explained in *Leonard*, there are "three discrete categories of damage at issue in this litigation: (1) damage caused exclusively by wind; (2) damage caused exclusively by water; and (3) damage caused by wind 'concurrently or in any sequence' with water." *Leonard*, 2007 WL 2446794, at *7. "The only species of damage covered under the policy is damage caused *exclusively* by wind. But if wind and water synergistically caused the *same* damage, such damage is excluded." *Id.* (emphasis in original). Based upon this analysis, the Fifth Circuit also rejected the argument that the anti-concurrent causation language rendered coverage illusory. *See id.* at *7-8. As the Fifth Circuit explained, such argument is fatally flawed because it fails to recognize the three distinct categories of damage described above. *See id.*[7]

Accordingly, when State Farm's lead-in language is properly construed, it is plain, unambiguous, and enforceable as written.

### B.     Anti-Concurrent Cause Provisions in Insurance Policies Have Been Repeatedly Upheld as Valid and Enforceable

Courts addressing this precise issue in other Katrina and Rita coverage claims have repeatedly upheld State Farm's water damage exclusion as unambiguous, valid, and enforceable.

---

[7] Plaintiffs' contention in this case that coverage for wind damage is "illusory" (Pl. Mem. at 5) is even more absurd given the fact that State Farm made a payment to Plaintiffs for independent wind damage.

8

Indeed, the Fifth Circuit recently held that the flood exclusion in State Farm's policy unambiguously precludes recovery for damage caused by flood waters that followed Hurricane Katrina. *See Katrina Canal Breaches II*, 2007 WL 2200004, at *25. The Fifth Circuit made clear that a "flood" is a "flood" regardless of cause, and that "'[a]n insured may not avoid a contractual exclusion merely by affixing ... [a] separate characterization to the act or event causing the loss.'" *Id.* at *27 (citation omitted). Construing State Farm's water damage exclusion, together with its lead-in language, this Court held that State Farm's Water Damage Exclusion "makes it clear that regardless of the **cause** of the flooding, there is no coverage provided for any flooding 'regardless of the cause.'" *In re Katrina Canal Breaches Consol. Litig.*, 466 F. Supp. 2d 729, 762 (E.D. La. 2006) (Duval, J.) ("*Katrina Canal Breaches I*") (emphasis in original), *aff'd as to State Farm ruling, vacated and remanded on other grounds*, 2007 WL 2200004 (5th Cir. Aug. 2, 2007). Likewise, Judge Barbier considered State Farm's water damage exclusion, together with its lead-in language, and "agree[d] with Judge Duval's conclusion that the water damage exclusion in State Farm's policy is unambiguous." *Bilbe v. Belsom*, No. 06-7596, 2007 WL 2042437, at *4 (E.D. La. July 12, 2007) (Barbier, J.). As Judge Barbier explained: "State Farm's water damage exclusion clearly and unambiguously excludes damage for all flooding – whether driven by hurricane winds or not." *Id.*; *see also Boudoin v. State Farm Ins. Cos.*, No. 06-1656, 2007 WL 2066853, at *4 (W.D. La. July 13, 2007) (Melancon, J.) ("In this instance, the coverage language in the policies is clear. The Flood Policy covers only those damages related to flooding and the Homeowner's Policy covers damages related to wind but expressly excludes flood damage.").

Other state and federal courts in Louisiana have also construed and upheld policy language similar to State Farm's lead-in language. In *Sweeney v. City of Shreveport*, 584 So. 2d

1248 (La. App. 2d Cir. 1991), the City of Shreveport demolished the plaintiff's house after its

several notices of code violations and notice of impending demolition went unanswered.  In fact,

due to an error on the part of the city inspector, those notices had been sent to the wrong address

and the plaintiff had never received them.  *Id.* at 1249-50.  The plaintiff's subsequent insurance

claim was denied based on an "ordinance or law" exclusion that was prefaced by lead-in

language very similar to State Farm's.  *See id.*[8]  The Louisiana Second Circuit Court of Appeal

affirmed summary judgment for the insurer, rejecting the plaintiff's argument that the exclusion

did not apply because her loss was caused in part by the City's negligence.  *See id.* at 1252.

Relying on the lead-in language, the court stated:

> Admittedly, Mrs. Sweeney did not receive notice that her property was to
> be demolished; thus her claim against the city may have merit.  However, the
> exclusion provides that *any loss* directly or indirectly resulting from enforcement
> of an ordinance is excluded *regardless of any contributing causes*.  It may be true
> that the negligence of city employees resulted in Mrs. Sweeney not getting notice
> and that this negligence contributed to the demolition of the house; however, *the
> exclusion by its own terms still applies.*

*Id.* at 1251 (emphasis added).

The court upheld very similar language in *Prytania Park Hotel v. General Star Indemnity

Co.*, 896 F. Supp. 618 (E.D. La. 1995).  In that case, the insured hotel suffered a fire loss and

made a claim under its fire insurance policy for the cost of a new, code-mandated sprinkler

system.   The insurer denied the claim, relying on the policy's exclusion for loss from

enforcement of "ordinance or law," which was prefaced by lead-in language equivalent to State

---

[8] The lead-in language at issue in *Sweeney* stated: "We do not insure for *loss caused directly or
indirectly* by any of the following. Such loss is excluded regardless of any other cause or event
contributing concurrently or in any sequence to the loss."  584 So. 2d at 1250 (emphasis in original).

Farm's. *See id.* at 623.[9] In subsequent litigation, the insured argued that the exclusion should not apply because the "precipitating" or "proximate" cause of the claimed sprinkler system was the fire, not the enforcement of the building code. *See id.* The court rejected this argument, holding that costs of complying with a building code "are simply excluded according to the policy's plain, unambiguous language." *Id.* at 623-24. The court stressed that, under the lead-in language, "it is inconsequential . . . whether the fire which caused the loss occurred before the repair that required installation of a sprinkler system." *Id.* at 623.

Many other appellate courts have reached the same result. Just recently, in *Thompson v. State Farm Fire & Casualty Co.*, No. 05CA2079, 2007 WL 686006 (Colo. Ct. App. Mar. 8, 2007), *cert denied*, No. 07C314, 2007 WL 2028540 (Colo. July, 16, 2007), the Colorado Court of Appeals rejected the plaintiffs' argument that the water damage exclusion is ambiguous and held that any potential ambiguity in the exclusion is foreclosed by the lead-in language. *Id.* at *3. The court stated that "[t]o read the policy as plaintiffs request would be to create an ambiguity where none exists." *Id.*; *see also Rhoden v. State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907, 911-13 (S.D. Miss. 1998) (applying lead-in language), *aff'd*, 200 F.3d 815 (5th Cir. 1999); *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1130 (D.C. 2001) (State Farm's lead-in language is unambiguous); *State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 244-46 (Fla. Dist. Ct. App. 2002) (noting "the unambiguous language of the lead-in clause"); *Toumayan v. State Farm Gen. Ins. Co.*, 970 S.W.2d 822, 826 (Mo. Ct. App. 1998) (State Farm's "exclusionary language in the lead-in clause" is "unambiguous"); *Boteler v. State Farm Cas. Ins. Co.*, 876 So. 2d 1067, 1069-70 (Miss. Ct. App. 2004) (State Farm's anti-concurrent cause lead-in language is "clear"

---

[9] The policy at issue in *Prytania Park Hotel* stated: "[Insurer] will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." 896 F. Supp. at 623.

and "[u]nambiguous language of exclusion"); *Kula v. State Farm Fire & Cas. Co.*, 628 N.Y.S.2d 988, 990-91 (App. Div. 1995) ("the 'lead-in' clause . . . clearly excludes coverage for any loss regardless of the cause"); *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1276 (Utah 1993) (lead-in language is clear and unambiguous).[10] Thus, the solid weight of authority in Louisiana and elsewhere construing the lead-in provision at issue establishes that State Farm's anti-concurrent cause language is clear, unambiguous, and enforceable as written.

For contrary authority, Plaintiffs rely upon two decisions issued by Judge Senter of the Southern District of Mississippi. (Pl. Mem. at 5.) That these decisions were wrongly decided is made patent by the Fifth Circuit's recent decision in *Leonard*. The Fifth Circuit held that Judge Senter's conclusion in *Leonard*[11] that Nationwide's anti-concurrent cause provision provided coverage "even if the wind damage occurred concurrently or in sequence with the excluded water damage" was "unjustifiable when read against the clause's plain language" providing that "[s]uch a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss." *Leonard*, 2007 WL 2446794, at *7. Likewise, Judge Senter's rejection of anti-concurrent cause language in *Tuepker*[12] cannot be reconciled with *Leonard*. Further, in rejecting the district court's erroneous analysis of the anti-concurrent causation

---

[10] Numerous other courts have also upheld and applied State Farm's lead-in language. *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 313-14 (Ala. 1999); *State Farm Fire & Cas. Co. v. Bongen*, 925 P.2d 1042, 1045-46 (Alaska 1996); *Millar v. State Farm Fire & Cas. Co.*, 804 P.2d 822, 826 (Ariz. Ct. App. 1990); *Whitt v. State Farm Fire & Cas. Co.*, 734 N.E.2d 911, 915 (Ill. App. Ct. 2000); *Rodin v. State Farm Fire & Cas. Co.*, 844 S.W.2d 537, 539 (Mo. Ct. App. 1992); *State Farm Fire & Cas. Co. v. Paulson*, 756 P.2d 764, 766-67 (Wyo. 1988); *accord Schroeder v. State Farm Fire & Cas. Co.*, 770 F. Supp. 558, 561 (D. Nev. 1991); *Silow v. State Farm Ins. Co.*, No. Civ. A. 94-2956, 1994 WL 709362, at *2 (E.D. Pa. Dec. 20, 1994).

[11] *Leonard v. Nationwide Mut. Ins. Co.*, 438 F. Supp. 2d 684 (S.D. Miss. 2006), *aff'd on other grounds*, No. 06-61130, 2007 WL 2446794 (5th Cir. Aug. 30, 2007).

[12] *Tuepker v. State Farm Fire & Casualty Co.*, No. 1:05CV559, 2006 WL 1442489, at *4-5 (S.D. Miss. May 24, 2006). *Tuepker* is on appeal to the Fifth Circuit and was argued on September 6.

provision in *Leonard*, the Fifth Circuit relied upon decisions upholding ***State Farm's*** anti-concurrent cause language. *See Leonard*, 2007 WL 2446794, at *9 (discussing *Boteler*, 876 So. 2d 1067 and *Rhoden*, 32 F. Supp. 2d 907).

In addition, in *Tuepker*, Judge Senter premised his finding of ambiguity largely on the ground that the policy's "hurricane deductible endorsement" made the exclusionary language in the lead-in provision ambiguous in the context of loss during a hurricane. *See Tuepker*, 2006 WL 1442489, at *4-5. The Fifth Circuit has squarely rejected the notion that the "hurricane deductible endorsement" has any effect on the policy's coverages or exclusions. *See Katrina Canal Breaches II*, 2007 WL 2200004, at *24. As the Fifth Circuit explained, "the plain language of the hurricane-deductible endorsements indicates that they do nothing more than alter the deductible for damage caused by a hurricane. Nothing in the language of the endorsements purports to extend coverage for floods or to restrict flood exclusions." *Id.* This Court has also ruled that "any Hurricane Deductible Endorsement contained in a policy does not increase coverage provided to a homeowner or insured." *Katrina Canal Breaches I*, 466 F. Supp. 2d at 774.[13]

### C.    The Rule of Strict Construction Does Not Authorize the Court to Rewrite Plaintiffs' Homeowners Policy

---

[13] Without explicitly making an argument based upon the hurricane deductible, Plaintiffs note in their "Factual Background" that their homeowners policy contained such an endorsement. The Hurricane Deductible Endorsement specifically states: "All other policy provisions apply." (Pl. Ex. A [Doc. 6901-3] at ECF page 36.) As noted above, the Fifth Circuit and this Court have explicitly rejected arguments that such endorsements expand coverage. The Fifth Circuit's and this Court's conclusion is in complete accord with numerous other decisions which have found that deductible endorsements similar to that at issue here do not modify, affect, or render ambiguous a policy's anti-concurrent cause language. *See Paulucci v. Liberty Mut. Fire Ins. Co.*, 190 F. Supp. 2d 1312, 1322 (M.D. Fla. 2002) ("Because the windstorm and hail deductible clause modifies application of the deductible only, it does not negate anti-concurrent language in the exclusion section of the policy's General Policy Conditions."); *see also Dallas Handbag Co. v. Royal Indem. Co.*, 390 S.W.2d 863, 865 (Tex. Civ. App. 1965) (deductible provision of policy "does not create any new coverage or restore any coverage which has been excluded by [the policy]").

Plaintiffs argue that the Court should ignore this long line of authority holding State Farm's water damage exclusion unambiguous and enforceable because the rule of strict construction requires the Court to narrowly construe the policy language to find coverage. (Pl. Mem. at 4.) Plaintiffs are incorrect. Although exclusions are strictly construed, the courts will not "strain to find an ambiguity in the policy where none exists." *Travelers Indem. Co. v. Powell Ins. Co.*, No. 95-4188, 1996 WL 578030, at *3 (E.D. La. Oct. 4, 1996). As the Louisiana Supreme Court has stated:

> The rule of strict construction does not authorize a perversion of language, or the exercise of inventive power for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties.

*Commercial Union Ins. Co. v. Advance Coating Co.*, 351 So. 2d 1183, 1185 (La. 1977); *accord Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290-91 (5th Cir. 2001). The rule of strict construction "applies only if the ambiguous policy provision is susceptible to two or more *reasonable* interpretations." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La. 1/14/94), 630 So. 2d 759, 770 (emphasis in original); *see also Cadwallader v. Allstate Ins. Co.*, 02-1637, p. 4 (La. 6/27/03), 848 So. 2d 577, 580. "Unambiguous provisions in an insurance policy limiting liability must be given effect." *Cent. La. Elec. Co. v. Westinghouse Elec. Corp.*, 569 So. 2d 120, 122 (La. App. 1st Cir. 1990), *aff'd*, 579 So. 2d 981 (La. 1991).

Recognizing that the rule of strict construction does not apply to unambiguous exclusionary provisions, Plaintiffs ask the Court to find State Farm's policy language ambiguous. (Pl. Mem. at 5.) But Plaintiffs do not undertake to explain precisely how any specific term or provision of State Farm's water damage exclusion or the general lead-in language preceding the policy exclusions is vague or ambiguous. Nor can they. State Farm's homeowners policy plainly and unambiguously states that it does "not insure under any coverage for any loss which

14

would not have occurred in the absence of [water damage] . . . regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss." There is simply nothing ambiguous about this provision. Thus, the rule of strict construction does not allow Plaintiffs to negate any portion of State Farm's water damage exclusion, including the anti-concurrent cause clause.

## II. STATE FARM'S LEAD-IN LANGUAGE DOES NOT CONFLICT WITH THE EFFICIENT PROXIMATE CAUSE DOCTRINE

### A. Parties May Limit Operation of the Efficient Proximate Cause Doctrine by Contract

Plaintiffs argue that enforcing the lead-in language to the water damage exclusion in their policy would contravene the "efficient proximate cause doctrine." (Pl. Mem. at 5-7.) However, the judicially created "efficient proximate cause" doctrine does not negate the clear and unambiguous terms of the insurance contracts at issue here.[14] As stated by the Louisiana Supreme Court in the case that Plaintiffs principally rely upon in their brief, "it is sufficient, in order to recover upon a windstorm insurance policy *not otherwise limited or defined,* that the wind was the proximate or efficient cause of the loss or damage." *Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Cont'l Ins. Co. of N.Y.,* 237 La. 973, 980, 112 So. 2d 680, 683 (1959) (emphasis added). Here, State Farm's lead-in language plainly and unambiguously "limits or defines" the scope of the coverage provided by the homeowners policy.

---

[14] In *Katrina Canal Breaches II,* the Fifth Circuit noted that "[t]he Louisiana *Supreme* Court has not addressed the applicability of the efficient-proximate-cause doctrine in the context of an all-risk [open peril] policy. But it has concluded in the context of interpreting a windstorm insurance policy (which provided coverage only for loss caused by windstorm) that 'if a windstorm is the dominant and efficient cause of the loss, the insured may recover notwithstanding that another cause or causes contributed to the damage suffered.'" 2007 WL 2200004, at *26 n.28 (citation omitted). Concluding that the doctrine was inapplicable on the facts before it, the court "express[ed] no opinion on the extent to which Louisiana follows the efficient-proximate-cause rule in the context of all-risk policies." *Id.*

Likewise, the Fifth Circuit observed that "an anti-concurrent-causation clause ... has been recognized as demonstrating an insurer's intent to contract around the operation of the efficient-proximate-cause rule." *Katrina Canal Breaches II*, 2007 WL 2200004, at *26. And, while the Fifth Circuit in *Katrina Canal Breaches II* did not need to reach the question of whether an insurer can avoid the efficient proximate cause doctrine by contract, four days later it held that even though "Louisiana law equates 'direct loss' [as used in an insurance policy] with proximate cause; an insurance policy ... may limit or otherwise define 'direct loss.'" *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, No. 06-30771, 2007 WL 2230175, at *2 (5th Cir. Aug. 6, 2007). More recently, in *Leonard*, the Fifth Circuit expressly held that an anti-concurrent cause provision renders the efficient proximate cause doctrine inapplicable. *Leonard*, 2007 WL 2446794, at *9 ("Whatever the effect of the efficient proximate cause doctrine in the Hurricane Camille cases, those decisions do not control the current case because none of the policies they involve contain ACC clauses similar to the one at issue here . . . ."). And, while the Fifth Circuit was applying Mississippi law in *Leonard*, it also noted that "[t]wo federal appellate courts and many state and district courts have endorsed using ACC clauses to circumvent default causation rules like efficient proximate cause. . . . A majority of states that have considered the matter enforce ACC exclusion clauses." *Id.* at *10.[15]

---

[15] Indeed, in a nearly unbroken line of nationwide authority, courts have held that efficient proximate cause analysis must give way in the face of State Farm's anti-concurrent cause language. *See, e.g., Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1277 (Utah 1993) ("[T]he proper path to follow is to recognize the efficient proximate cause rule only when the parties have not chosen freely to contract out of it."); *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1130 (D.C. 2001) (efficient proximate cause doctrine was inapplicable because policy contained anti-concurrent cause language). Courts around the country have likewise held that other insurers' similarly worded anti-concurrent cause provisions trump the efficient proximate cause doctrine. *See, e.g., TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997) (analogous anti-concurrent cause provision "directly address[es], and contract[s] out of, the efficient proximate cause doctrine and exclude[s] coverage for losses caused by water, regardless of the existence of any other contributing causes in any sequence"); *Preferred Mut. Ins. Co., v. Meggison*, 53 F. Supp. 2d 139, 142 (D. Mass. 1999) (similar lead-in provision precluded use of
*(cont'd)*

Here, as in *Leonard*, there is nothing in Louisiana's statutory or case law that precludes enforcement of an anti-concurrent cause provision. Louisiana law allows parties to decline to adopt common-law causation rules so long as the contract does not offend public policy. *See Jackson v. Rogers*, 95-0486 (La. App. 1st Cir. 11/9/95), 665 So. 2d 440, 443 ("An unambiguous provision of an insurance policy, which does not conflict with public policy or statutes, is an allowable limitation of liability and must be given effect."); *cf. Leonard*, 2007 WL 2446794, at *11 (discussing similar principles of Mississippi law, as well as general insurance law). To the extent Louisiana has adopted the doctrine of efficient proximate cause, it has done so simply as a default causation rule, not as a matter of public policy. *See Roach-Strayhan-Holland*, 237 La. At 980, 112 So. 2d at 683; *Lorio v. Aetna Ins. Co.*, 255 La. 721, 728, 232 So. 2d 490, 493 (1970). At the same time, the Louisiana Supreme Court has expressly stated that this default causation rule may be otherwise defined or limited in the contract of insurance. *See id.* Further, as discussed in Section I.B above, at least two courts applying Louisiana law have rejected the insured's coverage claim in the face of arguments that a covered peril was a "precipitating" or "contributing" cause of the insured's loss, thus impliedly recognizing that the inclusion of lead-in language similar to State Farm's negates the efficient proximate cause analysis. *See Sweeney*, 584 So. 2d at 1250, *Prytania Park Hotel*, 896 F. Supp. at 623-24; *cf. Leonard*, 2007 WL 2446794, at *11 (describing similar Mississippi precedent). As the Fifth Circuit observed, "[m]ost jurisdictions concur that ACC clauses comport with state public policy." *Leonard*, 2007 WL 2446794, at *11.[16]

---

*(cont'd from previous page)*
efficient proximate cause analysis "by expressly stating that a loss is excluded from coverage if it results from a combination of covered and excluded perils").

[16] The Louisiana appellate court in *Landry v. Louisiana Citizens Property Insurance Co.*, 07-247 (La. App. 3d Cir. 8/28/07), 2007 WL 2416107, did not hold to the contrary. First, the issue in that case
*(cont'd)*

None of the other cases cited by Plaintiffs (Pl. Mem. at 6), dealt with a policy containing anti-concurrent cause language. None involved damage by flood. Moreover, in their causation analysis, the courts were merely attempting to determine whether the facts involved a "direct loss" within the meaning of the policy, an issue not raised here. For example, in *Lorio*, the court observed that, in the case of a policy providing coverage for a loss "directly resulting from" windstorm, the court may properly look to the concept of proximate cause to determine coverage. The court held that the death of a horse from overeating, after being moved to a new stall because of hurricane wind damage to its old stall, was not directly caused by windstorm. *See* 255 La. at 730, 232 So. 2d at 493-94. Plaintiffs also cite two vintage Mississippi cases. However, as discussed above, Mississippi courts have held that the doctrine of efficient proximate cause does not contravene the unambiguously worded exclusions in State Farm's policies. *See supra* at 11. The Fifth Circuit favorably cited these decisions when it held in *Leonard* that parties to an insurance contract may override the efficient proximate cause doctrine by inclusion of anti-concurrent cause language.[17]

---

*(cont'd from previous page)*

was the construction of Louisiana's Valued Policy Law. Any issues addressed by the appellate court that were not necessary to its holding are *dicta* and of no precedential value. *See State v. Williams*, 05-1556, at p. 2 (La. 2/17/06), 921 So. 2d 105, 106 (per curiam); *Wise v. Bossier Parish School Bd.*, 02-1525, at 8 n.6 (La. 6/27/03), 851 So. 2d 1090, 1095 n.6. The *Landry* court was not called upon to address, and did not address, whether, pursuant to *Roach-Strayhan-Holland*, an insurer can limit the operation of the efficient proximate cause doctrine by contract. Further, the cases cited and discussed by the *Landry* court, which included the cases discussed *infra* at 23, did not deal with concurrent causation. Rather, they addressed situations where there was independent wind damage prior to the flooding (such as *Ebert*) or where the loss was caused by hurricane-related flooding (such as *Morehead*). *See Landry*, 2007 WL 2416107, at *9 & nn.8-9.

[17] Plaintiffs' only other "authority" is an Alabama case from 1917, which did not interpret a policy that contains State Farm's lead-in language or any similar concurrent cause provision and, thus, is of no relevance whatever. (Pl. Mem. at 6 (citing *W. Assurance Co. v. Hann*, 78 So. 232, 236 (Ala. 1917). Moreover, the Alabama Supreme Court has found the lead-in language to State Farm's water damage exclusion to be enforceable. *See State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 313-14 (Ala. 1999).

Indeed, in *Katrina Canal Breaches I*, this Court undertook a thorough analysis of the Louisiana Civil Code and Louisiana jurisprudence concerning the construction of insurance policies, and concluded as follows:

> Louisiana has not spoken to the issue of whether the doctrine of efficient proximate cause overrides anti-concurrent cause clauses. As noted, Louisiana has adopted the efficient proximate cause approach to coverage; however, the courts have not, to this Court's knowledge, squarely addressed this tension. Nonetheless, from the foregoing citations to the Code and the *jurisprudence constant* concerning clear language and the ability for parties to contract to dictate the terms thereof, it appears that a Louisiana court would enforce the clear contractual intent to exclude coverage as found in this State Farm lead-in clause.

*Katrina Canal Breaches I*, 466 F. Supp. 2d at 763. This conclusion regarding the clear language in this provision is undeniably correct, and the clear contractual intent to exclude coverage for indivisible damages caused by a combination of wind and flood is enforceable.

**B.  The Filed Rate Doctrine Requires Enforcement of State Farm's Water Damage Exclusion, Including the Lead-in Language**

Further, as in *Leonard*, Louisiana statutory law does not mandate that insurance policies reflect the efficient proximate cause doctrine. *Cf. Leonard*, 2007 WL 2446794, at *11. To the contrary, the Louisiana Insurance Code specifically provides that "[a]ny insurer may insert in its policies any provisions or conditions required by its plan of insurance or method of operation which are not prohibited by the provisions of this Code."

The Louisiana Legislature has given the Commissioner of Insurance exclusive authority to review and approve policy forms for certain lines of insurance, including property insurance policies, offered and sold in Louisiana.[18] The Commissioner was *required by law* to disapprove and reject State Farm's policy forms if he concluded that a proposed endorsement or exclusion violated state law or was ambiguous or misleading. *See* LSA-R.S. 22:621(3). "[A]pproval by

---

[18] "No basic insurance policy form . . . shall be issued, delivered, or used unless it has been filed with and approved by the commissioner of insurance." LSA-R.S. 22:620(a)(1).

19

the insurance commissioner constitutes an administrative ruling that the policy and its endorsements conform to the requirements of the law . . . ." *Carrier v. Allstate Ins. Co.*, 96-2681 (La. App. 1st Cir. 11/7/97), 702 So. 2d 367, 371. Similarly, authority to approve rates is vested in the Louisiana Insurance Rating Commission ("LIRC"). *See* LSA-R.S. 22:1401; LSA-R.S. 22:1402.

The filed rate, once approved by the regulatory authority with jurisdiction over the subject matter, "is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994); *see also In re Indus. Life Ins. Litig.*, 148 F. Supp. 2d 719, 721 n.1 (E.D. La. 2001); *Entergy La., Inc. v. La. Pub. Serv. Comm'n*, 01-1725, p. 13 (La. 4/3/02), 815 So. 2d 27, 35, *rev'd on other grounds*, 539 U.S. 39 (2003). "[T]he filed rate doctrine is not limited to 'rates' *per se*," *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986), but also protects contracts and insurance policy provisions that the regulatory authority has approved before they become effective. *See Allen v. State Farm Fire & Cas. Co.*, 59 F. Supp. 2d 1217, 1227-29 (S.D. Ala. 1999).

Louisiana courts have barred claims against insurers that, if granted, would directly *or* indirectly impact the approved rates or that would have the effect of changing the filed rates. *See Cont'l Cas. Co. v. Rogers*, 194 F.2d 582, 584 (5th Cir. 1952); *Jung Hotel, Inc. v. Ins. Comm'n of La.*, 179 La. 551, 556-57, 154 So. 448-450 (1934). Further, "[r]ates . . . do not exist in isolation. They have meaning only when one knows the services to which they are attached." *AT&T Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 223 (1998); *see also id.* at 226 (filed rate doctrine even bars state common law contract and tort claims involving the provisioning of services and billing). The rates Plaintiffs paid for their homeowners policy are linked not only to their coverage but to the exclusions in their policy as well. *See Am. Stone Diamond, Inc. v. Lloyds of London*, 934 F.

20

Supp. 839, 846 (S.D. Tex. 1996).  Thus, "the judicial elevation of the efficient proximate cause

doctrine to a rule of contract construction after contrary policies have been approved by the state

insurance commissioner would essentially usurp the legislature's authority to delegate authority

to an agency." *Leonard*, 2007 WL 2446794, at *11.

The only statute cited by Plaintiffs in support of their argument is Louisiana Revised

Statutes Annotated section 22:658.2 (Pl. Mem. at 7 n.1).  Plaintiffs' lack of enthusiasm for this

argument, which they relegate to a footnote, is well justified.  Section 22:658.2, which was not

enacted until February 23, 2006, provides:

> B. If damage to immovable property is covered, in whole or in part, under
> the terms of the policy of insurance, the burden is on the insurer to establish an
> exclusion under the terms of the policy.

> C. Any clause, condition, term, or other provision contained in any policy
> of insurance which alters or attempts to alter the burden on an insurer as provided
> in Subsection B of this Section shall be null and void and of no effect.

LSA-R.S. 22:658.2.  On its face, the lead-in language to State Farm's water damage exclusion

does not address the applicable burden of proof.[19]  Thus, the provision of Plaintiffs' homeowners

policy at issue here does *not* attempt "to alter the burden on an insurer."  Rather, it simply

provides that coverage is not provided for any loss which would not have occurred in the absence

of flood, surface water, waves, etc., whether driven by wind or not.  At the same time, on its face,

section 22:658.2 addresses neither the validity of anti-concurrent cause language nor the

---

[19] At the appropriate time, State Farm will brief the issue of burden of proof separately.  However, it is worth noting that much of the damage at issue in this case is damage to the contents of the house, which Plaintiffs contend were damaged by rain water coming through the sky lights.  As to Plaintiffs' personal property, coverage is on a named peril basis (Pl. Ex. A at 7 [ECF 6901-3 p.17]), so that Plaintiffs have the burden of proving damage caused by one of the perils specifically enumerated in the policy, in this case, wind.  *See Ferguson v. State Farm Ins. Co.*, No. 06-3936, 2007 WL 1378507, at *2 (E.D. La. May 9, 2007) ("'In an action by an insured on an insurance contract, the burden of proof is on the insured to establish every fact essential to his cause of action and also to establish that his claim is within [the] policy coverage.'" (quoting *Collins v. New Orleans Pub. Serv., Inc.*, 234 So. 2d 270, 272 (La. App. 4th Cir. 1970))).  Section 22:658.2 applies only to immovable property.  *See* LSA-R.S. 22:658.2(B).

applicability of the efficient proximate cause doctrine. It does not say what may be excluded under a policy of insurance, only that the insurer has the burden of establishing an exclusion.[20] Section 22:658.2 simply has no relevance to the issue before the Court on this motion.

### C.    Wind Is Not the Efficient Proximate Cause of Flooding

At this stage of the litigation, it is not clear what Plaintiffs allege caused the losses for which they seek to recover in this litigation. However, in their complaint, they allege that "[t]he second efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were *acts of negligence*." (Supplemental and Amending Complaint, No. 07-2499, ECF No. 1, ¶ IV.b.) In addition, in their Statement of Facts, Plaintiffs state that "the Dirosas' home was located in the Lakeview area of New Orleans, so flood waters from a levee breach entered their home." (Pl. Statement of Uncontested Facts [ECF 6901-4] ¶ 6.) To the extent that Plaintiffs concede that their losses were caused by flooding resulting for levee failures (or to the extent that the evidence at trial shows this to be the case), wind cannot be considered an efficient proximate cause of

---

[20] The statute was not enacted until February 23, 2006. Therefore, it was not even in effect on August 29, 2005, when Plaintiffs sustained their loss and it certainly was not in effect when their homeowners policy was issued. To the extent that section 22:658.2 expands the conduct for which penalties may be imposed, it cannot be given retroactive effect. To do so would violate Louisiana statutory law, constitutional prohibitions against *ex post facto* laws, and State Farm's constitutional right to due process. *See St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So. 2d 809, 816-17 (La. 1992) (holding that substantive changes in the law cannot be applied retroactively without an express statement of retroactive intent in the legislative enactment); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994) (observing that retroactive application of legislation may impair due process right to fair notice); *Arledge v. Holnam, Inc.*, 957 F. Supp. 822, 828 (M.D. La. 1996) (explaining that laws passed after an act, which change the consequences of the act, violate the prohibition against *ex post facto* laws). In addition, construing section 22:658.2 so as to invalidate pre-existing contract terms would also violate State Farm's due process rights and constitute an unconstitutional taking of a vested property interest. *See E. Enters. v. Apfel*, 524 U.S. 498, 522 (1998); *Estate of Williams v. La. Office of Risk Mgmt.*, 93-795 (La. App. 3d Cir. 3/2/94), 634 So. 2d 1260, 1264 (statutes may not be applied retroactively if it would impair contractual obligations or disturb vested rights).

Plaintiffs' losses.

Courts applying Louisiana law have repeatedly upheld flood exclusions in hurricane cases. *See Morehead v. Allstate Ins. Co.*, 406 F.2d 122, 122 (5th Cir. 1969) (*per curiam*) (affirming dismissal of plaintiff's Hurricane Betsy claim based on water damage exclusion where the evidence showed that "the loss was occasioned by the house having floated from its piers and later having settled on the ground"); *Ebert v. Pac. Nat'l Fire Ins. Co.*, 40 So. 2d 40, 41-42 (La. Ct. App. 1949) (under policy that excluded loss "caused directly or indirectly by . . . storm, tidal wave, high water or overflow, whether driven by wind or not," the only pertinent question was "whether plaintiff's house was blown or floated off of its foundation"); *S. Hotels Ltd. P'ship. v. Lloyd's Underwriters at London Cos.*, No. 95-2739, 1997 WL 325972, at *4 (E.D. La. June 10, 1997) (plaintiff could not recover for replacement of furniture damaged during Hurricane Andrew where the evidence showed that the loss was caused by flood, not wind-driven rain); *Milton v. Main Mutual Ins. Co. of Ill.*, 261 So. 2d 723, 726 (La. App. 4th Cir. 1972) (no coverage for vehicle damaged by rising water during Hurricane Betsy). The mere fact, therefore, that flooding follows a hurricane does not make wind the efficient proximate cause of a plaintiff's loss. Otherwise, the courts would have reached a different result in the cases above.

This Court previously determined that losses attributable to levee breaches did not "present a combination of forces." *Katrina Canal Breaches I*, 466 F. Supp. 2d at 762. Rather, as this Court stated, "the 'cause' conflates to the flood; it is not wind damage versus water damage." *Id.* The Fifth Circuit agreed. *See Katrina Canal Breaches II*, 2007 WL 2200004, at *26. The Fifth Circuit's discussion of this issue is instructive. Finding the efficient proximate cause doctrine inapplicable, the court explained:

> [T]o the extent that the plaintiffs do attempt to recharacterize the cause of their losses by focusing on negligence as the cause rather than water damage, their

23

argument fails. "An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss." . . . [I]n *Kish v. Insurance Company of North America*[, 883 P.2d 308 (Wash. 1994)] where a policy covered loss caused by rain but excluded loss caused by flood, the court held that the insured could not avoid the operation of the flood exclusion by merely recharacterizing the flood as rain. 883 P.2d at 311-13. The court held that there was one cause of the plaintiffs' loss—rain-induced flood—which was excluded, and concluded that the efficient-proximate-cause rule was inapplicable. *Id.* We similarly reject any attempt on the plaintiffs' part to avoid the exclusion of the flood exclusion by recharacterizing the flood as negligence; the sole cause of the losses for which they seek coverage in this litigation, flood, was excluded from coverage regardless of what factors contributed to its development.

2007 WL 2200004, at *27. The Fifth Circuit reached this conclusion even though it also noted

that the plaintiffs' losses were, in a general sense, caused by Hurricane Katrina. *See id.* at *19.

Plaintiffs further allege that the "third efficient proximate cause of the losses resulting

from water entering the City of New Orleans and surrounding parishes on August 29, 2005 was

"'storm surge' . . . " (Supplement and Amending Complaint, No. 07-2499, ECF No. 1, ¶ IV.c.)

However, the Fifth Circuit has held that storm surge flooding is unambiguously encompassed

within a water damage exclusion that defines water damage to include flood. As the court stated:

"Courts have interpreted water-damage exclusions . . . to encompass the peril of wind-driven

inundation by water, or storm surge, for ages." *Leonard*, 2007 WL 2446794, at *12. "The

phrase 'storm surge' is little more than a synonym for a 'tidal wave' or wind-driven flood, both

of which are excluded perils." *Id.* at *13; *see also Bilbe*, 2007 WL 2042437, at *4.[21] The Fifth

Circuit in *Leonard* further observed that its recent decision in *Katrina Canal Breaches II*

supports the conclusion that the term "flood" is unambiguous. *See Leonard*, 2007 WL 2446794,

---

[21] Likewise, though the *Tuepker* court erroneously found State Farm's lead-in language ambiguous, the court correctly held that "[t]he exclusion found in the policy for water damage is a valid and enforceable policy provision. Indeed, similar policy terms have been enforced with respect to damage caused by high water associated with hurricanes in many reported decisions." *Tuepker*, 2006 WL 1442489, at *3.

at *12.

Accordingly, where, as in the instant case, there is no coverage for flood, even if such flood would not have occurred without Hurricane Katrina, Plaintiffs' claims are excluded by the explicit terms of the policy.

## CONCLUSION

For all the foregoing reasons, State Farm respectfully submits that Plaintiffs' motion for partial summary judgment should be denied.  In the alternative, because substantial discovery remains to be done in this case, including depositions of Plaintiffs, disclosure of expert witnesses on causation and damages issues, and expert depositions, the Court should continue Plaintiffs' motion under Federal Rule of Civil Procedure 56(f) to allow further discovery.

Respectfully submitted,

/s/  David A. Strauss
DAVID A. STRAUSS, #24665
LINDSAY A. LARSON, III, #8053
CHRISTIAN A. GARBETT, #26293
ADAM P. MASSEY, #29330
SARAH R. SHANNAHAN, #30957
KING, LEBLANC AND BLAND, P.L.L.C.
201 St. Charles Avenue, Suite 4500
New Orleans, Louisiana 70170
Telephone: (504) 582-3800
Facsimile: (504) 582-1233
Attorneys for State Farm Fire and
Casualty Company
dstrauss@klb-law.com
llarson@klb-law.com
cgarbett@klb-law.com
amassey@klb-law.com
sshannahan@klb-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 11t h day of September 2007, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of electronic filing to all parties in the litigation.

/s/  David A. Strauss

S:\2900\199\PLEADINGS\DEFENDANT\SF OPP TO MT FOR PARTIAL SUMMARY JUDGMENT.DOC

26