UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION NO.: 05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| PERTAINS TO: INSURANCE, *Xavier Univ. of La.*, No. 06-0516 | * * * * | MAGISTRATE JUDGE WILKINSON |

**DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING "COLLATERAL SOURCE"**

**PRELIMINARY STATEMENT**

Plaintiff Xavier University of Louisiana ("Xavier") filed this motion prior to the Fifth Circuit's decision on the water damage exclusion in this case. Xavier's motion was based on an assumption that the property insurance policy issued by Defendant Travelers Property Casualty Company of America ("Travelers") would provide coverage for the flood damage to Xavier's campus if it were proven that the flooding was caused by human acts or omissions. Xavier sought a ruling that it was entitled to recover from Travelers for the exact same damage that was paid for by its flood insurer, American Bankers Insurance Company. In other words, Xavier claimed that it was entitled to recover for the flood damage twice, and that no credit or offset would be applied in this case for amounts recovered by Xavier under its flood insurance policy.

This motion is moot based on the Fifth Circuit's decision that the flood damage to Xavier's property was unambiguously excluded by the water damage exclusion in the Travelers Policy. As a result of the Fifth Circuit's decision, Travelers will be required to pay only for the damage caused by wind to Xavier's buildings – there should be no overlap in coverage between the Travelers Policy (which covers loss caused by wind and excludes loss caused by flood) and Xavier's flood insurance policy (which covers only loss caused by flood). As long as Xavier does not seek to recover under the Travelers Policy for damage that has already been paid for by the flood policy, and does not seek to recover more than its actual loss, there will be no need to apply any "offset" or "credit" for amounts paid for under the flood policy.

To the extent that Xavier's motion retains any vitality after the Fifth Circuit's decision, the arguments made by Xavier should be rejected. Xavier's contention that it should be allowed to recover twice for the same damage defies common sense and is contrary to the fundamental principle of insurance law that property insurance policies are contracts of indemnity. In Hurricane Katrina and Rita litigation, Louisiana federal judges have repeatedly held that an insured cannot recover twice for the same damage under two insurance policies. Xavier's contention that the "collateral source" rule allows a double recovery is wrong, as Louisiana federal and state courts have held in Hurricane Katrina and Rita cases. The collateral source rule is a principle of tort law that is wholly inapplicable to this case. Plaintiff has failed to find any case in which the collateral source rule has ever been applied to allow an insured to recover twice for the same loss under property insurance policies.

## ARGUMENT

### I.     THIS MOTION IS MOOT AS A RESULT OF THE FIFTH CIRCUIT DECISION

This motion was premised on this Court's November 27, 2006 ruling that Travelers might be required to pay for damage to Xavier's property caused by flood if the levee breaches were caused by human acts or omissions rather than "natural" forces. (See Xavier Memo., Rec. Doc. 5858-2, at 6, 8.) Xavier seeks a ruling that "payments to Xavier under the NFIP do **not** entitle Travelers to reduce or offset the amounts owed under the Policy." (Id., at 25.)

The entire premise of Xavier's motion has now been obviated by the Fifth Circuit's ruling that "[r]egardless of what caused the failure of the flood-control structures that were put in place to prevent such a catastrophe, their failure resulted in a widespread flood that damaged the plaintiffs' property," an event that "was excluded from coverage under the plaintiffs' insurance policies . . . ." In re Katrina Canal Breaches Litig., __ F.3d __, 2007 WL 2200004, at *1 (5th Cir. Aug. 2, 2007). Given that Travelers will not be required to pay for flood damage, Xavier's flood policy and the Travelers Policy will not be providing duplicative or overlapping coverage. Instead, the flood policy will cover the damage caused by flood and the Travelers Policy will cover the damage caused by wind. There will be no need to apply a reduction or "offset" for amounts paid under the flood policy unless: (1) Xavier tries to re-characterize some of the flood damage as wind damage in an attempt to recover a second time for the same damage that was previously paid for under the flood policy; or (2) Xavier tries to recover more than the total value of its loss, collectively, under both the Travelers Policy and the flood policy. Xavier has not indicated that it intends to make either of these types of claims, which have been soundly rejected by other judges of this Court.

## II. LOUISIANA FEDERAL JUDGES HAVE REPEATEDLY HELD IN HURRICANE KATRINA AND RITA CASES THAT AN INSURED IS NOT ENTITLED TO RECOVER FOR THE SAME DAMAGE UNDER TWO INSURANCE POLICIES, AND IS NOT ENTITLED TO RECOVER MORE THAN ITS ACTUAL LOSS

In view of the Fifth Circuit's decision in this case, the only way that the coverage of the Travelers Policy could potentially overlap with the coverage provided by Xavier's flood insurance policy is if Xavier tries to claim that wind caused damage for which it has already recovered under its flood policy, or tries to recover under both policies, in the aggregate, more than the total value of its loss. While Xavier's motion does not indicate that it intends to seek such a recovery, it cannot do so under well-established principles of insurance law, which have been repeatedly applied Louisiana federal judges in Hurricane Katrina and Rita cases.

There is a "universally recognized rule to the effect [that] a policy of insurance on property is predominately a contract of indemnity . . . ." Wright v. Assurance Co. of Am., 728 So. 2d 974, 975 (La. Ct. App. 2d Cir. 1999). As explained by the Louisiana Supreme Court almost two centuries ago, "the assured may insure again and again the same property, against the same risks, if he will pay the premium; but he can recover but one indemnity." Millaudon v. Western Marine & Fire Ins. Co., 9 La. 27, 32 (1836). See also Cole v. Celotex Corp., 599 So. 2d 1058, 1080 (La. 1992) ("'As a general rule the claimant may recover under all available coverages provided that there is no double recovery.'") (quoting 15A G. Couch, Couch on Insurance § 56:34 (2d ed. 1983)); Weiss v. Allstate Ins. Co., 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007) (Vance, J.) (noting the "well-established propositions that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than her loss"); Ferguson v. State Farm Ins. Co., 2007 WL 1378507, at *3 (E.D. La. May 9, 2007) (Berrigan, C.J.) (recognizing "the principle that the fundamental purpose of property insurance is indemnity, not profit"). If Xavier were permitted to recover for the same damage under both the

221424-1                                4

Travelers Policy and the flood insurance policy, that would be wholly inconsistent with the principle of indemnity.

In cases arising from Hurricanes Katrina and Rita, courts have repeatedly held that an insurer cannot recover for the same damage under both a homeowners policy and a flood policy. In Esposito v. Allstate Ins. Co., 2007 WL 1125761 (E.D. La. Apr. 16, 2007), for example, the plaintiff had recovered under his flood insurance policy more than $185,000 for structural damage caused by flood. He then contended that wind caused a total loss of his home and sought the entire policy limits under his homeowners policy. Id. at *1. Judge Zainey held that the plaintiff could recover under his homeowners policy only for previously uncompensated damage:

> Esposito is entitled to recover in this lawsuit any *previously uncompensated* losses that are covered by his homeowner's policy *and which when combined with his flood proceeds do not exceed the value of his property*. Esposito is not entitled to obtain a windfall double recovery by now recharacterizing as wind damage those losses for which he has already been compensated by previously attributing them to flood waters. The NFIP program did not *erroneously* make payments to Plaintiff for flood losses to his home. Plaintiff sought those payments and he obtained them by convincing FEMA that his losses were caused by flood and covered by his flood policy. Plaintiff has now been compensated for those losses based on the statements and information that he provided to FEMA. For purposes of the instant suit this Court will not allow Plaintiff to cavalierly repudiate those prior statements while nevertheless retaining the funds that he received based on those same statements.

Id. at *2 (emphasis in original). In Wellmeyer v. Allstate Ins. Co., 2007 WL 1235042 (E.D. La. Apr. 26, 2007), Judge Feldman agreed with Judge Zainey's ruling in Esposito, holding that "an insured cannot recover twice for a single loss," but that if the plaintiffs could "marshal facts that a peril covered by the homeowner's policy (wind) caused uncompensated damage, they could be entitled to indemnity." Wellmeyer, at *3 (emphasis added).

Judges Vance, Berrigan and McNamara of the Eastern District and Judge Melancon of the Western District have reached the same conclusion. See Broussard v. State Farm Fire & Cas. Co., 2007 WL 2264535, at *5 (E.D. La. Aug. 2, 2007) (Vance, J.) (concluding that plaintiffs could recover for "previously uncompensated covered damage" as long as "the combined amount of the already compensated wind and flood damages and the uncompensated wind damages does not exceed the total value of their property"); Weiss, at *3 (Vance, J.) (concluding that "Plaintiffs obviously are not entitled to recover $600,000 on a home that was worth $300,000," and that "an insured cannot recover an amount greater than her loss," but that plaintiffs could recover for losses not already paid for under their flood insurance policy); Ferguson, 2007 WL 1378507, at *4-5 (Berrigan, C.J.) (applying same principles); Louque v. State Farm Fire & Cas. Co., 2007 WL 1343636, at *2 (E.D. La. May 4, 2007) (McNamara, J.) (following Wellmeyer and Weiss, holding that "while an insured cannot recover twice for a single loss, here there are genuine issues of material fact regarding whether segregable wind damage caused Plaintiffs uncompensated damage"); Boudoin v. State Farm Ins. Cos., 2007 WL 2066853, at *4 (W.D. La. July 13, 2007) (Melancon, J.) (following Esposito and Weiss, holding that plaintiffs could not recover "twice for the same loss" under both homeowners and flood policies, but could recover for previously uncompensated damage caused by wind).

A Mississippi federal court has reached the same result in a Hurricane Katrina case, concluding that "Plaintiff's actual loss is the maximum recovery he may receive from all applicable policies of insurance for both his dwelling and personal property." Tejedor v. State Farm Fire & Cas. Co., 2006 WL 3257526, at *2 (S.D. Miss. Nov. 6, 2006). The court reasoned that: "Insurance contracts insure only against covered losses, and it is a basic proposition that

'[i]nsurance law is based on the principle of indemnification and is aimed at reimbursement. The benefit derived from insurance should be no greater in value than the loss.'" Id.

Courts in other jurisdictions have reached similar results. In State Farm Fire & Cas. Co. v. Griffin, 888 S.W.2d 150 (Tex. App. 1994), for example, the insureds sustained a flood loss and, nine months later, before any of the flood damage had been repaired, they sustained a fire loss. Id. at 152, 157. The court held that State Farm properly adjusted the loss when it determined the total actual cash value of the damage to the home after the fire, and then subtracted from total the amount that had been paid for the flood loss (on an actual cash value basis). Id. at 157. The court reasoned that "[a]n insurance contract is by definition a contract of indemnity, under which an insurer cannot be required to pay its insured more than the amount of his actual loss," and that "for State Farm to have offered the Griffins more . . . would have allowed the Griffins to recover twice for a loss they incurred only once, and would have allowed the Griffins to recover under the homeowners' policy for a flood loss, which was a type of loss expressly excluded from coverage under their homeowners' policy." Id. at 156-57.[1]

If Xavier seeks to recover for the same damage under the Travelers Policy and its flood insurance policy, this Court should follow this long line of precedent and hold that Xavier can only recover for previously uncompensated, segregable damage that was caused by wind. Xavier is not entitled to recover under the Travelers Policy for damage that was paid for under its flood insurance policy, and is not entitled to recover, in the aggregate under both policies, more than its actual loss.

---

[1] Xavier attempts to distinguish Griffin on the grounds that "the policy in *Griffin* specifically excluded flood-related damage from coverage," while "[h]ere, the Policy, as found by this Court, provided coverage for levee breach-related damage." (Xavier Memo., at 22 (bold face in original).) In view of the Fifth Circuit's decision that the Travelers policy unambiguously excluded the damage caused by levee-breach flooding, that is clearly not a valid basis for distinguishing Griffin.

### III. IF THERE WERE OVERLAPPING COVERAGE, THE "OTHER INSURANCE" CLAUSE WOULD BAR XAVIER FROM OBTAINING A DOUBLE RECOVERY

Under the Fifth Circuit's decision, there is no overlapping coverage between the Travelers Policy and Xavier's flood insurance policy. The Travelers Policy covers the damage caused by wind and excludes the damage caused by flood, while the flood policy covers only the damage caused by flood.[2] Xavier is wrong, however, when it suggests that, if there were overlapping coverage, "the Policy contains **no** language suggesting Xavier's recovery would in any way be limited or reduced if it received funds from the NFIP." (Xavier Memo., at 10.) The Travelers Policy contains an "Other Insurance" clause that expressly governs a situation in which multiple insurance policies provide coverage for the same loss:

**Other Insurance**

a. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

b. <u>If there is other insurance covering the same loss or damage, other than that described in a. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not</u>. But we will not pay more than the applicable Limit of Insurance.

(Travelers Policy, Deluxe Property Coverage Form, at 18 (certified copy attached as <u>Exhibit A</u> hereto) (emphasis added).)

Precisely how this clause applies in this case cannot be determined without copies of Xavier's flood insurance policy, which Magistrate Judge Wilkinson has ordered to be produced,

---

[2] Travelers does not have a copy of Xavier's flood insurance policy because Xavier still has not produced it, despite being ordered to do so by Magistrate Judge Wilkinson. Xavier's motion represents that its flood insurance policy is a National Flood Insurance Program ("NFIP"). All policies issued under the NFIP are issued on the Standard Flood Insurance Policy ("SFIP") forms, which are federal regulations. The SFIP for commercial property covers only "direct physical loss by or from flood . . . ." 44 C.F.R. Part 61 App. A(2).

but Xavier has not yet produced. Presumably the flood insurance policy does not contain "the same plan, terms, conditions, and provisions" as the Travelers Policy. If that is the case, then part "b" of the "Other Insurance" clause would be the applicable provision. Under part "b," if somehow both the Travelers Policy and the flood insurance policy covered the "same loss or damage" (which they do not), the Travelers Policy "will pay only for the amount of covered loss or damage in excess of the amount due" from the flood insurers. (Id.)

For many years, Louisiana state and federal courts have repeatedly applied and enforced "other insurance" clauses in insurance policies. See, e.g., Graves v. Traders & Gen. Ins. Co., 214 So. 2d 116, 117-18 (La. 1968) (apportioning loss between two auto insurance policies based on "other insurance" clauses, resolving conflict between "other insurance" clauses in the respective policies); Goldman v. Western Geophysical Co., 904 So. 2d 796, 798-800 (La. Ct. App. 5th Cir. 2005) (applying "other insurance" clauses); Citigo Petroleum Corp. v. Yeargin, Inc., 690 So. 2d 154, 166-70 (La. Ct. App. 3d Cir. 1997) (applying "other insurance" clauses); Penton v. Hotho, 601 So. 2d 762, 768-69 (La. Ct. App. 1st Cir. 1992) (resolving conflict between "other insurance" clauses by prorating the loss between the two insurers); American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 266-67 (5th Cir. 2003) (applying "other insurance" clauses).

There does not appear to be any authority in Louisiana or any other jurisdiction holding that the "collateral source" rule, even if it were applicable, could somehow override an "other insurance" clause. Xavier cites no such authority. The clear and unambiguous language of the "other insurance" clause in the Travelers Policy, by itself, demonstrates that, if somehow there were overlapping coverage between the Travelers Policy and the flood insurance policy, Xavier would not be entitled to a double recovery.

## IV. THE COLLATERAL SOURCE RULE IS WHOLLY INAPPLICABLE TO THIS CASE

Xavier seeks an unprecedented ruling that the "collateral source" rule allows it to recover twice for the same damage under the Travelers Policy and the flood policy. Xavier does not cite a single case in which the collateral source rule has ever been applied to allow an insured to recover multiple times for property damage where there were multiple insurance policies issued on the same property. That is because there are no such cases in Louisiana or any other jurisdiction. Xavier is grasping at straws by seeking to apply the collateral source rule in a context in which it is clearly inapplicable and has never been applied.

### A. The Collateral Source Rule Is A Principle Of Tort Law That Has Rarely Been Applied Outside The Tort Context

As the Louisiana Supreme Court has explained, the "collateral source rule," in general, is that "a <u>tortfeasor's</u> liability to an injured plaintiff should be the same, regardless of whether or not that plaintiff had the foresight to obtain insurance." <u>Louisiana Dep't of Transp. & Dev. v. Kansas City Southern Ry. Co.</u>, 846 So. 2d 734, 740 (La. 2003) (emphasis added). Xavier seeks to twist this principle beyond recognition by arguing that an <u>insurer</u> should be required to pay the same amount regardless of whether an insured receives funds from other insurance companies. Xavier makes much of the fact that, in <u>Kansas City Southern Ry.</u>, the court extended the "collateral source" rule slightly beyond conventional torts and applied it to an environmental enforcement action. But the court reached that result because "[l]ike conventional tort cases, environmental law statutory remedies involve claims to recover damages for harm <u>caused by a defendant's acts</u>." <u>Id.</u> at 741 (emphasis added). The court stressed that "our holding today is commanded by the paramount public interest in ensuring that those persons or entities responsible for harming our environment and the welfare of our citizens be held fully responsible

221424-1

10

for the consequences of their actions, and deterred from committing future violations" of Louisiana's Environmental Quality Act. Id. at 740. The court further stated that "[w]e emphasize that our holding today is a narrow one addressing the applicability of the collateral source rule in the circumstances of this case." Id. at 745. Kansas City Southern Ry. involves circumstances far afield from what is at issue in this case and does not support Xavier's position that it can recover twice for the same damage to the same property. This is a breach of contract case under an insurance policy. Travelers cannot be compared to a tortfeasor or a party that causes environmental contamination. Travelers did not cause the damage for which Xavier seeks to recover. The damage was caused by Hurricane Katrina (or, as Xavier claims, by the U.S. Army Corps of Engineers).

Xavier cites no Louisiana authority applying the collateral source rule in any type of breach of contract case. The Louisiana courts have recognized that generally "[r]ules applicable to recovery in tort do not apply to an action on a contract of insurance." Campbell v. Markel Am. Ins. Co., 822 So. 2d 617, 622-623 (La. Ct. App. 1st Cir. 2001). The Louisiana Supreme Court has, in a case subsequent to Kansas City Southern Ry., reaffirmed that the collateral source rule is a principle of tort law: "The major policy reason for applying the collateral source rule to damages has been, and continues to be, tort deterrence. The underlying concept is that tort damages can help to deter unreasonably dangerous conduct. Tort deterrence has been an inherent, inseparable, aspect of the collateral source rule since its inception over one hundred years ago." Bozeman v. State, 879 So. 2d 692, 700 (La. 2004).

### B. Courts Have Repeatedly Refused To Apply The Collateral Source Rule In Breach Of Contract Cases

Numerous courts in other jurisdictions have held that the collateral source rule is generally inapplicable to breach of contract cases. In <u>Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.</u>, 579 N.W.2d 823 (Iowa 1998), the Iowa Supreme Court studied the caselaw nationwide on this issue and concluded that "[w]ith little exception, the majority of these courts has concluded that the [collateral source] rule should not apply outside the realm of tort actions." <u>Id.</u> at 830. The court cited caselaw from Alabama, Arizona, California, Florida, Georgia, Illinois and Wyoming. <u>See id.</u> (citing <u>Centon Elecs., Inc. v. Bonar</u>, 614 So. 2d 999, 1004 (Ala. 1993); <u>Grover v. Ratliff</u>, 586 P.2d 213, 215 (Ariz. Ct. App. 1978); <u>Patent Scaffolding Co. v. William Simpson Constr. Co.</u>, 64 Cal. Rptr. 187, 191 (Cal. Ct. App. 1967); <u>City of Miami Beach v. Carner</u>, 579 So. 2d 248, 253-54 (Fla. Dist. Ct. App. 1991); <u>Amalgamated Transit Union Local 1324 v. Roberts</u>, 434 S.E.2d 450, 452 (Ga. 1993); <u>American Fidelity Fire Ins. Co. v. General Ry. Signal Co.</u>, 540 N.E.2d 557, 568 (Ill. App. Ct. 1989); <u>Corl v. Huron Castings, Inc.</u>, 544 N.W.2d 278, 286 (Mich. 1996); <u>Hurd v. Nelson</u>, 714 P.2d 767, 771 (Wyo. 1986).

The Iowa Supreme Court concluded that this majority rule was the correct result because "damages in the breach of contract setting are intended to be compensatory only, not punitive in nature," and "[a]pplication of the common-law collateral source rule in contract actions would contravene this principle by awarding the nonbreaching party more damages than necessary to compensate it for the breach." <u>Mercy Clinics, Inc.</u>, 579 N.W.2d at 830. The court also reasoned that "[g]enerally, payments to which the collateral source rule applies to prevent the reduction of a plaintiff's damage award are payments made by a third party to compensate the plaintiff for injuries caused by the defendant," and a payment issued under a plaintiff's contract with a third party is not made to compensate the plaintiff for injuries caused by the defendant. <u>Id.</u> at 829. A

California court of appeal has similarly concluded that "the overwhelming weight of authority in California and other jurisdictions has rejected the extension of the collateral source rule to breach of contract." Plut v. Fireman's Fund Ins. Co., 85 Cal. App. 4th 98, 107 (Cal. Ct. App. 2000).

Xavier argues that some courts have applied the collateral source rule in breach of contract cases, relying principally on Hall v. Miller, 465 A.2d 222 (Vt. 1983) and Roundhouse v. Owens-Illinois, Inc., 604 F.2d 990 (6th Cir. 1979), both of which are readily distinguishable. These are cases in which the defendants sold the plaintiffs diseased cattle (Hall) and trout (Roundhouse). The plaintiffs received partial compensation from state and/or federal government programs designed to encourage destruction of the plaintiffs' cattle/trout in order to prevent the disease from spreading. Hall, 465 A.2d at 226; Roundhouse, 604 F.2d at 994-95. Hall and Roundhouse involve circumstances that are far different from this case. The court in Hall noted that its decision was on a question of first impression and was based on "the particular circumstances of this case," and the court in Roundhouse similarly noted that the issue was "novel." Hall, 465 A.2d at 226; Roundhouse, 604 F.2d at 994. It is also questionable whether Roundhouse remains good law, given that the federal court of appeals was applying Michigan law, and a subsequent decision by the Michigan Supreme Court has refused to apply the collateral source rule in breach of contract cases. See Corl, 544 N.W.2d at 281.

In both Hall and Roundhouse, the defendants were found to be "wrongdoers" that caused the plaintiffs to suffer "injuries," and the payments made by the government programs were designed to compensate the plaintiffs for the same injuries that were caused by the defendants. The court in Roundhouse concluded that "the rationale of the collateral source rule is fully applicable" because "a wrongdoer cannot benefit from payments to the victim by a third party." Roundhouse, 604 F.2d at 995 (emphasis added). Here, in contrast, the damage inflicted on

221424-1                                    13

Xavier's property was caused by Hurricane Katrina (or, allegedly, by negligent construction of levees), not by Travelers. The payments made by the flood insurers were not intended to compensate Xavier for injuries caused by Travelers. The collateral source rule is wholly inapplicable.[3]

Xavier further contends that because it paid a premium for the Travelers Policy and a separate premium for its flood insurance policy, it would not receive a "windfall" if it is entitled to recover for the same damage under both policies. Xavier claims that Travelers would receive a "windfall" if it does not have to pay for the damage that was paid for by the flood insurer. (Xavier Memo., at 19-20, 24.) What Xavier fails to recognize, however, is that it did not pay Travelers a premium for the risk of flood, just as it did not pay its flood insurer any premium for the risk of wind. See Ferguson, 2007 WL 1378507, at *4 (noting that "[w]hile it is true that plaintiffs paid for two separate policies, one homeowner and one flood, that does not equate to double coverage in the event of a given loss" because the flood policy "covers a loss not covered by the homeowner policy"); Cacamo v. Liberty Mut. Fire Ins. Co., 885 So. 2d 1248, 1255 (La. Ct. App. 4th Cir. 2004) (recognizing that an insurance premium is "consideration paid an insurer for undertaking to indemnify the insured against a specific peril" or perils, or all perils other than those which are excluded, and that "[t]he amount of the premium varies in proportion to the risk assumed") (quoting 1 Couch on Insurance § 69:1). In any event, it has long been established that even where an insurer pays two premiums for the same risk, it its entitled to be indemnified only once. Millaudon, 9 La. at 32.[4]

---

[3] To the extent that Xavier argues that Travelers is a "wrongdoer" because Plaintiff has alleged bad faith claims, Louisiana law provides specific penalties for specific bad faith conduct by insurers. See La. Rev. Stat. §§ 22:658 and 22:1220. The collateral source rule cannot be used to modify and duplicate those statutory penalties.

[4] Xavier also seems to suggest that payments made under the National Flood Insurance Program (NFIP) should be treated as a government grant rather than a loss payment under an insurance policy, and therefore that Travelers should have to pay for the same damage for which Xavier received NFIP payments. (Xavier Memo., at 7-8.) There is no basis for this contention, which is wholly contrary to the purpose of the NFIP. The NFIP "enables consumers

## C. In Hurricane Katrina and Rita Cases, Both Federal And State Courts Have Held That The Collateral Source Rule Does Not Apply

The "collateral source" argument made by Xavier has been raised and rejected in other Hurricane Katrina and Rita cases. In Boudoin, the court concluded that there was no need to even address the "collateral source" argument because it was clear that the insured could not "recover twice for the same loss." Boudoin, 2007 WL 2066853, at *4. In Sher v. Lafayette Ins. Co., No. 2006-9276 Div. G-11 (La. Civ. Dist. Ct., Parish of Orleans Mar. 13, 2007) (Giarrusso, J.) (transcript excerpt attached as Exhibit B hereto), a Louisiana state district court judge rejected the "collateral source" argument raised by Xavier's counsel (who was representing the plaintiff in that case), ruling as follows:

> I will tell you that <u>I disagree with Mr. Garner about the flood policy being a collateral source. I just don't think it is.</u> But, that's a mathematical calculation, but I don't think we need to tell the jury about that.
> <u>When the award is made, to me, you take out the -- You're going to take out whatever he received on his flood policy,</u> but the jury doesn't need to know about that one way or the other.

(Exhibit B, at 12 (emphasis added).)

## D. The Cases Cited By Xavier Are Clearly Inapposite

The remaining cases cited by Xavier are clearly inapposite and do not support its position. In Phelps v. State Farm Mut. Auto. Ins. Co., 917 P.2d 944 (Nev. 1996), the court held that an uninsured motorist could reduce the amount owed under the policy by the amounts received by the insured from his employer's uninsured motorist insurer and from worker's compensation coverage. Id. at 947-48. The court concluded that amounts received from private

---

to obtain flood insurance which virtually would be impossible to purchase in the marketplace." Gowland v. Aetna Cas. & Sur. Co., 143 F.3d 951, 955 (5th Cir. 1998). In creating the NFIP, Congress found that "many factors have made it uneconomic for the private insurance industry alone to make flood insurance available to those in need of such protection on reasonable terms and conditions." 42 U.S.C. § 4001(b). The NFIP was created because "[h]eavy losses over the years from hurricanes in the coastal areas and from storms in inland areas of the nation dramatize[d] the lack of insurance protection against flood damage." United States v. Parish of St. Bernard, 756 F.2d 1116, 1123 n.7 (5th Cir. 1985) (quoting H. Rep. No. 1585, 90th Cong., 2d Sess.).

221424-1                                15

disability insurance could not be offset because the policy provided that "[a]ny amount payable under this [uninsured motorist] coverage shall be reduced by any amount paid or payable to the *insured* under any worker's compensation, disability benefits, or similar law." Id. at 949 (underscore added). The court reasoned that "private disability insurance is not a 'law' in the same way that worker's compensation or other statutorily created disability benefits are." Id. Here, in contrast, the Travelers Policy provides that, to the extent there is any overlap in coverage between the Travelers Policy and other insurance, the "other insurance" clause will be applied. See Part III, supra. If Xavier seeks to re-characterize damage that was paid for under the flood policy as wind damage, it is precluded from doing that as a matter of law. See Part II, supra.

Xavier also relies on Protection Sprinkler Co. v. Lou Charno Studio, Inc., 888 S.W.2d 422 (Mo. Ct. App. 1994), in which the court held that, where the defendant was obligated to indemnify and hold the plaintiff harmless, under the collateral source rule the defendant was not entitled to an offset for defense costs paid by a liability insurer. Id. at 424. The court did not address the question of whether the plaintiff may have been required, under the terms of the liability insurance policy, to remit to the insurer any recovery obtained from the defendant, up to the amount that the insurer had paid. Protection Sprinkler does not support Xavier's contention that it is entitled to recover for the same loss under two separate insurance policies.

Xavier also cites cases from New Hampshire and Minnesota refusing to allow certain types of offsets under uninsured motorist coverage because such offsets would violate applicable statutes. In Merchants Mut. Ins. Group v. Orthopedic Prof. Ass'n, 480 A.2d 840 (N.H. 1984), the court held that "any policy provision which requires an uninsured motorist to suffer a reduction in the coverage paid for, by the amounts of workers' compensation received by the

insured, is an invalid restriction of the statutory scope of coverage." Id. at 844. See also Van Tassel v. Horace Mann Mut. Ins. Co., 207 N.W.2d 348, 351-53 (Minn. 1973) (holding, based on statutes involving uninsured motorist coverage, that such policies could be "stacked" notwithstanding an "other insurance" clause, and that payments made under medical payments coverage could not be deducted from amounts owed under uninsured motorist coverage because that would impermissibly "dilute the statutorily mandated uninsured-motorist coverage"). Here there is no statute that would entitle Xavier to a double recovery. Both Merchants Mutual and Van Tassel have been legislatively overruled so that an insured cannot obtain a double recovery. See Rooney v. Fireman's Fund Ins. Co., 645 A.2d 52, 54 (N.H. 1994)Broton v. Western Nat'l Mut. Ins. Co., 428 N.W.2d 85, 88 (Minn. 1988).

Xavier also cites Bryant v. New Orleans Public Serv. Inc., 406 So. 2d 767 (La. Ct. App. 4th Cir. 1981), where the court held that amounts paid for medical bills by a health insurance policy could not be offset against worker's compensation benefits. Id. at 769. The court reasoned that "[b]y going against his own insurance policy," rather than worker's compensation insurance purchased by his employer, the insured was "diminishing the benefits of that policy which would otherwise be available" and "has suffered a diminution of the patrimony by premium payments and his rates will rise providing a third area of loss." Id. at 768. A concurring judge noted that a statute barred employers from collecting worker's compensation premiums from employees, either directly or indirectly. Id. (Barry, J., concurring). Here, in contrast, it was Xavier, not a third party, that paid for both the Travelers Policy and the flood policy, and the premium paid by Xavier for the Travelers Policy did not include the risk of flood, which was excluded. Bryant does not support Xavier's argument that it can recover twice for the same loss under both the Travelers Policy and the flood insurance policy. Bryant has also in

large part been legislatively overruled. See Principal Mut. Life Ins. Co. v. Progressive United Corp., 674 So. 2d 1073, 1075 (La. Ct. App. 2d Cir. 1996).

The other cases cited by Xavier are similarly inapposite. See DePalma v. Westland Software House, 276 Cal. Rptr. 214, 218 (Cal. Ct. App. 1990) (holding that income tax benefits potentially realized by plaintiff could not be used as an offset in breach of contract case); Harnett v. Riveron, 361 So. 2d 749, 751-52 (Fla. Dist. Ct. App. 1978) (holding that collateral source rule was inapplicable in case alleging fraudulent conduct by officer of insurance company); Masterson v. Boliden-Allis, Inc., 865 P.2d 1031, 1035 (Kan. Ct. App. 1993) (holding that collateral source rule barred employer from applying social security and pension benefits as offset against judgment in favor of employee for breach of employment contract); In re Emergency Beacon Corp., 48 B.R. 341, 350 (Bankr. S.D.N.Y. 1985) (holding that collateral source rule was inapplicable where party sought credit for certain settlement proceeds from another lawsuit); Ins. Co. of N. Am. v. Kayser-Roth Corp., 1999 WL 813661, at *6, 42-43 (R.I. Super. Ct. July 29, 1999) (unpublished) (court held that insurer was not entitled to a "setoff" where, as a sanction for failure to comply with discovery requests, court had barred insurer from introducing evidence of other insurance policies for the environmental liability claim at issue, and settlement agreements with other insurers did not indicate what amount, if any, was paid for the claim at issue), aff'd, 770 A.2d 403, 414 (R.I. 2001) (recognizing that "a setoff may be applied in an appropriate case," but not in the unusual circumstance where the insurer was precluded form introducing evidence of other insurance as a discovery sanction).

In short, no court has ever applied the "collateral source" rule to require two insurers, which provided mutually-exclusive coverage against different perils, to pay for the same

damage. There is no caselaw in any jurisdiction supporting the result Xavier seeks, which would be unprecedented.

## CONCLUSION

For all of the foregoing reasons, Xavier's motion for partial summary judgment regarding "collateral source" should be denied.

Respectfully submitted,

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR., T.A., #19755
RALPH S. HUBBARD III, #7040
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

Stephen E. Goldman (pro hac vice)
Christopher J. Hug (pro hac vice)
Wystan M. Ackerman (pro hac vice)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:    (860) 275-8255
Facsimile:    (860) 275-8299

Attorneys for Travelers Property
Casualty Company of America

## CERTIFICATE OF SERVICE

I hereby certify that, on September 11, 2007, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR.

221424-1                                19