CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA


JOSEPH SHER                              NO.  06-9276

Versus

LAFAYETTE INSURANCE
COMPANY, et al                           DIVISION "G"


J U R Y    T R I A L


    Proceedings heard in the above named and numbered matter on March 13, 2007, before the **HONORABLE ROBIN M. GIARRUSSO**, Judge presiding.


A P P E A R A N C E S:

Representing Joseph Sher:

    JAMES M. GARNER, ESQ.

    DARNELL BLUDWORTH, ESQ.

    LAUREN L. HUDSON, ESQ.

    TIMOTHY B. FRANCIS, ESQ.


Representing Lafayette Insurance Company:

    ROBERT A. McMAHON, JR., ESQ.

    WILLIAM D. O'REGAN, IV, ESQ.


REPORTED BY:

    KAREN K. MAHER
    Official Court Reporter


EXHIBIT B

```
 1              P R O C E E D I N G S
 2    March 13, 2007
 3              MR. GARNER:
 4                   However you want to do it.
 5              THE COURT:
 6                   Usually I have my list and I
 7         decide, but since these were filed
 8         kind of at the last moment, we're not
 9         as organized as we usually are.
10              MR. GARNER:
11                   We filed two, and Rob filed
12         two.  The two we filed -- I'm sorry.
13         Ours are directed -- Essentially
14         they're exclusions, and there's two
15         parts to it.  They didn't plead it.  I
16         think there's several exclusions they
17         want to talk about that have never
18         been pled.
19                   They did plead the water
20         exclusion, and you took care of that.
21         And, they pled the NFIP policy.  They
22         didn't plead the other insurance
23         clause.  They talk about an Allstate
24         renter's policy.  Until we saw it on
25         Friday at 4:30 -- So, following the
26         DIXIE SAVINGS case, the PENDLETON case,
27         where the Fourth Circuit said that if
28         it's not in the answer, you can't put
29         evidence on it, I'm essentially going
30         to move Your Honor to exclude or
31         preclude any evidence regarding any
32         exclusions.
```

```
 1                    For example, there's the
 2          limitation in 1(c)(1) that talks
 3          about they don't cover damage if the
 4          wind is blown into your house if you
 5          don't otherwise have property damage.
 6          I've got other issues with that, but
 7          they don't even plead it.
 8                    What does that really mean?
 9          We don't cover wind blown in your house,
10          you know, if it gets in there and
11          there's no property damage.
12                    Well, how did the water get in?
13          I guess if you left the window open and
14          water blew in, and they say we don't
15          cover you.  But, that didn't happen
16          here, and they didn't plead it.
17                    On Exclusion 2(d)(1) is wear
18          and tear, and (d)(2) rust, corrosion,
19          fungus, decay, deterioration.
20                    Maintenance or lack of
21          maintenance is going to be an issue on
22          bad faith.  There's a letter they wrote
23          saying, "This is bad maintenance, and
24          you didn't upkeep your house."  And,
25          there's four pages in the underwriting
26          file that said, "This is well maintained,
27          pride of ownership, profitable line of
28          business."
29                    To me, they are in bad faith
30          because that's what they told him last
31          July.  They said Fred Vanderbrook, their
32          expert, agreed with them.
```

```
 1          Mr. Vanderbrook says, "I never said
 2     that."  To me, that's a bad faith case
 3     for us.
 4          But, my understanding of the
 5     first part of this case is, is there
 6     damage, and how much.
 7          I would urge the Court, one,
 8     to limit them to their pleadings.
 9     Therefore, they can put on no evidence
10     of wear and tear, rust, corrosion,
11     fungus, decay, deterioration -- And,
12     if I'm going too fast, tell me --
13     hidden or latent defect, or any quality
14     in property that causes it to damage
15     or destroy itself.
16          I would ask you to not let
17     them put on any evidence regarding
18     Limitation (1)(c)(1).  And, just so
19     we're all clear on the record, let
20     me find that and read it to you.  I
21     think that we -- What did I do with
22     that?
23          It says, "The interior of
24     any building or structure or to
25     personal property in the building or
26     structure caused by or resulting from
27     rain, snow, sleet, ice, sand, or dust,
28     whether driven by wind or not, unless
29     the building or structure first
30     sustains damage by a covered cause of
31     loss to its roof or walls through which
32     the rain, snow, sleet, ice, sand, or
```

```
 1        dust enters."
 2                That limitation has never
 3        been pled.
 4                We cite to Your Honor case
 5        law from Massachusetts which says that
 6        you can't call an exclusion a
 7        limitation.  So, wear and tear, rust --
 8        which is (2)(d)(1) -- rust, corrosion,
 9        2(d)(2), and Limitation 1(c)(1) were
10        never pled.
11                The other insurance clause is
12        never pled.  All they say is, "I want a
13        credit for NFIP policy," which I'll
14        admit, that's in there, and I have
15        other arguments on that.
16                The Allstate renter's policy
17        in the file Rob identified to us for
18        the first time at 4:30 on Friday was a
19        renter's policy Mr. Sher had.  We don't
20        know whether we got the entire Allstate
21        file or not.  It's never been in any
22        pleading, not even discovery.  We
23        fought over producing the NFIP policy.
24                So, I just think you can't
25        raise it.  It's way too late.
26                On the NFIP policy, which, I
27        guess, would be a legal issue for Your
28        Honor to decide, I don't think any
29        mention should be made of any insurance
30        during the trial at all, and I want to
31        sit down and try to work out
32        stipulations to the extent you would
```

```
 1        need them on the NFIP policy.
 2                It's a government program, much
 3        like -- I cite to Your Honor in papers
 4        the WHEATLAND IRRIGATION DISTRICT case,
 5        where the Supreme Court of Wyoming found
 6        that the federal government's flood
 7        relief program is a collateral source --
 8             THE COURT:
 9                There aren't any Louisiana
10        cases on that?
11             MR. GARNER:
12                The only -- There are none, so
13        you get to make -- you get to be the
14        first --
15             THE COURT:
16                Oh, boy.
17             MR. GARNER:
18                This is a Louisiana case we
19        cite.  The LOUISIANA DEPARTMENT OF
20        TRANSPORTATION AND DEVELOPMENT case,
21        846 So.2d 734, where the Louisiana
22        Supreme Court on May 20th of 2003 said,
23        you know, "This collateral source thing
24        is always talked about in the tort
25        context, but it doesn't mean it
26        doesn't apply in the contract context."
27        And, there, the federal -- There was a
28        clean-up action, and the federal
29        government paid 90 percent of the costs,
30        and the Supreme Court said that's a
31        collateral source, it's an independent
32        source.  You can't take credit for it --
```

```
 1          THE COURT:
 2              But, I think, as we had
 3      talked about before -- I don't know
 4      that it matters at this point because,
 5      really, it's a mathematical
 6      calculation --
 7          MR. GARNER:
 8              That is correct.
 9          THE COURT:
10              -- whether or not we subtract
11      it or not from the final judgment.
12          MR. GARNER:
13              As long as he can't talk
14      about it or ask Lee about it or his dad
15      about it. You're absolutely correct. I
16      don't even think you get to a renter's
17      policy, nor do I think you get to these
18      other exclusions.
19              I will agree he pled NFIP --
20          THE COURT:
21              Let me hear what he has to say.
22          MR. O'REGAN:
23              Your Honor, with regard to the
24      exclusions, Lafayette did plead all the
25      exclusions in this policy in Paragraph 79
26      as an affirmative defense --
27          THE COURT:
28              But, don't you have to say
29      specifically which ones you're talking
30      about? That's my problem with it.
31          MR. O'REGAN:
32              Your Honor, I don't think we've
```

```
 1    seen law produced by the plaintiff that
 2    says that this language that Lafayette
 3    has used, that the policy is pled as an
 4    affirmative defense as if copied here in
 5    extenso -- You know, if those words are
 6    to have meaning, then the words of the
 7    policy are copied here, in extenso, and
 8    I don't know if it's necessary for
 9    insurance companies to copy and paste
10    every word from its policy into an
11    answer in order for it to be
12    affirmatively pled as a defense.
13           I would suggest to the Court
14    that this is sufficient and that its
15    exceptions and limitations in the policy
16    are affirmatively pled.
17           In the PITRE case and the
18    PENDLETON case and other cases cited by
19    the plaintiff, either the exclusions
20    were not pled at all or they were pled
21    in the body of the answer and not in
22    the affirmative defenses.  And, I
23    believe Lafayette has done that here.
24           And, with regard to the
25    other insurance, as we noted in our
26    memorandum, the other insurance policy
27    we think should be included by virtue
28    of my argument a moment ago.
29           And, if Your Honor decides --
30    And, it sounds like you may have
31    formulated some opinion about --
32       THE COURT:
```

```
 1              Well, mine is just an issue
 2   of math.  I mean, to me, it's like I
 3   don't -- If this is a jury trial, I
 4   don't think the jury should hear about
 5   it, but I don't know that it's the
 6   greatest issue in the world, because I
 7   can decide and either subtract it from
 8   the judgment or don't subtract it from
 9   the judgment, and the Court of Appeal or
10   Supreme Court are ultimately going to
11   decide it, since it's probably a case
12   of first impression.
13              What I'm more concerned about
14   is does the jury get to know he had other
15   insurance.  And, I think there's a whole
16   line of cases that say you don't tell
17   that to the jury no matter what, no
18   matter what the decision is, because
19   they don't do the mathematical
20   calculation.
21              To me, the analogy is a UM case,
22   an uninsured or under insured motorist
23   case.  When we go to the jury against
24   them, there's no question that you tell
25   them, "This is our under insured" -- You
26   give them the full amount that you think
27   they're entitled to, and if there's any
28   mathematical calculations, the Court will
29   do it.  I think that's exactly what we
30   ought to do here.
31        MR. O'REGAN:
32              Your Honor, what's paramount on
```

```
 1         our side is this other insurance clause
 2         be given some effect by the Court in
 3         that it becomes -- the Lafayette policy
 4         becomes an excess policy after whatever
 5         payment is made on the flood insurance
 6         policy and on the renter's insurance
 7         policy on the same loss.
 8              THE COURT:
 9                   I will tell you that I disagree
10         with Mr. Garner about the flood policy
11         being a collateral source.  I just don't
12         think it is.  But, that's a mathematical
13         calculation, but I don't think we need to
14         tell the jury about that.
15                   When the award is made, to me,
16         you take out the -- You're going to take
17         out whatever he received on his flood
18         policy, but the jury doesn't need to know
19         about that one way or the other.  It's
20         the same way we do a UM case.
21                   I don't think you can talk
22         about his flood policy.
23                   The problem with the renter's
24         exclusion is you didn't specifically
25         plead that, but just put that --
26              MR. O'REGAN:
27                   That was copied in extenso.
28              THE COURT:
29                   I know Mr. Garner had something
30         he wanted to say.
31                   Is there something else you
32         wanted to add?
```