## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO.: 05-4182 "K"(2) |
| | * | |
| _____ | * | JUDGE DUVAL |
| PERTAINS TO: INSURANCE, | * | |
| *Xavier Univ. of La.*, No. 06-0516 | * | MAGISTRATE JUDGE WILKINSON |
| | * | |
| | * | |

### DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING RETROACTIVITY OF ACT 813

### PRELIMINARY STATEMENT

On this motion for partial summary judgment, Plaintiff Xavier University of Louisiana ("Xavier") seeks a ruling that the 2006 amendment to La. Rev. Stat. § 22:658, enacted in Act No. 813 of the 2006 Regular Session of the Louisiana Legislature ("Act 813"), applies to this case. Act 813, which took effect on August 15, 2006, nearly a year after Hurricane Katrina, substantially increased the penalties for violation of Section 22:658. Defendant Travelers Property Casualty Company of America ("Travelers") vigorously denies that it committed any violation of Section 22:658, but if there were such a violation, it is clear that the 2006 amendment to Section 22:658 would not apply.

Act 813 is not retroactive, as seven judges of this Court have held. The Louisiana appellate courts have also repeatedly held that prior, similar amendments to Section 22:658 were not retroactive, and that Section 22:1220 was not retroactive when it was initially enacted. Xavier asks this Court to reach a conclusion contrary to all of these decisions, but it provides no compelling reason why this Court should disagree with seven other judges of this Court and with all of the Louisiana appellate judges who have ruled on the retroactivity of previous, similar modifications to Louisiana's insurance bad faith statutes. Xavier focuses heavily on the legislative history of Act 813, but the legislative history contains no reference to retroactivity. By comparison, when the legislature wanted to make Katrina-related statutes retroactive, it did so expressly, in numerous instances.

Even if the legislature had expressly provided for Act 813 to be retroactive, such a provision would have been unconstitutional. Act 813 increases the penalties for bad faith conduct from 25% to 50% of the amount found to be owed under the policy. The act also provides for an award of attorneys' fees, which was not available in the pre-amendment version of Section 22:658. Given that attorneys' fees can sometimes amount to 33% of the amount recovered (or even more), Act 813 in effect can triple the penalty for violation of the statute from 25% of the amount recovered to 83% (or more). If the legislature tripled the penalty for a statutory violation on a retroactive basis, that would clearly be a violation of the Due Process and Ex Post Facto Clauses of both the state and federal constitutions.

There is no merit to Xavier's alternative argument that Act 813 should apply prospectively in this case. The commercial property insurance policy (the "Policy") issued by Travelers to Xavier required Xavier to provide "full compliance" with its duties under the Policy before filing suit, and allowed Xavier up to two years to file suit. Xavier's duties under the

Policy included providing complete inventories of the damaged and undamaged property and producing to Travelers the records substantiating the loss. When it filed this suit in February of 2006, Xavier alleged that it had complied with its duties under the Policy and provided "satisfactory proofs of loss" to Travelers, and alleged that Travelers had violated Section 22:658. Xavier is bound by its own allegations, which are judicial admissions, and cannot now take a contrary position. Under the terms of the Policy, Xavier was required to produce all documents necessary to substantiate its claim before it filed suit. Xavier cannot now claim that "satisfactory proofs of loss" within the meaning of Section 22:658 were not provided until documents were produced in response to Travelers' requests for production in this litigation, as required by the Federal Rules of Civil Procedure. Such a conclusion would be wholly inconsistent with the terms of the Policy and would lead to absurd results. Courts have held that Section 22:658 does not apply to post-litigation conduct, and have rejected the notion of a "continuing" violation of the Louisiana bad faith statutes. For all of these reasons, Xavier's motion for partial summary judgment should be denied.

## PERTINENT STATUTORY LANGUAGE

Prior to August 15, 2006, Section 22:658(B)(1) provided that an insurer that arbitrarily, capriciously or without probable cause failed to pay or settle a claim within thirty days of receiving satisfactory proofs of loss would be subject to a penalty calculated as 25% of the amount found to be due under the policy:

> Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim. . .when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twenty-five percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees,

or in the event a partial payment or tender has been made, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due.

La. Rev. Stat. § 22:658(B)(1) (2005).

Act 813, which went into effect on August 15, 2006 (see Bill History, attached as Exhibit A hereto), amended Section 22:658(B)(1) to increase the applicable penalty to 50% of the amount due under the policy and assess attorney's fees against an insurer found in violation of Section 22:658. Section 22:658(B)(1), as amended by Act 813, provides in pertinent part:

Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proofs of loss of that claim, as provided in Paragraphs (A)(1) and (4), respectively, or failure to make such payment within thirty days after written agreement or settlement as provided in Paragraph (A)(2), when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs.

La. Rev. Stat. § 22:658(B)(1) (2007) (amendments underlined).

## FACTS

Xavier purchased from Travelers a commercial property insurance policy (hereinafter, the "Policy") that was in effect when Hurricane Katrina struck on August 29, 2005. Xavier sustained both wind damage and flood damage as a result of the hurricane. The damage was repaired quickly so that Xavier could reopen its campus on January 17, 2006. (Complaint, ¶ 7.) Xavier filed this lawsuit against Travelers on February 2, 2006, approximately five months after Katrina struck. (Complaint, filed on Feb. 2, 2006, Civ. A. No. 06-0516, Rec. Doc. 1.) Xavier alleged that, as of February 2, 2006, Travelers had violated La. Rev. Stat. §§ 22:658 and

22:1220. (Id., ¶¶ 26-29.) Xavier alleged that, as of that date, it had "provided Travelers voluminous and substantial documents in proof of loss" and that "Travelers was obligated to pay Xavier any amounts owed to Xavier within 30 days of receipt of proof of loss, and has failed to do so." (Id., ¶ 26.) Xavier further alleged that it had "failed to pay Xavier within 60 days of receipt of satisfactory proofs of loss and such failure was arbitrary, capricious and without probable cause." (Id., ¶ 29.) Xavier's Complaint is replete with allegations claiming that it had provided Travelers with sufficient information to adjust the loss prior to February 2, 2006. (Id., ¶¶ 10-23.)

Xavier now claims that Act 813, which became effective on August 15, 2006, should be applied to Xavier's bad faith claims, notwithstanding the fact that the bill that became Act 813 had not even been introduced in the Louisiana Legislature when Xavier filed this suit in February of 2006. Act 813 was not enacted into law until four months after Xavier filed suit and did not become effective until more than six months after Xavier filed suit. Act 813 does not apply, either retroactively or prospectively, to the facts of the present case.

## ARGUMENT

## I.   THE 2006 AMENDMENT TO SECTION 22:658 IS NOT RETROACTIVE

As Xavier readily concedes, "[g]enerally, laws cannot be applied retroactively." (Xavier Memo., at 8.) The Revised Statutes specify that "[n]o section of the Revised Statutes is retroactive unless it is expressly so stated." La. Rev. Stat. § 1:2 (emphasis added). Article 6 of the Louisiana Civil Code similarly provides that "in the absence of contrary legislative expression, substantive laws apply prospectively only," and that "[p]rocedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." La. Civ. Code art. 6. The Louisiana Supreme Court has held that La. Rev. Stat. §

1:2 is the governing provision when construing an amendment to the Revised Statutes, but that

there is no conflict between Section 1:2 and Article 6 because Section 1:2 has been construed as

"applying only to substantive, as opposed to procedural or interpretive, laws." St. Paul Fire &

Marine Ins. Co. v. Smith, 609 So. 2d 809, 816 (La. 1992).

A two-part test is applied in determining whether a statute should be applied

retroactively: "First, we must ascertain whether in the enactment the legislature expressed its

intent regarding retrospective or prospective application. If the legislature did so, our inquiry is

at an end. If the legislature did not, we must classify the enactment as substantive, procedural or

interpretive." Cole v. Celotex Corp., 599 So. 2d 1058, 1063 (La. 1992) (internal citations

omitted). Here, the legislature did not make Act 813 expressly retroactive, and there can be no

question that it was a substantive change in the law. Act 813 therefore cannot be applied

retroactively.

## A.    The Legislature Did Not Expressly Provide For Retroactive Application Of Act 813

The first step in the two-part analysis is to determine "whether in the enactment the

legislature expressed its intent regarding retrospective or prospective application." Cole, 599 So.

2d at 1063 (emphasis added). This step is resolved simply by "examining the specific language

contained in the act." St. Paul Fire & Marine, 609 So. 2d at 816-817. There is nothing in Act

813 that expresses any legislative intent that the amended version of Section 22:658 should be

applied retroactively. (See Act 813, attached as Exhibit B hereto.) Xavier does not even argue

that there is anything in the language of Act 813 itself that suggests that the legislature intended

it to apply retroactively.

Act 813 took effect on August 15, 2006 by operation of the Louisiana Constitution,

which provides that "All laws enacted during a regular session of the legislature shall take effect

on August fifteenth of the calendar year in which the regular session is held," although "any bill may specify an earlier or later effective date." La. Const. art. III, § 19. The legislature is presumed to be familiar with the provisions of the state constitution. If it wanted to specify an earlier effective date, it would have done so. See Succession of Fragala, 680 So. 2d 1345, 1348 (La. Ct. App. 2d Cir. 1996) (noting that state constitution "expressly authorizes the legislature to set an earlier or later date for *any* bill," and that failure to do so indicated that there was no intent to apply the bill retroactively); Vermilion Parish School Bd. v. Weaver Exploration Co., 474 So. 2d 1032, 1034 (La. Ct. App. 3d Cir. 1985) (where effective date was governed by La. Const. art. III, § 19, this indicated that the legislature did not intend for the statute to have retroactive effect).

### B.   Act 813 Is A Substantive Law Which Cannot Be Applied Retroactively

The second step in the two-part analysis is to determine whether Act 813 is substantive, procedural or interpretive. St. Paul Fire & Marine, 609 So. 2d at 817. "Substantive laws either establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the interpretive statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes the rights and duties." Id. "Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws." State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed to do Business in Louisiana, 937 So. 2d 313, 321 n.10 (La. 2006). When a change in the law is substantive, it "cannot be applied retroactively to rights and duties arising out of events which occurred prior to this change in the law." St. Paul Fire & Marine, 609 So. 2d at 822.

Here, there is no question that Act 813 is substantive. It establishes a new rule by doubling the amount of the penalty for violation of Section 22:658 and adding an award of attorneys' fees that was not available under the prior version of the statute. Xavier does not even argue that Act 813 was not substantive. Judges of this courts have repeatedly held that Act 813 was substantive and, therefore, not retroactive. See Part I.C., infra. Louisiana appellate courts have repeatedly reached the same result in applying prior amendments to Section 22:658 and in applying Section 22:1220 when it was initially enacted. See Part I.D., infra.

## C. Seven Judges Of This Court Have Held That Act 813 Is Not Retroactive

The question of whether Act 813 is retroactive has been decided by seven judges of this Court, all of whom have held that Act 813 is not retroactive. Broussard v. State Farm Fire & Cas. Co., 2007 WL 2264535, at *8 (E.D. La. Aug. 2, 2007) (Vance, J.); Glaviana v. State Farm Fire & Cas. Co., 2007 WL 2127709, at *2 (E.D. La. July 23, 2007) (Lemelle, J.); Hartford v. Fidelity & Deposit Co., 2007 WL 2071659, at *2 (E.D. La. July 17, 2007) (Africk, J.); Conlee v. Fireman's Fund Ins. Co., 2007 WL 2071860, at *1-2 (E.D. La. July 17, 2007) (Barbier, J.); Leali v. Certain Underwriters at Lloyd's, London, 2007 WL 1975634, at *1 n.1 (E.D. La. July 3, 2007) (Fallon, J.); Ferguson v. State Farm Ins. Co., 2007 WL 1378507, at *3 (E.D. La. May 9, 2007) (Berrigan, C.J.); McKenny v. Allstate Ins. Co., 2007 WL 1139601, at *1-2 (E.D. La. Apr. 16, 2007) (Berrigan, C.J.); Weiss v. Allstate Ins. Co., 2007 WL 1017341, at *2-3 (E.D. La. Mar. 28, 2007) (Vance, J.); Tomlinson v. Allstate Indem. Co., Civ. A. No. 06-CV-617 (E.D. La. Feb. 12, 2007) (Feldman, J.) (oral ruling).[1]

In Ferguson, for example, Chief Judge Berrigan concluded that Act 813 was not retroactive because "[t]he legislature did not include such an expression in 2006 La. Acts No.

---

[1] In Madere v. State Farm Fire & Cas. Co., 2007 WL 1655553 (E.D. La. June 5, 2007) (Duval, J.), the Court did not reach the issue of retroactivity because the parties agreed that Act 813 was not retroactive. Id. at *2.

813, and federal and state courts have consistently declined to read in a legislative intent to retroactively apply amendments to La. Rev. Stat. § 22:658 in its absence." Ferguson, at *3 (citing Tomlinson, Lewis v. State Farm Ins. Co., 946 So. 2d 708, 728-29 (La. Ct. App. 2006) and Geraci v. Byrne, 934 So. 2d 263, 267 (La. Ct. App. 2006)).   Judges Vance and Lemelle reached the same conclusion based on similar reasoning.  See Broussard, at *8; Weiss, at *3; Glaviana, at *2.

### D.   The Louisiana Appellate Courts Have Repeatedly Held That Previous, Similar Amendments To Louisiana's Bad Faith Statutes Were Not Retroactive

The judges of this Court who have refused to apply Act 813 retroactively have relied in part on Louisiana appellate caselaw holding that previous, similar amendments to Louisiana's insurance bad faith statutes were not retroactive.  See, e.g., Ferguson, at *3; Broussard, at *8. The Louisiana appellate courts have unanimously concluded that prior amendments to Section 22:658, as well as the initial enactment of Section 22:1220, were not retroactive.  The courts' reasoning in these cases is equally applicable here.

For example, in 2003, the legislature amended Section 22:658 to, inter alia, increase the penalty for violation of the statute from 10% to 25% of the amount found to be owed, and eliminate the language allowing for an award of attorney's fees.  See 2003 La. Acts No. 790. The Louisiana Fifth Circuit Court of Appeal refused to apply the amended version of Section 22:658 where the cause of action for violation of Section 22:658 first arose prior to the effective date of the amendment.  Geraci, 934 So. 2d at 267.  The Louisiana Second Circuit reached the same result.  Lewis, 946 So. 2d at 729 ("Since, however, Plaintiffs' causes of action arose prior to this amendment, they are entitled to attorney fees as provided by the version of the statute in effect at that time.").

Similarly, Section 22:658 was amended in 1986 to decrease the penalty for violation of the statute from 12% to 10% of the amount found to be owed by the insurer. In applying that amendment, the Louisiana Third Circuit held that "[t]he change from a twelve percent penalty to a ten percent penalty is substantive in nature and will not be applied retroactively." Fuqua v. Aetna Cas. & Sur. Co., 542 So. 2d 1129, 1133 (La. Ct. App. 3d Cir. 1989). The Louisiana First Circuit reached the same result. Francis v. Travelers Ins. Co., 581 So. 2d 1036, 1044 (La. Ct. App. 1st Cir. 1991) (holding that the amendment to Section 22:658 "was substantive in nature and will not be applied retroactively"); Gulf Wide Towing, Inc. v. F.E. Wright (U.K.) Ltd., 554 So. 2d 1347, 1354 (La. Ct. App. 1st Cir. 1989) (holding that the change from a 12% penalty to a 10% penalty "was substantive and cannot be applied retroactively"). Given that the change in 1986 from a 12% to 10% penalty was found to be substantive and therefore non-retroactive, the same must be true of the post-Katrina amendment changing the amount of the penalty from 25% to 50%.

In 1990, the Louisiana Legislature enacted Section 22:1220, which is a companion statute to Section 22:658, providing for damages for certain specified "bad faith" conduct by insurers, and penalties under certain circumstances. The Louisiana First and Fifth Circuits held that Section 22:1220 was not retroactive. Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co., 634 So. 2d 40, 43-44 (La. Ct. App. 1st Cir. 1994) (holding that Section 22:1220 was not applicable retroactively because it was a substantive enactment); Jeffries v. Pruitt, 638 So. 2d 723, 726 (La. Ct. App. 1st Cir. 1994) (same holding); Rusch v. Cook, 619 So. 2d 122, 124 (La. Ct. App. 1st Cir. 1993) (same holding); Gretna Realty Co. v. Hartford Steam Boiler Inspection & Ins. Co., 617 So. 2d 215, 218 (La. Ct. App. 5th Cir. 1993) (holding that Section 22:1220 was not retroactive); Del-Remy Corp. v. Lafayette Ins. Co., 616 So. 2d 231, 232 (La. Ct. App. 5th Cir.

1993) (same holding); Hidalgo v. Old Hickory Ins. Co., 630 So. 2d 252, 256 (La. Ct. App. 5th Cir. 1993) (same holding).[2]

Louisiana federal judges have also held that Section 22:1220 was not retroactive. Premium Fin. Co. v. Employers Reins. Corp., 761 F. Supp. 450, 451 (W.D. La. 1991) (Little, J.) (holding that Section 22:1220 was not retroactive); Kiefer v. State Farm Mut. Auto. Co., 1999 WL 147673, at *7 (E.D. La. Mar. 11, 1999) (Porteous, J.) (same holding); Westridge v. Poydras Props., Inc., 1994 WL 721457, at *1 (E.D. La. Dec. 27, 1994) (Vance, J.) (same holding).

Given the substantial Louisiana appellate precedent holding that previous amendments to Section 22:658 and the enactment of Section 22:1220 were not retroactive, this Court should conclude, as seven other judges of this Court already have, that Act 813 is not retroactive.

E.      There Is No Merit To Xavier's Contention That Act 813 Should Be Applied Retroactively Based On Its Legislative History

Xavier contends that, despite the legislature's failure to make Act 813 expressly retroactive, the Act should be deemed retroactive based on its legislative history. This argument is without merit for several reasons. First, a substantive law is retroactive only where it is expressly so stated. As a matter of law, retroactive intent cannot be implied in a substantive law based on legislative history. Second, the legislative history of Act 813 does not demonstrate that the legislature intended the amendments to § 22:658 to apply retroactively. Third, when the legislature wanted to make a Katrina-related statute or amendment retroactive, which it did on numerous occasions, it made the statute expressly retroactive.

---

[2] In Manuel v. La. Sheriff's Risk Mgmt. Fund, 664 So. 2d 81 (La. 1995), the Louisiana Supreme Court approved of the reasoning in Rusch, Jeffries, Hidalgo, Gretna Realty and Federal Ins. Co., but found them distinguishable because, on the facts of the case at bar, Section 22:1220 was applicable prospectively where the violation (failure to pay a settlement within 30 days of the settlement agreement) occurred after Section 22:1220 took effect. Manuel, 664 So. 2d at 86-87 & n.11.

1.    **A Substantive Law Cannot Be Deemed Retroactive Based On Inferences From Legislative History**

When a change in the law is substantive, it is not retroactive unless it is "expressly" so provided in the statute itself. La. Rev. Stat. § 1:2; La. Civ. Code art. 6. See also Landry v. Avondale Indus., 864 So. 2d 117, 123 (La. 2003) (holding that where a statutory amendment "was a substantive law and the legislature did not expressly provide that it should be applied retroactively, La. C.C. art. 6 requires that it be given prospective application only") (emphasis added). There is no question here that Act 813 itself contains no express language providing for retroactivity.

Xavier fails to cite any case in which a substantive provision was applied retroactively based on inferences from legislative history. In Dombrowski v. New Orleans Saints, 943 So. 2d 403 (La. Ct. App. 1st Cir. 2006), cited by Xavier, the court held that the repeal of a statute "involve[d] substantive rights" and, therefore, "in the absence of a contrary and constitutionally permissible legislative directive in Act 561, we conclude that the repeal cannot be applied retroactively." Id. at 409 (emphasis added). The court also noted that the legislative history indicated that the legislature "considered and expressly rejected the thought of making the repeal . . . retroactive," but that does not support Xavier's position that legislative history, by itself could make a substantive statute retroactive. Id. at 408 (emphasis added). Xavier also cites Industrial Risk Insurers v. New Orleans Public Serv., Inc., 735 F. Supp. 200 (E.D. La. 1990) (Mentz, J.), in which the court concluded that the statute at issue was interpretive, not substantive, and therefore was applicable retroactively. Id. at 202.[3]

---

[3] The other cases cited by Xavier are similarly inapposite. In Wooley v. State Farm Fire & Cas. Ins. Co., 928 So. 2d 618, 622 (La. Ct. App. 1st Cir. 2006), the court found that the statute at issue was retroactive because it was interpretative, not substantive. Abate v. Healthcare Int'l, Inc., 560 So. 2d 812 (La. 1990) did not address retroactivity, and considered legislative history only in determining whether the legislation was intended to overrule caselaw.

### 2. The Legislative History Of Act 813 Does Not Support Xavier's Position

Contrary to Xavier's contentions, the legislative history of Act 813 does not show that the legislature intended to apply the amendment to Section 22:658 retroactively. There is no reference to retroactivity anywhere in the legislative history. Xavier focuses on the following comments of Senator Edwin Murray reflected in the minutes of the House Committee on Insurance:

> Senator Murray stated that the proposed legislation seeks to increase the penalty from 25% to 50% for insurers who are found to not handle consumer claims in a timely manner as well as award reasonable attorney's fees and costs. Senator Murray said that he had several constituents complain about their insurance companies to pay [sic]their claims and felt that the penalties were not enough to encourage these insurers to be more timely in getting adjusters to these people [sic] homes so that these claims can be settled.
>
> House Comm. On Ins., Minutes of Meeting, May 31, 2006 at 2 (Xavier Memo., Exhibit A).

Senator Murray's comments do not demonstrate that he intended that Act 813 would operate retroactively. Xavier focuses on Senator Murray's statement that he "felt that the penalties were not enough to encourage these insurers to be more timely in getting adjusters to these people [sic] homes so that these claims can be settled." (Xavier Memo., at 7.) Given that Senator Murray was making these comments nine months after Katrina, when adjusters had visited almost all if not all of the damaged homes, he was probably talking about encouraging adjusters to be more responsive in the event of a future catastrophe. To the extent that he was talking about situations in which an adjuster had not yet been to a person's home nine months after Katrina, he may have been suggesting that the amended statute could apply prospectively to such a situation. Moreover, even if Xavier were correct that Senator Murray himself intended Act 813 to apply retroactively, that does not demonstrate that the legislature as a whole had such an

intention. The comments of a single legislator do not establish the intention of an entire legislative body. See Authement v. Davidson, 366 So. 2d 986, 989 (La. Ct. App. 1st Cir. 1978) (recognizing that "[i]t is not one individual legislator who enacts a statute, but the entire legislative branch which acts as a whole," and that "it is the duty of the court to ascertain the legislative intent, as a whole, in order to construe a statute").

Xavier's reliance on the "Historical and Statutory Notes" following the West version of Section 22:658 is also unavailing. Xavier claims that the citation in the "Historical and Statutory Notes" to House Concurrent Resolution No. 58, which calls for the attorney general to file a declaratory judgment action regarding the legality of certain policy exclusions, reflects the legislature's intent to apply Act 813 retroactively to claims arising out of Hurricanes Katrina and Rita. (Xavier Memo., at 10.) The "Historical and Statutory Notes," however, are compiled by West Publishing, not by the legislature. They can have no bearing on legislative intent. Indeed, the Louisiana Supreme Court has previously disavowed "mechanical reliance" on a West annotation. All Star Advertising Agency, Inc. v. Reliance Ins. Co., 898 So. 2d 369, 375 (La. 2005) (concluding that court erroneously relied on a West annotation to determine whether state was a "reciprocal state" under relevant statute).[4]

Moreover, House Concurrent Resolution No. 58 has no bearing upon Act 813. The resolution urged and requested the attorney general of Louisiana "to file suit seeking declaratory judgment that provisions of homeowners' insurance policies excluding coverage for damage

---

[4] Xavier cites Wilcox v. Gamble Guest Care Corp., 928 So. 2d 695 (La. Ct. App. 2d Cir. 2006) and Beutler England Chiropractic Clinic v. Rice, 931 So. 2d 553 (La. Ct. App. 3d Cir. 2006) for the proposition that courts have examined the Historical and Statutory Notes to ascertain legislative intent. (Xavier Memo., at 10-11.) In Wilcox, the "Historical and Statutory Notes" cited by the court contained the title of the act, which was drafted by the legislature, not West Publishing. See Wilcox, 928 So. 2d at 698; La. Rev. Stat. Ann. § 40:2010.6 (West 2001). In Beutler England, a concurring judge noted that the "Historical and Statutory Notes" described a statutory amendment as having "rewrote" a subsection of the statute. Beutler England, 931 So. 2d at 561 (Peters, J., concurring). It is unclear, however, whether the concurring judge recognized that this annotation was prepared by West and not by the legislature. See La. Rev. Stat. Ann. § 23:1310.3 (West 2007).

sustained as a result of wind, hail, and hurricanes are null and void as against the public policy of the State of Louisiana." The resolution pertains to policy exclusions and does not address penalties for failure to timely pay claims. There is no apparent connection between House Concurrent Resolution No. 58 and Act 813.

### 3. When The Legislature Wanted To Make Katrina-Related Statutes Retroactive, It Did So Expressly

When the Louisiana Legislature wants a statute or amendment to apply retroactively, it makes its intent clear. Unlike Act 813, other Katrina-related statutes were made expressly retroactive. For example, La. Acts 2005, 1st Ex. Sess., No. 49, § 1, which enacted La. Rev. Stat. § 4:147.1, allows for additional or substitute horse races to be conducted where a horse racing facility was affected by a catastrophe. This statute expressly provides that "[t]he provisions of this Act shall have retroactive application to August 29, 2005," the date of Hurricane Katrina. La. Acts 2005, 1st Ex. Sess., No. 49, § 1. See also La. Rev. Stat. § 9:315.21(F)(1) (providing that "if a party has been directly affected by Hurricane Katrina, a judgment modifying a final child support judgment may be made retroactive to August 26, 2005"); La. Rev. Stat. § 9:2800(H)(1), (4) (providing that "no person shall have a cause of action based solely upon liability imposed under Civil Code Articles 2317 and 2317.1 against a public entity for any damages arising from hurricanes Katrina or Rita, including aftereffects of either hurricane and post-hurricane restoration, repair, cleaning, and construction," and that "[t]he provisions of this Subsection shall be given retroactive application to August 26, 2005"); La. Rev. Stat. § 9:2800.17 (similar); La. Rev. Stat. § 13:5 (similar); La. Rev. Stat. § 29:735 (similar); La. Civ. Code art. 54 (similar).

**F.     Retroactive Application Of Act 813 Would Be Unconstitutional**

Even if this Court were to conclude that the 2006 amendments to Section 22:658 were intended to be applied retroactively, retroactive application of those amendments would be unconstitutional. Act 813 doubles the amount of the penalty for violation of Section 22:658 from 25% to 50%, and adds an award of attorneys' fees which, in some cases, can be 33% of the amount of the claim or more. In effect, Act 813 can more than triple the amount of the penalty in some cases. The Due Process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 2 of the Louisiana Constitution require adequate notice of penalties. "The Due Process Clause . . . protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause may not suffice to warrant its retroactive application." Landgraf v. Usi Film Prods., 511 U.S. 244, 266 (1994). See also Segura v. Frank, 630 So. 2d 714, 721 (La. 1994) ("principle contained in La. C.C. art. 6 has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions.") Applying Act 813 retroactively would violate due process by assessing substantially higher penalties without adequate notice.

Likewise, "[t]he Ex Post Facto clauses of the Louisiana and United States Constitutions prohibit laws that are passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed." Arledge v. Holnam, Inc., 957 F. Supp. 822, 828 (M.D. La. 1996) (Polozola, J.) (internal citations omitted); see U.S. Const. art. I, § 10; La. Const. art. I, § 23.[5] "The Ex Post Facto Clause flatly prohibits retroactive application of penal legislation." Landgraf v. Usi Film Prods., 511 U.S. at 266.

---

[5] The Louisiana Supreme Court has never reached the issue of whether the Ex Post Facto Clause in the state constitution applies to civil penalties in addition to criminal penalties. See Anderson v. Avondale Indus., Inc., 798 So. 2d 93, 101 (La. 2001)

"Thus, if a law attaches a new consequence to a certain event, it cannot be applied to those regulated events that occurred before the law's effective date." Arledge, 957 F. Supp. at 828 (holding that statute providing for award of punitive damages could not be applied retroactively). See also Landgraf, 511 U.S. at 281 ("Retroactive imposition of punitive damages would raise a serious constitutional question.").

Section 22:658 is penal in nature. Reed v. State Farm Mut. Auto. Ins. Co., 857 So. 2d 1012, 1020 (La. 2003); McDill v. Utica Mut. Ins. Co., 475 So. 2d 1085, 1092 (La. 1985). The 2006 amendment to Section 22:658 doubles the penalty for violation of the statute and adds an attorneys' fees award. These assessments are clearly punitive and therefore cannot be applied retroactively without running afoul of the Louisiana and United States Constitutions.

Xavier argues that Act 813 is constitutional based on the Louisiana Supreme Court's decision in State v. All Prop. & Cas. Ins. Carriers, 937 So.2d 313 (La. 2006), which is clearly distinguishable. (See Xavier Memo., at 10-12.) That case involved the one-year extension of the prescriptive period to file claims arising out of Hurricanes Katrina and Rita. The extension was enacted before the prescriptive period had expired. The central constitutional issue was whether the extension of the suit limitation period violated the Contracts Clauses of the Louisiana and United States Constitutions. All Prop. & Cas. Ins. Carriers, 937 So. 2d at 323-27. In this case, Act 813 provides for extra-contractual damages, and the constitutional question is not whether Act 813 would impermissibly impair contractual rights, but whether the Due Process and Ex Post Facto Clauses would allow the legislature to more than double the penalties for violation of Section 22:658 on a retroactive basis.[6]

---

[6] Xavier also cites two workers' compensation cases, Alleman v. Ke-Co, Inc., 783 So. 2d 409 (La. Ct. App. 3d Cir. 2001) and Henderson v. Pacific Marine Ins. Co., 611 So. 2d 822 (La. Ct. App. 3d Cir. 1992), both of which are clearly inapposite. Alleman involved a situation in which the Louisiana Supreme Court overruled one of its own decisions. The question was whether the most recent Louisiana Supreme Court ruling was grounds for reopening a

## II. THE 2006 AMENDMENT TO SECTION 22:658 IS NOT APPLICABLE PROSPECTIVELY IN THIS CASE

Xavier also makes a last-ditch alternative argument that Act 813 should be applied prospectively in this case. (Xavier Memo., at 15-17.) This argument is without merit because Xavier was required by the terms of the Policy to substantiate its claim before it filed suit. Xavier is bound by its allegations that, when it filed its Complaint in February of 2006, more than six months before Act 813 took effect, sufficient proof of loss had been provided and that there was a violation of Section 22:658 at that time. Moreover, courts have recognized that Section 22:658 is generally not applicable to post-litigation conduct, and have rejected the notion of a "continuing" violation of Section 22:658.

### A. Section 22:658 Is Not Applicable Prospectively Because The Policy Required Xavier To Substantiate Its Claim *Before* It Filed Suit, And Xavier Alleges That It Did So

The Policy expressly provides that suit cannot be filed until the insured has provided "full compliance" with all of its obligations under the Policy, and allows the insured up to two years in which to substantiate its claim before filing suit:

> **Legal Action Against Us**
> No one may bring a legal action against us under this Coverage Part unless:
> **a.** There has been full compliance with all of the terms of this Coverage Part; and
> **b.** The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(See Policy, Deluxe Property Coverage Form, at 18, a copy of which is attached as Exhibit A to Claypool Affidavit which is attached to Travelers Response to Plaintiff's Statement of Uncontested Material Facts in Support of Its Motion for Partial Summary Judgment Regarding

---

stipulated judgment that had been entered into shortly before the new Louisiana Supreme Court decision. Alleman, 783 So. 2d at 412. In Henderson, the question was whether an amendment to the Guaranty Association Act, which expressly prohibited an insurer from recovering on a subrogation claim against the insured of an insolvent insurer, was applicable retroactively. The court held that the amendment was retroactive because it was interpretive or curative of the pre-existing version of the statute, and there was no jurisprudence supporting an insurer's right to recover in subrogation against the insured of an insolvent insurer. Henderson, 611 So. 2d at 823-24.

18

Retroactivity of Act 813) (emphasis added).)  This provision is essentially identical to the terms of the Louisiana Standard Fire Policy, the terms of which are contained in a Louisiana statute adopted by the legislature, except that Travelers' Policy extends the prescription period from one year to two years. See La. Rev. Stat. § 22:691(F) ("No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after the inception of the loss.") (emphasis added).

The duties that Xavier was required to fully comply with before filing suit included substantiating the claim by providing Travelers with complete inventories, providing copies of all pertinent books and records, and cooperating with Travelers' investigation of the claim:

> **Duties in the Event of Loss or Damage**
> **a.** You must see that the following are done in the event of loss of or damage to Covered Property:
>
> (2) Give us prompt notice of the loss or damage.  Include a description of the property involved.
> (3) As soon as possible, give us a description of how, when, and where the loss or damage occurred.
> . . .
> (5) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.  This will not increase the Limit of Insurance.  However, we will not pay for any loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.  Also, if feasible, set the damaged property aside and in the best possible order for examination.
> (6) At our request, give us complete inventories of the damaged and undamaged property.  Include quantities, costs, values and amount of loss claimed.
> (7) As often as may be reasonably required, permit us to inspect the property and records proving the loss or damage and examine your books and records.  Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis and permit us to make copies from your books and records.
> . . .
> (9) Cooperate with us in the investigation or settlement of the claim.

(Policy, Deluxe Property Coverage Form, at 14 (emphasis added).)

Xavier alleges repeatedly that it complied with these obligations before it filed suit on February 2, 2006. The Complaint pleads that "Xavier has provided Travelers voluminous and substantial documents in proof of its loss." (Complaint, ¶ 23.) Xavier further alleges that, "Pursuant to Louisiana Revised Statute 22:658(A)(1), Travelers was obligated to pay Xavier any amounts owed to Xavier within 30 days of receipt of proof of loss, and has failed to do so. As a result of that failure, which was arbitrary, capricious and without probable cause, Travelers is liable for all amounts due under the policy, plus **25%** pursuant to Louisiana Revised Statute 22:658(B)(1)." (Id., ¶ 26 (emphasis added).) The Complaint is replete with allegations claiming that Xavier had provided sufficient documentation to Travelers in proof of its loss prior to February of 2006. (See id., ¶¶ 10-17.)

A claim under Section 22:658 accrues 30 days after the insured provides "satisfactory proof of loss" to the insurer. See La. Rev. Stat. § 22:658(B)(1). In Geraci, for example, the Louisiana Fifth Circuit Court of Appeal held that the 2003 amendment to Section 22:658 was inapplicable to an uninsured motorist claim where "the cause of action for arbitrary and capricious refusal to settle arose prior to August 15, 2003." Geraci, 934 So. 2d at 267. The demand for coverage and the medical bills had been provided to the insurer more than 30 days before the effective date. Id. See also Lewis, 946 So. 2d at 729 (holding that 2003 amendment to Section 22:658 was inapplicable where "Plaintiffs' causes of action arose prior to this amendment"); Gulf Wide Towing, 554 So. 2d at 1354 (holding that 1986 amendment to Section 22:658 was inapplicable where satisfactory proof of loss was submitted two years before effective date of amendment).[7]

---

[7] Courts determining the applicability of Section 22:1220 prospectively when that statute was first enacted reached the same conclusion. See Federal Ins. Co., 634 So. 2d at 43 (holding that Section 22:1220 was inapplicable where

This Court followed this line of cases in <u>Madere</u> when it concluded that "[i]f plaintiffs provided 'satisfactory proof of loss' to defendant and the thirty (30) [day] statutory period for paying the claim elapsed prior to August 15, 2006, the effective date of the amendment, then any penalty which plaintiffs might be entitled to would be limited to 25 percent of the loss." <u>Madere</u>, 2007 WL 1655553, at *2.

Here, Xavier clearly alleges that "satisfactory proof of loss" was provided and that its cause of action under Section 22:658 accrued long before Act 813 became effective. Judges of this Court have held, based on allegations similar to Xavier's, that the 2006 amendment to Section 22:658 was inapplicable. In <u>Glaviana</u>, for example, the plaintiff alleged that she provided State Farm with a sworn proof of loss by October 25, 2005. <u>Glaviana</u>, 2007 WL 2127709, at *1. Judge Lemelle held that, because "the alleged conduct giving rise to Plaintiff's claims occurred prior to August 16, 2006 . . . Plaintiff's recovery under La. Rev. Stat. § 22:658, if any, is limited to 25% as a matter of law." <u>Id.</u> at *2. <u>See also</u> <u>McKenney</u>, 2007 WL 1139601, at *1 (Berrigan, C.J.) (holding that Act 813 was inapplicable where pertinent conduct occurred prior to the effective date). Similarly, in <u>Kiefer</u>, Judge Porteous held that Section 22:1220 was not applicable where the plaintiff "has alleged clearly that [the statutory violation] began at least in 1989," and Section 22:1220 did not become effective until July of 1990. <u>Kiefer</u>, 1999 WL 147673, at *7.

Xavier is bound by its own allegations that it had complied with the terms of the Policy by providing satisfactory proof of loss prior to February of 2006, and that Travelers violated

---

case involved alleged breach of duty to defend lawsuit that was filed before effective date of statute); <u>Rusch</u>, 619 So. 2d at 124 (holding that Section 22:1220 was inapplicable where plaintiff alleged failure to make reasonable efforts to settle claim arising from automobile accident occurring prior to effective date of statute); <u>Gretna Realty</u>, 617 So. 2d at 218 (holding that Section 22:1220 was inapplicable where loss resulting from pipe burst occurred seven months prior to effective date of statute); <u>Del-Remy Corp.</u>, 616 So. 2d at 232 (holding that Section 22:1220 was inapplicable where fire loss occurred a year before the statute became effective).

Section 22:658 long before the 2006 amendment took effect. Xavier cannot change its position

now. See Morales v. Department of Army, 947 F.2d 766, 769 (5th Cir. 1991) (stating rule that

"[f]actual assertions in pleadings are judicial admissions conclusively binding on the party that

made them," and holding that plaintiff "may not now argue contrary to the factual allegations of

his complaint"); Davis v. A.G. Edwards & Sons, Inc., 823 F.2d 105, 108 (5th Cir. 1987)

(applying same rule, holding that plaintiffs were bound by their own allegations).

      **B.**     **If Xavier Failed To Comply With The Terms Of The Policy Before Filing Suit, It Would Be In Breach Of Its Duties Under The Policy And Would Not Be Entitled To Any Recovery Under Section 22:658**

Xavier alleges that it provided "satisfactory proofs of loss" prior to filing suit.

(Complaint, ¶¶ 10-17, 23, 26.) If that is true, and if Xavier can prove that Travelers engaged in

conduct that was "arbitrary, capricious, or without probable cause" (which Travelers vigorously

denies), then Xavier would be entitled to a penalty of 25% of the amount found to be due.

Xavier contends, however, that if it <u>failed</u> to provide "satisfactory proofs of loss" until <u>after</u>

August 15, 2006, it would be entitled to a <u>higher</u> penalty of 50%. Xavier's position makes no

sense because it would reward an insured for its own failure to comply with its duties under the

policy. Xavier cannot be entitled to a larger penalty on the grounds that it failed to provide

"satisfactory proofs of loss" before brining suit, in violation of the Policy requirement that "full

compliance" be provided before suit is filed.

Courts have repeatedly held, contrary to Xavier's position, that where an insured fails to

comply with its duties under the policy in a timely fashion, the insurer cannot be found liable

under Section 22:658. In Baker v. Dearie, 2006 WL 1968902 (E.D. La. June 28, 2006)

(Berrigan, J.), for example, the plaintiffs claimed that the insurer was obligated to provide a

defense, and submitted a bill for attorneys' fees. The insurer asked for an itemized breakdown of

the fees, but the insureds failed to provide such a breakdown and instead filed suit. The court granted the insurer's motion for partial summary judgment on the insureds' claims under Sections 22:658 and 22:1220, holding that "the plaintiffs' failure to provide adequate proof in the form of an itemization of attorney's fees and expenses precludes recovery under the penal statutes [Sections 22:658 and 22:1220] as a matter of law." Id. at *4. See also Johnson v. Phillips, 544 So. 2d 600, 604 (La. Ct. App. 1st Cir. 1989) (affirming trial court ruling that there was no violation of Section 22:658 where insured failed to timely provide documentation to substantiate claim); Hut of Louisiana, Inc. v. Zurich Ins. Co., 372 So. 2d 687, 689 (La. Ct. App. 1st Cir. 1979) (holding that there was no violation of Section 22:658 "[i]n view of [the insured's] failure to produce adequate proof of purchases and costs for inventory in the store in question"); Robicheaux v. Calvert Fire Ins. Co., 171 So. 2d 264, 269 (La. Ct. App. 1st Cir. 1965) (holding that insurer was not liable under Section 22:658 where insured failed to comply with his duties under the policy); Husseiny, 1996 WL 637547, at *6 (holding that there was no violation of Section 22:658 "[c]onsidering the plaintiffs' lack of compliance with policy provisions, their failure to submit documentation, and the overstated nature of the plaintiffs' dwelling claim").

The facts of this case demonstrate that Xavier breached its duties under the Policy by wrongfully withholding documents requested by Travelers for many months. In September of 2005, Xavier's contractor, Jim Landis of Landis Construction, agreed that, in accordance with Travelers' request, Landis would maintain accurate records of the repairs made to Xavier's campus by building, floor, and room, and would specify the damage from wind and wind-driven rain as opposed to flood (or rising water). (Claypool Affidavit, ¶ 3.) Sarah Busch of Landis Construction prepared a detailed, handwritten scope of the damage to the campus shortly after

Hurricane Katrina.  Notwithstanding Travelers' repeated requests for these critical documents, they were not provided until November of 2006.  (Id., ¶¶ 4-9.)

### C.   Applying Section 22:658 To Post-Litigation Conduct In The Manner Xavier Suggests Is Inconsistent With Louisiana Caselaw And Would Lead To Absurd Results

In applying Section 22:658, Louisiana courts have found that there is a specific point in time at which an insured has provided sufficient information to constitute a satisfactory proof of loss.[8]  See Gulf Wide Towing, 554 So. 2d at 1354; Geraci, 934 So. 2d at 267; Lewis, 946 So. 2d at 729; Glaviana, 2007 WL 2127709, at *2; McKenney, 2007 WL 1139601, at *1.  After that point, the fact that the insured provides the same information a second time or provides further additional documentation is irrelevant in applying Section 22:658.

In Rusch, the insured made an argument similar to Xavier's argument, contending that the insurer had a "continuing" duty under Section 22:1220 to settle an insurance claim and that since the conduct continued after Section 22:1220 became effective, the statute applied.  Rusch, 619 So. 2d at 124.  The Louisiana First Circuit Court of Appeal rejected this argument, holding that the accident that gave rise to the alleged violation of Section 22:1220 occurred before the statute took effect, and that "[w]e decline to impose a substantive obligation on the insurer retroactively simply because settlement efforts were 'continuing' after the effective date of the act."  Id. at 124-25.  See also Kiefer, 1999 WL 147673, at *7 (holding that "[t]he fact that any alleged bad faith may have continued past the effective date of La. R.S. 22:1220 is not enough to make the statute applicable").

---

[8] To the extent that an insurance claim has different, discrete components, there may be different dates on which a "satisfactory proof of loss" is provided.  For example, the date on which satisfactory proof of loss is provided with respect to the insured's claim for physical damage to buildings may be different from the date on which satisfactory proof of loss is provided for the insured's business interruption claim.  There is still a finite point in time, however, at which sufficient information has been provided with respect to each discrete component of the claim.

Xavier's theory of a "continuing" violation of Section 22:658 would lead to absurd results. <u>See</u> La. Civ. Code art. 9 (statute should not be interpreted so as to "lead to absurd consequences"); <u>State ex rel. Department of Pub. Safety & Corrections v. Louisiana Riverboat Gaming Comm'n</u>, 655 So. 2d 292, 302 (La. 1995) (stating rule that "[c]ourts should avoid constructions which will render legislation absurd"). As Xavier would have it, the insured could re-trigger the statute endlessly, <u>ad infinitum</u>, simply by continuing to forward additional, even irrelevant documentation that was not necessary to meet the statutory requirement of a "satisfactory proofs of loss." The 30-day period under which an insurer is obligated to make payment would become a "rolling" period that would re-start every time that additional documentation of any kind was provided. Such a rule of law would be unworkable in governing the everyday conduct of insureds and insurers, would be very difficult for a finder of fact to apply and would be subject to manipulation by insureds every time that the statute is amended. Such an interpretation should be rejected.

In <u>Premium Finance</u>, the court refused to apply Section 22:1220 to post-litigation conduct, noting that to do so would create "absurd results" that would be inconsistent with the purpose of the statute:

> Applying the statute under consideration to post-litigation activities would lead to an absurd result. The absurd result is to expose all litigation with insurers on the main demand to protracted collateral litigation with the insured concerning the insurer's post-filing negotiations, as colored by attorney advice, issues development and court rulings. The resulting litigation explosion would thwart the statutory goal of quick resolution of disputed claims and would impede just and reasonable post-filing negotiations.
>     Finally, the law addresses a perceived lack of incentive for insurers to settle claims. Such an incentive is absent once litigation commences because any party to a lawsuit will have an incentive to settle the suit, namely, the desire to avoid litigation costs. Thus, the statute would be duplicative if it applied to conduct occurring after the initiation of litigation. Absent explicit legislative direction, the court is unwilling to embark upon the course suggested by plaintiffs.

Premium Finance, 761 F. Supp. at 452-53. Similarly, in Husseiny v. Independent Fire Ins., 1996

WL 637547 (E.D. La. Nov. 1, 1996) (Porteous, J.), a case involving allegations that an insurer

failed to make sufficient payments on a Hurricane Andrew loss, the court agreed with the

reasoning in Premium Finance, and held that "the requirements of La. R.S. 22:1220 do not apply

to post-litigation behavior by an insurance company, particularly insofar as the insurer has any

obligation to promote settlement." Id. at *6.

The courts' reasoning in construing Section 22:1220 in Premium Finance and Husseiny is

equally applicable to Section 22:658, and is equally applicable to a bad faith claim arising from a

first-party property insurance claim. It would create absurd results to allow Xavier to attempt to

prove a bad faith claim based on Travelers' decisions on when and how to make settlement

offers after suit was filed, in view of the parties' litigation positions, this Court's ruling, the Fifth

Circuit appeal and legal advice of its counsel. As Xavier would have it, the alleged violation of

Section 22:658 could continue indefinitely as long as the insured continues to provide additional,

even duplicative documents to the insurer. If Xavier provided a few additional documents a

month before trial, it could then ask Travelers' witnesses questions at trial about why they did

not make a settlement offer based on those documents. To allow Xavier to pursue a bad faith

claim based on Travelers' conduct during the course of this lawsuit would open a Pandora's box

of legal issues relating to the attorney-client privilege and Fed. R. Evid. 408. That is clearly not

the intent of the statute. In states, such as Florida, where post-litigation conduct can give rise to

bad faith, the bad faith claim cannot even be brought unless and until the insured first prevails on

coverage in a breach of contract suit. See Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.

2d 1289, 1291 (Fla. 1991).

In arguing that Section 22:658 applies to post-litigation conduct, Xavier cites <u>Harris v. Fontenot</u>, 606 So. 2d 72 (La. Ct. App. 3d Cir. 1992) and <u>Theriot v. Midland Risk Ins. Co.</u>, 664 So. 2d 547 (La. Ct. App. 3d Cir. 1995), <u>rev'd,</u> 694 So.2d 184 (La. 1997) but those cases are clearly distinguishable and <u>Theriot</u> was reversed by the Louisiana Supreme Court.  In <u>Harris</u>, the alleged violation of Section 22:658 was the liability insurer's failure to pay a settlement amount on a personal injury claim within 30 days after the agreement was reduced to writing.  Such a violation by its very nature typically occurs <u>after</u> suit has been filed and a settlement subsequently reached.  <u>Harris</u>, 606 So. 2d at 72.  In <u>Harris</u>, the settlement was reached seven months after suit was filed, and the violation occurred 30 days after the settlement agreement. <u>Id.</u>  The <u>Harris</u> court's criticism of <u>Premium Finance</u> was dicta, and failed to consider the myriad contexts in which La. Rev. Stat. § 22:658 can apply or the practical implications of extending the application of the statute to post-litigation conduct on a first-party property insurance claim.

Xavier fails to inform the Court that the Louisiana Third Circuit opinion in <u>Theriot</u>, on which Xavier relies, was reversed by the Louisiana Supreme Court.  <u>See Theriot v. Midland Risk Ins. Co.</u>, 694 So. 2d 184, 193 (La. 1997).  The Third Circuit opinion is inapposite because the court concluded that the insurers' settlement offers <u>before</u> suit was filed were unreasonably low and therefore in violation of Section 22:1220.  <u>Theriot</u>, 664 So. 2d at 549-50.

In sum, to apply Section 22:658 "prospectively" in the manner Xavier advocates would be contrary to the plain terms of the Policy, contrary to the caselaw and contrary to common sense.

## CONCLUSION

For all of the foregoing reasons, Xavier's motion for partial summary judgment on the retroactivity of Act 813 should be denied.

Respectfully submitted,

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR., T.A., #19755
RALPH S. HUBBARD III, #7040
LUGENBUHL, WHEATON, PECK,
RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195

Stephen E. Goldman (pro hac vice)
Christopher J. Hug (pro hac vice)
Wystan M. Ackerman (pro hac vice)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:     (860) 275-8255
Facsimile:     (860) 275-8299

Attorneys for Travelers Property
Casualty Company of America

## CERTIFICATE OF SERVICE

I hereby certify that, on September 11, 2007, a copy of the foregoing was filed

electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be

sent to all counsel of record by operation of the Court's electronic filing system.

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR.