UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 |
| | * | |
| PERTAINS TO: | * | SECTION "K" MAG "2" |
| INSURANCE (XAVIER UNIVERSITY | * | JUDGE DUVAL |
| OF LOUISIANA V. TRAVELERS | * | MAGISTRATE WILKINSON |
| CASUALTY PROPERTY COMPANY | * | |
| OF AMERICA NO. 06-516) | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OF AMICI CURIAE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING COLLATERAL SOURCE RULE</u>**

**<u>MAY IT PLEASE THE COURT:</u>**

This memorandum is submitted by the undersigned insurance companies, all of whom are defendants in various cases pending before this Court as part of *In re Katrina Canal Breaches Consolidated Litigation*, as *amici curiae*, in opposition to Plaintiff's Motion for Partial Summary Judgment Regarding Collateral Source Rule.

INTRODUCTION

Plaintiff seeks a determination from this Court that the collateral source rule prevents the Defendant from offsetting against Plaintiff's losses any amounts recovered by Plaintiff under a policy of flood insurance issued pursuant to the National Flood Insurance Program ("NFIP"). Significantly, a large part of Plaintiff's argument is premised on the assumption that its Travelers policy and its NFIP policy provided overlapping coverages for losses caused by the levee failures.

1

This proposition has been unequivocally rejected by the Fifth Circuit in *In Re Katrina Canal Breaches Litig.*, ___ F.3d ___, 2007 WL 2200004 (5th Cir. Aug. 2, 2007).

Plaintiff's attempt to obtain a double recovery for the same losses under insurance policies that provide mutually exclusive coverages should not be allowed. To do so would contravene the fundamental indemnity principle that underlies all insurance policies. The purpose of insurance is only to compensate an insured for the loss sustained, not to provide a windfall above such amount.

The collateral source rule simply has no application in this context. First, the collateral source rule does not apply to breach of contract actions. Second, the collateral source rule applies only to payments made by a third party payer to reimburse the plaintiff for losses caused by the defendant. Here, Plaintiff contends that its losses were caused by the failure of the levees. Plaintiff does not contend that it was reimbursed under its NFIP policy for damage to its property caused by Travelers. Finally, the collateral source rule does not apply to a situation such as this where different insurance policies provide coverage for different perils.

For these reasons, as discussed more fully below, Plaintiff's motion should be denied.

## ARGUMENT

I.  PLAINTIFF'S RECOVERY PURSUANT TO ITS COMMERCIAL PROPERTY INSURANCE POLICY, IF ANY, IS LIMITED TO ANY *PREVIOUSLY UNCOMPENSATED* LOSSES COVERED BY THEIR HOMEOWNERS POLICY

   A.  Plaintiff Is Not Entitled to a Double Recovery

Plaintiff seeks by its motion for summary judgment to have this Court determine as a matter of law that, should Plaintiff succeed at trial in establishing that it has sustained a covered loss under its commercial property insurance policy, Travelers is not entitled to an offset for payments that have already been made to Plaintiff under its flood policy issued pursuant to the

National Flood Insurance Program ("NFIP"). Although Plaintiff maintained two separate and distinct policies of insurance, covering losses caused by two separate and distinct perils, "that does not equate to double coverage in the event of a given loss." *Ferguson v. State Farm Ins. Co.*, No. 06-3936, 2007 WL 1378507, at *4 (E.D. La. May 9, 2007) (Berrigan, J.).

It is universally agreed that the fundamental purpose of property insurance contracts is indemnity. *See Wright v. Assurance Co. of Am.*, 31-578, p. 3 (La. App. 2 Cir. 2/24/99), 728 So.2d 974, 975. The concept of indemnity is directed at restoring the insured to the position he or she occupied prior to the loss; "[h]ence, both the extent and the limitation of recovery is found in the concept of making good the loss which the insured has sustained." 12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 175:5 (3d ed. 2006). Accordingly, it has long been understood that an insured is entitled to receive only the amount that will indemnify actual loss, not an additional windfall above this amount.[1] As explained by the Louisiana Supreme Court almost two centuries ago, "the assured may insure again and again the same property, against the same risks, if he will pay the premium; *but he can recover but one indemnity*." *Millaudon v. W. Marine & Fire Ins. Co.*, 9 La. 27, 32 (1836) (emphasis added).[2]

Indeed, numerous courts that have addressed the issue in other Hurricane Katrina cases have expressly rejected the double recovery regime advanced by Plaintiff in this case. For instance, in *Esposito v. Allstate Insurance Co.*, No. 06-1837, 2007 WL 1125761 (E.D. La. Apr.

---

[1] *See Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967) (Florida law) ("[T]he cardinal principle is that the purpose of the insurance contract is to indemnify the owner against loss, that is, to place him in the same position in which he would have been if no fire had occurred."); *see also* 15 William Shelby McKenzie & H. Alston Johnson, III, *Louisiana Civil Law Treatise: Insurance Law and Practice* § 312 (3d ed. 2006) ("[I]nsurance should be a device for making a person whole after a loss is suffered rather than a way in which he might increase his wealth . . . .").

[2] *See also Cole v. Celotex Corp.*, 599 So. 2d 1058, 1080 (La. 1992) ("'As a general rule the claimant may recover under all available coverages provided that there is no double recovery.'") (quoting 15A George J. Crouch, *Couch on Insurance* § 56:34 (2d ed. 1983)).

16, 2007), Judge Zainey granted Allstate's motion for summary judgment in which it sought an offset for what the plaintiff, a Mr. Esposito, had previously received under his flood policy. *See id.* at *1-2. In particular, Mr. Esposito had previously received $185,265 under his flood policy for damage to the dwelling structure. *Id.* at *1. He then sued Allstate under his homeowners policy, "contend[ing] that wind caused a total loss of the property and . . . seek[ing] the full policy limits on his homeowner's policy." *Id.* Judge Zainey granted Allstate's motion for summary judgment, explaining:

> Esposito is entitled to recover in this lawsuit any *previously uncompensated* losses that are covered by his homeowner's policy *and which when combined with his flood proceeds do not exceed the value of his property*. Esposito is not entitled to obtain a windfall double recovery by now recharacterizing as wind damage those losses for which he has already been compensated by previously attributing them to flood waters.

*Id.* at *2; *see also Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007) (Vance, J.) (recognizing "the well-established propositions that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than her loss"); *Ware v. State Farm Fire & Cas. Co.*, No. 06-4908, *slip op.* at 4 (E.D. La. July 26, 2007) (Zainey, J.) (holding that "Plaintiff can recover for any *previously uncompensated* damages to his home that he can prove are covered by his homeowners policy. However, Plaintiff is not entitled to recover in this lawsuit for damages that he previously attributed to flood in order to obtain payment under his flood policy.") (emphasis in original).

Judge Feldman has also recently recognized that plaintiffs "may not enjoy a double recovery for the same lost property" under their flood and homeowners policies. *Wellmeyer v. Allstate Ins. Co.*, No. 06-1585, 2007 WL 1235042, at *2 (E.D. La. Apr. 26, 2007) (Feldman, J.); *see id.* at *2-3 & n.2 (citing cases); *cf. also Louque v. State Farm Fire & Cas. Co.*, No. 06-2881, 2007 WL 1343636, at *2 (E.D. La. May 4, 2007) (McNamara, J.) (observing that "an insured

cannot recover twice for a single loss"); *see also Ferguson*, 2007 WL 1378507, at *3 (noting that "the fundamental purpose of property insurance is indemnity, not profit"); *Boudoin v. State Farm Ins. Cos.*, No. 06-1656, 2007 WL 2066853, at *4 (W.D. La. July 13, 2007) (Melancon, J.) (holding that plaintiffs were not entitled to a double recovery).[3]

Enforcing the terms of the insurance policies and applying the indemnity principle will not, as Plaintiff argues, provide a "windfall" to Travelers. Plaintiff paid premiums under its separate flood and commercial property policies in exchange for insurance coverage against losses caused by separate and distinct perils, but Plaintiff's payment of such premiums does not entitle it to recover twice for the same damage on mutually inconsistent factual theories. By seeking such a double recovery, it is Plaintiff, not Travelers, who is demanding a windfall.[4]

> B. Plaintiff's Commercial Property and Flood Policies
> Provide Mutually Exclusive Coverages

Offset is required here for the additional reason that Plaintiff's commercial property insurance policy does not cover flood damage. Indeed, much of Plaintiff's argument is premised on the assumption that its commercial property policy provided coverage for flood resulting from

---

[3] *See also Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 622 (Tex. App. 2005) (owner of building covered by two policies was not entitled to receive any additional money for hail damage claim after one insurer paid the entire amount; the owner was fully compensated and was not entitled to payment from other insurer); *Holden v. Connex-Metalna Mgmt. Consulting GmbH*, 302 F.3d 358, 365-66 (5th Cir. 2002) (applying Louisiana law) (holding that where two policies (one specific and one general) provided overlapping coverage for same property, coverage under the specific policy must first be exhausted before coverage arises under general blanket policy).

[4] Plaintiff suggests that the Court should ignore the indemnity principle because there is no risk of a "moral hazard" in this case. (Pl. Br. at 22.) However, the risk of a "moral hazard" is to be avoided at the outset, by applying the indemnity principle in order to prevent an insurance policy from becoming a "a wagering pact," which contravenes "public policy and good morals." *Wright*, 31-578, p. 3, 728 So.2d at 975-76. The concept of "moral hazard" does not allow a court to ignore the indemnity principle on an ad hoc basis based upon its determination of whether the insureds contributed to their loss. Further, allowing an insured to take inconsistent positions in order to obtain coverage under policies insuring different risks certainly implicates the "moral hazard" doctrine.

5

the levee breaches. (Pl. Br. at 6, 22.) However, that argument has now been expressly rejected by the Fifth Circuit. *See In Re Katrina Canal Breaches Litig.*, 2007 WL 2200004, at *25 (holding that the flood exclusions in Travelers' and other insurers' policies unambiguously excluded damages caused by flooding resulting from levee failures). Accordingly, to the extent that part of a plaintiff's loss is attributable to flood and is compensated under a flood policy, that portion of the loss is not covered by a homeowners or commercial property policy, and the flood payment necessarily reduces the amount of the loss that might be found to be covered under the homeowners or commercial property policy.

Ignoring the different coverage provided by the two policies, Plaintiff argues that the well-established indemnity principle limiting it to a single recovery may not be applied absent policy language expressly adopting it. (Pl. Br. at 9-10.) First, Plaintiff has cited no Louisiana authority directly supporting this proposition and Louisiana courts do not require express policy language incorporating general principles of insurance law in order for those principles to apply. To the contrary, express language would be needed to depart from basic indemnity principles. *See Millaudon*, 9 La. at 32 ("It appears to be a settled principle, that if the subsequent policy *contain no provision in respect to prior insurances*, the amount of insurable interest for such policy will be the same as for the first, for the assured may insure again and again the same property, against the same risks, if he will pay the premium; but he can recover but one indemnity . . . .") (emphasis added).

Second, because of the mutually exclusive coverages provided by the policies, no such language is required. The policy language plainly and unambiguously excludes from coverage any losses caused by water damage, including flooding; therefore, it would be repetitive and

6

pointless for the policy to also specifically provide that any recovery under the policy will be reduced by the amount of damage caused by flooding.

Further, that case law which is cited by Plaintiff provides no support for its argument. Plaintiff's quote from a previous ruling by this Court (Pl. Br. at 10 & n.31) is taken out of context, as the Court's ruling in that instance was addressed only to the interpretation of water damage exclusions in various insurers' policies and in no way addressed or discussed the indemnity principle or the separate question of the extent of an insured's ability to recover assuming the loss was not excluded.[5] The only other authority cited by Plaintiff is a Nevada case, *Phelps v. State Farm Mutual Automobile Insurance Co.*, 917 P.2d 944 (Nev. 1996). (Pl. Br. at 10-11.) In *Phelps*, plaintiff sustained personal injuries in an employment-related car accident. He made claims against his employer's underinsured/uninsured motorist policy, a workers' compensation policy, and a private disability insurance policy, which all provided coverage for a job-related personal injury. *Id.* at 946. The court held that where there was *overlapping* coverage, the policy should indicate which funds can be offset. *See id.* at 948-49. Accordingly, even if it were consistent with the law of Louisiana, *Phelps* is simply inapposite where the two policies in question provide coverage for different events, as the Fifth Circuit has made clear is the case here.

More to the point are cases addressing policies that provide for mutually exclusive coverages. As Judge Berrigan has explained: "While it is true that plaintiffs paid for two separate policies, one homeowner and one flood, that does not equate to double coverage in the

---

[5] In any event, the Court's ruling has since been reversed by the Fifth Circuit. *See In re Katrina Canal Breaches*, 2007 WL 2200004, at *28.

7

event of a given loss. The flood policy is not excess insurance." *Ferguson*, 2007 WL 1378507, at *4.

For example, in *State Farm Fire & Casualty Co. v. Griffin*, 888 S.W.2d 150 (Tex. App. 1994), the plaintiffs were insured under both a fire policy (which excluded flood loss) and a flood policy (which excluded loss from fire). *See id.* at 152. Rejecting the plaintiffs' argument that the amount of a prior flood payment should not have been offset against the recovery under a homeowners' policy, the court explained that failing to allow the offset would have caused the insurer to pay more than its contractual obligations. "[I]t would have allowed the [plaintiffs] to recover twice for a loss they incurred only once, and would have allowed the [plaintiffs] to recover under the homeowners' policy for a flood loss, which was a type of loss expressly excluded from coverage under the homeowners' policy." *Id.* at 157. The same principle requires offset of flood payments in the instant case.[6]

Plaintiff attempts to distinguish *Griffin* on the grounds that Plaintiff's commercial property policy provided overlapping coverage for flood damage on the facts of this case. (Pl. Br. at 22.) As noted above, that argument has been rejected by the Fifth Circuit. For the same reason, Plaintiff's argument that the *Griffin* court failed to consider the windfall that would result to the insurer fails. There was no windfall to the insurer in *Griffin* and none is sought by the insurer in this case for the simple reason the Plaintiff did not pay, and Travelers did not collect, premiums for flood damage, a loss excluded by the terms of its policy.

---

[6] Offsetting NFIP payments will not, as Plaintiff suggests, allowed insureds "who did not receive NFIP payments [to] receiv[e] one hundred percent of coverage while insureds who procured NFIP coverage [would] receiv[e] less from the insurers." (Pl. Br. at 18.) Persons without NFIP coverage can only recover their covered losses. The fact that they do not have flood coverage means only that they will not recover from any insurer for losses due to flood. It is twisted logic to suggest that, because some people did not have flood insurance, those persons who did should be allowed a double recovery for mutually exclusive losses.

C.   Plaintiff's Mischaracterization of the NFIP and the
     Payments Made Under Its Flood Insurance Policy
     <u>Does Not Allow It to Obtain Multiple Indemnifications</u>

In another effort to avoid the indemnity principle, Plaintiff seeks to recharacterize its flood insurance policy and the entire National Flood Insurance Program ("NFIP") as a benevolent public grant. (Pl. Br. at 7-8.) There is no basis for the argument that payments under the Standard Flood Insurance Policy ("SFIP") do not constitute insurance benefits or are somehow exempt from the indemnity principle. Established by the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001 to 4129, as amended, and administered by the Federal Emergency Management Agency ("FEMA"), the NFIP offers both subsidized and actuarially rated flood insurance policies to eligible residential and commercial property owners.[7] Eligible property owners may purchase federal flood insurance policies either directly from FEMA or through private insurance companies that participate in the NFIP as "Write Your Own" ("WYO") companies.[8] WYO companies act as fiscal agents of the federal government, which bears the risk of loss, and claims are paid with federal funds as a direct charge on the United States Treasury.[9]

Citing the unique structure of the NFIP and a September 21, 2005 FEMA memorandum authorizing expedited claims handling processes in the wake of Hurricane Katrina, Plaintiff contends that the purpose of its flood insurance payments was merely to provide a general disaster relief benefit. (Pl. Br. at 7-8.) Though funded by the federal government and offered at

---

[7] *See* 42 U.S.C. § 4011(a); 44 C.F.R. §§ 62.23, 62.24 (2006); National Flood Insurance Program; Assistance to Private Sector Property Insurers, 48 Fed. Reg. 46789 (Oct. 14, 1983) (codified at 44 C.F.R. parts 61 and 62).

[8] *See* 44 C.F.R. § 61.13(f) (2006); *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 267 (3d Cir. 2004) (more than 90% of flood policies are written by WYO companies).

[9] *See* 42 U.S.C. §§ 4017(d)(1), 4071(a)(1); 44 C.F.R. §62.23(g) (2006).

subsidized rates in certain cases, the fact remains that the SFIP is an insurance contract.  *See Wright v. Dir., Fed. Emergency Mgmt. Agency*, 913 F.2d 1566, 1570 (11th Cir. 1990); *Lynch v. United States*, 292 U.S. 571, 576-77 (1934).  That FEMA and WYO carriers expedited the handling of flood insurance claims following the extensive losses suffered in the wake of Hurricanes Katrina and Rita does not somehow convert payments under those policies into general disaster aid.

Moreover, the expedited procedures adopted by FEMA reflected a recognition of the widespread *flood* damage that followed Hurricane Katrina.  *See* Maurstad memo at 1 ("The numbers and severity of Katrina *flood losses* are unprecedented in the history of the [NFIP].") (emphasis added); *see also id.* ("FEMA, with the help of claims experts from some of our WYO companies, has sought to identify *characteristics of flood claims* that would lend those losses to an expedited claim handling process.") (emphasis added).  The federal government clearly did not make a policy decision to blindly pay SFIP benefits irrespective of whether covered properties suffered any flood damage (Pl. Br. at 8).  To do so would run contrary to the very purpose for which the NFIP was created.  "[T]he principal purpose in enacting the NFIP was to reduce through the implementation of adequate land use controls and the availability of subsidized flood insurance, the massive and ever increasing burden of federal flood disaster assistance."  *United States v. Parish of St. Bernard*, 756 F.2d 1116, 1122 (5th Cir. 1985).  Accordingly, the NFIP was created specifically to reduce the need for federal expenditures for disaster relief assistance, not to expand such expenditures.

II.     <u>The Collateral Source Rule Is Inapplicable</u>

Plaintiff seeks to circumvent the fact that it cannot collect twice for the same property loss by arguing that the collateral source rule permits it to obtain a double recovery.  But the

collateral source rule is not applicable to this case for at least three independent but interrelated reasons.

>   A.   The Collateral Source Rule Does Not Apply
>        to Property Insurance Coverage Disputes

"Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." *Bozeman v. State*, 03-1016, p. 9 (La. 7/2/04), 879 So.2d 692, 698. The collateral source rule – which by its terms pertains to tortfeasors or similar wrongdoers – is facially inapposite because this is a breach of contract case. "Rules applicable to recovery in tort do not apply to an action on a contract of insurance." *Campbell v. Markel Am. Ins. Co.*, 00-1448, p. 8 (La. App. 1 Cir. 9/21/01), 822 So.2d 617, 622-23.

Numerous jurisdictions have recognized the fundamental distinction between tort and breach of contract cases and have refused to apply the collateral source rule to contract actions. *See Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 430 F. Supp. 2d 984, 986-87 (N.D. Cal. 2006); *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 145 P.3d 638, 644 (Ariz. Ct. App. 2006); *Daniel Constr. Co. v. Int'l Union of Operating Eng'rs, Local 513*, 570 F. Supp. 299, 303 (E.D. Mo. 1983), *aff'd*, 738 F.2d 296 (8th Cir. 1984).[10]

Plaintiff argues that the wholesale expansion of the collateral source rule to cases alleging a breach of an insurance contract is justified by *Louisiana Department of Transportation & Development v. Kansas City Southern Railway Co.*, 03-2349 (La. 5/20/03), 846 So.2d 734

---

[10] The Louisiana's Supreme Court, in *Bozeman v. State*, 03-1016 (La. 7/02/04), 879 So.2d 692 (1) recognized that Louisiana courts have adopted the "common-law based" collateral source rule; and (2) quoted and thereby adopted the Restatement (Second) of Torts' explication of the doctrine. *See id.* at pp. 8-9, 879 So.2d at 697-98 (quoting Restatement (Second) of Torts § 920A (1979)). Consequently, while non-Louisiana jurisprudence is not controlling, the Court may appropriately consider it instructive.

("*Kansas City Southern*"). (Pl. Br. at 13-14.) As discussed below, nothing in the case supports this notion. Indeed, in *Bozeman* – decided a year after *Kansas City Southern* – the Louisiana Supreme Court made clear that the collateral source rule remains firmly moored to its tort-based roots:

> The major policy reason for applying the collateral source rule to damages has been, and continues to be, tort deterrence. The underlying concept is that tort damages can help to deter unreasonably dangerous conduct. *Tort deterrence has been an inherent, inseparable, aspect of the collateral source rule since its inception over one hundred years ago.*

*Bozeman*, 03-1016, at p. 12, 879 So.2d at 700 (emphasis added, citation omitted). Plaintiff offers no explanation as to why this Court should break from long-standing policy and apply the collateral source rule to breach of insurance contract cases.

Admitting that no Louisiana court has held that the collateral source rule may be applied in a breach of contract action (Pl. Br. at 16), Plaintiff cites a handful of cases from other jurisdictions that purport to apply the collateral source rule in breach of contract cases. Many of these cases are no longer good law or are otherwise unavailing. For example, *Roundhouse v. Owens-Illinois, Inc.*, 604 F.2d 990 (6th Cir. 1979) (applying Michigan law) (Pl. Br. at 15), has been displaced by the Michigan Supreme Court's subsequent ruling that the "collateral source rule does not apply in cases of common-law contract." *Corl v. Huron Castings, Inc.*, 544 N.W.2d 278, 286 (Mich. 1996).[11]

---

[11] *Hartnett v. Riveron*, 361 So. 2d 749 (Fla. Dist. Ct. App. 1978) (Pl. Br. at 15 n.54), was an insurance *fraud* case, so the court's comments relating to contract actions were *dicta* and have been subsequently dismissed as such. *See City of Miami Beach v. Carner*, 579 So. 2d 248, 254 (Fla. Dist. Ct. App. 1991) (holding collateral source rule inapplicable in pure breach of contract cases and distinguishing *Hartnett* on ground that "statement therein on use of the collateral source rule was clearly dicta"). And while the court in *In re Emergency Beacon Corp.*, 48 B.R. 341, 350 (S.D.N.Y. 1985) (Pl. Br. at 15 n.57), suggested the collateral source rule could apply to breach of contract claims, the same court has more recently held otherwise. *See Garofalo v. Empire Blue Cross & Blue Shield*, 67 F. Supp. 2d 343, 347 (S.D.N.Y. 1999) ("[T]o the extent [plaintiff's] remaining claims are for breach of contract, the collateral source rule does not apply because 'no one should profit more from the breach of an obligation than from

*(cont'd)*

12

Moreover, the overwhelming weight of authority is to the contrary.[12]  As explained by the Iowa Supreme Court, "damages in the breach of contract setting are intended to be compensatory only, not punitive in nature.  Application of the common-law collateral source rule in contract actions would contravene this principle by awarding the nonbreaching party more damages than necessary to compensate it for the breach."  *Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 830 (Iowa 1998).

> B.   The Collateral Source Rule Does Not Apply Because the
>      Injury to Plaintiffs' Property Was Not Caused by Its Insurer

As the authorities cited above make clear, the collateral source rule is intended to prevent a "tortfeasor" or similar "wrongdoer" from deriving a benefit from a collateral source of compensation for an injury *caused by the wrongdoer.  See Atmel Corp.*, 430 F. Supp. 2d at 986-87 (collateral source rule does not apply where the insurer is not the tortfeasor and the

_____
*(cont'd from previous page)*
its full performance.'") (citation omitted).  As to *Insurance Co. of North America v. Kayser-Roth Corp.*, No. C.A. PC 92-5248 (R.I. Super. Ct. July 29, 1999) (Pl. Br. at 15 n.58), the Rhode Island Supreme Court decision in that case (not cited by Plaintiff) makes clear that it should be limited to its specific facts.  The Rhode Island Supreme Court recognized the general rule that insurers are entitled to set-off amounts paid or which should be allocated to settling insurers.  *See Ins. Co. of N. Am. v. Kayser-Roth Corp.*, 770 A.2d 403, 413-14 (R.I. 2001).  Among other factors, the general rule was supported by the indemnity principle, "'a fundamental principle of insurance law which prohibits insurance contracts from conferring a benefit greater than the insured's loss.'"  *Id.* at 414 (quoting *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1452 (3d Cir. 1996)).  In *Kayser-Roth*, however, set-off was not allowed because the insurance company was prohibited from introducing evidence of other insurance as a discovery sanction.  In addition, while other insurers had engaged in good faith, contemporaneous settlement negotiations, the court found that the non-settling insurer did not negotiate in good faith so that it could wait and see what the other insurers did.  *See id.*, 770 A.2d at 412-14.

[12] *See generally* 22 Am. Jur. 2d *Damages* § 394 (2003) (stating the collateral source rule "is held inapplicable to breach-of-contract recoveries"); *Centon Elecs., Inc. v. Bonar*, 614 So. 2d 999, 1004 (Ala. 1993) ("collateral source rule is not applicable to a claim for breach of contract"); *Grover v. Ratliff*, 586 P.2d 213, 215 (Ariz. Ct. App. 1978) ("collateral source rule is a concept of damages in tort cases and does not apply to an ordinary breach of contract case"); *Bramalea Cal., Inc. v. Reliable Interiors, Inc.*, 14 Cal. Rptr. 3d 302, 305 (Ct. App. 2004) ("collateral source rule applies to tort damages, not to damages for breach of contract"); *Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 830 (Iowa 1998) ("We conclude based on logic and weight of authority from other jurisdictions, that the common-law collateral source rule should not apply in pure breach of contract actions.").

monies paid by the other source were not compensation for tort damages caused by the tortfeasor); *Midland Mut. Life*, 579 N.W.2d at 829 ("Generally, payments to which the collateral source rule applies . . . are payments made by a third party to compensate the plaintiff for injuries caused by the defendant."). Plaintiff does not claim that the money from his NFIP policy reimbursed him for harm caused to his house and its contents by Travelers. To the contrary, Plaintiff specifically alleges that the damage to his property was caused by the failure of the levees and the negligence of the United States Army Corps of Engineers in the inadequate design and maintenance of the levees. (Pl. Br. at 6, 19.)  Thus, under Plaintiff's theory, the "wrongdoer" that caused his property damage is the Army Corps of Engineers, not Travelers. Under the collateral source rule, if Plaintiff were able to prove his liability theory, the Army Corps of Engineers would not be entitled to a setoff for monies that Plaintiff received from its insurers, i.e., Travelers and Plaintiff's NFIP insurer. Plaintiff's contention that Travelers must provide a double recovery for the damages allegedly caused by the Army Corps of Engineers turns the collateral source rule on its head. The reasoning of the court in *Bryant v. New Orleans Public Service, Inc.*, 406 So.2d 767 (La. Ct. App. 1981), *aff'd*, 414 So.2d 322 (La. 1982) (Pl. Br. at 23), is consistent with this view of the collateral source rule. In this case, Plaintiff's patrimony was not diminished by the actions of Travelers, but by the failure of the levees and the actions of the Army Corps of Engineers.

Plaintiff seeks to obfuscate the fact that there is no "tortfeasor" in this case and that the would-be "collateral source" (its flood insurance) did not reimburse it for a loss caused by Travelers by arguing that the Louisiana Supreme Court's decision in *Kansas City Southern* radically liberalized the collateral source rule in Louisiana. Plaintiff is wrong. In *Kansas City Southern*, the Louisiana Supreme Court applied the collateral source rule in a case where the

14

environmental contamination for which recovery was sought *was caused by the defendant*. In doing so, it saw a perfect congruity between a polluter under the environmental statutes and a tortfeasor. As the court explained, "[l]ike conventional tort cases, environmental law statutory remedies involve claims to recover damages for harm *caused by a defendant's acts*." *Id.* at p. 10, 846 So.2d at 741 (emphasis added). Thus, the polluter, though not a traditional tortfeasor, was nevertheless a "wrongdoer" for the purposes of the collateral source rule. The court further explained that environmental pollution cases implicated the same "compelling public policy reasons" as tort cases: "When applying environmental laws, the concern prompting the collateral source rule's goals of tort deterrence and accident prevention is especially implicated, although in the context of deterring future acts in violation of the [environmental statutes]." *Id.* at pp. 10-11, 846 So.2d at 741. Therefore, the court concluded that a "wrongdoer's liability should not be reduced by the amount of collateral source payments to an injured plaintiff." *Id.* at p. 14, 846 So.2d at 743. The court also emphasized that its holding was "a narrow one," confined to "the circumstances of this case." *Id.* at p. 17, 846 So.2d at 745.

No such congruity exists in this case. Here, the harm to Plaintiff's property, reimbursed by flood insurance, was not "caused by a defendant's acts." *Id.* at p. 10, 846 So.2d at 741. And the goal of "tort deterrence and accident prevention" is most assuredly not served by compelling an insurer to pay a policyholder a second time for property damage caused by external events for which the policyholder has already been fully compensated.

Further, even the contract cases relied upon by Plaintiff show that the rule would not apply in a situation where the plaintiff's injuries were not caused by the defendant. For example, in *Hall v. Miller*, 465 A.2d 222 (Vt. 1983) (Pl. Br. at 14-15), the basis for liability was the defendants' sale of cattle contaminated with brucellosis. *Id.* at 225-26. The court applied the

15

collateral source rule so as to deny the defendants an offset for the payments received by the plaintiffs for the destroyed cattle under government indemnification programs – *i.e.*, payments that compensated plaintiffs for the very damage purportedly caused by the breach of warranty. *Id.* at 226-27. This rationale has no application here, where Traveler's alleged breach of contract did not cause the property damage sustained by Plaintiff.

Similarly, in *Protection Sprinkler Co. v. Lou Charno Studio, Inc.*, 888 S.W.2d 422 (Mo. Ct. App. 1994) (Pl. Br. at 16-17.), the defendant's breach of contract caused the losses for which the plaintiff sought to recover. *See id.* at 423-24.[13] As with *Hall*, the reasoning in *Protection Sprinkler*, has no application here where the damage to Plaintiff's property pre-dated Plaintiff's claims against his insurers and would have been sustained in any event. The issue here is whether Plaintiff can recover twice for the same loss from different insurers.

Plaintiff cannot circumvent clear precedent defining the scope of the collateral source rule by turning it on its head and arguing that the Defendant is not entitled to a "collateral source credit." (Pl. Br. at 18.) Plaintiff cites *Merchants Mutual Insurance Group v. Orthopedic Professional Association*, 480 A.2d 840 (N.H. 1984) in support of this proposition. (Pl Br. at 19-20). However, *Merchants Mutual* represented a straightforward application of the collateral source rule in a tort case. In *Merchants Mutual*, the court relied on the collateral source rule to hold that recovery under uninsured motorist coverage could not be reduced to reflect workers' compensation benefits received by the plaintiff. *See id.* at 844. An uninsured motorist carrier is

---

[13] *Masterson v. Boliden-Allis, Inc.*, 865 P.2d 1031 (1993) (Pl. Br. at 15 n.55) is also distinguishable on this basis. *See id.* at 23-24, 865 P.2d at 1033. Further, like the other cases cited by Plaintiff, it is contrary to the overwhelming weight of authority on this issue. *See Midland Mut. Life*, 579 N.W.2d at 830 (rejecting *Masterson* as a minority view).

effectively in the position of the tortfeasor's insurer and, therefore, may be subjected to the collateral source rule to the same extent as the tortfeasor.[14]

Plaintiff also relies upon *DePalma v. Westland Software House*, 276 Cal. Rptr. 214 (Cal. Ct. App. 1990) (Pl. Br. at 18). However, *DePalma*, which does not involve insurance at all, stands only for the irrelevant proposition that, in a breach of contract action, tax benefits should not be considered in the damages calculus. *Id.* at 218. The court noted that any tax benefits are likely to be offset by subsequent tax consequences, *id.* at 218-20, and that estimating tax benefits would be speculative, *id.* at 220-21. In this case, however, the amount of flood payment received by Plaintiff is fixed and known. *DePalma* simply has no relevance to the issue before this Court.

### C. The Collateral Source Rule Has No Application to Payments Made Pursuant to Insurance Policies Providing Coverage for Mutually Exclusive Risks

"The collateral source rule applies only when the indemnity or compensation *is for the same injury* for which damages are sought." *Baugh v. Alexander*, 767 So. 2d 269, 272 (Miss. Ct. App. 2000) (emphasis added). Here, Plaintiff's commercial property policy and flood policy insured against different and mutually exclusive perils. Failure to offset the amount of flood payments received by Plaintiff would have the effect of requiring Travelers to pay for a risk that is excluded under the policy. *See Griffin*, 888 S.W.2d at 157; *see also Ferguson*, 2007 WL

---

[14] The other uninsured motorist cases cited by Plaintiff further illustrate the irrelevance of this line of authority. For example, in *Van Tassel v. Horace Mann Insurance Co.*, 207 N.W.2d 348 (Minn. 1973) (Pl. Br. at 19 & n.69), the court's limitation on the "other insurance" offset provision of the policy was based upon its construction of the underinsured motorist statute, which it read as precluding the limitation in the policy. *See id.* at 350-52. No similar statute is at issue here. Further, in *Van Tassel*, the court held that the plaintiff could "stack" the coverages provided by the uninsured motorist provisions in each of four applicable policies, but only *up to the full amount of the plaintiffs' damages*. *Id.* at 349, 351-52. Similarly, in *Stout v. AMCO Insurance Co.*, 645 N.W.2d 108, 112-14 (Minn. 2002) (Pl. Br. at 19 n.70), the court's holding was based upon a no-fault insurance statute that expressly precluded coordination of benefits.

1378507, at *4 (observing that maintenance of separate insurance policies covering distinct perils did not result in double coverage for a given loss); *Boudoin*, 2007 WL 2066853, at *4 (holding that plaintiffs could not recover twice for mutually exclusive risks and, therefore, the court did not need to reach the collateral source rule).  The collateral source rule is, therefore, irrelevant for this additional reason.

## CONCLUSION

For all the reasons set forth above, Amici respectfully request that Plaintiffs' Motion for Partial Summary Judgment Regarding Collateral Source Rule be denied.

>Respectfully submitted,
>
>/s/ Ralph S. Hubbard
>
>**RALPH S. HUBBARD, III, T.A., La. Bar #7040**
>**Defendants' Liaison Counsel**
>Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
>601 Poydras Street, Suite 2775
>New Orleans, LA  70130
>Telephone:  (504) 568-1990
>Facsimile: (504 310-9195
>E-Mail: rhubbard@lawla.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September 2007, a copy of the foregoing **MEMORANDUM OF AMICI CURIAE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING COLLATERAL SOURCE RULE** was filed electronically with the Clerk of Court using the CM/ECF System.  Notice of this filing will be sent to all known counsel of record by operation of the Court's electronic filing system and/or U.S. mail.

>/s/ Ralph S. Hubbard
>
>**RALPH S. HUBBARD (La. Bar #7040)**