## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 |
| | * | |
| PERTAINS TO: | * | SECTION "K" MAG "2" |
| INSURANCE (XAVIER UNIVERSITY | * | JUDGE DUVAL |
| OF LOUISIANA V. TRAVELERS | * | MAGISTRATE WILKINSON |
| CASUALTY PROPERTY COMPANY | * | |
| OF AMERICA NO. 06-516) | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM OF AMICI CURIAE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING RETROACTIVITY OF ACT 813

**MAY IT PLEASE THE COURT:**

This memorandum is submitted by the undersigned insurance companies, all of whom are defendants in various cases pending before this Court as part of *In re Katrina Canal Breaches Consolidated Litigation*, as *amici curiae*, in opposition to Plaintiff's Motion for Partial Summary Judgment Regarding Retroactivity of Act 813.

<u>INTRODUCTION</u>

Plaintiff seeks a determination from this Court that the 2006 amendments to LSA-R.S. 22:658 can be applied to the claims asserted in this litigation, notwithstanding the fact that such amendments did not become effective until August 15, 2006. Initially, it is clear that such amendments cannot be given retroactive effect. Under Louisiana statutory law, as well as Supreme Court precedent, is clear that legislation changing substantive law cannot be given

1

retroactive effect unless the legislature so states expressly in the legislative enactment itself.  It is undisputed that Act 813 contains no statement of retroactive effect.  Plaintiff attempts to fill this void by a highly inferential interpretation of the legislative history of the act.  However, because Louisiana law requires an explicit statement of retroactivity in the act itself, such legislative history is irrelevant.  Moreover, when carefully scrutinized, it is clear the legislative history upon which Plaintiff relies reveals no legislative intent that Act 813 be applied retroactively.  In addition, retroactive application of Act 813 would constitute an unconstitutional denial of due process and violation of the prohibition on ex post facto laws.

Alternatively, Plaintiff argues that Act 813 can be applied prospectively because Defendant owes a continuing duty of good faith to Plaintiff and Plaintiff has continued to supply documentation to Defendant.  This argument fails for three reasons.  First, Louisiana cases that have made the distinction between retrospective and prospective application of a new or amended penalty statute have made clear that a court must look at the earliest date when the plaintiff could have sued for violation.  Because it is the *earliest* date that is relevant, not the *last* event that Plaintiff might identify, the fact that Plaintiff continued to provide documentation after this lawsuit was filed does not permit application of the amendments to LSA-R.S. 22:658.  Second, Louisiana courts have rejected the proposition that violation of the insurance penalty statutes may be based upon an alleged continuing breach.  In the cases relied upon Plaintiff, as well as the other cases discussed by Amici below, there was a specific event that gave rise to a new and separate violation.  Louisiana courts have not held that new or amended penalty statutes may be applied based upon an insurer's alleged failure to remedy a violation that accrued prior to the new legislative enactment.  Finally, courts have held that violations of the penalty statutes cannot be based upon events that occur during bad faith litigation between the insured and

2

insurer. The cases relied upon by Plaintiff for the contrary proposition represent narrow exceptions to this general rule based upon facts not presented here.

Accordingly, for the reasons discussed below, Plaintiff's motion should be denied.

<u>ARGUMENT</u>

I.      <u>The 2006 Amendments to LSA-R.S. 22:658 Are Not Retroactive</u>

Under the version of LSA-R.S. 22:658(B)(1) in effect at the time of Hurricane Katrina and until August 15, 2006, the penalty provided for in that section was 25% of the amount found due to the insured and the statute did not provide for the recovery of attorney fees or costs. Although the Legislature has since amended LSA-R.S. 22:658(B)(1) to increase the penalty to 50% of the amount found due to the insured and to provide for the additional recovery of "reasonable attorney fees and costs," these amendments did not become effective until August 15, 2006. Act of June 30, 2006, No. 813, § 1, 2006 La. Sess. Law Serv. 1947, 1948 (West) (effective Aug. 15, 2006) (hereafter "Act 813"). Contrary to Plaintiff's position, "there is no support for the proposition that the 2006 amendment to LSA-R.S. 22:658 was intended to apply retroactively to causes of action that accrued before it went into effect." *Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 1017341, at *3 (E.D. La. Mar. 28, 2007) (Vance, J.); *accord Ferguson v. State Farm Ins. Co.*, No. 06-3936, 2007 WL 1378507, at *3 (E.D. La. May 9, 2007) (Berrigan, J.).

    A.      The 2006 Amendments to LSA-R.S. 22:658
            <u>Cannot Be Given Retroactive Effect</u>

The amendments to LSA-R.S. 22:658 cannot be given retroactive effect for two reasons. *First*, the Legislature did not expressly indicate in the enactment that the amendments were intended to apply retroactively. *Second*, the amendments are substantive in nature and, as such, cannot be applied retroactively in the absence of express legislative intent.

3

"No section of the Revised Statutes is retroactive unless it is *expressly* so stated." LSA-R.S. 1:2 (emphasis added). The Civil Code further provides that "[i]n the absence of contrary legislative expression substantive laws apply prospectively only." LSA-C.C. art. 6.[1] Significantly, article 6 further provides that "[p]rocedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." *Id.* The Civil Code, therefore, expressly distinguishes between substantive laws on the one hand and procedural or interpretative laws on the other. The distinction is key because, in harmonizing section 1:2 of the Revised Statutes with article 6 of the Civil Code, the Louisiana Supreme Court has held that LSA-R.S. 1:2, which requires an express statement of retroactivity, applies only to substantive statutes. *See, e.g., St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So. 2d 809, 816 (La. 1992).

Thus, as construed by the Louisiana Supreme Court, these provisions require a two-part inquiry before a statute can be applied retroactively: "First, we must ascertain whether *in the enactment* the legislature expressed its intent regarding retrospective or prospective application. If the legislature did so, our inquiry is at an end. If the legislature did not, we must classify the enactment as substantive, procedural or interpretative." *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1063 (La. 1992) (emphasis added). The first step, determining legislative intent, "is resolved by examining the *specific language contained in the act*." *St. Paul Fire & Marine Ins. Co.*, 609

---

[1] *See also* LSA-Const. art. III, § 19 ("All laws enacted during a regular session of the legislature shall take effect on August fifteenth of the calendar year in which the regular session is held . . . . However, any bill may specify an earlier or later effective date.").

So. 2d at 816-17 (emphasis added).  On its face, Act 813 contains no expression of legislative intent that the 2006 amendments to LSA-R.S. 22:658 be given retroactive effect.[2]

Because the 2006 amendments to LSA-R.S. 22:658 were not expressly made retroactive, they cannot be applied retroactively if they are deemed "substantive."  *See* LSA-C.C. art. 6; LSA-R.S. 1:2; *see also St. Paul Fire & Marine Ins. Co.*, 609 So. 2d at 822 ("[W]e conclude that this change in the law . . . is substantive and thus cannot be applied retroactively to rights and duties arising out of events which occurred prior to this change in the law.").  "Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that 'establish new rules, rights and duties or change existing ones.'"  *Manuel v. La. Sheriff's Risk Mgmt. Fund*, 95-0406 (La. 11/27/95), 664 So. 2d 81, 86 (quoting *St. Paul Fire & Marine Ins. Co.*, 609 So. 2d at 817).  An amendment changing the amount or nature of a statutory penalty is a substantive change in law because it creates a new right to penalty that did not previously exist and alters the consequences of a defendant's violation of a particular duty or obligation.  Accordingly, the 2006 increase in the amount of the penalties to which insurers are exposed under LSA-R.S. 22:658(B)(1) was a substantive change of law that cannot be applied retroactively.  *See Francis v. Travelers Ins. Co.*, 581 So. 2d 1036, 1044 (La. App. 1st Cir. 1991) (holding that 1986 amendment of LSA-R.S. 22:658 changing amount of proportionate penalty "was substantive in nature and will not be applied retroactively"); *accord Gulf Wide Towing, Inc.*

---

[2] *See* Act of June 30, 2006, No. 813, § 1, 2006 La. Sess. Law. Serv. 1947 (West); *see also Weiss*, 2007 WL 1017341, at *3 ("The legislature did not include such an expression [of retroactivity] in 2006 La. Acts No. 813 . . . ."); *Ferguson*, 2007 WL 1378507, at *3 (same).

*v. F.E. Wright (U.K.) Ltd*, 554 So. 2d 1347, 1354 (La. App. 1st Cir. 1989); *Fuqua v. Aetna Cas. & Surety Co.*, 542 So. 2d 1129, 1133 (La. App. 3d Cir. 1989).[3]

Similarly, the 2006 addition of a right to recover "attorney fees" was also a substantive change of law that cannot be applied retroactively.  Prior to the 2006 amendments, insureds had no right to a recovery of this nature and insurers were exposed to no such liability.[4]  *See Manuel*, 664 So. 2d at 86 (holding that adoption of LSA-R.S. 22:1220 was substantive change in law because, *inter alia*, it "for the first time . . . exposed [insurers] to penalties and attorney fees in some instances"); *see also Lewis v. State Farm Ins. Co.*, 41,527 to 41,529, p. 31 (La. App. 2d Cir. 12/27/06), 946 So. 2d 708, 729 (refusing to retroactively apply 2003 amendment to LSA-R.S. 22:658 deleting previous attorney fee provision).

Accordingly, courts have held that the version of LSA-R.S. 22:658 in effect at the time the plaintiff's cause of action arose applies in Hurricane Katrina actions like the present case. *See Leali v. Certain Underwriters at Lloyd's London*, No. 06-5030, 2007 WL 1975634, at *1 n.1 (E.D. La. July 3, 2007); *Ferguson*, 2007 WL 1378507, at *3; *Weiss*, 2007 WL 1017341, at *3.

---

[3] *See also Kiefer v. State Farm Mut. Auto. Ins. Co.*, No. 95-2674, 1999 WL 147673, at *6 (E.D. La. March 11, 1999) (holding that adoption of § 22:1220 was substantive change in law); *Westridge v. Poydras Properties, Inc.*, No. 94-3340, 1994 WL 721457, at *1 (E.D. La. Dec. 27, 1994) (same); *Premium Finance Co., Inc. v. Employers Reinsurance Corp.*, 761 F. Supp. 450, 451 (W.D. La. 1991) (same); *Tarver v. Eckstein Marine Serv., Inc.*, 93-796, 93-797 (La. App. 5th Cir. 2/23/94), 633 So. 2d 764, 765 (same); *Lynn v. Berg Mechanical, Inc.*, 582 So. 2d 902, 914 (La. App. 2d Cir. 1991) (holding that 1983 amendment to § 22:658 excepting workers compensation cases was substantive in nature and could not be applied retroactively).

[4] A former version of 22:658(B)(1) had provided for the recovery of "all reasonable attorney fees for the prosecution and collection of such loss," however, that provision had been deleted in 2003.  Act of June 27, 2003, No. 790, § 1.  Accordingly, between the effective dates of the 2003 and 2006 amendments to 22:658, when plaintiff's right, if any, to a penalty arose, attorney fees were not recoverable.  Amici note that Louisiana courts did not apply this change to the attorney fee provision retroactively.  *Lewis v. State Farm Ins. Co.*, 41,527 to 41,529, p. 31 (La. App. 2d Cir. 12/27/06), 946 So. 2d 708, 729; *Geraci v. Byrne*, 06-58 (La. App. 5th Cir. 6/28/06), 934 So. 2d 263, 267, *writ denied*, 06-1850 (La. 11/9/06), 941 So. 2d 42.

Plaintiff also cites two state court judgments that appear to award penalties and attorneys' fees pursuant to the 2006 amendments to LSA-R.S. 22:658.  (Pl. Br. at 11-12.)  The judgment in *Sher v. Lafayette Ins. Co.*, No. 06-9276 (La. Civ. Dist. Ct. Parish of Orleans May 2, 2007) (appeal pending), awards attorneys' fees without any discussion of its reasons and without any analysis of the retroactivity issue.  The judgment in *Royal Cloud Nine, L.L.C. v. Lafayette Ins. Co.*, No. 2006-5691 (La. Civ. Dist. Ct. Parish of Orleans March 21, 2007), awards 50% penalties pursuant to the wrong provision of LSA-R.S. 22:658 – citing subparagraph "(A)(1)" instead of (B)(1) – and does so without any analysis of retroactivity.  These unpublished state trial court judgments are not binding on this court,[5] nor are they persuasive because they clearly do not display the level of analysis undertaken by courts in this district that have reached the opposite conclusion.  *See Weiss*, 2007 WL 1017341, at *3 ("[T]here is no support for the proposition that the 2006 amendment to La.Rev.Stat. § 22:658 was intended to apply retroactively to causes of action that accrued before it went into effect."); *Ferguson*, 2007 WL 1378507, at *3 (same)

B.    Plaintiff's "Legislative History"
      Arguments Cannot Establish Retroactivity

1.    As to Substantive Laws, Legislative Intent
      for Retroactive Application Must Be Express

Plaintiff's attempt to establish retroactivity through a flawed analysis of Act 813's legislative history must be rejected.  Louisiana law is clear that, with respect to substantive enactments, legislative intent regarding a statute's purported retroactive effect must be express,

---

[5] *See Hill v. U. S. Fid. & Guar. Co.*, 428 F.2d 112, 114 (5th Cir. 1970) ("A final decision of a state trial court is not binding on the federal courts as a final expression of the state law . . . ."); *Cyberonics, Inc. v. Wells Fargo Bank N.A.*, No. H-07-121, 2007 WL 1729977, at *5 (S.D. Tex. June 13, 2007) (unpublished state court decision not binding on federal district court).  Indeed, this Court is not bound to follow the decisions of intermediate state appellate courts if it is convinced that the state supreme court would decide differently.  *See In Re: Katrina Canal Breaches Litig.*, ___ F.3d ___, 2007 WL 2200004, at *11 (5th Cir. Aug. 2, 2007); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 565 (5th Cir. 2004).

not implied.  *See* LRS-R.S. 1:2 ("No section of the Revised Statutes is retroactive unless it is *expressly* so stated.") (emphasis added); LSA-C.C. art. 6 ("In the absence of contrary legislative *expression* substantive laws apply prospectively only.") (emphasis added).

The Louisiana Supreme Court has also repeatedly made clear that, where substantive enactments are concerned, legislative statements of retroactive effect must appear in the statute's express terms.  *See Cole*, 599 So. 2d at 1063 (legislative intent must be expressed "in the enactment" itself); *St. Paul Fire & Marine Ins. Co.*, 609 So. 2d at 816-17 (legislative intent must be expressed in "the specific language contained in the act").  Because no such express intent appears in the 2006 amendments to LSA-R.S. 22:658, "federal and state courts have consistently declined to read in a legislative intent to retroactively apply [those] amendments."  *Weiss*, 2007 WL 1017341, at *3; *Ferguson*, 2007 WL 1378507, at *3.

Plaintiff cites various cases for the proposition that courts may consider legislative history when determining whether a statute applies retroactively.  (Pl. Br. at 9-10.)[6]  All of these cases are distinguishable because they either involved "procedural" or "interpretive" statutes – for which express retroactivity provisions are not required – or they involved disputes under the *second* step of the required inquiry regarding whether the statute in question should be classified as "procedural," "interpretive," or "substantive."  For example, in *Industrial Risk Insurers v. New Orleans Public Service, Inc.*, 735 F. Supp. 200 (E.D. La. 1990) (Pl. Br. at 10), the statute at issue

_____

[6] Plaintiff also cites Professor Lamonica's treatise for the unremarkable proposition that where appropriate, courts may consider legislative history when interpreting a statute.  (Pl. Br. at 9.)  The issue here is not whether a court can ever resort to legislative history when interpreting a statute, but whether it may do so to determine the retroactive effect of a substantive statute when there is no explicit statement regarding retroactivity in the statute itself.  For this reason, *Abate v. Healthcare Int'l, Inc.*, 560 So. 2d 812 (La. 1990), and *Wilcox v. Gamble Guest Care Corp.*, 40,650 (La. App. 2d Cir. 4/12/06), 928 So. 2d 695, also cited by Plaintiff (Pl. Br. at 10 nn.40 & 41) are inapposite.  Neither case addresses retroactivity. Instead, the courts discussed legislative history in response to arguments regarding what the statutory language *meant* or the scope of the statutes.  *See Abate*, 560 So. 2d at 818; *Wilcox*, 928 So. 2d at 698.

expressly stated that it was intended "to clarify the substantive content and parameters of application of such legislatively created codal articles and laws [regarding sovereign immunity]." *Id.* at 201 (citing LSA-R.S. 9:2798.1). As a result, the court concluded that the statute was interpretative of existing Louisiana codal and common law and should be applied retroactively. *See id.* at 202. To the extent that the court looked at legislative history in addition to the plain language of the statute, it did so to confirm that the statute "incorporate[d] and refine[d]" existing law. *Id.*; *see also Beutler England Chiropractic Clinic v. Mermentau Rice, Inc.*, 2005-942, p. 8 (La. App. 3d Cir. 5/31/06), 931 So. 2d 553, 558 ("procedural" statute); *Wooley v. State Farm Fire & Cas. Ins. Co.*, 2005-1490, pp. 6-7 (La. App. 1st Cir. 2/10/06), 928 So. 2d 618, 622 ("interpretive" statute).[7]

In *Dombrowski v. New Orleans Saints*, 2005-0762 (La. App. 1st Cir. 8/2/06), 943 So. 2d 403 (Pl. Br. at 9), the Louisiana Court of Appeal for the First Circuit rejected an attempt by a Workers Compensation Judge ("WCJ") to create a new category of statute – "curative" or "remedial" – that, the WCJ contended, does not require an express retroactivity provision. *See id.* at pp. 6-7, 943 So. 2d at 408-09. The WCJ had ruled that legislation repealing a prior statute was "'curative' and, thus, automatically retroactive." *Id.* at p. 6, 943 So. 2d at 408. The *Dombrowski* court reversed and held that, regardless of being characterized as "curative" or "remedial," statutes that do not contain express retroactivity provisions must be classified as "procedural, interpretative, or substantive" to determine whether they can be given retroactive effect. *Id.* at p. 7, 943 So. 2d at 408. The court cited legislative history merely for the purpose of rebutting the WCJ's attempt to create a new "curative legislation" exception to LSA-C.C. art. 6. *Id.* Having

---

[7] Likewise, in *Ardoin v. Hartford Accident & Indemnity Co.*, 360 So. 2d 1331 (La. 1978), the court determined that the statute at issue was "procedural," in part, and "interpretive," in part. *See id.* at 1339.

done so, the court expressly rejected the proposition for which it is cited by Plaintiff.  More specifically, the court concluded that, because the legislation was substantive, "in the absence of a contrary and constitutionally permissible legislative directive *in [the] Act* . . ., we conclude that the repeal cannot be applied retroactively."  *Id.*, 943 So. 2d at 409 (emphasis added).

2.       The Legislative History to the 2006 Amendments
<u>Does Not Support Retroactive Application</u>

Even if legislative history could be considered on the question of retroactivity, it would not support Plaintiff's position.  Significantly, the legislative history of Act 813 does not include a single mention of retroactivity.  Plaintiff relies upon a resolution passed by the Louisiana House of Representatives, as it appears in the historical and statutory notes.  (Pl. Br. at 6-7.) However, that resolution urged the Louisiana Attorney General to file a declaratory judgment action, but contained no mention of or reference to the amendments to LSA-R.S. 22:658.  This is not surprising given that the resolution was approved during the 2005 First Extraordinary Session, while the amendments to section 22:658 were proposed and approved the following year, during the 2006 Regular Session.  (*See* Exh. A, attached hereto.)  Accordingly, the "legislative history" on which Plaintiff relies does not mention or reference 22:658 in any way, expressly resolves that a particular course of action be taken unrelated to 22:658 generally or retroactivity specifically, and was adopted not contemporaneously with the amendments to 22:658, but in a different legislative session held during a different year.

Plaintiff also relies upon the following entry in the minutes of the House Committee on Insurance: "Senator Murray . . . felt that the penalties were not enough to encourage these insurers to be more timely in getting adjusters to these people [sic.] homes so that these claims can be settled."  Minutes of Meeting, Louisiana House Committee on Insurance at 2-3 (May 31, 2006) (Pl. Br. at 7.)  When Senator Murray's comments were made, most Hurricane Katrina

claims had proceeded well beyond the stage of "getting adjusters to [people's] homes."  *Id.* at 2.

Although Senator Murray apparently felt that site inspections and claim adjustments were not

carried out promptly enough in the immediate aftermath of Hurricane Katrina, he never said the

amendments were meant to be applied retroactively, and his comments are just as consistent with

prospective application – *i.e.*, to encourage more promptness in the aftermath of *future*

hurricanes.  Also, in stating that consumers were "having to deal with costs associated with a

disaster," Senator Murray was simply explaining to a colleague, who had expressed concerns, his

reasons for proposing an attorney fees provision.  (*Id.* at 3.)  The attorney fees provision was

obviously included for the benefit of policyholders, but that in no way implies that it was

intended to apply retroactively.

Moreover, the question before this Court is not whether the Legislature was motivated by

Hurricane Katrina to pass Act 813.  The Legislature might be prompted by an event to pass

legislation that would address, on a prospective basis, similar events.  However, the question

here is whether the legislation was intended to operate retrospectively.  No such intent can be

derived from the legislative history of Act 813.[8]  The strained interpretations of the legislative

history that Plaintiff asserts would thus require this Court to presume that the Louisiana

Legislature does not know how to express its intent either in the terms of its enactments or in its

legislative sessions and committee meetings.

In sum, legislative history cannot be considered in this case, because the 2006

amendments to LSA-R.S. 22:658 are substantive in nature and legislative intent that a

---

[8] That the Legislature expressly made other legislation passed following Hurricanes Katrina and
Rita retroactive, and failed to do so with Act 813, also argues against any such legislative intent.  *See
State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed to Do Business in State,* 2006-2030, p. 11
(La. 8/25/06), 937 So. 2d 313, 322 (discussing the express retroactivity provisions of Act 739 and Act
802).

substantive change in law be applied retroactively must be both express and contained in the enactment itself.  Moreover, even if legislative history could be considered, the legislative history relating to the 2006 amendments to LSA-R.S. 22:658 does not reveal any legislative intent to apply those amendments retroactively.

      C.      Retroactive Application of the 2006 Amendments
                 to LSA-R.S. 22:658 Would Be Unconstitutional

Even if the 2006 amendments to LSA-R.S. 22:658 could somehow be construed as being retroactive (which they cannot), giving such effect to those amendments would still violate numerous provisions of the United States and Louisiana constitutions.  *See* U.S. Const. art. I, § 10, cl. 1; U.S. Const. amends. V, XIV; LSA-Const. art. I, §§ 2, 4, 22, 23; *Estate of Williams v. La. Office of Risk Mgmt.*, 93-795 (La. App. 3d Cir. 03/02/94), 634 So. 2d 1260, 1264 ("[E]ven where the legislature expressed its intent to give a substantive law retroactive effect, the law may not be applied retroactively if it would impair contractual obligations or disturb vested rights."). For example, the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 2 of the Louisiana Constitution require fair notice of the penalties that may attach to conduct.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003).  The United States Supreme Court has explained that "[t]he Due Process Clause . . . protects the interests in fair notice and repose that may be compromised by retroactive legislation," therefore, "a justification sufficient to validate a statute's prospective application under the Clause 'may not suffice' to warrant its retroactive application." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994); *see also Segura v. Frank*, 93-C-1271 (La. 1/14/94), 630 So. 2d 714, 721 (holding that proscription against retroactivity "has constitutional implications under the due process and contract clauses of both the United States and Louisiana Constitutions"). The retroactive assessment of statutory penalties and attorneys' fees and costs violates due

12

process by denying the defendant its right to fair notice. *See BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 574-75 & n.22 (1996) (in the civil context, "the basic protection against 'judgments without notice' afforded by the Due Process Clause is implicated by civil *penalties*") (citation omitted).

The retroactive application of the 2006 amendments to LSA-R.S. 22:658(B)(1), doubling the amount the insured may recover in penalties for an insurer's non-payment of claims and permitting the award of attorneys' fees and costs, would also be a violation of the constitutional prohibition against ex post facto laws. *See Arledge v. Holnam, Inc.*, 957 F. Supp. 822, 828 (M.D. La. 1996) (refraining from applying the civil statute in question retroactively to award punitive damages) (relying on *Billiot v. B.P. Oil Co.*, 93-C-1118 (La. 9/29/94), 645 So. 2d 604, 612-13, *overruled on other grounds by Adams v. J.E. Merit Constr., Inc.*, 1997-2005 (La. 5/19/98), 712 So. 2d 88).[9]  Both the United States and Louisiana Constitutions prohibit laws that are "'passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed.'" *Arledge.* 957 F. Supp. at 828 (citation omitted). "Thus, if a law attaches a new consequence to a certain event, it cannot be applied to those regulated events that occurred before the law's effective date." *Id.*  The "new consequence" of becoming potentially liable for double the original penalty, and for attorneys' fees and costs mandate that the amendments to LSA-R.S. 22:658(B)(1) be applied prospectively only. *See also Landgraf*, 511 U.S. at 262 (finding that rationales supporting punitive damages statutes

---

[9] *See* U.S. Const. art. I, § 10, cl. 1; LSA-Const. art. I, § 23.  While the constitutional prohibition against ex post facto laws generally applies to criminal statutes, it may be applied in the civil context as well, where the statute is penal in nature. *See Arledge*, 957 F. Supp. at 828.  For example, *Arledge* dealt with the retroactive application of LSA-C.C. art. 2315.3, which permitted punitive damages for wanton or reckless disregard for public safety in the handling of hazardous substances. *See* 957 F. Supp. at 828.

"demonstrate that they share key characteristics of criminal sanctions," therefore the "[r]etroactive imposition of punitive damages would raise a serious constitutional question.").

Plaintiff relies upon *State v. All Property & Casualty Insurance Carriers Authorized & Licensed to Do Business in State,* 2006-2030 (La. 8/25/06), 937 So. 2d 313 for the proposition that retroactive application of Act 813 will not disturb vested property rights. (Pl. Br. at 12-13.) However, *All Property* is not on point. *All Property* concerned statutes that extended the prescriptive period for filing lawsuits on insurance claims arising out of Hurricanes Katrina and Rita. The Supreme Court was not faced with a statute that would substantially increase, after the fact, the penalties and liabilities imposed for past conduct. Thus, the due process issues confronted by the court were greatly different in *All Property*. Nor was the Court dealing with a patently ex post facto law.

II.     Prospective Application of the 2006 Amendments to
        LSA-R.S. 22:658 Cannot Be Based Upon Alleged "Continuing"
        <u>Violations that Accrued Prior to the Effective Date of the Amendments</u>

Plaintiff also argues the 2006 amendments to LSA-R.S. 22:658 can be applied to Defendant's post-lawsuit conduct "[b]ecause an insurer has a continuing duty to adjust a claim after suit is filed." (Pl. Br. at 16.) However, Plaintiff's argument fails to focus on the relevant date for purpose of determining whether a statute is being applied retrospectively or prospectively. To answer this question, a court must determine when a plaintiff's cause of action accrued; that is, the earliest date when the plaintiff could have filed suit. *See Manuel*, 95-0406, at p. 11, 664 So. 2d at 87 (focusing retroactivity analysis on the date of "the conduct which exposes the defendants to liability"); *Cole*, 599 So. 2d at 1063 ("[T]he determinative point in time separating prospective from retroactive application of an enactment is the date the cause of action *accrues*.") (emphasis added); *Francis*, 581 So. 2d at 1044 ("[T]he time when the right to the penalty comes into existence determines which penalty percentage applies.").

14

Initially, Louisiana courts have held that violations of bad faith penalty statutes are not considered "continuing" or "ongoing." *See Rusch v. Cook*, 619 So. 2d 122, 124-25 (La. App. 1st Cir. 1993) (rejecting contention that duty of insurer to settle claim was "continuing" after effective date of act). Accordingly, a substantive amendment to one of the penalty statutes "cannot be applied retroactively when both the accident at issue and the alleged bad faith occurred *or began* before the statute's effective date." *Kiefer v. State Farm Mutual Automobile Insurance Co.*, No. 95-2674, 1999 WL 147673, at *6 (E.D. La. Mar. 11, 1999). "The fact that any alleged bad faith may have continued past the effective date of [the amendments to LSA-R.S. 22:658 and/or 22:1220] is not enough to make the [amendments] applicable." *Id.* at *7.

Courts have also specifically held that the penalty statutes do not apply to post-litigation actions by the insurer. *See Premium Fin. Co. v. Employers Reinsurance Corp.*, 761 F. Supp. 450, 452-53 (W.D. La. 1991) (Little, J.); *accord Husseiny v. Indep. Fire Ins.*, No. 93-1572, 1996 WL 637547, at *6 (E.D. La. Nov. 1, 1996) (Porteous, J.).

Plaintiff cites various cases for the proposition that LSA-R.S. 22:658 applies to Defendant's post-lawsuit conduct, but its argument rests upon a superficial analysis of the cases and ignores certain critical facts. For example, Plaintiff's reliance upon *Harris v. Fontenot*, 606 So. 2d 72 (La. App. 3d Cir. 1992) (Pl. Br. at 16), is misplaced. In *Harris*, the plaintiff filed suit on March 14, 1990, to recover for personal injuries sustained in an automobile action. *See id.* at 73. The personal injury action was then settled on October 14, 1990, but the insurer did not make payment on the settlement within 30 days, as required by LSA-R.S. 22"1220(B)(2). *See id*. Thus, the settlement agreement gave rise to a contract action that was separate and independent from the underlying personal injury lawsuit. Although the plaintiff procedurally sought penalties by a motion in his personal injury action, he could have filed a new lawsuit for breach of the

settlement agreement, and included a claim based upon the insurance company's failure to pay within 30 days.  In such a subsequent lawsuit, the insurance company's failure to pay would have been a "pre-litigation" violation of the statute.  The fact that plaintiff chose to seek penalties in the underlying personal injury litigation did not change the essentially separate and distinct nature of his claims under LSA-R.S. 22:1220.[10]

*Harris*, therefore, must be contrasted with the situation where a plaintiff sues an insurer and argues that the insurer's continuing post-litigation failure to pay his claim by settling the lawsuit he has brought against the insurer gives rise to a claim under LSA-R.S. 22:658.  Such a claim raises precisely the concerns identified by the courts in *Premium Finance* and *Husseiny* in refusing to apply penalty statutes to insurer conduct after the commencement of litigation.  As Judge Little explained in *Premium Finance*:

> Applying the statute under consideration to post-litigation activities would lead to an absurd result.  The absurd result is to expose all litigation with insurers on the main demand to protracted collateral litigation concerning the insurer's post-filing negotiations, as colored by attorney advice, issue development and court rulings.  The resulting litigation explosion would thwart the statutory goal of quick resolution of disputed claims and would impede just and reasonable post-filing negotiations.

*Premium Fin.*, 761 F. Supp. at 452.  In contrast to *Premium Finance* and *Husseiny*, applying LSA-R.S. 22:1220 to the insurance company's failure to pay an agreed-upon settlement amount

---

[10] The facts in *Defazio v. City of Baton Rouge*, 625 So. 2d 733 (La. App. 1st Cir. 1993) (Pl. Br. at 16 n.64), were similar to *Harris*.  In *Defazio*, the plaintiff brought a personal injury action against the driver of an automobile involved in an accident and the driver-defendant's insurer.  As part of a settlement, the parties entered into a stipulated judgment, which required the defendant to make payment in 30 days.  The stipulation was read into the record.  *See id.* at 733.  When the insurer failed to make payment, the plaintiff made a motion that included a request for penalties under LSA-R.S. 22:1220.  In addition to being factually distinguishable, the First Circuit later recognized that its holding in *Defazio* was abrogated by the Louisiana Supreme Court's decision in *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So. 2d 184.  *See Toerner v. Henry*, 00-2934, p. 5 n.3 (La. App. 1st Cir. 2/15/02), 812 So. 2d 755, 758 n.3, *writ denied*, 02-1259 (La. 8/30/02), 823 So. 2d 951.

in *Harris* created no risk of protracted collateral litigation regarding post-litigation settlement negotiations and litigation defense.[11]

As to *Theriot v. Midland Risk Insurance Co.*, 95-227 (La. App. 3d Cir. 11/2/95), 664 So. 2d 547 (Pl. Br. at 16), *rev'd*, 95-2895 (La. 5/20/97), 694 So. 2d 184, (Pl. Br. at 35), Plaintiff fails to note the fact that the intermediate appellate court's ruling on which it relies was ultimately reversed by the Louisiana Supreme Court and the penalty award was vacated.  *See Theriot v. Midland Risk Ins. Co.*, No. 95-2895 (La. 5/20/97), 694 So. 2d 184, 193.  Moreover, the Court of Appeals' suggestion that an insurer's duty of good faith and fair dealing (the breach of which the Louisiana Supreme Court found did not support a penalty award in any event) "continues throughout the litigation" relied principally upon *Harris*, which is itself distinguishable, as discussed above.[12]

In any event, in each of the cases cited by Plaintiff where Louisiana courts have applied new or amended penalty statutes prospectively, the *earliest* date on which the plaintiff's cause of action accrued was after the effective date of the statute or amendment.  In none of these cases did the courts hold that the statute could be applied prospectively based upon the insurance

_____

[11] *McDill v. Utica Mutual Insurance Co.*, 475 So. 2d 1085 (La. 1985) (Pl. Br. at 16 n.64), is also inapposite.  In *McDill*, the plaintiff sued the providers of his employer's underinsured motorist insurance. *See id.* at 1088.  It was undisputed that the first notice of claim given to the insurer was the filing of the lawsuit.  *See id.* at 1089.  It was also undisputed that the defendant insurer had no basis for denying that the plaintiff's injuries were caused by the automobile accident he was involved in while working for his employer.  *See id.* at 1090.  In *McDill*, the court was not confronted with distinguishing between the retrospective and prospective application of a penalty statute.  Nor did the court address the situation presented by the instant lawsuit, where an insured files suit for bad faith based upon an alleged pre-suit violation, and argues that the insurer's defense of that litigation constituted a continuing statutory violation.

[12] Similarly, *Broussard v. State Farm Fire & Cas. Co.*, No. 1:06-cv-6, 2007 WL 113942 (S.D. Miss. Jan. 17, 2007) (Pl. Br. at 17), is also inapposite.  *Broussard* did not address the retroactivity of any statute or the accrual date of any bad faith claim in relation to the effective date of new or amended legislation.  Instead, the court ruled upon the merits of a bad faith claim "[u]nder applicable Mississippi law" regarding an insurer's duty of good faith.  *Id.* at *3.

company's alleged failure to remedy a violation that occurred *prior* to the effective date.  In *Harris*, the *earliest* date when the plaintiff could have sued for violations relating to the settlement agreement was November 30, 1990 – four months after the statute's effective date and eight months after the underlying personal injury suit was commenced.  *See* 606 So. 2d at 74.  In *Theriot* all of the relevant events on which the improper penalty award had been based occurred after the effective date of LSA-R.S. 22:1220 and, therefore, the appellate court did not need to distinguish between the retrospective and prospective application of the statute.  *See* 664 So. 2d at 548-49.

Indeed, in every case where Louisiana courts have applied new penalty statutes prospectively, the court did so based upon the *earliest* date when plaintiff could have sued for the violation.  *See Manuel*, 95-0406, at p. 11, 664 So. 2d at 87 (the insurer's failure to pay a settlement within 30 days after the settlement agreement was reduced to writing occurred more than a year after LSA-R.S. 22:1220 became effective); *Tarver v. Eckstein Marine Serv., Inc.*, 93-796, 93-797 (La. App. 5th Cir. 2/23/94), 633 So. 2d 764, 765-66 (the earliest date on which the insurer's violation (failure to pay a settlement within 30 days) occurred was April 24, 1993, almost three years after the effective date of the statute); *Francis*, 581 So. 2d at 1044 (court held that the *earliest* date on which the insurer received satisfactory proof of loss was June 2, 1986, and as a result, allowing for the 60-day period in which to make payment, the "plaintiff's right to a penalty did not come into existence until after the amendment," which was effective on June 26, 1986).

Plaintiff also relies upon this Court's decision in *Madere v. State Farm Fire & Casualty Co.*, No. 06-2889, 2007 WL 1655553 (E.D. La. June 5, 2007) (Pl. Br. at 16-17).  However, Plaintiff has missed the critical distinction between *Madere* and the present case.  In *Madere*, the

only argument made in support of the motion was "that because plaintiffs filed suit prior to August 15, 2006, the amendment cannot apply . . . ." *Id.* at *2 (emphasis added).  In *Madere*, this Court held only that the date of accrual, rather than the date the lawsuit was filed, was the relevant date for determining whether the statute was being applied retroactively or prospectively. See id. at *2. Here, however, the Defendant's argument is based on the fact that Plaintiff's claim accrued, if at all, prior to August 15, 2006.

Further, unlike in *Madere*, where the movant relied solely on the date of suit and did not address the events relevant to accrual, in this case, Plaintiff's own allegations belie its arguments that the 2006 amendments to LSA-R.S. 22:658 may applied prospectively.  While this Court held in *Madere* that the date a plaintiff files suit, without more, is not determinative as to the applicability of the 2006 amendments, the fact that Plaintiff filed its complaint on February 2, 2006, strongly supports Defendant's position.  Unless Plaintiff wishes to argue that it had no basis for asserting a penalty claim in its complaint, the timing of that complaint is a compelling indication that any bad faith penalties claim accrued, if at all, well before the August 15, 2006 effective date of the amendments to LSA R.S. 22:658.  For example, in *Kiefer v. State Farm Mutual Automobile Insurance Co.*, No. 95-2674, 1999 WL 147673 (E.D. La. Mar. 11, 1999), Judge Porteous rejected the plaintiff's argument that LSA-R.S. 22:1220 applied prospectively to the plaintiff's claims, observing:  "Kiefer has alleged clearly that State Farm's failure to make any . . . tender began at least in 1989 and continued until State Farm's last writ was denied. Accordingly, La. R.S. 22:1220 cannot be applied to State Farm's conduct."  1999 WL 147673, at *7.

So, too, Plaintiff has directly alleged that its claim under LSA-R.S. 22:658 accrued before this lawsuit was filed.  In its complaint filed on February 2, 2006 [ECF No. 1, 06-516], Plaintiff

alleged that it timely provided Travelers with notice of loss prior to October 7, 2005 (Compl. ¶ 8); that Travelers' independent adjuster met with Plaintiff on October 7, 2005, and, at that time, estimated the covered damage to be $2,400,000 (*id.*); and that Plaintiff provided further information and documentation regarding its claim between October 2005 and January 2006 (*id.* ¶¶ 10-15, 17, 19).

Throughout this time period, Plaintiff alleges that it made repeated requests upon Travelers regarding the status of adjustment and reminded Travelers of its obligation to tender uncontested amounts. (*Id.* ¶¶ 11-13, 15-16, 18, 20-22.) Plaintiff specifically alleged that "[p]ursuant to Louisiana Revised Statute 22:658(A)(1), Travelers was obligated to pay Xavier any amounts owed to Xavier within 30 days of receipt of proof of loss, and has failed to do so. As a result of that failure, which was arbitrary, capricious and without probable cause, Travelers is liable for all amounts due under the policy, plus 25% pursuant to Louisiana Revised Statute 22:658(B)(1)." (*Id.* ¶ 26.)

Moreover, in response to written interrogatories asking Plaintiff to state all facts supporting Plaintiff's allegation that Travelers' actions were "arbitrary and capricious" and that Travelers "failed to pay Xavier within 60 days of receipt of satisfactory proof of loss," Plaintiff repeatedly emphasized Travelers' alleged "refusal to pay under the policy [and failure] to advance a single penny under the policy for many months, *and until commencement of this litigation.*" (Pl. Ex. C [ECF 5851-5] at 5-6 [ECF pp. 21-22] (emphasis added); *see also id.* at 7-8 [ECF pp. 23-24].)

Defendant is not required to admit the allegations of the complaint in order for this Court to decide the issue presented by this motion.[13]   Courts in this district have decided the retroactivity question based on plaintiffs' representations regarding the time of the relevant events, without requiring the insurer to admit that proof of loss was "satisfactory" or to identify the precise moment when it became so.  For example, in *Weiss*, Judge Vance sustained a partial summary judgment motion as to claims for enhanced penalties and attorneys fees pursuant to Act 813 based on the plaintiffs' statement "that the relevant events in this lawsuit occurred no later than June 15, 2006."  2007 WL 1017341, at *3.  Similarly, in *Broussard v. State Farm Fire & Casualty Co.*, Civil Action No. 06-8084, 2007 WL 2264535 (E.D. La. Aug. 2, 2007), Judge Vance specifically rejected Plaintiff's "continuing" duty argument.  The plaintiffs in *Broussard* argued that "[t]he insurers have a continuing obligation to pay first party claims following their receipt of satisfactory proof of loss.  If the claims were not paid within thirty days of the effective date of Act 813, the insurer can still be subject to penalty provisions."  *Id.*, ECF Doc. 21, at 16.  Nevertheless, the court held that the 2006 amendments did not apply based on plaintiffs' assertion that they "provided the defendant with satisfactory proof of loss long before the filing of this petition."  *See* 2007 WL 226453, at *7.

Plaintiff argues that it has continued to provide Travelers with documentation throughout this litigation.  (Pl. Br. at 5-6, 17.)  However, Plaintiff does not describe this documentation in any detail or explain how it differs from prior documentation provided to Travelers.  Again, the relevant date for purpose of determining when Plaintiff's claim accrued is not the *latest* event

---

[13] This is especially true in light of recent Fifth Circuit precedent finding that Travelers properly invoked the water damage exclusion in its policy as to damage caused by breaches or overtopping of the levees.  *See In re Katrina Canal Breaches Litig.*, ___ F.3d ___, 2007 WL 2200004, at *4-5, *28 (5th Cir. Aug. 2, 2007).

identified by Plaintiff, but the *earliest* date when Plaintiff could have sued.  The mere fact that Xavier continued to provide documentation to Travelers is, therefore, irrelevant.  Even assuming that this Court could consider post-litigation activities (which it should not, *see supra* at pp. 15-16), in order for the 2006 amendments to LSA-R.S. 22:658 to apply prospectively, Plaintiff would not only have to show that some subsequent submission constituted a satisfactory proof of loss, but Plaintiff would have to concede that the entirety of the information previously received by Plaintiff would not have sufficed as a satisfactory proof of loss.

Accordingly, considering the earliest date when Plaintiff could have filed suit based upon the facts alleged, its penalty claim, if any, accrued prior to the effective date of the 2006 amendments to LSA-R.S. 22:658.  *See Broussard*, 2007 2264535, at *7 (refusing to apply 2006 amendments to LSA-R.S. 22:658 when plaintiff's allegations indicated that his cause of action accrued prior to the effective date); *Ferguson*, 2007 WL 1378507, at *3-4 (holding versions of LSA-R.S. 22:658 and 22:1220 in effect at time plaintiffs' cause of action arose applied); *Weiss*, 2007 WL 1017341, at *2-3 (holding pre-amendment version of LSA-R.S. 22:658 applied where all relevant events occurred prior to August 15, 2006); *Preston v. Lafayette Ins. Co.*, No. 06-9393, slip op. at 1 (CDC May 11, 2007) (holding that August 15, 2006 amendments to LSA-R.S. 22:658 did not apply) (attached as Exh. B).[14]

---

[14] *See also Jeffries v. Estate of Pruitt*, 95-1442 (La. App. 1st Cir. 06/24/94), 638 So. 2d 723, 726-27 (refusing to retroactively apply new duties imposed by § 22:1220 where tortious act of liability insurer's insured occurred prior to that enactment); *Hidalgo v. Old Hickory Ins.*, 630 So. 2d 252, 255 & n.1 (La. App. 5th Cir. 1993) (applying version of 22:658 in effect at time of automobile accident that was basis for claim); *Rusch v. Cook*, 619 So. 2d at 124-25 (holding § 22:1220 could not be applied retroactively to impose penalties for insurer's alleged failure to adjust claim fairly and promptly where automobile collision on which claim was based occurred prior to effective date of statute); *Gretna Realty Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 617 So. 2d 215, 218 (La. App. 5th Cir. 1993) ("[§ 22:1220] did not take effect until July 7, 1990; and the freeze which caused the loss was in December of 1989.  We hold that R.S. 22:1220 is not retroactive and does not apply to this claim."); *Funk v. Louisiana Underwriters Ins. Co.*, 613 So. 2d 1018, 1022 (La. App. 3d Cir. 1993) ("Since this action predates the 1989 and 1990 amendments to LSA-R.S. 22:658, the provisions which existed prior to those *(cont'd)*

<u>CONCLUSION</u>

For all the reasons set forth above, Amici respectfully request that Plaintiffs' Motion for Partial Summary Judgment Regarding Retroactivity of Act 813 be denied.

Respectfully submitted,

/s/ Ralph S. Hubbard

_____

**RALPH S. HUBBARD, III, T.A., La. Bar #7040**
**Defendants' Liaison Counsel**
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA  70130
Telephone:  (504) 568-1990
Facsimile: (504 310-9195
E-Mail: rhubbard@lawla.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of September 2007, a copy of the foregoing

**MEMORANDUM OF AMICI CURIAE IN OPPOSITION TO PLAINTIFF'S MOTION**

**FOR PARTIAL SUMMARY JUDGMENT REGARDING RETROACTIVITY OF ACT**

**813** was filed electronically with the Clerk of Court using the CM/ECF System.  Notice of this

filing will be sent to all known counsel of record by operation of the Court's electronic filing

system and/or U.S. mail.

/s/ Ralph S. Hubbard

_____

**RALPH S. HUBBARD (La. Bar #7040)**

_____
*(cont'd from previous page)*
amendments apply to this case."); *Gulf Wide Towing, Inc.*, 554 So. 2d at 1354 (holding pre-amendment version of § 22:658 applied since effective date of change "was more than 60 days after the satisfactory proof of loss was submitted").