UNITED STATES DISTRICT COURT
STATE OF LOUISIANA

| | | |
|---|---|---|
| **BLAIR BOUTTE, ET AL** | * | **CIVIL ACTION 05-5531** |
| VERSUS | * | SECTION K(2) |
| LAFARGE NORTH AMERICA, INC., ET AL | * | |
| and | * | |
| **ETHEL MUMFORD, ET AL** | * | **CIVIL ACTION 05-5724** |
| VERSUS | * | SECTION K(2) |
| INGRAM BARGE COMPANY, ET AL | * | |
| and | * | |
| **MARENTHIA LAGARDE, ET AL** | * | **CIVIL ACTION 06-5342** |
| VERSUS | * | SECTION K(2) |
| LAFARGE NORTH AMERICA, INC., ET AL | * | |
| and | * | |
| **PERRY, ET AL** | * | **CIVIL ACTION 06-6299** |
| VERSUS | * | SECTION K(2) |
| INGRAM BARGE COMPANY, ET AL | * | |
| and | * | |
| **BENOIT, ET AL** | * | **CIVIL ACTION 06-7516** |
| VERSUS | * | SECTION K(2) |
| LAFARGE NORTH AMERICA, ET AL | * | **ALL SUITS RELATED** |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR DISMISSAL, STAY, OR TRANSFER, OF NEW YORK**

**DISTRICT COURT CASE**

**MAY IT PLEASE THE COURT:**

Counsel for Group "A," in support of its motion for summary judgment, as a matter of law, submits the following argument, supported by the following authorities, in proof of its entitlement to a judgment on the insurance coverage issue pertaining to the policy of insurance issued by American Steamship Owners Mutual Protection and Indemnity Association, Inc., (The American Club), through three participating companies, New York Marine & General Insurance Company, American Home Assurance Company and International Marine Underwriters, to Lafarge North America, Inc.

The policy in question, covering the policy period February 20, 2005 - February 20, 2006, provides limits of approximately one-point-five billion Dollars. The amount of coverages is not an issue in this motion except as it relates to the greater probability of settlement of this class action if Lafarge is not naked as contended by its insurers. See Policy attached as exhibit "A" and American Club Rules attached as exhibit "B".

American Steamship Owners Mutual Protection and indemnity Association, Inc., following the filing of the instant personal injury class action on behalf of approximately 90,000 New Orleans and St. Bernard residents and property owners on **November 14, 2005**, and the joining of it and New York Marine & General Insurance Company, American Home Assurance, and International Marine Underwriters as parties defendant on **February 22, 2006**, filed a declaratory judgment action in the United States District Court for the Southern District of New York entitled "*American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge North America,*

*Inc.,*" No. 06 Civ.3123 (CSH) on **April 24, 2006.** The American Club was put on notice by Lafarge of the pendency of the suit against it as the insured subsequent to the initial filing and, in spite thereof, the American Club failed to cause the representatives of the class to be notified of the pendency of the New York case directly challenging the insurance coverage of major defendants in this litigation.

Lafarge, the insured, is a foreign corporation domiciled in Baltimore, Maryland, with its principal office in Herndon, Virginia. It is licensed to do business in Louisiana with its principal business establishment in Louisiana at 3320 Airline Highway, Metairie, Louisiana 70001. Ingram Barge Company, another target defendant, is a foreign corporation domiciled in Nashville. Tennessee, licensed to do business in Louisiana, with its principal business establishment in Louisiana at 2704 Engineers Road, Belle Chasse, Louisiana 70037. Unique Towing, Inc., also a target defendant, is a Louisiana Corporation Domiciled at 5520 River Road, Marrero, Louisiana 70072. Joseph C. Domino, Inc., also a target defendant, is a Louisiana corporation domiciled at 5520 River Road, Marrero, Louisiana 70072. Zito Towing, Inc., also a target defendant, is a Louisiana Corporation domiciled at 732 Rural Street, River Ridge, Louisiana 70123. American Home Assurance Company, one of the three participating insurers on the American Club policy, is a foreign insurer qualified in the state of Louisiana with the Secretary of State designated as its agent for service of process. See exhibits "C ", "D ","E ", "F", "G " , and "H ", attached.

Approximately 90,000 putative class members, whose homes, properties, and lives were taken or destroyed on August 29, 2007 are residents of Orleans and St. Bernard Parishes, both within the Eastern District of Louisiana. The incident that brought about the destruction, the Ingram Barge 4727 crashing through the East side wall of the Inner Harbor Navigational Canal releasing

flood waters into their neighborhoods, took place entirely within the geographical confines of Orleans Parish and the Eastern District of Louisiana.

The only connexity with New York is the fact that the insurers, The American Club, New York Marine & General Insurance Company, American Home Assurance Company, and International Marine Underwriters, are domiciled in the state of New York.

Lafarge North America filed motions for a stay and motions to transfer the New York declaratory judgment action to this District for consolidation with the above entitled and numbered cause. The motions were heard and denied by His Honor, Charles Haight, Jr., United States District Judge, in a written opinion rendered on January 29, 2007, which recently came to the attention of counsel for Group "A" because of lack of notice. See Exhibit "I" attached.

Respectfully, it appears that this is a case of "the tail wagging the dog" instead of the "dog wagging the tail." The "res," or body of the case, is in this Court in the Eastern District and the appendage, or tail, is in the Southern District of New York. Which Court has the greatest contact and the greatest interest? The contact and interest of the Southern District of New York pales by comparison with the contact and interest of this Honorable Court.

The complaint filed against Lafarge North America's insurers arises under, *inter alia*, the direct action statute of the State of Louisiana, which provides, as follows:

> "**22:655. Liability policy; insolvency or bankruptcy of insured and inability to effect service of citation or other process; direct action against insurer.**
>
> A. No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become

executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors, mentioned in Civil Code Art.2315.1, as heirs against the insurer.

B.   (1) The injured person or his or her survivors or heirs mentioned in Subsection A, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only. However, such action may be brought against the insurer alone only when:

>    (a) The insured has been adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of competent jurisdiction;
>
>    (b) The insured is insolvent;
>
>    (c) Service of citation or other process cannot be made on the insured;
>
>    (d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons;
>
>    (e) When the insurer is an uninsured motorist carrier; or
>
>    (f) The insured is deceased.

<u>(2) This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if such provisions are not in violation of the laws of this state.</u>

>    C. It is the intent of this Section that any action brought under the provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the defenses which could

> be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state.
>
> **D. It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy."** ( bold and underscoring  emphasis supplied).

Under the Louisiana Direct Action Statute, Group "A" was compelled to sue both the insured, Lafarge North America, and their insurers, which they did in this case. How then can the joined insurers carve out the coverage issue before this Court and have that sole issue selectively litigated in a court of the insurers' choice without participation of the injured parties?  That flies in the face of the *"first-filed"*  rule and smacks of forum shopping and exclusion of the real parties in interest.

In *Cadle Company V. Whataburger of Alice, Inc*., 174 F.3d 599 (5th Cir. 1999), the court concluded that it is the *first-filed* Court that should make the determination whether the second suit, in this instance the New York suit, should be dismissed, stayed, or transferred. The Court concluded:

> "[T]he `first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed, or/and consolidated." *Sutter Transfer Corp*., 125 F.3d at 920. As noted above, "[t]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power*, 121 F.3d at 948. Thus, once the district court found that the issues might substantially overlap, the proper course of action was for the court to transfer the case to the *Laredo* court [first filed] to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." [bracketed emphasis

supplied.]

The *Cadle* Court, *supra,* at page 606 opined:

> "The district court correctly refused to act as a "super appellate court" by entertaining either Cadle's jurisdiction or the defendants' standing arguments, and properly limited its inquiry to the potential overlap between the two cases. By so limiting its analysis, the district court indeed avoided trenching on the authority of its sister court, one of 'the very abuses the first-to-file rule is designed to prevent.' "

Therefore, under Fifth Circuit precedent, this Court is the Court to determine whether, or not, the New York action should be dismissed, stayed, or transferred.

A federal court exercising diversity jurisdiction applies state substantive law to a plaintiff's state law claims. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78-79 (1938); *Klanxon Co. v. Stanton Elec. Mfg. Co.,* 313 .S. 487, 496 (1941), Likewise, a court exercising jurisdiction supplemental to its federal question jurisdiction (under 28 U.S.C. §§ 1367) applies the choice of law rules of the forum state. *In re Combustion, Inc.,* 960 F.Supp. 1056, 1059 (W.D. La. 1997); *Dale v. Ala. Acquisitions AI, Inc.,* 2006 WL 1520289, at P.2 (S.D. Miss. 5/26/06).

The certificate of entry ("insurance coverage documents") lists Lafarge North America, Inc., as a member, (LNA000006) and New York Marine and General Insurance Company, American Steamship Owners Mutual P & I Association, and American Steamship Mutual P & I Association as underwriters with limits of liability coverages set forth therein, (LNA000095).

The interest insured are listed as primary marine liability consisting of:

    Section  A:    Wharfingers Liability/Stevedores Liability, Landing Owners Liability;

    Section  B:    Charterers Legal Liability, (LNA000067).

Clearly, Lafarge North America, Inc. was a wharfinger, within the meaning of the policy, at the time of the break-away of Ingram Barge 4727 on August 29, 2005, also as to the other six barges at it's wharf that did not break-away.

The member specific clauses contains a paragraph describing what it calls "chartered barges" as follows:

> "If Lafarge Corporation, et al, acquires an insurable interest in any vessel, in addition to, or in substitution for, those set forth herein, through purchase, charter, lease, **or otherwise**, such insurance as is afforded hereunder to any similar vessel shall automatically cover such additional vessel, **effective from the date and time the assured acquires an insurable interest in such additional vessel**. With respect to a chartered lease, **or similarly acquired vessel,** the insurance hereunder automatically includes the owner as an additional assured with waiver of subrogation against the owner, if required, effective from the date and time such vessel is insured hereunder." [bold emphasis supplied] (See LNA000010).

A wharfinger is described in Webster's Seventh New Collegiate Dictionary as: "the operator or manager of a commercial wharf." Though Lafarge's primary business is cement, they do own, operate and manage an Industrial Canal waterfront maritime wharf at which their cement shipping and receiving activities occur.

The certificate of entry goes on under the section "**NAMED ASSUREDS**" to describe the numerous Lafarge affiliated companies and then includes the following "omnibus" clause:

> "It is further agreed that if any party other than those named as assured herein have an interest as owner or part-owner, **or otherwise**, in any vessel or property insured hereunder, this insurance extends to cover the interest of such party if required, as though they had been specifically named as an assured in this policy without necessity of advice to this company.
>
> This policy will discharge any liability that it would bear if each assured were separately insured, however, it is specifically understood and agreed

> that the inclusion of more than one assured hereunder shall not increase the liability of this company or otherwise alter any other terms or conditions of this policy."

This policy clearly covers the Ingram Barge 4727 as a vessel in which Lafarge North America, Inc., a wharfinger, had an insurable interest through purchase, charter, lease, OR OTHERWISE. What other interest could a wharfinger, like Lafarge, have in barges bringing in bulk cement to it's cement plant on the Industrial Canal? What does **or otherwise** insurable interest in any vessel mean if it does not mean barges, like the Ingram 4727, bringing in cement to the Lafarge facility? What does owner, part-owner, **or otherwise**, mean in the "omnibus" coverage? The expansive use of **or otherwise** in the contract indicates an intention to cover the relationship herein existing between Lafarge and Ingram.

Not only does the American Club and Affiliated Companies policy cover Lafarge, but it also covers Ingram Barge Company as a party having an interest as owner of the barge. Why would the certificate of entry cover an owner like Ingram if the insurors did not understand the relationship between Lafarge, the cement company - wharfinger, and it's suppliers? Obviously, the policy was written with specificity to the relationship in existence between Lafarge and suppliers such as Ingram.

Under Louisiana Civil Code Article 2056, a provision in a contract, in case of doubt or ambiguity, must be interpreted against the party who furnished it's text. In this case, should Your Honor determine that there is doubt created by the term "**or otherwise**" and the inclusion of the owner of the barge, Ingram, as an omnibus insured, then that doubt, and that inclusion, should be resolved adversely to the defendant insurors under the cited codal article.

An insurance policy is a contract between the parties and should be construed employing

the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Smith v. Matthews,* 611 So. 2nd 1377, 1379 (La. 1993). The party's intent as referenced by the words of the policy, determine the extent of coverage. Louisiana Civil Code Article 2045; *Louisiana Insurance Guarantee Association v. Interstate Fire and Casualty Co.*, 93-0911, (La. 1/14/94), 630 So. 2d 759. Words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. *Interstate*, 93-0911, 630 So. 2d at 759; Louisiana Civil Code Article 2047. See also *Reynolds v. Select Properties Limited* 93-1480 (La. 4/11/94); 634 So. 2nd 1180 (La. 4/11/94).

The purpose of liability insurance is to afford the insured protection from damaged claims. Policies therefore should be construed to effect, and not to deny, coverage. Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insuror, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretations, favoring coverage must be applied. *Garcia v. St. Bernard School Bd.*, 576 So. 2d 975, 976 (La. 1991); *Breeland v. Schilling,* 550 So. 2d 609, 610 (La. 1989). See also *Reynolds v. Select Properties, LTD,* 93-1480 (La. 4/11/94); 634 So. 2d 1180.

As a threshold issue, a federal court sitting in diversity jurisdiction must first decide which state's substantive law to apply. See, e.g., *R.R. Mgt. Co., L.L.C. v. CF LA Midstream Co.*, 428 So 2d 214, 222 (5th Cir. 2005). Generally, in a diversity case, a federal court applied the substantive law of the state in which it sits, including that state's choice of law analysis. See *E. G., Kalxon Co. v. Stentor Elec. Mfg. Co.*, 313 US 487, 496 (1941). See also *Kira, Inc. v. Allstar Maintenance,* (W.D. Texas 2006).

Choice of law analysis becomes necessary only when there is a true conflict between the

laws of two or more states, each having an interest in the litigation. *Zurich American Co. v. Goodwin*, 920 So. 2d 427, 432 (Miss. 2006) (citing *Boardman v. American Servs. Auto Ass'n,* 470 So. 2d 1024, 1038 (Miss. 1985); See also *Chapman v. Thrasher Trucking Co,* 729 Fed. Supp. 510 (S. D. Miss. 1990) (stating that 'before it becomes necessary that the Court make a choice of law, it must appear that there is a conflict between the substantive law of the involved states as to a matter that could have a significant effect on the outcome of the case'). See also *Dale v. Ala. Acquisitions, Inc.,* (S.D. Miss. 2006).

The conflict of substantive law in Louisiana is encompassed in Articles 3515 and 3542 of the Louisiana Civil Code.

Article 3515 provides:

> **"ART. 3515. Determination of the applicable law; General and Residual Rule.**
>
> **Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be the most seriously impaired if its law were not applied to that issue.**
>
> **That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties, and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state"**

Article 3542 provides:

> **"ART. 3542. General Rule.**

> **Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if it's law were not applied to that issue.**
>
> **That state is determined by evaluated the strength and pertinence of the relevant policies of the involved state in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts."**

A literal reading of the above-cited articles leads to the inescapable conclusion that the law of Louisiana under this conflict of law, if any, is applicable to this case. The contacts are overwhelmingly in favor of Louisiana. The relationship between the parties, Hurricane Katrina, and Ingram Barge 4727, were centered in Louisiana and the policy of deterring wrongful conduct and of repairing the consequences of injurious acts to 90,000 EDLA residents is clearly in the interest of this state. The only contact that New York has is the issuance of a document. The *res* is in Louisiana and the law of Louisiana should be applied in the interest of justice.

Louisiana Civil Code Article 3548 is pertinent to this inquiry. It provides:

> **"ART. 3548.  Domicile of Judicial Persons.**
>
> **For the purpose of this title, and provided it is appropriate under the principals of Article 3542, a judicial person that is domiciled outside of this state, but which transact business in this state and incurs a delictual or quasi-delictual obligation arising from activity from within this state, shall be treated as a domiciliary of this state."**

Therefore, Lafarge North America, Inc., the insured, Ingram Barge Company, the omnibus insured, Unique Towing, Inc., Zito Towing, Inc., and Joe C. Domino Towing, defendants, are all domiciliaries of Louisiana under Article 3548 and the afore cited conflict of law articles.

In *IN RE Combustion, Inc.* (W.D. LA. 1997) 96 Fed. Supp. 1056, his Honor, Judge Haik, faced with a similar factual circumstance, concluded, at page 1068, in applying Louisiana law to multiple insurors in a class action:

> "Finally, but significantly, the burden of this environmental disaster has been a heavy one to bear for the community of Livingston Parish. Effectively, the entire parish population is included in the class definition; over 14% of the parish population has filed proofs of claim. Members of the plaintiffs' class have died or faced increasing medical problems with bleak prognosis, allegedly caused by exposure to the toxic chemicals at the site. Louisiana's public medical facilities must provide care. Livingston Parish is one of the more rural parishes in the state, and its business reputation has suffered as a result of its being the location of a Superfund site..."

The foregoing state "interest analysis" is uniquely applicable to the instant matter in that the class involved is composed of approximately 90,000 New Orleanians, comprising approximately 18% of the pre-Katrina population of the Parish of Orleans.

Judge Alvin Rubin, the late learned member of the United States Fifth Circuit Court of Appeal, in *Stickney v. Smith*, 693 Fed. 2nd 563 (5th Cir. 1982), in his inimitable analysis, concluded that Louisiana no longer automatically applies the law of the place where a contract is made, *lex loci contractus*, to determine the validity and interpretation of a contract but instead determines the applicable law by a process known as "interest analysis".

New York, the place of issuance of the insurance contract, must yield to the overwhelming

interests of Louisiana in the outcome of this case as analyzed by Judge Haik in the In Re Combustion case, *supra*. The crowning jewel for direct action plaintiffs is the Louisiana Supreme Court seminal decision in *Quindan v. Liberty Bank and Trust Company,* 575 So. 2nd 336 (La. 1990), describing the victim's rights in the insurance contract, essentially "modified" by the direct action statute. The Court stated:

> "When the statute is applicable, and authorizes a direct action against a tort feasor's insuror, the statute is read into, and becomes a part of a policy written pursuant thereto, even though the policy does not contain the language required by the statute or contains language prohibited by the statute."

Under Louisiana law, exclusionary provisions in insurance contracts are strictly construed against the insuror, and any ambiguity is construed in favor of the insured. *Capital Bank & Trust Co. v. Equitable Life Assurance Society*, 542 So. 2d 494 (La. 1989); *Albritton v. Fireman's Fund Insurance Co.,* 224 La. 522, 79 So. 2d 111 (La. 1953). Equivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insuror, since these are prepared by the insuror and the insured had no voice in the preparation. *13 J. Appleman Insurance Law and Practice*, Sec. 7427 (rev. ed. 1976). If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. *Coney v. American Fire and Indemnity Co.*, 371 So 2d 815 (La. 1978). See also *Garcia v. St. Bernard Parish School Bd.,* 576 So. 2d 975, (La. 1991).

Therefore, the repeated term in the certificate of entry, "or otherwise", must be interpreted in a way that favors coverage of Lafarge, the insured, and Ingram, the omnibus insured.

Section 34 of the Transportation Agreement between Ingram Barge Company and Lafarge

North America, attached hereto as Exhibit "J", states:

> "34. Possession of barge during loading/unloading. Carrier (Ingram) shall deliver an empty or loaded barge to a loading/unloading facility designated by shipper (Lafarge) for loading or unloading. Shipper shall assume the duty and responsibility of each barge in it's possession. For the purposes of this agreement, "possession" shall begin when carrier delivers an empty or loaded barge for loading or unloading to the landing designated by shipper and shall end when the barge is removed by carrier or it's agent(s). Shipper shall be responsible for the safekeeping of carrier's barge delivered to a landing regardless of whether shipper owns or operates the landing. During procession, any barge delivered to a landing designated by shipper shall be held without charge to carrier."[1]

The "possession" of the barge, Ingram 4727, under the aforesaid contract is clearly an "**or otherwise**" barge covered under the insuror's policy issued to Lafarge.

WHEREFORE, movers pray that your Honor grant a summary judgment on the coverage issue or, alternatively, a dismissal, stay, or transfer of the New York case to this Court for consolidation with this matter.

> RESPECTFULLY SUBMITTED,
> WIEDEMANN & WIEDEMANN
>
>
> /s/Lawrence D. Wiedemann
> LAWRENCE D. WIEDEMANN, (13457)
> KARL WIEDEMANN, (18502)
> KAREN WIEDEMANN, (21151)
> 821 Baronne Street
>
> New Orleans, Louisiana 70113
> Telephone: (504) 581-6180
> Attorneys for Plaintiffs

---

[1] Group A does not hereby contend that this language excludes any possession, duty, or responsibility of Ingram with respect to the safekeeping it's barge.

LAW OFFICE OF BRIAN A. GILBERT

/s/ Brian A. Gilbert
BRIAN A. GILBERT (21297)
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 885-7700
Attorney for Plaintiffs

LAW OFFICE OF PATRICK J. SANDERS

/s/Patrick J. Sanders
PATRICK J. SANDERS (18741)
Attorney at Law
3316 Ridgelake Drive
Metairie, Louisiana 70002
Telephone: (504) 834-0646
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above and foregoing has been served upon all counsel of record via ECF Upload, U.S. Mail, first class postage prepaid and properly addressed, and/or via facsimile and/or electronic mail, this _____ day of _____, 2007.