## Karen Wiedemann

From: &lt;LDWIEDEMAN@aol.com&gt;
To: &lt;karenwiedemann@bellsouth.net&gt;
Sent: Friday, September 07, 2007 12:12 PM
Subject: Re: Ingram

Karen:
  Please print.
          Dad

AMERICAN STEAMSHIP OWNERS MUTUAL PRO. v. LAFARGE N.A., (S.D.N.Y. 1-29-2007)

AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC.

Plaintiff, v. LAFARGE NORTH AMERICA, INC., Defendant.

06 Civ. 3123 (CSH).

United States District Court, S.D. New York.

January 29, 2007

MEMORANDUM OPINION AND ORDER

CHARLES HAIGHT JR., District Judge

The issue in this case is whether the insurance coverage provided by American Steamship Owners Mutual Indemnity Association ("American Club" or "Club") to defendant Lafarge North America ("Lafarge" or "LNA") extends to a particular barge that was owned and operated by another company that had contracted to transport cement for Lafarge. The American Club seeks a declaratory judgment that the barge was not covered under its policy and thus that it is not responsible for any potential liability or defense costs associated with the barge. Lafarge now moves to transfer this case to the Eastern District of Louisiana or, in the alternative, to stay this proceeding until the outcome of proceedings pending in that district. For the reasons given below, I deny defendant's motion in its entirety.

### I. BACKGROUND

#### A. Hurricane Katrina and Litigation in New Orleans

The instant action arises out of extensive litigation in the aftermath of Hurricane Katrina, which devastated New Orleans in August of 2005. The dispute at bar was triggered by the
Page 2
breakaway of a barge moored in New Orleans during the hurricane and its subsequent alleged allision with one of the levees protecting the city. This was one of the levees that broke, flooding the city. The offending barge, Barge ING 4727, was owned and operated by Ingram Barge Company ("Ingram"), which had contracted in December of 2004 with Lafarge, a construction materials company and supplier of cement and other construction



PLAINTIFF'S EXHIBIT

materials, to transport cement from Lafarge's plant in Illinois to its New Orleans facility. The barge had been moored at Lafarge's terminal in New Orleans at the time of the storm, pursuant to a Transportation Agreement between the two companies which stated that "Shipper [Lafarge] shall assume the duty and responsibility of the safety of each barge in its possession." Decl. of Robert B. Fisher, Jr., in Supp. of Def.'s Mot. Transfer, dated Jul. 7, 2006 ("Fisher Decl.") ¶¶ 2, 3.

Lafarge is a defendant in a number of federal actions filed in the Eastern District of Louisiana that seek to hold it responsible for damage allegedly caused as a consequence of the ING 4727 striking the levee.[fn1] Ingram is also a defendant in these lawsuits, together with various federal, state, and municipal government entities and officials who have been sued for numerous torts, including defective and negligent design, construction, operation, and maintenance of the New Orleans navigable waterway system and failure to take precautions prior to the hurricane to prevent the ING 4727 from causing or contributing to the breaching of the levee. See 3d Party Compl., 05 Civ. 4419 (filed E.D. La. Aug. 31, 2006) §§ 3, 4.

In response to this deluge of litigation, Ingram as owner of the barge petitioned for exoneration from or limitation of liability pursuant to 46 U.S.C. App. § 183 *et seq.* in the Eastern District of Louisiana. Under this statute, known as the Limitation of Liability Act, a vessel owner

Page 3

may, if it meets certain criteria, be exonerated from liability or limit its liability to the value of the vessel after the accident. See *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 414 & n. 4 (1954). Thus, even if found liable for the injuries alleged by the class action plaintiffs, Ingram hopes to limit its liability to the value of the ING 4727, an insignificant sum given the vast damages presumably at stake. When a limitation of liability petition is filed, all claims and proceedings against the owner with respect to the matter in question are enjoined except insofar as they are part of the Limitation Proceeding. See 46 U.S.C. App. § 185. Chief Judge Berrigan of the Eastern District of Louisiana issued such an injunction and additionally consolidated all the other pending actions in the Hurricane Katrina litigation into the Limitation Proceeding. See Fisher Decl., Ex. H.

The involvement of the American Club, a nonprofit mutual protection and indemnity ("P & I") association of which Lafarge is a member, arises in this manner. P & I policies cover the insured against costs and liability arising out of death, injury, or property damage suffered by third parties. While at common law the doctrine of privity of contract prevented a third party injured by an insured from suing the insurer, a number of states now have "direct action" statutes that permit an injured party to sue a tortfeasor's insurer directly. See generally Mark Christian Elmer, Note, *Marine P & I Insurers No Longer Safe from the Louisiana Direct Action Statute (If They Ever Were): Grubbs v. Gulf International Marine, Inc.*, 18 Tul. Mar. L.J. 371, 372 (1994). Louisiana is one of these states. See La. Rev. Stat. Ann. § 22:655. Exercising their right to proceed directly against the insurer, plaintiffs in the Hurricane Katrina class actions filed amended complaints in the Eastern District of Louisiana naming

the American Club as a defendant once they learned about Lafarge's policy with the American Club from interrogatories
Page 4
in the litigation.[fn2] See Def.'s Mem. in Supp. of Mot. Transfer ("Def.'s Mem."), at 4. The American Club has filed answers in these cases. See Fisher Decl. ¶ 8, Exs. F, G.

Under Fifth Circuit case law, the shipowner's ability to limit its liability under 46 U.S.C. § 183 does not affect its insurer's exposure, unless the terms of the policy themselves exclude coverage in such a situation. See Crown Zellerbach Corp. v. Ingram Indus. Inc., 783 F.2d 1296 (5th Cir. 1986). The American Club's exposure could therefore potentially be great even if Ingram successfully limits its liability in the Limitation Proceeding. Nevertheless, to prevail against the American Club on their direct action for damages at large, the direct action claimants will have to prove that the barge caused the damage alleged and that the barge was covered under Lafarge's P & I policy with the American Club. The Club's action in this Court seeks a declaratory judgment that the policy did not cover the barge.

### B. The Insurance Coverage Dispute Between the American Club and Lafarge

Despite the complexity of the Hurricane Katrina litigation, the coverage issue presented by the case at bar appears to be a straightforward question of contract law. On September 23, 2005, Lafarge gave the American Club written notice that it might be subject to claims for the ING 4727's breach of the 17th Street Canal Levee.[fn3] See Aff. of Michael J. Mitchell in Opp'n to
Page 5
Def.'s Mot. Transfer, dated Aug. 18, 2006 ("Mitchell Aff."), Ex. 6. In a letter to the American Club dated October 24, 2005, Lafarge's representative explained why Lafarge took the view that the Transportation Agreement, the contract with Ingram governing shipment of cement via the ING 4727, brought the barge within the coverage of Lafarge's P & I policy with the American Club. See Mitchell Aff., Ex. 8.

Each member of the American Club is issued a Certificate of Entry ("COE") with the Club that recites the terms of the governing P & I policy. The policy is in turn governed by the American Club's Bylaws and Rules (collectively known as the "Club Rules"), together with any special terms and conditions applicable to that member. Lafarge's COE contains a provision under the "Member Specific Clauses" that states as follows:

> If Lafarge corporation et al acquires an insurable interest in any vessel in addition to or in substitution for those set forth herein, through purchase, charter, lease or otherwise, such insurance as is afforded hereunder to any similar vessel shall automatically cover such additional vessel effective from the date and time the Assured acquires an insurable interest in such additional vessel.

Mitchell Aff., Ex. 7.

Clause 51 of the Transportation Agreement between

Ingram and Lafarge states:

> Independent Contractor: Nothing contained in this Contract shall be construed as a contract by Shipper [Lafarge] for the chartering, hiring or leasing of any barge, or other equipment of Carrier [Ingram] to be provided hereunder; nor shall any of the agents, servants, subcontractors or employees of Carrier be regarded as employees of Shipper, it being understood that Carrier is in all respects an independent contractor and that Shipper shall exercise no control over the operation of any barge, towboat or other equipment of Carrier or over Carrier's agent servants, subcontractors or employees.

*Id.*

The American Club contends that the Transportation Agreement clearly shows that Lafarge did not purchase, charter, or lease the ING 4727, and thus that Lafarge did not obtain an "insurable interest" in the vessel within the meaning of its policy with the Club. The American
Page 6
Club also points to the phrase "in addition to or in substitution for" and maintains that the ING 4727 was not in addition to or in substitution for any vessel on the COE. *See* Tr. of Oral Argument on Dec. 18, 2006 ("Oral Arg. Tr."), at 29. Lafarge maintains that, to the contrary, it had acquired an insurable interest within the meaning of the policy, both because of the words "or otherwise" in the Member Specific Clause and because of the meaning of "insurable interest" as construed by New York law. Affirm. of Robert G. Clyne, Jr. in Supp. of Def.'s Reply Mem., dated Sept. 8, 2006 ("Clyne Affirm."), Ex. I. To resolve this dispute, the American Club filed the instant declaratory action on April 24, 2006, asking the Court to determine whether it is obligated to defend and/or provide coverage to Lafarge for the claims arising from the breakaway of the ING 4727. Compl. ¶ 1.

In the present motion, Lafarge claims, *inter alia*, that because the direct actions against the American Club were filed in the Eastern District of Louisiana prior to the declaratory action in this Court, the rule of judicial administration known as the "first-filed rule" should cause this Court to transfer the instant case to that district. *See generally First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (it is a "well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or special circumstances . . . giving priority to the second") (internal quotations and citation omitted). Alternatively, defendant seeks a stay of this action pending resolution of the issue in New Orleans.

The American Club contends that the first-filed rule does not warrant transfer of the case or a stay for a variety of reasons, among them that the present litigation in New Orleans would not fully dispose of the issues before this Court and that resolution of the issues in New Orleans would be so long in coming that the Club would suffer prejudice. The Club further contends that

Page 7
the customary factors to be weighed in considering a transfer or stay make plain the appropriateness of venue in this district.

## II. DISCUSSION

### A. Legal Background

### 1. Motion to Transfer Venue

28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The objectives of Section 1404(a) are "to prevent waste of time, energy and money and to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense." *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)) (internal quotations omitted).

District courts have broad discretion in determining whether transfer is warranted, and the factors of convenience and fairness are considered on a case-by-case basis. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). The analysis is a flexible one, because "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 179 (2d Cir. 1969). See *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (challenge to district court's denial of motion to transfer because of alleged applicability of first-filed rule "ultimately fails
Page 8
because the policy favoring consolidating related disputes is subject to the discretion of the trial court").

The factors considered by courts in the Second Circuit when deciding whether to transfer a case include: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiffs choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, No. 06 Civ. 2072, 2006 WL 2949932 (S.D.N.Y. Oct. 16, 2006); *Lynch v. Nat. Prescription Admin'rs*, No. 03 Civ. 1303, 2004 WL 385156, at *2 (S.D.N.Y. Mar. 1, 2004). "There is no rigid formula for balancing these factors and no single one of them is determinative" in what is "essentially an equitable task left to the Court's discretion." *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (internal quotations and citation omitted). In performing the analysis, however, the district court must "give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's

09/07/2007

forum." *Id.* (internal citations and quotation omitted); *MK Sys. v. Schmidt*, No. 04 Civ. 8106, 2005 WL 590665, at *3 (S.D.N.Y. Mar. 10, 2005). The party moving for a change of venue bears the burden of establishing by clear and convincing evidence that transfer is appropriate. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 45, 56 (S.D.N.Y. 2001).

### 2. First-filed Rule

"Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a 'first-filed' rule, whereby the court which first has possession of

Page 9

the action decides it." *1-800 Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994) (citations omitted). It is only applicable where "in fact the suits are duplicative." *Spotless Enters. Inc. v. The Accessory Corp.*, 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006) (citation omitted). This principle requires a "substantial overlap" between the cases, in that they have "identical or substantially similar parties and claims." *Id.* (citation omitted).

However, the rule need not be applied where there is a "showing of balance of convenience or special circumstances giving priority to the second [case]." *D.H. Blair*, 462 F.3d at 106 (citation omitted). *Compare William Gluckin*, 407 F.2d at 178-79 (special circumstances warranted departure from first-filed rule even though facts did not fit neatly into an established exception to the rule), *with Simmons*, 878 F.2d at 80 (no facts or circumstances in the case compelled departure from first-filed rule). Special circumstances include situations where there is only a short span of time between the filing of the two actions, *In re Arbitration Between Griffin Indus., Inc. & Petrojam, Ltd.*, 58 F. Supp. 2d 212, 218 (S.D.N.Y. 1999), where there is a lack of progress in either litigation, *id.*, or where the interest of justice favors the second action. *Spotless Enterprises*, 415 F. Supp. 2d at 207. "The determination as to whether there are circumstances warranting departure from the first-filed rule is committed to the sound discretion of the district court." *MK Systems*, 2005 WL 590665, at *3 (citing *Simmons*, 878 F.2d at 77; *William Gluckin*, 407 F.2d at 179).

The factors to be weighed in balancing the competing interests for the purposes of assessing the applicability of the first-filed rule and deciding a motion to transfer venue are essentially the same, and so a single analysis will resolve both issues. *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 514 (S.D.N.Y. 2004). *See Spotless Enterprises*, 415 F. Supp. 2d at 207 (weighing same factors as in its § 1404(a) analysis). Thus, "[t]he first-filed
Page 10
rule does not supersede the inquiry into the balance of convenience under § 1404(a)." *MK Systems*, 2005 WL 590665, at *3 (citation omitted). Consequently, where the first-filed rule is invoked in support of a motion to transfer, the court considers the rule as one among several factors in the overall calculus of efficiency and the interests of justice. *See MK Systems*, 2005 WL 590665, at *6-*7 (analyzing first-filed rule under "trial efficiency and interests of justice" factor). *See also Micromuse*,

09/07/2007