UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION |
|  | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * * | and consolidated cases |
|  | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*          05-5531 | * |  |
| *Mumford v. Ingram*      05-5724 | * |  |
| *Lagarde v. Lafarge*       06-5342 | * | JUDGE |
| *Perry v. Ingram*             06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*          06-7516 | * |  |
| *Parfait Family v. USA*   07-3500 | * | MAG. |
| *Lafarge v. USA*              07-5178 | * | JOSEPH C. WILKINSON, JR. |
|  | * |  |

**MEMORANDUM IN SUPPORT OF
MOTION FOR CONFIRMATION AND APPOINTMENT
AS PLAINTIFFS' SUBGROUP LITIGATION COMMITTEE - BARGE -
WITH LIASON COUNSEL DESIGNATION**

**MAY IT PLEASE THE COURT:**

Lawrence D. Wiedemann, Patrick Sanders, Brian Gilbert, Karl Wiedemann, and Karen Wiedemann are counsel for plaintiffs in the suits for damages entitled "*Boutte, et al v. Lafarge North America*," USDC EDLA No. 05-5531, and "*Mumford, et al v. Ingram Barge Company, et al*," USDC EDLA No. 05-5724.  These suits, along with additional damages suits, "*Benoit, et al v. Lafarge North America, Inc., et al*," USDC EDLA No.06-7516, "*Lagarde, et al v. Lafarge North America*," USDC EDLA No. 06-5342, "*Perry v. Ingram Barge Company, et al*," USDC EDLA No.06-6299, were, until recently, consolidated with the limitation action entitled "*In Re Ingram Barge Petitioning for Exoneration From Or*

*Limitation of Liability,*" USDC EDLA No. 05-4419, still pending before Chief Judge Helen G. Berrigan.  All of these damages suits allege that an Ingram Barge allided with the eastern Industrial Canal floodwall, causing it to fail, resulting in the flooding and consequent damages sustained by approximately 90, 000 persons in the affected areas.  All of these damages suits have been de-consolidated and transferred to Section K (*In Re Ingram Barge Company*, Record Doc. 760).

*Mumford*, *Boutte* and *Benoit* are pled as class actions.  Class certification proceedings are scheduled for April 2008.  Undersigned counsel were appointed interim putative class counsel as to all of the damages suits ("*In Re Ingram Barge Company, etc.*", No. 05-4419 and consolidated cases, Record Doc. 436).  The plaintiffs in the damages suits, and claimants in limitation, have been designated "Group A," while the corporate defendants have been designated "Group B."  Throughout all of the foregoing litigation (damages suits and limitation actions), as the applicable records reflect, undersigned have exclusively spear-headed and conducted all investigation, scheduling, written discovery and depositions, motions and pleadings, tactical and strategic decision-making and execution, expert witness consultation and retention, pretrial and  trial proceedings, ongoing plaintiff acquisition, advance of all litigation expenses and costs, and to this day, continue exclusively to take all action in prosecution of Group A's interests in these cases.  Needless to say, undersigned have spent a small fortune and significant portion of their lives executing their duties over the last  twenty-one months.

Undersigned now respectfully seek confirmation of and appointment to their roles as Plaintiff's Subgroup Litigation Committee for all persons affected by the alleged barge-related flooding.  They seek this appointment not out of greed but out of superior

dedication to the class demonstrated by their unselfish lead in the prosecution of this case without benefit, or expectation of benefit.

Additionally, Brian A. Gilbert volunteers and seeks confirmation as BARGE PSLC liason counsel.

As stated, Section C has designated Group "A" and Group "B." That Court directed that only one person from Group "A" shall be permitted to examine any deposition witness. Group "B" counsel has been selected by each defendant to personally represent that defendant group member predicated on their belief that their selection will best represent their respective interests. Those attorneys make independent decisions which they consider to be in the best interest of their client. However, the individual members of the Plaintiff class do not have the power to determine the team that will lead the presentation of their claims. Each, of course, has chosen an attorney but obviously each attorney cannot represent the Class. Clearly, multi headed Plaintiff Class Counsel will lead to chaos and confusion. Decisions must be made by a cohesive group with a single leader willing to carry out the wishes of the group. If one has had the experience of trying a single tort action with multiple plaintiff counsel then one knows the helpless feeling of someone, supposedly on your side, asking questions that undermine your case to the advantage of the defense.

The foregoing is the reason why the Courts have been given the authority to appoint class counsel in class action litigation predicated on ability, experience, capability to fund, and demonstration of competency to represent the class.

Movers herewith attach exhibits "A," "B," and "C" in support of their combined dedication, experience, ability, capability, and competency to represent the Class in the

best tradition of our profession. Movers further show that the have been the "movers" and "shakers" in this case, thus far performing nearly all of the representation and bearing nearly all of the expense. That is not to say that others have not contributed, but contribution and management are two different things. To illustrate the foregoing Movers point out to the Court the following efforts of Movers on behalf of the putative class as a whole.

## PLEADINGS

Movers have filed an original and five amended pleadings bringing all of the appropriate defendants, and their insurers, before the court. In the latest amended complaint Movers join Ingram Barge Company's insurers (though leave for, and service of, this complaint was obtained before the recent stay of any proceedings in Section K against the petitioners in limitation). Movers have also compiled and filed all pleadings mandated by the Court, including but not limited to trial and exhibit lists, Phase I bench books, trial memoranda etc. Movers have successfully argued and defeated motions for summary judgment and evidentiary motions brought by Group B, and have pursued other motions for summary judgment on behalf of the putative class. Most importantly, movers tried and prevailed in Phase I trial concerning the issue of the petitioners-in-limitations' privity or knowledge of putative negligence and unseaworthiness, and are underway and poised in Phase II to do the same in proving that the putative negligence and unseaworthiness were actual, and that they caused the Ingram barge to break away from its moorings.

## DEPOSITIONS

Movers have conceived and scheduled every deposition with defense counsel that has occurred in this case thus far, and have noticed every deposition and accompanying document request and arranged, and paid for, every court reporter for every deposition. The questioning of every witness, or corporate representative, has been conducted exclusively by the undersigned, especially Lawrence D. Wiedemann, and all pre-deposition preparation has been conducted by and between Movers. The following is a list of the depositions Movers devised and conducted in Phase I and thereafter:

1. 30(b)(5) and 30(b)(6) of Ingram Barge Company;

2. 30(b)(5) and 30(b)(6) of Lafarge North America;

3. 30(b)(5) and 30(b)(6) of Joe Domino;

4. Deposition of Ed Busch, an employee of Lafarge;

5. Deposition of Earl Smith, an employee of Lafarge;

6. Deposition of Terry Adams, an eye witness to the incident;

7. Deposition of Scott Castaing, the Domino towing dispatcher;

8. Depositions of Unique Towing crew members Raymond Grabert and Eric Thigpen;

9. 30(b)(5) and 30(b)(6) of Unique Towing;

10. Depositions of David Sehrt, Scott Nobles, and Kaj Shah, employees of Ingram for December 11, 2006, in Nashville, Tennessee:

11. Deposition of Shipyard Supply scheduled for December 12, 2006;

12. 30(b)(5) and 30(b)(6) deposition of Zito Companies;

13. Deposition in Paducah, KY of former Lafarge employee Rachael Mays.

Additionally in Phase I, with leave of Court, movers perpetuated the testimony of Terry Adams, an eyewitness to the barge's transition from the western side of the IHNC floodwall into the Lower Ninth Ward.

In Phase II, likewise, undersigned have exclusively conducted and planned all activities, including out-of-town fact witness depositions, and the depositions of petitioners-in-limitations' experts, all at movers sole expense and effort.  These efforts in Phase I and Phase II, and in future phases, are equally applicable and productive as to both the limitation actions and the suits for damages.

## **WRITTEN DISCOVERY**

Movers have been almost exclusively responsible for written discovery thus far in this case. They have prepared, served, reviewed, catalogued, and utilized the documents and information obtained in written discovery in determining the identity of witnesses to depose, parties to be added as defendants, and the subject matter to be aired in the depositions of witnesses and corporations, and, needless to say, critical evidence for trial. This process has been a time consuming process in which Movers have collaborated together, along with their respective staff members. The written discovery consists of the following, to wit, and is equally effective as to both the limitation actions and deconsolidated suits for damages:

1. Multiple sets of written interrogatories to Ingram Barge, Lafarge, and Riverway;

2. Requests for admissions to Ingram, Lafarge, and Riverway;

3. Multiple sets of requests for production of documents to Ingram,

        Riverway, and Lafarge;

4. Written interrogatories to Domino Towing;

5. Requests for production of documents and deposition notice to the U. S. Army Corps of Engineers;

6. Requests for production of documents to Domino Towing;

7. Written discovery directed to the City of New Orleans, New Orleans Police Department, Shipyard Supply;

8. Phase II discovery consisting of Interrogatories, Requests for Production, Requests for Admissions and organizational deposition and production notices to Group B;

9. Phase I and II responses to all written discovery propounded by Group B.

**INVESTIGATION AND RESEARCH**

Undersigned counsel have singlehandedly arranged and attended, along with their experts, all site inspections, and inspections of the barge, its ropes and appurtenances. Undersigned have located and coordinated to obtain numerous fact witnesses essential to the litigation. Undersigned have spent countless hours throughout the Lower Ninth Ward and affected portions of St. Bernard. Undesigned, along with their experts, have attended IPET meetings. Undersigned have conducted extensive legal and online research concerning the myriad of legal and factual issues underlying the bases of these suits. This has necessitated countless hours, meetings and travel. Group A has been responsible for the development, gathering and presentation of all legal theories and evidence in these

cases.

## COURT PROCEEDINGS

Movers have filed and successfully defended several motions for summary judgment in Phase I, and anticipate additional motions in Phase II.  These motions are equally effective as to both the limitation actions and damages suits.  Presently pending in Section K, filed by the undersigned as to all of the suits for damages, is a motion for summary judgment concerning the availability of insurance coverage issued to Lafarge.  Obviously, this is of monumental importance to the interests of the Group A plaintiffs.

Additionally, Group A has acted exclusively as trial counsel, and as the voice for Group A in all scheduling and status conferences, discovery and dispositive hearings, and in all contact with the Court.  The records of the limitation actions and suits for damages reflect the far-reaching extent of this involvement.

## CLIENT BASE

Movers have been retained by, and represent by virtue of individual contracts, more than 3500 persons throughout the geographical area conceivably to be included in the Plaintiff class.  Movers have also been referred hundreds of additional putative class member clients whom they represent on behalf of referring counsel.  Movers anticipate additional direct and referral clients, as client acquisition is ongoing, and requests for representation continue on a massive scale.  They also represent individuals in every imaginable category of injury resulting from the incident. For instance, they represent: individuals who lost their lives; individuals that lost homes; individuals that lost personal

property; individuals that sustained physical, or emotional, trauma; individuals that lost their businesses or jobs. In sum, and substance, Movers can, from their client base, present evidence, through their clients, in support of every subclass that the Court may choose to create.

Movers are certain that they represent the largest number of potential class members injured by the Industrial Canal levee wall breech, and have hired staff dedicated to management of this huge client base. While that is not the sole reason for appointment of class counsel it is certainly a criteria that cannot be ignored, in addition to the criteria shown in the attached exhibits concerning the professional capabilities of Movers.

**EXPERTS**

Movers retained Ray G. Helmer, Houston, Texas, a civil engineer to inspect the barge at it's final resting site on Jordan Avenue on the East side of the Industrial Canal and to attend and critique the meetings of the IPET Committee in the Le Pavillion Hotel in New Orleans. Movers also attended the IPET meeting. They have also furnished Mr. Helmers with mountains of materials for him to review relating to levee wall breach causation and subsequent flooding. Movers have had numerous conferences in person and by telephone with Mr. Helmers.

Movers also retained Aurora Environmental, Gretna Louisiana, to make soil, and water, samples in the flooded area to determine the presence of high levels of salinity and pollution resulting from the flooding. Movers have likewise had telephone and personal conference with the employees of that company.

Movers also retained Don Green of KDON Marine Consulting, Houston, Texas,

to investigate the barge handling in this case by the various defendants and have likewise supplied him with mountains of materials to review and have had numerous telephone conferences and personal meetings with him. Cmdr. Green testified at Phase I trial concerning privity and knowledge, and is making preparations for his upcoming Phase II deposition and trial testimony concerning applicable standards of maritime care, negligence and unseaworthiness.

Movers are prepared to retain additional experts to meet the needs of the class as the cases progress.

### **STAFF**

Kenrick Harding of Harding Investigation Services, New Orleans, has been retained to locate potential witnesses and documents, and to photograph the Ingram Barge on Jourdan Avenue prior dismantling, and at subsequent inspections. His efforts and results have been invaluable to proceedings thus far.

Movers have engaged Mark Jackowski, an experience class-action specialist to install a Microsoft Access database to categorize class lists and maintain client data and contact. Additionally, Mr. Jackowski serves as client liason, and performs such additional duties as file maintenance, organization of pleadings, investigation, and other duties relative to evidence, court filings, research, and the like. Additionally, movers have designed and introduced onto the internet www.bargecase.com, an online resource for clients.

Movers have a combined support staff contingent of seven skilled individuals dedicated to performing administrative, clerical and paralegal functions for the benefit of

the putative class.

## TIME

Collectively, movers have spent well over 20, 000 hours to date in connection with this litigation, demonstrating their commitment and appreciation of this litigation's importance to the community.

## FUNDING

Movers have to date spent a combined total of over $150, 000.00 in this litigation as follows: investigative costs; expert fees; deposition costs; advertising for witnesses; mailings to clients; programming; photography; copying; postage; travel; printing; posting signs in the affected areas; and staff costs. Movers expect the expenditure of an additional $50, 000.00 in Phase II of the limitation, and in connection with the damages suits transferred to section K. Phase III, or whichever designation is assigned to the wall-breach-causation, class certification and damages phases of this litigation, is expected to cost another $1000, 000.00 to $150, 000.00, or more. All of the expenditures have been made on behalf of the class as a whole. Movers are prepared to fund the litigation to a conclusion on behalf of the class and to dedicate whatever amount of professional time necessary, as they have in the past, to give the class the best opportunity to achieve success.

## **CONCLUSION**

      Movers have, in their deeds accomplished thus far, demonstrated their commitment and ability to drive this litigation on behalf of the putative plaintiff class to a just and favorable conclusion.  Movers vow to continue in this manner.  For the foregoing reasons, movers respectfully pray for confirmation and appointment as BARGE PSLC on behalf of all persons affected by the alleged barge-related flooding, with Brian A. Gilbert as BARGE liason counsel.

                              RESPECTFULLY SUBMITTED,

                              WIEDEMANN & WIEDEMANN


                              \s\Lawrence D. Wiedemann_____
                              LAWRENCE D. WIEDEMANN, (13457)
                              KARL WIEDEMANN, (18502)
                              KAREN WIEDEMANN, (21151)
                              821 Baronne Street
                              New Orleans, Louisiana 70113
                              Telephone: (504) 581-6180
                              Attorneys for Plaintiffs


                              LAW OFFICE OF BRIAN A. GILBERT


                              \s\Brian A. Gilbert
                              BRIAN A. GILBERT (21297)
                              821 Baronne Street
                              New Orleans, Louisiana 70113
                              Telephone: (504) 885-7700
                              Attorney for Plaintiffs


                              \s\Patrick J. Sanders
                              PATRICK J. SANDERS
                              Attorney at Law
                              3316 Ridgelake Drive

        Metairie, Louisiana 70002
        Telephone: (504) 834-0646
        Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 18 day of September, 2007.

        \s\Brian A. Gilbert
        BRIAN A. GILBERT