UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BENOIT ET AL | * CIVIL ACTION |
| | * |
| v. | * NO. 06-7516 |
| | * |
| LAFARGE NORTH AMERICA INC. ET AL | * SECTION "K" |
| | * |
| | * JUDGE DUVAL |
| | * MAG. JUDGE WILKINSON |

*THIS PLEADING APPLIES TO CASE NO. 06-7516*

### RESPONSE OF LAFARGE NORTH AMERICA INC. TO THE UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF ITS SECOND MOTION TO DISMISS LNA'S THIRD-PARTY COMPLAINT

The government has filed a 36-page reply memorandum in support of its motion to dismiss Lafarge North America Inc.'s ("LNA's") third-party complaint for lack of subject matter jurisdiction. Rec. 744. LNA submits this response to show that the arguments made in government's reply are just as unavailing as the ones made in its original brief.

**I.   THE GOVERNMENT'S ARGUMENTS DO NOT JUSTIFY DISMISSAL UNDER § 3 OF THE FLOOD CONTROL ACT**

The government's initial memorandum (Rec. 688-2) advanced two arguments under the Flood Control Act ("FCA"):  (1) that immunity applies to any flooding regardless of any connec-

1

tion to a flood control project, and (2) that, in any event, there was a connection here because the water escaped a flood control project had been implemented at the navigation channels.

The government's reply memorandum abandons the first argument, mentioning it only in a single footnote (fn. 3). That footnote, moreover, concedes that the argument requires finding that the Fifth Circuit's decision in *Graci v. United States*, 456 F.2d 20 (5th Cir. 1971), was implicitly overruled by *Central Green v. United States*, 531 U.S. 425 (2001). Not only does the footnote fail to rebut the detailed demonstration in LNA's opposition (at 12-14) that *Graci* is in fact fully consistent with *Central Green* (as Judge Duval held), but the most the government can bring itself to say is that it is "not clear" whether the cases are consistent. That half-hearted assertion falls far short of the exacting standard, cited in LNA's opposition (at 11) and not disputed by the government, for finding that a Fifth Circuit decision has been overruled by a later Supreme Court case – namely, that "such overruling is unequivocally directed" by the Supreme Court opinion. *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001).

Instead, the government retreats to its second argument: that the connection to a flood control project required by *Graci* exists in this case. As we now show, the government has failed to refute the defects in this argument that were set forth in LNA's opposition and in Judge Duval's ruling rejecting this same argument in the *Katrina* litigation.

### A. Immunity Applies Only If the Allegedly Negligent Conduct is Connected to a Flood Control Project

The government argues first that *Graci* is satisfied because <u>the flooding</u> here was connected to a flood control project. As the government admits, however, *Graci* in fact sets forth a very different test: that immunity applies only if <u>the allegedly negligent act</u> is connected to a flood control project. Specifically, the government concedes that *Graci* says that the government has no immunity for "the <u>negligent and wrongful acts</u> of its employees unconnected with flood

control projects." Reply at 8, quoting 456 F.2d at 26 (emphasis added). The government insists, though, that this was "just a single sentence" that LNA has taken out of context. Reply at 6-10.

Contrary to the government's argument, *Graci* in fact repeatedly and emphatically holds that immunity does not apply if <u>the negligent acts</u> were unconnected to a flood control project. In addition to the sentence quoted by the government, *Graci* specifically makes this point at least three other times:

- *Graci* recounts and agrees with the Ninth Circuit's holding in *Peterson v. United States*, 367 F.2d 271, 275 (9th Cir. 1966), that the relevant issue is whether "the <u>alleged act of negligence was wholly unrelated</u> to any Act of Congress authorizing expenditures of federal funds for flood control, or any act undertaken pursuant to such authorization." 456 F.2d at 26 (emphasis added).

- *Graci* recounts that the Second Circuit "seems to have agreed with our view and that of the Ninth Circuit that § 3 is not a bar to claims for floodwater damage caused by the <u>negligence of the Government unconnected</u> with flood control projects." 456 F.2d at 27 (emphasis added).

- *Graci* summarizes its own holding as being that "when, as here, the plaintiffs allege that they have suffered floodwater damage as a result of the <u>negligence of the United States unconnected</u> with any flood control project, § 3 … does not bar an action against the United States …." 456 F.2d at 27 (emphasis added).

In short, *Graci*'s statement that immunity applies only if <u>the act of negligence</u> was connected to a flood control project is not – as the government wildly argues (at 6) – "a single sentence that LNA has taken out of context in an attempt to reduce the case to a single mistaken proposition." It is in fact the decision's emphatically reiterated central holding.

3

Furthermore, even aside from the fact that this Court is not free to disregard *Graci*'s central holding as a "mistaken proposition," the government fails to show that *Graci* was mistaken in requiring that the act of negligence be connected to a flood control project. As LNA's opposition showed (at 7, 9-10) without rebuttal in the government's reply, the purpose of § 3 was to limit the cost of acts taken in connection with flood control projects – and, therefore, it is only those acts that are protected. Further, the government also fails to address, much less rebut, Judge Duval's observation (as quoted in LNA's opposition at 14-15) that the government's contrary position would produce absurd results – such as granting it immunity if it were to dynamite a levee or steer a ship into a dam.

The government likewise fails to advance its cause by asserting (at 7) that *Graci*'s "holding has properly been limited to its facts." First, the government cites no case limiting *Graci* to its facts. To the contrary, as LNA's opposition showed (at 8) without response in the government's reply, other courts have adopted the same holding as *Graci* in cases presenting their own, different facts. As LNA's opposition also showed (at 12), the Supreme Court's decision in *United States v. James*, 478 U.S. 597, 609-10 (1986), likewise focused on the allegedly negligent conduct. Indeed, the government's own brief to the Supreme Court in *James* cited not just *Graci*, but also three other circuit court decisions, as all holding that immunity applies only when the damage "is caused by an act that is" part of a flood control project. See Wyner Declaration Exh. E at 16-17. In any event, as discussed below, the relevant facts here are the same as they were in *Graci*, and thus *Graci* applies here even if it were limited to its facts.[1]

---

[1] Specifically, *Graci* said that it addressed "the single question whether the immunity clause contained in § 3 of the [FCA] applies to these actions under the [FTCA] for floodwater damage allegedly caused by the negligence of the United States in the construction of the Mississippi River – Gulf Outlet, a navigation project that provided a shortcut from the Gulf of Mexico to New Orleans." 456 F.2d at 21-22. That is precisely the question presented here too.

For these reasons, the government's argument that it is entitled to immunity because <u>the flooding</u> was supposedly connected to a flood control project must be rejected.

### B.     LNA Alleges Negligent Conduct Unconnected to a Flood Control Project

The government alternatively argues (at 12) that, in any event, there is a connection between its allegedly negligent conduct and a flood control project because its negligent conduct at issue here must be seen as the design of the LPVHPP flood control project, not the design and maintenance of the MR-GO and the other commercial waterways.[2]  Specifically, the government asserts (at 12) that "[i]t is nonsensical to suggest that the alleged negligence ought to be attributed to the pre-existing MRGO, rather than the LPVHPP," because the flooding "reveals a fundamental flaw in the design of the LPVHPP, which failed to take into account the deleterious effects of the MRGO."  This argument fails for three separate reasons.

    *1.*     *Negligence relating to the MR-GO*.  First, as quoted in LNA's opposition (at 16-17), LNA's complaint expressly alleges that the negligent design, construction, and maintenance of the MR-GO and other navigation channels, <u>standing alone</u>, caused the flooding. Accordingly, LNA's complaint alleges damage from negligent conduct unconnected to a flood control project, and *Graci* holds that § 3 does not bar LNA from prosecuting that allegation. Nothing permits the government to rewrite the allegations of LNA's complaint.  To the contrary, at this stage of the case, those allegations must be taken as true.  See LNA Opp. 5.

Moreover, the government is wrong in asserting that the negligence that caused the flooding necessarily was in the design and construction of the levees, rather than of the waterways themselves.  As quoted in LNA's opposition (at 16-17), the complaint alleges that the negligent design, construction, and maintenance of the MR-GO <u>affirmatively produced the flood waters</u> by

---

[2]  The LPVHPP is the government's partially-completed Lake Pontchartrain and Vicinity Hurricane Protection Project.  See Wyner Declaration Exh. B.

funneling storm waters to the heart of New Orleans, intensifying the surge of those waters, raising their height, and increasing their velocity. The walls, by contrast, simply failed to contain the storm surge that the navigation channels produced. Thus, the (asserted) fact that levees were overcome in certain areas does not necessarily mean that the levees were negligently designed and constructed, much less that any such negligence was the sole negligence leading to plaintiffs' alleged damages.

        2.    <u>Additional negligence relating to the levees</u>. LNA's opposition also showed (at 18-19) that the complaint's <u>separate</u> allegations of <u>additional</u> negligence in the design and construction of the levees are not barred by the FCA either, because those levees were not the <u>kind</u> of flood control activity protected by § 3. The government (at 13-15) mischaracterizes LNA's opposition as arguing that § 3 only applies to flooding caused by nature rather than by deficiencies in flood control activities, and cites various cases as rejecting such a distinction. But LNA advanced no such argument. Instead, the distinction that the government misses or ignores is that § 3 immunizes only some flood control <u>activities</u>. Section 3 applies to activities that the government undertakes as a "volunteer" – that is, where it did not cause the flooding risk but is undertaking flood control measures for the public good. See LNA Opp. at 18-19. But where, as here, the flooding risk was caused by government's own prior negligence, there is no basis to conclude that Congress meant to immunize the government for any additional negligence committed in an effort to address the effects of its earlier faulty actions. See *id*.[3]

In short, § 3 also does not apply to LNA's separate allegations of additional negligence in the design and construction of the levees because they are not the type of flood control activity to which § 3 applies. But even if that were not the case, it would only justify the striking of the

---

[3] None of the cases cited by the government involved a situation where the government's flood control activities were being undertaken in an effort to ameliorate a flood risk arising from the government's own prior negligence.

6

allegations focused on the levees, not the dismissal of the allegations that are based on the design, construction, and maintenance of the MR-GO and other navigation channels.

    3.  *Factual dispute over extent of any flood control project*.  LNA's opposition established (at 19-21) that dismissal is unwarranted for the further reason that, in any event, there is a factual dispute as to whether flood control measures had been implemented at each of the locations where flooding occurred.

  The government's reply argues (at 17) that, although LNA submitted extensive evidence that flood control measures in fact had not been implemented at all locations along the waterways from which flooding occurred (LNA Opp. at 21), this evidence is irrelevant in light of supposed "judicial admissions" in LNA's complaint.  Judge Duval rejected this very same argument in denying the government's motion for certification of his FCA ruling,[4] and the same conclusion applies here as well.  To constitute a judicial admission, a statement must, among other requirements, be "deliberate, clear, and unequivocal."  *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001).  The government does not, and cannot, cite anything in LNA's complaint averring that flood control measures had been implemented at all of the locations along the MR-GO, ICGW, and IHNC from which flooding occurred – much less any "deliberate, clear, and unequivocal" statement to that effect.

  The government alternatively argues (at 17) that because LNA is seeking contribution or indemnity, the only relevant flooding is the water from the single canal wall breach through which the barge passed.  That non sequitur is wrong as a matter of law.  LNA has the right to contribution or indemnity based on <u>any</u> flooding <u>from any source</u> that affected the plaintiffs, including the flooding that resulted from the many other wall breaches for which the government

---

[4] See *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, Rec. 6194, at 5 (July 2, 2007).

bears responsibility.[5]  Needless to say, the cases cited by the government (at 17) do not remotely stand for any contrary proposition, but rather simply suggest that the <u>extent</u> of liability is coterminous.[6]

In sum, for all of these reasons, LNA has alleged negligent conduct that is unconnected to a flood control project.  Therefore, pursuant to *Graci*, the government's motion to dismiss under § 3 of the FCA must be denied.

## II.  THE COURT DOES NOT LACK JURISDICTION OVER LNA'S CLAIMS ASSERTED UNDER THE LITTLE TUCKER ACT

The motion that the government filed – the motion that is before the Court – is a motion to dismiss <u>for lack of subject matter jurisdiction</u>.  Indeed, the <u>only</u> ground for dismissal set forth in the motion is that that "this Court lacks subject matter jurisdiction over the third-party claims against the United States."  Rec. 688 at 2.

In its reply, however, the government now argues that it should be allowed to raise issues going to the merits rather than to subject matter jurisdiction.  It asserts first (at 22) that the rules "do not prohibit the filing of a motion to dismiss on grounds other than subject matter jurisdiction after an answer has been filed."  Even if that were true, it is irrelevant because the government's motion is expressly based on subject matter jurisdiction alone.  The government also argues (*id.*) that "[a] party is authorized to make a motion under Rule 12(h)(2) … notwithstanding the omission of such defense or objection in a prior motion."  Again, even if this were true, it is irrelevant here because the government's motion is expressly based on Rules 12(b)(1) and

---

[5]  This is so because, under maritime law, a right to contribution broadly exists against any entity for the proportion of the plaintiff's damages that are attributable to its actions.  See, *e.g.*, *Loeber v. United States*, 803 F. Supp. 1154, 1156 (E.D. La. 1992); *Fuesting v. Lafayette Parish Bayou Vermilion Dist.*, 2007 U.S. Dist. LEXIS 42877, *5-10 (W.D. La. June 13, 2007); *Lakes of Gum Cove Hunting & Fishing, L.L.C. v. Weeks Marine, Inc.*, 182 F. Supp. 2d 527, 547 (W.D. La. 2001); *Miller v. American President Lines, Ltd.*, 989 F.2d 1450, 1459-63 (6th Cir. 1993).

[6]  See *Naquin v. La. Power & Light Co.*, 951 So. 2d 228 (La. Ct. App. 2006); *Truxillo v. Gentilly Med. Bldg., Inc.*, 225 So. 2d 488, 495 (La. Ct. App. 1969).  In fact, these cases hardly stand for even that limited proposition.

12(h)(3), not Rule 12(h)(2). Nor, in any event, are the government's assertions correct. Having failed to raise these merits issues in its original motion to dismiss, the government cannot raise them through another motion to dismiss; instead it may raise them, if at all, only through a different kind of motion that could afford LNA additional procedural protections – such as the right to discovery. See LNA Opp. at 21.

The government also erroneously asserts (at 22) that "[e]ven if the Court were to find that the jurisdictional issues are intertwined with the merits of the cause of action, the Court would be nonetheless empowered to dispose of LNA's claims under Rule 12(b)(6) or Rule 56." As LNA's opposition showed (at 21-22), and the government does not deny, what the Fifth Circuit actually held in *Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004), is that where jurisdictional issues are intertwined with the legal or factual merits of the cause of action, the court must "find that jurisdiction exists" and then address the merits in due course. Therefore, if the issues here are intertwined, this Court must find that jurisdiction exists – and, thus, deny the government's jurisdictional motion, which is the only motion that is pending before the Court.[7]

## A.  LNA Has Standing To Assert Its Little Tucker Act Claims

The government's opening memorandum argued that LNA seeks to assert the plaintiffs' takings claims and lacks standing to do so. Although that argument did go to subject matter jurisdiction and hence was properly raised in the government's motion (because standing implicates subject matter jurisdiction), LNA's opposition showed (at 22-27) that the government's standing argument was meritless. This is so because LNA plainly has <u>standing</u> to assert a claim that <u>LNA is entitled to payment from the government</u> – either (1) as contribution or indemnity for money that LNA is forced to pay the plaintiffs for their property taken by the government, (2) because

---

[7] None of the cases cited by the government suggests that the Court can convert a motion asserting a lack of subject matter jurisdiction into a forbidden second motion to dismiss under Rule 12(b)(6).

9

LNA has acquired the plaintiffs' takings claims by way of subrogation – since in both instances LNA is the proper party (indeed, the only party) with a stake in the outcome of the claim.

Unable to sustain the standing argument asserted in its motion, the government's reply attacks the merits of LNA's causes of action. Reply at 25-28. But that is precisely what the government cannot do in a second motion to dismiss that is limited to the issue of subject matter jurisdiction. Moreover, by arguing the merits, the government admits that jurisdiction here is interwoven with the merits. As set forth above, *Montez* therefore requires the Court to find that jurisdiction exists and, thus, to deny the government's jurisdictional motion.

Even if the Court were authorized to reach the merits, moreover, the government fails to show that LNA's claims do not state a valid cause of action under the liberal standards that apply at this early stage of the case. See *Flotte v. Marie Clesi Ins. Agency*, No. 06-5011, 2007 U.S. Dist. LEXIS 61416, *5 (E.D. La. Aug. 20, 2007) (Berrigan, C.J.) ("This Court cannot dismiss a complaint under Rule 12(b)(6) unless it appears beyond a doubt that the plaintiff cannot prove a plausible set of facts in support of his claim which would entitle him to relief.").

First, LNA's opposition showed (at 22-25) that the Takings Clause of the Constitution will afford LNA a right to indemnity or contribution from the government if LNA is forced to pay the plaintiffs for their property that has been taken by the government, because then – upon making such payment – LNA will be the party whose private property (money) has been taken by the government without just compensation. Contrary to the reply's first argument (at 25), this indemnity/contribution claim is set forth in LNA's complaint (at ¶¶ XXXIII). Moreover, the government provides neither authority nor even any basis for its alternative argument that the Takings Clause does not afford such a remedy. Rather, as the cases cited in LNA's opposition (at 24) make clear, the Takings Clause is designed to ensure that the government does not force

10

individuals to bear the costs of public burdens, which is just what LNA would have to do if denied a right to indemnity or contribution.  In this regard, the government miscomprehends the analogy shown by the illegal exaction cases cited in LNA's opposition (at 24-25).  What those cases show is that where a private party is forced to pay another private party amounts that should have been paid by the government, the courts will imply a right to remuneration into the law that required government payment.  The same principle applies here:  if LNA is forced to pay the plaintiffs amounts that the government owed them under the Takings Clause, then LNA has a right to remuneration from the government under the Clause.

Second, LNA's opposition showed (at 25-27) that LNA has the right to assert plaintiffs' takings claims that LNA will acquire by way of subrogation if it is forced to pay the plaintiffs for the value of their properties.  Contrary to the government's first argument (at 26), LNA's complaint alleges (at ¶¶ XXXII and XXXV) all of the elements that would be needed to create a subrogation relationship:  namely, that the government's actions constituted a taking of the plaintiffs' properties and that LNA is entitled to recovery if it is required to pay the plaintiffs for their properties.  The government's second argument (at 27) is mistakenly based on the law of <u>contractual</u> subrogation.  As shown by the cases cited in LNA's opposition (at 26-27), if LNA is forced to pay the plaintiffs, then LNA will acquire their takings claims against the government through the doctrine of <u>equitable</u> subrogation – that is, subrogation by operation of law.  Finally, the government cites numerous cases purportedly holding that a takings claim can be brought only by the party that owned the property at the time of the taking.  But the government simply does not rebut, or even address, the demonstration in LNA's opposition (at 25-26 & n.12) that that principle only applies in the case of <u>voluntary</u> assignments.  That is so because the sole basis for that principle is the federal Anti-Assignment Act (see *Dow v. United States*, 357 U.S. 17

(1958)), which does not apply to transfers by operation of law, including transfers by way of equitable subrogation (see *United States v. Aetna Cas. & Surety Co.*, 338 U.S. 366, 373-76 (1949)).  Because this case involves equitable subrogation, the cases cited by the government – all of which involved voluntary transfers covered by the Anti-Assignment Act – are inapposite. Indeed, contrary to the reply's assertion (at 27), prior cases have allowed takings claims to be litigated by way of subrogation.  See *Monarch Ins. Co. v. District of Columbia*, 353 F. Supp. 1249 (D.D.C. 1973) (upholding insurer's ability to assert taking claim acquired by subrogation but dismissing claim on its merits), *aff'd mem.*, 497 F.2d 684 (D.C. Cir. 1974); *Continental Cas. Co. v. Town of Blacksburg*, 846 F. Supp. 486 (W.D. Va. 1994) (same).[8]

In sum, the merits of LNA's causes of action are not properly before the Court, but even if they were, the government has not shown that it is entitled to dismissal of those claims.

### B. LNA's Claims Do Not Sound in Tort

LNA's opposition showed (at 27-30) that the complaint amply alleges a taking, not just a tort, because it alleges that the government's actions have resulted in inevitably recurring inundation, which is the standard for a taking.  The government's reply admits both of these points – that inevitably recurrent flooding constitutes a taking (Reply at 28) and that LNA's complaint alleges "inevitably recurring inundation" (Reply at 29).

The government nevertheless first argues that, under *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), LNA has to plead specific facts.  But the Supreme Court has reaffirmed, after *Twombly*, that under Rule 8(a), "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson*

---

[8] See also *Fifth Third Bank of W. Ohio v. United States*, 52 Fed. Cl. 202, 207-08 (2002) (holding that subrogee could bring takings claim to recover on "an[] obligation that he satisfied between [another party] and the Government" but dismissing claim on merits); *United States v. Certain Parcels of Land in the City of Philadelphia*, 213 F. Supp. 904 (E.D. Pa. 1963) ("Petitioner is subrogated to the previous owner's rights against the Government for reimbursement.")

*v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted).[9] In any event, LNA's opposition showed (at 28-29) that LNA's complaint does set forth specific facts explaining why the flooding will inevitably recur. The reply argues (at 29) that the complaint only discusses one flood – the one caused by Katrina. But that is plainly irrelevant, both (1) because the complaint explains why the flooding experienced in Katrina will inevitably recur (because the navigation channels funnel and exacerbate storm surges), and (2) because the Court can take judicial notice of the prior flooding during Hurricane Betsy.[10]

The government's reply also argues (at 30-32) that the decision in *Nicholson v. United States*, 77 Fed. Cl. 605 (2007), suggests that LNA's allegations do not state a takings claim. But the reply fails to forthrightly advise the Court of the key differences between the plaintiffs' allegations in *Nicholson* and LNA's allegations here. The plaintiffs in *Nicholson* alleged that defects in the flood control system constituted a taking. The judge held that this allegation did not rise of the level of a taking because "the construction of the floodwalls did not cause the flooding; the flooding was caused by the storm surge." *Id.* at 617. Here, by contrast, LNA alleges that defects in the design, construction, and maintenance of the navigation channels did cause the flooding because they funneled and intensified the surge of water that allegedly damaged the properties and because they will inevitably do so repeatedly in the future as well. Indeed, a separate case is pending in the Court of Federal Claims that asserts a taking based on the defects in the MR-GO, and that case has not been dismissed. *Tommaseo v. United States*, No. 05-1119L (Fed. Cl.) (currently in discovery).

---

[9] As the Seventh Circuit has explained, *Erickson* "clarified that *Twombly* did not signal a switch to fact-pleading in the federal courts." *Airborne Peepers & Video, Inc. v. AT&T Mobility LLC*, 2007 U.S. App. LEXIS 20214, *11 (7th Cir. Aug. 24, 2007).

[10] The reply's argument (at 31 n.9) that the flooding during Hurricane Betsy does not further show inevitably recurring flooding because it took place prior to the LPVHPP is wrong. The flooding during Hurricane Betsy confirms that defects in the navigation channels – which existed at the time, which still exist today, and which are the focus of LNA's allegations, as explained above – will inevitably produce flooding.

Finally, LNA's opposition pointed out that this whole argument does not go to subject matter jurisdiction and thus is not properly before the Court at this time. The reply contains no response to that dispositive threshold point.

### C. The Complaint Properly Limits LNA's Claims to $10,000 Per Plaintiff

The government's initial memorandum argued that LNA's complaint asserts a single indemnity claim. LNA's opposition showed (at 30) that, to the contrary, the complaint expressly alleges a separate, independent claim against the government of no more than $10,000 for each plaintiff. The government's reply now argues (at 33-35) that, as a matter of law, LNA only has one single indemnity cause of action that covers all of the plaintiffs and that cannot be split.

Tellingly, the government does not cite any authority – not a single case or statutory provision – in support of its assertion. That alone defeats the government's motion. Nor, in any event, is the government's assertion correct. As LNA explained in its opposition (at 31), LNA has a separate cause of action for indemnity or contribution for each plaintiff that it pays because the equitable right to indemnity or contribution accrues when payment is made to the third party. See *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa*, 761 F.2d 229, 236 (5th Cir. 1985) ("Under general maritime law, … actions for indemnity and contribution do not finally accrue until the principal defendant is cast in judgment on the principal demand."); *Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 735 (5th Cir. 1983) ("a cause of action for indemnity arises separately from and after liability has been established"); *Am. Roll-On Roll-Off Carrier, LLC v. P&O Ports Balt., Inc.*, 479 F.3d 288, 292 (4th Cir. 2007) ("It is well established that a maritime claim for indemnity 'does not accrue until the indemnitee's liability is fixed by a judgment against or payment by the indemnitee.'") (citation omitted). Indeed, the government's argument that LNA has one single, indivisible indemnity claim covering all of the plaintiffs is disproved by

14

the point that, if the plaintiffs all sued LNA in separate lawsuits, LNA plainly could assert a separate third-party indemnity claim against the government in each case.

Because LNA's <u>equitable</u> indemnity and contribution claims separately arise by operation of law for each plaintiff that LNA pays, it makes no difference whether <u>contractual</u> indemnity claims that all arise from a single contract are aggregated as one single, indivisible cause of action. Nevertheless, the government errs in asserting that they do. In *In re All Asbestos Cases*, 603 F. Supp. 599, 602 N.14 (D. Haw. 1994), for example, the court held that indemnity claims relating to over 100 asbestos plaintiffs were not to be aggregated for purposes of the Little Tucker Act's $10,000 limit, even though the asbestos manufacturers did not have separate contracts with the government relating to each plaintiff.

## CONCLUSION

For all of these reasons, the government's motion to dismiss LNA's complaint for lack of subject matter jurisdiction should be denied in its entirety.[11]

>Respectfully submitted,
>
>Robert B. Fisher, Jr., T.A. (#5587)
>Derek A. Walker (#13175)
>Ivan M. Rodriguez (#22574)
>Parker Harrison (#27538)
>**CHAFFE MCCALL, L.L.P.**
>2300 Energy Centre
>1100 Poydras Street
>New Orleans, LA 70163-2300
>Telephone: (504) 585-7000
>Facsimile: (504) 585-7075
>Fisher@chaffe.com
>Walker@chaffe.com
>Harrison@chaffe.com

---

[11] As previously stated, if the Court finds any defect in LNA's complaint, LNA respectfully requests leave to amend, which will not prejudice the government.

15

                                  /s/ John D. Aldock
                                  John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

September 11, 2007

**Certificate of Service**

I hereby certify that I have on this 12th day of September, 2007 caused a copy of the foregoing pleading to be served on counsel for all parties to this proceeding by electronic notification.

/s/ John D. Aldock
John D. Aldock