FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG -1  AM 9: 46

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| | | |
|---|---|---|
| **MAUREEN O'DWYER** | * | CIVIL ACTION NO. **06 -4024** |
| | * | |
| **VERSUS** | * | SECTION |
| | * | |
| **THE UNITED STATES OF AMERICA** | * | JUDGE **SECT.K MAG 2** |
| | * | |
| | * | MAGISTRATE |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### VERIFIED, PROTECTIVE, RE-FILED COMPLAINT
### FOR COMPENSATORY AND EXEMPLARY
### DAMAGES, AND FOR REASONABLE
### ATTORNEY'S FEES AND TAXABLE COSTS
### IN A CLASS ACTION LAWSUIT

I.

This is a class action for money damages arising out of the destruction of a major

Metropolitan Area, which occurred as a result of fault and neglect by the Peoples'

Government, to whom the People had entrusted their lives and property, and by virtue of

the Peoples' Government's breach of the implied warranty of workmanlike performance

which was owed the People and their property, and by virtue of the taking of the Peoples'

property by the Peoples' Government without just compensation.

II.

Plaintiff in the above styled and numbered cause is **Maureen O'Dwyer** who,

prior to the events described herein was domiciled at 5939 Vicksburg Street, New

Fee $350.00
Process
X Dktd
CtRmDep
Doc. No.

Orleans, Louisiana 70124, in a residential area known as "Lakeview". The aforesaid municipal address was and now is owned by Maureen O'Dwyer free and clear of any liens, mortgages or encumbrances.

III.

Plaintiff is representative of the following classes of people, to-wit:

A.   Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered bodily injury, physical pain and suffering, anguish, anxiety, mental suffering, fear, fright, despair, hopelessness and emotional distress as a result of defendant's intentional and negligent malfeasance, misfeasance and nonfeasance prior to and after Hurricane KATRINA.

B.   Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered loss of or damage to property, both real and personal, and/or diminution in the value of their property as a result of defendant's intentional and negligent malfeasance, misfeasance and nonfeasance prior to and after Hurricane KATRINA.

C.   Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered purely economic losses as a result of defendant's intentional and negligent malfeasance, misfeasance and nonfeasance prior to and after Hurricane KATRINA, including lost income, lost profits and increased living expenses.

D.   Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered pollution damage, including bodily injury, contamination of real or personal property, lost revenues, profits and earning capacity due to

pollution, and damages for subsistence use, as well as damages for the cost of containment, clean-up and remediation and restoration, and for damage to the environment.

E.      Citizens and/or residents of the Parish of Orleans, State of Louisiana, who experienced the threat of loss or damage as a result of defendant's intentional, and negligent malfeasance, misfeasance and nonfeasance during and after Hurricane KATRINA.

IV.

Made defendant in this action is the United States of America which, at all times pertinent, acted by and through its agency and instrumentality, the United States Army Corps of Engineers.

V.

This Court is the exclusive Court of competent jurisdiction over the United States of America.  More particularly, this Court has jurisdiction of the claims herein asserted by virtue of the following, <u>inter alia</u>:

Original jurisdiction pursuant to the Fifth Amendment of the United States Constitution, since this case also involves claims for the taking of plaintiff's property without just compensation[1]

Original jurisdiction pursuant to 28 USC §1331

Original jurisdiction pursuant to 28 USC §1346

Original jurisdiction pursuant to 28 USC §2671, <u>et seq.</u>

This Court also has jurisdiction of the claims herein asserted by virtue of the following, which defendant violated, thus entitling plaintiffs to damages from defendant:

---

[1]  This Court has concurrent jurisdiction over these claims with the United States Court of Federal Claims under the circumstances of this case.

The Oil Pollution Act of 1990 and precursor legislation

The Comprehensive Environmental Response Compensation and Liability Act and precursor legislation

The Federal Water Pollution Control Act

The Clean Water Act

The Clean Air Act

The National Environmental Policy Act

The Toxic Substances Control Act

The Resource Conservation and Recovery Act

Alternatively, this Court has jurisdiction of the claims herein asserted pursuant to 28 U.S.C. §1333 (1), and pursuant to the Suits in Admiralty Act (46 U.S.C. §741, et seq.), by virtue of the defendant's negligent dredging of navigable waterways, failure to contain navigable waters of the United States in the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal (a/k/a "The Industrial Canal"), the London Avenue Canal and the Seventeenth Street Canal, and by virtue of defendant's defective and negligent design, construction, inspection, maintenance and operation of an entire navigable waterway system, including the water bodies identified, supra, which resulted in, injury and damage to plaintiff, and to those similarly situated, on land.

VI.

Plaintiff specifically alleges causes of action against defendant, the United States of America, pursuant to the following Louisiana State laws, which would render a private person liable to plaintiff under like circumstances to those presented in the case at bar:

LSA-R.S. 14:39

LSA-R.S. 14:55

-4-

LSA-R.S. 14:56

LSA-R.S. 14:134

Article 667 of the Louisiana Civil Code

Article 2315 of the Louisiana Civil Code

Article 2315.1 of the Louisiana Civil Code

Article 2315.2 of the Louisiana Civil Code

Article 2315.6 of the Louisiana Civil Code

Article 2316 of the Louisiana Civil Code

Article 2317 of the Louisiana Civil Code

Article 2317.1 of the Louisiana Civil Code

Article 2322 of the Louisiana Civil Code

The Louisiana Environmental Quality Act

The Louisiana Air control Law

The Louisiana Water Control Law

The Louisiana Oil Spill Prevention and Response Act

Plaintiff also avers causes of action against defendant for trespass and nuisance as those terms have been interpreted in Louisiana jurisprudence, and aver that defendant is guilty of the taking of plaintiff's property without just compensation.

Plaintiff also avers that maritime torts were committed by defendant against plaintiff and her property, and that defendant breached the warranty of workmanlike performance owed plaintiff and her property by defendant under the general maritime law.

VII.

The Mississippi River Gulf Outlet ("MRGO") is a navigation channel designed, constructed, inspected, maintained and operated by the United States of America, through its agency and instrumentality, the U.S. Army Corps of Engineers. The MRGO is a 76-mile navigation channel oriented in a northwestern-southeastern direction, bisecting the marshes of Lower St. Bernard and the shallow waters of Chandeleur Sound. It was originally authorized to a depth of 36 feet, a surface width of 650 feet, and bottom width of 500 feet. Since the construction of the MRGO was completed in 1965, the MRGO's banks have eroded so that the surface width now averages 1,500 feet, well-beyond the dimensions originally authorized (read "mandated") by Congress.

VIII.

The very existence of the MRGO directly caused the destruction of the coastal marshes and wetlands which had previously served as a "buffer" to hurricane winds and storm surge, the effect being that the MRGO became a "hurricane highway", aimed straight at the heart of the Greater New Orleans Metropolitan Area. Additionally, dredging activity in the MRGO has contributed to the widening of the waterway and to the destruction of the "buffer" marshes and wetlands.

IX.

When or shortly after Hurricane KATRINA made landfall in Louisiana, levees along the MRGO failed in numerous places along its length, directly flooding most of St. Bernard Parish. The existence of and the eroded condition of the MRGO intensified KATRINA's initial storm surge, raised the height of the wall of water which accompanied it, and increased the velocity of the surge experienced by levee structures

which were intended to resist hurricane effects, including the levee and floodwall structures which should have contained the navigable waters described herein.

X.

The Gulf Intracoastal Waterway from its junction with the MRGO and eastward to its outlet into Lake Borgne and Mississippi Sound, is a dredged small craft and barge channel approximately 400 feet in width, with a project depth of 12 feet. West of the MRGO junction, however it becomes a ship channel and widens to 800 feet and 32-35 feet in depth to accept MRGO ship traffic. The intersection of the wider and deeper Gulf Intracoastal Waterway with the Inner Harbor Navigation Canal (a/k/a the "Industrial Canal") causes a narrowing funnel shape into the Industrial Canal, which has a depth of approximately 30 feet, but a width of approximately 400 feet, and which is blocked at its south end by locks: thus there exists a waterway system which becomes progressively narrower and shallower as it proceeds toward the New Orleans Ninth Ward, theoretically heightening any storm surge from the north and east into the Industrial Canal.

XI.

During Hurricane KATRINA, the "funnel effect" described in the preceding Article permitted intensified storm surge to overtop levees and retaining wall structures, leading to scouring on the landward side of the levees, which in turn undermined the earthen levees along the MRGO, the Gulf Intracoastal Waterway and the Industrial Canal, and resulted in the inundation by water of parts of Orleans Parish that would not have occurred but for the existence of and deteriorated condition of the MRGO and the inadequacies of the levee and retaining wall structures along the MRGO, the Gulf Intracoastal Waterway and the Industrial Canal, all of which were defectively and

negligently designed, constructed, inspected, maintained and operated by the U.S. Army Crops of Engineers in violation of acts of Congress and in violation of the Corps of Engineers' own regulations, manuals and procedures.

## XII.

Plaintiff specifically avers that the United States of America, its agency, instrumentality and its employees, negligently, and with malfeasance, misfeasance and nonfeasance, failed in its duty to ensure the competent design, construction, inspection, maintenance and operation of an entire navigable waterway system, consisting of the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, the Inner Harbor Navigation Canal (a/k/a "The Industrial Canal"), the London Avenue Canal, and the Seventeenth Street Canal, and their environs and levees, which were defectively and negligently designed, constructed inspected, maintained, operated and dredged, the result being that the United States of America negligently failed to contain navigable waters of the United States, in violation of acts of Congress and in violation of the U.S. Corps of Engineers' own regulations, manuals and procedures, and in so doing also breached the implied warranty of workmanlike performance which was owed each inhabitant of the Greater New Orleans Metropolitan Area by the U.S. Army Corps of Engineers and its employees.

## XIII.

Plaintiff avers that as a result of the aforesaid negligence, malfeasance, misfeasance and nonfeasance, breach of duty, breach of the implied warranty of workmanlike performance, and violation of statute(s) regulations, manuals and procedures by defendant and its agency and instrumentality, plaintiff's home at 5939

Vicksburg Street, sustained severe water damage and all contents in the garage and on the first floor were destroyed, plaintiff lost her job with the Orleans Parish Public School System, and plaintiff suffered mental anguish and emotional distress, inconvenience, relocation expenses, increased living expenses and diminution in the pre-KATRINA value of her property, as well as other quantifiable losses for which money damages are being sought from defendant in this action, including damages by virtue of pollution.

### XIV.

Plaintiff further avers that defendant negligently, and with malfeasance, misfeasance and nonfeasance, failed in its duty to properly prepare for and respond to the needs of the People, both prior to and in the aftermath of Hurricane KATRINA, resulting in further damages to plaintiff and to other persons, firms and corporations similarly situated, all in violation of Acts of Congress, the provisions of the National Response Plan and Area Contingency Plan, and of agency regulations, manuals and procedures.

### XV.

Plaintiff avers that on July 26, 2006, defendant, the United States of America, filed a Motion to Dismiss (Record Document No. 822 in Civil Action No. 05-4182) pertaining to Civil Action No. 06-2268 on the Docket of This Honorable Court. In the said Motion to Dismiss, defendant invoked immunity from civil liability pursuant to: (1) The Flood Control Act of 1928, and more particularly pursuant to 33 U.S.C. § 702(c); (2) pursuant to the "due care" exception to the Government's waiver of sovereign immunity under the Federal Tort Claims Act, and more particularly pursuant to 28 U.S.C. §2680(a); and (3) pursuant to the FTCA's discretionary function exception, codified in 28 U.S.C. §2680(a). Plaintiff avers that the aforesaid Motion to Dismiss filed by defendant, the

United States of America, constitutes a denial of any and all claims against the Government by the Citizenry of the Greater New Orleans Metropolitan area, rendering this Civil Action both timely and proper against the United States of America.

XVI.

In the alternative, plaintiff avers that on October 12, 2005, her duly appointed and authorized attorney delivered to the United States Army Corps of Engineers, New Orleans District Office, a copy of plaintiff's Complaint in the matter entitled: "Maureen O'Dwyer vs. The United States of America", being Civil Action No. 05-4181 "K"(5) on the docket of This Honorable Court. The Complaint which was delivered to the United States Army Corps of Engineers on October 12, 2005, accompanied a Freedom of Information Act request for documents and other tangible things, and was specifically identified as a piece of "litigation involving the United States of America, acting by and through its agency and instrumentality, the U.S. Army Corps of Engineers". Plaintiff avers that by delivering a copy of the referenced Complaint to the United States Army Corps of Engineers on October 12, 2005, plaintiff submitted the "functional equivalent" of a valid administrative claim to the appropriate Federal agency, and that plaintiff has, therefore, exhausted administrative remedies pursuant to the provisions of 28 U.S.C. §2675, since more than six months has now elapsed since the claim was first presented, and plaintiff opts to deem that passage of time as a final denial of her claim.

XVII.

Further in the alternative, on January 20, 2006, by cover letter of the same date, sent "certified, return receipt requested", plaintiff's attorney transmitted the executed original of plaintiff's Standard Form 95 (Rev. 7-85) in the sum certain of $2,950,000.00

against the United States of America, through its agency and instrumentality, the U.S. Army Corps of Engineers. Plaintiff avers that the aforesaid cover letter, with attachments, was received by "Nadine Roubichon" of the U.S. Army Corps of Engineers. Although the date on which Ms. Roubichon received the letter is unknown, because Ms. Roubichon failed to properly fill out the return receipt, it had to have been received not later than January 31, 2006, because on that date the return receipt was posted back to the sender. Today's date, August 1, 2006, is six-months and one day since plaintiff's Standard Form 95 (Rev. 7-85) was received by the U.S. Army Corps of Engineers, and plaintiff opts to deem that passage of time, and the agency's failure to act on her administrative claim, as a denial of her claim. Accordingly, this Civil Action against the United States of America is timely and proper under the circumstances. Plaintiff attaches as Exhibit "A" (1 through 7) the cover letter, plaintiff's Standard Form 95, and the return receipt.

XVIII.

Further in the alternative, assuming admiralty and maritime jurisdiction, and the applicability of the Suits in Admiralty Act to the claims herein asserted, plaintiff is entitled to bring this action without any prior exhaustion of administrative remedies.

XIX.

Plaintiff further avers that defendant, the United States of America, is not entitled to claim or to invoke immunity from liability for the following reasons, inter alia:

      a.    The notion of "sovereign immunity" is not applicable to a Democracy, such as the United States of America, which has no sovereign, and where the elected government is a government of the people, by the people, for the people.

-11-

b. The United States of America has waived any right to claim or to invoke sovereign immunity by virtue of the provisions of the Federal Tort Claims Act, the Suits in Admiralty Act, and other legislation.

c. The United States of America, through Congress and through its agency and instrumentality, the U.S. Army Corps of Engineers, has waived immunity for loss and/or damage due to fault or negligence of the United States of America or its contractors, which this case specifically involves.  E.G. 42 U.S.C. §1962 d-15 and 33 C.F.R. §203.82.

d. The provisions of the Flood Control Act of 1928 are inapplicable to this case, because the structures, projects and works which were defectively designed, constructed, inspected, maintained, operated and dredged by the United States of America, its agencies and instrumentalities and their employees, in this instance, have absolutely nothing to do with that legislation, which involved the Mississippi River.

e. The immunity arguably conferred by the Flood Control Act of 1928 (which is assumed for the sake of argument only) does not apply to, and was never intended by Congress to apply to, damages of the type suffered by plaintiff in this case.

f. The structures, projects, works and navigable waterway systems in question are not flood control projects, but navigation projects,

hurricane protection projects, water resources development projects, or projects other than flood control projects, so that The Flood Control Act of 1928 is inapplicable to the claims herein asserted.

g.    The waters which inundated the Greater New Orleans Metropolitan Area and caused the damages complained of herein were not flood waters, and the damages sustained by plaintiff were not caused by flood waters as that term is used in the Flood Control Act of 1928.

h.    Immunity is unavailable as an affirmative defense, because:

        i.    The errors and omissions complained of herein were in direct violation of Acts of Congress and the U.S. Army Corps of Engineers regulations manuals and procedures.

        ii    The errors and omissions complained of herein were known to the U.S. Army Corps of Engineers prior to Hurricane KATRINA.

        iii.    The errors and omissions complained of herein amount to criminal conduct and, alternatively, to gross, reckless or wanton negligence, for which immunity is unavailable.

i.    Amendment of the U.S. Constitution "trumps" the provisions of the Flood Control Act of 1928, i.e., inalienable rights specifically granted by the U.S. Constitution take precedence over legislation,

unless the legislation is couched in terms of constitutional amendment.

j.    Defendant, the United States of America, is not entitled to invoke sovereign immunity because the Lake Pontchartrain Project, which was authorized (read "mandated") by the U.S. Congress in 1965, is still incomplete, and because an agency and instrumentality of the United States of America, namely the U.S. Army Corps of Engineers, therefore remained primarily responsible for the design, construction, inspection and maintenance of all works forming part of that Project.

k.    Defendant, The United States of America, is not entitled to invoke sovereign immunity because neither its agency and instrumentality, the U.S. Army Corps of Engineers, nor its employees, had any discretion to violate acts of Congress and the rules and regulations of the agencies, which had the force of law.

l.    Defendant, the United States of America, is not entitled to invoke sovereign immunity because none of the errors and omissions complained of herein fell within the due care or discretionary function exceptions to waiver of sovereign immunity by the United States of America or its agencies and instrumentalities under the Federal Tort Claims Act.

Plaintiff reserves the right to amend the allegations of the above and foregoing Article as the facts become more fully known.

-14-

## XX.

It is averred that this action arises out of the same transactions or occurrences, or involves subject matter that either comprises all or a material part of the subject matter or operative facts of the following related Civil Actions, also pending before This Honorable Court:

05-4181

05-4237

05-4419

06-1850

06-1885

## XXI.

Plaintiff pleads "compensation" (as that term is used in the Louisiana Civil Code Article 1893, et seq.) and the "right of recoupment", as well as "offset" and "set-off", against the United States of America, through its agencies and instrumentalities, the Department of the Treasury, the Internal Revenue Service and the Social Security Administration.

## XXII

Plaintiff specifically invokes the doctrine of res ipsa loquitur in connection with the factual and legal circumstances which resulted in the bringing of this action.

## XXIII.

Plaintiff demands trial by jury as to all issues so triable.  If trial by jury is not available, then plaintiffs request an advisory jury pursuant to the provisions of Rule 39(c), Federal Rules of Civil Procedure, or any other applicable rule.

### XXIV.

Plaintiff further avers that she is entitled to an award of reasonable attorney's fees, to be fixed at the maximum percentage of the total award allowed by law.

**WHEREFORE**, plaintiff prays that her class status be recognized and certified as such, and that after trial on the merits, and all due proceedings had, that there be judgment entered herein in favor of plaintiff and against defendant for the full amount of plaintiff's damages, plus reasonable attorney's fees, prejudgment interest and costs.

Respectfully submitted,

LAW OFFICES OF
ASHTON R. O'DWYER, JR.

By: _____
    Ashton R. O'Dwyer, Jr.
    Bar No. 10166
    One Canal Place
    365 Canal Street
    Suite 2670
    New Orleans, LA 70130
    Telephone: (504) 561-6561
    Facsimile: (504) 561-6560

## VERIFICATION

**STATE OF LOUISIANA**

**PARISH OF ORLEANS**

    **BEFORE ME,** the undersigned authority, personally came and appeared:

**ASHTON R. O'DWYER, JR.**

who, being first duly sworn, did depose and say:

    That he is an attorney licensed to practice law in the State of Louisiana;  that he has prepared the above and foregoing Complaint, and that the allegations and statements made therein are true and correct to the best of his knowledge, information and belief.

                                                     **ASHTON R. O'DWYER, JR.**

**Sworn to and subscribed before me,**

This _\c\_ day of August, 2006.

              **NOTARY PUBLIC**

DOW MICHAEL EDWARDS, 26874
Notary Public in and for
the State of Louisiana.
My Commission is for Life.

-17-