UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO.: 05-4182 "K"(2) |
| | * | |
| | * | JUDGE DUVAL |
| PERTAINS TO: INSURANCE, | * | |
| *Xavier Univ. of La.*, No. 06-0516 | * | MAGISTRATE JUDGE WILKINSON |
| | * | |

## DEFENDANT TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S RESPONSE TO PLAINTIFF'S APPEAL OF MAGISTRATE JUDGE WILKINSON'S AUGUST 28, 2007 ORDER AND REASONS

Plaintiff Xavier University of Louisiana ("Xavier") has appealed from a discovery ruling by Magistrate Judge Wilkinson ordering production of documents pertaining to grants that Xavier received after Hurricane Katrina from the Federal Emergency Agency ("FEMA"), the U.S. Department of Housing & Urban Development ("HUD") and other governmental or quasi-governmental sources of funding. Xavier also appeals Magistrate Judge Wilkinson's ruling denying Xavier's motion to quash subpoenas issued to Landis Construction Company ("Landis"), Xavier's general contractor with respect to the repairs to its campus, and FoxCor, Inc. ("FoxCor"), Xavier's construction consultant. Magistrate Judge Wilkinson denied the motion to quash insofar as Travelers sought documents pertaining to Xavier's applications to FEMA and documents pertaining to capital improvements made by Xavier, during the 18 months

immediately preceding Hurricane Katrina, to buildings on Xavier's campus that it claims sustained covered damage as a result of Katrina.

Magistrate judges have broad discretion in ruling on discovery disputes, and a district judge will overrule a magistrate judge only where the ruling was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Magistrate Judge Wilkinson's rulings were well within his discretion. He reasonably concluded that the FEMA and HUD documents (and other similar documents) were likely to contain information relevant to the cause and extent of the damage to Xavier's campus. To the extent that Xavier contends that Magistrate Judge Wilkinson should not have made a distinction between "governmental" and "non-governmental" sources of funding, the appropriate remedy is to modify the order to require that both types of documents be produced (to the extent that they contain any information concerning the damage to Xavier's campus). Magistrate Judge Wilkinson also reasonably concluded that the capital improvements to Xavier's campus immediately prior to Katrina would be relevant to the condition of its buildings at the time of the loss.

Accordingly, Magistrate Judge Wilkinson's August 28, 2007 Order should be modified slightly, to also require Xavier to produce documents pertaining to relevant "non-governmental" sources of funding, and in all other respects should be affirmed.

## BACKGROUND

In response to Travelers' requests for production of documents, Xavier refused to produce any documents pertaining to its flood insurance policies and its claims thereunder. Xavier also withheld documents pertaining to its receipt of funds following Hurricane Katrina from FEMA, HUD and other sources. On June 6, 2007, Travelers moved to compel Xavier to produce these documents. (Rec. Docs. 5500.)

225016-1                                2

After briefing was completed on Travelers' motion to compel, Magistrate Judge Wilkinson issued an Order and Reasons on July 12, 2007. (Order, Rec. Doc. 6428 (attached as Exhibit A hereto).) Judge Wilkinson ruled that Xavier was required to respond to interrogatories concerning its flood insurance and produce the flood insurance documents. He noted that "[t]he judges of this court have held in similar Hurricane Katrina insurance coverage cases that the proceeds from a plaintiff's flood insurance policy are relevant to the amount that the plaintiff can recover under its other policies, because an insured cannot be indemnified by its insurance policies for more than the total value of its loss." (Id., at 4.) Judge Wilkinson further concluded that "this court need not decide whether the collateral source rule prohibits the admission of evidence concerning Xavier's flood insurance proceeds to find that Travelers may discover that information," finding that "[s]uch information is relevant to the parties' claims and defenses and reasonably calculated to lead to the discovery of admissible evidence." (Id., at 5.)

With respect to documents pertaining to Xavier's applications to FEMA, HUD and other funding sources, Judge Wilkinson initially ruled as follows:

> Xavier is a private institution of higher learning. It can safely be assumed that Xavier regularly solicits and receives gifts and grants of all types for a wide variety of purposes. Such proceeds are of an entirely different kind than the proceeds of the NFIP policy discussed above. The fact that Xavier may be in a position to tap non-insurance proceeds to assist itself in a time of disaster has nothing to do with the claim in this case that Travelers failed to meet its contractual, insurance obligations to do so. . . .
> 
> Defendant argues that plaintiff's characterization of its losses and the causes of its losses in its applications for other funding sources is relevant to the claims and defenses in this action. However, Xavier's claim is that Travelers owes it indemnity under the policy for all of its damages, not just damages caused by wind. The presiding district judge has denied defendant's motion to dismiss plaintiff's claim for damages caused by inundation. Although that holding is on appeal, the Fifth Circuit has not yet ruled and plaintiff's claim for all damages remains in this case. Thus, how Xavier may have characterized its damages when applying for other funds is irrelevant.

(Id., at 6-7).

On July 10, 2007, Xavier filed a motion to quash subpoenas that Travelers had issued to Landis and FoxCor. Xavier moved to quash the subpoenas to the extent that they sought: (1) documents pertaining to Xavier's flood insurance claim; (2) documents pertaining to non-insurance funds that Xavier applied for from FEMA; and (3) documents pertaining to work performed by Landis and/or FoxCor on Xavier's campus in the 18 months immediately prior to Katrina. (Rec. Doc. 6401.) Travelers' opposed the motion to quash (Rec. Doc. 6771) and also sought reconsideration of Magistrate Judge Wilkinson's ruling to the extent he denied Travelers' motion to compel the production of documents pertaining to applications made to FEMA, HUD and other funding sources. (Rec. Doc. 6667.) In seeking reconsideration, Travelers argued that: (1) the question of the extent to which Xavier's losses were caused by wind versus flood would remain an important issue in this case under the District Court's decision, regardless of how the Fifth Circuit ruled, and thus how Xavier characterized its losses in applications for grants, donations, and other sources of collateral funding was a highly relevant area of inquiry; and (2) there was substantial reason to believe that Xavier's applications for grants and donations contain information pertinent to both the cause and the <u>extent</u> of Xavier's losses, which was indisputably a critical issue in this case. (Id.)

After the U.S. Fifth Circuit ruled on the water damage exclusion on August 2, 2007, Travelers filed a reply brief on its motion for reconsideration. (Rec. Doc. 6843.) In its reply brief, Travelers explained how, under the Fifth Circuit's decision, the focus of the dispute between Travelers and Xavier would now be on determining what portion of the damage to Xavier's property was caused by wind and wind-driven rain from Hurricane Katrina, as opposed to the floodwaters. In view of the Fifth Circuit's decision, how Xavier characterized the cause of its losses (wind vs. flood) in applications to FEMA, HUD and others became unquestionably

225016-1                                          4

relevant to the parties' claims and defenses. (Id.) Travelers also supplemented its opposition to the motion to quash to address the same issues arising out of the Fifth Circuit's decision. (Rec. Doc. 6845.) In response, Xavier filed a sur-reply memorandum, claiming for the first time, based on a conclusory and self-serving affidavit, that the documents pertaining to the FEMA and HUD grants purportedly did not contain any information characterizing the cause of the damage to Xavier's premises. (Rec. Doc. 6931.) Previously, Xavier had never asserted that the FEMA documents did not contain any information pertinent to the cause of the damage. Travelers responded to the sur-reply, principally to address the impropriety and incompleteness of Xavier's last-minute affidavit. (Rec. Doc. 6985.)

In an order dated August 28, 2007, Magistrate Judge Wilkinson granted in part and denied in part the motion for reconsideration and the motion to quash. He noted that "[t]he Fifth Circuit has now held that Xavier's policy unambiguously excludes damage caused by flood waters, regardless of the cause of the flooding," and that "[t]herefore, part of my rationale for deciding the motions previously is no longer applicable and reconsideration is necessary." (Order, Rec. Doc. 7346, at 3-4 (attached as Exhibit B hereto).) He concluded that, based on the Fifth Circuit's decision, "information that distinguishes between damage caused by flood and damage caused by other events that may be covered by the Travelers policy is now relevant." (Id., at 4.) Xavier was ordered to produce documents responsive to Travelers' requests, limiting the scope of the requests to documents pertaining to "grants or other funds from governmental or quasi-governmental agencies, such as FEMA, HUD, the Small Business Administration, the Department of Education or the Louisiana Recovery Authority . . . ." (Id., at 5.) Magistrate Judge Wilkinson ruled that these documents "are reasonably calculated to lead to the discovery of admissible evidence, as they may reveal how Xavier characterized its losses in its applications

for the specific grants or donations identified in these requests," and that such documents also "may provide admissible evidence concerning the extent of Xavier's damage claim." (Id.)

Magistrate Judge Wilkinson also denied Xavier's motion to quash the subpoenas to Landis and FoxCor insofar as they sought documents related to any application to FEMA, for the same reasons. (Id., at 7.) He also required Landis and FoxCor to produce "documents regarding capital improvements to any building as to which Xavier is claiming hurricane damage other than (or in addition to) flooding," finding that "a request for information concerning a building's condition is reasonably calculated to lead to the discovery of admissible information, even if the information itself may not be admissible at trial." (Id.)

Xavier subsequently filed this appeal from Magistrate Judge Wilkinson's August 28, 2007 Order & Reasons. (Rec. Doc. 7524.)

## STANDARD OF REVIEW

As Xavier concedes (see Xavier Appeal Memo., at 8), on a nondispositive matter such as the discovery rulings at issue in this case, a district judge will overrule a magistrate judge's order only where it is "found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). See also 28 U.S.C. § 636(b)(1)(A). "The clearly erroneous standard requires that the court affirm the decision of the magistrate judge unless 'on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed.'" Loughlin v. USAA Cas. Ins. Co., 2007 WL 2258837, at *1 (E.D. La. Aug. 2, 2007) (Duval, J.) (quoting United States v. United States Gypsum Co., 333 U.S. 364 (1948)). This is a "highly deferential standard," and "[a] magistrate judge is afforded broad discretion in the resolution of non-dispositive pretrial matters." Aetna Life Ins. Co. v. DFW Sleep Diagnostics Ctr., 2004 WL 465229, at *2 (E.D. La. Mar. 9, 2004) (Berrigan, J.).

## ARGUMENT

### I. MAGISTRATE JUDGE WILKINSON'S ORDER WAS NOT "CLEARLY ERRONEOUS" IN RULING THAT THE DOCUMENTS PERTAINING TO XAVIER'S APPLICATIONS TO FEMA AND HUD SATISFY THE BROAD STANDARD OF RELEVANCE UNDER RULE 26

Xavier's objection to production of the documents pertaining to its applications to FEMA, HUD and other governmental or quasi-governmental organizations is based solely on relevance. The Federal Rules of Civil Procedure allow discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. "[T]he party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Giardina v. Lockheed Martin Corp., 2003 WL 21276348, at *3 (E.D. La. May 30, 2003). Xavier has not met its burden of demonstrating that the FEMA and HUD documents (and any other documents pertaining to similar applications) do not fall within the relatively broad scope of relevance under Rule 26, and has not shown that this discovery would cause it any harm.[1] Xavier certainly has not demonstrated that Magistrate Judge Wilkinson's order allowing this discovery was clearly erroneous.

---

[1] To the extent that Xavier complains that the documents are voluminous (Xavier Appeal Memo., at 7), that highlights the importance of these documents. Xavier evidently submitted very extensive applications to FEMA and HUD detailing the nature and extent of the damage to its campus, and may have corresponded extensively with FEMA and HUD concerning those applications. To the extent that Xavier is complaining about the photocopying costs, Travelers is willing to pay reasonable photocopying charges or arrange for the copying.

225016-1                                7

### A. Magistrate Judge Wilkinson Reasonably Concluded That The FEMA And HUD Documents May Contain Information Relevant To The Cause Of Damage To Xavier's Property

Magistrate Judge Wilkinson correctly concluded that, in view of the Fifth Circuit's decision, "information that distinguishes between damage caused by flood and damage caused by other events that may be covered by the Travelers policy is now relevant."[2] (Order, Rec. Doc. 7346, at 4.) The Fifth Circuit held that "[r]egardless of what caused the failure of the flood-control structures that were put in place to prevent such a catastrophe, their failure resulted in a widespread flood that damaged the plaintiffs' property," an event that "was excluded from coverage under the plaintiffs' insurance policies . . . ." In re Katrina Canal Breaches Litig., ___ F.3d ___, 2007 WL 2200004, at *1 (5th Cir. Aug. 2, 2007). Thus, the central issue in this case is now to determine how much of the damage to Xavier's campus was caused by wind and how much was caused by flood.[3]

---

[2] In fact, even before the Fifth Circuit's ruling, the allocation of wind and flood damage was still highly relevant in this case. This Court had ruled that "the Water Damage Exclusion as found in Xavier's Travelers policy is ambiguous and as such affords Xavier coverage for damages sought provided that Xavier can prove that the flooding it experienced was caused by the negligence of man." In re Katrina Canal Breaches Consolidated Litig., 466 F. Supp. 2d 729, 767 (E.D. La. 2006). The Court further held that "as this litigation proceeds, if it is shown that an insured premises sustained damage from a covered peril, i.e. wind or water damage caused by a failed levee caused by negligence, and a non-covered peril, i.e. naturally occurring flooding such as overtopping of a levee, then the Court must determine the applicability and enforceability of the anti-concurrent cause clause." Id. at 752-53 (emphasis added). Xavier's motion for partial summary judgment was "**DENIED** in part as the Court finds there are material questions of fact as to the cause of the water damage to Xavier." Id. at 767. If the Fifth Circuit had affirmed this Court's decision, Travelers would have taken discovery to determine the extent to which Xavier's property was impacted by what Travelers contends was "natural" flooding as opposed to wind and wind-driven rain. Even before the Fifth Circuit ruled, the question of the extent to which the damage to Xavier's property was caused by wind versus flood was alive and well and a very important part of this case. After the Fifth Circuit's ruling, this issue is unquestionably at the heart of this case.

[3] Contrary to Xavier's contention, there is no reason to wait for a decision in Sher v. Lafayette Ins. Co., a case pending against a different insurer in the Louisiana Fourth Circuit Court of Appeal, before ruling on Xavier's appeal of this discovery ruling. This Court recently rejected a similar effort by Xavier to postpone a hearing on its motions for partial summary judgment until after a decision is issued in Sher. (Order, Rec. Doc. 7808.) It is sheer speculation for Xavier to suggest what issues the Louisiana Fourth Circuit might decide in Sher, how the court might decide them or when the decision might be issued. With respect to the interpretation of the water damage exclusion, there is clearly no need for this Court to wait for guidance from a state appellate court. The Fifth Circuit has issued a unanimous, 46-page opinion in this very case which is obviously binding on this Court, and denied en banc review without any judge even requesting a vote.

225016-1                                           8

Magistrate Judge Wilkinson also correctly concluded that the documents pertaining to Xavier's applications to FEMA, HUD and other governmental or quasi-governmental organizations may contain information relevant to the extent to which Xavier's losses were caused by wind versus flood. (Order, Rec. Doc. 7346, at 5.) Indeed, Xavier represents in its brief to this Court that it "made available to FEMA *all information concerning repair work at the campus*." (Xavier Appeal Memo., at 9 (emphasis added).) There is no question that "all information concerning repair work at the campus" is of critical importance to this case. Travelers is clearly entitled to <u>all</u> documentation concerning the nature and extent of the repairs performed on Xavier's campus after Hurricane Katrina. Xavier has produced some documents pertaining to those repairs, but has withheld the repair documentation that it provided to FEMA. Tellingly, Xavier does not represent that all of the documentation provided to FEMA concerning the repair work has also been provided separately to Travelers.[4] Presumably, Xavier (and Landis and FoxCor) provided <u>different</u> information to FEMA about the repairs than has been provided to Travelers. Otherwise there would be no reason for Xavier to attempt to preclude this discovery. Whatever the differences are between Xavier's submissions to FEMA and Xavier's submissions to Travelers, whether they relate to the cost of the repairs, the nature or cause of the damage or any other matter, this information is clearly relevant to this litigation. If Xavier told FEMA something different than it told Travelers about the repair work, the trier of fact will be entitled to know that.

The Declaration of Marion Bracy, which was submitted by Xavier with its sur-reply memorandum on the motion for reconsideration before Magistrate Judge Wilkinson, states that

---

[4] Travelers would, in any event, be entitled to explore whether such a representation is accurate by obtaining copies of the documents provided to FEMA and comparing them with the documents Xavier has previously provided. There would be no harm to Xavier in producing the documents if they were in fact duplicative.

225016-1                                9

FEMA made determinations on the "nature of the damage," presumably referring to the cause of the losses. (Bracy Declaration, ¶ 5.) How FEMA allocated damage between wind and flood is also relevant to the issue of whether Travelers' allocation of the damages was correct. As the administrator of the National Flood Insurance Program, FEMA has expertise in segregating wind and flood damage, and any findings by FEMA are clearly either admissible or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The Bracy Declaration also asserts that the thousands of pages provided to FEMA "did not classify damages as being caused by water inundation or wind" and that "Xavier submitted no information to FEMA characterizing damages as caused by wind or water inundation." (Bracy Declaration, ¶¶ 3, 6.) The repairs occurred more than 18 months ago, and Mr. Bracy does not swear that he reviewed each of the thousands of pages of FEMA documentation before signing his declaration. Even if he had, this is <u>discovery</u> and Travelers would be entitled to review the thousands of pages of documents itself to explore the accuracy of Xavier's representations. Xavier cannot bar discovery of thousands of pages of documents on a critical issue in this case (i.e., the repair work on Xavier's campus) by submitting a self-serving affidavit setting forth Xavier's own conclusions about the significance of the documents. <u>See</u> <u>Auvil v. CBS "60 Minutes"</u>, 140 F.R.D. 450, 452 (E.D. Wash. 1991) (concluding that a party was entitled to take discovery to test accuracy of affidavits provided by an opposing party); <u>Central Laborers' Pension Welfare & Annuity Funds v. Belcher</u>, 1986 WL 2054, at *1 (N.D. Ill. Feb. 6, 1986) (holding that plaintiff was "entitled to appropriate discovery to ascertain whether the statements in [defendant's] affidavit are accurate").

Information available from public sources further confirms that the documents that Xavier is withholding contain relevant information regarding both the cause and the extent of

Xavier's losses. For example, a spreadsheet available on the FEMA website indicates that Xavier applied for and may have received funds to repair flood damage to mechanical equipment in the House of Studies Building, Student Center and College of Pharmacy, to make certain specified repairs to Buildings Nos. 1, 2, 56, 65, 87 and 98, and to make repairs to a roof on its Counseling Center and Health Services Building (both presumably damaged by wind). The spreadsheet may not be a complete listing of grants applied for by Xavier -- it appears to cover only a limited time period. See www.fema.gov/xls/plan/ehp/noma/aa-schools-0710.xls (attached as Exhibit C hereto).

In sum, there was more than ample basis for Magistrate Judge Willkinson to conclude that the documents pertaining to Xavier's applications to FEMA and HUD fall within the scope of relevance under Rule 26. His decision to require production of these documents was not "clearly erroneous" or "contrary to law."

### B. Magistrate Judge Wilkinson Also Reasonably Concluded That The Documents At Issue May Contain Information Relevant To The Amount Of Covered Damages Sustained By Xavier

Xavier completely ignores the fact that there was a second, alternative basis for Magistrate Judge Wilkinson's ruling on the FEMA and HUD documents (and other similar documents). Magistrate Judge Wilkinson also concluded that "[e]ven as to those materials described by Xavier in the affidavit attached to its surreply memorandum, which do not characterize the loss, such information may still provide admissible evidence concerning the extent of Xavier's damage claim." (Order, Rec. Doc. 7346, at 5 (emphasis added).)

Magistrate Judge Wilkinson's decision should be affirmed on this ground alone. There is no question that the amount of the covered damage to Xavier's campus is relevant to this case, and there is no question that the FEMA and HUD documents contain that kind of information.

Xavier represents that the FEMA documents "consist of many thousands of pages," including "repair cost related documents previously produced." (Xavier Appeal Memo., at 7.) Presumably the FEMA documents also contain "repair cost related documents" that were not previously produced, given that Xavier will not represent that it has already produced all documents pertaining to its applications to FEMA. These documents are clearly relevant. If Xavier told FEMA, or FEMA determined, that the wind damage to a particular building could be repaired for $250,000, and Xavier is now seeking $500,000 from Travelers for the same damage, a jury would certainly be entitled to consider the information Xavier provided to FEMA in assessing the reasonable cost of the repairs.

### C. Other Courts Have Ordered Production Of Similar Documents

Other judges in the Eastern District of Louisiana have recognized that payments received by insureds from FEMA, the Small Business Administration, the Louisiana Recovery Authority and other sources are an appropriate area of inquiry in discovery. Judge Feldman has ordered that this information must be disclosed by plaintiffs in all of the Allstate cases pending in his court, as part of a series of disclosures that he ordered in lieu of Rule 26(a)(1) initial disclosures. See Plaintiffs v. Allstate, Civ. A. No. 06-617, 2007 U.S. Dist. LEXIS 28081, at *11-12 (E.D. La. Feb. 12, 2007) (Feldman, J.) (attached as Exhibit D hereto). Given that Judge Feldman ordered that these types of documents be produced at the outset of litigation, before insurers have even served a request for them, Magistrate Judge Wilkinson's decision to require the FEMA and HUD documents to be produced certainly cannot be "clearly erroneous."

### D. To The Extent That Magistrate Judge Wilkinson Erred In Distinguishing Between Government And Private Sources Of Funding, The Appropriate Remedy Is To Order Xavier To Produce *All* Documents Pertaining To Funding From All Sources

Xavier also argues that "Magistrate Judge Wilkinson's logic concerning information submitted to FEMA or other government or quasi-government agencies is clearly erroneous and/or contrary to law" because he "failed to explain why information regarding private non-insurer sources of funding should be treated differently from information regarding government-related non-insurer sources of funding." (Xavier Appeal Memo., at 6.) Xavier may be correct, if there are documents pertaining to private non-insurer sources of funding that contain information relevant to the cause or extent of the damage to Xavier's campus. It appears that, when Magistrate Judge Wilkinson was referring to non-government sources, he was thinking about things like "loans, Xavier's endowment, benefit concerts or bake sales" (Order, Rec. Doc. 7346, at 4), and was expecting that announcements about bake sales and concerts would not contain information relevant to the cause or extent of the damage to the campus.

It is conceivable, however, and Travelers argued in its briefs to Magistrate Judge Wilkinson, that documents pertaining to non-government funding might also contain information relevant to the cause or extent of the damage to Xavier's campus. Magistrate Judge Wilkinson's order should be modified to require production of such documents, if they exist. To the extent that Magistrate Judge Wilkinson erred by distinguishing between government and non-government sources, the appropriate remedy is for this Court to require production of all relevant documents. The remedy is not, as Xavier would have it, to deny Travelers access to the FEMA and HUD documents because there might also be other documents that are equally relevant.

225016-1                                  13

### E. Travelers Could Potentially Obtain An Offset Or Credit For Amounts Received By Xavier From FEMA, HUD And Other Sources, Although That Issue Need Not And Cannot Be Resolved On This Motion

Xavier also argues that "Travelers is not entitled to any credit or offset for funds received from FEMA or any other government-related entity." (Xavier Appeal Memo., at 9.) Magistrate Judge Wilkinson correctly concluded that there was no need to resolve this issue in order to rule on the discoverability of the documents. Regardless of whether Travelers is entitled to an offset or credit, the documents are relevant to the cause and extent of the damage to Xavier's campus, for the reasons set forth above. Moreover, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In its July 12, 2007 Order, this Court effectively prejudged the issues pending before the District Judge when it concluded that "Xavier's receipt of funds from other, non-insurance sources is completely irrelevant to Travelers' obligations under its contract of insurance with Xavier." (Order dated July 12, 2007, at 6.) Without such discovery, Travelers cannot properly respond to Xavier's motion for partial summary judgment.

Travelers may be entitled to an offset for funds received from FEMA or HUD. That issue cannot be fully evaluated by Travelers or by this Court without the documentation to show what the payments were for, and how the amounts paid were calculated. There is a "universally recognized rule to the effect [that] a policy of insurance on property is predominately a contract of indemnity . . . ." Wright v. Assurance Co. of Am., 728 So. 2d 974, 975 (La. Ct. App. 2d Cir. 1999). See also Weiss v. Allstate Ins. Co., 2007 WL 891869, at *3 (E.D. La. Mar. 21, 2007) (Vance, J.) (noting the "well-established propositions that insurance contracts are contracts of indemnity and that an insured cannot recover an amount greater than her loss"); Ferguson v.

State Farm Ins. Co., 2007 WL 1378507, at *3 (E.D. La. May 9, 2007) (Berrigan, C.J.) (recognizing "the principle that the fundamental purpose of property insurance is indemnity, not profit"). If Xavier received an undesignated contribution to its general fund from an alumnus after Hurricane Katrina, Travelers would not contend that it is entitled to a credit on Xavier's insurance claim for such a donation. If, however, Xavier received funds from FEMA in order, for example, to repair damage to the roof on a particular building (see Exhibit C), it would be wholly inconsistent with the principle of indemnity for Xavier to be able to recover for the same damage to the same roof under the Travelers Policy.

Xavier argues that federal law provides for the amount of a grant approved by FEMA to be reduced based upon insurance proceeds received, citing the following regulation:

> <u>Prior to approval of a Federal grant for the restoration of a facility and its contents which were damaged by a disaster other than flood</u>, the Grantee shall notify the Regional Director of any entitlement to insurance settlement or recovery for such facility and its contents. The Regional Director shall reduce the eligible costs by the actual amount of insurance proceeds relating to the eligible costs.

44 C.F.R. § 206.253(a) (emphasis added). Xavier represents to the Court that "any funds received from FEMA has [sic] been reduced by the expected insurance recovery from Travelers." (Xavier Appeal Memo., at 9.) Travelers is entitled to explore in discovery whether this representation is in fact true. What Xavier told FEMA was its "expected insurance recovery from Travelers" is clearly relevant to this case. Travelers is entitled to explore whether Xavier's representations to FEMA in that regard are inconsistent with the positions it is now taking in litigation against Travelers. Moreover, the regulation Xavier cites provides only that insurance payments should be taken into account "[p]rior to approval of a Federal grant . . . ." 44 C.F.R. § 206.253(a) (emphasis added). Xavier does not contend that, if it recovers additional insurance proceeds from Travelers, it will be required to provide a refund to FEMA, and the regulation it

cites does not provide for any such refund. In essence, Xavier contends that it is entitled to recover for the same damage from Travelers and FEMA as long as in its application to FEMA it inaccurately underestimated the insurance proceeds it was expecting from Travelers. Such a position is contrary to the fundamental principle that a property insurance contract is a contract of indemnity, and would create an incentive for applicants for FEMA funding to misrepresent their anticipated insurance recovery.

In any event, Magistrate Judge Wilkinson correctly recognized that these arguments go to the merits of the admissibility of these documents, not their discoverability. This Court need not decide whether Travelers is entitled to a credit for FEMA, HUD and other non-insurance payments in order to determine whether the information is discoverable. That decision cannot be made without the relevant documents.

## II.    MAGISTRATE JUDGE WILKINSON'S ORDER REQUIRING PRODUCTION OF DOCUMENTS CONCERNING PRE-HURRICANE KATRINA CAPITAL IMPROVEMENTS WAS NOT "CLEARLY ERRONEOUS"

Xavier also appeals from Magistrate Judge Wilkinson's order to the extent it requires Landis and FoxCor to produce documents pertaining to capital improvements, during the 18-month period immediately preceding Hurricane Katrina, made to buildings that Xavier claims sustained covered damage. (Xavier Appeal Memo., at 11.) Magistrate Judge Wilkinson correctly concluded that "a request for information concerning a building's condition is reasonably calculated to lead to the discovery of admissible information, even if the information itself may not be admissible at trial." (Order, Rec. Doc. 7346, at 6.) Xavier argues that this conclusion was erroneous because the Policy requires Travelers to pay the replacement cost of the damages sustained and "Travelers has sufficient information regarding the condition of

Xavier's buildings based on its opportunities to inspect and adjust Xavier's losses." (Xavier Appeal Memo., at 11.)

This argument is meritless. Certainly the pre-loss condition of a building, including the nature, extent and cost of work being performed on the building immediately prior to Hurricane Katrina, is relevant to the replacement cost of any damage to that building. The mere fact that Travelers may have obtained other information regarding the condition of Xavier's buildings during its evaluation of the insurance claim is not grounds for cutting off discovery. Travelers is entitled to obtain all information relevant to the condition of Xavier's buildings at the time of the loss.[5]

## CONCLUSION

For all of the foregoing reasons, Magistrate Judge Wilkinson's August 28, 2007 Order and Reasons should be modified to require production of all documents pertaining to funds that Xavier received from both governmental and non-governmental sources that were related, in any way, to property damage to Xavier's campus arising from Hurricane Katrina. In all other respects, Magistrate Judge Wilkinson's Order should be affirmed.

---

[5] These documents are also relevant in determining the extent to which the post-Katrina work included upgrades of the buildings vis-à-vis their pre-Katrina condition. To the extent that Xavier was entitled to replacement cost coverage under the Policy, that is limited to the cost of replacing the damaged property with property "[o]f comparable material and quality" or the amount "actually spen[t] that is necessary to repair or replace the lost or damaged property," whichever is lower. (Policy, Deluxe Property Coverage Form, at 17.) It appears, for example, that Xavier was in the process of putting new roofs on certain buildings at the time of Hurricane Katrina. In the case of at least one building, it appears that part or all of the old roof had been stripped off the building and a new roof had not yet been put on at the time of Katrina. Travelers should not be required to pay for stripping off a roof that had already been stripped or for putting on a new roof where that work was already in the process of being performed and was going to be performed prior to Katrina. Travelers is entitled to discovery of the documents that will reveal this type of information.

Respectfully submitted,

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR., T.A., #19755
RALPH S. HUBBARD III, #7040
LUGENBUHL, WHEATON, PECK,
    RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195


Stephen E. Goldman (pro hac vice)
Christopher J. Hug (pro hac vice)
Wystan M. Ackerman (pro hac vice)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut 06103-3597
Telephone:   (860) 275-8255
Facsimile:   (860) 275-8299

Attorneys for Travelers Property
Casualty Company of America

## CERTIFICATE OF SERVICE

I hereby certify that, on September 25, 2007, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

s/Simeon B. Reimonenq, Jr.
SIMEON B. REIMONENQ, JR.