**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | **CIVIL ACTION**

**NO. 05-4182**

**PERTAINS TO: *Fischman* C.A. No. 06-4952** | **SECTION "K"(2)**

**ORDER AND REASONS**

Before the Court is a Motion to Enforce Settlement Agreement (Doc. 3272) filed by State Farm Fire and Casualty Company ("State Farm"). State Farm seeks to enforce a mediation agreement entered into on August 8, 2006, which it maintains compromised all of the claims plaintiff Fagey Lupin Fischman (" Mrs. Fischman") had under her Homeowner's Policy issued by State Farm. Having reviewed the pleadings, memoranda, exhibits, affidavits and the relevant law, the Court finds that as there as contested issues of material fact, the Court must deny this motion.

**Background**

State Farm issued to Mrs. Fischman a Homeowners Insurance Policy for the policy period from March 10, 2005 to March 10, 2006. (Complaint ¶5). The policy provided coverage with limits of liability for her home of $359,300.00 (Coverage A), its contents of $269,475.00 (Coverage B) and Additional Living Expenses ("ALE") for loss of use(Coverage C). (Complaint ¶7). Mrs. Fischman's home was located at 5401 Bellaire Drive, New Orleans, Louisiana and thus was inundated by water from the breaches of the 17th Street Canal and/or the London Avenue Canal (Complaint ¶ 6) on or about August 29, 2005.

Mrs. Fischman contends that during the first week in September, 2005, she provided State Farm with notice of the loss at the insured property. (Complaint ¶ 11) An adjuster was

eventually assigned and the property was inspected. Mrs. Fischman maintains that on August 8, 2006, she had not received any payments under her policy. (Complaint ¶ 13). As a result she participated in the Louisiana Department of Insurance Mediation Program for Residential Insurance claims resulting from Hurricanes Katrina and Rita. Present at the mediation were both Mrs. Fischman and the attorney filing the subject lawsuit, along with Carol Carpenter (the State Farm adjuster), Mr. Calhoun (the State Farm supervisor) and the mediator. (Complaint ¶ 13). On these facts all parties agree.

Mrs. Fischman contends that the subject of the mediation was solely concerning the Coverage C-Loss of Use-Additional Living Expenses. (Complaint ¶ 13) and that she was paid $6,216.17 at that time. (Complaint ¶ 13). Thus, she filed suit on August 28, 2006 seeking a declaration from this Court that she had coverage for the damage to her home caused by the water from the canal breach(es) and for the payment of the entire proceeds under the policy because of State Farm's alleged bad faith breach of contract based on its failure to pay plaintiff any amounts owed within 30 days of the receipt of proof of loss, its failure to act pursuant to its duty of good faith and fair dealing and to properly adjust the claims fairly when it failed to pay within 60 days of the receipt of a satisfactory proof of loss under La. Rev. Stat. 22:658 and 1220. (Complaint ¶¶ 31-33).

In response to the subject lawsuit, State Farm filed this Motion to Enforce. Exhibit B to the motion contains the Settlement Agreement executed by Mrs. Fischman. It reads as follows:

LOUISIANA HURRICANE MEDIATION PROGRAM
SETTLEMENT AGREEMENT

Claim Number 18$241-116
AAA Case Number 69 407 08797 06

It is hereby agreed by and between Fagey Fischman, the homeowner presenting this claim and State Farm, the homeowner's insurance company as follow:

1. State Farm, insurance company, shall pay to Fagey Fischman, the homeowner, the sum of 6216.17 dollars within 30 days.

2. **This settlement amount is full, complete, and a total final payment by the insurance company to the homeowner for the claim brought to the mediation. Both parties release any and all claims of any kind whatsoever against one another,** except that if the homeowner discovers additional insured damage that was not known to the parties prior to this mediation, the insured may file a supplemental claim which shall be treated as a new claim.

3. This agreement has been entered into as part of the Louisiana Hurricane Mediation Program, Emergency Rule 22. Said agreement was signed pursuant to the mediation and was executed voluntarily by each. Each party represents that they have full authority to enter into this agreement and are the appropriate parties to sign this agreement. Both parties further acknowledge that they had or have had the opportunity to seek independent counsel and are signing this agreement with such knowledge.

**Lastly, both parties recognize that this is a final and enforceable contract,** with the exception that the homeowner, if not represented by counsel at this mediation, shall have three (3) working days within which to rescind this agreement, unless the homeowner has already cashed the check provided herein by the insurance company.

(Doc. 3272-3 Exhibit C) (emphasis added). The document was signed by Mrs. Fischman and Mr. Calhoun and dated August 8, 2006. Mrs. Fischman was accompanied by her lawyer.

In addition, State Farm has provided the Claims Mediation Request (Exhibit C). This form indicates "what claim was brought to the mediation." At Paragraph C thereof, in response to Question 6 which requests a brief description of the dispute, it states, "Additional ALE owed; State Farm has not properly adjusted coverages A, B & C under homeowner's policy." The form also contained the information that Mrs. Fischman was represented by counsel, Debra J. Fischman.

State Farm has also attached two other settlement agreements. One executed by Debra Fischman on her own behalf explicitly states that the settlement is only a partial settlement and solely for Loss of Use-Coverage C portion of the insurance and reserves the claims for the structure and the content from the agreement. The other executed by Kathy Fischman again reserves claims for contents, but settles the Coverage A and C claims. Both of these contracts were executed prior to the August 8, 2006 meeting.

Mrs. Fischman opposes the motion, contending by affidavit that she never discussed the settlement of any claims of bad faith or claims that State Farm was liable for damage to her home and contents and that is it was not her intent to settle such claims. In addition, Debra Fischman filed another affidavit in which she avers that "At the commencement of the mediation, I stated that any claims relating to the 17th Street Canal levee breach and/or any claims for the London Avenue Canal levee breach were pretermitted until such time as the right to pursue such a claims was decided by the courts." (Doc. 3414-2 Exhibit "B, ¶4). Thus, Debra Fischman further states:

> The only claims mediated by Mrs. Fischman were that for ALE under coverage "C" of her State farm policy, and Coverages "A" and "B" but only to the extent there was wind driven damage to the residence and its contents. There was no settlement with respect to damages owed under Coverages "A" and "B" due to the levee breaches or State Farm's bad faith in adjusting said claim.

(Doc 3414-2 Exhibit B, ¶ 5.

In addition, Mrs. Fischman maintains in her opposition to this motion that the other settlement agreements are irrelevant and the disclosure of them was contrary to Louisiana law–specifically Part A of §9:4112 of the Louisiana Hurricane Mediation Program. Finally, Mrs. Fischman contends that because error vitiates consent under La. Civ. Code art. 1949 and 1950, the settlement agreement is should be set aside. Indeed, she filed a Supplemental and

Amended Complaint on March 1, 2007 seeking reformation of the agreement so that it would be only for Coverage C claims. (Doc. 3324).

## Analysis

**Standard**

No party discussed under what federal procedural statute this motion was brought. Under Louisiana procedural law, a peremptory exception of res judicata can be brought by which, after a hearing, a court is permitted to enter judgment. However, this Court finds that it must treat this motion as a Motion for Summary Judgment. Unless the parties consent to the Court ruling on this motion with stipulated facts, the Court cannot render judgment where an issue of fact exists.

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S.

317, 323 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed. R. Civ. P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id*.

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Anderson*, 477 U.S. at 255. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc*., 828 F.2d 291, 294 (5th Cir. 1987). With this standard in mind, the Court will now turn to the law as applied to the facts placed before it.

**Louisiana Law Concerning Compromise**

The enforceability of a settlement agreement is governed by the law of the forum state. *Davis v. Hiskipower Outdoor Equip. Corp.*, 936 F.2d 193, 196 (5th Cir. 1991). In Louisiana, "a settlement agreement is an enforceable contract to which a court must give legal effect according to the parties' intent as expressed in the document. *Id. citing Suacier v. John-Clai Co.*, 408 So.2d 27, 29 (La. Ct. App. 1981).

Article 3071 of the Louisiana Civil Code provides, in relevant part:

> A *transaction* or *compromise* is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
>
> This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. . . .

La. Civ. Code art. 3071. The Code further states:

> Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.

La. Civ. Code art. 3073. Furthermore, "Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."La. Civ. Code art. 3078. In addition, "[a] transaction may be rescinded notwithstanding, whenever there exist an error in the person **or on the matter in dispute.** It may likewise be rescinded in the cases where there exists fraud or violence." La. Civ. Code art. 3079 (emphasis added).

Thus, Louisiana courts have held that "when the parties to a compromise dispute its scope, they are permitted to raise factual issues regarding whether the unequivocal language of the instrument was intended to be truly unequivocal. . . . However, such latitude is granted only in the presence of "substantiating evidence" of mistaken intent. *Duet v. Lucky*, 621 So.2d 168 (La. App. 4th Cir. 1993). " *Dumas v. Angus Chem. Co.*, 742 So.2d 655, 661 (La. App. 2nd Cir. 1999) *citing .Brown v. Drillers Inc.*, 630 So.2d 741 (La. 1994).

In *Brown v Drillers*, the Supreme Court for the State of Louisiana explained:

> The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and

> extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument. *Maltby v. Gauthier*, 526 So.2d 455, 457 (La.App. 5th Cir.), *writ denied*, 531 So.2d 474 (La.1988); *Smith v. Leger*, 439 So.2d 1203 (La.App. 1st Cir.1983). [footnote omitted] Louisiana courts, however, have crafted a special exception to the extrinsic evidence rule for compromise agreements based on an *in pari materia* reading of LSA-C.C. Art. 3073's provision that a compromise extends only to those differences the parties' clearly comprehended and LSA-C.C. Art. 3079's provision that an error as to the subject matter in dispute is a ground to rescind a compromise. *Moak v. American Automobile Ins. Co.*, 242 La. 160, 134 So.2d 911 (1961).[footnote omitted].
>
> *Moak*, *supra* stands for the proposition that when a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Following *Moak*, a long line of jurisprudence holds that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release. Under that jurisprudential rule, the parties to a release instrument are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal.
>
> Louisiana courts, however, have tempered that jurisprudential rule, recognizing that absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain intent. *Duet v. Lucky*, 621 So.2d 168, 173 (La.App. 4th Cir.1993). Utilizing a case-by-case, factual analysis, Louisiana courts have limited the rule's application to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. *Higgins v. Spencer*, 531 So.2d 768, 772 (La.App. 1st Cir.), *writ denied*, 532 So.2d 106 (La.1988). When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts, applying LSA-C.C. Art. 2046's general rule of construction, have not hesitated to confine their analysis to the four corners of the instrument. [footnote omitted] When, as in that instance, a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and thus summary judgment is appropriate. *Wilson v. Cost + Plus of Vivian, Inc.*, 375 So.2d 683, 685 (La.App. 2d Cir.1979); *Horton v. Mobley*, 578 So.2d 977, 982 (La.App. 2d Cir.1991).

*Brown v. Drillers, Inc.*, 630 So.2d at 749 -750.

In the case at bar, the specific language of the settlement agreement states unequivocally,

> 2. This settlement amount is **full, complete, and a total final payment by** the insurance company to the homeowner **for the claim brought to the mediation.** Both parties release **any and all claims of any kind whatsoever against one another**

(Doc. 3272-3 Exhibit B). This sentence thus provides (1) the claim "brought to the mediation" is resolved **and** (2) that both parties release "any and all claims of any kind whatsoever against one another." Thus, the four corners of the Settlement Agreement arguably demonstrate that Mrs. Fischman with the aid of her attorney, released all claims against State Farm. This language indicates a mutual intent of the parties to put an end to the dispute. Louisiana courts have declined to admit parol evidence when the release or other contract or settlement agreement is complete on its face. *Ingram Corp. v. J. Ray McDermott & Co., Inc.*, 698 F.2d 1295 (5th Cir. 1983) *citing LeJeune v. Midwestern Insurance Co.*, 98 F.Supp. 863 (W.D.La.1951); *Felder v. Georgia Pacific Corp.*, 393 So.2d 394 (La.App. 1st Cir.1980) aff'd, 405 So.2d 521 (La.1981); Cassidy v. Joseph, 204 La. 664, 16 So.2d 225 (1943); *Misuraca v. Metropolitan Life Insurance Co.*, 199 La. 867, 7 So.2d 167 (1942); *Landry v. Faulkner*, 417 So.2d 1376 (La.App. 4th Cir.1982); *In re Teddlie*, 385 So.2d 902 (La.App. 2d Cir.) *cert. denied*, 393 So.2d 742 (La.1980); *Brian Investments, Ltd. v. Ascantia, Inc.*, 381 So.2d 1275 (La.App. 4th Cir.) *cert. denied*, 385 So.2d 275 (La.1980); *Hicks v. Fidelity-Southern Fire Insurance Co.*, 251 So.2d 526 (La.App. 1st Cir.1971); *Tschirge v. Land-O-Lakes Developers*, 98 So.2d 270 (La.App. 1st Cir.1957).

Thus, in *Gaubert v. Toyota Motor Sales U.S.A. , Inc.*, 770 So.2d 879 (La. App. 1st Cir. 2000), the Louisiana appellate court refused to look beyond the four-corners of a release where the issue was whether the release agreement executed between an insured and the liability insurer included a release of the insured's rights against the insurer as his UM carrier. The court noted that the agreement did not contain any reservation of rights clause whatsoever. *Id*. at 882.

Thus, the court affirmed the lower court's granting of a motion for summary judgment on that issue. However, in its reasons, it stated:

> Furthermore, although Mr. Gaubert asserted the scope of the release did not encompass any claims against Farm bureau as his UM carrier, there was no substantiating evidence filed into the record, such as an affidavit by Mr. Gaubert establishing a material issue of fact as to Mr. Gaubert's mistake as to what he was signing or that he did not fully understand the nature of his right being waived. Such substantiating evidence is required in order to place the intent of the releasor at issue.

*Id.* at 884.

In the case before the Court, there are two affidavits, one of which signed by an officer of the Court, putting at issue the scope of this agreement. The affidavit of Mrs. Fischman has been presented alleging unequivocally that she did not intend to release certain aspects of her claim, and plaintiff has amended her complaint seeking recission. That affidavit, along with the affidavit of Debra Fischman, present substantiating evidence establishing either "(1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim." *Higgins, supra.,* at 772.

Thus, the Court must examine parol evidence, in the light most favorable to the plaintiff, to determine whether this Court can enter judgment for State Farm.

As noted above, in the mediation request, plaintiff, who was represented by counsel, stated that the dispute concerned "Additional ALE owed; State Farm has not properly adjusted coverages A, B & C under homeowner's policy." (Doc. 3473-3 Exhibit "C"). This document clearly indicates that plaintiff was seeking mediation for ALE which arises under Coverage C. However, the inclusion of improper adjustment of A and B in what was brought to the

mediation, could cut against plaintiff's contention that such a part of the dispute was not included. However, on summary judgment, the affidavits call this interpretation into question.

Also presented for review are the settlement agreements of two other family members, both of which clearly carve out in the body of the agreement those portions of the respective insured's claims which are being compromised and those which are not. While these documents might have been erroneously presented, the Court has been provided with no case law that makes their use prohibited. Furthermore, plaintiff herself attached copies of these agreements to her own opposition.

These documents, both of which were the result of similar mediations which occurred before that of Mrs. Fischman, likewise clearly demonstrate that the attorney representing plaintiff was aware that the settlement agreement, if not modified, would compromise all claims. As such, her failure to carve out those claims Mrs. Fischman believed were reserved in the settlement document cut against the averments in the affidavits.

On the other hand, one could argue that because the two mediations which concluded in those agreements had occurred prior to the third, and that at each time prior, a reservation of rights was made, plaintiff had a reasonable belief that she was settling only her claims for ALE and wind damage to her home. An officer of the Court has so attested, and the Court cannot simply ignore this affidavit.

Thus, the Motion for Enforce Settlement must be denied there being material questions of fact which are the domain of the jury. However, the Court would note that plaintiff's burden would appear to be extremely difficult at trial considering that all of the people involved in this transaction were competent, intelligent, and in one instance, trained in the law. These persons

were not like the plaintiff in *Higgins v. Spencer*, 531 So.2d 768 (La. App. 1st Cir. 1988), where the court found that the releasor lacked the necessary capacity.

The error in this case is not akin to the "rush release" which the Louisiana Supreme Court has found to be revocable for error. *Wise v. Prescott*, 151 So.2d 356 (La. 1963) ( 70 year old accident victim visited by adjuster day after accident). Furthermore, it is not the kind of "error" found where a plaintiff signed a release in favor of a mortuary in whose ambulance plaintiff sustained injuries in a head-on collision believing that she was signing papers necessary for arrangement of husband's funeral. *Bergeron v. Port Allen Mrotuary, Inc.*, 178 So.2d 442 (La. App. 1st cir. 2965), *writ denied* 178 So.2d 442 (La. 1965).

Mrs. Fischman was represented by counsel, and competent counsel knew or should have known that in order to reserve the substantive Coverage A and B claims as well as the claims for bad faith adjustment therefore, she should not have included them in the description of the dispute in the Mediation Request, and she should have made the proper amendments to the form as she did for herself on June 6, 2006–practically two months before the mediation. The Court is chary to have to deny this motion; if this constitutes the kind of error which can vitiate a

compromise, no compromise would be enforceable. Nonetheless, given the procedural posture of this case, the Court must deny the motion. Accordingly,

**IT IS ORDERED** that the Motion to Enforce Settlement Agreement (Doc. 3272) is **DENIED.**

New Orleans, Louisiana, this 2nd day of October September, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**