UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION §<br>§<br>§<br>§<br>§<br>§<br>PERTAINS TO: §<br>§<br>BARGE §<br>*Parfait Family*, C.A. No. 07-3500 §<br>§ | CIVIL ACTION<br>NO.  05-4182 "K"(2)<br>JUDGE DUVAL<br>MAG. WILKINSON |

**MEMORANDUM IN SUPPORT OF
WASHINGTON GROUP INTERNATIONAL, INC.'S
MOTION TO DISMISS OR ALTERNATIVELY TO STAY
<u>*PARFAIT FAMILY v. UNITED STATES*, No. 07-3500</u>**

Defendant Washington Group International, Inc. ("WGII") hereby moves the Court to dismiss this case, or in the alternative, to stay its resolution until the other substantially similar proposed class actions pending in the MRGO case category of *In re: Katrina Canal Breaches Consolidated Litigation*, No. 05-4182 ("*In re*: *Katrina*") are resolved.

Nearly four months *after* the Court-ordered March 1, 2007 deadline for amending pleadings in *In re: Katrina* had expired, and after class-certification and common-liability discovery were well under way, Plaintiffs in *Parfait Family v. United States*, through their attorney, Ashton R. O'Dwyer, Jr., filed a Class Action Complaint (the "Parfait Family Complaint") against, *inter alia*, Washington Group International, Inc. ("WGII"), The Board of Commissioners of the Orleans Levee District ("O.L.D."), the United States, and a host of barge-related entities.  Parfait Family Compl., No. 07-3500, June 26, 2007.  The claims against WGII in the Parfait Complaint are nearly identical to the claims against it in the MRGO Master Complaint, and the putative class identified in the Parfait Family Complaint (*i.e.*, all persons

allegedly damaged by the breach of the floodwall on the eastside of the Industrial Canal) overlaps with and is entirely subsumed within the putative class identified in the MRGO Master Complaint (*i.e.*, Lower Ninth Ward and St. Bernard Sub-Class).

Accordingly, as described in greater detail below, the Court should dismiss the Parfait Family Complaint because it violates this Court's Case Management Order No. 4. On wholly independent grounds, the Court should dismiss, or alternatively stay, the Parfait Family's claims against WGII pending the resolution of the claims against WGII in the MRGO Master Complaint under the well-established "first-to-file rule." Where two similar proposed class actions with overlapping proposed classes, but different plaintiffs' lawyers, are pending in the same court, as here, the Court can and should exercise its discretion to dismiss or stay the later-filed action until the earlier-filed action – which ultimately may resolve the issues in dispute in the later-filed action – is resolved.

In addition, WGII submits that it should be dismissed from the Parfait Family Complaint for all of the reasons previously advocated in its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c) (Dkt. No. 4140), Reply In Support of Motion to Dismiss (Dkt. No. 5516), June 13, 2006 Hearing Transcript (Dkt. No. 6176-1) and Response to Post-Hearing Memorandum (Dkt. No. 6176).

## BACKGROUND

### A.  *In re: Katrina Canal Breaches Consolidated Litigation*

WGII has been a party to litigation related to the Industrial Canal breaches during Hurricane Katrina since October 27, 2005, when it was first served with a class-action complaint in *Vodanovich v. Boh Bros. Construction Co.*, No. 05-5237. (The first complaints were filed against WGII's co-defendants in what later became *In re: Katrina* on September 19, 2005. *See Berthelot v. Boh Bros. Construction Co.*, Civ. No. 05-04182.) Since that time, WGII has been

named in more than twenty other putative class actions – three of which were filed by Mr. O'Dwyer – all alleging substantively the same claims.[1]  The Court ultimately consolidated all of these actions into the "MRGO" umbrella within *In re: Katrina Canal Breaches Consolidated Litigation*, No. 05-4182.  *See* Consolidation Order, Apr. 6, 2006; Case Management Order No. 4, Mar. 1, 2007 ("CMO No. 4").[2]  As of March 1, 2007, the Court made clear that the time for amending pleadings – even to add new parties to the *In re: Katrina* litigation – had expired:

> [A]mple time for completion of pleadings has been provided in the first phase of these consolidated matters through the call dockets conducted by the Court, the operation of Fed. R. Civ. P. 4(m) and the other orders of the Court herein. Accordingly, the deadline for amending pleadings is now deemed lapsed . . . . *[N]o further amendments to pleadings, addition of parties, third-party actions, cross-claims and counterclaims will be allowed*, except as required by this order or, hereafter, on motion . . ., and based on a showing of good cause as required by Fed. R. Civ. P. 16(b).

CMO No. 4, § II(A) (emphasis added).

Thereafter, in accordance with CMO No. 4, the MRGO Plaintiffs' Subgroup Litigation Committee ("MRGO PSLC") filed a consolidated Master Class Action Complaint against WGII, the United States, O.L.D., the Board of Commissioners for the Lake Borgne Levee District, and St. Paul Fire and Marine Insurance Co. on March 15, 2007.  MRGO Master Compl., ¶¶ 7-11.[3]  The MRGO defendants, including WGII, answered the Complaint two weeks later.  *See* Affirmative Defenses and Answer of Def. WGII to MRGO Master Compl., Apr. 30, 2006 (Dkt.

---

[1] *See* Twelfth Supplemental and Amending Compl. in *O'Dwyer v. United States*, No. 05-4181, June 5, 2006; *O'Dwyer v. Dep't of Transp. and Dev.*, No. 06-4389, Aug. 17, 2006; *O'Dwyer v. Dep't of Transp. and Dev.*, No. 06-5786, Sept. 8, 2006.

[2] The Court initially placed all claims relating to the breach of the levees/floodwalls on the Industrial Canal in the "Levee" umbrella.  CMO No. 4, § I(A)(1).  However, the plaintiffs later moved the claims relating to the levee/floodwall breaches on the *eastside* of the Industrial Canal – which included all claims against WGII – to the MRGO umbrella.  *See, e.g.,* MRGO Master Compl., ¶¶ 39-47.  All claims relevant to the west side of the Industrial Canal remain in the Levee umbrella.

[3] The Court appointed Mr. Joseph M. Bruno as Liaison Counsel for all Plaintiffs, and Mr. James P. Roy as Liaison Counsel for the MRGO PSLC Committee.  *See* CMO No. 4 at 2 & § I(C)(2).  Mr. O'Dwyer was not selected to be a member of any PSLC.  *See id.*

- 4 -

No. 3614).  Discovery on both class-certification and "common liability" issues commenced almost immediately in accordance with the Court's CMO.  CMO No. 4, §§ III(A)-(D) (class-certification fact discovery must be *completed* by July 27, 2007, and expert discovery by September 14, 2007); *id.*, § IV(B)(h) (written discovery responses relating to common liability due by June 14, 2007).

On April 30th, the parties exchanged written discovery relating to class certification, including interrogatories, requests for admissions and requests for production.  Defendants completed the depositions of all named plaintiffs in the MRGO case category on July 17, 2007, and the parties each submitted five expert reports relating to class certification on July 30, 2007, and August 29, 2007.  The depositions of all class-certification experts recently concluded on September 27, 2007.  Motions *in limine* to exclude expert testimony all were filed as of October 2, 2007 (although briefing continues), and a *Daubert* hearing on these motions is scheduled to begin on October 17th.  The MRGO plaintiffs' filed their memorandum in support of class certification on September 10, 2007, and the MRGO defendants will file their opposition to class certification on October 9, 2007.  Finally, the class-certification hearing will go forward next month, on November 5, 2007.

  **B.** ***In the Matter of the Complaint of Ingram Barge Company***

While the consolidated action relating to the MRGO and Levee umbrella claims proceeded before Judge Duval and Magistrate Wilkinson in Civil Action No. 05-4182, another consolidated action relating to Hurricane Katrina and the levee breaches on the eastside of the Industrial Canal was pending in this Court before Chief Judge Berrigan in Section "C."  These cases apparently began as an admiralty limitation action filed by Ingram Barge Company on September 29, 2005.  *In the Matter of the Complaint of Ingram Barge Co., Petitioning for*

*Exoneration from or Limitation of Liability*, No. 05-4419, Sept. 29, 2005.[4]  After potential claimants received notice of the complaint, the Parfait Family, Ashton O'Dwyer (appearing in proper person) and others answered on behalf of a proposed class of similarly-situated persons. *See* Answer of Claimants to the Complaint of Ingram Barge Co., No. 05-4419, Nov. 3, 2005 (Dkt. No. 11).  On the same day, the Parfait Family, Mr. O'Dwyer and others also filed a third-party class action complaint against, *inter alia*, the United States and Lafarge North America Inc.  *See* Third-Party Complaint and Class Action for Compensatory and Exemplary Damages, No. 05-4419, Nov. 3, 2005 (Dkt. No. 12) (alleging, among other things, that the U.S. Army Corps of Engineers' "[d]efective design and construction of the Industrial Canal floodwall" caused plaintiffs' damages from Hurricane Katrina).  This third-party complaint in the limitations action was filed nearly six weeks *after* the first class action was filed in what later became *In re: Katrina*.  *See supra*, pp. 2-3.  WGII was never (and is still not) a party to the consolidated action before Chief Judge Berrigan and, at this point, knows very little about the progression of those cases, the parties' positions taken or the theories presented therein.

### C.    *Parfait Family v. United States*

On June 26, 2007 – despite the expiration of the deadline for amending pleadings in *In re: Katrina* – Mr. O'Dwyer, on behalf of named plaintiffs, including once again the Parfait Family, as well as a proposed class of similarly-situated persons, filed another complaint related to the levee breaches on the eastside of the Industrial Canal.  *See* Class Action Complaint, *Parfait Family v. United States*, Civil Action No. 07-3500, June 26, 2007.  As best WGII can tell, this is the third time Mr. O'Dwyer has filed a proposed class action on behalf of the same members of

---

[4] Three days before Ingram Barge filed its limitation action, Mr. O'Dwyer, on behalf of the Parfait Family and himself, filed a complaint for compensatory and exemplary damages against, *inter alia*, the United States and Ingram Barge Company.  *Parfait Family v. United States*, No. 05-4237, Sept. 26, 2005.  This case, which contained allegations solely relating to a barge breaking through the floodwall along the Industrial Canal, was consolidated with the later-filed limitation action.

the Parfait Family relating to the alleged breaches of the levees and floodwalls on the eastside of the Industrial Canal. *See* Third-Party Complaint, No. 05-4419 (Nov. 3, 2005); Complaint, No. 05-0237 (Sept. 26, 2005).[5]

The most recent Parfait Family Complaint (No. 07-3500) generally joins two different theories of recovery for the same claims that, until now, had been proceeding "in two separate consolidated actions in separate sections of this court." Order, No. 07-3500, July 11, 2007 (Dkt. No. 6419). The Parfait Family Complaint's first theory of recovery for their flood-damage claims (against LaFarge North America Inc., Zito Fleeting, LLC, Zito Fleeting, Inc.) is similar to the claims that were pending before Chief Judge Berrigan in this court's Section "C," which allege negligence and/or fault relating to "the mooring, movement and care of a barge which allegedly caused a breach in the floodwall [on the eastside] of the Industrial Canal." *Id.* at 1. The Parfait Family Complaint's second theory of recovery for their flood-damage claims (against WGII, the United States, O.L.D. and the Port), however, is substantively like those claims pending in this Court's Section "K" (*In re: Katrina*), which allege "faulty design, construction and maintenance of the Industrial Canal floodwall or related projects." *Id.* Thus, the Court originally directed Mr. O'Dwyer to sever the Parfait Family Complaint into two separate

---

[5] Mr. O'Dwyer intended – and indeed actively sought – to have his latest *Parfait Family* case assigned to Chief Judge Berrigan in Section "C," despite the fact that it had been previously allotted to Section "K." *See, e.g.,* Letter from A. O'Dwyer, Jr. to Judge Berrigan, June 27, 2007, Ex. 1 (notifying Chief Judge Berrigan that *Parfait Family* should be re-allotted to Section "C"); Email from A. O'Dwyer to Gentlemen, June 27, 2007, Ex. 2 (suggesting defendants' counsel might move to transfer and consolidate *Parfait Family* with the barge cases pending in Section "C"). Mr. O'Dwyer's motivations for wanting WGII added to a lawsuit before Chief Judge Berrigan, which allege the *same* class-action claims as those pending before Judge Duval in the MRGO action, are curious at best. Indeed, Mr. O'Dwyer recognized that this move likely would provoke WGII counsel to "file [a] Motion for Sanctions against me, personally." June 27, 2007 email, Ex. 2 at 1. *Cf.* Order, No. 05-4182, Apr. 12, 2006 (Dkt. No. 71) (denying motion to file Twelfth Supplemental and Amending Complaint); CMO No. 4 (time for adding parties to pleadings has expired). *Cf. also McCuin v Texas Power & Light Co.*, 714 F.2d 1255, 1262, 1265 (5th Cir. 1983) (judge shopping in federal court not permitted; parties "clearly have no right to a 'judge of their choice'") (citation omitted).

amended complaints – one to be consolidated with the barge cases in Section "C," and the other to be consolidated with the canal breach cases in Section "K." *Id.* at 2.

For reasons not fully known to WGII, the two theories of recovery for the claims in the Parfait Family Complaint (No. 07-3500) were not ultimately severed. Instead, on September 18, 2007, the Court issued Case Management Order No. 5 ("CMO No. 5") in *In re: Katrina*.[6] CMO No. 5 consolidates seven cases (four of which are putative class actions), including *Parfait Family*, No. 07-3500, into a separate "barge" case category within *In re: Katrina*. All of these barge cases apparently concern the breach of the levee/floodwall on the eastside of the Industrial Canal, and all of them apparently contain claims (whether third-party or direct) that: (1) "a breakaway barge was either the cause or a contributing cause" of that breach; and/or (2) "other fault" by various defendants in *In re: Katrina* "caused or contributed to the breach." CMO No. 5 at 1.

> 1. *The putative class alleged in the Parfait Family Complaint overlaps with and is subsumed within one of the MRGO subclasses.*

The putative class alleged in the Parfait Family Complaint overlaps with and is subsumed within the Lower Ninth Ward and St. Bernard Sub-Class of the MRGO Greater New Orleans Class. *See* MRGO Compl., ¶¶ 12-13. The putative Lower Ninth Ward and St. Bernard Sub Class outlined in the MRGO Master Complaint includes:

> All individuals and entities . . . in all of the Parish of St. Bernard, Louisiana as well as the lower Ninth Ward of the Parish of Orleans (that is, the portion of Orleans Parish lying to the East of IHNC/Industrial Canal, and to the South of the Gulf Intracoastal Waterway/MR-GO who/which sustained damages as a result of inundation/flooding in this area which occurred during and immediately following landfall of Hurricane Katrina . . . , and as to the Defendant Corps only, have, or, [will have] . . . fulfilled whatever

---

[6] CMO No. 5 was promptly amended on September 20, 2007 to include WGII as its own "party category." *See* Minute Entry, Wilkinson, M.J., Sept. 20, 2007 (Dkt. No. 7804).

administrative claim filing requirements this Court deems applicable in this matter.

MRGO Compl., ¶ 13B.  Similarly, the named plaintiffs in *Parfait Family* purport to represent a "class of all other similarly situated persons who have exhausted their administrative remedies against the United States," and who allegedly have suffered a variety of damages due to "widespread flooding in an area below the Industrial Canal" resulting from a breach on the "East side of the Industrial Canal." Parfait Family Compl., §§ II, V.  *See* Pls.' Mem. In Support of Mot. for Enlargement of Barge Class Cert. Deadlines, No. 05-4182, Sept. 25, 2007 (Dkt. No.7913) at 3 & n.2 (recognizing that the proposed definition of the MRGO subgroup "encroaches upon" and indeed includes both the "members and geography of the putative BARGE class").

2.  *Claims in Parfait Family Complaint against WGII are nearly identical to those in the MRGO Master Complaint.*

As set forth below, the claims against WGII in the MRGO case category are substantively the same as the claims against it in the Parfait Family Complaint.

| Claim | Allegations Against WGII in MRGO Master Complaint | Allegations Against WGII in Parfait Family Complaint |
|---|---|---|
| WGII contracted with USACE to clear the area east of the IHNC between the canal and the levee/floodwall. | Defendant WGII contracted with the Corps in connection with the IHNC/IHNC Lock Replacement Project, which was authorized by the River and Harbor Act of 1956, the Water Resources Development Acts of 1986 and 1996, and which was intended to enlarge and deepen the lock.  Defendant WGII was hired to level and clear abandoned industrial sites along the IHNC between the floodwall and the canal itself for the purpose of clearing acreage to make way for the digging of a new canal, which would be used temporarily for the same purpose as the existing IHNC while the new system of larger locks was constructed.  MRGO | A very extensive amount of excavation work had been conducted on the "batture," between the Industrial Canal and the levees and retaining walls . . . .  The area was and is known as the "East Bank Industrial Area."  The batture land was excavated by Washington Group International, Inc. under a contract with the U.S. Army Corps of Engineers, which had acquired the land for the new navigation lock which had been authorized by Congress for the area, and for a bypass channel while the new lock is being constructed.  Parfait Compl., |

| Claim | Allegations Against WGII in MRGO Master Complaint | Allegations Against WGII in Parfait Family Complaint |
|---|---|---|
| | Compl., ¶ 40. | § VII, ¶ 2. |
| WGII's work included a variety of tasks, including the removal of obstructions, sunken barges, wharfs and pilings. | WGII's scope of work included, but were [sic] not limited to: demolition of abandoned industrial . . .; removal of underground structures . . .; abatement of vegetation, including numerous oak trees; removal of canal side obstructions; removal of the Jordan Street wharf . . .; removal of all electrical, sewer, gas, water, and telephone facilities  . . .; "bank removal" that included the vibratory extraction of bulkheads . . .; removal of more than fifty structures and more than forty concrete slabs; grid trenching . . .; removal of ten sunken or partially sunken barges;  . . .; removal of an estimated 3,000 pilings at the site . . . .  MRGO Compl.,¶ 42. | The work done by [WGII] included removing construction materials, such as concrete slabs, obstructions, such as sunken barges, wharf materials, bulkheads and bank stabilizing pilings, abandoned rail cars, drums containing pollutants and wastes, and underground tanks, as well as environmental remediations and removal of contaminated soil from the entire area in preparation for the dredging which must be performed in connection with constructing the new navigation lock and bypass channel.  Parfait Family Compl., § VII, ¶ 2. |
| WGII performed its work for the Corps negligently. | WGII was negligent and/or at fault in the following non-exclusive respects: (1) it knew or should have known that its work was causing damage to the levee and/or floodwall structures and did nothing to correct the problem; (2) it failed to follow proper procedures in performing its work; (3) it failed to comply with appropriate regulations and standards in performing its work; (4) it failed to notice the damage caused by its work and failed to call that damage to the attention of the appropriate authorities; (5) and any other acts of fault or negligence to be proven upon the trial of the cause. MRGO Compl.,¶ 45. | Plaintiffs further aver that such work was negligently implemented in that (1) WGI used techniques (including, without limitation, vibratory extraction) that, as WGI knew or should have known, unnecessarily caused damage to the Industrial Canal and its structures; (2) WGI failed to follow proper procedures and to comply with appropriate standards and regulations in performing its work; and (3) WGI failed to call the damage that its work had caused to the attention of appropriate authorities.  Parfait Family Compl., § VI(g). |

WAI-2847422v3

895140v.1

| Claim | Allegations Against WGII in MRGO Master Complaint | Allegations Against WGII in Parfait Family Complaint |
|---|---|---|
| WGII's work caused the levees/floodwalls along the eastside of the IHNC to fail. | WGII's acts and/or omissions resulted in underseepage-induced erosion and other damage to the levee and/or floodwall ultimately causing and/or contributing to its catastrophic failure. MRGO Compl.,¶ 44 | WGI's negligence resulted in underseepage-induced erosion and other damage to the Industrial Canal's levee and/or wall, ultimately causing and/or contributing to its catastrophic failure. Parfait Family Compl., § VI(g). |

## ARGUMENT

### A. The Parfait Family Complaint Should Be Dismissed As To WGII Because It Violates This Court's Case Management No. 4.

Mr. O'Dwyer had ample opportunity between September 19, 2005 and March 1, 2007 to amend an existing complaint and/or file a new complaint to add the barge-related entities to the MRGO umbrella of *In re: Katrina*. (The Parfait Family also had ample opportunity during this same period to add WGII to the separately-proceeding consolidated action before Chief Judge Berrigan, of which they already were named plaintiffs.) But to allow these plaintiffs to add WGII to the barge litigation for the first time now – after the close of class-certification discovery in the MRGO case – is to force WGII to defend itself *again* against the same proposed class alleging the same claims with different plaintiffs' lawyers and experts. Such tactics are a waste of the Court's resources, and also are highly prejudicial to WGII. Thus, the Parfait Family Complaint, at least with respect to WGII, should be dismissed on these grounds alone. *See Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 177 (5th Cir. 2007) (affirming trial court's decision to deny plaintiff's request to amend pleading after the expiration of the court-ordered deadline where plaintiff knew sufficient facts to assert its new claims before the deadline).

WAI-2847422v3

895140v.1

### B.     The Parfait Family Complaint Should Be Dismissed Or Stayed Under The "First to File" Rule.

The so-called "first-to-file rule" provides that where related cases are pending in two federal courts, "the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (citations omitted); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1161 n. 28 (5th Cir. 1992) ("'[i]n the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide whether it will try the case.'"). This concept applies not only in circumstances where similar cases are pending in two different federal district courts, but also where such cases are pending before different judges in the *same* district court. *Dillard*, 961 F.2d at 1161 n. 28 (same policy concern for avoiding duplicative litigation exist where similar cases are filed in the same district); *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citations omitted) (same). The purpose is to "avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).

For the "first-to-file" rule to apply, neither the parties nor the issues in the case need to be identical to the originally-filed suit so long as there is a "substantial overlap." *Save Power*, 121 F.3d at 951 (noting substantial overlap should be determined on a case-by-case basis) (citation omitted). Here, the putative sub-class in MRGO and putative class in *Parfait Family* appear to be identical (or if not identical, then the proposed MRGO sub-class wholly subsumes the *Parfait Family* class). *See infra*, pp. 7-8. Although there admittedly are some additional and/or different defendants in *Parfait Family*, who are not parties to the MRGO action, this fact does not defeat the application of the "first-to-file" rule. *See Save Power*, 121 F.3d at 951 ("Complete identity

of the parties is not required for dismissal . . . of a case filed subsequently to a substantially related action.") (citing *West Gulf*, F.2d at 731 n.5; and *National Health Fed'n v. Weinberger*, 518 F.2d 711 (7th Cir. 1975)).  This is particularly true where two purported class actions allege identical claims, and seek to resolve the same issues.  *See City of Columbus v. Hotels.com*, No. 2:06-cv-677, 2007 WL 2029036, *5 (S.D. Ohio Jul. 10, 2007) (having the exact same parties and issues is not an absolute requirement for application of "first-to-file rule," especially where two cases arise out of the same conduct of defendants and are brought by the same putative classes); *Justin v. Metropolitan Life Insur. Co.*, No. 00-2208, 2000 WL 1741858, **1-2 (E.D. La. Nov. 20, 2000) (first-to-file rule applies where two putative class actions are brought on behalf of nearly identical classes of individuals, making similar allegations against the same defendant).

      Here, although *Parfait Family* (and the other so-called "barge" cases) were transferred to and/or consolidated with the *In re: Katrina* cases pending before Judge Duval and Magistrate Wilkinson, that consolidation has failed to effectuate the purposes of the "first-to-file" rule described above.  The MRGO cases and *Parfait Family* case against WGII still will be litigated on separate tracks, despite the fact that they concern the same claims, the same conduct, many of the same defendants, and the same putative class members.  The discovery in the *Parfait Family* action will substantially overlap with – if not duplicate – the class-certification discovery that WGII just finished in the MRGO cases, except the plaintiffs' lawyers and the plaintiffs' experts will be different.  Indeed, under the present plan outlined in CMO No. 5, it appears the barge plaintiffs will have an opportunity to name new class-certification experts, re-depose WGII's experts, and reformulate the MRGO plaintiffs' previously-served written discovery.[7]  Under

---

[7] Moreover, the Court's current case management orders appear to at least contemplate the possibility that two nearly-identical classes of persons (MRGO and Barge) that allegedly suffered flood damages from the eastside of the Industrial Canal ultimately could be certified.  And, both such classes would be pursuing the *same* claims

these circumstances, dismissal or abatement of claims "'pending the outcome of litigation between the same parties involving the same or controlling issues is an acceptable means of avoiding unnecessary duplication of judicial machinery.'" *Dillard*, 961 F.2d at 1148 (citing *ACF Indus. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967)). *See also Newby v. Johnston*, 681 F.2d 1012, 1014 (5th Cir. 1982) (district court's "effort to avoid duplicative litigation surely falls within the court's discretion, particularly when it does not disserve the purposes of the class action"); *Cambridge Toxicology*, 495 F.3d at 178 ("duplicative litigation is a separate and distinct basis for dismiss[ing]" a complaint).

## CONCLUSION

For all of the foregoing reasons, WGII respectfully requests that the Court dismiss and/or stay the Parfait Family Complaint as against WGII. WGII also incorporates herein by reference its Motion to Dismiss all claims against it in the *In re: Katrina* litigation for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted.

---

(continued…)

against WGII. Thus, res judicata, collateral estoppel and potential Seventh Amendment violations would likely bar the second class from reaching a trial on the merits in any event.

Dated:  October 5, 2007

Respectfully submitted,

/s/Heather S. Lonian
William D. Treeby, Bar No. 12901
John M. Landis, Bar No. 7958
Heather S. Lonian, Bar No. 29956
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, LA 70130
Phone:  504-581-3200
Fax:  504-581-3361

George T. Manning
JONES DAY
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
Phone:  404-521-3939
Fax:  404-581-8330

Adrian Wager-Zito
Julia E. McEvoy
Christopher R. Farrell
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone:  202-879-3939
Fax: 202-626-1700

*Attorneys for Defendant*
*Washington Group International, Inc.*

# C E R T I F I C A T E

I hereby certify that a copy of the above and foregoing Memorandum in Support of Washington Group International, Inc.'s Motion to Dismiss or Alternatively to Stay *Parfait Family v. United States*, No. 07-3500 has been served upon all counsel of record through the Court's CM/ECF system or by placing same in the United States mail, postage prepaid and properly addressed, this 5th day of October, 2007.

/s/Heather S. Lonian