UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

CIVIL ACTION

NO. 05-4182
SECTION "K" MAG "2"

PERTAINS TO: ROAD HOME
*State of Louisiana, C.A. No. 07-5528*

JUDGE DUVAL
MAGISTRATE JUDGE WILKINSON

*********************************************************************

<u>MEMORANDUM IN SUPPORT OF MOTION TO REMAND</u>

<u>May It Please the Court:</u>

The State of Louisiana, individually and on behalf of the State of Louisiana, Division of

Administration, Office of Community Development (the "State"), through the Honorable Charles

C. Foti, Jr., the Attorney General for the State of Louisiana, and through the undersigned private

counsel duly authorized to act for and on behalf of the State, respectfully submits the following

memorandum in support of its Motion to Remand. A collection of insurers have removed this suit,

alleging federal jurisdiction pursuant to the Class Action Fairness Act ("CAFA").[1]

---

[1]These insurers are Allstate Insurance Company, Allstate Indemnity Company, Encompass
Indemnity Company, Encompass Insurance Company of America, and Encompass Property and Casualty
Company (collectively, "Allstate").

Allstate's Notice of Removal is defective statutorily and constitutionally.  First, Congress never intended CAFA to apply to a lawsuit, filed by the State, that seeks to adjudicate state law issues on behalf of citizens of Louisiana against an industry that is primarily regulated by the State. As stated by the bill's own supporters, CAFA "**will not in any way impede**" such a lawsuit.[2]

Second, because the State has asserted a state-created cause of action in its capacity as a sovereign, its lawsuit cannot be removed, on diversity grounds, without its consent.  In *Alden v. Maine*, the United States Supreme Court declared that sovereign immunity not only protects a state from a money judgment in favor of a private party, but also "accords the States the respect owed them as . . . residuary sovereigns and joint participants in the governance of the Nation."[3]  Here, the State, which has "full sovereign authority over state-created causes of action," filed a suit against the Insurance Company Defendants that asserted state-law causes of action only.[4]  Allstate improperly infringed upon the State's sovereignty by removing this action to federal court based, not on a federal question, but on the *minimal* diversity requirements set forth in the CAFA.

### Outline of Argument

1)      CAFA does not apply to the State's law suit against the Insurance Company Defendants.

     a)      Congress enacted CAFA to allow removal of lawsuits that are "interstate in nature."[5]

---

[2] *See* 151 Cogr. Rec. S1157-02, S1162 (2005), 2005 WL 309648 (emphasis added).

[3] 527 U.S. 706, 748-49, 119 S.Ct. 2240, 2263 (1999).

[4] *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 277, 105 S.Ct. 3142, 3165 (1985) (Brennan, J.., dissenting).

[5] *See* 151 Cogr. Rec. S1157-02 (2005), 2005 WL 309648.

      b)     Insurance is an inherently "local" industry that exists outside the scope of the interstate commerce clause.[6]

      c)     When a state, as the ultimate authority over insurance in Louisiana,[7] files an action in state court on behalf of its own citizens, CAFA is inapplicable.[8]

2)    Pursuant to the "local controversy" exception to CAFA, this Court must decline jurisdiction.

      a)     The members of the proposed classes are predominantly Louisiana residents.

      b)     Louisiana Citizens Property Insurance Corporation is a Louisiana defendant from whom "significant relief" is sought and whose conduct forms a "significant" basis for the State's claims.

      c)     Congress never intended CAFA to cover the type of lawsuit filed by the State.

3)    The United States Congress cannot abrogate the State's sovereign immunity.

      a)     Article I of the United States Constitution "cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction."[9]

      b)     The State, entitled to the respect owed a "residuary sovereign," should not be forced to litigate a purely local issue in federal courts.

          i)     The State has a "substantial" interest in litigating, in state court, state-law insurance issues that affect hundreds of thousands of Louisiana citizens.

          ii)    Courts have found that when a state, through its attorney general, files an action in state court in its capacity as *parens patriae*, Congress cannot authorize the removal of that suit.[10]

---

[6]*See Northeast Bancorp, Inc. v. Bd. of Governors of the Federal Reserve System*, 472 U.S. 159, 179, 105 S.Ct. 2545, 2556 (1985)(O'Conner, J., concurring); *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 218, 99 S.Ct. 1067, 1077, n. 18 (1979)

[7]*See Lander v. Hartford Life & Annuity Ins.*, 251 F.3d 101, 115 (2001)

[8]*See* 151 Cogr. Rec. S1157-02, S1162 (2005), 2005 WL 309648.

[9]*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73, 116 S.Ct. 1114, 1132 (1996).

[10]*See Moore v. Abbott Laboratories*, 900 F.Supp. 26, 29 (S.D. Miss. 1995).

       iii)    Decisions that permitted removal of an action brought by a state, as a plaintiff, are either inapplicable or flawed.

4)    The State, as the most prominent member of any proposed class, is not a citizen, and thus cannot be diverse from the Insurance Company Defendants.[11]

5)    The fraudulent misjoinder doctrine is inapplicable because the State has or may have claims against all defendants and there is enough "factual overlap" in the claims to make the joinder "commonsensical."

For these reasons, the State requests that this Court remand the above-captioned suit to state court. Alternatively, the State requests that this Court sever and remand all claims in which the State has formally been assigned rights against the Insurance Company Defendants to the State.

## BACKGROUND

### I.   The Road Home Program.

The State created the Road Home Program (hereinafter, the "Road Home") to help Louisiana residents battered by Hurricanes Katrina or Rita return to their homes. The State designed the Road Home to end a vicious circle whereby a housing shortage causes a labor shortage, which stalls the recovery, thus exacerbating the housing shortage. It cannot, therefore, be reasonably disputed that the Road Home is essential to the recovery of large swaths of southern Louisiana.

Soon after the State began implementing the Road Home, the Louisiana Recovery Authority expressed concern that insurers may view the program as a "reason not to pay claims."[12] More specifically, state officials feared that desperate residents may choose to take a check from the state

---

[11]*See Postal Telegraph Cable Co. v. State of Alabama*, 155 U.S. 482, 15 S.Ct. 192 (1894).

[12]*See* "Louisiana Authority May Go After Insurance Claims of 'Road Home' Participants," July 17, 2006 at www.claimsjournal.com/news/southcentral/2006/07/17/70468.htm.

4

government instead of "strain[ing] to collect from their insurers."[13]  These fears have, unfortunately, been realized.  The insurers' refusal to pay for covered losses dramatically increased the volume of Road Home applications, which depleted the funds available to all applicants and created the very real possibility that the Road Home will run out of money before closing all of its claims.  The State was, as a result, forced to take action to protect its program.

## II.    The Road Home Lawsuit

On August 23, 2007, the State filed a lawsuit in Orleans Parish against the Insurance Company Defendants.[14]  Six days later, the State filed a First Amended and Restated Class Action Petition for Damages and Declaratory and Injunctive Relief ("Amended Petition").[15]  The State filed suit on behalf of "itself and all affected citizens of the State, **pursuant to state law only** . . . for the recovery of funds" paid or anticipated to be paid under the Road Home.[16]  The State seeks to "enforce state law contractual obligations" owed by the Insurance Company Defendants to past, present, and future recipients (collectively, "recipients") of proceeds from the Road Home.[17]

The State, through the Attorney General, has standing to bring this lawsuit.  First, as a prerequisite to receiving funds under the Road Home, a recipient must assign to the State the right to assert an action against the recipient's property or casualty insurer for covered losses that should

---

[13]See id.

[14]See State of Louisiana's Class Action Petition for Damage and Declaratory Relief, attached as Exhibit "A" to the Notice of Removal, Document No. 1.  The "Insurance Company" Defendants are identified on pages 7-20 of this Petition.

[15]See Amended Petition, attached as Exhibit "A" to the Notice of Removal, Document No. 1.

[16]See id. (emphasis added).

[17]See id., ¶ 1.

have been paid by an insurer, but were instead paid out of the state treasury.[18]  Consequently, the State can sue the Insurance Company Defendants as a subrogee or assignee for reimbursement of payments made or anticipated to be made under the Road Home.[19]  Second, the State, as *parens patriae*, may file suit to protect "quasi-sovereign interests such as the general economy of the state."[20]

Here, the State, in its sovereign capacity, has asserted claims against the Insurance Company Defendants to collect insurance proceeds owed to it and its citizens pursuant to the "All Risk" policies issued by them.[21]  The State is, moreover, acting through the Attorney General of Louisiana, who has the right, under Article IV, section 8 of the Louisiana Constitution to move to collect the insurance proceeds because he can institute any action "necessary for the . . . protection of any right or interest of the state."

These proceeds are owed because the Insurance Company Defendants' bases for rejecting claims have no support in Louisiana law.  The State filed suit to seek a final adjudication, from a Louisiana court, on such state law issues as the scope of the efficient proximate cause doctrine, the construction of the water damage exclusion, and the effect of the Louisiana Valued Policy Law on insurance coverage.[22]  Because insurance is an industry regulated by states, not the federal government, the resolution of these state law issues is a matter of local concern.

---

[18] *See id.,* ¶¶ 11-12.

[19] *See id.,* ¶ 16.

[20] *State v. Borden,* 95-2655 (La.App. 4 Cir. 11/27/1996), 684 So. 2d 1024, 1028.

[21] *See* Amended Petition, ¶ 16.

[22] *See id.,* ¶ 46.

6

## III.   **The Removal**

On September 11, 2007, Allstate filed a Notice of Removal.[23] Allstate asserts that the State's lawsuit is removable pursuant to CAFA, as set forth in 28 U.S.C. § 1332, 28 U.S.C. § 1441(a) and (b), and 28 U.S.C. § 1453. As alleged by Allstate, CAFA "expand[ed] federal jurisdiction over class actions by amending 28 U.S.C. § 1332 to grant original jurisdiction where the putative class contains at least 100 class members; and any member of the putative class is a citizen of a State different from any defendant; and the amount in controversy exceeds $5,000,000 in the aggregate for the entire class."[24] Allstate asserts that the State's lawsuit meets all the jurisdictional requirements of CAFA and that, additionally, none of the exceptions to CAFA apply.[25]

Allstate's Notice of Removal misses the forest for the trees. As established by the legislative history, Congress did not design CAFA to authorize removal of *parens patriae* suits brought a state attorney general where, not only are the issues local, but also the great majority of the class members and a "significant" defendant are from the same state. On a more fundamental level, applying CAFA to a lawsuit where the State is, by far, the largest member of the class that has asserted state law claims is inconsistent with the State's status as a "residuary sovereign," and thus a violation of the Eleventh Amendment. Hence, the State requests that this Court remand this action to state court.

---

[23] *See* Doc. No. 1.

[24] *See id.,* ¶ 9.

[25] *See generally id.*

## ARGUMENT

I.  **CAFA Does Not Govern the State's Claims Against the Insurance Company Defendants.**

    A.  **Congress Never Intended CAFA to Apply to a "Local" Suit Brought by an Attorney General to Recover the State's Money.**

Exercising authority granted under the Louisiana Constitution, the State, through the Attorney General, filed this lawsuit to protect the viability of the Road Home by recovering payments made for property damage that, under Louisiana law, should have been covered by insurance. Because insurance is a uniquely "local" business, and CAFA was intended to apply to "national" lawsuits, the State's lawsuit is not removable.

In the debate leading up to CAFA's enactment, the bill's supporters repeatedly made the distinction between matters of local and national concern. Senator Orrin Hatch declared, for example, that CAFA enables lawsuits that are "interstate in nature " to be removed to federal court.[26] Senator Hatch further argued that the "legislation has been carefully **crafted to distinguish between truly local suits and those that involve national issues.**"[27]  The State's lawsuit, although very important to the recovery of south Louisiana, is nevertheless a "local" suit. More specifically, due to the "local nature of insurance," the rulings in this suit will have no binding effect on insurers in other states.[28]

The McCarren-Ferguson Act provides that the "business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or

---

[26] *See* 151 Cogr. Rec. S1157-02, S1164 (2005), 2005 WL 309648

[27] *See id.* (emphasis added).

[28] *Northeast Bancorp,* 472 U.S. at 179, 105 S.Ct. 2545, 2556 (1985)(O'Conner, J., concurring)

taxation of such business."[29]   Congress enacted McCarren-Ferguson in response to *United States v. South-Eastern Underwriters Association*,[30] which held that insurance companies are in interstate commerce.[31]   McCarren-Ferguson "operates to assure that the States are free to regulate insurance companies without fear of Commerce Clause attack."[32]   According to McCarren-Ferguson, then, insurance companies are **not** in interstate commerce.

The State of Louisiana has exercised its authority to regulate the insurance industry. Louisiana Revised Statute § 22:2 states that insurance "is an industry affected with the public interest and it is the purpose of the Code to regulate that industry in all its phases."   This statute created the position of Commissioner of Insurance, who has the authority to "investigate, hold hearings, and prohibit" insurers from charging excessive rates.[33]   In addition to creating the commissioner of insurance, the Louisiana Legislature has established the Louisiana Casualty and Surety Rating Commission, which has the power to "fix equitable rates."[34]

The regulation of the insurance industry in Louisiana is entirely a matter of state, *i.e,* local, concern.   A decision issued by a Louisiana court or an administrative ruling from the commissioner of insurance will have no binding effect on insurers and/or insurance policies in other states. Because Congress designed CAFA to address lawsuits "interstate in nature," it is not applicable to

---

[29]*See* 28 U.S.C. § 1012(a).

[30]322 U.S. 533, 64 S.Ct. 1162 (1944).

[31]*See Group Life & Health Ins.,* 440 U.S. at 219, 99 S.Ct. 1067, 1077, n. 18 (1979).

[32]*Id.* (emphasis added).

[33]*Employers-Commercial Union Ins. Co. v. Bernard*, 303 So. 2d 728, 731 (La. 1974).

[34]*Id.* at 730.

9

a suit brought by the state to enforce its own insurance laws.

During the debate over CAFA, Senator Charles Grassley stated that CAFA would not diminish the "ability of State attorneys general to protect their citizens in State court," but rather would ensure that "cases that have national significance" are removable.[35] Under Senator Grassley's argument, this matter should not be removed because it is significant to the people of Louisiana only — no state court judge in Orleans Parish will have any control over insurers in other states, thus limiting its "national significance."

### B.    Discretionary Factors Support Remand

CAFA sets forth several factors for a court to consider when it has the discretion to decide whether to remand a lawsuit that is, as an initial matter, removable. That the State's lawsuit satisfies the vast majority of these factors is another indication that Congress never intended CAFA to apply to the State's claims.

Under 28 U.S.C. § 1332(d)(3), a court with discretion to decline jurisdiction under CAFA can consider whether (1) the claims asserted involve matters of national or interstate interest, (2) the claims asserted will be governed by the laws of the State in which the action was originally filed, (3) the class action has been pleaded in a manner that seeks to avoid federal jurisdiction, (4) the class action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants, (5) the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes is substantially larger than the number of citizens from any other State, and (6) whether, during the three-year period preceding the filing of that class action, 1 or more class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

---

[35]*See* 151 Cogr. Rec. S1157-02, S1163 (2005), 2005 WL 309648.

Except for the last factor, which is discussed below, the first five factors clearly support a remand. For the first factor, Congress passed the McCarren-Ferguson specifically to refute a Supreme Court decision that insurance was a matter of "interstate interest." The Insurance Company Defendants cannot, moreover, reasonably dispute that the State's lawsuit will be governed by Louisiana law, nor can they argue that any state other than Louisiana has a greater connection to this suit or more of its citizens in the proposed classes. Thus, under the discretionary factors set forth in 28 U.S.C. § 1332(d)(3), the State's lawsuit should be remanded.

Further support for remand is found in §1332's description of "mass torts," which are also removable under CAFA. In particular, 28 § 1332(d)(11) declares that a "mass tort" shall not include a civil action where the "claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State." The State's lawsuit plainly arose from hurricanes that hit Louisiana, and the Insurance Company Defendants' failure to pay what they owed has harmed Louisiana policyholders, as well as the State.

Hence, when CAFA describes the type of lawsuit that does not belong in federal court, it is, in effect, describing the State's lawsuit against the Insurance Company Defendants. Based on the text and legislative history, the State submits that the CAFA cannot be used to authorize removal.

## II.   The "Local Controversy" Exception to CAFA Applies

To establish jurisdiction under CAFA, a defendant must establish that the matter in controversy (1) exceeds $5,000,000.00 and (2) is a class action where any member of a class of plaintiffs is a citizen of a State different from any defendant.[36] Even if these jurisdictional factors

---

[36]See 28 U.S.C. § 1332(d)(2).

are met, CAFA authorizes a court to remand a case when it is "distinctly local in nature."[37]

In particular, under the "local controversy" exception, a court must decline jurisdiction when (1) greater than two thirds of the members of all proposed plaintiff classes are citizens of the state where the action was originally filed, (2) at least one defendant from whom "significant relief" is sought and whose "alleged conduct" forms a significant basis for the claims asserted by the class is a citizen of the state in which the action was originally filed, (3) principal injuries resulting from the defendants' alleged conduct were incurred in the state where the action was filed, and (4) during the three year period preceding the filing of the class action, no other class action has been filed asserting the same or similar allegations against any of the defendants on behalf of the same or other persons.[38] The "local controversy" exception applies to the State's lawsuit.[39]

### A.   Plaintiffs Are Louisiana Citizens Who Sustained Injuries in Louisiana.

Because the State designed the Road Home specifically for persons who lived in Louisiana as of August 29, 2005 and/or September 24, 2005, the State plainly meets the requirement that at least two-thirds of the members of the proposed plaintiff classes are Louisiana citizens. At the time of the hurricanes, these proposed plaintiffs had a Louisiana domicile, and the "presumption in favor of a person's continuing a domicile . . . requires the party seeking to show a change in domicile to

---

[37]*Preston v. Tenant Healthsystem Memorial Medical Center*, 463 F.Supp.2d 583, 592 (E.D. La. 2006).

[38]*See* 28 U.S.C. § 1332(d)(4)(A).

[39]In contrast to the "local controversy" exception, under the "home state" exception, a court must decline jurisdiction when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed. *See* 28 U.S.C. § 1332(d)(4)(B).

12

come forward with enough evidence to that effect."[40]

Allstate included no evidence in its Notice of Removal to suggest that at least one-third of Road Home recipients changed their domiciles. Indeed, the fact that they are applying for funds from the Road Home evinces the desire of displaced citizens to return to their homes. Regardless, the State has attached, under seal, a list of recipients who have received or may be eligible to receive funds through the Road Home. This list demonstrates that over two-thirds of the proposed class is made up of Louisiana citizens. It is, moreover, self-evident that plaintiffs' principal injuries were incurred in Louisiana. The Road Home compensates recipients for property damage that occurred in Louisiana. The Insurance Company Defendants' failure to pay for covered losses to property in Louisiana is the subject of this suit. Hence, the State satisfies the requirement that the "principal injuries" be "incurred" in the State in which the action was filed.[41]

**B.    Louisiana Citizens is a "Significant" Defendant**

In the Amended Petition, the State identified eleven defendants, including Louisiana Citizens Property Insurance Corporation ("Citizens") and Lafayette Insurance Company ("Lafayette").[42] Alleging that Allstate has a 20 percent market share whereas Citizens and Lafayette total a 7.6 percent market share, Allstate claims that none of the Louisiana defendants is a defendant from whom "significant" relief is sought pursuant to 28 U.S.C. § 1332(d)(4)(A)(II).[43] Allstate further argued that, to be a "significant" defendant, the "local defendant must be a **primary focus** - not just

---

[40]*Preston v. Tenant Healthsystem Memorial Medical Center*, 485 F.3d 804, 813 (5th Cir. 2007).

[41]*See* 28 U.S.C. § 1332(d)(4)(ii).

[42]*See* Amended Petition, ¶ 20.

[43]*See* Notice of Removal, ¶¶ 18-20.

a peripheral defendant."[44]   Judge Vance soundly and persuasively rejected this argument in *Caruso v. Allstate Insurance Co.*[45]

In *Caruso*, property owners filed suit, as class representatives, against insurance companies, including State Farm, Allstate, and Citizens, alleging a total loss due to a covered loss "from the winds of Hurricane Katrina."[46]   As in this matter, Allstate filed a Notice of Removal pursuant to CAFA and argued that Citizens, which held a 7.5 percent market share, was not a "significant" defendant in comparison to 25 percent market share for State Farm and 14 percent market share for Allstate.[47]   The district court found Allstate's argument to be "unconvincing."[48]

As noted above, while the "local controversy" exception focuses on a "significant" defendant, the "home state" exception concentrates on the "primary" defendant.[49]   In *Caruso*, the court reasoned that "CAFA intended there to be "primary defendants" and "significant defendants."[50]   Turning to the dictionary, the court contrasted "principal," which Webster's defined as "first in importance; chief; principal; main" with "significant," which was defined merely as "important."[51] "Insignificant" was, in turn, defined as "having little or no importance" or "trivial."[52]

---

[44] *See id.,* ¶ 38, *citing* S. Rep. 109-14, at 40 (emphasis in original).

[45] 469 F.Supp.2d 364 (E.D. La. 2007).

[46] *Id.* at 366.

[47] *See id.* at 370.

[48] *Id.*

[49] *Compare* 28 U.S.C. § 1132(d)(4)(A) *with* 28 U.S.C. § 1332(d)(4)(B).

[50] *Caruso*, 469 F.Supp.2d at 369.

[51] *Id.* at 369.

[52] *Id.*

14

Armed with these definitions, the court reasoned that, as Allstate considered itself to be a "significant" defendant with 14 percent market share, there was "no principled basis to justify the notion that the difference between a significant and insignificant defendant falls somewhere between 7.5 [Citizens] and 14 [Allstate] percent." The court found that Citizens, with 7.5 percent of the market share, was "**hardly 'trivial' or 'of little or no importance.'**"[53] Thus, the court concluded that Citizens was a "significant" defendant pursuant to 28 U.S.C. § 1332(d)(4)(A)(II). The court's reasoning in *Caruso* applies with equal force to this matter.

For instance, Allstate improperly treats a "significant" defendant as interchangeable from a "primary" defendant, contending that a "significant" defendant must be a "**primary focus - not just a peripheral defendant**" while a "primary" defendant must be "liable to the vast majority of the class members."[54] If Allstate's argument is accepted, there would be no real distinction between such defendants. *Caruso* established, though, that "CAFA intended there to be a substantive difference between "primary defendants' and 'significant defendants.'"[55]

For the words of CAFA to be given any meaning, a "significant" defendant must be different from a "primary" defendant. In *Caruso*, the court stated that, pre-Katrina, Citizens held 7.5 percent

---

[53]*Id.* (emphasis added).

[54]*See* Notice of Removal, ¶¶ 38, 43.

[55]*Caruso*, 496 F.Supp.2d at 369 (emphasis added).  The court's recognition, in *Caruso*, that must be distinction between "significant" and "primary" defendants makes it more persuasive than *Gauntt v. Louisiana Citizens Property Ins. Corp.*, No. 06-7817 (E.D. La. Jan. 16, 2007), 2007 WL 128801.  In *Gauntt*, the court stated that, based on "market share statistics . . . only a small portion of the members of the putative class were allegedly harmed by in-state defendants," including Citizens.  The court never explained the basis for determining that a  7.6 percent market share for a Louisiana defendant could be "insignificant" whereas Allstate's 20.6 percent market share was "significant."  There is no rational basis for such a distinction.  Further, in light of Allstate's argument that a "primary" defendant is one sued by a "vast majority" of the class, *Gauntt's* definition of a "significant" defendant is indistinguishable from a "primary" defendant.

15

of the insurance market in Louisiana.[56] Here, Allstate concedes that Citizens, along with another

Louisiana insurer, Lafayette, hold 7.6 percent of the market.[57] As held in *Caruso,* there is no rational

basis to call Allstate a "significant" defendant with 20 percent of the market while Citizens is

"insignificant" at 7 percent. The "third largest homeowners' insurer in the state" is not a "trivial"

defendant in this lawsuit.[58] The State requests, therefore, that this Court follow *Caruso* and find that

Citizens is a "significant" defendant under 28 U.S.C. § 1332(d)(4)(A)(II).[59]

### C.   Congress Did Not Intend for CAFA to Cover Suits Filed by the Attorney General of Louisiana.

According to Allstate, the "local controversy" exception to CAFA is inapplicable because,

pursuant to 28 U.S.C. § 1332(d)(4)(A)(II(ii), "multiple class actions involving the same or similar

basic allegation . . . have been filed against" the Insurance Company Defendants.[60] The State's

lawsuit against the Insurance Company Defendants is, however, fundamentally different from the

lawsuits cited by Allstate in its Notice of Removal.

The Louisiana Constitution authorizes the Attorney General of Louisiana to file suit, on

behalf of the State, to "protect the rights and interests of the State."[61] In this matter, the State,

---

[56]*Id.*

[57]*See* Notice of Removal, ¶ 36.

[58]*Caruso*, 496 F.Supp.2d at 370.

[59]In *Caruso*, the court pointedly refused to credit the Senate Committee Report, which was repeatedly cited by Allstate in its Notice of Removal, because that report was "issued ten days after CAFA was signed into law." *Id.*

[60]*See* Notice of Removal, ¶ 26.

[61]*State v. Texaco*, 191 La. 846, 7 So. 2d 161, 850 (1942); *see also Meredith v. Ieyoub*, 95-0719 (La.App. 1 Cir. 4/4/1996), 672 So. 2d 375, 379.

through the attorney general, has filed a lawsuit in its capacity as *parens patriae*, which literally means "parent of the country" to protect the viability of a state-created program, the Road Home.[62] CAFA does not apply to such a lawsuit.

According to the legislative history, <u>Congress never intended for CAFA to apply to *parens patriae* actions brought by a state attorney general "authorized under state constitutions."</u>[63]   When debating whether to include a provision that would formally exempt actions filed by a state attorney general from CAFA's coverage, Senator Grassley, in opposing the amendment, announced that it was not "necessary."[64]   Senator Grassley expanded upon that statement:

> State attorneys general have authority under the law of every State to bring enforcement action to protect their citizens.   Sometimes these laws are *parens patriae*, similar to class actions in the sense that the State attorney general represents the people of the State.  In other instances, their actions are brought directly on behalf of that particular state.   **[CAFA] will not affect those lawsuits**.[65]

Another amendment opponent, Senator Cornyn, announced that "when State law and the State Constitution specifically provide for the right of an attorney general, a State attorney general, to sue on behalf of his State's citizens, then this bill, when made a law, "**will not in any way impede that endeavor**."[66]   Here, the State has filed an action to enforce its own insurance laws, protect its citizens, and recover money for the State.   According to Senators Grassley and Cornyn, when a state attorney general undertakes to prosecute this type of lawsuit, CAFA will not "impede that endeavor."

---

[62]*State ex rel. Ieyoub v. Bordens, Inc.,* 95-2655 (La.App. 4 Cir. 1996), 684 So. 2d 1024, 1026.

[63]*See* 151 Cogr. Rec. S1157-02, S1163 (2005), 2005 WL 309648.

[64]*See id.*

[65]*See id* (emphasis added).

[66]*See* 151 Cogr. Rec. S1157-02, S1162 (2005), 2005 WL 309648

The State will expend **billions** of dollars as part of the Road Home. If millions of dollars of Road Home payments were made to cover underpayments by insurers, the State, on its own, has a clear and convincing interest to recover that money. As an enforcement action taken, not only to protect the citizens of Louisiana, but also the state government itself, this is a fundamentally different lawsuit from the suits identified by Allstate. It is a *parens patriae* suit, brought by the attorney general pursuant to the Louisiana Constitution, to address a matter of uniquely local concern. Accordingly, the State requests that this Court apply the "local controversy" exception to CAFA and remand this lawsuit.

### D.     Finding CAFA Inapplicable to the State's Suit Avoids Constitutional Questions.

Congress recognized that, when a state constitution "specifically provide[s] for the right of an attorney general . . . . to sue on behalf of his State's citizens," CAFA cannot be used to bring the matter before federal courts.[67] Congress was, therefore, clearly concerned that CAFA not upset the delicate balance of authority between state and national sovereigns. The State submits that allowing the Insurance Company Defendants to remove an action, which asserts state-created causes of action against an industry regulated by the state, upsets that balance, thereby implicating the Eleventh Amendment.

The United States Supreme Court has repeatedly stated that "statutes should be construed so as to avoid difficult constitutional questions."[68] As evidenced by the length of the opinions in *Seminole Tribe* and *Alden*, there are likely few constitutional questions more difficult than the scope

---

[67] *See id.*

[68] *Vermont Agency of Natural Resources v. United States*, 529 U.S. 765, 787, 120 S.Ct. 1858, 1871 (2000); *see also Office of Senator Mark Dayton v. Hanson*, 127 S.Ct. 2018, 2021 (2007).

of "sovereign immunity." To avoid delving into this much-debated topic, the State requests that this Court remand this lawsuit pursuant to the "local controversy" exception to CAFA.

**II.     As a Sovereign, the State of Louisiana Has a Substantial Interest in Prosecuting this Lawsuit in State Court.**

The United States Supreme Court has declared a "quasi-sovereign interest in the health and well-being - both physical and economic - of its residents in general."[69] Similarly, Louisiana courts recognize that the state, through the attorney general, can file suit as "*parens patriae*, literally 'parent of the country . . . to protect quasi-sovereign interests such as the general economy of the state.'"[70]

The recovery of the areas hard-hit by Hurricanes Katrina and Rita will have an enormous impact on Louisiana's "general economy." Because the Road Home, as a critical element of this recovery, cannot afford to pay for losses that should by covered by insurance, the State is validly acting in its capacity as *parens patriae* to recover money owed by the Insurance Company Defendants. The State filed suit in state court "pursuant to state law only."[71] It does not challenge any provision in the Standard Flood Insurance Policy, nor does it assert claims against any federal agency.[72] This is, in short, a lawsuit brought in a state forum to pursue state-created causes of action.

In *Abrams v. Citibank*, the State of New York, through its attorney general, asserted state law claims against Citibank for acting in a fraudulent and unconscionable manner with respect to

---

[69] *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607, 102 S.Ct. 3260, 3269 (1982).

[70] *State ex rel. Ieyoub v. Bordens, Inc.*, 95-2655 (La.App. 4 Cir. 1996), 684 So. 2d 1024, 1026.

[71] *See* Amended Petition, ¶ 1.

[72] *See id.*

19

Automated Teller Machines.[73]  The court found that the "interest of New York State, and of its Attorney General, to litigate consumer protection cases *in the courts of the State* is ordinarily **substantial**."[74]

In the context of the State's claims against the Insurance Company Defendants, it is well-recognized that the "business of insurance is . . . of **uniquely local concern**."[75]  The State's prosecution of this lawsuit is of interest to *Louisiana only*, as it is only Louisiana's insurance industry that will be bound by the rulings in this case.  Like the attorney general in *Abrams*, then, the Attorney General of Louisiana has a "substantial" interest in litigating "uniquely local" issues in state court.  That CAFA, and its requirement of only minimal diversity, appears to overcome this "substantial" interest underscores the act's constitutional problems.

**III.   Congress Has Limited Power to Abrogate Sovereign Immunity.**

In *Employees v. Missouri Department of Public Health and Welfare*, Justice Thurgood Marshall declared that "[s]overeign immunity is a common-law doctrine that long predates our Constitution and the Eleventh Amendment."[76]  He wrote that it "had been widely understood prior to ratification of the Constitution that the provision in Art. III, § 2 concerning 'Controversies . . . between a State and citizens of another state' would not provide a mechanism for making States

---

[73]537 F.Supp. 1192 (S.D.N.Y. 1982).

[74]*Id.* at 1197 (emphasis added).  As discussed below, despite this "substantial interest," the court denied the Attorney General's Motion to Remand the suit.  However, in *Abrams*, unlike this matter, the state law cause of action was premised on violations of federal law.

[75]*Northeast Bancorp, Inc. v. Bd. of Governors of the Federal Reserve System*, 472 U.S. 159, 179, 105 S.Ct. 2545, 2556 (1985) (emphasis added).

[76]411 US. 279, 288, 93 S.Ct. 1614, 1619 (Marshall, J., concurring in result).

unwilling defendants in federal court."[77]

When the United States Supreme Court, in *Chisolm v. Georgia*, nevertheless held that Georgia could be "forced to answer a suit brought in federal court by a citizens of South Carolina," Congress and the States reacted by adopting the Eleventh Amendment.[78] The Eleventh Amendment states that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

Importantly, the Supreme Court has held that there should be "no blind reliance upon the text of the Eleventh Amendment" when interpreting the scope of sovereign immunity.[79]   This amendment "does not define the scope of the States' sovereign immunity; it is but one particular exemplification of that immunity."[80] To cite one example, even though the plain text of the Eleventh Amendment appears to govern diversity suits only, the Supreme Court, in *Hans v. Louisiana*, held that an action brought pursuant to federal law was barred by the Eleventh Amendment.[81]

The Supreme Court has repeatedly found that the principle of sovereign immunity acts as a substantial check on Congress's lawmaking power. In *Seminole Tribe*, where Congress passed a law, pursuant to its commerce clause power, that expressly abrogated states' sovereign immunity, the Court ruled that "Article I cannot be used to circumvent the constitutional limitations placed upon

---

[77]*Id.* at 291, 93 S.Ct. 1614, 1621.

[78]*In re Dehon, Inc.,* 327 B.R. 38, 45, n. 12 (Bkrtcy.D.Mass. 2005).

[79]*Seminole Tribe*, 517 at 69, 116 S.Ct. 1114, 1131.

[80]*Fed. Maritime Comm'n v. South Carolina State Ports,* 535 U.S. 743,  122 S.Ct. 1864 (2002)

[81]134 U.S. 1, 10 S.Ct. 504 (1890).

federal jurisdiction."[82]

Notably, the Supreme Court reasoned that the Eleventh Amendment "<u>does not exist solely in order to prevent federal court judgments that must be paid out of a State's treasury.</u>"[83]  It also, according to the Court, "**serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.**"[84]  The Supreme Court expanded upon this concept of "dignity" in *Alden v. Maine.*[85]

In *Alden*, the Court found that a lawsuit alleging violations of the Fair Labor Standards Act that had been filed in state court was barred by Eleventh Amendment.  In explaining its decision, the Supreme Court focused on the "fundamental aspect of . . . sovereignty which the states enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain Constitutional amendments."[86]

The Supreme Court then explained how the federal system preserves the sovereign status of the States:

> it reserves to them a substantial portion of the Nation's primary sovereignty, together with the dignity and essential attributes inhering in that status.  The States form distinct and independent portions of the supremacy, **no more subject, within their respective spheres, to the general authority than the general authority is subject**

---

[82]*Seminole Tribe,* 517 at 73, 116 S.Ct. 114, 1132.  In *Seminole Tribe,* the Supreme Court acknowledged that Congress had power under the Fourteenth Amendment to abrogate sovereign immunity.

[83]*Id.* at 58, 116 S.Ct. at 1124 (emphasis added).

[84]*Id.* (emphasis added).

[85]527 U.S. 706, 119 S.Ct. 2240 (1999).

[86]*Id.* at 713, 119 S.Ct. 2240, 2246-47.

<u>to them, within its own sphere.</u>"[87]

According to the Supreme Court, this federal system requires that "Congress treat the States in a manner consistent with their status as residuary sovereigns and joint participants in the governance of the Nation."[88] As in *Seminole Tribe*, the Court noted that private suits present the "indignity of subjecting a State to the coercive process of judicial tribunals."[89] They are, as a result, barred by the Eleventh Amendment.

Although neither *Seminole Tribe* nor *Alden* addressed whether a suit filed by a State in state court that asserts state law claims can be removed, the reasoning behind these two decisions strongly suggest that the answer is no.   A state that files a state law claim in state court is acting entirely within its "respective sphere."  Subjecting this claim to the federal court system, particularly where, as here, it is asserted under the State's capacity as *parens patriae*, is an indignity not contemplated by CAFA or permitted under the Eleventh Amendment.  Indeed, as recognized by the Supreme Court, the "<u>preeminent purpose</u> of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities."[90]  Permitting removal of this suit would be incompatible with the "preeminent purpose" of state sovereign immunity.

## IV.   <u>Sovereign Immunity Bars Diversity-Based Removal of Suits Filed by the State.</u>

### A.   <u>Courts Have Found That Sovereign Immunity Prevents a *Parens Patriae* Suit From Being Removed to Federal Court.</u>

---

[87]*Id.* at 714, 119 S.Ct. at 2247 (emphasis added).

[88]*Id.* at 748, 119 S.Ct. at 2263.

[89]*Id.* at 749, 119 S.Ct. at 2264.

[90]*Federal Maritime Comm'n,* 535 U.S. at 759, 122 S.Ct. 1864, 1874 (emphasis added).

In *Moore v. Abbott Laboratories, Inc.*, the attorney general of Mississippi filed a suit on "behalf of the state and as *parens patriae* on behalf of Mississippi citizens injured by Defendants' alleged misconduct."[91]  In the lawsuit, the attorney general alleged that, as a result of defendants' wrongful actions, the "State and the citizens of the State have paid more for infant formula than they would have paid in the absence" of the alleged wrongful conduct."[92]  The Defendants removed the suit to federal court on diversity grounds.[93]  The attorney general moved to remand, claiming that the Eleventh Amendment applied "with equal force to a suit brought against a state in federal court, and a suit brought by a state in state court which is removed to federal court."[94]

In remanding the case, the court in *Moore* approvingly cited *State of California v. Steelcase, Inc.*  In *Steelcase*, the court held that the Eleventh Amendment provides a State with "**immunity from being made an involuntary party to an action in federal court.**"[95]  Agreeing with *Steelcase*, the *Moore* court found that, because the "State does not consent to this removal, the Court . . . lacks subject matter jurisdiction over this action due to the Eleventh Amendment."[96]  By emphasizing the "involuntary" nature of a removal, the courts in *Moore* and *Steelcase* presaged the Supreme Court's focus on the "dignity" of "residual sovereigns" in *Seminole Tribe* and *Alden.*  If the "preeminent" purpose of sovereign immunity is to protect the dignity of the state, then a state that has asserted state

---

[91]900 F.Supp. 26, 29 (S.D. Miss. 1995)

[92]*Id.*

[93]The defendants also removed the suit on federal question grounds, but the court found no apparent federal question on face of the Complaint.  *See id.* at 33.

[94]*Id.* at 30.

[95]792 F.Supp. 84, 86 (C.D. Cal. 1992) (emphasis agreed).

[96]900 F.Supp. at 30.

law claims only should not be involuntarily subjected to the "coercive process" of federal court.[97]

Even justices who disagreed on the scope of sovereign immunity recognized the paramount authority of the state over state law actions. In *Alden*, Justice Kennedy, emphasizing the "dignity" of the state as sovereign, declared that States are not subject to the "general authority . . . within their respective spheres."[98] In *Atascadero State Hospital v. Scanlon*, Justice Brennan, who had a less expansive view of sovereign immunity than the majorities in *Seminole Tribe* and *Alden*, wrote that **"States retained their full sovereign authority over state-created causes of action."**[99]

Synthesizing these two statements, a state-created cause of action on an issue of "unique local concern," *i.e.,* insurance, belongs within the state's "sphere" of authority. Indeed, it is an elemental aspect of sovereignty for a state to be able to enforce its laws in its own courts.[100] Absent the State's consent, then, its claims against the Insurance Company Defendants are not subject to the "general authority" of the federal government. Allowing removal of such a "local" action would be inconsistent with the State's "status as [a] residuary sovereign and joint participant[] in the governance of the Nation."[101]

Furthermore, if Congress intends, through the passage of a statute, to abrogate sovereign immunity, it must do so "**with unmistakable clarity**."[102] CAFA makes, however, **no mention** of

---

[97]*Federal Maritime Comm'n,* 535 U.S. at 759, 122 S.Ct. 1864, 1874

[98]*Alden,* 527 U.S. at 714, 119 S.Ct. at 2247.

[99]473 U.S. at 277, 105 S.Ct. 3142, 3164.

[100]Ann Woolhandler & Michael G. Collins, State Standing, 81 Va. L. Rev. 387, 412 (1995).

[101]*Alden,* 527 U.S. at 748, 119 S.Ct. at 2263.

[102]*Blatchford v. Native Village of Noatak,* 501 U.S. 775, 784, 111 S.Ct. 2578, 2584 (1991)

lawsuits filed by a "residuary sovereign," so it is impossible to determine, from the text alone, if the removal of such a suit complies with the Eleventh Amendment. The legislative history likewise contains no statements regarding the abrogation of sovereign immunity. Indeed, although Congress rejected an amendment that formally exempted suits brought by an attorney general from CAFA, the amendment's opponents still declared that CAFA would not "in any way impede" a state attorney general from filing an action, pursuant to authority granted by the Louisiana constitution, on behalf of "his State's citizens."[103] Because CAFA provides no clarity, much less "unmistakable clarity," on sovereign immunity issues, the State requests that this Court remand the lawsuit.

**B.** **Decisions that Disagree with _Moore_ and _Steelcase_ Are Either Inapposite or Flawed.**

In _Moore_ and _Steelcase_, courts found that the Eleventh Amendment precluded diversity-based removal of an action where the plaintiff is a state. The State acknowledges, though, that several other courts have ruled that the Eleventh Amendment is inapplicable when the state is a plaintiff.[104] In some cases, such as _Terrebonne Parish School Board v. Mobil Oil Corp._ the court relied solely on the text of the Eleventh Amendment to find that it was inapplicable where the state is a plaintiff.[105] Because the Supreme Court has expressly rejected any interpretation of the scope of the Eleventh Amendment that "rest[s] on the words of the Amendment alone," a textual analysis, by itself, is insufficient to address the issues posed by the State's Motion to Remand.[106] A fuller analysis is needed.

---

[103]_See_ 151 Cogr. Rec. S1157-02, S1162 (2005), 2005 WL 309648

[104]_See, e.g.,_ Notice of Removal, p. 14, n. 4.

[105]No. 89-1983 (E.D. La. 1989), 1989 WL 140217.

[106]_Alden_, 527 U.S. at 730, 119 S.Ct. 2240, 2254.

26

    **(1)**    **There Is A Difference Between Jurisdiction Based on Diversity and Federal Question.**

In *Oklahoma ex rel Edmonson v. Magnolia Marine Transport Co.*[107] and *In re Methyl Tertiary Butyl Ether Products Liability Litigation ("In re MTBE Litigation")*,[108] two circuit court cases that authorized removal of an action brought by a state, both courts referred to *Ames v. Kansas* as authority. In *Ames*, the Supreme Court ruled that an action filed by a state to block a corporate merger was "removable."[109] In *Illinois v. City of Milwaukee*, where the state of Illinois alleged that defendants were polluting interstate water, the Supreme Court re-affirmed its prior ruling in *Ames* and concluded that suits brought by states may be "removed to the Circuit Courts (now the District Courts) without regard to the character of the parties."[110]

In *Magnolia*, the Tenth Circuit declared that "nearly every court to consider Eleventh Amendment immunity in the removal context has relied on the unconditional holding of [*Ames* and *City of Milwaukee*, in conjunction with the . . . language used in the constitutional text itself, to conclude that a State cannot assert Eleventh Amendment immunity to bar the removal of a suit it brought."[111] The Tenth Circuit's analysis in *Magnolia* is incomplete. In *Ames* and *City of Milwaukee*, like *Magnolia* and *In re: MTBE Litigation*, federal jurisdiction was premised on a **federal question**. There should be a different analysis where, as here, federal jurisdiction is based on *minimal* diversity.

---

[107]359 F.3d 1237, 1239 (10th Cir. 2004).

[108]488 F.3d 112, 118 (2nd Cir. 2007).

[109]111 U.S. 449, 472 4 S.Ct. 437, 448 (1884).

[110]406 U.S. 91, 101, 92 S.Ct. 1385, 1391 (1972).

[111]*Magnolia,* 359 F.3d at 1239.

For example, in *Stone v. South Carolina*, the state of South Carolina asserted a claim against two attorneys to collect money owed to the state.[112] The Supreme Court held that the federal courts had no jurisdiction over the suit due to the lack of diversity.[113] In reaching its ruling, the Supreme Court distinguished *Stone* from *Ames*, where the "removal of a suit arising under the constitution and laws of the United States . . . was sustained . . . because of the **subject-matter of the action, and not because of the citizenship of the parties.**"[114] In *Stone,* then, the Supreme Court limited *Ames's* holding to suit where jurisdiction is based on a federal question.

In *In re MTBE Litigation*, the Second Circuit explained why removal is appropriate when the state is a plaintiff.[115] Cognizant of the holdings in *Seminole Tribe* and *Alden* that sovereign immunity accords a state the dignity due as a residuary sovereign, the Second Circuit observed that, where federal law was at issue, the states had surrendered some of their sovereignty:

> when the Constitution was adopted, a portion of that judicial power became vested in the new government created, and so far as thus vested it was withdrawn from the sovereignty of the State. Now the execution and enforcement of the laws of the United States, and the judicial determination of questions arising under them, are confided to another sovereign, and to that extent the sovereignty of the State is restricted. **The removal of cases arising under those laws, from State into Federal courts, is, therefore, no invasion of State domain.**[116]

---

[112]117 U.S. 430, 6 S.Ct. 799, 800 (1886). As discussed below, for the purposes of diversity, a state is not a citizen at all.

[113]*See id.* at 433, 6 S.Ct. at 800.

[114]*Id.* (emphasis added).

[115]In *In re MTBE Litigation,* the defendant removed the suit to federal court pursuant to the "federal officer removal statute . . . because the defendants acted at the direction of a federal agency in adding MTBE to gasoline." *In re MTBE Litigation,* 488 F.3d at 115.

[116]*In re MTBE Litigation,* 488 F.3d at 117, *quoting Tennessee v. Davis,* 100 U.S. 257, 266-67, (1880) (emphasis added).

Under *In re MTBE Litigation*, the removal of cases arising under "the law of United States" was not an invasion of the State domain.  In this matter, by contrast, the State's claims against the Insurance Company Defendants are based entirely on state law.   The State has not "confided to another sovereign" the right to make judicial determinations of state law issues.  As Justice Brennan noted in *Atascadero*, the "States retained their full sovereignty over state-created causes of action."[117]

In *Abrams v. Citibank*, the court recognized that the states have a greater interest in their sovereignty when their own laws are at issue.  While acknowledging that the interest of the Attorney General of New York "to litigate consumer protection cases in the courts of the State is ordinarily substantial," it nevertheless allowed removal because the "federal questions present in this case are central to the controversy."[118]   Unlike in *Abrams*, **there are no federal questions central to this controversy**.

CAFA is a purely jurisdictional statute that raises no issue of federal law.  Allstate removed this lawsuit based on diversity grounds only.  Accordingly, the State submits that all cases, such as *Magnolia* and *In re MTBE Litigation*, that permitted removal of a suit brought by a state where the basis of jurisdiction was a federal question, are inapposite to the State's lawsuit against the Insurance Company Defendants.  For diversity cases, the State believes that *Moore* and *Steelcase* reached the correct result.

---

[117] *Atascadero*, 473 U.S. at 277, 105 S.Ct. at 3164 (emphasis added).

[118] *Abrams*, 537 F.Supp. at 1196-97.  As an example, the court noted that most of the causes of action explicitly alleged a violation of federal law.

(2)     **The State Did Not Waive Its Sovereign Immunity by Filing Suit in State Court.**

In *California ex rel Lockyer v. Dynegy, Inc.,* the Ninth Circuit Court of Appeals wrote that *Steelcase*, which had been issued eleven years earlier, was "unpersuasive."[119]   Because jurisdiction in *Dynergy* was based on an alleged violation of federal tariff laws whereas jurisdiction in *Steelcase* was based on diversity, the cases are distinguishable.[120]  The Ninth Circuit's opinion is, nevertheless, worth addressing.

First, the Ninth Circuit cited *Cohens v. Virginia*, in which Justice John Marshall wrote that the Eleventh Amendment applies to suits "commenced or prosecuted by individuals, but not to those brought by the States."[121]  In *Cohens*, though, the state had commenced a criminal proceeding against an individual who subsequently filed a writ with the federal courts, and it had "long been understood that sovereign immunity did not prevent persons convicted of crimes from appealing."[122]

The Ninth Circuit also found that the State of California waived any sovereign immunity by filing suit in state court.  It reasoned that California "voluntarily appeared in state court to press its claims against the companies, who predictably sought removal to what they perceived to be a more favorable forum for the adjudication of claims involving federal law."[123]  As authority for its wavier

---

[119]375 F.3d 831, 849, n. 15 (9th Cir. 2003).

[120]*See id.* at 839.

[121]*Id.* at 845, *citing Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 409, 5 L. Ed. 257 (1821).

[122]*Welch v. Texas Dept. of Highways and Public Transp.,* 483 U.S. 468, 482, 107 S.Ct. 2941, 2950, n. 11 (1987).

[123]*Dynergy*, 375 F.3d at 848.

argument, the Ninth Circuit cited *Lapides v. Board of Regents.*[124]  In *Lapides*, the Supreme Court declared that a "State's voluntary appearance in **federal court** amounted to a waiver of its Eleventh Amendment immunity."[125]  Furthermore, in *Lapides*, the Supreme Court found that the State "*voluntarily* invoked the jurisdiction of the federal court."[126]

Here, as in *Moore*, the Insurance Company Defendants have *involuntarily* subjected the State to the jurisdiction of a federal court.  By filing suit, the State has voluntarily subjected itself to the jurisdiction of a state court.  The Supreme Court has, however, repeatedly held that a consent to be sued in state court does **not** effect a consent to be brought before a federal tribunal.[127]  Contrary to the Ninth Circuit's ruling, the immunity that protects a state from being dragged against its will to the court of another sovereign is not waived when the state files suit it its own courts.

In sum, although the Insurance Company Defendants will be able to point to several cases that allowed a defendant to remove a suit where a state was a plaintiff, the great majority of them involve federal questions.[128]  Because diversity cases do not impact federal law *at all*, the argument

---

[124]*Id., citing Lapides v. Bd. of Regents,* 535 U.S. 613, 620, 122 S.Ct. 1640 (2002).

[125]*Lapides*, 535 U.S. at 619, 122 S.Ct. 1640, 1643 (emphasis added).

[126]*Id.* at 622, 122 S.Ct. at 1645 (italics in original).

[127]*See Smith v. Reeves*, 178 U.S. 436, 441, 20 S.Ct. 919, 921(1900); *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.,* 527 U.S. 666, 676, 119 S.Ct. 2219, 2226 (1999).

[128]In one case where removal was based on diversity, the court held that the Eleventh Amendment was inapplicable. *See In re Rezulin Products Liability Litigation*, 133 F.Supp.2d 272, 297, n. 105 (S.D. N.Y. 2001).  In that case, the court relied on *Ames* and *City of Milwaukee*, two cases where the jurisdiction was based on a federal question.  There was no analysis of the difference between diversity jurisdiction and federal question jurisdiction in a sovereign immunity case.  Additionally, in *Huber, Hunt  & Nichols, Inc. v. Architectural Stone, Inc.,* 625 F.2d 22, 24, n. 6 (5th Cir. 1980), the Fifth Circuit stated that the "eleventh amendment is inapplicable where a state is a plaintiff."  This conclusory statement is pure dicta, as the district court ruling that spawned the appeal never decided the "eleventh amendment question." *Huber*, 625 F.2d at 25.  *Huber* was, moreover, issued years before the Supreme Court's landmark decisions on sovereign immunity in *Seminole Tribe* and *Alden.*

for infringing upon the sovereignty of a state by subjecting it to another sovereign's court is much weaker. There is, moreover, no waiver of sovereign immunity when a state files suit in state court. The State submits that *Moore* and *Steelcase* best accord with the concern for a state's dignity expressed in *Seminole Tribe* and *Alden*. As such, the State requests that this Court remand this suit pursuant to the Eleventh Amendment.

**III.  Removal Is Improper Because the State Is Not a Citizen.**

This suit is fundamentally about the State's attempt to ensure the viability of the Road Home by forcing the Insurance Company Defendants to pay what they owe under their "All Risk" policies. In exchange for receiving funds under the Road Home, a recipient must execute a Subrogation/Assignment Agreement that grants the State the right to assert a claim against the recipient's insurer for reimbursement or repayment of Road Home grant funds that "should have been paid by a property or casualty insurer."[129] The proposed class is, moreover, defined by "current and former citizens of the State of Louisiana . . . who have executed or will execute a subrogation agreement in favor of the State."[130]  Clearly, the State is the focal point of the class.

Allstate removed this action based, not on a federal question, but on the minimal diversity requirements of CAFA, which provide that a court has original jurisdiction over a class action where the matter in controversy exceeds $5,000,000.00 as long as a "member of a class of plaintiffs is a citizen of a State different from any defendant."[131]  The State, as the most prominent member of the class, is not a citizen of a State different from any defendant. In fact, the State is not a citizen **at all**.

---

[129]*See* Amended Petition, ¶¶ 11-12, 16.

[130]*See id.,* ¶ 22.

[131]*See* 28 U.S.C. § 1332(d)(2).

More than one century ago, the Supreme Court held that a "**state is not a citizen**" and that, as such, a "suit between a state and a citizen or a corporation of another state is not between citizens of different states."[132] As reiterated eighty years later in *Moor v. County of Alameda*, a "State is not a 'citizen' for purposes of diversity jurisdiction."[133] The same holding applies to class actions. In *State of Louisiana v. Sprint Communications Co.*, the State of Louisiana joined a class of plaintiffs seeking compensation for the use of servitudes.[134] The court held that the lawsuit could not be removed on diversity grounds because the "state is not a citizen of itself."[135]

Thus, for all the claims in which a recipient of Road Home funds has formally assigned the State the right to pursue claims against the Insurance Company Defendants, there can be no diversity under CAFA because the State "is not a citizen of itself."[136] If this Court finds that neither the "local controversy" exception to CAFA nor the Eleventh Amendment justifies a remand of the entire suit, then the State requests that, in the alternative, all claims in which a recipient has executed a Subrogation/Assignment be severed and remanded to state court.

---

[132]*Postal Telegraph Cable v. State of Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 194 (1894) (emphasis added).

[133]411 U.S. 693, 718, 93 S.Ct. 1785, 1800 (1973).

[134]892 F.Supp. 145, 147 (M.D. La. 1995).

[135]*Id.* at 148.

[136]As discussed above, the State did not waive its sovereign immunity defense by filing suit in state court. Even if this Court finds such a waiver, which the State expressly denies, a state "cannot waive its lack of status as a citizen for the purpose of diversity jurisdiction." *Harris v. Pennsylvania Turnpike Comm'n*, 410 F.2d 1332, 1333 (3rd Cir. 1969).

33

## IV.    There Is No Merit to Allstate's Fraudulent Misjoinder Argument.

The most striking aspect of Allstate's claim that removal is proper under the "doctrine of fraudulent misjoinder" is the absence of any analysis.  Citing *Tapscott v. MS Dealer Service Corp.*, Allstate asserts that "[w]here, as here, parallel but unrelated claims are joined against separate diverse and non-diverse defendants, the claims against the non-diverse defendants are considered fraudulently misjoined."[137]  There is no explanation of the standard set forth in *Tapscott*,[138] just a conclusory statement about "parallel but unrelated claims."

In *Accardo v. Lafayette Insurance Company*, the court followed *Tapscott* and, unlike Allstate, actually described the standard.[139]  The traditional "fraudulent misjoinder" doctrine applied only by showing (1) actual fraud in pleading jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendants.[140]  *Tapscott* stated that fraudulent joinder could also be found when a "diverse defendant is joined with a nondiverse defendant as to whom there is no real connection to the claim against the nondiverse defendant."[141]  By referring to *Tapscott*, Allstate is presumably arguing that the third "fraudulent misjoinder" ground applies, although it has not specifically so stated.  Regardless, the "<u>burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one.</u>"[142]

---

[137]*See* Notice of Removal, ¶ 48.

[138]77 F.3d 1353 (11th Cir. 1996).

[139]No. 06-8568 (E.D. La. Jan. 30, 2007), 2007 WL 325368.

[140]*Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).

[141]*Accardo*, 2007 WL 325368 at *2.

[142]*Ford v. Elsbury*, 32 F.3d 931, 935 (5th Cir. 1994) (emphasis added).

34

In *Accardo*, which was favorably cited by Allstate, the court found that, to determine whether joinder was improper under *Tapscott*, it had to refer to *state joinder law*, not Federal Rule of Civil Procedure 20.[143]  Under Louisiana Code of Civil Procedure article 463, joinder is proper if (1) there is a community of interest between the parties joined, (2) each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue, and (3) all of the actions cumulated are mutually consistent and employ the same form of procedure.  As recognized in *Accardo*, the key question, for fraudulent misjoinder purposes, is whether there is a community of interest.

With respect to the "community of interest" factor, "neither state nor federal rules of joinder require that the plaintiff establish joint liability as all joined defendants, on every theory of liability, as a necessary prerequisite to joining parties and claims."[144]  Additionally, in *Pierce v. Reily-Benton Company*, where premises owners in an asbestos case were sued by some, but not all, plaintiffs, the Louisiana Fourth Circuit Court of Appeal nevertheless held that joinder was proper because a "core group" of asbestos manufacturers had been sued by all plaintiffs.[145]

Here, instead of "core" defendants, there is a "core" plaintiff, the State of Louisiana.  Through its subrogation agreement with recipients of Road Home funds, the State has or will have the right to pursue claims against all Insurance Company Defendants.  Allstate has not even begun to meet its "heavy burden" of proving otherwise.  The presence of the State as the current and future holder of claims against all defendants makes this case distinguishable from any other hurricane case where the court found that the fraudulent misjoinder doctrine justified removal.

---

[143] *See Accardo*, 2007 WL 325368 at *3-4.

[144] *Bright v. No Cuts Inc.*, No. 03-640 (E.D. La. Oct. 27, 2003), 2003 WL 22434232, * 8.

[145] 2002-2253 (La.App. 4 Cir. 4/16/2003), 846 So. 2d 143, 144

Furthermore, in *Mauberret-Lavie v. Lavie*, the Fourth Circuit wrote that a "community of interest is present where enough factual overlap is present between the cases to make it commonsensical to litigate them together."[146] In this matter, there are several issues, such as whether wind was the "efficient proximate cause" of the hurricane damage or if water that burst through the levee breaches is excluded, that will apply to all claims.[147] It would be manifestly inefficient for the State to litigate each of these issues in separate lawsuits.  There is, therefore, "enough factual overlap" to make joinder of the Insurance Company Defendants "commonsensical." Allstate's claim that the "fraudulent misjoinder" doctrine mandates removal is misplace.

## CONCLUSION

For the foregoing reasons, the State requests that this Court remand this matter to civil district court in Orleans Parish.

<div style="margin-left: 40%;">

Respectfully submitted,

THE STATE OF LOUISIANA

The Honorable Charles C. Foti, Jr. (No. 5784)
ATTORNEY GENERAL,
STATE OF LOUISIANA
1885 North Third Street, 6th Floor
Baton Rouge, LA  70802
Ph.: 225-326-6040
Fax: 225-326-6097

AND

    */s/* Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr. (No. 5486)
FAYARD & HONEYCUTT, A.P.C.

</div>

---

[146]2003-0099, (La.App. 4 Cir. 2003), 850 So. 2d 1, 2.

[147]*See* Amended Petition, ¶ 44.

519 Florida Avenue, S.W.
Denham Springs, LA  70726
Ph.: 225-664-4193
Fax: 225-664-6925
Email: calvinfayard@fayardlaw.com

AND

Paul G. Aucoin (No. 2604)
PAUL G. AUCOIN, ATTORNEY AT LAW
135 Goodwill Plantation
Vacherie, LA  70090-5240
Ph.: 225-265-7906
Fax: 225-265-7906
Email: aucoinp@bellsouth.net

AND

Joseph J. McKernan (No. 10027)
McKERNAN LAW FIRM
8710 Jefferson Highway
Baton Rouge, LA  70809
Ph.: 225-926-1234
Fax: 225-926-1202
Email: jemckernam@mckernanlawfirm.com

AND

Drew A. Ranier (No. 8320)
RANIER, GAYLE & ELLIOTT, L.L.C.
1419 Ryan Street
Lake Charles, LA  70601
Ph.: 337-494-7171
Fax: 337-494-7219
Email: drainer@rgelaw.com

AND

Frank C. Dudenhefer, Jr. (No. 5117)
THE DUDENHEFER LAW FIRM
A Limited Liability Company
Pan American Life Center
601 Poydras Street, Suite 2655

37

New Orleans, LA  70130
Ph.: 504-525-2553
Fax:  504-523-2508
Email: FCDLaw@aol.com


## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2007, I electronically filed the forgoing with the Clerk

of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of

record in the captioned matter.

      */s/* Calvin C. Fayard,  Jr.
CALVIN C. FAYARD, JR.