# App. Tab 10

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

**CIVIL ACTION**

**NO: 05-4182**

**SECTION "K" (2)**

PERTAINS TO:  ALL LEVEE AND MR-GO CASES

---

### AFFIDAVIT OF JOHN A. KILPATRICK, PH.D., MRICS
### RE:  HURRICANE KATRINA LITIGATION

**BEFORE ME,** the undersigned authority personally came and appeared:

### JOHN A. KILPATRICK, PH.D., MRICS

who after being duly sworn by me, did depose and say that:

1. I am Dr. John A. Kilpatrick.  I hold a Ph.D. degree in Real Estate Finance, and am a state-certified (general) real estate appraiser in Louisiana and many other states.  I am the President of Greenfield Advisors, formerly Mundy Associates, LLC, a real estate appraisal and consulting firm headquartered in Seattle, Washington.  For more than two decades, our firm has been a leading authority on difficult real estate appraisal problems, specializing in particular in the valuation of contaminated sites. We are unusual, if not unique in the high level of educational and professional qualifications of our staff, including several PhDs, the rigor of our quantitative techniques and our published articles in both academic and professional journals on appraisal techniques.

2. I am the author or editor of four books on real estate, most recently Subdivision Development (1998), published by the Realtors Land Institute of the National Association of Realtors.  I am presently a consultant on environmentally impaired property to many organizations.  At the invitation of the Japan Real Estate Institute, I co-authored the authoritative guide on the appraisal of environmentally impaired properties for appraisers in that nation, published in the October, 2003, issue of the Journal of the Japan Real Estate Institute.  I am a member of the Publications Review Board of the U.S. Appraisal Institute, which publishes The Appraisal of Real Estate, currently in its 12th edition, and which is universally regarded as the leading authoritative guide on the subject in the world today.  In 2004, I am became one of a handful of appraisers in the

United States designated as a nationally certified appraisal standards instructor by the Appraisal Standards Board in Washington, D.C. Also, in 2004, I was honored by my peers in the industry by being nominated for a seat on the Appraisal Qualifications Board and by being named a Member of the Faculty of Valuation of the British Royal Institution of Chartered Surveyors. I have been professionally engaged in real estate finance, appraisal, development, and teaching for the past twenty-five years. I have been accepted as an expert witness in various state and federal courts throughout the U.S. on matters relating to real estate valuation, contaminated or otherwise impaired property values, construction defects, and statistical analysis. A more complete and current set of my Professional Qualifications is attached to this affidavit, along with a listing of my trial testimony for the past four years.

3. I am the lead author of "The Aftermath of Katrina: Recommendations for Real Estate Research", a peer-reviewed article written at the invitation of the <u>Journal of Real Estate Literature</u> (Kilpatrick and Dermisi, 2007) to provide authoritative guidance to academics and real estate practitioners conducting scholarly research into the real estate impacts in New Orleans following the 2005 Hurricane. The article recognizes that holistic, market-wide analytical methods are necessary to understand the economic and property value issues in the affected areas. A copy of that article is attached to this affidavit.

4. Since Hurricane Katrina, I have made extensive examinations of the New Orleans market. Our firm was engaged by attorneys representing property owners in the Murphy Oil Spill matter, and we are presently engaged in a number of projects in various parts of Louisiana. Since the conclusion of the Murphy Oil Spill matter, we have continued to gather data about the New Orleans market and I continue to conduct personal inspections of neighborhoods affected by the flooding.

5. I have been asked to opine on behalf of the plaintiffs in the above referenced case on the question of whether or not, from a real estate analysis and appraisal perspective, the matters at hand in this case can be best analyzed as a class action. While my main focus will be on the elements of appraisal methodology that argue for class treatment of valuation issues in cases of this nature, it may be useful to begin with a brief summary of general principles related to class certification and a non-technical summary of relevant appraisal issues in relation to those principles.

6. I understand that the Plaintiffs have filed two separate class actions. The first proposes two subclasses to the east of the Industrial Canal. The second proposes five subclasses to the west of the Industrial Canal. I believe that individuals who owned property within each of these subclasses sustained a damage to the value of their property. I further

believe that the amount of the damage can be determined on a "subclass by subclass" basis expressed as a percentage loss of pre-Katrina property value.

## Summary of Findings

7. With respect to cases involving damages to real estate property values, use and enjoyment, we can paraphrase the salient issues regarding class treatment as follows:

- Is the number of affected properties large enough to result in efficiencies for the courts and the parties in treating the plaintiffs as a class, the so called numerosity criterion?

- Do appraisal standards and best practices of the valuation profession indicate that the real estate value issues litigated are best analyzed on a class-wide basis or on an individual property basis, that is, for the issues litigated with respect to property values, do the common factors between properties affected outweigh the differing factors?

- A related question is whether the class can be unambiguously defined, that is, can the class of properties damaged by the issues at hand in this case be distinguished from unaffected properties?

- Can plaintiffs be found who are representative of the class and adequately represented so as to protect the interests of the class, should the issue be resolved through a class action?

- Is there sufficient reason to believe, given previous experience, available data, salient literature, expert analysis, and preliminary examination of evidence in the case, that the common issues affecting property values constitute factors whose effects can be measured in such a way as to result in a reasonable and fair estimate of damages and just apportionment of damages among the members of the class? Does class treatment and use of mass appraisal methods allow for a scientifically valid assessment of damages consistent with the requirements of *Daubert*? Further, will technical aspects of valuation or appraisal methods make class treatment a better way to estimate and apportion damages in comparison to individual valuations of each property? Would individual valuations that did not treat the affected properties as a class be more likely to result in arbitrary variations in damage assessments? Therefore, in addition to increasing costs and adding delays through individual treatment of cases, would the likely result of

individual litigation of damages on a property by property basis be less consistent and less fair apportionment of damages?  Most of the following affidavit comprises a summary of real estate appraisal literature and methodology to establish the feasibility and superiority of class treatment of the valuation issues.

8.  In my opinion, answers to all of the above questions strongly favor class certification in this case. In particular, estimates of damages would almost certainly be more fair and reflective of actual damages if the appraisal problem is approached through mass appraisal approaches rather than via individual valuations where damage estimates would be more capricious and difficult to assess in a fair and consistent manner. For a fair and consistent apportionment of damages, the same class wide valuation issues and comparisons would have to be revisited for each property. Every property's value must be related to the common factors, flooding and its effect on the class. To ensure a fair allocation of damages, individual treatment of each property would for each individual case require the same broader analysis of effects of common factors on the class of affected properties, requiring the appraiser(s) to revisit the same issues again and again with similar appraisal issues in each case.

9.  The list of common factors in this case is among the most clear and compelling we have observed in our broad and long term experience with such cases. The list of common factors includes, but is not limited to:

-   Hurricane Katrina—this storm affected all of the properties in the proposed class, a common cause or initiating factor that undeniably had common effects on many properties.

-   Floodwaters—similar flooding occurred throughout the proposed class.  Further, the extent of the flooding is easily ascertainable.

-   Economic effects—The regional economy and real estate markets in particular suffered common effects due to the storm and flooding. These effects impact on all properties in the proposed class.

-   Stigma and perception of risk—The real estate markets are affected by a common factor of increased perception of risks, including potential risk of future flooding that continues to depress prices[1].

-   Higher insurance premiums and other changes affecting property owners ability to purchase and finance homes—Properties throughout the class (and beyond)

---

[1] USA Today July 25, 2007 p. 1-2b "New Orleans home sellers high and dry"

are affected by common factors such as higher insurance premiums. Since insurance coverage is required by lenders, these premiums affect purchasers ability to afford home purchases throughout the affected class.

This extensive, albeit incomplete, list of common factors affecting the entire class of properties and in ways that lead to large effects on property values throughout the class argue very strongly for class treatment. In our professional experience, we have seldom if ever seen a stronger and clearer set of common factors affecting a class of real properties. This matter, with the common factors of Hurricane Katrina and flooding of entire low lying sectors of the city and surrounding areas, and the identifiable responsibility for the flooding, strikes us as a strong candidate to become literally a textbook example of common issues of fact cited by future authors in real estate appraisal.

10. From an appraisal standpoint, the argument for class treatment exactly parallels the argument from a legal standpoint—a class treatment will save costs, expedite resolution and reduce demands on the court's time and resources. With respect to appraisals, there are not only great efficiencies in treating the plaintiffs as a class, but also advantages in terms of consistency, fairness and justice in allocation of the damage estimates among properties to be gained by examining the pattern of price effects across the class through mass appraisal methods.

11. **Numerosity.** Preliminary indications, and our own research into the post-Katrina market in New Orleans, demonstrate that tens of thousands of individual properties have been similarly affected by the flooding. There can be no reasonable doubt that so many properties are involved that individual treatment of these cases would be not only expensive and time consuming, but practically impossible. As with the common factors, the numerosity of the properties affected is at the upper end of our experience. Class treatment has frequently been chosen by the courts in cases with far fewer properties affected than in the present instance.

12. When we combine this evidence with the common-sense notion that wide-spread economic impacts are reflected in property values, it is reasonable to examine the merits of a case for property damages and the similarity of damages across properties. The common factor of flooding argues for class treatment. This view is reinforced by publications in the academic and professional literatures that have indeed documented this. Regrettably, these issues are not new. Widespread impacts to property values have been documented in similar disaster situations, both man-made and otherwise, in other parts of the U.S.

incorporated into the estimates. In a single case, random variation can obscure or mask the effects of the factor being studied. Considering the cases as a class, the pattern of price effects will be more reliably revealed. Mass appraisal is better suited to sorting out the "signal" from the "noise" while accounting for the effects of other property characteristics. These methods will be further discussed in more detail below.

17. An additional "common factor" in this case would be "the local market" and in particular a degree of "stigma" in market perceptions of the affected properties. Buyers and sellers will have common perceptions, to a degree, of the flooding issue and its effects on property supply and demand in the area. Real estate markets are segmented, of course, by property types and by neighborhoods and properties are heterogeneous in many of their characteristics. However, it is likely that any buyer of property in the affected area would or should have some awareness of the issues of this case. The physical facts of flooding, one common factor, are mediated through common market perceptions into a change in demand and prices. The market perceptions and price effects are additional common factors consequent to the common factor of area wide flooding. "Stigma," that is, the effect on market values of perceptions of risk and damage, has been well documented as a common factor in the peer reviewed real estate literature. (Mundy, 1992, Kilpatrick & Kummerow, 2006)

18. **Unambiguous identification of the class.** Modeling experts engaged in this case are able to identify the properties affected by the flooding. Our research thus far indicates that the extent of the flooding has been well documented. Additionally, Greenfield has extensive experience and in-house technology to work with two- and three-dimensional spatial models. Indeed, mass appraisal models are uniquely suited to integrate geographic information systems (GIS) models into the valuation process. In short, the use of geographic modeling will allow for unambiguous identification of the affected properties when approached on a mass basis.

19. Generally accepted economic theory of consumer demand understands demand (and hence prices paid) for complex goods such as real estate, to be related to the characteristics of the good. (Lancaster, 1966, Rosen, 1974) Prices can therefore be represented and explained through "hedonic" models in the form: *Price = Sum of value of property characteristics*. Thus, for example, size of a house has an influence on price, larger houses tend to sell for higher prices. Hedonic models of house prices often include characteristics such as house size, age of the structure, location variables, house features such as garages, and so on, that consumers consider in their pricing decisions. Hundreds of academic and professional journal papers have been published

reporting statistically significant estimates of the price effects of a wide variety of hedonic characteristics. Not all property characteristics affect prices positively. Negative characteristics, such as age or physical deterioration, show negative price effects in hedonic model estimates and the size of these price effects can be estimated by statistical analysis of sales price/property characteristics data.  These mass appraisal techniques can provide scientifically valid and unbiased estimates of the property value damages due to flooding by comparison of prices in flooded and non-flooded areas, while controlling for the effects on prices of other factors.

20. Unambiguous identification of the class of properties in a market affected by a particular phenomenon can be achieved by a) Identifying the geographical location of properties, b) Associating the extent of the event with these geographical locations, c) Estimating the hedonic price effects due to the varying degrees of flooding and proximity to flooded areas, and d) Incorporating economic variables into a class-wide equation. These effects can also be measured by the same methods in areas not affected by the flooding, and thus unaffected areas can be used as controls for model testing.

21. Hedonic variables in an appropriate pricing model essentially account for the price effects of other variables, allowing us to identify effects of the flooding and compute statistically valid estimates of the price impact of various degrees of flooding, proximity to flooded areas, and other economic variables (systematic decline in the market) based on market evidence or other empirically valid data. The class, defined as "properties within an affected area," can be unambiguously defined by the price/flooding relationship as revealed by empirical estimates of a pricing model. Identifying all such properties within such an area, of course, can be unambiguously done using well defined and accepted geographic Information system (GIS) tools.

22. Additionally, the impact of the flooding has been felt throughout the market as a result of well-documented macroeconomic factors (e.g. – loss of base employment, loss of infrastructure, disruption of the supply/demand, etc.).   Mass appraisal models are superior to individual appraisal models in this respect, and allow for the inclusion of such macroeconomic factors, particularly when those have changed over time or been disrupted by an exogenous event.   Further, a mass appraisal model allows for consideration of the impact of these economic factors in a wide-spread area, even when properties may have suffered indirect, secondary, or tertiary effects from the flooding.

23. **Fair and consistent estimates of the allocation of damages among class members.** Our firm has a unique and longstanding record as analysts who model value effects of various complex situations on individual properties within classes of affected properties.

Our staff includes several PhD's with extensive price modeling experience and we have been pioneers in developing new methods for more fairly and accurately assessing damages to property values in such cases. We have in many cases produced results deemed by courts to be fair, equitable and the best that can reasonably be achieved to reflect a standard of justice between the parties within the limits of human knowledge and abilities. We aim to approach "best practice" or state of the art methods for estimating fair and reasonable damages and apportioning damages among affected parties. If better methods can be discovered or developed given the facts and data of this case, we will adopt them. Our methodology reflects continuous improvement as we adapt progress in appraisal methods from the academic and professional literatures and incorporate our own experience into improving data and pricing models.

### Literature review and comments

24. The extant peer-reviewed appraisal literature is almost unanimous on the issue that mass-appraisal techniques are preferable when similarly characterizable phenomenon impact a statistically large number of individual properties.  The governing paradigm for real estate valuation in Louisiana and other states is the Uniform Standards of Professional Appraisal Practice (USPAP), which we have consistently cited in our work on cases such as this one.  Kilpatrick, Throupe, Mundy, and Spiess (2005)[2] summarize these methodologies as they are used in the appraisal of affected property and as they are applicable under USPAP. Kilpatrick (2004, 2005)[3,4] specifically applies the use of these techniques in class-action matters.

25. As I will demonstrate in the remainder of this Affidavit, the class action model is not only the best way to manage the estimation of losses in this case, the overwhelming weight of prevailing valuation methodology and the Uniform Standards of Professional Appraisal Practice make it difficult, if not impossible, to consider this valuation problem *without* resorting, at least *de facto*, to a mass-appraisal model.  As I will demonstrate in this model, the prevailing thought among academic researchers is that large-scale valuation issues can be best described using large-scale statistical models, and in fact, from a real estate analysis perspective, only those models meet the criteria outlined in *Daubert*[5].

---

[2] Kilpatrick, John A., Ron Throupe, Bill Mundy, and Will Spiess, "Valuation of Impaired Property", Chapter 6 in Simons, Robert, ed., When Bad Things Happen to Good Property (Washington, DC: Environmental Law Center. 2005 forthcoming)
[3] Kilpatrick, John A., "Real Estate Issues in Class Certification", Class Action Litigation Report, October 8, 2004
[4] Kilpatrick, John A., "Appraising Real Estate in Complex Environmental Class Actions: An Expert's View", Toxic Law Reporter, January 13, 2005.
[5] For an authoritative view of the real estate analysis perspective on appropriate methods under *Daubert, see* McLean, Dave, Bill Mundy, and John A. Kilpatrick, "Summation of Evidentiary Rules for Real Estate Experts Mandated by Daubert v. Merrell Dow Pharmaceuticals, Inc.", Real Estate Issues, Fall, 1999

The Uniform Standards of Professional Appraisal Practice have long recognized this, and the provisions therein are fully applicable to a class action model. Quoting from the USPAP Standard Rule 6-1 (a), "Comment: Mass appraisal provides for a systematic approach and uniform application of appraisal methods and techniques to obtain estimates of value that allow for statistical review and analysis of results."

26. As implied by the "systematic approach and uniform application of appraisal methods" USPAP standards comment quoted above, a key test of "common factors" from the appraiser's point of view is whether it is appropriate to use a common pricing model across a class of properties. This is the key to uniform assessment of price impacts in the affected areas. Price modeling begins by determining a market or submarket where the pricing factors would be uniform enough so that, to a reasonable degree of accuracy, buyers' thinking with respect to price is "captured" or well represented by the variables in the model. This requirement is certainly met in the case of residential properties within a contiguous or near contiguous area of a particular community. Literally hundreds of papers in the academic literature have represented prices in an area by a common model according to this logic consistent with class treatment. Again, this expresses the close relationship between existence of a class of properties and mass appraisal methods. We believe a common model, or small number of models reflecting sub-classes of properties, will suffice to determine flood damages, stigma, and other effects on property prices in this case and that this will be the best possible way to determine damages in a consistent fashion across the class and/or subclass.

27. Appraisal methods hinge on the appraisal principle of *substitution*, which holds that the value of an individual parcel of property is a function of the cost of finding another property with comparable utility, and on the basic economic theory that prices are revealed by arms length transactions in markets. Fundamentally, values of unsold properties are inferred from transactions involving similar assets where a realized price reveals how forces of supply and demand are crystallized in buyer behavior. Under this principle, idiosyncratic, individual characteristics of a given property have value *only to the extent those characteristics provide utility and relative to the values of other properties*. In short, even an individual property appraisal, most often performed for financing purposes, requires that the appraiser consider the values of neighboring and comparable properties and subordinate the individual property value to those values which are common and prevailing in the salient market.

28. Because variation is possible in prices, possible prices that might be realized for a particular property are best thought of as a random variable or probability distribution of

possible prices. This means that individual sales may vary from the most probable price. This in turn implies that it is best to examine a number of sales to determine average prices through the statistical law of large numbers in order to gain understanding of the possible price distribution. This fact argues for the superiority of methods that examine larger data sets within a defined class of properties to extract the most relevant pricing factors and sales evidence. (Kummerow, 2002)[6]

29. The "law of large numbers" is a basic statistical principle stating that variation in results decreases and hence accuracy of estimates improves as sample size increases. This occurs because with large samples, the effects of positive and negative random variations tend to cancel out resulting in an unbiased estimate. In the case of complex goods, such as houses or other real estate assets, economic theorists have shown that the prices buyers are willing to pay can be thought of as the sum of what they are willing to pay for particular property characteristics. (Lancaster, 1968, Rosen, 1974)[7][8]. These are called "hedonic characteristics" or variables, from a Greek word meaning "pertaining to pleasure or to hedonism" or "relating to like or dislike." A hedonic pricing model, representing the buyer's willingness to pay for a property, can be written as: $P_s = \Sigma b_x$, where $P_s$ is the price the buyer will pay, and the right hand side of the equation is the sum of the price per unit (a multiplier or coefficient, b, representing the price per unit of each characteristic) times a set of hedonic characteristics (x's). Econometricians use a statistical method called regression model estimation to find the best fitting coefficients (b's) to multiply by the amounts of each characteristic in order to derive a price estimate. The coefficients are estimated from the data by minimizing the total of squared errors in the prediction of price from the hedonic variables. It is important to point out that this is a relatively objective method involving mathematical algorithms. Thus, given the same data and model, every econometrician will estimate the same coefficients. In comparison to conventional appraisal methods based on ad hoc "judgment and experience" for estimating price impacts of property coefficients, this statistical estimation technique offers far more reliability and objectivity. This consistency is an extremely desirable property of a valuation method whose purpose is to assess damages fairly across a large sample of property values.

30. Note that while other hedonic characteristics (such as house size, number of rooms, etc.) may vary between houses, the flooding or water damages and stigma variables

[6] Kummerow, Max, "A Statistical Definition of Value", The Appraisal Journal, October, 2002, 407-416.
[7] Lancaster, K.J.A., "A New Approach to Consumer Theory", Journal of Political Economy 1966, 132-57.
[8] Rosen, S., "Hedonic Prices and Implicit Markets:  Price Differentiation in Pure Competition", Journal of Political Economy, 1974, 34-35.

appear in all of the affected properties pricing equations. This is another way of restating the point that a class action approach is appropriate because of the common factors affecting all of the properties.  Professor Kelly Pace of Louisiana State University, a specialist in spatial statistical methods, has noted the courts' acceptance of hedonic pricing models in complex litigation such as this[9].

31. The task in the present case is to evaluate the effect of common hedonic variables — the negative effects of flooding, stigma and other common economic effects — on the entire set of properties in the class. The price estimation mass appraisal model will include the common flooding variable in the case of all affected properties. Although comparison between affected and unaffected properties could be made on a case by case, single property basis, a superior methodology and logic for this valuation problem considers a set of properties where the effects of individual variation in transactions prices can be "averaged away" by "the law of large numbers." Then the effects of the common factors can be estimated more reliably by the mass appraisal, pricing model approach.

32. In the next section, I will present examples of Mass Appraisal Techniques, governed under USPAP Standard 6.  However, it is important to note that the individual property appraisals performed under Standards 1 and 2 of USPAP require that the appraiser gather comparable data on surrounding properties.  Hence, if the appraiser was to perform individual appraisals on a large number of neighboring properties, each individual appraisal would be extraordinarily inefficient since the same data would be gathered and re-analyzed repeatedly under a set of rules which were never designed for this type of problem.

---

[9] http://www.finance.lsu.edu/academics/finance/re/newpage11.htm , retrieved 7/20/06

## Authoritative Support for Mass Appraisal

33. Outside of the class action problem, appraisers are frequently called upon to value large numbers of properties where the common, systematic factor or factors exceed the individual or idiosyncratic element or elements. Two of the most common examples are *ad valorum* taxation and highway right-of-way condemnation. The latter is of particular interest to real estate appraisers when faced with the environmentally impaired property question, since some of the earliest writings about appraisal of such properties appeared in the eminent domain literature[10]. County tax assessors, treasurers, auditors, or other public officials filling similar roles throughout the United States are required to continuously maintain data bases of real estate values throughout their jurisdictions. As discussed in the foregoing section, individual affected property appraisals conducted under USPAP Standards 1 and 2, following the sales comparison approach typically performed for individual property mortgage financing, would be unnecessarily inefficient, time consuming, and duplicative. Fortunately, USPAP provides for Mass Appraisals under Standard 6. Given that every property in the United States is currently valued by a local tax assessor or other official, and given that most states have laws requiring reappraisal for assessment purposes on regular, periodic, often annual, basis, it goes almost without saying that the frequency and volume of Rule 6 mass appraisals in the United States are at least one or two orders of magnitude more common than are Rules 1 and 2 individual appraisals.

34. The mass appraisal rule allows the appraiser to develop an Automated Valuation Model which provides for the more important and significant common factors plus variation on a per-property basis for other hedonic factors. For example, all of the homes in a given neighborhood will have a fairly common valuation function – say, a base-line "dollars per square foot" value. Above and beyond this, there will be a small variation for homes certain amenities, such as larger-than-average lots, corner lots, larger garages, or other amenities. The appraiser uses statistically valid and unbiased data to determine the valuation model in a given neighborhood and then applies that model to all of the properties in question. Similar models are developed and used for non-residential properties, again with common factors predominating.

35. Note that it is not important for there to be a statistically significant number of properties or transactions of a given type within the class area itself, only that the valuation model

---

[10] For example, see Johnson, J.L., "Public Concerns and Issues: Siting Hazardous Waste Facilities," Right-of-Way, February, 1990, 8-14; and Pestinger, J., and R. Gambill, "Home Values Stabilized after Landfill Gas Scare," Right-of-Way, December, 1990, 4-6.

for that area can be developed using a significantly large sampling of comparable properties. Hence, unimpaired data developed outside the class area (e.g. – a control area with comparable characteristics) allows validation of a useful pricing model. Price modeling can occur even where the properties within the class area are not homogeneous. For ad valorum tax purposes the county tax assessor is almost always faced with the problem of heterogeneous property types. As long as each of the property types can be categorized and a valuation model developed and described, then Rule 6 is the preferred method for valuing a large number of properties together under USPAP.

36. Greenfield Advisors has examined available data on sales in the affected area and nearby. We recognize that there are problems associated with data in the New Orleans market due to damage from Hurricane Katrina. Much of the records base depended upon by appraisers was destroyed and has not yet been restored. However, this data problem is solvable in the context of a large-scale mass appraisal project, and our research in the recent Murphy Oil Spill litigation as well as our subsequent ongoing studies of the New Orleans market have demonstrated the feasibility of tackling a large-scale problem in this market with the tools and techniques of mass appraisal.

37. Colwell, Cannady and Wu (1983) showed that in the traditional sales comparison approach with only a few comparable sales analyzed, appraisers choices of weighting of certain comparables or adjustments is largely a subjective choice rather than an objective one[11]. Vandell (1991) pointed out that where appraisers use "ad hoc" techniques to estimate price differences due to hedonic variables, "bias can enter."[12] Traditional "one property at a time" appraisal methods based mainly on "judgment and experience" have difficulty rising to the standard of empirical verification demanded by Daubert.

38. Lipscomb and Gray's (1990) work illustrates the commonly recognized problem that Standard 1 appraisals and Standard 2 reports are heavily influenced by appraisers experience and subjective judgment, rather than empirical data, when developing adjustments in the sales comparison approach[13]. It is the sales comparison approach which is typically given the most reliance in individual residential property appraisals under USPAP Standard 1.

---

[11] Colwell, P. F., R.E. Cannaday, and C. Wu, "The Analytical Foundations of Adjustment-Grid Methods, Journal of the American Real Estate and Urban Economics Association, 1983, 11-29.
[12] Vandell, Kerry D., "Optimal Comparable Selection and Weighting", Journal of the American Real Estate and Urban Economics Association, 19(2), 1991, 213-231.
[13] Lipscomb, J.B. and J.B. Gray, "An Empirical Investigation of Four Market-Derived Adjustment Methods, Journal of Real Estate Research, 1990, 53-66. Lipscomb and Grey's findings are also discussed in Lentz, G.H. and K. Wang, "Residential Appraisal and the Lending Process: A Survey of Issues", Journal of Real Estate Research, 1998, 11-40.

## TRIAL TESTIMONY,  JOHN A. KILPATRICK, PH.D., GREENFIELD ADVISORS LLC

| Case No. | CASE NAME | PROJECT | COURT NAME | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | RETAINER FOR M&A | TRIAL | DEP | CASE NO. |
|---|---|---|---|---|---|---|---|---|---|
| 06-1102 | Peterson, et. Al. v. D.R. Horton | Contaminated Property | Circuit Court for Montgomery County, MD | Law Offices of Peter Angelos; Baltimore, MD | Ogletree, Deakins, Nash, Smoak, and Stewart; Greenfield, SC | Plaintiff | | X | 26-8778-V |
| 06-1002 | Duffin v. Exelon | Contaminated Property | USDC, ND of Illinois, Eastern Division | Cohen, Milstein, Hausfield, Toll, Washington, DC; Williams Cuker, Berezofsky, Philadelphia, PA | Jenner & Block, Chicago, Il; Harkins Cunningham, Washington, DC; | Plaintiff | | X | 06 CV 1382 |
| 04-1201 | Thomas, et. Al. v. A. Wilbert & Sons and Dow Chemical, et. Al. | Contaminated Property: Underground Rent | 18th Judicial District Court, Parish of Iberville, State of Louisiana | Robert Smolkie and Adele Owens, Baton Rouge, LA; Patrick Pendley, Plaquamine, LA | Barry Marionneaux, Plaquamine, LA; John Michael Parker, Baton Rouge, LA | Adele Owens | | X | No. 55,127 |
| 04-0115 | Turnbull v. MTA | Contaminated Property | Supreme Court of NY, Kings County | Dunewood Truglia | Staff attorneys, NYC Metropolitan Transit Authority | Dunewood Truglia | X | | 26485/99 |
| 06-0407 | Koch v. Hicks | Contaminated Property & Class Certification | USDC, Southern District of New York | Law Offices of Peter Angelos, Baltimore, MD | Staff attorneys, Exxon-Mobile Corporation | Law Offices of Peter Angelos | | X | 05-cv-05745-SAS |
| 05-0801 | Neodesha v. Amoco/BP | Contaminated Property & Class Certification | Wilson County, State of Kansas | Edgar Law Firm, Kansas City, MO | E. Wayne Taff, Sherman, Taff, & Bangart, Kansas City, MO; Evan Westerfeld, Evan Westerfeld, Sidley Austin, Chicago, IL | Edgar Law Firm | | X | |
| 05-0801 | Perrine, et. al., v. DuPont | Contaminated Property & Class Certification | Circuit Court of Harrison Cnty, West Virginia | Farrest Taylor, Cochran, Cherry, Givens, & Smith, Dothan, AL; Steve Medina, Levin Papantonio, Pensacola, FL. | Allen Guthrie, McHugh, & Thomas, PLLC, Charleston, WV; Wildman, Harrold, Allen, & Dixon, Chicago, IL; | Farrast Taylor & Steve Medina | X | X | 04-C-296 |
| 05-1201 | Turner, et. al., v. Murphy Oil USA, Inc. | Contaminated Property & Class Certification | U.S. District Court, E. Dist. Of Louisiana | Daniel Becnel, New Orleans, LA | Frilot, Partridge, Kohnke, & Clements, New Orleans, LA | Daniel Becnel | | X | .05-4144 |



Greenfield
Advisors

Economic, Market
and Valuation Analysts

Greenfield Advisors — Economic, Market and Valuation Analysis

as of August, 2007

## TRIAL TESTIMONY, JOHN A. KILPATRICK, PH.D., GREENFIELD ADVISORS LLC

| Case No. | CASE NAME | PROJECT | COURT NAME | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | RETAINER FOR | M&A | TRIAL | DEP | CASE NO. |
|---|---|---|---|---|---|---|---|---|---|---|
| 04-1006 | In the matter of Wold | Appraisal Standards matter | Alaska Board of R.E. Auth., Asst. Attorney General, State of Alaska | Robert O. Curll, Ketchikan, AK | Clay Keene, Keene & Curll, Ketchikan, AK | Appraisers | | X | | 3300-98-006, 330-02-004 |
| 04-1003 | Thornell v. Cooper Farms | CAFO | Court of Common Pleas, Paulding County, Ohio | Joel R. Campbell, Britt, Campbell, Nagel, & Spreal | Wesley Newhouse; Lane Alton, & Horst, Columbus, Ohio; Britt, Campbell, Nagel, Spreal, LLP, Columbus, Ohio | | | X | | CI-03-155 |
| 01-0606 | Incredible Metals, Inc., et. al., v. Connecticut Resources Recovery Authority, et. al. | Landfill & impaired Property | Superior Court at New Britain (Connecticut) | Walter Twachtman and Grasso & Twachtman, Hartford, CT | Kenneth G. Williams; Gordon, Muir, and Foley, Hartford, CT | Boscalino, Grasso, & Twachtman | | X | | X03CV010511437 |
| 05-0401 | Washington DOT v. Happy Valley | Eminent Domain | Superior Court of King County, State of Washington | Mark Lyon, Deputy Attorney General for the State of Washington | Scott Smith and Richard Ross; Riddell Williams, Seattle, WA | Riddell Williams | | | X | |
| 02-1201 | Celebrity Cruises Inc. and Fantasia Cruising, Inc., v. Essef Corp., Pac-Fab, Inc. and Structural Europe N.V. | Business Value | U.S. District Court, New York, NY | Gregory O'Neill, James Hazen, and Mark Jaffe; Hill Betts, Nash, New York, NY | Renee Plessner & Kenneth Lang; Mound Cotton Wollan & Greengrass, Garden City, NY | Hill Betts Nash | | X | | 98 Civ 3135 (JGK) |
| 05-0102 | Koszewski-Jones, Et. al., v. Delphi Corporation | Contaminated Property | Circuit Court for the County of Kent, Michigan | John A. Ferrell; Dykema Gossett; Grand Rapids, Mich. | Carole Bos and Bradley Glazier; Bos & Glazier, P.L.C, Grand Rapids, Mich. | Bos & Glazier | | X | | 04-09808-CE |
| 05-0303 & 05-0304 | Norbut v. Jaeger, et. al. | Geotechnical | Superior Court of Washington for Kitsap County | Eric Johnson, Bainbridge Island, WA; David Bateman, Alexander & Bateman, Seattle, WA | Sally Leighton, Burgess Fitzer, PS, Tacoma, WA; David Bricklin, Bricklin Newman Dold, LLP, Seattle, WA | Burgess Fitzer and Bricklin, Newman, Dold | | X | X | 02-2-02656-4 |
| 21-04 | Central Puget Sound Regional Transit Authority, dba Sound Transit, v. Carver G. Wilcox, et. al. | Eminent Domain | Superior Court of Washington for King County | Janis White and Larry Smith, Graham & Dunn, PC, Seattle, WA | Catherine Clark, Williams Clark PSC, Kenmore, WA | Williams Clark | | X | | 04-2-06106-7 SEA |

as of August, 2007

Greenfield Advisors
Economic, Legal and Valuation Analysis

## TRIAL TESTIMONY, JOHN A. KILPATRICK, PH.D., GREENFIELD ADVISORS LLC

| Case No. | CASE NAME | PROJECT | COURT NAME | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | RETAINER FOR | M&A | TRIAL DEP | CASE NO. |
|---|---|---|---|---|---|---|---|---|---|
| 02-1109 | Henry, et. al., v. St. Croix Alumina, LLC, Alcoa, Inc. and Glencore, Ltd | Class Action Contaminated Property | District Court of St. Croix, Virgin Islands, Division of St. Croix | Baron & Budd, Dallas, TX | Leboeuf Lamb, Pittsburgh, PA; Bernard C. Pattie, Christiansted, VI; Fowler White, Jacksonville, FL; Tatro Tekosky, Los Angeles, CA | Baron & Budd | | x | 1999/0036 |
| 05-0105 | Kauri Investments Ltd. V. General Insurance Company of America | Contract Dispute | Superior Court of King County, Washington | Byrnes & Keller, Seattle, WA | Short Cressman & Burgess, PA, Seattle, WA | Short Cressman & Burgess | x | x | 03-2-40223-1 SEA |
| 04-0803 | Kleinberg, et. al. v. Slo, et. al. and Governors Lane Condominium Association v. Slo, et. al. | Class Certification, Construction Defects | Superior Court of New Jersey, Monmouth County | Berger & Montague, Philadelphia, PA | Edwards & Angel, LLP, Short Hills, NJ | Berger & Montague | | x | NON-911-01 |
| 03-0601 | Carter, et. Al., v. Ballard, et. Al | Contaminated property | District Court of Nueces County, TX | Hilliard & Munoz, LLP, Corpus Christi, TX | Hayes & Boob, LLP, Houston, TX; Harris & Greenwell, LLP, Corpus Christi, TX; Hartline, Dacus, Barger, Dreyer, & Kern, LLP, Corpus Christi, TX; David Sibley, Attorney at Law, Corpus Christi, TX; Fred Drefing, Attorney at Law, Corpus Christi, TX; Hill & Villarreal, Corpus Christi, TX; Thompson & Knight LLP, Houston, TX | Hilliard & Munoz | x | x | 03-720-F |
| 04-0901 | Carrara II Condominium Owners Assn. V. Carrara, LLC, et. Al. | Construction Defects | Superior Court for King County | Golf & DeWalt, LLP, Seattle, WA | Tousley, Brain, Stephens, LLC, Seattle, WA | Golf & DeWalt, LLP, Seattle, WA | | x | 03-2-17510-4SEA |
| 03-0202 | Palmisano, et. Al., v. Olin Corporation and Standard Fuse Corporation | Contaminated property | U.S. District Court, Northern District of California | Ragazzini & Graham, | Ragazzini & Graham; Husch & Eppenberger LLC, St. Louis, MO; Sedgwick, Detert, Moran, & Arnold, San Francisco, CA; Duane Morris, San Francisco, CA; Creech, CA; ... & Kraus, San Jose, CA | Ragazzini & Graham; Duane Morris | x | x | 5:03-CV-01607-RMW |

# TRIAL TESTIMONY, JOHN A. KILPATRICK, PH.D., GREENFIELD ADVISORS LLC



Economic, Market and Valuation Analysts

as of August, 2007

| Case No. | CASE NAME | PROJECT | COURT NAME | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | RETAINER FOR | M&A | TRIAL | DEP | CASE NO. |
|---|---|---|---|---|---|---|---|---|---|---|
| 04-0703 | Amberly Farms Condominium Owners Association v. J. Scott Homes, Inc., et. Al. | Construction Defects | Superior Court of Washington for King County | Goll & DeWall, LLP, Chism, Seattle, WA | Kirtch, LaPorte, West, & Lochner, PS, Tacoma, WA | Goll & DeWall | | X | | 02-2-13001-7 |
| 00-0501 | Guillory v. Union Pacific | Contaminated property & class certification | 14th Judicial District Court, Parish of Calcasieu, State of Louisiana | Sanders, Crockett, & Davis; Lake Charles, LA | Bergstedt & Mount; Stockwell, Sievert, Viccellio, Clements, & Shaddock; Fraser, Morris, & Wheller, Lake Charles, LA | Sanders, Crockett & Davis | | X | X | 98-5405 |
| 04-0114 | Henry v. Dow | Property Contamination, Class | Circuit Court of Saginaw County, Michigan | Sueve Helder Siegel LLP and Spencer, Fane, Britt & Brown, LLP (Kansas City, MO); Trogan & Trogan, PC (Saginaw, MI) | Dickinson Wright PLLC (Detroit, MI); Braun Kendrick Finkbeiner PLC (Saginaw, MI); Beveridge & Diamond PC (Washington, DC); Kirkland & Ellis LLP (Chicago, IL) | Sueve Helder Siegel | | X | | 03-04777S-NZ |
| 03-0303A | Martinelli v. Dan Paulson Construction, Inc. | Construction Defects | American Arbitration Association, Seattle, WA | Law offices of Robert Gould, Seattle, WA | Greg Jones, Fallon & McKinley, Seattle, WA | Robert Gould | | X | X | 75 110 00402 02 VMD |
| 02-1108 | Holdgrafer, et. al., v. Unocal, et. al. | Contaminated Property (Petroleum) | Superior Court of California, San Luis Obispo County | Steve Crandall, Law Offices of Steve Crandall, San Luis Obispo, CA | James Buttery, Andre Morris & Buttery, Santa Maria, CA | Steve Crandall | | X | X | CV 10262 |
| 02-0909 | Exit 7 Inc. v. Gemini Construction of Washington, Inc., et. al. | Contaminated Property | Superior Court for the State of Washington in King County | Kim Johannessen, Johannessen & Associates, Seattle, WA | Keith Maxon, Buck & Gordon, Seattle, WA | Kim Johannessen | | | X | 01-2-27639-5 KNT |
| 03-0303 | Martinelli v. Olson Sundberg, et. al. | Construction Defects | Superior Court for the State of Washington in King County | Law offices of Robert Gould, Seattle, WA | Lane, Powell, Spears, Lubersky, Seattle, WA | Robert Gould | | X | | 02-2-09927-1 SEA |
| 03-0301 | In re: W.R. Grace & Co., et. al. | Bankruptcy | U.S. Bankruptcy Court for the Dist. Of DI (Spokane, WA) and Delaware | Lukins & Annis PA | Reed Smith, Pillsburgh, PA | Lukins & Annis PA and Richardson, Patrick, Westbrook, & Brickman (Charleston, SC); Richardson, Patrick, Westbrook, & Brickman | | X | | 01-0139 (JKF) |


Greenfield Advisors
Economic, Market
and Valuation Analysis

as of August, 2007

# TRIAL TESTIMONY, JOHN A. KILPATRICK, PH.D., GREENFIELD ADVISORS LLC

| Case No. | CASE NAME | PROJECT | COURT NAME | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | RETAINER FOR | TRIAL | MAAT | DEP | CASE NO. |
|---|---|---|---|---|---|---|---|---|---|---|
| 01-1103 | Renaissance Customs, Inc., v. Toni-Junnell Herbert, et. al. | Construction Defects | Circuit Court for Montgomery County, Maryland | John J. McKenna, Jr., Rockville, MD | Patricia Johnson, Washington, DC | Patricia Johnson | X | | | 2049478V |
| 01-1105 | In the Matter of Lanza | Divorce | Superior Court for the State of Washington for King County | William Kinzel, Kinzel, Allen Skone & Searing, Bellevue, WA | Lori Guzzo and Susan Goplen, Betts Patterson Mines, Seattle, WA | Lori Guzzo and Susan Goplen | X | | | 01-03-04027-1 SEA |
| 02-0202 | Kurtis R. and Pamela Mayer v. Sio Industries, Inc. | Construction Defects | Superior Court for the State of Washington for Pierce County | J.B. Meade, Gordon Thomas Honeywell, Tacoma, WA | Kenneth Hobbs & Lisa Marchesse, Stafford Frey Cooper, Seattle, WA | J.B. Meade | X | X | | 95-2-04168-5 |
| 02-0605 | Juanita Gnesemer v. Pete Appleton, et. al. | Private Takings | Superior Court for the State of Washington for Pierce County | Sinnit & Sinnit, Tacoma, WA | Bullivant Houser Bailey, Seattle, WA | Bullivant Houser Bailey | | X | | 01-2-10352-6 |
| 02-1103 | In the Matter of Cingular Wireless | Cell Tower Permit | Snohomish County Hearing Examiner, Everett, WA | Mike Myhre, pro se | Gary Huff, Karr Tuttle Campbell, Seattle, WA | Mike Myhre | | X | | N/A |
| 02-1106 | Albuquerque Commons v. City of Albuquerque | Eminent Domain | Federal District Court, Albuquerque, NM | Timothy Flynn-O'Brien, Bryan & Flynn O'Brien, Albuquerque, NM | Jack Campbell, Campbell & Wells, Albuquerque, NM, & Mark Hirsch, Albuquerque City Attorney | Campbell & Wells | X | | | CV-95-06031 |
| 02-1107 | Patrick Cooley, et. al. v. Pilchuck Contractors, Inc. | Contaminated Property (Sewerage) | Superior Court for the State of Washington for King County | Ross, Williamson, Seattle, WA | Biggs & Young, Seattle, WA | Ross, Williamson, Loitz | X | X | | 01-2-28025-5 |
| 01-0507 | SAD LLC v. Phillips | Contaminated Property (Chemicals) | Superior Court for the State of Washington for King County | David Ashbaugh, Stanislaw Ashbaugh, Seattle, Washington | Randall Thomsen, Danielson, Harrigan & Tollefson, Seattle, WA | David Ashbaugh | | X | | |
| 03-0110 | RMB Properties LLC v. Roy Street Development, Inc. | Contract Dispute | Superior Court for the State of Washington for King County | Dennis McGlothin, Barokas, Martin, Tomlinson, Seattle, WA | Vincent Lombardi, Short, Cressman, & Burgess, Seattle, WA | Dennis McGlothin | X | | | 02-2-16295-8 |

TRIAL TESTIMONY, JOHN A. KILPATRICK, PH.D., GREENFIELD ADVISORS LLC

| Case No. | CASE NAME | PROJECT | COURT NAME | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | RETAINER FOR M&A | TRIAL | DEP | CASE NO. |
|---|---|---|---|---|---|---|---|---|---|
| 01-0502 | BRE/River Shores LLC v. GeoEngineers, Inc., et. al. | Contract Dispute & Contaminated Property | Superior Court of the State of Washington, in and for Pierce County | Valerie Ann Lee, Lee & Associates, Seattle, WA | Guy Bowman, Betts Patterson, Mines, Seattle, WA | Guy Bowman | | X | 00-2-06215-5 |
| 01-0306 | Naness v. Benaroya | Contract Dispute | Binding Arbitration | Deborah Phillips, Perkins Coie, Seattle, WA | Henry Jameson, Jameson, Babbitt, Stiles, & Lombard, Seattle, WA | Henry Jameson | X | X | |
| 01-0304 | Sundquist v. Strom | Contract Dispute | Superior Court of the State of Washington, in and for Snohomish County | Rich Hill, Phillips McCullough, Seattle, WA | Ross Radley, Seattle, WA | Rich Hill | X | | 00-2-07879-9 |
| 01-0207 | Sundance at Klahanie Condominium Owners Association v. Village Homes Ltd., et. al. | Construction Defects | Superior Court of the State of Washington, in and for King County | Anthony Rafel, Riddell Williams PS, Seattle, WA | Mark O'Donnell and Gregory Ursich, Preg, O'Donnell, & Gillett, Seattle, WA | Anthony Rafel | | X | 99-2-09506-5 |
| 01-0206 | Sierra at Klahanie Condominium Owners Association v. Sierra, Inc., and Murray Franklyn, Inc. | Construction Defects | Superior Court of the State of Washington, in and for King County | Anthony Rafel, Riddell Williams PS, Seattle, WA | Mark O'Donnell and Gregory Ursich, Preg, O'Donnell, & Gillett, Seattle, WA | Anthony Rafel | | X | 99-2-13892-9 |
| 01-0202 | Park Avenue Condominium Homeowners Association v. Buchan Homes | Construction Defects | Superior Court of the State of Washington, in and for King County | Dean Eric Martin, Barker and Martin, Seattle, WA | Stephen M. Todd, Todd and Wakefield, Seattle, WA | Dean Eric Martin | | X | 99-2-20934-6 |
| 00-1204 | Bush, et. al. v. Charoen Pokphand | Contaminated Property (CAFOs) | Superior Court, State of Alabama | Adam Jones, Beasley, Allen, Crow, Methvin, Portis, & Miles, Montgomery, AL | Floyd Gilliland, Nix, Holtsford, Gilliland, Lyons, & Higgins, Montgomery, AL | Adam Jones | | X | |
| 00-1104 | Peter Ciani and Deborah Ciani v. Agra Earth and Environmental | Geotechnical | U.S. District Court, Western District at Seattle | Evan Inslee, Inslee, Best, Doezie, & Ryder, Seattle, WA | Terence Scanlan, Skellenger Bender, Seattle, WA | T. Scanlan | | X | C99-1269Z |



Greenfield Advisors

*Economic, Market and Valuation Analysts*

# TRIAL TESTIMONY, JOHN A. KILPATRICK, PH.D., GREENFIELD ADVISORS LLC

| Case No. | CASE NAME | PROJECT | COURT NAME | PLAINTIFF ATTORNEY | DEFENSE ATTORNEY | RETAINER FOR M&A | TRIAL | DEP | CASE NO. |
|---|---|---|---|---|---|---|---|---|---|
| 00-0603 | Lawrence C. Mendoza, et. Al. v. Toll Brothers, Inc., et. Al. | Construction Defects | Circuit Court for Fairfax County, Virginia | Peter Grenier and Marc Pasekoff, Bode and Beckman, Washington, DC | Michael McManus, Drinker, Biddle, & Reath, Washington, DC | Marc Pasekoff | | X | 184846 |
| 00-0207 | Andrews, Et. al. v. Kerr McGee, et. al. | Contaminated Property (Creosote) | U.S. District Court, N. Dist. Of Mississippi | Hunder Lundy, Lundy and Davis, Lake Charles, LA | J. Gordon Flowers, Gholson Hicks & Nichols, Columbus, MS | Hunder Lundy | | X | 1:00CV158-D-A |
| 00-0101 | Kealon's Landing v. Melco Homes | Condominium Construction Defects | Superior Court for the State of Washington for Snohomish County | Stellman Keehnel, Foster Pepper Shefelman, Seattle, WA | John Evans, Williams Kastner & Gibbs, Seattle, WA | Stellman Keehnel | | X | 98-2-04491-6 |
| 99-806 | Florida Dept. of Transportation v. Phil Smith Toyota | Condemnation | Florida Condemnation Court | Florida DOT attorneys | Allan Rubin, Shutts & Bowen, Ft. Lauderdale, FL | Allan Rubin | X | | 86110-2510 |
| 99-305 | Alice Andahl and Victor and Nancy Chynoweth v. Rick Mezich and Mary Mezich and the City of Edmonds | Geotechnical | Superior Court for the State of Washington for the County of Snohomish | Marc McPherson & Michael Wampold, Hillis Clark Martin & Peterson, Seattle, WA | John Wiegenstein, Heller & Wiegenstein; Steven J. Jager & Christopher Clemenson, Lee Smart Cook Martin & Patterson, Everetty, WA | John Weigenstein | X | X | 98-2-00489-2 |
| 99-303 | City of Vancouver v. Clark County Board of Equalization and Kerry and Ted Gilbert | Inverse Condemnation | WA State Board of Equalization | Brent Boger, City Attorney, City of Vancouver | A. W. Mackie, Owens Davies Mackie, Olympia, WA | A. W. Mackie | X | X | No. 98-72 through 98-75 |
| 99-0206 | Future Shop v. Blume | Contract Dispute | Binding Arbitration | Spencer Hall, Hall Zanzig Widell, Seattle, WA | Henry Jameson, Jameson, Babbitt, Stiles, & Lombard, Seattle, WA | Spencer Hall | X | | |
| 98-1204 | Martusecelli v. Lund | Contaminated Property (Chemicals) | Superior Court of the State of Washington in and for the County of Walla Walla | James Dodge, Foreman and Arch, Wenachee, WA | | James Dodge | | X | 97-2-00694-6 |

Greenfield Advisors
Economic, Market and Valuation Analysts

as of August, 2007