UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 "K" (2)<br><br>JUDGE DUVAL<br>MAG. WILKINSON |
| PERTAINS TO: MRGO | |
| FILED IN    05-4181, 05-4182, 05-5237, 05-6073,<br>05-6314, 05-6324, 05-6327, 05-6359,<br>06-0225, 06-0886, 06-1885, 06-2152,<br>06-2278, 06-2287, 06-2824, 06-4024,<br>06-4065, 06-4066, 06-4389, 06-4634,<br>06-4931, 06-5032, 06-5155, 06-5159,<br>06-5161, 06-5162, 06-5260, 06-5771,<br>06-5786, 06-5937, 07-0206, 07-0621,<br>07-1073, 07-1271, 07-1285, 07-5067 | |

**EXECUTIVE SUMMARY OF
MRGO DEFENDANTS' JOINT MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

October 9, 2007

1. **This case is not a "single catastrophic event" where "one set of operative facts would establish liability."**

Hurricane Katrina was a complex, composite event, bringing wind, rain, flooding, and other damaging forces to bear in different ways, at different times, in different locations. Indeed, defendants' experts have identified 45 separate sources of water that entered the MRGO proposed class area — any one or more of which could have been the cause(s) of a particular injury to a particular plaintiff. Consequently, the persons at fault for one or more of these forces that may have caused one plaintiff's particular damages would not be the same person(s) at fault, in the same percentage, for another plaintiff's particular set of damages sustained elsewhere in the 350,000-acre MRGO proposed class area. And all of the named plaintiffs made a claim under their homeowner's insurance stating that a portion of their property damages was due to wind and rain — for which no one is liable. (*See* Defs.' Br. at 4-14, 43-44.)

The Fifth Circuit has distinguished between single-event disasters (like a plant explosion) that may sometimes be certified as class actions, and complex mass-tort cases like this one — involving numerous defendants, large proposed classes, large geographical areas, and complex issues — that may *not* be certified as class actions because they are permeated with individual issues of causation, comparative fault, and damages. *Steering Comm. v. Exxon Mobil*, 461 F.3d 598 (5th Cir. 2006); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998); *In re Fibreboard*, 893 F.2d 706 (5th Cir. 1990). (*See* Defs.' Br. at 64-67, 84-89.)

**2.     Plaintiffs propose a huge, amorphous class with significant differences.**

Plaintiffs' proposed MRGO class includes more than 200,000 individuals and entities, and covers the entire area east of the IHNC, with over 350,000 square acres. It includes homeowners, renters, businesses, churches, schools, and public entities seeking 16 categories of diverse damages. The only "common" link is that they endured Hurricane Katrina. (*See* Defs.' Br. at 14-16, 44-45.)

**3.     Plaintiffs fail to satisfy the typicality and adequacy requirements of Rule 23(a) due to the differences among the claims of the proposed class members and the overwhelming conflicts of interest in this case.**

Plaintiffs are seeking 16 categories of damages on behalf of the proposed class, including loss of real property; loss of personal property; loss of business opportunities; and personal injury. But the named plaintiffs and the 200,000 proposed class members (both individuals and entities) have not suffered the same injuries. Instead, each individual will have his or her own unique mix of damages. Named plaintiff Jeannine Armstrong has a personal injury claim for more than $280,000. Her mother's house, a few doors down, was crushed by a falling tree. As named plaintiff Henry Davis testified: "I can tell you what happened at my house. I can't tell you what happened three blocks over." Moreover, many of the types of damages being sought for the proposed class were not incurred by any named plaintiff (e.g., none of the MRGO named plaintiffs is a business or corporate entity; none is a renter; and none seeks relief for loss of business opportunities). Such conflicts of interest in this case are overwhelming, due to the different kinds of proof necessary for each claim and the number of different

categories of damages being sought.  As a result, the named plaintiffs are neither typical nor adequate representatives.  (*See* Defs.' Br. at 14-31, 51-59.)

**4.     Plaintiffs cannot satisfy Rule 23(b)(3)'s predominance requirement because the causal chain — negligent conduct, that was the factual and legal cause, resulting in injury-in-fact — for each separate injury incurred by each individual plaintiff will require individualized proofs.**

There is no single causal chain applicable to all class members.  Indeed, plaintiffs admitted in their brief that "no one could resolve on a class-wide basis the question of what damage water intrusion caused to a given structure."  (Pls.' Br. at 23.) Consequently, individualized proofs will be required at trial for each class member's claim to determine whether he or she incurred injury(ies)-in-fact; whether any defendant's conduct was the cause-in-fact of such injury; what other persons or forces may have caused or contributed to such injury; the percentages of fault of the persons causing the plaintiff's injury; and the actual amounts of damage for such injury.  (*See* Defs.' Br. at 60-63.)

Determining the causes and extent of damage to each individual property requires individual forensic inspection, analysis, and evaluation, including consideration of topography of the site and surrounding area; elevation of the structure; evidence of damage from wind, rain, flying debris, fire, and vandalism; the actual level of water, if any, that entered the structure; and the sequence of the foregoing.  The causes and extent of damage vary significantly from property to property.  Moreover, as courts have consistently recognized, the need for individualized proof of personal injury and mental

3

distress makes those claims inappropriate for class certification.  (*See* Defs.' Br. at 13, 32-34, 43-44, 60-63.)

For these reasons, any attempted trial of this case on a class-action basis would inevitably devolve into a series of individual mini-trials with particularized proofs for each plaintiff, which the predominance requirement is intended to prevent.  There are so many individual issues inherent in the claims presented here that they overwhelm any common issues and defeat predominance.  (*See* Defs.' Br. at 60-63.)

Plaintiffs' requested certification of certain issues under Rule 23(c)(4) does not ease plaintiffs' burden to show predominance, because Fifth Circuit precedent requires courts to consider the entire cause of action as a whole, not just so-called "common issues," in analyzing whether Rule 23(b)(3)'s predominance requirement is satisfied. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996).  (*See* Defs.' Br. at 79-80.)

**5.     Plaintiffs' proposed flood model cannot replace the need for individualized proof and will not, as plaintiffs suggest, allow important causation issues to be decided on a classwide basis.**

Plaintiffs' proposed flood model cannot deliver what the law requires to determine causation for any plaintiff's claim.  While the model attempts to depict the maximum depth of floodwaters at various locations throughout the proposed class area, it does not address the cause of any levee breach or overtopping.  More importantly, it does not and cannot show the actual nature or sequence of property damage to any particular structure. The flood model also has many limitations — which plaintiffs' expert has admitted. Finally, even if the Court allowed plaintiffs' flood simulation model to be admitted at

4

trial, defendants would have a due process right to present individualized rebuttal evidence to prove plaintiffs' model predictions to be inaccurate for a particular class member based on all of the available evidence.  (*See* Defs.' Br. at 34-39, 67-73.)

**6.     Plaintiffs' to-be-created mass-appraisal model would not eliminate the need for individualized proofs of damages.**

In an attempt to escape the legal requirement of proving actual individual damages linked to the conduct of a particular defendant, plaintiffs have discussed a to-be-created mass-appraisal model.  Plaintiffs' proposed model remains inchoate, as their damages expert has yet to decide what data or methods he will use to create it.  We know little of this yet-to-be-determined model, except that it will employ so-called "mass appraisal" methods.  But no mass-appraisal approach could account for a plaintiff's particular losses due to wind, rain, looting, and other causes, which are not the fault of any defendant.  Nor does the plaintiffs' damages model plan to address many of the categories of damages sought, including claims by renters and loss of income or business opportunities, much less claims for personal injury, mental distress, or personal-property damages.  Indeed, under plaintiffs' proposed mass-appraisal model, the vast majority of proposed class members' damages claims would not be resolved.  Moreover, the use of mass-appraisal techniques to assess value and determine damages would not produce accurate results because of the unique variability of properties in the New Orleans real estate market.  (*See* Defs.' Br. at 40-47, 73-79.)

5

**7.     Plaintiffs' proposed trial plan does not cure the need for individualized liability determinations, cannot be implemented without violating the Seventh Amendment, and would be neither efficient nor manageable.**

Plaintiffs' proposed trial plan is based on the fundamentally erroneous premise that negligence liability and comparative fault can both be determined at the floodwall. But causation of a levee breach at the floodwall does not equal causation of injury to a particular plaintiff at a particular house. Proof of what may have "caused" a particular breach in a floodwall is not the same proof of *causation* required under Louisiana negligence law to show that any particular injury to a particular plaintiff was *caused by* the wrongful conduct of a particular defendant. *See Barasich v. Columbia Gulf Transmission Co.*, 467 F. Supp. 2d 676, 678, 694-95 (E.D. La. 2006). Nor can "fault" be determined at the floodwall, because Louisiana law requires that it be determined at the house, so that the fault of the defendants and every other person who may have caused a plaintiff's injuries can be assessed. *Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism*, 828 So. 2d 530, 537 (La. 2002). The so-called "liability" determinations proposed for plaintiffs' Phase One Trial thus omit crucial elements of a negligence claim: the jury would *not* be asked to find whether or not a defendant's conduct was the cause-in-fact of a plaintiff's claimed injury, nor would the jury be asked to apportion fault for a plaintiff's claimed injury. (*See* Defs.' Br. at 80-89.)

Plaintiffs' trial plan is also deficient because it would either require the Phase One jurors to continue to serve for decades in Phase Two Trials, or else it would call upon successive Phase Two juries to reexamine the Phase One jury's determinations on sources of inundation, causation facts, and apportionment-of-fault issues. Plaintiffs'

6

proposed trial plan places these highly interrelated causation questions in both Phase One and Phase Two, in violation of the Seventh Amendment.  (*See* Defs.' Br. at 89-91.)

Plaintiffs are essentially proposing the same type of two-phase trial plan that the Fifth Circuit has repeatedly rejected in cases like *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998); and *In re Fibreboard*, 893 F.2d 706 (5th Cir. 1990).  Just as in those cases, plaintiffs propose to try "core liability" issues without ever determining individualized issues of causation and fault for a plaintiff's injuries.  Thus, the proposed trial plan cannot resolve or eliminate the individualized issues that permeate the tort claims alleged here.  (*See* Defs.' Br. at 79-93.)

**8.     The class-action procedural device may not be used to alter or dilute the requirements of substantive law.**

Both the United States Supreme Court and the Fifth Circuit have made clear that courts may not authorize class treatment as a shortcut that jeopardizes due process rights of litigants.  Class-action procedures cannot be used to undermine substantive causation principles that require proof that a particular defendant's conduct caused a particular plaintiff's injury.  *See In re Fibreboard*, 893 F.2d at 711-12.  Proof that *in most cases* a defendant's conduct *would have been the cause* is insufficient to establish causation.  *Id*.  Unless the requirements of substantive law are ignored, this case cannot be certified and tried on a class action basis.  (*See* Defs.' Br. at 1-4, 47-49, 84-89.)

Dated:  October 9, 2007                                      Respectfully submitted,

/s/Thomas P. Anzelmo
Thomas P. Anzelmo, 2533
Mark E. Hanna, 19336
Kyle P. Kirsch, 26363
Andre J. Lagarde, 28649
    Of
McCranie, Sistrunk, Anzelmo, Hardy,
  Maxwell & McDaniel
3445 N. Causeway Boulevard, Suite 800
Metairie, Louisiana  70002
Telephone:  (504) 831-0946
Facsimile:  (504) 831-2492
And
James L. Pate, 10333
Ben L. Mayeux, 19042
    Of
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, Louisiana  70505-2828
Telephone:  (337) 237-7000

Attorneys for the Orleans Levee District

/s/William D. Treeby
William D. Treeby, 12901
Carmelite M. Bertaut, 3054
Heather S. Lonian, 29956
    Of
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

Attorneys for Washington Group
International, Inc.

Of counsel

Adrian Wager-Zito
Julie McEvoy
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-4645
Facsimile:  (202) 626-1700

Jerome R. Doak
Margaret I. Lyle
Amy Payne
Jones Day
2727 N. Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

/s/ Gary M. Zwain
Lawrence J. Duplass, 5199
Gary M. Zwain, 13809
Andrew D. Weinstock, 18495
   Of
Duplass, Zwain, Bourgeois, Morton,
Pfister & Weinstock
3838 N. Causeway Blvd., Suite 2900
Metairie, Louisiana  70002
Telephone:  (504) 832-3700
Facsimile:  (504) 837-3119

Attorneys for Board of Commissioners for
the Lake Borgne Basin Levee District

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Executive Summary of MRGO Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion for Class Certification has been served upon Joseph Bruno, Plaintiffs' Liaison Counsel, this 9th day of October, 2007.

*/s/ William D. Treeby*
William D. Treeby