UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * CIVIL ACTION<br>*<br>* NO. 05-4182<br>*<br>* SECTION "K" (2) |
| PERTAINS TO: | *<br>* JUDGE DUVAL |
| MRGO<br>LEVEE | *<br>* MAGISTRATE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE CLASS-CERTIFICATION TESTIMONY OF MICHAEL W. TRUAX

### INTRODUCTION

MRGO and Levee Defendants, Washington Group International, Inc., Orleans Levee District, Lake Borgne Basin Levee District, East Jefferson Levee District, Sewerage and Water Board of New Orleans, Board of Commissioners of the Port of New Orleans and the United States of America (collectively, "Defendants") respectfully submit this memorandum in opposition to Plaintiffs' Motion In Limine to Exclude the Class Certification-Related Testimony of Michael W. Truax ("Pl. Motion").

Defendants have identified Mr. Michael W. Truax, MAI, a Louisiana Certified General Real Estate Appraiser, to assist the Court in its consideration of Plaintiffs' Motion for Class Certification, particularly concerning issues related to "real estate appraisal, valuation, analysis, markets, negative events, specific property values and structures damaged by Hurricane Katrina…" (*See* July 20, 2007 MRGO Defendants' Final List of Class Certification Witnesses at

p. 4; *See also* July 20, 2007 Joint Levee Defendants' Final Witness List for Class Certification at p. 2) (offering Mr. Truax in the areas of "damages, damage assessment and fair market value of structures damaged by Hurricane Katrina and flooding for the proposed class area").

Plaintiffs now seek to exclude Mr. Truax because, according to Plaintiffs, he "has no experience with [so-called automated valuation models ("AVMs")], has no mass appraisal experience, but voices only a 'position' regarding Plaintiffs' mass appraisal expert opinions." (Pl. Motion at p. 2). Plaintiffs' Motion, quite frankly, misses the point and does little more than prop up a series of straw men based upon references either to cross examination questions taken out of context or posed to Mr. Truax on issues for which he simply will not offer expert opinion.

Indeed, Mr. Truax will not be offered by Defendants to explain the internal methodologies of AVMs or the intricate mathematical formulas of Dr. Kilpatrick's mass-appraisal approaches to property valuation, whatever those approaches may ultimately be. But, given Mr. Truax's boots-on-the-ground experience with the real world use, results, and failures of AVMs and mass appraisals in the local New Orleans market as reflected by his comparisons of AVM/mass appraisal values with values from individual property appraisals and actual sales, he will certainly opine as to the correct way to achieve accurate, consistent, and reliable property appraisals in this local, heterogeneous market.

For the purpose of challenging AVMs and mass appraisals as an academically acceptable methodology to value property post-Katrina in the New Orleans market, Defendants will offer the expert opinions of Dr. James A. Richardson, the John Rhea Alumni Professor of Economics, the Harris J. and Marie P. Chustz Distinguished Professor in Business Administration, and the Director of the Public Administration Institute in the E. J. Ourso College of Business at Louisiana State University, and Dr. Kerry D. Vandell, Professor of Finance and Director of the

Center for Real Estate at the Paul Meraje School of Business, University of California- Irvine. (*See* July 20, 2007 Joint Levee Defendants' Final Witness List for Class Certification at p.3; *See also* July 20, 2007 MRGO Defendants' Final List of Class Certification Witnesses at p.p. 2-3.)

Despite this, and in a belated and thinly veiled effort to distract the Court's attention from Defendants' timely motion to exclude Dr. Kilpatrick, Plaintiffs attempt here to cobble together some kind of argument in support of their motion to exclude Mr. Truax that, when analyzed in light of Mr. Truax's actual opinions and testimony, reveals itself as both utterly having no merit and nothing more than tit-for-tat litigation tactics. Accordingly, Plaintiffs' Motion should be denied.

## **ARGUMENT**

As an initial matter, it is telling that not once in the entirety of Plaintiffs' argument do they cite to Mr. Truax's actual opinions as contained in his separate Levee and MRGO Reports (attached hereto as Exs. 1 and 2, respectively), nor were the reports attached by plaintiffs as exhibits.[1] The Court's own review of those reports will reveal that the vast majority of the opinions actually offered by Mr. Truax have not even been challenged by Plaintiffs. Paraphrased, Mr. Truax's unchallenged opinions include:

- an examination of numerous factors, such as: a) property type; b) property location; c) physical characteristics of the property; d) legal restrictions on the property; e) age and condition of property improvements; f) functionality of property improvements; g) regional, community, and neighborhood conditions / characteristics; h) highest and best use of property; and i) competitive market conditions, is necessary to properly estimate an individual property's value and/or damage associated with a particular event

---

[1] Because the copies of Mr. Truax's deposition transcript attached by Plaintiffs to their motion appear to be missing the last line of testimony on every single transcript page, Defendants attach hereto as Exs. 3 and 4, the complete September 26 and 27, 2007 Truax deposition transcripts.

3

(Truax MRGO Report at p. 9; Truax Levee Report at p.p. 4-5, *also generally*, Truax Levee Report - Exhibit "D");

- individual and detailed property analysis and evaluation are necessary to produce accurate valuation and damage estimates for properties in the proposed classes (Truax MRGO Report at p. 10; Truax Levee Report at p.p. 5, 11-12, *also generally*, Truax Levee Report - Exhibit "D");

- there is a great diversity of properties in both the proposed Levee and MRGO classes and sub-classes (Truax MRGO Report at p. 12; Truax Levee Report at p.p. 6-7, *also generally*, Truax Levee Report - Exhibit "D");

- there is poor reliability of assessed value for property tax purposes in both Orleans and St. Bernard Parishes as a meaningful indicator of a property's value (Truax MRGO Report at p. 14);

- the properties identified by Plaintiffs as being representative of the class as a whole do not represent the "mix" of property uses in the class area(s) and within the context of only single-family residential properties, the properties are not typical of the substantial elements of even this group throughout the class area (Truax MRGO Report at p. 17; Truax Levee Report at p.p. 4, 5, 11-17, *also generally*, Truax Levee Report - Exhibit "D");

- inspections of properties within nine-square blocks of the property of one of the named plaintiffs (Ethel Coats) at 1020 Charbonnet Street in the proposed MRGO class revealed "tremendous variety" and differences between and among individual properties, confirming that mass modeling could not accurately or fairly be employed to calculate market value or property damages of separate properties within the proposed class area (Truax MRGO Report at p.p. 15,17);

- inspections of the numerous properties of named plaintiffs in the proposed Levee and MRGO class, as well as the preparation of individual and detailed analyses with respect to each, identified factors which are unique and must be

>     considered in valuing property (Truax Levee Report at p.p.
>     4-5, *also generally*, Exhibit "D"). [2]

Indeed, Plaintiffs even concede that Mr. Truax's methodology to render these types of opinions is not flawed. (*See* October 2, 2007 Memorandum in Opposition to Defendants' Motion to Exclude the Report and Testimony of Plaintiffs' Putative Expert John A. Kilpatrick ("Pl. Kilpatrick Opp.") at p. 16.) In a nutshell, Plaintiffs offer only a narrow challenge as to what they perceive to be Mr. Truax's opinions on the methodologies of AVMs and mass appraisal. Plaintiffs do not challenge any opinions of Mr. Truax outside of AVM and mass appraisal methodology.

In this regard, there is no disputing Mr. Truax's background and experience as a real estate appraiser and consultant with particular "specialized knowledge" in the metropolitan New Orleans markets. He was educated at Tulane University, receiving a degree in engineering, and has spent the entirety of his professional career, ***over thirty (30) years***, on the ground appraising ***thousands*** of properties in Orleans, St. Bernard, and Jefferson Parishes alone. (*See* Truax MRGO Report at p. 5, Truax Levee Report at p.p. 2-3). Mr. Truax is a Louisiana certified general real estate appraiser and holds the highest distinction (MAI) from The Appraisal Institute, the global, non-Profit professional organization that sets professional standards for real estate appraisers and consultants.[3] Since Hurricane Katrina, he has appraised approximately 400

---

[2] In Levee, Mr. Truax was obviously commissioned to provide an additional element in his report regarding the "study areas" surrounding selected named plaintiffs' homes. Due to the voluminous nature of the Levee report and its accompanying Exhibit "D", the above bullet points do not constitute a complete rendition of all of Mr. Truax's unopposed opinions. Instead, these bullet points are simply demonstrative of the numerous opinions of Mr. Truax that Plaintiffs do not even attempt to challenge.

[3] The MAI designation requires 4500 hours of experience, 380 hours of classroom work, passing 11 examinations, passing a two-day comprehensive examination, and preparing a demonstration report. (*See* August 13-14, 2007 Kilpatrick Dep. Tr. at p.p. 424-427, attached as Exhibit 3 to Defendants' Memorandum of Law In Support of Defendants' Motion to Exclude the Report and Testimony of Plaintiffs' Putative Expert, John A. Kilpatrick.) Curiously, Plaintiffs purported expert, Dr. John Kilpatrick, does not hold the MAI designation, but he is working on it. *Id*. at 97-99.

properties in the Greater New Orleans area, as well as over 100 properties immediately following Hurricane Katrina in connection with insurance claims. *Id.*[4] "The essential elements of the real estate expert's competency include his knowledge of the property and of the real estate market in which it is situated, as well as his evaluating skill and experience as an appraiser." *Hidden Oaks, Ltd. vs. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) (quoting *United States v. 60.14 Acres of Land*, 362 F.2d 660, 668 (3rd Cir. 1966)). Mr. Truax's extensive, specialized experience and competency in this market has led nearly every existing level of court in Louisiana to accept Mr. Truax as an expert in the field of real estate valuation, including this Court, the United States Bankruptcy Courts for the Eastern and Western Districts of Louisiana, and Louisiana state courts in Orleans, St. Bernard, Jefferson, Tangipahoa, Lafourche, and St. Tammany Parishes. (*See* Truax MRGO Report at p.5; Truax Levee Report at p. 2). As such, Mr. Truax has the requisite "scientific, technical or other specialized knowledge" to offer the expert opinions set forth in his reports.[5]

---

[4] It bears mentioning that, unlike Plaintiffs' expert Dr. John Kilpatrick, Mr. Truax has the practical experience and expertise in the local New Orleans real estate market that Kilpatrick has already conceded he would need to create his "statistically robust" model. (*See* Memorandum of Law in Support of Defendants' Motion to Exclude the Report and Testimony of Plaintiffs' Putative Expert John A. Kilpatrick ("Def. Kilpatrick Motion") at p. 11) (highlighting that Kilpatrick testified at his deposition that he ***does not know***: i) how many neighborhoods are in New Orleans; ii) how many neighborhoods are in the classes or how the neighborhoods correlate to the subclass boundaries; iii) whether all of the properties within each subclass flooded; iv) whether elevation variations exist among different New Orleans neighborhoods; and v) has not examined the class representatives' properties or data about the properties)

[5] Plaintiffs' argument that Mr. Truax should be excluded because he "voices only a 'position' regarding Plaintiffs' mass appraisal expert opinions" (Pl. Motion at p. 2) borders on incredulous hairsplitting taken to the extreme. Aside from the obvious implication in his answer that it was his "position" *as an expert*, Plaintiffs have offered no support for the novel notion that an expert can somehow render himself disqualified from testifying simply because he states his "position" at any time during a lengthy deposition.

Moreover, while Plaintiffs may argue that because Mr. Truax is not an academic AVM "methodology" expert he is not qualified to give any opinion concerning AVMs, at his deposition Mr. Truax repeatedly testified about his familiarity with the practical, real world use, results and failures of AVMs, as reflected by his actual comparisons of AVM values to values set by individual property appraisals and actual sales data. It is this experience that qualifies Mr. Truax to provide this Court with expert opinion testimony about the real world of determining property values *in the local New Orleans market*. [6] Mr. Truax's boots-on-the-ground knowledge and experience includes:

i) The Road Home Program:

- Mr. Truax acknowledged that while the Louisiana Recovery Authority initially used "a mass appraisal for the first wave of properties . . . it didn't work" and as a result, the LRA "resorted to individual property by property analysis to facilitate the implementation of their program" and "[t]hey've accomplished – I believe I last saw, you know, over – or planned to have 96,000 of these properties settled, if you will, by year end, or something like that." Ex. 3 attached hereto (September 26, 2007 Truax Dep. Tr. at p. 90:7-18).

- Further, Mr. Truax testified that "I think the Road Home Program experience would suggest that individual property appraisals, if needed, can be accomplished for a tremendous number of properties in a reasonable period of time." *Id.* at p. 93:4-8.

- Mr. Truax continued "[c]learly the application of an AVM with regard – the attempt to apply an AVM with regard to

---

[6] While Plaintiffs attack Mr. Truax's ability to offer any opinion about AVMs, Plaintiffs also see fit to cite his testimony about the costs and efficiencies of a mass appraisal approach. (*See* Pl. Motion at p. 13 n. 4.) On this point, Plaintiffs appear to want to promote notions of efficiency and speed as a reason to admit their expert, but exclude Mr. Truax. But, it is not for the Plaintiffs to compromise accuracy for speed. Also, even with an AVM, speed and efficiency are not guaranteed because even after an AVM, Plaintiffs admit they will still have a trial plan with individualized proofs resulting in an adjudication of damages on a plaintiff-by-plaintiff basis. (*See* Class Representatives' Proposed Levee and MRGO Trial Plan, Rec. Doc. 7578-2.)

the Road Home calculation, the Road Home Program calculations proved disastrous. . . . . That's another attempt to apply an AVM in a local market that did not work, and produced, obviously, high rates of error." *Id.* at p.p. 142:21-143:9.

ii) Local Tax Appraisals:

- Mr. Truax testified that "locally . . . is one of the few places that we've seen AVMs even attempted [to be used by assessors for the purpose of property tax determination]. If not the only [one]." *Id.* at p. 141:9-15.

- In that instance—in Jefferson Parish—his "experience with [the] assessed values as compared to transaction prices that myself and others have [concluded] relative to the assessed values, is that the assessed values, even coming from their application of an AVM process, are generally not compatible. It's rare that we find an assessed value that's say, within 10 percent of the appraised value." *Id.* at p.p. 139:24-140:20.

- Mr. Truax concluded: "based upon my experience in the New Orleans marketplace, and based upon my knowledge of the New Orleans marketplace, the only place I'm aware AVMs have been applied in any even rudimentary sense have been on the assessment side. So based upon this experience, I do find that locally, in this marketplace, yeah, the AVMs that have been attempted have produced high rates of error." *Id.* at p. 142:3-12.

- Mr. Truax further elaborated that "until 2008, of the seven Orleans Parish assessors, I'm not aware that any of them effectively used AVMs prior to the 2008 reassessment." Ex. 4 attached hereto (September 27, 2007 Truax Dep. Tr. at p.p. 269:10-270:3).

iii) Lending Uses:

- Mr. Truax testified that while mortgage lenders may use AVMs, they typically do so only "for certain kind[s] of loans, in certain circumstances . . . for a narrow market segment." Ex. 3 attached hereto (September 26, 2007 Truax Dep. Tr. at p. 246:7-20).

- Mr. Truax elaborated: "particularly my research, as to particularly in local markets, the use of AVMs . . . were

8

> generally used as a second tier test, if you will, of, say, the value of a particular loan portfolio." Ex. 4 attached hereto (September 27, 2007 Truax Dep. Tr. at 3 p. 40:5-15).

In light of the foregoing, Mr. Truax has clearly demonstrated a sufficient basis and knowledge to offer insight and opinion as to his real world experiences with AVMs and mass appraisals, and how they are not applicable to accurately determining property values in the New Orleans market due to its heterogeneity.[7] *See e.g., Smith v. Ford Motor Co.,* 215 F.3d 713, 720 (7th Cir. 2000) (reversing lower court's exclusion of expert witnesses and holding that "expert testimony need only be relevant to evaluating a factual matter in the case. That testimony need not relate directly to the ultimate issue that is to be resolved by the trier of fact.") (citation omitted); *Faughn v. Upright, Inc.*, 2007 WL 854259, *4 (W.D. Ky. March 15, 2007) (denying motions to exclude expert testimony and noting "courts have held that an expert witness need not have experience working in the specific industry he testifies about") (citations omitted)

Ignoring Mr. Truax's considerable experience with the real world failures of AVMs and mass appraisal in the local New Orleans market, and this Court's express order forbidding expert testimony about purely legal matters, Plaintiffs next attack Mr. Truax for not reading Plaintiffs'

---

[7] In this regard, while Mr. Truax has opined (among many other things) that because of the heterogeneity of the subject proposed classes and all of the distinct variables present in any one subject property, he does not believe that a mass appraisal technique "could be applied to produce fair/equitable damage estimates" (Truax MRGO Report at p. 13), he made it very clear at numerous points in his deposition that he could not offer exact criticism or a thoroughly detailed evaluation of some of Plaintiffs' positions because he could not understand what Dr. Kilpatrick was proposing. This was not because Mr. Truax lacked some intellectual understanding of what Dr. Kilpatrick plans to do, but was instead because Dr. Kilpatrick's report is so totally devoid of any specificity it was impossible for Mr. Truax to actually know what Dr. Kilpatrick proposed . (*See, e.g.,* Ex. 3 attached hereto (September 26, 2007 Truax Dep. Tr. at p. 243:2-10) (testifying "I think I've now told you several times, you know, I can't tell you definitively how Dr. Kilpatrick will use it based upon his report as I have read it. There is not enough detail there for me to know that.") and Ex. 4 attached hereto (September 27, 2007 Truax Dep. Tr. at p. 342:2-6 (testifying "I think I've told you several times I don't know what Dr. Kilpatrick proposes to do here because it's not in his report")). Defendants should not be punished, however, by the exclusion of Mr. Truax for Plaintiffs' expert's own failure to set forth any, let alone sufficient, detail how it is that he is going to go about demonstrating that about which he supposedly offers opinions. (*See, e.g.*, Def. Kilpatrick Motion at p.p. 10-15.)

class certification motion and proposed trial plans (Pl. Motion at p. 11) and for not tailoring his opinion to "Fed. R. Civ. P. 23's legal standard for the adequacy of class representation." *Id.* at p. 15. These are exactly the type of "expert" legal conclusions this Court has already expressly prohibited. [8] Try as they may to prop up this straw man, Plaintiffs cannot recast Mr. Truax as some sort of Rule 23 commonality/typicality expert, when he clearly is not, and then move to exclude him because he has not looked at certain of Plaintiffs' court filings. Indeed, Mr. Truax understands and uses the word "representative" in a real estate appraisal sense, not in a class certification or Rule 23 sense, for the very reason that he has been offered. Mr. Truax uses the word "representative" as a real estate valuation expert, and not surprisingly, his definition comports therewith. (*See* Ex. 3 attached hereto (September 26, 2007 Truax Dep. Tr. at p.p. 167:25-170:4)). Mr. Truax should be commended, not criticized, for avoiding the temptation to craft or tailor his testimony to legal definitions or conclusions more appropriately left to this Court.

Plaintiffs' next attack takes form in the argument that Mr. Truax should be excluded from testifying because he "admitted he'd simply appropriated someone else's work." (Pl. Motion at p. 11.) In yet another attempt to somehow discredit Mr. Truax, Plaintiffs move to exclude him

---

[8] This Court was explicit in its ruling that it was "not inclined to permit any purported 'complex litigation specialist' expert to testify at any class certification hearing." (Case Management and Scheduling Order No. 4, March 2, 2007, at p. 17 ) (emphasis in original). Unlike Plaintiffs' expert, Dr. John Kilpatrick, who apparently was not made aware of this ruling, Mr. Truax did not spend the majority of his report purporting to offer his "expert" opinion and instruction to the Court about the appropriate contours of a class action implicating real estate valuation issues. ( *See, e.g.,* Ex. 5 attached hereto (July 30, 2007 Affidavit of John A. Kilpatrick, Ph.D., MRICS, Re: Hurricane Katrina Litigation (submitted in both Levee and MR-GO cases) at ¶¶ 5, 7, 8, 9, 11, and 25) (offering "brief summary of general principles related to class certification"; "paraphras[ing] the salient issues regarding class treatment" including numerosity, commonality, typicality, and adequacy; opining that "answers to all of the above questions [in ¶ 7] strongly favor class certification"; purporting to identify "common factors"; opining that "[c]lass treatment has frequently been chosen by the courts in cases with far fewer properties affected than in the present instance"; and concluding not only that "the class action model is . . . the best way to manage the estimation of losses in this case," but also that, with respect to "large-scale statistical models . . . from a real estate perspective", that Kilpatrick supports "only those models [that] meet the criteria outlined in *Daubert*").

on grounds that "he didn't write all of his report, the 'Roddewig folks' helped." *Id*.  Plaintiffs continue this theme with the assertion that they "believe Truax did this because he has no experience whatsoever in AVM's and needed the 'cover' provided by someone else."  *Id.*  This is nothing more than a misstatement of the record and fails to acknowledge, as Mr. Truax testified, the accepted practice within the real estate appraisal industry.

First, the undisputed record testimony clearly reflects that Mr. Truax is the sole author of the MRGO Report.  (*See* Ex. 4 attached hereto (September 27, 2007 Truax Dep. Tr. at p.p. 356:24-357:5)).  Thus, although Plaintiffs fail to note this readily apparent distinction for the Court, this argument simply does not apply to the MRGO matter.  Second, as Mr. Truax testified repeatedly at his deposition, his Levee Report contained the "combined thoughts of the appraisal team, which again is a very routine method of producing reports in our business."  (Ex. 3 attached hereto (September 26, 2007 Truax Dep. Tr. at p. 133:23-25); *See also id.* at p. 146:5-10 (explaining that collaboration on report in general "very usual in our world"); *See also Id.* at p.148:5-19 (explaining that creation of Levee Report "was a collaborative effort" and "became a team effort and the results are presented in the report")).[9]  He did not, contrary to Plaintiffs' completely unsupportable assertion, "simply appropriate[] someone else's work."  When pressed on this very issue by Plaintiffs' counsel at his deposition, Mr. Truax explained exactly how the process worked:

---

[9] Mr. Truax made clear that the assistance of Richard Roddewig, MAI and "the Clarion team" was necessary because "[t]here were certainly time constraints in terms of manpower resources that were useful in terms of bringing that group into the picture" (Ex. 3 attached hereto (September 26, 2007 Truax Dep. Tr. at p.p.134:18-135:3)).  This was a clear reference to the fact that on August 10, 2007, Plaintiffs added over twenty (20) additional properties in Levee that required inspection and evaluation.  (*See* First Supplemental and Amending Master Consolidated Class Action Complaint, Rec. Doc. 6941).  This alone necessitated the assistance of Mr. Roddewig and his team.  Additionally, as mentioned previously the scope of work assigned to Mr. Truax in Levee was substantially greater than that in MRGO.  This, too, required the manpower assistance of Clarion.

11

> **Q.** You're telling me that when you write and sign expert reports in legal cases it's routine for you to have others coauthoring the report with you even though they're not named in a report or sign the report? That's a routine practice for you?
>
> **A.** Absolutely, in the sense that I may not have penned the words, but by the time I have edited it, reviewed it and accepted it as my own and signed it, it's my own. And that's – as I have said, in almost every appraisal office I have ever seen, um – there are sometimes – you might have one MAI who has two or three people working independently with him in terms of producing what ends up being substantially the final product that that appraiser and that appraiser alone signs.

(Ex. 3 attached hereto (September 26, 2007 Truax Dep. Tr. at p. 134:1-17)).

Moreover, Mr. Truax testified that he concluded that "damages cannot accurately or equitably be determined on a class-wide basis" independently of "Mr. Roddewig and Clarion." *Id.* at p.p. 136:22-137:6. In fact, Mr. Truax specifically testified "[h]ad I never met Mr. Roddewig, that would have been my opinion, that's correct. . . . . I would have come and did come to [that conclusion] independently, that that methodology [AVMs], that appraisal tool, isn't very relevant in the New Orleans market." *Id.* at p.p. 138:19-139:5.

Even if Mr. Truax had not testified as such, Plaintiffs' argument still rings hollow because it is well accepted that an expert is entitled to rely upon reasonable information available to him/her, and such reliance does not provide the foundation for a *Daubert* challenge. Without belaboring points already made, *supra*, concerning Defendants' proffer of Mr. Truax's testimony on AVM's and mass appraisal, Plaintiffs cite to the Court absolutely no law in support of their motion to exclude Mr. Truax because of this reliance. Perhaps, because recent case law from this Court clearly shows their motion is without merit.

In *Transcontinental Gas Pipeline Corp. v. Societe D'Exploitation Section Du Solitaire, S.A., et al.*, 2007 WL 2712936 (E.D. La. September 13, 2007) (Berrigan, J.), defendants moved

to exclude the report of plaintiff's two experts on grounds that plaintiff had "ghost written" the challenged report.  Specifically, defendants pointed out that changes and revisions had been made to the report by one of plaintiff's in-house engineers. *Transcontinental Gas Pipeline*, at *3.  Defendants cited *Long Term Capital Holdings v. United States*, 2003 WL 21269586 (D. Conn.), for the proposition that "if the opinions in the expert report are not actually the opinions of the experts, then the report fails to satisfy the requirements of Fed. R. Evid. 702 because the report must be based on the expert's own valid reasoning and methodology..." *Transcontinental Gas Pipeline, at * 3.*  And even while Judge Berrigan did find that defendants had shown that parts of the expert report had been edited by plaintiff's in-house engineer, the Court also pointed out that Federal Rule of Civil Procedure 26 and its Advisory Committee Notes specifically contemplate "assistance" given to an expert in preparing his or her report.  Specifically, the Court held that, to be admissible "…the report, which is intended to set forth the substance of the direct examination, should be written in a manner that reflects the testimony to be given by the witness and it must be signed by the witness." *Transcontinental Gas Pipeline*, at *3, citing, Fed. R. Civ. P. 26, Advisory Committee Notes.

> Indeed, (the *Trigon Ins. Co. v. United States*, 204 F.R.D. 277 (E.D. Va. 2001) court stated that supervision and assistance in preparation of an expert report is permitted. The *Trigon* court adopted two requirements from *Marek v. Moore*, 171 F.R.D. 298 (D. Kan. 1997): (1) the report should be written in a manner that reflects the testimony to be given by the expert witness; and (2) the report must be signed by the expert. In this case, the report prepared by (the experts) contains a finite element analysis of the bending strain in the displaced pipeline conducted by (the experts); and the report is signed by (them.)  Therefore, defendants have fallen short of showing that the substantive writing of the report was by someone other than (the experts.)  Defendant's argument regarding "ghost writing" goes more to the weight of the evidence, rather than its admissibility."

*Transcontinental Gas Pipeline*, at * 3-4.  Thus, the Court denied defendant's motion to exclude. *Transcontinental Gas Pipeline*, at * 4; S*ee also generally, Gussack Realty Company vs. General Bearing Corp*., 224 F. 3d 85, 95 (2nd Cir. 2000).  With respect to Mr. Truax, this Court should do the same with Plaintiffs' motion to exclude.

In addition to the above law clearly showing that Mr. Truax is entitled to rely upon "the Roddewig folks" for help in preparing his report, Fed. R. Evid. 703 also provides additional support for the admissibility of Mr. Truax's expert testimony.  Specifically, Rule 703 entitles Mr. Truax to base his opinions on facts or data reasonably relied upon by other experts in his field. Plaintiffs have not challenged the expertise of "the Roddewig folks" to provide Mr. Truax with facts or data of the type contemplated by Rule 703.  Indeed, Mr. Roddewig is listed as a non-testifying expert on the Levee Witness List and he even co-signed the Exhibit "D" to Mr. Truax's final report. As such, there can be no doubt that Plaintiffs were aware of "the Roddewig folks'" involvement in this case.  This simply is not an example of "ghost writing," and Plaintiffs' attack on Mr. Truax, vis-à-vis, "the Roddewig folks" provides this Court with absolutely no factual or legal basis to exclude what is otherwise properly supported and clearly admissible expert testimony.  Also, it is somewhat audacious for Plaintiffs to argue that Mr. Truax's involvement with Clarion somehow taints his expert opinion considering that the Plaintiffs' hydrological flooding model/report (i.e. the TU Delft Report) is authored by no less than four different individuals.  And yet, Plaintiffs' proffered witness on the TU Delft report ***is not*** one of those four individuals.  Instead, the proffered witness is Johannes Vrijling.  It is undisputed that Mr. Vrijling did not either draft a single word of the TU Delft model/report or provide any substantive efforts to its preparation; he only "reviewed it."  (*See* Ex. 6 attached hereto (August 16, 2007 Vrijling Dep. Tr. at p. 43:13-15)).

Finally, and as an indication to the extent which Plaintiffs try to counter tit-for-tat Defendants' motion to exclude Dr. Kilpatrick, Plaintiffs simply cannot in good faith argue that the Court must be mindful of the "responsibility of acting as gatekeepers to exclude unreliable expert testimony," (Pl. Motion at p. 4 (citing Fed. R. Evid. 702, 2000 Amendments, Advisory Committee Notes)), while at the very same time urge some sort of watered-down version of *Daubert* in opposition to Defendants' motion to exclude Plaintiffs' expert, Dr. Kilpatrick. (*See* Pl. Kilpatrick Opp. at p. 9) (arguing that their expert Kilpatrick should be "allowed to testify for class certification purposes, ***based on a limited Daubert review*** appropriate to a proceeding addressed to case management, not merits") (emphasis added). Presumably, Plaintiffs concede that Mr. Truax meets their proposed *Daubert*-lite standard, so they seek to hold him to a standard to which they are unwilling to hold their own witness. Plaintiffs simply cannot have it both ways. But in any event, not only does Mr. Truax easily pass Plaintiffs' *Daubert*-lite standard, his testimony also meets the proper standard governing the admissibility of expert testimony in the class certification context, as set forth by Defendants in support of their motion to exclude John Kilpatrick. (*See* Def. Kilpatrick Motion at p.p. 3-7.) Plaintiffs' motion should be denied.

## CONCLUSION

Plaintiffs' assertions to the contrary, Mr. Truax is not offered by Defendants to either academically explain AVMs or mass appraisals as valid methodologies, or explain the intricate mathematical formulas that support those methodologies. That extremely relevant academic exercise, for purposes of assessing the lack of viable expert opinions by Dr. Kilpatrick, is left to Drs. Vandell in MRGO and Richardson in Levee. Instead, Mr. Truax, with his thirty-plus years of boots-on-the-ground experience in the New Orleans market can explain to the Court how the values historically established by AVMs in the local New Orleans market do not generally reflect

15

the values that individual property appraisals and actual sales establish. And, he can explain the tremendous diversity within the class areas based on his over thirty years of real estate appraisal and valuation work throughout the relevant local market areas. For these reasons, Levee and MRGO Defendants respectfully submit that this Court should deny Plaintiffs' Motion In Limine to Exclude the Class Certification-Related Testimony of Michael W. Truax.

Dated: October 10, 2007.

          Respectfully submitted,

          */s/William D. Treeby*
          William D. Treeby, 12901
          Carmelite M. Bertaut, 3054
          Heather S. Lonian, 29956
              Of
          Stone Pigman Walther Wittmann L.L.C.
          546 Carondelet Street
          New Orleans, Louisiana  70130
          Telephone:  (504) 581-3200
          Facsimile:   (504) 581-3361

          Attorneys for Washington Group
          International, Inc.

          Of counsel

          Adrian Wager-Zito
          Julie McEvoy
          Jones Day
          51 Louisiana Avenue, N.W.
          Washington, D.C. 20001-2113
          Telephone:  (202) 879-4645
          Facsimile:  (202) 626-1700

          Jerome R. Doak
          Jones Day
          2727 N. Harwood Street
          Dallas, Texas  75201
          Telephone:  (214) 220-3939
          Facsimile:  (214) 969-5100

| | |
|---|---|
| */s/Thomas P. Anzelmo* | */s/Robin D. Smith* |
| Thomas P. Anzelmo, 2533 | Robin D. Smith |
| Mark E. Hanna, 19336 | Trial Attorney |
| Kyle P. Kirsch, 26363 | Torts Branch, Civil Division |
| Andre J. Lagarde, 28649 | U.S. Department of Justice |
|     Of | P.O. Box 888 |
| McCranie, Sistrunk, Anzelmo, Hardy, | Benjamin Franklin Station |
|   Maxwell & McDaniel | Washington, D.C. 20044 |
| 3445 N. Causeway Boulevard, Suite 800 | Telephone: (202) 616-4289 |
| Metairie, Louisiana 70002 | Facsimile: (202) 616-5200 |
| Telephone: (504) 831-0946 | |
| Facsimile: (504) 831-2492 | Attorneys for United States of America |

And

| | |
|---|---|
| | */s/ Gary M. Zwain* |
| James L. Pate, 10333 | Lawrence J. Duplass, 5199 |
| Ben L. Mayeux, 19042 | Gary M. Zwain, 13809 |
|     Of | Andrew D. Weinstock, 18495 |
| Laborde & Neuner | Joseph E. Bearden, III, 26188 |
| One Petroleum Center, Suite 200 |     Of |
| 1001 West Pinhook Road, Suite 200 | Duplass, Zwain, Bourgeois, Morton, Pfister & |
| Post Office Drawer 52828 | Weinstock |
| Lafayette, Louisiana 70505-2828 | 3838 N. Causeway Blvd., Suite 2900 |
| Telephone: (337) 237-7000 | Metairie, Louisiana 70002 |
| | Telephone: (504) 832-3700 |
| Attorneys for the Orleans Levee District | Facsimile: (504) 837-3119 |

and

Mr. Charles M. Lanier, Jr., 18299
Mr. J. Warren Gardner, Jr., 5928
Ms. Elizabeth Cordes, 1786
   Of
Christovich & Kearney
Pan American Life Center
601 Poydras Street, Suite 2300
New Orleans, LA 70130-6078
Telephone: (504) 593-4272
Facsimile: (504) 561-5743

Attorneys for the Sewerage and Water Board of New Orleans

Attorneys for Board of Commissioners for the Lake Borgne Basin Levee District (MRGO) and the Board of Commissioners for the East Jefferson Levee District (Levee)

*/s/ Kirk N. Aurandt*_____
J. Frederick Kessenich, 7354
Jonathan H. Sandoz, 23928
Michael W. McMahon, 23987
Jon A. Van Steenis, 27122
Kirk N. Aurandt, 25336
    Of
Daigle, Fisse & Kessenich, PLC
P.O. Box 3530
Covington, LA 70434-5350
Telephone:  (985) 871-0800
Facsimile:  (985) 871-0899

Attorneys for the Board of Commissioners of the Port of New Orleans

## CERTIFICATE

I hereby certify that a copy of the above and foregoing Memorandum of Law in Opposition to Plaintiffs' Motion In Limine to Exclude the Class Certification-Related Testimony of Michael W. Truax has been served upon Joseph Bruno, Plaintiffs' Liaison Counsel, this 10th day of October, 2007.

                                                */s/ JOSEPH E. BEARDEN, III*_____
                                                 Joseph E. Bearden, III