UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES                                  CIVIL ACTION
CONSOLIDATED LITIGATION
                                                              NO. 05-4182

PERTAINS TO: *DePass*    C.A. No. 06-5127                     SECTION "K"(2)

ORDER

Before the Court is a Motion to Dismiss Pursuant to FRCP 12(b)(1) and 12(b)(6) for Lack of Jurisdiction and Failure to State a Claim (Doc. 1523) filed by the Parish of Jefferson ("Jefferson Parish"). Jefferson Parish seeks dismissal of this suit against it based on lack of jurisdiction over the subject matter of the claims asserted against it pursuant to Fed. R. Civ. P. 12(b)(1) and, in the alternative, for failure to state a claim upon which relief can be granted against it pursuant to Fed. R. Civ. P. 12(b)(6). Having reviewed the pleadings, memoranda and the relevant law, and based on the same reasoning stated in the Court's simultaneous ruling on a similar motion brought by Jefferson Parish in *Simms*, C.A. No. 06-5116, the Court finds that it will exercise supplemental jurisdiction over this case, and plaintiffs have failed to state a claim against Jefferson Parish.

**Background**

This suit is one among ten, each defined by different geographical locations, in which, rather than joining in the Master Class Actions that are pending in *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182, plaintiffs seek a declaratory judgment and damages with a request for jury trial for damages incurred as a result of the levee breaches in New Orleans in the aftermath of Hurricane Katrina. In this complaint, plaintiffs have sued the Board of

Commissioners of the Orleans Levee District, the Board of Commissioners of the Port of New Orleans, the Sewerage and Water Board of New Orleans, the East Jefferson Levee District, the Parish of Jefferson, the Louisiana Department of Transportation and Development and by amendment, the United States of America. In essence, they seek compensation for damages caused by the flooding that occurred as has been alleged in the Master Amended Complaints filed in Levee and MRGO; however, their theory of liability differs.

The relevant allegations against Jefferson Parish in the *DePass* complaints are as follows:

**Complaint**

¶25  Jefferson Parish, the East Jefferson Levee District and /or the Sewerage and Water Board are charged by law with the responsibility of maintaining and operating the Hoey Canal.

¶ 26  Jefferson Parish, the East Jefferson Levee District and /or the Sewerage and Water Board are charged by law with the responsibility of maintaining and operating the 17th Street Canal;

¶ 27  Damages resulted from the closure of the 17th Street Canal, and the continued operation of the pumping stations feeding the 17th Street Canal and the failure to close the Hoey Canal flow.[1]

¶31  Jefferson Parish, along with the East Jefferson Levee District and /or the Sewerage and Water Board are charged by law with the responsibility of maintaining and operating the drainage ditches which flow into the 17th St. Canal from the West;

¶75  Jefferson Parish and the East Jefferson Levee District are liable for the failure to maintain the drainage canals as required by state law and/or by its Act of Assurance with the United States Corps of Engineers.

¶76  Jefferson Parish and the East Jefferson Levee District and the Sewerage and Water Board were negligent in failing to close the drainage lines to prevent the back flow from the 17th Street Canal into Metairie which flooded Plaintiffs' properties.

---

[1]This is the most direct allegation of causation linked directly to Jefferson Parish in the complaint and all amendments.

2

¶77   Jefferson Parish and the East Jefferson Levee District and the Sewerage and Water Board were negligent in failing to close the Hoey canal to prevent the flow of water from the 17th Street Canal into Metairie, which flooded Plaintiffs' properties.

¶80   The Corps of Engineers was negligent in ordering the closure of the 17th Street Canal without coordinating the closure of the Hoey canal gate, thus flooding plaintiffs' property.

First Amendment to Complaint

¶75.1   Under Article 1.01 of the Jefferson Parish Home Rule Charter and Plan of Government, Jefferson Parish is charged to 'develop, maintain and operate flood control and surface change programs, works and systems; and cooperate with federal, regional and state agencies in their development, administration and operation.'

¶75.3   "In furtherance of the power and authority reposed in it under Article 1.01 and la. R.S. 38:1580, the Jefferson Parish Council has established drainage districts "to drain lands" in the Parish "by building drainage facilities, including canals, ditches, pumps, levees and related works."

¶75.5   Plaintiffs are informed and believe that the Parish of Jefferson owns and possesses a fractional interest in the 17th Street Canal and Hoey Canal, including the installations in place and particularly the Hoey Canal gate at the 17th street Canal.

¶75.6   Parish of Jefferson knew or should have known that the 17th Street Canal was in a state of disrepair and no longer suitable to contain the rising waters projected to occur.

Plaintiffs then allege that the 17th Street Canal is a cooperative arrangement and as such is a joint or common enterprise and thus Jefferson Parish is jointly liable for the failure of the east bank of the 17th Street Canal.

**Second Amendment to Complaint**
This amendment centers upon bringing suit against the United States.

**Third Amendment to Complaint**

3

¶10a.  Flooding was proximately caused by the failure of the flood wall on the East Bank of 17th Street Canal north of pumping Station Six and the cessation of pumping at Station Six caused thereby.

¶10b.  As a result of the failure of the East Bank of the 17th Street Canal, Pumping Station Six ceased discharging water from the Metairie Relief Canal into the 17th Street Canal and Lake Pontchartrain.

¶¶ 10c.-10k  Concerns alleged defalcations by a contractor with respect to construction on the 17th Street Canal.

¶10l.  The first flood waters to enter Old Metairie did so from the Metairie Relief Canal south of Pumping Station Six and consisted of the storm waters collecting in New Orleans and Jefferson Parish brought there by way of the Palmetto and I-10 Underpass Canals and likely by the Jefferson Canal.

¶10m.  the Sewerage & Water Board continued to pump rainwater into the Orleans Canal, but due to the absence of fronting protection the water flooded into the northern basin of the new Orleans East Polder.

¶10n.  Jefferson Parish ceded its authority over the Metairie Relief Canal to the SWB which used the canal with the parish's support and authority.

¶¶ 10o-10s  Concern how each break in the levee system taxed the drainage system serving the City, particularly the Metairie Relief Canal.

¶26a.  Pumping Stations Six and Seven were owned by the SWB and Station six was operated by SWB as a joint venture with the Parish of Jefferson.

¶26b.  The flood waters which cased the damage to Plaintiffs were not contained in or carried through a federal flood control project nor did it consist of waters such projects could not control.

¶26d.  **The floodwater spilling out of the 17th Street Canal through the break in the East Bank did not directly flood the plaintiffs (sic) properties; their passage was arrested by the feeder canals channeling waste water for discharge in outfall canals draining the area which intervened and by Metairie Ridge a natural land barrier running from the east bank of the Metairie Relief Canal north to U.S. Highway 90.**

¶26h.  Jefferson Parish knew or should have known the work performed by Pittman and the difficulty encountered.

4

¶75.12 was amended to read in its entirety as follows:

> The Parish of Jefferson was negligent in failing to close the Hoey Canal gate and arrest the flow of water into Jefferson via the open gate due to the prior failure to provide a roadway to permit access to the gate involved to introduce the power to required to effect closure.

Thus, from these allegations, plaintiffs contend that Jefferson Parish is liable to them because of general failure to maintain drainage canals, drainage ditches, the 17th Street Canal; for its failure to close the Hoey Gate and to build an appropriate road so that it would have access to the Hoey gate; and the general failure of the pumps.

**Relevant Standards**

Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158 (5th Cir. 2001). As the Fifth Circuit has stated:

> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curium). this requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. I. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursing a claim in a court that does have jurisdiction. *Id.*

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. Rule 12(b)(6) of the Federal Rule of Civil Procedure provides that in response "to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim" the pleader may raise by motion the defense of

"failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)(quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "[T]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).[2] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (quotation marks, citations, and footnote omitted).

**Jefferson Parish's Jurisdictional Challenge**

While this motion was filed prior to the United States having been made a party to this suit, this Court must take into consideration that amendment. As such, clearly, this Court now has original jurisdiction under 28 U.S.C. § 1331.[3] As such and considering all of the subsequent

---

[2] This Court has previously stated that a district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir.1995). The Supreme Court has recently abrogated the often cited "no set of facts" language in *Conley* commenting that the case has been frequently mischaracterized as setting forth a minimum pleading standard when it was simply "describ[ing] the breadth of opportunity to prove what an adequate complaint claims." *Twombly*, 127 S.Ct. at 1968. In other words, the *Twombly* court reads *Conley* as standing for the proposition that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (citing *Sanjuan v. American Bd. of Psychiatry and Neurology*, 40 F.3d 247, 251 (7th Cir. 1994)(once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"). Thus, rejecting the *Conley* "no set of facts" test, the *Twombly* court employs a plausibility standard for scrutinizing the sufficiency of pleadings in the context of Rule 12(b)(6) motion.

[3] The United States has filed a Motion to Dismiss in this matter based primarily on § 702c immunity under the 1928 Flood Control Act. That motion is under submission at this time.

amendments to this complaint, the allegations as to Jefferson Parish arise out of a common nucleus of facts–at a minimum, all of the issues presented pertain to the same flooding occurrence. Thus, pursuant to 28 U.S.C. § 1367, this Court will exercise its supplemental jurisdiction over Jefferson Parish, and the motion will be denied in this respect.

**Failure to State a Claim**

Plaintiffs characterize their own claims in the opposition to this motion as arising from Jefferson Parish's (1) continuing to operate the pumping station and drainage canals feeding the 17th Street Canal, (2) failing to close the Hoey Canal; (3) failing generally to maintain the levees including the Monticello Outfall Canal; (4) failing to provide power to the Hoey Gate (also referred to as Geigenheimer Gate); (5) sharing *garde* with the SWB over the 17th Street Canal; (6) having *garde* over any levee that failed over which it had control; (7) failing to close the drainage lines to prevent the back flow from the 17th Street Canal into Metairie which flooded Plaintiffs' properties; (8) failing to maintain the canal levees so that they were no longer suitable to contain rising waters which were projected to occur. These alleged defalcations can thus be segregated into two categories–actions taken at the time of Hurricane Katrina and general failures arising out of *garde* of certain levees and drainage features.

### Actions at the Time of Katrina–Allegations in the Original Complaint

Jefferson Parish maintains that it enjoys absolute immunity as the claims in the Original Complaint against it are based solely on the allegation that the 17th Street Canal was closed and yet Jefferson Parish continued operation of the pumping stations and drainage canals feeding the

17th Street Canal, and failed to close the Hoey Canal (Plaintiffs' Complaint ¶¶ 25, 26, and 75).[4]

For this proposition, Jefferson Parish cites La. Rev. Stat. 29:735 which is part of The Louisiana Homeland Security and Emergency Assistance and Disaster Act.

In 1993, by Acts 1993 No. 800 § 1, the Louisiana Legislature enacted the "Louisiana Homeland Security and Emergency Assistance and Disaster Act" (hereinafter, "the Act").[5] The Legislature found the Act necessary:

> Because of the existing possibility of the occurrence of emergencies and **disasters of unprecedented size and destructiveness** resulting from terrorist events, enemy attack, sabotage, or other hostile action, or from fire, **flood, earthquake, or other natural or man-made causes** * * * (and) to reduce vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural and man-made catastrophes [6]

In addition to empowering the Governor, Parish Presidents and others within the Executive branch of government to enact procedures to prepare for such natural and man-made disasters, the Legislature also granted immunity to the State's political subdivisions and their employees, providing as follows:

> A. Neither the state nor any political subdivision thereof, nor other agencies, nor, except in the case of willful misconduct, the agents' employees, or representatives of any of them, engaged in any homeland security and emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.

---

[4]The initial motion was filed prior to the amendment wherein plaintiffs claim that because Jefferson Parish is a co-owner of the 17th Street Canal, it is liable for the harmed caused by it.

[5]La. R.S. 29:721 to 29:736.

[6]La. R.S. 29:722(A) and (A)(4)(Emphasis added).

8

La. Rev. Stat. 29:735(A).

Thus, as no individual has been named, clearly, Jefferson Parish is immune from any alleged damage caused by actions taken at the time of Hurricane Katrina. In particular, the allegation in the Original Complaint that "[d]amages resulted from the closure of the 17th Street Canal, and the continued operation of the pumping stations feeding the 17th Street Canal and the failure to close the Hoey Canal flow." ¶ 27 fails. Likewise, Jefferson Parish would be immune for the alleged failure to provide power to the Hoey/ Geigenheimer gate and the alleged failure to close the drainage lines to prevent the backflow from the 17th Street Canal.

**General Failure to Maintain the Levees, Drainage Canals, Drainage Ditches**

As to the remaining allegations of wrong-doing, the basis for these all arise out of the garde Jefferson Parish allegedly has over the levees at issue. However, the Louisiana legislature enacted subsection H of La. Rev. Stat. 9:2800 which concerns limitation of liability for public bodies. It states:

> H.    (1) Notwithstanding any provision of law to the contrary, except for gross negligence or willful and wanton misconduct, no person shall have a cause of action based solely upon liability imposed under Civil Code Articles 2317 and 2317.1 against a public entity for any damages arising from hurricanes Katrina or Rita, including aftereffects of either hurricane and post-hurricane restoration, repair, cleaning, and construction.
>
>     (2) The provision of this subsection shall expire on August 30, 2008.
>
>     (3)The provisions of this Subsection shall supersede and control to the extent of conflict with any other provisions of law.
>
>     (4) The provisions of this Subsection shall be given retroactive application to August 26, 2005.

9

La. Rev. Stat. 9:2800(H).[7] By operation of this statute, then all claims for defalcations arising from the garde of any levee, drainage ditch or the like are barred if brought against a public body like the Parish of Jefferson. So for example, the allegations contained in ¶ 75.5 and 75.6 of the First Amended Complaint where plaintiffs allege that Jefferson Parish exercised control over the 17th Street Canal, that it has a "fractional interest" therein and thus, knew or should have known that it was in a state of disrepair and thus no longer suitable to contain the rising waters projected to occur." Such claims are defeated by this statute as claims for damages arising from *garde* are eliminated.

Furthermore, it appears to the Court that maintenance of the levees involved would be the duty of the either the Orleans Levee District and/or the East Jefferson Parish Levee District, not Jefferson Parish. It is primarily the state's duty to protect citizens from damage by flood which is inherent within its police power. " Such power, however, belongs to the state; the police power may be exercised by agencies of the state only under a delegation of authority. The state retains the right to recall, abrogate of modify the delegation. *Board of Com'rs of Orleans Levee Dist. v. Dept. of Nat'l Resources of the State of Louisiana,* 493 So.2d 281, 288-89 (La. 1986). Thus, a levee board is a creature or agency of the state brought into existence for the purpose of discharging the state's duties of flood protection. *Id.*

This delegation is manifested in La. Rev. Stat. 38:281(6) which provides that a levee district "means a political subdivision of this state organized for the purpose and charged with

---

[7]The only reported case that the Court could find on this section is *Burmaster v. Plaquemines Parish Government*, 2007 WL 2460220 (La. August 31, 2007) wherein the Supreme Court refused an appeal by the State of Louisiana where apparently a trial court discussed in its reasons the unconstitutionality of this act, but the judgment did not contain a declaration that the act was unconstitutional. Thus, the Louisiana Supreme Court found that there was no basis for the exercise of the court's appellate jurisdiction.

the duty of constructing and maintaining levees, drainage, and all other things incidental thereto within its territorial limits." In addition, La. Rev. Stat. 38:325(A)(1) and (2) mandates that levee boards engage in any activities related to flood protection and maintenance of levees. Thus, with respect to the claims based on the failure to maintain the levees involved, Jefferson Parish is not charged with such a duty by the State of Louisiana, and cannot be held liable for these alleged defalcations concerning maintenance of levees. Accordingly,

**IT IS ORDERED** that the Motion to Dismiss the Parish of Jefferson (Doc. 1523) is **DENIED** with respect to Fed. R. Civ. P. 12(b)(1) and **GRANTED** with respect to Fed. R. Civ. P. 12(b)(6).

New Orleans, Louisiana, this 12th day of October, 2007.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE