UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOHN FONTENOT AND | * | CIVIL ACTION NO.: 07-4115 |
| KIM FONTENOT | * | |
| | * | SECTION: "K" |
| VERSUS | * | |
| | * | JUDGE: STANWOOD R. DUVAL, JR. |
| AUTO CLUB FAMILY | * | |
| INSURANCE COMPANY | * | MAGISTRATE: JOSEPH C. WILKINSON, JR. |
| | * | |

* * * * * * * * * * * * * * * * * * *

## REPLY BRIEF IN SUPPORT OF MOTION TO REMAND

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT,** through undersigned counsel, come plaintiffs, JOHN FONTENOT and KIM FONTENOT, who file this brief in response to Auto Club Family Insurance Company's ("Auto Club") Memorandum in Opposition to Plaintiffs' Motion to Remand for the following reasons:

### ARGUMENT

The plaintiffs maintain their original arguments as set forth in their Memorandum in Support of Motion to Remand. However, they feel compelled to add the following additional statements in order to address a number of inaccurate and flawed arguments made by the defendant.

> 1.  **Any differences between the signature block on the original Petition and the one found on subsequent pleadings is irrelevant to this motion, as the differences do not present issues that factor into the analysis that must be undertaken by the Court.**

Auto Club indicates in its memorandum that it cannot tell "whether the Fontenots are representing themselves, *pro se,* or whether Fontenot is acting as his wife's attorney." According to Auto Club, the confusion comes from a difference in the signature block found on the original Petition and the one on all subsequent pleadings. The original Petition listed John and Kim Fontenot as plaintiffs and was signed by both of them. Shortly after the original Petition was filed, the clerk of court contacted Mr. Fontenot and informed him that only one person should sign future pleadings. Because of this, all subsequent pleadings list both John and Kim Fontenot as plaintiffs, but are signed by John Fontenot only. Since John and Kim Fontenot are both listed as plaintiffs in the original Petition and in all subsequent pleadings and since their status as plaintiffs does not factor into or alter the analysis of the issues before the Court in this motion to remand, the modification to the signature block is irrelevant.

> 2.  **Contrary to Auto Club's belief, a demand letter or discovery responses provided after the original petition is served is sufficient to trigger the thirty-day removal period.**

In the "Conclusion" section of its memorandum, Auto Club sets forth its position on the thirty-day removal period. In doing so, it makes the following statement:

> When removal under 28 U.S.C. 1446 (b) must be accomplished within one year of the date of the original filing, a defendant must obtain an affirmative statement from the plaintiffs. The U.S. Fifth Circuit has held that the mere transfer of information by discovery or otherwise is insufficient to apprise a defendant of the true value of the plaintiffs' damages. The Fifth Circuit has also held that a defendant in that position does not have a duty of due diligence to determine the ultimate value of the case.

In short, Auto Club believes that, in order to trigger the thirty-day removal period, the plaintiff has a duty to state that the claim exceeds the $75,000 limitation in one of the following: (1) the original petition, (2) an amended petition, or (3) a request for admission.

In making this assertion, Auto Club relies on *Chapman* and its progenies. (The cases cited by Auto Club on this point include *Chapman*[1], *Schielder*[2], *Freeman*[3], and *Pavone*[4].) According to Auto Club, the court in *Chapman* held "that the 30-day time period in which a defendant must remove a case begins to run only from the defendant's receipt of an initial pleading and only when the pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount in federal court." Auto Club's statement is clearly contrary to the plain wording of §1446(b), and it is absolutely not the finding of the court in *Chapman*.

In *Chapman,* the plaintiff had provided the defendant with a demand letter and medical bills in excess of the jurisdictional minimum prior to filing the suit. Despite this, the court determined that the thirty-day time period in which a defendant must remove a case starts to run from defendant's receipt of initial pleadings only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount. The court also noted that, in order to trigger the thirty-day time period for removal, any "other paper" from which a defendant first ascertains that the case is removable must be received by the defendant after he has received initial pleadings. In other words, the thirty-day removal period would have been triggered if the plaintiff had provided the demand letter and medical bills after the petition was served

---

[1] *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (CA 5 1992)
[2] *Schielder v. K-Mart Corp.*, 2000 WL 1511182 (E.D. LA)
[3] *Freeman v. Witco Corp.*, 984 F.Supp 443 (E.D. LA 1997)
[4] *Pavone v. American Medical Systems, Inc.*, 1998 WL 89371 (E.D. LA)

*Schielder* reaches the same conclusion. In that case, the defendant propounded Request for Admissions more than thirty days after service of the petition, which did not specify the amount of damages. When the plaintiff denied them as premature, the defendant removed the case. Plaintiff filed a motion to remand and claimed the removal was untimely due to a pre-suit settlement offer in the amount of $175,000 plus medical expenses. The court held that the thirty-day window only opens upon the receipt of a pleading or other paper after the defendant has been properly served with a complaint.

In addition to confirming the "bright line" rule set forth in *Chapman,* the court in *Freeman* discussed what constituted "other paper" for purposes of triggering removal pursuant to §1446(b). In doing so, it indicated that the Fifth Circuit has recognized the following as other paper: (1) a demand letter and medical bills, (2) plaintiff's response to request for admission, (3) plaintiff's answers to defendant's second set of request for admissions, (4) plaintiff's interrogatory answers, and (5) transcript of deposition testimony. In *Pavone*, the court held that the removal was timely when filed within 30 days after the plaintiff responded to defendant's interrogatories and informed defendant for the first time that his damages exceeded $75,000.

An actual reading of the cases relied upon by Auto Club demonstrates that, contrary to Auto Club's position, the plaintiffs do not have to make an affirmative statement that the claim exceeds the $75,000 jurisdictional limitation in the original petition, an amended petition, or a request for admission in order to trigger the thirty-day removal period. In fact, the thirty-day period will begin to run when (1) the initial pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the jurisdictional amount or (2) the defendant receives,

subsequent to being served with the suit, anything that constitutes "other paper" under §1446(b) and puts the defendant on notice that the plaintiffs' demand exceeds the jurisdictional amount.[5]

Since a demand letter and discovery responses each constitute other paper and Auto Club has acknowledged that both the demand letter and discovery responses provided to them by the plaintiffs indicate the claims exceed the jurisdictional amount, Auto Club was put on notice, and the removal period was triggered in this particular case as early as January 19, 2007 (when the demand letter and supporting documents were sent), but no later than February 16, 2007 (when the discovery responses were provided). Accordingly, Auto Club's Petition for Removal, which was not filed until August 14, 2007 (approximately 6 months after removal was triggered), was untimely, and the case should be remanded.

### 3.   Despite assertions to the contrary, the plaintiffs have not prevented removal of this case by "design".

Prior to filing this suit, the plaintiffs filed a form with the state in order to have Auto Club participate in the state sponsored mediation. In an effort to expedite the claim and to maximize the likelihood of resolving the claim at the state-sponsored mediation, the plaintiffs focused on one area of wind related structural damage. The mediation was held on June 30, 2006, and Mr. Foote was acting as Auto Club's attorney at the state sponsored mediation. Immediately after the estimate for the one area of wind damage was provided and before any additional discussions were had, Auto Club informed the plaintiffs that they did not have any interest in proceeding with the state sponsored mediation.

---

[5] The "other paper" does not have to set forth a specific dollar amount. It only needs to allow the defendant to reasonably ascertain that the amount in controversy exceeds $75,000. A demand for policy limits without reference to the actual figures can be sufficient. See e.g., *Roberts v. Allstate*, 2006 WL 2726766 (E.D. LA.); *Brown v. Republic Fire & Casualty Ins. Co.*, 2007 WL 1218026 (E.D. LA); *Bostian v. State Farm Fire & Casualty Co.*, 2007 WL 750620 (E.D. LA.). In any event, Auto Club has acknowledged that the demand letter and supporting documents indicate the claim exceeds the jurisdictional amount.

Shortly after the mediation, the plaintiffs filed their petition with the Civil District Court for the Parish of Orleans. In an effort to obtain a swift resolution, the petition focused on the one area of wind damage. Mr. Foote filed a Petition for Removal ("federal question removal"). While the federal question removal was under consideration, Judge Duval issued an opinion that indicated Auto Club would be responsible for both wind and flood damage. Given the procedural status of the case at that time, the plaintiffs made an oral settlement demand for policy limits to Mr. Foote. Mr. Foote acknowledged the settlement demand for payment of the full policy limit in his letter of December 29, 2006. (See Exhibit "1").

In response to the December 29, 2006 letter and in recognition of the January 18, 2007 order granting the motion to remand on the federal question removal, the January 19, 2007 letter with the written settlement demand for policies limits, loss of use, and all applicable penalties and a brief explanation for the change in the demand amount was generated by the plaintiffs (Exhibit "A" to Memorandum in Support of Motion to Remand), and it was sent, along with supporting documents, to Mr. Foote. After receiving the letter and supporting documents, Mr. Foote propounded state court discovery. (Exhibit "C" to Memorandum in Support of Motion to Remand). The state court discovery was answered on February 16, 2007. (Exhibit "D" to Memorandum in Support of Motion to Remand).

Subsequent to these events and without any explanation, Mr. Foote elected to have very little to no involvement in this case. On May 22, 2007 (four months after the settlement letter and three months after receiving discovery responses), Mr. Foote indicated that he was no longer handling the claim and that he would provide contact information for the new attorney. (See Exhibit "2"). Despite numerous attempts by the plaintiffs to follow up, Mr. Foote still had not,

as of June 29, 2007, provided the plaintiffs with the name and contact information of the new attorney assigned to the case. (See Exhibit "3").

Shortly thereafter, Mr. Krobert indicated that he was acting as Auto Club's attorney. According to Auto Club's memorandum, it appears that Mr. Krobert did not review this case with any eye for detail until the end of June (2007), i.e., five months after the written settlement demand and four months after the discovery responses had been provided. Apparently, Mr. Krobert determined that they had allowed the case to slip through the cracks and decided to propound Request for Admissions, not to test the sincerity of the plaintiffs' pleadings, but as a last ditch effort to generate a new basis for removal.

As can be seen from the foregoing, there was no grand "design" on the part of the plaintiffs to prevent removal of this case. Quite the opposite, the plaintiffs initially attempted to resolve this matter in an expedited manner that should have been agreeable to all parties. It was not until after Auto Club made it patently clear that they had no real interest in resolving this matter in an equitable fashion and the courts had provided an indication that additional damages might be available that the plaintiffs elected to preserve the entirety of their claim. Auto Club was made fully of aware of this change and the reasons for this change in writing. When this occurred, the thirty-day removal period was triggered. Regardless of whether this took place when the written settlement demand was provided or the discovery responses were provided, Auto Club's Petition for Removal was grossly untimely. Instead of suggesting to this court that the plaintiffs' pleadings were not made in good faith, crediting the plaintiffs with statements they did not make, and misquoting case law in an effort to overcome this, Auto Club should review the procedural history more closely and accept the fact that it was their own inaction that made the Petition for Removal untimely.

As a final point, it should be noted that Auto Club's arguments/concerns with regard to the plaintiffs' response to the request for admission are without merit and should not factor into the Court's analysis. By the time the request for admission had been propounded and answered, the time period for removing the case had already passed. In addition, the request for admission was limited to the claims made in the petition. It did not address any of the developments in the case that had been noted in the letters between the plaintiffs and Mr. Foote.

**4.   Auto Club is not entitled to an equity exception to the one-year limitation on removal.**

Relying on *Johnson*[6] and *Tedford*[7], Auto Club suggests that it should be allowed an equity exception to the one-year limitation on removal set forth in §1446(b). In Johnson, the court recognized that an equity exception existed in cases where the allegations contained in the amended complaint bear absolutely no resemblance whatsoever to the allegations of the original complaint, the parties to the original action are now aligned in a completely different manner, etc. In *Tedford,* the court noted that an equity exception existed when the defendant could not exercise his right to removal due to the acts of others.

We are not presented we either of these situations. Any amendment would be based on the same facts and circumstances, would involve the same parties, would be based on the same insurance policy, would be for the same basic causes of actions, etc. In addition, no one has taken steps that would have prevented Auto Club from being able to remove this case. In fact, Auto Club was provided with a demand letter and all the documents they needed in order to file for removal within the one year time period. Quite simply, it appears that, as discussed above, Auto Club failed to remove this case in a timely fashion due to its own inactions. Had Mr. Foote

---

[6] *Johnson v. Heublein, Inc.,* 227 F.3d 236 (CA 5 2000)
[7] *Tedford v. Warner-Lambert Co.,* 327 F.3d 423 (CA 5 2003)

followed up on the settlement demand in a timely manner or had Mr. Krobert taken over the file in a timely manner, Auto Club would have been able to file for removal in a timely manner.

## CONCLUSION

For the above and foregoing reasons, plaintiffs respectfully pray that their Motion to Remand be granted and that the case be remanded to the Civil District Court for the Parish of Orleans, State of Louisiana.

Respectfully submitted,

s/John L. Fontenot
JOHN L. FONTENOT, T.A. (#26640)
One Shell Square – Suite 4500
701 Poydras Street
New Orleans, Louisiana 70139
Telephone:   (504) 581-3234
Facsimile:    (504) 566-0210
Email: john.fontenot@arlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 15, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the non-CM/ECF participants.

s/John L. Fontenot
JOHN L. FONTENOT