2

```
 1           UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF LOUISIANA
 2              NEW ORLEANS, LOUISIANA

 3

 4   *******************************
                                    *    CIVIL ACTION
 5   IN RE:  KATRINA CANAL BREACHES *
                                    *    NO. 05-4182
 6   CONSOLIDATED LITIGATION        *    SECTION "K"(2)
                                    *
 7                                  *    August 8, 2007
     *******************************
 8

 9                 HEARD BEFORE
          THE HONORABLE STANWOOD J. DUVAL, JR.
10       MAGISTRATE JOSEPH C. WILKINSON, PRESENT

11   APPEARANCES:

12   FOR THE PLAINTIFFS:    Joseph M. Bruno
                            Bruno & Bruno
13                          855 Baronne St.
                            New Orleans, LA 70113
14                          (504) 525-1335

15                          Daniel E. Becnel, Jr.
                            Law Offices of Daniel E. Becnel, Jr.
16                          106 W. Seventh St.
                            P. O. Drawer H
17                          Reserve, LA 70084
                            985-536-1186
18

19                          William Christian Gambel
                            Milling Benson Woodward, LLP
20                          LL&E Center
                            909 Poydras St.
21                          Suite 2300
                            New Orleans, LA 70112-1010
22                          (504) 569-7000

23                          Calvin Clifford Fayard, Jr.
                            Fayard & Honeycutt
24                          519 Florida Blvd.
                            Denham Springs, LA 70726
25                          225-664-4193
```

```
 1                          Camilo Kossy Salas, III
                            Salas & Co. L.C.
 2                          650 Poydras St.
                            Suite 1650
 3                          New Orleans, LA 70130
                            504-799-3080
 4
     FOR THE DEFENDANTS:    Martin R. Salder.
 5                          Kyle Kirsch, FOR O.L.D.

 6                          Thomas P. Anzelmo
                            McCranie, Sistrunk, Anzelmo, Hardy,
 7                          Maxwell & McDaniel
                            3445 N. Causeway Blvd.
 8                          Suite 800
                            Metairie, LA 70002
 9                          (504) 831-0946

10                          Ben Louis Mayeaux
                            Laborde & Neuner
11                          One Petroleum Center
                            P. O. Drawer 52828
12                          1001 W. Pinhook Rd., Suite 200
                            Lafayette, LA 70505
13

14                          Charles Munson Lanier, Jr.
                            Christovich & Kearney, LLP
15                          Pan American Life Center
                            601 Poydras St.
16                          Suite 2300
                            New Orleans, LA 70130-6078
17                          (504) 561-5700

18                          Richard R. Stone, Sr.
                            U.S. Department of Justice (Box 888)
19                          Torts Branch, Civil Division
                            Benjamin Franklin Station
20                          P. O. Box 888
                            Washington, DC 20044
21

22                          Galen Brown, Esq.

23                          Linda Nelson, Esq., PLC
                            and Hugh Lambert, Esq., PLC.
24
                            Jerome R. Day, Jones Day, Esq.
25                          and Heather S. Loman, Esq.
                            for Washington Group, International
```

3

```
 1                          Jason J. Markey for C.R. Pittman
                            Construction Company, Inc.
 2                          Galloway, Johnson, Tompkins, Burr &
                            Smith (New Orleans)
 3                          One Shell Square
                            701 Poydras St.
 4                          Suite 4040
                            New Orleans, LA 70139
 5                          504-525-6802

 6                          Brent Talbot, for CSX.
                            Chaffe McCall, LLP (New Orleans)
 7                          Energy Centre
                            1100 Poydras St.
 8                          Suite 2300
                            New Orleans, LA 70163-2300
 9                          504-585-7000

10                          Dennie Phayer for Jefferson Parish
                            Burglass & Tankersley, L.L.C.
11                          5213 Airline Dr.
                            Metairie, LA 70001
12                          (504) 836-2220

13                          Henry Price Mounger, III
                            Attorney at Law
14                          1578 Calhoun St.
                            New Orleans, LA 70118
15                          504-897-6419

16                          John Robert Warren, II
                            Plaintiffs' Legal Committee
17                          1100 Poydras St.
                            30th Floor
18                          New Orleans, LA 70163-3000
                            504-585-7923
19

20                          Kirk Norris Aurandt
                            Daigle Fisse & Kessenich
21                          P. O. Box 5350
                            227 Highway 21
22                          Covington, LA 70434-5350
                            985-871-0800
23                          985-871-0899 (fax)

24

25
```

```
 1                          Drew A. Ranier
                            Ranier, Gayle & Elliot, LLC
 2                          1419 Ryan St.
                            P. O. Box 1890
 3                          Lake Charles, LA 70602-1890
                            337-494-7171
 4

 5                          James P. Roy
                            Domengeaux, Wright, Roy & Edwards
 6                          556 Jefferson St.
                            P. O. Box 3668
 7                          Lafayette, LA 70502-3668
                            337-233-3033
 8

 9                          Gerald Edward Meunier
                            Gainsburgh, Benjamin, David, Meunier &
10                          Warshauer
                            Energy Centre
11                          1100 Poydras St.
                            Suite 2800
12                          New Orleans, La 70163-2800
                            504-522-2304
13                          504-528-9973 (fax)

14                          Mat M. Gray, III
                            for Eustis Engineering Company, Inc
15                          Fowler, Rodriguez & Chalos, LLP
                            Texaco Center
16                          400 Poydras St.
                            30th Floor
17                          New Orleans, LA 70130
                            (504) 523-2600
18

19                          Ralph Shelton Hubbard, III
                            Lugenbuhl, Wheaton, Peck,
20                          Rankin & Hubbard
                            601 Poydras St.
21                          Suite 2775
                            New Orleans, LA 70130
22                          (504) 568-1990

23                          Camilo Kossy Salas, III
                            Salas & Co. L.C.
24                          650 Poydras St.
                            Suite 1650
25                          New Orleans, LA
                            504-799-3080
```

4

EXHIBIT

1

6

```
 1   Wayne J. Lee
     Stone Pigman Walther Wittmann, LLC
 2   546 Carondelet St.
     New Orleans, LA 70130-3588
 3   (504) 581-3200
     representing Washington Group
 4   International, Inc.

 5   Jacqueline M. Brettner
     Phelps Dunbar, LLP (New Orleans)
 6   Canal Place
     365 Canal St
 7   Suite 2000
     New Orleans, LA 70130-6534
 8   504-566-1311

 9   Kelley Wingate Strain
     Gieger, Laborde & Laperouse, LLC
10   One Shell Square
     701 Poydras St.
11   Suite 4800
     New Orleans, LA 70139-4800
12   504-561-0400
     representing Lexington
13   Insurance Company

14   Jennifer May Morris
     Duplass, Zwain, Bourgeois, Morton,
15   Pfister & Weinstock
     Three Lakeway Center
16   3838 N. Causeway Blvd.
     Suite 2900
17   Metairie, LA 70002
     504-832-3700
18   representing Lake Borgne Basin Levee
     District
19
     Steven W. Usdin
20   and Judy Barrasso
     Barrasso Usdin Kupperman Freeman
21   & Sarver, LLC
     LL&E Tower
22   909 Poydras St.
     Suite 2400
23   New Orleans, LA 70112
     504-589-9700
24   representing Great Northern Insurance
     Company
25
```

```
 1   Robin D. Smith
     U.S. Department of Justice (Box 888)
 2   Torts Branch, Civil Division
     Benjamin Franklin Station
 3   P.O. Box 888
     Washington, DC 20044
 4   202-616-4289
     202.616.5200 (fax)
 5   (via telephone)

 6

 7   COURT REPORTER:     Pinkey Ferdinand,
                         Official Court Reporter
 8                       500 Poydras Street, Room HB-406
                         New Orleans, Louisiana  70130
 9                       (504) 589-7781

10

11

12   Proceedings recorded by mechanical stenography, transcript
     produced by computer.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

7

```
 1            P R O C E E D I N G S

 2

 3        DEPUTY CLERK:  Court is in session.  Please be seated.

 4   This is Civil Action 05-4182, In Re:  Katrina Canal Breaches

 5   Consolidation Litigation here on two motions, document 6548 and

 6   6589.

 7            THE COURT: Good afternoon.  Sorry we're starting a

 8   little late.  You are pressed for time so be concise.  Make your

 9   appearances?

10            MR. BRUNO: Good afternoon, Joseph Bruno for

11   plaintiffs.

12            MR. ANZELMO:  May it please the Court, Your Honor,

13   Tommy Anzelmo on behalf of the defense.

14            THE COURT: Thank you.   Okay, we have before us --

15            MR. STONE:  Richard Stone on behalf of the United

16   States, Your Honor.

17            THE COURT:  I'm sorry, I stepped over you.

18            MR. STONE:  Richard Stone.

19            THE COURT:  All right, we have a Motion for Leave,

20   Supplemental and Amending Motion for Class Action and Motion for

21   Leave to Amend the Master Complaint.  Lets take the Master

22   Complaint first please, because it really is -- that may relate

23   to the class certification.

24            Who's going to argue that, the Motion to Amend the

25   Master Complaint?
```

8

```
 1            MR. BRUNO:  I apologize, Judge.  Sometime you should

 2   have a moment.

 3            THE COURT:  Maybe I -- first -- I've sat here for 20

 4   minutes and I say your time is up.

 5            MR. BRUNO:  I apologize, Your Honor, I fell asleep at

 6   the wheel.  Judge --

 7            THE COURT:  Don't feel alone.

 8            MR. BRUNO:  -- we primarily seek to amend our

 9   complaint because of the fact that, as usual, you know, you,

10   can't always rely on folks who volunteer to serve as class

11   representatives to, once they're told what's involved, to

12   actually go through the process.

13            First though, before I even go there, let me say to

14   you and to defense counsel, that we deeply appreciate the fact

15   that even though we knew that the defendants would object to the

16   substitution, that the defendants did agree -- and we are deeply

17   appreciative of the fact that they agreed to depose these folks

18   and inspect their homes.

19            So, in fact, everyone who we seek to substitute as a

20   proposed class representative has been deposed.

21            THE COURT:  As I understand it -- just for the record

22   -- that would be, not necessarily by zone, but in globo Mr.

23   Politz, Ms. Harrison, Thelma and Rosemary Kieser, Betty

24   Sonnier-Staubert (phonetic spelling), Delores Bell, and Jose

25   Luis Rodriguez.
```

9

1  MR. BRUNO: I believe that's correct, Your Honor. And
2  some 25 depositions have been taken of proposed class
3  representatives. Judge, 56 properties have been inspected.
4  Bottom line is that with regard to what would be needed for
5  discovery, that's done. So we're at somewhat of a loss as to
6  why the defendants have some -- would suffer any setbacks if we
7  should be allowed to amend our pleadings for purposes of
8  substituting class representatives.
9  THE COURT: Mr. Bruno, just because this will come up
10 and it's part of the test in Rule 16, why now? In other words,
11 what took so long?
12 MR. BRUNO: What provoked them?
13 THE COURT: What took so long, I guess. When did you
14 ascertain that these people were not appropriate or didn't want
15 to serve?
16 MR. BRUNO: Actually, Judge, it was concurrent with the
17 setting of the deposition, to be perfectly candid with you. We
18 bedded these individuals; we spoke to them; asked them if they
19 wanted to serve.
20 THE COURT: Deposition cold feet, in essence?
21 MR. BRUNO: You got it. You got it. And, you know, I
22 can't fault them. I don't know -- I don't know that we could
23 really hold this against them. These are mere individuals
24 citizens who don't understand the legal process. And even
25 though we did take the time to explain to them what a deposition

10

1  was -- and yes they did agree -- once it came time to actually
2  show up and they started thinking about the process, they asked
3  to withdraw. And certainly, Judge, I can't force them to serve
4  in a capacity that's voluntary.
5  THE COURT: Nor can I.
6  MR. BRUNO: So, I really don't know what else to add.
7  There is no prejudice to the parties. They've been deposed.
8  All of the discovery has been completed with regard to those
9  folks.
10 Now, as to the other changes, it wasn't the
11 intent to change any of the allegations. We prepared a chart
12 for the Court's review which I -- I actually sent a copy to
13 opposing counsel. I don't know if ya'll -- there may be
14 comments on the chart. I didn't receive any comment on the
15 chart. I presume it's accurate.
16 I don't believe that we added any new accusation. To
17 the extent that we --
18 THE COURT: Well, the briefing -- the briefing
19 certainly -- the briefing from the other side doesn't seem to be
20 that accepting about the changes.
21 MR. BRUNO: But the only -- As I --
22 THE COURT: They're saying you changed the terminology
23 that might affect motions. You may be adding the different
24 defendants -- new defendants from different zones. The railroad
25 says the allegations are more ambiguous. They're not sure what

11

1  the situation is. The government has raised objections saying
2  that the reliability maybe change a little bit with reference to
3  70(C) motions. I'm just giving you, as you know, the general,
4  and we'll hear from them.
5  MR. BRUNO: Sure. Judge, perhaps I should wait and
6  just listen to what they have to say. I've given you the chart.
7  I've pointed the Court to every paragraph which is the paragraph
8  from which the new allegation came.
9  THE COURT: Let me ask you some questions. Do you --
10 since we do have -- we go through the test, good cause.
11 MR. BRUNO: Yes.
12 THE COURT: The explanation for the failure to remove
13 to relieve to amend, the time removed, of course the time which
14 in essence the filing of the Master Complaint; the importance of
15 the amendment; the potential prejudice in allowing the amendment
16 and the availability to secure such property.
17 So, you've touched upon the fact the class
18 representative, and I understand that. Then as I -- it's a
19 little hard, frankly, to -- time to go over this paragraph by
20 paragraph to determine if the verbiage -- it's sort of like when
21 I was in the Constitutional Convention and somebody said we have
22 a technical amendment, or Law Institute that says there is no
23 change in the law when we're changing the words.
24 MR. BRUNO: Sure.
25 THE COURT: It's that kind of thing. It concerns, I'm

12

1  sure all of us. I'm not sure. I've assiduously gone over each
2  and every allegation, compared them and then said, well, it
3  doesn't seem to do any harm.
4  MR. BRUNO: Well, I have, so lets just -- First, Judge,
5  yes, we have added a new party. That new party is an insurer of
6  the East Jefferson Levee District. It's a party that we frankly
7  didn't even know existed. We knew that they were insured by the
8  St. Paul. St. Paul is a previous party. No change there. Once
9  we found out about this party, we joined that party. I don't
10 know what else to say to that.
11 THE COURT: Okay.
12 MR. BRUNO: With regard to the subclass definition,
13 they allege that we're changing the zone. No, we're not.
14 There was an error. In particular, Judge, if you could
15 hopefully follow this. Looking up on the board there, Zone 1 is
16 the zone which we believe was inundated as a result of the 17th
17 Street Canal and you can see, I hope, where my pen is.
18 THE COURT: Tell me how Zone 1 is delineated.
19 MR. BRUNO: Zone 1 is North of the lake.
20 THE COURT: Right.
21 MR. BRUNO: The West is the 17th Street Canal.
22 THE COURT: The South is the natural ridge known as
23 the Metairie Ridge. You'll see it in green. By the way, green
24 is the high point. The darker colors are the deepest flooding.
25 And the Orleans Canal, levee which is this blue line, right?

1    THE COURT: Yes, sir.

2    MR. BRUNO: There is a levee which did not break or

3  breach, so obviously that's the natural boundary on the East.

4  In our papers we alleged that's Zone Number 1.

5    Zone Number 2 is moving to the right. This zone is

6  bounded on the North by the lake. On the West by the Orleans

7  Canal Here is the mistake we made because we said Bayou St. John

8  instead of Orleans Canal. There is no levee on Bayou St. John

9  so that would not be a natural barrier to water. And, yes, we

10  made a mistake. I apologize. To the East is the London Avenue;

11  South is the ridge, that natural ridge. Here it's called

12  Gentilly Ridge and it moves into the Metairie Ridge. So that is

13  a change, but not a material change. It's a mistake.

14    Zone 3 is that zone bounded on the North by the lake;

15  on the West by the London Avenue Canal; on the East by the

16  Industrial Canal. And, again, that natural barrier. Here it's

17  called the Gentilly Ridge. You can see it very easily.

18    Zone 4 is the zone bounded on the East by the

19  Industrial Canal; the North by the Gentilly Ridge; and Esplanade

20  Avenue, you see that right here; and the South is the

21  Mississippi River.

22    And then finally, Judge, the last zone is Zone 5 which

23  is the zone, the Central City zone, if you will. The North

24  boundary is City Park -- I'm sorry, City Park Avenue again, the

25  Metairie Ridge. The western border is Causeway; the Southern

1  border is the River; and the -- I guess you call it the eastern,

2  Northeastern border would be again the Esplanade Avenue right

3  there.

4    So we make no changes there, I don't believe.

5    THE COURT: And your understanding that in your -- in

6  the proposed amendment that only -- that one or two -- how many

7  zones are actually changed in the geographic --

8    MR. BRUNO: My appreciation that we made a clerical

9  error in defining Zone 2. We used the bayou as the boundary

10  when we should have used the Orleans Canal.

11    MAGISTRATE WILKINSON: Won't affect Zone 1 and 2?

12    MR. BRUNO: No. No, because it was a mistake. It

13  left a gap.

14    THE COURT: It left something unzoned.

15    MR. BRUNO: You got it. Exactly. It would have left

16  this piece between Bayou St. John. And interestingly enough,

17  it's City Park so there is nobody there anyway, except for

18  horses. I don't think that any person would have been affected

19  by water in that area. In any case, that was of no moment to

20  anybody.

21    THE COURT: And you're saying none of the other zones

22  here -- you're representing none of the other zones have changed

23  in the geographical description?

24    MR. BRUNO: No. And, again, it would be difficult to

25  -- it's easy for me to talk about it, but it's harder to

1  describe it because we have the streets and how you actually

2  make up this zone in particular. When you get to that southern

3  border of Zone 2 you see how City Park, Esplanade and -- there

4  is a bunch streets that we use to make it easier for the Court

5  to delineate it, utilizing streets as opposed to just saying the

6  Metairie Ridge.

7    THE COURT: Okay.

8    MR. BRUNO: Now the next point is that we added -- we

9  suggested that had Zone 4 -- I'm sorry. This zone, again which

10  is Zone 4 was added in connection with the allegations of fault

11  relative to the 17th Street Canal. And, candidly, that was

12  before we saw our model from the Dutch. And I have to share

13  with you, the model clearly showed that there is no 17th Street

14  Canal water in that zone. So, I'm happy to withdraw that

15  allegation. That causes the other side great anxiety, as far as

16  I know.

17    THE COURT: Which allegation are we talking about?

18  Lets be specific.

19    MR. BRUNO: This is the allegation that in a particular

20  zone we've added the allegation that those responsible for the

21  17th Street Canal breach were responsible for the water in zone

22  4, and we withdraw that.

23    THE COURT: So that's moot?

24    MR. BRUNO: I think it's moot.

25    THE COURT: Do we know what paragraph that is?

1    MR. BRUNO: Yeah. Yes -- well, yes. Paragraphs --

2  it's contained, according to my little chart here, between

3  paragraphs 26 and 91. And all it does is reference I believe

4  Zone 4, so that all we could do is remove -- I think that all we

5  would do is remove Zone 4 from the descriptor, but I'd have to

6  go back and check.

7    There is an allegation -- and if you'll give me -- it

8  says paragraph 88 contains a new allegation, but the allegations

9  are clearly found at paragraph 78, 208, and 210 of the original

10  Master Complaint which contains the identical allegations. I

11  wish I could tell you what they say, and I can if I make the

12  reference, but I think the chart would be the best way to do

13  this, Judge.

14    The next one is the defendant's claim that we're

15  adding -- that paragraph 117 add new defendants to the complaint

16  and I just -- that's the -- you know, all I can say, Judge, is

17  they're wrong. Alleging here is that the United States of

18  America through the United States Corp of Engineers changed from

19  the authorized barrier plan to an unauthorized, what they refer

20  to as "high level plan." And we simply allege that the

21  defendants, other than United States of America, were part of

22  that process and therefore bear some legal fault.

23    THE COURT: That -- that --

24    MR. BRUNO: Would be new.

25    THE COURT: Yes. And it would also perhaps

**17**

1  engender -- I'm sure they're going to argue -- the motions --

2  MR. BRUNO:  Don't know how those motions would be any

3  different from the motions that they've already filed and lost.

4  Remember, the only motion that you've ruled on, at least in this

5  case -- I know you've ruled on other motions in other cases

6  relative to the Levee Board, relative to post-Katrina conduct,

7  et cetera.

8  In this case, the only motion that we've addressed is

9  an immunity motion.  And the allegation was that the Patriot

10  Act, the Louisiana version of the Patriot Act.

11  THE COURT:  I remember that.

12  MR. BRUNO:  You remember it.  Well, I don't see it,

13  Judge.  Maybe I'm missing something here, but I can't imagine

14  how this adds any allegation which would subject the plaintiffs

15  to a Motion to Dismiss under an immunity claim.  We're making no

16  different -- nothing is different here about our allegations.

17  THE COURT:  Except you're changing -- you said it's

18  new  - it's an additional allegation of fault on behalf of

19  certain defendants.

20  MR. BRUNO:  The same defendants.  They're no new --

21  yeah, it's additional allegation -- you're correct, an

22  additional allegation of fault against already named parties.

23  THE COURT:  Then we get to good old Rule 16 and the

24  test.

25  MR. BRUNO:  Judge, it's not -- I have to tell you, it's

**18**

1  not a critical issue for us.  If it's causing anybody heartburn,

2  I don't see it as a real critical issue.

3  THE COURT:  Again, in ruling on this you have to have

4  a coherent ruling.  And lets say we grant in part and deny in

5  part, we have to do it so that it's intelligible.  And that's

6  one of my concerns because the paragraphs are interwoven and

7  intermeshed.

8  MR. BRUNO:  Then, let me explain then the logic of how

9  the thing was organized, Judge.  Because, frankly, the original

10  motivation behind the changing of the complaint was that I

11  wanted the Court to have an easier time of addressing our

12  allegations.  And so we simply took the factual allegations and

13  the prayer for relief with regard to a particular count and put

14  them together so that if you felt compelled to dismiss a count

15  you wouldn't eliminate the whole thing and you would still have

16  Count 2 or Count 3, or Count 4.

17  THE COURT:  The way we would do this is, hypothetically

18  if we grant in part and deny in part we would deny it

19  conceptually, at least to some of this and you would have to

20  recast your complaint accordingly, your amended complaint

21  accordingly.

22  MR. BRUNO:  That's correct.  I would just remind --

23  THE COURT:  For instance, lets assume  -- and I haven't

24  ruled yet.  Lets assume on this new theory of liability I said,

25  no.  Then, you would simply eliminate -- you would have to go

**19**

1  through your complaint and eliminate wherever that appears in

2  your complaints.

3  MR. BRUNO:  Right.  As I said, you know, Judge, I

4  always try to take this as practical as I can.  In fact, a lot

5  of these allegations come from our review of documents only

6  recently received.  I mean, there is -- we still have notice

7  pleading.  There's no change here.

8  THE COURT:  That's true.  That's no question.

9  MR. BRUNO:  You know, I don't -- you know, I always

10  take the approach, do I really need this?  Because if I

11  don't have to fight, I'd rather not fight.  But, having

12  said that, we are still in the early stages of discovery.

13  We've made very discreet and specific allegations against

14  these same defendants.  They're not getting out of the

15  case, they're in this case.  And the fact that we believe

16  that because of some of the things that we've seen, they

17  may have had some role in this business of the Corp

18  unilaterally and without authority changing the plan.  To

19  the extent that is a breach of some duty, I think it's

20  something the Court needs to have before it.  But, again, I

21  don't think it's a real critical issue.

22  And I'm reminded that our mandate from Your Honor was

23  to take everybody's allegations and all these underlining class

24  action, however good, bad, or ugly they were and put them into

25  one giant master superceding complaint.  And so we are still

**20**

1  charged with that obligation.  So, we're acting not only for our

2  own clients, but in a sense, we're acting as court-appointed

3  counsel for as yet unknown and unnamed class members.  So, we

4  have to err on the side of caution.  We don't have any choice.

5  THE COURT:  I understand.

6  MR. BRUNO:  Now, lets see, the next one is -- the next

7  allegation once again is adding Zone 4 as a zone impacted by

8  essentially what I'm going to refer to as 17th Street Canal

9  neglect.  And I really -- I can withdraw that without any

10  concern.

11  THE COURT:  Okay.

12  MR. BRUNO:  If that causes the defendant great -- um

13  --

14  THE COURT:  Okay, in other words expanding -- when you

15  say -- you have -- Zone 4 is here (indicating).

16  MR. BRUNO:  Simply, yes.  To put it simply, Judge, we

17  didn't allege that 17th Street water got here, and so in each of

18  the counts that we alleged some neglect on the part of these

19  parties in the various counts, we're talking about the 17th

20  Street Canal, so that's just repeated over and over.  That's all

21  we've done here.

22  And let me give it to you as succinctly as I can.

23  Zone 4 we believe was affected by the MRGO.  In other words, all

24  the allegations that we made on the MRGO side, the exacerbated

25  surge, if you will, which caused the water to go over the top of

21

1  the levees here.  There is also a railroad gate that the Levee
2  Board didn't replace.  That's not terribly complicated.  That
3  hasn't changed.  We don't make any changes here.
4      In this zone, that is Zone 3, that's a break in the
5  London Avenue Canal to the east.  That is strictly a claim
6  against the Corp, and it stands or falls on whether or not the
7  immunity is applicable or not.
8      Zone 2 is a zone which the model clearly shows was
9  affected by 17th Street Canal water and water from break in the
10  London Avenue.  London Avenue, quite candidly, a claim against
11  the Corp against the Corp based upon the immunity not having any
12  application.  Stands or falls there.
13      Seventeen, as Your Honor well knows, is a different
14  kind of claim.  We suggest that there is a non-flood control
15  component that relates to the granting of a permit, and so
16  that's different.  So the 17th Street Canal water does have a
17  different role to play, and that's why we kept focusing on 17th
18  Street Canal water as opposed to water from other zones.
19      THE COURT: Are you telling me that -- make sure I
20  understand.  That the allegations -- go back to Zone 4.
21      MR. BRUNO: Yes.
22      THE COURT: You're saying that insofar as the
23  newly-cast proposed amendment alleges that waters from the 17th
24  Street Canal impacted Zone 4; that if you have to -- if I order,
25  grant in part; denying part, any allegations relating to the

22

1  17th Street waters in Zone 4 would be excised?
2      MR. BRUNO: Yeah, that would not be -- that wouldn't be
3  a problem.
4      THE COURT: Okay.  I understand.
5      MR. BRUNO: Judge, that takes me to the end of the
6  little chart here.  I don't know if you have any questions, but
7  I -- you know, I think probably better to let me hear from my
8  opponents and see if there is something we can remedy though
9  agreement or not.
10      THE COURT: All right.  Mr. Anzelmo, you're the point
11  person here?
12      MR. ANZELMO: That would be me, Your Honor.  May it
13  please the Court, Your Honor, Tommy Anzelmo representing the
14  defendants other than the United States of America.
15      THE COURT: Right.
16      MR. ANZELMO: Who I believe is here and will present
17  some argument.
18      I wish to start off first by respectfully disabusing
19  the Court, I believe, of a notion that counsel has suggested.
20  And that is, first of all, that we agreed to take the
21  depositions, and we agreed to inspect the homes.  The situation
22  that we were faced with and what we have been objecting to is
23  the fact that there was superceding a Master Complaint that was
24  presented to the Court after counsel had had the charge from the
25  Court to present the Court with the model upon which this

23

1  litigation was going to be base and all parties, especially
2  party defendant, were going to react to as well as the Court.
3      Following that, we designed our discovery and worked
4  within the case management Order Number 4 to work as diligently
5  as we could to meet and defend against the allegations that were
6  presented there, and against the parties who represented the
7  plaintiffs.
8      This is litigation which is not in it's early
9  inception.  Discovery has not just begun.  We are at end stages
10  of this part of the litigation from the standpoint of the class
11  certification bearing is in November.  Defendant's expert
12  reports are due 19 days from today.  The fact discovery that was
13  ordered to be concluded by August the third concluded on that
14  day with this significant change.
15      One of the manifest differences that we have, we've
16  got a Master Complaint, a superceding Master Complaint which
17  name the plaintiffs.  And from that list of plaintiffs they
18  designated the class reps who are going to be those plaintiffs.
19  And it could only be those class reps from named plaintiffs.
20      When we began to hear that there were issues relative
21  to class reps, and it's somewhat surprising to hear that once
22  they were told what they were going to be in for, they withdrew.
23  The whole point of some of our discovery is to address the
24  adequacy of the class rep.  The class rep. suddenly to appear
25  not have been vetted on the mission of that class rep is

24

1  somewhat surprising to hear.
2      Now, with the revised, or the restated complaint,
3  whatever version Number 3 is, because it's in it's third
4  iteration -- we are presented with separate and distinct new
5  parties, new parties plaintiff who were never there before.  So,
6  in all the depositions when it was being suggested that, look
7  you've got these new people coming in, we are objecting to that.
8  We reserved our rights because they were never party plaintiff,
9  could not properly substitute it.  But it was our obligation
10  that in the event that the Court would rule that if it would be
11  proper, we're stuck with a deadline that's in essence fixed in
12  concrete as far as we're concerned.  We have been reminded by
13  Your Honor and by Magistrate Wilkinson that there are dates,
14  that guys, these dates are not going to move.
15      So, if there is going be a fudged factor and things
16  are going to get closer, you can't expect these things to move.
17  And we expect that to be the class certification hearing
18  beginning on November 5th.
19      THE COURT: Right.
20      MR. ANZELMO: So, we were very careful in what we did,
21  and we were therefore forced to depose these people and to do
22  inspections in the event that it might occur at great expenses
23  to us as well as --
24      THE COURT: So, the prejudice you would have
25  encountered, you basically -- I guess -- let me -- because of

1  your good -- say your good faith and continuing to comply with

2  the order. I'm just -- I'm looking at Rule 16, and I'm mainly

3  concerned about the prejudice to the defendants here. And if

4  you've already encountered -- I guess my question is, if you've

5  already undergone the prejudice, is there any future prejudice

6  even though you did it in good faith out of an abundance of

7  caution?

8       MR. ANZELMO: And there absolutely is with prejudice.

9  But, Your Honor, there is something I should note. The burden

10  under Rule 16 rest with the plaintiffs.

11       THE COURT: No question.

12       MR. ANZELMO: Your order, CMO Number 4, was perfectly

13  clear.

14       THE COURT: Good cause.

15       MR. ANZELMO: You've had enough time. Here is the

16  order, go forth and do it based upon this. So, the notion that,

17  as they are suggesting, I have no prejudice, so therefore, they

18  should be allowed to amend flips the burden. It shifts it away

19  from them for good cause and puts it on me for prejudice.

20       But lets talk about how we are prejudiced. First of

21  all, we've got nine parties who have been substituted as class

22  reps. The other plaintiffs we've answered. They can't just

23  drop those people and bring somebody in without court order.

24       So, number one, the first step is, should they be

25  allowed to be added as named plaintiffs? And the answer to that

---

1  is no.

2       Now, on the standpoint of prejudice, we're forced to

3  go in and dispose these people, rush to do these inspections at

4  great cost, detracting from our preparation time, because had

5  these people not been substituted, we would have been about the

6  business of working towards meeting our expert deadlines,

7  supplying the information that we had received from the

8  depositions which would have concluded without being stretched

9  in essence to the limit by the substitution of new parties, we

10  wouldn't have incurred the expense. And our experts -- one of

11  them -- has told us, for you now to dump on me all of the new

12  deposition testimony of parties who were -- of non-parties who

13  were never parties, and now ask me to present you with an expert

14  report on a timely basis is -- it's not workable.

15       We were prepared and have been prepared to deal with

16  the class reps who were there. Class reps who were named

17  plaintiffs. Your Honor allowed the parties -- plaintiff, you

18  can have up to five class reps and up to five sub class reps.

19  So we started, I believe, with 27 plaintiffs who could be class

20  or sub class reps.

21       If somebody drops out who either didn't know what the

22  mission plan was who were inadequate, well, hopefully within the

23  large numbers of parties who are legitimately before the Court,

24  those people could be there and you don't know need -- we didn't

25  have to go through the expense and the effort and prejudice to

---

1  do what we've done. So, the prejudice does continue. We

2  shouldn't have experienced it. And we didn't -- yes, we took

3  them, but we didn't agree. You understand the nature --

4       THE COURT: I understand. I understand. And they're

5  ramifications of the expert witness.

6       MR. ANZELMO: Absolutely, Your Honor.

7       THE COURT: Witnesses.

8       MR. ANZELMO: Witnesses. I'm going to discuss with the

9  Court some of the points that were brought up. Again, about --

10       MAGISTRATE WILKINSON: Wait a minute. Is that the

11  extent of your prejudice, that you were prevented and you're now

12  delayed in doing other work because of the late substitution of

13  parties?

14       MR. ANZELMO: Well, that's part of it, Your Honor.

15  The first part was that we had to do these things that were

16  unwarranted, these depositions and these inspections that were

17  unwarranted.

18       MAGISTRATE WILKINSON: In terms of your actual taking

19  of discovery from the proposed new class representatives, is

20  there any deficiency in your discovery of those proposed new

21  class representatives posed by this late substitution?

22       MR. ANZELMO: Yes, Your Honor. And thank you for that

23  question. Because here is -- Your Honor well knows that there

24  have been discovery issues that have a risen in the course of

25  this litigation. We have been before Your Honor at least twice

---

1  on Motions to Compel, and on the issue as to what the nature of

2  our inquiry could be on class certification.

3       Your Honor pointed out in one of your earlier rulings

4  that, look, you can talk about stipulations that you're going to

5  make, but these parties, these defendants have the absolute

6  right to take some discovery relative to damages so we can talk

7  about -- especially the issue of predominance -- what's the

8  predominant issue.

9       Then, we filed our motions because we don't get

10  sufficient responses. Your Honor rules and says that these

11  documents should be produced. The documents are not produced.

12  The privilege log that you ordered to be produced was produced

13  in such a fashion that says, in essence we've got $250,000

14  documents. We can't look at them so we're going to object

15  generally; supply no privilege law. We don't get our Answers to

16  Interrogatories and Answers to Request for Production of

17  Documents as fully as they should be. The last amendment was

18  filed August 2nd, the day before so-called discovery would have

19  ended.

20       In addition to that, when we noticed the depositions

21  we filed and Exhibit "A" in connection with that deposition.

22  Exhibit "A" asked for documents that were being contested by the

23  plaintiffs as to what we should get. We didn't get them. In

24  our motion, our Exhibit "A", the opposition to the motion to

25  amend the class -- excuse me, to amend the complaint and the

29

```
1   motion to amend the class, we presented the Court with numerous
2   examples of the plaintiffs in their depositions where they say
3   --
4        THE COURT:  I hate to interrupt this colloquy, but
5   one, let me -- for the record, let me say that the Court has the
6   Honorable Judge Wilkinson here because Judge Wilkinson is
7   imminently knowledgeable with the discovery that's been going on
8   and can certainly assist the Court in his knowledge of the
9   what's been going on in the trenches, so to speak.  And this
10  Court appreciates him being here.
11       We have time constraints.  Unfortunately, I'm going to
12  have to take this thing over, so we're going to have to be --
13  I've heard your answer, but we're going to have to move on.  All
14  right.
15       MR. ANZELMO:  I'll move on.  I'll move on.
16       Sub Class 2 was doubled in size.  This --
17       THE COURT:  Sub Class 2, let me make sure I understood
18  it.  Is that zone, in essence Zone 2?
19       MR. ANZELMO:  Zone 2.  Zone 2.  It doubled in size.
20       THE COURT:  Oh, you mean graphically?  I see.
21       MR. ANZELMO:  Yes, it doubled in size geographically.
22  This may be a little bit clearer.
23       THE COURT:  Okay, Mr Bruno said he made a mistake,
24  left out -- mentioned Bayou St. John which doesn't have a levee,
25  and finally corrected that mistake.  How does it prejudice you?
```

30

```
1        MR. ANZELMO:  First of all, it adds City Park.
2        THE COURT:  Right.
3        MR. ANZELMO:  Their class says that they have
4   representing public entities.  That has been added, and it's not
5   just City Park.  It is encompasses the entire section of
6   property north of City Park that was not a part of --
7        THE COURT:  Okay.
8        MR. ANZELMO:  -- of this zone.  And so --
9        THE COURT:  Of a large amount, at least.  I can see it.
10  Do we have a name for that?  I'm sure Mr. Anzelmo -- Is that
11  Lake Vista?
12       MR. ANZELMO:  Yeah, Lake Vista would --
13       THE COURT:  That's what I needed.  It adds Lake Vista
14  as well as City Park.
15       THE COURT:  Thank you.
16       MR. ANZELMO:  The City of New Orleans, who is not
17  particularly named in here, filed a 200 Billion Dollar claim
18  against the United States of America, so they are active parties
19  and you would have expected that this is not the type of
20  clerical error that gets made considering the stakes that are
21  involved here.
22       Insofar as Zone 4 is concerned, or Sub Class 4, it
23  presents an interesting issue here, because the petition in
24  essence states the same thing that's being alleged in the MRGO
25  class action.  Mr. Bruno said today that, well, the modeling
```

31

```
1   shows 17 didn't get over than there, so lets take that out, and
2   I agree.  But, now he's saying that his modeling show that we
3   have this rush of water coming from MRGO going into Sub Class 4.
4   Why is that here?  We absolutely object to that being here for
5   another reason on the motion --
6        THE COURT:  To make sure I understand.  Let me get
7   this in context.  This is a large complaint.  What specific
8   allegations in the amended complaint are you -- the amending
9   complaint are you objecting to in reference to Zone 4?
10       MR. ANZELMO:  Count 1 --
11       THE COURT:  Because that's what we're here today
12  about.
13       MR. ANZELMO:  Yes, Your Honor.  Count 1 added Sub Class
14  4, Zone 4 in the new version and implicated several of the
15  defendants within that.
16       THE COURT:  So you're saying Zone 4 -- and forgive me
17  about -- Zone 4 was in the original --
18       MR. ANZELMO:  Zone 4 was not a part of Count 1 insofar
19  as the liability of certain defendants.
20       THE COURT:  I see.  I see.  Got you.  So new
21  defendants are added Zone 4?
22       MR. ANZELMO:  Correct.  And the discussion within the
23  complaint -- and forgive me, Your Honor -- when they took the
24  one we're here arguing today, it's like they took that, the
25  first complaint and put it in a blender and it spun out all over
```

32

```
1   the place.  And now we are left with the difficulty of trying to
2   mix and match wherever it's there.  It's not the defendant's
3   creation.  If there are no changes, why did they amend?  If
4   there are no changes, why did it take three pages broken down
5   into separate paragraphs that tell you either there are changes
6   or no changes.
7        All of this adds up to prejudice, but to get the Sub
8   Class 4, discussions now within that are by barrier versus high
9   level plans.  And part of the allegations begin infer that we
10  did something wrong.  So, specifically, we would be filing
11  motions not of the type of the emergency immunity that we
12  originally filed and argued, but now the discretionary immunity
13  of public bodies, a choice between high level and barrier.  We
14  would certainly be filing those motions, and that is something
15  -- the motion deadline is passed, and that's why there is
16  prejudice.
17       THE COURT:  I understand.  So you're saying, in order
18  to -- lets say the Court agrees with you.  What portions of --
19  and lets say I'm going to allow some.  Again, I've got to think
20  through this because we have to render an intelligent order,
21  unless we deny the whole thing, because that would be simple.
22  And if we don't, then what portions of the complaint -- lets say
23  I agree with you.  What paragraphs of the newly-amended
24  complaint would be stricken, or is that possible do?  We tell
25  Mr. Bruno to recast the complaint, not adding new defendants to
```

33

1  Zone 4, in essence.  Is that what you're asking for with respect
2  to Zone 4?
3          MR. ANZELMO:  Yes, Your Honor.  It think it may be --
4          THE COURT:  You may want to think about that because
5  I'm not sure about it either.
6          MR. ANZELMO:  Yes, sir.  And it may be that what the
7  Court would be --
8          THE COURT:  Because I've got to rule kind of quickly.
9          MR. ANZELMO:  Yes, sir.  It may be what the Court would
10  be saying, that insofar as the addition of Sub Class 4 to Count
11  1, or any addition of Sub Class 4 to any count is stricken.
12          THE COURT:  I got you.
13          MR. ANZELMO:  And that --
14          THE COURT:  That makes sense.  The plaintiffs may not
15  think so, but I understand how you're saying how we would
16  mechanically deal with it.  Because you're saying it's a new
17  theory of liability which would then engender additional
18  motions?
19          MR. ANZELMO:  Yes, Your Honor.
20          THE COURT:  I understand.
21          MR. ANZELMO:  There is also within the new complaint
22  the issue relative to injunctive relief, declaratory relief,
23  creation of a fund.  In this particular case we have two issues
24  that we face.  You've got futility argument to be made, and
25  you've got immunity arguments that can also be --

34

1          THE COURT:  Is that the 223(B)(2), to be precise?
2          MR. ANZELMO:  Yes, Your Honor.  In this suit which is
3  predominantly one for damages, a 23 (B)(2), if damages
4  predominate, there is no 23(B) under the current juris prudence
5  of this circuit.  It doesn't happen.
6          THE COURT:  23(B)(2)?
7          MR. ANZELMO:  Yes, sir, 23(B).  It can't happen.  And
8  when you analyze the nature of the complaint what is the
9  injunctive or declaratory relief that's being requested?  It's
10  not -- it's in essence monetary.  It's to put up money.  We're
11  not being enjoined from anything.  Nothing is being declared.
12  So there is a futility argument as well as a basis to file
13  additional motions because it doesn't follow Fifth Circuit law.
14  I think it's the -- forgive me, Your Honor -- Allison versus
15  Citco.
16          THE COURT:  I'm well familiar with that as I'm sure all
17  counsel here.
18          MR. ANZELMO:  So, that's why that can't happen.
19          Your Honor, just give me one moment.
20          THE COURT:  That's a loss of culture and diminution of
21  property value to the public at large, in essence?
22          MR. ANZELMO:  Yes, that's -- yes.
23          THE COURT:  Take your time, Mr. Anzelmo.  I'm sorry
24  we're so cramped for time.
25          MR. ANZELMO:  Yes, Your Honor, just give me -- just

35

1  give me two -- give me 60 seconds.
2          There are also -- Your Honor, again, by the nature of
3  this amendment adding multiple new parties plaintiff, adding a
4  brand new party defendant, good cause has not been shown for
5  this.  There is no basis for this amendment under the tests that
6  this Court would follow.  They have not met this burden.  It is
7  not good cause simply to appear and say, I've had plaintiff's
8  bug out.
9          THE COURT:  Should I ask you about this now, or you can
10  tell me this?  The changing of the scope of the class -- not
11  geographically but the issue as to the amendment by the Court, do
12  you have any comment on that now or do you have another?
13          MR. ANZELMO:  Well, Your Honor, that's -- and forgive
14  me if I was not clear on that.
15          The way the complaint was recast with moving, with all
16  these additional moving parts, I've tried to hit the high point
17  as to why those parts should not be allowed.
18          THE COURT:  I understand that.
19          MR. ANZELMO:  So, I'm not exactly --
20          THE COURT:  Maybe I didn't make my question clear.
21          They've attempted to, in the motion -- it really
22  relates to their motion  -- to amend the motion for class
23  certification.  That is, to narrow the scope of the class, the
24  issues -- in essence, to try to make it more of an issue class
25  than an all-encompassing class; Liability; causation.  There is

36

1  another one -- and then the fourth one is the one you just
2  mentioned, 22(B)(2).
3          MR. ANZELMO:  Well, Your Honor, first of all, we don't
4  believe the amendment should be allowed.  And if the amendment
5  is not allowed, then we're not going to have -- you wouldn't be
6  hearing that -- you wouldn't be deciding that at all.
7          But hearing what you said about maybe something is
8  going to survive, the re-casting of that, of the motion to
9  certify the class at this late date against presents us with a
10  position of prejudice as to how now we are going -- because of
11  the discovery that was taken and the experts report are being
12  prepared were all designed to meet the challenge of the original
13  motion for class certification as well as the original
14  complaint.  This being changed now presents new challenges and I
15  believe create prejudice.  And I do want to comment.  We are not
16  asking for a continuance.  I'm not trying to get a continuance.
17  We've been meeting the schedule to avoid that.  But, if I don't
18  ask for a continuance and something happens with the record up
19  the line, the Fifth Circuit is going to say, you didn't ask for
20  a continuance.
21          THE COURT:  So, you're saying if I -- speaking
22  hypothetically now, because I need to get the permutation.  If I
23  were to allow the amendment  insofar as it reconstitutes the
24  issues to be up for certification, you're saying it might compel
25  you to seek a continuance especially in relation -- to prepare

1  for the recasting quest? And, frankly, and I understand what

2  you're saying, rather than how much this predomination occurred

3  there, if the cast is being recast. I understand what you're

4  saying.

5       What is your deadline?

6       MR. ANZELMO: Well, our expert reports are due August

7  the 27th, 19 days from today. The motions -- excuse me, Your

8  Honor, just for one second. The Memoranda and Opposition for

9  Class Certification is due October 9 of 2007. So, we're right

10  up against it, Your Honor.

11       THE COURT: Can you tell me --

12       MR. ANZELMO: I don't want a continuance. I want to be

13  clear about that.

14       THE COURT: I know you don't, but if the Court does

15  something that you find put you in that position, you have every

16  right, certainly to ask for it.

17       MR. ANZELMO: Yes, sir.

18       THE COURT: And, I'm just trying to understand, more

19  specifically, I mean, I may have to deal with that later

20  depending on what we do here. But, I'm trying to understand if

21  you could give me some specifics of how the recasting of the

22  class? And by that I mean, they have four issues. They want to

23  reduce it to four issues. How that is going to affect your

24  expert reports?

25       MR. LAMBERT: Your Honor? Hugh Lambert.

1       The 27th we voluntarily agreed to move that to the

2  29th just a few minutes ago. So, we gave them a couple more

3  days because of some shuffling.

4       THE COURT: I think you withdraw your objecting? I'm

5  teasing. I'm teasing. You know, just a little tiny bit of

6  levity and not very funny in any situation.

7       MR. ANZELMO: Your Honor, I guess, what I was going to

8  suggest is, we guess we would have liked to be able to hear from

9  the plaintiffs because -- as to what their positions were

10  relative to this, but in --

11       THE COURT: But -- and I'll let you come back. We just

12  have -- we're just so cramped, and I'm sorry. You know, I had a

13  rather full morning with some rather exotic motions and now

14  we're here. And we also have several other items on the agenda

15  today. But, I guess I probably ought to separate that out a

16  little bit even though in the way one goes to the other, but

17  it's conceivable I can deny all the amendment and allow the

18  class to be modified.

19       In other words, except allowing the class to be

20  modified, it's conceivable I can do that. And that is, because

21  of the levee failures -- they want to break down the class as

22  follows: The bulk of the defendants, the apportion of fault,

23  the amendments, the 22 (B) we talked about. That's the four

24  issues they want to limit the class.

25       MR. ANZELMO: And what I'm suggesting is, if we start

1  breaking it down there, I can foresee that there will be

2  additional motions that would have to be filed if it's going to

3  have to be recast.

4       THE COURT: Yes, sir?

5       MR. ANZELMO: Being reminded that the (B)(2) relief

6  that's in here now was not in the master --

7       THE COURT: I understand that. So, if I agree with you

8  then there would be three, that would be the cause of the levee

9  failures, the fault of the defendant, and apportionment of

10  fault.

11       MR. ANZELMO: And I'm suggesting to Your Honor that

12  what it potentially does if it's recast that we are -- there may

13  be some motions that we would be filing, but we are --

14       THE COURT: I'm trying to think what motions there

15  would be. I know you lawyers are creative, but I'm not sure how

16  there would be a motion. You just have to depend the class

17  being had on being reconstituted. In other words, defend,

18  saying it is not appropriate for class regardless of the

19  amendment. But, anyway.

20       MR. ANZELMO: That's what I should have said. I know

21  that's not what I said.

22       THE COURT: Okay. I understand. And I'm not going

23  shut you off. If they say something, I'm going to let you come

24  back.

25       MR. BRUNO: Thank you, Your Honor.

1       THE COURT: The government wants to -- the government

2  is going to tell us why the amendment prejudices it.

3       MR. STONE: Your Honor, I just want to say --

4       THE COURT: I have read your memorandum. But, go

5  ahead.

6       MR. STONE: Richard Stone. The United States has

7  adopted the co-defendant's brief, and we also adopt Mr.

8  Anzelmo's argument. And I would ask the Court if you have any

9  questions about our opposition -- our opposition was on the

10  common liability aspect of the complaint. And we've argued in

11  it that there is no good cause shown, and at this point

12  plaintiffs have had four opportunities to give you good cause

13  now for amending the complaint to shuffle and rewrite those

14  allegations. And our point is, they shouldn't be rewritten

15  because, first, it affects our ability to provide an organized

16  defense. And, second, it creates procedural problems in the

17  Motion to Dismiss that we have pending, and also in the Motion

18  to Compel that we have pending. The Court have any questions

19  about my opposition? I have nothing further.

20       THE COURT: Is the main -- is one of the main thrust of

21  your opposition the recasting of some of the verbiage

22  referencing hurricane protection?

23       MR. STONE: It's the rewrite of all the allegations,

24  adding quotes and several different things, shuffling them

25  around within the complaint, adjusting and shuffling the counts.

**41**

1  And if you look at the plaintiff's synopsis that gives you very
2  good information about how this entire complaint has been
3  rearranged. Yet our discovery has been base on that writing of
4  the first complaint, and also our Motion to Dismiss has referred
5  to it in detail. And if they're not adding anything
6  substantive, then they have no good cause to move to amend here.
7       And I would take issue with one thing Mr. Bruno said,
8  and that is that we're in the early stages of discovery. The
9  United States has provided 1500 boxes of documents. We've asked
10 for discovery on the topics that we're allowed to. The written
11 discovery should be done at this time, and we're still in the
12 process of moving to compel because we haven't received a single
13 document from Mr. Bruno. We haven't received a single answer to
14 a contention interrogatory, and he didn't provide his discovery
15 timely. But that's the subject of another motion.
16      THE COURT: The good Judge Wilkinson things.
17      MR. STONE: Yes, sir.
18      THE COURT: All right. Okay, Mr. Bruno?
19      MR. BRUNO: Judge, we didn't really intend to call all
20 this aggravation, but I think the defendants once again are
21 giving you some indication of their lack of candor in this whole
22 matter.
23      The first thing I have to say is that, the discovery
24 that learnt counsel from the government talks about, we didn't
25 get until after we filed our Master Complaint. So, that's the

**42**

1  first obvious misstatement of fact that we have to contend with.
2       The second obvious misstatement of fact is, here is my
3  original complaint. And here is where I allege, 23(B)(2). And,
4  yet, counsel gets up here and tells you that I'm changing my
5  complaint. The fact of the matter is --
6       THE COURT: What paragraph is that?
7       MR. BRUNO: That's 159 of my original complaint. I
8  really didn't think I had to do this because, quite candidly, I
9  didn't think that we were causing this more difficult. All we
10 tried to do was make live a little bit easier for you.
11      Here is Count 1. I included in Count 1 -- This is
12 everything that relates to 17th Street Canal. That's all I did.
13 And you can see, I tell everybody -- especially you because I
14 want to make this easier for you -- which zones were impacted by
15 which count. And, yes, we added four. And, yes, Judge, I'm
16 happy to remove it. It would take a Marks-a-Lot, and I could
17 just remove four, and it would be done.
18      Now, thirdly, counsel misstates the law, doesn't
19 really have any clue about the fact that you are not required to
20 be a named plaintiff in order to be a proposed class rep. In
21 fact, many, many, many of the proposed class reps were not named
22 plaintiffs in this particular lawsuits.
23      Now, the reason why it's so difficult to substitute
24 plaintiffs because as Your Honor knows, not only you must you
25 find somebody who is willing, but you must find someone who has

**43**

1  timely filed a Form 95, and the six months had to have passed.
2  It was no small task in order to identify those things,
3  particularly when we didn't have this information from the
4  government.
5       So, in terms of our cause, we have good cause. I want
6  to make this a clear well-written complaint for Your Honor and
7  for opposing counsel to understand. They've given you
8  absolutely no reason in the world why I can't re-state what's
9  already there. There are no new allegations. I've just
10 demonstrated that. And I think -- I don't know what other
11 prejudice could possibly discussed. When you withdraw plaintiff
12 "A" and put plaintiff "B" in his place, the cost of the
13 deposition is identical. So I don't know what they're talking
14 about.
15      Class representatives are substituted all the time in
16 class actions. In fact, plaintiffs are substituted even after
17 the class is certified. So, I am at a loss to the understand
18 what in the heck they're talking about. And, finally, they knew
19 from the first day this lawsuit was filed that we made no
20 attempt to certify a class of individual damages. That hasn't
21 been done in the history of class action in the state and in
22 this country.
23      The Murphy Oil case was certified by Judge Fallon not
24 more than eight months ago and there was no need to delineate a
25 bifurcated proposed class. The reason I did it is because

**44**

1  Magistrate Wilkinson misunderstood that we weren't trying to
2  make a part of the class individual damages, and so I clarified.
3  I made it crystal clear, Judge, we're not trying to ask you to
4  certify individual damages cases. The other side knows that;
5  never was any intent, and so I thought, lets clarify. Now we're
6  going to be punished because we're trying to clarify. It's
7  absurd. When need to get to the business of trying this case,
8  Judge. Thank you.
9       THE COURT: Yes, sir, Mr. Anzelmo?
10      MR. ANZELMO: Try to be candid. Paragraph 159 of the
11 original complaint, please read it, Your Honor, because it says:
12           "Alternatively, they request that this matter be
13           certified as class pursuant to Rule 23(B) of the
14           Federal Rules inasmuch as certain defendants
15           have acted or refused to act on grounds generally
16           applicable to the class thereby making
17           appropriate final injunctive or cross claims,
18           declaratory relief with respect to the
19           class as a whole."
20      We didn't know what that meant. So we asked them.
21 Interrogatory Number 12, please tell us what that means. Their
22 response came back as to Interrogatory Number 12 is:
23           "Object on the grounds that it seeks disclosure
24           of experts opinions and reliance material which
25           is not yet due." They were ordered to amend.

45

1    Their answer the amendment came back, "See
2    Interrogatory Number 10."
3    Interrogatory Number 10 now for the first time says,
4         "Plaintiff seeks certification under Rule
5         23(B)(3), 23(C).  Plaintiffs also seek
6         affirmative injunctive relief as the law may
7         allow under 23(B)(2) to address loss of culture,
8         diminution of property values."
9    When is that filed?  August 2nd.  Now, in their
10   opposing memorandum they said, oh, they told us about it
11   earlier.  Well, they've been telling us about things for a long
12   time, but until it's in a pleading we can't rely on it.  I'm not
13   saying that they're distrustful, but I've got to have a pleading
14   to rely on.  This is the most significant and manifest change
15   you can make.  You can't say, add a 23(B)(2) and not say why, and
16   when we ask you why, they won't tell us, and then they're
17   ordered and then they give us for the first time at the close of
18   discovery as a pleading what it is.
19        It's prejudicial.  They have shown good cause why they
20   didn't say that initially.
21        THE COURT:  All right, sir.  Thank you very much.
22   Thank you, Your Honor.
23        MR. ANZELMO:  Thank you, Your Honor.
24        THE COURT:  All right.  We're going to --
25        MR. BRUNO:  Your Honor, I can't -- He told you that it

46

1    wasn't there.  It's now there and now he wants to talk about a
2    Motion to Compel.  He can't.  It's there and there is no way of
3    getting around it.  It's there.
4         THE COURT:  We'll look at it and make a determination
5    it it's there in the appropriate context.
6         THE COURT:  State your name, sir.
7         MR. HAMMOND:  Pierce Hammond.  I've been asked by
8    National Union to look into this case.  We're going to be an
9    additional defendant in this matter.  We're not making a general
10   appearance, but I just want to clarify that's a new defendant,
11   and long deadlines past, discovery has gone.  And you know, we
12   -- actually just came in the case specifically with deadlines
13   limited.
14        THE COURT:  Nobody has been defending this case?
15        MR. ANZELMO:  Absolutely not, Your Honor, not on behalf
16   of National Union.  And when I made my appearance it was for the
17   defendants.  I didn't mean to imply that I was representing
18   National Union in any way, shape, or form.
19        THE COURT:  And, I didn't take it as such.
20        MR. ANZELMO:  Thank you.
21        MR. HAMMOND:  And we've not been a party in this
22   case.
23        MR. BRUNO:  Judge, again, when they say they haven't
24   been defended, their insured, the East Jefferson Levee District,
25   has been abling defendant by my classmate and good friend, Gary

47

1    Swain.  So, to say they haven't been defended is a little bit
2    much.
3         THE COURT:  I meant defended and being paid for my
4    National Union.  I assume -- that's what I've meant.  Have you
5    been paying any attorney to defend this case, National Union?
6         MR. HAMMOND:  I'm not aware of those facts, Your
7    Honor.  I can't answer that.
8         THE COURT:  All right.  Okay.  Thank you.  We're going
9    to take this matter under advisement for about -- shortly, and
10   we're going to try to rule today.  In the meantime we have other
11   items on the agenda.  Then we're going to take a little
12   adjournment and come back, and then I know we have another
13   thing, the Parfait matter.
14        MR. BRUNO:  Judge, did you want to roll in the Motion
15   to Amend, the Motion to Certify sort of into this?
16        THE COURT:  Yes.  Pretty well rolled in.
17        MR. BRUNO:  And it's in our papers then, huh?
18        THE COURT:  Yes.
19        MR. BRUNO:  That's fine.
20        THE COURT:  Unless there is something else.
21        MR. BRUNO:  No, no, I don't think so.  Judge, we'll
22   rest in our papers on the Motion to Amend the Motion to Certify.
23        THE COURT:  And, as I understand the -- that's fine.
24        MR. BRUNO:  All we've did was reduce not expand.
25        THE COURT:  I got you.  I understand that.  Hold on one

48

1    second.  Lets see what's the next item on our agenda.
2         MR. BRUNO:  That's all we have.
3         THE COURT:  We have some things important to talk
4    about, talk about other aspects of the case.
5         One of the other things I want to discuss, and I guess
6    Mr. Hubbard and Mr. Bruno, that would primarily involve you, and
7    anybody else who wanted to that a little time to discuss it, is
8    the status of -- as you know, I have quite of number of cases
9    that have been transferred and they're still coming in.  And I
10   noticed in the paper today there was a advertisement reference
11   that more damages exclusions.  And the Supreme Court of
12   Louisiana haven't ruled yet, so keep filing.
13        I'm interested in your good advice as to -- and
14   ultimately I'm going to decide -- what I should don with the
15   water damage exclusion cases now that the Fifth Circuit has
16   ruled and reversed my ruling.  In essence, when should I do
17   something, and what should I do?  I'm interested in what each
18   you have to say.
19        MR. BRUNO:  Do you want to take your break, or do you
20   want that now?
21        THE COURT:  Okay.  We don't have much time.
22        MR. BRUNO:  Okay, then, fine.  Very quickly, Judge,
23   first of all with respect to the Fifth Circuit we, you know,
24   water that goes through a levee is not the ave same as water
25   that goes over a levee, and we're not ready to give up on that

1 quite yet. We do believe that we will be taking all of our

2 available appeals, and --

3 THE COURT: You would prefer for me to not dismantle

4 until such time as the Fifth Circuit decision is final?

5 MR. BRUNO: Right.

6 THE COURT: I'm not going to wait for Supreme Court.

7 MR. BRUNO: Let me share another thought. And I think

8 there is some agreement. We recognize, all of us, that you've

9 got the levee cases on the docket and so forth, but we do

10 recognize that in the meantime you have an extraordinary

11 opportunity for organization, or combination of this discovery

12 that we would like to at least try to work on we had a meeting

13 with Magistrate Wilkinson last week we all agreed -- well, we

14 all, not all of us. I'm sorry. State Farm and others have

15 agreed to attempt to work on a case management order which would

16 provide for mediation and discovery and combinations of

17 discovery.

18 THE COURT: If you keep these under one roof, you

19 hope to get --

20 MR. BRUNO: Right.

21 THE COURT: I understand that. One of my concerns,

22 and frankly, Judge Wilkinson's concerns -- as he can express it

23 himself -- is that the sooner people get a trial date, the

24 sooner that these things resolve.

25 MR. BRUNO: He is absolutely right, however, I have to

1 tell you, you know, we're talking about 5 or $6000 cases. And

2 so that's why we're thinking that we like to promote a mediation

3 track for those folks who want to go home today. And then we

4 want trial track for those who want to trial track. We have

5 those folks out there who insist preserving their claims for

6 attorney fees and penalty which necessarily regard discovery of

7 common issues. And I know State Farm, at the very least, is not

8 anxious to do the same discovery over and over and over. And,

9 frankly, once there is a ruling for the production of claims

10 manual, if it's produced and if it's available on line -- which

11 it will be, by the way, if we can have our way -- then every

12 plaintiff counsel in all of the courts will have access to that

13 data.

14 THE COURT: As I understand what you're telling me,

15 you, at least on behalf of liaison counsel for the plaintiffs,

16 would prefer me not to precipitously dissolve the water damage

17 exclusion cases, at least at this time to see if the Court will

18 agree on some case management.

19 MR. BRUNO: Yes.

20 THE COURT: Since we have so many other cases.

21 MR. BRUNO: Right. And in saying that --

22 THE COURT: And also wait for the Fifth Circuit to put

23 it's final stamp.

24 MR. BRUNO: And in fairness to Ralph and to Chase --

25 who is here somewhere -- I promised him that I would that this

1 -- we don't mean to suggest in asking you to consider some

2 organizational issue, that we're asking you to please keep the

3 case. We think that we have this opportunity for organization.

4 We like to focus on that opportunity organization and not even

5 get to the issue of what we do when we win the appeal.

6 MR. HUBBARD: May it please the Court, I'm Ralph

7 Hubbard, the liaison counsel for all defendants.

8 THE COURT: Yes, sir.

9 MR. HUBBARD: And when we got the news, we set up a

10 meeting of our steering committee for Friday morning. But, when

11 I saw in your minute entry that you wanted to talk about this

12 today, I did canvass a number of people. And I think I have the

13 feedback from the insurance community, but I don't have it in

14 spades, but I have talked to enough people to the know that the

15 general consensus is that, you know, the reason for us being

16 included in the umbrella no longer exist. And, so that we

17 should be severed. I mean, the umbrella is going to continue I

18 think because of the other matters.

19 THE COURT: The umbrella will continue.

20 MR. HUBBARD: Right. But, that the insurer should be

21 cut out. I mean, if you'll recall, there were insurers that

22 were asking for that from the beginning.

23 THE COURT: What that would mean is, that all of the

24 cases would go back from whence they came.

25 MR. HUBBARD: I suppose so, but the question is --

1 THE COURT: That is what it would mean. I'm telling

2 you.

3 MR. HUBBARD: Right. And I think that they understand

4 that. And I don't know, maybe we'll get earlier trial dates if

5 we remove the flood question from cases. Maybe they're in a

6 better posture to be settled or tried. You know, I don't really

7 have an opinion right now on that.

8 But, in terms of how you do it CMO Number 4 was the

9 one that really created the umbrella, and seems like you can

10 just eliminate the insurers from that.

11 THE COURT: Oh, no, I can do it. I can do it really

12 easily. And then the cases will then go back -- I'm telling you

13 what will happen. They're here artificially because of the

14 commonality with the levee breach. That's the only reason

15 they're here. If the levee breach is no longer an issue, they

16 would go back to the various divisions of this Court. That's

17 what would happen. That's the fact. It's a question of when I

18 do that.

19 Now, you know, when the mandate issues, when the

20 rehearing is denied, you know, I'm not sure. That might be able

21 to precipitous. I mean, certainly this Court is well aware of

22 the extraordinary possibility of rehearing, but it's still there

23 and the time hasn't passed yet.

24 MR. HUBBARD: I would agree with you. I certainly

25 wouldn't anticipate -- I don't think the Court is really

53

1  anticipating doing something before --

2      THE COURT: No.

3      MR. HUBBARD: -- the rehearing is disposed of. I

4  mean, and after that I guess the mandate will be back in your

5  court. Until then, I guess we still have a stay.

6      THE COURT: We do.

7      MR. HUBBARD: Of all of that which is kind of out of

8  your hands and my hands. So, we think that -- actually, that

9  will give us all an opportunity discuss this all a little bit

10  further.

11      THE COURT: Okay.

12      MR. HUBBARD: Thank you.

13      MR. BECNEL: Daniel Becnel. Your Honor, I have

14  literally seven thousand clients, many of whom have these

15  insurance matters, and we have getting ready. We had been

16  talking to Calvin and Joe, and others. And I talked to Ms.

17  Brossieu *(phonetic spelling)* the other day in New York about

18  preserving the rights of people. Everybody was just waiting for

19  the Fifth Circuit to rule without having to inundate this

20  Clerk's Office as we got just a few weeks ago with a dredging

21  defendants to incorporate some sort of procedure for two

22  reasons. Number one, to protect their interest should the Court

23  reverse itself down the road. And, secondly, how to do it

24  efficiently so as not to inundate the Clerk's Office with the

25  nightmare you just went through here.

54

1      And so we were trying to solve that problem between

2  now and the 29th when all of these claims have to be asserted

3  prior to. What we were hoping to do, depending on the Court and

4  the defendants, is do what we did in dredging. Where, number

5  one, you file a pleading and list the names of the people who

6  this would be applicable to by insurance carrier. And if that

7  part of the case is ultimately resolved in their favor or our

8  favor, everybody has their rights preserved under that scenario.

9      So, that is something that I'm going to have to file

10  one way or the other. I just think it is would be easier to

11  file it in one pleading with a list of all of the names of the

12  people by insurance carriers, and we would say, hey, we stayed

13  we're not going to do anything until that issue is ultimately

14  resolved on the flooding portion of it. Doesn't say we're not

15  -- Mr. Brasso (phonetic spelling) and -- I hadn't talked to

16  others about some sort of a mediation on the rest of the case.

17  But I just thought that that would make more sense than to file

18  all over the state courts and inundate everybody unnecessarily,

19  because that issue is ultimately going to be decided in your

20  ruling and the Fifth Circuit, et cetera.

21      THE COURT: I appreciate your remarks, Mr. Becnel.

22  What the Court is going to do is take no action right now with

23  Mr. Hubbard, Mr. Bruno, anybody. You can at some point file a

24  motion when you feel it's appropriate to dismantle it and I'll

25  have to rule on it at that time. I think it's probably wise to

55

1  wait until the Fifth Circuit mandate issues and time for

2  rehearing. I think we all agree on that. Is that --

3      MR. BRUNO: We do.

4      THE COURT: I don't want to speak for you, Mr.

5  Hubbard. Is that --

6      MR. HUBBARD: I think we're probably obligated as a

7  matter of law.

8      THE COURT: Yeah, I do too. I do too.

9      MR. BRUNO: State Farm and I have promised Magistrate

10  Wilkinson some documents to review anyway.

11      THE COURT: That's going to be -- the 29th would have

12  come and gone before that's done.

13      MR. BRUNO: That's true. And that's why I say, in the

14  meantime we've proposed a proposed document with Magistrate

15  Wilkinson, and we're going to meet that obligation.

16      THE COURT: Thank you very much. Hold on.

17      It's pointed out to me that one of the other things we

18  needed to discuss was, when we have the class certification

19  proceeding, mechanically how do we plan to do that? Well, are

20  we going to put on evidence per class? Can we do it -- some of

21  the evidence might be -- and I say per class, per sub class.

22  Some of the witnesses might apply to all of the classes.

23      MR. BRUNO: Yes. In fact, I think Mr. Treeby had

24  asked for this opportunity, and it was provoked by my

25  conversations with him about the simple fact, the basic fact

56

1  that the plaintiff's five allowed experts on the levee side of

2  the case are identical to the five allowed experts on the so-

3  called MRGO.

4      And, Judge, lets remember that that whole MRGO level

5  is an arbitrary sort of a creation that resulted from the nature

6  of the claims made relative to MRGO, and the nature of the

7  claims made for broken levees. You know, I heard counsel

8  suggest have how or other we're breaking some rules, but the

9  fact of the matter is that the water that entered into Zone 4 is

10  water that came from an exaggerated surge from MRGO. I can't

11  change those facts, so those are what they are.

12      We propose one hearing on certification, and it would

13  be very, very simple for us to tell you, Judge, our witness "A"

14  -- and let me use for example my modular. We've retained an

15  expert modular from the Netherlands who has recreated a computer

16  model much like the one that I demonstrated to you some months

17  ago. It will demonstrate how the water entered the city and

18  what sub basins -- the Dutch call it -- were filled and how. We

19  have one of those for that area, which I'll call New Orleans, I

20  guess. Industrial Canal all the way to 17th Street, lake,

21  river. Then, there is a separate model for New Orleans because

22  it's a -- the Dutch call it a polder -- all by itself. And

23  there is a separate model for Lower Nine, St. Bernard.

24      So, he will testify -- and I would hope only one time

25  -- will tell you exactly what the basis of his opinions are and

then would show you the model and what the model purports to
sheets and how it relates to class certification, and why the
water that came into this hole creates common interest with
regard to the folks who wee inundated by the water that came
through that hole, for lack of a better descriptor.  And we can
that for each of the zones that I've described.  And of course
you can see, quite frankly, before we go too far, that the
natural contours of the city create basins that make it very
easy to identify the bowl.  The only question is, what water
went into those bowls.

And the other experts that we have are the inputs for
that model, that is, what is the topography, what was the wind
and the rain, and what was level water, things like that.  And
that's going to be the same testimony for the whole class
certification hearing.

THE COURT:  By class.

MR. BRUNO:  Yes, by sub class or class, because
remember, we're proposing -- by that I mean -- this is a fluid kind of
thing.  We originally do -- by that I mean --

The point I'm making to you is that with regard to the
identification of class zone, that has to relate to the
evidence.  And the evidence is going to dictate how or if you
certify a class, and if you certify a class, how do you draw the
line?  And the truth of it is, that there is overlap between
those different areas.  And I don't see any harm in letting you

hear a witness testify once as opposed to twice.  Now, I've
also had discussions with opposing counsel about entering into
stipulations.  We know, for example, that the defendants are
going to argue that each person's damage claim is different.
Well, yes, and we will stipulate to that.  It's just a matter of
drafting it.  It may even eliminate a bunch of witnesses.  This
whole thing is going to be about where that water went, as I
tried to say almost a year ago.

So, we would suggest, given all the work that
everybody has to do, that we start the motion for certification
on day one; plaintiffs would put on their evidence; and we would
say, Judge, so and so is going to talk about topography; this
guy a going to talk about this bowl or that bowl, the MRGO bowl,
or this or that or the other thing.  And frankly, the only
witnesses we have are the gentleman talked about the fact that
the real estate diminution is something that can be resolved on
a classified basis, and you'll accept or reject that.  They'll
oppose that.  No big deal.  It's not different by neighborhood.
It is what it is.

And, finally, whether or not there is no culture loss
which could possibly be ascertained in a classified basis.
Either it can or it can't.  The only other evidence we have,
candidly, are the allegations of what occurred what are in the
form of the IPET, ILET reports for costs, and we agree.  We're
not asking you to determine liability, we're simply giving you

what the allegations are about each of these breaks, if you
will, or holes or cuts in these levees, so I just think it
should be something relatively easy and straight forward.
We don't need a lot of time.  We have again, only five live
witnesses.  I don't think we'll put on the plaintiffs.  We'll
give you the depositions.  Their individual damages we suggest
are not at issue at all in this certification hearing.

So, again, I propose something very short, very sweet,
very tight that doesn't take a lot of your time.

THE COURT:  Okay, Mr. Treeby?

MR. Anzelmo, I'm sorry, I didn't know which of you --

MR. TREEBY:  We're going to talk to together.

MR. ANZELMO:  He's MRGO.  I'm levee, but I'll let him
take the mic and --

MR. TREEBY:  If Your Honor, please, I was actually the
one who provoked this discussion from Mr. Bruno because he kept
saying there a one trial, and I kept saying, no, there's not but
maybe we ought to get it clarified.

There are two lawsuits here.  One is levee; one is
MRGO.  They involved different properties, different class
representatives, different alleged breaches in the levee that
different people were responsible for.  My clients has no
interest in talking about the 17th Street or hearing anybody
else talk about the 17th Street Canal.  No allegations have been
made against them with respect to the 17th Street Canal or the

London Avenue Canal, or any of that.

And it seems to us that it is confusing to treat the
case in that manner.  And, in fact, in particularly with these
new allegations, we don't know whether -- he's not asked to
amend his motion with regard to MRGO.  He's not asked to amend
his complaint with regard to MRGO.  That creates some different
issues.

He has experts that are suppose to talk about loss of
cultural identity, or whatever it might be.  But those
allegations are not in the motion against us.  He has proposed
experts, and he says the same experts are for both sides, but
frankly, we have different experts.  Our experts are dealing
with -- really, they needed to for the work load to address the
breaches and to address the thing.  The experts for the MRGO
side, except for one, we have one common expert with the levee
folks, so there are nine experts.  Except for the one that's in
common, they're going to be addressed -- our experts are only
prepared to address the issues that involve MRGO as they relate
to this culture loss, if the Court ends up allowing it, and if
he ever decides to amend his motions.  In our case, he's
responded -- his discovery responses seem to say so, but his
pleadings don't say so.

We think that it's less confusing to do what we think
the CMO contemplated, which was two separate trials, a trial for
levee and a trial for MRGO.

61

```
1    THE COURT: On class certification.
2        MR. TREEBY:  On class certification.
3        THE COURT:  Realizing that the issue is, as with every
4    class certification, Rule 23 in essence, and the fermentations
5    and case law there of, and the facts that go to support one or
6    the other.  So, you say you want a separate hearing, class
7    certification hearing for MRGO?
8        MR. ANZELMO:  Your Honor, from the levee side.
9        THE COURT:  Yes.
10       MR. ANZELMO:  We'll be glad to work and try to see
11   what we can do to streamline whatever it is that's going to be
12   presented in the court, but as Mr. Treeby has pointed out, there
13   are some inherent difficulties, especially as I see it in so far
14   as how this record would appear, because we have separate and
15   distinct experts defending potentially a separate and distinct
16   issue that's not being phased there -- being phased here.
17   There may be some way mechanically to get this thing done, but
18   to say there would only one hearing is troublesome to us.
19   We can work with, you know, potential stipulations to narrow
20   what's going to be presented to the Court because we understand
21   it.
22       THE COURT: You're in essence saying, we want a hearing
23   for the levee and -- now five sub classes in essence, and then a
24   separate hearing on that MRGO?
25       MR. ANZELMO:  Yes, Your Honor, because I'm involved in
```

62

```
1    both.  I'm interested in compressing things, but I just don't
2    see mechanically how --
3        THE COURT:  The line of demarcation is not deficiently
4    blurred to any one hearing?
5        MR. ANZELMO:  Right.
6        THE COURT:  Deficiently distinctive for two.
7        MR. ANZELMO:  But, I think that --
8        THE COURT: I may have to hear the same witness twice
9    but that's that.
10       MR. ANZELMO:  Or you hear that witness and that
11   testimony is transported into a separate and distinct hearing.
12       THE COURT:  The only problem is with
13   cross-examination, that Mr. Treeby is going to want to
14   cross-examine him as well.  So I'm just trying to figure it out
15   as well.  You know, it may be what I have to do.
16       MR. ANZELMO:  Thank You, Your Honor.
17       MR. BRUNO: I want to make just two small points.
18   First of all, we're happy to do whatever you want to do.
19       THE COURT:  Don't forget, we have a finite amount of
20   time for all.
21       MR. BRUNO: Right, very quickly.  I'll do whatever you
22   want me to do.  I want to streamline, but there is this one
23   complicating -- First of all, I apologize but it was our intent
24   to amend the Motion for Certification on the MRGO side to make
25   issues only as well.  It was oversight.  I apologize.
```

63

```
1        The point is, there is no difference between the idea
2    on the levee side that all we want is an issues class, no
3    damages.  It's the same on the MRGO side.
4        Second point, the facts are what they are.  Zone 4 is
5    a MRGO class.  I mean, it relates to allegations on the MRGO
6    side.  And to the extent that there is some need to recast,
7    there is no difference in the allegation between that Zone 4 and
8    what we've alleged in the original MRGO complaint.
9        THE COURT:  So, you're saying that's an important --
10       MR. BRUNO: Right.
11       THE COURT:  The MRGO class really merges into the Zone
12   4 claims.
13       MR. BRUNO: Yes, there is no question.  I mean, that is
14   something that is a fact that my experts tell me that I cannot
15   walk away from.  And it's something that we have just have
16   gotten confirmed since our experts reports were filed, which is
17   about three weeks ago which I don't think changes much.  It just
18   means I have to re -- if they're dismissed out of the levee
19   side, then I join them to the MRGO side.
20       THE COURT: I'll tell you what I'm going to do on
21   the counsel that are involved, I'm going to have a informal non-
22   transcribed status conference on these issues very soon.
23       MR. BRUNO:  Thank you, Judge.
24       THE COURT: I think I need to.
25       MR. ANZELMO: Your Honor, can I expanse beyond liaison
```

64

```
1    counsel participation?
2        THE COURT:  Yes.
3        MR. TREEBY:  Your Honor, I want to respond to
4    something Mr. Bruno said.  I'm not prepared today to argue
5    against it, although we do want to argue against any motion to
6    amend the class certification in MRGO and the complaint.
7        THE COURT:  Okay.  I understand.  You need to get that
8    filed.
9        All right.  And I'm going to set up something very --
10   what's next on my little [comments directed to the law clerk.]
11   We're going to spend about 10 minutes on the next
12   issue which is, I'll call them Mr. Gambel's declaratory judgment
13   cases.  We're going to get Robin Smith on the phone so he can
14   participate by phone.  Robin Smith is the attorney for the
15   United States.
16       THE LAW CLERK:
17       Mr. Smith, this is Section K, Judge Duval.
18       THE COURT:  Can you hear us, sir?
19       MR. SMITH (via telephone):  Yes.  Yes, I can, Your
20   Honor.
21       THE COURT:  And I ask anybody speaking from the
22   microphone over there to be as clear as possible so Mr. Smith
23   can hear.  And Mr. Smith, if you cannot hear anybody, please let
24   us know because we can hear you well.
25       MS. SMITH: Thank you, Your Honor.
```

85

1    THE COURT:  We're at the point in this interesting day
2  to discuss -- the way it reads in the minute entry, it's suppose
3  to be 3:30.  We're a little behind.  We'll discuss with counsel
4  for plaintiffs and all defendants in the reference cases above
5  concerning the pending motion to Entry of a Procedure, docket
6  number 3315.  In addition, at that time, the Court shall
7  discussion those cases and the fact they are no included in the
8  master level of MRGO complaints how the parties intend to
9  address these cases, and the appropriateness of these matters
10 having been brought into the declaratory judgment action in
11 light of the request for jury trial and for damages.
12    Now the motion in general concept.  So, first lets
13 talk about the Motion for Entry of a Procedure.  And that's
14 filed Mr. Gambel, and it really is an attempt to allow amendment
15 without court order.
16    MR. GAMBEL:  Right.
17    THE COURT: And then allowing any plaintiff to
18 intervene.  I'll read the language.  "A non-party may without
19 further leave of court intervene as a plaintiff in a reference
20 case, through and with the consent of counsel of record by
21 pleading style quote intervenes as per procedures order entered
22 [and the date of the order] and thereby assert any claim by
23 about defendant, particularly, an intervention; reserve any
24 right to subsequently amend without further leave of Court to
25 assert a claim against the United States U.S. or any act thereof

86

1  under Subparagraph "A" when it's timely to do so."
2    So, one, we'll take up your procedures order.  And
3  you've explained it to the Court in status conferences.
4    MR. GAMBEL:  Right.  Right.  I believe the United
5  States filed a note about it, not really opposing the procedures
6  order.
7    THE COURT: And we want to get that clarified.  And if
8  anybody else who is involved wants to weigh in, they may.
9    Mr. Smith, do you have any further comment other than
10 any comments you've made about this procedure.  I think I
11 understand what's attempting to be done.  I'm not sure I
12 understand all the fermentations that might result in such of an
13 order.
14    On the amendment, as I understanding it, it says --
15 "shoot".  The amendment says, "Any plaintiff may, without
16 further leave of court, amend the complaint."  I'm skipping.
17    MR. GAMBEL:  In order to assert.
18    THE COURT: "subsequent passage over six months."
19    MR. GAMBEL:  Right.
20    THE COURT: "from filing a form 95 respecting same as
21 amended or formal denial of claim by pleading style amended
22 complaints for procedures providing a claim identification
23 number assigned to the claim."
24    MR. GAMBEL:  "or other appropriate evidence that the
25 claim was filed and more than six months old."

67

1    My thought there was that when we filed the initial
2  complaint on August 28th, many of these people had filed Form 95
3  but they were not yet ripe because the required six-month period
4  had not expired.  So the point was, the suits were filed, and
5  those plaintiffs who were already named who now matured -- and I
6  might add that my first amendments, which were in February, I
7  picked up a bunch them with leave of court we amended order to
8  assert claims against the United States for those who were
9  plaintiffs.
10    But now we have others who filed, who's claims were
11 not yet matured, who's claims are mature or would be mature by
12 August 28th; many people filing in February, as the Court will
13 recall.  So, the idea would be that, you know, they could amend
14 the six-month period of time and their suits against the United
15 States would be jurisdictionally proper.
16    THE COURT: Let me hear from the United States.  I
17 think there may be a motion.  Is there a motion filed, I think,
18 by the United States?  And Mr. Smith can amplify this to the
19 affect that in order to comply with the law that an amendment
20 would not be sufficient, but a new lawsuit would be required?
21 Mr. Smith, you might enlighten us on that.
22    MS. SMITH (by telephone): Yes, Your Honor.  We did
23 file -- it was not actually a motion, we filed a response to Mr.
24 Gambel's motion.  We filed a notice of non-opposition stating
25 that corrected docket number 3705, stating essentially that

68

1  inasmuch as this procedure was being presented as far as
2  simplifying procedures, we did not wish to oppose it on those
3  grounds, but did wish to make the Court aware and Mr. Gambel
4  aware that there may be some jurisdictional flaws in the
5  procedure, and that would not waive and could not waive any
6  jurisdictional defenses that might arise by virtue of adopting
7  this method.
8    THE COURT:  I recall that we were discussing that.
9  And I obviously mistakenly thought that a motion had been filed
10 to get that clarified by the Court, at least, at this stage.  If
11 it has or it hasn't, Mr. Smith, you would know since we have
12 such a plethora of motions.  I could be conflating.
13    Hold on just one second.
14    MR. GAMBEL:  I believe there was a Minute Entry by the
15 Court which gave the United States --
16    THE COURT:  There is something that's suppose to be
17 heard on September 12th.
18    MR. GAMBEL:  That's the 12 (b) Motions, but I think
19 the Court in connection with the conference calls and the like,
20 I believe the Court entered an order directing that the United
21 States file its motions under -- file its motions to raise the
22 jurisdictional issue by a certain date and it neglected to do
23 so.  I'm aware of the cases and the issues --
24    THE COURT:  If I allow the intervention we all
25 understand, that you do so at your peril.

69

1    MR. GAMBEL:  I do.  That's right.  There is a second
2    aspect of it and that is, people who were not in the lawsuit,
3    not parties, non-parties who filed Form 95s, who want to
4    intervene in the existing actions to adopt the complaint that
5    has already been filed, the sixth-month period of time having
6    passed already for them.  And the second -- the "B" part of my
7    motion, procedures motion, would allow the intervention.  The
8    "A" part allows amendments; "B" part allows interventions.  And
9    I understand the same risk.
10    THE COURT:  And the intervention would occur after
11    the -- it says with a consent of counsel, mainly you.
12    MR. GAMBEL:  Right, after the six months is run with
13    suitable evidence that the period of six months has run, so that
14    I avoid the jurisdictional issue.
15    THE COURT:  Anyone have any objection as to this?  I'm
16    not sure about the Clerk, but --
17    MR. BECNEL:  May it please the Court, Daniel Becnel.
18    I have been trying to address this.  In fact, last
19    Friday in St. Louis with Professor Miller to try to figure out
20    how to do this.  And what is happening now, and it's not just
21    with his motion.  The Corp is sending out letters by the
22    thousands to my office, and Joe's office, and everybody else.
23    And the law is pretty clear.  It's from the denial of the claim
24    that your six months begins to run.
25    They're sending a letter out and saying, we are so

70

1    overwhelmed.  We don't know if you did it right.  Here is the
2    claim.  This is an acknowledgement letter saying we acknowledge
3    that you filed the Form 95.  Now, Mr. Plaintiff lawyer, or
4    whomever, you've go to exam this form to make sure you have all
5    of the evidence, name the name of the party, the lawyer, if any,
6    the amount of the demand or what your damages are, et cetera.
7    But, it's not a denial.
8    So, we're getting just in waves -- and Joe can tell
9    you because he has tons of them also, these letters.  So I went
10    to the guy who Justice Burger and Justice Rehnquist to help
11    write and be described for the Manual for Complex Litigation --
12    and that's Professor Miller -- to see how we go about dealing
13    with this.  Kind of when you're in purgatory, you're not in
14    heaven, you're not in hell, you're in the middle and they don't
15    tell you where you're going.
16    So what we were proposing to do is come in.  So we
17    know that all of these people -- in fact, just last week Mr.
18    Lambert and I had 15,000 of them filed by one of my referral
19    lawyers from Texas, Mr. Archuleta.
20    Rather than have this inundation of lawsuits here,
21    many of whom in the last week before the 18-month deadline --
22    probably a hundred plus thousand I would think, Joe, wouldn't
23    you?
24    MR. BRUNO:  (Nodded.)
25    MR. BECNEL:  And you're going to be inundated.  They

71

1    can't handle it either.  The Court can't handle it.  It's been
2    very difficult for the plaintiff's lawyer, and we got a bunch of
3    people can't handle it all, but we know who they are because we
4    have it in these data bases to come with a motion with the
5    court, and not necessarily in a formal motion.  The whole
6    purpose of that manual is to come up with innovative ways to be
7    able to deal with these issues.  And I would think that if I
8    came here with myself 70,000 plus cases that Mr. Lambert, Mr.
9    Fenton and I are managing, it would be a nightmare here for
10    everybody.  For everybody, for transferring, for filing.  And
11    then I might even have to go through the procedure of, many of
12    these people are so financially destitute, to deal with all the
13    forma pauper type cases that would you have to undergo.
14    And I would think a procedure to handle all of it,
15    not necessarily by stipulation but by motion and court edict
16    might make a lot more sense, and then we could give them our
17    date bases and attach them as we did in dredging.  We know who
18    they are.  We have forms filled out for them.  We have Form 95.
19    We can find out, because, you know, a lot of these people have
20    done this on their own.  And though we "a management type"
21    committee, this is not a class action.
22    THE COURT:  I understand.  And I welcome any motion.
23    MR. GAMBEL:  I'm sympathetic --
24    THE COURT:  -- simplify that.  Again, we're constrained
25    by the Federal Tort Claim Act because a Court signs something

72

1    doesn't mean you've complied with your jurisdictional
2    requirements under the --
3    MR. BECNEL:  And I understand that.
4    THE COURT:  Everybody needs to understand that until I
5    rule on it and the Court of Appeal blesses -- just a second.
6    As I under it, Mr. Smith -- and I don't mean to speak
7    for you, sir -- Mr. Smith does not per se object to your order,
8    he's simply saying, I may have come in and say, by the way, you
9    didn't comply with the law and your suit is not timely filed and
10    you're out.
11    MR. GAMBEL:  That's right.
12    THE COURT:  As long as everybody understands, on this
13    one at least, not what you're talking, Mr. Becnel.
14    MR. GAMBEL:  Mr. Becnel's got a larger problem.
15    THE COURT:  -- even though you do so at your peril,
16    I'm inclineD to grant this order.
17    MR. GAMBEL:  Thank you, Your Honor.
18    THE COURT:  Mr. Smith, do you have --
19    MR. BRUNO:  Judge, just for completely, I believe,
20    Your Honor, that rather than me --
21    THE COURT:  In reference to Mr. Gambel's cases.
22    MR. BRUNO:  Yeah, Mr. Gambel's cases.  I would have
23    like to have it noted for the record that I believe, Robin,
24    you've indicate that anybody who files a lawsuit, the government
25    will issue a notice of denial.  Is that part of our previous

73

1   discussion?  Is that accurate?

2       MS. SMITH:  That's typically what occurs.  I can't say

3   certainly that that will happen if we have an inundation --

4   referring to the word -- that pour into the court all at one

5   time.  But I think that would be contemplated.  And one the

6   points that we haven't made, or I haven't today, is that the

7   procedure that Mr. Gambel seems to be proposing strikes the

8   United States as totally unnecessary since the Corp of Engineers

9   has not been, and does not intend to deny any claims prior to

10  the commencement of any lawsuits upon those claims.

11      So, essentially, the statue of limitations is

12  open-ended since it doesn't begin to run until a claim, an

13  administrative claim is denied.  So, it's been a bit of a

14  mystery to us why Mr. Gambel feels a need to serially amending

15  his existing lawsuits every time an additional plaintiff has

16  gotten a administrative remedy.

17      But, with respect to our plans, I would say they're

18  still tentative, but typically that's the way we treat a claim

19  once a suit is described upon it, then it's our customary

20  practice then to issue a denial letter.

21      THE COURT:  Okay.  Mr. Gambel, you're up.

22      MR. GAMBEL:  Your Honor, in response to that I would

23  say that is my view of the law as well, for purposes of Federal

24  Tort Claim Act, there is no requirement that there be filed suit

25  until the case is denied.  Of course, we're not sure what the

74

1   meaning of the letters were.  Mr. Becnel pointed out, we're not

2   sure exactly what that is.

3       But in addition to that, I might also add that there

4   is the possibility that some of these claims may be governed by

5   the Admiralty Extension Act.  As a result of that, the statute

6   of limitations will run on the 29th.  And as a result, we

7   actually only have 20 days to file amendments to assert any of

8   those claims under the Admiralty Extension Act.  So, he's not

9   stating it correctly as respect to admiralty extension claims.

10      THE COURT:  And I'm sure he was talking about the

11  Federal Tort Claims Act.

12      MR. SMITH:  That's correct, Your Honor.  But, I would

13  say this.  With respect even to the Admiralty Extension Act, it

14  still seems unnecessary because that statute is going to run at

15  the end of August.  And it would seem like a single lawsuit

16  would be brought on behalf of all Mr. Gambel's clients at that

17  time.  And that would encompass everyone who had exhausted as of

18  that date, rather than have simplified procedure to allow him to

19  serially amend.  Again, it seems like a single lawsuit brought

20  on behalf of all the people had have involved and hadn't file as

21  of that date would address that situation as well.

22      MR. GAMBEL:  And, Your Honor, in response, I already

23  have 10 lawsuits, and I just assume not have 20.  So, by

24  intervening in the existing suits, I can cure the problem of

25  keeping but 10 suits and keeping all the plaintiffs in the same

75

1   case.

2       MR. BECNEL:  And may it please the Court, Daniel

3   Becnel again.

4       I intend, along with Mr. Lambert and Mr. Penton to

5   file approximately 70,000 lawsuits.  I would like to do them in

6   one pleading rather than break them all up:  These are from St.

7   Bernard; these are from New Orleans East; these are from Lower

8   Ninth Ward.  I mean, it just doesn't make sense.

9       THE COURT:  I understand the practicalities of that.

10  Part of the practice is the joinder rule in Federal Court.  That

11  doesn't mean your suit is not -- at least you're not filing

12  untimely.

13      MR. BECNEL:  It'll be filed timely.

14      THE COURT:  If the government is going to raise

15  joinder, it certainly has a right to do so.

16      MR. BECNEL:  And I think even more so, Judge, I think

17  you kind of gave five us in the beginning, you know, we got to

18  kind of look after everybody.  And quite hard to look after

19  people, some of whom you don't know if they filed their form on

20  their own, and if the government has sent them anything.  And

21  because they're all over the creation, and many of the clients

22  have moved three and five times already.  I mean, we spend all

23  day long taking fielding phone calls with people moving from

24  place to place to place because of various things.  FEMA

25  trailers going out of business now.

76

1       So, I'm just trying to get it so that everybody is

2   totally protected as best I can do it, because I think I'm in a

3   fiduciary relationship that you appointed me to and I don't know

4   how else to go about doing it.

5       THE COURT:  Well, anything is fine with the Court.  You

6   know, the Court will certainly look at it.

7       And, Mr. Gambel, let me go on to something else

8   because we have time constraints, and I'm sure all of you do.

9   These are sui generis right now in this umbrella, your cases.

10  And they're brought as deck actions and they do request jury

11  trials for individual damages.  I'm not sure how everybody

12  meshes up, and I'm sure the defendants have some concerns as

13  well.  You've got, at least in this umbrella, you've got the

14  levee cases and the MRGO cases with the Master Complaint.  You

15  have a couple of other cases, but generally they're lodged in

16  the Master Complaint.

17      Then we have these cases, which really are -- we

18  haven't categorized them in a -- I guess what I'm saying is we

19  need to get stuff cleared up.  If the government is going to

20  object to it being a declaratory judgment, is it really a class

21  action?  I'm not sure what it is.  I understand what Mr. Gambel

22  is attempting to do.  I really haven't ruled on this, and as

23  long as it sits out there like this, it's like a sore thumb.

24  I'm just trying to get a mechanism to get this resolved because

25  it's not clear where we are.  The point of this Court having all

1  of this is to somehow get it organized and streamlined, and as
2  coherent as we can.
3      I understand it may be the Government's position that
4  under the Federal Tort Claim Act scenario that class actions are
5  not amenable, and I'll have to rule on that.  I don't have a
6  motion yet.  I need to get those things resolved.
7      Mr. Anzelmo, I see you standing up.  Mr. Anzelmo is a
8  defendant I think in virtually everything -- and he's quiet --
9  and not only here but in state court.  So, I understand that at
10  least you'll be busy for a long time.  But, you have something
11  you would like to say, sir?
12      MR. ANZELMO:  Yes, Your Honor.
13      THE COURT:  Mr. Anzelmo, Mr. Smith.
14      MR. ANZELMO:  May it please the Court, Tommy Anzelmo
15  representing the Orleans Levee District for the purpose of these
16  discussions.
17      The part of these separate actions that have troubled
18  us is that while it is claiming declaratory relief, in essence
19  it is part of the levee and MRGO actions because --
20      THE COURT:  There go the Court's minute entry.
21      MR. ANZELMO:  And my response thereto is that the
22  declaratory judgment is in essence after somebody has been found
23  liable, find that, for instance, the Orleans Levee District is
24  liable under an act of assurance.  The predicate to me is what's
25  happening right now in these class actions.  This is part and

1  parcel of it and should remain under the umbrella and really
2  shouldn't be an separate categorization.  I know it's an action
3  for declaratory judgment, but it's -- for instance,
4          "The defendant be duly cited to appear and answer
5      and be judgment in plaintiff's favor against the
6      defendant holding the plaintiff's claim for
7      damages resulting from the construction of these
8      certain projects within the meaning of Acts of
9      Assurances on work and that the Corp of Engineers
10     is liable under the re-statement, and that
11     neither the Levee Board or Dock Board are immuned
12     from suit."
13     It's these actions.  It's the class actions.  It says
14  holding liable with the class --
15     THE COURT:  Well, we don't have time to argue now.  I
16  wanted to bring to the attention -- I need some paper.
17     MR. BRUNO:  I'll file a motion.
18     THE COURT:  Thank you.  All right.
19     And, Mr. Smith, I don't know if you need be -- we'll
20  see if there is anything else.  What I'm going to do is, I'm
21  going to sign that order with the understanding that it's at
22  everybody's peril.  If you don't file a lawsuit, then you file
23  an intervention, if you don't file a new suit the Government may
24  come in and the Government may win.  Keep that in mind.  That's
25  all I'm saying.  The Government, let us know that.

1      MR. BECNEL:  I'm coming like a freight train.
2      THE COURT:  I'm just pointing that out, so I don't want
3  to be aiding and abetting to anybody getting dismissed.  I'm
4  signing the order because I really find no specific objection to
5  it.  And if it's valid, we're going to -- Mr. Gambel, I think
6  you well know what the risk are.
7      MR. GAMBEL:  I do, Your Honor.
8      THE COURT:  Okay, I think that's only other matter we
9  need to talk about.  And so, Mr. Smith, thank you for
10  participating, and I'm sure we'll see you soon.
11     MR. SMITH:  Thank you, Your Honor.
12     THE LAW CLERK:  Bye-bye.
13     THE COURT:  All right.  Okay.  The next matter we have
14  and -- I wanted liaison counsel present -- is that Judge
15  Wilkinson and I we try to we work as a tandem on this, but he is
16  more in the field of getting bloodied up by discovery and I'm
17  getting blooded up by motions, but we confer.  There was a
18  problem with the Ingram barge case in the sense that in the case
19  Mr. O'Dwyer filed another case.  Mr. O'Dwyer, you're present?
20     MR. BRUNO:  I don't see him.  It's five until four --
21  of six.
22     THE COURT:  Lets see where we are.  "Ordered that the
23  Court will take up the Parfait in which this matter had
24  previously ordered plaintiff's counsel to draft two separate
25  amended complaints, one for the claim involving the barge and

1  one for the claim asserted in the Parfait complaint which Aston
2  O'Dwyer is responding to the certificate of Possibility of
3  Compliance."
4      If it is impossible to comply the Court would likely
5  dismiss the suit since my order is being ignored.  Otherwise, we
6  file one suit reference to barge because Judge Berrigan has
7  that.  And because there are allegations against the Corp --
8  even though Mr. O'Dwyer does make a point somewhat indivisible
9  -- that you file another suit with reference -- the Corp, since
10  it's under this umbrella and we don't want discovery going on in
11  that case with Mr. O'Dwyer and Corp because that's the whole
12  purpose of the umbrella.  He filed a certificate of
13  impossibility, which I would like that to -- there are several
14  things I would like to file about that as well, but I can't do
15  that.
16     But, he's not here, and so he's says it's impossible.
17  We ordered it.  Seems to me my only remedy then is to dis -- and
18  I'm going to think about it -- dismiss Mr. O'Dwyer's suit as
19  being impossible.
20     (Inaudible off the record comment by an unidentified
21  party.  Laughter my counsel.)
22     You're getting a metaphysical question that are far
23  beyond -- beneath the intellect to this Court.
24     MR. BRUNO:  I was going to say the Manual for Complex
25  Litigation might speak to this.

81

```
 1        THE COURT: Some you are in both of those cases, some
 2   of you are in the Ingram barge case, I think.  Nobody here?
 3        MR. ANZELMO:  (Physically Stood up.)
 4        MR. TREEBY:  (Physically Stood up.)
 5        THE COURT: Those of you on the Ingram barge case, and
 6   Judge Wilkinson and Mr. Treeby.  The whole purpose was that when
 7   we looked at this, and we talked to Judge Berrigan is that, you
 8   got the Corp as a defendant now in Mr. O'Dwyer's new suit.  I
 9   hate to talk about him not being here, but if anybody wants to
10   speak on this issue, you may.
11        MR. BRUNO: Judge, I understand it's a complex issue.
12   Of course, you know, one of the issues we suggest to you is a
13   common issue for resolution in the class action is the cause of
14   the breaches of Lower Nine.  I'm certain that the -- well, some
15   of the defendants will allege that the non-present party in this
16   case, the barge, is -- was a cause -- one of the causes of that
17   breach.  So, we've chosen not to join that party as a defendant
18   for any number of reasons.  So that simply is not here.
19        THE COURT:  Mr. O'Dwyer may have a point, and I'm not
20   saying he --
21        MR. BRUNO: My only comment on all of this -- and it
22   even includes the Gambel cases -- is I think the Manual for
23   Complex Litigation really speaks to the resolution of this.  I
24   mean, the fact that we have class actions and non-class actions
25   where all of the issues are still the same when they should be
```

82

```
 1   just wrapped up into one big ball and they should be one CMO
 2   which establishes these cutoffs.
 3        I frankly don't know why you put this burden on
 4   yourself because the parties are the same, the allegations are
 5   the same.  We are going through the same discovery.  The
 6   documents are the same.  The parties are the same.  So, you
 7   know, regardless of the fact that Mr. O'Dwyer insist on what
 8   he's insisting on, if he chooses not to comply with the orders
 9   of the Court, then the remedy is obvious.  But I don't think
10   that he is -- I don't know that there is any -- I guess from his
11   prospective, if he wants to allege that the Corp and the barge
12   and WGI and anybody else who is responsible, he probably has
13   that right.  It's up to the Court to decide how to allot that.
14        THE COURT:  I don't mean to trivialize this at all.
15        MR. BRUNO: No.  You know --
16        THE COURT:  That's why I had the hearing.
17        MR. BRUNO:  We evaluated it, but I think that there
18   are -- an interesting issue still is, you know, it's one that
19   we'll face at some point in this case as well.  I just want to
20   --
21        THE COURT: I'm not sure what I'm going to do.  I just
22   wanted to discuss it.  It's sort of like a one-hand clap here.
23   He does make a point saying that I have -- there may be joint
24   tort-feasor maybe the Corp and barge that did this.  It seems to
25   us that it's either one or the other.  But, who knows?
```

83

```
 1   He may have a point.  Mr. Treeby maybe you can enlighten us.
 2        MR. TREEBY:  I doubt that, Your Honor.  But I
 3   will say for my client, Washington Group International, Mr.
 4   O'Dwyer's called the Parfait Family versus United States is a
 5   class action.  He filed it as a class action.  He has a huge
 6   number of class representatives.  And the allegations that he
 7   made against Washington Group are virtually identical to Mr.
 8   Bruno's as the Master Complaint.
 9        THE COURT:  Right, no question.
10        MR. TREEBY:  Except he tweaked it slightly to a
11   apparently address some of the arguments we made in our Motion
12   to Dismiss.
13        THE COURT:  Right.
14        MR. TREEBY:  My only point would be here, and was here
15   -- and I wrote a letter actually to respond to his letter to
16   Judge Berrigan.
17        THE COURT: Right.
18        MR. TREEBY:  My only point is, I think this is a class
19   action that is an attempt to amend the Master Complaint.  That's
20   the way we view it.  I'm only talking my client.  That's what it
21   looks like to as to my client.  And something ought to be -- I
22   welcome Your Honor's resolution of the matter because once he
23   did what Your Honor had ordered, our intention was to file a
24   Motion to Dismiss on the same grounds that we filed before.  But
25   with it in limbo here, now he has the service, so.
```

84

```
 1        THE COURT:  One of the problems is that -- he
 2   originally had this in Judge Berrigan's court.  I think -- and I
 3   may be wrong about this, but maybe some of you can tell me --
 4   his suit was dismissed because filed prematurely because he
 5   named the Government.
 6        MR. TREEBY:  But he didn't name us.
 7        THE COURT:  Right.  He re-filed it after the six months
 8   was run and, and he in essence amended it.  And it overlaps very
 9   clearly with this case, and the Court was trying resolve it.
10   And maybe it is impossible, but we need to do something.
11        MR. ANZELMO: Your Honor, let me brief address the
12   question about whether it's impossible or not because I don't
13   think it's impossible, and here is the reason why.
14        The action before Judge Berrigan was a limitations
15   action.
16        THE COURT:  Right.
17        MR. ANZELMO:  She's found that it's not a limitation
18   action.  So what it's evolved now into is a lawsuit to determine
19   why the levee failed.  Did the barge do it, or did something
20   else cause it to fail.  That's these class actions.   It's levee
21   or MRGO.  And, if they're going to put it on the East side of
22   the Industrial Canal --
23        THE COURT: What you're saying is, Judge Berrigan
24   should transfer that case over here now?
25        MR. ANZELMO:  It's the same action.  Yes, that's what
```

**85**

1    I'm saying.  To me, that's what --

2         THE COURT:  That may be one way.

3         MAGISTRATE WILKINSON:  That's it, I quit.

4         My boss once told me this.  It's a moment levity.

5    "Don't worry about the mule, just load the wagon."  I'm not

6    suggesting that we load the wagon anymore, but from a procedural

7    standpoint, what is left within Judge Berrigan's case.

8         THE COURT:  Judge Wilkinson is probably the best person

9    to talk about this in the sense -- he may not want to -- in the

10   sense that he is involves as the Magistrate Judge on the Ingram

11   barge case as well as the Magistrate Judge on this ever-growing,

12   even though, despite the Court of Appeals ruling, seems to me a

13   still going monster.

14        MR. BRUNO:  Judge --

15        THE COURT:  Understand what you're saying and you're

16   probably right, Mr. Anzelmo.

17        MR. BRUNO:  But, here is the mule here, and that's why

18   I want to make sure that we have -- I have wrestled with this

19   for a very long, long time.  As a matter of fact, it's a class

20   action.  I think the easy solution to the fact it's a class

21   action is joining the same party who is already here.

22        There is nothing that would prohibit the Court from

23   consolidating that into the current class action to be subsume,

24   in the same way that it would have been subsumed it been filed

25   earlier.

**86**

1         Now, as I said, we do allege that this class should

2    take into -- have a common resolution of whoever caused the

3    break.  And somebody out there is alleging that it's this barge.

4    And it does seem logical to me -- not that I want to pull a

5    larger wagon -- that if that's going to be an allegation that's

6    made -- and, frankly, it may be a defense by Washington Group,

7    and it may well be a defense by this Corp.  If it's here anyway,

8    I don't know that it's - you know, again, it's a tough issue to

9    say, to suggest to the Court as to how to handle between the

10   sections.

11        THE COURT:  Judge Berrigan may ultimately rule on the

12   --

13        MR. BRUNO:  I think she's already decided -- maybe I'm

14   confused about where he is.

15        MAGISTRATE WILKINSON:  She decided that the limitation

16   petitioners have not born there burden to show that they're

17   entitled to limitation, indicating one problem.  She left opened

18   the possibility that when the proceedings go forward they may

19   still be able to prove that they're entitled to limit.  So

20   limitation issue is not dead.

21        MR. BRUNO:  Right.  Right.  It may well be then that

22   the business of causation, first, be resolved here.  The

23   business of neglect be resolved here, and then the business of

24   limitation be resolved there.

25        THE COURT:  What I'm going to do as a result of this

**87**

1    is Judge Wilkinson and I are going to meet with Judge

2    Berrigan.

3         MR. BRUNO:  But it does speak to the other issue though

4    about the *Manual for Complex* that I really think for ease of

5    your -- this confusing, all these -- there are a couple of

6    independent cases out there.  There is no reason why they

7    shouldn't be consolidated with the class action and be made to

8    comply with the discovery orders, the motion practice.

9         I mean, for example, I know that we're facing a 12 by

10   the Government, and then Mr. Gambel is facing the same 12.

11        THE COURT:  It would be helpful to have a motion to

12   that affect.

13        MR. BRUNO:  Right.  I'll gladly bring it.  Okay, I

14   hear you.  I'm sorry.  I'm death today as well.

15        THE COURT:  At this time we're going to take a 10

16   minute, 15 minute recess.  I'm going to come back and rule

17   on the -- because I got to rule now, you know.  I got to rule on

18   the amendments so we're going to go back.

19        Thank you.  Come back in about 15 minutes.

20        THE COURT:  We're in recess.

21        (At which time a short recess was taken.)

22        DEPUTY CLERK:  All rise, please.

23        THE COURT:  Please be seated.

24        THE COURT:  First, I want to thank you for your very

25   good arguments, anticipated in this matter.  Also, I want to

**88**

1    thank Judge Wilkinson who is always a great assistance to the

2    Court.  And I told Judge Wilkinson as I go through these rulings

3    to hit me on the head if I'm going astray.  It's been a very

4    long day.

5         All right.  I'm going to make the following rulings

6    and wholly they will be sufficiently clear so that the parties

7    can act accordingly.  Because I'm going to be not speaking in at

8    the present times specific paragraph of complaint, but in terms

9    of concept.

10        The Court has reviewed the factors in Rule 16 -- where

11   is my bench book?

12        THE LAW CLERK:

13        Sorry, Judge.

14        THE COURT:  And I want to recite them again for the

15   record.  Just one second.  I think I know them.  Got them right

16   here.  I got them.  Which are -- and of course we're determining

17   good cause here because we said in the case management order

18   that no amendment could be made after the Master Complaint was

19   filed except for good cause.  Good cause, "the explanation of

20   failure to timely move to amend the importance of the amendment

21   to potential prejudice allowing the amendment the availability

22   to secure such prejudice."

23        And I look at all of those and then develop as

24   objectively as I can, a consensus.  And some of them may be more

25   important than others.  I think the most significant ones are

89

1 prejudice to the other side.  That's how I looked at them, as
2 being very significant.  Prejudice is what really drives this,
3 in what to me the system of justice is all about.  You want to
4 be fair to everybody, but we don't want anyone to be prejudiced
5 because of that, an amendment that comes after the time
6 genuinely acknowledged for amendment.
7        So, with that said, this is not necessarily in order
8 of importance, it's just how we wrote it down.
9        I'm going to allow the amendment of the class
10 representatives of the Master Complaint as to the class
11 representatives, a substitution of the class representatives.
12 Although Mr. Anselmo made some excellent points, the Court feels
13 that the -- frankly, it never was clear to me about the
14 importance of amendment because we had other class
15 representatives.  I'm not quite sure why there is a need for
16 multiple class representatives at each category, but I'm going
17 to assume that's important without being able to articulate it.
18        I don't necessarily find that the explanation for the
19 failure to timely move to amend was persuasive to the Court, so
20 that would go against the plaintiffs.  However, the potential
21 prejudice because of the, frankly the assiduous work of the
22 defendants in taking the depositions, is minimal.  And if there
23 is any expert prejudice they can always move for relieve to
24 extend the discovery deadline to some degree.  We're not going
25 to extend it a year, extend the discovery deadline.

90

1        MAGISTRATE WILKINSON:  Experts reports.
2        THE COURT:  The expert reports.  Exactly.  If there is
3 a problem with the expert report, to extend the time that the
4 report needs to be filed.  So, that in essence gives an
5 availability of continuance to mitigate that prejudice.
6        So, I find that that weighs in the side of the
7 plaintiff and I'm going allow that amendment.
8        I'm going to allow the amendment to class allegations
9 including 23 (B)(2) because I find it was pled in Article 159 of
10 the Master Complaint.  Now, defendants need to understand that
11 that doesn't mean I'm going to find that that is something
12 that's certifiable at the class certification hearing.  And
13 you're going to argue it's not, and I may well agree with you.
14 Merely because it's being amended does not mean it is in fact
15 certifiable, nor do any of the other three issues.
16        But, I find that frankly -- I'm not sure of the
17 exclamation to timely move is very good again.  That weighs in
18 favor of the defense.  The importance of the amendment is
19 significant.  It's very important.  It goes to the heart of what
20 this is is all about.  The potential prejudice I find just not
21 sufficient because it narrows the class.  It narrows the -- it
22 becomes an issue class.  It makes it less rather than more.  So,
23 I don't find it's prejudicial in the sense as contemplated by
24 Rule 16.  I don't think a continuance would be necessary to cure
25 such prejudice, but if one is filed the Court will certainly

91

1 look at it.
2        So, I'm going to allow that, the motion to amend the
3 class allegations.  And I say again, it doesn't mean that it's
4 going to be certified, any aspect of it.  It simply mean that's
5 going to be the scope of the certification hearing which is
6 less than scope of the certification hearing would be
7 before.
8        Okay, I'm going to deny incorporation of Zone 4 into
9 Count 1.  I'm going to deny that amendment.  So, when you redo
10 this, that will be taken into consideration.  I'm going to allow
11 Zone 2 to be amended to correct, and I'm going to accept what
12 Mr. Bruno said is a clerical error.  I just don't find any
13 prejudice there.  And it's important because it's part of the
14 area that was left out.  I'm assuming it was not intentional.
15        I'm going to allow the insurer, National Union, the
16 insurer of the East Jefferson Levee District.  The Court was not
17 convinced by the equivocal answer of the representative who was
18 here, that they haven't been defending.  It seems that they
19 have.  I just don't find to name them when they've been, I'm
20 sure, apprised of this matter, and being involved in the defense
21 of it is not prejudicial, and the failure to timely move in this
22 instance because it was recently discovered weighs in favor of
23 the plaintiff and insufficiently important.
24        I'm going to allow the amendment in reference to
25 counter liability issues, however, if -- because I find the

92

1 complaint made it more specific.  However, I'm going to allow
2 the Government or anyone else -- the government is really the
3 one who objected to this.  If they need more time they can
4 propound -- if they need more discovery, they can certainly
5 propound it based on the new allegations.  And I know some of
6 these go to whether there is 702 immunity or not.  Just because
7 something was amended doesn't mean that you're going to argue
8 judicial admission.  You still can argue, but I don't think it's
9 going to have a big affect on my ruling simply by taking out
10 certain descriptions and adding others.  It is what it is.
11        MAGISTRATE WILKINSON:  On that you said you're going
12 to permit them to propound additional discovery.  I think we're
13 going to... (Off the record comments to Judge Duval.)
14        Judge Wilkinson is the master of all discovery.  I
15 will amend that to state that the Government can certainly ask
16 for additional discovery -- for leave for additional discovery,
17 and I certainly think that Judge Wilkinson, if indeed he's
18 shown, because of these new allegations, that it will be
19 granted.
20        I'm going deny leave to amend the Barrier plan versus
21 the Highlander plans, those allegations.  And the reason I'm
22 doing that is, it's close.  Because the time limits here -- the
23 time that plaintiff has -- would weigh the Government the
24 position of discovery.  The importance, I find it kind of
25 neutral.  But the prejudice and the continuance portion of it,

93

1  that is what concerns me. One, I think it would engender new
2  motions which could frankly disrupt the entire time line. And I
3  don't think it's sufficiently important to disrupt one
4  prejudicial -- I don't think it's sufficiently important to
5  disrupt the entire time line of this litigation.
6     So, I've cleaxed I think imbalance. I'm going to deny
7  leave to amend the Highlander plan versus the Barrier plan
8  because it does create a different period of liability than some
9  of the defendants. And, therefore, it's overly prejudicial.
10    Okay. I think that's --
11    MR. BRUNO: I just want to clarify, Judge, because we
12 did make those allegations against the Government. You're not
13 suggesting I have to -- those were in the first, but I'm not
14 going to amend to make those same allegations as to the O.L.D.
15    THE COURT: I'm not taking anything out of there.
16    MR. BRUNO: Right.
17    THE COURT: If it was in the first one amend, it's in
18 the second.
19    MR. BRUNO: No, I got you, but I just want the record
20 to be clear. And, I just want to state for the record that --
21    THE COURT: It really relates to Mr. Anzelmo.
22    MR. BRUNO: Right. I just want to thank for the
23 record, the Court, that nothing in this amendment is intended to
24 nor does it affect in any way the Government's rights to move
25 for a dismissal under Rule 12. That was never the intent, and

94

1  we anticipate going forward.
2     THE COURT: The Court's heard enough regarding such.
3  The Court is going to look at the 702(C).
4     THE BRUNO: Right.
5     THE COURT: Based on the facts.
6     MR. BRUNO: Right. In other words, this wasn't any
7  attempt to put off that motion is what I want you to know.
8     THE COURT: All right.
9     MR. BRUNO: I want the record to so state.
10    THE COURT: With that, we will -- Yes?
11    MR. ANZELMO: I just want to ask one thing. In
12 connection with your ruling, the case management order relative
13 to two motions, now that you've made a determination of 22(B)(2)
14 staying in --
15    THE COURT: It was in the original complaint. It was
16 also --
17    MR. ANZELMO: Forgive me, Your Honor.
18    THE COURT: I neglected to say, it was also mentioned
19 in the original class certification motion filed March 10.
20    MR. ANZELMO: Yes, Your Honor. And I can't file --
21 may it please the Court, I could not file a Motion to Dismiss
22 based on me believing that it was not sufficiently pled
23 originally. The CMO contemplates if I wanted to file and
24 additional motion, I would have to ask for leave.
25    THE COURT: Right. You can give us your reasons, and

95

1  hopefully we'll be fair.
2     MR. ANZELMO: Thank you very much, Your Honor.
3     MR. TALBOT: Your Honor, Fred Talbot for CSX entities.
4  Yes, I talked to Joe about what he said were unintended.
5     THE COURT: I did leave you out of this, didn't I?
6     MR. TALBOT: Yes, Your Honor. We would like to not
7  have to start over and start filing new briefs.
8     THE COURT: No. No.
9     MR. TALBOT: There were unintended changes that Joe
10 described.
11    MR. BRUNO: I have no way of measuring the degree to
12 which there is any change, but I can assure you that we believe
13 that any motion that was previously filed by CSX and may have
14 merit would have equal merit with regard to anything that we may
15 have inadvertently said.
16    THE COURT: I didn't want to ask you about that. I
17 don't remember it being argued here today, that's why. But, I
18 remember looking at it in the briefs, but I don't remember --
19 you probably --
20    MR. TALBOT: We didn't want to take up the Court's
21 time. We had marked exactly what the changes were I think on
22 page 2 and page 3.
23    THE COURT: Right.
24    MR. TALBOT: Which was just an expansion of the class
25 and more sub zones, and then also amending some allegations out

96

1  that had to do with time the alleged actions appeared, but just
2  to the Inner Harbour, the Navigation Canal, the Industrial
3  Canal.
4     Now, we felt it made the allegations more likely to
5  result in dismissal. But, in any event, Your Honor, we would
6  hate to have to come in and start a pleading again -- file a new
7  responsive pleading.
8     THE COURT: What Mr. Bruno is representing to the
9  Court is that, the motions that are pending, unfortunately have
10 been pending for quite a while, to which the Court apologizes,
11 but there are extenuating circumstances which I won't go into
12 now. But, they will be moved on, hopefully in the near future.
13 This will not have any affect on those pending motions, is that
14 what you're telling me, Mr. Bruno?
15    MR. BRUNO: Yes, Judge. In fact, now that you've
16 allowed the amendment, it will be very easy because all you have
17 to do is dismiss Count 6. It's in one place. I mean, if that
18 should be your ruling.
19    THE COURT: That's what I'm saying, if I rule in favor
20 of the railroad -- (talking simultaneously and laughter).
21    MR. BRUNO: Oh, boy. If that should be -- whatever I
22 said, all I meant to say, in fact --
23    MR. TALBOT: In other words, the pending motions will
24 apply to --
25    THE COURT: Precisely, and the Court is so finding

1  right now.

2          MR. BROWN:  Your Honor, Galen Brown representing

3  Public Belt Railroad.  I just want to make it clear, we have the

4  same 12(B)(6) motions pending.

5          THE COURT:  I know.

6          MR. BROWN:  And I just spoke briefly with Mr. Bruno

7  and he agreed.

8          THE COURT:  I'm glad you're here so I can tell you,

9  this is a lot longer under advisement than the Court generally

10 does.  It's extenuating circumstances.

11         MR. BROWN:  Thank you, Your Honor.

12         MR. BRUNO:  And for everybody's ease, the way this is

13 now organized, Count 1, we just take out Zone 4, and Count 2, we

14 just take out everybody but the Government and that will solve

15 everybody's problem.

16         MR. TALBOT:  Is there a time limit set when I'm able

17 --

18         THE COURT:  Yes, good point.  When can you --

19         MR. BRUNO:  Tomorrow, Judge.  As you recall, this is

20 my motion to allow an amendment, so I will now file --

21         THE COURT:  You don't have to do it tomorrow.

22         MR. BRUNO:  As I said, now that it's clean, I can do

23 it in 24 hours.

24         THE COURT:  Well, why not Friday about 4:30?

25         MR. BRUNO:  Friday.  Yeah, it'll be done tomorrow.

1          THE COURT:  Don't kill yourself.

2          MR. BRUNO:  Done, Judge.

3          THE COURT:  I'd like a meeting August 21st at 10

4  o'clock to discuss with Mr. Treeby, Mr. Bruno, Mr. Hubbard, and

5  anybody else you think ought to be there.  Invite who you want,

6  but those are the people that about how we're going to proceed

7  with the class certification hearing; what do I need to --

8          MR. BRUNO:  Of course.

9          THE COURT:  I'll have it in my chambers, and Judge

10 Wilkinson is going to be there, and we'll try and hammer out as

11 best we can how we're going to conduct that hearing.  That's

12 August 21st at 10 o'clock.  We'll send you a minute entry to

13 that affect.

14         MR. BRUNO:  And it will be by invitation by

15 plaintiff's liaison, because I just -- we'll have to keep it --

16         THE COURT:  Yes, precisely.

17         MR. BRUNO:  -- manageable.

18         THE COURT:  I mentioned the people that I wanted, and

19 you can invite, you know, who you want.

20         All right?

21         MR. BRUNO:  Thank you, Judge.

22         THE COURT:  With that, we appreciate your time and

23 effort.

24         (At which time the proceeding was concluded.)

25

1                       CERTIFICATE

2          I, Pinkey Ferdinand, Official Court Reporter, United

3  States District Court, Eastern District of Louisiana, do hereby

4  certify that the foregoing is a true and correct transcript, to

5  the best of my ability and understanding, from the record of the

6  proceedings in the above-entitled and numbered matter.

7

8                       _____
                        Pinkey Ferdinand,
9                       Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25