IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
NO. 07-30273

In Re: IN THE MATTER OF THE COMPLAINT OF INGRAM BARGE
COMPANY, AS OWNER OF THE ING4727, PETITIONING FOR
EXONERATION FROM OR
LIMITATION OF LIABILITY
INGRAM BARGE COMPANY

Petitioner – Appellee

VERSUS

THE PARFAIT FAMILY, ASHTON R. O'DWYER, JR; WILSON SIMMONS;
PROCULA D. SIMMONS; TAMMY AMOS; ET AL.

Plaintiffs, Claimants and Third-Party Plaintiffs - Appellants

VERSUS

UNITED STATES OF AMERICA, by and through its agencies and
instrumentalities; UNITED STATES ARMY CORPS OF ENGINEERS; UNITED
STATES COAST GUARD; INGRAM BARGE CO.; UNIDENTIFIED PARTIES;
LAFARGE NORTH AMERICA INC.; JOSEPH C. DOMINO INC.; UNIQUE
TOWING INC.; NEW YORK MARINE & GENERAL INSURANCE CO.;
AMERICAN HOME INSURANCE CO.; INTERNATIONAL MARINE
UNDERWRITERS; AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION

Defendants - Appellees

ORIGINAL BRIEF ON BEHALF OF
APPELLANTS
THE PARFAIT FAMILY, ASHTON R. O'DWYER, JR.;
WILSON SIMMONS; PROCULA D. SIMMONS; TAMMY AMOS, ET AL.

Respectfully submitted,

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Ashton R. O'Dwyer, Jr.
Bar No. 10166
One Canal Place
365 Canal Street, Suite 2670
New Orleans, LA 70130
Tel. (504) 561-6561
Fax. (504) 561-6560
Attorney for Appellants**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed parties have

an interest in the outcome of this case.  These representations are made in order that the

Judges of this Court may evaluate possible disqualification or recusal.

**<u>PLAINTIFFS:</u>**

> **The Parfait Family**
> **Wilson Simmons**
> **Procula D. Simmons**
> **Tammy Amos**
> **Michael Green**
> **Helen Frank (individually and as Administratrix of the Succession of**
> **Richard Frank, and on behalf of any and all heirs, survivors, relatives**
> **and beneficiaries of the deceased),**
> **Michelle "Mink" Jones**
> **Louise Ragas**
> **Fayann Ragas**
> **Terrill Morris**
> **Linda Morris**
> **Vanesa Davis**
> **James Cook**
> **Daniel Davis**
> **Jeanette Williams**
> **Kenneth Williams**
> **Derrick Williams**
> **Ladanya Williams**
> **Cadorra Williams**
> **Valerie Williams, on her own behalf and on behalf of her minor**
> **children,**
> > **Chrishawn Williams**
> > **Jamon Williams, and**
> > **Tameka Williams**
> **Andrew Hill**
> **Maria Washington, on her own behalf and on behalf of her minor**
> **children,**
> > **Janisha Washington**
> > **Andrew Washington**
> > **Charles Washington**
> > **Mekhi Washington**
> **Tammy McFarland**
> **Joshua McFarland**
> **Kelly Augusta**

Artis Ulmer, Sr.
Ruth Ulmer
Artis Ulmer, Jr., on his own behalf and on behalf of his son,
  Roche Easpdron
Patricia Harris
Bernon Barnes
Charles Ulmer, Sr.
Charles Ulmer, Jr.
Derick Ulmer
Dennis Ulmer
Kevin McFarland
Charles Hollaway
Joseph Smith
Clarisa McCoy
Wardell Luter
Janet Luter
Christopher Luter and his wife
  Tracy Luter, on their own behalf and on behalf of their minor
children,
  Tranard Luter, and
  Crista Luter
Linda Molaison
Gail Brown, on her own behalf and on behalf of her minor children,
  Aaron Pulliam, and
  Brandon Pulliam
Shelia Martin
Keith Martin
Contrice Phipps
Reverend Curtis Coleman, Sr., on his own behalf and on behalf of his
entire Congregation and the Ephesian Missionary Baptist Church
Mary P. Mingo
Rachel Goldsmith
Gayle LeBlanc
Michael LeBlanc, and his spouse,
  Larice Taylor LeBlanc, on their own behalf and on behalf of their
minor child,
  Mika Jane LeBlanc
Jessie Arbuthnot
Curtis Coleman, Sr.
Curtis Coleman, Jr.
Jerome Coleman
Keith Coleman
Carnese Williams
Raymond Hunter
William Hunter
AndrewWilliams

**Eric Williams**
**Winston Williams**
**Paul Mosley, Sr.**
**Paul Mosley, Jr.**
**Brandon Mosley**
**Hope Mosely**
**Shaqual Mosley**
**Shannel Mosely**
**Ivan Mosley**
**Betty Mosley**
**Margarite Rochon**
**Raymond Hunter**
**Naomi Hunter**
**Vanessa Carter**
**Chris McCormick**
**Michele Armour**
**Monique Armour**
**Mitchell Armour III**
**Augustine Greenwood**
**Rosemary Greenwood, in her own behalf and on behalf of her minor children,**
**Jasemine and**
**Yasemine Greenwood**
**Reverend Curtis Coleman, Sr., on his own behalf and on behalf of his entire Congregation and the Ephesian Missionary Baptist Church**
**Mary P. Mingo**
**Rachel Goldsmith**
**Gayle LeBlanc**
**Michael LeBlanc, and his spouse,**
  **Larice Taylor LeBlanc, on their own behalf and on behalf of their minor child,**
  **Mika Jane LeBlanc**
**Jessie Arbuthnot**
**Curtis Coleman, Sr.**
**Curtis Coleman, Jr.**
**Jerome Coleman**
**Keith Coleman**
**Carnese Williams**
**Raymond Hunter**
**William Hunter**
**AndrewWilliams**
**Eric Williams**
**Winston Williams**
**Paul Mosley, Sr.**
**Paul Mosley, Jr.**
**Brandon Mosley**

**Hope Mosely**
**Shaqual Mosley**
**Shannel Mosely**
**Ivan Mosley**
**Betty Mosley**
**Margarite Rochon**
**Raymond Hunter**
**Naomi Hunter**
**Dorothy Saddler**
**Charles Harris**
**Keith Martin**
**Kellen Phipps**
**Mattie Allen**
**Vanessa Carter**
**Chris McCormick**
**Michele Armour**
**Monique Armour**
**Mitchell Armour III**
**Augustine Greenwood**
**Rosemary Greenwood, in her own behalf and on behalf of her minor children,**
**Jasemine and**
**Yasemine Greenwood**
**Louise Ragas**
**Fayann Ragas**
**Terrill Morris**
**Linda Morris**
**Vanesa Davis**
**James Cook**
**Daniel Davis**
**Jeanette Williams**
**Kenneth Williams**
**Derrick Williams**
**Ladanya Williams**
**Cadorra Williams**
**Valerie Williams, on her own behalf and on behalf of her minor children,**
  **Chrishawn Williams**
  **Jamon Williams, and**
  **Tameka Williams**
**Andrew Hill**
**Maria Washington, on her own behalf and on behalf of her minor children,**
  **Janisha Washington**
  **Andrew Washignton**
  **Charles Washington**

Mekhi Washington
Tammy McFarland
Joshua McFarland
Kelly Augusta
Artis Ulmer, Sr.
Ruth Ulmer
Artis Ulmer, Jr., on his own behalf and on behalf of his son,
  Roche Easpdron
Patricia Harris
Bernon Barnes
Charles Ulmer, Sr.
Charles Ulmer, Jr.
Derick Ulmer
Dennis Ulmer
Kevin McFarland
Charles Hollaway
Joseph Smith
Clarisa McCoy
Wardell Luter
Janet Luter
Christopher Luter and his wife
  Tracy Luter, on their own behalf and on behalf of their minor
children,
  Tranard Luter, and
  Crista Luter
Linda Molaison
Gail Brown, on her own behalf and on behalf of her minor children,
  Aaron Pulliam, and
  Brandon Pulliam
Shelia Martin
Keith Martin
Contrice Phipps
Daniel Weber, individually and in his capacity as Administrator of the
Succession of his spouse, Rosetta Marrero, and as personal
representative of the deceased, and on behalf of any and all heirs,
survivors, relatives and beneficiaries of the deceased, known or
unknown
Lamont Marrero
Edward Marrero
Renzoll Marrero
Peter Thibodeaux
Agnes Mae Recasner
Quiana Whitney
Carl Recasner
Bobby Recasner
Tyrone Moffett and his fiancé,

**Ashley Robinson, on their own behalfs and on behalf of their minor child,**
**Ty' Janie Moffett**
**Bruce Hayes**
**Marinesha Green, on her own behalf and on behalf of her minor child,**
**Bruce Hayes III**
**Emma Martin**
**Ollie Rickney**
**Ryan Ward**
**Tinisha Sims, on her own behalf and on behalf of her minor children,**
**Kiyera Sims, and**
**Garnycia Reed**
**Broderick Mack**
**Antonio Green**
**Ebony Gordon**
**Melba Gibson**
**Emmanuel Joseph LeBlanc**
**Gertrude LeBlanc**
**Ardell Joseph LeBlanc**
**LeShaun Monique LeBlanc**
**Cyndria LeBlanc**
**Arianya LeBlanc**
**Paul Mosley**
**Betty Mosely**
**Troy Louis, and his spouse,**
**Erika Louis, on their own behalfs and on behalf of their minor children,**
**Gregory Williams,**
**Erik Louis,**
**Darrion Louis,**
**Shekinah Louis**
**Raymond Joseph**
**Claudia Rattler**
**Terry Rattler**
**Renelle Rattler**
**Ruth B. Ragas**
**Paul J. Ragas**
**Jason P. Ragas**
**Walter J. Morgan**
**Katie L. Ragas**

## DEFENDANTS, PETITIONERS AND THIRD-PARTY DEFENDANTS:

The United States of America which, at all times pertinent, acted by and through its agency and instrumentality the United States Army Corps of Engineers;

Lafarge North America, Inc.;

Ingram Barge Company;

New York Marine & General Insurance Company;

American Home Insurance Company;

International Marine Underwriters;

American Steamship Owners Mutual Protection and Indemnity Association;

The State of Louisiana;

The Department of Transportation and Development, State of Louisiana;

Johnny D. Bradberry;

The Board of Commissioners for the Orleans Levee District;

James P. Huey;

The Sewerage and Water Board of New Orleans;

C. Ray Nagin;

The Board of Commissioners for the Lake Borgne Basin Levee District;

George E. Lopez;

The Board of Commissioners of the Port of New Orleans;

Joseph C. Domino, Inc.;  and

Unique Towing, Inc.

**LAW OFFICES OF**
**ASHTON R. O'DWYER, JR.**

_____

**Ashton R. O'Dwyer, Jr.**
**Bar No. 10166**
**821 Baronne Street**
**New Orleans, LA 70113**
**Tel. (504) 679-6166**
**Fax. (504) 581-4336**
**Attorney for Appellants**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

To the knowledge of undersigned counsel for appellants, the instant appeal presents This Honorable Court with one of its first opportunities to adjudicate the rights of litigants with respect to claims sounding in tort brought by the entirely innocent citizenry of the Greater New Orleans Metropolitan Area against potentially liable parties, including particularly the United States of America.  Appellants respectfully submit that Hurricane KATRINA and its aftermath presented the American Judicial System with a "unique" situation never envisioned by the drafters of the Federal Tort Claims Act [28 U.S.C. §§1346(b), 2771-2680 (1976)], when the "administrative claims procedures" were incorporated therein and enacted.  Appellants respectfully submit that his case presents the Court with a golden opportunity to "get back to basics" in an area of law in which the Court of Appeals for the Fifth Circuit has traditionally "led, not followed", and more particularly to address whether the decision of the Learned District Judge appealed from truly fostered the stated goal of the FTCA, <u>viz.</u>, "more fair and equitable treatment of private individuals and claimants when they deal with the Government".[1]   In all probability, this will not be the last time that counsel for the litigants in this case will appear before Your Honors.  While the factual and legal issues in this particular appeal should be addressed with plain common sense, undersigned counsel for appellants respectfully submits that oral argument should be granted if, for no other reason, than to permit counsel to attempt to begin to establish rapport with the Court.  It is also respectfully submitted that oral argument will be helpful to the Court, not only to reach a just adjudication in this case, but also to render an opinion which will guide District Judges in their future handling of all Victims of KATRINA litigation.

---

[1]   <u>Erxleben v. United States</u>, 668 F.2d 268, 273 (7th Cir. 1981).

## TABLE OF CONTENTS

PAGE

CERTIFICATE OF INTERESTED PERSONS ........................................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................... ix

TABLE OF CONTENTS ....................................................................……x

CITATION OF AUTHORITIES ....................................................xii, xiii

STATEMENT OF JURISDICTION...............................................……1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................2

STATEMENT OF THE CASE ...........................................................……4

a. Course of Proceedings and Disposition in Court Below ...........................................4

b. Statement of Facts......................................................................................5

SUMMARY OF ARGUMENT ...................................................................13

ARGUMENT...................................................................................16

      I.      WHETHER ADMISSIONS AGAINST INTERESTS BY THE FORMER COMMANDER OF THE U.S. ARMY CORPS OF ENGINEERS, LT. GENERAL CARL STROCK, CONSTITUTE AN ADMISSION OF LIABILITY BY THE UNITED STATES OF AMERICA IN THIS LITIGATION, THUS RENDERING ANY ADMINISTRATIVE CLAIM "REQUIREMENT" (WHICH IS ASSUMED FOR THE SAKE OF ARGUMENT ONLY) MOOT AND UNNECESSARY, WITH THE ONLY REMAINING ISSUE TO BE ADJUDICATED BEING THE AMOUNT(S) OF DAMAGES TO WHICH APPELLANTS ARE ENTITLED?…………………………16

      II.     WHETHER THE FILING OF MOTION(S) TO DISMISS BY THE UNITED STATES OF AMERICA IN RELATED "VICTIMS OF KATRINA" LITIGATION, IN ORDER TO INVOKE SOVEREIGN IMMUNITY PURSUANT TO §702(C) OF THE FLOOD CONTROL ACT OF 1928, AS WELL AS THE DUE CARE AND DISCRETIONARY FUNCTION EXCEPTIONS TO THE WAIVER OF SOVEREIGN IMMUNITY CONTAINED IN THE FTCA, CONSTITUTE DENIALS OF APPELLANTS' CLAIMS OR OTHERWISE RENDERED THE REQUIREMENT THAT

APPELLANTS EXHAUST ADMINISTRATIVE REMEDIES
UNDER THE FTCA FUTILE?...............................................18

III.   WHETHER THE FACT THAT APPELLANTS' CLAIMS HEREIN
WERE ASSERTED BY WAY OF THIRD-PARTY COMPLAINT
CONSTITUTED AN EXCEPTION TO ANY ADMINISTRATIVE
CLAIM "REQUIREMENT"? SEE: 28 U.S.C. §2675(A)............19

IV.   WHETHER THE CORPS OF ENGINEERS' (AND/OR FEMA'S)
FAILURE TO MAKE ANY REASONABLE EFFORT TO ADJUST
ADMINISTRATIVE CLAIMS SUBMITTED TO THEM SINCE
HURRICANE KATRINA PURSUANT TO THE FTCA AND/OR
THE ADMIRALTY EXTENSION ACT RENDERED ANY
ADMINISTRATIVE CLAIM "REQUIREMENT" FUTILE AND
UNNECESSARY?............................................................20

V.   WHETHER APPELLANTS HAVE PROPERLY INVOKED THE
COURT'S ADMIRALTY AND MARITIME JURISDICTION, SUCH
THAT THE SUITS IN ADMIRALTY ACT IS APPLICABLE,
WHICH CONTAINS NO ADMINISTRATIVE CLAIM
REQUIREMENT?............................................................22

VI.   WHETHER APPELLANTS HEREIN HAVE ALREADY
SATISFIED ANY ADMINISTRATIVE CLAIM
"REQUIREMENT"?..........................................................24

VII.   ALTERNATIVELY, WHETHER THIS HONORABLE COURT
HAS THE INHERENT POWER TO FASHION SOME EQUITABLE
REMEDY FOR APPELLANTS UNDER THE UNIQUE
CIRCUMSTANCES PRESENTED BY "VICTIMS OF KATRINA"
LITIGATION, WHICH WILL ALLOW APPELLANTS TO AVOID
THE UNDULY BURDENSOME ADMINISTRATIVE CLAIMS
REQUIREMENTS OF THE FTCA AND THE ADMIRALTY
EXTENSION
ACT?.........................................................................26

CONCLUSION ...................................................................................27

CERTIFICATE OF SERVICE ...............................................................28

<u>**CITATION OF AUTHORITIES**</u>

<u>**PAGE**</u>

<u>**Cases**</u>

<u>Adams v. United States</u>, 615 F.2d 284 (5th Cir. 1980)................................................................ **15, 25**

<u>Avery v. United States</u>, 680 F.2d 608 (1982) ............................................................**15**

<u>Erxleben v. United States</u>, 668 F.2d 268 (7th Cir. 1981).................................................. **15**

<u>Executive Jet Aviation, Inc. v. United States</u>, 507 F.2d 508, 515 (6th cir. 1974) ........................ **15**

<u>Gregory v. Mitchell</u>, 634 F.2d 499 (5th Cir. 1981)........................................................ **22**

<u>Martinez v. United States</u>, 728 F.2d 694 (5th Cir. 1984)................................................ **16**

<u>McNeil v. United States</u>, 508 U.S. 106, 113 S.Ct. 1980 (1993) .................................................. **21, 26**

<u>Wardsworth v. United States</u>, 721 F.2d 503 (5th Cir. 1983)........................................... **16**

<u>Youngblood v. Federal Deposit Insurance Corporation,</u>
29 F.3d 225 (5th cir. 1994) ...................................................................... **16**

<u>**Statutes**</u>

28 U.S.C. §1291.................................................................................................1

28 U.S.C. §1292(a)(3)....................................................................... **1**

28 U.S.C. §2675............................................................................... **13, 19**

28 U.S.C. §2680..................................................................................**14**

§702(c) of the Flood Control Act of 1928 ..........................................................**13, 18**

Suits in Admiralty Act
(46 U.S.C. §741, et seq.)................................................................................... **14**

Rule 14(c), Federal Rules of Civil Procedure..............................................**19**

Supplemental Rule C(6)(b)(i) of the Supplemental Rules for
Certain Admiralty and Maritime Claims .......................................................**20**

**Publications:**

Federal Tort Claims Act:  Notice of Claim Requirement,
67 Minnesota Law Review 513 (1982).........................................................**14**

Admiralty Extension Act
(46 U.S.C. §701, et seq.) **.................................................................14, 22, 23**

Zillman, Presenting a Claim Under the Federal Tort Claims Act,
43 Louisiana Law Review 961 (1983)........................................................ **14**

## <u>STATEMENT OF JURISDICTION</u>

This Court has jurisdiction over this appeal by virtue of 28 U.S.C. §1291 and pursuant to 28 U.S.C. §1292(a)(3), the latter of which permits interlocutory appeals in admiralty cases.

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

This case is closely related to Case No. 06-30705, already pending on the docket of This Honorable Court, and already fully briefed.   Indeed, appellants respectfully submit that the issues in the two cases (Case Nos. 06-30705 and 07-30273) are so closely related that they should be consolidated.

I.      Whether admissions against interests by the former Commander of the U.S. Army Corps of Engineers, Lt. General Carl Strock, constitute an admission of liability by the United States of America in this litigation, thus rendering any administrative claim "requirement" (which is assumed for the sake of argument only) moot and unnecessary, with the only remaining issue to be adjudicated being the amount(s) of damages to which appellants are entitled?

II.     Whether the filing of Motion(s) to Dismiss by the United States of America in related "Victims of KATRINA" litigation, in order to invoke sovereign immunity pursuant to §702(c) of the Flood Control Act of 1928, as well as the due care and discretionary function exceptions to the waiver of sovereign immunity contained in the FTCA, constitute denials of appellants' claims or otherwise rendered the requirement that appellants exhaust administrative remedies under the FTCA futile?

III.    Whether the fact that appellants' claims herein were asserted by way of third-party complaint constituted an exception to any administrative claim "requirement"?  See 28 U.S.C. §2675(a).

IV.   Whether the Corps of Engineers' (and/or FEMA's) failure to make any reasonable effort to adjust administrative claims submitted to them since Hurricane KATRINA pursuant to the FTCA and/or the Admiralty Extension Act rendered any administrative claim "requirement" futile and unnecessary?

V.    Whether appellants have properly invoked the Court's admiralty and maritime jurisdiction, such that the Suits in Admiralty Act is applicable, which contains no administrative claim requirement?

VI.   Whether appellants herein have already satisfied any administrative claim "requirement"?

VII.  Alternatively, whether This Honorable Court has the inherent power to fashion some equitable remedy for appellants under the unique circumstances presented by "Victims of KATRINA" litigation, which will allow appellants to avoid the unduly burdensome administrative claims requirements of the FTCA and the Admiralty Extension Act?

## <u>STATEMENT OF THE CASE</u>

(a)      <u>**Course of Proceedings and Disposition in Court Below:**</u>

As has previously been represented to This Honorable Court in Case No. 06-30705 on the Court's docket, a case which already has been fully briefed, appellants wear several hats in this consolidated litigation, including those of "plaintiffs", "claimants" and "third-party plaintiffs".  Appellants' discreet claims against the United States of America which are directly involved in this particular appeal are to be found in Record Document Nos. 250 and 253 which, although strictly applying to the proceedings seeking exoneration from or limitation of liability on behalf of Unique Towing, Inc. and Joseph C. Domino, Inc. (Civil Action No. 06-3313), have been docketed in the "lead" consolidated case in the District Court, bearing Civil Action No. 05-4419.

The United States of America filed a Motion to Dismiss appellants' claims against the Government on jurisdictional grounds.  See Record Document No. 418 in Civil Action No. 05-4419.

The Learned District Judge granted the Government's motion on the briefs, noting "The Parfait Plaintiffs have not filed an opposition to motion".  (Record Document No. 505.

Thereafter, appellants filed a detailed "Rule 59 and/or Rule 60 Motion for Reconsideration, New Trial, Amendment of Judgment and/or Relief from Judgment or Order" (Record Document No9. 523, with attachments), which the Learned District Judge denied in an Order and Reasons.  (Record Document No. 537).

This appeal followed with the filing of a timely and proper Notice of Appeal. (Record Document No. 556).

**b)**     <u>**Statement of Facts:**</u>

Appellants in this case wear two (2) hats:

1.     They are "Claimants" in the proceedings seeking exoneration from or limitation of liability filed on behalf of Unique Towing, Inc. and Joseph C. Domino, Inc.  (Civil Action No. 06-3313), whose employees last handled the Barge ING-4727, which broke free from her moorings, and which Appellants allege caused or contributed to the havoc wrought in the Lower Ninth Ward;  and

2.     They are "Third-Party Plaintiffs" in Unique's and Domino's limitation proceeding, <u>supra</u>.

Appellants are former residents of the Lower Ninth Ward which was a largely Afro-American populated neighborhood located on the East Side of the Industrial Canal in Orleans Parish.  The neighborhood was rich in culture and personality and represented one of the truly "unique" things which gave New Orleans and the Greater Metropolitan Area "character".   The Lower Ninth Ward was, quite literally, destroyed during Hurricane KATRINA and its aftermath – not by an act of God, but by a litany of faults committed by human beings to whom the residents of the Lower Ninth Ward misguidedly entrusted the safeguarding of their very lives and property.  Appellants include the survivors of persons who died during KATRINA or its aftermath, people who suffered bodily injury, including injuries as a result of immersion in the "toxic soup" which inundated and polluted the Lower Ninth Ward, people who lost their property, both real and personal, or who suffered property damage, people who suffered fear,

mental anguish and emotional distress, and people who suffered damage as a result of pollution, which must now be remediated and cleaned up.

The Lower Ninth Ward was inundated by water from the Industrial Canal (a/k/a "The Inner Harbor Navigation Canal"), which connects the Mississippi River and Lake Pontchartrain, because two (2) breaches occurred in the retaining wall structures along the East Side of the Canal during KATRINA.  Appellants allege that one of the breaches was proximately caused by the Ingram Barge ING-4727, although the other breach, which was North of the breach caused by Ingram's barge, may have occurred without any "help" from a vessel or watercraft.[2]

Appellants have alleged negligence in the pre-storm securing of the Barge ING-4727 by the barge owner, Ingram Barge Company, and by the party having care, custody and control of the barge prior to and during the storm, Lafarge North America Inc. Appellants also have alleged negligence by Unique and Domino.

However, in addition to bringing claims against the barge owner, the entity having the barge in its care, custody and control, and their insurers, appellants also sued the United States of America through its agency and instrumentality, the U.S. Army Corps of Engineers,[3] by way of Third-Party Complaint.  (Record Document Nos. 250 and 253). Appellants' allegations and claims against the Government in Victims of KATRINA litigation have evolved, and undergone metamorphoses over time, as more information

---

[2]   However, the Court should be aware that eyewitness testimony which was recently taken in these consolidated cases revealed that the second breach did not actually occur until <u>AFTER</u> the breach caused by the Ingram barge occurred, although some overtopping and under-seepage had been observed at the second breach site before the barge came through the retaining wall structure.  This eyewitness testimony raises the possibility that the second breach was at least contributed to by the Ingram barge.
[3]   Although appellants originally also made allegations against the United States of America through the U.S. Coast Guard, those allegations are hereby withdrawn.

concerning the causes of the retaining wall failures and flooding has become available,

and have been pleaded in this case as follows:

**SPECIFIC ALLEGATIONS AGAINST THE THIRD-PARTY
DEFENDANTS WHO WERE RESPONSIBLE FOR THE
DESIGN, CONSTRUCTION, OPERATION, INSPECTION,
MAINTENANCE AND DREDGING OF THE WATERWAYS**

### XI.

The Mississippi River Gulf Outlet ("MRGO") is a navigation channel designed, constructed, operated, inspected and maintained by certain Third-Party Defendants. The MRGO is a 76-mile navigation channel oriented in a northwestern-southeastern direction, bisecting the marshes of Lower St. Bernard and the shallow waters of Chandeleur Sound. It was originally authorized to a depth of 36 feet, a surface width of 650 feet, and bottom width of 500 feet. Since the construction of the MRGO was completed in 1965, the MRGO's banks have eroded so that the surface width now averages 1,500 feet, well-beyond the dimensions originally authorized (read "mandated") by Congress.

### XII.

The very existence of the MRGO directly caused the destruction of the coastal marshes and wetlands which had previously served as a "buffer" to hurricane winds and storm surge, the effect being that the MRGO became a "hurricane highway", aimed straight at the heart of St. Bernard and the Greater New Orleans Metropolitan Area. Additionally, dredging activity in the MRGO has contributed to the widening of the waterway and to the destruction of the "buffer" marshes and wetlands.

### XIII.

When or shortly after Hurricane KATRINA made landfall in Louisiana, levees along the MRGO failed in numerous places along its length, directly flooding most of St. Bernard Parish. The existence of and the eroded condition of the MRGO intensified KATRINA's initial storm surge, raised the height of the wall of water which accompanied it, and increased the velocity of the surge experienced by levee structures which were intended to resist hurricane effects, including the levee and floodwall structures which should have contained the navigable waters described herein.

**XIV.**

The Gulf Intracoastal Waterway, from its junction with the MRGO and eastward to its outlet into Lake Borgne and Mississippi Sound, is a dredged small craft and barge channel approximately 400 feet in width, with a project depth of 12 feet. West of the MRGO junction, however it becomes a ship channel and widens to 800 feet and 32-35 feet in depth to accept MRGO ship traffic. The intersection of the wider and deeper Gulf Intracoastal Waterway with the Inner Harbor Navigation Canal (a/k/a the "Industrial Canal") causes a narrowing funnel shape into the Industrial Canal, which has a depth of approximately 30 feet, but a width of approximately 400 feet, and which is blocked at its south end by locks: thus there exists a waterway system which becomes progressively narrower and shallower as it proceeds toward the New Orleans Ninth Ward, heightening any storm surge from the north and east into the Industrial Canal.

**XV.**

During Hurricane KATRINA, the "intensification" or "funnel effect" described in the preceding Article permitted storm surge to overtop levees and retaining wall structures, leading to scouring on the landward side of the levees, which in turn undermined the earthen levees along the MRGO, the Gulf Intracoastal Waterway and the Industrial Canal, and which resulted in inundation by water of Orleans and St. Bernard Parishes that would not have occurred but for the existence of and deteriorated condition of the MRGO and the inadequacies of the levee and retaining wall structures along the MRGO, the Gulf Intracoastal Waterway and the Industrial Canal, all of which were defectively and negligently designed, constructed, operated, inspected, maintained and dredged by certain Third-Party Defendants, in violation of acts of Congress and in violation of Third-Party Defendants' own regulations, manuals and procedures.

**XVI.**

Claimants and Third-Party Plaintiffs specifically aver that certain Third-Party Defendants negligently, and with malfeasance, misfeasance and nonfeasance, failed in their duty to ensure the competent design, construction, operation, inspection, maintenance and dredging of an entire navigable waterway system, which included the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway and the Inner Harbor Navigation Canal (a/k/a "The Industrial Canal"), and their environs and levees, which were defectively and negligently designed, constructed, operated, inspected, maintained, and dredged, the result being that certain Third-Party Defendants negligently failed to contain navigable waters of the United States, in violation of Congress and in violation of Third-Party

Defendants' own regulations, manuals and procedures, and in so doing also breached the implied warranty of workmanlike performance which was owed each inhabitant of the Greater New Orleans Metropolitan Area by Third-Party Defendants.

\* \* \*

## ADDITIONAL
## SPECIFIC ALLEGATIONS AGAINST THE
## UNITED STATES OF AMERICA
## THROUGH THE U.S. ARMY CORPS OF ENGINEERS

## XXI.

Claimants and Third-Party Plaintiffs also assert a separate cause of action against the United States of America pursuant to the general maritime law and, alternatively, pursuant to Louisiana State law, namely a cause of action seeking entitlement to money damages, as well as sanctions, as a result of wholesale destruction and spoliation of evidence by the United States of America, acting by and through its agency and instrumentality, the U.S. Army Corps of Engineers and its contractors. More particularly, Claimants and Third-Party Plaintiffs aver that the U.S. Army Corps of Engineers ordered the wholesale destruction of tangible evidence which included steel sheet piles, including their connecting or interlock mechanisms, metallurgical and concrete "fingerprints", concrete monolith panels, including the bottoms of the panels, where they made contact with the steel sheet piles, the edges or sides of the panels, containing their water stop systems, and the water stop systems themselves, at various locations along the waterways being the subject of this action, and including particularly the East side of the Inner Harbor Navigation Canal (a/k/a The Industrial Canal), as well as at other locations. As a direct result of the aforesaid destruction and spoliation of evidence, Claimants and Third-Party Plaintiffs, and those similarly situated, aver entitlement to money damages as well as the imposition of sanctions against the United States of America. Claimants and Third-Party Plaintiffs further aver that an appropriate sanction under the facts and circumstances of this case would be the striking of affirmative defenses asserted or to be asserted on behalf of the United States of America, including particularly the striking of the defense of immunity from liability to Claimants and Third-Party Plaintiffs, and those similarly situated, under any legal theory pleaded or to be pleaded by the United States of America in this and/or in related litigation.

\* \* \*

**ADDITIONAL**
**SPECIFIC ALLEGATIONS APPLICABLE**
**TO OTHER SPECIFIC THIRD-PARTY DEFENDANTS**

**XXIII.**

As to Third-Party Defendants, The United States of America, the Department of Transportation and Development, State of Louisiana, Secretary Bradberry, the Board of Commissioners for the Orleans Levee District, James P. Huey, the Sewerage and Water Board of New Orleans, C. Ray Nagin, the Board of Commissioners of the Lake Borgne Basin Levee District, George E. Lopez and the Board of Commissioners of the Port of New Orleans, Claimants and Third-Party Plaintiffs also aver the following facts in support of their allegations of liability for fault, neglect, strict liability and/or breach of the warranty of workmanlike performance by the said Third-Party Defendants:

1) Failing to discharge their statutory obligations as outlined in The Rivers and Harbors Appropriation Act of 1899 (33 U.S.C. §401, et seq.) and in Titles 33, 36 and 38 of the Louisiana Revised Statutes.

2) Failing to have or implement competent management structures, rules procedures, standards, professional peer review and oversight structures and training programs.

3) Lobbying for and approving, in 1985, construction of "The High Level Plan" rather than "The Barrier Plan".

4) Failing to coordinate with other federal agencies and with other State and local agencies, and with each other, so that responsibility for cooperation concerning levees, drainage, navigation and flood control, and for competent inspection and maintenance of completed portions of the Lake Pontchartrain and Vicinity Hurricane Protection Project, as well as other projects, were clearly spelled out.

5) Issuing improvident "turnover" letters and ignoring the receipt of such letters.

6) Selecting a ridiculously low factor of safety for levees and retaining walls in a highly populated urban area.

7) Failing to order and obtain proper and reliable soils boring data.

-- 10 --

8)      Failure to properly anticipate or project reasonable wave run-up or surge during the design and construction phase.

9)      Failure to properly construct stable levees, so that levee cross sections were inadequate in height and breadth.

10)     Negligently building I-walls in a highly populated urban area.

11)     Using improper control data for elevations.

12)     Failing to properly train employees and to coordinate with each other in order to competently discharge the statutory duties of designing, constructing, operating, inspecting and maintaining the levee systems.

13)     Failing to competently inspect and maintain the levee systems or maintain proper records addressing inspection and maintenance.

14)     Failing to remedy obviously deficient conditions in the levee systems, which proper inspection should have disclosed.

15)     Institutionalizing a complete lack of cooperation and coordination between and among each other.

16)     Negligently dredging the navigable waterways identified herein which eliminated any factor of safety in the original designs for the levee and retaining wall structures.

17)     Misdirecting funds which should have been earmarked for flood control projects and/or flood-related projects to other projects, in violation of law.

18)     Focusing money and resources on non-flood-protection activities.

19)     Failing to remedy levees which were known to be below design height.

20)     Failing to have and/or to follow competent emergency operations plans, including the failure to stockpile materials for use in an emergency.

21) Failing to learn any lessons from prior hurricane exercises, including particularly the Hurricane PAM exercise, among others.

22) Establishing an Emergency Operations Center in a flood plain.

23) Failing to have a clear understanding with each other about who was responsible for what, when there was a problem.

24) Failing to establish and have competent Engineering Staff(s), and in a sufficient number, to do what the law required them to do.

25) Constructing earthen levees with unsuitable materials.

26) Failing to perform proper soils analyses.

27) Using sheet piles which were of an insufficient length, and driving them to an insufficient depth.

28) Failing to armor the landside of the levees and retaining wall structures, which permitted erosion of the landside embankment when predictable overtopping occurred.

Plaintiffs reserve the right to amend the foregoing Article when the facts become more fully known.

It was the above and foregoing properly pleaded claims against the United States of America which were summarily dismissed by the Learned District Judge in this case, an erroneous ruling from which aggrieved appellants now appeal.

## SUMMARY OF THE ARGUMENT

The focal issue in this appeal is whether appellants, as a prerequisite to the Court's entertaining jurisdiction over their claims against the United States of America, must have complied with the administrative claims procedures outlined in the Federal Tort Claims Act, and more particularly in 28 U.S.C. §2675.

Appellants first aver that, as a result of binding admissions of liability, and admissions against interests, made by the former Commander of the U.S. Army Corps of Engineers, Lt. Gen. Carl Strock, the United States is already bound to an admission of liability, rendering any claim procedure (other than to establish appellants' damages) moot and futile.

Alternatively, appellants aver that the litigation positions taken by the United States of America in "Victims of KATRINA" litigation, namely that no one is legally responsible to anyone for anything, and by moving to dismiss all litigation by virtue of Section 702(c) of the Flood Control Act of 1928, and by virtue of the due care and discretionary function exceptions to the waiver of sovereign immunity contained in the Federal Tort Claims Act, the United States has, in effect, already denied appellants' claims, rendering compliance with any administrative claim procedure moot and futile.

Alternatively, appellants aver that they have asserted claims against the Government by way of third-party complaint, so even if the Federal Tort Claims Act is applicable to this case, the administrative claims requirements do not apply to claims asserted by way of third-party complaint.  See 28 U.S.C. §2675(a).

If admiralty and maritime jurisdiction exists for appellants' claims against the Government, then the provisions of the Federal Tort Claims Act are inapplicable to the

case.   28 U.S.C. §2680.   However, even if the Court determines that admiralty and maritime jurisdiction exists, if the Admiralty Extension Act (46 U.S.C. §740) constitutes the Government's waiver of sovereign immunity, rather than the Suits in Admiralty Act (46 U.S.C. §741, et seq.), then appellants must comply with the AEA's administrative claims requirements.   Appellants contend that the Admiralty Extension Act is inapplicable to this case, because no agency of the Federal Government owned or operated the vessel involved (a barge owned by a third-party).   Rather, appellants maintain that the Government's waiver of sovereign immunity in this case is the Suits in Admiralty Act (46 U.S.C. §741, et seq.), which has no administrative claim requirement.

Lastly, even if This Honorable Court should reject all of appellants' arguments, appellants respectfully submit that they have submitted valid administrative claims to the Government, and more than six (6) months have elapsed since submission of the claims, rendering their claims in this action timely and proper.

Alternatively, the Court has inherent power to fashion inequitable remedy which does justice to appellants, who are totally innocent of any wrongdoing and who deserve redress of grievances.

Appellants respectfully submit that the Court should be guided in deciding the factual and legal issues in this appeal by the contents of two (2) Law Review Articles:

1)   Federal Tort Claims Act:  Notice of Claim Requirement, 67 Minnesota Law Review 513 (1982);  and

2)   Zillman, Presenting a Claim Under the Federal Tort Claims Act, 43 Louisiana Law Review 961 (1983).

The axioms developed in the cited Law Review Articles, which coincidentally also constitute the law in this area in the Fifth Circuit, are summarized as follows:

1)      The FTCA was intended to provide for "more fair and equitable treatment of private individuals and claimants when they deal with the Government."[4]

2)      The statute was "intended to provide a framework conducive to the administrative settlement of claims, not to provide a basis for a regulatory checklist which, when not fully observed, permits the termination of claims regardless of their merits."[5]

3)      "The purpose of the [mandatory administrative claims procedure] was not to make recovery from the Government technically more difficult."[6]

4)      The "requirements" of section 2675 and of section 2672 are "independent".[7]

5)      "An individual with a claim against the United States, therefore, satisfies section 2675's requirement that `the claimant shall have first presented the claim to the appropriate Federal agency' if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claims."[8]

6)      An agency's demand for anything more than a written and signed statement setting out the manner in which the injury was received, enough details to enable the agency to begin its own investigation and a claim for money damages is unwarranted and unauthorized.[9]  (emphasis supplied).

7)      Section 2675(a) was not intended to allow an agency to insist on proof of a claim to its satisfaction before the claimant becomes entitled to a day in court.  To so hold would permit federal defendants to be judge in their own cause by the initial determination of a claim's insufficiency.  The result would not be consistent with the congressional purpose of "providing for more fair and equitable treatment of private individuals and claimants when they deal with the Government."[10]

---

4   Erxleben v. United States, 668 F.2d 268 (7th Cir. 1981).
5   Ibid.
6   Adams v. United States, 615 F.2d 284 (5th Cir. 1980), quoting from Executive Jet Aviation, Inc. v. United States, 507 F.2d 508, 515 (6th cir. 1974).
7   Ibid.
8   Ibid.
9   Ibid.
10  Avery v. United States, 680 F.2d 608 (9th Cir. 1982) and authorities cited therein.

8)      Agencies were not intended to bar cases involving difficult issues from federal court by turning their difficulty against the claimants.[11]

9)      Federal court power does not depend on whether a claimant has successfully navigated his or way through the gauntlet of the administrative settlement process, which, according to the vagaries of the claims agent, may touch picayune details, imponderable matters, or both.[12]

10)     This Honorable Court has not required plaintiffs to specifically enumerate legal theories of recovery in their administrative claims.[13]

11)     The exaltation into a jurisdictional basis of the non-statutory administrative requirement of a sum certain in the administrative claim has been criticized as beyond the statutory intent and unnecessarily harsh and unnecessary in instances, especially where no administrative purpose is served by requiring an obviously inflated "sum certain" where there is honest uncertainty as to the amount of the claim.[14]

12)     This Honorable Court has been "somewhat more lenient" than other courts in interpreting the "sum certain" requirement.[15]

## ARGUMENT

**MAY IT PLEASE THE COURT:**

I.      **WHETHER ADMISSIONS AGAINST INTERESTS BY THE FORMER COMMANDER OF THE U.S. ARMY CORPS OF ENGINEERS, LT. GENERAL CARL STROCK, CONSTITUTE AN ADMISSION OF LIABILITY BY THE UNITED STATES OF AMERICA IN THIS LITIGATION, THUS RENDERING ANY ADMINISTRATIVE CLAIM "REQUIREMENT" (WHICH IS ASSUMED FOR THE SAKE OF ARGUMENT ONLY) MOOT AND UNNECESSARY, WITH THE ONLY REMAINING ISSUE TO BE ADJUDICATED BEING THE AMOUNT(S) OF DAMAGES TO WHICH APPELLANTS ARE ENTITLED?**

In their First Supplemental and Amending Third-Party Complaint (Record Document No. 253), appellants pleaded as follows:

---

[11] Ibid.
[12] Ibid.
[13] Youngblood v. Federal Deposit Insurance Corporation, 29 F.3d 225 (5th Cr. 1994).
[14] Martinez v. United States, 728 F.2d 694 (5th Cir. 1984) and authorities cited therein.
[15] Wardsworth v. United States, 721 F.2d 503 (5th Cir. 1983) and cases cited therein.

### XXI (A).

Claimants and Third-Party Plaintiffs aver that the United States of America has already conceded liability to plaintiffs in this case, through binding admissions made since Hurricane KATRINA by the Commander of the U.S. Army Corps of Engineers, Lt. Gen. Carl Strock, which are pleaded herein by reference thereto, as if copied herein *in extenso*. The Attorney-in-Fact for Claimants and Third-Party Plaintiffs herein has made a Freedom of Information Act request for the "official" binding admissions against the interests of the Government by Gen. Strock, but the U.S. Army Corps of Engineers is in default of responding to that properly perfected FOIA request. In the meantime, Claimants and Third-Party Plaintiffs aver that Gen. Strock has been quoted in the Media as having admitted the following:

> We now have concluded we had problems with the design of the structure.
>
> We had hoped that wasn't the case, but we recognize it is the reality.

These clear admissions of liability and admissions against interests were addressed by the Learned District Judge in the Order and Reasons appealed from as follows:

> In opposition to the motion to dismiss, the Parfait Plaintiffs argued that they should not be required to submit an administrative claim in order to pursue their claims against the United States in this Court. First, they argue that the Commander of the United States Army Corps of Engineers ("USACE"), Lt. Gen. Carl Strock admitted liability on the part of the United States and that this allegedly irrevocable admission excuses them from the administrative remedy requirement of the Federal Tort Claims Act ("FTCA"). The Parfait Plaintiffs have provided little more than media reports in which Lt. Gen. Carl Strock stated that there were design problems with the structure.

The Order and Reasons were signed by the Learned District Judge on February 12, 2007. However, on August 22, 2006, a formal Freedom of Information Act request had been made to the U.S. Army Corps of Engineers designed to obtain a copy of the "official transcript" containing Lt. Gen. Strock's statements. However, the Corps of

Engineers has ignored appellants' FOIA request for the "official transcript".   See undersigned counsel's FOIA request to the U.S. Army Corps of Engineers of August 22, 2006, attached and marked for identification as Exhibit No. 1.   This FOIA request remains unresponded to and will form part of the causes of action asserted in a separate Freedom of Information Act litigation filed by the undersigned in the District Court bearing Civil Action No. 06-1850.

Contrary to the characterization by the Learned District Judge, the admissions by Lt. Gen. Strock are significantly more than mere "media reports".   Lt. Gen. was the Commander of the U.S. Army Corps of Engineers.   His admissions represent the first time that anyone connected with the Corps of Engineers has admitted any fault, much less fault with respect to the very structures which are involved in the flooding of the Greater New Orleans Metropolitan Area.   Appellants respectfully submit that This Honorable Court should treat Lt. Gen. Strock's admissions for what they are:  admissions of liability and admissions against interests by a duly authorized representative of the United States of America, who wore three stars at the time the admissions were made.

**II.    WHETHER THE FILING OF MOTION(S) TO DISMISS BY THE UNITED STATES OF AMERICA IN RELATED "VICTIMS OF KATRINA" LITIGATION, IN ORDER TO INVOKE SOVEREIGN IMMUNITY PURSUANT TO §702(C) OF THE FLOOD CONTROL ACT OF 1928, AS WELL AS THE DUE CARE AND DISCRETIONARY FUNCTION EXCEPTIONS TO THE WAIVER OF SOVEREIGN IMMUNITY CONTAINED IN THE FTCA, CONSTITUTE DENIALS OF APPELLANTS' CLAIMS OR OTHERWISE RENDERED THE REQUIREMENT THAT APPELLANTS EXHAUST ADMINISTRATIVE REMEDIES UNDER THE FTCA FUTILE?**

In response to the claims asserted against the United States of America in the "Victims of KATRINA" litigation falling under the umbrella of Civil Action No. 06-4182 in the District Court, the United States of America has filed a number of motions to

dismiss, invoking sovereign immunity pursuant to Section 702(c) of the Flood Control Act of 1928, also arguing that the theories of liability asserted against the Federal Government fall within the due care and discretionary function exceptions to the waiver of sovereign immunity by the Government in the Federal Tort Claims Act.  Although appellants have not been able to find any case law supporting their argument, appellants aver that the efforts by the United States to escape any and all liability to the innocent "Victims of KATRINA", caused by the Federal Governments' inadequate preparations for and inadequate response to Hurricane KATRINA, constitute denials of appellants' claims against the Government or have otherwise rendered any requirement that appellants exhaust administrative remedies under the Federal Tort Claims Act futile.

III.    **WHETHER THE FACT THAT APPELLANTS' CLAIMS HEREIN WERE ASSERTED BY WAY OF THIRD-PARTY COMPLAINT CONSTITUTED AN EXCEPTION TO ANY ADMINISTRATIVE CLAIM "REQUIREMENT"?  SEE 28 U.S.C. §2675(A).**

By the clear provisions of 28 U.S.C. §2675(a), which sets forth the administrative claims requirements of the Federal Tort Claims Act, the administrative claims requirements shall not apply to claims asserted by Third-Party Complaint:

> The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third-party complaint, cross-claim, or counterclaim.  28 U.S.C. §2675(a).

Third-Party practice is addressed in Rule 14(c) of the Federal Rules of Civil Procedure, which provides as follows:

> **Admiralty and Maritime Claims.**  When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h) the defendant or person who asserts a right under Supplemental Rule C(6)(b)(i), as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same

transaction, occurrence, or series of transactions or occurrences. In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which even the third-party defendant shall make any defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

Clearly, both of the separate limitation proceedings filed by Ingram Barge Company and the proceedings filed by Unique Towing, Inc. and Joseph C. Domino, Inc., and the posting of security in both proceedings, implicate both Rule 14(c) and Supplemental Rule C(6)(b)(i), thus rendering the Third-Party Complaint against the United States in these proceedings a "true" Third-Party Complaint. Appellants therefore aver that they were not required to file administrative claims as a prerequisite to filing suit.

**IV.   WHETHER THE CORPS OF ENGINEERS' (AND/OR FEMA'S) FAILURE TO MAKE ANY REASONABLE EFFORT TO ADJUST ADMINISTRATIVE CLAIMS SUBMITTED TO THEM SINCE HURRICANE KATRINA PURSUANT TO THE FTCA AND/OR THE ADMIRALTY EXTENSION ACT RENDERED ANY ADMINISTRATIVE CLAIM "REQUIREMENT" FUTILE AND UNNECESSARY?**

To the knowledge of undersigned counsel for appellants, neither the U.S. Army Corps of Engineers nor the Federal Emergency Management Agency has amicably compromised and settled, or otherwise paid, any administrative claim submitted to them since the unfortunate events of August 29, 2005 and thereafter. Under the circumstances, appellants respectfully submit that requiring them to individually present claims in writing for sums certain to the involved agencies as a prerequisite to filing suit would be entirely futile.

The reasons for the administrative claims procedures in the Federal Tort Claims Act are succinctly set forth in the "lead" case cited by the Government in support of its

motion to dismiss for lack of subject-matter jurisdiction, namely McNeil v. United States, 508 U.S. 106, 113 S.Ct. 1980 (1993):[16]

> "Prior to 1966, FTCA claimants had the option of filing suit in federal court without first presenting their claims to the appropriate federal agency.  Moreover, federal agencies had only limited authority to settle claims. (Citations omitted).  Because of the vast majority of claims ultimately were settled before trial, the Department of Justice proposed that Congress amend the FTCA to require all claims to be presented to the appropriate agency for consideration and possible settlement before a Court action could be instituted.  This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage.  The agency would have the best information concerning the activity which gave rise to the claim.  Since it is the one directly concerned, it can be expected that the claims which are found to be meritorious can be settled  more quickly without the need for filing suit and possible expensive in time-consuming litigation.  (Citations omitted).  The Senate Judicial Committee further noted that "the improvements contemplated by [the 1966 amendments] would not only benefit private litigants, but would also be beneficial to the Courts, the agencies, and the Department of Justice itself."  (Citations omitted).  McNeil, supra, Fn. 7.

The McNeil Court went on to explain that the administrative claims procedure would "reduce congestion in the Courts", because "every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions".  113 S.Ct. at p. 1984.  It is respectfully submitted that if any parties have been "burdened" in Victims of KATRINA litigation, it is the appellants (and their counsel) who have been burdened by multiple motions, memoranda, supplemental memoranda, reply memoranda, and the like, filed by the Government, not only in this action, but in cases consolidated under the "lead" Civil Action No. 05-4182, as well.  In other words, if the Department of Justice has felt any

---

[16]    Incidentally, the plaintiff in McNeil was a federal prisoner, who was an inmate at a federal penitentiary.  Does the Government really equate plaintiffs in this action with convicted felons?

increased "burden" because of this particular case, then the DOJ's "burden" has been entirely self-inflicted.

This Honorable Court also has weighed in, emphasizing that the administrative claims procedure makes it possible for the Government to expedite the fair settlement of tort claims asserted against the United States.  <u>Gregory v. Mitchell</u>, 634 F.2d 499 (5th Cir. 1981).  If "the fair settlement of tort claims" is really of interest to the Government in this case, then why hasn't the Government "reached out" to appellants with firm proposals to pay them just compensation for the damages which they sustained as a result of Governmental ineptitude and malfeasance?

Appellants respectfully submit that the Learned District Judge's dismissal of their claims against Government, requiring plaintiffs to re-file after perfecting administrative claims, for which the Government has not established any meaningful claims procedures, is futile, and will further no real legal purpose whatsoever.

**V.   WHETHER APPELLANTS HAVE PROPERLY INVOKED THE COURT'S ADMIRALTY AND MARITIME JURISDICTION, SUCH THAT THE SUITS IN ADMIRALTY ACT IS APPLICABLE, WHICH CONTAINS NO ADMINISTRATIVE CLAIM REQUIREMENT?**

In the Order and Reasons appealed from, the Learned District Judge stated:

> ". . . this Court has ruled that the Admiralty Extension Act ("AEA"), 46 U.S.C. §740 applies to the "barge-related" claims in this suit, not the Suits in Admiralty Act, 46 U.S.C. §740.  The AEA contains an administrative remedies requirement that mirrors that of the FTCA and the plaintiffs have not satisfied it.  Therefore, this Court lacks jurisdiction to hear their claims against the United States that may arise under the AEA."

Appellants concede that the AEA contains an administrative claim requirement, but appellants aver that the AEA is inapplicable to this case and that the administrative claim "requirement" of the AEA can be "triggered" by the clear wording of the statute

only when a Federal agency owns or operates the vessel causing the injury or damage. In this case, the offending vessel, the Barge ING-4727, was owned and operated by Ingram Barge Company.

These issues have previously been briefed to This Honorable Court in Case No. 06-30705 (appellants' main brief at pp. 20-26; appellants reply brief at pp. 2-3).

The Admiralty Extension Act provides that "[A]dmiralty jurisdiction in tort cases extends to all cases of damage or injury to person or property caused by a vessel on navigable water, even though such damage or injury is done or consummated on land." However, the Act, by its very terms, where applicable to the United States, applies only to situations in which an agency of the Federal Government owns or operates the vessel causing the injury or damage. The statute specifically provides:

> *Provided*.  That as to any suit against the United States for damage or injury done or consummated on land by a vessel on navigable waters, the Public Vessels Act or Suits in Admiralty Act, as appropriate, shall constitute the exclusive remedy for all causes of action arising after June 19, 1948, and for all causes of action where suit has not been hitherto filed under the Federal Tort Claims Act.  *Provided further*, That no suit be filed against the United States until there shall have expired a period of six months after the claim has been presented in writing to the Federal agency owning or operating the vessel causing the injury or damage. (emphasis supplied).

Thus, rather than supporting the Learned District Judge's view that the Admiralty Extension Act is applicable to appellants' "barge-related" claims against the Government, by its clear terms, the AEA is applicable only in situations in which an agency of the Federal Government owns or operates the vessel causing the injury or damage. Further, the AEA's administrative claim requirement only requires the presentation of an administrative claim to a government agency as a prerequisite to filing suit when an agency of the Government owns or operates the damage or injury-causing vessel. No

agency of the United States owned or operated the Barge ING-4727, which was owned and operated by Ingram Barge Company.

Appellants reiterate the jurisdictional arguments they advanced in briefs in Case No. 06-30705, including the applicability of the Suits in Admiralty Act to appellants' claims against the Government.  The Suits in Admiralty Act has no administrative claim requirement, and appellants respectfully submit that if jurisdiction over their claims against the Government lie under the SSA, then their claims against the Government should not have been dismissed.

## VI.   WHETHER APPELLANTS HEREIN HAVE ALREADY SATISFIED ANY ADMINISTRATIVE CLAIM "REQUIREMENT"?

Appended hereto and marked for identification as Exhibit Nos. 2 and 3[17] are administrative claim letters which were addressed to the U.S. Army Corps of Engineers (and to FEMA) by appellants herein[18] dated February 17, 2006 (Exhibit No. 2) and December 14, 2006 (Exhibit No. 3), putting the Corps of Engineers on notice that claims were being asserted on behalf of counsel's clients for wrongful death and survival actions, bodily injury, loss of and damage to real and/or personal property, damages for fear, fright, hopelessness, emotional distress and mental anguish, and for damage caused by pollution, including damage to natural resources, as well as any other damages recoverable under statutes specifically identified in the letter, all arising out of the deficient preparations for and deficient response to Hurricane KATRINA by the U.S. Army Corps of Engineers.  Each individual claim was asserted in the sum certain amount

---

[17]   But with pages listing numerous claimants' names omitted.
[18]   Many of the named claimants are plaintiffs in other litigation, including particularly Civil Action No. 05-4182 and consolidated cases.

of $2.5 million, plus attorney's fees to be fixed at the maximum percentage of the total award allowed by law.

Appellants respectfully submit that the contents of the attached letters, Exhibit Nos. 2 and 3, constitute valid administrative claims on behalf of each named claimant, the Government's protestations to the contrary notwithstanding.

As has been alluded to previously, This Honorable Court held in <u>Adams v. United States</u>, 615 F.2d 284 (5th Cir. 1980):

> An individual with a claim against the United States, therefore, satisfies section 2675's requirement that "the claimant shall have first presented the claim to the appropriate Federal agency" if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim. See 615 F.2d 284 (1980).

Hurricane KATRINA has been one of the most-investigated events in the history of mankind. The Government's fault in causing appellants' damages is patent. Yet, not one penny has been paid to any claimant in compensation by the Government as of the time of this writing. Appellants respectfully submit that the Learned District Judge's findings that "[appellants'] statements do not provide the government with the information necessary to investigate the individual claims and place value on them" and that "The government cannot be expected to investigate a claim that is stated and valued as broadly as Parfait Plaintiffs'", is pure sophistry. Appellants presented their claims in sums certain, six (6) months elapsed and the Government did nothing. Appellants should be permitted to proceed with their litigation.

VII.   **WHETHER THIS HONORABLE COURT HAS THE INHERENT POWER TO FASHION SOME EQUITABLE REMEDY FOR APPELLANTS UNDER THE UNIQUE CIRCUMSTANCES PRESENTED BY "VICTIMS OF KATRINA" LITIGATION, WHICH WILL ALLOW APPELLANTS TO AVOID THE UNDULY BURDENSOME ADMINISTRATIVE CLAIMS REQUIREMENTS OF THE FTCA AND THE ADMIRALTY EXTENSION ACT?**

Appellants respectfully submit that even if the Court were to conclude that the Federal Tort Claims Act or the Admiralty Extension Act is applicable to this case, This Honorable Court has the inherent power to fashion some equitable remedy which will not require "re-filing" of administrative or litigious claims against the Federal Government.

Appended hereto and marked for identification as Exhibit No. 4 is the April 5, 2006 missive to undersigned counsel from Randall C. Merchant, Esq., Assistant District Counsel to the Department of the Army, New Orleans District, Corps of Engineers.[19] The Court will recall that the Supreme Court, in McNeil v. United States, supra, a case so heavily relied on by the Government, explained that the administrative claim procedure enacted by Congress in 1966 as an amendment of the Federal Tort Claims Act, represented an "improvement" which would "not only benefit private litigants, but would also be beneficial to the Courts, the agencies, and the Department of Justice itself":

> This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. The agency would have the best information concerning the activity which gave rise to the claim.  Since it is the one directly concerned, it can be expected that the claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive in time-consuming litigation.  (Citations omitted).

---

[19]   The Corps of Engineers is the agency which under-designed, under-built, failed to properly inspect and negligently maintained the levees and concrete retaining wall structures in the Greater New Orleans Metropolitan Area, including the Industrial Canal.

However, Mr. Merchant's letter makes abundantly clear that the agency whose employees' activities allegedly caused appellants' damages could care less about the claims asserted by appellants administratively, and have re-routed their claims to the U.S. Army Claims Service in the State of Maryland:

> This letter responds to your March 28, 2006, letter wherein you state that you are treating the Army Corps of Engineers' March 22, 2006, letter as a denial of your clients' claims.  Please be advised that the Army's letter is a request for additional information regarding your clients' potential claims.  Your clients' potential claims have not been denied because they have not been validly presented to the Army.  <u>Further, this office does not have the authority to deny your clients' potential claims.  That authority resides with the United State Army Claims Service, Fort George G. Meade, Maryland</u>.  (emphasis supplied).

Thus, it should be crystal clear, that nothing which was considered by Congress, as interpreted by the Supreme Court, in connection with the 1966 amendments to the Federal Tort Claims Act, is being advanced by anything which the Government is causing to "happen" here in New Orleans, either at the administrative or judicial levels.  In short, we have a situation where the "system", <u>i.e.</u>, the peoples' own democratic government, has been turned "on its head" by bureaucrats.  It is respectfully submitted that this Court has the inherent power to fashion some equitable remedy to relieve all Victims of KATRINA of this intolerable situation.

## <u>CONCLUSION</u>

The primary purpose of government is to promote and safeguard the health, safety and welfare of its constituents and their property.  Indeed, if this purpose is not fulfilled by the government, then why should the government be allowed to continue to exist, rather than to be replaced by another government which demonstrates to the people not only the willingness but the ability to competently promote and safeguard the health,

safety and welfare of the citizenry and their property?  Appellants aver that the federal government woefully failed in discharging the primary purposes for its existence in the run-up-to and in the aftermath of Hurricane KATRINA in August and September 2005, and in so doing, violated duties owed to each appellant named herein.  It is high time for the government to answer for its malfeasance in damages.  Appellants' third-party complaint against the United States of America should not have been dismissed.  The Learned District Judges' Order and Reasons should be reversed.

**Respectfully submitted,**

**LAW OFFICES OF**
**ASHTON R. O'DWYER, JR.**

_____

**Ashton R. O'Dwyer, Jr.**
**Bar No. 10166**
**821 Baronne Street**
**New Orleans, LA 70113**
**Tel. (504) 679-6166**
**Fax. (504) 581-4336**
**Attorney for Appellants**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via E-mail this 1st day of August 2007.

_____