# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | * CIVIL ACTION<br>*<br>* NO. 05-4182 "K" (2)<br>* |
| | * JUDGE STANWOOD R. DUVAL<br>* |
| PERTAINS TO: BARGE<br>(*LNA v. USA*, No. 07-5178) | * MAG. JUDGE JOSEPH C. WILKINSON, JR.<br>* |

## OPPOSITION TO UNITED STATES' MOTION TO DISMISS

Lafarge North America Inc. ("LNA"), respectfully urges the Court to deny the government's motion to dismiss LNA's Complaint.[1]  The government does not suggest that LNA's administrative claim was untimely.  Rather, the government seeks the dismissal of LNA's Complaint because, although filed within the two-year limitations period for claims potentially falling under the Admiralty Extension Act, it was ostensibly filed three days *early*.  The government's motion should be denied because (1) waiting another three days to file suit would have been futile, and (2) under the peculiar circumstances of this case, the exhaustion requirement should be relaxed to accommodate the three-day gap.

---

[1] *See* Defendant United States' Motion to Dismiss, R.Doc. No. 8365, filed October 11, 2007.

997016-1

Alternatively, any dismissal must be without prejudice to LNA's right to refile its lawsuit now that more than six months have passed since LNA submitted its administrative claim, and the statute of limitations with respect to LNA's AEA claim should be equitably tolled.

## BACKGROUND

On August 29, 2005, LNA sustained severe damage to its physical plants and movable property when storm surge and high winds generated by Hurricane Katrina breached and overtopped levees, retaining walls, and related structures at multiple locations around the Greater New Orleans Area. Eighteen months later, on March 1, 2007, LNA filed its administrative claim with the U.S. Army Corps of Engineers' District Headquarters on Leake Avenue in New Orleans.[2] LNA specifically asserted its claim under the Federal Tort Claims Act and/or the Admiralty Extension Act in order to preserve both its admiralty and general land law rights. On August 23, 2007, LNA received a form letter from the Department of the Army, New Orleans District, Corps of Engineers, acknowledging receipt of LNA's administrative claim.[3] That letter expressly stated that the Corps had _not_ reviewed LNA's claim and advised LNA to review the previously submitted claim form to ensure that all the necessary information was included.[4] Then, on the two-year anniversary of the storm, LNA filed its Complaint and instituted this action.[5] LNA has received no further response from the Corps.

In yet another example of the government's now-familiar delay tactics, it suggests that this lawsuit must be dismissed because it was filed prematurely. But the government has consistently denied, or failed to act upon, all allegations against it in Katrina-related cases and thousands of other administrative claims that have been filed against it. What is more, in

---

[2] _See_ SF-95 submitted by LNA on March 1, 2007, attached as **Exhibit A**.
[3] _See_ August 22, 2007 letter, attached as **Exhibit B**.
[4] _Id._
[5] R.Doc. 1, "Complaint", filed on August 29, 2007.

answering LNA's third-party complaint in another of these consolidated cases, the government expressly denied the same allegations of governmental liability that animate LNA's claims in this action.[6] There is no reason to suppose that the government was poised to grant LNA's claim but for the filing of the present lawsuit. In fact, as of three days after the Complaint was filed, LNA's claim was deemed denied. Given the government's track record, exhausting administrative remedies would have served no purpose other than to delay further the prosecution of LNA's claims. Exhaustion would have been a futile effort, and the Court should deny the government's motion.

Aside from the futility issue, the government's argument glosses over the fact that an oddity of the calendar, combined with the AEA's limitations period, forced LNA's hand: because February 2007 had only 28 days, March 1, 2007 was universally treated as the 18-month anniversary of the storm. LNA, along with thousands of others in the New Orleans area, believed that an administrative claim filed on March 1, 2007 was timely and would allow the requisite six-month waiting period before filing suit. The government has not suggested otherwise. Then, because of the limitations period applicable to claims under the AEA, LNA filed suit on August 29, 2007, three days short of a full six months after March 1st, to preserve its AEA claim. Three days after the Complaint was filed – before it appeared on the Court's electronic docket and before the government was served – the six-month administrative claim period expired. Under these unusual circumstances, LNA respectfully urges the Court to reject the government's superficial approach and deny the motion to dismiss.

---

[6] See R. Doc. 607 in No. 05-4419. LNA's third-party claims against the government in the various other Barge cases are not at issue on this motion, as there was no requirement to exhaust administrative remedies before filing those third-party claims. See 28 U.S.C. § 2675(a); R. Doc. 587 in No. 05-4419 (order holding exhaustion not required under AEA for third-party claims).

Alternatively, should the Court find LNA's complaint to have been prematurely filed, any dismissal must be without prejudice to LNA's right to refile its complaint now that its administrative claim is deemed denied.

## ARGUMENT

I.   *Exhaustion would have been futile.*

The Court should deny the government's motion to dismiss because exhausting administrative remedies would have been a futile effort.   The Fifth Circuit recognizes that exhaustion requirements, whether against the United States or other entities, are not absolute.   In *DCP Farms v. Yeutter,* the Court noted that a plaintiff may be relieved of the duty to exhaust administrative remedies if he successfully shows that "it would be futile to comply with the administrative procedures because it is clear that the claim will be rejected."[7]

This very Court addressed the futility exception in *Green v. United States,* in which Ronald Lewis properly submitted an administrative claim under the FTCA to the Department of Veterans for his father's wrongful death.[8]   The government denied the claim, following which Lewis and his eleven siblings – none of whom had submitted their own individual administrative claims – filed suit against the United States.[9]   Predictably, the government moved to dismiss the siblings' claims for failure to exhaust.[10]

---

[7] *DCP Farms v. Yeutter,* 957 F.2d 1183, 1189 (5th Cir. 1992) (quoting *Patsy v. Florida Int'l University,* 634 F.2d 900, 904 (5th Cir. 1981)).

[8] *Green v. United States,* 2003 U.S. Dist. LEXIS 5340, *5 (E.D. La. Mar. 31, 2003) (Duval, J.), *partially dismissed on other grounds,* 2003 U.S. Dist. LEXIS 11433 (E.D. La. June 23, 2003) (quoting *Transco Leasing Corp. v. United States,* 896 F.2d 1435, 1442 (5th Cir. 1990)).   Copies of the two *Green* decisions are attached as **Exhibit C**, *in globo.*

[9] *Id.* at *2-3.

[10] *Id.* at *3.

The Court recognized that one of the purposes of the FTCA's exhaustion requirement is to assist – not thwart – claimants:

> The second purpose of the administrative claim prerequisite is to 'provide for a more fair and equitable treatment of private individuals and claimants when they deal with the government or are involved in litigation with their government'....The administrative claims requirements of the FTCA are meant to benefit claimants and in no way [are] designed to preclude them from their day in court.[11]

With this purpose in mind, the Court concluded that even if the other siblings had submitted their own individual administrative claims, the government would have denied them "for the same reason it denied Ronald Lewis' claim."[12]    The Court ultimately excused the siblings' failure to exhaust because doing so would have been "a patently futile course of action."[13]

In this case, exhaustion of LNA's administrative remedies would have been an exercise in futility because the government would unquestionably have denied the claim.    The government's conduct in the Katrina litigation proves this.  In the BARGE cases, for instance, LNA asserted a Third-Party Complaint against the United States (and others) seeking indemnity or contribution for any damages for which LNA might be found liable to the plaintiffs.[14]  In its Third-Party Complaint, LNA alleged that the government's negligent design, construction, inspection, and maintenance of the levees, retaining walls, and related structures along the MR-GO, Gulf Intracoastal Waterway, and Industrial Canal, combined with the government's negligent maintenance dredging of the MR-GO for the past 40 years, caused the damages of

---

[11] *Id.* at *5.

[12] *Id.* at *14.

[13] *Id.* (quoting *Pan-American Pharmaceuticals, Inc. v. Kessler,* 980 F.2d 730 (6th Cir. 1992); *Honig v. Doe,* 484 U.S. 305, 98 L.Ed.2d 686, 108 S.Ct. 592 (1988); *Hessbrook v. Lennon,* 777 F.2d 999, 1003 (5th Cir. 1985); *Hurt v. United States,* 914 F.Supp. 1346, 1355 (S.D. W.Va. 1996))

[14] *See,* e.g., Third-Party Complaint of Defendant Lafarge North America Inc. against the United States of America, R.Doc. 202 in C.A. No. 05-4419.

which plaintiffs complained.[15]   Significantly, these allegations are substantively identical to LNA's allegations against the government in this case.[16]

In response to these allegations, the government pled thirty-five separate affirmative defenses and either outright denied or denied for lack of sufficient information LNA's specific allegations.[17]   Given the government's history of denying allegations for Katrina-related damages, combined with its failure to act on LNA's administrative claim, LNA submits that exhaustion is not required in this case because the government would have denied the claim.  In fact, by operation of law, it effectively did deny the claim by failing to respond to it within six months.  Compliance with the exhaustion requirement would have served no purpose, and the Court should deny the motion to dismiss.

II.     *Alternatively, the exhaustion requirement should be relaxed in this case.*

A.     Deadlines under the AEA and FTCA.

Three principles complicate the analysis of whether LNA's lawsuit was premature and preclude the mechanical analysis that the government advances.  First, both the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.,* and the Admiralty Extension Act, 46 U.S.C. §§ 31301, require a claimant to exhaust his administrative remedies before filing suit.[18]   Both the FTCA and AEA preclude suit from being filed against the government before the passage of six months from the time that the administrative claim is presented; if six months pass and the agency takes no action, the claim is deemed denied and the claimant is free to file suit.[19]

---

[15] *Id.* at ¶¶ XII – XXVII.
[16] *See* Complaint of LNA, R.Doc. 1 in C.A. No. 07-5178, at ¶¶ IV – XI.
[17] *See* United States' Answer to Lafarge North America, Inc.'s First Amended Third-Party Complaint, R.Doc. 607 in C.A. No. 05-4419, attached as **Exhibit D**.
[18] *See* 28 U.S.C. § 2675(a) (FTCA's administrative claim requirement); 46 U.S.C. § 31301(c)(2) (AEA's exhaustion requirement); *see also McNeil v. United States,* 508 U.S. 106, 113 (1993) (recognizing that no suit under the FTCA may be filed before the claimant has first properly presented his claim to the appropriate federal agency).
[19] *Id.*

Second, both the AEA and FTCA require that suits be filed within two years after the cause of action arises.[20]   To complicate things further, however, the two periods are calculated differently:  under the AEA, the two-year period commences on the date of the injury.[21]   But under the FTCA, a claimant must file suit within two years of the date of the injury **or** within six months of the date on which the relevant government agency mails its denial of the administrative claim.[22]   To be both procedurally correct and timely under the AEA as well as the FTCA, therefore, a claimant must file his administrative claim no later than 18 months after the date of the injury, and then must file suit (assuming that the government either denies the claim or fails to act upon it within six months) on the two-year anniversary of the injury.

Third, the rub:  in this case, the injury occurred on August 29, 2005.  This seemingly innocuous fact has had an enormous impact on LNA and other claimants because the 18-month anniversary of the storm, and the deadline for filing administrative claims for damages potentially falling under the AEA, would be February 29, 2007 – *a day that did not exist*.  In 2007, February only had 28 days, so March 1, 2007 was the universally acknowledged 18-month

---

[20] 28 U.S.C. § 2401.
[21] *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951) (AEA's two-year statute of limitations commences on date of injury).
[22] 28 U.S.C. § 2401(b); *see also Reynolds v. United States,* 748 F.2d 291, 292 (5th Cir. 1984).

anniversary of Hurricane Katrina.[23]

Unfortunately, the *de facto* extension of time to March 1, 2007 for filing administrative claims created a discontinuity vis-à-vis the AEA's two-year limitations period. That is, the anniversary of the storm fell on August 29, 2007, three days short of six months after March 1, 2007. Had LNA waited until September 1, 2007 to file its Complaint, its claim would have been time-barred under the AEA.[24] Because at least part of LNA's claim falls under the AEA, LNA acted prudently by filing suit within the AEA's limitations period.

> B.   A strict interpretation of the administrative claim requirement in unremarkable
> fact situations is ill-suited to this unusual case.

Consistent with the Supreme Court's later decision in *McNeil v. United States*,[25] the Fifth Circuit construes strictly the exhaustion requirements of the AEA and FTCA, as in the case of *Reynolds v. United States*.[26] Reynolds was injured on August 10, 1981. Although she filed a

---

[23] *See* Order and Reasons, entered on February 28, 2007, R.Doc. 3293 (noting that plaintiffs' "Motion to Toll the Period During Which Maritime Suits May Be Filed by All Hurricane Katrina Victims"...deals with a limitation period that is ostensibly to expire on March 1, 2007."

As one noted local reporter observed:

> The deadline is Thursday [March 1, 2007]. That much we know....The deadline to file [suit] under the tort claims statute isn't until Aug. 29, the second anniversary of Hurricane Katrina. But to be eligible for compensation under both [the AEA and FTCA], it is necessary that you file a[n administrative] claim by Thursday.

"Suing corps? There's no time to wait," Lolis Eric Elie, The Times-Picayune, Wednesday, February 28, 2007; *see also* "N.O. asks whopping $77 billion in claim to Corps; Entergy, S&WB also seek millions on form," Michelle Krupa, et al., The Times-Picayune, Friday, March 2, 2007 (referring to "avalanche of paperwork that poured into the Corps' Leake Avenue headquarters as Thursday's [March 1, 2007] 11:59 p.m. deadline approached" according to Corps personnel); "Forms filed with Corps so far seek $400 billion; with thousands left to check, demands cover array of losses," Sheila Grissett, The Times-Picayune, Friday, March 23, 2007 (noting that "[t]he trickle of SF-95s roared into a deluge with the approach of the March 1 filing deadline"); "Aug. 29 is deadline to file levee claims," Susan Finch, The Times-Picayune, Saturday, August 18, 2007 (noting that "Ahead of a March 1 deadline, 326,000 individuals and businesses sent in claims alerting the Corps they planned to seek money from the government in damage lawsuits based on federal admiralty laws"), attached as **Exhibit E**, *in globo*.
[24] September 1, 2007 was the Saturday before Labor Day. Because the Eastern District of Louisiana requires original complaints to be filed by hand, rather than via the e-filing system, LNA would have had to wait until at least Tuesday, September 4, 2007 to file its Complaint.
[25] *McNeil v. United States,* 508 U.S. 106, 124 L.Ed.2d 21, 113 S.Ct. 1980 (1993).
[26] 748 F.2d 291 (5th Cir. 1984).

timely administrative claim under the FTCA on April 22, 1982, she failed to wait the requisite six months before filing suit.[27]  The court granted the government's motion to dismiss, but permitted Reynolds to file an amended complaint to cure the jurisdictional defect.[28] Unfortunately, although filed promptly, Reynolds's amended complaint was filed more than six months after the government agency denied her administrative claim and was thus time-barred under 28 U.S.C. § 2401(b).[29]

The Fifth Circuit revisited the administrative claim requirement in *Loeber v. Bay Tankers, Inc.,* decided in 1991.[30]  The Loebers, whose child was injured on land by a US-owned vessel's accommodation ladder, filed suit against the United States on June 2, 1989 under the AEA; only later, on February 7, 1990, did they file an administrative claim with the Department of the Navy.[31]  The government promptly moved to dismiss the Loebers' suit for failure to exhaust administrative remedies.[32]

The Court first observed that the AEA's requirement that a claimant first file his administrative claim six months before filing suit is jurisdictional, not procedural.[33]  Because the Loebers filed suit over eight months <u>before</u> submitting their administrative claim, the district court lacked jurisdiction to entertain their suit.[34]

Adding insult to injury, the Loebers' claim was also time-barred under the two-year limitations period applicable to claims under the AEA.[35]  The accident occurred on June 13,

---

[27] *Id.* at 291-92.
[28] *Id.* at 292.
[29] *Id.* at 293.  The Supreme Court did not extend the principle of equitable tolling of suits against the United States until several years later in *Irwin v. United States,* 498 U.S. 89, 95-96, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990).
[30] 924 F.2d 1340 (5th Cir. 1991) .
[31] *Id.* at 1341.
[32] *Id.*
[33] *Id.* at 1342 (citing *Turner Terminals, Inc. v. United States,* 177 F.2d 844, 846 (5th Cir. 1949); *Hahn v. United States,* 218 F.Supp. 562, 565 (E.D. Va. 1963) (citing *Turner*)).
[34] *Id.* at 1342.
[35] *Id.* at 1343.

1988, so they had until June 13, 1990 to file suit.  Applying the six-month waiting period, the Loebers had until December 13, 1989 to file their administrative claim in order to thereafter file a timely lawsuit.  Because they waited more than 18 months after the accident to submit their administrative claim, the suit was time-barred by the time the six-month waiting period had elapsed.[36]

C.    The exhaustion requirement should be relaxed.

LNA submits that while the strict rule of *Reynolds* and *Loeber* is easily applied when the facts are plain, it is ill-equipped to address the peculiar situation presented by this case.  No oddity of the calendar forced Reynolds's or the Loebers' hands as it did LNA's.  Moreover, both *Reynolds* and *Loeber* are distinguishable on their facts.  First, the Loebers filed suit months before submitting their administrative claim, whereas LNA filed its administrative claim first, as both the FTCA and AEA require.  Second, the Loebers filed their administrative claim more than 18 months after the accident, so they had no hope of filing a timely complaint within the AEA's two-year limitations period; LNA, on the other hand, filed its administrative claim on the 18-month anniversary of the storm and its lawsuit on the storm's two-year anniversary.  And although Reynolds properly filed her administrative claim first, she waited less than four months before filing suit; then, after the Veterans Administration denied her claim, she neglected to refile her complaint within six months.  With no unusual circumstances to complicate the timing of their filings, neither Reynolds nor the Loebers had any excuse for failing to exhaust their administrative remedies.

Because this is not the garden-variety situation, LNA submits that a more thoughtful approach is required.  Federal courts in this circuit and others have relaxed administrative claim requirements when circumstances dictate such an approach.  In *Mackey v. Children's Medical*

---

[36] *Id.*

*Center of Dallas,* for instance, the plaintiff submitted an administrative claim with the Civil Rights Division of the Texas Workforce Commission ("TWCCRD") regarding her alleged mistreatment in the workplace.[37]  Only 179 days later, in spite of the mandatory 180-day waiting period established by the Texas Commission on Human Rights Act, plaintiff filed her lawsuit in Texas state court.[38]  After removing the case to federal court, the defendant hospital moved to dismiss the suit for failure to exhaust administrative remedies.[39]  The court denied the motion, holding that the jurisdictional defect created by Mackey's premature lawsuit was curable and that jurisdiction vested once the required time had elapsed – in that case, the day after plaintiff originally filed suit.[40]

Other cases involving procedural trick bags similar to the present case provide even more compelling support for relaxing the six-month administrative claim requirement here.  In *Backus v. Mena Newspapers, Inc.,* the plaintiff submitted written charges with the EEOC on October 22, 2001, and thereafter filed suit on March 18, 2002.[41]  As the court observed, Title VII affords the EEOC 180 days from the time charges are filed to either commence an action on behalf of, or issue a right-to-sue letter to, the complainant.[42]  In addition, the statute mandates that a complainant file suit within 90 days of the issuance of a right-to-sue letter.[43]

The defendant newspaper moved to dismiss Backus's complaint for lack of subject matter jurisdiction because he filed suit less than 180 days after filing his administrative claim.[44]  But the EEOC's right-to-sue letter, issued before 180 days had elapsed, specifically required Backus

---

[37] 2006 U.S. Dist. LEXIS 68277, *14-15 (N.D. Tex. Sept. 22, 2006).  A copy of the *Mackey* decision is attached as **Exhibit F**.
[38] *Id.* at *21.
[39] *Id.* at *24-25.
[40] *Id.*
[41] 224 F.Supp.2d 1228, 1231 (W.D. Ark. 2002).
[42] *Id.*
[43] *Id.* (citing 42 U.S.C. § 2000e-5(f)(1).
[44] *Id.* at 1231.

to file suit within 90 days.  Faced with the conflicting deadlines – 180 days after filing the written charges vs. within 90 days of the issuance of the right-to-sue letter – Backus wisely chose to heed the letter and filed suit within 90 days of its issuance.  The court thus rejected the newspaper's motion to dismiss, finding that Backus had properly exhausted his administrative remedies.[45]

The plaintiff in *De Berrio v. United States* faced a similar conflict between the FTCA and the Panama Canal Treaty.[46]   She submitted an administrative claim under the FTCA to the Claims Branch of the Canal Zone Government on September 27, 1979 for the wrongful death of her husband, who had died exactly one year previously.[47]  She filed suit only three days later, having received no response from the Claims Branch, and the government promptly moved to dismiss for failure to exhaust her administrative remedies.[48]

Although under ordinary circumstances the court would indeed have been without jurisdiction over De Berrio's suit, it found the situation sufficiently atypical to deny the government's motion and retain jurisdiction over the claim.  The court observed that the Panama Canal Treaty of 1977, which entered into force on October 1, 1979, conferred upon the Eastern District of Louisiana exclusive venue for claims against the United States arising from incidents in the canal locks.[49]  (The District Court of the Canal Zone had previously enjoyed exclusive venue for all suits arising in the Canal Zone.)  However, the Treaty made no provision for filing suit on administrative claims still pending with the Claims Branch at the time the Treaty took effect, thus effectively depriving claimants with pending claims of a forum in which to sue.[50]

---

[45] *Id.* at 1232.
[46] 495 F.Supp. 179, 180 (Canal Zone 1980).
[47] *Id.*
[48] *Id.*
[49] *Id.* at 181.
[50] *Id.*

The unresolved conflict between the Treaty and the FTCA made it impossible for De Berrio to comply with the terms of both regimes. Because observing the FTCA's six-month waiting period after filing her administrative claim would have left her without a judicial forum in which to pursue it under the Treaty, the court deemed De Berrio's administrative claim to have been effectively denied on the day on which it was filed. Consequently, she had exhausted her administrative remedies, and the court had subject matter jurisdiction over the suit.[51]

The court was particularly persuaded of the justness of its result by the fact that the Claims Branch had agreed to issue denial of claim letters to a few claimants whose attorney was prescient enough to recognize the conflict between the FTCA and the Treaty before the Treaty took effect.[52] However, because the Claims Branch declined to issue denials to any other claimants (including De Berrio) whose claims were still pending, the court found that the Claims Branch had abused its discretion to establish procedures for the adjustment of tort claims against the Canal Zone Government.[53]

LNA submits that the reasoning of *Mackey, Backus,* and *De Berrio* is better suited to resolving the government's motion in this case than is the hard-and-fast rule of *Reynolds* and *Loeber. Mackey,* although involving a Texas state statute rather than either the FTCA or AEA, counsels that a complaint filed only a few days early should not be dismissed for lack of subject matter jurisdiction; in such a situation, the jurisdictional defect is cured by the passage of the additional days. Here, even assuming the correctness of the government's argument, LNA's complaint was filed at most three days early. That time passed before the government was served or even knew about the suit, since the Complaint was not posted on the Court's electronic docket until many days later.

---

[51] *Id.* at 181-83.
[52] *Id.* at 182-83.
[53] *Id.* at 183.

*Backus* and *De Berrio* provide additional support for LNA's position, since both involve tricky procedural situations in which a claimant was forced to choose between mutually exclusive exhaustion requirements. Here, because the usually simple interplay between the six-month administrative claim requirement and the AEA's two-year limitations period was complicated by a peculiarity of the calendar, the Court should excuse the prematurity of LNA's Complaint and deny the government's motion to dismiss.

III.     *Alternatively, LNA should be granted leave to refile its complaint.*

Should the Court disagree and find LNA's lawsuit to have been premature, LNA submits that any dismissal of this suit should be without prejudice to LNA's right to refile its Complaint now that more than six months have elapsed. As to its FTCA claim, LNA unquestionably has the right to refile because there is no statute of limitations issue. LNA submitted its administrative claim on March 1, 2007; other than a form letter acknowledging receipt of the claim, LNA has heard nothing further from the Corps. As of September 1, 2007, therefore, LNA's claim is deemed denied under the clear terms of 28 U.S.C. § 2675(a), and any dismissal of the present suit must be without prejudice to LNA's right to refile its complaint on or before March 1, 2008.[54] Finally, dismissal should leave open the possibility that LNA's AEA claim is subject to equitable tolling.

## CONCLUSION

LNA urges the Court to deny the government's motion to dismiss because complying with the exhaustion requirement would have been futile. Alternatively, the government's facile argument, which ignores the procedural conundrum in which LNA found itself, should be

---

[54] *See, e.g., Allen v. United States Postal Service,* 1997 U.S. Dist. LEXIS 816, *7 (E.D. La. Jan. 24, 1997) (dismissing plaintiff's suit, filed on the same day as her administrative claim, but permitting her to refile because the FTCA's limitations period had not yet run) (citing, *inter alia, United States v. Burzynski, 819 F.2d 1301, 1306-7* (5th Cir. 1987)).  A copy of the *Allen* decision is attached as **Exhibit G**.

Hurricane Katrina, although the requisite six months had not entirely passed.    Under these circumstances, LNA urges the Court to deny the government's motion and retain jurisdiction over this case.    In the further alternative, should the Court find LNA's Complaint to have been filed prematurely, LNA submits that any dismissal should be without prejudice to LNA's right to refile under both the FTCA and AEA.

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
Parker Harrison (#27538)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 236-4177

John D. Aldock
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC 20001
Telephone:  (202) 346-4240

*Attorneys for Lafarge North America Inc.*

**Certificate of Service**

I do hereby certify that I have on this 23rd day of October, 2007 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the same by United States mail, properly addressed, and first class postage prepaid.