## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**IN RE: KATRINA CANAL BREACHES**
**CONSOLIDATED LITIGATION**

**CIVIL ACTION**

**NO.: 05-4182**

**SECTION "K" (2)**

**PERTAINS TO:**     **LEVEE AND MRGO**

---

### CLASS CERTIFICATION
### PROPOSED PRE-HEARING ORDER

In accordance with the Case Management and Scheduling Order No. 4 (CMO #4), the

parties jointly submit this Proposed Pre-Hearing Order as follows:

**I.**     **Issues to Be Adjudicated with Respect to Any Class Sought to Be Certified,
Including but Not Limited to the Requirements of Fed. R. Civ. P. 23(a) and 23(b)(3),
the Adequacy of Representation, the Predominance of Common Issues and the
Superiority and Manageability of the Litigation as a Class Action:**

**Joint submissions:**

**Levee[1,2] Proposed Class:**

1.      Whether plaintiffs have met their burden of proving that the numerosity requirement of Rule 23(a)(1) is satisfied.

2.      Whether plaintiffs have met their burden of proving that the commonality requirement of Rule 23(a)(2) is satisfied.

3.      Whether plaintiffs have met their burden of proving that the typicality requirement of Rule 23(a)(3) is satisfied.

4.      Whether plaintiffs have met their burden of proving that the adequacy requirement of Rule 23(a)(4) is satisfied.

5.      Whether plaintiffs have met their burden of proving that the predominance requirement of Rule 23(b)(3) is satisfied.

6.      Whether plaintiffs have met their burden of proving that the superiority requirement of Rule 23(b)(3) is satisfied, considering plaintiffs' proposed trial plan, and including whether the proposed class action would be manageable.

7.      Whether plaintiffs' proposed class is adequately defined and clearly ascertainable.

8.      Whether a class action can be certified against the United States under the Federal Tort

---

[1]      The Levee defendants are: The United States of America/Army Corps of Engineers; Orleans Levee District; East Jefferson Levee District; and Sewerage & Water Board of New Orleans. St. Paul Fire & Marine Insurance Company is also a defendant in these actions, but it states no position as to the matters addressed herein at this time.

[2]      National Union Fire Insurance Company of Pittsburgh, Pa. is also named as a defendant in these actions in the First Supplemental and Amending Levee Master Consolidated Class Action Complaint.  It has not yet responded to said Complaint.  Without waiving any of its defenses and reserving its right to assert any defense and file any responsive motion as to the cases encompassed by the First Supplemental and Amending Levee Master Consolidated Class Action Complaint, it joins in the matters addressed herein.  National Union does not hereby waive service of any other complaints filed against it subsequent to the filing and service of the First Supplemental and Amending Levee Master Consolidated Class Action Complaint, and/or which were initiated after the filing of the First Supplemental and Amending Levee Master Consolidated Class Action Complaint.

Claims Act.

**MRGO[3] Proposed Class:**

1.      Whether plaintiffs have met their burden of proving that the numerosity requirement of Rule 23(a)(1) is satisfied.

2.      Whether plaintiffs have met their burden of proving that the commonality requirement of Rule 23(a)(2) is satisfied.

3.      Whether plaintiffs have met their burden of proving that the typicality requirement of Rule 23(a)(3) is satisfied.

4.      Whether plaintiffs have met their burden of proving that the adequacy requirement of Rule 23(a)(4) is satisfied.

5.      Whether plaintiffs have met their burden of proving that the predominance requirement of Rule 23(b)(3) is satisfied.

6.      Whether plaintiffs have met their burden of proving that the superiority requirement of Rule 23(b)(3) is satisfied, considering plaintiffs' proposed trial plan, and including whether the proposed class action would be manageable.

7.      Whether plaintiffs' proposed class is adequately defined and clearly ascertainable.

8.      Whether a class action can be certified against the United States under the Federal Tort Claims Act.

**II.     The Names and a Brief Description of the Testimony of Each Witness Who Will or May Be Called To Testify By Each Side:**

Note: All proposed class representatives will be offered by deposition designations.

---

[3]      The MRGO defendants are the United States of America/Army Corps of Engineers; the Orleans Levee District; the Board of Commissioners for the Lake Borgne Basin Levee District, and Washington Group International, Inc. St. Paul Fire & Marine Insurance Company is also a defendant in these actions, but it states no position as to the matters addressed herein at this time.

**Plaintiffs' Witnesses:**

**A.      Levee**

1.      Michelle Hennessey          Fact witness.  Class and sub-class representative.

2.      Lenneice Morrell            Fact witness.  Class and sub-class representative.

3.      Kenneth A. Polite, Sr.      Fact witness.  Class representative.

4.      Michelle Harrison           Fact witness.  Class and sub-class representative.

5.      Thurman R. Kaiser, Sr.      Fact witness.  Class and sub-class representative.

6.      Rosemary R. Kaiser          Fact witness.  Sub-class representative.

7.      Betty Sonnier Stalbert      Fact witness.  Sub-class representative.

8.      Emanuel Esteves, Jr.        Fact witness.  Sub-class representative.

9.      Stella Washington           Fact witness.  Sub-class representative.

10.     John B. Williams            Fact witness.  Sub-class representative.

11.     Emanuel Wilson              Fact witness.  Sub-class representative.

12.     Elois Bell                  Fact witness.  Sub-class representative.

13.     Leo Mitchell                Fact witness.  Sub-class representative.

14.     Trenise Jackson             Fact witness.  Sub-class representative.

15.     Dwayne Mallet               Fact witness.  Sub-class representative.

16.     Donna Augustine             Fact witness.  Sub-class representative.

17.     Gladys Lebeaud              Fact witness.  Sub-class representative.

18.     Daisy Innis                 Fact witness.  Sub-class representative.

19.     Bette Jones                 Fact witness.  Sub-class representative.

| 20. | Jose' Louis Rodriguez | Fact witness.  Sub-class representative. |
| 21. | Beatrice Drewe | Fact witness.  Sub-class representative. |
| 22. | Eddie Knighten | Fact witness.  Sub-class representative. |
| 23. | Calvin Levy | Fact witness.  Sub-class representative. |
| 24. | Nicola McCathen | Fact witness.  Sub-class representative. |
| 25. | Charles Moses | Fact witness.  Sub-class representative. |
| 26. | Leslie Dorantes | Fact witness.  Sub-class representative. |

**B.**   **MRGO**

| 27. | Kenneth Paul Armstrong | Fact testimony re: personal experiences and losses; Lower 9th Ward & St. Bernard Sub-class rep. |
| 28. | Jeanine B. Arstrong | Fact testimony re: personal experiences and losses; Lower 9th Ward & St. Bernard Sub-class rep. |
| 29. | Ethel Mae Coates | Fact testimony re: personal experiences and losses; Lower 9th Ward & St. Bernard Sub-class rep. |
| 30. | Henry Davis | Fact testimony re: personal experiences and losses; New Orleans East Sub-class rep. |
| 31. | Glynn Wade | Fact testimony re: personal experiences and losses; New Orleans East Sub-class rep. |

**C.**   **EXPERT WITNESSES**

| 32. | G. Paul Kemp, Ph.D | Expert witness.  Dr. Kemp's testimony will address input data regarding the model of the August/ September 2005 metropolitan New Orleans inundation and other topics addressed in his report dated September 16, 2007. |
| 33. | John A. Kilpatrick, Ph.D | Expert witness.  Dr. Kilpatrick's testimony will address the use of mass appraisal techniques (AVM, |

|     |                        | Hedonic Modeling, etc.) to facilitate the determination of class wide damages for the diminution of value of real property affected by flooding. |
| --- | ---------------------- | --- |
| 34. | Chad A. Morris, P.L.S. | Expert witness.  Mr. Morris's testimony will address input data regarding the model of the August/September 2005 metropolitan New Orleans inundation and other topics addressed in his report dated September 16, 2007 |
| 35. | Johannes Vrijling      | Expert witness.  Mr. Vrijling's testimony will illustrate the August/September 2005 metropolitan New Orleans inundation, and other topics addressed in his report. |

**Levee Defendants' Witnesses:**

1.   Dr. Paul Kuhlmeier

Expert hydrologist.  Dr. Kuhlmeier evaluated the flooding and determined that the relative contributions to the flooding, if any, from each of the flood sources, varied for every proposed class representative.  Consequently, he opines that determining the relative contributions from each breach and overtopping site, as well as from rainfall, for the flooding experienced at any location within the proposed class area will require individualized evaluation, even within the proposed sub-classes.  Dr. Kuhlmeier will also opine regarding the limitations of flood modeling in general and the Delft model in particular.

2.   Dr. James Richardson

Expert economist.  Dr. Richardson will testify that the economic losses claimed by the named plaintiffs vary, and will opine that each class member's economic losses will require individualized evaluation.  He will also testify regarding the diversity of the New Orleans area from an economic perspective and the limitations of the mass appraisal methodology proposed by Dr. Kilpatrick.

3.   Michael Truax

Expert real estate appraiser.  Mr. Truax evaluated each of the proposed class representative's properties and determined that the pre and post-hurricane values

varied.  He will testify regarding the diversity of the New Orleans area from a real estate appraisal perspective and opine that individualized appraisals are necessary to determine pre and post-hurricane values.  Mr. Truax is expected to testify that the use of mass-appraisal techniques to assess value and determine damages will not produce accurate results because there are unique variables among properties in the New Orleans real estate market.  Mr. Truax may also testify as a fact witness to the extent that he inspected, observed, or witnessed factual information.

4.      Dr. Erik Nelson

Expert professional engineer.  Dr. Nelson inspected each of the proposed class representative's properties and determined that the damages caused to the properties by flooding and other factors varied for each.  He will opine that individual inspections are required to determine the flood damage, if any, and to differentiate flood damage from other damage, to every structure in the proposed class area.

5.      Billy Prochaska

Fact Witness.  Live or by declaration/stipulation. The construction of the flood protection system and the public entities, contractors and engineers involved with the design, construction, and maintenance of various components of the system.

6.      Stevan G. Spencer, Executive Director Orleans Levee District

Fact witness.  Live or by declaration/stipulation.  Scope of authority of the Orleans Levee District and its duties and responsibilities as they relate to the flood control structures in the proposed class area.

7.      Gerard Gillen III, Assistant Director Orleans Levee District

Fact witness.  Live or by declaration/stipulation.  Scope of authority of the Orleans Levee District and its duties and responsibilities as they relate to the flood control structures in the proposed class area.

8.      Fran Campbell, Executive Director East Jefferson Levee District

Fact witness.  Live or by declaration/stipulation. Scope of authority of the East Jefferson Levee District and its duties and responsibilities as they relate to the 17th Street Canal, the London Avenue Canal, and the Industrial Canal.

9.      Jack Huerkamp, Sewerage and Water Board of New Orleans

Fact witness.  Live or by deposition/stipulation.  The construction and operation of the drainage system.

10.     Victor Landry, former USACOE and OLD Engineer.

Fact witness.  Live or by declaration/stipulation. The development of the New Orleans area flood control structures and the relationship between various entities involved with flood control structures.

11.     John Smith, U.S. Army Corp of Engineers, Vicksburg, MS

Fact witness.  Live or by declaration/stipulation.  Will testify regarding the number of drainage basins that have been delineated within the proposed class area.

12.     Jennifer Redden, U.S. Army Corps of Engineers, Memphis, Tn.

Fact witness.  Live or by declaration/stipulation.  Will testify regarding the number and geographic distribution of Hurricane Katrina "blue roofs" in the proposed class area.

13.     Named Plaintiffs - by deposition:[4]

> Michelle Hennessey
> Leo Mitchell
> Lenniece Morrell
> Charles Moses
> Stella Washington
> John B. Williams
> Emanuel Wilson
> Trenise Jackson
> Dwayne Mallet
> Donna Augustine
> Gladys La Beaud
> Daisy Innis

---

[4]     Although Eddie Knighten and Leslie Dorantes are identified in the plaintiffs' witness list, the plaintiffs agreed that neither will be called at the class certification hearing.

> Betty Jones
> Beatrice Drew
> Calvin Levy
> Nicola McCathen
> Kenneth A. Polite, Sr.
> Michele Harrison
> Thurman R. Kaiser, Sr.
> Rosemary R. Kaiser
> Betty Sonnier Stalbert
> Emanuel Esteves, Jr.
> Elois Bell
> Jose' Louis Rodriguez

Whether the action should be certified as a class action including questions relating to numerosity of claimants, typicality of claims and defenses, commonality of claims and defenses, adequacy of the proposed class representatives, adverse interests of the proposed class representatives, lack of predominance of common issues, the predominance of issues requiring individualized proof, damages claimed and facts surrounding their experiences during Hurricane Katrina and its aftermath.

14.     Sewerage and Water Board of New Orleans Employees, including:

> Sidney Labat, Jr.
> Renauldo Robertson
> Albert Vosbein
> Conard James
> Gerald Tilton
> Gerald Elwood

Live or by declaration/stipulation.  Will testify regarding the operation of the pumping stations and water movement during Hurricane Katrina.

15.     Levee Defendants reserve the right to call to testify live or by deposition any witness designated by plaintiffs or the MRGO Defendants.

**MRGO Defendants' Witnesses:**

1.     Dr. Robert A. Dalrymple

Dr. Dalrymple is an expert in the field of hurricane effects, including storm surge

and associated flooding. Dr. Dalrymple is expected to testify that damage to plaintiffs' properties was caused by a variety of factors, including wind, rain, and flooding from breaches and overtopping of floodwalls and levees. Dr. Dalrymple is expected to offer opinions that the flood model proposed by plaintiffs is of limited accuracy because of the many unknown variables in the model's input data that were estimated, assumed, or omitted, and that the model does not and cannot show the actual nature or sequence of property damage. Dr. Dalrymple may also testify as a fact witness to the extent that he inspected, observed, or witnessed factual information.

2.    Lee Wooten, P.E.

Mr. Wooten is an expert in geotechnical engineering. He is expected to testify regarding the 45 separate sources of water identified in his expert report that led to flooding in the MRGO class area. He is expected to offer opinions that each source could have resulted from combinations of complex factors that would have to be considered to determine what role, if any, a particular potentially responsible person may have had with respect to that source of water, including design, construction, and maintenance issues that require a source-by-source analysis. Mr. Wooten may also testify as a fact witness to the extent that he inspected, observed, or witnessed factual information.

3.    Dr. Kerry Vandell

Dr. Vandell is an expert in real estate economics and valuation. He is expected to testify that properties in the MRGO class areas are particularly diverse in their types of construction, their conditions, and their varying uses, including residential, commercial, and industrial, and that an individualized examination of each particular property is therefore necessary to assess the damage to each property. Dr. Vandell is expected to testify that any approach to determining property damages must be able to differentiate between damages caused by negligence of a particular defendant and those damages caused by other factors, such as wind, rain, and flying debris. Dr. Vandell will explain that plaintiffs' expert, Dr. Kilpatrick, has not constructed or even proposed any model that could isolate or quantify the effects of Hurricane Katrina on a particular property or determine which of those effects were caused by the negligence of any defendant, and that the variability of New Orleans real estate makes the area unsuited for the use of statistical mass-appraisal models such as Dr. Kilpatrick proposes. Dr. Vandell is expected to offer opinions that the results of survey valuation methods suggested by plaintiffs' expert Dr. Kilpatrick are not based on market transactions, and are susceptible to bias due to the survey methodology, such as the ordering of

-10-

survey questions.  Dr. Vandell may also testify as a fact witness to the extent that he inspected, observed, or witnessed factual information.

4.      James Danner, P.E.

James Danner is a Professional Engineer in New Orleans who is expected to offer expert testimony that determining the causes and extent of damage to each individual property in the class areas requires individual forensic inspection, analysis, and evaluation, including consideration of evidence of damage from wind, rain, flying debris, fire and vandalism, topography of the site and surrounding area, elevation of the structure, and the actual level of water, if any, that entered the structure.  Mr. Danner is expected to opine that the causes and extent of damage vary significantly from property to property.  Mr. Danner may also testify as a fact witness to the extent that he inspected, observed, or witnessed factual information.

5.      Michael W. Truax, MAI

Mr. Truax is a Louisiana Certified General Real Estate Appraiser and holds the designation of MAI from the Appraisal Institute.  He is expected to offer expert testimony that individual and detailed property analysis and evaluation are necessary to produce accurate valuation and damage estimates for properties in the proposed class. Mr. Truax is expected to opine that the impact, if any, of flooding on the value of any one property is affected by many factors, including the property's precise location, the condition of the property, its base elevation, the elevation of the structure, the extent of repair, and the amenities of the neighborhood and surrounding areas.  Mr. Truax is expected to testify that the use of mass-appraisal techniques to assess value and determine damages will not produce accurate results because there are unique variables among properties in the New Orleans real estate market.  Mr. Truax may also testify as a fact witness to the extent that he inspected, observed, or witnessed factual information.

6.      Named Plaintiffs (by deposition):

        Kenneth Paul Armstrong, Sr.
        Jeannine B. Armstrong
        Ethel Mae Coats
        Henry Davis
        Glynn Wade

The named plaintiffs will testify regarding their alleged injuries and damages and

-11-

will give evidence concerning the circumstances of their claims relevant to issues of alleged typicality of claims of the proposed class; to alleged adequacy of proposed class representation; to alleged common questions; to whether questions of law or fact common to the members of the proposed class predominate over questions affecting only individual members; and to other requirements for class certification.

7.    Jennifer Redden, GIS Coordinator, U.S. Army Corps of Engineers, Memphis, TN

Fact witness (live or by declaration/stipulation).  Will testify regarding the number and geographic distribution of Hurricane Katrina "blue roofs" in the proposed class area.

8.    Stevan Spencer, P.E., Director of Hurricane and Flood Protection, Orleans LeveDistrict.

Fact witness (live or by declaration/stipulation).  Will testify regarding the scope of the Orleans Levee District jurisdiction for flood control structures in East Orleans and St. Bernard Parishes.

9.    Robert Turner, Executive Director, Lake Borgne Basin Levee District.

Fact witness (live or by declaration/stipulation).  Will testify regarding the events he witnessed on August 29, 2005.

10.    Jack Huerkamp, Sewerage and Water Board of New Orleans

Fact witness (live or by declaration/stipulation). Will testify regarding events related to Hurricane Katrina.

11.    Rudy Bierhuizen, Mike Posey Photography & Video Inc., New Orleans, LA

Fact witness (live or by declaration/stipulation).  Mr. Bierhuizen will testify regarding photographs taken of the named plaintiffs' houses, property, and vicinity on June 19, 2007.

12.    Craig Macluso, Mike Posey Photography & Video Inc., New Orleans, LA

Fact witness (live or by declaration/stipulation).  Mr. Macluso will testify regarding photographs taken of the named plaintiffs' houses, property, and vicinity on June 18, 2007.

-12-

13.     John Drago, R.W. Krebs, LLC, Metairie, LA

Fact witness (live or by declaration/stipulation).  Mr. Drago will testify regarding the surveying of the named plaintiffs' property and the vicinity on June 18 and June 19, 2007.

14.     Noryn A. Ward, Louisiana Farm Bureau Mutual (or other representative of the insurer)

Fact witness (live or by declaration/stipulation).  May testify concerning insurance claims made and litigation in the New Orleans Metropolitan Statistical Area for Orleans and St. Bernard Parishes involving losses allegedly due to wind, rain, fire, vandalism, and/or theft, including numbers of claims and lawsuits and payments in settlements.

15.     Emmet Bittner, Standard Fire Insurance Company (or other representative of the insurer)

Fact witness (live or by declaration/stipulation).  May testify concerning insurance claims made and litigation in the New Orleans Metropolitan Statistical Area for Orleans and St. Bernard Parishes involving losses allegedly due to wind, rain, fire, vandalism, and/or theft, including numbers of claims and lawsuits and payments in settlements.

16.     Christopher J. Blair, State Farm Mutual Automobile Company (or other representative of the insurer)

Fact witness (live or by declaration/stipulation).  May testify concerning insurance claims made and litigation in the New Orleans Metropolitan Statistical Area for Orleans and St. Bernard Parishes involving losses allegedly due to wind, rain, fire, vandalism, and/or theft, including numbers of claims and lawsuits and payments in settlements.

17.     Mark Parabicoli, Liberty Mutual Insurance Company (or other representative of the insurer)

Fact witness (live or by declaration/stipulation).  May testify concerning insurance claims made and litigation in the New Orleans Metropolitan Statistical Area for Orleans and St. Bernard Parishes involving losses allegedly due to wind, rain, fire,

vandalism, and/or theft, including numbers of claims and lawsuits and payments in settlements.

18.   Roland Senechal, Farmers Insurance Exchange (or other representative of the insurer)

Fact witness (live or by declaration/stipulation).  May testify concerning insurance claims made and litigation in the New Orleans Metropolitan Statistical Area for Orleans and St. Bernard Parishes involving losses allegedly due to wind, rain, fire, vandalism, and/or theft, including numbers of claims and lawsuits and payments in settlements.

19.   Paul H. Tracey, Allstate Insurance Company (or other representative of the insurer)

Fact witness (live or by declaration/stipulation).  May testify concerning insurance claims made and litigation in the New Orleans Metropolitan Statistical Area for Orleans and St. Bernard Parishes involving losses allegedly due to wind, rain, fire, vandalism, and/or theft, including numbers of claims and lawsuits and payments in settlements.

20.   Other custodians, officials, or witnesses may testify to authenticate or certify records, documents, photographs, or exhibits.

21.   MRGO Defendants reserve the right to call to testify live or by deposition any witness designated by plaintiffs or the Levee Defendants.

**III.   A List of All Exhibits That Will Be Introduced by Each Side, Including a Statement of Whether the Exhibit Will Be Introduced Without Objection And, If Not, a Brief Recitation of the Objection:**

**Plaintiffs' Exhibits:**

1.   The Interagency Performance Evaluation Team ("IPET) Report.

2.   Independent Levee Investigation Team ("ILIT") Report.

3.   The Team Louisiana report.

4.   Decision Making Chronology for the Lake Pontchartrain & Vicinity Hurricane Protection Project.

5.    Any and all documents concerning any Form SF-95, including the Form SF-95 document itself, any attachments, responses, or replies. Objection, to the extent offered, they must be filed under seal because they were produced pursuant to court order (Doc. 6053) designating them as "Confidential Information" pursuant to the master protective order (Doc. 5393).

6.    The 1984 Re-Evaluation Study conducted by the Army Corps.
      - Objection, relevance.

7.    The expert report of G. Paul Kemp, and any attachments thereto.

8.    The expert report of John A. Kilpatrick, and any attachments thereto.

9.    The expert report of Chad A. Morris, and any attachments thereto.

10.   The expert report of Johannes Vrijling, and any attachments thereto.

11.   Delft University computer model of water at time of flood, including all outputs, including animated visual outputs.

12.   Any and all curriculum vitae for any expert.

13.   Any and all exhibits listed by any other party.

14.   Any and all exhibits introduced by any other party.

15.   Plaintiffs reserve the right to use any and all documents attached to or filed as exhibits to the class-certification briefs filed by any other party.

16.   Plaintiffs reserve the right to use any and all documents, pictures, or audiovisuals that defendants have been ordered to produce or may be required to produce by motion to compel that have not yet been produced.

**Trial Graphics**

17.   Map and/or diagrams depicting visual cues of witness testimony.

18.   The Energy and Water Development Appropriations Act of 1992 (Exhibit A9, Levee Opposition Memorandum).
      - Objection, relevance.

-15-

**Levee Defendants' Exhibits:**

1.   Maps and photographs depicting flood control structures, drainage structures, topography, and boundaries of proposed class and sub-class areas;

2.   Database and map regarding temporary roofing "blue roofs" utilized following Hurricane Katrina;

3.   Photographs of the proposed class representatives' properties;

4.   O.L.D. Profile Elevations Drawing - May 2005;

5.   Maps showing 20 and 37 drainage sub-basins in the proposed Levee class area;

6.   Chart by Erik Nelson showing the average ground elevation and the IPET maximum flood elevation for each structure, e.g. class and sub-class representatives' dwellings, buildings, etc.;

7.   Map of New Orleans and Adjacent Parts of Jefferson & St. Bernard Parishes. September 21, 2006;

8.   Dr. Paul Kuhlmeier CV, deposition transcript, report, exhibits, charts, graphs, drawings, photographs, imagery, and other reliance documents;

9.   Michael W. Truax CV, deposition transcript, report, exhibits, charts, graphs, drawings, photographs, imagery, and other reliance documents;

10   Dr. James A. Richardson CV, deposition transcript, report, exhibits, charts, graphs, drawings, photographs, imagery, and other reliance documents;

11.  Dr. Erik L. Nelson CV, deposition transcript, report, exhibits, charts, graphs, drawings, photographs, imagery, and other reliance documents;

12.  Demonstrative evidence and/or animation generated by Dr. Paul Kuhlmeier;

13.  Standard Form 95's that were submitted to the United States by proposed class representatives in relation to Hurricane Katrina produced by Plaintiffs;

14.  Standard Form 95's of the putative class members (to be produced under seal);

15.  Documents supportive of claims made for assistance from the Louisiana Recovery

Authority by proposed class representatives;

16.    Transcripts (designated portions thereof), exhibits, and audiovisuals of the named
       plaintiffs' depositions, and summaries thereof;

17.    Deposition transcript designations of the Sewerage and Water Board
       Representative, John R. Huerkamp, July 27, 2007 - and exhibits;

18.    Depositions of plaintiffs experts, their expert reports and exhibits, and documents
       produced in response to subpoenas - impeachment purposes;

19.    Diagram of Sewerage and Water Board of New Orleans' Systemwide Drainage
       Network Hurricane Katrina Flood Impact Map;

20.    Sewerage and Water Board of New Orleans Sewer Evaluation of the New Orleans
       Metropolitan Area Map;

21.    Sewerage and Water Board of New Orleans Drainage Pumping Station Logs;

22.    Sewerage and Water Board of New Orleans Pumping Capacity Schematics;

23.    Photographs and videotape of the flooding produced by SWBNO;
       - Objection, foundation.

24.    Insurance claim files by the proposed class representatives to be submitted under
       seal if necessary;

25.    Affidavits regarding insurance claims made by carriers to be submitted under
       seal if necessary;

26.    Defendants reserve the right to use any and all documents attached to or filed as
       exhibits to the class-certification briefs filed by plaintiffs, Levee defendants, or
       MRGO defendants.

27.    Defendants reserve the right to use any and all documents, pictures, or
       audiovisuals that plaintiffs have been ordered to produce or may be required to
       produce by motion to compel that have not yet been produced.

**MRGO Defendants' Exhibits**

1.     Interagency Performance Evaluation Task Force ("IPET") Report, including

underlying data;

2.    "Team Louisiana" Report;

3.    Independent Levee Investigation Team ("ILIT") Report;

4.    American Society of Civil Engineers, The New Orleans Hurricane Protection
      System: What Went Wrong and Why;
      - Objection, foundation.

5.    Decision-Making Chronology For The Lake Ponchartrain & Vicinity Hurricane
      Protection Project;

6.    Dr. Robert A. Dalrymple CV, deposition transcript, report, exhibits, charts,
      graphs, drawings, photographs, imagery, and other reliance documents;

7.    Dr. Kerry Vandell CV, deposition transcript, report, exhibits, charts, graphs,
      drawings, photographs, imagery, and other reliance documents;

8.    James Danner CV, deposition transcript, report, exhibits, charts, graphs, drawings,
      photographs, imagery, and other reliance documents;

9.    Michael W. Truax CV, deposition transcript, report, exhibits, charts, graphs,
      drawings, photographs, imagery, and other reliance documents;

10.   Lee Wooten CV, deposition transcript, report, exhibits, charts, graphs, drawings,
      photographs, imagery, and other reliance documents;

11.   Any exhibit offered by the MRGO or Levee defendants at the Daubert hearing;

12.   Transcripts and audiovisuals of depositions of plaintiffs' experts, deposition
      exhibits, their expert reports and exhibits, and documents produced in response to
      subpoenas (impeachment purposes);

13.   All transcripts, audiovisuals, exhibits marked, and documents or materials
      produced at all witness depositions;

14.   Standard Form 95s that were submitted to the U.S. Army Corps of Engineers by
      named plaintiffs or proposed class members in relation to Hurricane Katrina;

15.   Records of insurance claims made by named plaintiffs, as well as proposed class

members, to recover pursuant to any insurance policy for damages resulting from
or at the approximate time of Hurricanes Katrina and/or Rita;

16.  Documents supportive of claims for assistance from the Louisiana Recovery
     Authority and the Road Home Program made by named plaintiffs, as well as
     proposed class members arising from damage caused by Hurricane Katrina and/or
     Rita;

17.  Files produced by plaintiffs (KLC 0000001-KLC 0221283);

18.  Affidavits, business records, claims files, and other records from insurance
     companies, including affidavit from Noryn A. Ward of Louisiana Farm Bureau
     Mutual, affidavit of Emmet Bittner of the Standard Fire Insurance Company,
     affidavit of Christopher J. Blair of State Farm Mutual Automobile Company,
     affidavit of Mark Parabicoli of Liberty Mutual Insurance Company, affidavit of
     Roland Senechal of Farmers Insurance Exchange, affidavit of Paul H. Tracey of
     Allstate Insurance Company;

19.  Photographs or audiovisual materials of the named plaintiffs' homes and
     businesses and vicinity;

20.  O.L.D. Profile Elevations Drawing - May 2005;

21.  Map of the proposed class and sub-class boundaries;

22.  Map(s) of New Orleans East, the Lower Ninth Ward, and St. Bernard Parish;

23.  Map(s) of the Greater New Orleans Area depicting the components of the levee
     and drainage systems, including but not limited to the canals and waterways,
     floodwalls, pumping stations, berms, drainage, and levees;

24.  Aerial and ground-level photographs of the proposed class areas and vicinity,
     including New Orleans East, the Lower Ninth Ward, and St. Bernard Parish;

25.  LIDAR data and imaging of New Orleans and vicinity;

26.  FEMA aerial photography of New Orleans and vicinity;

27.  Topography database of New Orleans and vicinity;
     - Objection, foundation.

-19-

28. Satellite imagery, data base, and map regarding temporary roofing "blue roofs" utilized following Hurricane Katrina;
- Objection, foundation.

29. GCR home survey report database;
- Objection, foundation.

30. Series of articles in 2002 regarding the effects of a Category 5 hurricane on New Orleans based on a joint study by Louisiana State University and the U.S. Army Corps of Engineers;

31. Times-Picayune article entitled "City's Fate Sealed in Hours," generated by Bob Marshall, dated May 14, 2006;
- Objection, hearsay, relevance.

32. Times-Picayune article entitled "Katrina left many in eastern N.O. unscathed," generated by Leslie Williams, dated May 7, 2007;
- Objection, hearsay, relevance.

33. Times-Picayune article entitled "Home sales tell tale of two markets," generated by Greg Thomas, dated January 7, 2007;
- Objection, hearsay, relevance.

34. All pleadings filed with the Court;

35. All discovery responses served by the parties;

36. Economic and real-estate data, public records, commentary, and scholarly papers relating to damages;
- Objection, foundation.

37. Declaration of Edward J. Robin, Sr. in Tommaseo v. United States, No. 05-cv-1119 SGB (Fed. Cl., declaration executed on Nov. 11, 2006);

38. Any and all exhibits listed by any other party;

39. Any and all exhibits introduced by any other party;

40. Defendants reserve the right to use any and all documents attached to or filed as exhibits to the class-certification briefs filed by plaintiffs, Levee defendants, or MRGO defendants; and

41.     Defendants reserve the right to use any and all documents, pictures, or audiovisuals that plaintiffs have been ordered to produce or may be required to produce by motion to compel that have not yet been produced.

IV.     **Stipulations of Fact and as to the Authenticity of Exhibits:**

   **Stipulations:**

1.     On August 29, 2005, Hurricane Katrina struck southeastern Louisiana.

2.     Solely for the purposes of the class certification hearing, the reports of the experts (with attachments) are admissible as evidence, unless the expert is excluded by the Court. Submission of an expert report will not preclude any party from calling the expert live at the hearing.

**Levee Defendants' Proposed Stipulations:**

1.     The plaintiffs have alleged that Modjeski & Masters, Inc. was negligent in the engineering, design, analysis, and recommendations regarding critical aspects of the 17th Street Canal dredging project, and negligently failed to place proper hydrostatic pressure monitors during the dredging of the test section of the 17th Street Canal in 1983, negligently placed the monitoring piezometers on the wrong side of the canal, and negligently failed to take into account the seepage flow of the permeable soils already in progress when the piezometers were installed, all causing or contributing to the causation of the breach of the 17th Street Canal.[5]

2.     The plaintiffs have alleged that Eustis Engineering Co., Inc. was negligent in the engineering, design, analysis, and recommendations regarding critical aspects of the 17th

---

[5]     Superseding Master Consolidated Class Action Complaint ("Superseding Complaint"), paras. 214-215.

Street Canal dredging project, and negligently failed to place proper hydrostatic pressure monitors during the dredging of the test section of the 17th Street Canal in 1983, negligently placed the monitoring piezometers on the wrong side of the canal, and negligently failed to take into account the seepage flow of the permeable soils already in progress when the piezometers were installed, all causing or contributing to the causation of the breach of the 17th Street Canal.[6]

   3.  The plaintiffs have alleged that Modjeski & Masters, Inc. was negligent in conducting the design and analysis of the levee/flood wall system of the 17th Street Canal, and negligently proceeded in the support of and participation in the project thereby causing or contributing to the causation of the breach of the 17th Street Canal.[7]

   4.  The plaintiffs have alleged that Eustis Engineering Co., Inc. was negligent in conducting the design and analysis of the levee/flood wall system of the 17th Street Canal, and negligently proceeded in the support of and participation in the project thereby causing or contributing to the causation of the breach of the 17th Street Canal.[8]

   5.  The plaintiffs have alleged that Boh Bros. Construction Co., Inc. was negligent in conducting the construction of the levee/flood wall system of the 17th Street Canal, negligently proceeded in the support of and participation in the project, and during the construction activity negligently placed heavy equipment on the levee system thereby causing or contributing to the causation of the breach of the 17th Street Canal.[9]

_____

[6] Superseding Complaint, at paras. 214-215.
[7] Superseding Complaint, paras. 223-224.
[8] Superseding Complaint, paras. 223-224.
[9] Superseding Complaint, at paras. 223, 225, 227-228.

6.      The plaintiffs have alleged that Pittman Construction Co., Inc./C. R. Pittman Construction Co., Inc. was negligent in conducting the construction of the levee/flood wall system of the 17th Street Canal, negligently proceeded in the support of and participation in the project, and during the construction activity negligently placed heavy equipment on the levee system thereby causing or contributing to the causation of the breach of the 17th Street Canal.[10]

7.      The plaintiffs have alleged that Gulf Group Inc. of Florida negligently engaged in blasting, demolition and pile driving activities and negligently placed heavy equipment during a bridge repair project thereby causing or contributing to the causation of the breach of the 17th Street Canal.[11]

8.      The plaintiffs have alleged that Burk-Kleinpeter, Inc./Burk-Kleinpeter, L.L.C. negligently designed and/or constructed the levee and flood wall system of the London Avenue Canal thereby causing or contributing to the causation of the breaches of the London Avenue Canal.[12]

9.      The plaintiffs have alleged that B & K Construction Co., Inc., negligently constructed the levee and flood wall system, negligently drove sheet piling, negligently poured concrete monoliths, and negligently constructed the I-walls of the London Avenue Canal thereby causing or contributing to the causation of the breaches of the London Avenue Canal.[13]

10.     The plaintiffs have alleged that Gotech, Inc. negligently designed and/or

---

[10]    Superseding Complaint, at paras. 223, 225-228.
[11]    Superseding Complaint, at paras. 232-234.
[12]    Superseding Complaint, at para. 239.
[13]    Superseding Complaint, at para. 238.

constructed the levee and flood wall system of the London Avenue Canal which faulty design or construction caused or contributed to the breaches of the London Avenue Canal.[14]

11.     The plaintiffs have alleged that Public Belt Railroad Commission for the City of New Orleans negligently failed to assure that repairs were made to the damaged flood gate W-30 thereby causing or contributing to the breaches of the IHNC.[15]

12.     The plaintiffs have alleged that CSX Transportation Corp./CSX Transportation, Inc. was negligent in the design and construction of a railroad crossing by utilizing inappropriate building materials and failing to install erosion prevention devices thereby causing or contributing to the breaches of the IHNC.[16]

13.     The plaintiffs have alleged that Pittman Construction Co., Inc./C. R. Pittman Construction Co., Inc. was negligent in failing to discover and account for the soil and flood wall stability problems during the engineer, design, and construction of the London Avenue Canal flood protection system thereby causing or contributing to the causation of the breaches of the London Avenue Canal.[17]

14.     The plaintiffs have alleged that James Construction Group, Inc. was negligent in failing to discover and account for the soil and flood wall stability problems during the engineer, design, and construction of the London Avenue Canal flood protection system and was negligent in the demolition and construction during a canal bridge project thereby causing or

---

[14]     Superseding Complaint, at para. 240.
[15]     Superseding Complaint, at paras. 256-257.
[16]     Superseding Complaint, at paras. 258-261.
[17]     Superseding Complaint, at paras. 78, 87.

-24-

contributing to the causation of the breaches of the London Avenue Canal.[18]

15.      John Smith, senior hydraulic engineer, U.S. Army Corp of Engineers,
Vicksburg, Mississippi, if called would testify: that he led a team of Corps of Engineers
employees that delineated 20 sub-basins in the New Orleans East Bank area that were used for
the IPET report.  Since the release of the IPET report, as part of other studies for the New
Orleans District Corps of Engineers Mr. Smith and his team have continued to refine the IPET
model of the New Orleans East Bank area to include 37 sub-basins.  Mr. Smith's team is
continuing its work and may identify additional sub-basins.

16.      Jennifer Redden, GIS coordinator, U.S. Army Corps of Engineers,
Memphis, Tennessee, if called would testify: that she managed the GIS database which contains
blue roof data for the New Orleans East Bank area after Hurricane Katrina, that shows that there
were at least 6288 blue roofs installed in the New Orleans East Bank area.

17.      Pump operators from the Sewerage and Water Board of New Orleans, if
called would testify:

a.      Pump Station No. 1, located at S. Broad Street and Martin Luther
King Boulevard, operated throughout the hurricane and continued to pump water until
9:45 a.m. on Tuesday, August 30, 2005.  There was no flooding in the vicinity of Pump
Station No. 1 until approximately 12:30 p.m. on Tuesday, August 30, 2005, when station
personnel observed a rapid flow of water from the northeast from the direction of Pump

---

[18]      Superseding Complaint, at paras. 78, 87-88.

Station No. 2 that flooded the area and continued to rise until Wednesday morning, August 31.

        b.        Flooding in the street around Pump Station No. 2, located on N. Broad Street between St. Louis and Conti St., began mid day on Monday, August 29. By approximately 6:00 p.m. on August 29, water began to rise precipitously and entered the station after midnight on the evening of August 29.

        c.        The streets around Pump Station No. 3, located on N. Broad Street at Florida and A.P. Tureaud Ave., were dry until approximately 7:30 a.m. on Monday, August 29, when personnel observed water coming down N. Broad Street from Gentilly and up the Florida Canal from the east. At 8:25 a.m. on August 29, the station had to shut down due to flooding in the station.

        d.        The area around Pump Station No. 4, located on Warrington Drive at Prentiss Ave., was dry until approximately 10:00 a.m. on August 29, 2005 when water started rising in the street. By mid-afternoon, the station was flooding.

        e.        Pump Station No. 6, located on the 17th Street Canal at 345 Orpheum Ave., operated throughout the hurricane until approximately 6:10 p.m. on August 29 when water entered the station from the northeast end of the station. All pumps were stopped and fronting protection was closed. At 6:20 p.m. on August 29, all power was shut off.

        f.        Pump Station No. 7 stopped operating at about 7:00 a.m. on Monday, August 29, because water was entering the station through its wall facing the

-26-

Orleans Avenue Canal and threatened the station's transformers.  There was no flooding

in the streets around Pump Station No. 7 at this time.  At mid-morning, for approximately

1 to 2 hours water overtopped the levee on the Orleans Avenue Canal by up to 8 to 10

inches.  After the overtopping stopped, the streets around the station were not flooded.  At

approximately noon on August 29, water began rushing  northward up Marconi Drive

past Pump Station No. 7 from the direction of Tad Gormley stadium.

g.      At Pump Station No. 19 on the west bank of the IHNC near Florida

Ave., operators observed 3-4 feet of water coming over the IHNC floodwall starting at

between 3:00 to 4:00 a.m. on August 29, 2005.  After losing water pressure, all pumps

were stopped at about 5:00 a.m. on August 29 and were not restarted until 2:00 p.m. on

August 30.

h.      Water levels rose quickly at the I-10 Pump Station, located on

Academy Drive near Lake Lawn Cemetery, at about 9:00 a.m. on August 29, 2005.  The

water level continued to rise until approximately 5:00 p.m. on Tuesday, August 30.

i.      The Pritchard Pump Station, located on the Monticello Canal

between Earhart and Airline Drive, operated on the morning of August 29 until 6:50 a.m.

when the pumps were stopped because the water in the Monticello Canal was at the same

level as the water in the adjoining streets.

**MRGO Defendants' Proposed Stipulations:**

1.      Stevan G. Spencer, Director of Hurricane & Flood Protection for the Orleans

Levee District, if called would testify: that with respect to the MRGO litigation, the flood control

-27-

structures within the jurisdiction of the Orleans Levee District are as follows:

      a.     all of east side of the IHNC from Lake Pontchartrain to the Corps locks on the Mississippi River (approximately 4.1 miles);

      b.     all of west side of the IHNC from Lake Pontchartrain to the Corps Locks on the Mississippi River (approximately 5.5 miles);

      c.     the north side of GIWW from the IHNC to the end of the levee at the CSX railroad floodgate in New Orleans East (approximately 15.7 miles, including the Michoud Canal floodwall); and

      d.     the south side of the GIWW from the IHNC to the Hwy. 47 bridge and then approximately three miles further to the east to the Bayou Bienvenue Structure, and then 500' +/- further east to the St. Bernard Parish line on the MRGO (approximately 7.0 miles total); all as shown on the Profile Elevations map - May 2005.

      2.     Jennifer Redden, GIS coordinator, U.S. Army Corps of Engineers, Memphis, Tennessee, if called would testify: that she managed the GIS database which contains blue roof data for the MRGO class area after Hurricane Katrina, that shows blue roofs installed in the MRGO class area.

      3.     Plaintiffs admit that their claim against defendant WGII is limited to potential liability for the breaches that occurred at two sites along the east bank of the Inner Harbor Navigation Canal: (1) the North Breach (Florida Avenue); and (2) the South Breach (N. Roman Street to N. Johnson Street). Plaintiffs admit that WGII is not responsible for any breaches or overtopping at other locations.

-28-

V.      **A List of all Pending Motions Concerning Class Certification:**

MRGO and Levee PSLC's Joint Motion to Modify Case Management and Scheduling Order No. 4, as Amended, To Defer Class action Certification Proceedings (Doc. No. 8603).

Levee Defendants' Motion to Strike Certain Allegations Contained in Plaintiffs' First Supplemental and Amending Levee Master Consolidated Class Action Complaint and Plaintiffs' Corrected Restated Levee Master Consolidated Class Action Complaint (Doc. No. 8425), in Levee.

Defendants' Motion to Exclude the Report and Testimony of Plaintiffs' Putative Expert John A. Kilpatrick (Doc. No. 7992), in Levee and MRGO.

Plaintiffs' Motion in Limine to Exclude Class Certification-Related Testimony of Michael W. Truax (Doc. No. 8116), in Levee and MRGO.

United States Motion to Dismiss Counts I - III, V - VII and to Strike Remaining Counts (Doc. No. 6380), in Levee.

Washington Group International, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c) (Doc. No. 4140), in MRGO.

VI.     **Any Other Matters to Be Addressed for Purpose of the Class Certification Hearing:**

The parties are discussing and will submit a proposed schedule for the class certification hearing, including the proposed amount of time for witnesses, prior to the pre-hearing conference.

-29-

NEW ORLEANS, LOUISIANA, this _____ day of October, 2007.

_____
UNITED STATES DISTRICT JUDGE

Dated: October 25, 2007          Respectfully submitted,

   s/Joseph M. Bruno
LAW OFFICES OF JOSEPH M. BRUNO
Joseph M. Bruno - #3604
David S. Scalia - #21369
L. Scott Joanen - #21431
855 Baronne Street
New Orleans, Louisiana 70113
TELEPHONE:          (504) 525-1335
FACSIMILE:          (504) 561-6775

and

   s/Gerald E. Meunier
GAINSBURGH, BENJAMIN, DAVID,
MEUNIER & WARSHAUER, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
TELEPHONE:          (504) 522-2304
FACSIMILE:          (504) 528-9973
Attorneys for LEVEE PLAINTIFFS

For LEVEE PLAINTIFFS' SUB-GROUP
LITIGATION COMMITTEE

     Gerald E. Meuneir
     Daniel E. Becnel, Jr.
     Joseph M. Bruno
     D. Blayne Honeycutt
     Hugh P. Lambert
     Darlene Jacobs
     Walter Dumas

s/James Parkerson Roy
JAMES PARKERSON ROY - #11511
MRGO PSLC LIAISON COUNSEL
DOMENGEAUX, WRIGHT, ROY &
EDWARDS, L.L.C.
P.O. Box 3668
Lafayette, Louisiana 70502
TELEPHONE:        (337) 593-4190
                            (337) 233-3033
FACSIMILE:        (337) 233-2796
Attorneys for MRGO PLAINTIFFS

For MRGO PLAINTIFFS' SUB-GROUP
LITIGATION COMMITTEE

    Jonathan Andry
    Clay Mitchell
    Pierce O'Donnell
    James Parkerson Roy

s/Ben L. Mayeaux
LABORDE & NEUNER
Ben L. Mayeaux - #19042
James L. Pate - # 10333
Gregory A. Koury - #26364
One Petroleum Center, Suite 200
1001 West Pinhook Road
Lafayette, Louisiana 70503
TELEPHONE:        (337) 237-7000
FACSIMILE:        (337) 233-9450

and

-32-

McCRANIE, SISTRUNK, ANZELMO, HARDY,
MAXWELL & McDANIEL
Thomas P. Anzelmo, T.A. - #2533
Mark E. Hanna - #19336
Kyle P. Kirsch - #26363
Andre J. Lagarde - #28649
3445 N. Causeway Boulevard, Suite 800
Metairie, Louisiana 70002
TELEPHONE:          (504) 831-0946
FACSIMILE:          (504) 831-2492
Attorneys for the ORLEANS LEVEE DISTRICT

and


 _s/Charles M. Lanier, Jr._____
CHRISTOVICH & KEARNEY, LLP
Mr. Charles M. Lanier, Jr. #18299
Mr. J. Warren Gardner, Jr. #5928
Ms. Elizabeth Cordes #1786
Pan American Life Center
601 Poydras Street, Suite 2300
New Orleans, LA 70130-6078
TELEPHONE:          (504) 593-4272
FACSIMILE:          (504) 561-5743
Attorneys for the SEWERAGE & WATER
BOARD OF NEW ORLEANS

and

  s/Gary M. Zwain
DUPLASS, ZWAIN, BOURGEOIS, MORTON,
  PFISTER & WEINSTOCK
Lawrence J. Duplass #5199
Gary M. Zwain #13809
Andrew D. Weinstock #18495
3838 N. Causeway Blvd., Suite 2900
Metairie, Louisiana 70002
TELEPHONE:      (504) 832-3700
FACSIMILE:      (504) 837-3119
Attorneys for the EAST JEFFERSON LEVEE
DISTRICT and LAKE BORGNE BASIN LEVEE
DISTRICT

and

  s/Robin D. Smith
U.S. DEPARTMENT OF JUSTICE
Peter D. Keisler
Assistant Attorney General
Jeffrey S. Bucholtz
Principal Deputy Assistant Attorney General
C. Frederick Beckner III
Deputy Assistant Attorney General
Phyllis J. Pyles
Director, Torts Branch
Robin D. Smith
Trial Attorney
Torts Branch, Civil Division
P.O. Box 888
Benjamin Franklin Station
Washington D.C. 20044
TELEPHONE:      (202) 616-4289
FACSIMILE       (202) 616-5200
Attorneys for the UNITED STATES OF
AMERICA

and

-34-

_s/Joseph Guichet_____
LUGENBUHL, WHEATON, PECK, RANKIN &
  HUBBARD
Ralph S. Hubbard, III - #7040
Joseph Guichet - #24441
Rachel Meese - #25457
601 Poydras Street
Pan American Life Center, Suite 2775
New Orleans, Louisiana 70130-6027
TELEPHONE:          (504) 568-1990
FACSIMILE:          (504) 310-9195
Attorneys for ST. PAUL FIRE AND MARINE
INSURANCE COMPANY

and

_/s/William D. Treeby_
William D. Treeby, 12901
Carmelite M. Bertaut, 3054
Heather S. Lonian, 29956
            Of
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361
Attorneys for WASHINGTON GROUP
INTERNATIONAL, INC.

Of counsel

Adrian Wager-Zito
Julie McEvoy
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-4645
Facsimile:  (202) 626-1700

-35-

Jerome R. Doak
Margaret I. Lyle
Amy Payne
Jones Day
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2007, a copy of the above and foregoing Class Certification Pre-Hearing Order was filed electronically with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to All Known Counsel of Record by operation of the Court's electronic filing system.

s/Ben L. Mayeaux
COUNSEL

-36-