UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | NO. 05-4182 "K" (2) |
| PERTAINS TO: ALL INSURANCE CASES | JUDGE DUVAL MAG. WILKINSON |

**REPLY MEMORANDUM IN SUPPORT OF INSURANCE DEFENDANTS' MOTION TO: (1) MODIFY THE COURT'S MAY 1, 2006 CONSOLIDATION ORDER; AND (2) DECONSOLIDATE AND/OR SEVER CASES WITHIN INSURANCE UMBRELLA**

**MAY IT PLEASE THE COURT:**

This Reply Memorandum is respectfully submitted by Insurer Defendants Liaison Counsel on behalf of all insurer defendants in support of their Motion to (1) Modify the Court's May 1, 2006 Consolidation Order and (2) Deconsolidate and/or Sever Cases within Insurance Umbrella.

**I.   Introduction**

Plaintiffs' Subgroup Litigation Committee – Insurance ("PSLC-I") urges the Court to deny the Insurance Defendants' motion to modify the Court's May 1, 2006 consolidation order and to deconsolidate and/or sever the Insurance claims currently within the Katrina Canal Breaches Consolidated Litigation. The PSLC-I's opposition is based on three primary arguments, none of which has merit.

First, contrary to the PSLC-I's assertions, this Court cannot ignore the Fifth Circuit's opinion regarding the proper interpretation of the "flood" exclusion and wait to see how the

-1-

Louisiana state court system might ultimately resolve the issue. Rather, the Fifth Circuit's opinion and mandate constitute the controlling law of this case, which this Court is obligated to follow and apply. Even if a subsequent Louisiana state court decision should disagree with the Fifth Circuit, this would not require the Court to follow that state court decision. To the contrary, under the law of the case doctrine, the Court should follow the Fifth Circuit's opinion, because it represents the most persuasive, compelling, and accurate prediction of how the Louisiana Supreme Court would decide the issue at bar.

Second, in light of the Fifth Circuit's opinion, the reason the Court joined the Insurance cases in this consolidated litigation is no longer applicable. Specifically, under the Fifth Circuit's decision, for the purposes of insurance coverage, it is irrelevant whether the flooding in New Orleans associated with Hurricane Katrina was brought about by human negligence, as opposed to some other cause. While the PSLC-I argues there are several other, supposedly "common" issues that still justify maintaining the consolidated Insurance umbrella, those issues in no way share a "common" application to all the Insurance cases. To the contrary, each individual Insurance case will need to be resolved on its own, unique, claim-specific facts – a situation that calls out for deconsolidation and severance.

Third, keeping the Insurance cases within the consolidated litigation will not further the goals of judicial economy and efficiency, as the PSLC-I argues, but instead will have the exact opposite effect. There is no need or reason to delay the resolution of thousands of Insurance cases while the Court deals with the complex, time-consuming, and expensive discovery regarding the cause of the levee breaches. Because each individual Insurance case will turn on unique, case-specific factual issues, those cases should be made subject to separate and individually tailored case management procedures, as this will facilitate their efficient and timely resolution. Moreover, the expansive, purportedly "common" discovery the PSLC-I seeks to

pursue in the Insurance cases will unnecessarily delay the resolution of not only the Insurance cases, but also the numerous other cases within the Levee and MRGO umbrellas. Deconsolidating and severing the Insurance cases will thus promote efficiency in all three of the presently consolidated umbrellas, and will help relieve the crushing burden currently placed on the Court and its administrative staff.

## II.     This Court Is Obligated to Follow the Fifth Circuit's *Erie* Determination.

According to the PSLC-I, this Court can ignore the Fifth Circuit's opinion regarding the proper interpretation of the "flood" exclusion, as well as the August 27, 2007 mandate ordering this Court to reverse its contrary ruling in the *Vanderbrook*, *Chehardy*, and *Xavier* actions. Instead, the PSLC-I argues this Court should wait and see what happens in the various actions pending in the Louisiana state court system and then decide whether or not it needs to follow the Fifth Circuit's opinion. Essentially, the PSLC-I is urging the Court to disregard the Fifth Circuit's mandate – which, by the time this motion is heard, will be more than two months old – in the hopes that a subsequent state appellate decision will disagree with the Fifth Circuit. This Court must refuse the PSLC-I's improper invitation, for multiple reasons.

First, it is undisputed that there is no controlling precedent from the highest court of the State of Louisiana. The Louisiana Supreme Court has not decided the issue at bar – namely, whether the "flood" exclusion precludes coverage for water damage resulting from the inundation of New Orleans following Hurricane Katrina, including inundations caused, in whole or part, from human negligence. Indeed, no Louisiana state appellate court has decided that issue, either. The PSLC-I merely points to four Louisiana state *trial court* cases which it claims "contradict" the Fifth Circuit's opinion. (*See* Opp., p. 5, fn. 8.)[1]  All four of those trial court

---

[1] The four state court decisions at issue are *Historic Restoration, Inc. v. RSUI Indem. Co.*, No. 06-4990 (Div. D-16, Dec. 5, 2006); *Sher v. Lafayette Ins. Co.*, No. 06-9276 (Div. G-11, Feb. 9, 2007); *White III, LLC v. Travelers Prop. & Cas. Co. of Amer.*, No. 06-09607 (Div. G-11, July

decisions were issued *before* the Fifth Circuit issued its opinion, and two of them were even cited in the PSLC-I's appellate briefs. More importantly, though, as the PSLC-I concedes, none of those four cases has resulted in an appellate court ruling – much less a decision by the Louisiana Supreme Court.

In the absence of controlling state authority, the duty of the Fifth Circuit was to predict how the Louisiana Supreme Court would rule. *See American Internat'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("In the absence of a final decision by the state's highest court on the issue at hand, it is the duty of the federal court to determine, in its best judgment, how the highest court of the state would resolve the issue if presented with the same case."). In making this determination, the Fifth Circuit was "not strictly bound" by Louisiana appellate court decisions, and in fact could "disregard" such decisions if it was "convinced 'by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 2002)).

Applying these standards, the Fifth Circuit determined that under Louisiana law, the "flood" exclusion unambiguously barred coverage for the water damage resulting from breaches in New Orleans' levee system, regardless of whether the water escaped as a result of man-made, as opposed to natural, causes. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 196, 221 (5th Cir. 2007). In so holding, the Fifth Circuit relied on the pertinent Louisiana Civil Code sections and Louisiana case authorities concerning the interpretation of contracts generally, and

---

26, 2007); and *White v. Louisiana Citizens Prop. Ins. Corp.*, No. 06-7975 (Div. K-5, July 26, 2007). The PSLC-I's opposition purports to attach copies of these decisions as exhibits, but no such exhibits are attached. Accordingly, the Insurance Defendants have attached copies hereto as Exhibits "A" through "D." As the Court will see, only one of these four decisions – *Historic Restoration v. RSUI* – includes any meaningful, specific discussion of the trial court's rationale or logic. The three other decisions are only one page long each, and they simply conclude, without explanation, that the "flood" exclusion is "ambiguous."

insurance contracts specifically. *See id*, 495 F.3d at 206-210. The court also considered multiple dictionary definitions, as well as a litany of persuasive authorities from Louisiana and other jurisdictions. *See id*, 495 F.3d at 210-216.

While the PSLC-I tries to undermine the Fifth Circuit's opinion by calling it a "guess," the phrase "*Erie* guess" is a common and accepted term of art. It in no way suggests the Fifth Circuit reached its decision in a haphazard or indifferent manner. Rather, it simply reflects the fact that the Louisiana Supreme Court has yet to decide the issue presented. *See Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 406 (5th Cir. 2004) ("[B]ecause the Texas Supreme Court has not ruled on the [issue at bar], the district court was required to make an Erie-guess as to how that court would apply substantive state law.").

In these circumstances, this Court has no discretion to decide for itself whether to follow the Fifth Circuit's opinion and heed its mandate. A factual or legal issue decided by a Circuit Court establishes the "law of the case" that must be followed in all subsequent proceedings by the District Court. *See Cooper Tire & Rubber Co. v. Farese*, 2007 U.S. App. LEXIS 22565 at *4 (5th Cir. 2007) (*citing Lyons v. Fisher*, 888 F.2d 1071, 1074 (5th Cir. 1989)). The non-discretionary nature of a District Court's obligation to follow a Circuit Court's order on remand is also known as the "mandate rule," a specific application of the law-of-the-case doctrine that "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004). Succinctly stated, "a district court on remand is not free to disregard the 'explicit directives' of the [federal] appellate court." *Kapche v. City of San Antonio*, 304 F.3d 493, 496 (5th Cir. 2002).

Even in cases where, unlike here, there is contrary state appellate court authority, that authority does not automatically give a District Court *carte blanche* authority to deviate from the

law of the case as established by the Circuit Court.  *See*, *e.g.*, *Shelp v. Nat'l Surety Corp.*, 333 F.2d 431, 438-439 (5th Cir. 1964), *cert. den.* 379 U.S. 945; *Matheny v. Glen Falls Ins. Co.*, 152 F.3d 348, 351-54 (5th Cir. 1998); *Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat'l Ins. Group*, 750 F.2d 619, 624 (7th Cir. 1984).  Rather, "when there is persuasive data that the highest court of the state would decide otherwise than the intermediate appellate State court," the intermediate appellate opinion can and should be disregarded.  *Shelp*, 333 F.2d at 439 (internal quotation marks and citation omitted); *accord American Internat'l*, 352 F.3d at 260 (federal court sitting in diversity may "disregard" state appellate court decisions if "other persuasive data" indicates the "highest court of the state would decide otherwise") (internal quotation marks omitted).

The decision in *Shelp* is instructive.  There, the plaintiffs urged the District Court to follow an intermediate state court appellate decision, *Bradley v. Yancey*.  That case, which held that an English text should be used to resolve a landlord liability issue, was the only decision construing the Louisiana statute in question.  The District Court declined to follow *Bradley*, and instead applied a competing statute derived from French texts.  On appeal, the Fifth Circuit conceded *Bradley* was relevant and "on all fours." *Id.* at 439.  Nevertheless, it held the District Court properly declined to follow *Bradley*, in light of the Louisiana Supreme Court's long history of favoring French texts over the English analogues.  *Id.* at 438 (string-citing numerous state supreme court cases).

Here, as in *Shelp*, the Fifth Circuit's decision is supported by the primary authority of the Louisiana Code and a long line of Louisiana Supreme Court authorities clarifying the rules for interpreting insurance contracts.  The Fifth Circuit also considered a number of secondary authorities, such as intermediate appellate court decisions, out-of-state cases, and dictionary definitions.  In its prior ruling, this Court considered most if not all of these same authorities, but

came to a different conclusion.  This Court's determination, however, was subject to *de novo* review, and, as part of that review, "deference *cannot be given* to the rulings by the district court, even though it sits in the state whose law is being applied."  *Mayo*, 354 F.3d at 406 (emphasis added); *Williamson v. Elf Aquitaine, Inc.*, 138 F.3d 546, 549 (5th Cir. 1998); *see also Salve Regina College v. Russell*, 499 U.S. 225, 238, 113 L. Ed. 2d 190, 111 S. Ct. 1217 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable.").[2]

Accordingly, even if there were an on-point Louisiana state appellate decision holding that the "flood" exclusion fails to bar coverage for man-made inundations – and, as noted above, there is no such authority – the persuasive data, as interpreted by the Fifth Circuit, would still indicate the Louisiana Supreme Court would decide otherwise.  This Court must therefore follow the Fifth Circuit's ruling, even if there were an intervening decision from a Louisiana Court of Appeals.

*Blair v. Sealift, Inc.*, 91 F.3d 755 (5th Cir. 1996), on which the PSLC-I relies, does not command a different outcome.  In *Blair*, the Louisiana Legislature made certain amendments to a statute that effectively overrode a decision by the Louisiana Supreme Court interpreting the prior version of the statute.  The Fifth Circuit declined to apply these amendments retroactively, because it "questioned whether the Louisiana Supreme Court would conclude that the recent legislation overruled its [prior] decision[.]"  *Blair*, 91 F.3d at 759.  Thereafter, a Louisiana appellate court "squarely" held that the Legislature's amendments did, in fact, apply retroactively.  *Id.* at 760.  On remand, the district court decided to follow the intervening Louisiana appellate court decision, because it "express[ed] the current interpretation of state law

---

[2] Additionally, as the Fifth Circuit explained in its opinion, rulings on the types of motions at issue in the *Vanderbrook*, *Chehardy*, and *Xavier* actions (*i.e.*, motions to dismiss, for judgment on the pleadings, and for summary judgment) are subject to de novo review.  *See In re Katrina Canal Breaches Litigation*, 495 F.3d at 205-206.

on the matter[.]" *Id.* Subsequently, yet another Louisiana appellate court came to the same conclusion, and the Louisiana Supreme Court denied writs in both those cases. *Id.* at 761-762. In these unique circumstances, the Fifth Circuit held the district court "properly determined that [the intervening Louisiana appellate decision] constitutes controlling authority which compels a departure from our earlier . . . decision[.]" *Id.* at 762. In so holding, the court noted that the denials of the writs, while not dispositive, "provide 'persuasive' evidence that the Louisiana Supreme Court approves of the legal conclusions reached by the appellate court." *Id.*

Thus, *Blair* is readily distinguishable from the instant case. In *Blair*, the issue at bar was whether legislative changes to the Code, the primary source of Louisiana law, should be retroactively applied. Here, by contrast, there has been no analogous, intervening "change" in the Louisiana Code provisions governing the interpretation of insurance contracts – to the contrary, the Civil Code provided the rules for decision, and were clearly and correctly applied by the Fifth Circuit. *See In re Whitaker Constr. Co.*, 439 F.3d 212, 222 (5th Cir. 2006) ("In the civil law tradition, the Civil Code is the 'solemn expression of legislative will' to which our *Erie* obligation applies. We look to the statute as the primary source of law. If the statute is unambiguous, our inquiry ends, and we need go no further.") (citations omitted). Also, in *Blair*, after the statute at issue was amended, not one, but *two* Louisiana appellate courts ruled that the changes operated retroactively, and no appellate court had held otherwise post-amendment. In this case, by comparison, there is no Louisiana appellate authority that contradicts the Fifth Circuit's opinion. Furthermore, in *Blair*, the Fifth Circuit found it highly persuasive that the Louisiana Supreme Court had denied writs taken in both the post-amendment appellate cases. Here, the Louisiana Supreme Court has provided no similarly objective indicia as to how it will decide the issue presented – other than the Supreme Court authorities on which the Fifth Circuit relied on its opinion.

In sum, there is no legitimate basis for the Court to deviate from the law of the case as established by the Fifth Circuit's persuasive and well-reasoned opinion. As discussed below, that opinion obviated the Court's fundamental, threshold rationale for consolidating the Insurance cases and brining them within the umbrella in the first place. Accordingly, the Court should grant the Insurance Defendants' motion.

### III.     The Fifth Circuit's Opinion Obviated this Court's Rationale for Creating the Consolidated Umbrella Litigation.

The PSLC-I does not dispute that the predominant reason the Executive Committee of the Eastern District of Louisiana created this consolidated litigation was its belief that all the consolidated cases would share common (and critically important) issues regarding the causation of the levee breaches. Nor does the PSLC-I dispute that this same rationale was the dominant factor in the Executive Committee's decision to include the Insurance cases within the consolidated litigation. In light of the Fifth Circuit's decision in this case, the previously unifying causation issue has no bearing on the Insurance Defendants' coverage obligations. Accordingly, the fundamental, threshold reason for consolidating the Insurance cases within this litigation has been extinguished.

In response, the PSLC-I argues several other, purportedly "common" issues justify maintaining the consolidated Insurance umbrella in this case. In particular, the PSLC-I identifies five such issues: (1) the cost basis of goods and services used in the claim adjusting process; (2) the methodologies employed to differentiate water damage from wind damage, and covered water damage from excluded water damage; (3) the timing of wind-related water damage, as compared to levee-breach-related water damage; (4) the determination of whether there was a concurrent cause, and if so, its effect; and (5) the general claims handling procedures of a particular Insurance Defendant. (*See* Opp., pp. 6-7.) None of these supposedly "common"

issues would justify keeping the Insurance cases within the consolidated litigation.

First, as a general matter, now that the levee breach causation issue has been removed from the equation, the resolution of each individual Insurance case will hinge on the unique facts specific to that particular case. As the PSLC-I correctly notes, the numerous case authorities the Insurance Defendants cited to support this proposition were decided in the context of class certification under Federal Rule of Civil Procedure 23, which involves different procedural standards than the consolidation of actions under Rule 42. Nevertheless, the fundamental rationale of the class certification cases remains equally applicable here: because "[e]ach property owner . . . who had real and personal property damaged in Hurricane Katrina is uniquely situated," the "nature and extent of the property damage the owners sustain from the common cause, Hurricane Katrina, will vary greatly in particulars[.]" *Comer v. Nationwide Mut. Ins. Co.*, 2006 U.S. Dist. LEXIS 33123, *6 (S.D. Miss. 2006); *see also Henry v. Allstate Ins. Co.*, 2007 U.S. Dist. LEXIS 57822, *11 (E.D. La. 2007) (evaluating whether claims were underpaid "will require an intensive review of the individual facts of each class member's damage claim, including the nature and extent of damage, the timing and adjustment of each class member's claim, how much each class member was paid for his claim and for what damage, and whether that amount was sufficient and timely").

In short, because each insurance claim is unique, each Insurance case will raise unique factual issues requiring an individualized determination, on a case-by-case basis. As Judge Vance aptly stated in evaluating Katrina insurance claims, "[r]esolution of plaintiffs' claims-handling claims requires a highly individualized inquiry into the cause and extent of the damage resulting from the storm, the sufficiency of the benefits paid, the insurer's conduct vis-à-vis the insured, the relevant provisions of the insureds' homeowner's policies, and the applicable law on insurance coverage and bad faith claims handling." *Chauvin v. State Farm Mut. Auto. Ins. Co.*,

2007 U.S. Dist. LEXIS 73639, *14-15 (E.D. La. 2007).  This is true with respect to each of the issues the PSLC-I's opposition identifies as a purportedly "common" issue.

   Finally, even if the Court agrees that one or more of the issues the PSLC-I has identified are "common" to all the Insurance cases, this would not be the end of the inquiry.  Rather, under the balancing test governing consolidation under Federal Rule of Civil Procedure 42, the Court also would have to conclude that the benefits to be gained from litigating these "common" issues in this consolidated litigation outweigh the burden, expense, and delay associated with the consolidated proceedings.  *See*, *e.g.*, *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985); *Arnold v. Eastern Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982).  For the reasons discussed below, such a conclusion is unwarranted here.

## IV. Deconsolidation Will Promote Judicial Economy and Efficiency.

   Contrary to the PSLC-I's assertions, deconsolidating and/or severing the Insurance cases before the Louisiana Supreme Court rules upon the "flood" exclusion issue will not undermine the goals of judicial economy and efficiency.  Rather, as discussed below, those admirable goals will be greatly facilitated by deconsolidation and severance.

   First, the PSLC-I's argument is based on a false assumption:  namely, it assumes that if a subsequent Louisiana state appellate court decision interprets the "flood" exclusion differently than the Fifth Circuit, this Court would be obligated to follow the intervening state court decision, in lieu of the Fifth Circuit's well-reasoned opinion.  For the reasons discussed above, this premise is simply untrue.  Unless and until the Louisiana Supreme Court passes judgment on the scope of the "flood" exclusion, the most persuasive – and governing – resolution of that issue is the one embodied in the Fifth Circuit's opinion.

   In the meantime, thousands of insurance cases should not be held hostage while waiting for results of some future Louisiana appellate court decisions.  At this point in time, there is no

objective, principled way to predict whether the subsequent appellate decisions will agree or disagree with the Fifth Circuit, or how many of those decisions will go each way. Indeed, under the PSLC-I's approach, this Court would have to continually revise (and potentially reverse) its position on whether the Insurance cases should be deconsolidated, depending on how the continuously evolving landscape of Louisiana appellate case law looks at any one given moment in time. This wait-and-see, inconclusive approach would not promote judicial efficiency, but the exact opposite.

That the Court consolidated the Insurance cases "for pre-trial purposes only" is immaterial. As noted above, the PSLC-I argues that maintaining the consolidated Insurance umbrella will facilitate its supposedly "common" discovery into the claim-handling practices of the various Insurance defendants. (*See* Opp, p. 7.) By its very nature, however, that discovery is complex, expansive, time-consuming, and contentious. Indeed, in ruling on the PSLC-I's motion to compel further responses to its purportedly "common" discovery requests, Magistrate Wilkinson expressly and pointedly commented on the inefficient nature of this discovery, and intimated that the goals of judicial economy and efficiency would be better served if the Insurance cases were severed and litigated individually:

> In light of the massive scope of "common" discovery sought by plaintiffs and the myriad objections asserted by the insurance defendants to this discovery, my impression is that *this part of the umbrella is not currently operating efficiently*. Movement of these claims toward resolution in a temporally meaningful fashion is part of the efficiency equation. Other cases brought by individual insureds against their insurers in this court that are not part of this umbrella are now being resolved in substantial numbers, most by settlement, some by trial or on dispositive motion. . . . [I]t is my current intention, immediately upon the Fifth Circuit's ruling on the pending appeal, to *recommend to Judge Duval that the court reexamine whether some portion of the "Insurance category of cases should be removed from this consolidated litigation and managed in a different fashion, possibly including scheduling of each individual case for individual discovery and trial.*

(Record Doc. 6590, p. 7 [emphasis added].)

Moreover, the motion to compel on which Magistrate Wilkinson ruled involved only one "track" of three separate "tracks" of discovery motions, all of which would deal solely with the Insurance Defendants' written responses to the PSLC-I's "common issue" discovery. The other two "tracks" have yet to go forward. Because the PSLC-I recognized that this "common issue" discovery process was cumbersome and inefficient, it agreed to limit the "common" discovery to Allstate and State Farm (at least for the time being). Once the other two "tracks" of motions to compel are finished with respect to State Farm and Allstate, the PSLC-I likely will turn its attention to moving to compel further testimony in response to its expansive Rule 30(b)(6) deposition notice, which set forth scores of categories involving supposedly "common" issues. The inefficiencies and burdens discussed in Magistrate Wilkinson's order thus will get far worse before they improve.

Similarly, while the Insurance Defendants fully intend to abide by the Court's warning that the litigation of "individual issues . . . should not be delayed" (*see* CMO No. 4, Record Doc. 3299, at p. 48), this admonition cannot guarantee that delay will not, in fact, occur. To the contrary, delay is occurring, every day, and is only getting worse, as more and more Hurricane Katrina Insurance cases are consolidated and brought within the umbrella. To Liaison Counsel's knowledge, there is not a single Insurance case within the consolidated umbrella that has gone to trial. While the parties no doubt have different views as to who is responsible for this situation, the objective facts speak for themselves, and confirm that the consolidated, "common issue," umbrella approach urged by the PSLC-I has not accelerated the resolution of individual Insurance claims. It instead has done the exact opposite, by bogging down the parties and the Court with voluminous and time-consuming pleading, motion, and discovery practice – not only within the Insurance umbrella itself, but also within the consolidated Levee and MRGO

umbrellas.

Indeed, the PSLC-I's opposition ignores the inefficiencies created by consolidating the Insurance umbrella with the Levee and MRGO umbrellas. Discovery practice associated with the levee breach causation issue has been and will continue to be incredibly complex, contentious, expensive, and time-consuming. As a result, judicial resources that could be focused on accelerating the resolution of Insurance cases is being diverted towards discovery issues that, in light of the Fifth Circuit's opinion, are only relevant in the Levee and MRGO umbrellas. Similarly, keeping the Insurance cases within the larger consolidated umbrella will hinder the completion of discovery proceedings in the Levee and MRGO umbrellas, as it will force the Levee and MRGO defendants to endure the voluminous pleading, discovery, and motion practice related to the Insurance cases.

Contrary to the PSLC-I's suggestion, then, deconsolidating and severing the Insurance cases will not exacerbate the severe burden placed on the Court's already burgeoning docket. As discussed above, now that the purportedly "common issue" of levee breach causation has been removed from the equation, each Insurance case is an entirely unique case onto itself, the resolution of which will depend on highly individualized, fact-specific, and claim-specific issues. For that reason, it makes consummate sense to implement an individualized discovery track and proceed with individualized motion practice in each individual Insurance case. This development will not overburden the Eastern District's dockets, but instead will allow each District Court Judge to fashion case-specific management orders that are logically tailored to fit the distinctive facts and issues presented in each individual Insurance case, thereby promoting the timely disposition of that case.

Indeed, it appears as if the PSLC-I is confusing the concept of organizing the non-In Re Katrina Insurance cases presently pending in Section "K" with the organization of the In Re

Katrina Insurance cases. This Court is aware that other such Katrina insurance cases not involving levee breach coverage allegations are pending in other Sections throughout the Eastern District. Those other cases typically raise many of the same factual and legal issues as the cases presently within this Court's Insurance umbrella now that the 5th Circuit is rule. Accordingly, now that the glue that once held the Insurance umbrella together – *i.e.*, the levee breach causation issue – has been dispelled, there is no inherent "efficiency" to be gained by keeping all the Insurance cases involving levee breaches before this Court. Those cases instead should be reassigned to the Sections from whence they came originally (or, if none, randomly assigned through the Clerk of Court). Thereafter, once this Court has the opportunity to assess which cases remain on its docket, it can evaluate what, if anything, needs to be done in terms of case management and organization.

Finally, while the PSLC-I has unilaterally proposed the possibility of creating a "Settlement Track" and/or a "Fast Track" to accelerate the resolution of certain cases within the Insurance umbrella (*see* Opp., at pp. 9-10), the benefits of this potential "track" system would pale in comparison to the relief that the Insurance Defendants seek in this motion. If the Insurance cases are deconsolidated and severed in their entirety, the District Court Judges and Magistrate Judges to whom the cases are reassigned will have the opportunity to review the particular circumstances of individual cases, and determine whether particular cases should be placed on a "fast track" to settlement or trial. This approach would be far more efficient than cramming hundreds (if not thousands) of unrelated Insurance cases into broad, unwieldy "tracks" that are subsumed within an even larger, consolidated umbrella of thousands upon thousands of claims involving disparate issues and circumstances.

## V.     Conclusion.

In light of the Fifth Circuit's opinion regarding the proper interpretation of the "flood"

exclusion, the threshold rationale for creating this consolidated litigation no longer applies to the Insurance cases. Maintaining the Insurance umbrella within the larger consolidated litigation thus would not serve the admirable goals of judicial economy and efficiency, but instead would undermine and frustrate them. Accordingly, the Court should grant the Insurance Defendants' motion to modify the Court's May 1, 2006 consolidation order and deconsolidate and/or sever the Insurance cases from this litigation. The Insurance cases currently consolidated in the umbrella then should be transferred back to the Sections to which they were assigned originally, or if they were assigned to this Section by virtue of the May 1, 2006 consolidation order, returned to the Clerk of Court for random assignment.

        Respectfully submitted,

/s/Ralph S. Hubbard
**Ralph S. Hubbard, III, T.A., La. Bar #7040**
**Insurer Defendants' Liaison Counsel**
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, LA 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
E-Mail: rhubbard@lawla.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 26th day of October 2007, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to All Known Counsel of Record by operation of the Court's electronic filing system and/or U.S. mail.

/s/ Ralph S. Hubbard
Ralph S. Hubbard