# CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
# STATE OF LOUISIANA

NO. 06-4990            DIVISION "D"            SECTION 16

HISTORIC RESTORATION INCORPORATED., as insured and on behalf of additional Plaintiffs 302 Jefferson Street L.L.C., 800 Canal Street Limited Partnership, 800 Iberville Street Limited Partnership, Eleventh Floor Lodging, LLC, ELF Hotel Operating Company, LLC, Hammond Eastside Limited Partnership, Historic Restoration, Incorporated, LGD Rental I, LLC, New Iberia High School Limited Partnership, Redemptorist Limited Partnership, South Peters Hotel Investors Limited Partnership, Terrebonne Elderly Housing Limited Partnership, The Bakery Condominium Association, Inc., Shreveport Renewal Limited Partnership, Nissen Building, LLC, Cupples Residential I, LLC and Union Limited Partnership

### VERSUS

### RSUI INDEMNITY COMPANY AND ESSEX INSURANCE COMPANY

### JUDGMENT

This matter was scheduled for hearing on Tuesday, October 13, 2006 on a Motion for Partial Summary Judgment filed on behalf of the Plaintiffs, Historic Restoration, Inc., et al. After considering law, evidence and the briefs of all parties;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Partial Motion for Summary Judgment is hereby **Granted**.

READ, RENDERED AND SIGNED in New Orleans, Louisiana this 5th day of December 2006.

                                               JUDGE LLOYD J. MEDLEY

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LOUISIANA

**EXHIBIT A**

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

No. 06-4990                                                                                        Div./Sec. 16/D

HISTORIC RESTORATION, INCORPORATED., as insured and on behalf of additional Plaintiffs 302 Jefferson Street L.L.C, 800 Canal Street Limited Partnership, 800 Iberville Street Limited Partnership, Eleventh Floor Lodging, LLC, ELF Hotel Operating Company, LLC, Hammond Eastside Limited Partnership, Historic Restoration, Incorporated, LGD Rental I, LLC, New Iberia High School Limited Partnership, Redemptorist Limited Partnership, South Peters Hotel Investors Limited Partnership, Terrebonne Elderly Housing Limited Partnership, The Bakery Condominium Association, Inc., Shreveport Renewal Limited Partnership, Nissen Building, LLC, Cupples Residential I, LLC and Union Limited Partnership

VERSUS

RSUI INDEMNITY COMPANY AND ESSEX INSURANCE COMPANY

FILED:_____

_____
DEPUTY CLERK

## REASONS FOR JUDGMENT

Plaintiffs, Historic Restoration, Incorporated, 302 Jefferson Street LLC, 800 Canal Street Limited Partnership, 800 Iberville Street Limited Partnership, Eleventh Floor Lodging, LLC, ELF Hotel Operating Company, LLC, Hammond Eastside Limited Partnership, Historic Restoration, Incorporated., LGD Rental I, LLC, New Iberia High School Limited Partnership, Redemptorist Limited Partnership, South Peters Hotel Investors Limited Partnership, Terrebonne Elderly Housing Limited Partnership, The Bakery Condominium Association, Inc., Shreveport Renewal Limited Partnership, Nissen Building, LLC, Cupples Residential I, LLC, and Union Limited Partnership (collectively "HRI"), have moved the Court for Partial Summary Judgment and seek a holding that as a matter of law, that damage to the Chateau Sonesta Hotel, Gravier Place Apartments, Hilton Garden Inn French Quarter/CBD Hotel, and The Holmes Garage (collectively the "Properties") was caused by water which came through the 17th Street Canal and the London Avenue Canal breaches is covered under the "all risk" excess policies of insurance issued to HRI by defendants Essex Insurance Company ("Essex") and RSUI Indemnity Company ("RSUI")(collectively "Defendants"). Because this Motion is well founded, as detailed below, the Court has entered a Partial Summary Judgment in favor of HRI on this issue.

Essex issued HRI an "all risk" excess commercial insurance policy identified as policy number ESP3465 for the policy period May 31, 2005 to May 31, 2006 (the "Essex Policy"). The

Essex Policy is excess over HRI's primary commercial insurance policy, which was issued by The Hartford Insurance Group (the "Primary Policy").[1] The Essex Policy is an "all risk" insurance policy, including coverage of damages caused by the perils of Flood and Earthquake, as defined.

Defendant RSUI issued HRI an excess "all risk" commercial insurance policy bearing policy number NHD341277 for the policy period May 31, 2005 to May 31, 2006 (the "RSUI Policy"). The RSUI Policy provides coverage in excess of the Essex policy and the Primary Policy and is an "all risk" insurance policy.

Of the insured properties, the defendants allege that the Chateau Sonesta Hotel, Gravier Place Apartments, Hilton Garden Inn Downtown/French Quarter Hotel, and The Holmes Garage (collectively the "Properties") sustained excluded "flood" damages. The affidavits on file establish that the water that entered these areas was not standing water that accumulated because of the rains of Hurricane Katrina, but was in fact as a result of the breach of the walls of the 17th Street Canal and/or the London Avenue Canal.

While the Essex Policy specifically includes coverage for the perils of Flood and Earthquake, the Policy contains a separate 100 Year Flood Zone Exclusion Endorsement, which excludes coverage for damage resulting from the peril of "Flood" for properties located in the 100 year Flood Zone, including Flood Zone A. HRI's Properties that sustained extensive water damage from the breach of the New Orleans levees are located within Flood Zone A; thus, Essex alleges in Paragraph 133 of its Answer that HRI's damages are subject to the Policy's purported "Flood" exclusion, and are alleged by Essex to not be covered by the Essex Policy.

The RSUI Policy excludes coverage for the perils of Flood and Earthquake, but does not include definitions of either the term "flood" or "earthquake." Regardless, RSUI also alleges in its second and third affirmative defenses that HRI's damages are excluded under the RSUI Policy as these damages allegedly resulted from the peril of "Flood."

The Court finds that the "flood" exclusions included in the Essex and RSUI Policies are not applicable because these exclusions apply only to naturally-occurring phenomena and not to an event caused by man-made acts. The inundation of HRI's properties resulted solely from the failures of

---

[1] The Primary Policy is endorsed to provide coverage for "Flood."

2

the walls of the 17th Street Canal levees and/or the London Avenue Canal, which failures were of man-made objects and which failures occurred due to acts of man.

## I. SUMMARY JUDGMENT STANDARD

Louisiana Code of Civil Procedure article 966(A)(2) provides as follows:

> The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action .... The procedure is favored and shall be construed to accomplish these ends.[2]

A motion for summary judgment shall be granted upon a showing that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.[3] The purpose of summary judgment is "to dispose expeditiously of cases involving issues of law and/or uncontested issues of fact."[4] It is "apropos when all the relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from those facts."[5]

In addition, Louisiana Code of Civil Procedure article 966(E) provides that "[s]ummary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case."[6]

The defendants have suggested that discovery is necessary before HRI's Partial Summary Judgment Motion should be heard. However, it has been held as follows:

> Unless the opposing party can show a probable injustice, a suit should not be delayed pending discovery when the evidence shows at a early stage in the proceedings that

---

[2] LA. CODE CIV. PROC. art. 966.

[3] *See King v. Phelps Dunbar, L.L.P.*, 98-1805, p. 3 (La. 6/4/99), 743 So.2d 181, 185.

[4] *Dette v. Covington Motors, Inc.*, 426 So.2d 718, 719 (La. App. 1Cir. 1983).

[5] *Murphy's Lease & Welding Service, Inc. v. Bayou Concession Salvage, Inc.*, 2000-978, p. 5 (La. App. 3 Cir. 3/8/01), 780 So.2d 1284, 1288

[6] *See also Griggs v. Riverland Medical Center*, 98-256 (La. App. 3 Cir. 10/14/98), 722 So.2d 15, 21 ("summary judgment may be granted on the issue of liability alone. It may not be granted on a particular element of liability when the judgment is not completely dispositive of the issue of liability between the parties and other issues such as comparative fault remain unresolved." However, "as long as the liability between the parties to the motion is resolved in the decision, partial summary judgment may be granted.") (internal citations omitted); *see also Crescent City Physicians v. Desse*, 03-2130 (La. App, 3/24/04), 871 So.2d 466 (affirming grant of summary judgment on liability alone); *Gravolet v. Fair Grounds Corp.*, Nos. 03-0392, 03-0958, 2004 WL 1632911 (La. App. 4 Cir. July 14, 2004) (same).

3

> there is no genuine issue of fact. There is no absolute right to discovery prior to a hearing on a motion for summary judgment and the only requirement is that the litigants be given a fair opportunity to be heard.

*Smith v. Estrade*, 589 So.2d 1158, 1162 (La. App. 5th Cir. 1991). Here, the issue at hand is interpretation of policy terms, an issue which is subject to consideration without extensive discovery and which is particularly appropriate for early consideration.[7] Furthermore, at the hearing on this motion, HRI agreed to provide discovery responses prior to the Court ruling on this motion, which the Court understands has occurred. As such, the written discovery responses are no longer outstanding, and do not pose an impediment to consideration of this motion. Furthermore, neither insurer has argued that depositions are needed before ruling on the motion. As such, discovery poses no impediment to the resolution of the pending Motion for Partial Summary Judgment.

## II. POLICY INTERPRETATION AND BURDEN OF PROOF

In *Crabtree v. State Farm Insurance Co.*, 632 So. 2d 736 (La. 1994), the Louisiana Supreme Court set forth the following general principles guiding interpretation of an insurance policy:

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. If the words of the policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the agreement must be enforced as written. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured.[8]

In the construction of the policy, "the specific controls the general."[9] In other words, the meaning of general terms in the policy will be restricted by other specific or more descriptive terms

---

[7] RSUI argues that the status of any National Flood Insurance Program ("NFIP") claims of HRI is relevant to the present motion. However, extrinsic evidence is not relevant to determination of coverage under the Essex and RSUI policies. Further, the NFIP definition of "flood" is very different than the definitions of this term at issue here.

[8] *Id.* at 741 (internal citations omitted).

[9] *Smith v. Burton*, 928 So. 2d 74, 79 (La. App. 1st Cir. 2005).

on the same subject.[10]

The Essex and RSUI Policies are "all risk" policies. An "all risk" policy creates a special type of coverage extending to every conceivable loss or damage, unless clearly, specifically and expressly excluded therein.[11] Because HRI has established through uncontroverted evidence (and the insurers do not deny) that its properties sustained physical damages, the burden of proving an exclusion from coverage rests on the insurers.[12] The insurers attempt to shift this burden to HRI by questioning the sufficiency of the affidavits submitted. However, as those affidavits establish physical damage, it is the insurers' burden to show the damage was caused by an excluded cause of loss, not HRI's burden to show it was not. Particularly, the insurers must point the Court to the existence of a material fact demonstrating any water inundation resulted from sources of water other than the breaches at the 17th Street Canal and the London Avenue Canal, which canals are man-made structures.

### III. THE POLICY LANGUAGE

While the Essex Policy specifically includes coverage for the perils of "Flood" and Earthquake, the Policy contains an exclusion that states as follows:

**100 YEAR FLOOD ZONE EXCLUSION**

This policy does not insure against loss or damage caused by, directly or indirectly or resulting from the peril of Flood, if the location is located in the 100 year Flood Zone.

Flood Zone A, or the 100 year Flood plain consists of Zones A, A1 through A30, AE, AH, AO, A99, V, V1 through V30, VE or as designated by the Federal Emergency Management Association (FEMA) or the U.S. Corps of Engineers.

The RSUI Policy also excludes coverage for the peril of "Flood," stating:

3.   Perils Covered:    All Risk Excluding Flood & Earthquake.

Because these policies are following form policies, the definition of the term "Flood" under

---

[10] *See Baton Rouge Oil and Chemical Workers Union v. Exxonmobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002); *Breaux v. Rimmer & Garrett, Inc.*, 320 So. 2d 214, 219 (La. App. 3d Cir. 1975).

[11] *See, e.g. Cochran v. Travelers Ins. Co.*, 606 So.2d 22, 24 (La.App. 5 Cir.,1992); *J. Ray McDermott & Co., Inc. v. Fidelity & Cas. Co. of New York*, 466 F.Supp. 353, 361 (D.C.La., 1979); *Dow Chem. Co. v. Royal Indem. Co.*, 635 F2d 379, 386 (5th Cir. 1981);*Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 n.11 (5th Cir. 1990).

[12] *See Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 124 (La. 2000) ("On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy."); *Dawson Farms, L.L.C. v. Millers Mutual Fire Ins. Co.*, 794 So. 2d 949, 951 (La. App. 2d Cir. 2001) ("Under Louisiana law, it is the insurance company's burden to prove that a loss comes within a policy exclusion.").

the Primary Policy applies to both the Essex Policy and the RSUI Policy. The Essex Policy includes the following language regarding the application of the terms of the underlying Primary Policy:

> 2.  **Application of Underlying Provisions - Follow Form:**
>
> The coverage and / or peril(s) insured in this policy are subject to the same terms, conditions, definitions, limitations, exclusions and warranties (except premium, rate, limit of liability, sublimit, deductible, definition of Ultimate Net Loss and any other obligation to investigate, adjust or defend claim or suit) as are contained in the policy(ies) of the Primary Insurance.

Therefore, the definition of the term "Flood" under the Primary Policy applies to the Essex Policy. This conclusion is further supported by the fact that the Essex Policy is described as a "Follow Form" policy, indicating that its terms and conditions follow the form of the Primary Policy.

The RSUI Policy states:

> In respect of the perils hereby insured against, this Policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any; and EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy(ies) of the primary insurer(s) prior to the happening of a loss for which claim is made hereunder, and should any alteration be made in the premium for the policy(ies) of the primary insurer(s) then the premium hereon shall be adjusted accordingly.

The RSUI Policy does not include a definition of the term "Flood." Therefore, the definition of "Flood" under the Primary Policy also applies to the RSUI Policy.[13]

The Primary Policy's definition of "Flood" is as follows:

"Flood" means:

1.  Surface water, waves, tidal water, tidal waves, tsunamis, or overflow of any natural or man made body of water from its boundaries, all whether driven by wind or not. This includes water that backs up from any storm or septic sewer, that is caused by the above conditions and regardless of the proximity to such conditions.

2.  Mudslide or mudflow, meaning a river or flow of liquid mud directly or indirectly caused by flooding or the accumulation of water under the ground.

### VI. THE INSURERS HAVE PRODUCED NO EVIDENCE THAT THE "FLOOD" EXCLUSIONS ARE APPLICABLE

The term "Flood" as used in the Primary Policy and applicable to the Essex and RSUI Policies does not apply to the water that entered HRI's Properties following Hurricane Katrina. As

---

[13] RSUI has argued that Primary Policy excludes damage caused by the peril of "Flood" or the release of water held by a levee. However, the Primary Policy includes a "Flood Endorsement" that specifically provides coverage for the peril of "Flood" or the release of water held by a levee. Therefore, the Primary Policy's "Flood Endorsement" negates any contrary exclusionary language and said damages are covered.

6

set forth above, the insurers have the burden of proving that an exclusion is applicable, and have not done so here. Based on the record, the insurers have offered no evidence of the source of the water, and there is no evidence that the water came from a source other than the failures of the walls of the 17th Street Canal and the London Avenue Canal, both man-made structures, which failures resulted from the improper construction of the levees and floodwalls by the Corps of Engineers. Although HRI does not bear the burden of proving the inapplicability of an exclusion, it has submitted affidavits of Edward Boettner and Alfred L. Groos and the IPET report, supporting that any ground water that inundated the Properties did not come from storm surge, an overtopped levee, or rainwater that did not drain properly.[14] The insurers have not controverted this evidence other than by generally denying it, which is insufficient to create a material issue of fact.

The definition of "Flood" in the Primary Policy uses the terms "waves," "tidal water," "tidal waves," "tsunamis," or "overflow" of water. All of these words refer to natural events. Nothing in the language of the Essex, RSUI, or Primary Policies indicates that "Flood" applies to man-made events. As discussed above, exclusions from coverage are to be afforded a narrow construction, and, where there are two plausible interpretations of an exclusion, the court should find in favor of the interpretation that supports rather than withholds coverage.[15]

A plain reading of the definition of "Flood" in its entirety demonstrates that the term "Flood" applies only to naturally-occurring events because the events included in the definition of what constitutes a Flood – waves, tidal water, tidal waves, tsunamis, overflow of a body of water, or their spray – are solely naturally-occurring events.[16] In the construction of an insurance policy, "the specific controls the general."[17] In other words, the meaning of general terms in the policy will be

---

[14] The defendants allege that the IPET report is not proper summary judgment evidence. This allegation is not well founded, as the report is a government report that was peer reviewed and is inherently trustworthy. La. Code Evid. art. 803(8). In any event, as the insurers have the burden of proving the applicability of an exclusion, reliance on the IPET report is not necessary to support granting of partial summary judgment here.

[15] See *Reynolds v. Select Properties, Ltd. v. Transcontinental Ins. Co.*, 634 So. 2d 1180, 1183 (La. 1994) ("Thus, a provision which seeks to narrow the insurer's obligation is strictly construed against the insurer, and, if the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied."); *Adams v. Arceneaux*, 809 So. 2d 190, 195 (La. App. 1st Cir. 2001); *Korossy v. Sunrise Homes, Inc.*, 653 So. 2d 1215, 1227 (La. App. 5th Cir. 1995) (same).

[16] Although the definition does include reference to "overflow of any natural or man-made body of water from its boundaries" that wording is obviously not applicable as the canals at issue here did not "overflow" - their walls broke.

[17] *Smith v. Burton*, 928 So. 2d 74, 79 (La. App. 1st Cir. 2005).

restricted by other specific or more descriptive terms on the same subject.[18] These principles are reflected in the contractual interpretation doctrines of *ejusdem generis*[19] and *noscitur a sociis*.[20]

This holding is supported by law from various jurisdictions.[21] Both *Peach* and *Murray* were cases where the courts considered earth movement exclusions and found them inapplicable to earth movement caused by man-made, not natural, events. Following the *Murray* court's ruling, the Supreme Court of Appeals of West Virginia, in *Change, Inc. v. Westfield Insurance Co.*,[22] considered whether a flood exclusion strikingly similar to the "Flood" definition applicable to the Essex and RSUI policies applied only to events caused by man-made acts.

In *Change, Inc.*, the insured's property was damaged when a municipal water main broke. The insured made a claim on its commercial property carrier, which denied coverage on the basis of the flood exclusion because the water had come into the building from under its foundations. The trial court granted summary judgment in favor of the insurer, and the insured appealed. The Supreme Court of Appeals of West Virginia reversed the trial court's finding noting that the exclusion excepted damages caused by sprinkler leakages, a man-made cause, while excluding natural causes, such as damages caused by surface water, waves, and tides. Invoking the principles of *noscitur a sociis* and *ejusdem generis*, the court held that the general terms must be construed in light of the specific terms and, therefore, the insured's losses were covered for damages arising out of a man-made event.

The *Change, Inc.* court's reasoning is valid is supported by numerous other cases from other

---

[18] *See Baton Rouge Oil and Chemical Workers Union v. Exxonmobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002).

[19] "In the construction of laws, wills, and other instruments, . . . where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned." Black's Law Dictionary 517 (6th ed. 1990). In *Sommers v. State Farm Fire and Cas. Co.*, 765 So. 2d 87 (La. App. 4th Cir. 2000), the court applied the principle of *ejusdem generis* even though the specific term preceded the general term. *See id.* at 91.

[20] "It is known from its associates. The meaning of a word is or may be known from accompanying words. . . . [T]he meaning of questionable or doubtful words may be ascertained by reference to the meaning of other words or phrases associated with it." Black's Law Dictionary, *supra*, at 1060.

[21] *Peach State Uniform Service, Inc. v. The American Insurance Co.*, 507 F.2d 996 (5th Cir. 1975); Murray v. State Farm Fire & Casualty Co.,; 509 S.E.2d 1 (W. Va. 1998).

[22] 542 S.E.2d 475 (W. Va. 2000).

8

jurisdictions.[23] The exclusions here speak only in terms of natural events, not the failure of man-made objects. As such, the insurers have not sustained their burden of proving that the waters that entered HRI's properties were excluded "flood." The breaking of the man-made drainage canals is akin to the breaking of a water main or a drainage pipe, which, as shown by the *Change, Inc.* decision and other cases cited above has frequently been held to not be excluded "flood."

The Court believes that the exclusions here are clearly limited to natural events, not man-made events because the words in the definition of "flood" refer to natural events. However, at the very least the exclusions are ambiguous because they are subject to two interpretations - either all instances where water enters a structure are excluded or only natural events are excluded. A broadly-worded coverage exclusion susceptible of multiple interpretations is ambiguous as a matter of law and should be interpreted in a manner that supports rather than defeats coverage.

In *Doerr v. Mobil Oil Corp.*,[24] the Louisiana Supreme Court determined whether a "total pollution exclusion" in an "all risk" policy could defeat coverage for damages caused by the release of hydrocarbons into a parish-wide water system. The total pollution exclusion provided that no coverage was available for any damage "'which would not have occurred in whole or party but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.'"[25] Applying the above-referenced principles of policy interpretation, the Court concluded that the exclusion was so broadly worded that it could apply to "anything from the release of chlorine gases by a conglomerate chemical plant to the release of carbon monoxide from a small business owner's delivery truck."[26] Continuing, the Court noted that even a slip and fall in a puddle of spilled gasoline at a gas station would not be covered by the total exclusion. Such a literal and broad construction of the wording would result in absurd consequences that would operate

---

[23] *Ebbing v. State Farm Fire & Casualty Co.*, 1 S.W. 3d 459 (Ark. Ct. App. 1999)(water from burst water main not "flood" because from a man-made event, not natural causes) ; *Mellon v. Hingham Mutual Fire Insurance Co.*, 472 N.E.2d 674 (Mass. App. Ct. 1984)(water from broken drainage pipe not excluded flood because "caused by an accidental break, rather than a natural occurrence") ; *Popkin v. Security Mutual Insurance Co. of New York*, 367 N.Y.S.2d 492 (N.Y. App. Div. 1975) (water from a break in a water main not excluded flood) ;*Ender v. Nat'l Fire Ins. Co. of Hartford*, 563 N.Y.S.2d 85 (N.Y. App. Div. 1991)(break in water main not excluded flood because the "water" exclusion applies to "damages resulting from natural causes, not from artificial devices").

[24] 774 So. 2d 119 (La. 2000).

[25] *Id.* at 122.

[26] *Id.* at 124.

9

to defeat coverage, a result contrary to Louisiana insurance law. As a result, the Court held that the policy was ambiguous and should be interpreted narrowly and in an effort to afford, not deny coverage.

Similarly, the *Murray*, court found that policy to be ambiguous because it was subject to multiple interpretations. Reviewing the terms of the exclusion, the court held:

> On the one hand, the exclusions cited in defendants' policies could bar coverage for solely *natural* events such as earthquakes, volcanic eruptions, and sinkholes. On the other hand, the same exclusions refer to events which could be *man-made*, such as subsidence or earth movement caused by equipment or a broken water line. Or, as alleged in this case, earth movement could be caused by *both man made and nature* over a period of time, such as landslides, mudflows, or the earth shrinking, shifting, or settling. *Because the policy language is reasonably susceptible to different meanings, we believe that the earth movement exclusion in the insurance policies at issue are ambiguous, and must have a more limited meaning than that assigned to it by the defendants.*

*Murray*, 509 S.E.2d at 9 (emphasis added).

The Court finds that the "Flood" exclusions in the Essex and RSUI Policies should also be read in the same reasonable manner. The Flood Exclusions, at best, are not clear regarding whether the term "Flood" refers only to naturally-occurring or man-made events. For example, the exclusions, if given the interpretation favored by the insurers, would apply to water entering a property because of 1) breaking water mains, 2) vandals causing an above ground swimming pool to rupture, or 3) an airplane running into a water tower allowing its contents to escape. Such an interpretation would result in absurd consequences. As the Flood exclusions are susceptible of either interpretation, the exclusions are, therefore, ambiguous as a matter of law, and the more limited meaning, that "flood" does not include man-made causes, such as the failure of the walls of the outflow canals, is applicable. As the "Flood" exclusions are ambiguous at best, the well-established law of Louisiana requires this Court to construe the exclusions narrowly and in favor of coverage.

This finding is consistent with the November 27, 2006 Order of Judge Stanwood R. Duval, Jr. of the Eastern District of Louisiana in *In Re Katrina Canal Breaches Consolidated Litigation*, Civil Action No. 05-4182, holding that a flood exclusion similar to that of the Essex and RSUI Policies was ambiguous and thus, must be construed in favor of coverage under an all-risk policy. The key question before Judge Duval, and before this Court as well, was whether it is reasonable to find that there are two interpretations of the term "flood" — one which results from both natural and man-made causes and another which results from solely natural causes. Applying Louisiana law on

10

the rules of interpreting insurance contracts as well as the principles of *ejusdem generis* and *noscitur a sociis*, Judge Duval found that the term "flood" is susceptible to multiple reasonable interpretations and thus, ambiguous.

The insurers argue that even if the purported "Flood" exclusions are inapplicable, HRI's water-related damages are excluded under the "Acts, Errors and Omissions" exclusion of the Primary Policy. However the Primary Policy's "Acts, Errors and Omissions" exclusion includes "Ensuing Loss Coverage" which provides:

> **Ensuing Loss Coverage:** If physical loss or damage by a Covered Cause of Loss ensues, we will pay only for such ensuing loss or damage.

Under the cited language, to the extent physical loss or damage by a Covered Cause of Loss ensues from the acts, errors, or omissions in the design of levees, then the Primary Policy, and in turn, the following-form Essex and RSUI Policies, provides coverage for the ensuing loss or damage. As the Court has already determined that the water damage sustained by HRI's Properties resulted from a Covered Cause of Loss, the Ensuing Loss Coverage of the Primary Policy renders the "Acts, Errors and Omissions" exclusion inapplicable.[27]

For these reasons, the Court enters Partial Summary Judgment in favor of HRI finding that the "Flood" exclusions in the Essex and RSUI policies do not exclude coverage for any of HRI's damages.

New Orleans, Louisiana, this 5th day of December, 2006.

JUDGE LLOYD MEDLEY

A TRUE COPY
CIVIL DISTRICT COURT
PARISH OF ORLEANS
LOUISIANA

---

[27] The Court notes that in his Order, Judge Duval addressed a special "Amendatory Endorsement" included in an unrelated insurance policy underwritten by the Hartford Fire Insurance Company, who is also the underwriter of HRI's Primary Policy. However, the Hartford Policy before Judge Duval did not include Ensuing Loss Coverage as in HRI's Primary Policy and is therefore distinguishable.

<u>HURRICANE LITIGATION</u>

JOSEPH SHER

versus

LAFAYETTE INSURANCE COMPANY, ET AL

FILED: _____

NO. 06-9276   DIVISION 'G-11

CIVIL DISTRICT COURT

PARISH OF ORLEANS

STATE OF LOUISIANA

_____
DEPUTY CLERK

<u>JUDGMENT</u>

The above matter came for a regularly-scheduled hearing on February 2, 2007 as to the following Motions:

1) Plaintiff's Motion for Partial Summary Judgment; and

2) Lafayette Insurance Company's Motion to Strike Expert Witnesses or Continue Trial.

PRESENT:  James M. Garner, Esq.           For Plaintiff, Joseph Sher
          Lauren L. Hudson, Esq.
          Frank Dudenhefer, Jr., Esq.

          Robert A. McMahon, Jr. Esq.     For Lafayette Insurance Company

          Georgia Thomas, Esq.            For Property Loss Consulting, Inc., Robert
                                          Jones and Wes Swank

The Court, after considering the memoranda, evidence and argument of counsel, ruled as follows:

IT IS ORDERED that Lafayette's Motion to Strike Expert Witnesses or Continue Trial is hereby DENIED;

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment is hereby GRANTED because the "flood" exclusion is ambiguous; therefore, the policy covers man-made events and Lafayette has not met its burden of proving that any of the damage was not caused by a man made event.

JUDGMENT RENDERED this 2nd day of February, 2007 at New Orleans, Louisiana;

JUDGMENT READ AND SIGNED this _____ day of FEB 0 9 2007 _____, 2007 at New Orleans, Louisiana.

'Sgd.) Robin M. Giarrusso
_____
JUDGE ROBIN GIARRUSSO

A TRUE COPY

EXHIBIT B

## HURRICANE LITIGATION

| | |
|---|---|
| WHITE III, L.L.C. F/K/A JLH, L.L.C | NO. 06-09607   DIVISION G-11 |
| versus | CIVIL DISTRICT COURT |
| | PARISH OF ORLEANS |
| TRAVELERS PROPERTY CASUALTY OF AMERICA A/K/A ST. PAUL TRAVELERS AND STONE INSURANCE, INC. | STATE OF LOUISIANA |

FILED:_____    _____

DEPUTY CLERK

### JUDGMENT

The above matter came for a regularly-scheduled hearing on July 20, 2007 as to the Plaintiff's Motion for Partial Summary Judgment.

PRESENT:  James M. Garner, Esq.          For plaintiff, White III, L.L.C. f/k/a JLH, L.L.C.

Stephen Goldman, Esq.
Simeon Reimonenq, Esq.          For defendant, Travelers Property Casualty Company of America a/k/a St. Paul Travelers

The Court, after considering the memoranda, evidence and argument of counsel, ruled as follows:

IT IS ORDERED that Plaintiff's Motion for Partial Summary Judgment is hereby GRANTED because the "flood" exclusion is ambiguous; therefore, the policy covers man-made events and Travelers has not met its burden of proving that any of the damage was not caused by a man made event.

JUDGMENT READ AND SIGNED this ___26___ day of ___July___, 2007 at New Orleans, Louisiana.

_____
JUDGE ROBIN GIARRUSSO

A TRUE COPY
_____
DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

1

**EXHIBIT C**

ORLEANS PARISH CIVIL DISTRICT COURT

STATE OF LOUISIANA

STELLA WHITE            NUMBER 2006-7975

VERSUS            SECTION 5

LOUISIANA CITIZENS            DIVISION "K"
PROP. INS. CORP., ET AL.

## JUDGMENT

This matter came for hearing on June 15, 2007, regarding Plaintiff's Motion for Partial Summary Judgment. The following attorneys were present:

    David Cannella      For Plaintiff

    Mickey Landry      For Plaintiff

    Marquette Greene-Young      For Defendant Louisiana Citizens Prop. Ins. Corp.

After consideration of the memoranda, pleadings, and evidence,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for Partial Summary Judgment is GRANTED. The "Water Damage" exclusion contained in Louisiana Citizens' Homeowner's Policy #FZH-0074733-10 is ambiguous, and therefore, not applicable/unenforceable.

JUDGMENT RENDERED IN OPEN COURT this 15th day of June 2007, in New Orleans, Louisiana.

Judgment signed this 26th day of June, 2007.

New Orleans, Louisiana.      Sgd.) Herbert A. Cade
                          Judge - Division "K"

                          JUDGE, CIVIL DISTRICT COURT, DIV. "K"

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been faxed and/or transmitted electronically to all counsel of record.

New Orleans, Louisiana this __19th__ day of June, 2007.

           David R. Cannella

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

**EXHIBIT D**