**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO.  05-4182 "K"(2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| | § | |
| PERTAINS TO: | § | |
| | § | |
| LEVEE, MRGO & BARGE | § | |
| | § | |

**DEFENDANTS' OPPOSITION TO MRGO AND LEVEE PSLCS' JOINT
MOTION TO MODIFY CASE MANAGEMENT ORDER NO. 4, AS
AMENDED, TO DEFER CLASS ACTION CERTIFICATION PROCEEDINGS**

The undersigned Defendants respectfully oppose plaintiffs' eleventh-hour motion to defer

class-action certification proceedings in both the Levee and MRGO cases.[1]  Plaintiffs have raised

no new issues to support the Court's indefinite continuation of the class-certification proceedings.

On the contrary, plaintiffs' suggestion that class-certification proceedings should now await trial

in *Robinson v. United States* (No. 06-2268) is directly contrary to the record they presented to

this Court earlier this year, in reliance on which this Court issued Case Management Order No. 4.

In entering CMO No. 4, this Court considered and rejected the idea the parties should have the

benefit of a trial in *Robinson* prior to developing the record for class certification.  Instead,

relying on plaintiffs' representation that they would be prepared to try the class issues in less

than eight months and that the issues they intended to pursue in the class action were

---

[1] The undersigned Defendants are Washington Group International, Inc. ("WGII"), The
Sewerage & Water Board of New Orleans ("S&WB"), The Board of Commissioners for the
Orleans Levee District ("O.L.D."), The Board of Commissioners for the Lake Borgne Levee
District ("L.B.L.D.") and The Board of Commissioners for the East Jefferson Parish Levee
District (hereinafter, the "Defendants").  The United States is filing a separate opposition brief.

significantly different from the legal and factual issues inherent in *Robinson*, this Court set a track for class certification, far ahead of the trial track set in *Robinson*. This Court ordered the parties to participate in an aggressive schedule to discover and try class certification in an eight-month period from the filing of superseding Master Consolidated Class Action Complaints to the Rule 23 certification hearing. In those eight months, the parties propounded and answered extensive class-certification written discovery, exchanged volumes of documents, participated in at least 34 fact depositions, inspected more than 40 properties, exchanged 14 expert reports and took 12 expert depositions. The Defendants filed and submitted preliminary dispositive motions. The Court has before it class briefing and a fully developed record on *Daubert* motions. The cost to the individual defendants of complying with CMO No. 4's ambitious class-certification schedule is in the *multiple* millions of dollars. And yet, literally on the eve of the class-certification hearing, plaintiffs now seek an indefinite delay.

With the factual record set to be presented to the Court in ten days—after all of the time, money and effort that has been expended—the plaintiffs purport to realize only now that the "interests of judicial economy" and "justice to the parties" require the class-certification hearing to be delayed until *Robinson* is decided, at the earliest, some time late next year.

Plaintiffs' position is untenable, and should be denied. Their deferral motion is nothing more than a thinly-veiled attempt to secure a last-minute "do over" on class certification. Recognizing after eight months of litigation that the claims consolidated in the Levee and MRGO actions are an "amalgam of different complaints filed by different lawyers alleging different facts and legal theories" that are not currently "amenable to class treatment" or "manageable in one proceeding," plaintiffs manufactured an excuse to delay the upcoming hearing so they can "modify" their class-action motions. *See* Pls.' Motion at 6 (a delay in class-

- 2 -

certification proceedings will help plaintiffs' counsel "refine their focus").  But their request is too late.  The defendants already have spent millions of dollars preparing to defend *this* class-certification hearing based on the motion the plaintiffs first filed on March 30, 2007, and renewed on August 10, 2007.  It is patently unjust to order the defendants to throw away eight months of tireless preparation so that the plaintiffs can buy time to "modify" their class-certification motion under the pretext of "judicial economy" and "justice to the parties."  Such delay and "do over" severely prejudice the defendants.  Accordingly, this Court should deny the motion to defer.

But, if the Court is inclined to defer the upcoming class-certification hearing for any period, then, as described below, the class-certification hearing should be deferred only until the Court has had the opportunity to rule on all of the outstanding dispositive motions—including any Section 702c motions by the United States and WGII's Rule 12 motion—that are pending in the Levee, MRGO and/or Barge cases.  Such a deferral should not be indefinite, and it should *not* be tied to a liability and damages decision in the *Robinson* case, which involves only one defendant from the Levee, MRGO and Barge cases (the United States),  only one type of claim (Federal Tort Claims Act), only one waterway (MRGO) and only six plaintiffs from one geographic area.  Additionally, so as to mitigate in some small way the incredible prejudice caused to Defendants by this seismic shift in plaintiffs' position, any such deferment must include a stay of the Levee, MRGO and Barge cases for all purposes, except limited fact discovery required for possible Rule 56 motions.[2]

---

[2]  Costs incurred to date with respect to common-liability discovery are staggering, and are expected to grow.  Indeed, in a letter to Magistrate Wilkinson on October 18, 2007, the plaintiffs complained about the "obscene" costs anticipated to create a joint electronic document depository.  Thus, resolution of all preliminary defenses should occur before full-scale liability discovery continues any further.

Finally, Defendants agree with the Court's suggestion that the Barge category of cases also should be included in any consideration of deferring the Levee and MRGO class-action certification proceedings.  Like one of the proposed sub-classes in MRGO, the Barge cases also raise issues about the cause of the breaches in the floodwall on the east bank of the Inner Harbor Navigational Canal ("IHNC") between Florida Avenue and North Claiborne Avenue.  To treat these two cases separately for case management purposes at this juncture would be inefficient and potentially inappropriate.

## ARGUMENT

Contrary to plaintiffs' most recent assertion, the resolution of *Robinson* will not provide "critical information" to the Court about how to resolve the pending putative class actions in the Levee, MRGO and Barge cases.  *See* Pls.' Motion at 3.  The MRGO PSLC previously argued in a report to the Court regarding "the possibility of implementing a discovery and trial plan in *Robinson* separate from the case management plan for the consolidated litigation:"

> [T]he *Robinson* case for the most part entails few of the issues common to cases in the other groups.  *Robinson* involves only the MR-GO, only the Federal Tort Claims Act, and only flooding in the Upper and Lower Ninth Ward, New Orleans East, and St. Bernard Parish.  Issues involving levee design, construction, and maintenance along the 17th Street and London Avenue Canals are *not* germane to the Government's liability with respect to the Robinson Plaintiffs.

Jt. Rep. of Counsel Concerning *Robinson* Case Pursuant to Fed. R. Civ. P. 26(f), Mar. 8, 2007, ("Joint Report") at  1, 22 (emphasis added).[3]  The Court apparently agreed with the plaintiffs' position, and subsequently issued the *Robinson* Case Management Order, noting that "it is in the best interest of justice and proper case management to treat *Robinson*, *et al. v. United States*, C.A.

---

[3] Indeed, in the Joint Report—filed more than a week *after* the Court scheduled the class-certification hearing in the Levee and MRGO cases for November 2007—the plaintiffs urged the Court to set a wholly-separate liability and damages trial in *Robinson* for June 2008.  *See* CMO No. 4, § III(G), Mar. 1, 2007; Joint Report at 7.

No. 06-2268, in a separate scheduling order which will include a trial thereon scheduled independently from the Breaches Consolidated Litigation." Robinson CMO No. 1, Mar. 15, 2007, at 1. In that Order, the Court set a hearing on the United States' summary judgment motion based on Section 702c immunity for January 16, 2008, and if needed, a trial on the merits for September 8, 2008. *Id.* at 4-5.

While *Robinson* has proceeded on its separate track, the parties in the MRGO and Levee cases worked to comply with the rigorous class-certification deadlines outlined in CMO No. 4. The plaintiffs filed Motions for Class Certification on March 30, 2007. One month later, the parties exchanged written discovery relating to class certification, including interrogatories, requests for admissions and requests for production. Between July 9 and July 31, 2007, the parties completed a combined total of at least 34 fact depositions. The parties exchanged 14 expert reports relating to class certification on July 30, 2007, and August 29, 2007, and then took expert depositions through September 27, 2007. Motions *in limine* to exclude certain expert testimony all were filed as of October 2, 2007, and Defendants submitted lengthy memoranda in opposition to class certification on October 9, 2007. Nine days later, the parties participated in a day-long *Daubert* hearing. At no time before October 2007 did plaintiffs raise a single concern to the Levee or MRGO Defendants or the Court about the pace of the *Robinson* case, or any effect it would have on class-certification proceedings. Given this delay, there can be little doubt that the *Robinson* case, which will not resolve the claims against any of the Defendants in Levee, MRGO and the Barge cases relating to levee breaches on the London Avenue Canal, Industrial Canal or the 17th Street Canal, does *not* justify the plaintiffs' sudden and urgent need to defer the upcoming Levee and MRGO class-certification hearings.

A.   *Robinson* Is Not A Bellwether Case.

Plaintiffs mistakenly urge that resolution of the *Robinson* case "will surely help resolve some of the contested issues about class certification" present in the MRGO and Levee cases because *Robinson* is a "bellwether" case.  Pls.' Motion at 4.  But an examination of the very cases cited by plaintiffs in support of this contention undermines their argument.

Specifically, plaintiffs cite the Fifth Circuit's decision in *In re Chevron U.S.A., Inc.*, for the proposition that "[t]here is precedent in this Circuit for th[e] use of trials like *Robinson* to help clarify the conditions for class certification."  Pls.' Motion at 5 (citing 109 F.3d 1016, 1018 (5th Cir. 1997)).  But *In re Chevron* does not support the notion for which Plaintiffs offer it.  In fact, *In re Chevron* was <u>not</u> even a class action.  *See In re Chevron*, 109 F.3d at 1022 (Jones, J. concurring); *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 318 (5th Cir. 1998) (noting that "no form of class action was involved" in *In re Chevron*).

Bellwether trials are sometimes used in mass tort litigation based on the "notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims."  *See id.* at 1019.[4]  However, not every case can usefully serve as a bellwether trial.  *In re Chevron*, 109 F.3d at 1020.  As the Fifth Circuit explained:

> We stated [in *In re Chevron*] that the thirty selected plaintiffs were not shown or chosen so as to be representative of the other plaintiffs, and observed that "[a] bellwether trial designed to achieve its value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the universe of claimants *has as a core element representativeness* . . . ."

---

[4] *But see In re Chevron*, 109 F.3d at 1023 (Jones, J. concurring) (questioning the effectiveness of bellwether trials to resolve mass tort controversies); *Cimino*, 151 F.3d at 318 (stating that although *In re Chevron* "contains language generally looking with favor on the use of bellwether verdicts when shown to be statistically representative, this language is plainly *dicta*").

- 6 -

*Cimino*, 151 F.3d at 318 (citing *In re Chevron*, 109 F.3d at 1019) (emphasis added).

The *Robinson* case will not be a bellwether trial for the Levee and MRGO litigation.  The plaintiffs have not made any showing that the six plaintiffs in the *Robinson* case are representative of the hundreds of thousands of proposed claimants in the Levee and MRGO consolidated cases.  *Cf. In re Chevron*, 109 F.3d at 1019 (finding the 30 cases selected to be bellwether trials were <u>not</u> representative of the claims of the other 3,000 plaintiffs).  As described above, there are no plaintiffs in *Robinson* with claims against any other defendant in the MRGO or Levee cases other than United States; there are no plaintiffs in *Robinson* with claims relating to the breach of the levees or floodwalls along the London Avenue or 17th Street Canals; and there are no plaintiffs in *Robinson* residing in the same locations as any of the named MRGO or Levee class representatives.   Lacking this "core element of representativeness," the Court cannot "draw sufficiently reliable inferences" from the *Robinson* case to assist it in determining whether the plaintiffs have satisfied the requirements for class certification.  *See Cimino*, 151 F.3d at 318 (citation omitted). [5]  Thus, the November 5, 2007, class-certification hearing should <u>not</u> be stayed until *Robinson* is resolved.

_____

[5] Notably, while the plaintiffs also cite *In re Norplant Contraceptive Prods. Litig.*, 165 F.3d 374, 376 (5th Cir. 1999), for the proposition that there "is precedent in this Circuit for th[e] use of trials like *Robinson* to help clarify the conditions for class certification," (Pls'. Motion at 5), the Fifth Circuit in *In re Norplant* never actually considered whether a "bellwether" trial may be used to "help clarify the conditions for class certification."  *Id.*  Instead, *In re Norplant* simply considered an appeal of a summary judgment decision in favor of defendants in the first of three bellwether cases, which occurred *after* the trial court had preliminarily denied plaintiffs' motion for class certification.  *Id.* at 376.

Moreover, plaintiffs cite *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D. La. 2006) for the proposition that "rulings in *Robinson* will also assist the parties and this Court in determining the appropriateness of class certification."  Pls.' Motion at 5.  Yet, Plaintiffs fail to note that in that matter, the Court had the benefit of "more than 310 depositions . . . noticed relating to 168 witnesses, . . . taken for more than 145 days and now compris[ing] over 35,000 pages of testimony," as well as "4 bellwether trials in individual cases."  *Id.* at 452 & n.4.  No such factual record exists before this Court in *Robinson*, and as such, *In re Vioxx* is inapposite.

**B.    Defendants Will Be Prejudiced By Plaintiffs' Proposed Indefinite Delay of Class-Certification Proceedings.**

The plaintiffs' assurances that their "modest modification to CMO 4" will not adversely affect the rights and interests of the Defendants in the Levee and MRGO litigation are incredible. Pls.' Motion at 8.  Even if the Levee and MRGO plaintiffs were not planning to revamp their motions for class certification during their proposed deferment, over the course of a year, it is reasonable to expect that certain experts who had been retained specifically for class certification may become unavailable, named class representatives may drop out, and/or fact witnesses no longer will be able to testify.  (Indeed, even those witnesses that are able to testify at some unknown date after September 2008, will need to spend significant time reviewing their deposition transcripts and other pertinent materials to prepare for the hearing.)  The costs of taking or defending new depositions, drafting or analyzing new expert reports and refreshing the fading memories of witnesses alone are a financial hardship to the Defendants who already have spent millions of dollars preparing for a November 5th hearing.

This prejudice to Defendants will be compounded, however, after the plaintiffs "inevitabl[y]" use the deferral of class-certification proceedings as an opportunity to "refine" the focus of their litigation, and "modify" their class-certification motions. Pls' Motion at 6.  Such purported "modifications" undoubtedly will lead to the submission of new expert opinions, new class representatives, new exhibits and a new trial plan, not to mention new class-certification briefing.  Accordingly, all of the preparations that Defendants have already completed—on an expedited basis in advance of the November 5th hearing date—will be wasted.   For this reason, plaintiffs' motion should be denied.

WAI-2850650v3

897790v.1

**C.    Plaintiffs Implicitly Are Asking the Court to Abstain From Deciding the Class-Certification Issue While the State-Court Class Actions Proceed.**

What Plaintiffs implicitly are seeking here, without directly stating it, is a request for abstention.  The absence of any mention by plaintiffs of the state class-action proceedings pending against many of these same Defendants does not hide the fact that this Court is being asked to stay its class-certification proceedings while the state-court class actions proceed ahead without a stay—*i.e.*, effective abstention.  Many of the same attorneys making up the various Plaintiffs' Subgroup Litigation Committees ("PSLCs") also have class-action suits pending in state court representing the same purported class of plaintiffs as they represent in the Levee and MRGO suits.  For example, in *Laurendine v. The Board of Commissioners for the Orleans Levee District, the Parish of New Orleans* (No. 05-11660) in Civil District Court for the Parish of Orleans, State of Louisiana, PSLC member Darleen Jacobs has filed a class-action lawsuit against the O.L.D. and S&WB arising out of Hurricane Katrina.  Similarly, in *Metters v. Board of Commissioners for the Orleans Parish Levee District and Sewerage and Water Board of New Orlean*s (No. 06-9796) in Civil District Court for the Parish of Orleans, State of Louisiana, PSLC members Daniel Becnel, Walter Dumas, Calvin Fayard, Darlene Jacobs, Hugh Lambert, and Gerald Meunier, among others, have filed a class-action lawsuit against many of the same Defendants to this federal court litigation.  Again, in *Green v. Board of Commissioners for the Orleans Parish Levee District, St. Paul Fire & Marine Insurance Company, and Sewerage and Water Board of New Orlean*s (No. 06-9803) in Civil District Court for the Parish of Orleans, State of Louisiana, the same consortium of PSLC members has filed a state court class-action suit against defendants to this litigation.  Other examples exist.

If plaintiffs' counsel were to successfully obtain a stay of the federal court-class action proceedings and then were to begin pursuit of the heretofore dormant state court class-

certification proceedings, then they would not have served judicial economy.  Instead, they would have done nothing but change tactics.  Plaintiffs should not be allowed to bring this matter to the brink of a federal class-certification hearing, and then, thinking otherwise of their strategy, avoid a federal court-class certification hearing to instead pursue their class claims in state court.

Plaintiffs' motion to defer effectively asks this Court to abstain from handling class-certification issues.  They want a stay of class-certification issues in federal court, but offer nothing with regard the state court-class action suits.  *Colorado River* abstention is to be used only sparingly.  *See In re Abbott Laboratories*, 51 F.3d 524 (5th Cir. 1995).  "'Abdication of the obligation to decide cases . . . can be justified . . . only in the exceptional circumstance where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'"  *Wilton v. Seven Falls Company*, 515 U.S. 277, 285 (1995) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1 (1983); and *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976)).[6]

Here, Defendants have an interest in pursuing their defenses in this federal forum and federal courts have a "virtually unflagging obligation" to exercise jurisdiction.  *Colorado River*, 424 U.S. at 817; *Owens v. Labor Ready,* 146 Fed.Appx. 139, 2005 WL 1994417 (9th Cir. 2005) (denying stay of federal court class-action litigation).  Plaintiffs admitted the propriety of this jurisdiction when they chose to file suit in federal court.  Defendants have every right to pursue

---

[6] The Supreme Court has set forth six factors in determining abstention:

(1) whether either court has jurisdiction over res or property;
(2) the inconvenience of the federal forum;
(3) the desirability of piecemeal litigation;
(4) the relative progression of the two actions;
(5) whether state or federal law provides the rule of decision on the merits; and
(6) whether the state court proceeding would adequately protect the rights of the party that had invoked federal jurisdiction.

*Colorado River*, 424 U.S. at 818-19; *Moses H. Cone*, 460 U.S. at 23-27.

their rights in this federal forum without the Court staying the matter leaving parties that prefer the state court forum free to alone pursue resolution of class-certification issues; especially when issues relative to one of the primary players in this litigation, the United States, can only be resolved in the federal forum.  The facts of this case do not offer the "exceptional circumstances" required for application of the *Colorado River* abstention.

This Court has made great efforts to bring order to an otherwise unwieldy and complex litigation.  Those efforts should not be nullified by staying the class certification portion of this suit and effectively ceding resolution of the class certification issues to state court.  Plaintiffs' motion to defer does not serve judicial economy and violates defendants' right to proceed with this litigation in this proper federal forum.

**D.     If the Court Grants Any Stay of Class-Certification Proceedings, It Should Only Be Until Dispositive Motions Are Resolved in the Levee, MRGO and Barge Cases.**

If the Court is nevertheless inclined to defer the class-certification hearing in the MRGO and Levee Cases, then it should tie such a deferment to the resolution of  dispositive motions in the Levee, MRGO and Barge cases—including WGII's Rule 12 motion and the United States's immunity motions—and not to the resolution of a liability and damages trial in *Robinson*.  The resolution of these motions, at least to the extent resolution turns on genuinely disputed principles of controlling law, should include certification for immediate appeal, and the consideration of a further stay, or opportunity for the Court of Appeals to issue a stay, to prevent further inefficiencies.  By staying the litigation in this manner, Defendants will not expend any more resources opposing class certification until *after* they learn whether they are properly parties to the litigation, and plaintiffs will not face expenditure of the significant sums they might expend only to have it determined that no appropriately solvent party is left standing for any further proceedings.  *See, e.g., Chevron USA, Inc., v. Vermilion Parish School Board*, 215 F.R.D.

WAI-2850650v3

897790v.1

511, 515 (W.D. La. 2003) (motions presenting dispositive issues, which do not require the Court to resolve the underlying merits of the complaint, should be disposed of prior to ruling on a class-certification motion); *Ladd v. Equicredit Corp. of Am.*, No. 00-2688, 2001 WL 175236, at *1 (E.D. La. Feb. 21, 2001) (holding that "in the interests of justice and judicial economy" it was appropriate "to stay all class certification issues until it is determined whether [plaintiff] has any valid claims against the [defendant]"); Manual for Complex Litigation, § 21.133 (4th ed. 2007) ("Courts should rule early on motions to dismiss, challenging whether plaintiffs have stated a cause of action. Early resolution of those questions may avoid the expense for the parties and burdens for the court and may minimize use of the class action process for cases that are weak on the merits.").

Moreover, while the class-certification proceedings are stayed in the Levee, MRGO and Barge cases, further common-liability discovery—including the submission of expert reports and the depositions of expert witnesses—also should be stayed. *See* Manual for Complex Litigation, § 21.14 (4th ed. 2007) ("Discovery relevant only to the merits" may "ultimately be unnecessary" if a class is not certified). Indeed, because much of the written and documentary discovery relating to common liability in the Levee and MRGO cases already has been exchanged, the plaintiffs will not suffer any additional prejudice from this stay while dispositive motions are resolved. *See* Letter from J. Bruno to Magistrate Wilkinson, Oct. 18, 2007 ("[T]he hard copy document production by the United States has been substantially completed. It has also become clear to the Plaintiffs that discovery against all non-Government defendants is likewise substantially complete"). To the extent the parties can agree to engage in limited fact discovery relating to the merits and pertinent only to possible Rule 56 motions, the Defendants believe such discovery can and should proceed during the stay.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that plaintiffs' motion to defer class-certification proceedings in the Levee and MRGO cases, as set forth in their October 15th motion, be denied.


Dated:  October 26, 2007                         Respectfully submitted,


/s/Gary M. Zwain                                 /s/William D. Treeby
Lawrence J. Duplass, 5199                        William D. Treeby, Bar No. 12901
Gary M. Zwain, 13809                             Carmelite M. Bertaut, Bar No. 3054
Andrew D. Weinstock, 18495                       Heather S. Lonian, Bar No. 29956
            Of                                   Stone Pigman Walther Wittmann L.L.C.
Duplass, Zwain, Bourgeois, Morton, Pfister &     546 Carondelet Street
Weinstock                                        New Orleans, LA 70130
3838 N. Causeway Blvd., Suite 2900               Phone:  504-581-3200
Metairie, Louisiana  70002                       Fax:  504-581-3361
Telephone:  (504) 832-3700
Facsimile:  (504) 837-3119                        Jerome R. Doak
                                                 Margaret I. Lyle
*Attorneys for Board of Commissioners for the*   Amy Payne
*Lake Borgne Basin Levee District and for*       Jones Day
*Board of Commissioners for the East Jefferson*  2727 N. Harwood Street
*Levee District*                                 Dallas, Texas  75201
                                                 Telephone:  (214) 220-3939
                                                 Facsimile:  (214) 969-5100

                                                 Adrian Wager-Zito
                                                 Jones Day
                                                 51 Louisiana Avenue, N.W.
                                                 Washington, D.C. 20001-2113
                                                 Phone:  202-879-3939
                                                 Fax: 202-626-1700

                                                 *Attorneys for*
                                                 *Washington Group International, Inc.*

- 13 -

/s/Thomas P. Anzelmo
Thomas P. Anzelmo, 2533
Mark E. Hanna, 19336
Kyle P. Kirsch, 26363
Andre J. Lagarde, 28649
      Of
McCranie, Sistrunk, Anzelmo, Hardy,
  Maxwell & McDaniel
3445 N. Causeway Boulevard, Suite 800
Metairie, Louisiana  70002
Telephone:  (504) 831-0946
Facsimile:  (504) 831-2492
And
James L. Pate, 10333
Ben L. Mayeux, 19042
      Of
Laborde & Neuner
One Petroleum Center, Suite 200
1001 West Pinhook Road, Suite 200
Post Office Drawer 52828
Lafayette, Louisiana  70505-2828
Telephone:  (337) 237-7000

*Attorneys for the Board of Commissioners*
*for the Orleans Levee District*

/s/Charles M. Lanier, Jr.
Charles M. Lanier, Jr., 18299
J. Warren Gardner, Jr., 5928
Kevin R. Tully, 1627
Gregory S. Lacour, 23823
      Of
Christovich & Kearney, LLP
601 Poydras Street, Suite 2300
New Orleans, Louisiana  70130-6078
Telephone:  (504) 561-5700
Facsimile:   (504) 561-5743

George R. Simno III, 12271
Gerard M. Victor, 9815
625 St. Joseph Street, Room 201
New Orleans, Louisiana 70165
Telephone:  (504) 585-2242
Facsimile:  (504) 585-2426

*Attorneys for Sewerage and Water*
*Board of New Orleans*

/s/Ralph S. Hubbard III
Ralph S. Hubbard III, Esq.  (7040)
Lugenbuhl, Wheaton, Peck, Rankin &
Hubbard
601 Poydras St., Ste. 2775
New Orleans, La. 70130
504-568-1990
504-310-9195 (fax)

*Defendants' Liaison Counsel*

- 14 -

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Defendants' Opposition to MRGO and Levee PSLCs' Joint Motion to Modify Case Management Order No. 4, As Amended, To Defer Class Action Certification Proceedings has been served upon all counsel of record via the Court's CM/ECF system, this 26th day of October, 2007.

/s/ William D. Treeby
William D. Treeby