## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | No. 05-4182 |
| CONSOLIDATED LITIGATION | * | |
| | * | SECTION "K" (2) |
| | * | |
| *   *   *   *   *   *   * | * | JUDGE DUVAL |
| | * | MAG. JUDGE WILKINSON |
| PERTAINS TO: BARGE, LEVEE, & MRGO | * | |
| | * | |
| *   *   *   *   *   *   * | * | |

## DEFENDANT UNITED STATES' MEMORANDUM  IN OPPOSITION TO MRGO AND LEVEE PSLCS' MOTION TO MODIFY C.M.O. No. 4 TO DEFER CLASS CERTIFICATION PROCEEDINGS

Seven months after the entry of Case Management and Scheduling Order No. 4 and less than two weeks before the hearing of their motion for class certification, the MRGO and Levee PSLCs have filed a motion seeking a modification of C.M.O. No. 4 that will remove their class certification motion from the Court's calendar for an indefinite period—until a time of their choosing after the Court "hears and decides" *Robinson v. United States,* Civil Action No. 06-2286. Plt. Mo. at 2.

This motion should be denied for two reasons.  First, postponing the class certification hearing only days beforehand is unjust to the defendants who have expended considerable time

and resources in anticipation of it and are prepared to proceed.  Second, the PSLCs have adduced

no good reason for delay.  Postponement of the class certification proceeding until *Robinson* is

"heard and decided" is not reasonably calculated to foster any efficiencies or advance the ultimate

termination of the litigation.  By design, *Robinson* frames a single legal issue:  whether conduct

extrinsic to a flood control project is within the purview of 33 U.S.C. § 702c if the conduct

impacts a flood control project and thereby causes flood damage.  The vast majority of cases (in

every track—Barge, Levee, and MRGO), however, place the failure of the federal flood control

system for New Orleans directly at issue and therefore do not turn on the narrow issue presented

by *Robinson.*

   *Robinson,* moreover, cannot provide insight into the numerous other jurisdictional and

non-jurisdictional defenses of the United States that will be asserted in other cases.  Accordingly,

in no event will a ruling of jurisdiction in *Robinson* provide the PSLCs with the certainty they

seek concerning this Court's subject matter jurisdiction over the corpus of cases or, more to the

point, the PSLCs' eventual ability to recover broad damage awards from the United States.

Notably, however, the converse could be true.  A ruling of *no* jurisdiction could provide certainty

concerning the Court's *lack* of subject matter jurisdiction over all of the cases.  But even then, "a

much clearer picture of the Government's liability" will not emerge until after appellate review of

this Court's ruling.  Postponing appellate review for another year or more will not foster

efficiency or speed the ultimate termination of the litigation.  The greatest efficiencies will be

gained only by promptly deciding the United States' pending motions to dismiss and certifying

those rulings for immediate appellate review under 28 U.S.C. § 1292(b).  Certification under §

1292(b) was the course originally charted by the Court as the most efficient way in which to

manage the litigation.  It remains the best course and offers the greatest possibility of obtaining a

resolution of all of the litigation at the earliest possible time.  This method of bringing clarity to

the litigation requires no postponement of class certification proceedings.

The class certification hearing should proceed as scheduled, and the PSLCs' motion to

amend Case Management Order No. 4 should be denied.

## ARGUMENT

I.  POSTPONING THE CLASS CERTIFICATION HEARING ONLY DAYS BEFOREHAND IS UNJUST
    TO DEFENDANTS, WHO HAVE SPENT VERY CONSIDERABLE TIME AND MONEY TO PREPARE
    AND ARE READY TO PROCEED; POSTPONEMENT WILL INCREASE COSTS
    AND WILL ULTIMATELY DELAY THE LITIGATION.

The requested postponement will create inefficiencies, increase the expenses to the parties,

and be unjust to the defendants, who have labored for more than half a year and have expended

very considerable monies in order to defeat the class certification motions.  Both plaintiffs and

defendants have retained experts who have studied the complex issues pertinent to class

certification.  The experts have produced voluminous reports, been deposed, and prepared for the

impending hearing.  In justified reliance on the schedule set forth in C.M.O. No. 4 and the Court's

repeated affirmation of its intent to press forward with class certification at the earliest possible

date, the defendants have worked diligently to prepare for the November 5 hearing.  Rule

23(c)(1)(A), Fed. R. Civ. P., recognizes the inequities that result when class certification

determinations are delayed.  The rule therefore requires that "the court must—at an early

practicable time—determine by order whether to certify the action as a class action." Fed. R.

Civ. P. 23(c)(1)(A).  Defendants have prepared and are ready to go forward.  The hearing should proceed as scheduled.  Any alteration would be unjust.[1]

If the hearing is postponed, costs will be increased.  The PSLCs acknowledge that their class certification motions will "inevitabl[y]" be modified if the hearing is postponed.  PSLC Mem. at 6.  If so, all of the time and expense associated with expert analysis, reports, depositions, and preparation for testimony at the class certification hearing will surely be repeated to address the changes in the plaintiffs' motions.  On account of the additional preparations that will be required if the class certification hearing is postponed, the litigation is sure to be delayed.  Inasmuch as discretionary appellate review may follow this Court's class certification ruling, *see* Fed. R. Civ. P. 23(f), the hearing should occur as scheduled.  Adhering to the present schedule will allow appellate review to occur while common liability discovery is proceeding.

## II. HOLDING CLASS CERTIFICATION OR ANY OTHER ASPECT OF THE LITIGATION IN ABEYANCE PENDING A DECISION IN *ROBINSON* WILL RESULT IN UNDUE DELAY BECAUSE *ROBINSON,* BY DESIGN, IS NARROWLY FRAMED AND DISSIMILAR TO OTHER CASES.

After months of litigation, the PSLCs have suddenly decided that they would prefer to know whether there is jurisdiction over the subject matter of their claims against the United States before a class is certified.  But the premise of their motion is deeply flawed.  Plaintiffs erroneously assert that they will be prepared to move forward after this Court's "hears and decides" *Robinson.* PSLC Mem. at 2.  Plaintiffs argue that a decision in *Robinson* will provide sufficient clarity

---

[1]The reasons why postponement would be inefficient and unjust have been further elaborated in the opposition brief filed jointly by defendants Washington Group International, Inc., the Sewerage & Water Board of New Orleans, the Board of Commissioners for the Orleans Levee District, the Board of Commissioners for the Lake Borgne Levee District, and The Board of Commissioners for the East Jefferson Parish Levee District.  The United States adopts those arguments herein by reference.

concerning the Court's jurisdiction over the subject matter of the putative class actions to allow them to proceed.  *See id.* at 4-5.  In reality, however, a ruling by this Court in *Robinson* will not necessarily provide certainty concerning the Court's jurisdiction over the subject matter of the claims asserted against the United States.  However the Court rules in *Robinson,* the Court's jurisdiction over the subject matter of these cases will remain in doubt pending appellate review. But it is precisely these legal uncertainties, and the concomitant uncertainty concerning the PSLCs' ability to recoup their expenses, that have caused the PSLCs to seek a postponement of the class certification hearing.  Nothing short of appellate rulings on the United States' numerous jurisdictional and non-jurisdictional defenses will provide the certainty that the PSLCs seek to obtain before proceeding with class certification.

Inasmuch as *Robinson* is premised solely upon alleged negligence in the design, construction, and maintenance of the MRGO, a trial of *Robinson* may very well provide *no* useful insight into the existence of jurisdiction over the far broader claims asserted in the putative class actions and numerous other actions that challenge the design, construction, and maintenance of the hurricane protection system.  This could prove true if the Court limits its ruling to the pure question of law that the Court identified recently:  whether conduct extrinsic to a flood control project is protected by 33 U.S.C. § 702c if the conduct impacts a flood control project and thereby causes flood damage.  The PSLCs, which is to say, some or all of the lawyers within them, deliberately framed the *Robinson* allegations narrowly, in an attempt to avoid the more obvious applications of Flood Control Act immunity to much of the conduct obviously implicated by the catastrophic flood of 2005.  Levees and floodwalls erected to protect New Orleans were breached and collapsed during Hurricane Katrina, but any challenge to the design, construction,

maintenance, and repair of the floodworks themselves was excluded from *Robinson*.  The case is therefore particularly unsuited to serve as a bellwether for the hundreds of consolidated cases that do not present that issue or present it as only one among many.  *See, e.g.,* LNA Third-Party Complaint (R.D. 590) ¶¶ 25, 26 ("inadequacies of the levee and retaining wall systems and related structures" along these waterways caused flood damage for which LNA seeks indemnification).[2]

Even if a decision in *Robinson* would shed light on the applicability of 33 U.S.C. § 702c to other cases, it is simplistic to assert that "a much clearer picture of the Government's liability" will emerge.  PSLC Mem. at 4.  The Flood Control Act is but one of several jurisdictional hurdles that must be crossed in order for the plaintiffs to know whether the Court has subject matter jurisdiction, much less whether liability could be imposed on the United States.  Because the United States has numerous jurisdictional defenses that may or may not apply in any given case, depending on the nature and details of the claims asserted, "hearing and deciding" *Robinson* will *not* provide a basis for knowing whether the Court has jurisdiction over the United States in any of the other suits.  For example, the specific conduct at issue in each suit must be examined to determine whether the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), applies.  And since the FTCA does not allow the United States to be held liable for the negligence of its contractors, *see id.* at § 2671, the specific conduct at issue in each suit must be examined to determine whether it was performed by an employee of the United States or by a contractor.  Only then can subject matter jurisdiction be ascertained.  Likewise, claims of reliance on the hurricane protection system may well be barred by 28 U.S.C. § 2680(h), which bars claims of

---

[2]LNA's first amended third-party complaint, R.D. 590 (filed in C.A. No. 05-4419), is identical to its third-party complaint in *Benoit*, R.D. 597 C.A. No. 05-4419).

deceit and misrepresentation.  No such claims are asserted in *Robinson,* which prevents the case

from providing guidance as to the application of 28 U.S.C. § 2680(h) to such claims.  Because the

liability of the United States is no greater than that of a private person under Louisiana law, the

doctrine of peremption will come into play in cases in which recovery is sought for works that

were completed long ago.  Again, application of this doctrine will turn on the specific factual

allegations in each case.  Because *Robinson* is based solely on MRGO, it will afford no

opportunity for a ruling as to the application of peremption to the hurricane protection system,

which is at issue in every other suit.[3]

Although the United States possesses and will assert numerous defenses, both

jurisdictional and non-jurisdictional, over and above its Flood Control Act defense, the United

States has *initially* relied primarily on the jurisdictional defense afforded by 33 U.S.C.§ 702c for

three reasons.  First, it is facially applicable to the most prevalent claim asserted against the

United States, *i.e.,* that the flood control works were flawed.  Second, the undeniable breadth of

---

[3]The Declaration of Joseph M. Bruno attempts, but fails, to show that *Robinson* could serve as a bellwether.  The declaration is notable only for its misrepresentations.  Mr. Bruno falsely declares that no court has ever addressed "[w]hether the application of 702(c) [sic] is jurisdictional, and, if so, whether the Plaintiffs bear the burden of demonstrating that the immunity does not apply."  Numerous courts, including most notably the Court of Appeals for the Fifth Circuit, have ruled that § 702c provides a jurisdictional defense that the plaintiff bears the burden of overcoming.  In *Boudreau v. United States,* 53 F.3d 81(5th Cir. 1995), the plaintiff "assert[ed] that, under the facts of the case, § 702c immunity does not lie."  *Id.* at 82.  The Court of Appeals reviewed the district court's Rule 12(b)(1) dismissal *de novo,* "but with Boudreau having the burden of demonstrating jurisdiction."  *Id.*  Likewise, in *Holt v. United States,* 46 F.3d 1000 (10th Cir. 1995), the Court of Appeals affirmed the district court's dismissal under Rule 12(b)(1) of claims that were barred by § 702c.  *See id.* at 1004.  And in *McCarthy v. United States,* 850 F.2d 558 (9th Cir. 1988), the court affirmed a dismissal for lack of jurisdiction upon a determination that the United States was immune from liability under the Flood Control Act.  "The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction."  *Id.* at 560 (citations omitted).

the defense makes factual development unnecessary, at least with respect to most of the claims. Third, and in the present circumstances most importantly, a determination of immunity could provide a basis for disposing of *all* of the cases against the United States.  What is most relevant to the present search for the most efficient way to proceed, and what must therefore not be overlooked, is that the only bellwether ruling which will allow "a much clearer picture of the Government's liability" to emerge, PSLC Mem. at 4, is a ruling that § 702c *does* apply.  A ruling that § 702c does not apply will not rule out the possibility that one or more of the other defenses asserted by the United States will prevent any imposition of liability.  A broad ruling in *Robinson* could shed light on the application of § 702c to other cases, but suggesting, as the PSLCs do, that it would provide sufficient guidance to minimize future litigation of other cases is true only in the event that § 702c is held to bar the action.  Even more likely to be beneficial to the litigants, however, would be decisions of the pending motions to dismiss the Levee Master Complaint and the Gambel suits.[4]

Although the PSLC's motion highlights the need for a speedy resolution of the Court's jurisdiction over the claims asserted against the United States, it fails to advocate the surest and most efficient way to obtain the rulings that are necessary to that end.  A ruling in *Robinson,* even after trial, will not provide the requisite certainty concerning the subject matter defenses asserted by the United States.  In reality, no ruling by this Court will provide the PSLC with sufficient information concerning their ultimate ability to obtain judgments of liability against the United States.  Only rulings by the Court of Appeals and, perhaps, the Supreme Court can give the

---

[4]So-called after the lead lawyer in Civil Action Nos. 06-5116, 06-5118, 06-5127, 06-5128, 06-5131, 06-5132, 06-5134, 06-5137, 06-5140, and 06-5142.  A motion to dismiss those actions was filed on July 23, 2007, has been fully briefed, and remains pending.

reliable guidance that the PSLCs seek. Rulings by this Court on the United States' pending and previously decided motions to dismiss, certified for interlocutory appeal under 28 U.S.C. § 1292(b), offer the only path to a temporally relevant resolution of these jurisdictional issues.

Nothing is to be gained by requiring the parties to litigate a single case to a conclusion before allowing an appeal to be taken, especially when that case does not afford an opportunity to raise or decide so many issues present in the hundreds of other cases now before the Court. While it is true that *Robinson could* result in a ruling that would provide beneficial guidance to the parties and, after appeal, to this Court, it is far from certain that *Robinson would* elicit a broadly beneficial ruling. It is in fact more likely that a ruling on the motions to dismiss the Gambel suits and the Levee cases will provide broad guidance beneficial to the hundreds of cases that contain similar claims based on the failure of the hurricane protection system. Certifying for interlocutory appeal the orders deciding those motions could result in a definitive ruling from the Court of Appeals before *Robinson* is even "heard and decided" by this Court. Now that the wisdom of the course originally charted by the Court has been revealed, it is clear that the most efficient and just way to proceed is to decide and certify for interlocutory appeal the pending motions to dismiss while continuing on the schedule imposed by CMO No. 4.

CONCLUSION

For these reasons, the PSLCs' motion to amend should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

C. FREDERICK BECKNER III
Deputy Assistant Attorney General

9

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHY, JR.
Assistant Director, Torts Branch

s/ Robin D. Smith
ROBIN D. SMITH
Senior Trial Counsel
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C.  20044
(202) 616-4289
(202) 616-5200 (fax)
robin.doyle.smith@usdoj.gov
Attorneys for Defendant United States

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2007, a true copy of Defendant United States'

foregoing Opposition was served on all counsel of record by ECF.


_____s/ Robin D. Smith_____
Robin D. Smith