# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF INGRAM BARGE COMPANY, AS OWNER OF THE ING 4727, PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * CIVIL ACTION<br>*<br>* NO. 05-4419, C/W 05-4237, C/W 05-5531,<br>* C/W 05-5724, C/W 06-3313, C/W 06-5342,<br>* C/W 06-5054, C/W 06-6299, C/W 06-7516<br>*<br>* SECTION "C" (2)<br>*<br>* JUDGE HELEN G. BERRIGAN<br>*<br>* MAG. JUDGE JOSEPH C. WILKINSON, JR. |

## OPPOSITION TO MOTION TO TRANSFER

Defendant Lafarge North America Inc. ("LNA") opposes the *Mumford* plaintiffs' Motion to Transfer LNA's third-party claims against the United States, the Orleans Levee District, and the Dock Board.[1] Severance and transfer will not simplify the adjudication of this case, and will create duplicate litigation elsewhere.

Causation is at the very heart of all claims in these consolidated proceedings, and LNA has the absolute right to put on evidence showing the true cause of plaintiffs' alleged damages – *i.e.*, that the breaches were caused by the acts or omissions of other third parties, not by a barge.

---

[1] R.Doc. No. 592-5. Although the motion purports to be brought on behalf of all of Group A, the *Parfait* claimants have not joined in the motion, and in fact the motion candidly recites (at p. 9) that it is adverse to some Group A plaintiffs.

Even if LNA's third-party claims against the governmental entities were transferred to the *In re Katrina* litigation pending before Judge Duval, LNA would still be entitled to put on this evidence in this proceeding both to negate causation and for purposes of allocating liability (if any). Thus severance and transfer would in no way streamline the resolution of plaintiffs' claims.

Moreover, severance and transfer would severely and unfairly prejudice LNA by denying it a simultaneous determination of its claims against the government entities, and by forcing it to fight the causation battle on two fronts, with the attendant risk of inconsistent results. Plaintiffs have failed to demonstrate any basis for imposing such a burden on LNA, and the Court should therefore deny plaintiffs' motion.

## **BACKGROUND**

This consolidated action includes a number of lawsuits in which plaintiffs, either individually or on behalf of putative classes, have sued LNA (and others) alleging that a barge that had been moored at LNA's cement terminal caused the breach of the floodwall at the southern end of the Inner Harbor Navigational Canal ("IHNC"), and that the flooding resulting from that breach caused plaintiffs to suffer damages.[2] In response, LNA has denied the material allegations of plaintiffs' complaints, and has specifically denied that the ING 4727 was in any way responsible for any of the breaches in the east side retaining walls of the IHNC.[3] Instead, LNA has averred that "the barge ... was drawn through a pre-existing breach in the east side retaining wall" and that the plaintiffs' alleged damages were caused by the defective design,

---

[2] *See, e.g., Mumford* Complaint, R. Doc. 1 in C.A. 05-5724, at ¶¶ VI-VII; *see also Parfait* Complaint, R.Doc. 1 in C.A. 05-4237, at ¶ V. The *Parfait* plaintiffs also sued the government entities, which has placed the *Mumford* group in the untenable position not only of failing to advance claims that other plaintiffs have brought, but of affirmatively seeking to undermine those other plaintiffs' pursuit of those claims.

[3] *See e.g.,* LNA's Answer and Third-Party Complaint in *Benoit*, C.A. No. 06-7516, R.Doc. 597.

957807_1.DOC 2

improper construction, and improper inspection and maintenance of the various waterways involved, and failures related to the construction and maintenance of the levee and retaining wall systems themselves, by the United States, the Orleans Levee District, and the Dock Board.[4] In addition to denying liability on the ground that plaintiffs' damages were caused by the government entities' acts and omissions rather than by the barge, LNA has asserted third-party claims against the government entities for indemnity, recovery over, and/or contribution for damages properly attributable to the negligence of those entities.[5]

The United States recently moved to dismiss LNA's third-party claims against it. This Court denied the motion and, with respect to LNA's claims of the government's negligent design, maintenance, and construction of the levees and retaining wall systems, specifically held that it was "satisfied that Louisiana law may recognize a claim for indemnity and contribution in this case."[6] As to LNA's claims of negligent dredging, the Court observed that LNA's third-party complaint is not subject to the administrative exhaustion requirement of the Admiralty Extension Act. More importantly, the Court held that public policy considerations entitle LNA to an adjudication *in this case* of its right to indemnity or contribution from the government entities in order to afford "complete relief to all parties" and to avoid "a significant waste of judicial resources."[7]

## LAW AND ARGUMENT

Federal Rule of Civil Procedure 14(a) authorizes a defendant to assert a third-party complaint against any person who may be liable to the defendant for all or part of the plaintiff's

---

[4] *Id.* at pp. 6-7. In its answer to the *Mumford* plaintiffs' Fourth Supplemental and Amended Complaint, LNA has made essentially the same allegations regarding the various government entities' respective acts and omissions and the fact that the barge did not cause the levee and retaining wall failures. *See* R.Doc. 479 at pp. 2-3, 5-6.
[5] *Id.* at 21.
[6] R.Doc. 587 at p. 7.
[7] *Id.* at 11.

claim.[8] In *United States v. Joe Grasso & Son, Inc.,*[9] the Fifth Circuit observed that Rule 14(a) is based on the principle that where "the defendant's right against the third party is merely an outgrowth of the same core of facts which determines the plaintiff's claim, impleader is properly used 'to reduce litigation by having one lawsuit do the work of two."[10] Indeed, "[u]nder the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties, and the joinder of claims, parties, and remedies is strongly encouraged."[11]

Given that Rule 14(a)'s fundamental prerequisites are met here, plaintiffs do not and cannot legitimately challenge the propriety of LNA's third-party complaint against the three governmental entities under Rule 14(a); instead, they urge severance and transfer of those claims on the basis that those claims are separate and distinct from the plaintiffs' claims against the barge and the companies allegedly responsible for it. The distinction that plaintiffs urge is artificial at best. Causation of plaintiffs' damages is a fundamental issue, including – at a minimum – what caused the levee and retaining wall failures. Plaintiffs' alleged damages cannot be segregated as "barge-related" versus "non-barge-related." Plaintiffs' proposal to artificially split the causation question between two different proceedings would not serve the interests of the parties or the Court. As the Fifth Circuit noted in *Delgado v. Shell Oil Co.,*[12] severance under Rule 14(a) is inappropriate where "policy interests such as efficiency warrant[] the disposition of all th[e] claims together."[13] Similarly, in *Marseilles Hydro Power, LLC v.*

---

[8] FED. R. CIV. P. 14(a) (2006).
[9] 380 F.2d 749 (5th Cir. 1967)
[10] *Id.* at 751 (quoting *Falls Indus., Inc. v. Consolidated Chem. Indus., Inc.*, 258 F.2d 277, 283 (5th Cir. 1959)).
[11] *Nase v. Teco Energy, Inc.*, 347 F. Supp. 2d 313, 322 (E.D. La. 2004) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).
[12] 231 F.3d 165 (5th Cir. 2000).
[13] *Id.* at 182 (upholding district court's refusal to sever claims against third-party defendant whom plaintiffs had strategically omitted to sue).

*Marseilles Land and Water Co.*,[14] the Seventh Circuit held that a defendant should have been permitted to file a third-party claim against an entity that was allegedly responsible for the collapse of a canal wall, stating that "[w]e cannot for the life of us see what procedural economy could be gained by forcing the canal company to sue Illinois Power in a separate action or how the plaintiff could be prejudiced."[15]

Plaintiffs' reliance on Rule 21 regarding severance as a remedy for misjoinder is misplaced. As noted above, plaintiffs have not challenged the propriety of LNA's third-party claims against the United States, the OLD, or the Dock Board. There is therefore no question of misjoinder. More importantly, however, Rule 21 permits a court to sever claims that the *plaintiff* has improperly joined under Rule 20, and is therefore inapplicable here.[16] In any event, Rule 21 (like Rule 14), embodies a presumption against severance, as this Court observed in *Nase v. Teco Energy, Inc.*[17]

Based upon these considerations, it is evident that severing the third-party claims will not simplify this case but, instead, will prejudice LNA and result in duplicate litigation and a significant waste of judicial resources.

**I.  *Severance will not simplify this case because the central issue of causation will necessarily be litigated as part of plaintiffs' claims against LNA.***

Plaintiffs falsely seek to portray this action as a simple "maritime allision controversy" in which they claim that "Lafarge et. al negligently moored etc. ING 4727," and conclude that "the

---

[14] 299 F.3d 643 (7th Cir. 2002).
[15] *Id.* at 650; *see also Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 394-95 (1st Cir. 1999) (noting that the "core purpose of Rule 14(a) [is] avoiding unnecessary duplication and circuity of action").
[16] *See* 7 C Wright & A. Miller, *Federal Practice and Procedure* § 1683 at 475 (2001).
[17] 347 F.Supp.2d 313, 322-23 (E.D. La. 2004) (citing *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994)).

957807_1.DOC 5

barge caused the flooding."[18] Plaintiffs seek to draw an imaginary line between the claims against the barge and everything else. No such line can be drawn. Evidence concerning the governmental entities' role in causing the IHNC southern breach is essential to understanding how that breach could have happened (and did happen) without impact from a barge. Moreover, evidence regarding levee and floodwall breaches apart from the IHNC southern breach must also be considered in determining causation, particularly given that the plaintiffs who have joined this suit are from the diverse and far-flung locations. Such evidence is relevant not only on the issue of causation, but also to allocate liability in the event it is found to exist. Because these questions must be addressed in adjudicating plaintiffs' claims against LNA, severing LNA's claims against the governmental entities for separate adjudication will not save *any* time or resources.

    A.    *Both admiralty and Louisiana law entitle LNA to prove that the plaintiffs' alleged damages were caused by something <u>other</u> than the ING 4727.*

Admiralty law requires a plaintiff asserting a negligence claim to prove that the defendant's conduct (or some instrumentality for which the defendant is liable) was a proximate cause of the plaintiff's alleged injuries.[19] That is, proximate causation is an essential element of a negligence claim under the general maritime law. To recover from LNA, the plaintiffs will have to show that the barge was the proximate cause of their injuries. In defense of that claim, however, LNA is entitled to present evidence that something other than the barge was the culprit. In *Exxon Co., U.S.A. v. Sofec, Inc.*, for example, the Supreme Court permitted the defendant, Exxon, to put forth evidence of another party's liability (in that case an employee of the plaintiff) as evidence that Exxon's own actions were not the proximate cause of the plaintiff's injuries.[20]

---

[18] R.Doc. 592 at pp. 3, 5.
[19] *See Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 836-37 (1996).
[20] *Id.* at 836 (applying "superseding cause" doctrine); *see also Gavagan v. United States*, 955 F.2d 1016, 1019 (5th Cir. 1992); *Tidewater Marine Inc. v. Sanco Int'l, Inc.*, 1997 WL 543108, *6 (E.D. La. Sept. 3, 1997).

Louisiana law similarly requires a plaintiff to prove that the defendant's conduct was a proximate cause of the plaintiff's injury, and entitles the defendant to show that something else caused the alleged harms. The Louisiana Fourth Circuit Court of Appeal observed in *Laurent v. Jolly-Wright* that "[a] tortfeasor is only liable for damages caused by his negligent act; he is not liable for damages caused by separate, independent or intervening causes of damage."[21] The only way a defendant can establish that the plaintiff's damages (if any) were caused by something other than the defendant's own conduct is to put on evidence of what the true cause of the damage was. It necessarily follows, therefore, that a defendant is entitled to introduce evidence that a third party is the sole cause of a plaintiff's harm in order to "exculpate himself."[22]

Consistent with these rules, plaintiffs' claims against LNA and the other defendants in this case necessarily raise the question of whether plaintiffs' alleged damages were caused by the barge or by some other acts or occurrences, including levee failure(s) attributable to the government's negligence. Evidence of the governmental entities' negligence is particularly important to an understanding of how and why the retaining wall failure and flooding could have occurred (and did occur) without involvement from a barge. Three independent and/or public investigative teams have issued reports analyzing that very issue, and their reports illustrate the central importance and relevance of that evidence to this case:

- <u>Team Louisiana</u> -- An investigative team commissioned by the State of Louisiana and headed by LSU Professor Ivor van Heerden ("Team Louisiana") concluded that the IHNC southern breach was caused by overtopping erosion and underseepage which undermined the

---

[21] *Laurent v. Jolly-Wright*, 2005-1499, p.5 (La. App. 4 Cir. 1/10/07), 950 So.2d 47, 49 (citing *Keller v. City of Plaquemine*, 96-1933, p.17 (La. App. 1 Cir. 9/23/97), 700 So.2d 1285, 1294); *see also Roberts v. Benoit*, 605 So.2d 1032, 1052 (La. 1991) (noting that Louisiana applies proximate cause rules).
[22] *Boone v. Ricks*, 26,249, p.5 (La. App. 2 Cir. 10/26/94), 645 So.2d 228, 230 (citing *Holland v. Buckley*, 305 So. 2d 113, 119 (La. 1974)).

floodwall, stemming from various government failures such as creating an "artificial funnel" for storm surge (i.e., the MRGO); failing to place "simple concrete pads" behind the floodwall to prevent erosion; building walls with "deficient" crown levels (i.e., the walls were built too low); and failing to sufficiently anchor the steel sheet pile in firm foundation soil.[23]  These investigators specifically found that the barge did not cause the breach, but rather "clipped the end of the *already formed breach* as it was sucked through."[24]

- Independent Levee Investigation Team -- An independent investigative team supported by the National Science Foundation and led by Professor Raymond Seed of the University of California at Berkeley (the "Independent Levee Investigation Team") concluded that the IHNC southern breach was caused by underseepage and soil failure deriving from the government's inadequate soil testing; failure to sink sheet piles to a proper depth; failure to build the walls to a proper height; and the creation of the MRGO and attendant destruction of wetlands and loss of hurricane protection.[25]  This team also expressly found that the barge did not cause the breach, but rather "slipped its moorings and was drawn in through a breach that was *already well developed*."[26]

- IPET -- The Army Corps of Engineers' investigation ("Interagency Performance Evaluation Team" or "IPET") concluded that the breaches along the IHNC were caused by soil foundation failure (north breach) and by overtopping and erosion (south breach); *admitted* that the failures could have been prevented by use of T-walls which have a base to prevent erosion; and noted that the flood protection structures were "below their original design and construction

---

[23] I. van Heerden et al., *The Failure of the New Orleans Levee System during Hurricane Katrina* (Dec. 2006) at 32, 136, 201, 214, 219. The report can be accessed at: ftp://hef-hurricane.hurricane.lsu.edu/Team_Louisiana
[24] *Id.* at 67.
[25] R.B. Seed et al., *Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane Katrina* (July 31, 2006) at 11-11, 6-8, 4-28, 12-9. The report is at http://www.ce.berkeley.edu/~new_orleans
[26] *Id.* at 6-7 (emphasis added).

957807_1.DOC                                    8

elevation."[27] Importantly, the IPET report did not ascribe any of the levee/floodwall failures to the barge.

* * * * *

In sum, in defending against plaintiffs' claims, LNA has the right to show that the relevant breach(es) resulted from causes other than the barge, including the government's negligence. LNA is entitled to present evidence in support of its theories of government liability here ***regardless of whether LNA's claims against the government are severed from plaintiffs' barge-related claims***. That is, even if the Court were to sever LNA's third-party claims for consolidation with the huge and complex *In re Katrina* group of disparate cases, LNA would still be entitled (and indeed required) to submit evidence of government fault in defense of the plaintiffs' claims against it in this proceeding. Therefore, contrary to the only justification offered by these movants, severance and transfer will accomplish nothing in terms of judicial economy, and would instead put LNA in the unenviable (and unnecessary) position of having to litigate the same issues twice in two separate proceedings.

> B.  *Both admiralty and Louisiana law entitle LNA to introduce evidence of government fault in order to allocate damages.*

Aside from issues of causation and LNA's right to disprove plaintiffs' theories of liability against it, LNA is separately entitled to put on evidence of the government agencies' fault for the purpose of allocating damages (if any). In *McDermott, Inc. v. AmClyde*,[28] the Supreme Court held that the trier of fact in an admiralty action must apportion damages among *all* tortfeasors, including those who are not parties to the case. The *Mumford* plaintiffs suggest (at 10) that the

---

[27] Interagency Performance Evaluation Task Force, *Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System* (March 2007) ("IPET Report") at V-79, V-80, II-2. Its report is at https://ipet.wes.army.mil. (Note that as of March 26, 2007, portions of this report were in "Final draft" form, while other portions are indeed "Final".)
[28] 511 U.S. 202, 217 (1994).

957807_1.DOC                                         9

government's conduct need not be considered because "maritime liability is solidary;" however, the *McDermott* decision rejects that argument. In that case, the Court made it clear that "there is no tension between joint and several liability and a proportionate share approach," and held that a defendant in a maritime case is permitted to demonstrate its proportionate share vis-à-vis other entities that have settled or that the plaintiff chose not to sue.[29] Under the Supreme Court's reasoning, therefore, allocation of liability cannot be done in a vacuum; regardless of whether the government agencies are parties to this proceeding, LNA is entitled to introduce evidence of government fault to show that some or all of plaintiffs' damages should be allocated to those agencies. Carving out LNA's claims against those entities for separate adjudication will do nothing to simplify or streamline this case.

Louisiana's comparative fault principles also entitle a defendant to introduce evidence of third-party fault for the purpose of allocating both liability and damages. Article 2324 of the Louisiana Civil Code specifically provides that a defendant "shall not be liable with any other person for damages attributable to the fault of such other person."[30] Consistent with this comparative fault principle, Article 2323 of the Civil Code requires the factfinder to consider the fault of all potential tortfeasors, including non-parties, for the purpose of determining each party's "degree or percentage of fault."[31] Thus, under Louisiana law, LNA is entitled to show the governmental entities' culpability for purposes of allocation, regardless of whether those entities are before the Court.[32] As the Fifth Circuit observed in *Sibley v. Lemaire*,[33] a refusal to allow evidence related to liability of all tortfeasors constitutes reversible error.

---

[29] 511 U.S. at 221.
[30] LA. CIV. CODE ANN. art. 2324(B) (2007).
[31] LA. CIV. CODE ANN. art. 2323(A) (2007).
[32] *See also Perez v. Boh Bros. Const. Co., Inc.*, 95-983, p.3 (La. App. 5 Cir. 5/15/96), 673 So.2d 1375, 1377.
[33] 184 F.3d 481, 488 (5th Cir. 1999).

In short, for purposes of allocation as well as contesting plaintiffs' theory of causation, LNA has the right to present evidence that the levee breach(es) resulted from the government's conduct, not the barge. Plaintiffs could not legitimately object to such a showing even if LNA's third-party claims were to be severed and transferred. It therefore follows that plaintiffs' core premise – that severing LNA's third-party claim would remove that evidence from this case – is entirely mistaken, and plaintiffs' motion to transfer should be denied for this reason alone.

## II.  *Severance and transfer of LNA's third-party claims would seriously prejudice LNA and waste significant judicial resources.*

Just last month, this Court recognized that because plaintiffs persist in arguing that LNA can potentially be held liable for the wrongful conduct of the United States or other governmental entities, both fairness to LNA and public policy mandate that LNA be afforded an adjudication of its third-party claims as part of this case, not later. Specifically, in denying the government's motion to dismiss LNA's third-party claims, this Court held that:

> [w]ere the Court to dismiss a party potentially liable for a substantial amount of the damages, it would leave LNA, if found liable in the primary case, with no recourse against the United States except to bring a separate administrative claim and, eventually, a separate judicial action for indemnification or contribution. <u>Not only would this situation potentially deny complete relief to all parties, it would also result in a significant waste of judicial resources.</u>[34]

These same considerations are equally pressing in the current context and require the denial of plaintiffs' motion to transfer.

### A.  *LNA would be prejudiced if its third-party claims were transferred.*

LNA would suffer severe prejudice if its third-party claims are not adjudicated simultaneously with plaintiffs' claims against LNA. This is so for multiple reasons.

---

[34] *See* Order and Reasons denying United States' motion to dismiss LNA's third-party complaint, R.Doc. 587, at p. 11 (emphasis added).

957807_1.DOC                                    11

First, to the extent that plaintiffs claim that LNA could be held liable for the government's share of fault – which LNA specifically denies – the magnitude of plaintiffs' alleged damages would make it potentially catastrophic for LNA to be prevented from recovering immediately from the government. Indeed, as this Court observed, a scenario under which liability is imposed on LNA for the government's conduct while barring LNA from simultaneously recovering from the government "would potentially deny complete relief to all parties." Rec. Doc. 587 at 11. The *Mumford* plaintiffs' refusal to prosecute a claim against the government cannot be used to penalize LNA. This litigation should proceed in its present form because LNA is entitled to have this Court allocate liability (if any) in the context of this case.

Second, requiring LNA to litigate its third-party claims separately – essentially, requiring LNA to prove the case against the government twice – would put LNA at grave risk of inconsistent decisions on the same issue. Under plaintiffs' scenario, LNA could be held solidarily liable for damages properly attributable to the government in this case, and then required to pursue recovery from the government in a separate action. Such a cumbersome and redundant procedure would force LNA to engage in two actions over the same issue -- responsibility for plaintiffs' damages -- with the potential for different results on that same issue. Federal courts strongly discourage such piecemeal resolution of a single issue.[35]

Third, the *In re Katrina* litigation to which plaintiffs seek to transfer LNA's claims is a sprawling mass of litigation in which LNA's ability to control its own claims against the governmental entities could easily be compromised. Indeed, LNA's interests diverge dramatically from those of the plaintiffs that are pursuing claims against the government in those cases (e.g., LNA opposes class action treatment while those plaintiffs are urging such treatment).

---

[35] *See, e.g., Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 319 (5th Cir. 1978).

Forcing LNA to cooperate with those plaintiffs in the pursuit of its claims, or to compete with those plaintiffs for the court's attention in that case, would be prejudicial. Requiring LNA to press its claims against the government in the context of that massive litigation, rather than presenting them in the same proceeding in which its own liability is to be determined, would impose needless expense, delay, and burden on LNA.

Fourth, severing and transferring LNA's third-party claims in this case would inject new issues into the already-strained *In re Katrina* case. That case is well underway and an elaborate Case Management Order has already been entered in an attempt to create some order to the amazing complexity that is generated when over 150 cases, with more cases being added on an almost-daily basis, involving thousands of parties, are consolidated in a single proceeding. None of the plaintiffs in that litigation asserts that the barge is responsible for any of the damages, and to LNA's knowledge none of the defendants has sought to avoid liability on the ground that the barge caused the plaintiffs' damages. Thus, if LNA's third-party claims were severed and transferred to that litigation, then potential defenses to LNA's third-party claims based on the supposed role of the barge would be injected into that litigation for the first time, adding to the complication there and further burdening LNA with duplicative litigation.

Finally, LNA's third-party claims in this case differ in material respects from those in the two complaints from the *In re Katrina* litigation to which plaintiffs refer in their motion to transfer.[36] The "LEVEE" cases involve only claims by persons living on the west side of the IHNC – that is, the opposite side from the breach through which the barge was swept. And the "MR-GO" cases diverge from LNA's claims in a number of ways; for example, LNA's third-party complaint asserts a Fifth Amendment "takings" claim under the Little Tucker Act that is

---

[36] See R.Doc. 592-5 at 8, referring to Rec. Doc. 3415-MRGO and Rec. Doc. 3420-LEVEE in the *In re Katrina* cases.

957807_1.DOC                                      13

nowhere found in any of the *In re Katrina* cases, and LNA's claims against the Dock Board are absent from the claims asserted there.

      B.    *Severance would result in duplication of effort and a considerable waste of judicial resources.*

This Court has already determined that requiring LNA to litigate its governmental claims separate from this case would "result in a significant waste of judicial resources." That conclusion is no less compelling in the context of plaintiffs' motion to transfer. As LNA has shown, the question of what caused plaintiffs' alleged damages – whether the barge itself, the negligence of the various government entities involved, or some other cause that has yet to be identified – will necessarily be fully litigated as part of the causation and allocation elements of plaintiffs' claims against LNA. It follows that requiring LNA to relitigate those very same issues in a separate proceeding would entail wholesale duplication of the discovery, pre-trial, and trial phases of this case, to the severe detriment of both the Court and the parties.

      C.    *The cases upon which plaintiffs rely are inapposite.*

The cases on which plaintiffs rely to support their argument for severance and transfer – like their recitation of considerations of misjoinder under Rule 21 – are of no moment. *Johnson v. State Farm Fire & Cas. Co.*, for instance, did not even involve a motion to sever.[37] Instead, it involved the question of whether the plaintiff had misjoined separate defendants. In any event, Judge Duval held that there was <u>no</u> misjoinder because "the object of the litigation … is common," "consolidating these claims fosters judicial economy," "the common issues involve the allocation of damages among the parties," and "it could potentially lead to inconsistent results [in] allocate[ing] fault to litigate these claims in separate proceedings."[38] Each of these same

---

[37] No. 06-6248, 2006 U.S. Dist. LEXIS 86882 (E.D. La. Nov. 26, 2006).
[38] *Id.* at *6.

957807_1.DOC            14

factors mandates the denial of plaintiffs' motion here: the object of the claims (plaintiffs' flood-related damages) is the same, trying the cases together will foster judicial economy, the common issues include allocation of both liability and damages as required under admiralty and Louisiana law, and severance could potentially lead to inconsistent results in the allocation of responsibility for the plaintiffs' damages.

Plaintiffs' reliance on *Zeus Projects Ltd. v. Perez y Cia. de Puerto Rico, Inc.*, 187 F.R.D. 23 (D.P.R. 1999), is likewise misplaced. In that case, the plaintiffs sued the defendant yacht repairer and its insurer for failing to adequately support (or "block") plaintiffs' yacht when it was placed in drydock for repairs.[39] The defendants asserted third-party claims against several additional parties, belatedly and without obtaining court permission.[40] Although the court partially granted the plaintiffs' motion to strike the third-party claims, *Zeus Projects* in no way supports plaintiffs' motion to sever in this case. First, the third-party claim there was dismissed, not severed, in part because the defendants had filed it late and without the court's blessing.[41] That is not the case here. Second, the court found that the defendant would suffer no prejudice. By contrast, LNA would be prejudiced, as this Court has already recognized. Finally, the court in *Zeus Projects* in fact denied the motion to dismiss the third-party claim against the CEO of one of the plaintiff companies, finding that he "was at the center of this controversy."[42] That is precisely the case with respect to the governmental entities in this case: their conduct in constructing and maintaining the system is at the very heart of this controversy. No sound reason for severing LNA's claims against them exists, and LNA urges the Court to deny plaintiffs' motion.

---

[39] *Id.* at 26.
[40] *Id.* at 33.
[41] *Id.*
[42] *Id.* at 33-34.

## CONCLUSION

Plaintiffs have failed to articulate any way in which severing LNA's third-party claims from this dispute would measurably streamline the resolution of this case. Both maritime and Louisiana law entitle LNA to present evidence showing that something other than the barge caused plaintiffs' alleged damages, whether or not LNA's third-party claims are severed and transferred. Further, severance and transfer poses a very real threat of grave prejudice to LNA. For both of these reasons, this Court should deny plaintiffs' motion.

Respectfully submitted,

**CHAFFE McCALL, L.L.P.**


  /s/ Derek A. Walker
Robert B. Fisher, Jr., T.A. (# 5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
Parker Harrison (# 27538)
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone: (504) 598-2715

John D. Aldock
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC 20001
Tel.: (202) 346-4240

**ATTORNEYS FOR
LAFARGE NORTH AMERICA INC.**

## Certificate of Service

I do hereby certify that I have on this 23rd day of April, 2007 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic notification, facsimile transmission, or by mailing the same by United States mail, properly addressed, and first class postage prepaid.

_____/s/ Derek A. Walker_____