# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF INGRAM BARGE COMPANY, AS OWNER OF THE ING 4727, PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * CIVIL ACTION <br> * <br> * NO. 05-4419 <br> * <br> * SECTION "C" (2) <br> * <br> * JUDGE HELEN G. BERRIGAN <br> * <br> * MAG. JUDGE JOSEPH C. WILKINSON, JR. |

### RESPONSE OF LAFARGE NORTH AMERICA INC. TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION

Lafarge North America Inc. strongly opposes plaintiffs' suggestion, in their September 25, 2007 supplemental memorandum in support of their motion for reconsideration, that this Court consider taking back jurisdiction over plaintiffs' claims against LNA while leaving LNA's claims against the United States Government with Judge Duval. This Court has repeatedly, and correctly, held that efficiency, fairness, and justice all require that LNA's claims against the United States be tried in the same proceeding as plaintiffs' claims against LNA, and therefore has denied prior efforts to separate LNA's claims against the United States from plaintiffs' claims against LNA. Because all of those points remain as valid as ever, if not more so, plaintiffs' suggestion should not be adopted.

LIBW/1657922.1

2

This Court previously denied a motion that expressly sought severance of LNA's claims against the government from plaintiffs' claims against LNA. Rec. Doc. 618. This Court also previously specifically held that justice requires that LNA have the opportunity to adjudicate its claims against the government entities in the same case as plaintiffs' claims against LNA, both to afford "complete relief to all parties" if liability is shown to exist and to avoid "a significant waste of judicial resources." Rec. Doc. 587 at 7. And, in its recent transfer order, the Court transferred both plaintiffs' claims against LNA and LNA's claims against the government to Judge Duval, rejecting suggestions that they be handled separately.

Plaintiffs' motion for reconsideration does not begin to show that the three prior refusals to sever LNA's claims against the government from plaintiffs' claims against LNA were wrong. To the contrary, severance of LNA's third-party claims would be grossly inefficient and would severely prejudice LNA.

First, because plaintiffs must prove that the barge proximately caused their damages in order to prevail, LNA is entitled to defend itself by showing that the plaintiffs' alleged injuries were actually caused by something else.[1] LNA's demonstration that the barge <u>did not</u> cause the collapse of the retaining wall will necessarily involve a showing of the factors that <u>did</u> cause the wall to collapse – including all of the facts concerning the government's conduct and role.

In addition, plaintiffs' alleged damages were caused by <u>many</u> breaches of the canal walls and levees aside from the one through which the barge was drawn. Thus, LNA's demonstration that the barge did not cause plaintiffs' alleged damages will also involve consideration of those other breaches and the reasons why they occurred – all of which involve the government's conduct.

---

[1] See *Exxon Co., U.S.A. v. Sofec, Inc.,* 527 U.S. 830, 836-37 (1996); *Laurent v. Jolly-Wright*, 2005-1499 (La. App. 4 Cir. 1/10/07), 950 So.2d 47, 49.

Also, even apart from causation, LNA is entitled to present evidence of the governmental entities' conduct in order to allocate damages if LNA is held liable. Both maritime law and Louisiana law require the apportionment of fault among <u>all tortfeasors,</u> including those that plaintiffs chose not to sue.[2]

In short, the facts and issues raised by plaintiffs' claims against LNA overlap extensively with the facts and issues raised by LNA's claims against the United States. Accordingly, it would be massively inefficient to litigate them separately. It would also be highly prejudicial and unfair to LNA.

Plaintiffs' counsel's assertion that there is tension between their theories and those of putative class counsel in the other <u>Katrina</u> cases provides no basis for a severance order that would produce inefficiency and injustice. Judge Duval is perfectly able to address any issues concerning the adequacy of class counsel in the <u>Katrina</u> cases and the interrelationships among the various cases. Indeed, that ability presumably is one of the reasons for the transfer order.

Finally, plaintiffs have incorrectly asserted (at 3) that "it is widely accepted among nearly all of the experts that the eastern Industrial Canal floodwall breached at least four hours before the MRGO overtopped or breached." To the contrary, numerous studies by well-qualified, independent experts have concluded that the levees along MRGO eroded and breached <u>before</u> the southern[3] breach on the eastern side of the Industrial Canal through which the barge passed.[4]

---

[2] See *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 217 (1994); La. Civ. Code Ann. art. 2324 (2007).

[3] Plaintiffs omit that there were two breaches along the eastern side of the IHNC: the southern breach, through which the barge traversed, and the breach further to the north, just south of the Florida Avenue bridge.

[4] See R.B. Seed et al., *Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane Katrina* (July 31, 2006), at 6-4, 2-7, 6-6 ("sections of [the MRGO] levee frontage appear to have eroded and begun to be breached prior to the storm surge reaching its full height (of approximately +16 to +19 feet, MSL) by as early as about 5:30 to 6:00 a.m." and, by the time the peak of the storm surge passed through this are, these levees "had been massively eroded"; whereas, the southern IHNC breach between 7:30 a.m. and 7:45 a.m.) (available at: ftp://hef-hurricane.hurricane.lsu.edu/Team_Louisiana); I. van Heerden et al., *The Failure of the New Orleans Levee System during Hurricane Katrina* (Dec. 2006), at 67, 93-94 (destruction of MRGO levees by waves began between

And, as plaintiffs well know, these same experts have concluded that *the barge did not cause any breach* in the Inner Harbor Navigational Canal and/or have attributed the southern breach to causes other than the barge.[5]

                                  Respectfully submitted,

                                  **CHAFFE McCALL, L.L.P.**

                                  Robert B. Fisher, Jr., T.A. (# 5587)
                                  Derek A. Walker (#13175)
                                  Ivan M. Rodriguez (#22574)
                                  Parker Harrison (# 27538)
                                  2300 Energy Centre
                                  1100 Poydras Street
                                  New Orleans, LA 70163-2300
                                  Telephone: (504) 585-7000

                                  Daniel A. Webb (#13294)
                                  **SUTTERFIELD & WEBB, LLC**
                                  Poydras Center
                                  650 Poydras Street, Suite 2715
                                  New Orleans, LA 70130
                                  Telephone: (504) 598-2715

                                  <u>/s/ John D. Aldock</u>
                                  John D. Aldock
                                  Mark S. Raffman
                                  **GOODWIN PROCTER LLP**
                                  901 New York Avenue, NW
                                  Washington, DC 20001
                                  Tel.: (202) 346-4240

                                  **ATTORNEYS FOR
                                  LAFARGE NORTH AMERICA INC.**

---

4:00 a.m. and 5:00 a.m.; water overtops floodwalls where MRGO and GIWW are combined between 5:00 a.m. and 6:00 a.m.; and the southern IHNC breach occurred at 7:30 a.m.) (available at: ftp://hef-hurricane.hurricane.lsu.-edu/Team_Louisiana).

[5] See I. van Heerden et al., *The Failure of the New Orleans Levee System during Hurricane Katrina* at 67 (barge "clipped the end of the already formed breach as it was sucked through"); R.B. Seed et al., *Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane Katrina* at 6-7 (barge "slipped its moorings and was drawn in through a breach that was already well developed"); Interagency Performance Evaluation Task Force, *Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System* (March 2007) at V-79, 80 (ascribing failures to overtopping and loss of soil support) (available at https://ipet.wes.army.mil).

## Certificate of Service

I do hereby certify that I have on this 1st day of October, 2007 served a copy of the foregoing pleading on counsel for all parties to this proceeding by electronic filing notification.

/s/ John D. Aldock
John D. Aldock