UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * * * * | CIVIL ACTION.: 05-4182 <br><br> JUDGE DUVAL <br><br> MAGISTRATE WILKINSON |
| PERTAINS TO: <br> INSURANCE    (06-8637) | * * * | |
| BSD CONSTRUCTION, INC. <br>           Plaintiff <br> VERSUS <br><br> STONE INSURANCE, INC. <br> and <br> ZURICH AMERICAN <br> INSURANCE COMPANY | * * * * * * * * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

Defendant, Stone Insurance, Inc. ("Stone"), respectfully submits this Memorandum in Support of its Motion for Summary Judgment and requests that this Court issue a judgment dismissing the claims of the BSD, BSD Construction, Inc. ("BSD"), against Stone because BSD's claims are perempted under the one and three year peremptive periods outlined in La. R.S. 9:5606(A) and because Stone did not breach any duty that was owed to BSD. Stone also seeks a dismissal of BSD's claim for bad faith penalties and attorney's fees.

## FACTS

This case arises from damages allegedly sustained by BSD on August 29, 2005 as a result of Hurricane Katrina, and the subsequent lawsuit filed on August 24, 2006 by BSD against its insurer, Zurich American Insurance Company ("Zurich"), and its insurance agent, Stone. The claims made against Stone stem from it acting as the insurance agent for BSD. Specifically, BSD alleged that Stone failed to procure flood insurance coverage, failed to inform the BSD of its failure to procure the requested coverage, and misrepresented the coverage afforded by the policy in question.[8]

BSD purchased a builders risk policy (#BR50971770), which was procured by Stone through Zurich on July 25, 2001. The BSD was provided with a copy of the policy on August 10, 2001, and the policy contained a clear exclusion for damages caused directly or indirectly by water. BSD's policy with Zurich was in effect on the date of loss, August 29, 2005.

## LAW

**1. Summary Judgment – Rule 56 of the Federal Rules of Civil Procedure**

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory

---

[8] Pet. ¶ III.

judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed.R.Civ.P. 56(b). Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this plain language:

> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party is not required to "produce evidence negating the existence of a material fact"; rather, the moving party's burden is "only [to] point out the absence of evidence supporting the nonmoving party's case." Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir 1992), *certiorari denied*, 506 U.S. 832, 113, S.Ct. 98, 121 L.Ed.2d 59 (1992), *quoting*, Latimer v. Smithkline & French Laboratories, 919 F.2d 301, 303 (5th Cir. 1990). If the moving party makes this showing, "the nonmovant must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Skotak, 953 F.2d at 913, *citing*, Transco Leasing Corp. v. U.S., 896 F.2d 1435, 1444 (5th Cir. 1990).

**2. La. R.S. 9:5606 – One-Year And Three-Year Peremptive Periods For Actions Against Professional Insurance Agent Liability.**

Louisiana Revised Statute §9:5606 provides in relevant part as follows:

A. "No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.

C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458[9] and, in accordance with Civil Code Article 3461[10], may not be renounced, interrupted, or suspended. La. R.S. §9:5606.

Based on the clear language of the statute, there is no doubt that the Legislature intended that the one-year and three-year periods are peremptive. La. R.S. §9:5606(D). Furthermore, it is clear that the intent was that three years after the "act, omission, or neglect," the cause of action is extinguished, regardless of when the negligence was discovered and even if a BSD could not have brought her claim before the three-year period expired. Reeder v. North, 701 So.2d 1291, 1297 (La. 1997); *see also* Dobson v. Allstate Ins. Co., 2006 WL 2078423, at *6 (E.D.La. Jul 21, 2006). The Louisiana Supreme Court, in dealing with an analogous provision of Louisiana's

---

[9] Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3458.
[10] Peremption may not be renounced, interrupted, or suspended. La. C.C. art. 3461.

legal malpractice statute[11], pointed out that "the Legislature was aware of the pitfalls in this statute but decided, within its prerogative, to put a three-year absolute limit on a person's right to sue for legal malpractice, just as it would be within its prerogative to not allow legal malpractice actions at all." Reeder, 701 So.2d at 1297. The Court recognized that while the peremption provision of the legal malpractice statute may seem unfair in that a "person's claim may be extinguished before he realizes the full extent of his damages, the enactment of such a statute of limitations is exclusively a legislative prerogative." Biggers v. Allstate Ins. Co., 886 So.2d 1179, 1182 (La.App. 5 Cir. Oct 26, 2004) (construing Reeder v. North, 701 So.2d 1291 (La. 1997)).

In Reeder the Louisiana Supreme Court pointed out that peremption differs from prescription in several respects. Id at 1298. The Court stated that:

> Although prescription prevents the enforcement of a right by legal action, it does not terminate the natural obligation (La. Civ.Code art. 1762(1)); peremption, however, extinguishes or destroys the right (La. Civ.Code art. 3458). Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period. Accordingly, nothing may interfere with the running of a peremptive period. It may not be interrupted or suspended; nor is there provision for its renunciation. And exceptions such as *contra non valentem*[12] are not applicable. As an inchoate right, prescription, on the other hand, may be renounced, interrupted, or suspended; and *contra non valentem* applies an exception to the statutory prescription period where in fact and for good cause a BSD is unable to exercise his cause of action when it accrues. Id.

---

[11] La. R.S. §9:5605 provides the same one-year and three-year limitations found in §9:5606 stating that actions for legal malpractice must be filed "...within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect." La. R.S. §9:5605(A).

[12] *Contra non valentem* is a judicially-created doctrine which has been applied to prevent the running of prescription in four distinct situations: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the BSD's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; (4) where the cause of action is not known or reasonably knowable by the BSD, even though his ignorance is not induced by the defendant.

### 3. Peremptive Period Begins To Run When The BSD Obtains Actual Or Constructive Knowledge.

The Louisiana courts have clarified that prescription commences when a BSD obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. See Roadhouse Bar-B-Que, Inc. v. Certain Underwriters at Lloyds, 909 So.2d 619, 623 (La.App. 3 Cir. May 04, 2005) (citing Campo v. Correa, 828 So.2d 502 (La. 2002)). In Campo the Louisiana Supreme Court said:

> A prescriptive period will begin to run even if the injured party does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of same. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry. Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry may lead. Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription. Campo, 828 So.2d at 510-511.

In other words, any information or knowledge that ought to excite the attention of the alleged victim and put her on guard sufficient to start the running of prescription. Id.

Under Louisiana law, an insured has a duty to read his insurance policy and know its provisions. Id.; see also Motors Ins. Co. v. Bud's Boat Rental, 917 F.2d 199, 205 (5th Cir.1990); Fidelity Homestead Ass'n v. Hanover Ins. Co., 2006 WL 2873562, at *3 (E.D.La. 2006); Stephens v. Audubon Ins. Co., 665 So.2d 683, 658 (La. App. 2 Cir. 1995) (citing Matthews v. Business Men's Assur. Co. of America, 478 So.2d 634, 637 (La.App. 2 Cir. 1985)); Perkins v. Shelter Ins. Co., 540 So.2d 488 (La.App. 1 Cir. 1989)). Knowledge that the terms of a policy directly contradict a representation or statement made by the insurance agent who sold the policy is sufficient to excite the attention of the victim and put her on guard. Dobson, 2006 WL 2078423, at *9.

Dobson v. Allstate Ins. Co. involved a home that was deemed a total loss because of damages caused by Hurricane Katrina. Dobson, 2006 WL 2078423, at *7. The loss was specifically caused by hurricane-driven water, which their insurer, Allstate, stated was excluded under the terms of their policy. In addition to filing suit on December 21, 2005 against its insurer, the BSDs also filed suit against their insurance agent Gregory Ruiz, alleging that they requested advice from their agent, who assured them "that the policy of fire (homeowner's) insurance he recommended included 'hurricane insurance' which would cover and insure the BSDs for all damage associated with hurricanes." Id.

The court in Dobson held that the BSDs claims were perempted as per La. R.S. §9:5606. Id at *8. The unrebutted evidence showed that the policy in question was initially issued in 1991 and that it contained the exclusion for flood since that time. Id. The court stated that "since it is the terms of the flood exclusion that would render Ruiz' alleged statement to BSDs about the terms of their policy inaccurate, his alleged misconduct occurred in 1991 when he sold BSDs the policy containing the flood exclusion." Id. As a result, the claims against the agent were perempted as per La. R.S. §9:5606 because, under the express terms of the statute, regardless of whether a BSD sues within one year of discovering her cause of action, the claim is still perempted if the BSD does not bring it within three years of the act, omission, or neglect. La. R.S. §9:5606(A).

The court stated that even if the it were to consider BSDs' allegation that the last time their agent had negligently misrepresented the terms of their policy to them was in October 2004, they either knew or should have known of their agent's wrongful conduct as of that time because they had a copy of their policy, which had been provided to them by the insurer on or before October 2004. Dobson, 2006 WL 2078423, at *9. The court held that an insured party is

generally responsible for reading his policy, and that he is presumed to know its provisions, and pointed out that the policy provided to the BSDs at that time contained the flood exclusion, as well as a notice advising the BSDs that "flood protection was generally not available under a homeowners policy and could be purchased through a separate policy." Id.

### 4. Renewal Of The Policy Does Not Operate to Restart Peremption.

Generally, the renewal of an insurance policy does not operate to toll or restart the one-year or three-year peremptive periods set out in La. R.S. 9:5606 because the renewal does not constitute a separate tort. Dobson, 2006 WL 2078423, at *6; Fidelity Homestead Ass'n v. Hanover Ins. Co., 2006 WL 2873562, at *2 (E.D.La. 2006); Southern Athletic Club, LLC v. Hanover Ins. Co., 2006 WL 2583406, at *2 (E.D.La. 2006); Perez v. Metropolitan Property and Cas. Ins. Co., 2006 WL 2178753, at *3 (E.D.La. 2006). In order for each renewal to constitute a separate tort, the complained of conduct must consist of separate and distinct acts, "each of which gives rise to immediately apparent damages", as opposed to being a "continuation of the ill effects of an original unlawful act." Biggers v. Allstate Ins. Co., 886 So.2d 1179, 1182 (La.App. 5 Cir. Oct 26, 2004) (quoting Bel v. State Farm Mut. Auto. Ins. Co., 845 So.2d 377, 382 (La.App. 1 Cir. 2003); see also Bustamento v. Tucker, 607 So.2d 532, 540 (La.1992). The peremptive period generally runs from the date of the original purchase of the policy because the renewal process usually does not afford the insurance agent the opportunity to make further misrepresentations about the policy, thus not constituting a separate and distinct act. Biggers, 886 So.2d at 1182; Bel, 845 So.2d at 382-83.

Perez v. Metropolitan Property and Cas. Ins. Co. involved damage incurred to the BSD's home as a result of Hurricane Katrina. Perez, 2006 WL 2178753, at *1. The BSD alleged that his home and personal property were destroyed by wind and sought the policy limits under his

homeowner's policy, which was initially purchased in 1985, together with penalties and attorney's fees. Id. The BSD filed suit against his insurer and insurance agent. Id.

**The court in Perez held that the three-year peremptive period found in La. R.S. §9:5606 began to run in this case in 1985 when the homeowner policy was initially purchased.** Id at *3; citing Biggers, 886 So.2d at 1183 (holding that peremptive period, applicable to the insured's negligence suit against agent, began when insured purchased policy). The court also held that "the fact that the BSD renewed his homeowner policy each year does not toll the one-year peremptive period under well-settled Louisiana law." Id.; citing Bel, 845 So.2d 377 ("[t]herefore, we find that the insurance policy renewals do not constitute separate and distinct torts, commencing the peremptive period anew at each renewal"); and Biggers, 886 So.2d at 1183 (peremptive period applicable to insured's negligence suit against agent began when BSD purchased policy, notwithstanding subsequent renewals); and Bordelon v. Indep. Order of Foresters, 2005 WL 3543815 (E.D.La. 2005) (peremptive period begins to run when policy is acquired). As a result, the suit the BSD filed against his agent in February 2006, over twenty years after the he purchased his homeowner policy from the agent, was perempted as per La. R.S. §9:5606. Id at *4.

5.   **Insurance Agent's Duty Under Louisiana Law.**

The general duty that an insurance agent owes to a customer is to use reasonable diligence to procure the coverage requested by the customer. See Porter v. Utica Mut. Ins. Co., 357 So.2d 1234, 1238 (La. App. 2d Cir. 1978); Smith v. Millers Mut. Ins. Co., 419 So.2d 59, 64 (La. App. 2d Cir. 1982). Accordingly, Louisiana courts have recognized that an agent generally has no duty to independently advise the client about the cost, availability, or desirability of certain insurance coverages or additional limits of insurance, unless the agent agrees to such a

duty. See Graves v. State Farm Mut. Auto. Ins. Co., 821 So.2d 769, 773-774 (La. App. 3d Cir. 2002) ("[T]here is no evidence that any of the defendants held themselves out as an advisor to the Graves or that there existed a special relationship or agreement to render insurance advise."); Smith v. Millers Mut. Ins. Co., 419 So.2d 59, 65-66 (La. App. 1982) (rejecting BSD's argument that agent had duty to "review his client's coverage and recommend the forms of insurance best suited to the client's needs, including adequate monetary limits").

**An insurance agent has no duty to identify a client's needs and advise him whether he is underinsured or carries the correct type of coverage.** (emphasis added) See Motor Ins. Co., 917 F.2d at 205 ("the client is himself considered responsible for adequately advising the agent of the coverage needed and for reading the clear provisions of the insurance policy."); Frishhertz v. Lexington Ins. Co., 06CV5676, 2006 WL 3228385 (E.D. La. Nov. 3, 2006) ("no case imposes a duty on an agent to identify a client's needs and advise him whether he is underinsured or carries the correct type of coverage and no viable cause of action against agent exists.")

Moreover, in order for an insurance agent to held liable for failure to procure insurance for another, the complainant must allege and prove: (1) an undertaking or agreement by the insurance agent to procure insurance, (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he failed to obtain such insurance, and (3) the actions of the agent warranted an assumption by the client that he was properly insured. See e.g., Karam v. St. Paul & Marine Ins. Co., 281 So.2d 728, 730-31 (La. 1973); See also, Sullivan, et al. v. State Farm Cas. Ins. Co., et al., Civil No. 06-0004 (E.D.La. April 6, 2006) (holding that BSD stated no cause of action where no facts were alleged evidencing an undertaking by agent to advise about and/or offer BSD excess flood insurance).

## ARGUMENT

### A. BSD's Claims Against Stone Are Perempted Under The One-Year and Three-Year Peremptive Period Set Out In La. R.S. §9:5606(A).

BSD originally obtained the policy in question from Zurich on July 25, 2001.[13] BSD was supplied with a copy of the policy on August 10, 2001, and the letter accompanying the policy advised BSD to read the policy so that the coverages afforded under the policy would be understood.[14] According to Louisiana law, BSD had a duty to read its policy and to know the provisions contained in this policy. Because a careful reading of the policy would have expressly revealed that flood coverage was excluded, BSD had actual or constructive notice that Stone allegedly failed to procure full coverage and misrepresented the coverage afforded by the policy.[15] Knowledge of the lack of coverage would have been enough to begin the peremptive period; therefore, the peremptive period would have started to run on August 10, 2001.

The claims against Stone are perempted under the one-year peremptive period outlined in La. R.S. §9:5606(A) because Stone's alleged misconduct occurred when the policies were originally issued. Under the express terms of the statute, BSD must bring suit within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. BSD had one year from the delivery of the policy, on August 10, 2001, within which to timely file suit, as set out in La. R.S. 9:5606(A); however, suit was not filed until August 24, 2006. Thus, BSD's claims against Stone are perempted under the one-year peremptive period.

In addition, the claims against Stone are perempted under the three-year peremptive

---

[13] See, Exhibit 1.
[14] See, Exhibit 2.
[15] Pet. ¶ III.

period outlined in La. R.S. §9:5606 because the alleged misconduct in this case occurred on July 25, 2001, when Stone procured the policy and allegedly committed acts of negligence. Under the express terms of the statute, regardless of whether a plaintiff sues within one year of discovering its cause of action, the claim is still perempted if the plaintiff does not bring it within three years of the act, omission, or neglect. La. R.S. §9:5606(A). In this case, the Petition was not filed until August 24, 2006, well over three years after the July 25, 2001 issuance of the policy and the August 10, 2001 delivery of the policy, and beyond the three-year peremptive period. Therefore, BSD's claims are perempted under the three-year peremptive period.

### B. Stone Did Not Breach Any Duty Owed To BSD.

Louisiana courts have long recognized that an insurance agent has no duty to independently advise the client about the cost, availability, or desirability of certain insurance coverages or additional limits of insurance, unless the agent agrees to such a duty. Moreover, in order for an insurance agent to held liable for failure to procure insurance for another, the complainant must allege and prove: (1) an undertaking or agreement by the insurance agent to procure insurance, (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he failed to obtain such insurance, and (3) the actions of the agent warranted an assumption by the client that he was properly insured.

BSD has not made any allegations that prove any of these three elements. Based on the allegations of negligence in the Petition, BSD cannot obtain relief against Stone.[16] Furthermore, no evidence has been presented nor allegations made that Stone agreed to independently advise BSD about the cost, availability, or desirability of certain insurance coverage or additional limits of insurance.

---

[16] See, Petition at ¶ 46, 51, 52 and 54.

The general duty that an insurance agent owes to a customer is to use reasonable diligence to procure the coverage requested by the customer. Although BSD alleges that Stone failed to procure flood insurance, BSD has presented no evidence that it **requested** this additional coverage under the policy. In addition, the facts indicate that the policy at issue was a builder's risk policy on new construction that BSD would sell upon completion.

Moreover, an insured has a duty to read his insurance policy and to know its provisions. The terms of the policy were clear and BSD had a duty to read this policy and to know its provisions. **On May 13, 2002, Stone sent a letter to BSD and enclosed a checklist of BSD's insurance needs and asked BSD to return the checklist within two weeks.**[17] There is no evidence to suggest that BSD requested any additional coverage.

It is undisputed that BSD received a copy of the insurance policy at issue and because BSD failed to take action to correct the alleged inaccuracies, BSD, not Stone, breached its duty under Louisiana law. Moreover, in order to ensure that BSD was advised about the coverages available under its policy, Stone sent BSD a letter on August 10, 2001 enclosing the policy and encouraging BSD to read the policy and to understand the coverages under the policy, and sent a follow up letter and checklist of insurance needs dated May 13, 2002.[18] If there were any concerns about coverages after receipt of the policy and the letters, BSD should have taken the initiative to call Stone to change its coverages and/or request additional coverages. BSD, however, did not respond.

BSD also alleged that Stone failed to inform that the policy did not include flood coverage or advise that flood coverage be obtained. Even without the evidence proving that these allegations cannot stand, these allegations are of no moment because under Louisiana law,

---

[17] See, Exhibit 3, a letter and checklist dated May 13, 2002 to BSD from Stone.

[18] See, Exhibits 2 and 3.

**an insurance agent does not have a duty independently advise the client about the cost, availability, or desirability of certain insurance coverages or additional limits of insurance.** Stone did not breach any duty owed to BSD; therefore, this Court should grant Stone's Motion for Summary Judgment and dismiss BSD's claims against Stone with prejudice.

### C. BSD's Claims against Stone for Bad Faith Penalties and Attorney's Fees Should be Dismissed.

This Court should also dismiss BSD's claims for bad faith penalties and attorney's fees because La. R.S. 22:1220 and La. R.S. 22:658 apply to the adjustment and settlement of claims, and Stone did not adjust BSD's claims and did not have the authority to settle BSD's claims. According to La. R.S. 22:1220 (A):

> An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

Moreover, La. R.S. 22:658(A)(1) provides that:

> All insurers issuing any type of contract, other than those specified in R.S. 22:656, 657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph.

These statutes clearly govern the adjustment and settlement of an insured's claim. Stone, an insurance agency, neither adjusted BSD's claims nor had the authority to settle those claims on behalf of the insurance company. Therefore, BSD's claims against Stone for bad faith penalties and attorney's fees should be dismissed with prejudice.

## CONCLUSION

The claims against Stone are perempted under the one year and three year peremptive periods outlined in La. R.S. 9:5606 because Stone's alleged misconduct in this case occurred when the policy was was delivered on August 10, 2001. Peremption began to run on August 10, 2001. The Petition, however, was not filed until August 24, 2006, well over three years after the delivery of the policy and beyond the three-year peremptive period.

Furthermore, Stone did not breach any duty owed to BSD. Under Louisiana law, an insured has a duty to read his insurance policy and to know its provisions. The terms of the policy were clear, and BSD had a duty to read the policy and to know its provisions. It was BSD's responsibility to call Stone about their coverage needs and to request that changes be made to the policy. In addition, BSD has failed to establish the required elements of a successful claim for failure to procure insurance and has not presented any evidence that Stone failed to use reasonable diligence in procuring BSD's insurance policy. Moreover, Stone advised BSD to review its policies, and on at least two occasions, to consider if flood insurance was needed. BSD did not request flood covereage. Therefore, Stone did not breach any duty owed to BSD.

In addition, this Court should dismiss BSD's claim for bad faith penalties and attorney's fees because the statutes referred to in the Petition address the adjustment and settlement of claims and Stone neither adjusted nor had the authority to settle BSD's claims. For the foregoing reasons, Stone respectfully requests that this Court grant its Motion for Summary Judgment and dismiss BSD's claims against Stone with prejudice and at BSD's cost.

| | |
|---|---|
| **CERTIFICATE OF SERVICE**<br><br>I hereby certify that on September 26, 2007 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all of the following: Lamar M. Richardson, and Jr., Richard E. King.<br><br>/s/ William H. Eckert<br>UNGARINO & ECKERT, LLC<br>3850 N. Causeway Blvd., Suite 1280<br>Metairie, LA 70002<br>Telephone: (504) 836-7537<br>Fax: (504) 836-7538<br>beckert@ungarino-eckert.com | **Respectfully submitted:**<br><br>**UNGARINO & ECKERT, LLC**<br><br>/s/ William H. Eckert<br>**WILLIAM H. ECKERT (#18591) (T.A.)**<br>**Suite 1280, Lakeway Two**<br>**3850 North Causeway Boulevard**<br>**Metairie, Louisiana 70002**<br>**Telephone:** *(504) 836-7556*<br>**Fax:** (504) 836-7566<br>**Email: beckert@ungarino-eckert.com** |