## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL | * | CIVIL ACTION |
| BREACHES CONSOLIDATED | * | NO.: 05-4182 "K"(2) |
| LITIGATION | * | |
| | * | JUDGE DUVAL |
| _____ | * | |
| PERTAINS TO:  ROAD HOME | * | MAGISTRATE JUDGE WILKINSON |
| *Louisiana State*, C.A. No. 07-5528 | * | |
| | * | |
| | * | |

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND REGARDING MMTJA

The Hartford Defendants[1] and Travelers Defendants[2] respectfully submit this opposition to Plaintiffs' motion to remand regarding the Multiparty, Multiforum Trial Jurisdiction Act ("MMTJA"), 28 U.S.C. §§ 1369 and 1441(e)(1).  The Hartford Defendants and Travelers Defendants have joined in the Notice of Removal filed by Allstate Insurance Company et al., which asserts federal jurisdiction on two grounds:  (1) the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2); and (2) fraudulent misjoinder.  In addition to alleging those grounds, the

---

[1] The "Hartford Defendants" are Hartford Accident & Indemnity Company, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, "Hartford Insurance Group" (a non-existent entity), Hartford Underwriters Insurance Company and Twin City Fire Insurance Company.

[2] The "Travelers Defendants" are The Standard Fire Insurance Company, "St. Paul" (a non-existent entity), "St. Paul Travelers Insurance Company" (a non-existent entity), St. Paul Fire & Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, The Travelers Home & Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Insurance Company (a non-existent entity), Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company and The Automobile Insurance Company of Hartford, Connecticut.

Hartford Defendants and Travelers Defendants filed a supplemental notice alleging the MMTJA as a third ground for federal jurisdiction.  (Doc. 7875.)  Plaintiffs have filed two separate motions to remand -- one claiming that there is no federal jurisdiction over this suit under CAFA or based on fraudulent misjoinder  (Doc. 8282), and a second motion claiming that there is no jurisdiction under the MMTJA (Doc. 8593).  The Hartford Defendants and Travelers Defendants have joined in the oppositions to Plaintiffs' first motion to remand, which address jurisdiction under CAFA and based on fraudulent misjoinder.  For the reasons stated in those memoranda, the Court should conclude that there is subject matter jurisdiction under CAFA and/or based on fraudulent misjoinder.  There should be no need to reach the question of whether the MMTJA applies.

If, however, the Court finds it necessary to reach the question of whether the MMTJA applies, it should conclude that federal jurisdiction exists under the MMTJA.  In this case, there are unique grounds for jurisdiction under the MMTJA that have not been previously addressed by this Court.  First, most of the Hartford Defendants and Travelers Defendants are parties to Aaron v. AIG Centennial Ins. Co., Civ. A. No. 06-4746 (E.D. La.), a case that was expressly brought under the MMTJA.  Under 28 U.S.C. § 1441(e)(1)(B), a defendant is entitled to remove a case to federal court where the defendant is a party to another case that was brought under the MMTJA and that arises out of the same "accident" as the case being removed.  There is no question that Aaron was brought under the MMTJA, and that Aaron arises out of the same "accident" as this case.  Second, some of the Travelers Defendants are parties to Chehardy v. State Farm Fire & Cas. Co., Civ. A. Nos. 06-1672, 06-1673, 06-1674 (E.D. La.), a case in which jurisdiction was found based on Section 1369, and that arises out of the same "accident" as this case.  In its prior decisions, this Court has strongly suggested that there is jurisdiction under the MMTJA in Chehardy, which provides a basis for "piggyback" jurisdiction in this case.  The

allegations in this case are very similar to <u>Chehardy</u>.  The MMTJA was intended to concentrate mass disaster litigation in federal court to prevent the inconsistent results that could occur if litigation proceeded simultaneously in federal and state courts.  If Plaintiffs are allowed to litigate this putative class action in state court while a similar putative class action against many of the same insurers (<u>Chehardy</u>) is litigated in this Court, that would frustrate the purpose and intent of the MMTJA.  Even under a narrow construction of the MMTJA, this is precisely the type of case which was intended to be encompassed by that statute.

There is also original jurisdiction in this case under 28 U.S.C. § 1369 because there is minimal diversity of citizenship in this case, which arises out of an "accident" (i.e., Hurricane Katrina or the levee breaches resulting therefrom) in which at least 75 natural persons died in the accident at a discrete location.  While the Hartford Defendants and Travelers Defendants recognize that this Court is unlikely to find such jurisdiction without reversing its own prior decisions, these arguments are included herein for purposes of preserving the issue for appeal. The Fifth Circuit has never had an opportunity to squarely address the question of to what extent the MMTJA confers federal jurisdiction over Hurricane Katrina insurance cases.

If this Court ultimately concludes that there is no jurisdiction under the MMTJA, it should deny Plaintiffs' request for attorneys' fees and costs.  Under the plain language of 28 U.S.C. § 1447(c), there can be no such award unless the case is remanded.  Moreover, even when a case is remanded, the Supreme Court has ruled that an award of costs and fees is inappropriate where there is an "objectively reasonable basis" for removal.  There clearly is an objectively reasonable basis for removal under CAFA and fraudulent misjoinder -- Plaintiffs do not even argue otherwise.  There is also an objectively reasonable basis for removal under the MMTJA because the issues presented by application of the MMTJA, particularly in this case, are novel

and have never been squarely decided by an appellate court.  Given that the only Fifth Circuit

decision on the MMTJA strongly suggests that there was jurisdiction under Section 1369 in

Chehardy, an award of attorneys' fees and costs would be unwarranted.

**I.      THERE IS FEDERAL JURISDICTION UNDER SECTION 1441(e)(1)(B)
         BECAUSE SOME OF THE DEFENDANTS ARE PARTIES IN OTHER CASES
         IN WHICH JURISDICTION EXISTS UNDER THE MMTJA**

The MMTJA contains a "piggyback" provision, 28 U.S.C. § 1441(e)(1)(B), that allows a

defendant to remove a lawsuit filed in state court, even if it is otherwise not removable, where

the defendant is a party to another lawsuit that was brought or could have been brought under 28

U.S.C. § 1369, and that arises from the same "accident."  Section 1441(e)(1)(B) provides, in

relevant part, that:

> [A] defendant in a civil action in a State court may remove the
> action to the district court of the United States for the district and
> division embracing the place where the action is pending if –
> . . .
> (B)    the defendant is a party to an action which is or could have
>        been brought, in whole or in part, under section 1369 in a
>        United States district court and arises from the same
>        accident as the action in State court, even if the action to be
>        removed could not have been brought in a district court as
>        an original matter.

28 U.S.C. § 1441(e)(1)(B) (emphasis added).

Section 1369 provides, in pertinent part, as follows:

> (a)    In general. The district courts shall have original
>        jurisdiction of any civil action involving minimal diversity
>        between adverse parties that arises from a single accident,
>        where at least 75 natural persons have died in the accident
>        at a discrete location, if –
>
>        (1)    a defendant resides in a State and a substantial part
>               of the accident took place in another State or other
>               location, regardless of whether that defendant is
>               also a resident of the State where a substantial part
>               of the accident took place;

4

       (2)      any two defendants reside in different States,
                   regardless of whether such defendants are also
                   residents of the same State or States; or

       (3)      substantial parts of the accident took place in
                   different States.

28 U.S.C. § 1369(a).  The term "accident" is defined as "a sudden accident, or a natural event culminating in an accident, that results in death incurred at a discrete location by at least 75 natural persons . . . ."  28 U.S.C. § 1369(c)(4).

This Court has jurisdiction under Section 1441(e)(1)(B) because a number of the Hartford Defendants and Travelers Defendants are parties to <u>Aaron v. AIG Centennial Ins. Co.</u>, Civ. A. No. 06-4746 (E.D. La.), a case that was brought under Section 1369 in this Court, and that arises out of the same accident as this case.  Some of the Travelers Defendants are also parties in <u>Chehardy v. State Farm Fire & Cas. Co.</u>, Civ. A. Nos. 06-1672, 06-1673, 06-1764 (E.D. La.), a case in which jurisdiction was found based on Section 1369, and that arises out of the same accident as this case.

**A.    This Case Arises Out Of The Same "Accident" As <u>Aaron</u>, A Case That Was Brought Under Section 1369**

The complaint in <u>Aaron</u> expressly alleges that "[t]his Court has jurisdiction in this matter pursuant to 28 USCA 1369 in that this is a civil action for damages involving minimal diversity between adverse parties that arises from a single accident where at least seventy-five (75) natural persons have died in the accident at a discrete location."  (<u>Aaron</u> Complaint, ¶ 5, attached as <u>Exhibit A</u> hereto.)  The plaintiffs in <u>Aaron</u> allege that "[a]s a result of the hurricane force winds and consequent failure of levees, plaintiffs' properties were severely damaged and/or destroyed." (<u>Id.</u>, ¶ 9.)  The plaintiffs claim that the insurance company defendants failed to make sufficient payment for the damage to their properties, including the damage caused by the levee failures.

(<u>Id.</u>, ¶¶ 14, 15.)  The plaintiffs further allege that the defendants failed to comply with the Louisiana Valued Policy Law by "failing to pay the full value of the policy for houses that were a total loss."  (<u>Id.</u>, ¶ 19.)

Under the MMTJA, the definition of "accident" includes "a natural event culminating in an accident, that results in death incurred at a discrete location by at least 75 natural persons . . . ."  28 U.S.C. § 1369(c)(4).  The <u>Aaron</u> case arises out of the same "accident" as this case, regardless of whether the "accident" was Hurricane Katrina as a whole or the levee breaks that ensued from Hurricane Katrina.  Like the plaintiffs in <u>Aaron</u>, the Plaintiffs in this case allege that "[t]housands of residences were damaged or destroyed by either the winds of Hurricane Katrina or caused by man-made, third-party negligence or fault with respect to the design, construction, engineering, inspection, maintenance, and operation of the surrounding navigable waterway system, including all levees, levee walls, spoilbanks, and/or associated structures."  (Amended Petition, ¶ 3.)  Plaintiffs seek to recover for damage resulting from the levee breaks that occurred in New Orleans after Hurricane Katrina, in addition to damage caused by the hurricane's winds.  (<u>Id.</u>, ¶¶ 39, 40, 46, 48-72, 81-84.)  Plaintiffs also allege a claim under the Valued Policy Law, similar to the claim alleged in <u>Aaron</u>.  (<u>Id.</u>, ¶¶ 42, 46(f), 74-79.)  It is thus clear that this case arises out of the same "accident" that forms the basis for jurisdiction under the MMTJA in <u>Aaron</u>.

Under Section 1441(e)(1)(B), in order to establish jurisdiction, all that needs to be shown is that "the defendant is a party to an action <u>which is</u> or could have been <u>brought, in whole or in part, under section 1369</u> in a United States district court <u>and arises from the same accident</u> as the action in State court . . . ."  28 U.S.C. § 1441(e)(1)(B) (emphasis added).  There is no question that <u>Aaron</u> was brought, at least "in part," under Section 1369.  There is also no question that

<u>Aaron</u> arises from the same "accident" as this case.  The plain language of Section 1441(e)(1)(B) does not allow the Court to second guess whether <u>Aaron</u> was properly brought under Section 1369, or whether there might be other bases for federal jurisdiction in that case.  If the prior case was "brought, in whole or in part, under section 1369" and "arises from the same accident," the defendant can remove the case under the express language of Section 1441(e)(1)(B).

### B.   This Case Also Arises Out Of The Same "Accident" As <u>Chehardy</u>, A Case In Which This Court Has Held That Jurisdiction Exists Under Section 1369

<u>Chehardy</u> provides another basis for "piggyback" jurisdiction under Section 1441(e)(1)(B).[3]  In <u>Wallace v. Louisiana Citizens Prop. Ins. Corp.</u>, 444 F.3d 697 (5th Cir. 2006), the Fifth Circuit addressed the applicability of "piggyback" jurisdiction under the MMTJA based on <u>Chehardy</u>.  The insurers contended that the MMTJA provided jurisdiction over <u>Wallace</u> under Section 1441(e)(1)(B) because the Middle District of Louisiana had exercised jurisdiction under Section 1369(a) over <u>Chehardy</u>.[4]  The court noted that the <u>Chehardy</u> case arose "from the same accident (Hurricane Katrina) as the instant case" and "also deals with insurance claims flowing from Hurricane Katrina . . . ." <u>Id.</u> at 699.  The Fifth Circuit concluded that the MMTJA "establishes supplemental jurisdiction over the *Wallace* action" as a result of "the district court's original jurisdiction under § 1369(a) over the pending *Chehardy* action." <u>Id.</u> at 702.  This conclusion was not dicta.

In <u>Flint v. La. Farm Bureau Ins. Co.</u>, 2006 WL 2375593 (E.D. La. Aug. 15, 2006) (Duval, J.), this Court concluded that there is jurisdiction over the <u>Chehardy</u> case under the MMTJA because the levee breaks arising from Hurricane Katrina constitute an "accident" within

---

[3] Some of the Hartford Defendants and Travelers Defendants are also parties to other cases that could have been brought under Section 1369.  <u>See</u>, <u>e.g.</u>, <u>Alexander v. Automobile Club Inter-Ins. Exch.</u>, Civil Action No. 07-4538; <u>Aguilar v. ALEA London Ltd.</u>, Civil Action No. 07-4852; <u>Abadie v. Aegis Sec. Ins. Co.</u>, Civil Action No. 07-5112; <u>Abadie v. Aegis Sec. Ins. Co.</u>, Civil Action No. 06-5164.

[4] The minute entry in <u>Chehardy</u> concluding that there is jurisdiction under Section 1369 is attached as Exhibit B hereto.

the meaning of Section 1369.  In <u>Flint</u>, an insurer contended that there was jurisdiction under

Section 1441(e)(1)(B) because the insurer was a party to another case (<u>Craddock v. Safeco Ins.</u>

<u>Co.</u>) in which jurisdiction existed under Section 1369.  <u>Flint</u>, at *2.  The opinion also addressed

<u>Chehardy</u>.  In granting the motion to remand in <u>Flint</u>, this Court carefully distinguished between

<u>Chehardy</u> (which was the basis for § 1441(e)(1)(B) jurisdiction in <u>Wallace</u>) and <u>Craddock</u>

(which was the alleged basis for § 1441(e)(1)(B) jurisdiction in <u>Flint</u>):

> *Chehardy* arises from a levee break that caused both loss of life and property
> damage.  <u>Therefore, the Court concludes that § 1369 jurisdiction exists in</u>
> <u>*Chehardy* because the levee break is the requisite accident that caused the death</u>
> <u>of at least 75 natural persons at a discrete location</u>.  *Craddock* does not arise from
> a levee break.  Thus, the only possible accident in *Craddock* is Hurricane Katrina,
> which caused wind resulting in the loss of trees and debris on the property of
> many Louisiana citizens.  However, Hurricane Katrina was the "natural event"
> under § 1369 that culminated in many accidents, but there is no single accident in
> *Craddock* that resulted in the death of at least 75 natural persons at a discrete
> location.  Therefore, *Craddock* could not have been brought under § 1369.

<u>Flint</u>, at *3 (emphasis added).

When this Court's reasoning in <u>Flint</u> is applied in this case, it is clear that there is

jurisdiction under the MMTJA here.  Plaintiffs in this case, like the plaintiffs in <u>Chehardy</u>, seek

to recover for damage caused by levee breaches.  (<u>Compare</u> Road Home Amended Petition, ¶¶ 3,

26, 43, 46, 48-72 <u>with</u> <u>Chehardy</u> Petition,[5] ¶¶ IV, V, X(b) (attached as <u>Exhibit C</u> hereto).)  Both

this case and <u>Chehardy</u> involve the question of whether there is coverage under property

insurance policies for water damage resulting from the levee breaks.  This Court has concluded

(consistent with Judge Polozola's conclusion) that jurisdiction exists under Section 1369 in

<u>Chehardy</u> because the levee breaks constitute an "accident" within the meaning of the MMTJA.

---

[5] The <u>Chehardy</u> Petition cited herein and attached as Exhibit C hereto is the original Petition that was before Judge
Polozola when he concluded that jurisdiction existed under Section 1369.  As this Court knows, <u>Chehardy</u> was
subsequently transferred to the Eastern District.  An amended and restated complaint was filed, and was later
incorporated into a insurance master consolidated class action complaint, but the general thrust of the allegations --
that the defendants' insurance policies should be construed as providing coverage for water damage resulting from
levee breaks -- remains the same.

Flint, at *3.  See also Berry v. Allstate Ins. Co., 2006 WL 2710588, at *3 (E.D. La. Sept. 19,

2006) (Zainey, J.) (noting that "a levee break might very well be considered an 'accident' arising

from a natural event so as to trigger the provisions of the MMTJA," citing Flint); Thompson v.

Mixon, 2007 WL 1550948, at *4 (E.D. La. May 25, 2007) (McNamara, J.) (noting that there was

jurisdiction under the MMTJA in Chehardy because the levee breaks were the requisite

"accident," citing Flint); St. Marie v. State Farm Fire & Cas. Co., 2007 WL 1017588, at *5 (E.D.

La. Mar. 28, 2007) (McNamara, J.) (similar); Blappert v. Hartford Ins. Co., 2007 WL 861174, at

*2 (E.D. La. Mar. 19, 2007) (Lemmon, J.) (similar).

       This Court's decision in Case v. ANPAC Louisiana Ins. Co., 466 F. Supp. 2d 781 (E.D.

La. 2006) (Duval, J.), which held that there was no jurisdiction under Section 1441(e)(1)(B) in a

Hurricane Katrina insurance case, did not disavow or overrule this Court's prior decision in Flint,

which expressly stated that there was jurisdiction under Section 1369 in Chehardy.  The

contention in Case was that "piggyback" jurisdiction existed under Section 1441(e)(1)(B)

because the insurance company defendants were parties in Abadie et al. v. Aegis Security Ins.

Co., et al., Civ. A. No. 06-5164 (E.D. La.).  Defendants in Case contended that Abadie

hypothetically could have been brought under Section 1369, even though it was not filed under

that statute.  See Case, 466 F. Supp. 2d at 784, 789-90.  Unlike in Case, here one of the bases for

"piggyback" jurisdiction is Aaron, a case that was expressly brought under Section 1369.

Section 1441(e)(1)(B) allows a court to determine whether a prior lawsuit (such as Abadie)

hypothetically "could have been brought" under Section 1369.  Where, however, a suit such as

Aaron was in fact brought under Section 1369, the MMTJA does not authorize a court to second

guess whether the plaintiff properly brought suit under Section 1369.  The only question, in

applying the plain language of the statute, was whether the prior suit was in fact "brought" under

Section 1369.  Moreover, <u>Chehardy</u> also forms a basis for "piggyback" jurisdiction in this case, and this Court has expressly concluded in <u>Flint</u> that there is jurisdiction under Section 1369 in <u>Chehardy</u>.  <u>Flint</u>, 2006 WL 2375593, at *3.  This case is thus distinguishable from <u>Case</u> in two critical respects.[6]

## II.    JURISDICTION ALSO EXISTS UNDER SECTION 1369

In addition to "piggyback" jurisdiction under Section 1441(e)(1)(B), there is also original jurisdiction over this lawsuit under Section 1369.  The Travelers Defendants and Hartford Defendants recognize that, under the reasoning in this Court's decision in <u>Case</u> and in decisions by other judges of this District, there would be no original jurisdiction under Section 1369 in this case.  There is, however, no controlling authority on this issue.  The only appellate decision on the MMTJA is <u>Wallace</u>, in which the Fifth Circuit strongly suggests that there was jurisdiction under Section 1369(a) in <u>Chehardy</u>, a case making allegations similar to what Plaintiffs allege in the case at bar.  <u>Wallace</u>, 444 F.3d at 702.  The Travelers Defendants and Hartford Defendants include the following arguments for purposes of preserving them for appeal.

### A.    This Case Satisfies The Requirements Of 28 U.S.C. § 1369(a)

Section 1369 provides federal district courts with original jurisdiction over certain cases arising out of major disasters, as follows:

> The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident, where at least 75 natural persons have died in the accident at a discrete location, if –

---

[6] Plaintiffs cite <u>Southall v. St. Paul Travelers Ins. Co.</u>, 2006 WL 2385365 (E.D. La. Aug. 16, 2006) (Barbier, J.) for the proposition that "piggyback" jurisdiction is not available based on <u>Chehardy</u>.  The court in <u>Southall</u>, however, concluded that <u>Chehardy</u> did not arise out of the same "accident" as <u>Southall</u> because "Plaintiffs' claim has nothing to do with the breached levees" and "[t]here is no indication that the adjudication of this suit in a state court forum would lead to inconsistent awards with suits in other fora."  <u>Id.</u> at *6.  Here, in contrast, Plaintiffs seek to recover for water damage resulting from levee breaches, and adjudication of this suit in a state court, while there are putative class actions pending against the same defendants in federal court, could lead to inconsistent results, which the MMTJA is designed to avoid.

(1)     a defendant resides in a State and a substantial part
        of the accident took place in another State or other
        location, regardless of whether that defendant is
        also a resident of the State where a substantial part
        of the accident took place;

(2)     any two defendants reside in different States,
        regardless of whether such defendants are also
        residents of the same State or States; or

(3)     substantial parts of the accident took place in
        different States.

28 U.S.C. § 1369(a).

The MMTJA further provides that "minimal diversity exists between adverse parties if any party is a citizen of a State and any adverse party is a citizen of another State . . . ." Id. at § 1369(c)(1).  The term "accident" is defined as "a sudden accident, or a natural event culminating in an accident, that results in death incurred at a discrete location by at least 75 natural persons . . . ." Id. at § 1369(c)(4).  Section 1369(a) thus has three basic requirements:  (1) there must be "minimal diversity between adverse parties"; (2) the case must "arise from" an "accident" where "at least 75 natural persons have died in the accident at a discrete location"; and (3) at least one of the three numbered criteria in § 1369(a), as quoted above, must be satisfied.  All three of these requirements are met in this case, as explained below.

**1.     There Is Minimal Diversity Between Adverse Parties**

The first requirement is met.  Plaintiff Charles C. Foti, Jr. is a citizen of Louisiana. Defendants include various entities that are citizens of states other than Louisiana.  (Amended Petition, ¶ 18.)  For example, The Standard Fire Insurance Company (one of the Travelers Defendants) and Hartford Fire Insurance Company (one of the Hartford Defendants) are both Connecticut corporations with their principal places of business in Connecticut.  Thus, there is minimal diversity.

> 2.      This Case Arises From An "Accident" Within The Meaning Of
> Section 1369 Where At Least 75 Natural Persons Have Died At A
> Discrete Location
>
> a.      The Levee Breaches Are An "Accident"

The second requirement for jurisdiction under Section 1369 is that the lawsuit must arise

from an "accident," which is defined as "a sudden accident, or a natural event culminating in an

accident, that results in death incurred at a discrete location by at least 75 natural persons . . . ."

28 U.S.C. § 1369(c)(4).  Plaintiffs in this case seek to recover for damage caused by the levee

breaches that occurred at the time of Hurricane Katrina.  (Amended Petition, ¶¶ 3, 26, 43, 46, 48-

72.)  The levee breaches constitute an "accident" within the meaning of the MMTJA.  They were

a sudden, accidental event that resulted from a "natural event," i.e., Hurricane Katrina, and they

resulted in more than 75 deaths. See Flint, 2006 WL 2375593, at *3 ("the Court concludes that §

1369 jurisdiction exists in Chehardy because the levee break is the requisite accident"); see also

Fidelity Homestead Ass'n v. Hanover Ins. Co., 2006 WL 2873562 (E.D. La. Oct. 5, 2006)

(Berrigan, J.) (noting that "Judge Duval ruled that the individual levee breaks could be accidents

by the terms of the statute, but that the hurricane itself was not," and that "[o]ther Judges in this

district agree with Judge Duval's reasoning") (citing Flint); Berry, 2006 WL 2710588, at *3

(Zainey, J.) (noting that "a levee break might very well be considered an 'accident' arising from

a natural event so as to trigger the provisions of the MMTJA") (citing Flint).  But see Case, 466

F. Supp. 2d at 794 (concluding that multiple levee breaches could not constitute a "single

accident" under the MMTJA).  The levee breaches should be considered a "single accident."

They all resulted from the same "natural event," Hurricane Katrina, and occurred during

substantially the same, relatively short time period.  Reading Section 1369(a) together with

Section 1369(c)(4), all that is required is that there be a "single" "natural event culminating in an accident . . . ."  For the reasons set forth in further detail below, the MMTJA was intended to confer federal jurisdiction in cases like this case and should not be given an unduly narrow construction.

There is no question that more than 75 natural persons died as a result of the levee breaches that occurred during Hurricane Katrina.  Given that over 500 deaths occurred in New Orleans as a result of Hurricane Katrina,[7] the Court can take judicial notice of the fact that the levee breaches caused more than 75 deaths.  Congress plainly intended that the MMTJA would be applied in a sensible fashion to enable consolidation of disaster-related litigation.  Where, as here, it is clear that an accident resulted in more than 75 deaths, the statute should not be read as requiring parties and courts to go through the gruesome and likely impossible task of attempting to determine exactly how many deaths occurred, where they occurred and what caused each death.

Even if the removing defendants were required to make some type of showing that the same levee breaches that caused property damage for which Plaintiffs are seeking to recover also caused 75 deaths, such a showing can easily be made here based on government data.  The map attached as Exhibit D hereto, which was prepared based on data from the Louisiana Department of Health and Hospitals,  shows the approximate locations of deaths resulting from Hurricane Katrina and the locations of the levee breaches.[8]  It is clear from the map that the levee breaches resulted in more than 75 deaths.[9]

---

[7] See Louisiana Department of Health and Hospitals, News Release, Jan. 23, 2006, available at http://www.dhh.louisiana.gov/news.asp?ID=1&Detail=805.

[8] This map is admissible under Fed. R. Evid. 803(8)(c) and 803(9).  If the Court should determine that this type of evidence is necessary but that Exhibit D is somehow insufficient or inadmissible, the defendants should be provided a reasonable opportunity to take third-party discovery on this issue and seek additional documentation from the pertinent government agencies.

The deaths occurred at a "discrete location" within the meaning of the MMTJA.  The term "discrete location" should be read consistent with Section 1369(a)(3), which provides that the MMTJA applies where "substantial parts of the accident took place in different States."  As Section 1369(a)(3) demonstrates, the term "discrete location" is not confined to one particular building, but can encompass an event that occurs over a larger area, even an "accident" that occurs in more than one state.

**b.        Hurricane Katrina Is An "Accident"**

Alternatively, Hurricane Katrina is an "accident" within the meaning of Section 1369.  The MMTJA applies to "any civil action" resulting from an "accident" or "natural event culminating in an accident," regardless of the legal theory on which the action is based.  The MMTJA is not limited to any particular types of accidents.  The definition of "accident" makes clear that the term "accident" includes a "natural event culminating in an accident," such as Hurricane Katrina.  28 U.S.C. § 1369(c)(4).  The requirement that there be a "single accident" is satisfied where there is a "single" "natural event culminating in an accident . . . ."  Hurricane Katrina was an "accident" because it was a single natural event that culminated in the levee breaches.  The fact that the MMTJA expressly applies where "substantial parts of the accident took place in different States" (28 U.S.C. § 1369(a)) further demonstrates that an "accident" can be a large-scale disaster, such as Katrina.

**c.        The Numbered Criteria In § 1369(a) Are Satisfied**

It is also undisputed that this case satisfies all three numbered criteria set forth in Section 1369(a), only one of which needs to be satisfied in order for there to be jurisdiction.  This case satisfies subsection (a)(1) because there is at least one defendant (e.g., The Standard Fire

---

[9] Defendants cannot determine where the property damage which Plaintiffs seek to recover for occurred because Plaintiffs have not yet provided that information.

Insurance Company or Hartford Fire Insurance Company) that is a resident of Connecticut, and "a substantial part of the accident took place in another State," i.e., Louisiana.  This case also satisfies subsection (a)(2) because "any two defendants reside in different States" – as demonstrated by Paragraph 18 of the Amended Petition, defendants in this case are residents of various states.  This case also satisfies subsection (a)(3) because substantial parts of the "accident," i.e., Hurricane Katrina, occurred in different States, including both Louisiana and Mississippi.

**B.     The Abstention Provision in Section 1369(b) is Inapplicable**

The MMTJA's abstention provision, which is contained in Section 1369(b), provides as follows:

> (b) Limitation of jurisdiction of district courts. The district court shall abstain from hearing any civil action described in subsection (a) in which—
>
> (1) the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens; and
>
> (2) the claims asserted will be governed primarily by the laws of that State.

28 U.S.C. § 1369(b) (emphasis added).  Plaintiffs do not even argue that this provision applies in this case.  It does not.  Plaintiffs cannot seriously dispute that the "primary defendants" in this case are citizens of states other than Louisiana.  As set forth in Allstate Insurance Company's and State Farm Fire & Casualty Company's opposition memoranda to Plaintiffs' principal motion to remand (in which the Travelers Defendants and Hartford Defendants have joined, and which explains how jurisdiction exists under CAFA and based on fraudulent misjoinder), the insurer defendants with the largest market shares for homeowners' insurance are State Farm Fire & Casualty Company and Allstate Insurance Company, which are residents of Illinois.

C.       **The MMTJA Was Intended to Provide Federal Jurisdiction in Cases Like This One**

Prior to Hurricane Katrina, scholars recognized that the MMTJA would extend to insurance coverage disputes arising from mass disasters.  See Angela J. Rafoth, "Congress and the Multiparty Multiforum Trial Jurisdiction Act of 2002," 54 Duke L.J. 255, 264 (2004) (noting that "a contract suit against or between insurers regarding coverage related to a qualifying accident could come into federal court under section 1369").  Retaining jurisdiction in this case is fully consistent with the purpose and intent of the MMTJA and will achieve judicial efficiency.  As the Fifth Circuit has explained, "the MMTJA was designed to ameliorate the restrictions on the exercise of federal jurisdiction that ultimately forced parties in multiple suits arising from the same disaster to litigate in several fora."  Wallace, 444 F.3d at 702.  The MMTJA is designed to provide federal jurisdiction in all cases arising from a major disaster and meeting its requirements, so that cases involving the same issues of law and fact can be heard together and managed more efficiently.  See H.R. Conf. Rep. No. 107-685, at 200 (stating that MMTJA was enacted because "[c]urrent efforts to consolidate all state and federal cases related to a common disaster are incomplete because current federal statutes restrict the ways in which consolidation can occur").[10]

The MMTJA was thus intended to allow disaster litigation to be heard in federal court by preventing plaintiffs from evading federal diversity jurisdiction.  The MMTJA achieves this objective by providing federal district courts with original jurisdiction over all cases that arise out of major disasters where there is minimal diversity of citizenship between adverse parties.

---

[10] The MMTJA does not require that all federal cases involving a particular "accident," such as Hurricane Katrina, be consolidated.  It leaves such case management decisions to the sound discretion of the judges of the district(s) in which the "accident" occurred and the judges of the Multidistrict Litigation Panel (to the extent that similar cases are filed in multiple districts).

See 28 U.S.C. § 1369(a).  This permits cases to be consolidated or heard together as appropriate, avoiding the potential inconsistency that can arise where the same or similar issues of fact and law are adjudicated simultaneously in both federal and state courts.  See 28 U.S.C. § 1369(e) (providing for notification of judicial panel on multidistrict litigation with respect to actions pending under § 1369).

A disaster such as Hurricane Katrina, resulting in at least 554 deaths in Orleans Parish and over 1100 deaths statewide,[11] clearly falls within the scope of the MMTJA.  A disaster of the proportions of Hurricane Katrina, involving many more plaintiffs and defendants than the typical airplane crash, is precisely the type of event for which the MMTJA was designed, so that cases arising from the disaster can be heard in federal court, thereby achieving judicial economy and avoiding inconsistent results.

Application of the MMTJA in this case is particularly appropriate given the number of parties involved, and given that there are other putative class actions pending in this Court against the same defendants raising the same issues.  Even those judges of this Court that have interpreted the MMTJA in a narrow fashion have recognized that, at a minimum, the MMTJA was intended to apply in cases arising from disasters where there are numerous parties involved, as in this case.  See, e.g., Southern Athletic Club, LLC v. Hanover Ins. Co., 2006 WL 2583406, at *5 (E.D. La. Sept. 6, 2006) (Lemmon, J.); Blappert, 2007 WL 861174, at *2.

## III.   IF THE MOTIONS TO REMAND ARE GRANTED, PLAINTIFFS' REQUESTS FOR COSTS AND FEES SHOULD BE DENIED

Plaintiffs also seek an award of costs and attorneys' fees under 28 U.S.C. § 1447(c) in the event that this case is remanded.  (Plaintiffs' Memo., at 7.)  Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including

---

[11]     See Louisiana Department of Health and Hospitals, News Release, Jan. 23, 2006, available at http://www.dhh.louisiana.gov/news.asp?ID=1&Detail=805.

attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Under the plain language of this statute, fees could not be awarded if the case is not remanded. If the Court finds that there is federal jurisdiction on any basis (including CAFA and fraudulent misjoinder), fees could not be awarded.

Where a case is remanded, the Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). "[W]hen an objectively reasonable basis exists, fees should be denied." Id. Here, there is no question that the defendants had an objectively reasonable basis for removal. The Travelers Defendants and Hartford Defendants joined in Allstate's notice of removal, which alleged that federal jurisdiction exists under CAFA and fraudulent misjoinder. Plaintiffs do not even argue that there was no objectively reasonable basis for removal under CAFA or fraudulent misjoinder. If any one of the bases for removal alleged in Allstate's notice of removal and the supplemental notice was objectively reasonable, fees and costs cannot be awarded. It would make no sense to award fees and costs simply because a defendant, in an abundance of caution, alleged an additional ground for removal.

Even if fees and costs could somehow be awarded based on the assertion of a supplemental, additional grounds for removal, such an award would be inappropriate here. The Travelers Defendants and Hartford Defendants had an objectively reasonable basis for removing this case under the MMTJA. Plaintiffs suggest that "this removal was contrary to settled law in this district . . . ." (Plaintiffs' Memo., at 7.) The only appellate precedent, however, is Wallace, which strongly suggests that the MMTJA provides jurisdiction in Chehardy. There is an objectively reasonable basis for removal under Wallace and under the plain language of the

MMTJA. As this Court's decision in Case demonstrates, the applicability of the MMTJA is a complex issue on which reasonable minds can disagree.

Judges in this District have repeatedly rejected requests for attorneys' fees in insurance cases removed under the MMTJA, concluding that there was an objectively reasonable basis for removal. The Fifth Circuit has affirmed one of those rulings. See Yount v. Lafayette Ins. Co., 234 Fed. Appx. 245, 246 (5th Cir. July 9, 2007) (affirming denial of request for attorneys' fees where defendant removed the case under the MMTJA, concluding that defendant's position with respect to the timeliness of the removal was reasonable); Rano v. State Farm Ins. Co., 2007 WL 1343647, at *3 (E.D. La. May 4, 2007) (Fallon, J.) (concluding that there was no federal jurisdiction under the MMTJA or other bases alleged in notice of removal, but denying request for attorneys' fees); Arceneaux v. Schaumburg, 2007 WL 987010, at *4 (E.D. La. Mar. 30, 2007) (Lemelle, J.) (same result); Conklin v. Hanover Ins. Co., 2007 WL 763271, at *4 (E.D. La. Mar. 9, 2007) (Engelhardt, J.) (same result); Ms. Rigg, Ltd., LLC v. Lafayette Ins. Co., 2007 WL 1300474, at *2 (E.D. La. May 2, 2007) (McNamara, J.) (granting motion to remand where MMTJA was the only asserted basis for federal jurisdiction, but denying request for attorneys' fees "because Defendant had objectively reasonable grounds to remove the case"); Blappert, 2007 WL 861174, at *3 (Lemmon, J.) (same result); Kay's Street Scene, Inc. v. Lafayette Ins. Co., 2007 WL 646999, at *2 (E.D. La. Feb. 27, 2007) (Lemelle, J.).[12]

Furthermore, a series of federal district court decisions does not make removal unreasonable where there is no appellate precedent. See Lott v. Pfizer, Inc., 492 F.3d 789, 793

---

[12] Plaintiffs cite Piper Jaffray & Co. v. Severini, 443 F. Supp. 2d 1016, 1023 (W.D. Wis. 2006), but that case involved circumstances in which the defendant clearly had no right to remove the case under the plain language of 28 U.S.C. § 1441(b) because the defendant was a citizen of the state in which the action was brought. The other case cited by Plaintiffs is similarly inapposite. See Shrader v. Legg Mason Wood Walker, Inc., 880 F. Supp. 366, 369 (E.D. Pa. 1995) (awarding attorneys' fees against a plaintiff where the defendant removed the case and the plaintiff took inconsistent positions on issues pertinent to whether there was federal jurisdiction).

(7th Cir. 2007) (reversing decision awarding attorneys' fees and costs where motion to remand was granted, noting that "[d]istrict court decisions, let alone conflicting district court decisions, do not render the law clearly established").  As Plaintiffs would have it, where there is a series of adverse federal district court decisions on a jurisdictional issue but no appellate precedent on point, a defendant would not be able to preserve an issue for appeal without incurring attorneys' fees and costs.  Defendants have a right to preserve an issue for appeal that has never been decided by the appellate court.[13]  Section 1447(c) is not intended to make it unduly costly for a defendant to preserve an issue for appeal.  For all of these reasons, Plaintiffs' request for attorneys' fees and costs should be denied.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' motion to remand should be denied.  If the Court grants Plaintiffs' motion to remand, it should deny Plaintiffs' request for attorneys' fees and costs.

Respectfully submitted,

/s/ Seth A Schmeeckle

| | |
|---|---|
| **OF COUNSEL:** | **RALPH S. HUBBARD, III, T.A., La. Bar. # 7040** |
| **Stephen E. Goldman** | **SETH A. SCHMEECKLE, La. Bar #27076** |
| **Wystan M. Ackerman** | **LUGENBUHL, WHEATON, PECK, RANKIN &** |
| **ROBINSON & COLE LLP** | **HUBBARD** |
| 280 Trumbull Street | 601 Poydras Street, Suite 2775 |
| Hartford, Connecticut 06103-3597 | New Orleans, Louisiana 70130 |
| Telephone:    (860) 275-8200 | Telephone:  (504) 568-1990 |
| Facsimile:      (860) 275-8299 | |

Attorneys for Hartford Accident & Indemnity
Company, Hartford Casualty Insurance Company,
Hartford Fire Insurance Company, Hartford Insurance
Company of the Midwest, Hartford Insurance

---

[13] While orders granting motions to remand are generally not appealable, an order granting or denying a motion to remand a putative class action can be appealed pursuant to 28 U.S.C. § 1453(c).  Section 1453(c) does not restrict the appellate court to deciding only whether CAFA jurisdiction was appropriate.  Moreover, if the Court retains jurisdiction and jurisdiction is later challenged on a subsequent appeal, the Fifth Circuit could potentially decide the applicability of the MMTJA.

Company of the Southeast, "Hartford Insurance Group" (a non-existent entity), Hartford Underwriters Insurance Company, Twin City Fire Insurance Company, The Standard Fire Insurance Company, "St. Paul" (a non-existent entity), "St. Paul Travelers Insurance Company" (a non-existent entity), St. Paul Fire & Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, Travelers Home & Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Insurance Company (a non-existent entity), Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company and The Automobile Insurance Company of Hartford, Connecticut

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of November, 2007, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all CM/ECF participants and I hereby certify that I have mailed by United States Postal Service the document to all non-CM/ECF participants.

/s/ Seth A. Schmeeckle
Seth A. Schmeeckle