UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO.     05-4182 "K"(2) |
| | * | |
| | * | JUDGE DUVAL |
| | * | |
| | * | MAG. WILKINSON |
| | * | |
| _____ | * | |
| | * | |
| PERTAINS TO: | * | |
| | * | |
| *ROAD HOME*:     *Louisiana State*, | * | |
| C.A. No. 07-5528 | * | |
| _____ | * | |

## MEMORANDUM OF ELECTRIC INSURANCE COMPANY OPPOSING MOTION TO REMAND

### 1.     INTRODUCTION

Defendant Electric Insurance Company ("EIC") respectfully opposes the motion of the State of Louisiana ("State") to remand this action to the Civil District Court for the Parish of Orleans ("CDC").

Forced, it claims, to institute this action for the protection of the Road Home program by the illegitimate claims handling practices of the defendants, the State launched this class action against property and casualty insurers including EIC in Civil District Court for the Parish of Orleans. *See* Memorandum in Support of Motion to Remand (hereinafter, "State's Memorandum"), at pp. 4-5. The action was instituted on the State's behalf and "on behalf of 'all affected citizens of the State, **pursuant to state law only** . . . for the recovery of funds' paid or anticipated to be paid under the Road Home." *Id*., at p. 5. (Footnote omitted) (emphasis in original). The suit "seeks to 'enforce state law contractual obligations' owed by the Insurance Company Defendants to past, present, and future recipients . . . of proceeds from the Road Home." *Id*. (Footnote omitted).

Allstate and certain other insurers thereafter removed the suit under the Class Action Fairness Act ("CAFA"), 28 U.S.C.A. § 1332(d), *et seq*. Many other defendants, including EIC, subsequently filed timely joinders in the removal. Thereafter, this Court consolidated the present action with the consolidated Katrina litigation on its own motion. (Doc. 7729, Sept. 18, 2007). Next, the State filed the instant motion to remand. The motion does not deny the presence of minimal diversity or a controversy over the jurisdictional amount. Rather, the dispute between the State and the removing defendants centers on the mandatory and the discretionary grounds for declining to exercise CAFA jurisdiction and the State's alleged immunity under the Eleventh Amendment.

For the reasons set forth in the balance of this Memorandum, neither the Eleventh Amendment nor the Class Action Fairness Act ("CAFA") mandate remand. The State bears the burden of proving that mandatory or discretionary grounds for declining jurisdiction exist in this action. *See Frazier, infra*, 455 F.3d at 546 ("We hold that plaintiffs have the burden to show the

applicability of the §§ 1332(d)(3)-(5) exceptions when jurisdiction turns on their application.")

**Bennett v. Board of Commissioners for East Jefferson Levee District**, No. 07-3130, 3131, *3 (E.D.La. Aug. 31, 2007), 2007 WL 2571942 (Duval, J.) (same).

The State has not proven that the mandatory or the discretionary grounds for declining to exercise jurisdiction in a CAFA action are present in this case. This case involves more than a purely local controversy and no one can legitimately claim that it involves a home-state controversy. This is therefore not an action in which there are mandatory grounds for declining to exercise jurisdiction. **Cf. Preston, infra,** at 810 (accepting "cogent" argument that local and home state controversy exceptions should be construed narrowly and resolved in favor of federal jurisdiction).

As for whether the discretionary grounds for declining to exercise CAFA jurisdiction are present, the fact is that the Court is affirmatively precluded from choosing to abstain by the presence of foreign, primary defendants. Under the CAFA, class action "cases in which more than two thirds of the members of the plaintiff class **or one or more of the primary defendants are not citizens of the state** in which the action was filed **will be** subject to federal jurisdiction, pursuant to the provisions of subsection 1332(d)(2). . . . **because they have a predominantly interstate component** . . ." S. Rep. 109-14, at *36, 2005 U.S.C.C.A.N. 3, 35, 2005 WL 627977. (Emphasis added). Therefore, the Court must exercise jurisdiction over this action. **Id**. **See also** Comment, **Defining 'Primary Defendants' in the Class Action Fairness Act of 2005**, 67 La. L. Rev. 903, 909 (2007) ("Second, under § 1332(d)(2), if more than two-thirds of the members of the plaintiff class or one or more of the primary defendants are not citizens of the state in which the action was filed, then the case will go to federal court.") (Footnote omitted).

When there is a valid basis for removal, moreover, as there is in this case, the Eleventh Amendment does not forbid the exercise of jurisdiction. *See MTBE, infra,* at 136 (if criteria of valid removal statute met sovereign immunity does not bar removal of case commenced by state in its own courts); *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co. Inc.*, *infra*, 625 F.2d at 24 n. 6 ("Of course, the eleventh amendment is inapplicable where a state is a plaintiff . . ."). For all of these reasons, the State's motion should be denied.

   a.   *In the CAFA, There is No Broad and Categorical Prohibition on the Removal Of Actions Instituted by a State Attorney General*

EIC begins by first disposing of the State's specious contention that the Class Action Fairness Act has no application to actions instituted by Attorneys General -- or to actions instituted by Attorneys General concerning insurance. *See* State's Memorandum, at p. 10.

The only authority cited for this proposition is a Senate debate over an amendment to the CAFA proposed by Senator Pryor, who had previously been the Attorney General of Arkansas. Under Senator Pryor's amendment, the CAFA would have exempted class actions brought by attorneys general. *See* 151 Cong. Rec. S1157-02, 2005 WL 309648 (hereinafter, "CR"), at p. 2. The State's brief neglects to mention that Senator Pryor's amendment was defeated, or to be more precise, tabled by a vote of the Senate. *See id*., at pp. 23-24. If, as the Second Circuit has suggested, a ten day interval between the CAFA's enactment and the publication of the Senate Report concerning its meaning "suggests that its probative value for divining legislative intent is minimal", then the probative value of a debate over a failed amendment is negligible at best. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2nd Cir. 2006).

Furthermore, however, the Record indicates that the amendment was probably defeated to avoid a further conference with the House, rather than for the reasons ascribed to the Record

by the State. CR, at p. 12.[1] However, regardless of the evidence supporting the conclusion that the amendment was defeated to avoid yet another conference with the House, the State has correctly noted that the debate featured remarks regarding the lack of any necessity for the amendment. *See* State's Memorandum, at p. 10. The State is nonetheless wrong to conclude that this means that actions by Attorneys General are exempted from the CAFA's scope. The conclusion is wrong as a matter of statutory interpretation and wrong under the CAFA's legislative history. A court is to "assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Geeslin, infra*, at 235. Since the CAFA is completely silent with regard to the theory promoted the State, this Court should conclude that the Class Action Fairness Acts authorizes the removal of suits instituted by an Attorney General *as long as the other requirements of the Act are satisfied by the removal.*

This conclusion is more in keeping with the consensus of the remarks in the Congressional Record. The remarks of the Senators who opposed the amendment reveal that they opposed it for substantive reasons in addition to the procedural ones noted earlier. The State quotes Senator Grassley as a Senator whose remarks demonstrate that CAFA barred the removal of suits concerning insurance by Attorneys General, regardless of the Pryor amendment, *see* State's Memorandum, p. 10, but Senator Grassley's remarks actually highlight the reasons why the State's argument is without merit, and his remarks exemplified those of other Senators.

"I ask my colleagues", he said, "not to be fooled." CR, at 17. "Although this amendment sounds good", he continued, "and there was a good presentation made by the authors of the amendment, it is potentially harmful and could lead to gaming by the authors of the amendment." *Id*. Senator Grassley, Senator Cornyn and other Senators feared that trial lawyers

---

[1] *See, e.g.,* Remarks of Senator Carper : "The last thing I would like to say is there are plenty of people on both sides of the aisle who would like to offer amendments. My fear is if any of those amendments were adopted, we invite the House . . . to come back and to offer quite a different bill than the compromise that is before us today."

would abuse Senator Pryor' amendment. They feared that private attorneys would exploit Attorneys General to avoid the CAFA.[2]

For all of these reasons, however, the State's reliance on the debate over the rejected Pryor amendment is unjustified and unreliable. There is no authority for concluding that a blanket impediment exists to the removal of a class action nominally instituted by the Attorney General of a State, even if the action also involves insurance questions.

Indeed, the Act's plain language indicates that no such intention can be attributed to Congress. Section 1332(d)(5), which the Fifth Circuit construed in ***Frazier v. Pioneer Americas LLC***, 455 F.3d 542 (5th Cir. 2006), precludes the removal of class actions that involve, as defendants, States, State officials, "or other government entities against whom the district court may be foreclosed from ordering relief . . ." 28 U.S.C.A. § 1332(d)(5)(A). ***Frazier*** holds that in order for this exception to apply, ***all*** of the primary defendants must be state actors. ***Frazier, supra***, at 546. Congress is therefore clearly capable of expressing itself effectively with regard to federal subject-matter jurisdiction over State-interest litigation. However, when Congress was given the chance to explicitly address actions instituted by Attorneys General in the CAFA, it declined the invitation. This legislative history indicates that Congress intended ***not*** to enact the blanket exemption alleged in the motion to remand by the State. This Court should accordingly refrain from imposing such an interpretative gloss on the Act, especially considering the acknowledged intention of "Congress [to] . . . expand[] the availability of diversity jurisdiction for class action lawsuits." ***Blockbuster, Inc. v. Galeno***, ***supra***, at 56. ***See also Preston v. Tenet***

---

[2] For example, Senator Cornyn remarked" "I take no pleasure in bringing this up but merely make mention of it to point out the potential for mischief-not when cases are brought by an attorney general, somebody who is elected by the people, whose future, frankly, is dependent on their dutiful discharge of their obligations and faithful discharge of their duties,-but when you carve out suits brought on behalf of the attorney general, which could include any lawyer who any attorney general might choose to hire as outside counsel and, of course, who is unelected and unaccountable to the people. Here, we see the potential for grave abuses." CR, ***supra***, at p. 15. Ironically, the State's motion appears deaf to these concerns. As noted earlier, several prominent trial lawyers appear on the pleadings with the Attorney General.

*Healthsystem Memorial Medical Center, Inc.*, 485 F.3d 804, 810 (5th Cir. 2007) (to same effect).

## 2. THIS ACTION DOES NOT EVOKE A MANDATORY GROUND FOR REMANDING THIS MATTER TO CDC

"Congress enacted CAFA with the purpose of, *inter alia*, expanding the availability of diversity jurisdiction for class action lawsuits." *Id. See also* S. Rep., *supra*, at *43, 2005 U.S.C.C.A.N. at 41 ("Overall, new section 1332(d) is intended to expand *substantially* federal court jurisdiction over class actions. Its provisions should be read broadly, with *a strong preference* that interstate class actions should be heard in a federal court if properly removed by any defendant.") (Emphasis added). The State's motion contends that this Court must decline jurisdiction over this action because the case involves a purely local controversy. *See* State's Memorandum, at p. 11. This contention is without merit.

### a. *The Local Controversy Exception Does Not Apply*

Congress specifically addressed the mandatory grounds for declining jurisdiction in § 1332(d)(4).[3] The question is accordingly one of Congressional intent, although Congress intended the local and home-state controversy exceptions to be narrowly construed in favor of federal jurisdiction. *Preston, supra,* at 810 (agreeing with "cogent" argument that local and home state controversy exceptions should be construed narrowly and resolved in favor of federal jurisdiction).

---

[3] This provision contains the two mandatory exceptions to CAFA jurisdiction. *See Serrano, infra*, at 1022. The "local controversy exception" is set forth in 28 U.S.C.A. § 1332(d)(4)(A)(III(ii). The "home-state controversy exception" is the one embodied in 28 U.S.C.A. § 1332(d)(4)(B). *Id*.

As stated earlier, in all cases involving the construction of a federal statute, the "'starting point must be the language employed by Congress, . . . and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." ***See, e.g., Custom Rail Employer Welfare Trust Fund v. Geeslin***, 491 F.3d 233, 235 (5th Cir. 2007), ***quoting INS v. Phinpathya***, 464 U.S. 183, 189, 104 S. Ct. 584, 78 L.Ed.2d 401 (1984) (quotation marks and citations omitted). ***Cf***. ***Nat. Credit Union Admin. v. First Nat. Bank***, 522 U.S. 479, 499, 118 S. Ct. 927, 938, 140 L. Ed.2d 1 (1998) (if intent of Congress is clear court must give effect to unambiguously expressed intent of Congress).

Section 1332(d)(4), containing the local controversy and home-state controversy exceptions to CAFA jurisdiction, reads:

> (4) A district court ***shall*** decline to exercise jurisdiction under paragraph (2) –
> (A)(i) over a class action in which-
> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> (II) at least 1 defendant is a defendant-
> (aa) from whom significant relief is sought by members of the plaintiff class;
> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
> (cc) who is a citizen of the State in which the action was originally filed; and
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or similar persons; ***or***
> (B) two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the

> primary defendants, are citizens of the State in
> which the action was originally filed.

28 U.S.C.A. § 1332(d)(4) (emphasis added).

As stated earlier, the party opposing federal jurisdiction has the burden of demonstrating that an obligatory basis for abstention applies. *See Serrano v. 180 Connect, Inc*., 478 F.3d 1018, 1022-1025 (9th Cir. 2007) (plaintiff bears burden of proving exception to jurisdiction); *Preston, supra* (indicating that burden is preponderance one); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542 (5th Cir. 2006); *Bennet, supra*; S. Rep., *supra*, at *44, 2005 U.S.C.C.A.N., at 41 ("It is the Committee's intention with regard to each of these exceptions that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of the exception.")

In addition, the many conjunctives in the local controversy exception, quoted above, are not inadvertent. Rather, they are there to "make[] it clear that all four of its elements must be satisfied for the 'local-controversy' exception to apply." *Caruso, infra*, at 371; *cf. Chicksaw Nation v. U.S.*, 534 U.S. 84, 94, 122 S. Ct. 528, 535, 151 L. Ed.2d 474 (2001) (describing exceptions to rule requiring court to give effect to every word in a statute when certain words appear through inadvertence or as surplusage).

Just as in *Caruso*, the class action criterion in the section on mandatory abstention quoted above precludes the application of the local controversy exception to the present action. Under § 1332(d)(4)(A)(III)(ii), application of the local controversy exception rests on proof, by the plaintiff, that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against *any* of the defendants on behalf of the same or other persons; . . ." 28 U.S.C. § 1332(d)(4)(A)(III)(ii) (West 2005) (emphasis added). However, during the preceding 3 years, other class actions asserting

9

the same or similar factual allegations have been filed against EIC and other defendants in the present action on behalf of the same or similar persons. The local controversy exception therefore does not apply. *See id*. at § (d)(4)(A)(III)(ii); *Caruso v. Allstate Ins. Co*., 469 F. Supp.2d 364, 370-71 (E.D.La. 2007).

*Abadie*, for example, was filed less than three years ago against EIC and many of the other defendants in this action on behalf of a class that, by definition, included many of the same persons. The suit made similar allegations concerning the terms of coverage and the underpayment of claims. *Cf. Caruso, supra*, at 370 (characterizing class actions filed in this Court over insurance payments allegedly due as a result of Hurricane Katrina as class actions that "undoubtedly assert similar factual allegations . . .")

*Caruso*, which involves valued policy, breach of contract and bad faith claims, *see id*., at 365, similarly precludes application of the local controversy exception to this action. Obviously, there are defendants in this action who are defendants in *Caruso*, and the present action also makes valued policy, breach of contract and bad faith claims, just as *Caruso* does. *See id*., at 365. Therefore, the local controversy exception cannot be applied to the present action, a fact that was foreshadowed by Judge Vance's refusal to enforce the local controversy exception in *Caruso* in light of the existence of other class actions in this court relating to insurance losses caused by Hurricane Katrina. *See id*., at 370-71. *Cf. Bennett, supra*, at *4 n. 12 ("The motion to remand in *Caruso* was ultimately denied because the local controversy exception's requirement that no other class action asserting [the] the same factual allegations against any of the defendants has been filed within [the] three-year period preceding suit was not satisfied.")[4]

---

[4] The other class actions in this court that are mentioned in *Caruso* are *Chauvin* and *Huntley*. Referring to *Chauvin* and *Huntley*, *Caruso* remarks: "These proposed class actions against two of the named defendants in the present action undoubtedly assert similar factual allegations as those set forth here." *Id*., at 370. *Caruso* continues: "Since

The State may urge that the precise meaning of "similar," in the class action criterion, is elusive. If the State makes such an argument, it liberates the Court, which may then consult other sources to illuminate the CAFA's meaning. *Cf*. *Geeslin, supra*, 491 F.3d at 236 ("When the terms of a statute are ambiguous we are allowed to consider other sources that may shed light on the meaning of those terms; . . .")

The Senate Report explicitly addresses the purpose of the "class action" criterion and the Senate Report is a particularly valuable resource for illuminating the criterion's meaning. *See, e.g., Eldred v. Ashcroft*, 537 U.S. 186, 209 n.16, 123 S. Ct. 769, 783 n. 16, 154 L. Ed.2d 683 (2003) (identifying House and Senate Reports as legislative history of high value in interpreting Acts of Congress because Reports represent considered and collective understanding of Members of Congress involved in drafting and studying proposed legislation). It is also a resource that proves that the word "similar" is to be given a liberal interpretation, one that furthers the CAFA's objectives. (EIC discusses the CAFA's objectives below).

Addressing the local controversy exception's class action criterion, the Senate Report observes: "if a controversy results in the filing of multiple class actions, it is a strong signal that those cases may not be of the variety that this exception is intended to address. As such, it is a test for assessing whether a controversy is localized. The Committee wishes to stress that another purpose of this criterion is to ensure that overlapping or competing class actions or class actions making similar factual allegations against the same defendant that would benefit from coordination are not excluded from federal court by the Local Controversy Exception . . . The Committee also wishes to stress that the inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed. The inquiry is whether similar factual

---

they were filed during the three-year period before the instant action, their existence is fatal to plaintiffs' argument that this lawsuit falls under the CAFA's 'local controversy' exception." *Id*., at 370-71.

allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of actions (sic) were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects)." S. Rep., *supra*, at *40,  2005 U.S.C.C.A.N., at 39.

The fact that this Court has already ordered the consolidation of the present action into the consolidated Katrina litigation speaks to the pertinence of these considerations. The consolidation also speaks to the corresponding likelihood that EIC is alluding to prior class actions that do indeed preclude the application of the local controversy exception.

### *b. The Home State Controversy Exception Does Not Apply*

A party urging remand can prove another exception to CAFA jurisdiction in addition to the local controversy exception. Known as the home state exception, this exception is defined by § 1332(d)(4)(B). Section 1332(d)(4)(B) provides that it applies when "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, ***and the primary defendants***, are citizens of the State in which the action was originally filed." ***See*** 28 U.S.C.A. § 1332(d)(4)(B). (Emphasis added).

Though the State bears the burden of proof with regard to this exception, for the purposes of this discussion, EIC will assume that the initial § 1332(d)(4)(B) criterion is satisfied by this action. The remaining criterion, however, the one concerning the citizenship of "the primary defendants . . .", is clearly violated by this action. The "primary defendants" in this action are citizens of foreign states. The home-state exception is therefore inapplicable.

Although the Class Action Fairness Act defines a number of terms, ***cf***. 28 U.S.C.A. § 1332(d)(1), it does not define the term, "primary defendants". With regard to the meaning of the term, "primary defendants", the Senate Report, ***cf. Eldred v. Ashcroft, supra,*** states:

> . . . the Committee intends that 'primary defendants' be interpreted to reach those defendants who are the real 'targets' of the lawsuit-i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term, 'primary defendants' should include any person who has substantial exposure to significant portions of the proposed class in the action . . . (S. Rep., at *43, 2005 U.S.C.C.A.N., at 41).

The State concedes that foreign insurers in this action account for approximately 90% of the coverage at stake in this litigation. *Cf*. State's Memorandum, at pp. 13-14 (touching on assertion that Citizens and Lafayette together account for 7.6% of total market share). Moreover, even the State concedes that a few, key foreign defendants, like State Farm and Allstate, account for a disproportionately large share of the total market. *Id*. This is therefore *not* a home state controversy. Foreign insurers face the great bulk of the liability presented by the action, by the State's own admission. This is therefore plainly a national controversy, and the State has accordingly failed to show that this additional ground for mandatory "abstention" exists.

The Court is therefore under no obligation to remand this action. The State has failed to prove that either exception requires a remand.

Nor is there any tension between this analysis and the Court's analysis of the same issue in *Bennett*. Under the dictionary definition of "primary" used by this Court in *Bennett*, the "primary defendants" in the present action are plainly foreign insurers. As for the discussion, in *Bennett*, of Judge Brady's decision in *Robinson*, in this case, *Robinson* is distinguishable. *See Bennett, supra*, at *6 (citation omitted). The contract of insurance at issue in *Robinson* was a policy of liability insurance, as was the policy of insurance in *Bennett*. The policies of insurance at issue in the present action are policies of property insurance. Therefore, *Bennett* does not compel a different conclusion with regard to the application of the home-state exception. As

stated earlier, the Court is therefore under no obligation to remand this action to Civil District Court.

EIC therefore turns now to the question of discretionary "abstention". *Cf. Bennett, supra*, at *3 (referring to discretion to "abstain" from exercising CAFA jurisdiction).

## 3. <u>IT WOULD BE AN ABUSE OF DISCRETION TO REMAND THIS ACTION TO CDC</u>

The section in the CAFA addressing discretionary abstention reads:

> (3) A district court **may**, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate **and the primary defendants are citizens of the State in which the action was originally filed** based on consideration of –
> (A) whether the claims asserted involve matters of national or interstate interest;
> (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;
> (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;
> (D) whether the action was brought in a forum with a district nexus with the class members, the alleged harm, or the defendants;
> (E) whether the number of citizens in the State [predominate greatly]; and
> (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C.A. § 1332(d)(3) (emphasis added).

There is a passage in the Senate Report that is determinative of the contention that this Court can decline to exercise jurisdiction over the present action on the basis of this section.

Addressing this section, the Senate Report states:  "Second, cases in which more than two thirds of the members of the plaintiff class or one or more of the primary defendants are not citizens of the state in which the action was filed **will be** subject to federal jurisdiction, pursuant to the provisions of subsection 1332(d)(2). Federal courts should be able to hear such lawsuits **because they have a predominantly interstate component** . . ."  S. Rep., at *36, 2005 U.S.C.C.A.N., at 35 (emphasis added). EIC has already demonstrated that the primary defendants are not citizens of Louisiana.  28 U.S.C.A. § 1332(d)(3) therefore has no application to this action.

Accordingly, the plain language of § 1332(d)(3) incorporates a condition precedent to the utilization of subparagraph (d)(3). According to § 1332(d)(3)'s preamble: "A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate **and the primary defendants are citizens of the State in which the action was originally filed** . . ." 28 U.S.C.A. § 1332(d)(3). (Emphasis added).

Thus, a Court may not even consider the discretionary factors unless "the primary defendants are citizens of the State in which the action was originally filed", and EIC has already shown that this condition is not satisfied by the present action. 28 U.S.C.A. § 1332(d)(3).

This "plain language" interpretation of § 1332(d)(3) is further reinforced by other language in the Senate Report. The Report states:

> Finally, there is a middle category of class actions in which more than one-third but fewer than two-thirds of the members of the plaintiff class and the primary defendants are all citizens of the state in which the action was filed. **In such cases**, the numbers alone may not always confirm that the litigation is more fairly characterized as interstate in character. New subsection 1332(d)(3) therefore

> gives federal courts discretion, in the "interests of justice," to decline to exercise jurisdiction **over such cases** based on the consideration of six factors:

S. Rep., at *36, 2005 U.S.C.C.A.N., at 35 (emphasis added).

The limiting language in the foregoing quotation, the language limiting the relevance of the six factors enumerated in § 1332(d)(3) to "such cases", proves that the two conditions in the preamble to subparagraph (d)(3) serve a screening function. They provide that a District Court is without authority to use the "six factors" to evaluate a potential decision to decline to exercise jurisdiction unless the two predicate conditions are met. **Id**. Since EIC has already shown that the second condition is not met, that is to say, that the primary defendants are **not** citizens of the State in which the action was filed, there is no need to address the other condition.

It therefore would be an abuse of discretion to decline to exercise jurisdiction over this action on a discretionary basis. However, there are additional reasons for concluding that it would be an abuse of discretion to abstain from exercising jurisdiction.

First, in the foregoing test, the class action criterion, which favors the defendants, is to be liberally interpreted **in favor of maintaining jurisdiction**, lest "plaintiffs . . . plead around it with creative legal theories." **See** S. Rep., **supra**, at *38, 2005 U.S.C.C.A.N., at 37. This weighs in favor of exercising jurisdiction.

Second, the CAFA embodies an entirely new conception of diversity jurisdiction. The Senate says that the CAFA embodies a more contemporary and balanced doctrine, one the Senate calls "'balanced diversity.'" According to the Senate, this new breed of diversity "allow[s] **a larger number of class actions into federal courts**, while continuing to preserve primary state court jurisdiction over primarily local matters." **See id**., at *6, p. 7. (Emphasis added). The Report stresses that balanced diversity makes diversity jurisdiction more responsive

16

to present-day concerns and more sympathetic to the interests diversity jurisdiction was designed to serve. The Senate says that "balanced diversity" is more responsive to the concerns expressed to the Committee by Professor Walter Dellinger than conventional diversity is. During the Committee's deliberations, Professor Dellinger testified that "class action legislation expanding federal jurisdiction over class actions 'would fulfill the intentions of the Framers because the rationales that underlie the diversity jurisdiction concept apply with equal – if not greater -  force to interstate class actions.'" *See* S. Rep*., at *9, p. 10.

Further noting that the rule of complete diversity was a product, not of constitutional decisions but of policy judgments, judgments it is "the prerogative of Congress to modify . . ." *see id*. (procedural limitations on exercise of diversity jurisdiction are "policy decisions, not constitutional ones"), the Report indicates that the CAFA should be interpreted accordingly. *Cf.* S. Rep., *supra*, at *5, 2005 U.S.C.C.A.N., at 6 (balanced diversity concept advanced by CAFA mirrors primary historical reasons for diversity jurisdiction including reassurance of fairness and of the competence of a federal court to supply impartial tribunal to out-of-state defendant facing suit in state court).

This more contemporary conception of diversity jurisdiction is a crucial yardstick for measuring any motion to refrain from exercising CAFA jurisdiction on discretionary terms. It is impossible to read the Senate Report without being impressed by the Senate's desire to distinguish matters of purely local concern from matters of "national or interstate interest", which explains why § 1332(d)(3)(A) exists.

Section 1332(d)(3)(A) asks whether the claims asserted in the action involve matters of national interest. On this factor, the State's brief is predictably provincial. This Court, however, is a poor audience for an argument that the insurance coverage questions presented by the State's

Complaint are of no interest to the rest of the nation, for in arriving at its water exclusion decision, the Court spent a significant amount of time considering the opinions of other jurisdictions on these same subjects. To now claim that the same issues are of purely parochial concern is unconvincing. The argument lacks the virtue of logical symmetry.

But even if the Court is impressed by the State's argument that insurance regulation has historically been a matter of purely local concern and regulation, there are additional reasons for concluding that it would not be a wise exercise of the Court's discretion to abstain from further action in this litigation.

At the beginning of this brief, for example, EIC highlighted the lengths to which the State has gone to avoid alleging a reason for exercising federal jurisdiction over this controversy. *Cf*. 28 U.S.C.A. § 1332(d)(3)(C) (criterion asking whether action has been pleaded in manner seeking to avoid federal jurisdiction). EIC noted that the State's Memorandum emphasized that the present action was instituted "**pursuant to state law only** . . . for the recovery of funds' paid or anticipated to be paid under the Road Home." State's Memorandum, at p. 5. (Footnote omitted) (emphasis in original).

Thus, the State has plainly endeavored to avoid pleading the action in a way that would suggest a reason for exercising federal jurisdiction. The subject the State has studiously avoided, of course, is the National Flood Insurance Program. The State could easily have alleged that the defendants did not handle such claims properly as WYO companies. Such allegations, however, would have immediately given rise to a basis for removal. The State accordingly avoided any such allegation. 28 U.S.C.A. § 1332(d)(3)(C) therefore weighs against declining to exercise jurisdiction on a discretionary basis. *Cf*. 28 U.S.C.A. § 1332(d)(3)(C).

In addition, § 1332(d)(3)(F) incorporates the prior class action criterion. EIC has already discussed this criterion at length. Suffice it to say that the existence of prior class actions weighs heavily against a decision to abstain from exercising jurisdiction over this action.

There are, in sum, multiple reasons for concluding that it would be an abuse of discretion to decline to exercise jurisdiction over this action on discretionary terms and this argument is thus clearly without merit.

### 4. THE ELEVENTH AMENDMENT DOES NOT FORBID THIS COURT FROM EXERCISING SUBJECT-MATTER JURISDICTION OVER THIS ACTION

Finally, the State argues that this Court is prohibited from exercising jurisdiction over this action by the Eleventh Amendment, which originated in an apprehension shared by the new states. They feared that the federal courts would force them to pay their Revolutionary War debts and thus plunge them into ruin. *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 115 S. Ct. 394, 130 L.Ed.2d 245 (1994). The State of Louisiana concedes that its Eleventh Amendment argument is controversial. *See* State's Memorandum, at p. 26 (acknowledging that "several" courts to which such cases have been removed have ruled that Eleventh Amendment is "inapplicable" to state-initiated actions).

The State's Eleventh Amendment argument is incorrect. *See In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, 488 F.3d 112, 119 (2nd Cir. 2007) ("[S]overeign immunity does not preclude the removal to federal court of a suit filed by a state plaintiff in state court . . ."); *see also South Dakota ex rel. South Dakota R.R. Authority v. Burlington Northern & Santa Fe Ry. Co.*, 280 F. Supp.2d 919 (D.S.D. 2003) (same); *Regents of the University of Minnesota v. Glaxo Wellcome, Inc.*, 58 F. Supp.2d 1036, 1039 (D.Minn. 1999); *Terrebonne Parish School Board v. Mobil Oil Corp.*, No. 89-1983, *1 (E.D.La. Nov. 9, 1989), 1989 WL

140217 (Duplantier, J.) (remarking that the Court is unaware of any case "holding that the Eleventh Amendment prevents removal of a suit filed by a state as a plaintiff.")

The State rests its Eleventh Amendment argument on recent Supreme Court precedents "on sovereign immunity [that] have placed particular emphasis on the dignity and respect owed states as separate sovereigns in our federal system . . ." ***MTBE, supra***, at 118-19 (citations omitted). As the Second Circuit observed in ***MTBE***, however, "[a]ll of these recent opinions . . . concerned suits *against* states that forced them to defend actions prosecuted by private parties. Suits commenced by states", the Second Circuit adds, "stand on a different footing." ***MTBE, supra***, at 119 (italics in original).

The State next argues that the cases that limit the sovereign immunity of the States in State-initiated cases do so only within the context of federal question controversies. ***See*** State's Memorandum, at p. 27. That is false, as EIC will momentarily explain. However, EIC appreciates that there are cases that mention that no Eleventh Amendment immunity applies "'[w]here a federal question is presented . . .'" ***Regents of the University of Minnesota v. Glaxo Wellcome, Inc, supra,*** at 1039 (citation omitted). It is nevertheless incorrect to leap from this language to the conclusion that the Eleventh Amendment bars the exercise of jurisdiction over actions removed on another basis. Not only is this contention contradicted by other authorities cited in ***MTBE*** and ***Regents of the University of Minnesota v. Glaxo Wellcome, Inc, MTBE*** explains the nature of the State's error.

The error lies in the failure to appreciate that the question is not whether the basis for removal rests on a particular ground but rather whether the criteria of ***any***, valid removal statute have been met. ***MTBE, supra***, at 136. The ***MTBE*** court made this point explicitly when it expressly held "that, ***if the criteria of a valid removal statute are met***, sovereign immunity does

not bar the removal of a case commenced by a state in its own courts." *Id*. (Emphasis added). The State's suggestion that federal question jurisdiction provides the only exception to its sovereign immunity is thus wholly without merit.

This brief has demonstrated that a valid removal statute authorizes this removal. To fully appreciate how powerful the Second Circuit's analysis of the State's Eleventh Amendment argument is in light of the existence of that valid basis for removal, it is essential to review ***MTBE*** more thoroughly.

In ***MTBE***, California and New Hampshire instituted actions in their state courts, ***on state law theories of liability***, against manufacturers of methyl tertiary butyl ether, a gasoline additive; their actions alleged significant, toxic contamination of public drinking water supplies. *Id*., at 114-15. The actions were removed and later reported to the Panel on Multidistrict Litigation as possible, tag-along actions. The actions were subsequently transferred to the Southern District of New York for consolidation with other cases in a multidistrict litigation over MTBE. *Id*., at 115.

California and New Hampshire thereafter moved for remand. In due course, the District Court decided that the actions had been properly removed based on federal officer removal and bankruptcy removal principles. Next, however, the Court sought briefs from the parties on the question of sovereign immunity. Eventually, the Court concluded that the States in question were not immune. *Id*.  The District Court expressly held that removal could not be predicated on the basis of complete preemption or a substantial federal question. *Id*.

"This interlocutory appeal followed." *Id*.

The Second Circuit determined that the appeal was jurisdictional and eventually ruled that neither the federal officer removal nor the bankruptcy removal statutes validly supported the removal of California's and New Hampshire's actions. *Id*., at 132-136. The Court further

determined, as the District Court had, that neither complete preemption nor federal question jurisdiction authorized removal. *Id*. In other words, the Court eventually concluded that the actions were not removable on any basis. The Second Circuit accordingly vacated the District Court's order maintaining jurisdiction and directed the District Court to return the actions "to the forums from which they were removed." *Id*. at 136.

In arriving at its various conclusions, however, the Court stressed a number of pivotal principles that directly answer the State's contention that this Court is forbidden to exercise jurisdiction over this action by the Eleventh Amendment.

EIC has already alluded to two of these key principles, namely, that overwhelming authority declares that the Eleventh Amendment does not preclude the removal of suits filed by state plaintiffs in state courts and, second, that the dignity and respect owed states as residuary sovereigns does not alter this principle. *See id*., at 118-19.

*MTBE* adds that there is authority from the Fifth Circuit supporting these views. *See id*., at 119 (citing **Huber Hunt & Nichols, Inc.** for proposition that Eleventh Amendment is inapplicable when state is plaintiff).[5] A number of the Second Circuit's other observations are instructive and illuminating. For example, the Court remarks that one of the reasons underlying the majority rule is that "removal of these cases will not subject the states to the indignity or fiscal pain of being subject to a money judgment or an injunction—the core concerns underlying the sovereign immunity to which they are entitled." *Id*., at 119.  In addition, not only do the two cases on which the State relies so heavily, *Steelcase* and *Moore,* constitute a distinct minority within the broader body of Eleventh Amendment jurisprudence authorizing the exercise of

---

[5] ***Huber, Hunt & Nichols, Inc. v. Architectural Stone Co. Inc.***, 625 F.2d 22, 24 n. 6 (5th Cir. 1980) ("Of course, the eleventh amendment is inapplicable where a state is a plaintiff . . .")

jurisdiction, "whatever force these cases had is undermined by the fact that *Steelcase* has been overruled by the Ninth Circuit." ***MTBE, supra,*** at 120.

Finally, the Second Circuit stresses that in state-initiated cases, the core question is not so much the Eleventh Amendment one but rather "whether the removal . . . has, in fact, been authorized by Congress." ***Id***., at 121. Once a valid basis for removal is found to exist, the Eleventh Amendment constitutes no impediment to the exercise of jurisdiction. ***Id***. "Once a state — here [Louisiana] -- ha[s] made and acted upon the decision to commence a lawsuit[,] [t]his voluntary act subjects [it] to the consequences that Congress may legitimately attach to such an action." ***See id***., at 121.

As stated earlier, the ***MTBE*** Court ultimately concluded that the removals in ***MTBE*** were not authorized, but to depict ***MTBE*** as an opinion that held that the Eleventh Amendment only authorizes removals based on federal question jurisdiction is unbelievable. ***See id***., at 136.

## 5. <u>CONCLUSION</u>

Unlike the removals in ***MTBE***, the removal in this case was plainly authorized. In addition, the State's suggestion that this action is exempt for removal is incorrect for all of the reasons stated in section 1 of this memorandum. For the many reasons stated in sections two through four, the State's Motion to Remand should be denied. Congress specified a more liberal approach to the jurisdiction conferred by the Class Action Fairness Act than it has of removals generally. ***See*** S. Rep. at *43, 2005 U.S.C.C.A.N., at 41 ("Overall, the new section 1332(d) is intended to expand ***substantially*** federal court jurisdiction over class actions. Its provisions ***should be read broadly***, ***with a strong preference*** that interstate class actions should be heard in

a federal court if properly removed by any defendant.") For all of these reasons, the State's Motion to Remand must be denied, and EIC prays for Order accordingly.

Respectfully submitted,

_s/ Dominic J. Gianna_
Dominic J. Gianna, #6063
Alan Dean Weinberger # 13331
**MIDDLEBERG, RIDDLE & GIANNA**
201 St. Charles Avenue, Suite 3100
New Orleans, Louisiana  70170-3100
Telephone:  (504) 525-7200
**_Attorneys for Electric Insurance Company_**

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2007, I electronically filed the foregoing Memorandum of Electric Insurance Company Opposing Motion to Remand with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record in this matter that accept service via the electronic filing system.  I further certify that I mailed the foregoing document and notice of electronic filing by first-class mail to all counsel of record who are not participants in the CM/ECF system.

_s/ Dominic J. Gianna_

ND: 4846-4186-5730, v.  1