UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § § § § | CIVIL ACTION  NO.  05-4182 "K"(2) |
| | | JUDGE DUVAL |
| | | MAGISTRATE WILKINSON |
| PERTAINS TO:  ROAD HOME Louisiana State  C.A. No. 07-5528 | | |

**DEFENDANTS ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ENCOMPASS INSURANCE COMPANY, ENCOMPASS INSURANCE COMPANY OF AMERICA, AND ENCOMPASS PROPERTY AND CASUALTY COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Dated:  November 6, 2007

Judy Y. Barrasso, #2814
Edward R. Wicker, Jr., #27138
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700

*Attorneys for Allstate Insurance Company,*
*Allstate Indemnity Company,*
*Encompass Insurance Company,*
*Encompass Insurance Company of America, and*
*Encompass Property and Casualty Company*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.     Plaintiff Fails To Meet Its Burden Of Establishing The Applicability Of The "Local Controversy Exception" To CAFA. ............................................................. 3

     A.     Plaintiff fails to establish the nonexistence of a prior putative class action involving "the same or similar factual allegations." ....................... 4

     B.     Plaintiff cannot establish that "significant relief" is sought from any Louisiana Defendant whose alleged conduct forms a "significant basis" for the claims asserted by the proposed class. ........................................... 7

     C.     Plaintiff has failed to meet its burden of establishing that two-thirds of the putative class members were citizens of Louisiana at the time Plaintiff's Petition was filed ...................................................................... 14

II.     As A Matter Of Law, CAFA's Discretionary Exception Cannot Be Invoked Because Plaintiff Has Not Met The Threshold Requirements. ............................. 17

III.     Plaintiff Did Not File A *Parens Patriae* Action; Rather, As Master Of Its Petition, Plaintiff Voluntarily Chose To File A Putative Class Action Triggering CAFA Jurisdiction. ............................................................................. 18

IV.     This Action Is Quintessentially An *Inter*state One. ............................................. 22

V.     Plaintiff's Attempt To Rely On McCarran-Ferguson Also Fails. ......................... 23

VI.     Plaintiff's Eleventh Amendment Argument Has Been Rejected By Every Circuit Court Of Appeals To Address It. ............................................................. 24

CONCLUSION .................................................................................................................. 28

# TABLE OF AUTHORITIES

## Cases

*Accardo v. Lafayette Ins. Co.*, No. 06-8568, 2007 U.S. Dist. LEXIS 6859 (E.D. La. Jan. 30, 2007) ....................................................................................................................12, 13

*Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 U.S. Dist. LEXIS 16073 (E.D. La. Mar. 6, 2007) ...........................................................................................................................14

*Banco y Agencia de Financiamiento de la Vivienda v. Urbanizadora Villalba*, 681 F.Supp. 981 (D.P.R. 1988)..................................................................................................25

*Berthelot v. Boh Brothers Constr. Co.,* 2006 U.S. Dist. LEXIS 51603 (E.D. La. Jun. 1, 2006) ...........................................................................................................................13

*Calif. v. Atlantic Richfield Co.*, 488 F.3d 112 (2nd Cir. 2007)................................................24, 26

*Calif. v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004) ...................................................24, 25, 26, 27

*Calif. v. Steelcase*, 792 F.Supp. 84 (C.D. Cal. 1992)...............................................................24, 26

*In re PG&E Corp.*, 281 B.R. 1 (Bankr. N.D. Cal. 2002)..........................................................25, 28

*Caruso v. Allstate Insurance Co.*, 469 F.Supp.2d 364 (E.D. La. 2007) .............................9, 10, 11

*Caruso v. Allstate Ins. Co.*, No. 06-2613, 2007 U.S. Dist. LEXIS 56760 (E.D. La. Aug. 3, 2007) ...........................................................................................................................14

*Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256 (5th Cir. 1995) .......................19, 21, 22

*Chehardy v. Wooley*, Case Nos. 05-1140, 05-1162, 05-1163 (M.D. La. Jan. 27, 2006) ................8

*Chetta v. State Farm & Cas. Co.*, No. 06-4662, [2007 WL 1233546] (E.D. La. Apr. 25, 2007) ...........................................................................................................................14

*City & County of San Francisco v. PG&E Corp.*, 433 F.3d 1115 (9th Cir. 2006).......................26

*Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).......................................................12

*Comm'r v. Keystone Consol. Indus.*, 508 U.S. 152 (1993) ...........................................................18

*Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529 (5th Cir.), *cert. denied,* 126 S. Ct. 2945 (2006)..........................................................................................................................12

*Dastugue v. Allstate Ins. Co.*, No. 06-9046, Doc. No. 12 (E.D. La. Apr. 5, 2007) ......................14

*Defourneaux v. Metro, Prop. & Cas. Ins. Co.*, 2006 U.S. Dist. LEXIS 61550 (E.D. La. Aug. 30, 2006) ................................................................................................13

*Dobson v. Allstate Insurance Co.*, 2006 U.S. Dist. LEXIS 55832 (E.D. La. Jul. 21, 2006) ........18

*Escoe v. State Farm Fire & Cas. Co.*, 2007 U.S. Dist. LEXIS 30088 (E.D. La. Apr. 23, 2007) ......................................................................................................9

*Evans v. Walter, Indus.*, 449 F.3d 1159 (11th Cir. 2006) ........................................................3, 9

*Frazier v. Pioneer Ams. LLC*, 455 F.3d 542 (5th Cir. 2006) ........................................................17

*Gauntt v. La. Citizens Prop. Ins. Corp.,* No. 06-7817, 2007b WL 128801 (E.D. La. Jan. 16, 2007) ........................................................................................ 9-10, 18

*Henry v. Allstate Ins. Co.*, 2007 U.S. Dist. LEXIS 57822 (E.D. La. Aug. 8, 2007).....................14

*Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22 (5th Cir. 1980) ...........26, 27

*Humana Inc. v. Forsyth*, 525 U.S. 299 (1991)..............................................................................23

*In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002)........................................................12

*In re Rezulin Prods. Liab. Litig.*, 133 F.Supp.2d 272 (S.D.N.Y. 2001) ...................................25, 27

*Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 41614 (C.D. Cal. Nov. 21, 2005)...................9

*Keating v. Shell Chem. Co.*, 610 F.2d 328 (5th Cir. 1980)............................................................18

*Martin Ins. Agency, Inc. v. Prudential Reins. Co.*, 910 F.2d 249 (5th Cir. 1990) ....................3, 23

*Mo. v. Prudential Health Care Plan, Inc.*, 2000 U.S. Dist. LEXIS 22406 (E.D. Mo. Apr. 13, 2000) .................................................................................................25

*Moore v. Abbott Labs., Inc.*, 900 F.Supp. 26 (S.D. Miss. 1995)...............................................24, 25

*Munich Am. Reins. Co. v. Crawford*, 141 F.3d 585 (5th Cir. 1998)..............................................23

*Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689 (D.C. Cir. 1971) .............20

*Okla. v. Magnolia Marine Transport Co.*, 359 F.3d 1237 (10th Cir. 2004).................................26

*Penn. v. Porter*, 659 F.2d 306 (3d Cr. 1981) ..............................................................................19

*Preston v. Tenet Healthsystems Mem. Medial Ctr., Inc.,* 485 F.3d  793 (5th Cir. 2007) (*Preston I*) ................................................................................2, 3, 4, 14, 15, 16

*Preston v. Tenet Healthsystems Mem. Medical Ctr., Inc.*, 485 F.3d 804 (5th Cir. 2007)
(*Preston II*).................................................................................................4, 15, 16, 23

*Rapanos v. United States*, 126 S.Ct. 2208 (2006)..........................................................20

*Regents of the University of Minn. v. Glaxo Wellcome, Inc.*, 58 F.Supp.2d 1036 (D.
Minn. 1999)..........................................................................................................24

*Regents of Univ. of Calif. v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997) .............................26

*Robinson v. Cheetah Transp.*, 2006 U.S. Dist. LEXIS 10129 (W.D. La. Feb. 24, 2006) .............11

*Sch. Bd. of St. Charles v. Quala Sys., Inc.*, 159 F.Supp.2d 295 (E.D. La. 2001)..........................26

*S.D. v. Burlington N. & Santa Fe Ry.*, 280 F.Supp.2d 919 (D.S.D. 2003) ....................................25

*Spiers v. Liberty Mut. Fire Ins. Co.*, No. 06-4493, 2006 U.S. Dist. LEXIS 95248 (E.D.
La. Nov. 21, 2006) ...............................................................................................14

*Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other
grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000)..........................12

*Terrebonne v. Allstate Ins. Co.,* No. 06-4697, 2007 U.S. Dist. LEXIS 58383 (E.D. La.
Jul. 31, 2007).......................................................................................................14

*Terrebonne Parish School Board v. Mobil Oil Corp.*, No. 89-1983, 1989 U.S. Dist.
LEXIS 13703 (E.D. La. Nov. 9, 1989) ....................................................................14, 27

*United States v. Collins*, 40 F.3d 95 (5th Cir. 1994)......................................................23

*Vaz v. Allstate Prop. & Cas. Co.*, No. 06-481, Doc. No. 26 (S.D. Miss. Oct. 25, 2006) ..............14

*Vt. v. Oncor Communs.*, 166 F.R.D. 313 (D. Vt. 1996)...............................................25

*Va. v. Bulgartabac Holding Group*, 360 F.Supp.2d 791 (E.D. Va. 2005)....................................25

## OTHER AUTHORITIES

15 U.S.C. 1012  ...................................................................................................23

28 U.S.C. § 1332.................................................................................................1, 3

28 U.S.C. § 1332(d) .......................................................................................1, 4, 15, 17, 21

28 U.S.C. § 1332(d)(4) ....................................................................................................4

28 U.S.C. § 1332(d)(11) ................................................................................................19

28 U.S.C. § 1367 ...........................................................................................................26

151 Cong.Rec. H731 ..................................................................................................7, 11

151 Cong.Rec. S1157, S1162, 2005 WL 309648 ....................................................20, 21

La. Code Civ. Proc. art. 463 ..........................................................................................13

Louisiana Code art. 591 .................................................................................................21

Professions Code Section 17200 ....................................................................................19

S. Rep. No. 109-14 ...............................................................................................7, 11, 24

Defendants Allstate Insurance Company, Allstate Indemnity Company, Encompass Insurance Company, Encompass Insurance Company of America, and Encompass Property and Casualty Company hereby submit this Response in Opposition to Plaintiff's Motion to Remand.[1]

## INTRODUCTION

Plaintiff's remand motion should be denied. Plaintiff brought this action against 214 Insurance Company Defendants as a class action, thus bringing the case squarely within this Court's Class Action Fairness Act ("CAFA") removal jurisdiction.

Plaintiff does not dispute that Allstate's Notice of Removal successfully established each of the three CAFA prerequisites for removing this action to federal court.[2]  Instead, Plaintiff argues that this Court should apply the local controversy exception to CAFA.  But the local controversy exception does not apply as a matter of law because Plaintiff cannot establish the absence of similar class actions filed in the past three years.  In fact, dozens of similar class

---

[1]   These Defendants also concur in, and join in, the Memorandum of Law of State Farm Fire and Casualty Company and State Farm General Insurance Company in Opposition to Plaintiff's Motion to Remand.

[2]   While Plaintiff purports to challenge whether the diversity requirement of CAFA has been satisfied, it never contends that minimal diversity is not present.  Instead, it asserts that "there can be no diversity under CAFA because the State 'is not a citizen of itself.'" (Pl.'s Mem at 33.)  This argument, however, which relies on cases addressing different statutory provisions that have been interpreted as requiring complete diversity, is completely irrelevant:  CAFA requires only that "any member of the class" be diverse from "any defendant," 28 U.S.C. § 1332(d)(2)(A), not that complete diversity exists. Clearly, there are members of the putative class (*e.g.*, the individuals who plaintiff argues give rise to CAFA's "local controversy" exception) who are diverse from at least one defendant.  Moreover, Plaintiff's silence on these issues demonstrates that Allstate did in fact properly establish the three prerequisites to CAFA jurisdiction in its Notice of Removal, which are:  (1) the putative class exceeds 100; (2) at least one of the members of the proposed class has a different citizenship from at least one Defendant; and (3) the amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d).  Allstate incorporates the arguments and facts in its Notice of Removal herein, but will not elaborate on those points given Plaintiff's failure to even attempt to rebut them.

actions challenging insurance claims practices and payouts in the wake of Hurricane Katrina have already been filed and some are pending in this very Court.

The local controversy exception also fails because Plaintiff cannot establish that "significant relief" is sought from a Louisiana Defendant.  Although Plaintiff argues that Defendant Louisiana Citizens Property Insurance Corporation ("Louisiana Citizens") is such a Defendant, the putative class in the main seeks relief from over 200 non-Louisiana insurers whose states of incorporation and principal places of business are scattered throughout the United States.  And the local controversy exception also fails because Plaintiff has not provided any factual support to demonstrate that at least two-thirds of the putative class were Louisiana domiciliaries at the time the Petition was filed.  *See Preston v. Tenet Healthsystems Mem. Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007) (*Preston I*) (reversing the District Court's order remanding the case, finding that the plaintiff had failed to establish exceptions to CAFA applied).

Plaintiff also seeks to justify remand by calling its pleading a *parens patriae* action.  This fails for two reasons.  First, the case was brought by the State in its putative capacity as a partial assignee and subrogee as a class action on behalf of the individual assignors.  It is not a *parens patriae* action because it does not seek relief on behalf of the general population of the State.  Second, CAFA contains no exception for *parens patriae* actions.  Indeed, CAFA's legislative history reveals that such an exception was proposed, but was rejected by Congress because such an exception could easily subvert CAFA's goal of providing a federal forum for class actions involving citizens of different states.

Plaintiff also argues this suit only involves *intra*state concerns and, as such, should fall outside CAFA jurisdiction.  But it is clear that this suit is quintessentially an *inter*state one.

Approximately 203 out of state insurers from 31 states are named as defendants.  In addition, the Road Home Program funds at issue are *federal* funds.

Plaintiff's assertion that there is a conflict between the McCarran-Ferguson Act and CAFA is also without merit.  As the Fifth Circuit has repeatedly held, McCarran-Ferguson is a statement of Congressional intent favoring state regulation of insurance companies and exempting the business of insurance from federal antitrust regulation.  It is not a limitation on federal diversity jurisdiction in connection with actions against insurance companies; indeed such cases are routinely removed to this and other federal district courts under 28 U.S.C. § 1332 and CAFA.  *Martin Ins. Agency, Inc. v. Prudential Reins. Co.*, 910 F.2d 249, 254 (5th Cir. 1990) ("The McCarran-Ferguson Act did not remove diversity jurisdiction from the federal courts in insurance matters, but encourages the states to formulate their own systems to regulate insurers doing business in their states").

Finally, Plaintiff argues that the Eleventh Amendment prevents this removal despite the fact that every Circuit Court of Appeals to address this issue, including the Fifth Circuit, has rejected those contentions.  Indeed, one of the two cases upon which Plaintiff relies has been overruled, and both have been criticized and rejected by every court to address them.

For all these reasons, as more fully set forth below, this case falls squarely within the Court's CAFA jurisdiction, and Plaintiff's Motion to Remand should be denied.

## ARGUMENT

## I.    Plaintiff Fails To Meet Its Burden Of Establishing The Applicability Of The "Local Controversy Exception" To CAFA.

CAFA's local controversy exception is a very "narrow one."  *Evans v. Walter, Indus.*, 449 F.3d 1159, 1163 (11th Cir. 2006).  Plaintiff bears the burden of establishing each and every one of the prerequisites to this narrow exception to CAFA jurisdiction. *See, e.g., Preston I*, 485

F.3d at 797 (reversing the District Court's order remanding the case, finding that the plaintiff had failed to establish exceptions to CAFA applied, and further noting that "parties moving to remand the class action to state court must prove that the CAFA exceptions to federal jurisdiction divests the district court of subject matter jurisdiction") (citing *Preston II*, 485 F.3d 804, 812 (5th Cir. 2007)).

The local controversy exception applies if (1) greater than two-thirds of the members of the putative class are citizens of the state in which the action was filed; (2) at least one defendant is a defendant from whom members of the class seek significant relief, whose alleged conduct forms a significant basis of the asserted claims, and who is a citizen of the state in which the action was filed; (3) the principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within three years preceding the filing of the instant class action.  28 U.S.C. § 1332(d)(4).  **All four** requirements must be met for the exception to apply.  *Id.*; *see also Preston I*, 485 F.3d at 797.  Here, Plaintiff has failed to meet its burden of establishing at least three of these four requirements.

### A.    Plaintiff fails to establish the nonexistence of a prior putative class action involving "the same or similar factual allegations."

The local controversy exception requires Plaintiff to establish that "during the 3-year period preceding the filing of [this] class action, no other class action has been filed asserting the same or ***similar factual allegations*** against *any* of the defendants on behalf of the same or ***other persons***."  28 U.S.C. § 1332(d)(4)(A)(ii) (emphasis added).  Here, there can be no dispute that over two dozen such actions, all alleging "similar factual allegations" have been filed against at least one of the 214 Defendants (and in fact most of the 214 Defendants).  (*See* Allstate's Not. of Removal at ¶ 26 (setting forth a non-exclusive list of nearly two dozen such putative class

actions).)  Nor can it be disputed that these putative class actions are on behalf of these same putative class members (some of whom are probably named representatives) or at a minimum on behalf of "other persons."

Here, dozens of class actions have been filed within the last three years that contain the same or similar factual allegations.  Dozens of prior class actions seek recovery of amounts that Plaintiff alleges the Insurance Company Defendants supposedly should have paid to policyholders under their insurance agreements in connection with property damage resulting from Hurricanes Katrina and Rita.  Like the present action, these class actions seek determinations that the damage to policyholders' properties was caused by "windstorm," "storm surge," or breaches of the "Greater New Orleans area levee system," rather than by "flood."  (Am. Petition ¶¶ 46(a)-(d).)  Also like the present action, these class actions seek determinations that policyholders were entitled to recover the full values of their homes under "All Risk" policies issued by the Insurance Company Defendants, and pursuant to "Louisiana's Valued Policy Law."  (Am. Petition ¶¶ 46(e)-(f).)

In fact, some of these putative class actions seek nearly identical relief.  (Not. of Removal at ¶ 29 (comparing the relief sought in this action and in *Chehardy*).)  In other words, this putative class action is virtually identical to the dozens of class actions already brought by insureds of the Insurance Company Defendants and involves many of the same insurance contracts at issue in those other cases.  Indeed, this case was transferred to Section K of this Court and consolidated within the Insurance Track of the umbrella precisely because it contains the same type of allegations as numerous pending class actions already present in "In re Katrina Canal Breaches Consolidated Litigation."

Plaintiff does not meaningfully contest the similarity of its factual allegations to the allegations in these other class actions, nor could it.  (*See* Allstate's Not. of Removal at ¶¶ 29–30 (comparing the complaints).)  Instead, despite the highly similar class definitions and significant overlap in factual allegations, Plaintiff argues that this case somehow stands on a different footing because it was brought by the State and involves the Road Home Program.  (Pl.'s Mem. at 16-18.)  This argument is misplaced for two fundamental reasons.  First,  there is no escaping the fact that Plaintiff is suing as a putative assignee of claims for coverage for property damage resulting from Hurricanes Katrina and Rita.  In other words, Plaintiff claims to be assigned the very same claims that were at issue in other class actions against one or more of the defendants.  And Plaintiff purports to represent putative class members who would fall within the same classes—or perhaps even serve as class representatives—alleged in these other suits.

Second, Plaintiff's argument ignores the "or other persons" language of CAFA.  So long as there are multiple class actions involving (as here) the same or similar basic allegations brought on behalf of "other persons," the local controversy exception to CAFA is inapplicable. It cannot be disputed that numerous class actions have been filed claiming that the Insurance Company Defendants did not adequately compensate policyholders under their homeowners insurance policies for property damage caused by Hurricanes Katrina and Rita.  (Allstate's Not. of Removal at ¶ 26.)  Nor can Plaintiff dispute that it brought this class action "to enforce state law contractual obligations owed by the Insurance Company Defendants under 'All-Risk' insurance policies," of which Plaintiff claims to be a partial assignee and subrogee.  (Am. Petition ¶¶ 1, 11.)

CAFA's legislative history also demonstrates that Plaintiff's "creative legal theories" regarding the Road Home Program are insufficient to satisfy the local controversy exception:

The final factor is whether one or more class actions asserting the same or similar claims on behalf of the same or other persons have been filed in the last three years.  The purpose of this factor is to determine whether a matter should be subject to Federal jurisdiction so that it can be coordinated with other overlapping and parallel class actions. . . .  It is the sponsors' intentions that this factor be broadly interpreted and that plaintiffs not be able to plead around it with creative legal theories. . . .  ***I would like to stress that the inquiry under this criterion should not be whether identical or nearly identical class actions have been filed. Rather, the inquiry is whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of action were asserted or whether the proposed plaintiff classes in the prior case were the same.***

151 Cong. Rec. H731 (emphasis added); *see also* S. Rep. No. 109-14, at 35, 38 and 40.

Although CAFA only requires one such putative class action to have been filed in order to render the local controversy exception inapplicable, here dozens of such actions have been filed against various of the Insurance Company Defendants.  This essential requirement for the local controversy exception is, therefore, wholly lacking.  For this reason alone, this Court should deny Plaintiff's Motion to Remand, and the Court need not even address the remaining local controversy prerequisites.

**B.**     **Plaintiff cannot establish that "significant relief" is sought from any Louisiana Defendant whose alleged conduct forms a "significant basis" for the claims asserted by the proposed class.**

The putative class is not seeking "significant relief" from any Louisiana entity. Plaintiff's reliance on Louisiana Citizens to establish this element is flawed because the undisputed facts demonstrate that the relief (if any) being sought from Louisiana Defendants is at best insignificant and ancillary to the focus of this suit which is directed at 203 non-Louisiana Defendants (95% of the Defendants being non-Louisiana entities).

Plaintiff bears the burden of establishing that the putative class is seeking significant relief from a Louisiana entity, but Plaintiff has failed to provide any *factual* evidence showing that even one putative class member is insured by a Louisiana Defendant.  As will be noted below, Plaintiff's

reliance on "Exhibit A" does not meet its burden, especially given that Plaintiff has failed to provide Exhibit A to any Defendant.   Plaintiff's conjecture and speculation about what percentage of the putative class may be seeking relief from Louisiana Defendants is just that— inadmissible speculation and conjecture that does not satisfy Plaintiff's burden.

Moreover, it is axiomatic that a given homeowner has a claim only against *its* insurer: each claim is based either on an insurance contract between one insured and one insurer or on a statutory duty arising out of that insurance relationship.   Thus, only some subset of the overall class would have a claim against a Louisiana insurer.   Further, the undisputed facts demonstrate that the putative class as a whole is not seeking significant relief from any Louisiana Defendant. Plaintiff has sued 214 Insurance Company Defendants—203 of which are non-Louisiana insurers.   (Am. Petition ¶¶ 18, 20.)   These 203 non-Louisiana insurers represent 95% of the Defendants and well over 90% of the Louisiana homeowners insurance market.[3]   In fact, Plaintiff alleges that the Insurance Company Defendants represent *31* of the 50 states and also the state of "New England."   (Am. Petition ¶ 18.)   Further, State Farm Insurance Group and Allstate Insurance Group, who are comprised of certain entities, most of which are named as Insurance Company Defendants herein, combine to represent over 50% of the Louisiana homeowners insurance marketplace.   (Pl.'s Mem. at 14-16; Allstate's Not. of Removal at ¶¶ 20, 33-37.)

---

[3]   Data supporting this point comes from Plaintiff's own agency, the Louisiana Department of Insurance ("La. DOI"), which filed market share data in *Chehardy* that demonstrates that this putative class action is not seeking "significant relief" from Louisiana defendants.   *See* Docket Entry 149 in *Chehardy v. Wooley*, Case Nos. 05-1140, 05-1162, 05-1163 (M.D. La. Jan. 27, 2006).   The first report contained in that filing by the La. DOI listed all homeowners insurers who wrote or sold insurance in Louisiana in 2004 in order of the "Total Subject Premium" written by that entity as of their respective March 1, 2005 tax reports.   (*Id.* at 3-9.)   A copy of that filing was attached to Allstate's Notice of Removal as Exhibit "E".   This report shows that only 6 of the top 100 homeowners insurers were Louisiana entities.   (*Id.*)   The 94 *non*-Louisiana entities were responsible for an overwhelming 89.9% of the 2004 written premium ($1,217,924,874 of $1,354,015,842).   (*Id.*; *see also* Allstate's Not. of Rem. ¶¶ 33-37.)

Based on these undisputed facts, the only "significant relief" being sought in this case is from non-Louisiana entities.

More importantly, the courts that have construed CAFA's "significant relief" phrase have, in accord with this common sense principle, held that the relief sought against a defendant is "significant" only when "the relief sought against that defendant is a significant portion of the relief sought by the class." *Escoe v. State Farm Fire & Cas. Co.*, 2007 U.S. Dist. LEXIS 30088, at *7 (E.D. La. Apr. 23, 2007) (holding the non-diverse agent could not meet the significant relief test); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006) ("a class seeks 'significant relief' against a defendant when the relief sought against that defendant is a significant portion of the entire relief sought by the class") (citation omitted); *Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 41614, at *31-35 (C.D. Cal. Nov. 18, 2005) (same).

Plaintiff relies almost exclusively on one district court decision to argue that Louisiana Citizens is a "significant defendant."  (Pl.'s Mem. at 13-16 (relying on *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364 (E.D. La. 2007)).  But *Caruso* is both factually inapposite and wrongly decided as a matter of law.  Factually, *Caruso* was a case that only involved six defendants, two of which were alleged to be Louisiana insurers, including Louisiana Citizens.  *Caruso*, 469 F. Supp. 2d at 365.  Accordingly, in *Caruso* 33% of the defendants were alleged to be Louisiana entities whereas here a mere 11 of the 214 defendants, or 5%, are alleged to be Louisiana entities.  Similarly, the market share data upon which the *Caruso* court relied is not comparable to the data here.  In *Caruso*, the Louisiana entities had 9 percent of the market compared to the non-Louisiana entities' approximate 41%.  Thus, in *Caruso*, the market-share ratio of Louisiana entities to non-Louisiana entities was roughly 1:4.  Here, in vast contrast, the market-share ratio of the alleged Louisiana entities to the non-Louisiana entities is, at most, 1:10.

Consequently, this case is more squarely aligned with *Gauntt*, where the court found that the "significant relief" test was not met.  *Gauntt v. La. Citizens Prop. ins. Corp.,* No. 06-7817, 2007 WL 128801 at *2 (E.D. La. Jan. 16, 2007) (denying motion to remand, holding jurisdiction was proper under CAFA and noting this exception was not met where the defendants presented data showing defendants' respective homeowners insurance market shares were: 32.3% for State Farm and 20.6% for Allstate (the non-Louisiana defendants), and only 7.6% combined for Lafayette and Citizens (the Louisiana defendants)).   Here, the percentages weigh even more heavily toward the non-Louisiana entities than they did in *Gauntt* and, therefore, this Court should follow Judge Berrigan's well-reasoned decision in *Gauntt*.   *Id.* (denying motion to remand and stating:  "[t]he market share statistics cited above show that it is likely that only a small portion of the members of the putative class were harmed by the Louisiana defendants and, as a result, the relief sought from them is relatively small as compared to the relief sought from the out-of-state defendants").

Moreover, the *Caruso* court's analysis of CAFA was based on its belief that the local controversy exception "requires a significant defendant to be from the forum state."  *Caruso*, 469 F. Supp. 2d at 368.   But CAFA requires that "significant *relief*" be sought from an in-state citizen, not that the in-state citizen be a "significant defendant."   This mistake led the court down two incorrect paths.   First, the court defined "significance" by reference to the definition of "*primary* defendant"—a concept that is relevant to CAFA's separate and distinct "home state" exception—not the local controversy exception at issue here.  *Id.* at 369-70.   Second, in finding that Louisiana Citizens was a "significant defendant," the court compared its 7.5% share to Allstate's 14% share, rather than to the whole of relief sought from all the other defendants combined.  *Id.*   Clearly, the *Gauntt* court's conclusion that "significant relief" was not being

sought from Louisiana Citizens in light of similar market share data is better reasoned and more consistent with the statutory language and intent of CAFA.  *Gauntt*, 2007 WL 128801 at *2 (E.D. La. Jan. 16, 2007) (denying motion to remand).

The legislative history discussing this provision of CAFA makes clear that the existence of these 11 Louisiana insurers amongst the 214 Insurance Company Defendants is not sufficient to meet the "significant relief" test.  The Senate Committee Report explains the "significant relief" criteria as follows:

> Under the second criterion, there must be at least one real local defendant.  By that the Committee intends that the local defendant must be a ***primary focus*** - not just a peripheral defendant.  The defendant must be a target from whom significant relief is sought by the class ***as opposed to just a subset of the class membership***, as well as being a defendant whose alleged conduct forms a significant basis for the claims asserted by the class.

S. Rep. 109-14, at 40 (emphasis added); *see also Robinson v. Cheetah Transp.*, 2006 U.S. Dist. LEXIS 10129, at *11-12 (W.D. La. Feb. 24, 2006) (discussing this legislative history).

Representative James Sensenbrenner, Chairman of the House Judiciary Committee and a principal CAFA sponsor in the House of Representatives, made a similar point in a colloquy on the House floor immediately prior to that body's CAFA vote.  Representative Sensenbrenner stated that a class action in which the local defendant "had contact with only some of the purported class members," and in which most of the relief at issue was being sought from the out-of-state defendants, would not satisfy the requirements for application of the local controversy exception.  151 Cong. Rec. H731 (2005); *see also* S. Rep. 109-14, at 40 (if a defendant "had contact with only some purported class members," that defendant "would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole").  That is precisely the situation here.

On that alone, it is clear that Plaintiff cannot meet its burden of establishing that the local controversy exception applies, and Plaintiff's Motion to Remand should be denied.

Alternatively, even if this Court were to conclude that "significant relief" is sought from a Louisiana defendant and concludes that it is, then the Court should find that the Louisiana Defendants were fraudulently misjoined for all the reasons stated in Allstate's Notice of Removal.  (Allstate's Not. of Removal at ¶¶ 47-51.)[4]  Where, as here, parallel but unrelated claims are joined against separate diverse and non-diverse defendants, the claims against the non-diverse defendants are considered fraudulently misjoined and cannot serve as a basis for defeating federal jurisdiction.  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002); *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006), *cert. denied,* 126 S. Ct. 2945 (2006).

In *Accardo v. Lafayette Insurance Co.*, the Court applied the doctrine of fraudulent misjoinder to claims brought against 18 different insurance company defendants arising out of Hurricane Katrina property, holding that the presence of a non-diverse defendant did not defeat diversity jurisdiction.  No. 06-8568, 2007 U.S. Dist. LEXIS 6859, at *20-21 (E.D. La. Jan. 30, 2007) (Vance, J.); *see also Berthelot v. Boh Brothers Constr. Co.,* 2006 U.S. Dist. LEXIS 51603, at *37-38 (E.D. La. Jun. 1, 2006) (Duval, J.) (applying the doctrine of fraudulent misjoinder);

---

[4]    Because this case falls squarely within this Court's CAFA jurisdiction and because Plaintiff cannot establish each of the elements for an exception to CAFA to apply (particularly the requirement of no prior class actions containing similar factual allegations), this Court need not reach the question whether the Louisiana Defendants were fraudulently misjoined.  If the question were to be addressed, however, this Court should find that the presence of the Louisiana Defendants does not defeat CAFA removal jurisdiction because the Louisiana Defendants were not properly joined.

*Defourneaux v. Metro. Prop. & Cas. Ins. Co*., 2006 U.S. Dist. LEXIS 61550, at *2 (E.D. La. Aug. 30, 2006) (Feldman, J.) (same).

Plaintiff's attempt to distinguish *Accardo* fails on two important fronts.  First, while the *Accardo* court relied upon Louisiana's joinder rules in reaching its decision (Pl.'s Mem. at 34-35), the *Accardo* court found its decision would be the same under federal joinder rules given that the rules were substantively the same.  *Accardo*, 2007 U.S. Dist. LEXIS 6859, at *13. Second, Plaintiff's argument that it is a core "Plaintiff" reveals a fundamental misunderstanding of the purpose of the joinder rules of both Louisiana and the federal system.  If Plaintiff's argument were correct, it would completely abrogate any joinder rules, because the same plaintiff obviously can have wholly unrelated claims against wholly unrelated defendants without any relation to each other in law or fact.  Yet, under such a scenario the plaintiff still could maintain that there was a "core plaintiff" that somehow joined the actions together.  This is why both federal and Louisiana rules of procedure focus solely on the defendants, <u>not</u> the plaintiff or plaintiffs, to determine whether joinder of the *defendants* is proper.  La. C.C.P. art. 463 (noting that joinder requires a "community of interest ***between the parties joined***" together in the suit) (emphasis added); F_{ED}. R. C_{IV}. P. 20 (requiring that the defendants share joint, several, or alternative liability in order for them to be joined together in one action).

Here, it is apparent that there is no "community of interest" among any of the Defendants or even the claims of the putative class members themselves, as demonstrated by the legion of cases that have struck class allegations and severed claims alleging nearly identical Hurricane Katrina causes of action.  *See Accardo*, 2007 U.S. Dist. LEXIS 6859, at *16-17 (holding that no "community of interest" existed where insureds brought parallel claims against different insurance carrier and "no plaintiff asserts a claim against more than one defendant"); *Dastugue v.*

*Allstate Ins. Co.*, No. 06-9046, Doc. No. 12 (E.D. La. Apr. 5, 2007) (Berrigan, J.) (*sua sponte* severing Hurricane Katrina claims involving 11 different properties into individual suits); *Vaz v. Allstate Prop. & Cas. Co.*, No. 06-481, Doc. No. 26 (S.D. Miss. Oct. 25, 2006) (severing claims and holding that "[l]umping a large number of Plaintiffs who are not similarly situated (but for Hurricane Katrina, some kind of damage, and at least one common insurance carrier) in one case is not the appropriate answer"); *Aguilar v. Allstate Fire & Cas. Ins. Co.*, 2007 U.S. Dist. LEXIS 16073, at *6-7 (E.D. La. Mar. 6, 2007) (Feldman, J.) (striking class claims in Katrina property damage case); *Spiers v. Liberty Mut. Fire Ins. Co.*, No. 06-4493, 2006 U.S. Dist. LEXIS 95248 (E.D. La. Nov. 21, 2006) (Feldman, J.) (same); *Henry v. Allstate Ins. Co.*, 2007 U.S. Dist. LEXIS 57822 (E.D. La. Aug. 8, 2007) (Feldman, J.) (same); *Chetta v. State Farm & Cas. Co.*, No. 06-4662, 2007 WL 1233546, at *1 (E.D. La. Apr. 25, 2007) (Livaudais, J.) (same); *Caruso v. Allstate Ins. Co.*, No. 06-2613, 2007 U.S. Dist. LEXIS 56760 (E.D. La. Aug. 3, 2007) (Vance, J.) (same); *Terrebonne v. Allstate Ins. Co.*, No. 06-4697, 2007 U.S. Dist. LEXIS 58383 (E.D. La. Jul. 31, 2007) (Vance, J.) (same).

   **C.   Plaintiff has failed to meet its burden of establishing that two-thirds of the putative class members were citizens of Louisiana at the time Plaintiff's Petition was filed.**

   Plaintiff here, like the plaintiff in *Preston I*, *supra* at 2, has failed to meet its factual burden of establishing that two-thirds of the putative class members were citizens of Louisiana at the time Plaintiff's Petition was filed.  *Preston I*, 485 F.3d at 798-801, 803 (reversing District Court's remand order because plaintiff failed to meet its burden of establishing two-thirds of the putative class were Louisiana citizens based on the medical records showing their addresses).  In fact, Plaintiff's only statement about this prerequisite to the local controversy exception is to incorrectly set forth the standard required.  Plaintiff's Motion to Remand erroneously states that: "[a]t the time of the hurricanes, these proposed plaintiffs had a Louisiana domicile," and

"Allstate included no evidence in its Notice of Removal to suggest that at least one-third of the Road Home recipients changed their domiciles." (Pls. Mem. at 12-13.) But, of course, the domicile of the putative class members at the time of the hurricanes is simply irrelevant because CAFA states that citizenship is to be determined "as of the date of filing of the complaint or amended complaint." 28 U.S.C. § 1332(d)(7). Where an action is removed based on CAFA, it is Plaintiff's burden to establish the elements of the local controversy exception, not Defendants' burden to establish their non-existence.

Plaintiff cannot shift its burden of establishing domicile at the time the complaint was filed to Defendants simply by arguing that there is no reason to conclude that one-third of the putative class members changed their domicile after the hurricanes. (Pl.'s Mem. at 13.) Indeed, this Court can take judicial notice that hundreds of thousands of Louisiana residents were displaced as a result of Hurricane Katrina, and many relocated to other jurisdictions and have not returned. *See Preston* II, 485 F.3d at 817 (describing the "mass relocation" from New Orleans of individuals who "either temporarily or permanently relocated to habitable areas of Louisiana and other states"). The Court cannot simply presume that more than two-thirds of the putative class members were domiciled in Louisiana at the time the action was filed, and Plaintiff has not demonstrated it factually.

Indeed, the only "evidence" to which Plaintiff points is Exhibit A, which Plaintiff claims lists the names of all Road Home applicants.[5] But even if Exhibit A listed out contact addresses or the addresses for the properties sustaining loss, such information is insufficient to establish domicile as a matter of law. *Preston I*, 485 F.3d at 798-801, 803 (reversing district court's

---

[5]   Notably, Plaintiff has yet to produce Exhibit A to Defendants so Defendants are not in a position to rebut that "evidence," but even accepting Plaintiff's representation that it states insured property addresses, it is insufficient on its face under binding Fifth Circuit law. *Preston I*, 485 F.3d at 798-801.

remand order because plaintiff failed to meet its burden of establishing two-thirds of the putative class were Louisiana citizens based on the medical records showing their addresses); *see also Preston II*, 485 F.3d at 815 ("A party's residence alone does not establish domicile").  For the same reason, Plaintiff's assertion that there is a presumption in favor of a person's continuing domicile (Pl.'s Mem. at 12-13) is beside the point:   Plaintiff never established Louisiana domiciles in the first instance.

Notably, the Fifth Circuit in *Preston I* rejected a nearly identical attempt based on the same type of conclusory statements and "evidence" that Plaintiff relies upon in its Motion to Remand here.  *Preston I*, 485 F.3d at 798-801 (rejecting plaintiff's request for the "court to presume, despite the forced mass relocation of Orleans Parish citizens after Hurricane Katrina, that the patients' primary billing addresses . . . accurately reflect their domicile at the time of the filing of this action . . . nearly a year after the hurricane").  *Id.* at 799.  The very same analysis holds true here.  In contrast, the Fifth Circuit in *Preston II* found the plaintiff established this element (under the more lenient one-third standard of the home state exception) when it was based on evidence wholly absent here—*i.e.,* sworn affidavits and similar evidence showing not only addresses, but the intent of the class members to reside in, or return to, Louisiana.  *Preston II*, 485 F.3d at 815-16.

It is quite possible that fewer than two-thirds of the putative class members are Louisiana citizens.  The Road Home Program does not limit the distribution of its funds to Louisiana citizens, just to individuals who owned real property in Louisiana at the times of Hurricanes Katrina and Rita.  (*See* http://www. road2la.org/homeowner/eligibility-info.htm.)   In fact, the Road Home Program specifically allows recipients to receive funds and sell their homes and move to another state.  (*See* http://www. road2la.org/homeowner/overview.htm (noting that one

of the three compensation options is to "sell your home and choose not to remain a homeowner in the State").)  The Road Home program is not even limited to one house per person, so the class could be comprised of numerous landlords living in other states.  (*See* http://www.road2la.org/rental/default.htm (describing the Small Rental Property Program and noting that it has paid out funds of $502 million on 11,507 rental units ).) This small rental program alone has issued a total of just under 6000 awards, which represents a significant portion of the 41,071 grant closings alleged in Plaintiff's Petition.  (Am. Petition ¶ 10.)

Thus, Plaintiff has failed to meet its burden of establishing this element of the local controversy exception.

## II.   As A Matter Of Law, CAFA's Discretionary Exception Cannot Be Invoked Because Plaintiff Has Not Met The Threshold Requirements.

Plaintiff cites the factors listed in the discretionary exception of CAFA, but fails to note that Plaintiff must first establish that all the "primary defendants" are citizens of Louisiana before the discretionary exception can possibly be triggered.  *See* 28 U.S.C. § 1332(d)(3).  Under CAFA, a court may decline to exercise CAFA jurisdiction in its discretion if "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the *primary* defendants are citizens of the State in which the action was originally filed."  *Id.* (emphasis added).  The Fifth Circuit, interpreting the identical phrase "the primary defendants" in § 1332(d)(5)(A), concluded that Congress's use of "the definite article . . . requires that all primary defendants be states."  *See Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir. 2006).  "Had Congress desired the opposite, it would have used 'a' and the singular, or no article."  *Id.*  This ruling governs the discretionary exception as well, as "[i]t is a normal rule of statutory construction that identical words used in different parts of the same act are intended to

have the same meaning." *Comm'r v. Keystone Consol. Indus.*, 508 U.S. 152, 159 (1993) (internal quotations and citations omitted).

Here, the "primary" defendants are not all Louisiana citizens; rather, as discussed above and in Allstate's Notice of Removal, they are out-of-state insurers as can be demonstrated by unequivocal market share data. *Gauntt*, 2007 WL 128801, at *2; Allstate's Not. of Removal at ¶¶ 33-35. Plaintiff does not argue that any Louisiana citizen is one of the "primary defendants," nor could it given the market share data that its own agency has filed with another court in this District as discussed above. Accordingly, given that this threshold requirement cannot be met here, Plaintiff's discussion of the discretionary factors is simply not relevant. (Pl.'s Mem. at 10-11.)

**III.   Plaintiff Did Not File A *Parens Patriae* Action; Rather, As Master Of Its Petition, Plaintiff Voluntarily Chose To File A Putative Class Action Triggering CAFA Jurisdiction.**

Plaintiff voluntarily chose to file a class action, and as such, it is bound by that decision. It is well-established law that Plaintiff cannot alter the allegations of its Petition in its Motion to Remand. Instead, the propriety of removal is to be judged by the facts asserted in the Petition. *See, e.g., Keating v. Shell Chem. Co.*, 610 F.2d 328, 331 (5th Cir. 1980) ("[T]he District Court must refer to the allegations in the plaintiff's state court pleadings to determine if removal is proper."); *Dobson v. Allstate Ins. Co.,* 2006 U.S. Dist. LEXIS 55832, at *9 (E.D. La. Jul. 21, 2006) (noting that new facts asserted in the motion to remand "cannot be considered by the Court" since "they were made following removal" and were not contained in the state court petition) (collecting cases); *see also Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) (holding that "jurisdiction [is determined] on the basis of the claims in the state court complaint *as it existed at the time of removal*.") (emphasis added). Accordingly, Plaintiff's

entire argument about *parens patriae*—which simply was not pled in the Complaint—should be rejected out of hand.

Even if this Court were to address that argument, however, it fails on a multitude of substantive grounds.  First, this action could *not* be a *parens patriae* action under the very definition of such an action because this suit is on behalf of specific policyholders that purportedly assigned specific interests to the State—it is not an action on behalf of the general public of Louisiana.  *See, e.g., Penn. v. Porter*, 659 F.2d 306, 329 (3d Cir. 1981) ("[T]he state, in order to assert *parens patriae* standing, must allege and must establish a widespread injury or threat which affects, or could potentially affect, the well being of virtually all of its citizens.") The CAFA statute itself recognizes this distinction, carving out actions that truly are on behalf of the general public, such as actions under California's Business and Professions Code Section 17200.  28 U.S.C. § 1332(d)(11)(B)(ii)(III) (excluding claims that meet a list of criteria including being "asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action"). Here, even if Louisiana had a comparable statute, this action was not brought on that basis, it was brought as a class action.

Further, absent such a specific statute, CAFA clearly does not exclude *parens patriae* actions.  In fact, such actions are not even mentioned.  Plaintiff's "*parens patriae*" argument is a perfect example of the "creative legal theories" that Congress sought to exclude by specifically defining statutory exceptions, and Plaintiff's attempt to sidestep CAFA's strict requirements fails as a matter of law.

In support of its legislative history argument, Plaintiff cites to the comments of Senators Grassley and Cornyn during debate over CAFA, who observed that CAFA would not interfere

with the *parens patriae* jurisdiction of attorneys general.  Plaintiff's reliance upon these remarks is misplaced.  On their face, those comments refer to a proposed amendment to exempt Attorney General actions from CAFA—an amendment which the Senate debated, voted upon, ***and rejected***.  *See* S. Amend. 5 to S. 5, 109th Cong. (1st Session, 2005) (amendment tabled and never passed).  In short, Plaintiff asks this Court to judicially graft onto the CAFA statute an exception that was specifically rejected by Congress.  It is, of course, a fundamental rule of statutory construction that the failure to enact an amendment or bill precludes a later, interpretive inclusion of that amendment's or bill's provisions into the statute.  *See Rapanos v. United States*, 126 S. Ct. 2208, 2256 (2006) (rejecting an interpretation that would narrow jurisdiction for the Army Corps of Engineers in part because "Corps' asserted jurisdiction over wetlands had been specifically brought to Congress' attention in 1977, [and] Congress had rejected an amendment that would have narrowed that jurisdiction"); *Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 706 (D.C. Cir. 1971) (where "positive action by Congress reject[s] . . . limiting amendments" the "legislative history reflects clear purpose, not ambiguous silence").

Indeed, one of the reasons given by several senators for rejecting the amendment was that it would allow private attorneys to "game" the system, thereby creating "the potential for grave abuses" that could completely undermine the intent of the legislation.  *See* 151 Cong. Rec. S1157, S1162, 2005 WL 309648 (Feb. 9, 2005) (remarks of Senator Cornyn).  As Senator Hatch explained:

> At worst, it will create a loophole that some enterprising plaintiffs' lawyers will surely manipulate in order to keep their lucrative class action lawsuits in State court.
>
> . . . .
>
> If this legislation enables State attorneys general to keep all class actions in State court, it will not take long for plaintiffs' lawyers to figure out that all they need to

do to avoid the impact of S. 5 is to persuade a State attorney general to simply lend the name of his or her office to a private class action.

*Id.* at S1163-64.  Likewise, Senator Grassley argued:

> I ask my colleagues not to be fooled.  Although this amendment sounds good, and there was a good presentation made by the authors of the amendment, it is potentially harmful and could lead to gaming by class action lawyers. . . . Plaintiffs' lawyers could simply ask State attorneys general to lend their name to a class action lawsuit so as to keep them in the State court.  That creates a very serious loophole in this bill.  We should not risk creating a situation where State attorneys general can be used as pawns so that crafty class action lawyers can avoid the jurisdictional provisions of this bill.

*Id.* at S1163.  Senators Hatch and Grassley's concerns were not misplaced.  The State here is represented by no less than five outside law firms, including firms that represent private plaintiffs in Hurricane Katrina litigation.  Holding that this lawsuit is not subject to CAFA jurisdiction would turn the legislative intent on its head.

CAFA defines a class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).  Here, Plaintiff expressly sought certification of a class action pursuant to Louisiana Code article 591, the Louisiana analogue to Federal Rule of Civil Procedure 23.  (Am. Petition ¶¶ 21-23, XIII(a).)  Regardless of whether another vehicle such a direct enforcement or *parens patriae* action might have been available to the Plaintiff, it chose to seek class certification in its Complaint, thereby subjecting itself to federal jurisdiction under CAFA.

Further, it is irrelevant what label Plaintiff now decides to affix to this lawsuit.  It is axiomatic that in removal cases "jurisdiction [is determined] on the basis of claims in the state court complaint *as it exists at the time of removal*."  *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) (emphasis added).  It could be not clearer that Plaintiff's "First Amended and Restated Class Action Petition" is filed as a conventional class action lawsuit, not

a *parens patriae* proceeding.  Indeed, this is evident on the face of the Amended Petition itself, which (in addition to its title) repeatedly asserts that it is a class action brought on behalf of a putative class of insureds.  (*See, e.g.*, Am. Petition ¶¶ 20, 21(d), 21(f), 21(h), 21(i), 21(j), 22-24, 33, 43.)  And neither in that Petition, nor in the prior original Petition, did Plaintiff ever even refer to this as a *parens patriae* proceeding (an omission further evidenced by the fact that Plaintiff's Motion to Remand never cites its own Petition in support of this argument).

## IV.    This Action Is Quintessentially An *Inter*state One.

Plaintiff's argument that this action is "a purely local issue" (Pl.'s Mem. at 3) is both beside the point and wrong.  It is beside the point because CAFA sets out objective requirements for removal (which have each been satisfied here) and specific requirements for its exceptions (which have not); this characterization is simply not relevant under CAFA.  In any event, this characterization is wrong.  Out of the 214 Insurance Company Defendants, 203 are non-Louisiana insurers representing at least 31 states.  (Am. Petition ¶¶ 18, 20.)  More importantly, the "Road Home funds" at issue are *not* Louisiana funds, they are *federal* funds, as Plaintiff must concede given that its own Road Home website says so.  (*See* http://www.road2la.org/about-us/default.htm ("The [Road Home] program is funded by the U.S. Department of Housing and Urban Development.").)

In light of those facts, Plaintiff's argument that this is simply a "local" lawsuit clearly fails.  Plaintiff claims that "[a] decision issued by a Louisiana court . . . will have no binding effect on insurers . . . in other states," and that "no state court judge in Orleans Parish will have any control over insurers in other states," (Pl.'s Mem. at 9 & 10), but it is hard to see how that could be true in a case where 203 of the defendants are out-of-state insurers from 31 other states.  The effects of any judgment in favor of the putative class would obviously impact these 31 other states and public shareholders of many of these defendants who are almost certainly located in

Case 2:05-cv-04182-SRD-JCW   Document 8899-2   Filed 11/06/07   Page 29 of 35

every other state.  Furthermore, the funds obtained in any judgment in this case would flow to other states where putative class members reside.  This is particularly true given the "mass relocation" of New Orleans' population who "either temporarily or permanently relocated to habitable areas of Louisiana and other states."  *Preston II*, 485 F.3d at 817.  In short, given the sheer number of non-Louisiana Defendants at issue, and the fact that they represent so many states, it is clear that interstate interests are at issue in this litigation.  *Cf. United States v. Collins*, 40 F.3d 95, 99-100 (5th Cir. 1994) (noting that the law is well-settled that the depletion or diminishment of the resources of a business affects interstate commerce).

**V.      Plaintiff's Attempt To Rely On McCarran-Ferguson Also Fails.**

Plaintiff asserts that the McCarran-Ferguson Act somehow creates an exception to CAFA.[6]  It is well-established, however, that McCarran-Ferguson does not restrict the scope of federal diversity jurisdiction.  *Martin Ins. Agency v. Prudential Reins. Co.*, 910 F.2d 249, 254 (5th Cir. 1990) ("The McCarran-Ferguson Act did not remove diversity jurisdiction from the federal courts in insurance matters, but encourages the states to formulate their own systems to regulate insurers doing business in their states") (internal quotation marks and citations omitted); *Munich Am. Reins. Co. v. Crawford*, 141 F.3d 585, 595 (5th Cir. 1998) (rejecting the proposition that the McCarran-Ferguson Act allowed state law to divest the federal court of diversity jurisdiction).

Moreover, CAFA's plain text does not include any such exception for insurance cases, despite the fact that it does contain such an exception for certain corporate actions.  28 U.S.C.

---

[6]      Notably, Plaintiff fails to identify how CAFA "invalidate[s], impair[s], or supersede[s]" any provision of Louisiana's insurance code.  *See* 15 U.S.C. 1012(b); *see also Humana Inc. v. Forsyth*, 525 U.S. 299, 310 (1999) ("When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application.").

§ 1332(d)(9).   Nowhere did Congress manifest any intent that either insurance or consumer-protection disputes would be exempt from CAFA's scope.  Indeed, the legislative history makes clear that Congress specifically anticipated CAFA would apply to suits on behalf of consumers and against insurers.  S. Rep. 109-14, at 5 (noting that CAFA contains a consumer bill of rights); *id.* at 11 (identifying class action brought pursuant to a New Jersey consumer protection statute as an example of class action abuse); *id.* at 21 (noting that abusive class action settlements are frequently filed against insurance companies to coerce settlements); *id.* at 23-24 (describing abusive class actions against insurers); *id.* at 40 (giving as an example of a removable case a consumer fraud action against an insurance company).

## VI.   Plaintiff's Eleventh Amendment Argument Has Been Rejected By Every Circuit Court Of Appeals To Address It.

Plaintiff fails to cite a single case that actually supports its Eleventh Amendment argument.  The two cases upon which Plaintiff relies, *Moore v. Abbott Labs., Inc.* and *State of California v. Steelcase*[7] have both been repeatedly criticized and rejected—and *Steelcase* was actually overruled.  *See Calif. v. Dynegy, Inc.*, 375 F.3d 831, 848-49 (9th Cir. 2004) (overruling *Steelcase*, holding "a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court"); *Calif. v. Atlantic Richfield Co.*, 488 F.3d 112, 119-20 (2nd Cir. 2007) (refusing to follow *Steelcase* and *Moore*, which the court found lacked any persuasive force, and noting that except for those two cases "the vast majority of courts to have considered the issue" have held that "sovereign

---

[7]   (Pl.'s Mem. at 23-26 (citing *Moore v. Abbott Labs., Inc.* 900 F. Supp. 26, 29 (S.D. Miss. 1995) and *Calif. v. Steelcase*, 792 F. Supp. 84, 86 (C.D. Cal. 1992).)

immunity [under the Eleventh Amendment] does not preclude the removal to federal court of a suit filed by a state plaintiff in state court").[8]

This is especially true when one examines the holdings of *Moore* and *Steelcase*. Although the *Moore* court did blindly (and mistakenly) follow the holding of *Steelcase*, the *Moore* court also concluded that it lacked diversity jurisdiction and federal question jurisdiction. *Moore*, 900 F. Supp. at 31-33.  Given that the existence of jurisdiction is an antecedent question to whether the defense of sovereign immunity applies to that jurisdiction, *Moore's* Eleventh Amendment discussion is—in addition to being wrong as a matter of law—dicta.  Similarly, the *Steelcase* court first found that it lacked jurisdiction over the case because there was no diversity jurisdiction given that the state was not a citizen of itself, rendering its Eleventh Amendment discussion (which was later overruled by the Ninth Circuit in any event) pure dicta.  *Steelcase*,

---

[8]   *See also Regents of the Univ. of Minn. v. Glaxo Wellcome, Inc.*, 58 F. Supp. 2d 1036, 1040 (D. Minn 1999) (rejecting *Steelcase* and *Moore* as unpersuasive and instead following the overwhelming weight of authority holding that "the Eleventh Amendment is not a bar to removal of this state court action where the State of Minnesota was the plaintiff"); *Va. v. Bulgartabac Holding Group*, 360 F. Supp. 2d 791, 795 (E.D. Va. 2005) (discussing this issue at length, noting that *Steelcase* and *Moore* have been rejected by every court to address them, and following the "great weight of authority" holding that the Eleventh Amendment does not preclude removal of an action filed by a state as plaintiff); *In re PG&E Corp.*, 281 B.R. 1, 6-7 (Bankr. N.D. Cal. 2002) (noting that *Steelcase* and *Moore* have "been rejected in many subsequent decisions from other courts") (collecting cases); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 297 (S.D.N.Y. 2001) (finding "the heavy weight of authority holds that the Eleventh Amendment does not bar removal"); *Vt. v. Oncor Communs.*, 166 F.R.D. 313, 321 (D. Vt. 1996) (refusing to follow *Steelcase*, holding that "[t]he Eleventh Amendment does not bar removal of an action involving a federal question in which a state is the plaintiff"); *S.D. v. Burlington N. & Santa Fe Ry.*, 280 F. Supp. 2d 919, 935 (D.S.D. 2003) (rejecting the state's Eleventh Amendment argument, because it "does not bar removal where the State is a plaintiff") (collecting cases); *Mo. v. Prudential Health Care Plan*, 2000 U.S. Dist. LEXIS 22406, at *8-9 (E.D. Mo. Apr. 13, 2000) (holding that the Eleventh Amendment does not preclude removal of an action filed by a state); *Banco y Agencia de Financiamiento de la Vivienda v. Urbanizadora Villalba*, 681 F. Supp. 981, 982-83 (D.P.R. 1988) (holding the Eleventh Amendment does not bar removal of a suit brought by a state as plaintiff).

792 F. Supp. at 86; *see also Dynegy, Inc.*, 375 F.3d at 849 n.15 (noting that the Eleventh Amendment discussion in *Steelcase* was in the alternative and that both *Steelcase* and *Moore* are wholly "unpersuasive.").

In contrast to these two district court decisions, the Fifth Circuit and every other Circuit Court of Appeals to have addressed this issue have found that the Eleventh Amendment is not applicable on its face to the removal of cases filed by a state in state court. *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22, 24 n.6 (5th Cir. 1980) ("Of course, the eleventh amendment is inapplicable where a state is a plaintiff . . . "); *Okla. v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1240 (10th Cir. 2004) (holding that the Eleventh Amendment did not bar removal of an action brought by a state as plaintiff); *Dynegy, Inc.*, 375 F.3d at 848-49 (same); *Calif. v. Atlantic Richfield Co.*, 488 F.3d 112, 119 (2nd Cir. 2007) (same); *City & County of San Francisco v. PG&E Corp.*, 433 F.3d 1115 (9th Cir. 2006) (following *Dynegy, Inc.*); *Regents of Univ. of Calif. v. Eli Lilly & Co.*, 119 F.3d 1559, 1564 (Fed. Cir. 1997) ("the Eleventh Amendment applies to suits 'against' a state, not suits by a state").

Plaintiff attempts to distinguish the above cases as federal question cases, and argues that where state law claims are at issue the outcome should be different. (Pl.'s Mem. at 31.) As an initial matter, there is no rule stating that federal courts cannot apply state law in a case involving a State, and indeed, the grant of supplemental jurisdiction in 28 U.S.C. § 1367 demonstrates that state law claims could have been addressed in the above cases. Moreover, this argument has been repeatedly rejected, including by this Court. In *School Board of St. Charles v. Quala Systems, Inc.*, 159 F. Supp. 2d 295 (E.D. La. 2001), where the defendants removed by "asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332," *id.* at 296, this Court noted that even if the

plaintiff school board were a part of the State of Louisiana, removal of its action filed in state court alleging only state law claims would not be precluded by the Eleventh Amendment:

> Even were plaintiffs considered arms of the state under the Eleventh Amendment, a plain reading of the text of the Eleventh Amendment teaches that sovereign immunity is inapplicable to the matter before the Court. . . .  In *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22 (5th Cir. 1980), the Court of Appeals clearly stated that "[o]f course, the eleventh amendment is inapplicable where a state is the plaintiff."  *Id*. at 24, n6.  *See also Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 507 (8th Cir. 1995) (state waives eleventh amendment when it participates as plaintiff).  In this case, even were the movants found to be arms of the state, the eleventh amendment would remain inapplicable because the 'state' would be the plaintiff, not a defendant.

*Id*. at 297-98 (holding plaintiff was not a part of the state and, therefore, the Eleventh Amendment was inapplicable).

Likewise, in *Terrebonne Parish School Board v. Mobil Oil Corp.*, No. 89-1983, 1989 U.S. Dist. LEXIS 13703, at *1-3 (E.D. La. Nov. 9, 1989), plaintiff argued it was an "arm" of the State protected by the Eleventh Amendment.  The court held that its state law action filed in state court was removable despite the Eleventh Amendment:

> The Eleventh Amendment prohibits suits in federal court "commenced or prosecuted against one of the United States."   This amendment was enacted to protect states against federal judgments requiring payment of money which would interfere with states' fiscal autonomy and political sovereignty.  We are aware of no case holding that the Eleventh Amendment prevents removal of a suit filed by a state as a plaintiff.  We conclude that the Eleventh Amendment is inapplicable.

*Id*. at *2 (internal citations omitted).  Plaintiff does not and could not distinguish these cases, both decided in this Court, both involving entities claiming to be part of the State in diversity actions – and neither taking the approach proposed by Plaintiff here.[9]  *See also In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 297 (finding, in case removed based on diversity jurisdiction, "the heavy weight of authority holds that the Eleventh Amendment does not bar

---

[9]   Here, of course, jurisdiction is founded upon CAFA which only requires minimal diversity between one putative class member and one defendant.

removal"); *PG&E Corp.*, 281 B.R. at 6-7 (finding that the Eleventh Amendment did not bar removal of a suit brought by the State of California's attorney general pursuant to state law and Section 17200 that authorizes a form of *parens patriae* action).

In short, Plaintiff's attempt to use the Eleventh Amendment "as a sword rather than a shield is unavailing" here—just as it was found to be in all the cases cited above. *Dynegy, Inc.*, 375 F.3d at 849.

## CONCLUSION

Plaintiff's Petition falls squarely within this Court's CAFA jurisdiction and Plaintiff has not (and cannot) establish any exception to CAFA jurisdiction.  Accordingly, for all the reasons discussed above and in Allstate's Notice of Removal, Plaintiff's Motion to Remand should be denied.

Dated:  November 6, 2007                            Respectfully submitted,

_____
Judy Y. Barrasso, #2814
Edward R. Wicker, Jr., #27138
BARRASSO USDIN KUPPERMAN
    FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone:  (504) 589-9700

*Attorneys for Allstate Insurance Company,*
*Allstate  Attorneys for Allstate Insurance*
*Company, Allstate Indemnity Company,*
*Encompass Insurance Company, Encompass*
*Insurance Company of America, and*
*Encompass Property and Casualty Company*

28

## <u>C E R T I F I C A T E</u>

I hereby certify that a copy of the above and foregoing Opposition to Plaintiff's

Motion to Remand has been served upon all counsel of record via the court's electronic CM/ECF

filing system this 6th day of November, 2007.

_____