UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO.   05-4182 "K"(2) |
| PERTAINS TO:  ROAD HOME | * | |
| *Louisiana State*  C.A. No. 07-5528 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |

**MEMORANDUM OF LAW OF STATE FARM FIRE AND CASUALTY COMPANY
AND STATE FARM GENERAL INSURANCE COMPANY
IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Wayne J. Lee, 7916
  wlee@stonepigman.com
Stephen G. Bullock, 3648
  sbullock@stonepigman.com
Mary L. Dumestre, 18873
  mdumestre@stonepigman.com
Andrea L. Fannin, 26280
  afannin@stonepigman.com
  Of
STONE PIGMAN WALTHER
        WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

Charles L. Chassaignac IV, 20746
  cchassaignac@phjlaw.com
  Of
PORTEOUS, HAINKEL
  & JOHNSON, L.L.P.
343 Third Street, Suite 202
Baton Rouge, Louisiana 70801
Telephone: (225)383-8900
Facsimile: (225) 383-7900


Attorneys for State Farm Fire and Casualty
Company and State Farm General Insurance
Company

899266v.1

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 1

ARGUMENT ..................................................................................................................... 4

I.    CAFA MANDATES JURISDICTION OVER THIS ACTION ...................................... 4

II.   NONE OF THE CAFA EXCEPTIONS APPLIES ............................................... 5

      A.    The "Local Controversy" Exception Does Not Apply. ........................................ 6

      B.    The "Discretionary" Exception Does Not Apply. ............................................... 18

III.  CAFA DOES NOT CONTAIN ANY EXCEPTIONS FOR SUITS BY
      ATTORNEYS GENERAL OR AGAINST INSURERS ............................................... 19

      A.    Congress Specifically Rejected an Amendment for Suits by Attorneys
            General ............................................................................................................. 20

      B.    Plaintiff Cannot Create a New "McCarran-Ferguson Exception" to CAFA ........ 23

IV.   PLAINTIFF CANNOT HIDE BEHIND THE ELEVENTH AMENDMENT ................ 27

CONCLUSION ................................................................................................................. 1

# TABLE OF AUTHORITIES

## CASES

*Accardo v. Lafayette Insurance Co.*, 2007 WL 325368 (E.D. La. Jan. 30, 2007) ...................... 14

*Alden v. Maine*, 527 U.S. 706 (1997) ....................................................................................... 28

*AT&T Communications v. Bellsouth Telecommunications, Inc.*, 238 F.3d 636 (5th Cir.
    2001) ......................................................................................................................................... 28

*In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002) ....................................................... 14

*Berthelot v. Boh Brothers Construction Co., L.L.C.*, No. 05-4182, 2007 WL 1239132
    (E.D. La. June 1, 2006) ............................................................................................................ 15

*California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004) ......................28, 31, 32

*Caruso v. Allstate Insurance Co.*, 469 F. Supp. 2d 364 (E.D. La. 2007) ..............................12, 13

*Cavallini v. State Farm Mutual Automobile Insurance Co.*, 44 F.3d 256 (5th Cir.
    1995) ......................................................................................................................................... 22

*Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000) ........................................................... 14

*Commonwealth of Virginia ex rel. Kilgore v. Bulgartabac Holding Group*, 360 F. Supp.
    2d 791 (E.D. Va. 2005) ......................................................................................................31, 32

*Defourneaux v. Metropolitan Property & Casualty Insurance Co.*, No. 06-3809,
    2006 WL 2524165 (E.D. La. Aug. 30, 2006) ........................................................................ 14

*Dewsnup v. Timm*, 502 U.S. 410 (1992) ..............................................................................25, 33

*DIRECTV, Inc. v. Beecher*, 296 F. Supp. 2d 937 (S.D. Ind. 2003) ............................................ 15

*Escoe v. State Farm Fire & Casualty Co.*, No 07-1123, 2007 WL 1207231
    (E.D. La. April 23, 2007) ....................................................................................................10, 13

*Evans v. Walter Industries Inc.*, 449 F.3d 1159 (11th Cir. 2006) .......................................... 6, 10

*F.D.A. v. Brown-Williamson Tobacco Corp.*, 529 U.S. 120 (2000) .......................................... 20

*Frazier v. Pioneer Americas LLC*, 455 F.3d 542 (5th Cir. 2006) ....................................5, 18, 29

*Gauntt v. Louisiana Citizens Property Insurance Corp.*, Civil Action No. 06-7817,
    2007 WL 128801 (E.D. La. Jan. 16, 2007) ........................................................................... 11

899266v.1

*Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181 (5th Cir. 1990) ............................................................. 4

*Huber, Hunt & Nichols, Inc.   v. Architectural Stone Co.*, 625 F.2d 22
(5th Cir. 1980)............................................................................................................27, 28

*Humana Inc. v. Forsyth*, 525 U.S. 299 (1999) ......................................................................... 24

*Kearns v. Ford Motor Co.*, No. CV05-5644, 2005 WL 3967998 (C.D. Cal.
Nov. 21, 2005) ...................................................................................................... 10

*Mallard v. Prudential Insurance Co. of America*, No. 95A-908N, 1996 WL
170126 (M.D. Ala. Mar. 29, 1996) ...................................................................... 14

*Martin Insurance Agency, Inc. v. Prudential Reinsuarnce Co.*, 910 F.2d 249
(5th Cir. 1990).......................................................................................................... 24

*Moore ex rel. Mississippi v. Abbott Laboratories, Inc.*, 900 F. Supp. 26 (S.D.
Miss. 1995) ............................................................................................................30, 31

*In re MTBE Products Liability Litigation*, 488 F.3d 112 (2d Cir. 2007) ........................28, 30, 31

*Munich American Reinsurance Co. v. Crawford*, 141 F.3d 585 (5th Cir. 1998)......................... 24

*National Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689 (D.C.
Cir. 1971).................................................................................................................. 21

*Oklahoma ex rel. Edmundson v. Magnolia Marine Transportation Co.*, 359
F.3d 1237 (10th Cir. 2004) .................................................................................28, 31

*In re Pacific Gas & Electric Co. v. PG & E Corp.*, 281 B.R. 1 (N.D. Cal. Bankr. 2002) ........... 31

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984) ..............................28, 29

*Peoples Benefit Life Insurance Co. v. Dale*, No. Civ. A 3:99CV537BN,
1999 WL 33545578 (S.D. Miss. Dec. 29, 1999) ................................................... 24

*Phillips v. Severn Trent Environmental Services, Inc.*, No. 07-3889,
2007 WL 2757131 (E.D. La. Sept. 19 2007).....................................................17, 19

*Preston v. Tenet Healthsystem Memorial Medical Center*, 485 F.3d 793 (5th
Cir. 2007) (*Preston II*)........................................................................................10, 16, 17

*Preston v. Tenet Healthsystem Memorial Medical Center*, 485 F.3d 804 (5th
Cir. 2007) (*Preston I*) ............................................................................................ 5, 16

*Rapanos v. United States*, 126 S. Ct. 2208 (2006)..................................................................... 20

iii

*Regents of the University of California v. Eli Lilly & Co.*, 119 F.3d 1559 (Fed. Cir. 1997) ............................................................................................ 28

*In re Rezulin Products Liablility Litigation*, 133 F. Supp. 2d 272 (S.D.N.Y. 2001) ......................................................................................... 27, 30, 31

*School Board of the Parish of St. Charles v. Quala Systems, Inc.*, 159 F. Supp. 2d 295 (E.D. La. 2001) ............................................... 29

*Serrano v. 180 Connect, Inc.*, 478 F.3d 1018 (9th Cir. 2007) ...................... 5

*State of California v. Steelcase, Inc.*, 792 F. Supp. 84 (C.D. Cal. 1992) ............................. 30, 31

*Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996) .......................... 13, 14, 15

*Terrebone School Board v. Mobil Oil Corp.*, No. 89-1983, 1989 WL 140217 (E.D. La. Nov. 9, 1989) ........................................................................ 29, 30

*In re Texas*, 110 F. Supp. 2d 514 (E.D. Tex. 2000) ........................... 27, 28

*Texas Food Industries Association v. U.S. Department of Agriculture*, 81 F.3d 578 (5th Cir. 1996) ........................................................................ 25

*Turpeau v. Fidelity Financial Services Inc.*, 936 F. Supp. 975 (N.D. Ga. 1996) ...................... 14

*United Savings Association of Texas v. Timbers of Inwood Forest Association, Ltd.*, 484 U.S. 365 (1988) ........................................... 26, 33

*United States v. Rocha*, 916 F.2d 219 (5th Cir. 1990), *aff'd* 48 Fed. Appx. 481 (5th Cir. 2002) ........................................................................ 25

*Waggoner v. Gonzales*, 488 F.3d 632 (5th Cir. 2007) ............................. 25

*Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176 (1907) ....................... 4

## STATUTES AND RULES

15 U.S.C. § 1012(b) ....................................................................................... 24

28 U.S.C. § 1332 ................................................................................... *passim*

28 U.S.C. § 1441 .......................................................................................... 15

128 U.S.C. 1711 ............................................................................................. 4

iv

151 Congressional Record H723-01 (2005) ................................................................ 12

151 Congressional Record S1157, *available at* 2005 WL 309648 (Feb. 9, 2005) ...............21, 22

CAFA § 2(a)(4)(A), Pub. L. No. 109-2, 119 Stat. 4 (Feb. 18, 2005)............................................. 4

Federal Rule of Civil Procedure 23 ........................................................................... 22

Louisiana Code art. 591 ......................................................................................... 22

LSA R.S. § 22:695, *et seq.*.......................................................................................... 1

Senate Report 109-14 (Feb. 28, 2005), *as reprinted in* 2005 U.S.C.C.A.N. 3 .....................*passim*

Senate Amendment No. 5 to S. 5, 109th Congress (1st Session, 2005)...................................... 20

United States Constitution Amendment X1............................................................................ 27

**MISCELLANEOUS**

Road Home Program, http://www.road2la.org ............................................................. 9

Defendants State Farm Fire and Casualty Company ("State Farm Fire") and State Farm General Insurance Company ("State Farm General") (sometimes collectively referred to as "State Farm") respectfully submit this Opposition to Plaintiff's Motion to Remand.[1]

## INTRODUCTION AND SUMMARY OF ARGUMENT

This is precisely the kind of large class action, involving numerous interstate parties, that CAFA was intended to, and does, entrust to the federal courts.  The facts of this case mandate federal jurisdiction under CAFA and dispose of any suggestion that the "local controversy" provision (or any other exception or theory) can help Plaintiff avoid this Court's jurisdiction.

As a putative class representative, Plaintiff sued over 200 insurers on behalf of allegedly "tens of thousands" of Louisiana citizens (Am. Petition ¶ 21b), seeking declaratory relief that their alleged flood damage, asserted to be in the billions of dollars, is covered under homeowner policies, despite the policies' unambiguous exclusion of flood damage.  Specifically, Plaintiff seeks five declarations in its petition:

1. That the efficient proximate cause of the losses suffered by insureds from Hurricanes Katrina and Rita was "windstorm," a covered peril.  (Am. Petition ¶ 46(a).)

2. That the second efficient proximate cause of the recipients' losses was "storm surge," a meteorological event not specifically excluded by any of the Insurer Companies' policies.  (*Id.* ¶ 46(b).)

3. That the water damage does not fall within the definition of "flood."  (*Id.* ¶ 46(c).)

4. That the damages resulting from water entering Orleans Parish and the surrounding area was a man-made occurrence for which all resulting damages or losses to any recipient's residence are properly covered.  (*Id.* ¶ 46(d).)

5. That under Louisiana's Valued Policy Law, LSA R.S. § 22:695, *et seq.*, insureds are entitled to recovery of the full value placed on their residences by the Insurance Company Defendants. (*Id.* ¶ 46(f).)

Defendant Allstate timely removed the lawsuit to this Court, and State Farm and other

---

[1] State Farm joins in and adopts the arguments in Certain Defendants' Joint Response in Opposition to Plaintiff's Motion to Remand.

Defendants joined.  Plaintiff now seeks remand.

One of the key purposes of CAFA was to put an end to manipulative pleading practices designed to subvert federal jurisdiction, whereby "plaintiffs' counsel . . . add[] named plaintiffs or defendants simply based on their state of citizenship in order to defeat complete diversity." S. Rep. 109-14, at 10 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 11.  As such, Congress *mandated* federal jurisdiction where (1) the putative class exceeds 100; (2) some of the members of the putative class have a different citizenship from some of the defendants ("minimal diversity"); (3) the amount in controversy, for the class as a whole, exceeds $5 million; and (4) none of CAFA's narrow exceptions applies.  Given Congress's expressed intent to substantially expand federal jurisdiction over such class actions, "CAFA's  jurisdictional provisions should be read broadly, with a *strong preference* that interstate class actions should be heard in a federal court if properly removed by any defendant."  S. Rep. 109-14, at 43 (emphasis added).

In a futile attempt to evade this Court's jurisdiction, Plaintiff throws out a host of nebulous concepts – "*parens patriae*," "sovereign immunity," and others – in the hope that enough dust will be kicked up that the Court will just remand this case.  But when the dust settles, all that remains are the plain dictates of CAFA, and the well-settled precedents that squarely defeat each of Plaintiff's proffered theories.

As an initial matter, Plaintiff does not dispute that CAFA's three threshold requirements are satisfied.  Therefore, federal jurisdiction *must* be exercised here, unless Plaintiff demonstrates that one of CAFA's narrow exceptions – or one of Plaintiff's novel jurisdictional theories – applies.  This Plaintiff cannot do.

*First*, Plaintiff fails to prove at least three of the four requirements of the "local controversy" exception – as is its burden here.  Plaintiff fails to show that, in the past three years, no class action asserting "the same or similar factual allegations" has been filed.  With nearly twenty such actions – all, as here, seeking insurance coverage for property damage caused by Hurricanes Katrina and Rita – filed in this District alone, Plaintiff cannot possibly make this showing.  Plaintiff also cannot show that there exists any Louisiana Insurer Defendant from

2

whom "significant relief" is sought, compared to the class as a whole.  Indeed, the largest non-diverse Defendant has a market share of only 7.5%, *compared to the over 92% held by the other 213 Defendants*.  In addition Plaintiff does not – and does not even attempt to – carry its burden of proving that at least two-thirds of the putative class consisted of Louisiana citizens at the time the Amended Petition was filed.

*Second*, Plaintiffs ask this Court to remand based upon consideration of the six factors identified under the "discretionary" exception.  However, that exception applies only where *all* of the "primary defendants" are non-diverse.  With even the largest Louisiana Defendant holding only a 7.5% market share – and just two of the *non-Louisiana* Defendants alone holding a combined share of over 50% – it is indisputable that the "primary defendants" are not all Louisiana citizens.  Indeed, none of them are.

*Third*, recognizing that no existing CAFA exception applies, Plaintiff attempts to create two new ones.  Plaintiff's "*parens patriae* exception," found nowhere in the words of the statute, was in fact proposed as an amendment to CAFA – and *rejected* by Congress.  Plaintiff's "McCarran-Ferguson exception" – pursuant to which any class action against an insurance company would be automatically exempt from CAFA – is likewise found nowhere in the statute.  Indeed, the legislative history unequivocally indicates that CAFA was intended to apply to insurance class actions just like this one.

*Finally*, in an attempted end run around the statute, Plaintiff asserts that the Eleventh Amendment precludes CAFA jurisdiction over Plaintiff's lawsuit.  But the Eleventh Amendment simply does not apply to claims brought by, rather than against, States.  And Plaintiff's back-up theory, that the Amendment applies at least to *diversity* claims asserted by plaintiff States, is flatly refuted by years of precedent, including two decisions of this Court.

In the end, all of Plaintiff's creative attempts to escape this Court's jurisdiction must be rejected.  As shown in detail below, CAFA mandates federal jurisdiction here, and Plaintiff does not – and could not – prove otherwise.

3

**ARGUMENT**

## I.   CAFA MANDATES JURISDICTION OVER THIS ACTION.

The right of an out-of-state defendant to a federal forum in actions involving substantial amounts in controversy is an important right created by Congress.  *See Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990).  As the Supreme Court has observed:  "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."  *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).  Likewise, the Fifth Circuit has noted that the need for removal "'may well be greatest when the plaintiff tries hardest to defeat it.'"  *Grassi*, 894 F.2d at 185 (citation omitted).  Indeed, CAFA was passed specifically to address class action pleading abuses designed to "keep[] cases of national importance out of Federal courts."  CAFA § 2(a)(4)(A), Pub. L. No. 109-2, 119 Stat. 4 (Feb. 18, 2005), 128 U.S.C. 1711; *see also* S. Rep. No. 109-14, at 10 ("The current rules governing federal jurisdiction have the unintended consequence of keeping most class actions out of federal court, even though most class actions are precisely the type of case for which diversity jurisdiction was created.").

CAFA provides for original federal jurisdiction over any action in which the following requirements are met:  (1) the action was filed as a class action pursuant to Federal Rule of Civil Procedure 23 or similar state statute or rule of procedure, (2) the amount in controversy exceeds, in the aggregate, $5 million, and (3) any member of the class is a citizen of a different state than any defendant.  28 U.S.C. § 1332(d)(1)(B), (d)(2) & (d)(6).  As set forth in Allstate's Notice of Removal, and the joinders filed by other Defendants, each of these requirements is met here.

*First*, the putative class far exceeds 100 in number.  According to Plaintiff's own Amended Petition, the putative class "clearly consists of tens of thousands of persons."  (Am. Pet. 21b.)  (*See also* Allstate Removal at 10; State Farm Removal at 5.)

*Second*, "minimal diversity" plainly exists here.  The putative class plaintiffs consist solely of current and former Louisiana citizens.  The putative defendants are alleged to be

4

citizens of numerous states, including Illinois, Missouri, Pennsylvania, Florida, Ohio, Rhode Island, Kansas, California, Delaware, Massachusetts, Connecticut, Arizona, Wisconsin and New York, among others.  (*See also* Allstate Removal at 11.)

*Third*, the $5 million jurisdictional threshold is also satisfied beyond dispute.  On top of the declaratory relief, attorneys' fees, and "penalties" that Plaintiff seeks, the Amended Petition itself alleges that the putative class is seeking "to recover *billions* of dollars in funds."  (Am. Petition ¶ 38 (emphasis added); *see also* Allstate Removal at 12; State Farm Removal at 6.)

Thus, Plaintiff's own allegations establish that the requirements for CAFA jurisdiction exist here.  Indeed, Plaintiff makes no effort to dispute these jurisdictional facts, as set forth in Allstate's notice of removal.  Accordingly, because each of the three threshold requirements is indisputably met, CAFA mandates federal jurisdiction over this action – unless Plaintiff can sustain its burden of proving the applicability of one of the narrow exceptions to CAFA.  This, as shown below, Plaintiff cannot do.

## II.    NONE OF THE CAFA EXCEPTIONS APPLIES.

As the Fifth Circuit recently recognized, "'once federal jurisdiction has been established under [CAFA], the objecting party bears the burden of proof as to the applicability of any express statutory exception.'"  *Preston v. Tenet Healthsystem Memorial Med. Ctr*, 485 F.3d 804, 813 (5th Cir. 2007) (alteration in original) ("*Preston I*") (quoting *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007)).  Likewise, the Fifth Circuit explained in *Frazier v. Pioneer Americas LLC,* 455 F.3d 542 (5th Cir. 2006):

> Our question is whether either or both of two CAFA exceptions apply.  In answering that question, the district court properly placed the burden on plaintiffs for the reasons explained by the Eleventh Circuit. Here, longstanding § 1441(a) doctrine placing the burden on plaintiffs to show exceptions to jurisdiction buttresses the clear congressional intent to do the same with CAFA. This result is supported by the reality that plaintiffs are better positioned than defendants to carry this burden.

*Id.* at 546 (quotation omitted).  "Allocating the burden in this manner is important to ensure that the named plaintiffs will not be able to evade federal jurisdiction with vague class definitions or

899266v.1

other efforts to obscure the citizenship of class members."  S. Rep. 109-14, at 43.  Regardless of

which party bears the burden of proof – and the burden falls squarely on Plaintiff – no exception

applies here, and Plaintiff's attempts to evade this Court's jurisdiction must be rejected.

A.     The "Local Controversy" Exception Does Not Apply.

Plaintiff expends much energy insisting that the "local controversy" exception (28 U.S.C.

§ 1332(d)(4)) applies here.  Plaintiff is wrong.

CAFA's local controversy provision is a "narrow exception that was carefully drafted to

ensure that it does not become a jurisdictional loophole."  S. Rep. 109-14, at 39; *see also Evans v.*

*Walter Indus. Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) ("Congress intended the local

controversy exception to be a narrow one.")  In order to escape federal jurisdiction under this

"narrow exception," Plaintiff bears the burden of coming forward with facts proving:

1)     greater than two-thirds of the members of the putative class are citizens of Louisiana, 28 U.S.C. § 1332(d)(4)(A)(i)(I); *and*

2)     the class seeks "significant relief" from at least one of the Louisiana insurance company defendants, whose conduct forms a "significant basis" of the asserted claims, *id.* § 1332(d)(4)(A)(i)(II); *and*

3)     principal injuries resulting from the alleged conduct or related conduct were incurred in the forum state, *id.* § 1332(d)(4)(A)(i)(III); *and*

4)     no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the three years preceding the filing of this action, *id.* § 1332(d)(4)(A)(ii).

If Plaintiff fails to demonstrate that each and every of these requirements is met, then the local

controversy exception does not apply.  Here, Plaintiff does not and cannot show that the first

(greater than two-thirds of putative class members are citizens of Louisiana), second (significant

relief sought from an in-state defendant) and fourth (no prior, similar class action) requirements

are met.  Plaintiff attempts to retrofit its lawsuit to the statutory exception, but in doing so

neglects the plain language of CAFA, its legislative history, and the relevant case law.

1.     Numerous Prior Putative Class Actions Involving "the Same or Similar Factual Allegations" Have Been Filed in the Past Three Years.

In order to satisfy its burden of establishing that the local controversy exception applies,

6

Plaintiff must prove, among other things, that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  28 U.S.C. § 1332(d)(4)(A)(ii).  Plaintiff does not and cannot do so.

The last two years have seen the filing of countless putative class actions involving the "same or similar factual allegations" stated here, seeking insurance coverage for property damage caused by Hurricanes Katrina and/or Rita.  In Louisiana alone, these actions include (but are not limited to):[2] *Cherardy v. Wooley*, (3:05-cv-01140-FJP-CN, M.D. La.); *Abadie v. Aegis Sec. Ins. Co.*, (2:06-cv-05164-SRD-JCW, E.D. La.); *Chauvin v. State Farm Fire and Cas. Co.*, (2:05-cv-06454-SSV-ALC, E.D. La.); *Wallace v. La. Citizens Prop. Ins. Corp.*, (2:06-cv-00114-ML-SS 4, E.D. La.); *Crespo v. Liberty Mut. Fire Ins. Co.*, (2:06-cv-04667-LMA-SS, E.D. La.); *Caruso v. Allstate Ins. Co.*, (2:06-cv-02613-SSV-ALC, E.D. La.); *Henry v. Allstate Ins. Co.*, (2:07-cv-01738-MLCF-ALC, E.D. La.) (*Henry II*); *Aguilar v. Allstate Fire and Casualty Ins. Co.*, (2:06-cv-04660-MLCF-SS, E.D. La.); *Austin v. Allstate Fire and Casualty Co.*, (2:06-cv-05383-SRD-JCW, E.D. La.); *Chetta v. State Farm Fire and Casualty Co.*, (2:06-cv-04662-ML-SS, E.D. La.); *Hammer v. State Farm Fire and Casualty Co.*, (2:06-cv-09152-SRD-JCW, E.D. La.); *In re: Katrina Canal Breaches Consolidated Litigation* (2:05-cv-04182-SRD-JCW, E.D. La.);  *Kiefer v. Allstate Ins. Co.*, (2:06-cv-05370-SRD-JCW, E.D. La.); *Terrebonne v. Allstate Ins. Co.*, (2:06-cv-04697-SSV-ALC, E.D. La.); *Turk v. Louisiana Citizens Property Ins. Corp.*, (6:06-cv-00144-RTH-CMH, W.D. La.); *Williams v. State Farm and Casualty Co.*, (2:06-cv-02919-SRD-JCW, E.D. La.); *Maynard v. St. Paul Travelers Cos.*, (2:06-cv-11385-SRD-JCW, E.D. La.).

As in these prior class actions, Plaintiff here claims that the Defendant insurers did not adequately compensate policyholders for property damage caused by Hurricanes Katrina and Rita.  In making this claim, Plaintiff relies upon the same "factual allegations" as the prior

---

[2] For the Court's convenience, the listed actions are described briefly in the Appendix included as an exhibit to this brief (*see* Exhibit A hereto), and the complaints themselves are included as exhibits as well (*see* Exhibit B, Parts 1-7).

lawsuits:  damage to policyholders' property was caused not by "flood" but by the alleged non-excluded causes of "storm surge," "windstorm," and/or by third-party negligence in the breaching of man-made levees.  (Am. Petition ¶¶ 46(a)-(d).)  And, as in the prior lawsuits, Plaintiff seeks recovery of the "full value" of policyholder homes covered under "All Risk" policies and pursuant to Louisiana's Valued Policy Law.  (Am. Petition ¶¶ 46(e)-(f).)

As an example, both the Amended Petition here and the Petition in *Chehardy* seek a declaration that the damage caused by water entering Louisiana parishes does not fall within the definition of "storm or tidal surge," "rising water," or "flood."  (Am. Petition ¶ 46(c); *Chehardy* Am. Petition ¶ 3.)  Both suits also seek a declaration that the efficient proximate cause of the losses suffered by putative class members was windstorm, a peril covered under their policies. (Am. Petition ¶ 46(a); *Chehardy* Am. Petition ¶¶ 3, 6, 64.)  Likewise the complaint in *Chauvin* seeks a determination that the cause of the losses suffered by putative class members was "hurricane-related wind, which is a covered peril" and that pursuant to Louisiana's Valued Policy Law, the insurer defendants in that case were liable to class members for the dwelling limits of their policies.  (*Chauvin* Cplt. at ¶¶ V-VII, XIII; *compare* Am. Petition ¶¶ 42, 46(a).).

Plaintiff makes no attempt to distinguish the insurance coverage issues in this case from those raised in the many prior putative class actions.  Plaintiff argues only that this suit is "fundamentally different" because (Plaintiff claims) it is an "enforcement action" brought in the Attorney General's capacity as "*parens patriae*."  (Remand Br. at 16.)  However, the fact that Plaintiff here is the State or that the State asserts a purported interest in this action through the Road Home program is insufficient to distinguish it from the prior class actions.[3]

As the CAFA Senate Report states:  "It is the Committee's intention that this factor [prior class actions] be *interpreted liberally* and that plaintiffs not be able to plead around it with *creative legal theories*."  S. Rep. 109-14, at 38 (emphasis added).  On its face, the statute focuses

---

[3] In addition, as discussed *infra* in Section III.A, CAFA includes no exception for suits by attorneys general.

on whether the prior and current actions assert "the same or similar factual allegations . . . on behalf of the same or other persons" – not whether they assert identical claims on behalf of identical named plaintiffs.  28 U.S.C. § 1332(d)(4)(A)(ii).  The Senate Report echoes this same common sense understanding of the statutory language:

> [T]he inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed.  [Rather], [t]he inquiry is whether *similar factual allegations* have been made against the defendant in multiple class actions, regardless of whether the same causes of actions were asserted or whether the purported plaintiff classes were the same (or even overlapped in significant respects).

S. Rep. 109-14, at 41 (emphasis added).  While the Road Home program may be the legal vehicle through which the State purports to take its interest in this putative class action, the underlying "factual allegations" – relating to property damage caused by Hurricanes Katrina and/or Rita – are "the same or similar" as in the numerous such class action filings that came before.

Here, not only do the factual allegations between this action and the prior class actions substantially overlap, Plaintiff purports to bring this action on behalf of persons who were potential members of the other putative class actions that have been filed.  Plaintiff admits that its claims are derivative of Road Home participants who are the Defendants' policyholders.  According to Plaintiff, this action is brought "to enforce state law contractual obligations owed by the Insurance Company Defendants under 'All-Risk' insurance policies."  (Am. Petition ¶ 1.)  Plaintiff does not claim to be a party to or beneficiary of any of those contracts; rather it asserts that Road Home participants were required to execute an assignment in its favor as a condition to receipt of funds.  (*Id.* ¶ 11.) They thus claim to be subrogated to the very claims that were at issue in other suits.

Further, as of October 2007, while the Road Home program had received over 185,000 applications, it had actually paid fewer than 68,000 of those applicants.  *See* Road Home Program, http://www.road2la.org (last visited Nov. 6, 2007).  The remaining 117,000+ applicants have not given an assignment to Plaintiff.  Without conceding the validity of any

9

assignments received by Plaintiff, State Farm notes that the claims of the majority of putative class members, who have not given any assignments, are in no way different from those claims asserted in numerous of the previously filed putative class actions.   The Plaintiff's claims therefore, are (at best) derivative of the claims of the putative class members and almost entirely redundant of the claims asserted on behalf of such persons in other class actions.

## 2.   **"Significant Relief" Is Not Sought From Any Louisiana Citizen.**

Contrary to Plaintiff's assertions, the members of the putative class are not seeking "significant relief" from any Louisiana Defendant.   Indeed, as shown in detail below, the suit overwhelmingly seeks relief from out-of-state defendants.

Under CAFA, the relief sought from a defendant is only significant "when the relief sought against the defendant is a significant portion of the entire relief sought by the class." *Evans v. Walter Indus.*, *Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006); *accord Escoe v. State Farm Fire & Cas. Co.*, No. 07-1123, 2007 WL 1207231, at *2 (E.D. La. April 23, 2007); *Kearns v. Ford Motor Co.*, No. CV05-5644 2005 WL 3967998, at *10 (C.D. Cal. Nov. 21, 2005).

Plaintiff's own Amended Petition reveals that the Louisiana Defendants do not comprise a "significant" component of the relief sought.   While Plaintiff makes conclusory allegations that the putative class seeks "significant relief" from the eleven Louisiana Insurance Companies (Am. Petition ¶ 20), such allegations are insufficient to satisfy Plaintiff's burden of establishing the local controversy exception.   *See Preston v. Tenet Healthsystem Memorial Med. Ctr.*, 485 F.3d 793, 797 (5th Cir. 2007) ("*Preston I*").   Indeed, these allegations are contradicted on the face of Plaintiff's own Amended Petition, which names only 11 Louisiana insurers – and *203* out-of-state Insurance Company Defendants.

Market share data also demonstrates that significant relief in this suit is being sought from out-of-state insurers only.   In fact, the Louisiana Department of Insurance ("La. DOI"), one of the State's own agencies, filed market share data in *Chehardy v. Wooley*, see Docket Entry 149, Case Nos. 05-1140, 05-1162, 05-1163 (M.D. La. Jan. 27, 2006), illustrating this point. That filing catalogued all homeowner insurers writing or selling insurance in Louisiana in 2004 –

899266v.1

ranked according to "Total Subject Premium" as of March 1, 2005.  (*Id*. at 3-9.)  Nearly 90% of all the 2004 written premiums ($1,217,924,874 of $1,354,015,842) was written by non-Louisiana entities.  (*Id*.)  Only six of the top 100 homeowners insurers resided in Louisiana.  (*Id*.)  The 94 *non*-Louisiana entities were responsible for an overwhelming 89.9% of the premiums.

Similarly, in *Gauntt v. Louisiana Citizens Property Insurance Corp*., Civil Action No. 06-7817, 2007 WL 128801 (E.D. La. Jan. 16, 2007) (Berrigan, J.) Judge Berrigan relied on A.M. Best data – with State Farm and Allstate comprising a combined 52.9% of the market – in determining that the relief sought from Louisiana defendants, with small market shares totaling 7.6%, was not significant under the local controversy exception.  *See id.*, at *2.  The court concluded:  "The market share statistics cited above show that it is likely that only a small portion of the members of the putative class were harmed by the Louisiana defendants and, as a result, the relief sought from them is relatively small as compared to the relief sought from the out-of-state defendants."  *Id*. (denying motion to remand).

The data compiled by A.M. Best Report reveals that the top two homeowner insurers in Louisiana in 2005 were State Farm Group and Allstate Insurance Group.  These two insurers alone comprised over 50% of Louisiana policies.  (*See* Exhibit C.)  Neither State Farm, nor the Allstate entities listed as defendants in this suit, are Louisiana citizens.  Clearly, the majority of the relief sought in this action will be sought from out-of-state defendants.[4]

The legislative history discussing this provision of CAFA makes clear that the presence of these 11 Louisiana insurers amongst the 214 Insurance Company Defendants is not sufficient

---

[4] The A.M. Best Report data does not offer information about Louisiana Citizens; Louisiana Citizens is a state-sponsored insurer of last resort and as such faces different reporting requirements. Louisiana Citizens' last annual statement, for the year 2004, publicly available and filed with the Louisiana Department of Insurance, indicates that Louisiana Citizens wrote roughly $67,500,000 in homeowners insurance premiums in Louisiana. (*See* Exhibit D, at 8.) Citizens also has a second unit, which wrote approximately $3,150,000 in total direct homeowners insurance premiums in 2004. (*See* Exhibit E, at 8.) These figures total to $70,650,000. The A.M. Best Report indicates that the total written premiums for the top 50 insurers in 2004, excluding Citizens, was $925,000,000. Louisiana Citizens, then, wrote approximately 7.1% of the total premiums by itself and the top fifty insurers (which together do not represent the full market) in 2004, which hardly qualifies as "significant" under the standards discussed above.

to meet this "significant relief" test.   The Senate Committee Report explains the "significant relief" criteria as follows:

> Under the second criterion, there must be at least one real local defendant.  By that the Committee intends that the local defendant must be a primary focus . . . not just a peripheral defendant. The defendant must be a target from whom significant relief is sought by the class (as opposed to a subset of the class membership. . . .)

S. Rep. 109-14, at 40.   This same point was made by Representative James Sensenbrenner, Chairman of the House Judiciary Committee:   A suit in which a local defendant "had contact with only some of the purported class members" and in which the majority of the relief sought was from out-of-state defendants, would not be eligible for the local controversy exception.  151 Cong. Rec. H723-01, 731 (2005); *see also* S. Rep. 109-14, at 40 (noting that if a defendant "had contact with only some purported class members," that defendant "would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole.")

There is simply no reasonable interpretation of the Congressional Report and the above comments that would allow the presence of Citizens to trigger the local controversy exception. A market share of 7.5% is, by any definition, a very small subset of the entire market.   Of the 214 insurers named in Plaintiff's Amended Petition, only eleven are listed as domiciled in Louisiana.   Of those eleven, only Louisiana Citizens has a market share over 1%.   Thus, this lawsuit is essentially one between the plaintiff members of one state and a multitude of out-of-state defendants.

Finally, Plaintiff relies upon *Caruso v. Allstate Insurance Co.*, 469 F. Supp. 2d. 364 (E.D. La. 2007), in which the court found that Louisiana Citizens' 7.5% market share was "significant" within the context of the local controversy exception.   As shown below, however, *Caruso* is completely inapposite.[5]

---

[5] State Farm respectfully submits that *Caruso* was also wrongly decided, although the Court need not even reach this issue because, as shown in text, the case is entirely inapposite to the situation here.  In brief, however, the textual analysis in *Caruso* was founded on a faulty basic premise:  that the local controversy exception "requires a 'significant' defendant to be from the forum state."  *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 368 (E.D. La. 2007).  Rather, what CAFA requires is that "significant *(cont'd)*

Of critical significance, unlike here, there were only *six* insurer defendants in *Caruso*. As the largest local insurer, Louisiana Citizens had a 7.5% overall market share. The remaining five defendants had a total of less than 43% of the market. In determining whether the relief sought from Citizens in *Caruso* constituted "a significant portion of the relief sought by the class," *Escoe*, 2007 WL 1207231, at *2, the appropriate measure would be to compare 7.5% to 43%.

Here, on the other hand, even if Louisiana Citizens has a 7.5% share, the remaining *213 Defendants* have a total of over 92% of the market. Performing the proper comparison in the present case (7.5% vs. 92%) is essentially like taking Louisiana Citizens' "significance" in *Caruso* – and cutting it in half. (Actually, even less than half.) Accordingly, the result in *Caruso* has no bearing here whatsoever – except to highlight the relative insignificance of Louisiana Citizens as a target from whom relief is sought in *this* case.

Accordingly, in light of the foregoing facts and case law, it is clear that Plaintiff has not met its burden of proving that Louisiana Citizens would ultimately be made to satisfy a "significant" portion of the "billions" of dollars in relief that Plaintiff seeks here.

Alternatively, the citizenship of the Louisiana defendants should not be considered because they are not properly joined with the claims against State Farm. (This Court need not reach this issue if it finds that Plaintiffs have failed to demonstrate any of the other requirements for the local controversy exception.) Where, as here, a plaintiff alleges only parallel claims, joined against separate diverse and non-diverse defendants, those claims cannot defeat diversity jurisdiction because they are fraudulently joined as a matter of law. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996), *abrogated on other grounds by Cohen v.*

_____

(cont'd from previous page)

*relief*" be sought from an in-state citizen, not that citizen be a "significant defendant" – which term is not used or referenced anywhere in the statute. This error led the court down two incorrect paths. *First*, the court defined "significance" by reference to the definition of "*primary* defendant" (under CAFA's Home State exception). In reality, however, the court was comparing apples and oranges, primary defendants and significant relief. This error infected the court's entire analysis. *Second*, in finding that Citizens was a "significant defendant," the court compared its 7.5% share to Allstate's 14% share, rather than to the whole of relief sought from all of the other defendants combined.

899266v.1

*Office Depot*, 204 F.3d 1069 (11th Cir. 2000); *Mallard v. Prudential Ins. Co. of Am.*, No. 95A-908N, 1996 WL 170126, at *3 (M.D. Ala. Mar. 29, 1996); *Turpeau v. Fidelity Fin. Servs. Inc.*, 936 F.Supp. 975 (N.D. Ga. 1996).

In *Taspcott*, plaintiffs alleged that a class of defendants, diverse and non-diverse, sold automobile parts to numerous different putative plaintiffs in violation of state law. *Id* at 1359-60. One of the diverse defendants removed to federal court, asserting improper joinder. The court held that removal was appropriate because a mere allegation of a common business practice does not subject all defendants to joinder, and the transactions involved were wholly distinct, with no allegations of joint liability or conspiracy. *Id.* at 1355-60 ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's 'right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy.'") (footnote omitted).[6]

Numerous courts in this Judicial District have applied the fraudulent misjoinder doctrine to nearly identical claims brought by insureds of different insurers arising out of Hurricanes Katrina and Rita. *See Accardo v. Lafayette Ins. Co.*, 2007 WL 325368, at 2-3 (E.D. La. Jan. 30, 2007) (Vance, J.); *Berthelot v. Boh Brothers Construction Co., L.L.C.*, No. 05-4182, 2006 WL 1239132, at 11-12 (E.D. La. June 1, 2006) (Duval, J.); *Defourneaux v. Metro. Prop. & Cas. Ins. Co.*, No. 06-3809, 2006 WL 2524165, at *2 (E.D. La. Aug. 30, 2006) (Feldman, J.).[7] The fact

---

[6] *Accord Mallard*, 1996 WL 170126, at *3; *Turpeau*, 936 F.Supp. at 978-79; *see also In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002).

[7] In an attempt to distinguish its case from the precedents cited above, Plaintiff claims that there exists a "community of interest" between the Defendants joined, by reason of the fact that they share a common adversary: the State of Louisiana. (Remand Br. at 35.) The presence of that "core" plaintiff, the argument goes, supplies sufficient factual overlap between each Defendant's individual disputes with its own insureds that the claims are properly joined. (*Id.*) (For this standard, Plaintiff relies on Louisiana state law; although this Court has previously applied Federal Rule of Civil Procedure 20 to resolve questions of misjoinder. The facts here preclude joinder under any standard.) However, the bald fact that the State's purported interest in these tens of thousands of disparate claims happens to derive from the Road Home Program does not – in any way, shape or form – go to the underlying merits of those claims. Each of those claims involves a different insurance company, a different insured, a different insurance policy, and/or a different set of factual circumstances attending that insured's alleged property damage.

14

that this action is a putative class action and is being removed pursuant to CAFA does not alter this result.  The basis for the fraudulent misjoinder doctrine is Rule 20 of the Federal Rules of Civil Procedure which applies with equal force to putative class actions.[8]

Here, the claims levied against State Farm here are wholly unrelated to the claims against the other Insurer Defendants.  The only factual nexus linking State Farm to the other Insurer Defendants is that the alleged denial of claims arose from the aftermath of Hurricanes Katrina and Rita – but as the court in *Tapscott* noted, alleged parallel violations of a state law are not sufficient for joinder.  *See* 77 F.3d at 1360 (when "[t]he only similarity between the allegations [of defendants] are allegations of violations of Alabama [Code] . . . [s]uch commonality on its face is insufficient for joinder").   Here, the claims alleged against State Farm and the different Insurer Defendants are nothing more than parallel, unrelated claims:  they arise out of different contracts, with different language, sold to different individuals by over 200 different companies.  *See also, e.g.*, *DIRECTV, Inc. v. Beecher*, 296 F. Supp.2d 937, 944 (S.D.Ind. 2003) ("[Plaintiff's] claims against the different defendants do not arise out of the same transaction, occurrence, or series of occurrences.  Instead, plaintiff *alleges that many individuals have wronged it in the same way*, *but in separate transactions or occurrences*.  Accordingly, the court finds that the defendants have been misjoined in this case.") (emphasis added.)[9]

### 3. There Is No Evidence that Two-Thirds of the Putative Class Are Louisiana Citizens.

In order to rely upon the local controversy exception, Plaintiff must also satisfy its burden of proving, by a preponderance of the evidence, that "greater than two-thirds of the members of

---

[8] *See also* 28 U.S.C. § 1441(b) (non-federal question cases removable "only if none of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought") (emphasis added).

[9] In its Statement of Supplemental Grounds for Removal Applicable to State Farm Fire and Casualty Insurance Company and State Farm General Insurance Company (ECF Doc. No. 7866), State Farm set forth the jurisdictional facts as to it separately, demonstrating that each of the threshold CAFA requirements are met as to it.  These jurisdictional facts have not been challenged by Plaintiff.  State Farm incorporates its removal joinder herein by reference.

all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(I). In a vain effort to satisfy this necessary element, Plaintiff offers the conclusory statement that "the State plainly meets the requirement that at least two-thirds of the members of the proposed plaintiff classes are Louisiana citizens." (Remand Br. at 12.) Plaintiff is wrong.

As the Fifth Circuit has held, "the party moving for remand under the CAFA exceptions to federal jurisdiction must prove the citizenship requirement *by a preponderance of the evidence*." *Preston II*, 485 F.3d at 798 (emphasis added). "In determining diversity jurisdiction, the state where someone establishes his domicile serves a dual function as his state of citizenship. . . . Domicile requires the demonstration of two factors: residence and intention to remain." *Preston II*, 485 F.3d at 797-98. In satisfying the burden of proving these two factors, "even under the exceptional circumstances of the hurricane, attendant flooding, and forced evacuation, plaintiffs must offer *more than conclusory statements* to prove citizenship at the relevant time period." *Id.* at 803 (emphasis added). "Allocating the burden in this manner is important to ensure that the named plaintiffs will not be able to evade federal jurisdiction with *vague class definitions or other efforts to obscure the citizenship of class members*." S. Rep. 109-14, at 43 (2005) *as reprinted in* 2005 U.S.S.C.A.N. 3, 41 (emphasis added).

As a threshold matter, Plaintiff offers no evidence – and does not even address the issue – of the putative class members' intention to remain in Louisiana. In *Preston I*, the Fifth Circuit squarely rejected an almost identical attempt to satisfy the two-thirds citizenship requirement based solely on evidence of class members' states of residence. The court stated:

> We acknowledge that many Hurricane Katrina victims may intend to return home and are currently dispersed throughout the nation. . . . Despite the logistical challenges of offering reliable evidence at this preliminary jurisdictional stage, *CAFA does not permit the courts to make a citizenship determination based on a record **bare of any evidence showing class members' intent to be domiciled in Louisiana***.

899266v.1

*Preston I*, at 801-02 (emphasis added).[10]  As in *Preston I*, the record here is indisputably and fatally bare of any such evidence.

But even if Plaintiff had met its burden of proving intent to remain – and it has not – Plaintiff also fails to prove that two-thirds of the putative class members *resided* in Louisiana at the time the Amended Petition was filed.  In relevant part, Plaintiff defines the putative class as: "All *current and former citizens* of the State of Louisiana who have applied for and received or will receive funds through The Road Home Program."  (Am. Petition ¶ 22 (emphasis added).)

But this class definition itself begs the very question at issue here: at the time the Amended Petition was filed, how many of the putative class members were "current" citizens and how many of them were "former" citizens?  How many moved out of Louisiana before or after the hurricanes?  How many moved back?  When?  Plaintiff provides no answers – much less any evidence – in response to these questions.[11]

Finally, Plaintiff also includes *future* claimants in its putative class definition.  Plaintiff must come forward with something – indeed, a preponderance of the evidence – to prove the citizenship of these anticipated claimants.  But Plaintiff does not offer any evidence whatsoever as to these anticipated class members (who by definition do not even exist yet), or even any indication as to their potential number.  With nothing to rely upon but its own say-so, Plaintiff

---

[10] *See also Phillips v. Severn Trent Env. Svcs., Inc..*, No. 07-3889, 2007 WL 2757131, at *3 (E.D. La. Sept. 19, 2007) ("Based on the plaintiff's own definition of the class in his petition, it is clear that the class would contain only those people who were residing in or occupying a premise in Louisiana in May 2007.  However, that alone does not establish that the class members are Louisiana citizens, because 'citizenship' in a state requires more than residence.  It requires domicile.  Although there is some intuitive appeal to the claim that most of the people using the tap water between May 15 and May 20, 2007 in Plaquemines Parish were citizens of Louisiana when the complaint was filed, the plaintiff has offered no evidence in support of such an inference.  By not offering additional indicia of Louisiana citizenship of the putative class members apart from their mere residency in Plaquemines Parish in May 2007, the plaintiff has not met his burden of proof.") (citation omitted).

[11] The only evidence proffered by Plaintiff is (apparently) a list of persons who "have received or may be eligible to receive funds through Road Home."  (Remand Br. at 13.)  Although this list was filed under seal and never provided to the Defendants, Plaintiff does not even attempt to claim that this list shows that two-thirds of the putative class members were citizens (or even residents) of Louisiana at the time the Amended Petition was filed.

899266v.1

fails to meet its burden here.

Accordingly, in light of Plaintiff's indisputable failure to come forward with evidence proving that two-thirds of the putative class were Louisiana citizens when the Amended Petition was filed, Plaintiff cannot avail itself of CAFA's narrow local controversy exception.

**B.      The "Discretionary" Exception Does Not Apply.**

Plaintiff claims that "under the discretionary factors set forth in 28 U.S.C. § 1332(d)(3), the State's lawsuit should be remanded."  (Remand Br. at 11.)  Those "factors" are irrelevant, however, because Plaintiff does not – and does not even attempt to claim – that this suit satisfies the threshold requirement that "the primary defendants" be citizens of Louisiana.

Under the so-called "discretionary" exception, "[a] district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and *the primary defendants are citizens of the State in which the action was originally filed* based on consideration of" six enumerated factors.  28 U.S.C. § 1332(d)(3) (emphasis added).[12]

Moreover, it is well-settled that "*all*" of the primary defendants must be citizens of the forum state.  *See Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006) ("The plain text of § 1332(d)(5)(A), using the definite article before the plural nouns, requires that all primary defendants be states.  Had Congress desired the opposite, it would have used 'a' and the singular, or no article.  There is no tension between this plain language and the legislative history,

---

[12] The factors are:  "(A) whether the claims asserted involve matters of national or interstate interest; (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States; (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction; (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; (E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and (F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed."  28 U.S.C. § 1332(d)(3).

which explains that the exception is not meant to create a loophole whereby plaintiffs can avoid CAFA jurisdiction by naming a state as a primary defendant in an action largely targeting non-states"); *Phillips v. Severn Trent Envtl. Servs., Inc*, No. 07-3889, 2007 WL 2757131, at *4 (E.D. La. 2007); S. Rep. 109-14 at 36 (cases in which more than two-thirds of the members of the plaintiff class or one or more of the primary defendants are not citizens of the state in which the action was filed will be subject to federal jurisdiction.).

Plaintiff proffers various arguments relating to the six discretionary factors, but this puts the cart before the horse: a prerequisite to consideration of those factors is satisfaction of the threshold criterion that all of "the primary defendants" be citizens of Louisiana. They are not.

As discussed above with respect to the local controversy exception, even the most "significant" of the Louisiana Defendants has a market share of only 7.5%. On its face, such a share cannot qualify Citizens as a "primary defendant" when State Farm's share is 34.5% and Allstate's is 21.8%. (*See* Ex. C.) And State Farm and Allstate, both out-of-state Defendants, are certainly themselves "primary defendants."

Accordingly, because this case does not satisfy the threshold requirements of the exception, there is no need to reach the discretionary factors at all, and this exception is inapplicable on its face.

## III.   CAFA DOES NOT CONTAIN ANY EXCEPTIONS FOR SUITS BY ATTORNEYS GENERAL OR AGAINST INSURERS

Correctly anticipating that no existing CAFA exceptions apply, Plaintiff also argues that CAFA should not apply to a so-called local suit by a state attorney general. As a threshold matter, and as shown in detail below, the plain words of the statute allow no room for Plaintiff's impassioned pleas that this is a local dispute affecting local citizens. Plaintiff in essence asks the Court to create a new, *normative* local controversy exception to CAFA, whereby courts would weigh an undefined universe of considerations in deciding whether or not a particular dispute is "local enough" to be subject to federal jurisdiction. Initially, as explained in the Senate Report, "the core concept of [CAFA] is that class actions filed against defendants outside their home

state are subject to federal jurisdiction if citizens from different states are on opposing sides and more than $5 million is at issue."  S. Rep. 109-14, at 36.  That is clearly the case here.  And, as discussed above, CAFA already contains a "local controversy" exception, and Congress has spoken as to the strict requirements necessary to trigger that "narrow exception."  *Id.*, at 39.  That exception was "carefully drafted to ensure that it does not become a jurisdictional loophole."  *Id.*

### A.   Congress Specifically Rejected an Amendment for Suits by Attorneys General.

Plaintiff asks this Court to recognize an exception to CAFA for *parens patriae* actions, even though the statute indisputably contains no exceptions for, and makes no distinctions concerning, *parens patriae* actions.  Such actions are not even mentioned.  Plaintiff's "*parens patriae*" argument is a perfect example of the "creative legal theories" that Congress sought to exclude by specifically defining statutory exceptions, and Plaintiff's attempt to sidestep CAFA's strict requirements fails as a matter of law.

In support of its legislative history argument, Plaintiff cites to the comments of Senators Grassley and Cornyn during debate over CAFA, who observed that CAFA would not interfere with the *parens patriae* jurisdiction of attorneys general.  Plaintiff's reliance upon these remarks is of no avail – and indeed dooms Plaintiff's position here.  On their face, those comments refer to a proposed amendment to exempt Attorney General actions from CAFA – an amendment which the Senate debated ***and rejected***.  *See* S. Amend. No. 5 to S. 5, 109th Cong. (1st Sess., 2005) (amendment tabled and never passed).  In short, Plaintiff asks this Court to judicially graft on to the statute an exception that was specifically rejected by Congress.  However, it is a fundamental rule of statutory construction that the failure to enact an amendment or bill precludes a later, interpretive inclusion of that amendment's or bill's provisions into the statute.  *See F.D.A. v. Brown-Williamson Tobacco Corp.*, 529 U.S. 120, 147 (2000) (finding the fact that "Congress considered and rejected several proposals to give the FDA authority to regulate tobacco" to be an expression of clear intent not to give that authority); *Rapanos v. United States*, 126 S. Ct. 2208, 2256 (2006) (rejecting an interpretation that would narrow jurisdiction for the

20

Army Corps of Engineers in part because "Corps' asserted jurisdiction over wetlands had been specifically brought to Congress' attention in 1977, [and] Congress had rejected an amendment that would have narrowed that jurisdiction"); *Nat'l Automatic Laundry & Cleaning Council v. Shultz*, 443 F.2d 689, 706 (D.C. Cir. 1971) (where "positive action by Congress reject[s] . . . limiting amendments" the "legislative history reflects clear purpose, not ambiguous silence.").

Indeed, one of the reasons given by several senators for rejecting the amendment was that it would allow private attorneys to "game" the system, thereby creating "the potential for grave abuses" that could completely undermine the intent of the legislation. *See* 151 Cong. Rec. S1157-02, S1162, *available at* 2005 WL 309648 (Feb. 9, 2005) (statement of Senator Cornyn). As Senator Hatch explained:

> At worst, it will create a loophole that some enterprising plaintiffs' lawyers will surely manipulate in order to keep their lucrative class action lawsuits in State court.
>
> . . . .
>
> If this legislation enables State attorneys general to keep all class actions in State court, it will not take long for plaintiffs' lawyers to figure out that all they need to do to avoid the impact of S. 5 is to persuade a State attorney general to simply lend the name of his or her office to a private class action.

*Id.* at S1163-64.  Likewise, Senator Grassley argued:

> I ask my colleagues not to be fooled.  Although this amendment sounds good, and there was a good presentation made by the authors of the amendment, it is potentially harmful and could lead to gaming by class action lawyers. . . . Plaintiffs' lawyers could simply ask State attorneys general to lend their name to a class action lawsuit so as to keep them in the State court.  That creates a very serious loophole in this bill.  We should not risk creating a situation where State attorneys general can be used as pawns so that crafty class action lawyers can avoid the jurisdictional provisions of this bill.

*Id.* at S1163.  It is, therefore, worth noting that, in this case, the State is represented by no less than five outside law firms.

Moreover, Plaintiff misconstrues the remarks of certain senators, who did not suggest that there was an implicit CAFA exception for *parens patriae* actions.  Instead, they were explaining the fundamental difference between a *parens patriae* and a class action.  For example,

21

Senator Grassley explained:

> State attorneys general are not required to use class actions to enforce their State laws. If State attorneys general want to recover on behalf of their citizens, they can always bring actions as *parens patriae* suits under statutes that authorize representative actions or even as direct enforcement actions. Again, such lawsuits will not be subject to this bill.

*Id.* at S1164. Likewise, Senator Hatch stated:

> State attorneys general have authority under the laws of every State in this country to bring enforcement actions to protect their citizens. These suits, known commonly as *parens patriae* cases, are similar to class actions to the extent that the attorney general represents a large group of people.
>
> But let me be perfectly clear that they are not class actions.

*Id.* at S1163.[13]

CAFA defines a class action as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Here, Plaintiff expressly sought certification of a class action pursuant to Louisiana Code article 591, the Louisiana analogue to Federal Rule of Civil Procedure 23. (Am. Petition ¶¶ 21-23, XIII(a).) Regardless of whether another vehicle such as a direct enforcement or *parens patria*e action might have been available to the Plaintiff, it chose to seek class certification in the petition, thereby subjecting itself to federal jurisdiction under CAFA.

Further, it is irrelevant what label Plaintiff now decides to affix to this lawsuit. It is axiomatic that in removal cases "jurisdiction [is determined] on the basis of claims in the state court complaint *as it exist[ed] at the time of removal*." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995) (emphasis added). It could be not clearer that Plaintiff's "First Amended and Restated Class Action Petition" is filed as a conventional class action lawsuit, not a *parens patriae* proceeding. Indeed, this is evident on the face of the Amended

---

[13] State Farm does not concede that the State would have *parens patriae* standing in this case. However, that issue is irrelevant to the current motion. The fact is that the State brought this action as a class action, thereby subjecting itself to CAFA jurisdiction.

899266v.1

Petition itself, which (in addition to its title) repeatedly asserts that it is a class action brought on behalf of a putative class of insureds. (*See, e.g.*, Am. Petition ¶¶ 20, 21(d), 21(f), 21(h), 21(i), 21(j), 22-24, 33, 43.) And neither in that Petition nor in the prior original Petition, did Plaintiff ever even refer to this as a *parens patriae* proceeding.

State Farm does not here address the hypothetical questions of whether Plaintiff could bring a *parens patriae* action or whether doing so would enable Plaintiff to evade this Court's jurisdiction. State Farm notes only Plaintiff's own clear choice to bring this case as a class action, and the well-settled precedent that precludes Plaintiff from now re-characterizing its lawsuit for the purposes of this motion.

**B.    Plaintiff Cannot Create a New "McCarran-Ferguson Exception" to CAFA.**

Plaintiff argues that because the McCarran-Ferguson Act assigns to the states the power to regulate the "business of insurance," a suit dealing with insurance matters is inherently a "local" dispute not covered by CAFA. In short, Plaintiff attempts to engraft a new "McCarran-Ferguson exception" onto the statute. This quixotic effort to evade federal jurisdiction is without merit and must be rejected.

As a threshold matter, Plaintiff's argument that this action should be remanded because insurance is inherently a state area of law finds no support in either the statute or its legislative history. Except for class actions that *solely* involve specified claims under *specifically identified* areas of law,[14] the nature of the claims being asserted has no bearing on whether CAFA applies. Thus, the fact that insurance is regulated at the state level is of no moment. That is equally true of most areas of law (e.g., consumer fraud) that form the basis for state law-based class actions. Nowhere did Congress manifest any intent that either insurance or consumer protection disputes would be exempt from CAFA's scope. Indeed, the legislative history makes clear that Congress

---

[14] The relevant substantive law exceptions concern certain claims arising under the Securities Act of 1933 and Securities Exchange Act of 1934 or claims that relate to the internal affairs or governance of a corporation or business that arise under the law of the state where the business is incorporated or organized. 28 U.S.C § 1332(d)(9).

23

specifically anticipated that CAFA would apply to suits on behalf of consumers and/or against insurers.  S. Rep. 109-14, at 5 (noting that CAFA contains a consumer bill of rights); *id.* at 11 (identifying class action brought pursuant to a New Jersey consumer protection statute as an example of class action abuse); *id.* at 21 (noting that abusive class action settlements are frequently filed against insurance companies to coerce settlements); *id.* at 23-24 (describing abusive class actions against insurers); *id.* at 40 (giving as an example of a removable case a consumer fraud action against an insurance company).

Further, "[t]he Fifth Circuit has repeatedly rejected the argument that the McCarran-Ferguson Act reverse preempts the diversity jurisdiction of federal courts." *Peoples Benefit Life Ins. Co. v. Dale*, No. 3:99CV537BN, 1999 WL 33545578, at *6 (S.D. Miss. Dec. 29, 1999); *see also Martin Ins. Agency, Inc. v. Prudential Reins. Co.*, 910 F.2d 249, 254 (5th Cir. 1990) ("The McCarran-Ferguson Act did not remove diversity jurisdiction from the federal courts in insurance matters, but encourages the states to formulate their own systems to regulate insurers doing business in their states.") (internal quotation marks/citations omitted); *Munich Am. Reins. Co. v. Crawford*, 141 F.3d 585, 595 (5th Cir. 1998) (rejecting proposition that, under the McCarran-Ferguson Act, "Oklahoma law divested the district court of its diversity jurisdiction").

Indeed, as discussed above, numerous putative class actions pending in this District and the Western District seek to raise the same or similar insurance coverage issues as Plaintiff seeks to raise here, and thousands of such claims are before these courts in non-class actions as well. To State Farm's knowledge, at least, there has been no contention that the McCarran-Ferguson Act precludes adjudication of such claims.

Further, Plaintiff does not – and could not – identify any way in which having this dispute decided in a federal forum would "invalidate, impair, or supersede" any provision of Louisiana's insurance code.  *See* 15 U.S.C. 1012(b); *see also Humana Inc. v. Forsyth*, 525 U.S. 299, 301 (1999) ("When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application.").

24

In any event, however, the CAFA statute does not contain even a single word about the McCarran-Ferguson Act or express any intent to exempt insurance-related suits, nor is there any conceivable ambiguity on the question.  Despite enumerating in detail several specific exceptions to the statute, Congress did not say anything on those subjects.

It is a "cardinal canon of statutory construction . . . that the words of a statute will be given their plain meaning absent ambiguity." *Texas Food Indus. Ass'n v. U.S. Dep't of Agric.*, 81 F.3d 578, 582 (5th Cir. 1996).  Reciprocally, the canon of *expressio unius est exclusio alterius* – the "expression of one thing is the exclusion of another," *Waggoner v. Gonzales*, 488 F.3d 632, 636 (5th Cir. 2007) (citation omitted) – prevents parties from adding new provisions to existing statutes.  As the Fifth Circuit has noted, "the enumeration of specific exclusions from the operation of a statute is an indication that the statute should apply to all cases *not specifically excluded*." *United States. v. Rocha*, 916 F.2d 219, 243 (5th Cir. 1990) (emphasis added) *aff'd* 48 Fed. Appx. 481 (5th Cir. 2002).  Where, as here, Congress has created a comprehensive act, expanding the jurisdiction of the federal courts, the fact that Congress carved out several specific exceptions is determinative:  the statute must be read to create no other exceptions.

Congress allowed for very little ambiguity in creating these exceptions, offering hard numerical cut-offs ("greater than two-thirds of the members" of a plaintiff class must be citizens of the originating state), high thresholds ("significant relief" and "primary defendant," for instance), and clearly identified claims that were exempt.  In each case, Congress gave strong indications that the exceptions to CAFA were intended to be few and far between.  It would go against years of precedent, as well as fundamental tenets of statutory construction, to allow for the judicial invention of further exceptions.

Indeed, a provision excepting insurance class actions from diversity jurisdiction under CAFA would have been a fairly remarkable and significant step, and – had any such exception been intended – one would expect some mention of it in the statute.  Or in the congressional statements.  Or in the House Reports.  Or in the Senate reports.  But there is none. *See Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (noting reluctance before "accept[ing] arguments that would

interpret the Code . . . to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history"); *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 367 (1988) (finding it "most improbable that Congress would have made a major change entitling undersecured creditors to postpetition interest without specifically mentioning it in the legislative history.")

Finally – though the lack of any ambiguity in the statute makes consideration of legislative history unnecessary – that history suggests that insurance class actions were in fact a serious concern underlying CAFA.  For example, the CAFA Senate Report notes:

> Not surprisingly, the ability to exercise unbounded leverage over a defendant corporation and the lure of huge attorneys' fees have led to the filing of many frivolous class actions.

> As District of Columbia Insurance Commissioner Lawrence Mirel has testified before the Committee, insurance companies are often forced to settle lawsuits even though the challenged actions were fully in accordance with state law – or encouraged by state policies.  For example, two automobile insurance companies, worried about mounting legal expenses and negative publicity, settled a lawsuit over a long-standing industry-wide practice of rounding insurance premiums up to the nearest dollar for nearly $36 million, even though the premiums were calculated according to specific instructions from the Texas Department of Insurance.

S. Rep. 109-14, at *21 (Feb. 28, 2005).  Plainly, Congress contemplated that CAFA would reach such insurance class actions.

And just as plain is that Congress specifically intended that CAFA's applicability not depend on the industry at issue:

> Opponents of S. 5 would prohibit federal courts from exercising jurisdiction over those class actions brought against certain industries, including HMOs, tobacco companies, nursing homes, and firearms manufacturers.  In addition, opponents have suggested that claims arising from state consumer protection statutes or state environmental protection laws should be exempt from the bill as well.

> However, industry-specific exemptions from federal jurisdiction make no sense.  Like bills of attainder, such exemptions irrationally single out a specific industry and slam the federal courthouse door in its face.  The proposal to carve out certain legitimate, yet presently unpopular, industries contradicts the constitutional purposes of federal diversity jurisdiction – to allow interstate businesses to have claims against them heard in federal court under diversity so as to avoid local

26

biases and to promote and enhance, rather than hamper, interstate commerce. The notion that certain industries are less entitled to federal court protection is utterly inconsistent with the purpose and goals of diversity jurisdiction. Simply put, there should not be one set of rules for one category of defendants and another for another group of defendants.

S. Rep. No. 109-14, at 54.

Accordingly, Plaintiff's attempt to create a "McCarran-Ferguson exception" is meritless and should be rejected.

## IV.    PLAINTIFF CANNOT HIDE BEHIND THE ELEVENTH AMENDMENT

Plaintiff next turns to the Eleventh Amendment, in the hope that hazy notions of "sovereign immunity" might provide a way to evade this Court's jurisdiction. They do not.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted *against one of the United States* by Citizens of another State, or by citizens or Subjects of any Foreign State.

U.S.C. Amend. XI (emphasis added). Despite this seemingly clear language,[15] Plaintiff claims that (1) the Eleventh Amendment applies even where the State is a *plaintiff*, rather than a defendant, and (2) even if not always applicable to plaintiff States, the Eleventh Amendment nonetheless applies in diversity cases. On both counts, Plaintiff is wrong.

It is axiomatic that the Eleventh Amendment does not apply where the State is a plaintiff. *See, e.g.*, *Huber, Hunt & Nichols, Inc. v. Architectural. Stone Co.*, 625 F.2d 22, 24 n.6 (5th Cir.

_____

[15] Plaintiff also ventures the suggestion that the Court should ignore the plain language of the Eleventh Amendment in determining the scope of "sovereign immunity." (Remand Br. at 21.) While the Supreme Court has in certain situations allowed expansion of the Eleventh Amendment beyond its plain words, this is not one of those situations. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 297 (S.D.N.Y. 2001) ("[T]he fact remains that this suit was brought by – not against – the state. *And while the Eleventh Amendment in some areas has been extended beyond its textual limits, this is not the case with respect to state plaintiffs.* Rather, the heavy weight of authority holds that the Eleventh Amendment does not bar removal.") (emphasis added); *In re Texas*, 110 F. Supp. 2d 514, 530 (E.D. Tex. 2000) ("A straight-forward reading of the Eleventh Amendment would seem to put this controversy to rest: the amendment proscribes suits against states, not by them. The Supreme Court's reading of the Eleventh Amendment, however, has consistently exceeded the scope of the amendment's text. And importantly, the Court's recent jurisprudence has reflected an enhanced respect for state sovereignty. *These initial observations aside, courts have consistently held that when a state brings suit as plaintiff the Eleventh Amendment is not implicated.*") (emphasis added) (internal citations omitted).

899266v.1

1980) ("*Of course*, the eleventh amendment is inapplicable where a state is a plaintiff.") (emphasis added) (*cited in* Remand Br. at 31 n.128 (quoting *Huber*, but omitting the words "of course")); *AT&T Commc'n. v. Bellsouth Telecomm. Inc.*, 238 F.3d 636, 639 n.1 (5th Cir. 2001) (Eleventh Amendment applies "when a plaintiff has served compulsory process upon that state as defendant in a matter"); *see also In re MTBE Prod. Liab. Litig.*, 488 F.3d 112, 119 (2d Cir. 2007) ("Our holding today that sovereign immunity does not preclude removal to federal court of a suit filed by a state plaintiff in state court is consistent with that reached by the *vast majority* of courts to have considered the issue.") (emphasis added); *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 847 (9th Cir. 2004) ("This history gives little indication that sovereign immunity was ever intended to protect *plaintiff* states.  Rather, it plainly understands sovereign immunity as protection from *being sued*."); *Oklahoma ex rel. Edmundson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1240 (10th Cir. 2004) ("Consistent with the constitutional text, relevant pronouncements of the Supreme Court, and the vast majority of district court cases directly on point, we hold that *the State may not assert its Eleventh Amendment immunity to preclude defendants' removal of the tort action it brought against them in its own courts*.") (emphasis added); *Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1564 (Fed. Cir. 1997) ("the Eleventh Amendment applies to suits 'against' a state, not suits by a state").

"Implicit in these holdings is the conclusion that where a state initiates suit, the policies behind sovereign immunity – namely, that states not suffer the indignity of being subjected to the 'coercive process of judicial tribunals at the instance of private parties,' and that a state not be 'thrust, by federal fiat and against its will, into the disfavored status of a debtor,' are not implicated."  *In re Texas*, 110 F. Supp. 2d 514, 531 (E.D. Tex. 2000) (quoting *Alden v. Maine*, 527 U.S. 706, 764 (1999)); *In re MTBE*, 488 F.3d at 119 ("Suffice it to say, the removal of these cases will not subject the states to the indignity or fiscal pain of being subject to a money judgment or an injunction – the core concerns underlying the sovereign immunity to which they are entitled."); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 n.11 (1984) ("The general rule is that a suit is against the sovereign if the judgment sought would

expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.") (internal quotation marks and citation omitted).

Plaintiff, however, claims that the Court should disregard all of this precedent because here jurisdiction is founded on diversity of citizenship, not the existence of a federal question.[16] But twice before has this Court faced the very same situation, and twice before found that the Eleventh Amendment did not apply to a plaintiff State in a diversity action.

In *School Board of the Parish of St. Charles v. Quala Systems, Inc.*, 159 F. Supp. 2d 295 (E.D. La. 2001) (Duval, J.), the School Board – a putative "arm" of the State of Louisiana – filed suit in Louisiana state court, asserting various state law claims against Quala to collect unpaid taxes under several local ordinances.  *Id*. at 297-98.  Quala removed the action to this Court on the basis of diversity jurisdiction.  *Id*. at 296.  Denying the School Board's motion to remand, this Court stated:

> Even were plaintiffs considered arms of the state under the Eleventh Amendment, a plain reading of the text of the Eleventh Amendment teaches that sovereign immunity is inapplicable to the matter before the Court. . . .  In *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22 (5th Cir. 1980), the Court of Appeals clearly stated that "[o]f course, the eleventh amendment is inapplicable where a state is the plaintiff."  *Id.* at 24, n.6.  *See also Thomas v. FAG Bearings Corp.*, 50 F.3d 502, 507 (8th Cir. 1995) (state waives eleventh amendment when it participates as plaintiff).  In this case, even were the movants found to be arms of the state, the eleventh amendment would remain inapplicable because the 'state' would be the plaintiff, not a defendant.

*Id*. at 297-98.

Likewise, in *Terrebone Parish School Board v. Mobil Oil Corp.*, No. 89-1983, 1989 WL

---

[16] Plaintiff observes:  "[A]lthough the Insurance Company Defendants will be able to point to several cases that allowed a defendant to remove the suit where a state was a plaintiff, the great majority of them involve federal questions."  (Remand Br. at 31.)  From this, Plaintiff deduces that the rule against plaintiff States only applies in federal question cases.  Plaintiff is right to notice the pattern, but draws the wrong inference from it.  Until the recent enactment of CAFA's minimal diversity standard in 2005, complete diversity of citizenship was strictly required under 28 U.S.C. § 1332.  Therefore, because States have no citizenship, *see Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 547 (5th Cir. 2006), it would have been rare indeed, pre-CAFA, to find a defendant claiming that diversity existed between itself and a plaintiff State.

140217, at *1 (E.D. La. Nov. 9, 1989), another putative "arm" of the State filed a state court action against Mobil, asserting state law claims arising out of the lease of a local parcel of property.  Mobil removed the action to this Court on the basis of diversity jurisdiction.  Denying the plaintiff's motion to remand, the Court stated:

> The Eleventh Amendment prohibits suits in federal court "commenced or prosecuted against one of the United States."   This amendment was enacted to protect states from federal judgments requiring payment of money which would interfere with states' fiscal autonomy and political sovereignty.  We are aware of no case holding that the Eleventh Amendment prevents removal of a suit filed by a state as a plaintiff.  We conclude that the Eleventh Amendment is inapplicable.

*Id*. at *1 (citations omitted); *see also In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 297 (S.D.N.Y. 2001) (in diversity case, rejecting claim that Eleventh Amendment applies to plaintiff States: "the heavy weight of authority holds that the Eleventh Amendment does not bar removal").  Plaintiff does not and could not distinguish these cases, both decided in this Court, both involving States as plaintiffs in diversity actions – and neither taking the approach proposed by Plaintiff here.

In one last attempt to circumvent this Court's jurisdiction, Plaintiff cites the only two decisions to ignore the weight and consistency of the above-cited (and other) precedents:  *State of Cal. v. Steelcase, Inc.*, 792 F. Supp. 84 (C.D. Cal. 1992), and *Moore ex rel. Mississippi v. Abbott Labs., Inc.*, 900 F. Supp. 26 (S.D. Miss. 1995) ("*Moore*").

Plaintiff cites the district court decisions in *Steelcase* and *Moore* as support for the proposition that "since the immunity granted by the Eleventh Amendment is an immunity from being made an involuntary party to an action in federal court, it should apply equally to the case where the state is a plaintiff in an action commenced in state court and the action is removed to federal court by the defendant."  *Steelcase*, 792 F. Supp. at 86.  The *Steelcase* court reached this conclusion citing no authority and completely ignoring all of the contrary precedent cited above, and *Moore* adopted *Steelcase* in its entirety.  *See Moore*, 900 F. Supp. at 30.

As a threshold matter, "whatever force these cases had is undermined by the fact that *Steelcase* has been overruled by the Ninth Circuit."  *MTBE*, 488 F.3d at 120 (citing *California ex*

*rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 859 n.15 (9th Cir. 2004)).   Indeed, *Steelcase* and *Moore* appear to be the only two decisions finding the Eleventh Amendment applicable to plaintiff States, have not been followed in the fifteen and twelve years (respectively) since they were decided – and, quite the opposite, have been flatly rejected by every court to consider the issue.   *See, e.g., MTBE*, 488 F.3d at 120 ("We are aware of only two cases to have concluded otherwise [*Steelcase* and *Moore*] . . . .   In their brief analyses, however, both courts ignored the text of the Eleventh Amendment insofar as it applied only to cases 'commenced or prosecuted against' a state, as well as the voluntary nature of the states' continued participation in those cases."); *Dynegy*, 375 F.3d at 859 n.15 ("California points to two district court opinions [*Steelcase* and *Moore*], which we deem unpersuasive."); *Oklahoma ex rel. Edmundson*, 359 F.3d at 1239-40 (contrasting *Steelcase* and *Moore* with "nearly every court to consider Eleventh Amendment immunity in the removal context"); *Virginia v. Bulgartabac Holding Group*, 360 F. Supp. 2d 791, 794-95 (E.D. Va. 2005) (rejecting *Steelcase* and *Moore*); *In re Pacific Gas & Elec. Co. v. PG & E Corp.*, 281 B.R. 1, 6 (N.D. Cal. Bankr. 2002) ("*Steelcase* is inconsistent with the weight of authority, including that of the Supreme Court and the Northern District of California, and has been rejected in many subsequent decisions from other courts."); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 297 (S.D.N.Y. 2001) (rejecting *Steelcase*). Reliance on such "authority" cannot save Plaintiff's effort to return to Louisiana State court.

Plaintiff also anticipates an argument that Plaintiff has "waived" its Eleventh Amendment immunity.   But since no such immunity exists, the Court need never even reach that question.   In any event, however, it is well-settled law that the *voluntary act* of bringing this action subjects Plaintiff to removal to the federal courts.   *See MTBE*, 488 F.3d at 121 ("California and New Hampshire have each made and acted upon the decision to commence a lawsuit. This voluntary act of filing suit subjects them to the consequences that Congress may legitimately attach to such an action. Thus, we conclude that sovereign immunity does not bar the removal of these state-commenced actions to federal court").   The Ninth Circuit has also explained:

> While California's hope was to avoid the federal forum, it voluntarily appeared in state court to press its claims against the companies, who predictably sought removal to what they perceived to be a more favorable forum for the adjudication of claims involving federal law.  Waiver by litigation conduct 'rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages. For the foregoing reasons, we hold that a state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction.  In so holding, our conclusion is consistent with those of our sister circuits.

*California ex rel. Lockyer,* 375 F.3d at 848 (internal citations omitted); *see also Commonwealth of Va. ex rel. Kilgore v. Bulgartabac Holding Group*, 360 F. Supp. 2d 791, 796 (E.D. Va. 2005) (citing *California ex rel Lockyer* and holding that a State that voluntarily brings a suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal).

Finally, in addition to the unequivocal constitutional language and precedents cited above, it bears noting that the language and legislative history of CAFA also refute Plaintiff's position here.  CAFA does not ignore the question of Eleventh Amendment immunity, but rather speaks very specifically on the subject.  CAFA does "not apply to any class action in which . . . the primary *defendants* are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." 28 U.S.C. § 1332(d)(5)(A) (emphasis added).  This provision was specifically intended to address the issue of Eleventh Amendment immunity.  *See, e.g.*, Sen. Rep. No. 109-14, at *41 ("[C]ourts should abstain where 'States, State officials, or other governmental entities' are 'primary defendants' and there is a significant risk that the court 'may be foreclosed from ordering relief' pursuant to Eleventh Amendment constraints.")

Despite specifically – though superfluously – excluding putative class actions *against* States from CAFA's reach, the statute says nothing about actions brought *by* States.  Not only does this conform with the understanding of the Eleventh Amendment held by the overwhelming weight of authority (*see supra*), but it also reflects that Congress shared that same understanding

899266v.1

in deciding the breadth of CAFA's mandatory jurisdictional provisions.  *See Dewsnupp*, 502 U.S. at 419 (noting reluctance before "accept[ing] arguments that would interpret the Code . . . to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history"); *United Sav. Ass'n*, 484 U.S. at 367 (finding it "most improbable that Congress would have made a major change entitling undersecured creditors to post-petition interest without specifically mentioning it in the legislative history.")

As further evidence of that shared understanding, the extensive congressional debate over the proposed amendment discussed above (*see* Part III.A) – which would have exempted State Attorney General class actions like this one from jurisdiction under CAFA – would have been an utterly pointless exercise had the Eleventh Amendment already provided plaintiff States with immunity from federal jurisdiction.  Indeed, the record of that extensive debate tellingly contains no mention whatsoever of the Eleventh Amendment or sovereign immunity.

Accordingly – in light of the plain language of the Eleventh Amendment, and the vast weight of authority interpreting that language – this desperate gambit to avoid federal jurisdiction must be rejected as a matter of law.

## CONCLUSION

For the foregoing reasons, State Farm respectfully submits that the Plaintiff's Motion to Remand should be denied.

Dated this 6th day of November, 2007.

Respectfully submitted,

*/s/ Wayne J. Lee*

Wayne J. Lee, 7916
  wlee@stonepigman.com
Stephen G. Bullock, 3648
  sbullock@stonepigman.com
Mary L. Dumestre, 18873
  mdumestre@stonepigman.com
Andrea L. Fannin, 26280
  afannin@stonepigman.com
              Of
STONE PIGMAN WALTHER
    WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

              AND

Charles L. Chassaignac IV, 20746
  cchassaignac@phjlaw.com
              Of
PORTEOUS, HAINKEL
  & JOHNSON, L.L.P.
343 Third Street, Suite 202
Baton Rouge, Louisiana 70801
Telephone: (225)383-8900
Facsimile: (225) 383-7900

Attorneys for State Farm Fire and Casualty Company and State Farm General Insurance Company

## <u>CERTIFICATE</u>

I hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Plaintiff's Motion to Remand has been served upon all counsel of record by electronic notice from the Court's CM/ECF system, on this 6th day of November, 2007.

*/s/ Wayne J. Lee*

2