**EXHIBIT B, Part 4 - Agular, Austin, Chetta Complaints**



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG 24  PM 4: 32

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOSEPH AGUILAR, III, JEAN AND MACKEY CUTRER, AND CARLA JARIUS** | * | **CIVIL ACTION NO:** |
| | * | |
| **VERSUS** | * | **SECTION:** 06-4660 |
| **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE INSURANCE COMPANY, AND ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY** | * | **MAGISTRATE** SECT. MAG 1 |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

FILED:_____          _____

                                                              **DEPUTY CLERK**

## CLASS ACTION COMPLAINT

Plaintiffs file this class action complaint on their own behalf, and on behalf of a class of plaintiffs similarly situated but as yet unidentified, as plaintiffs herein represent that they have injuries common to all those similarly situated who incurred damages and losses as a result of the actions of the defendants, identified herein, who intentionally, improperly, unjustly and negligently adjusted property, business, commercial and flood insurance claims as set forth below.

Fee_____
___ Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No_____

1.

Made plaintiffs herein are:

A) Joseph Aguilar, III, a person of the full legal age of majority and a resident of the Parish of Orleans, State of Louisiana;

B) Jean and Mackey Cutrer, husband and wife, persons of the full legal age of majority and a resident of the Parish of Orleans, State of Louisiana; and

C) Carla Jarius, a person of the full legal age of majority and resident of the Parish of Orleans, State of Louisiana.

Above listed plaintiffs seek to represent and prosecute all claims through class action proceedings against the below named defendants for the class of persons similarly situated in the State of Louisiana for the reasons set forth in this complaint.

2.

Made defendants herein are the following:

A) Allstate Fire and Casualty Insurance Company, a foreign insurer, licensed to do and doing business within the State of Louisiana and the jurisdiction of this Honorable Court;

B) Allstate Indemnity Company, a foreign insurer, a foreign insurer, licensed to do and doing business within the State of Louisiana and the jurisdiction of this Honorable Court;

C) Allstate Insurance Company, a foreign insurer, a foreign insurer, licensed to do and doing business within the State of Louisiana and the jurisdiction of this Honorable Court; and

D) Allstate Property and Casualty Insurance Company, a foreign insurer, licensed to do and doing business within the State of Louisiana and the jurisdiction of this Honorable Court.

2

3.

This class action proceeding is brought on behalf of the class identified as follows:

All immovable property owners in the State of Louisiana who were issued a property, business, commercial and/or flood insurance policy by the named defendants and whose policy was in full force and effect at the time of the covered event and who made a claim for benefits under said policy to address the physical damages to their property which was damaged as a result of Hurricane Katrina and its aftermath. In addition, each class member has been determined by the defendant to have a compensable loss and has either been paid or in the process of being paid by the defendant for the compensable loss of the property. The loss payment to each class member included a below market unit pricing on numerous items and non-payment of industry standard items, resulting in inadequate compensation to the class members, all as more fully set forth herein.

## JURISDICTION

4.

This Court has jurisdiction in this matter pursuant to 28 USCA 1369 in that this is a civil action for damages involving minimal diversity between adverse parties that arises from a single accident where at least seventy-five (75) natural persons have died in the accident at a discrete location.

5.

Jurisdiction is further invoked pursuant to the  the Class Action Fairness Act (CAFA), 28 USC 1332 (d) (2) because this is a class action in which there is minimal diversity of citizenship and the aggregate amount  in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and cost and any member of the class of plaintiffs is a citizen of a state different from any

3

defendant.

Additionally, there is jurisdiction pursuant to 28 USCA 1331, federal question, in that a significant number of the claims are made under the National Flood Insurance Program under which this court has exclusive original jurisdiction pursuant to 42 USCA 4053  because the insured property is situated within this district.

6.

Venue is proper in this district pursuant to 28 USC 1391 because certain negligent and wrongful conduct of the defendants occurred in the Eastern District of Louisiana, the plaintiffs reside in the Eastern District of Louisiana, the damage to plaintiffs property occurred within the Eastern District of Louisiana and most of the applicable facts which form the basis of this lawsuit occurred in the Eastern District of Louisiana.

## FACTUAL ALLEGATIONS

7.

Plaintiffs were all owners of property in southeastern Louisiana all within the jurisdiction of this Honorable Court.

8.

Defendant insurance companies all issued policies of homeowners' property, business, commercial and/or flood insurance covering plaintiffs' property in southeast Louisiana.

9.

On the morning of August 29, 2005 Hurricane Katrina made landfall in Southeast Louisiana.

4

10.

As a result of the hurricane force winds, storm surge and/or failure of levees, plaintiffs' properties were severely damaged and/or destroyed.

11.

Plaintiffs' homeowners' property, business, commercial and flood insurance policies were all in full force and effect on and about August 29, 2005.

12.

All of policies issued by the defendants provided coverage for losses and damages sustained by plaintiffs.

13.

Plaintiffs promptly reported the damage to the respective insurance company defendants and therefore the insurance company defendants knew almost immediately that plaintiffs' property had sustained severe physical and structural damage and that plaintiffs had sustained other losses and damages covered under the policies in question.

14.

All plaintiffs submitted proof of losses to their respective insurance company defendants.

15.

Defendant/Insurance companies tendered insufficient payment to plaintiff class members, said tenders where calculated using below market unit price figures for various items damaged and/or destroyed in the occurrence which practice resulted in significantly lower payments made to the members of the class which were inadequate to repair the damages sustained and said payments

were not in compliance with the terms of the policy and practices of the industry.

16.

Plaintiffs allege that the use of the below market unit pricing by the defendants herein was intentional, fraudulent and in bad faith.  Defendant insurance companies engaged in a wrongful scheme to delay, deny or underpay claims by repeatedly utilizing below market unit pricing and nonpayment or intentional underpayment of industry standard items all in contravention of the terms of the policies issued and the practices of the industry.

17.

Plaintiffs allege that the defendants, through their agents, employees, adjusters and other individuals for whom they are responsible had, at all pertinent times hereto and at the time that the proof of loss and adjustment of claims were made, ready access to unit prices being paid throughout the region for specific items of loss.  It was the practice of defendants to significantly reduce the amount of money paid per unit for the items of loss, thus resulting in offers and/or settlements which were inadequate and improper under the terms of the policies and the practice of the industry

## **CLASS ALLEGATIONS**

18.

The claims of the proposed class representatives are typical of the claims of the proposed class.

19.

The common questions of law and fact as shown in this petition predominate over individual questions of causation or individual damages.

6

20.

Concentrating this litigation in one forum will aid with judicial economy and efficiency and promote parity among the claims of individual class members as well as judicial consistency.

21.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of each class is impracticable. Even if any class members could afford individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by defendants' actions. By contrast, the class action device presents far and fewer management difficulties and provides the benefits of unitary adjudication. economies of scale. and comprehensive supervision by a single court. Thousands of individual actions will create unnecessary burdens on and delay to injured victims in addition to straining the judicial system. Such individual actions will also magnify the expense for retaining expert witnesses, and prolong all parties' abilities to receive a speedy and efficient adjudication of this matter.

22.

Furthermore, class certification is appropriate because the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications and substantially impair their ability to protect their interests.

7

This action is appropriate for determination through the class action procedure for the following additional reasons:

## A. NUMEROSITY

As a result of Hurricane Katrina and its aftermath, 200,000 or more homes and businesses were severely damaged or destroyed. The action of the defendants herein effected a large percentage of buildings that were damaged or destroyed thus causing damages to the plaintiffs and the proposed class. The exact number and identities of the class plaintiffs are unknown at this time, and can only be ascertained through appropriate discovery, plaintiffs are of information and belief that the class of plaintiffs clearly consists of thousands of persons presenting a level of numerosity better handled through the class action procedure.

## B. COMMON QUESTIONS OF LAW AND FACT

There are common questions of law and fact applicable to all class members and which predominate over individual questions and which include but are not limited to whether below market unit pricing by defendants was intentional, fraudulent, in bad faith and a breach of their insurance contract with the class members.

## C. ADEQUATE REPRESENTATION

Plaintiffs will fairly and adequately represent the interests of the class, and the class representatives herein are represented by skilled attorneys who are experienced in the handling of mass tort class action litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class;

## D. TYPICALITY

The claims of the class representative as named herein are typical of the claims of the class

members they seek to represent in that they are all claims seeking damages arising from the improper adjustment of claims through use of below market unit pricing as described herein by defendants.

**E.    SUPERIORITY**

The class action procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable. Individual litigation by each of the class members, besides being unduly burdensome to the plaintiffs, would also be unduly burdensome and expensive to the court system as well as the defendants.

## <u>CAUSES OF ACTION</u>

### 23.

The failure of the defendants to make just and pay adequate payments as above described through below market unit pricing and non-payment of industry standard items, on claims made under the policies they have issued constitute violation of widely accepted standards throughout the insurance industry, violation of fair claims adjusting practices and violations of multiple State and Federal statutes concerning regulation of the insurance industry and fair trade practices all of which rendered defendants liable for interest, penalties, attorneys' fees and punitive damages, if applicable, in addition to amounts still remaining due under policy provisions.

### 24.

Plaintiffs further allege that the defendants engaged in a scheme as above described to deprive its insureds of full policy benefits for which they paid and such scheme was in violation of both State and Federal Law concerning Unfair Business Practices.

25.

La R.S. 22:658 requires insurers, among other things, to pay the amount of any claim due its insureds within thirty (30) days after receipt of satisfactory proof of loss, to initiate loss adjustment within thirty (30) days of notification of the loss by claimant, and make a written offer to settle within thirty (30) days of satisfactory proof of loss. Defendants herein failed to comply.

26.

Defendants' actions, as above described, were arbitrary, capricious and without probable cause and were in bad faith making defendants liable to plaintiffs for damages, penalties and attorney's fees under applicable law including, but not limited to La. R.S. 22:658.

27.

La R.S. 22:1220 provides that an insurer owes a duty of good faith and fair dealing to its insured, and it provides that insurers have an affirmative duty to adjust claims fairly and promptly and to make reasonable efforts to settle claims.

28.

Defendants, through their agents, employees and representatives and others for whom they are liable, violated their duties under La. R.S. 22:1220 as alleged herein and are therefore liable for general and special damages, penalties and attorney's fees under the applicable law, including but not limited to La. R.S. 22:1220 by the following acts or omissions:

a.) Knowingly misrepresenting pertinent facts or policy provisions regarding the coverage at issue;

b.) Arbitrarily, capriciously and without probable cause failing to pay the amount of claim due within sixty (60) days after receipt of satisfactory proof of loss; and

c.)     Adjusting claims in violation of La. R.S. 22:658.2.

29.

Defendant insurance companies are liable for the acts and omissions of its agents, employees, and representatives in the handling of plaintiffs' claims.

30.

Based on the conduct and actions of the defendants as described above, plaintiffs have the following causes of action against defendants:

1.      Breach of insurance contract;

2.      Violation of La. R.S. 22:658;

3.      Violation of La. R.S. 22:658.2

4.      Violation of State and Federal laws pertaining to unfair trade practices;

5.      Breach of their duty to act reasonably and fairly under La. R.S. 22:1220;

6.      Failure to tender fair and adequate payment for casualty losses; and

7.      Other causes of actions that will be determined at trial.

31.

Plaintiffs are entitled to the following elements of damages for the causes of action previously mentioned:

1.      Full reimbursement for property damages and proper per unit pricing and payment for industry standard items;

2.      Penalties under La. R.S. 22:658, 22:658.2 and 22:1220;

3.      Double damages pursuant to La. R.S. 22:1220;

4. .    Fifty percent (50%) penalties for failure to submit payment within thirty (30) days

11

from proof of claim;

5.     Attorneys' fees;

6.     Emotional distress caused by defendants improper actions;

7.     Court costs;

8.     Any relief that this Honorable Court deems fair and equitable.

32.

Plaintiffs allege that the defendants are liable for punitive damages pursuant to Louisiana Civil Code Article 3546 in that the decision to utilize below market unit pricing and failure to pay or intentional underpayment for industry standard items occurred in states which authorize the award of punitive damages and was further authorized by the law of the place where the person whose conduct caused the injury was domiciled.

33.

Plaintiffs pray for trial by jury.

12

**WHEREFORE**, plaintiffs pray that after due proceedings be had there be judgment in their favor and against the defendants in amounts that are reasonable under the premises, including, damages or mental and emotional suffering caused by the action of the defendants, penalties, attorney's fees, expert witness fees, punitive damages and interest and all costs for this proceeding.

Respectfully Submitted:

**JIM S. HALL & ASSOCIATES**

**JIM S. HALL (Bar No.: 21644)**
800 N. Causeway Blvd., Suite #100
Metairie, Louisiana 70001
Telephone: (504) 832-3000
Facsimile: (504) 832-1799

13

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG 29  PM 3: 41

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

Thomas Austin, Jr., Wallace "Wally" Barr, Kimberly Bremermann-Black, Shawn Burst, Angelina Burst, Monty Glorioso, Lacey Glorioso, Antoinette Hatch, Ingrid Jackson, David Lewis, Marie Lewis, Jim Miller, Grace Murphy, Troy Perez, Ronnie Rabin, Dianne Rabin, Leonard Riddle, Mary Riddle, Perry Rittner, Debbie Rittner, Sharon Samuel, Eldred Samuel, James Smith, Laura Iveson Smith, Paul Wagner, Charlie Ward, Caleia Ward, Youtong Wilcox

CIVIL ACTION

CLASS ACTION **06 - 5383**

NUMBER:   **SECT. 1 MAG 2**

SECTION:

MAGISTRATE:

PLAINTIFFS,

VERSUS

Allstate Fire and Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, Allstate Property and Casualty Insurance Company, the American National General Insurance Company, American National Property and Casualty Company, Encompass Insurance Company of America, Encompass

___ Fee $350⁰⁰
___ Process_____
_X_ Dktd _____
___ CtRmDep_____
___ Doc. No._____

Property and Casualty Company, Lafayette Insurance Company, Lexington Insurance Company, Lloyds of London, Republic Fire and Casualty Insurance Company, State Farm Fire and Casualty Company, State Farm General Insurance Company,

                 **DEFENDANTS.**

**COMPLAINT—CLASS ACTION**

**NOW INTO COURT**, come Policyholders, THOMAS AUSTIN, JR., WALLACE "WALLY" BARR, KIMBERLY BREMERMANN-BLACK, SHAWN BURST, ANGELINA BURST, MONTY GLORIOSO, LACEY GLORIOSO, ANTOINETTE HATCH, INGRID JACKSON, DAVID LEWIS, MARIE LEWIS, JIM MILLER, GRACE MURPHY, TROY PEREZ, RONNIE RABIN, DIANNE RABIN, LEONARD RIDDLE, MARY RIDDLE, PERRY RITTNER, DEBBIE RITTNER, SHARON. SAMUEL, ELDRED SAMUEL, JAMES SMITH, LAURA IVESON SMITH, PAUL WAGNER, CHARLIE WARD, CALEIA WARD, YOUTONG WILCOX, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, aver as follows:

I.

INTRODUCTION

1.   On August 29, 2005, Policyholders were Louisiana residents who owned immovable property with improvements, principally houses or related residential structures, as well as personal property located there which was destroyed or damaged by winds generated by Hurricane Katrina.

2.   The Policyholders bring this action on behalf of themselves and all other similarly situated for declaratory judgment, breach of contract, breach of the implied duty of fair dealing and good faith, breach of fiduciary duty, and breach of Louisiana's

-3-

bad faith and Valued Policy statutes, arising out of the wrongful, negligent, reckless and/or intentional refusal of Defendants, ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE INSURANCE COMPANY, ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY, THE AMERICAN NATIONAL GENERAL INSURANCE COMPANY, AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, ENCOMPASS INSURANCE COMPANY OF AMERICA, ENCOMPASS PROPERTY AND CASUALTY COMPANY, LAFAYETTE INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, REPUBLIC FIRE AND CASUALTY INSURANCE COMPANY, LLOYDS OF LONDON, STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM GENERAL INSURANCE COMPANY, to provide insurance coverage for losses and damages to Policyholders' and class members' property caused by Hurricane Katrina, as required by the insurance policies that Policyholders purchased from one or more of the Insurance Company Defendants.

3.     Policyholders seek, on behalf of themselves and all others similarly situated, compensatory and punitive damages from the Defendants as a result of the defendants' wrongful conduct, in addition to declaratory relief by the Court that:

    a.     The first efficient proximate cause of the losses suffered by the Policyholders on August 29, 2005 was "windstorm," a covered peril under all of the insurance policies purchased by the Policyholders, thereby rendering any subsequent impact from water released by the

-4-

levee and/or levee wall failures irrelevant to coverage afforded by the insurance policies;

b.    The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were acts of negligence, standard covered perils in the Insurance Company Defendants' homeowners insurance policies;

c.    The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 was "storm surge", a known meteorological phenomenon that is not specifically excluded by any of the Insurance Company Defendants' insurance policies, in contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

d.    The breaking or failure of levees or boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by any of the Insurance Company Defendants' insurance policies, in contrast to other insurance policies available in the market; and

-5-

e.    The damage caused by water entering the City of New Orleans and surrounding parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of "flood," nor within any of the subject insurance policies' exclusions of "flood".

## II.

## PARTIES

4.    Policyholders and members of the class purchased homeowners insurance policies from defendants.

5.    Defendants are foreign insurers domiciled in the various states and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

## III.

## JURISDICTION AND VENUE

6.    28 U.S.C. § 1332 (d)(2), as amended by the Class Action Fairness Act of 2005, Pub. L. 109-2, because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and it is a class action brought by a

Citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business;

7.     This Court has personal jurisdiction over Defendants because Defendants are or were transacting business in this District within the relevant time periods by way of selling insurance policies to the Policyholders, who are also located in this District.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District and the Defendants regularly transact business in this District.

### IV.

### CLASS ACTION ALLEGATIONS

9.     This action is appropriate for determination through the Federal Class Action Procedure (Fed. R. Civ. P. 23, *et seq.*) for the following reasons:

a.     The proposed class representatives and named plaintiffs herein seeks to represent the following proposed class:

> All property owners in the State of Louisiana , whose property was destroyed or damaged by winds generated by Hurricane Katrina, and who at the time of the loss had in effect homeowner's insurance policies from any of the Insurance Company Defendants.

-7-

**b.      NUMEROSITY**

Hurricane Katrina caused damage or destruction to approximately 160,000 or more homes and buildings, resulting in losses to plaintiffs and the proposed class. The exact number and identities of the class plaintiffs are unknown at this time, and can only be ascertained through appropriate discovery, plaintiffs are of information and belief that the class of plaintiffs clearly consists of hundreds of thousands of persons presenting a level of numerosity better handled through the class action procedure.

**c.      COMMON QUESTIONS OF LAW AND FACT**

There are common questions of law and fact applicable to all class members and defendants and which predominate over individual questions which include but are not limited to the legal determination of whether the efficient proximate cause of losses suffered as a result of water entering the City of New Orleans and surrounding parishes on August 29, 2005 from breaches in the levees and levee walls along the 17th Street Canal, the London Avenue Canal, the Industrial Canal, and elsewhere were standard covered perils in the insurance company defendants' homeowners insurance policies.

**d.      ADEQUATE REPRESENTATION**

Plaintiffs will fairly and adequately represent the interests of the class; and the class representatives herein are represented by skilled attorneys who are experienced in

-8-

the handling of mass tort class action litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class.

**e.     TYPICALITY**

The claims of the class representatives as named herein are typical of the claims of the class members they seek to represent, in that they are all claims by insureds against their homeowners' insurance companies arising from losses suffered as a result of hurricane Katrina in the City of New Orleans and surrounding parishes on August 29, 2005.

**f.     SUPERIORITY**

The Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable.  Individual litigation by each of the class members, besides being unduly burdensome to the plaintiffs would also be unduly burdensome and expensive to the court system as well as the defendants.

g.     Accordingly, class certification is appropriate under the Federal Rules of Civil Procedure, Rule 23(b)(2), Rule 23(b)(3) and/or Rule 23(b)(1)(B), and the class action vehicle is the superior method for handling this litigation.

# V.

## FACTUAL BACKGROUND

*Policyholders' and class members' Purchase Of The Policies*

10.　　Policyholders and class members are owners of immovable property with *improvements, principally houses or related residential* structures, as well as personal property located there, with such property being located in the State of Louisiana and within the jurisdiction of this Court.

11.　　Policyholders and class members purchased homeowner's insurance policies (the "All Risk Policy" or "All Risk Policies") from Defendants.

12.　　Policyholders and class members purchased their policies with the reasonable expectation that they would be able to recover for any and all losses to their residence and personal property caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and "storm surge" proximately caused by hurricane wind.

13.　　**Where applicable:** For the purpose of obtaining such hurricane coverage, Policyholders and class members had to agree to pay a "hurricane deductible".

-10-

14.     However, notwithstanding the specific topographic townsite of the Greater New Orleans Metropolitan Area specifically known to Defendant notwithstanding their advanced knowledge about the fragility of the New Orleans area levee systems, and in contrast to other insurance policies available in the market, at no time did they specifically exclude from coverage the breaking or failure of boundaries and levees of lakes, rivers, streams, or other bodies of water.

15.     *Policyholders and class members trusted and relied upon Defendant's representations that the subject policy would cover any damage caused by a hurricane and, thus, reasonably believed that their respective Insurance Policy would cover any and all hurricane damage.*

16.     The amount of insurance for Policyholders and class members was based on the estimated cost of replacing the home, an amount estimated by the Defendants or an agent authorized by them to determine the replacement cost of each individual home.

17.     At all times relevant hereto, Policyholders and class members made timely payment of the premiums due on their respective All Risk Policies.

**Insurance Company Defendants Fail To Advise Policyholders and Class Members Regarding The Availability Of Flood Insurance**

18.     In 1956 Congress enacted the Federal Flood Insurance Act. The National Flood Insurance Act, as amended in 1968, is now the seminal authority for the current National

-11-

Flood Insurance Program ("NFIP"). Congress created the NFIP to provide insurance coverage for property located in flood plain areas where the risk of certain natural or seasonal flooding is increased.

19.     The NFIP provides a minimum level of insurance for the peril of natural or seasonal flooding with a cap of $250,000 per property.  42 U.S.C. § 4121(a)(1).

20.     Since the inception of the NFIP, the insurance industry has been willing to sell insurance in excess to the minimal level of coverage provided by the NFIP. Thus, the availability of additional flood insurance was known to and sold by the Defendant at the time it sold its All Risk Policies to Policyholders.

21.     Despite this knowledge, at no time prior to August 29, 2005 did Defendant advise Policyholders and Class Members that - contrary to their representations - their true intent was not to cover damage or loss caused by hurricanes that may involve damage, in part, from water beyond the NFIP limit, and that their home may accordingly be grossly underinsured, or that additional coverage could be purchased excess of the NFIP limit.

22.     Policyholders and class members have not at all been advised on the availability of flood insurance under the NFIP by Defendant.

**Hurricane Katrina Damages Policyholders' Property**

23.      At 6:10 a.m. on August 29, 2005, Hurricane Katrina made landfall near Grande

Isle, Louisiana as a Category 4 hurricane, and then made a second landfall a short time

later near the Louisiana-Mississippi border, the eye of the storm passing just east of the

City of New Orleans at approximately 9:00 a.m.

24.      At 8:00 a.m. on August 29, there was water on both sides of the Industrial Canal

in New Orleans, and by 9 a.m. there was six to eight feet of water in the City's Lower

Ninth Ward.

25.      At 2:00 p.m. on August 29, New Orleans officials publicly confirmed the reason

for the water accumulating in the Lower Ninth Ward was a breach in the Industrial

Canal levee wall, a breach which was reported to be two city blocks wide.

26.      Other significant breaches in the New Orleans area levee systems occurred on or

after August 29, 2005 which similarly caused releases of water into the City and

adjoining parishes.  In all, the levees around the City and adjoining parishes failed in at

least eight (8) distinct locations, including the 17th Street, London Avenue and Industrial

Canals, causing distinct and unique harm to different sections of the City and the

surrounding parishes.

27.      Policyholders and class members  sustained damage to their property as a result

-13-

of the catastrophic events of August 29, 2005 and the following days, said catastrophic

events being precipitated by Hurricane Katrina, a category 4 storm with sustained winds

of 145 miles per hour.

28.     In the aftermath of the storm, it was estimated that approximately 80% of

Orleans Parish was under water, and that losses from the hurricane are estimated to be as

high as $200 billion.

29.     Recent engineering reports have stated that vast amounts of the water that

entered the City of New Orleans and the surrounding parishes came about as the result

of levee failures caused by negligent design, negligent maintenance and/or inadequate

materials and not by topping of the levees.

30.     Moreover, in its April 6, 2006, edition, The Times Picayune reported that Lt.

Gen. Carl Strock, the Chief of the Army Corps of Engineers, told a Senate committee

that the Corps neglected to consider the possibility that the levee walls atop the 17th

Street Canal levee would lurch away from their footings under significant water pressure

and eat away at the earthen barriers below. The levees simply failed to work the way

they were supposed to work.

31.     Congressional investigators, experts, and some Army Corps of Engineers

officers have also suggested that the failure of the levees might have been caused by

-14-

leaks in the barriers based upon poor construction and/or maintenance of the levee.

32.     In addition, it was learned that the levee breach of the Industrial Canal to the Lower Ninth Ward side was caused by an inadequately moored barge that crashed into the levee wall, rupturing the levee and compromising its ability to hold water back.

33.     As a result, Policyholders on behalf of themselves and all others similarly situated aver, upon information and belief, that any damages attributable to the levee failures are the result of improper and/or negligent design, construction, maintenance of the levees by various third parties and or third party negligence.

## COUNT I – DECLARATORY JUDGMENT

34.     Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

35.     An actual controversy exists between Policyholders and the Defendant concerning the Defendant's duty to indemnify Policyholders for their losses.

36.     Consequently, under the circumstances, it is necessary and appropriate for the Court to declare Policyholders', and Defendant's rights and duties under the Policies pursuant to 28 U.S.C. § 2201.

37.     The losses suffered by Policyholders as a result of Hurricane Katrina are covered

-15-

losses under their respective All Risk Policies.

38.     Policyholders have given timely notification to Defendant and made timely demands in writing that the Defendant cover Policyholders' losses.

39.     The Defendant is obligated by the terms and conditions of their All Risk Policies to indemnify Policyholders for their losses.

40.     The Defendant has refused to indemnify Policyholders for their losses and have denied coverage for the losses.

41.     Thus, Policyholders are entitled to a declaratory judgment that the damages they suffered are covered losses under the All Risk Policies.

42      Specifically, the Policyholders' losses were caused by covered perils, the efficient causes of their losses were covered perils and the efficient and proximate causes of loss were covered perils.

43.     Further, to give the "flood" exclusions a broad reading and thus disallow the coverage for the damages arising from this catastrophic disaster, which occurred despite the vast and expansive levees existing in the greater New Orleans area, would contravene the very purpose of homeowner's policies.

44.     The reasonable expectations of Louisiana policyholders is that "flood"

encompasses overflowing of the Mississippi River, accumulation of surface water due to heavy rainfalls, or similar phenomena, but not the failing of virtually all man-made structures containing Navigable Waters of the United States surrounding the New Orleans Metropolitan Area due to negligent conduct beyond the policyholders' control.

45.     Finally, Policyholders should not be deprived of the coverage of the All Risk Policies where the Defendant has drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted. If so intended, and in contrast to other insurance policies available in the market, Defendant should have specifically excluded hurricane damage and/or the failure of levees as the most probable perils for the New Orleans Metropolitan Area. Instead, Defendant decided to sell the same comprehensive All-Risk Homeowners Insurance Policies that they sell in the "high and dry" plains throughout the United States.

46.     While the Defendant may continue to make investment income during the course of any protracted legal proceedings, Policyholders, on the other hand, have little recourse but to sit idly by awaiting a decision, all the while being unable to begin reconstruction or renovation of their homes until they have the money to pay contractors.

47.     As a result, without resolution of this issue by declaratory judgment,

Policyholders, in most instances, will be unable to remedy the damages they fully expected were covered by their All Risk Policies.

**WHEREFORE**, Policyholders respectfully request that this Court enter a declaratory judgment in their favor and against the Defendant as to Count I, ordering and decreeing that:

(1)     The first efficient proximate cause of the losses suffered by the Policyholders on August 29, 2005 was "windstorm," a covered peril under all of the insurance policies purchased by the Policyholders, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policies;

(2)     The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were acts of negligence, standard covered perils in the Defendant's homeowners insurance policies;

(3)     The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 was "storm surge", a known meteorological phenomenon that is not specifically excluded by any of

-18-

the Defendant's insurance policies, in contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

(4)    The breaking or failure of boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by the Defendant's insurance policies, in contrast to other insurance policies available in the market; and

(5)    The damage caused by water entering the City of New Orleans and adjoining parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of "flood," nor within any of the subject insurance policies' exclusions of "flood".

## COUNT II — BREACH OF CONTRACT

48.    Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

49.    A valid contract exists between Policyholders and the Defendant in the form of the individual All Risk Policies, which, *inter alia*, obligates Defendant to cover the loss of or damage to a dwelling and personal property therein which is caused by wind or windstorms, storm surge or acts of negligence.

50.    Policyholders paid all premiums due under their All Risk Policy and materially

-19-

performed their obligations under that Policy.

51.     Upon proper and repeated demands by Policyholders, the Defendant has refused to meet its obligations under the All Risk Policies and refused to pay the full damages for Policyholders' homes being destroyed or damaged by the efficient proximate cause of windstorms, storm surge and/or negligence.

52.     As a direct and proximate result of the breach by Defendant, Policyholders were deprived of the benefit of insurance coverage for which the Defendant was paid substantial premiums and, accordingly, Policyholders have suffered substantial damages.

        **WHEREFORE**, Policyholders demand judgment against the Defendants for all amounts due under the All Risk Policy, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

## COUNT III — BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

53.     Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

54.     By selling its All Risk Policy to Policyholders, Defendant assumed a duty of good faith and fair dealing to the Policyholders, including an obligation to promptly indemnify Policyholders for their losses.

-20-

55.    Defendant has failed to follow Louisiana's long-standing efficient proximate cause doctrine and have instead adopted an industry-wide approach to denying valid claims for inappropriate reasons.

56.    Defendant has also failed to provide coverage for Policyholders' losses and instead have attempted to equate the efficient proximate cause of windstorm and the negligent design, construction and maintenance of the levees in the New Orleans area and/or third party negligence which caused Policyholders' losses with flooding in an effort to exclude coverage.

57.    Defendant has also wrongfully denied coverage for claims by equating "storm surge" with flood, thereby improperly expanding the flood exclusion and defeating the reasonable expectation of Louisiana policy holders.

58.    Moreover, the Defendant directed its adjusters to follow specific "guidelines" whereby the adjusters would arbitrarily, capriciously and without probable cause, find a nearby waterline and apply it to Policyholders' property in order to deny full payment of Policyholders' claims.

59.    Defendant further directed its adjusters to ignore all other information and evidence and, instead, to use only the procedure and guidelines mandated by them, specifically, the arbitrary application of any nearby waterline to Policyholders' property.

-21-

60.     In directing its adjusters to ignore any information or evidence other than the arbitrary and capricious application of any nearby waterline,   Defendant violated La. Rev. Stat. Ann. § 658.2(A)(1) which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

61.     By engaging in all of the conduct above, the Defendant lacks an arguable or legitimate basis for refusing to pay the Policyholders' claims.

62.     By engaging in the conduct described above, the Defendant has  violated the duties of good faith and fair dealing owed to Policyholders.

63.     As a direct and proximate result of the Defendant's bad faith actions, Policyholders have suffered, and will continue to suffer, substantial damages.

64.     Moreover, by engaging in the conduct above, Defendant's persistent and systematic actions and failures to act were done with malice and gross negligence and with a disregard for Policyholders' rights so as to warrant the imposition of punitive damages against Defendant.

        **WHEREFORE**, Policyholders demand judgment against the Defendant for all amounts  due  under  the  Policies,  other  compensatory  damages,  punitive  damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and

-22-

proper.

## COUNT IV — BREACH OF LA. REV. STAT. ANN. § 22:1220
### (Insurance Bad Faith)

65.     Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

66.     Pursuant to La. Rev. Stat. Ann. § 22:1220A, Defendant owes Policyholders a "duty of good faith and fair dealing" as well as a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with Policyholders.

67.     La. Rev. Stat. Ann. § 22:1220B prohibits Defendant from, inter alia, "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" and "[f]ailing to pay the amount of any claim . . . when such failure is arbitrary, capricious or without probable cause."

68.     Defendant has misrepresented the coverage afforded by the All Risk Policy provisions by wrongfully and without a legitimate basis seeking to have the "flood" exclusions given a broad reading in an effort to disallow coverage for the damages arising from Hurricane Katrina.

69.     Defendant has failed to follow Louisiana's long-standing efficient proximate cause doctrine and have instead adopted an industry-wide approach to denying valid claims for inappropriate reasons without probable cause.

70.     Specifically, Defendants has failed to provide coverage for Policyholders' losses

-23-

and, instead, have attempted to equate the efficient cause of windstorm and the negligent design, construction and maintenance of the levees in New Orleans which caused Policyholders' losses with *flooding* in an effort to exclude coverage and/or third party negligence.

71.    Defendants has also wrongfully denied coverage for claims by equating "storm surge" with *flood*, thereby improperly expanding the flood exclusion and defeating the reasonable expectation of Louisiana policy holders.

72.    As such, Defendant has breached known duties through a motive of self interest and/or ill will without having a reasonable basis to deny these claims, instead denying claims in an arbitrary and capricious manner and without probable cause.

73.    Moreover, pursuant to a recent enactment of the Legislature of Louisiana, an insurance company acts in bad faith when it fails "to pay claims pursuant to R.S. 22:658.2 [and] such failure is arbitrary, capricious, or without probable cause." La. Rev. Stat. Ann. § 22:1220A.

74.    In directing its adjusters to consider only nearby waterlines and to ignore all other evidence in determining whether Policyholders' losses are covered under the All Risk Policies, Defendant violated La. Rev. Stat. Ann. § 658.2.A.(1), which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

-24-

75.     By engaging in all of the above conduct, Defendant has engaged in bad faith conduct in violation of La. Rev. Stat. Ann. § 22:1220.

**WHEREFORE**, Policyholders demand judgment against Defendant for all compensatory damages including all amounts due under the Policies, other compensatory damages, plus interest on that amount, costs of suit, attorneys' fees incurred in pursuing payment of the loss, consequential damages, punitive damages, and *such other relief deemed just and proper by the Court.*

### COUNT VI — BREACH OF LA. REV. STAT.ANN. § 22:695

76.     Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

77.     Louisiana is a "valued policy" state, requiring that if an insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnity or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset." La. Rev. Stat. Ann §22:695.

78.     Defendant placed a value on Policyholders' property and used such valuation for purposes of determining the premium charge under the All Risk Policy.

-25-

79.     Policyholders have suffered total losses to their property which are covered under their All Risk Policy.

80.     Defendant has failed to indemnify or compensate Policyholders for their covered losses in an amount equal to the values used for determining the individual policy premiums.

81.     Instead, Defendant has failed to pay anything to Policyholders or paid an amount lower than the valuation assessed to the properties for purposes of determining premiums.

82.     As a result, Defendant has breached La. Rev. Stat. Ann. §22:695, entitling Policyholders to damages equal to the full value placed on the Policyholders' property by the Defendant with no offset or deductions.

        **WHEREFORE**, Policyholders demand judgment against Defendant for all amounts due under the Policies, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

## COUNT VII — BREACH OF FIDUCIARY DUTY

83.     Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

84.     Defendant sells its homeowners insurance policies directly to their customers,

-26-

including Policyholders and, in that respect, function in the capacity of insurance brokers or agents.

85.     By directly marketing and selling its Policies to Policyholders', Defendant owes those Policyholders who purchased All Risk Policies from them a fiduciary duty of undivided loyalty, due care, and fidelity.

86.     Defendant owed Policyholders a fiduciary duty to perform their responsibilities as insurance brokers and/or agents with good faith and appropriate skill in Policyholders' best interests and with heightened care, fidelity, diligence and full disclosure required of a fiduciary.

87.     Among other things, insurance brokers and/or agents are obligated to provide advice and assistance to policyholders so that risks to which they are exposed are adequately insured, or at a minimum, provide them with adequate opportunity and advice to make a decision as to what coverage to purchase.

88.     At no time relevant hereto did Defendant advise or suggest to Policyholders that - contrary to their representations - their true intent was not to cover damage or loss caused by hurricanes that may involve damage, in part, from water beyond the NFIP limit, and that their homes may accordingly be grossly underinsured, or that additional coverage could be purchased excess of the NFIP limit.

89.     By failing to advise Policyholders of the availability of flood insurance, Defendant breached its fiduciary duty to act in Policyholders' best interest and with the

-27-

care and full disclosure required of a fiduciary.

90.     The breaches of fiduciary duty by Defendant has caused Policyholders substantial damages.

        **WHEREFORE**, Policyholders demand

        (1)     that the defendants be served with a copy of the Complaint and be cited to appear and answer same;


        (2)     an order certifying the class and any appropriate subclasses thereof under the appropriate provisions of Federal Rules of Civil Procedure, Rule 23, and appointing complainants and their counsel to represent the Class;

        (3)     judgment against Defendant for all amounts due under the Policies, other compensatory damages, punitive damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

                Respectfully submitted,

                **McKernan Law Firm**

                Joseph J. McKernan (10027)
                Chet G. Boudreaux (28504)
                John H Smith (23308)
                8710 Jefferson Hwy.
                Baton Rouge, LA 70809
                Telephone: (225) 926-1234
                Facsimile: (225) 926-1202

-28-



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG 24  PM 4: 37

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MARIA K. CHETTA, WILLIE AND BEVERLY MOTEN, ALLEN STAES, AND DARLENE AND JERRY WHITTINGTON** | * | **CIVIL ACTION NO:** |
| | | **06 - 4662** |
| **VERSUS** | * | **SECTION :** |
| | | **06 - 4662** |
| **STATE FARM FIRE AND CASUALTY COMPANY, STATE FARM GENERAL INSURANCE COMPANY, AND STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** | * | **MAGISTRATE SECT. S  MAG 1** |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**FILED:**_____    _____

**DEPUTY CLERK**

# CLASS ACTION COMPLAINT

Plaintiffs file this class action complaint on their own behalf, and on behalf of a class of plaintiffs similarly situated but as yet unidentified, as plaintiffs herein represent that they have injuries common to all those similarly situated who incurred damages and losses as a result of the actions of the defendants, identified herein, who intentionally, improperly, unjustly and negligently adjusted property, business, commercial and flood insurance claims as set forth below.

Fee_$350.00_
Process_____
X Dktd_____
CtRmDep_____
Doc. No_____

1.

Made plaintiffs herein are:

A) Maria K. Chetta, a person of the full legal age of majority and a resident of the Parish of Orleans, State of Louisiana;

B) Willie and Beverly Moten, husband and wife, persons of the full legal age of majority and a resident of the Parish of Orleans, State of Louisiana;

C) Allen Staes, a person of the full legal age of majority and a resident of the Parish of Orleans, State of Louisiana; and

D) Darlene and Jerry Whittington, husband and wife, persons of the full legal age of majority and a resident of the Parish of Jefferson, State of Louisiana.

Above listed plaintiffs seek to represent and prosecute all claims through class action proceedings against the below named defendants for the class of persons similarly situated in the State of Louisiana for the reasons set forth in this complaint.

2.

Made defendants herein are the following:

A) State Farm Fire and Casualty Company, a foreign insurer, licensed to do and doing business within the State of Louisiana and the jurisdiction of this Honorable Court;

B) State Farm General Insurance Company, a foreign insurer, licensed to do and doing business within the State of Louisiana and the jurisdiction of this Honorable Court; and

C) State Farm Mutual Automobile Insurance Company, a foreign insurer, licensed to do and doing business within the State of Louisiana and the jurisdiction of this Honorable Court.

3.

This class action proceeding is brought on behalf of the class identified as follows:

All immovable property owners in the State of Louisiana who were issued a property, business, commercial and/or flood insurance policy by the named defendants and whose policy was in full force and effect at the time of the covered event and who made a claim for benefits under said policy to address the physical damages to their property which was damaged as a result of Hurricane Katrina and its aftermath. In addition, each class member has been determined by the defendant to have a compensable loss and has either been paid or in the process of being paid by the defendant for the compensable loss of the property. The loss payment to each class member included a below market unit pricing on numerous items and non-payment of industry standard items, resulting in inadequate compensation to the class members, all as more fully set forth herein.

## JURISDICTION

4.

This Court has jurisdiction in this matter pursuant to 28 USCA 1369 in that this is a civil action for damages involving minimal diversity between adverse parties that arises from a single accident where at least seventy-five (75) natural persons have died in the accident at a discrete location.

5.

Jurisdiction is further invoked pursuant to the the Class Action Fairness Act (CAFA), 28 USC 1332 (d) (2) because this is a class action in which there is minimal diversity of citizenship and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and cost and any member of the class of plaintiffs is a citizen of a state different from any

defendant.

Additionally, there is jurisdiction pursuant to 28 USCA 1331, federal question, in that a significant number of the claims are made under the National Flood Insurance Program under which this court has exclusive original jurisdiction pursuant to 42 USCA 4053  because the insured property is situated within this district.

6.

Venue is proper in this district pursuant to 28 USC 1391 because certain negligent and wrongful conduct of the defendants occurred in the Eastern District of Louisiana, the plaintiffs reside in the Eastern District of Louisiana, the damage to plaintiffs property occurred within the Eastern District of Louisiana and most of the applicable facts which form the basis of this lawsuit occurred in the Eastern District of Louisiana.

**FACTUAL ALLEGATIONS**

7.

Plaintiffs were all owners of property in southeastern Louisiana all within the jurisdiction of this Honorable Court.

8.

Defendant insurance companies all issued policies of homeowners' property, business, commercial and/or flood insurance covering plaintiffs' property in southeast Louisiana.

9.

On the morning of August 29, 2005 Hurricane Katrina made landfall in Southeast Louisiana.

10.

As a result of the hurricane force winds, storm surge  and/or failure of levees, plaintiffs'

4

properties were severely damaged and/or destroyed.

11.

Plaintiffs' homeowners' property, business, commercial and flood insurance policies were all in full force and effect on and about August 29, 2005.

12.

All of policies issued by the defendants provided coverage for losses and damages sustained by plaintiffs.

13.

Plaintiffs promptly reported the damage to the respective insurance company defendants and therefore the insurance company defendants knew almost immediately that plaintiffs' property had sustained severe physical and structural damage and that plaintiffs had sustained other losses and damages covered under the policies in question.

14.

All plaintiffs submitted proof of losses to their respective insurance company defendants.

15.

Defendant/Insurance companies tendered insufficient payment to plaintiff class members, said tenders where calculated using below market unit price figures for various items damaged and/or destroyed in the occurrence which practice resulted in significantly lower payments made to the members of the class which were inadequate to repair the damages sustained and said payments were not in compliance with the terms of the policy and practices of the industry.

16.

Plaintiffs allege that the use of the below market unit pricing by the defendants herein was

intentional, fraudulent and in bad faith.  Defendant insurance companies engaged in a wrongful scheme to delay, deny or underpay claims by repeatedly utilizing below market unit pricing and nonpayment or intentional underpayment of industry standard items all in contravention of the terms of the policies issued and the practices of the industry.

17.

Plaintiffs allege that the defendants, through their agents, employees, adjusters and other individuals for whom they are responsible had, at all pertinent times hereto and at the time that the proof of loss and adjustment of claims were made, ready access to unit prices being paid throughout the region for specific items of loss.  It was the practice of defendants to significantly reduce the amount of money paid per unit for the items of loss, thus resulting in offers and/or settlements which were inadequate and improper under the terms of the policies and the practice of the industry

**CLASS ALLEGATIONS**

18.

The claims of the proposed class representatives are typical of the claims of the proposed class.

19.

The common questions of law and fact as shown in this petition predominate over individual questions of causation or individual damages.

20.

Concentrating this litigation in one forum will aid with judicial economy and efficiency and promote parity among the claims of individual class members as well as judicial consistency.

6

21.

A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of each class is impracticable. Even if any class members could afford individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by defendants' actions. By contrast, the class action device presents far and fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Thousands of individual actions will create unnecessary burdens on and delay to injured victims in addition to straining the judicial system. Such individual actions will also magnify the expense for retaining expert witnesses, and prolong all parties' abilities to receive a speedy and efficient adjudication of this matter.

22.

Furthermore, class certification is appropriate because the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications and substantially impair their ability to protect their interests.

This action is appropriate for determination through the class action procedure for the following additional reasons:

**A. NUMEROSITY**

As a result of Hurricane Katrina and its aftermath, 200,000 or more homes and businesses

were severely damaged or destroyed. The action of the defendants herein effected a large percentage of buildings that were damaged or destroyed thus causing damages to the plaintiffs and the proposed class. The exact number and identities of the class plaintiffs are unknown at this time, and can only be ascertained through appropriate discovery, plaintiffs are of information and belief that the class of plaintiffs clearly consists of thousands of persons presenting a level of numerosity better handled through the class action procedure.

## B. COMMON QUESTIONS OF LAW AND FACT

There are common questions of law and fact applicable to all class members and which predominate over individual questions and which include but are not limited to whether below market unit pricing by defendants was intentional, fraudulent, in bad faith and a breach of their insurance contract with the class members.

## C. ADEQUATE REPRESENTATION

Plaintiffs will fairly and adequately represent the interests of the class, and the class representatives herein are represented by skilled attorneys who are experienced in the handling of mass tort class action litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class;

## D. TYPICALITY

The claims of the class representative as named herein are typical of the claims of the class members they seek to represent in that they are all claims seeking damages arising from the improper adjustment of claims through use of below market unit pricing as described herein by defendants.

E.      **SUPERIORITY**

The class action procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable. Individual litigation by each of the class members, besides being unduly burdensome to the plaintiffs, would also be unduly burdensome and expensive to the court system as well as the defendants.

**CAUSES OF ACTION**

23.

The failure of the defendants to make just and pay adequate payments as above described through below market unit pricing and non-payment of industry standard items, on claims made under the policies they have issued constitute violation of widely accepted standards throughout the insurance industry, violation of fair claims adjusting practices and violations of multiple State and Federal statutes concerning regulation of the insurance industry and fair trade practices all of which rendered defendants liable for interest, penalties, attorneys' fees and punitive damages, if applicable, in addition to amounts still remaining due under policy provisions.

24.

Plaintiffs further allege that the defendants engaged in a scheme as above described to deprive its insureds of full policy benefits for which they paid and such scheme was in violation of both State and Federal Law concerning Unfair Business Practices.

25.

La R.S. 22:658 requires insurers, among other things, to pay the amount of any claim due its

9

insureds within thirty (30) days after receipt of satisfactory proof of loss, to initiate loss adjustment within thirty (30) days of notification of the loss by claimant, and make a written offer to settle within thirty (30) days of satisfactory proof of loss.  Defendants herein failed to comply.

26.

Defendants' actions, as above described, were arbitrary, capricious and without probable cause and were in bad faith making defendants liable to plaintiffs for damages, penalties and attorney's fees under applicable law including, but not limited to La. R.S. 22:658.

27.

La R.S. 22:1220 provides that an insurer owes a duty of good faith and fair dealing to its insured, and it provides that insurers have an affirmative duty to adjust claims fairly and promptly and to make reasonable efforts to settle claims.

28.

Defendants, through their agents, employees and representatives and others for whom they are liable, violated their duties under La. R.S. 22:1220 as alleged herein and are therefore liable for general and special damages, penalties and attorney's fees under the applicable law, including but not limited to La. R.S. 22:1220 by  the following acts or omissions:

a.)   Knowingly misrepresenting pertinent facts or policy provisions regarding the coverage at issue;

b.)   Arbitrarily, capriciously and without probable cause failing to pay the amount of claim due within sixty (60) days after receipt of satisfactory proof of loss; and

c.)   Adjusting claims in violation of La. R.S. 22:658.2.

10

29.

Defendant insurance companies are liable for the acts and omissions of its agents, employees, and representatives in the handling of plaintiffs' claims.

30.

Based on the conduct and actions of the defendants as described above, plaintiffs have the following causes of action against defendants:

1.      Breach of insurance contract;

2.      Violation of La. R.S. 22:658;

3.      Violation of La. R.S. 22:658.2

4.      Violation of State and Federal laws pertaining to unfair trade practices;

5.      Breach of their duty to act reasonably and fairly under La. R.S. 22:1220;

6.      Failure to tender fair and adequate payment for casualty losses; and

7.      Other causes of actions that will be determined at trial.

31.

Plaintiffs are entitled to the following elements of damages for the causes of action previously mentioned:

1.      Full reimbursement for property damages and proper per unit pricing and payment for industry standard items;

2.      Penalties under La. R.S. 22:658, 22:658.2 and 22:1220;

11

3.   Double damages pursuant to La. R.S. 22:1220;

4. .  Fifty percent (50%) penalties for failure to submit payment within thirty (30) days

from proof of claim;

5.   Attorneys' fees;

6.   Emotional distress caused by defendants improper actions;

7.   Court costs;

8.   Any relief that this Honorable Court deems fair and equitable.


32.

Plaintiffs allege that the defendants are liable for punitive damages pursuant to Louisiana

Civil Code Article 3546 in that the decision to utilize below market unit pricing and failure to pay

or intentional underpayment for industry standard items occurred in states which authorize the award

of punitive damages and was further authorized by the law of the place where the person whose

conduct caused the injury was domiciled.


33.

Plaintiffs pray for trial by jury.


12

**WHEREFORE**, plaintiffs pray that after due proceedings be had there be judgment in their

favor and against the defendants in amounts that are reasonable under the premises, including,

damages or mental and emotional suffering caused by the action of the defendants, penalties,

attorney's fees, expert witness fees, punitive damages and interest and all costs for this proceeding.

Respectfully Submitted:

**JIM S. HALL & ASSOCIATES**

**JIM S. HALL (Bar No.: 21644)**
800 N. Causeway Blvd., Suite #100
Metairie, Louisiana 70001
Telephone: (504) 832-3000
Facsimile: (504) 832-1799

**NOTICE OF LAWSUIT AND WAIVER OF SUMMONS TO BE MAILED.**

13