**EXHIBIT B, Part 5 - Hammer, Kiefer, Terrebonne Complaints**

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**
**STATE OF LOUISIANA**

FILED

NO: 2006-9720          DIVISION 4 - 15          2006 [DOCKET]
                                                 2006 AUG 28 P 4 56

                                                 CIVIL
                                                 DISTRICT COURT

JASON HAMMER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

VERSUS

STATE FARM FIRE AND CASUALTY COMPANY

FILED:_____

                    DEPUTY CLERK

~~CLASS~~ PETITION FOR DAMAGES AND DECLARATORY JUDGMENT

NOW INTO COURT, comes Petitioner Jason Hammer, a person of the age of majority and a citizen of and domiciled in the Parish of Orleans, State of Louisiana, on behalf of himself and all others similarly situated and for their Petition for Declaratory Judgment with respect state:

I.

Venue is proper in this Court pursuant to LSA-C.C.P. art. 42.

FACTUAL BACKGROUND

II.

On Monday, August 29, 2005, Hurricane Katrina made its second landfall in Louisiana as a Category 4 hurricane with winds of 145 mph. The winds of the hurricane breached three levees on Lake Pontchartrain, allowing water to flow into the city of New Orleans. After, and only because, the levees breached, did water enter the city; it did not flow over the levees themselves. The water flowing through the levees subsequently damaged the personal property of residents who owned renter's insurance policies purchased from State Farm Fire and Casualty.

III.

The plaintiff in this action, Jason Hammer, is a second-year student at Tulane University Law School. He was a visiting student at the Northwestern University School of Law for the Fall 2005 semester pending the resumption of classes at Tulane. Prior to August 29, 2005, he lived in a first floor apartment at 3132 State Street Drive, across the street from the Tulane campus.

10/05/2006 08:34 FAX 309 766 8285        CONT. LAW DEPT

State Farm Ins.        10/2/2006 9:18 AM   PAGE   7/010   Fax Server

10/02/2006 08.55 FAX  5048838812        SF RIVERSIDE 3HU        + CIO3        @005/009

**IV.**

Jason Hammer purchased a renter's policy from State Farm Fire and Casualty with a term of twelve months, effective from February 10, 2005 through February 10, 2006, a copy of which is attached to this Complaint as Exhibit A. His policy and all class members' policies were valid when Hurricane Katrina made landfall, August 29, 2005.

**V.**

Jason Hammer suffered damage and loss of nearly all personal property located in his apartment as a result of water flowing from Lake Pontchartrain after Hurricane Katrina damaged the system of dams and levees protecting the city. He further sustained monetary losses when he evacuated his residence.

**VI.**

Jason Hammer applied to State Farm for coverage under the terms of the policy. State Farm denied coverage in a letter, dated September 23, 2005, citing exclusionary provision Section I-1.c. of the policy: "Water damage, meaning: (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not". The policy contains no exclusion for hurricane water. The letter also states that the damaging water was rainwater which is likewise not excluded by the policy. Although plaintiff lost virtually all property located in his apartment, State Farm offered only to pay $535 for food spoiled as a result of the electrical service interruption following the storm.

**VII.**

Merriam-Webster's Dictionary defines flood as "a rising and overflowing of a body of water especially onto normally dry land." In the instant case, the damaging water did not rise and flow over the levees, but rather flowed through breaches caused by the hurricane winds.

**VIII.**

Made defendant herein is: STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurer domiciled in the State of Illinois and doing business in the State of Louisiana with a market share of approximately X% of Louisiana renter's insurance policies.

**IX.**

As a result of this denial of their claim, Plaintiffs reserve the right to retain their own experts to examine the damage to their property caused by Hurricane Katrina.

To date, Defendant, STATE FARM FIRE AND CASUALTY COMPANY has failed to make any payments on Plaintiffs claim under the renter's policy.

2

State. Farm Ins.        10/2/2006 9:18 AM   PAGE    8/010   Fax Server

10/02/2006 08.59 FAX  5049838812        SF RIVERSIDE THU    ~ CIOS            ☒008/008

### X.

Plaintiffs have complied with all of their duties and responsibilities as set forth by the policy.

### XI.

Defendant, STATE FARM FIRE AND CASUALTY COMPANY, is also liable for the full value of Plaintiff's movable property under the policy pursuant to Louisiana's Valued Policy Clause, La.R.S.22:695, as Plaintiffs' property was a total loss caused by a covered peril.

### XII.

Louisiana R.S.22:658 requires insurers, among other things, to pay the amount of any claim due its insured within thirty (30) days after receipt of satisfactory proof of loss, initiate loss adjustment within thirty (30) days of notification of loss by claimant, and make a written offer to settle within thirty (30) days of satisfactory proof of loss.

### XIII.

Plaintiffs provided Defendants with satisfactory proof of loss over ninety (90) days prior to the filing of this petition, and Defendants have inspected Plaintiffs' property.

### XIV.

Defendants have failed to pay Plaintiffs the sums due them under the policy for repair and/or replacement of their damaged property, its contents and additional living expenses incurred, and Defendants have failed to timely and properly initiate loss adjustment to Plaintiffs' property.

### XV.

Defendants' failure to pay and/or timely initiate loss adjustment is arbitrary, capricious and without probable cause and is in bad faith, making Defendants liable to Plaintiffs for damages, penalties and attorney fees under applicable law, including but not limited to La.R.S.22:658, et seq.

### XVI.

Louisiana R.S.22:1220 provides that an insurer owes a duty of good faith and fair dealing to its insured, and it provides that insurers have an affirmative duty to adjust claims fairly and promptly and to make reasonable efforts to settle claims.

3

State Farm Ins.          10/2/2006 9:18 AM  PAGE    9/010   Fax Server

10/02/2006 09.59 FAX  5049930012        SF RIVERSIDE SHU        + CIOS           @007/005

**XVII.**

Defendant, STATE FARM FIRE AND CASUALTY COMPANY has violated its duties under La.R.S. 22:1220 as alleged herein and is therefore liable for damages, penalties and attorney fees under applicable law, including but not limited to La. R.S. 22:1220 by one of the following acts or omissions:

    a) knowingly misrepresenting pertinent facts or policy provisions regarding the coverage at issue;

    b) arbitrarily, capriciously and without probable cause, failing to pay the amount of claim due within sixty (60) days after receipt of satisfactory proof of loss.

**XVIII.**

Defendant, STATE FARM FIRE AND CASUALTY COMPANY, is liable for the acts and omissions of its agents, employees and representatives in the handling of the Plaintiffs' claim, failure to adjust Plaintiffs' claim in good faith and failure to disclose material information to Plaintiffs causing further delay and damage to Plaintiffs as a result.

**XIX.**

This action is appropriate for determination through the Louisiana Class Action Procedure (LSA-C.C.P. art. 591, et seq.) for the following reasons:

**a.**      **Numerosity**

Plaintiff is informed and believes, and on that basis alleges, that this class consists of thousands of persons presenting a level of numerosity most appropriately handled by the class action procedure.

**b.**      **Common Questions of Law and Fact**

This Petition for Declaratory Judgment seeks a declaration of the court that the water entering New Orleans beginning on August 29, 2005 due to breaches in the levees does not fall within the exclusion of flood or surface water nor was it caused by rainwater, as claimed in State Farm's denial letter, attached to this Complaint as Exhibit B.

**c.**      **Adequate Representation**

Plaintiff will fairly and adequately represent the interests of the class as no interest of plaintiff conflicts with any other member of the class.

4

State Farm Ins.        10/2/2006 9:18 AM   PAGE   10/010   Fax Server

10/02/2006 09.59 FAX  5046836812        SF RIVERSIDE SMU      · CIOs         ☒009/009

d.     Typicality

The claims of the class representatives as named herein are typical of the claims of the class members they seek to represent in that they are all seeking declarations from the Court that: the damage caused by water entering New Orleans through breached levees does not fall within the exclusionary provisions of flood, surface water, etc.

e.     Superiority

The Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues herein presented, especially since individual joinder of each of the class members is impracticable. Individual litigation by each of the class members would be unduly burdensome to the plaintiffs as well as unduly burdensome and expensive to the court system and the defendants.

## XX.

Plaintiff brings this Petition for Declaratory Judgment on behalf of himself and others similarly situated, seeking a declaration by this Court that the damage caused by water entering New Orleans through breached levees does not fall within the exclusionary provisions of flood, surface water, etc. of plaintiff's State Farm renter's policy.

## XXI.

It is appropriate for the issues presented in this Petition to be decided by declaratory judgment since their proper resolution affects thousands of Louisiana citizens. Many of the class members are suffering and will continue to suffer emotional and financial hardship until the issue is decided.  .

## XXII.

WHEREFORE, plaintiff prays that after due proceedings had that this matter be certified as a class action in accordance with LSA-C.C.P. art. 591, et seq., and that the Court enter a declaratory judgment on behalf of himself and all other similarly situated that the damage caused by water entering New Orleans through the levee breaches does not fall within the exclusion of flood, surface water, nor any of the other exclusions contained in the policy, that the breaches were a result of wind or storm damage covered by the policy.

State Farm Ins.          10/2/2006 9:18 AM   PAGE   5/010   Fax Server

10/02/2006 08:00 FAX  5048026912        SF RIVERSIDE SHU       ← C2OS        @005/005

Respectfully submitted:

Kevin J. Kishor. # 21306
2640 Barracks Street
New Orleans, LA 70119
Telephone: (504) 827-0434
Fax: (504) 301-0098 (call first)

Temporary location:
4445 Painters St.
New Orleans, LA 70122
(504) 460-2898

BLUHM LEGAL CLINIC
NORTHWESTERN UNIVERSITY
J. Samuel Tenenbaum
Not Licensed in Louisiana
Pro Hac Vice
Illinois State Bar No. 15245
357 East Chicago Avenue
Chicago, IL 60611
Tel: (312) 503-4808

PLEASE SERVE:

STATE FARM FIRE AND CASUALTY COMPANY
By and through its agent for service of process:
The Louisiana Secretary of State,
8549 United Plaza Blvd.
Baton Rouge, LA 70809

TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

6

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG 29   PM 3: 34

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

A N N E Z . K I E F E R , S O P H I E
DUMOULINS; VIOLA JOHNSON;
SIMONE JOHNSON; RENE
HOLLINS;   TONY LYLES;
LYNETTE GORDON; NICOLE
WASHINGTON; JIMMY AND
SYLVIA MYLES; BRYANT
ANTHONY; SHIRLEY ESPRIT;
J O H N   F O N T E N O T ,   J R ;
JACQUELYN K. BROWN; BREEDA
M. THOMPSON; SHONTRA
VARNADO; DANA M. WILLIAMS;
M A R G U E R I T E   W I L L I A M S ;
FRANK ANSELMO; YVETTE M.
P O O L E   W A L L A C E ;   G A I L
MELTON; PATRICK AND AMY
DAVIS; JOHN BOYD, JR.; KEVIN
N. BROWN; RUSSELL A CIVELLO;
GEORGIA COLEMAN; ANTHONY
AND LORI DORSEY; GARY AND
WENDY ELDREDGE; MARGARET
G A S K I N ;   M A R Y   B E T H
GILLASPIE;   MELODY   LEE;
OLIVER AND MELODY D. LEE;
CAROL A. MCGEE; GEORGIANNA
MITCHELL;  HOPE  HARDEN;
GERTRUDE PIERRE; TOBIAS AND
OCEAL STEWART; JOCELYN
J A G E R S ;   W I L L I A M   P .
HONEYCUTT, SR.; AND PEGGY
AND MICHAEL DUGAS,

CIVIL ACTION NO.

CLASS ACTION COMPLAINT

NUMBER: **06-5370**

SECTION:

MAGISTRATE **SECT. 1 MAG 5**

JURY TRIAL REQUESTED



Fee $350 —
— Process
X Dktd
— CtRmDep
— Doc. No

Plaintiffs,

versus

ALLSTATE INSURANCE CO.; LEXINGTON INSURANCE CO.; STATE FARM FIRE AND CASUALTY CO.; ALLSTATE INDEMNITY CO., LOUISIANA CITIZENS PROPERTY INSURANCECORP.;LIBERTY MUTUAL INSURANCE CO.; FIDELITY NATIONAL INSURANCE CO.; WELLS FARGO INSURANCE CO.; AUDUBON INSURANCE COMPANY OF LA.; UNITED FIRE GROUP; LOUISIANA CITIZENS FAIR PLAN CO,; SECURITY PLAN FIRE INSURANCE; TRAVELERS INSURANCE CO.; CHUBB INSURANCE CO.; LLOYD'S OF LONDON; AND STATE FARM INSURANCE CO.

Defendants.

## COMPLAINT—CLASS ACTION

NOW INTO COURT, come Policyholders, ANNE Z. KIEFER, SOPHIE DUMOULINS; VIOLA JOHNSON; SIMONE JOHNSON; RENE HOLLINS; TONY LYLES; LYNETTE GORDON; NICOLE WASHINGTON; JIMMY AND SYLVIA MYLES; BRYANT ANTHONY; SHIRLEY ESPRIT; JOHN FONTENOT, JR; JACQUELYN K. BROWN; BREEDA M. THOMPSON; SHONTRA VARNADO;

-2-

DANA M. WILLIAMS; MARGUERITE WILLIAMS; FRANK ANSELMO; YVETTE M. POOLE WALLACE; GAIL MELTON; PATRICK AND AMY DAVIS; JOHN BOYD, JR.; KEVIN N. BROWN; RUSSELL A CIVELLO; GEORGIA COLEMAN; ANTHONY AND LORI DORSEY; GARY AND WENDY ELDREDGE; MARGARET GASKIN; MARY BETH GILLASPIE; MELODY LEE; OLIVER AND MELODY D. LEE; CAROL A. MCGEE; GEORGIANNA MITCHELL; HOPE HARDEN; GERTRUDE PIERRE; TOBIAS AND OCEAL STEWART; JOCELYN JAGERS; WILLIAM P. HONEYCUTT, SR.; AND PEGGY AND MICHAEL DUGAS, on behalf of themselves and all others similarly situated, by and through their undersigned counsel, aver as follows:

## I.

## INTRODUCTION

1.     On August 29, 2005, Policyholders were Louisiana residents who owned immovable property with improvements, principally houses or related residential structures, as well as personal property located there which was destroyed or damaged by winds generated by Hurricane Katrina.

2.     The Policyholders bring this action on behalf of themselves and all other similarly situated for declaratory judgment, breach of contract, breach of the implied duty of fair dealing and good faith, breach of fiduciary duty, and breach of Louisiana's bad faith and Valued Policy statutes, arising out of the wrongful, negligent, reckless and/or intentional

refusal of Defendants LEXINGTON INSURANCE CO.; STATE FARM FIRE AND CASUALTY CO.; ALLSTATE INDEMNITY CO., LOUISIANA CITIZENS PROPERTY INSURANCE CORP., ALLSTATE INSURANCE CO.; LIBERTY MUTUAL INSURANCE CO.; FIDELITY NATIONAL INSURANCE CO.; WELLS FARGO INSURANCE CO.; AUDUBON INSURANCE COMPANY OF LA.; UNITED FIRE GROUP; LOUISIANA CITIZENS FAIR PLAN CO.; SECURITY PLAN FIRE INSURANCE; TRAVELERS INSURANCE CO.; CHUBB INSURANCE CO.; LLOYD'S OF LONDON; AND STATE FARM INSURANCE CO., to provide insurance coverage for losses and damages to Policyholders' and class members' property caused by Hurricane Katrina, as required by the insurance policies that Policyholders purchased from one or more of the Insurance Company Defendants.

3.     Policyholders seek, on behalf of themselves and all others similarly situated, compensatory and punitive damages from the Defendants as a result of the defendants' wrongful conduct, in addition to declaratory relief by the Court that:

      a.     The first efficient proximate cause of the losses suffered by the Policyholders on August 29, 2005 was "windstorm," a covered peril under all of the insurance policies purchased by the Policyholders, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policies;

-4-

b.  The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were acts of negligence, standard covered perils in the Insurance Company Defendants' homeowners insurance policies;

c.  The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 was "storm surge", a known meteorological phenomenon that is not specifically excluded by any of the Insurance Company Defendants' insurance policies, in contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

d.  The breaking or failure of levees or boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by any of the Insurance Company Defendants' insurance policies, in contrast to other insurance policies available in the market; and

e.  The damage caused by water entering the City of New Orleans and surrounding parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levee walls along the 17th Street Canal,

-5-

London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of "flood," nor within any of the subject insurance policies' exclusions of "flood".

## II.

## PARTIES

4.     Policyholders and members of the class purchased homeowner's insurance and flood insurance policies from defendants.

5.     Defendants are foreign insurers domiciled in the various states and doing business in the State of Louisiana and can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

## III.

## JURISDICTION AND VENUE

6.     28 U.S.C. § 1332 (d)(2), as amended by the Class Action Fairness Act of 2005, Pub. L. 109-2, because the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and it is a class action brought by a Citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business;

7.     This Court has personal jurisdiction over Defendants because Defendants are or

-6-

were transacting business in this District within the relevant time periods by way of selling insurance policies to the Policyholders, who are also located in this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District and the Defendants regularly transact business in this District.

**IV.**

**CLASS ACTION ALLEGATIONS**

9.      This action is appropriate for determination through the Federal Class Action Procedure (Fed. R. Civ. P. 23, *et seq.*) for the following reasons:

a.      The proposed class representatives and named plaintiffs herein seeks to represent the following proposed class:

> All property owners in the State of Louisiana, whose property was destroyed or damaged by winds generated by Hurricane Katrina, and who at the time of the loss had in effect homeowner's insurance policies from any of the Insurance Company Defendants.

**b.      NUMEROSITY**

Hurricane Katrina caused damage or destruction to approximately 160,000 or more homes and buildings, resulting in losses to plaintiffs and the proposed class. The

-7-

exact number and identities of the class plaintiffs are unknown at this time, and can only be ascertained through appropriate discovery, plaintiffs are of information and belief that the class of plaintiffs clearly consists of hundreds of thousands of persons presenting a level of numerosity better handled through the class action procedure.

**c.      COMMON QUESTIONS OF LAW AND FACT**

There are common questions of law and fact applicable to all class members and defendants and which predominate over individual questions which include but are not limited to the legal determination of whether the efficient proximate cause of losses suffered as a result of water entering the City of New Orleans and surrounding parishes on August 29, 2005 from breaches in the levees and levee walls along the 17th Street Canal, the London Avenue Canal, the Industrial Canal, and elsewhere were standard covered perils in the insurance company defendants' homeowners insurance policies.

**d.      ADEQUATE REPRESENTATION**

Plaintiffs will fairly and adequately represent the interests of the class; and the class representatives herein are represented by skilled attorneys who are experienced in the handling of mass tort class action litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class.

-8-

**e.    TYPICALITY**

The claims of the class representatives as named herein are typical of the claims of the class members they seek to represent, in that they are all claims by insureds against their homeowners' insurance companies arising from losses suffered as a result of hurricane Katrina in the City of New Orleans and surrounding parishes on August 29, 2005.

**f.    SUPERIORITY**

The Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented, especially since individual joinder of each of the class members is impracticable.  Individual litigation by each of the class members, besides being unduly burdensome to the plaintiffs would also be unduly burdensome and expensive to the court system as well as the defendants.

**g.    Accordingly, class certification is appropriate under the Federal Rules of Civil Procedure, Rule 23(b)(2), Rule 23(b)(3) and/or Rule 23(b)(1)(B), and the class action vehicle is the superior method for handling this litigation.**

## V.

## FACTUAL BACKGROUND

Policyholders' and class members' Purchase Of The Policies

10.    Policyholders and class members are owners of immovable property with improvements, principally houses or related residential structures, as well as personal property located there, with such property being located in the State of Louisiana and within the jurisdiction of this Court.

11.    Policyholders and class members purchased homeowner's insurance policies (the "All Risk Policy" or "All Risk Policies") from Defendants.

12.    Policyholders and class members purchased their policies with the reasonable expectation that they would be able to recover for any and all losses to their residence and personal property caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and "storm surge" proximately caused by hurricane wind.

13.    **Where applicable:** For the purpose of obtaining such hurricane coverage, Policyholders and class members had to agree to pay a "hurricane deductible".

14.    However, notwithstanding the specific topographic townsite of the Greater New

-10-

Orleans Metropolitan Area specifically known to Defendant notwithstanding their advanced knowledge about the fragility of the New Orleans area levee systems, and in contrast to other insurance policies available in the market, at no time did they specifically exclude from coverage the breaking or failure of boundaries and levees of lakes, rivers, streams, or other bodies of water.

15.   Policyholders and class members trusted and relied upon Defendant's representations that the subject policy would cover any damage caused by a hurricane and, thus, reasonably believed that their respective Insurance Policy would cover any and all hurricane damage.

16.   The amount of insurance for Policyholders and class members was based on the estimated cost of replacing the home, an amount estimated by the Defendants or an agent authorized by them to determine the replacement cost of each individual home.

17.   At all times relevant hereto, Policyholders and class members made timely payment of the premiums due on their respective All Risk Policies.

### Insurance Company Defendants Fail To Advise Policyholders and Class Members Regarding The Availability Of Flood Insurance

18.   In 1956, Congress enacted the Federal Flood Insurance Act. The National Flood Insurance Act, as amended in 1968, is now the seminal authority for the current National Flood Insurance Program ("NFIP"). Congress created the NFIP to provide insurance

-11-

coverage for property located in flood plain areas where the risk of certain natural or seasonal flooding is increased.

19.    The NFIP provides a minimum level of insurance for the peril of natural or seasonal flooding with a cap of $250,000 per property.  42 U.S.C. § 4121(a)(1).

20.    Since the inception of the NFIP, the insurance industry has been willing to sell insurance in excess to the minimal level of coverage provided by the NFIP. Thus, the availability of additional flood insurance was known to and sold by the Defendant at the time it sold its All Risk Policies to Policyholders.

21.    Despite this knowledge, at no time prior to August 29, 2005 did Defendant advise Policyholders and Class Members that - contrary to their representations - their true intent was not to cover damage or loss caused by hurricanes that may involve damage, in part, from water beyond the NFIP limit, and that their home may accordingly be grossly underinsured, or that additional coverage could be purchased excess of the NFIP limit.

22.    Policyholders and class members have not at all been advised on the availability of flood insurance under the NFIP by Defendant.

**Hurricane Katrina Damages Policyholders' Property**

23.     At 6:10 a.m. on August 29, 2005, Hurricane Katrina made landfall near Grande Isle, Louisiana as a Category 4 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border, the eye of the storm passing just east of the City of New Orleans at approximately 9:00 a.m.

24.     At 8:00 a.m. on August 29, there was water on both sides of the Industrial Canal in New Orleans, and by 9 a.m. there was six to eight feet of water in the City's Lower Ninth Ward.

25.     At 2:00 p.m. on August 29, New Orleans officials publicly confirmed the reason for the water accumulating in the Lower Ninth Ward was a breach in the Industrial Canal levee wall, a breach which was reported to be two city blocks wide.

26.     Other significant breaches in the New Orleans area levee systems occurred on or after August 29, 2005 which similarly caused releases of water into the City and adjoining parishes.  In all, the levees around the City and adjoining parishes failed in at least eight (8) distinct locations, including the 17th Street, London Avenue and Industrial Canals, causing distinct and unique harm to different sections of the City and the surrounding parishes.

27.     Policyholders and class members  sustained damage to their property as a result

-13-

of the catastrophic events of August 29, 2005 and the following days, said catastrophic events being precipitated by Hurricane Katrina, a category 4 storm with sustained winds of 145 miles per hour.

28.     In the aftermath of the storm, it was estimated that approximately 80% of Orleans Parish was under water, and that losses from the hurricane are estimated to be as high as $200 billion.

29.     Recent engineering reports have stated that vast amounts of the water that entered the City of New Orleans and the surrounding parishes came about as the result of levee failures caused by negligent design, negligent maintenance and/or inadequate materials and not by topping of the levees.

30.     Moreover, in its April 6, 2006, edition, The Times Picayune reported that Lt. Gen. Carl Strock, the Chief of the Army Corps of Engineers, told a Senate committee that the Corps neglected to consider the possibility that the levee walls atop the 17th Street Canal levee would lurch away from their footings under significant water pressure and eat away at the earthen barriers below. The levees simply failed to work the way they were supposed to work.

31.     Congressional investigators, experts, and some Army Corps of Engineers officers have also suggested that the failure of the levees might have been caused by leaks in the

barriers based upon poor construction and/or maintenance of the levee.

32.      In addition, it was learned that the levee breach of the Industrial Canal to the Lower Ninth Ward side was caused by an inadequately moored barge that crashed into the levee wall, rupturing the levee and compromising its ability to hold water back.

33.      As a result, Policyholders on behalf of themselves and all others similarly situated aver, upon information and belief, that any damages attributable to the levee failures are the result of improper and/or negligent design, construction, maintenance of the levees by various third parties and or third party negligence.

## COUNT I – DECLARATORY JUDGMENT

34.      Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

35.      An actual controversy exists between Policyholders and the Defendant concerning the Defendant's duty to indemnify Policyholders for their losses.

36.      Consequently, under the circumstances, it is necessary and appropriate for the Court to declare Policyholders', and Defendant's rights and duties under the Policies pursuant to 28 U.S.C. § 2201.

37.      The losses suffered by Policyholders as a result of Hurricane Katrina are covered

-15-

losses under their respective All Risk Policies.

38.     Policyholders have given timely notification to Defendant and made timely demands in writing that the Defendant cover Policyholders' losses.

39.     The Defendant is obligated by the terms and conditions of their All Risk Policies to indemnify Policyholders for their losses.

40.     The Defendant has refused to indemnify Policyholders for their losses and have denied coverage for the losses.

41.     Thus, Policyholders are entitled to a declaratory judgment that the damages they suffered are covered losses under the All Risk Policies.

42     Specifically, the Policyholders' losses were caused by covered perils, the efficient causes of their losses were covered perils and the efficient and proximate causes of loss were covered perils.

43.     Further, to give the "flood" exclusions a broad reading and thus disallow the coverage for the damages arising from this catastrophic disaster, which occurred despite the vast and expansive levees existing in the greater New Orleans area, would contravene the very purpose of homeowner's policies.

44.     The reasonable expectations of Louisiana policyholders is that "flood"

-16-

encompasses overflowing of the Mississippi River, accumulation of surface water due to heavy rainfalls, or similar phenomena, but not the failing of virtually all man-made structures containing Navigable Waters of the United States surrounding the New Orleans Metropolitan Area due to negligent conduct beyond the policyholders' control.

45.     Finally, Policyholders should not be deprived of the coverage of the All Risk Policies where the Defendant has drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted. If so intended, and in contrast to other insurance policies available in the market, Defendant should have specifically excluded hurricane damage and/or the failure of levees as the most probable perils for the New Orleans Metropolitan Area.  Instead, Defendant decided to sell the same comprehensive All-Risk Homeowners Insurance Policies that they sell in the "high and dry" plains throughout the United States.

46.     While the Defendant may continue to make investment income during the course of any protracted legal proceedings, Policyholders, on the other hand, have little recourse but to sit idly by awaiting a decision, all the while being unable to begin reconstruction or renovation of their homes until they have the money to pay contractors.

47.     As a result, without resolution of this issue by declaratory judgment, Policyholders, in most instances, will be unable to remedy the damages they fully expected were covered by their All Risk Policies.

-17-

**WHEREFORE**, Policyholders respectfully request that this Court enter a declaratory judgment in their favor and against the Defendant as to Count I, ordering and decreeing that:

(1)     The first efficient proximate cause of the losses suffered by the Policyholders on August 29, 2005 was "windstorm," a covered peril under all of the insurance policies purchased by the Policyholders, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policies;

(2)     The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were acts of negligence, standard covered perils in the Defendant's homeowners insurance policies;

(3)     The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 was "storm surge", a known meteorological phenomenon that is not specifically excluded by any of the Defendant's insurance policies, in contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

-18-

(4)     The breaking or failure of boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by the Defendant's insurance policies, in contrast to other insurance policies available in the market; and

(5)     The damage caused by water entering the City of New Orleans and adjoining parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of "flood," nor within any of the subject insurance policies' exclusions of "flood".

## COUNT II — BREACH OF CONTRACT

48.     Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

49.     A valid contract exists between Policyholders and the Defendant in the form of the individual All Risk Policies, which, *inter alia*, obligates Defendant to cover the loss of or damage to a dwelling and personal property therein which is caused by wind or windstorms, storm surge  or acts of negligence.

50.     Policyholders paid all premiums due under their All Risk Policy and materially performed their obligations under that Policy.

51.     Upon proper and repeated demands by Policyholders, the Defendant has refused to meet its obligations under the All Risk Policies and refused to pay the full damages for

-19-

Policyholders' homes being destroyed or damaged by the efficient proximate cause of windstorms, storm surge and/or negligence.

52.     As a direct and proximate result of the breach by Defendant, Policyholders were deprived of the benefit of insurance coverage for which the Defendant was paid substantial premiums and, accordingly, Policyholders have suffered substantial damages.

        **WHEREFORE**, Policyholders demand judgment against the Defendants for all amounts due under the All Risk Policy, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

## COUNT III — BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

53.     Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

54.     By selling its All Risk Policy to Policyholders, Defendant assumed a duty of good faith and fair dealing to the Policyholders, including an obligation to promptly indemnify Policyholders for their losses.

55.     Defendant has failed to follow Louisiana's long-standing efficient proximate cause doctrine and have instead adopted an industry-wide approach to denying valid claims for inappropriate reasons.

56.     Defendant has also failed to provide coverage for Policyholders' losses and

-20-

instead have attempted to equate the efficient proximate cause of windstorm and the negligent design, construction and maintenance of the levees in the New Orleans area and/or third party negligence which caused Policyholders' losses with flooding in an effort to exclude coverage.

57.     Defendant has also wrongfully denied coverage for claims by equating "storm surge" with flood, thereby improperly expanding the flood exclusion and defeating the reasonable expectation of Louisiana policy holders.

58.     Moreover, the Defendant directed its adjusters to follow specific "guidelines" whereby the adjusters would arbitrarily, capriciously and without probable cause, find a nearby waterline and apply it to Policyholders' property in order to deny full payment of Policyholders' claims.

59.     Defendant further directed its adjusters to ignore all other information and evidence and, instead, to use only the procedure and guidelines mandated by them, specifically, the arbitrary application of any nearby waterline to Policyholders' property.

60.     In directing its adjusters to ignore any information or evidence other than the arbitrary and capricious application of any nearby waterline,   Defendant violated La. Rev. Stat. Ann. § 658.2(A)(1) which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining

-21-

whether a loss is covered or not covered under a homeowners' insurance policy."

61. By engaging in all of the conduct above, the Defendant lacks an arguable or legitimate basis for refusing to pay the Policyholders' claims.

62. By engaging in the conduct described above, the Defendant has violated the duties of good faith and fair dealing owed to Policyholders.

63. As a direct and proximate result of the Defendant's bad faith actions, Policyholders have suffered, and will continue to suffer, substantial damages.

64. Moreover, by engaging in the conduct above, Defendant's persistent and systematic actions and failures to act were done with malice and gross negligence and with a disregard for Policyholders' rights so as to warrant the imposition of punitive damages against Defendant.

**WHEREFORE**, Policyholders demand judgment against the Defendant for all amounts due under the Policies, other compensatory damages, punitive damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

## COUNT IV — BREACH OF LA. REV. STAT. ANN. § 22:1220
### (Insurance Bad Faith)

65. Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

-22-

66.     Pursuant to La. Rev. Stat. Ann. § 22:1220A, Defendant owes Policyholders a "duty of good faith and fair dealing" as well as a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with Policyholders.

67.     La. Rev. Stat. Ann. § 22:1220B prohibits Defendant from, inter alia, "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" and "[f]ailing to pay the amount of any claim . . . when such failure is arbitrary, capricious or without probable cause."

68.     Defendant has misrepresented the coverage afforded by the All Risk Policy provisions by wrongfully and without a legitimate basis seeking to have the "flood" exclusions given a broad reading in an effort to disallow coverage for the damages arising from Hurricane Katrina.

69.     Defendant has failed to follow Louisiana's long-standing efficient proximate cause doctrine and have instead adopted an industry-wide approach to denying valid claims for inappropriate reasons without probable cause.

70.     Specifically, Defendants has failed to provide coverage for Policyholders' losses and, instead, have attempted to equate the efficient cause of windstorm and the negligent design, construction and maintenance of the levees in New Orleans which caused Policyholders' losses with *flooding* in an effort to exclude coverage and/or third party negligence.

71.     Defendants has also wrongfully denied coverage for claims by equating "storm

-23-

surge" with *flood*, thereby improperly expanding the flood exclusion and defeating the reasonable expectation of Louisiana policy holders.

72.     As such, Defendant has breached known duties through a motive of self interest and/or ill will without having a reasonable basis to deny these claims, instead denying claims in an arbitrary and capricious manner and without probable cause.

73.     Moreover, pursuant to a recent enactment of the Legislature of Louisiana, an insurance company acts in bad faith when it fails "to pay claims pursuant to R.S. 22:658.2 [and] such failure is arbitrary, capricious, or without probable cause." La. Rev. Stat. Ann. § 22:1220A.

74.     In directing its adjusters to consider only nearby waterlines and to ignore all other evidence in determining whether Policyholders' losses are covered under the All Risk Policies, Defendant violated La. Rev. Stat. Ann. § 658.2.A.(1), which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

75.     By engaging in all of the above conduct, Defendant has engaged in bad faith conduct in violation of La. Rev. Stat. Ann. § 22:1220.

**WHEREFORE**, Policyholders demand judgment against Defendant for all compensatory damages including all amounts due under the Policies, other compensatory damages, plus interest on that amount, costs of suit, attorneys' fees incurred in pursuing

-24-

payment of the loss, consequential damages, punitive damages, and such other relief deemed just and proper by the Court.

## COUNT VI — BREACH OF LA. REV. STAT.ANN. § 22:695

76.     Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

77.     Louisiana is a "valued policy" state, requiring that if an insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnity or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset." La. Rev. Stat. Ann §22:695.

78.     Defendant placed a value on Policyholders' property and used such valuation for purposes of determining the premium charge under the All Risk Policy.

79.     Policyholders have suffered total losses to their property which are covered under their All Risk Policy.

80.     Defendant has failed to indemnify or compensate Policyholders for their covered losses in an amount equal to the values used for determining the individual policy premiums.

-25-

81.     Instead, Defendant has failed to pay anything to Policyholders or paid an amount lower than the valuation assessed to the properties for purposes of determining premiums.

82.     As a result, Defendant has breached La. Rev. Stat. Ann. §22:695, entitling Policyholders to damages equal to the full value placed on the Policyholders' property by the Defendant with no offset or deductions.

     **WHEREFORE**, Policyholders demand judgment against Defendant for all amounts due under the Policies, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

## COUNT VII — BREACH OF FIDUCIARY DUTY

83.     Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

84.     Defendant sells its homeowners insurance policies directly to their customers, including Policyholders and, in that respect, function in the capacity of insurance brokers or agents.

85.     By directly marketing and selling its Policies to Policyholders', Defendant owes those Policyholders who purchased All Risk Policies from them a fiduciary duty of undivided loyalty, due care, and fidelity.

86.     Defendant owed Policyholders a fiduciary duty to perform their responsibilities as

-26-

insurance brokers and/or agents with good faith and appropriate skill in Policyholders'
best interests and with heightened care, fidelity, diligence and full disclosure required of
a fiduciary.

87.     Among other things, insurance brokers and/or agents are obligated to provide
advice and assistance to policyholders so that risks to which they are exposed are
adequately insured, or at a minimum, provide them with adequate opportunity and advice
to make a decision as to what coverage to purchase.

88.     At no time relevant hereto did Defendant advise or suggest to Policyholders that -
contrary to their representations - their true intent was not to cover damage or loss caused
by hurricanes that may involve damage, in part, from water beyond the NFIP limit, and
that their homes may accordingly be grossly underinsured, or that additional coverage
could be purchased excess of the NFIP limit.

89.     By failing to advise Policyholders of the availability of flood insurance,
Defendant breached its fiduciary duty to act in Policyholders' best interest and with the
care and full disclosure required of a fiduciary.

90.     The breaches of fiduciary duty by Defendant has caused Policyholders substantial
damages.

        **WHEREFORE**, Policyholders demand

        (1)     that the defendants be served with a copy of the Complaint and be cited to
appear and answer same;

-27-

(2)     an order certifying the class and any appropriate subclasses thereof under the appropriate provisions of Federal Rules of Civil Procedure, Rule 23, and appointing complainants and their counsel to represent the Class;

(3)     judgment against Defendant for all amounts due under the Policies, other compensatory damages, punitive damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

Respectfully submitted,

**FAYARD & HONEYCUTT, APC**

Calvin C. Fayard, Jr. (La. Bar Roll No. 5486)
D. Blayne Honeycutt (La. Bar Roll No. 18264)
Wanda J. Edwards (La. Bar Roll No. 27448)
519 Florida Avenue SW
Denham Springs, LA 707226
PH: (225) 664-4193
FX: (225) 664-6925
EM: calvinfayard@fayardlaw.com
EM: dbhoneycutt@fayardlaw.com
EM: wandaedwards@fayardlaw.com

And

**MURPHY LAW FIRM**
Peyton P. Murphy (La. Bar Roll No. 22125)
7035 Jefferson Highway
Baton Rouge, LA 70726
PH: (225) 928-8800
FX: (225) 328-8802

-28-



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG 25 AM II: 02

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

KATHLEEN AND PETER TERREBONNE,          CASE NUMBER:
HERMAN WALTON, PATRICIA BORJA,
KENNY AND LYNN REICHERT,
SHIRLEY WALKER, FAY EBEYER,
LOUIS AND DEBBIE BOURG,
HAROLD WILHELMUS, KATHLEEN LUCIEN,     DIVISION:
ESTATE OF EDWARD NICHOLSON,
MARIE SMITH, DUANE DENNIS,
ESTATE OF ODILE HOWARD, and            **06-4697**
CLARENCE MCLAUGHLIN, Individually and   **SECT. I MAG 3**
On behalf of all others similarly situated

VERSUS                                  MAGISTRATE:

ALLSTATE INSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY COMPANY,
LOUISIANA CITIZENS PROPERTY INSURANCE
CORPORATION ,
LIBERTY MUTUAL INSURANCE COMPANY,
THE HARTFORD INSURANCE COMPANY,
METROPOLITAN PROPERTY & CASUALTY
INSURANCE COMPANY,
BALBOA INSURANCE COMPANY,
FARMERS AND MERCHANTS INSURANCE COMPANY,
ASSURANT INSURANCE COMPANY,
UNITED FIRE AND CASUALTY COMPANY,
HANOVER INSURANCE COMPANY, and
THE TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA

___ Fee_#_35⁰⁰
_X_ Process _____
_X_ Dktd _____
___ CtRmDep_____
___ Doc. No_____

## CLASS ACTION COMPLAINT

**NOW INTO COURT,** through undersigned counsel, pursuant to Federal Rule of Civil procedure 23(a) and (b)(1), come KATHLEEN AND PETER TERREBONNE, HERMAN WALTON, PATRICIA BORJA, KENNY AND LYNN REICHERT, SHIRLEY WALKER, FAY EBEYER, LOUIS AND DEBBIE BOURG, HAROLD WILHELMUS, KATHLEEN LUCIEN, ESTATE OF EDWARD NICHOLSON, MARIE SMITH, DUANE DENNIS, ESTATE OF ODILE HOWARD, and CLARENCE MCLAUGHLIN, all persons of the full age of majority and citizens of the State of Louisiana, who individually and on behalf of all others similarly situated represent as follows:

I.

Plaintiffs herein are residents of the State of Louisiana, who at all material times hereto, including on August 29, 2005, owned immovable property located in the State of Louisiana, which was insured by the below listed defendants under a homeowner's policy:

A.  KATHLEEN AND PETER TERREBONNE, insured by ALLSTATE INSURANCE COMPANY;
B.  HERMAN WALTON, insured by STATE FARM FIRE AND CASUALTY COMPANY;
C.  PATRICIA BORJA, insured by LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION;
D.  KENNY AND LYNN REICHERT, insured by ALLSTATE INSURANCE COMPANY;
E.  SHIRLEY WALKER, insured by LIBERTY MUTUAL INSURANCE COMPANY;
F.  FAY EBEYER, insured by ALLSTATE INSURANCE COMPANY;
G.  LOUIS AND DEBBIE BOURG, insured by THE HARTFORD INSURANCE COMPANY;
H.  HAROLD WILHELMUS, insured by MET. PROP. & CAS. INS. COMPANY;
I.  KATHLEEN LUCIEN, insured by BALBOA INSURANCE COMPANY;
J.  ESTATE OF EDWARD NICHOLSON, insured by FARMERS INSURANCE COMPANY;
K.  MARIE SMITH, insured by ASSURANT INSURANCE COMPANY;
L.  DUANE DENNIS, insured by UNITED FIRE;
M.  ESTATE OF ODILE HOWARD, insured by HANOVER INSURANCE COMPANY; and
N.  CLARENCE MCLAUGHLIN, insured by THE TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA.

II.

Made defendants herein are:

A.    Defendant Allstate Insurance Company (hereinafter referred to as "Allstate"), a foreign insurer organized and existing under the laws of the State of Illinois and doing business in the State of Louisiana who be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd,, Baton Rouge, LA 70809.

B.    Defendant State Farm Fire & Casualty Company (hereinafter referred to as "State Farm"), a foreign insurer organized and existing under the laws of the State of Illinois and doing business in the State of Louisiana who can be served through their registered agent far service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA70809.

C.    Defendant Louisiana Citizens Property Insurance Corporation (hereinafter referred to as "LA FAIR Plan"), an insurer domiciled in the State of Louisiana who can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809, or at their place of business at 433 Metairie Road, Suite 400, Metairie, LA 7005, or at their official mailing address P.O. Box 60730, New Orleans, LA 70160.

D.    Defendant Liberty Mutual Insurance Company (hereinafter referred to as "Liberty Mutual"), a foreign insurer organized and existing under the laws of the State of Massachusetts and doing business in the State of Louisiana who can be served through their registered agent for service of

process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

E.     Defendant The Hartford Insurance Company (hereinafter referred to as "Hartford"), a foreign insurer organized and existing under the laws of the State of Connecticut and doing business in the State of Louisiana who can be served through their registered agent far service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA70809.

F.     Defendant Metropolitan Property and Casualty Insurance Company (hereinafter referred to as "MetLife"), a foreign insurer organized and existing under the laws of the State of Rhode Island and doing business in the State of Louisiana who can be served through their registered agent for service of process, C T CORPORATION SYSTEM, 8550 United Plaza Blvd., Baton Rouge, LA 70809.

G.     Defendant Balboa Insurance Company  (hereinafter referred to as "Balboa"), a foreign insurer organized and existing under the laws of the State of California and doing business in the State of Louisiana who can be served through their registered agent far service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

H.     Defendant Farmers and Merchants Insurance Company  (hereinafter referred to as "Farmers "), a foreign insurer organized and existing under the laws of the State of Massachusetts and doing business in the State of

4

Louisiana who can be served through their registered agent far service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

I.     Defendant Assurant Insurance Company (hereinafter referred to as "Assurant"), a foreign insurer organized and existing under the laws of the State of New York and doing business in the State of Louisiana who can be served through their registered agent far service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

J.     Defendant United Fire and Casualty Company (hereinafter referred to as "United Fire"), a foreign insurer organized and existing under the laws of the State of Iowa and doing business in the State of Louisiana who can be served through their registered agent far service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

K.     Defendant Hanover Insurance Company (hereinafter referred to as "Hanover"), a foreign insurer organized and existing under the laws of the State of New Hampshire and doing business in the State of Louisiana who can be served through their registered agent far service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

L.     Defendant Travelers Casualty Insurance Company of America (hereinafter referred to as "Travelers"), a foreign insurer organized and existing under the laws of the State of Connecticut and doing business in

the State of Louisiana who can be served through their registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

M.    The foregoing Defendants will hereinafter be collectively referred to as the "Insurance Company Defendants."

## JURISDICTION

### III.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), because plaintiffs are citizens of the state of Louisiana and of the Eastern District, defendant is a citizen of a state other than Louisiana, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interests and costs as to plaintiffs and each member of the proposed class.

Alternatively, this Court has subject matter jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2), because this is a class action in which there is at least minimal diversity and the matter in controversy exceeds the sum of Five Million Dollars ($5,000,000.00), exclusive of interests and costs.

## VENUE

### IV.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because all immovable properly that is the subject of this action is located in the Eastern District of Louisiana, all damage to said immovable property occurred in the Eastern District of Louisiana, plaintiffs reside in the Eastern District of Louisiana, and the applicable facts which form the basis of this lawsuit occurred in the Eastern District of Louisiana.

## CLASS ALLEGATIONS

### V.

Plaintiffs propose to proceed on behalf of the following class:

*All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place on August 29, 2005 a fire (homeowner's) insurance policy, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

Plaintiffs propose to proceed on behalf of the following sub-class:

1. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with ALLSTATE INSURANCE COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

2. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with STATE FARM FIRE AND CASUALTY COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

3. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with LOUISIANA CITIZENS PROPERTY INSURANCE CORPORATION, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

4. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with LIBERTY MUTUAL INSURANCE COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

5. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with THE HARTFORD INSURANCE COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

6. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

7. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a*

*fire (homeowner's) insurance policy with BALBOA INSURANCE COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

8. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with FARMERS AND MERCHANTS INSURANCE COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

9. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with ASSURANT INSURANCE COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

10. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with UNITED FIRE AND CASUALTY COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

11. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with HANOVER INSURANCE COMPANY, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

12. *All owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place an August 29, 2005 a fire (homeowner's) insurance policy with TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, who sustained a covered loss of, or damage to, such property, and such property was rendered a total loss.*

## NUMEROSITY

### VI.

This action is maintainable as a class action because the size of the class, upon information and belief, is so numerous that joinder of all members would be impracticable. This level of numerosity is better handled through the class action procedure.

## COMMON QUESTIONS OF LAW AND FACT

### VII.

8

Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class. Among the questions of law and fact common to the class are:

(i)     whether the homeowner's insurance policy issued by defendant to plaintiffs

(and the policies of all those similarly situated) is subject to La.

R.S. 22:695(A), Louisiana's "Valued Policy Law" (VPL), which provides:

> Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer. Coverage may be voided under said contract in the event of criminal fault on the part of the insured or the assigns of the insured.

(ii)    whether defendant placed a valuation on the covered property (and on the

covered properties of all those similarly situated) and used such valuation

for purposes of determining the premium charges to be made  under the

policy;

(iii)   whether plaintiffs (and all those similarly situated) suffered a "covered

loss of, or damage to" the covered property pursuant to La. R.S.

22:695(A);

(iv)    whether the immovable property owned by plaintiffs (and those similarly

situated) has been rendered a "total loss" by Hurricane Katrina, as defined

by Louisiana law;

(v)     whether plaintiffs (and those similarly situated) are required to bear the burden of proof under La. R.S. 22:695(A);

(vi)    whether plaintiffs (and those similarly situated) are entitled, under La. R.S. 22:695(A), to recover the full value stated on the face of their policies;

(vii)   whether plaintiffs (and those similarly situated) are entitled, under La. R.S. 22:695(A) to a rebuttable presumption to recover the full value on the face of their policies;

(viii)  whether plaintiffs (and those similarly situated) are entitled, under La. R.S. 22:695(A)'s rebuttable presumption, to recover the full value unless the Insurer can prove that a non-covered peril caused the entire total loss;

## TYPICALITY

### VIII.

The claims of the class representatives are typical of the claims of the class. Plaintiffs are owners of immovable property located in the State of Louisiana and in the parishes affected by Hurricane Katrina, who had in place on August 29, 2005 homeowner's insurance policies with defendants, whereby defendants placed valuations on the covered properties and used such valuations for the purposes of determining the premiums to be charged. Furthermore, the immovable property owned by plaintiffs (and the immovable properties of all those similarly situated) sustained a covered loss or damage, and such property (and the immovable properties of all those similarly situated) was rendered a total loss as a result of Hurricane Katrina.

## CLASS REPRESENTATIVES

### IX.

Plaintiffs will fairly and adequately represent and protect the interests of the class. Plaintiffs, the class representatives herein, have retained counsel who are skilled and experienced in the prosecution of class action litigation, and who will adequately handle thus action in an expeditious manner to the best interests of all members of the class.

## SUPERIORITY

## X.

A class action is a superior vehicle for the fair and efficient adjudication of this litigation, because individual joinder of all class members is impracticable and would be expensive and unduly burdensome on individual class members, defendants, and the court system. Additionally, because of the disparity of resources available to the defendants, as compared to those available to individual class members, prosecution of separate actions would work a financial hardship on many class members. Finally, class certification is appropriate because the prosecution of separate actions by individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications, and would substantially impair their ability to protect their interests.

## XI.

Accordingly, class certification is appropriate under the Federal Rules of Civil Procedure; Rule 23(b)(3) and/or Rule 23(b)(1)(A), and the class action mechanism is the superior method for handling this litigation.

## FACTUAL ALLEGATIONS

## XII.

On August 29, 2005, Hurricane Katrina made landfall in Southeast Louisiana as a Category 3/4 hurricane bearing sustained winds of 140 miles per hour.

## XIII.

Plaintiffs' homes (and the homes of all others similarly situated) sustained loss or damage from the following non-exclusive list, which are covered perils under the policies issued by defendant(s):

1. *Wind storm;*
2. *Water;*
3. *Civil authority;*
4. *Third party negligence; and*
5. *Loss of use.*

## XIV.

As a result of the above, plaintiffs (and all others similarly situated) sustained substantial damage to their home, rendering them a total loss or a constructive total loss.

## XV.

Defendants placed or should have placed a valuation upon the covered immovable property owned by plaintiffs (and on the covered properties of all others similarly situated).

## XVI.

Defendants used or should have used such valuation for purposes of determining the premium charges to be made under the policy covering plaintiffs' immovable property (and under the policies covering the immovable properties of all those similarly situated).

## XVII.

Defendants did not use a different method in the computation of the loss of the covered immovable property owned by plaintiffs (or of the covered immovable properties owned by all others similarly situated).

## XVIII.

The homeowner's insurance policies, and any application therefore, issued by defendants to plaintiffs (and policies and applications of all others similarly situated) did not set forth in type of equal size a different method which was actually used in the loss computation.

## XIX.

The defendants have failed to present evidence, which is their duty under Louisiana law, to prove that the total loss and/or constructive total loss was not caused by the covered perils listed in their policies. Pursuant to LA R.S. 22:695 and Louisiana jurisprudence, the insured(s) are relieved of that burden, until such time as the insurer(s) have produced competent evidence to the contrary.

## XX.

Accordingly, plaintiffs (and all others similarly situated) are entitled to recover the face value stated in their homeowner's insurance policies insuring their covered immovable property, without deduction or offset, pursuant to La. R.S. 22:695(A).

## XXI.

This Complaint presents purely state-law issues whose resolution depends solely on the interpretation and application of a single Louisiana statute: La. R.S. 22:695(A).

## XXII.

Plaintiffs, individually and on behalf of all those similarly situated, request a trial by jury.

WHEREFORE, plaintiffs, individually and on behalf of all those similarly situated, pray that this matter be certified as a class action in accordance with Federal Rules of Civil Procedure, Rule 23(b)(3) and/or Rule 23(b)(1)(A), and after all legal delays and due proceedings are had,

hat there be judgment in favor of plaintiffs and all others similarly situated, and against defendant, for (1) the face value stated in their fire (homeowner's) insurance policy insuring their covered immovable property, without deduction or offset; (2) Alternatively, a judgement delineating the legal presumption of LA R.S. 22:695 and the burden of the Insurer(s); (3) pre-judgment and post judgment interest; (4) all costs of these proceedings; (5) a trial by jury; and (6) all general and equitable relief.

RESPECTFULLY SUBMITTED,

THE LAW OFFICE OF KEITH COUTURE

KEITH COUTURE, #22759
PETER J. DIIORIO, #29837
SAMUEL BEARDSLEY, #22252
1341 West Causeway Approach
P.O. Box 2381
Mandeville, LA  70470-2381
(985) 674-4428
(985) 867-9540 Fax