UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO:  LEVEE/MRGO | SECTION "K"(2) |
| *Sims*          C.A. No. 06-5116 | |
| *DePass*        C.A. No. 06-5127 | |
| *Paul*          C.A. No. 06-7682 | |
| *Richard*       C.A. No. 06-5118 | |
| *Adams*         C.A. No. 06-5128 | |
| *Bourgeois*     C.A. No. 06-5131 | |
| *Ferdinand*     C.A. No. 06-5132 | |
| *Christophe*    C.A. No. 06-5134 | |
| *Williams*      C.A. No. 06-5137 | |
| *Porter*        C.A. No. 06-5140 | |
| *Augustine*     C.A. No. 06-5142 | |

**ORDER AND REASONS**

Before the Court is the Motion of Defendant Board of Commissioners of the Port of New Orleans to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon which Relief Can Be Granted (Doc. 2935). In the above-referenced cases, plaintiffs seek to hold the Board of Commissioners of the Port of New Orleans ("the Port") liable for the construction and maintenance of the MRGO based on "Acts of Assurance" between the Port and the United States government. The Port maintains that no cause of action lies based on such theories and seeks dismissal. The Court agrees with the Port for the reasons that follow.

**Background**

The above-referenced cases are brought by "home property and business owners and residents" (Doc. 3407 who claim to have suffered damages and losses from flooding proximately caused by the failures of the Intracoastal Waterway ("ICWW"), the MRGO, the

Michoud Canal levees and the Industrial Canal also known as the Inner Harbor Navigational Canal in the wake of Hurricane Katrina.  (Doc. 3407, Memorandum in Opposition, at 1-2). Plaintiffs maintain that they have brought suit against the Port based on Acts of Assurance given (a) on Aril 15, 1957 with respect to the construction of the MRGO, (b) on February 3, 1969 for the MRGO Michoud La.-Project Orleans Parish, and (c) on January 10, 1974 for the MRGO Michoud Canal Project."  These Acts of Assurance were required to be given by Congress as a requirement for federal participation in the projects.  Under these Acts, the Port agreed to hold the United States harmless from claims for damages due to the construction and subsequent maintenance of the MRGO, the Michoud Canal, the Intracoastal Waterway and the Industrial Canal Projects.

Initially, the Port filed the instant motion seeking dismissal based on its contention that these Acts of Assurance do not create any right of recovery for plaintiffs who are not signatories to these contracts.  Rather, the Port maintains that at best, these hold harmless provisions are indemnity agreements by which the Port would indemnify the United States government for any amount it may be cast in judgment by plaintiffs.  Furthermore, the Port maintains that the complaints herein fail to make any factual allegations which if proven would entitle plaintiffs to any relief sought.

In response to the motion, plaintiffs contend that they have asserted three different claims: (1) a state law claim under the third-party beneficiary doctrine as stated in La. Civ. Code art. 1978; (2) the Louisiana Direct Action State pursuant to La. Rev. Stat. 22:655; and (3) a federal common law claim.  Finally, they maintain that the Port's *garde* over the Industrial Canal and its alleged failure to provide and maintain the bridges and approaches creates another claim in torts.

The Court will now turn to these contention in the context of a Motion to Dismiss.

**Legal Standard**

Rule 12(b)(6) of the Federal Rule of Civil Procedure provides that in response "to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim" the pleader may raise by motion the defense of "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)(quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "[T]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).[1] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (quotation marks, citations, and footnote omitted).

---

[1] This Court has previously stated that a district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Blackburn v. Marshall,* 42 F.3d 925, 931 (5th Cir.1995). The Supreme Court has recently abrogated the often cited "no set of facts" language in *Conley* commenting that the case has been frequently mischaracterized as setting forth a minimum pleading standard when it was simply "describ[ing] the breadth of opportunity to prove what an adequate complaint claims." *Twombly*, 127 S.Ct. at 1968. In other words, the *Twombly* court reads *Conley* as standing for the proposition that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (citing *Sanjuan v. American Bd. of Psychiatry and Neurology*, 40 F.3d 247, 251 (7th Cir. 1994)(once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"). Thus, rejecting the *Conley* "no set of facts" test, the *Twombly* court employs a plausibility standard for scrutinizing the sufficiency of pleadings in the context of Rule 12(b)(6) motion.

*Stipulation Pour Autrui*

Plaintiffs contend that the Acts of Assurances provide third-party beneficiary status to them.  Under Louisiana law, this type of contractual provision is know as a *stipulation pour autrui*.  As this Court has previously explained:

> Contractual stipulations in favor of third persons are favored in Louisiana law and are "specifically authorized in broad terms." *Andrepont v. Acadia Drilling Co, Inc.,* 255 La. 347, 357 (La.1969). La.Civ.Code Art.1978 provides that parties "may stipulate a benefit for a third person called a third party beneficiary," and "[o]nce the third party has manifested his intention to avail himself of the benefit, the parties may not dissolved the contract by mutual consent without the beneficiary's agreement." *Id.* The question of whether a stipulation *pour autrui* exists is a "question of what was the intention of the parties, and that intention must be gathered, just as in the case of any other contract, from reading the contract, as a whole, in light of the circumstances under which it was entered into." *Allen v. Curry Mfg. Co. v. Shreveport Waterworks Co.,* 37 So. 980, 984 (La.1905); *Concept Design, Inc. v. J.J. Krebs & Sons, Inc.,* 692 So.2d 1203, 1206. Specific factors to be looked at when determining whether a stipulation *pour autrui* exists include (1) the existence of a legal relationship between the promisee and the third party involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promisee will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c)there are kinship ties or other circumstances indicating a benefit by way of a gratuity was intended. *See Andrepont v. Acadia Drilling Co., Inc.,* 231 So.2d 347, 351 (La.1969).
>
> To establish a stipulation *pour autrui,* there must not only be a third party advantage, but the third party relationship must form the consideration for the contract, and the benefit may not be merely incidental to it. *City of Shreveport v. Gulf Oil Corp.,* 431 F.Supp. 1, 3-4 (W.D.La.1975), aff'd 551 F.2d 93 (5th Cir.1977). The benefit may not be merely incidental to the contract and the contract must explicitly provide that the direct benefit to the third party constitutes consideration or the condition of the contract. *In the Matter of the Complaint of Dann Marine Towing,* 2004 WL 744881 (E.D.La.2004).

*Rowan Companies, Inc. v. Greater Lafourche Port Commission*, 2006 WL 2228950, *9 (E.D.La. Aug. 2, 2006).  Certainly, at a minimum, there is no evidence that this latter requirement–that

there must not only be a third party advantage, but the third party relationship must form the consideration for the contract, and the benefit may not be merely incidental to it–has been met. There is neither any proof that a direct right of action was created, nor is there any proof that this third party relationship formed any kind of consideration for the contract in question.

This issue, that is whether a suit brought by a third-party against the indemnitor in an Act of Assurance lies, has been addressed numerous times and in all but one occasion, courts have found that an Act of Assurance does not create a *stipulation pour autrui.* The seminal suit in this regard is *Cooper v. City of Bogalusa*, 198 So. 510 (La. 1940). The Louisiana Supreme Court held that a property owner who sued for damages based on her contention that her land had become isolated as the result of the dredging of a navigable river by the United States at the request of Bogalusa had no direct right of action to recover damages directly against the town. Even though Bogalusa was the local indemnifying authority with respect to the dredging contract, the court found that nothing in Bogalusa's resolution guaranteeing to hold and save harmless the United States for all claims for damages that may or might result from the construction and maintenance of the improvement directly granted that plaintiff a direct right of action to recover damages. *Id.* at 513. *See Vuljan v. Board of Commissioners of Port of New Orleans*, 170 So.2d 910 (La. App. 4th Cir. 1965) (oyster lessee had no cause of action against the Port of New Orleans for damages cause by construction of MRGO arising out of hold harmless provision between it and the United States).

This principle has been applied in federal court as well. In *Anderson v. Red River Waterway Commission*, 231 F.3d 211 (5th Cir. 2000), owner of property affected by a rise in water level along the Red River brought action against the Red River Waterway Commission (RRWC), the Fifth Circuit Court of Appeals found that "the Corps or Engineers' potential right

to seek indemnification from the RRWC does not confer power upon the plaintiffs to file suit against the RRWC." *Id.* at 215 *citing Souleau v. Yates Drilling Co.*, 183 So.2d 62, 64-65 (La. App. Ct. 1966) (holding that indemnity clause does not confer cause of action in favor of third parties) and *Haeuser v. Bad. of Comm'rs of the Port of New Orleans*, 170 So.2d 728, 729 (La. App. Ct. 1965) ("Plaintiffs have no direct action against Defendant for such recovery since Defendant, or the State is liable is answerable only to the United States in a proper proceeding.).

*Cooper v. La. Dept. of Public Works*, 870 So.2d 315 (La. App. 3rd Cir. 2004) is the primary case on which plaintiffs rely and the sole case to the Court's knowledge in which a court found that plaintiffs could bring a claim against the Louisiana Department of Transportation and Development for interference with their natural servitudes of drainage when the United States constructed a series of locks and dams that flooded plaintiffs property.  However, the court in that instance found that:

> the obligation that the United States imposed as a condition of the "Act of Assurances" and undertaken by the DOTD (to provide the United States with al lands and servitudes necessary for the construction and maintenance of the locks and dams along the Ouachita and Black Rivers) constitutes a *stipulation pour autrui* in favor of the Plaintiffs.  the inference is clear that the United States knew before it constructed these locks and dams that it needed to acquire multiple pieces of property and servitudes to carry out this massive construction project.  As such, it was interested in having the DOTD undertake its obligation to compensate the Plaintiffs if construction resulted in the taking of their lands because, otherwise, the Untied States would be responsible for paying their claims for reimbursement.

*Cooper,* 870 So.2d at 330-31.  Thus, the court found the necessary relationship to create a *stipulation pour autrui* in the fact that DOTD had taken on the responsibility to purchase land that would be adversely affected by the  the United States' construction.

This Court concurs with Judge Vance's evaluation of this case–that is the result in *Cooper* being a stretch and its reasoning forced.  *Barasich v. Columbia Gulf Transmission Co.*, 467 F.

Supp. 2d 676, 693 (E.D.La. 2006).   Moreover, it is inapplicable to the case at bar.  In this instance, plaintiffs have not been damage by virtue of the Port's failure to purchase their property which was immediately condemned by virtue of the dredging of the MRGO.  Rather, the damages plaintiffs seek are far removed from any responsibility that the Port undertook and cannot be the basis for claims brought directly against the Port.

**Direct Action Statute**

Plaintiffs' "argument" with regard to the application of the Louisiana Direct Action Statute is its citation to the statutory language.  This statute unquestionably allows an injured party to directly sue the insurer of the person who allegedly caused the damage.  The Acts of Assurances at issue herein are not insurance policies.  Indeed, in *Cooper v. Louisiana Dept. of Public Works*, 870 So.2d at 327-28 reversed the trial court and found the assurances involved there did not constitute insurance.   Plaintiffs have not argued and the Court cannot find any reason to disagree with this finding.

**Federal Common Law**

Plaintiffs contend that federal law controls the interpretation of these contracts.  However, this contention is misplaced.  In *Miree v. DeKalb County, Ga.*, 97 S. Ct. 2490 (1977), survivors of deceased passengers, the assignee of the jet aircraft owner, and a burn victim brought suit when a Lear Jet crashed after take-off allegedly because of the ingestion of birds swarming from a dump in the immediate vicinity of the Airport into the jet engines of the aircraft.  DeKalb County  had entered into six grant agreements with the Federal Aviation Administration ("FAA") wherein DeKalb agreed to "'take action to restrict the use of land

adjacent to or in the immediate vicinity of the Airport to activities and purposes compatible with normal airport operations including landing and takeoff of aircraft.'" *Id.* at 2492. As such, plaintiffs contended that Dekalb County had breached the FAA contracts by owning and maintaining the garbage dump adjacent to the airport from whence the birds had allegedly come.

The issue presented to the United State Supreme Court was whether federal common law applied or state law with respect to the plaintiffs' standing to sue on those contracts. The Court found that the rationale of *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S. Ct. (1943), that federal common law may govern in diversity cases where a uniform national rule is necessary to further the Federal Government's interest, was inapplicable because "the litigation raised no question regarding the liability of the United States or the responsibilities of the United States under the contracts." *Miree*, 433 U.S. 28-29. "The relevant inquiry is a narrow one: whether petitioners as third-party beneficiaries of the contracts have standing to sue respondent. While federal common law may govern even in diversity cases, . . . the issue presented here would promote no federal interests even approaching the magnitude of those found in Clearfield Trust.. . " *Id.*

Likewise, in the suit at bar, there is no rationale to support a claim that federal common law should apply. Furthermore, plaintiffs do not present a single case to demonstrate that under federal common law, they would have a right to sue the Port as a third-party beneficiary on the Acts of Assurances. Indeed, federal common law may be determined by reference to analogous state law. *Manning v. Hayes*, 212 F.3d 866, 874 (5th Cir. 2000). As such, the Court finds that the Port's motion to dismiss must be granted. Simply put, plaintiffs cannot state a cause of action against the Port based on these Acts of Assurances.

Moreover, the broad allegations of liability based on *"garde* over the Industrial Canal and the failure to provide and maintain the bridges and approaches" cannot survive; there simply has been no specific allegations or explanation provided to the Court as to the harm caused by such an alleged failure to maintain any bridge.  Accordingly,

**IT IS ORDERED** that the Motion of Defendant Board of Commissioners of the Port of New Orleans to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon which Relief Can Be Granted (Doc. 2935) is **GRANTED**.

New Orleans, Louisiana, this   7th   of November, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**