UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL

BREACHES CONSOLIDATED

LITIGATION

CIVIL ACTION NO.: 05-4182

PERTAINS TO: 06-8637 (BSD CONSTRUCTION)



Deposition of Brett S. Davis, 816 North Highway 190, Suite B, Covington, Louisiana 70433, taken in the Law Offices of Lamar M. Richardson, 110 Moores Road, Mandeville, Louisiana 70471, on Monday, October 8, 2007.

ORIGINAL

EXHIBIT 4

Two Lakeway
3850 N. Causeway Blvd.
Suite 108
Metairie, Louisiana 70002

**Williams and Jankowski, L.L.C.**
Certified Court Reporters

)832-0937
) 834-6629

```
 1   within BSD Construction, you would rely upon
 2   Colleen to handle that?
 3        A.   Correct, with Stone.
 4        Q.   I understand that.  Did you ever
 5   have any discussions with Stone yourself over
 6   the years about adding coverages, how much
 7   does this cost, anything like that?
 8        A.   You know, with Barry Orillion, he
 9   knows that I am overinsured and I like to be
10   fully insured across the board.  So do I
11   remember any distinct conversation?  No.  But
12   Barry handles a lot of coverages for me.  He
13   knows that I'm overinsured across the board.
14   I want the maximum insurance possible
15   whenever possible.
16        Q.   Have you had that conversation with
17   Barry?
18        A.   Several occasions over the years.
19   I have been doing business with Barry for
20   several years, yes, but I don't remember a
21   specific conversation, like I'm saying.
22        Q.   You never had -- you recall a
23   specific conversation where you said, Barry,
24   I want the absolute maximum coverage I can
25   get on anything possible?
```

1    A.    Absolutely.  I've had that
2    conversation with him several times.
3        Q.    Can you give me a reference time as
4    to approximately when that would have been?
5        A.    No.  When we were talking about
6    limits and some things came up for renewal, I
7    just said, Give me the maximum I can get on
8    this renewal or that renewal.  If you check
9    my records, you can see that I get the
10   maximum coverages whenever possible.
11       Q.    If you had to estimate how many
12   years Barry Orillion has been handling your
13   insurance, what would you think that estimate
14   would be?
15       A.    Probably in the five-year range,
16   five to seven years, I would think.
17       Q.    Who was your agent before Barry?
18       A.    There was no agent before Barry.
19   Barry helped me start my business, get my
20   first general liability policy, pursuant to
21   his relationship with my father, who is now
22   passed away.
23       Q.    Your father was in the construction
24   business?
25       A.    No.  Just my father knew Barry and

1  policies from Zurich?
2      A.   There again, you'd have to direct
3  that question to Colleen.  She runs the
4  office.  I don't see day-to-day
5  correspondence.
6      Q.   If Colleen had any requests about a
7  policy or about any communications she may
8  have received about insurance coverage, would
9  she contact you about those questions she
10 would have?
11     A.   No.  She would contact either Barry
12 Orillion or Beth Laborde through Stone.
13     Q.   Do you recall ever having any
14 conversations with Colleen about BSD's
15 insurance needs?
16     A.   I talked about BSD's insurance
17 needs on a yearly basis when my renewals come
18 up, every year for my general liability, my
19 workman's comp.  Do I have conversations
20 pursuant to builders' risk policies?  No.
21     Q.   At some point in time, did you do
22 some work on a Tanager building,
23 T-a-n-a-g-e-r?
24     A.   The address doesn't ring a bell,
25 but it may be a home that we built.

```
 1   essentially was your office manager and that
 2   she handled the day-to-day business needs for
 3   BSD.  Is that the type of thing that Colleen
 4   would do or would have authority to do on
 5   behalf of BSD?
 6        A.   Yes.
 7        Q.   Did you ever specifically request
 8   flood insurance for any construction that BSD
 9   was working on?
10        A.   We requested full coverage in its
11   entirety.  In my mind, that covers flood.
12   That's why we're here.
13        Q.   Did you ever specifically request
14   flood insurance?
15   MR. RICHARDSON:
16             He just answered that question.
17   THE WITNESS:
18             I requested full coverage, which
19        in my mind, constituted flood in
20        addition to whatever other coverages
21        were available.
22   EXAMINATION BY MR. ECKERT:
23        Q.   Did you ever review any of the
24   policies, assuming they were delivered to
25   you, to find out or verify that that's what
```

1   the policies were providing to you?
2       MR. RICHARDSON:
3               Object to the form, but you can
4       answer the question.
5       THE WITNESS:
6               No.
7   EXAMINATION BY MR. ECKERT:
8       Q.   Have you worked for any other
9   construction companies besides BSD
10  Construction, Inc.?
11      A.   I worked for Stallings Construction
12  many, many years ago.  I worked for Joe
13  Chehardy Construction many years ago.  I
14  worked for -- there was a host of other jobs
15  throughout the years, none of which I can
16  recall offhand.
17      Q.   Were you ever -- did you ever have
18  a management role with any of these other
19  companies to get involved in insurance?
20      A.   No.
21      Q.   Do you know if any other
22  construction companies similar to BSD that
23  would build new homes ever requested -- ever
24  requested flood insurance before Hurricane
25  Katrina?

1    Q.  I'm going to show you what purports
2    to be a copy of Zurich policy BR50971770.
3    This is the policy that we looked at earlier,
4    Brett, and I'll show you on -- the way I have
5    it set up in my file is that down at the
6    left-hand corner it says 47681REV.9-93.  Do
7    you see where I'm reading?
8    A.  I do.
9    Q.  And up here under coverage forms it
10   references B, exclusions.  The fifth one down
11   it states -- there is a water exclusion; is
12   that correct?
13   MR. RICHARDSON:
14        Where it says "water if
15        applicable"?
16   EXAMINATION BY MR. ECKERT:
17   Q.  Water if applicable, correct.
18   A.  That's what it says.
19   Q.  Let me show you what's on -- down
20   in the left-hand corner reference
21   40471REV.10-96, it says page 6 of 15, and
22   small e, it's entitled "water"; is that
23   correct?
24   A.  That's what it says.
25   Q.  And then No. 1 says "flood, surface

1  water, waves, tides, tidal waves, overflow of
2  any body of water or their spray, all weather
3  driven by wind or not." Is that what page 6
4  of 15 says at that point?
5        A.    That's what it says.
6        Q.    Do you recall receiving
7  correspondence from Zurich denying the claim
8  and asserting some coverage provisions?
9        A.    I don't recall. I'm sure,
10 obviously, if they're not paying the claim,
11 they sent me something saying they weren't
12 going to pay it. But did I see it? I don't
13 recall.
14       MR. MORAGAS:
15             I'll object to that to the extent
16       we didn't pay that claim.
17             (Discussion off the record)
18 EXAMINATION BY MR. ECKERT:
19       Q.    Let me show you a document that I'm
20 going to mark as BSD No. 8. It's a
21 three-page document. If you could, take a
22 look at that, Brett. First, just check the
23 date. Make sure I have the date right,
24 December 28th, 2005, is that correct, up at
25 the top?