UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182<br><br>SECTION "K" MAG "2" |
| PERTAINS TO: ROAD HOME<br>*State of Louisiana, C.A. No. 07-5528* | JUDGE DUVAL<br>MAGISTRATE JUDGE WILKINSON |

*************************************************************************

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND

The State of Louisiana, individually and on behalf of the State of Louisiana, Division of Administration, Office of Community Development (the "State"), through the Honorable Charles C. Foti, Jr., the Attorney General for the State of Louisiana, and through the undersigned private counsel duly authorized to act for and on behalf of the State, submits the following Reply Memorandum to the Oppositions filed by the Allstate Group,[1] the State Farm Group,[2] and Electric

---

[1] The Allstate Group is Allstate Insurance Company, Allstate Indemnity Company, Encompass Insurance Company, Encompass Insurance Company of America, and Encompass Property and Casualty Company.

[2] The State Farm Group is State Farm Fire and Casualty Company, and State Farm General Insurance Company.

1

Insurance Company ("EIC") (collectively referred to as the "Insurers") in response to the State's Motion to Remand.[3]

The Oppositions filed by the Allstate Group, State Farm Group, and EIC total approximately eighty-five pages. In **none** of these pages is there a single cite to a case that authorized the removal of a state court action brought by state attorney general that involved state law claims and defenses only. The State submits that allowing such a removal would upset the delicate balance of authority between state and national sovereigns, a result not contemplated by the Class Action Fairness Act ("CAFA") and incompatible with *Seminole Tribe of Florida v. Florida*[4] and *Alden v. Maine*.[5]

## I. Pursuant to the "Local Controversy" Exception to CAFA, This Court Must Decline Jurisdiction.

28 U.S.C. § 1332(d)(4) establishes the "local controversy" exception to CAFA. Under this exception, a court must decline jurisdiction if four factors are met. The Insurers never dispute that one of these factors — that the principal injuries resulting from the conduct of each defendant were incurred in Louisiana — has been met by the State.[6] The jurisprudence and legislative history establish that the State also satisfies the remaining three factors.

---

[3]The State filed two Motions to Remand. The instant Reply Memorandum supports the remand motion regarding the Class Action Fairness Act. The State is also filing a separate Reply Memorandum in support of the remand motion regarding the Multiparty Multiforum Trial Jurisdiction Act.

[4]517 U.S. 44, 116 S.Ct. 1114 (1996).

[5]527 U.S. 706, 119 S.Ct. 2240 (1999).

[6]*See* 28 U.S.C. § 28 U.S.C. 1332(d)(4)(A)(i)(III).

2

A. **Greater Than Two Thirds of the Members of All Proposed Plaintiff Classes are Citizens of Louisiana.**

The Allstate Group and the State Farm Group contend that the State has failed to meet its burden of proving that at least two-thirds of the proposed plaintiffs are citizens of Louisiana, as required by 28 U.S.C. § 1332(d)(4)(A)(i)(I).[7] This argument is shameless, considering that the Insurers' own dilatory claims' practices have kept many displaced residents from returning to their homes. Fortunately, the law is not as inequitable as the Insurers would prefer it to be.

In *Caruso v. Allstate Ins. Co.*, six class representatives filed suit on behalf of "all other similarly situated class members, namely <u>Louisiana homeowners</u> who suffered a total loss of their property . . . as a result of a covered loss from the winds of Hurricane Katrina."[8] Recognizing that "common sense should prevail," the court ruled that the allegations alone sufficed to establish that at least two-thirds of the plaintiffs were Louisiana residents.

> Given that no one disputes that Hurricane Katrina wreaked havoc on immovable property in Louisiana, the plaintiffs' assertion that they represent a class of individuals covered by homeowners' policy for homes that are located in Louisiana *creates a reliable presumption* that this is a class of Louisiana residents. **Indeed, owning a home is an indicum of domicile.**[9]

Judge Vance's "common sense" reasoning in *Caruso* applies with equal force to the State's claims.

---

[7] *See* Allstate Group's Response in Opposition to Plaintiff's Motion to Remand ("Allstate Opposition"), pp. 14-16, Doc. No. 8899-2 ; State Farm Group's Memorandum in Opposition to Plaintiff's Motion to Remand ("State Farm Opposition"), pp. 15-18, Doc. No. 8901-3.

[8] 469 F.Supp. 2d 364, 365 (E.D. La. 2007) (emphasis added).

[9] *Id.* at 367 (emphasis added).

3

The governor and legislature developed the Road Home Program explicitly "to help Louisiana residents get back into their homes and apartments as quickly and fairly as possible."[10] The entire purpose of the program is to help Louisiana homeowners. Because owning a home is an "indicum of domicile," it is outrageous for the Insurers to claim, without a shred of proof, that more than one third of the homeowners who applied for Road Home benefits intend to change their domicile.[11]

Furthermore, according to an affidavit from Tom Brennan of the Office of Community Development, of 65,746 Road Home closings, 63,796 applicants chose to rebuild their homes, 1,685 applicants chose to sell their home to the State and relocate in Louisiana, and 265 applicants chose to sell their home to the State and leave Louisiana.[12] This affidavit conclusively refutes the Insurers' shameless suggestion that more than one-third of the Road Home applicants intend to leave Louisiana.

## B. Louisiana Citizens is a "Significant" Defendant From Whom "Significant" Relief is Sought.

To establish the "local controversy" exception to CAFA, the State must prove that at least one defendant "from whom significant relief is sought by members of the plaintiff class" is a citizen of Louisiana.[13] In *Caruso v. Allstate Insurance Co.*, the court found that Louisiana Citizens Property Insurance Corporation ("Louisiana Citizens"), which is a defendant in this case, was a "significant"

---

[10] *See* http://www.road2la.org/news_releases/pilot-opening-071206.htm (emphasis added).

[11] *See Preston v. Tenant Healthsystem Memorial Med. Center*, 485 F.3d 804, 813 (5th Cir. 2007) ("*Preston II*") (recognizing that the presumption in favor of a party continuing a domicile . . . requires a party seeking to show a change of domicile to come forward with evidence to that effect").

[12] *See* Affidavit of Tom Brennan, attached as Exhibit "1."

[13] *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II).

4

defendant pursuant to the "local controversy" exception to CAFA.[14] In the Opposition, the Insurers' attempted to distinguish and discount *Caruso*. These attempts fail.

The Insurers argue that *Caruso* is distinguishable from this case because the market-share ratio between Louisiana insurers and non-Louisiana insurers is different in the two cases. The State Farm Group noted that, excepting Louisiana Citizens, the other five defendants in *Caruso* held an approximately 43% share of the total Louisiana insurance market.[15] According to the State Farm Group, in this matter, aside from Louisiana Citizens, there are 213 other defendants that hold approximately 92% of the market.[16] As summarized by the Allstate Group, "in *Caruso*, the market-share ratio of Louisiana entities to non-Louisiana entities was roughly 1:4. Here, *in vast contrast*, the market-share ratio of the alleged Louisiana entities to non-entities is, at most, 1:10."[17] The State submits that this contrast is not so vast.

Accepting the Allstate Group's numbers as true, the Louisiana insurers in *Caruso* owned 25% of the market share held, in total, by all the *Caruso* defendants. In this matter, using the Allstate Group's own numbers, the Louisiana entities own 10% of the market share held, in total, by all the *Road Home* defendants. Just as Judge Vance found that there was no "principled basis to justify the notion that the difference between a significant and insignificant defendant falls somewhere between 7.5 and 14 percent," there is no principled basis to conclude that an insurer with

---

[14] 469 F.Supp.2d at 368-70.

[15] *See* State Farm Opposition, p. 13.

[16] *See id.*

[17] *See* Allstate Opposition, p. 9 (emphasis added).

5

25% market share is significant, but an insurer with 10% market share is not.[18] Thus, the contrast between the number of insurer defendants in *Caruso* and this case is a distinction without a difference.

Aside from arguing that *Caruso* is distinguishable, the Insurers claim that it was wrongly decided. The Insurers contend that *Caruso* erroneously focused on whether Louisiana Citizens was a "significant defendant" instead of concentrating on whether plaintiffs sought "significant relief" from Louisiana Citizens.[19] Again, this a distinction without a difference, as no matter how the issue is framed, a court still must determine what is "significant."

In *Gauntt v. Louisiana Citizens Property Ins. Co.*, which was favorably cited by the Insurers, the court concluded that plaintiffs did not seek "significant relief" from a Louisiana insurer with an approximately 7% market share because the relief "sought from [the Louisiana insurer] is relatively small as compared to the relief sought from out-of-state defendants."[20] In that same case, the court found that Allstate had an approximately 20% share of the homeowners' insurance market. Presuming that the court considered Allstate to be a defendant from whom "significant relief" was sought, it held that a company with a 20% market share was significant, yet a company with a 7% a market share was insignificant. As the court reasoned in *Caruso*, there is simply no principled basis for making such an arbitrary distinction.

As further support for their proffered interpretation of "significant relief," the Insurers

---

[18]*Caruso*, 469 F.Supp.2d at 369 (emphasis added).

[19]*See* Allstate Opposition, p. 10; State Farm Opposition, pp. 12-13, n. 5.

[20]No. 06-7817 (E.D. La. Jan. 16, 2007), 2007 WL 128801, * 2

repeatedly cite to the Senate Report that accompanied the passage of CAFA.[21] As noted by Judge Vance, though, at least two appellate courts have questioned the propriety of relying on the Senate Report, which was issued ten days after CAFA was signed into a law, as an interpretive guide.[22]

The reasoning in *Caruso* is simple, straightforward, and persuasive, and thus demonstrably preferable to the Senate Report or the arbitrary reasoning in *Gauntt*. In *Caruso*, the court concluded that an *insignificant* defendant would be a "trivial" defendant or a defendant "having little or no importance."[23] A *significant* defendant is, therefore, not a trivial defendant. None of the Insurers have suggested, much less established, that any insurer in Louisiana, except for the Allstate Group and State Farm Group, issued more homeowners' policies than Louisiana Citizens. The third most prominent homeowners' insurer in Louisiana is, under no scenario, trivial. Accordingly, the State submits that Louisiana Citizens is a defendant from whom "significant relief" is sought.

### C. The State's Lawsuit Is Fundamentally Different From the Lawsuits Filed by Private Parties.

In the Opposition, the State Farm Group cited several class action lawsuits that purportedly contain the "same or similar factual allegations" as the State's lawsuit in this matter.[24] According to the Insurers, these lawsuits render the State incapable of satisfying 28 U.S.C. § 1332(d)(4)(A)(ii), thus making the "local controversy" exception to CAFA inapplicable.[25] The State submits, however,

---

[21]*See* Allstate Opposition, p. 11; State Farm Opposition, pp. 9, 12.

[22]*Caruso*, 469 F.Supp.2d at 370, *citing Morgan v. Gay*, 471 F.3d 469 (3d Cir. 2006) and *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

[23]*Caruso*, 469 F.Supp.2d at 369.

[24]*See* State Farm Opposition, p. 7.

[25]*See id.*, pp. 7-9.

7

that the instant lawsuit is fundamentally different from any other suit because it is a *parens patriae* action. As recognized by the statute's proponents, CAFA does "not affect" such lawsuits.[26]

### (1) The State's Lawsuit is a *Parens Patriae* Action

The Allstate Group contends that the State's lawsuit cannot be a *parens patriae* action because the State has asserted a class action on behalf of specific policyholders, not the general public.[27] In so arguing, the Allstate Group neglects jurisprudence that a state attorney general can file a *parens patriae* action if necessary to "protect quasi-sovereign interests such as the general economy of the state."[28] In *Bordens*, for example, the attorney general filed a *parens partiae* antitrust action against a company that distributed milk to schools.[29] Although this action only benefitted the schools the purchased milk from Bordens, Inc., not the general public, it was still considered a *parens patriae* action.

As set forth in the Petition, the State is "obligated to protect the health, safety, and welfare of its citizens."[30] Pursuant to this obligation, the State has moved for an injunction directing the Insurance Company Defendants to honor the promises made pursuant to broad all risk policies.[31] Although limited to policyholders, the State's action, if successful, will have a substantial impact on the economic recovery of south Louisiana, which will, in turn, benefit the economy of the entire

---

[26] *See* 151 Congr. Rec. S1157-02, S1162 (2005), 2005 WL 309648.

[27] *See* Allstate Opposition, p. 19.

[28] *State ex rel Ieyoub v. Bordens, Inc.*, 95-2655 (La.App. 4 Cir. 11/27/1996), 684 So. 2d 1024, 1026.

[29] *See id.*

[30] *See* Amended Petition, ¶ 16, attached as Exhibit "A" to Allstate's Notice of Removal.

[31] *See id.* at Prayer.

state. Plainly, then, the instant lawsuit meets the category of a *parens patriae* action.

### (2)  The Debate Over CAFA Supports the State's Position.

The Insurers argue that no matter how the State's lawsuit is classified, it is a suit brought by a state attorney general, and because Congress specifically rejected an amendment that would have exempted attorney general suits from CAFA, such suits are subject to CAFA.[32] The debate over that amendment, though, supports the State's position that CAFA is inapplicable.

As cited in the Oppositions, Senator Hatch expressed concern that, if the amendment exempting attorney general actions were passed, "it will not take long for plaintiffs' lawyers to figure out that all they need to do to avoid the impact of [CAFA] is to persuade a State attorney general to simply lend the name of his or her office to a private class action."[33] The instant lawsuit is, however, the antithesis of the action contemplated by Senator Hatch.

The Attorney General of Louisiana is not merely "lend[ing] his name to a lawsuit with no connection to a concrete state interest. Rather, the attorney general seeks to recoup **millions** of dollars paid *out of the state's treasury* for hurricane damage that should have been covered by the Insurance Company Defendants. The State, through its attorney general, in its capacity as *parens patriae*, and to protect itself and its citizens, has moved to enforce the obligations of the Insurance Company Defendants to pay for hurricane damage.

In debating the attorney general amendment, Senator Grassley expressly declared that CAFA "will not affect" the authority of state attorneys general to "bring enforcement action[s] to protect

---

[32] *See* Allstate Opposition, p. 20; State Farm Opposition, p. 20.

[33] *See* Allstate Opposition, pp. 20-21; State Farm Opposition, p. 21.

their citizens."[34] Now that an attorney general has used this authority to sue the Insurers, the Insurance Company Defendants claim that CAFA's scope goes beyond what was imagined by its most ardent supporters. As established by the legislative history, Congress treated lawsuits brought by a state on behalf of itself and/or its citizens differently from lawsuits filed by private parties that seek only the imprimatur of a state attorney general. The State requests that this Court honor this difference by applying the "local controversy" exception to CAFA.

### (3)   The State's Lawsuit Presents Purely Local Issue

Contrary to the Insurers' suggestions, the State has not argued that there should be a "McCarran-Ferguson" exception to CAFA, nor has it contended that 28 U.S.C. § 1332(d)(3), *i.e.*, the "discretionary" exception, applies to the State's claims. The State has, instead, referred to McCarren Ferguson and the factors set forth in Section 1332(d)(3) to highlight the inherently local nature of the State's claims. Indeed, the fact that most, if not all, of the discretionary factors described in Section 1332(d)(3) favor a remand of the State's claims is simply more evidence that Congress never intended CAFA to apply to a purely state law action filed in state court by a state attorney general.

The Allstate Group argues that the State's lawsuit is interstate in nature because the Road Home funds at issue are "*not* Louisiana funds, they are federal funds."[35] But this argument misses the point. The appropriation by the federal government to Louisiana is complete. The State is administering the program and distributing the funds from its own treasury. To properly compensate all Road Home applicants for uninsured losses, the State has been forced to bring the Insurance

---

[34]*See* 151 Congr. Rec. S1157-02, S1162 (2005), 2005 WL 309648.

[35]*See* Allstate's Opposition, p. 22 (emphasis in original).

Company Defendants to court to force them to pay for covered losses. Contrary to Allstate's suggestion, the funds "at issue" are *not* in the federal treasury; they are in the *State's treasury*.[36] The instant lawsuit involves state law claims by a sovereign state and its citizens against a locally-regulated industry. The predominantly local nature of the suit takes it outside the scope of CAFA. Accordingly, the State requests that this Court remand the above-captioned suit to Orleans Parish.

## II. Sovereign Immunity Prevents the Insurance Company Defendants From Removing This Suit.

The State's Motion to Remand presents an issue of first impression — can an action brought in state court by a state attorney general that concerns state law claims *and* defenses only be removed to federal court? None of the insurers cited a case that addressed this precise issue. In its Motion to Remand, the State argued that, to avoid delving into the thicket of sovereign immunity jurisprudence, this Court should find CAFA to be inapplicable to the State's lawsuit.[37] If this Court is nevertheless constrained to find that the State's lawsuit is removable under CAFA, then the State requests that this Court find that CAFA unconstitutionally infringes on its residual sovereignty by forcing it to litigate a purely local issue pursuant to the dictates of federal courts.

States have only been forced to litigate in federal court under one of three circumstances: (1) a state sues under federal law, thereby availing itself of the legal rights created by a federal sovereign, (2) a state sues a federal official or someone acting as a federal officer, thereby placing the state's claim of sovereignty in conflict with the sovereign interests of the federal government,

---

[36]Furthermore, the fact that federal funds may be at issue is insufficient to confer federal jurisdiction. *See Gingerich v. White Pigeon Community Schools*, 736 F.Supp. 147, 150 (W.D. Mich. 1990).

[37]*See Vermont Agency of Nat. Resources v. United States*, 529 U.S. 765, 787, 120 S.Ct. 1858, 1871 (2000) (finding that "statutes should be construed so as to avoid difficult constitutional questions").

11

and (3) a state asserts a state law claim so imbued with federal law as to constitute a claim that is, in effect, a federal law claim. No state has ever been compelled to appear against its wishes in federal court when it asserts a state law claim against a party doing business with the state — not since *Chisolm v. Georgia*[38], the case that so offended the basic principles of federalism as to prompt the passage of the Eleventh Amendment.

As noted in the remand motion, actions that only raise state law issues are inherently different from actions based on the and laws of the United States. If states are **not subject to the "general authority . . . within their respective spheres"**[39] and "retain[] full sovereignty over state-created causes of action,"[40] then courts should tread carefully before removing a state-created action that belongs in a state's "sphere" to the courts of a different sovereign. Courts have, indeed, tread so carefully that none of the Insurers could find a single case where a pure state-law action filed in state court by a state attorney general was removed to federal court.[41]

In the Oppositions, the Insurers highlight three cases as proof that a state law action filed by a state in state court can be removed. These cases are, however, either inapplicable are flawed.[42]

---

[38] 2 US 419, 1 L.Ed. 440, 1793.

[39] *Alden*, 527 U.S. at 714, 119 S.Ct. 2240, 2247 (emphasis added).

[40] *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 277, 105 S.Ct. 3142, 3165 (1985) (Brennan, J., dissenting).

[41] The State Farm Group suggests that no such case can be found because the minimal diversity standard in 28 U.S.C. § 1332 was only enacted in 2005. *See* State Farm Opposition, p. 29, n. 16. For several decades, however, minimal diversity has been sufficient, under certain scenarios, for federal courts to exercise jurisdiction. *See State Farm Fire and Cas. Co. v. Tashire*, 386 U.S. 523, 530-31, 87 S.Ct. 1199, 1204 (1967) (finding that minimal diversity was sufficient under the federal interpleader statute).

[42] Additionally, none of the cases were filed by a state attorney general.

EIC's Opposition focused on *In re Methyl Tertiary Butyl Ether Products Liability Litigation* ("*In re MTBE*"),[43] in which states asserted state law theories of liability against the manufacturers of MTBE.[44] The defendants removed the action pursuant to, *inter alia*, the "federal officer statute," which allows removal if a person was acting under the direction of a federal officer.[45] Even though the United States Second Circuit Court of Appeals rejected the state's claim that sovereign immunity barred removal of a state-law action, the *defense* to the state's claims involved a federal officer. The action did not, therefore, belong entirely within the "sphere" of a sovereign state, thus lessening the need for sovereign immunity. Here, the Insurers have not indicated that there is *any* federal defense to the State's claims.

In their Oppositions, the Allstate Group and State Farm Group both cited two district court cases from Louisiana, *Terrebonne Parish School Board v. Mobil Oil Corp.*[46] and *School Board of the Parish of St. Charles v. Quala Systems, Inc.*[47] Considering that the Insurers criticized the courts' findings in *Moore v. Abbott Laboratories* and *State of California v. Steelcase* as dicta, it is ironic that they cited *Terrebonne*, where the plaintiff contesting removal, a local school board, had no right to even claim sovereign immunity, as it was a citizen separate from the state itself.[48] Despite its *dicta* conclusion that the Eleventh Amendment is inapplicable when the state is a plaintiff, the State will

---

[43] 488 F.3d 112 (2007).

[44] *See* EIC's Memorandum Opposing Motion to Remand, p. 21, Doc. No. 8895.

[45] *In re MTBE*, 488 F.3d at 124.

[46] No. 89-1983 (E.D. La. Nov. 9, 1989), 1989 WL 140217.

[47] 159 F.Supp.3d 295 (E.D. La. 2001).

[48] *Terrebonne*, 1989 WL 140217 at *1.

13

address *Terrebonne*.

In *Terrebonne*, the court reasoned that the Eleventh Amendment was enacted to "protect states against federal judgments requiring *payment of money* which would interfere with states' fiscal autonomy and political sovereignty."[49] Thirteen years after *Terrebonne* was issued, though, the Supreme Court held that the "preeminent purpose of sovereign immunity" is not to protect the state treasury, but rather to "**accord States the dignity that is consistent with their status as sovereign entities**."[50] *Terrebonne* ignored the concern for the dignity of a "residuary sovereign."

An example of this concern for dignity can be found in *Thomas v. FAG Bearings Corp.*[51] In *Thomas,* the Missouri Department of Natural Resources ("MDNR") had a right to sue the defendant for remediation costs, but had not yet filed suit when the defendant involuntarily joined the MDNR to a suit filed by private citizens. The MDNR claimed that sovereign immunity barred the involuntary joinder and, in reasoning equally applicable to this case, the United States Eighth Circuit Court of Appeals agreed:

> Involuntary joinder will compel MDNR to act by forcing to prosecute [the defendant] at a time and place dictated by the federal courts. **This disrespect for state autonomy in the decision-making process is precisely what the Eleventh Amendment was intended to avoid**.[52]

*Thomas* perfectly describes the situation faced by the State. The State, through its attorney general, wishes to file a purely state law action, involving issues of great importance to the State, in

---

[49]*Id.*

[50]*Federal Maritime Comm'n v. So. Caroline State Ports Authority*, 535 U.S. 743, 753, 122 S.Ct. 1864, 1874 (2002) (emphasis added).

[51]50 F.3d 502 (8th Cir. 1995).

[52]*Id.* at 505-06 (emphasis added).

14

a state court. The involuntary removal of this action to federal court disrespects the State's decision to litigate its claims its own courts. The Insurers may attempt to distinguish *Thomas* by claiming that the joinder in *Thomas* was involuntary whereas the State voluntarily waived any sovereign immunity claim by filing suit in state court. The Supreme Court has, however, repeatedly declared <u>that a consent to be sued in state court does **not** effect a consent to be brought before a federal tribunal</u>.[53] Absent the unpersuasive waiver argument, there is no distinction between *Thomas* and the instant matter.

In *Quala Systems*, which was also cited by the Allstate Group and State Farm Group, the court's sole support for its conclusion that there is no sovereign immunity when a state is a plaintiff was *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*[54] As shown in the Motion to Remand, the Fifth Circuit's statement that the "eleventh amendment is inapplicable where a state is a plaintiff" is pure dicta, as it was located in a footnote to an opinion that considered only whether the owner of property was the alter ego of the state or an independent agency. If the dicta statement in *Huber*, like the ruling in *Terrebonne*, was based on the presumption that Congress designed the Eleventh Amendment solely to protect states from money judgments, then it was in error, and any case that relied on *Huber*, like *Quala Systems*, was likewise in error.[55]

In summary, in this issue of first impression, the State requests that this Court "accord the

---

[53]*See Smith v. Reeves*, 178 U.S. 436, 441, 20 S.Ct. 919, 921(1900); *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.*, 527 U.S. 666, 676, 119 S.Ct. 2219, 2226 (1999).

[54]*Quala Systems*, 159 F.Supp. 2d at 297, *citing Huber, Hunt & Nichols*, 625 F.2d 22 (5th Cir. 1980).

[55]Furthermore, plaintiff in *Quala Systems* was a local school board and, as found in *Terrebonne*, a school board is a citizen separate from the state. Thus, plaintiff had no standing to raise sovereign immunity as an issue.

15

States the respect owed them . . . as residuary sovereigns and joint participants in the governance of the Nation" by remanding the State's lawsuit back to a court within its own "sphere" in Orleans Parish.

### III. Conclusion

For the foregoing reasons, the State requests that this Court remand this matter to civil district court in Orleans Parish.

          Respectfully submitted,

          THE STATE OF LOUISIANA
          The Honorable Charles C. Foti, Jr. (No. 5784)
          ATTORNEY GENERAL,
          STATE OF LOUISIANA

          /s/ Isabel Wingerter
          Isabel Wingerter (No. 20428)
          Assistant Attorney General
          Director of Public Protection
          1885 North Third Street, 6th Floor
          Baton Rouge, LA 70802
          Ph.: 225-326-6040
          Fax: 225-326-6097

          AND

          **ROAD HOME LIAISON AND LEAD COUNSEL**

          /s/ Calvin C. Fayard, Jr.
          Calvin C. Fayard, Jr. (No. 5486)
          FAYARD & HONEYCUTT, A.P.C.
          519 Florida Avenue, S.W.
          Denham Springs, LA 70726
          Ph.: 225-664-4193
          Fax: 225-664-6925
          Email: calvinfayard@fayardlaw.com

          AND

**ROAD HOME CO-LEAD COUNSEL**

Paul G. Aucoin (No. 2604)
PAUL G. AUCOIN, ATTORNEY AT LAW
135 Goodwill Plantation
Vacherie, LA 70090-5240
Ph.: 225-265-7906
Fax: 225-265-7906
Email: aucoinp@bellsouth.net

Joseph J. McKernan (No. 10027)
McKERNAN LAW FIRM
8710 Jefferson Highway
Baton Rouge, LA 70809
Ph.: 225-926-1234
Fax: 225-926-1202
Email: jemckernam@mckernanlawfirm.com

Drew A. Ranier (No. 8320)
RANIER, GAYLE & ELLIOTT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
Ph.: 337-494-7171
Fax: 337-494-7219
Email: drainer@rgelaw.com

Frank C. Dudenhefer, Jr. (No. 5117)
THE DUDENHEFER LAW FIRM,
A Limited Liability Company
601 Poydras Street, Suite 2655
New Orleans, LA 70130
Ph.: 504-525-2553
Fax: 504-523-2508
Email: FCDLaw@aol.com

James P. Roy (No. 11511)
DOMENGEAUX WRIGHT
ROY & EDWARDS L.L.C.
556 Jefferson Street, Suite 500
Lafayette, LA 70502-3668
Ph.: 337-233-3033
Fax: 337-232-8213
Email: jimr@wrightroy.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 9, 2007, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record in the captioned matter.

/s/   Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr.
