UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES * | | |
| CONSOLIDATED LITIGATION * | CIVIL ACTION | |
| * | | |
| * | NO. 05-4182 | |
| PERTAINS TO:  BARGE * | and consolidated cases | |
| * | | |
| * | SECTION "K"  (2) | |
| *Boutte v. Lafarge*        05-5531 * | | |
| *Mumford v. Ingram*     05-5724 * | | |
| *Lagarde v. Lafarge*     06-5342 * | JUDGE | |
| *Perry v. Ingram*           06-6299 * | STANWOOD R. DUVAL, JR. | |
| *Benoit v. Lafarge*        06-7516 * | | |
| *Parfait Family v. USA*  07-3500 * | MAG. | |
| *Lafarge v. USA*            07-5178 * | JOSEPH C. WILKINSON, JR. | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, FOR DISMISSAL, STAY, OR TRANSFER, OF CIVIL ACTION NUMBER 06-3123 (CSH),  SOUTHERN DISTRICT OF NEW YORK**

I.

**THE PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT AGAINST THE AMERICAN CLUB, AS LAFARGE'S P&I COVERAGE WITH THE AMERICAN CLUB UNAMBIGUOUSLY COVERS THE LIABILITY ALLEGED BY THE PLAINTIFFS**

**Preliminary Statement:**

The Barge  Plaintiffs, through its PSLC,  move this Court for partial summary judgment as to insurance coverage against direct action defendant American Steamship Owners' Mutual Protection & Indemnity Association, Inc. (hereinafter "the American Club"), as liability

insurer for defendant Lafarge North America, Inc. (hereinafter "Lafarge"), and to enjoin the American Club from prosecuting a declaratory judgment action against Lafarge in the Southern District of New York, Civil Action number 06-3123 (CSH).  At all relevant times, Lafarge was a member of the American Club, a mutual insurance association that provided indemnity insurance coverage to Lafarge for liability claims, including those for property damage and personal injury as claimed by the Barge plaintiffs in this action.

This case does not encompass Ingram Barge Company (hereinafter "Ingram"), a petitioner in Civil Action No. 05-4419, arising out of the same incident and involving the same Ingram Barge 4727.  However, we are compelled to point out that movers herein do not adopt, or concede to, any of Ingram's contentions in Civil Action 05-4419 to the effect that ING 4727 was placed in the exclusive control of, or bailed to, Lafarge.  Movers reiterate their consistent position that custody and control of, and obligations with respect to, ING 4727 were joint.  Movers do not dispute that Lafarge had *de facto* control over ING 4727 at the time of it's breakaway, and hence, an insurable interest therein, as Ingram simultaneously failed, or refused, to assert control as per their legal and contractual obligations.

The policy in question, covering the policy period February 20, 2005 - February 20, 2006, issued by The American Club to Lafarge is specified in the Certificate of Entry and the Club Rules  attached hereto for reference as Exhibits "A" and "B", respectively.

No issues of material fact exist to preclude partial summary judgment on the issue of whether Lafarge is insured under its P&I coverage with the American Club for the plaintiffs' claims in this case.  The terms of Lafarge's membership in the American Club, and hence the terms and conditions of its liability insurance coverage, are set out in the American Club's Rules

and in Lafarge's Certificate of Entry with the Club.  Under the broad insuring clauses of the Club Rules and the Certificate of Entry, Lafarge is entitled to coverage for all vessels in which it acquires an insurable interest, whether Lafarge was acting as owner, operator, manager, charterer, trustee, receiver or agent.  Here, plaintiffs can show that Lafarge was acting as operator, manager, trustee and/or agent of ING 4727 within the meaning of the applicable coverage provision under Lafarge's membership in the Club.  Lafarge clearly acquired an insurable interest in ING 4727, which the plaintiffs maintain was in Lafarge's care, custody and control at the time of the storm.

## A.  The Insuring Clause of the Club Rules Applies

The Club has contended that Lafarge's potential liability did not implicate the P&I cover because such liability arose out of Lafarge's status as a wharfinger rather than as a vessel owner.  The insuring clause of the Club Rules provides broad coverage, well beyond the liability of just a vessel owner, as set out in Class I, Rule 2: "Risks and Losses Covered":

> "Each Member of the Association shall be indemnified in connection with each vessel entered in the Association for Protection and Indemnity insurance against any loss, damage or expense which the Member shall become liable to pay by reason of the fact that the Member is the owner (or operator, manager, charterer, mortgagee, trustee, receiver or agent, as the case may be) of the insured vessel, subject to the provisions of these Rules and to all limitations stated . ."

This broad clause easily extends to the allegations made by the plaintiffs against Lafarge in this case, which encompass Lafarge's management and operation of the barge while it was in Lafarge's control at the Lafarge terminal.

The Fifth Circuit has held that a broad insuring clause such as that in the American Club Rules requires the P&I insurer to indemnify its assured for any negligence connected to the vessel.  In *Helaire v. Mobil Oil Co.*, 709 F.2d 1031 (5th Cir. 1983), the underlying claim arose

when a worker was injured on board a vessel under charter to Mobil during the loading of machinery from the vessel onto Mobil's oil platform. Among the allegations of negligence was that Mobil improperly allowed loading operations to proceed in dangerous seas. As with the American Club Rules, the applicable P&I cover under which Mobil was a named additional assured covered situations beyond Mobil's acting as the owner or bareboat charterer of the vessel. The Fifth Circuit concluded that the P&I policy covered the claims, as "this kind of boat-unloading decision was traditionally and historically vessel-related." 702 F.2d at 1042. In addition, the court went on to state that deletion from the P&I cover of any requirement that the assured be liable as an owner "was intended to provide coverage for Mobil regardless of the capacity in which Mobil was sued." *Id.*

Similarly, in *Randall v. Chevron U.S.A., Inc.*, 13 F.3d 888 (5th Cir. 1994), the Court of Appeals interpreted the P&I coverage broadly to hold the P&I insurer responsible for any liability arising out of the insured's right to control the movement of the vessel. Unlike the P&I cover at issue in *Helaire*, the P&I coverage sought by Chevron in *Randall* contained the requirement that the assured be acting as the owner of the vessel at the time of the casualty to be covered. Nevertheless, the court rejected the argument that a time charterer could never assume the status of a vessel owner for application of P&I coverage:

> Sea Savage also argues that "by contract and tradition, Chevron could not act as a manager or operator of the vessel," and that "as a matter of common sense it could not commit fault 'as owner' of the vessel." If this were true, then the insurance policy providing coverage for Chevron's liability "as owner" of the vessel could never come into effect. Under this interpretation, no time charterer could ever satisfy the "causal operational relationship" requirement so as to qualify for insurance coverage "as owner" of the vessel. We will not construe an insurance policy in such a way that it provides no coverage whatsoever to the insured.

> The only connection a time charterer typically has with the vessel it hires is the right to direct the vessel's movements. We find persuasive the reasoning of the court below and that of the court in *Garber Bros.* that when the time charterer exercises this right negligently, it has committed negligence "as owner" of the vessel within the meaning of that phrase in a marine insurance policy. This type of negligent conduct, it seems to us, has the requisite "causal operational relationship" to the vessel, even though the time charterer wholly lacks the authority to direct the minutiae of the vessel's day-to-day operations."
> 13 F.3d at 909.

In the present case, the plaintiffs maintain that Lafarge negligently directed the movement of the vessel in advance of Hurricane Katrina, requiring coverage under the P&I cover regardless of whether Lafarge had the authority to direct the day-to-day operations of ING 4727.

The "causal operations relationship" test mentioned in the above quoted language from *Randall v. Chevron* sets out the manner in which to determine coverage when the issue is whether the defendant has been sued in its capacity "as owner" versus some other role. The causal operations relationship test requires that there be some causal operational relation between the vessel and the resulting injury. "[W]here the injury is done through nonvessel operations, the vessel must be more than the inert locale of the injury." *Gaspard v. Offshore Crane & Equipment Co.*, 106 F.3d 1232, 1237 (5th Cir. 1997); *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580, 584 (5th Cir. 1971), *cert. denied*, 406 U.S. 921, 92 S. Ct. 1779 (1972). In this action, the plaintiffs allege that Barge 4727 was itself the instrumentality that caused the break in the Inner Harbor Navigation Canal levee, so clearly the P&I coverage is implicated under the causal operations relationship test.

Where the P&I cover under the American Club Rules did not even limit coverage to situations where Lafarge had the status of an owner, Lafarge nevertheless exercised the control over ING 4727 necessary to implicate its P&I coverage. Among other things, plaintiffs intend to

show that Lafarge was negligent when it arranged for the un-mooring, shifting, and re-mooring of the vessel. Plaintiffs also intend to demonstrate that Lafarge was negligent for failing to have the vessel moved to a different location. These activities implicate not just wharfing activities, but rather responsibility for the movements of the barge itself while in Lafarge's control. Accordingly, the P&I coverage unquestionably applies.

**B.  ING 4727 Was Automatically Covered Under the Certificate of Entry**

The American Club apparently has taken the position that the coverage afforded under the Club Rules does not apply to ING 4727 because the barge was not entered with the Club under the terms of Lafarge's Certificate of Entry. This position is based on an irrationally narrow reading of the terms of the Certificate of Entry. The first paragraph of the Chartered Barges clause of the Certificate of Entry (hereinafter "the automatic acquisition paragraph") provides in pertinent part that::

> "If Lafarge Corporation et al. acquires an insurable interest in any vessel in addition to or in substitution of those set forth herein, through purchase, charter, lease *or otherwise*, such insurance as is afforded hereunder to any similar vessel *shall automatically cover such additional vessel* effective from the date and time the Assured acquires an insurable interest in such additional vessel." (Italic Emphasis added).

Under the Chartered Barges clause, Lafarge automatically becomes covered for any vessel in which it acquires an insurable interest. The only conditions related to this automatic coverage are that the vessel be "in addition to or substitution" for vessels identified in the Certificate, and that Lafarge acquire its interest "through purchase, charter, lease or *otherwise*" (Italic emphasis added). Lafarge's use of ING 4727 was certainly in addition to or substitution of its use of the barges listed in the Certificate, as Lafarge used the barge at issue for the same purpose that it

used the listed barges—to transport its materials from one facility to another.  In addition, Lafarge acquired its insurable interest by way of purchase, charter, lease or otherwise—Ingram supplied ING 4727 to Lafarge under a Transportation Agreement, (Exhibit "C" attached), under which materials were moved from Lafarge's Joppa facility to its New Orleans facility.  The plaintiffs expect to demonstrate at trial that, at least after Ingram failed to reclaim or provide for the protection of, the barge in advance of the storm, Lafarge exercised full control over the barge.

      The American Club has indicated that the term "or otherwise" should be read extremely narrowly, so as to limit its application only to those types of commercial arrangements that are identical to a charter or lease. The Club further argues that the Transportation Agreement is not similar to a charter or lease because the contract states that it is not to be construed as a charter, lease or hiring of any barge and that Ingram is at all times an independent contractor.  The Club's perfunctory reliance on this language in the Transportation Agreement indicates that it seeks to read the term "or otherwise" entirely out of the Certificate of Entry, by limiting its application solely to vessels that Lafarge has chartered or leased.  However, the rules of contract interpretation require that all terms in a contract be given meaning, *Texas Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741-42 (5th Cir. 1998),  so that the omnibus term "or otherwise" cannot be ignored as the American Club is seeking to do.  In addition, "[e]xclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured." *Garcia v. St. Bernard School Board*, 576 So. 2d 975, 976 (La. 1991).

      The Certificate of Entry therefore must necessarily cover situations where Lafarge

acquired an insurable interest other than as a charterer or lessee. Plaintiffs expect to show that, at the time Hurricane Katrina struck, by which time Ingram had communicated that it would not return to retrieve the barge, Lafarge had assumed responsibility for the movement and safety of the barge. Moreover, the Club Rules further confirm coverage, as they provide for coverage in more instances other than just when Lafarge acted as an owner, charterer or lessee.

It is therefore irrelevant that the Transportation Agreement purported to state that it was not to be construed as a charter for any vessel and that Ingram was at all times an independent contractor. The Agreement also purported to place all responsibility for safekeeping of the barges upon Lafarge whenever a barge was at a landing designated by Lafarge for loading or discharge. Such an allocation of risk is consistent with the assumption of responsibilities by a charterer or lessee of a vessel, and in fact is entirely consistent with the custom of the barge trade.

The Transportation Agreement, Exhibit "C" attached, clearly establishes the requisite assumption of responsibility on the part of Lafarge to create an insurable interest. In section 34, it provides:

> " Possession of the Barge during loading/unloading: Carrier (Ingram) shall deliver an empty or loaded barge to a loading/unloading facility designated by Shipper (Lafarge) for loading or unloading. Shipper shall assume the full responsibility for the safety of each barge in its possession. For the purpose of this agreement, "possession" shall begin when Shipper delivers and empty or loaded barge....."

There can be little question that Lafarge had an insurable interest in ING 4727. The definition of an insurable interest in relation to a marine policy is quite broad, and generally renders any pecuniary interest or risk of loss in marine property insurable. *ABB Power T&D Co., Inc. v. Gothaer Versicherungsbank VVAG*, 939 F. Supp. 1568, 1578-79 (S.D. Fla. 1996). The Supreme Court stated almost 130 years ago that an insurable interest under a marine policy is

generally broader than an ownership interest.

> "A right of property in a thing is not always indispensable to an insurable interest. Injury from its loss or benefit from its preservation to accrue to the assured may be sufficient, and a contingent interest thus arising may be made the subject of a policy."

In the law of marine insurance, insurable interests are multiform and very numerous.

> "The agent, factor, bailee, carrier, trustee, consignee, mortgagee, and every other lien-holder, may insure to the extent of his own interest in that to which such interest relates."

*Hooper v. Robinson*, 98 U.S. (8 Otto) 528, 538 (1878). Similarly, Judge McNamara of this Court has stated:

> "....any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property itself."

*Trinidad Publishing Co., Ltd. v. M/V Arawak*, 1995 WL 6287, at *11 (E.D. La. 1995), *quoting Atlas Assur. Co., Ltd. v. Harper Robinson Shipping Co.*, 508 F.2d 1381, 1385 (9th Cir. 1985). Under a liability policy, one who undertakes responsibility for the property of another has an insurable interest in the property in its care as long as it can be held liable for the loss of that property. *See, e.g., Altadis USA, Inc. v. NPR, Inc.*, 344 F. Supp. 2d 1349, 1356 (M.D. Fla. 2004) (holding that a motor truck carrier had an insurable interest in the cargo it was transporting).[1]

The Club's narrow reading of the chartered barges clause downplays this rule of law. It

---

[1] A number of federal court cases dealing with an insurable interest on a liability policy generally involve automobiles. The rule that has emerged, similar to that stated above, is that a party has an insurable interest in a vehicle when it may incur liability as a consequence of the operation or use of the vehicle. *See, e.g., Western Cas. & Surety Co. v. Herman*, 318 F.2d 50, 54 (8th Cir. 1963).

also overlooks several sections of the Club Rules, wherein insurance is provided even when the Member's role is not limited to that of an owner, charterer or lessee, such as Rule 2's very broad insuring clause. The Transportation Agreement shifts sufficient responsibility for barges to Lafarge to be akin to a lease or charter, because the contract is a commercial agreement, like a charter or lease, that grants Lafarge use of barges to transport cargo. Aside from the agreement, the circumstances at Lafarge's terminal as Hurricane Katrina approached imposed obligations upon Lafarge to handle the barge in a manner similar to that of a charterer, lessee and/or bailee. The approaching storm and Ingram's refusal or inability to retrieve the ING 4727 compelled Lafarge to take steps necessary to secure the barge by hiring a tug to shift its location.

The American Club has apparently taken the position in the action pending in the Southern District of New York that coverage under the Certificate of Entry was conditioned on Lafarge's formal declaration of the barge and payment of premium. However, coverage under the automatic acquisition paragraph is not made "subject to" or "conditioned upon" declaration of a barge or payment of premium. Although the Chartered Barges clause in the certificate contains a provision on declaration and premium, the requirement is set out two paragraphs after the automatic acquisition paragraph, and gives no right to the American Club to deny coverage on the basis of a failure to declare and pay extra premium. Moreover, at the time of the loss, Lafarge was not yet required to formally declare the barge's entry. Rather, at most, Lafarge was required, in accordance with the unambiguous policy provision, to report its insurable interest in ING 4727 at the end of the policy year, expiring in early 2006.

Accordingly, there is no issue of fact that the plaintiffs have alleged liability against Lafarge in connection with ING 4727 that, if proven, would require the broad insuring clause of

the American Club Rules to cover Lafarge for such liability. The barge became an insured vessel with the American Club by virtue of the automatic acquisition paragraph in Lafarge's Certificate of Entry, as soon as Lafarge acquired an insurable interest in the barge. The plaintiffs are therefore entitled to partial summary judgment against the American Club holding that it is obligated to insure Lafarge for any liability it may have to the plaintiffs.

## II.

**THIS COURT'S PREROGATIVE UNDER THE "FIRST FILED RULE" TO ENJOIN THE AMERICAN CLUB FROM PROSECUTING ITS DECLARATORY JUDGMENT ACTION IN THE SOUTHERN DISTRICT OF NEW YORK AGAINST LAFARGE NORTH AMERICA, INC.**

The American Club, following the filing of the instant personal injury class action on behalf of approximately 90,000 New Orleans and St. Bernard residents and property owners on November14, 2005, and the joining of The American Club as a party defendant on February 22, 2006, filed an answer and did not contest jurisdiction or venue of this Court in its answer. Two months later, on April 24, 2006, after answering the suit, the American Club filed a declaratory judgment action in the United States District Court for the Southern District of New York entitled, "*American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge North America, Inc.,*" No. 06 Civ.3123 (CSH) on April 24, 2006. The American Club, with full knowledge of the suit against it, and it's insured, failed to cause the representatives of the class to be notified of the pendency of the New York case ancilliarily challenging its insurance coverage in this litigation.

Lafarge, the insured, is a foreign corporation domiciled in Baltimore, Maryland, with its principal office in Herndon, Virginia. It is licensed to do business in Louisiana with its

principal business establishment in Louisiana at 3320 Airline Highway, Metairie, Louisiana Unique Towing, Inc., also a defendant, is a Louisiana corporation domiciled at 5520 River Road, Marrero, Louisiana 70072. Joseph C. Domino, Inc., also a defendant, is a Louisiana corporation domiciled at 5520 River Road, Marrero, Louisiana 70072. Zito Towing, Inc., also a defendant, is a Louisiana corporation domiciled at 732 Rural Street, River Ridge, Louisiana 70123.

Approximately 90,000 putative class members whose homes, properties, and lives were taken, or destroyed, on August 29, 2007, are residents of Orleans and St. Bernard Parishes, both within the Eastern District of Louisiana. The incident that brought about the destruction, the Ingram Barge 4727 crashing through the East side wall of the Inner Harbor Navigational Canal releasing flood waters into their neighborhoods, took place entirely within the geographical confines of Orleans Parish and the Eastern District of Louisiana.

The only connexity with New York is the fact that The American Club is domiciled in the state of New York.

Lafarge filed motions for a stay and motions to transfer the New York declaratory judgment action to this District for consolidation with the above entitled and numbered cause. The motions were heard and denied by His Honor, Charles Haight, Jr., United States District Judge, in a written opinion rendered on January 29, 2007, which only recently came to the attention of movers because of lack of notice. See Exhibit "D" attached.

It appears that this is a case of "the tail wagging the dog" instead of the "dog wagging the tail." The "res," or body of the case, is in this Court in the Eastern District and the appendage, or tail, is in the Southern District of New York. Which Court has the greatest contact and the greatest interest? The contact and interest of the Southern District of New York pales by

comparison with the contact and interest of this Honorable Court.

Under the Louisiana Direct Action Statute, 22:655 B(1), Movers were compelled to sue both the insured, Lafarge, and their insurer, The American Club, which they did in this case. How then can the joined insurer carve out the coverage issue before this Court and have that sole issue selectively litigated in a court of the insurers' choice without participation of the injured parties? That flies in the face of the "*first-filed*" rule and smacks of forum shopping and exclusion of the real parties in interest.

In *Cadle Company V. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999), the court concluded that it is the *first-filed* Court that should make the determination whether the second suit, in this instance the New York suit, should be dismissed, stayed, or transferred. The Court concluded:

> "[T]he `first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed, or/and consolidated." Sutter Transfer Corp., 125 F.3d at 920. As noted above, "[t]he Fifth Circuit adheres to the general rule, that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." Save Power, 121 F.3d at 948. Thus, once the district court found that the issues might substantially overlap, the proper course of action was for the court to transfer the case to the Laredo court [first filed] to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." [bracketed

The Cadle Court, *supra,* at page 606 opined:

> "The district court correctly refused to act as a "super appellate court" by entertaining either Cadle's jurisdiction or the defendants' standing arguments, and properly limited its inquiry to the potential overlap between the two cases. By so limiting its analysis, the district court indeed avoided trenching on the authority of its sister court, one of 'the

very abuses the first-to-file rule is designed to prevent.'"

Therefore, under Fifth Circuit precedent, this Court is the Court to determine whether the New York action should be dismissed, stayed, or transferred.

A federal court exercising diversity jurisdiction applies state substantive law to a plaintiff's state law claims. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78-79 (1938); *Klanxon Co. v. Stanton Elec. Mfg. Co.,* 313 .S. 487, 496 (1941),   Likewise, a court exercising jurisdiction supplemental to its federal question jurisdiction (under 28 U.S.C. §§ 1367) applies the choice of law rules of the forum state. *In re Combustion, Inc.,* 960 F.Supp. 1056, 1059 (W.D. La. 1997); *Dale v. Ala. Acquisitions AI, Inc.,* 2006 WL 1520289, at P.2 (S.D. Miss. 5/26/06).

This Court should enjoin the American Club from prosecuting the declaratory judgment in District of New York.  The plaintiffs herein filed their direct action complaint against the American Club on February 22, 2006.  The Club then filed a declaratory action two months later, on April 24, 2006, seeking a  judgment that it was not obligated to indemnify Lafarge for any liability it may have to the plaintiffs herein.  A district court may properly exercise its discretion to enjoin a party from litigating the same issues before it in another court, especially where the injunction is issued by the court before which the first action was filed. *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).  The issue of whether the American Club must insure Lafarge for the claims of the plaintiffs herein is properly before this Court under Louisiana's direct action statute.  The issue of coverage under Lafarge's membership in the American Club is therefore identical in both actions.  In fact, coverage is the only issue in the New York action, and this Court should exercise its discretion to enjoin the American Club from litigating the same

coverage issues in New York.

The Court of Appeals in *Mann Manufacturing* affirmed the initial grant of an injunction by the Western District of Texas against one of the defendants proceeding to litigate the same patent in the Southern District of New York, where the Texas action was commenced first. The court stated:

> Since suit on the '821 patent was first brought in Texas, we find that the trial judge acted properly in temporarily restraining Goodrich from proceeding with a motion in New York that, if successful, could have stripped him of all jurisdiction over the controversy before he had the chance to hold a hearing and decide for himself. 439 F.2d at 407.

The Court of Appeals ultimately lifted the Texas injunction only because the district court in New York had previously issued an injunction against the plaintiff's proceeding on a related patent in the Texas action. In this case, however, the plaintiffs herein are not parties to the action pending in New York, and the New York court has not issued any order limiting the plaintiffs herein from proceeding in any way before this Court.

Under the Louisiana Direct Action Statute, the plaintiffs herein have an unfettered right to have their claims asserted in this action against both Lafarge and its insurer, the American Club. The only rationale for the Club's filing its declaratory judgment complaint in New York, after the plaintiffs herein had filed their direct action complaint against it, is that the American Club hopes to circumvent this proceeding, and in a race to judgment, deprive the plaintiffs of their right to litigate the issue of the extent to which the Club must cover Lafarge for any liability it may have to the plaintiffs. Because Lafarge is not insolvent, bankrupt, etc., as set out in Subparagraph B(1) of the direct action statute, the plaintiffs herein were obligated to sue both Lafarge and the American

Club for their claims. The American Club is attempting to sever the claims against it, or worse, prejudice the claims of the plaintiffs by litigating the coverage issue in New York outside of the plaintiffs' presence.

The facts of this case compel that the claims against the American Club proceed in this action rather than in New York. As a preliminary matter, the American Club has not objected in this action to venue, as its answers in this case have not raised a venue defense or otherwise reserved its rights to object to venue in this Court. To maintain the action in New York would result in duplicative discovery and litigation, risk inconsistent results, and amount to a waste of time and expense for both parties and witnesses. Adjudicating the coverage issues in two separate venues would also engender a tremendous waste of federal judicial resources, given that this Court will be called upon to rule on these issues regardless of whether the New York action also proceeds. A single litigation, on the other hand, will prevent needless duplicative discovery and motion practice. Judge Berrigan has already made certain findings of fact and conclusions of law that would be binding on the direct action claims under the law of the case doctrine, so that the progress of this case militates in favor of staying the New York action. The documents and witnesses are present in this district, and a very significant amount of discovery has already been conducted that would need to be duplicated in New York.

WHEREFORE, Movers pray that this Honorable Court grant its motion for partial summary judgment holding The American Club to have in force and effect on August 29, 2007, a policy of liability and indemnity insurance providing coverage to Lafarge North America, Inc., for the damages alleged by the Plaintiff class up to the limits of its

coverage, and alternatively, enjoining The American Club from further prosecuting the declaratory judgment action filed by it in the United States District Court, Southern District of New York, entitled "American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge North America, Inc..," No. 06 Civ. 3123 (CSH).

        RESPECTFULLY SUBMITTED,

        WIEDEMANN & WIEDEMANN
        /s/Lawrence D. Wiedemann
        LAWRENCE D. WIEDEMANN, (13457)
        KARL WIEDEMANN, (18502)
        KAREN WIEDEMANN, (21151)
        821 Baronne Street
        New Orleans, Louisiana 70113
        Telephone: (504) 581-6180
        Attorneys for Plaintiffs


        LAW OFFICE OF BRIAN A. GILBERT

        /s/ Brian A. Gilbert
        BRIAN A. GILBERT (21297)
        821 Baronne Street
        New Orleans, Louisiana 70113
        Telephone: (504) 885-7700
        Attorney for Plaintiffs


        LAW OFFICE OF PATRICK J. SANDERS

        /s/Patrick J. Sanders
        PATRICK J. SANDERS (18741)
        Attorney at Law

           3316 Ridgelake Drive
           Metairie, Louisiana 70002
           Telephone: (504) 834-0646
           Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

  I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which send a notice of electronic filing to CM/ECF participants. I further certify that I forwarded the foregoing document and the notice of electronic filing by facsimile, and/or E-mail, to non-CM/ECF participants.

  New Orleans, Louisiana, this ____ day of November, 2007.

           ____/s/ Lawrence D. Wiedemann_____
           LAWRENCE D. WIEDEMANN