# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

IN RE:  KATRINA CANAL BREACHES    * CIVIL ACTION
CONSOLIDATED LITIGATION           *
                                 * NO. 05-4182 "K" (2)
                                 *
                                 * JUDGE STANWOOD R. DUVAL
                                 *
                                 * MAG. JUDGE JOSEPH C. WILKINSON, JR.
                                 *

***THIS PLEADING APPLIES TO:***    **BARGE**

| | |
|---|---|
| *Boutte v. Lafarge* | C.A. No. 05-5531 |
| *Mumford v. Ingram* | C.A. No. 05-5724 |
| *Lagarde v. Lafarge* | C.A. No. 06-5342 |
| *Perry v. Ingram Barge* | C.A. No. 06-6299 |
| *Benoit v. Lafarge* | C.A. No. 06-7516 |

## <u>ANSWER TO SIXTH SUPPLEMENTAL AND AMENDED COMPLAINT AND THIRD-PARTY COMPLAINT</u>

Lafarge North America Inc. ("LNA"), sought to be made defendant herein, reavers its prior responses and defenses set forth in its answers previously filed in these consolidated matters as if set forth herein *in extenso,* and answers the "Sixth Supplemental and Amended Complaint" (hereinafter, "Amended Complaint") of plaintiff, Ethel Mumford, individually and on behalf of Group A, and asserts its repled Third-Party Complaint against third-party defendants

the United States of America, the Board of Commissioners of the Port of New Orleans, and the Board of Commissioners for the Southeast Louisiana Flood Protection District – East, and avers upon information and belief as follows:

## FIRST DEFENSE

The Amended Complaint fails to state a claim, right, or cause of action against LNA upon which relief may be granted.

## SECOND DEFENSE

Plaintiffs are not the real parties in interest or otherwise lack standing, and thus are not entitled to maintain this action.

## THIRD DEFENSE

LNA owed no duty to plaintiffs.

## FOURTH DEFENSE

LNA submits that, if plaintiffs sustained any damages as alleged, which is specifically denied, then such damages were solely caused, or were contributed to, by plaintiffs' own negligence or fault, which is hereby pled in bar and/or diminution of plaintiffs' recovery herein, if any.

## FIFTH DEFENSE

Alternatively, LNA submits that, if plaintiffs sustained any damages as alleged, which is specifically denied, then such damages were solely caused, or were at least contributed to, by the negligence, fault, failure to perform their duties, and/or inattention to duty of third parties over whom LNA had no control and for whose actions or inactions LNA is in no way responsible or liable.

## SIXTH DEFENSE

Alternatively, LNA submits that, if plaintiffs sustained any damages as alleged, which is specifically denied, such damages were solely caused, or at a minimum were contributed to, by the defective design, improper construction, and lack of inspection and maintenance of the Mississippi River–Gulf Outlet Canal ("MR-GO"), and/or by the defective design, improper construction, and lack of inspection and maintenance of the Inner Harbor Navigation Canal ("IHNC" or "Industrial Canal") retaining walls and levees, as well as the levees and retaining walls to the east and north associated with the MR-GO, Gulf Intracoastal Waterway ("GICW"), Bayou Bienvenue, and related structures, for which LNA is in no way responsible or liable.

## SEVENTH DEFENSE

Alternatively, in the event that plaintiffs sustained any damages as alleged, which is specifically denied, then such damages were proximately caused by Hurricane Katrina, a catastrophic hurricane with an unprecedented storm surge and therefore a *force majeure* event.

## EIGHTH DEFENSE

Alternatively, in the event that plaintiffs sustained any damages as alleged, which is specifically denied, then such damages were the result of an Act of God and/or inevitable accident.

## NINTH DEFENSE

The barge ING 4727 was not the proximate cause or cause-in-fact of any damages or injuries that plaintiffs claim to have sustained.

## TENTH DEFENSE

Alternatively, in the event that plaintiffs sustained any damages as alleged, which is specifically denied, then plaintiffs are put on full proof of their damages, as well as the fairness and reasonableness of the steps, if any, taken to remedy, mitigate, or minimize those damages.

## ELEVENTH DEFENSE

LNA denies that plaintiffs' claims may be certified for class treatment under Rule 23 of the Federal Rules of Civil Procedure.

## TWELFTH DEFENSE

LNA denies any claim for punitive damages, which are not recoverable under the applicable law.

## THIRTEENTH DEFENSE

Plaintiffs' claims against LNA are barred by prescription and/or other timeliness doctrines.

## FOURTEENTH DEFENSE

Plaintiffs have failed to join indispensable parties.

## FIFTEENTH DEFENSE

To the extent that plaintiffs have settled or should hereafter settle any claims for any of their alleged injuries and damages with any other person or entity, or should plaintiffs receive funds from any source, including without limitation any federal or state agencies or programs or any insurance policies, LNA is entitled to a credit and/or offset in the amount of all such settlements and other payments and/or for the settling or paying entity's allocated percentage share of alleged fault.

## SIXTEENTH DEFENSE

Venue is improper in this District, as any proceeding in the Eastern District of Louisiana will violate LNA's right to a fair trial.

## SEVENTEENTH DEFENSE

Plaintiffs' claims against LNA are or will be barred by res judicata, collateral estoppel, or other doctrines of preclusion based on the claims asserted by plaintiffs or by others in privity with them against LNA or against other entities.

## EIGHTEENTH DEFENSE

LNA adopts and incorporates by reference herein any affirmative defenses asserted by any other defendants to the extent that such affirmative defenses apply to LNA.

## NINETEENTH DEFENSE

In the further alternative, without waiving any other defenses, and for its answer to each individual allegation in plaintiffs' "Sixth Supplemental and Amended Complaint" ("Amended Complaint"), LNA avers as follows:

1.

The allegations of Paragraph III of the Amended Complaint, including subparagraphs A – D, merely define the proposed subclasses of the putative plaintiff class and thus require no response of LNA. To the extent that a response is required, however, LNA denies the allegations for lack of sufficient information upon which to justify a belief therein.

2.

LNA denies the allegations of Paragraph III(a) (incorrectly identified as Paragraph III) of the Amended Complaint, including subparagraphs 1 – 4 and 1 – 5, for lack of sufficient information upon which to justify a belief therein.

3.

The allegations of Paragraph VII(a) of the Amended Complaint state legal conclusions to which no response is required; however, to the extent that a response is required, LNA denies the allegations.

4.

LNA denies the allegations of Paragraph IX of the Amended Complaint.

5.

LNA denies plaintiffs' prayer for relief.

6.

LNA reserves the right to file supplemental answers and/or other defenses, as well as cross-claims and third-party claims, depending on the facts as they may be developed.

7.

LNA reserves the right to claim the benefits and protections of the Limitation of Shipowners' Liability Act, 46 U.S.C. § 181 *et seq.*

## THIRD–PARTY COMPLAINT

AND NOW, assuming the role of third-party plaintiff, Lafarge North America Inc. asserts its third-party complaint against the United States of America, the Board of Commissioners of the Port of New Orleans ("Dock Board"), and the Board of Commissioners for the Southeast Louisiana Flood Protection District – East ("SLFPA-East"), and avers upon information and belief as follows:

## Jurisdiction and Venue

1.      This Court has jurisdiction over this matter under 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1333, 28 U.S.C. § 1346, 28 U.S.C. §§ 2671 et seq., 46 U.S.C. App. §§ 741 et seq., 46 U.S.C. App. §§ 781 et seq., and/or 33 U.S.C. §§ 1251 et seq.

2.      If and to the extent that plaintiffs' claims against LNA are adjudicated in this district, then venue is proper in this district in accordance with 28 U.S.C. § 1391 and/or 46 U.S.C. § 782 because the acts or omissions of third-party defendants United States of America, Dock Board, and SLFPA – East occurred within this District.  The M/V WHEELER, an ocean-going hopper dredge owned and operated by the United States of America through its agency, the U.S. Army Corps of Engineers ("USCOE"), is also homeported in this District.

## The Parties

3.      At all material times, third-party plaintiff LNA was and is a corporation organized and existing in accordance with the laws of the State of Maryland and has its principal place of business in the Commonwealth of Virginia.

4.      At all material times, third-party defendant United States of America was and is a sovereign government that may be sued for civil liability for the acts or omissions of its agency, the USCOE, in accordance with the Suits in Admiralty Act, 46 U.S.C. App. §§ 741 et seq., the Public Vessels Act, 46 U.S.C. App. §§ 781 et seq., the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq., and/or 28 U.S.C. § 1346.

5.      At all material times, third-party defendant Dock Board was and is a political subdivision of the State of Louisiana that may be sued for civil liability under La. R.S. 34:47 and La. Const. Art. VI, §16.  The Dock Board owns, operates, and controls the Port of New Orleans, which includes Orleans Parish and certain Mississippi River frontage in St. Bernard and

Jefferson Parishes, as well as wharves and frontage for deep-draft oceangoing vessels and barges within the port limits along the IHNC, MR-GO, and GICW, all navigable waters of the United States. The Dock Board is also the owner and operator of the IHNC.

6.      The Dock Board owns, operates, controls, and maintains all of the component parts of the IHNC and adjacent lands (with the exception of the IHNC locks at St. Claude Avenue and related lockwalls, which the Dock Board conveyed to the United States in 1986), including, but not limited to, rights-of-way, easements, servitudes, roadways, slips, inlets, wharves, turning basins, certain bridges, the banks, bottom, and batture of the canal, and the land upon which the levees, retaining walls (including I-walls), and related structures are located, as well as the connections between those structures.

7.      The SLFPA – East is a political subdivision of the State of Louisiana that may be sued for civil liability under La. R.S. 38:309 (B). The SLFPA – East is liable for the acts and omissions, and the resulting liabilities, of both the Orleans Levee District and the Lake Borgne Basin Levee District. The Orleans Levee District was responsible for, inter alia, the maintenance and operation of levees, retaining walls (including I-walls), and various other hurricane protection structures and their connections in Orleans Parish, and particularly those along the IHNC. The Lake Borgne Basin Levee District was responsible for, inter alia, flood control and hurricane protection for the Parish of St. Bernard, including without limitation the maintenance and operation of certain MR-GO levees, Bayou Bienvenue floodgates and related structures, 40 Arpent Canal levees and retaining walls, and related structures along the south side of the GICW.

### The Waterways

8.      The IHNC is a navigable waterway of the United States. It is and always has been a navigation channel, not a flood control project. It is described in the United States Coast Pilot

No. 5, 32nd Edition (NOAA-2004) as "a deepwater connection between the Mississippi River and Lake Pontchartrain, a distance of about 5.8 miles." It is oriented generally in a north-south direction and has a project width of 400 feet at its southern end, with the exception of a 900-foot-wide turning basin about 0.7 miles north of the IHNC locks. The controlling depth at the southern end of the canal, from France Road to the river, is 31 feet.

9.      The GICW, also a navigable waterway of the United States, is a shallow-draft canal running generally in an east-west direction from Carrabelle, Florida to Brownsville, Texas. It is and always has been a navigation channel, not a flood control project. Its controlling depth is generally 12 feet, including the Rigolets-New Orleans cut; however, when the canal reaches Mile Marker 15 in the vicinity of the Michoud Canal near the junction of the MR-GO, it becomes a ship channel and its project depth and width increase respectively to 36 feet by 500 feet to the turning basin at the junction of the MR-GO and IHNC.

10.      The MR-GO, which was designed and constructed and is maintained by the USCOE, provides a more direct deep-draft navigation route to the New Orleans Inner Harbor. It is and always has been a navigation channel, not a flood control project. The MR-GO, approximately 76 miles long, is aligned on a northwest-southeast axis and bisects the marshes of lower St. Bernard Parish and the shallow waters of Chandeleur Sound. It extends inland from deep water in the Gulf of Mexico to a junction with the GICW and then runs in a westerly direction, joining the IHNC at France Road. It was originally authorized to a depth of 36 feet, a surface width of 650 feet, and a bottom width of 500 feet; since construction was completed in 1965, however, dredging by the USCOE and other forces resulting from the MR-GO have eroded the MR-GO's banks so that the surface width now averages 1,500 feet and is as much as 2,000 feet in certain places.

**Hurricane Katrina**

11.     Hurricane Katrina made landfall in Louisiana on August 29, 2005.

12.     On August 28-29, 2005, the covered hopper barge ING 4727, owned by Ingram Barge Company, Inc., was properly and securely moored at LNA's terminal adjacent to the IHNC.

13.     When or shortly before Hurricane Katrina made landfall in Louisiana, the MR-GO both funneled a massive storm surge into the MR-GO, GICW, and IHNC navigation channels and intensified that storm surge.

14.     As a result of that funneled storm surge, the banks and/or retaining walls of the MR-GO, GICW, and IHNC were overtopped, thereby flooding large portions of the Greater New Orleans Area, including the areas where the plaintiffs allege that their damages occurred.

15.     In addition, as a result of that funneled storm surge, the banks and/or retaining walls of the MR-GO, IHNC, and GICW were breached at numerous locations, thereby flooding large portions of the Greater New Orleans Area, including the areas where the plaintiffs allege that their damages occurred.

16.     At some point while or shortly after Hurricane Katrina passed through the Greater New Orleans Area on August 29, 2005, the barge ING 4727 broke free from her moorings and was drawn through one of four pre-existing breaches in the walls of the IHNC. The barge ING 4727 did not cause that breach or any other breach in those structures; nor did it cause any of the injuries or damages complained of by the plaintiffs in this action.

**For a First Cause of Action Against the United States**
**Based on the Negligent Design, Construction, and Maintenance**
**of Certain Navigation Channels:**
**The Public Vessels Act, Suits in Admiralty Act, and/or Federal Tort Claims Act**

17.     The USCOE is legally responsible for the design, administration, construction, inspection, and maintenance of the MR-GO, the GICW, and certain parts of the IHNC, in accordance with the Rivers and Harbors Act of March 29, 1956.

18.     The USCOE acted negligently in its design, construction, inspection, and maintenance of the MR-GO, IHNC, and GICW.

19.     The USCOE negligently designed and constructed the MR-GO in such a fashion that it acts as a funnel that transmits and magnifies rapidly accelerated, storm-driven surges to the New Orleans area, including throughout the MR-GO, GICW, and IHNC.  The USCOE also negligently failed to take this effect into account in designing and constructing the MR-GO, GICW, and IHNC, even though this effect was or should have been known to the USCOE.

20.     By constructing the MR-GO, the USCOE negligently destroyed extensive areas of wetlands, thus destroying a critical natural buffer for the New Orleans area against storm surges and exacerbating the funneling effect of the MR-GO.  Such destruction by the USCOE took or has taken place (a) during construction of the MR-GO, (b) during subsequent ongoing dredging and other activities, and (c) as a result of the effects of the MR-GO, including salt water intrusion and accelerated erosion.  The USCOE also negligently failed to take these effects into account in designing, constructing, and maintaining the MR-GO, GICW, and IHNC, even though these effects were or should have been known to the USCOE.

21.     The USCOE's negligent dredging and other activities have allowed the waters of the Gulf of Mexico to erode banks of the MR-GO and GICW, thus allowing saltwater intrusion,

and have opened the MR-GO's northeast bank to the sea, particularly in the area of Lake Borgne, which is an arm of the sea. The USCOE also negligently failed to take these effects into account in designing, constructing, and maintaining the MR-GO, GICW, and IHNC, even though these effects were or should have been known to the USCOE.

22.    The USCOE negligently failed to properly maintain the depth of the MR-GO channel by failing to properly dredge the channel. The failure to properly maintain the depth of the MR-GO channel exacerbated the MR-GO's funneling effect. The USCOE also negligently failed to take this effect into account in designing, constructing, and maintaining the MR-GO, GICW, and IHNC, even though this effect was or should have been known to the USCOE.

23.    The USCOE knew or should have known about, but negligently failed to account for, or remedy, the effects of subsidence on the banks of the MR-GO, GICW, and IHNC.

24.    The USCOE negligently failed to design and construct proper retaining walls for the MR-GO, GICW, and IHNC at the time of their original design and construction.

25.    The USCOE negligently failed to take appropriate and necessary measures to stabilize or otherwise remediate the areas adversely affected by the MR-GO.

26.    The United States is liable for the negligent or otherwise at-fault conduct of the USCOE under the Suits in Admiralty Act, 46 U.S.C. App. §§ 741 et seq., and/or the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq.

27.    The United States of America, through its agency, the USCOE, owns and operates a large oceangoing hopper dredge, the M/V WHEELER, which is homeported in New Orleans and is presently moored on the Mississippi River at the foot of Walnut Street in New Orleans. This dredge, as well as other public vessels of the United States, including the hopper dredge

McFARLAND, has been employed in continuous maintenance dredging of the MR-GO since that waterway was completed in 1965.

28.     Additionally, the United States, through the USCOE, contracts with owners and operators of privately owned dredges to conduct maintenance dredging in the MR-GO. Together with the WHEELER, McFARLAND, and other public vessels of the United States, these privately owned dredges have conducted maintenance dredging of the MR-GO on a regular and continuous basis since the canal's completion in 1965.

29.     The vessels referenced in Paragraphs 26-28 above have taken part in the dredging activities that are described in Paragraphs 20-22 above.

30.     The United States, through its agency, the USCOE, is responsible and, ultimately, liable under the Public Vessels Act, 46 U.S.C. App. §781 et seq. ("PVA"), for the wetlands destruction caused by the M/V WHEELER, M/V McFARLAND, and other public vessels of the United States, together with privately owned government contract dredges, and for all damages resulting in whole or in part from such wetlands destruction.

31.     The USCOE's negligence or fault as set forth in Paragraphs 17-28 above was a direct and proximate cause of, and a substantial factor in, the overtopping and breaching of the banks of the MR-GO, IHNC, and GICW; of the flooding resulting from such overtopping and breaching; and of the plaintiffs' damages allegedly resulting from such flooding.

32.     The USCOE's negligent actions set forth in Paragraphs 17-28 above were not undertaken in connection with any flood control project. To the contrary, they were undertaken in connection with the design, construction, and maintenance of navigation channels. Indeed, in prior Army Corps reports to Congress and in prior litigation, see Graci v. United States, 301 F. Supp. 947, 949 (E.D. La. 1969) and 435 F. Supp. 189, 192 (E.D. La. 1977), the United States has

admitted that the MR-GO, GICW, and IHNC are navigation channels, rather than flood control projects. This third-party claim is therefore not barred by the immunity provision in the Flood Control Act of 1928, 33 U.S.C. § 702c.

33.     The USCOE's negligent actions set forth in Paragraphs 17-28 above are not protected by the discretionary function exception, 28 U.S.C. § 2680(a). Those actions were not based on decisions grounded in social, economic, or political policy. In addition, the USCOE's actions violated federal statutes, including without limitation the Rivers and Harbors Act of 1945, P.L. No. 79-14, 50 Stat. 10 (March 2, 1945), and the Fish and Wildlife Conservation Act, 16 U.S.C. § 662, and/or the USCOE's own policies and regulations.

34.     The USCOE's negligent actions set forth in Paragraphs 17-28 above are not protected by the due care exception, 28 U.S.C. § 2680(a). Those actions were not mandated by federal law. Moreover, to the extent that applicable federal law mandated any action relating to the navigation channels at issue, the USCOE failed to exercise due care in following such mandates.

35.     Plaintiffs in this action claim to have suffered property loss and/or damage, personal injury and death, emotional distress, and other damages as a result of the flooding from the MR-GO, GICW, and/or IHNC. Plaintiffs have alleged that LNA (among others) is partially liable for those damages.

36.     If LNA is held liable unto plaintiffs, which LNA specifically denies, said liability arises out of the breach of duties of the United States of America through its agency, the USCOE, and LNA is therefore entitled to indemnity, recovery over, and/or contribution from the United States of America in the full amount of any liability that LNA may incur herein, together with interest, costs, and attorneys' fees.

**For a Second Cause of Action Against the United States
Based on the Negligent Design, Construction, and Maintenance
of Certain Levees:
The Public Vessels Act, Suits in Admiralty Act, and/or Federal Tort Claims Act**

37.     LNA incorporates and restates the allegations of all preceding paragraphs as if fully set forth herein.

38.     In a purported effort to lessen the adverse effects of its above-described negligence in the design, construction, and maintenance of the MR-GO, IHNC, and GICW, the USCOE subsequently designed and constructed levees and/or retaining walls along portions (but not all) of the MR-GO, IHNC, and GICW.

39.     Wholly separate and apart from the USCOE's negligence in the design, construction, and maintenance of the navigation channels themselves, the USCOE was negligent in its design, construction, and maintenance of those levees and retaining walls.

40.     The USCOE negligently designed and constructed the levees and retaining walls without adequate structural support to properly resist the hydrostatic pressure placed upon them by a storm surge.

41.     The USCOE failed to armor the banks of the navigation channels.   Armoring involves placing a water-resistant material on a bank or levee to protect against (1) the impact of waves and other water impacts on the water-side of the banks or levee, and (2) erosion on the land-side of the banks or levee in the event that the banks or levees are overtopped.

42.     The USCOE negligently failed to design and construct levees or retaining walls of sufficient elevation to withstand reasonably foreseeable water levels.

43.    The USCOE negligently designed and built the levees or retaining walls to a height that was based on the wrong elevation datum and that failed to account for the effect of subsidence that was known to be characteristic of the area.

44.    Some of the places along the MR-GO, IHNC, and GICW from which flooding occurred during or shortly after Hurricane Katrina passed through the Greater New Orleans Area had not received levees or retaining walls and were not otherwise the situs of any flood control works.

45.    The USCOE's negligence or fault as set forth in Paragraphs 38-43 above was a direct and proximate cause of, and a substantial factor in, some but not all of the overtopping and breaching of the levees and/or retaining walls of the MR-GO, IHNC, and GICW; of the flooding resulting from such overtopping and breaching; and of the plaintiffs' damages allegedly resulting from such flooding.

46.    The USCOE's negligent actions set forth in Paragraphs 38-43 above are not immunized from liability by the immunity provision in § 3 of the Flood Control Act of 1928, 33 U.S.C. § 702c.  That provision does not apply to actions undertaken to address flooding caused by the United States' own prior negligence during activities having no connection with a flood control project, such as the design and construction of navigation channels.

47.    The USCOE's negligent actions set forth in Paragraphs 38-43 above are not protected by the discretionary function exception, 28 U.S.C. § 2680(a).  Those actions were not based on decisions grounded in social, economic, or political policy.  In addition, the USCOE's actions violated federal statutes and/or regulations.

48.    The USCOE's negligent actions set forth in Paragraphs 38-43 above are not protected by the due care exception, 28 U.S.C. § 2680(a).  Those were not mandated by federal

law.  Moreover, to the extent that applicable federal law mandated any action relating to the navigation channels at issue, the USCOE failed to exercise due care in following such mandates.

49.     Plaintiffs in this action claim to have suffered property loss and/or damage, personal injury and death, emotional distress, and other damages as a result of the flooding from the MR-GO, GICW, and/or IHNC.  Plaintiffs have alleged that LNA (among others) is partially liable for those damages.

50.     If LNA is held liable unto plaintiffs, which LNA specifically denies, said liability arises out of the breach of duties of the United States of America through its agency, the USCOE, and LNA is therefore entitled to indemnity, recovery over, and/or contribution from the United States of America in the full amount of any liability that LNA may incur herein, together with interest, costs, and attorneys' fees.

### For a Third Cause of Action Against the United States: Fifth Amendment Takings, 28 U.S.C. §1346(a)(2)

51.     LNA incorporates and restates the allegations of all preceding paragraphs as if fully set forth herein.

52.     The United States' actions and/or inactions described in Paragraphs 17-28 above have resulted in inevitably recurring inundation of plaintiffs' properties, which constitutes a permanent taking entitling the owner of each such damaged property to just compensation from the United States under the Fifth Amendment to the United States Constitution.

53.     The reasons why the United States' actions and/or inactions described in Paragraphs 17-28 above have resulted in inevitably recurring flooding include, without limitation, that the design, construction, and maintenance of the MR-GO and other navigation channels have resulted in a system of navigational waterways that inevitably will, on a recurring

basis, funnel storm surges into the Greater New Orleans Area and produce devastating widespread flooding of that area. The inevitably recurring nature of such flooding is shown by the recurrent flooding during both Hurricane Betsy and Hurricane Katrina that was substantially caused by the negligence set forth in Paragraphs 17-28 above.

54.    If LNA is held liable to any plaintiff and is required to compensate such plaintiff for the value of his or her property, then LNA will acquire such plaintiff's taking claim against the United States and hereby asserts such taking claim against the United States by way of equitable subrogation. For each plaintiff asserting a claim against LNA (including each class member if the Court certifies a class over LNA's objection), LNA asserts a separate taking claim against the United States under 28 U.S.C. § 1346(a)(2), with each such claim having been acquired by LNA by operation of law under the doctrine of equitable subrogation.

55.    Alternatively, if LNA is held liable to any plaintiff and is required to compensate such plaintiff for the value of his or her property, then LNA will be the entity whose property has been taken by the United States and who is entitled to just compensation from the United States under the Fifth Amendment to the United States Constitution. For each plaintiff asserting a claim against LNA (including each class member if the Court certifies a class over LNA's objection), LNA asserts a separate taking claim under 28 U.S.C. § 1346(a)(2) against the United States for the taking of LNA's property.

56.    Alternatively, if LNA is held liable to any plaintiff and is required to compensate such plaintiff for the value of his or her property, then LNA is entitled to indemnity or contribution from the United States under to the Fifth Amendment to the United States Constitution. For each plaintiff asserting a claim against LNA (including each class member if

the Court certifies a class over LNA's objection), LNA asserts a separate indemnity and/or contribution claim under 28 U.S.C. § 1346(a)(2) against the United States.

57.     LNA seeks the maximum recovery on such claim that may be had consistent with 28 U.S.C. § 1346(a)(2).  LNA's claim against the United States is expressly limited to seek no more than $10,000 for each plaintiff (including each plaintiff class member if the Court certifies a class over LNA's objection), regardless of whether each individual's claim against LNA exceeds $10,000.   The purpose of this paragraph is to bring LNA's claims within the jurisdictional limitations of 28 U.S.C. § 1346(a)(2) and it should be construed in light of that purpose.

**For a First Cause of Action Against the
Board of Commissioners of the Port of New Orleans**

58.     LNA incorporates and restates the allegations of all preceding paragraphs as if fully set forth herein.

59.     The Dock Board, as the owner and operator of the several IHNC structures, including but not limited to the levees, retaining walls, and I-walls, had a legal duty to properly inspect and maintain these structures and their connections on a regular basis.

60.     The Dock Board failed to properly inspect and maintain those IHNC structures and their connections on a regular basis.

61.     In addition to its failure to properly inspect and maintain those structures, the Dock Board undertook or permitted actions that affirmatively undermined the integrity of the structures and that caused their failure.  Without limitation, the Dock Board dredged the IHNC and excavated borrow pits along the bottom, banks, and batture of the IHNC, particularly on the east bank of the canal between the Florida Avenue and Claiborne Avenue bridges.   These

dredging and excavation activities caused or allowed water from the storm surge to undermine or seep beneath the levees, retaining walls, and I-walls, which in turn caused or contributed to the destabilization and collapse of these structures along the length of the canal on both banks, and particularly the east bank between the Florida and Claiborne Avenue bridges, which in turn allowed waters from the storm surge to enter both the upper and lower Ninth Ward neighborhoods.

62.     In addition, the Dock Board caused or permitted certain chain-link fences to be erected between the concrete I-wall and the "toe" of the levees on the land side of the IHNC levee structures.  These fences, constructed with galvanized steel posts with concrete footings that were sunk into the levees, were uprooted and destroyed by overtopping during the storm surge and contributed to the scouring out of the land side of the levees and the eventual collapse of the levees and I-walls themselves.

63.     In addition, the Dock Board and USCOE have, since the original design and construction of the MR-GO, exerted certain control and influence over the operations of the MR-GO, because the MR-GO provides deep-draft access from the Gulf of Mexico to the Dock Board's wharves and leased facilities along the GICW and IHNC.  Over the years, the Dock Board, to enhance its revenues, has promoted dredging of the MR-GO by the USCOE and its contractors.  This continuous maintenance dredging has caused or contributed to massive coastal erosion, resulting in the widening of the MR-GO between its banks and the loss of wetlands between Lake Borgne and the IHNC, all of which caused or contributed to the intensity of the catastrophic storm surge that entered the IHNC during Hurricane Katrina on August 29, 2005.

64.     The Dock Board's above-described negligent actions and/or omissions were a direct and proximate cause of, and substantial factor in, the overtopping and/or breaching of the banks and/or levees, retaining walls, and I-walls along the IHNC, MR-GO, and GICW.

65.     If LNA is held liable unto plaintiffs, which LNA specifically denies, said liability arises out of the breach of duties of the Dock Board, and LNA is therefore entitled to indemnity, recovery over, and/or contribution from the Dock Board in the full amount of any liability that LNA may incur herein, together with interest, costs, and attorneys' fees.

### For a First Cause of Action Against the SLFPA – East

66.     LNA incorporates and restates the allegations of all preceding paragraphs as if fully set forth herein.

67.     The SLFPA – East is a political subdivision of the State of Louisiana that may be sued for civil liability under La. R.S. 38:309 (B).  The SLFPA – East is liable for the acts, omissions, and resulting liabilities of the Orleans Levee District and the Lake Borgne Basin Levee District.  At the time relevant herein, the Orleans Levee District was responsible for, inter alia, the maintenance and operation of levees, retaining walls (including I-walls), and various other hurricane protection structures and their connections in Orleans Parish, and particularly those along the IHNC.  At the times relevant herein, the Lake Borgne Basin Levee District was responsible for, inter alia, flood control and hurricane protection for the Parish of St. Bernard, including without limitation the maintenance and operation of certain MR-GO levees, Bayou Bienvenue floodgates and related structures, 40 Arpent Canal levees and retaining walls, and related structures along the south side of the GICW.

68.     The Orleans Levee District and the Lake Borgne Basin Levee District failed to adequately inspect, operate, and maintain the waterways and their respective levees, retaining walls (including I-walls), floodgates, and related/connecting systems.

69.     The operations, inspection, and maintenance procedures of the Orleans Levee District and the Lake Borgne Basin Levee District fell below professional standards.

70.     The Orleans Levee District's and the Lake Borgne Basin Levee District's personnel training were inadequate with respect to the maintenance, operation, and inspection of the waterways' levees, retaining walls (including I-walls), floodgates, and their connections and component parts.

71.     The Orleans Levee District's and the Lake Borgne Basin Levee District's engineering staffs failed to meet professional engineering and managerial standards.

72.     The Orleans Levee District's and the Lake Borgne Basin Levee District's above-described negligent actions and/or omissions were a direct and proximate cause of, and substantial factor in, the overtopping and/or breaching of the banks and/or levees, retaining walls, and I-walls floodgates, and related structures along the IHNC, MR-GO, and GICW.

73.     If LNA is held liable unto plaintiffs, which LNA specifically denies, said liability arises out of the breach of duties of the Orleans Levee District and the Lake Borgne Basin Levee District, and LNA is therefore entitled to indemnity, recovery over, and/or contribution from the SLFPA – East in the full amount of any liability that LNA may incur herein, together with interest, costs, and attorneys' fees.

**For a Second Cause of Action Against Both
the Dock Board and the SLFPA – East**

74.     LNA incorporates and restates the allegations of all preceding paragraphs as if fully set forth herein.

75.     At the time relevant herein, the SLFPA – East, through its predecessor, the Orleans Levee District, and the Dock Board had overlapping responsibility for the inspection and maintenance of the IHNC and its levees, retaining wall (including I-wall) systems, and related components, and knew or reasonably should have known that the height and composition of these structures were fundamentally flawed and could result in multiple failures of the levees, retaining wall (including I-wall) systems, and related components.

76.     The Orleans Levee District (now SLFPA – East) and the Dock Board failed to identify, protect against, and correct subsidence of the levees, retaining walls, and I-walls along the IHNC, and also failed to ensure that the landward side of the levees was armored or otherwise reinforced or strengthened to protect against scouring from water overtopping the I-walls.  As a result, storm surge from Hurricane Katrina overtopped the IHNC levees and I-walls, which permitted scouring on the landward side of the levees, which in turn undermined the levees, retaining walls, and I-walls along the IHNC.

77.     The lack of inspection and poor maintenance of the IHNC levees, retaining walls, I-walls, connections, and related structures by the Orleans Levee District (now SLFPA – East) and the Dock Board LNA were direct and proximate causes of, and substantial factors in, the breaches and failures of the levees and retaining walls (including I-walls) and their connecting and component parts along the IHNC, and of any resulting injuries and damages allegedly sustained by the plaintiffs.

1001137-1                                                  23

78.     If the Court should find LNA liable unto plaintiffs, which LNA specifically denies, said liability arises out of the breach of duties of the Dock Board and/or Orleans Levee District (now SLFPA – East), and LNA is therefore entitled to indemnity, recovery over, and/or contribution from the Dock Board and the SLFPA – East, in the full amount of any liability that LNA may incur herein, together with interest, costs, and attorneys' fees.

*   *   *   *   *

LNA pleads its previous answers and defenses in this matter as if recited herein *in extenso*, and reserves the right to supplement and amend this Third-Party Complaint when and if additional relevant information becomes available.

WHEREFORE, Lafarge North America, Inc. prays for the following relief:

(1)     That its Answer to the Sixth Supplemental and Amending Complaint of plaintiffs, Ethel Mumford, individually and on behalf of Group A, be deemed good and sufficient;

(2)     That there be judgment in favor of LNA, dismissing the "Suit for Damages, Trial by Jury", "First Supplemental and Amended Complaint", "Second Supplemental and Amended Complaint", "Third Supplemental and Amended Complaint", "Fourth Supplemental and Amending Complaint", "Fifth Supplemental and Amending Complaint", and "Sixth Supplemental and Amended Complaint" of Plaintiffs, Ethel Mumford, individually and on behalf of Group A, with prejudice, at plaintiffs' cost; and

(3)     If plaintiffs are entitled to judgment, said judgment be solely against third-party defendants the United States of America, the Board of Commissioners of the Port

of New Orleans, and/or the Southeast Louisiana Flood Protection Authority –
East, and not against LNA;

(4)    If LNA should be found liable unto plaintiffs, then LNA be granted indemnity,
recovery over, and/or contribution against third-party defendants the United States
of America, the Board of Commissioners of the Port of New Orleans, and/or the
Southeast Louisiana Flood Protection Authority – East, in the full amount of said
liability, together with interest, expenses, costs, and attorneys' fees incurred in the
defense of this action; and

(5)    For all other general and equitable relief that the law and nature of the case may
allow.

Respectfully submitted,

/s/ Parker Harrison
Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
Parker Harrison (#27538)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone: (504) 598-2715

John D. Aldock
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC 20001

Telephone:  (202) 346-4240

***Attorneys for Lafarge North America Inc.***

## Certificate of Service

I do hereby certify that I have on this 14th day of November, 2007 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic notification, facsimile transmission, or by mailing the same by United States mail, properly addressed, and first class postage prepaid.

/s/  Parker Harrison