## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: ALL LEVEE | § | |
| ALL MR-GO | § | |
| | § | |

## MEMORANDUM IN SUPPORT OF MOTION FOR STAY OF ALL CASES APART FROM BARGE, ROBINSON, AND THE LEVEE AND MRGO MASTER CLASS ACTION COMPLAINTS

## INTRODUCTION

This memorandum is filed in support of defendant United States's motion for an administrative stay or administrative closing (hereinafter "stay") of litigation on all complaints including third party complaints, cross claims, counterclaims, *etc*. (hereinafter "complaints") brought under the Federal Torts Claims Act (FTCA) or in Admiralty against the United States and categorized as "Levee" or "MRGO."  This motion does not include the superceding Master Class Action Complaints and *Robinson v. United States*, C. A. No. 06-2268, filed April 25, 2006 (E. D. La).  The proposed stay is meant to cover the wave of new individual and class action complaints prompted by the filing deadline for complaints under the Admiralty Extension Act

(which has since been held inapplicable), as well as all other individual and class action complaints under the FTCA that have been or may be filed and served in the *In re: Katrina Canal Breaches Consolidated Litigation* (hereinafter "*In re: Katrina*") and relating to either "Levee" or "MRGO." This administrative treatment of these cases is appropriate because all of the complaints involving "Levee" and "MRGO" filed under the FTCA in *In re: Katrina* involve the same basic allegations as those in the Master Class Action Complaints or *Robinson*. This stay is requested to remain in effect until after the completion of the trials and exhaustion of appeals on issues of common liability. As explained in detail below, proceeding with the myriad of new cases while numerous other cases involving the same issues of fact and law are currently being litigated, creates an undue hardship on the United States, while a stay does not prejudice any other party. Moreover, staying these newly filed complaints until the currently progressing litigation is resolved should result in efficiencies to all parties, including the Court, by enabling many, if not all, of the questions of fact and law to be resolved, thereby simplifying the issues and potentially benefitting future cases.

## **BACKGROUND**

All cases that involve "common issues of law and fact involving the cause and effect of the innundation by water of the Greater New Orleans area during Hurricane Katrina on August 29, 2005 and immediately thereafter" are consolidated in this Court under *In re: Katrina*. Rec. Doc. 3299 at 1. The Court has divided these cases into categories**,** four of which currently implicate the United States: Levee, MRGO, Barge, and Responder. Additionally, *Robinson* also is ongoing. The complaints and amended complaints that the United States seeks to stay fall

under the Levee and MRGO categories.

The United States is currently named as a defendant in over 300 complaints (in addition to over 45 remanded or dismissed cases) brought under the *In re: Katrina* umbrella.  At the end of August 2007, in anticipation of the statutory deadline for filing complaints containing allegations under the Admiralty Extension Act (AEA), approximately 270 suits were filed under both the FTCA and the AEA naming the United States as a defendant.  The allegations in the unanswered complaints are substantially similar, if not identical, to complaints previously filed and answered or pending motion for dismissal.   At this time, there are approximately 275 complaints alleging jurisdiction under the FTCA where the United States is a named defendant[1] in which it has neither answered nor moved to dismiss.  Of these 275 cases, 58 have been served to date.  These cases are a mixture of individual suits and class actions and do not appear to have been incorporated into the superseding Levee and MRGO Master Class Complaints.  Thus far, the United States has responded through answer or motion to dismiss to more than twenty pending complaints with similar FTCA allegations, but that number will necessarily increase, considering the number of cases filed and continuing to be filed.

Of these complaints, the United States originally filed answers to the two Master Class Action Complaints in Levee and MRGO and for several other complaints under the *In re: Katrina* umbrella.  *See, e.g.,* Rec. Doc. 3622 (Master Levee); Rec. Doc. 3634 (Master MRGO); Rec. Doc. 3640 (Robinson); Rec. Doc. 7151 (Douville); Rec. Doc. 7332 (Richardson) and Rec. Doc. 7478 (Bealer).  Answers to complaints with similar FTCA allegations have also been filed

---

[1] A few of these cases appear not yet to have been consolidated.

in the "Barge" category.  *See* Rec. Doc. 7479 (Parfait 07-3500); and Rec. Doc. 607 in 05-4419 (Several of Lafarge North America's Third Party Complaints).  The Court has ordered the United States to answer Lafarge's remaining complaint, third-party complaint and cross claim at the appropriate time after service.

## <u>ARGUMENT</u>

**A.  <u>It is within the Court's discretionary power to stay these cases.</u>**

A district court has broad discretion to stay cases when proceedings in another matter involve similar issues.  *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  The discretion to stay proceedings derives from "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants." *Id.*  The parties in the matters at issue need not be the same.  *Id.*  The stay requested here also is a recommended  case management technique.  Manual for Complex Litigation (4th), section 22.314 ("a court may stay or defer decisions in the cases before it until more advanced cases or dispositive motions pending in other courts are concluded").  Certainly, the same technique should be applied whenever appropriate when all cases are in the same court.

In considering a motion to stay, the court weighs the competing interests of the parties affected by the stay.  These competing interests include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (*citing Landis v. North American*

*Co.*, 299 U.S. 248, 254-55 (1936)).

All of the *In re: Katrina* complaints alleging jurisdiction under the FTCA involve whether the United States is liable in tort for the planning, design, construction, and maintenance of the hurricane protection system in the greater New Orleans area.

To prevent needless duplication of discovery, including witness depositions and written discovery requests, and to promote efficiency, the Court set time limits and limits on the amount of discovery.[2]  Case Management and Scheduling Order No. 4 (hereinafter "CMO 4") governs all pretrial matters in the Levee and MRGO case categories**,** including class certification and common liability issues, discovery, motions practice, and trial preparation. CMO 4 binds all parties under the *In re Katrina Canal Breaches Consolidated Litigation* (who are not also parties to other open matters) to the common liability issues discovery plan prescribed by that Order.  Rec. Doc. 3299 at 19-20.

Under CMO No. 4, the United States is subject to intensive discovery and briefing schedules and has worked diligently to meet all deadlines imposed by the Court.  In the "Levee" and "MRGO" categories, the United States has already responded to hundreds of interrogatories and discovery requests, taken discovery of plaintiffs, and filed countless motions and responses to motions.   Regarding discovery production, as of October 12, 2007 the United States had produced 995,956 pages of documents and 832 gigabytes of electronically stored information

---

[2] Discovery in the Levee and MRGO categories are governed by CMO No. 4.  *See,* Rec. Doc. 3299.  CMO No. 4 therefore covers the complaints subject to this Motion to Stay.

("ESI").  Consequently, the relevant documents and ESI currently are already being collected and produced.  Thus, discovery against the United States is being preserved.

**B.  The current posture of the ongoing litigation supports a stay.**

There are several motions pending before the Court that could substantially narrow the issues to be litigated against the United States.  The United States moved to dismiss the Superseding Master Levee Consolidated Class Action Complaint and awaits a ruling as to whether the Flood Control Act of 1928, 33 U.S.C. § 702c, affords the United States immunity, and whether the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), bars the count regarding negligent granting of dredging permits.  The United States has also moved to dismiss third-party claims in several Barge cases (Rec. Doc. 7730).  *Robinson* is being briefed as scheduled seeking summary judgment on immunity grounds under the Flood Control Act.  Likewise, the United States has moved to dismiss ten suits in the Levee category on Flood Control Act immunity grounds, and awaits this ruling.  *See* Rec. Doc. 6646.

**C.  A stay is necessary to prevent undue hardship and wasted resources.**

The United States is subject to undue hardship in tracking and responding to the overwhelming amount of newly filed complaints.  At the same time the United States is continuing to comply with its discovery obligations established under existing CMOs and continuing to prepare its defenses in the postponed class certification proceeding and upcoming trials on common liability issues.  The United States is inundated with complaints and amended complaints that must be answered.  Indeed, some complaints have been amended a number of times with each motion to amend rating an opposition.  In one instance, plaintiffs have amended

their case twelve times.  The complaints addressed in this motion all involve the same issues as complaints previously filed and answered.  The United States will be expending an extraordinary amount of time and resources addressing each and every allegation in each newly filed complaint.  Although all of these answers provide the same information as answers already filed, it takes a great deal of time and effort by attorneys to prepare them individually.  All of the unanswered complaints at issue in this motion fall within the Levee or MRGO categories, for which master answers have already been filed.[3]

Additional motion practice that likely will arise out of the new cases would further unnecessarily strain the United States's resources and will place an undue burden on its Army Corps of Engineers and litigation personnel who are currently helping the United States  prepare its defense in *Robinson* and in the common liability tracks in "MRGO" and "Levee" which are already being litigated under the *In re: Katrina* umbrella.  If the cases addressed here are allowed to go forward on many different tracks, the resulting discovery required would add many additional permutations to the complexities involved in this matter.  Such redundancy of motions and discovery would contravene the Court's goal to control "the scope and extent of discovery" and to resolve efficiently the common liability issues for all parties under the consolidated cases. *See* Rec. Doc. 3299 at 19-20.  The additional filings associated with these new complaints and amended complaints no doubt puts a strain on the Court's resources as well in a docket that already exceeds 9,000 entries.

---

[3]  The amended Levee Master has not been answered as a motion to dismiss is pending regarding that matter

**D.  A stay does not prejudice or present tactical disadvantage to any plaintiffs or potential plaintiffs.**

Staying the unanswered complaints does not prejudice any party.  CMO 4 contemplates administrative closing of cases:

> All parties to these consolidated cases, including all parties to any administratively closed matter within the *In Re Katrina Canal Breaches Consolidated Litigation* who are not also parties to other open matters,
>
> shall be bound by all common liability issues discovery and will not be permitted to duplicate any discovery in the event a closed case is reopened.

CMO 4 at pp. 19-20.  At this stage in the *In Re: Katrina* litigation, numerous answers have been filed.  The allegations and issues in the complaints substantially overlap and present redundant questions of fact and law and redundant parties to proposed class actions to some extent. Further, discovery in the pending cases is well underway.  The Court, in CMO 4, set the limits for scheduling and volume of discovery.  Any additional parties under these tracks are bound by those limits.  *See* Rec. Doc. 3329.  Because the allegations and issues currently being litigated are essentially the same as those in the unanswered complaints, and fall within CMO 4, no parties are disadvantaged from an evidentiary standpoint if a stay is granted.  All evidence relevant to claims of common liability against the United States is being produced pursuant to CMOs 4 and 5, and depositions of key witnesses are proceeding.  Consequently, all evidence from the United States is being preserved to the full extent possible.

The relief sought by plaintiffs in  *In re: Katrina* is limited to money damages.  Although staying the newly filed cases may delay any such potential recovery, this is not a basis to deny a stay.  *See e.g.*, *CMAX, Inc. v. Hall*, 300 F.2d 265, 268-69 (9th Cir. 1962) (holding that possibility

of delayed money damages from CMAX's claim of underpayment is not sufficient irreparable harm to overturn stay).  Additionally, the common liability tracks that are ongoing are already bifurcated from damages. Consequently, damages discovery and proof are already stayed.

**E.  A stay will result in simplifying the factual and legal issues to be litigated, thereby avoiding waste of duplication.**

The Fifth Circuit adheres to the "first to file" rule, that is, "the court in which the case was last filed may refuse to hear it if the issues raised by the case substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 603 (5th Cir. 1999) (citations omitted); *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (citations omitted)(same). The purpose of the first to file rule is "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *West Gulf Maritime Assoc. v. Ila Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).  Although all of the cases in *In re: Katrina* are in the same court, staying the unanswered complaints until disposition of the cases currently being litigated will serve the purpose of the first to file rule by narrowing the issues to be adjudicated, thereby avoiding waste of duplication in the litigation process.[4]

For the "first-to-file" rule to apply, neither the parties nor the issues in the case need to be identical to the original suit so long as there is a "substantial overlap." *Save Power*, 121 F.3d at 951 (noting substantial overlap should be determined on a case-by-case basis) (citation omitted).

---

[4] One exception to all cases being filed in the instant Court is *Bealer v. United States*, C.A. No. 07-3612 (E.D. La.), which is filed in Judge Ivan L. R. Lemelle's court.  The United States is preparing a motion to transfer.  Plaintiffs' counsel in that case has stated there is no objection to transfer.

As explained above, the factual and legal issues in the *In re Katrina* cases substantially overlap. Staying the "Levee" and "MRGO" complaints brought under FTCA, apart from the respective Master Class Action Complaints will enable resolution of the factual and legal issues currently under consideration by the Court.  Such issues include class certification, and immunity under the Flood Control Act and the discretionary function exception to the Federal Tort Claims Act. Resolution of these matters will clarify the issues to be litigated in the subsequent cases, and could narrow the scope of this litigation drastically, thereby avoiding waste of duplication in litigation, benefitting all parties involved.

## **CONCLUSION**

For the foregoing reasons, defendant United States of America's Motion for Stay should

be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

PHYLLIS J. PYLES
Director
Torts Branch, Civil Division

JAMES G. TOUHEY
Assistant Director
Torts Branch, Civil Division


 /s/ Richard R. Stone                                
RICHARD R. STONE, SR.
Senior Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
Post Office Box 888
Benjamin Franklin Station
Washington, D.C.  20044
(202) 616-4400 / (202) 616-5200 (Fax)
Attorneys for the United States of America

Dated: November 15, 2007

**CERTIFICATE OF SERVICE**

I, Richard R. Stone, Sr. hereby certify that on November 15, 2007, I served a copy of the United States's Motion for Stay of All Cases Apart from Barge, Robinson and the Levee and MRGO Master Class Action Complaints; Memorandum in Support of the Motion, and Notice of Hearing, and Proposed Order  upon all parties by ECF.

  /s/ Richard R. Stone
 RICHARD R. STONE, SR.