UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE: KATRINA CANAL BREACHES  *       Civil Action No. 05-4182
                               *       Consolidated Litigation
_____*       REF 07-5528K
                               *
PERTAINS TO:                    *       Section "K"
RECORD DOCUMENT # 8319, 8593   *
                               *       New Orleans, Louisiana
* * * * * * * * * * * * * * *   *       November 14, 2007



MOTION TO REMAND HEARING,
BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.,
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For Plaintiffs                  Fayard & Honeycutt
Louisiana State:                By:  CALVIN C. FAYARD, JR., ESQ.
                                519 Florida Boulevard
                                Denham Springs, Louisiana 70726

                                Dudenhefer Law Firm, LLC
                                By:  FRANK DUDENHEFER, JR., ESQ.
                                601 Poydras Street, Suite 2655
                                New Orleans, Louisiana 70130

                                State of Louisiana
                                Office of the Attorney General
                                Consumer Protection Section
                                By:  ISABEL WINGERTER, ESQ.
                                1885 North 3rd Street
                                Baton Rouge, Louisiana 70802

                                New York University School of Law
                                By:  SAMUEL ISSACHAROFF, ESQ.
                                40 Washington Square South, 411J
                                New York, New York 10012

2

**APPEARANCES CONT'D.**

```
For Defendant Insurers:        Lugenbuhl, Wheaton, Peck,
                                Rankin & Hubbard
                               By:  RALPH S. HUBBARD, III, ESQ.
                               601 Poydras Street, Suite 2775
                               New Orleans, Louisiana 70130


For Defendants                 Barrasso, Usdin, Kupperman,
Allstate, Marine Mutual,        Freeman & Sarver, LLC
Metropolitan:                  By:  JUDY Y. BARRASSO, ESQ.
                               LL&E Tower
                               909 Poydras Street, Suite 2400
                               New Orleans, Louisiana 70112


For Defendant                  Stone, Pigman, Walther, Wittmann
State Farm:                    By:  WAYNE J. LEE, ESQ.
                               546 Carondelet Street
                               New Orleans, Louisiana 70130


For Defendant Electric         Middleberg, Riddle & Gianna
Insurance Company:             By:  ALAN D. WEINBERGER, ESQ.
                               Place St. Charles
                               201 St. Charles Avenue
                               31st Floor
                               New Orleans, Louisiana 70170


Court Audio Operator:          Bonnie G. Hebert

Transcriptionist:              Dorothy Bourgeois
                               c/o U.S. District Court
                               500 Poydras Street, Room C151
                               New Orleans, Louisiana 70130
                               (504) 589-7721
```

Proceedings recorded by electronic sound recording,

transcript produced by transcription service.

3

# I N D E X

| EXHIBITS: | Marked | Received |
|---|---|---|
| Class Action Appendix Attachment | 83 | 83 |

4

1               P R O C E E D I N G S

2              (Wednesday, November 14, 2007)

3                (Call to Order of the Court)

4         THE COURT:  Good morning.

5     (All Counsel respond, "Good morning, Your Honor.")

6         THE CLERK:  Are you ready for me to call the case?

7         THE COURT:  Yes.

8         THE CLERK:  This is Civil Action 05-4182, *In Re:*

9  *Katrina Canal Breaches*, Consolidated Litigation.  This hearing

10 pertains to Road Home Case, State of Louisiana and Civil Action

11 Number 07-5528 dealing with Motion to Remand Document Number

12 8319 and Motion to Remand regarding MMTJA, Document Number

13 8593.

14         THE COURT:  Do you want to make your appearances?  I

15 know everybody has signed in, but those who are going to be

16 appearing.

17         MR. HUBBARD:  Ralph Hubbard appearing as liaison

18 counsel for the Defendant insurers.

19         MR. LEE:  Wayne Lee here on behalf of Defendant State

20 Farm, but arguing as part of the collective group for the

21 Defendants.

22         MS. BARRASSO:  And Judy Barrasso here for the

23 Allstate, Marine Mutual and Metropolitan, arguing as liaison

24 counsel also.

25         MR. FAYARD:  Calvin Fayard appearing as liaison

 1   counsel for the Road Home litigation, Your Honor, together with

 2   -- make your appearance, please.

 3           MR. DUDENHEFER:  Frank Dudenhefer for the Attorney

 4   General.

 5           THE COURT:  Thank you.

 6           MR. ISSACHAROFF:  Samuel Issacharoff for the State of

 7   Louisiana.

 8           THE COURT:  Thank you.

 9           MS. WINGERTER:  Isabel Wingerter for the Office of

10   the Attorney General.

11           THE COURT:  Thank you.  Maybe before you start, the

12   Court is going to go on a little monologue, soliloquy, whatever

13   you want to call it; and it may or may not affect your

14   arguments, it probably should but it may not.  This is not

15   necessarily syllogistically correct.  That is, if this were a

16   syllogism the logic may not be perfectly placed, but I'm just

17   going to -- it may be a little random.

18           One:  It is the Court's impression at this point that

19   if the State brought an action individually in its own interest

20   in state court against parties who are citizens of another

21   state, the court would have no jurisdiction because the State

22   is not a citizen.  There would be no diversity.

23           Two:  If the State brought a case based on federal

24   jurisdiction it would be removable because the Court finds --

25   and I haven't found yet -- the Court is inclined to find that

1    sovereign immunity/Eleventh Amendment did not preclude removal

2    based on the great weight of the case law in every appellate

3    case that I've read.  The Moore case is an outlier because

4    Steele case has been, at least part in my mind, abrogated by

5    the Ninth Circuit in Dynegy.

6            So, let's see what confounds and what wrinkles we

7    have here.  We have now a suit that is in brief called a parens

8    patriae suit.  It's also labeled as a class action, which gives

9    it a sort of hybrid quality in my mind.  The class action

10   evoked the specter of, from the Plaintiff's standpoint, of

11   CAFA, since the Plaintiffs don't want to be here and CAFA

12   places them here.  Once they made this a class action, it

13   became interesting.  Had it just been filed as a parens patriae

14   case, we might have had a removal based on the allegation that

15   it was a camouflaged class action, but nonetheless, it would

16   have been a little more subtle case.  It is now called a class

17   action, so I'm looking at it as such.

18           I find that -- I'm inclined to find -- please, this

19   is not my rulings, excuse me.  I am inclined to find that CAFA

20   applies to the status of Plaintiff in a class action.  Clearly,

21   it states as a Defendant the Eleventh Amendment, CAFA

22   recognizes, I'm sure through the Eleventh Amendment, that

23   this would be involved and it's not amenable to being here

24   as a Defendant under CAFA, and it specifically says so in

25   CAFA.

1          Further, the amendment to make this clear was

2    defeated, and despite Senator Grasso's remarks, we have Senator

3    Hastert's remarks and the text of the statute.  I'm just saying

4    what I'm inclined to think.  There is no case yet.  There will

5    be, and again, we'll be plowing some more new ground.  I have

6    read a lot of cases and there was a great Kentucky case that

7    was cited in October of 2007.  I don't know if any of you --

8    I'm sure some of you have read it.  I'm trying to remember the

9    name of it.  It talked about the Hood case.

10          What was that, the Commonwealth of Kentucky versus

11   Marathon Petroleum, 2000 Westlaw 2900461, a very interesting

12   case, very well written and comprehensive.  And I'll tell you

13   where I'm going in my thinking here.  I have tried to analyze

14   this complaint and figure out what the heck it really is.  Is

15   it parens patriae?  Does parens patriae allow -- and I may not

16   be pronouncing the Latin correctly.  Does it allow suits for

17   breach of contract, because really, that's what this is, and

18   rather than an antitrust scheme or a consumer scheme, is it

19   really parens patriae?

20          But more importantly, and I'm going to ask the

21   Plaintiffs some questions about this and I suggest that they be

22   very precise in their answers, because I'm trying to figure out

23   what this complaint really is seeking, and I'm not going to be

24   coy.  I think this case boils down to who is the real party-in-

25   interest.  If the State is the real party-in-interest, it gets

1   remanded.  This is my thinking.  If the State is not the real

2   party-in-interest, then CAFA applies, there's minimal diversity

3   and it stays here.  And so, I need candid answers.

4          As I read the case, and let me just -- as I read the

5   complaint, the class is -- and by the way, the fact that this

6   could ever be certified as a class action at least in this

7   jurisdiction is the old snowball.  You've got a myriad of

8   different insurance contracts, a myriad of -- I'm a little

9   confounded by the class action allegations, to be frank with

10  you, because you can bring a parens patriae if that's what it

11  really is without the class action.  It has been done many

12  times on behalf of people who actually are recipients.  So that

13  once you name it a class action, it may be a different animal.

14         All right, but what I wanted to read to you, if I can

15  find it real quickly, here is the class:  All current and

16  former citizens of the State of Louisiana who have applied for

17  and received or will receive funds from the Road Home Program,

18  and who have executed or will execute a subrogation or

19  assignment agreement in favor of the State, and to whom

20  insurance proceeds are due and owed for damages sustained to

21  any such recipients residence as a result of any natural or man

22  made occurrence associated with Hurricanes Katrina and/or Rita

23  and under any policy of insurance as pled and for which the

24  State has been or will be granted or be entitled to recover as

25  repayment or reimbursement of funds provided to any such

1    recipient through the Road Home Program.

2           Clearly, that I have this, if for the sake of

3    argument, assuming that this is a class action; even though it

4    says it is, that doesn't mean it is.  And just because it says

5    it's a -- and because they argue it's a parens patriae action;

6    it doesn't mean it is.  What is it?  What is it, really?  My

7    point is, is anybody -- and I can't quite figure it out here --

8    but it looks to me like this is just a subrogation claim

9    brought by the State against everybody who received or will

10   receive money from the Road Home Plan by virtue of their

11   assignment.

12          And if that's the case the State is the real party-

13   in-interest and the class is -- I'm not sure that the class

14   gets anything.  I'm not sure that the class receives a dime.

15   They have assigned their proceeds to the State; that's who the

16   class is, recipients of Road Home money.  I am not -- I don't

17   know all the intricacies of the Road Home Program, but what

18   does that mean?  That is it really involves I opted for the

19   Road Home, I assigned my insurance proceeds to the State.  The

20   State has got a right to get them.  And we've probably had

21   settlements in this court and other courts where Road Home --

22   well, I'm not sure whether it got its money or not.  I guess we

23   have to set up a protocol about that, because we have class

24   actions pending in this court by some of the same -- which seek

25   to recover monies for these persons.

1          So I mean it's a hornet's nest in my mind, this whole

2    thing, from a Court administration standpoint since we have

3    pending class actions:  Where did the money go?  It's all about

4    the money.  So, I guess what I want to know is, here: Where

5    does this money go?  If the money all goes to the State, the

6    class action is -- there is no class action.  If it's the State

7    saying:  I want a declaratory judgment all against these

8    insurance companies on behalf of all recipients now and in the

9    future, and that I have standing to seek to recover any claim I

10   have against them, because I'm owed money by virtue of these

11   assignments.  Now, it's a double edged sword.

12          If I remand this, I would say that this is not a

13   class action, it's the State seeking money for itself, no

14   minimal diversity, and it goes back to state court, because

15   it's not a class action.  It may not even be a parens patriae

16   action; it's simply the State wanting money based on a

17   contract.

18          But those are my -- and I've read -- let me just say

19   this:  On the Eleventh Amendment, if you want to get it on the

20   record -- and furthermore, I am going to find -- I'm very

21   persuaded that the exceptions don't apply.  The only exception

22   that might apply would be the local controversy exception.

23   Number five kicks it out, there are similar suits pending.  You

24   can argue all day long; that's what I think.  And so, you've

25   got a real uphill battle Plaintiffs convincing me that this is

1   not similar.  Whether it's parens patriae, a class action to

2   the other suits, the word "similar" would have to be written

3   out in the statute.  That's just what I feel right now, and I

4   hate to be taking the wind out of the sails of your arguments

5   now, but I think you're entitled to know what I think, because

6   I've spent a lot of time thinking about it.

7        Now, I'm always subject to being convinced, but I'm

8   just telling you where your uphill battles are, where the holes

9   are.  And Defendants I'm telling you, I'm concerned who the

10   real party-in-interest is, and Plaintiffs.  To me, this is a

11   real party-in-interest case.  Clearly, if the State is the real

12   party-in-interest, there is no minimal diversity.

13        Oh by the way, on the <u>Terrebonne Parish School Board</u>

14   case, the little case you cited there, that was mine, that I

15   lost here in federal court, before Judge Duplantier, my dear

16   friend.  So, I'm somewhat familiar with the issue, for a while.

17   With all of that, and when I say that was mine; that was mine

18   as a lawyer before I took this lovely job.

19        But anyway, with all of that said, and I know that

20   lawyers like to argue their case.  Believe me, I was one, I'd

21   love to be -- I would like to be arguing this one.  It would be

22   fun.  But I think you are entitled to know what, it's me you're

23   supposed to persuade and that's what I'm thinking.

24        Okay, who is first?  Who is up?

25        MR. FAYARD:  Good morning, Your Honor.

1          THE COURT:  Yes, sir.

2          MR. FAYARD:  In anticipation of questions presented

3   by the Court which generally are to the heart of the pleadings,

4   we have divided our argument, hopefully in a manner which will

5   help respond to and answer the questions the Court has so aptly

6   presented to us.  So, it's my job to lay that out a little bit

7   to Your Honor and then hopefully, we'll have some time to clean

8   up if our game plan has not been shot down totally during the

9   argument process.

10          THE COURT:  This case is sufficiently significant

11   where I'm going to give you hopefully enough time until we all

12   start saying the same thing.

13          MR. FAYARD:  Thank you, Judge.

14          THE COURT:  Go ahead.

15          MR. FAYARD:  Mr. Hubbard and I consulted and I can

16   assure you we won't be saying the same thing, but on our side

17   we may.  We thought maybe 30 to 45 minutes might do it for each

18   side.  We will try to adhere to that, that rule.

19          THE COURT:  That's a good one.

20          MR. FAYARD:  First, Professor Sam Issacharoff will

21   address the constitutional issues and other questions that

22   might come up along those lines.  Isabel Wingerter from the

23   AG's office, Assistant Attorney General, will address the

24   position of the Attorney General and point out the important

25   aspects of this case as it carries implications far beyond this

1    particular action.  And Mr. Frank Dudenhefer will address CAFA

2    and direct questions with respect to the Road Home Program,

3    along with myself.  So with that, Your Honor, we'll get started

4    unless there are any questions?

5         THE COURT:  No, sir.

6         MR. FAYARD:  Professor?

7         MR. ISSACHAROFF:  Good morning, Your Honor, Samuel

8    Issacharoff for the Attorney General's Office.  It's a pleasure

9    to be here in this capacity.  I fear that the wind has long

10   since passed my sails, since most of the points that I had

11   hoped to argue have already been taken up by the Court, and in

12   terms quite familiar to the way we had anticipated the issues

13   being joined.

14        I would like to answer the real party-in-interest

15   question directly, because I think that that's the heart of how

16   the Court sees it and I think that that also gets to the heart

17   of the constitutional question about why CAFA cannot be the

18   source of removal on this point.  The question is whether the

19   State is a real party-in-interest, and Rule 17 of the Federal

20   Rules of Civil Procedure has been interpreted for quite some

21   time to recognize that there are multiple parties-in-interest

22   in many cases, and the question for being a real party-in-

23   interest is simply one whether there is substantial recovery

24   sought by the particular plaintiff.

25        In this case there are 180,000, roughly, Louisiana

1    domiciliaries who have sought recovery through the Road Home

2    Program.  They have applied for benefits from the State.

3    Upwards of 60,000, I believe the last number was 68,000, have

4    received benefits through the Road Home Program.  The estimates

5    are that there will be roughly $8 billion in claims paid out by

6    the State of Louisiana in the Road Home Program.  Already, the

7    figure is in excess of $2 billion.  I don't have the exact

8    figure, but it is in the billions of dollars.  It is

9    inconceivable under any real party-in-interest case that I am

10   aware of, that the State of Louisiana is not a real party-in-

11   interest here.  It is seeking to recover billions of dollars

12   that it has paid out with the anticipation of billions more to

13   come.

14         It has paid this money to private individuals from

15   whom it has no capacity to recover; it has not sought recovery

16   from them and will not seek recovery from them.  It is simply

17   an exchange for subrogation interest against the insurance

18   policies.  So, I think in this case there is no question that

19   the State is a real party-in-interest in the most conventional

20   sense of that term.  It is seeking to recover billions of

21   dollars of its own money.

22         THE COURT:  I certainly concur with you, absolutely,

23   the State is a real party-in-interest.

24         MR. ISSACHAROFF:  Now, the question is whether the

25   individuals, the insurers, are also real parties-in-interest,

1    and that's a more complicated question and that is why this

2    case was fashioned as the State seeking recovery on its own

3    behalf through its subrogation interest and the State seeking

4    to protect the interests of its citizens through its parens

5    patriae authority and on behalf of the individuals as class

6    members.  And the reason is that the State program, the Road

7    Home Program, allows individuals to recover up to $150,000 on

8    their insurance policies from that State.  That is the

9    subrogation interest is capped at $150,000.

10            There are many individuals whose insurance is in

11   excess of $150,000 and there are also aspects of the insurance

12   policies of these individuals that is not included in the Road

13   Home Program such as personal belongings.  And so, there are

14   residual personal interests on behalf of these individuals and

15   I will see to my Louisiana colleagues the specific arguments

16   about the authority of the State to protect the economic

17   integrity and the welfare of its citizens through its parens

18   patriae power, but the State is also seeking to protect the

19   interests of these individuals beyond that which has been

20   compensated through the Road Home Program.  That is the reason

21   for the complicated pleading arrangement that the Court --

22            THE COURT:  But doesn't that make them, then, real

23   parties-in-interest as well?  That is the individual, since

24   it's moot, it seems to be from what you're arguing, you're

25   seeking money not only for the State but for the individuals?

1        MR. ISSACHAROFF:  No.  Your Honor, actually, we're

2   not seeking money for the individuals.  We are seeking

3   declaratory and injunctive relief against the Defendants as to

4   the coverage provided by the underlying policies.  And the

5   State has not sought to stand in the shoes of these individuals

6   for purposes of their monetary recovery, but rather has sought

7   to make them bound by -- efficiently bound by the same judgment

8   that this Court might, or hopefully the state court will

9   render.

10        THE COURT:  I see.  So, I understand your argument,

11   but let me make sure I do.  You're arguing that, yes, we're

12   seeking some relief on behalf of the citizens, but the relief

13   is not monetary?

14        MR. ISSACHAROFF:  That is correct, Your Honor.  There

15   is no request in the complaint in the petition, as I read it,

16   which seeks specific monetary recovery for individuals.  It

17   seeks declaratory and injunctive relief on their behalf, so

18   that they may be the beneficiaries of any ruling as to the

19   applicability of these policies by Louisiana courts under

20   Louisiana law.  And so, the reason to fashion it as a class

21   action is simply to have an efficient binding of everyone to

22   the same common disposition of the case.  That's one of the

23   classic reasons why we have class actions under, were it in

24   federal court --

25        THE COURT:  Well, a lot of the parens patriae cases -

1   - in fact all of them that I read, were not class actions

2   because they were brought on behalf of the State on its own

3   behalf and for the benefit of its citizens.  In some cases

4   where it was clear that there would be a financial interest on

5   the part of the citizens, but it wasn't a class action, at

6   least as we understand it where you would have certification

7   hearings; you're going to typicality, all of the things that

8   Rule 23, at least in federal court, implies.  So, it makes it -

9   - it throws a little twist into this, at least the parens

10  patriae cases that I've read.

11           I have never read -- I have read none where it was a

12  class action brought by the State.  The State in essence was

13  bringing it on behalf of, but it was a different animal, but I

14  digress.

15           MR. ISSACHAROFF:  Your Honor, it will not surprise

16  the Court at this point in the proceedings to learn that this

17  case has some unique features to it.

18           THE COURT:  No question, no question.

19           MR. ISSACHAROFF:  And the --

20           THE COURT:  But what I'm saying is it could have been

21  brought as a parens patriae action, perhaps.  The other side

22  will argue, and probably very well, that it's not a parens

23  patriae action.  But it could have been brought and gotten the

24  same relief without labeling it a class action.

25           MR. ISSACHAROFF:  Well --

1            THE COURT:  In my mind, at least it seems to be.

2            MR. ISSACHAROFF:  Well, let me perhaps --

3            THE COURT:  I'm not quite sure why it was called a

4    class action, unless it was simply for the attorney's fees

5    provision in a class action.

6            MR. ISSACHAROFF:  Let me suggest to Your Honor that

7    there are other reasons, and let me suggest why this case may

8    be different than the typical parens patriae recovery.

9            THE COURT:  All right.  I'm listening.

10           MR. ISSACHAROFF:  In a parens patriae case, let's

11   take the simplest type of case, a Clayton Act provision brought

12   pursuant to the Hart Scott Redino statutory grant of parens

13   patriae authority.  In those types of cases the interest of the

14   class members, that is the interest of the affected citizens,

15   is co-terminus with the State's claim.  If the State says there

16   has been an overcharge on some product and it's a violation of

17   antitrust and goes into court to enforce that, the amount of

18   the overcharge is the amount of the State's interest.  There is

19   no interest beyond that.  The State does not have a direct

20   financial interest in the benefits that are coming to the

21   affected citizens unless the State also has purchased gasoline

22   or whatever the substance --

23           THE COURT:  Yes.

24           MR. ISSACHAROFF:  -- the commodity in question might

25   be.

1         THE COURT:  Yes.

2         MR. ISSACHAROFF:  In this case the problem is that

3    the State is asserting a parens patriae claim that is only

4    partial to the interests of the class members.  That is that

5    the State's interest in this case goes only to the extent of

6    the subrogation interest that the State has directly and to the

7    additional claims for injunctive and declaratory relief.  The

8    State is not seeking, in any form, financial compensation to

9    the individuals.  That is the matter of insurance adjustment

10   pursuant to whatever the final declaratory injunctive relief

11   might be.

12         In that circumstance, Your Honor, it would be a

13   partial ruling if the individual claimants did not have their

14   rights, their full contractual rights under the insurance

15   policy, subsumed in the case and if they were not subject to

16   the final disposition of that action by the state court.  That

17   is the reason that it was filed as a class action.  It is

18   possible to sever it, Your Honor.  It is.  That is a

19   possibility that the Court has.  The Court could conceivably, I

20   think quite properly, decide that it would send back that

21   portion that is the State seeking its own subrogation interests

22   and the parens patriae and retain jurisdiction over the private

23   claims under the class action, whatever the residual claims

24   are, and then we would ask the Court to defer ruling until the

25   Louisiana courts have interpreted the provisions for the State.

1    That is a possibility.

2           But the reason that this was done when this was

3    brought in state court, was to create an integrated mechanism

4    for the resolution of all of these legal claims at one

5    instance.  And that's the reason that the State created this

6    hybrid, because of the unusual situation where the State has

7    acquired, as it were, the partial contractual interest of the

8    insureds under the relevant insurance policies.

9           THE COURT:  And the Court does have class actions

10   pending here virtually on all of the issues.  I'm not sure how

11   it all meshes, but I'm also thinking from a judicial economy

12   and administration aspect.  But nonetheless, we're talking

13   about jurisdiction now, so that's my primary focus.

14          MR. ISSACHAROFF:  Right.  So, just to finish that

15   out, Your Honor.  If the Court were to retain just the private

16   class action part of it that would no doubt be integrated into

17   the administration of the other Katrina class actions that are

18   pending before the Court.  The question, I think the critical

19   question here is whether the fact that the State sought not

20   only to sue on its own behalf, and not only to seek the parens

21   patriae style injunctive and declaratory relief, but also to

22   provide a mechanism for the private citizens to assert their

23   claims through one consolidated litigation.  Whether that

24   somehow gives -- requires that the entire matter be brought

25   into federal court.

1          And on that score, Your Honor, I think that it's

2    important to recognize what the State is doing here.  This is a

3    case where the State is seeking to enforce its own laws in its

4    own courts, against out of state business entities that have

5    voluntarily chosen to do business in the State of Louisiana.

6    There is the enormity of what is before this Court if this

7    Court retains jurisdiction, should be cleared, and I think that

8    it was clear from the opening comments of the Court from the

9    initial colloquy from the bench.

10         But it's important to highlight that it has been over

11   200 years, not since Chisholm versus Georgia that a state has

12   been forced to enforce its own rights under its own laws in

13   federal courts; a 200 year period in which no state has ever

14   been forced to litigate a state law claim against its will in

15   federal court.  Now, we know that there are reasons, there are

16   many reasons for this.  One is obviously Chisholm was

17   overturned by the Eleventh Amendment.  The Eleventh Amendment,

18   the Supreme Court has told us innumerable times, is not

19   narrowly confined to its text, but it is a broad recognition of

20   the inherent sovereign powers that the states have.

21         The reason, primarily, why there has been no -- this

22   issue has not been squarely joined, and Dynegy and cases like

23   this are always indictas.  I will get to it in a second.  The

24   reason why this hasn't been squarely joined is that for the

25   last 130 years since the Ames case, we have had a rule of

1   construction that reads the Federal Diversity statute not to

2   allow the State to be a citizen.  And therefore, no state has

3   ever been forced into court on a diversity case.

4           THE COURT:  Right.

5           MR. ISSACHAROFF:  Because there is --

6           THE COURT:  Not a citizen, no diversity.

7           MR. ISSACHAROFF:  -- no diversity.  Now, the question

8   is whether a technical amendment to the diversity statute,

9   which is all that CAFA is.  CAFA says, right in its preamble,

10  that it is an amendment to 1332 on these issues.  Whether an

11  amendment to 1332 is sufficient to waive the State's sovereign

12  -- to abrogate the State's sovereign immunity.  And we, as we

13  say in our briefs, there are many reasons that this is not --

14  that this cannot be so, and the two primary ones are what the

15  Supreme Court identified in the Kendall case.

16          First, whether Congress acted pursuant to a valid

17  grant of Congressional authority.  And second, whether Congress

18  unequivocally expressed its intent to abrogate sovereign

19  immunity.  We think it fails on both of those.  This is an

20  Article 3 power that is being claimed, that's what the

21  diversity statute is.  It's simply an expression of the Article

22  3 powers of the Constitution and we know that Congress cannot

23  override Eleventh Amendment immunities under either Article 1

24  or Article 3.  That's the whole line of Eleventh Amendment

25  cases.  That we know.  I think that the State's -- that the

1    Defendant's argument here is ultimately that when a state sues

2    as a Plaintiff, it necessarily waives all of its claims to

3    sovereign immunity.

4           Now, there are cases that say that indicta,

5    Your Honor.  There are, there clearly are.  But if one looks at

6    each of those cases there is a reason why it's dicta.  The

7    courts have never had to face this question squarely because of

8    the construction of 1332 to exclude state suing under state

9    law.  So that all of the cases in which states are

10   involuntarily removed to federal court are when the state is

11   acting as a sovereign that is confronting also the sovereign

12   power of the United States.

13          THE COURT:  Well, there is a federal question

14   jurisdiction.

15          MR. ISSACHAROFF:  There is a federal question or

16   there is a federal officer, or there is a federal ingredient in

17   a state law.  There has to be federal law.

18          THE COURT:  And the reason they haven't confronted it

19   from a diversity standpoint is because the State is not a

20   citizen.

21          MR. ISSACHAROFF:  Right.

22          THE COURT:  And therefore, no diversity.

23          MR. ISSACHAROFF:  Right.

24          THE COURT:  However, if we have our other Plaintiffs

25   and the CAFA minimal diversity requirement, then we confront --

1   why is the analysis different if it's a federal question, and

2   you have answered that to some degree, or if the State or if

3   there is in fact minimal diversity.  If I find that this is a

4   class action and there are other parties who have a real

5   interest.  I'm not sure I have figured that out yet, whether

6   the class are real parties-in-interest for the purpose of

7   diversity.  I will be interested to hear from the other side on

8   that, but I'm not convinced that they are.

9           But now, let's assume that they are.  You are arguing

10  that this squarely presents the question to the Court and that

11  sovereign immunity, slash, which is what many of the cases go

12  into, the nuances between -- the differences between the

13  Eleventh Amendment and so I reviewed the Eleventh Amendment and

14  it's in essence rooted in sovereign immunity.

15          MR. ISSACHAROFF:  Right.

16          THE COURT:  But whether if a state happens to be

17  involved in a case with other people, in essence, who do have

18  real parties-in-interest can the State be -- and only minimal

19  diversity is required; can the State swept up into CAFA?  And

20  that's what your argument is; no, that they can't.  I

21  understand you, but go ahead.

22          MR. ISSACHAROFF:  They cannot and they can't be held

23  to have waived.  Under the Supreme Court is the Toscadaro

24  decision.  The waiver of sovereign immunity has to be on the

25  face of the statute so there would have to be a per se rule,

1    Your Honor, that when a state sues under its own laws to

2    enforce its own statutory and constitutional interests against

3    out of state entities; by doing so, it necessarily waives

4    sovereign immunity.  That's a preposterous proposition I would

5    suggest, Your Honor that it cannot be -- that any time the

6    State sues on behalf of its own citizens it is thereby waiving

7    its sovereign interests.  That's what this argument --

8              THE COURT:  That is assuming it has one when it's a

9    plaintiff.

10             MR. ISSACHAROFF:  That's assuming -- yes.  It has one

11   and the only way that it doesn't --

12             THE COURT:  And thus far, in no circuit case, dicta

13   or not, there is no -- other than the <u>Moore</u> case and the <u>Steele</u>

14   case, those are the only two cases in the United States that I

15   can find that in the <u>Steele</u> case, the Ninth Circuit in Footnote

16   15 pretty much said we don't really buy that.  And then, <u>Moore</u>

17   is standing alone and Moore's ruling was alternative.  His

18   first ruling was that the State was the party-in-interest,

19   ergo, no diversity, therefore no jurisdiction.  And oh, by the

20   way, then --

21             MR. ISSACHAROFF:  Right.

22             THE COURT:  Then, there they are.

23             MR. ISSACHAROFF:  I understand Your Honor, that this

24   is an open question because it could not have been joined prior

25   to CAFA except under the Federal Interpleader Statute, which is

1    also a minimal diversity statute and as best we can find, there

2    has never been a case where somebody has sought to force the

3    State into federal court as an interpleader defendant, which

4    means as the plaintiff for the real purposes of the statute.

5           There is one case which this Court cited in one of

6    its opinions, the Eighth Circuit opinion in Thomas versus FAG,

7    in which the Court found, the Eighth Circuit found that the

8    involuntary joinder of the State as a plaintiff in federal

9    court would violate sovereign immunity.  And therefore, did not

10   allow the involuntary joinder of the Plaintiff on these

11   grounds, that you cannot force a plaintiff into court -- a

12   state into court against its will.

13          But Your Honor, I would go back to the core cases

14   under the Eleventh Amendment, which talked about the Eleventh

15   Amendment and sovereign immunity as a jurisdictional bar under

16   Article 3.  If it is a jurisdictional bar, it does not matter

17   whether the State is plaintiff or defendant for the abrogation

18   purposes.  So, the entire action has to be done and I think

19   that the burden of their argument is that the State necessarily

20   waives when it is a plaintiff.  But ever here, Your Honor,

21   under CAFA, it's kind of an interesting statutory question,

22   because the State's monetary claim is on its own behalf, it's

23   not clear that the $5 million amount in controversy for the

24   class is necessarily met.

25          That is if we follow the Court's interpretation, and

1    I'm just -- I hope I'm not mischaracterizing the opening

2    presentation, but if that were to be the Court's position, that

3    the State is suing on its own behalf for the recovery of the

4    several billion dollars that it has sought -- that it has paid

5    out in Road Home and the billions more that it will pay out;

6    and the remaining part of the declaratory and injunctive relief

7    is the parens patriae authority on behalf of the affected

8    citizens of the state.

9            And then the class action component is only

10   derivative of that declaratory and injunctive relief.  It's not

11   clear to me that we meet the $5 million amount in controversy

12   for the class action component that is critical to CAFA.  That

13   is the class members do not stand to recover in this case, $5

14   million.  And so, it may be that the curious hybrid nature of

15   this proceeding actually statutorily takes it outside of CAFA

16   and provides a yet another reason that the constitutional

17   question does not have to be raised.

18           In our brief, as the Court noted, we argue that this

19   case -- the fact that this case is brought by the Attorney

20   General distinguishes it from all the prior ones and therefore

21   we are within the local exclusion because there are not similar

22   cases within three years.  The Court has expressed its

23   skepticism over that argument.

24           THE COURT:  I'm pretty skeptical and you can save

25   that one, okay.

1          MR. ISSACHAROFF:   Okay.   I'm not here to argue that

2     one.

3          THE COURT:   All right.   Yes, we've got 45, good,

4     good.

5          MR. ISSACHAROFF:   I'm not here to argue that one.

6     But I do think that if we take the Court's skepticism on that

7     point, that there is still a statutory argument under the $5

8     million threshold since the class members do not seek to

9     recover $5 million through this particular litigation.

10         THE COURT:   Well, and go over again for me what is

11    your understanding as to what the class members; if this were

12    ever certified in federal court with hundreds, with thousands,

13    hundreds of thousands of different insurance contracts.   We

14    have tons of class actions pending here that may or may not be

15    certified.   Let me ask you:   What is it that the class is going

16    to get out of this?

17         MR. ISSACHAROFF:   The class is going --

18         THE COURT:   Well, usually there is a statute.

19    There's a statutory scheme and each of these contracts is

20    individual.   They are not all the same, but even with the same

21    insurance company there are different versions of policies.

22    But putting that aside; what is the class -- what exactly is

23    the class going to receive, a declaratory judgment and an

24    injunction saying what?

25         MR. ISSACHAROFF:   Saying how the flood damage, the

1    wind damage issues should be interpreted under their policies.

2    The policies formed, as we have alleged that the policies fall

3    into certain characteristic patterns, that there is a fixed

4    number of them, and that there are common issues that have to

5    be determined as to the scope of the policy coverage, and --

6            THE COURT:  Now, you could have left that out.  It

7    would have really been a lot happier, a lot easier on me, I can

8    tell you that.  But anyway, go ahead.

9            MR. ISSACHAROFF:  Your Honor, I would suggest that --

10           THE COURT:  Because I would find that the State is a

11   real party-in-interest and this baby is going back to the

12   court.

13           MR. ISSACHAROFF:  Well Your Honor, I would suggest --

14           THE COURT:  A class action complicates it.

15           MR. ISSACHAROFF:  It does complicate it, Your Honor.

16           THE COURT:  And I'm not sure what it's gaining, but

17   go ahead.  Go ahead.

18           MR. ISSACHAROFF:  Your Honor, I will fall back on the

19   suggestion that in our desperate desire to make the Court's

20   life easier --

21           THE COURT:  And I will always appreciate that.

22           MR. ISSACHAROFF:  Yes.  That in fact it can be

23   severed along those lines, that since the class is there

24   primarily as the intended beneficiary of the determination by

25   the State of the scope of policy coverage; because that's what

1   is at issue in the state case, is the scope of policy coverage.

2   Then the class can be left in federal court and severed out if

3   that needs to be, or the class allegations could be dismissed,

4   if need be; but the fact that the classes there does not give

5   this Court jurisdiction over the State.  And the work would

6   still have to be done for this Court to find a jurisdictionally

7   proper mechanism for state -- for the federal courts to

8   involuntarily force the state that seeks to enforce its own

9   laws into federal court, and Your Honor, it has been 200 years

10  since that has been done.  That's a significant constitutional

11  burden upon this Court if it forces the State to have to

12  adjudicate its claims under its laws.

13          And it means basically, that out of state entities

14  under the minimal diversity of CAFA with no express abrogation

15  on the face of the statute, are able to pull a state into

16  federal court whenever a State seeks to assert claims on behalf

17  of its citizens as allowed by state law.  That's something that

18  is a novel proposition and I would suggest to the court that

19  that's rather a shocking proposition in light of the

20  overwhelming reaction to and continued rejection of Chisholm v.

21  Georgia and the whole notion that a state's economic interest

22  under its own laws can be forcibly litigated in federal court.

23          THE COURT:  Thank you, sir.

24      **(Pause)**

25          THE COURT:  All right.  Yes, ma'am?

1           MS. WINGERTER:  Thank you, Your Honor.  May it please

2    the Court, my name is Isabel Wingerter.  I'm an Assistant

3    Attorney General with the Louisiana Department of Justice and

4    serve as the Director of the Public Protection Division.   In

5    that capacity it is my duty to file an action on behalf of the

6    State and its citizens when they have been damaged or wronged

7    by ill practices.  As in this case, we believe it is our right

8    and our duty to have this action heard in state court pursuant

9    to state law on behalf of the State and its citizens.

10          Any abrogation of our sovereign immunity would

11   greatly impinge upon the Attorney General's authority to file

12   an action on behalf of the citizens or on behalf of the State

13   in a parens patriae action, not only in our state but in any

14   other state, Your Honor.

15          That's it.

16          THE COURT:  All right.

17          MS. WINGERTER:  Thank you, Your Honor.

18          THE COURT:  Well thank you, that was certainly

19   incisive.

20          MR. DUDENHEFER:  Your Honor, good morning.

21          THE COURT:  Good morning, sir.

22          MR. DUDENHEFER:  Frank Dudenhefer for the Attorney

23   General.

24          THE COURT:  Good morning, sir.

25          MR. DUDENHEFER:  Your Honor, the Road Home Program is

1    a laudable program to try and see to it that the people in this

2    state can recover.  What has happened however, Your Honor, is a

3    practical matter, is that because of difficulties in settling

4    insurance claims, because of the flood exclusion, because of

5    all of the litigation surrounding what is a covered event.

6    What has happened in a number of cases are people where they

7    can recover $150,000 and may have a police of insurance for

8    $140,000, will take the State money Road Home and they abandon

9    the claim.

10           Now, the reason this suit was filed on the

11   anniversary or the second year anniversary was to ensure that

12   the people who were entitled to benefit from the money, that is

13   the people the State of Louisiana would have their money and

14   have it recycled in the state, if you will.  Any money that is

15   recovered as a result of the assignment from Road Home Program

16   goes back into the State Treasury, and until yesterday, that

17   was a shortfall.  The expectation was that this recycled funds

18   were going to be able to address the shortfall.  There's still

19   a ten percent shortfall, although perhaps Congress will look

20   kindly on us and not -- the fact, nevertheless remains,

21   Your Honor, that the State is here to recover state money so

22   that it could recycle it and as a sense, it is the real party-

23   in-interest.  This is a subrogation case, Judge.

24           THE COURT:  Well, that's what I said earlier, it

25   looks like a subrogation case.  I mean but you kind of

33

1  confounded it when you put that class action stuff in there.

2  That's all I'm saying.

3      MR. DUDENHEFER:  Okay.

4      THE COURT:  It makes it a little different.

5      MR. DUDENHEFER:  I understand it makes --

6      THE COURT:  If it's just a straight subrogation

7  claim, you win, it's over.

8      MR. DUDENHEFER:  Well --

9      THE COURT:  The State is a real party-in-interest and

10  they can't remove you.  You're not a citizen, no diversity.

11     MR. DUDENHEFER:  Your Honor, until -- one of the

12  things that you wrote or that you read in the definition is

13  that the State has no interest until it has an assignment

14  signed.  That assignment is not signed until the closing

15  occurs.

16     THE COURT:  Right.  Now,

17     MR. DUDENHEFER:  Now, so that they are if -- had the

18  first application with an assignment; as soon as you apply you

19  will sign.  We would be in a different position because those

20  would already have been done, the State could simply have done

21  that.  When we looked at parens patriae:  Parens patriae.  As

22  Senator Grasso said, it is in the nature of a class action.  It

23  is in the nature of a class action.

24     THE COURT:  Well, wasn't Senator Hatch concerned

25  about an end run with the capitol by getting the State to file

1    an action and then to have it not be removed because they're

2    not a citizen.  Maybe that's why the amendment maybe was

3    defeated.

4              MR. DUDENHEFER:  Well, you know --

5              THE COURT:  I'm not sure how much of all of that --

6              MR. DUDENHEFER:  No, I can't -- but to come back to

7    what you said, Your Honor, if you look at everything as part of

8    the act and you read CAFA and the exceptions to CAFA.  CAFA is

9    owned -- and the exceptions to CAFA.  The exceptions are almost

10   a road map to this litigation.  Local interest, stayed as a

11   party and no interstate effect of any ruling.  The money is

12   state money.  The State is protecting its citizens.  Coming

13   back --

14             THE COURT:  Then if all we were talking about is the

15   State getting money, this is really easy.

16             MR. DUDENHEFER:  Judge, I agree.  It's about --

17             THE COURT:  I mean, but we're talking about the class

18   getting something, I'm not quite sure what it is.  It seems to

19   me so ephemeral and to unattainable that I find it -- I'm

20   trying to understand what this class is going to be getting.

21             MR. DUDENHEFER:  The class gets zero in this

22   litigation, Your Honor.  It gets zero.  The State recovers the

23   money.  The class of those people who will or have executed an

24   assignment; once they have assigned their rights under Coverage

25   A of their policy that is an assignment to the extent of the

1    money that they can recover.

2            THE COURT:  And the best case you've got is the one

3    that I just cited, 2007 Westlaw.  This guy -- the Judge wrote a

4    nice terse opinion, but went through every -- a lot of parens

5    patriae cases and ultimately found that in determining whether

6    the State is a real party-in-interest, where the State Attorney

7    General is a plaintiff, most courts follow the approach of

8    looking at the complaint as a whole to determine whether the

9    State is the primary beneficiary of the act.

10           MR. DUDENHEFER:  Your Honor, I'm sorry, I didn't mean

11   to interrupt you.

12           THE COURT:  All right.

13           MR. DUDENHEFER:  Pardon me.

14           THE COURT:  They say a lot of other things, but they

15   say some didn't work.  But as I understand that's the basic

16   holding of the case.

17           MR. DUDENHEFER:  It's even stronger here, Your Honor,

18   because the State is the sole beneficiary.  Once the assignment

19   is executed, the class member has no right to insurance

20   proceeds to the extent of the Road Home grant.  The first

21   party-in-interest, once the assignment is issued, is the State

22   of Louisiana.  There was no further interest on the class --

23   I'm sorry, of the class to the extent of the State's interest.

24           Now, it may be that there are additional funds due --

25           THE COURT:  You'd better substitute some of the class

36

1    actions over here we have too.  But I'm not sure how we handle

2    all of that.

3              MR. DUDENHEFER:  Yes, sir.

4              THE COURT:  We have a lot of class actions where

5    there's no -- the State is not a party and --

6              MR. DUDENHEFER:  Understood.

7              THE COURT:  -- and if there ever was a judgment, I'm

8    not quite sure how it all works out, because you haven't

9    intervened in those and I'm not sure what happens.

10             MR. DUDENHEFER:  Well, we have to decide -- our first

11   job is to deal with the remand.  It becomes a conundrum.

12             THE COURT:  And perhaps I'm cross roughing here.  Go

13   ahead.  It's just a management concern of mine.  Go ahead.

14             MR. DUDENHEFER:  And Your Honor, I think those issues

15   -- you can handle Workman's Compensation, you can handle

16   subrogation claims, it's part of the class, that can be dealt

17   with.  That is not the concern that we try to address by -- I

18   mean that is a concern but the concern we tried to address in

19   this case are the people who decide to opt out, the people who

20   have not filed a claim.  Perhaps the Court finds at some point

21   that the statute's not interrupted.  At the end of the day,

22   Your Honor, if we don't protect the State's interest to the

23   extent the recovery against the insurance carriers --

24             THE COURT:  Well, I understand what you're doing.

25   You've got an assignment and you want to enforce it.

37

1          MR. DUDENHEFER:  Correct.

2          THE COURT:  Okay.

3          MR. DUDENHEFER:  And Your Honor, I'll take it one

4    step beyond, I'll simply repeat:  The State is not the primary

5    beneficiary of this litigation.  The State is the sole

6    beneficiary of this litigation.  If the assignment is executed

7    and there's a recovery, the State gets the money to the extent

8    of this grant.  I think that's fairly simple and the

9    application in the process.

10          With that said, Your Honor, I think you can look -- I

11    think you can look behind --

12          THE COURT:  Is there any boot?

13          MR. DUDENHEFER:  Is there any boot?

14          THE COURT:  Yes.

15          MR. DUDENHEFER:  Yes, there could be.

16          THE COURT:  What happened to the boot?

17          MR. DUDENHEFER:  But not to the State.  That will be

18    recovered by the claimant under his own claim.

19          THE COURT:  Oh.  You mean -- well, what about in this

20    accident?

21          MR. DUDENHEFER:  So, for example --

22          THE COURT:  Are you seeking to recover the boot here?

23          MR. DUDENHEFER:  We are not, Your Honor.

24          THE COURT:  Okay.

25          MR. DUDENHEFER:  We are looking to recover only to

1    the extent of the insurance coverage as it would reimburse.

2              THE COURT:  Well, the professor indicated that all of

3    you are seeking some maybe injunctive or declaratory relief

4    with no financial relief for the specific citizens.

5              THE COURT:  We are looking for injunctive and

6    declaratory relief, such that it is clear from this litigation.

7    That the first towel recovered under Coverage A from any

8    insurance company does not belong to the class member, it

9    belongs -- I'm sorry.  It does not belong to the insured, it

10   belongs to the State by virtue of an assignment previously

11   executed or executed at the time that the claimant received his

12   funds.  Because if they -- but for that, Your Honor, there is

13   still an obligation on the part of the claimant to repay, if he

14   recovers.  That is ephemeral in the sense of trying to do that

15   collection work, Your Honor.

16             So, ultimately, the fact is we've pled a class; we've

17   pled parens patriae but this is not a class in the context of

18   CAFA.  This is a strictly local effort to protect the State

19   interests to see to it that the State treasury is protected and

20   funds are recycled.

21             If you have any other questions, Your Honor --

22             THE COURT:  No, sir.

23             MR. DUDENHEFER:  I think that completes the argument.

24             MR. LEE:  No, that's all I have.

25             MR. DUDENHEFER:  Thank you, Your Honor.  I look

1   forward to this proceeding back in state court; as a

2   subrogation claim.

3          THE COURT:  Well, and you all have been duly

4   enlightened.

5          MR. HUBBARD:  May it please the Court, I'm Ralph

6   Hubbard appearing today in my capacity as liaison counsel in

7   this particular case for the 200 plus insured defendants.  All

8   214 companies wanted to have somebody speak today but we are

9   happy to tell you we narrowed it down to three.

10         THE COURT:  I appreciate that, because they would

11  have had about five seconds each.

12     (Laughter)

13         THE COURT:  Maybe ten, maybe ten.

14         MR. HUBBARD:  Well, we were happy to accommodate you,

15  Judge.  And to that end, as luck would have it, because we are

16  splitting it up; I have to tell you that I have been asked to

17  talk about the local controversy exception, and that's going to

18  be a short speech.  Ms. Barrasso was going to talk about the

19  discretionary exception.

20         THE COURT:  She wins.

21         MR. HUBBARD:  She wins that.  And she is also going

22  to talk about the Eleventh Amendment.

23         THE COURT:  I don't know what they're even going to

24  argue there.  It doesn't even apply.  I mean, it doesn't even

25  come close to applying the discretionary exception, not even

1   close.  She really had -- go ahead.

2          MR. HUBBARD:  But she will address the Eleventh

3   Amendment and sovereign immunity questions and I know you want

4   to talk about that.

5          THE COURT:  Actually, well, I'm finding that

6   interesting, regardless.

7          MR. HUBBARD:  Yes.

8          THE COURT:  So, I would like to hear it.

9          MR. HUBBARD:  And then Wayne Lee will be discussing

10  the parens patriae action and the fact that it is an interstate

11  action, and to the extent necessary, the effect of the --

12         THE COURT:  Is anybody going to be assessed as a real

13  party-in-interest which is really what I'm interested in?

14         MR. HUBBARD:  I'm going to talk about that right now.

15         THE COURT:  Yes, I thought you might.

16         MR. HUBBARD:  To the meat or the bone.

17         THE COURT:  Okay.

18         MR. HUBBARD:  We heard it from Mr. Dudenhefer here

19  and on our side of the fence we had surmised that this was the

20  case when this suit got filed.  The reason that it was filed

21  and the reason that it was filed the way it was filed was very

22  specific, very well planned by very capable lawyers who knew

23  exactly what they were tying to accomplish.  The way the Road

24  Home Program works is that you make an application to be a

25  participant in that program.  There are, according to their

1   pleadings, over 180,000 applications that were timely filed.

2         As of roughly around today, or the time these litmus

3   more recent pleadings were filed.  There had been closings as I

4   call it on some 41 or 43,000 of those.  At the time the suit

5   was filed it was even less, by thousands less.  Now, as was

6   explained to you in a letter that the Plaintiff's counsel sent

7   to you early on, talking about this program and as I think I

8   heard Mr. Dudenhefer say today:  The actual assignment of any

9   rights to the Road Home does not take place until there is a

10  closing.  That is the individual homeowner has just complete

11  control of his destiny.  Until the day that he sits down and

12  gets a check from Road Home and signs an assignment conveying

13  to them his rights under his insurance policies.  It's a quid

14  pro quo.

15        So, at the time this case was filed there were at

16  least 140,000 people out there who hadn't assigned one thing to

17  the State of Louisiana and then who -- the State of Louisiana

18  has no vested interested whatsoever and was not the real party-

19  in-interest.  There was a subset of tens of thousands maybe,

20  where the steak had received the assignment according to their

21  allegations.  We still haven't seen any of the lists.

22        Now, they had a problem.  They don't know when all of

23  these things are going to be closed.  They were short on funds.

24  Congress has just, you know, I just read that Congress has come

25  up with another $3 billon, but I think the money hasn't been

42

1    appropriated.  It's not real until it's real.  This could be

2    years in the making.  Meanwhile, the deadline for filing

3    homeowner suits has extended.  It was at the end of August of

4    this year.  This suit was filed on the Even of that deadline.

5    And its purpose was to interrupt prescription.  That's what the

6    Plaintiffs -- I'm not saying that they succeeded, but that's

7    what their goal was, and they knew exactly what they needed to

8    do and how they needed to do it.

9         If they had not filed this suit in its present form,

10   they would not have captured 140,000 claims out there, which

11   would well have prescribed, depending on what goes on in all

12   these other cases that you say may or may not be certified, and

13   the like.

14        So, they were running out of time, they were running

15   out of gas and they did what they had to do, to the best of

16   their ability to try and protect the State of Louisiana, but

17   that was to file a class action.  A class action -- you can

18   read that paper all you want, it's nothing but a class action.

19   You know, it's the Attorney General appearing as the named

20   Plaintiff on behalf of a class of people in Louisiana who had

21   had homeowner's policies.

22        It's well established law in this state that a

23   plaintiff cannot alter the allegations of its petition in its

24   Motion to Remand.  The propriety of removal is to be judged by

25   the facts asserted in the petition within the four corners of

1   that petition.  That's Keating versus Shell Chemical.  It's a

2   Fifth Circuit case dating back to 1980.  And so, that's what

3   you have before you today.

4         Now, there were also -- so I would suggest that the

5   stake may be a party in interest but there are 140,000 other

6   real parties in interest that are in this class and part of

7   this lawsuit.

8         THE COURT:  Well, if they're not a recipient they're

9   not a member of the class.

10         MR. HUBBARD:  Well, they filed the class --

11         THE COURT:  Wouldn't you -- and if you become a

12   recipient you become a member of the class, as I understand it.

13         MR. HUBBARD:  Well, the class says it includes

14   everybody that's applied was the way I read it.  And there's

15   180 that have applied.

16         THE COURT:  Yes, the definition -- and look, for

17   whatever it's worth, all current and former citizens of the

18   State of Louisiana who have applied for and received or will

19   receive funds through the Road Home Program and who have

20   executed or will execute the subrogation or assignment.

21         MR. HUBBARD:  It's 180,000.

22         THE COURT:  I guess if you haven't executed one, and

23   I'm not sure what you've got here in this court.  I mean, I'm

24   wondering what your interest is here.

25         MR. HUBBARD:  Well, I mean --

1          THE COURT:  If you're one of the number of people who

2   haven't signed anything; that's what I'm struggling with here.

3          MR. HUBBARD:  Well you know, and I don't know that

4   today is the day to answer whether this is a certifiable class,

5   whether any of these people are entitled to relief; those are

6   all questions for another day.

7          THE COURT:  No, but I mean I'm wondering what

8   interests they have in this lawsuit.  They have zero interests,

9   because until they signed, or until they sign it, they're -- I

10  don't know if you could have proceeded by or they could have

11  proceeded by a declaratory judgment declaring that any person

12  who has signed or will sign but, you know, that chose not to do

13  that, and maybe with this, for interruption discretion, I don't

14  know what it was.

15         MR. HUBBARD:  Well, I have to tell you as well that I

16  was a little bit perplexed when I was hearing what it is that

17  the Plaintiffs are seeking to obtain in this lawsuit.  I think

18  I heard that there would be no money exchanging hands, that

19  this was a declaratory judgment.  And I have here in my hand

20  their first amended petition, which is the one they were really

21  dealing with today.

22         THE COURT:  Well, am I looking at that one?

23         MR. HUBBARD:  And on Page 42 the prayer --

24         THE COURT:  Hold on.

25         MR. HUBBARD:  The prayer starts on Page 41.

1          THE COURT:  Wait, I may not be -- I may be looking at

2   the one that was removed.

3          MR. HUBBARD:  I'm sorry, what?

4      (Pause)

5          MR. HUBBARD:  It was filed before we were moot,

6   Judge.

7          THE COURT:  Okay.  I'm looking at it.  This does not

8   -- let's see what this says, hold on.  It says that this looks

9   like a "V", the original.  I'm not sure I have a copy of that

10  one.

11         MR. HUBBARD:  It's attached to the notice of removal

12  if you have that document in front of you.

13         THE COURT:  Well, I do have it.  Okay then --

14         MR. HUBBARD:  At any rate, Your Honor --

15         THE COURT:  So, I have it if that's the one I'm going

16  to -- and I'm looking at it.  I've read it and marked it all

17  up.  I thought there might be something else.  Go ahead.

18         MR. HUBBARD:  Because on Page 42, in Paragraph G of

19  the prayer.

20         THE COURT:  Page 42?  Okay.  This isn't the one that

21  I have, because it goes to Page 38.  And it's the one attached

22  to the notice of removal.

23         MR. ISSACHAROFF:  Your Honor, you can use my copy.

24         THE COURT:  Okay, thank you.

25         MR. ISSACHAROFF:  Which it's marked up, but that's

46

1    just --

2              THE COURT:  Thank you.

3              MR. ISSACHAROFF:  This is the current one, yes.

4              THE COURT:  Okay.  And I'm at -- I should go to Page

5    42, sir?

6              MR. HUBBARD:  Yes, sir.

7              THE COURT:  I am now there, all right.

8              MR. HUBBARD:  All right.  They pray for any and all

9    monetary awards necessary to indemnify, pay, reimburse, or

10   repay the State and members of the class for the losses and

11   damages they have or will incur as pled herein.

12             THE COURT:  I see it.

13             MR. HUBBARD:  They are looking for a monetary award.

14   I mean, it's just if -- and other people have done it.  The

15   Chehardy case was one where Ms. Chehardy and several other

16   people were named plaintiffs and they sued on behalf of a class

17   of every homeowner in the City of New Orleans, and beyond, who

18   hadn't had their claim properly adjusted.  And for, you know, a

19   myriad of other cases.  This is another case that's exactly

20   like it, except it just so happens that the Attorney General is

21   one of the -- is the named Plaintiff, is the sole named

22   Plaintiff.

23             So, this suit brings in every claim known to man

24   arising out of Hurricane Katrina and in connection with the

25   local controversy exceptions.  I mean, it is a clone of the

```
 1    Chehardy case.  It's literally quoted, because Chehardy and the

 2    restated -- the master complaint that you had us file in the

 3    insurance cases, or had the Plaintiffs file in the insurance

 4    cases.

 5               THE COURT:  Right.

 6               MR. HUBBARD:  It was a very careful job by them to

 7    bring in every kind of claim that they had and they copied,

 8    they cloned it, and that's where this complaint comes from.

 9    So, they have captured every claim by every homeowner, whether

10    or not assigned now or ever in the future, to the State of

11    Louisiana and you asked, you know, whether there was a residual

12    interest?  Well, yes, there is.  There certainly is a residual

13    interest, because the Road Home Program only takes money that

14    has to do with the dwelling.  So, to the extent that someone is

15    entitled to money for contents, or out buildings like garages

16    or mother-in-law's cottage or something like that; and for

17    additional living expense, that's all lagniappe that the Road

18    Home has no interest in, yet which is prayed for under this

19    suit.

20               And so, you have to take it as you find it and I

21    don't, you know, I don't know -- I think the amount in

22    controversy is, they say it's billions of dollars in this case.

23    And of course, if each of the 180,000 people only were to

24    receive $30, you'd have over $5 million at issue, because you

25    aggregate the claims.  But regardless of that, I mean CAFA
```

1    tells us that you aggregate every single members of the class

2    claims and so the amount in controversy here is billions of

3    dollars.  There's no point -- there's no problem in meeting

4    that leg of the jurisdictional question.

5           I guess it's also interesting to me that in that

6    master class action complaint many of these same lawyers that

7    filed this suit alleged on the four corners, in the four

8    corners of that complaint, that this Court had jurisdiction

9    under CAFA for all of these kinds of claims.  There was no

10   suggestion that there was some kind of local controversy

11   exception to that, you know.  So, that's another example and in

12   fact, if you think about it this way, to the extent that the

13   State has taken assignments and has become a party-in-interest

14   with a respect to certain of these claims, the State steps into

15   the shoes of its policyholder and is a member of all of those

16   classes that are currently pending up here right now.  So, the

17   State is already before you, unless and until they opt out for

18   those claims in these very cases.  In those 14 cases at least -

19   - there's more than 14, but it's in a removal petition that

20   Allstate listed like 14.  So, the State is here all around us.

21          I think that -- well, I'm going to move on.  I had a

22   lot that I wanted to tell you about the local controversy

23   exception.  I'm glad you don't want to hear it.  I didn't think

24   that you needed to.  And I'll leave it to Mr. Lee to speak

25   next.

1          THE COURT:  Okay.

2          MR. HUBBARD:  Thank you.

3          THE COURT:  Thank you, sir.

4          MR. LEE:  Good morning, Your Honor.

5          THE COURT:  Good morning.

6          MR. LEE:  I will attempt to address some of the

7    questions that Your Honor has posed this morning with regard to

8    the parens patriae question and, you know, whether this is a

9    class and whether this class should be here before the Court.

10   And I'll start with the basic proposition that I'm sure the

11   Court is familiar with.  And that is that we're here on a

12   Motion to Remand.  The sole question here today is whether or

13   not there's jurisdiction over this matter.  It's not -- the

14   question is not whether the class could ultimately be

15   certified, it's not whether the claims that they are attempting

16   to assert on behalf of the citizens of the State of Louisiana

17   can be maintained, whether they really have the standing to do

18   so, whether they -- they have valid subrogation agreements.

19   They have alleged that they do.  And they have asserted a

20   claim.

21          So, the question is:  Is this a forum that has the

22   power, the judicial power to look at those issues.  And I

23   submit Your Honor that the statute makes it very -- that we're

24   talking about makes it very clear that this Court does indeed

25   have that power.

1        THE COURT:  Now, if the State is the real party-in-

2   interest, I respectfully suggest the Court appoint an interest.

3   The Court doesn't because there's not even minimal diversity if

4   the State is the real party-in-interest.  And that's pretty

5   well throughout the case law, if the State is the party-in-

6   interest.

7        MR. LEE:  Your Honor, if the State is the sole

8   absolute positively no other body or anyone else in the class

9   has an interest, then maybe that's possible.  But at this

10  point, Your Honor --

11       THE COURT:  That's the law.

12       MR. LEE:  -- that's a question that you're trying to

13  decide on the front end, before you have -- but right now

14  you've got a class and you've got jurisdiction to determine --

15  to go there.  I submit, Your Honor, that that's a question for

16  another day.  But CAFA; you asked is this a class, because we

17  understand --

18       THE COURT:  I'm just asking what the interest of the

19  class is.  I don't care what it's called, and I realize I look

20  at the complaint bill, but in a lot of these cases in

21  determining whether it stays a real party-in-interest, you look

22  at the whole complaint and you try to figure out -- and in many

23  of these cases, although they weren't class actions, they

24  brought -- the State brought suit on behalf of the citizens and

25  the citizens were individually -- collect money.

1           And in virtually all of those that the -- when the

2    Court found that the State was the real party-in-interest,

3    because it's -- then despite the fact that it says that we're

4    getting funds; it remanded because the State was not a citizen

5    and the basis of the jurisdiction was diversity.  The fact that

6    there's a CAFA clearly gives this Court jurisdiction under many

7    class actions, but there must be minimal diversity.  So, I have

8    to find, looking at the complaint.

9           MR. LEE:  Yes, sir.

10          THE COURT:  And trying to figure out what this thing

11   is, if the class really is a real party-in-interest and I'm

12   trying to figure out what the heck -- that's not my rule, what

13   is the interest?

14          MR. LEE:  And I understand Your Honor.  And I'm going

15   to get there.

16          THE COURT:  Okay.

17          MR. LEE:  And in part, Mr. Hubbard has addressed

18   that?

19          THE COURT:  Yes, he did.  He did.

20          MR. LEE:  But Your Honor had asked the question:  Is

21   this a class action?

22          THE COURT:  And it says it's a class action, I'm

23   sure.

24          MR. LEE:  It says it's a class action and under CAFA,

25   Section 28 USC, Section 1332(d)(1)(b).  It says:  The term

1    class action means any civil action filed under Rule 20 of the

2    Federal Rules of Civil Procedure, or similar state statute or

3    rule of judicial procedure authorizing an action to be brought

4    by one or more representative persons as a class action.  The

5    Plaintiff's prayer and the amended complaint specifically asked

6    that they be certified as a class under Article 591 of the

7    Louisiana Civil Code.  And we all know that that is a stack.  A

8    section of that has been tracked -- it has tracked Rule 26 of

9    the Federal Rules.

10           Courts have consistently looked to the Federal Rules

11   for guidance.  We have a class action under CAFA, Your Honor.

12   The next question, Your Honor would ask is:  Is the State the

13   sole party-in-interest, again looking at their prayer?  They

14   asked that whereas the State of Louisiana through the Honorable

15   Charles C. Foti, Jr., Attorney General for the State of

16   Louisiana, individually and on behalf of all past and present

17   citizens of Louisiana who are recipients of funds through the

18   Road Home Program and how eligible and/or future recipients of

19   funds, and/or.  So, I submit Your Honor, as of the case this

20   case was removed to court --

21           THE COURT:  But what interest does the future

22   recipient have that money is going to go to the State.  What is

23   their real interest?  I'm trying to figure that out.  What is

24   it?

25           MR. LEE:  Well Your Honor --

1          THE COURT:  What is their interest?

2          MR. LEE:  The Plaintiffs have told you that they are

3    looking to get a declaratory judgment on behalf of those

4    people.  A class action does not require that there be a

5    monetary recovery.

6          THE COURT:  Okay.

7          MR. LEE:  You can have a class that seeks declaratory

8    relief.  We have had several of them before this court and in

9    this district.  So, there is a class action brought on behalf

10   of all of the citizens of Louisiana who are residents, who have

11   received funds or may receive funds in the future and seeking

12   to get a declaration on behalf of all of those individuals.

13         THE COURT:  You all --

14         MR. LEE:  They are here now.

15         THE COURT:  You may want to discuss it with all of

16   your colleagues but I think you probably should, just to get

17   their consensus.  But my question is:  What about the severance

18   alternative argued by the professor?

19         MR. LEE:  Well Your Honor, frankly --

20         THE COURT:  And you may not want to consult them

21   because I've got a real problem with the State -- I have a real

22   problem having the State being here when it is the main,

23   certainly about 98 percent the party-in-interest.  There is not

24   one class member that is going to get one dollar.  The

25   declaratory and injunctive relief is a chimera.  It will never

1   happen.  I'm not -- there is not anybody declaring that the pot

2   -- I'm not sure what they want me to declare but I can't

3   declare coverage on 100,000 policies.  I don't really

4   understand it, to be frank with you.

5          So, I'm concerned about, you know, the State of

6   Louisiana has every right as a state to bring a claim on its

7   own behalf in state court and not be brought into the federal

8   court.  The State chose to make a class action, as I said,

9   which definitely complicated this.  And what if I kept the

10  class action and put the Road Home, because you have a lot of

11  sovereignty issues that are going to ultimately be decided

12  here.

13         MR. LEE:  Well Your Honor, I suggest Your Honor that

14  at this juncture that's premature.

15         THE COURT:  Why?

16         MR. LEE:  Because the question is:  Whether you have

17  jurisdiction over this case, with them present.

18         THE COURT:  I definitely have jurisdiction -- I

19  definitely --

20         MR. LEE:  And I believe -- and Your Honor has

21  recognized that if the State is a plaintiff, the Eleventh

22  Amendment doesn't preclude them from being brought into federal

23  court.  Even furthermore, under CAFA --

24         THE COURT:  Unless, as long as there is diversity.

25         MR. LEE:  Exactly, and I mean we were addressing the

1    fact that there is indeed under the class as they have defined

2    it, there are people other than the State who have -- who are

3    members of the class and who would provide that diversity.  We

4    have --

5         THE COURT:  Why doesn't that same logic apply in the

6    parens patriae case where they are members of the public who

7    are going to get specific money where the courts have said they

8    are not the real party-in-interest.  How is that

9    distinguishable?  Do you know what cases I'm talking about?

10        MR. LEE:  Your Honor, I understand --

11        THE COURT:  I mean, let me read them to you.  I'm

12   just, you know, as an example, okay:  There's Hood.  I'm sure

13   you've read Hood, which is Hood v. Microsoft Corp., 428 FSupp.

14   537.  There's Moore, which I don't agree with of the Eleventh

15   Amendment but it did find a real party-in-interest.  There is

16   Gandy v. Reserve -- excuse me, the Fifth -- okay, hold on just

17   a second here, sir.  It's Judge Vance's case in Borden, which

18   is an intriguing case in itself that I have read.  And then

19   there is the Levi Strauss case, and a Corp. of Louisiana case;

20   but the court held there that it doesn't benefit the State

21   Treasury.  It stated the action is simply enough to make the

22   consumers of Louisiana whole, but the Louisiana consumers were

23   a party-in-interest.

24        Wisconsin v. Abbott Laboratories; this Kentucky case

25   discusses them all.  And in ones where the state had the

1    substantial lion's share of the money, the court found that the

2    state was -- that we were all of us enforcing a statutory

3    scheme and the State was a real party-in-interest.  So, why is

4    this different in this class action, if you don't -- if you're

5    not getting one dime from the class, if you're not getting one

6    dime?  As least, now you've pointed out, you and others have

7    pointed out that in the amended complaint it appears that money

8    is being asked.

9            MR. LEE:  You know, Your Honor, they certainly asked

10   for it.

11           THE COURT:  So, I'm a little profound.

12           MR. LEE:  Whether they're entitled to get it is a

13   different question.

14           THE COURT:  Oh, no, no, no, but I'm saying that in

15   oral argument they have said they don't -- they're not looking

16   for a penny.

17           MR. LEE:  Well, yes.  Well then, maybe they didn't

18   read their complaint, but it's there.  It says what it says.

19   But is it a class action?  And under -- and the difference

20   between those cases and this, just holding it on its face is,

21   under CAFA, you determine the diversity on the basis of the

22   members of the class.

23           THE COURT:  I understand.

24           MR. LEE:  Not on the class.

25           THE COURT:  I understand.

1          MR. LEE:  The class rep doesn't even have to be

2    diverse.

3          THE COURT:  If I find they have a real -- if I find

4    that they are real parties-in-interest, certainly I would have

5    jurisdiction.  And it could be strongly argued that I would

6    have jurisdiction.  If they are a real party-in-interest, and

7    I'm not quite sure what their interest is, but whatever is -- I

8    wish I could figure it out.

9          MR. LEE:  And Your Honor, in fact, you're getting

10   back to the question about what about severing the State.

11   Well, the reason I was saying that you don't need to sever the

12   State is because under CAFA, as long as they can -- as long as

13   all the requirements are met, you can remove.  The Eleventh

14   Amendment doesn't have -- it doesn't even come into play.  If

15   you look at Section 5 under CAFA, it specifically recognizes

16   that you -- and you know, one of the cases that we -- the

17   Frazier case, the Fifth Circuit case, has recognized that where

18   a Defendant can remove it, even if a state is a party and may

19   have a right to assert the Eleventh Amendment at some point in

20   time in the future and ask to be remanded, but that doesn't

21   deprive the Court of jurisdiction under CAFA.

22         THE COURT:  If the State's a defendant it can't --

23   it's clearly, this Court does not have jurisdiction under CAFA.

24         MR. LEE:  Over that individual.  But it has the right

25   to bring the case up under CAFA.  That's what the Frazier case

1   specifically held, and the exception --

2           THE COURT:  But not the State?

3           MR. LEE:  -- and the exception --

4           THE COURT:  Not the State as a Defendant.

5           MR. LEE:  Yes, you can.  You can bring it up and then

6   State can then -- can choose to waive its right and stay in

7   federal court or it can assert it later on.

8           THE COURT:  And go back and --

9           MR. LEE:  But the case is properly before the Court.

10  That's specifically what the Frazier case dealt with.

11          THE COURT:  Well, doesn't CAFA in its very language

12  exempt the State as a Defendant?

13          MR. LEE:  No, Your Honor, it does not.  What it says

14  is that you shall not -- that the Court shall not -- let's see,

15  Section B, Paragraphs 2 through 4.  Shall not apply to any

16  class action in which the primary Defendants are state

17  officials or other Governmental entities against whom the

18  district court may be foreclosed from ordering relief.

19          And the decision in the Frazier case was specifically

20  that that provision only applies to preclude CAFA jurisdiction

21  if all of the primary Defendants are state officials or persons

22  over whom the Court would not have authority, because in that

23  particular case there was a --

24          THE COURT:  Well, then you would have had more --

25  well, that's ridiculous.  You'd have the State pleading and the

```
1    Eleventh Amendment.  As the Defendant, the Court would send it

2    back on the Eleventh Amendment, so you might have eight

3    defendants in state court and two in federal court.  What a

4    good conclusion.  But that's what would happen, but

5    nonetheless, that's it.

6              MR. LEE:  That's exactly what --

7              THE COURT:  That's Congress, I understand.  I'm

8    just --

9              MR. LEE:  That's --

10             THE COURT:  That's not what we have here.

11             MR. LEE:  That's not what we had.

12             THE COURT:  I agree.

13             MR. LEE:  All I'm saying is, Your Honor, that you

14   have the -- this is jurisdictional issues.  And here, we

15   believe that we have established that there is CAFA

16   jurisdiction.  There was a class action.  There was certainly

17   an interest in those, in getting asserted on behalf of the

18   insurance.  Whether or not they can alter one, they prevail.

19   Whether or not they case can alternately be certified as a

20   class.  We do determine that at a later point in time.

21             Now, Your Honor, there is just a lot of other

22   argument we could do about this parens patriae issue but I

23   believe that I'm hitting the things that Your Honor has --

24             THE COURT:  I think so.

25             MR. LEE:  -- has believed to be the most significant.
```

1          THE COURT:  Yes, you have.

2          MR. LEE:  You know, the fact that you know, that they

3    argue that the State with the Attorney General as the

4    Plaintiff, Your Honor, we have certainly addressed that in the

5    briefs and we have shown in the legislative history that there

6    was an opportunity for them to create an exception for Attorney

7    General lawsuits, they did not create that exception.  So, that

8    does not foreclose this suit with the State as a Plaintiff.

9          THE COURT:  All right.

10         MR. LEE:  And Ms. Barrasso will address the question

11   of the sovereign immunity issue.

12         THE COURT:  All right, sir.

13         MR. LEE:  Yes, sir.

14         THE COURT:  Thank you, Mr. Lee.

15         MR. LEE:  Thank you, Your Honor.

16         MS. BARRASSO:  Good morning, Judge.

17         THE COURT:  By the way, just to let you know what I'm

18   ruminating about now, because we've got a lot of stuff in the

19   queue, and it's decisions that we need to get out.  I am

20   inclined to take about a 15 minute -- after everybody argues,

21   to take about a 15 minute recess and come back here and rule

22   from the bench.  You know, because it's going to be -- if I put

23   it in the queue, it's going to be a long time until we get to

24   this and I'm not going to know any more than I know now.  And

25   although I'd like to have it written, that's what I'm thinking

1    about doing, but not -- just to let you all know.  So, go

2    ahead.

3              MS. BARRASSO:  Judge, I wanted to just address

4    briefly that sovereign immunity argument that was made and I

5    agree with your initial reaction that neither the Eleventh

6    Amendment or the sovereign immunity doctrine preclude this case

7    from being in federal court, preclude it from being removed.

8              THE COURT:  My only issue is really diversity, real

9    party-in-interest; that's it.

10             MS. BARRASSO:  Okay.  And I'll just be brief, Judge,

11   just to address a couple of things that the professor said.

12             THE COURT:  But I'm interested in what you have to

13   say.

14             MS. BARRASSO:  Well, and I'm going to -- certainly

15   Judge, I want to not dissuade you from what you already have

16   leaked.  The sovereign immunity doctrine is not as broad as has

17   been suggested here.  And the Supreme Court has never

18   recognized it to preclude a state who is a party in a case from

19   coming into federal court, being brought into federal court.

20   Way back in 1795 in the Cohens v. Virginia case, the Supreme

21   Court recognized, and this case was discussed by the Ninth

22   Circuit and the Dynegy case.  And way back in 1795 the Supreme

23   Court recognized in Cohens that the sovereign immunity

24   doctrine, Eleventh Amendment did not reach situations where the

25   State was a Plaintiff.

1           And then, in that doctrine they said they rejected

2    the State's claim of sovereign immunity because Virginia had

3    started that case and it was being brought into the Supreme

4    Court for review.  Time after time the courts have explained

5    what sovereign immunity is.  It's a doctrine to protect the

6    sovereign from being sued, from being hauled into court and

7    sued as a defendant.  It doesn't fit here where the State is

8    the Plaintiff.  All the circuits that have addressed this issue

9    have recognized the principal.  In fact the Seventh Circuit

10   most recently in the MTBE litigation which was in May of 2007;

11   it recognized that in that suit California was asserting state

12   law claims.  The Court said sovereign immunity and Eleventh

13   Amendment does not bar the removal.

14          It later found that the removal wasn't proper on

15   federal officer's grounds and sent it back, but it specifically

16   held that sovereign immunity does not preclude removal provided

17   subsequent jurisdiction is found.  We hold that if the criteria

18   of valid removal statute is met, sovereign immunity does not

19   bar the removal of a case commenced by a State in its own

20   court, and that involved state law.  And we all recognize where

21   there's not a body of law where state law claims have been

22   brought because of the diversity problem.  CAFA addressed the

23   minimal diversity problem in this situation.

24          And if the sovereign immunity doctrine was as broad

25   as has been suggested, you wouldn't have the home state

1    exception in the CAFA statute, which Mr. Lee addressed.  And

2    you wouldn't have had Congress spend all their time addressing

3    the Attorney General amendment, which got rejected because you

4    wouldn't need it, if it was as broad as they said.

5            THE COURT:  The only thing I've read was a -- and I

6    don't have it right here, it was a Law Review Article, the John

7    Marshall Law Review by -- that in essence said that none of the

8    cases, even the circuit cases that analyze the issue in depth

9    and made a recommendation that in essence sovereign immunity/

10   Eleventh Amendment, that based on all of the Maine and

11   Seminole, that the Court is moving in the direction of the

12   Supreme Court of giving dignity to the state court, except that

13   was a lovely article but I -- and it may, the Supreme Court may

14   ultimately say that.

15           MS. BARRASSO:  Yes, sir.

16           THE COURT:  But right now it hasn't.

17           MS. BARRASSO:  Yes, sir, okay.

18           THE COURT:  So, I'm inclined to agree with you, with

19   your position.

20           MS. BARRASSO:  Okay.  And Judge, in those cases,

21   Aldon V. Maine and Seminole; both cases where the State was

22   being sued and the whole argument about the dignity of the

23   State, it all --

24           THE COURT:  There's no question about that.

25           MS. BARRASSO:  -- it's all wrapped around the State

1   being sued against its will, and Judge, the Eighth Circuit case

2   that was discussed was again, it was an involuntary joinder,

3   thrusting the State into a lawsuit that it hadn't voluntarily

4   decided to commence.  Here, they brought the suit; they styled

5   it a class action.  They are asking for monetary relief for

6   those recipients.  They are asking for attorney's fees and

7   penalties also.  So clearly, a lot of money has been at issue

8   in this lawsuit.

9        And Judge, if you don't have any further questions,

10  I'm -- thank you.

11       THE COURT:  Thank you.  The only thing I'm interested

12  in hearing right now, frankly, that I'm really interested in

13  but I'll let you certainly say anything else.  I'm interested

14  in:  Do I have the authority to sever?  In other words, keep

15  the class, send the State back to the state court and then --

16       MR. ISSACHAROFF:  Your Honor, I believe you do.

17       THE COURT:  Then, tell me why.

18       MR. ISSACHAROFF:  But I would like -- because that's

19  in the nature of supervisory authority.  I think that if you

20  found that CAFA gives you jurisdiction, the colloquy you just

21  had with Mr. Lee about the structure of the CAFA exception for

22  the State contemplates that you could keep part and send part

23  back, because CAFA in its discussion of the state exception

24  says that if the primary defendants are the State, there will

25  not be jurisdiction,  But that anticipates that some can be

1   left behind and the States if they are not the primary

2   jurisdictions, can be removed --

3            THE COURT:  As I was commenting upon the --

4            MR. ISSACHAROFF:  Right.

5            THE COURT:  -- nightmare that that created.

6            MR. ISSACHAROFF:  Right.  But CAFA's anticipation

7   therefore is that you keep part of it, you keep the class

8   action part but you cannot possibly keep the State as an

9   involuntary defendant in federal court under CAFA.  I think

10  that there is the assumption on the part of the Defendants that

11  because it says so in CAFA, it's constitutional and we want to

12  suggest that it is not constitutional to read CAFA that way,

13  and if that is the way to read CAFA, it is an unconstitutional

14  statute.

15           But Your Honor, if I may, I think that these issues

16  actually may not need to be joined, and I would like to suggest

17  that there has been a mischaracterization of what this case is

18  about by the Defendants and that they have misled you in the

19  reading -- not intentionally misled, but mischaracterized in

20  the reading of the complaint.  It is true in the second

21  amendment -- in the first amendment petition that on Page 42

22  there is a request for broad relief.  And I think it's

23  worthwhile to go to Page 42 and see exactly what it says.  It

24  says:  In Paragraph G, which Mr. Hubbard raised, "For any and

25  all monetary awards necessary to indemnify, pay, reimburse, or

1   repay the State and members of the class for the losses and

2   damages they have or will occur as pled herein."

3          As pled herein is a critical qualification because if

4   we look at what the petition actually says, the petition seeks

5   the following:  It is an original -- it supplements the

6   original petition for damages and further supplements -- amend

7   and restate the allegations as previously pled as a class

8   action against the named insurance company defendants for the

9   recovery of funds paid as part of the State's the Road Home

10  Program.  That is on Page 3 to Page 4 of the petition.  The

11  recovery sought is for the Road Home Program.  So, it is true

12  that it says on behalf of all class members, but that's

13  precisely because of the problem that Mr. Hubbard said, which

14  is that all class members have not vested in the Road Home

15  Program as yet, and this is the place holder to keep them

16  there.  There is no recovery sought there.

17         I would suggest also, Your Honor that in the

18  discussion with Mr. Lee, there is an issue that is raised about

19  whether CAFA applies here at all.  And Mr. Lee inadvertently

20  highlighted this point but I would like to come back to it.

21  The CAFA definition of a class action in Section 2B is:  The

22  term class action means any civil action filed under Rule 23 of

23  the Federal Rules or similar state statute or rule of judicial

24  procedure authorizing an action to be brought by one or more

25  representative persons as a class action.  The petition, and

1   I'm reading from Page 3 of the petition which is the very first

2   line, "The State of Louisiana individually and on behalf of the

3   State of Louisiana Division of Administration and so forth,

4   through the Honorable Charles C. Foti, the Attorney General for

5   the State of Louisiana and through the private independent

6   counsel duly authorized and so forth, hereby seeks."  There is

7   no representative person.

8           The Court in order to find CAFA jurisdiction would

9   not only have to abrogate the Eleventh Amendment, but would

10  have to reduce the State of Louisiana to the character of a

11  person.  And I would suggest that for the same reason that the

12  U.S. Supreme Court in the Ames case in 1884 and in the earlier

13  cases in the same period in which it first interpreted the

14  diversity statute, that the Court there put a saving

15  construction on 1332 to avoid the constitutional nightmare

16  under the Eleventh Amendment of the State being deemed a

17  citizen and therefore removable into federal court against its

18  will.  And what we have -- or being sued in federal court --

19  removable or sued in federal court against its will.  And we

20  have a similar save in construction that's possible here under

21  this -- under CAFA, which is that CAFA uses the term "person"

22  which has no legislative history to distinguish it from the

23  word "citizen" under 1332, and in fact, this is an amendment to

24  1332.

25          THE COURT:  What if I were to dismiss the class

```
 1   action as not appropriately brought since there is no person

 2   bringing it, and then remand the remainder of the case?

 3             MR. ISSACHAROFF:  The Court could do that.  The Court

 4   could do that.  I believe that the State of Louisiana has the

 5   right --

 6             THE COURT:  You're trying to have your cake and eat

 7   it too, sir.

 8             MR. ISSACHAROFF:  I am standing here, trying to

 9   look --

10             THE COURT:  It does in fact, because I don't like

11   that -- the class action is a problem.  Go ahead.

12             MR. ISSACHAROFF:  Your Honor, if the Court were to

13   dismiss the class action, but tolled the statute of limitations

14   -- but tolled prescription for all of those who vest into the

15   Road Home Program, we would have no problem.  And I think that

16   that is --

17             THE COURT:  Your problem is prescription even though

18   a declaratory judgment -- but go ahead, I understand.

19             MR. ISSACHAROFF:  If you look at the class definition

20   and this is actually where --

21             THE COURT:  So, the real purpose is prescription and

22   you're telling me -- I mean, one of the things that I'm really

23   trying to decide, and I hate it to be semantics and I know I've

24   got to look at the complaint as filed and as amended prior to

25   it got -- and no amendment is going to cure it probably at this
```

1    point, because jurisdictions vest upon the filing of the

2    complaint.

3           MR. ISSACHAROFF:  Absolutely, Your Honor.  We don't

4    dispute that.

5           THE COURT:  So, I've got to decide, really the first

6    decision I have to make, at least in my mind:  Is the State the

7    real party-in-interest; and if so, I would remand it.  If I

8    find that the State is the primary 99 percent party-in-interest

9    but there may be something out there that's, you know, but

10   ultimately the money all goes to the State, and the class is

11   only named for the benefit of prescription, if money is going

12   to the class of any sort, then I've got a whole other problem.

13   And that's what I'm trying to figure out, and they have pointed

14   out and I didn't -- because I didn't, I was looking at the

15   original complaint where there is a prayer that could at least

16   be interpreted as money.

17          MR. ISSACHAROFF:  Right.  I don't think that the

18   prayer --

19          THE COURT:  For the class.

20          MR. ISSACHAROFF:  I don't think that the prayer and

21   the class definition together can be interpreted as a request

22   for money for individuals other than the amounts that have been

23   assigned to the State.

24          THE COURT:  The good thing about this is that

25   whatever I do, it seems that it would be appealable.  I want it

1    to be appealable.  In other words, I could do this.  I could

2    remand this where it wasn't appealed.  I could -- there's a way

3    to do it, but I want to -- if I decide to remand it, I want it

4    appealable, and so I want to make sure.  If I say that CAFA

5    applies, but there's no jurisdiction because of diversity, I'm

6    not sure that is appealable.  That's an intriguing point, to

7    tell you the truth.  I'm really not quite sure how.  You're

8    hearing my little thought process going on right now, because I

9    think they should be -- I think if I do, either of you ought to

10   have a right to appeal this.  I think you definitely would if I

11   keep it.  I want to make sure if I don't, that you have a right

12   to immediate appeal.

13        MR. ISSACHAROFF:  Your Honor --

14        THE COURT:  So, I would almost have to find CAFA --

15   but I don't believe -- I believe CAFA applies, but it may not

16   apply -- I may find there's not minimal diversity because I

17   think the State is a real party-in-interest.  It's kind of a

18   mess, to be frank with you.

19        MR. ISSACHAROFF:  And Your Honor, just two more quick

20   points.

21        THE COURT:  But I'm not going to get more enlightened

22   than I am today, so go ahead, sir.

23        MR. ISSACHAROFF:  I just want to go back.  It's not

24   only the definition of the action on Pages 3 and 4 of the

25   petition that may clear, but this is being brought on behalf of

1    the State's expenditures and the Road Home Program.  But the

2    class definition, I think the Court alluded to it before, it's

3    absolutely clear on the point, it says:  All current and former

4    citizens of the State of Louisiana who have applied for and

5    received or will receive funds through the Road Home Program,

6    and so it's who have applied for and received.

7              THE COURT:  Right.

8              MR. ISSACHAROFF:  That's the conjunctive, or will

9    receive funds.  That means there is nobody who is not Road Home

10   eligible who is in the class.  That is, just because you apply

11   for it, doesn't mean you're going to stay in as a class member.

12   You also have to receive or you will receive in the future.

13             THE COURT:  Let me ask you this about prescription,

14   and I'm going to give you another shot at it, as well.  What

15   about the suits that are filed over here where at least there

16   has been no denial of certification, yet?  Isn't virtually

17   everyone protected by that as punitive class members?

18             MR. ISSACHAROFF:  Yes, Your Honor, for so long as

19   those cases are proceeding in the federal courts.  The problem

20   that the State --

21             THE COURT:  Well, that will be probably one of my

22   successors here.

23        (Laughter)

24             MR. ISSACHAROFF:  Well --

25             THE COURT:  I hope you get your Road Home done by

 1    then.

 2              MR. ISSACHAROFF:  Your Honor --

 3              THE COURT:  I'm just curious.

 4              MR. ISSACHAROFF:  Your Honor, hope springs eternal,

 5    but Your Honor, the problem is that this is the first time, and

 6    this point was made before.  This is the first time the State

 7    has come in on its own behalf.

 8              THE COURT:  Right.

 9              MR. ISSACHAROFF:  And the State does not have to have

10    its interest protected by prescription as --

11              THE COURT:  No question the State does.

12              MR. ISSACHAROFF:  -- as protected --

13              THE COURT:  Right.

14              MR. ISSACHAROFF:  But the State's interest, because

15    it's going to give money pursuant to this and because there is

16    arguably we're outside the two year window after Katrina and

17    Rita.

18              THE COURT:  Right.

19              MR. ISSACHAROFF:  There is a problem here that the

20    State is seeking to protect its own interest and the class

21    definition goes on from the part I was reading to go on to say,

22    "And who have executed or will execute" --

23              THE COURT:  Right.

24              MR. ISSACHAROFF:  -- "a subrogation or assignment

25    agreement."

1              THE COURT:  I read that, early on.

2              MR. ISSACHAROFF:  Right.  It could not be more clear

3    that the entire class as defined is those people who have

4    obtained State benefits from whom the State has obtained

5    subrogation rights and through whom the State is seeking to

6    recover its expenditures.  That's the entire case.  So, it's

7    not that the State is a real party-in-interest.  For purposes

8    of monetary recovery, the State is the exclusive party-in-

9    interest.  There is nothing in this petition which seeks to

10   recover funds for private individuals.  And the language on

11   Page 42 refers back to both the class definition -- both the

12   class definition and the definition of the action at the very

13   beginning of the petition and both of those make clear that

14   this is an action by the State of Louisiana to recover the

15   funds that it will contribute to Louisiana citizens under the

16   Road Home Program.

17             THE COURT:  Let me ask you this:  Is the injunctive

18   and declaratory relief basically to benefit the State as well,

19   even though it's on behalf of the class?

20             MR. ISSACHAROFF:  Absolutely, Your Honor.

21   Absolutely, Your Honor, because if we don't have that, we have

22   the possibility of new actions being claimed that individual

23   subrogation claims are not covered by the determination made

24   initially.  So, we want one disposition once and for all as to

25   whether the State of Louisiana can collect these Road Home

 1   funds, these Road Home expenditures against the insurance

 2   companies.  There's nothing else that's in the case except

 3   that, and the State needs the declaratory and injunctive relief

 4   in order to.  But the problem, Your Honor, is that we don't

 5   know in whose name we need it yet, because not all of the

 6   administrative work of processing these --

 7              THE COURT:  I understand that.  I'm curious, just I'd

 8   like the Defendants just to speak to this one point, because I

 9   have it -- I will decide in the next 15 minutes or so after,

10   what I'm going to do, because it needs to be decided.  And I've

11   got a lot; if I wait, it will be here forever and then if I do

12   -- so, I need to decide it.

13              What is your thought if I were to -- I know that if I

14   keep you here, it ought to be appealable.  If I don't keep you

15   here, but I say this not minimal diversity under CAFA because

16   the real party-in-interest is the State; do you think that's a

17   sufficient invocation of CAFA, because I find CAFA applies --

18   I'm not saying CAFA doesn't apply to the State, but it's that

19   it was -- do you think you have your appeal rights?  I'm just

20   curious, if that's a -- because I want you to have them.  And

21   I'm not --

22              MR. HUBBARD:  May it please the Court --

23              THE COURT:  And of course, you don't -- you would

24   disagree if I rule that way, true, and I'm not sure what I'm

25   going to do, but I'm just -- I'm worried about the appeal, the

1    appeal rights.

2            MR. HUBBARD:  Well, I mean as I understood what you

3    were saying, Your Honor, that -- could you allow me one second,

4    please?

5            THE COURT:  Yes, you may want to have a little --

6        (Pause)

7            MR. ISSACHAROFF:  Your Honor?

8            THE COURT:  I haven't --

9            MR. ISSACHAROFF:  I understand.  Just so --

10           THE COURT:  I wish I would have thought about this

11   earlier, but I --

12           MR. ISSACHAROFF:  Right.  Just so our position is

13   clear, if you send it back on the grounds that you say, that

14   you just articulated, and they believe that this is indeed

15   appealable on that score, we obviously need to preserve our

16   constitutional claims on sovereign immunity.

17           THE COURT:  Right.

18           MR. ISSACHAROFF:  We don't waive them in any way.

19           THE COURT:  I understand, of course.  All right, go

20   ahead.

21           MR. HUBBARD:  As usual, I thought I knew the answer

22   to that question but I was wrong.  There is a recent case out

23   of the Seventh Circuit --

24           THE COURT:  That's why I was --

25           MR. HUBBARD:  -- that casts some doubt on all of

1   this, and we don't know the answer.  If you remand the case,

2   there may be some doubt as to whether it's appealable under at

3   least some jurisprudence.

4          MR. WEINBERGER:  And specifically -- Your Honor,

5   excuse me, Alan Weinberger of Middleberg, Riddle & Gianna.

6   Your Honor, it is specifically addressed in the portion of the

7   CAFA that deals with remand.  There is a period for appeal.

8          THE COURT:  Right.

9          MR. WEINBERGER:  There is some language that could be

10  tracked.  If we could look at your judicial code for one

11  minute, we could give you the exact language that would

12  preserve to the Defendants --

13         THE COURT:  Well, I can look at it and I don't -- let

14  me see, I may have it right here.  No, I have the criminal.

15         MR. WEINBERGER:  It's not in the 1332 part.

16         THE COURT:  Right.

17         MR. WEINBERGER:  It's in the remand part.

18         THE COURT:  Right.

19         MR. WEINBERGER:  Thank you, Judge.

20         THE COURT:  And it's just something I'm considering,

21  because I think this is an intriguing question.

22         MR. HUBBARD:  Well, if I may, one more thing on the

23  real party-in-interest, Judge.

24         THE COURT:  I'll have to give them the last word, so

25  go ahead.

1          MR. HUBBARD:  Okay.

2          THE COURT:  Since it's their motion.

3          MR. HUBBARD:  That's understandable.

4          THE COURT:  But you're certainly entitled to say

5     something.

6          MR. HUBBARD:  Thank you.  Going back again to the

7     prayer, I mean I plucked out the part of the prayer that said

8     that for any and all monetary awards necessary.  In the

9     previous paragraph, and there are multiple paragraphs in the

10    prayer that refer to the recipients which is a word that they

11    use to distinguish from the State, recipients being the actual

12    homeowners.  But in Paragraph F they ask for an injunctive

13    relief requiring that the insurance Defendants pay certain

14    coverage, all coverage under the recipients policy, and then it

15    goes on to say, and I won't bore you with reading the whole

16    thing; but what they're saying is that pay the full amount due

17    to the recipient and then order that the recipient reimburse

18    the Road Home for any sums that it's entitled to.

19          So, they are trying to get more than just their loaf

20    of bread, they are trying in this lawsuit to get -- you know,

21    for instance, the most anybody can get is $150,000 from them.

22    If they recover $300,000 under their homeowner's policy, they

23    still owe $150,000 to the Road Home, but they get to keep

24    $150,000.

25          THE COURT:  Let me tell you what --

78

 1          MR. HUBBARD:  And that's exactly what that paragraph

 2    is about.

 3          THE COURT:  I understand that.  I'm going to look at

 4    it.  Let me tell you one other thing and I need the amended

 5    complaint when I go back there, if somebody could give me one.

 6          THE CLERK:  You don't have one?

 7          THE COURT:  I don't think I have it.  Yes, I think we

 8    gave it back.  Well no, I have it.

 9          MR. ISSACHAROFF:  No, we gave you one.

10          THE COURT:  I have it, you're right.  I have it.

11    Thank you.  One of the things that concerns me, and we might as

12    well discuss this since we're having kind of a free flowing

13    oral argument, is how can, under Rule 23 in federal court, the

14    State be typical?  How is the State typical?  How are you going

15    to -- I mean, it is an impossible class action.  Under Rule 23,

16    how can the State be the only class representative?  I just

17    find it -- and what I'm saying is it boggles my mind, typical

18    commonality.  If the State is seeking subrogation and the other

19    people are seeking insurance recovery.  That would make sense.

20    The whole thing doesn't make sense to me.  To me.

21          You don't necessarily have to respond to that.  I'm

22    just wondering, the whole notion of the class, if this was just

23    a parens patriae case, the whole notion of the class action

24    which of course is prescription, I assume, is -- which I think

25    is protected over here, hopefully for a while; the whole notion

1   of the State being a typical when it hasn't got a subrogation

2   claim, Plaintiff or insurer to recover insurance proceeds is

3   rather, rather a stretch.

4         MR. HUBBARD:  Well, it may be unusual but in fact,

5   isn't a subrogation --

6         THE COURT:  I don't know it's not only unusual, I

7   don't know if it has ever been done or if it is even lawful.

8         MR. HUBBARD:  Well, what I would suggest to you,

9   Judge, is that it's easy to meet all of those requirements, the

10  typicality and all, because under a typical subrogation

11  situation, you stand in the shoes of the subragor.  You are the

12  subragor and I believe that the Civil Code says that you can

13  prosecute that claim in his name or in your own name.

14        THE COURT:  And you are only recovering up to the

15  amount of your subrogation.  You're only recovering the amount

16  of your subrogation.  I don't know if they assigned all of the

17  proceeds or what.  I don't know.  I haven't read the

18  assignments.  I don't really know.

19        MR. HUBBARD:  Well, that's another question.

20        THE COURT:  Yes, it's a whole other --

21        MR. HUBBARD:  That's another question.

22        THE COURT:  Yes.  I don't know.

23        MR. HUBBARD:  And there will be litigation on that,

24  too.

25        THE COURT:  And that's just sort of an aside.  It

1    won't be the --

2           MR. HUBBARD:  But certainly, they are trying to

3    enforce the same claim with the same evidence for the same

4    reasons.  Thank you.

5           MR. ISSACHAROFF:  Your Honor --

6           THE COURT:  Good point.

7           MR. ISSACHAROFF:  The last word is often useless, but

8    just on the last issue that was raised on the prayer, the

9    prayer says for injunctive order directing the companies to pay

10   all the coverage afforded.  Obviously, if there is a

11   determination, if this goes back and the --

12          THE COURT:  How can I issue an injunction to all of

13   these companies to pay when I haven't looked at each policy

14   and the amount of the claim and the amount of the sums?  I mean

15   I --

16          MR. ISSACHAROFF:  It may be useless.  But it's a

17   determination that they can't re-litigate.  It is just a way of

18   enforcing collateral estoppel, that that issue has been

19   determined in the primary litigation brought by the State of

20   Louisiana and that they will be estopped from trying to re-

21   litigate the issues that have been determined.  And what is

22   full coverage is obviously going to be determined in any

23   individual lawsuit by any individual.

24          THE COURT:  Okay.

25          MR. ISSACHAROFF:  That is not a recovery, a

1  monetary recovery that is going to be had in this

2  litigation.

3          THE COURT:  Okay.  Thank you, sir.  I'm going to

4  recess for 15 minutes and come back and I'm going to rule on

5  this thing.

6          MS. WINGERTER:  Thank you.

7          THE COURT:  Oh, what about that appeal issue?  Do you

8  have any comments before I leave?

9          MR. WEINBERGER:  One minute.

10         THE COURT:  I'll wait.  Please be seated.

11         MR. HUBBARD:  No, nothing.  And I think we found

12  nothing more than what the words of the statute say itself,

13  Judge.

14         THE COURT:  Okay, all right.  I'll look at it.

15      **(Recess from 11:51 a.m. to 12:11 p.m.)**

16         THE CLERK:  All rise, please.

17         THE COURT:  Please be seated.  The Court would

18  normally issue a written ruling in a matter as significant as

19  this one.  However, because of the volume of motions that the

20  Court has in queue, and is attempting to ultimately get

21  resolved, and this will be in writing, the Court has decided to

22  orally give oral reasons, which we'll reduce to writing in this

23  case.

24         First, I want to compliment all sides for a very

25  excellent argument.  It's indeed an intriguing question.

1                    *    *    *    *    *

2                         **RULING**

3                    *    *    *    *    *

4          THE COURT:   The first issue:   Does CAFA, the acronym

5    for the Class Action Fairness Act, apply to a State that has

6    filed a class action.   The Court finds that, first, that the

7    Eleventh Amendment and/or sovereign immunity is not

8    specifically implicated here, because the State is a Plaintiff.

9    I think counsel for Plaintiff has made some interesting

10   arguments which may ultimately have to be addressed by the

11   appellate court.

12          This Court finds, however, that the text of the

13   statute does not specifically exempt the State as a Plaintiff

14   from CAFA if the State brings a class action.   And the

15   legislative history, although not pellucid, indicates that at

16   least one senator was concerned about there being an end run

17   around CAFA by the State being convinced to bring a class

18   action and then the purposes of CAFA would be obviated.   So,

19   the Court finds that the State as a Plaintiff is subject to

20   CAFA.   And I'm going to discuss that a little bit more later

21   on, the Eleventh Amendment and sovereign immunity implications.

22          I also find that the exceptions cited by Plaintiff,

23   that is the discretionary abstention under 28 USC 1332(d)(3)

24   and the mandatory abstention under the local controversy

25   provision of 28 USC 1332(d)(5) did not apply, because each has

1    the following provision.  During the three year period

2    preceding the filing of that class action, one or more other

3    class actions asserting the same or similar claims on behalf of

4    the same or other persons have been filed.  There is an

5    appendix that was provided to the Court that has convinced the

6    Court that similar claims have been filed on behalf of the same

7    class of persons.

8         And I am going to attach that appendix.  When the

9    transcript is done I ask that it be attached as an example.

10   There are numerous class actions before this Court on a lot of

11   the very issues that are raised by the State in its petition,

12   now complaint.

13        On the Eleventh Amendment, Plaintiffs contend that

14   Congress has limited power to abrogate sovereign immunity and

15   as such the Eleventh Amendment bars the removal of the suit.

16   The Eleventh Amendment provides, quote, "The judicial power of

17   the United States shall not be construed to extend to any suit

18   in law or equity commenced or prosecuted against one of the

19   United States by citizens of another state or by citizens or

20   subjects of any foreign state," end quote.  Thus, as the State

21   is a Plaintiff, the Eleventh Amendment is not applicable.

22   Plaintiffs rely on Moore v. Abbott Labs, Inc., 900 FSupp. 26 at

23   29 SB Mississippi, 1995 and State of California v. Steele case,

24   792 FSupp. 84 at 86, CD Cal, 1992.

25        In Moore the Mississippi Attorney General brought

1   suit against manufacturers of infant formula alleging

2   violations of the Mississippi Anti Trust Act.  The

3   manufacturers removed the action from state court; however,

4   Chief Judge Barber held that the Eleventh Amendment barred suit

5   against the state in federal court without the state's consent,

6   applied with equal force to bar removal to federal court.

7   However, that court went on to note that the State of

8   Mississippi with the real party-in-interest subject to removal

9   on the basis of diversity jurisdiction was improper.  The

10  Eleventh Amendment holding was an alternative holding in Moore.

11          In the Steele case, the people of the State of

12  California filed a civil enforcement action alleging violations

13  of the California Anti Trust and Unfair Competition Statutes.

14  The case was removed based on diversity.  The court held that

15  the state was the real party-in-interest, that the state was

16  not a citizen of any state and thus could not be sued in

17  diversity.  The jurisdiction was barred under the Eleventh

18  Amendment and the remand order was not appealable.  Again,

19  there's a real party-in-interest holding as well as an Eleventh

20  Amendment which are two separate things.

21          The case was, in my opinion, abrogated in People of

22  the State of California v. Dynegy, D-Y-N-E-G-Y, Inc., 375 F3d

23  831, 9th Circuit, 2004.  There, the State of California brought

24  state court actions against wholesale electricity suppliers

25  alleging violations of California's Unfair Business Practice

1   Law.  Suppliers removed the cases to federal court.  The

2   district court denied the state's remand motion and dismissed

3   the claims on the merits.  When appealed, the Ninth Circuit

4   held that the suits were removable.  The state court found that

5   California's claim that wholesale electrical suppliers violated

6   the state's Unfair Business Practice laws by failing to comply

7   with their federal tariffs stating a removable federal cause of

8   action and as such, the complaint was merely an attempt to

9   enforce federal tariffs over which a district court would have

10  exclusive jurisdiction.

11          In doing so the court further reviewed the district

12  court's finding that the Eleventh Amendment immunity applied

13  and rejected this concept.  After an extensive review of

14  judicial precedent the court stated, and I quote, "For the

15  foregoing reasons we hold that the state that voluntarily

16  brings suit as a plaintiff in state court cannot invoke the

17  Eleventh Amendment and the defendant seeks removal to a federal

18  court for competent jurisdiction.  In so holding our conclusion

19  is consistent with those of our sister circuits."  See

20  Oklahoma, Ex Rel, Edmonton v. Magnolia Marine Transportation

21  Company, 359 F3d 1237 at 1239, 10th Circuit, 2004, quote:  "The

22  Eleventh Amendment's abrogation of federal judicial power,"

23  quote, end quote, over any suit, dot, dot, dot, commenced to

24  prosecute it against one of the United States does not apply to

25  suits commenced to prosecute it by a state, period, quote,

1  parenthesis, semicolon;

2       Regents of the University of California v. Eli Lilly

3  and Company, 119 F3d 1559, 1564 (10th Circuit) 1997.  Quote,

4  "The Eleventh Amendment applies to suits against the state, not

5  suits by a state."  And also, Huber, Hunt and Nichols versus

6  Architectural Stone Co., that's C-O, 625 F2d 22 and 24, Note 6,

7  (5th Circuit 1980).  Quote, "Of course the Eleventh Amendment

8  is inapplicable where the state is a plaintiff.  Similarly,

9  numerous district courts have adhered to this view."  See also

10  In Re:  Rezulin, R-E-Z-U-L-I-N, Products LIABE., LIPIG., 133

11  F2d, 272 at 297, Southern District of New York, 2001, which

12  stated, quote, "While the Eleventh Amendment in some areas has

13  been extended beyond its textual limits, this is not the case

14  with respect to state plaintiffs."

15       Vermont v. Oncor Communications, Inc., and that's

16  O-N-C-O-R, 166 FRD 313 at 321, District Court in Vermont, 1996.

17  "The Eleventh Amendment does not bar removal of an action

18  involving a federal question in which the state is the

19  plaintiff.

20       And Regents of the University of Minnesota v. Glaxco

21  Wellcome, Inc., that's W-E-L-L-C-O-M-E, 858 FSupp. 2d 1036 at

22  1039, District Court of Minnesota, 1999, which held, quote, "A

23  number of recent cases directly refute plaintiff's argument

24  that this case may not be removed from state to federal court.

25       I also cite from this district, sort of out of

1   nostalgia, <u>Terrebonne Parish School Board</u>, 1989 WL 14217,

2   District of Louisiana, November 9th, 1989 where Judge

3   Duplantier stated he was aware of no case holding that the

4   Eleventh Amendment prevents removal of a suit filed by a state

5   as a plaintiff.

6           And also, <u>Commonwealth of Virginia v. Bulgartabac</u>,

7   B-U-L-G-A-R-T-A-B-A-C, <u>Holding Group</u>, 360 FSupp. 2d 791,

8   Eastern District of Virginia, 2005.

9           So, the Court finds that this is a fascinating issue

10  in light of <u>Aldon v. Maine</u> and <u>Seminole</u>; however the Court

11  feels that it's bound under its oath to apply the law that it

12  determines presently exists in the Fifth Circuit and elsewhere;

13  that when the State is a plaintiff, it is subject to removal.

14          Now, let's go specifically to CAFA.  Clearly, if the

15  State is a plaintiff it is not subject to removal in a

16  diversity situation if it's the only plaintiff, because it's

17  not a citizen.  So, if the plaintiff -- if the State were the

18  only real party-in-interest here, this case would not be

19  subject to removal.  In fact, it's a very interesting issue;

20  had the State filed this strictly as parens patriae on behalf

21  of the named class, it might be a different situation, because

22  it would be not a typical class action.  The State here though

23  did file a class action and the Court is bound to look at the

24  complaint as it is pled.  And I can't think what it might mean,

25  what it probably means, what it should mean, what it could

1    mean; it's what it says.

2         And clearly, based on the oral argument here, we had

3    some argument that said yes, there's boot; some that said no.

4    But the complaint, the amended complaint at (g) in the prayer

5    says for any and all monetary awards necessary to indemnify,

6    pay, reimburse, or pay the State and members of the class for

7    the loss of damages that they will have or will incur.  And we

8    know that there's $150,000 limit and if you get at $200,000

9    recovery, the State certainly couldn't keep it; and that

10   concerns me, because I must look at the complaint as pled.

11        So, CAFA only requires minimal diversity.  The State

12   doesn't count, it's not a citizen.  But when there are other

13   real parties-in-interest, then the Court has found that CAFA

14   does apply to this State as a Plaintiff.  Clearly, as can

15   probably be discerned from the oral argument and the Court's

16   comments; had this case been brought not as a class action,

17   this would be removed -- I mean this would be remanded.  This

18   suit would be remanded, as the Court certainly is sensitive to

19   the sovereignty of the State and its dignity.  And it's also,

20   it's non citizen status, so you all would have no jurisdiction.

21   This doesn't imply the Eleventh Amendment because it's only to

22   the extent that it's not a citizen; and therefore no diversity.

23        But because there are, there is minimal diversity

24   because there is a putative class and I must look for putative

25   class under CAFA of Louisiana citizens, who may or may not

1    receive money as pled.  It's possible they will, or some other

2    relief.  Again, I point out had this been brought solely as a

3    parens patriae suit I would be perhaps reaching a different

4    analysis.  For those reasons, I find that the Motion to Remand

5    is denied.

6          Now though, this Motion to Remand is clearly

7    appealable under the law.  And believe it or not, that gives

8    the Court some comfort because I think that there are some

9    significant issues that need to be resolved here.  I'm not so

10   sure whether it would be appealable if I remanded it finding no

11   diversity jurisdiction, but that's not the reason for my

12   ruling.  The reason for my ruling is as stated above, I just

13   point those things out as points not necessarily germane to the

14   ruling, but that are available to the parties.

15         Hold on.

16     (Pause)

17         THE COURT:  Oh, it has been pointed out to me that

18   the removal on the -- that there was a basis for removal on the

19   MMTJA.  For the reasons the Court stated in its lengthy ruling

20   previously, that removal -- the removal on that basis is

21   denied.  The MMTJA, the Court has found, is not applicable to

22   Hurricane Katrina in this situation for the reasons set out in

23   our lengthy opinion.  So, let me see if I can find it.

24         THE CLERK:  Yes, sir.

25         THE COURT:  Okay.  That Motion to Remand, and I know

1    that we do Document Numbers all the time, it's Document Number

2    8593 and the Motion to Remand regarding MMTJA, in the Court's

3    opinion, is -- if I have it here -- I probably don't have it.

4    But it's easily ascertained.  Yes, Case v. AMPAC Louisiana

5    Insurance Company, 466 FSupp. 781.

6         I think I have made this as clear as I can at this

7    point, therefore nothing further.  We are adjourned for the

8    day.  Thank you.

9         (All Counsel reply, "Thank you, Your Honor.")

10                    *    *    *    *    *

11              (Hearing is Concluded)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **C E R T I F I C A T E**

       I certify that the foregoing is a correct transcript from the electronic sound recording of the proceeding in the above-entitled matter.

**/s/Dorothy M. Bourgeois**            **11/15/07**
**Dorothy M. Bourgeois**               **Date**