5. **Fire Department Charges**
   We will pay up to $250 for service charges made by fire departments called to protect **your** property from a loss we cover at the **residence premises**. No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
   We will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants and Lawns**
   We will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under the **Coverage A—Dwelling Protection** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. We will not pay more than $250 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief or theft.

   We do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

8. **Temperature Change**
   We will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure**.

   This coverage does not increase the limit of liability applying to the damaged property.

9. **Arson Reward**
   We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

10. **Land**
    If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

    The **Section I—Losses We Do Not Cover Under Coverages A, B and C** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

## Section I—Conditions

1. **Deductible**
   We will pay only when a covered loss exceeds the deductible shown on the Policy Declarations. We will then pay only the excess amount, unless we have indicated otherwise in this policy.

2. **Insurable Interest and Our Liability**
   In the event of a covered loss, we will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

3. **What You Must Do After A Loss**
   In the event of a loss to any property that may be covered by this policy, **you** must:
   a) promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card or charge plate give written notice to the company or bank that issued the card or plate.
   b) protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
   c) separate damaged from undamaged

AP3338

Page 12

personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

d) give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

e) produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

f) as often as **we** reasonably require:
  1) show **us** the damaged property.
  2) at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
  3) produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and

g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:
  1) the date, time, location and cause of loss;
  2) the interest **insured persons** and others have in the property, including any encumbrances;
  3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;
  4) any other insurance that may cover the loss;
  5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
  6) at **our** request, the specifications of any damaged **building structure** or other structure;
  7) evidence supporting any claim under the Credit Card or Check Forgery protection. State the cause and amount of loss.

4. **Our Settlement Options**
In the event of a covered loss, **we** have the option to:
a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or
b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5. "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss **we** will notify **you** of the option or options **we** intend to exercise.

5. **How We Pay For A Loss**
Under **Coverage A—Dwelling Protection**, **Coverage B—Other Structures Protection** and **Coverage C—Personal Property Protection**, payment for covered loss will be by one or more of the following methods.
a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:
  1) the whole amount of loss for property covered under **Coverage A—Dwelling Protection** and **Coverage B—Other Structures Protection**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or
  2) the whole amount of loss for property covered under **Coverage C—Personal Property Protection**, without deduction for depreciation, is less than $2,500 and if **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment

AP3338

Page 13

will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss. **You may make claim for additional payment as described in paragraph "c," and paragraph "d" below, if applicable, if you repair or replace the damaged,** destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under **Coverage A- Dwelling Protection** and **Coverage B—Other Structures Protection, we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions— Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss**, and shall not be payable for any losses excluded in **Section I —Your Property**, under **Losses We Do Not Cover Under Coverages A, B and C**, item 16.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1) the replacement cost of the part(s) of the **building structure(s)** with equivalent construction for similar use on the same premises;
2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same residence premises; or
3) the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A—Dwelling Protection** or **Coverage B—Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1) property covered under **Coverage C — Personal Property Protection**;
2) property covered under **Coverage B — Other Structures Protection** that is not a **building structure**;
3) land.

Payment under "a," "b," or "c" above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures.

d) Personal Property Reimbursement. When the Policy Declarations show that the Personal Property Reimbursement provision applies under **Coverage C —**

AP3338

Page 14

**Personal Property Protection**, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the limit of liability shown on the Policy Declarations for **Coverage C — Personal Property Protection**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2), or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Coverage A — Dwelling Protection** and **Coverage B — Other Structures Protection**, except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes but is not limited to memorabilia, souvenirs and collector's items; or
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.

e) In the event of the total loss of **your** dwelling and all attached structures covered under **Coverage A — Dwelling Protection, we** will pay the limit of liability shown on the Policy Declarations for **Coverage A — Dwelling Protection**.

In the event of the total loss of all structures covered under **Coverage B — Other Structures Protection, we** will pay the limit of liability shown on the Policy Declarations for **Coverage B — Other Structures Protection.**

6. **Our Settlement Of Loss**
**We** will settle any covered loss with **you** unless another payee is named in the policy. **We** will settle within 30 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award, or a court judgment.

In the event that there is a disagreement between **you** and **us** as to the total amount of loss, we will offer payment to you for the amount of loss agreed-upon within 30 days of said agreement

7. **Appraisal**
If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us**, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the

AP3338

umpire. A written award agreed upon by any two will determine the amount of loss.

Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8. **Abandoned Property**
We are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

9. **Permission Granted To You**
   a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.
   b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
When we pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**
We have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

We will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed sworn proof of loss.

When we settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

12. **Suit Against Us**
Any suit or action must be brought within one year after the inception of loss or damage.

The bankruptcy or insolvency of an insured person or that person's estate won't relieve **us** of any obligation.

The following provision applies to all actions in any way related to accidents or injury occurring in the state of Louisiana:

A person or organization may bring a lawsuit against **us**, including, but not limited to a lawsuit to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by **us**, the insured and the claimant or the claimant's legal representative.

13. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
   a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
   b) pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

16. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of

AP3338

Page 16

all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**

    When the Policy Declarations indicates that the Property Insurance Adjustment condition applies, you agree that, at each policy anniversary, **we** may increase the limit of liability shown on the Policy Declarations for **Coverage A—Dwelling Protection** to reflect one of the following:

    a) the rate of change in the Index identified in the "Important Payment and Coverage Information" section of the Policy Declarations. The limit of liability for **Coverage A—Dwelling Protection** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1000; or

    b) the minimum amount of insurance coverage **we** are willing to issue for the succeeding premium period under **Coverage A—Dwelling Protection** for **your dwelling** and other property **we** cover under **Coverage A—Dwelling Protection**.

    Any adjustment in the limit of liability for **Coverage A—Dwelling Protection** will result in an adjustment in the limit of liability for **Coverage B—Other Structures Protection** and **Coverage C—Personal Property Protection** in accordance with **our** manual of Rules and Rates.

    Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **us** at the time a change in limits is made.

    We will not reduce the limit of liability shown on the Policy Declarations without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the limits of liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the limits of liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

18. **Mortgagee**

    A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

    We will:
    a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
    b) give the mortgagee at least 10 days notice if **we** cancel this policy for nonpayment of premium, or at least 30 days notice if **we** cancel for any other reason.

    The mortgagee will:
    a) furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
    b) pay upon demand any premium due if an **insured person** fails to do so;
    c) notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
    d) give **us** the mortgagee's right of recovery against any party liable for loss; and
    e) after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

    This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

AP3338

19. **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Loss**

    In the event of a covered loss under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection**, we will pay up to $10,000 for mold, fungus, wet rot or dry rot remediation. This Condition does not increase or decrease the limits of liability under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection**, and **Coverage C—Personal Property Protection**.

    Remediation means:
    (a) the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property we cover under **Coverage A—Dwelling Protection, Coverage B—Other Structures Protection** or **Coverage C—Personal Property Protection** damaged by a covered loss;
    (b) payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable; and
    (c) any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

    **Remediation** does not include any amounts other than those described in (a), (b), or (c) above.

## Section II – Family Liability and Guest Medical Protection

### Coverage X
### Family Liability Protection

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**, regardless of the amount of damages sought. If an **insured person** is sued for covered damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability by the payment of judgments or settlements.

**Losses We Do Not Cover Under Coverage X:**

1. **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, the **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her own conduct;
   a) such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
   b) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3. **We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

AP3338                                                                 Page 18

4. We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   c) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn and garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

6. We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   d) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

   This exclusion does not apply to **bodily injury** to a **residence employee**.

7. We do not cover **bodily injury** or **property damage** arising out of:
   a) the negligent supervision by an **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**;

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under **Section II** of this policy.

8. We do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   We do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. We do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   We do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

10. We do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

11. We do not cover **bodily injury** or **property damage** arising out of the rendering of, or

AP3338

Page 19

failure to render, professional services by an insured person.

12. We do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

    We do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

13. We do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

14. We do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

15. We do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. We do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

17. We do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot or dry rot.

18. We do not cover any liability imposed upon any **insured person** by any governmental authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot or dry rot.

## Coverage Y
## Guest Medical Protection

### Losses We Cover Under Coverage Y:

**Allstate** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:
1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the bodily injury:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

### Losses We Do Not Cover Under Coverage Y:

1. We do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, the **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her own conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. We do not cover bodily injury to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

AP3338

Page 20

3. We do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:

   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheel chair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower;
   h) **bodily injury** to a **residence employee**.

6. We do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

   This exclusion does not apply to **bodily injury** to a **residence employee**.

7. We do not cover **bodily injury** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. We do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   We do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. We do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person**.

10. We do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person**.

    We do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

11. We do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

13. **We** do not cover **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

14. **We** do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot or dry rot.

## *Additional Protection*

**We** will pay, in addition to the limits of liability:

1. **Claim Expenses**
   **We** will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
   c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
   d) up to $100 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at **our** request.
   f) prejudgment interest awarded against an **insured person** on the part of the judgment **we** pay. After **we** make an offer to pay the applicable limit of liability, **we** are not obligated to make any further prejudgment interest payments.

2. **Emergency First Aid**
   **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
   At **your** request, **we** will pay up to $250 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

   **We** will not pay for **property damage**:
   a) to property covered under **Section I** of this policy;
   b) to property intentionally damaged by an **insured person** who has attained the age of 13;
   c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
   d) arising out of:
      1) past or present business activities;
      2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
      3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft. **We** will pay up to $500 for damage to property of others caused by motorized land vehicles designed principally for recreational use off public roads, not subject to motor vehicle registration and not owned by an **insured person**.

## *Section II Conditions*

1. **What You Must Do After An Accidental Loss**
   In the event of **bodily injury** or **property damage**, **you** must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;

    4) the names and addresses of any witnesses.
b) Promptly send us any legal papers relating to the accident.
c) At our request, an **insured person** will:
    1) cooperate with us and assist us in any matter concerning a claim or suit;
    2) help us enforce any right of recovery against any person or organization who may be liable to an **insured person**;
    3) attend any hearing or trial.
d) Under the **Damage To Property Of Others** protection, give us a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show us any damaged property under that person's control.

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do—Coverage Y—Guest Medical Protection**
If someone is injured, that person, or someone acting for that person, must do the following:
a) Promptly give us written proof of the loss. If we request, this must be done under oath.
b) Give us written authorization to obtain copies of all medical records and reports.
c) Permit doctors we select to examine the injured person as often as we may reasonably require.

3. **Our Payment Of Loss—Coverage Y—Guest Medical Protection**
We may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by us or an **insured person**.

4. **Our Limits Of Liability**
Regardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under **Coverage X—Family Liability Protection** for damages resulting from one occurrence will not exceed the limit shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

Our total liability under **Coverage Y—Guest Medical Protection** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
We are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights To Recover Payment - Coverage X—Family Liability Protection**
When we pay any loss, an **insured person's** right to recover from anyone else becomes ours up to the amount we have paid. An **insured person** must protect these rights and help us enforce them. However, our right to recover is subordinate to the injured person's right to be fully compensated for their injuries.

7. **Suit Against Us**
No suit or action can be brought against us under **Coverage X—Family Liability Protection** until the obligation of an **insured person** to pay is finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person, and us.

No one shall have any right to make us a party to a suit to determine the liability of an **insured person**.

The bankruptcy or insolvency of an insured person or that person's estate won't relieve us of any obligation.

AP3338          Page 23

The following provision applies to all actions in any way related to accidents or injury occurring in the state of Louisiana:

A person or organization may bring a lawsuit against **us**, including, but not limited to a lawsuit to recover on an agreed settlement or on a final judgment against an insured; but **we** will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by **us**, the insured and the claimant or the claimant's legal representative.

8. **Other Insurance—Coverage X—Family Liability Protection**
   This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

# Section III – Optional Protection

## Optional Coverages You May Buy

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms and conditions of the specific Optional Coverage.

1. **Coverage BC**
   **Building Codes**
   **We** will pay up to 10% of the amount of insurance on the Policy Declarations under **Coverage A—Dwelling Protection** to comply with local building codes after covered loss to dwelling or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the **dwelling**.

2. **Coverage DP**
   **Increased Coverage On Electronic Data Processing Equipment**
   The $3,000 limitation on electronic data processing equipment under **Coverage C—Personal Property Protection**, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

3. **Coverage F**
   **Fire Department Charges**
   The $250 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4. **Coverage G**
   **Loss Assessments**
   If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

   **We** will pay **your** share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:
   a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or
   b) **bodily injury** or **property damage** covered under **Section II** of this policy.

   Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

   **Allstate** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property**

AP3338