UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | NO. 05-4182 |
| | SECTION "K" (2) |

FILED IN:   05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073, 06-6314,
05-6324, 05-6327, 05-6359, 06-0020, 06-1885, 06-0225, 06-0886,
06-11208, 06-2278, 06-2287, 06-2346, 06-062545, 06-3529, 06-4065,
06-4389, 06-4634, 06-4931, 06-5032, 06-5042, 06-5159, 06-5163,
06-5367, 06-5471, 06-5771, 06-5786, 06-5937, 06-7682, 07-0206,
07-0647, 07-0993, 07-1284, 07-1286, 07-1288, 07-1289, 07-1349

PERTAINS TO:   MRGO

___

### CONSOLIDATED CLASS REPRESENTATIVES' SUPPLEMENTAL POST-HEARING MEMORANDUM IN OPPOSITION TO WASHINGTON GROUP INTERNATIONAL, INC.'S MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

This *Supplemental Memorandum* is respectfully submitted on behalf of Consolidated Class Plaintiffs in the captioned consolidated case.

### ARGUMENT

At the heart of Washington Group International, Inc.'s (hereafter "WGII") *Motion to Dismiss* is its assertion that, as a government contractor, it cannot be held liable for actions performed in the

1

course and scope of its government contract. Yet, it is virtually undisputed that WGII remains liable for any and all acts of negligence or fault that it commits regardless of whether those tortious acts occurred within the scope of the Government project.[1]  *Compare, Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 801 (5th Cir. 1993); *Mitchell v. Lone Star Ammun., Inc.*, 913 F.2d 242, 245-246 (5th Cir. 1990)("the protective shield in favor of the contractor collapses when the actions of the government contractor -- and not those of the Government -- produce the damaging defect. In such a situation, fairness dictates that a government contractor should not be permitted to escape liability by asserting the sovereign immunity of the Government"); *Lombard v. N.O. Naval Support Activity Comm'n.*, 2004 U.S.Dist.Lexis 25771 at *33-34 (E.D.La.)(Africk).

Because WSG has couched its *Motion* in terms of a request for dismissal based on the lack of subject matter jurisdiction and the failure to state a claim, the Court should not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969-1970 (2007). *See also, Raila v. U.S.*, 355 F.3d 118, 119 (2nd Cir. 2004). Based on the allegations contained in Plaintiffs' prior pleadings, coupled with the exhibits attached hereto, it is abundantly clear that Plaintiffs can prove a set of facts showing the fault of WGII and its liability to Plaintiffs. Dismissal at this juncture is therefore inappropriate.

Attached hereto as Exhibits "A"-"D" are a series of aerial photographs, recently uncovered in discovery, which demonstrate the close causal link between the excavation activities of WGII and the resultant breach in the Inner Harbor Navigational Canal (hereinafter "IHNC") flood wall at the

---

[1] While WGII challenges the fault claims raised by Plaintiffs, it does not challenge the assertion that it is liable for acts of fault committed in the course and scope of its project, but instead challenges the extent to which Plaintiffs have properly pled those acts of fault. *See, Reply Memorandum in Support of Motion to Dismiss*, Doc. No. 5516.1 at pp. 3-6.

North Breach Site. Exhibit "A" shows the buildings and batture extant between the flood wall and the IHNC as it existed prior to the excavation, with the sites of excavation highlighted by red boxes. Both Exhibits "A" and "B"– the latter of which shows the site immediately after excavation with the buildings removed as part of the excavation project – also highlight in yellow the point of the north flood wall breach during Katrina. Exhibit "C", an aerial photograph taken in April of 2005, shows substantial excavation activity adjacent to the north flood wall breach site. Exhibit "D" demonstrates the existence of heavy flood waters immediately after Hurricane Katrina which inundated the Lower Ninth Ward in the area immediately surrounding the points of excavation. These photographs provide powerful evidence of the close factual relationship between the excavation activities and the ultimate flood wall breaches.

Similarly Exhibits "E" - "H" show substantially similar activity adjacent to the flood wall at the South Breach Site. In particular, Exhibit "G", an aerial photograph taken in April of 2005, reveals an excavation lining up directly at the southern most failure of the IHNC South Break Location. This area also the deepest portion of the breach site, as seen in Exhibit "H."

The photographs attached as Exhibits "I"-"M" depict just some of the specific activities of WGII that caused or contributed to the flood wall breaches. A sewer lift station was excavated at least twenty-one (21) feet below the surface from the area immediately adjacent to the flood wall at the south breach of the IHNC. This excavation included the removal of thirty (30) foot pilings from beneath the sewer lift station that extended well below the depth of the sheet pile curtain supporting the adjacent flood wall. Exhibits "I"-"K" show the excavation work that demolished the Lift Station, removed pilings once at the foundation of the Lift Station, and left gaping holes in the surface of the batture where the pilings had been excavated. *See,* Exhibits "I"-"K".

Exhibits "L"-"M" depict the Cofferdam Excavation undertaken in an area adjacent to the flood walls at the north breach site to a depth of at least twenty three (23) feet below the surface. Again, this excavation is believed to have extended well below the depth of the sheet pile curtain supporting the adjacent flood wall.

Plaintiffs have already alleged - and provided factual support for the assertion - that this extensive excavation undermined the integrity of the soils in the immediate vicinity of the flood wall breaches and contributed to those breaches. These photographs graphically demonstrate both the acts of fault committed by WGII in conducting the excavation at issue and the resultant damage that ensued as a result.

Such photographic evidence is fatal to the *Motion to Dismiss* filed by WGII. WGII's *Motion* follows two (2) threads – (1) that it is immune as a government contractor and (2) that there is no showing of duty owed by WGII to Plaintiffs. The first argument is defeated if, as here, it is shown that the individual conduct of WGII in improperly excavating the property at issue caused the levee breaches. The second argument fails to the extent that the levee breaches that inflicted harm upon the plaintiffs is easily associated with this fault-ridden conduct of WGII. *Compare, Cleco Corp. v. Johnson*, 01-0175 (La. 09/18/01); 795 So. 2d 302, 307; *Fontenot v. Fontenot*, No. 93-2479 (La. 4/11/94); 635 So. 2d 219, 222. One can easily associate the improper excavation of soil next to a flood wall – as WGII did in this case – with the underseepage that undermined the levee, an ease of association graphically demonstrated by the accompanying photographs.[2]

---

[2] It is indeed interesting that WGII cites solely to *Roberts v. Benoit*, 605 So.2d 1032 (La. 1991), in its ease of association analysis. More appropriate would be *Fowler v. Roberts*, 556 So.2d 1 (La. 1989), in which the Louisiana Supreme Court addressed the duties a public body owes to the citizenry at large in the undertaking of public functions. *Fowler* specifically held that "governmental agencies in the performance of governmental functions may be subjected to the imposition of certain duties, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty. The determination whether a particular duty should be imposed on a particular governmental agency is a policy question. A duty may be imposed by legislation or by a rule of law." *Id.* at 6. Therefore, the question of whether WGII's performance of a governmental project contemplates a

Under no circumstances can this Honorable Court categorically exclude the viability of facts suggesting liability on the part of WGII not covered by the government contractor exception. It cannot therefore dismiss this claim.

## CONCLUSION

For the foregoing reasons, and for those expressed in their prior memoranda, Consolidated Class Plaintiffs move this Court to deny the *Motion to Dismiss* brought by Washington Group International, Inc.

> Submitted by:
>
> PLAINTIFFS' LIAISON COUNSEL
> s/ Joseph M. Bruno
> JOSEPH M. BRUNO
> PLAINTIFFS LIAISON COUNSEL
> LA Bar Roll Number: 3604
> Law Offices of Joseph M. Bruno
> Third Floor, 855 Baronne Street
> New Orleans, Louisiana 70113
> Telephone: (504) 525-1335
> Email: jbruno@jbrunolaw.com
>
> MR-GO PLAINTIFFS SUB-GROUP
> LITIGATION COMMITTEE
>
> s/ James Parkerson Roy
> JAMES PARKERSON ROY
> MR-GO PSLC Liaison Counsel
> LA Bar Roll Number: 11511
> Domengeaux Wright Roy & Edwards LLC
> Post Office Box 3668
> Lafayette, Louisiana 70502
> Telephone: (337) 593-4190 or (337) 233-3033
> Email: jimr@wrightroy.com
>
> for

---

duty to the public at-large devolves into the traditional "ease of association" test set forth in the duty-risk analysis, *i.e.,* would a contractor in the performance of its duties reasonably assume that its actions would have a particular impact on the public, such that its performance should adhere to a recognized standard of care.

        MR-GO PLAINTIFFS SUB GROUP
        LITIGATION COMMITTEE

        Jonathan Andry (The Andry Law Firm,
           New Orleans, Louisiana)
        Clay Mitchell (Levin, Papantonio, et al.,
           Pensacola, Florida)
        Pierce O'Donnell (O'Donnell & Associates,
           Los Angeles, California)
        James Parkerson Roy (Domengeaux, Wright, et al.,
           Lafayette, Louisiana)

## **CERTIFICATE OF SERVICE**

     I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 19th day of November, 2007.

                         /s/ Joseph M. Bruno
                         Joseph M. Bruno