UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| In Re:  KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION NO. 05-4182<br><br>SECTION "K" |
| PERTAINS TO:<br>NO.  07-5023<br>        07-5040 | JUDGE DUVAL<br><br>MAGISTRATE WILKINSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN OPPOSITION TO MOTION FOR INTERVENTION**

NOW INTO COURT, through undersigned counsel, comes the STATE OF LOUISIANA, individually and on behalf of STATE OF LOUISIANA, DIVISION OF ADMINISTRATION *ex rel* THE HONORABLE CHARLES C. FOTI, JR., THE ATTORNEY GENERAL FOR THE STATE OF LOUISIANA, who respectfully file this Memorandum in Opposition to Motion for Intervention filed by Ashton R. O'Dwyer, Jr. et. al.

### I.  BACKGROUND

This case involves claims by plaintiffs, State of Louisiana, individually and on behalf of State of Louisiana, Division of Administration, ("the State") against the United States of America through the Army Corps of Engineers.  The State, through Honorable Charles C. Foti, Jr., the Attorney General for the State, originally filed this action in the Court on August 29, 2007.[1]  Now petitioner Ashton O'Dwyer seeks to intervene in this suit pursuant to the provisions of Rule 24 of the Federal Rules of Civil Procedure alleging the parties of whom he is seeking intervention "have an interest relating to the property or transactions which is the subject matter of the referenced actions, and that the disposition of the actions may, as a practical matter, impair or impede the ability of the parties seeking to intervene to protect those

---

[1] See 07-5040, Rec. Doc. 1.

interests, and that the claims[2] against the State, its agencies, etc."[3]  This claim is predicated on the grounds that the State was dismissed from O'Dwyer's previous lawsuits on the basis of the State's sovereign immunity, among other deficiencies addressed by the Court.[4]  O'Dwyer's claim seeks personal injury and wrongful death, among a litany of other claims, which the Court has already dismissed.[5]

Despite denials, warnings, and even sanctions being imposed upon O'Dwyer for the same types of generalized allegations which now appear in the proposed complaint,[6] which forms part of the filings by O'Dwyer in this current motion to intervene before the court, O'Dwyer's assertions are duplicative in nature and his behavior is borderline harassment. Furthermore, there is no evidence that the persons on behalf of whom O'Dwyer purports to intervene have any right of action that would permit them to intervene in this suit between the State and the United States of America.[7]

The jurisdictional basis and legal theories advanced by Ashton O'Dwyer towards the State in the proposed Intervening Complaint have been repeatedly alleged against numerous defendants, including the State, and have been addressed separately by the Court in prior rulings.  The disposition of these cases have resulted in dismissals of the State.[8]  Thus, Plaintiffs oppose O'Dwyer's intervention into the instant action.

## II.  LAW AND ARGUMENT

### A. Rule 24 of the Federal Rules of Civil Procedure

---

[2] O'Dwyer's claims would otherwise be prescribed.
[3] See 05-4182, Rec. Doc. 8735.
[4] See 05-4182 Rec. Doc. 8735.
[5] See 05-4182, Rec. Doc. 788.
[6] See 05-4181, Rec. Doc. 8735-8.
[7] See 05-4181, Rec. Doc. 788; See 05-4181, 05-6073; 05-4182, Rec. Doc. 1231; See also, 05-4182, Rec. Doc. 1731; See also 06-4389; 06-6099, Rec. Doc. 2345; See 06-5786, Rec. Doc. 2919; See 06-4389; 06-6099; 06-5786, Rec. Doc. 3666; See 06-4389; 06-6099, Rec. Doc. 3779.
[8] See 05-4181, Rec. Doc. 788; See 05-4182.

A motion to intervene must set forth the grounds for intervention.[9] Thus, a motion to intervene must allege specific facts that demonstrate that the petitioners have a right to intervene. In order to establish that intervention is appropriate, a petitioner must show that he is entitled to either intervention by right or permissive intervention under F.R.C.P. Rule 24. Both types of intervention require that the motion to intervene be timely filed. This Circuit has established the following four factors to be considered when assessing the timeliness of such an application: (1) the length of time the applicants knew or should have known of their interest in the case; (2) prejudice to existing parties caused by the applicants' delay; (3) prejudice to the applicants if their motion is denied; and (4) any unusual circumstances.

A party seeking to intervene as of right must meet four requirements: (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.[10] Failure to satisfy any one requirement precludes intervention of right.[11] In order to establish permissive intervention, a claimant must show that a statute of the United States confers upon him a conditional right to intervene, or that his claim or defense and the main action have a question of law or fact in common. In assessing whether such intervention is appropriate, a Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.[12]

---

[9] F.R.C.P. 24.
[10] New Orleans Pub. Serv. Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 463 (5 Cir. 1984).
[11] Sierra Club v. Espy 18 F.3d 1202, 1205 (5 Cir. 1994).
[12] F.R.C.P. Rule 24.

Intervention is not an independent proceeding, but an ancillary and supplemental one which must be in subordination to the main proceeding.  "The intervention rule is intended to prevent multiple lawsuits where common questions of law or fact are involved, but is not intended to allow the creation of whole new lawsuits by the intervenors."[13]  Thus, it follows that an intervenor is admitted to the proceeding as its stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel and alteration of the nature of the proceeding.[14]  Having been permitted to come into the cause because of his or her interest in the subject matter of the suit, the intervenor is restricted to the issue of that subject matter and cannot insist on raising or trying other issues not involved.  Consequently, the intervenor is bound by the previous proceedings and the record of the case at the time of his or her intervention.

O'Dwyer's Motion to Intervene and accompanying Memorandum in Support of Motion to Intervene fails to allege specific facts that demonstrate the petitioners have a right to intervene.  The only support given to this assertion is a generalized statement that parties seeking leave to intervene have an interest in the subject matter of the referenced actions.  In the Memorandum in Support of Motion for Leave to Intervene, O'Dwyer's only explanation is the State has waived its 11th Amendment immunity by filing suit in federal court.[15]  Whether O'Dwyer is seeking intervention as of right or is seeking permissive intervention is not clear.  Either way, his failure to identify with specificity the facts and supporting reasons for

---

[13] Deus v. Allstate 15 F.3d 506 (C.A. 5 (La.) 1994), citing Washington Elec. Coop v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92 (2d Cir. 1990).
[14] Vinson v. Washington Gas Light Co., 321 U.S. 489 (1944).
[15] See 05-4182, Rec. Doc. 8735 and 8735-2.

intervention warrant a denial of his Motion to Intervene.[16]   As to O'Dwyer's Motion to Intervene, under either aforementioned form of intervention, Plaintiffs object.[17]

O'Dwyer's Motion to Intervene fails to meet the first requisite of a Rule 24 intervention, in that it is untimely.  O'Dwyer cites to other suits filed by the State of Louisiana, namely 05-4157, 06-3813 and 06-3552, wherein he alleges waiver of Eleventh Amendment Immunity by virtue of persistent and systematic invocation of the jurisdiction of the federal court system in Louisiana.[18]  The earliest of the suits to which O'Dwyer refers is over two (2) years old and thus O'Dwyer's claim could have been properly brought within the requisite time period which unfortunately is now expired.

Additionally, O'Dwyer's past suits alleging identical claims against the State preclude his intervention into the instant case under the doctrine of *res judicata*.  In order for *res judicata* to apply, four elements must be satisfied:  (1) the parties must be identical in both suits; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must have been a final judgment on the merits; and (4) the same cause of action must be involved in both cases.[19]  In his intervention, all of the requirements of *res judicata* are satisfied, as is further discussed herein.  "The law, quite simply, does not allow him to intervene in this case in order to relitigate the same claims involving identical facts against the same defendants that he already had an opportunity to litigate and protect his rights."[20]

---

[16] See 05-4182, Rec. Doc. 8735 and 8735-2.

[17] Claims pursued herein appear to be O'Dwyer's personal claims disguised as an attempt to make claims on behalf of certain claimants who O'Dwyer has represented in various Hurricane Katrina related litigation.  Therefore, O'Dwyer should not be allowed to file any other pleadings in the Court without prior permission from the Court.  See 05-4181, Rec. Doc. 788 at p. 31; see also 05-4182, REc. Docs. 8735-3 to 8735-6; see also 05-4182, Rec. Doc. 3990 at p. 3, wherein O'Dwyer openly acknowledges that despite the sanctions imposed on him by the Court, that he will continue to pursue the State and its agencies 'relentlessly.'

[18] See 05-4182, Rec. Doc. 8735-2.

[19] Intelogic Trace, Inc. v. Ernst & Young, LLP 200 F.3d 382, 386 (5 Cir. 2000).

[20] See Yazdchi v. American Honda Finance 2005 WL 1943611 at p. 3 (N.D. Tex), holding in similar situation that the law does not permit a second bite at the apple through intervention.

Since his claim is time-barred and the causes of action for which he seeks to intervene have previously been dismissed by the court, the motion to intervene should be denied.

B. **Repetitive Filings, Warnings and Sanctions**

Unfettered by the court's denials, dismissals, warnings and sanctions, coupled with an attempt to circumvent the court's prior adverse rulings, O'Dwyer has now filed a Proposed Intervening Complaint which blatantly ignores the Court's prior rulings. The following addresses by topic the patently duplicative assertions by O'Dwyer, and further demonstrates the complete and total disregard of the authority of the court and its rulings by O'Dwyer.

1. **Jurisdiction**

The court has already held, and should not have to address again that the "following jurisdictional allegations have no merit."[21]

   a. **Various Federal Statutes**

Of the eight federal statutes previously urged by O'Dwyer as jurisdictional grounds over the claims asserted, five federal statutes are again contained in the Proposed Intervening Complaint, and are statutes which the court has already held are "blatantly unsupported allegations."[22]

   **(1) The Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701**

This Court has already held that O'Dwyer's use of the OPA has no jurisdictional merit due to its failure to meet the prerequisites for such a claim, and further, that the statute does not

---

[21] See 05-4181, Rec. Doc. 788 at p. 10.
[22] See 05-4181, Rec. Doc. 788 at p. 12 ("Plaintiff's wholesale list of federal jurisdictional grounds borders on the absurd…this litany of statutes for which no factual underpinning is provided will not be allowed to stand; as such, the Court finds counsel's actions herein verging on sanctionable under FRCP 11." See also 05-4182, Rec. Doc. 8735-8 at p. 36.

contemplate the harm alleged herein—damages resulting from natural disaster and catastrophic occurrence.[23]

**(2) The Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601** *et. seq.*

O'Dwyer's use of CERCLA as a jurisdictional basis for this intervention has also been denied, as this Court previously held that "this statute has no bearing on the factual underpinnings of this suit with respect to any of the named defendants [of which the State of Louisiana was included] and shall be dismissed."[24]

**(3) The Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1365 and The Clean Water Act ("CWA"), 33 U.S.C. § 1251**

This Court previously addressed O'Dwyer's next two jurisdictional basis claims together, holding that these statutes are "not designed to address the facts of the case at hand," and "there are no allegations that the required notice has been provided as has been found to be a condition precedent to jurisdiction. As such, this jurisdictional allegation shall be dismissed."

**(4) The Clean Air Act**

---

[23] See 05-4182, Rec. Doc. 788 at p. 13. Specifically, the Court held that "this statute pertains only to the discharge, or threatened discharge of oil…the statute further requires that all claims for removal costs or damages shall be presented first to the responsible party or guarantor of the source. 33 U.S.C. § 2713(a). A claim under OPA is a 'request, made in writing for a sum certain…the presentation of a claim is mandatory condition precedent to filing a private lawsuit under OPA. (citation omitted). As such, this jurisdictional claim has no merit as this prerequisite has not been fulfilled. Furthermore, the statute does not contemplate the harm alleged herein—damages resulting from a natural disaster and catastrophic occurrence."

[24] See 05-4181, Rec. Doc. 788 at p. 13-14. The Court also stated that "these statutes prohibit the discharge or pollutants. To that end, the CWA establishes a permit system and prohibits any discharge without authorization by permit. (Citation omitted.) A private right of action for citizens is provided…[and] requires a 60 day notice of the alleged violation under the CWA to the Administrator of the EPA, the state in which the alleged violation occurred, and to any alleged violator. (Citation omitted.) To begin, it appears to the court that this law is not designed to address the facts of the case at hand. This statute addresses on-going pollution concerns, not the alleged results of catastrophic flooding."

The Court addressed O'Dwyer's use of the Clean Air Act, stating "like the WPA, this statute addresses violations of federal emission standards.  It may not be utilized to address wholly past violations of the Act and it contains a sixty-day notice provision like that found in WPA.  As such, for the same reasons noted above, this jurisdictional invocation shall be dismissed."[25]

### b. Louisiana Environmental Laws

O'Dwyer again invokes as a basis for jurisdiction the same Louisiana Environmental Laws for which the Court has previously refused jurisdiction, stating that plaintiff has cited these statutes as a basis for jurisdiction "without further explanation or citation.  The Court has been provided no specific factual allegations or arguments as to how these laws were violated.  Louisiana statutes would not provide federal jurisdiction unless the court would exercise its supplemental jurisdiction."[26]  The Court then reminded "counsel that as a practicing attorney, this kind of buckshot pleading will not be permitted."[27]  Further, the Court warned that "pleadings filed in the nature of those by counsel in *O'Dwyer* belie the seriousness of this matter and frankly make a mockery of the Court's duties to justice and application of the law.[28]

### c. Louisiana Criminal Law Code

O'Dwyer also lists, as a basis for jurisdiction, several Louisiana Criminal Law Code provisions, only by reference to their legal citation, including:

(1) LSA R.S. 14:39 – Negligent Injuring;

(2) LSA R.S. 14:55 – Aggravated Criminal Damage to Property;

(3) LSA R.S. 14:56 – Simple Criminal Damage to Property; and

---

[25] See 05-4181 Rec. Doc. 788 at p. 14.
[26] See 05-4181, Rec. Doc. 788 at p. 16.
[27] See 05-4181, Rec. Doc. 788 at p. 16.
[28] See 05-4181, Rec. Doc. 788 at p. 16.

>   (4)  LSA R.S. 14:134 – Malfeasance in Office.[29]

In its previous Order and Reasons, the Court has also addressed O'Dwyer's attempt to bring suit based upon these criminal statutes before, holding "neither can plaintiffs bring a criminal action, nor can a private right of action be derived therefrom.  Thus, this jurisdictional allegation is devoid of merit and will not be addressed again."[30]

**2. Constitutional Challenges**

The Court has also addressed the alleged constitutional violations both federal and state, holding: "In the case at bar, the Court has already noted its belief that no constitutional violation has been alleged.  Furthermore, taking the *Seigert* approach, plaintiffs (O'Dwyer) fail to demonstrate how any of the conduct alleged was not objectively reasonable in light of clearly established law at the time the challenged conduct occurred."[31]  The Court goes on to so astutely recognize that "counsel fails to comprehend that with respect to federal claims brought pursuant to civil rights laws, constitutional violations must be stated in non-conclusory form."[32]  Ultimately the Court that the remaining claims, which are the *only* claims in common with the instant suit, "are fundamentally tort claims which require a determination whether plaintiffs have exhausted their administrative remedies under the Federal Torts Claim Act."  The Court then gives a detailed descriptive list of evidence before it and held that the administrative requirements had not been met, and therefore O'Dwyer's claim was premature.[33]

Despite the clear and unequivocal explanation given by the court that the State is not a proper party that can be sued in a 1983 civil action, and dismissing these claims against the

---

[29] See 05-4182, Rec. Doc. 8735-8 at p. 36.
[30] See 05-4181, Rec. Doc. 788 at p. 4.
[31] See 05-4181, Rec. Doc. 788 at p. 23.
[32] See 05-4181, Rec. Doc. 788 at p. 24.
[33] See 05-4181, Rec. Doc. 788 at p. 30.

State, O'Dwyer yet again raises issue with the State by asserting "violations of 42 U.S.C. § 1983."[34]

### a. Failure to Notice Claim of Constitutional Question

Federal Rule of Civil Procedure 5.1 was added in 2006. This rule implements 28 U.S.C.A. § 2403, replacing the final three sentences of Federal Rule of Civil Procedure 24(c), and requires a party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute to file a notice of constitutional question and serve it on the United States Attorney General or state attorney general. The party must promptly file and serve the notice of constitutional question. Rule 5.1 goes beyond the requirements of 28 U.S.C.A. § 2403, and the former Rule 24(c) provisions by requiring notice and certification of a constitutional challenge to any federal or state statute, not only those "affecting the public interest." No evidence is before the Court that O'Dwyer has filed the requisite Notice of Constitutional Question.

### b. Eleventh Amendment Immunity

In direct contravention to the Court's prior ruling, O'Dwyer again, in his Memorandum in Support of Motion for Leave to Intervene,[35] raises the issue of the State's alleged waiver of immunity by instituting suit in this forum. However, the Court has also addressed this same issue as it relates to O'Dwyer claims, and held: "the Court cannot entertain jurisdiction over the State of Louisiana as they a re protected from suit by the doctrine of sovereign immunity as found in the Eleventh Amendment of the constitution. By statute, the State of Louisiana has not waived its sovereign immunity for suits brought in federal court based on violations of

---

[34] See 05-4182, Rec. Doc. 8735-8 at p. 46; see also 05-4181, Rec. Doc. 788 at p. 27.
[35] See 05-4182, Rec. Doc. 8735-2.

"constitutional, civil and human rights." Thus, the Eleventh Amendment bars suit against a state."[36]

Furthermore, the "State or any political subdivision thereof…engaged in any operational decisions or activities in the aftermath of Hurricanes Katrina and Rita shall not be civilly liable for the death of, or any injury to, any person or damage to property as a result of such activity, except in the event of gross negligence or willful misconduct."[37]

In the absence of statute or rule, one is ordinarily not permitted to intervene to assert a claim adverse to both of the original parties to the subject matter of the suit, or to introduce a different and extraneous cause of action or an independent controversy, and may not change the issues between the parties or raise new issues.

The original complainant in legal proceedings may invoke the general principles of estoppel against one attempting to intervene and assert adverse claims. An intervenor may come under the rule that a party to litigation will not be permitted to assume inconsistent or contradictory positions with respect to the same matter in the same suit or a successive series of suits. The intervenor may be properly met by the rule that it has no right to change the character of the proceeding and thereby obtain relief of a special or collateral character not within the main scope of the original action or germane thereto.

The discretion regarding whether to grant a motion for intervention into a pending legal proceeding rests generally in the sound discretion of the trial court. Because the trial courts ultimate ruling on the motion to intervene involves a matter of discretion, it will not be disturbed on appeal absent an abuse of that discretion.

### III. CONCLUSION

---

[36] See 05-4181, Rec. Doc. 788 at p. 28.
[37] La. R.S. 9:2800.17(A)(1).

For the reasons expressed herein, Plaintiffs assert that O'Dwyer's intervention into the instant litigation is not permissible and thus respectfully request that the Court deny the Motion to Intervene.

>Respectfully submitted:
>
>**CHARLES C. FOTI, JR.**
>**ATTORNEY GENERAL**
>
>____s/ Stacie L. deBlieux_____
>Stacie L. deBlieux (#29142)
>Assistant Attorney Generals
>**LOUISIANA DEPARTMENT OF JUSTICE**
>1885 North Third Street
>Post Office Box 94005
>Baton Rouge, Louisiana  70804-9005
>Telephone: (225) 326-6400
>Facsimile:  (225) 326-6499