UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 "K" (2) |
| | * | JUDGE DUVAL |
| | * | MAG. WILKINSON |
| | * | |
| | * | |
| PERTAINS TO: | * | |
| ALL LEVEE | * | |
| | * | |

**MEMORANDUM IN SUPPORT OF NATIONAL UNION'S MOTION TO DISMISS**

National Union Fire Insurance Company of Pittsburgh, Pa., defendant, through undersigned counsel, in support of its motion to dismiss that the National Union Policy does not cover the plaintiffs' Katrina canal breaches claims states the following:

**Relevant Background**

**1.      The Lawsuit**

On August 10, 2007, the plaintiffs filed the First Supplemental and Amending Levee Master Consolidated Class Action Complaint ("Master Complaint"), in which the plaintiffs added as a defendant, *inter alia*, National Union as the insurer of the Board of Commissioners of East Jefferson Levee District ("EJLD"). The plaintiffs alleged that National Union "had in full force and effect a policy or policies of liability insurance, under the terms, provisions, and

1

conditions of which it assumed the liability for the acts and/or negligence of its insured, EJLD, and against whom the Class Representatives assert their claim under the Louisiana Direct Action Statute, La.R.S. 22:655." (Appendix, p.043, Master Complaint, Document No. 6194, ¶16(j)).[1] The plaintiffs also allege that EJLD had the legal responsibility and duty to conduct the dredging activity of the 17th Street Canal "in a manner that would not compromise the safety of the canal's levee/flood wall system." (Id., p.070, ¶85).  They further allege that "National Union is directly liable to these Plaintiffs as the liability insurer of Defendant EJLD." (Id.).

In the Master Complaint, the plaintiffs state that they are composed of five subclasses of individuals within specified geographic areas of the City of New Orleans, all of whom "sustained damages as a result of the inundation/flooding in this area which occurred during and immediately following the landfall of Hurricane Katrina on or about August 29, 2005, and who/which, as to the defendant Corps only, have, or by a date to be determined by the Court, will have fulfilled whatever administrative claim filing requirements this Court deems applicable in this matter." (Id., pp.044, 046, 048, 050, 052, 054, ¶¶17 & 18(a) – (e)).  The plaintiffs seek to recover damages for property damage, personal injury, and societal harm. (Id., ¶191, p.63-64).

EJLD was first named as a defendant in *Gayle T. Bennett, et al. v. Board of Commissioners for the East Jefferson Levee District, et al.*, Docket No. 07-3130 ("Bennett") (Appendix, pp.100-114) filed August 28, 2006 and served on EJLD on September 12, 2006, and in *Leslie Sims, Jr., et al. v. The Board of Commissioners of the Orleans Levee District, et al.*, Docket No. 06-5116 ("Sims")(Appendix, pp.115-140) and *Elizabeth H. and William Keith DePass, et al. v. The Board of Commissioners of the Orleans Levee District, et al.*, Docket No. 06-5127 ("DePass")(Appendix, pp.141-166) both filed on August 28, 2006 and served on EJLD

---

[1] The appendix contains all of the Policy upon which the complaint is based.  Also attached are copies of specific complaints from the record for ease of the Court's reference.  Citation is made to the page number of the index rather than the specific document attached.

on October 16, 2006.[2]  The plaintiffs in *Bennett* allege in the first paragraph that they are residents, property owners and businesses in Jefferson Parish who "suffered catastrophic flood-related damages during and after Hurricane Katrina." (App. p.100, *Bennett* Petition, ¶1).  They seek to represent a class consisting of certain Jefferson Parish residents, property owners and business entities, "who or which suffered damages as a result of Hurricane Katrina-related flooding on and after August 29, 2005, and thereafter suffered additional damages including but not limited to wrongful death, personal injury, loss of income and other non-economic losses, mental anguish, long term health risks associated with exposure to polluted flood waters, relocation expenses, damage to real property, and damage to personal property." (App. p.105, *Bennett* Petition, ¶15).  They allege that their homes "were flooded with a combination of water from the 17th Street Canal and water that came from other areas and was mixed with the 17th Street Canal." (App. p.106, ¶29).

Similarly, the *Sims* and *DePass* plaintiffs allege they "suffered damages due to the failure of the flood protection and drainage system for the New Orleans East Bank". (App. pp.115-116 & 141-142, *Sims* and *DePass* Complaints, Opening Paragraph).  The only significant substantive difference between the two complaints is the geographic location of the plaintiffs' residences.  In paragraph 8 of each petition, the plaintiffs allege that they owned property that was "damaged and destroyed by flood and rain waters associated with Hurricane Katrina." (Id., pp.119 & 143, ¶8,).  The *DePass* plaintiffs allege that EJLD failed to close drainage lines and the Hoey Canal in order to prevent the flow of water "from the 17th Street Canal into Metairie, which flooded Plaintiffs (sic) properties". (App. p.157, *DePass* Complaint, ¶¶76 & 77).  There is little doubt

---

[2] The *Sims* and *DePass* cases were originally filed federal court, while the *Bennett* case was filed in state court and removed to federal court on June 5, 2007.  The Court remanded *Bennett* on August 31, 2007, which order is under appeal.  The *Sims* and *DePass* lawsuits are part of the Levee cases consolidated in this Section.

that all of the Plaintiffs' claims originate from the damage to their property and personal injuries from the canal breaches during and following Hurricane Katrina.

### 2. The National Union Policy

National Union issued a claims-made-and-reported policy numbered 884-78-97, in which the named insured was East Jefferson Levee District with a policy period of January 1, 2006 to January 1, 2007 (herein "the National Union Policy"). The Policy provides that National Union agrees:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any Claim first made against the Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Company pursuant to the terms of this policy for any Wrongful Act of the Insured in the performance of duties for the Public Entity.

(App. p.013, Certified Copy of the Policy). A "Claim" is defined to mean "a judicial proceeding alleging a Wrongful Act that is filed against an Insured in a court of law or equity and which seeks Damages or other relief", as well as certain administrative proceedings. (Id., p.015). The term "Damages" means "a monetary judgment or settlement agreed to with the consent of the Company." (Id., p.015). Further, a "Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Public Entity on behalf of any Insured or by the Company, whichever comes first." (Id., p.019). Here, the first lawsuit that was filed and served was by the plaintiffs in *Bennett*, which was filed on August 28, 2006, and served on EJLD on or about September 12, 2006. Thus, the Claim was first made at that time.[3]

---

[3] In an "occurrence" policy, the peril insured is the "occurrence" itself. Once the "occurrence" takes place, the policy is triggered even though the suit or claim is not filed or made until after the policy expires. On the other hand, under a claims-made-and-reported policy, it is the making and reporting of a "Claim" that is the peril insured and thus it is the making of a claim that triggers a claims made policy, *regardless* of when the occurrence took place. Robicheaux v. Adly, 779 So.2d 1048, 1052 (La. App. 3 Cir. 2001); see also, Sol Kroll, The Professional Liability Policy "Claim Made," 13 Forum 842, 843 (1978).

4

Furthermore, where written notice of a Claim has been given to National Union pursuant to the Policy, then "any Claim which is subsequently made against the Insureds and reported to the Company Arising Out Of the facts alleged in the Claim for which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act alleged in the claim of which such notice has been given, shall be considered made at the time such notice was given." (Id., p.019).  Since all of the lawsuits that are part of the Levee designation seek Damages for the same or related Wrongful Acts, they are considered to be first made when the *Bennett* case was served on EJLD on September 12, 2006.  For purposes of this motion ONLY, it is assumed *arguendo* that the plaintiffs' Claim satisfies all elements of the insuring agreement, including that the claims were reported to National Union.[4]  Even under such assumption, the National Union Policy does not provide coverage for the plaintiffs' Katrina canal breaches Claims, because the Policy expressly excludes claims:

> … Arising Out of (1) bodily injury to, or sickness, disease, emotional distress or death of any person, (2) damage to or destruction of any property, including loss of use thereof …

(Id., p.016).  Therefore, National Union now files this motion to dismiss because this exclusion precludes coverage of the Plaintiffs' claims under any theory of recovery.

## NATIONAL UNION MUST BE DISMISSED
## BECAUSE THERE IS NO COVERAGE

Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  A motion to dismiss can be granted unless the plaintiff pleads "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1974, 167 L.Ed.2. 929 (2007). "Factual allegations must be enough to raise

---

[4] National Union reserves the right to rely on any other provision or term and to contest any and all facts, in order to defend itself from the Plaintiffs' claims.  However, for purposes of this motion only, National Union assumes that the facts satisfy the contractual provisions so as to trigger coverage under the Policy without regard to any other term or provision.  In that case, the exclusion nevertheless precludes coverage.  Should the Court disagree with National Union, it reserves the right to pursue all other defenses and to contest all facts assumed in this motion.

5

a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted).  Generally, in deciding the motion, the Court must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts in the light most favorable to the plaintiff. Scanlan v. Texas A&M University, 343 F.3d 533, 536 (5th Cir. 2003).  However, the Court may consider documents that are referred to in the plaintiffs' complaint and that are central to the plaintiffs' claim. Id. (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)).

      Here, the plaintiffs specifically refer to a policy of insurance issued to EJLD by National Union, and that policy is the only basis for the plaintiffs' claim against National Union. (App. pp.043 & 070, Master Complaint, ¶¶16(j) & 85).  Accordingly, the Court may review and consider the National Union Policy in deciding this motion to dismiss.  Even assuming *arguendo* the allegations against EJLD contained in the Master Complaint are true, the plaintiffs cannot recover from National Union, because the Policy it issued to EJLD specifically excludes all alleged claims for bodily injury and property damage.

      In Louisiana, an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La. 1994); see also Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003).  Thus, the Court's role is to determine the common intent of the parties as reflected by the words in the policy. Id.  An insurance contract thus forms the law between the parties and the obligations set forth therein are enforceable. Id.  "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." Id. (citing Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d

190, 192 (La. 1974)).  Furthermore, as a contract, the insurance policy National Union issued must be enforced as written, if the wording is clear and unambiguous.  Id. at 764.  Whether the contract is clear and unambiguous is a question of law.  Id.

In this case, as noted *supra*, the National Union Policy is a claims-made-and-reported policy, which requires that a "Claim" be "first made against an Insured during the Policy Period or the Discovery Period (if applicable) and reported to the Company pursuant to the terms of this policy for any Wrongful Act of the Insured …". (App. p.013, Policy).  Since "Claim" is defined as a judicial proceeding filed against an Insured in a court of law or equity, the *Bennett* complaint, filed on August 28, 2006, is the "Claim" that was first made against EJLD. (*See* App. p.015, Policy).  Even assuming without conceding that the Claim meets all of the elements of the insuring agreement so as to trigger coverage, the National Union Policy precludes coverage, because the Plaintiffs' canal breaches claims clearly "Arise Out Of" property damage and/or bodily injury.[5]

The National Union Policy states:

This policy does not apply to any Damages or Claim:

    \*    \*    \*

(d)    Arising Out Of (1) bodily injury to, or sickness, disease, emotional distress or death of any person, (2) damage to or destruction of any property, including the loss of use thereof …

(Id., p.016).  The term "Arising Out Of" is defined in the Policy as "originating from, having its origin in, growing out of, flowing from, incident to or having a connection with, whether directly

---

[5] As stated in note 3, *supra*, National Union reserves the right to rely on any other provision or term and to contest any and all facts, in order to defend itself from the Plaintiffs' claims, and therefore in the event that this motion is denied, National Union reserves the right to pursue all other defenses and to contest all facts assumed in this motion.

7

or indirectly." (Id., p.014).[6]  There can be no doubt that the plaintiffs' claims against EJLD "Arise Out Of" property damage and/or personal injury caused by the failure of the 17th Street Canal.

In the Master Complaint, the plaintiffs seek to represent a class composed of all persons on the eastbank of New Orleans, "who/which sustained damages as a result of the inundation in this area which occurred during and immediately following the landfall of Hurricane Katrina on or about August 29, 2005 …". (App. p.044, Master Complaint, ¶17).  The subclasses divide this group according to specified geographic areas and reiterates they sustained damages as a result of the inundation of each specific geographic area. (App. p.046, 048, 050, 052, 054, ¶¶18(a) – (e)).  Each of the paragraphs describing the class and subclass representatives includes details of their real and personal property that was damaged. (Id. pp.046-054, ¶18,).  One class representative also alleges the wrongful death of his father. (Id. pp.053-054, ¶18(d)(v)).  In Paragraph 191 of the Master Complaint, the plaintiffs delineate their damages as: (1) property damage and related losses such as loss of use, and relocation and evacuation expenses, increased repair costs, and income loss; (2) personal injury and related general damages such as mental anguish, emotional distress, and pain and suffering; and (3) societal harm from the loss of cultural heritage and alteration of the character of New Orleans. (Id. pp.096-097, ¶191).[7]  All of these alleged damages are the consequence of property damage and bodily injury from the canal

---

[6]     The U.S. Fifth Circuit Court of Appeals has held that the words "arising out of," when used within an insurance policy, are " 'broad, general, and comprehensive terms effecting broad coverage.' The words are understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.' " American States Ins. Co. v. Bailey, 133 F.3d 363, 370 (5th Cir.1998).  The clear and unambiguous definition of "Arising Out Of" in the National Union Policy tracks this generally prevailing meaning of the same words when undefined.  Therefore, the policy language must be enforced as written, since the wording is clear and unambiguous. See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La. 1994).

[7]     It is doubtful the plaintiffs have standing to pursue such claims, because they raise "only a generally available grievance about government-claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large-does not state an Article III case or controversy." Cobb v. U.S. Dept. of Educ. Office for Civil Rights, 2006 WL 1662965, *7 (D.Minn. June 15, 2006)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-574 (1992)). Even so, the claim arises from the widespread property damage from flooding and is therefore excluded.

breaches. Even the plaintiffs recognize that their claims originate from property damage and bodily injury, since they filed Federal Tort Claim Forms 95 against the U.S. Corps of Engineers, the EJLD's co-defendant., which are attached to their complaints. That form is entitled "Claim for Damage, Injury, or Death". (*See* exemplar of Form 95 at App. pp.167-168). The middle of the form requests the factual details related to "Property Damage" and "Personal Injury/Wrongful Death".

It is obvious that all of the plaintiffs' "Claims" (i.e. lawsuits) encompassed within the Levee designation originate from, grow out of, flow from, and/or have a direct connection to the alleged bodily injury, death, and damage to real property or bodily injury caused by the canal breaches. Thus, the lawsuits fall squarely within exclusion (d) and therefore the National Union Policy provides no coverage. Accordingly, the plaintiffs are not entitled to relief from National Union under any theory of recovery even assuming the facts plead are all true. The motion to dismiss should thus be GRANTED and the plaintiffs' claims and petitions against National Union should be DISMISSED WITH PREJUDICE.

## CONCLUSION

The plaintiffs in all of the Levee consolidated matters seek to recover for losses arising out of, originating from, or growing from damage to their property or bodily injury from flooding. Even assuming without conceding for this motion that the National Union Policy has been triggered and satisfied in all respects, the Policy explicitly excludes the plaintiffs' Claims. Consequently, even assuming all factual allegations are true, the plaintiffs' claims and complaints against National Union are not plausible on their face and therefore the motion to dismiss should be GRANTED.

**WHEREFORE** Defendant National Union Fire Insurance Company of Pittsburgh, Pa. respectfully prays that its motion for summary judgment be GRANTED, the complaints and claims against it in all of the matters designated as "Levee" be DISMISSED WITH PREJUDICE at plaintiffs' cost, and for all other relief deemed just and proper.

Respectfully submitted,

/s/  Karen M. Dicke
**KAREN M. DICKE (#24781)**
**GEORGE D. FAGAN, T.A. (#14260)**
Leake & Andersson, LLP
1100 Poydras Street, Suite 1700
New Orleans, Louisiana 70163-1701
Telephone:  (504) 585-7500
Facsimile:  (504) 585-7775
Email:  kdicke@leakeandersson.com
gfagan@leakeandersson.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been delivered to all counsel of record on November 20, 2007, by ECF filing, and to the court-appointed liaison counsel by ECF filing, by hand delivery, by telephonic facsimile transmission, or by depositing a copy of same in the United States Mail, first class postage prepaid, at their last known addresses of record.

/s/ Karen M. Dicke

F:\38803\2-Pleadings\National Union\word versions\Motion to Dismiss\MTD - memorandum - final.doc