**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | | |
|---|---|---|---|
| IN RE: | KATRINA CANAL BREACHES | § | CIVIL ACTION |
| | CONSOLIDATED LITIGATION | § | NO.: 05-4182 "K"(2) |
| | | § | JUDGE DUVAL |
| | | § | MAG. WILKERSON |
| | | § | |
| | | § | |
| PERTAINS TO: | | § | |
| LEVEE: | | § | |
| C.R. PITTMAN CONSTRUCTION COMPANY, INC. | | § | |
| (07-2771) | | § | |

**MEMORANDUM IN OPPOSITION TO**
**UNITED STATES OF AMERICA'S MOTION TO DISMISS**

**MAY IT PLEASE THE COURT:**

Plaintiff, C.R. Pittman Construction Company, Inc. ("CRPCCI"), opposes the United States of America's Motion to Dismiss (the "Motion") as CRPCCI has jurisdiction in the Eastern District of Louisiana ("Eastern District") because its contract with the Corps expressly states that federal court, in addition to the Court of Claims and Armed Services Board of Contract Appeals ("ASBCA"), is an available forum. Further, CRPCCI has a timely filed FTCA claim that is intertwined with the same facts and legal issues as the breach of contract action, warranting supplemental jurisdiction. Finally, CRPCCI has a claim against its insurer that is in the process of being consolidated that involves the same set of operative facts; water damage to the same

1

property serving as the basis of CRPCCI's government contract claims due to the negligence of the Corps.  Putting aside CRPCCI's contractual right of jurisdiction in the Eastern District, supplemental jurisdiction over the contract claim is warranted and will ensure judicial efficiency and eliminate the risk of inconsistent verdicts.  For these reasons and those more fully set forth below, the United States' Motion to Dismiss should be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This action concerns a dispute between the parties over the responsibility for equipment damaged during Hurricane Katrina.  This Motion seeks to dismiss or transfer this action based upon the alleged lack of jurisdiction of this Court to resolve this dispute.   However, CRPCCI will show herein that this Court not only has the right to exercise jurisdiction over all disputes between the parties, but to find otherwise would be contrary to the facts and the law.

### A.   The Dwyer Contract Dispute

On April 6, 2007, the Contracting Officer for the United States Army Corps of Engineers, Charles Zammit, issued his final decision pursuant to the Contract Disputes Act, 41 U.S.C. § 601, *et seq*., finding that CRPCCI was indebted to the United States of America, through the U.S. Army Corps of Engineers, under the contract for the construction of the Southeast Louisiana Urban Flood Control Project, Dwyer Road Drainage Pumping Station, Orleans Parish, Louisiana project (hereinafter the "Dwyer Contract"), Contract Number DACW29-00-C-0093, in the amount of $1,940,218.62.[1]   On May 3, 2007, CRPCCI filed suit in the United States District Court for the Eastern District of Louisiana ("Eastern District") against the United States of America, who at all times was acting by and through the United States Army Corps of Engineers, a division of the United States Government under the direct jurisdiction of the Department of Army (all collectively referred to hereinafter as the "Corps"), pursuant to the provisions of the

---

[1] *See* Contracting Officer's Final Decision regarding the Dwyer Contract, attached hereto as Exhibit 1.

Contract Disputes Act of 1978, 41 U.S.C. § 601, *et seq*. in response to the Contracting Officer's final decision.[2]

In its Complaint, CRPCCI alleged that the Corps was responsible for the damage to the equipment stored at CRPCCI's storage yard and warehouse located at 3021 Franklin Avenue in New Orleans, Louisiana.[3]  The alleged damage was due to the flood waters resulting from Hurricane Katrina.[4]  The equipment being stored in CRPCCI's warehouse was for the construction project to be performed under the Dwyer Contract.[5]  The floodwaters severely damaged all of the items purchased and stored at CRPCCI's warehouse, therefore requiring either total replacement or substantial refurbishment and restoration prior to installation.[6]

**B.    The Cousins Contract Dispute**

On April 6, 2007, the Contracting Officer, Charles Zammit, issued his final decision pursuant to the Contract Disputes Act, 41 U.S.C. § 601, *et seq*., finding that CRPCCI was indebted to the United States of America, through the U.S. Army Corps of Engineers, under the contract for the construction of the West Bank and Vicinity, New Orleans Louisiana Hurricane Protection Project, West of Algiers Canal Cousins Pumping Station Expansion and Fronting Protection Jefferson Parish, Louisiana project (hereinafter the "Cousins Contract"), Contract Number DACW29-02-C-0062, in the amount of $399,890.91.[7]  On May 3, 2007, CRPCCI filed suit in the United States District Court for the Eastern District of Louisiana against the United States of America, who at all times was acting by and through the United States Army Corps of Engineers, a division of the United States Government under the direct jurisdiction of the

---

[2] *See* CRPCCI's *Complaint* (R. Doc. 1 in Member Case 07-2771) at ¶ 3, already a part of this Court's record.
[3] *Id.* at ¶ 18.
[4] *Id.*
[5] *Id.* at ¶¶'s 15-16.
[6] *Id.* at ¶'s 18.
[7] *See* Contracting Officer's Final Decision regarding the Cousins Contract, attached hereto as Exhibit 2.

Department of Army, pursuant to the provisions of the Contract Disputes Act of 1978, 41 U.S.C. § 601, *et seq.* in response to the Contracting Officer's final decision.[8]

In its Complaint, CRPCCI alleged that the Corps was responsible for the damage to the equipment stored at CRPCCI's storage yard and warehouse on Franklin Avenue in New Orleans, Louisiana.[9]  The alleged damage was due to the flood waters resulting from Hurricane Katrina.[10] The equipment being stored in CRPCCI's warehouse was for the construction project to be performed under the Cousins Contract.[11]  The floodwaters severely damaged all of the items purchased and stored at CRPCCI's warehouse, therefore requiring either total replacement or substantial refurbishment and restoration prior to installation.[12]

### C.   The Causes of Action

As a result of the events of Hurricane Katrina, and the post hurricane flooding, the equipment being stored at CRPCCI's warehouse was damaged and/or destroyed.  From these events, two separate causes of action arose, namely, CRPCCI's government contract claim made pursuant to the Contract Disputes Act concerning the Contracting Officer's final decisions involving the Dwyer and Cousins contracts and, second, its tort claim made pursuant to the Federal Tort Claim Act ("FTCA").

In response to the Contracting Officer's final decisions, dated April 6, 2007, which found that CRPCCI was indebted to the Corps under the Dwyer and Cousins contracts for the damaged equipment, CRPCCI instituted its government contract claim against the Corps in the Eastern District, wherein CRPCCI alleged that the Corps was responsible for the damaged equipment pursuant to the "Damage to Work Clause", contained in Section 01100-2 of the Dwyer and

---

[8] *See Complaint* at ¶ 3.
[9] *Id.* at ¶ 27.
[10] *Id.*
[11] *Id.* at ¶¶'s 24-25.
[12] *Id.* at ¶ 27.

Cousins Contracts.[13]   Under this provision, CRPCCI avers that the damage to the equipment constitutes damage to "part of the permanent work" and, under the "Damage to Work" clause, the government should pay for the cost of refurbishing or replacing the equipment.[14]   Further, CRPCCI avers that the clause should not be interpreted to restrict responsibility for the damage to only those items "permanently affixed" to the structure to be considered "part of the permanent work", as the clause does contain such language.[15]   As a result, a government contract dispute exists with respect to the issue of responsibility for the damaged equipment.

In addition to its government contract claim, CRPCCI asserted a tort claim pursuant to the FTCA for the damaged equipment occurring as a result of Hurricane Katrina and the post hurricane flooding.   Pursuant to CRPCCI's original Complaint and First Supplemental and Amended Complaint, CRPCCI alleged that its damages were sustained as a direct and proximate result of the Corps' breach of duty to adequately design, construct, maintain, inspect and operate the MRGO.[16]   As such, CRPCCI averred that subject matter jurisdiction existed pursuant to FTCA.[17]   Further, CRPCCI averred that the Eastern District had supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as to those claims asserted under state law as these claims are so related to the claims within the federal jurisdiction of the Court that they form part of the same case or controversy, within the meaning of Article III of the United States Constitution.[18]

### D.    CRPCCI's FTCA Timeline

CRPCCI filed its original Complaint on May 3, 2007, wherein it asserted a cause of action for Set-Off, Recoupment, and/or Compensation pursuant to La. C.C. art. 1893 in the event

---

[13] *Id.* at ¶¶'s 29, 34 and 40.
[14] *Id.* at ¶ 40.
[15] *Id.* at ¶ 41.
[16] *Id.* at ¶¶'s 58-60 and *See* CRPCCI's *First Supplemental and Amended Complaint* (R. Doc. 7356) at ¶ 58b, already a part of this Court's record.
[17] *See Complaint* at ¶ 5.
[18] *Id.* at ¶ 9.

that CRPCCI was liable to the Corps for the subsequent damage to the government's property due to the flood waters following Hurricane Katrina, that CRPCCI sought a tort recovery against the tortfeasor, in this case, the Corps, regarding their negligence in the construction of the levees and MRGO.[19]  In addition to its claim for Set-Off, Recoupment, and/or Compensation, CRPCCI filed its First Supplemental on Amended Complaint on August 29, 2007, alleging that CRPCCI complied with the requisite six (6) month waiting period to file suit against the Corps from the time it first presented its administrative claim by filing its Standard Form (SF) 95 (Claim for Damage, Injury or Death), in writing ,to the United States of America, Department of the Army, Corps of Engineers, as provided by 46 U.S.C. § 740, on February 28, 2007.[20]

### E.       The Transcontinental Insurance Claim

In response to the events of Hurricane Katrina and subsequent damage to the aforementioned equipment resulting from the post hurricane flooding, CRPCCI and C.R. Pittman, through separate counsel, filed suit against its insurer, Transcontinental Insurance Company ("Transcontinental") in the case styled as *C.R. Pittman Construction Company, Inc. and C.R. Pittman v. Transcontinental Insurance Company*, Civil Action No. 07-4534, Section "F"(2), pending before Judge Martin L.C. Feldman and Magistrate Joseph C. Wilkinson, Jr.[21] CRPCCI and C.R. Pittman allege that, on or about August 29, 2005, they owned a business located at 3021 Franklin Avenue, New Orleans, Louisiana and that on that day and time, Hurricane Katrina destroyed the building and all the contents in it, including, but not limited to, the equipment used by Plaintiffs in its construction business.[22]  Further, it is alleged that they had, in full force and effect, a policy of insurance with Transcontinental insuring their business

---

[19] *Id.* at ¶¶'s 5 and 61.
[20] *See CRPCCI's First Amended and Supplemental Complaint* at ¶¶'s 5a.-5b.
[21] *See* CRPCCI and C.R. Pittman's *Complaint and Demand for Jury Trial* (R. Doc. 1), already a part of this Court's record.,
[22] *Id.* at ¶¶'s IV-V.

and/or building housing its business and the contents or equipment owned by CRPCCI and C.R. Pittman used in the operation of its business.[23]

Recently, CRPCCI and C.R. Pittman filed a Motion to Transfer and Consolidate to have its pending suit against Transcontinental consolidated with this pending matter.[24]  The hearing concerning their motion is scheduled for December 12, 2007 at 9:30 a.m.  In light of the fact that these matters arise out of the same events, involve the same set of operative facts and issues of law, and recognition that the resolution of the claims are dependent upon one another, the Motion to Transfer and Consolidate should be granted.  However, in the event consolidation is not granted, a tailor-made situation would exist for inefficiency of judicial economy and inconsistent verdicts and duplication of fact finding would be likely in the event these matters were adjudicated separately.  As these matters arise out of identical events, are factually intertwined and involve similar issues of law and fact, these matters should be consolidated.  As such, the nexus between each of these individual, but related claims, would be exhibited once again, therefore justifying the Eastern District's jurisdiction over these claims.

## II.    LAW AND ARGUMENT

Based upon the allegations presented in CRPCCI's original Complaint and First Supplemental and Amended Complaint, the United States' reasons for dismissal under Rule 12(b)(1) of the Federal Rule of Civil Procedure are not appropriate.  In particular, jurisdiction should be vested with the Eastern District, as the contract pertaining to the Dwyer and Cousins projects provides that CRPCCI's contract claims against the Corps may be brought in federal court.[25]  Further, § 609(a)(1) of the Contract Disputes Act acknowledges that CRPCCI, as a

---

[23] *Id.* at ¶ VI.
[24] See CRPCCI and C.R. Pittman's *Motion to Transfer and Consolidate* (R. Doc. 9 and 9-2), already a part of this Court's record.
[25] *See* Chapter 3- Section 3.1(c)(d) Processing of Claims of Contract Documents, attached hereto as Exhibit 3.

government contractor, may bring its suit in an alternative forum, other than the Court of Federal Claims, **"notwithstanding any contract provision, regulation, or rule of law to the contrary."** [Emphasis added].   Further, this Honorable Court is vested with subject matter jurisdiction to entertain CRPCCI's FTCA claims and should exercise supplemental jurisdiction under § 1367 over the government contract claims at issue, as they are factually related to and intertwined with CRPCCI's FTCA and insurance claim, as these claims arise out of the same identical set of operative facts.   Accordingly, the Eastern District is the proper forum for the adjudication of CRPCCI's claims against the Corps.

      **A.**    **The Contract Documents and the Contract Disputes Act Provide this Court with Jurisdiction over CRPCCI's Government Contract Claims.**

      **1.**    **The Contract Documents**

The United States claims the Eastern District does not possess jurisdiction to entertain CRPCCI's government contract claims pursuant to the provisions set forth in the Contract Disputes Act.   The United States claims that only a contracting officer, the Board of Contract Appeals, United States Court of Federal Claims and the United States Court of Appeals for the Federal Circuit possess jurisdiction to entertain these types of claims.[26]   As a result, the United States alleges the Eastern District lacks jurisdiction to entertain these claims and, therefore, seeks a transfer of CRPCCI's government contract claims to the United States Court of Federal Claims.

CRPCCI maintains that it properly brought its government contract claims against the Corps in the Eastern District in accordance with the contract documents, as provided in Chapter 3 of the Construction, Modification and Claims Guide, incorporated into the contract between CRPCCI and the Corps.   In particular, Chapter 3 of the Construction, Modification and Claims

---

[26] *See* United States' *Memorandum of Law in Support of Motion to Dismiss* (R. Doc. 7876-2), already a part of this Court's record.

Guide, incorporated into the contract between CRPCCI and the Corps, expressly and unambiguously provides the following language:

> Processing of Claims
> 3-1. General
>
> c.      Under the procedure, the contractor may appeal a contracting officer's decision administratively to the Armed Services Board of Contract Appeals (ASBCA) or the Corps of Engineers Board of Contract Appeals (ENGBCA).  However, the contractor may bring an action directly into the U.S. Claims court within 12 months of the date the contractor receives the contracting officer's decision.
>
> d.      **The disputes procedure does not apply to all disputes**.  Other remedies must sometimes be sought.  Traditionally, three are available: (1) a request for relief to the General Accounting Office, (2) a **suit in federal court**, and (3) a request for relief under Public Law 85-804. [Emphasis added][27]

Under Louisiana law, whether a contract is ambiguous is an issue of law for the Court.[28] When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.[29]  Louisiana law limits the Court's authority to look beyond the four corners of an unambiguous contract.[30]  Under settled principles of contract construction, the Court is tasked with determining the common intent of the parties.[31]  To accomplish this, the words of a contract must be given their general prevailing meaning.[32]  In addition, the Court must construe "[e]ach provision ... in light of the other provisions so that each is given the meaning suggested by the contract as a whole."[33]  The Court must interpret contract provisions susceptible to different meanings "to avoid neutralizing or

---

[27] *See* Exhibit 3.
[28] *Hampton v. Hampton, Inc.*, 713 So.2d 1185, 1189 (La.App. 1998).
[29] *See* La. C.C. art. 2046.
[30] *See* La. C.C. Ann. art 2046 (1998).
[31] *See* La. C.C. art. 2045.
[32] *See* La. C.C. art. 2047.
[33] *See* La. C.C. art. 2050.

ignoring any of them or treating them as surplusage" and "to preserve validity [of the contract]."[34]

After review of Louisiana contract law, and a strict reading of the plain language of the standard contract provisions between CRPCCI and the Corps, it is evident that, in lieu of the Board of Contract Appeals, the United States Court of Federal Claims and the United States Court of Appeals, CRPCCI may bring its government contract claims against the Corps in federal court, or, as in this case, the Eastern District.  Further, as the Corps drafted these documents, any ambiguities contained within these standard contract documents must be construed against them.[35]  Accordingly, pursuant to the contract documents, the Eastern District may exercise jurisdiction over CRPCCI's government contract claims.

### 2.     The Contract Disputes Act

As stated, the United States claims that the Eastern District does not possess jurisdiction to entertain CRPCCI's government contract claims pursuant to the Contract Disputes Act. However, as demonstrated, CRPCCI may bring suit against the Corps in the Eastern District in accordance with the provisions set forth in the contract documents governing the Dwyer and Cousins contracts.   Moreover, CRPCCI maintains that it properly brought its government contract claims against the Corps in the Eastern District as allowed under § 609(a)(1) of the Contract Disputes Act, as this provision affords CRPCCI an alternate forum in which to appeal the contracting officer's final decisions.

Section § 609(a)(1) of the Contract Disputes Act provides that in the event of a contract dispute, the contractor, "in lieu of appealing the decision of the contracting officer under Section 605 of this title to an agency board, may bring an action directly on the claim in the United States

---

[34] *Lambert v. Maryland Cas. Co.,* 418 So.2d 553, 559-60 (La.1982); *Gibbs Constr. Co. v. Thomas,* 500 So.2d 764, 769 (La.1987).
[35] *See* La. C.C. art. 2056.

Court of Federal Claims, **notwithstanding any contract provision, regulation, or rule of law to the contrary.**" [Emphasis added].[36]  Under this provision, CRPCCI is afforded an alternative forum, other than the United States Court of Federal Claims, in which to litigate its government contract claims.   Chapter 3-1(d)(2) of the contract documents expressly and unambiguously states that the **disputes procedure does not apply to all disputes** (Emphasis added), and, as such, a contractor has a remedy to appeal the contracting officer's final decision in federal court. CRPCCI urges that the contract provisions and the exception set forth in § 609(a)(1) should be read together and be given full force and effect. Pursuant to this exception and, under the provisions of the contract between CRPCCI and the Corps, CRPCCI is afforded the right to assert its government contract claims against the Corps in the Eastern District.   Accordingly, CRPCCI's government contract claims should not be dismissed or transferred to the United States Court of Federal Claims, as the Eastern District may properly exercise jurisdiction to entertain CRPCCI's government contract claims against the Corps.

> **B.     The Eastern District May Exercise Supplemental Jurisdiction over the Government Contract Claims Against the Corps.**

> **1.     The Government Contract Claims of CRPCCI against the Corps Arise out of the Same Set of Operative Facts as the Tort Claims and the Claims Against CRPCCI's Insurer.**

The Eastern District may exercise supplemental jurisdiction over CRPCCI's government contract claims against the Corps, as the claim arises out of the same set of operative facts as its tort claims and the claims asserted against its insurer, Transcontinental.  The Eastern District possesses jurisdiction over CRPCCI's tort claim brought under the FTCA pursuant to 28 U.S.C. § 1332, as the claims arise under the laws of the United States and, further, in accordance with § 1391(b)(2), as the event giving rise to the tort claim occurred in the Eastern District.  Further, the

---

[36] *See* Contract Disputes Act, 41 U.S.C. § 609(a)(1).

Eastern District has subject matter jurisdiction over CRPCCI's claims against the Corps pursuant to the provisions set forth in 28 U.S.C. § 1346(b)(1). As CRPCCI's government contract claims and tort claims asserted under the FTCA are factually related and arise from the same nucleus of operative facts, namely, damage to its equipment following Hurricane Katrina, the Eastern District may exercise supplemental jurisdiction over these claims.

In support of CRPCCI's position that supplemental jurisdiction exists in these circumstances, 28 U.S.C. § 1367(a) provides as follows:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Further, 28 U.S.C. § 1367(e) defines the circumstances under which a district court may decline to exercise supplemental jurisdiction, stating as follows:

> The district courts may decline to exercise supplemental jurisdiction over any claim under subsection (a) if-
> (1) the claim raises a novel or complex issue of state law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The factors set forth in § 1367(e) are not determinative, as the district court must consider these factors in relation to the specific circumstances of the case.[37] Additionally, the Eastern

---

[37] *Mendoza v. United States*, 481 F.Supp. 2d 643, 646 (W.D.Tex. 2006). *See Batiste v. Island Records, Inc.*, 179 F.3d. 217, 227 (5th Cir. 1999).

District should consider and weigh the values of judicial economy, convenience, fairness and comity when determining whether to exercise supplemental jurisdiction.[38]

CRPCCI's government contract claims and tort claims are neither novel nor complex to prevent the Eastern District from exercising supplemental jurisdiction over these claims. Rather, as CRPCCI's claims clearly arise out of the same nucleus of operative facts, namely, damage to the equipment following Hurricane Katrina, these claims are ripe for the Eastern District to exercise supplemental jurisdiction, especially taking into account the Eastern District's familiarity with the merits of the claims, procedures and complexities involved in resolving Hurricane Katrina related claims. Further, since the claims are related and arise out of the same operative facts, neither claim can be shown to predominate over the other. Therefore, once CRPCCI's government contract claims are resolved, the resolution of its pending FTCA and insurance claims will no longer be required as these claims will now be deemed moot.

In particular, if the "Damage to Work" clause were to be found to apply such that the flood damage to the government's equipment was damage to a "part of" the permanent work, then the Corps would be responsible for the damaged equipment and must therefore replace the property, at their cost. If the Corps replaces the damaged equipment, CRPCCI's tort claim would no longer be necessary. Furthermore, CRPCCI's claim against its commercial property insurer for the identical property is likewise moot if the Corps is deemed responsible for replacing the damaged equipment pursuant to the "Damage to Work" provision. Therefore, when the state and federal claims relate to the same set of facts, and the legal claim is not sufficiently complicated, the district court has discretion to exercise supplemental jurisdiction

---

[38] *Mendoza* , 481 F.Supp. 2d at 646*; citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed. 2d 720 (1988).

over the claims despite a party's contention that the suit involves the adjudication of novel or complex claims.[39]

Furthermore, there is no express language contained within the provisions enumerated in the Contract Disputes Act precluding the Eastern District from exercising supplemental jurisdiction over its government contract claims. Thus, after review of 28 U.S.C. § 1367(e), there are no reasons, compelling or otherwise, causing the Eastern District to decline to exercise supplemental jurisdiction over these claims. The court's decision to decline to exercise supplemental jurisdiction for this purpose shall serve as the exception, rather than the rule.[40]

As these claims are factually related, arise out of the same nucleus of operative effects and involve similar issues of law and fact, the resolution of these claims are clearly dependent upon each other. As the Eastern District is familiar with the procedures, merits of the claims and complexities involved in the resolution of Hurricane Katrina related claims, the Eastern District is amply qualified to resolve the full scope of these independent, but related, claims. Accordingly, the Eastern District should exercise supplemental jurisdiction over these claims.

In further support that supplemental jurisdiction exists, one must look to CRPCCI's complaints to determine the nature of its claims against the Corps. In order to determine whether the action is one in tort, the nature of the complaint against the United States must be determined.[41] The fact that the claimant and the United States were in a contractual relationship does not convert an otherwise tortious claim into one in contract.[42] As such, CRPCCI's contractual relationship with the Corps does not preclude CRPCCI from bringing both its

---

[39] *Mendoza*, 481 F.Supp.2d at 647; *see Morris v. Dillard Dep't. Stores, Inc.*, 277 F.3d 743, 756 n. 12 (5th Cir. 2001); *Batiste*, 179 F.3d at 227-28.
[40] *Id.* at 650.
[41] *Aleutco Corp.v. United States*, 244 F.2d 674, 678 (C.A.3 1957); *See Nicholson v. United States*, 177 F.2d 768 (5 Cir. 1949).
[42] *Id.*

contractual claims and tort claims in the Eastern District. Although CRPCCI seeks a declaration from the Court with respect to its contract claims, CRPCCI also seeks a declaration with respect to its tort claims. Further, in a related matter, yet to be consolidated, CRPCCI seeks a declaration against its insurer with respect to the insurance coverage issues.

It is evident that the Eastern District has subject matter jurisdiction over CRPCCI's tort claims against the Corps pursuant to the FTCA, as CRPCCI's negligence claims against the Corps are asserted under Louisiana state law. Further, CRPCCI avers that, "but for" the Corps' negligence, the ensuing levee breaches would not have occurred and, as such, the equipment purchased and stored at CRPCCI's warehouse, per its agreement with and/or delays caused by the Corps, would not have flooded and required replacement and/or refurbishment. As a result of the equipment being damaged and/or destroyed, the Corps, in its final decisions dated April 6, 2007, unilaterally determined that CRPCCI was liable for the damaged equipment and, therefore, indebted to the Corps under the Dwyer and Cousins Contracts.[43] Consequently, in response to the Contracting Officer's final decisions, CRPCCI filed its suit against the United States in the Eastern District seeking a declaration that the Corps breached the Dwyer and Cousins contracts and, further, that the Corps is solely responsible for the damaged equipment. Further, CRPCCI sought a declaration from the Court that CRPCCI be awarded damages and Set-Off, Recoupment, and/or Compensation pursuant to La. C.C. art. 1893 arising out of the negligence of the Corps.[44] Therefore, as the pending government contract, tort and insurance claims arise from the same set of operative facts and form part of the same case or controversy under Article III of the United States Constitution, the Eastern District may rightfully exercise supplemental jurisdiction over these claims.

---

[43] *See Complaint and First Supplemental and Amended Complaint.*
[44] *See Complaint* at ¶ 61 and *Id.*

2.      **Transfer of CRPCCI's Contract Claim may Result in Inconsistent Results and Inefficient Duplication of Fact Finding.**

The United States argues that 28 U.S.C. § 1631 allows for the transfer of less than all the claims in this action to the Court of Federal Claims.  However, CRPCCI avers that these claims should not be bifurcated simply because they are related and arise out of the same nucleus of operative facts.   Rather, these claims *cannot* be adjudicated separately because they are dependent upon another – the resolution of CRPCCI's government contract claim would make its FTCA claim moot.

CRPCCI avers as it claims are related and arise out of the same set of operative facts, the resolution of each is dependent on another.  As such, CRPCCI's government contract claims should not be transferred under § 1631.  According to 28 U.S.C.A. § 1500, the statute provides as follows:

**§ 1500**.  **Pendency of claims in other courts**

**The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States** or any person who, at the time when the cause of action alleged in the suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States. [Emphasis added]

The determination of whether CRPCCI's government contract claims were simultaneously filed with its tort claims asserted under the FTCA "depends upon the state of things at the time of the action brought."[45]   Therefore, it is important to determine whether CRPCCI's claims were pending in the Eastern District prior to an order later transferring these claims to the United States Court of Federal Claims under § 1631.

---

[45] *United States v. County of Cook, Ill.*, 170 F.3d 1084, 1090 (Fed. Cir. 1999); *citing Keene Corp. v. United States*, 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (citations and quotations omitted).

In the event the government contract claims were to be transferred to the United States Court of Federal Claims, the "filing" of the same claim simultaneously in the district court and the Court of Federal Claims by means of § 1631 deprives the latter court of jurisdiction pursuant to § 1500.[46]  Further, in order "for the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief."[47]

CRPCCI avers that since both its government contract claims and tort claims arise from the same identical factual events, these claims were filed simultaneously in the Eastern District. Although CRPCCI has three separate claims, each claim seeks damages arising from the same event, namely, the flooding due to Hurricane Katrina.  Therefore, the United States Court of Federal Claims would not be divested with jurisdiction because CRPCCI's government contract and tort claims were filed simultaneously pursuant to § 1500,  which clearly precludes the Court of Federal Claims from exercising jurisdiction over any subsequently transferred claims to the United States Court of Federal Claims.

Moreover, in the event the government contract claims are transferred, a situation would exist where two simultaneously filed claims, arising out of the same events, would be pending against the United States in separate jurisdictions and, therefore, for these reasons, the United States Court of Federal Claims would also be precluded from exercising jurisdiction. Accordingly, as these claims are related, arise out of the same facts, seek the same relief, and were filed simultaneously, the claims should not be bifurcated and/or transferred since the Eastern District retains jurisdiction over these pendent claims.[48]

---

[46] *United States*, 170 F.3d at 1091.
[47] *Id. citing Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) (en banc).
[48] *Id.*

CRPCCI avers that its government contract claims should not be transferred to the United States Court of Federal Claims, as the claim against Transportation also arises out of the same events as the contract and tort claim, and the resolution of this claim will involve the same issues of law used to adjudicate CRPCCI's claims against the Corps.  Further, even if the Corps argues that different legal theories will be involved in the resolution of these claims, the Court of Federal Claims would be precluded from exercising jurisdiction over said claims.[49]  As such, each of these claims are highly dependent upon another, thereby highlighting the nexus between these individual, but factually related and dependent claims.  For these reasons, Plaintiffs' pending Motion to Transfer and Consolidate will likely be granted; therefore, bolstering CRPCCI's position that supplemental jurisdiction exists for the resolution of these claims.

Moreover, the transfer of CRPCCI's government contract claims to the United States Court of Federal Claims would result in CRPCCI's tort claims and Plaintiffs' insurance claims being resolved independently in the Eastern District.  Unlike the United States Court of Federal Claims, the Eastern District is not a court of limited jurisdiction; therefore, this Honorable Court is qualified to adjudicate CRPCCI's government contract claims and tort claims, as well as the pending insurance claim. With the government contract, tort and insurance claims arising out of the same set of operative facts, parallel proceedings in both the Eastern District and the United States Court of Federal Claims may result in a tailor-made situation allowing for inconsistent rulings, a lack of judicial economy, and an inefficient duplication of fact finding.  Trying these matters simultaneously eliminates this risk.  The resolution of the respective contract, tort and insurance claims has a direct effect on the other claims and, therefore, must be decided together, in the Eastern District, in a consolidated action.

---

[49] *Id.*

The Eastern District is currently vested with jurisdiction over CRPCCI's tort claim under 28 U.S.C. §1346(b)(1) and Plaintiffs' insurance claims under 28 U.S.C. §§ 1332 and 1391(b)(2), respectively.   By exercising supplemental jurisdiction over CRPCCI's government contract claims, judicial economy would be best served and the opportunity for inconsistent results would be eliminated.  Unlike the Eastern District, the ASBCA or United States Court of Federal Claims does not have jurisdiction to entertain CRPCCI's FTCA and insurance claims, therefore resulting in an inefficient use of judicial resources.  Further, in the event these claims are bifurcated, CRPCCI would be unduly burdened as all relevant evidence and witnesses are located in the Eastern District as it concerns fundamental factual issues and CRPCCI would be forced to adjudicate these claims in separate forums, thereby resulting in an increase in time, costs, and expense.   Accordingly, as these claims arise from the same nucleus of operative facts, the Eastern District should not be limited it its ability to entertain these related claims.  The Eastern District is qualified to adjudicate each and all of the aforementioned claims and, therefore should choose to exercise supplemental jurisdiction over CRPCCI's government contract claims as they are related to the claims made pursuant to the FTCA, thus forming part of the same case or controversy under Article III of the United States Constitution.

**C.    CRPCCI'S FTCA Claim As Set Forth In Cause Of Action Number Three Is Not Premature**

The Corps has moved to dismiss Cause of Action Number Three of CRPCCI under the FTCA based upon prematurity.  The Corps simply argues that after filing a formal FTCA claim on February 28, 2007, and then filing this action on May 3, 2007, CRPCCI failed to permit the claim to languish without resolution for the requisite six month—or until August 29, 2007—as required by 20 U.S.C. Section 2675(a).  The motion of the Corps based upon prematurity should be denied for several compelling reasons.  First, cause of action number three is not premature

because the amended complaint satisfies the waiting period pursuant to 20 U.S.C. Section 2675(a).  Cause of action number three is also not premature because CRPCCI'S FTCA claim for set-off, recoupment, and/or compensation is not subject to the administrative claim requirement.  Lastly, dismissing Cause of Action Number Three of CRPCCI under the FTCA based upon prematurity would not be consistent with the intent and purpose of the FTCA because of the futility of waiting for a decision by the Corps that was never going to be made.

> **a.    Cause of Action Number Three is not Premature Because the Amended Complaint Satisfies the Waiting Period Pursuant to 20 U.S.C. Section 2675(a).**

CRPCCI has presented its administrative claim on the Standard Form (SF) 95 (Claim for Damage, Injury or Death) in writing to the United States of American, Department of the Army, Corps of Engineers, as provided by 46 U.S.C. § 740, on February 28, 2007.  While CRPCCI filed its original Complaint prior to the expiration of six months from February 28, 2007, it filed its *First Supplemental and Amended Complaint* alleging a formal FTCA cause of action based upon the administrative claim denial on August 29, 2007—after a period of six months expired since the presentment of its claim.  In short, this new action is not premature.

Defendant United States now moves to dismiss CRPCCI's Complaint for failure to comply with the administrative claim requirement of the FTCA.  Not only was the amended complaint filing timely, but to rule otherwise will result in an absurd consequence: the plaintiffs would be required to refile new suit that tracks the amended complaint and then immediately move to consolidate this new action with the instant action thereby bringing the parties exactly back to the current situation.

The FTCA provides, in relevant part:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. **The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.**[50]

This claim requirement is jurisdictional in nature and cannot be waived.  As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.[51] However, a reading of *McNeil,* 508 U.S. at 110 n. 5, 113 n. 9, 113 S.Ct. 1980, implies that a new action may in certain circumstances be instituted by document other than a new complaint:

> The court reviewed the materials filed in August 1989 and concluded that the District Court had not committed plain error in refusing to construe them as having commenced a new action.[FN5]
>
> FN5. In dissent, Judge Ripple expressed the opinion that petitioner had properly raised the issue in the District Court and on appeal, 964 F.2d, at 649, n. 1, and that in any event it was "clear that the plaintiff, a prisoner proceeding pro se, attempted to refile the action after the denial of the administrative claim." *Id.,* at 649. Our grant of certiorari did not encompass the question whether a new action had been filed in August and we therefore express no opinion as to the correctness of the Court of Appeals' ruling on that issue.[52]

While the court in *Sparrow v. USPS,* 825 F.Supp. 252, 254-55 (E.D.Cal.1993), concluded that an amended complaint filed after exhaustion did  not cure a prematurely filed original complaint, the court in *Filaski v. United States,* 776 F.Supp. 115, 118 (E.D.N.Y.1991), granted a motion to dismiss for lack of subject matter jurisdiction but also stated that by serving an amended complaint the plaintiff would thereby restore the action:

> Accordingly, the complaint is dismissed without prejudice. Plaintiff may, in accordance with the FTCA, present a claim to the appropriate federal agency

---

[50] 28 U.S.C. § 2675(a) (West 2007) (emphasis added).

[51] *See* 28 U.S.C. § 2675(a); *McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

[52] *McNeil,* 508 U.S. at 110 n. 5, 113 n. 9, 113 S.Ct. 1980.

within sixty days of the date of this Order. *See* 28 U.S.C. § 2679(d)(5)(B). Upon a denial of the claim, or a failure of the agency to act upon the claim within six months of its presentation, plaintiff may serve an amended complaint including allegations of compliance with § 2679(d)(5), and thereby restore the action.[53]

The amended pleading should be treated as its own action for purposes of a timely filed FTCA claim. It specifically pleads that the 6 month waiting period passed from initial filing of the SF 95. This fact is based upon the amended filing date. It is fundamentally unfair for the United States to argue that CRPCCI did not wait the requisite six months when it clearly did and at the expiration of the period amended its suit. The conduct of the United States and the Corps is Draconian and another example of their attempt to "pass the buck", the same as it has done on the breach of contract issue that lies at the heart of this dispute.

In this case the amended complaint of CRPCCI effectively constituted a timely new action instituted after the administrative closure of the claim from exhaustion under 28 U.S.C. § 2675(a) and should not be dismissed as premature.

> **b.  Cause of Action Number Three is not Premature Because CRPCCI'S FTCA Claim for Set-Off, Recoupment, and/or Compensation is Not Subject to the Administrative Claim Requirement.**

The FTCA claim made by CRPCCI against the Corps for negligence is not solely to seek to recover an amount for damages, but rather seeks to establish Set-Off, Recoupment, and/or Compensation pursuant to La. C.C. art. 1893 in response to the affirmative claim of the Corps against CRPCCI. The Corps is not immune to recoupment claims and, as such, they are not subject to the administrative claim requirement.

Cause of Action Number Three is titled "Request for Damages and Set-Off, Recoupment, and/or Compensation Pursuant to La. C.C. Art. 1893 for Negligence" and is set forth in paragraphs 56 through 60 of the Complaint, as amended. In essence, this cause of action is based

---

[53] *Id.*

upon Louisiana Civil Code Article 1893 which provides that compensation extinguishes obligations and occurs when two persons owe each other sums of money identical in kind. CRPCCI has simply alleged that if it owes the Corps the amounts alleged by the Corps for the value of the destroyed equipment, then the Corps owes CRPCCI the identical amount because the Corps caused the flooding that destroyed the equipment.

The claim alleges that CRPCCI's damages for purposes of Set-Off, Recoupment, and/or Compensation Pursuant to La. C.C. Art. 1893 were sustained as a result of the Corps' breach of duty to adequately design, construct, maintain, inspect and operate the MRGO.  But for the fault and/or negligence of the Corps, the severe flooding of parts of the New Orleans Metro Area would not have occurred.  CRPCCI simply seeks a judgment for all damages to which it is entitled so as to establish Set-Off, Recoupment, and/or Compensation pursuant to La. C.C. Art. 1893 arising out of the negligence of the Corps. The federal government is immune from suit unless it consents to be sued.[54] The United States can consent to be sued "either by specific statutory consent or by instituting a suit as to which a defendant may plead matters in recoupment."[55]  In *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir.1967), this court first recognized that by filing suit the government effects a limited waiver of sovereign immunity as to the defendant's recoupment claims:

> Our conclusion is that when the sovereign sues it waives immunity as to claims of the defendant which assert matters in recoupment-arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claims but not the extent of a judgment in the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or ... exceeding the amount of the government's claims....[56]

---

[54] *EEOC v. First National Bank*, 614 F.2d 1004, 1007 (5th Cir.1980).
[55] *Id.*
[56] *Frederick*, 386 F.2d at 488.

Although the United States has not filed suit against CRPCCI, it has waived its sovereign immunity as to CRPCCI's claims when the Corps issued its final decision against CRPCCI and effectively forcing CRPCCI, by the terms of it contract, to file suit to appeal the decision. The claims against the Corps should be allowed under *Frederick*, even though the Corps has not actually filed suit against it, but rather made an administrative decision facing this lawsuit.

A recoupment claim within the scope of Frederick need not also fall within another statutory waiver of sovereign immunity.[57] Cause of Action Number Three, as an action for recoupment, is not subject to the administrative claim requirements pursuant to 28 U.S.C. Section 2675(a) and should not be dismissed.

> ### 3. Cause of Action Number Three is Not Premature Because CRPCCI's FTCA Claim is Consistent With the Intent and Purpose of the FTCA.

Dismissing Cause of Action Number Three of CRPCCI under the FTCA based upon prematurity would not be consistent with the intent and purpose of the FTCA. CRPCCI presented its administrative claim on the Standard Form (SF) 95 (Claim for Damage, Injury or Death) in writing to the United States of American, Department of the Army, Corps of Engineers, as provided by 46 U.S.C. § 740, on February 28, 2007.[58] The filing of its administrative claim Standard Form (SF) 95 satisfied the Notice of Claim filed pursuant to the Federal Tort Claims Act and/or the Admiralty Extension Act, 46 U.S.C. §740.

CRPCCI filed suit against the United States prior to a period of six months expiring after the denial of its claim, and then filed its First Supplemental and Amended Complaint on August 29, 2007, upon expiration of the period. 28 U.S.C. § 2675(a), provides that the failure of an

---

[57] *See Frederick*, 386 F.2d at 488 (noting that waiver of sovereign immunity can be by statute or by institution of suit); *United States v. Johnson*, 853 F.2d 619, 621 (8th Cir.1988) (holding that when the government waives sovereign immunity as to matters in recoupment, "it does so even as to those claims that ordinarily are barred by the FTCA").

[58] *See* CRPCCI's Standard Form (SF 95), attached hereto as Exhibit 4.

agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.  The subject matter jurisdiction of the court is conditioned on compliance with 28 U.S.C. § 2675(a), which declares that "an action shall not be instituted" unless the plaintiff has filed an administrative claim and either obtained a written denial or waited six months.[59] [60]

The administrative claim of CRPCCI satisfies the first purpose of requiring administrative filing-to ease court congestion and avoid unnecessary litigation, while making it possible for the government to expedite the fair settlement of tort claims asserted against the United States.   The administrative claim of CRPCCI also satisfies the second purpose of the administrative claim prerequisite to "provide for a more fair and equitable treatment of private individuals and claimants when they deal with the government or are involved in litigation with their government."[61]  The fact that as of this date the Corps has not responded in any way to the administrative claim filed by CRPCCI should be enough to show that waiting for six months to pass after receipt of the administrative claim was an exercise in futility.  However, there is an even more compelling reason to find that CRPCCI's claim is not premature.  The administrative claim in question tracks the claims of the plaintiffs in the *Superseding Master Consolidated Class Action Complaint [R. Doc. 3420]* as well as the *First Supplemental and Amending Levee Master Consolidated Class Action Complaint [R. Doc. 6941]* filed in the Katrina Litigation. This is important because the Corps was aggressively denying liability in these actions for the exact types of claims that CRCPPI was making in its administrative claim.  There cannot be a

---

[59] 28 U.S.C. § 2675(a) (1988).

[60] 28 U.S.C. § 2675(a) provides:

> An action shall not be instituted upon a claim against the United States ... unless the claimant shall have first presented his claim to the appropriate Federal agency and his claim have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make a final disposition of a claim within six months after it is filed shall, at the option of the claimant anytime thereafter, be deemed a final denial of the claim.

[61] *See Transco Leasing Corp. v. United States,* 896 F.2d 1435, 1442 (5th Cir.1990).

more compelling argument that waiting out the six month period would have been an exercise in futility. The Supreme Court and various federal courts have held that "when the attempt to exhaust such remedies would itself be a patently futile course of action,"[62] exhaustion of administrative remedies is unnecessary. Consequently, this Court should find that CRPCCI'S FTCA claim as set forth in cause of action number three is not premature.

## III.   CONCLUSION

Pursuant to the provisions set forth in § 609(a)(1) of the Contract Disputes Act and the contract provisions as provided in Chapter 3 of the Construction, Modification and Claims Guide, incorporated into the contract between CRPCCI and the Corps, CRPCCI is afforded the right to bring its government contract claims in the Eastern District.  Further, the Eastern District may exercise supplemental jurisdiction over CRPCCI's government contract claims pursuant to 28 U.S.C. § 1367, as these claims are related to and arise from the same nucleus of operative facts as its tort and insurance claims, so that they form part of the same case or controversy under Article III of the Constitution.  Moreover, as CRPCCI's claims against the United states are pending in the Eastern District and arise from the same set of operative facts and seek the same relief, the United States Court of Federal Claims is precluded from exercising jurisdiction over these related and pendent claims pursuant to 28 U.S.C.A. § 1500.

CRPCCI's FTCA claim was timely filed on August 29, 2007 after waiting the requisite six month period.  Additionally, as CRPCCI's FTCA claim is for Set-Off, Recoupment, and/or Compensation pursuant to La. C.C. art. 1893, CRPCCI is not subject to the administrative claim requirement.  Lastly, CRPCCI's FTCA claim not premature as it is consistent with the intent and

---

[62] *Pan-American Pharmaceuticals Inc., v. Kessler,* 980 F.2d 730 (6th Cir.1992); *see also Honig v. Doe,* 484 U.S. 305 (1988); *Hessbrook v. Lennon,* 777 F.2s 999,1003 (5th Cir.1985); *Hurt v. United States,* 914 F.Supp. 1346,1355 (S.D.W.Va.1996).

purpose set forth under the FTCA.  Accordingly, the Eastern District is the proper forum for the

adjudication of CRPCCI's claims against the Corps, and, as such, the United States' Motion to

Dismiss should be denied.

Respectfully submitted:

_____

GERALD A. MELCHIODE (#22525)
jmelchiode@gjtbs.com
WILLIAM J. PERRY (#19100)
wperry@gjtbs.com
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
One Shell Square
701 Poydras Street, 40TH Floor
New Orleans, Louisiana 70139
Telephone:  (504) 525-6802
Facsimile:   (504) 525-2456
COUNSEL FOR PLAINTIFF, C.R. PITTMAN
CONSTRUCTION COMPANY, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2007, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all

participating counsel of record.  A copy of same will be mailed to all non-CM/ECF participating

counsel.

_____