

**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

REPLY TO
ATTENTION OF

April 6, 2007

CONTRACTING DIVISION
PROJECTS WEST BRANCH

Mr. Charles R. Pittman, President
C.R. Pittman Construction Co., Inc.
821 Baronne Street
New Orleans, La 70113

SUBJECT:  Contracting Officer's Final Decisions for Replacement of Damaged Equipment at Dwyer Road Drainage Pumping Station, Orleans Parish, La (DACW29-00-C-0093), and Cousins Pumping Station Complex, Pumping Station Expansion and Fronting Protection, Jefferson Parish, La (DACW29-02-C-0062)

Dear Mr. Pittman:

As a follow-up to our meeting 15 March 2007 to discuss the subject claims against your firm, the following is provided:

After considerable, additional and thorough review of the facts, responsibilities, and regulatory guidance concerning the subject damaged equipment, I am satisfied with the appropriateness of my original decisions.  The attached Contracting Officer's Final Decisions have been signed and herewith are issued to you.

Hurricane Katrina has caused great loss and misfortune to many.  Like so many other local businesses you are struggling to personally and professionally overcome the effects of the storm.  I realize this, and am very troubled by the financial hardship this decision places on C.R. Pittman Construction Company.  I also feel absolutely certain that the equipment lost or damaged, at your storage facility, can not be considered part of the permanent work; and that these decisions, based on my interpretations of the contract terms and conditions, are fitting.

As I have stated on several occasions, the successful and timely completion of these projects is critical to the affected area's flood control and hurricane protection.  I remain willing to discuss any offer or alternative solution you may wish to present.

Sincerely,

Charles R. Zammit

Charles R. Zammit
Contracting Officer

Attachments:
COFD – DACW29-02-C-0062
COFD – DACW29-00-C-0093

**EXHIBIT**
1



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

April 6, 2007

Projects West Branch
Contracting Division

Mr. Charles R. Pittman, President,
C.R. Pittman Construction Co., Inc.
3021 Franklin Avenue
New Orleans, Louisiana 70122

Re:   Contracting Officer's Final Decision;
Contract No. DACW29-00-C-0093
Southeast Louisiana Urban Flood Control Project,
Dwyer Road Drainage Pumping Station, Orleans Parish,
Louisiana

Dear Mr. Pittman:

This is a Contracting Officer's Final Decision issued pursuant to the Contract Disputes Act, 41 U.S.C. §601, et seq. This Final Decision addresses your company's liability under the referenced contract to the United States of America, through the U.S. Army Corps of Engineers, for unliquidated progress payments made for various items of equipment damaged by the flood waters of Hurricane Katrina. A Notice of Appeal Rights and a Demand for Payment are included at the end of this decision.

## FINDINGS OF FACT

1.     Contract No. DACW29-00-C-0093, a firm-fixed-price construction contract, was awarded to C.R. Pittman Construction Co., Inc. on 20 September 2000 in the original amount of $13,617,730.00. Generally, the contract work included demolition and removal of an existing drainage pumping station and the construction of a new pumping station. Specific items of work include, but are not limited to, the demolition and removal of an existing drainage pumping station; temporary bypass pumping; construction of a new drainage pump station; intake basin and cofferdam excavation and construction, and backfill; clearing and grubbing; unwatering; asphalt roadway removal and replacement; asphalt parking area; new drain lines and drainage structures; removal and replacement of drain lines and drainage structures; new and relocated sewer force mains; new and relocated water lines; fertilizing, seeding and mulching; and other incidental work.

2.     The original contract provided for completion of work within 730 calendar days after receipt of the notice to proceed.

3.     The notice to proceed was acknowledged by Pittman on 25 September 2000.

4.     During the course of contract performance, the required completion date was extended a total of 1,044 days. These time extensions were due to various reasons, such as unsuitable weather and changes to the contract.

5.    The contract work is currently ongoing.

6.    The contract required that Pittman purchase and furnish numerous items of equipment that would ultimately be installed by Pittman as part of the completed pumping station.

7.    During the course of contract performance, Pittman, in fact, did purchase numerous items of equipment that were ultimately to be incorporated into the completed pumping station. This included items such as an emergency generator, climber screen cleaners and a water booster pump, plus other items.

8.    After Pittman purchased the equipment, it stored the items at its storage yard and warehouse at 3021 Franklin Avenue, New Orleans, Louisiana.

9.    Although the purchased equipment had yet to be installed at the pumping station site, the government elected, under FAR 52.232-5(b)(2), Payments under Fixed-Price Construction Contracts, to make progress payments to Pittman for the purchased equipment being stored at the Franklin Avenue location. The following chart lists the relevant (for purposes of this final decision) items of equipment purchased by Pittman and the amount of money the government paid to Pittman through progress payments in consideration of the equipment purchased:

| EQUIPMENT DESCRIPTION | PROGRESS PAYMENT AMOUNT |
|---|---|
| Pot/Gen. Water Booster Pump | $9,566.93 |
| Climber Screen Cleaners | $681,250.00 |
| Exhaust Fans | $3,760.50 |
| Submersible Lift Station | $9,799.10 |
| Air Compressor | $2,180.00 |
| Emergency Generator | $1,200,000.00 |
| Misc. Valves | $19,930.65 |
| Louvers | $4,621.60 |
| Backflow Preventer | $5,447.82 |
| Diesel Fuel Transfer Pump | $735.75 |
| Misc. Plumbing Accessories | $3,000.00 |
| TOTAL | $1,940,218.62 |

10.    On 29 August 2005 Hurricane Katrina struck the New Orleans area. This hurricane event caused Pittman's storage yard and warehouse on Franklin Avenue to flood. The floodwaters damaged all of the items of equipment described in the foregoing paragraph. All such items of equipment were damaged so severely that they will require either total replacement or substantial refurbishment and restoration prior to installation. The total amount of pre-flood progress payments made for the equipment that was damaged, but which is no longer fit for use, is $1,940,218.62.

11.   The contract includes the following standard clauses:

    a.   FAR 52.236-7, Permits and Responsibilities;

    b.   FAR 52.232-5, Payments Under Fixed-Price Construction Contracts;

    c.   FAR 52.245-2, Government Property (Fixed-Price Contracts);

    d.   FAR 52.233-1, Disputes;

12.   The contract also includes the following general clauses in section 01100:

a. "DAMAGE TO WORK", Section 01100-2:

*The responsibility for damage to any part of the permanent work shall be as set forth in the Section 00700 Clause entitled "PERMITS AND RESPONSIBILITIES" (FAR 52.236-7). However, if, in the judgment of the Contracting Officer, any part of the permanent work performed by the Contractor is damaged by flood, earthquake, hurricane or tornado which damage is not due to the failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices in the conduct of the work, the Contractor shall make the repairs as ordered by the Contracting Officer and full compensation for such repairs will be made at the applicable contract unit price or lump sum prices as fixed and established in the contract. If, in the opinion of the Contracting Officer, there are no contract unit or lump sum prices applicable to any part of such work, an equitable adjustment shall be made pursuant to the Section 00700 Clause entitled, "CHANGES" (FAR 52.243-4). Except as herein provided, damage to all work (including temporary construction), utilities, materials, equipment and plant shall be repaired to the satisfaction of the Contracting Officer at the Contractor's expense, regardless of the cause of such damage. Any costs associated with flooding of dewatered areas as directed by the Contracting Officer will be paid for by an equitable adjustment pursuant to the contract clause entitled "Changes".*

b. "PAYMENT FOR MATERIALS STORED OFF-SITE", Section 01100-20:

*Pursuant to the Contract Clause entitled "PAYMENTS UNDER FIXED PRICE CONSTRUCTION CONTRACTS" materials delivered to the Contractor at locations other than the site of the work may be taken into consideration in making progress payments if included in invoices for payment estimates, and if all the conditions of the Contract Clauses are fulfilled. Payment for items delivered to locations other than the work site shall be limited to materials which has (sic) been approved (if required by the Technical Specifications) and fabricated to the point where they are identifiable to an item of work required under this contract. Such payment shall be made only after receipt of paid or receipted invoices or invoices with canceled dollar value of the materials and labor incorporated into them. The delivery size shall be acceptable to the Government prior to any consideration for payment. Payment for materials delivered off-site is limited to: Treated Timber Piles, Untreated Timber Piles,*

*Overhead Electric Crane, Climber Screen Cleaners, Discharge Pipe, 350 CFS Pumps and Motors, Aboveground Storage Tanks, and Generator and Ancillary Equipment.*

13.     By letter of 14 October 2005 Pittman advised Alan Hunter, the Administrative Contracting Officer ("ACO") that various items of equipment and materials stored at the Franklin Avenue site had been damaged during the hurricane and requested "...direction relative to what to do at this point."

14.     By letter of 21 November 2005, Mr. Hunter advised Pittman that "...the Government has no responsibility for the damages to the materials and equipment stored at 3021 Franklin Avenue", citing the Permits and Responsibilities clause as well as the inapplicability of the Damage to Work clause.

15.     Subsequent correspondence from the ACO to Pittman reiterated the government's position. The ACO's letter of 7 March 2006 further requested that the contractor should submit a plan indicating how it intended to replace the equipment and the impact, if any, it would have on the scheduled completion date. The ACO's letter of 11 July 2006 advised Pittman that the government, in essence, had overpaid the contractor because the damaged equipment and materials no longer had the value that warranted the prior progress payments.

16.     By letter of 13 July 2006 Pittman advised the ACO of its position that the damaged equipment fell under the scope of the Damage to Work clause, based upon its assertion that the damaged equipment constitutes part of the "permanent work". Pittman further asserted that, due to government changes in the contract, the project was not ready to accept and install the equipment when it was ready to be shipped by the supplier, thus necessitating the storage requirement.

17.     As of the date of this final decision, Pittman has not replaced or refurbished any of the damaged equipment, nor has it reimbursed the government for any of the progress payments allocable to the damaged equipment.

## THE GOVERNMENT'S CLAIM

The government claims that Pittman is liable in the principal sum of $1,940,218.62, which represents the progress payments allocable to the flood-damaged equipment. Since the equipment is no longer suitable for installation in the pumping station, and since Pittman has neither replaced nor satisfactorily refurbished the equipment, the government contends that it has received no value for the payments made and, accordingly, that Pittman owes the government the amount of progress payments made to Pittman for the equipment.

## ANALYSIS AND DISCUSSION

The central question in the government's claim is: Who bears the risk of loss for the equipment damaged by the floodwaters of Hurricane Katrina? This issue is resolved through application of the terms and conditions of the contract.

**The Permits and Responsibilities clause:**

The relevant part of the Permits and Responsibilities clause, FAR 52.236-7, reads as follows:

> ...The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

This provision provides, in effect, for the contractor's strict liability for damage to materials and work prior to completion and acceptance. The contractor bears responsibility for "all materials delivered and work performed" unless completion and acceptance, or acceptance of an applicable portion of the work, has occurred. No such acceptance of the relevant work occurred prior to the time the equipment was damaged by floodwaters. Accordingly, under the Permits and Responsibilities clause, the contractor is responsible for the damaged equipment.

**The Damage to Work clause:**

The Damage to Work clause may, in the event of some defined occurrences, mitigate the strict dictates of the Permits and Responsibilities clause. It reads as follows:

> The responsibility for damage to any part of the permanent work shall be as set forth in the Section 00700 clause of the contract entitled "Permits and Responsibilities" (FAR 52.236-7) However, if in the judgment of the Contracting Officer, any part of the permanent work performed by the Contractor is damaged by flood, earthquake, hurricane or tornado, which damage is not due to the failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices in the conduct of the work, the Contractor shall make the repairs as ordered by the Contracting Officer and full compensation for such repairs will be made at applicable contract unit or lump sum prices as fixed and established in the contract. If, in the opinion of the Contracting Officer, there are not contract unit or lump sum prices applicable to any part of such work, an equitable adjustment shall be made pursuant to the Section 0700 Clause entitled "Changes" (FAR 52.243-4). Except as herein provided, damage to all work (including temporary construction), utilities, materials, equipment and plant shall be repaired to the satisfaction of the Contracting Officer at the contractor's expense, regardless of the cause of such damage.

For purposes of this analysis, the most relevant phrase in the Damage to Work clause is "any part of the permanent work". If the damage to the stored equipment cannot be reasonably classified as damage to "permanent work", then this clause will provide no relief to the contractor. Because the damaged equipment was located in the contractor's storage area and had not yet been incorporated into the pump station, the damaged equipment was not "any part of the permanent work", as that phrase is used in the Damage to Work clause. Accordingly, the

Damage to Work clause is not applicable to the facts of this matter and may not be invoked as the basis to relieve the contractor from financial liability for the damaged equipment.

## Does passage of title to the government shift liability from the contractor to the government?

The question has been raised whether the presumed passage of ownership in the equipment in favor of the government as of the date of damage may have shifted the risk of loss to the government. As explained below, the answer is "no".

## FAR 52.232-5, Payments under Fixed-Price Construction Contracts:

FAR 52.232-5(b)(2), as implemented through the general provision entitled "Payment for Materials Stored Off-Site", Section 01100-20, allows the contracting officer to make progress payments to a contractor for "material delivered to the Contractor at locations other than the site" of the construction. FAR 52.232-5(f) clearly provides that risk of loss does not shift from the contractor simply because the government makes payment to the contractor for property delivered:

> *Title, liability and reservation of rights. All material and work covered by progress payments made shall, at the time of payment, become the sole property of the Government, but this shall not be construed as-*
> *(1) Relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work; or*
>
> *(2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.*

## Government Property clause (FAR 52.245-2):

Additionally, the Government Property clause makes it clear that, while passage of title to the government occurs upon delivery of certain property, such passage of title does not relieve the contractor of liability for damage to the property:

> *(c) Title in Government Property....*
> *(4) If this contract contains a provision directing the Contractor to purchase material for which the Government will reimburse the contractor as a direct item of cost under this contract –*
> *(i) Title to material purchased from a vendor shall pass to and vest in the Government upon the vendor's delivery of such material...*
>
> *(g) Risk of Loss. Unless otherwise provided in this contract, the Contractor assumes the risk of, and shall be responsible for, any loss or destruction of, or damage to, Government property upon its delivery to the Contractor or upon passage of title to the Government under paragraph (c) of this clause.....*

## FAR 32.503-16, Risk of Loss:

Finally, this section of the FAR provides guidance and interpretation on how the risk of loss is, or is not, affected by the Progress Payments clause:

> (a) Under the Progress Payments clause, and except for normal spoilage, the contractor bears the risk of loss, theft, destruction, or damage to property affected by the clause, even though title is vested in the Government, unless the Government has expressly assumed this risk. The clauses prescribed in this regulation related to progress payments, default, and terminations do not constitute a Government assumption of this risk.

## Government right to seek repayment:

The gravamen of this claim is that the government has made payment for equipment which no longer exists or which is no longer suitable for incorporation into the permanent work. Even without specific authorization, it would be reasonable to conclude that the government would be entitled to claim reimbursement for payments made for equipment that has been damaged beyond use. Nonetheless, citation is made to FAR 32.503-16, Risk of Loss, section (b), which states:

> (b) If a loss occurs in connection with property for which the contractor bears the risk, the contractor is obligated to repay to the Government the amount of unliquidated progress payments based on costs allocable to the property.

Clearly, the government is entitled to assert this affirmative claim.

## Pittman's asserted defenses:

Pittman has asserted two reasons why the government, and not Pittman, should be responsible for the damaged equipment.

First, Pittman asserts that the damage to the equipment constitutes damage to the "permanent work" and, under the "Damage to Work" clause, the government should pay for the cost of refurbishing or replacing the equipment. As previously noted, the stored equipment does not constitute part of the "permanent work", meaning the "Damage to Work" clause is inapplicable.

Second, in its letter of 13 July 2006, Pittman states that, due to government changes to the contract, the project was not ready to accept and install the various items of equipment when they were ready to be shipped by the suppliers. It is not clear from the letter why Pittman believes this assertion to be relevant, but one can assume that Pittman is asserting that, had the equipment been installed at the pumping station, it either would not have flooded or, if it did flood, the cost of the damaged equipment would have been at the government's risk, under the Damage to Work clause. This assertion is without merit.

Assuming, arguendo, that some action of the government caused a delay in completion of the contract work (or in the installation of the damaged equipment) the contractor is thereby entitled to an equitable adjustment in the contract price. However, a change to the contract work that extends performance time does not relieve the contractor from its contractual obligation to bear

the risk of loss for equipment in its possession. To assert the contrary is to state that a government-caused extension in the time to performance has the effect of totally rewriting the contract's specific provisions on risk of loss, thereby making the government the insurer or indemnifier of the contractor.

When the equipment was damaged it was in the possession, custody and control of Pittman. For obvious reasons, the contract provides, under several clauses, that in such circumstances the risk of loss is with the contractor. A modification to the contract which extends the time of performance does not remove this risk from the contractor, but will entitle the contractor to the otherwise allowable costs directly associated with the additional performance time and extended risks, such as additional storage costs and insurance premiums. All terms and conditions of a contract that has been modified are still in full force and effect, *except* to the extent that the modification may have altered specific provisions of the contract. A change to the contract may entitle a contractor to recovery of *costs* caused by the change, but, unless specifically provided, the change does not alter the *risk of loss* scheme explicitly set forth elsewhere in the contract.

## FINAL DECISION

In consideration of the foregoing finding of facts, and based upon the foregoing analysis and discussion, it is my final decision that C.R. Pittman Construction Company, Inc. is justly and truly indebted to the United States of America, through the U.S. Army Corps of Engineers, under Contract Number DACW29-00-C-0093, in the amount of $1,940,218.62

## NOTICE OF APPEAL RIGHTS

This is the final decision of the Contracting Officer. This decision may be appealed under the Disputes clause to the Armed Services Board of Contract Appeals, Skyline 6, 5109 Leesburg Pike, Falls Church, Virginia 22041-3208. If you decide to appeal, you must mail or otherwise furnish written notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the contracting officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, shall include a copy of this decision and identify the contract by number. With regard to appeals to the Armed Services Board of Contract Appeals you may, solely at your election, proceed under the Boards' small claims procedure for claims of $50,000 or less or its accelerated procedures for claims of $100,000 or less. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

## DEMAND FOR PAYMENT

The United States of America, through the U.S. Army Corps of Engineers, hereby demands payment of $1,940,218.62 from C.R. Pittman Construction Company, Inc. in

satisfaction of the sums determined to be due and owing pursuant to the foregoing contracting officer's final decision under Contract Number DACW29-00-C-0093.   You are hereby notified that any amounts not paid within thirty (30) days from the date of this demand shall bear interest from the date of demand, or from any earlier date specified in the contract, and that the interest rate shall be the rate specified by the Secretary of the Treasury, for the period affected, under Public Law 92-41.  If immediate payment is not practicable or if the amount is disputed, you may submit a proposal for deferment of collection.   The undersigned contracting officer is the responsible official designated for determining the amount of the debt and for its collection.

If you have any questions, please contact me at (504) 862-1164.

Sincerely,

Charles R. Zammit
Charles R. Zammit
Contracting Officer

9



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

REPLY TO
ATTENTION OF

CONTRACTING DIVISION
PROJECTS WEST BRANCH

April 6, 2007

Mr. Charles R. Pittman, President
C.R. Pittman Construction Co., Inc.
821 Baronne Street
New Orleans, La 70113

SUBJECT:  Contracting Officer's Final Decisions for Replacement of Damaged Equipment at Dwyer Road Drainage Pumping Station, Orleans Parish, La (DACW29-00-C-0093), and Cousins Pumping Station Complex, Pumping Station Expansion and Fronting Protection, Jefferson Parish, La (DACW29-02-C-0062)

Dear Mr. Pittman:

As a follow-up to our meeting 15 March 2007 to discuss the subject claims against your firm, the following is provided:

After considerable, additional and thorough review of the facts, responsibilities, and regulatory guidance concerning the subject damaged equipment, I am satisfied with the appropriateness of my original decisions. The attached Contracting Officer's Final Decisions have been signed and herewith are issued to you.

Hurricane Katrina has caused great loss and misfortune to many. Like so many other local businesses you are struggling to personally and professionally overcome the effects of the storm. I realize this, and am very troubled by the financial hardship this decision places on C.R. Pittman Construction Company. I also feel absolutely certain that the equipment lost or damaged, at your storage facility, can not be considered part of the permanent work; and that these decisions, based on my interpretations of the contract terms and conditions, are fitting.

As I have stated on several occasions, the successful and timely completion of these projects is critical to the affected area's flood control and hurricane protection. I remain willing to discuss any offer or alternative solution you may wish to present.

Sincerely,

Charles R. Zammit

Charles R. Zammit
Contracting Officer

Attachments:
COFD – DACW29-02-C-0062
COFD – DACW29-00-C-0093

**EXHIBIT**
2

tabbies

P. 03/20



**DEPARTMENT OF THE ARMY**
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267

Projects West Branch
Contracting Division

April 6, 2007

Mr. Charles R. Pittman, President,
C.R. Pittman Construction Co., Inc.
3021 Franklin Avenue
New Orleans, Louisiana 70122

Re:   Contracting Officer's Final Decision,
Contract No. DACW29-02-C-0062
West Bank and Vicinity, New Orleans Louisiana Hurricane
Protection Project, West of Algiers Canal Cousins Pumping
Station Complex. Pumping Station Expansion and Fronting
Protection Jefferson Parish, Louisiana

Dear Mr. Pittman:

This is a Contracting Officer's Final Decision issued pursuant to the Contract Disputes Act, 41 U.S.C. §601, et seq. This Final Decision addresses your company's liability under the referenced contract to the United States of America, through the U.S. Army Corps of Engineers, for unliquidated progress payments made for various items of equipment damaged by the floodwaters of Hurricane Katrina. A Notice of Appeal Rights and a Demand for Payment are included at the end of this decision.

## FINDINGS OF FACT

1.    Contract No. DACW29-02-C-0062, a firm-fixed-price construction contract, was awarded to C.R. Pittman Construction Co., Inc. on 16 September 2002 in the original amount of $18,781,000.00. Generally, the contract work included construction of a pumping station consisting of pile-supported concrete intake basin and discharge tubes; a steel-framed superstructure; government-furnished pumps, gears and engines; all mechanical appurtenances, and related electrical equipment; dewatering and temporary retaining structures; T-wall fronting protection at existing pump stations; placing embankment, channel excavation, placing riprap, geotextile fabric, seeding and fertilizing, and other incidental work.

2.    The original contract provided for completion of work within 1,320 calendar days after receipt of the notice to proceed.

3.    The notice to proceed was acknowledged by Pittman on 10 October 2002.

4.    During the course of contract performance, the required completion date was extended a total of 404 days. These time extensions were due to various reasons, such as unsuitable weather and changes to the contract.

5.    The contract work is currently ongoing.

6.    The contract required that Pittman purchase and furnish numerous items of equipment that would ultimately be installed by Pittman as part of the completed pumping station.

7.    During the course of contract performance, Pittman, in fact, did purchase numerous items of equipment that were ultimately to be incorporated into the completed pumping station. This included items such as an emergency generator, vacuum pump, electrical motor control center, and other items.

8.    After Pittman purchased the equipment, it stored the items at its storage yard and warehouse at 3021 Franklin Avenue, New Orleans, Louisiana.

9.    Although the purchased equipment had yet to be installed at the pumping station site, the government elected, under FAR 52.232-5(b)(2), Payments under Fixed-Price Construction Contracts, to make progress payments to Pittman for the purchased equipment being stored at the Franklin Avenue location. The following chart lists the relevant (for purposes of this final decision) items of equipment purchased by Pittman and the amount of money the government paid to Pittman through progress payments in consideration of the equipment purchased:

| EQUIPMENT DESCRIPTION | PURCHASE PRICE |
|---|---|
| Potable Water Booster Pump | $23,880.41 |
| Ventilation Fans | $16,731.50 |
| Submersible Pump & Accs. | $10,608.56 |
| Vacuum Pump - Motor Driven | $45,924.32 |
| Vacuum Pump - Engine Driven | $79,707.68 |
| Air Comp. Motor & Engine Driven | $36,500.00 |
| Electrical Motor Control Center | $79,931.25 |
| Emergency Generator | $48,937.50 |
| Sewage Treatment Plant | $3,145.74 |
| Waste Oil Pump | $3,860.63 |
| Diaphragm Valve Actuator | $9,650.78 |
| Control Panel - Climber Cleaners | $25,000.00 |
| Misc. Valves | $6,649.75 |
| Vacuum Piping Accessories | $5,162.79 |
| Builders Hardware | $4,200.00 |
| TOTAL | $399,890.91 |

10.    On 29 August 2005 Hurricane Katrina struck the New Orleans area. This hurricane event caused Pittman's storage yard and warehouse on Franklin Avenue to flood. The floodwaters damaged all of the items of equipment described in the foregoing paragraph. All such items of equipment were damaged so severely that they will require either total replacement or substantial refurbishment and restoration prior to installation. The total amount of pre-flood progress payments made for the equipment that was damaged, but which is no

longer fit for use, is $399,890.91.

11.    The contract includes the following standard clauses:

     a.    FAR 52.236-7, Permits and Responsibilities;

     b.    FAR 52.232-5, Payments Under Fixed-Price Construction Contracts;

     c.    FAR 52.245-2, Government Property (Fixed-Price Contracts);

     d.    FAR 52.233-1, Disputes;

12.    The contract includes the following general clauses in section 01100:

"DAMAGE TO WORK", Section 01100-2:

*The responsibility for damage to any part of the permanent work shall be as set forth in the Section 00700 Clause entitled "PERMITS AND RESPONSIBILITIES" (FAR 52.236-7).  However, if, in the judgment of the Contracting Officer, any part of the permanent work performed by the Contractor is damaged by flood, earthquake, hurricane or tornado which damage is not due to the failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices in the conduct of the work, the Contractor shall make the repairs as ordered by the Contracting Officer and full compensation for such repairs will be made at the applicable contract unit price or lump sum prices as fixed and established in the contract.  If, in the opinion of the Contracting Officer, there are no contract unit or lump sum prices applicable to any part of such work, an equitable adjustment shall be made pursuant to the Section 00700 Clause entitled, "CHANGES" (FAR 52.243-4).  Except as herein provided, damage to all work (including temporary construction), utilities, materials, equipment and plant shall be repaired to the satisfaction of the Contracting Officer at the Contractor's expense, regardless of the cause of such damage.*

13.    By modification of 9 March 2004, the following provision was added to the contract:

b. "PAYMENT FOR MATERIALS STORED OFF-SITE", Section 01100-23:

*Pursuant to the Contract Clause entitled "PAYMENTS UNDER FIXED PRICE CONSTRUCTION CONTRACTS" (APR 1989) materials delivered to the Contractor at locations other than the site of the work may be taken into consideration in making progress payments if included in invoices for payment estimates  and if all the conditions of the Contract Clauses are fulfilled.  Payment for items delivered to locations other than the work site shall be limited to materials which have been approved (if required by the technical specifications) and fabricated to the point where they are identifiable to an item of work required under this contract.  Such payment shall be made only after receipt of paid or receipted invoices or invoices with canceled check showing title to the items by*

3

the prime Contractor. These invoices must show the dollar value of the materials and labor incorporated into them. The delivery size shall be acceptable to the Government and the materials shall be available for inspection by the Government prior to any consideration for payment. Payment for materials delivered off-site is limited to:

a.   Cast Iron trench Grating
b.   Ventilation Fans
c.   Submersible Pump w/Accessories
d.   Potable Water Booster Pump
e.   Vacuum Pump - Motor Driven Unit
f.   Vacuum Pump - Diesel Engine Driven Unit
g.   Vacuum Piping Accessories
h.   Waste Oil Piping Accessories
i.   Air Compressor
j.   Air Valve
k.   Builders Hardware
l.   Mechanical Climber Screen Cleaners
m.   Package Treatment Plant
n.   25 Ton Overhead Cranes
o.   Waste Oil Tank
p.   Major Electrical Equipment (MCC's, Etc.)
q.   Emergency Generator.

14.   By letter of 14 October 2005 Pittman advised Alan Hunter, the Administrative Contracting Officer ("ACO") that various items of equipment and materials stored at the Franklin Avenue site had been damaged during the hurricane and requested "...direction relative to what to do at this point."

15.   By letter of 21 November 2005, Mr. Hunter advised Pittman that "...the Government has no responsibility for the damages to the materials and equipment stored at 3021 Franklin Avenue", citing the Permits and Responsibilities clause as well as the inapplicability of the Damage to Work clause.

16.   Subsequent correspondence from the ACO to Pittman reiterated the government's position. The ACO's letter of 7 March 2006 further requested that the contractor should submit a plan indicating how it intended to replace the equipment and the impact, if any, it would have on the scheduled completion date. The ACO's letter of 11 July 2006 advised Pittman that the government, in essence, had overpaid the contractor because the damaged equipment and materials no longer had the value that warranted the prior progress payments.

17.   By letter of 13 July 2006 Pittman advised the ACO of its position that the damaged equipment fell under the scope of the Damage to Work clause, based upon its assertion that the damaged equipment constitutes part of the "permanent work". Pittman further asserted that, due to government changes in the contract, the project was not ready to accept and install the equipment when it was ready to be shipped by the supplier, thus necessitating the storage requirement.

4

18.    As of the date of this final decision, Pittman has not replaced or refurbished any of the damaged equipment, nor has it reimbursed the government for any of the progress payments allocable to the damaged equipment.

## THE GOVERNMENT'S CLAIM

The government claims that Pittman is liable in the principal sum of $399,890.91, which represents the progress payments allocable to the flood-damaged equipment. Since the equipment is no longer suitable for installation in the pumping station, and since Pittman has neither replaced nor satisfactorily refurbished the equipment, the government contends that it has received no value for the payments made and, accordingly, that Pittman owes the government the amount of progress payments made to Pittman for the equipment.

## ANALYSIS AND DISCUSSION

The central question in the government's claim is: Who bears the risk of loss for the equipment damaged by the floodwaters of Hurricane Katrina?  This issue is resolved through application of the terms and conditions of the contract.

## The Permits and Responsibilities clause:

The relevant part of the Permits and Responsibilities clause, FAR 52.236-7, reads as follows:

> ...The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

This provision provides, in effect, for the contractor's strict liability for damage to materials and work prior to completion and acceptance.  The contractor bears responsibility for "all materials delivered and work performed" unless completion and acceptance, or acceptance of an applicable portion of the work, has occurred.  No such acceptance of the relevant work occurred prior to the time the equipment was damaged by floodwaters.  Accordingly, under the Permits and Responsibilities clause, the contractor is responsible for the damaged equipment.

## The Damage to Work clause:

The Damage to Work clause may, in the event of some defined occurrences, mitigate the strict dictates of the Permits and Responsibilities clause.  It reads as follows:

> The responsibility for damage to any part of the permanent work shall be as set forth in the Section 00700 clause of the contract entitled "Permits and Responsibilities" (FAR 52.236-7) However, if in the judgment of the Contracting Officer, any part of the permanent work performed by the Contractor is damaged by flood, earthquake, hurricane or tornado, which damage is not due to the

5

*failure of the Contractor to take reasonable precautions or to exercise sound engineering and construction practices in the conduct of the work, the Contractor shall make the repairs as ordered by the Contracting Officer and full compensation for such repairs will be made at applicable contract unit or lump sum prices as fixed and established in the contract. If, in the opinion of the Contracting Officer, there are not contract unit or lump sum prices applicable to any part of such work, an equitable adjustment shall be made pursuant to the Section 0700 Clause entitled "Changes" (FAR 52.243-4). Except as herein provided, damage to all work (including temporary construction), utilities, materials, equipment and plant shall be repaired to the satisfaction of the Contracting Officer at the contractor's expense, regardless of the cause of such damage.*

For purposes of this analysis, the most relevant phrase in the Damage to Work clause is "any part of the permanent work". If the damage to the stored equipment cannot be reasonably classified as damage to "permanent work", then this clause will provide no relief to the contractor. Because the damaged equipment was located in the contractor's storage area and had not yet been incorporated into the pump station, the damaged equipment was not "any part of the permanent work", as that phrase is used in the Damage to Work clause. Accordingly, the Damage to Work clause is not applicable to the facts of this matter and may not be invoked as the basis to relieve the contractor from financial liability for the damaged equipment.

## Does passage of title to the government shift liability from the contractor to the government?

The question has been raised whether the presumed passage of ownership in the equipment in favor of the government as of the date of damage may have shifted the risk of loss to the government. As explained below, the answer is "no".

## FAR 52.232-5, Payments under Fixed-Price Construction Contracts:

FAR 52.232-5(b)(2), as implemented through the general provision entitled "Payment for Materials Stored Off-Site", Section 01100-20, allows the contracting officer to make progress payments to a contractor for "material delivered to the Contractor at locations other than the site" of the construction. FAR 52.232-5(f) clearly provides that risk of loss does not shift from the contractor simply because the government makes payment to the contractor for property delivered:

> *Title, liability and reservation of rights. All material and work covered by progress payments made shall, at the time of payment, become the sole property of the Government, but this shall not be construed as-*
> *(1) Relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work; or*
> *(2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.*

6

## Government Property clause (FAR 52.245-2):

Additionally, the Government Property clause makes it clear that, while passage of title to the government occurs upon delivery of certain property, such passage of title does not relieve the contractor of liability for damage to the property:

*(c) Title in Government Property....*
*(4) If this contract contains a provision directing the Contractor to purchase material for which the Government will reimburse the contractor as a direct item of cost under this contract -*
*(i) Title to material purchased from a vendor shall pass to and vest in the Government upon the vendor's delivery of such material...*

*(g) Risk of Loss. Unless otherwise provided in this contract, the Contractor assumes the risk of, and shall be responsible for, any loss or destruction of, or damage to, Government property upon its delivery to the Contractor or upon passage of title to the Government under paragraph (c) of this clause.....*

## FAR 32.503-16, Risk of Loss:

Finally, this section of the FAR provides guidance and interpretation on how the risk of loss is, or is not, affected by the Progress Payments clause:

*(a) Under the Progress Payments clause, and except for normal spoilage, the contractor bears the risk of loss, theft, destruction, or damage to property affected by the clause, even though title is vested in the Government, unless the Government has expressly assumed this risk. The clauses prescribed in this regulation related to progress payments, default, and terminations do not constitute a Government assumption of this risk.*

## Government right to seek repayment:

The gravamen of this claim is that the government has made payment for equipment which no longer exists or which is no longer suitable for incorporation into the permanent work. Even without specific authorization, it would be reasonable to conclude that the government would be entitled to claim reimbursement for payments made for equipment that has been damaged beyond use. Nonetheless, citation is made to FAR 32.503-16, Risk of Loss, section (b), which states:

*(b) If a loss occurs in connection with property for which the contractor bears the risk, the contractor is obligated to repay to the Government the amount of unliquidated progress payments based on costs allocable to the property.*

Clearly, the government is entitled to assert this affirmative claim.
**Pittman's asserted defenses:**

Pittman has asserted two reasons why the government, and not Pittman, should be responsible for the damaged equipment.

First, Pittman asserts that the damage to the equipment constitutes damage to the "permanent work" and, under the "Damage to Work" clause, the government should pay for the cost of refurbishing or replacing the equipment. As previously noted, the stored equipment does not constitute part of the "permanent work", meaning the "Damage to Work" clause is inapplicable.

Second, in its letter of 13 July 2006, Pittman states that, due to government changes to the contract, the project was not ready to accept and install the various items of equipment when they were ready to be shipped by the suppliers. It is not clear from the letter why Pittman believes this assertion to be relevant, but one can assume that Pittman is asserting that, had the equipment been installed at the pumping station, it either would not have flooded or, if it did flood, the cost of the damaged equipment would have been at the government's risk, under the Damage to Work clause. This assertion is without merit.

Assuming, *arguendo*, that some action of the government caused a delay in completion of the contract work (or in the installation of the damaged equipment) the contractor is thereby entitled to an equitable adjustment in the contract price. However, a change to the contract work that extends performance time does not relieve the contractor from its contractual obligation to bear the risk of loss for equipment in its possession. To assert the contrary is to state that a government-caused extension in the time to performance has the effect of totally rewriting the contract's specific provisions on risk of loss, thereby making the government the insurer or indemnifier of the contractor.

When the equipment was damaged it was in the possession, custody and control of Pittman. For obvious reasons, the contract provides, under several clauses, that in such circumstances the risk of loss is with the contractor. A modification to the contract which extends the time of performance does not remove this risk from the contractor, but will entitle the contractor to the otherwise allowable costs directly associated with the additional performance time and extended risks, such as additional storage costs and insurance premiums. All terms and conditions of a contract that has been modified are still in full force and effect, *except* to the extent that the modification may have altered specific provisions of the contract. A change to the contract may entitle a contractor to recovery of costs caused by the change, but, unless specifically provided, the change does not alter the *risk of loss scheme* explicitly set forth elsewhere in the contract.

## FINAL DECISION

In consideration of the foregoing finding of facts, and based upon the foregoing analysis and discussion, it is my final decision that C.R. Pittman Construction Company, Inc. is justly and truly indebted to the United States of America, through the U.S. Army Corps of Engineers, under Contract Number DACW29-02-C-0062, in the amount of $399,890.91.

## NOTICE OF APPEAL RIGHTS

8

This is the final decision of the Contracting Officer. This decision may be appealed under the Disputes clause to the Armed Services Board of Contract Appeals, Skyline 6, 5109 Leesburg Pike, Falls Church, Virginia 22041-3208. If you decide to appeal, you must mail or otherwise furnish written notice thereof to the Armed Services Board of Contract Appeals within 90 days from the date you receive this decision. A copy thereof shall be furnished to the contracting officer from whose decision the appeal is taken. The notice shall indicate that an appeal is intended, shall include a copy of this decision and identify the contract by number. With regard to appeals to the Armed Services Board of Contract Appeals you may, solely at your election, proceed under the Boards' small claims procedure for claims of $50,000 or less or its accelerated procedures for claims of $100,000 or less. In lieu of appealing to the Armed Services Board of Contract Appeals, you may bring an action directly in the U.S. Court of Federal Claims (except as provided in the Contract Disputes Act, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

## DEMAND FOR PAYMENT

The United States of America, through the U.S. Army Corps of Engineers, hereby demands payment of $399,890.91 from C.R. Pittman Construction Company, Inc. in satisfaction of the sums determined to be due and owing pursuant to the foregoing contracting officer's final decision under Contract Number DACW29-02-C-0062.   You are hereby notified that any amounts not paid within thirty (30) days from the date of this demand shall bear interest from the date of demand, or from any earlier date specified in the contract, and that the interest rate shall be the rate specified by the Secretary of the Treasury, for the period affected, under Public Law 92-41. If immediate payment is not practicable or if the amount is disputed, you may submit a proposal for deferment of collection. The undersigned contracting officer is the responsible official designated for determining the amount of the debt and for its collection.

If you have any questions, please contact me at (504) 862-1164.

Sincerely,

Charles R. Zammit

Charles R. Zammit
Contracting Officer

EP 415-1-2
15 Jul 87

CHAPTER 3

PROCESSING OF CLAIMS

3-1.  GENERAL.

a.  Every construction contract presupposes the possibility of differences arising between the Government (represented by the contracting officer) and the contractor.  These differences may involve proposals for extra work, differing site conditions, errors or omissions in the specifications or drawings, unreasonable delays, damages to the work, wrongful suspensions or interferences by the Government, and like matters.  Usually, the contractor seeks additional monetary compensation (i.e., an increase in the contract price), or extensions of time for completion, or both.  Occasionally, the Government is a claimant, as with respect to liquidated damages for late completion or where a change results in a decrease in contract price.  The great majority of these claims are resolved by negotiation and the issuance of a change order acceptable to both sides.  In some cases, however, the Government regards the contractor's claim as wholly without merit, in which event the claim will be denied by the contracting officer and the contractor afforded an opportunity to appeal.  In other cases, the Government may consider the claim meritorious but may not agree on the amount sought by the contractor.  In these cases, the contracting officer may issue a unilateral modification setting forth only the amount he feels the contractor is entitled to receive.  The contractor can appeal or accept the unilateral modification.

b.  On Government construction contracts, many of which are vital to national defense, continuation of work during disagreement is imperative.  A "disputes procedure" is provided in the contract for resolving contract disagreements.  This procedure must be used when disagreements cannot be settled between the contractor and contracting officer.

c.  Under the procedure, the contractor may appeal a contracting officer's decision administratively to the Armed Services Board of Contract Appeals (ASBCA) or the Corps of Engineers Board of Contract Appeals (ENGBCA).  However, the contractor may bring an action directly into the U.S. Claims Court within 12 months of the date the contractor receives the contracting officer's decision.

d.  The disputes procedure does not apply to all disputes.  Other remedies must sometimes be sought.  Traditionally, three are available:  (1) a request for relief to the General Accounting Office, (2) a suit in federal court, and (3) a request for relief under Public Law 85-804.

e.  A fair adjustment may be both possible and within the contracting officer's authority.  Efforts should be made to resolve differences by mutual agreement whenever possible.

EXHIBIT
3

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of the form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| United States of America, Department of the Army, Corp of Engineers, U.S. Army Engineer District, New Orleans P.O. Box 60267, CEMVN-OC New Orleans, Louisiana 70160-0267 | C.R.Pittman Construction Co.,Inc. Lolita P. McCann 821 Baronne St. New Orleans, La 70122 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. or P.M.) |
|---|---|---|---|---|
| MILITARY    CIVILIAN | | | Monday, August 29, 2005 | unknown |

8 Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

Federal Tort Claims Act, 28 U.S.C. §§ 1346 (b) (1), 2671-2680; the Admiralty Extension Act, 46 U.S.C. app. §741; the Public Vessel Act, 46 U.S.C. app. § 781; and the Suits in Admiralty Act, 46 U.S.C. app. § 741

Address:    3021 Franklin Ave. New Orleans, LA 70122

8a

The hurricane protection levees and hurricane walls which were supposed to protect the New Orleans metropolitan area failed and were breached during the day of August 29, 2005. The breaches and failure of the hurricane protection levees and walls were a result of Corps of Engineers' negligence in granting a permit to the Sewerage and Water Board to dredge the 17th Street Canal and in the design and construction of these levees and walls and the Mississippi River Gulf Outlet. In addition, the Corps knew or reasonably should have known that the hurricane protection levees and walls were inadequate to protect the area from flooding from a fast moving category three hurricane and despite that knowledge, the Corps failed to disclose these inadequacies, to the material detriment of the claimant.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.) Damage for equipment,machinery&any consequential loss Destruction of real and personal property resulting from water damage; loss of opportunity to purchase a sufficient amount of flood insurance, to modify the property, or to relocate as a result of fraud and/or concealment by the U.S. Army Corps of Engineers.

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

Personal injury and mental distress

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, street, city, State, and Zip Code) |
| Claimant is not aware of any witnesses at this time. | |

| 12. (See instructions on reverse.) | AMOUNT OF CLAIM (In dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| $5,900,00.00 | | | $5,900,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| CR Pittman Const.Co.Inc.per Lolita P McCann | 504-947-4771 | 2/27/07 |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of $2,000 plus double the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | Fine of not more than $10,000 or imprisonment for not more than 5 years or both. (See 18 U.S.C. 287, 1001.) |

95.109
Previous editions not usable.

NSN 7540-00-634--4046

STANDARD FORM 95 (Rev. 7-85) (EG)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

EXHIBIT
4

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect a Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim

## INSTRUCTIONS

Complete all items - insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, .

to Director, Torts Branch.
Civil Division
U.S. Department of Justice
Washington, DC 20530

. and to the
Office of Management and Budget
Paperwork Reduction Project 1105-
0008I Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? None that would cover this claim.    Yes, if yes, give name and address of insurance company (*Number, Street, City, State, and Zip Code*) and policy number.

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? Not applicable    16b. If deductible, state amount

17. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? Not applicable

18. Do you carry public liability and property damage insurance?    If yes, give name and address of insurance company (*Number, street, city, State, and Zip corm*)

yes

Eustis Insurance
1340 Poydras Street, Suite 1900
New Orleans, LA  70112

SF 95 (Rev. 7 85) BACK