UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION NO.:  05-4182 "K" (2) JUDGE DUVAL MAG. WILKINSON |

PERTAINS TO:  INSURANCE

MICHAEL AND VICKIE KRAMER;
NORMAN PALAZZO,

               Plaintiffs,

VERSUS

ALLSTATE INSURANCE COMPANY,

               Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*
*
*
*
*
*
*

CIVIL ACTION
NO.:  07-5960

*
*
*
*
*
*

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' CLAIMS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

Plaintiffs seek insurance benefits from Allstate for damage sustained to their homes as a result of Hurricane Katrina.  In support of their claims, Plaintiffs advance two theories of recovery and vaguely refer to another theory, all of which fail.  First, Plaintiffs incorrectly assert that Allstate's homeowner's insurance policy provides coverage for flood damage.  (*See* Pet. at

¶ VI).  Second, Plaintiffs mistakenly urge that the Louisiana Valued Policy Law, R.S. § 22:695

("VPL"), requires Allstate to pay each Plaintiff his or her policy limit without regard to the cause

of the damage.  (*See* Pet. at ¶ VII).  Finally, Plaintiffs generally refer to Allstate's partial

payments for wind damage and allude to claims that they are entitled to more.  (*See* Pet. at ¶¶ V

and VII).  As set forth below, all the claims asserted by Plaintiffs are deficient and should be

dismissed.

With respect to the flood losses, the plain terms of Allstate's homeowner's insurance

policies exclude coverage for flood damage.  Indeed, the Fifth Circuit, applying Louisiana law,

recently held that Allstate's flood exclusion unambiguously excludes coverage for flood losses

sustained when the levees failed after Hurricane Katrina struck.  *See In re Katrina Canal*

*Breaches Litig.,* 495 F.3d 191 (5th Cir. 2007) ("*Chehardy*").[1]  Enforcing the plain terms of

Allstate's flood exclusion, the *Chehardy* court held Allstate's flood exclusion applied regardless

of what actually caused the flood – including the failure of the flood-control structures that were

put in place to prevent such a catastrophe.  Here too, no matter how Plaintiffs characterize the

cause of their alleged flood damage, they cannot avoid the plain terms of their policies' flood

exclusion.  In addition to the flood exclusion, a separate exclusion for water damage contained

within Allstate's policy precludes coverage for water damage caused by the levee breaches.

Accordingly, all Plaintiffs' claims seeking coverage for flood damage or water damage resulting

from levee breaches should be dismissed.

Plaintiffs also allege that Allstate violated the VPL.  (*See* Pet. at ¶ VII).  However, the

Fifth Circuit, applying Louisiana law, recently held that the VPL does *not* apply where the

---

[1] The Fifth Circuit denied the insureds' motion for rehearing and/or to stay the mandate.  *In re Katrina Canal Breaches Litig.*, No. 07-30119 (Order denying Petitions for Rehearing and Motion for Stay of Mandate, dated Aug. 27, 2007).

alleged total loss was not caused by a covered peril.  *See, e.g., Chauvin v. State Farm Fire and Casualty Co.,* 495 F.3d 232 (5th Cir. 2007).[2]  Here, the Petition is devoid of allegations that Plaintiffs suffered a total loss caused by a covered peril.  Accordingly, Plaintiffs' VPL claims fail as a matter of law.

Finally, to the extent the Petition can be read to include claims for breach of contract, the claims should be dismissed because Plaintiffs failed to identify the policy provisions Allstate allegedly breached and Plaintiffs failed to allege any specific acts or violations entitling them to statutory penalties.  In the alternative, Plaintiffs should be required to re-plead their contract allegations with a more definite statement to allow Allstate the opportunity to properly defend itself against the claims that have been alleged.

## COMPLAINT ALLEGATIONS

Plaintiffs are individuals who owned separate properties in Plaquemines Parish that were insured by Allstate.  Plaintiffs collectively have sued Allstate alleging that their properties sustained substantial damage resulting from Hurricane Katrina.  Plaintiffs allege that Allstate's homeowner's insurance policy provides coverage for the damage Plaintiffs' properties allegedly sustained as a result of non-natural flood waters from man-made levee breaches.  (*See* Pet. at ¶ VI).  Plaintiffs further allege that, as a result of the flood damage, Allstate was obligated under the VPL to pay each Plaintiff his or her respective insurance policy limits.  (*See* Pet. at ¶ VII).  Although Plaintiffs allege that the damage rendered their homes uninhabitable, they do not assert that their homes were total losses, nor do they allege that the sole, efficient or proximate cause of their loss resulted from a peril covered by the insurance policies at issue in this case.

---

[2]  The Fifth Circuit denied the insureds' motion for rehearing en banc and issued its mandate. *Chauvin v. State Farm Fire & Casualty Co.*, No. 06-31135 (Order denying Petition for Rehearing En Banc, dated Sept. 13, 2007; and Mandate, dated Sept. 21, 2007).

Among other policy exclusions, the policies at issue in this case exclude any loss caused by: "Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind," as well as "water or any other substance on or below the surface of the ground, regardless of its source." (*See* Exhibits 1 & 2 to Exhibit A).[3]

## ARGUMENT

### I.    STANDARD FOR MOTION TO DISMISS.

For purposes of a Rule 12(b)(6) motion to dismiss, the Court accepts the well-pleaded allegations as true and the motion will be granted if the plaintiffs cannot recover, as a matter of law, on the facts alleged. *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004). While well-pleaded facts are accepted as true, the Court will not "accept as true conclusory allegations or unwarranted deductions of fact." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 313 (5th Cir. 2002). Moreover, while a complaint challenged under Rule 12(b)(6) need not set forth detailed factual allegations, a plaintiff must provide sufficiently detailed allegations to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-64 (2007). The plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* As discussed below, all Plaintiffs' claims should be dismissed under this standard.

---

[3] Because Plaintiffs' insurance policies are central to their Petition and provide the basis for the claims, the Court can consider them without converting the instant motion to dismiss to one for summary judgment. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

## II.   PLAINTIFFS' CLAIMS SEEKING COVERAGE FOR FLOOD DAMAGE FAIL AS A MATTER OF LAW.

Under settled Louisiana law, the plain terms of an insurance policy should be enforced as written.  *See, e.g., Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003).  Further, where, as here, the policy does not define the term "flood," that does not make the term ambiguous; rather, the term must be given its plain, ordinary, and generally prevailing meaning. *See, e.g.,* La. Civ. Code art. 2047; *Cadwallader,* 848 So.2d at 580.

Applying these principles in *Chehardy*, the court considered the plaintiffs' argument that, notwithstanding the flood exclusions in their policies – *including the very Allstate flood exclusion at issue here* – they were entitled to insurance coverage for damages sustained to their properties resulting from the inundation of water into New Orleans after Hurricane Katrina resulted from the negligent design, construction, and maintenance of the levees.  *Chehardy,* 495 F.3d at 196.  Plaintiffs urged that the policies' flood exclusions in this context were ambiguous since they did not clearly exclude coverage for an inundation of water induced by negligence.  *Id.*  The Fifth Circuit rejected this argument, holding that, even if the plaintiffs could prove the levees were negligently designed, constructed, or maintained and that the breaches were due to this negligence, the flood exclusions in the plaintiffs' policies, substantively identical to those here, unambiguously precluded their recovery:  "Regardless of what caused the failure of the flood-control structures that were put in place to prevent such a catastrophe, their failure resulted in a widespread flood that damaged the plaintiffs' property.  This event was excluded from coverage under the plaintiffs' insurance policies, and under Louisiana law we are bound to enforce the unambiguous terms of their insurance contracts as written."  *Id.*

The *Chehardy* Court found the Allstate flood exclusions were "unambiguous in the context of this case and that what occurred here fits squarely within the generally prevailing

meaning of the term 'flood.'"  *Id.* at 214.  The Court noted that when the levees failed, "an enormous volume of water inundated the city.  In common parlance, this event is known as a flood."  *Id.*  After rejecting plaintiffs' arguments that the flood exclusions only applied to natural floods, not levee breaches, and that the plaintiffs had a reasonable expectation of coverage, the Fifth Circuit concluded, in language equally applicable here:

> [T]he flood exclusions in the plaintiffs' policies are unambiguous in the context of the facts of this case.  In the midst of a hurricane, three canals running through the City of New Orleans overflowed their normal boundaries.  The flood-control measures, i.e., levees, that man had put in place to prevent the canal's floodwaters from reaching the city failed.   The result was an enormous and devastating inundation of water into the city, damaging the plaintiffs' property.  This event was a "flood" within that term's generally prevailing meaning as used in common parlance, and our interpretation of the exclusions ends there.   The flood is unambiguously excluded from coverage under the plaintiffs' all-risk policies, and the district court's conclusion to the contrary was erroneous.

*Id.* at 221.

In this case, Plaintiffs' allegations make it clear that they are seeking recovery under their homeowner's or renter's insurance policies for damages caused by flood waters.  (*See* Pet. at ¶ VI).  However, as in *Chehardy*, there is no question that Plaintiffs' claims are excluded by the flood exclusion contained within their insurance policies.[4]   Accordingly, Plaintiffs' claims seeking payment for flood damages fail as a matter of law and should be dismissed.

---

[4] *See also Buente v. Allstate Prop. & Cas. Ins. Co.,* 2006 WL 980784, at *1 (S.D. Miss. Apr. 12, 2006) (Judge Senter held Allstate's flood exclusion valid and enforceable and applicable to Hurricane Katrina's storm surge, observing the "inundation that occurred during Hurricane Katrina was a flood, as that term is ordinarily understood"); *Dobson v. Allstate Ins. Co.,* 2006 WL 2078423, at *11 (E.D. La. Jul. 21, 2006) (in another Hurricane Katrina case, Judge Vance held Allstate's flood exclusion "clearly worded," and that this "clear policy language" excluded flooding caused by a hurricane).

### III.   PLAINTIFFS' CLAIMS SEEKING COVERAGE FOR FLOOD DAMAGE ALSO FAIL BASED ON ALLSTATE'S WATER DAMAGE EXCLUSION.

In addition to the flood exclusions specifically addressed and upheld by the Fifth Circuit in *Chehardy,* Allstate's homeowner's insurance policies contain a separate, broadly-worded water damage exclusion, which provides:

> We do not cover loss to the property described in Coverage A – Dwelling Protection or Coverage B – Other Structures Protection consisting of or caused by:
>
>         \*        \*        \*        \*
>
> 4.      Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the residence premises.

(*See e.g.,* Exhibit 1, Allstate Insurance Company Deluxe Homeowners Policy (Form AP3339 at page 6), attached to Exhibit A, the authenticating Affidavit of Linda Sisson). Allstate's broad water damage exclusion clearly applies to preclude Plaintiffs' water damage claims. Specifically, Plaintiffs' claims unquestionably resulted from "water" which exerted "pressure on or flowed, seeped or leaked through the residence premises," and so Plaintiffs' claims fall within the plain language of the exclusion.

As the Fifth Circuit's decision in *Chehardy* made clear in addressing the flood damage exclusions, which, if anything, were *narrower* than Allstate's broadly-worded water damage exclusion, the levees and the bodies of water they bounded were plainly the source of the floodwaters that damaged plaintiffs' homes:

> In the midst of a hurricane, three canals running through the City of New Orleans overflowed their normal boundaries. The flood-control measures, i.e., levees, that man had put in place to prevent the canal's floodwaters from reaching the city failed. The result was an enormous and devastating inundation of water into the city, damaging the plaintiffs' property.

7

*Id.* at 221.  So, although the Fifth Circuit in *Chehardy* had no reason to address Allstate's water damage exclusion, since it decided the case based solely on the flood exclusions, it is clear *Chehardy* mandates that the more broadly worded water damage exclusion, which refers to damage caused by water on the ground *regardless of its source,* also would preclude coverage for these claims.

Significantly, courts interpreting identical or substantively similar water damage exclusions have held they unambiguously preclude coverage for water damage – regardless of whether the source is natural or "man-made."  For example, in *Carver v. Allstate Ins. Co.*, 76 S.W.3d 901 (Ark. Ct. App. 2002), the court held an identical water damage exclusion precluded coverage for damage caused by a broken water main which flooded the insured's house.  The court stated, in language equally applicable here:  "We find nothing in the exclusion to support the conclusion that it is limited only to naturally occurring water or ground water.  The exclusion clearly and unambiguously indicates that damage from any water on or below the surface which flows into the premises is not covered by the policy, regardless of whether the source is natural or artificial."  *Id.* at 905.

Similarly, in *Buttelworth v. Westfield Ins. Co.*, 535 N.E.2d 320 (Oh. Ct. App. 1987), the court held that "[w]hen a homeowner's policy specifically excludes damage from 'water below the surface of the ground including water which * * * seeps or leaks through a * * * foundation,' regardless of its source, a homeowner cannot hold his insurer liable for foundation damage caused by a rupture in his neighbor's plumbing system."  *Id.* at 320.  In so ruling, the court further stated the "exclusion clearly and unambiguously indicates that damage from any water below the surface which seeps through a foundation is not covered by the policy, regardless of whether the source is natural or artificial."  *Id.* at 321.

Here, just as the water damage exclusions precluded coverage for damage from a burst water main in *Carver* and a neighbor's ruptured plumbing system in *Buttelworth,* the exclusion plainly precludes coverage for damage from the levee breaches. To paraphrase *Carver,* the exclusion clearly and unambiguously indicates that damage from any water on or below the surface which flows into the premises [which is precisely what occurred as a result of the levee breaches] is not covered by the policy, regardless of whether the source is natural or artificial.

In addition, the *Chehardy* Court's rationale demonstrates that this Court's prior ruling that Allstate's water damage exclusion did not exclude plaintiffs' flood losses was erroneous because it failed to apply the clear and unambiguous language of that exclusion. In this Court's decision in *Chehardy,* the Court addressed Allstate's water damage exclusion, stating: "With respect to Section 4, from the case law examined concerning this particular exclusion, it does not appear that this exclusion is meant to address water damage caused by negligence of the kind alleged in *Chehardy.*" *See In re Katrina Canal Breaches Litig.,* 466 F. Supp. 2d 729, 772 (E.D. La. 2006), *vacated in part, Chehardy, supra* (*citing West v. Umialik Ins. Co.,* 8 P.3d 1135 (Alaska 2000); *Hudson v. Allstate Ins. Co.,* 25 A.D.3d 654, 809 N.Y.S.2d 124 (2d Dep't 2006); and *Carver v. Allstate Ins. Co.,* 76 S.W.3d 901 (Ark. Ct. App. 2002)). This Court further stated "the term 'no matter the source' does not address causation, rather it addresses the location from where the water might emanate." 466 F. Supp. 2d at 772.

Allstate respectfully submits the cases on which this Court relied in holding the exclusion had no application to "man-made" negligence, as opposed to a "natural" source, do not support that conclusion. *West* and *Hudson* are inapposite, because the damage at issue in those cases was caused by water from broken internal plumbing under the insured's home, *not* an external source such as a failed water main or levee. Indeed, the *West* court indicated the exclusion in that case

– which was *narrower* than Allstate's exclusion, because it applied only to water "below the surface of the ground," not "on or below the surface of the ground, regardless of its source" – *would have applied* if, as here, the damage resulted from an external source. *West,* 8 P.3d at 1141-42 ("The water damage exclusion describes water exerting pressure, seeping through, or leaking through the building, sidewalk, driveway, foundation, swimming pool, or other structure. An individual could reasonably interpret this as water from a natural *or external source* seeping through the structure. The language does not describe the damage incurred by the Wests") (emphasis added). Moreover, in *Hudson,* unlike the water from the levee breaches here, the ruptured plumbing was actually *above* the surface of the ground, so the exclusion precluding damage caused by water "on or below the surface of the ground" did not apply.

Further, as discussed above, *Carver* in fact *directly supports* the application of the water damage exclusion here. As noted, the *Carver* court enforced the *identical Allstate water damage exclusion* to preclude coverage for flooding due to a water main burst near the insured's property. If a water damage exclusion applies to a water main burst, it certainly applies to flooding due to a levee breach. Notably, the *Carver* court specifically distinguished another Arkansas case cited by this Court in its *Chehardy* decision – *Ebbing v. State Farm Fire & Cas. Co.,* 1 S.W.3d 459 (1999), authored by the same judge who decided *Carver.* As the *Carver* court explained, in *Ebbing,* State Farm denied a claim for water damage as a result of a water main that burst and ran through the insured's home based on the following exclusion: "(C) Water damage, meaning: (1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not." *Carver,* 76 S.W.3d at 904-05 (*citing Ebbing*). The *Ebbing* court held the terms "flood" and "surface water" in an exclusion "did not include

water from a burst water main because those terms contemplated water from natural causes or sources." *Carver,* 76 S.W.3d at 905 (*citing Ebbing*).

The *Carver* court found *Ebbing* distinguishable, explaining, in language equally applicable here:

> We find *Ebbing* to be distinguishable. The exclusion in *Ebbing* is almost identical to exclusion 1 in the policy at issue in the present case. Appellee did not, however, deny coverage based upon exclusion 1. Rather, appellee denied coverage based on exclusion 4. That exclusion states "water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on or flows, seeps or leaks through any part of the residence premises." When the exclusion is read as a part of the contract its plain meaning is to limit the coverage that might otherwise fall within the policy language.

*Carver,* 76 S.W.3d at 905. *Carver* held that exclusion 4 – the same water damage exclusion at issue here – unambiguously precluded coverage in the circumstances presented there, where the source of the water was in fact a man-made water main.

Moreover, on its face, the exclusion's broad reference to water "regardless of its source" does not simply refer to "the location from where the water might emanate." As discussed above, the Fifth Circuit's decision in *Chehardy* leaves no doubt the floodwaters that escaped when the levees breached *were* the "source" of plaintiffs' damages, which brings them squarely within Allstate's broad water-damage exclusion. Indeed, this Court's own ruling in *Chehardy* regarding State Farm's flood exclusion further supports application of the water-damage exclusion here. The Court held State Farm's flood exclusion applied to man-made floods because it excluded water damage regardless of the "cause." 466 F. Supp. 2d at 763. Yet, Allstate's water-damage exclusion, precluding coverage for damage from water on or below the surface of the ground "regardless of its source" is just as broad as State Farm's flood exclusion.

There is simply no legally significant difference between the word "cause" and the word "source."

Finally, even if the term "source" was construed to mean a geographic location, Allstate's water damage exclusion *still* would apply. The exclusion encompasses damage from water on or below the surface of the ground *regardless where it came from*. Whether the water flowed from the canals or the Mississippi River, and whether it flowed over, under, around or through the levees, is irrelevant. The water that escaped when the levees breached was unquestionably "water," it was unquestionably flowing "on or below the surface of the ground," and it is therefore excluded "regardless of its source." The clear and unambiguous language excludes Plaintiffs' claimed losses here, just as it did in *Carver*. There is no other reasonable interpretation of the word "water," no other reasonable interpretation of the phrase "flowing on or below the surface of the ground," and no other reasonable application of the word "source," whether source refers only to geographic location or to causal origin as well.[5] Accordingly, all Plaintiffs' claims seeking payment for such water damages fail as a matter of law.[6]

---

[5] Unlike the situation with respect to the flood exclusion, Allstate is aware of no case currently pending in the Louisiana appellate courts that addresses the meaning or scope of Allstate's water damage exclusion. In addition, because the language of Allstate's water damage exclusion is clear and unambiguous, any contrary interpretation by the Louisiana courts would constitute an unconstitutional impairment of Allstate's contract rights and would not bind this Court in any event. *See, e.g.,* La. Const. Art. I, § 23.

[6] The recent decision by the Louisiana Fourth Circuit Court of Appeal in *Sher v. Lafayette Ins. Co.,* Case No. 2007-CA-0757 (La. App. 4th Cir. Nov. 19, 2007) in no way alters the above analysis. With absolutely no reasoning, and without even mentioning, let alone trying to meaningfully distinguish, the Fifth Circuit's decision in *Chehardy*, 2 of the 5 justices opined that Lafayette's flood exclusion in that case was ambiguous. Significantly, the other 3 justices did not join in this opinion, and 2 of those specifically stated their belief that Lafayette's flood exclusion was not ambiguous. Thus, *Sher* is not precedent for anything, and certainly cannot justify any departure by this Court from the Fifth Circuit's thorough and well-reasoned *Chehardy* decision. This is particularly true given the fact that the policy language at issue in *Sher* was not even the same language as used by Allstate, which is at issue here and in *Chehardy*. Moreover,

## IV.    PLAINTIFFS' VPL CLAIMS FAIL AS A MATTER OF LAW.

Courts in this jurisdiction repeatedly hold that Louisiana's VPL does *not* apply unless the alleged total loss results from a covered peril.  The most recent case in this regard is the Fifth Circuit's controlling *Chauvin* decision.  *Chauvin v. State Farm Fire & Cas. Co.,* 495 F.3d 232 (5th Cir. 2007).  In *Chauvin,* the Fifth Circuit addressed whether the VPL required the insurers to pay for *all* the damage the plaintiffs allegedly sustained due to Hurricanes Katrina and Rita, even though only part of the damage was caused by a covered peril – and part of the damage was caused by a non-covered peril (*i.e.*, flooding, a risk specifically excluded under the insurance policies).

The plaintiffs in *Chauvin* were homeowners who alleged Hurricanes Katrina and/or Rita rendered their homes total losses.  When their homeowners' insurers refused to reimburse them for the full value of their homes as stated in their policies, the plaintiffs sued, alleging they were entitled to the agreed face value of their policies pursuant to Louisiana's VPL.  As here, all the insurance policies at issue in *Chauvin* covered damage caused by certain perils, such as wind, but excluded coverage for damage caused by flood.  *Id.* at 236.

Louisiana's VPL provides, in relevant part:

> Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any

as noted above, *Sher* did not address the separate water damage exclusion contained in Allstate's policies which provides for a completely separate and independent basis for excluding the damages at issue here from coverage.

13

> application therefor, shall set forth in type of equal size, the actual
> method of such loss computation by the insurer.

R.S. § 22:695.  The *Chauvin* Court explained that, "according to the Louisiana courts, the VPL was adopted for two main purposes:  (1) to keep insurers from writing insurance on property for more than it was actually worth, collecting premiums based on that overvaluation, and later arguing that the property was worth less than the face value when the property was destroyed; and (2) to discourage intentional destruction of property by insureds when they are permitted to over insure their property."  *Chauvin,* 495 F.3d 239.

In affirming the district court's ruling that the VPL did not apply to plaintiffs' claims, the *Chauvin* Court noted "the insurers' construction of the VPL best conforms with its legislative purpose and thus, the VPL only requires an insurer to pay the agreed face value of the insured property if the property is rendered a total loss from a covered peril."  *Id.*  The Court further stated that the "homeowners' interpretation does nothing to further the purpose of the VPL" because it would force insurers to pay for damage for non-covered perils for which the insureds did not pay a premium:

> In particular, a finding that the statute requires insurers to pay the agreed face value of the property, even if an excluded peril (flooding) causes the total loss, runs counter to the VPL's effort to link insurance recoveries to premiums paid.  Such an interpretation of the statute would force the insurer to pay for damage resulting from a non-covered peril for which it did not charge a premium.  Also, because the focus of the VPL is on valuation (to set the *amount* payable when there is a total loss), not on coverage, the statute signals no intent to expand coverage to excluded perils.

*Id.* at 239-40 (emphasis in original).

The Fifth Circuit recognized that the homeowners' interpretation of the VPL – *i.e.,* requiring insurers to pay for a total loss even though caused by a non-covered peril – would lead to absurd results:

14

> If the VPL has the meaning plaintiffs ascribe to it, an insured
> holding a valued homeowner's policy that covered wind damage
> but specifically excluded flood losses could recover the full value
> of his policy if he lost 20 shingles in a windstorm and was
> simultaneously flooded under 10 feet of water. The insurer would
> thus have to compensate the covered loss of a few shingles at the
> value of the entire house. In effect, the insurer would be required
> to pay for damage not covered by the policy and for which it did
> not charge a premium. Such a result would be well outside the
> boundaries of any party's reasonable expectation of the operation
> of an insurance contract.

*Id.* In short, the *Chauvin* Court left no doubt that Louisiana's VPL does not apply when a total loss results from something other than a covered peril.

The Louisiana Third Circuit Appellate Court reached a similar conclusion in *Landry v. Louisiana Citizens Property Ins. Co.*, 964 So.2d 463 (La App. 3d Cir. 2007). In that case, the plaintiffs argued the VPL required the insurer to pay the full valuation of the property under the policy in the event of a total loss if the total loss was partially caused by wind, a covered peril, and the remaining damage was caused by flood, a non-covered peril. Citing *Chauvin,* the *Landry* court stated: "We agree the Louisiana legislature in enacting the VPL never intended to expand coverage beyond that contemplated by the parties to an insurance contract. Further, Louisiana's courts have uniformly held an insurer is not required to pay the full face value of the policy when a total loss of a structure is *caused* by a non-covered peril." *Id.* at 473 (emphasis in original). Instead, for the VPL to apply, a covered peril must be the "efficient or proximate" cause of the total loss. *Id,* at 480. Other Louisiana courts have reached similar results.

In *Caruso v. Allstate Ins. Co.,* 2007 WL 625830 (E.D. La. Feb. 26, 2007), for example, Judge Vance granted the defendants' motions to dismiss in part, holding the VPL did not apply when the total loss was not caused *solely* by a covered loss. Adopting the *Chauvin* district court's reasoning, Judge Vance stated: "the Court grants defendants' motions to dismiss

plaintiffs' claims that are predicated on the theory that plaintiffs are entitled to the full value of their policies so long as a covered loss caused some loss to their property." *Id.* at *11; *see also Gates v. Auto Club Family Ins. Co.*, 2007 WL 1464259, at *2 (E.D. La. May 17, 2007) (dismissing VPL claim where engineering report that plaintiffs referred to in their complaint describes flood and wind damage to their property).  Similarly, in *Turk v. Louisiana Citizens Property Ins. Corp.*, 2006 WL 1635677 (W.D. La. 2006), Chief Judge Haik held, in language equally applicable here:

> [Louisiana's VPL] cannot be construed to require State Farm or LA Citizens to pay the policy limits under their respective policies when the insured property was rendered a total loss, in whole or in part, by a non-covered peril such as flood waters, rather than in whole by a covered peril such as wind damage.  That is, if the property damage is equal to a 100% loss and 50% of that loss is attributable to a covered peril and 50% of that loss is attributable to a non-covered peril, the Court does not read La. R.S. 22:695 to require insurers to pay the policy limit (i.e. 100% of the policy amount) in that instance.  In such a case, the insurer would be responsible for paying only for the percentage of loss which is attributable to the covered peril.

*Id.* at *1; *see also Richard v. State Farm Fire and Cas. Co.*, 2006 WL 3499901, at *4 (W.D. La. Dec. 4, 2006) (rejecting VPL claim to the extent the plaintiff's claims under the VPL involved damages where covered perils were not the sole cause of the loss); *In re Cameron Parish Rita Litig.*, 2007 WL 2066813, at **5-6 (W.D. La. July 13, 2007) (same principle).

In other words, as all the above cases show, the VPL simply cannot be construed to apply in situations where a total loss is caused by an excluded peril as opposed to resulting solely from a covered loss.  This case is no different.  Plaintiffs do not allege the sole, efficient, or even proximate cause of their damages was wind or any other covered peril.  And, as noted, the *Chehardy* Court made clear that flood is *not* a covered peril in these circumstances.

Significantly, Judge Vance recently entered an order dismissing a substantively identical VPL claim. *Richards' Realty Co., L.L.C. v. Paramount Disaster Recovery, Inc.*, No. 06-2396 (Order and Reasons, dated November 13, 2007) (attached hereto as Exhibit B). In so holding, Judge Vance stated, in language equally applicable here, "[p]laintiffs have not alleged they suffered a total loss from a covered peril, as required by La. Rev. Stat. § 22:695" and "plaintiffs have already admitted that some of their loss was attributable to flood, a non-covered peril." *Id.*; (*see also* Pet. at ¶ V) (admitting that at least some of Plaintiffs' damages were caused by "storm surge, overflowing of canals and breaches of levees"). Accordingly, since Plaintiffs have failed to allege that any covered peril was the sole, efficient, or proximate cause of their loss and have already admitted that some of their losses were attributable to flood, a non-covered peril, Plaintiffs' claims for full recovery under the VPL fail as a matter of law and, consistent with *Chehardy* and *Paramount*, should be dismissed.

## V.   PLAINTIFFS' BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED.

Plaintiffs' Petition does not directly allege a breach of contract claim separate and apart from their claims for recovery for flood damage and for policy limits under the VPL. To the extent, however, that the Court interprets Plaintiffs' vague references to Allstate's failure to make full payment for wind damage and to "other causes of action that will be determined at trial" as stating a separate claim for breach of contract, the claim still should be dismissed because Plaintiffs failed to identify any specific policy provision that Allstate allegedly breached. *See Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002) ("[t]o state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision), *cert. denied*, 540 U.S. 812 (2003); *see also Henry v. Allstate Ins. Co.*, 2007

17

WL 2287817, at *5 (E.D. La. Aug. 8, 2007).[7]  The Court is not required to "piece together the elements of the Plaintiffs' claims" where the complaint does not "point to a specific provision of any insurance policy."  *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 2006 WL 1207951, at *2 n.8 (E.D. La. April 26, 2006).  Contrary to the Fifth Circuit's binding precedent in *Louque*, Plaintiffs in the present case failed to identify any specific policy provision which they contend Allstate breached.

Not only does Plaintiffs' Petition fail to allege a breach of a specific policy provision, it fails to offer any specific assertion or allegation that Allstate breached any provision of the policy.  The United States Supreme Court recently clarified the pleading requirements to avoid dismissal under Rule 12(b)(6):

> Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the ground upon which it rests.  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct 1955, 1964-65 (2007) (internal citations omitted); *see also, e.g., Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) ("[i]n order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory

---

[7] Judge Barbier recently distinguished *Louque* in holding that a plaintiff need only plead that there was a contract to effectively allege a breach of contract claim.  *Stokes v. Allstate Indem. Co.*, 2007 WL 1875847 (E.D. La. June 28, 2007).  Allstate respectfully submits that *Louque* clearly requires a plaintiff to plead the specific policy provisions at issue.  In any event, under either standard, Plaintiffs' Petition in this case fails because Plaintiffs failed to plead that Allstate breached a contract as it relates to coverage separate and apart from flood damage or the recovery of policy limits under the VPL.

allegations") (*citing Elliott v. Fonfas*, 867 F.2d 877, 881 (5th Cir. 1989)).  Plaintiffs' Petition fails to offer anything other than conclusory statements that they are entitled to policy limits from Allstate.  Judge Vance recently dismissed defective allegations which are strikingly similar to Plaintiffs' allegations in this case.  *Richards' Realty Co., L.L.C. v. Paramount Disaster Recovery, Inc.*, No. 06-2396 (granting defendant's 12(b)(6) motion where plaintiffs failed to allege, "other than by reference to the VPL statute, that under the terms of their insurance policy they are entitled to the policy coverage limits") (*see* Judge Vance's Order and Reasons, attached hereto as Ex. B).  Plaintiffs' Petition, insofar as it relates to any breach of contract claim other than Allstate's failure to pay for flood damage or to tender policy limits under the VPL, fails to meet the *Twombly* standard, requiring dismissal.

## VI. PLAINTIFFS' STATUTORY CLAIMS UNDER R.S. 22:658 AND 22:1220 FAIL.

Plaintiffs also fail to state a claim for statutory penalties under Louisiana Revised Statutes 22:658 and 22:1220.  Under well-settled Louisiana law, the penalties authorized by Sections 22:658 and 22:1220 "do not stand alone."  *Phillips v. Patterson Ins. Co.*, 813 So.2d 1191, 1195 (La. App. 3rd Cir. 2002).  They depend upon a "valid, underlying insurance claim."  *Id.*; *see also Clausen v. Fidelity & Deposit Co. of Md.*, 660 So.2d 83, 85 (La. App. 1st Cir. 1995) ("[A] plaintiff attempting to base her theory of recovery against an insurer on these statutes must first have a valid, underlying substantive claim upon which insurance coverage is based").  As demonstrated above, Plaintiffs cannot show their entitlement to recovery under a breach of contract claim.  Because Plaintiffs have no valid underlying insurance claim, their claims for statutory penalties under Sections 658 and 1220 must fail as well.

Plaintiffs' statutory penalty claims under Section 22:658 and 22:1220 also should be dismissed because Plaintiffs failed to allege any facts in support of those claims.  With respect to

allegations of statutory penalties, "Louisiana courts have also held that unless one of the proscribed acts in 12:1220 [is] asserted by the plaintiff, then the claims are to be dismissed." *Spiers v. Liberty Mut. Fire Ins. Co.*, 2006 WL 4764430, at *3 (E.D. La. Nov. 21, 2006). The proscribed acts under Section 12:1220(B) consist of "misrepresenting insurance policy provisions relating to coverage, failing to pay a settlement timely after an agreement is reduced to writing, denying coverage or attempting to settle a claim on an altered application without the insured's consent, misleading a claimant as to the prescriptive period, and arbitrarily failing to settle claims timely after receiving satisfactory proof of loss." *Id.* In *Spiers*, a homeowner seeking recovery for damages caused by Hurricane Katrina simply alleged the insurer's "infraction as 'underpaying the amount owed' to him for replacement costs of property 'by applying depreciation to the deductible portion of the covered loss.'" *Id.* In dismissing the homeowner's statutory claim, the court held that his mere assertion of underpayment did not "implicate one of the five causes of action allowed against insurers under Louisiana state law." *Id.*

In the present case, Plaintiffs' Petition states in a conclusory fashion that Allstate "fail[ed] to tender timely and sufficient payment under LSA R.S. 22:658 and LSA R.S. 22:1220." (*See* Pet. at ¶ VIII). Plaintiffs did not allege that Allstate committed one of the proscribed acts under the statute, nor did Plaintiffs offer any facts to support their conclusory allegations. Plaintiffs' claims under LSA R.S. 22:658 and LSA R.S. 22:1220 should be dismissed because they are nothing more than "labels and conclusions, and a formulaic recitation of elements of a cause of action." *Twombly,* 127 S. Ct. at 1964-65.

## ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT

Rule 12(e) of the Federal Rules of Civil Procedure allows Allstate to move for a more definite statement where a pleading is so vague and ambiguous that Allstate cannot reasonably be required to frame a responsive pleading.  Allstate submits that Plaintiffs' Petition is fatally defective and cannot survive Allstate's Rule 12(b)(6) motion.  However, even if the Court believes that Plaintiffs' allegations pass muster under Rule 12(b)(6), Allstate alternatively requests that Plaintiffs be required to amend their Petition to provide sufficient facts and notice of their claims to enable Allstate to prepare a responsive pleading.  Plaintiffs' Petition is vague and ambiguous and fails to specify any facts giving rise to the claims.  Among other defects, the Petition fails to identify the specific type of insurance policy at issue for each Plaintiff; the type and extent of damage each Plaintiff sustained and whether that damage was to the Plaintiffs' residence, personal property, or other structures; what Allstate did or failed to do with respect to each Plaintiff's claim; and the specific policy provisions Allstate allegedly breached with respect to each Plaintiff's claim.  Further, Plaintiffs' Petition alleges an additional cause of action for "other causes of action that will be determined at trial."  (*See* Pet. at ¶ VIII (d)).  Like the other allegations, this "catch-all" allegation fails to provide Allstate with fair notice of Plaintiffs' claims.

Without this basic information, Allstate is unable to adequately respond to Plaintiffs' Petition and is unable to tailor its defenses to each Plaintiff's individual claim to narrow the issues for discovery and trial.  Plaintiffs should be ordered to re-plead to provide Allstate with fair notice of all their claims, including the facts supporting the claims and the specific causes of action Plaintiffs intend to pursue against Allstate.  *See Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999) (recognizing that a complaint containing "bare bones"

allegations does not provide adequate notice and should be dismissed); *see also Edwards v. Allstate Prop. & Cas. Ins. Co.*, 2005 WL 221558, at *4 (E.D. La. Jan. 27, 2005) (utilizing Rule 12(e) in dismissing a vague complaint and ordering a more definite statement of the claims).

## CONCLUSION

For all the foregoing reasons, defendant, Allstate Insurance Company, respectfully requests the Court grant Allstate's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In the alternative, Allstate requests that Plaintiffs be ordered to replead to provide a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

Respectfully submitted,

By */s/ Arthur J. Lentini*

Arthur J. Lentini, APLC (#8520)
6620 Riverside Drive, Suite 312
Metairie, Louisiana 70003
(504) 780-8700 Telephone

OF COUNSEL:
Stephen H. Lee
J. B. (Trey) Henderson III
6660 Riverside Drive, Suite 212
Metairie, Louisiana 70003
(504) 456-5809 Telephone

**Attorneys for Allstate Insurance Company**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon all counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 26th day of November, 2007.

*/s/ Arthur J. Lentini*
Arthur J. Lentini