UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | CIVIL ACTION NO. 05-4182 |
| CONSOLIDATED LITIGATION | * | |
| | * | SECTION "K" |
| | * | |
| PERTAINS TO: | * | MAGISTRATE (2) |
| NO.    07-5023 | * | |
| 07-5040 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

INTERVENING PLAINTIFFS'
SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF THE MOTION
FOR LEAVE TO INTERVENE

**MAY IT PLEASE THE COURT:**

Although undersigned counsel for intervening plaintiffs knows well that Magistrate Wilkinson "reads everything", this supplemental memorandum and motion for leave to file same are being filed in an abundance of caution, simply "to make sure", and to rebut certain erroneous and misleading arguments which have been by the State of Louisiana and the Louisiana Department of "Injustice".   Intervening plaintiffs respectfully submit that their Intervening Complaint should be allowed pursuant to both Rule 24(a), dealing with "Intervention of Right", and pursuant to Rule 24(b), dealing with "Permissive Intervention".   More particularly, intervening plaintiffs claim "an interest relating to the property or transaction which is the subject of the action" and intervening plaintiffs are "so situated that the disposition of the action may . . . impair or impede [their] ability to protect that interest".   Additionally, the claims which intervening

plaintiffs wish to assert against the State of Louisiana and its interest in $200 billion have

facts and law in common with the main action.

**VERY RECENT EVENTS CAUSED THE FILING OF**
**THE INTERVENING COMPLAINT**

The "Victims of KATRINA" litigation pending in This Honorable Court was

literally "turned upside-down" on August 29, 2007, the second anniversary of Hurricane

KATRINA, when the State of Louisiana, through Attorney General Charles C. Foti,

voluntarily invoked the jurisdiction of the United States District Court for the Eastern

District of Louisiana in order to assert a direct claim for property damage sustained by

the State to the tune of a cool $200 billion in Civil Action Nos. 07-5023 and 07-5040,

respectively.[1]  Previously, claims brought against the State of Louisiana, its agencies and

departments, have been summarily dismissed by the Learned District Judge by virtue of

"11th Amendment Immunity", which the State, etc. enjoy from being required to litigate

in Federal Court.  The Learned District Judge not only categorized undersigned counsel's

argument that the State may have waived 11th Amendment immunity as "frivolous at

best" (Record Document No. 3666, p. 7), but also imposed monetary sanctions against

counsel personally for $7,058.50.[2]

Both in their Intervening Complaint and in their motion for leave to intervene,

intervening plaintiffs invoked Supreme Court opinions in the celebrated cases of Clark v.

Barnard, 108 U.S. 436, 2 S.Ct. 878 (1883) and its progeny, and Lapides v. Board of

Regents of University System of Georgia, 535 U.S. 613, 122 S.Ct. 1640 (2002) and cases

cited therein.  Rather than address the holdings in those cases, and the obvious waiver of

---

[1] Certain private attorneys and law firms also appear on the pleadings with Attorney General Foti, no doubt in the capacity of "Special Assistant Attorneys General".
[2] Those sanctions (Record Document No. 6838) have been appealed.

11th Amendment immunity by the State of Louisiana by virtue of the voluntary

invocation of the jurisdiction of This Honorable Court on August 29, 2007, the State

seeks to rest "on its laurels" and argue that "the 11th Amendment bars suit against a

State" in this Court, as if what "happened" on August 29, 2007[3] did nothing whatsoever

to change the "landscape".

    As recently as 1997, in the case of <u>Fernandez v. PNL Asset Management

Company LLC</u>, 123 F.3d 241 (5th Cir. 1997), the Fifth Circuit stated:

> "We do not doubt that after Seminole Tribe[4] a State may voluntarily
>
> choose to participate in a bankruptcy proceeding and waive its Eleventh
>
> Amendment sovereign immunity.  But this remains a choice to be made by
>
> the State."

As if the above and foregoing quotation from the Fifth Circuit is not enough, in their

celebrated "Treatise on Constitutional Law – Substance & Procedure", §2.12 (4th Ed.),

Professors Nowak and Rotunda said as follows when discussing the subject of "waiver":

> The state can lose its Eleventh Amendment immunity when it
> voluntarily invoked the federal court's jurisdiction by removing a case to
> federal court from state court.  The leading case is Lapides v. Board of
> Regents of the University of Georgia.  The Court in such cases is not
> implying a constructive waiver;  rather it is giving effect to the state's
> voluntary decision to expressly invoke federal court jurisdiction.  The state,
> in other words, can decide to waive its sovereign immunity by its litigating
> conduct.

---

[3] The State does cite the Court to LSA-R.S. 9:2800.17(A)(1), which is an "*ex post facto* law", which
intervening plaintiffs maintain does not eliminate the waiver of sovereign immunity contained in Article
XII §10 of the Louisiana Constitution of 1974.  Further, the referenced statute purports to conditionally
grant immunity from civil liability, excepting "gross negligence or willful misconduct".  Intervening
plaintiffs' Intervening Complaint specifically alleged that ". . . the actions and inaction by the State of
Louisiana, and those for whom the State is legally responsible, complained of herein, were willful, and
constituted criminal, malicious, intentional, willful, outrageous, reckless or flagrant misconduct, so as to
deprive the State of immunity from liability."  Intervening Complaint (Record Document No. 8735, Article
XXV, p. 47).
[4] <u>Seminole Tribe of Florida v. Florida</u>, 116 S.Ct. 1114 (1996).

In Lapides, the relevant state statute had waived Georgia's sovereign immunity from state-law suits in state court.  The plaintiff therefore sued in state court, suing both the Georgia State University System and also university officials in their personal capacity.  Plaintiff alleged state tort law violations and violations of 42 U.S.C.A. §1983 when they placed sexual harassment allegations in his personnel files.  Georgia's lawyers then removed the case to the federal court where they then moved to dismiss it on grounds a sovereign immunity.  One might think of that as clever litigating strategy but the Supreme Court was not persuaded.

State law was unclear whether the state waived its immunity when it removed the case to federal court.  Georgia's lawyers said that they removed not to help the state but to provide the officials who were sued in their personal capacities with the interlocutory appeal provisions available in federal court.  Nonetheless, the stat's voluntary removal of the case to federal court constituted an actual waiver.  The plaintiff brought Georgia involuntarily into state court, but it was Georgia's voluntarily action that brought it into federal court.  The Court ruled that Georgia's litigating activity, its motion to remove, amounted to a waiver of its sovereign immunity.

The Court "consistently has found a waiver when a State's attorney general authorized (as here) to bring a case in federal court, has voluntarily invoked that court's jurisdiction."  The Court reasoned that it was unfair to allow a state to voluntarily invoke a federal court's jurisdiction and [to] use its Eleventh Amendment immunity to deprive the court of jurisdiction after then state voluntarily invoked that jurisdiction.  Commentators agree.  Justice Breyer, for a unanimous Court, believed that "neither those who wrote the Eleventh Amendment nor the States themselves (insofar as they authorize litigation in federal courts) would intend to create that unfairness."

Lapides recognized that Georgia state law did not authorize its attorney general to waive Eleventh Amendment immunity, although it did authorize its attorney general to represent it in litigation.  In an earlier case, Ford Motor Co. v. Department of Treasury of State of Indiana, the Court unanimously interpreted roughly similar state laws to uphold the state's immunity.  The Court distinguished Ford, because in that case a private party had involuntarily made the state a party in federal court.  George (sic) here voluntarily removed to federal court.  But the Court went beyond that distinction, because a rule of federal law that "as in Ford, denies waiver despite the state attorney general's state-authorized litigating decision" promotes inconsistency and unfairness.  The Court then concluded: "Finding Ford inconsistent with the basic rationale of that line of cases [finding waiver when the State Attorney General invokes federal court

-4-

jurisdiction], we consequently overrule Ford insofar as it would otherwise apply."

"[W]here a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment."  Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 284, 26 S.Ct. 252, 256, 50 L.Ed. 477 (1906) (emphasis added).  Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883) (a State's "voluntary appearance" in federal court as an intervenor avoids or waives Eleventh Amendment inquiry);  Gardner v. New Jersey, 329 U.S. 565, 574, 67 S.Ct. 467, 472, 91 L.Ed. 504 (1947) (in the context of a bankruptcy claim, that a State "waives an immunity . . . respecting the adjudication of" a "claim" that it voluntarily files in federal court);  Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 284, 26 S.Ct. 252, 256, 50 L.Ed. 477 (1906):  "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment."  Additional citations of authority and footnotes omitted.

The State of Louisiana simply does not address intervening plaintiffs' averring that, by virtue of Attorney General Foti's voluntary invocation of the jurisdiction of This Honorable Court in Civil Action Nos. 07-5023 and 07-5040, the State of Louisiana WAIVED its 11th Amendment immunity from being required to litigate claims brought against it in this Court, something that intervening plaintiffs specifically pleaded in Article X of the proposed Intervening Complaint.[5]  (Record Document No. 8735, p. 38).

### THE INTERVENING COMPLAINT IS ENTIRELY TIMELY

The timeliness of the Intervening Complaint is specifically addressed in Articles XXXIII through XXXIX, pages 49-52 of the Intervening Complaint (Record Document No. 8735).  Further, in Article XXXI, pages 48-49, intervening plaintiffs make clear that

---

[5] Intervening plaintiffs by no means waive any of the additional reasons why they maintain the State of Louisiana is not entitled to invoke immunity under the 11th Amendment, alleged in Article XI of the Intervening Complaint.

it was only by virtue of "fraud upon the Court" by the State of Louisiana and lawyers

within the Louisiana Department of "Injustice" that prior, timely causes of action against

the State, its agencies and departments, were dismissed on Eleventh Amendment grounds.

Accordingly, under the facts and circumstances existing in this case, intervening

plaintiffs respectfully submit that their Intervening Complaint is both timely and proper at

this time.

**THIS COURT HAS SUBJECT MATTER JURISDICTION**
**OVER THE CLAIMS THAT INTERVENING**
**PLAINTIFFS HAVE ASSERTED AGAINST**
**THE STATE OF LOUISIANA**

It does not require citation of authority that This Honorable Court has jurisdiction

over the claims which the State of Louisiana has asserted in Civil Action Nos. 07-5023

and 07-5040 against the United States of America.  Indeed, arguably, Federal Court is the

Court of exclusive jurisdiction of claims asserted against the United States.[6]

In their Intervening Complaint, intervening plaintiffs invoked the jurisdiction of

This Honorable Court "by virtue of the Constitution and laws of the United States and the

State of Louisiana."  Even if the Court were to determine (and it is respectfully submitted

that it should not so determine) that none of the federal jurisdictional bases invoked by

intervening plaintiffs in their Intervening Complaint apply to their claims against the

State of Louisiana, then because intervening plaintiffs' claims against the State arise out

of the same transactions and occurrences for which the State has asserted claims against

---

[6] However, it is to be noted that on October 4, 2007, the Louisiana Court of Appeals for the Fifth Circuit ruled in Case No. 07-C-636 that plaintiffs should be allowed to amend their Petition to assert claims against the United States of America in State Court, and more particularly in litigation arising out of flooding in Jefferson Parish in the matter entitled:  "David Bealer, et al. versus Aaron Broussard, et al.," being No. 633-611 on the docket of the 24th Judicial District Court for the Parish of Jefferson.  The fact that the plaintiffs in that case, which include some of intervening plaintiffs herein, were allowed to sue the United States in State Court, serves to bolster intervening plaintiffs' argument that by filing suit in Federal Court in the first instance, rather than in State Court, the State of Louisiana has waived Eleventh Amendment immunity.

the United States, This Honorable Court would have supplemental jurisdiction pursuant

to 28 U.S.C. §1367.   Although intervening plaintiffs concede that neither the term

"supplemental jurisdiction" nor "28 U.S.C. §1367" specifically appear in the Intervening

Complaint, intervening plaintiffs respectfully submit that they should be granted leave to

amend to invoke supplemental jurisdiction, in the alternative, pursuant to 28 U.S.C.

§1653.

**NONE OF THE PRIOR DISMISSALS
OF CLAIMS AGAINST THE STATE
ARE *RES JUDICATA***

The State of Louisiana has argued that the doctrine of *res judicata* bars the claims

asserted in the Intervening Complaint.   However, the State is in error in making this

argument, for the prior dismissals on procedural grounds involving the Eleventh

Amendment and were not adjudications on the merits.   Therefore, the State's arguments

that these matters are *res judicata* is wrong, regardless of the fact that those matters are

currently on appeal to the United States Court of Appeals for the Fifth Circuit in Case

Nos. 06-30840 and 06-30841, among others.

Louisiana law on *res judicata* is embodied in LSA-R.S. 13:4231, which provides,

in pertinent part, as follows:

> Except as otherwise provided by law, a valid and final judgment is
> conclusive between the same parties, except on appeal or other direct
> review, to the following extent:
>
> > (1)   If the judgment is in favor of the plaintiff, all causes of action
> > existing at the time of final judgment arising out of the
> > transaction or occurrence that is the subject matter of the
> > litigation are extinguished and merged in the judgment.
> > (2)   If the judgment in favor of the defendant, all causes of action
> > existing at the time of final judgment, arising out of the
> > transaction or occurrence that is the subject matter of the

> litigation are extinguished and the judgment bars a subsequent action on those causes of action.
>
> (3)     A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between then, with respect to any issue actually litigated or determined if its determination was essential to that judgment.   (emphasis added).

Accordingly, *res judicata* may not be successfully pleaded where issues have not been "actually litigated or determined" on the merits.

In *Kelty v. Brumfield*, 633 So.2d 1210 (La. 1994), the Louisiana Supreme Court specifically stated that "A claim is not barred by *res judicata* if the Court in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim". The *Kelty v. Brumfield* Court stated:

> Although our *res judicata* rules have been revised recently, La. R.S. 13:4231 (Act 521 of 1990), the basic principles that govern the present case have not changed. To have any preclusive effect a judgment must be valid, that is, among other things, it must have been rendered by a court with jurisdiction over the subject matter. *Id.* Comment(d). A claim is not barred by *res judicata* if the court in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim.   (citations omitted)   The applicability of *res judicata* depends on the valid jurisdiction of the court which rendered the judgment, just as the applicability of *lis pendens* depends upon the valid jurisdiction of the court in the first suit. (emphasis supplied).

In the case at bar, nothing which has occurred in the Federal Court litigation to date against the State of Louisiana, its agencies, departments, etc., has been "actually litigated or determined" on the merits. Rather claims brought against the State, etc. have been successfully challenged on jurisdictional grounds, and more particularly on 11th Amendment grounds. Intervening plaintiffs respectfully submit that those prior rulings were placed in jeopardy by Attorney General Foti's voluntary invocation of the

jurisdiction of this Court on August 29, 2007, by the filing of Civil Action Nos. 07-5023

and 07-5040.

**INTERVENTION SHOULD BE ALLOWED
SINCE BOTH COUNSEL FOR THE
UNITED STATES OF AMERICA AND COUNSEL
FOR THE STATE OF LOUISIANA HAVE
AN IRRECONCILIABLE CONFLICT OF
INTERESTS, AND CANNOT ETHICALLY REPRESENT
THE INTERESTS OF INTERVENING PLAINTIFFS**

It should be patently obvious that the lawyers for the United States of America

have a clear conflict of interests in "representing" intervening plaintiffs' interests against

the State of Louisiana.  It should also be patently obvious that intervening plaintiffs

cannot place their "trust" in any of the lawyers representing the State of Louisiana, some

of whom have been appointed "Interim Plaintiffs' Class Counsel" pursuant to the

provisions of Rule 23 by the Learned District Judge, to represent their interests.  Those

lawyers cannot serve the interests of "the Class" on the one hand, and interests of the

State of Louisiana on the other land.

**CONCLUSION**

Intervening plaintiffs claim, pursuant to Rule 24(a), "an interest relating to the

property or transaction which is the subject of the action", and more particularly an

interest in the $200 billion being claimed by the State of Louisiana from the United States

of America.  Additionally, intervening plaintiffs aver that "the disposition of the action

may as a practical matter impair or impede the .  .  . ability to protect that interest".

Additionally, Rule 24(b) provides that, "Upon timely application anyone may be

permitted to intervene in an action:  .  .  . when an applicant's claim or defense and the

main action have a question of law or a fact in common."  The law and facts in common

in this case are the concurrent causes of the damages to intervening plaintiffs by virtue of the "joint tortfeasor status" of the United States of America on the one hand and the State of Louisiana on the other hand.  Whether the Intervening Complaint is allowed as an Intervention of Right" pursuant to Rule 24(a), or as a "Permissive Intervention" pursuant to Rule 24(b), intervening plaintiffs respectfully submit that their Intervening Complaint should be allowed.

Respectfully submitted,

**LAW OFFICES OF**
**ASHTON R. O'DWYER, JR.**

**By:    S/Ashton R. O'Dwyer, Jr.**
         **Ashton R. O'Dwyer, Jr.**
         **Bar No. 10166**
         **821 Baronne Street**
         **New Orleans, LA 70113**
         **Tel. 504-679-6166**
         **Fax. 504-581-4336**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via Electronic filing, this 26th day of November 2007.

S/Ashton R. O'Dwyer, Jr.

-10-