UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES               CIVIL ACTION
CONSOLIDATED LITIGATION
                                            NO. 05-4182

PERTAINS TO:  LEVEE/MRGO                    SECTION "K"(2)


## ORDER AND REASONS

Before the Court is Defendant Washington Group International, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c) (Doc. 4140). Washington Group International, Inc. ("WGII") seeks dismissal from the MRGO Master Consolidated Class Action Complaint (the "Master Complaint") in which plaintiffs have alleged that WGII performed certain work pursuant to a contract with the Army Corps of Engineers which caused the collapse of a flood wall which protected the Lower Ninth Ward and St. Bernard.  Having reviewed the pleadings, memoranda, supplemental memoranda, and the relevant law, the Court finds that the motion must be denied for the reasons that follow.

### Background

The Master Complaint  incorporates all parties to these proceedings and attempts to state in one document all the pending allegations against all of the defendants for harm caused by the MRGO.  In essence, plaintiffs contend that even though Hurricane Katrina's winds barely reached 100 miles per hour and did not register as a Category 3 hurricane on the Saffir-Simpson scale:

>through the fault and negligence of defendants, a tidal surge rushed from the Gulf through the MR-GO and collided at the nexus of the Gulf Intra-Coastal Waterway ("GIWW) and MR-GO with another storm surge from Lake Borgne which combined to flood New Orleans Est, the Lower Ninth Ward and St. Bernard Parish by overwhelming levees/floodwalls and/or spoil banks that had been negligently designed, constructed, maintained, undermined, weakened and/or operated by the Defendants.

(Master Complaint, Introduction, p.2). Plaintiffs named as defendants, the Corps, WGII, the Board of Commissioners of the Orleans Parish Levee District, St. Paul Fire and Marine Insurance Company, and the Board of Commissioners of the Lake Borgne Basin Levee District.

Specifically, plaintiffs contend that WGII contracted with the United States Army Corps of Engineers ("the Corps") to clear abandoned industrial facilities and debris from the East Bank Industrial Area in order for the Corps to replace a lock on the Inner Harbor Navigation Canal ("IHNC") which is also referred to as the Industrial Canal. This area is called the East Bank Industrial Area and is a 32-acre site located between Florida Avenue and Claiborne Avenue extending from the Industrial Canal to the floodwall.

The initial allegations against WGII, prior to the filing of the Master Complaint, in the numerous individual suits filed, did not allege that WGII was a government contractor. Plaintiffs generally alleged that it was believed that the use of heavy vehicles and/or other heavy construction equipment along the IHNC between the floodwall and the canal damaged the levee and/or floodwall and caused and/or contributed to the breaches in the levee and/or floodwall along the IHNC. However, in the Master Complaint, plaintiffs enlarged their allegations against WGII, specifically, in "Section VII. Count Three" in paragraphs 39 through 50. (Master Complaint at 23-26).

At Paragraph 42, the "scope" of WGII's work is outlined in detail concerning the breadth of demolition, excavation and removal of structures, concrete wharfs and pilings. (Doc. 3415, Complaint at 24). Paragraph 43 alleges that while WGII performed the work, it undermined the integrity of the levee, and/or flood wall along the eastern shoreline of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish. (*Id.*). Paragraph 44 alleges that these acts and/or omissions resulted in underseepage-induced erosion and other damage to the levee and/or flood wall, ultimately causing and or contributing to its catastrophic failure. (*Id.*). In Paragraph 45, plaintiffs outline specific negligent acts on the part of WGII.

**Defendant's Contentions**

WGII contends pursuant to Fed. R. Civ. P. 12(b)(1), that this Court lacks subject matter jurisdiction over the Master Complaint because the Supreme Court recognizes that federal courts "are not a proper venue for plaintiffs to second-guess the exercise of Congressional power." *Wisconsin v. Duluth*, 96 U.S. 379, 383 (1877). "If the authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will." *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20 (1940). Defendant does note however, that "courts have consistently held that contractors cannot be liable for damages resulting from their performance of a contract with the federal government, so long as the contractor was not negligent in doing so." *Ward v. Humble Oil & Ref. Co.* 321 F.2d 775, 780 (5th Cir. 1963).

Thus, defendant argues that since Congress had the power to order the Corps to replace the lock and that plaintiffs have affirmatively alleged that Congress exercised that power, the Corps properly hired WGII to remove the facilities and debris. Defendant maintains that because

plaintiffs have not alleged any facts suggesting that WGII performed work of the Corps in a negligent manner, it is entitled to dismissal. To that end, defendant relies on this Court's decision in *Reed v. United States,* C.A. No. 06-2152 and *Ackerson,* C.A. 06-4066, *In re Katrina Canal Breaches*, 2007 WL 763742 (E.D.La.  March 9, 2007), in which this Court found that plaintiffs failed to allege  that any dredging defendant had deviated from the scope of the work that it was mandated to do by the Government. *Id.* at *3.  Thus, WGII maintains that the plaintiffs' allegations here are similarly unavailing.

Defendant's second argument pursuant to Fed. R. Civ. P. 12(c) is that plaintiffs have not alleged an actionable claim of negligence against WGII entitling it to dismissal.   Defendant argues that to state a negligence claim,  plaintiffs must satisfy five elements:

> (1) [that] the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element);  (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and,  (5) actual damages (the damages element).

*Roberts v. Benoit* 605 So.2d 1032, *1051 (La.,1991) citing  *Fowler v. Roberts,* 556 So.2d 1, 4 (La.1989). WGII  contends that (1)plaintiffs have not asserted any facts supporting the conclusion or inference that WGII did anything to "undermine the integrity" of the floodwalls/levees; (2)plaintiffs have not identified any duty that WGII breached; (3)plaintiffs have not asserted how a failure to exercise an unspecified duty of care when removing abandoned debris from an area ***near*** a levee and/or floodwall would encompass: (a)  the risk that a storm surge caused by an act of nature and magnified by the acts of others would overwhelm the levee; or (b)the harm that could occur as a result of the catastrophic failure of levees and/or

floodwalls designed, built and maintained by entities other than WGII. With these contentions in mind, the Court will examine the appropriate standards to be applied.

### Rule 12–Applicable Standards

Rule 12(b)(1) of the Federal Rules of Civil Procedure provide a method by which a party may challenge the subject matter jurisdiction of the district court to hear a case. The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Ramming v. United States,* 281 F.3d 158 (5th Cir. 2001). As the Fifth Circuit has stated:

> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (per curium). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursing a claim in a court that does have jurisdiction.

*Id.* A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998). Rule 12(b)(6) of the Federal Rule of Civil Procedure provides that in response "to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim" the pleader may raise by motion the defense of "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)(quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "[T]he

plaintiff must plead 'enough facts to state a claim to relief **that is plausible on its face**" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added).[1] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (quotation marks, citations, and footnote omitted).

Rule 12(c) motion is also reviewed using the same standard employed under Rule 12(b)(6). Thus, a court must construe the plaintiff's complaint in the light most favorable to the plaintiff and take the factual allegations contained therein as true. *Butler v. Nance,* 2001 WL 671745 (N.D.Tex. June 12, 2001) at *2 *citing Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir.1991); *Mann v. Adams Realty Co., Inc.,* 556 F.2d 288 (5th Cir.1977). With these standards in mind, the Court will turn to WGII's contentions.

**Contractor Defense–*Yearsley* and *Reed/Ackerman***

WGII relies on this Court's analysis of the contractor defense which shields federal contractors from liability for actions that are tortious when done by private parties but not

---

[1] This Court has previously stated that a district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Blackburn v. Marshall,* 42 F.3d 925, 931 (5th Cir.1995). The Supreme Court has recently abrogated the often cited "no set of facts" language in *Conley* commenting that the case has been frequently mischaracterized as setting forth a minimum pleading standard when it was simply "describ[ing] the breadth of opportunity to prove what an adequate complaint claims." *Twombly*, 127 S.Ct. at 1968. In other words, the *Twombly* court reads *Conley* as standing for the proposition that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (citing *Sanjuan v. American Bd. of Psychiatry and Neurology*, 40 F.3d 247, 251 (7th Cir. 1994)(once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"). Thus, rejecting the *Conley* "no set of facts" test, the *Twombly* court employs a plausibility standard for scrutinizing the sufficiency of pleadings in the context of Rule 12(b)(6) motion.

wrongful when done by the government as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 20 (1940) and its progeny. This Court set forth a succinct analysis of this precept in its opinion concerning the *Reed* and *Ackerman* cases in the previously mentioned opinion found at *In re Katrina Canal Breaches Consolidated Litigation,* 2007 WL 763742 (E.D.La. March 9, 2007).

> In *Yearsley,* plaintiffs sought to recover damages against the contractor who had built dikes in the Missouri River and as a result, part of plaintiffs' land had eroded and washed away. The Supreme Court held that the authority to carry out the project was validly conferred by an act of Congress and that there was no liability on the part of the contractor for executing Congress' will. As in this case, there was no allegation that any Dredging Defendant deviated from the scope of the work that it was mandated to do by the Government. If there is any recovery to be had, it must be against the Government and not the contractor. As stated in *U.S. ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall,* 355 F.3d 1140 (9th Cir.2004):
>
>> The contractor defense shields federal contractors from liability for actions that are tortious when done by private parties but not wrongful when done by the government, such as causing erosion on private land by building dikes for the government, *Yearsley,* 309 U.S. at 20-22, 60 S.Ct. 413, 84 L.Ed. 554; building a helicopter to military specifications that might contain design defects if made for the general public, *Boyle,* 487 U.S. at 505-10, 108 S.Ct. 2510, 101 L.Ed.2d 442; or trespassing onto land to build a highway, *Myers v. United States,* 323 F.2d 580 (9th Cir.1963).

*Id.* at *3.

Thus, contractors cannot be held liable for performing contracts in conformity with the Government's specifications, providing the contractors carried out such contracts with due care and absent negligence. *Hercules Inc. v. Untied States,* 516 U.S. 417, 421-22, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996); *Boyle v. United Tech. Corp.,* 487 U.S. 500, 511-12, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). *See Jemison v. The Dredge Duplex,* 163 F. Supp. 947 (S.D.Ala.1958). In addition, as stated in *Kerstetter v. Pacific Scientific Co.,* 210 F.3d 431 (5th Cir. 2000), in order

for a contractor to claim this defense, "(1) the government must have approved 'reasonably precise' specifications; (2) the equipment must have conformed to those specifications; and (3) the supplier/contractor must have warned of those equipment dangers that were known to the supplier/contractor but not to the government."  *Id*. at 435.

In *In re World Trade Center Disaster Site Litigation*, 456 F. Supp.2d 520 (S.D.N.Y. 2006), workers performing restoration and removal work following the September 11, 2001 terrorist attack at the World Trad Center brought numerous suits in New York state courts against the state, city, and employers seeking compensation for injuries incurred by inhaling toxic fumes.  The cases were removed and consolidated in federal district court.  In a motion for summary judgment, the City of New York and its contractors as well as the Port Authority, and WTC defendants contended that under *Yearsley* and *Boyle*, they were immune for actions taken in the aftermath of the attacks because those actions were controlled by and directed by federal agencies, the Corps, OSHA and the EPA.

In discussing contractor immunity, the court stated:

> The crucial element is that the government contractor acted in compliance with "reasonably precise specifications" approved by the United States. *Boyle,* 487 U.S. at 512, 108 S.Ct. 2510. The very essence of the defense is to "prevent the contractor from being held liable when the government is actually at fault," *Trevino,* 865 F.2d at 1478, for "[w]hen a contractor acts under the authority and direction of the United States, it shares in the immunity enjoyed by the Government." *Zinck,* 690 F.Supp. at 1333 ( *citing Yearsley,* 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554). If, however, the private actor was acting independently of precise government directions and approvals, the defense does not apply. *Trevino,* 865 F.2d at 1480; *see also Tate v. Boeing Helicopters,* 55 F.3d 1150 (6th Cir.1995). Furthermore, the government must supervise and control the contractor's actions, for if it does not, or if it fails to exercise supervisory judgment as to the particularities of the project, state law allowing lawsuits for negligence and federal policy providing for immunity are not in conflict and displacement of state law may not be warranted. *Tate,* 55 F.3d at 1154. In the

> latter case, the discretionary functions of the government are not implicated and the government contractor defense as enunciated in *Yearsley* and *Boyle* may not apply. *Trevino,* 865 F.2d at 1480.
>
>> When the government merely accepts, without any substantive review or evaluation, decisions made by a government contractor, then the contractor, not the government, is exercising discretion. A rubber stamp is not a discretionary function; therefore, a rubber stamp is not 'approval' under *Boyle.*
>
> *Id.* Thus, derivative immunity arises where the government: (a) approves in its discretion reasonably precise specifications, (b) supervises and controls the implementation of those specifications, and (c) the contractor is not aware of reasons not known to the government why the application is unsafe or unreasonable. *Id.* Immunity will not attach, however, where the private contractor acts, or knows material facts, independently of the federal agency.

*In re World Trade Center Disaster Site Litigation,* 456 F. Supp.2d at 562 -563. Thus, this doctrine is inapplicable in the context of a motion to dismiss where there are allegations that the contractor performed any negligent act or omission or any intentional act that was beyond the scope of the task.

In *Reed* and *Ackerson*, which concerned the dredging of the MRGO, this Court found that plaintiffs made no allegations of any negligent act on the part of the defendants nor did plaintiffs allege that the defendant knew of any danger that was not known to the Government. Indeed, in that complaint, plaintiffs contended that the defendants had dredged the MRGO pursuant to specific Government contracts, that the Government had approved reasonably precise specifications with which the defendants conformed and that the Government knew of the potential harmful effects of the MRGO.

In the case at bar, however, plaintiffs do allege with specificity the scope of WGII's work As noted at paragraph 42, plaintiffs allege:

>   demolition of abandoned industrial structures on the east side of the canal; removal of underground structures described in Defendant's own recommendation reports as 'extensive excavation and subsurface activity'; abatement of vegetation, including numerous oak trees; removal of canal side obstructions; removal of the Jordan street wharf, which included the removal of a concrete deck and support pilings to a depth of 36 feet below mean water level; removal of all electrical, sewer, gas, water, and telephone facilities on the site, including Boland sewer lift station; "bank removal" that included the vibratory extraction of bulkheads along the canal water's edge; removal of more than fifty structures and more than forty concrete slabs; grid trenching of the entire East Bank Industrial Area; removal of ten sunken or partially sunken barges; removal of barges that served as building foundations; removal of an estimated 3,000 pilings at the site, both on land and in the canal, by use of a vibratory extract (to a depth of 30 feet for land-based pilings and 40-50 feet for canal/water-based pilings); grading and hydro-mulching the site; and other such work to be demonstrated through the course of discovery and trial.

(Doc. 3415, Master Complaint, ¶42). Within these allegations, the vibratory nature of the actions taken by WGII is underscored. Plaintiffs then contend that in performing this work, defendant undermined the integrity of the levee, and/or flood wall along the eastern shoreline of the IHNC, abutting the Lower Ninth Ward of Orleans Parish which caused underseepage-induced erosion which lead to its catastrophic failure. (Doc. 3415, Master Complaint, ¶¶ 43 & 44).

Finally, in Paragraph 45, plaintiffs specify that WGII was negligent in the following ways:

>   (1)   it knew or should have known that its work was causing damage to the levee and/or flood wall structures and did nothing to correct the problem;
>   (2)   it failed to follow proper procedures in performing its work;
>   (3)   it failed to comply with appropriate regulations and standards in performing its work;
>   (4)   it failed to notice the damage caused by its work and failed to call that damage to the attention of the appropriate authorities;
>   (5)   and any other acts of fault or negligence to be proven upon trial.

(Doc. 3415, Master Complaint, ¶ 45).

Unlike *Reed* and *Ackerson*, plaintiffs have alleged specific acts of negligence. They contend that proper procedures were not used and that WGII did not comply with regulations and standards; that it knew or should have known the damage its actions were causing and did not stop or inform the Corps of such problems. Under *Twombly*, the Court must ask if these allegations are plausible, and the answer is in the affirmative. While this motion was filed as a Rule 12 motion, facts and documents outside of the pleadings were presented to the Court by both the plaintiffs and WGII. While in a classic sense the Court should not consider these, given the nature of this case and the posture of this motion, the Court cannot ignore them.[2]

There are issues with respect to the contract itself–that is whether it was a performance specifications contract, not a design specifications contract. This contract might not meet the specificity such that immunity should attach as was the case in the *World Trade Center* case. In that decision, the Court found that "the mere fact that a federal agency, rather than a private contractor, assumed responsibility for operations . . . does not require that immunity automatically attach." *World Trade,* 456 F. Supp. 2d at 564. Thus, the court found that the plaintiffs there were not precluded from attacking aspects of the operations which were outside the direction of the Corps.

Furthermore, in their Rule 26 disclosures, plaintiffs provided WGII with the declaration of Dr. Robert Glenn Bea, an expert in the fields of foundation design, construction, and maintenance as well as reliability assessment and management. In his affidavit, he outlines a number of actions taken that raise the question of control by the Corps over the project and

---

[2]Obviously, the Court could convert this motion into a Rule 56 motion at this time and allow time for further briefing. However, the most reasonable course is to deny the motion as filed and allow WGII to file a Rule 56 motion at the proper juncture.

11

whether there was negligence on the part of WGII.  For example, Bee contends that WGII went to nine feet for remediation purposes where the specifications were for four feet from the existing grade.  This removal of canal side soils may have been a factor in the lessening of the stability of the flood walls.  In addition, the churning and disturbance of the soil, removal of underground storage tanks, and the like and the issue of Corps' involvement and oversight of this process require that this motion be denied.

As such, the Court finds that the issues presented are more susceptible to a Rule 56 motion.  Plaintiffs have alleged enough facts to state a plausible claim against WGII. Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The purpose is to put a defendant on notice of the claim and to allow for an adequate response.  *See* Charles A. Wright & Arthur R. Miller, *Federal Practice and procedure*, § 1202 (1991).  Certainly, plaintiffs have met this standard.  WGII will have the opportunity to seek summary judgment at the appropriate time.

**Rule 12(c)–Actionable Claim of Negligence**

WGII maintains also that plaintiffs have not stated an actionable claim negligence against WGII.   As previously noted,  WGII  contends that plaintiffs have not asserted any facts supporting the conclusion or inference that WGII did anything to "undermine the integrity" of the floodwalls/levees;  that they have not identified any duty that WGII breached; that they  have not asserted how a failure to exercise an unspecified duty of care when removing abandoned debris from an area ***near*** a levee and/or floodwall would encompass either the risk that a storm

surge caused by an act of nature and magnified by the acts of others would overwhelm the levee or the the harm that could occur as a result of the catastrophic failure of levees and/or floodwalls designed, built and maintained by entities other than WGII.

Based on the previous discussion, the Court finds that plaintiffs have alleged sufficient facts to support the allegations concerning the undermining of the integrity of the floodwall/levee in question.   In Louisiana, the duty-risk analysis consist of a four-prong inquiry:

> I.   Was the conduct in question a substantial factor in bringing about the harm to plaintiffs, i.e., was it a cause in-fact of the harm which occurred?
> II.  Did the defendant owe a duty to the plaintiff?
> III. Was the duty breached?
> IV.  Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

*Roberts v. Benoit,* 605 So.2d 1032 (La. 1992).  Clearly, the allegations are sufficient to meet the first factor–plaintiffs contend that WGII's actions were a substantial factor in the failure of the Industrial Canal levee/floodwall.

As to whether there was a duty, a contractor owes an obligation toward third persons to refrain from creating a hazardous condition.  *Lafont v. Chevron, U.S.A.,* Inc., 594 So.2d 416, 420 (La. App. 1st Cir. 1991) *citing Ortego v. Stat*e Bank and Trust Co. of Golden Meadow*, 316 So.2d 826 (La. App. 1st Cir.) writ denied,* 320 So. 2d 914 (La. 1975); *Johnson v. Fred H. Moran Construction Com.* 289 So.2d 3323 (La. App. 1st Cir. 1973), *writ refused*, 293 So.2d 171 (La. 1974).  Again, the allegations are sufficient.  Plaintiffs contend that the kind of vibrations and excavations that took place at this site created a hazardous condition–that is these actions weakened the very foundation of that floodwall.  This allegation appears to be plausible.  Likewise, plaintiffs have alleged sufficient facts to create an issue as to whether that duty was breached.

Finally, plaintiffs have alleged sufficient fact to create a cause of action as to whether the risk, and harm caused, was within the scope of protection afforded by the duty breached. The key to the issue of foreseeability of harm to an injured person is "how easily the risk of injury to the plaintiff can be associated with the duties sought to be enforced. Although the ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone, and absent an ease of association between the duty breached and the damages sustained, there is no legal fault." 1 La. Prac. Pers. Inj. §4:12 *citing Misenheimer v. West Baton Rouge Parish Office,* 677 Fo. 2d 159 (La. Ct. App. 1st Cir. 1996), *writ denied*, 681 So.2d 371 (La. 1996). Clearly, it is not a great reach for a contractor that is within the immediate vicinity of a levee/floodwall to realize and perhaps even seen water intrusion and other shifts in the land around the levee to raise the specter of weakening that structure. It would not be unlike a contractor pile driving next door to a building and causing structural damage to it. Simply because the party employing the contractor might own the lot where the pile driving occurs and the building being damaged does not mean that the contractor can cause damage with impunity. Thus, again, the Court finds that a cause of action in negligence has been stated; the proper method for WGII to seek exoneration may be in a Rule 56 motion. Accordingly,

**IT IS ORDERED** that Defendant Washington Group International, Inc.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c) (Doc. 4140) is **DENIED.**

New Orleans, Louisiana, this  27th  day of November, 2007.

STANWOOD R. DUVAL, JR.
**UNITED STATES DISTRICT COURT JUDGE**