UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION NO. 05-4182 |
| | * | |
| | * | SEC. "K" JUDGE DUVAL |
| | * | |
| PERTAINS TO: | * | MAG. (2) WILKINSON |
| INSURANCE      Civil Action No.: 06-2617 | * | |
| (bifurcated)         (*Ronald A. Holbrook*) | * | |

**DEFENDANT AAA's MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

This memorandum is submitted on behalf of defendant herein, Club Insurance Agency, Inc. ("AAA") in support of its motion for summary judgment.  No genuine issues of material fact exist.  As a matter of law, AAA is entitled to summary judgment on the claims asserted against it by plaintiffs, Ronald A. Holbrook and April Holbrook.

## INTRODUCTION

This case is simple.  Plaintiffs were underinsured because they repeatedly refused to pay the required insurance premium.

On June 30, 2005, plaintiffs purchased a residence located at 6123 Charlotte Drive, in New Orleans, LA.  In conjunction with the purchase, plaintiffs sought flood insurance through co-defendant, Fidelity National Property and Casualty Insurance Company ("Fidelity").  On June 23, 2005, AAA provided to plaintiffs a flood insurance application.  The premium quoted in the application, however, was based upon an incorrect flood elevation.

During the underwriting process, the flood elevation error was discovered.  Both AAA and Fidelity notified plaintiffs that the initial quote was incorrect and provided plaintiffs with the correct premium amount.  Specifically, plaintiffs were advised that to be insured for the full amount of coverage requested they must pay an additional $342 within 30 days, or by August 24, 2005.  Plaintiffs did not.  After the 30-day period expired, Hurricane Katrina struck New Orleans, resulting in flood damage to plaintiffs' residence.

Plaintiffs are now suing AAA and Fidelity alleging that they are responsible for the amount of flood insurance coverage that plaintiffs refused to purchase.  Plaintiffs can only blame themselves for being underinsured.[1]

---

[1]  In their Second Amended Complaint, plaintiffs added Automobile Club Family Insurance Company (the Auto Club) as an additional defendant.  The Auto Club was the plaintiffs' homeowner's insurer.  Per

<u>UNDISPUTED FACTS</u>

AAA is an insurance agency domiciled in Missouri and licensed to do business in Louisiana.  Per contract, AAA is able to procure flood insurance for its customers through Fidelity.

In May 2005, plaintiffs contacted AAA and inquired about obtaining flood insurance for the residence they were buying, which was located at 6123 Charlotte Drive, in New Orleans.  *See* TAB A, Ronald Holbrook's deposition transcript (Pl. Dep.), p. 29, ll. 15-17.[2]  Jo Anne Daleo, a AAA agent, and Inocencia 'Lisa" Dufour, Ms. Daleo's assistant, handled the Holbrooks' Fidelity flood application.[3]

In response to plaintiffs' request for flood insurance, Ms. Dufour secured what she understood to be a copy of the flood elevation certificate for the property.[4]  *See* TAB B, Inocencia "Lisa" Dufour's deposition transcript, p. 32, l. 16 - p. 33, l. 12; *see also* TAB A, Exh. P-12, Flood Elevation Certificate for 6762 Colbert St. (wrong property).

---

the Seconded Amended Complaint, plaintiffs assert that the Auto Club is liable for "flood" damage to their home.  See Record, No. 19, ¶¶ 18a-18e.  The Second Amended Complaint is based on Judge Duval's 11/27/06 ruling.  Id., at ¶ 18e.

[2]  For consistency, undersigned used the same exhibit reference numbers in this memorandum that were used for the deposition exhibits.  In other words, the exhibits attached to Ronald Holbrook's deposition transcript (TAB A), which are marked Exhs. P-1 – P-24, are referenced herein using the same numbers. Likewise, the exhibits referenced in Lisa Dufour's deposition (TAB B), which are marked as Exhs. AAA-1 – AAA-3, are also referenced in the same manner herein.

[3]  Ms. Daleo has been a retail insurance agent for AAA for 22 years.  See TAB C, Jo Anne Daleo's deposition transcript, p.6, l. 24  –  p. 7, l. 1.  Ms. Dufour is also a licensed agent and has worked for insurance agencies since 1996.  See TAB B, p. 9, ll. 1-17.

[4]  AAA representatives believe that the incorrect flood certificate was provided by Partners Title Company, which was handling the closing of the Holbrook residence.  Partners Title denies this allegation.  At this stage of the litigation, the parties are attempting to verify from whom AAA received the incorrect flood elevation certificate.  For this motion, however, the source of the flood certificate is immaterial.

However, the flood elevation certificate obtained was for the wrong address; the certificate was for 6762 Colbert Street, rather than 6123 Charlotte Drive.  *See* TAB B, p. 32, l. 16 - p. 33, l. 12.  Based upon the incorrect certificate, Ms. Dufour secured a Standard Flood Non-Binding Quote through Fidelity's internet-based application program.  *See* TAB B, Exh. AAA-2, Standard Flood Non-Binding Quote ("Quote").  Ms. Dufour quoted an annual premium of $836 for $183,000 in building coverage and $40,000 in contents.  Based upon the Non-Binding Quote, plaintiffs signed and dated the Fidelity Standard Flood Insurance Application (Preview).  *See* TAB A, Exh. P-4, Standard Flood Insurance Application (Preview).

On July 25, 2005, Fidelity sent plaintiffs a letter informing them that the flood insurance coverage requested in the application (P-4) had been lowered based upon the premium paid.  *See* Exh. P-9, 7/25/05 letter from Fidelity to plaintiffs.[5]  Mr. Holbrook confirmed that he received the letter "not long before August 4, probably August 3 [2005]."  TAB A, p. 72, ll. 21-23.  Mr. Holbrook acknowledged that the letter stated that the coverage on the flood policy had been reduced.  *Id.*, at p. 73, ll. 7-11.  Specifically, the letter stated: "Your Flood Insurance policy has been issued with lower limits of coverage than were originally requested because the premium was inadequate."  Exh. P-9.  Fidelity advised that the flood coverage was lowered from $183,000 to $111,600 for building and from $40,000 to $20,000 for contents.  *See* Exh. P-9.  The letter also reads:

---

[5]  Fidelity also sent a copy of the 7/25/05 Letter to AAA.

Additional coverage limits may be purchased and added by endorsement to the policy.  If you wish to increase your building and/or contents to the originally requested amounts, you may submit an additional premium of $342.00.  If payment is received by 8-24-05, the policy will be restored from its inception to provide flood coverage in the amount initially requested.  *Id.*

While Mr. Holbrook does not recall if he received the declarations page (P-10) and flood insurance policy (P-11) in the same envelope or at the same time as the P-9 letter, he acknowledged that he did receive and review them.  *See* R. Holbrook dep. p. 75, l. 2 – p. 76, l. 10; p. 77, ll. 14-21.  Mr. Holbrook specifically testified:

> Q   Mr. Holbrook, do you recall P-9, P-10, and P-11 all appear that they were generated on July 25?  Do you know if you received these in the same envelope?  You stated earlier that you didn't think you did.
>
> A   I don't know if they came in separate envelopes or if they came in the same envelope.

TAB A, p. 75, l. 24 – p. 76, l. 7.

> Q   Do you recall receiving P-10 at all?  The flood declarations page?
>
> A   Yes, I do recall receiving that.
>
> Q   And you read this?
>
> A.   I read that front cover page, yes.
>
> Q   Do you recall receiving the actual policy which I marked P-11?
>
> A   Yes.

*Id.*, at p. 77, ll. 14-21.  Like the 7/25/05 letter, the declarations page showed that the building coverage had been reduced from $183,000 to $111,600 and the contents coverage had been reduced from $40,000 to $20,000.  *See* Exh. P-10.

On August 4, 2004, Ronald Holbrook met with Ms. Dufour and Ms. Daleo at AAA's Metairie office to discuss the 7/25/05 coverage reduction letter. *Id*., at p. 81, l. 14. During the 8/4/05 meeting, Ms. Dufour explained to Mr. Holbrook that the wrong flood elevation certificate was used in determining the flood premium. *Id*., at p. 82, l. 21 – p. 83, l. 2; *see also* p. 198, ll. 1-11. The incorrect flood elevation resulted in an incorrect, *i.e*., lower, premium. When the correct elevation was subsequently determined, the $836 premium that the Holbrooks paid bought less coverage than what was originally quoted.

> A     . . . And I said, "We requested 183[,000] and 40[,000]. Why is this different?"
>
> And I got a story regarding that there was something with the elevation certificate; that an incorrect elevation certificate had been submitted by [Lisa Dufour] to the flood insurance underwriters.
>
> And I said, "Well, where did you get that? And when did you get it?"
>
> And I can't recall her answer, but I think it was something to the extent that she received it from the title company and she just faxed it on to [Fidelity].
>
> Then, for some reason, that the correct flood insurance policy was provided -- or the correct -- excuse me -- the *correct elevation certificate was provided, and that this somehow triggered the change in requested coverage amounts.*

TAB A, p. 82, l. 21 – p. 83, l. 14. (Emphasis added.)

Mr. Holbrook understood the flood elevation error. He testified: "What I know is that the elevation certificate that does apply to our property, the numbers on that did not – do not match what was used for the policy quotes." *Id*., at p. 86, ll. 7-10.

On or before August 4, 2005, AAA secured the correct flood elevation certificate for the Holbooks' property. *Id*., at p. 89, ll. 8-9. Using the correct elevation information, AAA's premium quote matched the premium amount stated in the 7/25/05 letter that Fidelity sent to the Holbrooks. (Exh. P-9). In other words, AAA confirmed that the Holbrooks needed to pay the additional $342 for full coverage. Mr. Holbrook repeatedly testified that Ms. Daleo and/or Ms. Dufour told him that the annual premium increased and the information in Fidelity's 7/25/05 letter was correct. *See* TAB A, p. 99, l. 17 – p. 100, l. 3; p. 106, l. 22 – p. 107, l. 4; p. 108, ll. 3-7; p. 201, ll. 13-17; p. 202, ll. 8-18.

> A.  . . . So when I asked for sort of a clarification of that, they went to another room. And my understanding is that they ran the numbers with the correct policy amount, or with the correct elevation amounts, and came up with numbers, although I don't know exactly what those numbers were. But they said this is correct. They were pointing to --
> Q  P-9 is correct?
> A  Saying that P-9 is correct.
> Q  Right.
> A  That's what they told me.
> Q  Okay. And at that point, you still didn't believe them?
> A  Absolutely not.

TAB A, p. 99, l. 16 – p. 100, l. 6.

> Q  And did they explain to you why they thought the correct quote was correct?
> A  Yes; because the elevation certificate for the correct quote was based upon the actual elevation certificate for my property.
> Q  But you just didn't believe them?
> A  Yeah; I had no evidence of that.

*Id*., at p. 106, l. 22 – p. 107, l. 4.

> Q    But they did say that the current quote that's discussed in P-9 is the correct quote for your flood insurance for the Charlotte Drive property?
>
> A    That's what they told me.

*Id.*, at p. 108, ll. 3-7.

> Q    But then [Lisa Dufour] provided you with what she thought was the correct information.
>
> A    She told me that the number that Fidelity had sent me was the correct information.

*Id.*, at p. 132, ll. 14-18.

Regardless that plaintiffs were advised by AAA and Fidelity of the reduced coverage, they refused to pay the full premium for the coverage desired within the 30-day grace period set out in the P-9 letter.  *Id.*, at p. 117, ll. 12-16.  When Katrina began approaching the Gulf Coast, after the 30-day grace period had expired, Mr. Holbrook was willing to pay the additional premium he owed.  *Id.*, at p. 117, ll. 18-25 and p. 205, ll. 21-25.

After Katrina struck, on November 3, 2005, the Holbrooks sent a letter to Ms. Daleo, their AAA agent.  TAB A, p. 128, l. 19 – p. 129, l. 13 and Exh. P-15, 11/3/05 ltr. from plaintiffs to J. Daleo.  Again, the Holbooks confirmed that they understood that the initial insurance quote was incorrect and, as such, their coverage had been reduced. *See* P-15.  On November 3, 2005, the Holbrooks wrote: "It is our contention that you and/or your agent, Lisa Dufour, provided incorrect information to the underwriter of our flood insurance policy which resulted in a reduction of coverage."  P-15.

Contrary to the evidence, including the contention in their 11/3/05 letter, the Holbrooks now claim that the reason they refused to pay the additional premium was because they believed they were the objects of a "bait and switch" scheme. *See* TAB A, p. 96, ll. 9-16; p. 102, ll. 18-23; p. 202, ll. 12-18. AAA supposedly lured them in with a low premium, then jacked up the price after the Holbrooks committed to using AAA. Mr. Holbrook explained:

> A    So the concern was for me that my first notice of any change in my policy did not come from my agents but came from Fidelity. I had to contact my agents and had to contact Lisa in order to say, what's going on. I didn't get a straight answer over the phone. I came into the office, and then I get this answer of, well, you owe more money; you [owe] more money. And I said, wait a second. How did this happen? You need to explain this to me. And that's when -- I mean, because, as I mentioned earlier, I was very concerned that there was a bait-and-switch going on, you know.

TAB A, p. 102, ll. 9-23.

> Q    I guess my question now is if Ms. Dufour indicated to you this $342 for the initial premium is correct, why did you not pay that?

> A    Because I had been told by Ms. Dufour a lot of things, and I thought that there was a bait-and-switch going on, and I wanted to be crystal clear that all of this could be documented and I wasn't paying $342 that I would never see again that I didn't necessarily need to pay.

TAB A, p. 202, ll. 8-18.

Regardless of his alleged distrust of the AAA agents, Mr. Holbrook testified that he did nothing to verify the representations made to him by the AAA representatives. He

9

did not speak with anyone from Fidelity, or anyone else, between August 4 and August 24, 2005, the date when the grace period expired.   TAB A, p. 117, ll. 8-11. Instead, even after he thought the AAA representatives were attempting to overcharge him using a "bait and switch" scheme, Mr. Holbrook claims he relied on those same persons to investigate any discrepancy.   The fact is that AAA repeatedly and properly advised Mr. Holbrook that he needed to pay an additional premium.   In Mr. Holbrook's own words, Ms. Dufour and Ms. Daleo told him: "*you owe more money; you* [*owe*] *more money." Id*., at p.102, ll. 16-17.   Mr. Holbrook, however, refused to pay.

Following Katrina, the Holbrooks submitted a claim to Fidelity based upon their flood damage.   Fidelity paid the policy limits on both building and contents.   *Id.,* at p. 219, l. 20 – p. 220, l. 8.   The Holbrooks were also paid $4,913.16 by the Auto Club in connection with their homeowner's insurance claim.

In late 2006 or early 2007, without notice to AAA, the Holbrooks demolished the Charlotte Dr. house. TAB A, p. 27, ll. 16-24.   The Holbrooks still own the vacant lot.   *Id*. at p. 208, ll. 2-5.

The Holbrooks have moved out of Louisiana and now reside in Ohio.

<u>LAW AND ARGUMENT</u>

**A.       *Summary Judgment Standard.***

Rule 56(c) of the Federal Rules of Civil Procedure permits courts to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotek Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On its face, this provision provides that the mere existence of some fact in dispute is insufficient to defeat an otherwise proper motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). To defeat a motion for summary judgment, there must be a genuine and material fact in dispute. *Id.* at 247-48. Only those disputes that might potentially affect the outcome of the suit are deemed material and therefore preclude the court from entering summary judgment. *Id.* at 248.

The moving party "bears the initial reasonability of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotek*, 477 U.S. at 323. If the moving party meets this burden, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing* Fed. R. Civ. P. 56(e)). The non-moving party's burden "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. When a rational factfinder cannot find in favor of the non-moving party based on the record in its entirety, no "genuine issue for trial" exists. *Matsushita*, 475 U.S. at 587.

**B.      AAA Satisfied All Obligations to Plaintiffs in Procuring Flood Insurance.**

"An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance." *Karam v. St. Paul Fire & Marine Insurance Company*, 281 So.2d 728, 730 (La. 1973); *see also Parker v. Lexington Insurance Co., et al*., 2006 WL 3328041 (E.D.La. 11/15/06).   In order to recover for losses resulting from a failure to obtain insurance coverage, the plaintiff must establish "(1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and (3) actions by the agent which warranted the client's assumption that he was insured in the amount of the desired coverage."   *Opera Boats, Inc. v. Continental Underwriters, Ltd.,* 618 So.2d 1081, 1085-86 (La. App. 1 Cir. 1993).

Here, while  AAA acknowledges that the initial insurance quote was incorrect, plaintiffs were notified of the premium error and reduction in coverage, plaintiffs simply refused to pay the additional premium.  Plaintiffs cannot prove the second or third factors in *Opera Boats*.

### (1)      AAA undertook to and did procure flood insurance for the plaintiffs.

AAA does not dispute that it undertook to secure flood insurance for the Holbrooks' property located at 6123 Charlotte Drive, in New Orleans.

> **(2)    AAA *did* use reasonable diligence to obtain the requested
> flood insurance and *did* promptly notify plaintiffs when
> AAA learned that plaintiffs were not fully covered.**

As detailed in the Undisputed Facts, Mr. Holbrook confirmed that both AAA and Fidelity notified plaintiffs that the requested insurance could not be procured for the originally-quoted premium.  *See*, *e.g*., Exhs. P-9 and P-10.  The 7/25/05 reduction in coverage letter and the insurance policy declarations page clearly show that the Holbrooks' flood coverage had been reduced.  Moreover, during the August 4, 2005 meeting, Ms. Dufour and Ms. Daleo explained to Mr. Holbrook that the original quote was incorrect because the wrong flood elevation certificate was submitted to Fidelity.  *See* TAB A, p. 82, l. 21 – p. 83, l. 14 and p. 198, ll. 1-11.  When the error was discovered and the correct elevation was used, Mr. Holbrook was advised that the premium increased.   *See* TAB A, p. 99, l. 17 – p. 100, l. 3; p. 106, l. 22 – p. 107, l. 4; p. 108, ll. 3-7; p. 201, ll. 13-17.  Moreover, Mr. Holbrook confirmed that when he met with the AAA representatives on August 4, 2005, they told him: "*you owe more money; you* [*owe*] *more money."   Id*., at p.102, ll. 16-17 (Emphasis added).

The circumstances in *Opera Boats* are analogous to this case and the ruling is instructive.  In *Opera Boats*, the court ruled that the "plaintiffs were timely advised of [the insurance agent's] failure to obtain this coverage."  618 So.2d at 1086.  The court opined that even if the insurance agent was not reasonably diligent in its attempts to obtain the requested insurance coverage, the plaintiffs were not warranted in assuming

that they had the requested coverage.  *Id.*  The *Opera Boats* plaintiffs erroneously received a certificate of insurance stating that they were insured for the requested coverage.  The plaintiffs, however, later received a letter notifying them that the agent was not able to procure the requested coverage.  *Id.*  Because there was no evidence of assurances from the insurance agent that the requested insurance had been obtained, plaintiffs claims were dismissed on summary judgment.  *Id.*

      **(3)    AAA's actions could not and did not permit plaintiffs to assume that they were insured in the amount of the desired coverage.**

The AAA representatives went beyond reasonable efforts to show Mr. Holbrook why his premium had increased.  Apparently, however, Mr. Holbrook's alleged suspicions, no matter how unfounded, prevented him from paying the additional $342 premium.  Regardless of Mr. Holbrook's unwillingness to pay, he knew that his property was not fully insured.

> Q    As of receiving the – I'm going to call it the P-9 letter from Fidelity – as of that date, Fidelity says you don't have the coverage you requested.  I mean, you understand that part, don't you?
>
> A    Yes.

TAB A, p. 116, ll. 11-16.

The Holbrooks' actions following the August 4, 2005 meeting further evidence that the Holbrooks knew that they were not fully insured.  After the 30-day grace period, and as Katrina approached the Gulf Coast, Mr. Holbrook attempted to pay the required,

additional premium.  *See* TAB A, p. 117, ll. 12-16 and p. 205, ll. 21-25.  Even after Katrina struck, the Holbrooks again confirmed that they knew of the elevation error and the reduction in coverage.  On November 3, 2005, the Holbrooks sent a letter to AAA stating: "It is our contention that you and/or your agent, Lisa Dufour, provided incorrect information to the underwriter of our flood insurance policy which resulted in a reduction in coverage."  TAB A, Exh. P-15, Holbrooks' 11/3/05 ltr. to J. Daleo.

Lastly, the "bait and switch" excuse is inconsistent with the evidence and illogical. Mr. Holbrook understood that the initial premium was incorrect because of the flood elevation error and that AAA advised him that he had to pay an additional premium to be fully insured.  Even if such a cause of action existed, which AAA maintains does not, plaintiffs have not asserted such a claim.  Plaintiffs' Complaint alleges breach of contract and negligence.  *See* Complaint, Record No. 1.  Moreover, even if AAA attempted a "bait and switch," by the August 4, 2005 meeting with AAA, Mr. Holbrook was aware of the correct insurance premium.  The Holbrooks had the opportunity to secure more insurance by paying the additional premium, or to maintain the coverage based upon the lower premium.  They *chose* the former.

<u>C</u><small>ONCLUSION</small>

Based on the foregoing, the Court should grant Defendant AAA's Motion for Summary Judgment.  There are no material facts in dispute.  As a matter of law, AAA satisfied its obligation to plaintiffs to procure flood coverage and advise them that they were not fully insured.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 30, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following: Randal J. Robert (randy@kswb.com), Connell Lee Archey (connell@kswb.com), Travis Brendon Wilkinson (travis@kswb.com), William T. Treas (wtreas@nielsenlawfirm.com), and Gerald J. Nielsen (gjnielsen@aol.com). I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following:  Becky R. Cieutat, Esq.

          /S/ ALLISON L. CANNIZARO
          ALLISON L. CANNIZARO


H:\DI\A A A\Holbrook, Ronald and Leigh (5786-20346)\pleadings\SJ Memo.doc

Respectfully submitted,

  /S/ ALLISON L. CANNIZARO
David Israel (# 7174)(T.A.)
disrael@sessions-law.biz
Kevin G. Barreca (# 24015)
kbarreca@sessions-law.biz
Allison L. Cannizaro (#29951)
acannizaro@sessions-law.biz
S<small>ESSIONS</small>, F<small>ISHMAN</small> & N<small>ATHAN</small>, L.L.P.
3850 N. Causeway Blvd., Suite 1240
Metairie, LA 70002
Telephone: (504) 828-3700
Facsimile:  (504) 828-3737

Attorneys for Defendant,
Club Insurance Agency, Inc.