UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES | CIVIL ACTION |
| | NO. 05-4182 "K" (2) |
| PERTAINS TO: INSURANCE, Holbrook, 06-2617 | JUDGE: STANWOOD DUVAL |
| | MAG. WILKINSON |

**MEMORANDUM IN SUPPORT OF FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

DEFENDANT, FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY (hereafter referred to as "Fidelity"), appearing in its capacity as a Write-Your-Own Program ("WYO") Program carrier participating in the United States Government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended,[1] and in the the "fiduciary"[2] capacity as the "fiscal agent of the United States"[3] for the

---

[1] 42 U.S.C. §4001, *et seq*.
[2] 44 C.F.R. §62.23(f).
[3] 42 U.S.C. §4071(a)(1); *Gowland v. Aetna Cas. & Surety Co.*, 143 F.3d 951, 953 (5th Cir. 1998).

purpose of filing this memorandum in support of its motion for summary judgment pursuant to Fed.R.Civ.P.56.

## I. SUMMARY OF THE ARGUMENT

Plaintiffs' have filed suit against Fidelity seeking additional monies under their Standard Flood Insurance Policy ("SFIP") alleging that they should have had higher policy limits at the time of Hurricane Katrina. Simply, Plaintiffs seek a reformation of the SFIP pursuant to 44 C.F.R. Pt. 61, App. A(1), Art. VII(G) to change the policy limits from $111,600 to $183,000 for building coverage and from $20,000 to $40,000 for contents. As will be explained in detail below, Plaintiffs failed to pay the required additional premium in time for the higher limits to be effective, and therefore the facts of this case do not warrant reformation of the Plaintiffs' SFIP. Plaintiffs are suing Fidelity for enforcing FEMA's regulations and are seeking higher limits for a policy they refused to pay for.

## II. PROCEDURAL HISTORY

On May 19, 2006, Plaintiffs filed suit the United States District Court for the Eastern District of Louisiana against AAA Insurance Agency and Fidelity pursuant to the original jurisdiction found at 42 U.S.C. § 4072.[4] On July 28, 2006, Plaintiffs amended their Complaint to substitute the correct entity, Auto Club Insurance Agency, Inc., for AAA Insurance Agency Inc.[5] Thereafter on December 18, 2006, Plaintiffs again amended their Complaint to add claims under their homeowner's policy against Auto Club Family Insurance Company.[6] On January 30, 2007, Plaintiffs moved to consolidate the matter with the *In Re: Katrina Canal Breaches Consolidated Litigation* which was

---

[4] See Plaintiffs' Complaint at ¶¶ 4 and 5. (Docket No.1) Please note that the Plaintiffs cited to the old statute of 42 U.S.C. §4053.
[5] See Docket No.7.
[6] See Docket No.21.

granted by the Court on March 23, 2007.[7]

After discovery had been conducted, the Plaintiffs filed a Motion to Bifurcate from the In Re: Katrina Canal Breach Consolidated Litigation.[8] On October 19, 2007, the Court granted Plaintiffs' Motion to Bifurcate pursuant to CMO 4, Section 5(C).[9] The Court ordered a preliminary conference take place November 8, 2007.[10] Pursuant to the conference, the Court issued a Scheduling Order setting November 30, 2007 as the deadline for parties to file motions for summary judgment.[11] Therefore, this motion is timely.

### III. FACTS

The Plaintiffs and Defendant agree that the facts are not in dispute in this case. Further, the material facts, as shown in the accompanying L.R. 56.1 Statement of Material Facts, are not in dispute. On May 20, 2005, Plaintiffs contacted their insurance agent, JoAnn Daleo and Lisa Dufour, of Auto Club Insurance Agency, Inc. (hereafter referred to as Auto Club) in order to obtain flood and homeowner's insurance for their residence at 6123 Charlotte Drive, New Orleans, Louisiana.[12] The Plaintiffs were in the process of purchasing the home and the mortgage lender required the insurance policies.[13] The Plaintiffs requested flood insurance in the amount of $183,000 in policy limits for building coverage and $40,000 in policy limits in contents coverage.[14] Ms. Dufour, the assistant to agent JoAnn Daleo, prepared an application for the requested coverage amounts on the SFIP and

---

[7] See Docket Nos. 26 and 30-31.
[8] See Docket No.8460.
[9] See Docket No. 8519.
[10] See Docket No. 8548.
[11] See Docket No. 8571.
[12] See Plaintiffs' Complaint at ¶6; See also the deposition transcript of Ronald Holbrook at p. 29 attached as part of Ex.1.
[13] See Ex. 1 at 184-85.
[14] See Ex. 2 - The Plaintiffs' flood Application.

submitted it to the Holbrooks.[15]

On June 23, 2005, Plaintiff, Kelly Holbrook, signed and faxed the application for flood insurance to their agent - Auto Club.[16] A week later on June 30, 2005, the Plaintiffs closed on the home and purchased the property for $183,000.[17] That day, the Plaintiffs paid a premium of $836.00 for flood insurance.[18]

On July 25, 2005, Fidelity sent a letter to the Plaintiffs, JoAnn Daleo of Auto Club, and National City Bank, notifying them that an additional premium of $342.00 was needed in order to obtain the coverage limits requested.[19] Said letter clearly stated that the additional premium needed to be submitted by August 24, 2005 otherwise the limits would be reduced to $111,600 for building and $20,000 for contents.[20] Mr. Holbrook admitted to receiving the letter and specifically remembers opening the letter on August 3, 2005.[21]

The original premium quoted by Ms. Dufour was based on an incorrect elevation certificate for a totally different property located at 6762 Colbert Street.[22] Ms. Dufour testified that she obtained the wrong elevation certificate from the title company that performed the closing.[23] Mr. Holbrook went to his agents' office on August 4, 2005, the day after opening the letter requesting

---

[15] See Plaintiffs' Complaint at ¶7; Ex. 1 at pp. 43-44, 48-49; and the deposition transcript of Lisa Dufour at p. 12 attached as part of Exhibit 3.
[16] Ex. 1 at p.44 and Ex. 2.
[17] Ex. 1 pp.38 and 188.
[18] See Complaint at ¶9.
[19] See Exhibit 4 - Affidavit of Deb Price and the July 25, 2005 letter attached to it.
[20] *Id*.
[21] Ex. 1 at pp.22,72.
[22] Ex.3 at pp.29-30 and 33; Ex. 1 at p. 83; and Ex. 5 - the incorrect elevation certificate for 6762 Colbert Street.
[23] See Ex.3 at p.19.

the additional premium, to inquire about the situation.[24]  It was confirmed that using the correct address and elevation certificate the additional premium of $342 was due.[25]  It is undisputed that the Plaintiffs refused to pay the additional premium as required by the July 25, 2005 letter.[26]  As such, the policy limits were reduced to $111,600 and $20,000 with effective dates of June 30, 2005 to June 30, 2006 and was in effect at the time of the loss.[27]  A flood policy declarations page dated July 25, 2005, was forwarded to the Plaintiffs with the lower limits.[28]  Plaintiffs do not dispute receiving this declarations page.[29]

On August 29, 2005, Hurricane Katrina struck New Orleans and caused flooding at the Plaintiffs' property.[30]  Plaintiffs made a claim under their SFIP to Fidelity.[31]  Fidelity contacted Colonial Claims Corporation ("Colonial"), an independent adjusting company, to assist the Holbrooks in presenting their flood loss claim.[32]  Colonial assigned Will Jerden, an independent adjuster, to assist the Plaintiffs in their flood loss claim.[33]  Mr. Jerden contacted the Plaintiff and arranged for an inspection of the insured property.[34]  Mr. Jerden inspected the property on September 18, 2005.[35]  Fidelity paid the Plaintiffs their policy limits in the amount of $111,600 for building

---

[24] Ex.1 at p.81.
[25] Ex.1 at pp. 98-100, 107-08, and 201; Ex. 3 at pp.64-66; See also Exhibit 6 at p. 12-the deposition of JoAnn Daleo.
[26] See Ex.1 at p.192 and Ex.4
[27] Ex.4 and the declarations page attached thereto.
[28] *Id*.
[29] See Ex.1 at p.77.
[30] See Plaintiffs' Complaint at ¶17.
[31] Ex.4.
[32] *Id*.
[33] *Id*.
[34] *Id*.
[35] *Id*.

damages and $20,000 for personal property (contents) damages for a total payment of $131,600.00.[36] Afterward, Plaintiffs demolished the home and made a claim under their Increased Costs of Compliance (ICC) provision of the SFIP of which they were paid in full.[37]

### IV. LAW AND ARGUMENT

#### A.   Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, demonstrate that there is no genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of law.[38] Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial.[39]  The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial.[40]   If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for.[41]

#### B.   Strict Construction

The SFIP at issue is itself codified and found at 44 C.F.R. Pt. 61, App. A(1) (Oct. 1, 2005 ed.).  As per the Supreme Court's ruling in *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947), because the SFIP is itself a codified federal regulation, all persons are charged with the

---

[36] Ex.1 at pp. 219-20 and Ex.4.
[37] Ex.1 at pp.27 and 207.
[38] Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).
[39] *Id*., 477 U.S. at 322-23.
[40] *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49 (1986).
[41] *Id.*

knowledge of the terms of the SFIP. Moreover, as per *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 64 (1984), all participants in federal insurance programs are charged with a duty (by the U.S. Supreme Court) to "familiarize" themselves with the rules of the program from which they hope to benefit.

All claims under a SFIP are paid for directly with U.S. Treasury funds and not the funds of Fidelity. 44 C.F.R. Pt. 62, App. A, Articles II and III, and 44 C.F.R. §62.23(i); see also, *Gowland*, 143 F.3d at 955. This includes the costs of litigation. *Id.* Because U.S. treasury funds are at stake, all payments are controlled by the Appropriations, Supremacy and Commerce Clauses of the U.S. Constitution. *Flick v. Liberty Mut. Ins. Co.*, 205 F.3d 386 (9th Cir., 2000), *cert. denied* 531 U.S. 927 (2000). In addition, the courts have held that strict construction and interpretation of the SFIP and the Federal Emergency Management Agency's rules are required. See *Gowland,* 143 F.3d at 954. There are no oral binders of coverage in the NFIP and any written binder must be issued with the express authorization of the Federal Insurance Administrator. See 44 C.F.R.§61.13(e).

There is simply no mechanism which allows a court to change the SFIP limits retroactively, either under FEMA's Flood Manual; Articles I and VII(G) of the SFIP itself; see also 44 C.F.R. §61.4 (a) and (b); or 44 C.F.r. 61.11(c). The Federal Insurance Administrator alone has this authority per 44 C.F.R. §61.13(d) and Article VII(D) of the SFIP at issue.

    **C.**    **Plaintiffs failed to meet the conditions of Article VII(G) of the SFIP**

The Plaintiffs seek to reform their SFIP to retroactively increase coverage up to the originally intended limits of $183,000 for building and $40,000 for contents. This Court recently rendered two decisions regarding Art. VII(G) of the SFIP and the requirements thereof for reforming a flood policy. See *Englande v. Bradshaw Insurance Company*, *et al*, 2007 WL 2461683 (E.D.La. Aug.22,

2007)(Duval, J.) and *Pat Connell, et al v. Allstate Insurance Company*, Civil Action No. 2:06-cv-04820 (E.D.La. Nov.28, 2007)(Duval, J.).[42]  See also *Molero v. State Farm Fire and Cas.Co.*, 2007 WL 1695194 (E.D.La. June 8,2007)(Fallon, J.).  In both *Englande* and *Connell*, this Court went through a detailed analysis of the requirements and provisions of reformation and reduction of coverage under an SFIP.  In the instant matter, this case is analogous to the *Connell* matter, and therefore Fidelity submits that summary judgment is proper as a matter of law.

The only contract between the Plaintiffs and Fidelity is the SFIP itself.  Article VII of the SFIP states as follows:

> G. Reduction and Reformation of Coverage
>
> 1. If the premium we received from you was not enough to buy the kind and amount of coverage you requested, we will provide only the amount of coverage that can be purchased for the premium payment we received.
>
> 2. The policy can be reformed to increase the amount of coverage resulting from the reduction described in G.1. above to the amount you requested as follows:
>
> a. Discovery of Insufficient Premium or Incomplete Rating Information Before a Loss:
>
> (1) If we discover before you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current policy term (or that portion of the current policy term following any endorsement changing the amount of coverage).  If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the current policy term (or subsequent date of any endorsement changing the amount of coverage).
>
> (2) If we determine before you have a flood loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information.  You must submit the information within 60

---

[42] The *Connell* decision is attached as Exhibit 7.

days of our request.  Once we determine the amount of additional premium for the current policy term, we will follow the procedure in G.2.a.(1) above.

(3) If we do not receive the additional premium (or additional information) by the date it is due, the amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

b. Discovery of Insufficient Premium or Incomplete Rating Information After a Loss:

(1) If we discover after you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current and the prior policy terms.  If you or the mortgagee or trustee pay the additional premium within 30 days of the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the prior policy term.

(2) If we discover after you have a flood loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information.  You must submit the information before your claim can be paid.  Once we determine the amount of additional premium for the current and prior policy terms, we will follow the procedure in G.2.b.(1) above.

(3) If we do not receive the additional premium by the date it is due, your flood insurance claim will be settled based on the reduced amount of coverage. The amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

3. However, if we find that you or your agent intentionally did not tell us, or falsified, any important fact or circumstance or did anything fraudulent relating to this insurance, the provisions of Condition B. Concealment or Fraud and Policy Voidance apply.[43]

Article VII(G) of the SFIP is not ambiguous and must be applied as plainly stated.[44]   The above language is required by the Code of Federal Regulations to be inserted into every SFIP.[45] Under the rules of strict construction, this Court has held that these NFIP guidelines and are

---

[43] 44 C.F.R. Pt. 61, App. A(1), Article VII(G)(Oct. 1, 2005 ed.).
[44] *Englande* at *5.
[45] *Connell* at p.6.

"'exclusive rather than illustrative,' and an SFIP can only be reformed if it 'squarely fit[s] within the provisions enunciated by the terms of the SFIP.'"[46] The issue before the Court is whether the facts in this case invoke the application of Article VII(G). Fidelity submits that they do not.

A review of the facts indicate that Article VII(G)(2)(a)(1) is provision that applies to the case at bar. In the instant matter, it is undisputed that the Plaintiffs sought to have an SFIP for their property located at 6123 Charlotte Drive.[47] On June 23, 2005, the Plaintiffs signed and submitted an application requesting $183,000 in building coverage limits.[48] The premium listed on the application $836 was paid by the Plaintiffs on June 30, 2005.[49] However, there was an error in the rating of the premium due to an incorrect address and elevation certificate.[50] After re-rating the SFIP, based upon the correct information, Fidelity determined that it would require an additional $342 in premium to maintain the coverage limits of $183,000 and $40,000.[51] Fidelity sent a letter to the Plaintiffs, their agent, and their mortgage company on July 25, 2005 requesting the additional premium within 30 days or before August 24, 2005. The letter also informed the Plaintiffs that if the additional was not received the policy limits would be $111,600 for building and $20,000.[52]

Mr. Holbrook testified that the Plaintiffs received the July 25, 2005 letter and admitted that the Plaintiffs did not submit the additional premium.[53] Plaintiffs simply refused to pay the additional premium within the time prescribed in the letter. Interestingly, however, on August 27, 2005, when

---

[46] *Connell* at p.7 and *Englande* at *5
[47] See Ex.2.
[48] Ex. 1 at p.44 and Ex. 2.
[49] See Complaint at ¶9.
[50] See Ex.3 at p.19.
[51] See letter dated July 25, 2005 attached to Ex.4.
[52] *Id*.
[53] See Ex.1 at pp.22, 72 and 192 and Ex.4.

Hurricane Katrina was already set to hit Louisiana, Mr. Holbrook attempted to contact Fidelity to try and pay the additional premium.[54]

Based upon Article VII(G)(1), Fidelity was bound to "provide only the amount of coverage that can be purchased for the premium payment we received." Only $111,600 for building and $20,000 for contents was provided based upon the $836 initial premium payment.[55] Mr. Holbrook also admitted to receiving the flood declarations page dated July 25, 2005 indicating the lower limits.[56] Therefore, Fidelity fulfilled its obligations under the SFIP regulations where an error is discovered prior to a loss. This Court has held that because policy reformation would be paid with federal funds, this provision must be strictly construed and enforced.[57] Based on *Connell*, *Englande*, and the arguments above, summary judgment is proper.

### D.    All other Plaintiffs' Claims regarding Negligence Fail

In addition to the breach of contract action, Plaintiffs also assert several claims for "negligence."[58] Regardless of the "negligence" label the Plaintiffs attaches to these claims, such allegations all stem from Fidelity's obligatory enforcement of Article VII(G) of the SFIP. These claims fail as a matter of law for the following reasons: First, as discussed above in great detail, Fidelity fulfilled the mandatory requirements under the SFIP in reducing the coverage limits based on the premium submitted by the Plaintiffs. Fidelity notified the Plaintiffs of the required additional premium and the time frame (30 days) to submit the additional money all in compliance with Article VII(G). Fidelity is bound to enforce FEMA's rules and regulations and cannot waive any of these

---

[54] See Ex.1 at pp. 205-206.
[55] Ex. 4 and attached declarations page.
[56] See Ex.1 at p.77.
[57] *Connell* at pp.5-6 citing to *Gowland*
[58] See Complaint at ¶¶ 23-36.

regulations.[59] Based on the Plaintiffs' admitted failure to submit the premium before August 24, 2005, Fidelity was mandated to provide the limits that can be purchased based on the premium that was paid. Because Fidelity properly fulfilled its obligations, there can be no negligence claim or remedy.

Second, the Plaintiffs' allegations that Fidelity failed to oversee its affiliates and agents in the processing and handling of the application and premiums are of no moment. The process was handled in accordance with Article VII(G) of the SFIP. Further, claims of any negligence against the Plaintiffs' agent, Auto Club Insurance Agency, cannot be imputed to Fidelity. 44 C.F.R. § 61.5(e) clearly states that the agent acts as the agent of the insured (the Holbrooks) and not the WYO carrier (Fidelity). Also see *Hanak v. Talon Ins. Agency, Ltd.*, 470 F.Supp.2d 695, 698 and FN1 (E.D.Tex.,2006). In addition, Auto Club is an independent agency that is not owned by Fidelity.

Third, Plaintiffs' claim that Fidelity was negligent in handling the Holbrooks' interests also fails. Fidelity's interest is that of a fiduciary duty to FEMA and not to the Holbrooks. 44 C.F.R. § 62.23(f) states that the WYO company's role is one of a fiduciary nature to assure that taxpayer funds are accounted for and appropriately expended.

Finally, Plaintiffs' Complaint asserts that Fidelity violated the NFIA by refusing on August 29, 2005 to accept the premium for flood insurance for the originally requested amounts.[60] On August 29, 2005, Fidelity could not have retroactively increased policy limits without violating Article VII(G). In addition, on August 29, 2005, Fidelity could not have issued an SFIP for the limits originally requested in the application without enforcing the thirty (30) day wait period mandated

---

[59] See *Gowland* and 44 C.F.R. §61.13(d) and Article VII(D) of the SFIP
[60] See Plaintiffs' Complaint at ¶¶37-40.

by federal law.  Article VII(G)(2)(a)(1) states in pertinent part, "If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the current policy term (or subsequent date of any endorsement changing the amount of coverage)." Plaintiffs did not pay the additional premium by August 24, 2005.

Article VII(G)(3) states "If we do not receive the additional premium (or additional information) by the date it is due, the amount of coverage can only be increased by endorsement subject to any appropriate waiting period."  The thirty (30) day waiting period for SFIPs is found in 44 C.F.R. § 61.11 (c) and 42 U.S.C.§ 4013(c) and requires that Fidelity enforce the 30 day waiting period before any increase in limits can become effective.   Simply, Plaintiffs seeks "negligence" claims against Fidelity for enforcing FEMA's rules and regulations.  Such claims fail as a matter of law, and  Fidelity moves the Court to issue an Order dismissing all claims against Fidelity and at Plaintiffs' costs.

## CONCLUSION

For the reasons set forth above, Defendant, Fidelity National Property and Casualty Insurance Company, prays that this Honorable Court grant Defendant's Motion for Summary Judgment and dismiss the Plaintiffs' claims with prejudice as there are no genuine issues of material fact.
Dated this 30th day of November, 2007.

                Respectfully submitted:

                NIELSEN LAW FIRM, L.L.C.

                */s/ William T. Treas*
                GERALD  J. NIELSEN, #17078
                WILLIAM T. TREAS, #26537

3838 N. Causeway Blvd, Suite 2850
Metairie, Louisiana 70002
Telephone: (504) 837-2500
Facsimile: (504) 832-9165
Counsel for Defendant, Fidelity National Property and Casualty Insurance Company

### **C E R T I F I C A T E**

I hereby certify that a copy of the above **Memorandum in Support of its Motion for Summary Judgment** has been served on all counsel of record via electronic filing and by depositing same in the United States Mail, postage pre-paid and properly addressed as indicated below at Metairie, Louisiana, this 30th day of November, 2007.

*/s/ William T. Treas*
WILLIAM T. TREAS