# EXHIBIT 3

1               UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF LOUISIANA

3

4  RONALD A. HOLBROOK      *                    COPY
   and APRIL HOLBROOK      *
5                          *  CIVIL ACTION
                           *  NO.06-2617
6      VERSUS              *
                           *  SEC. K
7                          *  JUDGE DUVAL
   AAA INSURANCE AGENCY    *
8  INC, AND FIDELITY       *
   NATIONAL PROPERTY AND   *
9  CASUALTY INSURANCE      *  MAG.3
                           *  MAGISTRATE JUDGE KNOWLES
10 *   *   *   *   *   *   *   *

11

12

13

14          Deposition of **INOCENCIA DUFOUR**,

15    taken at the offices of Sessions, Fishman &

16    Nathan, LLP, 3850 North Causeway Boulevard,

17    Lakeway II, Suite 1240, Metairie, Louisiana,

18    on Friday, July 13, 2007, at 3:05 p.m.

19

20

21

22

23

24

25

```
 1    department.  So I really couldn't tell you.
 2         Q     Who was your supervisor at that time?
 3         A     Tom Pollack.
 4               MR. TREAS:
 5                    Pollack?
 6               THE WITNESS:
 7                    Pollack.  You have to excuse
 8         my accent.
 9         Q     (By Mr. Archey) You're fine.
10               What was your relation with
11    Ms. Daleo?  Was she a supervisor?  Co-equal?
12         A     She's an agent.  I'm her assistant.
13         Q     And did you work solely for
14    Ms. Daleo?
15         A     Yes.
16         Q     So you worked under Ms. Daleo as an
17    assistant?
18         A     Yes.
19         Q     She was the agent and you were the
20    assistant?
21         A     Yes.
22         Q     And Tom Pollack, where did he fit in?
23    Was he a supervisor for Ms. Daleo also?
24         A     He's a regional manager.
25         Q     How many agents were there?  Can you
```

JOHNS, PENDLETON & ASSOCIATES, INC.

CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1        A    You mean when we were in the process

 2   of doing the quotes and -- yeah, I would have

 3   to speak to them to get all the information to

 4   do the paperwork.

 5        Q    And who did you get the elevation

 6   certificate from?

 7        A    Their title company.

 8        Q    And just for the record or to be

 9   clear, did the Holbrooks provide you with that

10   elevation certificate?

11        A    No.

12        Q    Do you recall having any discussion

13   with Mr. Holbrook or Ms. Holbrook, either of

14   them, regarding the piece of art that they had

15   which they value at $8,000?

16        A    No, I don't.

17        Q    If they had called and told you, we

18   have a piece of art that we value at $8,000,

19   an artist's proof, "Maui Dawn" by Wyland, all

20   that information, what would have been your

21   advice as to whether it needed to be a

22   scheduled item or not?

23        A    Going into that much detail, from my

24   experience, I would have called my underwriter

25   for the home -- called Fidelity.  Because if
```

**JOHNS, PENDLETON & ASSOCIATES, INC.**

CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1    as far as the flood elevation and what have

 2    you?

 3         A    What information I had on the

 4    property?

 5         Q    Yes, ma'am.

 6         A    We use a quote sheet, and whatever

 7    information I ask him, that's on the quote

 8    sheet.

 9         Q    As far as the elevation -- let me

10    pull this out.  Turning now to P-12, using

11    P-12, is that the elevation certificate that

12    you used to --

13         A    Yes.

14         Q    -- in order for the application

15    there?

16         A    Yes.

17         Q    Where did you get P-12?

18         A    I got it from the fax machine that

19    the title company, when they call, they ask

20    me -- the girl called and asked me if I got

21    the fax that she sent me.

22              And I said, I have not been to the

23    fax machine.  I told her to stay on hold and I

24    will check the fax machine.  This was on the

25    fax machine.  I grabbed it.  I went back to
```

1    her, and I said, yeah, I got the fax.   And

2    then I did the quote.

3        Q    Did this document P-12, the elevation

4    certificate, did it come from the Holbrooks in

5    any manner?

6        A    No, sir.

7        Q    And you used the information on P-12

8    to fill out the application for the Holbrooks.

9    Is that correct?

10       A    Yes, sir.

11       Q    And serving as their agent.   Right?

12       A    Serving as their agent?

13       Q    Yes.

14       A    Well, yeah; assistant to Jo-Ann.

15       Q    But you were their representative at

16   that time.   Correct?

17       A    Well --

18            MR. BARRECA:

19                 I object.   That's a legal

20            question.

21                 And if she wants to try to

22            answer it, she can answer it that

23            she doesn't have the ability to

24            answer that particular legal

25            question.

```
 1              If you can try to guess, go
 2         ahead and try to guess.
 3         THE WITNESS:
 4              I was representing Jo-Ann
 5         Daleo.
 6    Q    (By Mr. Archey) But your client at
 7    that time was the Holbrooks.  Right?
 8    A    It was her client.
 9         MR. BARRECA:
10              I object to the question.
11         It's a legal question.
12    Q    (By Mr. Archey) Who were you working
13    for?
14    A    For Jo-Ann Daleo.
15    Q    Solely for her interest, not for the
16    Holbrooks?
17    A    You asked me who I was working for.
18    Q    Right.
19    A    She's my employer.
20    Q    What was your relationship to the
21    Holbrooks then?
22    A    He was my client.
23    Q    That's what I asked.  He was your
24    client.  Right?
25    A    You asked if I was working for her.
```

**JOHNS, PENDLETON & ASSOCIATES, INC.**

CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1      Q     All right.  He's your client that

2  you're trying to do this business for.

3  Correct?

4      A     Yes.

5      Q     When you got this elevation

6  certificate --

7            MR. BARRECA:

8                  Before we continue down this

9            road, I am going to put on the

10           record that I object to your

11           statement that the Holbrooks --

12           that AAA is the agent for the

13           Holbrooks because that has all

14           kinds of legal implications which

15           have not been sorted out here.

16     Q     (By Mr. Archey) When you received

17  P-12 did you see that this was an elevation

18  certificate for property other than the

19  Holbrooks?

20     A     No, sir.

21     Q     Does it show that on that document?

22     A     If I -- yeah; if I read it closely.

23     Q     And you didn't do that, did you?

24     A     Well, I looked at it.  She said she's

25  faxing it to me.  I grabbed it.

1            Yes; I didn't look at it.  I didn't

2    go like -- you know, I looked at it.  It's an

3    elevation certificate.  I looked at the base

4    flood and lowest flood, and that's what I --

5        Q      You made a mistake, didn't you?

6        A      Yes, I made an error.

7        Q      Because this quote is for 6123

8    Charlotte Drive in New Orleans.  Correct?

9        A      Yes, sir.

10        Q      And this elevation certificate, P-12,

11    that you used is for what address?

12        A      6762 Colbert Street.

13        Q      And using the incorrect information

14    that you got directly from the title company,

15    you submitted this application to the

16    Holbrooks which they signed.  Is that correct?

17        A      Yes.

18        Q      What was the amount of the premium

19    that they were to pay under the application?

20        A      $836.

21        Q      I'm going to show you another quote

22    which I don't believe we have seen yet.

23            MR. ARCHEY:

24                I'm going to mark this as

25            AAA-2.  The Bates number of the

**JOHNS, PENDLETON & ASSOCIATES, INC.**

CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1    Q    Do you recall that?

2    A    To be honest with you, I can't recall

3    the auto part because -- I guess because I was

4    focused on him bringing in the flood elevation

5    certificate that I don't -- I don't -- I

6    didn't recall the auto part.

7         But going over it with Jo-Ann and

8    everything, it makes sense because his

9    document is signed on the 4th.

10   Q    According to Mr. Holbrook's notes, he

11   met with you at 2 o'clock that day.  Do you

12   recall?

13   A    I can't recall if he met with me at

14   2:00.

15   Q.   Do you have any notes from that

16   meeting?

17   A    No.

18   Q    You've been trying to tell me -- tell

19   me what you recall about the meeting.

20   A    Okay.  Mr. Holbrook came in and he

21   sat at my desk, gave me the flood elevation.

22   I sat at my desk and worked up a new quote

23   with the flood elevation he provided.

24        I gave him the figures.  I told him

25   the figures.  I can't recall whether I gave

JOHNS, PENDLETON & ASSOCIATES, INC.

CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1    him a piece of paper or printed a quote or

2    anything like that.  But I worked up the

3    figures and I gave it to him.

4              I told him that based on this

5    elevation -- that is, on his property -- this

6    is the premium.  He could not understand why

7    the premium is changing because of the

8    elevation, and I kept explaining to him

9    because we're dealing with two different

10   properties.  This elevation is for your

11   property; this elevation is for somebody

12   else's property.  This is why the premium is

13   different.

14             And I think we kept going on about

15   that, and I can't really recall whether he

16   went into Jo-Ann's office and did the quote

17   while I was -- his auto insurance, while I was

18   working on his quote at my desk.  But I

19   remember we were at my desk when we discussed

20   it.  And I couldn't get him to understand

21   that.

22             So that's when I went to Jo-Ann.  I

23   went into her office, asked her to pull up a

24   quote for me.  She did it.  We called him into

25   Jo-Ann's office and he sat in Jo-Ann's office.

JOHNS, PENDLETON & ASSOCIATES, INC.

CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1    And Jo-Ann sat there and gave him a quote with

 2    the same elevation -- his correct elevation --

 3    and gave him that figure and said, that is

 4    correct.  You do need to pay that difference

 5    because that's how much the premium is if you

 6    want your coverages back.

 7         He still did not -- could not

 8    comprehend why the premium was different.  So

 9    we called Fidelity on a conference call, and

10    we had Fidelity run a quote with the elevation

11    certificate -- the correct elevation

12    certificate -- and gave him that quote.

13         And he still insisted that he does

14    not understand why it's different.  I kept

15    telling him that it's because it's two

16    different properties.  I mean, how can I not

17    tell him when it's right there in black and

18    white?

19         And I remember specifically saying

20    these are two different properties.  This is

21    your elevation for your property; this is that

22    elevation for that other property.  This is

23    how much yours is coming up.  This is what you

24    need to pay.  And Jo-Ann told him the same

25    thing.
```

**JOHNS, PENDLETON & ASSOCIATES, INC.**
CERTIFIED COURT REPORTERS
315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1       Q       Do you recall him asking you to

2    recreate the $836 quote?

3       A       He could have.  I wouldn't see what

4    the sense of it would make.  That's not his

5    premium.

6       Q       Did you do that?

7       A       I can't recall.

8       Q       Were you able to do that?

9       A       I can't recall that.  I can't say

10   whether I was able to or not because I don't

11   know if I did or not.

12      Q       He says that he asked for that and

13   you weren't able to do it.

14              As you sit here, are you able to

15   dispute him?  Do you have any recollection?

16      A       I can't say I did or I didn't.

17      Q       Now as to the quote you ran with the

18   new flood or the correct elevation

19   certificate, did the quote that you obtained,

20   was it identical to the dollar amount that he

21   was being asked to pay?

22      A       To his new premium?

23      Q       Yes, ma'am.

24      A       Yes.  That's where we come up and

25   decide that the 342 would have been the

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS
315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993
619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1    difference.

2         Q    Did you print out any of that?

3         A    I can't say whether I did or not.  If

4    he doesn't have a copy, I don't have a copy.

5    I can't say if I gave him a copy or not.   I

6    don't recall.

7         Q    Is there any evidence which you can

8    show me -- written evidence that you ran the

9    numbers, the quote on August 4, and came up

10   with the same number -- the additional larger

11   number that he was being asked to pay based

12   upon the correct elevation certificate?

13        A    Like I said, I don't have a copy, and

14   I don't recall whether he got a copy or not.

15   But I know I went to Jo-Ann and we called

16   Fidelity all in his presence.

17        Q    He goes on and says that when the

18   quote was run with the old certificate -- or

19   the certificate -- elevation certificate on

20   the incorrect property and the elevation

21   certificate on the correct property, it came

22   out with the same premium.  Do you recall

23   that?

24        A    Wait.  What's that?

25        Q    Mr. Holbrook says when you ran the

JOHNS, PENDLETON & ASSOCIATES, INC.

CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527