UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES                CIVIL ACTION
       CONSOLIDATED LITIGATION

NO. 05-4182 "K" (2)

PERTAINS TO:  Levee, MRGO 07-5023, 07-5040           JUDGE DUVAL
                 (<u>State of Louisiana v. United States</u>)           MAG. WILKINSON

## ORDER ON MOTIONS

The two referenced lawsuits are complaints commenced in this court by the State of Louisiana against the United States of America. Both complaints seek damages and other relief based upon the Federal Tort Claims Act and other theories for injury allegedly resulting from the negligence or other actions of the United States in connection with Hurricane Katrina. One complaint is a putative class action brought by the State on behalf of "[a]ll individuals and entities . . . who resided, were present, owned property and/or businesses, and/or did business, as of August 29, 2005, in the geographic area [of certain Orleans, Jefferson and St. Bernard Parishes areas] who/which sustained damages as a result of the inundation by water in this geographic area which occurred during and immediately following the landfall of Hurricane Katrina . . . ." C.A. No. 07-5023, Record Doc. No. 1 (Complaint at ¶ 15). The second complaint is an action by the State based upon its own hurricane-related damage.

Pending before me in these two cases are a Motion for Leave to Intervene, Record Doc. No. 8735, and an Amended Motion for Leave to Intervene, Record Doc. No. 8789, filed by a large group of individuals, most -- if not all -- of whom are Louisiana citizens. Movants seek to intervene to bring their own claims for Hurricane Katrina related damages, but against the State of Louisiana under various theories, not against the United States:  In their original motion, without specifically citing Fed. R. Civ. P. 24(a) concerning intervention of right, movants quoted the language of that rule and appeared to assert that they have a right to intervene.  In their first supplemental memorandum, movants clarify that while they assert intervention of right, they also contend, alternatively, that they should be allowed to intervene permissively under Fed. R. Civ. P. 24(b).

The State of Louisiana, as plaintiff in the two captioned cases against the United States, filed a timely opposition memorandum.  Record Doc. No. 9125.  Movants received leave to file two supplemental memoranda in support of their motions to intervene.  Record Doc. Nos. 9239, 9241, 9242, 9243.

For the following reasons, **IT IS ORDERED** that the motions to intervene are DENIED.

## ANALYSIS

As to intervention of right, Rule 24 states:

> Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). Saldano v. Roach, 363 F.3d 545, 551 (5th Cir. 2004). Failure to satisfy any one of these requirements precludes intervention of right. Id. at 556.

Permissive intervention may be granted under Rule 24(b)(2), which provides: "Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(2).

Regardless whether the proposed intervention is characterized as permissive or of right, however, the motions must be denied because the proposed intervention is prohibited by the Eleventh Amendment. The Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI.

Although the Amendment by its literal terms does not preclude suit by a State's own citizens against that State in federal courts, the United States Supreme Court "has long understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms.  Accordingly, for over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States," regardless of the state citizenship of the plaintiff.  Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72-73 (quotation and citations omitted).  Thus, the "Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well."  Lapides v. Board of Regents, 535 U.S. 613, 616 (2002) (citations omitted) (emphasis added).

A State may waive its Eleventh Amendment immunity.  "Two types of waivers exist:  explicit waivers and constructive waivers.  To be effective, an explicit waiver requires the state expressly to agree to be sued in federal court."  E. Chemerinsky, Federal Jurisdiction at § 7.6 p. 406 (Little, Brown & Co. 1994) (hereinafter "Chemerinsky") (emphasis added).  The State of Louisiana has not expressly waived its immunity or consented to the exercise of federal judicial power in civil actions against it.  La. Rev. Stat. Ann. § 13:5106(A); Frazier v. Pioneer Am. LLC, 455 F.3d 542, 547 (5th Cir. 2006); Delahoussaye v. City of New Iberia, 937 F.2d 144, 147 (5th Cir. 1991). Thus, in each unsanctioned instance of federal suit, the State or its agency must

affirmatively waive its Eleventh Amendment immunity. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305 (1990); Earles v. State Bd. of Certified Pub. Accountants, 139 F.3d 1033, 1038 (5th Cir. 1998); Stem v. Ahearn, 908 F.2d 1, 4 (5th Cir. 1990). That kind of express or affirmative waiver has clearly not occurred in this instance.

Instead, movants argue that, by filing these two Hurricane Katrina related suits against the United States in this federal court, the State of Louisiana has constructively waived its Eleventh Amendment immunity to the Hurricane Katrina related claims intervenors seek to assert against the State. Specifically, movants cite Clark v. Barnard, 108 U.S. 436 (1883) "and its progeny," and Lapides "and cases cited therein" to argue that, by filing these lawsuits against the United States in this court, Louisiana constructively waived its immunity from the movants' claims against the State. Close analysis of these cases and others, however, establishes that this is not one of the rare circumstances in which constructive waiver of Eleventh Amendment immunity might be found.

As a general matter, "[a]fter some uncertainty in the law, it now appears that constructive waivers are disfavored and rarely will be found by the [Supreme] Court . . . . In short, constructive waiver of Eleventh Amendment immunity is virtually nonexistent. If it ever will exist, it will be in situations where Congress indicates a clear intent to make

states liable in federal court if they engage in a particular activity, and then a state voluntarily chooses to engage in that conduct." Chemerinsky at 407-10.

The two cases principally relied upon by movants do not support a finding of constructive waiver in these cases. In Clark, plaintiffs sued the State of Rhode Island and other defendants in federal court to determine the ownership of certain funds that were deposited in the registry of the court. The district court overruled the State's demurrer that the Eleventh Amendment barred plaintiffs' suit against it in that court. The State then filed an answer that raised the same argument. Judgment was eventually entered in favor of plaintiffs. On appeal, the Supreme Court found that the State had waived its immunity when it voluntarily intervened in the action to assert a claim to the funds. Id. at 447. The Court held:

> The immunity from suit belonging to a state, which is respected and protected by the constitution within the limits of the judicial power of the United States, is a personal privilege which it may waive at pleasure; so that in a suit, otherwise well brought, <u>in which a state had sufficient interest to entitle it to become a party defendant, its appearance in a court of the United States would be a voluntary submission to its jurisdiction</u>. while, of course, those courts are always open to it as a suitor in controversies between it and citizens of other states. In the present case the state of Rhode Island appeared in the cause and presented and prosecuted a claim to the fund in controversy, and thereby made itself a party to the litigation to the full extent required for its complete determination. <u>It became an actor as well as defendant</u>, as by its intervention the proceeding became one in the nature of an interpleader, in which it became necessary to adjudicate

>the adverse rights of the state and the appellees to the fund, to which both claimed title.

Id. at 447-48 (emphasis added).

Waiver of the State's Eleventh Amendment immunity applied in Clark because the State was a defendant in the action. In the instant cases, Louisiana has voluntarily submitted to the jurisdiction of the court as a plaintiff, not a defendant. Movants seek to intervene as plaintiffs to recover damages against the State, which would cast the State in the role of a defendant. In other words, the intervention is a "suit . . . against" Louisiana within the terms of the Eleventh Amendment, which does not permit such a suit without the State's consent.

Furthermore, Lapides and the cases cited therein do not support movants' argument because Lapides and its predecessors were removal cases. In the cases that preceded Lapides, the State had originally sued in state court and the defendant(s) had removed the action to federal court. The district and intermediate appeals courts have long held that the Eleventh Amendment does not bar such removals. Recently, in holding that "sovereign immunity does not preclude the removal to federal court of a suit filed by a state plaintiff in state court," the Second Circuit found that "history gives little indication that sovereign immunity was ever intended to protect plaintiff states. Rather, it plainly understands sovereign immunity as protection from being sued." In re Methyl Tertiary

Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 119 (2d Cir. 2007) (quotation omitted) (emphasis in original); see id. at 119-20 (citing cases).

In Lapides, the State of Georgia was a defendant in a state court action, which the State removed to federal court. The Supreme Court emphasized "that removal [by the defendant State] is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum." Lapides, 535 U.S. at 624. This case is inapplicable to the instant situation, in which Louisiana filed suits as a plaintiff in federal court and the movants propose to intervene in those suits as plaintiffs against the State as defendant.

In addition to the absence of constructive waiver, the proposed intervention and the Eleventh Amendment raise the "question . . . whether [this] particular suit in fact is a suit against a State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). The Eleventh Amendment "applies only to suits 'commenced or prosecuted against one of the United States.'" In re Platter, 140 F.3d 676, 680 (7th Cir. 1998) (quoting U.S. Const. amend. XI). "When a state chooses to avail itself of the [federal] court as a plaintiff, the Eleventh Amendment does not apply and the state will receive the same treatment as other parties. The Eleventh Amendment does not prevent a state from entering a federal forum voluntarily to pursue its own interest." Id. (citing Gardner v.

New Jersey, 329 U.S. 565, 574 (1947); Missouri v. Fiske, 290 U.S. 18, 28 (1933); In re Creative Goldsmiths of Wash., D.C., Inc., 119 F.3d 1140, 1148 (4th Cir. 1997)).

In Regents of the Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559 (Fed. Cir. 1997), the University of California, which is an arm of the State, brought a patent infringement action in federal district court in California. The University resisted a transfer to a district court in another state by arguing that it had waived its Eleventh Amendment immunity only in the federal courts of California. In rejecting plaintiff's argument, the Federal Circuit observed that the Supreme Court has never

> construe[d] the Eleventh Amendment to apply to suits in which a state is solely a plaintiff . . . . This is because the Eleventh Amendment applies to suits "against" a state, not suits by a state. Thus, we need not determine whether UC waived its immunity only in California, because this case does not create an Eleventh Amendment jurisdictional issue concerning which the question of waiver even arises. This case only involves UC's patent infringement claims and Lilly's defenses; it does not involve any claim or counterclaim against UC that places UC in the position of a defendant.

Id. at 1564-65.

The State of Louisiana voluntarily invoked federal jurisdiction by filing the two instant lawsuits. "When a state authorizes its officials voluntarily to invoke federal process in a federal forum, the state thereby consents to the federal forum's rules of procedure and may not invoke sovereign immunity to protect itself against the interposition of defenses to its action . . . but well-established principles of sovereign

9

immunity dictate that this waiver be narrowly construed." In re Creative Goldsmiths, 119 F.3d at 1148 (citing Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 239-40 (1985)).

In accordance with such a narrow construction, it is a "familiar concept that by making a claim [in federal court], a sovereign waives immunity with respect to that claim," but the case law does not "suggest that active participation with respect to a claim can waive immunity beyond the scope of that claim (or claims 'logically related' to it)." In re Pegasus Gold Corp., 394 F.3d 1189, 1197 (9th Cir. 2005). Thus, the State of Louisiana's invocation of federal jurisdiction in these actions is limited to its claims against the United States and the United States' responsive defenses and compulsory counterclaims, Biomedical Patent Mgmt. Corp. v. California, No. 2006-1515, 2007 WL 3071687, at *2 (Fed. Cir. Oct. 23, 2007) (citing Regents of Univ. of N.M. v. Knight, 321 F.3d 1111, 1125-26 (Fed. Cir. 2003)), which arise out of the same transaction or occurrence that is the subject matter of Louisiana's claims. In re Pegasus Gold Corp., 394 F.3d at 1197; In re Straight, 143 F.3d 1387, 1392 (10th Cir. 1998); In re Creative Goldsmiths, 119 F.3d at 1148-49.

The following decisions illustrate that, by voluntarily appearing in a federal action, a State consents only to adjudication of the limited subject matter of that action, and that movants' proposed intervention is outside those limits. In Gardner, the State of New Jersey filed a proof of claim in a bankruptcy action for unpaid state taxes owed by the

10

debtor. The trustee filed objections to the State's claim and a petition for adjudication of the tax claims. The State raised the Eleventh Amendment immunity bar, which the Supreme Court rejected. The Court held that the bankruptcy "court had jurisdiction over the proof and allowance of the tax claims and that the exercise of that power was not a suit against the State." Gardner, 329 U.S. at 572. The Court explained that

> the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res. . . . When the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

Id. at 574 (emphasis added); see also Clark, 108 U.S. at 448 (State that intervened to make claim to funds in registry of the court "thereby made itself a party to the litigation to the full extent required for its complete determination") (emphasis added).

"The Fourth Circuit has held that even where the state filed a proof of claim for one type of past due taxes, it did not waive Eleventh Amendment immunity against an adversary proceeding in bankruptcy court to determine a different type of tax." Texas ex rel. Board of Regents of the Univ. of Tex. Sys. v. Walker, 142 F.3d 813, 820 (5th Cir. 1998) (citing In re Creative Goldsmiths, 119 F.3d at 1149). Movants are trying to do the same thing in this case that the Fourth Circuit prohibited in Creative Goldsmiths: to begin an adversary proceeding against the State of Louisiana based on its waiver of

immunity as to one type of claim against the United States, when movants assert entirely different claims against the State, for which the State has not waived its immunity.

The Supreme Court's reasoning in <u>Missouri v. Fiske</u>, 290 U.S. 18 (1933), demonstrates why the movants may not intervene in the instant actions to assert their claims for damages against Louisiana. In <u>Fiske</u>, a decedent's son sued the decedent's other children in federal court to determine the effect on the decedent's estate of a prior federal court decree concerning the ownership of certain shares of stock that had passed to the decedent from the estate of her previously deceased husband. The State of Missouri, which had asserted a claim for inheritance taxes in the decedent's state probate court proceedings, intervened in the federal action to oppose distribution of the stock by the federal court and to ask that the shares be placed in the registry of the court pending the state court's decision concerning valuation of the stock in the decedent's estate. <u>Id.</u> at 21-24. The decedent's children then brought "an ancillary and supplemental bill of complaint" in the federal court in which they sought an injunction against Missouri to restrain it from prosecuting its claims in the probate court. <u>Id.</u> at 21.

The Court held that the Eleventh Amendment barred the supplemental complaint.

> The proceeding by ancillary and supplemental bill to restrain the state from this exercise of authority is unquestionably a "suit." Said Chief Justice Marshall in <u>Cohens v. Virginia</u>, 6 Wheat. 264, 407, 408, 5 L.Ed. 257: "What is a suit? We understand it to be prosecution or pursuit of some claim, demand or request; in law language, it is the prosecution of some demand in a court of justice. * * * To commence a suit is to demand

> something by the institution of process in a court of justice; and to prosecute the suit, is, according to the common acceptation of language, to continue that demand. By a suit commenced by an individual against a state, we should understand process sued out by that individual against the state, for the purpose of establishing some claim against it by the judgment of a court; and the prosecution of that suit is its continuance."
>
> . . . .
>
> <u>The state has not come into the suit for the purpose of litigating the rights asserted [by the decedent's children]. Respondents are attempting to subject the state, without its consent, to the court's process</u>.
>
> . . . .
>
> . . . . <u>And, if a state, unless it consents, cannot be brought into a suit by original bill, to enable a federal court to acquire jurisdiction, no basis appears for the contention that a state, in the absence of consent, may be sued by means of an ancillary and supplemental bill</u> . . . .

<u>Id.</u> at 26-27 (emphasis added).

"A later articulation of the Eleventh Amendment's reach characterizes a suit against the state more concretely. A suit is against the state if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'" <u>Thomas v. FAG Bearings Corp.</u>, 50 F.3d 502, 505-06 (8th Cir. 1995) (quoting <u>Pennhurst</u>, 465 U.S. at 101 n.11) (internal quotations omitted).

Finally, in <u>Watson v. Texas</u>, 261 F.3d 436 (5th Cir. 2001), the Fifth Circuit found that the State of Texas had waived its Eleventh Amendment immunity when it sued the tobacco companies and then entered into a comprehensive settlement agreement in which it consented to the federal court's jurisdiction over enforcement of and "any disputes

13

under" the settlement agreement. The State's consent necessarily included the possibility that the tobacco companies might sue the State to enforce the agreement. Therefore, any claims covered by the agreement could be brought against the State in federal court. <u>Id.</u> at 441-42.

Specifically, the Fifth Circuit held that plaintiff Watson (who had not been a party to the underlying litigation between the State and the tobacco companies) could bring a putative class action against Texas to recover a part of the State's settlement proceeds under the theory that he and the class, defined as injured smokers who had been treated by Medicaid, were real parties in interest to the original lawsuit. Thus, Watson's claims arose out of the "settlement of a claimed breach of duty owed both to Texas and the Watson class." <u>Id.</u> at 442.

In allowing Watson's suit based on the State's waiver of immunity in the underlying litigation and settlement agreement, the Fifth Circuit distinguished a situation like the proposed intervention herein. "This is not a case where the plaintiff seeks to recover money from the state <u>for breach of some duty owed only by the state, and tries to bootstrap his way into an Eleventh Amendment waiver</u> by demanding the proceeds of the Settlement Agreement. Here, the basis for Watson's claim is inextricable from the issues raised by the case that the Settlement Agreement settled." <u>Id.</u> (emphasis added).

The reasoning and holdings quoted above apply to the proposed intervention, which is a suit "commenced or prosecuted against one of the United States" without the State's consent. The proposed intervention is barred by the Eleventh Amendment.

Louisiana's claims against the United States do not waive its immunity from suit in federal court so as to allow any claimant with a grievance against the State to intervene and bring a claim against it in these actions. Louisiana sued the United States to recover for a wide range of damages caused to the State during and after Hurricane Katrina by the alleged negligence and other fault of the United States Army Corps of Engineers. Movants also seek damages for injuries suffered during the hurricane and its aftermath, but that fact produces only a remote, tangential relationship between their claims against Louisiana and Louisiana's claims against the United States.

Movants allege that the fault <u>of Louisiana</u> caused their damages. However, the State's alleged fault in causing movants' damages is <u>not</u> placed at issue in any way by the State's claims against the United States. There is no indication, express or implied, that Louisiana intended to waive its immunity from being sued in federal court based on its own fault. The existing lawsuits concern duties allegedly owed <u>to</u> the State by the United States, while movants are alleging breaches of duties owed to them <u>by</u> the State.

For all of the foregoing reasons, the motions to intervene are denied because they seek to assert claims that are barred by the Eleventh Amendment.  These claims against the State of Louisiana must proceed in state court.

New Orleans, Louisiana, this __12th__ day of December, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE