UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION NO.: 05-4182 "K" (2)<br>JUDGE DUVAL<br>MAGISTRATE WILKINSON |

PERTAINS TO:
INSURANCE *Holbrook* No. 06-2617

**PLAINTIFFS' JOINT OPPOSITION TO
MOTIONS FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

This memorandum is submitted on behalf of plaintiffs Ronald Andrew and April Holbrook (the "Holbrooks") in opposition to the motions for summary judgment filed by defendant Club Insurance Agency ("AAA") and Fidelity National Property and Casualty Insurance Company ("Fidelity"). The parties fundamentally disagree as to the substance of conversations that transpired. These disagreements are genuine issues of material fact which preclude summary judgment.

**I.     BACKGROUND**

The Holbrooks prudently obtained flood insurance to protect the full value of their home and its contents. However, due to the negligence of AAA and its agents, the Holbrooks have been

1

left with insufficient insurance to cover the loss of their home and its contents. AAA's agent has admitted its negligence, yet AAA is now trying to hold the Holbrooks responsible for that negligence.

Throughout their dealings with AAA from May to November, 2005, the Holbrooks maintained meticulous notes regarding their efforts to purchase flood insurance for their Charlotte Drive home. See Exhibit P-22 to depo. of Mr. Holbrook attached hereto as Exhibit A. These notes provide details of the application process and meetings between the Holbrooks and AAA. Conversely, Lisa Dufour ("Dufour") and JoAnn Daleo ("Daleo"), the AAA employees who assisted the Holbrooks in connection with their insurance applications have testified that they do not have written documentation of key meetings and conversations with the Holbrooks. See e.g. Daleo depo. p. 13 attached hereto as Exhibit B. Thus, there exists a great discrepancy between the written notes maintained by the Holbrooks and the recollections of Dufour and Daleo about material issues in this case. Accordingly, the Holbrooks submit that this is not a case that is appropriate for summary judgment.

### A. The Holbrooks Bargained For Coverage

In May, 2005, the Holbrooks contacted AAA for the purpose of procuring homeowner's and flood insurance in connection with the upcoming purchase of their residence at 6123 Charlotte Drive in New Orleans. Exhibit A, pp. 19-20. In part, because of a prior relationship with AAA, the Holbrooks contacted the AAA office in Metairie, Louisiana to do so.  *Id.*  In addition to homeowner's and auto insurance, the Holbrooks sought flood insurance and requested several quotes on varying levels of flood coverage. Exhibit A, pp. 29-30, 37-38, 47-48. The Holbrooks flood insurance was to be underwritten by Fidelity. After several discussions, AAA provided the

2

Holbrooks with a quote for flood insurance coverage to be underwritten by Fidelity in the amount of $183,000 for the building and $40,000 for contents. See Exhibit AAA-2 to depo. of Dufour attached hereto as Exhibit C. The quote from Fidelity showed that the premium for that level of insurance would be $836. *Id.* The Holbrooks accepted AAA's offer of insurance and paid the bargained for premium at the closing of the purchase of the Charlotte Drive home on or about June 30, 2005. AAA and Fidelity accepted that payment.

  B. <u>AAA Was Negligent in Procuring Flood Insurance for the Holbrooks</u>

During the process of obtaining flood insurance for the Holbrooks, AAA prepared and submitted a flood insurance application to Fidelity on their behalf. See Exhibit P-4 to depo. of Mr. Holbrook attached hereto as Exhibit A. As part of that process Dufour obtained a flood elevation certificate from the Holbrooks' title company to use in completing the application. Exhibit B, p. 19. However, the elevation certificate Dufour received and subsequently used for the Holbrooks' application was not for the Holbrooks' residence but instead for a separate property located at 6762 Colbert Street. Exhibit P-12 to depo. of Andrew Holbrook attached hereto as Exhibit A. In her deposition, Dufour clearly stated that she used the incorrect elevation certificate in preparing the Holbrooks' application:

> Q. And you used the information on P-12 to fill out the application for the Holbrooks. Is that correct?
> A. Yes, sir.
> Q. And serving as their agent. Right?
> A. Yes.
> 
>         \*\*\*
> 
> Q. When you received P-12 did you see that this was an elevation certificate for property other than the Holbrooks?
> A. No, sir.
> Q. Does it show that on that document?
> A. If I – yeah; if I read it closely.

Exhibit B, pp. 30, 32. Furthermore, Dufour has admitted that she was negligent in doing so:

> Q. And you didn't do that, did you?
> A. Well, I looked at it. She said she's faxing it to me. I grabbed it. Yes; I didn't look at it. I didn't go like – you know, I looked at it. It's an elevation certificate. I looked at the base flood and lowest flood, and that's what I –
> Q. You made a mistake, didn't you?
> A. Yes, I made an error.

Exhibit B, pp. 32-33. Once the correct elevation certificate was obtained, Fidelity contended that the premium for the coverage the Holbrooks' requested was actually $1,178 or an additional $342. AAA's agent made the initial mistake that damaged the Holbrooks.

C. <u>AAA Compounded Its Initial Mistake</u>

On or about July 25, 2006, Fidelity sent a letter to the Holbrooks indicating that a higher premium was due to obtain the coverage they had already bargained for with Fidelity's agent, AAA. Exhibit A, p. 72. The Holbrooks received that letter on or about August 3, 2004, more than a month after AAA provided the Holbrooks with a premium quote of $836. *Id.* Shortly thereafter, the Holbrooks contacted AAA to inquire why Fidelity sent the letter stating their premium was being increased. Exhibit A, p. 73.

During a meeting with Daleo and Dufour on August 4, 2005, the Holbrooks were informed that AAA mistakenly provided Fidelity with the incorrect elevation certificate for the Holbrooks home. Exhibit A, pp. 82-83. Dufour and Daleo thus attempted to explain that Fidelity determined that the Holbrooks' premium would be higher that what AAA initially quoted. Dufour and Daleo explained that the difference in premium was due to use of the incorrect flood elevation certificate being used during the application process. *Id.* However, it is not clear that any elevation certificate was submitted with the Holbrooks' application for flood insurance. Dufour

4

has testified that she cannot recall attaching an elevation certificate to the Holbrooks' application before sending it to Fidelity. Exhibit B, p. 48. The Holbrooks' notes of the August 4, 2005 meeting once again confirm this. That entry states: "However, when I asked her if our insurance application had been processed with the incorrect elevation certificate she could not definitively say that that was the case. (The insurance underwriting company claims that it did not receive any elevation certificate until late July, suggesting that the policy application was processed without an elevation certificate.)" See Exhibit P-22 to depo. of Mr. Holbrook at pp. 2-3 attached hereto as Exhibit A.

In an effort to provide an explanation for Fidelity's July 25, 2005 letter, Dufour and Daleo attempted to recreate the premium quote during the August 4th meeting at AAA's office. However, when the correct and incorrect elevation certificates were used, the premium was the same. Mr. Holbrook testified:

> A. It was during this period of time that Lisa went to do the Fidelity number – went to the Fidelity computer, I assume. And I said, well, okay. I'll talk with Jo-Ann [Daleo] about setting up the car insurance. At the end of my discussion with Jo-Ann and once we set up the car insurance, that's when we had the discussion between where Lisa said, look, I can't – I entered both the correct and incorrect information and it gets me the same number. That's when it was both – in all three of our presences.

Exhibit A, p. 124. Again, the Holbrooks' notes confirm this by stating that: "Before I left, Lisa told Jo Ann – in my presence – that when she entered the correct flood elevation information into her computer interface with Fidelity that it did not change our premium." See Exhibit P-22 to depo. of Mr. Holbrook at p. 3 attached hereto as Exhibit A.

At the conclusion of the August 4th meeting, AAA promised the Holbrooks that it would undertake an effort to correct the premium discrepancy. Mr. Holbrook has testified that:

5

> Q. Let's go back to Fidelity. After Lisa [Dufour] goes into some separate room, they come back and say the can't duplicate the quote. Tell me what happens then.
>
> A. What happens next is Lisa told me that they were going to get back in touch with Fidelity and that I would be contacted...And the response was that they were going to get back to Fidelity and then get back to me the following day.
>
> \*\*\*
>
> A. The onus was put on them that they were going to look into what happened and get back to me.

Exhibit A, pp. 115, 126. The Holbrooks' notes confirm Mr. Holbrook's testimony. The August 4, 2005 entry in those notes states: "...she said that she would look into it and give me a call." See Exhibit P-22 to depo. of Mr. Holbrook at p. 3 attached hereto as Exhibit A.

Dufour did not call the Holbrooks the following day as promised. In fact, despite several phone calls from the Holbrooks, AAA did not respond to the Holbrooks' inquiries regarding the status of their flood insurance coverage. Mr. Holbrook testified:

> Q. And so they say they'll get back to you. And you say, all right, I'm a nice guy. I'll give them a couple of days.
> Then what happened?
> A. Then I called them.
> Q. What was their response?
> A. They didn't respond.
> Q. Do you remember when you called them?
> A. I recall calling them either, I do believe, the 13th or the 14th of August. And then I called them on the 24th of August to – because I knew that that was sort of the final date. And I called them, I do believe, at 10:00 a.m. that day and said, look, we need to figure this out right now. And no response was ever tendered.

Exhibit A, p. 116-17. Again, the Holbrooks' notes confirm this. The August 11 and August 24 entries both state that Mr. Holbrook called AAA to inquire into AAA's investigation and on both

6

occasions he left a voice mail for Dufour but his call was not returned. See Exhibit P-22 to depo. of Mr. Holbrook at p. 3 attached hereto as Exhibit A.

Finally, on or about August 29, 2005, the Holbrooks offered to pay the disputed premium to Fidelity out of an abundance of caution. Exhibit A, pp. 117-18. However, Fidelity rejected the Holbrooks' tender of payment and AAA and Fidelity are now refusing to provide the full coverage the Holbrooks bargained for. On or about August 29, 2005, Hurricane Katrina struck New Orleans causing widespread flooding throughout the city. The Holbrooks' residence was completely destroyed by the flood. Fidelity inspected the Holbrooks' home and declared it a total loss. However, Fidelity only paid $111,600 for losses related to the structure and $20,000 for contents, which was $91,400 less than the Holbrooks contracted to receive in the event of a total loss. The Holbrooks now seek the difference of $91,400 from AAA due to AAA's negligence in procuring the desired amount of flood insurance for the Holbrooks.

## II.   LAW AND ARGUMENT

By agreeing to procure flood insurance for the Holbrooks, AAA assumed an obligation to the Holbrooks to diligently obtain the requested coverage. AAA has admitted to negligence in fulfilling that obligation and therefore is liable to the Holbrooks for the resulting damages.

### A.   AAA's Fiduciary Duty And Obligations To The Holbrooks

Louisiana law imposes a fiduciary duty on insurance agents in their dealings with the insured. *Taylor v. Sider*, 1999-2521 (La.App. 4 Cir. 5/31/00), 765 So.2d 416. An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. *Id*. at 418. The client may recover

from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage. *Id.* To recover losses resulting from such failure, the plaintiff must establish: 1) an undertaking or agreement by the insurance agent to procure insurance; 2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and 3) actions by the agent which warranted the client's assumption that he was insured in the amount of the desired coverage. *Id.*

It is undisputed that AAA undertook to procure flood insurance for the Holbrooks' residence at 6123 Charlotte Drive. See AAA' memo. at p. 12. However, AAA did not use reasonable diligence in obtaining the requested insurance. In fact, AAA has admitted its negligence in doing so. Further, the actions of Daleo and Dufour during the August 4, 2005 meeting with the Holbrooks warranted the Holbrooks' assumption that the desired coverage was in place. Thus, AAA is not entitled to judgment as a matter of law and its motion should be denied.

B.  <u>AAA Failed To Use Reasonable Diligence To Obtain The Requested Insurance</u>

The Holbrooks requested flood insurance in the amount of $183,000 for building coverage and $40,000 in contents coverage. However, AAA did not obtain the Holbrooks' desired amount of coverage. Instead, Fidelity reduced the coverages to $111,000 and $20,000. The cause of the reduction in the Holbrooks' flood coverage was AAA's failure to either provide Fidelity with the correct flood elevation certificate for the Holbrooks' residence or with no flood elevation certificate at all. In preparing the Holbrooks' application for flood insurance, AAA obtained a flood elevation certificate for a property other than the Holbrooks. AAA asserts that once the

8

correct elevation certificate was obtained, it was allegedly determined that the $836 premium paid by the Holbrooks bought less coverage than what was requested. See AAA's memo at p. 4.

Whether AAA submitted a flood elevation certificate with the Holbrooks' flood insurance application remains a disputed issue of fact. Regardless, submitting the wrong elevation certificate or no certificate at all hardly shows reasonable diligence by AAA in obtaining the insurance coverage requested by the Holbrooks. If the correct elevation certificate led to a reduction in coverage as AAA asserts then it stands to reason that an elevation certificate is an important part of the underwriting process for flood insurance. Thus, the failure to provide Fidelity with an elevation certificate displays a lack of diligence in AAA's undertaking to obtain flood insurance for the Holbrooks. Likewise, submitting the incorrect elevation certificate also demonstrates AAA's negligence in handling the Holbrooks flood insurance application. In fact, AAA has admitted to making an error by submitting the incorrect elevation certificate despite the address being clearly identified.

In *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728 (La. 1973), the plaintiff requested $100,000 in property insurance but the insurance agent only obtained $10,000 of coverage. The plaintiff subsequently incurred a loss of $18,500. The Louisiana Supreme Court held that the agent negligently failed to procure the amount of coverage requested by the plaintiff and affirmed the judgment of $8,500 against the agent. *Id*. at 730. While the Court did not discuss the facts representing the agent's negligence, it did state that the insured may recover from the agent the loss sustained as a result of the agent's failure to procure the desired coverage. *Id*. In the instant case, AAA has admitted its negligence with the result being that AAA failed to procure the coverage desired by the Holbrooks. Thus, like the plaintiff in *Karam*, the Holbrooks

9

may recover from AAA the loss they sustained as a result of AAA's failure, namely the difference between the requested coverage amounts of $183,000/$40,000 and the coverage amount of $111,000/$20,000 that were actually obtained.

### C.  AAA Did Not Notify The Holbrooks Of An Absence Of Coverage

AAA asserts that the Holbrooks received prompt notice of the reduction in coverage via the July 25, 2005 letter from Fidelity. However, the Holbrooks received no such notice from AAA. As the court stated in *Taylor*, *supra*, an insured can recover losses resulting from an agent's "...failure...to notify the client promptly of the absence of coverage." *Taylor*, *supra* at 418. In the instant case, AAA never gave the Holbrooks any notice whatsoever that there may be a reduction in coverage. Instead, during the August 4, 2005 meeting, AAA obligated itself to investigate the situation which led to the Holbrooks receiving the July 25, 2005 letter from Fidelity. As Mr. Holbrook made clear during his deposition, AAA never fulfilled that obligation despite several attempts by the Holbrooks to ascertain what steps AAA had taken in that regard. Thus, AAA provided no notice of an absence of coverage as required by law. While the July 25, 2005 Fidelity letter may have put the Holbrooks on notice of a problem with their flood insurance coverage, AAA's agreement to undertake an investigation of the matter vitiated any notice the Holbrooks may have received from Fidelity.

In addition to receiving no notice from AAA of an absence of coverage, the July 25, 2005 Fidelity letter was not prompt under the circumstances. After several weeks of discussion, the Holbrooks signed an application for flood insurance on June 23, 2005 with limits of $183,000 for the Holbrooks' residence and $40,000 for its contents. Several days later the bargained for premium of $836 was submitted to AAA. However, it was not until more than a month later, on

10

approximately August 3, 2004 that the Holbrooks first learned that there may be a problem with their flood policy coverage limits. The Holbrooks respectfully submit that this lengthy delay in receiving notice was anything but prompt. This is especially true in light of the fact that the Holbrooks were seeking flood insurance for a home in a city that sits below sea level during the height of hurricane season. Under those circumstances, failing to provide notice for more than a month is anything but prompt. At the very least the delay in notice is question of fact that should be reserved for the trial of this matter.

D. <u>AAA's Actions Warranted The Holbrooks' Assumption Of Coverage</u>

Throughout the Holbrooks' dealings with AAA from May, 2005 to the time Hurricane Katrina struck New Orleans, there were numerous actions by AAA which warranted the Holbrooks' assumption that they were covered by flood insurance in the amounts of $183,000 and $40,000. First and foremost, AAA prepared and submitted a flood insurance application for the amount of coverage the Holbrooks desired and for which the Holbrooks paid the bargained for premium of $836. There can be no doubt that at that time the Holbrooks were warranted in assuming they had obtained flood insurance in the desired amount.

The sequence of events at the August 4, 2005 meeting at AAA's Metairie office also warranted the Holbrooks assumption that they had obtained the desired coverage. During that meeting, Dufour and Daleo attempted to explain why Fidelity had sent the July 25, 2005 letter indicating a reduction in coverage. However at no time during that meeting did Dufour or Daleo offer any evidence that the Holbrooks' coverage had in fact been reduced. Instead, Dufour and Daleo attempted to recreate the initial bid given to the Holbrooks. Dufour used both the incorrect and correct flood elevation numbers but when she did so she obtained the same premium amount.

11

As the Holbrooks notes of the meeting state: "Before I left, Lisa [Dufour] told Jo Ann [Daleo] - in my presence - that when she entered the correct flood elevation information into her computer interface with Fidelity that it did not change our premium."

After being perplexed by obtaining the same premium using the correct and incorrect elevation certificates, Dufour and Daleo assured Mr. Holbrook that they would contact Fidelity to investigate why the July 25, 2005 letter was sent and report their findings to the Holbrooks. Again, Mr. Holbrooks' testimony is clear that "the onus was put back on them that they were going to look into what happened and get back to me." Exhibit A, p. 126. Despite several attempts by Mr. Holbrook to contact Dufour or Daleo about the status of their investigation, his phone calls went unreturned. Further, at the conclusion of the meeting neither Dufour nor Daleo informed Mr. Holbrook that an additional payment had to be made to avoid a reduction in coverage. Exhibit A, p. 126. Based on the conversations between the Holbrooks and Dufour and Daleo at the August 4, 2005 meeting, it was more than reasonable for the Holbrooks to assume that they had flood insurance coverage at the amount they originally requested. At a minimum, this is a disputed issue that is not appropriate for summary judgment, but that should be decided at a trial on the merits. Not surprisingly, neither Dufour nor Daleo recall the events and conversations of the August 4, 2005 meeting which warranted the Holbrooks' assumption of coverage as they have no written notes of that meeting. Conversely, Mr. Holbrook carefully documented what happened that day. Again, the representations and actions of Dufour and Daleo at the August 4, 2005 meeting at the very least create a significant material issue of fact that should be left for the trial of this matter.

### E. Fidelity Is Not Entitled to Summary Judgment

Initially, the Holbrooks acknowledge the weight of the law in favor of Fidelity. Notwithstanding that law, Fidelity is not entitled to summary judgment. AAA quoted the Holbrooks a premium presumably obtained from Fidelity and presumably correct with the information submitted. Then, after receipt of the July 25, 2005 letter from Fidelity contending that the premium was incorrect, Mr. Holbrook met with Dufour and Daleo to discuss the situation. Dufour and Daleo were unable to explain or recreate the different premiums. The Holbrooks testimony and the inability of Dufour and Daleo to recreate the different premiums creates a genuine issue of material fact as to what was the correct premium for the Holbrooks. If the original premium quoted and paid by the Holbrooks were indeed correct, then Fidelity would be liable to the Holbrooks. Thus, Fidelity is not entitled to summary judgment.

## III. CONCLUSION

For all the foregoing reasons, the Holbrooks respectfully submit that there are fact questions remaining and that AAA and Fidelity are not entitled to judgment as a matter of law. AAA has admitted to its negligence in undertaking to procure flood insurance for the Holbrooks. After a lengthy delay in notifying the Holbrooks that there may be a problem with their insurance, AAA continued to act in such a way as to warrant the Holbrooks' assumption that they were protected by the previously bargained for amount of coverage. Moreover, AAA's actions create a genuine issue of material fact as to whether the Holbrooks paid the correct premium or not. Accordingly, the Holbrooks respectfully submit that AAA's and Fidelity's motions for summary judgment should be denied.

By Attorneys:

KANTROW, SPAHT, WEAVER & BLITZER
(A PROFESSIONAL LAW CORPORATION)
445 North Boulevard, Suite 300 (70802)
P. O. Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 383-4703
Facsimile: (225) 343-0630

By: _____
Connell L. Archey (#20086)
Randal J. Robert, T.A. (#21840)
Jennifer A. Hataway (#26323)
Travis B. Wilkinson (#28806)
Attorneys for Ronald A. Holbrook and April Holbrook

## CERTIFICATE

I hereby certify that a copy of the Plaintiff's Memorandum In Opposition to Motion for Summary Judgment of Ronald A. Holbrook and April Holbrook has been served upon all counsel of record via email or PACER notice, as follows:

William T. Treas
*Nielsen Law Firm, LLC*
2121 Airline Highway, Suite 200
Metairie, LA 70001

Kevin G. Barreca
*Sessions Fishman & Nathan LLP*
Lakeway Two, Suite 1240
3850 N. Causeway Blvd.
Metairie, LA 70002-1752

on this 18th day of December, 2007.

_____
Connell L. Archey

14