## H. GENERAL LIABILITY CONDITIONS

1. Bankruptcy.

    Bankruptcy or insolvency of the Insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties in the event of Occurrence, Offense, Claim, or Suit.

    a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1) How, when, and where the "occurrence" or offense took place;

        (2) The names and addresses of any injured persons and witnesses; and

        (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b. You must see to it that we are notified within 60 days of your becoming aware of any act of "sexual misconduct or sexual molestation" which may result in a claim. To the extent possible, notice should include:

        (1) How, when, and where the act of "sexual misconduct or sexual molestation" took place; and

        (2) The names and addresses of any injured persons and witnesses.

    c. If a claim is made or "suit" is brought against any insured, you must:

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    d. You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    e. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us.

    No person or organization has a right under this Coverage Part:

    a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

    b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

    A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance.

    If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

    a. Primary Insurance.

        This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

Copyright, Church Mutual Insurance Company, 1996. Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1996

b. Excess Insurance.

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis:

(a) That is Fire, Extended Coverage, Builders' Risk, Installation Risk, or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(c) If loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. under Bodily Injury and Property Damage Liability Coverage.

(2) This insurance is excess over any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

(3) When this insurance is excess, we will have no duty under this Coverage Part to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the

Limits of Insurance shown in the Declarations Page of this Coverage Part.

c. Method of Sharing.

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

5. Premium Audit.

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium for this Coverage is a deposit premium only. At the close of each audit period, we may compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the deposit and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

6. Representations.

By accepting the policy, you agree:

a. The statements in the Declarations Page are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representation.

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

7. Separation of Insureds.

   Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer of Rights of Recovery Against Others to Us.

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. Two or More Coverages.

   If two or more coverages of this policy apply to the same loss, the maximum amount we will pay as damages under all the coverages will not exceed the highest Limit of Insurance that applies to any one of the coverages.

10. Two or More Policies.

    If two or more policies issued by us apply to the same insured and these policies also apply to the same loss, the maximum amount we will pay as damages under all the policies will not exceed the highest applicable Limit of Insurance that applies to any one of the policies.

    This does not apply to any policy issued by us that is specifically written as excess insurance.

11. When We Do Not Renew.

    If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations Page written notice of the nonrenewal not less than 30 days before the expiration date.

    If notice is mailed, proof of mailing will be sufficient proof of notice.

## I.   DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title, or slogan.

2. "Auto" means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment."

3. "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from physical injury.

4. "Counseling incident" means any act or omission in the furnishing of counseling services.

5. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico, and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

         (b) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

      (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

Copyright, Church Mutual Insurance Company, 1998
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1995

6. "Employee" includes a "leased worker." "Employee does not include a "temporary worker."

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws, or any other similar governing document.

8. "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate, or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement; or

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing.

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

(3) Under which the insured, if an architect, engineer, or surveyor, assumes liability for any injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural, or engineering activities.

An "insured contract" does not include that part of any contract or agreement that indemnifies any person or organization for; or under which an insured assumes the liability of any person or organization for "bodily injury," "property damage," "personal injury," "advertising injury" or injury for "sexual misconduct or sexual molestation"; arising out of a "Professional Health Care Incident."

a. "Professional Health Care Incident" means:

(1) Any act or omission:

(a) In the furnishing of "Professional Health Care Services." This includes furnishing of food, beverages, medications, or

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995

appliances in connection with such services;

(b) In the handling of deceased human bodies;

(c) Arising out of service by any persons as members of a formal accreditation, standards review or similar board of the Named Insured or as a person who executes the duties of such board.

(2) Failure to comply with any right of a health care facility resident under any state law regulating you as a resident health care facility;

(3) Failure to comply with any right of a resident as included in the United States Department of Health, Education, and Welfare regulation governing intermediate care facilities and skilled nursing facilities regardless of whether you are subject to such regulations; and

(4) Failure to protect any resident from undue influence by an insured when such undue influence is to the personal or financial detriment of the resident.

b. "Professional Health Care Services" as used in this exclusion endorsement means your professional medical, nursing, cosmetic, social, and similar professional services that relate to the care of any resident.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";

b. While it is in or on an aircraft, watercraft, or "auto"; or

c. While it is being moved from an aircraft, watercraft, or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or "auto."

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment.

a. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers, or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers, or rollers.

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers.

f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos."

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1996.

(1) Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning.

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

  a. False arrest, detention, or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies.

  d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services; or

  e. Oral or written publication of material that violates a person's right of privacy.

15. "Products-completed operations hazard":

  a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  b. Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations states that products completed operations are subject to the General Aggregate Limit.

16. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

17. "Sexual misconduct or sexual molestation" is any activity which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

18. "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage," "personal injury," "advertising injury," and injury for sexual misconduct or sexual molestation to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles) materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

21. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts, or equipment furnished in connection with such work or operations.

"Your work" includes warranties or representations made at any time with respect to the fitness, quality, durability, or performance of any of the items included in a. or b. above.

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1996.

# GENERAL LIABILITY ADDITIONAL PROVISIONS FORM
## For Religious Institution Premises and Operations

The following Additional Provisions apply to your Religious Institution premises and operations.

## A. MEDICAL EXPENSE COVERAGE

1. Insuring Agreement.

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

      (1) On premises you own or rent;

      (2) On ways next to premises you own or rent; or

      (3) Because of your operations (including your operations off premises);

   provided that:

      (a) The accident takes place in the "coverage territory" and during the policy period;

      (b) The expenses are incurred and reported to us within one year of the date of the accident; and

      (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. Subject to a. above, we will pay medical expenses for "bodily injury" to any person while practicing for or participating in any athletic activity including physical training, sports and sports contests, or exhibitions. Our payment will be excess of the amount due from any other insurance. We will not pay the amount due from that other insurance.

   c. We will make these payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, X-ray, and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing, and funeral services.

2. Medical Expense - Transfer of Rights to Recover From Others.

   If any person for whom we make payment under Medical Expense Coverage has rights to recover from other responsible parties all or part of that payment, those rights are transferred to us. At our request, any person for whom we make payment must assist us in our efforts to recover payment.

3. Exclusions.

   We will not pay expenses for "bodily injury":

   a. To a person hired to do work for or on behalf of any insured or tenant of any insured.

      This exclusion does not apply to "bodily injury" to a person while doing volunteer work for you.

   b. To a person injured on that part of premises you own or rent and on ways next to premises you own or rent that the person normally occupies.

   c. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or similar law.

   d. Included within the "products-completed operations hazard."

   e. Excluded under the liability coverages of Paragraphs A, B, and C of the General Liability Coverage Form. Except Exclusion 2. p. under Paragraph A. and Exclusion 2. a. (5) under Paragraph B. of the General Liability Coverage Form do not apply to medical expenses for any actual or alleged acts of "sexual misconduct or sexual molestation."

 Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998.

f.  Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, or revolution.

B. **SUPPLEMENTARY PAYMENTS - BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY, ADVERTISING INJURY, SEXUAL MISCONDUCT OR SEXUAL MOLESTATION LIABILITY COVERAGES**

1.  We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    a.  All expenses we incur.

    b.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    c.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

    d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

    e.  All costs taxed against the insured in the "suit." For the purpose of this provision, costs do not include prejudgement interest or post judgement interest.

    f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

    These payments will not reduce the Limits of Insurance.

2.  If we defend an insured against a "suit" and an indemnitee of the insured is also named as a

party to the "suit," we will defend that indemnitee if all the following conditions are met:

a.  The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b.  This insurance applies to such liability assumed by the insured;

c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d.  The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f.  The indemnitee:

    (1)  agrees in writing to:

         (a)  cooperate with us in the investigation, settlement, or defense of the "suit";

         (b)  immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the "suit";

         (c)  notify any other insurer whose coverage is available to the indemnitee; and

         (d)  cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    (2)  provides us with written authorization to:

         (a)  obtain records and other information related to the "suit"; and

Copyright, Church Mutual Insurance Company, 1998
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1996

(b) conduct and control the defense of the indemnitee in such "suit."

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2. b. (2) of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY COVERAGE, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable Limit of Insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

3. We will pay for loss to property of others, not to exceed $500 in any one occurrence caused by persons participating in an activity organized by you. Loss shall mean damage or destruction, but does not include disappearance, theft, or loss of use. This insurance does not apply:

a. If coverage is provided by the Property Coverage Part (if any) of this policy; or

b. If the loss is covered by any other insurance you have or by any insurance of such person who causes such loss.

These payments will not reduce the Limits of Insurance.

## C. WHO IS AN INSURED

1. If you are designated in the Declarations Page as a Religious Institution:

a. You are an insured.

b. Your clergy and "executive officers" are insureds but only with respect to their duties as such.

c. Your directors, trustees, officials, elders, deacons, vestry members, council members, and members of your board of education are insureds, but only with respect to their duties as such.

d. (1) Any of your members are insureds but only with respect to their liability for your activities or activities they perform on your behalf.

(2) Any person(s) who are volunteer worker(s) for you are insureds, but only while acting at your direction and within the scope of their duties for you.

However, none of these members or volunteers is an insured for:

(a) "Bodily injury" or "personal injury" to you or to an "employee" while in the course of his or her employment, or the spouse, child, parent, brother, or sister of that "employee" as a consequence of such "bodily injury" or "personal injury" or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(b) "Property damage" to property owned or occupied by or rented or loaned to that member or volunteer or any of your other members or volunteers.

e. Your "employees," other than your "executive officers," are insureds but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal injury" to you or to a co-"employee" while that co-"employee" is either in the course of his or her employment, or performing duties related to the conduct of your business, or the spouse, child, parent, brother, or sister of that co-"employee" as a consequence of such "bodily injury" or "personal injury" or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

(2) "Bodily injury" or "personal injury" arising out of his or her providing or

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

failing to provide professional health care services; or

(3) "Property damage" to property owned or occupied by or rented or loaned to that "employee" or any of your other "employees."

f. Any organization controlled by you is an insured, but only if there is no other similar insurance available to that organization. However, no organization is an insured for any injury or damage that occurred before you acquired control of the organization.

g. Any person (other than your "employee") or any organization is an insured while acting as your real estate manager.

h. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

(1) "Bodily injury" to a co-"employee" of the person driving the equipment; or

(2) "Property damage" to property owned by, rented to, in charge of or occupied by you or the employer of any person who is an insured under this provision.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture, or limited liability company that is not shown as a Named insured in the Declarations Page.

No person is an insured under Sexual Misconduct or Sexual Molestation Liability Coverage if they personally participated in the act of "Sexual Misconduct or Sexual Molestation."

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1995

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## · · COLLEGES OR SCHOOLS · · · · · · · · · · · ·

This endorsement modifies insurance provided under the General Liability Coverage Part.

The General Liability Coverage Form and General Liability Additional Provisions Form are amended as indicated below.

A. With respect to the operation of any college or school by you or on your behalf:

1. The following Exclusions are added for all coverages of the General Liability Coverage Form:

    a. This insurance does not apply to injury for "bodily injury," "property damage," "personal injury," "advertising injury," or "sexual misconduct or sexual molestation" arising out of corporal punishment administered to any student or pupil by or at the direction of any insured.

    Exclusion a. above may be deleted. We must agree and you must pay any additional premium for deleting the Exclusion. If we delete Exclusion a., this insurance applies to corporal punishment administered to any student or pupil by or at the direction of any insured.

    Refer to the Declarations Page to determine if corporal punishment coverage applies.

    b. With respect to the transportation of students or pupils, Exclusion h. under Bodily Injury and Property Damage Liability Coverage is replaced by the following:

        (1) This insurance does not apply to injury for "bodily injury," "property damage," or "sexual misconduct or sexual molestation" that arises out of the ownership, maintenance, operation, use, "loading or unloading," or entrustment to others of any aircraft, "auto," or watercraft which is owned, operated, or hired by any insured. For the purpose of this Exclusion, the word "hired" includes any contract to furnish transportation of students or pupils to and from schools.

    c. If the college or school owns or operates an infirmary with facilities for lodging and treatment or a public clinic or hospital, this insurance does not apply to injury for "bodily injury," "property damage," "personal injury," "advertising injury," or

"sexual misconduct or sexual molestation" caused by:

(1) The rendering or failure to render:

    (a) Medical, surgical, dental, X-ray, or nursing service or treatment or the related furnishing of food or beverages;

    (b) Any health service or treatment; or

    (c) Any cosmetic or tonsorial service or treatment.

(2) The furnishing or dispensing of drugs or medical, dental, or surgical supplies, or appliances.

(3) The handling or treatment of dead bodies including autopsies, organ donation, or other procedures.

2. As shown in the Declarations Page, one of the following Optional Coverages is added to the Medical Expense Section of the General Liability Additional Provisions Form for any person who is a student or pupil enrolled in your school. The insurance provided under the option applies only when the student or pupil is involved in a school activity supervised by the school.

    a. Option One. Medical Expense Insurance applies to any student or pupil:

        (1) Paragraph b. of the Medical Expense Insuring Agreement is deleted and replaced by the following but only with respect to any student or pupil:

            (a) We will pay covered medical expenses for "bodily injury" caused by an accident to any student or pupil.

    b. Option Two. Medical Expense Insurance applies to any student or pupil - excess basis:

    Copyright, Church Mutual Insurance Company, 1998.<br>Includes copyrighted material of Insurance Services Office, Inc., with its permission<br>Copyright, Insurance Services Office, Inc., 1995.

(1) Paragraph b. of the Medical Expense Insuring Agreement is deleted and replaced by the following but only with respect to any student or pupil:

    (a) We will pay covered medical expenses for "bodily injury" caused by an accident to any student or pupil. Our payment will be excess of the amount due from any other insurance. We will not pay the amount due from that other insurance.

c. Option Three. Medical Expense Insurance does not apply to any student or pupil:

    (1) The following Exclusion is added:

        (a) We will not pay expenses for "bodily injury" to any student or pupil.

d. Option Four. Option Four is designed for the unique needs of your students. Refer to the Declarations Page to determine the Medical Expense insurance that applies.

The option shown in the Declarations Page applies to your students or pupils regardless of any other endorsement modifying Medical Expense insurance.

Refer to the Declarations Page to determine which Medical Expense insurance option, one, two, three, or four, applies.

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION - LEAD LIABILITY

This endorsement modifies insurance provided under the General Liability Coverage Part.

The following is added for all coverages of the General Liability Coverage Form.

A. EXCLUSION - LEAD LIABILITY

This insurance does not apply to:

1. Actual or alleged "bodily injury" arising out of the presence, ingestion, inhalation, absorption, adsorption, or exposure to lead in any form;

2. Actual or alleged "property damage," "personal injury," or "advertising injury" arising out of any form of lead;

3. Any loss, cost, or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize or in any way respond to or assess the effects of lead; or

4. Any loss, cost, or expense arising out of any claim or suit by or on behalf of any governmental authority for damages resulting from testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of lead.

Copyright, Church Mutual Insurance Company, 1994.
Includes copyrighted material of American Association of Insurance Services with its permission
Copyright, American Association of Insurance Services, 1992.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## · LEGAL DEFENSE COVERAGE FORM··    ...        ·   ··

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we", "us" and "our" refer to Church Mutual Insurance Company.

The word "Insured" means any person or organization qualifying as an insured.    Refer to Paragraph B - WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to Paragraph G - DEFINITIONS .

A. LEGAL DEFENSE COVERAGE

1. Insuring Agreement.

   We will pay "defense costs," incurred by the insured, that result from a "suit" to which this insurance applies. This insurance applies to these "defense costs" only if:

   a. The "suit" results from a "defensible incident" that takes place in the "coverage territory";

   b. The "suit" results from a "defensible incident" that occurs during the policy period;

   No other obligation or liability to perform acts or services is covered unless explicitly provided for under Supplementary Payments.

2. Exclusions.

   This insurance does not apply:

   a. To any "defense costs" Incurred because of:

      (1) "Bodily injury";

      (2) "Personal injury";

      (3) "Advertising injury";

      (4) Injury arising out of:

          (a) Any act of "sexual misconduct or sexual molestation";

          (b) Any acts, errors or omissions in providing or failing to provide any professional service;

      (5) "Property damage";

      (6) A dispute involving this contract, or any other contract issued by us;

      (7) Any class action "suit";

      (8) Any obligation of the Insured under a workers' compensation, disability benefits or unemployment compensa-tion law or any similar law; or

      (9) Any dispute between the insured and us.

   b. If any "defense costs" are:

      (1) An obligation of ours or any other insurance company under any other insurance policy or endorsement;

      (2) An obligation of any other person, group or organization (other than an insured);

      even if the obligation is only a partial obligation.

   c. To any damages.

B. WHO IS AN INSURED

   See the applicable General Liability Additional Provisions Form.

C. LIMITS OF INSURANCE

   1. The Limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. "Suits" brought; or

c. Persons or organizations bringing "suits."

2. The Aggregate limit is the most we will pay as the sum of all "defense costs" incurred as a result of all "suits" brought against the insured.

3. Subject to 2. above, the Each Defensible Incident limit is the most we will pay as the sum of all "defense costs" incurred as a result of all "suits" brought against any insured for any one "defensible incident."

The aggregate limits of insurance of this Coverage Form apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

D. DEDUCTIBLE

We will not pay any "defense costs" until the amount of the "defense costs" exceeds $250. We will then pay the amount of the "defense costs" in excess of $250, up to the Limits of Insurance.

E. YOUR CHOICE OF AN ATTORNEY

You have the right to choose your own attorney. But, your attorney must be licensed to provide legal services. Your attorney has the right to freely exercise his or her professional judgment in the defense of any "suit" against you.

Attorney's fees and expenses must be reasonable and customary. We shall have the option to audit "defense costs" on behalf of the insured.

F. LEGAL DEFENSE CONDITIONS

1. Bankruptcy.

Bankruptcy or insolvency of the insured or the insured's estate will not relieve us of our obligations under this Coverage Form.

2. Duty to Investigate or Defend.

We have no duty to investigate or defend any "suit" brought against you.

3. Duties in the Event of a "defensible incident"

or "suit."

a. You must see to it that we are notified within 60 days of your becoming aware of any "defensible incident" that may result in a "suit." To the extent possible, notice should include:

(1) The nature of the "defensible incident," and

(2) How, when and where the "defensible incident" took place.

Notice of a "defensible incident" is not notice of a "suit."

b. If "suit" is brought against the insured, you must:

(1) Notify us within 60 days of the date "suit" is brought against the insured.

(2) As soon as practicable, send us written notice of the "suit." This notice should include the nature of the "defensible incident," and how, when and where the "defensible incident" took place.

(3) Give us the name, address and other information sufficient to identify the attorney or firm who will be defending you in the "suit."

4. Other Insurance.

a. Primary Insurance.

This insurance is primary and our obligations are not affected unless any other insurance or indemnity is also primary. Then we will share with all that other insurance or indemnity by the method described in b. below.

b. Method of Sharing.

If all that other insurance or indemnity permits contribution by equal shares, we will follow this method also. Under this approach, each party contributes equal amounts until it has paid its applicable limit or the "defense costs" are fully paid, whichever comes first.

If contribution by equal shares is not permitted by that other insurance or indemnity, we will contribute by limits. Under this method each party's share is based on the ratio of each party's

 Copyright, Church Mutual Insurance Company, 1899.

applicable limit to the total applicable limit of all parties.

5. Representations.   . ..

By accepting the endorsement, you agree:

a. The statements in the Declarations Page are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this endorsement in reliance upon your representation.

6. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. The insured must do nothing after the "suit" is brought to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

7. Two or More Policies.

If two or more policies issued by us apply to the same insured and these policies also apply to the same "suit," the maximum amount we will pay as damages under all the policies will not exceed the highest applicable Limit of Insurance that applies to any one of the policies.

This does not apply to any policy issued by us that is specifically written as excess insurance.

8. Arbitration.

If we and the insured cannot reach an agreement concerning any of the terms of this Coverage Form, the disagreement will be settled by arbitration.  The rules of the American Arbitration Association will be followed.  The arbitrator shall have the power to determine the meaning of the terms of this Coverage Form. The arbitrator shall not have the power to change or amend this Coverage Form, unless we and all insureds consent to the change in writing.

We and you will equally share all costs of arbitration.

G. DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; .

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" does not include mental or emotional injury, suffering, or distress that does not result from physical injury.

3. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

4. "Defense costs" means the cost of reasonable and customary attorney's fees for legal services rendered in defending "suits" brought against you and includes attorney's expenses in relation to those services. But, the fees and expenses must qualify as a deductible expense to you under Section 162 of the U.S. Internal Revenue Code. This applies even if you are not subject to the code.

5. "Defensible incident" means any acts, omissions or failures of the insured. Every such act, omission or failure involving substantially the same general circumstances shall be considered one "defensible incident" subject to the Each Defensible Incident Limit of Insurance in force at the time the first such "defensible incident" covered by this policy occurred.  "Defensible Incident" does not include any deliberate acts, omissions or failures for purposes of causing a "suit" to be filed against you.

6. "Law enforcement inquiry" means an investigation undertaken by law enforcement officials and directed against a person suspected of committing a criminal offense under federal, state, or local law, including any related prosecution for such alleged offense.

7. "Personal injury" means injury, other than "bodily injury" arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

8. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

9. "Sexual misconduct or sexual molestation" is any activity which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd, or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

10. "Suit" means a proceeding in a court of proper jurisdiction. "Suit" includes:

a. A civil proceeding;

b. An arbitration proceeding to which you must submit or do submit with our consent; or

c. Any other alternative dispute resolution proceeding to which you submit with our consent; or

d. Any "law enforcement inquiry."

All "suits," countersuits, counterclaims, "law enforcement inquiries," and similar proceedings substantially related to the same "defensible incident" shall be considered one "suit."

Copyright, Church Mutual Insurance Company, 1999.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF INSURING AGREEMENT - .... ......  KNOWN INJURY OR DAMAGE

This endorsement modifies insurance provided under the following:

### GENERAL LIABILITY COVERAGE PART

The following is added under Insuring Agreement, Item 1. b.:

  (3) Prior to the policy period, no insured listed under Paragraph F - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change, or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph F - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change, or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph F - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Copyright, Church Mutual Insurance Company, 1999
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1996

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CATASTROPHIC VIOLENCE RESPONSE COVERAGE· · · ·

This endorsement modifies insurance provided under the General Liability Coverage Part.

The following is added to the General Liability Coverage Form.

| SCHEDULE* | | |
|---|---|---|
| Per Person Limit | Each Violent Incident Limit | Violent Incident Aggregate Limit |
| | | |

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

### A. CATASTROPHIC VIOLENCE RESPONSE COVERAGE

1. Insuring Agreement

   We will pay covered expenses that result from a "violent incident" to which this insurance applies. This insurance applies to a "violent incident" only if the "violent incident":

   a. Occurs during the policy period;

   b. Occurs during your "organized activities"; and

   c. Occurs on premises you own or lease.

   Covered expenses resulting from the "violent incident," (unless otherwise limited) must be incurred within 395 days of the date of the "violent incident."

2. Exclusions

   We will not pay expenses:

   a. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

   b. Due to loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

   c. Arising out of any actual or alleged act of "sexual misconduct or sexual molestation" including but not limited to expenses related to, or damages on account of, any negligent hiring or transfer of, failure to supervise, or failure to dismiss any employee or volunteer worker alleged to have committed any act of "sexual misconduct or sexual molestation."

   d. Arising out of the ownership, maintenance, or use of any motorized vehicle or equipment, including, but not limited to any aircraft, "auto," watercraft, recreational vehicle, snowmobile, motorcycle, motorbike, golf cart, or lawnmower.

   e. Incurred by the perpetrator(s) of the "violent incident," regardless of their relationship to you.

   f. For legal costs, litigation, attorney fees, judgments, settlements, and damages that result from any claim, action, or legal proceeding of any type or nature brought against any insured in connection with a "violent incident."

   g. For legal costs, litigation, and attorney fees from any claim, action, or legal proceeding of any type or nature brought by any insured in connection with a "violent incident."

A 255 (08-01)                                Copyright, Church Mutual Insurance Company, 2001.                                Page 1 of 4

h.  For any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law, regardless of whether the claimant has made a claim for such benefits.

i.  For damage to property including loss of use of property.

j.  For any services provided by a governmental entity.

    This exclusion does not apply to services that are customarily charged to the public.

k.  For indirect or consequential property loss of any kind resulting from a "violent incident."

## B.  COVERED EXPENSES

1.  Subject to the applicable Limits of Insurance, covered expenses means only reasonable and necessary expenses. Covered expenses do not include any expenses other than emergency medical expenses that are not approved by us before incurred.

2.  Subject to the Per Person Limit, reasonable and necessary expenses for any one person include:

    a.  Medical expenses, including ambulance services, emergency airlift and physical therapy. Emergency medical expenses do not require pre-approval by us. Our payment for covered medical expenses will be excess of the amount due from any other valid and collectible insurance including insurance available to any insured or any injured person. We will not pay the amount due from that other insurance.

    b.  Individual counseling services for up to 90 days after the "violent incident" for any person who has sustained "serious bodily injury" or was held in a "hostage situation."

    c.  Individual counseling for up to 90 days after the violent incident for the immediate family of any person who has sustained "serious bodily injury" or was held in a "hostage situation."

3.  Subject to the Violent Incident Limit, reasonable and necessary expenses include:

a.  Funeral expenses. The most we will pay for funeral expenses is $10,000 for any one funeral.

b.  We will pay two-thirds of the "wage loss" incurred by a person who sustains "serious bodily injury," a person held in a "hostage situation," or their "caregiver" for up to 30 days after the "violent incident" and up to a maximum limit of $2,500. In the event that another policy, program or plan pays a portion of the "wage loss" but less than two-thirds of the "wage loss" then we will pay the difference between that portion and two-thirds of the "wage loss."

    (1) Proof of "wage loss" must be provided in writing by the employer of the person sustaining the "wage loss." If a person to whom coverage applies under this endorsement is self-employed, then such person must provide tax returns and other necessary records to document their "wage loss."

c.  The cost of an independent public relations consultant for up to 30 days after a "violent incident."

d.  Independent security services for up to 15 days after a "violent incident."

e.  Group counseling services for your members for up to 30 days after a "violent incident."

f.  "Wages" of temporary staff hired to replace employees who have sustained "serious bodily injury" during a "violent incident." "Wages" shall not be more than the "wages" received by the employee being replaced. Coverage shall end 30 days after the date the "violent incident" occurred.

g.  Rental of an equivalent alternate facility for up to 30 days after the "violent incident."

h.  Group counseling services for your members for up to 7 days before and/or 7 days after the first anniversary date of a "violent incident."

i.  Security services and independent public relations consultant for up to 7 days before and/or 7 days after the first anniversary date of a "violent incident."

 Copyright, Church Mutual Insurance Company, 2001

## C. LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Schedule of this Endorsement or on the Declarations Page and the rules below fix the most we will pay.

2. The Violent Incident Aggregate Limit is the most we will pay for the sum of all covered expenses arising out of all "violent incidents."

3. Subject to 2. above, the Each Violent Incident Limit is the most we will pay for the sum of all covered expenses arising out of any one "violent incident."

4. Subject to 3. above, the Per Person Limit is the most we will pay any one person for the sum of all covered expenses arising out of a "violent incident."

5. The Limits of Insurance shown in the Schedule of this Endorsement for Each Violent Incident (or on the Declarations Page for Each Violent Incident) are the most that we will pay for the sum of all covered expenses that arise out of a violent incident, regardless of:

   a. The number of perpetrators;

   b. The number of people sustaining "serious bodily injury," or held in a "hostage situation;"

   c. The period of time over which the "violent incident" occurs; or

   d. The number of policy periods over which the "violent incident" occurs. If the "violent incident" occurs over more than one policy period, the limits of Insurance applicable when the "violent Incident" first began will apply.

## D. CATASTROPHIC VIOLENCE RESPONSE COVERAGE CONDITIONS

1. The payment of covered expenses under this endorsement is not an admission of liability under other coverages of this policy.

2. Duties in the event of a "violent incident."

   a. You must see to it that we are notified as soon as practicable of any "violent incident" that may result in a claim. To the extent possible, notice should include:

      (1) How, when, and where the "violent incident" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature of the injury arising out of the "violent incident."

   b. No insured will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our prior approval.

3. Other Insurance

   If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

   a. Primary Insurance

      This insurance is primary for all covered expenses except medical expenses. When this insurance is primary, our obligations are not affected unless any other insurers' insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

   b. Excess Insurance

      This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis for medical expenses.

      When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

      (1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

      (2) The total of all deductible and self-insured amounts under all that other insurance.

      We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this Endorsement or on the Declarations Page.

   c. Method of Sharing

      If all the other insurance permits contribution by equal shares, we will follow

this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

4. Transfer of Rights of Recovery Against Others To Us.

If the insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us to enforce them.

## E. DEFINITIONS

1. "Auto" means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment.

2. "Caregiver" means "child," "spouse," or "parent" for the purpose of this coverage.

3. "Child" means a natural, adopted, or foster child, a stepchild, or a legal ward.

4. "Disruptive behavior" means any altercation or dispute that would not cause a reasonable adult to conclude that he or she was in immediate danger of "serious bodily injury." It includes, but is not limited to, behavior that disturbs, interferes with, or prevents your normal activities, such as: fistfights, brawling, punching, hitting, slapping, kicking, biting, choking, yelling, using profanity, bullying, or pranks.

5. "Hostage situation" means persons are held captive and restrained by someone who threatens to inflict "serious bodily injury" and the circumstances of the threat cause a reasonable adult to conclude the captives are at risk of "serious bodily injury."

6. "Organized activities" means only activities sponsored by you.

7. "Parent" means a natural parent, foster parent, adoptive parent, stepparent, or legal guardian.

8. "Serious bodily injury" means death or bodily injury that creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any significant bodily member or organ. "Serious bodily injury" does not include emotional or mental injury.

9. "Sexual misconduct or sexual molestation" is any activity which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

10. "Spouse" means a legal husband or wife.

11. "Violent incident" is limited to a catastrophic event that:

    a. Is caused by an intentional criminal act or a series of related intentional criminal acts; and

    b. Results in two or more persons [not including the perpetrator(s)] sustaining "serious bodily injury" or being held in a "hostage situation."

It does not include "disruptive behavior."

A "violent incident" starts when the first act or series of acts begins. It ends when the act is concluded, when the last in a series of acts is concluded, or when the premises have been secured by proper civil authority, whichever is earliest.

12. "Wage loss" means loss of actual gross income, but only to the extent that such income was being paid on the date that "serious bodily injury" caused by a "violent incident" occurred. "Wage loss" does not include potential income that may have been received from overtime hours, on-call pay or similar types of compensation. "Wage loss" also does not include compensation for paid sick leave, short-term disability days, long-term disability days, or family leave that was used as a result of the "serious bodily injury."

13. "Wages" means compensation you pay an employee, including the cost of health, welfare and pension benefits.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOUISIANA CHANGES · · · ·

This endorsement modifies insurance provided under the following:

### LEGAL DEFENSE COVERAGE FORM

The following is added to A 253, Legal Defense Coverage Form, Item F.8., Arbitration:

Arbitration is not binding on and is at the option of the insured.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ⸱LOUISIANA CHANGES ⸱ ⸱ ⸱   ⸱⸱⸱ ⸱⸱  ⸱⸱ ⸱ ⸱⸱

This endorsement modifies insurance provided under the General Liability Coverage Part:

### GENERAL LIABILITY CONDITIONS

With regard to Bodily Injury and Property Damage Liability, any provision of this Coverage Part requiring you to give notice of "occurrence," offense, claim or "suit" or forward demands, notices, summonses or legal papers in connection with a claim or "suit," will not bar liability under this Coverage Part, unless we are prejudiced by your failure to comply with the requirement,

### LIMITS OF INSURANCE

Item 7.b. under G., Limits of Insurance, is deleted.

Copyright, Church Mutual Insurance Company, 2001.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOUISIANA CHANGES

This endorsement modifies insurance provided under the following:

### LEGAL DEFENSE COVERAGE FORM

Under G., Definitions, 5., the first sentence of the definition of "Defensible Incident" is amended to read:

"Defensible Incident" means any claim and/or suit asserted against the insured arising out of any alleged acts, omissions, or failures of the insured.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### LOUISIANA CHANGES - PREMIUM AUDIT CONDITION · · ·

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph 5.b. of Section H - **GENERAL LIABILITY CONDITIONS** is replaced by the following:

5. Premium Audit

    b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

Copyright, Church Mutual Insurance Company, 2002.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 2001.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ·· LOUISIANA CHANGES - POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

### GENERAL LIABILITY COVERAGE PART

A. Paragraph g. under Paragraph 2. Exclusions is replaced by the following:

g. (1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants":

(a) At or from any premises, site, or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(1) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor, or soot from equipment used to heat that building;

(2) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site, or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site, or location and such premises, site, or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(3) "Bodily injury" or "property damage" arising out of heat, smoke, or fumes from a "hostile fire";

(b) At or from any premises, site, or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing, or treatment of waste;

(c) Which are or were at any time

transported, handled, stored, treated, disposed of, or processed as waste by or for:

(1) Any insured; or

(2) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site, or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site, or location in connection with such operations by such insured, contractor, or subcontractor. However, this subparagraph does not apply to:

(1) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic, or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal, or release of the fuels, lubricants, or other operating fluids, or if such fuels, lubricants, or other operating fluids are brought on or to the premises, site, or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by such insured, contractor, or subcontractor;

Copyright, Church Mutual Insurance Company, 2002
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 2001.

(2) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes, or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(3) "Bodily injury" or "property damage" arising out of heat, smoke, or fumes from a "hostile fire."

(e) At or from any premises, site, or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants."

(2) Any loss, cost, or expense arising out of any:

(a) Request, demand, order, or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order, or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

B. The following are added to Paragraph 1. - DEFINITIONS:

1. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

2. "Pollutants" mean any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

Copyright, Church Mutual Insurance Company, 2002.
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 2001

# CRIME COVERAGE PART
# TABLE OF CONTENTS

Some of the Coverage Forms listed in this table of contents may not apply to your policy.  Refer to the Declarations Page to determine which Coverage Forms apply.

## Crime Conditions Form - Form No. A 300

| | Page No. | | Page No. |
|---|---|---|---|
| Discovery Period For Loss | 1 | Non-Cumulation of Limit of | |
| Duties in the Event of Loss | 1 | Insurance | 2 |
| Joint Insured | 1 | Other Insurance | 2 |
| Legal Action Against Us | 1 | Policy Period | 2 |
| Loss Covered Under More Than | | Records | 2 |
| One Coverage of This Policy | 1 | Recoveries | 2 |
| Coverage Territory | 1 | Transfer of Your Rights of | |
| Loss Covered Under This Insurance | | Recovery Against Others To Us | 2 |
| and Prior Insurance Issued By Us | | Privilege to Adjust With Owner | 2 |
| or Any Affiliate | 1 | | |

## Church Theft of Property Coverage Form - Form No. A 301

| | Page No. | | Page No. |
|---|---|---|---|
| Coverage | 1 | Deductible | 2 |
| Property Not Covered | 1 | Coverage Extensions | 2 |
| Property Limitation | 1 | Loss Conditions | 3 |
| Exclusions | 1 | Optional Coverages | 3 |
| Limits of Insurance | 2 | Definitions | 3 |

## Church Theft of Money and Securities Coverage Form - Form No. A 302

| | Page No. | | Page No. |
|---|---|---|---|
| Coverage | 1 | Coverage Extensions | 2 |
| Exclusions | 1 | Loss Condition | 2 |
| Limits of Insurance | 2 | Definitions | 3 |
| Deductible | 2 | | |

## Schedule Bond Coverage Form - Form No. A 308

| | Page No. | | Page No. |
|---|---|---|---|
| Coverage | 1 | Coverage Extensions | 3 |
| Exclusions | 1 | Loss Condition | 2 |
| Deductible | 2 | Definitions | 3 |
| Limit of Insurance | 1 | | |

## Blanket Bond Coverage Form - Form No. A 309

| | Page No. | | Page No. |
|---|---|---|---|
| Coverage | 1 | Conditions | 1 |
| Exclusions | 1 | Coverage Extensions | 3 |
| Limit of Insurance | 1 | Definitions | 3 |
| Deductible | 1 | | |

 Copyright, Church Mutual Insurance Company, 1998.

# CRIME CONDITIONS FORM

This Crime Coverage Part is subject to the Common Policy Conditions, any other Conditions in any Crime Coverage Forms, and the following Conditions.

## A. DISCOVERY PERIOD FOR LOSS

We will pay only for covered loss discovered no later than one year from the end of the policy period.

## B. DUTIES IN THE EVENT OF LOSS

After you discover a loss or a situation that may result in loss of Covered Property, you must:

1. Notify us as soon as possible;

2. Submit to examination under oath at our request and give us a signed statement of your answers;

3. Give us a detailed, sworn proof of loss within 120 days;

4. Cooperate with us in the investigation and settlement of any claim;

5. Notify the police if you have reason to believe that any loss of, or loss from damage to, Covered Property involves a violation of law.

## C. JOINT INSURED

1. If more than one insured is named in the Declarations Page, the first Named Insured will act for itself and for every other insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

2. If any insured or partner or officer of that insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every insured.

3. An employee of any insured is considered to be an employee of every insured.

4. If this insurance or any of its coverages is cancelled or terminated as to any insured, loss sustained by that insured is covered only if discovered no later than one year from the date of that cancellation or termination.

5. We will not pay more for loss sustained by

more than one insured than the amount we would pay if all the loss had been sustained by one insured.

## D. LEGAL ACTION AGAINST US

1. You may not bring any legal action against us involving loss:

   a. Unless you have complied with all the terms of this insurance; and

   b. Until 90 days after you have filed proof of loss with us; and

   c. Unless brought within 2 years from the date you discover the loss.

## E. LOSS COVERED UNDER MORE THAN ONE COVERAGE OF THIS POLICY

1. If two or more coverages of the policy apply to the same loss, we will pay the lesser of:

   a. The actual amount of loss; or

   b. The sum of the Limits of Insurance applicable to those coverages.

## F. COVERAGE TERRITORY

1. The coverage territory is:

   a. The United States of America;

   b. Puerto Rico; or

   c. Canada.

## G. LOSS COVERED UNDER THIS INSURANCE AND PRIOR INSURANCE ISSUED BY US OR ANY AFFILIATE

1. If any loss is covered:

   a. Partly by this insurance; and

   b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

Copyright, Church Mutual Insurance Company, 1987
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1987

the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

## H. NON-CUMULATION OF LIMIT OF INSURANCE

Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

## I. OTHER INSURANCE

This insurance does not apply to loss recoverable or recovered under other insurance or indemnity.

## J. POLICY PERIOD

1. The Policy Period is shown in the Declarations Page.

2. We will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

## K. RECORDS

You must keep records of all Covered Property so we can verify the amount of any loss.

## L. RECOVERIES

1. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

   a. To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the deductible amount, if any;

   b. Then to us, until we are reimbursed for the settlement made;

   c. Then to you, until you are reimbursed for that part of the loss equal to the deductible amount, if any.

2. Recoveries do not include any recovery:

   a. From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

   b. Of original "securities" after duplicates of them have been issued.

## M. TRANSFER OF YOUR RIGHTS OF RECOVERY AGAINST OTHERS TO US

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

## N. PRIVILEGE TO ADJUST WITH OWNER

In the event of covered loss involving property of others, we have the right to:

1. Settle the loss with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2. Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

Copyright, Church Mutual Insurance Company, 1987
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1987.

# CHURCH THEFT OF MONEY AND SECURITIES COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights,. duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we", "us" and "our" refer to Church Mutual Insurance Company.

The word "insured" means the Named Insured shown in the Declarations Page.

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph G - Definitions.**

## A. COVERAGE

1. We will pay for loss of your Covered Property resulting directly from any Covered Cause of Loss when the Covered Property:

   a. Is at the "church premises";

   b. Is in the temporary (not to exceed 30 days) care or custody of a person authorized by you; or

   c. Is in a night depository at a "banking premises".

2. Covered Property, as used in this Coverage Form, means your "money" and "securities" for which a Limit of Insurance is shown in the Declarations Page.

3. Covered Cause of Loss, as used in this Coverage Form, means:

   a. "Theft";

   b. Disappearance; or

   c. Destruction.

## B. EXCLUSIONS

This insurance does not cover:

1. Loss resulting from seizure or destruction of property by order of governmental authority.

2. Loss that is an indirect result of any act or "occurrence" covered by this insurance, including but not limited to loss resulting from:

   a. Your inability to realize income that you would have realized had there been no loss of Covered Property.

   b. Payment of damages of any type for which you are legally liable. But, we will pay

direct compensatory damages arising from a loss covered under this insurance.

   c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

3. Expenses related to any legal action.

4. Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

5. Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

6. Loss resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or authorized representatives:

   a. Acting alone or in collusion with other persons; or

   b. While performing services for you or otherwise.

7. Loss resulting from accounting or arithmetical errors or omissions.

8. Loss of Covered Property after it has been transferred or surrendered to a person or place outside the "church premises":

   a. On the basis of unauthorized instructions; or

   b. As a result of a threat to do:

      (1) Bodily harm to any person; or

      (2) Damage to any property.

   c. But, this exclusion does not apply to loss

  Copyright, Church Mutual Insurance Company, 1989
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1986.

of Covered Property while:

(1) Outside the "church premises"; and

(2) In the care and custody of a person authorized by you if you:

    (a) Had no knowledge of any threat at the time the conveyance began; or

    (b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

9. Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

10. Loss of the contents of any alms box or poor box.

11. Loss resulting from theft of any checks:

    a. That are made payable to you,

    b. For which a stop payment order can be made, and

    c. That can be reissued by the drawer.

## C. LIMITS OF INSURANCE

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations Page.

## D. DEDUCTIBLE

1. We will not pay for loss in any one occurrence until the amount of loss exceeds the deductible shown in the Declarations Page. We will then pay the amount of loss in excess of the deductible, up to the applicable Limit of Insurance.

2. Subject to 1. above, when two Coverage Forms of this policy apply to any one occurrence, we will apply the deductibles of those Coverage Forms as follows:

    a. If the Coverage Forms have the same deductible amounts, we will apply only one deductible to the occurrence.

    b. If the Coverage Forms have different deductible amounts, we will:

(1) Apply the deductible of the Coverage Form with the lowest deductible to that part of the loss covered by the Coverage Form; and will then

(2) Reduce the deductible of the Coverage Form with the higher deductible by the amount actually applied under (1) above; and will then

(3) Apply the reduced deductible to that part of the loss covered by the Coverage Form containing the higher deductible.

## E. COVERAGE EXTENSIONS

Each of the following Coverage Extensions are additional insurance unless otherwise indicated.

1. Special Coverage Days - Money and Securities.

    a. If a Special Coverage Day is shown in the Declarations Page, the Limit of Insurance shown in the Declarations Page for "money" and "securities" is doubled beginning at 12:01 a.m., seven days before each Special Coverage Day until 12:00 midnight, seven days after each Special Coverage Day.

    b. You may not apply this Coverage Extension beyond the expiration date of this policy.

2. Additional Premises.

    a. If you acquire the use and control of any additional "church premises", any insurance afforded for your "church premises" also applies to those additional premises, but only if you:

(1) Serve us notice within 30 days thereafter; and

(2) Pay us any additional premium that may be due.

This is not an additional amount of insurance.

## F. LOSS CONDITION

The following Condition applies in addition to the Common Policy Conditions and Crime Conditions.

1. Subject to the applicable Limit of Insurance,

A 302 (5-89)

Copyright, Church Mutual Insurance Company, 1989.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1989.

Page 2 of 4

we will pay for:

a. Loss of "money" for not more than its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

   (1) At face value in the "money" issued by that country; or

   (2) In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

b. Loss of "securities" for not more than their value at the close of business on the day the loss was discovered. We may, at our option:

   (1) Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities";

   (2) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

     (a) Value of the "securities" at the close of business on the day the loss was discovered; or

     (b) Limit of Insurance.

2. Any property that we pay for or replace under 1. above becomes our property.

## G. DEFINITIONS

1. "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

2. a. "Church premises" means the church at the location described in the Declarations Page and includes that part of any other building or location that is related to that location and owned by or leased to you or used by you for:

   (1) Religious services;

(2) Religious education;

(3) Kindergarten, elementary or high school education;

(4) Dwelling or living quarters; or

(5) Social or recreational activities,

and also includes the premises within 100 feet of those buildings.

b. "Church premises" does not mean that part of any building or its premises used by you for:

   (1) College, seminary or vocational education purposes;

   (2) Mercantile purposes; or

   (3) Camp purposes.

3. "Employee" means:

a. Any natural person:

   (1) While in your service (and for 30 days after termination of service); and

   (2) Whom you compensate directly by salary, wages or commissions; or

   (3) Whom you have the right to direct and control while performing services for you.

b. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the "premises".

But, "employee" does not mean any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character.

4. "Money" means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

Copyright, Church Mutual Insurance Company, 1989.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1969.

5. "Occurrence" means all loss whether:

   a. Caused by one or more persons; or

   b. Involving a single act or series of related acts.

6. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

   a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you, but does not include "money".

7. "Theft" means any act of stealing.

Copyright, Church Mutual Insurance Company, 1989.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1989

# PROFESSIONAL LIABILITY COVERAGE PART
# TABLE OF CONTENTS

. ...  .

Some of the Coverage Forms listed in this table of contents may not apply to your policy.  Refer to the Declarations Page to determine which Coverage Forms apply.

### Counseling Professional Liability - Form No. A 500

| | Page No. | | Page No. |
|---|---|---|---|
| Counseling Professional Liability | | Limits of Insurance | 2 |
| Coverage | 1 | Counseling Professional Liability | |
| Supplementary Payments | 2 | Conditions | 3 |
| Who Is An Insured | 2 | Definitions | 4 |

### Counseling Professional Liability - Form No. A 501 (Claims Made)

| | Page No. | | Page No. |
|---|---|---|---|
| Counseling Professional Liability | | Counseling Professional Liability | |
| Coverage | 1 | Conditions | 3 |
| Supplementary Payments | 2 | Extended Reporting Periods | 5 |
| Who Is An Insured | 2 | Definitions | 5 |
| Limits of Insurance | 3 | | |

### Health Care Facility Professional Liability - Form No. A 502

| | Page No. | | Page No. |
|---|---|---|---|
| Health Care Facility Professional | | Health Care Facility Professional | |
| Liability Coverage | 1 | Liability Conditions | 3 |
| Supplementary Payments | 2 | Definitions | 5 |
| Who Is An Insured | 2 | | |
| Limits of Insurance | 3 | | |

### Heath Care Facility Professional Liability - Form No. A 503 (Claims Made)

| | Page No. | | Page No. |
|---|---|---|---|
| Health Care Facility Professional | | Health Care Facility Professional | |
| Liability Coverage | 1 | Liability Conditions | 3 |
| Supplementary Payments | 2 | Extended Reporting Period | 6 |
| Who Is An Insured | 2 | Definitions | 6 |
| Limits of Insurance | 3 | | |

### Employee Benefits Liability - Form No. A 504 (Claims Made)

| | Page No. | | Page No. |
|---|---|---|---|
| Employee Benefits Liability | | Limits of Insurance | 3 |
| Coverage | 1 | Employee Benefits Liability | |
| Deductible | 2 | Conditions | 3 |
| Supplementary Payments | 2 | Extended Reporting Periods | 5 |
| Who Is An Insured | 2 | Definitions | 6 |

### Directors, Officers and Trustees Liability - Form No. A 505 (Claims Made)

|  | Page No. |  | Page No. |
|---|---|---|---|
| Directors, Officers and Trustees |  | Directors, Officers and Trustees |  |
| Liability Coverage | 1 | Liability Conditions | 4 |
| Retention | 3 | Extended Reporting Periods | 6 |
| Supplementary Payments | 3 | Definitions | 7 |
| Who Is An Insured | 3 |  |  |
| Limits of Insurance | 3 |  |  |

### Employment Practices Liability - Form No. A 520 (Claims Made)

|  | Page No. |  | Page No. |
|---|---|---|---|
| Employment Practices Liability |  | Limits of Insurance | 3 |
| Coverage | 1 | Employment Practices Liability |  |
| Retention | 3 | Conditions | 4 |
| Supplementary Payments | 3 | Extended Reporting Periods | 6 |
| Who Is An Insured | 3 | Definitions | 7 |

Copyright, Church Mutual Insurance Company, 1996.

# COUNSELING PROFESSIONAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we," "us," and "our" refer to Church Mutual Insurance Company.

The word "insured" means any person or organization qualifying as an insured. **Refer to Paragraph C - Who Is An Insured.**

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph F - Definitions.**

## A. COUNSELING PROFESSIONAL LIABILITY COVERAGE

1. Insuring Agreement.

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of injury to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for injury to which this insurance does not apply. We may, at our discretion, investigate any "counseling incident" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited. **Refer to Paragraph D - Limits of Insurance;** and

      (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Counseling Professional Liability Coverage.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   b. This insurance applies to injury only if:

      (1) The injury is caused by a "counseling incident" that takes place in the "coverage territory;" and

      (2) The "counseling incident" occurs during the policy period.

2. Exclusions.

   This insurance does not apply to:

   a. Liability for damages assumed under any contract or agreement. But, this Exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

   b. "Bodily injury" to:

      (1) An employee of the insured arising out of and in the course of employment by the insured; or

      (2) The spouse, child, parent, brother, or sister of that employee as a consequence of (1) above.

   This Exclusion applies:

      (1) Whether the insured may be liable as an employer or in any other capacity; and

      (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   c. Any obligation of the insured under a workers' compensation, disability benefits, or unemployment compensation law, or any similar law.

   d. Injury arising out of furnishing or failing to furnish any professional service (other than counseling) including:

      (1) Medical;

      (2) Radiological;

      (3) Surgical;

      (4) Dental;

      (5) Nursing; or

      (6) Pharmacological;

   services or supplies.

   e. Injury arising out of the commitment of a person to an institution.

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

f.  Injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto," or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

g.  Injury arising out of your acts or omissions as a member of a formal accreditation board, committee or similar body.

h.  Injury arising out of the willful violation of a penal statute or ordinance.

i.  Injury arising out of any actual or alleged act of "sexual misconduct or sexual molestation," including damages on account of any negligent hiring or transfer of, failure to supervise, or failure to dismiss any employee or volunteer worker alleged to have committed any act of "sexual misconduct or sexual molestation."

j.  Any dishonest, fraudulent, or criminal acts or omissions.

k.  Any claim for exemplary or punitive damages.

## B. SUPPLEMENTARY PAYMENTS - COUNSELING PROFESSIONAL LIABILITY COVERAGE

1.  We will pay, with respect to any claim or "suit" we defend:

    a.  All expenses we incur.

    b.  The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. We do not have to furnish these bonds.

    c.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

    d.  All costs taxed against the insured in the "suit." For the purpose of this provision, costs do not include prejudgement interest or post judgement interest.

    e.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    f.  All interest on the full amount of any judgment that accrues after entry of the judgment and

before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable Limit of Insurance.

These payments will not reduce the Limits of Insurance.

## C. WHO IS AN INSURED

1.  Each of the following is an insured:

    a.  You are an insured.

    b.  If you are designated in the Declarations Page as a partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to your furnishing of counseling services.

    c.  If you are designated in the Declarations Page as other than a partnership or joint venture, your executive officers, stockholders, directors, trustees, officials, elders, and vestry members are insureds, but only with respect to their duties as such.

    d.  Any person occupying a position shown in the applicable Schedule of Positions in the Declarations Page is an insured.

2.  No person or organization included under a., b., or c. above is an insured for acts or omissions in the furnishing of counseling services unless the claim for damages arises out of acts or omissions of a person occupying, or who has occupied, a position shown in the applicable Schedule of Positions in the Declarations Page, but in no event is a psychologist, psychiatrist, or clinical social worker an insured.

## D. LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

    a.  insureds;

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits."

2.  The Counseling Professional Liability Aggregate Limit is the most we will pay for all damages because of injury included under this Counseling Professional Liability Coverage.

 Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1995.

3. Subject to 2. above, the Counseling Professional Liability Each Claim Limit is the most we will pay for all damages because of injury sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## E. COUNSELING PROFESSIONAL LIABILITY CONDITIONS

1. Bankruptcy.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties in the Event of Any "Counseling Incident," Claim, or "Suit."

   a. You must see to it that we are notified as soon as practicable of any "counseling incident" which may result in a claim. To the extent possible, notice should include:

      (1) How, when, and where the "counseling incident" took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature of the injury arising out of the "counseling incident."

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received;

      (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. Legal Action Against Us.

No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance.

If other valid and collectible insurance is available to the insured for a loss we cover under the Counseling Professional Liability Coverage of this Coverage Part, our obligations are limited as follows:

   a. Primary Insurance.

      This insurance is primary. When this insurance is primary, our obligations are not affected unless any other insurers' insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

Copyright, Church Mutual Insurance Company, 1998.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995.

b. Method of Sharing.

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable Limit of Insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable Limit of Insurance to the total applicable Limits of Insurance of all insurers.

5. Premium Audit.

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium for this Coverage is a deposit premium only. At the close of each audit period, we may compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the deposit and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

6. Representations.

By accepting the policy, you agree:

a. The statements in the Declarations Page are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representation.

7. Separation of Insureds.

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, when this insurance applies, it applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. Limitation of Coverage.

If this Coverage Form is part of a policy which has other liability insurance, that other liability insurance does not apply to any injury caused by any "counseling incident" covered by this Coverage Form.

10. When We Do Not Renew.

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations Page written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

F. DEFINITIONS

1. "Auto" means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment.

2. "Bodily injury" means bodily injury, sickness, or disease sustained by a person including death resulting from any of these at any time.

3. "Counseling incident" means any act or omission in the furnishing of counseling services. Any such act or omission, together with all related acts or omissions in the furnishing of such services to any one person, shall be considered one claim subject to the Each Claim Limit of Insurance in force at the time the first "counseling incident" covered by this policy occurred.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico, and Canada;

b. International waters or airspace, provided the injury does not occur in the course of travel or transportation to or from any place not included in a. above; or

Copyright, Church Mutual Insurance Company, 1998
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1995

c. All parts of the world if:

   (1) The injury arises out of the counseling activities of a person whose home. is. in. .... . the territory described in a. above, but is away for a short time on your business; and

   (2) The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft, or "auto";

   b. While it is in or on an aircraft, watercraft, or "auto"; or

   c. While it is being moved from an aircraft, watercraft, or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft, or "auto."

6. "Sexual Misconduct or Sexual Molestation" is any activity which is sexual in nature whether permitted or unpermitted, including but not limited to, sexual assault, sexual battery, sexual relations, sexual acts, sexual activity, sexual handling, sexual massage, sexual exploitation, sexual exhibition, photographic, video or other reproduction of sexual activity, sexual stimulation, fondling, intimacy, exposure of sexual organs, lewd or lascivious behavior or indecent exposure, fornication, undue familiarity, or unauthorized touching.

7. "Suit" means a civil proceeding in which damages because of injury to which this insurance applies is alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

Copyright, Church Mutual Insurance Company, 1998
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1985.

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## . LOUISIANA CHANGES - INSURING AGREEMENT · .... . .. .

This endorsement modifies insurance provided under the following  to the extent any of these coverages are applicable under your policy:

**PROFESSIONAL LIABILITY COVERAGE PART**
**DIRECTORS, OFFICERS AND TRUSTEES LIABILITY COVERAGE**
**EMPLOYMENT PRACTICES LIABILITY COVERAGE**

The following sentence is deleted from 1., Insuring Agreement: "However, we will have no duty to defend the insured against any 'suit' seeking damages for injury to which this insurance does not apply."

The word Retention is deleted and replaced with Deductible.

# HIRED AND NONOWNED AUTOMOBILE
# LIABILITY COVERAGE PART
# TABLE OF CONTENTS

Some of the Coverage Forms listed In this table of contents may not apply to your policy. Refer to the Declarations Page to determine which Coverage Forms apply.

### Hired and Nonowned Automobile Liability Coverage
### Religious Institutions - Excess Insurance
### Form No. A 600

| | Page No. | | Page No. |
|---|---|---|---|
| Hired and Nonowned Automobile | | Who Is An Insured | 3 |
| Liability Coverage | 1 | Limits of Insurance | 3 |
| Supplementary Payments | 3 | Conditions | 4 |
| | | Definitions | 5 |

### Hired and Nonowned Liability Coverage
### Excess Insurance
### Form No. A 601

| | Page No. | | Page No, |
|---|---|---|---|
| Hired and Nonowned Automobile | | Who Is An Insured | 3 |
| Liability Coverage | 1 | Limits of Insurance | 3 |
| Supplementary Payments | 3 | Conditions | 4 |
| | | Definitions | 6 |

Copyright, Church Mutual Insurance Company, 1998

# HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE EXCESS INSURANCE

# RELIGIOUS INSTITUTIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations Page. The words "we," "us," and "our" refer to Church Mutual Insurance Company.

The word "insured" means any person or organization qualifying as an insured. **Refer to Paragraph C - Who Is An Insured.**

Other words and phrases that appear in quotation marks have special meaning. **Refer to Paragraph F - Definitions.**

## A. HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGE

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

       (1) The amount we will pay for damages is limited. **Refer to Paragraph D - Limits of Insurance;** and

       (2) Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Hired and Nonowned Automobile Liability Coverage.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

    b. This insurance applies to "bodily injury" and "property damage" only if:

       (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

       (2) The "bodily injury" or "property damage" occurs during the policy period; and

       (3) The "bodily injury" or "property damage" arises out of the maintenance or use of an "automobile" that is a "hired automobile" or "nonowned automobile."

    c. Damages because of "bodily injury" include damages by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. Exclusions.

    This insurance does not apply to:

    a. (1) With respect to any "hired automobile":

       (a) To the owner of the "hired automobile";

       (b) To the lessee (of whom the Named Insured is a sublessee) of a "hired automobile"; or

       (c) To any agent or employee of such owner or lessee other than the Named Insured.

    b. "Bodily injury" by any person engaged in the business of his or her employer to any co-employee of such person injured in the course of employment.

Copyright, Church Mutual Insurance Company, 1996
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

c. Physical damage to the "hired automobile" or the "nonowned automobile."

d. Any "automobile" owned by or leased to the Named Insured for which we are providing primary insurance.

e. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants":

(1) That are, or that are contained in any property that is:

(a) Being transported or towed by, handled, or handled for movement into, onto or from, the covered "hired automobile" or "nonowned automobile";

(b) Otherwise in the course of transit by or on behalf of the insured; or

(c) Being stored, disposed of, treated, or processed in or upon the covered "hired automobile" or "nonowned automobile."

(2) Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the insured for movement into or onto the covered "hired automobile" or "nonowned automobile"; or

(3) After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "hired automobile" or "nonowned automobile" to the place where they are finally delivered, disposed of, or abandoned by the insured.

Paragraph (1) above does not apply to fuels, lubricants, fluids, exhaust gases, or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the covered "hired automobile" or "nonowned automobile" or its parts, if:

(a) The "pollutants" escape, seep, migrate, or are discharged, dispersed, or released directly from an "automobile" part designed by its manufacturer to

hold, store, receive, or dispose of such "pollutants"; and

(b) The "bodily injury" or "property damage" does not arise out of the operation of any equipment listed in paragraphs f.(2) and f.(3) of the definition of "mobile equipment."

Paragraphs (2) and (3) above of this exclusion do not apply to accidents that occur away from premises owned by or rented to an insured with respect to "pollutants" not in or upon a covered "hired automobile" or "nonowned automobile" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned, or damaged as a result of the maintenance or use of a covered "hired automobile" or "nonowned automobile"; and

(b) The discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused directly by such upset, overturn, or damage.

f. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

g. "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

h. "Property damage" to:

(1) Property owned or being transported by the insured; or

(2) Property rented to or in the care, custody, or control of the insured, or as to which the insured is for any purpose exercising physical control.

i. Any obligation of the insured under a workers' compensation, disability benefits, or unemployment compensation law, or any similar law.

Copyright, Church Mutual Insurance Company, 1998
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1994

j.   "Bodily injury" to:

   (1)  An employee of the insured arising out
        of and in the course of employment by . . . .
        the insured; or

   (2)  The spouse, child, parent, brother, or
        sister of that employee as a
        consequence of (1) above.

   This exclusion applies:

   (1)  Whether the insured may be liable as
        an employer or in any other capacity;
        and

   (2)  To any obligation to share damages
        with or repay someone else who must
        pay damages because of the injury.

   This exclusion does not apply to "bodily
   injury" arising out of and in the course of
   domestic employment by the insured
   unless benefits for such injury are in whole
   or in part either payable or required to be
   provided under any workers' compensation
   law.

k.   "Bodily Injury" or "property damage" arising
     out of any actual or alleged act of sexual
     misconduct or sexual molestation.

## B.  SUPPLEMENTARY PAYMENTS - HIRED AND NONOWNED AUTOMOBILE LIABILITY COVERAGES

1.   We will pay, with respect to any claim or "suit"
     we defend:

   a.   All expenses we incur.

   b.   The cost of bonds to release attachments,
        but only for bond amounts within the
        applicable Limit of Insurance.  We do not
        have to furnish these bonds.

   c.   All reasonable expenses incurred by the
        insured at our request to assist us in the
        investigation or defense of the claim or
        "suit," including actual loss of earnings up
        to $250 a day because of time off from
        work.

   d.   All costs taxed against the insured in the
        "suit."  For the purpose of this provision,
        costs do not include prejudgement interest
        or post judgement interest.

   e.   Prejudgment interest awarded against the
        insured on that part of the judgment we

pay.  If we make an offer to pay the
applicable Limit of Insurance, we will not
pay any prejudgment interest based on that
period of time after the offer.

   f.   All interest on the full amount of any
        judgment that accrues after entry of the
        judgment and before we have paid, offered
        to pay, or deposited in court the part of the
        judgment that is within the applicable Limit
        of Insurance.

These payments will not reduce the Limits of
Insurance.

## C.  WHO IS AN INSURED

1.   Each of the following is an insured under this
     insurance to the extent set forth below:

   a.   You are an insured.

   b.   Any of your officers, clergy, or employees
        are insureds, but only with respect to their
        duties as such.

   c.   Any person who is a "volunteer" for you is
        an insured, but only while using an
        "automobile" with your express knowledge
        and authorization, in the course of your
        business, and within the scope of their
        duties for you.

   d.   Any person while using a "hired
        automobile" is an insured (except while
        using an "automobile" owned by such
        person) provided the actual use of the
        "automobile" is with your permission.

## D.  LIMITS OF INSURANCE

1.   The Limits of Insurance shown in the
     Declarations Page and the rules below fix the
     most we will pay regardless of the number of:

   a.   Insureds;

   b.   Claims made or "suits" brought; or

   c.   Persons or organizations making claims or
        bringing "suits."

2.   The Aggregate Limit is the most we will pay for
     the sum of all damages under Hired and
     Nonowned Automobile Liability Coverage.

3.   Subject to 2. above, the Each Occurrence Limit
     is the most we will pay for the sum of damages
     under Hired and Nonowned Automobile Liability
     Coverage because of all "bodily injury" and

"property damage" arising out of any one "occurrence."

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## E. CONDITIONS

1. Bankruptcy.

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties in the Event of "Occurrence," Claim, or "Suit."

   a. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim. To the extent possible, notice should include:

      (1) How, when, and where the "occurrence" took place;

      (2) The names and addresses of any injured persons and witnesses;

      (3) The nature and location of any injury or damage arising out of the "occurrence."

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us.

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable Limit of Insurance. An agreed settlement means a settlement and release of liability signed by us, the insured, and the claimant or the claimant's legal representative.

4. Other Insurance.

   a. If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

      (1) This insurance is excess over any of the other insurance, whether primary, excess, contingent, or on any other basis. We will have no duty under this Coverage Part to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Copyright, Church Mutual Insurance Company, 1998
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1984

(2) We will pay only our share of the amount of loss, if any, that exceeds the sum of:

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations Page of this Coverage Part.

5. Premium Audit.

    a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    b. Premium for this Coverage is a deposit premium only. At the close of each audit period, we may compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the deposit and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

    c. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

6. Representations.

By accepting the policy, you agree:

    a. The statements in the Declarations Page are accurate and complete;

    b. Those statements are based upon representations you made to us; and

    c. We have issued this policy in reliance upon your representation.

7. Separation of Insureds.

Except with respect to the Limits of Insurance and any rights or duties specifically assigned in

this Coverage Part to the first Named Insured, this insurance applies:

    a. As if each Named Insured were the only Named Insured; and

    b. Separately to each insured against whom claim is made or "suit" is brought.

8. Transfer of Rights of Recovery Against Others to Us.

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. Two or More Coverages.

If two or more coverages of this policy apply to the same loss, the maximum amount we will pay as damages under all the coverages will not exceed the highest Limit of Insurance that applies to any one of the coverages.

10. Two or More Policies.

If two or more policies issued by us apply to the same insured and these policies also apply to the same loss, the maximum amount we will pay as damages under all the policies will not exceed the highest applicable Limit of Insurance that applies to any one of the policies.

This does not apply to any policy issued by us that is specifically written as excess insurance.

11. When We Do Not Renew.

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations Page written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

F. DEFINITIONS

    1. "Automobile" means a land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "automobile" does not include "mobile equipment."

Copyright, Church Mutual Insurance Company, 1998
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984

2. "Bodily injury" means bodily injury, sickness, or disease sustained by a person including death resulting from any of these at any time.

3. "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico, and Canada.

4. "Hired automobile" means any "automobile":

   a. Loaned to you;

   b. Leased or rented by you or your employee;

   c. Used under contract by you;

   in the course of your business.

   But, any "automobile" registered in the name of or owned by you, any of your officers, your clergy, your "volunteers," or your employees is not a "hired automobile."

5. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment.

   a. Bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads.

   b. Vehicles maintained for use solely on or next to premises you own or rent.

   c. Vehicles that travel on crawler treads.

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers, or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers, or rollers.

   e. Vehicles not described in a., b., c., or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers.

   f. Vehicles not described in a., b., c., or d. above maintained primarily for purposes other than the transportation of persons or cargo.

      However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "automobiles."

      (1) Equipment designed primarily for:

         (a) Snow removal.

         (b) Road maintenance, but not construction or resurfacing.

         (c) Street cleaning.

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well servicing equipment.

6. "Nonowned Automobile" means any "automobile" owned by or registered in the name of your officers, your clergy, your "volunteers" or your employees, provided at the time of the "occurrence":

   a. Such "automobile" is being used in the course of your business; and

   b. Such use is either by such owner or by any other person whose actual operation or (if that person is not operating) whose actual use thereof is with such owner's permission.

7. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

8. "Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

Copyright, Church Mutual Insurance Company, 1998
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

9. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that . . . . . . . . . property; or

   b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

10. "Suit" means a civil proceeding in which damages because of "bodily injury" and "property damage" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or . . . . . . . .

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

11. "Volunteer" means any person, other than your officers, clergy, or employees, while using an "automobile" with your express knowledge and authorization, in the course of your business, and within the scope of their duties for you.

Copyright, Church Mutual Insurance Company, 1998
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## HIRED AND NONOWNED AUTOMOBILE
## MEDICAL EXPENSE COVERAGE
## EXCESS INSURANCE

This endorsement modifies Insurance provided under the Hired and Nonowned Automobile Liability Coverage Part.

The following is added to the Hired and Nonowned Automobile Liability Coverage Form.

### A. MEDICAL EXPENSE COVERAGE

1. Insuring Agreement.

   a. We will pay medical expenses as described below for "bodily injury" to an insured caused by an accident while "occupying" any "hired automobile" or "nonowned automobile" provided that:

      (1) The accident takes place in the "coverage territory" and during the policy period;

      (2) The expenses are incurred and reported to us within one year of the date of the accident; and

      (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make the following payments regardless of fault. These payments will not exceed the applicable Limit of Insurance. We will pay reasonable expenses for:

      (1) First aid at the time of an accident;

      (2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

### B. WHO IS AN INSURED

1. Any person while "occupying" a "hired automobile" or "nonowned automobile" is an insured, but only with respect to the Medical Expense Coverage provided by this endorsement.

2. Paragraph C., (Who Is An Insured) of the Hired and Nonowned Automobile Liability Coverage Form does not apply to the Medical Expense Coverage of this coverage endorsement.

### C. LIMITS OF INSURANCE - MEDICAL EXPENSE COVERAGE

1. The Limits of Insurance shown in the Declarations Page and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The Medical Expense Aggregate Limit of Insurance is the most we will pay for the sum of all medical expenses under Medical Expense Coverage.

3. Subject to 2. above, the Medical Expense Limit of Insurance is the most we will pay under Medical Expense Coverage for all medical expenses because of "bodily injury" sustained by any one person.

   The Medical Expense Coverage Limits of Insurance apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### D. ADDITIONAL DEFINITION

1. "Occupying" means in, upon, getting in, on, out or off.

Copyright, Church Mutual Insurance Company, 1987.
Includes copyrighted material of Insurance Services Office, Inc., with its permission
Copyright, Insurance Services Office, Inc., 1987.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOUISIANA UNINSURED MOTORISTS COVERAGE - · · · · ·
## BODILY INJURY

This endorsement modifies insurance provided under the Hired and Nonowned Automobile Liability Coverage Part.

Throughout this endorsement, the words "covered automobile" mean an "automobile" that is a "hired automobile" or "nonowned automobile."

The following is added to the Hired and Nonowned Automobile Liability Coverage Form.

### A. UNINSURED MOTORISTS COVERAGE

1. We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the insured caused by an "occurrence" that takes place in the "coverage territory." The owner's or driver's liability for these damages must result from ownership, maintenance or use of the "uninsured motor vehicle." The "bodily injury" must occur during the policy period.

2. If this insurance provides a limit in excess of the amounts required by the applicable law where a covered "automobile" is principally garaged, we will pay under this coverage only after the submission of claims exceeded the limits of liability under any applicable bodily injury liability bonds or policies.

3. Any judgment for damages arising out of a suit" brought without our written consent is binding on us and will not bar liability under this Coverage Part unless we are prejudiced by your failure to give us notice of occurrence, offense, claim, or "suit" or forward demands, notices, summonses, or legal papers in connection with a claim or "suit."

### B. WHO IS AN INSURED - UNINSURED MOTORISTS COVERAGE

The following are insureds but only with respect to this Uninsured Motorists Coverage.

1. You are an insured.

2. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another insured is an insured.

3. Anyone else "occupying" an "automobile" you do not own and that is a covered "automobile"

under this coverage part for Liability Insurance and is licensed or principally garaged in Louisiana is an insured.

### C. EXCLUSIONS - UNINSURED MOTORISTS COVERAGE

The following additional exclusions apply, but only with respect to this Uninsured Motorists Coverage.

This Uninsured Motorists Coverage does not apply to:

1. Any claim settled without our consent as long as you have notified us of such settlement. But this exclusion does not apply with respect to coverage provided for a vehicle described in paragraph b. and c. of the definition of "uninsured motor vehicle."

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. Anyone using a vehicle without the express or implied permission that the person is entitled to do so.

4. "Bodily injury" sustained by an insured while "occupying" or struck by any vehicle owned by that insured that is not a covered "automobile."

5. Punitive or exemplary damages.

### D. LIMIT OF INSURANCE - UNINSURED MOTORISTS COVERAGE

1. Regardless of the number of covered "automobiles," insureds, premiums paid, claims made or vehicles involved in the "occurrence," the most we will pay under Uninsured Motorists Coverage for all damages resulting from any one "occurrence" is the Limit of Insurance shown in the Declarations Page for Uninsured Motorists Coverage.

Copyright, Church Mutual Insurance Company, 2002
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1988.

2. Any amount paid by or for anyone legally responsible for an "occurrence" will reduce only the amount of damages to be paid and does not reduce our Limit of Insurance.

3. Any amount paid under this Uninsured Motorists Coverage will reduce any amount an insured may be paid under this Coverage Form's Liability Coverage.

## E. CHANGES IN CONDITIONS - UNINSURED MOTORISTS COVERAGE

The Conditions are changed but these changes apply only with respect to Uninsured Motorists Coverage.

1. The "Other Insurance" Condition is replaced by the following:

If there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of insurance bears to the total of all applicable limits. However, with respect to "bodily injury" sustained by an insured:

   a. While "occupying" a vehicle owned by that person or while not "occupying" any vehicle, any recovery for damages sustained by an insured as a named insured or family member may equal but not exceed the highest applicable limit for any one vehicle under this Coverage Form or any other Coverage Form or policy.

   b. While "occupying" a vehicle not owned by that person, the following priorities of recovery will apply:

      (1) The uninsured motorists coverage applicable to the vehicle the insured was "occupying" at the time of the "occurrence" will be primary.

      (2) If the primary insurance is exhausted, any excess recovery for damages sustained by an insured as a named insured or family member may equal but not exceed the highest applicable limit for any one vehicle under this Coverage Form or any other Coverage Form or policy. In no instance will more than one uninsured motorists coverage limit be available as excess insurance.

2. The "Duties In the Event of Occurrence, Claim, Suit or Loss" Condition is changed by adding the following:

   a. Promptly notify the police if a hit-and-run driver is involved, and

   b. Promptly send us copies of the legal papers if a "suit" is brought.

3. The "Transfer of Rights of Recovery Against Others to Us" Condition does not apply to vehicles described in paragraph b. of the definition of "uninsured motor vehicles."

The "Transfer of Rights of Recovery Against Others to Us" Condition is changed by adding the following:

If we make any payment under this policy and the person to or for whom payment is made has a right to recover damages from another, we shall be subrogated to that right. However, our right to recover is subordinate to the insured's right to be fully compensated.

4. The following Condition is added:

   a. Arbitration

      (1) If we and an insured disagree whether the insured is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, the insured may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitration equally.

      (2) Unless both parties agree otherwise, arbitration will take place in the parish in which the insured lives. Local rules of law as to arbitration procedures and evidence will apply. A decision agreed to by two of the arbitrators will not be binding on and is optional with the insured.

A 604 (04-02)                                                                         Page 2 of 3

Copyright, Church Mutual Insurance Company, 2002.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1985.

F. **ADDITIONAL DEFINITIONS - UNINSURED MOTORISTS COVERAGE**

The following definitions are added to the Definitions Section but these definitions apply only with respect to Uninsured Motorists Coverage.

1. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or trailer:

   a. For which no liability bonds or policy at the time of an "occurrence" provides at least the amounts required by the applicable law where a covered "automobile" is principally garaged;

   b. Which is an underinsured motor vehicle. An underinsured motor vehicle means a land motor vehicle or trailer to which a liability bond or policy affording coverage for "bodily injury" applies at the time of the accident but the amount paid for "bodily

injury" under that bond or policy to an insured is not enough to pay the full amount the insured is legally entitled to recover as damages. . . . . . .

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d. Which is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an "insured," a covered "automobile" or a vehicle an insured is "occupying."

However, "uninsured motor vehicle" does not include any vehicle:

   a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

   b. Owned by a governmental unit or agency; or

   c. Designed for use mainly off public roads while not on public roads.

Copyright, Church Mutual Insurance Company, 2002
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1989.

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## RENTAL AUTOMOBILE CONTRACTUAL LIABILITY ENDORSEMENT - LOUISIANA

This endorsement modifies insurance provided under the Hired and Nonowned Automobile Liability Coverage Part.

The following is added to the Hired and Nonowned Automobile Liability Coverage Form A 600.

### A. RENTAL AUTOMOBILE CONTRACTUAL LIABILITY COVERAGE

1. With respect to an "incidental" rental "hired automobile";

   a. Paragraph A.2.g. Exclusions is replaced by the following:

   This insurance does not apply to:

   (1) "Bodily injury" or "property damage" for which the insured is obligated to pay damages, by reason of the assumption of the tort liability of another to a third party or organization, in a written contract or agreement.

   But, this exclusion does not apply to that part of any written contract or agreement entered into by you pertaining to the rental or lease of the "automobile" if the written contract or agreement:

   (a) Is made prior to the "bodily injury" or "property damage"; and

   (b) Pertains to the loan, lease or rental of the "automobile" without a driver; and

   (c) If the written contract or agreement:

   1) Does not indemnify or hold a person or organization engaged in the business of transporting persons or property by "automobile" for hire harmless for your use of a covered "automobile" over a route or territory that person or organization is authorized or is required to be authorized to serve by public authority, or

   2) Does not provide coverage to a third person or organization for its own negligence regarding manufacture or maintenance of the vehicle or any component part thereof.

### B. RENTAL AUTOMOBILE PHYSICAL DAMAGE COVERAGE

1. With respect to the "incidental" rental of a "hired automobile," we will pay for "loss" to that "hired automobile" under the coverages that follow. We will pay under:

   a. Comprehensive Coverage.

   From any cause except:

   (1) The "hired automobile's" collision with another object; or

   (2) The "hired automobile's" overturn.

   We will pay for the following under Comprehensive Coverage:

   (1) Glass breakage;

   (2) "Loss" caused by hitting a bird or animal; and

   (3) "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by an "automobile's" collision or overturn considered a "loss" under Collision Coverage.

   b. Collision Coverage. Caused by:

   (1) The "hired automobile's" collision with another object; or

   (2) The "hired automobile's" overturn.

2. Exclusions.

   a. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss."

   (1) Nuclear Hazard.

   Nuclear reaction or radiation or

Copyright, Church Mutual Insurance Company, 2002.

radioactive contamination, however caused.

But if loss or damage by fire results, we will pay for that resulting loss or damage.

(2) War or Military Action.

(a) War, including undeclared or civil war;

(b) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government sovereign or other authority using military personnel or other agents; or

(c) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

(3) We will not pay for "loss" to any "hired automobile" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any "hired automobile" while that "hired automobile" is being prepared for such a contest or activity.

b. Other Exclusions.

(1) We will not pay for "loss" to any of the following:

(a) Tape decks or other sound reproducing equipment unless permanently installed in an "automobile."

(b) Tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

(c) Sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor, receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the "automobile" manufacturer for the installation of a radio.

(2) We will not pay for "loss" caused by or resulting from any of the following unless caused by other "loss" that is covered by this Insurance.

(a) Wear and tear, freezing, mechanical or electrical breakdown.

(b) Blowouts, punctures or other road damage to tires.

(3) We will not pay for "loss" to a "hired automobile" owned by a person or organization engaged in the business of transporting persons or property by "automobiles" for hire over a route or territory that person or organization is authorized to serve by public authority.

3. Limit of Insurance.

The most we will pay for "loss" to any one "incidental" rental "hired automobile" in any one accident is the lesser of:

a. The actual cash value of the damaged or stolen "hired automobile" as of the time of the "loss";

b. The cost of repairing or replacing the damaged or stolen "hired automobile" with another automobile of comparable kind and quality.

c. $100,000 for all covered losses occurring during each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations Page, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

4. Deductible.

For each "incidental" rental "hired automobile," our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by a $250 deductible for each covered "automobile." Any Comprehensive Coverage deductible does not apply to "loss" caused by fire or lightning.

Copyright, Church Mutual Insurance Company, 2002.

## C. ADDITIONAL CONDITIONS

The following are added to Paragraph E. CONDITIONS:

a. The following is added to Paragraph 2.:

    a. If there is a "loss" to an "incidental" rental "hired automobile," you must also do the following:

        (1) Promptly notify the police if the covered "hired automobile" or any of its equipment is stolen.

        (2) Take all reasonable steps to protect the covered "hired automobile" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

        (3) Permit us to inspect the covered "hired automobile" and records proving the "loss" before its repair or disposition.

        (4) Agree to examinations under oath at our request and give us a signed statement of your answers.

b. The following provision is added:

    12. Loss Conditions.

        a. Appraisal For Physical Damage Loss.

        If you and we disagree on the amount of the "loss," either may demand an appraisal of the "loss." In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the actual cash value and amount of "loss." If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will not be binding on and is optional with the insured. Each party will:

        (1) Pay its chosen appraiser; and

        (2) Bear the other expenses of the appraisal and umpire equally.

        If we submit to an appraisal, we will still retain our right to deny the claim.

        b. Loss Payment - Physical Damage Coverages.

        At our option we may:

        (1) Pay for, repair or replace damaged or stolen property;

        (2) Return the stolen property, at our expense. We will pay for any damage that results to the "hired automobile" from the theft; or

        (3) Take all or any part of the damaged or stolen property at an agreed or appraised value.

        c. No Benefit to Bailee - Physical Damage Coverages

        We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

## D. ADDITIONAL DEFINITIONS

12. "Incidental" means a "hired automobile" used or rented for a period of 30 days or less under a written contract or agreement.

13. "Loss" means direct and accidental loss or damage.