UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | CIVIL ACTION NO. 05-4182 |
| CONSOLIDATED LITIGATION | * | |
| | * | SECTION "K" |
| | * | |
| PERTAINS TO: | * | MAGISTRATE (2) |
| NO.   07-5023 | * | |
| 07-5040 | * | JUDGE STANWOOD DUVAL |
| | * | |
| | * | MAG. HON. JOS. WILKINSON |

* * * * * * * * * * * * * * * * * * *

INTERVENING PLAINTIFFS' MEMORANDUM IN
SUPPORT OF THEIR OBJECTIONS TO AND MOTION(S) TO
REVIEW MAGISTRATE'S ORDER ON MOTIONS

MAY IT PLEASE THE COURT:

On December 12th, 2007, Magistrate Wilkinson denied Motions for Leave to

Intervene by Intervening Plaintiffs herein in litigation voluntarily instituted in This

Honorable Court by the State of Louisiana on August 29, 2007.  The facts and legal

arguments surrounding the proposed intervention(s) were thoroughly briefed (See Record

Document Nos. 8735, 8789, 9239, 9241, and 9243); however, the Magistrate did not

entertain oral argument on the Motion(s) for Leave to Intervene prior to ruling on

December 12, 2007, in a sixteen (16) page Order on Motions.  Undersigned counsel for

intervening plaintiffs, which include counsel himself, in propria persona, disagree with

the Magistrate's factual and legal analyses, rulings, and conclusions, and respectfully

submit that whether a reviewing Court applies the "clearly erroneous" or "contrary to

law" standards of 28 USC Section 636(b)(1)(A) or some other standard, such as abuse of

discretion, the Magistrate should have allowed the interventions.  More than likely, this case is going to go "all the way" to the United States Supreme Court, and intervening plaintiffs wish to preserve their rights for appeal purposes.

The "main" arguments advanced by intervening plaintiffs in support of their right to intervene were as follows:

1.    Intervening plaintiffs aver that the State of Louisiana, its agencies, etc., have waived Eleventh Amendment immunity by virtue of persistent and systematic invocation of the jurisdiction of the federal court system in Louisiana, including particularly, invocation of the jurisdiction of the United States District Court for the Eastern District of Louisiana in Civil Action Numbers 05-4157, 06-3813, 06-3552, 07-5023, and 05-5040, among others.

2.    Intervening plaintiffs aver, upon information and belief, that the matters which they are seeking to litigate against the state in federal court, are matters on which Congress has already abrogated the state's Eleventh Amendment immunity, involving flood control, hurricane protection, and disaster preparation and response, or on which the State of Louisiana Waived Eleventh Amendment immunity.  Accordingly, intervening plaintiffs aver that they should have been permitted to conduct discovery concerning the federal, or state and local legislative schemes, which have established "Partnerships" between and among the federal, state and local governments, in order to determine congressional abrogation or waiver by the State of Louisiana.

3.   The Eleventh Amendment to the U.S. Constitution has been badly misconstrued by the judiciary, and simply does not apply to the facts and circumstances of this case, because:

(a)    the State of Louisiana has waived sovereign immunity for cases sounding in tort by virtue of Article XII, Section 10(A) of the Louisiana Constitution of 1974;[1]

(b)    the Federal Courts, therefore, would have had jurisdiction over cases brought against the state by its own citizens pursuant to Article III, Section 2 of the U. S. Constitution, which extended Federal judicial power " . . . to all cases in law or equity, arising under the Constitution, for laws of the United States, under their authority."

(c)    The "federal question" for the exercise of federal jurisdiction over such cases[2] is the court's supplemental jurisdiction under 28 U.S.C. Section 1367;

In addition to the above reasons for intervening plaintiffs' right to intervene against the State of Louisiana in the State's federal court litigation, intervening plaintiffs also take exception to the Magistrate's rulings and conclusions as follows:

MAGISTRATE'S RULING OR CONCLUSION:   "The State of Louisiana has not expressly waived its immunity or consented to the exercise of federal judicial power in civil actions against it." (Record Document No. 9459, p. 4).

---

[1] Article XII, Section 10(A) provides: "No Immunity In Contract and Tort.  Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract, nor injury to person or property."

[2] And, in this case in particular, against the State of Louisiana, and against the Governor in an official capacity.

3

* * *

"That kind of express or affirmative waiver has clearly <u>not</u> occurred in this instance."

(Record Document No. 9459, p. 5).

CRITIQUE:   At this juncture, we simply do not KNOW whether the Magistrate's

conclusion is correct or incorrect.   Appended hereto and marked for identification as

Exhibit No. 1 is a July 26, 2007 Louisiana Public Records Act request directed by

intervening plaintiffs to the Louisiana Department of Justice for just such information,

and the August 7, 2007 "non-reply" from the LDOJ, which is marked for identification as

Exhibit No. 2.   Intervening plaintiffs aver that, as an alternative to dismissal of their

Intervening Complaint, they should have been given the opportunity to conduct discovery

in order to determine whether any express or implied waiver has, in fact, occurred, and

whether Congress may have abrogated the State's 11th Amendment immunity.

MAGISTRATE'S RULING OR CONCLUSION:   "Close analysis of these cases and

others, however, establishes that this is not one of the rare circumstances in which

constructive waiver of Eleventh Amendment immunity might be found."   (Record

Document No. 9459, p. 5).

* * *

"In short, constructive waiver of Eleventh Amendment immunity is virtually nonexistent.

If it ever will exist, it will be in situations where Congress indicates a clear intent to make

4

states liable in federal court if they engage in a particular activity, and then a state voluntarily chooses to engage in that conduct." (Record Document No. 9459, p. 5-6).

CRITIQUE:   Magistrate Wilkinson made two (2) mistakes in concluding as he did, *supra*:  (1) Firstly, he failed to distinguish between "implied waiver from a state's non-litigating actions" (to which Professor Chemerinsky was referring when he wrote: "In short, constructive waiver of Eleventh Amendment immunity is virtually nonexistent.") and "waivers effected by a States litigating conduct", which is the type of waiver invoked by intervening plaintiffs in this case, and which is addressed by Professors Nowak and Rotunda in their celebrated *Treatise on Constitutional Law, Substance and Procedure* (4th Edition 2007); and (2) Secondly, he failed to refer to Professor Chemerinsky's further analysis of Justice Breyer's majority opinion in *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 467, 122 S.Ct. 1640 (2002).  See Erwin Chemerinsky, *Constitutional Law, Principles and Policies* (3d. Edition) 2006, §2.10.5, pp. 222-223.

On the subject of "constructive waiver", as distinguished from "waiver effected by a state's litigating conduct,"[3] intervening plaintiffs respectfully submit that This Honorable Court should take judicial notice of the fact that this case involves at least three (3) areas which have resulted (or should have resulted) in "partnerships" between and among federal, state and local governmental agencies, namely:  (1) Flood Control, (2) Hurricane Protection and (3) Disaster Preparation and Response.

Since Hurricane KATRINA much has been written about the many millions of dollars which the Federal Government (allegedly) poured into Louisiana and New

---

[3] Nowak and Rotunda, Treatise on Constitutional Law, Substance and Procedure (4th Edition 2007).

Orleans after Hurricane BETSY in 1965, earmarked for Flood Control and Hurricane

Protection projects, the very same projects which failed so miserably in KATRINA.

Since Hurricane  KATRINA, the many, many BILLIONS of federal dollars which have

poured into the State are almost a daily story in The Times Picayune in New Orleans and

The Advocate in Baton Rouge.

The case of *AT&T Communications v. Bell South Telecommunication Inc.*, 238

F.3d 636 (5th Cir. 2001), contains an exhaustive study of the jurisprudence since *College*

*Savings Bank v. Florida Prepaid Post-Secondary Education Expense Board*, 527 U.S.

666, 119 S.Ct. 2219 (1999), and concluded that ". . . after *College Savings*, Congress may

still obtain a non-verbal voluntary waiver of a State's Eleventh Amendment immunity, if

the waiver can be inferred from the State's conduct in accepting a gratuity after being

given clear and unambiguous statutory notice that it was conditioned on waiver of

immunity."  238 F.3d at p. 645.  Additionally, in *Pace v. Bogalusa City School Board*,

403 F.3d 272 (5th Cir. 2005), the Court stated as follows in finding that the State of

Louisiana and its agency waived 11th Amendment immunity by virtue of receipt of

federal funds:

> "If waiver results from participation in a Spending clause program, the
> program must be a valid exercise of Congress' spending power;   the
> waiver condition must satisfy the clear statement rule (thereby ensuring
> that the State's waiver is "knowing");   and the program must be non-
> coercive (automatically establishing that the waiver is "voluntary")."  403
> F.3d at p. 279.

Intervening plaintiffs respectfully submit that they should have been permitted to

explore what "strings" may have been attached to the federal monies which have been

bestowed upon the State of Louisiana, and its agencies, both before and after Hurricane

KATRINA, and what the State may have voluntarily waived, or given up, in consideration for receiving federal BILLIONS.

In the "Post 9-11" world, Disaster Preparedness and Response has been (or should have been) at the forefront of Federal, State and local efforts to minimize the effects of natural or man-made disasters. When Governor Blanco requested, by letter dated August 27, 2005, to the President, through the FEMA Region VI Regional Director, that the President declare an emergency for the State of Louisiana, several things should have been "triggered", including the State of Louisiana and local Response Plans to get people in flood plains, and particularly those who did not have the means to fend for themselves, to higher ground, among other things that should have been prepared for long before catastrophe was imminent. Among the laws that define the federal role in emergency response, law enforcement and disaster relief is the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. §5121, et seq.), which is designed to provide a means by which the federal government may supplement state and local resources in major disasters or emergencies, where those State and local resources have been overwhelmed. In the words of the American Bar Association, Hurricane Katrina Task Force Subcommittee Report 13,  14-18 (Feb. 2006), reprinted in part in Farber, Chen, Disasters and the Law, Katrina and Beyond, Aspen Publishers (2006):

> "The federal government has interjected itself into the state and local government emergency planning process by conditioning the receipt of federal preparedness grant funding on review of state and urban area preparedness plans.  This represents a federal exercise of its Tax and Spend power in the Constitution in order to encourage state compliance with such federal requirements."

Intervening plaintiffs respectfully submit that, as an alternative to outright dismissal of their Intervening Complaint on 11th Amendment grounds, they should have

been allowed to conduct discovery in order to explore what conditions may have been attached to the federal monies which have flowed into the State's coffers both before and after KATRINA, and what the State may have agreed to waive.

MAGISTRATE'S RULING(S) OR CONCLUSION(S):   "The two cases principally relied upon by movants do not support a finding of constructive waiver in these cases." (Record Document No. 9459, p. 6).

* * *

Waiver of the State's Eleventh Amendment immunity applied in *Clark* because the state was a defendant in the action.  In the instant cases, Louisiana has voluntarily submitted to the jurisdiction of the court as a plaintiff, not a defendant.  Movants seek to intervene as plaintiffs to recover damages against the State, which would cast the State in the role of a defendant.  In other words, the intervention is a "suit . . . against" Louisiana within the terms of the Eleventh Amendment, which does not permit such a suit without the state's consent."

* * *

"Furthermore, *Lapides* and the cases cited therein do not support movants' argument because *Lapides* and its predecessors were removal cases."  (Record Document No. 9459, p. 7).

* * *

8

"This case [*Lapides*] is inapplicable to the instant situation, in which Louisiana filed suits as a plaintiff in federal court and the movants propose to interevene in those suits as plaintiffs against the state as defendant."  (Record Document No. 9459, p. 8).

\* \* \*

In addition to the absence of constructive waiver, the proposed intervention and the Eleventh Amendment raise the "question . . . whether [this] particular suit in fact is a suit against a State." (Record Document No. 9459, p. 8).


CRITIQUE:   Intervening plaintiffs rely on the clear holding of the Supreme Court in *Clark v Barnard,* 108 U.S. 436, 2 S.Ct. 878 (1883), namely that a state's "voluntary appearance" in federal court as an intervenor avoids any Eleventh Amendment inquiry. More particularly, the *Clarke v. Barnard* Court clearly stated, "The immunity from suit belonging to a state. . . is a personal privilege which it may waive at pleasure." Intervening plaintiffs also rely on the clear and unmistakable language of the majority opinion (authored by Justice Breyer) in *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640 (2002), namely:

"This Court consistently has found a waiver when a state's attorney general authorized (as here) to bring a case in federal court, has voluntarily invoked that court's jurisdiction."  122 S.Ct. at p. 1645.  "A rule of federal law that finds waiver through a state attorney general's invocation of federal court jurisdiction avoids inconsistency and unfairness."  *Ibid*.  See also *Paul N. Howard Company v. Puerto Rico Aqueduct Sewer Authority*, 744 F.2d 880 (1st Cir. 1984). "There is no question that a state may waive its Eleventh Amendment immunity (citation omitted),and it has long been established that a

9

general appearance may constitute such waiver, (citation omitted).  744 F.2d at p. 886.

See also <u>Newfield House, Inc. v. Massachusetts Department of Public Welfare</u>, 651 F.2d

32 (1st Cir. 1981).  ". . .  one long-accepted basis for such a finding [waiver] is a general

appearance in a federal proceeding by a state official acting within his authority."   651

F.2d at p. 36, n. 3 and cases cited therein.

<u>MAGISTRATE'S RULING(S) OR CONCLUSION(S)</u>: "Thus the State of Louisiana's

invocation of federal jurisdiction in these actions is limited to its claims against the

United States and the United States' responsive defenses and compulsory counterclaims

(citations omitted), which arise out of the same transaction or occurrence that is the

subject matter of Louisiana's claims. (citations omitted)

* * *

The following decisions illustrate that, by voluntarily appearing in a federal

action, a state consents only to adjudication of the limited subject matter of that action,

and that movants' proposed intervention is outside those limits.  (Record Document No.

9459, p. 10).

* * *

<u>CRITIQUE</u>:   Intervening plaintiffs aver that this ruling or conclusion is far too narrow,

and reveals the fact that the Magistrate failed completely to recognize that the 11th

Amendment restriction on the exercise of federal power over a state's fisc, or "treasury",[4]

disappears or evaporates when the State itself has voluntarily invoked the jurisdiction of

the Federal Court to assert an affirmative claim on its own behalf against the federal

---

[4]  See *Pennhurst v. State School and Hospital v. Halderman*, 465 U.S. 89, 101  n. 11, 104 S.Ct. 900 (1984).

government for $200 billion in recompense.  Further, the rulings or conclusions by the

Magistrate reveal that he failed to consider whether intervening plaintiffs may be

asserting a qui tam claim against the State on behalf of the federal government, but in the

names of intervening plaintiffs.  Such a claim will involve the same evidence as the

State's claim against the federal government, and arises out of the very same transactions

or occurrences as the State's claim(s) against the federal government, the claims of

intervening plaintiffs against the State being "logically related" to the State's claims

against the United States, and the "soon-to-be-filed" counterclaim by the United States

against the State.  See *infra*.  More particularly, the fault, negligence and legal liability of

the State of Louisiana (whether to intervening plaintiffs or to another class) will be

litigated when the State's claim against the United States is heard, for the United States is

sure to plead, by way of counterclaim, contributory or comparative fault by the State.

MAGISTRATE'S RULING(S) OR CONCLUSION(S):    Movants are trying to do the

same thing in this case that the Fourth Circuit prohibited in *Creative Goldsmiths*:  to

begin an adversary proceeding against the state of Louisiana based on its waiver of

immunity as to one type of claim against the United States, when movants assert entirely

different claims against the state, for which the State has not waived immunity."  (Record

Document No. 9459, pp. 11-12).

CRITIQUE:    The "type of claim" asserted by the State of Louisiana against the United

States, and in the "sure-to-follow" counterclaim by the United States against the State of

11

Louisiana, are precisely the same types of claim(s) which intervening plaintiffs have asserted against the United States, and sought to assert against the State by way of Intervening Complaint.   The evidence will be the same for all such claims identified, *supra*, for all arise out of the same transactions and occurrences, being "logically related" to each other, namely involving breaches of legal duties in the design, construction, inspection, operation and maintenance of the levees and retaining walls, etc..   *In re Pegasus Gold Corporation*, 394 F.3d 1189 (9th Cir. 2005) and cases cited therein. Further, the Fourth Circuit's decision in *Creative Goldsmiths* was prior to the Supreme Court's decision in *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640 (2002), and relied heavily on *Ford Motor Co. v Department of Treasury of State of Indiana*, 323 U.S. 459, 65 S.Ct. 347 (1945), which the *Lapides* Court overruled.

MAGISTRATE'S RULING OR CONCLUSION:   The Supreme Court's reasoning in *Missouri v. Fiske*, 290 U.S. 18 (1935) demonstrates why the movants may not intervene in the instant actions to assert their claims for damages against Louisiana."   (Record Document No. 9459, p. 12).

CRITIQUE:   The cited case is pre-Lapides v. Board of Regents of the University System of Georgia, 535 U.S. 613, 122 S.Ct. 1640 (2002).

MAGISTRATE'S RULING OR CONCLUSION:   In allowing Watson's suit based on the State's waiver of immunity in the underlying litigation and settlement agreement, the Fifth Circuit distinguished a situation like the proposed intervention herein."   (Record Document No. 9459, p. 14).

* * *

"The reasoning and holdings quoted above apply to the proposed intervention, which is a suit 'commenced or prosecuted against one of the United States' without the State's consent.  The proposed intervention is barred by the Eleventh Amendment."

CRITIQUE:   The Magistrate's analysis of the Fifth Circuit's decision in *Watson v. State of Texas*, 261 F.3d 436 (5th Cir. 2001), ignores the fact that the Court found a waiver of 11th amendment immunity in that case, and the fact that Watson was decided before the Supreme Court's decision in *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640 (2002).  Further, if any Fifth Circuit case is applicable to the situation before the Court, then the applicable case is *Department of Transportation and Development v. PNL Asset Management Co., Inc.*, 123 F.3d 241 (5th Cir. 1997), in which the Fifth Circuit stated:  "We do not doubt that after *Seminole Tribe*, a State may voluntarily choose to participate in a bankruptcy proceeding and [forego] its Eleventh Amendment sovereign immunity.  But this remains a choice to be made by the State."  140 F.3d at p. 679.

13

MAGISTRATE'S RULING OR CONCLUSION:  "Louisiana's   claims   against   the

United States do not waive its immunity from suit in federal court so as to allow any

claimant with a grievance against the State to intervene and bring a claim against it in

these actions.  Louisiana sued the United States to recover for a wide range of damages

caused to the State during and after Hurricane Katrina by the alleged negligence and

other fault of the United States Army Corps of Engineers.  Movants also seek damages

for injuries suffered during the hurricane and its aftermath, but that fact produces only a

remote, tangential relationship between their claims against Louisiana and Louisiana's

claims against the United States."

* * *

"Movants allege that the fault of Louisiana caused their damages.  However, the

State's alleged fault in causing movant's damages is not placed at issue in any way by the

State's claims against the United States.  There is no indication, express or implied, that

Louisiana intended to waive its immunity from being sued in federal court based on its

own fault.  The existing lawsuits concern duties allegedly owed to the State by the United

States, while movants are alleging breaches of duties owed to them by the State."

CRITIQUE:    The very same evidence which the United States will present to defeat or

mitigate recovery against the United States by the State of Louisiana, i.e., State fault,

negligence or legal liability, forms the bases for intervening plaintiffs' claims against the

State herein.  The Magistrate's categorization of intervening plaintiffs' claims against the

State, and the State's claims against the United States, as only "remote" or "tangential" is

pure sophistry.  Further, it is certain that the Magistrate failed to consider the possibility

14

of *qui* *tam* claims against the State by intervening plaintiffs' on behalf of the United States.

Lastly, a reading of Magistrate Wilkinson's Order on Motions (Record Document No. 9459) reveals that the Magistrate clearly exceeded his powers, which are expressly limited by 28 U.S.C. §636(b)(1)(A), since his Order on Motions constituted the functional equivalent(s) of a motion for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and/or to involuntarily dismiss an action.

Intervening plaintiffs respectfully submit that the Magistrate's Order on Motions should be reversed and set aside, with leave to file the Intervening Complaint(s) granted.

Respectfully submitted,

**LAW OFFICES OF**
**ASHTON R. O'DWYER, JR.**

**By:    S/Ashton R. O'Dwyer, Jr.**
         **Ashton R. O'Dwyer, Jr.**
         **La. State Bar Roll No. 10166**
         **821 Baronne Street**
         **New Orleans, LA 70113**
         **Tel.  (504)-679-6166**
         **Fax.  (504)-581-4336**