UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | **CIVIL ACTION** |
| | **NO. 05-4182** |
| **PERTAINS TO LEVEE:** | **SECTION "K"(2)** |

**FILED IN:**
**O' DWYER, No. 05-4181**
**TAUZIN, No, 06-0020**
**O'DWYER, No. 06-4389**
**ADAMS, No. 06-4634,**
**O'DWYER, No. 06-5786**

*ORDER AND OPINION*

Before the Court is a motion to dismiss plaintiffs' claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on behalf of defendant CSX Transportation, Inc. ("CSXT")(Doc. 3621). After reviewing the pleadings, memoranda, and relevant law, for the following reasons the Court grants the motion.

*I. BACKGROUND*

The "Superseding Master Consolidated Class Action Complaint"[1] alleges that on August 29, 2005, extensive flooding occurred in the metropolitan New Orleans area due, in part, to water from the Inner Harbor Navigational Canal ("Industrial Canal") surging through a gap in the flood protection wall adjacent to the Industrial Canal. Specifically that complaint alleges in pertinent

---

[1] Doc. 3420.

1

part:[2]

132.

The first breach [of the flood protection system] within the metropolitan New Orleans Region occurred at approximately 5:00 a.m. at the CSX train Floodgate W-30 beside the Industrial Canal and immediately to the south of the Interstate-10 overpass.  At this location, a steel storm gate on rollers had been damaged by a train several months prior to Hurricane Katrina.  In lieu of this missing gate, a sandbag levee crest section had been constructed in the opening left by the missing floodgate.  The sandbags completely washed out during Katrina.

133.

At this same site, flow along the juncture between the railroad embankment and the adjacent embankment fill supporting an asphalt paved roadway passing over the levee, resulted in erosion and scour that produced a second breach failure at essentially the same site.  The roadway fill at this location was comprised largely of highly erodible lightweight "shell sand" fill, a material not suitable for levee fill, especially without sheet pile cutoff or similar features to prevent erosion.

. . .

254.

The following defendants had the legal responsibility and duty to these plaintiffs to protect against the harm and damages alleged herein resulting from the failure of the IHNC [Inner Harbor Navigation Canal]:  the defendants Corps [ Army Corps of Engineers], OLD [the Board of Commissioners of the Orleans Parish Levee District], St. Paul, CSX, PBR [Public Pelt Railroad Commission for the City of New Orleans, and PNO [the Board of Commissioners of the Port of New Orleans].

. . .

---

[2] The references in the master complaint to "CSX" apply to CSX Transportation, Inc. and CSX Transportation Corporation.  This opinion   addresses only the claims against CSX Transportation, Inc.

258.

Upon information and belief, defendant CSX designed and constructed a railroad crossing at or near the IHNC's flood protection structures. In so doing, CSX utilized highly erodible, lightweight, and/or porous materials including, but not limited to, "shell sand" and gravel, which caused CSX's structure to be significantly weaker than its surrounding flood protection structures.

259.

Upon information and belief, CSX also failed to install a "sheet pile cutoff" or similar device to prevent or limit erosion of its structure.

260.

Upon information and belief, CSX could have prevented the failure of its structure at minimal additional cost by installing concrete "splash pads" or other erosion protection devices at the base of the "I-walls."

261.

CSX failed to exercise due care in buildings [sic] its structure, and its failures directly and/or proximately caused and/or contributed to the breaches of the IHNC on the west side.

CSXT contends that plaintiffs' state law negligence claims against it should be dismissed for failure to state a claim because it had no duty to protect the plaintiffs from flooding. Additionally, CSXT asserts that even if it were negligent in a manner that resulted in damage to the plaintiffs, that plaintiffs' claims must nonetheless be dismissed because any state law claim for negligence arising from CSXT's design and construction of its railroad crossing at or near the Industrial Canal's flood protection structures is preempted by the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. §10101, *et seq.* ("ICCTA") and the Federal Railroad Safety Act, 49 U.S.C. §20101, *et seq.*("FRSA").

*LAW AND ANALYSIS*

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complaint must be liberally construed in favor of plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank*, *N.A.,* 781 F.2d 440, 442 (5th Cir. 1980). In *Bell Atlantic Corporation v. Twombly*, ___ U.S. ___, ___, 127 S.Ct. 1955, 1969 (2007) the Supreme Court "retired" the *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Id.* at ___, ___, 127 S.Ct. at 1969. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re: Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) quoting *Bell Atlantic Corp. v. Twombly*, ___ U.S. at ___, 127 S.Ct. at 1974. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, ___ U.S. at ___, 127 S.Ct. at 1965. "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997) quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969).

A). Duty

Article 2315 of the Louisiana Civil Code provides the basis for negligence liability in Louisiana. It provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The duty-risk analysis "is the standard negligence analysis employed in determining whether to impose liability under LSA-C.C. art. 2315." *Lemann v. Essen Lane Daiquiris, Inc.,* 923 So.2d 627, 632-33 (La. 2006). To prevail on a claim of negligence, the plaintiff must satisfy all five elements of the duty-risk analysis: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the actual damages. *Id.*

Under a duty-risk analysis, absent a defendant owing a duty to the plaintiff, there can be no actionable negligence and therefore no liability. *Id.* Whether a defendant owes a duty to another presents a question of law. *Peterson v. Gibraltar Savings and Loan*, 733 So.2d 1198, 1204 (La. 1999). The relevant "inquiry is whether the plaintiff has any law - statutory, jurisprudential, or arising from general principles of fault - to support his claim." *Faucheaux v. Terrebonne Consolidated Government*, 615 So.2d 289, 292 (1993). "Duty varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved." *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994).

The master complaint contains only the following allegations against CSXT:

- CSXT "designed and constructed a railroad crossing at or near the IHNC's flood

- protection structures"[3];
- that in constructing the railroad crossing CSXT used "highly erodible, lightweight, and/or porous materials including, but not limited to, "shell sand" and gravel, which caused CSX's structure to be significantly weaker than its surrounding flood protection structures"[4];
- that CSXT failed to install a "sheet pile cutoff" or similar device to prevent or limit erosion of its structure[5]; and
- that CSXT could have "prevented the failure of its structure at minimal additional cost by installing concrete 'splash pads' or other erosion protection devices at the base of the 'I-walls'."[6]

Plaintiffs have not alleged that the CSXT railroad crossing is part of the flood protection system for Parish of Orleans, only that it is "at or near the IHNC's [Industrial Canal's] flood protection structures."

Plaintiffs have not identified any statutory, jurisprudential, or common law imposing on a railroad a general duty to protect the public from flooding. Nor has the Court located any law which imposes such a duty. The lack of such law is not unexpected; the duty to protect the residents and citizens of New Orleans from flood has been statutorily imposed on other entities.

Congress has mandated that the Secretary of the Army, acting through the Corps of Engineers is responsible for providing flood protection for the City of New Orleans. *See* 33 U.S.C. §701, *et seq.* Additionally, the state owes its citizens a duty to protect them from flood. "[T]he state's duty to protect citizens from damage by flood is inherent within its police power." *The Board of Commissioners of the Orleans Parish Levee District v. The Department of Natural Resources*, 496 So.2d 281, 289 (La. 1986). The Louisiana legislature has vested the Board of Commissioners of

---

[3] Doc. 3420, Paragraph 258.

[4] *Id.*

[5] Doc. 3420, Paragraph 259.

[6] Doc. 3420, Paragraph 260.

the Orleans Levee District, an entity named by plaintiffs as a defendant in this suit, with the "full and exclusive right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embankments, seawalls, jetties, breakwaters, water-basins, and other works in relation to such projects" within the Parish of Orleans.  La. Rev. Stat. 38:307A(1) (emphasis added).  The state has not delegated any responsibility for flood control to CSXT.

In the absence of any state law imposing a general duty on a railroad to protect the plaintiffs from flooding, the Court must attempt to predict how the Louisiana Supreme Court would decide the issue. It is significant that plaintiffs have not alleged that they have any special relationship, e.g., a contractual relationship, with CSXT.  There is, at best, a tenuous relationship between plaintiffs and CSXT.  Plaintiffs are members of the general public who are residents and citizens of Orleans Parish, the parish in which CSXT is alleged to have designed and constructed a railroad crossing. which eroded following the "first breach" of the flood protection system on the west side of the Industrial Canal as a result of Hurricane Katrina.  That relationship is insufficient to serve as the basis for concluding that CSXT owed plaintiffs a general duty to protect them from flooding. Because the railroad crossing is not alleged to constitute part of the flood protection system for the City of New Orleans, CSXT owed plaintiff's no duty to design and construct the crossing to prevent flooding or erosion of the crossing following a breach of the Industrial Canal.

There is no legal basis for concluding that the Louisiana Supreme Court, if confronted with this issue, would impose on CSXT a general duty to protect the plaintiffs from the hazard of flooding.  As noted above, other entities have been specifically charged with the responsibility for protecting the City of New Orleans from flooding.  Because CSXT had no duty to protect the plaintiffs from flooding, plaintiffs's allegations concerning the negligent design and construction

of the railroad crossing do not state a claim against CSXT. The motion to dismiss is GRANTED.

## B) Preemption

Alternatively CSXT contends that even if it had a duty to protect plaintiffs from flooding that plaintiffs' claims must be dismissed because any state law claims flowing from that duty are preempted by the ICCTA. The Supremacy Clause of the Constitution is the foundation of the federal preemption doctrine. The Supremacy Clause states in pertinent part that "the Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl.2. The Supremacy Clause permits Congress to preempt state law in the legitimate exercise of its legislative authority. *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. 355, 369, 106 S. Ct. 1890, 1989-99, 90 L.Ed.2d 369 (1986).

Federal preemption occurs when Congress expressly prohibits state regulation and the intent of Congress to preempt state law is clear and explicit, when Congress pervasively occupies a field of regulation and thereby implicitly leaves no room for state regulation, or when state law actually conflicts with federal law. *See Friberg v. Kansas City Southern Railway Company*, 276 F.3d 439, 442 (5th Cir. 2001), citing *English v. General Electric Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). Regardless of the type of preemption urged, the preemption analysis "starts with the assumption that the historic police powers of the States are not to be superseded by . . . Federal Act unless that is the clear and manifest purpose of Congress. Accordingly, [t]he purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407. (internal quotation and citation omitted). To put it another way, "[t]he critical question in any pre-emption analysis is always

whether Congress intended that federal regulation supersede state law." *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. at 369, 106 S.Ct. at 1899.

With a goal of deregulating the rail transportation industry, ICCTA abolished the Interstate Commerce Commission and replaced it with the Surface Transportation Board. ICCTA granted the Surface Transportation Board exclusive jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance or spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

49 U.S.C. §10501(b). ICCTA includes an express preemption provision which states that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are **exclusive** and **preempt** the remedies provided under Federal or State law." 49 U.S.C. §10501(b)(2) (emphasis added).

"It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *CSX Transportation, Inc. v. Georgia Public Service Commission*, 944 F.Supp. 1573, 1581 (N.D. Ga. 1996). The preemption provision of ICCTA "is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent. *Friberg v. Kansas City Southern Railway Company*, 267 F.3d at 443. Nevertheless, the reach of the preemption provision is not unlimited. ICCTA's preemption of state law remedies is restricted to those "with respect to regulation of rail transportation." 49 U.S.C. §10501(b)(2). Therefore, the relevant issue is whether a state law claim challenging the design and construction

of a railroad crossing presents involves a state law remedy "with respect to regulation of rail transportation." ICCTA broadly defines "transportation" to include:

> (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use, and
>
> (B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange or passengers and property.

49 U.S.C. §10102(9). There can be no doubt that a railroad crossing constitutes "property . . . . related to the movement or passengers or property . . . by rail." Therefore, ICCTA's "transportation" criterion is satisfied.

Because ICCTA does not define "regulation", the Court must look elsewhere to determine its meaning. "Regulation" has been defined as the "act or process of controlling by rule or restriction." Blacks Law Dictionary (8th ed. 2004). The application of state law negligence principles to assess and evaluate the suitability of the design and construction of a railroad crossing qualifies as an attempt at state law "regulation" in respect to rail transportation.

In analyzing the preemptive scope of ICCTA, the Surface Transportation Board has held that :

> [T]he courts have found two broad categories of state and local actions to be preempted regardless of the context or rationale for the action. The first is any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized.
>
> Second, there can be no state or local regulation of matters directly regulated by the Board - such as the construction, operation or abandonment of rail lines . . ..

10

*CSX Transportation, Inc.-Petition for Declaratory Order,* 2005 WL 1024490, at *2-*4 (Surface Transportation Bd. May 3, 2005) (citations and footnote omitted). The design and construction of a railroad crossing is necessarily inextricably intertwined with the design and construction of the railroad tracks located at the crossing. Additionally, the design and construction of the railroad crossing relates directly to CSXT's rail activity at the crossing. ICCTA makes it clear that the Surface Transportation Board has exclusive jurisdiction over the "construction" of railroad tracks. Thus, the plaintiffs' claim that CSXT negligently designed and constructed the railroad crossing is preempted.

The Court's analysis is consistent with that applied in other cases that have concluded that ICCTA preempts state law negligence claims. In *Maynard v. CSX Transportation, Inc.*, 360 F.Supp. 836 (E.D. Ky. 2004). plaintiffs, individuals who owned land in the immediate vicinity of a side track located on property owned by a railroad, brought state law claims related to the use of the side track. Among other things, plaintiffs urged that the railroad's use of a side track blocked access to their property for excessive time periods, and that the railroad by virtue of the side track negligently permitted drainage from the adjoining properties to escape onto their property thereby diminishing the value of their property. The district court concluded that "[b]ecause it is CSX's construction and operation of the side tracks . . . which gave rise to Plaintiffs' claims, those claims are expressly preempted by the ICCTA." *Id.* at 842. *See also Friberg v. Kansas City Southern Railway Company*, 267 F.3d at 444 ( plaintiffs's state law negligence claims arising from railroad's alleged obstruction of a primary road due to its use of a side track preempted by ICCTA).

The Court acknowledges that the courts have not been unanimous in concluding that all state law claims urged against a railroad are preempted. Where plaintiffs have asserted against a railroad

11

a state law claim that does not directly relate to railroad operations, the state law claim has been found to not be preempted. In *Rushing v. Kansas City Southern Railway, Co.,* 194 F.Supp.2d 493 (S.D. Miss. 2001), plaintiffs, landowners living in close proximity to a railroad switching station, alleged that an earthen berm constructed on the grounds of the switching station had damaged their property because the berm caused pooling of rainwater on the plaintiff's property. Relying upon state nuisance and negligence law, plaintiffs sought an order requiring the defendant railroad to modify the berm. The defendant railroad admitted that it had constructed the berm "to reflect and absorb noise emissions originating from the rail yard." *Id.* at 501. The district court concluded that ICCTA did not preempt the plaintiffs' state law claim, in part, because the design and construction of the berm, did not "directly relate to the manner in which the Defendant conducts its switching operations." *Id.* Here however, unlike in *Rushing,* plaintiffs' claims of negligence resulting from the design and construction of the railroad crossing relate directly to CSXT's operations at the railroad crossing. Thus, this case is readily distinguished from *Rushing.*

Additionally, mindful of its obligation to construe a complaint broadly in the light most favorable to the plaintiff, the Court notes that even if plaintiffs' claim is construed as one to enforce the state's traditional police power to protect the health and safety of its citizens, the claim is preempted by ICCTA. "Congress made no blanket exception for a state's police power when describing the ICCTA's preemption scope." *A&W Properties, Inc. v. The Kansas City Southern Railway Company,* 200 S.W.3d 342, 347 (Tex. App. 2006). "[W]here cases have made reference to a state's police power in the course of ICCTA preemption analysis, the premise for the discussion is inevitably that the state retains its traditional police power in terms of public health and safety *except* where the state's actions regulate rail transportation." *Id.* (collecting cases).

Accordingly, CSXT's motion to dismiss is GRANTED.[7]

New Orleans, Louisiana this 27th day of December, 2007.

                                                STANWOOD R. DUVAL, JR.

                                           UNITED STATES DISTRICT JUDGE

---

[7] Having concluded that plaintiffs have failed to state a claim against CSXT and alternatively that any claim would be preempted by ICCTA, the Court need not address CSXT's contention that the plaintiffs' claims are also preempted by the Federal Railroad Safety Act, 49 U.S.C. §20101, *et seq.* ("FRSA").