UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | No. 05-4182 |
| PERTAINS TO: | * | & Consolidated Cases |
| LEVEE (DePass., No. 06-5127) | * | |
|     (Bourgeois, 06-5131) | | |
|       (Sims, 06-5116) | * | SECTION K |
| | * | JUDGE DUVAL |
| | * | MAGISTRATE KNOLES |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN OPPOSITION TO SWB'S
MOTION TO DISMISS UNDER FRCP 12B6 AND 12C**

**NOW COME** Plaintiffs, Elizabeth H. and William Keith DePass, IV, et al, residing in, or doing business in Metairie, Jefferson Parish, Louisiana (06-5127), Leslie Sims, Jr., et al, residing in, or doing business in Lakeview and Carrollton-Hollygrove areas of Orleans Parish, Louisiana 06-5116, and Plaintiffs, Linda C. and Arnold F. Bourgeois, et al, residing in, or doing business in the Old Gentilly and Lake Terrace sections of the City of New Orleans, State of Louisiana (06-5131), to file this Motion in Opposition to the Motions for Judgment and or Dismiss filed by New Orleans Sewerage & Water Board ("SWB") in their respective matters, Doc. Nos. 8893, 9009 and 9007, to-wit:

Plaintiffs filed their Complaints on August 28, 2006, naming SWB as a defendant. The original Complaint were amended in *DePass* by First, Second and Third Amending filed September 28, 2006, (Doc. 1254) , April 11, 2007, (Doc. 3708), and September, 2007 (Doc. 6796), and was the subject of an Intervention, filed August 28, 2007, (7338).

*Sims* and *Bourgeois* were amended only twice by First and Second Amending Complaint, (Docs. 1250 and 2961 and Docs. 7079 and 7083). *Sims* was subject to one intervention (Doc. 7336), *Bourgeois* to two: Doc. 7444 and 7359.

Depass and Sims make similar factual allegations. DePass, in Metairie, and Sims, in Carrolton/Hollygrove, are on opposite sides of the 17th Street Canal (sometimes referred to as the Montecello Canal), which is fed by the Palmetto, Hoey Canals and other feeder canals and drainage ditches, and pumped into Lake Pontchartrain via SWB's pumping station Six. Sims is also vulnerable to flooding due to the failure to close the south end of Orleans and New London Canals, and the failure of the Corps and SWB complete the fronting protection for All three: 17th, Orleans and New London.

Bourgeois involves Gentilly, and as such the failures complained of in Sims regarding the Orleans and New London Canals.

Unopposed Motion to Continue was filed 9192 and granted 9215 in DePass, although all three SWB Motions were intended. The Motion is set for hearing on January the 9th, 2008. Mover requested Oral Argument (Doc 8894), Plaintiffs join in that request, herewith.

## Law & Argument

In the initial Complaint, Plaintiffs sought declaratory judgment relief under 28 U.S.C. 2201(a), 28 U.S.C. 2202 and F.R.C.P 57 against a number of defendants, including SWB, that under certain acts of assurances given by each to the United States Corps of Engineers, that Plaintiffs' "claims for damages" resulted from "the construction of the (Mississippi River Gulf ) project" within the meaning of the April 15, 1957 Act of Assurance; that those "damages" were "due to the construction and subsequent

maintenance of the project" within the meaning of the September 19, 1950, February 3rd 1969, and the January 10, 1974 Acts of Assurance; due to " the authorized work" within the meaning of the July 28th, 1966 Act of Assurance and "damage due to the construction works" under the February 28, 1985, and June 21st, 1985, Agreements. Plaintiff invoked the doctrine of stipulation pour autri [Complaint ¶70[1]] and the direct action statute.¶69. Plaintiffs also sued the state defendants, including SWB, in negligence, invoking res ipsa ¶89 and Civil Code Art. 2322 garde¶ 71, seeking recovery of losses and damages suffered.

In the First and Third Amending Complaint, Plaintiffs made specific allegations supporting the claims in negligence and garde, The Second Amending added the United States as a defendant, those claims having become seasonable, and in the Intervention the Intervenors joined in claims asserted against the state defendants, and, if seasonable, against the United States.

By its Motion SWB responds, contending it "enjoys absolute immunity for actions it took in preparation for and in responding to Hurricane Katrina pursuant to Louisiana Homeland Security and Emergency Assistance and Disaster Act. LSA-R.S. 29:721-736." It adds "(t)he Act defines emergency preparedness as: the mitigation of, preparation for response to and the recovery from emergencies or disasters." 8993-2 at p. 9.

SWB, citing this Court's decision on the Port of New Orleans Motion to Dismiss (Doc 8913) asks the Court to Dismiss Plaintiffs claim on Acts of Assurances, claiming

---

[1] Paragraph reference numbers are from *DePass* Pleadings;

the same to be mere indemnity agreements, the Direct Action Statute inapplicable and that Plaintiffs are not third party beneficiaries thereof.

      *1.    SWB is not immune under the Louisiana Homeland Security and Emergency Assistance and Disaster Act.  R.S. 29:721-36.*

SWB neglects to mention that this Court in its Order & Reasons of September 13, 2006, denied the Sewerage & Water Board's two Motions to Dismiss on grounds of R. S. 29:735 immunity and *garde*. [2] Order and Reason of December 29, 2006.  (Doc. 2423 and 2422) Exhibits A and B. Mover SWB also overlooks, and does not address, Judge Peytavin's  September 29, 2006, Reasons For Judgment in *Levy et al. v. Jefferson et al*, No. 624 778 C/W 624-459, 625-145 and 626-415, and in *Loga et al v. Jefferson et al*., No. 625-145, or his Reasons for Judgment in *Bennett, et al. v. Board Of Commissioners For The East Jefferson Levee District, et  al*, No. 635-594 C/W No. 624-894 which rejected SWB's exceptions based on immunity. Exhibits C, D. and E. What this Court said previously in this case, can be said here:  "The acts of defendants complained of here are substantially attenuated from what this court deems to is the purpose of the Act and the concomitant grant of immunity.  In the Court's opinion, the acts complained of are not the type of emergency actions contemplated under section 735." Doc. 2334 [3]

---

[2] Cf.  *Armstead v. Nagin***,** Slip Copy, 2006 WL 3861769, (E.D.La., 2006.)("The Court does not agree with any tangential inference that acts or omissions of the Levee Board performed at times remote from Hurricane Katrina come under the ambit of the immunity statute. La.Rev.Stat. 29:735.")

[3] Indeed, as Judge Peytavin said in *Loga, et al v. Jefferson Parish*, No. 625-125: "Specifically the Court finds that neither R. S. 29:735 nor any other statutes provided the parish with immunity for acts and omissions that may have occurred days, months and

Summary of the Argument

This Court's decision is law of the case. The decisions in in *Levy et al. v. Jefferson et al*, supra, *Loga et al v. Jefferson et al.*, and *Bennett, et al. v. Board Of Commissioners For The East Jefferson Levee District, et al*, agree. Further all four were correctly decided and should be applied here.[4]

Neither the *DePass*, nor the *Sims*, nor the *Bourgeois* pleadings say anything about "negligent preparation immediately before the hurricane and negligent response during and after Hurricane Katrina", yet that is the way SWB categorized Plaintiff's allegations. SWB Memorandum. DePass, p. 8. Nor can it be said that SWB is sued "for *actions* it took before, during and after Hurricane Katrina," [Id. p.10] and certainly not actions taken in preparation for or response to Hurricane Katrina. Plaintiff complain of failures, of neglect, of negligence by passive omission, not acts of commission or exercised ommissions, most outside the temporal limitations on the reach of that rule, recognized in its Order & Reasons, *infra*  There are said to be "benchmarks by way of time limitations by which the mantle of statutory immunity would not be extended." *Levy*, supra, p. 9.  In *Saden* v. *Kirby,*  660 S.2d 423 (La. 1995 ) the Supreme Court  set the bench at less than three months before the "force majeure".

Plaintiff complaint is one of a failure to respond a failure to react, a failure usually pled in terms of some SWB passive inaction, predicated on a long dated prior failure; i.e.

---

years before Hurricane Katrina…." Id.    ; Cf.  Reason for Judgment, *Darlene Jacobs Levy v. The Parish of Jefferson*, 624-778, Sept. 29, 2006.

[4] Cf. La. Const 1974 Section 10 (A) is entitled, "No Immunity in Contract and Tort"**.**  It states: Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property.

the failure to close the Hoey canal because no power and no road to access to the Geigenheimer Gate. Plaintiffs' allegations of fault are not limited to the continued pumping and failure to close the Hoey Canal. Plaintiffs also allege a general failure to maintain the levees including the Monticello Outfall Canal. The fact that the SWB failed to provide power to the Hoey Gate or a rad so that auxiliary power could be employed, is alleged back flow. The fact that Sewerage and Water Board had the *garde* is also alleged. Clearly, the general failure of the levees over which this defendant had *garde* are not "emergency preparedness" activities. That and the fact that the Canal levees were in a general state of disrepair and no longer suitable to contain suitable to contain the rising waters projected to occur. First Amended Complaint, ¶75.6

In the First and Third Amending Complaint, Plaintiffs made specific allegations supporting the claims in negligence and garde, to wit that SWB acquired and owns the Canal[5] The allegation supporting negligence all are qualified by "the temporal element" and outside Emergence Preparedness immunity. [First ¶71.1" The Sewerage &Water Board is liable under Civil Code Article 2322 for the deterioration of the levees and levee improvements and structures *known to it before the events causing loss and damage* and the failure to repair same."], exercised control [Id. ¶ 75.4], managed it as a common enterprise [Id. ¶75.7], continued to pump waters into the Canal despite closure if Pumping Station Six [Id. ¶75.11[6]], an allegation explained in two allegations in Second Amending (i) the amendment to ¶75.12 ["The Parish of Jefferson was negligent in failing

---

[5] City of New Orleans "for the uses and benefit of the SWB."

[6] ¶75.11. "The Sewerage & Water Board is further at fault in failing to accommodate the closure of the 17th Street Canal by arresting the drainage of water, but exacerbating the problem by continuing to operate the pumps accelerating water volume in the 17th Street Canal beyond its capacity and flooding plaintiffs' property."

to close the Hoey Canal gate and arrest the flow of water into Jefferson via the open gate ***due to the prior failure to provide a roadway to permit access to the gate involved to introduce the power required to effect closure."*** Emphasis Added.] and (ii) the addition of ¶10m ["The Sewerage & Water Board continued to pump rainwater into the Orleans Canal, ***but due to the absence of fronting protection the waters flooded into the northern basin of the New Orleans East Polder***]. Relevant to garde 26a alleged that "Pumping Stations Six and Seven were owned by Sewerage & Water Board of New Orleans ("SWBNO") and Station Six was operated by SWBNO as a joint venture with the Parish of Jefferson."]

This is not to say that the complaint as amended does not reference Katrina related conduct. Plaintiff admits it. But the allegation are not about SWB's response to Katrina or preparation for it, protected by the Emergency Preparedness immunity. Passive negligence is alleged. Some systemic, lack of a plan, general deterioration, failure to repair, failure to provided power to the Gegenheomer Gate, failure provide a road so that mobile power could be brought to it timely. These are "passive omissions", not responsive or reactive actions. Others are about what SWB failed to do, passive omissions, not responses. i.e. ¶78 " . . . in failing to close the Hoey canal to prevent the flow of water from the 17th Street Canal into Metairie",:and ¶79."in failing to halt the pumping at feeder stations, Broad Street and Florida, given the closure of the 17th Street Canal, thus pumping flood and rain water into the 17th Street canal and into Hoey Canal, . . .."

Other allegations relate to garde. Ownership of the canal that failed to contain its waters, ownership of the pumping stations, Six that failed and Seven that continued to

pump, in particular, the fact that SWB ¶ 24 "is charged with the responsibility of operating the pumping station and drainage canals which feed the 17th Street Canal from the East, including the Broad Street Pumping Station and the Palmetto and Florida Avenue Canals"; ¶25.. ..  maintaining and operating the Hoey Canal, including the drainage for Metairie and the Hoey Canal Gate;  the ¶26 "the17th  Street Canal and  ¶28 "the pumping stations, drainage ditches and canals feeding the 17th Street Canal from east, including the Broad Street, Florida Avenue and New Basin pumping station, and the Palmetto Canal;

The same is true in Sims.

In the First and Third Amending Complaint, Plaintiffs made specific allegations supporting the claims in negligence and garde, to wit that SWB acquired and owns the Canal 71.1[7] The allegation supporting negligence all are qualified by "the temporal element" and outside Emergence Preparedness immunity. [Complaint; ¶71 The Sewerage &Water Board is liable under Civil Code Article 2322 for the deterioration of the levees and levee improvements and structures *known to it before the events causing loss and damage* and the failure to repair same."], exercised control [First,  ¶ 75.4], managed it as a common enterprise, common administration [Id.  ¶75.7], failure to control [Id. 75.9], Relevant to garde ¶26 alleges that "Pumping Stations Six and Seven were owned by Sewerage & Water Board of New Orleans ("SWBNO") and Station Six was operated by SWBNO as a joint venture with the Parish of Jefferson."

This is not to say that the complaint as amended does not reference Katrina

---

[7] City of New Orleans for the use and benefit of the SWB.

related conduct. Plaintiff admits it. But the allegation are not about SWB's response to Katrina or preparation for it, protected by the Emergency Preparedness immunity. Passive negligence is alleged. Some systemic, lack of a plan, general deterioration, failure to repair other Katrina related failures, i.e closure of the 17th Street canal and continued operation f the pumping station feeding the canal; [Complaint ¶27], continuing to pump waters into the 17th Street Canal despite closure if Pumping Station Six, [First Amending ¶75.11[8]]; First Amending ¶75.9 ( failure to control), Id.. ¶75.11 (failure to close the pumping stations) and Third Amending ¶9n (continuing to pump), These are "omissions", not commission, and not responsive actions, protected by immunity.

Other allegations relate to garde. Ownership of the canal that failed to contain its waters [First, ¶ 71.1], ownership of the pumping stations [Third ¶25a], Six that failed and Seven that continued to pump. The facts alleged include the allegation that SWB is Complaint ¶24 "is charged with the responsibility of operating the pumping station and drainage canals which feed the 17th Street Canal from the East, including the Broad Street Pumping Station and the Palmetto and Florida Avenue Canals"; Id. ¶25.. ..  maintaining and operating the Hoey Canal, including the drainage for Metairie and the Hoey Canal Gate; the Id. ¶26 "the17th Street Canal and Id ¶28 "the pumping stations, drainage ditches and canals feeding the 17th Street Canal from east, including the Broad Street, Florida Avenue and New Basin pumping station, and the Palmetto Canal;

---

[8] ¶75.11. "The Sewerage & Water Board is further at fault in failing to accommodate the closure of the 17th Street Canal by arresting the drainage of water, but exacerbating the problem by continuing to operate the pumps accelerating water volume in the 17th Street Canal beyond its capacity and flooding plaintiffs' property."

> **2.      *The SWB is the sole agency charged with the construction, control, maintenance and operation of the drainage system of the City of New Orleans. Liability under La. R.S. 29:2800 is sufficiently pled;***

SWB is an unattached board having the attributes of a corporation and capable of suing and being sued.  Home Rule Charter of the City of New Orleans, Article V, Chapter 3, s 5-301-302; *State ex rel. Saunders v . Kohnke,* 109 La. 838, 33 So. 793; *Warfield v. Fink and McDaniel Plumbing and Heating*, La.App., 203 So.2d 827; *Keller Construction Corp. v. George W. McCoy & Co.*, La.App., 138 So.2d 128. That board is the sole agency charged with the construction, control, maintenance and operation of the drainage system of the City of New Orleans; *Eschete v. City of New Orleans*, Id. 726. In fact, the Fifth Circuit has held that "the Orleans Levee Board and the Sewerage and Water Board jointly engaged Boh Brothers to do the (17th Street) canal work." *Perez v. Boh Bros. Const. Co., Inc.* , 673 So.2d 1375, (La.App. 5 Cir.,1996.), writ denied 679 So.2d 444, 96-1523 (La. 9/20/96).  In a related case the Court subsequently held SWB jointly liable with the Orleans Levee District as joint venturers in *Kelly v. Boh Bros. Const. Co., Inc.* 694 So.2d 463 (La.App. 5 Cir.,1997).

To prevail under La. R. S. 29:2800, the Plaintiffs must show:  (1) the Sewerage & Water Board's custody or ownership of the defective thing; (2) the defect created an unreasonable risk of harm; (3) actual or constructive notice of the defect and the failure to take corrective action; and, (4) causation.  *Henderson v. Nissan Motor Corp,* 869 So. 2d. 62 (La. 2004), *Joseph v. City of New Orleans,* 842 So. 2d 420 (4th Cir. 2004).

Plaintiffs' petition meets the *Henderson* requirement.  Control, operation and ownership are alleged , as foresaid.  Petition, para s. 18, 30, 31.  Defect is alleged. Id

Paras. 40, 8D.  "The lack of bilateral flood wall", Paragraph 8H, "failure to provide auxiliary power sources".  Concealment is alleged, and with it notices.  Finally, causation is alleged.  Paragraphs 21-29.

Mover also neglects to mention that in *Eschete v. City of New Orleans and Sewerage & Water Board,* 231 So.2d 725 (4th Cir.; 1970), (SWB found to have control over construction maintenance and operation of the City drainage system) and in *Kelly v. Boh Bros. Const. Co., Inc.* 694 So.2d 463 (La.App. 5 Cir.,1997.  (The SWB held liable with Boh Bros and the Orleans levee District for a dredging project in the 17th Street Canal.

The Louisiana Fifth Circuit has held that SWB to be a joint venturer with the Orleans Levee Board with respect to Boh Bros.' 17th Street  Canal dredging and have been held jointly and solidarily liable under Civil Code Article 2817 for injuries proximately caused by those operations.  *Kelly v. Boh Bros.,* 694 So. 2d 463 (5th Cir. 1997).  The case was before the Court on appeal from the judgment rendered after remand.  See *Perez v. Boh Bros.,* 673 So. 2d 1375 (5th Cir.; 1996).  The SWB and OLD were initially held liable jointly and solidarily as joint venturers.  The court addressed the question as follows:

> "In this case, the trial court found that the Orleans Levee Board and the Orleans Sewerage and Water Board were joint venturers and as such, were jointly and solidarily liable to plaintiffs. The Court of Appeal affirmed that ruling.  . . . Furthermore, upon finding that the Orleans Levee Board and the Orleans Sewerage and Water Board combined their resources in the conduct of the venture for joint profit or benefit, with each having some control, as the trial court did in finding that defendants were engaged in a joint venture, there is no reason to apportion liability in any manner other than equally." *Kelly v. Boh Brothers, et al,* 694 So. 2d 463 (5th Cir. 1997).

*Cf. Eschete v. City of New Orleans,* 258 La. 133, 245 So.2d 383 LA*, 1971.*

*3.  "Response", as used in Louisiana Homeland Security and Emergency Assistance and Disaster Act. R.S. 29:721-26 means in reaction to the disaster, more than a passive failure to act or decision not to act , which requires proof of fact, it does not include a mere passive failure to react.*

The Louisiana Homeland Security And Emergency Preparedness Act La. R.S. 29:721 et seq. expresses the scope of the immunity in terms of emergency preparedness, which it defines as follows:

"Emergency preparedness" means the mitigation of, prepration for, response to, and the recovery from emergencies or disasters.  The term "emergency preparedness" shall be synonymous with "civil defense", "emergency management", and other related programs of similar name.  R.S. 20:723(9)

Cf. Members of 911 Communications Districts are immune from liability as individuals or for actions taken as a member of the group while engaged in any emergency preparedness activity or while exercising judgment in the formation and implementation of policy while acting as a member of the boasrd, commission or authority of the political subdivision, provided they act in good faith and within the scope of official functions and duties.  Op. Atty. Gen., No. 99-189, October 21, 1999.

*4.  Plaintiffs have a Direct Action under the Acts of Assurances;*

The Direct Action Statute provides an entirely independent right of action directly against SWB alone, and the Plaintiffs pled its application.  The rejection of the application of the Direct Action Statute in *Cooper v. LDOT* was premised on the definition of the insurer in 1972.  This holding failed to recognize that under La. R.S. 22:10 "Insurer" includes every person engaged in the business of making contracts of insurance, other than a fraternal benefit society."  As such it necessarily includes SWB and other public entities authorized by law to issue contracts in favor of the Corps.  The significant definition is the one which preceeds, (9)(a), which defines "Insurance" is a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.  *It shall include any trust, plan or agreement*, popularly known as employee benefit trusts, not specifically exempted from state regulation under

Public Law 93-406, except collectively bargained union welfare plans, single employer plans or plans of the state."

Furthermore, *Cooper* v. *Bogalusa* did not settle for all time and all purposes that every such hold harmless agreement is as an indemnity contract, and no direct action lies against the promissor.  In *Cooper,* the City of Bogalusa was "willing to pay whatever expenses or assessment the United States might incur in connection with the acquisition of the necessary right-of-way and such property damage as the owner might recover against the United States." Here the Port procured rights of way and agreed. Furthermore, the decision in *Cooper* v. *Bogalusa* rendered in 1940 must be revisited in light of the Supreme Court's subsequent decision in *Quinlan v. Liberty Bank and Trust Co.*, 575 So.2d 336 (La. 1990)*.  First Nat. Bank of Louisville v. Lustig,* 975 F.2d 1165 C.A.5 (La.), 1992.  Finally, the Court in *Cooper v. Bogalusa* erred in applying Louisiana law.  Federal common law applies in defining the obligation owed by the Port as local authority under Congressionally mandated local cooperation agreement and under federal common law hold harmless provisions and indemnity provisions are distinctly different species of contact clauses.  An agreement "to hold harmless from claims" requires no judgment against the wrongdoer in whose favor the hold harmless runs, whereas a judgment against the indemnified party is predicate to an action against the indemnifying party on an indemnity.

> 5. ***Plaintiffs are the third party beneficiary to the Act of Assuranes and have the right to recover from SWB.***

The agreement between the Mover SWB and the United Sates Army Corps of Engineers, "created a stipulation *pour autri* in favor of the Plaintiffs who are the third

party beneficiaries to the 'Act of Assurance.'" *Cooper et al v. Louisiana Department of Public Works,* at 330. "A stipulation *pour autri* gives a third party the right to demand performance from the promissor, directly." Id. 330. "Our law favors stipulations made in favor of a third person." The claims against the Mover Port fall squarely within the holding of the court in *Cooper* et al v. *Louisiana Department of Public Works et al.*

In *Cooper* the landowners brought an action against Department of Transportation and Development (DOTD), seeking damages for the permanent flooding of portions of their land resulting from construction of locks and dams for the permanent flooding of portions of their lands which interfered with their servitudes of drainage, caused by construction of locks and dams, qualified as continuing torts. Act of Assurances executed to facilitate construction of locks and dams by Army Corps of Engineers, under which Department of Transportation and Development (DOTD) agreed to furnish free of cost necessary land, easements and right-of-ways, and agreed to hold and save the United States free from damages due to the construction, were held to be a stipulation *pour autrui* in favor of landowners whose servitudes of drainage were interfered with in subsequent flooding, such that landowners could bring third party beneficiary action directly against DOTD.

To paraphrase the opinion of the *Cooper* Court:

When we apply the factors to the facts of this case, the legal relationship between the promisee (United States ) and the third person (Plaintiffs) involves an obligation (to reimburse the Plaintiffs for permanent flooding of the land caused by the maintenance of (the 17th Street, New London and Orleans Canals ) owed by the promisee (United States) to the beneficiary (Plaintiffs), which the performance of the promise . . . for construction . . . and subsequent maintenance, when and as required 'and to [h]old and save the United States free from damages due to construction and maintenance of the project)' by the promissory (SWBt).

In other words, the obligation of the United States imposed as a condition of the "Act of Assurance" and undertaken by the Port constitutes a stipulation *pour autri* in favor of the Plaintiff.

> In addition, the relationship between the United States and the Plaintiffs was sufficient to support the inference that there was a possibility that the United States could be liable to Plaintiffs some time in the future the support for the Port's promise would protect the United States. The possibility was realized once before when the Port was sued in *Graci v. United States,* 456 F2d (5 Cir.; 1971).

First, Plaintiffs' suits fall within the guidelines set by the Louisiana Supreme Court for determining when claimants should receive third party beneficiary status as interpreted in, and falls squarely within, the rule of *Cooper et al v. Louisiana Department of Public Works*, 870 So. 2d 315 (3rd 2004). Plaintiffs pled the application of the state law third party beneficiary doctrine, and the allegations of the Complaint sufficient to weather a 12(b)(6) challenge.

"Federal law controls the interpretation of the contract.  See *United States v. County of Allegheny*, 322 U.S. 174, 183, 64 S. Ct. 908, 88 L. Ed. 1209 (1944); FN12, *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S. Ct. 573, 87 L. Ed. 838 (1943). This conclusion results from the fact that the contract was entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution.  See *U. S .v. Seckinger,* 397 U.S. 203, 90 S.Ct.880 (U.S. Ga. 1970.

A hold harmless from claims does not require that the indemnified party be cast in judgment or otherwise ordered to pay. Cf*. U.S. v. Schwartz*, 90 F.3d 1388 (C.A.8 (Minn.), 1996).  In contrast where a "contract is strictly one of indemnity. . . the indemnitee cannot recover until he has actually made payment or otherwise suffered a loss or damage. . . "

Indemnity, 42 *Corpus Juris Secundum* Sec. 23, p. 111.  *Taormina Bros., Inc. v. Compagnie Europeen D'ASSURANCES INDUSTRIELLES S.A.,*  Not Reported in F.Supp., 1994 WL 361414 (S.D.N.Y.,1994.)  See *Travelers Indemnity Co. v. Calvert Fire Ins. Co.,* 836 F.2d 850, 853 (5th Cir.1988)*; Stuyvesant Ins. Co. v. Nardelli,* 286 F.2d 600, 602-03 (5th Cir.1961)*.* Under an indemnity policy, the insurer is not required to indemnify any amount to the insured until the insured "proves payment in the amount of its recovery." *Stuyvesant Ins.,* 286 F.2d at 603

      6.    ***The Federal Rules require only notice pleading. Plaintiffs pleadings are sufficient for such purposes; Alternatively,  Plantiffs should be permited to amend.***

A claim will only be dismissed under Rule 12(b)(6) if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief.  See *Williams v. Seniff,* 342 F.2d 774 (7th Cir. 2003).  Even if the asserted legal theory is not cognizable or the relief sought is unavailable, a claim generally will not be dismissed if there are other tenable legal claims evident on the fact of the complaint.  See *Carparts Distrib. Cir. V. Automotive Wholesaler's Ass'n. of New England, Inc.,* 37 F.3d 12, 17 (1st Cir. 1994) ("For purposes of Fed. R.Civ. P. 12(b)(6), the possibility of a claim is enough to defeat dismissal.").

## Conclusion

SWB's Motion should be denied. Alternatively, Plaintiffs should be granted leave to amend.

                                                Respectfully submitted,

                                                                                 _____
WILLIAM C. GAMBEL, Bar # 5900
MILLING BENSON WOODWARD, LLP
909 Poydras Street, Suite 2300
New Orleans, LA 70112
Telephone: (504) 569-7210

JOHN J. CUMMINGS, III, Bar # 4652
CUMMINGS & CUMMINGS
416 Gravier Street
New Orleans, LA 70130
Telephone: (504) 586-0000


W368518

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others depositing same in the United States mail, postage prepaid and properly addressed, this 31st day of December, 2007.

              /s/ William C. Gambel
              William C. Gambel

W368518