## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

CIVIL ACTION

NO. 05-4182

SECTION "K"(2)

PERTAINS TO:
05-4181, 05-4182, 05-5237, 05-6073, 05-6314
05-6324, 05-6327, 06-0020, 06-0225, 06-0886,
06-2278, 06-2287, 06-2545, 06-2346

### ORDER AND REASONS

Before the Court is Government Defendants' the Board of Commissioners of the Orleans

Levee District ("OLD") and the Sewerage and Water Board of New Orleans ("SWB") Fed. R.

Civ. P. 12(b)(6) Joint Motion to Dismiss (Doc. 573) in which defendants seek dismissal of the

claims lodged against them in the above-noted cases based on the immunity granted by the State

of Louisiana in La. Rev. Stat. 29:735 for any lawsuits arising out of these entities' emergency

preparedness activities.  Having reviewed the pleadings, memoranda, and the relevant law, the

Court will deny this motion.


**Background**

Fourteen putative class action lawsuits seek recovery from the Orleans Levee District for

flooding and other property damage due to breaches in levees following Hurricane Katrina.  The

allegations of liability plaintiffs advance against the OLD can be categorized as follows:

1.  Failing to test and/or inspect whether the design, construction, composition, and

    maintenance of the 17th Street, London Avenue and Industrial Canal Levees was



EXHIBIT
A

adequate, proper and within standards, resulting in both negligence and "strict

liability" in accordance with La. C.C. arts. 2317 and 2317.1;[1]

2.      Failing to ensure the adequacy of the design, construction, composition and

maintenance of the 17th Street, London Avenue and Industrial Canals, resulting in

both negligence and "strict liability" in accordance with La. C.C. arts. 2317 and

2317.1;[2]

3.      Failing to repair Floodgate W-30 after settling a lawsuit the Orleans Levee

District filed against the New Orleans Public Belt Railroad after one of its railcars

damaged the floodgate.[3]

As to the SWB, plaintiffs contend, *inter alia,* that the SWB, has been responsible for

drainage since 1896.   Plaintiffs allege that the SWB  negligently interfered with the Corps with

respect to the drainage canals and the installation of tidal gates and pumps at the drainage canal

---

[1]*Berthelot,* 05-4182, Second Supplemental and Amending Complaint, ¶36(D)(3); *Kirsch,* 05-6073, Class Action
Complaint, ¶36(D)(3); *Ezell,* 05-6314, Class Action Complaint,¶36(D)(3); *Brown,* 05-6324, Class Action Complaint,
¶36(D)(3); *Leblanc,* 05-6327, Complaint for Damages- Class Action, ¶ VI(A)(4)(c); *Tauzin,* 06-0020, Class Action
Complaint, ¶¶ 44-55; *Bradley,* 06-225, Class Action Petition for Damages, ¶¶11-12; *Finney,* 06-886, Class Action
Complaint,¶36(D)(3); *Christenberry,* 06-2278, Petition for Damages- Class Action, ¶30; *Sanchez,* 06-2287, Class Action
Complaint,¶XXXIII(D)(3); and *Marcello* 06-2545, Class Action Petition,  ¶¶12(F)(1)-(9); *Fitzmorris,* 06-2346,
Complaint, ¶¶ 36-56.

[2]*Berthelot,* 05-4182, Second Supplemental and Amending Complaint, ¶36(D)(3); *Kirsch,* 05-6073, Class Action
Complaint, ¶36(D)(5); *Ezell,* 05-6314, Class Action Complaint,¶36(D)(5); *Brown,* 05-6324, Class Action Complaint,
¶36(D)(5); *Leblanc,* 05-6327, Complaint for Damages- Class Action, ¶ VI(A)(4)(e); *Tauzin,* 06-0020, Class Action
Complaint, ¶¶ 44-55; *Bradley,* 06-225, Class Action Petition for Damages, ¶¶11-12; *Finney,* 06-886, Class Action
Complaint, ¶36(D)(5); *Christenberry,* 06-2278, Petition for Damages- Class Action, ¶30; *Sanchez,* 06-2287, Class
Action Complaint,¶XXXIII(D)(5); *Marcello* 06-2545, Class Action Petition, ¶¶12(F)(1)-(9); and *Fitzmorris,* 06-2346,
Complaint, ¶¶ 36-56. Plaintiffs in *O'Dwyer* make a conclusory allegation of intentional conduct on the part of the
Orleans Levee District, but fail to provide any rational factual support for this allegation.  These allegations are discussed
in great detail in Section II(D), infra.

[3]*Berthelot,* 05-4182, Second Supplemental and Amending Complaint, ¶¶36(D)(6)-(11); *Kirsch,* 05-6073, Class Action
Complaint, ¶36(D)(6)-(11); *Ezell,* 05-6314, Class Action Complaint, ¶36(D)(6)-(11); *Brown,* 05-6324, Class Action
Complaint, ¶36(D)(6)-(11); *Leblanc,* 05-6327, Complaint for Damages- Class Action, ¶ VI(A)(3)(c)-(g); *Tauzin,* 06-
0020, Class Action Complaint, ¶¶ 39-40; *Finney,* 06-886, Class Action Complaint, ¶36(D)(6)-(11); *Sanchez,* 06-2287,
Class Action Complaint,¶¶XXXIII(D)(6)-(11); *Fitzmorris,* 06-2346, Complaint, ¶¶ 52-56.

outfalls. They also contend that in 1988 the SWB deepened and widened the 17th St. Canal which allegedly weakened the floodwalls. SWB also allegedly failed to investigate properly the water pooling at the 17th St. Canal and failed to disseminate their knowledge that the pooled water emanated from the canal.

As noted, defendants move to dismiss these claims pursuant to Fed. R. Civ. P. 12(b)(6) based on state law immunity provided by La. Rev. Stat. 29:735.

**Standard Under Rule 12(b)(6)**

When a defendant attacks the complaint because it fails to state a legally cognizable claim, Rule 12(b)(6) provides the appropriate challenge. The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id. citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Fifth Circuit explained:

> Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliott v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989). Further, "the plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.* 94 F.3d 189, 194 (5th Cir. 1996). This is consistent with the well-established policy that the plaintiff be given every opportunity to state a claim. *Hitt*, 561 F.2d at 608. In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994).

*Id.* at 161-62.


**Analysis**

The gravamen of this motion is whether the statutory obligations and/or acts or omissions of defendants as set forth above meet the definition meet the definition of "emergency preparedness" of La. Rev. Stat. 29:735. The Court notes that the acts or omissions alleged by plaintiffs span many years.

In 1993, by Acts 1993 No. 800 § 1, the Louisiana Legislature enacted the "Louisiana Homeland Security and Emergency Assistance and Disaster Act" (hereinafter, "the Act").[4] The Legislature found the Act necessary:

> Because of the existing possibility of the occurrence of emergencies and **disasters of unprecedented size and destructiveness** resulting from terrorist events, enemy attack, sabotage, or other hostile action, or from fire, **flood, earthquake, or other natural or man-made causes** * * * (and) to reduce vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural and man-made catastrophes [5]

In addition to empowering the Governor, Parish Presidents and others within the Executive branch of government to enact procedures to prepare for such natural and man-made disasters, the Legislature also granted immunity to the State's political subdivisions and their employees, providing as follows:

> A.  Neither the state nor any political subdivision thereof, nor other agencies, nor, except in the case of willful misconduct, the agents' employees, or representatives of any of them, engaged in any homeland security and emergency preparedness activities, while complying with or attempting to comply with this Chapter or any

---

[4] La. R.S. 29:721 to 29:736.

[5] La. R.S. 29:722(A) and (A)(4)(Emphasis added).

4

rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.

La. Rev. Stat. 29:735(A).

Section 722 sets forth the purpose of the Act entire act, and in general, the purpose appears to be to designate the Military Department of the state as the homeland security and emergency preparedness agency; and to give the Governor and Parish presidents emergency powers; to prepare plans to meet emergencies, to provide for efficient evacuation, to minimize loss of life, to assist victims and to coordinate among agencies.

Defendants rely on several cases including *Castille v. Lafayette City-Parish Consolidated Government*, 896 So.2d 1261 (La. App. 3rd Cir. 2005) and *Hontex Enterprises, Inc. v. City of Westwego*, 833 So.2d 1234 (La. App. 5th Cir. 2003). *Castille* involved an alleged negligent action which occurred two days after Hurricane Lily struck Lafayette. Moreover it focused on whether the "willful misconduct" exception referred to only employees or agents and not to the political subdivision itself. The court held that the willful misconduct exception only applies to employees or agents. *Hontex* involved the building of an emergency levee because of a flooding condition which had been declared a state of emergency; therefore, the levee was constructed during the state of emergency as a temporary measure.

The allegations of plaintiffs which must be accepted as true allege acts and omissions which took place years before any specific emergency, and some of them took place before the Act was passed. Additionally, plaintiffs have alleged that each defendant has statutory duties that are separate and apart from the duties arising from the Act. The acts of defendants complained of here are substantially attenuated from what this Court deems is the purpose of the

Act and the concomitant grant of immunity.  In the Court's opinion, the acts complained of

herein are not the type of "emergency" actions contemplated under section 735.

Counsel for defendants refer the Court to Magistrate Judge's opinion in *Armstead v.*

*Nagin*, C.A. 05-6438 where in a Report and Recommendation, Magistrate Judge Wilkinson

applied La. Rev. Stat. 29: 735 to the duties of the Orleans Levee District vis-a-vis the levees

under its control.  In adopting Judge Wilkinson's Report and Recommendation, this Court noted,

"The Court does not agree with any tangential inference that acts or omissions of the Levee

Board performed at times remote from Hurricane Katrina come under the ambit of the immunity

statue. La. Rev. Stat. 29:735."   This Court also observed that the actions of defendants

immediately prior to and subsequent to Hurricane Katrina were the thrust of the complaint in

*Armstead*.  Thus, *Armstead* is factually distinguishable from the allegations of this case.

Accordingly,

   **IT IS ORDERED** that the Government Defendants' the Board of Commissioners of the

Orleans Levee District ("OLD") and the Sewerage and Water Board of New Orleans ("SWB")

Fed. R. Civ. P. 12(b)(6) Joint Motion to Dismiss (Doc. 573) is **DENIED**.

   New Orleans, Louisiana, this  _29th_ day of December, 2006.

                                              _____
                                              STANWOOD R. DUVAL, JR.
                                       UNITED STATES DISTRICT COURT JUDGE