24TH JUDICIAL DISTRICT COURT OF THE PARISH OF JEFFERSON

STATE OF LOUISIANA

NO. 624-778 C/W
624-459, 625-145 & 626-415

DIVISION "I"

DARLEEN JACOBS LEVY, ET ALS.

VS.

THE PARISH OF JEFFERSON, AARON BROUSSARD, CONSOLIDATED DRAINAGE DISTRICTS NOS. 1 & 2 OF JEFFERSON PARISH, JEFFERSON PARISH CONSOLIDATED SEWERAGE DISTRICTS NOS. 1 & 2, JEFFERSON PARISH CONSOLIDATED WATERWORKS DISTRICTS NOS. 1 & 2 AND FOURTH JEFFERSON DRAINAGE DISTRICT

FILED: September 29, 2006

_____
DEPUTY CLERK

## REASONS FOR JUDGMENT

On October 25, 2005, the plaintiff Darleen Jacobs Levy filed a Claim for Damages, Class Action Certification Requested, against the Parish of Jefferson. In paragraph 3 and 4, she alleged the following facts:

"3.

On or about August 29, 2005 hurricane winds in excess of 105 miles an hour as well as rain pummeled the Jefferson Parish area, causing drainage canals to fill with water.

4.

The pumping stations were adequate in the Parish of Jefferson to control said water and keep it from flooding the Jefferson Parish area; however, Aaron Broussard, President of the Jefferson Council ordered pumping mechanics to leave their posts prior to the full impact of the storm, causing said canals to fill with water and flood various areas of Jefferson Parish."

She further alleged that she owned eight town houses at 4425 – 4501 Talon Street and that all eight flooded "when the drainage cancels over flowed onto her property." She alleged that the Parish of Jefferson was negligent.

The Parish of Jefferson filed an Exception of No Cause of Action. It argued in memorandum that it was immune from liability under La. R.S. 29:735. It argued that Hurricane Katrina was a "disaster" and created an "emergency."



The defendant relied on *Castille v. Lafayette City-Parish Consolidated, Ltd.*, 896 So.2d 1261 (La. App. 3rd Cir. 2005) where after the hurricane, city workers obstructed motorists views by piling debris near the roadway. It also cited *Hontax Enterprises, Inc. v. City of Westwego*, 833 So.2d 1234 (La. App. 5th Cir. 2005).

At a later date the plaintiff filed a Supplemental and Amending Petition. She joined Parish President Aaron Broussard as a defendant individually and as president. She reiterated previous allegations and added:

"13.

The actions of the defendants herein constitute willful, wanton, gross negligence, and an improper and unconstitutional "taking" of property without just compensation, on the date, and at the time of the accident at issue herein."

In a second memorandum, defendants argue that Aaron Broussard's order to evacuate the pumps did not constitute a taking. They pointed to the Louisiana Constitution and the three (3) prong test of *Constance v. State DOTD*, 626 So.2d 1151 (La. 1993). Defendant pointed to federal case law and argued that flooding must be recurring to constitute inverse condemnation.

Defendants acknowledge that plaintiffs alleged that President Broussard "willfully, wantonly and with gross negligence arbitrarily ordered" evacuation of the pump operators. Defendants argued that plaintiffs' pleadings lacked specific facts.

Defendants cited *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and *Board of Examiners v Neyrey*, 542 So.2d 56 (La. App. 4th Cir. 1989). All of the above cases were extensively discussed in Reasons for Judgment in the consolidated case of *Loga, et als. v. Jefferson Parish, et. als.* No. 625-145, and will not be further discussed herein. *Loga's* reasons are made part hereof by reference.

On August 10, 2006, plaintiffs filed a Third Supplemental and Amending Petition. She included paragraphs 18 and 19 that alleged:

"18.

Petitioners aver that at all times pertinent hereto, defendants, THE PARISH OF JEFFERSON, AARON BROUSSARD, AND THE CONSOLODATED SEWERAGE DISTRICTS OF JEFFERSON PARISH's actions in abandoning the pumps not only caused the plaintiffs' damages on and after August 29, 2005, but said action will continue to cause damage on each and every potential flood.

2

19.

In addition to the other claims of plaintiffs stated against the defendants herein, defendants are also separately liable to plaintiffs for damages pursuant to LSA-R.S. 9:5624."

On August 29, 2006, plaintiffs filed a Fourth Supplemental and Amending Petition adding Consolidated Drainage Districts Nos. 1 and 2 and Sewerage Districts Nos. 1 and 2 of Jefferson Parish and Fourth Jefferson Drainage District as additional defendants. Paragraph 3 contained many details of breached duties by all defendants. It also contained an allegation that defendants knowingly failed to comply with the requirements of the Louisiana Homeland Security Act and failed to act in good faith as required by Louisiana Law.

Plaintiff further pleaded:

"4.

By supplementing and amending the original, first, second and third supplemental petitions filed herein to add:

'At all times pertinent hereto, including on the dates of the subject incident(s), all of the defendants herein, violated Jefferson Parish policy and procedure by abandoning the pumps, when policy and procedure mandated that the pump operators were and are essential emergency personnel, who must stay on the job and at their posts during floods and hurricanes.'

5.

By supplementing and amending the original, first, second, and third supplemental petitions filed herein to add:

'At all times pertinent hereto, defendants, Aaron Broussard and Jefferson Parish, violated Jefferson Parish policy and procedure by abandoning the pumps, by ordering the pump operators to abandon the pumps, when policy and procedure mandated that the pump operators were and are essential emergency personnel, who must stay on the job and at their posts during floods and hurricanes.'

6.

By supplementing and amending the original, first, second, and third supplemental petitions filed herein to add:

3

'At all times pertinent hereto, defendant, Aaron Broussard, exceeded his authority by ordering the pump operators to abandon the pumps, when policy and procedure mandated that the pump operators were and are essential emergency personnel, who must stay on the job and at their posts during floods and hurricanes.'...

9.

By supplementing and amending the original, first, second, and third supplemental petitions filed herein to add:

'Defendants are strictly liable insofar as the injuries and damages sustained by plaintiffs and the plaintiff class were caused by a defect in the flood control systems over which defendants exercised custody and control. Defendants are also jointly liable to plaintiffs' class for their own negligence and willful and wanton conduct and for the negligence and willful and wanton conduct of Aaron Broussard under the doctrine of respondeat superior.'"

Paragraphs 4, 5, and 6 above contain a recurring theme running through all consolidated cases. They allege the existence and violation of Jefferson Parish policy and procedure. For purposes of this exception those allegations must be considered as true. The parish's policies and procedures are important because of the "except in case of willful misconduct" language in R.S. 29:735 and the following language in paragraphs B and C of R.S. 9:2798.1:

"B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

C. The provisions of Subsection B of this Section are not applicable:

(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or

(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."

Acceptance of the allegations of paragraphs 4, 5, and 6 above suggests that Aaron Broussard possibly had no discretion to act in violation of Jefferson Parish policy regarding "essential emergency personnel."

4

The "policymaking and discretionary acts" phrase in R.S. 9:2793.1 above bears further mention. An early case that interpreted the phrase was *Fowler v. Roberts*, 556 So.2d 1 (La. 1989). There an epileptic automobile driver suffered a brain seizure and caused an accident. The issue was whether "the discretionary function exception to governmental liability immunizes the Department of Public Safety for any negligence in renewing the epileptic's license to drive." On rehearing the Supreme Court acknowledges that the purpose of licensing law was to protect the public. It cited *Berkowitz v. United States*, 486 U.S. 531 (1988) and other federal cases. One of the Court's findings was that "the exception protects the government from liability only at the policy making or ministerial level, not at the operational level." (Citing *Pendergrass v. State of Oregon*, 675 P.2d 505 (Or. App. 1984)). The Court found that the department was by law required to formulate rules and policy on licensing handicapped persons and failed to do so. It decided the discretionary function exception did not apply and the department was liable for its negligence.

Strangely, the term "Public Duty Doctrine" was never called by name in *Fowler v. Roberts*. Years later however, in deciding *Hardy v. Bowie*, 744 So.2d 606 (La. 1999) the Supreme Court both defined the "Public Duty Doctrine" and commented on La. R.S. 9:2798.1 and its prior decisions *Stewart v. Schmieder*, 386 So.2d 1351 (La. 1980) and *Fowler v. Roberts* (La. 1989).

In *Hardy v. Bowie* above, the parents of a shooting victim brought a negligence action against the city for alleged failure of police officers to prevent the victim's death. The Supreme Court held that (1) the city was not immune from liability under the "discretionary function doctrine," but (2) the officers reasonably discharged their duty at the time of the shooting. In so doing it reasoned as follows:

"The issue on appeal is whether a one-on-one duty arose between a police officer and a citizen such that the officer's general public duty was usurped by a special duty to that individual. Additionally, before this court is the issue of whether La. R.S. 9:2798.1 applies to render the City of Lafayette, as governmental actor through the Lafayette Police Department and its employees, immune from suit arising from a victim's murder..."

"The court was correct in noting that a crucial issue was whether the police officers owed a duty to Hardy; however, its reliance on the public duty doctrine and its exceptions was

5

misplaced. The public duty doctrine has never been adopted by this Court, and we have criticized and rejected it as a categorical rule. *See Stewart v. Schmieder, supra* and *Fowler v. Roberts*, 556 So.2d 1 (La.1989)..."

The court went on to explain how legislatively R.S. 9:2798 began as an attempt to adopt the "public duty doctrine" by statue but by senate amendment adopted the "discretionary function doctrine" instead. In applying the "discretionary function doctrine" the court in *Hardy v. Bowie* decided that the city was not immune from liability under La R.S. 9:2798.1 and decided the case under the duty-risk analysis.

In oral argument Defendants maintained that the legislature passed other absolute immunity statutes for various matters and these passed Constitutional muster. This subject will be discussed later.

The case of *Stewart v. Schmieder*, mentioned by the *Hardy* Court, involved the City-Parish's building official's duty to require detailed plans before issuing a building permit. The City-Parish's defense was the "public duty doctrine." In rejecting it, the *Stewart* court commented:

"The 'public duty doctrine' has come under considerable attack in recent years. It has been called 'in reality, a form of sovereign immunity.' *Adams v. State of Alaska*, 555 P.2d 235, 241 (Alaska 1976). One court has said that it sets up just the type of 'proprietary' and 'governmental' distinction that was disposed of by the abolition of sovereign immunity. *Coffey v. City of Milwaukee*, 247 N.W.2d 132 (Wis.1976).... The doctrine also has the effect of removing a great deal of the incentive for public bodies to see that the functions of government are carried out responsibly and with reasonable care. The need for governmental responsibility in the modern world was a major factor in this court's action in abandoning the doctrine of sovereign immunity in *Board of Commissioners of the Port of New Orleans v. Splendour Shipping & Enterprises Co.*, 273 So.2d 19 (La.1973)."

Oral argument in the *Levy* case by Defendants averred that the whole basis of Plaintiff's original petition was the non-operation of the pumps. They further argued that her first supplemental petition centered on conclusary arguments without factual basis.

Relying on prior argument from the *Loga* case, Defendants argued that R.S. 29:735 provided both Aaron Broussard and the parish with "absolute immunity with no temporal

clement." They claimed the immunity would apply to any course of conduct even ones "extending back for years and years."

On the subject of alleged inverse condemnation, Defendants pointed to the fact that no public work was involved and that damage was not a taking. They cited *Hontex Enterprises, Inc. v. City of Westwego* above, and federal cases that required that flooding must be frequent and recurring for inverse condemnation to apply.

Plaintiff's attorney countered with *Mitter v. St. John the Baptist Parish and Arnold J. Labat, President, St. John the Baptist Parish*, 920 So.2d 263 (La. App. 5th Cir. 2005). Property owners in that case brought inverse condemnation action against the parish and its president. The district judge found that immunity did not apply and that defendants' actions constituted a per se taking.

A final recent case on R.S. 27:98.1 immunity was *McIntosh v. McElveen*, 893 So.2d 986 (La. App. 3rd Cir. 2005). This case began as a domestic dispute with an ex-husband beating his ex-wife. Her boyfriend was chased off by the ex-husband. At a convenience store, the boyfriend told off duty Deputy McIntosh of the beating and requested assistance. Meanwhile back at the scene, a neighbor saw the ex-husband pull a gun from the saddle-bag of his motorcycle. He called 911 and told the call taker that "his neighbor was getting shot." The call taker told the dispatcher Deputy Theresa Patrick "that shots had been fired," stating "1280 Sistrunk Road 34-Sam" (34 Sam was the police code for a shooting in progress). Deputy Patrick spoke with off duty Deputy McIntosh on route to the scene. She never mentioned shots being fired. She never uttered the police code words "34-Sam." Deputy McIntosh arrived at the scene unaware of shots being fired. He was shot and killed by the ex-husband.

The slain deputy's widow and children sued alleging the dispatcher's negligence. The Court of Appeal held that the dispatcher's failure to warn was an outrageous, reckless, and flagrant omission, for which the sheriff's officer was not entitled to immunity.

## FINDINGS AS TO FACTUAL ALLEGATIONS



The Court finds that the plaintiff's pleaded facts in her various petitions were sufficient to state a cause of action against Aaron Broussard. This was particularly true of the original, and the first and fourth amended petitions. The allegations of willful, wanton and gross negligence in her first amended petition together with violation of Jefferson Parish Policy were sufficient to overcome the immunities of the immunity statutes cited.

7

It further finds the allegations of a defect in the flood control systems satisfied factual requirements of the strict liability statutes as to both the Parish of Jefferson and Aaron Broussard.

It further finds that allegations of abandoned pumps, violated policies and procedures and essential emergency personnel presented sufficient factual allegations for presentation to the trier of facts of an inverse condemnation question.

## CONCLUSIONS OF LAW

1. The legal requirements and function of an exception of no cause of action are accurately stated in *Kuebler v. Martin*, 578 So.2d 113 (La. 1991) and *Board of Examiners v. Neyrey* cited above.

2. Sovereign immunity is not the law of Louisiana. See *Board of Commissioners of the Port of New Orleans v. Splendour Shipping & Enterprises Co.*, 273 So.2d 19 (La. 1973) and Louisiana Constitution of 1974, Article 12, Section 10, Subsection A.

3. Statutory immunity provided by La. R.S. 9:2798.1 is not absolute. See *Mitter v. St. John the Baptist Parish, et al.*, 920 So.2d 263 (La. App. 5th Cir. 2005) at page 266:

    "In well-analyzed and well-written reasons for judgment, the trial judge stated in pertinent part:

    'It is unthinkable that a governmental authority could be protected from liability in a case such as this where improvements to the drainage system relieving the problems of certain citizens (Belle Grove residents), causes problems to other citizens…'

    Citing *McCloud v. Parish of Jefferson*, 383 So.2d 477, (La.App. 4th Cir. 1980), the trial judge quoted language from that case which supports a conclusion that the immunity in discretionary matters exercised by governmental agency is not absolute:

    '… Once a governmental body, however undertakes to provide drainage or to make general improvements to an existing system, it has a duty to perform this function according to reasonable standards and in a manner which does not cause damage to particular citizens. …'"

Webster's dictionary defined "absolute" as "not limited by a Constitution, parliament etc., unrestricted (an absolute ruler)." The phrase "absolute immunity" does not

8

appear in any of the immunity statutes cited by either party. Parenthetically it can too readily be translated "sovereign immunity."

4  Louisiana case law has traditionally applied temporal elements or pre-emergency limitations to statutory immunities provided by R.S. 29:735; 9:2792; 9:2800 and C.C. Articles 2315, 2316 and 2317. See case law cited in consolidated case *Loga v. Jefferson Parish, et al.* No. 625-145 Reasons for Judgment made part hereof by reference. Cases included *Eschete v. City of New Orleans*, 245 So.2d 383 (La. 1971); *McCloud v. Parish of Jefferson*, 383 So.2d 477 (La. App. 4th Cir. 1980) and *Saden v. Kirby*, 660 So.2d 423 (La. 1995).

These cases set benchmarks by way of time limitations beyond which the mantle of emergency statutory immunity would not be extended. In *Saden v. Kirby* above, the Supreme Court set the mark less than three months before the "force majeure." It held that failure to repair a feeder line servicing two pumps that had been inoperable for three months at the time of the flood rendered the Sewerage and Water Board liable.

The case of *McIntosh v. McElveen*, 893 So.2d 986 at 993 (La. App. 3rd Cir. 2005), held that a sheriff office employee's omission was enough to nullify a statutory immunity that would otherwise apply:

"For their third assignment of error, Coregis claims that the trial court erred in failing to grant immunity to the CPSO under Louisiana Revised Statutes 9:2798.1. Again, we disagree with this claim. Coregis claims that, under *Gregor v. Argenot Great Cent. Ins. Co.*, 02-1138 (La.5/20/03), 851 So.2d 959, because there was no statute or regulation governing the training of communication officers or the manner in which radio communications are to be handled, the inactions of Deputy Patrick and the CPSO are discretionary and, therefore, immune from liability. We reject this argument. Such an interpretation would allow law enforcement officers to do virtually anything and be immune from liability so long as there was no precise statute or regulation prohibiting that conduct. Louisiana Revised Statutes 9:2798.1 does not bestow such broad immunity. ...

9

> We find Deputy Patrick's complete and utter failure to warn Deputy McIntosh of a shooting in his area to be an outrageous, reckless, and flagrant omission, making her actions, and therefore, the actions of the CPSO, exempt from the immunity offered by Louisiana Revised Statutes 9:2798.1."

6. The case of *Mitter v. St. John the Baptist Parish, et al*, 920 So.2d 263 (La. App. 5th Cir. 2000) held at page 266 that inverse condemnation from defective drainage did occur and that R.S. 9:2798.1 immunity did not apply.

For the reasons stated above the Court concluded that the Exception of No Cause of Action filed by Defendants will be overruled as to both the Parish of Jefferson and Aaron Broussard.

Signed Gretna, Louisiana on this 29th day of September, 2006.

JOHN L. PEYTAVIN
JUDGE AD HOC

10