## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ERIN BURKS | : CIVIL ACTION NO. 2006-4173-LMA-JCW |
| | : THE HONORABLE: |
| PLAINTIFF | : JUDGE AFRICK |
| | : SECTION "I" |
| VERSUS | : AND |
| | : MAGISTRATE JUDGE WILKINSON |
| PRUDENTIAL FINANCIAL GROUP | : MAGISTRATE '4' |
| LIBERTY MUTUAL INSURANCE CO. | : |
| CHUBB INSURANCE COMPANY DBA | : |
| VIGILANT INSURANCE CO. | : |
| CITIMORTGAGE, A DIVISION OR | |
| SUBSIDIARY OF CITICORP | : |
| DEFENDANTS | : |

STATE OF NEBRASKA
COUNTY OF _Sarpy_

### AFFIDAVIT OF ERIN BURKS

**BEFORE ME**, the undersigned authority, did come and appear

**Erin Burks Griffin**

who after being sworn, did depose and say under oath the following:

1. That she is the Plaintiff in the above captioned matter and competent to give testimony in this matter;

2. That she is familiar with all of the documents she has personally dealt with the documents that she received from CitiMortgage (hereinafter CitiMortgage) and its predecessor Principal Residential Mortgage (hereinafter Principal);

3. That she did seek a mortgage on the property at 1 Trianon Plaza, in New Orleans, Louisiana and was issued a Truth in Lending and was placed in touch with Alternative Lending Services, LLC (hereinafter Alternative Lending) a mortgage broker which filled out a Uniform Residential Loan Application for Plaintiff to submit to Principal; see exihibit Burks 1 to this affidavit

4. That as part of the mortgage agreements she required the Mortgagee to take as part of the escrow payments sufficient funds to pay the flood insurance whether it was required by the lender or not;

5. That as part of the application the mortgage broker included in the good faith estimate payments into the escrow account Flood Insurance Reserves of 8 Months at $40.00 per month, or $320.00 total. Exhibit Burks 1.

6. Plaintiff executed this document on May 15, 2003, and was never advised after that the escrow account would not include collection for the Flood Insurance Premium;

7. Plaintiff had purchases only one other property in her life and she believed that since Flood was always considered a hazard in New Orleans she required it as part of the mortgage agreement.

8. Plaintiff had always paid money into the escrow account for the flood hazard insurance on her prior property, and did not know that the Mortgagee could or would delete the payment obligation from the escrow account after she specifically requested it;

9. Alternative Lending then secured an agent to write the Flood Policy, and introduced that agent (Defendant Trusheim) to Plaintiff;

10. The agent, defendant herein, Jay Trusheim wanted plaintiff to place all of her insurance through him but Plaintiff only required the Flood Hazard insurance in the maximum limits from Mr. Trusheim.

11. That Defendant Trusheim wrote an application for Flood Insurance in the National Flood Insurance Program which the Affiant saw at the closing held on June 23, 2003. Burks Exhibit 2 attached hereto, which was taken from the Defendant Citimortgate's initial disclosure documents under disclosure 001 as pages 10 and 11 of that disclosure;

12. That Principal Mortgage was identified as the primary insured on the NFIP application and that it has never disclosed the receipt of any other documents related to the flood policy;

13. At the closing the Defendant Principal Mortgage disclosed that two payments would be made for "Hazard Insurance" one for homeowners Burks Exhibit 3 page two lines each for a years premium which the Plaintiff has enlarged for the use of the court

| 900. Items Required by Lender To be Paid In Advance | | | |
|---|---|---|---|
| 901. Interest from 06/23/03 to 7/1/03 at 37.50 | /day | | |
| 902. Mortgage Insurance Premium for | months to | | 300.64 |
| 903. Hazard Insurance Premium for 1 | years to HOMESITE INSU | | |
| 904. Flood Insurance | 1 | | 3,306.00 |
| 905. | PRUDENTIAL IN | | 316.00 |
| 1000. Reserves Deposited With Lender | | | |

14.

15. Affiant believed based upon the appearance of the above representation that Hazard Insurance was to include both homeowners and Flood Insurance;

16. Defendants Principal Mortgage continued to refer to both Hazard Insurance and homeonwner's insurance but not necessarily interchangeably;

17. In May of 2004, affiant deposed she made a payment of $50,000.00 on the principal of the mortgage and the mortgage was modified to eliminate the need for credit life insurance;

18. In December 2004, CitiMortgage took over the servicing of the Mortgage and sent the plaintiff a letter of December 29, 2004, which contained the following representations by CitiMortgage:

### Optional Insurance

The transfer of servicing rights may affect the terms of, or the continued availability of any optional insurance coverage or other membership products. If you have been paying premiums for the optional insurance or membership products along with your mortgage payment, Citimortgage will continue to collect such premiums and remit them to the appropriate provider(s)

19. At no time did Principal or CitiMortgage ever advise the affiant of the cancellation of the Flood insurance, nor did she receive any such notice from either Prudential Insurance or its Successor Liberty Mutual, nor did she receive any such notice from CitiMortgage or Principal

20. At no time did the Affiant receive a copy or the original of the flood policy;

21. At no time during this litigation did CitiMortgage or Principal ever produce any documents canceling the flood policy or requesting payment from its own records it held prior to this litigation, the only documents either Defendants CitiMortgage or Principal ever produced were produced by Liberty Mutual after the commencement of this action in Orleans Parish Civil Court in 2006;

22. Defendant Principal did at one time advise the Plaintiff that it had questions about a former homeowner's policy ( note not hazard insurance but homeowner's insurance) which the affiant received Burks Exhibit 4 a letter from Principal of November 19, 2004, written by Customer Service and Plaintiff responded with the explanation;

23. Affiant did provide the replacement policy information to the Defendant Principal immediately on receipt of the document questioning the the homeowner's policy and the defendant did respond in March 12, 2004, Burks Exhibit 5, acknowledging the receipt of the information;

24. Both Defendants Principal and CitiMortgage continued to pay out from the mortgage escrow account amounts identified as private mortgage insurance, See Burks Exhibit 6, Escrow Account Disclosure statement indicating that as late as April 2005, a payment of $169.81 was made for additional Hazard Insurance also identified as private mortgage insurance;

25. Defendants never explained what the private mortgage insurance was and Affiant assumed it was for flood insurance which would have been due in April of 2005;

26. At no time did Alternative Lending, Principal, CitiMortgage and while she remembers signing a bunch of documents on June 23, 2003, at the closing, nothing was explained to her that these documents were changing the May 15, 2003, application for residential loan, Burks Exhibit 1, but that all was in conformity with that document.

27. Defendants exhibit A 1 in support of its motion for summary judgment contains part 5, on page 6 which to affiant requires he to keep flood insurance on the property through the mortgage which is what she required when she initially filed her application for the mortgage;

28. As far as affiant knew, Alternative was acting as Principal's agent at the time of the application and execution of the loan and mortgage documents, See Burks Exhibit 7

_____
Erin Burks Griffin

Sworn to and subscribed

before me this ___8th___ day of January, 2008.

_____
Notary Public

> GENERAL NOTARY - State of Nebraska
> EILEEN M. KEENAN
> My Comm. Exp. Oct. 17, 2008

my commission expires ___October 17, 2008___