UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K"(2) |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State*, C.A. No. 07-5528 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*  \*

**MEMORANDUM IN SUPPORT OF MOTION OF STATE FARM FIRE
AND CASUALTY COMPANY AND CERTAIN OTHER INSURER
<u>DEFENDANTS TO DISQUALIFY PLAINTIFF'S PRIVATE COUNSEL</u>**

906407v.2

## TABLE OF CONTENTS

I.   FACTUAL BACKGROUND ................................................................. 3

    A.   The Road Home Program ................................................................. 3

    B.   Amended Petition ............................................................................ 5

    C.   Counsel for the State ....................................................................... 6

    D.   Engagement Agreements ................................................................. 7

    E.   Counsel's Simultaneous Representation of Insureds ...................... 9

II.  COUNSEL'S SIMULTANEOUS REPRESENTATION OF INSUREDS AND THE STATE IS A CONFLICT OF INTEREST REQUIRING DISQUALIFICATION ................................................................. 11

    A.   Applicable Law ............................................................................. 11

    B.   The Conflicts Presented by Private Counsel's Representation of the State .......... 14

III. THE ATTORNEY GENERAL'S ENGAGEMENT AGREEMENTS WITH COUNSEL VIOLATE STATE LAW AND CONSTITUTIONAL PROVISIONS ........ 20

    A.   The Arrangements Are Null and Void as a Matter of Louisiana Law ................ 21

        1.   The Arrangements Were Never Submitted to or Approved by the Louisiana Office of Contractual Review ................ 21

        2.   The Arrangements Do Not Comply with the Requirements for Professional Service Contracts with the State ........................ 22

    B.   Any Compensation Arrangement Contemplated by the Engagement Agreements Is Unconstitutional and/or Illegal .................... 25

        1.   Any Payment of Compensation from State Funds or Property Is an Unconstitutional Infringement Upon the Legislature's Appropriation Authority.......................... 25

        2.   Any Compensation From a State Recovery or Legal Right Is an Unconstitutional Diversion of State Property ........................ 28

906407v.2

3.     The Attorney General Cannot Grant a Contingent Fee Right in Favor Of Counsel Nor Can He Assign Any Potential Attorney Fee Award.................................................................................. 29

4.     Any Payments to Counsel by Defendants, Putative Class Members, or Third Parties Would Violate the Louisiana Governmental Ethics Code ................................................................................ 35

IV.   CONCLUSION....................................................................................... 37

906407v.2

# TABLE OF AUTHORITIES

**Page**

**CASES:**

*Alexander v. Lindsay*, 152 So. 2d 261 (La. App. 4 Cir. 1963)...................................... 34

*America Gen. Inv. Corp. v. St. Elmo Lands*, 391 So. 2d 570 (La. App. 4 Cir. 1980) ................. 30

*Avants v. Kennedy*, No. 02-0830 ( La. App. 1 Cir. 12/20/02); 837 So. 2d 647 .......................... 34

*Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004) ....................................................... 31

*Babineaux v. Foster*, No. 04-1679, 2005 WL 711604 (E.D. La. Mar. 21, 2005) ....................... 12

*Bd. of Comm'rs of Orleans Levee Dist. v. Dept. of Natural Res.*, 496 So. 2d 281 (La. 1986)........................................................................................................ 26

*Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671 (5th Cir. 1977) ....................................................................................................... 14

*Carter v. State*, 8 So. 836 (La. 1890)......................................................................... 27

*Central Progressive Bank v. Bradley*, 502 So. 2d 1017 (La. 1987)...................................... 30

*Daigle v. Clemco Industrial*, 613 So. 2d 619 (La. 1993) ................................................. 21

*Evans v. Jeff D.*, 475 U.S. 717 (1986) ....................................................................... 30

*Ex Parte Burr*, 22 U.S. 529 (1824)........................................................................... 11

*Ferguson v. State Farm Ins. Co.*, No. 06-3936, 2007 WL 1378507 (E.D. La. May 9, 2007)........................................................................................................... 34

*Foti v. Bayer Corp.*, No. 04-439, slip op. (La. Civ. Dist. Ct. Sept. 27, 2004).......................32, 33

*Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561 (5th Cir. 1988) .................................. 30

*Gram v. Bank of La.*, 691 F.2d 728 (5th Cir. 1982) ....................................................... 31

*Ieyoub ex rel. State v. W.R. Grace & Co.*, No. 97-728 ( La. App. 3 Cir. 3/6/98), 708 So. 2d 1227 ......................................................................................................... 27

*In re Am. Airlines, Inc.*, 972 F.2d 605 (5th Cir. 1992) .................................................11, 14

906407v.2

*In re Dresser Indus., Inc.*, 972 F.2d 540 (5th Cir. 1992) .......................................................... 11

*In re Gopman*, 531 F.2d 262 (5th Cir. 1976) ........................................................................... 14

*Landmark Graphics Corp. v. Seismic Micro Technology, Inc.*, Nos. 05-2618 & 06-1790,
2007 WL 735007 (S.D. Tex. Jan. 31, 2007) .............................................................................. 11

*Leali v. Certain Underwriters at Lloyd's London*, No. 06-5030, 2007 WL 1975634 (E.D.
La. July 3, 2007) ......................................................................................................................... 34

*Meredith v. Ieyoub*, No. 95-0719 ( La. App. 1 Cir. 4/4/96); 672 So. 2d 375 .............................. 28

*Meredith v. Ieyoub*, No. 96-1110 (La. 9/9/97); 700 So. 2d 478 .............................................*passim*

*Panola Land Buying Association v. Clark*, 844 F.2d 1506 (11th Cir. 1988) ............................... 31

*Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756 (La. 1985) ........................... 33

*Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102 (La. 1979) ............................................... 29

*Shula v. Lawent*, 359 F.3d 489 (7th Cir. 2004) ......................................................................... 31

*State v. Duhe*, 9 So. 2d 517 (La. 1942) ...................................................................................... 27

*Venegas v. Mitchell*, 495 U.S. 82 (1990) .................................................................................. 31

*Walker v. Investment Properties, Ltd.*, 507 So. 2d 850 (La. App. 5 Cir. 1987) ......................... 30

*Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 1017341 (E.D. La. Mar. 28, 2007) .............. 34

*White v. Gen. Motors Corp.*, No. 97-1028 ( La. App. 1 Cir. 6/29/98); 718 So. 2d 480 .............. 33

*Williams v. Mumphrey*, No. 95-643 ( La. App. 5 Cir. 1/30/96); 668 So. 2d 1274 ...................... 26

*Woods v. Covington County Bank*, 537 F.2d 804 (5th Cir. 1976) ............................................... 11

*W.R.M. v. H.C.V.*, No. 06-0702 (La. 3/9/07); 951 So. 2d 172 ................................................... 28

## STATUTES, REGULATIONS & RULES:

33 U.S.C. § 928(a) ...................................................................................................................... 30

42 U.S.C. § 1988 ........................................................................................................................ 31

LA. Const. art. II, § 2 .................................................................................................................. 26

906407v.2

LA Const. art. III, § 16  ................................................................26, 28

LA. Const. art. IV, § 8 ..................................................................... 25

LA. Const. art. VII, § 9(A)...............................................................28, 29

LA. Const. art. VII, § 10……………………………………………………26, 28

LA Rev. Stat. § 1:2 ......................................................................... 34

LA Rev. Stat. § 9:5001 .................................................................... 31

LA Rev. Stat. § 22:658 ..................................................................... 4

LA Rev. Stat. § 22:658(B)(1)............................................................ 34

LA. Rev. Stat. § 22:1220 ................................................................... 4

LA Rev. Stat § 36:701 ..................................................................... 25

LA Rev. Stat. § 37:218 ..................................................................... 27

LA Rev. Stat. § 39:32.C(1) ............................................................... 23

LA Rev. Stat. § 39:32.C(2) ............................................................... 23

LA Rev. Stat. § 39:1497 ................................................................... 22

LA Rev. Stat. § 39:1498 ................................................................... 22

LA Rev. Stat. § 39:1498.1 ............................................................22, 23, 25

LA Rev. Stat. § 39:1499 ................................................................... 24

LA Rev. Stat. § 39:1502(A) .............................................................. 21

LA Rev. Stat. § 39:1509 ................................................................... 27

LA Rev. Stat § 42:1111(A)(1) ........................................................35, 36

LA Rev. Stat § 42:1117 ................................................................36, 37

LA Rev. Stat. § 44:1 ......................................................................... 8

LA Rev. Stat. § 49:258 (1)................................................................. 24

906407v.2

LA Civ. Code art. 6 ................................................................................ 34

LA Civ. Code art. 2000 .......................................................................... 30

LA Civ. Code art. 2030 .....................................................................21, 25

LA Admin. Code tit. 34, part V, § 118 .................................................. 21

LA Admin. Code tit. 34, part V, § 121 .................................................. 21

LA Admin. Code tit. 34, part V, § 121(E) .........................................23, 25

LA Admin. Code tit. 34, part V, § 121(F) .............................................. 22

LA Code of Civ. Pro. art. 595(A) .......................................................... 33

Unif. Local Civ. R. 83.2.10E, R. I(D) .................................................... 12

Model Code of Prof'l Responsibility Canon 9 ...................................... 13

Model Rules of Prof'l Conduct R. 1.7 ................................................... 13

Model Rules of Prof'l Conduct R. 1.7, cmt. 8 ...................................... 15

Model Rules of Prof'l Conduct R. 1.8 ................................................... 13

Model Rules of Prof'l Conduct R. 1.9 ................................................... 13

LA R. Prof'l Conduct 1.7 ...................................................................12, 13

LA R. Prof'l Conduct 1.7(a)(1) .........................................................14, 19

LA R. Prof'l Conduct 1.7(a)(2) .............................................................. 20

LA R. Prof'l Conduct 1.7(b) .................................................................. 20

LA R. Prof'l Conduct 1.8(b) .................................................................. 13

LA R. Prof'l Conduct 1.9(a) .................................................................. 13

LA R. Prof'l Conduct 1.10 ..................................................................... 13

906407v.2

**OTHER AUTHORITIES:**

Restatement (Third) of Law Governing Lawyers § 122 cmt. g (iii) (2000) ............................... 20

Restatement (Third) of Law Governing Lawyers § 128 cmt. b (2000)................................13, 20

55 La. Bar J. 123 (Aug/Sept. 2007).................................................................................... 25

La. Bd. of Ethics Op. No. 2000-381 (May 17, 2001).................................................... 36

6 La. Civ. L. Treatise § 12.28 (2d ed. 2007).......................................................................... 30

906407v.2

State Farm Fire and Casualty Company, State Farm General Insurance Company, Aegis Security Insurance Company, Lafayette Insurance Company, United Fire and Casualty Company, United Fire and Indemnity Company, America First Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Mutual Insurance Company, Metlife, Inc., Economy Premier Assurance Company, Metropolitan Casualty Insurance Company, Metropolitan Property and Casualty Insurance Company, Farmers Insurance Exchange, Foremost Insurance Company, Foremost Property and Casualty Company, Foremost Signature Insurance Company, United Services Automobile Association, also separately named by plaintiffs as USAA, USAA Casualty Insurance Company and USAA General Indemnity Company, The Hanover Insurance Company, The Hanover American Insurance Company, Massachusetts Bay Insurance Company, American Manufacturers Mutual Insurance Company, Kemper Casualty Insurance Company, Lumbermens Mutual Casualty Company, Merastar Insurance Company, Unitrin Preferred Insurance Company, Unitrin Auto and Home Insurance Company, Trinity Universal Insurance Company, Trinity Universal Insurance Company of Kansas, Inc., Homesite Insurance Company, Fidelity National Insurance Company, Fidelity National Property and Casualty Insurance Company, Union National Fire Insurance Company, Fidelity and Deposit Company of Maryland, Empire Fire and Marine Insurance Company, Empire Indemnity Insurance Company, Centre Insurance Company, ZC Sterling Insurance Agency, Inc., ZC Sterling Corporation, Allstate Insurance Company, Allstate Indemnity Company, Encompass Insurance Company, Encompass Insurance Company of America, Encompass Property and Casualty Company, Horace Mann Insurance Company, Teachers Insurance Company, Horace Mann Property and Casualty Insurance Company, Auto Club Family Insurance Company, Scottsdale Indemnity Company, Scottsdale Insurance Company, The Standard Fire Insurance Company, "St. Paul" (a non-existent entity), "St. Paul

Travelers Insurance Company" (a non-existent entity), St. Paul Fire & Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, Travelers Home & Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Insurance Company (a non-existent entity), Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company, and The Automobile Insurance Company of Hartford, Connecticut, (collectively "Defendants") submit this Memorandum in support of their Motion to Disqualify Plaintiff's Private Counsel.

At a conference with *In re: Katrina Canal Breaches* liaison counsel on November 26, 2007, the Court inquired as to whether there were conflicts of interest associated with the representation of the State[1] by the private law firms that have entered appearances on its behalf.[2] As explained more fully below, there are significant conflicts arising out of the private law firms' simultaneous representation of both (i) insureds who are seeking to recover insurance proceeds under property insurance policies, and (ii) the State, which is asserting a right to some or all of those insurance proceeds.  Moreover, the available evidence suggests that all of the private law firms representing the State are proceeding under engagement arrangements that violate

---

[1] Plaintiff is identified in its Petition as "The State of Louisiana, individually and on behalf of State of Louisiana, Division of Administration, Office of Community Development *ex rel* The Honorable Charles C. Foti, Jr., the Attorney General for the State of Louisiana" (hereinafter, the "State").

[2] This motion is addressed to the private attorneys engaged by the State in this litigation, including the firms identified below in Section I.C., which have entered appearances on behalf of the State.  This motion is not directed to any attorneys in the Office of the Attorney General.

Louisiana law.  For these reasons, the private counsel representing the State in the *Road Home* action should be disqualified.

## I.       FACTUAL BACKGROUND

### A.       The Road Home Program

The Road Home Program was established after Hurricanes Katrina and Rita in part to assist homeowners to repair and rebuild their damaged and destroyed homes.  The program was established pursuant to plans developed by the Louisiana Recovery Authority and is administered by the Louisiana Office of Community Development.  Under the program, the maximum grant available to owner-occupants is $150,000, but the amount of any grant is reduced to reflect insurance payments the homeowner received.[3]  Homeowners interested in receiving Road Home grants were required to submit applications by July 31, 2007.[4]  For approved applicants, grant payments are disbursed shortly after a grant closing.[5]  According to the Road Home Program website, as of December 31, 2007, there had been 185,106 applications for grants, and 90,562 grants had been closed.[6]

At the time of grant closing, the homeowner is required to sign "*The Road Home /* Limited Subrogation / Assignment Agreement" (emphasis in original) ("Subrogation /

---

[3] *See* "Overview of the Road Home Program," *available* at http://www.road2la.org/homeowner/overview.htm; The Road Home Housing Programs Action Plan Amendment for Disaster Recovery Funds, pp. 7, 9, 35, *available at* http://www.doa.la.gov/cdbg/dr/plans/Amend1-RoadHome-Approved_06_05_11.pdf.

[4] *Id.*

[5] *See* "Grant Disbursal," *available at* http://www.road2la.org/Docs/grant_disbursal.pdf.

[6] These statistics are updated periodically and are available at http://www.road2la.org/newsroom/stats.htm.

Assignment Agreement").[7]  *See* Appendix A hereto.[8]  This agreement purports to assign to the State all of the homeowner's "claims and future rights to reimbursement and all payments hereafter received or to be received" under property and flood insurance policies for damage to their insured homes (excluding contents).  Specifically, the grant recipient agrees to pay to the State any insurance amounts received "if that amount would have reduced the amount of my Program grant had I/we received such insurance payments prior to the receipt of grant proceeds."[9]  The agreement also purports to assign to the State a right of recovery from any penalties under LSA-R.S. 22:1220 or 22:658 relating to the insurance proceeds.  In addition, it requires 30 days prior written notice to the State should the recipient choose to "abandon, dismiss, or release" insurance claims and requires the State's written consent to settle any claim that would result in the State receiving less than the full amount of the grant.[10]

---

[7] *See* September 21, 2007 letter from State's counsel to Court, Exhibit 1 hereto.  *See also* "Subrogation," *available at* http://www.road2la.org/Docs/subrogation.pdf.

[8] The State attached a copy of the agreement as Exhibit A to its original Petition in this matter, filed on August 23, 2007.  *See State of Louisiana v. AAA Insurance, et al.*, No. 2:07-cv-5528, Certain Defendants' Notice of Removal (Doc. 1) (E.D. La. Sept. 11, 2007) (attaching Petition and Amended Petition).  Because that version may be difficult to read, however, Defendants have copied the text of the agreement into Appendix A to this Memorandum.

[9] Insurance payments received in advance of a grant were to be deducted from the amount of the damage to the property, as determined by the State, in calculating the amount of the grant payment.  *See, e.g.,* Further Changes and Clarifications to Road Home Program (Amendment No. 7), dated November 30, 2006, at 9-10, *available at* http://www.doa.la.gov/cdbg/dr/plans/Amend7-FurtherClarifications-RH-06_11_30.pdf.

[10] Defendants' discussion and argument relating to the implications of the Subrogation / Assignment Agreement in this motion is not intended to be, nor should it be read as, a waiver of any arguments as to the validity or meaning of that agreement or any of its terms or as to the validity of any claims asserted in this litigation.  Defendants hereby specifically reserve all rights to challenge the Subrogation / Assignment Agreement and any provisions thereof and all defenses to the claims asserted.

B.      __Amended Petition__

The State filed its initial Petition in this action on August 23, 2007, in Civil District Court, Parish of Orleans, followed on August 29, 2007 by a First Amended and Restated Class Action Petition for Damages and Declaratory and Injunctive Relief ("Amended Petition" or "Am. Pet.").  Defendants thereafter removed the case to this Court, where it was consolidated with *In re: Katrina Canal Breaches* under a new "Road Home" subcategory.[11]

In its Amended Petition, the State seeks to represent a class defined as follows:

> All current and former citizens of the State of Louisiana who have applied for and received or will receive funds through The Road Home Program, and who have executed or will execute a subrogation or assignment agreement in favor of the State, and to whom insurance proceeds are due and/or owed for damages sustained to any such recipient's residence as a result of any natural or man-made occurrence associated with Hurricanes Katrina and/or Rita under any policy of insurance, as plead herein, and for which the State has been or will be granted or be entitled to recover as repayment or reimbursement of funds provided to any such recipient through the Road Home Program.

Am. Petition ¶ 22.  In other words, the State seeks to represent a class consisting of the various property owners in whose insurance claims it asserts or may in the future assert a subrogation interest.  As pled, this class would include not only those who have received Road Home grants and have signed the Subrogation / Assignment Agreement ("Recipients"), but also those who have applied for but not yet received a Road Home grant and have not signed the Subrogation / Assignment Agreement ("Applicants").  The relief sought by the Amended Petition includes "*all* coverage" afforded by the property insurance policies issued by Defendants, and "any and all monetary awards necessary to indemnify, pay, reimburse or repay the State *and members of the class* for the losses and damages they have or will incur."  Am. Petition, Prayer ¶¶ (f), (g)

---

[11] *See State of Louisiana v. AAA Insurance, et al.*, No. 2:07-cv-5528, Certain Defendants' Notice of Removal (Doc. 1) (E.D. La. Sept. 11, 2007) (attaching Petition and Amended Petition); *In re: Katrina Canal Breaches Consol. Litig*, No. 2:05-cv-4182, Road Home Consolidation Order (Doc. 7729) (E.D. La. Sept. 18, 2007).

906407v.2

(emphasis added).  As the Court has recognized, these requests by their terms seek relief above and beyond any amounts the State could possibly claim any right to retain for itself.[12]

### C.     Counsel for the State

In addition to the Attorney General, the Petition and Amended Petition identified attorneys from the following law offices or law firms as counsel for the State (with individual counsel from those law firms who have entered appearances noted in parentheses):

1.     Paul G. Aucoin, Attorney at Law;

2.     The Dudenhefer Law Firm (Frank C. Dudenhefer, Jr.);

3.     Fayard & Honeycutt, A.P.C. (Calvin C. Fayard, Jr.);

4.     McKernan Law Firm (Joseph J. McKernan); and

5.     Ranier, Gayle and Elliot, L.L.C. (Drew A. Ranier, Frank Elliot).

Attorneys from three additional firms subsequently entered appearances as counsel for the State:

6.     Domengeaux Wright Roy & Edwards L.L.C. (James P. Roy);[13]

7.     Gauthier, Houghtaling & Williams, L.L.P. (John W Houghtaling, James M. Williams);[14] and

8.     Murray Law Firm (James R. Dugan, II, Stephen B. Murray).[15]

---

[12] *In re: Katrina Canal Breaches*, Transcript of November 14, 2007 Hearing (Doc. 9066), pp. 87-89.

[13] Since late October, Domengeaux Wright Roy & Edwards L.L.C. has been listed as counsel for the State on its filings.  *See*, *e.g.*, *In re: Katrina Canal Breaches*, Motion to Enter Case Management Order (Doc. 8646) (Oct. 25, 2007).

[14] *See In re: Katrina Canal Breaches*, Motion to Enroll Additional Counsel of Record for Plaintiffs (Doc. 8783) (Oct. 31, 2007); Order granting same (Doc. 8821) (Nov. 2, 2007).

[15] *See In re: Katrina Canal Breaches*, Motion to Enroll Additional Counsel of Record for Plaintiffs (Doc. 8793) (Nov. 1, 2007); Motion to Enroll Additional Counsel of Record for Plaintiffs (Doc. 8955) (Nov. 8, 2007); Order granting latter (Doc. 9022) (Nov. 14, 2007).

All eight of these law firms are listed as counsel for the State on recent filings (*see*, *e.g.*, Doc. 9173 (Nov. 20, 2007)), and attorneys from each firm have been designated by the Court as Lead Counsel or Co-Lead Counsel for the State in the Road Home action.[16]

### D.   Engagement Agreements

In August and September 2007, the Attorney General sent a series of similar engagement letters to the various firms retained to represent the State.   In a letter dated August 17, 2007 to Mssrs. McKernan, Aucoin, Fayard, Ranier, and Dudenhefer, the Attorney General stated he had "approved and authorized" those attorneys "to handle any interests that the State . . . may have for the recovery of any monetary amounts that may be due and owing the State with respect to the Road Home subrogation lawsuit.  Thus you have the authority to act on behalf of the State with reference to this matter."  (Exh. 2.)  With respect to payment, the letter states as follows:

> The State does not guarantee the payment of any attorney fees or costs in connection with such representation and specifically disclaims all liability for payment of fees or costs out of actions filed herein by you on behalf of the State. In the case where the State would be included as a member of a class action, the State would receive all amounts due and owing to it without discount and without any fees or costs subtracted from the corpus of the judgment or settlement.

---

[16] *See In re: Katrina Canal Breaches*, Interim "Road Home" Case Management Order (Doc. 8873) at 3-4 (Nov. 6, 2007) (designating Calvin C. Fayard, Jr. as Lead Counsel and Paul Gerard Aucoin, Frank C. Dudenhefer, Jr., Joseph Jerry McKernan, Drew Ranier, and James P. Roy as Co-Lead Counsel); Order (Doc. 9199) (Nov. 21, 2007) (designating James R. Dugan, II and John W. Houghtaling as additional Co-Lead Counsel).  In addition, Isabel Wingerter from the Attorney General's Office has appeared on pleadings since the first part of November (*see*, *e.g.*, Doc. 8976 (Nov. 9, 2007)) and also appeared for the State at the remand motion hearing on November 14, 2007 (*see* Transcript (Doc. 9066) at 1, 5, 31).  This motion is not directed at Ms. Wingerter.  Finally, the Court granted the State's motion to admit Professor Samuel Issacharoff *pro hac vice*, and Professor Issacharoff appeared at the November 14, 2007 hearing as well.  *See id.* at 1, 5, 13-30.  To date, Professor Issacharoff has not been listed as regular counsel for the State on its filings.  *See*, *e.g.*, Doc. 9173 (Nov. 20, 2007).  Defendants are not seeking relief as to Professor Issacharoff at this time, without waiver of any right to do so at a later date should circumstances warrant.

906407v.2

(*Id.*)  A similar letter dated August 27, 2007 from the Attorney General was addressed only to Mssrs. Fayard and McKernan but stated that Mssrs. Ranier, Roy, Dudenhefer, and Aucoin were approved as "co-counsel" to assist under the direction of Mssrs. Fayard and McKernan.  (Exh. 3.) The August 27, 2007 letter included language similar to that quoted above as to compensation, but added that "the attorneys handling this case may receive attorneys fees and costs permitted them by State or Federal law."  (*Id.*)  The Attorney General also sent engagement letters dated September 14, 2007 to The Murray Law Firm and to Gauthier, Houghtaling & Williams, with language substantially similar to the August 17 letter.[17]  (*See* Exhs. 4 & 5.)

         An employee of one of the defendants submitted requests to several state offices under the Louisiana Public Records Act, LSA-R.S. 44:1, seeking copies of the engagement agreements for all of the State's private counsel and related documents.  (*See* Exh. 6, Declaration of Joey Bossom (hereinafter, "Bossom Decl.").)  In response, the Office of the Attorney General has provided copies of some, but not all, of the letters referenced above along with some additional letters that are substantially similar in content.  (*See id.*, Exh. D.)[18]  Significantly, it appears that the Louisiana Office of Contractual Review ("OCR") did not approve any legal services agreements relating to this lawsuit.  In response to an inquiry relating to the original five

---

[17] These two letters were previously filed in these proceedings.  *See In re: Katrina Canal Breaches*, Doc. 8783 (Oct. 31, 2007) (attaching Houghtaling letter); Doc. 8955 (Nov. 8, 2007) (attaching Murray letter); Doc. 8965 (Nov. 9, 2007) (attaching both).

[18] A request pursuant to LSA-R.S. 44:1 *et seq.* for any contracts for legal services with the original five law firms was sent to the Office of the Attorney General on October 10, 2007, and a follow up request with respect to the additional three law firms was sent on December 10, 2007.  The Office of the Attorney General responded on December 21, 2007.  Similar requests were sent to the Commissioner of Administration, but to date there has been no response.  (*See* Bossom Decl. ¶¶ 4-13, Exhs. A-G.)

law firms, the Director of OCR stated that "our search did not find any such contracts approved by this office."  (Bossom Decl., Exh. K.)[19]

> E.   **Counsel's Simultaneous Representation of Insureds**

Within the framework of the *Road Home* action, these eight law firms seek to represent not only the State, but also – through the proposed class – numerous individual insured homeowners who are either Applicants or Recipients under the Road Home Program.  Thus, within this very litigation, counsel seeks to represent the parties on both sides of the Subrogation / Assignment Agreement with competing claims to the same funds.

In addition, many of these law firms are already representing individual insureds and/or are seeking to represent putative class members of insureds in other lawsuits, and many of these insureds are Road Home Applicants or Recipients whose insurance benefits the State seeks to recover in the *Road Home*.  For example, in Case Management and Scheduling Order No. 4 entered in these consolidated proceedings (Doc. 3299, Mar. 1, 2007), the Court appointed Mssrs. Fayard, McKernan, and Ranier to the Plaintiffs' Subgroup Committee ("PSLC") – Insurance, with Mr. Fayard designated as PSLC – Insurance Liaison Counsel.  All three are among Plaintiffs' counsel on the Insurance Master Consolidated Class Action Complaint (Doc. 3413, Mar. 15, 2007), and all three were representing plaintiffs in insurance cases prior to the filing of that complaint.[20]  Mr. Dudenhefer has also been representing the interests of insurance plaintiffs

---

[19] This letter was received in response to a records request with respect to contracts with the original five law firms in connection with the Road Home action made on October 10, 2007 and supplemented on October 23, 2007.  A follow up request with respect to the additional three law firms was made on December 10, 2007, but OCR has not yet responded.  (*See* Bossom Decl. ¶¶ 14-19, Exhs. H-L.)

[20] By way of illustration, Mssrs. Fayard and McKernan represent Plaintiffs in *Gladys Chehardy v. State Farm Fire & Cas. Co.*, No. 2:06-cv-1672 (E.D. La.) (putative class action; since consolidated with No. 2:05-cv-4182), and

in these consolidated proceedings,[21] in addition to representing insurance plaintiffs in individual cases.[22]   Mr. Houghtaling is representing individual plaintiffs in numerous insurance cases as well,[23] and Mssrs. Murray[24] and Roy[25] have been representing insurance plaintiffs in Hurricane Rita cases in the Western District.[26]

---

Mssrs. Ranier and McKernan represent Plaintiffs in *Genevieve Williams v. State Farm Fire & Cas. Co.*, No. 2:06-cv-2919 (E.D. La.) (putative class action; also subsequently consolidated with No. 2:05-cv-4182).

[21] *See, e.g., In re: Katrina Canal Breaches*, Transcript of October 31, 2007 Hearing relating to Insurance Cases at 40-44 (Mr. Dudenhefer arguing against entry of final judgment for insurers in *Vanderbrook*) (excerpts attached hereto as Exhibit 7); Nov. 1, 2007 letter from Mr. Dudenhefer to the Court to the same effect (Doc. 8890) (filed Nov. 6, 2007).

[22] Mr. Dudenhefer represents the plaintiffs in *Sher v. Lafayette Ins. Co., et al.*, No. 06-9276 (Civ. Dist. Ct., Parish of Orleans, Div. "G," Sec. "L"), No. 07-757 (La. App. 4 Cir.), & No. 07-2441 (La.) (application for writs pending), and in *Debra Jean Fischman v. State Farm Fire & Cas. Co.*, No. 2:06-cv-4954 (E.D. La.) (subsequently consolidated with No. 2:05-cv-4182); Mr. Dudenhefer also represented the plaintiff in *Kathy Rose Fischman v. State Farm Fire & Cas. Co.*, No. 2:06-cv-4949 (E.D. La.) (subsequently consolidated with No. 2:05-cv-4182 and dismissed Nov. 2, 2007 pursuant to settlement).

[23] *See, e.g., Gary Spreen v. La. Farm Bureau Ins. Co., et al.*; No. 06-14229 (22nd JDC); *Marian H. Wallis v. State Farm Fire & Cas. Co.*, No. 2:07-cv-8820 (consolidated with No. 2:05-cv-4182); *Terrina Jones v. State Farm Fire & Cas. Co.*, 2:06-cv-7994 (E.D. La.); *Mari Moshkounian v. Allstate Ins. Co.*, 2:07-cv-5926 (E.D. La.).

[24] *See Turk v. La. Citizens Prop. Ins. Corp.*, No. 6:06-cv-144 (W.D. La.) (putative class action), currently on appeal, No. 07-30279 (5th Cir.); *Robin Roberts v. State Farm Fire & Cas. Co.*, No. 6:06-cv-1592 (W.D. La.); *Inez Landry v. State Farm Fire & Cas. Co.*, No. 6:06-cv-2061 (W.D. La.).

[25] *Lemaire v. State Farm Fire & Cas. Co.*, No. 6:06-cv-672 (W.D. La.) (dismissed Aug. 28, 2007 pursuant to settlement).

[26] In addition to the firms and attorneys discussed in this Section, documents provided by the Attorney General indicate that he has also issued an authorization letter to Robert M. Becnel of the Becnel Law Firm, LLC.   (*See* Bossum Decl., Exh. D.)   Mr. Becnel has not entered an appearance in this case to date.   However, were he to do so Mr. Becnel would be subject to disqualification for the same reasons as the other private attorneys addressed in this motion.   Defendants note that Mr. Becnel is currently representing more than 1,200 individual insureds in a single mass action pending in the Middle District.   *See Bailey, et al., v. ANPAC La. Ins. Co., et al.*, No. 3:07-cv-971 (M.D. La.).

## II.   COUNSEL'S SIMULTANEOUS REPRESENTATION OF INSUREDS AND THE STATE IS A CONFLICT OF INTEREST REQUIRING DISQUALIFICATION

### A.   Applicable Law

The power to disqualify an attorney from a case is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Ex Parte Burr*, 22 U.S. 529, 531 (1824) (Marshall, C.J.).   In the Fifth Circuit, motions to disqualify counsel are governed by "the ethical rules announced by the national profession in the light of the public interest and the litigants' rights." *See In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992).   Because they are substantive motions affecting the rights of the parties, such motions are determined by applying standards developed under federal law. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992).   Though federal district courts may adopt state or ABA rules as their ethical standards, questions about whether and how these rules apply are ultimately questions of federal law. *See id.*

When deciding whether to disqualify counsel, a court must be cognizant of more than just ethical rules:   "A court should be conscious of its responsibility to preserve a reasonable balance between the need to ensure ethical conduct on the part of lawyers appearing before it and other social interests, which include the litigant's right to freely chosen counsel." *Woods v. Covington County Bank*, 537 F.2d 804, 810 (5th Cir. 1976); *see also Landmark Graphics Corp. v. Seismic Micro Tech., Inc.*, Nos. 05-2618 & 06-1790, 2007 WL 735007, at *4 (S.D. Tex. Jan. 31, 2007).   The court must also look to the appearance of impropriety in general, the possibility that a specific impropriety will occur, and the likelihood that public suspicion of impropriety would outweigh any social interests to be served by the lawyer's continued participation in the case. *See In re Dresser*, 972 F.2d at 544, 545 n.12.

906407v.2

In addition to these factors set forth by the Fifth Circuit, decisions in this district have looked to four other sources of authority with respect to disqualification issues:

(1)     the Local Rules of the Eastern District of Louisiana;[27]

(2)     the ABA's Model Rules of Professional Conduct;

(3)     the ABA's Model Code of Professional Responsibility; and

(4)     the State of Louisiana's rules of conduct.

*See Babineaux v. Foster*, No. 04-1679, 2005 WL 711604, at *5 (E.D. La. Mar. 21, 2005).

With respect to conflicts of interest, the Louisiana Rules of Professional Conduct provide as follows:

Rule 1.7. Conflict of Interest: Current Clients

(a)     Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

(1)     the representation of one client will be directly adverse to another client; or

(2)     there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b)     Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1)     the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2)     the representation is not prohibited by law;

---

[27] The Eastern District of Louisiana has expressly adopted the Louisiana Rules of Professional Conduct.  *See* Unif. Local Civ. R. 83.2.10E, Rule I(D).

(3)     the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)     each affected client gives informed consent, confirmed in writing.

La. R. Prof'l Conduct 1.7.[28]  Among the rationales for this rule is that it avoids the potential for intentional or inadvertent use of one client's confidential information on behalf of another under circumstances making the fact of such use difficult to detect, it avoids situations that may severely try a client's faith in the lawyer's loyalty to the client's interests, and it provides the court with "assurance that its own processes [will] not be compromised by less than vigorous advocacy, delayed by a necessary change of counsel in the course of the proceeding, or later reversed because a litigant was inadequately represented."  *See* Restatement (Third) of Law Governing Lawyers § 128 cmt. b (2000).

With respect to former clients, the rules provide that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  La. R. Prof'l Conduct 1.9(a).

The Louisiana Rules also provide that a lawyer shall not use information relating to the representation of one client to the disadvantage of another client unless informed consent is supplied.  La. R. Prof'l Conduct 1.8(b).  The ABA Model Rules of Professional Conduct articulate verbatim the same requirements in Rules 1.7, 1.8, and 1.9.  Finally, Canon 9 of the ABA Model Code of Professional Responsibility requires that lawyers should avoid even the

---

[28] The Rules also provide that a lawyer's conflicts of interest are generally imputed to all other lawyers associated in that lawyer's firm.  La. R. Prof'l Conduct 1.10.

appearance of impropriety.  The Fifth Circuit has explained that Canon 9's objective in protecting the interests of loyalty is the same as that embodied in the Rules of Professional Conduct.  *See In re American Airlines*, 972 F.2d at 617-19.

### B.   The Conflicts Presented by Private Counsel's Representation of the State

In this case, Plaintiff's counsel seeks to represent the State in its efforts to enforce its claimed rights under the Subrogation / Assignment Agreement to some or all of the insurance proceeds recovered (or recoverable) by individual Road Home participants.  At the same time and in this same case, these attorneys also seek to represent a class of individual insureds claiming those same insurance proceeds, and many of these same attorneys have represented and continue to represent in other cases numerous individual insureds and/or seek to represent putative classes of insureds making similar claims.  The simultaneous representation of both parties to a contract that is at the heart of this litigation is a situation fraught with conflicts.  These conflicts, both singly and in combination, require the disqualification of the State's counsel.[29]

Most fundamentally, counsel is representing parties on opposite sides of the same contract, the Subrogation / Assignment Agreement.  The parties have diametrically opposed interests with respect to any issues relating to the interpretation, application, validity, or enforceability of that agreement.  *See* La. R. Prof'l Conduct 1.7(a)(1) (prohibiting representation of directly adverse clients).  This is not merely a hypothetical conflict, as illustrated by the fact that in at least one insurance case the State affirmatively intervened as a party, asserting that

---

[29] The Fifth Circuit has recognized that a party has standing to bring a motion to disqualify the opposing party's counsel even if the moving party is not the other client whose interests create the conflict for the attorney sought to be disqualified.  *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir. 1977); *In re Gopman*, 531 F.2d 262, 265-66 (5th Cir. 1976).

906407v.2

"intervention is crucial to protect the State's right of recovery."[30]   This assertion squarely contradicts any suggestion that the interests of insureds and the State are aligned in all respects.

Indeed, there are numerous possible disputes that could arise with respect to the applicability, interpretation, and/or enforceability of some or all of the provisions of the Subrogation / Assignment Agreement.  For example, one insured filed a Petition for Concursus, or in the Alternative for Declaratory Judgment alleging that the terms of that agreement were "ambiguous, in conflict with other provisions within the structure of the Road Home benefit documents, and constitute a contract of adhesion, thereby vitiating all consent given by the plaintiff to the Road Home regarding its subrogation rights."  *Rhonda T. Gillard v. Am. Sec. Ins. Co.*, No. 06-9237 (Civ. Dist. Ct., Parish of Orleans) (filed October 2007) (attached as Exhibit 10 hereto).   Although Defendants understand the petition was subsequently withdrawn, it nonetheless illustrates some of the issues that a policyholder might expect his or her attorney to raise.   However, if that same attorney also represents the State in connection with the enforcement of the Subrogation / Assignment Agreement, the attorney cannot be a zealous advocate for his policyholder client and raise all potential challenges to and interpretations of the agreement without undermining his governmental client's own interests.  "[A] conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests."  ABA Model R. Prof'l Conduct 1.7, cmt. 8.

---

[30] Memo in Support of Motion for Leave to File Petition of Intervention in *Pamela Flotte v. State Farm Fire & Cas. Co.*, No. 06-5011 c/w 06-7497 (E.D. La., Doc. 54-2, filed Aug. 14, 2007) (attached as Exh. 8 hereto); *see also* Order granting same (Doc. 55 in No. 06-5011) (attached as Exhibit 9 hereto).

906407v.2

Further, as the Court well knows, the State has taken the position that the Subrogation / Assignment Agreement grants the State the right to approve or disapprove settlements between insureds and their insurers. (*See, e.g.*, Exh. 1.)  This assertion confirms the existence of conflicting interests.  If the interests of the State and the insured were aligned, there would be no need for the State to have notice of and the right to review and approve or reject settlements.

Even setting aside the obviously adverse interests of the State and Road Home grantees with respect to issues relating to the validity, enforceability, and interpretation of the Subrogation / Assignment Agreement, both present and potential conflicts abound in the practical conduct of affairs in light of that agreement.  Since the State and the insured have competing interests in the same insurance proceeds, any strategy or position that advances the interests of one will necessarily hinder the interests of the other.  For example, the State's subrogation right applies only to insurance recoveries "related to physical damage to the Residence," though most homeowners policies also provide coverage for personal property or contents losses, additional living expenses, and other items not relating to the building itself. Road Home representatives have taken the position that they may review and challenge the allocation of settlement funds among these various coverages, a position in obvious conflict with the interests of insureds.  The more counsel are able to recover for the State by challenging such allocations, the less the recovery by their individual policyholder clients.  Counsel cannot

simultaneously advance the interests of both clients and, therefore, cannot undertake to represent both.[31]

Moreover, the State's assertion of a right to review settlements necessarily results in delays and additional steps in the process that are inherently harmful to insureds. The State's disapproval of a settlement entered into by an insured would obviously not serve the interests of the insured, but even where approval is ultimately given, the State has repeatedly dragged its feet in reviewing settlements, thereby delaying payments to insureds. These problems are evidenced by the November 30, 2007 letter from Mr. Bruno, counsel for many individual insureds, informing the Court that despite "numerous requests," the State had not responded with any guidance relating to his efforts to obtain approval of his clients' settlements with insurers. (Doc. 9434, filed Dec. 7, 2007.)[32] These issues have led to more active involvement by the Court with respect to Road Home approval of settlements. (*See, e.g.,* Dec. 6, 2007 Minute Entry (Doc. 9395) (discussing Road Home status conference; Mssrs. Dudenhefer and Elliot appearing on behalf of the State)).[33] Although with substantial assistance from the Court the Road Home

---

[31] Similar conflicts could arise with respect to the application of other provisions of the Subrogation / Assignment Agreement, including the provision stating that "this assignment shall not apply to amounts received in excess of the amount of my/our grant received under the Program for which the State has not been reimbursed from other sources."

[32] *See also* Exhibits 11, 12, & 13 hereto, which represent email correspondence between State Farm attorney, David A. Strauss, and Mssrs. Dudenhefer and Elliot in their capacity as counsel for the State in the Road Home action in which counsel for the State restrict the available channels of communication with the State relating to insurance settlements with Road Home grantees, state that information relating to certain specific settlements was "problematic," and decline to approve same.

[33] The Western District of Louisiana has likewise become involved in the Road Home settlement approval process, and at the Court's request, the Road Home Program, through Mr. Elliott, has made various representations to that court, insureds, and insurers as to the program's positions on these issues. *See In re: Cameron Parish Rita Litigation Against State Farm*, No. 2:07-md-00001 (W.D. La.), December 18, 2007 Order Directing Filing of Report – Road

Program ultimately approved the settlements in Mr. Bruno's cases and executed releases, at the time of this filing there still is no system in place for timely Road Home approval of settlements and exactly who has authority to act on behalf of the program in this regard has been a subject of confusion.[34]   Contributing to the confusion and delay is the inability of counsel for the State to resolve issues among themselves relating to their respective roles without motion practice and Court intervention, despite the fact that they all purport to represent a single client (the State) that could presumably resolve these matters by direction to counsel.[35]

A concrete example of the conflicts relating to the settlement approval process is presented by Mr. Elliott's representation of the insured in *Lemaire v. State Farm Fire & Cas. Co.*, No. 6:06-cv-00672 (W.D. La.).   When the case settled, issues arose as to how payment should be directed in light of the fact that Mr. Elliott's client was also a Road Home grant recipient.   In an email to State Farm counsel on September 27, 2007 (a month after the Road Home lawsuit was filed), Mr. Elliott stated:

> This will confirm our conversation a few minutes ago that both my firm and Paul Moresi's firm recognize that we have a professional responsibility to make any repayments to the Road Home that are required as part of the Lemaires' grant they

---

Home Program (Doc. 52); December 14, 2007 Letter from N. Frank Elliott III to Jennifer Jones and Andrew R. Johnson, IV (Doc. 53); December 17, 2007 Letter from N. Frank Elliott to Magistrate Judge Methvin (Doc. 54). Copies of these three filings are attached as Exhibits 14, 15, and 16.

[34] *See In re: Cameron Parish Rita Litigation Against State Farm*, No. 2:07-md-00001 (W.D. La.), December 17, 2007 Letter from N. Frank Elliott to Magistrate Judge Methvin correcting inaccurate statements with respect to who has authority to approve settlements (Doc. 54), attached hereto as Exhibit 16.

[35] *See, e.g., In re: Canal Breaches*, *Ex Parte* Motion to Appoint Additional Co-Lead Counsel and to Set Forth a Road Home Filing Protocol (Doc. 9173) (Nov. 20, 2007), in which the State requested an order precluding any of its counsel from making any filings unless they were first approved by one of its counsel, Mr. Fayard; Order granting same (Doc. 9199, Nov. 21, 2007); *see also* January 2, 2008 Letter from John W. Houghtaling, II to Ralph S. Hubbard, III, in which Mr. Houghtaling sought assistance from Defendants' counsel in resolving communication problems among Plaintiff's counsel in the *Road Home* action (attached hereto as Exhibit 17).

received.  As we discussed, we have provided Mr. Dan Rees with written notice of the settlement and a copy of the contingency fee contract, the State Farm adjuster's report, Mr. Win Woods' report, and a copy of the proof of loss, as he requested.  We are awaiting the official letter stating that the Lemaires do not have to make any payments to the State.  We are requesting that we get that by tomorrow.  In the event we do not get that letter on Friday, I would ask that you still issue the check to us without the Road Home listed as a payee.  We will deposit it in our trust account and hold the disbursement of those funds pending receipt of that letter and delivery to you of the same.  As I indicated, the client is returning from Texas this weekend, and we would like to get him to sign all the paper work and endorse the check for deposit to our trust account on Monday. We acknowledge and accept our responsibility under the rules of professional responsibility to make a payment to a third party such as the Road Home, if they indicate they are entitled to any funds, which we understand from our conversations with the State they are not suggesting.  In fact, I was expressly told they do not have to be listed on checks.

(Exh. 18.)  Yet in his capacity as counsel for the State, Mr. Elliott has taken the position not only that the State should be a payee on insurance settlement checks, but also that the State must be the only payee with respect to the amounts due to it and that counsel for an insured would be legally prohibited from taking possession of money belonging to the State.  It is plainly inappropriate for counsel to be on both sides of these issues at the same time.

In light of the conflicts detailed above, the eight law firms retained by the State in this matter should be disqualified from that representation.[36]  The interests of the State as subrogee and individual insureds as subrogors are directly adverse in numerous respects, La. R. Prof'l Conduct 1.7(a)(1), and there is a significant risk that counsel's representation of one or

_____

[36] Even if one of the eight firms retained by the State has not itself represented individual insureds in insurance actions, any such counsel nonetheless seeks to represent a putative class of insureds in *this* case.  Moreover, the conflicts of the remaining firms who have represented and are representing insureds in other cases would be imputed to all of Plaintiff's private counsel in light of the relationship contemplated by the Attorney General's August 27, 2007 letter to Mssrs. Fayard and McKernan.  (Exh. 3 (stating "[t]he Attorney General has approved as 'co-counsel' the following additional law firms to assist you under your direction …."))

- 19 -

both sets of clients will be materially limited by counsel's responsibility to the other.  La. R.

Prof'l Conduct 1.7(a)(2).  Accordingly, counsel's simultaneous representations are prohibited.[37]

## III.   THE ATTORNEY GENERAL'S ENGAGEMENT AGREEMENTS WITH COUNSEL VIOLATE STATE LAW AND CONSTITUTIONAL PROVISIONS

All of the private law firms that have entered appearances for the State must be disqualified for an additional, independent reason.  Because the State did not enter into a valid agreement with or otherwise lawfully retain them, those attorneys cannot represent the Attorney General in this case.  The arrangements with counsel are unlawful because (1) they never received written approval from the Louisiana Office of Contractual Review, (2) they do not comply with various statutory and regulatory requirements for such professional services contracts, and (3) any compensation scheme established or permitted by them violates the Louisiana Constitution and/or the Code of Governmental Ethics.[38]

---

[37] While some types of conflicts are waivable under Rule 1.7(b), it is doubtful that the potential conflicts presented here would be waivable, as counsel seeks to represent in the same proceeding both a putative class of insureds seeking insurance benefits and the State seeking to claim from those insureds at least part of those insurance benefits.  *See* Restatement (Third) of Law Governing Lawyers § 122 cmt. g(iii) (2000) ("When clients are aligned directly against each other in the same litigation, the institutional interest in vigorous development of each client's position renders the conflict nonconsentable.  The rule applies even if the parties themselves believe that the common interests are more significant in the matter than the interests dividing them.") (citations omitted); *see also id.* § 128 cmt. b ("Even if the parties would give informed consent to being represented by one lawyer, in some cases the parties' positions cannot be effectively presented through the same advocate.") (citations omitted).  Moreover, to the extent that counsel are seeking to represent a class of insureds (as all of them are doing in this case and many are doing in other cases), it would not be possible to obtain informed consent, confirmed in writing from all such insureds.

[38] The Louisiana Supreme Court has held that parties in the position of Defendants have standing to raise issues of this nature arising out of the Attorney General's retention of private counsel pursuant to an unlawful contract or other arrangement.  *See Meredith v. Ieyoub*, 96-1110 (La. 9/9/97); 700 So. 2d 478, 480-81 (finding standing where various business entities and industry association filed declaratory action challenging validity of Attorney General's arrangements with private counsel even where no litigation has yet been commenced).

906407v.2

A.      **The Arrangements Are Null and Void as a Matter of Louisiana Law**

The engagement letters in this case state that "[t]he Attorney General has approved and authorized you as co-counsel."   However, the Louisiana Supreme Court has specifically held that the Attorney General "does not have unbridled discretion" in retaining private attorneys to represent the State's interests, but instead must comply with the "numerous statutes set[ting] out specific requirements that must be met for professional service contracts." *Meredith v. Ieyoub*, 96-1110, p. 9 (La. 9/9/97); 700 So. 2d 478, 483.   Because the letters of authorization in this case do not comply with these specific requirements and were neither submitted to or approved by the Louisiana Office of Contractual Review ("OCR"), the arrangements are contrary to public order and therefore an absolute nullity.   LSA-C.C. art. 2030; *Daigle v. Clemco Indus.*, 613 So. 2d 619, 624 (La. 1993).

1.      **The Arrangements Were Never Submitted to or Approved by the Louisiana Office of Contractual Review**

Louisiana law requires that any contract for professional services must be submitted to and approved *in writing* by OCR in order to be valid or binding.   LSA-R.S. 39:1502(A) ("No contract shall be valid, nor shall the state be bound by the contract, until it has been executed by the head of the using agency, or his designee, which is a party to the contract and the contractor, *and has been approved in writing by the director of the office of contractual review.*") (emphasis added); *see also* 34 La. Admin. Code, Part V, §§ 118, 121.

In response to an inquiry by Defendants regarding the agreements between the State and privately retained counsel who initially appeared in this matter, the director of OCR stated that "our search did not find any such contracts approved by this office."   (*See* Bossom Decl., Exh. K.)   OCR has not responded to a request regarding the private counsel who subsequently appeared.   (*See* Bossom Decl., ¶ 19)   At this point, there is no evidence that OCR

ever gave or was asked for the requisite written approval in this case as to any of the private counsel.  In the absence of such approval, the engagement agreements with counsel are invalid and unenforceable as a matter of law.

**2.      The Arrangements Do Not Comply with the Requirements for Professional Service Contracts with the State**

In addition to OCR's written approval, professional service contracts with the State must meet a number of specific requirements set forth in Louisiana's procurement laws. *Meredith*, 96-1110, p. 9; 700 So. 2d at 483.  Defendants have found no evidence that certain of these statutory and regulatory requirements have been met, and that evidence of which Defendants are aware indicates that many of those requirements have not been satisfied in this case.

First, when seeking OCR approval of a professional services contract, the requesting agency must certify to the director of OCR that there is a need for outside assistance and that certain acts or analyses have been done.  *See* LSA-R.S. 39:1497; 34 La. Admin. Code, Part V, § 121(F).  There is no evidence the Attorney General complied with this certification requirement, and OCR was never given the opportunity to determine which, if any, of these requirements are satisfied in this case.  *See* LSA-R.S. 39:1498 (requiring OCR to determine, *inter alia*, that "[a]ll provisions of R.S. 39:1497 have been complied with" before approving a proposed contract).

Second, the engagement agreements in this case do not contain any of the basic information required to be included in professional service contracts.  Contracts for professional services must, "as a minimum," contain the following information:

> description of the work to be performed and objectives to be met; amount and time of payments to be made; description of reports or other deliverables to be received, when applicable; date of reports or other deliverables to be received, when applicable; responsibility for payment of taxes, when applicable;

circumstances under which the contract can be terminated either with or without cause; remedies for default; and a statement giving the legislative auditor the authority to audit records of the individual(s) or firm(s).

LSA-R.S. 39:1498.1.  In addition, Louisiana's procurement regulations require that any such contract must be signed by *both* the head of the requesting agency and the contractor, must "clearly and completely" identify the work to be performed, must specify beginning and termination dates for the arrangement, and must contain "a clause providing that the contractor shall not assign any interest in this contract" without prior written consent.  34 La. Admin. Code, Part V, § 121(E).  Other than requiring status reports, the Attorney General's letters in this case do not so much as attempt to comply with any of these specific content requirements.

Third, a professional services contract must "clearly and completely" state "the maximum amount of compensation to be paid under the contract" along with a payment schedule, 34 La. Admin. Code, Part V, § 121(E), and the Attorney General must submit a budget request for the funding of that contract.  *See* LSA-R.S. 39:32.C(1) ("Each budget unit shall list and itemize each request for the funding of each professional, personal, or consulting service contract separately in its budget request."); LSA-R.S. 39:32.C(2) ("No contract for professional, personal, or consulting services shall be entered into unless said contract was submitted in the budget request as provided in this Subsection except for a contract thereafter specifically approved by the legislature.").  While the engagement letters do not make any direct provision for fees, it is reasonable to assume that the law firms in question are not representing the State on a pro bono basis and that they expect to be paid, at least in the event of any recoveries. However, the letters make no provision for the compensation of counsel and actually purport to "specifically disclaim[] all liability for payment of fees or costs," though one of the letters goes

on to state ambiguously that "the attorneys handling this case may receive attorneys fees and costs permitted them by State or Federal law."  (*See* Exh. 3.)[39]  Nowhere in the letters is there any mention of an hourly rate for any firm's services,[40] any limitation on the amount of fees recoverable by the firm, or any budget for its services.  In addition, it appears that the Attorney General did not include any of the contracts with private counsel in an itemized budget request as is required by law.  *See Meredith*, 96-1110, p. 9; 700 So. 2d at 483 n. 4.

Fourth, the Attorney General is required to make a written determination that the compensation to be paid is "fair and reasonable to the state."  LSA-R.S. 39:1499.  There is no evidence the Attorney General made this required written determination and, in any event, the content of the letters of authorization in this case are not specific enough to permit such a determination.

Finally, "[a]ll attorneys appointed as private legal counsel to represent the state or a state agency shall meet or exceed written minimum qualifications" that are published at least annually in the Louisiana Bar Journal.  *See* LSA-R.S. 49:258(1).  These minimum standards, among other things, provide that attorneys contracting with the State "shall not have a conflict of interest as provided by the Rules of Professional Conduct of the Louisiana State Bar Association" and prohibit contract attorneys, and those attorneys with whom they are engaged in

---

[39] This same statement is also included in other letters produced by the Office of the Attorney General to Mssrs. Houghtaling and Dugan and dated November 20, 2007 and November 27, 2007 (*see* Bossum Decl., Exh. D) which are otherwise repetitive of the content of the September 14, 2007 letters to Mssrs. Houghtaling and Dugan. (*Compare* Exhs. 4 & 5.)

[40] Contracts with private attorneys must provide for payment on an hourly basis and funds for that purpose must be appropriated by the Legislature.  As detailed *infra*, it is unconstitutional for the Attorney General to hire and compensate outside counsel on a contingency fee basis unless expressly authorized by the Legislature.  *Meredith*, 96-1110, p. 5; 700 So. 2d at 481.

the practice of law, from representing "any plaintiff in any tort claim against the state and/or its departments, commissions, boards, agencies, officers, officials or employees." *See, e.g.*, 55 La. Bar. J. 123 (Aug./Sept. 2007).  As detailed *supra* in Section II, all of the private counsel in this case are operating under a conflict of interest vis-à-vis their policyholder clients.  Accordingly, counsel do not and cannot meet the minimum qualifications proscribed by the State.

These various failures to comply with the requirements of Louisiana procurement law render the Attorney General's agreements with counsel contrary to public order and an absolute nullity.  LSA-C.C. art. 2030; *Meredith*, 96-1110, p. 9; 700 So. 2d at 483.

**B.  Any Compensation Arrangement Contemplated by the Engagement Agreements Is Unconstitutional and/or Illegal**

In his letters of authorization, the Attorney General goes to great lengths to avoid stating precisely how it is that counsel will be compensated for their time (in contravention of LSA-R.S. 39:1498.1 and 34 La. Admin. Code, Part V, § 121(E) discussed *supra*).  However, any compensation arrangement contemplated or permitted by the Attorney General's letters violates the Louisiana Constitution and/or the Louisiana Code of Governmental Ethics.  As such, the engagement agreements would be invalid even if the OCR had reviewed and approved them.

**1.  Any Payment of Compensation from State Funds or Property Is an Unconstitutional Infringement Upon the Legislature's Appropriation Authority**

Any attempt by the Attorney General to compensate counsel with State funds or property would be an unconstitutional exercise of undelegated powers in violation of the Louisiana Constitution.  While the Attorney General is empowered to initiate and conduct litigation on behalf of the State, *see* La. Const. art. IV, § 8; LSA-R.S. 36:701, *et seq.*, the *financing* of such operations is the province of the Legislature.  The Louisiana Constitution clearly and unambiguously vests the power over state finances in the legislative branch.  *See id.*

- 25 -

art. III, § 16, art. VII, § 10.  Absent a legislative appropriation, any compensation agreement entered into by the Attorney General would amount to an usurpation of the Legislature's power over the State's purse strings in violation of the constitutional separation of powers doctrine.  *Id.* art. II, § 2 ("Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.").

   This is not a mere technical argument—the Attorney General's actions have serious constitutional implications.  The provisions of the Louisiana Constitution are not grants of power, but are instead limitations on the otherwise plenary power of the people as exercised through the Legislature.  *Williams v. Mumphrey*, 95-643 (La. App. 5 Cir. 1/30/96); 668 So. 2d 1274, 1277 ("plenary power in the legislature is the rule and any limitation on the exercise of this power is the exception").  The Attorney General's unilateral disposition, disbursement, and/or alienation of state property without constitutional or legislative authorization is an affront to and an usurpation of the plenary power of the people of Louisiana.  *See Meredith*, 96-1110; 700 So. 2d at 484 (Kimball, J., concurring); *Bd. of Comm'rs of Orleans Levee Dist. v. Dept. of Natural Res.*, 496 So. 2d 281, 286 (La. 1986).  The Attorney General simply cannot enter into contractual arrangements that may operate to divest the State of its assets without legislative authorization.

   As the Louisiana Supreme Court has noted, "[p]aying outside attorneys to prosecute legal claims on behalf of the state is a financial matter."  *Meredith*, 96-1110, p. 7; 700 So. 2d at 482.  Any compensation arrangement unilaterally implemented by the Attorney General is an unconstitutional infringement upon the Legislature's power to control the financial affairs of the State.  The Louisiana Constitution gives the Legislature exclusive power over the state treasury, including assigning any interests in it.  *See id.* at 481 ("our constitution vests the power over state finances in the legislative branch . . ., a power the Attorney General can obtain

- 26 -

only by the constitution or other law."); *State v. Duhe*, 9 So. 2d 517, 521 (La. 1942) ("It is elementary that the 'fiscal affairs of the state, the possession, control, administration, and disposition of the property, funds, and revenues of the state, are matters appertaining exclusively to the legislative department.'") (quoting *Carter v. State*, 8 So. 836, 837 (La. 1890)).  The Attorney General, an officer of the executive branch, simply cannot appropriate funds of his own accord without encroaching upon governmental powers vested exclusively in the legislative branch.

The Louisiana Supreme Court has expressly rejected arguments that either the Attorney General's inherent constitutional powers or his general statutory powers to procure and contract for professional services are sufficient to confer him with unilateral authority over appropriations in those areas.  *See Meredith*, 96-1110, pp. 6-10; 700 So. 2d at 482-84 (specifically rejecting arguments under LSA-R.S. 37:218 and 39:1509).  Instead, the separation of powers doctrine requires an *express* constitutional or legislative grant of authority in order to permit the Attorney General to alienate, appropriate, or otherwise disburse State funds and the Attorney General bears the burden of proving the existence of such authorization.  *Id.* at p. 5; 700 So. 2d at 481.  Absent such authorization, any attempt by the Attorney General to exercise the Legislature's power of appropriation "is invalid and may not be implemented or enforced."  *Id.* at p. 11; 700 So. 2d at 484; *see also Ieyoub ex rel. State v. W.R. Grace & Co.*, 97-728, pp. 1-5 (La. App. 3 Cir. 3/6/98); 708 So. 2d 1227, 1228-30 (holding Attorney General's contingency fee contract with private counsel retained to pursue tort claims against asbestos manufacturers was void and an "unconstitutional infringement on the legislative power over the state's finances").

906407v.2

    **2.**    **Any Compensation From a State Recovery or Legal Right Is an Unconstitutional Diversion of State Property**

Any arrangement that contemplates the compensation of private counsel out of funds received by the State or in which the State has an interest is unconstitutional in that it results in a diversion of funds from the State.  The Louisiana Constitution specifically requires that "[a]ll money received by the state . . . shall be deposited immediately upon receipt in the state treasury," La. Const. art. VII, § 9(A), and permits money to be drawn from the treasury only by legislative appropriation.  *Id.* art. III, § 16, art. VII, § 10.  The state constitution requires that any money, no matter its source or characterization, that is part and parcel of any recovery by the State in these proceedings must be deposited in the state treasury and, once there, is under the exclusive control of the Legislature.  Therefore, to the extent the Attorney General's arrangement with counsel contemplates that counsel's compensation will come out of any recovery secured as a result of the State's claims, that arrangement is unconstitutional because it diverts funds that would otherwise inure in the state treasury.

As noted above, the Attorney General cannot alienate state property without express legislative authorization.  *See Meredith*, 96-1110; 700 So. 2d at 482; *see also id.* at 484 (Kimball, J., concurring).  A legal claim is undeniably a property right held by the State.  *See W.R.M. v. H.C.V.*, 06-0702, p. 6 (La. 3/9/07); 951 So. 2d 172, 175.  Accordingly, if monies recovered on behalf of the State in any litigation are diverted to a person or entity other than the State, "[t]he Louisiana Legislature, as the representative of the real owner of any funds collected, the people of Louisiana, must exempt the designated funds from those covered by the statutory or constitutional provisions. . . ."  *Meredith v. Ieyoub*, 95-0719 (La. App. 1 Cir. 4/4/96); 672 So. 2d 375, 381 (Fitzsimmons, J., concurring).

906407v.2

The Attorney General may intend to structure any hoped for judgment or settlement so as to carve out certain portions of the funds that would otherwise be received by the State, designate them as the attorneys' fees, and divert those monies directly to counsel outside the legislative process.   However, irrespective of the characterization the Attorney General, counsel, Defendants, or even the Court may give to any particular component of the State's recovery, the entirety of the funds potentially recoverable by the State represent money "received by" the State which must "be deposited *immediately upon receipt* in the state treasury." La. Const. art. VII, § 9(A).   The state constitution makes no distinction between types of damages awards; once the money is received by the State, its appropriation, distribution, or alienation is the sole province of the Legislature.   In sum, neither the Attorney General nor any combination of private counsel, the Attorney General, and Defendants can make an appropriation of moneys received by the State, nor could any Court order such an appropriation.

### 3.     The Attorney General Cannot Grant a Contingent Fee Right in Favor Of Counsel Nor Can He Assign Any Potential Attorney Fee Award

The Attorney General may seek to defend his arrangements with private counsel on the basis that payment will be made directly to them on the basis of some purportedly independent entitlement to compensation, overlooking the fact that the source of such compensation is part and parcel of any State recovery.   First, Louisiana law is clear that that part of a damage award reflecting an attorney's contracted for contingent fee cannot be received by the attorneys "on their own account," but belongs to the client (here, the State).   *See Saucier v. Hayes Dairy Prods., Inc.*, 373 So. 2d 102, 117 (La. 1979) (on rehearing) (characterizing attorney's interest in contingent fee as privilege with respect to rights of others, not independent right of ownership).   As such, any agreement to compensate the State's counsel on a contingency

- 29 -

fee basis would be an unconstitutional and unauthorized appropriation and per se invalid under the Louisiana Supreme Court's ruling in *Meredith*, *supra*, 96-1110, p. 5; 700 So. 2d at 481.[41]

To the extent the Attorney General intends for private counsel's compensation to come in the form of a statutory attorney fee award (as suggested by the Attorney General's August 27, 2007 letter to Mssrs. Fayard and McKernan attached as Exhibit 3), such awards are generally payable to the prevailing *party* rather than the prevailing party's attorney[42] and, therefore, would be subject to the same separation of powers and diversion of state funds concerns. *See* 6 La. Civ. L. Treatise § 12.28 (2d ed. 2007) ("the conclusion is warranted that the awarded fee belongs to the litigant and not to his attorney"); *Evans v. Jeff D.*, 475 U.S. 717, 730 (1986) (holding fee-shifting statute bestowed fee award eligibility "on the 'prevailing *party*'" and right was accordingly client's to waive) (emphasis in original).[43]   The right to any such fee award

---

[41] Although the Attorney General's letters state that "the State would receive all amounts due and owing to it without discount and without any fees or costs subtracted from the corpus of the judgment or settlement," it is important to note that this disclaimer is said to apply only "where the State would be included as a member of a class action." (*See* Exhs. 2, 3, 4, & 5.)

[42] Although inapplicable here, there are a small number of exceptions to this general rule where the statutory language explicitly affords an attorney the right to recover his fees. *See, e.g.*, 33 U.S.C. § 928(a) (providing that in administrative proceeding necessitated by employer's controversion of employee's workmen's compensation claim, reasonable attorneys' fees taxed against unsuccessful employer and paid directly to the attorney).

[43] Defendants acknowledge that Louisiana courts have treated attorney fee awards based upon stipulated attorney fee provisions contained within contractual agreements as accruing to the attorney representing the creditor/obligee who was party to the contract, rather than to the party itself. *See, e.g.*, *Walker v. Investment Props., Ltd.*, 507 So. 2d 850, 853 (La. App. 5 Cir. 1987).   However, in light of the fact that the Louisiana courts do not have constitutional authority to control contractual agreements between non-attorney parties, this approach was necessary in order to permit the courts to regulate the amount of such fees, review their reasonableness, and enforce attorneys' ethical obligations not to accept clearly excessive fees. *See Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1567-68 (5th Cir. 1988); *Central Progressive Bank v. Bradley*, 502 So. 2d 1017, 1017 (La. 1987).   In any event, even such contractually stipulated attorney fees may be sued for and received by the client. LSA-C.C. art. 2000; *Am. Gen. Inv. Corp. v. St. Elmo Lands*, 391 So. 2d 570, 573 (La. App. 4 Cir. 1980) ("[W]e feel it is clear that provision for attorney's fees in a mortgage note is a valid and enforceable obligation in favor of the payee.").   Moreover, as

rests with the client (not the attorney), and it is the client who receives the award or, if he so chooses, may waive, negotiate, or settle the right.  *See Venegas v. Mitchell*, 495 U.S. 82, 87-88 (1990) (holding "it is the party, rather than the lawyer, who is so eligible" for award of attorney's fees under 42 U.S.C. § 1988); *Ayers v. Thompson*, 358 F.3d 356, 377 (5th Cir. 2004) ("The preferred view seems to be that a claim for attorneys' fees … is a single claim possessed by the client."); *Gram v. Bank of La.*, 691 F.2d 728, 730 (5th Cir. 1982) ("[A] *plaintiff* may waive *his* right to attorney's fees in a negotiated settlement agreement.") (emphasis added).  As explained by the Eleventh Circuit,

> It has not been unusual for those of us in the legal profession subjectively to consider that such fee provisions were enacted for the benefit of the Bar, but that is not the case.  They were enacted for the benefit of the persons the statutes are designed to reach.  They proceed from the assumption that the wealth of the party shall not determine the party's capability to enforce the rights conferred by the statute.

*Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1511 (11th Cir. 1988).[44]  As a result, any agreement by the Attorney General to turn over the right to a fee award to private counsel is an unconstitutional alienation of State property.[45]

---

discussed above, because the State is the contracting party here, any such stipulation entered into by the Attorney General would violate the Louisiana Constitution as an impermissible infringement on the Legislature's power to appropriate.

[44] *See also Shula v. Lawent*, 359 F.3d 489, 492 (7th Cir. 2004) (Posner, J.) ("The principle that costs like attorneys' fees are the entitlement of the client rather than the lawyer is clear, especially since it is standard for fee-shifting statutes to award attorneys' fees as part of the costs normally awarded a prevailing party.").

[45] To be sure, Louisiana law affords attorneys a special privilege on judgments obtained by them to the extent of their professional fees.  LSA-R.S. 9:5001.  However, any privilege or entitlement to compensation that legally accrues to the attorneys representing the State does not alter the fact that the underlying litigation is pursued on the basis of the State's rights and any recovery would be received by the State.  Accordingly, the state constitution prohibits the Attorney General from unilaterally alienating any portion of the funds potentially recoverable by the State.  That the attorneys may have a legally enforceable right to share in the funds eventually recovered on behalf

In a recent state court case, Attorney General Foti defended a similar contract with outside counsel enlisted to pursue claims against pharmaceutical manufacturers.  The letter agreement in that case also lacked an express contingency fee provision, but was nonetheless so ambiguous as to obscure the nature of the underlying fee arrangement.  As in this case, the Attorney General's letter stated that "[a]t no time and for no reason will any attorneys' fees come out of the recovery that is due the State of Louisiana."  Exh. 19, Def. Mem. in Support of Mot. for Preliminary Injunction at 17, *Foti v. Bayer Corp.*, No. 04-439 (La. Civ. Dist. Ct. Aug. 10, 2004) ("Bayer Mem.").  The letter only provided that counsel would be compensated after litigation "by court order or private agreement."  *Id.*

The defendants challenged the arrangement, arguing both that the Attorney General was in reality using an unconstitutional contingency fee arrangement, *see* Bayer Mem. at 3-4, 8-10, and that the agreement unconstitutionally diverted state funds from the treasury because any attorney's fees recovered from the defendants would be funds "received" by the State subject to the Legislature's exclusive control.[46]  (*See* Bayer Mem. at 10-12.)  The Attorney General defended the arrangement in *Bayer* by asserting that even though payment was contingent on successful prosecution of the State's claims, *Meredith* was not implicated because attorney fees would be paid, if at all, pursuant to a separate award by the court and would not

_____

of the State does not deprive the State of its interest in those funds nor does it elevate the Attorney General over the Legislature with respect to the handling of the State's financial interests.

[46] As in this case, the defendants also contended the agreement was a void and improper public contract in that it was not approved by the Office of Contractual Review, *see* Bayer Mem. at 4-5, did not meet the statutory and regulatory requirements for a public professional services contract, *see id.* at 5-8, and offended ethical standards governing public conduct.  *See id.* at 12-13.  Judge Griffin agreed and specifically noted in his order granting defendants' motion that the Attorney General's letter agreement with private counsel violated "Louisiana statutory law governing contracts for professional services to which the State of Louisiana is a party."  *See* Exh. 20, *Foti v. Bayer Corp.*, No. 04-439, Judgment on Preliminary Injunction at 2 (La. Civ. Dist. Ct. Sept. 27, 2004).

come out of the State's compensatory recovery.  *See* Exh. 21, Pet. Mem. in Opposition to Def. Mot. for Prelim. Inj. at 4-8, *Foti v. Bayer Corp.*, No. 04-439 (La. Civ. Dist. Ct. Aug. 30, 2004).

Judge Griffin rejected the State's arguments and held that the Attorney General's letter agreement with private counsel "violates . . . the Louisiana Constitution of 1974."  *See* Exh. 20, *Foti v. Bayer Corp.*, No. 04-439, Judgment on Preliminary Injunction at 2 (La. Civ. Dist. Ct. Sept. 27, 2004).   In so ruling, Judge Griffin appeared persuaded by both the defendants' construction of the Attorney General's letter as an unauthorized contingency fee arrangement and by defendants' separate argument that any attorney's fee award would be part of the recovery received by the State subject to the same constitutional limitations on its alienation.

While Defendants maintain that there is no basis on which the State could recover an award of attorney fees in this case, an examination of the particular statutes on which the State may attempt to rely only reinforces the constitutional implications of counsel's compensation arrangement.[47]   First, the State might attempt to recover a fee award under Article 595 of the Code of Civil Procedure, which provides that in class action cases "[t]he court may allow the representative parties their reasonable expenses of litigation, including attorney's fees, when as a result of the class action a fund is made available, or a recovery or compromise is had which is beneficial, to the class."   LSA-C.C.P. art. 595(A).   However, attorney compensation under Article 595 operates in a similar manner to traditional contingency fee arrangements.   When a court awards attorney fees under Article 595, it uses a "percentage of the fund" approach instead of a lodestar method.  *See White v. Gen. Motors Corp.*, 97-1028, pp. 65-68 (La. App. 1 Cir.

---

[47] The longstanding general rule in Louisiana is that attorneys' fees may be recovered as an item of damages only where specifically authorized by statute or contract.  *See Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 763 (La. 1985)

6/29/98); 718 So. 2d 480, 508-10; *Alexander v. Lindsay*, 152 So. 2d 261, 267 (La.. App. 4 Cir. 1963).  As such, Article 595 is a codification of the common fund doctrine, which provides that when a party creates a common fund from which others will benefit, that party can recover his attorney's fees *from the fund*.  The theory underlying the common fund doctrine is that the party who creates the fund should not bear the burden of fees alone; rather they should be shared by all parties that benefit from the fund.  *See Avants v. Kennedy*, 02-0830, pp. 13-15 (La. App. 1 Cir. 12/20/02); 837 So. 2d 647, 656-57.  To the extent that the common fund consisted of or included amounts recovered on behalf of the State, any payment of fees out of that fund would be just as unconstitutional and illegal under *Meredith* as a standard contingent fee agreement.

The only other statute the State could attempt to rely on is LSA-R.S. 22:658(B)(1),[48] one of two Louisiana statutes making penalties available in instances of certain specified bad faith conduct by insurers.  This provision was amended in 2006 to add a fee-shifting provision.  However, that amendment cannot be retroactively applied to insurer conduct that occurred or commenced prior to its effective date (August 15, 2006).  *See Leali v. Certain Underwriters at Lloyd's London*, No. 06-5030, 2007 WL 1975634, at *1 n.1 (E.D. La. July 3, 2007) (Fallon, J.); *Ferguson v. State Farm Ins. Co.*, No. 06-3936, 2007 WL 1378507, at *3 (E.D. La. May 9, 2007) (Berrigan, J.); *Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 1017341, at *3 (E.D. La. Mar. 28, 2007) (Vance, J.); *see also* LSA-R.S. 1:2; LSA-C.C. art. 6.  Moreover,

---

[48] Defendants note that the Road Home Limited Subrogation / Assignment Agreement does contain the following provision:

> In any proceeding to enforce this Agreement, the State shall be entitled to recover all costs of enforcement, including actual attorney's fees and court costs.

(Appendix A, p. 2.)  This contractual provision cannot be relied upon by the State in this action because the Defendants are not a party to any of the Subrogation / Assignment Agreements.

906407v.2

even assuming the amended version of LSA-R.S. 22:658(B)(1) could be applied to some particular action by one of the Defendants in this case relating to a property insurance claim by a member of the class, the statute clearly and unambiguously states that the penalty, reasonable attorney fees, and costs are "payable to the insured."  Setting aside for the moment issues relating to the State's ability to assert a right to such penalties as either a subrogee or a class representative, the statute makes clear that the award is payable to the plaintiff, not counsel. Accordingly, were the State to receive any such award, the amounts received could be spent only pursuant to appropriation by the Legislature.

> **4.     Any Payments to Counsel by Defendants, Putative Class Members, or Third Parties Would Violate the Louisiana Governmental Ethics Code**

It may be that the Attorney General hopes to attempt an end-run around the Louisiana Supreme Court's ruling in *Meredith* by having someone other than the State pay its attorney fee award directly to retained counsel.  For example, the Attorney General may have in mind paying his attorneys out of any recoveries for putative class members over and above any amounts to which the State is found to be entitled.  Alternatively, the Attorney General may be hoping for a settlement in which one or more Defendants would agree to pay counsel's fees.

A similar argument was made to no avail by the Attorney General in *Meredith*. 96-1110; 700 So. 2d at 479; *see also lower court opinion*, 95-0719; 672 So. 2d 375, 379.  Even if any such arrangement did not run afoul of the constitutional and legal provisions already discussed, it would still violate the Louisiana Governmental Ethics Code, which provides:

> No public servant shall receive anything of economic value, other than compensation and benefits from the governmental entity to which he is duly entitled, for the performance of the duties and responsibilities of his office or position. . . .

LSA-R.S. 42:1111(A)(1).  Having Defendants, insureds, or anyone else pay a court-ordered or agreed-upon fee award directly to counsel for the State would result in both the receipt and payment of something of economic value for counsel's performance of their duties and responsibilities to the State.

Such was the ruling of the Louisiana Board of Ethics addressing a compensation arrangement between the Attorney General and attorneys retained to pursue the State's claims against tobacco manufacturers.  *See* La. Board of Ethics Op. No. 2000-381 (May 17, 2001) (attached as Exhibit 22 hereto).  The representation agreement in that case stated that the State would have no obligation to "be responsible for payment of any attorneys' fees to Counsel" and counsel agreed to accept whatever fee could be awarded "in accordance with law."  *Id.* ¶ 2.  An eventual national settlement agreement provided for the payment of attorney's fees from a separate fund to be created by the defendant tobacco manufacturers.  *Id.* ¶ 8.  The Legislature was informed of and approved the settlement and the compensation arrangement with counsel, and actually enacted legislation approving the settlement.  *Id.* ¶¶ 25-28.  Nonetheless, the Louisiana Board of Ethics concluded that privately retained counsel had "violated Section 1111(A)(1) of the Code by receiving from the tobacco manufacturers payment for services rendered on behalf of the State of Louisiana in the tobacco litigation."  *Id.*, p. 10.  Irrespective of the source of the payment, the implicit or express approval of the Legislature, or the good faith of an attorney, counsel cannot receive payment for services rendered to the State from any person or entity other than the State.

Moreover, the Code of Governmental Ethics also prohibits not only receipt, but also the giving or paying "to any public servant or other person any thing of economic value which such public servant or other person would be prohibited from receiving by any provision

906407v.2

of this Part." LSA-R.S. 42:1117.  Accordingly, if Defendants or insureds were to pay attorney's fees directly to counsel for the State they would themselves be in violation of the Code of Governmental Ethics.  *See* Exh. 22, p. 10 n.3 (noting as much).

   Accordingly, any compensation arrangement, contingency fee or otherwise, that would require Defendants, insureds, or anyone else other than the State to pay the State's counsel attorney fees or other compensation would violate the Louisiana Code of Governmental Ethics.

## IV.   <u>CONCLUSION</u>

   For the reasons set forth above, the private law firms representing the State should be disqualified on the grounds that (1) the simultaneous representation of both the State and insureds who have applied for and/or received Road Home grants constitutes a conflict of interest, and (2) all of the law firms are working under engagement agreements that violate state law and constitutional provisions.

Respectfully submitted,

*/s/ Wayne J. Lee*
Wayne J. Lee, 7916
 wlee@stonepigman.com
Stephen G. Bullock, 3648
 sbullock@stonepigman.com
Mary L. Dumestre, 18873
 mdumestre@stonepigman.com
Andrea L. Fannin, 26280
 afannin@stonepigman.com
   Of
STONE PIGMAN WALTHER
 WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

   And

Charles L. Chassaignac IV, 20746
  cchassaignac@phjlaw.com
        Of
PORTEOUS, HAINKEL
  & JOHNSON, L.L.P.
343 Third Street, Suite 202
Baton Rouge, Louisiana  70801
Telephone:  (225)383-8900
Facsimile:  (225) 383-7900

*Attorneys for State Farm Fire and Casualty Company and State Farm General Insurance Company*

/s/ Maura Z. Pelleteri
Maura Z. Pelleteri, 8463
Amy S. Malish, 28992
        Of
KREBS, FARLEY & PELLETERI, L.L.C.
Texaco, Center, Suite 2500
400 Poydras Street
New Orleans, Louisiana  70130
Telephone:  (504) 299-3570
Facsimile:  (504) 299-3582

*Attorneys for Aegis Security Insurance Company*

/s/ Howard B. Kaplan
Howard B. Kaplan, 14414
        Of
BERNARD CASSISA ELLIOTT & DAVIS
1615 Metairie Road
P.O. Box 55490
Metairie, Louisiana  70055-5490
Telephone:  (504) 834-2612

*Attorneys for Lafayette Insurance Company, United Fire and Casualty Company and United Fire and Indemnity Company*

906407v.2

_/s/ Judy Y. Barrasso_
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
      Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

_Attorneys for America First Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Mutual Insurance Company_


_/s/ Judy Y. Barrasso_
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
      Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

_Attorneys for Metlife, Inc., Economy Premier Assurance Company, Metropolitan Casualty Insurance Company, and Metropolitan Property & Casualty Insurance Company_


_/s/ Seth A. Schmeeckle_
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
      Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990
      And

906407v.2

Christopher W. Martin,
Texas Bar No. 13057620
Martin R. Sadler,
Texas Bar No. 00788842
    Of
MARTIN, DISIERE, JEFFERSON &
  WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas  77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

*Attorneys for United Services Automobile Association, also separately named by plaintiffs as USAA, USAA Casualty Insurance Company and USAA General Indemnity Company*


/s/ Seth A. Schmeeckle
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
    Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

    And

Of Counsel:

Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
    Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

*Attorneys for The Hanover Insurance Company, The Hanover American Insurance Company, and Massachusetts Bay Insurance Company*

906407v.2

*/s/ Deborah B. Rouen*
Deborah B. Rouen, 2084
Chris A. D'Amour, 26252
     Of
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone:  (504) 581-3234
Facsimile:  (504) 566-0210

*Attorneys for Union National Fire Insurance Company*


*/s/ Dominic J. Ovella*
Dominic J. Ovella, 15030
Anne E. Medo, 24556
Sean P. Mount, 27584
Daniel M. Redmann, 30685
John Christopher Dippel, Jr., 30480
     Of
HAILEY, MCNAMARA, HALL,
  LARMANN & PAPALE, L.L.P.
One Galleria Boulevard, Suite 1400
P. O. Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500

*Attorneys for Fidelity and Deposit Company of Maryland, Empire Fire and Marine Insurance Company, Empire Indemnity Insurance Company, Centre Insurance Company, ZC Sterling Insurance Agency, Inc., and ZC Sterling Corporation*

906407v.2

_/s/ Judy Y. Barrasso_

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
     Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, LLC
LL&E Tower
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (5040 589-9701

_Attorneys for Allstate Insurance Company,
Allstate Indemnity Company, Encompass
Insurance Company, Encompass Insurance
Company of America, and Encompass
Property and Casualty Company_


_/s/ Seth A. Schmeeckle_

Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
     Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

       And

Of Counsel:

Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
     Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

_Attorneys for Horace Mann Insurance
Company, Teachers Insurance Company,
and Horace Mann Property & Casualty
Insurance Company_

- 42 -

906407v.2

/s/ Alan J. Yacoubian
Alan J. Yacoubian, 17213
Neal J. Favret, 24412
Rachel P. Catalanotto, 31095
      Of
JOHNSON, JOHNSON, BARRIOS &
  YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone:  (504) 528-3001

*Attorneys for Auto Club Family Insurance
Company*


/s/ Neil C. Abramson
Neil C. Abramson, 21436
Nora B. Bilbro, 22955
Jacqueline M. Brettner, 30412
      Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

      And

Marshall M. Redmon, 18398
      Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

*Attorneys for Homesite Insurance Company*

906407v.2

*/s/ Harry Rosenberg*
Harry Rosenberg, 11465
Jacqueline M. Brettner, 30412
     Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for Fidelity National Insurance Company and Fidelity National Property and Casualty Insurance Company*


*/s/ Marshall M. Redmon*
Marshall M. Redmon, 18398
     Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

     And

Amy R. Sabrin
     Of
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760

*Attorneys for Farmers Insurance Exchange, Foremost Insurance Company, Foremost Property and Casualty Company, and Foremost Signature Insurance Company*

906407v.2

*/s/ Neil C. Abramson*
Neil C. Abramson, 21436
Jacqueline M. Brettner, 30412
     Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for American Manufacturers Mutual Insurance Company, Kemper Casualty Insurance Company, Lumbermens Mutual Casualty Company, Merastar Insurance Company, Unitrin Preferred Insurance Company, Unitrin Auto and Home Insurance Company, Trinity Universal Insurance Company, and Trinity Universal Insurance Company of Kansas, Inc.*


*/s/ Harry Rosenberg*
Harry Rosenberg, 11465
Jay R. Sever, 23935
Jacqueline M. Brettner, 30412
     Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for Scottsdale Indemnity Company and Scottsdale Insurance Company*


*/s/ Ralph S. Hubbard*
Ralph S. Hubbard, III, 7040
Seth A. Schmeeckle, 27076
     Of
LUGENBUHL, WHEATON, PECK,
 RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

- 45 -

906407v.2

And

Stephen E. Goldman
Wystan M. Ackerman
        Of
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut  06103-3597
Telephone:  (860) 275-8200
Facsimile:  (860) 275-8299

*Attorneys for The Standard Fire Insurance Company, "St. Paul" (a non-existent entity), "St. Paul Travelers Insurance Company" (a non-existent entity), St. Paul Fire & Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, Travelers Home & Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Insurance Company (a non-existent entity), Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company, and The Automobile Insurance Company of Hartford, Connecticut*

## CERTIFICATE

I hereby certify that a copy of the foregoing Memorandum in Support of Motion of State Farm Fire and Casualty Company and Certain Other Insurer Defendants to Disqualify Plaintiff's Private Counsel has been served upon all counsel of record by electronic notice from the Court's CM/EC Filing System, this 9th day of January, 2008.

*/s/ Wayne J. Lee* _____

- 46 -