UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES * | | CIVIL ACTION NO. 05-4182 |
| CONSOLIDATED LITIGATION * | | |
| * | | SECTION "K" |
| * | | |
| PERTAINS TO: * | | MAGISTRATE (2) |
| NO.   05-4181 * | | |
|       06-1885 * | | JUDGE DUVAL |
|       06-4024 * | | |
|       06-4389 * | | MAGISTRATE WILKINSON |
|       06-5771 * | | |
|       06-5786 * | | |
|       06-6099 * | | |
|       07-0206 * | | |
|       07-3500 * | | |
|       07-3612 * | | |
|       07-5023 * | | |
|       07-5040 * | | |

* * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR DISQUALIFICATION, ETC.**

**MAY IT PLEASE THE COURT:**

> "No man can serve two masters;  for either
> he will hate the one, and love the other;  or
> else he will hold to the one and despise the other."
> Matthew 6:24.

Something momentous occurred in the "Victims of KATRINA" litigation on August 29, 2007, the second anniversary of the death, destruction and misery wrought upon the innocent citizenry of the Greater New Orleans Metropolitan Area, allegedly by the storm, which some people like to call "an act of God", but which was in reality a

-1-

"man-made" disaster. More particularly, on that date affirmative claims totaling some $200 billion dollars in property damage were asserted against the United States of America by private lawyers and law firms whose names appeared on pleadings as representing the interests of the State of Louisiana. As if the assertion of claims totaling some $200 billion dollars on behalf of the State against the United States was not momentous enough, even more momentous was the fact that two very "high profile" lawyers previously appointed by This Honorable Court to serve on various Committees appointed by the Court to manage the Victims of KATRINA litigation, namely Daniel E. Becnel, Jr. and Calvin Clifford Fayard, Jr., appeared on the pleadings as counsel of record for the State of Louisiana notwithstanding their appointment to Committees, which appointments carry with them certain Rule 23 responsibilities to all plaintiffs or potential plaintiffs pursuing claims.

Movers' position in connection with the Motion for Disqualification and Other Relief being the subject of this memorandum is very simple and stems from the perfectly obvious and irrefutable fact, namely: The interests of plaintiffs are directly in conflict with the interests of the State of Louisiana which is a joint-tortfeasor with the United States and a party to the death, destruction and misery wrought by Hurricane KATRINA.

## THE RELIEF IS BEING SOUGHT BY MOVERS

Movers are seeking the following relief from the Court:

1. For disqualification of Daniel E. Becnel, Jr. and Calvin Clifford Fayard, Jr. from membership on any and all Committees in this litigation, in any way pertaining to "the Levee Subgroup", including particularly, but without limitation, the "Interim Plaintiffs' Liaison Committee" and/or the

"Preliminary Master Committee" and/or the "Permanent Master Committee" and/or any "Plaintiffs' Subgroup Litigation Committee(s)", as the result of a clear and irreconcilable concurrent conflict of interests between one of their clients, namely the State of Louisiana, and movers herein, as well as members of "the Class", whose interests they have a duty to represent as Committee Members;

2. For full and complete disclosure of any and all financial arrangements which Messrs. Fayard and Becnel have with the State of Louisiana, the Louisiana Department of Justice, the Louisiana Office of the Attorney General, the Louisiana Division of Administration and/or the Louisiana Office of Risk Management, or with any other State agencies or instrumentalities, or with individuals employed by the State, for compensation or remuneration in the form of fees for professional legal services in any case within the umbrella of Civil Action No. 05-4182;

3. For full and complete disclosure of precisely when Messrs. Becnel and Fayard first commenced negotiations with the State of Louisiana, et al., which ultimately resulted in their representation of the State, which is information directly relevant and material to the issue of why Messrs. Becnel and Fayard failed to disclose to the Court, and to movers herein, and their counsel, their representation of the State of Louisiana, until their names appeared on pleadings filed as counsel of record for the State on August 29, 2007, the second anniversary of Hurricane KATRINA, in Civil Action Nos. 07-5023 and 07-5040;

4. For full and complete disclosure of any and all financial arrangements between and among Messrs. Becnel and Fayard and any other Member(s) of the Interim Plaintiffs' Liaison Committee and/or the Preliminary Master Committee and/or the Permanent Master Committee and/or any Plaintiffs' Subgroup Litigation Committee(s), and/or with any third-parties, such as other lawyers or law firms, who are neither Committee nor Subcommittee Members, in any way related to the representation of the State of Louisiana by Messrs. Becnel and Fayard; and

5. For disqualification of any and all other Members of any Committee in this litigation having any conflict of interests similar to the one involving Messrs. Becnel and Fayard, and for disqualification from serving on any Committee in this litigation of any lawyers or law firms who may be similarly situated.

## THE LEGAL CULPABILITY OF THE STATE TO ALL VICTIMS OF KATRINA IS PATENTLY OBVIOUS

"Hurricane Katrina and the subsequent sustained flooding of New Orleans exposed significant flaws in Federal, State, and local preparedness for catastrophic events and our capacity to respond to them. Emergency plans at all levels of government, from small town plans to the 600-page National Response Plan – the Federal government's plan to coordinate all its departments and agencies and integrate them with State, local, and private sector partners – were put to the ultimate test, and came up short." Report of the House Select Bipartisan Committee in its report to the President, entitled: "The Federal Response to Hurricane Katrina, Lessons Learned", February 2006.

\* \* \*

"The House report and findings by the Senate committee fault Blanco and her administration for failing to plan adequately to help the infirm or residents without automobiles to evacuate; for not including nursing homes directly in the state's emergency rescue system after Katrina struck; and for sometimes not being specific enough about the

resources the state needed.  At times, the House report says, Blanco and her staff didn't go through the correct federal channels or didn't complete the required paperwork, delaying federal assistance.  The Times Picayune, Sunday, February 26, 2006, in an article by Washington Bureau writers Bill Walsh and Bruce Alpert, entitled:  "Probes find plenty of blame to go around;  Investigators see storm blunders from City Hall to White House".

\* \* \*

"We all know that there were failures at every level of government: state, federal and local.  At the state level, we must take a careful look at what went wrong and make sure it never happens again.  The buck stops here, and as your governor, I take full responsibility."  Governor Kathleen Blanco to lawmakers in a 2006 Special Session of the Louisiana Legislature.

\* \* \*

"I really should have called for the military.  I really should have started that in the first call."  Governor Kathleen Blanco, caught on the air chatting with her Press Secretary between TV interviews. NewsMax.com, September 15, 2005, and elsewhere.

Movers herein ask rhetorically:  "How much blame can be heaped upon, and freely acknowledged by, an elected chief executive, without the executive actually being held legally accountable, other than by declining the opportunity to run for re-election.  The wrongs committed against movers herein by Governor Blanco and the State of Louisiana, its agencies and instrumentalities, run the gamut from delaying any order to evacuate the City until Sunday morning, August 28, 2005, less than 24-hours before Hurricane KATRINA made landfall, participating in the decision to except from the evacuation order those persons who needed evacuation most, failing to utilize the available transportation assets for evacuation purposes, both before and after the storm, including the resources of the State Police and the Louisiana National Guard, among other State agencies, directing people to shelters which were positioned in the flood plain and not properly provisioned with food, water or working toilet facilities, allowing looters to rampage the City without interference from available law enforcement or the National Guard or State Police for more than a week after the storm, failure to declare

martial law and restore law and order, and when action finally was taken to attempt to restore order to chaos, trampling the constitutional rights of law abiding citizens by ordering confiscation of legal weapons, failing to enforce the law pursuant to *posse commitatus* and illegally ordering that citizens be removed from their homes by force. The Governor also committed wrong by failing to allow the Louisiana National Guard to be federalized, and by failing to specifically request Federal assistance early. The wrongs committed by the Governor and the State through the Louisiana Department of Transportation and Development bearing directly on the retaining wall failures and flooding include the failure to competently inspect and maintain the City's outfall canals, and failure to do what was necessary to close the breaches and dewater the City.

Undersigned counsel for movers has been at the forefront of pursuing the State of Louisiana for damages on behalf of Victims of KATRINA, but has been thwarted at virtually every turn. All of counsel's clients' claims against the State are currently on appeal, but the fact that certain claims against the State have been dismissed does not mean that Messrs. Becnel and Fayard do not have (and have not had) a conflict of interests.

### WHAT TRANSPIRED AFTER THE CONFLICT OF INTERESTS WAS FINALLY REVEALED

At 1134 hours on August 31, 2007, after learning that Plaintiffs' Committee Members Becnel and Fayard had appeared as counsel of record for the State of Louisiana in Civil Action Nos. 07-5023 and 07-5040, undersigned counsel for movers communicated with all plaintiffs' lawyers, including Messrs. Becnel and Fayard, in an E-mail appended hereto and marked for identification as Exhibit No. 1, stating as follows:

> While we're all "communicating", when are we going to address the issue of "conflicts of interests" involving those members of the Plaintiffs' Liaison Committee, who we all now know have been "sleeping with the devil", the Louisiana Department of "Injustice", and who concealed their now obviously long-standing relationship with Attorney General Foti and the State, while purporting to be representing the interests of all members of the class.  This is a SCANDAL, Boys and Girls.  I'm waiting for IMMEDIATE resignations fro the Plaintiffs' Liaison Committee.

Nothing happened in response to that E-mail.

The resignations demanded in Exhibit No. 1 was followed-up by a Louisiana Public Records Act request to the Louisiana Department of Justice on September 5, 2007, a copy of which is appended hereto and marked for identification as Exhibit No. 2, seeking to obtain the following:

> Any and all records generated by or received by any employee of the Louisiana Department of Justice in any way pertaining to solicitation of, negotiations for, awarding of, and/or retaining of, legal representation of the State of Louisiana with respect to the following Civil Actions now pending on the docket of the United States District Court for the Eastern District of Louisiana:
>
> 1. Representation of the State of Louisiana in an unknown civil action number seeking prospective injunctive relief with respect to the closure of the Mississippi River Gulf Outlet, which action is not readily available from a review of the U.S. District Court's PACER System, but which is believed to be consolidated with a case in which the lead plaintiff is named "Savoy";
>
> 2. Representation of the State of Louisiana in Civil Action No. 07-5023; and
>
> 3. Representation of the State of Louisiana in Civil Action No. 07-5040.
>
> To include any and all files and records in any way pertaining to the negotiation of any agreement concerning the attorney's fees to be paid by or on behalf of the State to each of the private attorneys representing the State's interests in the aforementioned litigation, whether by way of retainer agreement, by hourly rate, or by contingent fee contract, to include any and all files and records, whether in hard copy form, recorded form, on card, disc, microfilm or tape, or generated, received or maintained electronically, the said files, records and writings to include, without limitation, any and all any and all

-7-

correspondence, letters, memoranda, intra-office memoranda, memoranda to or from a specific recipient or sender, or recipients or senders, or to a file, and including administrative files, evaluation files, investigative files, litigation files, or any other types of files maintained by the Louisiana Department of Justice, including facsimiles and notes, whether handwritten or typed, E-mails, whether printed or in electronic form, electronic digitized copies, records stored on the hard drive of any State-owned or personal computer, or information contained in electronic data processing equipment, and including those in any way pertaining to the solicitation of legal representation, negotiations for legal representation, remuneration for legal representation, and/or awarding of or retaining of legal representation on behalf of the State, minutes of meetings, agreements, retainer agreements, contracts, hourly rate agreements or contracts, contingency fee contracts, and all other writings of any nature or kind in any way pertaining to the aforementioned litigation and subjects since August 29, 2005, and continuing through the present time, and including all files, records, and writings sent to or received by any of the following and any employee of the Louisiana Department of Justice, as well as telephone records, whether land-line, satellite, or cellular, evidencing communication between any employee of the Louisiana Department of Justice and any of the following since August 29, 2005:

> Bob F. Wright
> James P. Roy
> Any Member or employee of the Law Firm of
> Domegeaux, Wright, Roy & Edwards
>
> Calvin Clifford Fayard, Jr.
> Any Member or employee of the Law Firm of Fayard & Honeycutt
>
> Daniel E. Becnel, Jr.
> Any Member or employee of the Law Firm of Daniel E. Becnel, Jr.
>
> Drew A. Ranier
> Any Member or employee of the Law Firm of Ranier, Gayle & Elliot
>
> Frank Charles Dudenhefer, Jr.
> Any Member or employee of the Law Firm of Frank Charles Dudenhefer, Jr.
>
> J.J. (Jerry) McKernan
> Any Member or employee of the Law Firm of McKernan
>
> Jonathan Beauregard Andry
> Any Member or employee of the Andry Law Firm
>
> Paul Gerard Aucoin

>Any Member or employee of the Law Firm of Paul G. Aucoin
>
>Any Members of the Plaintiffs' Liaison Committee in 05-4182 and consolidated cases, including, without limitation:
>
>>Joseph M. Bruno
>>Any Member or employee of the Law Firm of Bruno & Bruno,
>>
>>Gerald E. Meunier
>>Any Member or employee of the Law Firm of Gainsburgh, Benjamin, David, Meunier & Warshauer
>>
>>Hugh P. Lambert
>>Any Member or employee of the Law Firm of Lambert & Nelson
>>
>>Darleen M. Jacobs
>>Any Member or employee of the Law Firm of Jacobs & Sarrat
>
>In any way pertaining to solicitation of, negotiations for, awarding of and/or retaining of legal representation of the State of Louisiana in the aforementioned litigation since August 29, 2005, and continuing through the present time.

No records have been forthcoming from the LDOJ in response to Exhibit No. 2.

On September 10, 2007, a similar Louisiana Public Records Act request was directed to the private lawyers and law firms who appeared as counsel of record for the State in Civil Action Nos. 07-5023 and 07-5040, including Messrs. Becnel and Fayard, who must be acting in the capacity of "Special Assistant Attorneys General" in order to represent the interests of the State in litigation. That Louisiana Public Records Act request is appended hereto and marked for identification as Exhibit No. 3.

No Louisiana Public Records have been produced in response to Exhibit No. 3.

Thereafter, on Monday afternoon, September 17, 2007, during a "routine" weekly meeting of certain members of the "Levee Litigation Group", undersigned counsel for

movers called for the "immediate resignation" of Messrs. Becnel and Fayard from the Plaintiffs' Litigation Committee due to the patently obvious, and irreconcilable, conflict of interests position, and for disclosure of all financial arrangements. These demands were confirmed via E-mail to plaintiffs' counsel, including Messrs. Becnel and Fayard, copy of which is appended hereto and marked for identification as Exhibit No. 4, at 1125 hours on September 18, 2007, as follows:

> Ladies and Germs:
>
> This is to confirm the demands made on behalf of my clients at the Levee Litigation Group meeting yesterday afternoon, namely:
>
> 1) That Messrs. Becnel and Fayard immediately resign their positions on the Plaintiffs' Litigation Committee due to the perfectly obvious, and irreconcilable, conflict of interests position between the State of Louisiana, its agencies, department heads, etc. and the other litigants in "Victims of KATRINA" litigation.
> 2) That Messrs. Becnel and Fayard immediately disclose whatever financial arrangements they have entered into with the State of Louisiana and Attorney General Foti on the one hand, with each other, with all counsel of record in Civil Action Nos. 07-5023 and 07-5040 on the docket of the United States District Court for the Eastern District of Louisiana, and with members of the Plaintiffs' Liaison Committee in Civil Action No. 05-4182 (and consolidated cases), or members of any Plaintiffs' Subcommittee(s).
>
> Lastly, I confirm my strong objection to any proposed "settlement" with St. Paul Fire and Marine Insurance Company, as the liability insurer of any defendant Levee District, and my advice to everyone, that no one, other than AROD, has authority to speak on behalf of his clients on any issue regarding compromise and settlement.

Nothing whatsoever transpired in response to the demands contained in Exhibit No. 4. Accordingly, and since a new State Government Administration will be sworn in on Monday, January 14, 2008, the Motion for Disqualification and Other Relief being the subject of this memorandum is timely and proper under the circumstances, so that formal objection to any and all Committee Members due to the conflict of interests position(s) will have been perfected prior to the change in State Government Administration.

## **THE LEGAL STANDARDS**

The general rules pertaining to disqualification of lawyers engaged in the practice of law in Federal District Courts within the Fifth Circuit were recently summarized by a three-Judge Panel, consisting of Judges Reynaldo Garza, Higgenbotham and Smith, in Horaist v. Doctor's Hospital of Opelousas, 255 F.3d 261 (5th Cir. 2001), as follows:

> "[D]isqualification cases are governed by state and national ethical standards adopted by the Court." *Id*. at 1312 (quoting *In re Am. Airlines, Inc.*, 972 F.2d 7605, 605 (5th Cir. 1992). Ethical canons relevant to the district court's order include (1) the local rules for the Western District of Louisiana; (2) the American Bar Association's ("ABA's") Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct. *See id*. The Rules of the Western District of Louisiana specifically adopt the Rules of Professional Conduct of the Supreme Court of Louisiana. *See LA. UNIFORM R. U.S. DIST. CT. LR*83.2.4W. These rules are identical to the ABA's Model Rules of Professional Conduct in all relevant aspects. *See LA. REV. STAT*. tit. 37, ch. 4, art. XVI.
>
> We interpret these rules as we would any other source of law. *In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992). In considering a disqualification motion, we view the rules in light of the litigant's rights and the public interest, considering "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Id.* at 544. 255 F.3d at p. 266.

The United States Court of Appeals for the Second Circuit has held that where a lawyer has a continuing relationship with one client and then accepts employment from another client with different interests, the "adverse representation is prima facie improper." Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384 (2d Cir. 1976), as quoted in Sapienza v. New York News, Inc., 481 F.Supp. 676 (SDNY 1979). See also Jedwabny v.

-11-

Philadelphia Transportation Co., 135 A2d 252, 254 (1957) ("No one could conscionably contend that the same attorney may represent both the plaintiff and defendant in an adversary action . . . Obviously, the attorney cannot serve the opposed interests of his two clients fully and faithfully.  The ancient rule against one's attempting to serve two masters interposes."), as quoted in Sapienza v. New York News, Inc., supra.

In 21 Louisiana Civil Law Treatise §8.2, pp. 145-146, entitled:  "Louisiana Lawyering", by Maraist, Smith, Daley and Galligan, the authors treat the subject of "Current clients and concurrent conflicts of interests" by saying as follows:

> Rule 1.7 of the Rules of Professional Conduct is the basic conflict of interest rule regarding current clients.  It provides, in part, that "[e]xcept as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."  The exceptions are discussed below, but the first order of business is to identify a concurrent conflict of interest.  The rule offers the following explanation:
>
>> A concurrent conflict of interest exists if:
>>
>> (1) the representation of one client will be directly adverse to another client;  or
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> Thus, there are two ways for a concurrent conflict to arise – either because of direct adversity to a client, or because of a risk of a material limitation on the representation.  In the first case the conflict arises when the direct adversity to a client is certain to occur.  Note the reference to "will be" in subpart (1).  In the second case, though, the conflict is based on a risk, rather than a certainty.  Note the reference to "a significant risk" in subpart (2).

The Reporter's Note to Restatement of the Law (Third), "The Law Governing Lawyers", Volume 2 §128, p. 344, reflects as follows:

> "The comment [to ABA Model Rules of Professional Conduct Rule 1.7(a) and comment §[7] (1983) states that Rule 1.7(a) prohibits representation of opposing parties in litigation. Examples of a lawyer trying to represent both sides in contested litigation are rarely found in decisions where they are found, however, the courts do not allow the dual representation, even if the clients consent."

Movers respectfully submit that the representation of the State of Louisiana in this litigation by Messrs. Becnel and Fayard is directly adverse to their representation of other parties herein, and constitutes a concurrent conflict of interests warranting their disqualification, because:

> *g(iii). Conflicts between adversaries in litigation.* When clients are aligned directly against each other in the same litigation, the institutional interest in vigorous development of each client's position renders the conflict nonconsentable (see §128, Comment c, & §129). The rule applies even if the parties themselves believe that the common interests are more significant in the matter than the interests dividing them. While the parties might given informed consent to joint representation for purposes of negotiating their differences (see §130, Comment d), the joint representation may not continue if the parties become opposed to each other in litigation. Restatement of the Law (Third), "The Law of Lawyering", Volume 2 §122, p. 273.

Authors Maraist, Smith, Daley and Galligan also address non-consentable conflicts of interest, such as the conflict which exists in this case, as follows:

### A. No Assertion of Claim by One Client Against Another in the Same Litigation

> The third requirement for a consensual resolution of a conflict of interest is that the representation not involve "the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." This rule does not prohibit multiple client representation in litigation, as such, although that might give rise to a conflict of interest under the provisions of Rule 1.7(a), discussed previously. However, it does prohibit a lawyer from representing more than one client in the same litigation or proceeding if that involves assertion of claims by one against another. There, the

> representation cannot proceed even if the lawyer obtains client consent.[1]
> 21 Louisiana Civil Law Treatise §8.4, pp. 152-154.

Even if Messrs. Becnel and Fayard were not disqualified by virtue of direct adversity between the interests of other clients and the State of Louisiana, they would still be disqualified because their representation of the State would materially limit the discharge of their responsibilities to other clients, and to movers herein.  More particularly:

> Even if the lawyer's representation of a client is not directly adverse to another client, a concurrent conflict nonetheless will exist if there is a significant risk that the lawyer's representation of a client will be materially limited by the responsibility that the lawyer has to another client, or to a third person, or by some personal interest of the lawyer.  In this type of conflict of interest there is some other responsibility or interest of the lawyer that may materially interfere with the lawyer's judgment or performance on behalf of a client.  Something that might cause the lawyer to "pull his (or hers) punches" in the representation.[2]  If that risk is "significant," a conflict of interest arises.  21 Louisiana Civil Law Treatise §8.2, p. 148.

Also:

> ". . . the prohibition against conflicts of interest seeks to enhance the effectiveness of legal representation.  To the extent that a conflict of interest undermines the lawyers professional judgment or inhibits a lawyer from working with appropriate vigor in the client's behalf, the client's expectation of effective representation (see §16) could be compromised."  Restatement of the Law (Third), "The Law Governing Lawyers", Volume 2 §121, p. 246.

\* \* \*

---

[1] The Restatement says that, in this situation, "the institutional interest in vigorous development of each client's position renders the conflict nonconsentable."  See *id*.

[2] If the boxing metaphor is not helpful, this comment from the ABA version of the rule might be:

> The mere possibility of subsequent harm does not itself require disclosure and consent.  The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.  Model Rule 1.7 cmt.

Footnote in original.

> In general, if a reasonable and disinterested lawyer would conclude that one or more of the affected clients could not consent to the conflicted representation because the representation would likely fall short in either respect, the conflict is nonconsentable. Restatement of the Law (Third), "The Law Governing Lawyers", Volume 2 §122, p. 275.

See also Ciolino, <u>Louisiana Professional Responsibility Law and Practice</u> (2007), Rule 1.7, pp. 74-82.

Movers respectfully submit that either Messrs. Becnel and Fayard, and probably many, many others, have a nonconsentable concurrent conflict of interests as a result of direct adversity between clients and movers herein and the State of Louisiana, or they have an insoluble concurrent conflict of interests because their representation of the State poses a significant risk that their obligations to clients and movers herein will be materially limited. Accordingly, movers submit they should be disqualified from serving on Committees in this litigation.

## **CONCLUSION**

"Adverse interests in litigation require adverse legal counsel." <u>Van Ooteghem v. Gray</u>, 628 F.2d 488 (5th Cir. 1980). The "world" is watching the United States District Court for the Eastern District of Louisiana, and all of its "Officers of the Court". Messrs. Becnel and Fayard, and all others similarly situated, or "tainted", should do the right, ethical thing, and resign their Memberships on Committees in this litigation. If they won't do the right, ethical thing, then This Honorable Court should require it of them by disqualification.

    Respectfully submitted,

    **LAW OFFICES OF**
    **ASHTON R. O'DWYER, JR.**
    **Counsel for Plaintiffs**

-16-

>By:   **S/Ashton R. O'Dwyer, Jr.**
>**Ashton R. O'Dwyer, Jr.**
>**Bar No. 10166**
>**821 Baronne Street**
>**New Orleans, LA 70113**
>**Tel. 504-679-6166**
>**Fax. 504-581-4336**

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via Electronic filing, this 11th day of January 2008.

>S/Ashton R. O'Dwyer, Jr.