# EXHIBIT 79

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § | CIVIL ACTION NO. 05-4182 "K" (2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § § § | |

DECLARATION OF ALFRED C. NAOMI

I, Alfred C. Naomi, declare as follows:

1. I am the branch chief in the Protection and Restoration Office for the New Orleans District, U.S. Army Corps of Engineers.

2. From 1998 until 2005, I was a project manager in the Planning, Programs and Project Management Division.

3. Among my responsibilities as a project manager was the Lake Pontchartrain and Vicinity Hurricane Protection Project ("LPV").

4. I am familiar with the authorization, appropriation, design, construction and maintenance of the LPV levees, including those along the Mississippi River Gulf Outlet ("MRGO") in my capacity as Senior Project Manager for the LPV from 1998 to 2005.

1

5. Congress authorized hurricane protection for Greater New Orleans under the Lake Pontchartrain and Vicinity Hurricane Protection Plan on 27 October 1965, Public Law 89-298 substantially in accordance with the report of the Chief of Engineers, dated 4 March 1964, printed in House Document No. 231, 89th Congress, which states as follows: "For the Chalmette area, the reporting officers find that the most suitable plan would consist of about 17.3 miles of new and enlarged levees extending generally along the southerly banks of the Gulf Intracoastal Waterway and the Mississippi River-Gulf Outlet channel to Bayou Dupre and thence westerly to the Mississippi River levee at Violet."

6. Design Memorandum 3, General Design, also known as the "Chalmette Area Plan," was approved in January 31, 1967, by Wendell E. Johnson, Chief of Engineering, Civil Works, and authorized by Public Law 89-298.  This memorandum provides the design for hurricane protection levees extending along the south bank of the MRGO from the Inner Harbor Navigation Canal to Bayou Lawler and from Bayou Lawler to the Mississippi River at Violet.

7. Design Memorandum 3, Supplement 1, also known as the "Chalmette Extension," approved on August 12, 1969, by Wendell E. Johnson, Chief of Engineering, Civil Works, and authorized by Public Law 89-298, provided protection to a larger area by extending the levee southward along the MRGO past Bayou Dupre to Verret and from there westerly to the Mississippi River levee at Caernarvon. , The design memorandum provides, in paragraph 36, that "[c]onventional earth levees which constitute the basic

flood protection will be built by stage-construction methods. This construction will take place over a period of several years to compensate for settlement due to consolidation of the subsurface strata as well as that of the levee fill material and to take advantage of increased shear strenghts (sic) in the subsurface due to the aforementioned consolidation thereof. The project levees will be constructed of hydraulic material obtained from the Mississippi River and the MR-GO and from local borrow obtained form the flotation cut and the existing back levee . . . ."

8. Under the LPV, Congress also authorized hurricane protection for New Orleans East by the improvement of the Citrus and New Orleans East back levees, substantially in accordance with the report of the Chief of Engineers printed in House Document No. 231, 89th Congress, which states as follows: "For protection from hurricane flood levels, the reporting officers find that the most suitable plan would consist of . . . enlargement of the existing levee extending from U. S. Highway 90 to the Gulf intracoastal waterway, thence westward along the waterway to the Inner Harbor Canal, together with riprap slopes along the canal . . . ."

9. The Citrus and New Orleans East back levees that were overtopped and breached on August 29, 2005, along the Gulf Intracoastal Waterway during Hurricane Katrina were designed, constructed, and maintained under the authority and by appropriations made pursuant to the LPV.

10. LPV Design Memorandum No. 2 - General Design (also known as the "Citrus Back Levee", approved on December 29, 1967, by Wendell E. Johnson, Chief of

Engineering, Civil Works, and authorized by Public Law 89-298) together with LPV Design Memorandum No.2 - General Supplement No. 4 (also known as the "New Orleans East Back Levee," approved on August 18, 1971, by Joseph M. Caldwell, Chief of Engineering, Civil Works, and authorized by Public Law 89 298) provide for construction of various flood control structures, including enlarged levees extending for more than approximately 12 miles along north bank of the GIWW.

11. LPV Design Memorandum No.2 - General Supplement No. 4, also known as the "New Orleans East Back Levee," approved on August 18, 1971, by Joseph M. Caldwell, Chief of Engineering, Civil Works, and authorized by Public Law 89-298, provides for construction of various flood control structures, including an enlarged levee extending for more than four miles along the GIWW.

12. The levees and other flood control structures along the MRGO, including the levees along Reach 2 of the MRGO, were designed and constructed under numerous contracts, with completion dates between 1967 and 2003. Joint Exhibit 80, being submitted to the Court in connection with the parties' motions for summary judgment, consists of a representative sample of these contracts and associated documents.

13. All of the funding for all of the contracts involved in the design and construction of the levees existing along the MRGO, including those along Reach 2, came from the LPV, including non-Federal cost shared money.

14. The levees and other flood control structures along the MRGO and the GIWW, including the levees along Reach 2 of the MRGO, were constructed in part of

4

soils hydraulically dredged from the adjacent waterways and built in stages because of poor foundation conditions.

15. The levees and other flood control structures along the MRGO and the GIWW, including the levees along Reach 2 of the MRGO, were designed and constructed to control storm surge associated with a SPH Hurricane moving across Lake Borgne and adjacent wetlands and waterways.

16. Those levees and other flood control structures that were overtopped and breached along the MRGO and the GIWW on August 29, 2005, were designed, constructed and maintained under the authority and by appropriations made pursuant to the LPV.

I declare under penalty of perjury that the foregoing is true and correct. Executed on January 11, 2008.

_____
ALFRED C. NAOMI