UNITED STATED DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § § § § | CIVIL ACTION NO. 05-4182 "K"(2)  JUDGE DUVAL  MAG. WILKINSON |
| PERTAINS TO:  INSURANCE            (Burks, No. 06-4173) | | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT, CITIMORTGAGE, INC.**

Defendant, CitiMortgage, Inc. ("CitiMortgage"), respectfully submits this supplemental memorandum in further support of its Motion for Summary Judgment filed November 13, 2007, [Doc. No. 8986], and in reply to the Opposition memorandum filed by the plaintiff, Erin Burks, on January 8, 2008, [Doc. No. 10242].

**I.    The Undisputed Evidence Establishes That CitiMortgage Had NO Duty to the Plaintiff to Procure, Maintain, and/or Escrow for Flood Insurance on Her Mortgaged Property**

As noted in CitiMortgage's original brief, plaintiff claims in this lawsuit that CitiMortgage breached a duty owed plaintiff as her mortgagee by failing to ensure that the plaintiff's mortgaged property was insured against flood damage by procuring, escrowing for, and paying the premiums of required flood insurance.  Pursuant to the terms of the parties' 1996

mortgage agreement, however, it is plaintiff that is solely responsible for ensuring that the mortgaged property is adequately insured:

> Property Insurance. ***Borrower*** shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," *and any other hazards including, but not limited to, earthquakes and floods, for which **Lender requires** insurance*. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that **Lender requires**.[1]

Additionally, the plaintiff further agreed to escrow the premiums for the insurance she was required to maintain on the Property:

> Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for … premiums for any and all insurance **required by the Lender….**[2]

Consistent with the foregoing language, whether insurance for "other hazards" such as earthquakes and floods is required -- and, hence, whether the premiums for that coverage are to be escrowed -- is discretionary with the mortgagee. In the case of plaintiff's loan, because the Property was determined not to lie within a "Special Flood Hazard Area" for purposes of the Flood Disaster Protection Act of 1973, flood insurance was not required and, therefore, no escrow account item was established for the maintenance of flood coverage in connection with the loan.[3] Indeed, at no time was plaintiff ever required to maintain or escrow for flood insurance, as she was for mandatory hazard and mortgage insurance and property taxes.[4]

---

[1] *See* Mortgage, Exhibit "A-1" to CitiMortgage's Memorandum in Support of Motion for Summary Judgment [Doc. No. 8986] at § 5, pp. 6-7.

[2] *Id.*, at § 3, p. 5.

[3] *See* Affidavit of Jon Hill, Exhibit "A" to Memorandum in Support of Motion for Summary Judgment [Doc. No. 8986] at ¶¶ 3-4; *id.* at Exhibit "A-3" (Initial Escrow Account Disclosure Statement). An escrow account was established to facilitate the payment of hazard and mortgage insurance premiums and real estate taxes.

[4] *See id.*; *see also* Mortgagor Introductory Letter, Exhibit "A-4" to Memorandum in Support of Motion for Summary Judgment [Doc. No. 8986]; *Id.* at Exhibit "B" (April 25, 2005 Escrow Disclosure Statement) (attached as Exhibit 19

It is undisputed that plaintiff signed numerous documents at the closing on her loan wherein she expressly recognized that CitiMortgage did *not* require flood insurance as a condition of the loan and would *not* be escrowing funds to pay for such insurance:

- Plaintiff was provided at closing a "Standard Flood Hazard Determination" sheet, which reflected that plaintiff's home was not located in a "Special Flood Hazard Area." *See* Exhibit "2" to plaintiff's Opposition, *in globo* [Doc. No. 10242].

- Plaintiff signed at closing the "Federal Truth-in-Lending Statement," which indicates that flood insurance was not required to obtain credit. *See* Federal Truth-in-Lending Statement, Exhibit "A-7" to Memorandum in Support of Motion for Summary Judgment [Doc. No. 8986].

- Plaintiff signed an "Initial Escrow Disclosure Statement" document that specifically itemized plaintiff's monthly mortgage payments. This document reflects that only mortgage insurance, hazard insurance and real estate taxes would be escrowed for. *See* Initial Escrow Account Disclosure Statement, Exhibit "A-3" to Memorandum in Support of Motion for Summary Judgment [Doc. No. 8986].

- Plaintiff signed a HUD-1 Settlement Statement, which clearly indicates that there would be no reserve deposits for flood insurance. *See* Settlement Statement, Exhibit "3" to Opposition [Doc. No. 10242], ln. 1006.

The aforementioned Mortgage and loan origination documents define the relationship between the plaintiff and CitiMortgage and indeed are the ***only*** source of rights and obligations between the parties. *Hayes v. Wells Fargo Home Mortgage*, 2006 WL 3193743 * 3 (E.D. La.

---

to Plaintiff's Rule 26 Initial Disclosures).

NO TLW1 168653 v3
2791169-000018

Oct. 31, 2006); *Hartmann v. Bank of Louisiana*, 702 So. 2d 648, 662 (La. 1996).[5] Further, under Louisiana law, "signatures to obligations are not mere ornaments." *Tweedel v. Brasseaux*, 433 So. 2d 133, 137 (La. 1983).

Likewise, it is uncontroverted that at no time after the loan's origination did CitiMortgage *ever* require plaintiff to procure or maintain flood insurance or require that she escrow for such insurance,[6] as indicated in the escrow account disclosure statement filed under seal with the plaintiff's Opposition, which clearly reveals that CitiMortgage was escrowing solely for hazard insurance, mortgage insurance,[7] and real estate taxes.[8]

Seeking to avoid the plain terms of her mortgage agreement, plaintiff offers a number of excuses for her admittedly mistaken belief that CitiMortgage had somehow assumed responsibility for keeping the mortgaged property insured against flood damage through "escrow."

Thus, for example, plaintiff points to line 904 of the HUD-1 Settlement Statement executed at the closing on the mortgage loan, which indicates a one-time payment to be made at

---

[5] *See Obioha v. Proctor Financial Ins. Co.*, No. 06-5364, 2007 WL 2903227 (Oct. 2, 2007) ("the only duty a financial institution owes a borrower is the duty to comply with the contract between the institution and the borrower"); *Guimmo v. Albarado*, 739 So.2d 973, 975 (La. App. 5 Cir. 1999) ("dealings between lending institutions and borrowers are generally considered to be arm's length transactions which do not impose any independent duty of care on the part the lender").

[6] *See* Affidavit of John Hill, Exhibit "A" to Memorandum in Support of Motion for Summary Judgment; *id.*, at "A-3" (Initial Escrow Disclosure Statement).

[7] In a seeming desperate effort to overcome the unambiguous terms of the Mortgage and loan agreements, plaintiff further maintains that she operated under the assumption that "hazard" and/or "mortgage" insurance, as presented throughout the parties' escrow agreements, encompassed flood insurance. Opposition, pg. 3. The Mortgage and loan origination documents, however, clearly delineate between all types of coverages in setting forth the Escrow Items as well as in itemizing plaintiff's payment obligations at closing. *See* Federal Truth-in-Lending Statement, Exhibit "A-7" to Memorandum in Support of Motion for Summary Judgment [Doc. No. 8986]; HUD-1 Settlement Statement, Exhibit "1" to Opposition [Doc. No. 10242], *in globo*, lns. 1001-1006; Mortgage, Exhibit "A-1" to Memorandum in Support of Motion for Summary Judgment, pg. 3 (defining "Mortgage Insurance").

[8] *See* Exhibit "6" to Opposition [Doc. No. 10242], *in globo*; *see also* Mortgagor Introductory Letter, Exhibit "A-4" to Memorandum in Support of Motion for Summary Judgment [Doc. No. 8986]; *id.*, at Exhibit "A-6," *in globo* (Escrow Account Disclosure Statements); *id.* at Exhibit "B" (April 25, 2005 CitiMortgage Disclosure Statement).

4

closing for a year's worth of flood insurance on the mortgaged property as a basis for her reasonable belief that CitiMortgage required and would be escrowing for flood insurance. Of course, plaintiff overlooks line 1006 of the same Statement, which unequivocally shows that no funds were being escrowed for flood insurance. *See* HUD-1 Settlement Statement, Exhibit "3" to Opposition [Doc. No. 10242], at ln. 1006.

Similarly, plaintiff points to the pre-closing "good faith estimate" of the fees and costs to be paid at closing, which again references an up-front payment for flood insurance. That document, however, makes clear on its face that it is just what its title implies, an "estimate": "The fees listed are estimates -- actual charges may be more or less …. The HUD-1 settlement statement will show you the actual cost for the items paid at settlement." *Id.* That said, moreover, nothing in the estimate purports to obligate CitiMortgage to maintain and/or escrow for future flood insurance on the mortgaged property.

In the same way, while plaintiff provides an application for flood insurance supposedly provided in advance of the closing on her loan,[9] it nowhere purports to require CitiMortgage to maintain or escrow for such insurance. At most, this document shows only that plaintiff voluntarily procured an initial one-year flood insurance policy, the premium for which -- consistent with the HUD-1 statement and other documents signed by the plaintiff at the closing on her loan -- was paid as a settlement cost without any provision for future escrow requirements related to such voluntary coverage.

In sum the undisputed facts of this case establish that CitiMortgage had no legal duty to procure or maintain flood insurance on the mortgaged property, and plaintiff simply has no legal

---

[9] *See* FEMA Flood Insurance Preferred Risk Policy Application, Exhibit "2" to Opposition, *in globo*.

5

basis to hold CitiMortgage liable for any uninsured flood losses to her residence in connection with the parties' arms-length mortgage loan.

## II.   Plaintiff has Alleged No Valid Cause of Action for Breach of a Forbearance Agreement.

As noted in her opposition, it appears plaintiff is also asserting a claim for breach of an alleged forbearance agreement confected between the parties following Hurricane Katrina. While the precise relief the plaintiff is seeking is unclear from the premises of the Petition, CitiMortgage, in any event, submits that any such claim would be barred under Louisiana law.

Louisiana's Credit Agreement Statute, La. R.S. 6:1122, precludes actions for damages arising from oral "credit agreements":

> A debtor shall not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor.[10]

The statute defines a "credit agreement" as "an agreement to lend or *forbear* repayment of money or goods or to otherwise extend credit, or make any other financial accommodation." La. R.S. 6:1121(1) (emphasis added).

Plaintiff has not (and cannot) allege or adduce any proof of a *written* agreement between the parties under which CitiMortgage agreed to forebear repayment on plaintiff's mortgage loan. Accordingly, to the extent plead in the Petition, plaintiff can maintain no cause of action for breach of an alleged forbearance agreement between the parties.[11]

---

[10] La. R.S. 6:1122.

[11] *See, e.g., King v. Parish Nat'l Bank*, 885 So. 2d 540 (La. 2004)  (Since the debtor produced no writing evidencing an agreement to make certain financial accommodations, his claim of bad faith against the bank based on the oral assertions was precluded by the credit agreement statute); *Peoples State Bank v. Highway One Crawfish, Inc.*, 771 So. 2d 101 (La. App. 3 Cir. 2000) (La. R.S. 6:1122 was intended to prevent bank customers from asserting a cause of action for damages against a bank based on oral credit agreements not signed in writing by the bank).

## CONCLUSION

For these reasons, as well as those set forth in defendant's Memorandum in Support of Motion for Summary Judgment, plaintiff's claims against CitiMortgage fail as a matter of law on the undisputed facts before the Court, and these claims should, therefore, be dismissed in their entirety.

>Respectfully submitted,
>
>BAKER, DONELSON, BEARMAN,
>CALDWELL & BERKOWITZ, PC
>
>
>BY:  /s/Tyler Weidlich
>     KENT A. LAMBERT (No. 22458)
>     ANNE DERBES WITTMANN (No. 20584)
>     TYLER L. WEIDLICH (No. 30790)
>     201 St. Charles Avenue, Suite 3600
>     New Orleans, Louisiana  70170
>     Telephone:  (504) 566-5200
>     Facsimile:  (504) 636-4000
>     klambert@bakerdonelson.com
>
>     **ATTORNEYS FOR CITIMORTGAGE, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January 2008 a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

>      /s/Tyler Weidlich