UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NUMBER: 05-4182<br><br>SECTION: "K" (2) |

FILED IN:   05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885, 06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346, 06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931, 06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471, 06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647, 07-0993, 07-1284, 07-1286, 07-1288, 07-1289, 07-1349

**PERTAINS TO:  LEVEE**

---

PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO NATIONAL UNION'S
MOTION TO DISMISS

Plaintiffs, through undersigned counsel, oppose National Union's Motion to Dismiss for reasons set forth below.

BACKGROUND

On August 29, 2005 Hurricane Katrina ("Katrina") hit the Gulf Coast largely sparing Greater New Orleans, which fortunately lay in Katrina's rapidly deteriorating western eye-wall. In Orleans Parish, Katrina's winds barely reached 100 miles per hour.  Nevertheless, through the fault and negligence of the defendants, Katrina's surge rushed from the Gulf of Mexico through the Mississippi River Gulf Outlet.  This surge converged with another storm surge rushing from Lake Borgne through the Gulf Intracoastal Waterway.  The combined surge funneled into the Mississippi River Gulf Outlet, inundating the heart of the City of New Orleans from the east by

overwhelming levees/flood walls and/or spill banks that had been negligently designed, constructed, maintained, undermined, weakened, inspected and/or operated by the defendants.  In addition, through the fault and negligence of defendants, Katrina's surge rushed unhindered through the Rigolets and Chef Menteur Passes into Lake Pontchartrain to inundate the City of New Orleans from the north by breaching levees/flood walls and/or spill banks that had been negligently designed, constructed, maintained, weakened and/or operated by the defendants.

Several action, including class actions, have been brought as a result of this disaster, which was one of the worst, but most predictable and preventable, human tragedies in the history of this country.  On March 15, 2007 the Superseding Master Complaint Class Action Complaint ("Complaint") was filed, as mandated by Case Management Order No. 4, entered on March 1, 2007.  The Complaint superseded and replaced all class action complaints arising from Katrina, which previously had been filed or transferred to this Section of the Court.

On August 10, 2007, plaintiffs filed the First Supplemental and Amending Levee Master Consolidated Class Action Complaint, adding National Union Fire Insurance Company of Pittsburgh, PA ("National Union") as a defendant pursuant to the provisions of the Louisiana Direct Action Statute, LSA-R.S. 22:655.  National Union sold a claims-made "Public Officials and Employees Liability Insurance Policy" (the "Policy") to the East Jefferson Levee District (the "District"), with an effective policy period of January 1, 2006 to January 1, 2007.  Specifically, National Union under the policy is obligated:

> 1. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages resulting from any claim or claims first made against the insured and reported in writing to the company during the policy period for any wrongful act or the insured or any other person for whose actions the insured

>> is legally responsible, but only if such wrongful act occurs during or
>> prior to the policy period and solely in performing or failing to
>> perform duties of the public entity.

(A true and correct copy of the policy is attached hereto as Exhibit "A."). The policy further defines "wrongful act"as:

> Any actual or alleged error or misstatement or misleading statement or act or
> omission or neglect or breach of duty, including misfeasance, malfeasance and
> nonfeasance.

(Exhibit "A" at p. 2, ¶4).

Plaintiffs' Supplemental and Amendatory Complaint alleges, *inter alia*, that the District was negligent insofar as it negligently allowed, and/or negligently failed to challenge and prevent, dredging in the 17th Street Canal, resulting in the failure of the canal, and that it also negligently failed to conduct appropriate oversight, maintenance and inspection of the 17th Street Canal levee/flood wall system, thus allowing the safety flaws and discoverable dangers of the system to remain uncorrected and undisclosed to the public. Consequently, under the plain policy terms, the fault alleged by the plaintiffs in this action constitute "wrongful acts" covered by the policy. They are acts and omissions which unequivocally arise out of the breach of duties owed by the District to plaintiffs.

Despite this broad and comprehensive coverage for "wrongful acts" under its policy, National Union now purports to exclude plaintiffs' claims. It does so on the basis of policy language which *per se* does not expressly exclude claims alleging the negligence or malfeasance of the District in maintaining the Canal, and it does so despite the fact that Louisiana law requires that coverage exclusions be expressly stated in order to have effect. Indeed, the position asserted by this insurer would render the coverage provided by the policy illusory.

At the very least, since plaintiffs have alleged a claim that is a covered peril under the express terms of the policy, they are entitled to conduct discovery and develop evidence as to the history and intention of the exclusion submitted by National Union, and whether the policy, including the endorsements and exclusions, were properly submitted and approved by the Louisiana Commissioner of Insurance as required by La. R.S. 22:620.

### A.   Standard for Granting a Rule 12(b)(6) Motion to Dismiss

Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. *Southern Christian Leadership Conference v. Supreme Court*, 252 F.3d 781, 786 (5th Cir. 2001). In considering a Rule 12(b)(6) motion to dismiss, this Court must take the well-pleaded factual allegations of the complaint as true. *Jaufre v. Taylor*, No. Civ. A. 03-0028, 04 WL 1444945, at *1 (E.D.La 6/25/04) (citing *Baker v. Putnal* 75 F.3d 190, 196 (5th Cir. 1996); *American Waste and Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991). In determining whether to grant a motion to dismiss, therefore, the Court "must not go outside the pleadings." *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003).

Furthermore, "[a]ll questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2002). The issue is not whether plaintiffs will ultimately prevail, but whether plaintiffs are entitled to offer evidence to support their claim. *Scheuer v. Rhodes*, 416 U.S. 232 (1974). Accordingly, the Court may dismiss a complaint "only if it appears certain that the plaintiff[s] cannot prove any set of facts in support of [their] claim that would entitled [them] to relief." *Jaufre*, at *1.

The Fifth Circuit has recognized one limited exception to the rule that matters beyond the

pleadings may not be considered in deciding 12(b) motions. In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000), the Court did approve a district judge's consideration of documents attached to motion to dismiss where those documents were referred to in the plaintiff's complaint and were central to the plaintiff's claim. *Id.* at 498-499. However, the Court's approval of the practice in that case was based upon the fact that the plaintiffs did not object to, or appeal, the district court's consideration of those documents. *Scanlan* at 536 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000). This limited exception does not apply to the case at bar, and thus, this Court must refrain from reviewing documents outside the pleading when deciding whether to grant the defendant's motion.

### B. National Union's Policy Provides Coverage For, Plaintiffs' Claims Arising Out of the District's Allegedly Negligent Conduct in Maintaining the Levees, and the Policy Does Not Exclude Such Claims

The claims alleged by the putative class plaintiffs in this action are expressly covered by the policy sold to the District by National Union. These claims are covered perils under the policy because they arise out of the District's negligent failure to maintain and supervise the maintenance of the 17th Street Canal. Moreover, the policy does not expressly exclude from coverage claims arising out of the District's negligent maintenance and supervision, pursuant to any of the express exclusionary language contained in the policy.

The specific allegations of the complaint which invoke the National Union policy are as follows:

> "89. The EJLD violated its legal responsibilities and duties to the plaintiffs and the putative class in proposed subclasses one, two, four and five in the following non-exclusive particulars:
> (a) by negligently allowing, and/or by negligently failing to challenge and prevent, the aforesaid dredging in

>   the 17th Street Canal; and
>
>   (b)   by negligently failing to conduct appropriate oversight, maintenance and inspection of the 17th Street Canal levee/flood wall system, thus allowing the safety flaws and discoverable dangers of the system to remain uncorrected and undisclosed to the public."

(Complaint at ¶89). Because these claims arise out of alleged errors or acts or omission or negligent or breaches of duty, including misfeasance, malfeasance and nonfeasance, they are "wrongful acts" as defined by the policy.

There also is no express exclusion which vitiates this coverage. The claims in question, despite National Union's argument to the contrary, clearly arise out of acts or failures to act by the insured District. National Union has listed 18 specifically enumerated exclusions in Endorsement #1 to the policy, yet not one of these expressly excludes claims or losses arising out of the District's failure to properly supervise or prevent dredging operations or failing to maintain the levees or canal. National Union drafted the policy which it sold to the District and also drafted Endorsement #1 which contains 18 enumerate exclusions from coverage. Louisiana law mandates that such an insurer expressly and specifically exclude a particular loss or claim from coverage, so that "[a]ny exclusion from coverage in an insurance policy [is] clear and unmistakable." *Roger v. Estate of Moulton*, 513 So.2d 1126, 1130 (La. 1987). National Union failed to do so here.

### C. The Court Should Reject National Union's Argument Which Seeks an Over Broad Interpretation of its Exclusion That Would Render Coverage Illusory

National Union seeks an overly-broad interpretation of "exclusion (d)" which, if so

interpreted, would render coverage under the policy wholly illusory. As noted above, National Union failed to specifically exclude from coverage claims alleging the negligent conduct of the District in maintaining or failing to maintain the 17th Street Canal and other flood walls or levees. The insurer's failure to delineate or expressly exclude claims of negligent supervision or maintenance in the very policy it drafted and sold, defeats any argument that plaintiffs' claims are excluded from coverage. National Union nevertheless attempts to avoid coverage under "exclusion (d)," which excludes claims "arising out of (1) bodily injury to, or sickness, disease, emotional distress, or death of any person, (2) damage to or destruction of any property including the loss or use thereof." But the exclusion relied upon makes no reference to claims for the negligent acts of the District which are at issue. To broadly interpret exclusion (d) to preclude coverage for the claims at issue would render the policy purchased by the District illusory. If the policy purports to cover the "wrongful acts" allegedly committed by the insured District on the one hand, what meaning would this coverage have if all damages resulting from the "wrongful acts" are not covered?

In Louisiana, insurance contracts are to be interpreted in a reasonable manner so as not to "enlarge or...restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Stewart Title Guaranty Co. v. Kiefer*, 984 F.Supp. 988 (E.D.La. 1997). Moreover, exclusions to insurance coverage are to be strictly construed against the insurer especially where a court finds that the exclusion presents multiple interpretations. *See id.* at 992; *see also Manis v. St. Paul Fire and Marine Ins. Co.*, 2001 WL 1397318, *2 (E.D.La.).

The East Jefferson Levee District was charged by the State of Louisiana with maintaining the levees in the District, the Hoey Canal, and the 17th Street Canal. The District purchased the

policy from National Union to cover damages arising from the board's actions in their official capacity. The lawsuit filed against the District brings causes of action based on the District's alleged negligence in performing the duties listed above, namely maintaining the levees in the District. If the property damage exclusion in the National Union insurance policy is interpreted as National Union suggest and effectively excludes coverage all consequences of wrongful acts otherwise covered by the policy, and for acts not specifically enumerated in the referenced exclusion, then the exclusion would render the policy illusory. It would negate the sole purpose for purchasing the policy, i.e., to insure the District against claims arising out of its affirmative duty to maintain the levee system within the District.

By its very nature, in other words, the failure in the levee system attributable to the District's malfeasance or negligence will result in <u>some</u> property damage. To exclude claims against the District (and its insurance company) under a broad interpretation of the property damage exclusion would contravene the logical intent and reasonable expectations of the parties, and lead to absurd consequences. A policy that offers clear coverage for certain errors and negligent acts cannot at the same time he interpreted to <u>preclude</u> coverage for the natural consequences of those same errors and acts.

In a case similar to the instant one, a district court in New York denied a motion for summary judgment on the issue of whether coverage existed under an errors and omissions insurance policy in light of the property damage exclusion. *See National Union Fire Ins. Co. of Pittsburgh, PA v. L. E. Myers Co. Group*, 1995 WL 581692 (S.D.N.Y.). In that case L.E. Myers, a company that rendered architectural and engineering services, was sued after towers constructed per the design by a subsidiary of Myers, collapsed during a storm. *See id.* at *4.

Myers sought coverage under its errors and omissions insurance policies with National Union. *See id.* at *5. National Union disclaimed coverage citing as one reason the same property damage exclusion invoked herein. *See id.* at *6. Myers argued that the property damage exclusions would be illusory if so broadly interpreted as the insurer proposed, because they "purport to relieve National Union of its obligation to provide coverage for...engineering errors, the very purpose of the umbrella policy." *Id.* at *11.

The Court held, properly, that National Union's position was "dubious in light of the entire record." *Id.* at *11. The insurer, in effect, would not be heard to say it had never agreed to cover Myers' design error, pursuant to the property damage exclusion. Based on a lack of evidence as to what the parties intended the insurance contract to cover, National Union's motion for summary judgment was denied. *See id.* at *11.

This Court likewise has found an exclusion in an insurance policy absurd, based on the insurer's attempt to interpret it in a manner obviously inconsistent with what the parties likely intended. *See Stewart Title Guaranty Co. v. Kiefer*, *supra.* There, a title insurer brought an action against its E&O insurer seeking coverage. The insurance company denied coverage on the basis that the claims fell within various exclusions listed in the policy. The policyholder countered that the insurance company's "interpretation of the exclusions...[should] be rejected because it would exclude coverage for any conceivable 'negligent act, error or omission' that an escrow agent might commit 'in the rendering or failure to render professional service." 984 F.Supp. at 994.

The Court agreed with the policyholder's argument, denying summary judgment in the insurer's favor. It reasoned that the insurer's "sweeping interpretation [of the exclusion] could

9

exclude virtually any claim made [by] an insured." *Id.* at 994. The Court recognized that the insurance company's interpretation could not possibly have been what the parties intended, since it would make the insurance policy meaningless. *See id.* at 995.

If the Court accepts National Union's interpretation of the property damage exclusion in this case, it likewise would render the policy in question meaningless. By excluding claims that otherwise are covered because they pertain to "wrongful acts" of the District on the asserted basis that the recovery of property damages is precluded, would result in there being no coverage for the consequences of the covered claims. National Union's broad interpretation would transform the policy into an illusory document, one for which the District obviously would not have paid premiums, had it known such coverage simply did not exist. Therefore, the Court must find that National Union's interpretation of the policy is flawed fundamentally flawed and legally impermissible.

In the same way, National Union's eighteen (18) exclusions effectively eviscerate any form of coverage that the District reasonably expected it had purchased and paid for in premium payments. By way of example, in addition to "exclusion (d) discussed above, the exclusions listed in the policy exclude claims arising out of: fraud, dishonesty or criminal acts or omissions; claims seeking relief other than in the form of damages or attorney's fees costs or expenses (exclusion (b)); false arrest, detention or imprisonment, libel, slander or defamation, assault, battery, malicious prosecution or abuse of process, wrongful entry or eviction or invasion of any right of privacy; inverse condemnation, temporary or permanent taking, adverse possession or dedication by adverse use; strikes, riots or civil commotions; the failure to effect or maintain any insurance or bond; the gaining in fact of any profit or advantage to which the insured is not legally entitled, the

actual or threatened discharge of pollutants; the planning construction, maintenance, operation or use of any nuclear reactor or nuclear waste storage or disposal site; breach of fiduciary duty, responsibility or obligation in connection with any employee benefit or pension plan, brought on behalf of one insured against another insured; a breach of contract; the operation of any schools, airports, transit authorities, hospitals, clinics, nursing homes or other health care facilities; and for fines and penalties or punitive damages; prior pending litigation. (Exhibit "A" at Endorsement #1(a)-(r)). The list is exhaustive and encompasses such a broad category of claims to be purportedly excluded, it is impossible to determine what, if anything, the District is in fact covered for under the policy.

Under well-established Louisiana law, "[o]nce coverage has been extended, as it is quite clearly the purpose of the policy to do and has been done here, it should be withdrawn only when exclusion is established with certainty" and that "comprehensive exclusion is violative of the purpose and intent of policy coverage." *Pullen v. Employers' Liability Assurance Corp.*, 89 So.2d 373 (La. 1956). Thus such sweeping and comprehensive exclusions are disfavored and require the exact specificity which National Union's policy lacks as it relates to plaintiffs' claims.

### D. At the Very Least, the Motion by National Union Should Be Denied, Pending Needed Discovery by Plaintiffs

Plaintiffs are entitled to conduct discovery on issues including the drafting history of these broad exclusions and the policy, as well as on whether such a patently illusory policy was approved by the Louisiana Commissioner of Insurance prior to its sale to the District. Pursuant to La. R.S. 22:620, "[n]o basic insurance policy form, other than surety bond forms, or application form where written application is required and is to be attached to the policy, or be a part of the

11

contract or printed life or health and accident rider or endorsement form shall be issue, delivered, or used, unless it has been filed with and approved by the Commissioner of Insurance." *Doerr v. Mobil Oil Corp.*, 774 So.2d 119 (La. 2000). Given that sweeping exclusions are disfavored and all policies require approval of the Louisiana Commissioner of Insurance prior to their sale in Louisiana, plaintiffs are entitled to conduct discovery as to whether National Union in fact received approval prior to selling this policy or others like it in Louisiana.

For the foregoing reasons, the motion should be denied.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

/s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
The Law Offices of Joseph M. Bruno, APLC
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

 /s/Gerald E. Meunier
GERALD E. MEUNIER (La. Bar #9471)
LEVEE PSLC LIAISON COUNSEL
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Phone:504/522-2304
Facsimile:504/528-9973
E-mail:gmeunier@gainsben.com

For

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

Gerald E. Meunier
Daniel E. Becnel, Jr.
Joseph M. Bruno
D. Blayne Honeycutt
Hugh P. Lambert
Darlene Jacobs
Walter Dumas