UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION NO. |
| | * | 05-4182 "K"(2) |
| Plaintiffs | * | |
| | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| PERTAINS TO: ALL LEVEE | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### OPPOSITION OF EAST JEFFERSON LEVEE DISTRICT TO NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PENNSYLVANIA'S MOTION TO DISMISS

MAY IT PLEASE THE COURT:

East Jefferson Levee District ("EJLD") is the named insured in the policy that forms the basis of National Union Fire Insurance Company of Pittsburgh Pennsylvania's ("National Union") Motion to Dismiss. EJLD paid a premium of FORTY-THREE THOUSAND FORTY-EIGHT AND NO/100 ($43,048.00) DOLLARS for a Public Officials and Employee's Liability Insurance Policy that, on its face, provides



DEFENDANT'S EXHIBIT 7

FIVE MILLION AND NO/100 ($5,000,000.00) DOLLARS worth of coverage for "Wrongful Acts." The policy defines a "Wrongful Act" as:

> "Any actual or alleged error or misstatement or misleading statement or act or omission or neglect of breach of duty, including misfeasance, malfeasance and nonfeasance."

There are currently one hundred-fifty known lawsuits in which National Union is joined as a direct defendant based upon the allegations that it insures EJLD.[1] The allegations that pertain to EJLD in each of the lawsuits parallel one another. They are best summarized as follows:

1) EJLD "had the legal responsibility and duty to the Plaintiffs and the Putative Class to cause, allow, and/or conduct the aforesaid dredging activity in a manner that would not compromise the safety of the canal's levee/flood wall system."[2]

2) EJLD "violated its legal responsibilities and duties to the Plaintiffs and the Putative Class . . . in the following non-exclusive particulars:

   a. By negligently allowing, and/or by negligently failing to challenge and prevent, the aforesaid dredging in the 17th Street Canal; and

   b. By negligently failing to conduct appropriate oversight, maintenance and inspection of the 17th Street Canal levee/flood wall system, thus allowing the safety flaws and discoverable

---

[1] See attached Exhibit "A" which lists the captions and docket numbers of each known lawsuit in which National Union is sued as EJLD's insurer.

[2] Plaintiffs' Corrected Restated Levee Master Consolidated Class Action Complaint, Paragraph 85.

dangers of the system to remain uncorrected and undisclosed to the public."[3]

3) EJLD "had the care, custody and control, and the *garde* of the 17th Street Canal Levee and flood wall system at all times pertinent hereto, and accordingly are strictly liable in accordance with Articles 2317 & 2317.1 of the Louisiana Civil Code for the vices and/or defects in the levee and flood wall system which caused the damages of which Plaintiffs complain."[4]

Clearly, these allegations, if proven true, are "errors," "acts," "omissions," "neglect or breach of duty," or "misfeasance, malfeasance and nonfeasance." Thus, the Plaintiffs undeniably allege conduct by EJLD that falls well within the scope of the Wrongful Acts the policy intends to cover. National Union's Motion does not appear to contend otherwise.

Plaintiffs' suits are on behalf of individuals, business entities and non-profit organizations. Plaintiffs have proposed certification of a class, the definition of which is:

> "All individuals and entities, both private and public and both natural and juridical, *in* "**GREATER NEW ORLEANS METRO**" (the geographic area bounded to the north by Lake Pontchartrain, to the south by the Mississippi River, to the east by the IHNC, and to the west by the 17th Street Canal running from Lake Pontchartrain south to Metairie Road and then west on Metairie Road to Causeway Boulevard, and then south on

---

[3] Plaintiffs' Corrected Restated Levee Master Consolidated Class Action Complaint, Paragraph 89.
[4] Plaintiffs' Corrected Restated Levee Master Consolidated Class Action Complaint, Paragraph 138.

Causeway Boulevard to the Mississippi River) *who/which sustained damages as a result of the inundation in this area* which occurred during and immediately following the landfall of Hurricane Katrina on or about August 29, 2005, and who/which, as to the defendant Corps only, have, or by a date to be determined by the Court, will have fulfilled whatever administrative claim filing requirements this Court deems applicable in this matter."[5] (*italics added*).

The Putative Class claims damages that include:

1) Loss of real property;
2) Loss of personal property;
3) Diminished property value;
4) Loss of income;
5) Relocation costs;
6) Lost business opportunities;
7) Business interruption;
8) Evacuation expenses;
9) Loss of opportunity to avoid injury and damages through preventative measures;
10) Wrongful death;
11) Survival damages;
12) Fear, fright, emotional distress, grief, mental anguish, pain and suffering;
13) Inconvenience;
14) Loss of capacity to enjoy life;
15) Loss of consortium;
16) Societal harm, including "the breakdown of New Orleans' social structure";
17) Loss of cultural heritage; and

---

[5] Plaintiffs' Corrected Restated Levee Master Consolidated Class Action Complaint, Paragraph 17.

    18) Damages due to "the dramatically altered physical, economic, political, social and psychological character of the New Orleans area.[6]

Other Plaintiffs claim damages because "the inundation severely restricted access to New Orleans. The depopulation that resulted from the inundation choked off all commerce in New Orleans" and "as a result of this depopulation, Plaintiff was unable to collect rents and otherwise return the property to commerce." *Jackson Brewery Millhouse, L.L.C. v. United States of America, et al.*, Civ. A. No. 07-5320 (E.D. La., *filed* Sept. 4, 2007); *Jackson Brewery Millhouse, L.L.C. v. United States of America, et al.*, Civ. A. No. 07-4958 (E.D. La., *filed* Aug. 29, 2007); *Jackson Brewery Marketplace, L.T.D. v. United States of America, et al.*, Civ. A. No. 07-5331 (E.D. La., *filed* Sept. 4, 2007); *Jackson Brewery Marketplace, L.T.D. v. United States of America, et al.*, Civ. A. No. 07-4962 (E.D. La., *filed* Aug. 29, 2007). *See, also, Omega Hospital, L.L.C. v. United States of America, et al.*, Civ. A. No. 07-5315 (E.D. La., *filed* Sept. 4, 2007); *Omega Hospital, L.L.C. v. United States of America, et al.*, Civ. A. No. 07-4971 (E.D. La., *filed* Aug. 29, 2007); *Physician Management Services of Louisiana, L.L.C. v. United States of America, et al.*, Civ. A. No. 07-5324 (E.D. La., *filed* Sept. 4, 2007); *Physician Management Services of Louisiana, L.L.C. v. United States of America, et al.*, Civ. A. No. 07-4998 (E.D. La., *filed* Aug. 29, 2007) (claiming the breach

---

[6] Plaintiffs' Corrected Restated Levee Master Consolidated Class Action Complaint, Paragraph 191 a-c.

caused "hundreds of thousands of people to evacuate, prohibiting entry into New Orleans and depopulating the city for an extensive period of time. As a result, [plaintiffs] suffered business interruption losses, including lost revenues, and the inability to access and restore its business due to periods of evacuation, prohibited and restricted entry, and depopulation.") Also, in *Riverfront Lodging v. United States of America, et al.*, Civ. A. No. 07-4961 (E.D. La., *filed* Aug. 29, 2007) and *Riverfront Lodging v. United States of America, et al.*, Civ. A. No. 07-5337 (E.D. La., *filed* Sept. 4, 2007) (Plaintiffs claim that the depopulation, along with restricted access, caused them to lose income due to an inability to reserve rooms. *See also, Hotel Investors, LLC v. United States of America, et al.*, Civ. A. No. 07-5335 (E.D.La., *filed* Sep. 4, 2007); *Hotel Investors, LLC v. United States of America, et al.*, Civ. A. No. 07-4986 (E.D.La., *filed* Aug. 29, 2007) ;*WNO Ownership, LLC, et al v. Unites States of America*, Civ. A. No. 07-5377, 4951 (filed September 4. 2007).

Plaintiffs' claims include those made on behalf of persons/entities whose properties flooded, and those whose properties did not. Similarly, some Plaintiffs allege personal injuries, and some do not. All, however, claim damage in one form or another as a result of being *in* the Greater New Orleans Metro Area when Hurricane Katrina struck.

The gravamen of National Union's motion is that **all** of the Plaintiffs' claims are for damages that **arise from** either bodily injury or property damage. National Union relies on an exclusion in its policy that excludes claims:

> . . . Arising Out of (1) bodily injury to, or sickness, disease, emotional distress or death of any person, (2) damage to or destruction of property, including loss of use thereof . . .

Because National Union relies on an exclusion to limit its coverage of Wrongful Acts, it has the burden to prove the exclusion's applicability, clearly and unequivocally. *Yount v Maisano*, 627 So.2d 148 (La. 1993). Particularly where exclusions are concerned, where words used in an exclusion are susceptible of more than one meaning, the Courts must use the meaning that most favors coverage if the meaning used does not lead to absurd consequences. *Cadwallader v. Allstate Insurance Company*, 848 So. 2d, 577, 580 (La. 2003).

## ARGUMENT

**A.**  *Plaintiffs' Alleged Damages Include Claims for Things Other Than Damage to or Destruction of Property*

Exclusion (d) in National Union's policy seeks to exclude damages or claims arising out of "damage to or destruction of any **property, including the loss of use thereof**." (Emphasis added.) Clearly, many Plaintiffs claim damage or destruction of

7

their properties due to flooding, and to that extent, those claims may arise from damage to their "property." Just as clearly, however, many Plaintiffs did not experience water inundation, yet they may claim lost wages, business interruption, lost business opportunities, inconvenience, evacuation expense, stigma damage associated with the perception that New Orleans is a "disaster area," and the like. These claims do not arise from damage to or destruction of **their** property. Since the policy does not define the term "property," the parties and the Court are to determine its meaning from customary usage of the term and the context in which it appears in the contract. *Norfolk Shipbuilding & Drydock Corp.*, 274 F.3d 249, 254 (5 Cir. 2001).

Any law student knows that "property" includes corporeal and incorporeal property. There can be no mistake but that National Union's exclusion is limited to corporeal property. That much is clear from the qualifying phrase ". . . including the loss of use thereof." The phrase is similar to language used in standard form liability insurance policy definitions of property damage in use since 1973. Generally, "The typical liability policy requires physical injury to, or destruction of, tangible property."[7] The typical insurance industry definition used to define "property damage" is

---

[7] Russ, Segalla, *Couch on Insurance 3d*, §201:9.

(1) the physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.[8]

The similarities between the language used in Exclusion (d) and the standard insurance industry definition of "property damage" are readily apparent, and it can be reasonably inferred that Exclusion (d) refers only to corporeal (tangible) property. Because this inference is reasonable and favors coverage, Louisiana law requires that the exclusion be so construed. *Cadawallader, supra.* Thus, National Union may not cover claims for damages arising from one's flooded home, but the policy does not exclude claims for incorporeal damages if they do not arise from the claimant's loss of tangible property.

B.   *Plaintiffs' Alleged Damages Include Claims for Things Other Than Bodily Injury, Sickness, Disease, Emotional Distress or Death of a Person*

Of the tens of thousands of putative class members, a comparative few claim damages due to bodily injury, sickness, disease or death. Whereas "bodily injury," "sickness," "disease," and "emotional distress" are not defined terms, they are terms

---

[8] Ostrager, Newman, *Handbook on Insurance Coverage Disputes*, 12th Ed., Vol. 1 2004, Sec. 7.03(b)(3).

that are in wide use in the insurance industry.[9] National Union's use of these terms in its exclusion suggests an intent to be bound by the industry standard and the jurisprudence that construes the standard.

Whereas the complaints allege damages due to "emotional distress," they also allege damages from "inconvenience," "loss of capacity to enjoy life," societal harm and cultural loss, amongst other things. Whether these damages constitute "emotional distress" as intended by the policy cannot be assessed without consideration of each individual claim.[10]

### C. Plaintiffs' Alleged Damages Include Claims That do not Arise Out Of Bodily Injury or Property Damage

Although National Union may concede that many plaintiffs did not sustain damage to their tangible property, it nevertheless argues that all claims arise from "widespread property damage from flooding" and are therefore outside the coverage offered by its policy.[11] National Union's argument is novel to say the least. The

---

[9] The standard form comprehensive general liability definition of "Bodily Injury" in use since 1966 is "Bodily Injury" means bodily injury, sicknss or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." *See Ostrager, Newman, Handbook on Insurance Coverage Disputes, 12th Ed., Vol. I, sec. 7.03(a)(1) 2004.*

[10] National Union argues that coverage is properly denied because these claims are "doubtful." *See Memorandum In Support of National Union's Motion to Dismiss, pg. 8, footnote 6.* Perhaps the Court may ultimately agree, but until such time, the complaints allege damages due to societal harm and cultural loss. National Union cannot wish them away.

[11] *Memorandum In Support of National Union's Motion to Dismiss, pgs. 8,9.*

undersigned has been unable to locate any reported decisions that hold an insurer may exclude coverage for a claim because the source of the excluded conduct or damage "arises from" a source other than the claimant or the insured. Certainly, National Union cites no such case.

Because each Plaintiff's damages claim, regardless of whether he/she is a putative class member, is unique, the question of whether and to what extent National Union's policy responds to it is by necessity a case-by-case determination. As demonstrated, perhaps thousands of plaintiffs have claims that do not "arise out of" **their own** property damage or bodily injury. Rather, such Plaintiffs claim damages (such as lost wages, business interruption, social disruption, etc.) due to the massive scale of damage caused to the city as a whole. National Union argues that its policy excludes all claims because the incident that gave rise to them caused bodily injury and property damage on a massive scale, even though such damage was not visited upon all of the Plaintiffs. Common sense, the jurisprudence and a fair reading of National Union's policy do not support that argument.

First, the policy definition "Arising Out Of" must relate to the specific individual claim for which coverage is sought. That is to say, the claimant must claim damages "Arising Out Of" his/her own property loss or bodily injury, not someone

else's.  To hold otherwise, leads to absurd results, and certainly the insurer should be required to state such an intention unequivocally.  In this instance, if National Union's term "Arising Out Of" is meant to bar coverage for those who sustained a covered loss, but whose loss was influenced by the uncovered losses of their neighbors, it should have said so in clear language.  It obviously did not.

Second, National Union relies on *American States Ins. Co. v. Bailey*, 133 F.3d 363 (5th Cir. 1998) for the proposition that the term "arising out of" is to be broadly construed.  National Union's reliance is misplaced.  *American States* involved a determination as to whether certain insurance policies provided coverage for sexual harassment claims brought by a group of seven women.  The policies at issue included a "Sexual Action Exclusion" that purported to exclude coverage for damages "arising from sexual action."  The Fifth Circuit merely found that all of the Plaintiffs' claims "arose from sexual action."  Thus coverage was excluded. Presumably, had the Fifth Circuit found that one plaintiff's damages arose from sexual action, but the other's did not, one claim would have been covered whereas the other would have been excluded.  Certainly, National Union's memorandum fails to cite any such case.

## CONCLUSION

National's Union's motion should be denied because the Plaintiffs' complaints allege damages that do not "arise from" their corporeal property loss or their own personal injuries. At most, Plaintiffs' damages arise from the devastation to the surrounding area. Nothing in National Union's policy expresses an intention to exclude coverage for claims that, although otherwise covered, are influenced by damages sustained by others. If that was National Union's intention, Louisiana law requires that it say so in a clear an unambiguous manner. Its failure to do so requires the Court to find in favor of coverage.

Respectfully submitted,

DUPLASS, ZWAIN, BOURGEOIS, MORTON
PFISTER & WEINSTOCK

*/s/ Gary M. Zwain*

---

GARY M. ZWAIN (#13809)
JOSEPH E. BEARDEN (#26188)
Three Lakeway Center, Suite 2900
3838 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone:   (504) 832-3700
Facsimile:   (504) 837-3119
*Attorneys for East Jefferson Levee District*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21ST day of January, 2008, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ *Gary M. Zwain*
_____
**GARY M. ZWAIN (#13809)**