IN THE CIRCUIT COURT OF LOGAN COUNTY, WEST VIRGINIA

**Patrick M. Hutchinson, et al.,**
        Plaintiffs,

**v.**                                                                          Case No. 06-C-160-O

**CSX Transportation, Inc., et al.,**
        Defendant.

## ORDER GRANTING DEFENDANT CSX TRANSPORTATION, INC.'S MOTION TO DISMISS

On the 27th day of July, 2007, came the Defendant CSX Transportation, Inc. (CSX),

by counsel J. David Bolen, Esq., and also came Plaintiffs, by counsel R. Ray Lovejoy,

Esq., for a hearing on CSX's Motion to Dismiss Complaint pursuant to Rules 12(b)(1)

and/or 12(b)(6) of the *West Virginia Rules of Civil Procedure*.  The Court has reviewed

the motion, the response, and the reply, heard the arguments of counsel, and reviewed

pertinent legal authority.  As a result of these deliberations, as more fully set forth in the

following FINDINGS OF FACT and CONCLUSIONS OF LAW, the Court has concluded

that the Defendant's motion should be granted pursuant to Rule 12(b)(1) and, as such,

the Court will not address the contentions in the Defendant's motion related to Rule

12(b)(6).

## FINDINGS OF FACT

1. The Plaintiffs filed their initial complaint in this action on May 26th, 2006, naming
   CSX Transportation, Inc., as well as several other entities, as Defendants.

2. In the initial complaint, Plaintiffs allege that CSX "designed, constructed, and
   maintained various embankments, culverts, overpasses, bridges and related
   structures in the vicinity of plaintiffs' homes or property.  The negligent design and/or
   construction and/or maintenance of these structures caused the obstruction of the
   natural flow of surface waters and the accumulation and impoundment of surface
   waters that flooded certain plaintiffs' property, causing damages...." Plaintiffs further
   allege that once the accumulation of surface waters "broke free," the water and
   debris rushed downstream and damaged the property of other plaintiffs.

EXHIBIT
C

3. Subsequent to the filing of the initial complaint, several Defendants, including CSX, filed motions to dismiss or motions for more definite statements as to Plaintiffs' allegations. Plaintiffs, in order to cure the deficiencies in the initial complaint set forth by the Defendants in their respective motions, requested leave to file an amended complaint.

4. Plaintiffs filed an Amended Complaint, however, by order entered February 27th, 2007, the Court ordered that this Complaint remained deficient in certain areas and allowed the Plaintiffs leave to file a Second Amended Complaint. The allegations set forth in the Second Amended Complaint are the subject of the present motion.

5. The crux of the allegations against CSX in the Second Amended Complaint are essentially the same as the allegations in the previously filed complaints, however, the actual structure was identified in the Second Amended Complaint as a "CSX bridge at Monaville [that] was obstructed by sediment in an open and obvious state...."

## CONCLUSIONS OF LAW

1. CSX contends in its motion that this Court lacks subject matter jurisdiction over the claims and allegations raised in the Plaintiffs' Second Amended Complaint as to CSX as the United States Congress, through the adoption of the Interstate Commerce Commission Termination Act of 1995 (ICCTA), has expressly preempted claims such as those asserted by the Plaintiffs.

2. The preemption doctrine originates in the Supremacy Clause of the United States Constitution which provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." *U.S. Const.* art. VI, cl. 2.

3. As noted by the West Virginia Supreme Court of Appeals in *Hartley Marine Corp. v. Mierke*, 196 W.Va. 669, 674, 474 S.E.2d 599, 604 (1996), "preemption is disfavored in the absence of convincing evidence warranting its application." The Court also recognized that there is a presumption that "Congress does not intend to preempt areas of traditional state regulation." *Id.* quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 62, 111 S.Ct. 403, 410 (1990). "This presumption, however, can be rebutted by a clear declaration of legislative intent to preempt state law." *Id.* citing *Hillsborough County, Fla. V. Automated Medical Labs, Inc.*, 471 U.S. 707, 715-716, 105 S.Ct. 2371, 2376 (1985).

4. The focus of any preemption question, therefore, is on congressional intent. Congressional intent may be manifested by express language in a federal statute or implicit in the structure and purpose of the statute.

5. CSX relies on the ICCTA, specifically *49 U.S.C. §§10101—10501*, in support of its position that this Court lacks subject matter jurisdiction over the allegations set forth by the Plaintiffs in the current action.

6. *49 U.S.C. §10101*, entitled *Rail Transportation Policy*, provides, in pertinent part:

> In regulating the railroad industry, it is the policy of the United States Government-

> (8)     to operate transportation facilities and equipment without detriment to the public health and safety;

7. *49 U.S.C. §10501*, entitled *General Jurisdiction*, provides, in pertinent part:

> (a)(1) Subject to this chapter, the Board [Safety Transportation Board] has jurisdiction over transportation by rail carrier that is-

> (A)     only by railroad; or
> (B)     by railroad and water, when the transportation is under common control, management, or arrangement for a continuous carriage or shipment

> (b) The jurisdiction of the Board over-

> (1)     transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routs, services and facilities of such carriers; and
> (2)     the **construction**, acquisition, **operation**, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State (emphasis added),

> is **exclusive**. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are **exclusive** and **preempt** the remedies provided under Federal or State law (emphasis added).

8. When examining the above-cited statute, the United States District Court for the Northern District of Georgia, Atlanta Division, made the following observation: "It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operation. ...[I]t is clear to the Court that Congress intended the preemptive net of the ICCTA to be broad by extending exclusive jurisdiction to the STB over anything included within the general and inclusive term 'transportation by rail carriers.' " *CSX Transp., Inc. v. Georgia Public Service Com'n*, 944 F.Supp. 1573, 1583 (N.D.Ga. 1996).

9. "State regulation can be as effectively exerted through an award of damages as through some form of preventative relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 521, 112 S.Ct. 2608, 2620 (1992), *citing San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780 (1959).

10. The Court believes and finds that the cases cited by the Plaintiffs in their response to the current motion are distinguishable from the present action in that the facts and analysis in those cases centered on aspects of property law, such as servitudes, rather than tort law, as in the present action, or involved structures or operations that were not involved in interstate rail transportation, rather than a bridge holding tracks used for travel, as in the present action. *See Louisiana v. Sprint Communications, Co.*, 892 F.Supp. 145 (M.D.La. 1995) ("there is no indication that the Congress...sought to somehow impair state law property rights pertaining to servitudes [by enacting the ICCTA]." *Id.* at 149); *Flynn v. Burlington Northern Santa Fe Corp.*, 98 F.Supp.2d 1186 (E.D.Wash 2000) (manufacturing activities and other facilities owned by railroads which are not integrally related to the railroad's provision of interstate rail service, i.e., non-transportation facilities, are not subject to STB jurisdiction or federal preemption.); *Rushing v. Kansas City Southern Railroad Co.*, 194 F.Supp.2d 493 (S.D.Miss. 2001) (no preemption where the facts involved the pooling of rainwater on property owned by Plaintiffs which allegedly resulted from the railroad's erection of an earthen berm adjacent to the subject property.)

11. The Court believes and finds that the allegations set forth in the Plaintiffs' Second Amended Complaint against CSX are related to the "construction" and "operations" of "tracks" and "facilities" as contemplated by the ICCTA in that the Plaintiffs allege that the CSX bridge at Monaville was negligently designed, constructed, and/or maintained.

12. The Court believes and finds that the relief requested by the Plaintiffs in this action qualifies as a state "regulation" as contemplated by the ICCTA.

13. The Court believes and finds that the plain language of the ICCTA is a clear declaration of Congress's intent to expressly preempt state law as it relates to CSX in the present action and bestow upon the Safety Transportation Board exclusive jurisdiction in such an action.

**WHEREFORE,** pursuant to Rule 12(b)(1) of the *West Virginia Rules of Civil Procedure*, it is hereby **ADJUDGED, ORDERED** and **DECREED** that the present action against CSX Transportation, Inc., is **DISMISSED**, without prejudice, in that this Court lacks subject matter jurisdiction over the allegations set forth in the Plaintiffs' Second Amended Complaint pertaining to CSX Transportation, Inc.

The Circuit Clerk shall forward an attested copy of this Order to all parties' counsel.

Enter this _23RD_ day of August, 2007

_Eric H. O'Briant_
ERIC H. O'BRIANT, CIRCUIT JUDGE

A COPY TESTE:
MMS PORTER, CLERK
BY _Claudia_
DEPUTY