UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:   KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| PERTAINS TO LEVEE: | * | NO. 05-4182 "K" (2) |
| CINA, No. 07-4944 | * | |
| MORIAL, No. 07-4551 | * | JUDGE DUVAL |
| WHITE, No. 07-4553 | * | |
| METROLAB INC. OF PITTSBURGH, No. | * | MAG. WILKINSON |
| 07-4557 | * | |
| SAVOY PLACE ASSOCS. LP, No. 07-4558 | * | |
| MINTZ, No. 07-4559 | * | |
| HURWITZ MINTZ FINEST FURNITURE | * | |
| STORE SOUTH LLC, No. 04-4560 | * | |
| DOLEY, No. 07-4561 | * | |
| MORIAL, No. 07-4563 | * | |
| DILLARD UNIV., No. 07-4948 | * | |
| ST. AUGUSTINE HIGH SCHOOL, No. 07- | * | |
| 4949 | * | |
| HARRISON, No. 07-4952 | * | |
| LIBERTY BANK & TRUST CO., No. 07- | * | |
| 4953 | * | |
| GERDES, No. 07-4957 | * | |
| UNION LTD PARTNERSHIP, No. 07-4959 | * | |
| HERTZ 909 POYDRAS LLC, No. 07-4960 | * | |
| PRYTANIA MEDICAL COMPLEX | * | |
| OWNERS, No. 07-4963 | * | |
| PRAT, No. 07-4964 | * | |
| BERENSON, No. 07-4966 | * | |
| ADLER, No. 07-4967 | * | |
| ABUNDANCE SQUARE ASSOCS. LP, No. | * | |
| 07-4968 | * | |
| REDEMPTORIST LTD PARTNERSHIP, | * | |

No. 07-4970                                              *
**OMEGA HOSPITAL LLC, No. 07-4971**                      *
**DOLEY, No. 07-4972**                                   *
**WELLS, No. 07-4973**                                   *
**ROBERT, No. 07-4974**                                  *
**MILLER, No. 07-4975**                                  *
**ENTERCOM COMMUNICATIONS CORP.,**                       *
  No. 07-4976                                            *
**ADLER, No. 07-4977**                                   *
**SMYTH, No. 07-4978**                                   *
**WHITE III LLC, No. 07-4979**                           *
**HAYDEL, No. 07-4980**                                  *
**PATTERSON, No. 07-4981**                               *
**TREASURE VILLAGE ASSOCIATES, No.**                     *
  07-4982                                                *
**DOMINION N.O. CENTRE LLC, No. 07-**                    *
  4984                                                   *
**BAGNERIS, No. 07-4985**                                *
**MORIAL, No. 07-4988**                                  *
**LOUISIANA INDEPENDENT**                                *
  **FEDERATION OF ELECTORS, INC., No.**                  *
  07-4989                                                *
**TANNER, No.. 07-4990**                                 *
**ADLER, No. 07-4991**                                   *
**SOUTHPOINT TECHNOLOGIES, No. 07-**                     *
  4992                                                   *
**ADLER'S SPECIAL ACCOUNT, No. 07-**                     *
  4993                                                   *
**BERENSON, No. 07-4994**                                *
**CII CARBON LLC, No. 07-4995**                          *
**TOURO INFIRMARY, No. 07-4996**                         *
**IMPERIAL TRADING CO., No. 07-4997**                    *
**PHYSICIAN MANAGEMENT SERVICES**                        *
  **OF LOUISIANA LLC, No. 07-4998**                      *
**DOLEY, No. 07-5000**                                   *
**ROBERT, No. 07-5001**                                  *
**SHOPS AND GARAGE AT CANAL PLACE**                      *
  **LLC, No. 07-5002**                                   *
**GREYSTAR DEVELOPMENT &**                               *
  **CONSTRUCTION LLC, No. 07-5003**                      *
**CAMBRIDGE REALTY WEST LLC, No.**                       *
  07-5004                                                *
**MAJESTIC LIFE INS. CO., No. 07-5005**                  *
**WHITE, No. 07-5006**                                   *
**UNITED RESTAURANT ENTITIES LLC,**                      *
  No. 07-5008                                            *

2

DAVIS, No. 07-5009                                          *
WETCO RESTAURANT GROUP LLC, No.                             *
  07-5012                                         *
DOLEY, No. 07-5014                                          *
MAJESTIC MORTUARY SERVICE INC.,                             *
  No. 07-5015                                      *
UNIVERSAL HEALTH SERVICES INC.,                             *
  No. 07-5016                                      *
REID, No. 07-5017                                           *
XAVIER UNIVERSITY OF LOUISIANA,                             *
  No. 07-5018                                      *
EMBRY, No. 07-5019                                          *
GREEN-JOHNSON, No. 07-5155                                  *
CURTIS, No. 07-5193                                         *
UNIVERSAL HEALTH SERVICES INC.,                             *
  No. 07-5254                                      *
UNIVERSAL HEALTH SERVICES, No. 07-                          *
  5286                                             *
DAVIS, No. 07-5314                                          *
OMEGA HOSPITAL LLC, No. 07-5315                             *
GERDES, No. 07-5316                                         *
ABUNDANCE SQUARE ASSOCIATION                                *
  LP, No. 07-5317                                  *
UNION LTD PARTNERSHIP, No. 04-5318                          *
DOLEY, No. 07-5319                                          *
SHOPS AND GARAGE AT CANAL PLACE                             *
  LLC, No. 07-5321                                 *
WELLS, No. 07-5322                                          *
IMPERIAL TRADING CO., No. 07-5323                           *
PHYSICIAN MGT. SERVICES OF LA.                              *
  LLC, No. 07-5324                                 *
BERENSON, No. 07-5325                                       *
ST. AUGUSTINE HIGH SCHOOL, No. 07-                          *
  5326                                             *
ADLER, No. 07-5329                                          *
PRYTANIA MEDICAL COMPLEX                                    *
  OWNERS ASSOCIATION, No. 07-5334                  *
LOUISIANA INDEPENDENT                                       *
  FEDERATION OF ELECTORS, INC., No.                *
  07-5338                                          *
WETCO RESTAURANT GROUP LLC, No.                             *
  07-5339                                          *
CAMBRIDGE REALTY WEST LLC, No.                              *
  07-5340                                          *
ROBERT, No. 07-5341                                         *
UNITED RESTAURANT ENTITIES LLC,                             *

No. 07-5342                                              *
ADLER'S SPECIAL ACCOUNT, No. 07-     *
  5345                                             *
MILLER, No. 07-5346                                 *
LIBERTY BANK & TRUST CO., No. 07-  *
  5347                                             *
DOLEY, No. 07-5348                                 *
GREYSTAR DEVELOPMENT &          *
  CONSTRUCTION LP, No. 07-5349      *
UNIVERSAL HEALTH SERVICES INC.,  *
  No. 07-5350                                    *
TREASURE VILLAGE ASSOCIATES LP,  *
  No. 07-5351                                    *
TOURO INFIRMARY, No. 07-5352          *
EMBRY, No. 07-5353                               *
REDEMPTORIST LTD PARTNERSHIP,   *
  No. 07-5354                                    *
CII CARBON LLC, No. 07-5355              *
WHITE, No. 07-5356                               *
DILLARD UNIVERSITY, No. 07-5359      *
WHITE, No. 07-5360                               *
HERTZ 909 PYDRAS LLC, No. 07-5361   *
MORIAL, No. 07-5362                            *
PRAT, No. 07-5363                                *
DOMINION/NEW ORLEANS CENTRE   *
  LLC, No. 07-5364                            *
BERENSON, No. 07-5365                       *
XAVIER UNIVERSITY OF LOUISIANA,  *
  No. 07-5367                                    *
DOLEY, No. 07-5368                             *
ADLER, No. 07-5369                             *
SOUTHPOINT TECHNOLOGIES LLC, No.  *
  07-5371                                         *
GREEN-JOHNSON, No. 07-5373            *
HAYDEL, No. 07-5374                            *
ENTERCOM COMMUNICATIONS CORP.,  *
  No. 07-5375                                    *
ADLER, No. 07-5376                             *
BAGNERIS, No. 07-5378                        *
HARRISON, No. 07-5494                        *
REID, No. 07-5495                                *
SMYTHE, No. 07-5496                          *

4

## MEMORANDUM IN SUPPORT OF CSX TRANSPORTATION, INC.'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6) (FAILURE TO STATE A CLAIM)

The complaints filed in the one-hundred-seventeen (117) above-referenced Levee actions make allegations against CSX Transportation, Inc. ("CSXT") that are identical in all material respects to the allegations against CSXT in the Superseding Master Consolidated Class Action Complaint ("Master Complaint") (Dkt. No. 3420). On December 27, 2007, in an Order and Opinion attached hereto as Exhibit A, this Court granted CSXT's motion to dismiss all claims against CSXT in the Master Complaint on two separate and independent grounds – first, that CSXT, a private railroad entity, owes no duty to protect the public from flooding, and second, that the claims against CSXT are preempted by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"). *See* Order and Opinion, Dec. 27, 2007 (Dkt. No. 9856) ("Dismissal Order"). The allegations in these 117 complaints mimic those of the Master Complaint, and the reasoning of this Court's Dismissal Order dictates the disposition of all claims against CSXT in these actions.[1]  Respectfully, to grant CSXT's present motion, the Court need not read any further than this paragraph. However, for the sake of completeness, CSXT provides the following memorandum in support of its motion to dismiss.[2]

### INTRODUCTION

The complaints filed in the above-referenced Levee actions seek to hold CSXT liable for damages allegedly suffered by plaintiffs when Hurricane Katrina breached the New Orleans

---

[1] Exhibit B demonstrates the virtual identicalness of the CSXT-specific claims pled in the Master Complaint and those pled in the complaints subject to this motion.

[2] The only material difference between this memorandum and CSXT's prior memoranda arguing for dismissal pursuant to Rule 12(b)(6) is the inclusion of new decisions, including decisions of this Court, that further support CSXT's arguments. *See infra* at 6, 7, 8, 9, 14, 15, 16.

levee system on August 29, 2005. However, the Complaints are each legally deficient and fail to state a claim against CSXT.[3] While it appears that plaintiffs intend to allege a negligence claim against CSXT, they do not allege a legally enforceable duty owed by CSXT to plaintiffs – an essential element of a negligence or any other tort claim – nor could they. Further, in asking this Court to instruct CSXT on the "design and construction" of its rail system, plaintiffs run headlong into the preemptive effect of two separate federal railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 and the Federal Railroad Safety Act.

I.   **The Complaints Fail to Allege Any Duty Owed by CSXT to Plaintiffs and Therefore Fail to State a Claim**

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006). In Louisiana the existence of a duty and its scope are questions of law. *See Dupre v. Chevron, U.S.A., Inc.*, 20 F.3d 154, 159 (5th Cir. 1994). The failure to allege a duty renders a complaint legally deficient. *Johnson v. United States*, 547 F.2d 688, 695 n.47 (D.C. Cir. 1976) (citing 5 C. Wright & A. Miller, *Federal Practice* § 1249 at 227-28 (1969)); *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995); *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-66 (2007).

The complaints seem to allege that CSXT is liable for plaintiffs' flood damage due to CSXT's design and construction of a railroad crossing near the New Orleans flood protection structures. Specifically, plaintiffs claim that CSXT "us[ed] substandard, unstable, and porous

---

[3] This consolidated motion addresses 117 separate complaints. The allegations against CSXT in each of these complaints are substantially identical. *See* Exhibit B. As such, citations throughout the brief are given to the *Cina* complaint, No. 07-4944, and CSXT refers the Court to the corresponding allegations of the remaining complaints.

materials causing these flood structures to be much weaker than surrounding flood protection structures." *Cina* Compl. ¶ 111.[4]  Further, plaintiffs fault CSXT for failing to install "erosion prevention measures" to prevent or limit erosion and/or failure of its structure. *Cina* Compl. ¶¶ 112-13.  Plaintiffs conclude that CSXT "did not exercise due care in constructing its structure and its acts of fault and/or negligence proximately caused and/or contributed to the breaches of certain levees and floodwalls." *Cina* Compl. ¶ 114.

CSXT does not have a legally cognizable duty to protect plaintiffs or the population of New Orleans from flood damage.  CSXT thus has no duty to erect "flood prevention measures" or to protect the residents of New Orleans from flood damage.  Such a duty, if there is one, rests with others, not with private railroad entities such as CSXT.  *See* Dismissal Order at 6 ("The lack of such law [imposing on a railroad a general duty to protect the public from flooding] is not unexpected; the duty to protect the residents and citizens of New Orleans from flood has been statutorily imposed on other entities.").

Indeed, Congress has for several decades fixed upon a single entity – the Army Corps of Engineers – responsibility to protect United States populations from floods.  *See* 33 U.S.C. § § 701, *et seq.* (Congress mandated that Army Corps of Engineers is to provide hurricane and flood protection for the City of New Orleans).  In turn, the Louisiana legislature has imposed some level of flood-protection responsibility upon the Board of Commissioners of the Orleans Levee District. *See Volkswagen of America, Inc. v. Robertson*, 713 F.2d 1151, 1154 (5th Cir.

---

[4]  Plaintiffs do not in any way specify where these alleged "flood protection structures" or the relevant railroad crossing are located, making it difficult, if not impossible, to ascertain the subject of these allegations.  In fact, plaintiffs do not identify any flood protection structures built or maintained by CSXT.  Rather, plaintiffs erroneously conclude – without offering any factual support – that rail crossings and roadbeds are flood protection structures.

1983) (Orleans Levee District maintains the hurricane protection levees in the New Orleans area, in compliance with the designs, plans, specifications, and requirements of the Corps of Engineers); *see also* Dismissal Order at 6-7 ("The Louisiana legislature has vested the Board of Commissioners of the Orleans Levee District… with the 'full and exclusive right, jurisdiction, power, and authority to locate, relocate, construct, maintain, extend, and improve levees, embankments… and other works in relation to such projects' within the Parish of Orleans.") (emphasis in original); Order and Reasons (Sept. 13, 2006) (Dkt. No. 1133) ("the Board of Commissioners of the Orleans Levee District has the full and exclusive right and jurisdiction over the levees" and the levee districts have "the right to maintain the levees") (citing La. Rev. Stat. 38:307 and 38:301 and granting 12(b)(6) motion filed by City of New Orleans).

In dismissing the claims against CSXT in the Master Complaint, this Court found that the duty to protect the residents and citizens of New Orleans, including the plaintiffs, from flooding is statutorily imposed on the State of Louisiana, through the Orleans Levee District, and that "[t]he state has not delegated any responsibility for flood control to CSXT." Dismissal Order at 7. The complaints at issue here similarly attempt to improperly place upon CSXT the duty to protect plaintiffs from flooding. As was the case with the Master Complaint, "[b]ecause CSXT had no duty to protect the plaintiffs from flooding, plaintiffs's [sic] allegations concerning the negligent design and construction of the railroad crossing do not state a claim against CSXT." *Id.* at 7-8.

This Court has also dismissed two additional Levee defendants because the duty to maintain the levees lay elsewhere. In granting Jefferson Parish's motion to dismiss, the Court held that "with respect to claims based on the failure to maintain the levees involved, Jefferson Parish is not charged with such a duty by the State of Louisiana, and cannot be held liable for

these alleged defalcations concerning maintenance of the levees." Order at 10 (Oct. 12, 2007) (Dkt. No. 8387). The Court observed that "it appears... that the maintenance of the levees involved would be the duty of either the Orleans Levee District and/or the East Jefferson Levee District.... *It is primarily the state's duty to protect citizens from damage by flood* which is inherently within its police power." *Id.* at 9 (emphasis added). Similarly, the Court granted a Motion for Judgment on the Pleadings, dismissing the Board of Commissioners for the Port of New Orleans (the "Dock Board") from all Levee actions on the ground that "the maintenance of the levees involved would be the duty of the Orleans Levee District, not the Dock Board." Order and Reasons at 2 (Oct. 12, 2007) (Dkt. No. 8389). Again, the Court noted that "[i]t is primarily the state's duty to protect citizens from damage by flood which is inherent within its police power.... Thus, a levee board is a creature or agency of the state brought into existence for the purpose of discharging *the state's duties* of flood protection." *Id.* (emphasis added).

As a private railroad entity, CSXT simply has no duty to construct, maintain, or otherwise provide flood protection structures, nor does it have a duty to protect the citizens of New Orleans from flood damage. In the absence of a legally-cognizable duty, plaintiffs have failed to state a negligence claim against CSXT. *See* Dismissal Order at 7-8.

As fundamentally, tort law does not impose duties owed to the public at large. Duties in negligence are not owed to an "area" and are not owed to an entire city or city population. They are owed to specific people with whom one has a relationship or legally sufficient nexus. "[N]egligence does not exist in the abstract, it contemplates a legal duty owing from one party to

another...." *Tappen v. Ager*, 599 F.2d 376, 379 (10th Cir. 1979).[5] A tort plaintiff "must show

that a defendant owed not merely a general duty to society but a specific duty to him or her, for

'[w]ithout a duty running directly to the injured person there can be no liability in damages,

however careless the conduct or foreseeable the harm.'" *Hamilton v. Beretta U.S.A. Corp.*, 96

N.Y.2d 222, 232 (N.Y. 2001) (citations omitted).

CSXT simply does not have a general duty in tort to protect large city areas from

hurricane damage. This is a police power notion alien to private tort law. Moreover, a railroad's

roadbeds are not "flood protection structures." Notwithstanding plaintiffs' attempts to

recharacterize their function, CSXT's railroad tracks and crossings simply are not a part of the

City of New Orleans' flood protection system. The latter, as recognized by the Fifth Circuit and

this Court, is designed and maintained *exclusively* by the Orleans Levee Board. As the

Honorable Judge Sarah Vance of this Court held in a similar class action claim for Hurricane

Katrina damages, Louisiana courts *have not and would not* impose a duty on others to protect

hundreds of thousands of plaintiffs from flooding. *See Barasich v. Columbia Gulf Transmission

Co.*, No. 05-4161, 2006 U.S. Dist. Lexis 86062, at *47-56 (E.D. La. Sept. 28, 2006).

Respectfully, the same result should follow here.

**II.    The Claims Against CSXT are Preempted by Federal Railroad Law.**

Plaintiffs' negligence claims against CSXT are based entirely on the fact that "CSX[T]

designed and built a railroad crossing." *Cina* Compl. ¶¶ 111-14. Specifically, the Complaint

faults CSXT for using "substandard, unstable, and porous materials," for failing to install a

---

[5] In the Dismissal Order, this Court found that no special relationship exists between the
residents of Orleans Parish and CSXT sufficient to serve as a basis for concluding CSXT owed
plaintiffs a general duty. Dismissal Order at 7. The same is true here.

"sheetpile cutoff," and for failing "to install concrete 'splash pads' and other erosion prevention measures at the bottom of the 'I-walls.'" *Id.* Such claims are preempted by two separate federal railroad regulatory schemes – the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") and the Federal Railroad Safety Act ("FRSA").

### A. Federal Railroad Law Broadly and Expressly Preempts State Regulation.

The doctrine of federal preemption is rooted in the Supremacy Clause of the Constitution: "[T]he laws of the United States… shall be the Supreme Law of the Land." U.S. Const. art. VI, cl. 2. The Supremacy Clause authorizes Congress to preempt state law in the legitimate exercise of its legislative authority: "Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law…." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 368 (1986). "Because federal law is the supreme law of the land, it preempts state laws that 'interfere with, or are contrary to, federal law.'" *Boomer v. AT&T Corp.*, 309 F.3d 404, 417 (7th Cir. 2002) (quoting *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985)).

Railroads are subject to the regulatory authority of Congress under the Commerce Clause. *See, e.g., Pittsburgh & Lake Erie R.R. Co. v. Ry. Labor Executives Ass'n*, 491 U.S. 490, 510 (1989); *Houston, E & W Tex. Ry. Co. v. United States*, 234 U.S. 342, 350-52 (1914). The United States Supreme Court "repeatedly has recognized the preclusive effect of federal legislation" in the area of railroad regulation. *City of Auburn v. United States*, 154 F.3d 1025, 1029 (9th Cir. 1998).

Congress initially asserted federal authority over the railroad industry by enacting the Interstate Commerce Act, ch. 104, 24 Stat. 379 (1887), which has been acknowledged as "'among the most pervasive and comprehensive of federal regulatory schemes.'" *City of*

11

*Auburn*, 154 F.3d at 1029 (citation omitted). Federal regulation of the railroad industry, already

sweeping, expanded further in 1995 when Congress enacted the Interstate Commerce

Commission Termination Act of 1995, 49 U.S.C. § § 10101 *et seq.* ("ICCTA"), including within

the ICCTA an express preemption of state "regulation of rail transportation."

In addition, Congress enacted the Federal Railroad Safety Act, 49 U.S.C. § § 20101 *et*

*seq.*, ("FRSA"), to promote safety in all areas of railroad operations. The FRSA broadly

regulates rail safety, and like the ICCTA, contains a sweeping express preemption clause. If the

"subject matter" of a lawsuit "covers" railroad safety, with limited exception the FRSA and its

supporting regulations preempt the action.

**B.      The Claims Against CSXT Are Preempted by the ICCTA.**

With its enactment of the ICCTA, Congress intended to "significantly reduce state and

local regulation of railroads." *Maynard v. CSX Transp., Inc.*, 360 F. Supp. 2d 836, 839 (E.D.

Ky. 2004). Through the ICCTA Congress established the Surface Transportation Board ("STB")

as an agency within the United States Department of Transportation with authority to regulate all

aspects of railroad operations. *See* 49 U.S.C. § § 701(a), 702 (2000).

Specifically, Section 10501 of the ICCTA reserves for the STB, and only the STB,

jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with
> respect to rates, classifications, rules (including car service, interchange, and other
> operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance of
> spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are
> located, or intended to be located, entirely in one State,....

49 U.S.C. § 10501(b). Removing any doubts, Section 10501 concludes that the STB's

jurisdiction over this broad sweep of rail operations is "*exclusive*" and "*preempt[s] the remedies*

*provided under Federal or State law.*" *Id.* (emphasis added).

Courts have long recognized the exceedingly broad reach of ICCTA preemption. "It is clear that the ICCTA has preempted *all* state efforts to regulate railroad transportation." *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013 (W.D. Wisc. 2000) (emphasis added); *see also Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 443 (5th Cir. 2001) ("the plain language of the statute itself, and in particular its preemption provision, is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent"); *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1581 (N.D. Ga. 1996) ("[i]t is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations"). Courts have applied the ICCTA to preempt state regulation of rail transportation in a wide variety of settings, covering the broadest array of attempts at state regulation. *See, e.g., Friberg*, 267 F.3d at 439 (ICCTA held to preempt common law negligence claim); *City of Auburn*, 154 F.3d at 1031 (ICCTA held to preempt state and local environmental laws); *S.D. R.R. Auth. v. Burlington N. & Santa Fe Ry. Co.*, 280 F. Supp. 2d 919 (D.S.D. 2003) (ICCTA held to preempt state law claims for punitive damages and tortious interference); *Burlington N. Santa Fe Ry. Corp. v. Anderson*, 959 F. Supp. 1288 (D. Mont. 1997) (ICCTA held to preempt state closure authority).

The complaints in these actions seek to find fault with the design and construction of a railroad crossing. *E.g. Cina* Compl. ¶¶ 111-14. Plaintiffs essentially are asking the Court to dictate how CSXT designs and constructs its railroad crossings, including its roadbed and its rail track. According to the clearly expressed will of Congress, only the Surface Transportation Board has jurisdiction over such an action. *See Emerson v. Kan. City S. Ry. Co.*, No. Civ-05-331-KEW, 2006 WL 1785460, at *3 (E.D. Okla. June 26, 2006) (negligence claims that track drainage deficiencies resulted in flooding of plaintiffs' land "bear directly upon the 'practices,'

'operation,' and 'construction' in regard to Defendant's 'facilities,' namely the track in the

affected area" and therefore "are expressly reserved to the exclusive jurisdiction of the STB");

*Maynard*, 360 F. Supp. at 843 (ICCTA held to preempt negligence claims for flooding as a result

of "construction and/or maintenance of the tracks and crossings"); *Hutchinson v. CSX Transp.*

*Inc.*, No. 06-C-160-O (W.V. Cir. Ct. Aug. 23, 2007) (Exhibit C) (claims alleging that CSX's

design, construction, or maintenance of its rail structures resulting in flooding of plaintiffs'

properties must be dismissed as preempted by the ICCTA since "the plain language of the

ICCTA is a clear declaration of Congress's intent to expressly preempt state law" as it relates to

such claims).

This Court held that substantially identical claims in the Master Complaint were

preempted by the ICCTA, with reasoning that applies with equal force to these 117 complaints:

> The design and construction of a railroad crossing is necessary inextricably
> intertwined with the design and construction of the railroad tracks located at the
> crossing. Additionally, the design and construction of the railroad crossing relates
> directly to CSXT's rail activity at the crossing. ICCTA makes it clear that the
> Surface Transportation Board has exclusive jurisdiction over the 'construction' of
> railroad tracks. Thus, the plaintiffs' claim that CSXT negligently designed and
> constructed the railroad crossing is preempted.

Dismissal Order at 11. Thus, the sole claim against CSXT is preempted by the ICCTA.

C.      **The Claims Against CSXT Are Preempted by the FRSA.**[6]

Congress enacted the FRSA "to promote safety in all areas of railroad operations and to

reduce railroad-related accidents, and incidents." 49 U.S.C. § 20101. The FRSA vests in the

Secretary of Transportation broad powers to prescribe regulations for "*every area* of railroad

---

[6] In dismissing all claims against CSXT in the Master Complaint, this Court, having concluded
that CSXT owed plaintiffs no duty to protect them from floods and having concluded that the
claims of the Master Complaint were preempted by the ICCTA, did not address the FRSA
preemption argument. *See* Dismissal Order at 13 n.7.

safety." 49 U.S.C. § 20103(a) (emphasis added).  With the FRSA Congress sought nationwide

uniformity in the area of rail safety: "Laws, regulations, and orders related to railroad safety and

laws, regulations, and orders related to railroad security shall be nationally uniform to the extent

practicable." 49 U.S.C. § 20106.  Nevertheless, Section 20106 further provides:

> A State may adopt or continue in force a law, regulation, or order related to
> railroad safety or security until the Secretary of Transportation (with respect to
> railroad safety matters), or the Secretary of Homeland Security (with respect to
> railroad security matters), prescribes a regulation or issues an order covering the
> subject matter of the State requirement.  A State may adopt or continue in force an
> additional or more stringent law, regulation, or order related to railroad safety or
> security when the law, regulation or order –
>
> > (1) is necessary to eliminate or reduce an essentially local safety or
> > security hazard;
> > (2) is not incompatible with a law, regulation, or order of the United States
> > Government; and
> > (3) does not unreasonably burden interstate commerce.

(emphasis added).[7]  With limited exceptions pertaining to purely local hazards, therefore, a state

law or lawsuit is preempted by the FRSA whenever the Act's implementing regulations "cover"

or "substantially subsume" the subject matter of the state law or action.  *See, e.g., CSX Transp.,*

*Inc. v. Easterwood*, 507 U.S. 658, 661, 675 (1993) (maximum railroad-speed regulations "cover"

the subject-matter of train speed and therefore preempt a jury verdict that a train was traveling at

an excessive speed).

---

[7] In July 2007, congress passed a clarifying amendment to the FRSA.  The amendment retains
FRSA preemption and national uniformity in rail regulation and adds two new subsections, 49
U.S.C. § § 20106(b) and (c). Pub. L. 110-53, § 1528, 121 Stat. 453 (2007).  The new subsections
serve to clarify circumstances in which FRSA preemption does not extend to bar a state cause of
action.  The amendment's clarifications do not reach the issues here or affect proper resolution of
CSXT's pending motions to dismiss other actions in the Levee litigation.  FRSA preemption as
applicable in this case remains unaltered, and the claims against CSXT remain preempted.

Pursuant to his authority under the FRSA, the Secretary has long regulated the construction and maintenance of railroad tracks and roadbeds, including regulations directly aimed at ensuring proper drainage of track areas. *See* 49 C.F.R. Part 213, subparts B and D. Subpart B ("Roadbed," §§ 213.31 *et seq.*) prescribes minimum requirements for "roadbed and areas immediately adjacent to a roadbed." Subpart D ("Track Structure," § 213.101 *et seq.*) prescribes minimum requirements for "ballast, crossties, track assembly fitting, and the physical condition of rails." The track regulations include 49 C.F.R. § 213.103, directly addressing the supporting material used in the construction of roadbeds:

> Unless it is otherwise structurally supported, all track shall be supported by material which will –
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
> (c) Provide adequate drainage for the track; and
> (d) Maintain proper track crosslevel, surface, and alignment.

Because FRSA regulations "cover" the manner in which railroads design and construct their roadbeds and tracks, and specifically address the nature of the supporting materials, a state action purporting to affect how a railroad's roadbed or track is "designed and constructed" or how it is supported is preempted. *See Cooper v. CSX Transp. Inc.*, No. 05-CV-73392 (E.D. Mich. Oct. 23, 2007) (Exhibit D); *Norris v. Cent. of Ga. R.R. Co.*, 635 S.E.2d 179, (Ga. Ct. App. 2006) ("'[T]o allow various state juries to second-guess the actions of an interstate railroad which has complied with federally-mandated design standards would undermine Congress's goal of uniform, federal railroad regulation.'") (quoting *Key v. Norfolk So. Ry. Co.*, 491 S.E.2d 511, 513-14 (Ga. Ct. App. 1997)).

These complaints attempt precisely this. By alleging CSXT is at fault for the design and construction of a railroad crossing through its use of certain construction and support materials, the complaints seek to impose obligations upon CSXT irrespective of, and in conflict with, its compliance with the requirements established by FRSA regulations. Such claims defy Congressional intent to create a nationally uniform set of standards applicable to railroads.

FRSA preemption applies, therefore, unless plaintiffs' negligence claims fall within the narrow "local" safety or security hazard savings clause. The FRSA's savings clause permits a state to adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation or order meets three conditions: (1) it is necessary to eliminate or reduce an essentially local safety hazard; (2) it is not incompatible with a federal law, regulation, or order; and (3) it does not unreasonably burden interstate commerce. Plaintiffs' claim meets none of these conditions.

First, the only conceivable "safety hazard" plaintiffs attempt to address in their complaints is flooding. Flooding is anything but "essentially local." To state the obvious, New Orleans is not the only jurisdiction where local, state, and federal governments must determine how flood protections systems and railroad operations may be integrated. A hazard is a "discrete and truly local hazard" if it "relates to the avoidance of a specific collision." *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 640 (5th Cir. 2005) (citation omitted). A condition that could occur anywhere at any time – such as a flood – is not a discrete, truly local hazard. *Id.*

Second, the plaintiffs' claims are "incompatible" with FRSA law and regulations. The FRSA imposes safety standards governing how CSXT is to design and construct its crossings, roadbed, and track. But the complaints attempt to create some other standard through the guise

of a lawsuit. This attempt is incompatible with regulations promulgated under the FRSA that already "cover" these very aspects of CSXT's operations.

Finally, plaintiffs' claim would "unreasonably burden interstate commerce." In evaluating this burden, courts consider "the practical and cumulative impact were other States" to take similar actions. *CSX Transp. Inc. v. Williams*, 406 F.3d 667, 673 (D.C. Cir. 2005). The court in *Williams* weighed the burden of a proposed local ban on a railroad's shipment of certain types of freight, considering the effect not only of that one jurisdiction's ban, but also the possibility of multiple, varying bans throughout the country. As the D.C. Circuit observed in *Williams*, "[i]t would not take many similar bans to wreak havoc with the national system of hazardous materials shipment." *Id.* (citation omitted). So here, the prosecution of civil actions nationwide seeking monetary awards to discipline how a railroad designs and constructs rail crossings, roadbeds, and tracks would create anything but national uniformity, and would "wreak havoc" on our nation's system of rail transportation.

In questioning a rail entity's construction and design of its track and roadbed, the plaintiffs seek to regulate an area substantially "covered" by the FRSA. Thus, their claims against CSXT are preempted.

## CONCLUSION

The Court's reasoning in its December 27, 2007 Order and Opinion dismissing claims against CSXT in the Master Complaint applies equally to these pending Levee actions. As in the Master Complaint, plaintiffs have failed to plead negligence against CSXT and have asserted a claim preempted by federal railroad laws. Respectfully, the complaints should be dismissed as to CSXT for failure to state a claim under Rule 12(b)(6).

s/ Jonathan C. McCall
BRENT A. TALBOT (#19174)
JONATHAN C. MCCALL (#9227)
-of-
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075

and

ROY J. RODNEY, JR. (#02079)
JOHN K. ETTER (#25042)
-of-
**RODNEY & ETTER, L.L.C.**
620 North Carrollton Avenue
New Orleans, Louisiana 70119
Telephone: (504) 483-3224
Facsimile: (504) 483-2259

**ATTORNEYS FOR CSX TRANSPORTATION, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 22d day of January, 2008, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management. All counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

s/ Jonathan C. McCall