1                  UNITED STATES DISTRICT COURT

2                  EASTERN DISTRICT OF LOUISIANA

3

4

5    IN RE:  KATRINA CANAL BREACHES   *   Docket 05-CV-4182-K
              CONSOLIDATED LITIGATION  *
6    * * * * * * * * * * * * * * * *   *   New Orleans, Louisiana
7                                      *   January 16, 2008
     PERTAINS TO:  MRGO, BARGE         *
8                                      *   9:30 a.m.
       06-CV-4389                      *
9      07-CV-3500                      *
                                       *
10   * * * * * * * * * * * * * * * *   *

11

12                TRANSCRIPT OF PROCEEDINGS BEFORE THE
13                 HONORABLE STANWOOD R. DUVAL JR.
                     UNITED STATES DISTRICT JUDGE
14

15   APPEARANCES:
16

17   For the Plaintiffs:        The Law Offices of Joseph M. Bruno
                                BY:  JOSEPH M. BRUNO, ESQ.
18                              855 Baronne Street
                                New Orleans, Louisiana 70113
19

20   For the Plaintiffs:        Law Offices of Ashton O'Dwyer Jr.
                                BY:  ASHTON R. O'DWYER JR., ESQ.
21                              821 Baronne Street
                                New Orleans, Louisiana 70113
22

23   For the Plaintiffs:        Law Offices of Daniel Becnel Jr.
                                BY:  DANIEL E. BECNEL JR., ESQ.
24                              Post Office Drawer H
                                106 W. Seventh Street
25                              Reserve, Louisiana 70084

1    <u>APPEARANCES (Continued)</u>:

2

3    For the Plaintiffs:              Fayard & Honeycutt
                                      BY:  CALVIN C. FAYARD JR., ESQ.
                                      519 Florida Avenue, S.W.
4                                     Denham Springs, Louisiana 70726

5

6    For Washington Group            Stone Pigman Walther Wittmann
     International, Inc.:             BY:  WILLIAM D. TREEBY, ESQ.
                                      546 Carondelet Street
7                                     New Orleans, Louisiana 70130

8

9    For Washington Group            Jones Day
     International, Inc:              BY:  JULIA E. MCEVOY, ESQ.
                                      51 Louisiana Avenue, N.W.
10                                    Washington, D.C. 20001

11

12   Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                      500 Poydras Street, B-406
                                      New Orleans, Louisiana 70130
13                                    (504) 589-7778

14

15

16

17

18   Proceedings recorded by mechanical stenography, transcript
     produced by computer.

19

20

21

22

23

24

25

**PROCEEDINGS**

**(January 16, 2008)**

1

2

3   **THE DEPUTY CLERK:**  All rise.

4        Please be seated.

5   **THE COURT:**  Good morning.

6   **THE DEPUTY CLERK:**  The first matter on the docket is

7   Civil Action 05-4182, Section K, In Re: Katrina Canal Breaches

8   Consolidation Litigation, pertains to C.R. Pittman Construction

9   Company in Civil Action 07-2771, here on a motion to dismiss.

10   **THE COURT:**  Just to let you know in the beginning, we

11   have a lot of business, not only here but our entire docket, so

12   I'm going to place time limits upon you today.  I'm going to

13   determine, based on the nature of the motions, the time limits.

14        I'm going to give you, in the first matter, 20

15   minutes each.  So use it how you like; that is, save some for

16   rebuttal and that kind of thing.  That's about all the time we

17   have.  Remember that I have read -- and perhaps my tolerance

18   for excess is getting somewhat less, but I've read the

19   pleadings, memoranda, etc.  Therefore, make your appearances in

20   the dredging matter.

21   **THE DEPUTY CLERK:**  On Pittman.

22   **MR. O'DWYER:**  Excuse me, Your Honor.  As an officer

23   of the Court and in the interest of the orderly administration

24   of justice, I have a disclosure to make.  May I address the

25   Court?

1          **THE COURT:**  Sir, is it on the dredging issue?

2          **MR. O'DWYER:**  It is in the Katrina Canal cases,

3     05-4182.  I have a disclosure to make in the orderly interest

4     of the administration of justice.

5          **THE COURT:**  Does it have anything to do with this

6     case?

7          **MR. O'DWYER:**  Yes, sir.

8          **THE COURT:**  We don't have much time for disruption.

9     I have zero time for it.  None.  There's been a lot of

10    disruption in this stuff that doesn't go to the merits.

11    Mr. O'Dwyer, does it relate to the matter that I am hearing

12    now, the dredging matter?

13         **MR. O'DWYER:**  It relates to it, yes, it does.

14         **THE COURT:**  All right.  You have about two minutes to

15    tell me.

16         **MR. O'DWYER:**  Yes, sir.  It won't take more than

17    that.

18              May it please the Court.  Your Honor, Ashton

19    O'Dwyer, representing plaintiffs and intervening plaintiffs.

20    Your Honor, I have a disclosure to make.

21         **THE COURT:**  Yes, sir.

22         **MR. O'DWYER:**  Late yesterday afternoon, I filed

23    record document 10431, which is an affidavit of personal bias

24    and prejudice of a judge in matters involving me, filed

25    pursuant to 28 U.S.C. §144 and/or 28 U.S.C. §455.  It was

1    filed, along with a certificate of good faith, by my attorney.

2                Your Honor, I wanted to make that disclosure to

3    you.  The precipitating event for the filing of that affidavit,

4    which I respectfully submit may be self-executing, was the fact

5    that today on Your Honor's docket is a motion involving

6    sanctions against me personally.  I respectfully submit, for

7    reasons stated in my affidavit, that Your Honor should recuse

8    himself from deciding those matters or any related matters.

9    That's my disclosure.

10           **THE COURT:**  What other matters would be related that

11    I have today?

12            **MR. O'DWYER:**  What other matters would be related?

13            **THE COURT:**  Yes.

14            **MR. O'DWYER:**  Fruit of the poisonous tree,

15    Your Honor.  We go all the way from matters involving

16    Mr. Fayard, his representation of the State of Louisiana while

17    at the same time purporting to represent members of the class

18    not yet certified, etc., etc., etc.  It's all in the affidavit,

19    Your Honor.

20           **THE COURT:**  I don't understand "etc." and I have not

21    seen the affidavit.  Does it affect my hearing, in your mind,

22    the dredgers?

23           **MR. O'DWYER:**  If the affidavit is self-executing,

24    then the disclosure that I have just made, I thought in the

25    interest of the orderly administration of justice, should be

1   made at the beginning of this proceeding.  That's why I asked

2   permission.

3         **THE COURT:**  My question is:  In your mind, does it

4   affect -- is it a motion to disqualify me or to recuse me under

5   28 U.S.C. §144 from the entire Katrina umbrella, what?

6         **MR. O'DWYER:**  Your Honor, I don't know what your

7   obligations are upon the filing of an affidavit.  I know what

8   my obligations are as an officer of the Court.

9         **THE COURT:**  I'm asking you, sir.  I haven't seen the

10  affidavit.  Does it affect this case, that is, the dredging

11  case?  Does it affect only matters that you are in?  Which

12  cases are you talking about?

13        **MR. O'DWYER:**  It may, Your Honor.

14        **THE COURT:**  If it's the entire Katrina umbrella, then

15  what I'm supposed to do -- I haven't seen the affidavit, but

16  what I'm supposed to do is -- it would be nice to have seen it.

17  I haven't looked at 28 U.S.C. §144 in a while, but what I'm

18  supposed to do is assign the matter to another judge.  I don't

19  assign it; the chief judge assigns it or however it gets

20  assigned to another judge.  Certainly, I don't assign it.  Then

21  that judge hears your issue.

22        If it involves the entire Katrina litigation,

23  it's a monkey wrench in all of this, which would be devastating

24  to the administration of all this stuff because I have a lot of

25  stuff to decide.  It would pretty much destroy the umbrella,

1   Mr. O'Dwyer, right at this point.  If that's what you intend to

2   do -- of course, I had a motion to recuse, as you recall, that

3   went to the Supreme Court earlier, to recuse me from the

4   Katrina umbrella.

5              If it's just relating to personal bias to you,

6   I'm trying to figure out, without looking at your affidavit

7   since it was filed last night, how much -- did you file it

8   under dredging?

9        MR. BRUNO:  Excuse me, Your Honor.  We have a copy of

10  it right here if you would like to see it.  There is no motion

11  before the Court.  Mr. O'Dwyer has filed no motion and,

12  therefore, there's nothing for this Court to do.

13       THE COURT:  I promise you, sir, if I am disqualified

14  from this umbrella, it will wreak havoc beyond -- not that I'm

15  so important, but it would destroy --

16       MR. BRUNO:  As plaintiffs' liaison, it is appropriate

17  for me to suggest that if this is to be made an issue, that in

18  fairness to me, in fairness to the 20 or 25 lawyers who are in

19  this litigation, who have put up millions and millions of

20  dollars, that there be at least an opportunity to be heard.

21              This matter cannot be brought to Your Honor by

22  an affidavit.  It must be brought by a motion.  There's no

23  motion on the table.  There's no motion on the docket.  There's

24  no motion that's scheduled for oral argument today.  I

25  respectfully suggest that if Mr. O'Dwyer feels it appropriate

1   to file a motion, he do so, and set it in due course.

2           At this moment in time, there's nothing

3   occurring except disruption.  Under the *Manual for Complex*

4   *Litigation*, I respectfully suggest that you direct Mr. O'Dwyer

5   to comply with the manual, the rules of this Court, and the

6   rules of federal civil procedure.  There's no need to go into

7   this matter any more at any time.

8        **THE COURT:**  As you recall, Mr. O'Dwyer, I did make

9   that disclosure referenced -- you mentioned Mr. Fayard -- at

10  the beginning, invited anybody to file a motion to recuse.  A

11  motion to recuse was filed, a rather detailed one, which we

12  wrote a rather detailed opinion on.  We did not recuse and the

13  Fifth Circuit affirmed it.

14        So nothing was done at that time, at that

15  initial disclosure.  Now, after we have been under the umbrella

16  two years, in other words, if you are talking about the -- let

17  me complete my statement.  If you are talking about simply

18  deciding the motion to disqualify -- by the way, I'm the one

19  who brought up the conflict in a conference, sir, you might

20  note, as is stated in the brief.

21        Nonetheless, in that motion, if it's simply the

22  motion to disqualify, we can take that up at another time.  I

23  can look at your affidavit and determine if §144 -- if you

24  filed a sufficient document for me to say, "Hey, I'm not going

25  to decide the motion to disqualify.  I'm not going to decide

1   your motion for sanctions," and if that's all it's limited to,

2   then we can move on.  I guess I need to understand from you if

3   that's what it's directed to or if it's directed to the entire

4   umbrella, so to speak.

5           **MR. O'DWYER:**  Your Honor, in specific response to

6   Your Honor's pointed question, my affidavit addresses three

7   subjects, which were also addressed in correspondence which I

8   wrote in personal and confidential communications to Mr. Bruno

9   on November 8, November 15, and December 13, to which I

10  received no response whatsoever.  The three issues are, as

11  identified in the affidavit and in the referenced

12  correspondence:

13              "Whether plaintiffs herein, including O'Dwyer,

14  have legally stated proper and sustainable causes of action

15  against the State of Louisiana, its agencies, department heads,

16  etc."

17          **THE COURT:**  That's on appeal.

18          **MR. O'DWYER:**  "Whether the State of Louisiana has

19  waived" --

20          **MR. FAYARD:**  Your Honor, normally I don't interrupt,

21  but my name is Calvin Fayard, for the record.  My name is in

22  that affidavit.  I have read the first three pages that were

23  presented to me this morning as I walked into the courtroom.

24              It appears to me that Mr. O'Dwyer is out of

25  order, at best, this morning.  I haven't read it.  I do not

1    know what he is referring to.  He is now presenting this to
2    Your Honor as a matter of argument and interrupting a matter
3    that has been dutifully scheduled to come before Your Honor
4    today.
5                Now, there may be issues here that this Court or
6    some other court would have to address, but it is blatantly
7    unfair for him to be allowed to stand up, interrupt the
8    courtroom, not being on the docket, and proceed along a
9    disorderly line and have his way, so to speak, without giving
10   fair and adequate notice to others.
11            **THE COURT:**  All right, sir.
12            Mr. O'Dwyer, do you want to complete your
13   remarks?  Then I'm going to move on and make some decision.
14            **MR. FAYARD:**  Your Honor, one other matter.  I'm not
15   the only name in that affidavit.  Mr. Becnel's name is in it,
16   and I think there may be others.  I don't know if you have seen
17   it.
18            **MR. BECNEL:**  I got it yesterday, Camilo and I,
19   Your Honor.
20            **THE COURT:**  It was filed, at least as I understand it
21   from Mr. O'Dwyer, yesterday evening.
22            **THE LAW CLERK:**  Apparently it was filed at 4:55
23   electronically.
24            **THE COURT:**  4:55 electronically.
25            Go ahead, Mr. O'Dwyer.  Answer my question and

1    then we are going to move on.  It's taking longer than two

2    minutes.

3            **MR. O'DWYER:**  I'll finish the answer to your

4    question, Your Honor, by simply saying that the three issues

5    were specifically identified in my correspondence to Mr. Bruno,

6    to which I received no response, and they are identified in my

7    affidavit.  That's the answer to your question.

8            **THE COURT:**  Thank you.

9            **MR. O'DWYER:**  I thought I had an obligation to make

10   this disclosure, as an officer of the Court, at the beginning

11   of today's proceedings.  Thank you for the opportunity.

12           **THE COURT:**  Thank you, sir.  We'll address it more

13   specifically when we get to your sanctions hearing later on.

14   It may be this afternoon.

15                              * * *

16

17

18

19

20

21

22

23

24

25

**PROCEEDINGS**

**(January 16, 2008)**

1

2

3     **THE DEPUTY CLERK:**  All rise, please.

4     **THE COURT:**  Please be seated.

5          Messrs. Treeby and O'Dwyer, as a result of the

6  affidavit being filed by Mr. O'Dwyer under §144, I am going to

7  have to send this off to someone -- I'm talking about on the

8  sanctions matter which directly affects Mr. O'Dwyer.

9     **MR. TREEBY:**  Can I be heard on that issue,

10 Your Honor?  While we have had the time, we have been doing

11 significant research, and I think you ought to be informed

12 before making that call.

13     **THE COURT:**  Okay.

14     **MR. BRUNO:**  At least to make a record, Your Honor.

15     **THE COURT:**  I'm talking about just on the sanctions

16 hearing, now, because it personally relates to Mr. O'Dwyer.

17     **MR. BRUNO:**  Would you mind if I go first?

18     **MR. TREEBY:**  I would like to go first.

19     **THE COURT:**  It really relates to Mr. Treeby's motion.

20 I know we have the Burks motion, but I just wanted to get this

21 out of the way so they wouldn't have to be sitting here if I

22 wasn't going to hear it.

23     **MR. TREEBY:**  That's what I understood, Your Honor.

24 William Treeby for Washington Group International.  I went in

25 the office this morning, had a sneaking suspicion I might find

1    something on the ECF summary that would be involved with this

2    morning's hearing, and sure enough I was the one who found and

3    brought to counsel's attention and read and have done some work

4    with regard to Mr. O'Dwyer's affidavit, which is just a

5    stalling tactic at great expense to my client because

6    Ms. McEvoy flew down here and spent the night in order to be

7    here for this hearing today.

8              There are two issues and under the cases -- and

9    Ms. Lonian went back to the office and dug up the cases.  I'll

10   be happy to cite them to Your Honor.  The cases make it clear

11   Your Honor can determine and should determine, frankly, and it

12   is the common rule for Your Honor to determine the timeliness

13   or sufficiency of this affidavit.  If you determine it was

14   timely and sufficient on its face, then you should submit it to

15   another judge under §144.  We contend it is clearly on its face

16   untimely and insufficient and under those reasons -- and I'd be

17   happy to argue this in turn before Your Honor gets another --

18        THE COURT:  We'll argue it in turn so I can give the

19   other people who are not part of this a hearing.  Why don't we

20   do all of that then.

21        MR. BRUNO:  Judge, so we are going to go forward with

22   the hearing?

23        MR. TREEBY:  We are going to argue the timeliness.

24        THE COURT:  We are going to take it last.  I have

25   another oral argument here.  As a courtesy to those people, I

1  ought to let them get their business done and get out so they

2  won't be detained by the internecine warfare of Katrina.

3                              * * *

1          **PROCEEDINGS**

2         **(January 16, 2008)**

3              **THE DEPUTY CLERK:**  This matter is in Civil

4   Action 05-4182, In Re: Katrina Canal Breaches Consolidation

5   Litigation, MRGO and the barge, Civil Action 06-4389, 07-3500,

6   here on motions for sanctions.

7              **MR. TREEBY:**  Your Honor, please, in light of the

8   earlier discussion, do you want to address first the issue of

9   who should decide the sufficiency and timeliness of this

10  affidavit?

11             **THE COURT:**  We can discuss that, yes, although I will

12  have to decide it rather quickly if I'm going to hear it today.

13  Go ahead, sir, if you would talk about that, and Mr. O'Dwyer

14  can respond.

15             **MR. TREEBY:**  I'll be very brief.  §144 on its face --

16  and I'm sure Your Honor has now had an opportunity to look at

17  it --

18             **THE COURT:**  Yes.

19             **MR. TREEBY:**  -- so I won't repeat it, but it does

20  have some key issues in it about whether or not such an

21  affidavit is timely.  We went to West first to find out what

22  West had to say about this.  I mean Wright.  I'm sorry,

23  Wright & Miller, under Section 3551 in Wright & Miller,

24  affidavit of prejudice, and I'll just read from it.

25                  "On its face the statute might seem to

contemplate automatic disqualification," citing cases.  "It has
not been read this way.  It is settled that the judge has not
only the right but the duty to examine the affidavit and
certificate to determine whether they are timely and legally
sufficient," citing many cases, including some Supreme Court
cases.  "The affidavit and certificate are strictly construed
against the party seeking disqualification.  Only if the
documents meet this strict scrutiny does disqualification
become mandatory."

            "It has been the common understanding that it is
for the judge who is the object of the affidavit to pass on its
sufficiency," citing many cases.  "There are obvious
difficulties in asking that judge to make the determination,
but no action was ever taken on a 1961 recommendation of the
Judicial Conference of the United States for legislation to
require a judge other than the one against whom the affidavit
is filed to pass on its sufficiency," citing cases and
statutes.  "There are a few cases in which a judge has referred
the affidavit to the chief judge of his district and asked him
to make the determination."

            On its face, we believe this affidavit is
insufficient.  No. 1, the timeliness of it is in question
because most of the facts alleged as to personal bias all
relate to a relationship between Your Honor and Calvin Fayard,
plaintiffs' liaison, nothing to do with Washington Group or

1    myself.  Those disclosures were made by Your Honor in open

2    court in a status conference long ago.  You invited anyone who

3    had any thought that this might cause personal bias to address

4    that.  That is the main gravamen of what is argued against.

5           In addition, there's a case that Judge Stagg

6    decided which was then appealed to the Fifth Circuit.

7    Judge Jolly rendered a decision in *Henderson v. Department of*

8    *Public Safety*, 901 F.2d 1288, in which the court concludes as

9    follows:

10          "Bias for or against an attorney" -- *for* or

11   *against*, and we have both allegations in this affidavit; that

12   you are biased for Mr. Fayard, not me, and against Mr. O'Dwyer,

13   who is involved in this motion for sanctions -- "who is not a

14   party is not enough to require disqualification unless it can

15   also be shown that such a controversy would demonstrate a bias

16   for or against a party itself.  In order for bias against an

17   attorney to require disqualification of the trial judge, it

18   must be of a continuing and personal nature and not simply bias

19   against the attorney or in favor of another attorney because of

20   his conduct."

21          That goes to the second thing raised in the

22   affidavit, that some undisclosed Attorney A and B referenced in

23   the affidavit have told Mr. O'Dwyer that when he stands up to

24   argue Your Honor recoils.  That is not sufficient specificity

25   and does involve issues because of conduct, because of

 1   arguments made or disruptions of the Court or whatever.  This

 2   affidavit we believe is clearly untimely.  There are many

 3   cases -- and I won't go into them all -- but one case, which is

 4   a case out of the Seventh Circuit, *United States v. Patrick* --

 5   and this is a criminal case, but the cases cited for the

 6   proposition I'm about to quote involve both criminal and civil

 7   cases.

 8             I gave the citation, I think, didn't I?  No.

 9   542 F.2d 381, *United States v. Patrick.*  This is on page 10 of

10   Westlaw:

11             "The law is well settled that one must raise the

12   disqualification of the judge at the earliest moment after

13   knowledge of the facts demonstrating the basis for such

14   disqualification," citing several cases, including civil cases.

15   "We believe it was incumbent upon Patrick here to have raised

16   his contentions concerning any bias on the part of Judge

17   Marshall as soon as the basis for such a belief surfaced during

18   the sentencing proceedings."

19             There it was just a matter of not very long.  In

20   that connection, one of the references that we pulled up --

21   this is, I think, pertinent.  All of the allegations involve

22   things that happened at the latest in November or December or

23   in October, when letters were written to Mr. Bruno that he

24   somehow -- again, how this is held against me in hearing this

25   motion for sanctions, I'm not sure.

1        In a notice of hearing, which is document
2  9753-5, which was filed December 26, 2007, which is a notice of
3  a hearing of appeal from a magistrate's ruling in a matter in
4  the Katrina litigation that I'm not involved in, there was a
5  footnote dropped, footnote 1, page 1:
6        "Intervening's plaintiffs' objections to and
7  motion to review magistrate's order on motions is being noticed
8  for hearing before Judge Duval so that e-filing can be
9  accomplished in a timely manner.  However, intervening
10 plaintiffs aver that Judge Duval should recuse himself, or be
11 recused, from deciding any issues pertinent thereto, as a
12 result of bias or prejudice, pursuant to 28 U.S.C. §144."
13       No affidavit, but he certainly knew enough to
14 make that allegation.  That was over three weeks ago, long
15 before we did all the work preparing for this hearing, long
16 before Ms. McEvoy flew down here.  Again, if I hadn't looked at
17 the ECF summary this morning at 9:00, I wouldn't have even
18 known this because it wasn't served on me or noticed to me.
19       I think Your Honor should hear this issue.  But
20 if Your Honor decides for whatever reason that you should not,
21 one alternative might be to go ahead and let us argue, make a
22 record, and let that record be reviewed by a judge, if you want
23 to refer it to someone else, and we will come back for another
24 motion.
25       I don't like bringing these motions.  In 41

1   years of practice before this Court, this is the first, and I

2   hope it's the last.  At some point attorneys have to stand up

3   and say unprofessional conduct must be sanctioned and that's

4   why we are here.

5           **THE COURT:**  Thank you, sir.

6           **MR. BRUNO:**  Your Honor, I rise -- and I would not

7   ordinarily rise, but as you well know this is not a single

8   plaintiff action with one counsel.  This is a mass tort.  There

9   are -- I don't even know if I know the number of plaintiff

10  lawyers who are involved in this litigation.  There must be a

11  hundred.  There are at least 20, 30, or 40 involved in the

12  levee and MRGO cases.

13           I have accepted the responsibility to act as

14  liaison counsel, and one of my primary functions is to make

15  certain that positions are advanced on behalf of the class and

16  on behalf of the individual plaintiffs that are not

17  inconsistent with positions that are being advanced by other

18  counsel on, I guess, our side.

19           In particular, allegations are made against me

20  and about things that I'm supposed to do and what I'm not

21  supposed to do.  It is difficult to address these issues for

22  the reason that Mr. O'Dwyer has chosen to take positions

23  adverse to every plaintiff lawyer in this case.

24           I agree with Mr. Treeby that Your Honor is

25  called upon to test the sufficiency and the timeliness before

1  you make the determination as to whether to send it somewhere
2  else.  I have to comment first on the timeliness.  The statute
3  says very specifically ten days.  It doesn't say five hours.
4  It says ten days.  That's to give us a chance to speak.
5          Secondly, with regard to the sufficiency, I note
6  that on page 3 of the affidavit, with regard to subparagraph
7  7(1) and (2), the allegation that's made is the prejudice
8  arises from a relationship that you have with Mr. Fayard, who
9  represents the state.  Well, that has nothing to do with
10 Mr. Treeby.  In (3) he says that somehow or other there's some
11 issue with regard to personal bias such that you can't rule on
12 issues on sanctions and he refers to instances where he has
13 been in court and has observed some reactions from you.
14         So I believe it's incumbent upon me, having been
15 in the courtroom and in particular having been requested by
16 Your Honor to be here on a hearing at which time Mr. O'Dwyer
17 was called to task for comments made about your law clerk, to
18 make the record that Mr. O'Dwyer acknowledged that he was
19 incorrect, inappropriate, and he apologized for it.  If ever,
20 in my 30 years of practice, any judge had any reason to show
21 anger or disgust, I suppose, if you want to take it to that
22 level, Your Honor did not in any way react to what -- frankly,
23 I probably would have reacted a lot worse.  I thought that you
24 showed the utmost courtesy and your demeanor was appropriate,
25 to the extent that there's some kind of record that's being

1    made here about your demeanor and your response to
2    Mr. O'Dwyer's position in this Court.
3                    Finally, I just say this.  The fundamental
4    problem I have is that Mr. O'Dwyer continues to take positions
5    and continues to do things which are contrary to the best
6    interest of the class, in particular:  Writing memos to my
7    experts, which make them discoverable; contacting my experts,
8    directing them to do things that I don't want them to do;
9    making comments about evidence and documents, which I and the
10   team that's been assembled by this Court believe to be
11   inappropriate to raise before the Court.
12                   There is pending before the Court a motion to
13   stay all nonclass actions, which I urge Your Honor to grant,
14   that allows the *Manual for Complex Litigation* be used and put
15   into place so that if there's going to be another crazy motion
16   that I have to contend with, at least it has to come through my
17   office and we can deal with it.  Mr. O'Dwyer will always have
18   an opportunity to comment, but we have to have an opportunity
19   to address what we believe to be conduct that's, one,
20   inappropriate and, two, is not in the best interest of the
21   class.  Thank you, Judge.
22              **MR. BECNEL:**  Judge, I would like to address the Court
23   only because I was brought into this yesterday.  Yesterday,
24   Mr. Fayard was in another state.  He didn't have an
25   opportunity, so I got on the phone and called Mr. O'Dwyer.  I

1    outlined to him the theory of some of us, that the Court has

2    asked us to kind of manage this litigation, what we were trying

3    to do from the dredging case all the way to the FEMA

4    formaldehyde cases, dealing with levees, and dealing with every

5    aspect of the case.

6               I told him we were all prepared or trying to put

7    this case together for trial, but hopefully that we could get

8    parts of it settled and resolved down the road.  I told him

9    that at length.  He wanted to know, "Well, why did you want to

10   bring the state in?"  I said because it was another pressure

11   point to have a 9/11 type resolution somewhere, governmentally,

12   down the road.

13              I told him what the reasons were in terms of

14   delaying some of the class cert issues, what the reasons were,

15   because we had motions with dredging, that we had already been

16   in negotiations, and that certain things had to take place

17   before other things could take place.  He then asked me, "What

18   are you getting paid by the State of Louisiana?"  I said, "Not

19   a copper penny."  I said, "In fact, I even told the Court

20   initially I didn't mind doing this pro bono."  I don't even

21   know whether any of us get a fee, much less we have nothing

22   with -- other than wanting the state to file cases, wanting the

23   city to file cases.  We wanted people to file cases and we

24   wanted to bring the thing under some umbrella.

25              I know you are almost sorry you didn't do what

1    you said earlier, that you didn't either retire or recuse

2    yourself because, quite frankly, I would not want to put myself

3    under what you are undergoing right now as a total disruption

4    to your life.  But you have taken the task, just like many of

5    us have taken the task, because we feel a responsibility as

6    lawyers, as judges, and as just people.

7               I told him at length the whole aspect of what we

8    were trying to do.  I invited him to participate, to help, to

9    think.  I mean, many of us have put up great deals of money.  I

10   put up $50,000 yesterday to Mr. O'Donnell to deal with one

11   aspect of the case that I didn't have to do.  That's what's

12   going on.  I would love Mr. O'Dwyer to participate rather than

13   to just throw hand grenades at people who are trying to do

14   what's best for these people.

15              There's a case right now, one of which I

16   started -- it's called the *Motiva/Shell* case -- that may give

17   us some idea of how people get paid.  We don't know.  They have

18   had that under advisement for what, six months, Joe?  About six

19   months.  It might change the whole way any plaintiff gets paid

20   in any case.  I don't know.

21              In any event, I wanted to at least let the Court

22   know I reached out to him, spent 45 minutes on the telephone

23   yesterday, when we should have been talking about the dredging

24   case, because I felt a responsibility to the Court, to

25   Mr. O'Dwyer, to Mr. Fayard, who didn't have time to defend

1    himself, and I still stand by that.  I would like to work with

2    him.  I'd hope he would withdraw some of these motions and

3    these allegations because they are just unfounded.

4             **THE COURT:**  Thank you, sir.

5             **MR. O'DWYER:**  May it please the Court.  Your Honor,

6    Ashton O'Dwyer.  Your Honor, I fully realize that the issues

7    that are on the table today are volatile ones, and I can't

8    apologize to you for filing my affidavit.  Indeed, in the

9    affidavit I state that I make it in good faith.  I state and

10   represent to the Court and to my brothers at the bar that my

11   motivation is the integrity of this litigation.  I further

12   stated that if I failed to make the affidavit, under the

13   circumstances which I have described in it and which I will

14   address in a few seconds, then public confidence in the

15   judiciary would be undermined.  Those are my motivations.

16            I have nothing against you personally, although

17   I think you have a few things personal against me.  I can say

18   that, reading your body language this morning from the time you

19   entered the courtroom until just now, I have felt animosity.  I

20   don't know whether you would agree or disagree with that.  I'm

21   just reflecting my observations for the record.

22            Now, why are we here?  First of all, Mr. Treeby

23   stands up -- Mr. "Sanctimonious" Treeby.

24            **THE COURT:**  Let's not try to call people names

25   because, Mr. O'Dwyer, for the record, you have a history of

1    vitriolic behavior, as evidenced by Judge Berrigan's order

2    saying if you used any more vitriol she would fine you a

3    thousand dollars a word.  That's another judge at another time.

4    I simply say that I would prefer in this Court, whatever our

5    body language is, that our words that come out of our mouth be

6    persuasive -- and I understand you filed something in good

7    faith, and I don't expect you to apologize for it -- but that

8    we not start demonizing everybody because I'm assuming, as I

9    have said many times, that all the litigants, all the parties,

10   all the lawyers are demons.  What are the facts and the law?

11            I don't know if you have gleaned that from my

12   previous statements to you and some admonitions, that that's

13   what appeals to me.  Intellectually, I may not always get the

14   right answer, nor may I always agree with one, but I'm going to

15   try to do that.  So what appeals to me is not a prolix,

16   vituperative comment or the demonization of your opponent or

17   the people you are suing.  That doesn't persuade me that you're

18   right.  What persuades me is facts and law.

19            I may not agree with you, but I'm assuming we

20   are all in good faith.  So I ask you -- I'm not going to

21   comment very much on this hearing -- to keep the castigation at

22   a level where it can be civil rather than vituperative.  If

23   anything annoys me, I admittedly say unprofessional,

24   vituperative, overly histrionic language does, coming from you

25   or anyone else.  Go ahead, sir.

1       **MR. O'DWYER:**  I made the comment about Mr. Treeby as

2   I was attempting to explain why we are here.  I respectfully

3   submit that any third party reading this cold record and

4   reading what Mr. Treeby addressed to Your Honor would form the

5   conclusion that we are here on a motion for sanctions against

6   Ashton O'Dwyer for unprofessional conduct when it's my

7   understanding, from my recollection of the record, that we are

8   here on cross motions for sanctions, one brought by me against

9   Ms. McEvoy, Mr. Treeby, and their client for misrepresentations

10  that were made on the record on June 13, 2007, in this very

11  courtroom.

12              I've submitted to Your Honor the cold record.

13  I've submitted cold documents which they produced.  I have

14  submitted to you an affidavit from an expert that directly

15  contradicts the representations on the record.

16              We have been told that my affidavit is untimely

17  because Ms. McEvoy had to travel here for this hearing today.

18  All she had to do was pick up the phone, call me, and apologize

19  for her misrepresentations and we wouldn't be here today.  All

20  Mr. Treeby had to do was correct the record.  None of that

21  happened.  We still don't have in the record an affidavit filed

22  either by Ms. McEvoy or Mr. Treeby explaining what was said on

23  the record in open court on June 13, 2007.

24              I have a few other things to say.  One,

25  Mr. Becnel called me yesterday.  I call upon him, if a tape of

1    the telephone conversation exists, to have it transcribed and

2    let's put it in the record.  I deny asking him one question.  I

3    am representing to this Court that it was one of the most

4    bizarre conversations that I have ever had in my life.

5              Point 2.  Why are we here today?  "O'Dwyer's

6    unprofessional conduct."  Well, did O'Dwyer violate Rule 1.7 --

7              **THE COURT:**  I'm not going to get into the merits.

8    First, I think we are talking about the timeliness and/or the

9    sufficiency of your affidavit.  They are asking me to decide

10   that first.

11             **MR. O'DWYER:**  All right.  The first point I want to

12   make is this is a civil case, not a criminal case.  Yes, there

13   are cases all over the page.  I don't disagree that what

14   Mr. Treeby read is reported in Wright & Miller.  But it is, in

15   a civil case like this, particularly where we have liaison

16   counsel with whom I was dealing, and who until this morning

17   still arguably had the opportunity to address the concerns

18   which I addressed with him -- I believe that, looking at the

19   record, I acted entirely rationally, reasonably, properly, and

20   timely under the circumstances.

21             I didn't want the sanctions motion to be argued

22   contradictorily without an affidavit in the record.  I'm a

23   one-man band and my secretary was diagnosed with an ulcer

24   yesterday.  We got it done as quickly as we possibly could, and

25   that is my retort to the allegation that my affidavit is

1   untimely.

2               I also ask Your Honor to review the affidavit

3   and the quoted three letters that I addressed to Mr. Bruno on

4   November 8, November 15, and December 13.  I asked for guidance

5   from him.  When you read the three letters, you will see I was

6   begging him for guidance.  I even suggested to him that,

7   because of his unique position as plaintiffs' liaison counsel,

8   he might seek guidance from you for both of us.  Then in my

9   last letter I said, "If you choose that course, let's disclose

10  it to everybody," but I was begging him for an alternative to

11  the filing of an affidavit pursuant to the cited statutes.  I

12  tried, Your Honor, but I couldn't make him do what he wouldn't

13  do.

14              Your Honor, I realize you are close personal

15  friends with Mr. Fayard.  I realize that was disclosed on

16  March 24, 2006.  It did not take on any significance to me and

17  my clients until August 29, 2007, when Mr. Fayard and his law

18  firm, along with Mr. Becnel and many others, appeared as

19  counsel of record for the State of Louisiana.

20              At the very tense hearing where Your Honor

21  required me, with justification, to explain a comment -- which

22  I apologized to you and to Ms. Daley for having attached

23  inadvertently to a pleading -- I sat in the witness box under

24  oath and I made the point a lot of people think, for all of its

25  complexity, this is a single-issue case:  Either the

 1    United States of America has immunity or it doesn't.  If the
 2    United States of America doesn't have immunity, it's got the
 3    deepest pocket in the world and the rest of our lives hopefully
 4    will be lived in comfort.  However, that issue is a long way
 5    from being decided, and it's going to go all the way to the
 6    United States Supreme Court.  I don't think anybody in this
 7    courtroom has the crystal ball to know the answer to that
 8    question.
 9              So what does a good lawyer do to competently,
10    professionally represent his clients in such a situation?  He
11    has to hedge his bets.  If the United States has immunity, who
12    is the next deepest pocket?  I answer that question without any
13    hesitation:  The State of Louisiana.
14              On August 29, 2007, lawyers, including friends
15    of yours who are committee members, showed up representing the
16    interests of the State of Louisiana for an affirmative claim of
17    $200 billion.  For me, that lifted the veil, Your Honor.  It
18    explained to me what I have been living through, sometimes as a
19    lone ranger, for the past two-plus years, and I didn't like
20    what I saw.
21              Certain lawyers, while they were purporting to
22    be discharging the responsibilities you imparted to them, were
23    sleeping with the devil.  They continue to do it without any
24    apologies to anyone, and they are singling me out as being a
25    burr under their saddle or someone they can't get along with,

1    who takes positions that are different from everyone else's

2    positions in the litigation.

3              There is a conflict of interests here.  I have

4    brought it to the Court's attention.  I believe that my

5    concerns about Your Honor's ability to be fair and impartial,

6    when it comes to matters involving me and Mr. Fayard and his

7    clients, are real issues.

8              Just one moment, Your Honor.  Let me check my

9    notes.

10         THE COURT:  There's also another motion to

11   disqualify, as well, brought by numerous defendants.

12         MR. O'DWYER:  Well, the motion to disqualify is

13   separate and apart from the affidavit which is filed --

14         THE COURT:  I understand that.  I'm simply saying

15   that you have brought a motion to disqualify.  The plaintiff

16   attorneys as well as others --

17         MR. O'DWYER:  I understand other people did a similar

18   thing.

19              Your Honor, two last points since we are making

20   a record here.  I listened to argument earlier today after I

21   made my disclosure on the record with your permission.

22   Ms. Tusa I'm sure took it down, but what I wrote down, what I

23   thought I heard was:  "I'm not going to do it, recuse myself.

24   Someone else might, but I won't do it."

25         THE COURT:  I meant from the entire umbrella.

1    **MR. O'DWYER:**  I respectfully submit that that is an

2    issue that I hope Your Honor, Ms. Daley, and others spend some

3    long soul-searching time about.

4    **THE COURT:**  I'm not sure whether your affidavit

5    relates to the entire umbrella or not.  I've been through the

6    recusal issue on the entire umbrella.  I'm not talking about

7    your particular §144, which as I read it does not appear to

8    apply to the entire umbrella.  That's simply all I was talking

9    about, for the record.

10    **MR. O'DWYER:**  It doesn't.

11    **THE COURT:**  That's all I was talking about.  On this,

12    I don't have the decision -- if a §144 is filed appropriately,

13    it goes to someone else.

14    **MR. O'DWYER:**  One last point and I'm going to sit

15    down.  I'm treading on eggs again.  In the face of the

16    representations on the record on June 13, 2007, by Ms. McEvoy

17    and Mr. Treeby, their failure through affidavit to attempt to

18    explain those statements and their refusal to withdraw them or

19    modify them I think is shameless.  I will submit.

20    **THE COURT:**  I'm really trying to focus on,

21    Mr. Treeby --

22    **MR. TREEBY:**  That's all I'm going to focus on.

23    **THE COURT:**  -- the timeliness and sufficiency of the

24    affidavit.

25    **MR. TREEBY:**  That's all I'm going to focus on,

1    Your Honor.  I'm not going to try to respond even to those
2    accusations.
3              **THE COURT:**  I am aware of the filings that you have
4    filed that reference the explanation as an officer of the
5    Court.
6              **MR. TREEBY:**  The reasons given for untimeliness were
7    the secretary's ulcer yesterday -- and I have had pleasant
8    exchanges of e-mail with Mr. O'Dwyer's secretary and I
9    certainly hope she's better.  Frankly, an ulcer yesterday has
10   nothing to do with any timeliness issue here.
11             **MR. O'DWYER:**  Stipulated.
12             **MR. TREEBY:**  The second point was that -- and I'm
13   going to paraphrase.  I don't want to go through all the words.
14   Basically, he couldn't get Mr. Bruno to urge the Court's
15   disqualification because of Mr. Fayard and Mr. Becnel -- that's
16   essentially what he said -- so he waited.  That's not a good
17   excuse.  That was four and a half months ago.  In fact, he went
18   on to admit that all of the pieces required for his affidavit
19   for him fell into place when, to quote Mr. O'Dwyer, "The veil
20   was lifted," and he understood, he put together, he combined
21   the disclosed friendship with Mr. Fayard with the action filed
22   on August 29.  That was four and a half months ago.
23             That is not timely, for him to sit on something
24   that he thought required this Court's disqualification, with
25   all the things this Court has on its plate.  With all the

1    issues that this Court has, for him to sit on that believing,

2    if he truly believes -- and I will take him at his word he

3    truly believes that requires disqualification.  That's

4    untimely.

5              Finally, none of that has anything to do with

6    Washington Group.  None of it has to do with Washington Group

7    asking for sanctions for unprofessional behavior.

8              **THE COURT:**  Thank you, sir.

9              **MR. BRUNO:**  Judge, I know you're tiring of this, but

10   obviously I have to defend myself.  First of all, the most

11   impossible thing for me to try to convey to Mr. O'Dwyer -- and

12   it is awfully insulting, of course, to have to even say this.

13   I and the plaintiff lawyers who have been doing this for 30

14   years don't sue somebody just because they have a deep pocket.

15   There actually has to be liability.  Liability requires, as

16   Mr. O'Dwyer should know, fault and causation.

17             **THE COURT:**  For the record, I have rendered I think a

18   number of decisions that went into certainly at least the

19   Eleventh Amendment argument, which Mr. O'Dwyer has appealed and

20   the Fifth Circuit will have the final say.  Hopefully,

21   Mr. O'Dwyer was in good faith bringing the suit and I was in

22   good faith in attempting to be intellectually honest in

23   dismissing.  That doesn't mean that I'm omniscient.  The

24   Fifth Circuit will speak.  I did rule in the favor of the state

25   on those.  As far as I know, the state is not even in that,

1  but --

2          **MR. BRUNO:**  By the way --

3          **THE COURT:**  -- it has brought the Road Home, which is

4  a different issue.

5          **MR. BRUNO:**  With respect, your rulings occurred

6  before the lawsuit, the intervention by the state, in August of

7  2007, so the allegation is nonsensical.  The state was

8  dismissed, I think, if memory serves, in 2006, almost a year

9  ago.

10          **THE COURT:**  I honestly don't remember the time.

11          **MR. BRUNO:**  I do know this.  I do know this.  The

12  state was dismissed before the State of Louisiana intervened in

13  the MRGO and I know the state was dismissed before the Road

14  Home litigation was brought.  I know that.

15          **THE COURT:**  Just to make it clear, we are not talking

16  about the merits of the motion to disqualify.  That's for

17  another day.  I or someone will determine whether I should hear

18  that or not.

19          **MR. BRUNO:**  Now, the only reason I bring that up to

20  you is because it is alleged by Mr. O'Dwyer that he wrote me

21  and I should have done something.  Well, the letters, of

22  course, speak for themselves.  They are a matter of the record.

23  Some complaint about the state -- which, as Mr. Treeby

24  correctly points out, has nothing to do Washington Group.  It

25  only relates to the first two of the three issues about which

1   he is making a complaint.

2              I am not the judge.  I am not required to pass

3   on Mr. O'Dwyer's views about conflict.  He has the right to

4   bring motions and he has, in fact, brought those motions.  So I

5   am still absolutely mystified as to how a letter to me suggests

6   that the affidavit is timely.  He has had since he says the

7   veil was lifted, August of last year, to react.  He didn't

8   react.  This cow has left the barn.

9              On the very specific issue of sufficiency, as I

10  said, the mere fact that someone can look at a judge and

11  believe they could read body language better than anybody else

12  in the room, well, I would like to take that course.  Thank

13  you, Judge.

14          THE COURT:  We are kind of at the point where I have

15  to do something here.  I am extremely distressed about counsel

16  coming from a long way on this hearing.  Mr. O'Dwyer has used

17  the word that means a great deal to me, the *integrity* of the

18  system.  I feel like, as a guardian of that, I've got to think

19  about this a bit.  I've got to think about it because I think

20  you're right; I am supposed to decide the timeliness and

21  sufficiency.  If I find it's timely and sufficient, then I send

22  it somewhere else.

23              I am thinking about sending the whole thing to

24  someone else, and I really need to give it some thought as to

25  what is the best thing for this whole deal.  I am extremely

1    sorry that you had to come here and not get your day in court

2    today because I was certainly prepared on that motion.  I am

3    sorry that the affidavit was filed at 4:55 because I had no

4    time until this morning -- as you can see, we had a lot of

5    other business.

6                    I am so concerned about the speed with which

7    this thing is getting done.  We don't want it to be so fast

8    that it's reckless, but we do need it to move along.  Part of

9    that is up to the Court.  I am trying to get a third law clerk

10   for this, which would help us a great deal.  We are really kind

11   of undermanned and "underwomaned" at this point based on the

12   volume we have.  I have made an appeal to the council, for all

13   of you to know, to attempt to get a third law clerk, and I

14   would maybe put another law clerk on the Katrina issue to help

15   us out, to get things out a little quicker, because I can see

16   what's coming and the amount of time this stuff takes, just the

17   volume.  I am going to defer ruling on the timeliness.  I am

18   going to take that under advisement and maybe talk to some of

19   my colleagues.

20                    Yes, sir.

21        MR. O'DWYER:  Your Honor, I do want to clarify one

22   thing for the record.  My decision to file the affidavit

23   yesterday was not made lightly.  The decision to file the

24   affidavit was not made until Friday, the 11th, the same day

25   that I filed the motion for disqualification.

1        **THE COURT:**  Yes, sir.  Thank you.

2              I will take the matter of timeliness and

3    sufficiency under advisement where, one, if I determine I'm

4    going to refer that to someone else or decide it myself, I will

5    try to do that with alacrity.  Thank you very much.  We are

6    adjourned until 3:00.  Thank you.

7        **THE DEPUTY CLERK:**  All rise.

8                   (LUNCHEON RECESS)

9                        * * *

10                    **CERTIFICATE**

11            I, Toni Doyle Tusa, CCR, FCRR, Official Court

12   Reporter for the United States District Court, Eastern District

13   of Louisiana, do hereby certify that the foregoing is a true

14   and correct transcript, to the best of my ability and

15   understanding, from the record of the proceedings in the

16   above-entitled and numbered matter.

17

18

19                        _____

                          Toni Doyle Tusa, CCR, FCRR
20                        Official Court Reporter

21

22

23

24

25