**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION**

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | CIVIL ACTION NO. 05-4182 |
| CONSOLIDATED LITIGATION | * | |
| | * | SECTION "K" |
| | * | |
| PERTAINS TO: | * | MAGISTRATE (2) |
| NO.    05-4181 | * | |
| 06-1885 | * | JUDGE DUVAL |
| 06-4024 | * | |
| 06-4389 | * | MAGISTRATE WILKINSON |
| 06-5771 | * | |
| 06-5786 | * | |
| 06-6099 | * | |
| 07-0206 | * | |
| 07-3500 | * | |
| 07-3612 | * | |
| 07-5023 | * | |
| 07-5040 | * | |

* * * * * * * * * * * * * * * * * *

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR DISQUALIFICATION OR
RECUSAL OF JUDGE DUVAL**

The recondite niceties of contempt law coupled with the strange milieu of a judge passing on the clarity of his own orders, which had to be substantiated largely by his own legal staff, should make us particularly sensitive to the demands of justice, and more particularly, to the appearance of justice.  The guarantee to the [litigants] of a totally fair and impartial tribunal, and the protection of the integrity and dignity of the judicial process from any hint or appearance of bias is the palladium of our judicial system. United States v. Columbia Broadcasting System, Inc., 497 F.2d 107 (5th Cir. 1974).  (insert added).

The facts relevant to the motion being the subject of this memorandum appear in three (3) documents already of record:  Record Document Nos. 10431, 10615 and 10759, being Ashton O'Dwyer's Affidavit of Personal Bias and Prejudice of a Judge filed on January 15, 2008, the transcript of proceedings held in Open Court on January 16, 2008, and the Court's Order and Reasons of January 17, 2008.  The facts contained in those Record Document Nos. will not be repeated here.

Although it is as unpleasant for undersigned counsel for movers as it must be unpleasant for the Court, the motion being the subject of this memorandum is one for disqualification or recusal of Your Honor from the "Victims of KATRINA" litigation as a result of personal bias, prejudice and/or partiality.  As was the case in United States v. Miranne, 688 F.2d 980 (5th Cir. 1982), the litigants have filed a motion for disqualification or recusal pursuant to both 28 U.S.C. § 144 and 28 U.S.C. § 455(a).[1]  As the Fifth Circuit stated in United States v. Miranne, supra:

> As stated in *Davis v. Board of School Commissioners* of *Mobile County*, 517 F.2d 1044, 1051 (5th Cir. 1975):
>
> "Once the motion is filed under § 144, the judge must pass on the legal sufficiency of the affidavits, but may not pass on the truth of the matter alleged."
>
> In order to be legally sufficient, the affidavit must meet, among other requirements, the following test:
>
> > "1.  The facts must be material and stated with particularity;
> > "2.  The facts must be such that, if true they would convince a reasonable man that a bias exists;
> > "3.  The facts must show the bias is personal, as opposed to judicial, I nature."
> > (citations omitted).  688 F.2d at p. 985.

---

[1] Movers also have invoked 28 U.S.C. §455(b)(1) in the body of their motion, because that statute was addressed by the Court in its Order and Reasons of January 17, 2008.  (Record Document No. 10615).  If the Court is recused pursuant to 28 U.S.C. § 455(a), then it is not necessary to reach recusal under 28 U.S.C. § 455(b)(1).

Thus, the standard for recusal pursuant to 28 U.S.C. § 144 is whether the affidavit alleges facts which support the contention that "an actual and present bias existed".  688 F.2d at p. 985.

In <u>United States v. Miranne</u>, supra, United States Court of Appeals for the Fifth Circuit also addressed 28 U.S.C. § 455(a), as follows:

> Section 455(a) is a self-enforcing statutory standard for disqualification of a judge.  *Davis*, supra at 1051.  It is broader than § 144 in that it requires a judge to disqualify himself when "his impartiality might reasonably be questioned."  Thus, under § 455(a) an actual demonstrated prejudice need not exist in order for a judge to be required to recuse himself.  688 F.2d at p. 985.

Because the disclosures which resulted in the bringing of the motion being the subject of this litigation impact the very integrity of this litigation, movers will now expand on the foregoing general rules with the following axioms developed from a detailed analysis of cases emanating from the Fifth Circuit in matters of disqualification and recusal of Judges.

### 28 U.S.C. §144 AND 28 U.S.C. §455(a) <br> SHOULD BE CONSIDERED *IN PARI MATERIA*

- 28 U.S.C. § 144 and 28 U.S.C. § 455(a) should be considered *in pari materia*;  the test for disqualification or recusal may be considered the same under both.

<u>Davis v. Board of School commissioners of Mobile County</u>, 517 F.2d 1044 (5th Cir. 1975).

## MOTIONS FOR RECUSAL
## PURSUANT TO 28 U.S.C. §144 OR
## 28 U.S.C. §455(a) ARE WITHIN THE
## SOUND DISCRETION OF THE
## <u>DISTRICT JUDGE</u>

•      A motion for recusal is within the discretion of the District Judge, and denial of such a motion will not be reversed on appeal unless the Judge has abused his discretion.

<u>U.S. v. Anderson</u>, 160 F.3d 231 (5th Cir. 1998) and cases cited therein.


## THE GOAL OF THE DISQUALIFICATION
## STATUTES IS TO PROMOTE PUBLIC
## <u>CONFIDENCE IN THE JUDICIAL SYSTEM</u>

•      The goal of the disqualification statutes, is to "promote public confidence in the judicial system by avoiding even the appearance of partiality" even though no actual partiality exists, as is the case in which a judge is pure of heart and incorruptible.

<u>Health Services Acquisition Corp. v. Liljeberg</u>, 796 F.2d 796, 800, 802 (5th Cir. 1986).

<u>Chitimacha Tribe v. Harry L. Laws Co.</u>, 690 F.2d 1157, 1165 (5th Cir. 1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69 (1983).

<u>Henderson v. Department of Public Safety and Corrections</u>, 901 F.2d 1288 (5th Cir. 1990).


## AVOIDING EVEN THE APPEARANCE
## <u>OF IMPROPRIETY IS IMPORTANT</u>

•      Revisions made in 1974 to 28 U.C.C. § 455 dealing with disqualification of Judges require the grounds for bias and prejudice to be evaluated on an objective basis, so that what matters is not the REALITY of bias or prejudice, but its APPEARANCE; recusal is required whenever impartiality might reasonably be questioned.

<u>Liteky v. U.S.</u>, 114 S.Ct. 1147 (1994).

- The purpose of 28 U.S.C. § 455(a), and the principle of recusal itself, is not just to prevent ACTUAL partiality, but to "avoid even the appearance of partiality".

Republic of Panama v. The American Tobacco Company Inc., 217 F.3d 343 (5th Cir. 2000) and cases cited therein.

- Avoiding the appearance if impropriety is as important in developing public confidence in the judicial system as avoiding impropriety itself.

U.S. v. Jordan, 49 F.3d 152 (5th Cir. 1995).

- Because the goal of the recusal statutes is to exact the appearance of impartiality, recusal may be mandated even though no actual partiality exists.

U.S. v. Bremers, 195 F.3[rd] 221 (5th Cir. 1999).

In re Continental Airlines Corp., 901 F.2d 1259 (5th Cir. 1990) and cases cited therein.

U.S. v. Miranne, 688 F.2d 980 (5th Cir. 1982).

- Under 28 U.S.C. § 455(a), if a judge concludes that his impartiality might reasonably be questioned, then he should find that the statute requires his recusal.

U.S. v. Anderson, 160 F.3[rd] 231 (5th Cir. 1998) and cases cited therein.

### 28 U.S.C. § 455 (a) MANDATES RECUSAL IN ANY SITUATION IN WHICH A JUDGE'S PARTIALITY MIGHT REASONABLY BE QUESTIONED

- 28 U.S.C. § 455(a) mandates recusal in any situation in which a Judge's partiality might reasonably be questioned.

In re Continental Airlines Corp., 901 F.2d 1259 (5th Cir. 1990);  Whitehurst v. Wright, 592 F.2d 834 (5th Cir. 1979).

## <u>REASONABLE MAN STANDARD</u>

•      The recusal inquiry for a judge based upon perceived lack of impartiality must be made from the perspective of a reasonable, thoughtful objective observer who is informed of all the surrounding facts and circumstances.

<u>Cheney v. U.S. District court for the District of Columbia</u>, 124 S.Ct. 1391 (2004).

<u>Trust Company of Louisiana v. N.N.P. Inc.</u>, 104 F.3rd 1478 (5th Cir. 1997).


•      In determining whether a Federal Judge should recuse himself or herself, the relevant inquiry is whether a reasonable man, were he to know all of the circumstances, would harbor doubts about the Judge's impartiality.

<u>Patterson v. Mobil Oil Corp.</u>, 335 F.3rd 476 (5th Cir. 2003).

<u>IQ Products Co. v. Pennzoil Products Co.</u>, 305 F.3rd 368 (5th Cir. 2002);

<u>Trevino v. Johnson</u>, 168 F.3rd 173 (5th Cir. 1999);

<u>U.S. v. Anderson</u>, 160 F.3rd 231 (5th Cir. 1998);

<u>Health Services Acquisition Corp. v. Liljeberg</u>, 796 (5th Cir. 1986).


•      Stated another way, in order to determine whether a Court's impartiality is reasonably in question, as required in order to compel a Judge to disqualify himself or herself, the objective inquiry is whether a well-informed, thoughtful and objective observer would question the Court's impartiality.

<u>Trust Co. of Louisiana v. N.N.P. Inc.</u>, 104 F.3rd 1478 (5th Cir. 1997).

- The analysis must be guided, not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the facts and circumstances of the particular claim.

<u>Republic of Panama v. American Tobacco Co., Inc.,</u> 217 F.3rd 343 (5th Cir. 2000).

## EXTRA-JUDICIAL PERSONAL BIAS OR
## PREJUDICE IS REQUIRED FOR DISQUALIFICATION

- Under the two statutes which govern recusal of U.S. District Court Judges, based on bias, prejudice or partiality, the alleged bias must be personal, or extra-judicial, as distinguished from judicial in nature.  To be disqualifying, the alleged bias or prejudice of a judge must be "derived from an extra-judicial source", and not based upon in-Court rulings.

<u>U.S. v. Scroggins</u>, 485 F.3d 824 (5th Cir. 2007).

<u>In re Corrugated Container Antitrust Litigation</u>, 752 F.2d 137 (5th Cir. 1985).

<u>United States v. Phillips</u>, 664 F.2d 971 (5th Cir. 1981).

## EVEN JUDICIAL BIAS AND PREJUDICE
## WARRANTS RECUSAL UNDER CERTAIN CIRCUMSTANCES

- An exception to the general rule that the disqualifying bias or prejudice must stem from extra-judicial sources exists in the situation in which such pervasive bias and prejudice is shown by judicial conduct as would constitute bias and prejudice against a party.

<u>U.S. v. Phillips</u>, 664 F.2d 971 (5th Cir. 1981).

- In other words, the fact that a judge's remarks or behavior take place in the judicial context does not exclude them from scrutiny and from requiring recusal if they reflect such pervasive bias and prejudice as would constitute bias against a party.

Phillips v. Joint Legislative Committee on Performance and Expenditure Review of State of Mississippi, 637 F.2d 1014 (5th Cir. 1981).

- Recusal can be based on "extra-judicial" factors, such as bias based on family relationships or other extra-judicial influences, or "intra-judicial factors", such as bias based on facts introduced or events occurring in the course of the current proceedings.

Stringer v. Astrue, 2007 WL 3151804 (5th Cir.)

- In the Fifth Circuit, adverse judicial rulings will support a claim of bias and prejudice if they reveal an opinion based on an extra-judicial source, or if they demonstrate such a high degree of antagonism as to make fair judgment impossible.

U.S. Scroggins, 485 F.3rd 824 (5th cir. 2007);

In re Chevron U.S.A., Inc., 121 F.3rd 163 (5th Cir. 1997).

## BIAS OR PREJUDICE TOWARDS
## A PARTY VERSUS AN ATTORNEY[2]

- To serve as a basis for a motion to recuse, a Judge's personal bias or prejudice must be directed against a party; bias for or against an attorney who is not a party is not enough to require disqualification, unless it can also be shown that such controversy would demonstrate bias for or against the party itself.

U.S. v. Edwards, 39 F.Supp. 2d 692 (M.D. La. 1999).

---

[2] Although O'Dwyer, who has filed an affidavit of personal bias or prejudice pursuant to both 28 U.S.C. § 144 and 28 U.S.C. § 455, is an attorney, he also is a party.  See Civil Action Nos. 07-5023 and 07-5040. Accordingly, this legal analysis of the law applicable to bias, prejudice and/or partiality towards a "party versus lawyer for a party" is made in an abundance of caution only.

•      For bias against an attorney to require disqualification of a trial judge, it must be of a continuing and personal nature and not simply bias against an attorney or in favor of another attorney because of his conduct.

Henderson v. Department of Public Safety and Corrections, 901 F.2d 1288 (5th Cir. 1990).


•      A Court should determine disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel.  Bias against a party's attorney does not require disqualification unless it can be shown that such a controversy would demonstrate a bias for or against the party itself.  However, occasionally exceptional circumstances do arise where a judge's attitude towards a particular attorney is so hostile that the judge's impartiality toward the client may reasonably be questioned.

Trevino v. Johnson, 168 F.3rd 173 (5th Cir. 1999).

### ESTABLISHING BIAS OR PREJUDICE REQUIRES MORE THAN WHAT CAN BE EXPECTED OF IMPERFECT MEN AND WOMEN, EVEN THOSE CONFIRMED AS <u>FEDERAL JUDGES</u>

•      Not establishing bias or partiality of a judge are expressions of impatience, dissatisfaction, annoyance and even anger.

Matassarin v. Lynch, 174 F.3rd 549 (5th Cir. 1999).

### WHERE THE QUESTION OF RECUSAL IS A CLOSE ONE, THE BALANCE TIPS <u>IN FAVOR OF RECUSAL</u>

•      If the question of recusal is a close one, the balance tips in favor of recusal.

<u>Republic of Panama v. The American Tobacco Company, Inc.</u>, 217 F.3rd 343 (5th Cir. 2000) and cases cited therein.

**AN APPELLATE COURT'S REVIEW
OF A RECUSAL ORDER IS FACT INTENSIVE
AND IS REVIEWED ON AN ABUSE OF
<u>DISCRETION STANDARD</u>**

•      Appellate review of a recusal order is "extremely fact intensive and fact bound", with the District Judge's denial of a motion to recuse being reviewed by an abuse of discretion standard.

<u>Republic of Panama v. The American Tobacco Company, Inc.</u>, 217 F.3rd 343 (5th Cir. 2000);

<u>U.S. v. Bremers</u>, 195 F.3rd 221 (5th Cir. 1999).

With these legal axioms in mind, movers will now argue why Your Honor should recuse himself.

**<u>ARGUMENT</u>**

Undersigned counsel for movers (sometimes referred to herein as "O'Dwyer") warrants that he has been entirely above-board and ethical in all matters pertaining to this litigation. In his Affidavit of Personal Bias filed of record in these proceedings on January 15, 2008 (Record Document No. 10431) he stated that all notions about Judge Duval's relationship with Mr. Fayard[3] changed on August 29, 2007, when Mr. Fayard appeared as counsel of record for the State of Louisiana in a number of litigations filed in this Court all arising out of Hurricane KATRINA. While the Court's Order and Reasons of January 17, 2008 (Record Document No. 10615, accurately reflects that "The Court disclosed the friendship with Mr. Fayard at the outset of the *KATRINA* umbrella on

---

[3] The only notions which O'Dwyer had were those stemming from Judge Duval's disclosures on the record on March 24, 2006, quoted verbatim in paragraph Nos. 9, 10 and 11 of O'Dwyer's affidavit (Record Document No. 10431).

March 24, 2006, in open court when Mr. O'Dwyer was present", a careful review of the Court's disclosures reveals that the disclosures focused as much on the Court's employing Ms. Caroline Fayard (Mr. Fayard's daughter) as a Law Clerk as it did on the Court's longtime friendship with her father.[4]  O'Dwyer reiterates what he said in his Affidavit of Personal Bias, namely that none of the disclosures made by Judge Duval on March 24, 2006 were believed, at that time, to have any bearing on Judge Duval's ability to be fair and impartial.  However, that is not to say that O'Dwyer did not attempt to learn "more" in connection with the exercise of "due diligence" on behalf of his clients.  More to the point, just a few days after the March 24, 2006 Status Conference, during which the Court made its disclosures on the record, O'Dwyer addressed a facsimile to Gerald E. Meunier, Esq., who at that time was acting in the capacity of "Scribe", with an open copy to Joseph Bruno, Esq., who later was appointed by the Court as Plaintiffs Liaison Counsel.  A copy of that letter is appended hereto and marked for identification as Exhibit No. 1.[5]  In that facsimile, on page 8, item no. 4, O'Dwyer identified the following issue which he wanted to be addressed by Messrs. Meunier and Bruno:

> 4.     The various plaintiffs' attorneys involved have got to meet in order to decide, among ourselves, who the realistic "universe" of defendants should be.  I have stated publicly that I believe the Governor and the Mayor belong in jail.  Others either want to represent one or both, or don't want to sue them at all.  Mr. Bruno and others have joined a host of corporate defendants whom I have not sued.  I do not know the factual bases for liability on the part of many of those corporate defendants.  I don't see how we can go forward without a detailed discussion of who has sued whom, and

---

[4] No disclosures of any type were made by the Court with respect to any relationship between the Court's other Law Clerk, Ms. Janet Daley, who also happens to be Judge Duval's spouse, and with Mr. Fayard or with Ms. Caroline Fayard, a "sister" Law Clerk.

[5] The primary purpose of the letter was to assist Mr. Meunier in preparing for a meeting with his counterpart "Scribe" on the defense side the next day.

why and for what, and whether we as a group should expand or streamline our original "hit lists".[6]

At the "hearing" held *sua sponte* on January 16, 2008, undersigned counsel for plaintiffs stated that revelations made on the record on the second anniversary of KATRINA "lifted the veil".  More particularly:

> On August 29, 2007, lawyers, including friends of yours who are committee members, showed up representing the interests of the State of Louisiana for an affirmative claim of $200 billion.  For me, that lifted the veil, Your Honor.  It explained to me what I have been living through, sometimes as a lone ranger, for the past two-plus years, and I didn't like what I saw.
>
> Certain lawyers, while they were purporting to be discharging the responsibilities you imparted to them, were sleeping with the devil.  They continue to do it without any apologies to anyone, and they are singling me out as being a burr under their saddle or someone they can't get along with, who takes positions that are different from everyone else's positions in the litigation.
>
> There is a conflict of interests here.  I have brought it to the Court's attention.  I believe that my concerns about Your Honor's ability to be fair and impartial, when it comes to matters involving me and Mr. Fayard and his clients, are real issues.
>
> (Record Document No. 10759, pp. 30-31).

None of those issues were addressed by the Court in its Order and Reasons of January 17, 2008, issued by the Court within a scant twenty-four (24) hours of the "hearing" on the timeliness and sufficiency of O'Dwyer's Affidavit of Personal Bias, and notwithstanding a respectful admonition to the Court that the issue of recusal was one

---

[6] The fact that O'Dwyer had the State of Louisiana, its branches of government, department heads, etc. in its sights was also addressed on pages 9, 10, 11 and 14 of the facsimile to Messrs. Meunier and Bruno.  No information was ever given O'Dwyer by Messrs. Meunier or Bruno concerning actual representation of the State of Louisiana, et al., or from any other Member of the Plaintiffs Liaison Committee or Sub-Committees until August 29, 2007, when a number of Committee and Sub-Committee Members appeared as counsel of record for the State of Louisiana in litigation filed in this Court.

"that I hope Your Honor, Ms. Daley and others spend some long soul-searching time

about". (Record Document No. 10759, p. 32).

O'Dwyer avers that the Order and Reasons constitute a disingenuous document.

While purporting to be a well-reasoned judicial determination that O'Dwyer's affidavit

was found to be "untimely" as well as "legally insufficient", a close review of the Order

and Reasons does not justify either of those erroneous conclusions.

The portions of the Order and Reasons dealing with the timeliness of O'Dwyer's

Affidavit of Personal Bias are as follows:

> The Court finds that clearly that (sic) the affidavit is not timely with
> respect to any matters involving Mr. O'Dwyer including the above-
> mentioned sanction motions set for hearing yesterday, the intervening
> plaintiffs objections to and motions to review Magistrate's Order on
> Motions (Doc. 9753) and Motion for Disqualification and Other Relief
> (Doc. 10331).
>
> *   *   *
>
> The Court disclosed the friendship of Mr. Fayard at the outset of the
> Katrina umbrella on March 24, 2007, in Open Court when Mr. O'Dwyer
> was present. Mr. O'Dwyer stated in Open Court on January 16, 2008, that
> he did not have any problem with that relationship until August 29, 2007,
> when Mr. Fayard appeared as one of the attorneys representing the State
> of Louisiana in the "Road Home" litigation filed on that date.[7]   A
> tremendous amount of time, expense and judicial resources have been
> expended by this Court since August 29, 2007. Therefore, the motion is
> substantially untimely. Additionally, at the very start of this litigation, a
> full-blown recusal motion was brought by other litigants seeking the
> Court's recusal based essentially on personal bias. Having been a citizen
> of New Orleans under § 455, which motion this Court denied, which
> ruling was affirmed by the United States Court of Appeals for the Fifth

---

[7] Technically, this sentence by the Court is inaccurate. While Mr. Fayard represents the State of Louisiana in the "Road Home" litigation, O'Dwyer's and his clients' objection to the conflict of interests which Mr. Fayard has by virtue of his serving on Committees in this litigation, and thus having a duty to claimants and plaintiffs, and his simultaneous representation of the State of Louisiana, only disclosed on August 29, 2007, focuses primarily on Civil Action No. 07-5040, in which the State is making an affirmative claim against the United States of America for $200 billion dollars in property damages allegedly sustained by the State as a result of the levee breaches and retaining wall failures, events in which O'Dwyer and his clients aver that the State of Louisiana was a joint tortfeasor with the United States.

> Circuit, and which (sic) writs were refused by the United States Supreme Court.
>
> As to the alleged personal bias, the allegations contained in the affidavit do not specify any action by the Court in the recent past that would evidence bias or prejudice except for rulings by the Court to which Mr. O'Dwyer takes exception.  It should be noted that he has appealed several of these rulings.  Therefore, the allegations are untimely.

Plaintiffs respectfully submit that the timeliness of the O'Dwyer affidavit should be viewed in the context of the integrity of this litigation and the impartiality of the judiciary, both of which have been placed squarely at issue in this case by virtue of Mr. Fayard's representation of the State of Louisiana, and his failure to disclose that relationship to the Court or to the other litigants until August 29, 2007, in the meantime serving on Committees appointed by the Court, and having obligations to claimants and plaintiffs as a result.  O'Dwyer's affidavit demonstrates that although he reasonably became "suspicious" when the names of Messrs. Becnel and Fayard, and other Committee Members, appeared on pleadings filed on behalf of the State of Louisiana on August 29, 2007, he still is not smart enough to have everything "figured out".  (See Record Document No. 10646, p. 3).  Thereafter, although O'Dwyer's suspicions may have been aroused, the Affidavit of Personal Bias clearly demonstrates that after calling for the resignations of Messrs. Becnel and Fayard from Committees, but to no avail, he thereafter expressed concerns about the ability of the Court to be fair and impartial, and for over a month addressed those concerns in writing with Plaintiffs Liaison Counsel, Mr. Bruno, between November 8, 2007 and December 16, 2008, all to no avail.  While O'Dwyer concedes, as the Court stated in its Order and Reasons, "A tremendous amount of time, expense and judicial resources have been expended by this Court'. . .",[8] the

_____

[8] However, O'Dwyer disagrees with the remainder of the sentence, "since August 29, 2007".

decisions to file the Motion for Disqualification of Counsel and the Affidavit of Personal

Bias (Record Document Nos. 10331 and 10431) were not taken lightly.  O'Dwyer

respectfully submits that if Messrs. Becnel and Fayard had complied with their

professional obligations under the Rules of Professional Conduct between the time that

they entered into negotiations with the State of Louisiana for its representation and

August 29, 2007, and if they had disclosed their representation of the State to Mr. Bruno

or to other Members of the Plaintiffs Liaison Committee, and if those Committee

Members had responded to O'Dwyer's specific written inquiries of March 29, 2006, then

the "tremendous amount of time, expense and judicial resources" need not have been

expended, at least not by the same "tainted" individuals who are now crying "foul".

As to the "legal insufficiency" of the affidavit, the following statements from the

Order and Reasons of January 17, 2008, are relevant:

> The Court additionally finds that the affidavit is not sufficient to call into
> question the Court's personal bias or prejudice either against Mr.
> O'Dwyer or in favor of any adverse party, in general, the allegations
> contain hearsay, complaints about adverse rulings, and objections to the
> Court's body language.  Mr. O'Dwyer seems to take exception to the fact
> that the Court has dismissed the State of Louisiana on the basis of the 11th
> Amendment all of which occurred prior to Mr. Fayard's appearance on
> behalf of the State of Louisiana.  In essence, the affidavit at best could be
> characterized as brought by a party who is dissatisfied with the Court's
> decisions.

O'Dwyer takes exception to those statements by the Court which, with all due

respect, deftly avoid the focal issue, namely the Court's extra-judicial relationship of

long-standing with Mr. Fayard, its bias in favor of Mr. Fayard and his client, the State of

Louisiana, which relationship was only disclosed to the undersigned on August 29, 2007.

While O'Dwyer did make a reference to "body language" at the "hearing" on January 16,

2008 (Record Document No. 10759, p. 25), body language is not the focus of the

Affidavit of Personal Bias or of this Motion for Disqualification or Recusal.  Rather, the focus of the affidavit and this motion is the following:

> The integrity of this litigation which has been called into question by virtue of an extra-judicial source of bias and prejudice arising out of the Court's long-time friendship with Mr. Fayard whose professional ethics and professional integrity have been placed at issue in this litigation as a result of his Membership on Committees while simultaneously representing the interests of the State of Louisiana, and failing to disclose his relationship with the State to the Court or other counsel prior to August 29, 2007.

Human nature plays a big part in addressing the merits of this motion.  How many times has the Court (or the litigants or their attorneys) heard someone say, "Don't say anything about my friends!".   Well, not only have O'Dwyer and his clients "said anything" about the Court, they have also "said anything" about a close friend of the Court, Mr. Fayard, whose professional ethics and integrity have been called into question as a result of his double-dealing and nefarious conduct while serving on Committees in this litigation on the one hand, but simultaneously representing the State of Louisiana on the other hand, and failing to disclose his relationship with the State prior to August 29, 2007.

The quandary which faces judges who want "to do the right thing" was described very aptly by the Fifth Circuit in U.S. v. Jordan, 49 F.3rd 152 (5th Cir. 1995):

> Judges must ascertain how a reasonable person would react to the facts. Problematic is the fact that judges do not stand outside of the judicial system;  they are intimately involved in the process of obtaining justice. Judges who are asked to recuse themselves are reluctant to impugn their own standards.  Likewise, judges sitting in review of others do not like to cast aspersions.  `Yet drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse under the appearance of impropriety standard under § 455(a) into a demand for proof of actual impropriety.'  *Id.*[9]  Accordingly, we are mindful that an

---

[9] In re Mason, 916 F.2d 384 (7th Cir. 1990).

observer of our judicial system is less likely to credit judges' impartiality than the judiciary.

Plaintiffs aver that the facts and circumstances here prove, not by a preponderance of the evidence, but beyond any shadow of a doubt, that actual bias, prejudice and/or partiality exists in Your Honor, evident in many ways through the record of this litigation, virtually from day one, and continuing through the present time. (E.g., Record Document Nos. 10615 and 10718). Movers aver that, by itself, should warrant recusal. O'Dwyer also avers that, even if the Court were to assert that it had made a good faith determination that actual bias, prejudice and partiality does not exist, then the Court, in order to demonstrate its good faith, must conclude that the public's confidence in the integrity of this litigation and in the impartiality of the judiciary would be reasonably called into question, warranting that Your Honor recuse himself in this matter.

## CONCLUSION

> "The right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they preside". U.S. v. Jordan, 49 F.3d 152 (5th Cir. 1995).

If Your Honor had done the "right" thing following the "hearing" on January 16, 2008, then bringing this motion would not have been necessary. However, Your Honor not only did not do the right thing, he did the absolutely wrong thing by determining that undersigned counsel's affidavit was both untimely and legally insufficient in less than 24 hours. Your Honor now has another opportunity make things "right".

The "world" is watching.

Respectfully submitted,

**LAW OFFICES OF**
**ASHTON R. O'DWYER, JR.**
**Counsel for Plaintiffs**

**By:     S/Ashton R. O'Dwyer, Jr.**
         **Ashton R. O'Dwyer, Jr.**
         **Bar No. 10166**
         **821 Baronne Street**
         **New Orleans, LA 70113**
         **Tel. 504-679-6166**
         **Fax. 504-581-4336**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record via Electronic filing, this 28th day of January 2008.


         S/Ashton R. O'Dwyer, Jr.