**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
ONE CANAL PLACE
365 CANAL STREET
SUITE 2670
NEW ORLEANS, LA 70130
Telephone: (504) 561-6561
Facsimile: (504) 561-6560
E-Mail: AROD@odwyerlaw.com**

March 29, 2006

<u>**VIA FACSIMILE**</u>
**504-528-9973**

Gerald E. Meunier, Esq.
Gainsburgh, Benjamin
1100 Poydras Street
Suite 2800
New Orleans, LA 70163-2800

   Re: Maureen O'Dwyer, et al. vs.
      The United States of America, et al.
      No. 05-4181 "K" (3)
      U.S.D.C., Eastern District of Louisiana

Dear Jerry:

  The following are my thoughts for your consideration in advance of your meeting with Ralph Hubbard tomorrow. I would still like the opportunity to discuss these topics, and other ideas, with plaintiffs' counsel in KATRINA litigation in advance of your submission of a written report to Judge Duval and Magistrate Wilkinson on April 4th.

  1) My brightest idea for "out-of-the-box-thinking" is for the Court to take the bull by the horns and to fast-track class certification(s), and to schedule trials on the issue of damages, as soon as possible for representative groups of claimants. With the proper "profiles" for plaintiffs established, and damage awards in various ranges (like

March 29, 2006
Page 2

"bracketing" a target with artillery rounds, before ordering "fire-for-effect")determined, this idea might (with emphasis on the "might") facilitate settlement of claims.

The broad categories of claimants which I have identified in my litigation, C.A. No. 05-4181, are:

> Plaintiffs are representative of the following classes of people, *inter alia*:
>
> A. Survivors of human beings who died as a result of government's intentional and negligent malfeasance, misfeasance and non-feasance prior to and after Hurricane KATRINA.
>
> B. Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered bodily injury, mental suffering and emotional distress as a result of government's intentional and negligent malfeasance, misfeasance and non-feasance prior to and after Hurricane KATRINA.
>
> C. Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered loss of or damage to property as a result of government's intentional and negligent malfeasance, misfeasance and non-feasance, whether by flood, fire or governmental sanctioning of urban terrorism. See *infra*.
>
> D. Citizens and/or residents of the Parish of Orleans, State of Louisiana, and their survivors, who suffered death, bodily injury, mental suffering, and emotional distress as a result of government's *de facto* sanctioning of urban terrorism which commenced even before Hurricane KATRINA had

    abated, and continued, virtually unchecked, until the arrival of the United States Military in the City of New Orleans, long after KATRINA had abated.

E. Citizens and/or residents of the Parish of Orleans, State of Louisiana, who sustained mental suffering and emotional distress as a result of government's *ultra vires* acts such as claimed "mandatory evacuation due to exigent circumstances", which is not a legal concept sanctioned by the Constitution of the United States of America, and deprivation of food and water to hungry and thirsty so-called "hold-outs", who remained in the City because the U.S. Constitution gives them the right to bear arms and protect their property at their own risk, and who were entirely self-sufficient, did not increase government's burden during admittedly trying times, and performed services for the community which government proved incompetent to perform.

F. Citizens and/or residents of the Parish of Orleans, State of Louisiana, who suffered environmental damages akin to contamination of natural resources under the federal and state legislation which make provision for Natural Resource Damage Assessments and damages recoverable under the Oil Pollution Act of 1990, the Louisiana Oil Spill Prevention and Recovery Act and CERCLA, among others.

G. The same categories of persons, firms and corporations identified in Article II(A) through (F), supra, but who are citizens and/or residents of the Parish of Jefferson, State of Louisiana, and who suffered loss and/or

March 29, 2006
Page 4

        damage in the Parish of Jefferson, State of Louisiana, or experienced the threat of loss or damage in Jefferson Parish.

H.   [1]The same categories of persons, firms and corporations identified in Article II(A) through (G),[2] <u>supra</u>, but who suffered loss and/or damage, or who experienced the threat of loss and/or damage, as a result of the defective design, construction, maintenance and inspection of the Mississippi River Gulf Outlet, the Gulf Intracoastal Waterway, and the Inner Harbor Navigation Canal a/k/a the "Industrial Canal", and their environs and levees, by the United States Army Crops of Engineers and other parties defendant named herein. See <u>infra</u>.

I submit that the foregoing are "reasonable" categories of claimants, and are applicable to all KATRINA litigation, regardless of where each claimant lived in or near the City, and regardless of race, color, creed or educational or financial background.

2.     Either Judge Duval is going to have to accommodate us or we are going to have to reach some accommodation with counsel for the United States of America, but something has got to be done to allow our clients to "short-stop" the administrative claims procedure arguably required by the provisions of the Federal Tort Claims Act and other Federal legislation. In a Second Supplemental Memorandum in Opposition to the Government's Motion to Dismiss in C.A. No. 05-4181, I have argued as follows:

---

[1]   The Complaint, as amended, erroneously identified this paragraph as "G".
[2]   The Complaint, as amended, erroneously identified this letter as "F".

March 29, 2006
Page 5

## DISMISSAL OF PLAINTIFFS' CLAIMS AGAINST THE GOVERNMENT WOULD NOT FURTHER THE REASON(S) WHY CONGRESS PASSED ADMINISTRATIVE CLAIM PROCEDURES

The reasons for the administrative claims procedure in the Federal Tort Claims Act are succinctly set forth in the "lead" case cited by the Government in support of dismissal for lack of subject-matter jurisdiction, namely McNeil v. United States, 508 U.S. 106, 113 S.Ct. 1980 (1993):[3]

> "Prior to 1966, FTCA claimants had the option of filing suit in federal court without first presenting their claims to the appropriate federal agency. Moreover, federal agencies had only limited authority to settle claims. (Citations omitted). Because of the vast majority of claims ultimately were settled before trial, the Department of Justice proposed that Congress amend the FTCA to require all claims to be presented to the appropriate agency for consideration and possible settlement before a Court action could be instituted. This procedure would make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage. The agency would have the best information concerning the activity which gave rise to the claim. Since it is the one directly concerned, it can be expected that the claims which are found to be meritorious can be settled more quickly without the need for filing suit and possible expensive in time-consuming litigation. (Citations omitted). The Senate Judicial Committee further noted that "the improvements contemplated by [the 1966 amendments] would not only benefit private litigants, but would also be beneficial to the Courts, the agencies, and the Department of Justice itself." (Citations omitted). McNeil, supra, Fn. 7.

---

[3] Incidentally, the plaintiff in McNeil was a federal prisoner, who was an inmate at a federal penitentiary. Does the Government really equate plaintiffs in this action with a convicted felon?

March 29, 2006
Page 6

The McNeil Court went on to explain that the administrative claims procedure would "reduce congestion in the Courts", because "every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions". 113 S.Ct. at p. 1984. It is respectfully submitted that if any parties have been "burdened" in KATRINA litigation, it is the plaintiffs (and their counsel) who have been burdened by multiple motions, memoranda, supplemental memoranda, reply memoranda, and the like, filed by the Government, not only in this action, but in Civil Action Nos. 05-4237 and 05-4419,[4] as well. In other words, if the Department of Justice has felt any increased "burden" because of this case, then the DOJ's "burden" has been entirely self-inflicted.

The Fifth Circuit also has weighed in, emphasizing that the administrative claims procedure makes it possible for the Government to expedite the fair settlement of tort claims asserted against the United States. Gregory v. Mitchell, 634 F.2d 499 (5th Cir. 1981). If "the fair settlement of tort claims" is really of interest to the Government in this case, then why hasn't the Government "reached out" to plaintiffs with firm proposals to pay them just compensation for the damages which they have sustained as a result of Government ineptitude and malfeasance?

---

[4] Incidentally, thus far the Government is 0 for 3 on motions against plaintiffs or oppositions to plaintiffs' motions in KATRINA litigation to date.

March 29, 2006
Page 7

Plaintiffs respectfully submit that requiring dismissal and re-filing under the circumstances of this case would further no real legal purpose whatsoever.

Although I have perfected administrative claims in writing for virtually 98% of the people I currently represent, I am attaching the Corps of Engineers' recent "response" to my administrative claims, together with my reply. Note that I am urging Judge Duval to agree with me that the COE's letter should be treated as a denial of my clients' administrative claims.

Perhaps the most direct way to address this perplexing issue "head-on" is to request that the Government simply stipulate to the denial of each and every potential claim by each and every potential plaintiff in the Greater New Orleans Metropolitan Area. Certainly, the Congressional intent for administrative claims as interpreted by the Supreme Court and the 5th Circuit, <u>supra</u>, will not be furthered by making every potential plaintiff and their attorneys jump through ridiculous and unnecessary hoops, having no justification if the true function of the Court is to administer justice.

Parenthetically, perhaps the biggest "lie" told in the case to date is the suggestion in a recent Court filing by the Government (Record Document No. 159 in C.A. No. 05-4181) that it is the Government's wish that "[this] litigation can proceed normally and expeditiously". As the COE's letter re my clients' administrative claims makes clear, "normally and expeditiously" means dismissal to the Government!

March 29, 2006
Page 8

3.     Early identification of which plaintiffs' attorneys wish to pursue the United States of America as a defendant should be made. To my knowledge, Mr. Bruno's claims against the United States in <u>Greer</u> (C.A. No. 05-5709) have been dismissed without prejudice. If that is true, then the only suit (other than my own) in which the Government has been sued is <u>Tauzin</u> (C.A. No. 06-0020), but the Government has already filed a Motion to Dismiss. A Motion to Dismiss my suit also is pending before Judge Duval, but has not yet been ruled upon.

4.     The various plaintiffs' attorneys involved have got to meet in order to decide, among ourselves, who the realistic "universe" of defendants should be. I have stated publicly that I believe the Governor and the Mayor belong in jail. Others either want to represent one or both, or don't want to sue them at all. Mr. Bruno and others have joined a host of corporate defendants whom I have not sued. I do not know the factual bases for liability on the part of many of those corporate defendants. I don't see how we can go forward without a detailed discussion of who has sued whom, and why and for what, and whether we as a group should expand or streamline our original "hit lists".

5.     All viable defendants should be subjected to an Order issued by the Court, <u>sua sponte,</u> requiring the production of liability insurance policies by a certain date. I propose that the Order to be issued should require each defendant to do the following:

March 29, 2006
Page 9

> "Produce for inspection and copying certified copies of each and every policy of insurance, binder, cover note, terms of entry or other written evidence of insurance coverage available to (<u>Insert name of defendant</u>) and/or its parent, subsidiary, affiliated or related companies, purporting to evidence the existence of insurance available to the aforesaid parties for liability to third-parties as of August 28-29, 2005, and whether the same be primary, excess, bumbershoot or umbrella coverage, and regardless of limits or deductible.

6. A "user-friendly" document repository needs to be established ASAP for each of the following "target" defendants:

    a. The United States of America, through the Corps of Engineers;

    b. The United States of America, through FEMA;

    c. The State of Louisiana, through the Office of the Governor;

    d. The State of Louisiana, through the Office of Homeland Security and Emergency Preparedness;

    e. The State of Louisiana, through the Department of Transportation and Development.

    f. The City of New Orleans;

    g. The Orleans Parish Levee Board; and

    h. The New Orleans Sewerage & Water Board.

March 29, 2006
Page 10

  I suggest that one place to start would be for Judge Duval to order the production of whatever requests were made to each of the above-identified entities by Congressional investigative committees, and each entity's response to those Congressional requests. Once we have the opportunity to review the requests and the responses, and to identify, and perhaps even depose, relevant witnesses, plaintiffs would later be allowed to supplement with requests for more detailed information.

  7. The Court should order the entities identified in No. 6, supra, to produce their emergency operations or response plans as they existed on August 28-29, 2005, and how they exist now and in the future.

  8. We need a list from each defendant identifying each individual and/or department who/which testified before a Congressional investigative committee, and some means established in order to obtain transcripts of the sworn testimony, including opening statements and questions asked by Members of Congress and the witnesses' answers, under oath.

  9. The Court should be furnished with copies of the following reports:

    1. American Society of Civil Engineers Report of November 2/17, 2005, entitled: "Preliminary Report on the Performance of the New Orleans Levee Systems in Hurricane KATRINA on August 29, 2005".

    2. Interagency Performance Evaluation Task Force Reports of December 5, 2005, January 10, 2006 and March 10, 2006.

       3.      March 12, 2006 National Science Foundation-Sponsored Independent Investigation Team critique of the IPET report of March 10, 2006;

       4.      March 23, 2006 American Society of Civil Engineers critique of the IPET report of March 10, 2006;

       5.      Senate Homeland Security and Governmental Affairs Committee Report(s);

       6.      Report of the House Select Bipartisan Committee to Investigate the Preparation for and Response to Hurricane KATRINA, entitled: "A Failure of Initiative";

       7.      Report of the Government Accountability Office;  and

       8.      White House Report entitled:  "The Federal Response to Hurricane KATRINA:  Lessons Learned".

If anyone knows of any other reports currently in the public domain, please identify them for all concerned.  Additionally, as new reports are released, the Court should be furnished copies as well, with the agreement of counsel.

       10.     To my knowledge, the only discovery issues addressed to date have been addressed in C.A. No. 05-4181, in which there is a pending Motion for Review of Magistrate Knowles' adverse ruling on Plaintiffs' Motion for a Protective Order, which accused the United States Army Corps of Engineers, quite literally, of "cover-up".  The purpose of the Motion for a Protective Order, which was filed initially on December 30,

March 29, 2006
Page 12

2005, was to get the COE to give us the opportunity to at least look at evidence, which is still being destroyed on an almost daily basis, before it is destroyed and lost forever. One issue which has not been addressed by any of the so-called "independent" investigations to date is the connection between steel sheetpiles and concrete monolith retaining wall panels (if any there be), as well as the connection between joints of concrete panels. See my March 27, 2006 letter to Ms. Finnegan and Ms. Finnegan's reply of March 29, 2006, attached. Subsequently, it has come to my attention that there are certain steel sheetpiles and concrete panels which are in danger of imminent destruction at the South breach of the London Avenue Canal site, and the Court should take this up as well as a matter of some urgency. Some excavation may be required in order to permit plaintiffs and their experts to make an adequate inspection of as-yet-undestroyed evidence at both the Vintage Drive and London Avenue South locations. In 35 years of practicing law I have never encountered such "arrogance of power" from a party litigant, as has been encountered from the United States of America. I predict serious "spoliation" issues in this case and possible imposition of sanctions, which may include asking Judge Duval to strip the Federal Government of any claimed immunity. I submitted a very detailed FOIA request to the Corps of Engineers on October 12, 2005, and we should ask Magistrate Wilkinson to assist us in having production of the items in that FOIA request made an Order of the Court.

11. The Interagency Performance Evaluation Task Force actually has a "Perishable Data Team" whose stated purpose is "to gather vital perishable data before it was or is damaged or obscured by emergency repair operations". The IPET Perishable

March 29, 2006
Page 13

Data Team should be ordered, <u>sua sponte</u>, to produce the records of extrinsic evidence observed and gathered at each breach location which the PDT visited, and presumably documented with photographs or videotape since August 29, 2005.

12. I have retained and have been working with the following expert witnesses:

>Hector Pazos
>Ocean Oil Expert Witness, Inc.
>3501 Holiday Drive, Suite 203-A
>New Orleans, LA 70114
>
>Robert Bartlett
>Bartlett Engineering
>2817 Edenborn Avenue
>Metairie, LA 7002-7047
>
>John J. Gallagher
>Gallagher Marine Systems, Inc.
>100 Century Parkway
>Suite 130
>Mount Laurel, NJ 08054
>
>Dr. Harold M. Ginzburg
>3340 Severn Avenue
>Metairie, LA 70002

I would like these experts, some of whom already have generated "reams" of discoverable documents, including factual observations and opinions, to be part of whatever team that plaintiffs' attorneys, as a group, put together. Thus far, I have been sailing "solo" in terms of compensating these experts for their fees and expenses, which is having an adverse effect on my quality of life.

March 29, 2006
Page 14

      13.    I made my views about the motions which the defendants will no doubt want heard and argued, quickly, known to you yesterday.  For instance, on the issue of immunity, whether we are talking about Federal immunity or State or Municipal immunity, there are numerous factual issues to be determined before the Court can intelligently take up the availability of immunity, including, <u>inter alia</u>, the role played by the surge which came up the Mississippi River Gulf Outlet in the flooding of New Orleans, the "character of the waters" that caused the damages complained of herein, whether each of the structures or projects designed and constructed by the U.S. Army Corps of Engineers were flood control projects, navigation projects, water resources development projects, or something else, and how the money which paid for the structures or projects was appropriated or drawn down on, and issues revolving around the claim that the U.S. Army Corps of Engineers negligently designed, constructed, inspected and maintained an entire navigable waterway system, in violation of Acts of Congress, their own manuals and procedures, and State Law.  Factual issues involving the claimed immunity of the Governor, the Mayor and others, under State law, and more particularly under LSA:R.S. 9:2798.1 and/or LSA-R.S. 29:735, are to be found in record document Nos. 73, 114, 148, 157 and 164 in C.A. No. 05-4181, and include issues of Federal pre-emption (assuming admiralty and maritime law to be applicable against certain defendants), the fact that the officials involved committed <u>ultra-vires</u> acts in direct violation of State and Municipal laws, failed to have or follow their own plans, and are guilty of criminal malfeasance and misconduct pursuant to LSA-R.S. 14:134, and/or malicious, intentional, willful, outrageous, reckless, or flagrant misconduct, for which no immunity is available.

March 29, 2006
Page 15

14. "Sooner" rather than "later", Judge Duval should familiarize himself with the issues in C.A. No. 05-4237 and 05-4419 or ask counsel to do so and (perhaps in consultation with Judge Berrigan) reach some conclusion about whether those actions should properly be transferred and consolidated with C.A. No. 05-4181.

The foregoing are merely my "stream-of consciousness" thoughts on matters which should be addressed going forward, and I invite your comments and/or comments from other sources. I also take this opportunity to renew my request for a meeting before submission of a written report to Judge Duval.

            Yours very truly,

            Ashton R. O'Dwyer, Jr.

AROD/vtb
cc: Joseph M. Bruno, Esq.