# EXHIBIT 19

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 04-439                          DIVISION "I"                          SECTION 14

CHARLES C. FOTI, JR., et al.

versus

BAYER CORPORATION, et al.

FILED:_____                    _____

                                                          DEPUTY CLERK

---

### MEMORANDUM OF BAYER CORPORATION AND SMITHKLINE BEECHAM CORPORATION D/B/A GLAXOSMITHKLINE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**MAY IT PLEASE THE COURT:**

Bayer Corporation ("Bayer") and SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("GSK"), as plaintiffs-in-reconvention, respectfully request that this Court enter a preliminary and permanent injunction against the Louisiana Attorney General and the Louisiana Department of Health and Hospitals ("DHH") to prevent them from implementing the illegal contingent fee arrangement that the Attorney General has entered into with private counsel in this case. Injunctive relief is appropriate here, because the conduct at issue constitutes a clear violation of Louisiana law.

The Attorney General has illegally retained private counsel to represent the State of Louisiana pursuant to a contingency fee arrangement in this case. That agreement violates the Louisiana Constitution and state procurement laws. *Meredith v. Ieyoub*, 96-1110 (La. 9/9/97), 700 So. 2d 478 (La. 1997). DHH – which has not entered into any contract of its own – is being represented by the same lawyers who are representing the Attorney General, apparently pursuant to the same illegal contingency fee arrangement.

The Louisiana Supreme Court has declared such contingency fee arrangements absolutely null and unenforceable. In the absence of a statute that expressly authorizes retention of counsel on a contingency fee basis, the state and its departments simply cannot enter into contingency fee agreements with lawyers. *Meredith v. Ieyoub*, 96-1110 (La. 9/9/97), 700 So. 2d 478 (La. 1997). No such statute is implicated in this case. Although the legislature has authorized contingency

678740-1

fee agreements in certain types of cases (such as tax collection cases), it has never done so for cases like this one. Neither the Louisiana Unfair Trade Practices Act nor any other statute authorizes the Attorney General or DHH to enter into contingency fee arrangements with private firms to pursue the claims asserted in this case.

Moreover, both the AG and DHH have utterly failed to comply with the mandatory requirements applicable to all professional service contracts between the state and outside lawyers.

First, before retaining outside lawyers, the Attorney General and DHH must obtain the written approval of the Louisiana Office of Contractual Review and comply with state procurement laws for professional services contracts. Second, contracts with outside law firms must provide for payment on an hourly rate basis. The arrangement in this action meets none of these requirements.

Specifically, the arrangements that the Attorney General and DHH have made with their counsel are void and unenforceable for **five** primary reasons:

- The Louisiana Office of Contractual Review ("OCR") has never approved the arrangement, despite statutes expressly requiring OCR's written approval of all contracts for professional services between the State of Louisiana and private counsel.

- The "letter of authorization" by which the Attorney General retained counsel does not satisfy statutory and regulatory requirements for professional service contracts.

- The contingency fee aspect of this arrangement renders it absolutely null and illegal because Louisiana law does not authorize payment of contingency fees to private counsel in cases such as this one. Only the legislative branch has the power to appropriate state funds to pay attorney's fees. The Attorney General's office lies within the executive branch of state government. Any contingency fee contract or arrangement by which the Attorney General attempts to "appropriate" state funds and transfer the funds to private law firms violates the principle of separation of powers set forth in the Louisiana Constitution.

- Any attorney's fees that might be awarded to the State in this case would necessarily belong to the State itself. The Louisiana Constitution requires that all

funds of the State be deposited into the state treasury. The contingency fee arrangement here at issue unlawfully diverts state funds away from the treasury.

- The contingency fee arrangement violates the Code of Governmental Ethics, because it would allow lawyers acting as public servants to receive from third parties (i.e., the defendants) "something of value" for performing services to the State.

Because the State did not award a valid contract to their private counsel, that counsel cannot represent the Attorney General or the DHH under the illegal arrangement.

## I.    The Illegal Contingency Fee Agreement

By letter dated March 7, 2003 (the "Contingency Fee Agreement") [Exhibit A], the Attorney General purported to grant "formal authority" to the law firm Dugan, Gremillion & Browne, P.L.C. (the "Dugan firm") to pursue this lawsuit. The Contingency Fee Agreement ostensibly authorized the Dugan firm:

> to investigate any and all claims the State of Louisiana may have
> an interest in protecting the rights of consumers that have been
> effected by the overt acts of the defendants in *In re Baycol
> Products Liability Litigation* and also seek monetary compensation
> for the monies expended by the State of Louisiana in the purchase
> of *Baycol* as well as monies expended by the State of Louisiana
> due to personal injuries sustained by Louisiana citizens resulting
> from Baycol use. (sic)

The Contingency Fee Agreement goes on to state that the Dugan firm is "authorized to pursue litigation related to these matters on behalf of the State of Louisiana and its citizens as they deem necessary...." This letter is the only evidence of the Attorney General's arrangement with his counsel.

The Contingency Fee Agreement creates a classic contingency fee arrangement because it expressly conditions the payment of legal fees to the Dugan firm on the "successful prosecution of this litigation." Nowhere in the agreement is there any mention of an hourly rate for the firm's services, any limitation on the amount of fees recoverable by the firm, or any budget for its services. In a transparent attempt to circumvent Louisiana law's clear prohibition on contingency fees, the Contingency Fee Agreement states that "[a]t no time and for no reason will any attorneys' fees come out of the recovery that is due the State of Louisiana." This is the same sort of subterfuge, through which Attorney General has unsuccessfully argued in other cases that contingency fees "belong" to his counsel, not to the State.

The Louisiana Department of Justice has admitted that no other contract for legal services exists between the Attorney General and the Dugan firm.  On January 29, 2004, counsel for Bayer made a formal written request under the Louisiana Public Records Act, La. R.S. 44:1 *et seq.* and 44:32(A), to the Office of the Attorney General for copies of any contracts between the Attorney General and his counsel of record in this case. [Exhibit B][1]  On February 3, 2004, Nicholas Gachassin, Jr., Assistant Attorney General, responded to that request by forwarding to Bayer's counsel nothing other than a copy of the Contingency Fee Agreement. A copy of the letter from Mr. Gachassin is attached as Exhibit C.

After the DHH joined as a plaintiff in this case, Bayer's counsel formally requested that DHH produce any contracts that it had entered into with counsel relating to this case.  Letter from Peter J. Rotolo, III to Martha Hess of the Attorney General's Office and Frank Perez of DHH (July 2, 2004) [Exhibit D].  DHH's Deputy General Counsel replied that DHH has no such contracts. Letter from Donna Adorno to Peter J. Rotolo, III (July 8, 2004) [Exhibit E].

Neither the Dugan firm nor any of the plaintiffs' other counsel of record has any valid contract to render services to the Attorney General or DHH in this suit.

## III. The Attorney General and DHH Have Not Obtained OCR's Approval to Hire Counsel

Neither the Attorney General nor DHH has the "unbridled discretion" to hire private attorneys, even on an hourly rate basis.  *Meredith v. Ieyoub*, 700 So.2d at 483 (La. 1997).  Numerous state statutes and regulations set out very specific requirements that the Attorney General and DHH must satisfy before they can hire private counsel.  Here, the Attorney General and DHH have completely sidestepped these statutory and regulatory requirements.

First, and foremost, Louisiana law requires that all professional service contracts with the State receive OCR's prior written approval.  La. R.S. 39:1502(A) ("No contract shall be valid, nor shall the State be bound by the contract, until it has first been executed by the head of the using agency, or his designee, which is a party to the contract and the contractor, and has been approved in writing by the Director of the Office of Contractual Review.") (emphasis added)

Even assuming, *arguendo,* that the Contingency Fee Agreement could qualify as a formal professional services "contract," the fact that OCR has not approved it in writing renders it

---

[1]  As of that date, counsel of record for the Attorney General in this proceeding were: James R. Dugan, II, David L. Browne, Douglas R. Plymale, Dugan & Browne, a P.L.C., John W, Houtaling, II, James M. Williams, and Houtaling & Williams, L.L.C.

invalid as a matter of law. *Meredith v. Ieyoub*, 700 So. 2d at 483 and nn. 3, 4.

IV.  **The Contingency Fee Agreement Does Not Meet the Requirements for a Professional Services Contract Under State Law.**

Not only must the Attorney General hire private counsel <u>on an hourly rate</u> basis, to do so

he must make a budget request under La. R.S. 39:1 *et seq. Meredith v. Ieyoub, supra*, 700 So. 2d

at 483, n.4; *see also*, La. R.S. 39:32(C)(2) (requiring that each budget request "set forth the type

of professional service contemplated, the general purpose of such professional service, and

reasonable information concerning prior need for such services substantiating the request"). The

Attorney General must also execute a formal <u>written contract</u> for professional services. La. R.S.

39:1498.1. That contract must specifically contain a ": description of the work to be performed

and objectives to be met; amount and time of payments to be made; description of reports or

other deliverables to be received, when applicable; date of reports or other deliverables to be

received, when applicable; responsibility for payment of taxes, when applicable; circumstances

under which the contract can be terminated either with or without cause; remedies for default;

and a statement giving the legislative auditor the authority to audit records of the individual(s) or

firm(s)."La. R.S. 39:1498.1. The Contingency Fee Agreement provides none of this information.

In addition, any state agency requesting approval to enter into a professional services

contract must provide OCR with a certificate of need for the use of outside counsel, which states

that no employee of the agency is available or competent to provide the services.[2]   No such

---

[2] La. R.S. 39: 1497 provides:

> Upon seeking approval to enter into a proposed professional, personal, consulting, or social service contract valued in excess of five thousand dollars, an individual or individuals specifically designated by the head of the using agency for such purpose shall certify to the director of the office of contractual review that:
>
> (1) Either no employee of that agency is both competent and available to perform the services called for by the proposed contract or the services called for are not the type readily susceptible of being performed by persons who are employed by the state on a continuing basis.
>
> (2) The services are not available as a product of a prior or existing professional, personal, consulting, or social service contract.
>
> (3) The requirement for consultant and social services contracts, when applicable, have been publicized pursuant to R.S. 39:1503.
>
> (4) The using agency has developed and fully intends to implement a written plan providing for:
>
> (a) The assignment of specific using agency personnel to a monitoring and liaison function.
>
> (b) The periodic review of interim reports or other indicia of performance to date.
>
> (c) The ultimate use of the final product of the services.
>
> (5) A cost-benefit analysis has been conducted which indicates that obtaining such services from the private sector is more cost-effective than providing such services by the using agency itself or by an agreement with another state agency, to include both a short-term and long-term analysis. The office of contractual review shall promulgate, as necessary, rules and regulations relative to the form and content of a cost-benefit analysis.
>
> (6) The cost basis for the proposed contract.

certificate has been filed with the OCR in connection with the Contingency Fee Agreement.

Before approving any professional services contract, OCR must first determine that "[t]here has been appropriated or otherwise lawfully made available and ready for expenditure sufficient monies for payment of the services called for in the contract, at least for the applicable fiscal year." La. R.S. 39:1498(A)(6).[3]  Because the Contingency Fee Agreement does not specify or limit the amount of fees payable to the Dugan firm, there is no way for OCR to determine whether or not sufficient monies have been appropriated to pay for the lawyers' services.  Similarly, the Attorney General cannot make the required written determination that the compensation payable to the Dugan Firm will be "fair and reasonable to the state."[4]

The Contingency Fee Agreement also omits most of the basic *regulatory* requirements for professional service contracts between the State and a private law firm.  A contract submitted for OCR for its approval must contain all of the following:

- signatures of both the head of the using agency or his designee and the contractor;
- scope of services that clearly and completely identifies the work to be performed;
- beginning and termination dates for the contract, the terms of

---

(7) A description of the specific objectives or deliverables associated with the proposed contract and the monitoring plan therefor.
(8) Methods to be used to measure and determine contract performance.

[3] La. R.S. 39:1498 provides:
A. Before approving a proposed contract for professional, personal, consulting, or social services, the director of the office of contractual review or an assistant shall have determined that:
(1) All provisions of R.S. 39:1497 have been complied with.
(2) The using agency has statutory authority to enter into the proposed contract.
(3) The contract will not establish an employer/employee relationship between the state or the using agency and any prospective contractor.
(4) No current state employee will engage in the performance of the proposed contract except as provided for in R.S. 39:1498.2.
(5) No using agency has previously performed or contracted for the performance of tasks which would be substantially duplicated under the proposed contract without appropriate written justification.
(6) There has been appropriated or otherwise lawfully made available and ready for expenditure sufficient monies for payment of the services called for in the contract, at least for the applicable fiscal year.
(7) The contracting using agency has specified the purpose, duration, specific goals and objectives, measures of performance, and a plan for monitoring the services to be provided under the contract.
(8) The using agency has a written plan for the monitoring of the contract and such monitoring plan has been submitted in accordance with rules and regulations adopted by the office of contractual review.
(9) The provisions of R.S. 12:25(E) have been complied with, if the contract is with a business corporation, the provisions of R.S. 12:205(E) have been complied with, if the contract is with a nonprofit corporation, or the provisions of R.S. 12:304(A)(11) have been complied with, if the contract is with a foreign corporation.

See also, *Meredith, supra,* 700 So. 2d at 483.

[4] The head of the using agency must negotiate for contracts for services "at compensation which the head of the using agency determines in writing to be fair and reasonable to the state," taking into account the offeror's competence, the technical merits of the offer, and the compensation for which the services are to be rendered. La. R.S. 39:1499.

which should not exceed one year and may not include a clause permitting automatic renewal or extension of the original beyond a three-year period, unless authorized by the funding statute;

- the maximum amount of compensation to be paid under the contract, inclusive of all payment, fees, travel expenses, etc.;
- a payment schedule;
- a statement giving the legislative auditor and/or the Office of the Governor, Division of Administration auditors authority to audit the financial records of the contractor relative to work done under the contract;
- a clause providing that the contractor shall not assign any interest in the contract, and shall not transfer any interest in the same (whether by assignment or novation), without the prior written consent of the submitting agency; and
- a statement giving the contractor the responsibility for paying any taxes which may be due as a result of the contract.

LAC 34:V.121(E).  The Contingency Fee Agreement utterly fails to meet any of these requirements.

In addition, all attorneys appointed to represent the State or a state agency must meet or exceed written minimum qualifications. La. R.S. 49:258(1); see, e.g., 51 La. Bar. J No. 2 159 (August/September 2003); 50 La. Bar J No. 2 118 (August/September 2002); 48 La. Bar J No. 2 177 (August 2000); 47 La. Bar J 167 (August 1999); 46 La. Bar J 270 (October 1998).   Among other things, these minimum standards preclude contract attorneys, and those attorneys with whom they are engaged in the practice of law, from representing "any plaintiff in any tort claim against the state and/or its departments, commissions, boards, agencies, officers, officials or employees."  They also prohibit contract attorneys from engaging in "a conflict of interest as provided by the Rules of Professional Conduct of the Louisiana State Bar Association."

### V.     The Contingency Fee Agreement Is an Absolute Nullity Due to its Non-Compliance with State Procurement Laws

Because the Contingency Fee Agreement is not a valid professional services contract and was not approved by the Director of the Office of Contractual Review, it is contrary to public order.  As such, it is an absolute nullity..  La. Civ. C. art. 2030; *Daigle vs. Clemco Indus.*, 613 So. 2d  619, 624 (La. 1993); *Davis v. Parker*, 58 F.3d 183 (5 Cir. 1995); *see also Wynne v. New Orleans Clerks and Checkers Union Local 1497*, 550 So. 2d 1352 (La. App. 4 Cir. 1989), *writ denied*, 558 So. 2d  1125 (La. 1990) (concluding contract was contrary to public order because it violated Section 8(b)(1) and (2) of the National Labor Relations Act [28 U.S.C. 158(b)(1) and (2)]); *Duncan v. Gordon*, 476 So. 2d  896 (La. App. 2d Cir. 1985) (concluding contingency fee contract authorizing non-lawyer to perform legal services was an absolute nullity because against

public policy). The Contingency Fee Agreement utterly fails to meet <u>all</u> of the requirements of <u>all</u> of the applicable statutes. Thus, the Contingency Fee Agreement violates state law and is an absolute nullity.

A contract that is absolutely null may not be subsequently confirmed. *Baker v. Maclay Properties Company*, 94-1529 (La. 1/17/95), 648 So. 2d 888; La. Civil Code arts. 2030 and 2033. The Attorney General and DHH cannot ratify this null and unenforceable arrangement.

## VI.      The Contingency Fee Arrangement Violates Separation of Powers

The Contingency Fee Agreement states that the Dugan firm is only to be compensated "upon successful prosecution of this action." This "success" condition is the hallmark of a contingency fee contract. "By definition, a contingent fee is one which is collectable upon recovery by the client." *Curry & Friend, P.L.C. v. Weiss*, 97-2756 (La. App. 4 Cir. 4/22/98), 712 So. 2d 975, 977; La. R.S. 37:218. In other words, the Dugan firm is to be compensated only if the plaintiffs receive affirmative relief. Any payment to the Dugan firm must, of necessity, come from any monies that might properly be recoverable by the State of Louisiana.

The Attorney General cannot convey to the Dugan firm any part of the State's potential recovery. Under the separation of powers doctrine, the Louisiana Legislature, not the executive branch of government, has exclusive control over the finances of the State of Louisiana. *Meredith* 700 So.2d at 481; *Louisiana Ass'n of Educators v. Edwards*, 521 So. 2d 390, 394 (La. 1988). "Except as expressly provided by the constitution, no other branch of government, nor any person holding office in one of them, may exercise the legislative function." *Id.*

In 1997, the Louisiana Supreme Court expressly held that former Attorney General Ieyoub's grant of contingency fee contracts to private law firms violated the separation of powers doctrine set forth in Article II, Section 1 of the Louisiana Constitution. *Meredith v. Ieyoub*, 96-1110 (La. 9/9/97), 700 So. 2d 478 (La. 1997). The Court held that neither the constitution nor any statute granted the Attorney General express authority to pay contingency fees for enforcing the environmental laws.

A year later, the Louisiana Court of Appeal for the Third Circuit followed *Meredith* and invalidated a contingency fee contract between the Attorney General and private counsel on the same grounds, in a case the attorney General brought (like the instant case) under the Louisiana Unfair Trade Practices Act for redhibition and unjust enrichment. *Ieyoub v. W. R. Grace & Co.-*

*Conn.*, 97-728, 708 So. 2d 1227 (La. App. 3d Cir. 1998). .

In *Meredith*, the Court first noted that Article II vests the fiscal power of the State in the legislative branch, not in the executive branch of which the Attorney General's office forms a part. *Id.* at 481. The Court then reasoned that "the constitution does not expressly give the Attorney General the financial power to hire and pay outside attorneys on a contingency fee basis." *Id.* at 481-82. After carefully examining the relevant statutory framework, the Court concluded that the legislature has allowed the executive branch to make contingency fee contracts only by an express grant of statutory authority, and only for particular types of cases. 700 So. 2d at 482. Those types of cases are labor and worker's compensation cases (La. R.S. 23:1669(C)); public land actions (La. R.S. 41:922); and tax collection actions (La. R.S. 47:1512)(imposing 10% attorney fee in addition to taxes and penalties due). Because the legislature had not expressly allowed contingency fee contracts for environmental cases, the Attorney General simply lacked the power to hire private law firms in that matter. *Id.* at 482-83 The *Meredith* Court, therefore, held that "unless the Attorney General has been expressly granted the power in the constitution to pay outside counsel contingency fees from state funds, or the Legislature has enacted such a statute, then he has no such power." *Id. at 481 (emphasis added).*

In *Meredith*, the Supreme Court rejected Mr. Ieyoub's argument that his broad powers to institute civil proceedings and to appoint assistant attorneys included the inherent authority to hire outside attorneys on a contingency fee basis to prosecute the claims. *Id. at 482 (emphasis added).*

The Supreme Court also pointed out that even the Attorney General himself cannot spend monies he recovers for the State in court-awarded judgments and settlements, because the legislature first has to approve an appropriation to pay his staff and his contract lawyers. *Id.* at 482-83, n. 3.

The Supreme Court also ruled that the contingency fee contract contravened La. R.S. 30:2205(a)(1), which provides that all sums recovered from potentially responsible parties for active or abandoned site remediation or clean-up shall be paid into the state treasury and shall be credited to the Bond, Security and Redemption Fund. *Id.* at 482.

In *W.R. Grace*, the Louisiana Court of Appeal for the Third Circuit followed *Meredith*, and held that the Attorney General lacked the power to enter into a contingency fee contract with private counsel to pursue claims under LUTPA, for redhibition, and for unjust enrichment

against asbestos manufacturers arising out of the placement of asbestos in state buildings. *Ieyoub v. W. R. Grace & Co.-Conn*, 97-728, 708 So. 2d 1227 (La. App. 3d Cir. 1998). In *W.R Grace*, as in the instant case, the defendant moved for declaratory judgment and an injunction to prevent the performance of the illegal contract. *Id.* at 1229.

In *W.R Grace*, unlike *Meredith*, the state statute in question did not itself expressly require that the proceeds of any judgment be paid into the State treasury. As in *Meredith*, however, the Attorney General could not point to any statute that <u>affirmatively</u> authorized him to hire counsel on a contingency fee basis to pursue the State's claims, which included LUTPA, redhibition and unjust enrichment claims. 708 So.2d at 1229. For that reason, the fee contract violated the separation of powers principle of Article II of the Louisiana Constitution. 708 So.2d at 1230. The court, therefore, decreed the contingent fee contract to be null and unenforceable. *Id.*

The Third Circuit flatly rejected the Attorney General's argument that the "contingent" portion of any award belonged to the private lawyers, rather than to the State. 708 So. 2d at 1229. As with the Contingency Fee Agreement here, in *W.R. Grace*, the Attorney General attempted to draft the agreement to circumvent Louisiana law. The challenged contingency fee contract stated that the Attorney General would "direct" any person making a payment that constituted recovery to pay the contingent fee <u>directly</u> to the law firm, and the Attorney General argued that pursuant to this agreement, funds payable to the outside law firm would not have to be deposited first into the State treasury. The Third Circuit summarily rejected this argument and held that the contract was null and unenforceable. *Id.* at 1230.

The decisions in *Meredith* and *W. R. Grace* compel the conclusion that the Contingency Fee Agreement is an absolute nullity.

## VII.   The Contingency Fee Agreement Unconstitutionally Diverts State Funds from the Treasury

The Louisiana Constitution requires that "[a]ll money received by the state . . . shall be deposited immediately upon receipt in the state treasury." La. Const. Art. VII, § 9(A). It further allows money to be drawn from the treasury only pursuant to legislative appropriation. *Id.* Arts. VII, § 10, III, § 16. Thus, the Legislature possesses the exclusive authority to appropriate public monies. *State v. Duhe*, 201 La. 192, 9 So. 2d 517, 521 (1942). The Contingency Fee Agreement violates these constitutional provisions in that the Attorney General, by way of the agreement, and without any appropriation or specific act of authorization by the Legislature, purports to pay

to private lawyers all attorney's fees that the state might ultimately recover in this case. The Agreement's attempts to conceal this payment by stating that fees would be conveyed to the lawyers by third parties is unavailing.

As a matter of constitutional law, all sums – including attorney's fees – that may be recovered by the State in this lawsuit must become the property of the State. It is axiomatic that if the State were not a party to the case, no fees could be awarded to its counsel. Thus, any such fees are funds "received" by the State within the meaning of Article VII, § 9 of the Constitution.

Louisiana law is settled that the contingent fee portion of a damage award cannot be received by the contract attorneys "on their own account" because the contingent fee belongs to the client. *Saucier v. Hayes Dairy Products, Inc.,* 373 So. 2d 102, 117 (La. 1979)(on rehearing). In *Saucier,* the Louisiana Supreme Court held that attorneys cannot acquire an absolute ownership interest in their client's cause of action. *See also* La. Civ. Code art. 2447 (prohibiting attorney's purchase of litigious rights). Instead, the completion of legal services merely entitles an attorney to a privilege on the funds generated through such services to satisfy the attorney's fee. The privilege does not constitute an ownership in the fee itself. The *Saucier* court observed that any other result would run counter to Louisiana's Disciplinary Rules. *Id.* at 117.[5] *See also Calk v. Highland Construction & Manufacturing,* 376 So. 2d 495, 499 (La. 1979) (reiterating that the attorney's interest is a privilege, not a right of ownership, even where the attorney's fee is attorney's fee was "fully earned")

Under *Saucier* and *Calk,* the contingent fee portion of a recovery belongs to the client (here, the State), not the attorney. Any contrary holding would be at odds with Louisiana's Rules of Professional Conduct and the statutory prohibition against attorneys obtaining an interest in their client's cause. This was the conclusion of the *Meredith* court, and the same result obtains here. A contrary result would violate the constitutional mandate of Article VII, § 9 for the deposit of state funds into the state treasury – a provision designed to preclude the State's cash from being used for political patronage.

To permit the Attorney General or the DHH to divert State funds to private attorneys under an unauthorized contingency fee contract would be to remove from the Legislature's

---

[5] Under the Disciplinary Rules in force then, and the Rules of Professional Conduct now, attorneys are required to render a full accounting of contingent fee recoveries before there can be any severance of their respective interests and then only if there is a dispute. La. Rules Prof. Conduct 1.15(b), (c), and (d). This is because those funds belong to the client until the client authorizes the use of a portion of those funds to satisfy the attorney's interest in the contingent portion of the recovery. When the client is that State, the authorization must come from the branch of government that has the power of the purse – namely, the legislature.

control all attorney's fees that the Attorney General or DHH might recover in any lawsuits. That would plainly violate the Louisiana Constitution and the statutory framework the Legislature has created.

## VIII.   The Contingency Fee Agreement Violates the Code of Governmental Ethics

The Louisiana Board of Ethics has ruled that a contract such as the one at issue in this case violates the Louisiana Code of Governmental Ethics. *See* La. Board of Ethics Op. No. 2000-381 [Exhibit F]. In that opinion, the Board of Ethics ruled that a contingency fee contract between former Attorney General Ieyoub and private law firms violated Section 1111A(1) of the Code, which provides:

> No public servant shall receive anything of economic value, other than compensation and benefits from the governmental entity to which he is duly entitled, for the performance of the duties and responsibilities of his office or position . . .

Attorney General Ieyoub had signed a contract with a law firm to prosecute a lawsuit on behalf of the State against tobacco manufacturers. Op. No. 2000-381, at pp. 1-2. The State entered into a "Representation Agreement" with the firm, which appointed the firm as a special assistant attorney general and authorized it to "pursue, litigate and prosecute [a pending lawsuit] on behalf of the State of Louisiana." *Id.* The firm agreed that the State would have no obligation to "be responsible for payment of any attorneys' fees to Counsel." *Id.* Instead, the firm agreed to accept whatever fee could be awarded "in accordance with law." *Id.*

The case eventually settled, as part of a nationwide settlement of cases brought by other states' attorneys general, on uniform terms. *Id.* at 9-10. As part of the settlement, attorney's fees were determined by an arbitration panel, which awarded attorney's fees to the Attorney General's private counsel. *Id.* at 2-4. Thereafter, the Louisiana trial court in which the suit was pending entered judgment approving the attorney's fee award, and the judgment became final and non-appealable. *Id.* at 5.

In contrast to this action, both before and after the settlement, members of the Legislature were informed about the terms of the contingency fee agreement and the amount of fees awarded, but voiced no objections to the agreement or the award. *Id.* at 5-6. And, after the settlement, the Legislature passed six special statutes regarding the distribution and investment of the settlement proceeds, knowing that the defendants would pay attorney's fees directly to the

Attorney General's counsel. *Id.* at 7-8. The governor signed them all into law, praising the Attorney General and his "legal team" for their efforts. *Id.* at 9-10. Nevertheless, , the Board of Ethics concluded that the Attorney General's counsel violated Section 1111A(1) of the Code because "Section 1111A(1) prohibits Louisiana Counsel from receiving such fees other than from a governmental entity." *Id.* at 10.

Here, it is even more clear that the Agreement violates Section 1111A(1), as none of the mitigating factors that existed in the tobacco settlement apply to this case.

Opinion No. 2000-381 highlights yet another reason why this Court should enjoin the performance of this illegal agreement. As the Board of Ethics stated, the Code of Governmental Ethics not only prevents the improper <u>receipt</u> of things of value by a public servant, but also <u>prohibits making payments</u> to a public servant whenever the Code prohibits the public servant from receiving them. *Id.* at 10, n. 2. Thus, if Defendants were ever ordered (or agreed through a settlement) to pay attorney's fees to the Attorney General's counsel in this case, Defendants themselves would run the risk of violating the Code of Governmental Ethics.

## IX.   LUTPA Does Not Authorize Payment of Contingent Fees to Private Counsel

The Attorney General brought this suit under the Louisiana Unfair Trade Practices Act ("LUTPA"). La. R.S. 51:1401 *et seq.* LUTPA authorizes the Attorney General to sue for injunctive relief in the name of the state. La. R. S. 51:1407. LUTPA, however, does not authorize the Attorney General to retain private counsel, whether on a contingent fee basis or otherwise. To the contrary, LUTPA authorizes only the Attorney General and the district attorneys under his supervision to seek such relief in the name of the State. *Id.* §§1407, 1417.[6] Thus, in LUTPA cases, the Attorney General and the district attorneys are the <u>only</u> counsel authorized to represent the interests of the State of Louisiana.

As the Supreme Court noted in *Meredith*, all proceeds of court-awarded judgments and settlements in favor of the Attorney General must be deposited into the state Bond and Security Redemption Fund. 700 So. 2d at 482-83 and nn. 2, 3. Only after allocation of sums sufficient to pay obligations secured by the full faith and credit of the state can the legislature then appropriate monies from that fund to pay the Attorney General's employees, operating expenses and the "costs of contract legal counsel...." *Id.* This statutory scheme negates any suggestion

---

[6] LUTPA provides that in the event that damages are awarded in <u>private</u> actions, "the court shall award <u>to the person bringing such action</u> reasonable attorney's fees and costs." La. R.S. 51:1409 (emphasis added). Thus, any award of attorney's fees, even in a private action, would have to be made to the claimant, not to the claimant's counsel. *Saucier v. Hayes Dairy Products, Inc.*, 373 So. 2d 102 (La. 1979) (on rehearing).

that the Attorney General can retain private counsel and somehow convey directly to them the attorney's fees that might be awarded to the State under LUTPA.  To hold otherwise would be to allow the executive branch of government to appropriate state funds, which would violate the principle of separation of powers.

X.    **Plaintiffs-In-Reconvention Have Standing to Attack the Illegal Fee Arrangement**

The Attorney General and DHH are suing plaintiffs-in-reconvention for both injunctive relief and monetary recovery.  Plaintiffs-in-reconvention clearly have a direct and immediate interest in assuring that the proceeds of any judgment or settlement will go to the proper person or persons.  In the *Meredith* case, the Louisiana Supreme Court held that a trade association, the members of which merely feared that they *might* be sued by the Attorney General, had standing to attack the illegal fee arrangement between the Attorney General and his private lawyers.  700 So. 2d at 480-81.  In the present case, plaintiffs-in-reconvention have already been sued.

As the Court held in *Meredith*, when a party seeks to restrain a public body from entering into illegal professional service contracts, he or she need only show "an interest, however small and indeterminable."  700 So. 2d at 480, *citing Alliance For Affordable Energy v. Council of City of New Orleans*, 96-0700 (La. 7/2/96), 677 So. 2d 424, 429.  Plaintiffs-in-reconvention have a strong interest in assuring that it not be subjected to lawsuits motivated by money, brought by contingency fee counsel who hope for a windfall attorney's fee award out of proportion to the time they may expend in pursuing cases such as this one.  Unquestionably, plaintiffs-in-reconvention have significant interests that satisfy the *Alliance For Affordable Energy* test.

XI.   **Plaintiffs-In-Reconvention Are Entitled To Injunctive Relief**

Injunctive relief is appropriate where, as here, the conduct at issue constitutes a clear violation of the law.  *New Orleans Pub. Serv. Co. v. City Council*, 539 So. 2d  891, 893 (La. App. 4 Cir. 1989); *see also New Orleans Pub. Serv. Co.  v. Citizens Utilities Co.*, 98-0805 (La. App. 4 Cir, 01/06/99), 726 So. 2d 1012; *Ouachita Parish Police*, 606 So. 2d at 1350;  *Allied Signal, Inc. v. Jackson*, 96-0138 (La. App. 1 Cir. 02/14/97), 691 So. 2d 150; *Louisiana State Board of Examiners of Psychologists of DHHR v. Atterberry*, 95-0391 (La. App. 1Cir. 11/9/95), 644 So. 2d 1216, 1220.

La. R.S. 39:1502 is a prohibitory law.  It provides that *no contract shall be valid*, nor shall the state be bound by it, *unless* the OCR has approved the contract.  Moreover, the Louisiana Constitution's mandates against the executive branch becoming involved in the State's

finances are expressly prohibitory. For these reasons, injunctive relief is proper. *See, e.g., Star Enterprise v. State*, 95-1980 (La. App. 1 Cir, 06/28/96) 676 So. 2d 827 (injunction granted against rule illegally adopted). In *Ieyoub v. W. R. Grace & Co.-Conn.*, 97-728, 708 So. 2d 1227 (La. App. 3d Cir. 1998), as here, the defendants sought an injunction against the performance of an illegal contract between the attorney general and private counsel. The trial court refused to grant the injunction, but the court of appeal, in reliance on *Meredith v. Ieyoub*, reversed and remanded the case to the trial court, thereby holding that an injunction should have been granted. 708 So. 2d 1227, 1230.

## XI.    CONCLUSION

The Attorney General and DHH have flouted settled Louisiana law prohibiting contingency fee arrangements in the absence of express legislative authorization. They have disobeyed the explicit dictates of state procurement laws. This Court should declare that this arrangement is an absolutely nullity and should permanently enjoin its performance.

For these reasons, Bayer and GSK respectfully request that this Court grant their Motion For Preliminary Injunction.

Respectfully submitted,

John F. Olinde (#1515)
Corrine Ann Morrison (#9737)
Robert S. Rooth (#11454)
Peter J. Rotolo, III (#21848)
**CHAFFE, McCALL, PHILLIPS,
TOLER & SARPY, L.L.P.**
2300 Energy Centre, 1100 Poydras St.
New Orleans, LA 70163-2300
Telephone No.: (504) 585-7000
**Attorneys for Plaintiff-in-Reconvention
BAYER CORPORATION**

E. Paige Sensenbrenner (#18429)
Deborah B . Rouen (#2084)
Megan E. Haggerty (#26316)
**ADAMS AND REESE L.L.P.**
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
**Attorneys for Plaintiff-in-Reconvention
SMITHKLINE BEECHAM
CORPORATION,
d/b/a GLAXOSMITHKLINE**

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 10th day of August, 2004, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by facsimile transmission and mailing the same by United States mail, properly addressed, and first class postage prepaid.

# EXHIBIT 20

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

No. 20 04-00439                                      Section: 14 I

IEYOUB, RICHARD P. _____ ETAL

versus

BAYER CORPORATION _____ ETAL

Date Case Filed: 01/09/2004

NOTICE OF SIGNING OF JUDGMENT

TO:

- Dugan, James R. II   24785
3500 N. Hullen    Metairie   LA  000070002

- Rooth, Robert Stephen, Esq.   11454
1100 Poydras Street   Suite 2300- Energy Centre   New Orleans   LA  000070163

- Olinde, John Francis, Esq.   01515
1100 Poydras St.   Suite 2300- Energy Centre   New Orleans   LA  701632300

- Rotolo, Peter Joseph, III Esq.   21848
    Shreveport  LA  000071163

- Sensenbrenner, Edward Paige, Esq.   18429
701 Poydras St.   #4500   New Orleans   LA  000070139

- Rouen, Deborah Bila,   02084
835 Louisiana Ave.     Baton Rouge   LA  000070802

- Haggerty, Megan E., Esq.   26316
4500 One Shell Square     New Orleans   LA  000070139

- Browne, David Lyman, Esq.   20729
1100 Poydras St.   Suite 2700   New Orleans   LA  000070163

- Hassinger, Lambert J.,   06644
1717 St. Charles Ave.     New Orleans   LA  000070130

In accordance with Article 1913 C.C.P., you are hereby notified that Judgment
in the above entitled and numbered cause was signed on September 27, 2004.
New Orleans, Louisiana.

September 28, 2004

_Sharon Carter Sheridan_
MINUTE CLERK

Date_____9-30-04_____   Reviewed:  _EPS_

From: E. P. Sensenbrenner    _DBR    MEST_

A & R File #:_____7258-354_____  ✓

Copy to Client:_____

In Data Base/File:_____
            **BAYCOL**

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 04-439                          DIVISION "I"                          SECTION 14

CHARLES C. FOTI, JR., in his Official Capacity as the Attorney General for the
STATE OF LOUISIANA, as parens patriae on behalf of the STATE OF
LOUISIANA and the CITIZENS OF THE STATE OF LOUISIANA, THE STATE
OF LOUISIANA, and the LOUISIANA DEPARTMENT OF HEALTH AND
HOSPITALS

VERSUS

BAYER CORPORATION, BAYER A.G., GLAXOSMITHKLINE PLC, and
SMITHKLINE BEECHAM CORPORATION

FILED: _____          _____
                                            DEPUTY CLERK

## JUDGMENT ON PRELIMINARY INJUNCTION

The motion for preliminary injunction filed by Defendants, Bayer Corporation and

SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("Defendants"), to the March 7, 2003

agreement between Plaintiffs' counsel and the Louisiana Attorney General came on for hearing

on the 20th day of September, 2004.

Present were:

| | |
|---|---|
| John F. Olinde | For Bayer Corporation |
| Robert S. Rooth | |
| Peter J. Rotolo, III | |
| | |
| E. Paige Sensenbrenner | For SmithKline Beecham Corporation d/b/a |
| Deborah B. Rouen | GlaxoSmithKline |
| Megan E.Haggerty | |
| | |
| James R. Dugan, II | For Plaintiffs |
| David L. Browne | For Plaintiffs |
| Lambert J. Hassinger, Jr. | For Plaintiffs |

The Court having reviewed the motion, the memoranda submitted by the parties, the

affidavit testimony and the exhibits submitted by Defendants and having heard the arguments of

counsel, and for the reasons orally assigned the Court having determined that the March 7, 2003

letter agreement between the Louisiana Attorney General and his counsel violates both the

Louisiana Constitution of 1974 and Louisiana statutory law governing contracts for professional

services to which the State of Louisiana is a party;

IT IS ORDERED, ADJUDGED and DECREED that the Defendants' Motion for

Preliminary Injunction be and is hereby GRANTED and that Plaintiffs, Charles C. Foti, in his

official capacity as the Attorney General of the State of Louisiana, the State of Louisiana, and the

Louisiana Department of Health and Hospitals, their counsel of record, and all persons in concert

with them, be and are hereby preliminarily enjoined from implementing, performing or enforcing

the terms of that certain March 7, 2003 letter agreement by and between Richard Ieyoub,

Attorney General of the State of Louisiana, and Dugan, Gremillion & Browne, PLC, in this or

any other litigation against any of the Defendants herein.

New Orleans, Louisiana, this 27th day of September, 2004.

_____
J U D G E