UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br>NO. 05-4182 "K" (2) |
| PERTAINS TO:  BARGE | JUDGE DUVAL<br>MAG. WILKINSON |

### NOTICE OF SUBPOENA REQUIRING THE
### PRODUCTION OF DOCUMENTS

Pursuant to the Court's Case Management and Scheduling Order No. 5, entered September 18, 2007 (Docket No. 8974), and as subsequently amended ("CMO No. 5"), PLEASE TAKE NOTICE that pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendant Washington Group International, Inc. ("WGII") has caused a subpoena *duces tecum* ("subpoena") to be issued by the United States District Court for the Eastern District of Louisiana upon Eustis Engineering Company, Inc. ("Eustis").  A search of publicly-available records indicates that Eustis is located at 3011 28th Street, Metairie, Louisiana  70002.  The subpoena has been directed to the registered agent for Eustis, William W. Gwyn, 3011 28th Street, Metairie, Louisiana  70002.  A courtesy copy has been served upon Mat M. Gray, III. Esq., Fowler Rodriguez, Texaco Center, Poydras St., 30th Floor, New Orleans, Louisiana 70130.

The subpoena requires the production of documents as described and designated in the attached Schedule A, at 10:00 a.m., February 29, 2008, at the offices of Stone Pigman Walther Wittmann L.L.C., 546 Carondelet Street, New Orleans, Louisiana  70130.

The notice, service, and enforcement of this subpoena is without prejudice to the pending

motion of WGII to dismiss, or any other similar motion to be filed by WGII, and shall not be deemed a waiver by WGII of any right.

Dated:  January 30, 2008                             Respectfully submitted,

/s/ Heather S. Lonian
William D. Treeby, 12901
Carmelite M. Bertaut, 3054
Heather S. Lonian, 29956
  Of
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:   (504) 581-3361

Attorneys for Washington Group
International, Inc.

Of counsel
Adrian Wager-Zito
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3891
Facsimile:  (202) 626-1700

<u>**SCHEDULE A**</u>

This subpoena is to be answered in accordance with the provisions of Federal Rule of Civil Procedure 45(d)(1) and in accordance with the following definitions and instructions:

**A.    Definitions**

The terms set forth below are defined as follows unless otherwise stated:

1.    "Document(s)," "data," "report(s)," "information," and "material(s)" shall be used in the broadest sense contemplated by Federal Rule of Civil Procedure 34, and shall include any writing of any kind, including, without limitation, any written, printed, taped, electronically or digitally encoded, graphic or other information, including, without limitation, originals, identical copies, translations and drafts thereof and all copies bearing notations and marks not found on the original. "Document(s)," "data," "report(s)," "information," and "material(s)" includes, without limitation, affidavits; agreements; analyses; appointment books; articles from publications; workpapers of any kind; books; calendars; charts; checks (canceled or uncancelled); check stubs; communications; computer disks, print outs, tapes; confirmations; contracts; correspondence; credit card receipts; desk calendars; deskpads; diaries; diskettes; drafts; electronic mail; estimates; evaluations; facsimiles; files; filings; forms; graphs; invoices; journals; ledgers; letters; lists; maps; meeting minutes; memoranda; notations; notes; opinions; orders; pamphlets; papers; pictures; press releases; publications; receipts; recordings of conferences, conversations, or meetings; reports; statements; statistical records; studies; summaries; tabulations; telegrams; telephone records; telex messages; transcripts; understandings; videotapes; vouchers; and sheets or things similar to any of the foregoing however denominated.

"Document(s)," "data," "report(s)," "information," and "material(s)" further means any document now or at any time in the possession, custody or control of the entity to whom these

1

Requests are directed (together with any predecessors, successors, affiliates, subsidiaries or divisions thereof, and their officers, directors, employees, agents and attorneys). Without limiting the term "control" as used in the preceding sentence, a person is deemed to be in control of a document if the person has the right to secure the document or a copy thereof from another person having actual possession thereof.

2. "Concerning," "regarding," "relating to," and "demonstrating" means referring to, describing, discussing, evidencing, or constituting.

3. "Eustis" means Eustis Engineering Company, Inc. (and any subdivision or predecessor thereof, whether or not in existence on the date of these Requests); any of Eustis's directors, officers, board members, employees, affiliates, representatives, advisors, agents, attorneys or associates; or any other person acting on behalf of Eustis in any capacity.

4. "You," or "Your" means Eustis Engineering Company, Inc., its predecessors, parents, subsidiaries, affiliates, and any of its present or former directors, officers, board members, agents, employees, designees, assignees, representatives or other persons acting on its behalf.

5. "Person" or "individual" means any natural person or any business, legal, or government entity or association.

6. "Meeting" means the contemporaneous presence of any natural persons, whether or not such presence occurred by chance or was prearranged and whether or not the meeting was formal or informal or occurred in connection with some other activity, and whether or not the meeting took place via telephonic, telegraphic video or in-person, or otherwise.

7. "Including" means including without limitation.

8. "Identify," when used in reference to a person, means to state his, her, or its full name, present or last known address, and telephone number.

9. Unless otherwise set forth specifically in a request, the relevant time period applicable to this subpoena is January 1, 1965 through and including the date of your document production.

10. "Hurricane Katrina" means the hurricane that made landfall along the Mississippi Gulf Coast to the east of the New Orleans, Louisiana area on or about the morning of August 29, 2005.

11. "WGII" means Washington Group International, Inc., a division of URS Corporation.

12. "Canal" shall include the waterway itself, as well as any and all adjacent flood control structures and/or spoil banks, including levees and floodwalls.

13. "MRGO" means the Mississippi River Gulf Outlet Navigation Canal, as well as any and all adjacent flood control structures and/or spoil banks, including levees and floodwalls.

14. "GIWW" means the Gulf Intracoastal Waterway, as well as any and all adjacent flood control structures and/or spoil banks, including levees and floodwalls.

15. "Industrial Canal" means the Inner Harbor Navigation Canal, also referred to locally as the Industrial Canal, that connects Lake Pontchartrain, the Mississippi River, and the segment of the GIWW between New Orleans East and St. Bernard Parish.

16. "Breach(es)" means the failure, during and/or immediately after Hurricane Katrina, other than from overtopping, of a levee, berm, spoil bank, levee wall, and/or flood wall resulting in the release of floodwater.

17. "Adjacent to" means next to, along, near, or on/or near the boundary of property or a specific area.

18. "East Bank Industrial Area" ("EBIA") means the 32-acre parcel of land in New Orleans bordered by Florida and Claiborne Avenues to the north and south along the eastern edge of the Industrial Canal and bounded on the east by the levee and/or floodwall.

**B.      Instructions**

1. The documents sought in these Requests include all documents in your possession, custody or control. Unless otherwise indicated, these Requests seek all documents generated or received by you during the Relevant Period.

2. You shall produce all documents in the manner in which they are maintained in the usual course of your business, including electronic data in any of the following formats: gINT, RockWorks, MS Access, AutoCAD, or similar, as well as paper and/or scanned copies. A Request for a document shall be deemed to include a request for any and all file folders in which the document was contained, transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

3. Each document withheld from production based upon privilege or any similar claim shall be identified by: (a) the type of document; (b) the general subject matter of the document; (c) the date of the document; and (d) such other information as is sufficient to identify the document, including, without limitation, the author of the document, the relationship of the author and any recipient to each other. The nature of each claim of privilege shall be set forth in sufficient detail to enable a determination to be made concerning the reasons for the privilege claim.

4. Documents attached to each other should not be separated.

5.  Documents not otherwise responsive to these Requests shall be produced if such documents mention, discuss, refer to, or explain the documents that are called for by these Requests.

6.  If any document within the scope of these Requests has been destroyed, that document shall be identified, including, without limitation, identification of its author(s), intended or unintended recipient(s), addressee(s), intended or unintended recipients of blind copies, date and subject matter.  The circumstances of such destruction shall be set forth, and any documents relating to such destruction shall be produced.

7.  In producing documents and other materials, you are requested to furnish all documents or things in your possession, custody or control, regardless of whether such documents or materials are possessed directly by you or your directors, officers, agents, employees, representatives, subsidiaries, managing agents, affiliates, accountants or investigators, or by your attorney or their agents, employees, representatives or investigations.

8.  If you object to any part of any request, you shall state fully the nature of the objection.  Notwithstanding any objections, you shall nonetheless comply fully with the other parts of the request not objected to.

9.  Each Request shall be construed independently and not with reference to any other document Request for the purpose of limitation.

10. "All" and "each" shall be construed as "all and each."

11. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery Request all responses that might otherwise be construed to be outside the scope.

12. The use of the singular form of any word includes the plural and vice versa. The past tense shall include the present tense and vice versa.

13. The documents shall be produced in full, without abbreviation or expurgation.

14. All borings, field tests, and geotechnical instrumentation measurements sought in these Requests should be accompanied by a plan view showing their exact location (or accurate latitude & longitude) as well as elevations referred to a recognizable benchmark or datum.

### SPECIFICATIONS OF DOCUMENTS TO BE PRODUCED

1) documents reflecting the location, date, and results of any soil borings, samples, or other tests you performed in or adjacent to the EBIA

2) documents reflecting the location and custodian of any soil borings or other samples you took in or adjacent to the EBIA

3) documents reflecting any instances of pooling, ponding, and/or flooding of water when you performed soil borings, samples, or other tests in or adjacent to the EBIA

4) documents reflecting any instances of difficulties you encountered in dewatering soil borings, samples, or other tests you performed in or adjacent to the EBIA

5) photographs reflecting or depicting soil borings, samples, or other tests you performed in or adjacent to the EBIA

6) soil borings, samples, or other tests you performed and/or are maintaining at request of the United States Army Corps of Engineers relating to breaches of levees and/or floodwalls along the Industrial Canal, particularly in or adjacent to the EBIA

7) soil borings performed in the area near (within one mile) the IHNC failures, particularly the breaches of levees and/or floodwalls in the EBIA, both pre-Katrina and post Katrina

8) field tests performed in the area near (within one mile) the IHNC failures, particularly the breaches of levees and/or floodwalls in the EBIA, both pre-Katrina and post Katrina. These include, but should not be limited to, Standard Penetration Tests (SPT), Cone Penetration Tests (CPT), field permeability tests, and tests for determination of field shear strength

9) geotechnical laboratory tests performed on soils from the area near (within one mile) the IHNC failures, particularly the breaches of levees and/or floodwalls in the EBIA, both pre-Katrina and post Katrina. These include, but should not be limited to, permeability tests, strength tests, index tests, deformability tests, and consolidation tests

10) geotechnical instrumentation field measurements performed in the area near (within one mile) the IHNC failures (within one mile), particularly the breaches of levees and/or floodwalls in the EBIA, both pre-Katrina and post Katrina.  These include, but should not be limited to, measurements of total head with piezometers, well water level measurements, and measurements from instrumented piles

11) subsurface profile characterizations performed in the area near (within one half mile) the IHNC failures, particularly the breaches of levees and/or floodwalls in the EBIA, both pre-Katrina and post Katrina.  These include, but should not be limited to, generalized soil profiles, plots of soil properties with depth

12) geotechnical engineering analyses performed in the area near (within one half mile) the IHNC failures, particularly the breaches of levees and/or floodwalls in the EBIA, both pre-Katrina and post Katrina.  These analyses should include, but should not be limited to, flow analyses, stability analyses, erosion and scour analyses, and pile driving analyses

13) data and photographs related to excavations performed in the area near (within one half mile) the IHNC failures, particularly the breaches of levees and/or floodwalls in the EBIA, both pre-Katrina and post Katrina.  These data should include, but should not be limited to, geometry, soils encountered, location of water table, dewatering activities, and any problems Encountered

14) data and photographs related to pile driving activities performed in the area near (within one half mile) the IHNC failures, particularly the breaches of levees and/or floodwalls in the EBIA, both pre-Katrina and post Katrina.  These data should include, but should not be limited to, information related to geometry, soils encountered, location of water table, driving logs, and any problems encountered

15) data and photographs related to filling activities performed in the area near (within one half mile) the IHNC failures, particularly the breaches of levees and/or floodwalls in the EBIA, both pre-Katrina and post Katrina.  These data should include, but should not be limited to, information related to geometry, soils encountered, location of water table, horizontal and vertical deformations (including consolidation), and any problems encountered

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing Notice of Subpoena Requiring the Production of Documents and Schedule A has been served upon all counsel of record through the Court's CM/ECF electronic filing system or by placing same in the United States mail, postage prepaid and properly addressed, this 30th day of January, 2008.

                                                              /s/ Heather S. Lonian_____
                                                              Heather S. Lonian