UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*        05-5531 | * | |
| *Mumford v. Ingram*        05-5724 | * | |
| *Lagarde v. Lafarge*       06-5342 | * | JUDGE |
| *Perry v. Ingram*          06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*        06-7516 | * | |
| *Parfait Family v. USA*    07-3500 | * | MAG. JOSEPH C. WILKINSON, JR. |
| *Lafarge v. USA*           07-5178 | * | |
| | * | |

# AFFIDAVIT OF RICHARD T. SEYMOUR

CITY OF WASHINGTON    )
                      ) ss:
DISTRICT OF COLUMBIA  )

Before me, the undersigned authority, personally came and appeared RICHARD T,

SEYMOUR, known to me, who after having first been duly sworn did depose and state:

1.  I am a member in good standing of the Bar of the District of Columbia.  A copy of my

Certificate of Good Standing is attached hereto.  I am also a member of the Maryland Bar, and of the

Bars of the Supreme Court of the United States, the U.S. Courts of Appeals for the D.C., Second,

Third, Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh Circuits, and of the U.S. District Courts for the

Eastern District of Michigan, the Northern District of Mississippi, the Northern District of New York,

and the Southern District of Texas.

2. I graduated from Harvard Law School in 1968, and was admitted to the District of Columbia Bar that year.

3. Since October 1, 1969, I have specialized in the litigation of large-scale employment discrimination class actions and wage & hour class actions and collective actions. My experience with these cases began in 1966, when I worked as a law student summer intern placed by the Law Students Civil Rights Research Council at the New Orleans office of the Lawyers' Constitutional Defense Committee. Throughout the next two years of law school, I spent a substantial amount of time researching legal questions and preparing legal documents in employment discrimination cases and other civil rights cases.

4. I graduated from Harvard Law School in 1968, worked for the next sixteen months as a staff attorney for the United States Commission on Civil Rights, and from October 1, 1969 until September 30, 1973 was an attorney with the Washington Research Project, Inc., a civil rights organization that handled fair employment litigation and other civil rights litigation across the South. During my four years at the Project, I specialized in class action employment discrimination litigation. I left the Project on October 1, 1973, before it became the Children's Defense Fund, and opened my own office, where I continued to spend approximately 95% of my time in class action fair employment litigation.

5. On January 10, 1977, I closed my office and began working for the Lawyers' Committee for Civil Rights Under Law. The Lawyers' Committee was founded in 1963 by the leaders of the American Bar, at the request of President Kennedy, in order to help defend the civil rights of minorities and the poor. In addition to its national office in Washington, D.C., it has local affiliates in Boston, Chicago, Denver, Los Angeles, Philadelphia, San Antonio, San Francisco, and Washington,

D.C. Its Board of Trustees has included past Presidents of the American Bar Association, a past

Attorney General of the United States, law school deans and professors, and many of the nation's

leading lawyers. Its litigation docket includes numerous civil rights cases across the country,

including a large number of cases challenging discrimination in employment, voting, housing, or

education on the basis of race or sex. The Lawyers' Committee is a tax-exempt, nonprofit civil rights

organization under § 501(c)(3) of the Internal Revenue Code.

6. On February 9, 2001, I joined Lieff, Cabraser, Heimann & Bernstein, LLP, as a partner.

Lieff, Cabraser, Heimann & Bernstein, LLP, is a national law firm specializing in all types of

plaintiffs' class actions, including civil rights cases, employment discrimination, and wage and hour

cases.

7. I formed my own firm on June 1, 2005. In June 2006, I hired Adele Rapport, who has over

twenty-five years of professional experience in representing management, and later as the EEOC's

Regional Attorney in Detroit. I continue to represent plaintiffs in discrimination and wage & hour

class actions and collective actions and other types of class actions, represent individual executives

and whistleblowers in negotiating severance agreements and other matters, and serve as a neutral.

8. Most of my cases have been class actions or collective actions. One individual case was

*Landgraf v. USI Film Products,* 511 U.S. 244 (1994), the case establishing that the damages

provisions of the Civil Rights Act of 1991 do not apply to pre-Act conduct, in which I was co-counsel

for the unsuccessful petitioner. Another was an FLSA retaliation case in the Southern District of New

York, *Sines v. Service Corp. Int'l et al.*, C.A. No. 03 Civ. 5465 (SC), in which the court held that

punitive damages are available for retaliation against FLSA complainants. I am also involved in

ongoing individual discrimination cases.

9. I am, or have been, lead counsel or one of the lead counsel in the following class actions:

a) *Sledge v. J.P. Stevens & Co.,* 10 E.P.D. ¶ 10,585 (E.D.N.C. 1975) (decision finding classwide discrimination in hiring, initial assignments, pro- motions, racial reservations of various job categories for whites, etc., in nine plants and three office facilities of the defendant), 12 E.P.D. ¶ 11,047 (E.D.N.C. 1976) (issuance of decree), 585 F.2d 625 (4th Cir. 1978), *cert. denied,* 440 U.S. 981 (1979) (affirming all findings of discrimination except as to seniority, affirming all nonquota relief and reversing quotas, reversing findings of nondiscrimination as to the named plaintiffs, reversing a ruling on the limitations period which restricted back pay recovery, and affirming other preliminary back pay rulings in the absence of evidence that they would frustrate meritorious claims), 52 E.P.D. ¶ 39,537 (E.D.N.C. 1989) (denying motion to vacate 1975 findings of liability in light of *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 104 L. Ed. 2d 733, 109 S. Ct. 2115 (1989)), *summarily affirmed* (4th Cir. 1990) (unreported), settled in 1995 for $ 20 million in back pay and interest for the named plaintiffs and the class.

b) *Brewer v. Miller Brewing Co.,* C.A. No. 93-CV-1600 (FJS) (N.D.N.Y.). This was a class action on behalf of 97 African-American employees and former employees challenging co-worker racial harassment against them through painting and posting racist graffiti and cartoons, the use of the plant's public-address system to broadcast racial slurs and insults, and similar actions. The case was settled in 1995 for almost $ 2.7 million in compensatory damages.

c) *Dowdell v. Ona Corp. and Onan Corp.*, C.A. No. 97-S-2390-NE (N.D. Ala.).

This was filed on September 5, 1997, as a racial harassment and racial discrimination class action on behalf of a class of about 141 present and former African-American employees of the defendant Ona Corp. The Complaint was filed simultaneously with the Answer and with a proposed Consent Decree providing for a classwide recovery of $2.5 million in compensatory damages. The court has recently granted final approval to the settlement.

d) *Pegues v. Mississippi State Employment Service,* 488 F.Supp. 239 (N.D.Miss. 1980). This was a class action against MSES and against the Secretary of Labor challenging racial and sexual discrimination against blacks and women in employment referrals. The district court decided the case adversely to plaintiffs. The Fifth Circuit affirmed in part and reversed in part, entering its own findings of classwide racial and sexual discrimination as to several MSES practices. 699 F.2d 760 (5th Cir.), *cert. denied,* 104 S. Ct. 482 (1984). Numerous unofficially reported orders, many consented or stipulated, have been entered as to the Decree and the processing of the back pay claims. See 34 E.P.D. ¶ 34,538 (N.D.Miss. 1984) (preliminary back pay issues); 35 E.P.D. ¶ 34,645 (N.D.Miss. 1984) (setting interest rate); 35 E.P.D. ¶ 34,741 (N.D.Miss., 1984) (decree approved); 36 E.P.D. ¶ 34,976 (N.D.Miss. 1986) (further back pay issues); 45 E.P.D. ¶ 37,781 (ordering classwide approach to back pay and issuing rulings on further issues); and 698 F.Supp. 116 (N.D.Miss. 1988) (ordering classwide approach to mitigation). On October 14, 1988, the district court entered judgment for $ 2,873,274.94 in back pay and interest. On May 7, 1990, the Fifth Circuit rejected the MSES defendants' arguments against the award, and reversed a limitation on the award. As a result of

the appeal, the amount of the revised judgment entered *nunc pro tunc* as of October 14, 1988 was $ 4,787,905.83.  With additional interest, the amount distributed to the plaintiffs and their class was $ 5,838,543.02.  The decision is reported at 899 F.2d 1449 (5th Cir. 1990).

e) *Payne v. Travenol Laboratories, Inc.,* 416 F.Supp. 248 (N.D.Miss. 1976) (finding classwide race and sex discrimination in hiring and initial assignment, classwide sex discrimination in initial assignments and in promotion, sex discrimination in imposing a mandatory six-month maternity leave on female employees, race discrimination in failing to give retroactive seniority to black employees who were previously discriminated against in hiring), 565 F.2d 895 (5th Cir. 1978), *cert. denied,* 439 U.S. 835 (1978) (affirming in part, and reversing in part, a limited injunctive order entered by the district court preparatory to granting full relief), 673 F.2d 798 (5th Cir.), *cert. denied,* 459 U.S. 1038 (1982) (affirming findings of intentional discrimination against black women in hiring, of discrimination against women in limiting their entry into the higher-paid Material Handler jobs, of discrimination against black women in promotions because of several practices, affirming the bulk of the relief ordered by the district court, reversing the time limitations on class membership so that the class under 42 U.S.C. § 1981 included all black women who applied or were employed within the period of limitations, and so that the class under Title VII included all black women who applied or were employed during the charge-filing period, and affirming the exclusion of black males from the class).  The case was settled in 1991 for $ 1.1

million and remedial hires.

f) *Eastland v. Tennessee Valley Authority,* 553 F.2d 364 (5th Cir. 1977),

*cert. denied,* 434 U.S. 985 (1977).  I became lead counsel in this case after briefing

and argument, and handled the successful petition for rehearing, which resulted in

the holdings that Federal employees were entitled to bring class actions, which

could include as class members persons who had not themselves exhausted

administrative remedies, that non-exhausting Federal employees could join or

intervene as co-plaintiffs in a proper class action, and that the scope of the resulting

lawsuit was not limited by the express allegations of the administrative charges, but

should include all matters which would reasonably have been included in a capable

investigation of the allegations of the charge.  The Attorney General acquiesced in

these principles on August 31, 1977, and ordered all U.S. Attorneys not to contest

them in the future.  On remand to the Northern District of Alabama, Paul C.

Saunders of the cooperating law firm of Cravath Swaine & Moore took over the

primary responsibility for the case as a whole, while I assisted in its handling.  The

case was tried in 1980, and decided adversely to plaintiffs.  The Eleventh Circuit

affirmed the findings of nondiscrimination as to the class and some of the plaintiffs,

but reversed as to two named plaintiffs and entered findings of discrimination

against them.  704 F.2d 613 (11th Cir. 1983), *cert. denied,* 104 S. Ct. 1415 (1984).

The case is now over.

g) *Tarver v. City of Houston,* C.A. No. 73-H-1487 (S.D.Tex.).  This case

challenged racial discrimination in hiring in the Police and Fire Departments of the

City of Houston, and racial discrimination in promotions and in station assignments in the Fire Department. I became lead counsel in 1978. It was settled for extensive injunctive relief, and $320,000 in back pay for the named plaintiffs and the class, in 1979.

h) *Houston Chapter of the International Association of Black Professional Firefighters, et al. v. City of Houston,* 56 FEP Cases 445 (S.D.Tex. 1991), was a case which challenged the promotional examinations of the Houston Fire Department for the ranks of Chauffeur and Junior Captain. We obtained the remedial promotions of 65 blacks and Hispanics to those ranks, and extended the life of promotional registers from one year to two years. Following the settlement, the State Legislature extended the life of all Fire Department promotional test registers to two years. We modified one of the aspects of relief, involving a procedure for identifying and discarding test questions which acted as "wild cards" for any racial group, in return for a further six-month extension of test registers.

i) *Edwards v. City of Houston,* C.A. No. H-92-2510 (S.D.Tex.), challenged promotional tests for the ranks of Sergeant and Lieutenant in the Houston Police Department. On March 24, 1993, Judge Hughes granted final approval to a consent decree providing 106 remedial promotions to African-Americans and Hispanic-Americans over a five-year period, and other relief. On November 10, 1994, the Fifth Circuit affirmed the district court's denial of intervention to the police union and the police officers' association, and to numerous individuals, upholding the relief in the Consent Decree. 37 F.3d 1097 (5th Cir. 1994). The full Fifth Circuit

granted *en banc* rehearing on the question whether § 108 of the Civil Rights Act of 1991 required intervention as of right, reversed the denial of intervention as to two unions and vacated the grant of final approval to the consent decree, remanding the case to the district court for the holding of a new fairness hearing, after the unions had an adequate opportunity to conduct discovery. 78 F.3d 983 (5th Cir. 1996). There has been a subsequent appeal, in which one of the police unions appealed from the district court's order granting the City of Houston permission to make acting promotions pending the next fairness hearing. In an unreported decision, the court of appeals dismissed the appeal, and denied the union's suggestion for rehearing *en banc*. The second fairness hearing was held from February 3–5, 1999, and on September 13, 2000, the court handed down findings of fact, conclusions of law, and a final judgment showing that we had prevailed on all issues. The Fifth Circuit affirmed in an unreported decision, and the Supreme Court denied review.

j) *Arnold v. Ballard*, 21 FEP Cases 793 (N.D. Ohio 1979). This case challenged racial discrimination in hiring and promotions by the Akron Police and Fire Departments. I became lead counsel in 1977. In the cited decision, the district court found that the City had intentionally discriminated against blacks, and confirmed the hiring goals and timetables previously awarded. These goals have now expired.

k) *Luevano v. Campbell*, 93 F.R.D. 68 (D.D.C. 1981), is a nationwide class action on behalf of blacks and Hispanics harmed by the Federal Government's use of its Professional and Administrative Career Examination, a test which was

formerly used to select thousands of persons a year for 118 different professional, administrative and managerial jobs. The settlement abolished the test on a phase-out schedule, ended the use of the test for promotions, and required the development of new job-related selection procedures with as little adverse impact as possible. The replacement job procedures have generally had a much lower degree of adverse impact on both blacks and Hispanics.

l) *Lewis v. Bloomsburg Mills,* C.A. No. 73-324 (D.S.C.). This is a race and sex discrimination class action, tried in 1980, decided adversely to plaintiffs on December 30, 1982, 31 E.P.D. ¶ 33,343, and decided on appeal favorably to plaintiffs. 773 F.2d 561 (4th Cir. 1985). The case was settled in 1986 for $ 1.1 million in back pay and interest, and a three-year Consent Decree.

m) *Levin and EEOC v. Delta Air Lines,* 29 E.P.D. ¶ 32,905 (S.D.Tex. 1982). This was a nationwide class action on behalf of present and former flight attendants who were required to stop working as flight attendants immediately upon knowledge of their pregnancy. On June 14, 1982, the trial court ruled against plaintiffs. The Fifth Circuit affirmed. 730 F.2d 994 (5th Cir. 1984).

n) *Lewis v. J.P. Stevens & Co.,* C.A. No. 72-341 (D.S.C. 1981). This was a racial discrimination class action on behalf of black applicants and employees at the company's plant in Abbeville, South Carolina. On July 24, 1981, then District Judge Chapman found that the company had engaged in classwide racial discrimination in hiring over a period of three and a half years, and suspended decision as to the claims of employees until a new notice was provided to present and former black employees and one or more of them

intervened as additional class representatives. 27 E.P.D. ¶ 32,137 (D.S.C. 1981). The company's request for modification of the decision was denied, 27 E.P.D. ¶ 32,138. The case was settled for $ 250,000 in damages and a three-year Consent Decree. The Order approving the back pay procedures is reported at 33 E.P.D. ¶ 33,959 (D.S.C. 1983). In an unpublished opinion, the Fourth Circuit augmented the fee award entered by the district court.

o) *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277 (5th Cir. 1994), *cert. denied,* 115 S. Ct. 1099, 130 L. Ed. 2d 1066 (1995). This was a racial discrimination class action against an automobile trim manufacturing plant in Cleveland, Mississippi. The case challenged the company's hiring, promotion, temporary promotion, and job assignment practices. Plaintiffs lost in the district court, appealed, lost again, and unsuccessfully sought certiorari.

p) *Connor v. Harris County,* C.A. No. H-88-0078 (S.D. Tex.). This is a racial discrimination class action challenging the County's hiring test for jailer positions. It was settled in 1994 for 200 remedial black hires and $ 950,000 in back pay to the class.

q) *Bennett v. Gravelle,* C.A. No. 70-534-N (D.Md.). This was a racial discrimination class action against the Washington Suburban Sanitary Commission. It was settled by Consent Decree in 1972.

r) *White v. Norfolk Shipbuilding & Drydock Corp.,* C.A. No. 279-72-N (E.D. Va.). This was a racial discrimination class action, which was settled by Consent Decree in 1973.

s) *Kohne v. Imco Container Company,* 480 F.Supp. 1015 (W.D. Va. 1979). This is

a sex discrimination class action involving a plastic bottle manufacturing and decorating plant in Harrisonburg, Virginia. The case was tried in 1975, with an additional day of trial in 1976. On June 12, 1979, the court found that the defendant had discriminated against women in initial assignments and in promotions, but that plaintiffs had not shown discrimination in pay rates, lunch break pay practices, or overtime rates. The case was settled in 1981 for $ 210,000 in monetary relief including out-of-pocket expenses through April 24, 1981.

t) *NAACP et al. v. State of New Jersey, Department of Law and Public Safety, Division of State Police*, No. MER-L-002687-96 in the Superior Court for Mercer County, New Jersey, Law Division. This case challenged the hiring standards used by the New Jersey State Police. Assisted by the firm of Gibbons, Del Deo, Dolan, Griffinger & Vecchione in Newark, I had primary responsibility for the challenge to the written test battery. Final approval was granted in June 2000 to the Consent Order resolving these claims. In addition to barring further use of the test we challenged, the Order requires us to work with the State Police in refining and fine-tuning their hiring procedures. These efforts are still continuing.

u) *Sines v. Service Corp. Int'l et al.*, C.A. No. 03 Civ. 5465 (SC), in the U.S. District Court for the Southern District of New York. This was a class action under the New York Labor Law and a collective action under the Fair Labor Standards Act enforcing the overtime rights of licensed funeral directors and other employees of defendants in funeral homes and support services in the State of New York. The class claims in this case were settled in 2006 for $4.45 million in back pay, interest, liquidated damages, attorneys' fees,

and costs and expenses.

          v) *Huneycutt v. Consolidated Freightways Corp. of Delaware*, Case No. RS-02-24284-MG, in the United States Bankruptcy Court for the Central District of California, Riverside Division. This was originally filed in the U.S. District Court for the Southern District of Indiana as a class action under Title VII of the Civil Rights Act of 1964, challenging alleged gender discrimination in hiring for positions requiring driving a truck as part of the duties. The defendant declared bankruptcy under Chapter 11 of the Bankruptcy Code on Labor Day 2002. The case was settled for an estimated $4 million in back pay, other relief, and attorneys' fees and expenses, with an immediate 15% pay-out in light of the dissolution of the company and the inadequacy of its assets. Final approval to the settlement was granted in March 2007.

In addition, I have been co-counsel for plaintiffs in a number of other employment discrimination or civil rights class actions, including but not limited to *Gonzales v. Galvin*, 151 F.3d 526 (6th Cir. 1998), an appeal from the district court's finding that the hiring test used by the Toledo, Ohio, Police Department was valid, and other issues; *Nassau County Guardians v. Nassau County*, C.A. No. 88-CV-3836 (JM) (E.D. N.Y.), and *United States v. Nassau County*, C.A. No. 77-CV-1881 (JM) (E.D. N.Y.), a settled case involving the Police Department's 1983, 1985, and 1987 hiring tests; *Hayden v. County of Nassau*, 180 F.3d 42 (2d Cir. 1999), a case challenging the reduction in adverse impact of a police hiring test, in which we are seeking to intervene the Nassau County Guardians as a defendant aligned with the County; the Birmingham, Alabama employment discrimination litigation most recently culminating at the appellate level in *Ensley Branch, N.A.A.C.P. v. Seibels,* 31 F.3d 1548 (11th Cir. 1994), and the reverse discrimination litigation culminating in *Martin v. Wilks,* 490 U.S. 755, 109

S. Ct. 2180, 104 L. Ed. 2d 835 (1989), and most recently at the appellate level in *In re Birmingham Reverse Discrimination Employment Litigation,* 20 F.3d 1525 (11th Cir.), *reh'g en banc denied,* 60 F.3d 717 (11th Cir. 1994), *cert. denied sub nom. Arrington v. Wilks and Martin v. Wilks,* 131 L. Ed. 2d 558, 109 S. Ct. 2180 (1995); *Roberts v. Solomon,* C.A. No. 77-1943 (D.D.C.), a settled case which challenged race and sex discrimination against a class of black Management Analysts in the U.S. General Service Administration's Office of Records and Information Management; *Adams v. Dan River Mills,* C.A. No. 69-C-58-D (W.D. Va.), a racial discrimination class action involving Dan River Mills in Danville, Virginia, employing more than 9,000 persons, in which I had primary responsibility for developing the proof of classwide discrimination (settled by Consent Decree after the case was tried before a Magistrate and the Magistrate generally found the classwide issues for plaintiffs); *Chewning v. Seamans,* C.A. No. 76-0334 (D.D.C.), a sex discrimination class action on behalf of female professional employees at the former U.S. Energy Research and Development Administration (later merged into the U.S. Department of Energy and subsequently abolished), in which the Government stipulated that it could not defend plaintiffs' motion for partial summary judgment on class-wide liability (ultimately settled for $2.22 million in back pay), and in which my involvement was restricted to one aspect of the liability phase; *Franklin v. General Electric Co.,* C.A. No. 72-C-101-L (W.D.Va.), a racial discrimination class action which has been settled; and *Belcher v. Bassett Furniture Industries, Inc.,* C.A. No. 73-C-6-R-D (W.D.Va.), a racial discrimination case in which I became involved in 1974, the year after suit was filed, but in which class certification was subsequently revoked and the case settled on an individual basis, and a number of other cases. These lists of cases are not exhaustive.

10. I have been co-counsel in the filing of the following briefs, among others, as *amicus curiae*

in decided cases in the Supreme Court, on behalf of the Lawyers' Committee for Civil Rights Under Law (and sometimes other organizations joining us): *Circuit City Stores v. Adams*, No. 99-1379 (argued but not yet decided); *Kolstad v. American Dental Association*, 527 U.S. 526 (1999); *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097 (2000); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Piscataway Township Board of Education v. Taxman*, No. 96–679 (settled before argument); *United States v. Virginia,* 518 U.S. 515 (1996); *Adarand Constructors, Inc., v. Pena,* 515 U.S. 200 (1995); *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352 (1995); *ABF Freight System, Inc. v. N.L.R.B.,* 114 S. Ct. 835, 127 L. Ed. 2d 152 (1994); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993); *E.E.O.C. v. Arabian American Oil Co.,* 499 U.S. 244 (1991); *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642 (1989); *Watson v. Fort Worth Bank & Trust Co.,* 487 U.S. 977 (1988); *Goodman v. Lukens Steel Co.* and *United Steelworkers of America v. Goodman,* 482 U.S. 656 (1987); *Marino v. Ortiz,* 484 U.S. 301 (1988); *Johnson v. Transportation Agency of Santa Clara County,* 480 U.S. 616 (1987); *United States v. Paradise,* 480 U.S. 149 (1987); *Local 28, Sheet Metal Workers' Int'l Ass'n v. EEOC,* 478 U.S. 421 (1986); *Local 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501 (1986); *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans, State of Arizona v. Norris,* 463 U.S. 1073 (1983); *County of Washington v. Gunther,* 452 U.S. 161 (1981); *Fullilove v. Klutznick,* 448 U.S. 448 (1980); *California Brewers Ass'n v. Bryant,* 444 U.S. 598 (1980); *United Steelworkers of America v. Weber,* 443 U.S. 193 (1979); *County of Los Angeles v. Davis,* 440 U.S. 625 (1979); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412 (1978); and *Hazelwood School Dist. v. United States,* 433 U.S. 299 (1977).

11. In addition to the direct representation of plaintiffs, I have for some years provided a substantial amount of technical assistance and advice to attorneys handling fair employment cases

against public and private employers. From 1994 to 1999, Allen Gross of Los Angeles and I were the Co-Chairs of Georgetown University's annual Employment Law and Litigation conferences in Washington, D.C., and sometimes in Los Angeles, California. I have taught at CLE conferences for fair employment lawyers in Tucson and Sedona, Arizona (Arizona Bar); Los Angeles (EEOC; Georgetown University and California Continuing Education of the Bar) and San Francisco (ABA), California; Atlanta, Georgia (Atlanta Bar); Honolulu, Hawaii (ABA); Chicago, Illinois (Chicago Bar; ALI-ABA, ABA; National Employment Lawyers Association); New Orleans, Louisiana (ABA); several locations in Florida (Florida Bar; Florida employment lawyers; ABA); New York, New York (Federal judicial Conference; New York University Law School; Practicing Law Institute, BNA); Columbia, South Carolina (South Carolina State Bar); Houston (Houston Bar) and Dallas, Texas (then Southwestern Legal Institute; U.S. Bureau of Prisons); Minneapolis, Minnesota (Upper Midwest Conference sponsored by the Minnesota Bar); Santa Fe, New Mexico (ALI-ABA); Philadelphia and Pittsburgh, Pennsylvania (Pennsylvania Bar Institute); Seattle, Washington (Pacific Coast Labor Conference sponsored by King County Bar Association); Milwaukee, Wisconsin (Wisconsin Bar, ACLU of Wisconsin, Wisconsin employment lawyers); Washington, D.C. (D.C. Bar; Metropolitan Washington Employment Lawyers Association; ABA; Georgetown University Law Center), and other locations. I may have missed some of the event sponsors.

12. In somewhat more illustrative detail, I addressed the American Bar Association's National Institute on Affirmative Action in Washington, D.C., in May 1980, and spoke at an ABA National Institute on EEO Remedies in November 1982; I have spoken at a series of seminars on "Affirmative Action After Weber", and on the programs and policies of the Office of Federal Contract Compliance Programs, variously sponsored by Harcourt Brace Jovanovich, the National Civil Service League, and

the Legal Times of Washington, in New York City, in Atlanta, in Chicago, in Los Angeles, and in San Francisco.  I have spoken on fair employment law at conferences jointly sponsored by the Federal Bar Association and by the Bureau of National Affairs.  I have given addresses to personnel and affirmative-action officials of the U.S.  General Services Administration, of the U.S. Civil Service Commission, and of the U.S. Bureau of Prisons.  I have spoken at conferences sponsored by the Mexican-American Legal Defense Fund and the EEOC in Los Angeles, by the NAACP Legal Defense and Educational Fund in New York City and in Airlie, Virginia, and by the National Civil Service League in Washington.  I spoke in March and April 1982 at equal employment law seminars in New Orleans and in New York, sponsored by the Practicing Law Institute.  I spoke before the National Employment Law Institute on numerous occasions in the 1990s and 2000s.  I spoke to a CLE seminar of the Atlanta Bar on October 5, 1990, and spoke to a combined meeting of the Chicago Bar Association and the Illinois Employment Lawyers Association in approximately 1993.  I have spoken at various Annual Meetings of the National Employment Lawyers' Association from 1994 through the present.   I speak frequently at American Law Institute/American Bar Association conferences in Washington, D.C., Santa Fe, and Chicago, speaking at four such ALI-ABA programs in 2005 alone.  I spoke on affirmative action at the Winter 1995 Meeting of the Connecticut State Bar.  I have spoken at all but one of the Annual Meetings of the Employment Rights Division of the American Trial Lawyers' Association at ATLA Annual Conventions since 1995.  I have spoken several times at conferences sponsored by the Southwestern Legal Foundation, now called the Center for American and International Law.  I have generally spoken at Midwinter Meetings of the Equal Employment Opportunity Committee or the Employment Rights and Responsibilities Committee of the ABA's Labor and Employment Law Section from 1990 to the present.  I have spoken on several occasions at

the Annual Meeting of the Labor and Employment Law Section of the ABA, and have also spoken at

meetings sponsored by the Litigation Section, the Tort and Insurance Practice Section, and the

Business Law Section.  I have spoken a number of times  at the Pacific Coast Labor and Employment

Law Conference from 1998 on.  I spoke at Federal Judicial Center / New York University Law School

program for Federal judges in 2004.  There are a number of other speeches, particularly to regional

groups of plaintiffs' attorneys, local Bar groups, and NELA and ATLA seminars, that are not listed

above.

13. A number of my CLE papers are on my web site, www.rickseymourlaw.com.

14. I have often spoken to industrial and organizational psychologists, the branch of

psychology that develops and validates tests and other personnel selection devices and procedures.  In

October 1987, I spoke before the Personnel Testing Council of Southern California in Newport Beach,

California.  In 1988 and 1992, I spoke before the Personnel Testing Council of Washington in

Washington, D.C.  In 1989, 1990, 1991, and 1992, I spoke on discrimination issues concerning tests

and selection standards on various panels at the Annual Conventions of the Society for Industrial and

Organizational Psychology.  In 1992, I spoke on discrimination in testing and the Civil Rights Act of

1991 at the Annual Convention of the American Psychological Association.

15. Because of the work I have done in the field of civil rights, and in particular because of

some work involving employment conditions for blacks in South Africa, I attended, as an invited

"individual expert" and participant, an international conference on Namibia and Human Rights

sponsored by the United Nations and held in Dakar, Senegal in January 1976.  For the same reasons, I

was one of a number of American civil rights attorneys who spoke at a conference held in Oxford,

England, in January 1981 to share with the staff of the Commission on Racial Equality (in the Home

Office) and with British attorneys our experience in the enforcement of civil rights through the courts in this country. I participated, with three other civil rights attorneys and five Federal trial and appellate judges, in a conference with British judges in England in September 1982. The focus of the exchange was on the manner in which employment discrimination cases are handled and decided in this country under Title VII, as compared with decisions in Britain under the Race Relations Act of 1976, and decisions in Northern Ireland under comparable legislation prohibiting religious and political discrimination, with a view to seeing how much of our experience could be carried over and whether improvements should be made in their legislation. I also participated in the return visit made by many of the British judges to the United States in April 1985.

16. From August 1991 to August 1994, I was the Plaintiffs' Co-Chair of the Equal Employment Opportunity Committee of the Labor and Employment Law Section of the American Bar Association.

17. From August 1994 to August 1995, I was the plaintiffs' Co-Chair of the Annual Meeting Subcommittee of the Section's Continuing Legal Education/Institutes and Meetings Committee.

18. From August 1995 to August 1998, I was the plaintiff's Co-Chair of the Section's Continuing Legal Education/Institutes and Meetings Committee. In this capacity, I shared responsibility with the management, labor, and public co-chairs for developing and coordinating balanced CLE activities for the Section's approximately 20,000 members.

19. In August 1998 and August 2002, I was elected to the Council—the governing body—of the Section for four-year terms. My last term expired at the ABA Annual Meeting in August 2006, and at that time I was elected to a three-year term, from 2006 to 2009, as the Section's Liaison for ABA Governance.

20. I was a member of the Section's task force assisting the Alliance for Education in Dispute Resolution in training labor arbitrators to mediate statutory employment claims.  I was a member of the Section's task force to award fellowships to government attorneys from enforcement agencies, paying the expenses of their attendance at Midwinter Committee meetings.  I was a member of the Section's task force on multidisciplinary practice.

21. The President of the ABA appointed me as a member of the ABA's former Class Action Task Force in 2001, and I served while the task force was active.

22. In the Spring semesters of 1991, 1992, and 1993, I co-taught a graduate-level course in employment discrimination law as an Adjunct Professor at Georgetown University Law Center.

23. In 1995, I served as the mediator in resolving a sexual harassment case.  In 1999, I served as one of a panel of three mediators resolving the final stages of a class action, and we arbitrated the final questions in the case.  In 2006, I served as the mediator in an FLSA collective action.  In 2007, I served as the mediator in a Sarbanes-Oxley / discrimination matter pending simultaneously in court and before the U.S. Department of Labor.

24. On numerous occasions from 1978 to 2000 or so, I delivered or prepared Congressional testimony on behalf of the Lawyers' Committee for Civil Rights Under Law on questions involving equal employment opportunity, the enforcement of the fair employment laws, affirmative action, and other civil rights questions before the Subcommittee on Employment and Productivity of the Senate Committee on Labor and Human Resources, the Subcommittee on Equal Opportunities of the House Committee on Education and Labor, the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary, the Subcommittee on Employment and Housing of the House Committee on Government Operations, and the Subcommittee on the Constitution of the Senate

Committee on the Judiciary.  My most recent testimony was at a hearing on problems in outside investigations of harassment and discrimination claims caused by amendments to the Fair Credit Reporting Act; the hearing was held by a subcommittee of the House Banking Committee on May 4, 2000.

25. I have written some papers and articles that have been published:

(a) "The Use of 'Proof of Claim' Forms and Gag Orders in Employment Discrimination Class Actions", 10 CONN.L.REV. 920 (1978);

(b) "Strategic Effects of the Weber Decision on Employers", published in EMPLOYMENT & BENEFIT PRACTICES AFTER WEBER -- AFFIRMATIVE ACTION, AGE & SEX (Harcourt Brace Jovanovich, 1979), reprinted in FEDERAL BAR ASSOCIATION, EQUAL EMPLOYMENT PRACTICE GUIDE, vol. I, chapter III (1980).

(c) "Post-Certification Problems in Class Actions", published in the PRACTICING LAW INSTITUTE HANDBOOK, FEDERAL CIVIL RIGHTS LITIGATION (1982);

(d) "Why Plaintiffs' Counsel Challenge Tests, and How They Can Successfully Challenge the Theory of 'Validity Generalization'", 33 JOURNAL OF VOCATIONAL BEHAVIOR 331 (1988);

(e) "Predictability in EEO Litigation", in PROMOTING MINORITIES AND WOMEN: A PRACTICAL GUIDE TO  AFFIRMATIVE ACTION FOR THE 1990s, A BNA SPECIAL REPORT (Bureau of National Affairs, 1989); and

(f) "The Loss of Predictability in EEO Litigation, and Further Questions to Be Resolved", in EMPLOYMENT DISCRIMINATION AFTER THE 1989 U.S. SUPREME COURT RULINGS (Prentice Hall, 1989);

(g) "*Pursuing Punitive Damages in Job Bias Cases*," TRIAL, July 2002, p. 64;

(h) "*The Shrinking Door to Discovery*," TRIAL, May 2001, p. 48; and

(i) "*16 Summary Judgment Commandments*," TRIAL, Dec. 2000, p. 28, and

(j) a chapter on plaintiffs' perspective on the mediation of class actions in HOW ADR WORKS (BNA, Norman.Brand, ed., 2002).

The above list is not exhaustive. It does not include numerous papers distributed to participants in seminars, conferences, and bar meetings, many of which have been included in the materials for the conferences, etc. A much more complete list of papers delivered in the past five or so years is attached.

26. I was a member of the Liaison Group for the National Academy of Sciences/National Research Council's Committee on the General Aptitude Test Battery. The Committee's Report has been published under the name FAIRNESS IN EMPLOYMENT TESTING (National Academy Press, Washington, D.C., 1989).

27. I co-authored the chapter on monetary relief in the third edition of LINDEMANN & GROSSMAN, EMPLOYMENT DISCRIMINATION LAW (Bureau of National Affairs, Washington, D.C., 1996), and have participated in reviewing and revising other chapters, including the chapters on Adverse Impact and on Scored Tests. I wrote the chapter on mediating class actions from the perspective of a plaintiff's attorney, in the forthcoming HOW MEDIATION WORKS, edited by Norman Brand of San Francisco and to be issued by BNA for the ABA Section of Labor and Employment Law.

28. I co-author EQUAL EMPLOYMENT LAW UPDATE (Bureau of National Affairs, Washington, D.C., 1996–2008). The most recent edition in print is the Summer 2007 edition, the fifteenth in the

series. I am now working on the fifteenth edition. This series of books is copyright by the American Bar Association through its Section of Labor and Employment Law. My co-author for the first seven editions was Barbara Berish Brown of the Washington, D.C. office of Paul, Hastings, Janofsky & Walker. Her replacement as co-author is John Aslin of Perkins Coie in Seattle. Each edition is reviewed for balance while in progress by a committee of plaintiffs' attorneys, defense attorneys, and union attorneys.

29. I am a member of the Board of Directors of the Lawyers' Committee for Civil Rights Under Law.

30. I am a Fellow and former member of the Board of Governors of the College of Labor and Employment Lawyers, and from 1996 to 1999 was the Chair of its Committee on Standards of Practice. We developed a statement of the qualities that distinguish the best attorneys in the field of labor and employment law from others working in this area, for the purpose of providing a model towards which attorneys in this field should strive. It was intended to be aspirational, not disciplinary. My final term expired in 2002.

31. In 1999, I was appointed as a member of the Committee on Courts of the then American Trial Lawyers' Association, now the American Association for Justice. That Committee was abolished in 2000. I have served in various officer positions in ATLA's Employment Rights Section, and chaired the Section in the 2003-2004 year. I have served as Vice-Chair and Chair of ATLA's Section Leaders' Council. I have been Chair of ATLA's/AAJ's Section and Litigation Group Coordination Committee from July 2005 to date.

32. For several years, I have been involved in the ABA Section of Labor and Employment Law's effort, in connection with the Federal Judicial Center, to provide training in Employment Law

to incoming Federal judicial law clerks.  Working with management attorney Mark Dichter of Morgan, Lewis, & Bockius LLP, I have co-authored and through 2006 annually updated written materials used in connection with the training.

33. On March 9, 2007, I was honored by the Metropolitan Washington Employment Lawyers Association as "Lawyer of the Year."

34.  Further affiant sayeth not.

_____
RICHARD T. SEYMOUR

Washington, D.C., ss:

Subscribed and sworn to before me on this the 10th day of January, 2008.

_____
Notary Public

My commission expires: Patricia B. Martin
Notary Public, District of Columbia
My Commission Expires 3-31-2009