## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*       **05-5531** | * | |
| *Mumford v. Ingram*    **05-5724** | * | |
| *Lagarde v. Lafarge*    **06-5342** | * | JUDGE |
| *Perry v. Ingram*         **06-6299** | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*       **06-7516** | * | |
| *Parfait Family v. USA*  **07-3500** | * | MAG. JOSEPH C. WILKINSON, JR. |
| *Lafarge v. USA*          **07-5178** | * | |
| | * | |

# PLAINTIFF'S MOTION TO CERTIFY THE CLASS AND SUBCLASSES, TO APPOINT CLASS COUNSEL, AND TO APPROVE PLAINTIFF'S PROPOSED TRIAL PLAN

Pursuant to the Order of January 25, 2008 (doc. 10881) and Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Barge plaintiffs move to certify the class and subclasses described below as to the issues specified below, to appoint the counsel listed below as class counsel, to approve the proposed trial plan, and to approve the proposed class notice.  The grounds of this Motion and the details of plaintiffs' request are specified below.

    A.    **The Proposed Class**

    1.    The proposed class consists of all persons and entities whose buildings, personal property, or businesses within the class area were damaged or destroyed, or who resided or conducted activities

- 1 -

within the class area and lost income, or who were personally and/or emotionally injured within the class area, or who have the legal right to pursue wrongful death actions with respect to persons who died within the class area, as a result of the flooding of the class area in connection with Hurricane Katrina on August 29, 2005,[1] proximately caused and caused in fact by the fault of defendants Lafarge, Zito, Domino, Unique, and by stayed defendant Ingram Barge.  This flood is hereinafter called "the August 29, 2005, flood," or "the flood."

2.    The proposed class area is bounded by the Industrial Canal floodwall on the West, Paris Road on the East, the Mississippi River on the South, and is bounded on the North by the Public Belt or other Railway adjacent to and immediately north of Florida Avenue, and the east-west channel or canal extending from the aforesaid railway to Paris Road (Florida Walk Canal and Forty Arpent Canal).  It consists of the following Census Tracts and parts of Census Tracts:

a.   In Orleans Parish, Census tracts 7.01, 7.02, 8, 9.01, 9.02, 9.03, and 9.04;[2] and

b.   In St. Bernard Parish, Census tracts 303, 304, 305, 306.1, 306.2, 306.3, and the portions of Census tracts 307 and 308 that lie West of Paris Road.[3]

3.    **The Proposed Class Representatives:** Plaintiffs propose the following class representatives:

a.   **Ethel Mae Coleman Mumford:**  At the time of the August 29, 2005, flood, Ms. Mumford resided at 4829 Burgundy Street, New Orleans, Louisiana 70117, in the Lower Ninth Ward.  Mrs. Mumford is 80 years old and works as a cleaning service provider.  She owns her former 4829 Burgundy Street residence, which was a single-family, one story house

_____

[1] Plaintiffs will promptly prepare, seek consent for, and move for leave to file, a Seventh Amended Complaint conforming the allegations to those of this Motion.

[2] See Attachment A hereto, maps of these Census tracts in Orleans parish, downloaded by undersigned attorney Richard T. Seymour from the U.S. Bureau of the Census by undersigned attorneys.

[3] See Attachment B hereto, maps of these Census tracts in St. Bernard parish, downloaded by

of approximately 1200 square feet, on a 45' x 115' lot, together with a carport, garage, and patio. It was damaged in the flood. She is financially unable to make repairs and return home. She resides now at 1423 Feliciana Street, New Orleans, Louisiana 70117. She also lost personal property in the flood. Mrs. Mumford additionally derived income before the flood from residential rental properties she owns which are described below:

(1)     6105-07 N. Robertson Street, New Orleans, Louisiana 70117, within the class area, on a 30' x 90' lot, including a single-story double residence of an estimated 1,700 square feet containing two rental units. Both units were occupied and rented at the time of the events subject of suit. This property has not been repaired due to Ms. Mumford's financial inability to make repairs.

(2)     6113-15 N. Robertson Street, New Orleans, Louisiana 70117, within the class area, on a lot of 30' x 120', including a single-story double of an estimated 2,100 square feet residence containing two rental units. Both units were occupied and rented at the time of the events giving rise to suit. Ms. Mumford has not completed repairs, but expects to do so, and to lease these units to renters.

Mrs. Mumford has suffered emotional distress to a degree common to class members whose homes were destroyed and whose businesses were damaged and income interrupted, and as to other common, typical and predominant causes and circumstances herein. Mrs. Mumford suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005. Ms. Mumford is a proposed Class Representative for the Property Damage, Business Damage, and Emotional Distress Subclasses, as well as for the class as

_____

Mr. Seymour from the U.S. Bureau of the Census by Mr. Seymour.

a whole.

b. **Josephine Long Richardson:**   At the time of the August 29, 2005, flood, Mrs. Richardson resided with her late husband, Joseph Richardson, at 1321 Egania Street, New Orleans, Louisiana 70117, in the Lower Ninth Ward.  She is seventy-nine (79) years old, was formerly a cashier for K&B, and is retired.  She[owns her 1321 Egania Street residence, a single-family, one-story house on a lot approximately 120' x 30'.  It was damaged in the flood.  She also lost personal property in the flood.  She has been unable to return to her home, and currently resides at 9696 Hayne Boulevard, Apt. 13, New Orleans, Louisiana 70127.  At the time of the storm, her husband, Joseph Richardson, sent Mrs. Richardson to safety, while he remained to secure their family home.  Mr. Richardson became trapped in the attic and drowned due to the flooding caused by ING 4727.  Mrs. Richardson has suffered emotional distress to a degree common to persons with family members killed by the flooding, property destruction and loss and as to other common, typical and predominant causes and circumstances herein.  Mrs. Richardson suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005.  Mrs. Richardson is also bringing a wrongful death claim on behalf of her late husband, Joseph Richardson.  Mrs. Richardson is a proposed Class Representative for the Property Damage, Wrongful Death, and Emotional Distress subclasses, as well as for the class as a whole.

c. **Jimmie Donnell Harris:**  At the time of the August 29, 2005, flood, Mr. Harris resided at 942 Lamanche Street, New Orleans, Louisiana, 70117, in the Lower Ninth Ward. He is forty (40) years of age, is a New Orleans Fire Department volunteer fire fighter, and is a member of the United States Army Reserve deployed to the streets of New Orleans in the

immediate aftermath of Katrina  He owns his 942 Lamanche Street residence, where he lived with his wife and daughter until the flood.  The house was a two-story single family residence, of approximately 2,400 square feet on a lot approximately 90' x 120', and had been improved by the addition of about one-thousand square feet in 2002, plus addition of a new shed and carport.  It was damaged  in the flood.  He also lost personal property in the flood. He and his wife and daughter were forced to relocate to 790 Bateswood Drive, Apt. 24, Houston, Texas 77282, which is their current residence while their family home undergoes repairs.  His wife and child have not been able to return home.  Has he returned to NOLA, sporadically, to try to repair his residence.  He has suffered emotional distress to a degree common to persons whose homes were damaged in the flood and as to other common, typical and  predominant  causes  and  circumstances  herein.   Mr. Harris  is  a  proposed  Class Representative for the Property Damage subclasses, as well as for the class as a whole.

d.  **Kismit Bourgere:**  At the time of the August 29, 2005, flood, Kismit Bourgere lived at 827 Sister Street, New Orleans, Louisiana 70117, in the Lower Ninth Ward, with her husband and their minor children.  She is 37 years old.  They rented the aforesaid single family house consisting of 4 bedrooms, garage, yard, storage area, and had been living there for five years prior to the flooding.  The aforesaid property was severely damaged by the flooding.  She lost personal property in the flood.  She and her family were forced to leave New Orleans, and now live at 794 13th Street, Plano, Texas 75074.  She and her family are financially unable to return to New Orleans.  Until the flooding, she was employed as a credit executive at Harrah's Casino in New Orleans.  Her income was interrupted by the flood.  She is currently unemployed.    She has suffered emotional distress to a degree common to persons who lost personal property and were forced to leave their residence flood and as to

- 5 -

other common, typical and predominant causes and circumstances herein.  Mrs. Bourgere suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005.  Mrs. Bourgere is a proposed Class Representative for the Property Damage and Emotional Distress subclasses, as well as for the class as a whole.

e.  **Michael Joseph Riche:**  Mr. Riche is 63 years old, and currently resides at 31028 Torres Drive, Lacombe, Louisiana, 70445.  At the time of the August 29, 2005, flood, Mr. Riche owned the following business properties and businesses:

(1)  Mr. Ribbon, a wedding supply business located at 8825-27 W. Judge Perez Drive, Chalmette, Louisiana, 70043, in the Village Square Shopping Center.  The business property, which he owned, included approximately 4,000 square feet of showroom, sales, office, and warehouse.  All of it was destroyed by the August 29, 2005, flood.  His business property within this enterprise was also destroyed.  Mr. Riche has been financially unable to re-establish or repair his business, and lost his clientele.  Now, Mr. Riche attempts to operate his business from his van, in efforts to sell wholesale ribbon to would-be purchasers.  His income from this business was interrupted by the flood, and has not been fully replaced.

(2)  At the time of the August 29, 2005, flood, Mr. Riche also owned residential rental property at 128-130 W. Phillip Court, Chalmette, Louisiana, 70043, consisting of a two story townhouse duplex of approximately 2,400 square feet.  The property was rented at the time of the flooding.  Mr. Riche has been financially unable to make repairs and return his property to the rental market.  His

income from this business was interrupted, and has not been replaced.

Mr. Riche's business and business property suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005.  Mr. Riche is a proposed Class Representative for the Property Damage and Business Damage Subclasses,  as well as for the class as a whole

**Jacob Robert "Bob" Glaser and Dianne Glaser:**  Jacob Robert "Bob" Glaser is 58 years old.  Dianne Glaser is 56 years old.  They currently reside at 308 Sweet Gum Lane, Madisonville, Louisiana 70447.  At the time of the August 29, 2005, flood, Mr. and Mrs. Glaser owned Holiday Jewelers, a retail jewelry business located at 8400 W. Judge Perez Drive, Chalmette, Louisiana 70043.  They leased the property where the business was located, which consisted of approximately 1,000 square feet of showroom, office, and workshop space.  Their inventory, equipment, and fixtures were destroyed in the flood.  Because of this loss and the loss of their clientele, as well as the financial inability to amass start-up costs after thirty-one years in business, they have not been able to re-establish their business, and have been forced to seek employment on the Northshore. Mr. Glaser is currently a real estate agent there with Century 21.  Ms. Glaser is a home-maker.  Jacob and Dianne Glaser's business suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005.   Robert and Dianne Glaser are proposed Class Representatives for the Property Damage and Business Damage Subclasses, as well as for the class as a whole.

**Herman Koch and Aida Koch**:  Mr. and Mrs. Koch are 69 and 65, respectively.  They currently reside at 506 Country Club Drive, Picayune, Mississippi, 39466.  Both are currently retired, but hope to be able to resume deriving income from their rental property, below.  At the

time of the August 29, 2005, Mr. and Mrs. Koch were the owners of several residential rental properties in the affected areas.  Their income prior to the flood was based upon rental income generated by the following properties:

(3)     3409-11 Shangri La Lane, Chalmette, Louisiana, 70043, was a one-story double residence of approximately 2,400 square feet on a 60' x 120' lot.  Mr. and Mrs. Koch had made recent improvements before the flood, including new flooring and paint.  Both units were rented at the time of the flooding, and were damaged therein.  They have not been repaired due to Mr. and Mrs. Koch's financial inability to pay for same, and, therefore, cannot be rented.

(4)     3619 Shangri La Lane, Chalmette, Louisiana, 70043, was a party-wall double residence, half of which was owned by Mr. and Mrs. Koch.  It has approximate interior space of 1,250 square feet, and sits on a 60' x 125' lot with a shed.  It was newly painted in 2004, and was rented at the time of the flooding, and damaged therein.  It has not been repaired due to Mr. and Mrs. Koch's financial inability to pay for same, and, therefore, cannot be rented.

(5)     6317-19 Douglass Street, New Orleans, Louisiana 70117 in the Lower Ninth Ward was a single-story double residence located in an historic district.  It was approximately 3,000 square feet on a lot of approximately 45' x 200', plus two outbuildings containing carport and laundry space.  New floors were installed in 2003.  Both units were rented at the time of the flooding, were damaged therein, but have not been repaired due to Mr. and Mrs. Koch's financial inability to pay for same, and, therefore, cannot be rented.

(6)     6035-37 Burgundy Street, New Orleans, Louisiana 70117 in the

Lower Ninth Ward was a single-story shotgun double residence of approximately 2,500 square feet on a 50' x 120' lot with a double shed and carport. Extensive improvements and renovations in early 2005 included new kitchens, plumbing, and floors. Both units were rented at the time of the flooding, damaged therein, but were not repaired due to Mr. and Mrs. Koch's financial inability to pay for same, and, therefore, cannot be rented. Mr. and Mrs. Koch recently sold this property in unrepaired condition at a substantial diminution in value from its pre-Katrina value due to the event subject of suit.

(7)     8547 Deerfield, Chalmette, Louisiana 70043 is one-half of a single story house, consisting of approximately 4000 square feet, on a 55' x 120' lot with two outbuildings. Mr. and Mrs. Koch reside in the other half of the property, 8547 Deerfield. The entire property was newly painted and carpeted in 2005. This property was also damaged in the flood, and the rental income interrupted. Both halves have been repaired in the aftermath, and both are rented. Mr. and Mrs. Koch currently reside at 506 Country Club Drive, Picayune, Mississippi.

Mr. and Mrs. Koch's business and business property suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005. As a result of the flooding in the class area, Mr. and Mrs. Koch also suffered emotional distress to a degree common to persons whose business was damaged. Mr. and Mrs. Koch are proposed Class Representatives for the Property Damage, Business Damage, and Emotional Distress Subclasses, as well as for the class as a whole.

f.  **Rico Terrence Sutton:** Mr. Sutton's current address is 30600 Range Avenue, Apt.

505, Denham Springs, Louisiana 70726. At the time of the August 29,2005, flood, Mr. Sutton owned Big Shot Trucking, a trucking company at 2523 ½ Jourdan Avenue, New Orleans, Louisiana 70117, in the Lower Ninth Ward. Mr. Sutton is 30 years old. He owned the property in which the business was located, a one-story home from which he operated his business, and in which he lived at the time. The house was totally destroyed by the flooding and has since been demolished. Mr. Sutton's business and business building were totally destroyed and he has been unable to repair and reestablish his business for financial reasons. He also lost personal property, his 1993 Freightliner semi-hauler, and other business property other than the building. His income was interrupted, and he is burdened with significant debt due to the loss of his 1993 Freightliner semi-hauler. He was forced to relocate to Denham Springs, Louisiana, where he is currently employed at a Popeye's Chicken restaurant. As a result of the flooding in the class area, Mr. Sutton suffered emotional distress to a degree common to persons who lost their businesses in the flooding. He suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005. Mr. Sutton suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005. Mr. Sutton is a proposed Class Representative for the Property Damage, Business Damages, and Emotional Distress Subclasses, as well as for the class as a whole.

4. **Numerosity of the Class as a Whole:** The class meets the requirements of Rule 23(a)(1), Fed. R. Civ. Pro., because the class is so numerous that joinder of all members is impracticable. The

2000 Census reports the following information as to the Census tracts in the class area:[4]

_____

[4] Source:  U.S. Bureau of the Census, Table QT-H3, "Household Population and Household Type by Tenure: 2000 Data Set: Census 2000 Summary File 4 (SF 4) - Sample Data," downloaded January 16, 2008 and tabulated by Mr. Seymour.  Census tracts 307 and 308 in St. Bernard Parish were given a 60% weight so as to exclude the areas East of Paris Road, which visually appeared to Mr. Seymour  to be approximately 40% of the land area.

| Census Tract | Occupants in Residences |
|---|---|
| **A. Orleans Parish Census Tracts** | |
| 7.01 | 3,272 |
| 7.02 | 2,921 |
| 8 | 2,498 |
| 9.01 | 2,675 |
| 9.02 | 2,990 |
| 9.03 | 2,710 |
| 9.04 | 2,339 |
| **Total for Orleans Parish:** | 19,405 |
| **B. St. Bernard Parish Tracts** | |
| 303 | 2,127 |
| 304 | 2,476 |
| 305 | 3,361 |
| 306.1 | 2,742 |
| 306.2 | 4,107 |
| 306.3 | 3,330 |
| 307 | 2,106 |
| 307 (60% weight) | 1,264 |
| 308 | 5,159 |
| 308 (60% weight) | 3,095 |
| **Total for St. Bernard Parish, weighing tracts 307 and 308 at** | |

| Census Tract | Occupants in Residences |
|---|---|
| 60% of their full values: | 22,502 |
| C. Total Class Area | 41,907 |

It would be impracticable to join 41,907 class members in this action.

5. The class meets the requirements of Rule 23(a)(2), Fed. R. Civ. Pro., because there are questions of law or fact common to the class. These include the following:

a. Whether defendants and the insureds of defendant insurance companies were negligent in allowing the loaded Barge ING 4727 to be docked at the LaFarge North America facility on the Industrial Canal on Friday, August 26, 2005;

b. Whether defendants and the insureds of defendant insurance companies were negligent in refusing to remove the loaded Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Friday, August 26, 2005, and thereafter prior to its unloading;

c. Whether defendants and the insureds of defendant insurance companies were negligent in unloading Barge ING 4727 on Saturday, August 27, 2005;

d. Whether defendants and the insureds of defendant insurance companies were negligent in failing to remove or cause the removal of the unloaded Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Saturday, August 27, 2005, and thereafter prior to the advent of Hurricane Katrina on August 29, 2005;

e. Whether defendants and the insureds of defendant insurance companies were negligent in switching the unloaded barge ING 4727 on Saturday, August 27, 2005, from inboard of a loaded barge that could act as a sea anchor even if the barges broke away from

- 13 -

the mooring of Barge ING 4727 to the dock of the LaFarge North America facility on the Industrial Canal, to a position outboard of the loaded barge with the effect that no sea anchor would interrupt or slow the destruction the barge could cause if it broke away from its moorings;

f.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to moor Barge ING 4727 securely to the loaded barge, and thus to the dock of the LaFarge North America facility on the Industrial Canal, in conformance with U.S. Coast Guard standards for stormy weather;

g.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to arrange in advance for enough mooring lines to be made available to moor barges securely to docks in conformance with U.S. Coast Guard standards for stormy weather;

h.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to arrange in advance that tugboats could use whatever additional lines were available on tugboats and necessary to moor barges securely to docks in conformance with U.S. Coast Guard standards for stormy weather, with payment for the lines to be made subsequently;

i.   Whether defendants and the insureds of defendant insurance companies were negligent in failing to inspect all moorings among Barge ING 4727, the loaded barge next to it, and the dock at the LaFarge North America facility on the Industrial Canal, to ensure that Barge ING 4727 was securely moored to the dock at the LaFarge North America facility on the Industrial Canal and/or other barges securely moored to this dock, in conformance with U.S. Coast Guard standards for stormy weather;

- 14 -

j.  Whether defendants and insureds are liable for failure to comply with Congressional statutes and regulations, and/or for failure to comply with United States Coast Guard standards of maritime care and recommendations contained in the Sector New Orleans Hurricane Plan, with respect to communications, mooring, and hurricane planning as to vessels intended to remain in the Industrial Canal or affected areas during hurricanes such as Hurricane Katrina;

k.  Whether defendants and the insureds of defendant insurance companies were negligent in abandoning the LaFarge North America facility on the Industrial Canal on Saturday, August 27, 2005, despite their knowledge that the unloaded Barge ING 4727 was at the facility;

l.  Whether the aforesaid actions of defendants and the insureds of defendant caused, was a substantial cause of, and/or contributed to the breakaway of Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Monday, August 29, 2005;

m. Whether the breakaway of Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Monday, August 29, 2005, caused, was a substantial cause of, and/or contributed to the North Breach in the East wall of the Industrial Canal on that date;

n.  Whether the North Breach in the East wall of the Industrial Canal caused, was a substantial cause of, and/or contributed to injury to the buildings, personal property, business property other than buildings, earnings, income, or bodies of class members, or caused their deaths;

o.  The extent of the injury to the buildings, personal property, business property other than buildings, earnings, income, or bodies of class members, and the extent of the deaths of

class members, caused by the North Breach in the East wall of the Industrial Canal;

p. Whether the breakaway of Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Monday, August 29, 2005, caused, was a substantial cause of, and/or contributed to the South Breach in the East wall of the Industrial Canal on that date;

q. Whether the South Breach in the East wall of the Industrial Canal caused, was a substantial cause of, and/or contributed to injury to the buildings, personal property, business property other than buildings, earnings, income, or bodies of class members, or caused their deaths;

r. The extent of the injury to the buildings, personal property, business property other than buildings, earnings, income, or bodies of class members, and the extent of the deaths of class members, caused, substantial caused and/or contributed to by the South Breach in the East wall of the Industrial Canal;

s. Whether the breakaway of Barge ING 4727 from the LaFarge North America facility on the Industrial Canal on Monday, August 29, 2005, caused, was a substantial cause of, and/or contributed to both the North and South Breaches in the East wall of the Industrial Canal on that date;

t. Whether the combined North and South Breaches in the East wall of the Industrial Canal caused, was a substantial cause of, and/or contributed to injury to the buildings, personal property, business property other than buildings, earnings, income, or bodies of class members, or caused their deaths;

u. The extent of the injury to the buildings, personal property, business property other than buildings, earnings, income, or bodies of class members, and the extent of the deaths of

class members, caused, substantially caused, and/or contributed to by the combined North and South Breaches in the East wall of the Industrial Canal;

v. Combining the efforts of class members and their counsel so as to obtain as complete and prompt relief as possible for all class members, including those too poor or disabled to be able to take action on their own; and

w. Obtaining remedies as promptly and completely as possible for the injuries caused by the negligence of defendants and the insureds of defendant insurance companies.

6. The class meets the requirements of Rule 23(a)(3), Fed. R. Civ. Pro., because the claims or defenses of the representative parties are typical of the claims or defenses of the class. Plaintiffs have been affected by the same events as other class members, have been affected at the same time as other class members, have had the same difficulties as other class members in recovering from defendants' negligence, have suffered the same spectrum of injuries as class members, and cannot recover on their own claims in any manner other than by prevailing for the class as a whole.

7. The class meets the requirements of Rule 23(a)(4), Fed. R. Civ. Pro., because the representative parties will fairly and adequately protect the interests of the class:

a. The proposed class representatives have no connection with defendants other than the events giving rise to this lawsuit, and there are no conflicts of interest between the named plaintiffs and other class members.

b. Plaintiffs have assembled a team of attorneys with substantial experience in prosecuting class actions, mass torts, torts, and maritime law. They have no conflicts of interest with the class. Original counsel have expended thousands of hours of professional time in this matter, have spent more than $238,000 in out-of-pocket expenses, and have prosecuted it diligently and capably. New counsel, Seymour, Fuchsberg, Wilson, Druker and

- 17 -

Kelmachter, have already spent hundreds of hours and thousands of dollars to assist in the prosecution of this matter, and will add to the capable and diligent representation of the class. Additionally, the entire team stands ready to expend additional and substantial quantities of money in furtherance of this cause.

8.   The class meets the requirements of Rule 23(b)(1)(A), Fed. R. Civ. Pro., because the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.  In addition to the monetary remedy sought in this case, it is important that these defendants receive a single, clear message that their actions in connection with any future severe storm must be far different from their actions in the days leading up to August 29, 2005.  If the defendants win some cases and lose some cases, they will readily repeat their actions in the future, in New Orleans or in any other area afflicted by substantial storm danger, and many others will suffer as this class has suffered.

9.   The class meets the requirements of Rule 23(b)(1)(B), Fed. R. Civ. Pro., because the prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  No class member has the personal stake that would enable him or her or it to prosecute a claim successfully against defendants, because the time and expenses of litigation would dwarf the potential recovery.  Only by grouping their claims together can class members have a fair opportunity to litigate their claims.

10. The class meets the requirements of Rule 23(b)(2), Fed. R. Civ. Pro., because defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive

relief or corresponding declaratory relief with respect to the class as a whole.  Plaintiffs will shortly amend their Complaint to seek injunctive and declaratory relief against defendants.  Injunctive relief is important to ensure that defendants do not again endanger the class members by taking similarly negligent action in the future.  Declaratory relief is important to class members, to affix responsibility for the August 29, 2005, flood in the class area, which may also help to restrain defendants' conduct in the future.

11. The class meets the requirements of Rule 23(b)(3), Fed. R. Civ. Pro., because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

a.    Members of the class do not have a strong interest in individually controlling the prosecution or defense of separate actions, because the time and expense of prosecuting successful individual litigation against defendants would be much greater than their individual stakes in such litigation.  Only by grouping their claims together can class members have a fair opportunity to litigate their claims.  In addition, the geographic dispersion of class members means that it would be difficult for all of them to learn of defendants' negligence, and the negligence of defendant insurance companies' insureds, in time to take effective action.

b.    There are only six other cases in the Barge Subgroup.  The vast majority of the almost 42,000 class members have not filed individual cases.  The undersigned counsel have retainers from thousands of clients who would pursue their own claims with the assistance of the undersigned counsel if class certification is denied.  These clients understand that their interests are protected by the instant class action, but will have no choice but to pursue

individual litigation if that is their only option.  Even so, the vast majority of class members have not signed retainers and may obtain no relief in the absence of a class action.

c.	It is highly desirable to concentrate discovery and motion practice for the efficient resolution of this class action in this forum.  The litigation of thousands of individual cases would add severely to the time required to obtain relief, even if individual plaintiffs managed to succeed.  It would also impose severe burdens on the judicial system, with individual trials taking years to complete.

d.	Managing this litigation through the class device would pose fewer difficulties than the difficulties likely to be encountered in the management of literally thousands of individual actions arising out of this common catastrophe.  Discovery, scheduling, trying representative flights of class members to inform the expectations of both sides, are easier to organize by use of the class device, and have the added advantage of not leaving the vast majority of the class unrepresented.

e.	In addition, class certification provides the ability to have judicial supervision of any settlements.  Defendants' highly irregular settlement with Arthur Murph,[5] including a confidentiality provision backed up by a five-year contingent collateral mortgage (with no associated promissory note) threatening the loss of their house if they breach confidentiality, implemented by one special-purpose entity having the effect of concealing defendants' involvement and another special-purpose entity not licensed to do business in Louisiana, underscores the need for open and aboveboard settlements under judicial supervision.

**B.	Coordination with Other Cases**

12. The proposed class does not exclude any person who is a plaintiff in another case making

claims as to any defendant other than those in this case, and does not exclude any person who is a member of a putative or certified class in any other case.

### C.   The Subclass of Class Members with Property Damage

13. The proposed Property Damage subclass consists of all class members who owned residential and associated buildings, business and associated buildings, personal property, or business property other than buildings, within the class area.  All buildings and other property within the class area were damaged or destroyed in the flooding of the class area in connection with Hurricane Katrina on August 29, 2005.

14. There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.

15. The proposed class representatives for this subclass are plaintiffs Mumford, Harris, Bourgere, Riche,  and Koch.

16. The class meets the requirements of Rule 23(a)(1), Fed. R. Civ. Pro., because the class is so numerous that joinder of all members is impracticable.   The 2000 Census reports the following information as to housing units in the Census tracts in the class area:[6]

| Census Tract | Occupied   Housing Units |
|---|---|
| **A. Orleans Parish Census Tracts** | |
| 7.01 | 1,137 |
| 7.02 | 1,109 |

---

[5] He is the class member on whose property the barge came to rest.

[6] Source: U.S. Bureau of the Census, Table QT-DP-4, "Profile of Selected Housing Characteristics: 2000 Data Set: Census 2000 Summary File 4 (SF 4) - Sample Data" downloaded January 16, 2008 and tabulated by Mr. Seymour.  Census tracts 307 and 308 in St. Bernard Parish were given a 60% weight so as to exclude the areas East of Paris Road, which visually appeared to Mr. Seymour be approximately 40% of the land area.

| Census Tract | Occupied Housing Units |
|---|---|
| 8 | 873 |
| 9.01 | 956 |
| 9.02 | 999 |
| 9.03 | 929 |
| 9.04 | 799 |
| **Total for Orleans Parish:** | 6,802 |
| **B. St. Bernard Parish Tracts** | |
| 303 | 1,008 |
| 304 | 1,120 |
| 305 | 1,361 |
| 306.1 | 995 |
| 306.2 | 1,730 |
| 306.3 | 1,247 |
| 307 | 914 |
| 307 (60% weight) | 548 |
| 308 | 2,124 |
| 308 (60% weight) | 1,274 |
| **Total for St. Bernard Parish, weighing tracts 307 and 308 at 60% of their full values:** | 9,284 |
| **C. Total Class Area** | 16,086 |

While the above figures do not include nonresidential properties, they are sufficient to show numerosity.

17. With respect to the requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and

23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs repeat and re-allege the statements in ¶¶ 5-11 above.

### D.    The Subclass of Class Members with Business Damage

18. The proposed Business Damage subclass consists of all class members who owned businesses within the class area.  All businesses within this area were either destroyed or lost substantial income in the flooding of the class area in connection with Hurricane Katrina on August 29, 2005.

19. There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.

20. The proposed class representatives for this subclass are plaintiffs Mumford, Riche, Glaser, Koch, and Sutton.

21. The class representatives' properties within the class area had zip codes of 70117 in the Lower Ninth Ward and 70043 in St. Bernard Parish West of Paris Road.  While these zip codes are not coterminous with the class area, they provide an indication of numerosity.

22. The class meets the requirements of Rule 23(a)(1), Fed. R. Civ. Pro., because the class is so numerous that joinder of all members is impracticable.  The 2002 Economic Census reports the following information as to businesses in zip codes 70117 and 70043:[7]

| Zip Code | 2004 Business Establishments | Number of Employees | Annual Payroll |
|---|---|---|---|
| 70117 | 437 | 5,646 | $125,668,000 |
| 70043 | 721 | 10,092 | $301,268,000 |

---

[7] Source:  U.S. Bureau of the Census, ZIP Code Business Patterns (NAICS) for 2004 for the selected zip codes, downloaded and tabulated on January 31, 2008, by undersigned.  The information for Zip Code 70117 is attached hereto as Attachment C, and the information for Zip Code 70043 is attached hereto as Attachment D.

| Zip Code | 2004 Business Establishments | Number of Employees | Annual Payroll |
|---|---|---|---|
| **C. Total Class Area** | 1,158 | 15,738 | $426,936,000 |

While the above figures do not include noncommercial nonresidential properties, they are sufficient to show numerosity.

23. With respect to the requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs repeat and re-allege the statements in ¶¶ 5-11 above.

**E.      The Subclass of Class Members with Emotional Distress**

24. The proposed Emotional Distress Subclass consists of all class members who:

a.   respond to a class notice stating that they wish to make a physical or emotional-distress claim and are willing to provide discovery and individual testimony if needed; and

b.   who suffered physical injury or emotional distress as a result of the August 29, 2005 flood and its aftermath, whether

(1)      as a result of the wrongful death of a family member;

(2)      personally experiencing the flooding and its aftermath;

(3)      physical injuries suffered during the flood and its aftermath;

(4)      the loss of a home whether owned or rented;

(5)      the loss of income;

(6)      resulting from evacuation and/or displacement from home, family, friends, community, culture and lifestyle; and/or

(7)      the loss of a business or injury to a business.

25. The failure to include a class emotional-distress claim would provide an incentive for class

members to opt out of this lawsuit entirely and pursue such claims independently, with a great loss of efficiency and a great increase in transaction costs.

26. There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.

27. The proposed class representatives for this subclass are plaintiffs Mumford, Richardson, Bourgere, Koch, and Sutton.

28. With respect to the requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs repeat and re-allege the statements in ¶¶ 5-11 above.

29. Plaintiffs are aware of controlling law as to class certification and emotional distress damages, and in their eventual Memorandum will address the reasons why the certification of a subclass for emotional-distress damages in this case can be reconciled with this controlling law.

30. In the event that the class described in ¶ 24 above is certified, plaintiffs would be willing:

    a. to try the claims of a statistically valid random sample of class members asserting such claims to obtain bellwether values for each of the six categories above; and then either

        (1)     have a classwide trial using those bellwether values; and/or

        (2)     inform class members and defendants of the bellwether values of the claims of each of the remaining class members asserting such claims, allow the class member to "opt out" of the classwide trial and have an individual jury trial within this case of the damages claims for physical or emotional distress, and allow the defendants to show good cause why a particular class member have an individual trial rather than be part of the class trial.

31. In the event that the Court denies certification of the class proposed by plaintiffs, plaintiffs

would only then move for certification of a subclass of all class members who:

> a.   respond to a class notice stating that they wish to make a physical or emotional-distress claim and are willing to provide discovery and individual testimony if needed; and
>
> b.   who suffered physical injury or emotional distress as a result of the August 29, 2005 flood and its aftermath, whether
>
>> (1)      as a result of the wrongful death of a family member;
>>
>> (2)      personally experiencing the flooding and its aftermath; or
>>
>> (3)      physical injuries suffered during the flood and its aftermath.

Such a limited subclass would include far fewer claims for emotional distress damages.

### F.   The Wrongful Death Subclass

32. The proposed Wrongful Death Subclass consists of all class members who respond to a class notice stating that they wish to make a wrongful death claim, and are willing to provide discovery and individual testimony if needed.

33. There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.

34. The proposed class representative for this subclass is plaintiff Richardson.

35. With respect to the requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, plaintiffs repeat and re-allege the statements in ¶¶ 5-11 above.  While there would not be many wrongful death claims compared to the size of the class, it is important to include this Subclass and these claims so that class members will not have an incentive to opt out of this lawsuit.

### G.   Appointment of Class Counsel

36. Plaintiffs move to appoint the following attorneys as class counsel:

> a.  Brian A. Gilbert;
>
> b.  Lawrence D. Wiedemann;
>
> c.  Karl Wiedemann;
>
> d.  Karen Widemann;
>
> e.  Patrick J. Sanders;
>
> f.  Richard T. Seymour;
>
> g.  Lawrence A. Wilson
>
> h.  David Druker
>
> i.  Leslie Debra Kelmachter

Plaintiffs repeat and re-allege the statements in the Affidavits of the above-named attorneys attached hereto, and/or for original or additional appointment to the Barge Plaintiff Subgroup Litigation Committee. 8

**H.    Plaintiff's Trial Plan**

37. Plaintiffs move that the trial of this action be separated into three parts:

> a.  A classwide trial of defendants' liability and of classwide damages for losses to residential or other buildings, and for losses to personal property or business property, with the evidence presented on behalf of the class as a whole to fix defendants' liability to the class as a whole, and relying substantially on public records;
>
> b.  A Stage II proceeding, as in an employment discrimination class action, in which any questions as to particular individuals' membership in the class or any special questions of calculations are determined; and
>
> c.  Individual proceedings in which class members' claims for physical or emotional

distress or for wrongful death can be tried before juries, or in which a classwide procedure is used, such as trying the claims of randomly selected class members to obtain bellwether values for the claims, and in which the bellwether value is the basis for a classwide determination of physical or emotional-distress claims; or

     d.  Individual trials of class members' claims for physical or emotional distress or for wrongful death, where the class member has opted out of the classwide trial and wants to have his or her claim determined individually in this case, or where defendants show good cause to try that particular class member's claim individually.

   **WHEREFORE**, plaintiffs pray that their Motion be granted.

                    Respectfully submitted,

                    WIEDEMANN & WIEDEMANN


                    \s\Lawrence D. Wiedemann
                    LAWRENCE D. WIEDEMANN, (13457)
                    KARL WIEDEMANN, (18502)
                    KAREN WIEDEMANN, (21151)
                    821 Baronne Street
                    New Orleans, Louisiana 70113
                    Telephone: (504) 581-6180
                    Attorneys for Plaintiffs


                    LAW OFFICE OF BRIAN A. GILBERT

                    \s\Brian A. Gilbert
                    BRIAN A. GILBERT (21297)
                    821 Baronne Street
                    New Orleans, Louisiana 70113
                    Telephone: (504) 885-7700
                    Attorney for Plaintiffs
                    Barge Plaintiffs' Liaison

---

8 Please see Affidavits of Seymour, Druker, Kelmachter, Wilson, and Fuchsberg, attached hereto.

\s\Patrick J. Sanders
PATRICK J. SANDERS (18741)
Attorney at Law
3123 Ridgelake Drive, Suite B
Metairie, Louisiana 70002
Telephone: (504) 834-0646
Attorney for Plaintiffs

\S\Richard T. Seymour
**RICHARD T. SEYMOUR (D.C. Bar #28100)**
The Law Office of Richard T. Seymour, PLLC
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C.   20036-4129

\S\ Alan L. Fuchsberg
**ALAN L. FUCHSBERG (N.Y.S.B.A. #1755966)**
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
New York, NY   10110

\S\ Leslie D. Kelmachter
**LESLIE D. KELMACHTER (N.Y.S.B.A.** #1795723
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
New York, NY   10110

\S\ Lawrence A. Wilson
**LAWRENCE A. WILSON (N.Y.S.B.A. #2487908)**
Wilson, Grochow, Druker & Nolet
233 Broadway, 5th Floor
New York, NY  10279

\S\ David Druker
**DAVID DRUCKER (N.Y.S.B.A. #1981562)**
Wilson, Grochow, Druker & Nolet
233 Broadway, 5th Floor
New York, NY  10279

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this  31 day of January, 2008.

\s\Brian A. Gilbert