UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER:  05-4182 "K"(2) JUDGE Duval MAG. Wilkinson |
| PERTAINS TO:  MRGO, Robinson (No. 06-2268) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

# I.      INTRODUCTION

In its Motion To Dismiss Or In the Alternative, For Summary Judgment ("Motion"), the

United States reprises the identical arguments rejected by this Court in denying two earlier

motions.  The Government nevertheless persists in contending that immunity under 33 U.S.C. §

702c ("§ 702c immunity") attaches in any situation where "the flood damages alleged by

Plaintiffs resulted from floodwaters that the United States sought but failed to control"—

regardless of the cause of the flooding.  Motion at 2.  This argument is conclusively refuted by

the controlling precedent of *Graci v. United States,* 456 F.2d 20 (5th Cir. 1971) and *In re Katrina*

*Canal Breaches Consolidated Litigation, (Robinson v. United States)*, 471 F.Supp.2d 684, 691

(E.D. La. 2007) ("*In re Katrina*").  These decisions hold that § 702c immunity is inapplicable

where, as here, Plaintiffs allege that their damages were caused by the Army Corps' negligent

design, construction, maintenance, and operation of the Mississippi River-Gulf Outlet ("MR-

GO")—a navigation project with no flood control purposes—and not the failure of a flood

control project like the Lake Pontchartrain and Vicinity Hurricane Protection Plan ("LPV" or

"LPVHPP").

Realizing that *Graci* and *In re Katrina* doom its Motion, the Government resurrects an

argument that it abandoned months ago.  Claiming that the "MRGO and LPVHPP have always

been inextricably interconnected," the Government insists "this fundamental relationship

between the two projects" means that "this case is nothing less than an attempt to hold the United

States liable for conduct *associated with flood control.*" *Id.* at 3 (emphasis added).  This is a

desperate about-face since the Government previously conceded that the MR-GO (1) never had

"a flood control purpose or function," (2) was never part of the new flood control project

authorized by the LPV, (3) "was not a flood control project and was not absorbed into the

1

LPVHPP," (4) was not related to the national flood control program, (5) was not a "constituent component" of the LPV, and (6) never morphed into a hybrid flood control project/navigational aid project. *See* Plaintiffs' Corrected Revised Statement of Undisputed Facts for Summary Adjudication on Section 702c Immunity ("Plaintiffs' Statement"), Nos. 1-3. The Government must be held to its previous concessions.

The Government also asserts that "Plaintiffs are *necessarily* saying that the United States negligently constructed flood works that failed to account for the hydrological influences of the MRGO." Motion at 3 (emphasis added). This is a classic example of trying to make a virtue out of a vice. It is certainly true that the Army Corps negligently ignored that it was constructing a "hurricane highway" in designing the MR-GO with the "funnel effect." *See* Plaintiffs' Statement, Nos. 8-10. *Plaintiffs are not alleging, however, that the Army Corps negligently constructed the LPV or that their damages relate to a federal flood control project or its design, construction, operation or maintenance or its performance during Hurricane Katrina. Id.*, No. 52. As the Court well knows, Plaintiffs allege that because of the Army Corps' MR-GO-related negligence with respect to the "funnel effect" and the knowing destruction of wetlands and cypress forests that provided effective hurricane surge buffering protection for Greater New Orleans (*id.*, Nos. 14-19), the Hurricane Katrina surge was at least three feet higher, and this incremental, supercharged storm surge caused by the MR-GO led to catastrophic flooding in the Lower Ninth Ward, New Orleans East, and St. Bernard Parish. *Id.*, Nos. 10, 19.

On this record, the Court should deny the Government's Motion.

## II.   FACTS

The Government opens its discussion of the facts with the assertion that "[t]he facts that establish application of  §702c are not in dispute." This is simply untrue.

As demonstrated by Plaintiffs' Response To Defendant's Statement of Undisputed Facts

("Plaintiffs' Response"), there are numerous sharply disputed facts essential to the Government's

arguments that bar summary judgment.  On this basis alone, the Motion must be denied. *Cf.*

*Ashford v. United* States, ___ F. 3d ___, 2007 WL 4418176 at 2 (5th Cir. 2007) ("That fact

dispute makes summary judgment on the discretionary function exception improper.")**.**

The lynchpin of the Government's argument is that the Army Corps designed and

constructed "levees along the GIWW and MRGO" pursuant to Congressional authorization of

the LPV, and at the time of Hurricane Katrina, New Orleans East "was encircled by LPV flood

control structures" and "federal levees, floodwalls, and other control structures encircled St.

Bernard Parish and the Lower Ninth Ward . . . ." Motion at 6.   These facts are asserted in

various ways in Paragraphs 5-6, 10-24 of the Defendant's Statement of Undisputed Facts.

Plaintiffs' Response disputes these alleged undisputed facts with detailed citations to

Plaintiffs' Statement and Evidentiary Support filed in connection with Plaintiffs' Motion for

Summary Adjudication and by surgically dissecting the Government's record citations to show

that they do not support the proposed undisputed facts.  As set forth in Plaintiffs' Response, the

fundamental flaw in Defendant's assertion that post-*Graci* the Army Corps designed and

constructed "levees," "flood control structures," and "floodwalls" encircling New Orleans East,

the Lower Ninth Ward, and St. Bernard Parish" is summarized in the Overall Objection as

follows:

> There is substantial evidence that the Army Corps did not design and
> construct hurricane protection flood works or structures in accordance
> with (a) Congress' mandate in the Flood Control Act of 1965 to build
> "works of improvement for . . . the control of destructive floodwaters"
> and "a project for hurricane-flood protection on Lake Pontchartrain,
> Louisiana" (Pub. L. No. 89-298, 79 Stat. 1073)(October 27, 1965) (Exh. 57)
> and to construct flood works to protect the project area from flooding
> caused by storm surge or rainfall associated with a Standard Project

Hurricane and Probable Maximum Hurricane (House Document No. 231)
(Exh. 10); (b) the Army Corps' own regulations, standards, and guidelines;
and (c) the Army Corps' own design specifications.  There is also substantial evidence
that the Army Corps did not complete the Lake Pontchartrain and Vicinity Hurricane
Protection Project, even as designed, by the time of Hurricane Katrina.  *See* Plaintiffs'
Corrected Revised Statement of Undisputed Facts for Summary Adjudication on Section
702c Immunity (Attachment "A") and Plaintiffs' Evidentiary Support (Paragraphs 24 to
46) (Attachment "B") filed in connection with Plaintiffs' Motion for Summary
Adjudication, all of which are incorporated by reference and attached hereto for the
Court's convenience.

Plaintiffs' Response at 1-2.

Plaintiffs have offered three detailed expert opinions that the Army Corps did not

construct "levees," "floodworks," or other flood control structures either in accordance with

Congress' mandate in the Flood Control Act of 1965, consistent with the Army Corps' own

manuals, standards, guidelines or design memoranda, and as generally understood among

engineers practicing in the field.  *See* Bea Report (Exh. 31), Paragraphs 16 (b), (c), 17, 23,

Appendix A; Arnold Report (Exh. 33), Paragraphs 7,10, 11,16-26, 27-44; Theis Report (Exh.

13), Paragraphs 13, 16-17, 20. Significantly, the Government has offered no expert testimony on

this issue.  Therefore, on this record, the man-made features along the MR-GO were nothing

more than piles of dirt, not "levees."  *See* Bea Expert Report (Exh. 31), Paragraph 16 (b); Rule

30(b)(6) Deposition (Exh. 8) 339:3-5 (testimony of Army Corps employee Al Naomi).

Not only are the opinions and underlying facts of Plaintiffs' experts unrebutted,  the

Government's own expert in the MR-GO Master Complaint class certification proceedings, Dr.

Robert Dalrymple of Johns Hopkins University, admitted that the LPV structures at the time of

Hurricane Katrina did not meet the Congressionally-mandated requirement of a system designed

to protect against a Standard Project Hurricane ("SPH") and were not built to the prescribed level

of protection.  *See* Plaintiffs' Statement, No. 41 and Evidentiary Support, No. 158.  Dr.

Dalrymple conceded that "[w]hatever system the Corps built by the time of Katrina after 1965

was [not] designed to deal with the most severe combination of meteorological conditions that are considered reasonably characteristic of this region"—the definition of the SPH that Congress mandated for Greater New Orleans in the Flood Control Act of 1965.  Plaintiffs' Statement, No. 34; *see also* Plaintiffs' Evidentiary Support Nos. 164 (Plaintiffs' expert); 102 (Team Louisiana).

The upshot of this mass of evidence and expert opinion offered by Plaintiffs is that the issues of what structures were in fact constructed along the MR-GO and IHNC—and whether they complied with Congress' mandate for the LPVHPP and the Army Corps' own standards, guidelines, manuals, and design memoranda—remain "hotly contested."  *In re Katrina*, 471 F.Supp.2d at 695.  Since establishing the absence of any disputed facts concerning the existence of  levees, floodworks, or other flood control structures along the MR-GO and IHNC is critical to the Government's motion, the Court cannot grant a motion to dismiss or motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

Similarly, it is essential to the Government's Motion to convince this Court that there are no disputed facts about the putative "fundamental relationship" between the "inextricably interconnected" MR-GO and the LPVHPP.  Motion at 3.  Remarkably, this is nothing more than hyperbole because the Government *does not advance this proposition in Defendant's Statement of Uncontested Facts—much less offer any supporting evidence.*  Merely from a procedural perspective, this omission is fatal. *See e.g.* United States District Court, Eastern District of Louisiana, Local Rule 56.1; *Hogar Club Paraiso, Inc. v. Varela Llavona*, 208 F.R.D. 481, 482 (D.P.R.  2002).

In any event, as noted above, the Government made a series of judicial admissions directly contradicting its latest litigation position. *See* Plaintiffs' Statement, Nos. 1-3 and Section III. (C), *infra*. Therefore, the Government's ploy fails for two reasons:  (1) it has made a binding judicial admission that the MR-GO and the LPV have *no relationship* and (2) there is no evidentiary support for the Government's assertion that its alleged MR-GO-related negligent conduct "is related in some manner to flood control . . . ."[1]  Indeed, the evidence in the record establishes not only that the MR-GO and LVP were two distinct projects with no functional or operational interrelationship,[2] but these federal projects had contradictory purposes because "[l]evees built to stop storm surge sit incongruously next to ship channels that speed it through a 'funnel' into the heart of the City . . . ."  Team Louisiana (Exh. 4), p. 224.

## III.   ARGUMENTS

### A.   This Court Has Twice Rejected Defendant's Argument That 33 U.S.C.§ 702c Immunizes The Government Against Flood Related Liability, Regardless Of The Cause

Defendant has conceded that the gravamen of Plaintiffs' claims is that their "harms were . . . caused by the negligent design, construction, maintenance, and operation of the Mississippi River Gulf Outlet ("MR-GO")."  Defendant's July 24, 2006 Motion to Dismiss (Document 822)

---

[1] In addition to alleging that the MR-GO caused catastrophic flooding, Plaintiffs have developed evidence (and will shortly move to amend their Complaint to allege) that the Army Corps engaged in additional negligent conduct that contributed to the failure of the I-walls on the west side of the IHNC and the ensuing catastrophic flooding of the Lower Ninth Ward by negligently undertaking site clearing for the Lock Expansion Project at the East Bank Industrial sites that had material adverse effects on the soil stability and protection for the flood control structure.  *See* Plaintiffs' Statement, No. 53.

[2] The MR-GO was authorized in 1956 in the Act of March 29, 1956, Pub. L. 84-455, 70 Stat. 65 (1956), while the LPV was authorized by the Flood Control Act of 1965.  *See* Plaintiffs' Statement of Facts, Nos. 4, 24.  Al Naomi, a former Army Corps senior LPV project manager, testified that the funding for the MR-GO and LPV are from different appropriations sources and the MR-GO was never part of the LPV.  *See* Rule 30(b)(6) Deposition (Exh. 8) at 322:25-323:9 (testimony of Al Naomi).

("Motion to Dismiss") at 1.  They further admitted that "plaintiffs assert that § 702c . . . only immunizes damages related to flood control projects[,]" (*id*. at 2), and, as this Court noted, "Plaintiffs contend that the MRGO is not a flood control project but an aid to navigation."  *In re Katrina*, 471 F.Supp.2d at 690.  Therefore, "Plaintiffs argue that they seek damages solely for the defalcations of the Army Corps with respect to the MRGO, not for the failure of any flood control project."  *Id.; see also* Plaintiffs' Statement, No. 52.

Defendant's summary judgment motion attempts to circumvent Plaintiffs' circumscribed allegations by arguing that Section 702c, as a matter of law, immunizes the United States from liability for all flood related damage liability, regardless of the cause, because the "text of § 702c is straightforward and unambiguous: 'No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place.'"  Motion at 7-8. On *four* occasions, this Court has rejected Defendant's interpretation of Section 702c as conferring blanket immunity on the Government from *any* floodwater damage, and the Government has cited no new legal authority or facts warranting a retraction of this Court's well-reasoned decisions.  *See* Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Summary Adjudication ("Plaintiffs' Summary Adjudication Memorandum") at 21-31, which is incorporated by reference.  As the Court stated only a few days ago, "[t]his Court has previously rejected the United States' contention that it is immune from damages for any floodwater regardless of its source . . . *and will continue to do so until guided by a higher court.*" January 30, 2008 Order and Reasons (Doc. No. 10984) ("Levee Action Dismissal Order") at p. 29 (emphasis added).

Like here, Defendant's Motion to Dismiss argued that it was immune from any liability because "Congress has determined that the United States cannot be held liable for *any* damages

resulting from flood or flood waters."  Motion to Dismiss at 2 (emphasis in the original).  This

Court flatly repudiated the Government's overreaching construction of Section 702c:  "The

Court finds that this wholesale approach to immunity in the context of this motion to dismiss is

neither supported by the history of the Flood Control Act of 1928, *nor in a fair reading* of

*Central Green Co. v. United States . . . ."  In re Katrina*, 471 F. Supp. 2d at 690 (emphasis

added).  This Court added that "the concept that the Government might be immune from damage

from the effect of some water and not as to other water is recognized in *Central Green.*"  *Id*. at

694.

     The Government resurrected this radical construction of the statute in its April 20, 2007

motion to certify for appeal the Court's Motion to Dismiss ruling (Document  No. 3841)

("Certification Motion").  Defendant insisted that "Section 702c can reasonably be interpreted as

providing the United States immunity where . . . plaintiffs' damages are caused by flood or flood

waters, irrespective of any involvement of a federal flood control project . . . [,]" since "[t]he

plain statutory language prohibits courts from imposing liability on the United States 'for any

damage from or by floods or flood waters at any place.'"  Certification Motion at 2 & 6

(bracketed text added).

     Again, this Court disapproved Defendant's extreme proposition in its order denying

Defendant's Certification Motion (Document No. 6194)("Certification Order"), commenting that

in reversing the Ninth Circuit, the Supreme Court in *Central Green*, "narrowed the immunity

granted by § 702c.[,]" (*id*. at 4).

> The holding in *Central Green* is: In order for the United States to
> be immune from damages caused by water under its control or
> supervision (1) *the water must have a nexus to a flood control
> project* and (2) the water must be "flood waters."  *. . . Clearly
> there are circumstances where the United States may be held liable*

8

>    *for damage resulting from flood water caused by its acts of*
>    *omission or commission.*

*Id*. at 4-5 (emphasis added).

Next, in the course of granting the Government's motion to dismiss a lawsuit brought by the Louisiana Environmental Action Network concerning the London Avenue Canal, the Court had a third opportunity to explicate its reading of Section 702c as applied to Hurricane Katrina flooding. *See* Document No. 8844 (November 2, 2007). The Court reiterated its holding in *In re Katrina* that the appropriate focus is identification of "'*the cause of the damage* rather than base a decision on the mere fact that a flood control project was involved.'" *Id.* at p. 11 (emphasis in original; citation omitted). Accordingly, this Court held that § 702c applied because – unlike *Robinson v. United States* where the alleged cause of the damages is a navigable waterway – the London Avenue Canal was "part of a flood control project" (the LPV) and the alleged damage was caused by levee breaches. *Id.* at 11-12.

Finally, in dismissing the lawsuit against the Army Corps for damages caused by flooding from the three outfall canals that are flood control structures in the LPV, the Court once again rebuffed Defendant's untenable construction of Section 702c that the statute "provides blanket immunity for damages from flood or floodwaters regardless of any relationship to a flood control project." Levee Action Dismissal Order at p. 29.

The time has come to put an emphatic end to this argument in this case. *See* 18B Fed. Prac. & Proc., Juris.2d § 4478.1 ("[t]he policies that support adherence to earlier rulings without perpetual reexamination surely do apply, whatever label is used . . . ."). Defendant has cited no new facts or law justifying any change of this Court's prior rulings. In any event, as explained below once again, the history of the Flood Control Act of 1928 and interpreting case law does

not support, much less compel, the Government's expansive  application of Section 702c.  This Court should therefore once again reject this unsustainable argument.

**B.      Defendant Cites No Authority Supporting Its Expansive Reading Of Section 702c**

Defendant fails to cite a single decision where a federal court has adopted its sweeping view of Section 702c.  In contrast, a substantial body of federal law has held the United States liable for flood damages in a variety of contexts.[3]  Indeed, "[i]t does not follow that the mere happening of a flood insulates the Government from all damage claims flowing from it." *McClaskey v. United States*, 386 F.2d 807, 808 & n. 1 (9th Cir. 1967).  *Graci*—holding that the United States could be held liable for flood damages caused by the MR-GO during Hurricane Betsy in 1965—is entirely consistent with this body of law.  *See also In re Katrina*, 471 F.Supp. 2d at 690-92 (quoting *Graci*, 456 F.2d at 22-27).

**1.      *United States v. James***

To compensate for the lack of authority supporting their interpretation of Section 702c, Defendant once again resorts to reading passages from Supreme Court decisions – out of context – to fabricate ersatz legal support.  In a nearly verbatim repetition of their motion for certification (Certification Motion at 7)[4], Defendant, quoting *United States v. James*, 478 U.S. 597 (1986), asserts that "[t]his 'sweeping' assertion of sovereign immunity 'safeguard[s] the United States against liability of any kind for damage from or by floods or

---

[3]  *See e.g. Peterson v. United States*, 367 F.2d 272 (9th Cir. 1966) (United States Air Force engineers' decision to dynamite an ice-jam causing a sudden discharge of water that damaged plaintiff's property not immunized under 33 U.S.C. § 702c); *Valley Cattle Co. v. United States*, 258 F.Supp. 12 (D. Hawaii 1966) (United States could be held liable for flooding of property downstream from negligently maintained drainage ditches on United States Air Force facility).
[4]  In their Certification Motion at 6, Defendant claimed that "the FCA 'safeguard[s] the United States against liability of any kind of damage from or by floods or flood waters in the broadest and most emphatic language.'"  (Quoting *James*, 478 U.S. at 608).

flood waters in the broadest and most emphatic language.'"  Motion at 8 (quoting *James*, 478

U.S. at 608 (internal citations omitted)).  As in their Certification Motion, however, the

Government ignores the Supreme Court's qualification just two sentences before this quote

where it noted, "Congress clearly sought to ensure beyond doubt that sovereign immunity would

protect the Government from 'any' liability *associated with flood control*."  *James*, 478 U.S. at

608 (emphasis added).[5]  Indeed, the Supreme Court explicitly endorsed the Fifth Circuit's same

conclusion in *Graci*.  487 U.S. at 602, n.2; *see also id.* at 605, n.7 (collecting cases with similar

holdings).

The Government's own brief in *James* also expressly stated that the issue of whether

Section 702c could be interpreted broadly – as Defendant now claims – was not before the Court:

"*This case does not present an occasion for resolving this issue concerning the scope of Section

702c because the damage for which respondents seek compensation plainly resulted from the

operation of federal flood control projects*." Brief of the United States, *United States v. James*,

(No. 85-434), 1985 WL 669416 at p. 12 & n. 2 (1985) (Attached to the Declaration of Pierce

O'Donnell ("O'Donnell Decl.") at Exh. A) (emphasis added; citations omitted).  Simply put,

*James* does not support the proposition that Defendant is immune from liability for flood

damages from any source because, by the United States' own admission, this question was never

presented to, or resolved by, the Supreme Court.

---

[5] Plaintiffs' May 8, 2007 Opposition to Defendant's Motion for Certification of Interlocutory
Appeal (Document No. 4431) at p. 14 & n. 5 described numerous other remarks in the opinion
where the Supreme Court limited its decision to the "flood control" context.  For example, the
Supreme Court stated "there are numerous passages in the legislative history that emphasize the
intention of Congress to protect the Federal Government from *any* damages liability that might
<u>arise out of flood control</u>."  *James*, 478 U.S. at 612 (emphasis in the original; underlining added).

### 2. *Central Green Co. v. United States*

The Supreme Court's opinion in *Central Green Co. v. United States*, 531 U.S. 425

(2001)—and once again the Government's briefing—also refute Defendant's argument that this

decision supports their overly broad interpretation of Section 702c.  As this Court previously

noted, the Supreme Court in *Central Green* reversed the dismissal, rejecting the "wholly

unrelated" test and holding that "'courts should consider the character of the waters that cause

the relevant damage rather than the relation between that damage and a flood control project.'"

*In re Katrina,* 471 F.Supp.2d at 694 (quoting *Central Green*, 531 U.S. at 437).  The Supreme

Court's decision to remand the case for further analysis of the character of the waters refutes the

Government's claim that it is immune from all flooding, regardless of the cause or source.  If its

assertion was correct, there would be no need for the Supreme Court to remand the case to the

trial court to examine the "character of the waters" – the United States would be immune from

flood related liability under any circumstance.

In addition, while the Supreme Court shifted the focus of Section 702c away from the

relationship between a "flood control project" and damaging "flood waters" as the touchstone of

immunity, it preserved the necessity of some relationship between "flood control" and "flood

waters" when examining the "character" of the waters:

> In *James*, we held that the phrase "flood or flood waters" is not
> narrowly confined to those waters that a federal project is unable to
> control, and that *it encompasses waters that are released for flood
> control purposes* when reservoired waters are at flood stage. . . .
> [I]t is the text of § 702c, *as informed by our holding in James* . . .
> that governs the scope of the United States' immunity from
> liability for damage caused 'by floods or flood waters'."

*Central Green*, 531 U.S. at 437 (emphasis added).

The Government's brief in *Central Green* further underscores the opinion's limitations. The Supreme Court never considered whether Section 702c confers limitless immunity on the United States for flood damages because, again, the issue was never presented to the Court. Instead, the United States insisted that the case should be dismissed because of the connection between the flood damages *and a flood control project*:

> [C]ontrary to petitioner's assertions, the court of appeals has not applied Section 702c without regard to whether *a factual nexus exists between the injury in question and the government's flood control activities.* . . . When the various other circuits have concluded that the particular facts before them satisfy that nexus requirement, they have held the government immune from suit. *In other cases, involving injuries more remotely related to federal flood control efforts, they have held the government subject to suit.*

Brief of the United States in Opposition to Petition for Writ of Certiorari, *Central Green Co. v. United States*, (No. 99-859), 2000 WL 33979643 at pp. 11-12 (2000) (attached to the O'Donnell Decl. at Exhibit B) (emphasis added).

In its recent Levee Action Dismissal Order, this Court reemphasized that "§ 702c provides immunity where . . . a flood control project fails to control flood waters because of *the failure of the flood control project itself.*" Levee Action Dismissal Order at 28 (emphasis added). Here, where Plaintiffs' complaint alleges an injury due to the MR-GO, a navigation project, rather than the failure of a component of the LVP, there is no immunity under Section 702c. Indeed, this Court cogently explained the limitations of the Supreme Court's decision in *Central Green Co v. United States*, 531 U.S. 425 (2001) that undermine Defendant's position. A critical facet of this analysis was its observation that in *Central Green*:

> [The Supreme Court] noted that the text of § 702c does not include the words "flood project" and thus "the text of the statute directs us to determine the scope of the immunity conferred not by the character of the federal project or the purposes it serves, but by the

character of the waters that cause the relevant damage **and the purposes behind their release**." In the factual context of *Central Green*, this phrase is key. Implicit in this case in light of the discussion of *James* is that the Court rejected a facile approach to immunity, that is if the water, regardless of whether it is flood water or not, comes from a flood protection project, there is immunity. Rather, the damaging water for which is immune in *Central Green* is for flood waters, not other kinds of waters, *that actually were being diverted in a flood control portion of the entire project*.

*Id*. at 32-33 (citations omitted; bold in the original; emphasis added).

This Court concluded that "a fair reading of *Central Green* and its narrow holding in conjunction with *James* leaves this Court with the belief that § 702c immunity arises where damage is caused by flood waters *emanating from a flood control project*." *Id*. at 33 (emphasis added). In contrast, Plaintiffs have never asserted that their damages were caused by the failure of a flood control project, but were instead directly attributable to the MR-GO – a project that Government has expressly stated was never a flood control project. ("The United States does not and has not at any time contended that the MRGO became a flood control project either in whole or in part."). Certification Rebuttal at 9. As a matter of law, therefore, Defendant is not immune from Plaintiffs' damage claims solely predicated on the MR-GO.

**C.    Defendant Once Again Tries To Transmute The MR-GO Into A Flood Control Project, Even Though It Has Admitted That The MR-GO Has No Flood Control Purpose**

Recognizing the futility of its interpretation of Section 702c, Defendant attempts to draw MR-GO-related flood damages within the ambit of Section 702c immunity by mystically transmuting a navigation project into an immunized flood control regime. "Although funded and constructed separately, the MRGO and the LPVHPP have always been inextricably interconnected." Motion at 3. As reflected in the history of this lawsuit, Defendant's claimed

transformation of the MR-GO is unsupported by the facts and has been disavowed by the Defendant.

### 1.      The Fictional Seabrook Lock

In its Motion to Dismiss, Defendant argued that the "MR-GO and the LPVHPP are inherently and inextricably intertwined."  Motion to Dismiss at 4.  The factual basis for this statement was Defendant's contention that "LPVHPP planners called for construction of a dual-purpose lock at Seabrook to remedy certain unintended consequences of MR-GO that were recognized while MR-GO was under construction."  *Id*.  Plaintiffs pointed out in their opposition to the Motion to Dismiss that the Government conveniently failed to mention that *the Seabrook Lock was never constructed*.

Even if the Seabrook Lock had been built, however, its limited purpose – as Defendant conceded – was to "'limit objectionable salinity intrusion into the lake [Pontchartrain] and tidal currents in the canal [MR-GO] . . . developing from construction of the MR-GO.'" Motion to Dismiss at 26 (bracketed text added; citation omitted).  Thus, the Seabrook Lock was intended only to prevent salt water from entering Lake Pontchartrain and to quell "tidal currents" in the MR-GO.  No mention was made in Defendant's Motion to Dismiss of any hurricane flood control purpose behind the imaginary Seabrook Lock even though Defendant speciously claimed that this single structure transformed the MR-GO navigation canal into a hurricane flood protection facility under the LPV.  Given Defendant's failure to offer any competent evidence, the Court properly ruled that "[i]t is certainly not clear that the MRGO has morphed into a hybrid flood control project/navigational aid project."  *In re Katrina*, 471 F. Supp. 2d at 695.

### 2. The LPV Was Not Designed To Protect
### Against MR-GO-Related Flooding

In Defendant's Certification Motion, the Government abandoned its claim that the MR-GO had undergone a fundamental transmogrification into a flood control project because of the Seabrook Lock, instead arguing that the "[t]he legislative history reveals that MRGO was understood to be related not only to national waters but also to the national flood control program." Certification Motion at 10. Defendant's purported basis for this claim was the construction of "levees" along the MR-GO (Certification Motion at 10 & n. 1), but according to Defendant, the "House and Senate committees observed that the proposed project would entail 'construction of a new levee along the Gulf Outlet Channel . . . *to prevent entry of lake surges* into the developed areas.'" *Id*. (emphasis added; citations omitted).

The supposed new levees were thus intended to serve as protection against storm surges from Lakes Pontchartrain and Borgne, *rather than any negative effects of the MR-GO*. Thus, again, Defendant failed to explain how the MR-GO became a "flood control project."

### 3. The Government's Flip-Flop

In the June 22, 2007 United States' Rebuttal of Plaintiff's Sur-Reply in Support of Opposition to Defendant's Motion to Certify (Document No.) ("Certification Rebuttal"), the Government did an abrupt about-face in its attempt to transform the MR-GO into a flood control project—but only, as it turns out, as a temporary expedient to convince this Court that an interlocutory appeal was appropriate. Specifically, Defendant stated:

> The parties agree that the MRGO was *not* a flood control project
> and was *not* absorbed into the LPVHPP. The parties agree that the
> MRGO did *not* have a flood control purpose or function  The
> parties agree that no levees were constructed *as part of the MRGO
> project*. . . . The United States does not and has not at any time
> contended that the MRGO became a flood control project either in
> whole or in part. The character of the MRGO project remained

> unchanged from its inception until Hurricane Katrina. . . .[T]he
> United States does not contend that the MR-GO has flood control
> features, nor does the United States contend that MR-GO ever
> became anything other than what it always was: a navigation
> project.

Certification Rebuttal at 4 & 8-9 (emphasis added).

In denying the Defendant's Certification Motion, this Court observed that "[t]he Government's multiple briefs have a Gilbert and Sullivan topsy-turvy flavor" due in part to Defendant's claim, and then disclaimer, that the MR-GO was a flood control project. Certification Order at 6. Now, notwithstanding its wholesale repudiation of its earlier assertion that the MR-GO was part of a greater flood control project, the Government exhumes this baseless contention that the MR-GO was a flood control project merely because it says so: "Never mind the whys and wherefore." (Gilbert & Sullivan, H.M.S. Pinafore, Act 2 (1878)). This kind of gamesmanship is intolerable—the prior admissions are binding on the Government. *See Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001); *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476-77 (5th Cir. 2001).

### 4.      The MR-GO and LPV Are Neighbors, Not Siblings

The essence of Defendant's argument appears on page 18 of their Summary Judgment Motion where they claim:

> §702c immunity would attach to the design, construction,
> operation, maintenance, and repair of the MRGO because those
> activities were sufficiently associated with and related to flood
> control activities that were taking place *at the same time in
> virtually the same place*.  As noted above, numerous links between
> the MRGO and the LPVHPP existed throughout the history of the
> two projects.  That this is so should be unsurprising, *given the
> physical and temporal proximity of the projects* and that one is a
> waterway and the other a subsequent flood control project
> designed and built to protect adjacent areas from flooding.

Motion at 18 (emphasis added).

Defendant's entire summary judgment motion fails to cite any instance in which a portion of the LPV was designed or constructed to mitigate a flooding threat specifically caused, or exacerbated, by the MR-GO. Instead, Defendant ridiculously argues that the MR-GO became an immunized flood control project simply because it was *near* the LPV at the *same time* a measure of construction activity took place related to the LPV. By this definition, Lake Borgne, Lake Pontchartrain and the Gulf of Mexico are also government flood control projects, and Defendant has cited no case or statutory authority compelling such an obviously absurd result. As this Court ruled just a few days ago, "simply because water that caused damage might have been in contact with a flood control project does not automatically provide immunity . . . ." Levee Action Dismissal Order at 31.

The Government further contends that the MR-GO became an immunized flood control project because "material was obtained from the bed of the MRGO for the specific purpose of constructing hurricane protection levees." Motion at 20. This argument is fatuous since "material" was also imported from outside the area, but that did not convert a rock quarry hundreds of miles away into a federal flood control project. It is incontrovertible that the DNA of the MR-GO and the LPV do not match.

In any event, the Government cites no authority supporting its conclusion that the MR-GO became an immunized flood control work simply because material dredged during its maintenance or construction may have been used to build portions of a distinct flood control project. Indeed, by a parity of reasoning, a mountain with iron ore deposits could be considered an aircraft carrier, a building or even a kazoo simply because iron ore excavated from the mountain was processed and used in their construction. Again, Defendant cites no evidence or authority even remotely substantiating such a risible conclusion.

**5.** **Plaintiffs' Complaint Does Not Allege Any Nexus Between The MR-GO and LPV**

In a final desperate bid to convince this Court that the MR-GO was a flood control project, Defendant argues that this transformation is reflected in the allegations in Plaintiffs' Complaint, and that "[t]aken as true, these allegations reveal the existence of an essential nexus between the MRGO and the LPVHPP . . . ." Motion at 19. Beside the fact that Plaintiffs do not allege any nexus—"essential" or otherwise—between the two distinct projects, the obvious problem with this argument is that Defendant expressly rejected the truth of these allegations in its answer.[6] Defendant asserted that "[a]ny allegations in the Complaint . . . not expressly admitted herein *are denied*." Defendant's April 2, 2007 Answer (Doc. No. 3640) ("Defendant's Answer") at 1 (emphasis added).[7] By denying these averments, Defendant disputed the truth of these allegations, precluding summary judgment. *See McHenry v. Ford Motor Co.*, 269 F.2d 18, 22- 23 (6th Cir. 1959) ("Defendant's answer denied various allegations in plaintiffs' complaint and numerous paragraphs in the answer averred that defendant was without knowledge or information sufficient to form a belief as to the facts alleged. . . . Under these pleadings, the material facts of the case were disputed."); *Coleman v. U.S. Dept. of Homeland Sec.*, 2007 WL 3124542 at 1 (D.Neb. 2007).

Even if Defendant had not denied these allegations, according to Defendant, Plaintiffs alleged that the MR-GO "increased the storm surge from Hurricane Katrina" (Defendant's

---

[6] In denying the Certification Motion, the Court ruled that Plaintiffs had not admitted in their Complaint the "vigorously contested" issue of whether there were "levees" along the MR-GO. Certification Order at 5-6.
[7] Defendant's Motion argues that the conversion of the MR-GO to an immunized flood control project is supported by Paragraphs 1-3, 51-57, 73, 75, 82, 84-85 and 102 of Plaintiffs' Complaint. Motion at 18-19. Except for two immaterial sub-issues in Paragraphs 56 and 84, Defendant's Answer expressly denied the specific allegations in Paragraphs 1-3, 51-57, 73, 75, 82, 84-85 and 102 of Plaintiffs' Complaint.

Summary Judgment Motion at 18), and the collapse of the so-called levees "is directly attributable to storm surge acceleration produced by the MR-GO." *Id*. at 19.  This language states only that the MR-GO caused Plaintiff's damages.  The Government still fails to explain how this tragic relationship – *i.e.*, the MR-GO *causing* the catastrophic overtopping of structures along the MR-GO – morphed the MR-GO into an immunized flood control project.  Surely, if a Navy vessel negligently rammed into a Mississippi River levee and flooded New Orleans, that would not make the vessel a flood control project – it would defeat immunity under Section 702c.  *In re Katrina,* 471 F.Supp.2d at 694-95.

In sum, as Defendant has conceded, "[t]he character of the MRGO project remained unchanged from its inception until Hurricane Katrina. . . . [T]he United States does not contend that the MR-GO has flood control features, nor does the United States contend that MR-GO ever became anything other than what it always was: a navigation project."  Certification Rebuttal at 8-9.  Since Section 702c does not immunize Defendant from flood damages caused by a navigation project, the Government is not immune from Plaintiffs' damage claims caused by the MR-GO, and this Court should deny Defendant's motion for summary judgment.

> **D.  To The Extent That Plaintiffs' Damages Were Caused, In Part, By The Failure Of Flood Control Structures, The Government Remains Liable For That Portion Of Plaintiffs' Damages Attributable To The MR-GO**

Defendant's Motion makes repeated references to the failure of segments of the LPVHPP.  *See* Motion at 6-7.  Nowhere, however, does the Government even argue, much less present supporting evidence, that these failures were *the sole cause* of the flooding that caused Plaintiffs' damages.  Similarly, Defendant provides *no facts* conclusively showing that some measure of Plaintiffs' damages *were not attributable* to the MR-GO.  Simply put, Defendant's Motion does not preclude a finding that some part of Plaintiffs' damages stemmed from the

failure of the LPV and the remainder was caused by the MR-GO.  In fact, the Army Corps sponsored IPET report assigned no more than 50 percent of the "direct economic losses, excluding public and utilities infrastructure" to levee and flood wall breaches.  *See* Exhibit (20) (IPET Executive Summary) p. I-67.

The Supreme Court in *Central Green* repudiated the "all or nothing" approach to a plaintiff's damages under the discarded "wholly unrelated" test which totally immunized the United States for all flood damages even if the flood waters were only tangentially related to a flood control project.  Indeed, Defendant's counsel, Robin Smith, conceded this conclusion during oral argument on Defendant's Motion to Dismiss by stating: " I think I would construe *Central Green* the same way, Your Honor, suggests, which is you don't have immunity from the damages that could be segregated."  Transcript of Motion to Dismiss Oral Argument ("Motion to Dismiss Transcript") (O'Donnell Declaration at Exh. C) at 33: 2-4.  This Court also noted Defendant's concession:

> [T]he Government's position ignores the fact that even the Supreme Court in *Central Green* opened the possibility of a segregation of damages – those for which the Government would be immune under § 702c§ and those for which immunity would not attach.  *Indeed, the Government even concurred with this reading at oral argument.*

*In re Katrina*, 471 F. Supp. 2d at 694 (emphasis added).

In sum, the Government has conceded that it could be liable for damages attributable to the MR-GO.  However, it has presented no facts or evidence showing that Plaintiffs' damages were not caused, at least in part, by the MR-GO.  For this additional reason, this Court should deny Defendant's Motion.

**E.**     **Section 702c Immunity Only Applies To Authorized and Completed Flood Control Projects**

From the outset of this lawsuit, Defendant's immunity claim was predicated on the assertion that the LPV was a completed project that had been designed or constructed in accordance with the project dimensions and specifications submitted to, and approved by, Congress.  In its Motion to Dismiss, the Government asserted that: "*As constructed*, this levee extended east and south along the bank of the MR-GO for several miles beyond Bayou Dupre . . . .  On August 29, 2005, federal flood control levees *completely surrounded* the places where the plaintiffs allegedly were residing."  Motion to Dismiss at 3 & 14 –15 (emphasis added).

During oral argument on Defendant's Motion to Dismiss, Defendant's counsel stated that "[t]here's really no question, at least if this map is to be credited, that the improvements that were part of the Lake Pontchartrain Vicinity Hurricane Protection Project *were completed* in these areas where the plaintiffs resided prior to Hurricane Katrina."  (Motion to Dismiss Transcript) at 22:22-25 (emphasis added).  Likewise, in its Certification Motion, the Government claimed that "[a] Corps of Engineers map dated September 30, 1995, shows that LPVHPP 'improvements' *had been completed* around the perimeter of New Orleans east and around the relevant portions of the Lower Ninth Ward and St. Bernard Parish . . . ."  Certification Motion at 10 (emphasis added).

Defendant's Summary Judgment Motion brims with similar references to a completed flood control project: "New Orleans East *was encircled* by LPV flood control structures on August 29, 2005. . . . LPV levees and other flood control structures *were in place* on the south side of the MRGO between the IHNC and Verret (Reach 1 and Reach 2) at that time."  Motion at 5-6 (emphasis added).

The Government thus recognizes a fundamental requirement for Section 702c immunity: the federal flood control project must be the plan authorized by Congress and it must have been completed, thereby affording the prescribed level of protection. In other words, Section 702c immunity hinges on the fulfillment of the flood control program proposed to, and approved by, Congress.

This conclusion is implicit in the Supreme Court's *Central Green* decision. The Supreme Court held that "[i]n *James*, we held that the phrase 'flood or flood waters' is not narrowly confined to those waters that a federal project in unable to control, and that it encompasses waters that are released for flood control purposes when reservoired waters are at flood stage." *Central Green*, 531 U.S. at 437. The underlying assumption in the Supreme Court's reasoning is that the Government is immune from damages stemming from the inability of a federal flood control project to stop an abnormally amplified rush of water exceeding the system's design capacity. In contrast, where, as here, the LPV was never designed in a manner that would provide the hurricane protection mandated by Congress, or even completed according to the Army Corps' defective design, and Plaintiffs damages are due, at least in part, to the Army Corps' failure to complete the project, Section 702c does not immunize the Government from *any* related flood damages.

In their Motion for Summary Adjudication, Plaintiffs document the facts that the LPV was not designed and constructed consistent with Congress' mandate and that the LPV was woefully incomplete at the time of Hurricane Katrina. Those arguments are incorporated by reference here. Plaintiffs' Summary Adjudication Memorandum at pp.2-4, 15-21, 30-39.

The authorities discussed in Plaintiffs' Summary Adjudication Memorandum demonstrate that that as far back as 80 years ago, Congress knew that flood protection required

more than "piles of dirt."  (Motion to Dismiss Transcript) at 26:24-27 (Statement of Government counsel Robin Smith) ("If these are flood-works, they may have just been piles of dirt. And as one my colleagues said to me: Well, what is a levee?  A levee is a pile of dirt.  And these are flood works.").  Adequate flood protection necessitated the development and *complete construction* of a contiguous, integrated ring of defenses.  In exchange for the complete installation of such an expensive system, Congress demanded immunity, but it never envisioned that the federal government would be immune from damages caused by a spotty and piecemeal system that remained unfinished forty years after being authorized by Congress.  In other words, it would be absurd to think, as the Government argues, that Congress would expect absolute immunity for a "pile of dirt" placed helter-skelter in the path of  hurricane storm surge.

## IV.    CONCLUSION

Fortunately, this is not a case where the Court will be reluctantly forced to confer Section 702c immunity on a grossly incompetent Army Corps.  Instead, this is the case where at least half of the Katrina victims can get their day in court by this Court emphatically declaring that the Government cannot hide behind an anachronistic immunity statute.  The epic tragedy of the United States' drowning of Greater New Orleans must not be compounded by the gross miscarriage of justice that would stem from dismissing this lawsuit when all the Supreme Court and Fifth Circuit precedents compel a trial on the merits.  Plaintiffs are entitled to prove that the people of Orleans and St. Bernard Parishes were betrayed by their own Government's wanton failure to provide the hurricane protection promised in the Flood Control Act of 1965.  For all the

foregoing reasons, this Court should deny Defendant's Motion to Dismiss, Or, In The

Alternative, Motion for Summary Judgment.

Dated: February 1, 2008                                Respectfully submitted,

**O'Donnell & Associates P.C.**

By: s/ Pierce O'Donnell

Pierce O'Donnell (*pro hac vice*)
550 S. Hope Street, Suite 1000
Los Angeles, California 90071
Phone:  (213) 347-0290
Fax:  (213) 347-0298


**The Andry Law Firm, LLC**

By: s/ Jonathan B. Andry
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile:  (504) 585-1788

**Law Offices of Joseph M. Bruno**          **Domengeaux Wright Roy & Edwards LLC**
By: s/ Joseph M. Bruno
Joseph M. Bruno (LSBA No. 3604)            Bob F. Wright (LSBA No. 13691)
855 Baronne Street                          James P. Roy (LSBA No. 11511)
New Orleans, Louisiana 70133                556 Jefferson Street, Suite 500
Telephone: (504) 525-1335                   P.O. Box 3668
Facsimile:  (504) 581-1493                  Lafayette, Louisiana 70502-3668
                                            Telephone: (337) 233-3033
                                            Facsimile:  (337) 233-2796

**Fayard & Honeycutt**                      **Girardi & Keese**

Calvin C. Fayard, Jr. (LSBA No. 5486)       Thomas V. Girardi (*pro hac vice*)
Blayne Honeycutt (LSBA No. 18264)           1126 Wilshire Boulevard
519 Florida Avenue, S.W.                    Los Angeles, CA 90017
Denham Springs, Louisiana 70726             Telephone: (213) 489-5330
Telephone: (225) 664-4193                   Facsimile:  (213) 481-1554
Facsimile:  (225) 664-6925

**Ranier, Gayle & Elliot, LLC**            **Levin, Papantonio, Thomas, Mitchell
                                            Echsner & Proctor, P.A.**

N. Frank Elliot III
1419 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337).494.7218

Clay Mitchell (*pro hac vice*)
Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**McKernan Law Firm**

Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**

Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Law Office of Elwood C. Stevens, Jr., a Professional Law Corporation**

Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

**Cotchett, Pitre, Simon & McCarthy**

Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Law Office of Frank J. D'Amico, Jr. APLC**

Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

**Salas & Co., LC**

 Camilo K. Salas, III (LSBA No. 11657)
650 Poydras Street, Suite 1650
New Orleans, LA  70130
Telephone: (504) 799-3080
Facsimile:  (504) 799-3085
**Attorneys for Plaintiffs**

**Robinson, Calcagnie & Robinson, Inc.**

Mark Robinson (Cal State Bar No. 54426
620 Newport Center Drive – 7th Floor
Newport Beach, CA 92660
1-888-701-1288

**<u>CERTIFICATE OF SERVICE</u>**

I, Pierce O'Donnell, hereby certify that on February 1, 2008, I caused to be served

**<u>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ,OR, IN THE</u>**

**<u>ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT</u>**, upon Defendant's counsel,

Robin D. Smith, Catherine Corlies, Traci Colquette, and Jim McConnon by ECF and email at

robin.doyle.smith@usdoj.gov; catherine.corlies@usdoj.gov, traci.colquette@usdoj.gov, and

jim.mcconnon@usdoj.gov

/s/ Pierce O'Donnell

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................... 1

II.  FACTS ................................................................................ 2

III.  ARGUMENT ........................................................................ 6

    A.  This Court Has Twice Rejected Defendant's Argument That 33 U.S.C. § 702c
        Immunizes The Government Against Flood Related Liability, Regardless Of The
        Cause ............................................................................................6

    B.  Defendant Cites No Authority Supporting Its Expansive Reading
        Of Section 702c..............................................................................10

        1.  *United States v. James*. ........................................................10

        2.  *Central Green Co. v. United States*. ......................................12

    C.  Defendant Once Again Tries To Transmute The MR-GO Into A Flood Control
        Project, Even Though It Has Admitted That The MR-GO Has No Flood Control
        Purpose.........................................................................................14

        1.  The Fictional Seabrook Lock...................................................15

        2.  The LPV Was Not Designed To Protect Against MR-GO- Related Flooding..16

        3.  The Government's Flip-Flop ....................................................16

        4.  The MR-GO and LPV Are Neighbors, Not Siblings.......................17

        5.  Plaintiffs' Complaint Does Not Allege Any Nexus Between The MR-GO and
            LPV.......................................................................................19

    D.  To The Extent That Plaintiffs' Damages Were Caused, In Part, By The
        Failure Of Flood Control Structures, The Government Remains Liable
        For That Portion Of Plaintiffs' Damages Attributable To The MR-GO ...............20

    E.  Section 702c Immunity Only Applies To Authorized and Completed
        Flood Control Projects ......................................................................22

    IV.  CONCLUSION  ...........................................................24

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986).................................................................... 5

*Ashford v. United* States
   ___ F. 3d ___, 2007 WL 4418176 at 2 (5th Cir. 2007) ........................... 3

*Central Green Co. v. United States*
   531 U.S. at 437................................................................. 8, 12, 13

*Coleman v. U.S. Dept. of Homeland Sec.*
   2007 WL 3124542 at 1 (D.Neb. 2007) ........................................... 19

*Graci v. United States*
   456 F.2d 20 (5th Cir. 1971) ....................................................... 1

*Heritage Bank v. Redcom Laboratories, Inc.*
   250 F.3d 319 (5th Cir. 2001) .................................................... 17

*Hogar Club Paraiso, Inc. v. Varela Llavona*
   208 F.R.D. 481 (D.P.R.  2002) .................................................... 5

*In re Katrina Canal Breaches Consolidated Litigation, (Robinson v. United States)*
   471 F.Supp.2d 684 (E.D. La. 2007)........................... 1, 5, 7, 8, 9, 10, 12, 15, 21

*Martinez v. Bally's Louisiana, Inc.*
   244 F.3d 474 (5th Cir. 2001) .................................................... 17

*McClaskey v. United States*
   386 F.2d 807 (9th Cir. 1967) .................................................... 10

*McHenry v. Ford Motor Co.*
   269 F.2d 18 (6th Cir. 1959) ..................................................... 19

*United States v. James*
   (No. 85-434), 1985 WL 669416 (1985)........................................... 11

*United States v. James*
   478 U.S. 597 (1986) ............................................................. 10

**Treatises**

18B Fed. Prac. & Proc., Juris.2d § 4478.1 ........................................... 9