UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br>NUMBER:  05-4182 "K"(2)<br>JUDGE Duval<br>MAG. Wilkinson |
| PERTAINS TO:  MRGO, Robinson<br>(No. 06-2268) | |

**PLAINTIFFS' OBJECTIONS TO THE DECLARATIONS OF
ALFRED C. NAOMI AND GERARD A. COLLETTI IN SUPPORT OF
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiffs hereby object to the Declarations of Alfred C. Naomi (Exh. 79) and Gerard A. Colletti (Exh. 78) as follows:

**I.      Declaration of Alfred C. Naomi**

<u>Overall Objection and Motion to Strike</u>

Pursuant to Fed. R. Civ. P. 56(e), "statements in affidavits [must ] be based on personal knowledge and not based on information and belief." *Bolen v. Dengel*, 340 F.3d 300, 313 (5th Cir. 2003).  Affidavits that fail to satisfy this standard must be stricken. *See e.g. Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997); *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1164 (5th Cir. 1993).

In Paragraphs 1 through 3 of his declaration, Mr. Naomi describes his employment status, but he doe not state that he has personal knowledge of the facts contained in his declaration. Moreover, while in Paragraph 4, he claims he is "familiar with the authorization, appropriation,

1

design, construction and maintenance of the LPV levees . . . ," he again fails to state that he has personal knowledge about the facts asserted in his declaration. Indeed, in paragraphs 5-8, he makes statements about the content of certain documents, without ever stating that he actually read or reviewed the material. In addition, in paragraphs 9 and 16 of his declaration, he makes observations about the "overtopping" or "breaches" of various alleged flood control structures, without ever explaining how he acquired his knowledge of these failures. Simply put, even the content of the declaration undermines any claim that he has personal knowledge of the stated facts, and this Court should therefore either strike his declaration or refuse to consider it when ruling on Defendants' motion for summary judgment.

Statement

¶ 7 "Design Memorandum 3, Supplement 1, also known as the "Chalmette Extension," approved on August 12, 1969, by Wendell E. Johnson, Chief of Engineering, Civil Works, and authorized by Public Law 89-298, provided protection to a larger area by extending the levee southward along the MRGO past Bayou Dupre to Verret and from there westerly to the Mississippi River levee at Caernarvon."

Objection

Vague and ambiguous; assumes facts not in evidence; speculation.

Discussion

This statement states that the design memorandum provided some form of "protection," without explaining the nature of this protection. The term "protection" could mean anything from an insubstantial river levee intended to protect only sparsely inhabited farm land, to a more substantial levee or other flood control structure purposed to protect densely populated urban areas from ocean storm surge or other more powerful ocean or weather phenomena. In addition,

according to this statement, the design memo "extended" a levee southward along the MRGO. This assumes that there was a pre-existing levee to be "extended," yet Mr. Naomi does not specify the location of the alleged "levee" to be extended, not does he provide any evidence of such a "pre-existing" levee.

Statement

¶ 9 The Citrus and New Orleans East back levees that were overtopped and breached on August 29, 2005, along the Gulf Intracoastal Waterway during Hurricane Katrina were designed, constructed, and maintained under the authority and by appropriations made pursuant to the LPV.

Objection

Vague and ambiguous; assumes facts not in evidence; speculation.

Discussion

    Mr. Naomi cites no facts or authority to support his assumption that the Citrus Back Levee and the New Orleans Back Levee were, in fact, levees that (a) satisfied the Congressional mandate embodied in the Flood Control Act of 1965, or (b) satisfied the Army Corps' own regulations, standards, or policies.  Simply put, he provides no evidence that these structures were "levees" at all, much less levees that "were designed, constructed , and maintained under the authority and by appropriations made pursuant to the LPV.  Moreover, he cites to facts to support his conclusion that these alleged "levees" were overtopped or breached, and if they were overtopped or breached, that this was the sole manner in which these structures failed.

Statement

¶ 12.  The levees and other flood control structures along the MRGO, including the levees along Reach 2 of the MRGO, were designed and constructed under numerous contracts, with completion dates between 1967 and 2003.

Objection

Vague and ambiguous; assumes facts not in evidence; speculation.

Discussion

    Mr. Naomi provides no evidence establishing that the structures "along the MRGO" were "levees" or "other flood control structures," or that these structures were even "designed and constructed."

Statement

¶ 13 All of the funding for all of the contacts involved in the design and construction of the levees existing along the MRGO, including those along Reach 2, came from the LPV, including non-Federal cost shared money.

Objection

Vague and ambiguous; assumes facts not in evidence; speculation.

Discussion

    Mr. Naomi assumes that the alleged structures "along the MRGO" were, in fact, "levees" without citing any evidence establishing that these were "levees," or that they structures were even "designed and constructed."

Statement

¶ 14 The levees and other flood control structures along the MRGO and the GIWW, including the levees along Reach 2 of the MRGO, were constructed in part of soils hydraulically dredged from the adjacent waterways and built in stages because of poor foundation conditions.

Objection

Vague and ambiguous; assumes facts not in evidence; speculation.

Discussion

    Mr. Naomi again assumes that the structures "along the MRGO and the GIWW" were actually "levees" or "other flood control structures," without citing any evidence supporting this supposition.

Statement

¶ 15 The levees and other flood control structures along the MRGO and the GIWW, including the levees along Reach 2 of the MRGO, were designed and constructed to control storm surge associated with a SPH Hurricane moving across Lake Borgne and adjacent wetlands and waterways.

Objection

Vague and ambiguous; assumes facts not in evidence; speculation; vague and ambiguous.

Discussion

    Mr. Naomi again assumes that the structures "along the MRGO and the GIWW" were actually "levees" or "other flood control structures," without citing any evidence supporting this supposition. Moreover, he cites no evidence supporting his conclusion that these structures were actually constructed or completed, nor does he reference any authority or underlying facts validating his opinion that these structures "were designed and constructed to control storm surge

associated with a SPH Hurricane moving across Lake Borgne and adjacent wetlands and waterways." Finally, the statement is ambiguous in that Mr. Naomi does not specify what is meant by "storm surge." Does he mean any type of weather phenomena, storm surge associated with hurricanes only, or hurricane storm surge exacerbated by the effects of the MR-GO.

Statement

¶ 16 Those levees and other flood control structures that were overtopped and breached along the MRGO and the GIWW on August 29, 2005, were designed, constructed and maintained under the authority and by appropriations made pursuant to the LPV.

Objection

Vague and ambiguous; assumes facts not in evidence; speculation; vague and ambiguous.

Discussion

Mr. Naomi refers to "those" levees and other flood control structures without specifying which structures, in particular, he means. Moreover, he does not provide any foundation for his observation that "those" structures where "overtopped" or "breached" since he does not claim to have personal knowledge of the facts in his declaration. Mr. Naomi again assumes that the structures "along the MRGO and the GIWW" were actually "levees" or "other flood control structures," without citing any evidence supporting this supposition. Moreover, he cites no evidence supporting his conclusion that these structures were actually constructed, completed or maintained. He also omits any reference to the party or parties responsive for such maintenance.

## II. Declaration of Gerard A. Colletti

Overall Objection

Lacks foundation; assumes facts not in evidence; speculation; vague and ambiguous.

6

Mr. Colletti provides no foundation supporting his opinion or conclusion that the structure he allegedly inspected was a "Lake Pontchartrain and Vicinity Hurricane Protection Project levee." Moreover, while he clearly had personal knowledge of his own observations during this supposed inspection, he provides no facts, nor does he claim to have personal knowledge that this "inspection was conducted pursuant to 33 C.F.R. § 208.10." In fact, the evidence shows that there could be no 33 C.F.R. § 208.10 with respect to the alleged MRGO levees, as a matter of fact and law.

The LPVHPP envisioned a degree of local participation in the construction of the hurricane protection plan. H.R. Doc. 231 (Exh. 10), the written 1965 Army Corps proposal for the LPVHPP submitted to, and approved by, Congress provided that:

> It is proposed that construction of the barrier plan of protection for the areas around Lake Pontchartrain, and of the plan of protection for Chalmette shall be subject to the conditions that prior to initiation of construction on each separable independent feature local interests give assurances satisfactory to the Secretary of the Army . . . .

H.R. Doc. 231 at 73-74.

33 C.F.R. § 209.220(a) provides that no work on flood control projects is undertaken until the Secretary of the Army obtains the required assurances, and then:

> Completed projects or completed useful units thereof are normally turned over to local interests for maintenance and operation as soon as the construction and testing of equipment is completed and the project is in proper condition for the assumption of maintenance and operation by local interests.

33 C.F.R. § 209.220(a).

Once the *completed* projects are turned over to local interests, inspections are then conducted pursuant to 33 C.F.R. § 208.10 to insure that the local interests are properly maintaining the structures in their custody. Where a structure has never been turned over to local

7

interests, however, there can be no 33 C.F.R. § 208.10 inspection because the structures remain under the control of the Army Corps. Here, the Army Corps' representative testified that the alleged levees along Reach 2 of the MR-GO were never turned over to local interests because they were incomplete, and therefore there could be no 33 C.F.R. § 208.10 inspection. *See* Rule 30(b)(6) Deposition at 120:2-123:23 (testimony of Alfred Naomi). In sum, Mr. Colletti lacks personal knowledge as to the nature or composition of the earthen structure he "inspected" and as to his conclusion (and improper legal opinion) that this so-called inspection was conducted pursuant to 33 C.F.R. 208.10. He further provides no facts supporting these conclusions, and both conclusions are contravened by Defendants' own evidence. Accordingly, this Court should strike, or at least disregard, Mr. Colletti's clearly speculative declaration.

Dated: January 31, 2008                                   Respectfully submitted,

**O'Donnell & Associates P.C.**

By: s/ Pierce O'Donnell
Pierce O'Donnell (*pro hac vice*)
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone:  (213) 347-0290
Fax:  (213) 347-0298

**The Andry Law Firm, LLC**

By: s/ Jonathan B. Andry
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile:  (504) 585-1788

**Law Offices of Joseph M. Bruno**                         **Domengeaux Wright Roy & Edwards LLC**
By: s/ Joseph M. Bruno

8

Joseph M. Bruno (LSBA No. 3604)
855 Baronne Street
New Orleans, Louisiana 70133
Telephone: (504) 525-1335
Facsimile:  (504) 581-1493

**Fayard & Honeycutt**

Calvin C. Fayard, Jr. (LSBA No. 5486)
Blayne Honeycutt (LSBA No. 18264)
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile:  (225) 664-6925

**Ranier, Gayle & Elliot, LLC**

N. Frank Elliot III
1419 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337).494.7218

**McKernan Law Firm**

Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

Bob F. Wright (LSBA No. 13691)
James P. Roy (LSBA No. 11511)
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (337) 233-3033
Facsimile:  (337) 233-2796

**Girardi & Keese**

Thomas V. Girardi (*pro hac vice*)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile:  (213) 481-1554

**Levin, Papantonio, Thomas, Mitchell Echsner & Proctor, P.A.**

Clay Mitchell (*pro hac vice*)
Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**

Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Law Office of Elwood C. Stevens, Jr., a Professional Law Corporation**

Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

**Cotchett, Pitre, Simon & McCarthy**

Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Law Office of Frank J. D'Amico, Jr. APLC**

Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

**Salas & Co., LC**

 Camilo K. Salas, III (LSBA No. 11657)
650 Poydras Street, Suite 1650
New Orleans, LA  70130
Telephone: (504) 799-3080
Facsimile:  (504) 799-3085
**Attorneys for Plaintiffs**

**Robinson, Calcagnie & Robinson, Inc.**

Mark Robinson (Cal State Bar No. 54426
620 Newport Center Drive – 7th Floor
Newport Beach, CA 92660
1-888-701-1288

## CERTIFICATE OF SERVICE

I, Pierce O'Donnell, hereby certify that on February 1, 2008, I caused to be served **PLAINTIFFS' OBJECTIONS TO THE DECLARATIONS OF ALFRED C. NAOMI AND GERARD A. COLLETTI IN SUPPORT OF OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**, upon Defendants' counsel, Robin D. Smith, Catherine Corlies, Traci Colquette, and Jim McConnon by ECF and email at robin.doyle.smith@usdoj.gov; catherine.corlies@usdoj.gov, traci.colquette@usdoj.gov, and jim.mcconnon@usdoj.gov

                                            /s/ Pierce O'Donnell
                                            Pierce O'Donnell