UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |  |
|---|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * * | | |
| CONSOLIDATED LITIGATION | * * | CIVIL ACTION | |
|  | * * | NO. 05-4182 and consolidated cases | |
| PERTAINS TO: BARGE |  * * | SECTION "K" (2) | |
| *Boutte v. Lafarge* | 05-5531 | * | |
| *Mumford v. Ingram* | 05-5724 | * | |
| *Lagarde v. Lafarge* | 06-5342 | * | JUDGE |
| *Perry v. Ingram* | 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | * | |
| *Parfait Family v. USA* | 07-3500 | * | MAGISTRATE |
| *Lafarge v. USA* | 07-5178 | * * | JOSEPH C. WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF LAFARGE NORTH AMERICA INC.'S
MOTION TO QUASH SUBPOENA DUCES TECUM SERVED ON
<u>CENTANNI INVESTIGATIVE AGENCY</u>**

Lafarge North America Inc. ("LNA") files this motion under Rule 45(c)(3)(a) to protect its work product by quashing the deposition subpoena and request for records production served on LNA's investigator, Centanni Investigative Agency ("Centanni"). Plaintiffs seek Centanni's work product related to the investigators' interviews and investigation concerning witnesses in

the Lower Ninth Ward, including both Centanni's recollections and all documents prepared by his firm concerning the interviews and investigations.[1]

LNA has already agreed to provide the identities and contact information for these witnesses pursuant to written discovery requests served by plaintiffs on LNA. Thus, rather than appropriating LNA's work product, plaintiffs can obtain the information they seek by interviewing these people for themselves and performing their own investigation.

Furthermore, plaintiffs' records and deposition subpoena should be quashed as a violation of the federal rules and Case Management Order No. 5 as the requested records and information belong to LNA, a party.

## BACKGROUND

LNA engaged Centanni Investigative Agency in October 2005, after barge-related litigation had already been filed, to assist in the investigation and defense of claims against the company relating to the barge ING 4727. [Centanni Dec.. ¶ 3] The only purpose of all activities conducted by Centanni pursuant to this engagement has been to assist LNA in anticipation of litigation or for trial. [Centanni Dec. ¶ 4] Centanni performed investigative tasks at the direction of counsel. [Centanni Dec. ¶ 8] Among other tasks, Centanni interviewed possible witnesses to events occurring in the Lower Ninth Ward from August 28-31, 2005, to assist LNA counsel in the preparation of their defense in the litigation. [Centanni Dec. ¶ 5] The Centanni investigators exercised professional judgment in determining what leads to pursue, what questions to ask, and what information to gather. [Centanni Dec. ¶ 7] Further, Centanni selected, gathered, compiled, analyzed and evaluated materials obtained from publicly available

---

[1] Specifically, plaintiffs seek information related to interviews of "named plaintiffs, persons represented by counsel, and/or putative class members." *See* Pls. Notice of FRCP 30(b)(6) Deposition (Docket # 10617). Practically, these individuals are residents of the Lower Ninth Ward or other areas of plaintiffs' proposed class.

2

sources (such as media accounts) and on-line databases regarding possible witnesses, all in the exercise of the investigators' professional judgment. [Centanni Dec. ¶ 6] Centanni met regularly with LNA's lawyers to provide investigative results and receive further instructions. [Centanni Dec. ¶ 8]. Centanni had no other clients for which it investigated these Katrina-related matters. [Centanni Dec.¶ 9] Because Centanni carried out its investigation on behalf of LNA, Centanni's investigative files are within the control of LNA and its counsel. [Centanni Dec. ¶ 10].

After LNA disclosed Centanni's identity to plaintiffs in response to a written discovery request, the plaintiffs served a deposition and document subpoena directly on Centanni.[2] Plaintiffs' subpoena does not merely seek information sufficient to identify potential witnesses so that plaintiffs can contact the witnesses to investigate the facts for themselves.[3] Rather, the subpoena seeks to take for plaintiffs' own use the *results* of Centanni's investigation by requiring the firm to testify or produce everything that it has learned from or about these potential witnesses during the course of the firm's investigation on behalf of LNA. Thus, the subpoena seeks to require Centanni to testify as to the contents of any interviews conducted with potential fact witnesses in the Lower Ninth Ward, and to turn over any "memorialization" of those interviews.[4] In addition, the subpoena demands that Centanni testify as to the instructions received from LNA's counsel in performing the investigation, and the decisions made by Centanni and counsel as to the "nature, methods, subject, scope and timing" of the investigation.[5] The subpoena seeks to require Centanni to testify about any "personal data gathered" as to any of

---

[2] The subpoena is attached as Exhibit 1.

[3] Although the subpoena does seek identifying and contact information (see Exhibit 1, Deposition Topic 1), plaintiffs had requested that information from LNA directly in written discovery, and LNA has agreed to provide it.

[4] See Exhibit 1, Deposition Topic 5 and Document Request 2. The subpoena is framed to seek information regarding interviews of "named plaintiffs, persons represented by counsel, and putative class members in this suit." Exhibit 1, Depo Topic 5 and Document Request 2. This group effectively includes all witnesses to events in the Lower Ninth Ward on August 28-31, 2005.

3

the "putative class members," from whatever source.[6]  And, finally, the subpoena seeks testimony from the Rule 30(b)(6) witness about "any and all other relevant facts of which the deponent(s) have knowledge."[7]

As disclosed in the accompanying declaration of Wayne Centanni and privilege log, all of the information and documents sought by the subpoena were prepared by Centanni, LNA's representative – either from scratch, as in the case of witness interviews, or by sifting, gathering, and analyzing publicly-available information, as in the case of investigative files – in anticipation of litigation or for trial.  This is classic work product.  Furthermore, to require Centanni to testify on deposition about present recollections and impressions of witness interviews conducted in the past, or the contents of witness files, would necessarily require disclosure of the investigator's mental impressions and conclusions regarding the relative importance of information recounted in the interviews or contained in the files.  [Centanni Dec. ¶¶ 6-7]].

LNA has already provided, or has agreed to provide, the identities and contact information for the persons in the putative class members whom Centanni interviewed.[8]  Thus, LNA has provided the plaintiffs with all the information they need to gather for themselves whatever information these individuals have to provide.

Meanwhile, plaintiffs have asserted attorney work product protection and have refused to produce documents of the very type that they seek to subpoena from Centanni.  In particular, plaintiffs have asserted attorney work product in response to LNA's requests for communications

---

[5] See Exhibit 1, Deposition Topics 2 and 3.

[6] See Exhibit 1, Deposition Topic 4.

[7] See Exhibit 1, Deposition Topic 6 (mis-numbered in original).

[8] See Exhibit 2 (LNA's amended response to plaintiffs' Interrogatory No. 5).  Although LNA maintains that identifying those individuals that it chose to interview reveals the thoughts and strategy of counsel, *see Schbley v. Gould*, 1994 U.S. Dist. LEXIS 4082, at *4 (D. Kan. Mar. 29, 1994), LNA nonetheless offered, during meet and

between the plaintiffs and any other persons (excepting lawyers) regarding the events of August 29; communications with government officials regarding the Barge ING 4727; and eyewitness accounts of the flooding and related events. [9] Thus, plaintiffs' own objections to LNA's discovery requests recognize the applicability of work product protection to the sorts of requests made in their subpoena to Centanni.

## ARGUMENT

Plaintiffs' subpoena indisputably seeks to force Centanni to disclose, in wholesale fashion, matters that are protected work product under Fed. R. 26(b)(3). Much or most of what plaintiffs seek is absolutely protected "opinion work product" because its disclosure would reveal the investigator's "mental impressions, conclusions, opinions or legal theories." And because plaintiffs have independent access both to the witnesses (whose identities have or will have been disclosed) and to the information assembled by Centanni from public sources, they have no basis to invade *any* of Centanni's work product. Plaintiffs cannot be permitted to shortcut the work, time, and expense of investigating the issues in this lawsuit by taking for themselves what LNA's work, time, and investment have produced. *See Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (J. Jackson concurring) ("Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.").

Furthermore, the subpoena must be quashed because it is prohibited by the governing case management order regarding document requests and the federal rules. The document subpoena constitutes an impermissible attempt to evade the limits on document production from

---

confer discussions, to provide plaintiffs with this information to head off potential disputes about the remainder of Centanni's work product.

[9] See Exhibit 3 (plaintiffs' responses to LNA document requests 9, 14, and 18).

LIBW/1668213.4

parties, and the deposition subpoena does not comply with this Court's requirements for third-party practice (again suggesting that this is not third-party discovery at all).

### A. Centanni's Investigation is Protected Work Product.

The attorney work product doctrine protects material prepared in anticipation of litigation or for trial by a party, its counsel, or its agents. *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947). Work product is protected so long as the "primary motivating purpose" of the work is anticipation of litigation or preparation for trial. *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). The doctrine applies to work performed by a party's representatives, such as investigators, as well as by attorneys. Fed. R. Civ. P. 26(b)(3); *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

Here, LNA easily meets its burden of establishing that Centanni's work was performed in anticipation of litigation or for trial by the representative of a party. As described above, LNA retained Centanni to carry out an investigation to assist its attorneys in the defense of litigation that had already been filed against LNA at the time of the retention. [Centanni Dec. ¶ 3] The primary motivating purpose of all activities performed by Centanni – indeed, the only purpose -- has been to assist LNA in anticipation of litigation or for trial. [Centanni Dec. ¶ 4] As part of this retention, Centanni identified and interviewed potential witnesses to events occurring in the Lower Ninth Ward from August 28-31, 2005. [Centanni Dec. ¶ 5.] For the same purpose, Centanni selected, compiled, and evaluated materials obtained from publicly available sources about witnesses and possible witnesses. [Centanni Dec. ¶ 6] Unquestionably, Centanni's investigation satisfies the standards for work product protection under Fed. R. Civ. P. 26(b)(3)..

And LNA's work product is protected both where it has been written down and where it exists in the heads of its investigators. Plaintiffs are no more entitled to ask LNA's investigator's

to recount the contents of their witness interviews than they are entitled to the investigators' written memorializations of those interviews. *Hickman*, 329 U.S. at 511. While Rule 26(b)(3) protects "documents and tangible things," *Hickman* and other federal cases continue to protect intangible work product, including attempts to take the deposition of a party's attorney or representative to obtain information that would, if written down, constitute protected attorney work product. As the Fifth Circuit held in *Nguyen v. Excel Corp.*, 197 F.3d 200, 210-11 & n.34 (5th Cir. 1999), "[c]ourts have continued to apply *Hickman* to prevent circumventing the work product doctrine by attempting to elicit an attorney's thought processes through depositions or interrogatories."[10] Other courts have taken the same view. S*ee, e.g., U.S. v. One Tract of Real Property*, 95 F.3d 422, 428 n.10 (6th Cir. 1996); *In re Seagate Technology, LLC*, 497 F.3d 1360, 1376 (Fed. Cir. 2007); *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 586 (N.D.N.Y. 1989) ("It is a necessary corollary that protected work product contained in documents and tangible things cannot be obtained through less tangible methods such as the deposition questioning of persons with knowledge of the protected information."). Further, the rule of *Hickman* protecting against disclosure of "intangible" work product extends to investigators employed by a party's attorney. *United States v. Nobles*, 422 U.S. 225, 239 n.13 (1975). Thus, *Hickman* and similar cases prevent the plaintiffs from using a deposition to take LNA's work product for themselves, just as the documents memorializing that work product are protected. .

Plaintiffs cannot overcome LNA's work product protection for the documents and deposition topics listed in their subpoena to Centanni. Much of what plaintiffs seek is highly-

---

[10] In *Nguyen*, the Fifth Circuit upheld the trial court's decision to allow the deposition of an attorney to testify about the client's "good faith reliance on counsel" defense, but only after finding that the information sought could not be obtained in any other way. Even so, the court forbade inquiry into counsel's "work product and mental

7

protected "opinion" work product which reveals counsel or the investigator's "mental impressions, conclusions, opinions, or legal theories" (Fed. R. Civ. P. 26(b)(3)) because the interviews and investigative work reflect the investigators' own judgments about what leads should be pursued, what questions should be asked (including what follow-up) and what information should be gathered. [Centanni Dec. ¶¶ 6, 7] But even if some of Centanni's investigation constitutes "ordinary" work product, plaintiffs are not entitled to its production unless they can show a "*substantial need of the materials in the preparation of [their] case*" and they are "*unable without undue hardship to obtain the substantial equivalent of the materials by other means*." Fed. R. 26(b)(3) (emphasis added); see *Hickman*, 329 U.S. 509. Here, plaintiffs cannot carry even this lesser burden because they have available to them the names and contact information for the potential witnesses, and can interview them or subpoena them for deposition. Similarly, plaintiffs have the same access to public records as does Centanni. Thus, plaintiffs cannot show that they have "substantial need" of the fruits of Centanni's investigation or that they cannot obtain them without undue hardship.[11]

For these reasons, plaintiffs are not entitled to depose Centanni or obtain documents on any of the categories they have identified in their deposition notice. We now address each of the specific categories of information and documents listed in the subpoena and show that all of them are subject to work-product protection.

---

impressions." *Id*. at 210. Here, there is no basis for a deposition of Centanni other than to discover "work product and mental impressions." Thus, under *Nguyen*, a deposition would be precluded here.

[11] See, *e.g.*, *Hickman*, 329 U.S. 495, 518 (Jackson, J., concurring) ("Having been supplied the names of the witnesses, petitioner's lawyer gives no reason why he cannot interview them himself.")

8

### 1. The Work Product Doctrine Prohibits Discovery of Centanni's Witness Interviews By Deposition or by Records Production (Depo Topic 5 and Record Request 2).

The work product doctrine protects from discovery LNA's investigator's present mental impressions and past memorializations of the interviews it conducted of witnesses to events in the Lower Ninth Ward on August 28-31, 2005. From before the seminal *Hickman* ruling through the present, witness interviews have consistently been recognized as protected work protect. *See, e.g.,* Epstein, The Attorney Client Privilege and the Work-Product Doctrine, Vol. II, at 976 (stating that "absent special circumstances, witness interviews are by and large deemed to be work-product protected"). Centanni's interviews are likewise protected work product.

Plaintiffs cannot get around this protection by deposing Centanni rather than seeking his written work product (although, plaintiffs demand that, too). In *Hickman* itself, the plaintiff sought both written memorandum *and* the attorney's recollections of facts stated in the witness interviews. *Hickman*, 329 U.S. at 509, 512. The lower court had ordered the party's attorney to respond to interrogatories calling on him to "disclose any fact concerning this case" learned through the attorney's witness interviews. 329 U.S. at 499, 500. The Supreme Court protected from discovery both the attorney's memoranda and his "personal recollections" about what the witnesses had said. *Id*. at 510, 52-13. Thus an investigator's witness interviews are protected work product whether in written form or in the investigator's recollections about what was said.

Furthermore, plaintiffs' attempt to depose Centanni about investigators' present recollection about what witnesses said constitutes an direct invasion on the investigators' opinions, conclusions and mental impressions. Notwithstanding plaintiffs' attempt to couch their request in terms of "factual accounts," (Depo Topic 5), there are no such independent "factual accounts." There are only those questions which the investigator selected to ask and the responses the witness gave to those questions, and Centanni can only be deposed on the present

9

memories of those question and answers that the investigator retained, colored by those facts the investigator found important or worth noting. This is highly-protected opinion work product. As the Supreme Court found in *Hickman*, any oral recounting of the interviews would reflect the investigator's mental impressions of them, including a bias toward those facts the investigator found important or worth noting.[12] Similar concerns are at play in requests for production of memoranda memorializing witness interviews, and these types of documents have been held to constitute opinion work product.[13]

But it is plaintiffs' ability to interview these witnesses themselves that most easily demonstrates that this deposition should be quashed. Even if these interviews were subject to the lesser disclosure requirements for ordinary work product (as opposed to opinion work product), the deposition and subpoena duces tecum must be quashed because nothing prevents plaintiffs from interviewing or deposing the witnesses themselves. "Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party." *Baker v. GMC*, 209 F.3d 1051, 1054 (8th Cir. 2000).[14] This is just as true when a party tries to depose another party's investigator about interviews as it where the party seeks the investigator's written materials. *See Appeal of Hughes*, 633 F.2d 282, 290 (3d Cir. 1980) (investigator should not have been made to testify as to his recollections of witness interviews where "the actual witnesses

---

[12] *Hickman*, 329 U.S. at 511 ("Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks.".

[13] See, *e.g.*, *Baker v. General Motors Corp.*, 209 F.3d 1051 (8th Cir. 2000) ('Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity.").

[14] *See also Gator Marshbuggy Excavator LLC v. M/V Rambler*, 2004 U.S. Dist. LEXIS 16090, at *10 (E.D. La. Aug. 12, 2004) (Wilkinson, M.J.) (no substantial need of investigator's file and no undue hardship to obtain substantial equivalent where "Plaintiffs have their own knowledge of the circumstances of the incident through the captain and crew members, and [the witness interviewed by the investigator] is available for deposition"); *Long v. Anderson Univ.*, 204 F.R.D. 129, 138 (S.D. Ind. 2001) (plaintiffs "may discover the names of the individuals [the

were readily available" to the opposing party); *O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 643 (C.D. Cal. 2003) (quashing deposition of opposing party's investigator where witnesses interviewed by the investigator were available to the other party).

Plaintiffs' ability to conduct their own investigation, equipped with witness identities and contact information supplied by LNA, precludes them from seizing the results of LNA's investigation in the guise of attempting to learn "facts." To begin, as noted above, an attempt to learn "facts" in the form of an investigator's recollections of witness interviews is, in reality, an attempt to learn the investigator's mental impressions. See *Hickman,* 329 U.S. at 512-13. Beyond that, a party's attempt to learn the "facts" from its adversary's investigator, rather directly from witnesses whose identities have been disclosed and who are the source of the investigator's knowledge, is an affront to Rule 26(b)(3) and *Hickman.*[15] The purposes of the work product doctrine go beyond protecting the mental impressions of attorneys—else there would be no protection for ordinary work product. To the contrary, "[o]ne of the primary purposes of the work product doctrine is to prevent one party exploiting the other party's efforts to prepare for litigation." *O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 642 (C.D. Cal. 2003. "The work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer [or lawyer's agents] . . . ." *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999. )[16] LNA has agreed to provide, and plaintiffs have

---

investigator] interviewed and either conduct their own witness interviews or take depositions of relevant witnesses").

[15] *Cf. Mack v. GlobalSantaFe Drilling Co.*, No. Civ.A. 04-3461, 2006 WL 980746, *6 (E.D. La. Apr. 11, 2006). In *Mack*, this Court recognized that work product protection extends to the deposition of a party's investigator but permitted the investigator to be deposed concerning "his knowledge of the facts of this case." In *Mack,* however, it appears the Court was reacting to the party's "attempt to conceal the identities of potential witnesses contacted or researched in its investigation." *Id.* at *2. Here, by contrast, plaintiffs are given the witnesses' identities and contact information and do not need the investigator's deposition to learn who the people are or what they may have to say.

[16] *See also Computer Assocs. Int'l, Inc. v. Quest Software, Inc.*, 2003 U.S. Dist. LEXIS 16378, at *5-6 (N.D. Ill. 2003) (noting that "defendants will have a fair opportunity to contact and interview these witnesses regarding any

available to them, the identities and contact information for the witnesses whose "factual accounts" they seek to wrest from Centanni. Having been given this information, plaintiffs are not allowed a free ride on the efforts of LNA's investigators in interviewing the witnesses. Rather, plaintiffs can and should be required to conduct their own investigation.

### 2. The Work Product Doctrine Protects Counsel's Instruction to Centanni and the Methodology of the Interviews (Depo Topics 2 & 3).

Plaintiffs' deposition notice also identifies as topics of deposition counsel's "instructions" to Centanni (Topic 2) and "the nature, subject, scope and timing of attempted contacts and conducted interviews of named plaintiffs, persons represented by counsel, and/or putative class members" (Topic 3). These topics have no apparent relevance to any factual information subject to discovery in this action. Furthermore, this line of inquiry threatens to invade the core opinion work product of LNA's counsel and investigators. In particular, counsel's instructions and the investigator's decisions about what information to seek out, the scope of the subjects to be covered in the interviews, which witnesses were important to seek out, and the order in which to approach witnesses all reveal strategies and theories of counsel and of Centanni and are therefore entitled to absolute protection as opinion work product. See *Hickman*, 329 U.S. at 510 ("An attorney's private thoughts are inviolate."); *Nguyen*, 197 F.3d at 210 (attorney's "thought processes" are not subject to disclosure including through "depositions"); see also *Nobles*, 422 U.S. at 238-39 (investigator's mental impressions have same protection as party's attorney).

Other than providing a window into LNA's strategy, there is no need for plaintiffs to take discovery of the instructions given and investigative methods used by LNA's investigators.

---

statements that they have made to [plaintiff]. We see no reason why plaintiff should be forced to assist defendants in their own witness interviews"); *In re Grand Jury Proceedings (Duffy)*, 473 F.2d 840, 842, 848-49 (8th Cir. 1973) (protecting as opinion work product attorney's "personal recollections, notes, and memoranda" of conversations with witnesses even though it was "the interviewees' assertions of fact rather than Duffy's legal conclusions or

12

LIBW/1668213.4

Though it might have been thought that plaintiffs are fishing for this information in an attempt to somehow frustrate LNA's ongoing efforts to investigate facts that might be learned from putative class members, such investigation is permissible unless and until such time as a class is certified. See, *e.g.*, *McLaughlin v, Liberty Mutual Ins. Co.*, 224 F.R.D. 295, 299 (D. Mass. 2004); *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 238 F. Supp. 2d 151, 154 (D.D.C. 2002); see *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02 (1981). And even if plaintiffs were inclined to reopen the issue of LNA's investigative contacts,[17] that would not justify taking discovery from LNA's investigator regarding such work product matters as instructions received or methods employed. To the contrary, as the court held in denying this very sort of discovery in *Kay Co. LLC v. Equitable Prod. Co.*, 246 F.R.D. 260 (S.D. W. Va. 2007), "[j]ust as the defendants are free to communicate with putative class members, so may the plaintiffs engage putative class members in communications about defendants' contacts." *Id.* at 264.

Having no legitimate basis to invade the investigative methodologies and thought processes of LNA's investigators and attorneys (much less "substantial need"), and having equal access to putative class members, plaintiffs' attempt to intrude on LNA's work product and depose LNA's investigators must be prohibited.

### 3. *Centanni's Compilations of Information on Witnesses are Likewise Protected Work Product (Depo Topic 4).*

Lastly, plaintiffs seek Centanni's compilations of "personal data" about named plaintiffs and putative class members through the awkward device of a deposition of Centanni. These compilations are protected work product. Like all of the work performed by Centanni, they were

---

opinions which are at issue," noting that "[g]enerally, if a witness is available to the party seeking discovery of [that witness's] statement to opposing counsel, such discovery should not be allowed").

[17] When plaintiffs previously raised the issue of investigative contacts directly with LNA, the parties agreed to a protocol without the need for court intervention.

13

LIBW/1668213.4

created in anticipation of litigation.  Further the selection of the materials to go into the compilation is protected opinion work product.  *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("We believe that the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product.").  Similarly, the selection of *who* Centanni chose to investigate is protected work product.  *Schbley v. Gould*, 1994 U.S. Dist. LEXIS 4082, at *4 (D. Kan. Mar. 29, 1994).

As opinion work product, Centanni's compilations are entitled to the near-absolute protection given to that type of work product.  But even if Centanni's compilations were only ordinary work product, plaintiffs could not make their showing of "substantial need" and of undue hardship in obtaining substantially equivalent materials by other means.  Centanni's compilations are drawn from public records such as media accounts and on-line databases.  [Centanni Dec. ¶ 6]  Plaintiffs have equal access to and are equally capable of accessing these records.  As noted above, "[t]he work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer [or lawyer's agents] . . . ."  *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999).

> 4.  *There is No Basis for Discovery of Witness Identity from Centanni (Depo Topic 1 and Record Request 1)*

As described above, LNA has agreed to provide the identities and contact information for all putative class members interviewed by Centanni.  This information can be disclosed without requiring Centanni to submit to a deposition, or to disclose "all documents" that contain these witnesses' identities or contact information.  Disclosure of this information through written

14

discovery is less burdensome and more convenient than either deposition or document production. See Rule 26(b)(2)(C)(i).[18]

### 5. There Is No Basis for a Rule 30(b)(6) Deposition on "Any and All Relevant Facts" (Depo Topic 6) (mis-numbered Topic 4)

This deposition topic is clearly improper under Rule 30(b)(6), which requires that the subject of the notice be described with "reasonable particularity." This subject is described with no particularity whatsoever, and indeed is nothing more than an attempt to take an individual deposition of LNA's investigator(s) in addition to a Rule 30(b)(6) deposition of the firm. This Court granted a protective order against Rule 30(b)(6) depositions of Ingram and Lafarge in response to an identically-stated notice.[19] This topic is clearly improper. Further, because Centanni's work has exclusively been to prepare for litigation, a deposition on such an amorphously-phrased topic promises to yield matters constituting protected attorney work product, if some definite subset could be divined from this topic.

### B. The Request for Records Production and Deposition Subpoena Must Be Quashed as Procedurally Improper.

Plaintiffs' subpoena duces tecum of Centanni is an improper attempt to circumvent the discovery deadlines in this case, and obtain discovery of the defendant's documents outside of Rule 34 and even though the deadline for written discovery to parties passed on October 12, 2007. This third-party subpoena, directed to LNA's investigator, Centanni, seeks documents in

---

[18] The subpoena includes identities of putative class members for whom contact was "attempted." This is a pure fishing expedition. By definition, if contact was only "attempted" then no facts were learned from such individuals (nor, indeed, would their status as putative class members have been confirmed). Having supplied a list of those persons with whom contact was made, LNA cannot be subjected to a deposition of its investigator directed at finding out the names of people LNA was unsuccessful in reaching.

[19] See Rec. Doc. 317 in No. 05-4419 (motion granted as to Topic 45).; Rec. Doc. 278-3 in No. 05-4419, at 7 (Rule 30(b)(6) deposition notice calling for "any and all other relevant factual matters of which the deponent(s) have knowledge").

the custody and control of LNA, which are properly sought through Rule 34 discovery served on LNA. *See In re Pabst Licensing GmbH Patent Litig.*, No. CIV A. 99-MD-1298, 2001 U.S. Dist. LEXIS 10012, at *60-61 (E.D. La. July 12, 2001) (Wilkinson, M.J.) (quashing third-party subpoena directed at party's attorney which sought documents within the party's custody or control). The subpoena duces tecum served on Centanni is "cumulative and duplicative and seeks information more conveniently and efficiently sought from" LNA, and, consequently, violates of Fed. R. Civ. P. 26(b)(2)(C)(i). *Id*. at *61. *See also Alper v. United States*, 190 F.R.D. 281, 283 (D. Mass. 2000) (quashing third-party subpoena of defendant's expert on same grounds). This subpoena should be quashed as prohibited by the federal rules and by Case Management Order #5, which prohibits subpoenas for document production or Rule 30(b)(5) requests for production served between parties. *See* CMO #5 ¶ (V)(B)(1).

Plaintiffs' deposition subpoena is likewise defective. In particular, plaintiffs failed to comply with the requirement under Local Rule 45.1 of the Eastern District of Louisiana that the witness be tendered, at the time of service, "one day's attendance fee and the legal amount for mileage to and from the place of trial or hearing, as set forth in 28 U.S.C. 1821, and further to cause to be paid concurrently to any such witness the daily attendance fee for each day he or she is required to attend said trial or hearing." Although the failure to tender the witness fee and mileage may appear trivial in a case of this magnitude, the plaintiffs' failure to observe this formality demonstrates the reality that plaintiffs' attempted invasion of Centanni's investigative work product is not true third-party discovery, but rather a collateral attempt at discovery from an opposing party – LNA – outside the strictures provided by the federal rules and by this Court.

16

**CONCLUSION**

Because all topics noticed by plaintiffs have either been resolved through LNA's provision of its list of witnesses interviewed or seek protected work product, the subpoena should be quashed in its entirety. The request for records production should also be quashed in its entirety, for the same reason and for the additional reason that it is procedurally improper.

Respectfully submitted,

/s/ Derek A. Walker
Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
Parker Harrison (#27538)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com
Harrison@chaffe.com

John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

## Certificate of Service

I do hereby certify that I have on this 4th day of February, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ Derek A. Walker

LIBW/1668213.4