1                 UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF LOUISIANA

3

4

5

COLLEEN BERTHELOT, ET AL    *   Docket 05-CV-4182-K

6                           *

versus                  *   New Orleans, Louisiana

7                           *

BOH BROTHERS CONSTRUCTION,  *   July 14, 2006, 8:30 a.m.

8  CO., LLC, ET AL         *
   * * * * * * * * * * * * * * * *

9

10

11            STATUS CONFERENCE BEFORE THE
           HONORABLE STANWOOD R. DUVAL JR.

12      UNITED STATES DISTRICT JUDGE and the
        HONORABLE JOSEPH C. WILKINSON JR.

13        UNITED STATES MAGISTRATE JUDGE

14

  APPEARANCES:

15

16  For the Plaintiffs:       Bruno & Bruno
                      BY:  JOSEPH M. BRUNO, ESQ.

17                     855 Baronne Street
                     New Orleans, Louisiana 70113

18

19  For the Defendants:       Lugenbuhl Wheaton Peck
                      Rankin & Hubbard

20                     BY:  RALPH S. HUBBARD III, ESQ.
                     601 Poydras Street, Suite 2775

21                     New Orleans, Louisiana 70130

22

  Also Participating:       DANIEL E. BECNEL JR., ESQ.

23                     JOHN DEGRAVELLES, ESQ.
                     CALVIN C. FAYARD JR., ESQ.

24                     HUGH P. LAMBERT, ESQ.
                     ASHTON R. O'DWYER JR., ESQ.

25

1    Official Court Reporter:        Toni Doyle Tusa, CCR, FCRR
                                     500 Poydras Street, B-406
2                                    New Orleans, Louisiana 70130
                                     (504) 589-7778
3

4

5
     Proceedings recorded by mechanical stenography, transcript
6    produced by computer.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        **PROCEEDINGS**

2        **(July 14, 2006)**

3            **THE DEPUTY CLERK:**  All rise.

4                Be seated, please.

5            **THE COURT:**  Good morning.  It's nice to see all of

6    your bright, shining faces at 8:30 on a Friday.  Have we

7    already had our appearances?  You signed a sheet.  Great.  We

8    don't have a gigantic agenda this morning, but we certainly are

9    willing to open it up for general discussion after we go

10   through our agenda.

11               We are working on the website and it should be

12   up and running by August 1.  They don't magically appear, but

13   we will have it running by that time.  We just have to get our

14   protocol straight, which we will do on or before August 1.

15               The order dealing with the notifications and the

16   grouping of cases has been agreed to by liaison counsel and we

17   have submitted it to the clerk's office.  We wanted their input

18   since they have to administer it.  We changed a couple little

19   things.  The clerk's office has not responded to us this

20   morning, but we expect it will be all accomplished today.  The

21   order will be executed today.  By virtue of the hard work that

22   went into the order, you can streamline the pleadings, at least

23   your notifications will be more discrete.

24               One of the things that I know many of you wanted

25   to talk about was the structure of the oral argument, and we

1   will talk about time for oral argument later.  I have decided

2   to allot 300 minutes.  Now, considering the Supreme Court is

3   vastly less, the court of appeals even less, I think 300

4   minutes is -- I'll tell you what.  I'm going to change that.

5   Let's make it a round 360.  Let's punish ourselves.  360

6   minutes.  What I would like liaison counsel to do is to try to

7   see if you can come up with a protocol as to how the minutes

8   are allocated.  Is that an insurmountable task?  In other

9   words, who argues what and when, with the time limits.

10          **MR. BRUNO:**  360 being for both sides, obviously --

11          **THE COURT:**  Yes.

12          **MR. BRUNO:**  -- appropriate time for defense,

13   plaintiff, and rebuttal, etc.  I'm certain we can work it out.

14          **THE COURT:**  That's a lot of time for oral argument.

15   It will be one of the longest oral arguments certainly in my

16   experience.

17          **MR. BRUNO:**  You are obviously referring only to the

18   11th and not the 9th?  In fact, the 9th I believe is not

19   oral argument.

20          **THE COURT:**  No.  The 11th is the date presently

21   fixed for oral argument.

22          **MR. BRUNO:**  Judge, we have talked about this on many

23   occasions, but may I allow one of my members at least to

24   address the date?  I know the answer, but as liaison counsel

25   I've asked --

1       **THE COURT:**  We may not always grant, but we will

2   always at least receive your pleadings and/or argument.

3       **MR. BRUNO:**  Thank you.  Then I call upon Mr. Fayard

4   to make his plea.

5       **MR. FAYARD:**  Good morning, Your Honor.  Yesterday I

6   had the unfortunate privilege by being told "No" by three

7   judges, so this morning being told "No" by two may not be too

8   bad.  August 11 is a date of inconvenience for members of my

9   team.  I will not say that all of us have trials set; some of

10  us have personal privilege dates with family members.  I think

11  Mr. Hubbard had, with Mr. Bruno, explained that to you earlier.

12      **THE COURT:**  It looks like I must be privy to your

13  vacation schedule because apparently every time I've set

14  something you have been --

15      **MR. FAYARD:**  Yes, sir.  With great difficulty, I made

16  it back on most occasions.  This is one that would be a

17  challenge, but I will attempt to try.

18      **THE COURT:**  I looked at my calendar and this is the

19  problem.  I'm not trying to be arbitrary.  Unless we go into

20  September -- and then I think your colleagues on the other side

21  are probably going to get antsy.  I've got a two-week trial

22  starting the 14th of August.  Now, the two-week trial, I

23  don't think it's going to take two weeks.  It's a jury trial,

24  and I have a lot of other things packed into that two weeks, as

25  well.  Optimistically, I could consider doing it on the 25th

1  because I think the trial will be over.

2             Now, I have to prepare for these during the

3  trial, but since it's a jury trial I don't think I'll be

4  working at night.  I really intend to be prepared by the 11th

5  anyhow, frankly.  I was going to be prepared for the arguments

6  prior to the two-week jury trial.  I would consider changing it

7  to the 25th, but I would like to hear from your worthy

8  colleagues on the other side.  That's really the only date

9  because then we get into September and it gets to be --

10            **MR. FAYARD:**  Judge, I'll take that comment and stop

11  because it's not an absolute "No."  With all due respect, if

12  you say "No," don't do it right here, right now because I need

13  a few minutes to adjust.

14            **THE COURT:**  Okay.  Thank you.

15            **MR. BECNEL:**  Mr. Fayard is in shellshock from he and

16  Mr. Bruno's eloquent argument in the Fifth Circuit yesterday.

17            **THE COURT:**  Knowing both of them and the

18  Fifth Circuit, he was well-received.

19            **MR. HUBBARD:**  May it please the Court.  Ralph

20  Hubbard, liaison counsel for the defendants.  As usual,

21  especially this time of year, whatever date you pick is going

22  to inconvenience some and not inconvenience others.

23            **THE COURT:**  The old beanbag problem, yes.

24            **MR. HUBBARD:**  I want the record to reflect I did not

25  put Mr. Fayard up to coming up here and asking for this anew.

1    **THE COURT:**  I didn't think he was a proxy for you.

2    **MR. HUBBARD:**  He was kind enough to discuss it with

3    me outside.  I have been informed in a sidebar with some of the

4    people on the defense side that there are some of us insurer

5    defendants who have problems with the 11th beside me and they

6    would be happy to have it moved to the 25th.  I like to

7    accommodate the other side whenever I can.  I think we all do.

8    The problem here is figuring out whose ox is getting gored, but

9    this has more to do with just people's convenience rather than

10   it does the merits of the case.  Whatever works for the Court I

11   will make work for me.  There are some people on my team who

12   are concerned about the fact that every delay is not a good

13   delay for them, people who are desperately trying to get out of

14   the case, but we will leave it in your capable hands, whatever

15   works for you.

16            **THE COURT:**  As I understand it, the defense does not

17   have a substantial objection to moving it to the 25th?

18            **MR. HUBBARD:**  No, Your Honor, in light of the fact

19   that's just two weeks and if it works for the greater good

20   that's fine with me, certainly.

21            **THE COURT:**  With all of that said, I will in fact

22   change the date to August 25 and make sure that my jury trial

23   is completed by that time.  Same start time.

24            **MR. FAYARD:**  Thank you, Your Honor.

25            **THE COURT:**  There was also some question about,

1   during the presentation of oral argument, laptops or using the

2   Court's equipment.  If I get a request -- if you want to do it

3   en masse, it might be good if you could survey who is arguing

4   and who wants a laptop -- I will sign an order.  You have our

5   own equipment here you are welcome to use.

6           **MR. BRUNO:**  We'll do that in connection with the

7   minutes' distribution.

8           **THE COURT:**  On the structure of the oral argument, I

9   think that six hours is plenty of time for us.  Don't forget, I

10  will have read everything -- I mean everything -- by that time.

11  Your illuminating me on the fine points shouldn't take six

12  hours, but I'm giving you six hours.

13              Let me ask you both, Messrs. Hubbard and Bruno,

14  how long do you think it will take to get a protocol to me?  We

15  have some time, so I don't want to pressure you.  Would a month

16  be sufficient time?

17          **MR. HUBBARD:**  A month would be more than enough.  I

18  think a couple weeks is plenty.  We need to go ahead and get it

19  done.

20          **MR. BRUNO:**  Yes, Judge.

21          **THE COURT:**  I'm not going to put a specific time.

22  Just get it to me in the next two or three weeks, if you can,

23  and there will be no change in the briefing schedule.  That

24  gives us more lead time to read and be prepared to act on the

25  briefs after hearing argument.

1              That's really all I had.  We are diligently

2    working on those motions that are submitted.  Judge Wilkinson

3    doesn't have anything specific, but if you have any questions

4    of him or any comments, certainly you're welcome to do so, or

5    of me.  We are open for general business.

6              MR. BRUNO:  Okay, Judge.  Thank you.  One point of

7    information.  Another lawsuit has been filed in connection with

8    the MRGO.  I don't know if you are aware of it.

9              THE COURT:  I've looked at it.  Just to let you know,

10   that may not come under this umbrella.

11             MR. BRUNO:  That's fine.  That's one of my questions

12   because obviously, given the new water we are talking about,

13   that's the first issue I have to address.

14             THE COURT:  I would say it's unlikely it will come

15   under this umbrella.

16             MR. BRUNO:  Second is a question, Judge.  Of course,

17   I know I'm discussing motions not yet filed.  My question is

18   really to you and Magistrate Wilkinson.  There will be some

19   motion practice relative to the form 95.  I'm just curious to

20   know if that should be noticed to be heard before you or the

21   magistrate?

22             THE MAGISTRATE:  What sort of motions do you

23   anticipate?

24             MR. BRUNO:  Well, I'm advised there's some

25   difficulties with the Corps communicating with the client after

1    having been advised that they are represented by counsel and

2    some other problems with regard to identification of clients

3    who have filed form 95s with the Corps of Engineers.  It's,

4    frankly, just management issues, I think.

5         **THE COURT:**  Judge Wilkinson said, since they are

6    nondispositive, he will handle that, which is a great burden

7    off of the Court.

8         **MR. BRUNO:**  That's why I rise and asked the question.

9         **THE MAGISTRATE:**  I was looking at the computer the

10   other day and I see Judge Duval has something like three dozen

11   dispositive motions on his plate, so if there's anything short

12   of dispositive motions you need to file I'll be happy to do it.

13        **MR. BRUNO:**  Mr. Treeby asked -- as you know, we have

14   been in some discussion and communication about the scope of

15   discovery relative to motions they intend to file.  Although

16   I'm not dragging my feet -- maybe we are.  So there may be some

17   motion practice that would arise from that.  I take it that

18   would also be referred to you, Judge.  I guess the second

19   question is:  Do you really need a motion or would you prefer a

20   conference?

21        **THE MAGISTRATE:**  If what we are discussing is

22   identifying the scope of discovery, then what I would like to

23   do is have a conference with liaison counsel or their designees

24   so I can see what you're thinking and decide whether an actual

25   motion is something that's necessary.  Sometimes the scope of

1   discovery issues -- although we try our best to plan in advance

2   what the scope is going to be -- can't possibly anticipate

3   every little bit of information that you might seek.  Although

4   we try to draft something that sets out the scope in advance, a

5   lot of times it doesn't work out so cleanly.  Let's just have a

6   discussion and see where you stand.

7          **MR. BRUNO:**  Excellent, Judge.  We both think that

8   would be very worthwhile.

9          **THE MAGISTRATE:**  All you need to do is decide who are

10  going to be the point people and just call my office and ask to

11  have it scheduled.

12         **THE COURT:**  While there's a slight hiatus, just to

13  remind you, I may have put some specific time limit on it, but

14  you haven't reached it yet.  Be thinking about the global

15  overall plan that preliminarily you are going to submit to me

16  in a month or two, whenever it is.  Continue working on that.

17  The whole idea is to expedite this as much as possible and in

18  the same time achieve due process.

19         **MR. HUBBARD:**  In connection with expediting, one

20  little note on a motion that's pending before you that I think

21  is about to be taken under advisement or maybe has been in the

22  last day or so, which was the one on behalf of Hanover in the

23  <u>Vanderbrook</u> case to determine the correct name of the

24  plaintiff.  I understand there's been an opposition filed.  We

25  have the wrong name of the plaintiff.  We are happy to withdraw

1   our motion if it will make less work for the Court because what
2   we really want them to do is to amend the complaint and put the
3   right name.  It's kind of close, but it's clearly a completely
4   different name and we need to get that straightened out.
5         THE COURT:  Hopefully that's the kind of thing that
6   can be done expeditiously.
7         MR. HUBBARD:  Right.  I've had trouble getting in
8   touch with -- well, I'll write a letter.  I was just trying to
9   save you some problems writing orders.
10        THE MAGISTRATE:  You have had trouble getting in
11  touch with Mr. Harvey?
12        MR. HUBBARD:  Well, he just hasn't returned phone
13  calls, but we are working on it.
14        THE COURT:  We can always have a conference here if
15  you need one.
16        MR. BRUNO:  I've spoken to Mr. Harvey.  He is having
17  some difficulties with relocating his office from the storm.
18  In fact, he tells me he is using satellite phones and not land
19  lines because of his issues.
20        THE MAGISTRATE:  Tell him to dial a satellite phone
21  to Mr. Hubbard and tell him what the plaintiff's name is.
22        MR. BRUNO:  I'll do that.
23        THE COURT:  Judge Wilkinson has a way of getting to
24  the point very quickly.
25        MR. BRUNO:  I realize that.  We appreciate that,

1    Judge.

2              THE COURT:  While we are ruminating, so as to not

3    overburden you, do you want the next meeting to be the oral

4    argument date?  We would have to devote some of that time to

5    doing business or we could have a separate meeting.  It's up to

6    you.  You are certainly always welcome to ask for a status

7    conference, which I'm sure we would grant.

8              MR. BRUNO:  Judge, also, I think that's a great idea.

9    We'll just go with August 25.  Thank you.

10             THE COURT:  Hopefully there will be nothing brewing

11   in the tropics.

12             MR. BRUNO:  If there is, Ralph and I will get

13   together in advance and give you a heads up.

14             MR. DEGRAVELLES:  Good morning, Your Honor.  I'm

15   John deGravelles.  A small matter.  I represent the plaintiffs

16   in the Marcello case, which is 06-2545.  We got in rather late.

17   The oppositions which have been filed, some of those picked up

18   our file numbers, some did not, so we are filing a motion

19   simply to "me too" it as to those where oppositions have been

20   filed by plaintiffs already, but we were not on the caption.

21             THE COURT:  I understand.  That seems like an

22   intelligent way to proceed.  Thank you.  Anything else?

23             MR. O'DWYER:  I have a matter I would like to

24   address.

25             THE COURT:  Yes, sir.

1        **MR. O'DWYER:**  May it please the Court.  Ashton

2   O'Dwyer for plaintiffs in 05-4181 and 06-1885.  Your Honor, I

3   want to state preliminarily that I'm not making any accusations

4   against anybody, but that could be implied from some of my

5   comments.  I also want to state preliminarily that I am not

6   working pro bono and that my clients and I hope that at the end

7   of this litigation there is a very handsome payoff for them.  I

8   expect to get paid for my time or in accordance with my

9   contracts with my clients.  Several things have occurred

10  recently that have prompted me to speak up, and I don't want to

11  be prejudiced down the line by the notion of implied consent.

12            No. 1.  I received some E-mails which disclosed

13  that an escrow account for expenses in the <u>Murphy</u> litigation

14  was over $100,000 in the red.  That is in the red.  That isn't

15  the total of all the expenses incurred in the <u>Murphy</u> case.

16  That is a much more simple litigation compared to the

17  litigation that is before Your Honors.  I don't know how those

18  debts were incurred, I don't know who incurred them, but I was

19  appalled by that information.

20        **THE COURT:**  I take it you're informing me of that

21  because you're concerned --

22        **MR. O'DWYER:**  I'm informing you of that because some

23  of the same lawyers who are involved in this case are also

24  representing parties in the <u>Murphy</u> case.  It struck me as

25  unbelievable that an account for expenses could be $100,000 in

1    the hole.  I would like to know what the total expenses that

2    have been incurred are not only in that case, but in this case.

3            MR. BECNEL:  Your Honor, I'm going to enter an

4    objection.

5            THE COURT:  Why don't we let Mr. O'Dwyer finish and

6    then I will let you both speak.  Right now, we have not

7    formulated --

8            MR. O'DWYER:  We are going to have to --

9            THE COURT:  Well, we will.

10           MR. O'DWYER:  -- and that's why I'm bringing these

11   matters up now.  Rule 23 was amended in 2003, and I concede

12   that it gives Your Honor very broad discretion in terms of

13   managing attorneys' fees and reimbursable expenses.  We are

14   sailing uncharted waters.  That's what I'm suggesting to you.

15           THE COURT:  Hopefully that will be in the global

16   management order that I propose that I receive.  Everybody will

17   have input into that and that kind of item will be discussed,

18   common pool of funds, how it's funded, et cetera.  Go ahead,

19   sir.

20           MR. O'DWYER:  Point No. 2.  I have asked the interim

21   plaintiffs' liaison committee for assistance in several areas,

22   mainly to intercede on my clients' behalf with Your Honor or to

23   file amicus briefs, and none of my requests for assistance have

24   resulted in any action, with the exception of an omnibus

25   memorandum in opposition to the motion to dismiss claims filed

1    by the levee board and the Sewerage and Water Board, for which
2    I thank Mr. Bruno and Mr. Scalia.

3              The next point.  Some members of the interim
4    plaintiffs' liaison committee are members of the MRGO
5    litigation group.  The MRGO litigation group submitted a
6    memorandum in letter form to Your Honor through a member of the
7    interim plaintiffs' liaison committee, which I was not copied
8    on.  I found out about it after the fact, after it had already
9    been submitted to you and after we had already had I believe it
10   was the second status conference.  That communication, it drew
11   a bead on me and my clients and, in effect, constituted an
12   amicus brief on behalf of the government seeking dismissal of
13   the plaintiffs' claims against the government in Civil
14   Action 05-4181.  That position paper has not been retracted and
15   that matter remains under submission to Your Honor.

16             The fourth point.  On discovery issues, the
17   committee has taken a position which minimized my arguments.
18   This has happened twice, once in an oral argument before
19   Magistrate Wilkinson and the second before Your Honor, when a
20   member of the committee agreed to part 2 of the Boh Brothers
21   protocol which was submitted to the Court in connection with
22   the 17th Street Canal breach site and the preservation of
23   evidence there, the result being that last Friday the evidence
24   that still existed as of Friday at the 17th Street Canal site
25   was turned into cement dust, ostensibly on the power of part 2

1  of the protocol which Magistrate Wilkinson approved in his
2  written position.  I'm reserving rights in that respect and I
3  am preparing to fire a shot not across the bow of the
4  government, but aimed right at their head.  Okay.
5           Point 5.  Although I have had contact with
6  Mr. Bruno and Mr. Lambert -- and they have been very, very
7  responsive to everything that I have talked to them about.
8  They haven't filed anything like I have asked them to do, but
9  they have talked to me.  Other members of the interim
10 plaintiffs' liaison committee have no contact with me
11 whatsoever and I don't know what they are doing.  Okay.
12         THE COURT:  I'm not quite sure I understand that,
13 Mr. O'Dwyer.  What is it you want them to contact you about?
14 I'm talking about the various members of the committee.
15         MR. O'DWYER:  What are they doing that is enhancing
16 my clients' position.
17         THE COURT:  You can call them and ask them, sir.
18         MR. O'DWYER:  All right.  I'll do that.
19         THE COURT:  If you have an objection, file it in
20 writing.
21         MR. O'DWYER:  All right, Your Honor.  Judge Fallon's
22 Murphy case -- I haven't seen the opinion yet, but I read the
23 news accounts, and what I read was kind of appalling to me, as
24 a lawyer who is accustomed to negotiating fees with his clients
25 and being paid on the basis of the contract entered into

1   between the attorney and the client.  I understand that

2   Judge Fallon awarded attorneys' fees to members of the

3   plaintiffs' committee in the <u>Murphy</u> case that's going to come

4   out of the pockets of claimants who were unrepresented and who

5   negotiated settlements with Murphy before the committee was

6   formed and before the litigation even went forward.

7            THE COURT:  I must say, Mr. O'Dwyer, in this case

8   that is egregiously premature.  We have a long way to go before

9   any money is paid out.

10           MR. O'DWYER:  All right.  I have a proposal.  I'm

11  getting to my proposal.  I'm merely laying the foundation or

12  predicate to what I am going to propose.

13           THE COURT:  I understand.

14           MR. O'DWYER:  Now, since I was a defense lawyer until

15  Katrina, I didn't fully appreciate how the structure in a case

16  like this works from the plaintiffs' side, but I can now see

17  that it is certainly possible for members of the committee to

18  sit back, bill hours, staff a case, and get a big bonus at the

19  end of the case without paying for it.  When I was a boy, my

20  daddy taught me early on that there were two things in the

21  O'Dwyer family that you don't mess with.  No. 1 is our women;

22  our mothers, our sisters, our cousins, our nieces.  You don't

23  mess with our women.  No. 2, you don't mess with our money.

24           The committee, Your Honor, I respectfully

25  submit, has potential for putting its hand not only in my

1  clients' pocket, but in my pocket, and I don't like it.  Okay.

2  I'm stating an objection.  Maybe it's premature, maybe not, but

3  the solution that I have to this problem that I see potential

4  for coming about down the line is complete transparency.  What

5  I am suggesting to Your Honor that we do and what I am asking

6  you to order is that the committee members and anyone else who

7  you think should do so submit monthly billing and expense

8  records from each member.  I would like to see what they have

9  done, what they are doing, what expenses they have incurred and

10  intend to incur, so that I can make my own independent analysis

11  of whether that is moving all of us towards a common goal.

12          **THE COURT:**  I understand.

13          **MR. O'DWYER:**  Thank you for allowing me to be heard,

14  Your Honor.

15          **THE COURT:**  Absolutely.

16          **MR. BRUNO:**  Judge, Mr. O'Dwyer raises, of course,

17  very important issues.  I rise because my deep concern is that

18  these are issues that regard only the plaintiffs and regard

19  this Court in a way that deals with issues of professionalism,

20  ethics, et cetera, and the defendants have no part of it.  I

21  would like to adjourn the hearing, reopen the hearing with

22  plaintiffs' counsel only present, wherein we will have an

23  opportunity to address each of Mr. O'Dwyer's issues without, if

24  you will, exposing our dirty laundry to our opponents.  I just

25  don't see how this forum --

1       **THE COURT:**  I'm concerned about having any hearing

2    where everybody is not present.  I won't do that unless I get a

3    written motion and memorandum why.  Otherwise, I'm not going to

4    do it.  I don't intend to do anything right now.  Right now, as

5    far as I understand it, we have not established a protocol in

6    writing as to how all this is going to be done, which is what

7    I'm hoping ultimately to get from the joint committee.

8       **MR. BRUNO:**  Judge, when it comes to the appointment,

9    you have made an appointment of interim plaintiffs' counsel,

10   which is different from the defendants organizing themselves

11   and creating some structures.  With my appointment, I have the

12   public trust.  I have responsibilities to folks that I don't

13   represent.  That has nothing to do with the defendants.  It is,

14   I would respectfully suggest to you, in mass tort litigation

15   routine for the Court to address internal difficulties that

16   arise from those appointments outside of the presence of

17   defense counsel.  I just want to make that point to you.  I

18   realize there are no motions before you.

19      **THE COURT:**  Before I do that in any litigation that

20   I'm conducting, I'm going to need a solid reason to do it where

21   there's a formal actual court proceeding which excludes part of

22   the other people.  I am reluctant to do that.  There may be

23   another way to resolve some of this, but right now it's a

24   little premature.

25      **MR. BRUNO:**  I agree.  Right now --

 1            **THE COURT:**  Right now I'm expecting a protocol to be

 2   submitted to me by the plaintiffs how are we going to deal with

 3   the financial issues down the road.

 4            **MR. BRUNO:**  Of course, and those are issues we

 5   recognize.  All of the counsel you have appointed have an

 6   extraordinary amount of experience in mass litigation and these

 7   issues are routinely and very easily dealt with.  I invite

 8   Mr. O'Dwyer to call me any time.  I have a land line.  I hope I

 9   have responded, Ashton, to you every time you have requested.

10   I try to.  I just, as I say, have to stand and say -- of

11   course, the other issue is the <u>Murphy Oil</u> litigation has

12   nothing to do with this case whatsoever.

13            **THE COURT:**  The Court is extraordinarily well-aware

14   of that.

15            **MR. BRUNO:**  Ralph, would you consider a consent on

16   this issue?

17            **MR. HUBBARD:**  I've asked if the defendants would

18   consent to a separate meeting with the Court.  I suspect they

19   would indeed, but I think it would be in order for me to poll

20   them, which I will do, and get back with the Court and

21   Mr. Bruno.  We don't have a big interest in this subject.

22            **THE COURT:**  I understand this is not --

23            **MR. HUBBARD:**  It's fascinating at times, but we have

24   other things to do.

25            **THE COURT:**  That is a good idea.  That would give

1    comfort to the Court.

2              **MR. BRUNO:**  We will submit to you the appropriate

3    orders for management of this case for your consideration.

4              **THE COURT:**  That will be helpful.  Consent would give

5    the Court some comfort in dealing with this matter that

6    strictly relates to the plaintiffs.  I understand, as long as

7    the defendants agree they don't have a dog in the hunt, then it

8    would be perfectly appropriate to do that, and I'm sure they

9    would give consent if that's the case.

10             **MR. BRUNO:**  Thank you, Judge.

11             **MR. LAMBERT:**  Mr. O'Dwyer has communicated with both

12   Joe and I on many occasions, and we have tried to accommodate

13   him with regard to discovery issues or any other issue that he

14   may raise.  I think to be silent is probably the better thing

15   to do -- Joe has encouraged me to do so -- but I need to say,

16   with regard to the overdraft mentioned on the record, that was

17   an accounting error by Bourgeois Bennett, which is a

18   well-respected firm that was relocated during Katrina.  They

19   made a mistake and it was quickly corrected.

20             With regard to the comment about uncharted

21   waters, as Mr. O'Dwyer points out, he was a defense lawyer and

22   now finds himself in a very complex piece of litigation on the

23   plaintiffs' side.  Though the waters are uncharted for him,

24   they're not necessarily uncharted for those of us that are on

25   this committee.  I think maybe that's one reason why

1    Mr. O'Dwyer himself may not be on the committee because it
2    would be a learning curve for him with regard to how these
3    things work.  Many of those comments, though I have deep
4    respect for Mr. O'Dwyer's abilities, I think are unfounded.
5    Thank you.
6              **MR. BECNEL:**  Your Honor, I want the Court to know
7    that this committee is using a form for reporting time and
8    expenses that has been approved by virtually every federal
9    court in the country.  There's orders issued in virtually every
10   MDL.  Mr. Bruno and all of us have agreed to how we would
11   report time and charges.  The only thing we haven't done yet is
12   gotten the imprimatur of this Court that's the official form.
13   He is in the process of dealing with those issues.
14             Secondly, I'm the bursar in terms of the
15   Murphy Oil case.  We have never been in a deficit.  We have had
16   every assessment paid by 90 percent of the lawyers involved in
17   that, and we have spent a million and a half dollars so far.
18   The bills keep coming in and we keep making -- I think we have
19   a case set for trial this fall, as soon as Judge Fallon frees
20   up, and we have ongoing expenses to the tune of about $50,000 a
21   week.  None of the lawyers in that case have any difficulty
22   paying anything.  I don't know where Mr. O'Dwyer got this
23   information, but it's wrong.  I keep the books.  The Court has
24   appointed Bourgeois Bennett to make sure that the books are
25   accurate.

1      **THE COURT:**  I think, as you stated, we will be in a

2  better situation when we get the imprimatur of the Court on a

3  specific plan and then you can take into consideration -- and

4  the Court -- Mr. O'Dwyer's request that there be some type of

5  intermittent divulging of what that is.  Mr. O'Dwyer.

6      **MR. O'DWYER:**  Three points, Your Honor:

7      Point 1.  I concede that I need all the help I

8  can get, and I'm perfectly willing to learn anything I possibly

9  can from Mr. Lambert and anyone else who he thinks might be

10  able to teach me how to practice law.

11      Point 2.  I've been out front in this

12  litigation, and I'll concede to you that sometimes I feel like

13  I'm fighting by myself.  I forgot where I was going with this.

14  I would like a little help from my committee.  So far, other

15  than listening to my concerns, I haven't gotten that help.

16  What I wanted to say is this is a much more complex litigation

17  than the <u>Murphy</u> litigation and I haven't incurred a million and

18  a half dollars in direct expenses.  The reason I raised this

19  issue is, if the committee is incurring debt for which they

20  have their hand in my pocket or my clients' pocket, I want to

21  know about it.

22      **THE COURT:**  Perfectly reasonable.  I understand that.

23      **MR. O'DWYER:**  Point 3.  Transparency, that's all I'm

24  asking for.  Let me see your time sheets.  Let me see your

25  description of services performed for the time that you record

1    on each date.  Let me see what you have spent on what and what

2    you plan to spend in the future.  Further deponent sayeth not,

3    Your Honor.

4              **THE COURT:**  Anything else?

5              **MR. BRUNO:**  No, Your Honor.

6              **THE COURT:**  With that, we will see you on August 25

7    and I expect erudition, eloquence, and incisiveness.

8              **THE DEPUTY CLERK:**  All rise.

9              (WHEREUPON, the Court was in recess.)

10                              * * *

11                           <u>**CERTIFICATE**</u>

12             I, Toni Doyle Tusa, CCR, FCRR, Official Court

13   Reporter for the United States District Court, Eastern District

14   of Louisiana, do hereby certify that the foregoing is a true

15   and correct transcript, to the best of my ability and

16   understanding, from the record of the proceedings in the

17   above-entitled and numbered matter.

18

19

20                              _____

                                Toni Doyle Tusa, CCR, FCRR
21                              Official Court Reporter

22

23

24

25