UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| | * | MAG. JUDGE ILKINSON |
| PERTAINS TO: ROAD HOME | * | |
| *State of Louisiana, C.A. No. 07-5528* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>SUR-REPLY BRIEF BY THE STATE OF LOUISIANA
IN OPPOSITION TO MOTION OF DEFENDANTS FOR PROTECTIVE
ORDER GOVERNING CONFIDENTIAL SETTLEMENT INFORMATION
PROVIDED TO THE STATE IN CONNECTION WITH ITS REVIEW OF
INSURANCE SETTLEMENTS WITH ROAD HOME</u>

MAY IT PLEASE THE COURT;

1. **INTRODUCTION**

The State of Louisiana, Division of Administration, Office of Community Development under its Assignment and Subrogation Agreement has the unconditional discretionary right to approve or disapprove any proposed settlement post-grant award. In deciding what is relevant to its inquiry, the State is not limited by rule, statute, or administrative order. Nor can jurisprudence or court order circumscribe what the State deems relevant to its inquiry.[1] The proposed protective order offered by the Industry is overly broad, and unnecessarily and unreasonably restrictive. For instance, the Industry's proposal would only permit the State to consider Settlement A, but not Settlement B. To the Industry, Settlement A is not relevant to Settlement

---

[1] The State would further advise the Court that on February 4, 2008, the United States Fifth Circuit, Court of Appeals granted the State's appeal of this Court's decision denying the State's motion to remand. Additionally, the Fifth Circuit has held that granting an appeal divests the district court of jurisdiction over a case. *See Winchester v. U.S. Atty for the S.D. of Texas*, 68 F.3d 947 (5th Cir. 1995). Regardless, the State does seek an amicable and workable solution to the Industry's improper requests for a protective order, so that recipients may continue to receive the funding they are entitled to and need to rebuild their homes and their lives.

1

B's consideration, but in fact, to the State and the recipients, it is. It is the State's prerogative to make such a decision not the Insurers. As such the proposal is nothing more than a disguised attempt to limit what can and cannot be considered by the State as part of the approval process.

The approval process is a matter between the State and the Grant Recipients, not the Insurers. The State has determined that information as to prior payments, settlement payments, and apportionment between coverages is among the information needed. Under state statutes cited in its opposition, the Insurer is statutorily obligated to furnish the Insured with such an apportionment. This, as well as all other information necessary for inclusion in the Request for Approval, is known to the Insured.

The submission by the Insurers of coverage and apportionment information is entirely voluntary, a matter of convenience, not necessity. Furnishing this information to plaintiffs' counsel or directly to the plaintiff helps to accelerate the process where the insured may not have all prior payment information at hand and would then need to request same from the Insurer. Moreover, to be a valid settlement there would have to have been agreement as to what amount is paid under which coverage such that this information is likewise known to the insured. The point is, there is nothing the Insurers can do to avoid disclosure by their Insureds.

Again, it is the State's sole right to dictate what is necessary and appropriate for approval of settlements and the granting of releases in favor of the Industry. The State is not a party to the mass of cases which have languished at the hands of the Industry for over two years. Moreover, the State is not adverse to the interests of the recipients, as the Industry appears to suggest. The State has provided billions to recipients to enable recipients to rebuild, while the actions of the Industry deprive its insureds of funds they are rightfully entitled to receive. The State simply

asks for the information it needs and requires to conduct its business in a reasonable and orderly fashion.[2]

## 2. THE PROTECTIVE ORDER PROPOSED BY THE INDUSTRY IS ARBITRARY

The protective order proposed by the State allows a full discussion by and between the State and settling insurer. A literal reading of the current draft proposed by the Industry would preclude any discussions with the settling insurer by Road Home in a context other than relating to that individual settlement. In other words, in any other context involving the settling insurer, Road Home must ignore and disregard that which it has learned. The insurer can know the information, Road Home can know the information, but Road Home can't discuss that which it knows to be known to the settling insurer. This is an absurd result.

The Industry has advanced no coherent, cogent rationale to support its attempts to limit topics for discussion between the Insurance Industry and Road Home.

## 3. THERE IS NO PROTECTABLE TRADE SECRET INVOLVED

Given that there is a contractual, as well as a legal right, in favor of the Insured to such information without the imposition of non-disclosure agreement between the Insured and the Insurer, the claim that this information is secret and proprietary is no more than an afterthought by the Insurers. In *New Orleans Building Corp. et al. v. Christian Plastics, Inc. et al.*, 2002 WL 31833260 (E.D.La.), this Court found that under the Louisiana Public Records Statute, La. Rev. Stat. 44:31 et seq., the State is not a private entity and must conduct its commercial activity within the strictures of the public records laws that apply to them. That said, the State Public Records Law cannot be trumped by a protective order. What can be more commercial than an

---

[2] The State has sought to protect "Personal Information" as part of these proceedings. The State will continue to protect recipient information. The State simply objects to an overly broad and restrictive order from this Court inhibiting its use of information obtained and used to promote review and ultimate resolution of claims.

3

insurance settlement? Courts in this District have routinely rejected protective orders involving settlements between State and Local law enforcement agencies.

### 4. THE INFORMATION SOUGHT TO BE PROTECTED IS OTHERWISE AVAILABLE AND PROTECTED

Much of the information now sought to be protected by the Industry is already available to the Road Home Program from multiple sources. The most recent proposal by the Insurers does not make a real distinction as to source and can be read to retroactively impose limitations which did not exist when originally furnished.[3]

For example, as part of the application process, the applicant is required to disclose *inter alia*, policy information, mortgage information, and all prior payments -- all of which is considered private. This is not subject to disclosure absent compliance with the Protective Order Governing Road Home Applicant and Recipient Information. (Doc. 9597) or a specific authorization signed by the applicant. An additional layer of "non-disclosure" rules adds nothing but confusion as to what was received, when, and what order applies, if any.

### 5. MEET AND CONFER

In an effort to satisfy the standing directives of the Court to meet and confer, counsel for the State responded to a proposed protective order submitted by the Industry. Shortly thereafter, counsel was advised that the Industry rejected the suggested counter proposal, would seek the immediate intervention of the Court, and refused to negotiate further: "The insurers have no additional room to negotiate this order beyond what is in this version. Seth S." (e-mail 01/18/08, Schmeeckle to Dudenhefer). The State considered its obligations to meet and confer fully

---

[3] Interestingly, this is the very reason that the Industry fought the entry of the Protective Order entered by this Court on December 19, 2007 (Doc. No. 9587). The Industry contended that "Personal Data" was available from "other sources" and hence, a broad confidentiality order protecting present and future disclosures to and from the State was unnecessary. This most recent submission by the Industry to the Court reveals the true intent of the Industry to continue to try to dictate self-serving procedures, as the State and the insureds continue to desperately try to find a reasonable resolution for all these claims.

4

satisfied, and that any suggestions made during the course of those discussions a nullity, just as the Court would consider settlement/resolution discussion inadmissible.

The State verbally suggested to the Insurers that it would consider entering a privacy protocol tracking the various provisions of its proposed protective order submitted as part of its opposition. The insurers expressed no interest in this proposal.

Accordingly, the State has properly put before the Court its proposed protective order which it respectfully suggests more fairly balances the needs of the parties and does not place arbitrary restrictions on disclosure.

## CONCLUSION

Having suggested substantive arguments against jurisdiction, the State believes good grounds exist to deny entry of any protective order. Having advanced substantive arguments suggesting the lack of any substantive need for a protective order at this time, the State believes good grounds exist to deny entry of any protective order. Should however the Court be of a view that a protective order is necessary, the State suggests that its proposed protective order more adequately balances any need for such order in the interest of the parties. Clearly, the order proposed by the State will not lead to absurd results as will the insurer's proposal.

Respectfully submitted,

THE STATE OF LOUISIANA
The Honorable Buddy Caldwell
ATTORNEY GENERAL,
STATE OF LOUISIANA
/s/ Isabel Wingerter
Isabel Wingerter (No. 20428)
Assistant Attorney General
Director of Public Protection
1885 North Third Street, 6th Floor
Baton Rouge, LA 70802
Ph.: 225-326-6040

Fax: 225-326-6097

AND

ROAD HOME LIAISON AND LEAD COUNSEL
/s/ Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr. (No. 5486)
FAYARD & HONEYCUTT, A.P.C.
519 Florida Avenue, S.W.
Denham Springs, LA 70726
Ph.: 225-664-4193
Fax: 225-664-6925
Email: calvinfayard@fayardlaw.com

AND

ROAD HOME CO-LEAD COUNSEL
Paul G. Aucoin (No. 2604)
PAUL G. AUCOIN, ATTORNEY AT LAW
135 Goodwill Plantation
Vacherie, LA 70090-5240
Ph.: 225-265-7906
Fax: 225-265-7906
Email: aucoinp@bellsouth.net

Joseph J. McKernan (No. 10027)
McKERNAN LAW FIRM
8710 Jefferson Highway
Baton Rouge, LA 70809
Ph.: 225-926-1234
Fax: 225-926-1202
Email: jemckernam@mckernanlawfirm.com

Drew A. Ranier (No. 8320)
RANIER, GAYLE & ELLIOTT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
Ph.: 337-494-7171
Fax: 337-494-7219
Email: drainer@rgelaw.com

Frank C. Dudenhefer, Jr. (No. 5117)
THE DUDENHEFER LAW FIRM
A Limited Liability Company
Pan American Life Center
601 Poydras Street, Suite 2655

New Orleans, LA 70130
Ph.: 504-525-2553
Fax: 504-523-2508
Email: FCDLaw@aol.com

James P. Roy (No. 11511)
DOMENGEAUX WRIGHT
ROY & EDWARDS L.L.C.556 Jefferson Street,
Suite 500
P. O. Box 3668
Lafayette, LA 70502-3668
Ph.: 337-233-3033
Fax: 337-232-8213
Email: jimr@wrightroy.com

James R. Dugan, II (No. 24785)
MURRAY LAW FIRM
650 Poydras Street, Suite 1250
New Orleans, LA 70130
Ph.: 504-648-0180
Fax: 504-648-0181
Email: jdugan@dugan-lawfirm.com

John W. Houghtaling (No. 25099)
GAUTHIER, HOUGHTALING, & WILLIAMS, L.L.P.
3500 North Hullen Street
Metairie, LA 70002
Ph.: 504-456-8600
Fax: 504-456-8624
Email: john@ghwlaw.net

**CERTIFICATE OF SERVICE**

I hereby certify that on February 6, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record in the captioned matter.

/s/ Calvin C. Fayard, Jr.
CALVIN C. FAYARD, JR.