UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | CIVIL ACTION NO. 05-4182 |
| CONSOLIDATED LITIGATION | * | |
| | * | SECTION "K" |
| | * | |
| PERTAINS TO: | * | MAGISTRATE (2) |
| NO.   05-4181 | * | |
| 06-1885 | * | JUDGE DUVAL |
| 06-4024 | * | |
| 06-4389 | * | MAGISTRATE WILKINSON |
| 06-5771 | * | |
| 06-5786 | * | |
| 06-6099 | * | |
| 07-0206 | * | |
| 07-3500 | * | |
| 07-3612 | * | |
| 07-5023 | * | |
| 07-5040 | * | |
| * * * * * * * * * * * * * * * * * * | | |

**PLAINTIFFS' REPLY MEMORANDUM
TO THE MEMORANDA IN OPPOSITION TO
PLAINTIFFS' MOTION FOR DISQUALIFICATION OF COUNSEL**

**MAY IT PLEASE THE COURT:**

In response to the opposition memoranda[1] filed by Messrs. Becnel, Fayard and Honeycutt on February 6, 2008, plaintiffs respond as follows:

1. When the Motion for Disqualification and Other Relief (Record Document No. 10331) was filed on January 11, 2008, which presented to the Court the obvious conflict of interests which Messrs. Becnel, Fayard and Honeycutt have by virtue of sitting on Committees in this litigation while

---
[1] Record Document Nos. 11056 and 11069.

-1-

also representing the interests of the State of Louisiana, undersigned counsel for plaintiffs had absolutely no idea that on Wednesday, January 30, 2008, the Court would dismiss all "Outfall Canal" claims against the United States on grounds of immunity. (Record Document No. 10984). With claims against the deepest pocket on the face of the earth now dismissed, with prejudice, precisely who do Messrs. Becnel, Fayard and Honeycutt now propose that the claimants, plaintiffs and class members they represent by virtue of sitting on Committees should now recover their damages from? Surely not from the State of Louisiana, which is an entity represented by these very same lawyers! The concurrent conflict of interests, which plaintiffs and movers herein aver was patently obvious on January 11, 2008, is now even more obvious, with the United States now having been dismissed as a party defendant on grounds of immunity on January 30, 2008. Rule 1.7, Rules of Professional Conduct.

2. Messrs. Becnel, Fayard and Honeycutt not only failed to address the perfectly obvious non-consentable concurrent conflict of interests as a result of direct adversity between claimants, namely (1) claimants, plaintiffs and class members, and (2) the State of Louisiana, a conflict made all the more apparent by virtue of the Court's Order and Reasons of January 30, 2008 (Record Document No. 10984), but they also failed to address their insoluble concurrent conflict of interests because their representation of the State poses a significant risk that their obligations to

claimants, plaintiffs and class members would be materially limited by their representation of the State of Louisiana. Plaintiffs ask again, with the United States of America now out of the picture, who do Messrs. Becnel, Fayard and Honeycutt propose that claimants, plaintiffs and class members, to whom they have fiduciary and legal obligations by virtue of sitting on Committees in this litigation, should recover from? Are the assets of those parties sufficient to cover 100% of the damages being sought, not only by claimants, plaintiffs and class members, but also by the State of Louisiana on whose behalf these same lawyers have presented a claim for $200 billion? Rule 1.7, Rules of Professional Conduct.

3. Messrs. Becnel, Fayard and Honeycutt all make the argument that, because the State of Louisiana has been dismissed as a party defendant,[2] then no conflict of interests exists. Such a facetious argument does not merit serious response. If Messrs. Becnel, Fayard and Honeycutt had used their obviously strong power and influence against the State of Louisiana, then perhaps the State would still be a party defendant, facing liability to plaintiffs and movers herein. Instead of suing the State, these members on sitting Committees willfully concealed their representation of the State from the Court, other counsel and the litigants until August 29, 2007.

4. Although Mr. Fayard "specifically denies", through his attorney, Mr. Centola, undersigned counsel's sworn-to account of the contents of a

---

[2] Dismissal of the State, its agencies, etc. are on appeal.

telephone conversation on July 20, 2006, no counter-affidavit has been filed by Mr. Fayard. Is this because Mr. Fayard knows that the telephone conversation was recorded by at least one of the participants? Where is Mr. Fayard's counter-affidavit addressing the telephone conversation?

5. Messrs. Becnel, Fayard and Honeycutt fail to address at all (1) the identities of those similarly situated to them and (2) disclosure of their financial arrangements with the State and with others, focal to identifying further those lawyers and law firms similarly situated to Messrs. Becnel, Fayard and Honeycutt, and who also should be disqualified.

6. Messrs. Becnel, Fayard and Honeycutt claim that plaintiffs and movers herein have failed to cite any law, ignoring completely pages 11-15 of plaintiffs' Memorandum in Support of the Motion for Disqualification, etc. (Record Document No. 10331).

7. The specific conduct which plaintiffs and movers herein maintain constitute violations of Rules 1.7, 3.3, 4.1 and 8.4 of the Rules of Professional Conduct is the following:
   a) Concurrent representation of claimants, plaintiffs and class members by virtue of sitting on Committees appointed by the Court, but simultaneously representing the interests of the State of Louisiana, who they should have sued as a defendant. Rule 1.7.

-5-

    b)    Remaining silent following a hearing on February 28, 2007,[3] when lawyers within the Louisiana Department of Justice argued that the State of Louisiana was immune from being required to litigate claims brought against it in Federal Court by virtue of the 11th Amendment, and that undersigned counsel for plaintiffs and movers should be sanctioned for his "harassment" of the rich and powerful State of Louisiana, while knowing that on that very same date, namely February 28, 2007, then-Attorney General Foti presented a Form-95 with supporting documentation to the U.S. Army Corps of Engineers to perfect a claim for $200 billion in property damages sustained by the State as a result of Hurricane KATRINA.  Rules 3.3, 4.1 and 8.4.

    c)    Remaining silent when on April 3, 2007, the Court issued an Order and Reasons and Judgment dismissing plaintiffs' claims against Governor Blanco, the State of Louisiana, the State of Louisiana through the Department of Transportation and Development, etc. (Record Document Nos. 3666 and 3667), while knowing about the presentation of the Form-95 to the Corps of Engineers on behalf of the State on February 28, 2007, and knowing that they would be representing the State of Louisiana, et al. in pleadings which they

---

[3] Mr. Becnel obviously knew about the February 28, 2007 hearing, for he cited it in his memorandum. Record Document No. 11069, p. 1.

        planned to file on the second anniversary of KATRINA, namely on August 29, 2007.[4]  Rules 1.7, 3.3, 4.1 and 8.4.

d) Remaining silent when undersigned counsel for plaintiffs and movers was sanctioned by the Court on August 6, 2007, for his "harassment" of the State of Louisiana to the tune of almost $8,000 (Record Document No. 3666), while knowing about the presentation of the Form-95 to the Corps of Engineers on behalf of the State on February 28, 2007, and knowing that they would be representing the State of Louisiana, et al. in pleadings which they planned to file on the second anniversary of KATRINA, namely on August 29, 2007.  Rules 1.7, 3.3, 4.1 and 8.4.

e) Failing to disclose to the Court their representation of the State of Louisiana at any time prior to August 29, 2007, which representation was directly relevant to the State's assertion of 11th Amendment immunity and/or waiver of immunity by the State. Rules 1.7, 3.3, 4.1 and 8.4.

f) Failing to remedy and correct their conflict of interests and deception by immediately withdrawing from all legal representation in this litigation after the conflict of interests was brought to their attention.

---

[4] Plaintiffs and movers herein have averred, on information and belief, that Messrs. Becnel, Fayard and Honeycutt entered into the negotiations to represent the State "early in the litigation".  However, Messrs. Becnel, Fayard and Honeycutt have not yet offered any clue as to precisely when negotiations commenced . All that is known is that their names appeared on pleadings filed on behalf of the State on August 29, 2007.

## **CONCLUSION**

What happened in the Greater New Orleans Metropolitan Area on August 29, 2005, is unprecedented in terms of death, destruction and human misery, except perhaps in time of war. In no way can it be said that the innocent people who suffered in KATRINA were at war with their own Federal, State and local governments. The civil litigation which has resulted from the death, destruction and misery wrought also is unprecedented in the annals of American jurisprudence. Plaintiffs and movers respectfully submit that all of the litigants are entitled to an entirely "clean" litigation, without the double-dealing and other "backroom" shenanigans for which the State of Louisiana is so well known. Plaintiffs and movers repeat, "The world is watching." If Messrs. Becnel, Fayard and Honeycutt (and all others similarly situated) won't do the right thing, and voluntarily resign their positions, then the Court should do it for them.

Respectfully submitted,

**LAW OFFICES OF
ASHTON R. O'DWYER, JR.
Counsel for Plaintiffs**

**By:    S/Ashton R. O'Dwyer, Jr.
          Ashton R. O'Dwyer, Jr.
          Bar No. 10166
          821 Baronne Street
          New Orleans, LA 70113
          Tel. 504-679-6166
          Fax. 504-581-4336**

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon all counsel of record via Electronic filing, this 7th day of February 2008.

                                                S/Ashton R. O'Dwyer, Jr.