## IN THE UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*          05-5531 | * | |
| *Mumford v. Ingram*      05-5724 | * | |
| *Lagarde v. Lafarge*      06-5342 | * | JUDGE |
| *Perry v. Ingram*           06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*         06-7516 | * | |
| *Parfait Family v. USA*   07-3500 | * | MAG. |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

### LAFARGE NORTH AMERICA INC.'S
### REQUESTS FOR PRODUCTION OF DOCUMENTS
### BY THE UNITED STATES OF AMERICA

Defendant and third party plaintiff (and cross-claimant) Lafarge North America Inc.

("LNA"), pursuant to Federal Rule of Civil Procedure 34, directs the following requests for

production of documents to the United States of America in the above-captioned matters.  Your

written responses and your production of responsive documents are due within 30 days of

service.  Documents shall be produced for inspection and copying at the law offices of Chaffe

McCall, LLP, 2300 Energy Centre, 1100 Poydras Street, New Orleans, LA 70163-2300.

### INSTRUCTIONS

1.      You are directed to produce all documents responsive to these Requests that are in
your possession, custody, or control (including documents in the possession, custody, or control
of your agents, representatives, or your attorneys).  To the extent that multiple copies exist of a
document, you are directed to produce all non-identical copies (whether different from the
original by means of any notation made on the copies or otherwise).

2.      Any objections to these Requests must be stated with specificity, in writing.  If
objection is made to producing part of a category of documents or part of a particular document,

you must specify that part and produce and permit inspection and copying with respect to the remainder.

      3.      If you believe that a document is protected either by the attorney/client privilege or by the work product doctrine, you are instructed to comply with Federal Rule of Civil Procedure Rule 26(b)(5).

      4.      Documents must either be produced as they are kept in the usual course of business or organized and labeled so as to correspond with the categories in these Requests. If documents are produced as they are kept in the usual course of business, then all associated file labels, file headings, file folders, or similar identifying information must also be produced.

      5.      You are under a continuing duty to supplement and correct your responses and produce and permit inspection and copying of any additional documents responsive to these Requests to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

      6.      If, in responding to these Requests, the responding party encounters any ambiguities when construing a particular request or definition, it is requested that the responding party's counsel consult with the requesting party's counsel in a good faith effort to clarify any ambiguity. If any ambiguity remains, the responding party shall set forth in the response the matter deemed ambiguous and the construction used in responding.

      7.      If production of any requested document(s) is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

## DEFINITIONS

      Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in these Requests, the following terms are to be interpreted in accordance with these definitions:

      1.      "Communication" means the transmission of information by any means.

      2.      "Document" includes all forms of documents, writings, drawings, photographs, video, satellite surveillance data, correspondence, and/or memorialization by any means, and all forms of electronically stored information, within the meaning of Rule 34 of the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of the term "document."

      3.      "You" means the United States of America, its agents, agencies, employees, representatives, and attorneys, and including, but not limited to, the United States Army Corps of Engineers, the National Oceanic and Atmospheric Administration, and the U.S. Geological Survey.

      4.      "IHNC" means the Inner Harbor Navigation Canal.

      5.      "MR-GO" means the Mississippi River – Gulf Outlet.

6.      "GIWW" means the Gulf Intracoastal Waterway between its junctions with the MR-GO and the IHNC.

7.      "Northern Breach" means the breach in the floodwall on the east side of the IHNC that occurred on August 29, 2005 closest to Florida Avenue.

8.      "Southern Breach" means the breach in the floodwall on the east side of the IHNC that occurred on August 29, 2005 closest to Claiborne Avenue.

9.      "ING 4727" means the covered hopper barge ING 4727, owned by Ingram Barge Company, Inc.

10.     "Hurricane Katrina" means the hurricane that hit Louisiana and the Gulf Coast on or about August 29, 2005 and includes all storm surges, flooding and other effects of the storm.

11.     "Floodwall," "flood protection structure" and "levee" mean any man-made barrier designed to contain water.

12.     "Funnel effect" or "funneling effect" means the effect of collecting and focusing storm surge, thereby increasing the surge of water flowing through a channel.

13.     "Erosion" means the displacement of solids (soil, mud, rock and other particles) by wind, water, and other (including manmade) forces.

14.     "Subsidence" and "sinking" mean the motion of the Earth's surface as it shifts downward relative to a datum such as sea-level.

15.     "Dredge" and "dredging" mean any excavation activity or operation carried out at least partially underwater with the purpose of gathering up bottom sediments and depositing them at a different location.

16.     The singular form shall be deemed to apply to the plural where applicable, and vice versa, and the masculine gender shall apply to the feminine gender where applicable.  The present tense includes the past and future tenses.

17.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Requests all responses that might otherwise be construed to be outside of its scope.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      All discovery requests and responses (including without limitation all interrogatories and interrogatory answers, requests for production of documents and responses to requests for production of documents, requests for admissions and answers to requests for admission, and all documents produced in response to requests to production of documents) that You either served or received in any case that is part of *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182 et al. (E.D. La) including all documents that You placed in, sent to, or otherwise reproduced in any electronic or physical document

repository in connection with *In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182 et al. (E.D. La).

2.    All documents that contain information and/or opinions relating to, or that otherwise mention, the barge ING 4727 before, during, or after Hurricane Katrina.

3.    All documents that contain factual or opinion information concerning the flooding of the greater New Orleans area during or shortly after Hurricane Katrina, including without limitation regarding the eastern IHNC retaining wall breaches (the Southern Breach and the Northern Breach) and/or the storm surge or funneling effect in or around the MR-GO during or shortly after Hurricane Katrina (including without limitation both factual information about such flooding and funneling effect and opinion information about the actual or possible causes of such flooding and funneling effect).

4.    All documents referencing or evidencing communications made on August 28, 29, or 30, 2005 between any person(s) in the Lower Ninth Ward of New Orleans or St. Bernard Parish and any local, state, or federal emergency response agency, including all records of 911 calls.

5.    All documents created in connection with or as part of the development or drafting of the Interagency Performance Evaluation Task Force ("IPET") report (accessed at https://ipet.wes.army.mil/), including without limitation all versions and drafts of the report, all notes, memoranda, e-mails, drawings, photographs, images, surveys, studies, letters, and transcripts, including all documents, notes, memoranda, e-mails, drawings, photographs, images, surveys, studies, letters, and transcripts provided to or received from members of the Task Force and their agents.

6.    All simulations, replicas, models, mockups, and other studies, investigations, or representations, forensic or otherwise, of any and all things, events and/or locations you contend are pertinent to this litigation, including but not limited to documents created by and for the IPET Task Force, that you will (1) introduce at trial, and/or (2) rely upon at trial or any other proceeding in this case, and/or (3) disclose, display or publish to the court or the trier of fact, and/or (4) of which any witness you will call at trial will be informed and/or upon which any such witness will rely in furtherance of trial testimony.

7.    All documents or data or information considered, consulted or relied upon by any expert retained or specially employed to provide expert testimony for you in this proceeding.

8.    All exhibits to be used as a summary of or support for the opinions of any expert retained or specially employed to provide expert testimony for you in this proceeding.

9.    All photographs, digital video discs, video tapes, satellite imagery, or other visual or recorded images of the barge ING 4727, the breach of any retaining wall in the greater New Orleans area, the MR-GO, the IHNC, the GIWW, the LNA Terminal, flooding in the greater New Orleans area, and/or damage to any plaintiff's property taken between 8:00 a.m. on August 28, 2005 and 11:59 p.m. on August 31, 2005, specifically including without limitation any purportedly "classified" materials taken by or otherwise in the

possession, custody, or control of any intelligence agency or any other part of the United States government.

10.     All aerial and/or satellite photographic imagery (including infrared) that would show or depict the levees, I-walls, retaining walls, floodwalls and connecting structures along or beside the MR-GO, GIWW, and/or IHNC from January 1, 1965 through the present.

11.     All documents that support any of the defenses set forth in Your answer to LNA's third-party complaints and cross-claims against You.

12.     All documents that contain factual information and/or opinions concerning or relating to flooding in the greater New Orleans area in connection with any hurricane or storm other than Hurricane Katrina, at any time from 1950 to the present.

13.     All documents relating to the purpose, design, planning, and/or construction of the MR-GO, IHNC and GIWW, including but not limited to documents referring or relating to, discussing, addressing, or analyzing design features that were ultimately not incorporated into the final design and/or construction of the MR-GO, IHNC and the GIWW between its junction with the MR-GO and the IHNC.

14.     All documents relating to work done or contemplated to be done by contractors in connection with the design, construction, modification, enlargement, maintenance, inspection, or repair of the MR-GO, IHNC, and/or GIWW.

15.     All documents relating to maintenance, repair, dredging, improvement, widening, deepening, modification, or expansion of the MR-GO, IHNC, and GIWW navigation projects, including without limitation the addition of any spoil banks, levees, navigation improvements, flood control measures or elements to the MR-GO, IHNC and/or GIWW.

16.     All documents (including reports, studies, letters, notes, diagrams, drawings, photographs, transcripts, and/or evaluations from, by, or to third parties) that indicate or contain concerns, suggestions, or comments about the design or proposed designs, construction of, repairs or proposed repairs to, maintenance or proposed maintenance to, or dredging or proposed dredging, expansion or proposed expansion of the MR-GO, IHNC and GIWW, their levees, retaining walls, floodgates, floodwalls, and/or their surroundings (including, but not limited to, the MR-GO's potentially funneling effect and any possible impact and effect(s) of the MR-GO, IHNC and/or GIWW in connection with an actual or potential hurricane or storm).

17.     All documents discussing the concept of "Standard Project Hurricane" ("SPH") including, but not limited to, documents discussing how SPH was taken into account (or not taken into account) in the design and construction of the levees or floodwalls of the MR-GO, IHNC and GIWW.

18.     All documents that discuss, mention, acknowledge, analyze, measure or record how or why You authorized, designed, selected, chose, determined and/or modeled the levees or floodwalls in or around the MR-GO, IHNC, and/or GIWW relative to a particular benchmark and water level reference datum and which benchmarks and reference datum

5

were used (including any adjustments or variations to them) for any and all construction projects, maintenance, modification, or repairs regarding these structures.

19.     All documents that discuss, mention, acknowledge, analyze, measure, record, or warn against the concept, effects of, or attempts to mitigate the funneling of water, a funnel-effect, or otherwise describe the channeling or funneling of water in, through, or out of the MR-GO and/or into the GIWW and IHNC.

20.     All documents that discuss, mention, acknowledge, analyze, measure, record, or warn against erosion, or the prevention, elimination, or reduction of erosion (including armoring of the landward levee slope) involving the MR-GO, IHNC and GIWW, their banks, and/or other land abutting or in the vicinity of the MR-GO, IHNC and/or GIWW.

21.     All documents that discuss, mention, acknowledge, analyze, measure, record, or warn against subsidence or sinking of the MR-GO, IHNC and GIWW or the prevention, elimination, or reduction of subsidence or sinking that of the MR-GO, IHNC and GIWW, theirs banks, and/or other land abutting or in the vicinity of the MR-GO, IHNC and GIWW.

22.     All documents that discuss, mention, acknowledge, analyze, measure, record, or warn against the effect that the development of the MR-GO, IHNC and GIWW has had on wetlands, cypress swamps, forests, land masses, and other natural buffers that surround, neighbor, or abut the MR-GO, IHNC and GIWW including, but not limited, to documents that quantify their loss or disappearance.

23.     All documents that discuss, mention, acknowledge, analyze, measure or record your proposed, completed, or planned efforts, attempts, plans, proposals, concepts, or designs that you created in order to protect wetlands, forests, land masses, and other natural buffers surrounding, neighboring or abutting the MR-GO, IHNC and GIWW.

24.     All documents that mention the use of dredge spoils and/or other dredged or discarded materials in the construction of levees, retaining walls,  or other flood protection systems in and/or around the IHNC, MR-GO, or GIWW and/or that recognize, address, analyze or consider possible impact or effects of using these materials in construction, maintenance, or repairs.

25.     All documents, studies, or other writings that discuss whether armoring should have been used or where it was used for the IHNC, MR-GO, or GWIWW levee/floodwall systems to protect against erosion or scouring of levee/berm soil caused by overtopping.

26.     All documents regarding soil types, source of soil or spoils, soil samples, soil analysis, suitability of the soil and results of any testing or analysis for the IHNC levees/banks, done at anytime from 1960 through the present.

27.     All quality control records of the construction materials and methods used in the construction of the MR-GO, GIWW and IHNC levees, retaining walls, I-walls, floodwalls, and connecting structures.

28.    All documents that discuss, mention, acknowledge, analyze, measure, record or warn against the presence, prevention, elimination, and/or reduction of overtopping of retaining walls or other flood protection systems in and/or around the IHNC.

29.    All documents that discuss, mention, acknowledge, analyze, measure, record, or warn against the presence, prevention, elimination, and/or reduction of underseepage of levees, retaining walls or other flood protection systems in and/or around the MR-GO, IHNC, and GIWW.

30.    All documents that discuss, mention, acknowledge, analyze, measure, record or warn against the prevention of and/or anticipation of an impact and/or allision between levee structures, retaining walls and/or other navigation and/or flood protection structures and vessels and/or other foreign objects in the MR-GO, IHNC, and GIWW.

31.    All documents including reports, studies and calculations that were made prior to August 29, 2005, with respect to barges or other vessels making contact with levees, retaining walls, I-walls, T-walls, and their component parts in the Greater New Orleans area (including without limitation the Mississippi River earthen levees and levees and retaining walls beside or along the MR-GO, GIWW, and IHNC).

32.    All documents that discuss, mention, acknowledge, analyze, measure, record or warn against subsidence of the MR-GO, IHNC, and GIWW retaining walls and levees.

33.    All documents that discuss, mention, analyze, measure, predict, record, or note the heights or changes in heights of the MR-GO, IHNC, and GIWW retaining walls and levees.

34.    All documents regarding the chain link fence in the east IHNC earthen berm, just landward of the floodwall cap, including: why it was installed, by whom it was designed, and all design documents, all discussions or studies of the advantages and disadvantages of installing the fence, all contract, construction and invoice documents regarding this fence, all studies or opinions as to the effect of the fence/posts/footings on the erosion of the soil behind the floodwall at the location of the Southern Breach along in the IHNC, and all documents regarding installation or planned installation of armoring in the IHNC levee/flood system.

35.    All documents regarding the placement or construction of pipes, siphons, and/or any other works or obstructions within, over, or under the levees, floodwalls, and rights-of-way along or beside the IHNC.

36.    All documents involving, discussing, ordering, requesting, mentioning specifying, indicating, recording or analyzing the impact or effects of your acts (or your agents' acts) of dredging the IHNC or the MR-GO.

37.    Any photographs, digital video discs, video tapes, or other visual or recorded evidence of dredging vessels working (including but not limited to the M/V WHEELER and the M/V McFARLAND) in the MR-GO, GIWW and IHNC.

38.   All documents discussing removal, disposal, movement, or use of dredging materials including but not limited to dredging spoils from the MR-GO, GIWW, and/or the IHNC, including all documents identifying the amounts of spoil removed and/or dredge volume reports.

39.   Any clocks or other timepieces or reports or other documents concerning clocks or timepieces that were in the Lower Ninth Ward on August 29, 2005 and that stopped during the flooding.

40.   Any fragments of the IHNC I-wall/retaining wall structures, including cement, sheet pilings, or rebar, collected on or after August 29, 2005.

41.   All documents evidencing or referring to any narrative or eyewitness accounts of events that took place in the Lower Ninth Ward or St. Bernard Parish on August 28 and August 29, 2005, including but not limited to any written statements, tape recordings, transcriptions or accounts that discusses or describes the barge ING 4727 and/or the flooding that took place in or around the plaintiffs' properties.

42.   All documents referring or otherwise concerning the Southern Breach in the east side of the IHNC, including what happened at the location of that breach and the causes of that breach during or after the passage of Hurricane Katrina through the New Orleans area on August 29, 2005.

43.   Any documents, including but not limited to photographs and any other visual depictions and reports and other documents of the United States Coast Guard of any other barge other than ING 4727 during Hurricane Katrina including barges that moved from their original mooring location during the course of the storm.

44.   All documents discussing the likelihood, possibility, odds, or expectation that property in Orleans or St. Bernard Parish would or will experience flooding from future hurricanes, storms, and/or storm surges at any time, from 1950 to the present.

45.   All documents, including contracts, addressing or discussing the involvement of any other federal, state, or local agency or governmental entity in the design, construction, maintenance and expansion of the MR-GO, IHNC, and GIWW.

46.   Any communications between You and other federal, state, or local agency or governmental entity relating to the design, construction, maintenance and expansion of the MR-GO, IHNC, and GIWW.

47.   Any documents referring to any possible violations of law, or failures to comply with law or with contractual obligations, by You or anyone else during or in connection with the design, construction, and maintenance and expansion of the MR-GO, IHNC, and GIWW.

48.   All documents stating the results of or otherwise relating to analytical or experimental tests (full scale and/or small scale) regarding the building of test sections, demonstration studies, and models of levees, retaining walls, I-walls, T-walls, and related structures,

before, during, or after the actual construction of these structures beside or along the MR-GO, GIWW, or IHNC.

49.  All documents, including studies and reports, relating to the reliability of the levees, retaining walls, floodwalls, and I-walls along or beside the MR-GO, GIWW and IHNC, including any and all studies relating to risk to lives or property with respect to the "hurricane protection system" and its component parts.

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
Parker Harrison (#27538)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com
Harrison@chaffe.com

/s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

***Attorneys for Lafarge North America Inc.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 12, 2007, I caused a copy of the foregoing to be served upon all counsel of record in these cases by electronic mail and/or facsimile.

/s/ John D. Aldock
John D. Aldock