UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * CIVIL ACTION |
| | * |
| | * NO. 05-4182 "K" (2) |
| | * |
| | * JUDGE STANWOOD R. DUVAL |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | * |
| | * MAG. JUDGE JOSEPH C. WILKINSON, JR. |
| | * |

**MEMORANDUM OF LAFARGE NORTH AMERICA INC. AS *AMICUS CURIAE*
IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY
ADJUDICATION AND IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ..................................................................................1

INTEREST OF *AMICUS* CURIAE LAFARGE NORTH
AMERICA INC. ...............................................................................................................3

ARGUMENT ....................................................................................................................4

I.      Section 702c Immunity Applies Only If Two
        Requirements Are Satisfied:  (1) The Government's
        Allegedly Negligent Act Was Undertaken As Part Of A
        Flood Control Project, and (2) The Resulting Injury
        Was Caused By Flooding Or Floodwater .........................................................4

II.     The Government's Argument That § 702c Applies
        Because The LPV Failed To Contain The Flooding
        Caused By The Government's Prior Negligence In The
        Design And Construction Of The MR-GO Is Legally
        Wrong .............................................................................................................10

        A.      The Asserted Fact That The Floodwaters Were
                Not Contained By A Flood Control Project Is
                Insufficient To Establish Immunity For The
                Negligent Prior Conduct That Led To The
                Flooding ............................................................................................10

        B.      The Government Is Wrong In Arguing That
                Plaintiffs Are Actually Suing For Negligence In
                The Design And Construction Of The LPV ........................................11

        C.      Moreover, The Government Has Disavowed Any
                Factual Contention That The MR-GO Was
                Incorporated Into The LPV ...............................................................13

CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

<u>**Page**</u>

**CASES:**

*Carlson v. Fredsall*, 37 N.W.2d 744 (Minn. 1949) ...................................................................12

*Central Green v. United States*, 531 U.S. 425 (2001) ......................................................... *passim*

*Graci v. Unites States*, 456 F.2d 20 (5th Cir. 1971) ............................................................. *passim*

*Hayes v. United States*, 585 F.2d 701 (4th Cir. 1978) ...................................................................6

*Jess v. McNamer*, 255 P.2d 902 (Wis. 1953)................................................................................12

*Martin v. Medtronic, Inc.*, 254 F.3d 573 (5th Cir. 2001)................................................................6

*R.D. Wood Co. v. Phoenix Steel Corp.*, 211 F. Supp. 924 (E.D.
Pa. 1962), *vacated*, 327 F.2d 921 (3d Cir. 1964).......................................................................12

*United States v. James*, 478 U.S. 597 (1986)........................................................................ 2, 6-7

*United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004) ............................................................. 5-6

**STATUTES:**

33 U.S.C. § 702c ................................................................................................................. *passim*

**OTHER AUTHORITIES:**

Restatement (Second) of Torts § 324A...........................................................................................11

Restatement (Second) of Torts § 437...........................................................................................12

## INTRODUCTION AND SUMMARY

The § 702c issue here in *Robinson* – just like the § 702c issue raised by the United States' motion to dismiss LNA's third-party complaint in the Barge track – is whether § 702c immunizes the United States from liability for damages proximately caused by its negligence in the design, construction, and maintenance of the MR-GO.  The United States' motion to dismiss or for summary judgment is based on a legal argument that this Court has already correctly rejected – that § 702c immunizes the United States from damages caused by floodwaters that were not contained by a flood control project, even though the negligent conduct that caused the flooding was not undertaken as part of a flood control project.  As we show herein, the United States' new papers provide no basis for the Court to alter its decision rejecting that argument.

Fundamentally, and as the AT&T Entities also show in their separate *amicus* brief (Doc. 11009-3), § 702c immunity applies only where both of two requirements are met:  (1) the negligent act that proximately caused the injury was undertaken as part of a flood control project, and (2) the damage that resulted from that negligent act was caused by flooding or floodwater.  The first of those requirements was unambiguously stated in *Graci v. United States*, 456 F.2d 20 (5th Cir. 1971), and the second in *Central Green v. United States*, 531 U.S. 425 (2001).  Applying that test here, § 702c immunity does not apply because the government has admitted that the allegedly negligent conduct that proximately caused the injury – the design, construction, and maintenance of the MR-GO, a navigational channel – was not undertaken as part of a flood control project.

The United States' core argument is that *Central Green* should be read to impose only the second requirement – that is, that immunity applies whenever floodwater escapes a flood control project.  That misreads *Central Green*.  In *Central Green*, the government's allegedly negligent

conduct was the design, construction, and maintenance of a canal that was part of a flood control project from its inception.  531 U.S. at 427.  Thus, the underlined premise of *Central Green* was that the first requirement was satisfied – the negligent act had been done in connection with a flood control project.  What *Central Green* held is that even where the negligent act was part of a flood control project, immunity attaches only if the damage resulting from that negligent act was caused by floodwaters – that is, *Central Green* clarified that a second requirement must also be satisfied in order for immunity to apply under § 702c.  *Central Green* did not jettison the first requirement for § 702c immunity set forth in *Graci* and in *United States v. James*, 478 U.S. 597 (1986).

This analysis is consistent not only with *Graci*, *Central Green*, and this Court's prior *Robinson* rulings, but also with this Court's recent § 702c decision in the Levee track.  Doc. 10984.  The United States had not designed, built, or maintained the canals at issue in the Levee cases (the 17th Street, Orleans Avenue, and London Avenue canals); instead, the United States became involved with them in connection with a flood control project, the Lake Pontchartrain and Vicinity Hurricane Protection Plan ("LPV").  As such, it necessarily followed that any negligent actions by the United States were undertaken as part of its involvement in a flood control project – thereby satisfying the first (*Graci*) requirement for immunity under § 702c.[1]  Here, by contrast, the United States' negligent conduct occurred before and wholly independent of the LPV, and thus § 702c immunity does not attach.  Moreover, the United States has repeatedly conceded that the MR-GO, unlike those three canals, "was not absorbed into the" LPV (Doc. 5853-3 at 4), further underscoring that there is no possible basis for finding that plaintiffs' and LNA's claims against the government are barred by § 702c.

---

[1]  The second requirement was also plainly satisfied since the damages in question were caused by floodwaters.

## INTEREST OF *AMICUS CURIAE* LAFARGE NORTH AMERICA INC.

LNA is a defendant in the Barge track of this litigation and has filed third-party claims against the United States.  LNA's claims against the United States include the same cause of action that the plaintiffs allege here, namely, that (a) the United States negligently designed and constructed the MR-GO so that it acts as a funnel to transmit and magnify storm surges to the New Orleans area; (b) in building the MR-GO, the United States also negligently destroyed extensive areas of wetlands, which provided a critical natural buffer for the New Orleans area against storm surges, and the destruction of which exacerbated the funneling effect of the MR-GO; (c) the United States has also negligently maintained the MR-GO, including negligently dredging the MR-GO so as to erode its banks, failing to properly dredge the MR-GO in order to maintain its depth (which magnifies its funneling effect), and failing to account for the effects of subsidence on the MR-GO's banks; and (d) those negligent actions were a proximate cause of the damage incurred during Hurricane Katrina.  See LNA's Answer to Sixth Supplemental and Amended Complaint and Third-Party Complaint (Doc. 9032).

On June 25, 2007, in the *In re Ingram Barge Co.* litigation, the United States moved to dismiss LNA's third-party claims based on § 702c.  In support of that motion, the United States made essentially the same arguments that it makes here in *Robinson*.  Docket No. 05-4419, Doc. 688-2.  On July 25, 2007, LNA filed its opposition to that motion.  Docket No. 05-4419, Doc. 708.  After the Barge track was created, the United States and LNA re-filed those memoranda.  The government's memorandum is Doc. 7723, LNA's opposition is Doc. 7742, the government's reply is Doc. 8832, and LNA's response is Doc. 7743-3.

In setting the hearing on the United States' motion to dismiss LNA's Barge track claims at the same time as the § 702c immunity issue is heard in *Robinson*, this Court observed that the

§ 702c issue in the Barge track is the same as the § 702c issue in *Robinson* – namely, whether § 702c immunizes the government from the effects of its negligent conduct in the design, construction, and maintenance of the MR-GO.  Doc. 7741 at 2-3.  Accordingly, LNA has a substantial and direct interest in this outcome of the present motions.

## ARGUMENT

I.  **Section 702c Immunity Applies Only If Two Requirements Are Satisfied:  (1) The Government's Allegedly Negligent Act Was Undertaken As Part Of A Flood Control Project, and (2) The Resulting Injury Was Caused By Flooding Or Floodwater**

Based on its misreading of *Central Green*, the United States argues that § 702c immunity attaches to damage caused by floodwater that the government failed to control.  Doc. 10336 at 2 ("Because the flood damages alleged by Plaintiffs resulted from floodwaters that the United States sought but failed to control, this case must be dismissed ….").  But that is only <u>half</u> of the test for immunity under § 702c.  As this Court has held, immunity <u>also</u> requires that the <u>negligent conduct</u> that caused the injury was undertaken as part of a flood control project.  As this Court has also held, that conclusion necessarily follows from the unambiguous language of the Fifth Circuit's opinion in *Graci* and from reading *Central Green* in its historical and factual context.

*<u>Graci</u>*.  There is, and can be, no genuine dispute that *Graci* held that § 702c immunity can exist only where <u>the government's negligent act</u> was done in connection with a flood control project.  In *Graci*, the Fifth Circuit stated the question presented to it as follows:  whether "§ 3 of the Flood Control Act … affords an absolute immunity from liability for floodwater damage regardless [of] whether <u>the negligence alleged was in connection with a flood project</u> or a navigation aid project."  456 F.2d at 23 (emphasis added).  Based on the Act's history and purpose, the Fifth Circuit said:

> The question then becomes whether it is reasonable to suppose that
> in exchange for its entry into flood control projects the United
> States demanded complete immunity from liability for the <u>negli-
> gent and wrongful acts of its employees unconnected with flood
> control projects</u>. Judge Heebe answered that it would not be reas-
> onable to so conclude. Our analysis … leads us to agree.

*Id*. at 26 (part of emphasis added, citation omitted). And concluding, the Fifth Circuit specific-

ally held that "when, as here, the plaintiffs allege that they have suffered floodwater damage as a

result of the <u>negligence of the United States unconnected with any flood control project</u>, § 3 of

the [FCA] does not bar an action against the United States under the Federal Tort Claims Act."

*Id*. at 27 (emphasis added). That is <u>precisely</u> what the plaintiffs (and LNA) allege here.

In short, *Graci* expressly and unambiguously held – not just once or twice, but three

times – that § 702c immunity applies only where <u>the government's negligent act was taken as

part of a flood control project</u>. Moreover, as LNA's prior memorandum showed in detail, that

requirement is strongly supported by the Act's legislative history and basic purpose, as well as

by decisions from other courts similarly requiring that the negligent conduct be part of a flood

control project. Doc. 7742 at 8-10. Specifically, the Act's history shows that it was intended to

disclaim liability "resulting from the <u>execution</u> of the [flood control project] plan." *Id*. at 10,

emphasis added. Likewise, cases from other courts, including the Ninth Circuit, focused on

whether the challenged "decision" was part of a flood control project. *Id*. at 8.

The United States never forthrightly addresses this explicit holding of *Graci*. Instead, the

government either ignores it or suggests that it was implicitly overruled by the decision in *Cen-

tral Green*. But neither of those stratagems provides a sufficient basis for this Court to contra-

vene the Fifth Circuit's express holding. As LNA's prior memorandum showed (Doc. 7742 at

10-11), it is firmly settled that prior Fifth Circuit decisions are binding authority "in the absence

of an <u>on-point</u> en banc or Supreme Court <u>holding</u>." *United States v. Pineiro*, 377 F.3d 464, 468

(5th Cir. 2004) (emphasis added), *vacated on other grounds*, 531 U.S. 1101 (2005).  More spe-cifically, a prior Fifth Circuit decision can be disregarded only if "such overruling is <u>unequiv-ocally directed</u> by controlling Supreme Court precedent."  *Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001) (emphasis added, citation omitted).

The government makes no effort to show that *Central Green* satisfies this exacting stan-dard for persuading this Court to contravene unambiguous Fifth Circuit authority.  That alone is ample reason for this Court to follow *Graci*.  In any event, as we now show, *Central Green* in fact is fully consistent with the requirement from *Graci* that the negligent conduct must have been part of a flood control project.

**<u>*James* and *Central Green*</u>**.  As this Court has recognized, the opinion in *Central Green* must be interpreted in light of its historical and factual context, including the Supreme Court's earlier decision in *James*.  In *James*, the Supreme Court held that § 702c immunity applied in a factual context that plainly satisfied the *Graci* test, since the government's allegedly negligent conduct (the intentional release of floodwaters) was undertaken in connection with a flood con-trol project.  478 U.S. at 598.  Indeed, the Court in *James* held that immunity applied specifically on the ground that the allegedly negligent <u>conduct</u> in question – the failure to convey warnings – was "part of the 'management' of a flood control project."  *Id*. at 610.  And not only did *James* cite *Graci* with approval (*id*. at 601 n.2), it also quoted a Fourth Circuit opinion holding that immunity depended on whether the plaintiff's damages resulted from the nature of the govern-ment's allegedly negligent <u>conduct</u>:  operation of the dam as a recreational facility or as a flood control project (*id*. at 605 n.7, quoting *Hayes v. United States*, 585 F.2d 701 (4th Cir. 1978)).  *James*, thus, was fully consistent with, and reinforced, the Fifth Circuit's opinion in *Graci*.

The *James* opinion, however, also included a sentence saying that "the terms 'flood' and 'flood waters' apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *Id*. at 605. Lower courts subsequently construed this to mean that as long as the government's negligent act was undertaken as part of a flood control project, then § 702c immunity applied even if the damage was not caused by flooding or floodwater.

The sole purpose of the *Central Green* opinion was to correct that specific misunderstanding as to whether, once it is established that the negligent conduct was part of a flood control project, immunity attaches to all injury from that conduct or only to injury caused by floodwater. In *Central Green*, the plaintiff sued the United States alleging that its negligent design, construction, and maintenance of the Madera Canal caused subsurface flooding that damaged the plaintiff's orchards. 531 U.S. at 427. Noting that flood control was one of the purposes of the project that included the canal, the lower courts held that the government necessarily was immune for all water that escaped from the canal, regardless of whether the water that had caused the damage was "floodwater." *Id*. at 427-28.

The Supreme Court reversed. It explained that it was addressing a "narrow question presented," namely, whether § 702c encompassed "all the water that flows through a federal facility" operated for flood control purposes. *Id*. at 427. It then focused on the sentence from *James* (as quoted above) that created confusion among the lower courts. *Id*. at 430. The Court then observed that the text of § 702c does not say that immunity extends to all damage from a flood control project, but rather only to "damage from or by floods or flood waters." *Id*. at 434. As such, the Court clarified that § 702c only applies to damage caused by floodwater. *Id*.

In short, the <u>unstated premise</u> of *Central Green* was that the *Graci* requirement for immunity under § 702c was satisfied because the allegedly negligent conduct (that design of a canal built for flood control purposes) was undertaken as part of a flood control project.  What *Central Green* held was that, even though that first requirement was met, immunity attached only to the extent that the damage resulting from that conduct was caused by flooding or floodwater.  Thus, as this Court has already held, *Central Green* "<u>narrowed</u> the immunity granted by § 702c" (Doc. 6194 at 4 (emphasis added)) because it added a second requirement to the first requirement set forth in *Graci*.

*Central Green*, therefore, in no way overruled *Graci's* express holding, which remains binding authority in this Court.  *Graci* holds that § 702c does not apply if the negligent conduct was not part of a flood control project.  *Central Green* holds that, even if that requirement is met, § 702c applies only if the damage resulting from that negligent conduct was caused by floodwater.  Put together, they establish that § 702c has two requirements, both of which must be satisfied for immunity to exist:  (1) the negligent conduct that caused the harm must have been undertaken as part of a flood control project; and (2) the damage resulting from that conduct must have been caused by floodwater.[2]

**_This Court's Prior Rulings_**.  This Court has already rejected the United States' misreading of *Central Green* and its efforts to evade *Graci*.  The February 2, 2007 opinion in *Robinson* held that the United States is not immune where the "causation for [the] floodwaters force and breadth are alleged to have been the defalcations of the Government with respect to the MRGO." Doc. 2994 at 16.  The July 2, 2007 order denying the United States' motion for certification reaffirmed this point, emphasizing that under the government's position "[t]aken to its logical

---

[2]  In *Graci*, immunity did not apply because the negligent conduct was not part of a flood control project, even though the damage was caused by floodwater.  In *Central Green*, even though the negligent conduct was part of a flood control project, immunity did not apply to the extent that the damage was not caused by floodwater.

extreme, the United States could dynamite a levee along the Mississippi and be immune.  A ship owned by the United States could collide into a dam causing flooding, and it would be immune. The United States could break a water main causing flooding, and it would be immune.  In essence, this is how broadly the United States reads *Central Green*."  Doc. 6194 at 3.

The Court's recent dismissal order in the Levee track cases also comports with this analysis of § 702c.  Doc. 10984.  The order involved three drainage canals – the 17th Street, London Avenue, and Orleans Avenue canals.  *Id*. at 1.  Unlike the MR-GO, those canals were built and operated by the Sewerage and Water Board of the City of New Orleans ("SWB").  *Id*. at 2. Thus, the United States had no role relating to these canals until Congress authorized studies and then certain work as part of the LPV.  *Id*. at 3.  As a result, all of the federal government's allegedly negligent actions (or inactions) relating to these three canals necessarily were undertaken in connection with a flood control project.  *Id*. at 33-37.  That is, both temporally and geographically, all of the United States' actions with respect to those canals were undertaken in connection with the LPV, and hence § 702c immunity attached to those actions.[3]  Here, by contrast, the government's negligent actions just as plainly were <u>not</u> undertaken in connection with a flood control project.  Those actions – designing and constructing the MR-GO – were undertaken for purposes of commercial navigation and before the LPV was even conceived – as the courts held and the government conceded in *Graci*.  456 U.S. at 22.  Indeed, the government has repeatedly admitted that those aspects of its conduct were not undertaken as part of a flood control project. Accordingly, the same analysis that led this Court to dismiss the Levee claims under § 702c requires the Court to reject the United States' § 702c defense in *Robinson*.

---

[3]  The second requirement for § 702c immunity was satisfied because the waters from the three canals during Hurricane Katrina were floodwaters.

II.     **The Government's Argument That § 702c Applies Because The LPV Failed
To Contain The Flooding Caused By The Government's Prior Negligence In
The Design And Construction Of The MR-GO Is Legally Wrong**

The government's current iteration of its § 702c theories advances two arguments – (A)

that immunity attaches simply because a flood control project (the LPV) failed to contain the

flooding that was caused by the government's negligent design and construction of the MR-GO

(Doc. 10336 at 1-2), or (B) that plaintiffs are "necessarily saying" that the government was negli-

gent in its design and construction of the LPV (*id.* at 3).  Both arguments are meritless as a mat-

ter of law.

A.     **The Asserted Fact That The Floodwaters Were Not Contained By A
Flood Control Project Is Insufficient To Establish Immunity For The
Negligent Prior Conduct That Led To The Flooding**

The asserted fact that the floodwater from the MR-GO was intended to be, but was not,

contained by a flood control project (the LPV) is insufficient to establish immunity under the

two-part test for § 702c immunity set forth above.  This is so because, as shown in Part I above,

that test focuses on whether the negligent conduct that forms the basis for the plaintiffs' claims

was part of a flood control project (the first prong of the test), not solely on whether the damages

were caused by floodwater that escaped such a flood control project (the second prong of the

test).  In this case, the negligent conduct that forms the basis for plaintiffs' (and LNA's) claims

was the original design, construction, and maintenance of the MR-GO navigation channel –

which, as the United States has repeatedly conceded, occurred prior and wholly unrelated to the

LPV.  Accordingly, as this Court has held, the mere (asserted) fact that the floodwater was not

contained by a flood control project is insufficient as a matter of law to trigger immunity under

§ 702c.  Indeed, as quoted above, this Court has cited various examples – such as the dynamiting

of a levee – that underscore this point.

A ruling that § 702c applies in this case would yield the illogical and untenable result that, by building the LPV, the United States was able to <u>retroactively immunize its prior negligent conduct</u> that it concedes was <u>not</u> part of a flood control project.  As our prior memorandum showed (Doc. 7742 at 17-18), § 702c cannot possibly be construed to produce that result.  When Congress, back in 1928, was considering whether to voluntarily get into the business of trying to control the chronic flooding of the Mississippi River, it was concerned that the federal government could be incurring massive new tort liability based on claims that those volunteer actions had been negligently carried out.  See Doc. 7742 at 10 & n.3 (quoting legislative history).[4]  Congress therefore enacted § 702c to limit the costs of the government's flood control activities to the costs of actually performing the activities themselves, and to prevent the government from being held liable on the basis of actions undertaken as part of the flood control program.  *Id*.  There is no evidence that Congress intended § 702c to immunize the government for liability arising from its negligent conduct unrelated to a flood control project.[5]

**B.    The Government Is Wrong In Arguing That Plaintiffs Are Actually
Suing For Negligence In The Design And Construction Of The LPV**

The United States also errs as a matter of law in arguing that, because the waters at issue were not contained by the LPV, plaintiffs necessarily are claiming that the United States was negligent when it designed and built the LPV.  As long as the trier of fact agrees that the government's <u>prior</u> negligence in the original design, construction, and maintenance of the MR-GO was a proximate cause of the flooding that occurred during Hurricane Katrina, then the United

---

[4]  Tort liability may be imposed on a volunteer who fails to exercise due care in an effort to aid others.  See, *e.g.*, Restatement (Second) of Torts § 324A.

[5]  The *Robinson* plaintiffs also correctly argue that the factual record establishes that the United States did not design and build a flood control project throughout the relevant area and hence that the waters in question did not escape from a flood control project.  But the Court need not reach that factual question because, as established in the text, the United States remains liable <u>as a matter of law</u> for damage proximately caused by its prior negligence that was not undertaken as part of a flood control project, regardless of whether or not the waters in question were not contained by a subsequently-constructed flood control project.

States can be held liable on the basis of that <u>prior</u> negligence – regardless of whether or not it was negligent a <u>second</u> time in its design and construction of the LPV, regardless of whether or not that second negligence was <u>also</u> a proximate cause of the Katrina flooding, and regardless of whether or not the United States is immune from any liability for that <u>second</u> negligence.  Section 437 of the Restatement (Second) of Torts specifically provides that:

> If the actor's negligent conduct is a substantial factor in bringing about harm to another, the fact that after the risk has been created by his negligence the actor has exercised reasonable care to prevent it from taking effect in harm does not prevent him from being liable for the harm.

Applying that principle here, if the United States' negligent conduct in designing and constructing the MR-GO was a substantial factor in the flooding during Hurricane Katrina, the (alleged) fact that, after that risk was created by the government's negligence, the United States exercised reasonable care in adding floodwalls to prevent the risk from taking effect does not prevent the United States from being held liable for the harm that actually occurred.[6]  Thus, the government is legally mistaken in arguing that plaintiffs are "necessarily saying" that the United States was negligent when it designed and built the LPV.

In this regard, there is ample factual support in the record for the plaintiffs – and LNA – to proceed to trial on the claim that the government's negligence in the design, construction, and maintenance of the MR-GO was a proximate cause of plaintiffs' injuries.  Although the United States suggests without factual support that Hurricane Katrina would have caused catastrophic flooding of the entire area whether or not the MR-GO had been built, the <u>record evidence</u> is to

---

[6]  See also *R.D. Wood Co. v. Phoenix Steel Corp.*, 211 F. Supp. 924, 926 (E.D. Pa. 1962) (applying § 437 and holding that, once the defendant's negligence had created the risk, "its efforts to prevent a harmful effect were of consequence only if successful"), *vacated on other grounds*, 327 F.2d 921 (3d Cir. 1964); *Jess v. McNamer*, 255 P.2d 902, 904 (Wis. 1953) (applying § 437 and holding that "[t]he fact that, after appellant negligently created the risk, he exerted every effort to overcome the hazard, does not operate to cleanse the original act of its negligent character"); *Carlson v. Fredsall*, 37 N.W.2d 744, 748 (Minn. 1949) (applying § 437).

the contrary.  For example, in his expert report, Professor G. Paul Kemp concludes (at ¶ 58) that "the catastrophic inundation of Greater New Orleans associated with Hurricane Katrina was caused by the storm surge dynamics of the 'funnel' and the destruction of the wetlands and marshes surrounding the MRGO, both of which detrimental effects were caused by the defective design, construction, operation, and maintenance of the MRGO."  Likewise, Professor Robert G. Bea's report opines (at ¶ 22) that "[t]he primary cause of the catastrophic flooding was the design, construction, and maintenance of the MR-GO itself from 1958 to the date of Hurricane Katrina."

### C. Moreover, The Government Has Disavowed Any Factual Contention That The MR-GO Was Incorporated Into The LPV

Because the test for § 702c immunity requires that the negligent conduct be part of a flood control project, the subsequent addition of flood control measures does not, as a matter of law, retroactively immunize prior negligent conduct that was unconnected to a flood control project.  That legal principle requires a different outcome here than in the Levee cases, because here the government's allegedly negligent conduct predated and was not part of the LPV, while in the Levee cases the government's allegedly negligent conduct was part of the LPV.

A different result is also required here than in the Levee cases for the additional reason that the United States has repeatedly admitted that the MR-GO – unlike the 17th Street, Orleans Avenue, and London Avenue canals – was never incorporated into the LPV.  In the recent Levee decision, this Court found that "the 17th Street Canal was incorporated into the LPV."  Doc. 10984 at 37.  By contrast, the United States has judicially admitted, as a fact, that the MR-GO was not built as, was not absorbed into, and has never become a flood control project.  In response to LNA's Request for Admission No. 1, which asked the United States to "Admit that

the MR-GO is not a flood control project," the United States responded "Admitted." Exhibit A

hereto. Likewise, in prior briefing to this Court, the United States has admitted:

- "The parties agree that the MRGO was *not* a flood control project and was *not* absorbed into the LPVHPP."

- "The United States does not and has not at any time contended that the MRGO became a flood control project either in whole or in part. The character of the MRGO project remained unchanged from its inception until Hurricane Katrina."

- The United States "accepts the claim that MR-GO was a navigation project. … [T]he United States does not contend that the MR-GO has flood control features, nor does the United States contend that MR-GO ever became anything other than what it always was: a navigation project" (quotations omitted).

- "[I]t is undisputed that the MRGO is and always was a navigable water-way and is undisputed that the MRGO did not become a 'flood control facility' …."

Doc. 5853-3 at 4, 8, 9, 10. See also Plaintiffs' Undisputed Facts for Summary Adjudication of

Section 702c Immunity, Facts 15-23 (Doc. 10337-8). This provides yet one more reason why

§ 702c cannot under any theory be applied to bar the claims of the *Robinson* plaintiffs, and the

essentially identical claims of LNA, against the United States.[7]

---

[7] Moreover, as set forth in plaintiffs' motion papers and in their opposition to the government's motion, there is extensive record evidence that much of the water in question came from places along the MR-GO where no levees had been built.

## CONCLUSION

The Court should grant plaintiffs' Motion for Summary Adjudication and deny the

United States' Motion to Dismiss or, in the Alternative, for Summary Judgment.

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
Parker Harrison (#27538)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com
Harrison@chaffe.com

/s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone: (504) 598-2715

Attorneys for Lafarge North America Inc.

February 7, 2008

# Exhibit A

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: ALL BARGE | § | |
| | § | |
| _____ | § | |

## UNITED STATES' RESPONSES TO LAFARGE NORTH AMERICA INC.'s
## REQUESTS FOR ADMISSION

Pursuant to Federal Rules of Civil Procedure 26 and 36 and Case Management and Scheduling Order No. 5 ("CMO 5"), as amended by R.D. 9293, Defendants United States of America and the United States Army Corps of Engineers (collectively herein, the "United States"[1] or "the Corps"), through undersigned counsel, hereby provide Responses to Plaintiff, Cross-Claimant, and Third-party Plaintiff Lafarge North America Inc.'s Requests for Admission (RFAs), as set forth below and with the documents references herein.  The Responses relate only to the civil actions to which the United States is a named defendant, cross-defendant, or third-party defendant.  In addition, these Responses are made on behalf of the United States, and not on behalf of any other Defendants.

---

[1]The United States Army Corps of Engineers cannot be sued *eo nomine* under the Federal Tort Claims Act.  *See Galvin v. Occupational Safety & Health Administration*, 860 F.2d 181, 183 (5th Cir. 1988).

The United States hereby provides its Responses to Plaintiff Lafarge North America Inc.'s ("LNA") RFAs, as set forth below.

REQUEST FOR ADMISSION 1:  Admit that the MR-GO is not a flood control project.

RESPONSE to RFA 1:  Admitted.

REQUEST FOR ADMISSION 2:  Admit that You designed and constructed flood control structures in southeast Louisiana relative to a geodetic (or land-based) vertical datum that was assumed to be equivalent to, or constantly offset from, the water level datum.

RESPONSE to RFA 2:  Objections.  The United States objects to the RFA because the terms/phrases "flood control structures," "a geodetic (or land-based) vertical datum," "equivalent to, or constantly offset from," and "water level datum" are vague and ambiguous and "assumed" is vague, ambiguous, and argumentative.  The United States objects to the RFA because it references "flood control structures in southeast Louisiana" without limitation; the term encompasses areas and structures that have no relevance to the Barge litigation.  The United States objects to the RFA because it makes a general statement about a complex concept and projects designed over many years and under changing circumstances without referencing a specific project or time-frame, rendering the entire RFA vague and ambiguous.

Notwithstanding and without waiving these objections, RFA 2 is admitted.

REQUEST FOR ADMISSION 3:  Admit that You, during and after the design and construction of flood control structures in southeast Louisiana, either failed to use the correct datum or did not

2