## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE:  KATRINA CANAL BREACHES** | * | |
| **CONSOLIDATED LITIGATION** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 05-4182** |
| **PERTAINS TO:  BARGE** | * | **and consolidated cases** |
| | * | |
| | * | **SECTION "K"  (2)** |
| *Boutte v. Lafarge* | **05-5531** | * |
| *Mumford v. Ingram* | **05-5724** | * |
| *Lagarde v. Lafarge* | **06-5342** | * |
| *Perry v. Ingram* | **06-6299** | * | **JUDGE** |
| *Benoit v. Lafarge* | **06-7516** | * | **STANWOOD R. DUVAL, JR.** |
| *Parfait Family v. USA* | **07-3500** | * |
| *Lafarge v. USA* | **07-5178** | * | **MAG. JOSEPH C. WILKINSON, JR.** |
| | * | |

# PLAINTIFFS' OPPOSITION TO LAFARGE NORTH AMERICA INC.'S MOTION TO QUASH SUBPOENA DUCES TECUM SERVED ON CENTANNI INVESTIGATIVE AGENCY

### Table of Contents

A.  Summary of Argument ................................................................................ 2

B.  LNA Has Waived Work-Product Privilege for Witness Statements, Recordings of Interviews, and Physical Evidence ........................................................... 5

C.  Plaintiffs Have a Compelling Need for the Physical Evidence Provided to Centanni by Witnesses ................................................................................... 6

D.  Plaintiffs Have a Compelling Need for Documents and Things Showing the Contemporaneous Recollections of Witnesses ........................................... 6

E.  The Work-Product Privilege Does Not Shield Facts from Discovery ................ 10

F.  LNA's Procedural Objections Are Meritless ................................................ 12

G.  LNA's Specific Objections Are Meritless ................................................... 13

   1.  Witness Interviews .............................................................................. 13

   2.  Instructions to Centanni and Methodology of the Interviews ..................... 13

   3.  Compilations from External Sources ...................................................... 13

   4.  Identities of Witnesses ......................................................................... 14

   5.  Deposition Topic 6 (misnumbered as a second 4) ................................... 14

H.   Centanni Was Subject to the Louisana Rules of Professional Conduct .............................. 14

I.    LNA's Counsel and Centanni Knew Centanni Was Communicating with Persons of
      Adverse Interest .................................................................................................................. 15

J.    Louisiana RPC 4.3 Required Centanni to Make Full Disclosures to Potential Interviewees15

      1.    The Rule Required Disclosures in Order to Safeguard the Interests of Persons of Adverse
            Interest (the Proposed Class) .................................................................................... 15

      2.    Protective Disclosures Were Particularly Necessary in the Circumstances of This Case  18

K.    Centanni's Sign Did Not Comply with RPC 4.3, and LNA and Centanni Are Trying to
      Block Access to All Other Evidence on the Subject ........................................................... 20

L.    Disclosure of the Fruits of the Poisonous Tree is An Appropriate Initial Remedy for
      Violations of the RPC ......................................................................................................... 21

M.    Conclusion .......................................................................................................................... 22

### A.    <u>Summary of Argument</u>

Plaintiffs' oppose the motion of defendant LaFarge North America ("LNA") to quash the Rule

45 subpoena duces tecum served on the Centanni Investigative Agency ("Centanni") on several

independent grounds:

First, it is undisputed that Centanni sought irreplaceable physical evidence, such as

photographs and videos, in the possession of putative class members, and that defendant and Centanni

are trying to hold onto any such irreplaceable physical evidence obtained, without allowing plaintiffs

access to such irreplaceable physical evidence.  Plaintiffs have a compelling need for this physical

evidence.  See the discussion in Part B at pp. 5-6 below.

Second, LNA has waived work-product privilege and Rule 12(b)(3) immunity from discovery

as to the witness interviews and physical evidence provided to it by class members at its request, by

failing to include such information clearly in its privilege log.  See the discussion in Part C at p. 6

below.

Third, it cannot reasonably be disputed that Centanni obtained information from putative class

members in the immediate aftermath of a horrific tragedy, at a time when their memories would have

been two and a half years fresher than they would be at the present, and are trying to conceal those

fresh recollections.  Plaintiffs have a compelling need for this information.  See the discussion in Part D at pp. 6-10 below.

Fourth, LNA and Centanni confuse the work-product privilege as enabling them to shield facts from discovery.  Plaintiffs have not attempted to shield facts from discovery based on the work-product privilege, have amended their Responses to the Requests for Production identified by LNA, and are reviewing their other responses in which work-product privilege was claimed.  See the discussion in Part E at pp. 10-12 below.

Fifth, LNA's procedural objections to the Centanni subpoena are without merit.  See the discussion in Part F at pp. 12-13 below.

Sixth, plaintiffs have limited some of the deposition topics and document requests.  With respect to the remainder, LNA's specific objections are without merit.  See the discussion in Part G at pp. 13-14 below.

Seventh, it is undisputed that Centanni's activities were at the direction of defense counsel, and Centanni's actions are therefore subject to the Louisiana Rules of Professional Conduct ("RPC").  See the discussion in Part H at pp. 14-15 below.

Eighth, LNA, its counsel, and Centanni must have known they were communicating with persons of adverse interest.  See the discussion in Part I at p. 15 below.

Ninth, RPC 4.3 bars counsel from contacting persons with interests adverse to counsel's client unless clear disclosures are made.  See the discussion in Part J(1) at pp. 16-19 below.  In the situation at bar, Centanni was required to inform putative class members that it was acting on behalf of counsel for LNA, that LNA's interests were adverse to theirs, and that they were under no obligation to speak with Centanni or to turn their irreplaceable physical evidence over to it.  See the discussion in Part

J(2) at pp. 19-21 below.

Tenth, it is undisputed that Centanni's sign did not make the required disclosures.  It is undisputed that there is no other evidence of record on this motion that Centanni ever made such disclosures.  It is undisputed that LNA refused to provide discovery on the instructions it gave Centanni, thus barring plaintiffs from one source of information as to whether Centanni was in effect instructed to violate RPC 4.3.  It is undisputed that LNA and Centanni refuse to provide discovery on the contents of their communications with putative class members, thus barring plaintiffs from information as to whether Centanni, whatever its instructions, actually violated RPC 4.3.  It should be undisputed that the only other source of information as to a violation of RPC 4.3 is the putative class members who were interviewed by Centanni.  Finally, it is undisputed that LNA has refused to provide the names or contact information for these putative class members until three days after this Memorandum in Opposition is due, making it impossible for plaintiffs to interview the putative class members in time for this Memorandum in Opposition.  See the discussion in Part K at p. 21 below.

Eleventh, disclosure of the fruits of the poisonous tree is an appropriate beginning remedy for information obtained in violation of the RPC.  Barring defendants from making any use of the information obtained may also be an appropriate remedy, but that can await the filing of an appropriate Motion and need not be decided on LNA's Motion to Quash.  See the discussion in Part L at p. 22 below.

For purposes of this Motion, plaintiffs seek only the denial of LNA's Motion to Quash.  When the facts are more fully developed, plaintiffs reserve the right to seek appropriate further sanctions and corrective measures.

**B.**     **LNA Has Waived Work-Product Privilege for Witness Statements, Recordings of Interviews, and Physical Evidence**

The parties have previously agreed to defer the provision of Privilege Logs, with plaintiffs to submit a Privilege Log after receiving LNA's Privilege Log.  Plaintiffs are preparing theirs now.

LNA's Privilege Log is too cursory to know the documents and things for which it seeks protection.  It purports to list categories of documents for which protection is sought, but does not refer to written witness statements whether signed or unsigned, does not refer to recordings of witness interviews, does not refer to video or film recordings of witness interviews, and does not refer to physical evidence such as photographs and videos that interviewees may have turned over to it in response to the request on Centanni's sign.

LNA has explicitly claimed work-product privilege only for documents prepared by Centanni, and has included memorializations of interviews only within that topic.  Paragraph 11(b) of the Centanni affidavit refers to "Present mental recollections, written or recorded memorializations, and reports of interviews of witnesses by Centanni Investigative Agency's investigators," but does not explicitly say whose present mental recollections, whose written memorializations, whose recorded memorializations, and whose reports exist.

It would have been quite easy for LNA to represent that there were no signed or unsigned, adopted or unadopted written statements of witnesses, that there were no transcribed or taped or filmed or videographed records of interviews with witnesses, and that there was no physical evidence turned over.  Its failure to do so suggests strongly that such documents exist.  *Interstate Circuit v. United States*, 306 U.S. 208, 226 (1939), summed up the general inference to be drawn in this type of situation: "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse. . . . Silence then becomes evidence of the most convincing

5

character." The principle is widely recognized. JAMES H. CHADBOURN, II WIGMORE ON EVIDENCE (Little, Brown & Co., Boston, 1979), § 285 at 192: "The nonproduction of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its *tenor is unfavorable to the party's cause*." (Emphasis in original).

To the extent such documents exist, LNA has waived privilege as to the most important materials at issue on its Motion.

### C.   Plaintiffs Have a Compelling Need for the Physical Evidence Provided to Centanni by Witnesses

Centanni requested potential interviewees to turn over irreplaceable physical evidence.[1]

To the extent that Centanni took possession of irreplaceable physical evidence such as photographs, videotapes, journals, or stopped clocks from interviewees, that information may now exist only in Centanni's or counsel's hands. Plaintiffs have a right to such evidence, in order to have a fair opportunity to prosecute their claims.

### D.   Plaintiffs Have a Compelling Need for Documents and Things Showing the Contemporaneous Recollections of Witnesses

Barge PSLC plaintiffs' subpoena to Centanni specified the types of documents and things to be produced. Item 2 of this list requested "all statements, factual accounts, recordings, video, affidavits and other memorialization, documents and things taken or received from named plaintiffs, persons represented by counsel, and/or putative class members in this suit in the Barge category of cases." To the extent that the list to be provided by LNA within the next three days discloses that any named plaintiffs in any of the Barge cases were interviewed, or that any clients who are not named plaintiffs were interviewed, Rule 26(b)(3)(C), Fed. R. Civ. Pro., provides an absolute right to their

---

[1] The signs posted by Centanni in the Lower Ninth Ward requested photographs and videos of

statements.  LNA's papers do not reflect this right.  If the class is certified, class members will also have an absolute right to these statements.

Any statements obtained by Centanni were two and a half years closer to the events giving rise to this case, when the memories of witnesses would have been sharper.

Given the subsequent dispersion of the former residents of the Lower Ninth Ward, plaintiffs may not now be able to locate a substantial number of the persons interviewed by Centanni.  The texts of the statements provided by interviewees may identify family members or contain other information supplementing the contact information LNA has promised to provide.  The texts may thus help to locate at least some of the interviewees who could not otherwise be found.

In a case involving the former "good cause" standard for the production of documents and things under Rule 34, Fed. R. Civ. Pro., the former Fifth Circuit held that contemporaneous statements of witnesses were of such great value that a ten-month lapse in time made current depositions an ineffective substitute for the contemporaneous statements taken by defendant's claims adjuster.

> In this case, it is doubtful that appellees could presently obtain a full and accurate disclosure of the facts through depositions of the train crew. In the first place, ten months elapsed before the suit was filed, and almost another year intervened before the interrogatories were answered and the motion to produce was entertained by the court. Statements taken at that point are likely to be unreliable due to the lapse of time. For this reason, statements taken from the witnesses shortly after the accident constitute 'unique catalysts in the search for truth,' . . . in that they provide an immediate impression of the facts that cannot be recreated or duplicated by a deposition that relies upon memory, and many courts have held that the mere lapse of time in itself is enough to justify production of the statements.

*Southern Ry. Co. v. Lanham*, 403 F.2d 119, 127-28 (Former 5th Cir. 1968) (citations and footnotes omitted).  The court recognized that good cause for purposes of the former Rule 34 need not be as

---

the breaking of the levee.  See the Affidavit of Richard Seymour, ¶¶ 2-4, and Attachment B thereto.

compelling as the justification needed to overcome the work-product privilege, *id.* at 126-27, but

noted at 128 n.8 that there was some authority that the lapse in time might be sufficient to overcome

the work-product privilege.

*Lanham* is an important case under the current Rule 26(b)(3), not just the former Rule 34,

because the Advisory Committee on the Federal Rules, in discussing the 1970 amendment creating

Rule 26(b)(3), expressly relied on *Lanham* as striking the proper balance in overcoming the protection

for trial preparation materials:

> Elimination of a "good cause" requirement from Rule 34 and the establishment of a requirement of a special showing in this subdivision will eliminate the confusion caused by having two verbally distinct requirements of justification that the courts have been unable to distinguish clearly. Moreover, the language of the subdivision suggests the factors which the courts should consider in determining whether the requisite showing has been made. The importance of the materials sought to the party seeking them in preparation of his case and the difficulty he will have obtaining them by other means are factors noted in the *Hickman* case. The courts should also consider the likelihood that the party, even if he obtains the information by independent means, will not have the substantial equivalent of the documents the production of which he seeks.

> Consideration of these factors may well lead the court to distinguish between witness statements taken by an investigator, on the one hand, and other parts of the investigative file, on the other. The court in *Southern Ry. v. Lanham*, 403 F.2d 119 (5th Cir. 1968), while it naturally addressed itself to the "good cause" requirements of Rule 34, set forth as controlling considerations the factors contained in the language of this subdivision. The analysis of the court suggests circumstances under which witness statements will be discoverable. The witness may have given a fresh and contemporaneous account in a written statement while he is available to the party seeking discovery only a substantial time thereafter. *Lanham*, *supra* at 127-128 . . . . Or he may be reluctant or hostile. *Lanham*, *supra* at 128-129 . . . . Or he may have a lapse of memory. . . . Or he may probably be deviating from his prior statement. . . . On the other hand, a much stronger showing is needed to obtain evaluative materials in an investigator's reports. *Lanham*, *supra* at 131-133 . . . .

(Citations omitted.)

Plaintiffs are aware that this Court ruled in *American River Transp. Co. v. M/V BOW LION*,

2005 WL 144777, 60 Fed.R.Serv.3d 826 (E.D. La. Jan. 19, 2005) (No. CIV.A. 03-1306), that

8

contemporaneous witness statements taken by plaintiffs' counsel were not discoverable because of Rule 26(b)(3) and/or work-product privilege, and that this Court reached a similar ruling as to defendant's investigative reports in *Cristofani v. Board of Adm'rs of the Tulane Educational Fund*, 1996 WL 715524 (E.D. La. Dec. 11, 1996) (No. CIV.A. 96-630).  Plaintiffs respectfully submit that the notes of the Advisory Committee do not seem to have been brought to the Court's attention in those matters.  Moreover, this case presents several distinguishing circumstances: the statements here seem to have been obtained in violation of Louisiana RPC 4.3 as shown below; improperly obtained statements are not entitled to any shield; the persons responding to the improper signs may well have been lulled into failing to provide contemporaneous information to others, such as Barge P.S.L.C. counsel; LNA has not provided discovery of the facts in these statements or other materials and is attempting to secrete such facts; the statements obtained may make it easier to determine if the witnesses handed over to Centanni the irreplaceable physical evidence requested by its signs; the subsequent wide dispersion of the survivors of the flooding may well make it much more difficult for Barge PSLC counsel to locate and interview such witnesses based on their then contact information alone; the contemporaneous recollections of witnesses may be important sources of information for experts to consider; and the speed with which the information is obtained is important in light of the deadlines for expert reports.  The length of the lapse in time was not stated in *American River Transp. Co.*, and was apparently a year and a half in *Cristofani*, but the lapse of time here has been two and a half years.

   *Matter of Suard Barge Service, Inc.*, 1997 WL 348099 (E.D. La. June 23, 1997) (No. CIV. A. 96-3185), and *Smith v. Diamond Offshore Drilling, Inc.*, 168 F.R.D. 582, 584-85 (S.D. Tex. 1996), have taken the same approach to *Lanham* that plaintiffs suggest herein.  *Contra*: *Cade v. Monica Lee*

*Tugs, Inc.*, 2004 WL 2381521 (E.D. La. Oct. 22, 2004) (No. CIV.A. 03-2380).  Plaintiff's counsel in *Cade* had requested contemporaneous statements of only three crew members, whose depositions plaintiff had not yet bothered to schedule.  This case presents a far more compelling constellation of factors justifying the discovery.

**E.     The Work-Product Privilege Does Not Shield Facts from Discovery**

Plaintiff has unsuccessfully sought discovery from LNA of facts relevant to this case, and LNA refused to comply, claiming work-product privilege and immunity under Rule 26(b)(3) as to the facts themselves.  See the accompanying Affidavit of Richard T. Seymour, ¶¶ 5-12.  LNA has recently supplemented its responses to Plaintiffs' Requests for Admissions and provided a very few facts from these statements.  See the accompanying Affidavit of Richard T. Seymour, ¶ 13, and Attachment F hereto.  All other facts contained in these witness interviews remain hidden.

It is black-letter law that facts are not shielded from discovery under the work-product privilege as codified in Rule 26(b)(3).  *Hickman v. Taylor*, 329 U.S. 495, 508-09 (1947), denied petitioner's attempt to obtain the witness statements gather by respondent's counsel, but stated that the facts in those statements had to be disclosed in response to interrogatories: "Interrogatories were directed toward all the events prior to, during and subsequent to the sinking of the tug. Full and honest answers to such broad inquiries would necessarily have included all pertinent information gleaned by Fortenbaugh through his interviews with the witnesses."  The Court in *Hickman* stated that there was no contention that the answers there were incomplete.  *Id.* at 509.  Similarly, Profs. Wright and Miller state:

> Rule 26(b)(3) provides protection only for "documents and tangible things."  There is a distinction, noted in the Hickman case itself, between documents that a party has assembled and the facts it has learned from those documents.  Before 1970, the courts consistently held that the work product concept furnished no shield against discovery, by interrogatories or by

10

deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery.  This has continued to be true under Rule 26(b)(3), although courts have looked with mounting suspicion on efforts to depose opposing counsel.

8 Wright & Miller, Federal Practice and Procedure § 2023 (footnotes omitted).

Here, LNA has sought to bar disclosure of virtually all facts obtained in its interviews, and has thereby opened the door to the discovery in question.

In the situation at bar, plaintiffs could proceed by taking Centanni's deposition for its recollection of the facts stated in contemporaneous witness interviews, and seek further relief from this Court—the witness statements and records of the contemporaneous witness interviews—if Centanni was unable to recall the specific facts revealed by witnesses two and a half years ago. However, LNA is opposing such a deposition as thoroughly as it opposes disclosure of the witness statements.  Further, LNA has already represented to this Court that there will be gaps in Centanni's recollections.  LNA's Memorandum states at pp. 9-10 that "Centanni can only be deposed on the present memories of those question and answers that the investigator retained, colored by those facts the investigator found important or worth noting."

LNA has moved for a protective order that would block both the deposition and the disclosure of witness statements, after having failed to reveal the underlying facts.  This situation is outside the protection of *Hickman* or of the work-product rule as codified in Rule 26(b)(3).  *Cf. Mack v. GlobalSantafe Drilling Co.*, 2006 WL 980746 (E.D. La. April 11, 2006) (No. CIV.A. 04-3461).

In light of LNA's opposition to the deposition and assurances that there will be gaps in Centanni's designee's memory, there seems little point in requiring a two-step process to obtain the witness statements and the records of contemporaneous witness interviews.

Under these circumstances, the least intrusive and most expeditious approach would be to provide the witness statements and physical evidence at the outset, without waiting for the delay of a deposition the parties already know will be incomplete, and to allow the deposition on the topics not resolved by production of the witness statements and records, as limited below.

LNA seeks to excuse its refusals to provide discovery by stating that plaintiffs have also invoked the work-product privilege and refused to produce documents and things in reliance thereon. LNA Memorandum at pp. 4-5. Even if that were correct, it would not excuse LNA's failures to provide discovery. The assertion and its implication are not correct, however, because plaintiffs have withheld only documents protected by the attorney-client privilege and have provided to defendants all other documents responsive to its requests. See plaintiffs' February 12, 2008, Supplementation of their Responses to the Barge Entities' Requests for Production, Attachment E hereto, discussed in the Affidavit of Richard Seymour.

### F.    LNA's Procedural Objections Are Meritless

LNA objects to the subpoena to Centanni on the ground that the only means of obtaining discovery as to Centanni's actions was by discovery directed to LNA, and that the deadline for doing so had expired. LNA Memorandum at pp. 15-16. However, plaintiffs did attempt to obtain factual information from LNA by serving Rule 33 interrogatories and Rule 34 requests for production, and LNA refused to provide the information on the same grounds raised by the merits of its Motion to Quash. Its failure to reveal the facts then estops it from saying now that the Rule 33 and Rule 34 discovery requests were the only proper avenue for this discovery. In the circumstances of this case, it does not matter whether the Court's ruling is on LNA's present Motion to Quash or a future Barge PSLC Motion to Compel. The matter is ripe and ready for adjudication on the merits.

12

LNA has also pointed out that the original Subpoena was served on Centanni without a witness and mileage fee.  This has now been corrected.

**G.      LNA's Specific Objections Are Meritless**

**1.      Witness Interviews**

LNA objects to Deposition Topic 5 and Record Request 2 with respect to witness interviews.  LNA Memorandum at pp. 9-12.  This topic is adequately discussed above.

**2.      Instructions to Centanni and Methodology of the Interviews**

LNA objects to Deposition Topics 2 and 3 with respect to counsel's instruction to Centanni and the methodology of the interviews.  LNA Memorandum at pp. 12-13.  Plaintiffs have adequately explained above that this information is crucial to an understanding of whether Louisiana RPC 4.3 was violated in this case, who bears responsibility for any violation, and what remedies and sanctions additional to full disclosure should be sought.

Unless there was a violation, plaintiffs will limit their request to statements, instructions, practices, and reports as to what information should be given or was in fact given to potential or actual witnesses, what statements should be made to potential or actual witnesses, and any instructions, methodology, or reports with respect to seeking or obtaining from potential or actual witnesses, or retaining, any physical evidence such as photographs, film, or video.  If these materials or interviews with the witnesses show that there was a violation, plaintiffs expect to seek further relief from this Court.

**3.      Compilations from External Sources**

LNA objects to Deposition Topic 4 with respect to Centanni's compilations of information on potential class members from third-party sources.  LNA Memorandum at pp. 13-14.

Plaintiffs' discovery requests included information as to potential class members.  LNA's

13

refusal to provide factual information from its compilations has left the Barge PSLC plaintiffs with no alternative but to seek information about the compilations themselves.

If LNA will answer plaintiffs' Interrogatory No. 20 by providing responsive factual information from the compilations, plaintiffs will withdraw Deposition Topic 4.

### 4. Identities of Witnesses

In light of LNA's representation that it will provide the names and contact information of witnesses, plaintiffs withdraw Deposition Topic 1 and Record Request 1.

### 5. Deposition Topic 6 (misnumbered as a second 4)

Plaintiffs withdraw Deposition Topic 6, misnumbered as a second 4.

### H. Centanni Was Subject to the Louisana Rules of Professional Conduct

Louisiana RPC 5.3 placed nondelegable duties on counsel for LNA, to ensure that any assistant employed by counsel conform to the same ethical standards as counsel:

RULE 5.3. RESPONSIBILITIES REGARDING NONLAWYER ASSISTANTS

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority

14

over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

There is no exception for private investigators.  For purposes of the RPC, Centanni's actions were the actions of defense counsel.  *Cf. In re Tolchinsky*, 740 So.2d 109 (La. 1999) (consensual disbarment approved for attorney who failed to supervise activities of former employee, who acted unethically).

## I.    LNA's Counsel and Centanni Knew Centanni Was Communicating with Persons of Adverse Interest

LNA admits that Centanni's contacts with witnesses in the Lower Ninth Ward were all either after the filing of this class action or in the immediate anticipation of such litigation.[2]

Defendant, its counsel, and Centanni must therefore all have been aware that they were communicating with persons with interests adverse to those of LNA, because the entire purpose of Centanni' activities was "the investigation and defense of claims against the company relating to the Barge ING 4727."[3]

Centanni requested those persons of adverse interest to turn over irreplaceable physical evidence.[4]

## J.    Louisiana RPC 4.3 Required Centanni to Make Full Disclosures to Potential Interviewees

### 1.    The Rule Required Disclosures in Order to Safeguard the Interests of Persons of Adverse Interest (the Proposed Class)

Louisiana RPC 4.3 states:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer

---

[2] January 31, 2008, Declaration of Wayne R. Centanni, ¶ 3, filed with defendant LNA's February 4, 2008, Motion to Quash Subpoena Duces Tecum Served on Centanni Investigative Agency.

[3] *Id.*

[4] The signs posted by Centanni in the Lower Ninth Ward requested photographs and videos of the breaking of the levee.  See the Affidavit of Richard Seymour, ¶¶ 2-4.

15

shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

The Supreme Court of Louisiana has construed RPC 4.3 as requiring lawyers to identify themselves as lawyers. *Louisiana State Bar Ass'n v. Harrington*, 585 So.2d 514, 517 (La. 1990), stated: "In addition, Harrington did not carefully explain to James his role in the matter; he did not even identify himself by name or indicate that he is a lawyer until he had asked James several questions about the purchase of the home and the carpet. His actions are, therefore, in violation of Rule 4.3 as well."  Similarly, *First Nat. Bank of St. Bernard v. Assavedo*, 764 So.2d 162, 163 (La. App. 4th Cir. 2000), stated: "A lawyer shall assume that an unrepresented person does not understand the lawyer's role in a matter and the lawyer shall carefully explain to the unrepresented person the lawyer's role in the matter."

Rule 4.3 or its equivalents in other states are frequently construed as requiring counsel dealing with an unrepresented person of adverse interest to identify himself or herself as counsel for a client adverse to them, and sometimes to state that the person in question has no obligation to answer questions.  *Norton v. Sperling Law Office, P.C.*, 437 F. Supp. 2d 398, 404 (D. Md. 2006), stated that "under the Pennsylvania Rules of Professional Conduct an attorney who contacts an unrepresented person must disclose her relationship with her client and explain that the client has interests contrary to that person. PA RULES OF PROF'L CONDUCT R. 4.3 & cmt 1.  It is highly doubtful that Evans would have discussed *anything* with a Lebowitz attorney had he made such a call and properly explained that he had been retained to sue her for hundreds of thousands of dollars."  (Emphasis in original.)

*Paulson v. Plainfield Trucking, Inc.*, 210 F.R.D. 654, 659 (D. Minn. 2002), allowed plaintiff

16

and plaintiff's investigator to conduct *ex parte* interviews of defendant's employees only under requirements of full disclosure, because of the requirements of Rule 4.3:

> In order to ensure the dictates and purpose of the Rule are carried out, we will impose certain limitations on Paulson's contacts with Jankowski and Plainfield's current or former employees. Thus, in conducting the proposed *ex parte* contacts, we direct the attorney or the investigator for Paulson to fully disclose his or her representative capacity to the employee; state the reason for seeking the interview as it concerns Paulson and Plainfield; and inform the employee of his or her right to refuse to be interviewed, and his or her right to have their own counsel present. See, *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.,* supra at 1157; *Cole v. Appalachian Power Co.,* supra at 980. "The attorney or investigator shall not, under any circumstances, seek to obtain attorney-client or work product information from the employee." *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.,* supra at 1157; see also, *Cole v. Appalachian Power Co.,* supra at 980. Failure to abide by these directions will result in the imposition of appropriate sanctions.

*Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147 (D. S.D. 2001), *aff'd*, 347 F.3d 693 (8th Cir. 2003), held that Rule 4.3 applies to investigators employed by defense counsel who secretly tape-recorded conversations with plaintiff's employees. It considered such employees to be of adverse interest, and held that there was a duty of disclosure: "The attorney or investigator shall: (1) fully disclose his or her representative capacity to the employee, (2) state the reason for seeking the interview as it concerns the attorney's client and the employer, and (3) inform the individual of his or her right to refuse to be interviewed. The attorney or investigator shall not, under any circumstances, seek to obtain attorney-client or work product information from the employee." (Citation omitted.)[5]

*Cole v. Appalachian Power Co.*, 903 F. Supp. 975 (S.D. W.Va. 1995), stated that plaintiff's counsel must make numerous disclosures before conducting ex parte interviews of defendant's

---

[5] *Weider Sports Equipment Co., Ltd. v. Fitness First, Inc.*, 912 F. Supp. 502, 511-12 (D. Utah 1996), held that the rule may not apply to private investigators or "testers" because the public is not likely to think them disinterested, or to trust them, compared to the trust and assumptions of disinterest the public accords to lawyers. Here, however, it is reasonable to believe that the public

employees:

> When plaintiff's attorney attempts to conduct *ex parte* interviews with the named employees, Rule 4.3 of the Code controls. The attorney or her investigator shall (1) fully disclose their representative capacity to the employee, (2) state the reason for seeking the interview as it concerns the attorney's client and the employer, (3) inform the individual of his or her right to refuse to be interviewed, (4) inform the person that he or she has the right to have their own counsel present, and (5) not, under any circumstances, seek to obtain attorney-client or work product information from the employee. *McCallum v. CSX Transportation, Inc.*, 149 F.R.D. 104, 112 (M.D. N.C. 1993).

*Brown v. St. Joseph County*, 148 F.R.D. 246, 254 (N.D. Ind. 1993), construed Rule 4.3 as

requiring disclosure: "Under this Rule, the lawyer must make clear to the unrepresented employee the

lawyer's role in the case, including the nature of the case, the identity of the lawyer's client, and the

fact that the person's former or current employer is an adverse party."

*In re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 556, 562, 35 Fed. R. Evid. Serv.

207 (N.D. Ga. 1992), stated:

> The Court will require, however, that plaintiffs comply with Model Rule 4.3 as it relates to a lawyer's dealings with unrepresented persons. Accordingly, prior to making any *ex parte* contact with former employees of the defendant airlines, plaintiffs must deliver to the former employee a letter informing her of the nature of the lawyer's role in the matter giving occasion for the contact, including the identity of the lawyer's client and the fact that the witness's former employer is an adverse party. Counsel must also inform the former employee that she has no obligation to talk with plaintiffs' counsel. The Court will not require, as requested by defendants, that the letter include the name, address, and telephone number of the relevant corporate defendant's counsel.

### 2.    <u>Protective Disclosures Were Particularly Necessary in the Circumstances of This Case</u>

Many of the residents of the Lower Ninth Ward had limited education.  The 2000 Census

reported the following educational attainments by Census tract in the Lower Ninth Ward of New

---

thought lawyers or an official investigative agency had placed the types of signs Centanni posted.

Orleans, in the class area in which Centanni was active:[6]

| Description of Sample: | | Percentage of the Population 25 or More Years Old Who Were High-School Graduates | | Percentage of the Population 25 or More Years Old Who Had Completed Four or More Years of College |
|---|---|---|---|---|
| Census Table: | | (QT-P20) | | (QT-P20) |
| A. Orleans Parish Tracts | | | | |
| 7.01 | | 63.0% | | 7.0% |
| 7.02 | | 62.0% | | 8.4% |
| 8 | | 62.4% | | 9.7% |
| 9.01 | | 53.2% | | 7.8% |
| 9.02 | | 57.0% | | 6.5% |
| 9.03 | | 59.2% | | 6.3% |
| 9.04 | | 67.3% | | 6.3% |

In most of the area in which Centanni was active, more than a third of the population aged 25 and up lacked a high school degree.  The danger that a witness may be misled into trusting a lawyer or lawyer's investigator would be increased by lower educational levels in the area.

This Court can also take judicial notice that the survivors of the Lower Ninth Ward who lived through the flooding and its aftermath likely endured a trauma greater than that of the ordinary victim of a physical injury.  Yet even ordinary victims are assumed to need time to recover some equanimity before the Louisiana ROP allows lawyers to approach them for even a non-hostile activity such as

---

[6]  Source:  U.S. Bureau of the Census, Table QT-P20, "Educational Attainment by Sex: 2000: 2000 Data Set: Census 2000 Summary File 4 (SF 4) - Sample Data," downloaded January 16, 2008 and tabulated by Richard Seymour, undersigned.

offering their legal services.[7]

The American Bar Association's Center for Professional Responsibility publishes THOMAS D. MORGAN, LAWYER LAW: COMPARING THE ABA MODEL RULES OF PROFESSIONAL CONDUCT WITH THE ALI RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (ABA, 2005).

> This Section states two general requirements. First, the lawyer must not mislead the unrepresented nonclient to that person's detriment concerning the identity and interests of the person whom the lawyer represents.  For example, <u>the lawyer may not falsely state or imply</u> that the lawyer represents no one, that the lawyer is disinterestedly protecting the interests of both the client and the unrepresented nonclient, or <u>that the nonclient will suffer no harm by speaking freely</u>.  Such a false statement could disarm the unrepresented nonclient and result in unwarranted advantage to the lawyer's client.  Second, <u>the lawyer is subject to a duty of disclosure when the lawyer knows or reasonably should know that the unrepresented nonclient misunderstands the lawyer's role in the matter and when failure to correct the misunderstanding would prejudice the nonclient or the nonclient's principal</u>.

> Application of the rule of this Section depends significantly on the lawyer's role, the status and role of the unrepresented nonclient, and the context.  For example, a lawyer for an employee dealing with an official of an employer in a dispute over compensation may typically assume that the official will understand the lawyer's role once it is stated that the lawyer represents the employee.  A lawyer dealing with a sophisticated business person will have less need for caution <u>than when dealing with an unsophisticated nonclient</u>.

*Id.* at 651 (emphases supplied).

When these principles are applied to the members of the proposed class, who lived through the flooding and its aftermath, it is clear that RPC 4.3 required full disclosure of adverse interests before these persons of adverse interest were interviewed.

### K.  Centanni's Sign Did Not Comply with RPC 4.3, and LNA and Centanni Are Trying to Block Access to All Other Evidence on the Subject

Centanni's sign looks for all intents and purposes as if it had been placed there by a government or other impartial agency, or by attorneys disinterestedly looking into the causes of the

---

[7] *Cf.* Louisiana RPC 7.3(b)(iii)(C), barring lawyers' communications until more than thirty days after an accident or disaster.

flood.  It did not provide any type of disclosure or caution to the persons of adverse interest to whom it was directed.  Mr. Centanni's Affidavit, and LNA's objections and motion papers, are equally silent.

Item 2 of plaintiff's subpoena seeks information on "the nature, subject, scope and timing of instructions to Centanni Investigative Agency relative any named plaintiffs, persons represented by counsel, and/or putative class members in this suit."  The instructions to Centanni would show whether LNA and its counsel ordered Centanni to provide the disclosures required by RPC 4.3.

LNA represented to plaintiffs and the Court on January 31, 2008, that it will provide contact information for the persons it interviewed, but will do so "no later than February 15, 2008, the date on which plaintiffs have represented they will supplement their document production."  That date is three days after LNA knew plaintiffs would have to file this Opposition.

In point of fact, plaintiffs have already supplemented their productions twice through today, and LNA has not provided its list and contact information through the time of this filing.[8]  Plaintiffs have thus not had a fair opportunity to interview the persons whom LNA interviewed and learn exactly what was said to them.

### L.   Disclosure of the Fruits of the Poisonous Tree is An Appropriate Initial Remedy for Violations of the RPC

LNA obtained its interviews in apparent violation of RPC 4.3.  If it had made the required disclosures, it is much less likely that survivors of the Lower Ninth Ward would have been willing to meet with it and to turn over irreplaceable physical evidence.  *Cf. Norton v. Sperling Law Office, P.C.*, 437 F. Supp. 2d 398, 404 (D. Md. 2006), discussed above.  It is only LNA's apparent violation

---

[8] LNA's Supplemental Response to Interrogatory No. 5, Exhibit 2 to LNA's Motion.  In point of fact, plaintiffs supplemented their responses to LNA's discovery requests on January 24 and

of RPC 4.3 that allowed it to come into possession of this evidence.

Moreover, violations of RPC 4.3 are dangerous precisely because they lull witnesses from coming forward a second time, and providing their information to counsel for the proposed class who are working in their interests. The interviewees may well think they've already brought their information to the attention of the proper authorities, never dreaming it is being held by their adversary and will potentially be called forth to do them maximum damage.

At a minimum, LNA cannot be allowed to hide information it obtained improperly. The information needs to be disclosed as the first step towards remedying what seems to have been a serious ethical violation.

When plaintiffs have reviewed the instructions provided to Centanni, interviewed the persons Centanni interviewed and have fully assessed the situation and the relative responsibility of Centanni and of LNA and its counsel for any violations, they reserve the right to move for sanctions additional to disclosure of the fruits of the violation. Disclosure of such fruits, however, is a necessary first step.

**M.** **Conclusion**

Plaintiffs have shown a compelling need for the information in question and for the irreplaceable physical evidence LNA asked witnesses to provide to it. The passage of two and a half years, the wide dispersal of the class after the flooding, the possibility that people have moved in the interim and might be unreachable without clues in their statements, and the apparent obtaining of this information in violation of ethical rules distinguish this case from others and make this discovery essential. Further, LNA's actions would have made witnesses and potential class members less likely to provide information to others, and any physical evidence they turned over to Centanni may be

February 12, 2008.

hidden forever without the disco very in question.  Finally, plaintiff's need for this discovery from

Centanni has been intensified by LNA's failure to provide requested discovery timely served on it,

and by LNA's almost-complete failure to produce discovery on the factual and physical information

obtained in its interviews.

      LNA's Motion should be denied.

                       Respectfully submitted,

                       /s/ Brian A. Gilbert
                       Brian A. Gilbert, Esq.
                       LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
                       821 Baronne Street
                       New Orleans, Louisiana 70113
                             Telephone: (504) 885-7700
                             Telephone: (504) 581-6180
                             Facsimile: (504) 581-4336
                             e-mail: bgilbert@briangilbertlaw.com

                       /s/ Lawrence D. Wiedemann
                       Lawrence D. Wiedemann.
                       Karl Wiedemann
                       Karen Wiedemann
                       WIEDEMANN & WIEDEMANN
                       821 Baronne Street
                       New Orleans, Louisiana 70113
                             Telephone: (504) 581-6180
                             Facsimile: (504) 581-4336
                             e-mail: lawrence@wiedemannlaw.com,
                       karl@wiedemannlaw.com,     karen@wiedemannlaw.com,
                       /s/ Patrick J. Sanders
                       Patrick J. Sanders
                       3316 Ridgelake Drive
                       Suite 100
                       Metairie, LA 70002
                             Telephone: 504-834-0646
                             e-mail: pistols42@aol.com

                       /s/ Richard T. Seymour
                       Richard T. Seymour
                       Adele Rapport

Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
      Voice: 202-862-4320
      Cell:   202-549-1454
      Facsimile:  800-805-1065 and 202-828-4130
      e-mail: rick@rickseymourlaw.net, adele@rickseymourlaw.net

/s/ Lawrence A. Wilson
Lawrence A. Wilson
David W. Drucker
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
      Telephone: (212) 608-4400
      Facsimile: (212) 227-5159
      e-mail: lwilson@wgdnlaw1.com, ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.
Leslie Kelmachter, Esq.
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
      Telephone: 212-869-3500 ext. 235
      Facsimile:  212-398-1532
      e-mail: a.fuchsberg@fuchsberg.com,
      l.kelmachter@fuchsberg.com

Dated: February 12, 2008

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the above and foregoing document has been served upon

counsel of record, by ECF upload, this 12th day of February, 2008.

<u>/s/ Brian A. Gilbert</u>
Brian A. Gilbert, Esq.
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
    Telephone: (504) 885-7700
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail: bgilbert@briangilbertlaw.com