UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*        05-5531 | * | |
| *Mumford v. Ingram*     05-5724 | * | |
| *Lagarde v. Lafarge*     06-5342 | * | JUDGE |
| *Perry v. Ingram*          06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*        06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAGISTRATE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

<u>LAFARGE NORTH AMERICA INC.'S</u>
<u>RESPONSES TO PLAINTIFFS' INTERROGATORIES</u>

Defendant Lafarge North America Inc. ("LNA"), hereby responds to the Interrogatories served by

Plaintiffs in the above-captioned actions as follows:

<u>GENERAL OBJECTIONS</u>

1.      LNA objects to each Interrogatory to the extent it purports to require any act not

mandated by the Federal Rules of Civil Procedure.  LNA will respond to the Interrogatories in accordance

with the obligations imposed by the Federal Rules of Civil Procedure and not otherwise.

2.      LNA objects to each Interrogatory to the extent it expressly or impliedly seeks documents

or information protected by the attorney-client privilege, the work product doctrine, or any other

applicable privilege or similar reason for non-production.  In that connection, LNA expressly avers that

on September 8, 2005, it retained counsel and commenced an investigation of the subject matter of this

case in anticipation of litigation.  That investigation continues to this day.  In the course of that

investigation, LNA, its counsel, and its representatives have generated documents or compilations for the

purpose of preparing for trial of claims such as those asserted in these cases, and such materials are protected from disclosure under Fed. R. 26(b)(3).  Inadvertent disclosure of privileged or protected information is not intended to be, and may not be construed as, a waiver of any applicable privilege. LNA will supply a privilege log that satisfies the requirements of Fed. R. Civ. P. 26(b)(5) and accompanying comments.

3.      LNA objects to each Interrogatory to the extent that it contravenes Case Management Order #5 and/or seeks to preempt the timelines established by the Court.

4.      LNA objects to each and every Interrogatory to the extent that it calls for the production of documents or information that already have been produced in this litigation or calls for the production of publicly available documents or information that are equally available to the plaintiffs as to LNA.

5.      LNA states that it has attempted to retrieve and preserve records from its New Orleans terminal, but can neither guarantee nor represent that none were lost or destroyed because of Hurricane Katrina, which seriously flooded and damaged the plant.  To the extent that an objection may be necessary, LNA objects to producing documents or information which may have been lost as a result of this hurricane.

6.      Each of LNA's answers to these Interrogatories is made to the best of LNA's knowledge at the present time, based upon its investigation to date.  LNA states that its investigation is ongoing and LNA specifically reserves the right to supplement and amend these responses when and if it becomes necessary.

7.      LNA objects to each and all "definitions" to the extent they vary the content of the Interrogatories in a way that renders them cumbersome and unduly burdensome.  LNA will answer the Interrogatories in accordance with the Federal Rules of Civil Procedure, common English usage, and the terms of the Interrogatories themselves.

## SPECIFIC RESPONSES

**INTERROGATORY NO. 1:**

Describe and identify by title, edition, publication date, author and current custodian, and describe the form and contents of:

(1)      any and all communications; and /or

(2)      any and all safety and/or hurricane preparation, policy, procedure, operation, inspection, maintenance, and/or other written manuals, directives, recommendations, regulations, rules, law, educational materials, electronic media, video, audio, instructions, training programs, memoranda, correspondence, notices, bulletins, advisories, publications, pamphlets; and/or

(3)      any and all other documents and things which are and/or were published, promulgated, implemented, issued and/or in the custody of LNA, whether prepared by LNA or by others, in effect during the three year period preceding and including August 29, 2005, whose topics and/or contents include any and all of the following :

       a.      berthing, making steadfast, mooring, securing, moving, retrieval and/or fleeting of Ingram Barge Company and other barges, generally, and/or in advance of an approaching hurricane;

**Answer to Interrogatory No. 1(a):**

LNA has previously produced responsive documents from its terminal on the Inner Harbor Navigation Canal at New Orleans, Louisiana, and from its River Region files.  See Bates nos. LNA00113; LNA000469-480.  These documents contain some of the information sought by this request.  As noted in LNA's Rule 30(b)(6) testimony, the New Orleans terminal hurricane procedures had been upgraded prior to Hurricane Katrina but the upgrades had not been reduced to writing.

LNA objects to the remainder of this interrogatory because it is overly broad, unduly burdensome, not related to the incident in suit and not likely to lead to admissible evidence to the extent that it seeks information not related to communications or documents regarding LNA's River Region distribution zone, within which LNA's New Orleans terminal is included, and which is the region where

3

inland river barges such as the ING 4727 are utilized.  LNA further objects to the request as overbroad and vague as to time and interprets the three-year time period in item (3) to apply to the entire interrogatory.  Further the interrogatory lacks specificity of information sought and as such is impossible to answer.  Subject to these objections, LNA will conduct a further search and will produce other responsive documents, if any, from its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records satisfies its duties and is permitted under Fed. R. Civ. P. 33(d).  LNA refers plaintiffs to LNA 000706-722 and to emails amongst those produced at LNA 000808-830.

> b.  communications with and/or notifications of (sic) and/or the Coast Guard, Port Commander, and/or other governmental maritime agency or authority regarding mooring, securing or berthing of barges at LNA facilities in light of an approaching hurricane;

**Answer to Interrogatory No. 1(b):**

See LNA's objections to Interrogatory 1(a) above.  LNA will conduct a further search and will produce responsive documents, if any, from its  River Region files and its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records will satisfy its duties as permitted under Fed. R. Civ. P. 33(d).

> c.  inspection of barges in advance of an approaching hurricane;

**Answer to Interrogatory No. 1(c):**

See LNA's objections to Interrogatory 1(a) above.  LNA refers plaintiffs to the document produced as LNA000113.  LNA will conduct a further search and will produce responsive documents, if any from its  River Region files and its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records will satisfy its duties as permitted under Fed. R. Civ. P. 33(d).  LNA refers plaintiffs to LNA 000706-722 and to emails amongst those produced at LNA 000808-830.

LIBW/1658662.7

    d.      communications concerning barges berthed at LNA's facility in advance of an approaching hurricane;

**Answer to Interrogatory No. 1(d):**

See LNA's objections to Interrogatory 1(a) above.  LNA refers plaintiffs documents previously produced as LNA000105 to LNA00112.  LNA will conduct a further search and will produce responsive documents, if any from its  River Region files and its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records will satisfy its duties as permitted under Fed. R. Civ. P. 33(d).  LNA refers plaintiffs to emails amongst those produced at LNA 000808-830.

    e.      any and all activities and/or measures to be taken by (sic) relative to berthing or mooring of Ingram and/or other barges in advance of an approaching hurricane;

**Answer to Interrogatory No. 1(e):**

See LNA's objections to Interrogatory 1(a) above.  LNA refers plaintiffs to the documents previously produced as LNA00113 and LNA000469-480.  As noted in LNA's Rule 30(b)(6) testimony, the New Orleans terminal hurricane procedures had been upgraded prior to Hurricane Katrina but the upgrades had not been reduced to writing.  LNA will conduct a further search and will produce responsive documents, if any from its  River Region files and its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records will satisfy its duties as permitted under Fed. R. Civ. P. 33(d).

    f.      any and all instructions, directives, precautions and/or descriptions of mooring and/or berthing a full inland hopper barge abreast of, and to, an empty hopper barge alongside any dock or wharf in advance of an approaching hurricane;

**Answer to Interrogatory No. 1(f):**

 See LNA's objections to Interrogatory 1(a) above.  LNA will conduct a further search and will produce responsive documents, if any from its  River Region files and its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records will satisfy its duties as permitted under Fed. R. Civ. P. 33(d).

g.      proper methods of mooring or berthing barges in advance of an approaching hurricane taking into account storm surge and wind;

**Answer to Interrogatory No. 1(g):**

See LNA's objections to Interrogatory 1(a) above.  As noted in LNA's Rule 30(b)(6) testimony, the New Orleans terminal hurricane procedures had been upgraded prior to Hurricane Katrina but the upgrades had not been reduced to writing.  LNA will conduct a further search and will produce responsive documents, if any from its  River Region files and its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records will satisfy its duties as permitted under Fed. R. Civ. P. 33(d).

h.      **NO INTERROGATORY NO. 1(h).**

i.      Any and all instruction, education, supervision and/or oversight relative to mooring, securing, tying off, berthing, fleeting, transport or removal of Ingram and/or other barges at/from said LNA's dock facilities.

**Answer to Interrogatory No. 1(i):**

See LNA's objections to Interrogatory 1(a) above.  LNA refers plaintiffs to the documents previously produced as LNA00113 and LNA000469-480.  As noted in LNA's Rule 30(b)(6) testimony, the New Orleans terminal hurricane procedures had been upgraded prior to Hurricane Katrina but the upgrades had not been reduced to writing.  LNA will conduct a further search and will produce responsive documents, if any from its  River Region files and its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records will satisfy its duties as permitted under Fed. R. Civ. P. 33(d).   LNA refers plaintiffs to documents produced at LNA 000706-722.

**INTERROGATORY NO. 2:**

Describe any and all documents and things published, promulgated, implemented, issued and/or in the custody of LNA, by which customers in temporary, or shared, control of Ingram barges were cautioned by Ingram concerning the protection, mooring, transferring, communicating, or handling, of Ingram barges in customers' possession prior to Hurricane Katrina.

6

**Answer to Interrogatory No. 2:**

Responding, LNA refers plaintiffs to the Transportation Agreement produced by LNA in response to plaintiffs' previous discovery requests in Phase I of the limitation action, at bates numbers LNA000001-5.  LNA will conduct a further search and will produce responsive documents, if any, from its River Region files and its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records will satisfy its duties as permitted under Fed. R. Civ. P. 33(d).

**INTERROGATORY NO. 3:**

Describe and identify any and all communications between LNA, Ingram, other barge owners and/or fleeting vendors prior to Hurricane Katrina discussing the retention, mooring, fleeting and/or removal of barges during, and/or in advance of the approach of, Hurricane Katrina.

**Answer to Interrogatory No. 3:**

LNA is not aware of communications to which it was not a party that would be responsive to this request.  LNA employee Edward Busch called Zito Fleeting to release the barge ING 4727 on August 27, 2005, as disclosed in previous responses and sworn testimony.  Mr. Busch also contacted the dispatcher at Domino Towing, a marine transportation broker, on August 27, 2005, to arrange for a tugboat to reverse, or "flip," the positions of ING 4727 and ING 4745, so that the ING 4745 would be next to the dock and ING 4727 moored on the outside of ING 4745.  The communications between Mr. Busch and the personnel at Domino Towing have been the subject of previous sworn testimony by Mr. Busch.  There were also communications between Ingram and LNA regarding a request by Ingram to inspect and tie down hatch covers at LNA's Joppa facility, as described in sworn testimony by former LNA employee Rachael Burnett.  Further, LNA refers the plaintiffs to the email previously produced at bates number LNA000278.  Finally, LNA understands that Ingram employee Stan Cook visited LNA's New Orleans terminal on August 27, 2005, and delivered rope for possible use in securing hatch covers.

7

**INTERROGATORY NO. 4:**

Describe by owner, barge number, and/or any and all other applicable identification, every barge retrieved from LNA France Road over the period August 25-29, 2005 and state by whom the barge(s) were retrieved; the name and address of the owner; the date the barge was picked up; and describe any and all communication relative to said barges.

**Answer to Interrogatory No. 4:**

LNA states that unloading of Bunge North America barge BUNGE 861b was completed on August 25, 2005.  LNA further states that unloading of Bunge North America barge BUNGE 775 was completed on August 26, 2005.  On information and belief, both barges left the LNA terminal at 8:45 a.m. on August 26, 2005, prior to the arrival of the ING 4727 and ING 4745.  Further, on information and belief, communication regarding release of the Bunge barges was made by telephone to Bunge North America and to Elmwood Fleet, Bunge's fleeting service, per standard operating procedure.  Bunge North America's corporate headquarters are located at 11720 Borman Drive, St. Louis, MO 63146.

**INTERROGATORY NO. 5:**

Please identify, describe and state the contents of any and all fact statements you have obtained from any and all plaintiffs and/or persons potentially belonging to the putative class herein concerning allegations subject of suit, stating the dates upon which all such statements were obtained, identifying by full name and address persons giving such statement, obtaining such statement, and having custody of such statement.

**Answer to Interrogatory No. 5:**

LNA objects to this request to the extent that it pertains to "fact statements" obtained from persons who are not parties to this case, including persons "potentially belonging to the putative class herein" on the grounds that (1) the request seeks the production of documents created in anticipation of litigation by or for LNA and its attorneys that are protected by Fed. R. Civ. P. 26(b)(3); and (2) the group of persons to which the request pertains is ill-defined, overly broad, and not capable of ascertainment. Notwithstanding the foregoing objections, LNA will identify and produce written statements, if any,

obtained by LNA from named plaintiffs listed in the captions of the above-captioned cases, case numbers 05-5531, 05-5724, 06-5342, 06-6299, 06-7516, and 07-3500.

**INTERROGATORY NO. 6:**

Please state the full names, addresses, job titles, employers, credentials, and areas of expertise of any and all experts or other persons you have consulted, retained and/or will or may call to render any opinion concerning issues in this matter, whether you intend to call said persons to testify at trial or not, in each instance, summarizing all opinions relevant to issues that will be subject of testimony you will seek to elicit in trial.

**Answer to Interrogatory No. 6:**

LNA objects to this request as vague and construes it to apply only to experts who are expected to testify at trial (see Fed. R. 26(a)(2)) and objects to the extent it applies to experts "consulted" or "retained" for purposes other than providing testimony.   LNA further objects to the request as exceeding the scope of discovery as to testimonial experts provided in Rule 26(a)(2)(B) and contravening the schedule and scope for expert discovery set forth in the Court's Case Management Order #5.  LNA will provide expert discovery as required by Rule 26 and in accordance with the timelines established by the Court.

**INTERROGATORY NO. 7:**

Please state the full names, addresses, job titles and employers of any and all lay persons you will or may call to testify at trial, and state the substance of each fact you intend to prove through testimony elicited from such witnesses.

**Answer to Interrogatory No. 7:**

LNA objects that this request contravenes the schedule and procedures set forth in the Court's Case Management Order #5.  LNA directs plaintiffs to the witness list that LNA filed on November 20, 2007, and to its monthly supplementations thereof.

LIBW/1658662.7

Attachment C to Barge Plaintiffs' Opposition

**INTERROGATORY NO. 8:**

Please identify and describe any and all persons and/or documents and/or things whose existence is admitted in response to the accompanying Requests for Admissions, designating in each instance to which admission said identification relates.

**Answer to Interrogatory No. 8:**

LNA objects on the basis that this interrogatory amounts to 42 separate interrogatories corresponding to each of the separate requests for admissions served by the plaintiffs.  Paragraph V.A.1 of Case Management Order #5 limits the plaintiffs to fifty (50) separate requests for production, requests for admissions, and interrogatories.  This interrogatory impermissibly seeks information on 42 separate topics under the guise of a single request.  The demand that LNA "designat[e] in each instance to which admission said identification relates" admits that this request in fact embodies 42 separate requests.  The Court has rejected attempts to impose this sort of request in the Katrina litigation.  This interrogatory is improper, and LNA stands on its objections to it.

**INTERROGATORY NO. 9:**

Please identify any and all persons with knowledge that substantiates any and all denials in response to the accompanying Requests for Admissions, designating in each instance which denial is thereby substantiated.

**Answer to Interrogatory No. 9:**

LNA objects to this interrogatory for the reasons set forth in response to Interrogatory No. 8.  The interrogatory is improper, and LNA stands on its objections to it.

**INTERROGATORY NO. 10:**

Please identify and describe any and all documents and things that substantiate any and all denials in response to the accompanying Requests for Admissions, designating in each instance which denial is thereby substantiated.

**Answer to Interrogatory No. 10:**

LNA objects to this interrogatory for the reasons set forth in response to Interrogatory No. 8. The interrogatory is improper, and LNA stands on its objections to it. LNA notes, however, that to the extent the denials in response to plaintiffs' Requests for Admissions pertain to the question whether the barge caused the breach of the floodwall, there is a wealth of documentation to support the denials, including the entire record developed by the independent IPET, ILIT, Team Louisiana, and External Review Panel investigations. Other documents and things that demonstrate the barge did not breach the floodwall are described elsewhere in LNA's responses to plaintiffs' discovery, including its response to Interrogatory 26.

**THERE IS NO INTERROGATORY NO. 11.**

**INTERROGATORY NO. 12:**

Please state the barge number, facility name, and facility location, as to every Ingram Barge Company barge whose fiberglass lift covers were "checked" at LNA facilities by Ingram employees in advance of Hurricane Katrina, and identify any and all Ingram employees participating in these procedures, and Ingram employees with knowledge of these procedures.

**Answer to Interrogatory No. 12:**

Subject to and without waiving any objections, LNA responds that Ingram employee Stanley Cook visited LNA's terminal on the Inner Harbor Navigation Canal at New Orleans, Louisiana, on August 27, 2005, where Ingram barges ING 4727, ING 4745, and ING 5882 were located, to deliver rope that could be used to tie down hatch covers. Ingram employees David Williams and Gary Holman visited LNA's Joppa Cement Plant in Grand Chain, Illinois, on August 29, 2005, where certain Ingram barges were present, to tie down hatch covers.

**INTERROGATORY NO. 13:**

Please state the full names, addresses, job titles, employers, barge owners and barge numbers as to any and all other barge owners whose personnel came to any LNA facility in advance of Katrina to check or inspect their barges located there.

Attachment C to Barge Plaintiffs' Opposition

**Answer to Interrogatory No. 13:**

LNA objects to the term "any LNA facility" as vague, overbroad, and unduly burdensome in that it could include facilities which are wholly unrelated to this litigation. LNA has checked with personnel at New Orleans, Union, and Westlake facilities in Louisiana and confirmed that LNA employees have no knowledge of barge owners other than Ingram that sent personnel to LNA facilities in advance of Katrina to check or inspect barges there.

**INTERROGATORY NO. 14:**

Please state the full name, address, job title and employer of any and all persons providing information used to compile answers to these Interrogatories, the accompanying Requests for Production, and/or the accompanying Requests for Admissions.

**Answer to Interrogatory No. 14:**

Counsel compiled responsive information from several sources. Responses to the discovery requests were chiefly derived from the record of documents and sworn testimony. Current and former LNA employees were also consulted to answer these discovery requests. Counsel's primary contacts were John Shelonko, A.J. Guthrie, and Ed VanderMeulen. LNA also consulted John Fauquet, Ted Graham, Terry Griffin, Andrew Martin, Dennis Millon, Todd Mollock, Trey Sholar, and Matt Stump.

**INTERROGATORY NO. 15:**

Please state the full names, current residential and employment addresses, last known residential and employment addresses, dates of birth, and social security numbers of former LNA employees Roland Johnson and Louis Robein (or Robin, or similar sounding name), the foregoing being the same persons identified has having been present on or near the LNA France Road dock on August 27, 2005, as well as all additional relevant information sufficient to locate and effect service of process on these persons.

**Answer to Interrogatory No. 15:**

The most current address that LNA has for Louis Robin is 5913 N. Oak St. Marrero, LA 70072. Formerly, he resided at 5607 Franklin Ave, New Orleans. Mr. Robin's birth date is 8/1/1961. The most current address that LNA has for Roland Johnson is 717 Silver Hills Drive, Prattville, AL 36066. LNA

Attachment C to Barge Plaintiffs' Opposition

objects to providing social security numbers on privacy grounds and will not do so without a protective order preventing distribution or disclosure by plaintiffs' counsel.

**INTERROGATORY NO. 16:**

Please state (1) the entirety, verbatim, of any and all contractual language purported to obligate Arthur Murph to maintain confidentiality relative to any compromise or transaction with LNA and/or its insurers, and (2) describe and state in full any and all punitive, penal, contractual, delictual, legal, judicial and/or other conditions and/or remedies for breach of confidentiality included with and/or made part of said transaction or compromise and/or communicated to Arthur Murph.

Note:  This Interrogatory does not seek disclosure of the terms of such compromise or transaction or the substance of same, but is directed only to the relevant confidentiality provision, if any. Requestor does not hereby waive, limit or restrict any rights to seek discovery of the terms of said compromise or transaction.

<u>**Answer to Interrogatory No. 16:**</u>

The relevant confidentiality provision states as follows:  "The Murphs understand and agree that the terms of this Receipt, Release, and Settlement Agreement, the fact and the amount of the settlement they have received in accordance with this Receipt, Release, and Settlement Agreement, and all of the negotiations and discussions that they have had with Lafarge North America Inc., New Jourdan LLC, New Berkley LLC, and/or Ingram Barge Company, Inc., either directly or through their representatives and/or legal counsel, and whether verbal or written, shall forever remain completely confidential, except as disclosed by the public record through filings approved by Lafarge North America Inc.  The Murphs further agree that in the event that they should be compelled by legal process to reveal the terms of this Receipt, Release, and Settlement Agreement, they shall first obtain the written permission of Lafarge North America Inc., New Jourdan LLC, and New Berkley LLC, which permission shall not unreasonably be withheld."

Attachment C to Barge Plaintiffs' Opposition

To the extent this request calls for further information, LNA objects on the grounds that any further responsive information is not reasonably calculated to lead to the discovery of admissible evidence, are confidential, is subject to misuse by plaintiffs' counsel, and will place counsel for certain plaintiffs in a conflict-of-interest situation.

**INTERROGATORY NO. 17:**

Please identify and state the full name, address, job title and employer of any and all persons and/or entities causing signs to be posted in the affected area asking witnesses to call (866) 360-3065 and/or (866) 370-2031, those responsible for initiating telephone company accounts relative to said numbers, and state the full names, addresses and phone numbers of any and all persons who responded by calling said numbers.

**Answer to Interrogatory No. 17:**

LNA objects on the basis of Fed. R. Civ. P. 26(b)(3) because this Interrogatory seeks the products of investigation by LNA and its counsel and representatives made in anticipation of litigation or for trial by LNA and its counsel and representatives.  Subject to and without waiving this objection, LNA answers that the phone numbers referenced in this request were established, at counsel's request, by Centanni Investigative Agency, PO Box 23752, New Orleans, LA 70183-0752.

**INTERROGATORY NO. 18:**

Please identify any and all persons and/or entities, if any, that you contend to be at fault for the breakaway of ING 4727, stating and describing as to each any and all facts, beliefs and/or opinions upon which you base your contention.

**Answer to Interrogatory No. 18:**

LNA has not claimed against any other party specifically for the breakaway of ING 4727. Rather, the breakaway of ING 4727 was an Act of God that occurred despite all due care exercised by LNA.

14

Attachment C to Barge Plaintiffs' Opposition

**INTERROGATORY NO. 19:**

Please identify and fully describe any and all simulations, replicas, reconstructions, models, mockups, and other study, investigation or representation, forensic or otherwise, of any and all things, events and/or locations you contend are pertinent to this litigation and which you will (1) introduce at trial, and/or (2) rely upon at trial, and/or (3) disclose, display or publish to the trier of fact, and/or (4) of which any witness you will call at trial will be informed and/or upon which any such witness will rely in furtherance of trial testimony. For the purpose of this discovery request, the word "forensic" shall be defined as "relating to the use of science or technology in the investigation and establishment of facts or evidence in a court of law."

**Answer to Interrogatory No. 19:**

LNA objects to this request as vague and overbroad to the extent it seeks to require LNA to identify any "event" or "location" … "of which any witness you call at trial will be informed" to the extent it applies to fact witnesses, whose knowledge of the relevant events comes from sources other than LNA.  With regard to expert witnesses, LNA objects to this request as exceeding the scope of discovery as to testimonial experts provided in Rule 26(a)(2)(B) and contravening the schedule and scope for expert discovery set forth in the Court's Case Management Order #5.  LNA will provide expert discovery as required by Rule 26 and in accordance with the timelines established by the Court.  Subject to and without waiving any objections, LNA refers the plaintiffs to the reports of the IPET, ILIT, Team Louisiana, and American Society of Civil Engineers External Review Panel, all of which provide comprehensive scientific investigation of the facts and circumstances relevant to this litigation.  The reports and underlying materials are available to the plaintiffs through the following web addresses:

   a) IPET:  : https://ipet.wes.army.mil.

   b) ILIT:   http://www.ce.berkeley.edu/~new_orleans

   c) Team Louisiana:  ftp://hef-hurricane.hurricane.lsu.edu/Team_Louisiana.

   d) External Review Panel:  http://www.asce.org/static/hurricane/whitehouse.cfm

Attachment C to Barge Plaintiffs' Opposition

**INTERROGATORY NO. 20:**

Please fully identify and describe any and all acts of contributory and/or comparative fault for which you contend any putative class members bear any responsibility for the damages alleged herein, disclosing any and all witness from whom you will take testimony, and documents and things you will seek to introduce and/or rely upon at trial in furtherance of such contentions.

**Answer to Interrogatory No. 20:**

LNA objects to the term "damages alleged herein" as vague and interprets this phrase to refer to the damages alleged in the named plaintiffs' complaints.  LNA further objects that the group of persons to which the request pertains is ill-defined and not capable of ascertainment, there being no single definition of the proposed "putative class."   LNA further objects to this interrogatory to the extent that it contravenes the schedule set forth in the Court's Case Management Order #5.  LNA refers plaintiffs to its witness list, filed November 20, 2007, and to its monthly supplementations thereof.  Subject to and without waiving any objections, LNA responds that at least some individuals failed to take reasonable precautions in response to reports on or after August 27, 2005, that Hurricane Katrina would strike the greater New Orleans area and placed themselves and/or their property in harm's way in advance of the oncoming storm despite having the ability to avoid the risk of harm.  LNA reserves all rights to take discovery on this issue from the named plaintiffs and putative class members, and to supplement this response.

**INTERROGATORY NO. 21:**

Please identify any and all persons and/or entities that you contend to have caused and/or contributed to the damages alleged by putative class plaintiffs herein (individuals and juridical entities sustaining damage due to flooding between the eastern IHNC floodwall to and including Paris Road, and between the MRGO/ICWW and Mississippi River levee) disclosing any and all witness from whom you will take testimony, and documents and things you will seek to introduce and/or rely upon at trial in furtherance of such contentions.

16

**Answer to Interrogatory No. 21:**

LNA objects to the phrase "damages alleged by putative class plaintiffs herein" as vague and potentially.  LNA interprets this interrogatory to refer to the damages alleged by the named plaintiffs in their complaints in the above-captioned actions, case numbers 05-5531, 05-5724, 06-5342, 06-6299, 06-7516, and 07-3500.  LNA objects to the request to the extent that it applies to other persons because any such group of persons is ill-defined and not capable of ascertainment, there being no single definition of the proposed "putative class."  Subject to these objections, and without limitations, LNA answers:  the United States of America; the United States Army Corps of Engineers; the Board of Commissioners of the Orleans Levee District; Board of Commissioners of the Port of New Orleans; the plaintiffs themselves; and, possibly, other named defendants in the MRGO track of the *In re Katrina* litigation (No. 05-4182).  LNA refers plaintiffs to its witness and exhibit lists, filed November 20, 2007, and to its monthly supplementations thereof.

**INTERROGATORY NO. 22:**

Please identify and describe any and all complaints and/or communications about a barge or other object knocking, scraping or engaged in other contact against the Industrial Canal floodwall or levee, and/or a barge breakaway, including the identities of all complainants, the recipients and persons with knowledge of all such complaints and/or communications, the dates and times of such complaints and/or communications, and the full substance of any and all such complaints and/or communications, during the period August 28-29, 2005.

**Answer to Interrogatory No. 22:**

LNA is unaware of any such complaints or communications having occurred during the period August 28-29, 2005.

**INTERROGATORY NO. 23:**

Please identify and describe in as much detail as possible any and all efforts to track, redirect, guide, navigate, and/or recapture ING 4727 after its breakaway during the effects of Katrina.

Attachment C to Barge Plaintiffs' Opposition

**Answer to Interrogatory No. 23:**

The "efforts" described in this request would have been impossible because LNA was unaware of the breakaway until after Hurricane Katrina had passed and until after the barge had floated into the Lower Ninth Ward.

**THERE IS NO INTERROGATORY NO. 24.**

**INTERROGATORY NO. 25:**

Please provide your complete, detailed, exhaustive account of any and all locations, things, persons, events, circumstances and factors constituting the causes and occurrence of the breakaway of ING 4727.

**Answer to Interrogatory No. 25:**

LNA's account of the causes and occurrence of the breakaway of ING 4727 will be the subject of expert testimony.  LNA's employees were not present to witness the breakaway, and, therefore, LNA does not have a first-hand account of the causes and occurrence of the breakaway.  LNA's investigation of this topic is ongoing, and LNA will provide its expert reports in accordance with Case Management Order #5 and the timelines established by the Court.

**INTERROGATORY NO. 26:**

Please provide your complete, detailed, exhaustive account of any and all locations, things, persons, events, circumstances and factors constituting the causes and occurrence of the breaches of the eastern IHNC floodwall between S. Claiborne and Florida Avenues.

**Answer to Interrogatory No. 26:**

LNA's account of the causes and occurrence of the breaches of the eastern IHNC floodwall will be the subject of expert testimony.  LNA's investigation of this topic is ongoing, and LNA will provide its expert reports in accordance with Case Management Order #5 and the timelines established by the Court. LNA further states that the causes and occurrence of the breaches of the eastern IHNC floodwall is the subject of extensive, publicly available study including the IPET, ILIT, Team Louisiana, and External Review Panel Reports.  These reports have each provided a complete, detailed, and exhaustive account of

the causes and occurrence of the eastern IHNC floodwall breaches between S. Claiborne and Florida Avenues.  Not one of these accounts mentions the Barge ING 4727 as the cause of any of the breaches, and several of them affirmatively rule out the barge as the cause.  For instance, as described in the IPET Report, the Northern IHNC floodwall breach occurred due to the "formation of a gap on the canal side of the wall" that "allow[ed] hydrostatic water pressure to act through the full depth of the gap," and because "the ground elevation on the protected side is lower at that location and there was less soil on the protected side that was able to provide support for the wall."  Further, as described in the IPET report, the Southern IHNC floodwall breach happened later, due mainly to "water flowing over the floodwall scoured and eroded the levee on the protected side of the I-wall, exposing the supporting sheet piles and reducing the passive resistance … until soil resistance was lost and the wall failed."  The Team Louisiana Report concluded that the breach at the southern end of the IHNC was caused by "erosion caused by plunging flow over the top of the I-wall" and "seepage beneath the sheet pile."  The ILIT Report described other factors that it contended caused the failures, including weak soils and inadequate floodwalls.  LNA's third-party complaint details additional causes of the floodwall failures that LNA is investigating, and the allegations in the *Katrina* litigation regarding the contributions of the United States, local agencies, and contractors raise the possibility that other factors – all non-barge-related – were also at work.  LNA will, at the appropriate time, provide expert reports that detail the conclusions of LNA's experts regarding the causes and occurrence of the floodwall failures.

As to objections:

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
Parker Harrison (#27538)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000

19

Attachment C to Barge Plaintiffs' Opposition

Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com
Harrison@chaffe.com

  Mark S. Raffman           
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

***Attorneys for Lafarge North America Inc.***

December 28, 2007

Attachment C to Barge Plaintiffs' Opposition

**VERIFICATION**

I declare under penalty of perjury that the foregoing answers to first set of interrogatories are true and correct to the best of my knowledge, information and belief.

_____
John H. Shelonko
For Lafarge North America Inc.

Dated: December __, 2007

21

## Certificate of Service

I do hereby certify that I have on this 28th day of December, 2007 served a copy of the foregoing pleading on counsel for all parties to this proceeding by e-mail.

_____/s/ Mark S. Raffman_____