## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| **IN RE: KATRINA CANAL BREACHES** | * | |
| **CONSOLIDATED LITIGATION** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 05-4182** |
| | * | **and consolidated cases** |
| **PERTAINS TO: BARGE** | * | |
| | * | **SECTION "K" (2)** |
| *Boutte v. Lafarge*        **05-5531** | * | |
| *Mumford v. Ingram*     **05-5724** | * | |
| *Lagarde v. Lafarge*     **06-5342** | * | **JUDGE** |
| *Perry v. Ingram*          **06-6299** | * | **STANWOOD R. DUVAL, JR.** |
| *Benoit v. Lafarge*       **06-7516** | * | |
| *Parfait Family v. USA*  **07-3500** | * | **MAG.** |
| | * | **JOSEPH C. WILKINSON, JR.** |
| | * | |

### LAFARGE NORTH AMERICA, INC.'S AMENDED RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSIONS

Defendant Lafarge North America Inc. ("LNA"), hereby supplies amended responses to the Requests for Admissions served by Plaintiffs in the above-captioned actions, for the purpose of obviating disputes over discovery, as follows:

### GENERAL OBJECTIONS

1.     LNA objects to plaintiffs' instructions, and the Requests incorporating them, on the ground that they call for actions not required by the Federal Rules of Civil Procedure.  LNA will respond to the Requests in accordance with the obligations imposed by the Federal Rules of Civil Procedure and not otherwise.

2.     LNA objects to each Request to the extent it expressly or impliedly seeks documents or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or similar reason for non-production.  In that connection, LNA expressly avers that on September 8, 2005, it retained counsel and commenced an investigation of the subject matter of this case

1659099.7

in anticipation of litigation.  That investigation continues to this day.  In the course of that investigation, LNA, its counsel, and its representatives have generated documents or compilations for the purpose of preparing for trial of claims such as those asserted in these cases, and such materials are protected from disclosure under Fed. R. 26(b)(3).  Inadvertent disclosure of privileged or protected information is not intended to be, and may not be construed as, a waiver of any applicable privilege.  LNA will supply a privilege log that satisfies the requirements of Fed. R. Civ. P. 26(b)(5) and accompanying comments.

3.      Each of LNA's answers to these Requests is made to the best of LNA's knowledge at the present time, based upon its investigation to date.  LNA states that its investigation is ongoing and LNA specifically reserves the right to supplement and amend these responses when and if it becomes necessary.

4.      LNA objects to each and all "definitions" to the extent they vary the content of the Requests in a way that renders them cumbersome and unduly burdensome.  LNA will answer the Requests in accordance with the Federal Rules of Civil Procedure, common English usage, and the terms of the Requests themselves.

## SPECIFIC RESPONSES

**REQUEST NO. 1:**

Admit that Lafarge is aware of one or more persons - other than Terry Adams and Christopher Weaver - who has claimed to be an eyewitness to the transition of ING 4727 from the canal side of the eastern Inner Harbor Navigation Canal floodwall to the residential side thereof on August 28 - 29, 2005.

**Amended Answer to Request No. 1:**

Lafarge objects to this request as an improper Request for Admission in this action.  Requests for admission are for the purpose of narrowing the issues for trial, not for purposes of discovery.  LNA's "awareness" of what others may have "claimed" is not an issue for trial, and this request cannot possibly narrow the issues for trial regardless of the answer.

Subject to and without waiving any objections, LNA admits that it is "aware" of "one or more persons … other than Terry Adams and Christopher Weaver" who has "claimed to be an eyewitness" to

2

the supposed events recited in the request, but LNA does **not** admit the veracity of any such account. Further, to prevent any attempted misuse of its answer to this request to admit, LNA specifically denies that ING 4727 caused or contributed to the failure of the eastern IHNC floodwall or levee, or any other floodwall or levee, and denies that any witness can truthfully testify to the contrary.

**REQUEST NO. 2:**

Admit that Lafarge knows of no eyewitness to ING 4727's transition from the IHNC to the eastern side of the eastern IHNC floodwall who will testify that ING 4727 did not cause or contribute to any breach of the eastern Industrial Canal floodwall between N. Claiborne Avenue and Florida Avenue on August 28 - 29, 2005.

**Amended Answer to Request No. 2:**

LNA objects to requests for admission regarding its "awareness" of persons who will testify at trial on a given subject on the ground that such requests are not properly directed at narrowing the issues for trial. Without waiving any objections, LNA admits that at the present time, LNA knows of no person who will testify that he or she witnessed the ING 4727's transition to the eastern side of the eastern IHNC floodwall and who will also testify as to whether or not the barge caused or contributed to any breach of the floodwall. By way of qualifying its response , LNA avers that eyewitness testimony will confirm the ING 4727 did not cause or contribute to any breach of the eastern IHNC floodwall and denies the request to the extent it seeks an admission to the contrary.

**REQUEST NO. 3:**

Admit that Lafarge is aware of one or more persons - other than Terry Adams and Christopher Weaver - who claim to have seen a barge make contact with the eastern Industrial Canal floodwall between N. Claiborne Avenue and Florida Avenue on August 28 - 29, 2005.

**Amended Answer to Request No. 3:**

Lafarge objects to this request as an improper Request for Admission in this action. Requests for admission are for the purpose of narrowing the issues for trial, not for purposes of discovery. LNA's

"awareness" of what others may have "claimed" is not an issue for trial, and this request cannot possibly narrow the issues for trial regardless of the answer.

Subject to and without waiving any objections, LNA admits that it is "aware" of "one or more persons … other than Terry Adams and Christopher Weaver" who "claim to have seen" the supposed events recited in the request, but LNA does ***not*** admit the veracity of any such account.  Further, to prevent any attempted misuse of its answer to this request to admit, LNA specifically denies that ING 4727 caused or contributed to the failure of the eastern IHNC floodwall or levee, or any other floodwall or levee, and denies that any witness can truthfully testify to the contrary.

**REQUEST NO. 4:**

Admit that Lafarge is aware that Arthur Murph claims to have seen and/or heard a barge make physical contact with the eastern Industrial Canal floodwall between N. Claiborne Avenue and Florida Avenue on August 28 - 29, 2005.

**Answer to Request No. 4:**

Denied.

**REQUEST NO. 5:**

Admit that Lafarge is aware of one or more persons - other than Terry Adams and Christopher Weaver - who claim to have witnessed a barge cause one or more breaches of the eastern Industrial Canal floodwall between N. Claiborne Avenue and Florida Avenue on August 28 - 29, 2005.

**Amended Answer to Request No. 5:**

Denied.

**REQUEST NO. 6:**

Admit that Lafarge is not aware of any person who will testify at trial that he or she communicated on behalf of LNA with Ingram Barge Company on August 25, 26, 27, 28 or 29, 2005 concerning any of the following: (Please respond to each subpart separately.)

**Objection to Request No. 6:**

4

LNA objects to requests for admission regarding its "awareness" of persons who will testify at trial on a given subject on the ground that such requests are not directed at narrowing the issues for trial. Nevertheless, subject to and without waiving any objections, and because the responses to this request may as a practical matter narrow the issues at trial, LNA responds as set forth below:

a. Mooring ING 4727 to withstand Hurricane Katrina at the Lafarge France Road terminal;

**Answer to Request No. 6.a:**

LNA admits that Lafarge is not aware of any person who will testify at trial that he or she communicated on behalf of LNA with Ingram Barge Company regarding the mooring of ING 4727 because there was no reason for such a communication and because LNA properly moored ING 4727 itself.

b. Moving ING 4727 from the Lafarge France Road terminal before Hurricane Katrina's arrival;

**Answer to Request No. 6.b:**

Denied.  (See response to Request for Admission No. 10.)

c. Delaying the arrival of ING 4727 at the Lafarge France Road terminal until Katrina passed;

**Answer to Request No. 6.c:**

LNA admits that Lafarge is not aware of any person who will testify at trial that he or she communicated on behalf of LNA with Ingram Barge Company regarding delaying the arrival of ING 4727 to LNA's facility on the Inner Harbor Navigational Canal because there was no reason for such a communication.

d. Potential effects of Hurricane Katrina storm surge on barges at the France Road terminal.

**Answer to Request No. 6.d:**

LNA admits that Lafarge is not aware of any person who will testify at trial regarding such a communication because there was no reason for communication with Ingram on that subject.

e. Potential effects of Hurricane Katrina on barge moorings at the France Road terminal.

**Answer to Request No. 6.e:**

LNA admits that Lafarge is not aware of any person who will testify at trial on this subject because there was no reason for communication with Ingram on that subject.

**REQUEST NO. 7:**

Admit that Lafarge is not aware of any person who will testify at trial that he or she notified the Commander of the Port that ING 4727 would or might remain at the Lafarge France Road terminal during Katrina.

**Answer to Request No. 7:**

LNA objects to requests for admission regarding its "awareness" of persons who will testify at trial on a given subject on the ground that such requests are not properly directed at narrowing the issues for trial.  Nevertheless, subject to and without waiving any objections, and because the responses to this request may as a practical matter narrow the issues at trial, LNA responds that there was no reason or requirement to notify the Commander of the Port that ING 4727 would or might remain at LNA's facility on the Inner Harbor Navigational Canal during Katrina, and LNA therefore admits that it is not aware of any person who will testify that such notification was given.

**REQUEST NO. 8:**

Admit that Lafarge is not aware of any person who will testify at trial that ING 4727 was, on August 28 - 29, 2005, cabled directly to the shore.

**Amended Answer to Request No. 8:**

LNA objects to requests for admission regarding its "awareness" of persons who will testify at trial on a given subject on the ground that such requests are not properly directed at narrowing the issues for trial.  Nevertheless, subject to and without waiving any objections, and because the response to this request may as a practical matter narrow the issues at trial, LNA responds that the barges were made fast to each other, and to the dock, with polypropylene lines for the reasons already stated by Messrs. Vandermeulen and Busch in their depositions, and therefore admits that the ING 4727 was not "cabled directly to the shore" because that would not have been a sound configuration.

**REQUEST NO. 9:**

6

Admit that Lafarge is not aware of any person who will testify at trial that any Lafarge personnel was/were present at the Lafarge France Road facility at any time between 2:30 p.m. on August 27, 2005 and 6:00 a.m. on August 29, 2007.

**Answer to Request No. 9:**

LNA objects to requests for admission regarding its "awareness" of persons who will testify at trial on a given subject on the ground that such requests are not properly directed at narrowing the issues for trial. Nevertheless, subject to and without waiving any objections, and because the response to this request may as a practical matter narrow the issues at trial, LNA responds that, to the best of its knowledge, its employees departed the premises prior to 2:30 p.m. on August 27, 2005, after the floodgates had closed, and did not thereafter return, in compliance with evacuation orders, and LNA therefore admits that it is not aware of any person who will testify that LNA personnel were present at the terminal between that time and 6:00 a.m. on August 29, 2005.

**REQUEST NO. 10:**

Admit that on August 27, 2005, Lafarge requested that ING 4727 be removed from its France Road facility.

**Answer to Request No. 10:**

LNA admits that LNA employee Edward Busch called Zito Fleeting to release the barge ING 4727 on August 27, 2005, as disclosed in previous responses and sworn testimony, and otherwise denies the request.

**REQUEST NO. 11:**

Admit that Lafarge did not inform Joseph C. Domino, Inc. that ING 4727 would or might remain at the Lafarge France Road facility during Katrina.

**Answer to Request No. 11:**

Denied.

**REQUEST NO. 12:**

7

Admit that Lafarge did not request on August 27, 2005 that Joseph C. Domino, Inc. have the number or physical dimensions of ING 4727's mooring lines increased.

**Answer to Request No. 12:**

LNA admits that it considered ING 4727 to be adequately moored and therefore did not ask Domino to alter the mooring.

**REQUEST NO. 13:**

Admit that Lafarge did not request on August 27, 2005 that Joseph C. Domino have ING 4727 cabled to the shore.

**Answer to Request No. 13:**

LNA admits that, because it would have been imprudent to cable the ING 4727 directly to the shore, LNA did not ask Joseph C. Domino to have the ING 4727 cabled to the shore.

**REQUEST NO. 14:**

Admit that Lafarge knows of no document, other than those already produced pursuant to discovery, that corroborates Ed Busch's claim that he called Zito on August 27, 2005.

**Answer to Request No. 14:**

LNA objects to requests for admission regarding its "awareness" of documents on a given subject on the ground that such requests are not properly directed at narrowing the issues for trial.  Subject to and without waiving any objections, LNA denies this request in that the deposition testimony of Earl Smith corroborates Mr. Busch's testimony regarding the call to Zito.

**REQUEST NO. 15:**

Admit that Lafarge knows of no person other than Ed Busch who claims firsthand knowledge that Ed Busch called Zito on August 27, 2005.

**Answer to Request No. 15:**

Denied.

**REQUEST NO. 16:**

Lafarge did not double-up ING 4727's mooring lines on August 27, 28 or 29, 2005.

**Answer to Request No. 16:**

    Denied.

**REQUEST NO. 17:**

    Lafarge did not on August 29, 2007 have personnel available ashore at the Lafarge France Road facility to respond to the breakaway of ING 4727.

**Answer to Request No. 17:**

    LNA admits that, to the best of its knowledge, its employees had departed the facility on August 27, 2005, after the floodgates had closed, and did not thereafter return, in compliance with evacuation orders, thus LNA did not have personnel present at the Lafarge France Road facility on August 29, 2007. LNA denies that any such personnel would have been able, in any capacity, to "respond to the breakaway," even had they been present.

**REQUEST NO. 18:**

    Lafarge did not decide to allow ING 4727 to remain moored at the Lafarge France Road facility during Katrina.

**Answer to Request No. 18:**

    LNA objects to this request as vague and confusing. LNA denies the request, except that LNA admits the following, as averred in LNA's response to plaintiffs' Interrogatory No. 10 (Sept. 2006): "The highest-ranking LNA employee present at the LNA facility on August 27, 2005 was terminal operations assistant Ed Busch. However, nobody 'made the decision to leave the barge at' the LNA facility during the storm. Rather, the barge was present at the facility and there was no means to remove it."

**REQUEST NO. 19:**

    Lafarge did not ask on August 26, 27, 28 or 29, 2005 that anyone remove ING 4727 from the Lafarge France Road facility.

**Answer to Request No. 19:**

    Denied, based on the call to Zito about which Mr. Busch has previously testified.

**REQUEST NO. 20:**

Lafarge did not notify Ingram that ING 4727 was to remain moored at the Lafarge France Road facility during Katrina.

**Answer to Request No. 20:**

Denied, in that Ed Busch called Zito to release the barge.

**REQUEST NO. 21:**

Lafarge did not notify Zito that ING 4727 was to remain moored at the Lafarge France Road facility during Katrina.

**Answer to Request No. 21:**

Denied, in that Ed Busch called Zito to release the barge.

**REQUEST NO. 22:**

Lafarge did not notify The Commander of the Port that ING 4727 was to remain moored at the Lafarge France Road facility during Katrina.

**Answer to Request No. 22:**

LNA admits that there was no reason or requirement to notify the Commander of the Port that ING 4727 would or might remain at LNA's facility on the Inner Harbor Navigational Canal during Katrina and therefore that it did not do so.

**REQUEST NO. 23:**

Not every barge in the tier indicated on Exhibit A was cabled to shore during Katrina.

**Amended Answer to Request No. 23:**

LNA responds that the barges were made fast to each other, and to the dock, with polypropylene lines for the reasons already stated by Messrs. Vandermeulen and Busch in their depositions, admits that wire cables were not used because they would not have been effective as the lines that were used, and otherwise denies the request.

**REQUEST NO. 24:**

Not every barge in the tier indicated on Exhibit A was moored at both bow and stern during Katrina.

**Amended Answer to Request No. 24:**

Denied.

**REQUEST NO. 25:**

The northwest corner of the tier indicated on Exhibit A was not cabled to shore during Katrina.

**Amended Answer to Request No. 25:**

LNA responds that the barges were made fast to each other, and to the dock, with polypropylene lines for the reasons already stated by Messrs. Vandermeulen and Busch in their depositions, admits that wire cables were not used because they would not have been as effective as the lines that were used, and otherwise denies the request.

**REQUEST NO. 26:**

Lafarge had no written hurricane plan in effect on August 27 - 29, 2005 at the Lafarge France Road facility other than the "New Orleans Terminal Hurricane Preparation Checklist" labeled in Group A's Phase I trial exhibits as Defendant's Exhibit 340.

**Answer to Request No. 26:**

LNA denies that the language in the "New Orleans Terminal Hurricane Preparation Checklist" as of August 29, 2005 relating to mooring barges was in effect at the time of Hurricane Katrina.   Some time before Hurricane Katrina, a portion of the written plan had been supplanted by an upgraded "long-lining" procedure that was in effect at the time of Hurricane Katrina but had not yet been reduced to writing, as multiple LNA witnesses have testified.

**REQUEST NO. 27:**

The "New Orleans Terminal Hurricane Preparation Checklist" – labeled in Group A's Phase I trial exhibits as Defendant's Exhibit 340 – was the only written policy in effect on August 27 - 29, 2005 at the Lafarge France Road facility which addresses mooring barges at said facility during hurricanes.

**Answer to Request No. 27:**

LNA admits only that there was no other *written* policy at the facility specifically addressed to mooring of barges during hurricanes, but denies that this policy was "in effect" at the time of the storm,

Attachment F to Barge Plaintiffs' Opposition

and denies that no other such policies were "in effect" at the time of Hurricane Katrina.  Some time before Hurricane Katrina, a portion of the written plan had been supplanted by an upgraded "long-lining" procedure that was "in effect" at the time of Hurricane Katrina but had not yet been reduced to writing, as multiple LNA witnesses have testified.

**REQUEST NO. 28:**

Ed Busch did not advise any of his Lafarge North America superiors on August 27, 2005 that all Lafarge France Road Terminal dockside employees were leaving early on that date.

**<u>Answer to Request No. 28:</u>**

LNA objects to the phrases "leaving early" and "Lafarge North America superiors" as vague and undefined.  LNA refers the plaintiffs to the deposition testimony of Ed Busch, who testified that Jennifer Arnold, an LNA Safety director to whom Mr. Busch does not directly report, advised Mr. Busch that the employees should evacuate in advance of the coming storm.  LNA denies the request to the extent it is inconsistent with the testimony of Mr. Busch.

**REQUEST NO. 29:**

Ed Busch was the highest ranking Lafarge North America employee at the France Road facility on August 27, 2005.

**<u>Answer to Request No. 29:</u>**

Admitted.

**REQUEST NO. 30:**

One or more of Ed Bush's Lafarge North America superiors knew on August 27, 2005 that ING 4727 was at the Lafarge France Road Facility on that date.

**<u>Answer to Request No. 30:</u>**

LNA objects to the phrase "Lafarge North America superiors" as vague and undefined.  LNA refers the plaintiffs to the deposition testimony of Ed Busch, who testified that he told Jennifer Arnold, an LNA Safety director to whom Mr. Busch does not directly report, that he had released the barge after it

Attachment F to Barge Plaintiffs' Opposition

had finished unloading.  LNA denies the request to the extent it is inconsistent with the testimony of Mr. Busch.

**REQUEST NO. 31:**

One or more of Ed Bush's Lafarge North America superiors knew on August 27, 2005 that the tier of barges indicated on Exhibit A was at the Lafarge France Road facility on that date.

**Amended Answer to Request No. 31:**

Denied.

**REQUEST NO. 32:**

No Lafarge France Road facility employee received any instruction from any of Ed Bush's Lafarge supervisors or superiors on August 27, 2005 concerning hurricane mooring preparation of barges at the France Road facility.

**Answer to Request No. 32:**

LNA admits that Ed Busch was the person in charge of mooring barges and hurricane preparation at LNA's facility on the Inner Harbor Navigation Canal on August 27, 2005.  At this point, LNA is unaware of any instruction given to Lafarge France Road employees by any "supervisor" or "superior" of Mr. Busch on August 27, 2005, concerning hurricane mooring preparation of barges.

**REQUEST NO. 33:**

The following alleged by LNA in its Third-Party Complaint of Defendant Lafarge North America, Inc. Against the United States of America, if proven to be true, preexisted Katrina.

A.      From paragraph XIX: "The IHNC levees, retaining walls (including I-walls), and their connections and related structures lacked adequate support to properly resist the hydrostatic pressure placed upon them by the storm surge associated with Hurricane Katrina. These structures were not designed, built or maintained to enable them to withstand forces of even a Cat 3 hurricane like Hurricane Katrina;"

**Answer to Request No. 33.A:**

13

LNA admits that this condition preexisted Katrina, but denies that LNA knew or had reason to know of it before Katrina.

B.    From paragraph XX: "This funnel shape is bound to and did heighten and intensify the storm surge from the north and east into the IHNC."

**Answer to Request No. 33.B:**

LNA admits that it is true that this condition preexisted Katrina, but denies that LNA knew or had reason to know of it before Katrina.

**REQUEST NO. 34:**

The following alleged by LNA in its Third-Party Complaint of Defendant Lafarge North America, Inc. Against the United States of America, if proven to be true, was a matter of public knowledge and public debate before Katrina.

A.    From paragraph XX: "This funnel shape is bound to and did heighten and intensify the storm surge from the north and east into the IHNC."

**Answer to Request No. 34:**

Denied, but LNA reserves the right to amend this response and states that its investigation is ongoing.

**REQUEST NO. 35:**

Lafarge and/or its attorneys have communicated with members of the Arthur Murph family in the year 2007.

**Answer to Request No. 35:**

LNA admits only that, at the request and instance of the Murph family, communications have occurred in 2007 regarding implementation of the settlement previously reached.

**REQUEST NO. 36 (UNNUMBERED IN PLAINTIFFS REQUESTS):**

Admit that the Lafarge France Road facility was unmanned at the time that ING 4727 broke from its moorings.

**Answer to Request No. 36:**

LNA admits that, to the best of its knowledge, its employees had departed the facility on August 27, 2005, after the floodgates had closed, and did not thereafter return, in compliance with evacuation orders.

DATED:  February 1, 2008

                                              Respectfully submitted,

                                              Robert B. Fisher, Jr., T.A. (#5587)
    Derek A. Walker (#13175)
    Ivan M. Rodriguez (#22574)
    Parker Harrison (#27538)
    **CHAFFE MCCALL, L.L.P.**
    2300 Energy Centre
    1100 Poydras Street
    New Orleans, LA 70163-2300
    Telephone:  (504) 585-7000
    Facsimile:  (504) 585-7075
    Fisher@chaffe.com
    Walker@chaffe.com
    Harrison@chaffe.com

      __Mark S. Raffman__
    John D. Aldock
    Richard M. Wyner
    Mark S. Raffman
    **GOODWIN PROCTER LLP**
    901 New York Avenue, N.W.
    Washington, DC 20001
    Telephone:  (202) 346-4240

    Daniel A. Webb (#13294)
    **SUTTERFIELD & WEBB, LLC**
    Poydras Center
    650 Poydras Street, Suite 2715
    New Orleans, LA 70130
    Telephone:  (504) 598-2715

    ***Attorneys for Lafarge North America Inc.***

LIBW/1667717.1

Attachment F to Barge Plaintiffs' Opposition

## **Certificate of Service**

I do hereby certify that I have on this 1st day of February, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding by e-mail.


_____/s/ Mark S. Raffman_____