UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * CIVIL ACTION<br>*<br>* NO. 05-4182<br>* |
| PERTAINS TO: MRGO | * SECTION "K" (2)<br>*<br>*<br>* JUDGE DUVAL<br>*<br>* MAGISTRATE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION
TO COMPEL COMPLIANCE WITH THIRD-PARTY SUBPOENA**

Washington Group International, Inc. ("WGII"), through undersigned counsel, respectfully submits the following memorandum in support of its Motion to Compel Compliance with Third-Party Subpoena. On November 19, 2007, WGII issued a third-party subpoena to McElwee Brothers, Inc (hereinafter "McElwee"). (A copy of the subpoena and executed return of service hereto collectively as Exhibit A.) In response to the subpoena, Melvin M.L. McElwee, Sr. indicated that he has responsive documents in his possession, custody, or control, but has refused either to produce copies of those documents to WGII or to allow WGII's counsel to review said documents on-site. Because McElwee has no valid basis for refusing to comply with WGII subpoena, the Court should enter an order compelling McElwee to comply with the subpoena immediately.

I.     **STATEMENT OF THE FACTS**

Dr. Robert G. Bea, who has been retained as a proposed expert by plaintiffs in the consolidated litigation, is identified as an author of the report issued by the Independent Levee Investigation Team ("ILIT").  *See* Rec. Doc. 3617; Ex. B at Cover Page.  In its Final Report dated July 31, 2006, ILIT states that "persistent reports of underseepage and ponding of waters along this IHNC frontage [along or near what has been referred to as the South Breach] at the west edge of the Lower Ninth Ward, and contractor's significant problems with dewatering of excavations along this same frontage, all bespoke of high lateral permeability within these strata."  Excerpts of ILIT Final Report, attached hereto as Exhibit B, at 6-12.  The ILIT Report identifies McElwee Brothers as a source of the aforementioned reports:

> Demonstration that underseepage occurred at [the site of the breaches of the floodwalls on the East Bank of the Industrial Canal]....can also be based on the observed difficulties encountered by McElwee Construction [sic] in dewatering an excavation near the breach site immediately to the north (due to massive underseepage flow through the marsh depositions that were not adequately cut off at that site either.

*Id*. at 6-15.  The ILIT Report further states:  "The site [of what has been referred to as the North Breach] has a well-documented history of underseepage problems; McElwee Construction had great difficulty dewatering an excavation at this site during earlier construction, and residents of the neighborhood had also previously reported problems with seepage at the inboard toe."  *Id*. at 6-18.  The ILIT Report clearly relied upon information provided by McElwee in reaching its conclusions as to the cause, timing, and mode of failure of the floodwalls adjacent to the East Bank Industrial Area.  The MRGO Plaintiffs in turn rely upon ILIT as a basis for the allegations against WGII.  In fact, the MRGO Plaintiffs have referred WGII back to the ILIT Report in response to no fewer than 70 separate discovery requests, including interrogatories explicitly seeking the factual basis for Plaintiffs' allegations against WGII, without identifying where in the

nearly 1,000-page Report Plaintiffs rely. *See, e.g.*, Excerpts from Plaintiffs' Response to MRGO Defendants' First Set of Joint Interrogatories, Requests for Production of Documents and Requests for Admissions to Plaintiffs Regarding Common Liability Issues, attached hereto at Ex. C, at Response to Interrogatory Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, 20, 22, 23, 25, 26, 27, 28, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, and 43; and Response to Document Request Nos. 1, 4, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 26, 27, 28, 29, 31, 32, 33, 34, 35, 38, 47, 48, 49, 53, 54, 55, 56, 57, 58, 60, 61, and 62. As such, this information is clearly relevant and discoverable, and the only source of the information sought in WGII's subpoena to McElwee, other than ILIT[1], is McElwee itself.

To avail itself of this relevant information, on November 19, 2007, WGII, acting pursuant to Section IV(B)(3) of Case Management Order No. 4, served a third-party subpoena on McElwee Brothers, Inc. In its subpoena, WGII requests McElwee to produce:

1. communications [McElwee has] had with any member of [ILIT], including any statements provided by you to ILIT;
2. documents [McElwee] provided to any member of [ILIT];
3. documents you received from any member of [ILIT];
4. documents and other materials requested and/or shared with [ILIT];
5. documents and other materials requested or shared with the Interagency Performance Evaluation Task Force ("IPET");
6. documents reflecting any dewatering procedures conducted or attempted by you or anyone acting on your behalf, along the Industrial Canal, particularly the East Bank Industrial Area between Florida and Claiborne Avenues along the east side of the Industrial Canal;
7. documents reflecting the location of any excavations you, or anyone acting on your behalf, made along the Industrial Canal, particularly the East Bank Industrial

---

[1] WGII has issued a subpoena to ILIT through the United States District Court for the Northern District of California. (ILIT is led by and funded in part by the University of California at Berkeley.) Plaintiffs have since filed a motion to quash the subpoena issued by WGII to ILIT. The motion is currently before the Honorable Phyllis Hamilton. *See In re Katrina Canal Breaches Consol. Litig.*, Civil Action No. 08-cv-80007MISC (PJH).

        Area between Florida and Claiborne Avenues along the east side of the Industrial Canal;

8. documents reporting underseepage, ponding, or pooling of waters along the Industrial Canal, particularly the East Bank Industrial Area between Florida and Claiborne Avenues along the east side of the Industrial Canal;

9. documents recording or reflecting efforts by you or anyone acting on your behalf to remedy or otherwise limit underseepage, ponding, or pooling of waters along the Industrial Canal, particularly the East Bank Industrial Area between Florida and Claiborne Avenues along the east side of the Industrial Canal;

10. reports or other documents evidencing complaints or expressions of concern from residents of the Lower Ninth Ward and/or St. Bernard Parish neighborhoods concerning underseepage, ponding, or pooling of waters along the Industrial Canal, particularly the East Bank Industrial Area between Florida and Claiborne Avenues along the east side of the Industrial Canal;

11. documents referring to or evidencing sink holes along the Industrial Canal, particularly the East Bank Industrial Area between Florida and Claiborne Avenues along the east side of the Industrial Canal;

12. documents reflecting the identities of any person or entity who made or threatened to make a claim against you for any damage alleged to have been caused during Hurricane Katrina;

13. documents reflecting the identities of any residents of the Lower Ninth Ward and/or St. Bernard Parish with whom you, or anyone acting on your behalf, have settled or otherwise resolved litigation or anticipated litigation against you in connection with Hurricane Katrina, as well as the amounts of any such settlement or resolution.

        On December 19, 2007, Mr. McElwee faxed to undersigned counsel Responses to Subpoena Requiring the Production of Documents Dated November 18, 2007, on behalf of McElwee.  (A copy of the Responses are attached hereto as Exhibit D.)  In response to Request Nos. 2 and 3, McElwee indicated that it had photos in its possession, custody, or control, and that it would e-mail undersigned counsel upon receipt of an e-mail address.  In response to Request No. 6, McElwee stated that it "had not conducted or attempted to conduct dewatering procedures along the Industrial Canal's east bank between Florida and Claiborne avenues.  [McElwee] has conducted dewatering procedures along the Industrial Canal's east bank north of Florida and Claiborne avenues.  [McElwee] **objects** to the production of documents associated procedure as

- 4 -

a result of such request subjecting [McElwee's] director, officers, and employees to undue burden (labor, time, reproduction costs)." Emphasis in original. McElwee gives similar corresponding answers to Request Nos. 7 and 8.

On December 20, 2007, undersigned counsel contacted Mr. McElwee regarding his responses. E-mail Correspondence between William D. Treeby, Esq. and Melvin M.L. McElwee, Sr., dated December 20-21, 2007, attached hereto as Exhibit E. In his e-mail, counsel for WGII offered to provide the labor necessary to review the documents, to bear all expenses pertaining to the reproduction of documents, and to review the documents at the time and location of Mr. McElwee's choosing. On that same date, counsel for WGII also left Mr. McElwee a voicemail to that effect. On December 21, 2007, Mr. McElwee responded that he had received Mr. Treeby's earlier message, and that he would respond shortly. *Id.* On that same date, Mr. Treeby replied by e-mail, emphasizing WGII's need to review the documents in short order due to the deadlines imposed by Case Management Order No. 4. *See* Exhibit F. On December 21, 2007 at 2:08 p.m., Mr. McElwee responded via e-mail, stating that WGII's subpoena "would be expedited, and more complete if you contacted our company's bonding company's attorney", Mr. Lloyd Shields, Esq.[2] *Id.* He also referred undersigned counsel to Alan D. Schulz, Esq., whom he identified as an employee of the New Orleans District of the U.S. Army Corps of Engineers.

Counsel for WGII contacted Mr. Shields, who indicated that neither he nor his client could respond to the subpoena issued to McElwee by WGII and that neither he nor his firm

---

[2] Upon investigation, WGII learned that Mr. Lloyd Shields was counsel for Great American Insurance Company in *Great Am. Ins. Co. v. McElwee Bros. Inc., et al.*, Civil Action No. 03-2793 (Duval, J.), a case which arose out of the work performed and alleged not performed by McElwee at or near the area apparently north of the Florida Avenue Bridge and the Intracoastal Waterway.

represented McElwee.  *See* Exhibit G.  On January 2, 2008, Counsel for WGII contacted Mr. McElwee via e-mail and informed him of Mr. Shields' response.  Once again, undersigned counsel reiterated the importance of securing compliance with the subpoena, and once again stated that WGII would bear all costs to copy the responsive documents.

On January 3, 2008, Mr. McElwee responded via e-mail.  Although McElwee did produce additional photos, he stated that "if you are not satisfied at our initial response to your request for production of documents, I invite you to seek clarification (secure production of the subpoena through court)."  He further instructed counsel for WGII to contact Mr. Schultz at the Army Corps of Engineers.  *See* Exhibit H.  That same date, undersigned counsel once again stated that WGII would provide the labor to review the documents, would bear all copying costs, and would do so at the time and location of Mr. McElwee's choosing.  *See* Exhibit I.  To date, Mr. McElwee has neither produced the documents to WGII nor provided a date, time, and location for WGII to review the documents.

Mr. McElwee has stated that he has documents in his possession, custody, or control that are responsive to the subpoena issued by WGII.  Because he has repeatedly refused to produce the documents or to provide to WGII a date and time on which it can review and copy the documents, the Court should enter an order mandating that Mr. McElwee comply with the subpoena in short order.

II. **LAW AND ARGUMENT**

Because the documents sought by WGII are clearly discoverable and within the possession, custody, or control of McElwee, the Court should enter an Order compelling McElwee to comply with the subpoena issued by WGII.  Rule 26 of the Federal Rules of Civil Procedure permits parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense to any party."  As noted above, the ILIT report identifies

906508v.1

McElwee as a source of information upon which ILIT relied in drawing its conclusions regarding the failure of the floodwalls adjacent to the East Bank Industrial Area. Plaintiffs, in turn, have relied on ILIT specifically in support of their claims against WGII. Through his written responses to WGII's subpoena, Mr. McElwee has plainly stated that McElwee Brothers, Inc. has *not* "conducted or attempted to conduct dewatering procedures along the Industrial Canal's east bank between Florida and Claiborne avenues," the area where WGII worked along the Industrial Canal. In his subsequent e-mail correspondence and telephone conversations with undersigned counsel, Mr. McElwee has repeatedly admitted that he has responsive documents in his possession, custody, or control concerning the area where McElwee Brothers has conducted work north of Florida Avenue. Mr. McElwee's only stated basis for refusing to produce these documents is the purported "undue burden" consisting of labor, time, and reproduction costs. *See, e.g.*, Ex. D at Response No. 8. Yet this objection is utterly baseless.

Non-parties resisting compliance with a subpoena duces tecum bear the burden of proving that the subpoena imposes an "unreasonable or oppressive" burden upon the non-party. *See Auto Club Family Ins. Co. v. Ahner*, 2007 WL 2480322 (E.D. La. 2007); *see also Williams v. City of Dallas*, 178 F.R.D. 103, 109 (The party resisting discovery "must meet a heavy burden of establishing that compliance with the subpoena 'would be unreasonable and oppressive'.") Mr. McElwee cannot satisfy this burden. Counsel for WGII has informed Mr. McElwee on multiple occasions that WGII, not McElwee, will provide all labor necessary to review the documents, pay all expenses for reproducing them, and will inspect the documents at the date and time of Mr. McElwee's choosing. Compliance with the subpoena would therefore place, at most, a minimal burden upon Mr. McElwee. Furthermore, Mr. McElwee's objection is undercut by the fact that he has apparently already provided this information to ILIT.

906508v.1

Even if one were to assume for the sake of argument that WGII's subpoena placed an undue burden upon McElwee, this burden is clearly outweighed by WGII's demonstrated need for the documents. "Whether a subpoena places an undue burden within the meaning of Federal Rule 45(c)(3)(A)(iv) usually raises a question as the reasonableness of the subpoena. The determination of a subpoena's reasonableness requires a court to balance the interests served by demanding compliance against the interests served by quashing it." *Seabulk Towing, Inc. v. Oceanografia S.A. de C.V.*, 2002 WL 188419 (E.D. La. 2002). WGII has been named as a defendant in dozens of suits alleging that its actions caused or contributed to the failure of the floodwalls adjacent to the East Bank Industrial Area. Mr. McElwee's contention that McElwee's work was limited to areas north of Claiborne and Florida avenues does not diminish WGII's need to review McElwee's documents. ILIT cited McElwee as a source of information upon which it relied in reaching its conclusions regarding the cause, time and mode of failure to the floodwall on the East Bank of the Industrial Canal [failures that the MRGO Plaintiffs have attributed to WGII], and McElwee's documents therefore are relevant to the claims asserted against WGII and its defenses thereto. The benefit of WGII to obtaining these documents clearly outweighs any burden placed upon McElwee. The Court, therefore, should order Mr. McElwee to comply with the subpoena issued by WGII in short order.

### III.  CONCLUSION

For the foregoing reasons, the Court should order McElwee Brothers, Inc. to comply with the subpoena issued by WGII in short order.

906508v.1

Dated:  February 13, 2008

Respectfully submitted,

/s/ Heather S. Lonian
William D. Treeby, 12901
Carmelite M. Bertaut, 3054
Heather S. Lonian, 29956
   Of
STONE PIGMAN WALTHER WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:   (504) 581-3361

Attorneys for Washington Group
International, Inc., a division of URS
Corporation

Of counsel

Adrian Wager-Zito
Shannon M. Kasley
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone:  (202) 879-3891
Facsimile:  (202) 626-1700

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum in Support of Motion to Compel Compliance with Third-Party Subpoena has been served upon all counsel of record by electronic notice via the Court's CM/ECF system, and upon McElwee Bros. Inc. and Melvin M.L. McElwee, Sr. via personal service this 13th day of February, 2008.

/s/Heather S. Lonian

906508v.1