UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION NUMBER:  05-4182 "K"(2) JUDGE Duval MAG. Wilkinson |
| PERTAINS TO:  MRGO, Robinson (No. 06-2268) | |

## PLAINTIFFS' REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.    FACTS ..................................................................................................5

    A.    Plaintiffs Seek Recovery For Their Damanges Caused By The MR-GO, Which Was Unlrelated To The LPV ......................................5

    B.    Defendant Admits That The Army Corps Failed to Construct The LPV In Accordance With Congressional Mandates ...............................7

    C.    Defendant Concedes That The LPV Was Incomplete In August, 2005—Forty Years After Congress Approved The Project....................7

III.    ARGUMENT .........................................................................................8

    A.    The United States Is Not Immune From Damage Claims Based On Non-Flood Control Related Waters Propelled Or Exacerbated By The MR-GO .......................................................................................8

    B.    *Graci* Remains Controlling Authority Notwithstanding The LPV .........10

    C.    The LPV's Performance Is Not At Issue Here........................................12

    D.    The Government's Tortured Reading of *Central Green* Has Been Properly Rejected By This Court .........................................................13

    E.    This Court's Prior Rulings Defeat Immunity...........................................14

    F.    Immunity Is Not Available Where, As Here, Plaintiffs Were Injured, In Part, Because The Army Corps Deviated From Approved Project Dimensions Without Satisfying Administrative Prerequisites...................................................................................15

    G.    Defendant Cites No Law That The Government Is Immune From Liability For Damages When Plaintiffs Are Injured, In Part, Because Of The Incompleteness Of A Flood Control Project................18

IV.    CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Allison v. Froehlke*
  470 F.2d 1123 (5th Cir. 1972) .................................................. 15

*Carpenter v. Wichita Falls Indep. School Dist.*
  44 F.3d 362 (5th Cir. 1995) ..................................................... 8

*Central Green Co. v. United States*
  531 U.S. 435 (2001)................................................... 3, 13, 14, 19

*Creppel v. U.S. Army Corps of Eng'rs*
  670 F.2d 564 (5th Cir. 1982) .................................................. 15

*Environmental Defense Fund, Inc. v. Corps of Engineers of U.S. Army*
  470 F.2d 289 (8th Cir. 1972) .................................................. 17

*Environmental Defense v. U.S. Army Corps of Engineers*
  515 F.Supp.2d 69 (D.D.C. 2007) ............................................ 17

*Graci v. United States*
  301 F. Supp. 947 (E.D. La. 1969) ........................................... 10

*Graci v. United States*
  456 F.2d 20 (E.D. La. 1971) ........................................... 2, 10, 14

*In re Katrina Canal Breaches Consol. Litig.*
  471 F.Supp.2d 690 (E.D. La. 2007)............................. 2, 3, 4, 9, 13, 14

*James v. United States*
  478 U.S. 597 (1986)............................................................. 14

*Krim v. BancTexas Group, Inc.*
  989 F.2d 1435 (5th Cir. 1993) .................................................. 5

*Louisiana Crawfish Producers Ass'n-West v. Rowan*
  463 F.3d 352 (2006)............................................................. 17

*Missouri v. Ashcroft*
  526 F. Supp. 660 (W.D. Mo. 1980) .......................................... 15

*Mocklin v. Orleans Levee District.*
  877 F.2d 427 (5th Cir. 1989.................................................... 19

*Sanko Steamship Co., Ltd. v. United States*
    272 F. 3d 1231 (9th Cir. 2001) ................................................................. 13

*Sierra Club v. Espy*
    38 F.3d 792 (5th Cir. 1994) ..................................................................... 17

*Thomas v. Texas Dept. of Criminal Justice*
    297 F.3d 361 (5th Cir. 2002) .................................................................... 20

*United States v. 2,606.84 Acres of Land*
    309 F. Supp. 887 (N.D. Tex. 1969) ......................................................... 15

**Statutes**

28 U.S.C. § 2680(a) ................................................................................................ 4

33 U.S.C. § 702c ................................................................................................... 2

40 C.F.R. §1508.16 ............................................................................................. 17

42 U.S.C. § 4332(2)(C) ....................................................................................... 17

5 U.S.C. § 552b(b) ............................................................................................. 18

## I.      INTRODUCTION

Plaintiffs have moved for summary adjudication as to the second affirmative defense (§ 702c immunity) on three distinct grounds:

1.      Section 702(c) is inapplicable because Plaintiffs' claims are based on damages not caused by the performance of the Lake Pontchartrain and Vicinity Hurricane Protection Project ("LPV" or "LPVHPP") but caused by the Mississippi River Gulf Outlet ("MR-GO"), which Defendant has conceded is not a flood control project; and to the extent that some of Plaintiffs' damages may be attributable to the failure of the LPV to contain flood waters, this Court has determined (and the Government has conceded) that damages can be segregated.

2.      The Government is not entitled to Section 702c immunity because it is undisputed that the flood control structures were not designed or constructed in accordance with the Congressional authorization of the LPV in the Flood Control Act of 1965, requiring the use of the Standard Project Hurricane ("SPH") design criteria for the hurricane flood protection system.

3.      The Government is not entitled to Section 702c immunity because it is undisputed that the Congressionally-mandated hurricane flood protection system was still substantially incomplete by the time of Hurricane Katrina, thereby not affording Greater New Orleans the level of hurricane protection mandated by Congress forty years earlier.

The Government has failed to establish that the *material* facts necessary for determining Plaintiffs' Motion for Summary Adjudication are genuinely disputed, including the fact that (1) Plaintiffs' damages claims are limited to flood damages attributable to the MR-GO, (2) the MR-GO was never a flood control project and was not absorbed into the LPV, (3) the Army Corps did not build the LPV consistent with SPH criteria in eight critical respects, and (4) the LPV was not complete at the time of Hurricane Katrina.  The lack of any factual dispute as to these issues

1

sets the stage for the Court to rule as a matter of law that summary adjudication is appropriate here.

With respect to the first basis for summary adjudication, this Court has already ruled that Plaintiffs are not alleging damages caused by the performance of the LPV flood works. *See In re Katrina Canal Breaches Consol. Litig.*, 471 F. Supp.2d 690, 694 (E.D. La. 2007) ("*In re Katrina*"). Nevertheless, the Government, ignoring the well pled allegations that this Court has previously acknowledged, seeks to reframe the issue as not whether Plaintiffs base their "claims on the MR-GO rather than the LPV . . . [but] whether Plaintiffs' alleged 'damage' resulted 'from' or was caused 'by' the Katrina 'flood' or its 'flood waters.' 33 U.S.C. § 702c." Defendant United States' Opposition to Plaintiffs' Motion for Summary Adjudication ("Opposition") at 2. According to the Government, "[i]t is *this* nexus, the causal nexus set forth in the text of § 702c, that defines the scope of the United States' immunity." *Id.* (emphasis in original). This is a thinly disguised attempt to resurrect Defendant's discredited claim that it is entitled to immunity for all floodwaters, regardless of the cause, and this Court should accordingly reject this unsubstantiated contention for *the fifth time*.

Alternatively, the Government seeks to defeat summary adjudication by trying to invent a connection between Plaintiffs' damages and a flood control project. Ignoring the sharply disputed facts about the nature of the flood works constructed along the MR-GO after Hurricane Betsy, the Government—despite earlier binding concessions to the contrary—attempts to convert the MR-GO from an admitted navigational waterway (which is not immune) that existed at the time of *Graci v. United States*, 456 F.2d 20 (5th Cir. 1971) into an immune project that is "inherently and inextricably intertwined" with the LPV's flood works. Opposition at 16. The Government offers no evidence to support this putative connection because none exits.

Ultimately, summary adjudication is appropriate on the first ground because the Government stubbornly ignores the fact that the Plaintiffs' case is based on the MR-GO, which killed 64,000 acres of storm surge buffering wetlands, created a deadly "funnel effect," and ultimately increased storm surge levels by at least three feet that spelled the difference between minor and catastrophic flooding. *See* Plaintiffs' Corrected Revised Fact Nos. 7-10, 18, 19. Correctly interpreting *Central Green Co. v. United States,* 531 U.S. 435 (2001), this Court rejected the Government's "all or nothing approach" to immunity, ruling that Section 702c does not apply to the extent that Plaintiffs can segregate their non-flood control related damages caused by the MR-GO. *See In re Katrina,* 471 F.Supp.2d at 694-95. The Government has failed to offer evidence negating the fact that a portion of Plaintiffs' damages are claimed to be attributable to the amplified and supercharged storm surge waters generated by the MR-GO.

With respect to the second basis for summary adjudication, Defendant claims that Congress did not really give the Army Corps an explicit mandate to follow a prescribed course of conduct with respect to the LPV's design and construction, and in any event, "the Army Corps has broad latitude to revise plans after authorization has been granted." Opposition at 20. In fact, Congress could not have been clearer that it wanted Greater New Orleans protected at the SPH level, the Army Corps never secured Congressional approval to deviate substantially from the SPH flood protection system *in eight critical respects* that totally destroyed the project's goals, and the cases cited by the Government in fact support Plaintiffs' position.

Finally, with respect to the third basis for summary adjudication, the Government does not dispute that the LPV was incomplete at the time of Hurricane Katrina or that its incompletion caused catastrophic flooding as found by IPET. *See* Plaintiffs' Corrected Revised Fact Nos. 38-46. Defendant argues that *Central Green* forecloses this argument because the Supreme Court

expressly rejected the "notion that 'the scope of the immunity conferred' by § 702c is determined by 'the character of the federal project' . . . ." Opposition at 19. Indeed, *Central Green* supports Plaintiffs' position. First, "the character of the federal project" refers to the function of the project (flood control or some other purpose like irrigation). Second, it was implicit in the Supreme Court's unanimous ruling that the Government is immune from damages stemming from the inability of a flood control project to contain storm surge *in excess of the system's design capacity*. Here, however, the LPV was never built to its design capacity, thereby not providing the level of hurricane protection mandated by Congress, and it was that conspicuous incompleteness that contributed to the Plaintiffs' damages.

Moreover, the Government fails to address the compelling legislative history of Section 702c showing that Congress struck a bargain in enacting the statute: the harsh immunity bar would attach once the flood works were in fact completed. In other words, to the extent that Government is claiming that Section 702c applies here (and *Graci* is no longer controlling) because the Army Corps built flood works authorized by the LPV, that argument is unavailing because the Army Corps never in fact built them in "what proved to be *a fifty-year exercise in ineptitude and gross economic and technological mismanagement*." January 30, 2008 Levee Dismissal Order and Reasons (Doc. No. 10984) at 3, n.2 ("Levee Order") (emphasis added).[1]

---

[1] In a footnote buried at the very end of its brief, the Government improperly argues that "Plaintiffs' claims are barred by 28 U.S.C. § 2680(a)." Opposition at 23 n.7. This is the due care/discretionary function immunity claim that the Court rejected in denying the Government's initial Motion to Dismiss. *See In re Katrina*, 471 F.Supp.2d at 696-706. The Court ordered that Plaintiffs were entitled to discovery on these issues. *Id.* at 706. That discovery is currently underway. Moreover, the Court stated in the Revised Robinson CMO No. 1 (Doc. 3603) (page 2) that the only issue that would be advanced for early summary judgment was § 702c immunity. This decision was reiterated in the December 4, 2007 conference call when the briefing and hearing schedule for the present motions was finalized. *See* Document 9343. Therefore, the Government's stealth attack on immunity grounds other than § 702c is procedurally out of order and should be rejected.

## II.      FACTS

In its Opposition, the Government fails to genuinely dispute any material fact that would preclude a grant of summary adjudication.  As discussed in the accompanying Plaintiffs' Reply To Defendant United States' Responses To Plaintiffs' Corrected Revised Statement of Undisputed Facts ("Plaintiffs' Reply Facts"), Rule 56.2 of the Local Rules for the Eastern District of Louisiana required Defendant to specify *facts* establishing a factual dispute. Conclusory statements or mere legal arguments do not satisfy this mandate.  *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993).

Accordingly, Defendant as a matter of law has conceded numerous facts in Plaintiffs' Corrected Revised Statement of Undisputed Facts ("Plaintiffs' Revised Facts").  Some are expressly uncontested.  *See* Plaintiffs' Reply Facts Nos. 1, 2, 4, 5, 15, 24, 25, 40, 43, 45, 46, 49, 50.  Others are deemed uncontested because the Government has violated Local Rule 56.2 by making legal arguments or by not offering specific facts to contest Plaintiffs' statement.  *See, e.g.*, Plaintiffs' Reply Facts Nos. 3, 6, 27, 28, 29, 31, 32, 33, 35, 38, 42, 47, 48.  In sum, by either (1) not identifying contradictory facts, (2) omitting any explanation as to how Plaintiffs' evidence fails to support the statements in Plaintiffs' Corrected Revised Statement of Facts, (3) misstating evidence, or (4) inappropriately basing its claim of a disputed fact on nothing more than a legal argument, Defendant must be deemed to have conceded the factual issues discussed below.

### A.      Plaintiffs Seek Recovery For Their Damages Caused By The MR-GO, Which Was Unrelated To The LPV

Defendant admits that the MR-GO had no flood control features when constructed, the MR-GO was never part of the LPV, and Defendant has disavowed any claim that the MR-GO "was either (1) related to the national flood control program, (2) a 'constituent component' of the LPVHPP, or (3) morphed into a hybrid flood control project/navigational aid project."

Plaintiffs' Reply Facts Nos. 1-3.

Defendant also acknowledges that Plaintiffs' claims are not predicated "on levee breaches or failures or overtopping or the defective design, construction, operation and/or maintenance of levees, flood protection works, or any other Government structures or facilities intended for hurricane flood control protection, and their claims against the United States do not relate to a federal flood control project or its design, construction, operations or maintenance or its performance during Hurricane Katrina." Plaintiffs' Reply Fact No. 52.

Defendant concedes—and some of its cited evidence supports—the fact that (1) the MR-GO created the "funnel effect"; (2) the navigation channel "created a . . . pathway for . . . storm-driven tides to flow direct from Breton Sound to Lake Borgne and Lake Pontchartrain and for hurricane storm surge to be efficiently delivered into the heart of New Orleans"; and (3) the Army Corps had been warned about the "funnel effect." Plaintiffs' Reply Facts Nos. 7-9.

Defendant also fails to refute Plaintiffs' facts establishing that the Army Corps was aware that the construction of the MR-GO would destroy substantial tracts of storm surge buffering wetlands and cypress forests, and that this destruction contributed to the flooding of Greater New Orleans. Plaintiffs' Reply Facts Nos. 14-19. Defendant also omits any facts that rebut the evidence establishing that in designing the MR-GO, the Army Corps was aware that ship wakes would cause erosion of the MR-GO's banks, yet it failed to incorporate bank protection in the MR-GO design. Plaintiffs' Reply Facts Nos. 20, 21. As a result, erosion caused the widening of the MR-GO which led to "(1) the breaching of the Lake Borne shoreline adjacent to the MR-GO which allowed storm surge within Lake Borne to dump directly into the MR-GO; (2) the enormous loss of marshland adjacent to the channel; and (3) shoaling within the MR-GO." Plaintiffs' Reply Facts Nos. 22, 23.

**B.      Defendant Admits That The Army Corps Failed To Construct
The LPV In Accordance With Congressional Mandates**

Defendant also admits that the Army Corps failed to construct the LPV in accordance

with Congressional mandates, including (a) the construction of alleged levees with inadequate

materials composed of highly erodible and water pervious sands and shells (Plaintiffs' Reply

Facts Nos. 11-13); (b) failure to design and build a hurricane flood protection system that would

provide protection against either a Standard Project Hurricane ("SPH") or the Probable

Maximum Hurricane ("PMH") (Plaintiffs' Reply Facts Nos. 25, 26, 29, 30, 36, and 51);

(c) construction of putative flood control structures with crowns that were substantially below

the Army Corps' own design levels (Plaintiffs' Reply Fact No. 27); (d) failure to armor the

alleged levees or to provide slope protection (Plaintiffs' Reply Facts Nos. 28, 30); (e) failure to

consider or factor in subsidence in the design and construction of the LPV's components

(Plaintiffs' Reply Fact No. 37); and (f) the use of the wrong or inaccurate vertical datums when

designing components of the LPV (Plaintiffs' Reply Fact No. 43).

**C.      Defendant Concedes That The LPV Was Incomplete In August,
2005—Forty Years After Congress Approved The Project**

Finally, Defendant acknowledges that the Army Corps (a) failed to construct or complete

a hurricane flood protection system—as required by Congress—by August, 2005 when

Hurricane Katrina (Plaintiffs' Reply Facts Nos. 34, 35, 38-46); (b) failed to warn the residents of

Greater New Orleans about the inadequacy of the Greater New Orleans Hurricane Protection

System ("HPS") (Plaintiffs' Reply Fact No. 47); and (c) misled the resident's of Greater New

Orleans about the efficacy of the Greater New Orleans HPS (Plaintiffs' Reply Fact No. 48).

### III.    ARGUMENT

#### A.  The United States Is Not Immune From Damage Claims Based On Non-Flood Control Related Waters Propelled Or Exacerbated By The MR-GO

Refusing to accept that Plaintiffs allege that their damages were caused by non-flood control related waters propelled or exacerbated by the MR-GO, the Government recasts Plaintiffs' case by asserting that "Plaintiffs *do* allege that their damages were caused by waters related to a flood control project."  Opposition at 4 (emphasis in original).  Why?  Because "the undisputed facts show that the flood *was* related to the LPV.  Plaintiffs did not suffer any damage other than the damage caused by the flood and its floodwaters, which the LPV was unable to control."  *Id.* (emphasis in original).  This is sheer sophistry.

First, Plaintiffs have consistently alleged that their damages relate to the MR-GO and not to the performance of the LPV during Hurricane Katrina. The Government must accept these well pled allegations.  *Carpenter v. Wichita Falls Indep. School Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) (collecting cases) ("The plaintiff is . . . the master of her complaint.")  Whether Plaintiffs can prove their claims must await trial; nevertheless, as this Court has noted, Plaintiffs have sufficiently plead *their* MR-GO based claims.  *See* Plaintiffs' Corrected Revised Fact No. 52.

Second, this Court has acknowledged that Plaintiffs are not seeking recovery for anything other than MR-GO related damages.  In rejecting the Government's mantra that "the waters which caused the damage were flood waters and the United States Government is therefore immune," the Court stated:

> [T]his approach ignores the pleadings presented.  Plaintiffs are not seeking damages for the failure of the levees or flood projects.  Plaintiffs contend that MRGO has absolutely nothing to do with a flood control project.  Plaintiffs are seeking damages for the effects of the waters in the MRGO with respect to the decimation of the wetlands over a long period of time which in turn created the hazard which resulted in the flooding which Plaintiffs maintain could not have been controlled by any flood control project.

*In re Katrina*, 471 F.Supp.2d at 694; *see also id.* at 690 ("Plaintiffs argue that they seek damages solely for the defalcations of the Army Corps with respect to the MRGO, not the failure of any flood control project."); Plaintiffs' Reply Fact No. 52.

Third, to the extent that the Government claims that Plaintiffs have alleged that the increased surge of at least three feet—caused by the MR-GO—overtopped and undermined the alleged flood works along the MR-GO and IHNC (Opposition at 4, n.1), the outcome remains the same. The pertinent question is what do Plaintiffs allege were the reasons why these ostensible flood works overwhelmed? *Because of the MR-GO.* In fact, the Government's own expert Dr. Robert Dalrymple attributes over three feet of additional storm surge against Reach 2 because of the destroyed adjacent wetlands. Plaintiffs' Reply Fact No. 19; *see also id.* Nos. 9 & 10.

Fourth, on four prior occasions, this Court has rejected the Government's expansive interpretation of Section 702c that immunity attaches whenever and wherever flood waters cause damage—regardless of the reason for the release of those floodwaters or any relationship to a flood control project. *See* Plaintiffs' Opposition To Defendant's Motion To Dismiss, Or, In The Alternative, Motion For Summary Judgment at 6-10. As the Court stated succinctly: "Clearly there are circumstances where the United States may be held liable for flood water caused by acts of omission or commission." Document 6194 at 5.[2] The Court should reject this argument for the fifth time. *See* Levee Order at 29 ("This Court has previously rejected the United States' contention that it is immune from damages for any floodwater regardless of its source . . . *and*

---

[2] The Court has cited several examples of flooding that would not warrant immunity: a Navy vessel negligently breaking a levee or colliding into a dam, a Government employee dynamiting a levee, and the Government breaking a water main. *See In re Katrina*, 471 F.Supp.2d at 695; Document 6194 at 3. In addition to the MR-GO causing flood damages, Plaintiffs are also alleging that Army Corps negligently undermined the I-walls at the IHNC during a site clearing project, thereby contributing to the two breaches on the west side that led to catastrophic flooding of the Lower Ninth Ward. *See* Plaintiffs' Reply Fact No. 53.

*will continue to do so until guided by a higher court*.") (emphasis added).

### B.   *Graci* Remains Controlling Authority Notwithstanding The LPV

Once again, the Government seeks to circumvent *Graci*'s holding that Section 702c is inapplicable "where, as here, the plaintiffs allege that they have suffered floodwater damage as a result of the negligence of the United States unconnected with any flood control project." *Graci v. United States,* 456 F.2d 20, 27 (E.D. La. 1971); *see also Graci v. United States*, 301 F. Supp. 947, 951 (E.D. La. 1969). As it has in the past, Defendant post-*Graci* claims that the construction of the LPV and its involvement in the flooding caused by Hurricane Katrina vitiates the decision's controlling authority. Opposition at 5. Try as it may, however, the Government cannot evade *Graci* with such legerdemain.

Nothing that has occurred in the intervening 37 years -- including the existence of the LPV -- requires a different outcome here.[3] Like *Graci*, Plaintiffs in *Robinson* are alleging that their damages are "unconnected with any flood control project," *i.e.*, they were damaged not because of anything related to the LPV but because the negligently designed and constructed MR-GO caused increased and intensified storm surge that contributed to the catastrophic flooding. *See* Section III.A, *supra.*  In both cases, the alleged "injuries involved were the result

---

[3] In discussing the LPV, the Government asserts that "flood protection embankments were built along the MR-GO and GIWW." Opposition at 6. In a lengthy footnote, Defendant claims that Plaintiffs have conceded that these are "levees" (presumably the flood works authorized by the LPV) and chastises Plaintiffs for contending that these structures do not qualify as "levees" for purposes of § 702c immunity. Opposition at 6-7, n.2. To set the record straight, Plaintiffs have *never* conceded that these structures are "levees" or constitute the structures mandated by Congress for the LPV. As this Court has ruled, Plaintiffs have not made any "'judicial admission' that there is a levee along Reach 2 that would comport with the definition of a flood control project for § 702c immunity. . . . This issue has been vigorously contested from the inception of this matter . . . ." Document 6194 at 5-6. Furthermore, Plaintiffs produced substantial evidence that, for a variety of reasons, establishes that the structures built for the LPV do not qualify as hurricane flood protection works as mandated by Congress in the Flood Control Act of 1965 that would trigger § 702c immunity. *See* Plaintiffs' Opposition to Defendant's Motion To Dismiss, Or, In The Alternative, Motion for Summary Judgment at 2-6; Plaintiffs' Response To Defendant's Statement of Undisputed Facts at 1-2.

of the encroachment of flood waters," *Graci*, 301 F. Supp. at 956. And in neither case does a flood control project figure into the damages calculus.

Finally, the Government argues that the MR-GO is so "inherently and inextricably intertwined" with the LPV that Section 702c immunizes the United States for Plaintiffs' damages attributable to the waterway. Opposition at 16. Defendant, however, fashions this argument out of thin air. First, Defendant offers not a shred of evidence to refute Plaintiffs' Corrected Revised Statement of Fact No. 3 asserting that Defendant has disavowed any claimed relationship between the MR-GO and the LPV. *See* Plaintiffs' Reply Facts at p 5.

Second, Defendant's evidence in fact supports the conclusion that no immunity is available here because the MR-GO contributed to Plaintiffs' damages. *See* Plaintiffs' Reply Facts Nos. 7-10, 14, 17-19, and 23.

Third, Defendant fails to explain how either the close proximity of the MR-GO and the LPV, or the use of dredged material from the MR-GO to construct alleged "levees," supports the conclusion that the MR-GO and the LPV were "inextricably intertwined." The Government previewed this argument in its Motion To Dismiss, Or, In The Alternative, Motion for Summary Judgment at 18-22. In their Opposition at pages 17-19, Plaintiffs demonstrated the absurdity of suggesting that these two projects are related when they were built at different times, for different purposes, and with different funding sources. In any event, besides failing to cite any evidence to support this contention, the Government cannot claim immunity "simply because water that caused damage might have been in contact with a flood control project . . . ." Levee Dismissal Order at 31.

Fourth, assuming arguendo that the MR-GO and the LPV were somehow interrelated, Defendant fails to cite a single case establishing that Defendant is immune under Section 702c

for the MR-GO related damages.  Indeed, *Central Green* points to the opposite conclusion.
There the flood-control and non-flood control aspects of the Central Valley Project were clearly
"inextricably intertwined" because flood waters and irrigation waters used *the same canal*.
Nonetheless, the Supreme Court remanded the case for an assessment whether the waters causing
the Plaintiffs' damages were released for flood control purposes – for which the Government was
immune – or irrigation purposes – for which it was not. *Central Green*, 531 U.S. at 436.

      **C.**      **The LPV's Performance Is Not At Issue Here**

      The Government next argues that Section 702c immunity is warranted because the LPV
played a role in the flooding of Plaintiffs' property due to "[t]he inability of these levees [along
the MR-GO and IHNC] to control Katrina's surging floodwaters resulted in the catastrophic
flooding."  Opposition at 7.  Again, the Government is way off the mark.  This is merely a
restatement of the discredited "all flood waters are immune" argument.  *See* Section III.A, *supra*.

      It begs the question to say that flood waters passed over, through, or under the LPV
structures.  The pertinent inquiry is "why?"  As Plaintiffs allege, the floodwaters were more than
three feet higher—and overtopped the LPV structures—because of the MR-GO and not because
of any defective design or construction of these structures.  *See* Section III.A, *supra*.[4]  Indeed,
the Government contends that there were no defects in the design or construction of the putative
flood control measures along the MR-GO that contributed to the catastrophic flooding of Greater

---

[4] At trial, Plaintiffs will demonstrate that the more than three feet of additional storm surge was
the tragic margin of difference for much of the catastrophic flooding for at least two reasons:
(1) if the flood structures were below design elevation, the surge waters overtopped them earlier
than if they were at the prescribed height (and caused more breaches and flooding) and (2) if the
flood structures (very few) were at design grade (a maximum of 17.5 feet), they would have
nevertheless been overtopped (although later) because the more than three additional feet of
storm surge from the MR-GO amplified the total surge to more than 18 feet.  *See* Plaintiffs'
Corrected Revised Facts Nos. 10, 18, 19, 32, 35, 41, 42, 43, 45, 46, 50; Attachments B & C to
Plaintiffs' Motion for Summary Adjudication (LIDAR Elevation Maps); Exhibit 7 (Kemp
Report), p. 31 ¶ 42.

New Orleans.  *See* Plaintiffs' Revised Fact No. 49.

This argument also ignores the fact that this Court has already determined that there may in fact be more than one cause of the flooding of Plaintiffs' homes, thereby requiring differentiating damages between immune and non-immune sources.  In *In re Katrina,* this Court ruled that "the concept that the Government might be immune from damage from the effect of some water and not as to other water is recognized in *Central Green*." *Id.* at 694-95.  The Supreme Court "opened the possibility of a segregation of damages—those for which the Government would be immune under § 702c and those for which immunity would not attach. *Indeed, the Government even concurred with this reading at oral argument.*" *Id.* at 694-95 (emphasis added).

Consequently, this Court must "identify *the cause of the damage* rather than base a decision on the mere fact that a flood control project was involved." *Id.* at 695 (emphasis added).  And if, as alleged, some portion of Plaintiffs' damages is due to the excess flood surge generated by the MR-GO, Section 702c would not be applicable because the cause related to the MR-GO is "'totally unrelated to any natural waterway **or the national flood control program'** *Graci,* 301 F.Supp. at 956."  *In re Katrina*, 471 F.Supp.2d at 695 (bold in original).

### D. The Government's Tortured Reading of *Central Green* Has Been Properly Rejected By This Court

Ever since it first moved to dismiss this case back in July 2006, the Government has engaged in a sustained effort to persuade this Court that *Central Green* expanded Section 702c immunity.  As this Court has noted, however, the Supreme Court restricted rather than enlarged the scope for immunity in connection with waters related to a federal flood control project.[5]  For

---

[5]*See In re Katrina*, 471 F.Supp.2d at 695 (Court rejects "the Government's contention that *Central Green* broadens the immunity provided by 702c . . . ."); *see also Sanko Steamship Co., Ltd. v. United States*, 272 F. 3d 1231, 1232 (9th Cir. 2001) (The Supreme Court in *Central Green*

Plaintiffs' case, the significance of *Central Green* is that the Supreme Court remanded the case for further determination about the *source* of the water because the water's source (*i.e.,* irrigation vs. flood control) would dictate the scope of the Government's immunity.  531 U.S. at 437.  The Supreme Court made clear that if, as here, "the character of the waters that cause the relevant damage" was not related to a flood control purpose, Section 702c immunity would not apply.  *Id.* at 434.  This is the same conclusion that the Fifth Circuit reached in *Graci* three decades earlier.  456 F.2d at 26; *see In re Katrina*, 471 F.Supp.2d at 692.  Indeed, in *James v. United States*, 478 U.S. 597, 602 n. 2 (1986), the Supreme Court explicitly endorsed the Fifth Circuit's holding in *Graci.  See also id.* at 605, n.7 (collecting cases with similar holdings).

### E.  This Court's Prior Rulings Defeat Immunity

The Government further argues that this Court's prior rulings in this case and other Katrina cases—coupled with what it asserts are "the uncontroverted facts"—require that this Court find Section 702c applicable here.  This is demonstrably untrue.  First, as noted earlier, the mere fact that floodwaters overtopped and breached flood works (Opposition at 13) is irrelevant to the pertinent Section 702c inquiry.  *See* Section IV, *supra*.

Second, its Katrina decisions involving Section 702c, this Court has consistently ruled that controlling precedent—*Graci*, *James*, and *Central Green*—hold that the statute does not apply where, as here, the Plaintiffs' damages are alleged to be unrelated to a flood control project like the LPV.  That critical distinction between damages caused by the MR-GO versus the LPV is why Plaintiffs have prevailed twice to date (*see In re Katrina,* 471 F.Supp.2d at 695 ("*Central Green* requires the Court to identify *the cause of the damage* rather than base a decision on the mere fact that a flood control project was involved." (emphasis in original); Document 6194 at 5 ("Clearly there are circumstances where the United States may be held liable or damages

"established *a more restrictive test* for determining sovereign immunity.") (Emphasis added.)

resulting from flood water caused by its acts or omissions.") and why the lawsuits in the LEAN and Levee lawsuits—alleging liability based on the failure of the LPV levees and floodwalls— were dismissed (*see* Document 8844 at 12 (The London Avenue Canal was "part of a flood control project" and the alleged damage was caused solely by the levee breaches); Levee Dismissal Order at 33 (Plaintiffs' "suit for *damages caused by the failure of the levees and/or floodwalls at 17th Street and the London Avenue Canal* is barred by § 702c [because those flood works were part of the LPV.] (emphasis added)).

### F. Immunity Is Not Available Where, As Here, Plaintiffs Were Injured, In Part, Because The Army Corps Deviated From Approved Project Dimensions Without Satisfying Administrative Prerequisites

Defendant's sole basis for opposing Plaintiffs' contention that the Government is not immune under Section 702c when it substantially deviates from project specifications approved by Congress is Defendant's legal argument that "[i]t is well established that the Army Corps of Engineers possesses broad latitude to revise plans after authorization has been granted." Defendant's Opposition at 3. Thus, according to Defendant's reasoning and given the lack of any dispute that the Army Corps did not comply in eight critical respects with Congress' directive (*see* Plaintiffs' Corrected Revised Fact No. 33), Section 702c is not available if this supposed "broad latitude" somehow evaporates. In fact, federal law tightly circumscribes the Army Corps' discretion (1) by imposing significant hearing and notice requirements and (2) by prohibiting project changes that frustrate achievement of a federal project's goals. The Army Corps fails here on both counts.

Defendant cites two District Court and two Fifth Circuit opinions—*Creppel v. U.S. Army Corps of Eng'rs*, 670 F.2d 564 (5th Cir. 1982); *Allison v. Froehlke*, 470 F.2d 1123 (5th Cir. 1972); *Missouri v. Ashcroft*, 526 F. Supp. 660 (W.D. Mo. 1980); and *United States v. 2,606.84 Acres of Land*, 309 F. Supp. 887 (N.D. Tex. 1969), *rev'd on other grounds*, 432 F.2d 1286 (5th

Cir. 1970)—to support its claim that it has vast discretion to revise project plans. A review of these cases, however, reveals that the Army Corps' discretion hinges on satisfying certain exacting procedural prerequisites. Without fulfilling these mandates, project modifications are arbitrary, capricious and *unauthorized*.

In *Creppel*, the Army Corps considered altering the plans for the construction of a flood control project after Congress modified the Clean Water Act, giving the Environmental Protection Agency ("EPA") veto power over the issuance of certain dredge discharge permits. *Id*. at 566-68. The EPA objected to an Army Corps' decision to construct the project as originally designed. *Id*. at 569. The Army Corps and the EPA held a series of public meetings to resolve the impasse, but both sides resolutely abided by their original positions. The Army Corps' Deputy Director of Civil Works, Brigadier General Drake Wilson, traveled to Jefferson Parish to attend a public meeting. *Id.* at 569-70. General Wilson then issued a final Statement of Findings ("SOFs") on November 16, 1976 that substantially modified the project with the concurrence of the EPA and local officials, but landowners who were to benefit from the original Phase II plan sued to contest the project changes. *Id.* at 570

The Fifth Circuit ruled that it was required to affirm the SOFs "unless they are arbitrary and capricious," ( *id*. at 572), and "'[i]f the agency considers the relevant factors and *articulates a rational connection between the facts found and the choice made*, the decision is not arbitrary or capricious.'" *Id*. (emphasis added; citations omitted). Central to the Fifth Circuit's decision was the Army Corps' extensive efforts to study the problem, elicit comments from local residents, *and comply with the Clean Water Act notice and hearing requirements. Id*.

Similarly, while the Fifth Circuit observed that "[t]he hand that approves projects initially has the implied power to change their course," it also remarked that "[a]ny change must,

16

however, *serve the original purpose of the project*."  *Id.* (emphasis added).  The court further

noted that "[t]he modifications *must be accomplished with adequate notice and in accordance*

*with the procedure mandated by federal regulations*. The modifications must not disregard or

seek to evade the substantive statutory requirements."  *Id*. (emphasis added).

In short, the Army Crops in *Creppel* fully complied with the notice and public hearing

requirements under the Clean Water Act.  Likewise, in *Allison* and *Ashcroft*, the Army Corps

complied with regulatory dictates by issuing environmental impact statements mandated by the

National Environmental Policy Act.

In stark contrast, the Army Corps here did not inform Congress of its massive project

changes or secure Congressional permission to abandon the SPH dimensions for the LPV.  Nor

has it provided any evidence that it complied with any regulatory strictures—such as compliance

with comprehensive environmental disclosure and public hearing requirements[6]—when it

---

[6] The National Environmental Policy Act  ("NEPA") mandates that an environmental impact
statement ("EIS") be prepared with respect to any "major Federal actions significantly affecting
the quality of the human environment . . . ." 42 U.S.C. § 4332(2)(C).  By definition, any act that
could affect the level of flood control protection enjoyed by the people of Greater New Orleans
would affect the "human environment," (40 C.F.R. §1508.16), and some form of action is
required under NEPA, even if just to determine that EIS is not required. *See e.g. Environmental
Defense Fund, Inc. v. Corps of Engineers of U.S. Army*, 470 F.2d 289 (8th Cir. 1972) (Review of
EIS filed by Army Corps in connection with flood control project); *Environmental Defense v.
U.S. Army Corps of Engineers*, 515 F.Supp.2d 69 (D.D.C. 2007) (Review of EIS filed by Army
Corps in connection with flood control project.); Douglas A. Kysar and Thomas O. McGarity,
*Did NEPA Drown New Orleans?  The Levees, The Blame Game, And The Hazards Of Hindsight*,
56 Duke L.J. 179, 200 (2006).

To assess whether an EIS is necessary, the Army Corps must perform an environmental
assessment ("EA").  *Louisiana Crawfish Producers Ass'n-West v. Rowan*, 463 F.3d 352, 536
(2006); *Sierra Club v. Espy*, 38 F.3d 792, 802-803 (5th Cir. 1994).  Once the EA is conducted,
the Army Corps must then issue either an EIS or a FONSI ("Finding of No Significant Impact")
in which it determines that no further action is required under NEPA.  *Louisiana Crawfish
Producers Ass'n-West*, 463 F.3d at 536; *see also* USACE, *Procedures for Implementing NEPA*,
ER 200-2-2 (March 4, 1988) (attached as Exhibit "A" to Plaintiffs' Request for Judicial Notice).

In the most recent version (April 22, 2000), the Army Corps publication *Planning
Guidance Notebook* (ER 1105-2-100) (attached as Exhibit "B" to Plaintiffs' Request for Judicial

radically altered the LPV project criteria and thereby assured that it would not achieve its

original goals endorsed by Congress to provided an SPH level of protection for the people of

Greater New Orleans.  Worse yet, residents were never informed that it was only a matter of time

before their beloved region would be destroyed.  *See* Plaintiffs' Reply Facts Nos. 47, 48.  Since

the Army Corps' latitude to deviate from the SPH hinges on compliance with these legal

requirements, these glaring failures to comply vitiates immunity under Section 702c immunity.

### G.  Defendant Cites No Law That The Government Is Immune From Liability For Damages When Plaintiffs Are Injured, In Part, Because Of The Incompleteness Of A Flood Control Project

Defendant barely addresses Plaintiffs' third ground for summary adjudication that

Section 702c does no apply because the hurricane protection system was not completed by the

time of Hurricane Katrina.  The Government conspicuously does not deny that the LPV was

incomplete when Hurricane Katrina struck.  Instead, Defendant devotes a single paragraph on

pages 19-20 to the issue of the lack of completion.[7]  Defendant asserts that Plaintiffs'

---

Notice) at Appendix B, p. B-2, recognizes the Administrative Procedure Act ("APA") and NEPA requirements for public participation in water resource projects.  "Federal planning policies, *Corps practice, and regulations have consistently required and encouraged open and effective public involvement.*"  (Emphasis added).  *See also* APA, 5 U.S.C. § 552b(b) ("Except as provided in subsection (c), every portion of every meeting of an agency shall be open to public observation.").

Defendant has provided no evidence that the Army Corps either conducted an EA, or issued an EIS or FONSI—as mandated by NEPA—or conducted public hearings—as required by NEPA and the APA—with respect to any of the modifications to, or deviations from, the LPV criteria mandated by Congress.  This included changes in the use of SPH or PMH criteria, changes in the use of vertical datum, or changes in the use of materials in the construction of alleged flood control structures.  This failure to provide evidence of compliance with administrative procedural requirements—coupled with Defendant's failure to "articulate[] a rational connection between the facts found and the choice made" (*Creppel*, 670 F.2d at 572), its inability to explain how the changes "serve[d] the original purpose of the project," (*Id.*) or to justify its attempts to "evade the substantive statutory requirements," (*Id.*)—renders the Army Corps' project alterations "arbitrary and capricious" even under the authorities cited by Defendant.

[7] Defendant also attempts to obfuscate this issue by conflating Plaintiffs' two arguments – *i.e.* the argument based on the incompletion of the project and the argument predicated on the deviation

"incompleteness" argument is unavailing because "[t]he notion that the 'scope of the immunity conferred' by § 702c is determined by 'the character of the federal project' was expressly rejected by the Supreme Court in *Central Green*."  Opposition at 19.

Defendant's argument is a *non sequitur*.  The term "character of the federal project," as used by the Supreme Court in *Central Green*, referred to the *function* of the federal project – *i.e.* whether the project's purpose was flood control or something else like irrigation.  Plaintiffs' argument is not predicated on the LPV's purpose, but on the fact that the LPV was incomplete in August, 2005 when Hurricane Katrina struck.

Not surprisingly, Defendant is completely silent about the illuminating legislative history of the Flood Control Act of 1928 where Congress contracted with the American people for governmental immunity in exchange for *a fully completed flood control system*.  Likewise, Defendant conveniently overlooks the legislative history of the Flood Control Act of 1965 where Congress directed the Army Corps to design and construct a complete, fully integrated hurricane flood protection system. *See* Plaintiffs' Memorandum of Points and Authorities In Support of

---

from authorized project parameters – and then citing the four previously mentioned cases. Defendant concedes, however, that these opinions address only the Army Corps "discretion to modify plans *as the project proceeds*."  Opposition at 21 (emphasis added).  They do not deal with whether the United States is immune under Section 702c when the Army Corps simply fails to complete a project, and that incompletion causes harm.

Similarly, without any analysis, the Government cites *Mocklin v. Orleans Levee District.*, 877 F.2d 427, 430 (5th Cir. 1989) for the proposition that "§ 702c barred claim of injury during reinforcement of levees along Lake Pontchartrain."  Opposition at 22.  The implication is that the Fifth Circuit held that § 702c immunity does not hinge upon the completion of a flood control project.  There is no such holding.  *Mocklin* is irrelevant for one major controlling reason.  The plaintiffs' son in that case drowned in a channel dredged in Lake Pontchartrain to give barges access to a flood control construction site. He was not injured because the project was incomplete and failed to control hurricane flood waters.  In other words, neither the failure to complete the project nor hurricane flooding was a substantial factor in causing the death of the plaintiffs' son.  Thus, the Fifth Circuit never considered whether § 702c applies when a project is incomplete and the unfinished project contributes to a Plaintiff's damages.  In our case, however, it is undisputed that "'[t]he incompleteness of the HPS made  a material contribution to the catastrophic flooding. . . ." Plaintiffs' Corrected Revised Fact No. 46 (quoting IPET, p. 1-5-20).

Motion for Summary Adjudication at 36-39.

In sum, Defendant provides no authority that in anyway contradicts the reasonable conclusion that Congress in 1928 bargained for governmental immunity in consideration for a completed flood control system.  The United States therefore enjoys no such immunity where the Army Corps fails to complete such a system, and the incompletion leads, in part, to Plaintiffs' injuries.[8]

## IV.    CONCLUSION

For all the foregoing reasons, this Court should grant Plaintiffs' Motion for Summary Adjudication.

Dated: February 15, 2008                                    Respectfully submitted,

                                                                    **O'Donnell & Associates P.C.**
                                                                    By: s/ Pierce O'Donnell
                                                                    Pierce O'Donnell (*pro hac vice*)

---

[8] Contrary to the Government's argument that Plaintiffs' second and third bases for summary adjudication are "foreclosed by the Court's recent dismissal of the Levee Master Complaint" (Opposition at 22), this Court did not address the issues of whether Section 702c immunizes the Government (1) when it fails to implement a Congressionally-authorized hurricane flood protection project in accordance with the criteria approved by Congress or (2) when the flood project has not been completed at the time of the hurricane.  In holding that Section 702c applied in that case, the Court explicitly based its decision on the fact that Congress authorized the 17th Street Canal and London Avenue Canal levees "when it enacted the LPV in 1965 as a 'project for hurricane-flood protection on Lake Pontchartrain, Louisiana' [and when Congress 25 years later] directed the Corps to 'treat the outfall canals as part of the overall hurricane protection project.'" *Id.* at 33-34 (citation omitted).  As for the alleged lack of Congressional approval of what the Army Corps constructed, the Court rejected this argument *because Congress had in fact expressly mandated the flood works constructed along the outfall canals.  Id.* at 34-35.

Given this ruling, how does the Government have the temerity to argue that "the Court correctly concluded that these allegations of incompleteness and nonconformity with a putative congressional directive did not prevent application of § 702c to their claims"?  (Opposition at 22).  *See Thomas v. Texas Dept. of Criminal Justice*, 297 F.3d 361, 370 & n.11 (5th Cir. 2002) ("Where an opinion fails to address a question squarely, we will not treat it as binding precedent.").  Indeed, the Court's decision actually supports Plaintiffs' position here.  In sharp contrast to what happened with the outfall canals, it is undisputed the Army Corps radically deviated from the plan approved by Congress in at least eight critical respects and did not go back to Congress to obtain approval of its decisions not to build the LPV in accordance with the SPH criteria and other directives.  *See* Plaintiffs' Corrected Revised Fact No. 33.

550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone:  (213) 347-0290
Fax:  (213) 347-0298


**The Andry Law Firm, LLC**

By: s/ Jonathan B. Andry
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile:  (504) 585-1788

**Law Offices of Joseph M. Bruno**
By: s/ Joseph M. Bruno
Joseph M. Bruno (LSBA No. 3604)
855 Baronne Street
New Orleans, Louisiana 70133
Telephone: (504) 525-1335
Facsimile:  (504) 581-1493

**Domengeaux Wright Roy & Edwards LLC**

Bob F. Wright (LSBA No. 13691)
James P. Roy (LSBA No. 11511)
556 Jefferson Street, Suite 500
P.O. Box 3668
Lafayette, Louisiana 70502-3668
Telephone: (337) 233-3033
Facsimile:  (337) 233-2796

**Fayard & Honeycutt**

Calvin C. Fayard, Jr. (LSBA No. 5486)
Blayne Honeycutt (LSBA No. 18264)
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile:  (225) 664-6925

**Girardi & Keese**

Thomas V. Girardi (*pro hac vice*)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile:  (213) 481-1554

**Ranier, Gayle & Elliot, LLC**

N. Frank Elliot III
1419 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337).494.7218

**Levin, Papantonio, Thomas, Mitchell
Echsner & Proctor, P.A.**

Clay Mitchell (*pro hac vice*)
Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**McKernan Law Firm**

**Gainsburgh, Benjamin, David, Meunier &
Warshauer, LLC**

Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Law Office of Elwood C. Stevens, Jr., a
Professional Law Corporation**

Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

**Cotchett, Pitre, Simon & McCarthy**

Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

**Law Office of Frank J. D'Amico, Jr. APLC**

Frank J. D'Amico, Jr. (LSBA No. 17519)
Richard M. Exnicios, Esq. (LSBA No. 25666)
622 Baronne Street
New Orleans, LA 70113
Telephone: (504) 525-9561
Fax: 504-525-9522

**Salas & Co., LC**

 Camilo K. Salas, III (LSBA No. 11657)
650 Poydras Street, Suite 1650
New Orleans, LA  70130
Telephone: (504) 799-3080
Facsimile:  (504) 799-3085
**Attorneys for Plaintiffs**

**Robinson, Calcagnie & Robinson, Inc.**

Mark Robinson (Cal State Bar No. 54426
620 Newport Center Drive – 7th Floor
Newport Beach, CA 92660
1-888-701-1288

## <u>CERTIFICATE OF SERVICE</u>

I, Pierce O'Donnell, hereby certify that on February 15, 2008, I caused to be served

**<u>PLAINTIFFS' REPLY TO DEFENDANT UNITED STATES' OPPOSITION TO</u>**

**<u>PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION</u>**, upon Defendants' counsel,

Robin D. Smith, Catherine Corlies, Traci Colquette, and Jim McConnon by ECF and email at

robin.doyle.smith@usdoj.gov; catherine.corlies@usdoj.gov, traci.colquette@usdoj.gov, and

jim.mcconnon@usdoj.gov

/s/ Pierce O'Donnell