**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION

PERTAINS TO: MRGO

CIVIL ACTION

NO. 05-4182 "K" (2)

JUDGE DUVAL
MAG. WILKINSON

**OPPOSITION OF WASHINGTON GROUP INTERNATIONAL, INC. TO MOTIONS TO QUASH**

Washington Group International, Inc. ("WGII") respectfully opposes the following:

> 1) Plaintiffs', identified as "Jeanine Broggi Armstrong, wife of and Kenneth P. Armstrong and Ethel Mae Coats," motion to quash (Record Nos. 10433, 10623) ("Armstrong Mot.") WGII's November 28, 2007 Subpoena for the Production of Documents to the Louisiana Office of Community Development ("Subpoena" or "WGII Subpoena"); and
>
> 2) Plaintiffs', identified as "MRGO PSLC, on behalf of the putative class" to quash ("PSLC Mot.") WGII's November 28, 2007 Subpoena for the Production of Documents to the Louisiana Office of Community Development ("Subpoena" or "WGII Subpoena") , or in the alternative, for a protective order (Record No. 10927) (collectively "Motions")

because: i) both Motions have been improperly filed in the wrong court; ii) both Motions are untimely; iii) Plaintiffs' unsupported assertions to the contrary, Plaintiffs do not have standing to raise any undue burden caused by the Subpoena; iv) to the extent that any privacy rights are at issue, which is in doubt, quashing the WGII Subpoena is not proper, particularly where WGII has taken steps to protect any such concerns by agreeing to enter into a proper confidentiality agreement; and v) Plaintiffs' unsupported assertions to the contrary, Plaintiffs do not have

standing to challenge the relevance of the materials sought, and in any event, the documents sought are clearly relevant.

## ARGUMENT

### I. Plaintiffs' Motions Were Filed in the Wrong Court, and are Therefore Improper.

Plaintiffs cite Federal Rule of Civil Procedure 45 as an introduction to their arguments in support of their Motions. *See, e.g.,* Armstrong Mot. at 2; PSLC Mot. at 2-3. Yet, inexplicably, although they cite it, Plaintiffs ignore the plain language of Rule 45 which requires in pertinent part that "[o]n a timely motion, ***the court by which a subpoena was issued*** shall quash or modify the subpoena . . . ." Fed. R. Civ. P. 45(c)(3)(A) (emphasis added). The Subpoena (attached as Exhibit A hereto), which Plaintiffs have had since November 28, 2007, clearly indicates that it was ***not*** issued by the Eastern District of Louisiana (this Court)—instead, WGII properly caused it to be issued from the Middle District of Louisiana because the LOCD is located in Baton Rouge, a city located within the Middle District. *See* Fed. R. Civ. P. 45(a)(2)(C). Therefore, because Plaintiffs have ignored the plain language of Rule 45 and clear black letter law by not filing their Motions in the proper court—the Middle District—WGII respectfully requests that this Court reject the Motions. *See* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2463.1, at 485 (3d ed. 2008) (noting it "makes considerable sense" and is "now . . . clear that motions to quash, modify, or condition the subpoena are to be made in the district court of the district from which the subpoena issued"); 9 James Wm. Moore et al., Moore's Federal Practice § 45.50[4], at 45-81 (3d ed. 2007) ("[i]f a subpoena is issued by a district court other than the one in which the case is pending, ***the proper court*** in which to file a motion to quash or modify the subpoena ***is the issuing court***, ***not the court in which the action is pending***.") (emphasis added) (citations omitted); *Union Pac. R.R. Co. v. Mike's Train House, Inc.*, 2006 WL 1134781, at *3 (D. Neb. Apr. 25, 2006) (holding "Rule 45 clearly delegates the

responsibility of enforcing, quashing, or modifying subpoenas to 'the court by which [the] subpoena was issued'") (citing Fed. R. Civ. P. 45(c)(3)A)).[1]

**II. Plaintiffs' Motions Are Untimely, and are Therefore Improper.**

As noted above, Plaintiffs received notice of WGII's Subpoena on November 28, 2007 (*see* Docket Record No. 9265), yet Plaintiffs did nothing about the Subpoena until the very earliest January 15, 2008—nearly two months later and only days before LOCD's agreed-upon production date. *See* Exh. C attached hereto (1/9/08 P. Hardin to W. Treeby e-mail) (notifying WGII that as of January 9, 2008, counsel for the LOCD "received some documents today" and "we should be able to give you the documents on the two class representatives by January 18, 2008 as agreed").

Rule 45 makes clear: "the court by which a subpoena was issued shall quash or modify the subpoena" only upon a "***timely*** motion." Fed. R. Civ. P. 45(c)(3)(A) (emphasis added). Because Plaintiffs waited to file one of their motions until the eve of the January 18, 2008 LOCD production date and waited until well ***after*** the January 18, 2008 production date to file their other motion, Plaintiffs' Motions are not timely—another reason why this Court should reject them.[2] *See Burroughs Corp. v. Dataware Sources, Inc.*, 1987 WL 10190, at *1-2 (D. Mass. Apr. 28, 1987) (denying motion to quash and ruling, under prior version of Rule 45 requiring that a

---

[1] Even if Plaintiffs were to argue that their motions in this Court were proper because they would seek to transfer to this Court a motion to quash they file in the Middle District, any such position is without support in the law. *See, e.g., In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998) (granting mandamus, noting the "text [of Rule 45] offers no authorization to transfer a motion to quash and seems at least implicitly to forbid it" and "[a]ll of this language [of Rule 45] suggests that ***only the issuing court has the power to act on its subpoenas***") (emphasis added). Indeed, the Northern District of California recently denied Plaintiffs' motion to "remit" to this Court a motion to quash that Plaintiffs filed in the Northern District. *See* 2/6/08 Order of Reference and Order Denying Motion to Remit attached hereto at Ex. B.

[2] Plaintiffs' "Armstrong Motion" was filed January 15, 2008, just days before LOCD was scheduled to respond to the Subpoena, and Plaintiffs' "PSLC Motion" was not filed until January 29, 2008—a full eleven (11) days after the deadline for production.

motion to quash be filed "promptly," that the "motion was not made promptly" because "[i]t was not served until a month after the subpoena issued and only four days before the date on which production was to take place . . . ."; and noting that "[t]he purpose of the requirement that such motions be made 'promptly' is to avoid last-minute filings which have the effect of delaying the . . . document production").[3] *See also Tutor-Saliba Corp. v. United States*, 30 Fed. Cl. 155, 156 (Ct. Fed. Cl. 1993) (holding that the "most reasonable construction of [Rule 45 of the Rules of the United States Court of Federal Claims, which mirrors Rule 45 of the Federal Rules of Civil Procedure] is to read [Rule 45(c)(2), which sets fourteen (14) days following service of a subpoena as the deadline for objecting to the subpoena, and Rule 45(c)(3)'s timeliness requirement] together; thus, motions to quash must be filed within fourteen days of service").

## III. Any Burden Associated With WGII's Subpoena is on the LOCD, And As Such, Plaintiffs Do Not Have Standing to Assert Undue Burden in Support of Their Motions.

Plaintiffs refer repeatedly throughout their Motions to the alleged burdens associated with the WGII Subpoena. *See*, *e.g.* Armstrong Mot. at 2 (offering that the Subpoena "would require the production fo [sic] tens of thousands of files"); 5 (offering that WGII "shows equal disregard for [the] onerous burden it has cast via its subpoena"); PSLC Mot. at 5 (arguing that the WGII Subpoena "is so broad as to encompass all Road Home Applicants in the Lower Ninth Ward and St. Bernard Parishes [sic]"). Plaintiffs do not argue, however, that the burden is on them. In fact, Plaintiffs appear to argue that the burden they offer is apparently on the LOCD. *See* Armstrong

[3] Indeed, that their sole purpose in filing these untimely and deficient motions is to delay the production of relevant documents to WGII is bolstered by the fact that the Plaintiffs have also filed untimely and deficient motions in the Northern District of California in connection with WGII's third-party subpoena to the Independent Levee Investigation Team ("ILIT"). One such deficient motion, Plaintiffs' motion to "remit," was denied, after WGII filed its opposition, by the Northern District on February 6, 2008. Plaintiffs' motion to quash WGII's ILIT subpoena, like the PSLC Motion here, was filed ***after*** the scheduled ILIT production date.

Mot. at 2 (offering that the "subpoena saddles the Road Home program with an unreasonably burdensome task").

As an initial matter, Plaintiffs do not have standing to offer undue burden on the LOCD as the reason to quash the WGII Subpoena. *See* 9 Moore's Federal Practice § 45.50[3], at 45-79 (3d ed. 2007) (noting that "a party to the action ***does not have standing to assert any rights of the nonparty*** as a basis for a motion to quash or modify a subpoena") (emphasis added) (citations omitted).

More importantly, if there was a true undue burden being heaped upon the LOCD by WGII (as now argued by Plaintiffs), one would assume that the LOCD would be the first to seek the Court's intervention via a protective order or some other relief, and that LOCD would have done so long before January 15, 2008. In fact, LOCD was required by Rule 45 to serve written objections to the Subpoena. Yet, LOCD has not served any such written objections, or made any such plea for help to the Court. This is so because WGII has been working with LOCD to limit any potential undue burden associated with the production. *See* Exh. D attached hereto (M. Drew 12/21/07 e-mail memorializing agreements between WGII and LOCD to limit any undue burden upon LOCD). In fact, this is one of the reasons why WGII agreed to first review the Road Home files of two of Plaintiffs' MRGO class representatives—to better understand and ameliorate any possible undue burden to LOCD. WGII remains committed to this approach. Therefore, Plaintiffs' burden argument rings hollow, and as such, WGII respectfully requests that the Court deny Plaintiffs' Motions.[4]

---

[4] In connection with the wholly-improper undue burden argument, Plaintiffs also offer that "[a]t this stage of the proceedings, the subpoena issued by WGII is simply too broad." PSLC Mot. at 7. In particular, Plaintiffs argue that "[t]he above captioned litigation has not been certified as a class action and [as such, the] discovery . . . is inappropriate at this time." *Id.* This argument borders on the offensive, as it was the MRGO Plaintiffs, not WGII, who moved to

**IV. Privacy Interests, to the Extent They Even Exist, Do Not Mandate the Quashing of the WGII Subpoena and In Any Event, WGII has Taken Steps to Protect Sensitive Personal Information.**

In another challenge to the WGII Subpoena, Plaintiffs assert that they have a privacy interest created by the Road Home Privacy Policy (attached as Exhibit 2 to Armstrong Mot.) in:

> personal and/or financial information in the form of:
>
> 1. applications, forms and in other communications to the Road Home program;
>
> 2. Information about transactions with the Road Home, affiliated companies, or others;
>
> 3. Information received from a credit reporting agency.

Armstrong Mot. at 3. In this regard, Plaintiffs' have specifically identified Request Nos. 5 (seeking Road Home Program documents reflecting payments, grants, or other restitution paid to Lower Ninth Ward homeowners), 6 (same for St. Bernard Parish homeowners), 7 (seeking documents reflecting denials of Lower Ninth Ward and/or St. Bernard Parish homeowner Road Home Program applications), 8 (seeking correspondence received from any Lower Ninth Ward and/or St. Bernard Parish homeowner), and 9 (seeking statements concerning Hurricane Katrina by from any Lower Ninth Ward and/or St. Bernard Parish homeowner) of the Subpoena as calling for information subject to the privacy interest created by the Road Home Privacy Policy. *See* Armstrong Mot. at 5. Therefore, it appears that Plaintiffs ***agree*** that Request Nos. 1 (seeking only those Road Home documents sent by LOCD to the Lower Ninth Ward and St. Bernard Parish residents); 2 (seeking only those documents reflecting or describing the Road Home Program application process); 3 (seeking only those documents reflecting or describing the Road

(continued…)

indefinitely stay the issue of class certification on the eve of the hearing, after the parties had spent months and millions of dollars preparing. Plaintiffs cannot now use circumstances they alone created to object to discovery properly served in accordance with the dictates and deadlines set by the Court in CMO No. 4.

Home Program decision process); and 4 (seeking the applications filed by Lower Ninth Ward and St. Bernard Parish homeowners) of the Subpoena do not suffer from this perceived weakness, and as such, Plaintiffs' Motions should be denied as to Request Nos. 1 through 4 of the Subpoena.

In any case, as is evident from a review of the plain language of the WGII Subpoena, WGII is not seeking "[i]nformation received from a credit reporting agency" from the LOCD. To the extent such information exists in the Road Home Program files that were about to be produced by the LOCD on January 18, 2008 to WGII with respect to "Jeanine Broggi Armstrong, wife of and Kenneth P. Armstrong and Ethel Mae Coates" or any other documents for that matter, WGII has no objection to the redaction of such information. As such, Plaintiffs' concerns in this regard are unfounded.

Secondly, Plaintiffs cannot argue that the Road Home Privacy Policy (attached as Ex. 2 to Armstrong Mot.) creates an absolute bar to WGII's discovery of the information sought in Request Nos. 5 through 9. For example, the Privacy Policy clearly provides that "we [the LOCD, or more accurately, the vendor hired by the LOCD to administer the Road Home Program] will not release your information to nonaffiliated parties ***except***: . . . ***as permitted by law***." Armstrong Mot., Ex. 2 at paragraph entitled "Use of Information" (emphasis added). The WGII Subpoena has been lawfully and properly executed and served, and as such, the disclosure to WGII of certain of Plaintiffs' information in connection with the Road Home Program will be done "as permitted by law."

Finally, with respect to the various arguments raised by Plaintiffs rooted in "privacy" (*see, e.g.,* Armstrong Mot. at 5 (arguing that "WGII has given no consideration to the privacy concerns of the Lower Ninth Ward and St. Bernard Parish"); PSLC Mot. at 2 (arguing that the

Subpoena "seeks confidential information"), "it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery. Confidentiality concerns in many cases may be addressed with an appropriate protective order." *Dean v. Anderson*, 2002 WL 1377729, at *3 (D. Kan. June 6, 2002) (citations omitted). In this regard, before Plaintiffs filed their untimely Motions, WGII had specifically offered to enter into the appropriate confidentiality agreement and order (confirmed by this Court if necessary) to protect whatever sensitive personal information is included in the materials produced by the LOCD. *See* Exh. E attached hereto (W. Treeby 12/21/07 e-mail to M. Drew, counsel for the contractor to LOCD). WGII remains willing to do so. Thus, even assuming for the sake of argument that certain privacy interests of certain Plaintiffs (named or otherwise) were at stake, WGII has taken steps to protect those interests, and will continue to do so.[5] Given that WGII had already informed the LOCD that it was willing to enter in to the appropriate confidentiality agreement, Plaintiffs' Motions should be denied.[6]

---

[5] Indeed, in light of the fact that WGII was already discussing with the LOCD the use of an appropriate confidentiality agreement with respect to the production of claims files, Plaintiffs' claim that there is the "potential [for] annoyance, embarrassment, and oppression on the unassuming citizens of Louisiana" (*see* PLSC Mot. at 9) amounts to nothing more than inflated rhetoric and is simply not supported in fact.

[6] Plaintiffs argue in support of the PSLC Motion that through the Subpoena, WGII is somehow attempting an "end-run around the safeguards already put in place by this Honorable Court." PSLC Mot. at 8 (citing "Doc. 9587"). Plaintiffs' "end-run" argument is specious and belied by the actual facts. Specifically, on November 28, 2007, WGII served the Subpoena on LOCD and provided notice of same to Plaintiffs. The Court's order referred to by Plaintiffs, "Doc. 9587," was not signed by the Court until December 19, 2007—***three weeks after*** WGII had served the Subpoena. WGII is unsure how, on November 28, 2007, it could make an "end-run" around an order that WGII would not learn about for another twenty-one (21) days. In light of these clear and uncontroverted facts, WGII submits that Plaintiffs' argument has been offered solely for purpose of prejudicing the Court against WGII, and as such, it should be rejected.

## V. Plaintiffs Do Not Have Standing to Object to the Subpoena on Relevance Grounds, And InAny Event, the Subpoena Seeks Relevant Discovery.

Although they bear the burden of establishing that WGII's Subpoena should be quashed, *see Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998), Plaintiffs make no effort to actually explain their position or even identify which of "the 'specifications of documents to be produced'" suffer from the alleged flaw that "there has been no showing that the information sought has any relevance to the present litigation." Armstrong Mot. at 4. *See also* PSLC Mot. at 6 (arguing that "the information sought in the subpoena is not relevant to the above captioned litigation"). These relevance arguments by Plaintiffs are ill-founded, however, because a party simply may not move under Rule 45 to quash a subpoena directed to a third party on the ground that the material sought is irrelevant. *See Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) (rejecting motion to quash where defendant objected on relevance grounds, "objections that can only be raised by [the recipients of the third-party subpoenas]"); *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995) (denying defendant's motion to quash where defendant argued that the challenged subpoena sought irrelevant documents and noting that "Fed. R. Civ. P. 45(c)(3)(A) enumerates four circumstances under which the court may enter an order quashing or modifying a subpoena" and ruling that defendant "has failed to establish that any of the circumstances set forth in the Rule are applicable"). As such, the Court should reject Plaintiffs' relevance arguments and deny both motions.

Moreover, as class representatives, Ms. Armstrong, Ms. Coats, and any other individual identified as a MRGO class representative have agreed to the discovery of certain information about them to test the adequacy of their representation of the rest of the class. *See* Manual for Complex Litigation, Fourth, § 21.26 (noting that class representatives bear the "responsibility to remain free of conflicts and to vigorously pursue the litigation in the interests of the class,

including subjecting themselves to discovery"). *See also* PSLC Mot. at 7 (agreeing that the "purpose of Named Plaintiffs is to represent the class").[7] In this regard, "[i]n order to assess the adequacy of the named representatives [to represent a class], . . . honesty, conscientiousness, and other affirmative personal qualities" are the proper subjects of discovery. 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1766 at 359 (3d ed. 2008). Furthermore, in an effort to test adequacy, WGII is entitled to discovery to determine whether any individual class representative's interests "are antagonistic or in conflict with the objectives of those being represented." *Id.*, § 1768 at 389. Thus, WGII seeks the Road Home Program applications (Request No. 4), to which Plaintiffs apparently have not objected, and documents reflecting the grant or denial of applications (Request Nos. 5, 6, and 7), as well as correspondence or other statements (Request Nos. 8 and 9), in order to examine whether a class representative has made admissions in any such application, correspondence, or statement concerning the manner in which they believe their property was damaged (wind, rain, fire, vandalism, or other cause) that may conflict with: i) other such statements (insurance or otherwise); ii) the MRGO Plaintiffs' theory of the case; or iii) their very own prior sworn testimony. Such discovery goes to the very heart of the adequacy question to issues concerning honesty, conscientiousness, and whether conflicting interests exist, and as such, is clearly relevant and subject to discovery. *See In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 367 (E.D. La. 1997) (Sear, C.J.) (finding that named plaintiffs were not adequate representatives in part because "several of the named plaintiffs who have responded to discovery

[7] While Plaintiffs may attempt to argue that WGII is somehow not entitled to discovery in connection with class certification, "[a]s recognized by the Fifth Circuit, the question of adequacy of representation remains open throughout the trial and must be evaluated even after the termination of the suit . . . ." 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1765 at 343 (3d ed. 2008) (citing *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir. 1973)).

have provided flatly contradictory responses in their written responses and deposition testimony, undermining the reliability of the record and highlight[ing] the named plaintiffs' inability to protect the interests of the class").[8]

Finally, Plaintiffs' generalized, unsupported accusations to the contrary (*see* PSLC Mot. at 7), this discovery is relevant to the establishment of WGII's affirmative defenses, including set-off. *See* March 30, 2007 Affirmative Defenses and Answer of Defendant Washington Group International, Inc. to Plaintiffs' MR-GO Master Consolidated Class Action Complaint, As Amended at 4, ¶ M. In particular, WGII submits that any amounts received by any member of the putative class, including a Named Plaintiff or class representative, pursuant to the Road Home Program or otherwise for damages incurred as a result of flooding attributable to Hurricane Katrina should result in a reduction of any alleged injury attributed to WGII. For these reasons, Plaintiffs' argument that the challenged requests are somehow not relevant should be flatly rejected.

## CONCLUSION

Rather than dealing with the WGII Subpoena in a timely fashion, Plaintiffs waited until the last minute (and even later then the last minute) to file thinly-supported motions to quash, but did not even take the time to properly file them in the correct court. Yet, Plaintiffs accomplished exactly what they wanted—delay of WGII's discovery. This gamesmanship hinders WGII's

[8] Indeed, "the failure of a representative to move for class certification in a timely fashion or otherwise to prosecute the action is a clear indication that the named party is not an adequate representative" for the putative class. 7A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1766, at 373 (3d ed. 2008). As such, "[f]ailure to cooperate in discovery may support a finding that class representatives are inadequate." *In re Ford Motor Co.*, 360 F.R.D. at 367 (citation omitted). While Plaintiffs "Jeanine Broggi Armstrong, wife of and Kenneth P. Armstrong and Ethel Mae Coats" are free to move on the eve of production asserting thin claims of "privacy," WGII submits that their doing so calls into question their adequacy as representatives of the putative class.

good faith efforts to comply with this Court's Case Management Order deadlines, as well as WGII's continued good faith negotiations with the LOCD to limit any undue burden that may exist. For these reasons, and for the reasons set forth above, Plaintiffs' Motions should be denied and the LOCD should be permitted to produce responsive documents to WGII as it was ready to do on January 18, 2008 before Plaintiffs filed these meritless motions.

Dated: February 19, 2008

Respectfully submitted,

/s/*Heather S. Lonian*
William D. Treeby, 12901
Carmelite M. Bertaut, 3054
Heather S. Lonian, 29956
Of
Stone Pigman Walther Wittmann L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130
Telephone: (504) 581-3200
Facsimile: (504) 581-3361

Attorneys for Washington Group International, Inc., a division of URS Corporation

Of counsel
Adrian Wager-Zito
Shannon M. Kasley
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Telephone: (202) 879-3891
Facsimile: (202) 626-1700

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Memorandum in Opposition has been served upon all counsel of record by electronic notice via the Court's CM/ECF system this 19th day of February, 2008.

/s/*Heather S. Lonian*
Heather S. Lonian, Esq.