UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * CIVIL ACTION<br>*<br>* NO. 05-4182 "K" (2)<br>* |
| PERTAINS TO LEVEE:<br>MORIAL, No. 07-4551, WHITE, No. 07-4553, METROLAB, No. 07-4557, SAVOY, No. 07-4558, MINTZ, No. 07-4559, HURWITZ, No. 04-4560, DOLEY, No. 07-4561, MORIAL, No. 07-4563, DILLARD, No. 07-4948, ST. AUGUSTINE, No. 07-4949, HARRISON, No. 07-4952, LIBERTY, No. 07-4953, GERDES, No. 07-4957, UNION, No. 07-4959, HERTZ, No. 07-4960, PRYTANIA, No. 07-4963, PRAT, No. 07-4964, BERENSON, No. 07-4966, ADLER, No. 07-4967, ABUNDANCE, No. 07-4968, REDEMPTORIST, No. 07-4970, OMEGA, No. 07-4971, DOLEY, No. 07-4972, WELLS, No. 07-4973, ROBERT, No. 07-4974, MILLER, No. 07-4975, ENTERCOM, No. 07-4976, ADLER, No. 07-4977, SMYTH, No. 07-4978, WHITE, No. 07-4979, HAYDEL, No. 07-4980, PATTERSON, No. 07-4981, TREASURE, No. 07-4982, DOMINION, No. 07-4984, BAGNERIS, No. 07-4985, MORIAL, No. 07-4988, LOUISIANA, No. 07-4989, TANNER, No. 07-4990, ADLER, No. 07-4991, SOUTHPOINT, No. 07-4992, ADLER'S, No. 07-4993, BERENSON, No. 07-4994, CII, No. 07-4995, TOURO, No. 07-4996, IMPERIAL, No. 07-4997, PHYSICIAN, No. 07-4998, DOLEY, No. 07-5000, ROBERT, No. 07-5001, | * JUDGE DUVAL<br>*<br>* MAG. WILKINSON<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

SHOPS, No. 07-5002, GREYSTAR, No. 07-5003, CAMBRIDGE, No. 07-5004, MAJESTIC, No. 07-5005, WHITE, No. 07-5006, UNITED, No. 07-5008, DAVIS, No. 07-5009, WETCO, No. 07-5012, DOLEY, No. 07-5014, MAJESTIC, No. 07-5015, UNIVERSAL, No. 07-5016, REID, No. 07-5017, XAVIER, No. 07-5018, EMBRY, No. 07-5019, GREEN-JOHNSON, No. 07-5155, CURTIS, No. 07-5193, UNIVERSAL, No. 07-5254, UNIVERSAL, No. 07-5286, DAVIS, No. 07-5314, OMEGA, No. 07-5315, GERDES, No. 07-5316, ABUNDANCE, No. 07-5317, UNION, No. 04-5318, DOLEY, No. 07-5319, SHOPS, No. 07-5321, WELLS, No. 07-5322, IMPERIAL, No. 07-5323, PHYSICIAN, No. 07-5324, BERENSON, No. 07-5325, ST. AUGUSTINE, No. 07-5326, ADLER, No. 07-5329, PRYTANIA, No. 07-5334, LOUISIANA, No. 07-5338, WETCO, No. 07-5339, CAMBRIDGE, No. 07-5340, ROBERT, No. 07-5341, UNITED, No. 07-5342, ADLER'S, No. 07-5345, MILLER, No. 07-5346, LIBERTY, No. 07-5347, DOLEY, No. 07-5348, GREYSTAR, No. 07-5349, UNIVERSAL, No. 07-5350, TREASURE, No. 07-5351, TOURO, No. 07-5352, EMBRY, No. 07-5353, REDEMPTORIST, No. 07-5354, CII, No. 07-5355, WHITE, No. 07-5356, DILLARD, No. 07-5359, WHITE, No. 07-5360, HERTZ, No. 07-5361, MORIAL, No. 07-5362, PRAT, No. 07-5363, DOMINION, No. 07-5364, BERENSON, No. 07-5365, XAVIER, No. 07-5367, DOLEY, No. 07-5368, ADLER, No. 07-5369, SOUTHPOINT, No. 07-5371, GREEN-JOHNSON, No. 07-5373, HAYDEL, No. 07-5374, ENTERCOM., No. 07-5375, ADLER, No. 07-5376, BAGNERIS, No. 07-5378, HARRISON, No. 07-5494, REID, No. 07-5495, SMYTHE, No. 07-5496,

*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*
*

## CSX TRANSPORTATION, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO CSX TRANSPORTATION, INC.'S MOTION FOR DISMISSAL UNDER RULE 12(b)(6) (FAILURE TO STATE A CLAIM)

This Court has already ruled in this consolidated litigation that CSXT owed no duty to protect the plaintiffs from flooding and that plaintiffs' claims are preempted by federal law. Order and Opinion (Dec. 27, 2007) (Dkt. No. 9856) ("Dismissal Order"). In their Opposition, plaintiffs apparently seek to have this Court reconsider its prior order or preserve these issues for appeal. However, plaintiffs' Opposition offers the Court nothing new and instead is littered with factual inaccuracies and legal misstatements designed to confuse the issues raised by CSXT's motion. CSXT could spend an inordinate amount of space in this Reply describing the plaintiffs' errors and misstatements but instead will highlight only the most egregious examples. Nevertheless, for the same reasons stated in this Court's Dismissal Order, this Court should deny plaintiffs' request for "reconsideration" and dismiss plaintiffs' claims against CSXT.

### I.  Plaintiffs Misstate The Allegations In Their Complaint

The allegations about CSXT in plaintiffs' complaints are identical to the allegations in the Superseding Master Consolidated Class Action Complaint ("Master Complaint") that this Court has already dismissed.[1] In an effort to avoid the same result here, plaintiffs now pretend that the allegations in their complaints are different than what is actually pled against CSXT. Plaintiffs' blatant mischaracterization of the allegations they actually made against CSXT is an impermissible attempt to amend their complaints through their Opposition brief. *See, e.g., Downs v. Liberty Life Assurance Co. of Boston*, Civ. A. No. 3:05-CV-0791-R, 2005 WL 2455193, at *3 (N.D. Tex. Oct. 5, 2005).

---

[1]  For the Court's convenience, CSXT attaches hereto as **Exhibit A** a document comparing the allegations in plaintiffs' complaints to the allegations in the Master Complaint.

Plaintiffs' Opposition for the first time claims that CSXT operated a train that derailed on September 11, 2004 and damaged a floodgate along the Industrial Canal. But in their complaints, plaintiffs allege with respect to this derailment that another entity damaged the floodgate:

> 98
> On or about September 11, 2004, *a New Orleans Public Belt Railroad Train derailment* caused a thirty-two and a half foot wide gap in Floodgate W-30, which is part of the floodwall system situated immediately west of the Industrial Canal.
>
> 99
> On December 14, 2004, *PBR paid OLD $427,387.96, the full estimated cost of the reconstruction of Floodgate W-3* (sic). On information and belief, both PBR and OLD failed to assure these repairs were made before the August 2005 catastrophe giving rise to this action, resulting in extensive damage to Plaintiff's property.

Morial Compl.[2] ¶¶ 98-99 (emphasis added). Thus, in their complaints plaintiffs correctly assert that the New Orleans Public Belt Railroad ("NOPB") was operating the train that derailed on September 11, 2004 and that NOPB paid the Orleans Levee District ("OLD") the full amount of the estimated cost to repair the damaged flood gate. In their Opposition, however, plaintiffs now claim that a locomotive driven by a CSXT employee destroyed floodgate W-30. See Opp. at 5. But as this Court already knows, CSXT was not operating the train that derailed on September 11, 2004. CSXT has submitted uncontroverted, admissible evidence to this Court on that point – evidence plaintiffs conveniently ignore despite citing to the very case in which that evidence was

---

[2] This Reply addresses 116 separate complaints. The allegations against CSXT are substantially identical. *See* Exhibit A. As such, citations throughout the brief are given to the *Morial* Complaint, No. 07-4551, and CSXT refers the Court to the corresponding allegations in the remaining complaints.

submitted. Opp. at 5 (citing *Keith C. Ferdinand, et al. v. The Port of New Orleans, et al.*, Civ. A. No. 06-5132).

Plaintiffs again mischaracterize their allegations against CSXT when they assert that CSXT improperly "penetrated" floodwalls and negligently designed and constructed roadbed and other areas of track. Opp. at 6, 8, 11. As with their new assertions concerning CSXT's purported role in the September 11, 2004 derailment, plaintiffs do not allege in their complaints that CSXT is liable for "penetrating" floodwalls or negligent construction of roadbed or track. Even if such claims were alleged, however, they could no more be the basis for finding CSXT liable. As this Court has already held, CSXT has no duty to design or construct its railroad structures to prevent flooding or erosion as plaintiffs claim. Dismissal Order at 7. The duty to protect New Orleans residents from flooding lies with the State of Louisiana and the Army Corps of Engineers. *Id.* at 6-7. Moreover, such claims would be preempted under the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), which this Court has already held preempts the "'construction' of railroad tracks" and other structures related to "rail activity." *Id.* at 11.

Plaintiffs' attempt in their Opposition to add new allegations – particularly allegations known to be false – should not be permitted or credited by this Court.[3]

## II. Plaintiffs' Legal Arguments Are Similarly Suspect

### A. CSXT Does Not Have A Legal Duty To Protect Plaintiffs From Flooding

In their Opposition, plaintiffs provide no new authorities that require consideration or a different result than that in the Court's Dismissal Order. This Court has already concluded that

---

[3] In addition, the plaintiffs have attached an exhibit to their opposition memo that is neither sworn nor otherwise admissible in evidence. *See* Fed. R. Evid. 901(a).

1072309-1

5

"CSXT had no duty to protect the plaintiffs from flooding." Dismissal Order at 7. Nothing in plaintiffs' Opposition requires that the Court reconsider this holding.

Plaintiffs attempt to circumvent this Court's ruling by relying on "allegations" not found in their complaints. Even if the Court were inclined to accept plaintiffs' mischaracterizations of their pleadings, nothing the plaintiffs have offered changes this Court's prior analysis. Plaintiffs only offer different theories under which certain railroad structures could have weakened or otherwise damaged the floodwalls or levees. But this Court has already directly held that CSXT does not have a duty to "design and construct" its railroad apparatus "to prevent flooding or erosion". Dismissal Order at 7. Plaintiffs' claim that CSXT damaged the floodwalls and levees or otherwise interfered with the floodwalls and levees cannot create a duty to prevent flooding. This duty belongs solely to certain governmental agencies. *Id.* at 6-7.

Plaintiffs' reliance on *In re September 11 Litigation* is similarly misplaced. In attempting to draw comparisons between the facts in this case and the duty analysis in *In re September 11 Litigation*, 280 F. Supp.2d 279 (S.D.N.Y. 2003), plaintiffs hastily gloss over the district court's analysis, which is distinguishable in every way from the case at hand. The district court in *In re September 11 Litigation* held on the pleadings that airline and airport security defendants ("Aviation Defendants") owed a duty under New York law to those who suffered personal injury or property damage on the ground. *Id.* at 295. In reaching this conclusion, the district court found that the Aviation Defendants had some control over the third party tortfeasors (the hijackers) because they were responsible for security checks before passengers boarded the airplanes. *See id.* at 292-93. CSXT clearly does not have control over the parties responsible for the design and construction of the flood defense structures, which are wholly controlled by the

state and federal agencies. Nor has CSXT undertaken, as the airline and security defendants had with respect to security, an obligation to protect the population of New Orleans from flooding.

Plaintiffs have offered this Court no reason to reconsider its duty analysis in its Dismissal Order. Accordingly, this Court should hold that CSXT did not have a duty to plaintiffs to protect them from flooding and should dismiss plaintiffs' claims against CSXT.

### B. Plaintiffs Misconstrue Preemption Law

Plaintiffs challenge CSXT's argument that their claims are preempted by two separate railroad schemes – ICCTA and the Federal Railroad Safety Act ("FRSA"). Plaintiffs' arguments, however, misconstrue the concept of preemption, rely on allegations not contained in their complaints, and rely on cases that are not applicable to the facts of this case. There is nothing in plaintiffs' Opposition that should change this Court's finding that plaintiffs' claims are preempted.[4]

#### 1. The claims against CSXT are preempted by ICCTA

ICCTA preemption applies to all state efforts to "regulate railroad transportation." *Wisconsin Cent. Ltd. v. City of Marshfield,* 160 F. Supp.2d 1009, 1013 (W.D. Wisc. 2000). Under ICCTA, plaintiffs new allegations about "the negligent design and construction of the roadbed and other areas of the track" (Opp. at 11) are preempted. All such "property" is "related to the movement of passengers or property ... by rail." 49 U.S.C. § 10102(9). The Surface Transportation Board ("STB") has been clear that "there can be no state or local regulation of matters directly regulated by the Board – such as the construction, operation or abandonment of

---

[4] In its Dismissal Order, the Court held that "plaintiffs' claim that CSXT negligently designed and constructed the railroad crossings" – the same allegations made here by plaintiffs – is preempted by ICCTA. Dismissal Order at 11. The Court did not address CSXT's FRSA preemption argument.

rail lines." *CSXT Transportation, Inc. – Petition for Declaratory Order*, 2005 WL 1024490, at *2-4 (Surface Transportation Bd. May 3, 2005). Thus, a roadbed, tracks, and a railroad crossing are all within the exclusive jurisdiction of the STB, and plaintiffs' claims about the design and construction of this railroad apparatus are preempted.

In support of their argument, plaintiffs rely on two cases that purportedly show that "claims against railway lines for property damage caused by flooding are not preempted by federal law." Opp. at 11 (citing *Rushing v. Kansas City So. Railway Company*, 194 F. Supp.2d 493 (S.D. Miss. 2001), and *Emerson v. Kansas City So. Railway Company*, 503 F.3d 1126 (10th Cir. 2007)). This Court has already specifically distinguished the *Rushing* case and explained that the facts in that case did not relate to railroad operations but rather pertained to an earthen berm that did not "'directly relate to the manner in which the Defendant conducts its switching operations.'" Dismissal Order at 12 (citing *Rushing*, 194 F. Supp.2d at 501). Because plaintiffs' claims in the Master Complaint did relate directly to CSXT railroad operations at the railroad crossing "at or near the Industrial Canal's flood protection structures," as they do here, the Court found *Rushing* "readily distinguishable." Dismissal Order at 12.

Likewise, *Emerson* is factually distinguishable in the same way that this Court distinguished *Rushing*. In *Emerson*, the flooding was caused by the railroad discarding old railroad ties into a drainage ditch. *Emerson*, 503 F.3d at 1130. The Tenth Circuit determined that this constituted "possibl[e] tortious acts committed by a landowner who happens to be a railroad company" and not "transportation" as defined under Sec. 10102(9) of the ICCTA. *Id.* As explained by the Tenth Circuit, preemption did not apply to "applicable state common law governing the Railroad's disposal of waste and maintenance of the ditch." *Id.* The *Emerson* court compared its facts to the facts in *Rushing* and found its holding "analogous" to *Rushing*.

*Id.* at 1131. These cases are obviously distinguishable from the allegations brought by plaintiffs, which – as recognized by this Court – directly implicate CSXT's operations at a railroad crossing (on roadbed or track) and are preempted by ICCTA.

Accordingly, regardless of whether plaintiffs are referring to track, roadbed, or, as alleged in their complaints, a railroad crossing, the design and operation of this railroad instrumentality is within the exclusive jurisdiction of the STB. As held by this Court in its Dismissal Order, plaintiffs' claims are preempted.

### 2.     The claims against CSXT are preempted by FRSA

In challenging FRSA preemption, Plaintiffs suggest that federal railroad safety laws and state flood protection laws "should be allowed to co-exist." Opp. at 12. But "co-exist[ence]" is simply not the applicable standard, and plaintiffs' suggestion shows a profound misunderstanding of federal preemption. If the federal railroad law covers the subject matter of the state law or action as it does here – unless it falls under an exception – it is preempted. *See, e.g., CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 661, 675 (1993) (maximum railroad-speed regulations "cover" the subject-matter of train speed and therefore preempt a jury verdict that a train was traveling at an excessive speed). Plaintiffs offer no case law supporting their position that the facts in this case do not warrant the application of FRSA preemption. Indeed, other than citing to one case[5] for the proposition that FRSA preemption is "disfavored," plaintiffs rely solely on the *Emerson* case. The *Emerson* case, however, pertains to ICCTA and not FRSA. These are two separate railroad statutes with different preemption analyses. Accordingly, the

---

[5]     *Hester v. CSX Transportation, Inc.*, 61 F.3d 382 (5th Cir. 1995).

Court should afford no weight to the arguments made by plaintiffs with respect to FRSA preemption.

## Conclusion

For the foregoing reasons and those stated in CSXT's Motion to Dismiss, the Court should dismiss plaintiffs' complaints against CSXT for failure to state a claim under Rule 12(b)(6).

Respectfully submitted,

s/ Jonathan C. McCall
BRENT A. TALBOT (#19174)
JONATHAN C. MCCALL (#9227)
 -of-
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075

and

ROY J. RODNEY, JR. (#02079)
JOHN K. ETTER (#25042)
 -of-
RODNEY & ETTER, L.L.C.
620 North Carrolton Avenue
New Orleans, Louisiana 70119
Telephone: (504) 483-3224
Facsimile: (504) 483-2259

**ATTORNEYS FOR CSX TRANSPORTATION, INC.**

### CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2008, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana by electronic case filing/case management. All counsel of record are being served with this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of the same in the United States mail, properly addressed and with adequate postage affixed thereon.

s/ Jonathan C. McCall