June 2002

# RECAP Workplan Amendment – Bank Material Remediation Inner Harbor Navigation Canal – East Bank Industrial Area New Orleans, Louisiana

Prepared For

**US Army Corps of Engineers₀**

**New Orleans District**

Under Contract to
U.S. Army Corps of Engineers-Tulsa District
Total Environmental Restoration Contract
DACA56-94-D-0021   Task Order #0026

AI 1398

By:


**Washington**

WGI034901

| RECAP WORKPLAN AMENDMENT-BANK MATERIAL REMEDIATION<br>INNER HARBOR NAVIGATION CANAL-EAST BANK INDUSTRIAL AREA | AI 1398 |
|---|---|

## CANAL BANK AREA REMEDIATION

### SUMMARY

Bank material samples were collected at the most westerly point of the facility at 100 ft intervals along the bank of the Inner Harbor Navigation Canal (IHNC)-East Bank Industrial Area (EBIA). These samples were collected on the bank at an average distance of about 15 feet from the water line (See Figure 1). Chemical analytical results of a considerable number of these samples show unacceptable concentrations when they are managed under Risk Evaluation Corrective Action Program (RECAP) Management Option 1 (MO-1) as described in the RECAP workplan (Washington 2001). In the workplan it was proposed to remediate all unacceptable contamination by excavation and disposal at a permitted landfill. However, there are problems associated with excavation of the bank material, two in particular. The first is the proximity of these contaminated areas to the canal; this limits the extent of the excavation depth and methodology to the west of the contaminated sampling location. The second is the variety of fill, construction materials and debris that compose the bank make it extremely difficult to excavate without compromising the integrity of the entire bank and allowing water incursion. Therefore it is proposed to limit the excavation depth to a maximum of four feet bgs. to prevent water incursion. Further, the excavation in a westerly direction will be addressed in a two-phased approach as shown on Figure 2. Confirmatory samples will be taken from the center of the bottom, and from the northern, southern and eastern sidewall locations of the Phase 1 excavation as described in the SAP. Following backfill of the Phase 1 excavation with clean borrow material, the Phase 2 portion will be excavated in-the-wet, temporarily stockpiled and disposed of at a licensed landfill. The Phase 2 area will not be backfilled, but will be dressed to a 1v on 1 h slope.

The confirmatory sample results would then be subject to evaluation under MO-1. They would be evaluated along with the contaminant concentrations obtained from the grid-oriented borehole samples and from confirmation samples from other remedial excavations performed on the facility. If this statistical analysis results in concentrations equal to or below the MO-1 RECAP Standards (RS), then the site clearly qualifies for a No Further Action At This Time (NFAATT) determination. However, even if the statistically determined concentration central tendency is above the MO-1 RS, the facility(ies) should qualify for NFAATT determination(s) based on the premise that Washington Group and USACE utilized best management practices and made a "good faith effort" for the removal and disposal of bank material to the maximum extent pratical. Given the fact the database would be so much larger when an application is made for reuse of soils off-site, the statistically determined central tendency should be below the MO-1 RS.

| Washington Group International, Inc.<br>(504) 947-5900 | Page 2<br>Revision Date N/A |
|---|---|

WGI034903

| RECAP WORKPLAN AMENDMENT-BANK MATERIAL REMEDIATION | AI 1398 |
| INNER HARBOR NAVIGATION CANAL-EAST BANK INDUSTRIAL AREA | |

industrial activities over a long period of time that have been carried out with low regard for the environment. There appears to be no obvious plume although the accumulation in the bank may result from the site drainage. The liquid contamination may have travelled by secondary porosity through areas of debris causing contamination at contiguous sampling locations. Since sampling locations are at 100-ft. intervals, when we assume that the contamination runs from one location to another this means that large areas of the bank may be contaminated and require remediation. Because existing subsurface data from the grid-oriented boring program also show pervasive clays, contamination in the bank area may be confined to a few to several feet around these sampling points. It is important to remember that although some contamination has been found below the water table, the majority of the intervals that have needed excavation have been above the water table. There is no reason to assume that this is not true of the bank contamination.

## PHYSICAL CONSTRAINTS ON REMEDIATION

There are physical constraints that prohibit excavation-remediation to current target levels. The soils along the canal bank are not homogenous. They can be typically classified as Type A, consisting of clays, silty clays and sandy clay. There is a considerable amount of previously disturbed ground that incorporates debris consisting of wire rope, chain and other mechanical debris.

Any excavation in soils of this type would normally be restricted to a minimum slope of 53 degrees, with some sort of excavation protection system (sloping or benching) occurring at depths exceeding 5-ft. bgs.

However, the proximity of the canal waters and the soil type will not allow excavation to exceed approximately 4-ft. bgs. Should deeper excavation take place, especially on the western portion of the canal bank area, the potential for canal water intrusion is great, along with the possibility of broaching the excavation walls with a canal breakthrough.

## STANDARD APPROACH TO REMEDIATION/REMOVAL FOR THE IHNC-EBIA

In the SAP and the workplan, it was proposed that only one investigative sampling event would take place and that any contamination found that was above MO-1 RS would be remediated by excavation. Because of the distances between borehole sampling locations, unless there was evidence to show that a contiguous borehole was similarly contaminated, all excavations were started as a ten ft. by ten ft. area with a depth determined by the vertical extent of contamination down to a maximum depth of 22 ft. In a number of cases, based on field screening and/or lab verification during excavation, the horizontal extent of contamination extended beyond the initial ten ft. by ten ft. area and so the excavation has continued. In the bank locations, this standard excavation approach is modified to accommodate the physical constraints in the bank area; engineering controls; and the safety, stability and reach of the land-based excavators.

## ALTERNATIVE APPROACH FOR THE BANKLINE MATERIAL

| Washington Group International, Inc. | Page 4 |
| (504) 947-5900 | Revision Date N/A |

WGI034905