UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KATRINA CANAL BREACHES** | § | **CIVIL ACTION** |
| **CONSOLIDATED LITIGATION** | § | NO.   05-4182 "K"(2) |
| | § | |
| | § | |
| | § | **JUDGE DUVAL** |
| **PERTAINS TO:** | § | **MAG. WILKINSON** |
| | § | |
| **ALL LEVEE CASES** | § | |
| | § | |
| | § | |

**MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL**

**MAY IT PLEASE THE COURT:**

This *Memorandum* is respectfully submitted on behalf of Plaintiffs in the captioned matter.

**ARGUMENT**

In the course of this Court's ruling of January 30, 2008, the Court made a number of factual determinations critical to its determination that the Corps enjoyed immunity for certain aspects of Plaintiffs' lawsuit and further that the discretionary function exception to the Federal Tort Claims Act did not apply to the instant case. Yet the Court gave no notice to Plaintiffs that it would make such summary judgment-type determinations of fact and it never gave Plaintiffs the opportunity to

conduct full discovery and make an evidentiary presentation keyed to those evidentiary facts. The premature exercise of the Court's fact-finding ability in the context of its January 30, 2008 ruling requires reversal of that ruling.

Dismissing Plaintiffs' action against the Corps on the grounds of immunity, the Court made the following determinations of fact:

- ♦ "Congress enacted the LPV in 1965 as a 'project for hurricane-flood protection on Lake Pontchartrain, Louisiana.'"

- ♦ "Congress in 1991, when faced with the knowledge that parallel protection had been approved by the Corps for the 17th Street Canal, but not the Orleans Avenue and London Avenue outfall canals, specifically directed the Secretary of the Army "to provide parallel hurricane protection works along the entire lengths of the Orleans Avenue and London Avenue Outfall Canals by raising levees and improving flood protection works along and parallel to the entire lengths of the outfall canals and other pertinent work necessary to complete an entire parallel protection system."

- ♦ "When funding was not being provided through the Corps' budget process, Congress again appropriated funds and "directed the Secretary of the Army, acting through the Chief of Engineers, to incorporate parallel protection along the Orleans and London Avenue Outfall Canals into the authorized Lake Pontchartrain and Vicinity, Louisiana, Hurricane Protection project."

- ♦ "Such actions [as described above] demonstrate beyond peradventure Congress's tacit acceptance of the Corps' decision to abandon the Barrier Plan initially considered in 1965 and allow the Corps to proceed with the High Level Plan as manifested with the

parallel protection construction."

- "There was specific authorization of the parallel protection plan on all three canals."

- "While the decision to abandon the Barrier Plan for the High Level Plan may have been a death-knell for the City of New Orleans, when Congress forced the Corps to provide parallel protection to the outfall canals, any argument that such a change was not authorized falls. It is as if Congress approved the change *nunc pro tunc* with its actions."

- "Once the 17th Street Canal was incorporated into LPV, which is undoubtedly a flood control project, and the Corps erected the floodwalls that did eventually fail creating floodwaters damaging plaintiffs herein, the fact that those levees and/or floodwalls were part of the LPV created immunity for the Corps under § 702c for whatever defalcations it might have made in permitting the dredging of the 17th Street Canal. . . Had these outfall canals not been wrapped into the LPV and had the levees failed solely, or in part, as a result of the Corps' permitting the scouring of the east bank of the 17th Street Canal levee, § 702c, in all likelihood, would not have provided the United States refuge."

- Exercising its discretion, so as to fit within the discretionary function exception to the waiver of sovereign immunity contained in the Federal Tort Claims Act, the Corps had to weigh the facts that "the[Sewerage and Water Board] was indeed seeking an increase in the volume of water that it could drain through this canal to prevent flooding during a rain event. A countervailing factor would have been the

3

> prevention of flooding from storm surge; the Corps had determined to build I-Walls along this area in order to accomplish its goals. Thus, the Corps' decision was grounded in a policy-based judgment and is protected by the discretionary function exception."

These critical evidentiary findings formed the basis of the Court's dismissal of the Corps.

In its opinion, the Court recognized that fact-finding was not the proper function of a court adjudicating a Rule 12(b)(1) *Motion*, yet it felt that it could take judicial notice of certain facts surrounding the passage of legislation and the impact that had on the administrative actions of the Corps. The Court's attempt to wedge its broad factual findings into the narrow confines of Rule 201 of the Federal Rules of Evidence is, with all due respect, flawed. Characterizing the factual findings of the Court as "adjudicative facts" does not comport with the definition of those facts cited by the Court to the extent that adjudicative facts concern "<u>the immediate parties</u>--who did what, where, when, how, and with what motive or intent." *Opinion* at p. 25 (emphasis added). Yet the critical issue in this case is not what the <u>Corps</u> intended but rather what <u>Congress</u> intended when it authorized certain actions and withheld authorization for others. Delving into such legislative intent necessarily involves a more complex analysis than that permitted in a Rule 12(b)(1) *Motion* and certainly places that exercise beyond the mere taking of judicial notice of certain relevant adjudicative facts. *Compare, e.g., U.S. v. Evans*, 951 F.2d 729, 732 (6th Cir. 1991); *Doyle v. Suffolk Cty,*, 786 F.2d 523 (527 (2nd Cir. 1986). Thus the Court cannot utilize Rule 201 of the Code of Evidence to sidestep the procedure for either adjudicating a Rule 12(b)(1) *Motion* assuming the facts of the *Complaint* as true or giving proper notice and converting the jurisdictional motion to a Rule 56 *Motion for Summary Judgment*. The Court's attempt to do so in the context of the instant *Motion*

requires reversal.

Not only did the Court substantively err in making factual findings without appropriate evidence before it, the Court further failed to provide Plaintiffs with notice that it would find such facts and would take evidence on the issue of the legislative authorization for the Corps's levee construction. Where the Court desires to conduct such an inquiry in the context of a 12(b)(1) *Motion,* the need for fact-finding militates in favor of–and virtually requires–full discovery, evidentiary presentation and conversion of the *Motion* to one for summary judgment:

> In a factual attack such as we have here, however, the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. Id. In such a situation, the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1). *Id.; Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). However, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt,* 46 F.3d at 1003. "The underlying issue [in determining whether the jurisdictional question is intertwined with the merits] is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."

*Paper Int'l. Workers Union v. Continental Carbon Co.*, 428 F.2d 1235, 1292 (10th Cir. 2005). In this case, the question of whether the incorporation of levee protection into an otherwise non-flood control project "subsumed" the latter into the former is a question of fact which inquire an inquiry into legislative intent, agency action relative to the permitting and execution of that construction, and the intent of both Congress and the Corps in creating the levee protection system. The question of whether Congress properly authorized that project–and whether the Corps properly executed it–is

one inextricably intertwined with both the issue of immunity and the underlying merits of the case. Therefore, the Court should not have simply conducted its own fact-finding, but should have instead converted the *Motion* to a Rule 56 *Motion for Summary Judgment*, permitting the parties full opportunity to conduct discovery and present evidence on the factual issues surrounding the immunity inquiry.

Plaintiffs criticism is not merely academic. Had Plaintiffs been fully apprised of the far-reaching factual determinations the Court would make, they could have more thoroughly obtained discovery and presented <u>all</u> documents demonstrating the nature of the outfall canal levee system as falling outside the scope of immunity. For example, one of the essential facts found by this Court was that the erection of levees along the 17th Street Canal that canal part of a flood control project, on which the Corps could act with impunity. Yet the <u>facts</u> show that the Corps never intended that the levees would "subsume" the canals into a flood control project nor that all work conducted within those canals would be part of a flood control project. On February 11, 2008, the Corps produced to Plaintiffs Attached Exhibit "A". Exhibit "A" shows the "Project Costs" the Corps used to determine the amount to be spent for the erection of the levee system around the 17th Street Canal. Curiously absent from this document is any cost allocation for dredging in the Canal. Thus this document de-links the erection of the levee system from the dredging of the canal surrounded by the levee. Had Plaintiffs known that the Court would conduct a fact-finding expedition, they could have marshaled such documents as this[1] and thus presented the Court with factual disputes as to whether the Corps enjoyed blanket immunity for all acts taken in conjunction with the outfall canals. The

---

[1] Assuming the Corps complied with its discovery obligations, a concern mitigated by requiring discovery in conjunction with the Rule 56 *Motion*.

Court's failure to provide Plaintiffs with adequate notice of the need to convert the Corps' *Motion* to one for summary judgment, and its failure to actually make that conversion, prejudiced Plaintiffs' ability to properly meet the Government's *Motion*.

## CONCLUSION

For the foregoing reasons, Plaintiffs move this Court to vacate its January 30, 2008 Order, convert the Rule 12(b)(1) *Motion to Dismiss* brought by the United States of America into a Rule 56 *Motion for Summary Judgment*, order the conduct of discovery on the issue of the Corps' immunity and schedule an evidentiary hearing for consideration of the *Motion*.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

/s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
The Law Offices of Joseph M. Bruno, APLC
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@brunobrunolaw.com

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

 /s/Gerald E. Meunier
GERALD E. MEUNIER (La. Bar #9471)
LEVEE PSLC LIAISON COUNSEL
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Phone:504/522-2304
Facsimile:504/528-9973
E-mail:gmeunier@gainsben.com

For

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

Gerald E. Meunier
Daniel E. Becnel, Jr.
Joseph M. Bruno
D. Blayne Honeycutt
Hugh P. Lambert
Darlene Jacobs
Walter Dumas

## CERTIFICATE OF SERVICE

I do hereby certify that on this 21st day of February, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record. I also certify that I have mailed the foregoing by United States Postal Services, First Class, to all non-CM/ECF participants.

/s/ Joseph M. Bruno
JOSEPH M. BRUNO

8