## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * * | and consolidated cases |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge* — 05-5531 | * | |
| *Mumford v. Ingram* — 05-5724 | * | |
| *Lagarde v. Lafarge* — 06-5342 | * | JUDGE |
| *Perry v. Ingram* — 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* — 06-7516 | * | |
| *Parfait Family v. USA* — 07-3500 | * | MAG. |
| *Lafarge v. USA* — 07-5178 | * | JOSEPH C. WILKINSON, JR. |
| | * | |

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH PLAINTIFF'S SUBPOENA OF JANUARY 28, 2008 ISSUED TO THE MARITIME LAW ASSOCIATION

**MAY IT PLEASE THE COURT:**

The Maritime Law Association ("MLA"), not a party to this action, moves for a protective order quashing the subpoena issued by and through Plaintiffs in this consolidated action.

## BRIEF FACTUAL BACKGROUND

This action arises out of the alleged Katrina Canal Breaches as a result of various barges allegedly alliding with the levees of canals in the Ninth Ward of New Orleans, Louisiana and

causing a subsequent breach of the levees. The action has been consolidated in this Court as pending CIVIL ACTION NO. 05-4182 and consolidated cases.

Plaintiffs in this action have subpoenaed several maritime associations, including the MLA, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

The Nature of Movant The Maritime Law Association

The MLA is a nonprofit professional association of attorneys, judges, professors, and nonlawyers who have rendered distinguished service in the advancement of the maritime law or its administration.

The MLA was founded in 1899 to become a constituent member of the Comité Maritime International. It is an Affiliated Organization with the American Bar Association and has a seat on the ABA House of Delegates. Under Article 4 of its Articles of Incorporation, its objectives are to advance the Maritime Law of the United States, to facilitate justice in its administration, to promote uniformity in its enactment and to furnish a forum for the discussion and considerations of problems affecting the maritime law and its administration.

The affairs of the MLA are administered by of a Board of Directors. The Association as a whole meets in the Spring and Fall of each year. At these meetings and at other times, the MLA presents seminars and its Committees meet.

The Association is not an investigating, lobbying or special interest organization. Instead, its lawyer members represent all participants in the marine world. In all of its endeavors, the MLA takes care to ensure that no segment of the industry or the bar is given any special advantage or disadvantage, but rather strives to make the law work better for all maritime interests. Thus, for example, in cases in which a party is seeking Supreme Court review on a matter of importance to the maritime law, the MLA may file an *amicus curiae* brief urging the Court to

formulate a single rule in order to promote national uniformity, but typically will not take a position on the merits or urge that a particular substantive rule be chosen, adopted, or created.

At Committee and General meetings, members discuss current issues and propose reforms in the law. In no case, however, does the MLA investigate facts, adjudicate cases, or express opinions about the facts or outcome of particular cases.

All Standing Committee meetings and General Meetings are open to the public. Committee meetings normally involve an exchange of ideas about matters of general importance to the maritime law, with the Standing Committees usually focusing on a particular substantive or practice area within that body of law. Committee chairpersons report at the General Meeting and the transcripts of all General Meetings, Committee reports, and minutes of the Board of Directors are published and distributed to forty-three law schools and libraries and always available on the MLA web page, which is accessible to all members of the public.

The MLA has no employees and all of its substantive work is accomplished by its members, working as volunteers and without any sort of compensation.

<u>The Subpoena and Rule 45 Demands</u>

On or about January 30, 2008, a subpoena (Exhibit A) was received at the law firm of the President of the MLA, Lizabeth L. Burrell, in New York. Attached to the subpoena was a request pursuant to FRCP 45 for Ms. Burrell to appear at the offices of Brian A. Gilbert in New Orleans and to produce documents. A few days later, an identical Rule 45 request without a subpoena (Exhibit B) was received by another MLA member in New York.

The Rule 45 requests demand thirteen categories of documents. The first category is:

> Any and all materials, writings, investigations, reports, documents, communications, email, agenda, publications, speeches, lectures, consultations, notes, transcripts and recordings relative to the August

29, 2005 breakaway of Ingram Barge ING 4727, consequent damages, as well as any discussions and communications thereof, as referenced at http://www.mlaus.org/archives/library/826.pdf, and http://www.mlaus.org/archives/library/901.pdf

and

Maritime Law Association of the United States

Committee on Marine Insurance and General Average

Thursday, October 25, 2007

Sanibel Harbour Resort and Spa, Fort Myers, Fla. –

and/or in any other respect in the custody, control or possession of the Maritime Law Association of the United States."

*See* Plaintiffs' Subpoena ("Exhibit A").

The centered language above is taken from the Agenda for the Fall 2007 meeting of the MLA's Standing Committee on Marine Insurance and General Average (Exhibit E), and the two hyperlinks set forth in the request are the Agendas for that Committee's Fall 2005 and Fall 2006 meetings, respectively (Exhibits C and D). As with all such agendas, these agendas are available to the public on the MLA's website.[1] In general, such agendas are published on the website about six weeks before any meeting.

The only references to hurricanes in the three agendas identified in Plaintiffs' Rule 45 requests are as follows:

Prior to the Guest Speaker presentations, the Committee will discuss current insurance controversies in the aftermath of hurricanes Katrina and Rita . . . . [Fall 2005 Agenda, Exhibit C]

*Hurricane update:* Gene George will continue his series of updates on the insurance and legal fall-out from the 2005 hurricane season. [Fall 2006 and Fall 2007 Agendas, Exhibit D and E]

---

[1]   MLA members and forty-three law libraries, including both Tulane University and Tulane University Law School, also receive hard copies of the same documents.

The Committee's reports on all of these meetings are part of the Proceedings of the MLA, which are published on the website in their entirety and are available to the public on the website and at many law libraries. See Exhibit F at 14371-72 (MLA Document 783: Proceedings Fall 2005); Exhibit G at 14555-58 and 14570-74 (MLA Document 787: Proceedings Fall 2006); Exhibit H at 14 15240-41 & 15251-52 (excerpts from galleys for MLA Document 790: Proceedings Fall 2007) (not yet published but will be available within the next two weeks).[2]

On February 13, 2008, the MLA President, Ms. Burrell, had a telephone conversation in order to confer in good faith with Brian A. Gilbert, who identified himself as the lead counsel and the person with authority to deal with both the subpoena and the Rule 45 requests. Ms. Burrell advised that the MLA objected to the subpoena and Rule 45 requests, explained that bar association documents could not possibly be relevant to the facts, told Mr. Gilbert that all MLA documents were on the MLA website, and sought to have Mr. Gilbert withdraw the subpoena and discovery demands. He declined.

## LAW AND STANDARD OF REVIEW

[I]t is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994). While the federal discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials, *Hebert v. Lando*, 441 U.S. 153, 176 (1979), discovery does have "ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

---

[2]    For good measure, the Fall 2005 and Fall 2006 Newsletters of the MLA Committee on Marine Insurance and General Average are attached as Exhibits I and J. The Committee did not compose a Newsletter for its Fall 2007 meeting. Neither of the Newsletters refers or relates to the Fall 2005 hurricanes in any way, except that there is a statement heading the Fall 2005 Newsletter that reads: "Our primary thoughts at this time are with our friends and colleagues in the areas affected by hurricanes Katrina and Rita."

## I.   RULE 26(b) LIMITS THE SCOPE OF PERMISSIBLE DISCOVERY TO MATTERS RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES.

Rule 26(b), which defines "Discovery Scope and Limits," allows parties to obtain discovery only of matter that is "relevant to the claim or defense of any party" or "reasonably calculated to lead to the discovery of admissible evidence." FRCP Rule 26(b)(1).  Thus, the permissible scope of discovery only extends to efforts to learn facts or opinions that are relevant the individual case in which the discovery is sought.  The only additional discovery which can properly be demanded concerns the opinions of experts as described in Rule 26(b)(4).

As was stated in the Advisory Committee notes to the 1946 amendments to Rule 26(b), "matters entirely without bearing either as direct evidence or as leads to evidence are not within the scope of inquiry . . . ."  Moreover, because of the proliferation of abuse of discovery despite the 1946 amendment, Rule 26(b) has been successively revised since that time to narrow increasingly the limits of party-initiated discovery.  For example, in 1983, the Rule was amended "to add a sentence to deal with the problem of over-discovery" so as to "encourage judges to be more aggressive in identifying and discouraging discovery overuse."  Advisory Committee Notes to Rule 26(b), 1983 amendment.

Since abuses continued, in the amendments to Rule 26 in 2000, the Advisory Committee stated that it "intend[ed] that the parties and the court focus on the actual claims and defenses involved in the action. . . .  The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."  In addition, an "otherwise redundant" sentence was added to the Rule

"to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery."

*Id.*

At the same time, Rule 26(b) was also "amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." Advisory Committee Notes, 2000 Amendments to Rule 26(b)(1). Although "relevant" is not defined in the procedural rules, the Federal Rules of Evidence clarify in Rule 401 that relevance is to be gauged in relation to the *facts* at issue in the particular lawsuit:

> "Relevant evidence" means evidence having any tendency to make the existence of any *fact* that is of consequence to the determination of the action more probably or less probable than it would be without the evidence.

(Emphasis added.)

Accordingly, the proper province of discovery is uncovering facts relevant to the particular action. The only other permissible area for discovery concerns the opinions of experts who may testify at trial. *See* FRCP Rule 26(b)(4). Whether facts or opinions, however, discovery must be tied to the particular claims and defenses at issue in a given matter.

## II. FEDERAL DISTRICT COURTS HAVE AUTHORITY TO PROHIBIT DISCOVERY THAT IS OPPRESSIVE OR IMPOSES AN UNDUE BURDEN.

Federal Rule of Civil Procedure 26(c) expressly empowers United States District Courts to issue protective orders to prohibit discovery that subjects a person to "oppression, or undue burden or expense . . . ." Thus, courts have entered orders preventing discovery when the person from whom discovery is sought lacks knowledge of the facts relevant to the action. *See, e.g.,* *Lewelling v. Framers Ins.*, 879 F.2d 212, 218 (6th Cir. 1989); *Thomas v. International Business Machines*, 48 F.3d 478, 483 (10th Cir. 1995); 6 Moore's Federal Practice § 26.105[2][a] at 26-521 (3rd ed.) (courts are

willing to prohibit discovery where the person from whom discovery is sought "can establish as a threshold matter a lack of knowledge of any pertinent facts bearing on the action").

Courts have also been willing to prohibit discovery where permitting discovery to go forward would have a chilling effect on the exercise of legitimate rights. *See* Rivera v. NIBCO, 364 F.3d 1057, 1064-65 (9th Cir. 2004); 6 Moore's Federal Practice § 26.105[2][a] at 26-521 (3rd ed.).

### III. RULES 26(b), 26(c) AND 45(c) REQUIRE COURTS TO PROHIBIT DISCOVERY THAT IMPOSES AN UNDUE BURDEN, ESPECIALLY ON NONPARTIES.

In addition to the limits on discovery defined in Rule 26(b)(1), Rule 26(b)(2)(C) provides that in evaluating a discovery request, a court must consider whether "(i) the discovery sought . . . is obtainable from some other source that is more convenient, less burdensome, or less expensive" or "(iii) the burden or expense of the proposed discovery outweighs its likely benefit . . . ."

Rule 45(c)(3)(iv) supplements Rule 26(b)(2)(C)'s prohibition on unreasonably burdensome discovery by providing that a court shall quash or modify a subpoena if the subpoena subjects a person to undue burden. *Travelers Indemnity Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 2005 WL 975661 at *2 (D. Conn. Apr. 28, 2005).

An evaluation of undue burden as set forth in Federal Rule of Civil Procedure 45(c)(3)(A)(iv) requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. *Travelers*, 2005 WL 975661, at *2. Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.*

Courts also give special weight to the burdens placed on nonparties by litigation to which they are strangers. *Cusamano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998). The determination of the issue of burden and reasonableness is committed to the sound discretion of the trial court. *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

## IV. SUBPOENAS AND RULE 45 REQUESTS MUST BE ISSUED BY THE PROPER COURT AND HAVE LIMITED GEOGRAPHIC SCOPE.

Federal Rule of Civil Procedure 45(c) provides protections for persons subject to subpoenas. *Hobley v. Burge,* 223 F.R.D. 499, 502 (N.D. Ill. Sept. 17, 2004).

Rule 45(a)(2)(C requires that a subpoena must issue for production and inspection from the court for the district where the production or inspection is to be made.

In addition, Rule 45(c)(3)(ii) provides that a Rule 45 request "shall" be quashed or modified if it "requires a person who is not a party or an office of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person" unless the subpoena seeks the attendance at trial of a person who is in the state in which the trial is being held.

## ARGUMENT

Plaintiffs' subpoena is an abuse of discovery for several reasons.

The MLA, as part of its policy as a nonprofit legal association, avoids taking position on substantive legal issues. The MLA does not generate, investigate, or adjudicate the facts relevant to any particular case. Instead, its members, judges, lawyers, academics, and nonlawyers who have made special contributions to maritime law, use MLA meetings as a forum for discussion, on a general basis, of current maritime issues. Accordingly, if there were any discussion of the instant

case, it can have no bearing on the outcome of the Katrina Canal Breaches litigation and is irrelevant to the dispute.

Bar associations should be permitted to direct their time, energy, and financial resources to the end of improving the law, not to dealing with unreasonable, burdensome and ultimately pointless discovery exercises. It is for this reason that the MLA is making the instant motion. To accede to the Plaintiffs' demands in the instant case would be to expose the MLA to an endless string of boilerplate discovery demands from parties to maritime cases, or for that matter, nonmaritime cases, who engage in scattershot discovery instead of taking the time to tailor discovery to the particular claims and defenses raised in their particular suits. Responding to such intrusive and wasteful endeavors would make it impossible for bar associations to fulfill their missions.

Because of the nature of bar association discussions, the instant discovery demands are completely outside the permissible scope of discovery as defined by Rule 26(b). As with any bar association, the discussions and presentations at both Committee and General meetings of the Maritime Law Association by their nature cannot be evidence relevant to the facts in any case (except in a case in which those very proceedings were the subject matter of the suit) nor can they lead to the discovery of admissible evidence in a case. Moreover, to the extent that lawyers express opinions about the law at bar association meetings, such opinions are not discoverable unless the lawyer has been retained as an expert in and is expressing opinions about matters relevant to a particular suit, which is not the case here. As far as the MLA is aware, no one who attended any of the Committee meetings for which Plaintiffs seek records has been retained as a legal expert in this matter. Accordingly, Plaintiffs' subpoena and Rule 45 requests are not within the permissible scope of discovery.

With respect to Rule 26(b)(2)(C)(i), any MLA documents that even mention Katrina in any context are available on the MLA website or at any of the law libraries, including Tulane University, which receive all MLA publications. Accordingly, the instant discovery should be quashed simply because any MLA documents are obtainable from a more convenient, less burdensome, and less expensive source. In fact, the MLA has no documents responsive to Items 2 through 13. Any "material" potentially sought in Item 1 would consist solely of the agendas and reports of the MLA Standing Committee on Marine Insurance and General Committee and only because these documents mention Katrina-related cases. By definition, however, any such material could not be relevant to any claim or defense at issue in these consolidated cases because any mention of Katrina was necessarily only in the context of a general consideration of the insurance issues arising from that disaster and, by their very nature, any such discussions could neither state nor develop the facts relevant to the instant proceedings.

That there are alternative sources for MLA documents, however, is not the point: The real issue is whether or not litigants should be encouraged to impose severe burdens on bar associations, especially those like the MLA who do all their work through volunteers, by papering the world with discovery requests that simply cannot produce any relevant evidence and are not reasonably calculated to lead to the discovery of admissible evidence.

Here, Plaintiffs' demands do not even come close to seeking information that could constitute relevant evidence or lead to the discovery of admissible evidence. Plaintiffs might as well serve requests on every bar association that might have discussed in some context any of the cases spawned by Katrina or Rita or on newspapers that reported on the related events. Such abuse of discovery should not be rewarded.

Apart from burdening the MLA without any possibility of discovering relevant evidence or information that would lead to admissible evidence, demands such as that at issue here

will have the effect of chilling the free-flowing discussion that is essential to the proper functioning of a bar association.   If such document demands are permitted, depositions will surely follow. Lawyers who have no connection to a particular suit will refrain from commenting on the law or suggesting reforms if by participating in bar association meetings and discussions they will be exposing themselves to depositions at the whim of a party.

Finally, although the MLA does not seek to quash the subpoena or obtain a protective order on these grounds, we also note that the subpoena here was apparently issued by the United States District Court for the Southern District of New York, *see* Exhibit A, contrary to the requirements of Fed. R. Civ. Proc. 45(a)(2)(C).   Accordingly, that Rule also requires that the subpoena and Rule 45 requests be quashed because the MLA President and the MLA member who received the second Rule 45 request both reside and are employed in New York State.

## CONCLUSION

Absent an unusual case in which the functioning of a particular bar association is actually at issue, bar associations, and especially bar associations of limited resources such as the MLA, should not be subject to highly burdensome and overreaching fishing expeditions in the form of FRCP Rule 45 subpoenas which, if endorsed by the Court, would severely impair the free flow of discussion that is one of the hallmarks of an effective and productive bar association.

The particular facts relevant to a specific case, which is what discovery is supposed to develop, can never be created or revealed by lawyers engaging in discussions in a bar Association meeting.  If a litigant wants the opinions of MLA members who comment on a case in Committee meetings, General Meetings, or seminars, then such "opinions" should be considered expert opinions and the individuals should be engaged as experts and paid by the litigants.  Thus, apart from the absence of any possibility that facts can be created or revealed at a bar association meeting,

{N1770282.1}                                    15

unless and until particular MLA members are engaged as experts, their general opinions on this or any other matter are also outside the scope of discovery.

Accordingly, Movant, The Maritime Law Association, respectfully requests this Honorable Court to quash the Plaintiffs' subpoena and Rule 45 requests and to issue a protective order barring such discovery pursuant to Rule 26(c).

Respectfully submitted

GRADY S. HURLEY (#13913)
JONES, WALKER, WAECHTER,
POITEVENT, CARRÈRE & DENÈGRE, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, LA 70170
Telephone: (504) 582-8224
Facsimile: (504) 589-8224

And

JANET MARSHALL (#8953)
JOHNSON, JOHNSON, BARRIOS &
YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, LA 70139-7708
Telephone: (504) 528-3001 ext. 253
Facsimile: (5054) 528-3030

ATTORNEYS FOR THE MARITIME
LAW ASSOCIATION

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record electronically, by facsimile, by hand or by depositing same in the U.S. mail, postage prepaid and properly addressed this 27TH day of February 2008.

GRADY S. HURLEY

{NI770282.1}                                16