UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | ) | CIVIL ACTION No. 05-4182 "K" (2) |
| CONSOLIDATED LITIGATION | ) | |
| | ) | JUDGE DUVAL |
| _____ | ) | |
| | ) | MAG. WILKINSON |
| PERTAINS TO: LEVEE | ) | |
| (La. Envtl. Action Network v. U.S. Army | ) | |
| Corps of Engineers, 06-9147) | ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The Louisiana Environmental Action Network ("LEAN") respectfully submits its Opposition to the U.S. Army Corps of Engineers' (Corps') Motion to Dismiss (filed Jan. 11, 2008) (No. 10312).

## INTRODUCTION

This Court—in dismissing tort claims relating to the Corps' levee failures—noted that part of the "heart-wrenching" story of the Corps' levee failures is that there is "no provision in the [FTCA] which allows this Court to avoid the immunity provided by [Flood Control Act] § 702c." In re Katrina-Canal Breaches Consolidated Litigation, No. 05-4182, slip op. (No. 10984) at 44, 2008 W.L. 314396, at *25 (E.D. La. Jan. 30, 2008). But this case is different. In contrast to the FTCA, RCRA *unambiguously* authorizes this Court to issue an injunction, notwithstanding any immunity that would otherwise apply, to ensure that the Corps abates endangerments from

1

the contaminated sediments that the Corps' levee breach spread through the Lake Vista neighborhood.

Congress waived government immunity by stating that RCRA § 6961 "expressly waives ***any immunity otherwise applicable*** to the United States" with respect to "***all Federal***, State, interstate, and local requirements," specifically including "***any*** injunctive relief" concerning "control and abatement of solid waste or hazardous waste . . . ." 42 U.S.C. § 6961(a) (emphasis added). Courts have repeatedly held that terms such as "any" and "all" are unambiguous and should be given their common, ordinary meanings.

The Corps' Motion argues, however, that § 6961 "does not . . . contain any cause of action." Def. Br. at 2. That would be news to the Ninth Circuit, which affirmed an award of injunctive relief under § 6961 after noting, "[t]his action ***arises under*** [*inter alia*] RCRA § 6001, 42 U.S.C. § 6961, which defendants allegedly violated . . . ." Parola v. Weinberger, 848 F.2d 956, 959 (9th Cir.1988) (emphasis added). Indeed, by commanding unambiguously that "the Federal Government . . . ***shall be subject*** to . . . ***all*** Federal, State, interstate, and local requirements . . . including any . . . provisions for injunctive relief," Congress incorporated RCRA § 6972(a)'s authorization to the courts "[1] to restrain any person who has contributed or who is contributing to the past or present handling . . . of any solid or hazardous waste . . . [2] to order such person to take such other action as may be necessary, or [3] both." 42 U.S.C. §§ 6961(a), 6972(a)(1)(B) (emphasis added). Thus, "[§ 6961] provides for the imposition of injunctive relief ***and*** waives sovereign immunity with respect to the enforcement of injunctive relief by any State or Federal court." S. Rep. 102-67, 2 (1991) (102d Cong., 1st Sess. 1991, 1991 WL 104464 (Leg. Hist.)); *see also* Sierra Club v. Dep't of Energy, 770 F. Supp. 578, 584 (D. Colo. 1991) ("42 U.S.C. [§] 6961 provides not only for injunctive relief, but also for such

2

sanctions as may be imposed by a court to enforce such relief.") (citations and internal quotation marks omitted).

The Corps also argues that RCRA's authorization to this Court to issue injunctions to abate imminent endangerments does not qualify as a "requirement" because it is not an "objective" enough standard. Def. Br. at 12-13. But this argument is flatly inconsistent with the plain language of Congress' command that the term "requirement" includes "***any provisions for injunctive relief***" as well as with Congress' subsequent reference to "any such substantive or procedural requirement (including, but not limited to, any injunctive relief . . . .)." 42 U.S.C. § 6961. Moreover, the Corps bases its argument on a case that interprets a different statute which lacks RCRA's specific language including injunctive relief within coverage of the term "requirement." Def. Br. at 13 (citing Romero-Barcelo v. Brown, 643 F.2d 835, 855-56 (1st Cir. 1981) (interpreting the Noise Control Act). It is beyond dispute that in 1992 Congress amended § 6961 specifically "to overturn any court decisions which have restricted in any fashion the waiver of sovereign immunity provided in Section 6001 [§ 6961]" H.R. Rep. 102-111, 6, 1992 U.S.C.C.A.N. 1287, 1288, 1292 (1991); *see also* U.S. v. New Mexico, 32 F.3d 494, 498 (10th Cir 1994) (holding that "requirements are not limited to specific and objective criteria, but can include criteria that are open-ended.").

Finally, the Corps argues that the 'law of the case' doctrine requires that "[t]he Amended Complaint must be dismissed because LEAN is simply realleging the same [§] 6972(a)(1)(B) 'endangerment' claims it brought in its initial Complaint." Def. Br. at 6. The Corps' argument, however, fails to recognize that unlike the original Complaint, the Plaintiff brought the Amended Complaint under § 6961. On its face, § 6919 incorporates § 6972(a)(1)(B)'s authorization of injunctive relief by making U.S. agencies "subject to . . . ***all*** Federal . . . requirements, both

substantive and procedural (including . . . *any* provisions for injunctive relief . . .). First

Amended Complaint (No. 9130) at ¶¶ 1, 24, 25. This Court, in its prior ruling, granted the

Plaintiff leave to bring a claim under § 6961 by stating that "[b]ecause this Court has determined

that LEAN did not make a claim under § 6961, LEAN is granted permission to replead its claim

under § 6961." In re Katrina Canal Breaches Consol. Litig., No. 05-4182, 2007 WL 3270768, at

*11 (E.D. La. Nov. 02, 2007). Further, the "law of the case doctrine" is discretionary. The

Supreme Court has ruled that "[a] court has the power to revisit prior decisions of its own or of a

coordinate court in any circumstance." Christianson v. Colt Industries Operating Corp., 486 U.S.

800, 817 (1988). "All rulings of a trial court are subject to revision at any time before the entry

of judgment." U.S. v. Smith, 389 F.3d 944, 949 (9th Cir. 2004).

     The Corps' Motion to Dismiss is without merit and should be denied.


## **BACKGROUND**

     This case arises under RCRA § 6961 because the breach of the London Avenue Canal

released material that "includes urban runoff and other solid and hazardous waste"[1] and "may

contain arsenic, polycyclic hydrocarbons, and lead" into a New Orleans neighborhood. First

Amended Complaint at ¶¶ 38-39. Following the Canal's breach, LEAN's members and others

"may be exposed to these chemicals when handling or otherwise contacting the soil or when

breathing dust in the area." Id. at ¶ 40. Therefore, these sediments containing solid and hazardous

waste "may present an imminent and substantial endangerment to health and the environment."

Id. at ¶¶ 69, 71.

---

[1] Subject to exceptions that are not relevant here, solid waste is "discarded material" (whether
liquid or solid). 42 U.S.C. § 6903(27). "Hazardous waste" is solid waste that "*may* . . . pose a
substantial present or potential hazard to human health or the environment when improperly . . .
managed." 42 U.S.C. § 6903(5)(B) (emphasis added).

Under § 6961, which incorporates and makes the Corps subject to "all" federal provisions concerning "control and abatement of solid waste or hazardous waste," including 42 U.S.C. § 6972(a)(1)(B), The Corps is subject to liability because, *inter alia*, it is a "person" who "is an operator of the London Avenue Canal levees" whose "conduct in designing, building, and maintaining inadequate levees for the London Avenue Canal contributed to the handling and disposal of solid and hazardous waste that may present an imminent and substantial endangerment to health and the environment."[2] Id. at ¶¶ 10, 58, 67.

## STANDARD OF REVIEW

On a Fed. R. Civ. P. 12(b) motion, "[d]ismissal is proper only when it appears certain that the plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief." Robinson v. TCI/US West Communications Inc., 117 F.3d 900, 904 (5th Cir. 1997) (internal quotation marks and citation omitted).

## ARGUMENT

I.   **RCRA's PLAIN LANGUAGE SUBJECTS THE U.S. GOVERNMENT TO SUIT NOTWITHSTANDING ANY IMMUNITY THAT WOULD OTHERWISE APPLY.**

RCRA § 6961 makes the federal government "subject to . . . *all* Federal, State, interstate, and local requirements . . . including any . . . provisions for injunctive relief." Thus, § 6961 unambiguously incorporates RCRA § 6972(a)(1)(B)'s authorization to the courts to issue injunctions in a lawsuit that may be brought by "any person." 42 U.S.C. § 6972(a). The

---

[2] EPA interprets "handling" as follows: "'to deal with or have responsibility' for something." EPA, Guidance on the Use of Section 7003 of RCRA 13 (1997), http://www.epa.gov/Compliance/resources/policies/cleanup/rcra/971020.pdf.

legislative history to the 1992 RCRA Amendments reveals that the purpose and effect of § 6961 is two-fold:

> "…Section 6001 of the Solid Waste Disposal Act [§ 6961] ***provides for the imposition of injunctive relief <u>and</u> waives sovereign immunity with respect to the enforcement of injunctive relief*** by any State or Federal court."

S. Rep. 102-67, 2 (1991) (emphasis added). Similarly, legislative history reveals that:

> "The Committee intends for this legislation *to **overturn any court decisions which have restricted in any fashion the waiver** of* sovereign immunity provided in Section 6001 [§ 6961] . . ."

H.R. Rep. 102-111, 6, 1992 U.S.C.C.A.N. 1287, 1288, 1292 (1991) (emphasis added).

Consistent with its responsibility to construe RCRA in a manner that promotes its purpose,[3] the U.S. District Court for the District of Colorado recognized that "42 U.S.C. [§] 6961 provides not only for injunctive relief, but also for such sanctions as may be imposed by a court to enforce such relief." <u>Sierra Club v. Dep't of Energy</u>, 770 F. Supp. 578, 584 (D. Colo. 1991) (citations and internal quotation marks omitted); *see also* <u>Blue Legs v. U.S. Bureau of Indian Affairs,</u> 867 F.2d 1094, 1099 (8th Cir. 1989) (holding that § 6961 waives sovereign immunity "with respect to injunctive or other equitable relief."); <u>Parola v. Weinberger</u>, 848 F.2d 956, 959 (9th Cir. 1988) (upholding relief in an action that "***arises under*** [*inter alia*] RCRA § 6001") (emphasis added).

Clearly, RCRA § 6961 deserves a sensible interpretation which is in line with its plain language and congressional intent. The strong Congressional policy and intent underlying § 6961 is no mystery:

---

[3] *See* <u>Seneca Meadows, Inc. v. ECI Liquidating, Inc</u>., 427 F. Supp. 2d 279, 288 (W.D.N.Y. 2006).

6

> "A cornerstone of Federal environmental law is that Federal
> agencies are subject to the same environmental requirements and
> must comply with those requirements in the same manner and to
> the same extent as all other persons . . . . The Federal government
> must set an exemplary record of compliance . . . ."

S. Rep. 102-67, 2 (1991) (emphasis added).


## II.   INJUNCTIONS TO ABATE IMMINENT ENDANGERMENTS FIT RCRA's DEFINITION OF "REQUIREMENT."

### A.   Under the plain language of RCRA, provisions for injunctions qualify as a requirement.

Section 6972(a)(1)(B), a provision for injunctive relief, is a "requirement" under § 6961 because it fits within the definition of § 6961. Section 6961 defines a "requirement" as "*all*…requirements…(including …*any* provisions for injunctive relief.)" As the Ninth Circuit said in <u>Brem-Air Disposal v. Cohen</u>, "'any' means 'any.'" 156 F.3d 1002, 1004 (9th Cir. 1998) (citing <u>Bennett v. Spear</u>, 520 U.S. 154, 163-66 (1997)). In <u>Cohen</u>, the Ninth Circuit determined that a suit could be brought against the United States under § 6972(a)(1)(A) because "[p]ut simply, the [U.S. Supreme] Court recognized something quite basic: 'any' means 'any.' A statute that allows *any* person to sue any other person for *any* violation of *any* of the statute's requirements means precisely what it says." *See also* <u>New York v. EPA</u>, 443 F.3d 880, 885 (D.C. Cir. 2006) (noting that "the Supreme Court has drawn upon the word 'any' to give the word it modifies an expansive meaning . . . .") (internal quotation marks and citations omitted); *see also* <u>Sander v. Alexander Richardson Invs.</u>, 334 F.3d 712, 716 (8th Cir. 2003) ("In short, 'all' means all."); <u>National Coal. For Students With Disabilities Educ. and Legal Defense Fund v. Allen</u>, 152 F.3d 283, 288-89 (4th Cir. 1998) (In interpreting statutes, "words are generally given their common and ordinary meaning.") (citations omitted).

When § 6961 says "*all*…requirements…(including …*any* provisions for injunctive relief)," this definition clearly encompasses § 6972(a)(1)(B) because it is a provision for injunctive relief.

Section 6961's broad definition and its legislative history have led courts to find that Congress intended the definition of "requirement" under § 6961 to be expansive, such that it "must also include the procedural *means* by which those (objective) standards are implemented." Parola v. Weinberger, 848 F.2d 956, 961 (9th Cir. 1988). In Parola, the U.S. Court of Appeals for the Ninth Circuit examined Congress's definition of "requirement" under § 6961 in light of its legislative history. Id. The court determined that § 6961 is intended to parallel the Clean Air Act (CAA) and the Federal Water Pollution Control Act (FWPCA). Id. Originally, the U.S. Supreme Court interpreted "requirement" narrowly under the CAA and FWPCA; holding that it only included substantive requirements. Id. (citing Hancock v. Train, 426 U.S. 167, 172 (1976) and EPA v. California ex rel Water Resources Control Board, 426 U.S. 200, 212 (1976)). However, the next year "Congress effectively overruled the Supreme Court's interpretation" by redefining "requirement" in the CAA and FWPCA to include "process and sanctions." Parola, 848 F.2d at 961. Further, when passing RCRA, in light of the Supreme Court's narrow interpretation of "requirement", Congress added to § 6961 definition of "requirement" the language "both substantive and *procedural* (including … *any provisions for injunctive relief*…)." Id. Finally, in 1992, Congress enacted the Federal Facilities Compliance Act, amending § 6961. In that Act, Congress inserted the following language:

> The United States hereby *expressly waives any immunity otherwise applicable to the United States* with respect to any such substantive or procedural requirement (*including, but not limited to, any injunctive relief*, administrative order or civil or administrative penalty or fine referred to in the preceding sentence, or reasonable service charge).

Pub. L. 102-386, Oct. 6, 1992, 106 Stat. 1505 (emphasis added). The Conference Committee

explained that: "the conferees reaffirm the original intent of Congress that each department,

agency, and instrumentality of the United States *be subject to all of the provisions* of federal,

state, interstate, and local solid waste and hazardous waste laws and regulations." House

Conference Report No. 102-886, 1992 U.S.C.C.A.N. 1317, 1318 (1992) (emphasis added).

**B.   The Corps' argument depends on a 1981 case interpreting the Noise Control Act that does not apply here.**

The Corps advances a theory that 42 U.S.C. § 6972(a)(1)(B)'s provision for injunctive

relief to abate imminent and substantial endangerments is not "objective" enough to be a

"requirement." Def. Br. at 13. But Congress crafted language in § 6961 to defeat this

interpretation, defining "requirement" to "include[ ] . . . *any* provisions for injunctive relief." 42

U.S.C. § 6961 (emphasis added).

The Corps relies on a 1981 case interpreting the Noise Control Act (NCA) to argue that

only specific and uniform standards qualify as a requirement under § 6961. Def. Br. at 13 (citing

Romero-Barcelo v. Brown, 643 F.2d 835, 856 (1st Cir. 1981)). This argument misses the point

for two reasons.

**1.   The Romero-Barcelo case does not apply here because it interprets a different definition of "requirement."**

Noise Control Act § 12 is the only section of that act under which citizens can bring a

suit. Abreu v. U.S., 468 F.3d 20, 32-33 (1st Cir 2006); *see also* Puerto Rico ex rel. Sec'y of

Justice v. Rumsfeld, 180 F.Supp. 2d 145, 152 (D.D.C. 2002), *vacated on other grounds*, 2003

WL 21384576 (D.C. Cir. Jun 10, 2003). Section 12 provides for citizen suits to enforce "noise

control requirements;" however § 12 defines "requirements" by referencing only other federal

noise control statutes. Id. As a result, courts have held that § 12 of the NCA has a narrow definition of "requirement," only encompassing other federal noise control laws, not even substantive state law. Id. In contrast, "requirement" under § 6961 has an expansive definition, covering all requirements "both substantive and procedural (including … any provisions for injunctive relief…)." 42 U.S.C. § 6961.

### 2.   Courts have expressly rejected the Corps' arguments.

In U.S. v. New Mexico, 32 F.3d 494, 498 (10th Cir 1994), the United States tried to limit the definition of "requirement" in a manner similar to the Corps' current attempt. However, the United States Court of Appeals for the Tenth Circuit rejected this argument finding that "requirements are not limited to specific and objective criteria, but can include criteria that are open-ended." Id. In New Mexico, the Tenth Circuit had to determine if a state permit condition, which does not depend on pre-existing factors and is not capable of uniform application, constitutes a "requirement" under § 6961. Id. The United States argued that the permit is only a guide for permitting conditions, not a "requirement" because it does not state specific and objective standards. Id. However, the Tenth Circuit rejected this argument because it found that "requirement" under § 6961 includes criteria that are open-ended. Id. Thus the permit condition qualifies as a "requirement" under § 6961 because it is a procedural tool for the state to implement substantive standards. Id. In this case, the requirement of an injunction is the procedural tool that Congress selected to implement its substantive standard of abatement of "any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

### C.   Florida Department of Environmental Regulation v. Silvex Corp., does not advance the Corps' argument.

In the past, the Corps has argued that Silvex, 606 F. Supp 159 (D.C. Fla. 1985), should apply in this case, however this Court should reject that argument because other courts have recognized that Silvex ignores the legislative history discussed above. The court in Silvex, confronted with a Florida provision similar to § 6972(a)(1)(B), found that there was no waiver of immunity because the Florida statute was not a "*traditional* requirement." Id. at 164. However this decision has been sharply criticized as relying "upon Hancock and State Water Resources Control Board without giving proper due to the statutory amendments to certain waiver provisions that followed in the wake of these two Supreme Court decisions." U.S. v. Penn. Dep't of Envtl. Res., 778 F. Supp. 1328, 1333 (M.D. Penn. 1991) (explaining how the court in Silvex applied the wrong standard for defining "requirement"). The Silvex court failed to recognize that after Hancock and State Water Resources Control Board were decided, Congress added to § 6961's definition of "requirement" the language "both substantive and *procedural* (including … *any provisions for injunctive relief*…)." Id.

D. **The U.S. Government's own conduct shows that EPA considers the "imminent and substantial endangerment" standard sufficiently objection to enforce against federal agencies, including the Army.**

EPA routinely applies the "may present an imminent and substantial endangerment to health or the environment" standard, which the Corps now claims is not "objective" enough to apply to the government. *See* 42 U.S.C. § 6973 (authorizing EPA to bring suit or issue orders to abate such endangerments). Moreover, EPA has not hesitated to issue orders under § 6973 that apply the "imminent and substantial endangerment" standard to federal agencies, including the Army. *See* EPA Press Release, *EPA issues Order to Army at Fort Meade* (08/27/2007) (attached

as Ex. A).[4] EPA explained that "The order, issued under EPA's authority to address solid and hazardous wastes that may present an imminent and substantial endangerment to health or the environment, requires the Army to assess the nature and extent of the contamination, and to determine and implement appropriate corrective measures." Id. *See also* EPA Press Release, *EPA Orders Clean Up at Tyndall Air Force Base* (11/21/2007) (attached as Ex. B)[5] ("EPA is issuing an Order under Section 7003(a) of the Resource Conservation and Recovery Act (RCRA), which requires the Air Force to investigate contamination at the base and take action to clean it up.").

It is beyond dispute that 42 U.S.C. § 6972(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA") uses the same standard of liability as 42 U.S.C. § 6973 and, thus, that "§ 6972(a)(1)(B) and § 6973 are to be similarly interpreted." Cox v. City of Dallas, 256 F.3d 281, 294 n.22 (5th Cir. 2001) (noting congressional intent that "private parties may sue under the citizen suit provision [of § 6972(a)(1)(B) ] 'pursuant to the standards of liability established under [§ 6973]'"). Clearly the federal government, through its own actions, has shown that the "imminent and substantial endangerment standard" is capable of objective application.

## III.   THE 'LAW OF THE CASE' DOCTRINE IS DISCRETIONARY AND THE COURT HAS THE AUTHORITY TO REVISIT ANY ISSUE.

The Corps notes that this Court's November 2, 2007 Order went beyond the Corps' argument by holding "broadly that Section 6961 immunity cannot be transferred to claims under Section 6972." Def. Br. at 7 n.3. Then, in its next footnote, the Corps argues that under "the law

---

[4] Available at:
http://yosemite.epa.gov/opa/admpress.nsf/56d5d55f70218074852572a000657b5d/5a969270f928abbd852573440068dfd3!OpenDocument.
[5] Available at:
http://yosemite.epa.gov/opa/admpress.nsf/ab2d81eb088f4a7e85257359003f5339/e3c24372c5aa0f4e8525739a00718c37!OpenDocument

of the case doctrine, the Court's ruling is final." Def. Br. at 8 n.4. The law is clear, however, that "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance." <u>Christianson v. Colt Industries Operating Corp.</u>, 486 U.S. 800, 817 (1988). It is beyond dispute that "[a]ll rulings of a trial court are subject to revision at any time before the entry of judgment" and that "[t]he doctrine simply does not impinge upon a district court's power to reconsider its own interlocutory order provided that the district court has not been divested of jurisdiction over the order." <u>U.S. v. Smith</u>, 389 F.3d 944, 949 (9th Cir. 2004).

Clearly, under the plain language of § 6961 ("the Federal Government . . . ***shall be subject*** to . . . ***all Federal***, State, interstate, and local requirements"), Congress has imposed liability for imminent and substantial endangerments on federal agencies such as the Corps. *Cf.* <u>Sierra Club v. Dep't of Energy</u>, 770 F. Supp. 578, 584 (D. Colo. 1991); <u>Blue Legs v. U.S. Bureau of Indian Affairs,</u> 867 F.2d 1094, 1099 (8th Cir. 1989). Just as clearly, however, the First Amended Complaint's approach, in response to this Court's November 2, 2007 ruling—which grounds this lawsuit in § 6961's specific language incorporating the requirements of § 6972(a) —is technically more correct than the Plaintiff's initial approach. See First Amended Complaint at ¶¶ 1, 26.

## CONCLUSION

For all the forgoing reasons, the Corps' Motion to Dismiss must be DENIED.

Respectfully submitted on February 28, 2008,

/s/ Adam Babich

_____

Prepared in substantial part by Tim Stevens and Peter Nix, Student Attorneys, Tulane Environmental Law Clinic

Adam Babich, SBN: 27177
Tulane Environmental Law Clinic
6329 Freret Street
New Orleans, Louisiana 70118

Telephone: (504) 865-5789; Fax: (504) 862-8721
Babich Direct Line: (504) 862-8800

*Counsel for Plaintiff Louisiana Environmental
Action Network*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served upon counsel of record by electronic means on February 28, 2007.

/s/ Adam Babich

_____

Adam Babich