UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182<br><br>SECTION "K" (2) |

FILED IN:   05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6324,
05-6327, 06-0225, 06-0886, 06-1885, 06-2278, 06-2287,
06-4065, 06-4389, 06-4634, 06-4931, 06-5032, 06-5159,
06-5161, 06-5260, 06-5937, 07-1271

PERTAINS TO: MRGO

---

### NOTICE OF VIDEO-TAPED FEDERAL RULE 30(b)(6) DEPOSITION

**TO:**   To all Defendants and their respective counsel,
Through Defense Liaison Attorney of Record:
Ralph S. Hubbard III
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras St., Suite 2775
New Orleans, Louisiana 70130-6041

PLEASE TAKE NOTICE that Plaintiffs, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the video-taped deposition upon oral examination of the **WASHINGTON GROUP INTERNATIONAL, INC.** (hereinafter the "WGII"), concerning the matters as set forth on Exhibit A and B attached hereto.

-1-

The oral examination will take place as listed below, and will continue from day to day until completed. The depositions will be taken before a Notary Public or some other officer authorized to administer oaths under the law. You are invited to attend and examine the witnesses if you so desire.

The locations currently designated for the above referenced depositions are as follows:

1. Saturday, March 29, 2008, at the Courtyard Marriot Hotel, 3435, N. Atlantic Avenue, Cocoa Beach, FL., 32931; Telephone number (321) 784-4800.

2. Tuesday, April 15, 2008, at the Washington Division Headquarters, 720 Park Boulevard, Boise, Idaho, 83729; Telephone number (208) 386-5000.

The **WASHINGTON GROUP INTERNATIONAL, INC.** is requested to designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and to set forth, for each person designated, the matters on which the person will testify.

In connection with and pursuant to Fed. Rule of Civil Procedure 30(b)(5), the deponent is requested to designate and produce for inspection and copying documents responsive to this Notice five (5) business days prior to the deposition as identified on Exhibit "B."

## DEFINITIONS

1. "You" and its various forms such as "your" and "yourself" shall mean the person subject to this notice and/or subpoena and/or request for production and all present and former agents, employees, representatives, attorneys, custodian of records, and all other persons acting on behalf of such person, including, but not limited to, deponent, its divisions, parents, subsidiaries, related companies or corporations, predecessors, successors, and all present and former officers, directors, agents, employees, representatives, and attorneys, and all other persons acting or purporting to act on behalf of deponent.

2. "Documents" shall mean or refer to all written or graphic matter of every kind of description, however, produced or reproduced, whether draft or final, original or reproduction, and all tangible things within the scope of Federal Rule of Civil Procedure 30(b)(6), specifically including, but not limited to: writings, graphs, charts, photographs, satellite and/or radar imagery, telephone records, data compilations (from which information can be obtained, translated, if necessary,

by the respondent through detection devices into reasonably usable form), letters, correspondence, e-mail communications, memoranda, minutes, notes, contracts, agreements, books, diaries, time sheets, laboratory books, logs, bulletins, circular, notices, rules, regulations, prospects, directions, teletype messages, inter-office communications, intra-office communications, reports, company worksheets, credit files, evidence of indebtedness, negotiable instruments, telegrams, mailgrams, books, news releases, newspapers, magazines, advertisements, periodicals, pamphlets, sketches, drawings, statements, reports, articles of incorporation, by-laws, directives, minutes of meetings, balance sheets, income and loss statements, profit and loss statements, inventories, operating budgets, accounting worksheets, financial accounts, bills, vouchers, bank checks, proposals, offers, orders, acknowledgments, receipts, invoices, checks, working papers, telephone messages (whether written or recorded), notebooks, post cards, evaluations, recommendations, annual reports, confirmations, leases, analyses, feasibility or market studies, disbursement requests or orders, charts, graphs, indices, projections, forms, data sheets, data processing discs, or readable computer-produced interpretations thereof, booklets, articles, manuals, speeches, stenographic notes, maps, studies, tests, surveys, cables, tape and disc recordings (both audio and video), blueprints, containers, cartons, package labels, slides, audit reports, tender offers or invitations, personal interviews, and summaries, abstracts, compilations or paraphrases of any of the foregoing, or material similar to any of the foregoing, however denominated, which are in the possession, custody or control of the party upon whom this subpoena and/or request for production of documents is served or to which said party can obtain access. The subpoena and/or request for production of documents calls for originals, unless otherwise specified, and for all copies when originals are not available. If a document has been prepared in several copies, or additional copies have been made and the copies are not identified (or by reason of subsequent modification of the copy by additions or notations, or other modifications, are no longer identical), each non-identical copy is a separate "document."

3. With respect to the production of any documents which are claimed to be privileged, a statement shall be provided by the attorneys for the respondent setting forth as to each such documents (and, where applicable, each attachment thereto):

   a. the name of the sender, if any, of the documents;
   b. the name of the author of the document;
   c. the name of the person, if any, to whom the document and copies were sent;
   d. the date of the document;
   e. the date on which the document was received by those having possession of the document;
   f. a description of the nature and the subject matter of the document;
   g. the statute, rule or decision which is claimed to give rise to the privilege;

        h.    the last-known custodian of the document and the present location of the document;
        i.    attachments to the document;
        j.    the number of pages comprising the document;
        k.    whether the document is handwritten, typewritten or otherwise prepared; and
        l.    any other information which is useful in identifying or is necessary to identify the document.

4. Whenever appropriate, the singular form of the word shall be interpreted in the plural and vice versa.

5. All words and phrases shall be construed as masculine, feminine, or neutral gender according to the context.

6. "And" as well as "or" shall be construed either disjunctively as necessary to bring within the scope of the subpoena and/or request for production of documents any matters which might otherwise be construed to be outside of the scope of the subpoena and/or request for production of documents.

7. "Identify" with regard to a natural person, means to provide the name, last known address, last known telephone number; whether ever employed by you, and if so, dates of employment, descriptions and/ or title of each position held, and the reasons for termination; and, current employer and/or last known employer and position held.

"Identify," *with regard to a corporation*, means to provide the name of the entity along with its primary business address and telephone number.

"Identify," *with regard to documents or other inanimate objects*, means to provide the date, author, address, number of pages, subject matter, custodian of the document, and location of the document.

8.   a.  The term "IPET" means Interagency Performance Evaluation Task Force.

    b.  The term "IPET Report" means the Final Report of the Interagency Performance Evaluation Task Force, *Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System*, all volumes, dated March 26, 2007.

9.   a.  The term "TLA" means Team Louisiana, a team of Louisiana-based academic and private sector experts that was commissioned in October 2005 by the Louisiana Department of Transportation and Development to assemble to "collect forensic data related to the failure of the hurricane protection structure systems around greater New Orleans that occurred during passage of Hurricane Katrina on the morning of 29 August 2005.

b. The term "TLA Report" means the Final Report of Team Louisiana, *The Failure of the New Orleans Hurricane protection structure System during Hurricane Katrina*, dated December 18, 2006.

10. a. The term "ILIT" means Independent Hurricane protection structure Investigation Team, a team of experts led by the University of California at Berkeley.

    b. The term "ILIT Report" means the Final Report of the Independent Hurricane protection structure Investigation Team, *Investigation of the Performance of the New Orleans Hurricane protection systems in Hurricane Katrina on August 29, 2005*, dated July 31, 2006.

11. The terms "IHNC" and "Industrial Canal" mean the Inner Harbor Navigation Canal a/k/a the "Industrial Canal," a deep draft navigation canal which connects Lake Pontchartrain, the Mississippi River, and Reach 1 of the MRGO.

12. The term "GIWW" means the Gulf Intracoastal Waterway. The GIWW is the portion of the Intracoastal Waterway located along the Gulf Coast of the United States. It is a navigable inland waterway that provides a shallow draft channel with a controlling depth of 12 ft, and was primarily designed for barge transportation. For the purposes of this litigation, GIWW means the reach between the Mississippi River to the west and the Pearl River to the east.

13. a. The term "MR-GO" or "MRGO" means the Mississippi River Gulf Outlet Canal, a 76 mile deep draft navigation channel that extends southeast from the Inner Harbor Navigation Canal at the Port of New Orleans to the deep water in the Gulf of Mexico along St. Bernard and Orleans Parishes. The MR-GO has three distinct sections that are described as "Reaches" herein.

    b. The term "Reach 1 of the MR-GO" means the east-western trend of the MR-GO between the IHNC and Paris Road, until it splits into the GIWW to the northeast and "Reach 2 of the MR-GO" to the southeast. Reach 1 of the MR-GO runs on the same alignment with the GIWW and is located entirely in Orleans Parish.

    c. The term "Reach 1 Extension" means the segment of the MRGO that is located in the IHNC between the IHNC Lock to the south, and Lake Pontchartrain to the north.

    d. The term "Reach 2 of the MR-GO" means the southeastern land cut segment of the MRGO from Paris Road to the open waters of the Gulf of Mexico that runs through the marshes of St. Bernard Parish along Lake Borgne.

14. "17th Street Canal," "London Avenue Canal," "Orleans Avenue Canal," and "IHNC" means the entirety of the canal systems associated with the 17th Street Canal, London Avenue Canal, Orleans Avenue Canal and IHNC, and unless otherwise noted, is not limited to any specific breach location.

15. The term "LVP" or "LPVHPP" means the Lake Pontchartrain, and Vicinity, Hurricane Protection Project, as authorized by the Flood Control Act of 1965 (P.L. 89-298, 79 Stat. 1073, 1077 (October 27, 1965)), and in accordance with the Recommendations of the Chief of Engineers in House Document 231, 89th Congress.

16. The term "IHNC Lock Replacement Project" means the project authorized by the River and Harbor Act of 1956 and the Water Resources Development Acts of 1986 and 1996 designed to enlarge and deepen the IHNC Lock that connects the IHNC with the Mississippi River.

17. The term "Corps" means the United States Department of the Army, the United States Army Corps of Engineers, the Mississippi Valley Division of the United States Army Corps of Engineers, the New Orleans District of the United States Army Corps of Engineers, or any other Division or District of the United States Army Corps of Engineers.

18. The term "Public Works Project" or "Civil Works Project" means a Congressionally authorized public works project that is designed, constructed, maintained, and/or administered by the U.S. Army Corps of Engineers.

19. The term "Congressionally authorized" means a Public or Civil Works Project, as administered by the Corps that was authorized by the United States Congress.

20. The term "Chief of Engineers" means the Chief of Engineers commanding the U.S. Army Corps of Engineers.

21. The term "TERC" means Total Environmental Remediation Contract, the master contract relative to the site remediation/clearing project on the East Bank Industrial Area pursuant to the IHNC Lock Replacement Project, and any and all related agreements to this master contract.

22. The term "EBIA" means East Bank Industrial Area, the area on the East Bank of the IHNC between North Claiborne and Florida Avenues in New Orleans that was remediated/cleared pursuant to the IHNC Lock Replacement Project, as defined herein.

23. The term "Flood Control Project" or "Flood Control Structure" means any structure supposed to withhold water from entering populated areas, whether or not those structures technically present a flood control project or flood control structure pursuant to the U.S. Army Corps of Engineers engineer regulations and manuals.

24. The term "Hurricane Protection Project" or "Hurricane Protection Structure" means any structure supposed to withhold water from entering populated areas, whether or not those structures technically present a hurricane protection project or hurricane protection structure pursuant to the U.S. Army Corps of Engineers engineer regulations and manuals.

**THIS DEPOSITION IS NOT FOR RECORDS ONLY.**

Respectfully Submitted,
APPROVED PLAINTIFFS' LIAISON COUNSEL

_____
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS' LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

**MR-GO PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

s/ James Parkerson Roy
JAMES PARKERSON ROY (La. Bar # 11511)
MR-GO PSLC LIAISON COUNSEL
Domengeaux Wright Roy & Edwards LLC
P.O.Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

For

MR-GO PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE
Jonathan Andry
Clay Mitchell
Pierce O'Donnell
James Parkerson Roy

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Notice of Deposition upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 29th day of February, 2008.

                                                /s/ Joseph M. Bruno
                                                Joseph M. Bruno

## "EXHIBIT "A"

Please produce, pursuant to Federal Rule 30(b)(6), the person(s) most knowledgeable of the following areas:

1. All policies of insurance in full force and effect, related to the TERC, Task Order No. 26, during all times relevant to this litigation.

2. All policies of insurance which you believe would provide insurance coverage for the claims made against you in this litigation.

3. The relationship between Morrison Knudson and Washington Group International, Inc. ("WGII") including, but not limited to, the dates during which or on which there was any relationship.

4. The organizational structure and management hierarchy of Washington Group International, Inc. ("WGII") and/or its predecessor Morrison Knudson during all times pertinent to this litigation, as it relates to that division, department or other internal organization responsible for bidding, negotiating, writing, executing, implementing, and performing the TERC Task Order No. 26.

5. The contract award process, including but not limited to, knowledge or notice of an opportunity to perform work for the United States Army Corps of Engineers which said work was ultimately embodied in TERC, as it relates to Task Order No. 26, the bidding process, negotiation process, and or the methods by which WGII was awarded the contract which resulted in its opportunity to perform the work described by TERC, as it relates to Task Order No. 26, including dates and time lines for the TERC, as it relates to Task Order No. 26.

6. The past and present obligations of WGII regarding the TERC, and its relationship to Task Order No. 26.

7. All submissions prepared by WGII and/or Morrison Knudsen Corporation indicating its, their interest in, and/or efforts to obtain the contract known as TERC, Task Order No. 26.

8. All specifications/ or design parameter documents provided by the US Corps of Engineers or any of its subcontractors to WGII and/or Morrison Knudsen Corporation to prepare and develop the bid and work plans relative to the TERC, as it relates to Task Order No. 26.

9. All specifications and/or design parameter documents utilized by WGII and/or Morrison Knudsen Corporation to prepare and develop the bid and work plans for the TERC, as it relates to Task Order No. 26.

10. Any and all documents, memoranda or other communications that indicate or support the contention that the contract governing the TERC, Task Order No. 26 was a design specifications contract, i.e., that the contract states explicitly how the contract is to be performed and permits no deviation.

11. All project documents, including, but not limited to, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (EIS), Supplemental Environmental Impact Statements (SEIS), High Level Plans, studies, proposals, work orders, change orders, Request For Payments, etc., for the East Bank Industrial Area ("EBIA") TERC that regard or concern the East Bank Industrial Canal Area from 1999 till present.

12. All changes and/or modifications, including, but not limited to "MOD"s, to the original proposed TERC, as it relates to Task Order No. 26, from 1999 till present.

13. Any failure to comply with the TERC, Task Order No. 26 contractual specifications.

14. All Hydrology and Hydraulics Analysis Design Memoranda for the Mississippi River Gulf Outlet ("MRGO")/Gulf Intercoastal Waterway ("GIWW") and Industrial Canal relied upon by WGII and/or Morrison Knudsen Corporation from 1999 till the present to develop the work plans relative to the TERC, Task Order No. 26.

15. All permits from any governmental body obtained by anyone for the purpose of performing work on TERC, as it relates to Task Order No. 26.

16. All applications and documentation submitted in support or response to the permit applications to any governmental body for the purpose of performing work on TERC, as it relates to Task Order No. 26.

17. All communication, agreements, and/or requests for permits with the Orleans Levee District and/or the Port of New Orleans regarding any and all work performed on the East Bank Industrial Canal Area from 1999 till present.

18. Any governmental oversight of the conduct of WGII in performing TERC, Task Order No. 26, from 1999 till present.

19. The scope of governmental control over the actions of WGII in performing TERC, Task Order No. 26, from 1999 till present, including, but not limited to, the exercise of its supervisory judgment as to the particularities of the project, and the supervision and control of the implementation of the specifications TERC, Task Order No. 26.

20. All documents, correspondence, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (EIS), Supplemental Environmental Impact Statements (SEIS), studies, proposals, etc. relative to the **remediation of property lining the East Bank Industrial Canal Area.**

21. All documents, correspondence, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (EIS), Supplemental Environmental Impact Statements (SEIS), studies, proposals, etc. relative to any and all assessments and/or input performed by WGII concerning the **design, construction, maintenance or inspection of the levees/floodwalls along the East Bank Industrial Canal Area.**

22. All documents, correspondence, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (EIS), Supplemental Environmental Impact Statements (SEIS), studies, proposals, etc. relative to any and all **assessments performed prior to Hurricane Katrina related to the design, construction, maintenance, monitoring, inspection or otherwise, of the levees/floodwalls along the East Bank Industrial Canal Area and the potential impact on the flood control project between Sure Kote Road and Jordan Avenue, Florida Avenue and N. Claiborne Ave.**

23. All documents, correspondence, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (EIS), Supplemental Environmental Impact Statements (SEIS), studies, proposals, etc., **relative to any and all emergency preparedness coordination between the Orleans Levee District and any other federal, state, parish and local governmental agencies concerning the East Bank Industrial Canal Area.**

24. All complaints, indications, observations, work reports, dispersal/assignment of crews, referrals to WGII, etc., relative to the area adjacent to the East Bank Industrial Canal Area concerning levee/floodwall leaks, flooded yards, sand boils, water pooling in nearby residential yards, water running in trenches, etc. from 1990 till present.

25. All permits, applications for permits, documents, correspondence, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (EIS), Supplemental Environmental Impact Statements (SEIS), studies, proposals, etc., **relative to the dredging of the Industrial Canal Area from 1999 till present.**

26. All documents, applications and their supporting documentations, correspondence, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (EIS), Supplemental Environmental Impact Statements (SEIS), studies, proposals, work orders, change orders, Request For Payments, etc., **relative to all phases of pulling of piles and sheet piles along the East Bank Industrial Canal Area from 1999 till present.**

27. All permits obtained by you from the U.S. Corps of Engineers and the Orleans levee District concerning the East Bank Industrial Canal Area from 1999 till present.

28. All documents, correspondence, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (EIS), Supplemental Environmental Impact Statements (SEIS), studies, proposals, contracts, work orders, change orders, Request For Payments, etc. **regarding a system of monitoring pore water (ground water) pressures and/or ground water flow surveys, adjacent to the East Bank Industrial Canal Area from 1999 till present.**

29. All correspondence, schedules, documents, receipts, work orders, change orders, request for payments, plans, surveys, investigations, engineering investigations, studies, proposals, etc., **relative to inspections made of the levees/floodwalls along the East Bank Industrial Canal Area from 1999 till present.**

30. The safety precautions and/or measures taken by WGII to prevent damage to, including but not limited to under seepage and/or full scale collapse of the East Bank Industrial Area flood protection system.

31. All plans, specifications, surveys and/or reports identifying the sheet pile depth of the East Bank Industrial Area flood protection system.

32. The effect of WGII's removal and disturbance of soil and underground structures from the East Bank Industrial Area on flood wall support, including, but not limited to, under seepage and any measures taken to offset this effect.

33. The identification of all equipment utilized to monitor ground level vibrations, the purpose for utilizing all such equipment, the placement of such equipment in relationship to the work performed and the adjacent flood control structure, the data captured or recorded by such equipment, and any communications between WGII and any other entity regarding the results of the vibratory recordation.

34. The effect of vibrations produced by WGII during construction activity in East Bank Industrial Area that may harm the integrity of the flood wall protection system, and any measures taken to offset this effect.

35. An identification and description of WGII's analysis of geologic cross sections of the areas adjacent to both the north and south breach sites of the East Bank Industrial Area.

36. An identification and description of the subsurface structures, pilings, barges, and storage tanks removed during excavations at the EBIA, the date of that structures removal, the location of these removed items, and the method of that items removal.

37. An identification and description of all subcontractors involved in the TERC, Task Order 26 that regard or concern the East Bank Industrial Canal Area, and the oversight by WGII thoughout their activities.

38. Any and all considerations or concerns that underseepage could cause lateral transitional failure at the "south" breach on the IHNC at the lower edge of the Lower Ninth Ward.

39. An identification and description of WGII and/or Morrison Knudsen Corporation analysis of any growth fault zones and/or silt dikes in the East Bank Industrial Area.

40. Any and all considerations or concerns that underseepage could cause lateral transitional failure and/or hydraulic uplift at the inboard toe at the "north" breach on the IHNC at the edge of the Lower Ninth Ward.

41. WGII's knowledge of the potential impact of underseepage on a flood control structure at the East bank Industrial Area of the Industrial Canal.

42. Fuel tank removal and disposal; and contractor quality control specifically as it relates to the removal of anything either partially or totally buried beneath the soil surface, water surface, or water bottom.

43. Government furnished information and/or any information you had about the existence, nature of and/or vulnerability of flood control works, including, but not limited to, the nature, description, location of any flood control work between Sure Kote Road and Jordan Avenue, Florida Avenue and N. Claiborne Ave including, but not limited to, height, width, and depth of all structures and/or components thereof which make up the flood control works in that area.

44. All specifications and/or requirements prepared by the United States Army Corps of Engineers for any work performed by WGII in connection with TERC Task Order 0026.

45. The project work plan(s), including, but not limited to, the identity of all of its authors including identification of their fields of expertise, names, and contact information.

46. The person most knowledgeable as indicated above about the existence, nature of, construction, component parts, height, width and depth of any flood control works between Sure Kote Road and Jordan Avenue, Florida Avenue and N. Claiborne Ave and any pipe or other things which traversed, abutted, or went through those flood control works.

47. Any and all considerations or concerns about the impact that at any work performed by WGII or any of its sub-contractors pursuant to TERC Task Order 0026 would have on any flood protection works between Sure Kote Road and Jordan Avenue, Florida Avenue and N. Claiborne Ave.

48. Your relationship with Materials Management Group and the identification of all work performed by that entity in connection with TERC Task Order 0026.

49. The identification of all sub-contractors who had contracted with WGII to perform any of the work pursuant to TERC Task Order 0026.

50. The borough pit at the Southern end of the work site, including, but not limited to, any consideration regarding the impact of such a pit on the flood control works between Sure Kote Road and Jordan Avenue, Florida Avenue and N. Claiborne Ave. and steps taken to prevent or limit such impact, as well as any communication by you to the Corps of Engineers regarding these issues.

51. All Global Positioning System (GPS) and Differential Global Positioning System (DGPS) surveys relative to excavations performed at the East Bank Industrial Area pursuant to TERC, Task Order 26

52. All geotechnical and environmental geophysical investigations that were employed to investigate the soils of the EBIA pursuant to TERC, Task Order 26.

53. Any and all changes or modifications to the IHNC project that involved greater bank remediation than as contemplated in the original work plan(s).

54. The bank remediation work, including, but not limited to, any consideration regarding the impact of such a work on the flood control works between Claiborne Avenue and Florida Avenue, and steps taken to prevent or limit such impact as well as any communication by you to the Corps of Engineers regarding these issues.

55. WGII's site safety conditions at the East Bank Industrial Area as they relate to the TERC, Task Order 26.

56. The Daily Quality Control measures undertaken by WGII as they relate to the TERC, Task Order 26.

57. Reports, plans, procedures, or other considerations related to the removal of any items partially or totally buried at the work site, including barge removal, pile and sheet pile removal, and any other sub-surface structures removed from the EBIA.

58. Bi-weekly progress reports as they relate to the removal of any items partially or totally buried at the EBIA.

59. Photographic reports, photographs, videos, etc. regarding the removal of any items partially or totally buried at the EBIA.

60. Project completion report(s), including, but not limited to, any considerations addressing the impact of the work performed pursuant to TERC, Task Order No. 26 may have had on the flood control structures located between Sure Kote Road and Jordan Avenue, Florida Avenue and Claiborne Avenue.

61. Your relationship with Coastal Environmental Specialist, Inc. including, but not limited to, any work performed by that entity pursuant to TERC, Task Order No. 26.

62. Underground water flow at the EBIA, including, but not limited to, its impact on the flood control works between Sure Kote Road and Jordan Avenue, Florida Avenue and Claiborne Avenue, and all communication regarding the issue with the Corps of Engineers.

63. Ground water potentiometric surface maps developed or utilized at the EBIA as it relates to the TERC, Task Order 26.

64. Site geology/top soil and sub-soil conditions, including, but not limited to, its impact on the flood control work and all communication regarding the issue with the Corps of Engineers as it relates to Task Order 26.

65. The existence of and any work performed on any piping or other structures which went through or under the flood wall between Sure Kote Road and Jordan Avenue, Florida Avenue and Claiborne Avenue including but not limited to, its impact on the flood control work and all communication regarding the issue with the Corps of Engineers.

66. Any and all considerations, documents, memoranda or other communications that indicate a self-critical analysis and/or other internal or external analysis of the possibility that action or inaction of WGII may have contributed to the flooding of 9th ward or some portion thereof and/or some part(s) of New Orleans generally.

## **EXHIBIT "B"**

1. Any and all documents relative to Paragraph 1 of Exhibit "A";

2. Any and all documents relative to Paragraph 2 of Exhibit "A";

3. Any and all documents relative to Paragraph 3 of Exhibit "A";

4. Any and all documents relative to Paragraph 4 of Exhibit "A";

5. Any and all documents relative to Paragraph 5 of Exhibit "A";

6. Any and all documents relative to Paragraph 6 of Exhibit "A";

7. Any and all documents relative to Paragraph 7 of Exhibit "A";

8. Any and all documents relative to Paragraph 8 of Exhibit "A";

9. Any and all documents relative to Paragraph 9 of Exhibit "A";

10. Any and all documents relative to Paragraph 10 of Exhibit "A";

11. Any and all documents relative to Paragraph 11 of Exhibit "A";

12. Any and all documents relative to Paragraph 12 of Exhibit "A";

13. Any and all documents relative to Paragraph 13 of Exhibit "A";

14. Any and all documents relative to Paragraph 14 of Exhibit "A";

15. Any and all documents relative to Paragraph 15 of Exhibit "A";

16. Any and all documents relative to Paragraph 16 of Exhibit "A";

17. Any and all documents relative to Paragraph 17 of Exhibit "A";

18. Any and all documents relative to Paragraph 18 of Exhibit "A";

19. Any and all documents relative to Paragraph 19 of Exhibit "A";

20. Any and all documents relative to Paragraph 20 of Exhibit "A";

21. Any and all documents relative to Paragraph 21 of Exhibit "A";

22. Any and all documents relative to Paragraph 22 of Exhibit "A";

23. Any and all documents relative to Paragraph 23 of Exhibit "A";

24. Any and all documents relative to Paragraph 24 of Exhibit "A";

25. Any and all documents relative to Paragraph 25 of Exhibit "A";

26. Any and all documents relative to Paragraph 26 of Exhibit "A";

27. Any and all documents relative to Paragraph 27 of Exhibit "A";

28. Any and all documents relative to Paragraph 28 of Exhibit "A";

29. Any and all documents relative to Paragraph 29 of Exhibit "A";

30. Any and all documents relative to Paragraph 30 of Exhibit "A";

31. Any and all documents relative to Paragraph 31 of Exhibit "A";

32. Any and all documents relative to Paragraph 32 of Exhibit "A";

33. Any and all documents relative to Paragraph 33 of Exhibit "A";

34. Any and all documents relative to Paragraph 34 of Exhibit "A";

35. Any and all documents relative to Paragraph 35 of Exhibit "A";

36. Any and all documents relative to Paragraph 36 of Exhibit "A";

37. Any and all documents relative to Paragraph 37 of Exhibit "A";

38. Any and all documents relative to Paragraph 38 of Exhibit "A";

39. Any and all documents relative to Paragraph 39 of Exhibit "A";

40. Any and all documents relative to Paragraph 40 of Exhibit "A";

41. Any and all documents relative to Paragraph 41 of Exhibit "A";

42. Any and all documents relative to Paragraph 42 of Exhibit "A";

43. Any and all documents relative to Paragraph 43 of Exhibit "A";

44. Any and all documents relative to Paragraph 44 of Exhibit "A";

45. Any and all documents relative to Paragraph 45 of Exhibit "A";

46.     Any and all documents relative to Paragraph 46 of Exhibit "A";

47.     Any and all documents relative to Paragraph 47 of Exhibit "A";

48.     Any and all documents relative to Paragraph 48 of Exhibit "A";

49.     Any and all documents relative to Paragraph 49 of Exhibit "A";

50.     Any and all documents relative to Paragraph 50 of Exhibit "A";

51.     Any and all documents relative to Paragraph 51 of Exhibit "A";

52.     Any and all documents relative to Paragraph 52 of Exhibit "A";

53.     Any and all documents relative to Paragraph 53 of Exhibit "A";

54.     Any and all documents relative to Paragraph 54 of Exhibit "A";

55.     Any and all documents relative to Paragraph 55 of Exhibit "A";

56.     Any and all documents relative to Paragraph 56 of Exhibit "A";

57.     Any and all documents relative to Paragraph 57 of Exhibit "A";

58.     Any and all documents relative to Paragraph 58 of Exhibit "A";

59.     Any and all documents relative to Paragraph 59 of Exhibit "A";

60.     Any and all documents relative to Paragraph 60 of Exhibit "A";

61.     Any and all documents relative to Paragraph 61 of Exhibit "A";

62.     Any and all documents relative to Paragraph 62 of Exhibit "A";

63.     Any and all documents relative to Paragraph 63 of Exhibit "A";

64.     Any and all documents relative to Paragraph 64 of Exhibit "A";

65.     Any and all documents relative to Paragraph 65 of Exhibit "A";

66.     Any and all documents relative to Paragraph 66 of Exhibit "A";