UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION NO. 05-4182 |
| CONSOLIDATED LITIGATION | * | |
| *   *   *   *   *   *   * | * | |
| PERTAINS TO:        INSURANCE | * | SECTION "K-2" |
| | * | |
| R.C. TIPPEN and CARRIE TIPPEN | * | JUDGE DUVAL |
| C.A. NOS. 06-7701 c/w 06-8440 | * | |
| | * | MAG. JUDGE WILKINSON |

* * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, Fidelity National Property and Casualty Insurance Company (hereinafter referred to as "FNPAC"), a Write-Your-Own ("WYO") Carrier participating in the U.S. Government's National Flood Insurance Program (the "NFIP") pursuant to the National Flood Insurance Act of 1968, as amended (the "NFIA" - see 42 U.S.C. § 4001 *et seq*.), appearing herein in its "fiduciary"[1] capacity as the "fiscal agent of the United States,"[2] files the following Memorandum in Support of Motion for Summary Judgment.  Based on the points to be raised within this memorandum,

---

[1]  44 C.F.R. § 62.23(f)

[2]  42 U.S.C. § 4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

-1-

Plaintiffs' claims against FNPAC fail because there are no genuine issues of material fact, and thus summary judgment is proper as a matter of law, as the Plaintiffs never submitted a sworn Proof of Loss to FNPAC in support of their claim, as required by Article VII(J)(4) of the Standard Flood Insurance Policy ("SFIP").

## INTRODUCTION

In this Defendant's view, no further Federal benefits are payable under the Plaintiffs' NFIP-written Standard Flood Insurance Policy.[3]

One fact is both irrefutable and dispositive. Plaintiffs did not support their current claim for further Federal benefits under its SFIP by submitting a signed and sworn Proof of Loss at anytime, much less within the ten (10) month extension of the normal sixty (60) day Proof of Loss deadline that was issued by the Federal Insurance Administrator, an employee of FEMA, shortly after Hurricane Katrina occurred. (See **Exhibit A,** the FEMA extension). As such, and as per three (3) binding Fifth Circuit precedents, no other facts are material to this motion, for no benefits are payable under the Plaintiffs' SFIP. *Forman v. FEMA*, 138 F.3d 543 (5th Cir. 1998); *Gowland v. Aetna*, 143 F.3d 951 (5th Cir. 1998); and *Wright v. Allstate*, 415 F.3d 384 (5th Cir. 2005). Additionally, see Your Honor's ruling in *Godfrey v. Chertoff*, 2007 WL 2903228 at * 2-3 (E.D.La. Oct. 2, 2007), C.A. # 06-4739 (J. Duval), which interprets the proof of loss requirement in the same manner as advocated by Defendant.

---

[3] FNPAC has absolutely no reason to unnecessarily avoid paying Plaintiffs' flood insurance claim. FNPAC's profits are based upon the amount of money it pays out in claims. See 44 C.F.R. §62.23(i)(3) and 44 C.F.R. §62 App. A, Art. III(C)(1). As was recognized in *Eddins v. Omega Insurance Company*, 825 F.Supp. 752, 753 (N.D. Miss. 1993), the more money FNPAC pays out in claims, the higher the fee it receives under the Program. Accordingly, FNPAC's only motive for not paying further benefits to an NFIP participant is a belief that such a claim cannot legally be paid under the rules of the Program.

The captioned matter is no different than *Godfrey* and should also be dismissed as a matter of law.

See also, *Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co.,* 508 F.3d 1337 (11th Cir. 2007) (enforcing identical time limitations found in an identical extension granted by FEMA in 2004 after Hurricane Ivan.  Additionally, please see *Richardson v. American Bankers Ins. Co. of Florida*, No. 07-30271, (5th Cir. Feb. 27, 2008)[4](**Exhibit B**)(2005 extension).  In these cases, judges dealing with the same FEMA extension emanating from the 2004 and 2005 hurricane seasons held that FEMA only granted an extension/waiver of the proof of loss requirement for one year, and did not grant an open and unending waiver of the proof of loss requirement into perpetuity. The 2004 and 2005 proof of loss bulletins are identical, save for the dates.  Both the Eleventh and Fifth Circuits found that Plaintiffs' claims in *Shuford* and *Richardson*, respectively, were properly dismissed with prejudice, as no sworn Proof of Loss was submitted to the WYO insurer in either case.

Defendant submits, that because Plaintiffs' NFIP breach of contract claim is due to be dismissed under *Richardson, Forman, Gowland*, and *Wright*, as well as Your Honor's precedent in *Godfrey*, that this case should be dismissed in its entirety, with prejudice, and at the Plaintiffs' cost.

## FACTS AND PERTINENT POLICY PROVISIONS

The "facts" to be examined by this Honorable Court in the context of this Motion for Summary Judgment pertain to both the circumstances of the Plaintiffs' flood claim, and the relevant policy provisions contained within the Plaintiffs' SFIP. As such, this initial section of Defendant's Memorandum will discuss both the facts and the relevant policy provisions. Notably, because the

---

[4] Pursuant to 5th Circuit Rule 47.5.4, a copy of the decision is attached.  The decision of Court was not designated for publication.  However, it is the pronouncement of the Fifth Circuit on an identical issue before this Honorable Court and is posited to have precedential value.

SFIP is itself a Federal law,[5] there will be a certain amount of overlap between the factual and legal presentations.

Plaintiffs' lawsuit arises out of the flooding caused by Hurricane Katrina on August 29, 2005. Subsequent to that event, Plaintiffs submitted a claim for benefits under their in-force SFIP to their WYO carrier, FNPAC. Upon receipt of Plaintiffs' notice of the flood loss, Defendant commenced the process of adjusting the claim pursuant to the applicable Federal rules promulgated by FEMA on authority of 42 U.S.C. § 4019. Plaintiffs' SFIP was policy number 17 7700173894 02, with a policy term of July 30, 2005 to July 30, 2006, in the amounts of $75,000 building coverage and $18,000 contents coverage, each with a $500 deductible, for the property located at 10118 Springwood Street, New Orleans, LA 70127-3639. See, **Exhibit C**, the Declarations Page of the Plaintiffs' SFIP, Bate labelled "FNIC 0001-02." Pursuant to Article II, Definition 10, *Declarations Page*, the Declarations Page is "a part of this flood insurance policy."

The Defendant, working with an independent adjuster who was assigned to inspect and adjust the insured's flood claim,[6] determined that the insured was entitled to payment of $35,448.38 for the Plaintiffs' dwelling and $18,000.00 policy limits for the Plaintiffs' contents inside the dwelling under the policy, which FNPAC's records indicate has been paid to date on the Plaintiffs' claim. The Plaintiffs have not presented any documentation or facts which would demonstrate to FNPAC that

---

[5] *Mancini v. Redland Ins. Co.,* 248 F.3d 729, 723 (8th Cir. 2001).(The SFIP is "a regulation of the Federal Emergency Management Agency, stating the conditions under which federal flood insurance funds may be disbursed to eligible policyholders.")

[6] 44 C.F.R. Part 61, App. A(1), Art. VII(J)(7), part of the SFIP, reads as follows:
The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.  (Emphasis added).

they were entitled to any further Federal benefits under the policy. The Plaintiffs' dwelling had twenty inches of flood water on the interior and twenty-four inches on the exterior. See **Exhibit D**, Bates labeled FN 0003, the Preliminary Report from adjuster, Paul Placanio.

Plaintiffs, by filing the instant lawsuit, obviously disagree with the determination of the adjuster, Mr. Placanio, and the WYO carrier, FNPAC. Simply put, Plaintiffs assert that additional Federal benefits should have been disbursed to them under the NFIP. Irrefutably, this lawsuit was filed for the purpose of obtaining a court order requiring the Defendant to pay to the Plaintiffs additional Federal funds over and above their documented loss under the Plaintiffs' NFIP/SFIP.

The first question thus presented is whether the Plaintiffs complied with the legal obligations imposed upon them as a condition precedent to asking a Federal court to entertain their claim for Federal dollars.

Stated briefly, the applicable SFIP requirements are as follows: First, an NFIP participant cannot file a lawsuit seeking further Federal benefits under the SFIP unless the participant can show his or her prior compliance with "all" policy requirements. This is not some point buried deep within Federal regulations, but rather is a long standing nationally uniform requirement found within the text of every SFIP issued throughout the country. The rule is found within the SFIP at 44 C.F.R. Part 61, App. A(1), Art. VII(R) and reads as follows:

> You may not sue us to recover money under this policy unless you have complied[7] with all the requirements of the policy. If you do sue, you must start the suit within one year after the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the

---

[7] Note the use of the past tense. The claims presentment requirements are to be completed <u>before</u> a lawsuit is filed. This gives the WYO carrier the opportunity to evaluate and possibly resolve the dispute before federal funds are utilized to pay for the defense of a lawsuit. See 44 C.F.R.§ 62.23(i)(6) and (9).

covered property was located at the time of loss. This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

The particular condition precedent that Defendant asserts was not satisfied by the Plaintiffs is the Proof of Loss requirement. That requirement is found in the SFIP at Article VII(J)(4). It reads as follows:

J. Requirements in Case of Loss.

In case of a flood loss to insured property, you must:

4.      Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:

      a.       The date and time of loss;
      b.      A brief explanation of how the loss happened;
      c.      Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
      d.      Details of any other insurance that may cover the loss;
      e.      Changes in title or occupancy of the covered property during the term of the policy;
      f.      Specifications of damaged buildings and detailed repair estimates;
      g.      Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
      h.      Details about who occupied any insured building at the time of loss and for what purpose; and
      i.      The inventory of damaged personal property described in J.3. above.

Under normal circumstances, Plaintiffs' failure to file a Proof of Loss within sixty (60) days of Hurricane Katrina would bar the claim. See *Forman, Gowland,* and *Wright, supra*, and *Godfrey*, at * 2.  However, and as was recognized in *Forman*, the insured's duty is to file the Proof of Loss within sixty (60) days after the loss, "or within any extension authorized by FEMA", *Forman*, 138 F.3d at 545.  FEMA's power to waive program requirements arises from the authorities delegated

-6-

to it at 42 U.S.C. §§ 4019 and 4128(a), and appears within the SFIP at Article VII(D).[8] That

provision reads in pertinent part as follows:

> This policy cannot be changed nor can any of its provisions be waived without the
> express written consent of the Federal Insurance Administrator. No action we take
> under the terms of this policy constitutes a waiver of any of our rights.[9]

Plaintiffs did not file a Proof of Loss within sixty (60) days after Katrina. (See Affidavit of

Deborah Price, attached as **Exhibit E**). The Plaintiffs' claim is thus barred as a matter of law, unless

the Plaintiff can establish that the Proof was filed "within any extension authorized by FEMA."

*Forman,* 138 F.3d at 545.  Defendant knows of only one such extension relating to Katrina which

was "authorized by FEMA." It is the document attached as **Exhibit A.**[10]

    **Exhibit A** does not dispense with the Proof of Loss requirement in its entirety. All that it

does is dispense with the requirement in those situations where the insured is in agreement with the

figure determined to be payable by the WYO carrier. In those clams, *and only in those claims*, is a

Proof of Loss unnecessary. The purpose of that decision by the Administrator, as the document

makes clear, is to "expedite claims payments to policyholders." (**Exhibit A**).  Your Honor has

interpreted **Exhibit A** in *Godfrey*, at * 2, finding that the Plaintiffs had one year from the date of loss

to submit a sworn proof of loss.

    However, in any claim where "a policyholder disagrees with the insurer's adjustment,

settlement, or payment of the claim," then the insured has the right to submit a Proof of Loss

---

[8]  As was recognized in *Flick v. Liberty Mutual Ins. Co.*, 205 F.3d 386, 396 (9th Cir. 2000), *cert
denied* 531 U.S. 927 (2000), this power is reserved "exclusively" to FEMA. It is not possessed by
either the courts, or the WYO carriers. *Id*.

[9]  This power also appears at 44 C.F.R. § 61.13(d)("waivers").

[10]  Exhibit A is publically available as government document at http://bsa.nfipstat.com/wyobull/w-05040.pdf.  It thus may be properly considered by the Court.

swearing to what he or she believes is owed, and has a full year from the date of the loss to do so.

In this regard, the third and fourth paragraphs of FEMA's August 31, 2005 Bulletin read as follows:

> In the event a policyholder disagrees with the insurer's adjustment, settlement, or payment of the claim, a policyholder may submit to the insurer a Proof of Loss within one year from the date of the loss. The Proof of Loss must meet the requirements of VII(J)(4) of SFIP Dwelling or General Property Form or VIII(J)(4) of the SFIP Residential Condominium Building Association Policy Form. The insurer will then process the policyholder's Proof of Loss in its normal fashion. If the insurer rejects the Proof of Loss in whole or in part, the policyholder may file a lawsuit against the insurer within one year of the date of the written denial of all or part of the claim as provided in VII(R) of the SFIP Dwelling or General Property Form or VIII(R) of the SFIP Residential Condominium Building Association Policy Form.

> For example, a policyholder who suffered a flood loss from Hurricane Katrina on August 23, 2005, and disagrees with the insurer's decision based on the adjuster's report, has until August 22, 2006,[11] to file the Proof of Loss detailing the areas of disagreement. (**Exhibit A**)

The instant lawsuit is unquestionably based upon the fact that Plaintiffs "disagrees with the insurer's adjustment, settlement or payment of the claim." In this regard, Plaintiffs' Complaint asserts at paragraph 5 that Defendant failed to pay the value of the claim under the terms of the flood policy. As such, and as is made clear by **Exhibit A**, it was incumbent upon the Plaintiffs to preserve their right to file this lawsuit by filing a Proof of Loss within one (1) year of the date of the loss. Despite the extension, however, Plaintiffs did not file a Proof of Loss either (a) within sixty days after the loss, (b) within one year after the date of loss, or (c) at all. (See, **Exhibit E**, Deborah Price Affidavit). Under these circumstances, because the conditions precedent of the filing of this lawsuit were never satisfied by the Plaintiffs and the strict construction associated with the Proof of Loss requirement, no further benefits are payable under the SFIP. Plaintiffs have breached the terms of

---

[11] Defendant submits that August 23, 2005 is when Katrina struck Florida. Defendant construes the document - in its entirety - as allowing one year from the date of loss to file a proof from all Katrina claims, both in Florida and along the Gulf Coast, in this matter, through August 28, 2006.

the SFIP contract.

<strong>ARGUMENT</strong>

**1.**      **Legal Structure of the NFIP**

Within the Fifth Circuit's decisions in *Gowland, Wright*, and *Gallup v. Omaha Property and Casualty Ins. Co.,* 434 F.3d 341 (5th Cir. 2005), it explained in detail the legal structure of the NFIP, the relationship between the Federal government and the WYO Program carriers, and finally, the constitutional impediments to court orders requiring payments under flood policies where the plaintiff has not established full and complete compliance with the conditions precedent to the making of a claim under the policy.  Defendant suggests that a review of those three cases may be of assistance to this Honorable Court in its analysis of the instant Motion.  FNPAC points out the following:

The NFIP is a creature of the U.S. Congress, administered by FEMA and the Federal Insurance Administration ("FIA"), and underwritten by the U.S. Treasury.  <u>All flood loss claims presented under the NFIP are paid directly with U.S. Treasury funds</u>, regardless of whether the policy was issued by the government directly, or by a WYO Program carrier.  See 44 C.F.R. Pt. 62, App. A, Art. III(D)(1), and *Gowland,* 143 F.3d at 955.  The SFIP is written by the Federal government. FNPAC is a WYO Program Carrier authorized to issue the SFIP under its logo pursuant to the "Arrangement" between itself and FEMA, the text of which is found at 44 C.F.R. Pt. 62, App. A. As a matter of Federal law, FNPAC may not alter, amend, or waive any provision or condition of the SFIP.  The sole authority is the Federal Insurance Administrator and the waiver must be express and in writing.  See 44 C.F.R. Pt. 61, App. A(1), Art. VII(D); and 44 C.F.R. § 61.13(d).  Due to the statutory scheme of the NFIP and the fact that U.S. Treasury funds are at stake, strict adherence to

-9-

the conditions precedent for the payment of a claim is constitutionally required. *Gowland,* 143 F.3d at 954. To make payments not in strict compliance with the SFIP would be contrary to Congress' mandate and would violate the Appropriations Clause of the constitution. *Gowland,* 143 F.3d at 955.

**2.     The NFIP Proof of Loss Requirement**

Two underlying precepts govern how the courts have consistently approached analysis of the NFIP Proof of Loss requirement. The first is "uniformity of decision." Since 1978, when the Fifth Circuit decided *West v. Harris,* 573 F.2d 873 (5th Cir. 1978), the courts have consistently recognized the importance of a nationally-uniform rule of law governing claims disputes involving the NFIP:

> Since the flood insurance program is a child of Congress, conceived to achieve policies which are national in scope, and since the federal government participates extensively in the program both in a supervisory capacity and financially, it is clear that the interest in uniformity of decision present in this case mandates the application of federal law.
>
> *       *       *
>
> In sum, federal law controls disputes over the coverage of insurance policies issued pursuant to the National Flood Insurance Act of 1968 regardless of whether the district court exercises jurisdiction under 42 U.S.C.A. § 4053[12] or under 28 U.S.C.A. §1332. Congress has undertaken to establish a comprehensive flood insurance program under the control of the department of HUD to achieve policies national in scope, and the interest in uniformity of decisions compels the application of federal law.

*Gowland*, 143 F.3d at 881-82.[13]

The second precept arises from the Supreme Court's holdings concerning the Appropriations

---

[12]  *West* was announced while the Program was operating under Part A of the Act via an insurance pool operation. From 1978 to the present, the Program has been operating under Part B. Accordingly, the correct jurisdictional predicate is 42 U.S.C. § 4072. *Webb v. Aetna,* 1997 WL 433500, FN2 (E.D. La. July 31, 2007)(J. Fallon).

[13]  See *Flick,* 205 F.3d at 390, noting, based upon *West v. Harris*, that "there is a compelling interest in assuring uniformity of decision in cases involving the NFIP."

Clause in *O.P.M. v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). *Richmond*

was the foundation of the Fifth Circuit's 1998 holding in *Gowland*, wherein the court held that the

federal judiciary was without power to order a disbursement of funds under an SFIP issued by a

private insurance company where the proof of loss requirement had not been complied with by the

insured.  As Chief Judge Politz stated in *Gowland*, 143 F.3d at 955:

> Although the Gowlands' policy was written by Aetna, a private insurance
> company, payments made pursuant to that policy are "a direct charge on the public
> treasury." [FN7] When federal funds are involved, the judiciary is powerless to
> uphold a claim of estoppel because such a holding would encroach upon the
> appropriation power granted exclusively to Congress by the Constitution. "Any
> exercise of a power granted by the Constitution to one of the other branches of
> government is limited by valid reservation of congressional control over funds in the
> Treasury." [FN8][14] To date, the Supreme Court has not upheld an estoppel claim
> resulting in the payment of money out of the Treasury.

CONCLUSION

> We find that the theories of substantial compliance, waiver, and equitable
> estoppel are inapplicable to the facts presented herein. While this result may seem
> harsh in light of the Gowlands' ongoing negotiations with Aetna, we must remind
> that the National Flood Insurance Program is federally subsidized and enable
> consumers to obtain flood insurance which virtually would be impossible to purchase
> in the marketplace. Requiring the Gowlands to turn square corners when dealing with
> the Treasury "does not reflect a callous outlook. It merely expresses the duty of all
> courts to observe the conditions defined by Congress for charging the public
> Treasury." [FN9] Accordingly, the judgment of the district court must be and is
> AFFIRMED.

The Constitutional predicate to the Federal judiciary's unwavering strict enforcement of the

NFIP proof of loss requirement was discussed by the Ninth Circuit in *Flick,* 205 F.3d at 391:

> It is an axiomatic principle of constitutional law that the judiciary's power is limited
> by a valid reservation of congressional control over public funds. See *Richmond,* 496
> U.S. at 425, 110 S.Ct. 2465. 'Any exercise of a power granted by the Constitution to
> one of the other branches of Government is limited by a valid reservation of

---

[14] Footnote 8 in *Gowland* is to *OPM v. Richmond*.

congressional control over funds in the Treasury.' Indeed, we would equally usurp Congress's exclusive power to appropriate money were we to award an unauthorized money claim based on a theory of substantial compliance or notice prejudice. We therefore interpret *Richmond* to preclude a court from granting a remedy that draws funds from the Treasury in a manner that is not authorized by Congress.

Today, some ten years after *Gowland*, there exists a settled and nationally uniform view in the Federal courts that the SFIP Proof of Loss requirement must be strictly construed and enforced by the courts.[15] Notably, this settled view emanated from the holdings of the Fifth Circuit in such cases as *West*, *Forman*, *Gowland*, and *Wright*.

In *Forman*, the Fifth Circuit took up the issue in the context of an NFIP "direct" case. NFIP "direct" cases are cases where the SFIP was issued by the Government directly, as opposed to being issued by a WYO Program Carrier. *Forman* is also noteworthy in that the Plaintiffs' claim arose in New Orleans as a result of the May 8, 1995 flood, and because the Proof of Loss ruling that was reviewed by the Fifth Circuit in *Forman* emanated from the Eastern District of Louisiana, from a ruling by Judge Schwartz.

The Forman's home was unquestionably damaged by the May 8, 1995 flood. Moreover, it was unquestioned that the damages were indeed significant, and likely exceeded a value of $80,000.00. In support of that claim, Ms. Forman signed the Proof of Loss, and even had it notarized. However, she made the unfortunate mistake of writing at the bottom of her sworn Proof that "these figures are unacceptable." 138 F.3d at 545. FEMA took the position that by writing "these figures are unacceptable" upon the Proof, that her sworn declaration amounted to a swearing as to nothing. Judge Schwartz agreed, and the Fifth Circuit affirmed. 138 F.3d at 545. At bottom, it was the holding

---

[15]   See **Exhibit F**, a listing of cases from all over the United States where federal judges have enforced the NFIP Proof of Loss requirement.

of the Fifth Circuit in *Forman* that unless the claim being made by the NFIP participant was supported by a timely, sworn and complete Proof of Loss that actually swore to a "sum certain," that the claim could not be entertained in the courts:

> By writing "THESE FIGURES ARE UNACCEPTABLE" next to the listed amounts, Appellants in effect nullified any representations as to the "actual cash value loss" or "the net amount claimed" that these figures otherwise would have made. [FN5] See Rec. 13. Moreover, by failing to provide "acceptable" damage figures of their own, Appellants did not provide any sworn information whereby FEMA could evaluate "the merits of their claim." Appellants presumption that their claim could be processed in these circumstances is simply implausible, if not absurd. (emphasis in original) 138 F.3d at 545.

The Formans also argued in the alternative that FEMA should be estopped from asserting as a defense their failure to meet Proof of Loss filing requirement. The *Forman* court, at 138 F.3d at 545-46, disagreed and held:

> Appellants' claim ignores the Supreme Court's recent holding, made under the Appropriations Clause of the Constitution, Art. I, § 9, cl. 7, that the judiciary is powerless to uphold an "an assertion of estoppel against the Government by a claimant seeking [money from the Public Treasury contrary to a statutory appropriation]." *OPM v. Richmond,* 496 U.S. 414, 434, 424, 110 S.Ct. 2465, 2476, 2471, 110 L.Ed.2d 387 (1990). The Court recognized that " 'not even the temptations of a hard case' will provide a basis for ordering recovery contrary to the terms of [a] regulation, for to do so would disregard 'the duty of all courts to observe the conditions defined by Congress for charging the public treasury.' " *Richmond,* 496 U.S. at 420, 110 S.Ct. at 2469 (quoting *Federal Crop Ins. Corporation v. Merrill,* 332 U.S. 380, 385-86, 68 S.Ct. 1, 3-4, 92 L.Ed. 10 (1947)) (emphasis added)
>
> Payments awarded under FEMA-issued flood insurance policies are indeed "a direct charge on the public treasury." *In re Estate of Lee,* 812 F.2d 253, 256 (5th Cir.1987). FEMA, acting well within its statutory rule- making authority, 42 U.S.C. § 4013,[16] has established that a claimant must file a Proof of Loss containing certain specified information before his claim may be considered. 44 C.F.R. Pt. 61 App. A(1), Art. IX, J(3). As established above, appellants failed to satisfy this regulatory requirement in this case.

---

[16] The reference to § 4013 (which governs the "conditions of insurability" should actually have been to § 4019, which concerns claims adjustment. *West, supra,* at 880-81.

-13-

Within one year of when *Forman* was decided, the Fifth Circuit took up the exact same issue in a case where the SFIP had been issued by a WYO Program Carrier, rather than by FEMA directly. See *Gowland, supra*. The exact same rule applied, as per quotes from *Gowland* set forth earlier.

In *Wright v. Allstate,* 415 F.3d 384, 386 (5th Cir. 2005) the plaintiff submitted a proof of loss statement to WYO Carrier Allstate that stated "to be determined" as the net amount claimed under the SFIP.  Plaintiff argued in the lower court that Allstate should be estopped from strictly enforcing the proof of loss requirement in that case, because of a letter that had been sent by an Allstate adjuster to the insured, which the insured construed as indicating that the proof of loss was sufficient. The lower court in *Wright* held that Allstate was indeed estopped, given the misleading letter.  The Fifth Circuit reversed, *Id.*, at 388, holding that the rule had to be strictly construed and enforced by the courts, and that theories such as estoppel were inapplicable to such cases arising out of the NFIP:

> Where federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds. See *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 81 L.Ed. 2d 42 (1984) ("protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law. . . . [T]hose who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to law."). While Wright purchased his SFIP from Allstate, the NFIP is a federally-administered program supported by funds drawn from the federal treasury. See *Gowland*, 143 F.3d at 955. The terms of the SFIP are dictated by FEMA, and cannot be waived or modified by Allstate. 44 C.F.R. §§61.4(b), 61.13(d). Under these circumstances, and in light of our previous caselaw, we hold that the district court erred in estopping Allstate from asserting Wright's failure to file an adequate POL as a basis for denying his claim.

Today, every Circuit Court of Appeals to have taken up the issue has agreed with the Fifth Circuit's holding in *Gowland* - strict enforcement of the rule is <u>constitutionally</u> required even when the SFIP is issued by a WYO carrier.  *Phelps v. FEMA*, 785 F.2d 13 (1st Cir. 1986); *Suopys v. OPAC,* 404 F.3d 805 (3rd Cir. 2004); *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596 (4th Cir.2002)*;*

-14-

*Neuser v. Hocker*, 246 F.3d 508 (6th Cir. 2001)*; Mancini v. Redland Ins. Co.*, 248 F.3d 729 (8th Cir. 2001); *Flick v. Liberty Mutual*, 205 F.3d 386 (9th Cir. 2000) *cert. denied,* 531 U.S. 927 (2000); and *Sanz v. U.S. Security Ins. Co*., 328 F.3d 1314 (11th Cir. 2003) and *Shuford, supra*. In addition, the rule has been the subject of literally dozens of district court opinions reaching the exact same conclusion, both before and after the rendering of the above-referenced appellate decisions. Attached hereto as **Exhibit F** is a listing of 75 decisions from all over the United States, establishing quite clearly that there is indeed a uniform rule of law from one end of the country to the other, clearly holding that flood insurance lawsuits cannot proceed unless the insured can establish his or her prior compliance with the Proof of Loss requirement.

There are myriad holdings of the Eastern District of Louisiana which are of accord. Please see *Arcell v. Kennedy*, 1998 WL 274269 *2-3 (E.D. La. May 26, 1998) (J. Berrigan); *Lafon  v. State Farm Fire & Cas. Co.,* 1999 WL 511400 *2-3  (E.D.La. July 20, 1999) (J. Vance); *Hamide v. OPAC*, 2004 WL 74316 *2-4 (E.D.La. Jan. 14, 2004) (J. Fallon); and *Kohler v. FEMA*, 2005 WL 757267 *2-4 (E.D.La. Mar. 30, 2005)(J. Feldman), among many others, as well as the cases cited.

Plaintiffs cannot argue ignorance of this provision.  In *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947), the Supreme Court <u>held</u> that participants in Federal insurance programs are charged with knowledge of the laws governing those programs.  The Supreme Court went further in *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 64 (1984) and held that participants in Federal benefit programs do so under a further legal duty to "familiarize" themselves with the requirements of those programs.  Based on *Heckler* and *Merrill*, the Plaintiffs at bar are legally required to make certain that they fully understand what would be required to properly present a claim for benefits under the NFIP.

Since Plaintiffs did not submit a sworn Proof of Loss with respect to their flood claim, summary judgment should be granted to FNPAC at this juncture because the Appropriations Clause of the U.S. Constitution prohibits payment to the Plaintiffs.  While such an outcome may seem harsh, it is in accord with the Supreme Court's dictate of "men must turn square corners" when dealing with the Government.  *F.C.I.C. v. Merrill,* 332 U.S. at 385, 68 S.Ct. at 4.   Justice Frankfurter went on to state that "not even the temptations of a hard case" allow the Court to read the regulations with "charitable laxity."  332 U.S. at 386, 68 S.Ct. at 4.

As one final point, Defendant anticipates that the Plaintiffs might elect to argue that FEMA's August 31, 2005 Bulletin (**Exhibit A**) should properly be construed as a complete waiver of the Proof of Loss requirement as to "all" claims arising from Katrina, and not just in those where the insured and the insurer were able to avoid litigation because they were able to reach an agreement as to the amount of the payable claim. Significantly, this would constitute an argument that FEMA granted a waiver that was *completely* open-ended in both time and scope as to all 239,000 NFIP claims arising in the year 2005, as well as to all 75,000[17] claims that arose during the 2004 storm season.[18] Under such an argument, no one who filed an NFIP/SFIP claim at anytime during the catastrophic 2004 and 2005 hurricane seasons ever had to file a Proof of Loss at all, and all such persons retained (and would still retain) the right to file a lawsuit today without ever having had to present a sworn Proof of Loss with supporting documentation to their WYO carrier as a condition precedent to the filing of that lawsuit.  However, such an interpretation is contrary to the Fifth

---

[17]  These two numbers are established in the Administrator's testimony before Congress on January 25, 2006. (Said testimony is available on Westlaw at: 2006 WLNR 1374497).

[18]  The one-year extensions in 2004 and 2005 were identical save the dates.

Circuit's holding in *Richardson,* attached, and the Eleventh Circuit in *Shuford, supra.*  Moreover, Your Honor has recognized in *Godfrey*, at * 2, that  an argument of the FEMA extension/waiver being open and unending is futile and incorrect.  The waiver only allowed for one year to submit the sworn Proof of Loss.

Defendant would add this: If in fact it were FEMA's intention to completely dispense with the Proof of Loss and documentation[19] requirements in literally all 300,000 claims arising from the catastrophe storms of 2004 and 2005 and thereby to allow all such claims to proceed directly to Federal court without any prior evaluation by the WYO carrier, then FEMA's 2004 and 2005 bulletins could simply have said so. The inclusion of the third and fourth paragraphs (in both years) would have been unnecessary, and would have actually been counter-productive. The only conceivable purpose of those additional paragraphs was to make certain that it was well understood that wherever a lawsuit was going to ensue over a contested claim for additional benefits, that the requirement of a proper proof of loss with supporting documentation would still be in place, albeit with an extended time frame of one year, rather than sixty days. Defendant also respectfully posits to the Court that the FEMA waiver should be read *in pari materia*, taking the entire document into context with all of its constituent parts.  Given that the Plaintiffs at bar did not comply with even the extended time frame, their claim is barred for the exact same reasons set forth in *Richardson, Forman*, *Gowland*, and *Wright*, as well *Godfrey*.

Also, FEMA's approach to the situation arising from the 2004 and 2005 storms comports with why FEMA originally adopted and has always enforced its Proof of Loss requirement. "The

---

[19]  The SFIP documentation requirements hold the exact same legal status as the proof of loss requirement. *Durkin v. State Farm*, 3 F.Supp.2d 724, 727-28 (E.D.La. 1997)(J. Vance).

proof of loss requirement was included in order to provide the insurer with the full opportunity to investigate and defend every claim." *Dempsey v. Dir. FEMA,* 549 F.Supp. 1334, 1339 (E.D. Ark. 1982), citing *Brennan v. FEMA 1981 Fire and Casualty Cas.,* 841, 843 (D. Mass. 1981).

A few other points to be recognized about FEMA's Proof of Loss requirement are as follows: The Proof of Loss requirement is not a requirement established by FNPAC.  Rather, it is a long-standing requirement of Federal law for payment of U.S. Treasury funds. *Mancini,* 248 F.3d at 735. The insurer is not required to "demand" that a claimant comply with the requirements of the SFIP. *Humphrey v. NFIP*, 885 F.Supp. 133, 137 (D.Md. 1995). The regulations themselves provide the necessary incentive and consequences for noncompliance.  *Id*.  The Proof of Loss rule requires the claimant to swear under penalty of perjury concerning the truthfulness of the information provided. "This requirement is important because it ensures that plaintiff has carefully considered the information submitted to the government."  *Bullard v. Connor*, 716 F.Supp 1081, 1087 (N.D. Ill. 1989).  It should also be considered that the signature and oath requirement also serves as a deterrent to fraud.  *See* e.g., *Plywood Prop. Assocs. v. National Flood Insurance Program*, 928 F.Supp 500, 508-510 (D.N.J. 1996) (proof-of-loss as basis of action under False Claims Act).

Finally, Defendant asks the Court to consider that its job for the Federal government is to "verify" that the proper amount of U.S. Treasury benefits is paid to the participant. As to this point, 44 C.F.R. § 62.23(i)(2) reads as follows:

> (2) The WYO company may use its staff adjusters, independent adjusters, or both. It is important that the company's claims department verifies the correctness of the coverage interpretations and reasonableness of the payments recommended by the adjusters.

Where the company and the policyholder are in agreement as to the proper value of the claim, there

is no problem. However, where there is disagreement, it is the duty of the company to "verify" that the higher amount being sought by the participant is appropriate. *Id.* Part of the way that a WYO carrier can "verify" that the amount being claimed is appropriate and honest, is to require the customer to swear under oath to a sum certain, and then to allow the company to evaluate that claim and to either pay it, or to deny it, <u>before</u> a lawsuit ensues. Thereafter, if the customer continues to disagree with the company's position, then it has the right to file a lawsuit in Federal court within one year of the claim denial letter.

Such is exactly what FEMA's bulletin (**Exhibit A**) states. However, because the Plaintiffs at bar failed to comply, no further benefits are payable at this point because Plaintiffs are now "divested" of the right to sue. *Mancini,* 248 F.3d at 735.

In addition, FNPAC also hopes that the Plaintiffs will not attempt to argue that FNPAC was under some affirmative duty to demand a proof of loss from it. As noted by the Ninth Circuit in *Wagner v. Director, FEMA,* 847 F.2d 515, 520 (9th Cir. 1988), the SFIP in Article VII(J), [20] "candidly warns" potential claimants not to rely upon the insurer for assistance in complying with the proof of loss requirement. The insurer is not required to "demand" that a claimant comply with the requirements of the SFIP. *Humphrey v. NFIP*, 885 F.Supp.133 (D.Md. 1995). The regulations themselves provide the necessary incentive and consequences for noncompliance. *Id.*

**3.      Claims Handling Extracontractual Issues**

Congress, at 42 U.S.C. § 4019 delegated exclusive authority to FEMA to determine, by

---

[20] There are three SFIPs. All are found at 44 C.F.R. Part 61, App. A. The Dwelling Form is App. A(1), the General Property Form is App. A(2), and the Residential Condominium Building Association Policy is App. A(3). Article VII in the Dwelling and General Property Forms is numbered differently as Article VIII in the Condominium Policy, although its provisions are the same.

regulation, the rules that would govern the adjustment of NFIP claims. *West,* 573 F.2d at 880. FEMA promulgated pervasive regulations governing this topic decades ago, and these regulations are found throughout 44 C.F.R. Parts 61 and 62. Notably, it was § 4019 and the regulations adopted pursuant to it, that the Fifth Circuit examined in *West* when it held that an attorney fee claim arising from Louisiana state law could not be allowed even where the Plaintiff was successful in an NFIP claims dispute. *West,* 573 F.2d at 880-81.

More recently, and in the year 2005, the Fifth Circuit ended all possible debate over the question of preemption in the context of NFIP claims handling disputes. As per *Wright* and *Gallup, supra,* all such state-law based tort and extra-contractual claims are indeed preempted and barred.[21] Today, there are literally dozens of courts that have reached the same conclusion. See **Exhibit G**.

Also, even if they were not preempted, they would still be "impossible of success" because of the fact that the Supreme Court has long precluded detrimental reliance claims in the context of Federal insurance programs. *Merrill, supra* and *Heckler, supra*. Such was the Fifth Circuit's holding in *Richmond Printing v. Director of FEMA,* 72 Fed.Appx. 92, 2003 WL 21697457 at *6 (5th Cir. (Tex.) July 21, 2003), in a claim arising prior to the adoption of FEMA's express preemption provision in the year 2000, and in a claim where the Fifth Circuit declined to hold that the claims against the adjuster in that matter were in fact preempted. After holding that the tort claims in that matter were not preempted, the court nevertheless affirmed the summary dismissal of the adjusters by the lower court, based upon *Merrill* and *Heckler*:

> The unique situation presented by the NFIP creates additional responsibilities
> for the insured. One of those responsibilities is that, given that the insured is doing

---

[21] *Wright* is based on pre-2000 flood policies and the theory of conflict preemption. *Gallup* is based on post-2000 policies and the theory of express preemption.

business with the government and that the terms of the SFIP are published in the CFR, the insured has a duty to read and understand the terms of its SFIP. Richmond here claims that, because it never received a copy of the SFIP, it had no way of knowing what the proof of loss submission requirements were and that, because RGA and Meyer were acting as government agents, Richmond reasonably relied upon their representations concerning the SFIP. Even if Richmond did not receive a copy of the SFIP, a copy was widely available and Richmond had a duty to familiarize itself with the terms of the policy. While RGA and Meyer may have made statements which contradicted the proof of loss terms of the SFIP, we agree with the *Kerr* court in holding that any reliance by Richmond on those statements was unreasonable as a matter of law. *Id*. at *6

In the matter at bar, Plaintiffs were charged with the duty to become "familiar" with the Proof of Loss requirement of their Federally backed flood insurance policy. *Heckler*, *supra*; *Richmond, supra*. Reading the policy would have informed the Plaintiffs that a Proof of Loss was required either within 60 days, or within whatever waiver might be granted by FEMA. As such, once the Plaintiff was beyond the 60-day timeframe, it was incumbent upon them to take steps to find out what waivers and/or extensions might have been granted by FEMA. (**Exhibit A** has been on FEMA's website since two days after the storm. Hundreds of NFIP participants did indeed comply with its provisions.) Because the Plaintiffs failed to comply with the Proof of Loss requirement either within 60 days, or within one year, or at all, Plaintiffs failed to fulfill the duties imposed upon them by the Supreme Court precedents discussed in *Richmond*. As such, and wholly apart from the question of preemption, any state-law-based claims against the Defendant are "impossible  of success."

## CONCLUSION

In Plaintiffs' breach of contract action, it is the Plaintiffs who breached the contract, because the Plaintiffs filed this lawsuit without satisfying the conditions precedent to the making of a claim before the lawsuit was filed. As such, and as was held in *Mancini,* 248 F.3d at 735, failing to comply

with this rule "divests a non-complying insured of the right to sue."  Additionally, not submitting a sworn proof of loss is fatal to the Plaintiffs' claim.

WHEREFORE, and for all of the reasons assigned herein, Defendant prays that Plaintiffs' lawsuit be dismissed with prejudice and at the Plaintiffs' cost.

Respectfully submitted,

NIELSEN LAW FIRM, L.L.C.

*/s/ William R. DeJean*
WILLIAM R. DeJEAN, La. S.B. 22762
GERALD J. NIELSEN, La. S.B. 17078
3838 N. Causeway Boulevard, Suite 2850
Metairie, Louisiana 70002
Telephone: (504) 837-2500
Facsimile:   (504) 832-9165
wdejean@nielsenlawfirm.com
Counsel for Defendant: Fidelity National Property and
Casualty Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel.

*/s/ William R. DeJean*
William R. DeJean

-22-