UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| | * | MAG. WILKINSON |
| | * | |
| | * | |
| | * | |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State* C.A. No. 07-5528 | * | |
| | * | |

*****************************************************************************

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR PROTECTIVE ORDER GOVERNING CONFIDENTIAL
SETTLEMENT INFORMATION PROVIDED TO THE STATE IN
CONNECTION WITH ITS REVIEW OF INSURANCE SETTLEMENTS WITH
ROAD HOME GRANT RECIPIENTS**

**MAY IT PLEASE THE COURT:**

Pursuant to the Court's Minute Entry of February 15, 2008 (Doc. No. 11279), Insurer Defendants, through its Liaison Counsel, Ralph S. Hubbard III submit this supplemental memorandum in support of their motion for a protective order (Doc. No. 10633). The protective order in the form proposed by Defendants is reasonable, necessary, and supported by good cause in order to protect the insurers' confidential, proprietary, and/or competitively sensitive commercial information, to protect the confidentiality of settlement agreements, to protect insureds' privacy, and to prevent the improper use of confidential information.[1]

---

[1] As detailed in Defendants' opening brief, upon a showing of good cause the Court has broad discretion whether and in what terms to enter a protective order under Federal Rule of Civil Procedure 26(c). In addition, the Court also has the authority under Rule 16(c) to "consider and take appropriate action" on a variety of matters, including entering protective orders, in order to promote settlement, resolve the dispute, or otherwise facilitate "the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P.

1

I.      THE INFORMATION SOUGHT TO BE PROTECTED

Defendants seek to protect three classes of information: (1) the insurers' own confidential business information; (2) the terms and details of confidential settlement agreements between the insurers and insureds; and (3) the personal and financial information of insureds. For the reasons discussed below and supported by the declarations and affidavits submitted by a number of the Insurance Company Defendants, each category of information is the subject of a reasonable and legally recognized expectation of privacy and/or confidentiality and, therefore, should be subject to a protective order in the form proposed by Defendants limiting the disclosure and use of such information to that necessary for purposes of the State's review of a given settlement.

A.      Insurer Trade Secrets and Other Confidential Business Information

Rule 26(c)(1)(G) contemplates protection of "a trade secret or other confidential research, development, or commercial information." Each of the insurers has created and maintains a number of trade secrets and have other valuable information that they keep confidential for competitive reasons. The Louisiana Uniform Trade Secrets Act ("LUTSA") defines a trade secret as follows:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper

---

16(c)(2)(I) & (P); *Jicarilla Apache Nation v. United States*, 60 Fed Cl. 413, 414 (Ct. Cl. 2004) (entering protective order under both Rule 26(c) and Rule 16(c)(3)). Finally, as this litigation is a putative class action, the Court also has the broad authority to make such orders as are necessary to manage the case. *See* Fed. R. Civ. P. 23(d); *In re Baycol Prods. Litig.*, No. MDL1431, 2002 WL 32156072, at *1 (D. Minn. Mar. 25, 2002) (granting in part motion for protective order under Rule 23(d)).

>means by other persons who can obtain economic value from its disclosure or use, and
>
>(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

LSA-R.S. 51:1431(4).  The LUTSA goes on to provide that "a court *shall* preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders … and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval."  LSA-R.S. 51:1435 (emphasis added).  In addition, even if certain of the information, compilations, policies, and procedures identified and discussed below did not qualify as a trade secret under the LUTSA, such information would still be entitled to protection based on its proprietary and competitively sensitive nature.  *See Am. Hardware Mfrs. Ass'n v. Reed Elsevier Inc.*, No. 03C9421, 2007 WL 1521185, at *3 (N.D. Ill. May 14, 2007) (holding that terms of contract were not trade secret, but nevertheless granting protective order because such was confidential information not available to the public which could adversely affect the party's competitive advantages).

For example, the insurers compile and maintain information regarding their customers, including names, addresses, contact information, and insurance coverage.  Such customer lists are the type of data compilations that courts have recognized as trade secrets.  *See Am. Family Mut. Ins. Co. v. Roth*, 485 F.3d 930, 933 (7th Cir. 2007) (holding customer information in insurer database was trade secret); *U.S. Greenfiber v. Brooks*, No. 02-2215, 2002 WL 31834009, at *4 (W.D. La. Oct. 25, 2002) (holding customer pricing lists, sales reports, strategic plans, and other sensitive business information qualified as trade secret under LUTSA); *NewSouth Commc'n Corp. v.*

*Universal Tel. Co., LLC*, No. 02-2722, 2002 WL 31246558, at *22 (E.D. La. Oct. 4, 2002) (holding reports containing detailed accounts of customers identified by name were trade secrets under LUTSA); *NCH Corp. v. Broyles*, 551 F. Supp. 636, 637-38 (E.D. La. 1982) (holding compilations of "the names and addresses of customers, the identity of persons to be contacted for orders, and a sales history of products purchased, quantities purchased, container sizes, prices paid and frequency of purchases" were trade secrets). As detailed in the declarations submitted by some of the insurers, insurers use these data compilations in cultivating customer relationships and in deciding what insurance products to offer, how to market them, and where to target their marketing efforts. Because of their value and utility, these customer lists and customer databases are treated as proprietary and reasonable efforts are made to protect the confidentiality of these compilations.

The information that the State contemplates being produced for settlement review purposes encompasses a number of items included within these trade secret compilations. The forms agreed to for purposes of the pilot protocol program call for insureds' names, addresses, contact information, policy numbers, types of coverage, policy limits, agent information, and information regarding other insurance policies among other similar information specifically identifying customers and revealing their insurance needs and/or past purchasing decisions. (*See* Defendants' Opening Brief, Exhs. A & B (Doc. Nos. 10633-2, 10633-3).) The Request for Consent form calls for the provision of a copy of the declarations page and any reports prepared by adjusters, documents which provide additional information including the policy period, premiums paid, discounts given, deductibles, selected options and endorsements, and detailed information about the

4

insured property.  (*See* Defendants' Opening Brief, Exh. A (Doc. No. 10633-3).)  If given access to this accumulation of customer-specific data (for numerous customers and all compiled in a uniform manner), a competitor would gain an economic advantage in designing and marketing its own insurance products so as to target another specific insurer's clients.  The competitor could determine where and how to most effectively compete and even when specifically to target its efforts at particular customers (*i.e.*, as the expiration date for the policy term approaches).

That some of this information (for example, an insured's name and address) might be publicly available (for example, from a complaint filed by an insured) on an individual basis does not defeat the trade secret status of Defendants' customer lists and/or databases because the *compilation* adds significant economic value and is itself a trade secret.  "Even if all of the information is publicly available, a unique compilation of that information, which adds value to the information, may also qualify as a trade secret."  *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 686 (11th Cir. 1998).  The uses and value of these customer lists and databases are not the product solely of having possession of any single item of information, but rather the cumulative nature of the information identified with a particular individual and the compilation of that information with respect to many individuals.  Making the information at issue publicly available would permit competitors to compile and make use of a portion of the customer lists of the insurers, with corresponding competitive injury to the insurers.

Insurers also maintain confidential compilations of information regarding the properties that they insure and the claims that they receive and process.  With respect to the properties themselves, the information sought by the State for purposes of settlement

5

review includes information relating to location, nature and condition (*e.g.*, zone, protection class, year built, type of construction, *etc.*), ownership, mortgages, as well as details with respect the insurance coverage and premiums. In addition, the completed forms will also include specific information amounting to what is in effect a partial claim and loss history for the property, namely a summary of the amounts paid on Katrina claims, whether payments were disputed, whether and for how much those disputes were ultimately settled, and the apportionment of any payments among the various types of coverages provided by the policy as well as information about the process of adjusting the damage including the value assigned to Katrina property damage by adjusters, the nature of the damage both covered and uncovered, the assessments and analyses of adjusters and other investigators, and the actual reports of those adjusters. As reflected in the declarations and affidavits submitted by Defendants, this property and claims information is treated as proprietary and confidential by insurers.

Courts have recognized the competitive interests of insurers in maintaining the confidentiality of claims and property information. For instance, a Missouri court held that insurer-specific information categorizing written premiums by zip code was a protected trade secret because it provided important information about each insurer's pricing and/or marketing strategies in the state. *Am. Family Mut. Ins. Co. v. Mo. Dep't of Ins.*, 169 S.W.3d 905, 910-15 (Mo. Ct. App. 2005). The court found that information regarding where an insurer's customers are located and where the insurer has directed or succeeded with its marketing strategies (and, by the same token, where it has not done so) was valuable competitive information and would allow a competitor to adjust and target its own pricing and marketing efforts. *Id.* at 910-11; *see also Freeport-McMoran*

6

*Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, Nos. 03-1496, 03-1664, 2004 WL 764174, at *5-7 (E.D. La. Apr. 7, 2004) (granting protective order with respect to information relating to economic analyses, techniques and strategies reflecting most intimate information obtained and compiled by business); *Steve Silveus Ins., Inc. v. Goshert*, 873 N.E.2d 165, 180 (Ind. Ct. App. 2007) (holding compilation of property descriptions, past insurance coverage, and loss histories qualified as trade secret). Here, the settlement review submissions will result in the accumulation of detailed information regarding the properties insured by an insurer (including location, nature of structure, *etc.*) and the premiums charged by the insurer. If disclosed to a competitor, such information could provide the competitor with insight into the insurer's underwriting and pricing strategies.

Moreover, information relating to the adjustment of and payments on a claim is reflective of each insurer's own confidential claims handling and adjusting practices, policies, and procedures. Courts have previously recognized these types of confidential policies and procedures as trade secrets. *Republic Servs., Inc. v. Liberty Mut. Ins. Cos.*, No. 03-494, 2006 WL 1635655, at *3-8 (E.D. Ky. June 9, 2006) (holding insurer's claims handling materials were trade secrets and should be subject of protective order); *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-25 (S.D. Ind. 2001) (same). If information regarding an insurer's strategies and practices for handling claims and negotiating and settling disputed claims were made public, the insurer would suffer from a competitive disadvantage and resulting financial harm.

Because of the harm that could result from disclosure of the confidential business information described above, *see Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186,

1191-92 (5th Cir. 1984) (disclosure of a trade secret can create a substantial threat of irreparable injury), a protective order is warranted.[2]

### B. Confidential Settlement Agreements

The settlement approval submissions to the State include, of course, details about the settlement terms. Many of the settlement agreements between Grant Recipients and insurers for which Road Home review will be sought are subject to confidentiality provisions precluding disclosure of the settlement terms. Such confidentiality provisions can be an important motivation for entering into settlements and should be respected.

As set forth in Defendants' opening brief, because the law favors settlement as a means of resolving disputes, courts have granted protective orders to protect the confidentiality of such agreements and thereby promote settlement. *See, e.g.*, *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002); *Daniels v. Bursey*, No. 03C1550, 2006 WL 468015, at *4 (N.D. Ill. Feb. 23, 2006). Enforcing the parties' expectation that the terms of their settlement agreement will remain confidential promotes the use of settlements to resolve litigation; "many litigants would be much less inclined to enter into settlement agreements if they were subject to being made public." *Daniels*, 2006 WL 468015, at *4; *see also Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993) ("Confidential settlements benefit society and the parties involved by

---

[2] Indeed, to the extent that the State is suggesting that information about Grant Recipients is not confidential and proprietary information of the insurers, the State is contradicting its prior statements to the Court. The proposed Case Management Order filed by the State on October 25, 2007 stated that Exhibit A to its First Amended Petition (listing Applicants and Recipients and providing certain information about them) required a protective order because it "contains personal information of Road Home Applicants and Recipients, *as well as information that is proprietary to the Insurance Company Defendants*." (Doc. 8646-3 at p. 3; emphasis added.) The Interim "Road Home" Case Management Order includes the same statement. (Doc. 8873 at 4.) The information contained in the contemplated settlement review submissions is far more extensive than that included on Exhibit A to the State's First Amended Petition.

resolving disputes relatively quickly, with slight judicial intervention, and presumably result in greater satisfaction to the parties.").

Accordingly, the use of information relating to any given settlement should be restricted to the limited purpose for which it is provided, *i.e.*, the Road Home program's review and approval or disapproval of that particular settlement. Neither the State nor its attorneys should be permitted to use this information for any other purpose or to disclose or disseminate it any further. In particular, private counsel for the State should not be permitted to use this information in prosecuting claims of other insureds. Allowing the State or its attorneys to use this information beyond the purposes for which it is made available to them would defeat the expectation of confidentiality underlying the settlements and would provide a back-door through which such counsel could circumvent the burden to demonstrate the discoverability of evidence relating to an insurer's (or other insurers') adjustment of claims other than that of a given party-plaintiff. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985) (affirming protective order prohibiting intervenor's use of confidential information obtained in one case to prosecute a separate action). Allowing such use would only serve to discourage settlements, contrary to the courts' announced policy. *Kalinauskas*, 151 F.R.D. at 365 ("To allow full discovery into all aspects of Ms. Thomas's case could discourage similar settlements.").

### C. Privacy Interests of Insureds

The contemplated submissions to the State also include non-public personal and financial information of insureds. The insureds' interests in maintaining the privacy of such information is recognized by state and federal statute as well as the Louisiana constitution, and insurers are required by law to protect those interests. *See* 15 U.S.C. §

6801, La. Admin. Code tit. 37, § 9923; La. Const. art. I, § 5.  Indeed, certain of these laws impose "an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information."  15 U.S.C. § 6801(a).  Among the identifying, personal, and financial information called for by the settlement approval forms are names, addresses, contact information, insurance policy numbers and other details, mortgage information, and other loan information.  (*See* Defendants' Opening Brief, Exhs. A & B (Doc. Nos. 10633-2, 10633-3).)  The collection of this and other information in one form, submission, or file identified with a specific person poses a threat to that person's privacy interests if disclosed to others or made publicly available.  Here, if no protective order is entered, uniformly compiled and organized sets of thousands' of individuals' personal and financial information could potentially become publicly available.[3]  Such disclosure would make the affected insureds potential targets for unwanted solicitations, identity theft, or other fraud.

The Court has previously recognized these individual privacy interests in entering its December 19, 2007 Protective Order governing Exhibit A to the State's First Amended Petition.  (Doc. No. 9587, amended by Doc. No. 10339.)  Indeed, the State, citing concerns for insureds' privacy, insisted on this Protective Order before producing Exhibit A to its petition, even though the information in Exhibit A was limited to name, property address, insurer, policy number, Road Home application status, and Road Home

---

[3] The State recently announced it had closed more than 100,000 Road Home grants  *See* Louisiana Recovery Authority, "Press Release, Louisiana's Road Home Program Surpasses 100,000 Homeowner Closing," Feb. 26, 2008, *available at* http://lra.louisiana.gov/pr022608RHClosings.html.)

identification number.[4]  The need for protection of privacy interests with respect to the settlement submissions, which request far more information, is even stronger.

### III.  SPECIFIC TERMS OF PROTECTIVE ORDER

As reflected in the proposed protective order submitted on February 25, 2008, disputes remain as to a number of specific provisions, each of which is addressed below.

Defendants first note that the State's proposed alternative of a voluntary privacy protocol is insufficient.  Only a protective order will provide certainty and an established method of enforceability.  Defendants can only assume that the State's consistent characterization of its proposed privacy protocol as "voluntary" suggests that the State could unilaterally withdraw or modify any of its provisions at any time.  Further, the State's arguments to date suggest that it is contemplating the possibility of making wholesale public production of the settlement submissions in response to requests under the Louisiana Public Records Act.  Accordingly, the force of a court order is necessary in this instance to provide both insurers and insureds with adequate assurances that their proprietary, private, and otherwise confidential information will remain so and to provide a clear and unambiguous basis on which the State should deny any public records request directed at this information.  *See* LSA-R.S. 44:4.1(B)(34); LSA-C.C.P. art. 1426.

#### A.  Paragraph 2 – Scope of the Protective Order

The State seeks to limit the information that may be designated for protection under the Order to "coverage limits, prior payments, and payments to be made in

---

[4] *See* State's Motion to Enter Case Management Order (Doc. No. 8646) at 2 ("The State of Louisiana believes it is important to enter this CMO at this time to appoint Road Home leadership committees and to enter an order ensuring the confidentiality of personal information contained in Road Home recipient files maintained by the State, so that the State may begin to disseminate this personal information to the Insurance Company Defendants and to promote the resolution of claims relating to The Road Home Program.").

11

consideration of information submitted to the State's Road Home Program (including to counsel for the State) in connection with its review of an INSURANCE SETTLEMENT." Limiting the scope of the protective order to these three specific pieces of information would leave unprotected a large amount of insurer proprietary information and virtually all of the insureds' private personal and financial information, all of which warrants protection for the reasons discussed above. In order to address the State's desire for greater specificity, Defendants have proposed language stating categories of information that are to be subject to the Order, namely information that:

> (a) identifies—by name, number, residence address, property address, or in any other manner—the insured or insurer who is party to the INSURANCE SETTLEMENT; (b) relates to coverage limits of, premiums paid for, prior payments on, payments to be made in connection with settlement of a claim under, or adjustment and/or settlement of a claim under a policy of insurance; or (c) constitutes personal or financial information of the insured including but not limited to insurance policy and/or claim numbers and mortgage or other loan information.

This provision is sufficiently specific to assure the State and the Court that the Order is tailored to the confidentiality interests justifying its entry.

### B.   Paragraphs 2(c) and 2(m) – Authorized Internal Use of Information

The State has expressed concerns as to restrictions on internal use of protected settlement information and restrictions that might appear to require State workers reviewing a particular insurance settlement to forget or ignore knowledge gained from their experience reviewing other insurance settlements. Defendants have proposed language in ¶ 2(c) expressly permitting internal use of information from settlement review submissions, but including language making clear that such use is to be in fact for internal purposes, must not result in the public disclosure of the information, and must not involve the State's private counsel. The State continues to object to this language,

but if the objective is truly to sanction "internal use" of otherwise protected information, then there can be no rational basis for objecting to the inclusion of language explicitly specifying that such use is to be internal and that internal use does not include disclosure to the public generally or to any specific third party. Such restrictions are implicit in the very concept of "internal use," and the State's objection to their inclusion suggests its objective may not be internal use after all.

The proposed carve-out for private counsel retained by the State for purposes of this litigation is necessary in light of the fact that many of the private counsel are separately representing insureds in connection with their own insurance claims. Private counsel should not be permitted to use their representation of the State to acquire a large accumulation of data to which they would not otherwise have access regarding the terms of Defendants' confidential litigation settlements, and then have that information to use in other cases where they represent individual policyholders seeking additional insurance payments. Moreover, in an effort to respond to concerns about their dual roles as counsel for insureds and counsel for the State, private counsel have in the past represented to counsel for Defendants and the Court that they will not be involved in the Road Home's review and decision-making process regarding particular settlements. Accordingly, there should be no concern about provisions in the order restricting their access to settlement information.

To address the other concern raised by the State, Defendants have proposed language in ¶ 2(m) permitting the use of information from other settlements involving a particular insurer in discussions with that insurer regarding a given settlement, but again making clear that this provision does not authorize other disclosures and does not apply

to the State's private counsel. For the reasons discussed above, the State's objections to these limitations are without merit.

### C.      Paragraph 2(h) – Anticipated Public Records Requests

One of the State's arguments in opposition to a protective order has been that such an order would conflict with its obligations to respond to requests under the Louisiana Public Records Act and/or the federal Freedom of Information Act. First, the State's argument actually highlights why a protective order is necessary and appropriate, as the Louisiana Public Records Act includes an explicit exception for information subject to a judicially entered protective order. LSA-R.S. 44:4.1(B)(34). Second, the State's apparent anticipation of producing settlement approval submissions in bulk in response to public records requests emphasizes the potential injury to insurers and insureds if a protective order is not provided. Whether or not a protective order is entered, various exceptions to the Louisiana Public Records Act would still sanction the withholding of some or all of the information, including insureds' constitutional rights to be free of unreasonable invasions of privacy, La. Const. art. I, § 5, the statutory exception for trade secret and proprietary information, LSA-R.S. 44:3.2, and the exclusion of records that "are in their nature confidential" from the scope of the Act, LSA-R.S. 44:4(3). The State's apparent anticipated production of settlement approval submissions notwithstanding these provisions only heightens the need for such an order.

The State has proposed language addressing the event of a records request directed at information from settlement review submissions. In light of the State's clear anticipation of such requests, Defendants are agreeable to a provision requiring notice to affected insurers. However, Defendants object to the State's attempt in the last three

14

sentences of its proposed version of ¶ 2(h) to rework public records law and undermine the terms of the protective order. In the first sentence, the State attempts to place the burden on the insurer "to take such action as is necessary to stay such production and to challenge such request within the time limits prescribed by statute." Under the Public Records Act, it is generally the burden of the custodian to defend the denial of a request. *See* LSA-RS 44:35. Initially, it is not at all clear that the State can shift its responsibilities to private parties, who are entitled to expect the State will make at least some effort to protect their confidential information. Therefore, Defendants will not agree to take on the burden of processing and/or responding to public records requests in the first instance. However, in light of the State's arguments in connection with this motion, Defendants are willing to take on the burden of defending the State's denial of a record request if the matter reaches court. Defendants' proposed language makes this distinction clear.

The second additional sentence proposed by the State appears to disclaim any guaranty that the information will not be required to be disclosed, though it is awkwardly worded. Defendants have proposed changes to this language to make clear that the State is not making any guaranty as to how a court may ultimately resolve the issue of whether the Public Records Act requires disclosure, but avoid the potential implication that the State is disclaiming its duties to comply with and uphold the law.

In its proposed final sentence of ¶ 2(h), the State wants the entire ¶ 2(h) to become "null and void" upon "the event of a judicial determination that the information to which this Order applies is not protected from production under the [FOIA] or the [La. PRA]...." Apparently the State wants to be free to make the settlement submissions publicly

15

available upon a single ruling by a judge anywhere and without regard to possible appeals. No language along these lines should be included in the Court's order.

### D. Paragraph 2(k) – Information From Other Sources

Another concern expressed by the State was that any protective order not limit its ability to use other information that it may have obtained other than through the settlement review process. Defendants agree that the protective order sought should only apply to information contained within Road Home settlement review submissions and have proposed language making that distinction explicit. At the same time, however, the order should not be read as altering or displacing any confidentiality obligations that may otherwise exist as to the information the State has obtained other than through the settlement review process, and Defendants have proposed language to make that clear. There is no reasonable basis for the State's objection to such language.

### E. Paragraph 2(l) – Partial Settlements

The State has asked that the order address the possibility of partial settlements being submitted for Road Home review. Defendants are agreeable to language permitting the State to use information from the settlement review submissions on such a partial settlement in furtherance of whatever rights or claims may remain following that partial settlement as reasonably necessary. Significantly, the language proposed by Defendants permits the State to use the information not only in reviewing a second settlement submitted for approval, but also in the event the State elects to itself pursue the remaining, unsettled rights or claims by virtue of its claimed assignment/subrogation rights. Further, the provision does not include a carve-out for the State's private counsel (as do Defendants' proposed versions of ¶ 2(c) and 2(m)) in recognition of the fact that if

the State does litigate the remaining claims itself then there is a possibility private counsel would be conducting that litigation.

However, the State objects and insists on a vaguer and potentially much broader provision. The State's version of ¶ 2(l) could be read to permit the State, so long as it has any remaining rights under any one Subrogation / Assignment Agreement, to use *any* information obtained during the settlement review process relating to *any* settlement in furtherance of those remaining rights. There is no limitation to information relating to the insurer at issue, there is no limitation to the particular insurance claim or property at issue, and there is no condition of reasonableness. Thus, the State may attempt to argue that under its proposed language, it is free to publicly disclose *all* of the accumulated settlement review submissions for the nominal purpose of advancing litigation against a single insurer on a single insurance claim (or reviewing a settlement thereof). The State's proposed language is far broader than necessary to accomplish the need it has articulated relating to partial settlements.

      **F.**      **Paragraph 4 – Effect of Remand**

At the February 15, 2008 hearing on Defendants' motion, the Court asked that the parties address the contingency of a possible remand. In response, Defendants have proposed a provision committing the parties to taking such steps upon remand as are necessary to make the protections ordered by this Court similarly applicable by virtue of the state court's authority. The State objects to Defendants' language, but has not proposed any alternative.

**IV.**      **CONCLUSION**

Because the contemplated Road Home settlement review submissions include information that constitutes, reflects, or reveals various insurer trade secrets and other confidential and proprietary information, the terms of confidential settlement agreements, and the private financial information of insureds, Defendants request that the Court enter a protective order in the form proposed by Defendants.

        Respectfully submitted:

        */s/ Ralph S. Hubbard III*
        Ralph S. Hubbard III, T.A., La. Bar No. 7040
        Seth A. Schmeeckle, La. Bar No. 27076
        LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
        601 Poydras Street, Suite 2775
        New Orleans, Louisiana 70130
        Telephone: (504) 568-1990
        Facsimile: (504)310-9195
        E-Mail:    rhubbard@lawla.com
        sschmeeckle@lawla.com
        **Insurer Defendants Liaison Counsel**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of March, 2008, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all CM/ECF participants and I hereby certify that I have mailed by United States Postal Service the document to all non-CM/ECF participants.

        /s/ Ralph S. Hubbard III
        Ralph S. Hubbard III