UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION NO. 05-4182 "K"(2) JUDGE DUVAL MAGISTRATE WILKINSON |
| PERTAINS TO: ROAD HOME *Louisiana State* C.A. No. 07-5528 | * * * * * | |

STATE OF ILLINOIS )
  ) SS
COUNTY OF COOK )

### AFFIDAVIT OF JOHN DAVISON

John Davison, on oath, deposes and states as follows:

1. I am employed as a Senior Manager in Property Process, Development and Mastery by one of the defendants in this matter, Allstate Insurance Company ("Allstate"), and have been employed in this capacity since April, 2006.

2. I am over the age of 21, and am authorized to execute this Affidavit on behalf of Allstate. I have knowledge of the matters addressed herein, both personally and through a review of Allstate's business records, made and kept in the regular course of Allstate's business by those whose regular job function it is to make and keep such records, and could testify competently thereto if called upon to do so as a witness.

3. I understand that the State of Louisiana ("Road Home") seeks certain information for use in the reviews it proposes to conduct of settlements with recipients of Road Home funds,

including Road Home grant recipients who carry homeowners insurance with Allstate.

4.   As set forth below, Allstate considers much of the information Road Home seeks to be confidential and proprietary.

## Confidential Settlement Information

5.   A major confidentiality concern raised by Road Home's proposed settlement submissions is the fact that in numerous negotiated litigation settlements, Allstate and the claimant agree to a confidentiality provision.

6.   Road Home's proposed Insurer Form calls for the provision not only of assorted customer and property information, such as insureds' names, the addresses of the insureds' property, flood insurance status, policy numbers, policy limit amounts, existence and identity of any mortgagors or other loss payees and partial claim history, but also for information about the payments made in the final settlement for different coverages (*e.g.*, Dwelling, Other Structures, Personal Property, ALE).

7.   Confidentiality is a vital component of settlements. A settlement is a compromise by both parties, not an admission of liability or an agreement as to the amount allegedly owed. Accordingly, the ability to enter such agreements knowing the terms of the settlement will remain confidential is important for both parties.

8.   If confidentiality is not enforced, that consideration could alter Allstate's determinations of whether and for how much to settle a particular claim. Indeed, disclosure of the type of settlement information Road Home seeks could well impede future settlement of unrelated claims. Even though the settlement of one particular claim is not an admission of liability, information regarding that settlement might be used improperly against an insurer in connection with another wholly unrelated claim.

9. While maintaining the confidentiality of any single settlement is important, Road Home's proposals create the risk of disclosing such confidential information on a much larger scale.

10. The Allstate entities have approximately 56,749 customers who have applied for Road Home grants, and, as of January, 2008, approximately 34,517 customers who have received such grants. Accordingly, the confidential customer information at risk of being exposed by Road Home's proposed submissions would be far-reaching and the impact on Allstate's competitive advantage severe.

11. Disclosure of the terms of a collection of an insurer's confidential settlements could result in competitive injury by giving competitors and adversaries insight into the litigation and negotiation approach taken by the insurer. For instance, the information Road Home seeks to collect could be used by the press, other lawyers or other insurers to compile insurer-specific statistics regarding what the insurer has paid to date and amounts offered in settlement.

12. For example, if the collected information showed that one insurer settles at an average of 30% of policy limits, while another settles at an average of 15% policy limits, the latter insurer could well be come a target, or its settlements subject to challenge, in wholly unrelated contexts. If the former insurer attempted to settle an unrelated claim for an amount less than 30%, that insurer could be subject to challenge, however inappropriately, based on confidential settlement information compiled from Road Home submissions. Or, the former insurer could become a target based on a perceived lax attitude toward settlement. Comparisons of data between insurers could be harmful in the marketplace to companies that are perceived as paying less on average than others, even though there may be perfectly valid reasons why they are doing so given the different risk pool that each company insures.

3

13. In short, the disclosure of the confidential settlement information called for by Road Home's proposed submissions will not only impede settlement of wholly unrelated claims, it will also put insurers such as Allstate at a significant competitive disadvantage, both with other carriers and in their dealings with their own customers. That kind of concern could in turn cause Allstate and other insurers to be more reluctant to enter into settlements if there is no protection of confidentiality as to settlement terms.

### Confidential Information Related to Pre-Litigation Adjustment Practices

14. The Road Home's proposed submissions also present the problem of disclosing information regarding insurers' pre-litigation adjustment of claims.

15. As noted, the Road Home's proposed Insurer Form requires information not only about settlements, but also about payments made for various coverages prior to settlement. The Insurer Form calls for detailed information regarding the policies, property, the amounts for which the property is insured, types of coverages provided (*e.g.,* Dwelling, Personal Property, etc.), amounts paid on claims, and the apportionment of payments among various types of coverages. Wholly apart from payments made pursuant to any post-litigation settlements, this information is competitively sensitive. Other insurers could compare their average claims adjustments with those of Allstate, or vice versa, and it could become a competitive tool. Publication of such information in the media would also be harmful to carriers who are perceived as paying less on average than others, again even though the differing adjustment numbers may be perfectly justified by the nature of the claims made and the differing risk pools insured by different carriers.

4

### Confidential Customer Information

16. Allstate maintains compilations of information pertaining to its customers, and Road Home seeks detailed information that would be included in these compilations.

17. As noted, Road Home's proposed Insurer Form calls for the provision of assorted customer information, such as insureds' names, the addresses of the insureds' property, flood insurance status, policy numbers, policy limit amounts, existence and identity of any mortgagors or other loss payees, and partial claim history.

18. Allstate considers these compilations of customer information as being highly confidential and treats them as such. For example, Allstate advises its employees that they must treat customer information as confidential.

19. These compilations are considered competitively sensitive. In particular, if such information were made publicly available and accessible to Allstate's competitors, other insurers would gain a competitive advantage by being able to design and market their own insurance products so as to target Allstate's clients.

### Confidential Information Pertaining to Insured Property

20. Allstate also maintains compilations of information pertaining to the properties it insures.

21. Road Home seeks detailed information that would be also included in these compilations.

22. For example, Road Home's proposed Insurer Form also seeks assorted property information, including the location of properties, identity of owners, existence and identity of any mortgagors or other loss payees, the presence of other policies on the property, amounts for which the property is insured and types of coverages provided for the particular property.

23. Allstate considers these compilations of insured property information as being highly confidential and treats them as such. For example, Allstate advises its employees that they must treat such information as confidential.

24. Information regarding the properties Allstate insures and Allstate's underwriting policies, like Allstate's customer information, is considered competitively sensitive. Specifically, if such information were made publicly available and accessible to Allstate's competitors, other insurers would gain a competitive advantage by being able to modify their own underwriting policies to better compete with Allstate's and to better design and market their own products so as to target Allstate's customers.

## Insured Privacy

25. Allstate also has various policies and procedures in place designed to protect its customers' privacy rights and interests.

26. Allstate communicates these policies and procedures to its customers and represents to them that those policies/procedures will be followed and that their private information will not be disclosed to others.

27. In fact, the Road Home Grant Program Agreement, in which insurers agree to submit certain customer information to Road Home contractors, specifically states that Allstate considers the information "to be confidential to its customers and . . . a matter of strict confidentiality." The Agreement also contains various provisions designed to protect the confidentiality of that information, including restrictions on disclosure and the requirement of security measures, and was agreed to by the Road Home program's outside vendors with Road Home's knowledge and consent. A copy of that Agreement is attached hereto as Exhibit A.

28. Road Home's proposed submissions threaten just the sort of invasion of the

insureds' privacy these confidentiality measures were designed to prevent.

FURTHER AFFIANT SAYETH NOT.

_____
JOHN DAVISON

SUBSCRIBED AND SWORN TO
before me this 29th day
of February, 2008.

_____

"OFFICIAL SEAL"
PATTI GARITI
NOTARY PUBLIC STATE OF ILLINOIS
COMMISSION EXPIRES 11/16/08