PRIVILEGED & CONFIDENTIAL 2/28/08
JOINT DEFENSE MATERIAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES LITIGATION | * * * | CIVIL ACTION |
| PERTAINS TO: ROAD HOME *State of Louisiana v. AAA Insurance, et al.*, Case No. 07-5528 | * * * * | NO. 05-4152 "K" (2) JUDGE DUVAL |
| | * * | MAGISTRATE WILKINSON |

* * * * * * * * * * * * * * * * * * * *

### AFFIDAVIT OF MICHAEL DANDRIDGE IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER GOVERNING CONFIDENTIAL SETTLEMENT INFORMATION PROVIDED TO THE STATE IN CONNECTION WITH ITS REVIEW OF INSURANCE SETTLEMENTS WITH ROAD HOME GRANT RECIPIENTS

Michael Dandridge, being duly sworn, deposes and states as follows:

1. I am a Regional Assistant Vice President with defendant The Hanover Insurance Company, which is affiliated with defendants The Hanover American Insurance Company and Massachusetts Bay Insurance Company (all of which are collectively referred to as "Hanover").

2. I make this affidavit based upon my own personal knowledge and my review of Hanover's business records, which are made and kept in the regular course of Hanover's business by those whose regular job function it is to make and keep such records, and with which I am personally familiar.

3. As of February 28, 2008, Hanover has received 9020 property claims under homeowners and residential dwelling insurance policies for damage allegedly

caused by Hurricane Katrina in the State of Louisiana. Of those claims, Hanover estimates that approximately 1892 have resulted in Road Home grants.

4. I understand that the State of Louisiana has prepared a Request for Consent Form that would require Hanover to disclose certain categories of documents and information to the State and its attorneys, including:

    a. Information about Hanover's customers, including their names, addresses, contact information, flood insurance status, and SBA loan information;

    b. Information about the policies purchased by Hanover's customers, including policy numbers, policy limits, and the identities of and contact information for the insurance agents who issued the policies;

    c. Information about the properties owned (or rented) by Hanover's customers, including the locations of the properties, the identities of the owners, the existence and identities of any mortgagors or other loss payees, information about other policies insuring the property (if any), the amounts for which the property is insured, and the types of coverages provided;

    d. Copies of the declarations pages for the homeowners policies and flood policies (if applicable) purchased by Hanover's customers. These documents provide a variety of additional information about Hanover's customers, their policies, and their properties, including the policy period, the types of coverages provided, the specific limits and deductibles that apply thereto, the premiums paid, the type of loss settlement provided for (*e.g.*, actual cash value or replacement cost), the various forms, options, and endorsements selected, the types of discounts applied, if any, and specific information

about the nature of the property (*e.g.*, zone, protection class, year built, type of construction, *etc.*);

  e. Information about the insurance claims that Hanover's customers have made under their policies (including flood policies, if applicable), including the values the adjusters assigned to the damages, the amounts paid on the claims, the apportionment of the payments among different coverages (*e.g.*, building, other structures, contents, additional living expense), whether payments were disputed, whether those disputes were ultimately settled and, if so, for how much, and the identities of and contact information for those involved in negotiating the settlements; and

  f. Copies of reports prepared by the adjusters and experts whom Hanover and/or its customers retained. These documents typically contain a variety of additional detailed information about Hanover's customers and their properties, the payment, negotiation, and settlement of their insurance claims and disputes (if applicable), and their insurance situations and needs.

5. Hanover maintains compilations of information regarding its customers, their properties, and their policies, including historical information regarding the claims made under those policies. These compilations include some or all of the categories of information described above, in Paragraphs 4(a) through 4(e).

6. The compilations referenced above are electronically stored on Hanover's computer system, which can only be accessed by an authorized user, who must type in a personal identification code and a secure password. The compilations are not accessible to the general public, Hanover's competitors, or former Hanover employees. Hanover does not allow the compilations to be downloaded or sent to computers outside

**PRIVILEGED & CONFIDENTIAL, 2/27/08
-- JOINT DEFENSE MATERIAL**

Hanover's system, nor does it allow its employees to make personal copies of the compilations.

7. The compilations referenced above are economically valuable to Hanover, because Hanover has invested considerable time, effort, and money in compiling the information stored in them and in developing methods and procedures for how to best collect, store, protect, access, and use that information. Among other things, Hanover uses the complied information regarding its customers and their policies, properties, and their claim histories to:

    a.    Design its insurance products;

    b.    Market its insurance products;

    c.    Evaluate and improve the desirability of its insurance products;

    d.    Cultivate and improve existing customer relationships;

    e.    Evaluate and improve its relationships with insurance agents;

    f.    Evaluate and improve the economic performance of its products;

    g    Develop underwriting policies, procedures, and formulas; and

    h.    Make underwriting decisions.

8. Hanover considers the aforementioned compilations to be private, proprietary, confidential, and competitively sensitive. If Hanover's competitors were able to access these compilations, they could gain a competitive advantage, in that they could better design and market their own insurance products to target Hanover's customers, make more informed and intelligent underwriting decisions, and improve the design, desirability, and economic performance of their insurance products.

**PRIVILEGED & CONFIDENTIAL, 2/27/08
-- JOINT DEFENSE MATERIAL**

9. In addition, the categories described above, in Paragraphs 4(e) and 4(f), include information and documents that will discuss and/or reflect Hanover's customized procedures, guidelines, and policies for handling, investigating, adjusting, and settling claims submitted by its policyholders. These procedures, guidelines, and policies are economically valuable to Hanover, because Hanover has invested considerable time, effort, and money in developing them and protecting their confidentiality. They reflect the results of Hanover's research, analysis, and learned experience regarding the best practices for promoting the efficient, fair, and proper handling and adjustment of insurance claims. Hanover's procedures, guidelines, and policies are not accessible to the general public, Hanover's competitors, or former Hanover employees. Hanover does not allow electronic copies to be downloaded or sent to computers outside Hanover's system, nor does it allow its employees to make personal copies of them. Hanover considers its claim-handling procedures, guidelines, and policies to be private, proprietary, confidential, and competitively sensitive. If Hanover's competitors gained access to them, they could gain a competitive advantage by improving the efficiency and accuracy of their own claims-handling procedures, resulting in better customer service, more accurate valuations of property damage, and reduced costs.

10. Also, the categories described above, in Paragraphs 4(e) and 4(f), include information and documents that will discuss and/or reflect the manner in which Hanover handled and settled claims that ripened into litigation. Through its research, analysis, and experience, Hanover has developed internal procedures and strategies with respect to the negotiation and settlement of litigated insurance claims. As a general rule, as part of a negotiated settlement, Hanover prefers and typically requires that the other litigant agree

5

PRIVILEGED & CONFIDENTIAL, 2/27/08
-- JOINT DEFENSE MATERIAL

to a confidentiality clause, under which the material terms of the settlement cannot be disclosed except in certain, limited situations (*e.g.*, to enforce the settlement agreement). Confidentiality is an important part of Hanover's incentive to enter into such a settlement, because otherwise the settlement could be misconstrued and misused as an admission of liability by Hanover, when in actuality liability was disputed. In addition, publicizing the settlement amounts could create unreasonable expectations on the part of other litigants and their attorneys, whose cases involve different circumstances. Disclosing the confidential settlement terms also could result in competitive injury, because Hanover's competitors and adversaries would gain insight into Hanover's general approach to litigation and settlement negotiations.

11. Finally, Hanover has developed and implemented various policies and procedures to protect its customers' privacy rights and interests. From time to time, Hanover communicates its privacy policies to its customers and represents to them that that their private information will not be disclosed to others. An exemplar copy of a typical privacy notice included with a Hanover homeowners policy is attached hereto as Exhibit "A."

/s/ Michael Dandridge

Sworn to and Subscribed before me
this 3rd day of March, 2008.

/s/ Adam Stanhope

ADAM E STANHOPE
Notary Public
Commonwealth of Massachusetts
My Commission Expires May 10, 2013

6