## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*        05-5531 | * | |
| *Mumford v. Ingram*    05-5724 | * | |
| *Lagarde v. Lafarge*    06-5342 | * | JUDGE |
| *Perry v. Ingram*         06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*       06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAG. JOSEPH C. WILKINSON, JR. |
| *Lafarge v. USA*          07-5178 | * | |
| | * | |

# PLAINTIFFS' PRELIMINARY RESPONSE TO THE MEMORANDUM OF LAFARGE NORTH AMERICA INC., AS TO THE FEBRUARY 28, 2008 AND MARCH 4, 2008 ORDERS

Defendant Lafarge North America has submitted a number of positions plaintiffs believe to be incorrect, and plaintiffs request an additional seven days, until March 13, 2008, to perform the necessary research, develop their arguments, and discuss them with plaintiffs' counsel in the MR-GO case, and then to respond more fully if the Court would find this helpful.

### Table of Contents

A.   Lafarge is Asserting Inconsistent Positions ........................................................................... 2

B.   Lafarge Has Waived Any Asserted Protection Against "One-Way Intervention" ................ 4

C.   Plaintiffs Urge that the Court Certify the Class and that Notice and the Opt-Out Period Precede the Trial, with the Possibility of Post-Trial Adjustments and Revisions ................ 5

D.   No Time Need be Added to the Schedule for a Rule 23(f) Appeal ...................................... 7

E.   LaFarge's Arguments Against Bifurcation Are Meritless ..................................................... 7

 1.   Flooding Causation Issues Are Common, Not Individual .................................................. 7

Exhibit 1 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

2.    Foreseeability and Comparative Negligence Determinations Do Not Present Difficult Issues................................................................................................................ 7
3.    Bifurcation Does Not Mean that Juries Will Re-Examine Facts Tried by a Prior Jury...... 9
F.    Test Cases Can Be Used in Class Actions .......................................................................... 10
G.    Conclusion .......................................................................................................................... 11

### A.    Lafarge is Asserting Inconsistent Positions

In the interim, plaintiffs point out that defendant Lafarge is taking inconsistent positions in this litigation.  Lafarge argues that Rule 23 was crafted to avoid the paramount evil of one-way intervention, and that therefore no substantial issue can lawfully be resolved on the merits prior to class certification and expiration of the opt-out period.  However, Lafarge also argues that it can waive its asserted protection against one-way intervention by choosing to move for summary judgment on substantial issues.  Less than six months ago, Lafarge chose to waive its asserted protection against one-way intervention by proposing a Rule 26(f) Case Management Plan under which class certification would be delayed until after it moved for summary judgment and that motion was decided.  Its August 15, 2007, Case Management Proposal, doc. 723 in *In the Matter of the Complaint of Ingram Barge Company, as Owner of the Ing 4727, Petitioning for Exoneration from or Limitation of Liability*, C.A. No. 05-4419 (Section C(2)), stated at p. 3:[1]

> To accommodate these principles and yet make progress as to both the limiting and nonlimiting defendants, LNA proposes that the Court next adjudicate all of the remaining limitation-of-liability issues, including the issue of wall-breach causation, and at the same time address the non-limiting defendants' motion for summary judgment on that same issue of wall-breach causation. If the entire case is not terminated based on that phase, the Court should proceed next to class certification and then finally to the merits.

See also ¶ 5 of defendant Lafarge's August 15, 2007, proposed Order on its Case Management Plan.[2]

---

[1] A copy is attached hereto as Exhibit 2.
[2] A copy is attached hereto as Exhibit 3.

Exhibit 1 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

Because floodwall breach causation is a fundamental element of Ingram's and Domino-Unique's limitation actions, this issue will be adjudicated in the context of that litigation.  That decision, however, will affect Lafarge and the other Barge Entities as well as the petitioners in limitation, because the same course of events and same instrumentality—the breakaway and barge—are the factors to which the plaintiffs here (and claimants in limitation in that action) contend to be the cause of the flooding.

In its August 15, 2007 proposal, Lafarge consented to and advocated for adjudication of these matters before class certification, in direct contrast to its current position.  Yet the incentive a favorable decision would have on class members to remain in the class and not to opt out is precisely the same as if plaintiffs won a liability determination on summary judgment in this action.

Defendant Lafarge then expanded its horizons and enlarged its waiver of its asserted protection against one-way intervention, arguing in its March 5, 2008, Memorandum that any motion for summary judgment filed by any defendant, on any grounds, should be resolved before class certification.  Defendant Lafarge then even further waived this asserted protection against one-way intervention, urging that the *Robinson* bellwether case be tried prior to class certification.[3]

_____

[3] Defendant Lafarge made the following representations, after discussing its view of "one-way intervention":

> None of these points prevents the Court from handling the Barge cases in an efficient and fair manner. Consistent with these principles, LNA proposes that the Court set a schedule with the following sequence: (1) fact and expert witness discovery on all class certification and
> merits issues (other than damages for putative class members); (2) summary judgment motions by any defendant that wishes to waive its right to have class certification decided prior to any decision on its summary judgment motion; (3) class certification briefing, hearing, and decision; (4) sufficient time (at least eight months) for an interlocutory appeal from the decision on class certification, for substantive motions, and for pretrial preparation; and (5) trial(s). The Court also should move forward with the merits trial in *Robinson*, which is

Lafarge's current position with respect to the *Robinson* matter is also inconsistent and self-contradicted.  *Robinson* will adjudicate issues that will affect not only Lafarge's third-party contribution and indemnity claims, but also Lafarge's alternate theories of flood causation asserted as affirmative defenses.  These issues might include reasons, sources and extent of flooding, the question of any remaining governmental immunity after this Court hears the United States' motion concerning 702(c), and to the extent that any of the *Robinson* plaintiffs might have damages in common with and/or typical of the proposed Barge classes.  *Robinson* could negatively impact Lafarge in the very ways in which it complains that a dispositive motion or bellwether trial in the Barge track might.

### B.   Lafarge Has Waived Any Asserted Protection Against "One-Way Intervention"

A favorable decision for the Barge plaintiffs on any motion for summary judgment would certainly encourage Barge class members not to opt out of a Barge class, and would thus trigger the same one-way intervention with which defendant Lafarge argues it is concerned.  A favorable decision in the *Robinson* bellwether trial would similarly encourage MR-GO class members not to opt out of a MR-GO class.  If plaintiffs were to file, and the Court were to grant, a motion for partial summary judgment as to Lafarge's liability, the Order granting plaintiffs' motion would provide no greater incentive for class members, in their decisions whether to opt out, than would arise from plaintiffs' prevailing on the defendants' motions for summary judgment.  The same is true if plaintiffs obtained the same liability determination at trial.  Defendant Lafarge has already represented that this level of incentive is acceptable, and it is bound in this litigation by those representations.

A defendant cannot simultaneously waive its asserted protection against one-way intervention as to some substantial issues and preserve it as to other substantial issues.  Once a defendant has

---

scheduled for September 8, 2008 and, as all have agreed, will provide useful information on

Exhibit 1 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

waived as to one issue, it has waived as to all, just as its waiver of an attorney-client or work-product

privilege by disclosure to one third party results in waiving the privilege as to the world.[4]  Lafarge

does not even present authorities holding that a defendant can simultaneously selectively waive and

selectively assert the claimed protections against one-way intervention.

C.    **Plaintiffs Urge that the Court Certify the Class and that Notice and the Opt-Out Period Precede the Trial, with the Possibility of Post-Trial Adjustments and Revisions**

Notwithstanding Lafarge's waiver, plaintiffs agree that it would be preferable to amend the

schedule so that the Court would be able to resolve class certification, and so that the notice and opt-

out period would occur, prior to trial on the merits.  This is the usual practice, although that practice is

not as uniform as Lafarge paints it.  *Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384, 389-90

(5th Cir.), *cert. denied*, 493 U.S. 821 (1989), affirmed the certification of a class for purposes of

damage awards after the trial on liability.  ALBA CONTE AND HERBERT NEWBERG, 3 NEWBERG ON

CLASS ACTIONS § 7:15 (4th ed.), states:[5]

> Initial class rulings may be made before, after, or simultaneously with the disposition of other motions. Accordingly, class rulings have been made before, contemporaneously with, and following disposition of a defendant's motion to dismiss for failure to state a cause of action, lack of jurisdiction, lack of standing of the plaintiff, or improper venue.  So also, initial class rulings have been made at various times in relation to motions for transfer of venue, consolidation under 28 U.S.C.A. § 1407, abstention or stay of proceedings, preliminary injunction, amendment of the complaint, a three-judge court, approval of a settlement, voluntary dismissal of the entire litigation, and motions for summary judgment.

(Footnotes omitted.)

Plaintiffs strongly prefer to avoid possible issues for appeal that might lead to any possibility

_____

the strength and manageability of the plaintiffs' claims against the United States government.

[4] *S.E.C. v. Brady*, 238 F.R.D. 429, 440-41 (N.D. Tex. 2006), rejected a claim of selective waiver of privileged materials, surveying the cases and concluding that "an overwhelming amount of authority has found this argument wholly unpersuasive and rejected the selective waiver doctrine."

of having to re-do any of the work in this case, or to any possibility of having to try the case twice.

Rule 23(c)(1)(C) would still allow the Court to revise the resulting determination as further evidence

is developed, including the evidence at trial.  The Fifth Circuit has stated in *dictum* that "a district

court is free to reconsider its class certification ruling as often as necessary before judgment."

*McNamara v. Felderhof*, 410 F.3d 277, 280 (5th Cir. 2005) (footnote omitted).  Plaintiffs have

asserted a broad class, so Lafarge is already on notice of its complete exposure at trial.  That is all that

is requires, and a subsequent fine-tuning would not violate Lafarge's rights.  See *United Airlines, Inc.*

*v. McDonald*, 432 U.S. 385, 394-95 (1977), in which the Supreme Court upheld a postjudgment

intervention for purposes of appealing the denial of class certification after the original plaintiffs

settled and abandoned any interest in appealing the denial:

> United can hardly contend that its ability to litigate the issue was unfairly prejudiced simply because an appeal on behalf of putative class members was brought by one of their own, rather than by one of the original named plaintiffs.  And it would be circular to argue that unnamed member of the putative class was not a proper party to appeal, on the ground that her interests had been adversely determined in the trial court.  United was put on notice by the filing of the Romasanta complaint of the possibility of classwide liability, and there is no reason why Mrs. McDonald's pursuit of that claim should not be considered timely under the circumstances here presented.

The possibility of subsequent amendment is particularly important with respect to the overlap

between the classes alleged in the Barge and MR-GO cases.  If the Court determines that the barge

caused the flooding and destruction of the Barge class area, the recovery of Barge class members will

be in this case.  If the Court determines that the breaches involved in the MR-GO case, and not the

barge, caused the flooding of some part of the Barge class area, or that subsequent flooding added to

the damage caused by the barge, the Court can create, dissolve, or adjust the boundary between the

---

[5] A copy of this section is attached as Exhibit 4, for ease of reference.

classes in accordance with the evidence.[6]

### D.    No Time Need be Added to the Schedule for a Rule 23(f) Appeal

Plaintiffs disagree with Lafarge's argument that time must be built into the schedule for a Rule 23(f), Fed. R. Civ. Pro., appeal.  Lafarge's argument makes unwarranted double assumptions.  *First*, it assumes that any appeal would automatically be allowed.  To the contrary, Rule 23(f) provides only for appeals by permission ("A court of appeals may permit an appeal . . . .").  *Second*, Lafarge assumes that a stay would be automatic if it filed a Rule 23(f) appeal.  To the contrary, Rule 23(f) states: "An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders."

### E.    LaFarge's Arguments Against Bifurcation Are Meritless

#### 1.    Flooding Causation Issues Are Common, Not Individual

Plaintiffs disagree with Lafarge's argument that here can be no bifurcation because all flooding causation issues must be determined individually.  If the evidence shows that the barge caused the flooding that rose to the rooftop of one class member's home, there is no basis for Lafarge to quibble about the source of the flooding that rose to the rooftop that class member's next-door neighbors or those of class members in the next street.  Differences in location and topography can be taken into account in expert testimony, as is customary in cases involving man-made disasters.

#### 2.    Foreseeability and Comparative Negligence Determinations Do Not Present Difficult Issues

While Lafarge asserts that the risk of massive flooding throughout the class area might not have been foreseeable at some unspecified addresses for some unspecified reasons, it does not require

---

[6] Class members cannot fairly be asked to choose among the theories of liability.  An adjustment of class boundaries after the trial, if any adjustment is warranted, would violate no one's rights.

7

more than common understanding to realize that negligently knocking down the IHNC floodwalls will inundate a major part of the metropolitan area, up to and including any natural or manmade barrier.  In this case, plaintiffs have asserted that Paris Road is such a barrier.  This is virtually the definition of an issue that should be resolved on a classwide basis.

Any claim of comparative negligence defendant Lafarge wishes to make would be inapplicable to the claims in this case for property damage and business damage, because there is no way in which class members could have moved their homes and businesses to escape the flood.

No class member who evacuated and suffered emotional distress at the damage to, or destruction of, his or her property or business, or at the injury or death of a loved one, could have done anything from afar or from near to avoid that destruction.  Accordingly, there can be no claim of comparative fault as to such a person.

Lafarge may claim that class members who did not evacuate, and that decedents in the wrongful death subclass, committed comparative fault.  Its argument would assume that class members could have foreseen that Lafarge's negligence would breach and knock down the IHNC floodwall and inundate the class area in a flash flood.  Plaintiffs find it difficult to understand how Lafarge can deny that it—a huge corporation with enormous resources, access to engineers, and well aware of the need for hurricane preparedness plans—could not foresee such consequences whereas class members with no comparable resources or access, many of them without college degrees or old or disabled, could foresee such risks to such an extent that their failure to evacuate could possibly constitute comparative fault.  Not even the Mayor thought there was great risk until very late, and at that point many class members could not leave.

In any event, if Lafarge believes that it has sufficient grounds to maintain a comparative fault

Exhibit 1 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

defense under the standards of Rule 11, Fed. R. Civ. Pro., and under the standards of 28 U.S.C.

§ 1927, plaintiffs' January 31, 2008 class certification motion and proposed trial plan described how

such determinations could be made on a randomly selected bellwether basis or in individual trials.

See ¶¶ 29-32 and 37 of the Motion.  Plaintiffs expect to present similar proposals when they re-file

their class certification motion.

### 3.   Bifurcation Does Not Mean that Juries Will Re-Examine Facts Tried by a Prior Jury

The widespread granting of new jury trials on limited issues shows that the Seventh

Amendment does not require that the same jury resolve all factual questions.  It requires that no jury

revisit a prior proper jury determination, and Seventh Amendment concerns are routinely discharged

by an instruction that the new jury is bound by the previous jury's findings.  There is no impediment

to having one jury determine the existence of classwide liability, and then have that jury, or as many

supplemental juries as necessary, conduct bellwether or individual trials of the emotional distress or

wrongful death claims of class members or of any comparative fault defenses Lafarge chooses to

offer.  *Mullen v. Treasure Chest Casino*, LLC, 186 F.3d 620, 628-29 (5th Cir. 1999, *cert. denied*, 528

U.S. 1159 (2000), approved the use of a Phase I jury determining whether defendant was negligent or

the casino vessel was unseaworthy, and Phase II juries determining causation and comparative fault.

The court stated:

> In any case, we would not find the risk of infringing upon the parties' Seventh
> Amendment rights significant in this case. The Seventh Amendment does not prohibit
> bifurcation of trials as long as the "'the judge [does] not divide issues between separate trials
> in such a way that the same issue is reexamined by different juries.'" *Cimino v. Raymark
> Industries, Inc.*, 151 F.3d 297, 320 n. 50 (5th Cir. 1998) (*quoting Rhone-Poulenc*, 51 F.3d at
> 1303); *see Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978).  In
> *Castano*, we were concerned that allowing a second jury to consider the plaintiffs'
> comparative negligence would invite that jury to reconsider the first jury's findings concerning
> the defendants' conduct.  We believe that such a risk has been avoided here by leaving all

9

issues of causation for the phase-two jury.  When a jury considers the comparative negligence of a plaintiff, "the focus is upon causation. It is inevitable that a comparison of the conduct of plaintiffs and defendants ultimately be in terms of causation."  *Lewis v. Timco, Inc.*, 716 F.2d 1425, 1431 (5th Cir.1983) (*en banc*); *see id.* (permitting the use of comparative negligence in strict liability claims).  Thus, in considering comparative negligence, the phase-two jury would not be reconsidering the first jury's findings of whether Treasure Chest's conduct was negligent or the Casino unseaworthy, but only the degree to which those conditions were the sole or contributing cause of the class member's injury. Because the first jury will not be considering any issues of causation, no Seventh Amendment implications affect our review of the district court's superiority finding.

*Accord*, *In re Tri-State Crematory Litigation*, 215 F.R.D. 660, 699-700 (N.D. Ga. 2003).

The MANUAL FOR COMPLEX LITIGATION, 4TH ED. § 22.93 states that in mass tort cases "A joint trial of common issues may be feasible, followed by separate trials of remaining issues." (Footnote omitted.)  Thus, separate juries can even be used outside the context of a class action.

**F.   Test Cases Can Be Used in Class Actions**

As Lafarge has recognized in connection with the *Robinson* case, the use of test or bellwether cases prior to class certification is perfectly permissible.  The leading treatise on class actions, ALBA CONTE AND HERBERT NEWBERG, 3 NEWBERG ON CLASS ACTIONS § 8.10 stated:[7]

> As discussed below with respect to the use of test cases, the intent of amended Rule 23 to avoid one-way intervention may have become largely academic in light of subsequent evolution in the law of offensive collateral estoppel without the need to afford mutuality of right to the defendants.  In addition, one-way intervention is also a recognized by-product when a class denial is reversed on appeal after a decision on the merits.

---

[7] A copy of this section is attached as Exhibit 5, for ease of reference.

G.      **Conclusion**

Plaintiffs agree with defendant Lafarge that it would be preferable for the Court to decide

class certification, and for the notice and opt-out period to occur, prior to trial on the merits.  Rule

23(c)(1)(C) allows the resulting certification and class definition to be revised at any time up to the

entry of judgment.  Defendants' rights have already been protected because they already have notice

that plaintiffs are seeking certification of the class and subclasses described in plaintiffs' January 31,

2008, class certification motion.

Plaintiffs submit that defendant Lafarge's other arguments are not well taken, and in any event

do not need to be addressed at this time.

Respectfully submitted,

/s/ Brian A. Gilbert
Brian A. Gilbert, Esq.
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
        Telephone: (504) 885-7700
        Telephone: (504) 581-6180
        Facsimile: (504) 581-4336
        e-mail: bgilbert@briangilbertlaw.com

/s/ Lawrence D. Wiedemann
Lawrence D. Wiedemann.
Karl Wiedemann
Karen Wiedemann
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
        Telephone: (504) 581-6180
        Facsimile: (504) 581-4336
        e-mail: lawrence@wiedemannlaw.com,
        karl@wiedemannlaw.com, karen@wiedemannlaw.com,

11

/s/ Patrick J. Sanders
Patrick J. Sanders
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
    Telephone: 504-834-0646
    e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour
Adele Rapport
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
    Voice: 202-862-4320
    Cell:   202-549-1454
    Facsimile:  800-805-1065 and 202-828-4130
    e-mail: rick@rickseymourlaw.net, adele@rickseymourlaw.net

/s/ Lawrence A. Wilson
Lawrence A. Wilson
David W. Drucker
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
    Telephone: (212) 608-4400
    Facsimile: (212) 227-5159
    e-mail: lwilson@wgdnlaw1.com, ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.
Leslie Kelmachter, Esq.
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
    Telephone: 212-869-3500 ext. 235
    Facsimile:  212-398-1532
    e-mail: a.fuchsberg@fuchsberg.com,
    l.kelmachter@fuchsberg.com

Dated: March 6, 2008

Exhibit 1 to Barge Plaintiffs' Motion for Leave to File Preliminary Response