UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE | * CIVIL ACTION |
| COMPLAINT OF INGRAM BARGE | * |
| COMPANY, AS OWNER OF THE | * NO. 05-4419, C/W 05-4237, C/W 05-5531, |
| ING 4727, PETITIONING FOR | * C/W 05-5724, C/W 06-3313, C/W 06-5342, |
| EXONERATION FROM OR | * C/W 06-5054, C/W 06-6299, C/W 06-7516 |
| LIMITATION OF LIABILITY | * |
| | * SECTION "C" (2) |
| | * |
| | * JUDGE HELEN G. BERRIGAN |
| | * |
| | * MAG. JUDGE JOSEPH C. WILKINSON, JR. |

### CASE MANAGEMENT PROPOSAL OF LAFARGE NORTH AMERICA INC.

In accordance with the Court's request,[1] Lafarge North America Inc. ("LNA") respectfully submits its suggestions for the fair, efficient, and orderly management of further proceedings in this case. Specifically, LNA proposes a structure and time line and responds to the specific items identified in the Court's order, including the discovery and case management subjects listed in Rule 26(f). LNA is submitting a proposed order for the Court's consideration simultaneously with this filing.

---

[1] Rec. Doc. 704.

# INTRODUCTION

*The competing legal imperatives.*

These consolidated cases include both limitation-of-liability petitions and putative class actions. These overlapping proceedings raise potentially conflicting legal principles that need to be addressed in order to fashion an appropriate procedure for the progression of this litigation that best accommodates the interests of all parties and the Court itself.

On the one hand, as the Court has already ruled, class action proceedings are "fundamentally incompatible" with a limitation-of-liability proceeding.[2] Therefore, the Court must finish adjudicating the limitation-of-liability petitions of Ingram and Domino/Unique <u>before</u> the Court entertains plaintiffs' request for class certification against those parties.

On the other hand, the federal rules and applicable case law provide that in a putative class action case, the defendants' liability can only be addressed <u>after</u> the Court adjudicates plaintiffs' motion for class certification, to avoid the potential for "one-way intervention" and other abuses.[3] An important exception is that, with the defendants' consent, the Court can adjudicate a motion for summary judgment prior to class certification.[4] Therefore, the Court may not adjudicate the liability of LNA and the other non-limiting defendants until <u>after</u> class certification has been decided, except insofar as the defendants may move for summary judgment prior to certification.

---

[2] Rec. Doc. 128, citing *Lloyds Leasing Ltd. v. Bates*, 902 F.2d 368, 370 (5th Cir.1990).

[3] *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547-49 (1974); Fed. R. Civ. P. 23(c)(3) and advisory committee comments.

[4] See *Floyd v. Bowen*, 833 F.2d 529, 534-35 (5th Cir. 1987) (court may terminate action on summary judgment prior to ruling on class certification); <u>Manual for Complex Litigation</u> § 21.11 at 246 (4th ed.) ("[M]otions for summary judgment may be decided before ruling on class certification, although such precertification rulings bind only the named parties.").

Exhibit 2 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

*The solution*.

To accommodate these principles and yet make progress as to both the limiting and non-limiting defendants, LNA proposes that the Court next adjudicate all of the remaining limitation-of-liability issues, including the issue of wall-breach causation, and at the same time address the non-limiting defendants' motion for summary judgment on that same issue of wall-breach causation. If the entire case is not terminated based on that phase, the Court should proceed next to class certification and then finally to the merits.

This structure has several distinct advantages in terms of compliance with controlling law, efficiency, and judicial economy:

(1) First, it complies with the competing imperatives by both (a) disposing of the limitation petitions before addressing class certification and (b) not adjudicating the merits of the claims against the non-limiting defendants prior to class certification (other than, with their consent, their motion for summary judgment on wall-breach causation).

(2) It enables the Court efficiently to address the issue of wall-breach causation at the same time for both the limitation petitioners by trial and the non-limiting defendants by summary judgment. Indeed, as the Court is aware, this issue is an essential element of plaintiffs' claims against <u>all</u> of the defendants. Thus, if the Court finds that there is no genuine issue of material fact on this fundamental issue, the Court can resolve the entire litigation.

(3) This structure will allow the parties to conduct discovery on all issues, thereby putting the case in position to proceed with class certification and then the merits if it is not fully disposed of on the basis of wall-breach causation.

## LNA'S PROPOSED STRUCTURE

(1)   <u>Plaintiffs should file a master consolidated complaint</u>.

To date, six groups of plaintiffs, each represented by different counsel, have filed complaints in these consolidated proceedings.[5] The complaints vary widely in terms of the claims asserted, theories of liability, applicable law, and definition and scope of the proposed plaintiff classes.

In other cases involving similarly fractured plaintiff groups, such as *In re Propulsid Products Liability Litigation*[6] and *In re Katrina Canal Breaches Consol. Litigation*,[7] this Court required the plaintiffs to file a master consolidated complaint defining the putative class and setting forth their allegations in order to facilitate further proceedings. Similarly, a master consolidated complaint against the defendants other than the limitation petitioners would give much-needed structure and focus to the claims and class action allegations that the parties must address in this case.[8] Absent such structure and focus, it will be difficult to make meaningful progress in discovery relating to plaintiffs' class action and liability allegations.[9]

(2)   <u>The Court should open discovery on all issues and as to all parties</u>.

The rationale for limiting discovery to the Phase I issues (*i.e.*, "privity or knowledge" of the limitation petitioners) no longer applies. The Court should therefore open discovery as to all parties (including third-party defendants) and for all purposes. Discovery should build on what

---

[5] These are: *Parfait* (No. 05-4237); *Boutte* (No. 05-5531); *Mumford* (No. 05-5724), *Lagarde* (No. 06-5342); *Perry* (No. 06-6299); and *Benoit* (No. 06-7516). A seventh case, *Hubert* (No. 06-5054), has been dismissed.

[6] 208 F.R.D. 133, 141 (E.D. La. 2002) (noting that the master complaint device is "often used in complex litigation").

[7] C.A. No. 05-4182, Division "K", E.D. La. (Duval, J.), Case Management Order and Scheduling Order No. 4 (Rec. Doc. No. 3299) at p. 13.

[8] Because proceedings against the limitation petitioners other than the limitation proceeding itself are stayed pending the disposition of the limitation proceeding, the consolidated complaint at this time would only address the other defendants.

[9] See *In re. Katrina Canal Breaches Consol. Litigation, supra*, C.A. No. 05-4182, Order and Reasons on Motions (Rec. Doc. No. 6592) at p. 3 (Master Complaints and answers "establish the scope of discovery").

has already been developed – both in this case and in the related *Katrina* litigation – and repetitive or cumulative discovery should not be allowed.

      (3)    <u>The Court should finish adjudicating the limitation petitions before moving to class certification</u>.

As noted above, because class action allegations are "incompatible" with limitation proceedings, the limitation proceeding must be completed first and class certification can be taken up as to Ingram and Domino/Unique only if limitation is denied. Fortunately, the Court's Phase I ruling has significantly narrowed the issues remaining in the limitation proceeding.[10]

Notably, one of the key issues raised by the limitation petitions is whether the barge caused the breach in the canal retaining wall. If it did not, then Ingram and Domino/Unique are entitled to exoneration. Accordingly, that issue will be before the Court for adjudication at the limitation trial.

      (4)    <u>The Court should schedule a motion for summary judgment by the non-limiting defendants as to wall-breach causation simultaneously with the limitation trial</u>.

Critically, the issue of whether the barge caused the retaining wall breach is raised not only by the limitation petitions, but also by plaintiffs' claims against the non-limiting defendants. Indeed, <u>all</u> of the plaintiffs' claims against <u>all</u> of the defendants in these consolidated cases will be terminated if the plaintiffs are unable to prove that the barge caused the breach.

Under these circumstances, LNA suggests that the Court should adjudicate a motion by the non-limiting defendants for summary judgment as to wall-breach causation simultaneously with the limitation trial. (This would be done pursuant to the above-referenced rule that, with the defendant's consent, a court may adjudicate a motion for summary judgment prior to class certification.) Logic and efficiency forcefully counsel in favor of such a schedule. As noted

---

[10] Rec. Doc. No. 702.

Exhibit 2 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

above, both plaintiffs and the limitation petitioners will be required to litigate this issue at the limitation bench trial. Thus, discovery on this issue will be complete by that time, the plaintiffs will have fully developed their evidence on this point, and the Court will already be considering this issue. As such, entertaining a motion for summary judgment on this issue by the non-limiting petitioners will dovetail perfectly with the limitation schedule. Moreover, the Fifth Circuit has held that, in adjudicating a motion for summary judgment, a court may rely upon trial testimony given in a related proceeding. See *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1415 n.12 (5th Cir. 1993). Finally, it makes sense to address this issue as promptly as possible because it offers a strong possibility for resolving the entire litigation.[11] This is particularly so because multiple independent expert investigations have found that the barge did not cause the breach and/or have attributed the breach to causes other than the barge, thus strongly suggesting that the issue is one as to which summary judgment may be appropriate.[12] For these reasons, the Court should set a schedule under which the limitation trial is timed to coincide with the motion for summary judgment on wall causation.[13]

---

[11] *See* Manual for Complex Litigation § 11.34 at 47 (4th ed.) (noting that "[t]o avoid pretrial activities that may be unnecessary if the summary-judgment motion is granted, the schedule should call for the filing of the motion as early in the litigation as possible").

[12] See I. van Heerden et al., *The Failure of the New Orleans Levee System during Hurricane Katrina* (Dec. 2006) at 67 (barge "clipped the end of the already formed breach as it was sucked through") (available at: ftp://hef-hurricane.hurricane.lsu.edu/Team_Louisiana); R.B. Seed et al., *Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane Katrina* (July 31, 2006) at 6-7 (barge "slipped its moorings and was drawn in through a breach that was already well developed") (available at http://www.ce.berkeley.edu/~new_orleans); Interagency Performance Evaluation Task Force, *Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System* (March 2007) at V-79, 80 (ascribing failures to overtopping and loss of soil support) (available at https://ipet.wes.army.mil).

[13] Of course, in accordance with regular pretrial practice, the case management order should also set a schedule for motions by the limitation petitioners for summary judgment on limitation/exoneration issues other than wall-failure causation, as well as for the filing of pre-trial briefs and witness and exhibit lists shortly before the limitation trial.

Exhibit 2 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

>   (5)   <u>If the case survives summary judgment as to breach causation, class certification must precede any adjudication of liability and damages</u>.

As noted above, a court may not adjudicate the merits of a putative class action until it has first determined whether to certify a class and, if certification is granted, until the class members have been given notice and an opportunity to opt out of the class. In *American Pipe & Constr. Co. v. Utah*, the Supreme Court explained that this sequence is necessary to prevent the abuse of "one-way intervention" – that is, a procedure whereby "members of the claimed class" are permitted to "await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests."[14] The rule is one of basic fairness: if the merits are determined first, then class members will participate (and be bound) only if the named plaintiff has prevailed, but will opt out (and avoid being bound) if the defendant has won.[15] Thus the rules require a determination on class certification, including implementation of notice and opt-out procedures if a class is certified, before a decision on the merits. (As noted above, however, a defendant can choose to seek summary judgment prior to class certification, as LNA seeks to do with respect to the issue of wall-breach causation.)

Pursuant to this authority and to avoid the one-way intervention problem in this case, the Court must determine class certification before it addresses the merits of plaintiffs' claims (except with respect to a motion for summary judgment as to wall-breach causation, as set forth above). Thus, if plaintiffs' claims survive the motion for summary judgment as to wall-breach causation, the Court should next address the issue of class certification.

---

[14] 414 U.S. 538, 547-50 (1974). Indeed, the Federal Rules were amended in 1966 for the express purpose of providing that the action must be "determined to be a class or nonclass action" before a judgment on the merits.

[15] See *American Pipe*, 414 U.S. at 547, 550 (describing "abuse" and "unfairness" inherent in such a practice); see also *Isaacs v. Sprint Corp.*, 261 F.3d 679, 681 (7th Cir. 2001) (reversing case management order that permitted one-way intervention); *Robinson v. Union Carbide Corp.*, 538 F.2d 652, 663 (5th Cir. 1976) (rule was "designed to prevent 'sideline sitting' and subsequent 'one-way intervention' by the eligible class member"); *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (rule requiring class notice prior to adjudication of merits was "adopted to prevent 'one-way intervention'").

(6) <u>The structure of any merits trial(s) must await a class certification ruling</u>.

Plaintiffs have filed a putative class action and thus bear the burden of showing that the requirements of Federal Rule of Civil Procedure 23 are satisfied.[16] Their motion must address, among other things, "how a trial on the merits would be conducted."[17] Until the Court has resolved the class certification motion, therefore, any order purporting to govern the conduct of the merits phase of the case would be little better than a guess. LNA therefore submits that the Court should defer the portion of the case management order pertaining to the structure of the trial(s) on the merits – including whether or not any trial(s) will be conducted in phases, or on specific issues, or in some other manner – until after it has ruled on class certification.

## RESPONSES TO SUBJECTS IDENTIFIED IN THE COURT'S ORDER

LNA offers its suggestions on the items about which the Court inquired in its July 23, 2007 Order[18] as follows:

(1) <u>Limits on the number of written discovery requests</u>.

LNA submits that the same limits on the number of written discovery requests imposed in Phase I (<u>i.e.</u>, 35 interrogatories, document requests, and requests to admit per side) are appropriate as between Groups A and B. As established in the Court's previous scheduling order,[19] Group B defendants should be permitted to serve discovery on other Group B defendants by stipulation or, if necessary, through the filing of appropriate motions.

---

[16] See, e.g., *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005) (holding that "[t]he party seeking certification has the burden of establishing that ***all*** requirements of Rule 23 have been satisfied") (emphasis in original).

[17] *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

[18] Rec. Doc. 704.

[19] Rec. Doc. No. 210 at 2-3.

Exhibit 2 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

(2)     Limits on the number of depositions.

LNA submits that it is premature to set limits on the number of depositions at this early stage. Certainly, if the case proceeds through full merits discovery, then deposition discovery will eventually encompass the many individual claimants who have filed suit against LNA and the other defendants. However, if the Court adopts LNA's proposal to address wall-breach causation through a summary judgment motion simultaneously with the limitation trial, to be followed (if summary judgment is denied) by class certification, then the number of depositions needed on those subjects might be subject to some reasonable limitation depending on the number of witnesses identified and the number of proposed class representatives, each of whom would need to be subject to deposition.

(3)     Limits on the number of expert witnesses.

This is an expert-driven case. Plaintiffs seek massive damages based on subjects that will necessarily, and primarily, be the subject of expert testimony. Accordingly, the Court should not impose arbitrary limits on the number of expert witnesses at this time; rather, the parties will make their best efforts to avoid duplication and cumulation. After the parties designate their respective experts, the Court should review the reasons for each expert's testimony and, if necessary, rule on any parties' objections as to the qualifications or relevance of a particular expert or the number of experts who will testify at trial.

(4)     Possible severance of claims concerning levee/retaining-wall construction and/or maintenance not directly involving the barge.

Severance of third-party claims is not warranted and would severely prejudice LNA, as Judge Berrigan has already specifically ruled.[20] Because plaintiffs must prove that the barge proximately caused their damages in order to prevail, LNA is entitled to defend itself by showing

---

[20]  Rec. Doc. 618.

that the plaintiffs' alleged injuries were actually caused by something else.[21] LNA's demonstration that the barge <u>did not</u> cause the collapse of the retaining wall will necessarily involve a showing of the factors that <u>did</u> cause the wall to collapse. Evidence concerning the governmental entities' role in causing the IHNC southern breach is essential to understanding how that breach could have happened (and did happen) without impact from a barge.

In addition, plaintiffs' alleged damages were caused by <u>many</u> breaches of the levees and retaining walls aside from the one through which the barge was drawn. The northern breach of the IHNC retaining wall – through which the barge did <u>not</u> pass – is a specific case in point. There are many other breaches relevant to the sprawling area involved in the plaintiffs' claims in this case. An examination of the timing and effects of these other breaches is a critical component of LNA's causation defense. Thus, ultimately, LNA's demonstration that the barge did not cause plaintiffs' alleged damages will also necessarily involve consideration of those other breaches and the reasons why they occurred.

LNA is also entitled to present evidence of the governmental entities' conduct in order to allocate damages if LNA is held liable. Some plaintiffs have erroneously asserted a "one percent" theory – that LNA must pay for all their damages if it "caused or contributed to one-percent of the damages," and thus that no other causes need be considered – as a basis for severing LNA's third-party claims.[22] Not only does that assertion egregiously misstate the law on causation,[23] but it also ignores that both maritime law and Louisiana law require the apportionment of fault among <u>all tortfeasors</u>, including those that plaintiffs chose not to sue.[24]

---

[21] See *Exxon Co., U.S.A. v. Sofec, Inc.,* 527 U.S. 830, 836-37 (1996); *Laurent v. Jolly-Wright*, 2005-1499 (La. App. 4 Cir. 1/10/07), 950 So.2d 47, 49.

[22] Rec. Doc. 617 at 2.

[23] See, <u>e.g.</u>, *Bach v. Trident Steamship Co., Inc.*, 920 F.2d 322, 327 (5th Cir. 1991).

[24] See *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 217 (1994); La. Civ. Code Ann. art. 2324 (2007).

It would be nonsensical, wrong, and severely prejudicial to attempt to deal with the barge in a vacuum as some plaintiffs propose. As one court put it, to focus on one possible cause of an accident to the exclusion of all others "would be tantamount to showing an audience one scene in the middle of a movie and then asking them to render an opinion as to its ultimate significance without seeing the rest of the film."[25]  Here, the factfinder cannot possibly determine whether the barge proximately caused the failure of the IHNC retaining wall, or the alleged damages of the individual plaintiffs, without an understanding of all of the *other* factors that were also at work. And, because LNA is entitled to take discovery and present evidence on these issues, as the Court has already recognized, neither efficiency nor simplification would result from the severance of LNA's third-party claims.

In sum, severance of LNA's third-party claims against the entities whose actions caused the breach through which the barge passed would be highly prejudicial, wasteful, and unfair. This Court has already specifically ruled that justice requires that LNA have the opportunity to adjudicate its right to indemnity or contribution from the government entities *in this case* in order to afford "complete relief to all parties" if liability is shown to exist and to avoid "a significant waste of judicial resources."[26]  There is no reason for the Court to deviate from that ruling.

---

[25] *Lyons v. May*, 51 P.3d 625 (Or. Ct. App. 2002), *aff'd on other grounds*, 96 P.3d 1215 (Or. 2004).

[26] Rec. Doc. 587 at 7.

Exhibit 2 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

(5)   Proposed timetable for class certification, merits discovery, and trial.

LNA proposes a schedule that will enable the Court to complete the limitation-of-liability and summary judgment portion of the case and the class certification proceedings (if necessary) within the next 18 months. On the other hand, as discussed above, the shape and timing of any merits trial(s) cannot be determined until the Court has ruled on plaintiffs' class certification motion. LNA thus proposes the following schedule:

| Date | Event |
|---|---|
| 09/15/07: | Plaintiffs file master consolidated complaint; discovery opens on all issues |
| 12/14/07: | Plaintiffs' expert reports on wall-failure causation and on all other limitation issues due |
| 01/14/08: | Defendants' expert reports on wall-failure causation and on all other limitation issues due; expert discovery begins |
| 03/14/08: | Discovery on wall-failure causation and on all other limitation issues to be completed |
| 04/11/08: | Deadline for any motions for summary judgment by the limitation petitioners on limitation exoneration/issues other than wall-failure causation. (The deadline for the opposition of any such motion, and the date for hearing, to be set in accordance with applicable rules.) |
| 04/14/08: | Deadline for filing summary judgment motion on wall-failure causation |
| 05/07/08: | Plaintiffs' memorandum in opposition to motion for summary judgment on wall-failure causation due |
| 05/29/08: | Reply memoranda in support of motion for summary judgment on wall-failure causation due |
| 07/02/08: | Pretrial briefs and witness and exhibit lists due for limitation trial |
| 07/15/08: | Combined hearing on motion for summary judgment on wall-breach causation and trial on all remaining limitation issues |

If the case is not thereby fully resolved, the schedule would continue as follows:

| | |
|---|---|
| 10/01/08: | Plaintiffs' class certification motion and brief, and any expert disclosures, due |

12

    11/14/08:       Defendants' class certification opposition brief and expert disclosures due

    12/15/08:       Plaintiffs' reply memorandum in support of class certification due

    01/13/09:       Class certification hearing

This schedule has been designed to be realistic and to accommodate what LNA understands to be the plaintiffs' desire for substantial discovery as well as holiday schedules. As long as the proposed sequence is maintained, LNA would have no objection to reasonably shortening the schedule if the other parties and the Court believe that a shorter schedule is workable.

**RESPONSES TO RULE 26(f) SUBJECTS**

    (1)       <u>Rule 26(a)(1) disclosures</u>.

LNA submits that Rule 26(a)(1) disclosures are unnecessary and would be duplicative of written discovery that has been and/or will be served.

    (2)       <u>Discovery subjects, timing, and phasing</u>.

LNA does not propose to limit the subjects or targets of written discovery during the next phase of the case. Discovery on wall-failure causation and on the remaining limitation-of-liability issues, including expert discovery, should be a particular focus and would be subject to the schedule set forth above. Discovery on issues pertaining to class certification, including expert discovery, should also be carried out.

    (3)       <u>Issues relating to electronically stored information, including form of production</u>.

LNA does not anticipate any major issues in relation to electronically-stored information. To the extent that the form of production is an issue, LNA proposes .tif files as the industry standard for production.

(4)     Issues relating to claims of privilege or protection as trial-preparation material.

Claims of privilege and work product protection should be made per Fed. R. Civ. P. 26(b)(5) and the accompanying Advisory Committee comments, with due flexibility as to the specific form and content of privilege designations, provided that the basis for the claim of protection is made apparent as required by the rule.  LNA is willing to stipulate to protection against inadvertent waiver.

(5)     Limitations on discovery.

This subject is addressed above.

(6)     Any other orders under Rule 26(c).

There should be no duplication of Phase I discovery.  Witnesses who were deposed in Phase I should not be subject to further deposition without a specific showing of need, and any examination should be limited to those subjects as to which need has been shown.

Further, in order to avoid duplication and unnecessary expense, the parties to the third-party claims herein should exchange all of their prior discovery responses both from Phase I of this case and from the *Katrina* litigation pending before Judge Duval.  Following the review of those materials, the third-party plaintiffs and third-party defendants should confer prior to serving additional discovery requests on one another.  That will ensure that the substantial discovery efforts already made in Phase I of this case and in the *Katrina* litigation are not duplicated in connection with the third-party claims.

(7)     Any other orders under Rule 16(b) or (c).

After plaintiffs file their master consolidated complaint, there should be an opportunity to join additional parties, provided that no undue prejudice results from their not having participated in Phase I that cannot reasonably be cured by their participation in future

proceedings. Moreover, in accordance with Rule 16(c)(5), the Court should adopt the procedures set forth above to provide for summary adjudication on the issue of wall-failure causation.

## CONCLUSION

LNA submits that the most efficient way to solve the procedural conundrums created by these consolidated actions is to first resolve the remaining limitation-of-liability issues together with a summary judgment motion on wall-failure causation. If the case is not terminated, the Court should next proceed to class certification prior to the merits. LNA respectfully requests the opportunity to address these proposals, and any questions or concerns the Court may have, at the hearing on August 21.

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (# 5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
Parker Harrison (# 27538)
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone: (504) 598-2715

/s/ John D. Aldock
John D. Aldock
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, NW
Washington, DC 20001
Tel.: (202) 346-4240

**ATTORNEYS FOR
LAFARGE NORTH AMERICA INC.**

## Certificate of Service

I do hereby certify that I have on this 15th day of August, 2007 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic notification, facsimile transmission, hand delivery, or United States mail, properly addressed, and first-class postage prepaid.

/s/ John D. Aldock