

CLASSACT § 8:10                                                                                                       Page 1
3 Newberg on Class Actions § 8:10 (4th ed.)

Newberg on Class Actions
Database updated June 2007

Alba Conte and Herbert B. Newberg

Chapter 8. Notice to Class Members

References

**§ 8:10.One-way intervention and collateral estoppel**

"One-way intervention" refers to a situation in which a potential class member will seek to refrain from participation in a class action until the outcome, whether favorable or unfavorable, appears discernible. If a favorable outcome is likely, the class members will attempt to intervene; if the outcome will be unfavorable, the member will remain on the sidelines to avoid the res judicata effect of the verdict.

In revising Rule 23, one purpose of the Advisory Committee was to eliminate resort to one-way intervention in representative suits. Subdivisions (c)(2) and (c)(3) have an interrelationship that bears on the intent of the notice requirement. Subdivision (c)(3) reads:

> The judgment in an action maintained as a class action under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

In its explanatory annotation, the Advisory Committee pointed out: "Under proposed subdivision (c)(3), one-way intervention is excluded; the action will have been early determined to be a class or nonclass action, and in the former case the judgment, whether or not favorable, will include the class, as above stated."[FN1]

The emphasis to exclude one-way intervention is on the binding effect of the judgment, whether or not favorable, without any specific reference to notice. Some courts have reasoned, however, that the concepts are interrelated. For example, in American Pipe & Construction Co. v. Utah,[FN2] the Advisory Committee's intention was explained.

> A recurrent source of abuse under the former Rule lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.
Exhibit 5 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

Case 2:05-cv-04182-SRD-JCW   Document 11576-4   Filed 03/07/08   Page 2 of 6

CLASSACT § 8:10                                                                                    Page 2
3 Newberg on Class Actions § 8:10 (4th ed.)

interests. If the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment. This situation—the potential for so-called "one-way intervention"—aroused considerable criticism upon the ground that it was unfair to allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one. The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments.

Under the present Rule, … potential class members retain the option to participate in or withdraw from the class action only until a point in the litigation "as soon as practicable after the commencement" of the action when the suit is allowed to continue as a class and they are sent notice of their inclusion within the confines of the class. Thereafter they are either nonparties to the suit and ineligible to participate in a recovery or be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse.[FN3]

From the standpoint of absent members, both Eisen[FN4] and American Pipe instruct that Rule 23(c)(2) notice is mandatory in Rule 23(b)(3) class actions in order for class members to have the option to participate in or to exclude themselves from the pending litigation. This rationale also ties in with the requirement of Rule 23(c)(1) that a class determination be made "as soon as practicable," because this option should be available early in the suit if it is to be meaningful. This option becomes more theoretical than real as claims of individual members become smaller. Moreover, it has been observed that as long as representation of the class is considered adequate, a judgment in a Rule 23(b)(3) class would be binding on the class within due process principles even without any right of exclusion.[FN5] In any event, from the standpoint of the defendants, it is reasonable to infer from these Supreme Court decisions that the amended Rule 23 was designed to avoid one-way intervention after a decision on the merits, and, therefore, because a class member in a Rule 23(b)(3) class can exclude himself or herself after receipt of notice of the action, it is important that a Rule 23(c)(2) notice be sent before a merits determination. As discussed below with respect to the use of test cases, the intent of amended Rule 23 to avoid one-way intervention may have become largely academic in light of subsequent evolution in the law of offensive collateral estoppel without the need to afford mutuality of right to the defendants.[FN6] In addition, one-way intervention is also a recognized by-product when a class denial is reversed on appeal after a decision on the merits.[FN7]

**Test Cases**

Minimizing notice costs is a major factor in the decision to launch a class action suit. One avenue for consideration is the employment of a test or pilot case. The inherent value of the test case as one tool to promote judicial efficiency and cost savings was acknowledged in the explanatory notes accompanying the 1966 rule revision. In its explanation of the criteria to be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.
Exhibit 5 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

Case 2:05-cv-04182-SRD-JCW   Document 11576-4   Filed 03/07/08   Page 3 of 6

CLASSACT § 8:10                                                                  Page 3
3 Newberg on Class Actions § 8:10 (4th ed.)

weighed in determining Rule 23(b)(3) viability, the revisers commented that an agreed individual action may in some circumstances be preferable to complex litigation on behalf of a noncohesive class.

That common questions predominate is not itself sufficient to justify a class action under subdivision (b)(3), for another method of handling the litigious situation may be available which has greater practical advantages. Thus one or more actions agreed to by the parties as test or model actions may be preferable to a class action.[FN8]

Under Supreme Court precedent, additional plaintiffs will not be estopped from later bringing a class suit on the same issue. Moreover, if the test case is successful, the class may benefit if the Court finds that offensive collateral estoppel is warranted. In Parkland Hosiery Co. v. Shore,[FN9] a securities suit, a class action complaint was filed, but before the suit came to trial, another federal district court entered a declaratory judgment against the defendant, Parkland Hosiery Company. The plaintiff then asserted that Parkland Hosiery was collaterally estopped from relitigating issues resolved against it in the other lawsuit. The Supreme Court affirmed the circuit court holding—a nonjury trial determination collaterally estops the same party from seeking a subsequent jury trial on the same issues of fact.[FN10] While offensive collateral estoppel is still alive as a potential litigation strategy, its usefulness is placed in doubt by another major obstacle—the statute of limitations.

If a test case has been promptly instituted and, consistent with its purpose, quickly dispatched, the running of the statute will not inhibit effective exploitation of the precedent through subsequent filings. However, in many situations, delays of various kinds in the initial proceeding will necessarily result in the expiration of the limitations period, before most injured parties will have the opportunity to benefit from the test decision. To circumvent this problem, the Third Circuit in Katz v. Carte Blanche Corp.[FN11] promulgated a unique variation of the test case route. In the absence of a separate individual suit, the court decided to consider the merits of the named representative's claims, deferring, pending the outcome, the matters of certification and Rule 23(c)(2) notice. The running of the statute is "suspended" by the filing of the class complaint, at least until rejection of certification.[FN12] The origins and continued posture of this test case as a nonseverable aspect of the class complaint are not without their imposing problems. Katz would seem to gloss over both the Rule 23(c)(1) directive for class ruling "as soon as practicable" and proscriptions against one-way intervention by absent class members within subdivision (c)(3), who might wait and see the litigation results before electing to be bound.[FN13] Katz relied on the dilution of the mutuality of estoppel doctrine, the foundation on which the one-way intervention ban rests. The position in Katz is that since the one-way intervention ban is intended to protect the defendant's interests, the defendant should be permitted to waive the protection for good reason when prejudice to other parties will not result. Eisen v. Carlisle & Jacquelin[FN14] does not deter a judicial ruling on the defendant's summary judgment motions before certification, which is in itself a waiver of one-way intervention prohibitions. Furthermore, in an earlier decision which the Eisen majority did not criticize, the Supreme Court endorsed the grant of partial summary judgment to the plaintiffs and the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 2:05-cv-04182-SRD-JCW   Document 11576-4   Filed 03/07/08   Page 4 of 6

CLASSACT § 8:10                                                          Page 4
3 Newberg on Class Actions § 8:10 (4th ed.)

propriety of charging the interim cost burdens to the defendants, though neither class ruling nor Rule 23(c)(2) notification had yet been undertaken.[FN15]

A more traditional understanding of the test case procedure is evident in the Gypsum Wallboard cases.[FN16] Twenty-four individual actions were utilized by the court to probe the merits also relevant to the back burner class cases being held in abeyance. Later, after liability had been assessed against the defendants, the stay order on the back burner cases was lifted, followed by renewed discovery. Six plaintiff classes were established, and partial summary judgment was entered in favor of the classes.

Again, the desire to toll the statute of limitations for maximum stare decisis and collateral estoppel effect makes necessary the pendency of representative suits during deliberation on the individual pilot cases. Conflict with the Rule 23(c)(1) directive for early class determination is minimized by the need for discovery. It is generally accepted that further proceedings, including certification, can be deferred within the discretion of the trial court pending the determination of preliminary motions. Given the Gypsum setting, involving myriad representative and individual suits, the trial court alternatively could have conditionally approved the class under Rule 23(c)(1) before concentrating on liability in the individual suits.

The statute of limitations would remain tolled, though compliance with Rule 23(c)(2) notice to the class could be delayed pending more concrete class determinations thereafter.[FN17] The Gypsum court, in choosing the noncertification route, was evidently concerned with processing the litigation complexities in the most expeditious manner possible. The presiding judge asserted, in retrospect:

> The magnitude of the processing of the pilot "dealer" cases alone is readily apparent when one considers that the trial of the two separate stages above indicated took up 120 trial days, with docketed pleadings, motions, etc. in excess of 5,500 and trial transcripts in excess of 100 volumes.[FN18]

Prior disposition of nonclass actions completely sidesteps the one-way intervention problems. Rule 23(c)(3), designed to preclude the practice, explicitly relates to representative actions only. Irrespective of the one-way intervention and collateral estoppel hurdles, the test case leaves open viable prospects for postponing the Rule 23(c)(2) notice costs issue until the establishment of liability makes cost sharing a proper consideration.

> [FN1] Rules Advisory Committee Notes to Fed. R. Civ. P. 23, 39 Federal Rules Decisions pp 69, 106. It should be noted that the filing of damage claims by individual class members following trial on the merits does not constitute one-way intervention. In re Antibiotic Antitrust Actions, 333 F. Supp. 278, 287 (S.D. N.Y. 1971), order amended, 333 F. Supp. 291 (S.D. N.Y. 1971) and order amended, 333 F. Supp. 299 (S.D. N.Y. 1971), mandamus denied, 447 F.2d 122 (2d Cir. 1971) and mandamus denied, 449 F.2d 119 (2d Cir. 1971).

Case 2:05-cv-04182-SRD-JCW   Document 11576-4   Filed 03/07/08   Page 5 of 6

CLASSACT § 8:10                                                                                       Page 5
3 Newberg on Class Actions § 8:10 (4th ed.)

[FN2]American Pipe & Const. Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713, 18 Fed. R. Serv. 2d 1 (1974).

[FN3]American Pipe & Const. Co. v. Utah, 414 U.S. 538, 547 to 549, 94 S. Ct. 756, 38 L. Ed. 2d 713, 18 Fed. R. Serv. 2d 1 (1974).

[FN4]Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732, 18 Fed. R. Serv. 2d 877 (1974).

[FN5] Fisch, Notice, Costs, and the Effect of Judgment in Missouri's New Common-Question Class Action, 38 Mo. L. Rev. 173, 197 to 200 (1973).

[FN6] Note, Reopening the Debate: Postjudgment Certification in Rule 23(b)(3) Class Actions, 66 Cornell L. Rev. 1218 (1981).

[FN7]United Airlines, Inc. v. McDonald, 432 U.S. 385, 97 S. Ct. 2464, 53 L. Ed. 2d 423 (1977) (absent class members may timely intervene after final judgment to appeal a class denial ruling).

[FN8] Rules Advisory Committee Notes to Fed. R. Civ. P. 23, 39 Federal Rules Decisions pp 69, 103.

[FN9]Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552, 26 Fed. R. Serv. 2d 669 (1979).

[FN10]Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 332 to 333, 99 S. Ct. 645, 58 L. Ed. 2d 552, 26 Fed. R. Serv. 2d 669 (1979).

Potential use of offensive collateral estoppel by plaintiffs and defendants is explored in detail in Ch 16 and, in connection with mass tort class actions, Ch 17.

[FN11]Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir. 1974).

[FN12]American Pipe & Const. Co. v. Utah, 414 U.S. 538, 554, 94 S. Ct. 756, 38 L. Ed. 2d 713, 18 Fed. R. Serv. 2d 1 (1974).

[FN13]American Pipe & Const. Co. v. Utah, 414 U.S. 538, 544, 94 S. Ct. 756, 38 L. Ed. 2d 713, 18 Fed. R. Serv. 2d 1 (1974) and Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732, 18 Fed. R. Serv. 2d 877 (1974). Note that the Katz majority also reversed the certification order below without the required finding of discretionary abuse. See dissent at Katz v. Carte Blanche Corp., 496 F.2d 747, 772 to 773 (3d Cir. 1974).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.
Exhibit 5 to Barge Plaintiffs' Motion for Leave to File Preliminary Response

Case 2:05-cv-04182-SRD-JCW   Document 11576-4   Filed 03/07/08   Page 6 of 6

CLASSACT § 8:10                                                          Page 6
3 Newberg on Class Actions § 8:10 (4th ed.)

[FN14]Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732, 18 Fed. R. Serv. 2d 877 (1974).

[FN15]Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S. Ct. 616, 24 L. Ed. 2d 593 (1970).

[FN16]In re Gypsum Cases, 386 F. Supp. 959 (N.D. Cal. 1974). See also Wall Products Co. v. National Gypsum Co., 326 F. Supp. 295 (N.D. Cal. 1971).

[FN17]American Pipe & Const. Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713, 18 Fed. R. Serv. 2d 1 (1974); Katz v. Carte Blanche Corp., 496 F.2d 747 (3d Cir. 1974).

[FN18]In re Gypsum Cases, 386 F. Supp. 959, 964 (N.D. Cal. 1974).

© 2007 Thomson/West

CLASSACT § 8:10

END OF DOCUMENT