UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*          05-5531 | * | |
| *Mumford v. Ingram*       05-5724 | * | |
| *Lagarde v. Lafarge*       06-5342 | * | JUDGE |
| *Perry v. Ingram*             06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*          06-7516 | * | |
| *Parfait Family v. USA*   07-3500 | * | MAG. |
| *Lafarge v. USA*              07-5178 | * | JOSEPH C. WILKINSON, JR. |
| | * | |

## MOTION TO COMPEL DISCOVERY RESPONSES FROM LAFARGE NORTH AMERICA, INC.

As will be presented at length in the Barge Plaintiffs' Motion for Protective Order, Lafarge North America is and has been practicing a pattern of evasiveness, nonresponse, concealment and ambush, meant, under cover of improper work product, trial preparation and other objections, to obfuscate proof of its improper communications with named plaintiffs, represented plaintiffs, and other putative class members, and intended to prevent discovery of evidence surrounding Lafarge's questionable "compromise" with the Murph Family - on whose house ING 4727 landed while Mr. Murph was present - with the ultimate goals of ambush of plaintiffs' counsel and witnesses, and elimination or suppression of key proof that ING 4727 crashed into and caused the collapse of the eastern Industrial Canal floodwall.

The subject of the present motion is Lafarge's written merits and class certification discovery responses, one means by which Lafarge has implemented its effort to hide facts.

Lafarge is well aware of movers' position that their discovery responses are evasive, nonresponsive, and peppered with improper objections. Lafarge has been given ample opportunity to comply with the requirements of Federal Rules of Civil Procedure 26, 33 and 34, and has been afforded at least five Local Rule 37.1E meetings and conferences, in addition to a host of emailed attempts to obtain Lafarge's compliance. **Exhibit A** is correspondence memorializing Local Rule 37.1 meetings and other communications concerning Lafarge's responses and objections, which makes clear that Lafarge self-limits production of certain information and things, will consider but not commit to production of others, persists in its refusal to produce others subject of this motion, and adheres to its improper objections. These include Lafarges responses to Requests for Admissions (**Exhibit B**), Interrogatories (**Exhibit C**) Requests for Production (**Exhibit E**), and Class Certification Requests for Production (**Exhibit F**).

An important issue to be addressed here, *inter alia*, and the subject of a Motion for Protective Order and other related motions to be filed contemporaneously, is Lafarge's refusal to produce evidence of ex parte contacts with putative class members. Counsel for Lafarge hired Centanni Investigative Agency which conducted in person and recorded telephone interviews of clients of the undersigned and other counsel of record in this suit, some of whom are also named claimants in the pending limitation actions of Ingram and Domino-Unique, *In Re Ingram Barge Company*, etc., and consolidated cases. The telephone interviews were recorded without the interviewees' knowledge or consent.

Lafarge persists in its refusal to provide interview transcripts as to other persons belonging to the putative class, claiming work product privilege. Facts are not privileged. Neither is evidence of culpable conduct. Furthermore, in many instances, interviews withheld or

redacted from those produced (excerpts submitted as **Exhibit F**) are interviews of immediate family and members of clients' households, who have not necessarily all signed an attorney retainer contract. However, persons who retained counsel in this matter have done so with respect to all damage to their particular residential property, that is, damage suffered indivisibly by all who live there. Interviews with a spouse or uncle who lives in the same household, or with persons who coexist within the hierarchy of wrongful death claimants, are the functional equivalent of interviews with persons who signed retainers for these types of damages. These cannot be withheld, and have all been requested in written discovery.

Lafarge's purpose is abuse and ambush, as was demonstrated during the deposition of undersigned's client Sidney Williams (to be treated in the Motion for Protective Order), when counsel for Lafarge attempted to impeach his earlier statement, recorded without his knowledge or consent, in which he expressed the *opinion* that the government blew up the IHNC floodwall. Movers seek to compel Lafarge to produce all of the interviews upon which defense counsel base their efforts to entrap and elicit contradictory opinion testimony from lay persons about what happened to the floodwall. Further, movers seek to compel this production in order to curtail or at least meet Lafarge's efforts to prejudice the putative class and turn its members against one another.[1]

---

[1] Lafarge equally demonstrates its intentions through subtle intimidation of the Arthur Murph Family, upon whose Jourdan Avenue house the barge landed when it broke the floodwall. Mr. Murph exclaimed in a recorded statement in early 2006, "probably, my ass..." when asked if the barge probably caused the floodwall breach.

Counsel for Lafarge established New Jourdan, LLC in order to effect compromise for the Murphs' property damage. This Court has seen at least some of these documents *in camera*. New Jourdan, LLC, which includes as its officer counsel in this matter for NYMAGIC, holds a collateral mortgage over Mr. Murph's new home on Berkely Drive, bought outright with settlement funds at a closing attended by a member of Chaffe McCall. There is no reason for this mortgage but to enforce Mr. Murph's silence as per a confidentiality agreement in the settlement.

Mr. Murph has testified in deposition of his fear that if he talks about the floodwall breach and the barge, he will lose his house. Despite undersigned's requests that counsel for Lafarge advise Mr. Murph in writing that this is not the case, Lafarge declined any opportunity to set the record straight. Despite Mr. Murph being under subpoena, and despite language in the confidentiality agreement that disclosure would not be prevented upon prior notice and permission not unreasonably withheld by Lafarge, Lafarge refused to allow Mr. Murph to testify to such matters. Mr. Murph terminated his deposition on December 17, 2007, in fear that he would provoke a response from Lafarge.

Plaintiffs respectfully move this Court for an order striking Lafarge's written discovery responses and objections subject of this motion, and compelling Lafarge North America to submit more complete and/or amended responses to class certification and merits discovery propounded pursuant to CMO 5 on or before October 12, 2007, and supplemental discovery propounded thereafter with leave of Court, under penalty of sanctions of an appropriate magnitude for failure to comply.

Respectfully submitted,

WIEDEMANN & WIEDEMANN

LAWRENCE D. WIEDEMANN, (13457)
KARL WIEDEMANN, (18502)
KAREN WIEDEMANN, (21151)
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-6180

LAW OFFICE OF BRIAN A. GILBERT

\s\Brian A. Gilbert
BRIAN A. GILBERT (21297)
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 885-7700

\s\Patrick J. Sanders
PATRICK J. SANDERS (18741)
Attorney at Law
3123 Ridgelake Drive, Suite B     Metairie,
Louisiana 70002
Telephone: (504) 834-0646

RICHARD T. SEYMOUR
(D.C. Bar #28100)
The Law Office of Richard T. Seymour, PLLC
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C.   20036-4129

ALAN L. FUCHSBERG
(N.Y.S.B.A. #1755966)
LESLIE D. KELMACHTER
(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
New York, NY   10110

---

It was reconvened on January 28, 2008, with Mr. Murph's current attorney, at which time Mr. Murph revealed that the agreement was signed at Chaffe McCall, without any opportunity for Mr. Murph to review it beforehand, without benefit of counsel for Mr. Murph, without any explanation by Lafarge of Mr. Murph's obligations, and that he does not know why New Jourdan, LLC, New Berkely, LLC or Ingram Barge Company appear in the settlement documents.  Mr. Murph testified specifically that he understood that he could not discuss what happened or the settlement because of the confidentiality agreement.

    Movers plan to conduct more discovery as to these questions, and anticipate pertinent motions, but mention these events now for the sake of context, and in connection with Requests for Production 14 - 16.

LAWRENCE A. WILSON
(N.Y.S.B.A. 2487908)
DAVID DRUCKER
(N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
233 Broadway, 5th Floor
New York, NY  10279

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 5 day of March, 2008.

                                    \s\Brian A. Gilbert