## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*     05-5531 | * | |
| *Mumford v. Ingram*   05-5724 | * | |
| *Lagarde v. Lafarge*  06-5342 | * | JUDGE |
| *Perry v. Ingram*      06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*    06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAG. |
| *Lafarge v. USA*        07-5178 | * | JOSEPH C. WILKINSON, JR. |
| | * | |

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES FROM LAFARGE NORTH AMERICA

**MAY IT PLEASE THE COURT:**

Plaintiffs pray for an Order striking certain of Lafarge's objections and responses to written discovery, as per plaintiffs' motion, and for the following reasons.

## OUTLINE OF DISCUSSION TOPICS

I. **DISCOVERY CONCERNING *EX PARTE* COMMUNICATIONS BY DEFENSE COUNSEL AND/OR CENTANNI INVESTIGATIVE AND FACTS ACQUIRED THEREBY CONCERNING THE BREAKAWAY AND FLOODWALL BREACHES**
   **A.  Requests for Admissions - Merits**
      **1.  Request for Admission No. 1 -** *ex parte* communications with persons who saw the barge pass the floodwall;
      **2.  Request for Admission  No. 2 -** *ex parte* communications with persons, if any, who claim to have seen the barge go through an existing breach;
       **3.  Request for Admission No. 3 -** *ex parte* communications with persons who saw the barge hit the floodwall;

1

**B. Interrogatories - Merits**
 **1. Interrogatory No. 5 -** *ex parte* communications/ witnesses to the breach;
**C. Requests for Production - Merits**
 **1. Request for Production No. 3 -** *ex parte,* secretly recorded class member witness statements**;**
 **2. Requests for Production 14 - 16 -** Arthur Murph
**D. Requests for Production - Class Certification**
 **1. Requests for Production Nos. 5 through 10 -** ex parte, secretly recorded class member witness statements.

**II. DISCOVERY CONCERNING COMPANY AND INDUSTRY STANDARDS OF MARITIME CARE OF CARE RELEVANT TO LAFARGE'S CONDUCT CAUSING OR CONTRIBUTING TO THE BREAKAWAY OF ING 4727 AND/OR FLOODWALL BREACHES**
**And/or**
**FACTS RELEVANT TO OCCURRENCE AND PROOF OF SAME**
**A. Requests for Admissions:**
 **1. Request for Admission No. 6 (subparts A, C-E) -** prestorm communications with Ingram;
 **2. Request for Admission No. 22 -** prestorm communication with Port Commander;
 **3. Requests for Admissions Nos. 12 and 13 -** instructions to Domino/Unique;
 **4. Requests for Admissions Nos 14, 17, 18, 28 and 30 -** dockside storm preparation activities and company decision-making;
 **5. Requests for Admissions Nos. 19-20 -** inconsistent responses**;**
**B. Interrogatories**
 **1. Interrogatory No. 1 -** hurricane policy;
**C. Requests for Production**
 **1. Requests for Production Nos. 1 and 12 -** hurricane policy;
 **2. Requests for Production Nos. 17A and 17B** - prevention of breakaway, breach, facts relevant to their occurrence;
 **3. Requests for Production Nos. 20 and 21 -** photos and video of barge;
 **4. Request for Production No. 23 -** Lafarge's communications with the Coast Guard preKatrina and during USCG investigation;
 **5. Request for Production No. 27 -** Lafarge's knowledge of storm preparations provided by entities other than Ingram or Lafarge;
 **6. Request for Production No. 29 -** additional possible causes of the breakaway.

**III. DISCOVERY CONCERNING LAFARGE'S CONTENTIONS OF OTHERS' FAULT**
 **A. Interrogatories - Merits**
  **1. Interrogatory No. 18 -** Lafarge's contentions as to others' fault;
  **2. Interrogatory No. 19 -** forensic models and data;
 **B. Requests for Production - Merits**
  **1. Request for Production No. 28 -** forensic models and data.

# DISCUSSION

I.   **DISCOVERY CONCERNING *EX PARTE* COMMUNICATIONS BY DEFENSE COUNSEL AND/OR CENTANNI INVESTIGATIVE, AND FACTS ACQUIRED THEREBY**

**A.   Requests for Admissions - Merits  - (Exhibit B, consisting of original and amended responses)**

    **1.   Request for Admission No. 1** states: Admit that Lafarge is aware of one or more persons - other than Terry Adams and Christopher Weaver - who has claimed to be an eyewitness to the transition of ING 4727 from the canal side of the eastern Inner Harbor Navigation Canal floodwall to the residential side thereof on August 28-29, 2005.

  Lafarge's initial response was amended to state as follows:

    **Amended Answer to Request No. 1:** Lafarge objects to this request as an improper. Request for Admission in this action.  Requests for admission are for the purpose of narrowing the issues for trial, not for purposes of discovery.  LNA's "awareness" of what others may have "claimed" is not an issue for trial, and this request cannot possibly narrow the issues for trial regardless of the answer.  Subject to and without waiving any objections, LNA admits that it is "aware" of "one or more persons...other than Terry Adams and Christopher Weaver" who has claimed to be an eyewitness" to the supposed events recited in the request, but LNA does ***not*** admit the veracity of any such account.  Further, to prevent any attempted misuse of its answer to this request to admit, LNA specifically denies that ING 4727 caused or contributed to the failure of the eastern IHNC floodwall or levee, or any other floodwall or levee, and denies that any witness can truthfully testify to the contrary.

    As is plain to see, the response goes far beyond "admitted," "denied," or "unable to admit or deny because..."  It does not meet the standards established by Rule 36 and implemented by this Court.

    Additionally, Lafarge's objection is improper.  Fed. R. Civ. P. 36(a)(1) states that a party may serve requests for admissions as to the truth of any factual matter within the scope of Rule 26(b)(1).  Rule 26(b)(1) states that, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description,

nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Though plaintiffs' request is clearly within the permissible scope of the Federal Rules, Lafarge objects on the purported ground that the request does not serve to narrow issues for trial. This, too, is incorrect. Though Lafarge may deny it, abundant proof exists that the barge broke the intact floodwall. This proof includes physical evidence and eye and ear-witness accounts of the barge scraping against the floodwall, slamming into the floodwall, breaching the floodwall, transiting the floodwall, and unleashing a veritable Niagra Falls into the Lower Ninth Ward. This is already known to plaintiffs, but to narrow for trial purposes the identities and sources of any additional proof of these facts, and to ultimately define the universe of all possible trial witnesses and exhibits that constitute such proof, or that constitute contrary proof, the request is proper. "[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P 26(b)(1). Lafarge's response should be stricken, and Lafarge compelled to amend it to comply with law.

    **2. Request for Admission No. 2**: This request seeks to ascertain whether Lafarge knows of (or will, by logical extension, present at trial) any unforeseen witness who claims to have seen the barge go through an existing breach. Though counsel for Lafarge has verbally stated that no such person exists to Lafarge's knowledge, the response to the request is clearly improper for the same reasons which plague Lafarge's response to Request for Admission No. 1.

    **Request for Admission No. 2** states: Admit that Lafarge knows of no eyewitness to ING 4727's transition from the IHNC to the eastern side of the eastern IHNC floodwall who will testify that ING 4727 did not cause or contribute to any breach of the eastern Industrial

Canal floodwall between N. Claiborne Avenue and Florida Avenue on August 28 - 29, 2005.

Lafarge's amended response:

Lafarge objects to requests for admission regarding its "awareness" of persons who will testify at trial on a given subject on the ground that such requests are not properly directed at narrowing the issues for trial. Without waiving any objections, LNA admits that at the present time, LNA knows of no person who will testify that he or she witnessed the ING 4727's transition to the eastern side of the IHNC floodwall and who will also testify as to whether or not the barge caused or contributed to any breach of the floodwall. By way of qualifying its response, LNA avers that eyewitness testimony will confirm the ING 4727 did not cause or contribute to any breach of the eastern IHNC floodwall and denies the request to the extent it seeks and admission to the contrary.

Lafarge's response is oblique, inexact, self-contradicted, argumentative, qualified, and contains the same improper objection as the response to Request No. 1. For the same reasons advanced above in connection with Request No. 1, Lafarge's response should be stricken, and proper amendment compelled.

## 3. Request for Admission No. 3

**Request No. 3** continues to refine the matters addressed by requests 1 and 2. states: Admit that Lafarge is aware of one or more persons - other than Terry Adams and Christopher Weaver - who claim to have seen a barge make contact with the eastern Industrial Canal floodwall between N. Claiborne Avenue and Florida Avenue on August 28 - 29, 2005.

Lafarge responded:

Lafarge objects to this request as an improper Request for Admission in this action. Requests for admission are for the purpose of narrowing the issues for trial, not for purposes of discovery. LNA's "awareness" of what others may have "claimed" is not an issue for trial, and this request cannot possibly narrow the issues for trial regardless of the answer.

Subject to and without waiving any objections, LNA admits that it is "aware" of one or more persons...other than Terry Adams and Christopher Weaver" (sic) who "claim to have seen" the supposed events recited in the request, but LNA does **not** (emphasis original) admit the veracity of any such account. Further, to prevent any attempted misuse of its answer to this request to admit, LNA specifically denies that ING 4727 caused or

5

contributed to the failure of the eastern IHNC flodwall or levee, or any other floodwall or levee, and denies that any witness can truthfully testify to the contrary.

Federal Rule of Civil Procedure 36 requires either admission or specific denial, without explanation, or, alternatively, with explanation why the answering party cannot admit or deny the matter,  or permits a party in good faith to qualify an answer or deny only a part of the matter.  Fed. R. Civ. P. 36(4) states:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

This Court has made plainly clear to movers that responses to requests for admissions that admit or deny the matter with explanation or qualification are improper.  *In Re Ingram Barge Company, Inc. Petitioning for Exoneration From or Limitation of Liability*, USDC EDLA Civ. Action No. 05, 4419 and consolidated cases, Record Doc. 874, in which this Court ordered that admissions or denials be without qualification or explanation, and that an inability to admit or deny be accompanied at most by a nonargumentative expression of such inability. *cf. In Re Katrina Canal Breaches Consolidated Litigation*, Record Doc. 6592, in which this Court articulated thus the applicable rule:

> "Rule 36 requires either an admission or a specific denial, <u>without</u> any explanation, <u>or</u> an explanation why the answering party cannot admit or deny the matter or can in good faith qualify an answer or deny only a part of the matter."

**B.  Interrogatories - Merits  - (Exhibit C - original and supplemental responses)**

**1. Interrogatory No. 5**: As mentioned above, and as will be explained at length in the plaintiffs' separate Motion for a Protective Order, Lafarge, through its attorneys and through Centanni Investigative Agency, has been conducting secret recorded telephone and in-person interviews with the putative class, including named plaintiffs and clients of counsel of record in these consolidated BARGE matters. Centanni did not inform the telephone interviewees that they were being recorded, and failed to fully identify themselves and their role vis-a-vis Lafarge when prompted by interviewees to do so. **Exhibit F**.

Lafarge has zealously guarded these occurrences from any meaningful disclosure as to the interview methods, disclosures made by interviewers, and until recently, withheld identities of all of the interviewees. The purpose is ambush, as will be presented in the Motion for Protective Order. The effects are manifold, but include interference with plaintiffs' progress towards CMO deadlines. This is accomplished by hiding materials to which plaintiffs are entitled, including surreptitiously obtained recorded telephone interviews with plaintiffs, and plaintiffs' property in the form of time-pieces looted from the wreckage of plaintiffs' homes by defense counsel's investigators. Please see **Exhibit I**, and portions of **Exhibit A** pertinent thereto.[1]

At this point in time, Lafarge is rushing to divest itself of the fruits of its activities over the course of the last two and a half years, so as to appear blameless and compliant with law. It is easy to believe that Lafarge is doing so because their attorneys and investigator have been caught in the act, and seek to avoid the Court's scrutiny, and to avoid any deposition of Centanni Investigative Agency, as such may yield additional controversy and damage to the relevant

---

[1]Lafarge has waived the Master Protective Order's requirement that the documents marked "confidential," produced by Lafarge, and attached as exhibits hereto, be submitted under seal. Please see Exhibit A, 3/5/2008 email from Lafarge counsel Derek Walker.

actors.  As the Court is aware, Lafarge recently informed the Court that agreement had been reached so as to render moot the issues raised in Lafarge's Motion to Quash as to the deposition of Centanni Investigative to have taken place on February 22, 2008.  Lafarge's representations in this regard were not entirely accurate, as plaintiffs did not agree to what Lafarge offered in exchange for holding the deposition in abeyance.  What was offered consisted only of that which Lafarge opted not to dispute.  Rather, plaintiffs sought and are entitled to more, and a meeting of the minds did not occur.  Plaintiffs nonetheless reserved the right to re-notice Centanni Investigative's deposition, which appears certain.

Lafarge is in possession of two hundred and sixty two putative class member interview sound recordings and/or transcripts, and of those, some twenty nine are said by Lafarge to be clients of the undersigned or other counsel of record in this matter.

**Interrogatory No. 5** states:  Please identify, describe and state the contents of any and all fact statements you have obtained from any and all plaintiffs and/or persons potentially belonging to the putative class herein concerning allegations subject of suit, stating the dates upon which all such statements were obtained, identifying by full name and address persons giving such statement, obtaining such statement, and having custody of such statement.

**Amended Answer to Interrogatory No. 5:**  LNA objects to this request to the extent that it pertains to "fact statements" obtained from persons who are not parties to this case, including persons "potentially belonging to the putative class herein" on the grounds that (1) the request seeks the production of documents created in anticipation of litigation by or for LNA and its attorneys that are protected by Fec. R. Civ. P. 26(b)(3); and (2) the group of persons to which the request pertains is ill-defined, overly broad, and not capable of ascertainment.  Not withstanding the foregoing objections, LNA will provide a chart showing the identities and contact information for putative class are persons interviewed by LNA's investigators in the course of their investigation, all of which interviews were carried out in anticipation of litigation or for trial on behalf of LNA.  This chart will be provided no later than February 15, 2008, the date on which plaintiffs have represented they will supplement their document production.

Counsel for Lafarge has compiled and provided such a chart (though well after February 15), and represents to the undersigned that it is complete.  It is attached as **Exhibit D**, but it is

8

not complete.  Plaintiffs are entitled to know the dates of the interviews, however - which are not disclosed - in order to determine interviewees' status when interviews occurred.  Further, the chart does not contain the underlying facts of what is contained in the interviews as the Interrogatory seeks, and for which the law provides.  Many interviews were conducted in person, and not transcribed.  As this Court has held in the past concerning facts obtained by a party's private investigator:  "Global Santa Fe's attempt to conceal the identities of potential witnesses contacted or researched during its investigation will ultimately fail, as plaintiff may discover this relevant factual information through interrogatories or deposition questions."  *Mack v. Global Santa Fe Drilling Company*, USDC EDLA Civ. Action 04-3461 S(2).  Work product does not protect from disclosure of underlying facts. *Id.,* citing *Blockbuster Entertainment v. McComb Video*, 145 F.R.D. 402, 403-04 (MDLA 1992).

## C.  Requests for Production - Merits  - (Exhibit E)

**1. Request for Production No. 3:**     Request No. 3 concerns Lafarge's (through its attorneys' and or Centanni Investigative's) communications with members of the class sought to be certified in this matter.  This is addressed above relative to Interrogatory No. 5, and in the plaintiffs' Motion for Protective Order being filed contemporaneously herewith.  Lafarge objects on the grounds of work product and because the group of persons to whom the request pertains is "ill defined..."  Lafarge has in its possession some 262 secretly recorded telephone interviews with putative class members, 29 of which Lafarge has tendered as interviews of clients of counsel of record in this matter.

As this Court stated in *Mack v. Global SantaFe, supra*, work product privilege does not protect facts permitting identification of potential witnesses.  It cannot be guessed how many of the 262 interviewees whose transcripts were not produced claimed to see the barge break the

9

floodwall.  Similarly, the 29 produced demonstrate that not all persons interviewed were even present during the storm, as they had evacuated.  These persons are clearly not witnesses, but of the remaining 233 recorded interviews, Lafarge withholds the means of determining who might have witnessed anything relevant, and from this number, who are potential plaintiffs' witnesses as opposed to defense witnesses.  Plaintiffs' witnesses will have seen or heard the barge breach the floodwall.  By refusing disclosure, Lafarge seeks to deprive the Court and plaintiffs of facts relevant to determining how the barge wound up on the wrong side of the floodwall.

Further, Lafarge seeks to shield itself from scrutiny of the manner in which these *ex parte* contacts were conducted. Excerpts of certain of the interviews Lafarge did produce are attached as **Exhibit F**.  They demonstrate that Centanni Investigative is evasive and not at all forthcoming when specifically asked by interviewees for identification.  They also demonstrate the existence of follow up calls not produced, and text redacted from the transcripts.  Plaintiffs are entitled to all of the interviews, in person, by telephone, recorded, transcribed, notated and otherwise documented, from named plaintiffs, represented persons and all putative class members, because they contain facts relevant to claims and defenses in this suit, enable witness identification, and will permit assessment of defense counsel's conduct in obtaining them.

**2.  Requests for Production 14 - 16** concern settlements by Lafarge, including but not limited to that with Arthur Murph.  Defendant's responses are evasive, and the objections an improper attempt to conceal questionable conduct.

**D.  Requests for Production - Class Certification (Exhibit G)**

**1.  Requests for Production Nos. 5 through 10:**  Lafarge's responses to class certification discovery are also nonresponsive, in that transcripts of surreptitiously recorded class member

interviews are responsive to the following Requests for Production, yet were not produced or even identified in any manner whatsoever.

**Request for Production No. 5:** Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the _sources of any flooding_ within the geographical area described in the Sixth Amended Complaint or any part of it. (emphasis added for clarity)

**Request for Production No. 6:** Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects _the causes of any flooding_ within the geographical area described in the Sixth Amended Complaint or any part of it. (emphasis added for clarity)

**Request for Production No. 7:** Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects _the timing of any flooding_ within the geographical area described in the Sixth Amended Complaint or any part of it. (emphasis added for clarity)

**Request for Production No. 8:** Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the _depth of any flooding_ within the geographical area described in the Sixth Amended Complaint or any part of it. (emphasis added for clarity)

**Request for Production No. 9:** Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates, or otherwise reflects the _timing, duration, and depth of precipitation_ during the period August 27, 2005 through September 1, 2005 within the geographical area described in the Sixth Amended Complaint or any part of it. (emphasis added for clarity)

**Request for Production No. 10:** Please produce a copy of each and every document that discusses, analyzes, depicts, illustrates, simulates or otherwise reflects the area within the geographical area described in the Sixth Amended Complaint _affected by the breaches_ in the eastern Industrial Canal floodwall. (emphasis added for clarity)

Lafarge's formulaic, cookie-cutter response to each of the above requests is:

"LNA objects to this request as vague and unduly burdensome. LNA further objects to this request on the ground that it seeks documents that are protected by Fed. R. Civ. P. 26(b)(3), including opinion work product of counsel, and seeks expert discovery in contravention of the time frames set forth in Case Management Order No. 5. LNA refers plaintiffs to the IPET Report (including External Review Panel Report), ILIT Report, and Team Louisiana Report, and the publicly available supporting documents for each report. LNA further refers plaintiffs to the class certification record in the MRGO/Levee matter, including expert reports submitted therein.

11

LNA further refers the plaintiffs to the voluminous media reports regarding the flooding that occurred as a result of Hurricane Katrina, and to government reports, such as the Senate Committee on Homeland Security and Governmental Affairs report entitled, "Hurricane Katrina: A Nation Still Unprepared."  These documents are publicly available and equally accessible to plaintiffs as to LNA."

This glibly evasive response, though descriptive of a wealth of publicly available reports that opposing counsel knew were already within plaintiffs' counsel's awareness and reach, mentions nothing about the concealed, secretly recorded interviews with persons on whose behalf undersigned have advocated this matter since November of 2005.  These interviews contain nothing if not a demonstration of Lafarge's and its attorney's abusive efforts to contrive a version of the flood sources, flood causes, flood times, flood depths, precipitation, and flood areas for later use in efforts to ambush and malign the flood victims.  The plaintiffs seek an order striking Lafarge's responses, and ordering production of the interviews.

II.   **DISCOVERY CONCERNING COMPANY AND INDUSTRY STANDARDS OF MARITIME CARE OF CARE RELEVANT TO LAFARGE'S CONDUCT CAUSING OR CONTRIBUTING TO THE BREAKAWAY OF ING 4727 AND/OR FLOODWALL BREACHES**

   **And/or**

   **FACTS RELEVANT TO OCCURRENCE AND PROOF OF SAME**

**A.  Requests for Admissions - Merits  - (Exhibit B)**

   **1.   Request for Admission No. 6 (subparts A, C-E):** Request No. 6 requires Lafarge to admit that it is unaware of any person who will testify at trial that he or she communicated on behalf of LNA with Ingram Barge Company on August 25, 26, 27, 28 or 29, 2005 concerning... (several separate topics/activities which Lafarge addressed as follows).  Such communications are essential to vessel and waterfront facility owners' obligations under the USCG Sector New Orleans Hurricane Plan.

**Request No. 6a:** (communications with Ingram concerning) Mooring ING 4727 to withstand Hurricane Katrina at the Lafarge France Road Terminal.

**Answer to Request No. 6a:** LNA admits that Lafarge is not aware of any person who will testify at trial that he or she communicated on behalf of LNA with Ingram Barge Company regarding the mooring of ING 4727 because there was no reason for such a communication and because LNA properly moored ING 4727 it self.

This is not a specific denial without any explanation as required by Rule 36 and the Court. The responses to Requests 6c through 6e (regarding delaying arrival of ING 4727, potential effects of storm surge at the Lafarge France Road facility, potential effects of Hurricane Katrina on barges at said facility) also consist almost entirely of qualification and argument, and are equally improper.  Again, movers ask that they be stricken, and Lafarge compelled to provide appropriate responses.

   **2. Request for Admission No. 22:**   This request also concerns the tenets of the Sector New Orleans Hurricane Plan, which admonishes waterfront facilities to notify and obtain permission from the Commander of the Port when a barge is to remain moored at the facility during a hurricane.  Proof adduced thus far shows that Lafarge made no such communication.

**Request No. 22:**  Lafarge did not notify The Commander of the Port that ING 4727 was to remain moored at the Lafarge France Road facility during Katrina.

**Answer to Request No. 22:** LNA admits that there was no reason or requirement to notify the Commander of the Port that ING 4727 would or might remain at LNA's facility on the Inner Harbor Navigational Canal during Katrina and therefore that it did not do so.

Plaintiffs are entitled to an admission or denial without explanation.  Defendant admits the response and provides an explanation which is non-responsive and self-serving.  Plaintiff prays that this court order Defendant to amend its answer and either admit or deny the request without explanation, argument, supplied facts, or evasion.

3.    **Requests for Admissions Nos. 12 and 13:**    These requests concern Lafarge's interactions with Domino/Unique Towing Company, which Lafarge called to "top around" the tier containing ING 4727 on the Saturday before the storm, just before Lafarge abandoned the France Road facility.   These interactions are dictated by the United States Coast Guard Sector New Orleans Hurricane Plan and various statutory rules and regulations, but appear to have been shirked by Lafarge. Again, while these requests concern relevant, factual matters, Lafarge fails to provide a succinct admission or denial without argument or explanation.   Further, many of the responses are non-responsive and do not even address the request at issue.   In *In Re Ingram Barge Company*, etc., Record Doc. 874, this Court admonished that a response must meet the substance of the request properly presented, rather than responding to a request that the responder wished had been presented.   Hence, all of the following responses are improper.

**Request No. 12**: Admit that Lafarge did not request on August 27, 2005 that Joseph C. Domino, Inc. have the number or physical dimensions of ING 4727's mooring lines increased.

**Answer to Request No. 12**: LNA admits that it considered ING 4727 to be adequately moored and therefore did not ask Domino to alter the mooring.

**Request No. 13:** Admit that Lafarge did not request on August 27, 2005 that Joseph C. Domino have ING 4727 cable to the shore.

**Answer to Request No. 13:** LNA admits that, because it would have been imprudent to cable the ING 4727 directly to the shore, LNA did not ask Joseph C. Domino to have the ING 4727 cable to the shore.

Lafarge fails to admit or deny without qualification or revision of the request.

4.  **Requests for Admissions Nos 14, 17, 18, 28 and 30:**      These requests continue to address Lafarge's pre-storm activities relative to ING 4727, during which Lafarge claims that Ed Bush called Ingram's local fleeting and towing agent, Zito, to arrange for release of the barge.

14

Zito denies receiving any such call, and has produced automated telephone records seeming to corroborate this denial.

**Request No. 14:** Admit that Lafarge knows of no document, other than those already produced pursuant to discovery, that corroborates Ed Busch's claim that he called Zito on August 27, 2005.

**Answer to Request No. 14:** LNA objects to requests for admission regarding its "awareness" of documents on a given subject on the ground that such requests are not properly directed at narrowing the issues for trial.   Subject to and without waiving any objections, LNA denies this request in that the deposition testimony of Earl Smith corroborates Mr. Busch's testimony regarding the call to Zito.

The following also relate to Lafarge's pre-storm activities in that the requests concern definition of Lafarge's pre-storm corporate decision-making and policy implementation processes relative to ING 4727.

**Request for Admission No. 17:** Lafarge did not on August 29, 2007 have personnel available ashore at the Lafarge France Road facility to respond to the breakaway of ING 4727.

**Answer to Request No. 17:** LNA admits that, to the best of its knowledge, its employees had departed the facility on August 27, 2005, after the floodgates had closed, and did not thereafter return, in compliance with evacuation orders, thus LNA did not have personnel present at the Lafarge France Road facility on August 29, 2007.   LNA denies that any such personnel would have been able, in any capacity, to "respond to the breakaway," even had they been present.

**Request for Admission No. 18:** Lafarge did not decide to allow ING 4727 to remain moored at the Lafarge France Road facility during Katrina.

**Answer to Request No. 18:** "LNA objects to this request as vague and confusing.   LNA denies the request, except that LNA admits the following, as averred in LNA's response to plaintiffs' Interrogatory No. 10 (Sept. 2006): The highest-ranking LNA employees present at the LNA facility on August 27, 2005 was terminal operations assistant Ed Busch. However, nobody 'made the decision to leave the barge at' the LNA facility during the storm.   Rather, the barge was present at the facility and there was no means to remove it."

15

**Request for Admission No. 28:** Ed Busch did not advise any of his Lafarge North America superiors on August 27, 2005 that all Lafarge France Road Terminal dockside employees were leaving early on that date.

**Answer to Request No. 28**: LNA objects to the phrases "leaving early" and "Lafarge North America superiors" as vague and undefined.  LNA refers the plaintiffs to the deposition testimony of Ed Busch, who testified that Jennifer Arnold, an LNA Safety director to whom Mr. Busch does not directly report, advised Mr. Busch that the employees should evacuate in advance of the coming storm.  LNA denies the request to the extent it is inconsistent with the testimony of Mr. Busch.

Again, it is Plaintiffs contention that the answer is non-responsive and does not meet the substance of the request without undue qualification or argument.  The request specifically asks for an admission or denial as to <u>whether Ed Busch did not advise any of his Lafarge North America superiors</u> that dockside employees were leaving early.  While Defendant provides a long explanation, the request is easily answered with an admission or denial, yet Defendant fails to do so.  Plaintiff prays that the Court orders Defendant to amend its answer with an admission or denial without explanation.

**Request for Admission No. 30**: One or more of Ed Busch's Lafarge North America superiors knew on August 27, 2005 that ING 4727 was at the Lafarge France Road facility on that date.

**Answer to Request No. 30:** LNA objects to the phrase "Lafarge North America superiors" as vague and undefined.  LNA refers the plaintiffs to the deposition testimony of Ed Busch, who testified that he told Jennifer Arnold, an LNA Safety director to whom Mr. Busch does not directly report, that he had released the barge after it had finished unloading.  LNA denies the request to the extent it is inconsistent with the testimony of Mr. Busch.

Again, it is Plaintiffs contention that the response is non-responsive and does not admit or deny the request without explanation.  The request specifically asks for an admission or denial as to whether Ed Busch's superiors knew that ING 4727 was at the facility.   Lafarge responds not to the request, but navigates around it, neither admitting or denying the actual request, but supply that which Lafarge perceives as beneficial to Lafarge.

**5. Requests for Admissions Nos. 19-20:** Lafarge's responses to Requests Nos. 19 and 20 appear to be contradictory. It is presumed that this is the result of an oversight or typographical error. Nonetheless, the contradiction must be cured.

**Request for Admission No. 19**: Lafarge did not ask on August 26, 27, 28 or 29, 2005 that anyone remove ING 4727 from the Lafarge France Road facility.

**Answer to Request No. 19**: Denied, based on the call to Zito about which Mr. Busch has previously testified.

This response signifies that Lafarge asked that the barge be removed by calling Zito.

**Request for Admission No. 20:** Lafarge did not notify Ingram that ING 4727 was to remain moored at the Lafarge France Road facility during Katrina.

**Answer to Request No. 20:** Denied, in that Ed Busch called Zito to release the barge.

This response signifies that Lafarge *did* notify Ingram that the barge was to remain moored, and that Lafarge made such notification (that the barge was to remain moored) by calling Zito to *release* the barge. This response appears to contradict not only Answer to Request No. 19, but to also contradict itself.

**B.  Interrogatories - Merits  - (Exhibit C)**

**1. Interrogatory No. 1:** One of the most important issues in this case surrounds the cause of the breakaway of the barge ING 4727. Pertinent to determination of fault in this matter is whether the barge at issue was properly moored and secured. The interrogatory seeks, in essence, all written documents of Lafarge pertaining to mooring and securing of the vessel at its company.

**Interrogatory No. 1**:  Describe and identify by title, edition, publication date, author and current custodian, and describe the form and contents of:

    (1)      any and all communications; and/or

    (2)      any and all safety and/or hurricane preparation, policy, procedure, operation, inspection, maintenance, and/or other written manuals, directives, recommendations, regulations, rules, law, educational materials, electronic media, video, audio, instructions, training programs, memoranda, correspondence, notices, bulletins, advisories, publications, pamphlets; and/or

    (3)      Any and all other documents and things which are and/or were published, promulgated, implemented, issued and/or in the custody of LNA, whether prepared by LNA or by others, in effect during the three year period precedign and including August 29, 2005, whose topics and/or contents include any and all of the following:

            a.      berthing, making steadfast, mooring, securing, moving, retrieval and/or fleeting of Ingram Barge Company and other barges, generally, and/or in advance of an approaching hurricane;

Subparts (3)b through (3)i are not reproduced here, but are subject of this motion.

**Answer to Interrogatory No. 1:** LNA has previously produced responsive documents from its terminal on the Inner Harbor Navigation Canal at New Orleans, Louisiana, and from its River Region files. See Bates nos. LNA00113; LNA000469-480.  These documents contain some of the information sought by this request.  As noted in LNA's Rule 30(b)(6) testimony, the New Orleans terminal hurricane procedures had been upgraded prior to Hurricane Katrina but the upgrades had not been reduced to writing.

LNA objects to the remainder of this interrogatory because it is overly broad, unduly burdensome, not related to the incident in suit and not likely to lead to admissible evidence to the extent that it seeks information not related to communications or documents regarding LNA's River Region distribution zone, within which LNA's New Orleans terminal is included, and which is the region where inland river barges such as the ING 4727 are utilized.  LNA further objects to the request as overbroad and vague as to time and interprets the three-year time period in item (3) to apply to the entire interrogatory.  Further the interrogatory lacks specificity of information sought and as such is impossible to answer.  Subject to these objections, LNA will conduct a further search and will produce other responsive documents, if any, from its facilities at New Orleans, Union, and Westlake in Louisiana.  LNA's production and identification of these records satisfies its duties and is permitted under Fed. R. Civ. P. 33(d).  LNA refers plaintiffs to LNA 000706-722 and to e-mails amongst those produced at LNA 000808-830.

Defendant seeks to limit its response to alleged "river region" facilities <u>yet still does not describe the documents from the alleged river region</u>[2].  Plaintiff contends that any documents issued and/or used by the company at any of its facilities in the United States are discoverable and reasonably calculated to lead to discovery of admissible evidence. Lafarge contends that it had no current, written (but only verbal in light of unwritten "upgrades") policy at the France Road facility on the IHNC at the time of the storm.  Written barge policies at other Lafarge facilities therefore become especially of interest, and  are relevant to the  following topics consistent with and subsumed within the claims and defenses in this matter: local, "regional," and company-wide (a) compliance with standards of care applicable to barges; (b) notice and implementation of relevant safety policies and procedures, and/or failures as to same respecting barges; (c) notice and knowledge of barge mooring techniques and/or extent of sufficient supervision, training methods, and available written guidance; (d) violation of Lafarge policies and procedures concerning barges; (e) inconsistent formulation or implementation throughout the Lafarge organization of Lafarge policies concerning barges; (f) rough weather and/or hurricane policies and procedures; (g) actual or imputable knowledge of the consequences of failure to properly moor, anchor, remove from the Industrial Canal and/or fleet barges in anticipation of a hurricane, and the reasons, methods and procedures for accomplishing same; (h) consistency with or derogation from United States Coast Guard standards, applicable statutes and regulations, and other sources of barge industry standards; (i) discovery of other relevant and/or admissible evidence.  The Interrogatory is not limited to the so-called "River Region,"

---

[2]Please note that Ingram Barge lines which operates over 3,000 vessels throughout the U.S. had no problem producing company policy and procedure manuals.

which is entirely undefined, but concerns policies of Lafarge North America, not a defense-limited geographic appendage thereof.

## C.  Requests for Production - Merits - (Exhibit E)

**1.  Requests for Production Nos. 1 and 12:**  These require production of the things described in Interrogatory No. 1, above in III. B.1., and are discoverable for the same reasons. Lafarge again attempts to limit production to the so-called "river region."  Whatever the facility or region, whether Lafarge has a company wide policy, and if so, whether the New Orleans facility met its requirements, is directly related to the claims and defenses in this case.

**2.  Requests for Production Nos. 17A and 17B**:[3]  Lafarge's responses to again depict Lafarge's failure to disclose facts by labeling them work product in anticipation of litigation. Plaintiffs seek facts relevant to the causes of the breakaway, movements of the barge, floodwall breaches, and actions that might have been taken to prevent any of the foregoing.  To the extent that opinions of counsel are responsive to the request, Lafarge is instructed in the Requests (section containing Instructions) to produce all that is not privileged, and that they may therefore withhold written opinions of counsel.  In contrast, facts are not privileged.

**3.  Requests for Production Nos. 20 and 21**:  Lafarge is going to *consider* producing photos and videos of ING 4727 requested in **Requests Nos. 20 and 21**, which is not sufficient. The request seeks photos of pre and post-Katrina damage to the barge, and photos and video of the barge from August 22 through the present.  Again, Lafarge claims privilege, and fails to

---

[3]The requests mistakenly contained two labeled No. 17.  They will be treated as 17A and 17B.

produce purely factual evidence.  Plaintiffs submit that Lafarge is not entitled to consider whether to produce, but is obligated to produce.[4]

**4.  Request for Production No. 23** seeks copies of communications between Lafarge and the Coast Guard.  These would include not only the communications required by the Sector New Orleans Hurricane Plan, which Lafarge failed to conduct, but also Lafarge's statements to the Coast Guard relative to their investigation of the accident subject of suit.  The Coast Guard report indicates that the investigators were under the impression that the barge was moored with the steel cable found drooping from the barge at its location in the Lower Ninth Ward.  It is a matter of record that it was not.  The cables were not used.  The barge was moored with one-part nylon lines, in contravention of the dictates of the Sector New Orleans Hurricane Plan and Lafarge's own out-of-date and not-implemented hurricane plan. There is no evidence that Lafarge disabused the Coast Guard of the unfortunate and erroneous assumption otherwise, and further, Lafarge's statements contain facts relevant to the claims and defenses herein.  They are not work product, not privileged, and probably represent Lafarge's effort to mislead through silence in order to avoid an adverse finding by the Coast Guard.  The law is settled that "excluded from the work product doctrine are materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation."  *United States v. El Paso*

---

[4]Please see **Exhibit H**, excerpts of *Southern Scrap Material Co. v. Fleming*, USDC EDLA Civil Action No. 01-2554, Section "M" (3) (June 18, 2003). *cf. Kiln Underwriting v. Jesuit High School of New Orleans*, USDC Civil Action 06-04350 and consolidated cases, Section "T" (4) (January 9, 2008), in which Magistrate Roby held that photos are not protected under the work product doctrine.  Also, "[d]espite the fact that this photograph was taken more than two years before ADSI filed suit, counsel refused to produce the picture because the original print was photocopied by an attorney.  The Federal Circuit condemned this conduct as an "egregious discovery ploy." *Advanced Display Systems,* 212 F.3d at 1288-89 (USDC N.D. Texas 2003).

*Co.*, 682 F.2d 530 (5th Cir. 1982); *Hill Tower, Inc. v. Dept. of Navy*, 718 F.Supp 562, 565 (N.D. Tex. 1988) (report of crash of Marine aircraft was not created in anticipation of litigation).

**5.**    **Request No. 27** seeks evidence of the fact that Lafarge was put on notice by barge companies other than Ingram of mooring requirements in advance of a hurricane.  Lafarge agrees to produce only those documents found in the "river region," again self-limiting the response. Plaintiffs again note that knowledge of mooring and mooring activities through the entire company is relevant, not merely those in a particular location determined by the defense.

**6. Request No. 29:**  Aerial photos of the Lafarge facility show that a tier of 5 barges moored alongside the tier containing ING 4727 shifted during the storm and knocked into 4727. **Request No. 29** seeks documents and things relevant to this five-barge-tier, showing the manner in which it was moored, and evidence that it shifted during the storm.  Lafarge refuses on grounds of the work product privilege again, but agrees to "consider" production if Lafarge receives from the plaintiffs similar documents and things.  Again, Lafarge's promise to "consider" production of what it is obligated to produce is insufficient.  Further, Lafarge already has been provided every document and thing of which plaintiffs are aware relative to the tier of five barges.

## III.    DISCOVERY CONCERNING LAFARGE'S CONTENTIONS OF OTHERS' FAULT

### A.  Interrogatories - Merits  - (Exhibit C)

**1. Interrogatory No. 18:**  Various entities had custody, possession and control of ING 4727 during pertinent times pre-Katrina in which the barge was to have been secured, removed, or otherwise prepared for the storm.  Plaintiffs are entitled to know whether Lafarge blames

anyone other than God for the breakaway.  Lafarge chose not to answer the question, but a

different one altogether.


> **Interrogatory No. 18**: Please identify any and all persons and/or entities, if any, that you
> contend to be at fault for the breakaway of ING 4727, stating and describing as to each any
> and all facts, beliefs and/or opinions upon which you base your contention.

> **Amended Answer to Interrogatory No. 18**:  To date, LNA has not *claimed* (emphasis
> added) against any other party specifically for the breakaway of ING 4727.  Rather, the
> breakaway of ING 4727 was an Act of God that occurred despite all due care exercised by
> LNA.  It is possible, however, that the United States and other governmental entities made
> parties to this suit bear fault to the extent that the acts complained of in LNA's third-party
> complaint may have contributed to the barge breaking away from its moorings after the
> breach had occurred.

The interrogatory seeks identification of all whom Lafarge contends to be at fault for the

breakaway of the ING 4727.  The interrogatory does not ask for entities against whom LNA has

"claimed," but who Lafarge contends to be at fault.  Again, Lafarge supplies its own request, and

fails to answer the one actually propounded.  Plaintiffs are entitled to the identity of all parties at

whom LNA may point the finger at trial as being at fault for the breakaway of the barge at issue.

**2. Interrogatory No. 19**:        Plaintiffs recognize that certain expert materials generated

at Lafarge's behest are responsive to Interrogatory No. 19, and need not be produced until the

deadline for such disclosures as contained in the governing Case Management Order.  However,

other things responsive to the request might include those generated not by Lafarge's experts,

but by other persons or entities, which - it is safe to presume - will be relied upon to show that

someone or something other than Lafarge is responsible for the events subject of this suit..  To

the extent Lafarge intends to use them in trial or to elicit testimony on which they are based,

plaintiffs' requests as to these materials are ripe, legitimate, and enforceable.

**Interrogatory No. 19**: Please identify and fully describe any and all simulations, replicas, reconstructions, models, mockups, and other study, investigation or representation, forensic or otherwise, of any and all things, events and/or locations you contend are pertinent to this litigation and which you will (1) introduce at trial, and/or (2) rely upon at trial, and/or (3) disclose, display or publish to the trier of fact, and/or (4) of which any witness you will call at trial will be informed and/or upon which any such witness will rely in furtherance of trial testimony.  For the purpose of this discovery request, the word "forensic" shall be defined as "relating to the use of science or technology in the investigation and establishment of facts or evidence in a court of law."

**Answer to Interrogatory No. 19:** LNA objects to this request as vague and overbroad to the extent it seeks to require LNA to identify any "event" or "location" ... "of which any witness you call at trial will be informed" to the extent it applies to fact witness, whose knowledge of the relevant events comes from sources other than LNA.  With regard to expert witnesses, LNA objects to this request as exceeding the scope of discovery as to testimonial experts provided in Rule 26(a)(2)(B) and contravening the schedule and scope for expert discovery set forth in the Court's Case Management Order #5.  LNA will provide expert discovery as required by Rule 26 and in accordance with the timelines established by the Court.  Subject to and without waiving any objections, LNA refers the plaintiffs to the reports of the IPET, ILIT, Team Louisiana, and American Society of Civil Engineers External Review Panel, all of which provide comprehensive scientific investigation of the facts and circumstances relevant to this litigation.  The reports and underlying materials are available to the plaintiffs through the following web addresses:

      a) IPET: http://ipet.wes.army.mil
      b) ILIT: http://www.ce.berkeley.edu/~new_orleans
      c) Team Louisiana: ftp://hefhurricane.hurricane.lsu.edu/team_louisiana
      d) External Review Panel: http://www.asce.org/static/hurricane/whitehouse.cfm

See also overtopping animation produced by the History Channel ("Modern Marvels", 5/1/06; "Katrina: American Catastrophe", 5/4/06).

LNA's answer is non-responsive.  In their interrogatory, Plaintiffs seek a description of any and all simulations, reconstructions, models, forensic or otherwise, which Lafarge contends is pertinent to this litigation.  Defendant's response is non-responsive and self limiting as it simply directs Plaintiffs to internet published reports.  Lafarge does not answer the question.  Plaintiffs pray that this Court order Lafarge to identify any such simulations, reconstructions and models which it finds pertinent or may rely upon at trial of this matter.

**B.  Requests for Production (Merits) -  (Exhibit E)**

**1. Request for Production No. 28** requires production of the forensic materials described in Interrogatory No. 19, above. Lafarge's response states that expert materials will be produced in accord with the Case Management Order. However, plaintiffs are entitled now to all such materials to the extent that they are not generated by Lafarge's experts.

## CONCLUSION

All of the foregoing demonstrate Lafarge's pattern of concealment and evasion. Plaintiffs respectfully urge the Court to impose appropriate orders in order to ensure the principles of fair play inherent in the Federal Rules of Civil Procedure and this Court's Case Management Orders, and to avoid the waste of time and expense necessitated by Lafarge's recalcitrance, specifically including but not limited to, an order striking Lafarge's discovery responses and compelling Lafarge to provide amended responses within a reasonable time.

Respectfully submitted,

WIEDEMANN & WIEDEMANN

LAWRENCE D. WIEDEMANN, (13457)
KARL WIEDEMANN, (18502)
KAREN WIEDEMANN, (21151)
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-6180

\s\Patrick J. Sanders
PATRICK J. SANDERS (18741)
Attorney at Law
3123 Ridgelake Drive, Suite B          Metairie,
Louisiana 70002
Telephone: (504) 834-0646

LAW OFFICE OF BRIAN A. GILBERT

\s\Brian A. Gilbert
BRIAN A. GILBERT (21297)
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 885-7700
Barge Plaintiffs' Liaison

RICHARD T. SEYMOUR
(D.C. Bar #28100)
The Law Office of Richard T. Seymour,
PLLC
1150 Connecticut Avenue, N.W., Suite 900
Washington, D.C.   20036-4129

ALAN L. FUCHSBERG
(N.Y.S.B.A. #1755966)
LESLIE D. KELMACHTER

25

(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
New York, NY   10110


LAWRENCE A. WILSON
(N.Y.S.B.A. 2487908)
DAVID DRUCKER
(N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
233 Broadway, 5th Floor
New York, NY  10279



**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 7 day of March, 2008.

\s\Brian A. Gilbert