UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | | |
|---|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | | * * * * | CIVIL ACTION |
| | | * * | NO. 05-4182 and consolidated cases |
| PERTAINS TO: BARGE | | * * | SECTION "K" (2) |
| *Boutte v. Lafarge* | 05-5531 | * | |
| *Mumford v. Ingram* | 05-5724 | * | |
| *Lagarde v. Lafarge* | 06-5342 | * | JUDGE |
| *Perry v. Ingram* | 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | * | |
| *Parfait Family v. USA* | 07-3500 | * * * | MAGISTRATE JOSEPH C. WILKINSON, JR. |

**LAFARGE NORTH AMERICA, INC.'S
RESPONSES TO PLAINTIFFS' REQUESTS FOR PRODUCTION**

Defendant Lafarge North America Inc. ("LNA"), hereby responds to the Requests for Production served by Plaintiffs in the above-captioned actions as follows:

**GENERAL OBJECTIONS**

1. LNA objects to each Request to the extent it purports to require any act not mandated by the Federal Rules of Civil Procedure. LNA will respond to the Requests for Production in accordance with the obligations imposed by the Federal Rules of Civil Procedure and not otherwise.

2. LNA objects to each Request to the extent it expressly or impliedly seeks documents or information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege or similar reason for non-production. In that connection, LNA expressly avers that on September 8, 2005, it retained counsel and commenced an investigation of the subject matter of this case in anticipation of litigation. That investigation continues to this day. In the course of that investigation, LNA, its counsel, and its representatives have generated documents or compilations for the purpose of preparing for trial of claims such as those asserted in these cases, and such materials are protected from

disclosure under Fed. R. 26(b)(3).  Inadvertent disclosure of privileged or protected information is not intended to be, and may not be construed as, a waiver of any applicable privilege.  LNA will supply a privilege log that satisfies the requirements of Fed. R. Civ. P. 26(b)(5) and accompanying comments.

3. LNA objects to each Request to the extent that it contravenes Case Management Order #5 and/or seeks to preempt the timelines established by the Court.

4. LNA objects to each and every Request to the extent that it calls for the production of documents that already have been produced in this litigation or calls for the production of publicly available documents that are equally available to the plaintiffs as to LNA.

5. LNA states that it has attempted to retrieve and preserve records from its New Orleans terminal, but can neither guarantee nor represent that none were lost or destroyed because of Hurricane Katrina, which seriously flooded and damaged the plant.  To the extent that an objection may be necessary, LNA objects to producing documents which may have been lost as a result of this hurricane.

6. Each of LNA's answers to these Requests is made to the best of LNA's knowledge at the present time, based upon its investigation to date.  LNA states that its investigation is ongoing and LNA specifically reserves the right to supplement and amend these responses when and if it becomes necessary.

7. LNA objects to each and all "definitions" to the extent they vary the content of the Requests in a way that renders them cumbersome and unduly burdensome.  LNA will answer the Requests in accordance with the Federal Rules of Civil Procedure, common English usage, and the terms of the Interrogatories themselves.

## SPECIFIC RESPONSES

**REQUEST NO. 1:**

Any and all communications and writings reflecting, describing and/or mentioning Ingram personnel visits to Lafarge facilities in advance of Hurricane Katrina, and/or any and all prior hurricanes, to "check" fiberglass lift covers on, and/or to perform any and all other activities with respect to, any and all Ingram barges at said facilities.

**Answer to Request No. 1:**

LNA objects to this request to the extent it pertains to Lafarge facilities outside of the Gulf Coast, as irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence. LNA further objects on the same grounds to the extent that this request seeks information about "any and all prior hurricanes." Subject to and without waiving any objections, LNA responds that it will produce responsive documents, if any, that may be found at its New Orleans, Union, and Westlake terminals in Louisiana.

**REQUEST NO. 2:**

Any and all communications and writings reflecting and/or mentioning any and all retrieval and/or transport of any and all Ingram barge(s) from LNA over the period August 25-29, 2005.

**Answer to Request No. 2:**

LNA objects to the phrase "from LNA" as vague and construes it to mean LNA's terminal on the Inner Harbor Navigation Canal at New Orleans, Louisiana. LNA represents that it has no responsive documents because, based on information and belief, no Ingram barges were transported from LNA's facility over the period August 25-29, 2005. LNA refers plaintiffs to the document produced by LNA in response to plaintiffs' previous discovery requests, at bates number LNA000108. LNA further refers plaintiffs to its response to Interrogatory No. 4.

**REQUEST NO. 3:**

Any and all communications and statements you have obtained from any and all plaintiffs and/or persons potentially belonging to the putative class herein concerning allegations subject of suit, including but not limited to Arthur Murph, and any and all other such persons and entities.

**Answer to Request No. 3:**

LNA objects to this request to the extent that it pertains to communications or statements obtained from persons who are not parties to this case, including persons "potentially belonging to the putative class herein" on the grounds that (1) the request seeks the production of documents created in anticipation of litigation by or for LNA and its attorneys that are protected by Fed. R. Civ. P. 26(b)(3);

and (2) the group of persons to which the request pertains is ill-defined and not capable of ascertainment, there being no single definition of the proposed "putative class." Notwithstanding the foregoing objections, LNA will identify and produce written statements, if any, obtained from plaintiffs named in the captions of the above-captioned cases, case numbers 05-5531, 05-5724, 06-5342, 06-6299, 06-7516, and 07-3500.

**REQUEST NO. 4:**

Comprehensive reports, curricula vitae, fee schedules and written testimonial disclosures of any and all experts or other persons you have consulted, retained and will call at trial to render any opinion concerning issues in this matter.

**Answer to Request No. 4:**

LNA objects to this request as vague and construes it to apply only to experts who are retained or specially employed to provide expert testimony at trial (see Fed. R. 26(a)(2)) and objects to the extent it applies to experts "consulted" or "retained" for purposes other than providing testimony. LNA further objects to the request as exceeding the scope of discovery as to testimonial experts provided in Rule 26(a)(2)(B) and contravening the schedule and scope for expert discovery set forth in the Court's Case Management Order #5. LNA will provide expert discovery as required by Rule 26 and in accordance with the timelines established by the Court.

**REQUEST NO. 5:**

Copies of any and all writings and things that your experts as described above in Request No. 4 have generated, consulted, relied upon in reaching their opinions and/or upon which their testimony will be based.

**Answer to Request No. 5:**

LNA reasserts its objections as stated in its response to Request No. 4. LNA further objects that this request exceeds the scope of discovery as to testimonial experts provided in Rule 26(a)(2)(B) and contravenes the schedule and scope for expert discovery set forth in the Court's Case Management Order

#5. LNA will produce the documents and information required by Rule 26(a)(2)(B) according to the schedule set forth in Case Management Order #5.

**REQUEST NO. 6:**

Please produce any and all written, taped and otherwise recorded accounts of any and all events and/or circumstances whereby (a) ING 4727 broke free from its moorings at the Lafarge North America France Road facility; (b) traversed or traveled within the IHNC; (c) transited the eastern IHNC floodwall, and/or (d) was deposited east of the eastern IHNC floodwall during and about the time Katrina affected the New Orleans area.

<u>Answer to Request No. 6:</u>

LNA objects to this request on the ground that it seeks the production of documents that are protected by Fed. R. Civ. P. 26(b)(3) to the extent that it seeks "accounts" that were created in anticipation of litigation by or for LNA or its attorneys or representatives. LNA directs plaintiffs to the publicly available reports addressing these topics prepared by the Interagency Performance Evaluation Task Force, the Independent Levee Investigation Team, the Team Louisiana, and the American Society of Civil Engineers External Review Panel.

**REQUEST NO. 7:**

Any and all items of documentary and/or demonstrative evidence, exhibits and things that you will seek to introduce and/or upon which you will rely at trial in this matter.

<u>Answer to Request No. 7:</u>

LNA objects that this request contravenes the schedule set forth in the Court's Case Management Order #5. LNA directs plaintiffs to the exhibit list that LNA filed on November 20, 2007, and to its monthly supplementations thereof. LNA is in the ongoing process of identifying those exhibits which it will use at trial. LNA will produce exhibits individually identified on its exhibit list and will produce exhibits identified by category as such exhibits are individually identified. LNA refers plaintiffs to the documents produced at LNA 000723-807, 1053-1065.

**REQUEST NO. 8:**

Any and all communications, documents and things that substantiate any and all denials in response to the accompanying Requests for Admissions, designating in each instance which response is thereby substantiated.

**Answer to Request No. 8:**

LNA objects on the basis that this request amounts to 42 separate requests corresponding to each of the separate requests for admissions served by the plaintiffs. Paragraph V.A.1 of Case Management Order #5 limits the plaintiffs to fifty (50) separate requests for production, requests for admissions, and interrogatories. This request impermissibly seeks the production of 42 separate categories of documents under the guise of a single request. The demand that LNA "designate in each instance which response is thereby substantiated" admits that this request embodies 42 separate requests. The Court has rejected attempts to impose this sort of request in the Katrina litigation. This request is improper, and LNA stands on its objection.

**REQUEST NO. 9:**

Any and all communications, documents and things whose existence is admitted in response to the accompanying Requests for Admissions.

**Answer to Request No. 9:**

LNA objects on the basis that this request amounts to 42 separate requests corresponding to each of the separate requests for admissions served by the plaintiffs. Paragraph V.A.1 of Case Management Order #5 limits the plaintiffs to fifty (50) separate requests for production, requests for admissions, and interrogatories. This request impermissibly seeks the production of 42 separate categories of documents under the guise of a single request. The demand that LNA "designate in each instance which response is thereby substantiated" admits that this request embodies 42 separate requests. The Court has rejected attempts to impose this sort of request in the Katrina litigation. This request is improper, and LNA stands on its objection.

**REQUEST NO. 10:**

Any and all writings and things reflecting the custodial status - joint, shared, sole or otherwise - of Ingram barges while at customers' facilities.

**Answer to Request No. 10:**

LNA objects to the term "custodial status" as vague and undefined and as calling for a legal conclusion. LNA further objects to this request as vague and overbroad to the extent that it fails to specify what customers and what barges it is inquiring about, and interprets this request to refer to Ingram barges at LNA facilities in the River Region, which encompasses the territory and type of barges involved in this case. Responding, LNA refers plaintiffs to the Transportation Agreement produced by LNA in response to plaintiffs' discovery requests, at bates numbers LNA000001-5. LNA further refers plaintiffs to documents produced and/or made available for inspection from its New Orleans facility that describe or detail activities undertaken by LNA personnel with respect to those barges while at the LNA facility.

**REQUEST NO. 11:**

Any and all communications and documents reflecting citations, violations, accusations, investigation, penalties, litigation, prosecution, discipline, revocation via any and all official, administrative, judicial, quasi-judicial, and/or other process made, sought or convened against LNA relative to any and all marine casualties (1) at any time and/or (2) due to Katrina.

**Answer to Request No. 11:**

LNA objects to the phrase "marine casualties" as vague and objects to the request as overbroad to the extent it pertains to "marine casualties" that bear no relationship to the subject matter of this case. Notwithstanding the foregoing objection, LNA has identified no responsive marine casualties in the United States, since 1998, and therefore will produce no documents. Although LNA is aware of no responsive marine casualties prior to that time, LNA objects that confirming that there were none would be unduly burdensome.

**REQUEST NO. 12:**

Any and all notifications and communications between Ingram, Lafarge and/or the United States Coast Guard concerning any intention or possibility that ING 4727 and/or any other Ingram barge would remain at any Lafarge facility during Katrina.

**Answer to Request No. 12:**

LNA objects to this request to the extent it pertains to "any Lafarge facility" as irrelevant to the subject matter of this action. Notwithstanding and without prejudice to any objections, LNA responds that it will search for and produce responsive documents, if any, relating to its three facilities in Louisiana (Union, Westlake, and New Orleans).

**REQUEST NO. 13:**

The entirety of any and all contracts governing any and all relationships and/or obligations between any and all Ingram companies and LNA during the years 2003, 2004 and 2005, including but not limited to contracts whereby any Ingram companies were contracted to assume responsibility for any maritime operations at any Lafarge facility, including but not limited to Silver Grove, KY.

**Answer to Request No. 13:**

LNA objects to this request on the ground that contracts between LNA and Ingram unrelated to the Barge ING 4727 are irrelevant to the subject matter of this action. Notwithstanding and without waiving any objections, LNA will search for and produce contracts between Ingram and LNA from its distribution division that are responsive to this request. LNA refers plaintiffs to documents produced at LNA 000485-693.

**REQUEST NO. 14:**

Any and all documents purporting to effect settlement, compromise and/or transaction between LNA any and all other persons and/or parties for property damage and/or personal injuries arising out of the effects of Katrina, during Katrina, and/or in any manner whatsoever connected with the breakaway of ING 4727, including but not limited to those naming Arthur Murph.

**Answer to Request No. 14:**

LNA objects on the grounds that any responsive documents are not reasonably calculated to lead to the discovery of admissible evidence, are confidential, are subject to misuse by plaintiffs' counsel, and will place counsel for certain plaintiffs in a conflict-of-interest situation.  Subject and without waiving any objections, LNA will produce the settlement agreement but will redact all reference to any monetary amounts, which are confidential and not legitimately subject to discovery under any circumstances.  LNA refers plaintiffs to LNA 000694-705.

**REQUEST NO. 15:**

Any and all communications between counsel for LNA and Murph, counsel for LNA and relatives of Shirley Priestly, counsel for LNA and any title company, realtor, buyer and seller of immovable property relative to the Priestly property and/or Arthur Murph.  Counsel for LNA shall be understood to include, without limitation, Harry Holladay and Robert Fisher.

**Answer to Request No. 15:**

LNA objects on the grounds that responsive documents, if any, are not reasonably calculated to lead to the discovery of admissible evidence, are confidential, are subject to misuse by plaintiffs' counsel, and will place counsel for certain plaintiffs in a conflict-of-interest situation.  LNA also refers the plaintiffs to its response to Interrogatory No. 16.

**REQUEST NO. 16:**

Any and all confidentiality agreements relevant to the compromise, transaction and/or settlement documents requested above.

**Answer to Request No. 16:**

LNA refers the plaintiffs to its response to Interrogatory No. 16 and Document Request No. 14.

**REQUEST NO. 17A:**

Any and all writings and things of whatever kind and nature which contain information and/or opinions relative to the breakaway and/or movements of ING 4727 during the effects of Katrina, and/or

which contain information and/or opinions relative to the causes and/or occurrence of the eastern Industrial Canal floodwall breach(es) between N. Claiborne and Florida Avenues.

**Answer to Request No. 17A:**

LNA objects to this request to the extent that it seeks the production of documents created or compiled from other sources in anticipation of litigation by or for LNA and its attorneys that are protected by Fed. R. Civ. P. 26(b)(3).  LNA further objects to this request to the extent that "information . . . relative . . . to the breakaway" is so vague as to be meaningless.  The request is also overbroad insofar as it pertains to documents "which contain information … relative to" the floodwall breaches, as the request could pertain to virtually every document in the litigation files of LNA's counsel and representatives.  LNA directs plaintiffs to the publicly available reports addressing these topics prepared by the Interagency Performance Evaluation Task Force, the Independent Levee Investigation Team, the Team Louisiana, and the American Society of Civil Engineers External Review Panel.

**REQUEST NO. 17B:**

Any and all written and/or other communications concerning fleeting, mooring, ballasting, scuttling, sinking and/or anchoring ING 4727 before and/or during the effects of Katrina.

**Answer to Request No. 17B:**

LNA states that it has no responsive documents created prior to the institution of its investigation in anticipation of litigation instituted on September 8, 2005.  Documents created by or at the request of counsel in response to the plaintiffs' allegations are protected under Fed. R. Civ. P. 26(b)(3) and will not be produced.

**REQUEST NO. 18:**

Any and all writings and things containing the whereabouts of Roland Johnson and/or Louis Robein from August 29, 2005 through the present, and all identifying information, including but not limited to birthdates and social security numbers, customarily used by private investigators to locate persons.

1658715.8                                              10

**Answer to Request No. 18:**

Objection.  LNA will provide information concerning the whereabouts of these individuals in response to Interrogatory No. 15.  Producing "any and all writings and things" containing this same information would be duplicative and unduly burdensome and the information is obtainable through less burdensome means.  See Fed. R. Civ. P. 26(b)(2)(C).

**REQUEST NO. 19:**

Any and all communications and writings reflecting inspections of ING 4727, its moorings, structure, hull, interior, appurtenances, superstructure, hatches, ports, cleats, parts, hardware, berth, and/or exterior both in anticipation of and/or during Katrina, and at other times prior to Katrina.

**Answer to Request No. 19:**

LNA will produce responsive documents to the extent it locates them and they have not been produced previously.  LNA refers the plaintiffs to LNA 000105.

**REQUEST NO. 20:**

Any and all things, photos, documents and writings reflecting description and origin of any and all pre and post August 29, 2005 damage to ING 4727.  This is not limited to, but includes, any and all graffiti or other writing on ING 4727 after its breakaway.

**Answer to Request No. 20:**

LNA objects to this request to the extent that it seeks the production of documents created or compiled from other sources in anticipation of litigation by or for LNA and its attorneys that are protected by Fed. R. Civ. P. 26(b)(3).  LNA has previously produced material created prior to September 8, 2005, which is responsive to this request, including LNA 000294 and similar documents.  Documents created or compiled from other sources after September 8, 2005 were in anticipation of litigation and are protected by Fed. R. Civ. P. 26(b)(3).  Subject to and without prejudice to the foregoing objections, LNA would consider production of documents responsive to this request if the plaintiffs agree to reciprocal production of similar documents requested by LNA.

**REQUEST NO. 21:**

Any and all any video and photos of ING 4727 from August 22 - 2005 through the present.

**Answer to Request No. 21:**

LNA objects to this request to the extent that it seeks the production of documents created or compiled from other sources in anticipation of litigation by or for LNA and its attorneys that are protected by Fed. R. Civ. P. 26(b)(3).  LNA has previously produced material created prior to September 8, 2005, which is responsive to this request, including LNA 000294 and similar documents.  Documents created or compiled from other sources after September 8, 2005 were in anticipation of litigation and are protected by Fed. R. Civ. P. 26(b)(3).  Subject to and without prejudice to the foregoing objections, LNA would consider production of documents responsive to this request if the plaintiffs agree to reciprocal production of similar documents requested by LNA.

**REQUEST NO. 22:**

Any and all communication, documents and writings reflecting any and all facts concerning the seaworthiness, adequacy or fitness of ING 4727, and/or any and all equipment and/or structures used to secure, berth, store or secure ING 4727 at the Lafarge facility.

**Answer to Request No. 22:**

LNA objects to the term "the Lafarge facility" as vague and interprets the phrase to refer to LNA's terminal on the Inner Harbor Navigation Canal at New Orleans, Louisiana.  LNA objects to the terms "adequacy" and "fitness" as vague because this request fails to specify "adequacy" or "fitness" for what purpose.  LNA objects to the term "seaworthiness" as vague to the extent that it is applied to "structures used to secure, berth, store or secure."  LNA objects to this request because the terms used may call for a legal conclusion and to the extent that it seeks material protected by the attorney-client privilege or documents created in anticipation of litigation by or for LNA and its attorneys that are protected by Fed. R. Civ. P. 26(b)(3).  Subject to and without prejudice to the foregoing objections, LNA refers plaintiffs to the document produced by LNA in response to plaintiffs' previous discovery requests, at bates number LNA000105, and states that it will produce responsive documents, including diagrams of

the dock, to the extent it locates them. LNA refers plaintiffs to documents produced at LNA 001053-1065.

**REQUEST NO. 23:**

Any and all communications and documentation provided to the Coast Guard concerning ING 4727.

<u>Answer to Request No. 23:</u>

Responsive documents will be produced. LNA refers to documents previously-produced documents bearing Bates Nos. LNA 000109-113, 791-807, 831-1019.

**REQUEST NO. 24:**

Any and all permits, leases, agreements and other writings reflecting ownership of, and/or LNA's rights to use and/or occupy, any and all areas at, near, and about the LNA France Road facility to dock, wharf, moor and/or berth barges.

<u>Answer to Request No. 24:</u>

LNA objects to the request as vague and potentially overbroad to the extent that any document regarding its New Orleans terminal may "reflect" its "right to use" the facility. LNA will search for and produce any documents constituting its lease with the Dock Board or other similar documents that form the basis for LNA's rights with respect to the occupation or use of the facility to dock, wharf, moor or berth barges.

**REQUEST NO. 25:**

The entirety of any and all writings and things previously requested by Group A via written discovery requests and/or FRCP 30(b)(5) notice deemed by the Court to be irrelevant to Phase I.

<u>Answer to Request No. 25:</u>

LNA objects on the grounds that this request, by its terms, seeks to incorporate multiple requests for production into a single request in violation of Case Management Order #5. LNA has not, however, identified any written discovery requests and/or FRCP 30(b)(5) notice deemed by the Court to be irrelevant to Phase I and therefore responds that it has no responsive documents.

**REQUEST NO. 26:**

Any and all articles, notices, advertisements, statement, newspapers, periodicals, magazines, and other publicly communicated accounts in your possession, whether generated by LNA or not, of the breakaway of ING 4727 and/or breach of the Industrial Canal floodwall.

**Answer to Request No. 26:**

See response to Request No. 20.

**REQUEST NO. 27:**

Any and all communications, writings, documents, instructions from barge owners other than Ingram concerning safe-keeping and/or preparation of their barges at LNA dock facilities in advance of an approaching hurricane.

**Answer to Request No. 27:**

LNA objects to this request as overbroad and unduly burdensome to the extent that the phrase "LNA dock facilities" may apply to facilities outside of the River Region distribution zone and to areas not subject to hurricane winds. LNA further objects to the term "in advance of an approaching hurricane" as vague and overbroad and interprets the term to mean actions to be taken in response to knowledge of an approaching hurricane. Subject to and without waiving those objections, LNA will search for and produce responsive documents, if any, from its facilities at New Orleans, Union, and Westlake in Louisiana.

**REQUEST NO. 28:**

Any and all simulations, replicas, reconstructions, models, mockups, and other study, investigation or representation, forensic or otherwise, of any and all things, events and/or locations you contend are pertinent to this litigation and which you will (1) introduce at trial, and/or (2) rely upon at trial, and/or (3) disclose, display or publish to the trier of fact, and/or (4) of which any witness you will call at trial will be informed and/or upon which any such witness will rely in furtherance of trial testimony, including any and all documents and things of which said matters consist and/or to which they relate, including but not limited to notes, diaries, journals, correspondence, bulletins, memoranda,

communications, logs, records, tables, charts, calculations, data, assumptions, premises, photos, video, sound recordings, computer media, reports, publications, theories, hypotheses, opinions, conclusions, plans, specifications, diagrams, graphics, and all other documents and things as requested herein.

**Answer to Request No. 28:**

LNA objects to this request as exceeding the scope of discovery as to testimonial experts provided in Rule 26(a)(2)(B) and contravening the schedule and scope for expert discovery set forth in the Court's Case Management Order #5.  LNA will provide expert discovery as required by Rule 26 and in accordance with the timelines established by the Court.

**REQUEST NO. 29:**

Any and all communications, documents, statements, investigations, records, photo, video and evidence pertinent to the mooring or securing, and any shifting or movement during the effects of Katrina, of the five-barge tier north of ING 4727 at the Lafarge France Road facility.

**Answer to Request No. 29:**

LNA objects to this request to the extent that it seeks the production of documents created or assembled from other sources in anticipation of litigation by or for LNA and its attorneys that are protected by Fed. R. Civ. P. 26(b)(3).  LNA notes that documents previously produced in this action may be responsive in depicting the mooring of barges in the northern tier (e.g., LNA 000379) although LNA denies that the configuration shown in that photo is reflective of the position or movement "during" Hurricane Katrina itself.  With regard to documents created after September 8, 2005, LNA refers plaintiffs to the final sentence of its response to Request No. 20.

**REQUEST NO. 30:**

Any and all documents and things mentioning, concerning and/or describing any and all complaints, accounts, claims and/or communications about a barge or other object knocking, scraping or engaged in other contact against the Industrial Canal floodwall or levee, and/or a barge breakaway, including the identities of all complainants, the recipients and persons with knowledge of all such complaints and/or communications, the dates and times of such complaints and/or communications, and

the full substance of any and all such complaints and/or communications, during the period August 28-29, 2005.

**Answer to Request No. 30:**

LNA is aware of no documents mentioning complaints or communications responsive to this request during the period August 28-29, 2005.

**REQUEST NO. 31:**

Any and all documents and things mentioning, concerning and/or describing any and all efforts to track, redirect, guide, navigate, and/or recapture ING 4727 after its breakaway during the effects of Katrina.

**Answer to Request No. 31:**

No responsive documents exist. The "efforts" described in this request would have been impossible because LNA was unaware of the breakaway until after Hurricane Katrina had passed and the barge had floated into the Lower Ninth Ward.

DATED:  December 28, 2007

                                                          Respectfully submitted,

                                                          Robert B. Fisher, Jr., T.A. (#5587)
                                                          Derek A. Walker (#13175)
                                                          Ivan M. Rodriguez (#22574)
                                                         Parker Harrison (#27538)
                                                         **CHAFFE MCCALL, L.L.P.**
                                                          2300 Energy Centre
                                                          1100 Poydras Street
                                                          New Orleans, LA 70163-2300
                                                          Telephone:  (504) 585-7000
                                                          Facsimile:  (504) 585-7075
                                                          Fisher@chaffe.com
                                                          Walker@chaffe.com
                                                          Harrison@chaffe.com

        Mark S. Raffman
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

LIBW/1658715.8

## Certificate of Service

I do hereby certify that I have on this 28th day of December, 2007 served a copy of the foregoing pleading on counsel for all parties to this proceeding by e-mail.

                                                  /s/ Mark S. Raffman