SOUTHERN SCRAP MATERIAL CO. v. FLEMING, (E.D.La. 2003)

SOUTHERN SCRAP MATERIAL CO., ET AL, v. GEORGE M. FLEMING; FLEMING & ASSOCIATES L.L.P., FLEMING, HOVENKAMP & GRAYSON, P.C.; JOHN L. GRAYSON; MARK A. HOVENKAMP; BRUCE B. KEMP; L. STEPHEN RASTANIS; THE LAW OFFICES OF L. STEPHEN RASTANIS; JOHN B. LAMBREMONT, SR.; THE LAW OFFICES OF JOHN B. LAMBREMONT, SR; KEN J. STEWART; FREDERICK A. STOLZLE, JR.; FREDERICK A.STOLZLE, JR. & ASSOCIATES.

CIVIL ACTION NO. 01-2554, SECTION "M" (3).

United States District Court, E.D. Louisiana.

June 18, 2003.

**B. Articles, Photographs, Maps and Videos** As previously noted the work-product doctrine shields materials prepared by or for an attorney in preparation for litigation. *Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 403 (M. D. La. 1992). It protects two categories of materials: ordinary workproduct and opinion work product. *See Upjohn Co. v. U.S.,* 449 U.S. 383, 400-02 (1981). The doctrine is not an umbrella affording protection to all materials prepared by a lawyer or an agent of the client. The law of the Fifth Circuit is that "as long as the primary motivating purpose behind the creation of the document was to aid in potential future litigation," the work-product privilege is implicated. *See In re Kaiser Aluminum and Chemical Co.,* 214 F.3d 586, 593 (5th Cir. 2000). However, if the materials were assembled or came into being in the ordinary course of business, work-product protection does not reach that far. *See United States v. El Paso Company,* 682 F.2d 530 (5th Cir. 1982), *cert. denied,* 466 U.S. 944 (1984); *Beal v. Treasure Chest Casino,* 1999 WL 461970, *3 (E. D. La. July 1, 1999). Moreover, it does not extend to underlying facts relevant to the litigation. *See* Upjohn, 449 U.S. at 395-96. The burden of showing that documents were prepared in anticipation of litigation, and therefore, constitute work-product, falls

on the party seeking to protect the documents from discovery. *St. James Stevedoring Co., Inc. v. Femco Machine Co.,* 173 F.R.D. 431, 432 (E. D. La. 1997). The Court now turns to the documents and items listed on defendants' privilege logs to determine whether they are shielded from discovery pursuant to either the work-product or the attorney-client privilege.

**(1) Frederick Stolzle Privilege Log No. 23 —— Photographs and Exhibit Video:** Defendant Stolzle argues that the surveillance video and photographs are privileged under the work product doctrine and can only be produced upon a showing of "substantial need" and "undue hardship." The video tape and photographs at issue are clearly work product, having been gathered in anticipation of litigation, *i.e., Banks, et al, inter alia.* Courts have expressed a diversity of views as to how to resolve the issue presented.[fn42] However, there is a common thread running through all of the jurisprudence, *i.e.,* surveillance can be a very important aspect of the party's case. The issue surfaces most often in the plaintiff-personal injury scenario; usually, it involves the defendant's surveillance of the plaintiff which tends to discredit the plaintiff's description of his or her injuries. Obviously, such surveillance evidence gathered in anticipation of litigation is generally protected as work product. In *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 517 (5th Cir. 1993), the Fifth Circuit addressed the discoverability of videotape surveillance. The court held that, regardless of whether the surveillance video has impeachment value, it must be disclosed prior to trial if it is at all substantive evidence[fn43] as opposed to solely "impeachment evidence." *Id.* at 517-18.[fn44] Having reviewed the video tape and photographic surveillance *(i.e.,* the defendants' trial exhibits in the underlying litigation), the Court finds that the films, whether photograph or video, are of a substantive nature. More specifically, they may be used to either prove or disprove the plaintiffs' allegations in the underlying state court toxic tort litigation regarding the condition of Southern Scrap's facilities and the various operations conducted and materials stored upon or moved about the

premises. Likewise, they may aid in either proving Southern Scrap's allegations or the defendants' affirmative defenses in the captioned RICO litigation. The thrust of Southern Scrap's claims herein is that the defendants made a concerted effort to prosecute baseless and frivolous claims against Southern Scrap for the purpose of extorting settlement funds in the underlying state court litigation. Because the subject video tapes and photographic materials are substantive in nature, and the same are not otherwise available to Southern Scrap,[fn45] under *Chaisson,* these items are discoverable.