# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION NO. 05-4182 "K"(2) |
| | * * | JUDGE DUVAL |
| PERTAINS TO: ROAD HOME *Louisiana State* C.A. No. 07-5528 | * * * * | MAG. WILKINSON |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## RESPONSE BY THE STATE OF LOUISIANA, ETC. TO THE SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PROTECTIVE ORDER FILED MARCH 3, 2008

**MAY IT PLEASE THE COURT:**

**I.     A Protective Order is Unwarranted and unnecessary.**

    **A.     The Insureds have executed releases allowing this information to be sent to the State.**

The Insurers argue that a protective order is necessary to protect the privacy interest which its insureds expect it to preserve with respect to their insurance files. However, each of the insureds, as an applicant for benefits through the Road Home, has executed a release authorizing the insurance carrier to release to the State:

> Policies of insurance issued by or through insurance companies and their agents, ***and all claims made and benefits paid or to be paid under those policies.***

Emphasis added. A sample of this release is attached as Exhibit 1. Additionally, at closing the Grant Applicant executes a subrogation and assignment document agreeing that the State has the right to review and consent to the settlements. The data requested by the State is an inherent element in performing that function.

### B. The State has issued a Voluntary Privacy Protocol which is substantially similar to the order requested by the Industry.

As with all of the data gathered through the grant process, the State has repeatedly demonstrated its earnestness to protect the insurance information and to treat the data as private and confidential under the Louisiana Constitution and other Federal Privacy Acts. In that respect, the protective order sought is unnecessary

The State has earlier entered a self-imposed Privacy Protocol to limit the information gathered as part of the approval process. The existence of the voluntary protocol makes any protective order unnecessary. A copy of the current voluntary Privacy Protocol is attached as Exhibit 2.

### C. Entry of a Protective Order hampers the performance of State functions.

In a program with the scope and size of the Road Home Program, adding into the mix a judicial protective order adds a dimension of potential delay in the performance of functions not just relating to the Road Home Program but also to other legitimate governmental purposes for which the data can be utilized. Given the entitlement of the State to receive the information through the authorizations and agreements of the insureds as discussed above and given the legitimate and

immediate purpose for which the State needs the information, the prospect of adding another moving part into the State's processes or restricting its ability to perform those functions outweighs the stated concerns of the defendants.

## II. Response to the Court's Order of February 26, 2008.

### A. Who are the personnel at OCD that will have or may have access to Exhibits A and B for the purposes of granting or denying consent to settlements?

The State suggests that, other than Mr. Rees, the names of para-professionals who will or may have access to Exhibits A and B be provided to the Court *in camera* and request entry of an order permitting same. In an effort to not further delay this process, the following will or may be regularly involved with Exhibit A and B for settlement approval purposes:

1. Legal Counsel of OCD-DRU  - Daniel A. Rees
2. Attorney, OCD-DRU – Patrick Keller
3. Attorney, LRA – Kristen Parnell
4. Paralegal, OCD-DRU
5. Financial Analyst, OCD-DRU
6. Claims Analyst, OCD-DRU

In the event of denial of consent or request for further data, a review of the matter may be undertaken with other individuals with management roles in OCD, including but not limited to Paul Rainwater, Executive Director of LRA, Suzie Elkins, Executive Director of OCD, Tom Brennan, Assistant Executive Director of OCD; Mike Taylor, Program Director of the Disaster Recovery Unit; and Mike Spletto, DRU Manager of Homeowner Programs.

In addition to OCD, business units at ICF also have roles in reviewing or working with the data for settlement processing purposes, including the

Insurance Verification Unit, the Post Closing Unit, and the Reporting and IT units. The staffing of those units has varied throughout the process. The State further notes that these individuals and others at both the State and the Federal level have statutory responsibilities, such as oversight and planning, that will or may require access to these Exhibits.

### B. Will the State require more information than that which is contained in Exhibits A and B?

It is anticipated that typically the consents can be processed based on the data at hand requested through Exhibits A and B, with a relatively higher weighted reliance upon the carrier submission. However, the data submitted sometimes brings to light a discrepancy in data already provided to the Road Home Program. Part of the approval process is, where possible, to identify and resolve the cause for the discrepancy. This ability to resolve discrepancies is important because it can effect how much of the settlement the State may need to recover from the dwelling benefits paid. In any given situation, the more that the State sees in a particular file indicating a discrepancy in the amounts paid to items other than structure, the State's review of information may cause the State to seek further data to demonstrate the reasonableness of the allocations. Similarly, if it is seen that particular carriers or attorneys typically have cases with such disparate results, there may be a heightened level of attention paid, and requests for additional data, to demonstrate the reasonableness of allocations in light of such trends.

### III. The Insurance Industry has failed to demonstrate a protective order is necessary.

The State has argued that the Insurance Defendants have failed to carry their evidentiary burden to demonstrate the need for a protective order. The Court expressed similar concerns and granted the Defendants an opportunity for a "do-over". The most current submission by the Defendants lack any substantive evidentiary support ----- only conclusory, cookie-cutter affidavits, threatening withdrawal from the settlement process in the absence of secrecy. The affidavits collectively restate what has been argued in briefs and which the State has demonstrated to be argument and not evidence. Restating argument in affidavit form does not transform an argument into evidence and thus, the Defendants have failed to demonstrate the need for the entry of a protective order.

What levels of secrecy does the Insurance Industry seek to impose and are they necessary as demonstrated by the supporting affidavits? The State has already agreed as part of an earlier protective order that it will not share insurance information with any carrier other than the relevant carrier. The State has also already agreed to withhold personal information relating to Grant Applicants without privacy protection. The Insurance Industry will release personal information to the State only pursuant to a release. The affidavits are meaningless on these points.

Ideally the Insurance Industry wants an environment where those State employees involved in the settlement approval process ignore any institutional

knowledge that may be learned as part of this process and focus on only the settlement under review. It asks the impossible, the creation of a mental Chinese wall, and more than it requires of private counsel negotiating the settlement of large blocks of cases. Not only does the Industry seek limits on what can be considered internally within the agency, it seeks to limit what can be discussed with outside counsel.

No showing has been made here sufficient to limit and control the relationship between the State and its outside counsel. Moreover, the Court correctly noted that if such information is injected into a settlement discussion, all that needs to be said in response is that the case under discussion and those other cases are different. Rather than balance the playing field where counsel and the Insurer have a similar level of knowledge as to prior payments, the Insurers seek a superior tactical advantage by attempting to clothe the settlement payments in secrecy in discussions with that carrier. Such knowledge may in fact facilitate settlement or at least expedite the process.

## IV.  Conclusion

The State maintains that this Court is without jurisdiction as to both the captioned matter as well as the issues *sub judice*. Reserving these jurisdictional and other substantive objections, now and earlier briefed, the State has suggested a form of Protective Order that will serve the interest of the parties, and respectfully requests this Honorable Court, if it overrules the State's jurisdictional and substantive objections enter the State's proposed Protective Order.

**Respectfully Submitted,**

THE STATE OF LOUISIANA
The Honorable Buddy Caldwell
ATTORNEY GENERAL,
STATE OF LOUISIANA
/s/ Isabel Wingerter
Isabel Wingerter (No. 20428)
Assistant Attorney General
Director of Public Protection
1885 North Third Street, 6th Floor
Baton Rouge, LA 70802
Ph.: 225-326-6040
Fax: 225-326-6097

AND

ROAD HOME LIAISON AND LEAD
COUNSEL
/s/ Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr. (No. 5486)
FAYARD & HONEYCUTT, A.P.C.
519 Florida Avenue, S.W.
Denham Springs, LA 70726
Ph.: 225-664-4193
Fax: 225-664-6925
Email: calvinfayard@fayardlaw.com

AND

ROAD HOME CO-LEAD COUNSEL
Paul G. Aucoin (No. 2604)
PAUL G. AUCOIN, ATTORNEY AT LAW
135 Goodwill Plantation
Vacherie, LA 70090-5240
Ph.: 225-265-7906
Fax: 225-265-7906
Email: aucoinp@bellsouth.net

Joseph J. McKernan (No. 10027)
McKERNAN LAW FIRM
8710 Jefferson Highway
Baton Rouge, LA 70809
Ph.: 225-926-1234

Fax: 225-926-1202
Email: jemckernam@mckernanlawfirm.com

Drew A. Ranier (No. 8320)
RANIER, GAYLE & ELLIOTT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
Ph.: 337-494-7171
Fax: 337-494-7219
Email: drainer@rgelaw.com

Frank C. Dudenhefer, Jr. (No. 5117)
THE DUDENHEFER LAW FIRM
A Limited Liability Company
Pan American Life Center
601 Poydras Street, Suite 2655
New Orleans, LA 70130
Ph.: 504-525-2553
Fax: 504-523-2508
Email: FCDLaw@aol.com

James P. Roy (No. 11511)
DOMENGEAUX WRIGHT
ROY & EDWARDS L.L.C.556 Jefferson
Street, Suite 500
P. O. Box 3668
Lafayette, LA 70502-3668
Ph.: 337-233-3033
Fax: 337-232-8213
Email: jimr@wrightroy.com

James R. Dugan, II (No. 24785)
MURRAY LAW FIRM
650 Poydras Street, Suite 1250
New Orleans, LA 70130
Ph.: 504-648-0180
Fax: 504-648-0181
Email: jdugan@dugan-lawfirm.com

John W. Houghtaling (No. 25099)
GAUTHIER, HOUGHTALING, &
WILLIAMS, L.L.P.
3500 North Hullen Street
Metairie, LA 70002
Ph.: 504-456-8600
Fax: 504-456-8624
Email: john@ghwlaw.net

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2008, I electronically filed the foregoing with the Clerk of Court, U.S. District Court, Eastern District of Louisiana, by using the CM/ECF system which will send a notice of electronic filing to counsel of record in the captioned matter.

/s/ Calvin C. Fayard, Jr.
CALVIN C. FAYARD, JR.