# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES LITIGATION | * CIVIL ACTION NO. 05-4182 |
| | * |
| | * SECTION "K" (2) |
| | * |
| | * JUDGE STANWOOD R. DUVAL, JR. |
| _____ | * MAG. JUDGE JOSEPH C. WILKINSON, |
| | * JR. |

PERTAINS TO:  BARGE
     *Boutte* (05-5531)
     *Mumford* (05-5724)
     *Lagarde* (06-5342)
     *Perry* (06-6299)
     *Benoit* (06-7516)
     *Parfait Family* (07-3500)
     *LNA v. USA* (07-5178)

## LAFARGE NORTH AMERICA INC'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL WRITTEN DISCOVERY FROM PLAINTIFFS

On October 12, 2007, Lafarge North America served written discovery requests on the plaintiffs in accordance with the Court's case management order.  After the Court extended the deadline for responding at plaintiffs' request, a few plaintiffs produced original responses on December 28, 2007, and supplemented those responses on multiple occasions in January and February 2008.  Yet, the bulk of individual plaintiffs have produced ***no responses*** despite the

Court's express order requiring them to do so. And the responses LNA has received from those plaintiffs who have responded are incomplete and inadequate. After conferencing as required by L.R. 37.1E, LNA moves to compel proper responses.

## Background

The "Barge" track consists of several consolidated actions alleging that plaintiffs suffered damages from Hurricane Katrina which they attribute, in whole or in part, to a barge that had been moored at LNA's cement terminal prior to the storm. These actions are: *Mumford* (10 individual plaintiffs); *Boutte* (3 individual plaintiffs); *Benoit* (21 individual plaintiffs); *Parfait Family* (over 120 individual plaintiffs); *Lagarde* (6 individual plaintiffs); and *Perry* (2 individual plaintiffs). Four of the cases – *Mumford, Boutte, Benoit, and Parfait* – are styled as class actions in which the individual plaintiffs seek damages not only individually, but also on behalf of absent class members of variously-defined putative classes.

In Case Management Order No. 5, this Court set a discovery schedule to govern **all** of the consolidated actions. The Order provided that "all written discovery (interrogatories, requests for production and requests for admissions) to other parties in these cases must be issued no later than October 12, 2007" and that responses must be provided "no later than November 30, 2007."[1] The Order specifically stated that "***[w]ritten discovery directed to each individual plaintiff must be answered individually.***"[2] Written discovery is not limited to any specific

---

[1] Rec. Doc. 7724 at 7-8. At plaintiffs' request (Rec. Doc. 9291), the Court amended the schedule to provide an extra month to respond to written discovery. Rec. Doc. 9293.
[2] Rec. Doc. 7724 at 8 (emphasis added).

subject matter; to the contrary, the Order requires that "all" written discovery be completed within the requisite period.

On October 12, 2007, LNA (together with Zito) propounded written discovery to the plaintiffs. Consistent with CMO #5, the requests address class certification and the merits of plaintiffs' claims. The requests expressly state that they are directed to *all* individual plaintiffs in the above-captioned cases.[3] On December 7, 2007, after the Court extended the response deadline, LNA counsel reminded plaintiffs' counsel of the obligation to provide a separate response for each individual plaintiff in each of the consolidated actions.[4]

On December 28, 2007, LNA received plaintiffs' responses to its written discovery requests.[5] After asserting a series of "general objections,"[6] plaintiffs' responses set forth a section entitled "General Response and Reservations" in which plaintiffs purport to distinguish between ten "named class representatives" and a longer list of "named individual non-representative plaintiffs" apparently comprised of all of the individual plaintiffs in the

---

[3] See Exhibits 1 and 2 hereto (LNA's interrogatories and requests for production, respectively) at 1 (requests directed to all "plaintiffs in the above-captioned matters," to be "answered individually unless the answer is the same for all plaintiffs.").

[4] See Exhibit 3 hereto (December 7, 2007 Letter from LNA to plaintiff's counsel stating "Please note that we are expecting responses from every plaintiff that has sued LNA in any of the captioned actions falling within the Barge category of cases."). Plaintiffs' counsel did not respond to LNA's letter. Rather, on December 26, 2007, two days before the extended due date, plaintiffs' counsel contacted LNA counsel by telephone to advise that plaintiffs would be unable to provide timely responses for any individuals other than the proposed *Mumford* class representatives. Ultimately, plaintiffs' counsel set February 15, 2008, as the target date for completion of the responses. *See* Exhibit 6 at 16, plaintiffs' January 24, 2008 supplementary response to Interrogatory No. 26 ("Undersigned will supplement as to named plaintiffs who have retained attorneys in this matter other than the undersigned, on or before February 15, 2008, as per agreement with opposing counsel"). However, as of the date of this motion – one month later – the responses are woefully incomplete.

[5] See Exhibit 4 hereto (plaintiffs' December 28, 2007 responses to interrogatories); Exhibit 5 hereto (plaintiffs' December 28, 2007 responses to requests for production).

[6] *E.g.*, Exhibit 4 at 2 ("Plaintiffs object to the Interrogatories to the extent that they exceed the scope of admissible discovery.")

consolidated actions other than *Mumford*.[7]  The response states: "[p]laintiffs are in the process of obtaining answers as to the named individual non-representative plaintiffs, and will supplement these responses to include their answers as soon as possible."  Plaintiffs supplemented these responses on January 24-25, 2008, February 7 and February 15, 2008.[8]  Notwithstanding the attempted supplementation, however, numerous plaintiffs (identified below) have supplied ***no responses whatsoever***.  Indeed, counsel for one group of plaintiffs ***refused*** to provide any discovery on behalf of his clients.[9]

What is apparent through this discovery process is that plaintiffs' counsel have no apparent contact with their clients or purported clients.  They apparently have some signed contracts and little else, and may not even have contact information for them.  Whatever their problems, LNA is entitled to proper discovery responses.  If such responses are not forthcoming because those individual plaintiffs have not suffered any damages, or have no interest in or support for a claim, they should be dismissed from this action.

Moreover, although plaintiffs have asserted blanket claims of work product protection and attorney-client privilege,[10] plaintiffs have failed to supply a privilege log in compliance with Fed. R. Civ. P. 26(b)(5), and have supplied no evidence to support their claims of privilege.

Plaintiffs' responses are laden with incomplete or evasive answers.  For instance plaintiffs have refused and/or failed to produce documents that support or relate to the individual

---

[7] Contrary to this purported distinction, many of the plaintiffs in the other consolidated actions seek to be appointed class representatives, according to the complaints they have filed.  See complaints in *Benoit*, *Boutte*, and *Parfait*.  None of these plaintiffs has filed an amended complaint renouncing their request to be appointed as a class representative.  In any event, because the Court has ordered discovery as to all individual plaintiffs, the purported distinction between representative plaintiffs and others is irrelevant to this motion to compel.

[8]  See Exhibits 6, 7, 8, 9 and 10(supplemental responses).

[9] See Exhibit 11 (email from Ashton O'Dwyer to Mark S. Raffman).

[10] See, *e.g.*, Exhibit 4 at 1 and responses to Interrogatories Nos. 1, 2, 8, 9, 10, 17, 24, 27, 28, and 39; see Exhibit 5 at 1 and responses to Requests to Produce Nos. 14, 16, 18, 19, 20, 38, 39, and 40.

plaintiffs' claims for damage to real property (including remediation); emotional distress; personal injury; and damage to personal property.[11]  Plaintiffs have failed to produce any financial statements or business records from one of the proposed representative plaintiffs for the "business loss" subclass (Rico Sutton).[12]  Plaintiffs have failed to supply a proper verification for interrogatory answers, limiting the verification to the information "supplied" by the plaintiff, rather than the responses themselves.[13]  And where plaintiffs did produce documents, they did so without organizing and labeling them to correspond to the categories in the request, in violation of Fed. R. Civ. P. 34.[14]

There is also a problem in plaintiffs' camp amongst counsel, which should not prejudice LNA and the orderly discovery of the case.  They disagree regarding the liability of the U.S. Government and others and this apparently creates difficulties in cooperation.  In any event, Mr. Gilbert advises that he is not "responsible," although he is liaison for plaintiffs, for the lack of responsiveness to discovery of his colleagues- we believe it is his responsibility to obtain discovery responses from all plaintiffs, regardless of who is their counsel.

Argument

**A.  All Plaintiffs Should Be Ordered to Answer All Written Discovery Now**.

Case Management Order No. 5 provides that "[w]ritten discovery directed to each individual plaintiff must be answered individually."[15]  LNA expressly directed its discovery

---

[11] See Response to RFP 21, 22, 23, and 24, Exh. 5 at 17-19.
[12] See Rec. Doc. 8779 at 9, 11-12 (Sixth Amended Complaint identifying proposed representatives).
[13] See, *e.g.*, Exhibit 12 (verification from plaintiff Richardson).
[14] Plaintiffs did not even bother to affix Bates labels or other identifiers to the documents that they produced.
[15] Rec. Doc. 7724 at 8.

requests to each individual plaintiff, and wrote plaintiffs liaison counsel weeks in advance of the deadline to ensure that individual answers would be received.[16]

The information LNA seeks from the individual plaintiffs is vitally important in this case. For example, Interrogatory No. 12 seeks information regarding where each individual plaintiff was located immediately preceding, during, and after Hurricane Katrina's landfall.  Interrogatory No. 13 asks each individual plaintiff whether they saw the barge or the breaches of the retaining wall on the eastern side of IHNC.  Interrogatory No. 18 asks whether each individual plaintiff made or received any phone calls from the Lower Ninth Ward or St. Bernard Parish during the same period.  Interrogatory No. 26 asks each individual plaintiff to identify every injury or harm for which that plaintiff seeks damages in this action.  The plaintiffs admit that these are proper interrogatories and have amended their responses to supply the requested information, but only as to some plaintiffs.[17]  Other requests similarly call upon the plaintiffs to support the claims they have asserted with information that exists, if at all, in their own possession.[18]

There is no unfairness to plaintiffs in requiring them to provide responsive information as required by CMO #5.  Each plaintiff who has been served with these requests has affirmatively decided to bring an individual claim against LNA.  These are not merely absent class members. Indeed, some of these plaintiffs, including those in *Benoit*, *Boutte*, and *Parfait*, have affirmatively pled that they want to serve as class representatives on behalf of others.  Having

---

[16] Exhibits 1 and 2 at 1; Exhibit 3.

[17] See Exhibit 4 (initial response); Exhibit 6 (amended response); Exhibit 10 (second amended response).

[18] The Interrogatories further require each individual plaintiff and proposed class representative in any of the cases to disclose whether they submitted a claim for homeowners insurance or government benefits (Interrogatory No. 29), disclose whether they have ever been convicted of a crime or filed for bankruptcy (Interrogatory No. 34), identify all civil or court proceedings to which they have been a party (Interrogatory No. 35), identify all real property to which damages were sustained (Interrogatory No. 36), answer whether they seek damages for demolition, salvage, or restoration of property (Interrogatory No. 37), substantiate any claims for lost income (Interrogatory No. 38), and answer whether they claim non-emotional personal injuries (Interrogatory No. 39).

filed federal lawsuits on their own behalf against LNA, seeking damages in amounts that stagger the imagination,[19] these plaintiffs have no excuse for refusing to provide basic discovery about the claims they have brought.

To date, LNA has received individual answers from only twenty-two plaintiffs and documents from only fifteen. Not a single "named individual non-representative" plaintiff has responded to LNA's requests for admissions.[20] LNA has received virtually **no** answers or responsive documents from many or most of the plaintiffs in the *Boutte, Benoit, Parfait, Lagarde,* and *Perry* actions. The individual plaintiffs for whom no documents and/or no interrogatory answers have been produced, separated by case, are as follows:

*Mumford* Plaintiffs

Plaintiffs have failed to produce any documents for named plaintiff Rico Sutton beyond the verification form in support of his interrogatory responses. Mr. Sutton purports to assert claims for **fourteen** separate categories of harm.[21] It is difficult to believe this plaintiff has no documents to support any of these claims.

*Benoit* Plaintiffs

The only *Benoit* plaintiff for whom any documents have been produced is Mildred Delores Dean. No documents have been produced for any of the following plaintiffs, and the individuals identified in italics have also not responded to any interrogatory requests:

- Gwendolyn Adams
- Henry Adams
- *Jerry Alford*

---

[19] See , e.g., Civil Cover Sheet in *Boutte*, No. 05-5531.
[20] Plaintiffs have responded to Requests for Admissions Numbers 1-5, and 25, only for the "named individual non-representative plaintiffs."
[21] See Exhibit 6 at 13-14, January 24, 2008 supplemental response to Interrogatory No. 26.

- *John Alford*
- *Marie Short Benoit*
- *Albertine Browder*
- *Gaynell Browder*
- *Tom Browder*
- Joyce B. Daniels
- Earl Matthew Daniels
- *Myrna Daniels, individually and as natural tutrix of Keina Daniels*
- *David Green, individually and as the rep. of the Estate of Joyce H. Green*
- *Everage Green, individually and as the rep. of the Estate of Shanai Green, as the natural tutor of Shaniya Green and Shamiya Green*
- *Green, Jonathan*
- *Green, Sr., Robert*
- Leon, Ethel
- Leon, Karen
- *Matthews, Joyce B.*
- *Sheppard, Hyman*
- *Watts, Michael*

### *Lagarde* Plaintiffs

The only documents that have been produced from the *Lagarde* plaintiffs come from Marenthia Lagarde, Michael Lagarde, and Donald Pritchett.  No documents or interrogatory responses have been produced for the following *Lagarde* plaintiffs:

- *Jocelyn Carter*
- *Anthony Dunn*
- *Jocelyn Moses*

### *Boutte* Plaintiffs

Blair Boutte is the only plaintiff for whom documents have been produced from the *Boutte* action.  No documents have been produced for the following *Boutte* plaintiffs, and the individual identified in italics has also not responded to any interrogatory requests:

- Doris Shanks
- *Herbert Warren Jr.*

*Parfait* Plaintiffs

Of the over 120 named individual *Parfait* plaintiffs, only Melba Gibson has produced any documents.  No documents or interrogatory responses have been produced for any of the remaining named *Parfait* Plaintiffs, who are identified by name in Exhibit 13.[22]

*Perry* Plaintiffs

No documents or interrogatories responses have been produced for either of the *Perry* plaintiffs, who are:

- *Jimmie A. Perry*
- *Nellie S. Perry*

Each of these plaintiffs should be ordered to respond immediately to LNA's interrogatories and requests for production.[23]

**B.  Plaintiffs Should Be Ordered to Support their Privilege Claims.**

Plaintiffs have asserted a blanket privilege objection to LNA's requests and have objected to numerous requests on grounds of attorney work-product or attorney-client privilege.[24] Plaintiffs have not, however, produced a privilege log as required by Rule 26(b)(5), and they have not supplied any evidence to support their claims of privilege.  This Court has previously held that claims of privilege must be supported by a privilege log and evidence to establish that

---

[22] Counsel for the *Parfait* plaintiffs flatly refused to produce any discovery.  *See* Exhibit 11, January 23, 2008 e-mail of Ashton O'Dwyer to Mark Raffman.

[23]  LNA does not, at this time, seek to compel responses to its requests for admissions.  LNA notes that, under Rule 36, matters are deemed admitted where a party fails to respond or object within the allowed time.  In the event that the Court is inclined to accept late-submitted responses to requests for admissions, then responses to LNA's requests for admissions should be compelled immediately as well.

[24] See Exhibit 4 at 1 and responses to Interrogatories Nos. 1, 2, 8, 9, 10, 17, 24, 27, 28, and 39; see Exhibit 5 at 1 and responses to Requests to Produce  Nos. 14, 16, 18, 19, 20, 38, 39, and 40.

the requested information is privileged.[25]  Plaintiffs should be ordered immediately to comply with their obligations by supplying the required privilege log and supporting evidence.

### C.  Plaintiffs Should Be Ordered to Comply With Rule 34.

Rule 34 provides that a party must produce documents "as they are kept in the usual course of business" or must "organize and label them to correspond with the categories in the request."  Plaintiffs have done neither.  Instead, in their original and supplemental responses, they have produced documents without affixing Bates labels or other identifying information, and without stating what documents correspond to what requests.  Plaintiffs' failure to comply with the Rule 34 has made it difficult for LNA to assess the responsiveness of the documents and the completeness of the responses.  Plaintiffs should be required to produce responsive documents labeled and organized according to the requirements of Rule 34.

### D.  Plaintiffs Should Be Ordered to Supply Proper Verifications

Fed. R. Civ. P. 33 requires that "each interrogatory" must be answered "separately and fully in writing under oath."  The plaintiffs have not verified their interrogatory answers.  Instead they have only verified that information they "supplied" in answering the interrogatories.  Thus LNA has no assurance that any plaintiffs have even read the interrogatory answers submitted by their counsel on their behalf.  Further, absent a proper verification, LNA has no assurance that the discovery responses accurately reflect the information "supplied" by the plaintiffs to their attorneys.  Plaintiffs should be ordered to provide proper verifications that affirm, to the fullest extent they are able, the substance of the interrogatory answers submitted by their counsel on their behalf.

---

[25] Rec. Doc. 6592 at 28.

**E.  Plaintiffs Should Be Ordered to Provide Adequate Responses to the Requests.**

Plaintiffs' responses to LNA's requests are deficient in many respects.  We here address those requests as to which LNA seeks to compel proper answers.

### *1.  Requests Concerning Facts, Contentions and Witness Identification*

**a)  Interrogatories Nos. 1 and 2:**  These interrogatories call for basic fact witness discovery, including the identities of persons who assisted in responding to the interrogatories (No. 1), and persons with relevant knowledge whom plaintiffs may use to support their claims (No. 2).   Other than a desultory (and meritless) work product objection to one of the two interrogatories,[26]

> INTERROGATORY NO. 1 states:
> Identify each person who was consulted or who provided information or who otherwise assisted in preparing plaintiffs' responses to the interrogatories, document requests, and requests for admissions served by LNA and the Zito entities.

Plaintiffs response of December 28, 2007 stated:

> ANSWER TO INTERROGATORY NO. 1:
>      Objection: attorney work product. Subject to and without waiver of any objections, and excluding the undersigned counsel:
>
> 1. Ethel Mumford, Michael Riche, Kismit Bourgere, Rico Terrence Sutton, Jimmie Harris, Bob and Dianne Glaser, Herman and Aida Koch, and Josephine Richardson.
> 2. Terry Adams (client of undersigned)
> 3. Christopher Weaver (client of undersigned)
> 4. Ronald McGill (client of undersigned)
> 5. Wilson Simmons (client of undersigned)
> 6. Arthur Murph (putative class member, depending upon nature of settlement with LNA)
> 7. William Villavasso
> 8. Maj. Pete Tufaro (putative class member)
> 9. Sal Gutierrez (putative class member)
> 10. James Ruiz (client of undersigned)

---

[26] Exhibit 4 at 5 (response to Interrogatory No. 1).

11. Sally Jones (client of undersigned)
12. R. Lee Wooten
13. Robert Bea
14. Ray Helmer
15. Don Green
16. Aurora Environmental
17. IPET
18. Team Louisiana
19. ILIT
20. United States Coast Guard
21. Johannes Vrijling
22. Paul Kemp
23. John Kilpatrick
24. www.weatherunderground.com,
25. Dan Mecklenborg
26. David Sehrt
27. Pankaj Shah
28. Patrick Morton
29. Stanley Cook
30. Greg Jarrell
31. David Williams
32. Pete Tassin
33. Gary Holman
34. Ed Vandermeulen
35. Ed Bush
36. Earl Smith
37. Richard Heck
38. Eric Thigpen
39. Raymond Grabert
40. Gerald McNeil
41. Barry Boudreaux
42. Rachael Burnett
43. Liskow and Lewis
44. Emmett, Cobb and Waits
45. Harris and Rufty
46. Goodwin - Proctor
47. Chaffe-McCall
48. Sutterfield and Webb
49. Charlie Lanier
50. Jim Reed (layperson, re 40 Arpent - 4025 Kings Dr., Chalmette, putative class member)
51. MRGO Plaintiffs' counsel

<u>Discussion</u>:    As can be seen, plaintiffs supply a laundry list of people who supposedly contributed information to the responses, including employees and attorneys of Lafarge and Ingram.  It appears that plaintiffs have attempted to mask the list of persons who actually assisted in plaintiffs' responses to these discovery requests by including a long list of persons who could not possibly have consulted with, provided information to, or otherwise assisted them.  Although Plaintiffs supplemented their response to Interrogatory No. 1 to add the names of plaintiffs in the *Lagarde*, *Benoit*, *Boutte*, and *Parfait* cases to the laundry list,[27] their response does not cure the defective response.   In addition, LNA is entitled to know whether any individual plaintiffs contributed to the responses, and if so, which ones.

> <u>INTERROGATORY NO. 2</u> states:
> Provide the name and, if known, the address and telephone number of each person (other than the individual plaintiffs themselves) who is likely to have discoverable information that plaintiffs may use to support their claim that the Barge ING 4727 caused damage to any plaintiff or member of the proposed class in this action.

Plaintiffs replied by stating:

> <u>ANSWER TO INTERROGATORY NO. 2</u>:
>     For the most part, plaintiffs have not made decisions as to which persons they may use as witnesses as to their claim that the barge was the cause of the damage to plaintiffs and their class. Plaintiffs have responded below as to those persons for whom plaintiffs have already made the decision that they may be called as witnesses on this issue of causation. Plaintiffs are reviewing information as to putative class members who did not evacuate.  Plaintiffs will comply with court orders concerning witness disclosure, and will supplement this answer when they reach decisions that particular persons may be used as witnesses on this question.
>
> 1. Dan Mecklenborg
> 2. David Sehrt
> 3. Pankaj Shah
> 4. Patrick Morton
> 5. Stanley Cook
> 6. Greg Jarrell

---

[27] Exhibit 10 at 4-5 (February 15, 2008 supplementary response to Interrogatory No. 1).

7. David Williams
8. Pete Tassin
9. Gary Holman
10. Ed Vandermeulen
11. Ed Busch
12. Earl Smith
13. Eric Thigpen
14. Raymond Grabert
15. Gerald McNeill
17. Arthur Murph (status as putative class member depends upon extent of Compromise with LNA)
18. William Villavasso
19. Maj. Pete Tufaro (resides in Arabi, is putative class member; contact information shown on plaintiffs' witness list)
20. Salvador Gutierrez, Esq. (has stated that he is putative class member; contact information shown on plaintiffs' witness list)
20. James Ruiz (client of undersigned)
21. Sally Jones (client of undersigned)
22. Carolyn Berryhill (has been deposed)
23. Clarence Sartin (effort has been made to depose him)
24. Kendrick Pounds (has been deposed)
25. Any and all persons identified during depositions of Arthur Murph, Carolyn Berryhill, Kendrick Pounds, and/or any and all other persons deposed or to be deposed. Plaintiffs have not yet determined which of such persons may be called, and will supplement according to law and applicable Case Management Orders and other orders of the Court.
26. Lt. Cmdr. Donald Green, USCG (Ret.)
27. Raymond Helmer, P.E.
28. R. Lee Wooten
29. Don C. Coker
30. Aurora Environmental Consultants
31. Ronald C. Kessler, Ph.D
32. John Kilpatrick
33. Hector Pazos, P.E.
34. Robert Bartlett, P.E.
35. Jim Reed (putative class member, 4025 Kings Dr., Chalmette, LA)
36. Any and all putative plaintiff class members, named class representatives, named plaintiffs (see the above explanation).
37. Any and all purported experts retained by other parties to this consolidated litigation (see the above explanation).
38. Any and all known to or identified by other parties (see the above explanation).
39. Any and all others yet to be determined (see the above explanation)
40. Any and all listed above in Answer No. 1.

Discussion:  In response to Interrogatory No. 2, plaintiffs supply no contact information (address or telephone number) for any of the persons identified in the response, even though this is called for in the request and specifically permitted by the rules.  See Fed. R. Civ. P. 26(a)(1)(A). Further, plaintiffs supply boilerplate references that block LNA from legitimate discovery of witnesses whom LNA must investigate or depose. For instance, plaintiffs' reference to "any and all putative class members" and "any and all known to or identified by other parties" provides no meaningful information.

     **b) <u>Interrogatory No. 23</u>:**   This interrogatory asks for all witnesses, facts, and documents that support plaintiffs' contention that the barge caused the northern breach in the IHNC floodwall.

> <u>INTERROGATORY NO. 23</u> specifically asks Plaintiffs:
> Do you contend that the barge ING 4727 caused or contributed to the northern breach of the IHNC retaining wall (near the pump station by the Florida Avenue Bridge)? If so, provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.

Plaintiffs' response states:

> <u>ANSWER TO INTERROGATORY NO. 23</u>:
>     Yes, Plaintiffs contend that the barge ING 4727 caused or contributed to the northern breach of the IHNC retaining wall (near the pump station by the Florida Avenue Bridge). The event was witnessed by William Villavasso, and heard by others.
>     Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.
>     In addition, please see the above responses.

Discussion: Plaintiffs' interrogatory response is inadequate.  Plaintiffs' response states no objections to the request, but provides no response other than that "the event was witnessed by

William Villavasso, and heard by others." To begin, plaintiffs should specifically identify the "others" who supposedly heard this event. To the extent that such individuals are identified elsewhere in plaintiffs' responses, they could easily have been specifically identified in this response to make clear who the supposed "earwitnesses" are. LNA is entitled to the identities of these individuals. Furthermore, if there are any facts or documents, these should be identified as well.

c) **Interrogatory No. 24:** This interrogatory asks whether plaintiffs deny that the actions of the United States Government caused or substantially contributed to the flooding in the Lower Ninth Ward and St. Bernard Parish, and, if so, asks for the basis of that contention.

> INTERROGATORY NO. 24 specifically asks**:**
> Do you deny that the actions or inactions of the United States Government, including the Army Corps of Engineers, caused or substantially contributed to the flooding in the Lower Ninth Ward and St. Bernard Parish? If so, provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.

Plaintiffs respond by stating:

> ANSWER TO INTERROGATORY NO. 24:
> Plaintiffs object to this request in that it calls for speculation, expert opinion, the mental impressions of counsel, and legal conclusions. Plaintiffs also object on the grounds of overbreadth and undue burden in that the subject litigation involves only portions of St. Bernard Parish.
> Yes, plaintiffs deny the matters subject of the Interrogatory, based upon first-hand accounts that the barge caused the flooding of the proposed class geography. Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.
> In addition, please see the above responses.

Discussion: Plaintiffs' response is inadequate. Though plaintiffs object that the request calls for "speculation, expert opinion, the mental impressions of counsel, and legal conclusions," the

request is simple contention discovery of the type specifically upheld by this Court.[28]  LNA is clearly entitled to learn the facts that support plaintiffs' hyperbolic contention that the barge alone is to blame for all of the flooding that took place in the Lower Ninth Ward and St. Bernard Parish.

Plaintiffs say only that they deny any Government responsibility "based upon first-hand accounts that the barge caused the flooding of the proposed class geography."  LNA is entitled to all details regarding these supposed first-hand accounts, including all witnesses, documents, and facts contained therein.

**d) Interrogatory No. 27**:  This interrogatory seeks information regarding plaintiffs' proposed trial plan in connection with class certification.

> INTERROGATORY NO. 27 asks Plaintiffs to:
> Describe in detail how this case can be tried as a class action, including an identification of all issues that plaintiffs propose to try to a single jury and a description of how plaintiffs propose to try, on a classwide or individualized basis, causation and damages as to each category of harm for which damages are sought in the complaint.

Plaintiffs' response states:

> ANSWER TO INTERROGATORY NO. 27:
> Plaintiffs object on the ground that this interrogatory seeks privileged attorney workproduct and the mental impressions of counsel.
> Subject to and without waiver of any objections, Plaintiffs state the following: Plaintiffs have not yet made final decisions on these topics, and will submit class certification pleadings and their detailed trial plan in accord with Court order and with proper input from the Court and from any other sources. To the extent that defendants wish to propose particular ideas to plaintiffs, plaintiffs will consider them. Further, Plaintiffs' proposed trial plan will require the selection of classes of Plaintiffs who adequately represent the Class.

---

[28] See, *e.g.*, Rec. Doc. 6592 at 17 ("Interrogatories seeking to flesh out the contentions of the parties are specifically permitted.").

Discussion:  Plaintiffs' response says they "have not yet made final decisions on these topics" and seeks input from the ***defendants*** if they "wish to propose particular ideas."  While we recognize that this Court refused to compel the MRGO plaintiffs to provide a more detailed response to a similar interrogatory,[29] their response and their class certification motion in that case provided at least ***some*** inkling of how the case was to be tried as a class action.  Particularly given the ambiguous comments proffered by plaintiffs in their memoranda and comments of counsel at the status conference on March 7, 2008 (i.e., simultaneously insisting on a class trial and embracing the concept of a "bellwether" trial), LNA is entitled to have some sense of plaintiffs' trial plan so that it can structure its ongoing case preparation accordingly.

   **e)**   **Request to Produce 19:** This request calls for production of documents concerning "narrative or eye witness accounts" of the events of August 28 and 29, 2005.  Plaintiffs' response to Request No. 19 is incomplete.

>   REQUEST FOR PRODUCTION NO. 19 seeks:
>   Any documents evidencing any accounts or communications about a barge or other object knocking, scraping or engaged in other contact against the IHNC floodwall or levee.

Plaintiffs' respond by stating:

>   RESPONSE TO REQUEST FOR PRODUCTION NO. 19:
>       Plaintiffs object to this request on the grounds of attorney work product. Subject to said objections and without waiving same, Plaintiffs respond as follows: All responsive, discoverable documents in plaintiffs' possession, not yet provided to requestors, are enclosed or will be provided by way of supplementation.

Discussion:  Plaintiffs represent that "discoverable documents in plaintiffs' possession … are enclosed or will be provided by way of supplementation."  But Rule 34 requires production of responsive documents in a party's "possession, custody, or control," not just those in their

---

[29] Rec. Doc. 6592 at 15-16.

"possession."   Further, plaintiffs have not identified which documents in their production correspond to this request.   Moreover, plaintiffs' evasive proffer of "all *discoverable* documents" suggests that they have some responsive documents that they consider to be not "discoverable" but have not identified those documents to LNA.   If plaintiffs are withholding *any* responsive documents on grounds of privilege or other protection, they must provide a privilege log in compliance with Fed. R. Civ. P. 26(b)(5) and supporting evidence.   Otherwise, LNA has no way of assessing the completeness of the response.

### 2.  *Requests Relating to Individual Plaintiffs' Claims and Alleged Injuries*

Because the scope of discovery is determined by the scope of the pleadings,[30] the Court must examine the complaint to determine what claims are asserted.   Here, the *Mumford* complaint sets forth *sixteen separate elements of damages* for which plaintiffs seek recovery in this case, including

* "past and future mental pain, suffering and anguish" and "mental health care expense";
* "wrongful death";
* "past and future loss of immovables and movables";
* "past and future expenses for demolition and salvage"
* "past and future loss and destruction of businesses and business assets";
* "past and future lost business opportunity;"
* and so on, including "any and all others proven."[31]  .

Other complaints provide various other formulations to describe the plaintiffs' claims.

LNA's interrogatories and document requests seek basic information about the claims asserted by the plaintiffs.   Plaintiffs have conceded that LNA is entitled to know what claims

---

[30] See Rec. Doc. 6592 at 3-4.
[31] Rec. Doc. 8779 at 13-14.

they are asserting.[32]  Plaintiffs' responses to LNA's interrogatories and requests for production, however, are incomplete and evasive.

      **a)**  **<u>Interrogatories 37, 40, and 41</u>:**  These interrogatories request basic information about plaintiffs' property damage, emotional distress, and wrongful death claims

> <u>INTERROGATORY NO. 37</u> asks Plaintiffs**:**
> If you claim damages for demolition, salvage or restoration of property, identify the person or persons who carried out the demolition, salvage or restoration, the dates on which it was carried out, and describe what was done and the costs incurred.

Plaintiffs' response states:

> <u>ANSWER TO INTERROGATORY NO. 37</u>:
>     Please see Sixth Supplemental Complaint in *Mumford*.
>     Plaintiffs claim damages to real property evaluated by expert analysis on a classwide approach, possibly performed by John Kilpatrick, unless a class is not certified, in which event plaintiffs reserve all of their claims for property damage. Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

<u>Discussion</u>:  Plaintiffs' response is improper.  If plaintiffs are asserting claims for demolition, salvage, and restoration of property, as they allege in their complaint and as many of them have affirmatively stated in supplemental responses to Interrogatory No. 26, then LNA is entitled to information about these claims.  In particular, LNA is entitled to all facts regarding the costs of demolition, salvage or restoration of real property alleged in the complaint,[33] including who carried out the demolition, when it was carried out, what was done, and how much it cost. Plaintiffs' supposed defense to this discovery – that their experts are still in the process of

---

[32] See Exhibits 6 and 10 (plaintiffs' supplemental responses to Interrogatory No. 26).  Two plaintiffs who otherwise responded to discovery, Donald Pritchett and Doris Shanks, did not respond to Interrogatory No. 26.  These two plaintiffs should be ordered to respond to this interrogatory.

[33] *Mumford* Sixth Amended Complaint, Rec. Doc. 8779, at 13.

dreaming up a shortcut to avoid scrutiny of the real, hard information sought by LNA – is no

excuse for avoiding this critical discovery.

INTERROGATORY NO. 40 asks Plaintiffs:
Do you claim damages in this case for emotional distress? If so, identify any medical,
psychiatric, or other professional who provided treatment and the dates of treatment.

Plaintiffs respond:

ANSWER TO INTERROGATORY NO. 40:
Plaintiffs claim damages for emotional distress and are considering the best trial plan
under which such claims could properly be resolved in a class action.
Plaintiffs will supplement their answer to this interrogatory.

On February 15, 2008, Plaintiffs' supplemented their response[34], stating:

ANSWER TO INTERROGATORY NO. 40:
All plaintiffs are claiming damages for emotional distress.
Kismit Bourgere submits in Supplemental Responses to Requests for Production
Social Security records containing information responsive to this Interrogatory.
Marenthia Lagarde has undergone treatment for physical symptoms of emotional
distress at a temporary clinic in the Red Cross Shelter in Greenville, Mississippi, and is
receiving ongoing treatment from Dr. E. LaBranch in New Orleans, Louisiana.

NOTE: The Plaintiffs' Subgroup Litigation Committee and individual counsel are
involved in cooperative efforts to obtain requested information, which is being acquired
and provided on a continuous supplementary basis, in accord with Lafarge's agreement to
receive supplementation on a rolling basis so long as defense counsel are provided
sufficient information to "chew on" and so as to permit Lafarge to engage in meaningful
discovery efforts. Plaintiffs will continue to uphold this agreement. Further, plaintiffs'
committee will provide additional named plaintiff verifications on the most reasonable
and timely basis possible, given that many, if not most, are still displaced and dependent
upon mail for transmittal of verifications, and must locate notaries public in their current
residential locations. Plaintiffs again reserve the right to supplement as information and
documents become available, and reiterate all objections, responses, statements and
disclosures made in prior discovery responses, to the extent not inconsistent with those
contained in ongoing supplementation.

---

[34] Exhibit 10 at 21-22, (February 15, 2008 supplementary response to Interrogatory No. 40).

Discussion:  Plaintiffs' response is improper.  LNA is clearly entitled to all facts concerning plaintiffs' emotional distress claims, including any medical, psychiatric or other treatment and the dates of such treatment, all of which is indisputably relevant, among other things, to plaintiffs' express request for "past and future mental health care expense."[35]  If plaintiffs are asserting claims for emotional distress, then they should say so and, further, identify any mental health care providers by whom they have been seen or state, in a properly verified response, that they have not sought treatment for such distress.

> INTERROGATORY NO. 41 asks Plaintiffs:
> If you claim damages for wrongful death, identify the decedent and circumstances of death, including the date, location, and cause of death.

Plaintiffs' response states:

> ANSWER TO INTERROGATORY NO. 41:
> Please see Sixth Supplemental Complaint. All decedents the subject of this litigation died as a result of the flooding made the subject of this litigation during its presence.
> Plaintiffs are considering the best trial plan under which such claims could properly be resolved in a class action.
> Plaintiffs will supplement their answer to this interrogatory.

Discussion:  Plaintiffs' response that "all decedents the subject of this litigation died as a result of the flooding made subject of this litigation" is precisely the sort of statement that calls for discovery to determine whether that statement it is true or not.  Plaintiffs must identify which persons are the "decedents" who are the "subject of this litigation" and provide details sufficient to enable LNA to evaluate their claims, rather than having to take plaintiffs' word as to the circumstances of death.  LNA is entitled to all facts supporting plaintiffs' wrongful death claims,

---

[35] *Mumford* Sixth Amended Complaint, Rec. Doc. 8779, at 13.

including the date, location, and cause of death.  Plaintiffs' interrogatory response supplies ***none*** of this critical information.

### b)  Requests for Production

Plaintiffs have failed to produce the responsive materials called for LNA's document requests, and have failed to properly identify what is responsive or to say, as to each individual plaintiff, that no responsive documents exist.  Although plaintiffs appear to have produced a paltry number of documents in response to some of the requests, there are gaping holes – for instance, no records of demolition, salvage, personal property loss, or medical/mental health costs.[36]  To the extent responsive documents exist, they are in the hands of the individual plaintiffs who are asserting these claims.  All of the plaintiffs have asserted claims on their own behalf, and none is merely an "absent class member."  Indeed, many of them purport to serve as class representatives.  The Court should order plaintiffs to produce responsive documents, or state for each individual plaintiffs that no such documents exist.  We address the specific requests for production below.

### i)  Requests for Production 17, 21, 24, 28, and 35 (property damage claims):

LNA's document requests seek basic background information regarding plaintiffs' claims, all of which are asserted individually by the plaintiffs who have filed claims in their own name against LNA.

> REQUEST FOR PRODUCTION NO. 17 requests:
> Any photos and other proof of damages and expenditures caused by flooding for which compensation is claimed in this case and provided by any person to proposed class counsel (see www.bargecase.com).

---

[36] Because plaintiffs have failed to comply with Rule 34 by identifying the requests to which their document production corresponds, LNA is unable to gauge the extent of plaintiffs' failure to provide complete responses.

Plaintiffs' response states:

RESPONSE TO REQUEST FOR PRODUCTION NO. 17:
    Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).  Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.  Plaintiffs also object to this Request for Production as it seeks information readily available to Defendants in the public domain.
    Subject to said objections and without waiving same, Plaintiffs respond as follows: Plaintiffs claim damages to real property evaluated by expert analysis on a classwide approach, possibly performed by John Kilpatrick, unless a class is not certified, in which event plaintiffs reserve all of their claims for property damage. Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Plaintiffs supplemented their response to this request as follows:

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 17:
    Plaintiffs object to the extent that the materials sought exceed those provided by named plaintiffs, in accord with Rule 37.1 conversations with Lafarge counsel, in which Lafarge agreed that despite the language contained in the request, Lafarge is entitled only to such information from named class representatives.
    Plaintiffs reiterate their original responses to the extent that all materials sought by the request that are in the possession, custody or control of named plaintiffs have already been provided.  Named plaintiffs are engaged in efforts to obtain additional materials, but such materials are scattered among various sources, are in various stages of decay and disorganiztion (sic) due to flooding and frequent movement about various evacuation locations. They are anticipated to include ownership, sale and transfer, documents, construction, salvage, remediation, renovation and repair records and invoices, work orders, damage estimates, and the like, if such are in the possession, custody or control of named plaintiffs.
    As the PSLC has explained to Lafarge, additional responsive information is being gathered as to named plaintiffs who are not direct clients of the PSLC, and will be provided upon receipt, as per agreement between the PSLC and counsel for Lafarge to accept ongoing supplementation, provided initial responses allow opposing counsel "something to chew on."
    To the extent that Lafarge deems insufficient the quality of photos thus far produced, Lafarge may arrange upon mutually convenient terms and at Lafarge's expense to inspect

and replicate offsite all named plaintiffs' photos currently in named plaintiffs possession, custody or control.

     Plaintiffs additionally reiterate their original response to Request No. 17

<u>REQUEST FOR PRODUCTION NO. 21 requests</u>:
Any documents evidencing or relating to damage to real property that you claim to have suffered and for which you seek compensation in this litigation, including but not limited to ownership records, records regarding reconstruction or reconditioning, and any sale or transfer records.

In response, Plaintiffs state:

     <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 21</u>:
     Plaintiffs claim damages to real property evaluated by expert analysis on a classwide approach, possibly performed by John Kilpatrick, unless a class is not certified, in which event plaintiffs reserve all of their claims for property damage. Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.
     Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).  Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.  Plaintiffs also object to this Request for Production as it seeks information readily available to Defendants in the public domain.
     However, attached hereto please find certain Plaintiffs' ownership records.

On January 24, 2008 Plaintiffs supplemented their response to Request for Production No. 21[37], stating:

     <u>SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 21</u>:
     Please see Supplemental Response to Request for Production No. 17, above.[38]
     Plaintiffs additionally reiterate their original Response to Request for Production No. 21.

---

[37] Exhibit 7 at 2-3, January 24, 2008 Supplemental Responses to Request for Production No. 21.
[38] Plaintiffs' supplemental response to Request for Production No. 17 states:
.

<u>Discussion</u>:  Plaintiffs' objections to LNA's requests are without merit.  Documents showing plaintiffs' ownership of the real property they claim was damaged, and showing the repairs, remediation and other costs they want LNA to pay, is not a matter for expert discovery.  Rather, that information exists, if at all, in the hands of the plaintiffs themselves.  LNA is entitled to documentation of the property damage claims asserted against it by the plaintiffs in this case.  For instance, LNA seeks, and is entitled to, documents which relate to plaintiffs' claims for the reconditioning and reconstruction of property, which are directly relevant to plaintiffs' express claims for "demolition and salvage."[39]  Each plaintiff should be required to produce the documents that support those claims, or to state that no such documents exist.  And as noted above, plaintiffs should be ordered to produce the documents as required in Rule 34, so that LNA is apprised of which documents are responsive to these requests.  If plaintiffs have already produced documents responsive to these requests, then those documents can be identified as required by Rule 34.

> <u>REQUEST FOR PRODUCTION NO. 24 seeks</u>:
> Any documents evidencing or relating to damage to personal property that you claim to have suffered and for which you seek compensation in this litigation, including evidence of title and value.

Plaintiffs' response states:

> <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 24</u>:
>      Plaintiffs have not alleged a claim for personal property in the Sixth Amended Complaint and, therefore, possess no documents responsive to this Request in the instant suit. However, if the class is not certified, Plaintiffs reserve the right to bring individual actions for all compensable damages.

---

[39] *Mumford* Sixth Amended Complaint, Rec. Doc. 8779, at 13.

SUPPLEMENTAL AND AMENDED RESPONSE TO REQUEST FOR PRODUCTION
NO. 24:[40]
    Named plaintiffs are in the process of gathering all requested information in their
possession, custody or control, to the extent it exists, and will supplement accordingly
when such information, if any, becomes available.
    This supplementation will be made to the extent that named plaintiffs are asserting
claims for loss or destruction of movable property. Plaintiffs additionally reiterate their
original Response to Request for Production No. 24.

Discussion:  To the extent that plaintiffs assert claims for damage to personal property in this

case, they should produce documentation to support those claims.   Plaintiffs' complaint

expressly asserts a claim for "past and future loss and destruction and damage to immovable ***and***

***movable*** property."[41]  Plaintiffs' supplemental responses to Interrogatory No. 26 make clear that

***every single representative plaintiff*** in Mumford is asserting a claim for loss or damage to

"moveable property."  Thus, plaintiffs' objection that they have "not alleged a claim for personal

property in the Sixth Amended Complaint" – reiterated in their supplemental response -- is

patently false.[42]

       REQUEST FOR PRODUCTION NO. 28 specifically requests:
    Any documents relating to tests of the property of any plaintiff or proposed class member
concerning the presence of pollutants on that person's property, pre- or post-Katrina.

Plaintiffs' response states:

       RESPONSE TO REQUEST FOR PRODUCTION NO. 28:
    Plaintiffs object to the request as premature. Plaintiffs will submit their expert reports
and/or witness lists and/or exhibit lists and/or other evidence and/or information which
Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this
matter pursuant to the Case Management Orders and scheduling deadlines set by the
Court.

---

[40] Exhibit 7 at 5, January 24, 2008 Supplemental Responses to Request for Production No. 24.
[41] *Mumford* Sixth Amended Complaint, Rec. Doc. 8779, at 13 (emphasis added).
[42] Indeed plaintiffs' repeated assertion of that objection, in light of the express language of their complaint and the
supplemental responses expressly asserting personal property claims, raises fundamental questions about the degree
of care and thought that was given to the responses as a whole.

Discussion:  Such discovery is clearly relevant and plaintiffs do not object, except that they say it is "premature" because the deadline expert discovery has not yet approached.  Arguably, test results for the named plaintiffs' property falls within the category of "fact discovery" rather than "expert discovery."  But if plaintiffs intend to withhold production of environmental test data on the basis that it constitutes expert discovery, then the Court needs to be aware that development of environmental evidence by LNA to rebut whatever showing plaintiffs may make, both as to class certification and on the merits, will require significant lead time.  If LNA is forced to wait until expert disclosures to learn the substance of plaintiffs' claims for environmental harm, then the plaintiffs and the Court must be prepared to grant LNA sufficient time to respond to those claims, including whatever time is needed for LNA's environmental experts to address them through work of their own.

REQUEST FOR PRODUCTION NO. 35 seeks:
Any documents relating to real property for which damages are sought by the proposed representative plaintiffs, including but not limited to ownership records, documents evidencing liens, mortgages, or other similar interests in such property, and appraisals or evaluations of such property at any time.

In response, Plaintiffs' state:

RESPONSE TO REQUEST FOR PRODUCTION NO. 35:
Please see Response to Request for Production No. 21.

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 35:[43]
As stated above, named plaintiffs who have not already provided these items in their possession, custody or control, are engaged in efforts to obtain and provide those in their possession, custody and control, and will do, subject to the difficulties and delays described above. Named plaintiffs are making their best efforts to comply in good faith.
Additionally, plaintiffs reiterate their original Response to Request No. 35.

---

[43] Exhibit 7 at 6-7, January 24, 2008 Supplemental Responses to Request for Production No. 35.

<u>Discussion</u>:   Plaintiffs' response to this request is inadequate.   Plaintiffs should be required to

identify which document they have produced are responsive to this request and, for those who do

not possess any documents, should so state<u>.</u>

    **c)   <u>Requests for Production 22 and 23 (emotional distress and personal injury)</u>:**

<u>REQUEST FOR PRODUCTION NO. 22 requests</u>:
Any documents relating to emotional distress that you claim to have suffered and for
which you seek compensation in this litigation, including medical records regarding the
alleged condition(s) or injur(ies) and any records regarding the same or similar conditions
that preexisted August 29, 2005.

Plaintiffs' response states:

    <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 22</u>:
        Plaintiffs claim damages for emotional distress and are considering the best trial plan
under which such claims could properly be resolved in a class action.
        Plaintiffs will supplement their answer to this request for production.

    <u>SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 22</u>:[44]
        Requests have been made for named plaintiffs' documents responsive to the request,
and will be provided upon receipt.
        Additionally, plaintiffs reiterate their original Response to Request for Production No.
22.

    <u>REQUEST FOR PRODUCTION NO. 23 states</u>:
Any documents relating to any personal injury other than emotional distress that you
claim to have suffered and for which you seek compensation in this litigation, including
medical records regarding the alleged condition(s) or injury(ies) and any records
regarding the same or similar conditions that pre-existed August 29, 2005.

In response, Plaintiffs state:

---

[44] *Id.* at 4.

29

RESPONSE TO REQUEST FOR PRODUCTION NO. 23:
     None of the named plaintiffs other than Josephine Richardson is asserting a claim for personal injury for anything other than emotional distress.
     Plaintiff Josephine Richardson is asserting a wrongful death claim as a surviving spouse.  Her claim is described in detail in the Sixth Amended Complaint in *Mumford*.
     Plaintiffs will supplement their answer to this request for production.

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 23:[45]
     Named plaintiffs are not at this time seeking damages for personal injuries - other than emotional injuries - which did not result in death. Named plaintiffs are pursuing wrongful death claims. Those named plaintiffs other than Josephine Long Richardson pursuing wrongful death claims are in the process of gathering documents responsive to the request, and are subject to all delays inherent in the processes of obtaining records from health care providers, Office of Vital Records, Coroners' Offices, funeral and burial organizations, and will provide responsive supplementation as soon as it is available.
     Named plaintiffs, and all others, reserve the right to seek compensation for non-fatal personal injuries should an appropriate class not be certified by the Court.
     Plaintiffs additionally reiterate their original Response to Request for Production No. 23.

Discussion:  Plaintiffs' responses are inadequate.  All plaintiffs who assert a claim for mental distress should be required to produce the documentation underlying those claims.  Plaintiffs' responses appear to recognize as much, but production of responsive documents is lacking. Plaintiffs should produce responsive documents or state that none exist.   With regard to personal injury claims, plaintiffs should produce documents that support their claims or verify that they are waiving, and not asserting, any such claims.[46]

**d)  Requests for Production 25 and 26 (business loss and lost income):**

REQUEST FOR PRODUCTION NO. 25 states:
Any documents relating to businesses for which lost income is sought, including financial statements and documents reflecting income and expenses, both pre- and post-Katrina.

In response, Plaintiffs' state:

---

[45] *Id*.
[46] This would require, at a minimum, a properly-verified response to LNA's Interrogatory No. 26 without any purported reservation of the right to assert additional elements of damages at some later time.

RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

     Plaintiffs, Michael Riche, Rico Sutton, Jacob and Dianne Glaser, and Herman and Aida Koch, claim damages for lost income, to be evaluated by expert analysis on a classwide approach, possibly performed by Don Coker, unless a class is not certified, in which event plaintiffs reserve all of their claims for property damage.

     Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

     However, attached hereto please find certain Plaintiffs' business records. Plaintiffs anticipate ongoing supplementation as they retrieve or salvage records from their damaged property.

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 25:[47]

     Named plaintiffs are engaged in ongoing efforts to locate any additional responsive materials in their possession, custody or control, if such exist, but as stated above, said materials may be scattered, destroyed or otherwise unavailable, and are believed in good faith to have already been produced by those named plaintiffs who have already responded. Counsel for named plaintiffs are engaged in requests for IRS tax information, leases, books, ledgers, etc., and expect to provide same when received.

     Plaintiffs additionally reiterate their original Response to Request No. 25.

REQUEST FOR PRODUCTION NO. 26 states:

Any documents evidencing or relating to any claim that a named plaintiff is asserting for lost wage income or lost rental income, including wage or income records pre- and post-Katrina.

Plaintiffs' response states:

RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

     Please see Response to Request for Production No. 25.

SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION NO. 26:[48]

     Please see Supplemental Response to Request for Production No. 25, above.

Discussion:  LNA is entitled to production of financial statements and other business records

relevant to claims of lost profits or lost income (Requests 25 and 26), all of which are directly

---

[47] *Id*. at 5-6.
[48] *Id*. at 6.

relevant to their claims of "loss and destruction of businesses and business assets." These requests seek fundamental records of a type that go to the heart of the plaintiffs' claims.

### Conclusion

LNA respectfully asks the Court to compel all plaintiffs to: (a) immediately provide responses as to all individual plaintiffs that have sued LNA, not just the *Mumford* proposed class representatives, as required by CMO #5; (b) immediately supply a privilege log that complies with Rule 26(b)(5), together with necessary supporting evidence; (c) comply with Rule 34 as regards the production of documents organized to respond to the requests; (d) supply properly-verified interrogatory responses; and (e) compel plaintiffs to respond to LNA's interrogatories and document requests as set forth above.

Respectfully submitted,

   /s/ Derek A. Walker
Robert B. Fisher, Jr., T.A. (# 5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
fisher@chaffe.com
walker@chaffe.com

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone: (504) 598-2715

John D. Aldock
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, NW

Washington, DC 20001
Telephone: (202) 346-4240

**ATTORNEYS FOR**
**LAFARGE NORTH AMERICA INC.**

<u>**Certificate of Service**</u>

I do hereby certify that I have on this 18th day of March, 2008 served a copy of the

foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ Derek A. Walker

33