1       UNITED STATES DISTRICT COURT
        EASTERN DISTRICT OF LOUISIANA
2 ****************************************************************

3 IN RE:  KATRINA CANAL BREACHES
  CONSOLIDATED LITIGATION      Docket No. 05-CV-4182
4                 New Orleans, Louisiana
                 Tuesday, January 29, 2008
5
  PERTAINS TO:  ROAD HOME
6 ****************************************************************

7

       TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
8     HEARD BEFORE THE HONORABLE STANWOOD R. DUVAL, JR.
        UNITED STATES DISTRICT JUDGE
9

10 APPEARANCES:

11 FOR THE PLAINTIFFS:     FAYARD & HONEYCUTT
             BY:  CALVIN C. FAYARD, JR., ESQ.
12           519 Florida Avenue Southwest
             Denham Springs, LA 70726
13
             CUMMINGS, CUMMINGS & DUDENHEFER
14           BY:FRANK C. DUDENHEFER, JR., ESQ.
             416 Gravier St.
15           New Orleans, LA 70130

16           RANIER, GAYLE & ELLIOT, LLC
             BY:  DREW A. RANIER, ESQ.
17           1419 Ryan St.
             P. O. Box 1890
18           Lake Charles, LA 70602-1890

19           DUGAN & BROWNE
             BY:  JAMES DUGAN, ESQ.
20           650 Poydras Street, Suite 2150
             New Orleans, LA 70130
21
             MURRAY LAW FIRM
22           BY:  STEPHEN B. MURRAY, ESQ.
             650 Poydras St., Suite 1100
23           New Orleans, LA 70130

24           PAUL G. AUCOIN, ESQ.
             134 Goodwill Plantation Rd.
25           Vacherie, LA 70090

```
 1                                    DOMENGEAUX, WRIGHT, ROY & EDWARDS
                                      BY:   JAMES P. ROY, ESQ.
 2                                    P. O. Box 3668
                                      556 Jefferson St.
 3                                    Lafayette, LA 70502-3668

 4        `                           MCKERNAN LAW FIRM
                                      BY:   J.J. (JERRY) McKERNAN, ESQ.
 5                                    8710 Jefferson Hwy.
                                      Baton Rouge, LA 70809
 6
                                      GAINSBURGH, BENJAMIN, DAVID,
 7                                    MEUNIER & WARSHAUER
                                      BY:   TODD R. SLACK, ESQ.
 8                                    1100 Poydras Street, Suite 2800
                                      Energy Centre
 9                                    New Orleans, LA 70163-2800

10                                    BRUNO & BRUNO
                                      BY:   JOSEPH M. BRUNO, ESQ.
11                                    855 Baronne Street
                                      New Orleans, LA 70113
12
13   FOR THE DEFENDANT:               LUGENBUHL, WHEATON, PECK,
                                      RANKIN & HUBBARD
14                                    BY:   RALPH S. HUBBARD, ESQ.
                                      601 Poydras Street, Suite 2775
15                                    New Orleans, LA 70130

16
17   Official Court Reporter:         Karen A. Ibos, CCR, RPR, CRR
                                      500 Poydras Street, Room HB-406
18                                    New Orleans, Louisiana 70130
                                      (504) 589-7776
19
20
21        Proceedings recorded by mechanical stenography, transcript
     produced by computer.
22
23
24
25
```

P R O C E E D I N G S

(TUESDAY, JANUARY 29, 2008)

(STATUS CONFERENCE PROCEEDINGS)


THE COURT:  Call the matter in the case before us as a status conference.

THE DEPUTY CLERK:  Yes.  Civil action 05-4182, in re: Katrina Canal Breaches Consolidation, pertains to Road Home, Reference No. 07-5528.

THE COURT:  I called this conference, I appreciate you being here.  First to let you know that on I think January 22nd I signed the order allowing the brief to be filed in excess of 25 pages, with a note which I thought I had done earlier but it's hard to keep track in this case, please do not ask to exceed the page limit again unless you -- don't submit the 40 or 30 page or 50 page brief with it because then I am tempted to edit it and say, oh, no, I don't really need to see this much.  So you might tell me your need for it beforehand.  If I get one in the future where it's already done, I'm going to deny it.  I am going to try to issue a standing order on the web page, if we ever get time to do that.

But I granted it nonetheless, but because of a -- electronically the manual attachment, mainly me, made an error and so it did not get docketed.  I deleted it rather than sending it to the clerk's office.  So I signed it today, basically the same thing, I just had to recreate it and sign it again.  So it's been signed.

1       Okay.  I am going to tell you, I think the best way --
2  this is a status conference so we are not here to talk about the
3  merits of the motion to disqualify.  Just to go over a few things
4  and then get input from you.

5       First, let me disabuse anyone of the notion that I have
6  recused.  There was a motion, a pleading filed, may have been a
7  motion, to supplement by Mr. O'Dwyer in document No. 10646-6
8  proposed order that has a footnote:  "Movers aver that the Honorable
9  Stanwood R. Duval, Jr. is recused from the above-styled and numbered
10 causes."  That was filed on January 21st, and Mr. O'Dwyer may have
11 been under the impression that because of his 144 affidavit that I
12 was automatically going to be recused.  I will not recuse and found
13 the affidavit neither timely or sufficient, so I have not recused.

14      There has been another motion filed by Mr. O'Dwyer to
15 recuse, and that was filed yesterday.  I have not yet ruled upon it,
16 but for the purposes of this status conference we can assume that I
17 am not recused.

18    That recusal relates to my friendship with Mr. Fayard who is
19 involved in these, the Katrina umbrella as well as this motion, of
20 which I disclosed at the beginning of this monster.  There's many
21 things in there, I don't want to characterize it.  The other is the
22 relations with the State, Mr. Fayard and the court's rulings,
23 reference Mr. O'Dwyer and sanctions against Mr. O'Dwyer, et cetera.
24 So far as I know there has been no other motion to recuse filed by
25 any other attorney, other than Mr. O'Dwyer.

1       So just to get that clear because there are things in the

2  record that could be confused.

3       One of the things I wanted to talk about is one of, I

4  think the primary task of this district judge who has agreed to

5  undertake this umbrella whose already been through a recusal motion

6  that the writs were taken to the Supreme Court, to as much as

7  possible being thorough and comprehensive at the same time

8  expeditious -- and I hate to use the word expeditious because we

9  haven't been particularly expeditious, but we've done the best we

10  can -- is to get substantive stuff out.  Right now the levee opinion

11  on the 702(c) immunity for those of you who are interested should be

12  out this week.  I've got to look at it again tonight and that may

13  entail a little delay again, but it's coming.  It's not -- these

14  things take time because there's a lot of history and there are

15  significant opinions and they take time.

16       In the que, and I've tried to tell everyone that I am

17  trying to do thing as they come along in the que; that is, I've got

18  the dredging, the dredgers' motions, the motion to dismiss, I mean I

19  have a lot.  We have 50, 60, 70 motions, but significant -- all of

20  them are significant, but the motion on the dredging case and then

21  the Robinson case which is a significant case, 702(c) immunity

22  referencing the MR-GO, that won't be coming out forthwith, but I've

23  got thousands of documents to read in that case before the hearing

24  on the 702(c) immunity on the summary judgment hearing, which are

25  cross motions.  So there is a lot for this court to do in addition

1   to a three week trial, criminal trial coming up the 19th.

2           So I am trying to arrange all of this, and the reason

3   you're hearing my reasons is I know all of you have yours, is to,

4   one, I need to know how -- this is set for the 20th, but how exigent

5   is it?  Because it's going to take the court's resources to spend

6   the time to decide it.  I have reviewed briefly the mover's brief.

7   It is, to be fair, it is an issue that I raised with liaison counsel

8   only in a sense that I'm concerned about a potential conflict and we

9   need to figure out how we're going to address this.  I was hoping to

10  have a status conference, I have the new Attorney General here, I

11  had counsel before any motion was filed and see what the situation

12  was and explain my concerns.  But here we are, a motion is filed and

13  we're going to have to deal with it.

14          So when it's your turn, I am interested in how exigent and

15  how quickly do you think the court needs to dispose of this matter?

16  Understand it takes time away from other things we're working on.

17  It's not like we're doing remands on whether the jurisdictional

18  amount of $75,000, it is extremely complex matters we're dealing

19  with.

20          I am also interested in the position of the newly elected

21  Attorney General in this matter.  And there are some constitutional

22  issues raised in the alternative arguments, which seem to be more

23  dense than the outright conflict issue.  In other words, there is

24  the conflict issue, without going into the merits, how can attorneys

25  for plaintiffs in class actions also represent the State, the

1    tension between the Road Home assignment, et cetera, we know that.

2    And then there is the other arguments about not going through all of

3    the hoops with the AG and then their constitutional arguments about

4    these and other things.  So I am not sure what -- I would like to

5    hear from the Attorney General about is the 20th sufficient time to

6    direct those -- direct himself to those matters, assuming the court

7    even gets to those as an alternative argument.

8              And then I wanted to raise -- one of the purposes for this

9    conference, too, is to let you know how concerned I am about the

10   people and the clients, the plaintiffs and the defendants, not just

11   the lawyers.  But the plaintiffs and the defendants in this giant

12   matter and how we get it resolved incrementally but how we move

13   towards resolution.  And that's my task to try to manage this so

14   that it does.  Or get it to the Court of Appeals.  And I am

15   concerned about forgetting who the attorneys are on the Road Home

16   suit, let me just --

17             One of my concerns -- and I don't know if this is the time

18   and the place to discuss it but you feel free to discuss it, it's a

19   status conference and we are not discussing the merits of anything.

20   I am concerned about we have jurisdiction over the State in this

21   case only because I held that CAFA applied.  That's on appeal.  And

22   that's the way Judge Wilkinson's utilized to try to establish a

23   protocol.  What about all of these cases that are settling?  And

24   many involve people who have applied, some who have received and who

25   may receive Road Home recovery money.  So how do we -- and you have

1   a lot of those suits in state court.  How is this going to be

2   managed?

3          How does the poor smuck whose house is flooded who just

4   wants to settle, I want to settle, my insurer and I have agreed,

5   but, wait, what about this Road Home.  Do I take a chance and hope

6   they won't find me?  What are the obligations of various attorneys,

7   it's not an intervention.  There are courts all over New Orleans and

8   elsewhere, I don't have any jurisdiction over that.

9          So I am hoping that we can all -- we, you, the "we" is

10  only here because Judge Wilkinson spent some time with some of you

11  working out a protocol because we happen to have jurisdiction over

12  the State now.  The Court of Appeals may reverse me and say we

13  don't, that CAFA doesn't apply.  Then I don't know where we are with

14  any of this stuff frankly.  But I am real concerned and everybody

15  needs to be thinking who cares about getting this thing fairly

16  resolved, people are settling and there are a lot of cases in other

17  divisions of this court where the State is not even involved.  I

18  don't know what they're doing in reference to the Road Home, whether

19  it's settled pending approval from the Road Home, whether how much

20  is going to be allocated to the State.  I am calling it the State.

21  It is a giant mess that requires a lot of thinking and management.

22         But separate and apart, whoever the attorney is for the

23  State, it's just something that's on my mind and I thought this

24  would be a good forum for me to voice my concerns.  And I know we

25  have some fertile, creative and excellent minds out there who can

1   ultimately assist the court, and courts, in coming up with a

2   protocol.  Don't forget the only reason we're able to cajole the

3   State at all is because they're here right now by virtue of removal.

4   And there are a lot of cases where the State is not involved at all

5   and cases not in the umbrella, state court and in other divisions of

6   the court, and I am not sure how the settlements are all being

7   accomplished.

8        Some of them don't involve Road Home participants.  Some

9   of them may opt out and say I withdraw my application, I don't want

10  any Road Home money now.  But we have a lot of people who did get

11  Road Home money and a lot of people who may still get Road Home

12  money.  All of you know more about that than I do.  So that's one of

13  my concerns.

14       And those are really the things that I wanted to touch on

15  broadly and then hear from you.

16       And further the 20th, this has been set for the 20th.

17  Does that give everybody enough time?  And I am kind of interested

18  in the length of the hearing.  The 20th is the second day of the

19  Impastato trial because the 19th we have a Presidents Day, then we

20  start the Impastato trial, so I am interested in how long this is

21  going to take because I have a three week criminal trial.  This

22  couldn't come at a worse time.  We all have those problems.  Which

23  is ostensibly a three week criminal trial.

24       So I am thinking about do we set a special hearing, are we

25  going to have any evidence in this thing, or is it just going to be

1    taken on the papers with oral argument?  And I kind of wanted to

2    hear from all of you, not about the merits, we are going to hear

3    about the merits when we take it up.  And I have read -- I

4    haven't -- I don't even know if a response has been filed, I don't

5    think so.  I've only read the papers of the movers.

6         Mr. O'Dwyer also has a motion to disqualify as well, filed

7    separately from yours.  That's been set for the 6th, but I am not

8    obviously going to decide it until I hear all of it, assuming

9    non-recusal.

10        Okay.  Anybody want to take it up?

11        MR. FAYARD:  Calvin Fayard for the State.  Who would you

12   like to go first, the movers or anyone?

13        THE COURT:  I have no particular order so whatever you

14   feel.  I am really kind of interested -- maybe the movers about how

15   exigent this is, maybe Mr. Hubbard first.

16        MR. HUBBARD:  May it please the court, Ralph Hubbard,

17   liaison for the defendants.  Let me begin by saying, of course this

18   is a status conference in the Attorney General suit, so Mr. O'Dwyer

19   is not a counsel of record in that suit.  I know you understand

20   that, I just want the record to be clear.

21        THE COURT:  Right, right.

22        MR. HUBBARD:  And his pleadings that he has filed are

23   completely separate and apart from us, he is not part of our defense

24   team.

25        THE COURT:  Right.  I just wanted to make sure there was

1   no confusion about my recusal.

2        MR. HUBBARD:  Exactly.  And we have not filed such a

3   motion as you pointed out.

4        With respect to the timing, and I may have some other

5   remarks about the overall status of things that you've indicated

6   some interest in, but based on the feedback that I have from our

7   clients out there, which are about 210 different companies, nobody

8   is interested in telling you how to run your docket; but at the same

9   time I think that it is their opinion that this is a matter that

10  needs to be dealt with, you know, in due course.  I mean, I think it

11  would be their position generally to try to keep the hearing date of

12  February 20th, assuming that that's possible.

13        I also think that, and I realize that you have not gotten

14  to the bottom of all of this --

15        THE COURT:  No, sir.

16        MR. HUBBARD:  -- and I wouldn't expect that you would

17  have, this is just a status conference, but my view of it and I

18  think the people that were largely involved in the writing of the

19  motion and all's view would be that this is principally a legal

20  question, it's not something that we would anticipate right now

21  would require witnesses and take up a lot of the court's time.

22        THE COURT:  That would make a difference to me and that's

23  one thing I wanted to clear up.

24        MR. HUBBARD:  That's certainly our view.

25        THE COURT:  Especially with a criminal trial which takes

1   primacy civil matters in federal courts.

2          MR. HUBBARD:  Well, I mean, I would anticipate that this

3   could be argued in the normal amount of time that you allot for

4   arguments.  I mean, we didn't spend that many hours talking about

5   the water damage exclusion, and I think that this is something that

6   could be taken up in less time.

7          THE COURT:  I would hope so, I would hope so.

8          MR. HUBBARD:  And I think that the evidence, the principle

9   evidence that was attached to the brief and so it's in the record,

10  and, I mean, maybe some of it needs to be offered into evidence at

11  the hearing, but it's not like we're going to have to put a witness

12  up there and be examination and cross-examination and keep you here

13  for a day or two.  That's not our view of it, I am not sure exactly

14  what the Attorney General's side of the coin would reflect.  They

15  may have a different view of things.

16          One of the reasons why this is important is because we do

17  need to keep the train moving down the track.  We are making some

18  progress on the protocol, I think a substantial amount of progress;

19  and of course the only people that are affected by this are those

20  who have actually closed with the Road Home; but there's more people

21  every day that fall into that category and you are talking about, I

22  don't know, 50,000 people, a number of whom have settled and a

23  number of whom haven't.

24          But my appreciation of how that is working is that

25  everybody is trying to do the settlement subject to approval by the

```
 1   Road Home, and there are people here like Mr. Bruno who are on the
 2   other side of the bench who could tell you about how they're doing
 3   in that respect.
 4          But we're certainly working hard.  It's been frustrating I
 5   think for both sides, but the lawyers that we're currently dealing
 6   with right now and our team have been working very hard on getting
 7   together a protocol with the assistance of Judge Wilkinson; and
 8   we've made substantial progress there, and I would hope that
 9   whatever he's able to draft, you know, with us or that we're able to
10   craft with his assistance would be something that would be applied
11   to the state court suits.  I mean, I would hope that the Road Home
12   would take that attitude certainly, and that the state court judges
13   would adopt it if need be.
14          So none of this, I think, is going for naught, I think
15   that -- it's been a very time consuming process.  I wish we could
16   have done more in a shorter period of time, but that's life.
17          THE COURT:  I certainly understand that.
18          MR. HUBBARD:  Everybody maybe is doing the best they can.
19   But I think that for the average person out there who is trying to
20   get their case settled, there is an opportunity that we're very
21   close to having the machinery in place so that they can get a pretty
22   rapid turnaround from the Road Home with respect to approval and
23   move on down the road.  I mean, we would be interested in, you know,
24   perhaps trying to find some way to cut this Gordian knot.  We would
25   be interested -- we haven't heard from the new Attorney General
```

1    either exactly what his view of this litigation is.

2              THE COURT:  Exactly.  I'm curious.

3              MR. HUBBARD:  And we would certainly invite the

4    opportunity to see if there is something.  At the beginning of this

5    case we thought that the mere agreement by the carriers to put the

6    Attorney General's name on a check if it was somebody that had

7    involvement with the Road Home would satisfy the State and satisfy

8    the litigants, but that is not proven to be the case.  But, you

9    know, maybe we can take a new look at that.

10             THE COURT:  Okay.  Thank you, Mr. Hubbard.

11             MR. HUBBARD:  That said, we would be glad to comment

12   further, and there may be others who could give you more details

13   after we hear from the plaintiffs.

14             THE COURT:  Sure.  Okay.  This is a free flowing

15   conference.  I have a robe on and we're in the courtroom, but look

16   at the number of people, it would be hard to do it in my conference

17   room and that's why we're here.

18             MR. FAYARD:  Good afternoon, your Honor.  Am I take it

19   Mr. Hubbard is speaking for all of the 210 or 20 companies that

20   signed off on this motion, or do you want me to sit down until

21   everybody in the courtroom gets their say?

22             MR. HUBBARD:  I don't think anybody's come forward to

23   offer it.  You go right ahead, Mr. Fayard.

24             MR. FAYARD:  All right.  Thank you.  Judge, I just wanted

25   to say a brief word of introduction.  I was not present at the

1    status conference that was held on the Monday after Thanksgiving and

2    after Arkansas beat LSU.  Mr. Bruno was present by phone,

3    Mr. Hubbard was present in person.  The minute entry I saw and the

4    telephone conference I had with Mr. Bruno did not indicate that

5    there was any issue with respect to perceived conflict or concern

6    about Road Home.

7         Based on that I would like to request that we be present

8    at any future status conferences concerning that issue.  The first

9    we heard of this was over a month later in January when this motion

10   was filed.  Since that time we have complied with the court's orders

11   by appearing here and by looking into the issues, and we are more

12   than prepared to discuss that today.

13        But I would like to make a few introductions first so that

14   the court knows who is representing whom, and also so the court will

15   have an opportunity to speak with the representative of the new

16   Attorney General.

17        And a little delay with regard to the mechanics.  These

18   issues have been prevalent throughout the Road Home process from day

19   one.  The suit in our view did not bring this and we are more than

20   prepared to lay that out to you.  The day this suit was filed,

21   copies were hand delivered to the defendants.  I made a phone call

22   to Mr. Hubbard in his capacity as liaison counsel requesting a

23   meeting to resolve the very issues that are being discussed before

24   the magistrate judge even now.

25        So we worked very diligently, and I have to say the

```
 1   defendants have also.  I see this as an impediment to this
 2   litigation, I see it without merit, and if they want to rest on the
 3   pleadings I think we can move for a summary judgment right now.
 4           However, in order to be fair, I'm sure the court would
 5   want to hear more information from us, as well as from the
 6   defendants, about the merits and the background of these what we
 7   consider to be extremely serious allegations, not only with respect
 8   to the lawyers involved but with respect to the State of Louisiana.
 9   The previous AG stepped down or was defeated during this process.  A
10   new AG was sworn in and we would like to start out by introducing
11   his representatives who are in this courtroom today, and willing and
12   prepared to discuss any issues with the court with respect to the
13   Attorney General's office.  Mr. Usry.
14           MR. USRY:  May it please the court.  Your Honor, my name
15   is Allen Usry here on behalf of the Attorney General's office as per
16   your order, and along with me is Wade Shows, also representing the
17   Attorney General.
18           THE COURT:  Thank you, sir.
19           MR. FAYARD:  Your Honor, I would also like to introduce
20   additional Road Home counsel.  We'll start with Mr. Dudenhefer.
21           MR. DUDENHEFER:  Your Honor, good afternoon.
22           MR. RANIER:  Good afternoon, your Honor.  Drew Ranier from
23   Lake Charles.
24           MR. DUGAN:  Good afternoon, your Honor.  James Dugan on
25   behalf of the State.
```

1          MR. MURRAY:  Good afternoon, your Honor, Stephen Murray

2     from New Orleans.

3          MR. AUCOIN:  Good afternoon, your Honor, Paul Aucoin for

4     the State.

5          MR. ROY:  Jim Roy for the State, your Honor.

6          MR. McKERNAN:  Jerry McKernan for the State.

7          MR. SLACK:  Todd Slack of behalf of John Houghtaling on

8     behalf of the State.

9          MR. FAYARD:  And since Mr. Hubbard pointed out Mr. Bruno,

10    he is also present in the courtroom in his capacity as liaison

11    counsel.

12          So, your Honor, I think we're prepared with individuals

13    here at this status conference that would be more than happy to

14    respond to the judge's inquiry, which I think is very appropriate.

15    We're willing to talk about timing, we're willing to talk about

16    whatever the court wishes --

17          THE COURT:  Timing is a big thing I'm really interested

18    in, whoever is going to speak to that.

19          MR. FAYARD:  And our lawyers will do that.  And we're

20    also, however, our prime goal is not to impede the defense's

21    willingness to settle with these victims of Katrina two and a half

22    years after the storm.  We told them that from day one, we do not

23    want to impede any of that progress whatsoever, and we will not take

24    any position that will impede.

25          With that, your Honor, I would like to introduce Mr. Rick

1   Stanley who will speak first and then Mr. Uddo will follow.

2          THE COURT:  Okay.

3          MR. STANLEY:  Good afternoon, Judge.  Rick Stanley here.

4   I've enrolled for six members of the PSC, and let me address your

5   Honor's issues regarding the timing of this motion.

6          THE COURT:  That's my primary concern.

7          MR. STANLEY:  I've only been enrolled, as your Honor

8   knows, for a couple of days.  I have had an opportunity, I believe,

9   for a week or so to look at this motion.  It's my understanding that

10  this issue first came up, at least in thought, in late November and

11  of course the motion was filed just a week or so ago or two weeks

12  ago.  So there was a substantial delay between the time that this

13  issue arose and the time the motion came.  So I don't know that

14  there is a great deal of hurrying in the sense of getting this in

15  front of the court.

16         Two things with respect to the timing.  There is some

17  logic, your Honor, in waiting to hear this motion until the Fifth

18  Circuit decides the remand issue, because if the court reverses your

19  Honor and sends us back to state court, then of course this will be

20  an issue that'll have to be tussled with in the state court with the

21  state system rather than in federal court.  So some logic to that,

22  not necessarily the best solution.

23         THE COURT:  All reversals don't make me cry.  Go ahead.

24         MR. STANLEY:  Secondly, your Honor, just with respect to

25  as a practical concern.  We would be in favor of at least a short

1  delay in hearing the motion to give us an opportunity to fully come

2  up to speed with the arguments that have been made.  There are a

3  number of exhibits attached to the motion.

4          I would tend to agree with Mr. Hubbard that there is

5  no need for live testimony, but there may be a need on our side to

6  find some exhibits to set some of those exhibits in context.  Some

7  of those things are drawn out of a record of the case and it may be

8  helpful to have those things put in context for the court and

9  address some of those arguments.  February 20th, especially given

10 the upcoming festivities in our city, it is going to be difficult to

11 get people focused and working on those issues.

12         So as a secondary matter, while I think there is some

13 logic to even waiting for the Fifth Circuit to rule, we would

14 certainly advocate for a short delay just as a practical matter to

15 let us come up to speed.

16         With respect to the protocol, I don't pretend, your Honor,

17 to be an expert on the protocol issues, but I see no reason why the

18 protocol issues cannot move forward while we're briefing and getting

19 ready to hear this motion.

20     THE COURT:  And I understand on the protocol as well the

21 people with the Attorney General's office are also working with

22 Judge Wilkinson as well as the attorneys for the defendants and the

23 private firms who are involved as well.

24     MR. STANLEY:  That's exactly right.  So I would see no

25 reason why that process cannot move forward while we're getting this

```
1    set for hearing.
2         THE COURT:  Obviously we all come from different vantage
3    points, that's one of my main concerns, because part of our job is
4    to get resolution and resolution we don't want it slowed up if we
5    can all -- in any way avoid it.
6         MR. STANLEY:  Right.  And Mr. Uddo will be assisting me on
7    this matter, he has not yet enrolled, but the court will be seeing a
8    motion from him shortly.  And I would pass the mike --
9         THE COURT:  While you're up, more than anything for
10   selfish reasons as well because of the -- I was wondering if I got
11   Mr. Hubbard, I understand -- hold on just a second.
12        We're looking at our calendar, that's my selfishness.
13        Mr. Hubbard, if you can kind of give me your candid view
14   on this.  Let me tell you what our concerns are.  I've got -- during
15   the Mardi Gras week it's my intent to read, this is my plan, my
16   plan, they may go astray as well as yours.  My plan is to read all
17   of the Robinson, as much as I can of the Robinson stuff which is a
18   ton of stuff.  Thousands.  This is my plan and I'm just letting you
19   know.
20        The next week -- that's Mardi Gras week.  The next week I
21   am preparing for the -- well, I have the Impastato trial and then I
22   get the replies in Robinson.  The Impastato trial is probably going
23   to be two weeks, they tell me three weeks, my guess is still two
24   weeks.  But during that I am completely subsumed in doing that.
25        In March I've got Robinson on the 11th, and just to get
```

```
 1    prepared for that, you would have to see the exhibits, I don't know
 2    if -- you're not directly involved in that, but it's a ton.
 3              MR. HUBBARD:  I've heard about it.
 4              THE COURT:  It's a ton of stuff to get prepared for.  I am
 5    then out of town the 12th through the 15th.  I am trying to
 6    understand what all of this is.  We have on the 11th, that's the
 7    Robinson hearing.  It would really be -- and I wouldn't continue
 8    this again, but I would like to, April 2nd, is that too long a
 9    delay -- excuse me, that Thursday.  April the 3rd, a special
10    setting.  I have trial set but -- and if you can articulate to me --
11    if there is something exigent that has to be resolved you can tell
12    me why then I'll try to readjust my schedule.
13              MR. HUBBARD:  Judge, to the best of knowledge, I think
14    April 3rd will work for us considering your schedule.
15              THE COURT:  Unless you can tell me some compelling reason
16    why something is really going to get messed up if I don't do this.
17    Let's say I agree with your motion and I disqualify the counsel.  If
18    I disqualify them the 3rd or the 20th, is that going to make a great
19    deal of difference?
20               I would probably not hear anything on the Road Home, any
21    motions -- I don't have anything set, do I, in the Road Home.
22              MR. HUBBARD:  No, you don't.  In fact, I guess the one
23    thing -- well, first of all, we've all been on Katrina time, if you
24    will, since the beginning of the umbrella, so we all feel your pain
25    and we understand where you're coming from.
```

1          THE COURT:  Right, I understand.

2          MR. HUBBARD:  We're all dealing, wrestling with the some

3   kind of issues.  So with that in mind, I think April 3rd will work.

4          One thing that maybe we could clarify right now.  We've

5   been talking to the plaintiffs' lawyers it seems like monthly about

6   when our answers might be due.  If we could just clarify with the

7   court today that there is no answer due until the Fifth Circuit

8   rules.

9          THE COURT:  Is that --

10         MR. FAYARD:  Judge, could we address that issue?

11         THE COURT:  Yes, go ahead.

12         MR. FAYARD:  Okay.  We have been very cooperative with

13  Mr. Hubbard in the past with respect to the request of his clients

14  to grant extensions on that.  Prior to resolving that issue Mr. Usry

15  is here for Attorney General Caldwell and he would like to address

16  the court.

17         THE COURT:  All right.  This is a status conference so we

18  can free flow.  Go ahead, Mr. Usry.

19         MR. USRY:  Thank you, your Honor.  As you can imagine,

20  taking office just two weeks ago Buddy Caldwell is making every

21  effort to put his arms around the litigation that normally exists

22  when a new Attorney General comes in.

23         In addition to that, as your Honor has referenced several

24  times during your initial remarks, there has been a plethora of

25  litigation arising out of the Katrina catastrophe that has presented

1    itself not only to your Honor but to other various jurisdictions.

2    And we have hit the ground running as hard as we can to do the

3    things we need to do to find out where everything is and what's

4    going on and to decide what should go forward and what shouldn't.

5           And in connection with that, I would like to add my voice,

6    along with the voice of some of the other counsel here at

7    plaintiffs' table, to suggest to your Honor that no injury would be

8    done to this case, as far as we've been able to determine with our

9    brief but I hope relatively thorough review of it, by allowing the

10   issue regarding the appointment of counsel by the State's Attorney

11   General to await a decision from the Fifth Circuit on the motion to

12   remand the case since most, if not all, of the issues raised by this

13   motion to disqualify counsel are state law issues.  And if the case

14   is remanded to state court, that would be something they would want

15   to take a shot at.

16          And, your Honor, I don't want to try the case now and I

17   don't want to talk about the merits of the motion, but we perceive

18   the issue to be a lot less certainly resolved against the Attorney

19   General than the motion implies, and we would like to have the

20   opportunity to visit more thoroughly with our plaintiffs' committee,

21   which we plan to retain all contractually retained counsel who are

22   counsel of record, and we do plan to go forward with this suit.  We

23   would like the opportunity to have some more time in addition to

24   whatever briefing schedule or argument schedule may be convenient

25   for the defense counsel here or even the plaintiffs' counsel.  The

1    Attorney General would like to have the opportunity to visit more

2    thoroughly with his counsel to reflect upon the issues presented.

3            We take very seriously the issue or the accusation of

4    conflict, and we want to explore any issue like that we feel

5    comfortable --

6            THE COURT:  Well, the conflict is some fundamental issues

7    about when and under what circumstances the Attorney General can

8    constitutionally in essence retain outside firms.  And I have not

9    read that.

10           MR. USRY:  I understand.  Those are state law issues

11   though I would suggest to your Honor.

12           THE COURT:  No question.

13           MR. USRY:  Those are issues of state law.  And we have

14   retained ethics counsel, visited with them, we feel very comfortable

15   with their opinion; but there are other issues of conflict which may

16   arise on the other side of this equation during the course of this

17   litigation with defense counsel, which we would like to explore as

18   well.

19           So with all due respect to the relative calendars of the

20   counsel involved in this case, I am here to ask on behalf of the

21   Attorney General that your Honor seriously consider the proposition

22   that perhaps this motion is not as urgent or exigent as some people

23   may insist it is and that it would not be a terrible thing if it

24   were put aside until such a time as the Fifth Circuit has

25   definitively ruled on whether or not this court will hear this case.

1        That said, if your Honor wants to go forward with the

2   schedule that you have suggested, we will certainly make an effort

3   to bring the resources to bear that we have to properly assess the

4   situation and work with our counsel.

5        THE COURT:  Mr. Hubbard had a question in reference to

6   filing answers.  Would there be an agreement there that the defense

7   would not have to file answers, is there a general agreement to

8   that?

9        MR. FAYARD:  Judge, we have not had a problem in the past

10  in granting the extensions.  And without a caucusing, and I hate to

11  use that word here, too, but with counsel on this side, I would

12  think that there would be no problem if we could delay the answer in

13  conjunction with this until after that decision is reached.

14       THE COURT:  As I understand it under CAFA, and I've had

15  one other, I've had two, I think two appealed, maybe three now other

16  than this one, but two certainly.  And as I understand the Court of

17  Appeals has a certain amount -- they have a time limit.  Do you know

18  when that time limit is up?  Does anybody know when the Court of

19  Appeals is obligated to render its decision under the CAFA appeal?

20       MR. HUBBARD:  I do recall it's in the statute, but I

21  don't --

22       THE COURT:  Yeah, it's 90 days.  But there are some cases

23  about from whence it starts the 90 days, and I don't have --

24       MR. HUBBARD:  Well, I've been told that the Fifth Circuit

25  may take the position that that time limit starts to run when they

```
 1    decide that it starts to run, so.

 2              THE COURT:  That's one of the luxuries about being there.

 3              MR. HUBBARD:  It may not be as quite a tight a time

 4    constraint.

 5              THE COURT:  The other ones I have had they've made every

 6    effort to do it with some alacrity.

 7              MR. HUBBARD:  But with respect to this issue, you entered

 8    a stay order in this case.

 9              THE COURT:  Yes.

10              MR. HUBBARD:  The problem is actually on my side, and I am

11    dealing with 200 companies, there are people who aren't present in

12    this court all the time, they get real nervous about deadlines; so

13    I've been having to bothering Calvin every month because we've been

14    kind of doing a month to month thing, and in the meantime I am

15    fielding more calls than you can count about what Calvin has said

16    lately and when is the last time I talked to him and all of this.

17               It would make my life simpler and I wouldn't bother Calvin

18    anymore if the court just said that you understood that your stay

19    order is a stay order and it applies to responsive pleadings in the

20    case.

21              THE COURT:  So if I clarify the stay order to so do, until

22    otherwise modified.

23              MR. HUBBARD:  Right.  And I think you could just do that

24    orally today, I am not asking you to go write papers.

25              MR. FAYARD:  Judge, I have to say, Mr. Hubbard, he's never
```

1    bothered me.  I've always thought that whenever he called it was

2    very cordial, and he can continue to call me again after today.

3            Mr. Bruno, I would like to call on Mr. Bruno because his

4    name was used as an illustration of the problems with regard to his

5    clients.

6            THE COURT:  Right.

7            MR. FAYARD:  And I think it might help to put your Honor's

8    mind at ease if we could go along with pushing this until after that

9    is, that remand issue is decided.

10            THE COURT:  Let me tell you how I am constructed.  I like

11    to get things done.  Believe it or not -- and I regard the motion to

12    disqualify as serious and I am inclined to hear it on the 3rd of

13    April, but I'll certainly listen to the other issue.

14            MR. BRUNO:  There is no other issue, Judge.  I just want

15    to --

16            THE COURT:  Not that I don't have anything else to do.

17    And frankly, none of this is going to help, frankly, resolve the

18    Road Home.  It's just an issue that there it is.  It's not going to

19    help with the Road Home, it's not going to help get anything

20    settled, it's not going to help anybody I assume.  But if, in fact,

21    the motion is well founded, it is what it is.

22            MR. BRUNO:  It is what it is.  And I just rise to just

23    educate the court as to what's going on.  First of all, I am going

24    to refer to myself as one of the many lawyers who are handling

25    one-on-one cases with the insurance industry, homeowners claims.

1   That has nothing to do with the lawsuit brought by the State against

2   these insurance folks.  That has nothing to do with what I call

3   mechanical issues.

4           What we are doing on a parallel track to this lawsuit is

5   trying to find a way to streamline the process by which the State of

6   Louisiana has an opportunity to evaluate a settlement, approve it,

7   and sign a release.

8           Because, in fact, what occurs when I settle a case on

9   behalf of a client who has, in fact, already executed a subrogation

10  agreement in favor of the State, my client's no longer the party in

11  interest, the State is the party in interest.  So I am stuck with

12  the obligation of now getting an approval from the State and a

13  signed release from the State.  So that's just a process.  I am not

14  even dealing with lawyers, I'm frankly dealing with the folks at the

15  Road Home, finding a way to give them the information they need.

16          And I think we're about this close.  We have a

17  spreadsheet, we have -- without boring you with lots of detail, we

18  give it to them and we await a response.

19          The only other thing that we are waiting for that, I

20  believe, is we are waiting for the final form of settlement document

21  that's acceptable to the insurance industry and is acceptable to the

22  State.

23          And in the last piece of the puzzle, I think is the

24  confidentiality order, which I thought was coming out today?  Next

25  week?

1          MR. DUDENHEFER:  31st, it has to be briefed by the 31st.

2          MR. BRUNO:  Which has nothing to do with this which I am

3     waiting for.  The point is that all proceeds and has nothing to do

4     with this case.  I am just reporting to you --

5          THE COURT:  It may not have anything to do with anything,

6     but isn't there -- is there a ranking suit filed as to who, who

7     wins, the plaintiff's attorney, the mortgagee, the Road Home, who is

8     first?

9          MR. BRUNO:  Well, actually there is no lawsuit and I have

10    to correct the inventiveness of Magistrate Wilkinson.  I suggested

11    to him that we issue an invitation, a polite one, that had a picture

12    of a guy with a black robe on it to come to the courthouse on the

13    15th of February to frankly discuss what would be --

14         THE COURT:  The old lien ranking issue.

15         MR. BRUNO:  Yeah.  And, Judge, if you think there are a

16    lot of the insurance companies, there are four times the number of

17    mortgage companies.  And there is only one way to do it, one at a

18    time, and I do mean check by check; or find a way to ball this up

19    and get a resolution.

20          And you know where I fall, I am not anxious to do 5,000

21    times five checks per person.  So I am grateful to the court for

22    assisting in that regard, but that's also an ongoing process, has

23    nothing to with this lawsuit, it's proceeding on a different track.

24    But that's just a report to guide you as you may see fit.

25         THE COURT:  Let me just tell you my thinking.  I am

1   thinking out loud, this is a status conference, I am not ruling on

2   anything.  One, although the plaintiffs disagree, I wouldn't have

3   ruled the way I did and referenced CAFA if I didn't think I was

4   right.  I am guessing, I've guessed wrong many times and the Fifth

5   Circuit will find a real party in interest other than the State,

6   find under the 11th Amendment the State is not existed by CAFA when

7   it is a plaintiff, and in essence because there are citizens who are

8   seeking recovery, perhaps -- that's what I'm guessing, but I could

9   be wrong on that.  It's an interesting question as I said in my oral

10  ruling when I ruled from the bench, because we really don't have

11  time to write every opinion.

12          But I think the better part of -- perhaps the best thing

13  to do is for me to set this thing for the 3rd.  And if there is a

14  real problem, I would be reluctant to continue it; but I think that

15  gives everybody enough time to let the dust settle, let the Attorney

16  General, who is newly elected, have a right to get in this.  Because

17  there are a lot of things that go beyond the simple conflict that at

18  least facially is concerning; that is, is there a tension between

19  the attorneys referenced, their representation of individual

20  plaintiffs and representation of the State.

21          There are issues that go well beyond that into the rights

22  of the Attorney General to retain outside counsel, which I may or

23  may not get to that, but you certainly have a right to look at that

24  and brief it.

25          So I am going to set it right now for April the 3rd at

1   three o'clock.  We may go to six or seven, I'll give you enough

2   time.  Whatever trial I have I'll adjourn at that time.

3          When would be -- I guess this is interesting.

4   Mr. Stanley, are you and the State going to file separate memorandum

5   or have y'all even got that far yet?

6          MR. STANLEY:  Your Honor, we haven't gotten that far.

7   Certainly the lawyers I represent will file a brief on those issues,

8   but I have a feeling that Mr. Usry may want to file the State's

9   position.

10          THE COURT:  A separate and independent.

11          MR. STANLEY:  There are some constitutional issues that

12   are lurking beneath the questions as to the authority of the

13   Attorney General under the constitution that I frankly think would

14   be better addressed by the Attorney General.

15          THE COURT:  I understand that.  And that's what I was

16   thinking.  And one of the purposes of this conference.

17          So since -- let's get a briefing schedule.  And I don't

18   know if the Attorney General, to me it would be neater if the

19   Attorney General and the plaintiffs' counsel would file their briefs

20   simultaneous, give you a chance to reply.  And if there is going to

21   be a surreply, you can move and ask for leave.

22          MR. STANLEY:  Judge, if we could have until perhaps the

23   7th.

24          THE COURT:  Of?

25          MR. STANLEY:  March.

1        THE COURT:  That gives you -- any objection there?

2        MR. HUBBARD:  That's no problem.  That would be fine with

3  us, Judge.

4        THE COURT:  Reply by the 21st, is that okay for the

5  defendants?

6        MR. HUBBARD:  Yes, your Honor, that would be great.

7        THE COURT:  If there's a surreply, the 28th.  Is that

8  okay?

9        MR. STANLEY:  Yes, your Honor.

10        THE COURT:  Okay.  I appreciate it.  Is there anything

11  anyone else would like to say?  Not about the merits because, one,

12  it's not ripe.  So we will do that on the 4th, it will be more

13  versed on the merits by that time.

14        THE DEPUTY CLERK:  He meant the 3rd instead of the 4th.

15        THE COURT:  Did I stay the 4th, I meant the 3rd.

16        UNIDENTIFIED SPEAKER:  Your Honor, did we resolve the

17  issue about the defendant's responsive pleadings?

18        THE COURT:  No, we didn't, but I am going to make clear

19  that the stay until further notice or until the plaintiffs move for

20  me to lift it, that the stay covers responsive pleadings.  And I

21  will do it orally now, but I think I will probably have to put out

22  one little bit of paper to commemorate it.  We'll put it in a minute

23  entry of this status conference.

24        Thank you very much.  Have a good rest of the week and a

25  Happy Mardi Gras.

1          MR. HUBBARD:  Thank you, your Honor.

2          MR. DUDENHEFER:  Thank you, your Honor.

3       (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

4

5                      * * * * * *

6

7

8                  REPORTER'S CERTIFICATE

9

10      I, Karen A. Ibos, CCR, Official Court Reporter, United States

11   District Court, Eastern District of Louisiana, do hereby certify

12   that the foregoing is a true and correct transcript, to the best of

13   my ability and understanding, from the record of the proceedings in

14   the above-entitled and numbered matter.

15

16

17                      _____

18                      Karen A. Ibos, CCR, RPR, CRR

19                      Official Court Reporter

20

21

22

23

24

25