1

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF LOUISIANA

 3

 4   IN RE: KATRINA CANAL BREACHES   * CIVIL ACTION

 5                                   * NO. 05-4182

 6   PERTAINS TO: BARGES             * Consolidated

 7                                   * SECTION "K(2)"

 8   Boutte v. Lafarge      05-5531 *

 9   Mumford v. Ingram      05-5724 * JUDGE DUVAL

10   Lagarde v. Lafarge     06-5342 *

11   Perry v. Ingram        06-6299 * MAG. WILKINSON

12   Benoit v. Lafarge      06-7516 *

13   Parfait Family v. USA  07-3500 *

14   Lafarge v. USA         07-5178 *

15    *  *  *  *  *  *  *  *  *  *

16

17              (V O L U M E   I)

18        Deposition of SIDNEY WILLIAMS, given

19   at Chaffe McCall, L.L.P., 2300 Energy Centre,

20   1100 Poydras Street, New Orleans, Louisiana

21   70163-2300, on February 19th, 2008.

22

23   REPORTER BY:

24        JOSEPH A. FAIRBANKS, JR., CCR, RPR

25        CERTIFIED COURT REPORTER #75005
```

Exhibit 3 to  P Motion for Protective Order         Page 000001

2

```
 1  APPEARANCES:
 2  REPRESENTING THE PLAINTIFFS:
 3          WIEDEMANN & WIEDEMANN
 4          (BY:  LAWRENCE D. WIEDEMANN, ESQUIRE)
 5          821 Baronne Street
 6          New Orleans, Louisiana 70113
 7          504-581-6180
 8  - and -
 9          BRIAN A. GILBERT, P.L.C.
10          (BY:  BRIAN A. GILBERT, ESQUIRE)
11          821 Baronne Street
12          New Orleans, Louisiana 70113
13          504-885-7700
14
15  REPRESENTING THE AMERICAN CLUB:
16          MONTGOMERY, BARNETT, BROWN, READ,
17          HAMMOND & MINTZ, L.L.P.
18          (BY:  KENNETH GELPI, ESQUIRE)
19          3200 Energy Centre
20          1100 Poydras Street
21          New Orleans, Louisiana 70163
22          504-585-3200
23
24
25
```

Exhibit 3 to  P Motion for Protective Order          Page 000002

```
 1  REPRESENTING WASHINGTON GROUP INTERNATIONAL:
 2          STONE PIGMAN WALTHER WITTMANN, L.L.C.
 3          (BY:  CARMELITE M. BERTAUT, ESQUIRE)
 4          546 Carondelet Street
 5          New Orleans, Louisiana 70130
 6          504-581-3200
 7
 8  REPRESENTING LAFARGE NORTH AMERICA:
 9          CHAFFE, MCCALL, L.L.P.
10          (BY:  DEREK A. WALKER, ESQUIRE)
11          (BY:  ROBERT B. FISHER, JR., ESQUIRE)
12          2300 Energy Centre
13          1100 Poydras Street
14          New Orleans, Louisiana 70163-2300
15          504-585-7000
16   - and -
17          GOODWIN PROCTOR, L.L.P.
18          (BY:  MARK S. RAFFMAN, ESQUIRE)
19          (BY:  JOHN ADCOCK, ESQUIRE, VIA TELE)
20          901 New York Avenue, NW
21          Washington, D.C. 20001
22          202-346-4000
23
24
25
```

Exhibit 3 to  P Motion for Protective Order          Page 000003

89

```
 1            No, go ahead if you want.  I
 2       haven't relinquished my turn or
 3       tendered the witness, but --
 4       MR. JOAHEN:
 5            No, I can wait till you finish.
 6       I don't have any personal problems.
 7       MR. WALKER:
 8            Brian, let me talk to you and
 9       Larry.
10       (Off the record.)
11       MR. GILBERT:
12            Right now I'm instructing
13       Mr. Williams to leave the room.
14            Mr. Williams, can you wait
15       outside for me?
16            (Whereupon the deponent left the
17       room.)
18       MR. GILBERT:
19            And we're ending this deposition
20       now on several grounds, the first of
21       which is that Lafarge has represented
22       to the court that this would be
23       provided.  It has been provided today,
24       but it's been provided in the nature
25       of an ambush.  I have E-mail from
```

Exhibit 3 to  P Motion for Protective Order          Page 000004

90

```
 1        Mr. Walker stating that this would be
 2        provided to me on February 15th, which
 3        would have been before Mr. Williams'
 4        deposition and he would have been able
 5        to review this statement, to which
 6        he's absolutely entitled as a client
 7        of mine, which has been known by
 8        Lafarge since we provided discovery
 9        responses identifying Mr. Williams as
10        our client.
11             This entire deposition has been
12        improper, the entire process with
13        Centanni has been improper, the entire
14        meeting that Mr. Walker and I had last
15        Friday was improper, the results of
16        those of that meeting and the
17        following discussions have been
18        improper, Lafarge's conduct with
19        respect to the putative class members,
20        the named plaintiffs and my clients
21        has been improper, and we intend to
22        air all of this before the court, and
23        that's it.  We're leaving the
24        deposition now.
25        MR. WALKER:
```

Exhibit 3 to  P Motion for Protective Order         Page 000005

91

```
 1              On what basis are you adjourning
 2         the deposition?
 3         MR. GILBERT:
 4              I just said it and that's all I
 5         have to say.
 6         MR. WALKER:
 7              You're not entitled to adjourn
 8         the deposition.
 9         MR. GILBERT:
10              You can continue with the
11         deposition, I've instructed my client
12         to leave.
13         MR. WALKER:
14              We'll call the magistrate.
15         MR. WEBB:
16              With all due respect, he's here
17         pursuant to --
18         MR. GILBERT:
19              You want to call the Magistrate?
20         Go ahead and do it.
21         MR. JOAHEN:
22              I do.
23         MR. WALKER:
24              Yeah.
25         MR. GILBERT:
```

Exhibit 3 to  P Motion for Protective Order          Page 000006

92

```
 1              Let's get the whole thing on the
 2         record.
 3         MR. WEBB:
 4              He's here due to a court order to
 5         testify.  Isn't he?  Didn't he get
 6         subpoenaed?  Didn't you produce him
 7         pursuant to the subpoena?
 8         MR. HAYCRAFT:
 9              If you're going to call the
10         magistrate you better get busy.
11         MR. GILBERT:
12              Yeah, I would suggest that you
13         get the magistrate on the phone.
14         We'll air this to the magistrate.
15         We'll tell Wilkinson what y'all have
16         done, too.
17         THE WITNESS:
18              It's not a question of what we've
19         done.  It's a question of what right
20         do you have to adjourn the deposition.
21         MR. WIEDEMANN:
22              On the basis of ambush.
23         MR. WALKER:
24              And tell me what Rule of Civil
25         Procedure otherwise defines ambush.
```

Exhibit 3 to  P Motion for Protective Order            Page 000007

93

```
 1          MR. GILBERT:
 2              How about the Rules of
 3      Professional Conduct?  How about the
 4      APA rules, the Louisiana rules?
 5          MR. WALKER:
 6              Show me where that and anything
 7      we've done --
 8          MR. GILBERT:
 9              Go get the books and I'll show
10      you.
11          MR. WALKER:
12              -- allows you to adjourn this
13      deposition.
14          MR. GILBERT:
15              I don't have the books on me.
16              (Whereupon an attempt was made to
17      contact the magistrate.)
18          MR. WALKER:
19              The fact that you may not like
20      the timing of anything does not allow
21      you to interrupt or adjourn the
22      deposition.
23          MR. GILBERT:
24              The timing has deprived us of our
25      rights and my client's rights to see
```

Exhibit 3 to  P Motion for Protective Order          Page 000008

94

```
1        his own statement before he gives
2        testimony.
3   MR. WIEDEMANN:
4            You started his deposition
5        knowing that you have a statement from
6        him, knowing that we represent him,
7        and you don't present the statement
8        before the deposition starts, you wait
9        until you're halfway or three quarters
10       of the way through the deposition.
11  MR. GILBERT:
12           And Mr. Walker, you lied to me.
13       You told me you had no statements.
14  MR. WALKER:
15           I absolutely never said that.
16  MR. GILBERT:
17           Yeah, you told me that.  You told
18       me that.
19  MR. WALKER:
20           Incorrect.
21  MR. GILBERT:
22           You told me that on Friday and
23       you told me that on Saturday.
24  MR. WALKER:
25           Incorrect.  But maybe correct.
```

Exhibit 3 to P Motion for Protective Order          Page 000009

95

```
 1          This is not a statement.  It's not a
 2          statement, it is a transcribed
 3          interview.
 4          MR. WIEDEMANN:
 5               It's not a statement from my
 6          client?
 7          MR. GILBERT:
 8               It's not a recording of a
 9          statement?  It's not a recordation of
10          what my client said?
11          MR. WALKER:
12               It's a recording of an interview
13          with your client.
14          MR. GILBERT:
15               That's a statement.
16          MR. WALKER:
17               And I told you that we had many
18          of those, and I showed you a list that
19          indicated which we had recorded and
20          which we didn't.
21          MR. GILBERT:
22               No.  You told me that y'all had
23          conducted two hundred and some odd
24          interviews --
25          MR. WALKER:
```

Exhibit 3 to  P Motion for Protective Order          Page 000010

96

```
1              Correct.
2     MR. GILBERT:
3              -- and there are no statements.
4     MR. WALKER:
5              Correct.  Many of which were
6     recorded.  That's been repeated to you
7     ad nauseam.  And in fact --
8     MR. GILBERT:
9              This was supposed to be disclosed
10    on February 15th, which you did not
11    do.
12    MR. WALKER:
13             Incorrect.  I showed it to you at
14    lunch on February 15th.
15    MR. GILBERT:
16             Did you a give me a copy of it?
17    MR. WALKER:
18             And I said, let me go back and
19    check it, because this was the first
20    draft I have.
21    MR. GILBERT:
22             No.
23    MR. WALKER:
24             And then we reached an agreement
25    on other issues.
```

Exhibit 3 to  P Motion for Protective Order          Page 000011

97

1        MR. GILBERT:
2            No.  No.  There was never an
3        agreement whereby I was waiving
4        production of this.
5        MR. WALKER:
6            I didn't say there was a waiver.
7        MR. GILBERT:
8            You sent me an E-mail telling me
9        you'd give me this on the 15th.  I
10       sent all of y'all countless E-mails
11       telling you that you owe us this
12       disclosure, you owe us what we have
13       sought production of, and I've just
14       been pushed off and pushed off, and
15       now you ambush us with it.  And this
16       is a client of mine.
17       MR. WALKER:
18           Were you at the office yesterday?
19       MR. GILBERT:
20           Yes.
21       MR. WALKER:
22           Well, you didn't answer there.
23       And you told me you weren't at the
24       office.
25       MR. GILBERT:

Exhibit 3 to  P Motion for Protective Order            Page 000012

98

```
1              Yesterday was Monday?  I was at
2         the office.
3         MR. WALKER:
4              I thought you said you weren't
5         going to be at the office, on Friday,
6         you were working from home or
7         something because your computers were
8         down.
9         MR. GILBERT:
10             What?  You must be confusing me
11        with somebody else.
12        MR. WIEDEMANN:
13             My office was open yesterday.
14        MR. GILBERT:
15             You must be confusing me with
16        somebody else.  I was at the office
17        until our last phone call, then I left
18        a number of messages for you.
19        (Off the record.)
20        MR. WALKER:
21             We're unable to reach Magistrate
22        Wilkinson's office to obtain a ruling
23        based on argument, if the judge would
24        be willing to give us one.  We
25        disagree with any purported right the
```

Exhibit 3 to  P Motion for Protective Order          Page 000013

99

```
 1          plaintiffs may have for any reasons
 2          they believe that the deposition of an
 3          individual can be adjourned as this
 4          deposition has been, and we believe
 5          that you cannot instruct the witness
 6          not to continue the deposition or
 7          answer questions.  Therefore, if that
 8          is in fact the case, as you've told me
 9          outside of this room, then we would
10          ask that this deposition be continued
11          at a future date, including tomorrow,
12          Thursday or Friday, since Mr. Williams
13          is from out of town and has driven
14          here specifically for the taking of
15          his deposition, because the deposition
16          is clearly not concluded.
17               And in connection with this
18          deposition, we're going to attach as
19          Exhibit 5 a transcription of a
20          March 20th, 2006 recorded telephone
21          conversation with Ninth Ward resident
22          Sidney Williams.
23          (Exhibit 5 was marked for
24   identification and is attached hereto.)
25          MR. GILBERT:
```

Exhibit 3 to  P Motion for Protective Order          Page 000014

100

```
 1         And the Plaintiffs Barge PSLC
 2    objects to the attachment of this
 3    statement as being unlawfully withheld
 4    from us in spite of our legitimate
 5    discovery requests and in light of the
 6    representations of counsel for Lafarge
 7    that no such statements were taken,
 8    and --
 9    MR. WALKER:
10         That's an incorrect statement.
11    MR. GILBERT:
12         Okay.  Counsel for Lafarge says
13    it's an incorrect statement.  In light
14    of Lafarge 's agreement to produce
15    evidence that such a statement was
16    taken.
17    MR. WALKER:
18         I'm sorry?
19    MR. GILBERT:
20         In light of counsel for Lafarge's
21    representations, written
22    representations to me to produce the
23    list of statements or interviews that
24    were taken that was not timely
25    produced, and had it been, according
```

Exhibit 3 to  P Motion for Protective Order          Page 000015

101

```
 1      to when we were told that it was going
 2      be produced, we'd have known about
 3      this and it would not be -- this
 4      deposition would not be taking place
 5      by ambush in derogation of my client's
 6      rights.
 7   MR. WALKER:
 8          That's the statement you made
 9      previously.  So we expect Mr. Williams
10      to appear in the future to answer
11      questions regarding the
12      inconsistencies regarding his
13      testimony under oath today versus what
14      he stated previously.
15   MR. GILBERT:
16          And we object to the testimony of
17      counsel as to whether his testimony is
18      consistent or inconsistent.
19   MR. WEBB:
20          Are you coming back tomorrow or
21      not?
22   MR. WIEDEMANN:
23          No, he's going back to Atlanta
24      tonight.
25   MR. GILBERT:
```

Exhibit 3 to  P Motion for Protective Order            Page 000016

102

```
 1              No.  We want a ruling from the
 2         judge.  We went all of this in front
 3         of the judge.
 4     MR. JOAHEN:
 5              So my understanding is this is
 6         being suspended until we have a ruling
 7         from the court?  Scott Joanen on
 8         behalf of the MRGO PSLC.  We attended
 9         this deposition with the intention of
10         asking questions of the witness.
11         Um -- we have been precluded from
12         doing so by the actions of Mr. Gilbert
13         and Mr. Wiedemann, and the MRGO PSLC
14         believes this is in derogation of the
15         CMO 4 and I believe it's CMO 5 that
16         the barge has been brought under the
17         In Re: Katrina umbrella and strongly
18         objects to the suspension of this
19         deposition based on the grounds
20         enumerated.
21     MR. WIEDEMANN:
22              That's unique in that counsel
23         objected to taking the deposition
24         without the presence of lawyers who
25         represented this individual in a prior
```

Exhibit 3 to  P Motion for Protective Order          Page 000017

                                        103

1          claim.
2              (Whereupon the deposition was recessed
3  for the day.)
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Exhibit 3 to  P Motion for Protective Order          Page 000018

                                          104

```
 1               REPORTER'S CERTIFICATE
 2          I, JOSEPH A. FAIRBANKS, JR., CCR, RPR,
 3   Certified Court Reporter in and for the State
 4   of Louisiana, do hereby certify that the
 5   aforementioned witness, after having been first
 6   duly sworn by me to testify to the truth, did
 7   testify as hereinabove set forth;
 8          That said deposition was taken by me
 9   in computer shorthand and thereafter
10   transcribed under my supervision, and is a true
11   and correct transcription to the best of my
12   ability and understanding.
13          I further certify that I am not of
14   counsel, nor related to counsel or the parties
15   hereto, and am in no way interested in the
16   result of said cause.
17
18
19
20
21
22
23          _____
24          JOSEPH A. FAIRBANKS, JR., CCR, RPR
25          CERTIFIED COURT REPORTER #75005
```

Exhibit 3 to  P Motion for Protective Order              Page 000019