# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL | * | |
| BREACHES | | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge* 05-5531 | * | |
| *Mumford v. Ingram* 05-5724 | * | |
| *Lagarde v. Lafarge* 06-5342 | * | JUDGE |
| *Perry v. Ingram* 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* 06-7516 | * | |
| *Parfait Family v. USA* 07-3500 | * | MAGISTRATE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

## <u>AFFIDAVIT OF MARK S. RAFFMAN PURSUANT TO FED. R. CIV. P. 26(b)(5)</u>

Mark S. Raffman, being duly sworn, deposes and says:

1. I am a partner in the law firm of Goodwin Procter LLP in Washington, D.C.  I am one of the lawyers retained by Lafarge North America Inc. ("LNA") to defend the company against claims relating to the Barge ING 4727, including the claims asserted in this litigation.  I make this affidavit for the purpose of providing evidentiary support for the claims of attorney-client privilege and work-product protection that have been asserted by LNA in response to discovery requests by the other parties.  This affidavit is based on personal knowledge and on records created during the course of our firm's work on this matter.

**Counsel and Representatives Retained In Anticipation of Litigation**

2. <u>Goodwin Procter</u>:  Goodwin Procter has served as litigation counsel to LNA in various matters since 2003.  On September 8, 2005, LNA in-house counsel contacted Goodwin

Procter to request that the firm investigate and defend against possible claims involving a barge that had ended up inside one of the broken levees in New Orleans, Louisiana following Hurricane Katrina.  Earlier that day, a reporter from the Wall Street Journal had contacted LNA regarding allegations that a barge that had been moored at the company's New Orleans cement terminal had broken loose and allegedly breached one of the levees.  The article, which appeared in the Wall Street Journal on the very next day, ran with the headline, "*Still Unknown:  Did a Barge Breach the Levee?"*

3.  It was immediately apparent that these allegations could give rise to litigation against LNA by residents who might attempt to blame the barge for damage that they suffered during the storm. To defend itself against such possible litigation, the company asked Goodwin Procter to immediately form a pre-litigation investigation team to investigate the facts and circumstances regarding the barge and the levee breaches.  The initial team at Goodwin Procter included John Aldock and Mark Raffman, and grew to include other attorneys at the firm.  From September 8, 2005 to the present, the primary motivating purpose of all of Goodwin Procter's activities regarding the Barge ING 4727 has been to defend LNA in possible or actual litigation.

4.  <u>Holland & Knight</u>.   On September 9, 2005, LNA in-house counsel and counsel from Goodwin Procter contacted attorneys in the maritime law group at Holland & Knight to assist in investigating and defending against potential claims involving the barge.  LNA retained the Holland & Knight firm on or around September 9, 2005, and attorneys from that firm commenced activities to assist in the investigation and defense.  James Shirley and Dean Steele were among the Holland & Knight attorneys initially involved in the representation. From September 9, 2005 and throughout its involvement in LNA's defense, the primary

2

Exhibit 18 to P Motion for Protective Order          Page 000002

motivating purpose of all of Holland & Knight's activities regarding the Barge ING 4727 was to defend LNA in possible or actual litigation.

5. <u>Chaffe McCall</u>.  Over the weekend of September 10-11, 2005, LNA contacted attorneys at Chaffe McCall, which had represented the company in other matters, to assist in responding to the allegations regarding the Barge ING 4727.  Although the Chaffe McCall firm had been displaced as a result of Hurricane Katrina, attorneys at the firm including Derek Walker and Robert Fisher quickly became involved in LNA's investigation and defense.  From the weekend of September 10-11, 2005 through the present, the primary motivating purpose of all of Chaffe McCall's activities regarding the Barge ING 4727 has been to defend LNA in possible or actual litigation.

6. <u>Sutterfield & Webb</u>.  In October 2005, the firm of Sutterfield & Webb was retained to assist in LNA's defense of claims that had been asserted relating to the Barge ING 4727.  By that time, litigation had actually been filed relating to the barge.  Attorneys at Sutterfield & Webb, principally including Daniel Webb, undertook to participate in LNA's defense and, later, on behalf of one of its insurers.  From October 2005 forward through the present, the primary motivating purpose of all of Sutterfield & Webb's activities regarding the Barge ING 4727 has been to defend LNA's interests in litigation against the company.

7. <u>Marine surveyors and consultants</u>.   In September 2005, counsel for LNA retained the services of marine surveyors and other marine consultants to assist LNA's legal counsel in their investigation and defense on behalf of LNA.  These marine surveyors included Jason Fernandes, who participated with Holland & Knight, and John Cunningham, who participated with Chaffe McCall.  The primary purpose of all of the activities conducted by

3

these marine surveyors and consultants pursuant to their engagement has been to assist LNA in anticipation of litigation or for trial.

8. <u>Investigators</u>.  In October 2005, LNA, acting through legal counsel in Louisiana, retained an investigation firm (Centanni Investigative Agency) to assist in the investigation and defense of claims against the company relating to the Barge ING 4727.  By that time, litigation had actually been filed relating to the barge.  The primary purpose of all activities conducted by the investigation firm pursuant to this engagement has been to assist LNA in anticipation of litigation or for trial.

9. <u>LNA staff assigned to assist investigation</u>.  Beginning on September 8, 2005 and continuing to this day, LNA in-house personnel have been assigned to assist counsel and representatives in carrying out the investigation and defense of claims involving the Barge ING 4727.  The primary motivating purpose of the activities of these individuals in assisting LNA's counsel and representatives has been to assist LNA in anticipation of litigation or for trial.

<b>Identification of materials withheld as protected</b>

10. LNA's claims of privilege and work-product protection concern documents created on or after September 8, 2005, the date on which LNA learned of the allegations that form the basis for plaintiffs' claims in this case and instituted its investigation in anticipation of litigation.  LNA is not seeking protection for any of its documents or information created before September 8, 2005.

11. The following categories of documents or information, all created in anticipation of litigation or for trial by or for the LNA attorneys and representatives listed in paragraphs 1 through 9 above, are withheld based on attorney-client and/or work-product protection:

LIBW/1660291.2

Exhibit 18 to P Motion for Protective Order          Page 000004

a. Communications between counsel and client personnel regarding the subject matter of the representation, for the purpose of furnishing or obtaining legal advice, directly related to the defense of the client in anticipation of litigation, within the scope of the representation, and not published to third parties.

b. Notes, memoranda or recordings created by LNA's counsel or representatives concerning witness interviews (in person or by telephone); inspections; and observations in the course of and for the purpose of investigating and defending against claims related to the ING 4727.  (Note:  As set forth in LNA's privilege log, LNA has prepared a chart for production to plaintiffs containing witness identities and contact information in response to plaintiffs' interrogatory number 5, in order to obviate the parties' dispute over that interrogatory).

c. Photographs, videos and visual evidence taken after September 8, 2005 by LNA's counsel or representatives for the purpose of investigating and defending against claims related to the Barge ING 4727.

d. Compilations of materials, such as media clippings and government records, gathered or assembled or prepared by or for LNA's counsel or representatives in the course of and for the purpose of investigating and defending against claims related to the ING 4727.  This category does not apply to LNA's own documents, even if assembled by counsel, that would be otherwise discoverable in litigation.  Instead, it applies only to materials that came into LNA's possession, custody or control after September 8, 2005 through the litigation-preparation activities of LNA's counsel or representatives.

12. The volume of the materials falling within each of the above categories is quite large.  There are, for instance, thousands of attorney-client and intra-firm communications regarding the

5

claims against the Barge ING 4727.  LNA's investigators have assembled thousands of files relating to potential witnesses, media accounts, properties, and other matters of potential relevance to this litigation.  To provide an item-by-item listing of every document created or assembled by LNA's team of lawyers and investigators in preparing for litigation would be very burdensome and would require the disclosure of protected information by providing an itemized roadmap of the strategies and activities engaged in by defense counsel and their representatives in preparing the defense of this matter.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


_____/s/Mark S. Raffman

Mark S. Raffman


Dated:  January xx, 2008

6

Exhibit 18 to P Motion for Protective Order          Page 000006