Westlaw.

Not Reported in F.Supp.2d                                                                                              Page 1
Not Reported in F.Supp.2d, 2006 WL 1133871 (W.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

In re Frank
W.D.La.,2006.
Only the Westlaw citation is currently available.
United States District Court,W.D. Louisiana.
In re Mack I. FRANK.
**No. Misc. 06-04.**

April 25, 2006.

Mack I. Frank, Opelousas, LA, pro se.

*REPORT AND RECOMMENDATION*

ALONZO P. WILSON, Magistrate Judge.
**\*1** On February 8, 2006, Judge Minaldi initiated disciplinary proceedings against Mack I. Frank, an attorney admitted to the bar of this court, pursuant to LR 83.2. 1 0W. (Doc. 1). The matter was submitted to the undersigned magistrate judge to conduct a hearing and to issue a report and recommendation to the active Article III judges regarding possible discipline. A hearing was held on March 21, 2006. Counsel initially requested an opportunity to brief the issues. However, counsel have now advised the court that they wish to submit the matter on the record.

Generally, the complaint against Mr. Frank is that: (1) he violated Rule 4.2 of the Rules of Professional Conduct, and (2) he knowingly attempted to coerce others to sign fraudulent affidavits. The standard of proof in attorney disciplinary proceedings is proof by clear and convincing evidence. *Sealed Appellant 1 v. Sealed Appellee 1, 211 F.3d. 252, 254 (5th Cir.2000)*. I find that this burden has been satisfied only insofar as the violation of Rule 4.2 is concerned.

In August, 2004, Colins Ceasar, Blake K. Lewis, Jimmy Frank, Kevin Cooley, Brandon Pollard, Linsey Freeman, Eric Vigers and Josephy Dupre were indicted on numerous charges arising out of a series of armed robberies at casinos. (04 CR 20115). By July, 2005, all defendants had entered guilty pleas, and were awaiting sentencing. In October, 2005, Mr. Ceasar moved to withdraw his guilty plea. His motion referred to attached affidavits of co-defendants, but no such affidavits were attached. That motion was denied in early November on the basis that the district court refused to accept a pro se motion when defendant was represented by counsel. Mr. Ceasar wrote letters to the court in late November and early December, 2005, indicating that he intended to hire Mr. Frank to file another motion to withdraw his guilty plea.

Mr. Frank's receipt book verifies that on December 13, 2005, Martha Ceasar, Colins' mother, paid Mr. Frank $750 in cash for "Collins ⚷ $50." The next day Mr. Frank traveled to Lake

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2006 WL 1133871 (W.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

Charles, Louisiana, and went to the prison where Mr. Ceasar's co-defendants were incarcerated. Mr. Frank signed in on the prison's attorney log. At Mr. Frank's request all of Colins Ceasar's co-defendants, with the exception of Joseph Dupre, were gathered in a room and Mr. Frank met with them. At the time each of these men were co-defendants with Colins Ceasar, each was represented by an attorney, and all were scheduled to be sentenced the next day. Mr. Frank had not obtained the consent of their attorneys for this meeting.

Each co-defendant testified at the hearing. Notably the hearing was held after they had been sentenced to substantial terms of imprisonment. There is no evident motive for them to fabricate evidence against Mr. Frank. Their testimony about the meeting was consistent in all material respects, and is found credible. At the meeting Mr. Frank indicated that Colins Ceasar's mother had hired him to get documents signed on behalf of Colins Ceasar. Mr. Frank also indicated that the documents could be helpful to their cases. In essence, the affidavits Mr. Frank presented asserted that Colins Ceasar had no involvement in the casino robberies. All of the codefendants refused to signed the affidavits, and all agreed that Mr. Frank did not attempt to pressure them into signing after their initial refusal.

**\*2** Mr. Vickers and Mr. Cooley had met Mr. Frank previously. In 2004 they, along with Colins Ceasar, faced state charges in connection with some of the casino robberies. Mr. Frank, claiming to represent Colins Ceasar, approached them about signing affidavits that indicated that Mr. Ceasar was not involved in the relevant criminal behavior. Mr. Frank told them that signing the affidavits would be beneficial to them as well. At the time both Mr. Vickers and Mr. Cooley were represented by counsel, but their counsel was not present. They both signed the affidavits on that occasion.

Prior to the federal indictment FBI agent Ed Reed was investigating the casino robberies. In connection with his investigation he desired to talk to Colins Ceasar. Mr. Ceasar advised Agent Reed that he was represented by Mr. Frank. Agent Reed called Mr. Frank and asked for permission to talk to Mr. Ceasar. Mr. Frank gave the requested permission. Later Mr. Frank gave permission to Agent Reed to administer a lie detector examination to Mr. Ceasar.

According to Mr. Frank, Martha Ceasar brought $750 to his office in Opelousas along with a package of typed affidavits that had already been prepared. His understanding was that the other defendants had indicated that they wanted to sign statements. He denied that he was aware that these defendants had cases pending. The co-defendants were obviously surprised by his appearance and refused to sign the affidavits after he read them. He made no attempt to pressure them to sign. After they refused he went to meet with Colins Ceasar in the prison where he was being held in order to let him know that the others had refused to sign the affidavits. Mr. Frank admits that he did not contact the co-defendants' attorneys for permission to talk to them, but contends that he did not know that Mr. Ceasar's co-defendants were represented.

*Rule 4.2* or the Rules of Professional Conduct

Not Reported in F.Supp.2d                                                                                              Page 3
Not Reported in F.Supp.2d, 2006 WL 1133871 (W.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

This court has adopted the Rules of Professional Conduct of the Louisiana State Bar Association. LR 83.2.4W. Rule 4.2 of the Rules of Professional Conduct provides, in pertinent part:
In representing a client, a lawyer shall not communicate about the subject of the representation with:
(a) a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order....

There is clear and convincing evidence that Mr. Frank violated this rule. Mr. Frank was representing a client (either Mrs. Ceasar or Colins Ceasar) regarding the federal criminal charges then pending against Mr. Ceasar. He communicated with co-defendants of Mr. Ceasar about those criminal charges. The only arguable issue is whether Mr. Frank knew the co-defendants were represented by attorneys in connection with those criminal proceedings.[FN1] His testimony that he did not know is simply not credible. Mr. Frank had earlier obtained affidavits from two of the co-defendants in connection with his representation of Mr. Ceasar with respect to the related state charges. Mr. Frank met with the co-defendant's in the prison where they were being held in connection with the same criminal proceeding pending against Mr. Ceasar. He told them that the affidavits that he had might help them with their cases. Mr. Frank "cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." Comment (8) to Rule 4.2 or ABA Model Rules of Professional Conduct. The conclusion is inescapable that Mr. Frank made a deliberate, bad faith decision to ignore the co-defendants' representation.

> FN1. The Rules of Professional Conduct indicate that "knows" denotes actual knowledge. However, a "person's knowledge may be inferred from the circumstances." Rule 1.0(f) Rules of Professional Conduct.

**\*3** There is no evidence that Mr. Frank's violation caused actual harm or prejudice to the co-defendants. Mr. Frank's actions do, however, potentially damage the public's confidence in the legal profession and in this court inasmuch as this court implicitly represents that attorneys permitted to practice before it are in good standing to do so. *In Re Sealed Appellant,* 194 F.3d 666, 674 (5th Cir.1999). His conduct also had the potential of interfering with the outcome of the criminal proceeding although that potential was not realized.

*Knowingly Attempting to Coerce Others to Sign a Fraudulent Affidavit*

The evidence failed to establish that Mr. Frank knowingly attempted to coerce the codefendants to sign fraudulent affidavits. There is no evidence that Mr. Frank knew that information contained in the affidavits was false. Further, the evidence indicated that once the co-defendants expressed a reluctance to sign the affidavits Mr. Frank made no effort to get them to change their position.

*Appropriate Sanction*

Sanctions should serve to maintain high standards of conduct, protect the public, preserve the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.
Exhibit 39 to P Motion for Protective Order            Page 000003

Case 2:05-cv-04182-SRD-JCW   Document 11765-40   Filed 03/25/08   Page 4 of 5

Not Reported in F.Supp.2d                                                                                                Page 4
Not Reported in F.Supp.2d, 2006 WL 1133871 (W.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

integrity of the profession, and deter future misconduct.*In re Bilbe,* 841 So.2d 729, 740 (La.2003). For guidance as to the proper sanction that should be imposed under the circumstances the court should look to the ABA's Standards for Imposing Lawyer Sanctions.[FN2]*In Re Sealed Appellant, supra* at 673.More specifically, the court should "consider the duty violated, the attorney's mental state, the actual or potential injury caused by the attorney's misconduct, and the existence of aggravating or mitigating factors. *Id.* Those standards further provide: "Suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding."ABA Standards for Imposing Lawyer Sanctions 6.32. The period of suspension should be from 6 months to three years. *Id* at 2.3.Considering the totality of the circumstances I find that it is appropriate to suspend Mr. Frank's practice before this court for a minimum period of one year.

> FN2. The ABA Standards for Imposing Lawyer Sanctions can be found at: http://www.abanet.org/cpr/regulation/standards-sanctions.pdf

Accordingly,

It is recommended that Mack I. Frank's practice before this court be suspended for a minimum of one year.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), Mack I. Frank has until May 10, 2006, to file any objections with the Clerk of Court. Copies of any objections should be provided to each active Article III judge of this court at the time of filing. Timely objections will be considered by the district judges prior to a final ruling.

FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT ON OR BEFORE MAY 10, 2006, SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.

***4** THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 25th day of April, 2006.

W.D.La.,2006.
In re Frank
Not Reported in F.Supp.2d, 2006 WL 1133871 (W.D.La.)

END OF DOCUMENT

Westlaw.

Date of Printing: MAR 16,2008

# KEYCITE

**In re Frank,** 2006 WL 1133871 (W.D.La., Apr 25, 2006) (NO. MISC. 06-04)

**History**

=>    1 **In re Frank,** 2006 WL 1133871 (W.D.La. Apr 25, 2006) (NO. MISC. 06-04)

**Court Documents**

**Dockets (U.S.A.)**

**W.D.La.**

2 IN RE: MACK I FRANK, NO. 2:06mc00004 (Docket) (W.D.La. Feb. 9, 2006)

**Citing References**

No references were found within the scope of KeyCite's citing case coverage.

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.
Exhibit 39 to P Motion for Protective Order          Page 000005