# EXHIBIT 1

Westlaw.

219 F.R.D. 485
219 F.R.D. 485
(Cite as: 219 F.R.D. 485)

Page 1

HGreen v. Baca
C.D.Cal.,2003.

United States District Court,C.D. California.
W.E. GREEN, Plaintiff,
v.
Leroy BACA, Michael Antonovich, Yvonne Burke, Deane Dana, Don Knabe, Gloria Molina, Zev Yaroslovsky, and Ten Unknown Named Defendants, Defendants.
No. CV 02-04744 MMM.

Dec. 16, 2003.

**Background:** Arrestee brought § 1983 action against county sheriff, county, and others, alleging unlawful detention. Sheriff moved for reconsideration of order of Margaret Nagle, United States Magistrate Judge, compelling him to produce certain documents.

**Holdings:** The District Court, Morrow, J., held that:
(1) magistrate judge's discovery order was not vague, ambiguous or overbroad;
(2) sheriff's objection to arrestee's discovery request was improper blanket assertion of privilege; and
(3) arrestee's need for information regarding prior detentions outweighed any burden on sheriff in producing such evidence.

Motion denied.

West Headnotes

[1] United States Magistrates 394 ⇐17

394 United States Magistrates
    394k15 Particular Types of Rulings
        394k17 k. Pretrial Matters; Discovery. Most Cited Cases
A magistrate judge has authority to hear discovery motions. Fed.Rules Civ.Proc.Rule 72, 28 U.S.C.A.

[2] United States Magistrates 394 ⇐29

394 United States Magistrates
    394k24 Review and Supervision by District Court

        394k29 k. Clear or Manifest Error. Most Cited Cases
The clearly erroneous standard of review, which applies to a magistrate judge's findings of fact, is significantly deferential, requiring a definite and firm conviction that a mistake has been committed. 28 U.S.C.A. § 636(b)(1).

[3] Federal Civil Procedure 170A ⇐1278

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1278 k. Failure to Respond; Sanctions. Most Cited Cases
It is within the discretion of a court ruling on a motion to compel discovery to narrow the requests rather than sustain the responding party's objections to them in toto; in doing so, the court effectively sustains an objection that the requests are vague, ambiguous or overbroad in part, and overrules it in part.

[4] Federal Civil Procedure 170A ⇐1538

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(D) Written Interrogatories to Parties
            170AX(D)3 Answers; Failure to Answer
                170Ak1537 Failure to Answer; Sanctions
                170Ak1538 k. Order Compelling Answer. Most Cited Cases

Federal Civil Procedure 170A ⇐1636.1

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)5 Compliance; Failure to Comply
                170Ak1636 Failure to Comply; Sanctions
                170Ak1636.1 k. In General. Most Cited Cases
Magistrate judge's discovery order, which narrowed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

219 F.R.D. 485
219 F.R.D. 485
(Cite as: 219 F.R.D. 485)

Page 2

the arrestee's motion to compel defendants to answer interrogatories and to produce all documents concerning claims against defendants for overdetention in the last five years, and directed defendants to produce records and information concerning written claims, demands, and suits alleging overdetention, as well as back-up documentation supporting the overdetention statistics, was not vague, ambiguous or overbroad, in arrestee's § 1983 action against county sheriff, county, and others, alleging unlawful detention. 42 U.S.C.A. § 1983.

[5] Witnesses 410 ⚖ 220

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k220 k. Objections to Admissibility. Most Cited Cases
A party may not make a blanket assertion of privilege in response to a discovery request. Fed.Rules Civ.Proc.Rule 26(b)(5), 28 U.S.C.A.

[6] Witnesses 410 ⚖ 220

410 Witnesses
    410II Competency
        410II(D) Confidential Relations and Privileged Communications
            410k220 k. Objections to Admissibility. Most Cited Cases
Assertion by party making objection to discovery requests based upon attorney-client privilege, that separating the privileged documents from the unprivileged documents was too burdensome, was effectively an improper blanket privilege objection, since it rested on general assertions as to existence of privileged material, where party did not make particularized showing that any documents were privileged. Fed.Rules Civ.Proc.Rule 26(b)(5), 28 U.S.C.A.

[7] Federal Civil Procedure 170A ⚖ 1593

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(E) Discovery and Production of Documents and Other Tangible Things
            170AX(E)3 Particular Subject Matters
                170Ak1593 k. Government Records, Papers and Property. Most Cited Cases
Arrestee's need for information as to county sheriff's customs and policies regarding detentions outweighed the likely burden on sheriff in producing such evidence, supporting district court order that sheriff produce such evidence in accordance with arrestee's discovery requests, in arrestee's § 1983 unlawful detention claim, because the evidence was critical to arrestee's ability to prove his case, and sheriff failed to show that the burden of collecting such information would strain his fiscal or staff resources. Fed.Rules Civ.Proc.Rule 26(b)(2), 28 U.S.C.A.

*486 Marion R. Yagman, Stephen Yagman, Kathryn S. Bloomfield, Joseph Reichmann, Yagman & Yagman & Reichmann & Bloomfield, Venice Beach, CA, for plaintiffs.
Jeremy Warren, Franscell, Strickland, Roberts & Lawrence, Glendale, CA, for defendants.

ORDER DENYING MOTION FOR
RECONSIDERATION OF MAGISTRATE
JUDGE'S RULING

MORROW, District Judge.
Plaintiff Billie Earl Green alleges that he was unlawfully detained by defendant from July 6 to 14, 2001. He asserts a claim under 42 U.S.C. § 1983 for violation of his federal constitutional rights, and seeks to hold defendant liable under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Sheriff Leroy Baca has moved for reconsideration of Magistrate Judge Margaret Nagle's order compelling him to produce certain documents relevant to plaintiff's claim that defendant has a policy of detaining persons in violation of their right to be released within a reasonable time after the reason for their detention has ended.

I. BACKGROUND

Plaintiff alleges that defendant has an unconstitutional policy of detaining people for an unreasonable period of time after the reason for their detention has ended. Plaintiff was arrested by his parole officer in June 2001 for an alleged parole

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

violation, and placed in defendant's custody. On July 6, 2001, the Board of Prison Terms held a hearing at which it found that there was insufficient evidence that plaintiff had violated*487 the terms and conditions of his parole. The hearing officer ordered that plaintiff be released that day. Plaintiff was not released, however, until the early morning hours of July 14, 2001. Plaintiff contends that, despite this order, defendant unreasonably detained him until July 14, 2001. Defendant counters that he was not on notice that plaintiff was entitled to release until his office received a facsimile from the Department of Corrections on July 13, 2001. This facsimile included a teletype dated July 6, 2001, that authorized plaintiff's release.

On November 24, 2003, the court held a hearing on defendant's motion for summary judgment. It concluded that triable issues of fact remained as to whether the 12.5 hour delay between defendant's receipt of the facsimile on July 13, 2001, and his release of plaintiff on July 14, 2001, was reasonable. It further concluded that triable issues of fact remained as to whether defendant's failure to discover plaintiff's entitlement to release earlier than July 13, 2001, was the result of an unconstitutional policy, given plaintiff's complaints that he was entitled to release and his filing of a grievance. Finally, the court concluded preliminarily that it should find the fact that defendant received no official notice of plaintiff's entitlement to release prior to July 13, 2001, to be without substantial controversy pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. The court has, however, determined that plaintiff should be allowed to take the deposition of a key declarant on this issue, and thus it will refrain from a making definitive decision on this issue until plaintiff completes the deposition and submits opposition to defendant's reply.[FN1]

> FN1. Such a procedure is warranted because defendant first submitted the individual's declaration in reply. See *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996) ("We agree with the Seventh Circuit, which held that '[w]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond,'" citing *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir.1990)), cert. denied, 522 U.S. 808, 118 S.Ct. 48, 139 L.Ed.2d 14 (1997); see also *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1041 (9th Cir.2003) (citing *Provenz* for the proposition that a "district court may consider new evidence presented in a reply brief if the district court gives the adverse party an opportunity to respond").

The present motion concerns plaintiff's efforts to obtain documents that he believes will reveal that defendant has an unconstitutional policy of detaining persons for an unreasonable period of time after the reason for their detention has ended. On June 7, 2003, plaintiff served defendant with interrogatories and document production requests, seeking, *inter alia*, information concerning all "overdetentions" in the Los Angeles County jail ("LACJ") system for the five-year period preceding plaintiff's incarceration there.[FN2] Defendants objected to the interrogatories on the grounds that they were vague and ambiguous, overbroad, burdensome and oppressive, called for information protected by the attorney-client privilege, the attorney work product doctrine, and the official information privilege, called for a legal conclusion, and invaded the rights of third parties.

> FN2. Declaration of Jeremy B. Warren ("Warren Reconsideration Decl."), ¶¶ 2-3 & Ex. 1.

Plaintiff filed a motion to compel, and Judge Nagle held a hearing on the matter on August 26, 2003.[FN3] At that time, Judge Nagle indicated that she intended to order defendant to produce statistics regarding formal written claims and lawsuits alleging "overdetention"; before entering such an order, however, she stated that she would afford defendant an opportunity to submit evidence regarding his claim that the production of such records would be unduly burdensome.[FN4] Defendant filed several declarations regarding this issue on September 8, 2003.[FN5] On September 30, 2003, Judge Nagle held a telephonic conference. Plaintiff argued that certain relevant statistics had been published in reports compiled for defendant by Special Counsel Merrick J. Bobb. Judge Nagle again deferred a ruling on the motion to compel so that defendant might investigate the nature of these statistics.[FN6] Judge Nagle held a further*488 hearing regarding defendant's claim of burden on October 2, 2003.[FN7] That same day,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant moved *ex parte* in this court for a stay of all discovery relevant to plaintiff's claim that his injuries were the result of an unconstitutional policy. The court denied the application, noting, *inter alia*, that the motion was untimely.[FN8]

> FN3.*Id.*, ¶¶ 4-5.
>
> FN4.*Id.*, ¶ 5.
>
> FN5.*Id.*, ¶ 6.
>
> FN6.*Id.*, ¶ 8.
>
> FN7.*Id.*, ¶ 9.
>
> FN8. See Minute Order, October 7, 2003 (Docket Entry 50).

On October 6, 2003, Judge Nagle again deferred ruling on plaintiff's motion to compel; she ordered defendant to file a report regarding his efforts to obtain back-up documents for the statistics regarding "overdetentions" in fiscal years 1996-97 through 2000-01 that were contained in Merrick Bobb's December 2000 and October 2001 reports.[FN9] Defendant filed this report on October 15, 2003, and Judge Nagle held another telephonic conference on October 20, 2003.[FN10] At that time, she ordered that defendant produce by November 14, 2003, the back-up documents that supported Bobb's statistics regarding "overdetentions" for fiscal years 1999-2000 and 2000-01, as well as information pertaining to "overdetention" lawsuits and claims filed during this same period.[FN11] Judge Nagle directed that the documents be produced subject to an "attorneys' eyes only" protective order.[FN12] She further directed that defendant should produce redacted copies of documents protected by the attorney-client privilege or attorney work product doctrine, and compile a privilege log.[FN13] Judge Nagle stated that she would issue a written order after reviewing proposed orders to be submitted by the parties. No written order issued before this motion was filed.[FN14]

> FN9. Warren Reconsideration Decl., ¶ 9.
>
> FN10.*Id.*, ¶¶ 10-11.
>
> FN11.*Id.*, ¶ 11.

> FN12. Pl. Opp., 6:19-27.
>
> FN13. Warren Reconsideration Decl., ¶ 18.
>
> FN14.*Id.*, ¶ 16. Plaintiff contends the motion is therefore premature. (See Plaintiff's Opposition to Defendant Baca's Fed. Rule Civ. P. Rule 72(a) Reconsideration of Magistrate Judge's Discovery Ruling ("Pl.'s Opp.") at 5:5-11). The court agrees that, under the Rule 3.3.1 of the Local Rules Governing the Duties of Magistrate Judges, a party must seek reconsideration "[w]ithin ten (10) days of an oral ruling which the Magistrate Judge indicates will not be followed by a written ruling, or within ten (10) days of service upon him of a written ruling, or order on a pretrial matter not dispositive of a claim or defense...." Because Judge Nagle indicated that her oral ruling on October 20, 2003, would be followed by a written order, and because defendant filed this motion before that written order was issued, his motion is premature. Defendant likely filed the motion, however, because of the impending production date of November 14, 2003. Since the substance of Judge Nagle's order is, for the most part, clear, and since denying the motion without prejudice to its renewal after Judge Nagle's written order is filed would merely delay proceedings further, the court elects to hear the matter on the current record.

On November 3, 2003, defendant lodged a motion seeking reconsideration of Judge Nagle's October 20, 2003, order, and an *ex parte* application seeking a stay of the order until the motion for reconsideration could be heard and decided by the court. The court granted the *ex parte* application, ordered that the lodged motion be filed, and set an expedited briefing schedule on the reconsideration motion.[FN15] On the day plaintiff's opposition was due, plaintiff's counsel filed a declaration stating that it would be "impossible" to comply with the court's expedited briefing schedule, and withdrawing plaintiff's earlier opposition a stay of the October 20, 2003, order pending decision of the motion for reconsideration. Plaintiff's counsel requested that the motion be heard on December 1, 2003. The court granted plaintiff's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

request to reschedule the hearing, and set a new briefing schedule.[FN16] All briefs having now been filed, the matter is ready for decision.

> FN15. See Minute Order, November 5, 2003 (Docket Entry 56).

> FN16. See Minute Order, November 12, 2003 (Docket Entry 63).

## II. DISCUSSION

### A. Legal Standard For Review Of Magistrate Judge's Order

[1] A magistrate judge has authority to hear matters that are not dispositive of a *489 claim or defense. See FED.R.CIV.PROC. 72. These include discovery motions. See *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir.1991) ("Nondispositive issues include discovery sanctions"); *Hoar v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990) ("Matters concerning discovery generally are considered 'nondispositive' of the litigation").

A magistrate judge's order can be reversed by the district court only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A);[FN17] *Bhan, supra,* 929 F.2d at 1414. See also *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir.1992) ("the phrase 'contrary to law' indicates plenary review as to matters of law"); *Grimes v. City and County of San Francisco*, 951 F.2d 236, 240 (9th Cir.1991) (discovery sanctions are non-dispositive pretrial matters that are reviewed for clear error under Rule 72(a)); *F.D.I.C. v. Fidelity & Deposit Company of Maryland*, 196 F.R.D. 375, 378 (S.D.Cal.2000) ("The 'clearly erroneous' standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters"); *Medical Imaging Centers of America, Inc. v. Lichtenstein*, 917 F.Supp. 717, 719 (S.D.Cal.1996) ("Section 636(b)(1) ... has been interpreted to provide for *de novo* review by the district court on issues of law").

> FN17. While defendant correctly cites the "clearly erroneous or contrary to law" standard in his memorandum, he also asserts that the district court must make a *de novo* review of those portions of the magistrate judge's report to which objection are made, and that it may accept, reject, or modify, in whole or in part, the findings and recommendation of the magistrate judge. (See Defendant's Motion for Fed.R.Civ.P. Rule 72(a) Reconsideration of Magistrate Judge's Discovery Ruling ("Def.'s Mot.") at 6:8-16.) The portion of § 636(b) cited does not apply to pretrial discovery orders such as that Judge Nagle entered in this case. Rather, it applies to reports and recommendations filed by a magistrate judge respecting motions for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information, to suppress evidence in a criminal case, to dismiss or permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to dismiss an action involuntarily. See 28 U.S.C. § 636(b)(1)(A), (b)(1)(B), (b)(1)(C).

[2] The clearly erroneous standard, which applies to a magistrate judge's findings of fact, is "significantly deferential, requiring 'a definite and firm conviction that a mistake has been committed.'" *Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993); *Security Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1014 (9th Cir.1997). In contrast, "[t]he 'contrary to law' standard ... permits independent review of purely legal determinations by the magistrate judge." *Fidelity & Deposit Company of Maryland, supra,* 196 F.R.D. at 378 (citing *Haines, supra,* 975 F.2d at 91).

### B. Whether Judge Nagle Erred In Ordering Any Response To The Interrogatories And Document Production Requests

Defendant argues first that Judge Nagle erred in ordering that he provide any form of response to plaintiff's interrogatories and document production requests.[FN18] Specifically, defendant asserts that the interrogatories were vague, ambiguous and overbroad in their use of the word "overdetention." Defendant contends that whether a particular inmate has been "overdetained" requires an evaluation of all the circumstances of the case, and a legal conclusion as

to whether, in light of those circumstances, the detention was reasonable.[FN19] He further contends that providing a complete answer would require review of custody records for hundreds of thousands of inmates, and that even if such a review were conducted, it would be impossible*490 to identify each individual who "contended" that he or she was overdetained.[FN20]

> FN18. Plaintiff argues that this aspect of defendant's motion is untimely because he did not seek reconsideration within ten days of August 26, 2003, the date on which Judge Nagle indicated that she intended to order production of statistics regarding formal written claims and lawsuits alleging "overdetention." Judge Nagle entered no final order on August 26, however. Rather, she permitted defendant to submit evidence regarding the allegedly burdensome nature of the production she contemplated, and thereafter held further hearings regarding the matter. Accordingly, the court concludes that defendant's challenge to Judge Nagle's refusal to sustain his objections to plaintiff's interrogatories and document production requests in toto is timely.

> FN19. See Def.'s Mot. at 8:9-9:13.

> FN20. See id. at 9:14-10:3.

[3][4] It is clear, however, that Judge Nagle did not order responses to the interrogatories and document production requests as propounded by plaintiff. Rather, she narrowed the requests, and directed defendant to produce records and information concerning written claims, demands, and suits alleging overdetention, as well as back-up documentation supporting the "overdetention" statistics contained in the Bobb reports. It is within the discretion of a court ruling on a motion to compel to narrow the requests rather than sustain the responding party's objections to them in toto. In doing so, the court effectively sustains an objection that the requests are vague, ambiguous or overbroad in part, and overrules it in part. See, e.g., *Salamon v. Our Lady of Victory Hospital*, No. 99-CV-0048E(SR), 2002 WL 436766 (W.D.N.Y. Feb. 12, 2002) ("... this Court is perfectly capable of limiting plaintiff's document requests to ensure that compliance therewith is neither overbroad nor unduly burdensome"); *In re Control Data Corporation Securities Litigation*, No. 3-85-1241, 1988 WL 92085, * 4 (D.Minn. Feb. 22, 1988) ("In order to resolve a discovery dispute, the court may properly narrow the scope of a discovery request"); see also, e.g., *United States Environmental Protection Agency v. Alyeska Pipeline Service Co.*, 836 F.2d 443, 448 (9th Cir.1988) ("The district court limited the scope of the subpoena, refusing to enforce requests for documents relevant to discharges at sea or in foreign countries and tankers that have no connection with the Valdez terminal as irrelevant to a legitimate purpose"); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1540 (11th Cir.1985) (noting that the district court ordered "more narrow discovery" than that originally sought); *Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 588 (3d Cir.1982) ("... the district court limited the scope of those interrogatories to 'activities occurring within or concerning Pennsylvania or citizens of Pennsylvania'"); *Harner v. Greyhound Lines, Inc.*, No. CIV.A. 02-0088, 2003 WL 147774, * 2 (E.D.Pa. Jan. 10, 2003) ("Keeping the liberal scope of discovery in mind, this Court agrees with the Defendant only to the extent that Plaintiff must narrow its focus to documents within the past five years concerning persons with physical disabilities"); *Cohen v. Brown University*, No. CA 92-197 L, 1999 WL 695235, * 4 (D.R.I. May 19, 1999) ("The Plaintiffs[ ] have drawn their proposed discovery request relatively narrowly and this court will narrow it further still"); *Atlapac Trading Co. v. American Motorists Ins. Co.*, No. CV 97-0781 CBM, 1997 WL 1941512, * 8 (C.D.Cal. Sept. 19, 1997) ("... the Court limits Defendant's discovery to those portions of the special interrogatories and request for production of documents that the Court finds specifically address exclusions under the Policy"); *Amgen, Inc. v. Elanex Pharmaceuticals, Inc.*, 160 F.R.D. 134, 137 (W.D.Wash.1994) ("... the Court hereby grants Amgen's motion to compel. The information to be produced, however, is limited in scope to that information calculated to lead to admissible evidence of (1) whether Elanex made, used or sold EPO within the United States during the term of the '008 patent, and (2) whether Elanex induced others to infringe the '008 patent").

Defendant does not contend that the narrowed scope of discovery ordered by Judge Nagle is vague or

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ambiguous. Moreover, because the categories of information and documents that must be produced pursuant to Judge Nagle's order define "overdetention" by reference to written complaints and lawsuits, on the one hand, and the Bobb reports, on the other, defendant need not draw any legal conclusions in order to respond. Because defendant has not shown that Judge Nagle exceeded her discretion in narrowing plaintiff's requests rather than sustaining defendant's objections in toto, and because he has failed to demonstrate that the requests as narrowed are vague, ambiguous, or call for a legal conclusion, he has not established that Judge Nagle's refusal to deny plaintiff's motion to compel outright was clearly erroneous. His first challenge, therefore, fails.

*491 B. Undue Burden and Expense

Defendant next contends that "[t]he limited relevance of the[ ] documents and information [Judge Nagle ordered him to produce] is far outweighed by the burden placed on [him] ... to produce them." FN21 Defendant also contends that "most" of the documents whose production Judge Nagle has ordered are protected by a variety of evidentiary privileges. FN22 Judge Nagle specifically noted this possibility in her order, however, stating that defendant need not produce privileged documents so long as he prepared an appropriate privilege log so the assertion of privilege could be tested.

FN21. *Id.* at 2:13-15.

FN22. Defendant invokes the attorney-client privilege, the attorney work product doctrine, the official information privilege, and third parties' rights to privacy. See *id.* at 10:25-14:21.

[5] A party may not make a blanket assertion of privilege in response to a discovery request. See, e.g., FED. R. CIV. PROC. 26(b)(5) ("When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection"); *Lappin v. Gwartney,* No. CIV. A. 99-2292-KHV, 2001 WL 185167, * 4 (D.Kan. Feb.20, 2001) ("A 'blanket claim' as to applicability of the [attorney-client] privilege does not satisfy the burden of proof"); *Fears v. Wal-Mart Stores, Inc.,* No. 99-2515-JLW, 2000 WL 1679418, * 4 (D.Kan. Oct.13, 2000) (stating that defendant "also objected on the grounds that the request 'seeks information protected by attorney/client privilege and/or attorney work product.' It did not identify the claimed privileged or protected documents in any way, either in its initial responses or in its response to the Show Cause Order. Nor did it provide a privilege log to Plaintiff.... The Court ... overrule[s] the objections as to attorney-client privilege and work product protection. As the party asserting the attorney-client privilege and work product immunity, Defendant has the burden to establish that the privilege/immunity applies. To carry that burden, Defendant must make a 'clear showing' that the asserted objection applies.... [The] party asserting the objection must 'describe in detail' the documents or information sought to be protected.... A 'blanket claim' as to the applicability of the privilege/work product doctrine does not satisfy the burden of proof"); *Eureka Financial Corp. v. Hartford Accident and Indemnity Co.,* 136 F.R.D. 179, 182-83 (E.D.Cal.1991) ("Whether a responding party states a general objection to an entire discovery document on the basis of privilege, or generally asserts a privilege objection within an individual discovery response, the resulting 'blanket objection' is decidedly improper"); *Emerson Electric Co. v. Ouellette,* No. Civ.A. 96-364-B, 1998 WL 34088465, * 7 (D.N.H. May 12, 1998) ("... a blanket claim of privilege is generally an inadequate response to a discovery request"); *Glaxo, Inc. v. Torphram, Inc.,* No. 95 C 4686, 1996 WL 411487, * 5 (N.D.Ill. July 18, 1996) ("Blanket assertions of privilege are insufficient to avoid discovery; instead, documents must be described with particularity and must be accompanied by a particularized assertion of privilege").

[6] Recognizing this, defendant argues that he does not assert a blanket objection; rather, he contends, he maintains only that segregating privileged from unprivileged documents will be too burdensome. FN23 This, however, effectively *is* a blanket privilege objection, since defendant's claim of burden rests on general assertions regarding the existence of privileged material. Defendant makes no

particularized showing that *any* documents are privileged. Nor does he provide any information that would permit plaintiff to test the assertion of privilege, or allow the court to rule on such a challenge. Accordingly, Judge Nagle did not clearly err in rejecting defendant's objection that the identification and separation of privileged documents would be so burdensome that no response*492 to plaintiff's discovery requests should be ordered.[FN24]

FN23. *Id.* at 13:25-28.

FN24. Defendant also appears to argue that production of the documents ordered by Judge Nagle will violate Rule 407 of the Federal Rules of Evidence. That rule provides that "[w]hen, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." FED. R. EVID. 407. Defendant asserts that "the response by the Department to possible 'overdetentions' constitutes a subsequent remedial measure." (Def.'s Mot. at 16:1-2.) Defendant does not explain how the documents that are the subject of Judge Nagle's order would disclose subsequent remedial measures. Written claims and lawsuits would not reveal information regarding such measures, but rather challenge existing practices of the Sheriff's Department. Similarly, because the Bobb reports provide statistics regarding the number of "overdetentions" in various categories annually, it is unclear how back-up documentation for the statistics would reveal subsequent remedial measures. Defendant's description of the back-up documents, in fact, indicates that they consist primarily of investigative files regarding various inmates' detentions. Files of this type would not record information regarding remedial measures by the Sheriff's Department. Even if some of the documents did reveal such measures, moreover, the information they impart might well be admissible for the "other purpose" of proving what defendant's detention policy was in July 2001.

As respects defendant's general burden objection, he proffers evidence that approximately 1,000 person hours will be required to review the investigative files that constitute the back-up documentation for the statistics in the Bobb reports.[FN25] Counsel for defendant states that an additional 200 person hours will be required to conduct a legal review of the information culled from the files, redact documents as necessary and create a privilege log. He estimates that these tasks will cost $26,000.[FN26] As respects production of written claims and lawsuits alleging overdetention, defendant proffers evidence that neither tort claims nor lawsuits are indexed according to the nature of the claim.[FN27] In order to segregate those alleging overdetentions, therefore, defendant would have to review approximately 1,500 lawsuits and several thousand tort claims filed or lodged during 1999-2001.[FN28] A representative of the County Counsel's Office estimates that a review of lawsuits would consume at least 3,000 hours,[FN29] while the administrator in charge of tort claims for the county states that it would take "an untold number of hours" to provide responsive information.[FN30]

FN25. Declaration of Charles Jackson ("Jackson Decl."), ¶ 16.

FN26. Warren Reconsideration Decl., ¶¶ 19-21. In a declaration filed before Judge Nagle, Warren estimated that this task would consume 500 hours at an estimated cost of $60,000. (See Declaration of Jeremy B. Warren ("Warren Motion Decl."), ¶ 14.) The fact that this estimate has been reduced so substantially cast doubt on the approximations advanced.

FN27. As respects the possibility that Judge Nagle's order is sufficiently broad to require production of class member claims in *Williams v. Block*, Case No. CV 97-3826 CW, the court directs the parties to address

this issue with Judge Nagle in the first instance. Had defendant waited until Judge Nagle filed a written order before bringing this motion, it is likely that this issue would have been resolved. Because he filed this motion prematurely, the scope of Judge Nagle's reference to "written claims" remains in some doubt. Given her greater familiarity with the issues raised, this court defers to Judge Nagle the fashioning of an order that precisely defines the documents to be produced.

FN28. Declaration of Roy Sinclair ("Sinclair Decl."), ¶¶ 6-7; Declaration of Eleanor Kagan ("Kagan Decl."), ¶ 6.

FN29. Kagan Decl., ¶ 10.

FN30. Sinclair Decl., ¶ 7.

The court cannot accept defendant's time estimates at face value. First, the individuals who provided the estimates based their approximations on the number of records generated between 1996 and 2001.[FN31] Judge Nagle, however, directed only that records for the years 1999-2000 and 2000-01 be produced. Second, it is likely that many, if not most, of the lawsuits and tort claims that must be reviewed involve issues other than *493 overdetention (e.g., excessive force, false arrest, etc.). It will take only a minute or two to determine that these files are not relevant, and to set them aside. Accordingly, estimates that the review will consume thousands of hours to complete appear grossly inflated. For this reason, the court does not have a "firm conviction" that Judge Nagle erred in ordering production of the records in question.

FN31. See Sinclair Decl., ¶ 7; Kagan Decl., ¶ 10; Jackson Decl., ¶ 16.

[7] Plaintiff's need for the discovery also supports a finding that the ruling is not clearly erroneous. To prevail in this lawsuit, plaintiff must adduce evidence of defendant's policies, customs and practices that is presently within defendant's exclusive possession. Under Rule 26(b)(2), courts must weigh the burden or expense of proposed discovery against its likely benefit, taking into account "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." FED. R. CIV. PROC. 26(b)(2). See also, e.g., Graham v. Casey's General Stores, 206 F.R.D. 251, 253 (S.D.Ind.2002) (quoting Rule 26(b)(2)); Smith v. Pfizer, Inc., No. CIV.A. 98-4156-CM, 2000 WL 1679483, *2 (D.Kan. Oct. 26, 2000) (stating that discovery may be denied as unduly burdensome where the " 'harm to the person from whom discovery is sought outweighs the need of the person seeking discovery,' " quoting Koch v. Koch Industries, No. 85-1636-C, 1991 WL 241814, *6 (D.Kan. Oct. 24, 1991)); Playboy Enterprises, Inc. v. Welles, 60 F.Supp.2d 1050, 1053-54 (S.D.Cal.1999) ("In determining whether a request for discovery will be unduly burdensome to the responding party, the court weighs the benefit and burden of the discovery.... This balance requires a court to consider the needs of the case, the amount in controversy, the importance of the issues at stake, the potential for finding relevant material and the importance of the proposed discovery in resolving the issues"). Here, plaintiff's need for information regarding defendant's customs and policies outweighs the likely burden in producing such evidence because the evidence, which concerns important constitutional issues, is critical to plaintiff's ability to prove his case. Defendant, moreover, has not made a convincing argument that the burden of collecting such information will strain its fiscal or staff resources.

In sum, the court concludes that Judge Nagle did not clearly err in ordering defendant to produce the back-up documents that support Merrick Bobb's statistics regarding "overdetentions" for fiscal years 1999-2000 and 2000-01, and information pertaining to "overdetention" lawsuits and claims filed during that same period.[FN32]

FN32. For the reasons stated, defendant's initial review of investigative files, lawsuits and tort claims to determine precisely how many involve issues of detention should not be unduly time-consuming or expensive. Should this initial review demonstrate that the number of files at issue is significantly greater than could have been anticipated, defendant may of course return to Judge Nagle and seek a modification of her order with this additional data in hand.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

219 F.R.D. 485  
219 F.R.D. 485  
(Cite as: 219 F.R.D. 485)

Page 10

### III. CONCLUSION

For the reasons stated, the court denies defendant's motion for reconsideration of the magistrate judge's discovery order, and refers the matter to Judge Nagle for issuance of a specific written order that details the documents defendant is to produce. The court requests that Judge Nagle issue the order within ten days of the date hereof.[FN33]

> FN33. Having elected to file this motion before entry of a written order by Judge Nagle, defendant may not seek reconsideration of the order once issued on the grounds that production pursuant thereto would be overly burdensome. As stated in note 32 above, any disputes regarding the specifics of the production order should be addressed to Judge Nagle, as should disputes regarding the applicability of the attorney-client privilege or work product doctrine. Only if Judge Nagle issues further orders may defendant seek reconsideration in this court.

C.D.Cal.,2003.  
Green v. Baca  
219 F.R.D. 485

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.