## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

|  |  |  |  |
|---|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | | * * * * | CIVIL ACTION |
| | | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | | * * | and consolidated cases |
| | | * | SECTION "K" (2) |
| *Boutte v. Lafarge* | 05-5531 | * | |
| *Mumford v. Ingram* | 05-5724 | * | |
| *Lagarde v. Lafarge* | 06-5342 | * | JUDGE |
| *Perry v. Ingram* | 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | * | |
| *Parfait Family v. USA* | 07-3500 | * | MAG. |
| *Lafarge v. USA* | 07-5178 | * | JOSEPH C. WILKINSON, JR. |
| | | * | |

## MEMORANDUM IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER PURSUANT TO FRCP RULE 26(c) QUASHING PLAINTIFFS' SUBPOENA AND RULE 45 REQUESTS OF JANUARY 28, 2008, AND LAFARGE NORTH AMERICA, INC.'S SUBPOENA AND RULE 45 REQUESTS OF FEBRUARY 7, 2008, ISSUED TO THE GREATER NEW ORLEANS BARGE FLEETING ASSOCIATION

**MAY IT PLEASE THE COURT:**

The Greater New Orleans Barge Fleeting Association ("GNOBFA"), not a party to this action, moves for a protective order quashing the subpoenas and Rule 45 Requests issued by and through Plaintiffs and Lafarge North America, Inc. ("Lafarge"), in this consolidated action.

## BRIEF FACTUAL BACKGROUND

This action arises out of the alleged Katrina Canal Breaches as a result of various barges allegedly alliding with the levees of canals in the Ninth Ward of New Orleans, Louisiana, and causing subsequent breaches of the levees.  The action has been consolidated in this Court as pending CIVIL ACTION NO. 05-4182 and consolidated cases.

Plaintiffs and, in turn, Lafarge have subpoenaed several maritime associations in this action, including GNOBFA, pursuant to Rule 45 of the Federal Rules of Civil Procedure.

The Nature of Movant, The Greater New Orleans Barge Fleeting Association

GNOBFA was founded in 1977 and is a non-profit association of companies engaged in the operation of barge fleets and towboats in the New Orleans -- Baton Rouge corridor.

Under Article II of its Constitution, its purpose is to promote a closer professional relationship between members, to disseminate information pertaining to fleeting and the river industry, to support member companies when consistent with the interests of the organization as a whole, and to improve relations with communities, regulating government bodies, and other professional organizations.

The affairs of GNOBFA are administered by a Board of Directors.  The Association as a whole meets in the Spring of each year.  At this meeting and at other times throughout the year, GNOBFA presents seminars and its Committees meet.

The Association is not an investigating, lobbying or special interest organization.  Instead, its membership is composed of all participants in the marine world.  In no case does GNOBFA investigate facts, adjudicate cases or express opinions about the facts or outcome of particular cases.

The Subpoenas and Rule 45 Requests

On or about January 28, 2008, a subpoena issued by plaintiffs was received at the office of the President of GNOBFA, Karl C. Gonzales, in Harahan, Louisiana. Attached to the subpoena was a request pursuant to FRCP Rule 45 for Mr. Gonzales to appear at the offices of Brian A. Gilbert in New Orleans and to produce documents (collectively, Exhibit "A").

The plaintiffs' Rule 45 requests demanded nine categories of documents, each category (although numerically different) identical to categories of documents also requested of the Maritime Law Association ("MLA"), a copy of which is attached hereto as Exhibit "B." Upon comparison of the requests made on GNOBFA and the MLA (Exhibits "A" and "B," respectively), the ten (incorrectly numbered as 11) requests made upon GNOBFA coincide identically with requests 5-14 made upon the MLA, which requests were denied by this Court when it granted the MLA's Motion for a Protective Order on March 19, 2008 (Rec. Doc. No. 11670, attached hereto as Exhibit "C").

Later, on February 7, 2008, another subpoena issued by Lafarge was received at Mr. Gonzales' office with a similar Rule 45 request to appear at the offices of Chaffe McCall, L.L.P., in New Orleans and to produce documents (collectively, Exhibit "D"). In addition to assuming the requests made by the plaintiffs, the Lafarge request called for GNOBFA to "produce documents regarding any and all barges that broke away from any and all fleets or facilities in the greater New Orleans area during the hurricane Katrina event."

## LAW AND STANDARD OF REVIEW

The federal discovery rules are accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176

(1979). Nevertheless, discovery does have "ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor,* 329 U.S. 495, 507 (1947)).

**I.      RULE 26(b) LIMITS THE SCOPE OF PERMISSIBLE DISCOVERY TO MATTERS RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES.**

Rule 26(b), which defines "Discovery Scope and Limits," allows parties to obtain discovery only of a matter that is "relevant to the claim or defense of any party" or "reasonably calculated to lead to the discovery of admissible evidence." FRCP Rule 26(b)(1). Thus, the permissible scope of discovery only extends to the efforts to learn facts or opinions that are relevant to the individual case in which the discovery is sought. The only additional discovery which can properly be demanded concerns the opinions of experts as described in Rule 26(b)(4).

As was stated in the Advisory Committee notes to the 1946 amendments to Rule 26(b), "matters entirely without bearing either as direct evidence or as leads to evidenced are not within the scope of inquiry . . ." Moreover, because of the proliferation of abuse of discovery despite the 1946 amendment, Rule 26(b) has been successively revised since that time to increasingly narrow the limits of party-initiated discovery. For example, in 1983, the Rule was amended "to add a sentence to deal with the problem of over-discovery" so as to "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Advisory Committee Notes to Rule 26(b), 1983 amendment.

Since abuses continued, in the amendments to Rule 26 in 2000, the Advisory Committee stated that it "intend[ed] that the parties and the court focus on the actual claims and defenses involved in the action . . . The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they

have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." In addition, an "otherwise redundant" sentence was added to the Rule "to emphasize the need for active judicial use of subdivision (b)(2) to control excessive discovery." *Id.*

At the same time, Rule 26(b) was also "amended to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." Advisory Committee Notes, 2000 Amendments to Rule 26(b)(1). Although "relevant" is not defined in the procedural rules, the Federal Rules of Evidence clarify in Rule 401 that relevance is to be gauged in relation to the *facts* at issue in the particular lawsuit.

> "Relevant evidence" means evidence having any tendency to make the existence of any *fact* that is of consequence to the determination of the action more probably or less probable than it would be without evidence.

(Emphasis added.)

Accordingly, the proper province of discovery is uncovering facts relevant to the particular action. The only other permissible area for discovery concerns the opinions of experts who may testify at trial. *See* FRCP Rule 26(b)(4). Whether facts or opinions, however, discovery must be tied to the particular claims and defense at issue in a given matter.

## II.  FEDERAL DISTRICT COURTS HAVE AUTHORITY TO PROHIBIT DISCOVERY THAT IS OPPRESSIVE OR IMPOSES AN UNDUE BURDEN.

Federal Rule of Civil Procedure 26(c) expressly empowers United States District Courts to issue protective orders to prohibit discovery that subjects a person to "oppression, or undue burden or expense . . ." Thus, courts have entered orders preventing discovery when the person

from whom discovery is sought lacks knowledge of the facts relevant to the action. *See, e.g.,*
*Lewelling v. Framers Ins.*, 879 F.2d 212, 218 (6th Cir. 1989); *Thomas v. International Business*
*Machines*, 48 F.3d 478, 483 (10th Cir. 1995); 6 Moore's Federal Practice § 26.105[2][a] at 26-
521 (3rd ed.) (courts are willing to prohibit discovery where the person from whom discovery is
sought "can establish as a threshold matter a lack of knowledge of any pertinent facts bearing on
the action").

Courts have also been willing to prohibit discovery where permitting discovery to go
forward would have a chilling effect on the exercise of legitimate rights. *See Rivers v. NIBCO,*
364 F.3d 1057, 1064-65 (9th Cir. 2004); 6 Moore's Federal Practices § 26.105[2][a] at 26-521
(3rd ed).

## III.   RULES 26(b), 26(c) AND 45(c) REQUIRE COURTS TO PROHIBIT DISCOVERY THAT IMPOSES AN UNDUE BURDEN, ESPECIALLY ON NONPARTIES.

In addition to the limits on discovery defined in Rule 26(b)(1), Rule 26(b)(2)(C) provides
that, in evaluating a discovery request, a court must consider whether "(i) the discovery sought . .
. is obtainable from some other source that is more convenient, less burdensome, or less
expensive" or "(iii) the burden or expense of the proposed discovery outweighs its likely benefit .
. . ."

Rule 45(c)0.(3)(uv) supplements Rule 26(b)(2)(C)'s prohibition on unreasonably
burdensome discovery by providing that a court shall quash or modify a subpoena if the
subpoena subjects a person to undue burden. *Travelers Indemnity Co. v. Metro. Life Ins. Co.*,
228 F.R.D. 111, 2005 WL 975661 at *2 (D. Conn. Apr. 28, 2005).

An evaluation of the undue burden, set forth in Federal Rule of Civil Procedure 45(c)(3)(A)(iv), requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party. *Travelers*, 2005 WL 975661, at *2. Whether a subpoena imposes an "undue burden" depends upon "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.*

Courts also give special weight to the burden on non-parties of producing documents to parties involved in litigation. *Cusamano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir. 1998). The determination of the issue of burden and reasonableness is committed to the sound discretion of the trial court. *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

## ARGUMENT

Plaintiff's subpoena is an abuse of discovery for several reasons.

In granting the Motion for a Protective Order filed by the Maritime Law Association, this Court has already stated:

> The proposed deponent is neither a witness to nor an investigator of any of the factual events that are subject of this litigation, nor an expert retained by any party as either a consultant or to testify. The theoretical ruminations of this professional association concerning legal topics related to Hurricane Katrina are wholly unlikely to lead to the discovery of admissible evidence. Even if the requests in the subpoena can be seen to have some relevance to the "subject matter" of this case, "good cause" sufficient to extend the scope of discovery to this kind of third-party subpoena has not been established. Fed R. Civ. P. 26(b)(1).

(Rec. Doc. 11670). This Court accordingly quashed the subpoena, ruling that its scope was unreasonable. The above analysis plainly applies here to GNOBFA in the same manner.

GNOBFA, as part of its policy as a nonprofit trade association, avoids taking a position on substantive legal issues. GNOBFA does not generate, investigate, or adjudicate the facts relevant to any particular case. Instead, its members use GNOBFA meetings as a forum for discussion, on a general basis, of current maritime issues. Accordingly, if there were any discussion of the instant case, it can have no bearing on the outcome of the Katrina Canal Breaches litigation and is irrelevant to the dispute.

Trade associations should be permitted to direct their time, energy and financial resources to the end of improving the field, not to dealing with unreasonable, burdensome and ultimately pointless discovery exercises. It is for this reason that GNOBFA is making the instant motion. To accede to the Plaintiffs' and Lafarge's demands in the instant case would be to expose GNOBFA to an endless string of boilerplate discovery demands from parties to maritime cases, or for that matter, nonmaritime cases, who engage in scattershot discovery instead of taking the time to tailor discovery to the particular claims and defenses raised in their particular suits. Responding to such intrusive and wasteful endeavors would make it impossible for trade associations to fulfill their missions.

Because of the nature of trade association discussions, the instant discovery demands are completely outside the permissible scope of discovery as defined by Rule 26(b). As with any trade association, the discussions and presentations at both Committee and General meetings of GNOBFA, by their nature, cannot be evidence relevant to the facts in any case (except in a case in which those very proceedings were the subject matter of the suit); nor can they lead to the discovery of admissible evidence in a case. Moreover, to the extent that members express opinions at trade association meetings, such opinions are not discoverable unless the person has

been retained to an expert in and is expressing opinions about matters relevant to a particular suit, which is not the case here. As far as GNOBFA is aware, no one who attended any of the meetings for which Plaintiffs seek records has been retained as a legal expert in this matter. Accordingly, Plaintiffs' subpoena and Rule 45 requests are not within the permissible scope of discovery.

With respect to Rule 26(b)(2)(i), any GNOBFA documents that even mention Katrina in any context are available on the GNOBFA website. Accordingly, the instant discovery should be quashed simply because any GNOBFA documents are obtainable from a more convenient, less burdensome, and less expense course. By definition, however, any such material could not be relevant to any claim or defense at issue in these consolidated cases because any mention of Katrina was necessarily only in the context of a general consideration of the insurance and maritime issues arising from the disaster and, by their very nature, any such discussions could neither state nor develop the facts relevant to the instant proceedings.

That there are alternative sources for GNOBFA documents, however, is not the point: The real issue is whether or not litigants should be encouraged to impose severe burdens on trade associations, especially those like GNOBFA by papering the world with discovery requests that simply cannot produce any relevant evidence and are not reasonably calculated to lead to the discovery of admissible evidence.

Here, Plaintiffs' and Lafarge's demands do not even come close to seeking information that could constitute relevant evidence or lead to the discovery of admissible evidence. Plaintiffs and Lafarge might as well serve requests on every bar and trade association that might have

discussed in some context any of the cases spawned by Katrina or Rita or on newspapers that reported on the related events. Such abuse of discovery should not be rewarded.

Apart from burdening GNOBFA without any possibility of discovering relevant evidence or information that would lead to admissible evidence, demands such as that at issue here will have the effect of chilling the free-flowing discussion that is essential to the proper functioning of a bar association. If such document demands are permitted, depositions will surely follow. Persons who have no connection to a particular suit will refrain from commenting on the law or potential issues suggesting reforms if by participating in trade association meetings and discussions, they will be exposing themselves to depositions at the whim of a party.

## CONCLUSION

GNOBFA meetings are a forum of free discussion and are simply not a means in which admissible evidence or any other information leading to the discovery of admissible information can be found. Trade associations such as GNOBFA should not be subject to overreaching fishing expeditions in the form of FRCP 45 subpoenas. The breadth of the subpoenas constitute an enormous imposition on the resources of the Association.

The nature of trade associations are such that they should be free of third party litigation. The particular facts relevant to a specific case, which is what discovery is supposed to develop, can never be created or revealed by industry members engaging in discussions in a trade association meeting. If the litigant wants the opinions of GNOBFA members who comment on a case in a committee meeting, general meeting or seminars then such "opinions" should be considered expert opinions and the individuals should so be engaged as experts by the litigants. Until particular GNOBFA members are engaged as experts, their opinions can have no relevance

whatsoever to a given matter and therefore, should not be discoverable. The imposition on GNOBFA or other associations goes beyond the dictates of FRCP 26 discovery.

The subpoenas are clearly an abuse of Rule 45 and subject GNOBFA, not a party to this lawsuit, to an unreasonable burden. Additionally, the Plaintiffs and Lafarge demand documents that have no bearing on the outcome of the case; and therefore, the requested information is irrelevant to the lawsuit. This Court has recently ruled as such in response to identical requests made upon the Maritime Law Association.

Accordingly, Movant, the Greater New Orleans Barge Fleeting Association, respectfully requests this Honorable Court to quash the Plaintiffs' and Lafarge North AMERICA, Inc's respective subpoenas.

Respectfully submitted,

_/s/ Jean-Paul A. Escudier_

JEFFERSON R. TILLERY (#17831)
JEAN-PAUL A. ESCUDIER (#29177)
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8000
Facsimile: (504) 582-8583
Attorneys for Greater New Orleans
  Barge Fleeting Association

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record electronically, by facsimile, by hand or by depositing same in the U.S. mail, postage prepaid and properly addressed this 28th day of March, 2008.

_/s/ Jean-Paul A. Escudier_