UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182<br><br>SECTION "K" (2) |

FILED IN:   05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6324,
05-6327, 06-0225, 06-0886, 06-1885, 06-2278, 06-2287,
06-4065, 06-4389, 06-4634, 06-4931, 06-5032, 06-5159,
06-5161, 06-5260, 06-5937, 07-1271

PERTAINS TO: LEVEE & MRGO
_____

### SECOND AMENDED NOTICE OF FEDERAL RULE 30(b)(6) DEPOSITION

TO:   To all Defendants and their respective counsel,
Through Defense Liaison Attorney of Record:
Ralph S. Hubbard III
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras St., Suite 2775
New Orleans, Louisiana 70130-6041

PLEASE TAKE NOTICE that Plaintiffs, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, will take the deposition upon oral examination of the **ORLEANS LEVEE DISTRICT** (hereinafter the "OLD"), concerning the matters as set forth on Exhibit A and B attached hereto.

The oral examination will commence on **Thursday, April 10, 2008 at 1:00 p.m.**, to be held at McCranie, Sistrunk, Anzelmo, Hardy, Maxwell & McDaniel, 3445 N Causeway Blvd, Ste. 800,  Metairie, LA 70002-3728 and will continue from day to day until completed.  The depositions will be taken before a Notary Public or some other officer authorized to administer oaths under the law.  You are invited to attend and examine the witnesses if you so desire.

The **ORLEANS LEVEE DISTRICT** is requested to designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and to set forth, for each person designated, the matters on which the person will testify.

In connection with and pursuant to Fed. Rule of Civil Procedure 30(b)(5), the deponent is requested to designate and produce for inspection and copying documents responsive to this Notice five (5) business days prior to the deposition as identified on Exhibit "B."

## DEFINITIONS

1. "You" and its various forms such as "your" and "yourself" shall mean the person subject to this notice and/or subpoena and/or request for production and all present and former agents, employees, representatives, attorneys, custodian of records, and all other persons acting on behalf of such person, including, but not limited to, deponent, its divisions, parents, subsidiaries, related companies or corporations, predecessors, successors, and all present and former officers, directors, agents, employees, representatives, and attorneys, and all other persons acting or purporting to act on behalf of deponent.

2. "Documents" shall mean or refer to all written or graphic matter of every kind of description, however, produced or reproduced, whether draft or final, original or reproduction, and all tangible things within the scope of Federal Rule of Civil Procedure 30(b)(6), specifically including, but not limited to: writings, graphs, charts, photographs, satellite and/or radar imagery, telephone records, data compilations (from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form), letters, correspondence, e-mail communications, memoranda, minutes, notes, contracts, agreements, books, diaries, time sheets, laboratory books, logs, bulletins, circular, notices, rules, regulations, prospects, directions, teletype messages, inter-office communications, intra-office communications, reports, company worksheets, credit files, evidence of indebtedness, negotiable instruments, telegrams, mailgrams, books, news releases, newspapers, magazines, advertisements, periodicals, pamphlets, sketches, drawings, statements, reports, articles of

incorporation, by-laws, directives, minutes of meetings, balance sheets, income and loss statements, profit and loss statements, inventories, operating budgets, accounting worksheets, financial accounts, bills, vouchers, bank checks, proposals, offers, orders, acknowledgments, receipts, invoices, checks, working papers, telephone messages (whether written or recorded), notebooks, post cards, evaluations, recommendations, annual reports, confirmations, leases, analyses, feasibility or market studies, disbursement requests or orders, charts, graphs, indices, projections, forms, data sheets, data processing discs, or readable computer-produced interpretations thereof, booklets, articles, manuals, speeches, stenographic notes, maps, studies, tests, surveys, cables, tape and disc recordings (both audio and video), blueprints, containers, cartons, package labels, slides, audit reports, tender offers or invitations, personal interviews, and summaries, abstracts, compilations or paraphrases of any of the foregoing, or material similar to any of the foregoing, however denominated, which are in the possession, custody or control of the party upon whom this subpoena and/or request for production of documents is served or to which said party can obtain access. The subpoena and/or request for production of documents calls for originals, unless otherwise specified, and for all copies when originals are not available. If a document has been prepared in several copies, or additional copies have been made and the copies are not identified (or by reason of subsequent modification of the copy by additions or notations, or other modifications, are no longer identical), each non-identical copy is a separate "document."

3. With respect to the production of any documents which are claimed to be privileged, a statement shall be provided by the attorneys for the respondent setting forth as to each such documents (and, where applicable, each attachment thereto):

    a. the name of the sender, if any, of the documents;
    b. the name of the author of the document;
    c. the name of the person, if any, to whom the document and copies were sent;
    d. the date of the document;
    e. the date on which the document was received by those having possession of the document;
    f. a description of the nature and the subject matter of the document;
    g. the statute, rule or decision which is claimed to give rise to the privilege;
    h. the last-known custodian of the document and the present location of the document;
    i. attachments to the document;
    j. the number of pages comprising the document;
    k. whether the document is handwritten, typewritten or otherwise prepared; and
    l. any other information which is useful in identifying or is necessary to identify the document.

4.  Whenever appropriate, the singular form of the word shall be interpreted in the plural and vice versa.

5.  All words and phrases shall be construed as masculine, feminine, or neutral gender according to the context.

6.  "And" as well as "or" shall be construed either disjunctively as necessary to bring within the scope of the subpoena and/or request for production of documents any matters which might otherwise be construed to be outside of the scope of the subpoena and/or request for production of documents.

7.  "Identify" with regard to a natural person, means to provide the name, last known address, last known telephone number; whether ever employed by you, and if so, dates of employment, descriptions and/ or title of each position held, and the reasons for termination; and, current employer and/or last known employer and position held.

    "Identify," *with regard to a corporation*, means to provide the name of the entity along with its primary business address and telephone number.

    "Identify," *with regard to documents or other inanimate objects*, means to provide the date, author, address, number of pages, subject matter, custodian of the document, and location of the document.

8.  a.  The term "IPET" means Interagency Performance Evaluation Task Force.

    b.  The term "IPET Report" means the Final Report of the Interagency Performance Evaluation Task Force, *Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System*, all volumes, dated March 26, 2007.

9.  a.  The term "TLA" means Team Louisiana, a team of Louisiana-based academic and private sector experts that was commissioned in October 2005 by the Louisiana Department of Transportation and Development to assemble to "collect forensic data related to the failure of the hurricane protection structure systems around greater New Orleans that occurred during passage of Hurricane Katrina on the morning of 29 August 2005.

    b.  The term "TLA Report" means the Final Report of Team Louisiana, *The Failure of the New Orleans Hurricane protection structure System during Hurricane Katrina*, dated December 18, 2006.

10. a.  The term "ILIT" means Independent Hurricane protection structure Investigation Team, a team of experts led by the University of California at Berkeley.

      b.    The term "ILIT Report" means the Final Report of the Independent Hurricane protection structure Investigation Team, *Investigation of the Performance of the New Orleans Hurricane protection systems in Hurricane Katrina on August 29, 2005*, dated July 31, 2006.

11. The terms "IHNC" and "Industrial Canal" mean the Inner Harbor Navigation Canal a/k/a the "Industrial Canal," a deep draft navigation canal which connects Lake Pontchartrain, the Mississippi River, and Reach 1 of the MRGO.

12. The term "GIWW" means the Gulf Intracoastal Waterway. The GIWW is the portion of the Intracoastal Waterway located along the Gulf Coast of the United States. It is a navigable inland waterway that provides a shallow draft channel with a controlling depth of 12 ft, and was primarily designed for barge transportation. For the purposes of this litigation, GIWW means the reach between the Mississippi River to the west and the Pearl River to the east.

13.    a.    The term "MR-GO" or "MRGO" means the Mississippi River Gulf Outlet Canal, a 76 mile deep draft navigation channel that extends southeast from the Inner Harbor Navigation Canal at the Port of New Orleans to the deep water in the Gulf of Mexico along St. Bernard and Orleans Parishes. The MR-GO has three distinct sections that are described as "Reaches" herein.

      b.    The term "Reach 1 of the MR-GO" means the east-western trend of the MR-GO between the IHNC and Paris Road, until it splits into the GIWW to the northeast and "Reach 2 of the MR-GO" to the southeast. Reach 1 of the MR-GO runs on the same alignment with the GIWW and is located entirely in Orleans Parish.

      c.    The term "Reach 1 Extension" means the segment of the MRGO that is located in the IHNC between the IHNC Lock to the south, and Lake Pontchartrain to the north.

      d.    The term "Reach 2 of the MR-GO" means the southeastern land cut segment of the MRGO from Paris Road to the open waters of the Gulf of Mexico that runs through the marshes of St. Bernard Parish along Lake Borgne.

14. "17th Street Canal," "London Avenue Canal," "Orleans Avenue Canal," and "IHNC" means the entirety of the canal systems associated with the 17th Street Canal, London Avenue Canal, Orleans Avenue Canal and IHNC, and unless otherwise noted, is not limited to any specific breach location.

15. The term "LVP" or "LPVHPP" means the Lake Pontchartrain, and Vicinity, Hurricane Protection Project, as authorized by the Flood Control Act of 1965 (P.L. 89-298, 79 Stat. 1073, 1077 (October 27, 1965)), and in accordance with the Recommendations of the Chief of Engineers in House Document 231, 89th Congress.

16. The term "IHNC Lock Replacement Project" means the project authorized by the River and Harbor Act of 1956 and the Water Resources Development Acts of 1986 and 1996 designed to enlarge and deepen the IHNC Lock that connects the IHNC with the Mississippi River.

17. The term "Corps" means the United States Department of the Army, the United States Army Corps of Engineers, the Mississippi Valley Division of the United States Army Corps of Engineers, the New Orleans District of the United States Army Corps of Engineers, or any other Division or District of the United States Army Corps of Engineers.

18. The term "Public Works Project" or "Civil Works Project" means a Congressionally authorized public works project that is designed, constructed, maintained, and/or administered by the U.S. Army Corps of Engineers.

19. The term "Congressionally authorized" means a Public or Civil Works Project, as administered by the Corps that was authorized by the United States Congress.

20. The term "Chief of Engineers" means the Chief of Engineers commanding the U.S. Army Corps of Engineers.

21. The term "TERC" means Total Environmental Remediation Contract, the master contract relative to the site remediation/clearing project on the East Bank Industrial Area pursuant to the IHNC Lock Replacement Project, and any and all related agreements to this master contract.

22. The term "EBIA" means East Bank Industrial Area, the area on the East Bank of the IHNC between North Claiborne and Florida Avenues in New Orleans that was remediated/cleared pursuant to the IHNC Lock Replacement Project, as defined herein.

23. The term "Flood Control Project" or "Flood Control Structure" means any structure supposed to withhold water from entering populated areas, whether or not those structures technically present a flood control project or flood control structure pursuant to the U.S. Army Corps of Engineers engineer regulations and manuals.

24. The term "Hurricane Protection Project" or "Hurricane Protection Structure" means any structure supposed to withhold water from entering populated areas, whether or not those structures technically present a hurricane protection project or hurricane protection structure pursuant to the U.S. Army Corps of Engineers engineer regulations and manuals.

25. The term "WGII" means Washington Group International Inc., or Morrison Knudsen Corporation.

**THIS DEPOSITION IS NOT FOR RECORDS ONLY.**

        **Respectfully Submitted,**

        **APPROVED PLAINTIFFS' LIAISON COUNSEL**

    /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS' LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com


**MR-GO PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

s/ James Parkerson Roy
JAMES PARKERSON ROY (La. Bar # 11511)
MR-GO PSLC LIAISON COUNSEL
Domengeaux Wright Roy & Edwards LLC
P.O.Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com


For

MR-GO PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE
Jonathan Andry
Clay Mitchell
Pierce O'Donnell
James Parkerson Roy

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing Notice of Deposition upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 31st day of March, 2008.

  /s/ Joseph M. Bruno
Joseph M. Bruno

**"EXHIBIT "A"**

Please produce, pursuant to Federal Rule 30(b)(6), the person(s) most knowledgeable of the following areas:

1. The organizational structure and management hierarchy of the Orleans Levee District;

2. The charter of the OLD;

3. The past and present duties of the Orleans Levee District;

4. Any and all policies of insurance, issued to or covering you, which were in effect from 1965 through the present; including, but not limited to, any and all excess and/or umbrella policies and state the following: policy holder, policy limits, policy terms, policy period, insurer, specific coverage and effective dates of any and all policies of insurance in full force and effect from 1965 through the present.

5. Public Management Liability policies for Orleans Levee District

6. Primary Policies for 2005-2006 and 2004-2005.

7. Errors and Omissions policies.

8. Any and all claims made related to Hurricane Katrina.

**EXHIBIT "B"**

1. Any and all documents relative to Paragraph 1 of Exhibit "A";

2. Any and all documents relative to Paragraph 2 of Exhibit "A";

3. Any and all documents relative to Paragraph 3 of Exhibit "A";

4. Any and all documents relative to Paragraph 4 of Exhibit "A";

5. Any and all documents relative to Paragraph 5 of Exhibit "A";

6. Any and all documents relative to Paragraph 6 of Exhibit "A";

7. Any and all documents relative to Paragraph 7 of Exhibit "A";

8. Any and all documents relative to Paragraph 8 of Exhibit "A";