UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 K - (2) |
| PERTAINS TO: INSURANCE<br>07-4457 (Aguda v. State Farm Fire<br>       and Casualty Company | JUDGE DUVAL<br><br>MAGISTRATE WILKINSON |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**
**AFTER EXPIRATION OF DEADLINE**

For the following reasons, the Court should grant plaintiffs leave under Rule 6(b)(1)(B), Fed.R.Civ.P., to file the attached First Amended Complaint after expiration of the Court's March 19, 2008 filing deadline.

**Background**[1]

Over 90 *Aguda* plaintiffs filed suit ("*Aguda*") in this Court on August 27, 2007, seeking

---

[1] Because of the parallel procedural course of this case ("*Aguda*") and the case of *Anderson v. State Farm,* No. 07-6737 K-2 (E.D.La.)("*Anderson*"), and the virtually identical Motions for Leave to File First Amended Complaint After Expiration of Deadline pending in each of the two cases, this "Background" section includes a discussion of both cases.

1

damages related to Hurricane Katrina from their homeowners' insurer, State Farm Fire and Casualty Company ("State Farm"). rec.doc. 1, *Aguda*. More than 40 plaintiffs in the *Anderson* case filed suit in St. Bernard Parish on August 28, 2007, also seeking Katrina-related damages from State Farm. State Farm removed the *Anderson* case to this Court on October 11, 2007. rec.doc. 1, *Anderson.*

State Farm filed a Rule 12(b)(6) motion to dismiss in both cases. *Aguda*, rec.doc. 5 filed January 22, 2008; *Anderson,* rec.doc. 4, filed December 10, 2007. State Farm filed an answer in *Aguda* on January 22, 2008, rec.doc. 7, and in *Anderson* on January 3, 2008. rec.doc. 10065, *In re Katrina Canal Breaches Consolidated Litigation,* No. 05-4182 K-2 (hereinafter "*In re Katrina*").

Both cases were consolidated under the Insurance umbrella of *In re Katrina,* but not at the same time. The consolidation order in *Anderson* was entered December 18, 2007, rec.doc. 7; the consolidation order in *Aguda* was entered February 26, 2008, rec.doc. 27.[2]

After State Farm filed its motions to dismiss, both sets of plaintiffs moved for leave to file a First Amended Complaint. *Aguda*, rec.doc. 9 filed February 6, 2008; *Anderson*, rec.doc. 11051 filed February 5, 2008. State Farm opposed both motions to amend.

On February 20, 2008, Judge Wilkinson granted in part and denied in part the *Anderson* plaintiffs' motion for leave to file their First Amended Complaint. The Clerk entered Judge Wilkinson's order the same day, February 20th, and ordered that the *Anderson* plaintiffs "file an amended complaint that complies with the limitations set forth in this order within ten (10) days of

---

[2] In conformity with the Clerk's docketing procedures in *In re Katrina*, once these two cases were consolidated under *In re Katrina*, filings and orders in these cases were docketed only on the *In re Katrina* docket sheet, No. 05-4182 K-2, and not on the docket sheet of the individual cases. As of the date of filing this motion, the *In re Katrina* docket sheet includes over 12,000 separate entries. In this memorandum, all docket numbers above 10,000 refer to docket entries on the master docket sheet in *In re Katrina.*

entry of this order." rec.doc. 11296.[3]

Judge Wilkinson's order in *Anderson* was the fifth entry on the February 21, 2008 Summary of ECF Activity for *In re Katrina*, which was e-mailed to all counsel of record in *In re Katrina*.[4] The Summary described this entry as:

**2:05-cv-04182-SRD-JCW In re: Katrina Canal Breaches Litigation**
**Order on Motion for Leave to File    11296**

**Docket Text:**

(07-6737) ORDER granting in part and denying in part [11051] Motion for Leave to File amd cmp, due w/in 10 days of entry of this order.  Signed by Judge Joseph C. Wilkinson Jr. (NEF - J. Duval) (Reference: 07-4457)(car,)

This entry, one of 33 entries on that day's summary, did not include the "pertains to" Category ("INSURANCE"), the name of any of the *Aguda* plaintiffs, the name of State Farm, or the names of any counsel for plaintiffs or for State Farm.  This entry is the only one of the 33 entries that does not contain *either* a "pertains to" Category, such as INSURANCE, MRGO, BARGE, LEVEE, etc, *or* the name of any party *or* the name of any counsel,[5] making it extremely difficult to identify

---

[3] *See* Ex. 1, Judge Wilkinson's February 20, 2008 order in *Anderson* and Judge Wilkinson's March 5, 2008 order in *Aguda*.

[4] *See* Ex. 2, February 21, 2008 Summary of ECF Activity for *In re Katrina*.  On December 15, 2006, Judge Duval notified counsel in cases consolidated in *In re Katrina* that the Clerk's office would start to "provide one notice of all filings in the umbrella which will be generated at the end of each day and which you will receive overnight by e-mail."  rec.doc. 2239.  The notice advised that the daily notice was being established due to "the extraordinary volume of filing in the above-captioned litigation and the concerns about the number of e-mails received per day."

[5] A typical *In re Katrina* docket entry for a filing by counsel includes the name of the filing party and the name of counsel making the filing.  On the February 21st Summary, 20 docket entries that refer to a filing by counsel do not contain a "pertains to" category, but every one of these 20 entries provides the name of at least one party *and* the name of counsel who made the filing, making these entries readily identifiable – despite the lack of a "pertains to" category – by the hundreds of counsel who receive the daily Summary.  *See* entries 10 and 13-31.  Docket entries for court orders do not usually include such identifying information, but a typical docket entry for a court order *does include* the

3

by counsel perusing the daily Summary.

On March 5, 2008, Judge Wilkinson signed an order in *Aguda* identical to his February 20th order in *Anderson*, granting in part and denying in part the *Aguda* plaintiffs' motion for leave to file their First Amended Complaint.  As in *Anderson*, the *Aguda* order provided that plaintiffs "must file an amended complaint that complies with the limitations set forth in this order within ten (10) days of entry of this order."  The Clerk entered the order on March 5th.  *Aguda,* rec.doc. 11543, *In re Katrina.*  Ex. 1.  The March 6, 2008 Summary of ECF Activity for *In re Katrina* e-mailed to all counsel of record in *In re Katrina*[6] described this entry as:

> **2:05-cv-04182-SRD-JCW In re: Katrina Canal Breaches Litigation**
> **Order on Motion for Leave to File     11543**
>
> **Docket Text:**
>
> (07-4457) ORDER granting in part and denying in part [11420] Motion for Leave to File amd cmp, due w/in 10 days of entry of this order.  Signed by Judge Joseph C. Wilkinson Jr. (Reference: 07-4457)(car,)

Like the February 21st docket text for the *Anderson* order, the entry referencing Judge Wilkinson's March 5th order, one of 15 entries on that day's summary, did not include *either* the "pertains to" Category ("INSURANCE"), *or* the name of any of the *Aguda* plaintiffs, *or* the name of State Farm, *or* the names of any counsel for plaintiffs or for State Farm.  A close review of the March 6th Summary (Ex. 3) reveals that this entry is the only one of the 15 entries that does not

---

"pertains to" category.  Of the three district court orders listed on the February 21st Summary, all but Judge Wilkinson's order in *Anderson* listed the "pertains to" category, *see* entry no. 8 ("BARGE") and entry no. 12 ("INSURANCE").  Additionally, the only Fifth Circuit order docketed on this Summary, entry no. 4, references both the category ("INSURANCE") and the parties that filed the underlying motion, Allstate Indemnity Company and Allstate Insurance Company.

[6] *See* Ex. 3, March 6, 2008 Summary of ECF Activity for *In re Katrina.*

4

contain a "pertains to" Category, such as INSURANCE, MRGO, BARGE, LEVEE, etc. Thus, it is the only one of the 15 entries that does not include a "pertains to" category or the identity of any party or counsel,[7] making it by far the least identifiable entry on the March 6th Summary.

Meager and less than helpful entries – such as those relating to the *Aguda* and the *Anderson* orders – tempt fate, which responded here.[8]

Stuart Barasch, lead counsel for both the *Aguda* and the *Anderson* plaintiffs, did not realize when he viewed the February 21st and the March 6th Summary of ECF Activity that the docket summaries on either date included Judge Wilkinson's rulings in *Aguda* or in *Anderson*.[9] Mr. Barasch first learned of these deadlines, and the fact that they had by then expired, on Saturday, March 22nd, when he saw two filings by State Farm in two other cases, which include Judge Wilkinson's *Anderson* and *Aguda* orders as exhibits. *See* Ex. A to State Farm's Memorandum in Opposition to Plaintiffs' Rule 60 Motion for Relief From Judgment, rec.doc. 32 in *Harrington v. State Farm Fire and Casualty Company*, No. 07-7600 T-1, and Ex. A to State Farm's Memorandum in Opposition to Plaintiffs' Rule 60 Motion for Relief From Judgment, rec.doc. 37 in *Benit v. State Farm Fire and*

---

[7] A typical *In re Katrina* docket entry for a court order includes the "pertains to" category. *See, e.g.,* the first entry on the March 6th Summary (Ex. 3), which contains the "pertains to" category both at the beginning and the end ("MRGO ORDER" and "Reference: MRGO"). The second entry on the March 6th Summary – which also describes a court order – also contains the "pertains to" category both at the beginning and the end of the entry ("INSURANCE" and "Reference: INSURANCE"). And so it is with the docket texts for the four other orders contained in the March 6th summary: each contains the "pertains to" category at both the beginning and the end of the text.

[8] Not only were the two entries meager, they violated Judge Duval's explicit directive that docket text entries which are e-mailed to all *In re Katrina* counsel must begin with the "pertains to" identifier, which, in the case of these two entries, was "INSURANCE." *See* Judge Duval's Protocol For Case Management, Case Management Order Number 1, Consolidation of Cases, Captioning and Designation of Groupings, rec.doc. 790, filed July 19, 2006, discussed *infra*.

[9] *See* Ex. 4, Unsworn Declaration of Stuart Thomas Barasch.

*Casualty Company,* No. 07-6738 T-5, both filed Thursday, March 20th.  Ex. 4.

Lawrence J. Centola, Jr., who enrolled in February 2008 as co-counsel for the *Aguda* and the *Anderson* plaintiffs, was also unaware of Judge Wilkinson's two orders until after the expiration of both deadlines.[10]

Under Rule 6(a), Fed.R.Civ.P., the deadline for the *Anderson* plaintiffs to file their First Amended Complaint was March 5, 2008 and the deadline for the *Aguda* plaintiffs to file their First Amended Complaint was March 19th.[11]  The *Aguda* plaintiffs seek in this motion the Court's leave to file their First Amended Complaint, after expiration of the Court's March 19th deadline.  Movers seek an order directing the Clerk to file their First Amended Complaint[12] or, alternatively, an order allowing movers to file the amended pleading within a short but specified period of time after entry of the Court's order.

## Law

Rule 6(b), Fed.R.Civ.P., governs a party's request for an extensions of time.  A party's request for leave to file a document after expiration of a deadline is governed by Rule 6(b)(1)(B), which provides that:

**(b) Extending Time.**

>(1) *In general.*  When an act may or must be done within a specified time, the court may, for good cause, extend the time:

---

[10] *See* Ex. 5, Unsworn Declaration of Lawrence J. Centola, Jr.

[11] Under Rule 6(a), Fed.R.Civ.P., these deadlines are computed by excluding intermediate Saturdays, Sundays, and legal holidays.

[12] *See* Ex. 6, First Amended Complaint.

6

> (B) on motion made after the time has expired if the
> party failed to act because of excusable neglect.

In determining whether excusable neglect exists in the context of a post-deadline extension request, a district court must consider the four factors established by the Supreme Court in its 1993 decision, *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489 (1993);[13] *Adams v. Travelers Indemnity Co. of Connecticut,* 465 F.3d 156, 162 (5th Cir. 2006). According to the Supreme Court, the determination of

> what sorts of neglect will be considered 'excusable' . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 1498 (footnotes omitted). The Supreme Court recognized that a finding in favor of the moving party on all factors except for "the reason for the delay" may weigh strongly in favor of granting the extension of time. " *Pioneer,* 113 S.Ct. at 1499 ("the lack of any prejudice to the debtor or to the interest of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim."). The *Pioneer* majority specifically rejected the notion that, in order for a district court to consider the full range of equitable

---

[13] *Pioneer* addressed "excusable neglect" in the context of Bankruptcy Rule 9006(b)(1), which provided that a bankruptcy court may "on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." In substantially similar language, Rule 6(b)(1)(B), Fed.R.Civ.P., authorizes a district court to grant a post-deadline extension "on motion made after the time has expired if the party failed to act because of excusable neglect." *See Yesudian v. Howard Univesity,* 270 F.3d 969, 971 (D.C.Cir. 2001)(noting that the text of Bankruptcy Rule 9006(b) and of Rule 6(b) are "substantively similar").

considerations, *id.* at 1498, n. 14, the movant must be "sufficiently blameless" in the delay, as well as the argument that "any showing of fault on the part of the late filer would defeat a claim of 'excusable neglect.'" *Id.* at 1494. *Pioneer* established that excusable neglect "is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." 113 S.Ct. at 1496 (citation omitted). *Pioneer* abrogated the Fifth Circuit's "previous caselaw stringently construing "excusable neglect." *Halicki v. Louisiana Casino Cruises, Inc.,* 151 F.3d 465, 468 (5th Cir. 1998), *cert. denied,* 526 U.S. 1005 (1999).[14]

A district court's determination of excusable neglect is reviewed for abuse of discretion. *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 161-62 (5th Cir. 2006); *Bernhardt v. Richardson-Merrell, Inc.,* 892 F.2d 440, 444 (5th Cir. 1990). In addition, a court of appeals owes great deference to a district court's case management decisions. *Maldonado-Denis v. Castillo-Rodriguez,* 23 F.3d 576, 583-84 (1st Cir. 1994)("The district court is afforded great leeway in granting or refusing enlargements, and its decisions are reviewable only for abuse of that discretion.")(citations omitted).

Application of the Supreme Court's "excusable neglect" factors to this case shows that plaintiffs should be granted the requested extension.

*There is no danger of prejudice to State Farm.*

There is no danger that State Farm will be prejudiced by the grant of a very short extension. Prejudice in the context of "excusable neglect" is difficult to prove, and is not shown by the simple

---

[14] Movers submit that some of the Fifth Circuit's post-*Pioneer* decisions interpreting "excusable neglect" do not entirely conform to the Supreme Court's directives in *Pioneer* and instead hew to the circuit's pre-*Pioneer* caselaw "stringently construing 'excusable neglect,'" as noted in *Halicki. Id.*

8

delay that will occur in the resolution of a case as a result of setting aside a judgment (or, as in this case, granting movers relief from an expired deadline). *Hibernia National Bank v. Administracion Central Sociedad Anonima,* 776 F.2d 1277, 1280 (5th Cir. 1985) (finding that "the mere possibility of prejudice from delay, which is inherent in every case", did not constitute prejudice in excusable neglect inquiry under Rule 60(b)(1), Fed.R.Civ.P.).[15]

Rather, a party opposing a finding of excusable neglect motion must show that the delay occasioned by the finding will "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2nd Cir. 1983), *quoting* 10 C. Wright, A. Miller and M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2699 at 536-37 (1983)(in context of Rule 60(b)(1) motion). *Accord, Home Port Rentals, Inc. v. Ruben,* 957 F.2d 126, 132 (4th Cir.), *cert. denied,* 506 U.S. 821 (1992)(holding that the opposing party would be prejudiced by grant of Rule 60(b) relief where one defendant had ceased operations (and its record keeper had disappeared with the records), and at least two other defendants could not be located). Under this high standard, State Farm could not reasonably claim that it would be prejudiced if the district court allowed plaintiffs a short extension of time in which to file the previously-authorized First Amended Complaint.

*The length of the delay and its potential impact on judicial proceedings*

The *Aguda* plaintiffs have moved to extend the court's March 19th deadline 13 days after its

---

[15] The meaning of "excusable neglect" is the same in all of the federal rules (civil, criminal, bankruptcy and appellate) where the term is used. *See Pioneer,* 113 S.Ct. at 1496; *United States v. Clark*, 51 F.3d 42, 44 (5th Cir. 1995). Therefore, the cases cited herein that interpret that term in the context of other rules, *e.g.,* Fed.R.Civ.P. 60(b) or Fed.R.App.P. 4, are controlling under Rule 6(b)(1)(B), Fed.R.Civ.P.

9

expiration. The only activity in this case since entry of Judge Wilkinson's March 5th order (Ex. 1) setting the March 19th deadline is Judge Duval's March 19th order, 11680, dismissing without prejudice State Farm's Rule 12(b)(6) motion to dismiss.[16] The only substantive activity in this entire case has consisted of the filing of the suit on August 27, 2007, State Farm's Answer, its Rule 12(b)(6) motion filed in January 2008, plaintiffs' motion for leave to amend their complaint filed in February 2008, and the Court's ruling on those motions. Discovery has not even started, and no scheduling order has been entered. Under these circumstances, the passage of *13 days* between the Court's March 19th deadline for filing the amended pleading and plaintiffs' request for an extension of only a few days, could not possibly weigh against the grant of relief under Rule 6(b)(1)(B).

Courts have found that delays of 15 days, one month, and even more than one month would not adversely impact judicial proceedings. *See In re Veritas Software Corporation Securities Litigation,* 496 F.3d 962, 973-74 (9th Cir. 2007)(district court found that fifteen day delay in filing of fee application was "not great"; court of appeals found no abuse of discretion in district court's denial of relief under Rule 6(b)(1)(B), but added that district court would not have abused discretion in granting extension of time to file application); *Bateman v. United States Postal Service,* 231 F.3d 1220, 1225 (9th Cir. 2000)(finding that 12-day delay in writing to district court after grant of formally unopposed summary judgment and delay of "a little more than one month" in filing Rule 60(b) motion after court denied request to reconsider summary judgment caused minimal delay and potential impact on judicial proceedings, even despite the fact that discovery had already been

---

[16] Although Judge Duval's March 19th order states that State Farm's "Motion for Summary Judgment (Doc. No. 11419) is DISMISSED without prejudice to be re-urged in a global pleading as previously ordered by the Court," it appears that the district court intended to dismiss without prejudice State Farm's motion to dismiss, which was docketed as No. 11419.

completed and the case was set for trial the following month); and *Walter v. Blue Cross & Blue Shield United of Wisconsin,* 181 F.3d 1198, 1202 (11th Cir. 1999)(delay of one month in moving to set aside a dismissal would not adversely impact district court or its resources).

*The reason for the delay and whether it was within the reasonable control of the movant*

The fact that neither of plaintiffs' counsel knew of the court order establishing the deadline for filing their First Amended Complaint until after the deadline had expired was due to the fact, as detailed above, that counsel did not recognize that the 10th of the 15 entries on the March 6th Summary of ECF Activity pertained to this case. Ex. 4 and 5. But given the very unique and peculiar circumstances of the March 6th Summary of ECF Activity, counsel's overlooking of the entry was not unreasonable or, for that matter, unforeseeable. The docket entry related to this case (entry no. 10) stands out – and stands alone – among the 15 entries by its lack of identifiable information, other than the civil action No., 07-4457, which is included in the Docket Text. Movers submit that a bare bones docket entry such as this invites just the type of unintentional oversight that occurred here. Movers also submit that the entry fails to comply with Judge Duval's order establishing the rules for entry of Docket Text on the *In re Katrina* docket sheet. *See* Judge Duval's Protocol For Case Management, Case Management Order Number 1, Consolidation of Cases, Captioning and Designation of Groupings, rec.doc. 790, filed July 19, 2006,[17] which provides in part:

> **IT IS FURTHER ORDERED** that with respect to the CM/ECF notices prepared by the Clerk of Court which are e-mailed to the parties, the Clerk of Court

---

[17] *See* Ex. 7, Protocol for Case Management, Case Management Order Number 1, Consolidation of Cases, Captioning and Designation of Groupings.

>is directed to begin its entry of the Docket Text field with (1) the group, i.e., the "Pertains To" identifier, and (2) the "Cases" designations as specified by counsel for each pleading filed where appropriate.

*See* Ex. 7 at 3.

Judge Duval's specific requirement that each docket text entry start with the "'pertains to' *identifier*" was presumably designed to assist counsel in their efforts to *identify* pertinent docket entries from the mass of entries (now over 12,000) on the *In re Katrina* docket sheet (emphasis added). This presumption is supported by information provided on the Court's website. The *In re Katrina* section of the website contains a tab titled, "FAQ."[18] The second question and answer are as follows:

>**Q. I am in only one case, but am getting notice on everything in the levee case. I only want what pertains to me. I am getting too much e-mail.**
>
>A. Unfortunately the computer can not determine what case pertains to you and which cases do not. The e-mail you get from the Court specifies the category with the case number to which the document pertains at the beginning of the docket text for you to determine if that document pertains to your case or cases. If it is not in a case in which you are enrolled, there is no need for you to read it. . . .

These unambiguous statements from both the Court and the Clerk's Office certainly support a finding that an expectation by counsel who was enrolled only in one or more Insurance cases that he would find the identifier "INSURANCE" at the start of each docket text that referred to his case – or, lacking that, that he would find the name of at least one party and one counsel – would be reasonable. The absence of the required *identifier* in the incomplete docket text thwarted counsel's efforts in this case to properly identify those entries pertaining to firm clients. Under these circumstances, counsel's actions are surely "excusable."

---

[18] *See* www.laed.uscourts.gov/CanalCases/FAQ.htm

Ironically, these circumstances are very comparable to the circumstances in *Pioneer,* the leading case on "excusable neglect." In that case, counsel for a creditor in a Chapter 11 bankruptcy missed the bar date for filing proofs of claim. The bankruptcy court's only notice to the creditor of the bar date was contained in a "Notice for Meeting of Creditors." Along with notification of a May 5th meeting was the following statement: "You must file a proof of claim if your claim is scheduled as disputed, contingent or unliquidated, is unlisted or you do not agree with the amount. See 11 U.S.C. Sec. 1111 & Bankruptcy rule 3003. Bar date is August 3, 1989." 113 S.Ct. at 492. The creditor received the notice and passed it on to counsel. After they missed the bar date, counsel filed a motion seeking relief under Bankr. R. 9006(b)(1), which corresponds to Fed.R.Civ.P. 6(b)(1)(B), explaining that he was unaware of the bar date due to "a major and significant disruption" in his professional life due to a change of law firms. *Id.* The Supreme Court made short shrift of counsel's "disruption" argument, but nevertheless found excusable neglect because of the bankruptcy court's deficient notice of the bar date:

> In assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date. We do, however, consider significant that the notice of the bar date provided by the Bankruptcy Court in this case was outside the ordinary course in bankruptcy cases. As the Court of Appeals noted, ordinarily the bar date in a bankruptcy case should be prominently announced and accompanied by an explanation of its significance. See 943 F.2d, at 678. We agree with the court that the 'peculiar and inconspicuous placement of the bar date in a notice regarding a creditor[s] meeting,' without any indication of the significance of the bar date, left a 'dramatic ambiguity' in the notification. *Ibid.* This is not to say, of course, that respondents' counsel was not remiss in failing to apprehend the notice. To be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say that the Bankruptcy Court abused its discretion in declining to find the neglect to be 'excusable.' In the absence of such a showing, however, we conclude that the unusual form of notice employed in this case requires a finding that the neglect of respondents' counsel was, under all the circumstances, 'excusable.'

113 S.Ct. at 1499-1500. The lack of readily identifiable information in the Clerk's docket entry in the March 6th Summary of ECF Activity – leaving only the not-readily-identifiable docket number – corresponds to the "peculiar and inconspicuous placement of the bar date" rejected as insufficient notice by the Supreme Court in *Pioneer*. 113 S.Ct. at1501. The notice in this case, like the notice in *Pioneer*, was not only "unusual" and "inconspicuous," it also violated a specific provision of the district court's Protocol for Case Management. Ex. 7 at 3.

The Ninth Circuit has recognized that a court should consider ambiguous or confusing docket entries in making an excusable neglect determination. In *Rodgers v. Watt,* 722 F.2d 456 (9th Cir. 1983), plaintiff's counsel's secretary repeatedly checked the docket to see if judgment had been entered, but the final entry on the docket sheet was listed out of order so that it appeared that the matter was still under advisement. The clerk failed to give notice to counsel of entry of judgment, and plaintiff missed the deadline for filing a notice of appeal. The Ninth Circuit found excusable neglect under these circumstances, noting that "the clerk's failure to have the entries in the proper order was a factor to be considered in determining excusable neglect." 722 F.2d at 461.

*Plaintiffs and their counsel acted in good faith*

Plaintiffs' good faith in regard to the expiration of the March 19th deadline and the filing of this motion cannot seriously be questioned. Had plaintiffs' counsel known of the Court's March 5th ruling granting in part their request for leave to amend their complaint, there would have been absolutely no reason or motive for plaintiffs not to have complied with the Court's order allowing them to file a First Amended Complaint. This is not a case where plaintiffs deliberately embarked

on a course of conduct or strategy, and later entertained second thoughts or regrets. *See, e.g., In re Veritas Software Corporation Securities Litigation,* 496 F.3d at 973, where mover's asserted reason for the delay in moving for attorney's fees, "that he deliberately chose to postpone the fee application because of the awkward procedural posture of the case and because he thought that the district court's order extended the deadline for fee applications, was not neglect at all and certainly not a compelling showing of good cause." *See also Yesudian v. Howard University,* 270 F.3d 969, 971 (D.C.Cir. 2001), finding excusable neglect where counsel missed a deadline because he mistakenly relied, in calculating an upcoming deadline, on the District of Columbia Superior Court rules instead of the federal district court rules: "Foolish as this may have been, there is no suggestion of bad faith." *Id.*

In this case, movers' counsel undertook to obtain the Court's leave to amend their pleadings and had every intention of filing their amended pleading if the Court granted the requested leave. For the reasons discussed above, plaintiffs' counsel did not learn that the Court had ruled on their motion to amend until the Court's 10-day deadline had expired. Once counsel learned of the Court's March 5th order, this motion was prepared and filed with the court expeditiously. Thus, the "good faith" factor weighs entirely in movers' favor.

*Fifth Circuit cases on excusable neglect*

Several Fifth Circuit decisions support a finding of excusable neglect in this case. In *Hetzel v. Bethlehem Steel Corp.,* 50 F.3d 360, 367 (5th Cir. 1995), the Fifth Circuit affirmed the district court's grant of a party's request – filed after the expiration of the court's deadline in scheduling order – for a one-day extension to file a summary judgment motion. The Court found that mover's

explanation "that mailing delays caused its motion to be filed on March 8th, one day late, was perfectly reasonable."

In *United States v. Evbuomwan,* 36 F.3d 89 (table case), No. 93-1738 (5th Cir. 1994)(unpublished),[19] appellant's counsel filed a notice of appeal two days after the deadline because he mistakenly thought that Fed.R.App.P. 26( c ) extended the time for filing the notice of appeal by three days. The district court found excusable neglect because counsel had acted in good faith and with "substantial diligence," and extended the time for filing the notice of appeal. Slip op. at 4. The Fifth Circuit affirmed in an unpublished, though precedential opinion issued one year after the Supreme Court's *Pioneer* decision:[20]

> The district court determined, in its discretion, that the notice of appeal was filed two days late as a result of counsel's good faith misinterpretation of the rules, rather than from his simply miscalculating the date on which the notice was due. Under the standard set out by the Supreme Court's recent opinion in *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership,* ___ U.S. ___, 113 S.Ct. 1489 (1993), we hold that the district court did not abuse its discretion by concluding that this was excusable neglect.
>
> In *Pioneer,* the court found 'excusable neglect' under Rule 9006(b)(1) of the Bankruptcy Rules to have a similar interpretation to that given the phrase under the Federal Rules of Civil and Criminal Procedure. *Id.* at 1496-97 & n.9. And, the court held that reading the Rule 'inflexibly to exclude every instance of an *inadvertent or negligent omission* would ignore the most natural meaning of the word "neglect" and would be at odds with the accepted meaning of that word in analogous contexts' – *e.g.,* to imply carelessness. *Id.* at 1498 & n. 12 (emphasis added). In determining whether counsel's neglect in filing a notice of appeal was 'excusable', the Court noted that 'the determination is at bottom an equitable one, taking account of all relevant circumstances', including the danger of prejudice, length of delay, potential impact on judicial proceedings, reason for delay, and whether the movant acted in

---

[19] *See* Ex. 8, Fifth Circuit slip opinion in *United States v. Evbuomwan*.

[20] Although unpublished, *Evbuomwan* is binding precedent under 5th Cir. R. 47.5.3 ("Unpublished opinions issued before January 1, 1996, are precedent."); *see also Midwest Employers Casualty Co. v. Williams,* 161 F.3d 877, 883, n. 7 (5th Cir. 1998)(Emilio Garza, J., dissenting).

> good faith. *Id.* at 1498 (citation omitted). There is no indication that the government was at all prejudiced by the delay or that it affected judicial proceedings. On the facts in this case, the district court did not abuse its discretion by accepting a notice of appeal filed in good faith, two days late.

*See* Ex. 8, slip opinion at 4-5 (emphases in original).

In *Lackey v. Atlantic Richfield Co.,* 990 F.2d 202, 206 (5th Cir. 1993), the district court granted plaintiffs an extension of time to file an amended notice of appeal, where their counsel had listed only the lead plaintiff and "*et al*" to designate the names of the other appellants. The Fifth Circuit affirmed the grant of the extension:

> The defendants argue that the district court abused its discretion because the plaintiffs do not point to any excusable neglect, other than inadvertence, and the case law requires something more. The plaintiffs did file a timely notice of appeal in this case. Although, the original notice of appeal was insufficient to invoke appellate jurisdiction they sought to remedy that defect via the [Fed.R.App.P.] Rule 4(a)(5) motion. The district judge could have properly found that the defendants were not prejudiced by the extension because they were already on notice, within the prescribed time period, that the plaintiffs were waging an appeal. Further, the Rule 4(a)(5) motion was not made long after the original defective notice of appeal was filed. We cannot conclude that the district judge abused his discretion. . . .

These Fifth Circuit decisions, as well as this case, are easily distinguished from the circuit's decisions affirming district court decisions finding no "excusable neglect." *See, e.g., Adams v. Travelers Indemnity Co. of Connecticut,* 465 F.3d 156, 162 (5th Cir. 2006)(district court denied request for a *third* extension of time to file opposition to summary judgment motion, where request was filed after expiration of the final due date); *Edwards v. Cass County, Texas,* 919 F.2d 273 (5th Cir. 1990)(district court denied leave to file out-of-time summary judgment asserting qualified immunity three months after motions deadline).

In a very recent district court case within the Fifth Circuit, *Johnson v. Graves,* 2008 WL 694730 * 1(S.D.Tex. March 12, 2008), District Judge Melinda Harmon found excusable neglect and

17

granted an out-of-time extension under Rule 6(b)(1)(B), where plaintiff's counsel admitted in his motion that he inadvertently missed the deadline for responding to a summary judgment motion "because he was unaware that the Motion had been filed." *Id.* at *1. The Court held:

> While it is true that counsel was wholly to blame for the delay, the Court finds that the mistake was merely inadvertent and was in good faith. This finding is based on the facts that Plaintiff had not previously sought any extensions to respond to this Motion and as soon as the delay was brought to Plaintiff's counsel's attention, he filed a response as quickly as can reasonabl[y] be expected. The Court is willing to excuse this mistake.

## Conclusion

Plaintiffs have established that they are entitled to relief under rule 6(b)(1)(B), and the court should grant their Motion for Leave to File First Amended Complaint.

Respectfully submitted,

*S/Stuart Barasch*

STUART T. BARASCH, T.A.
La. Bar No. 20650
LAWRENCE J. CENTOLA, JR.
La. Bar No. 3962
Hurricane Legal Center
910 Julia Street
New Orleans, LA 70113
Tel: 504.525.1944

E-mail: sbarasch1@aol.com