on March 19,
rvin Douglas
his wrongful
the state of
designed the
ved the case
District of
the grounds
itation of
513(a)(5).
ct court in
we AFFIRM
cause with
le Kansas

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**

SEP 0 6 1994

No. 93-1738
Summary Calendar

CHARLES R. FULBRUGE III
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOE EVBUOMWAN,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas
(CR3-92-124-P)

---

Before JONES, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[1]

Joe Evbuomwan appeals the sentence he received after pleading guilty to credit card fraud, in violation of 18 U.S.C. § 1341. And, the United States challenges the district court's ruling, on remand from this court, that Evbuomwan's counsel's failure to timely file a notice of appeal was excusable neglect. We find no abuse of discretion in the excusable neglect ruling, and AFFIRM the sentence.

---

[1] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that rule, the court has determined that this opinion should not be published.

EXHIBIT 8

I.

Evbuomwan pleaded guilty to one count of credit card fraud in 1992. For sentencing, the district court relied on U.S.S.G. § 1B1.3 (defendant responsible for reasonably foreseeable acts of others taken in furtherance of jointly undertaken criminal activity), to determine that the loss attributable to Evbuomwan was $90,471. At least $66,000 of that loss was attributable to a check fraud scheme perpetrated against NCNB Bank by two of Evbuomwan's associates (Michael Aakhideno and Mark Dorenuma); no criminal charges were brought against Evbuomwan with regard to that scheme. Evbuomwan was sentenced, *inter alia*, to 18 months imprisonment.

On direct appeal, this court determined that the district court misapplied the guidelines by failing to determine: whether Evbuomwan agreed jointly to undertake criminal activity with Aakhideno and Dorenuma; and whether the check fraud scheme was within the scope of an agreement between the three. *United States v. Evbuomwan*, 992 F.2d 70 (5th Cir. 1993). The sentence was vacated and remanded for the district court to make explicit findings on these issues. *Id.* at 74-75.

On remand, the district court determined that Evbuomwan had agreed to undertake criminal activity jointly with Aakhideno and Dorenuma; and that the check fraud scheme was within the scope of their agreement. The same sentence was imposed; Evbuomwan appealed again.

Evbuomwan's notice of appeal, however, was filed on August 11, 1993, 12 days after judgment was entered (following resentencing).

Thus, the notice was untimely under Fed. R. App. P. 4(b) (appeals from criminal cases must be filed within ten days of entry of judgment). Accordingly, the United States moved to dismiss the appeal for lack of jurisdiction. This court denied the motion without prejudice to the government's re-filing it if, on remand, the district court determined that there was no excusable neglect to cause the notice of appeal to be filed late. *See* Fed. R. App. P. 4(b) (district court may, upon a showing of excusable neglect, with or without motion or notice, extend time for filing a notice of appeal). On remand, the district court found that Evbuomwan's counsel had acted in good faith and with "substantial diligence", and had failed to timely file the notice of appeal due to his misinterpretation of Fed. R. App. P. 26(c) (three extra days to respond to papers served by mail).

## II.

### A.

The government again challenges the timeliness of Evbuomwan's appeal, asserting that the district court abused its discretion in finding excusable neglect. We review that finding only for abuse of discretion. *E.g., Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 206 (5th Cir. 1993). The United States contends that counsel's misconstruction of the rules of procedure cannot constitute excusable neglect. *See, e.g., Allied Steel, Gen. Contractor v. City of Abilene*, 909 F.2d 139, 143 (5th Cir. 1990); *Britt v. Whitmire*, 956 F.2d 509, 511 (5th Cir. 1992). Further, it is undisputed that Rule 26(c)'s three-day extension of time for

- 3 -

responses to papers served by mail does not extend the time for filing a notice of appeal. *Welsh v. Elevating Boats, Inc.*, 698 F.2d 230, 231-32 (5th Cir. 1983).

Nevertheless, we have held also that Rule 4(b)'s excusable neglect provision, particularly in criminal cases, is "intended to cover, under proper circumstances, ignorance or neglect of counsel in filing late notices of appeal." *United States v. Lewis*, 522 F.2d 1367, 1369 (5th Cir. 1975); *see also United States v. Edwards*, 702 F.2d 529, 530 (5th Cir. 1983) (neglect of current counsel and hiring new counsel during time for filing notice constituted excusable neglect); *compare United States v. Awalt*, 728 F.2d 704, 705 (5th Cir. 1984) (lack of notice of entry of judgment not excusable neglect).

The district court determined, in its discretion, that the notice of appeal was filed two days late as a result of counsel's good faith misinterpretation of the rules, rather than from his simply miscalculating the date on which the notice was due. Under the standard set out by the Supreme Court's recent opinion in *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. Partnership*, ___ U.S. ___, 113 S. Ct. 1489 (1993), we hold that the district court did not abuse its discretion by concluding that this was excusable neglect.

In *Pioneer*, the Court found "excusable neglect" under Rule 9006(b)(1) of the Bankruptcy Rules to have a similar interpretation to that given the phrase under the Federal Rules of Civil and Criminal Procedure. *Id.* at 1496-97 & n.9. And, the Court held

- 4 -

that reading the Rule "inflexibly to exclude every instance of an *inadvertent or negligent omission* would ignore the most natural meaning of the word 'neglect' and would be at odds with the accepted meaning of that word in analogous contexts" -- *e.g.*, to imply carelessness. *Id.* at 1498 & n.12 (emphasis added). In determining whether counsel's neglect in filing a notice of appeal was "excusable", the Court noted that "the determination is at bottom an equitable one, taking account of all relevant circumstances", including the danger of prejudice, length of delay, potential impact on judicial proceedings, reason for delay, and whether the movant acted in good faith. *Id.* at 1498 (citation omitted). There is no indication that the government was at all prejudiced by the delay or that it affected judicial proceedings. On the facts in this case, the district court did not abuse its discretion by accepting a notice of appeal filed in good faith, two days late.

B.

Evbuomwan challenges again the district court's determination of the amount of loss attributable to him; and its findings of fact, in reaching that determination, that he agreed to undertake joint criminal activity and that the check fraud scheme was within the scope of that agreement. In reviewing "sentences, we examine factual findings subject to the 'clearly erroneous' standard ... and ... accord great deference to the trial judge's application of the sentencing guidelines." *United States v. Humphrey*, 7 F.3d 1186, 1189 (5th Cir. 1993) (citing cases). The sentence will be

- 5 -

upheld unless, *inter alia*, it was imposed "as a result of an incorrect application of the ... guidelines...." *United States v. Haymer*, 995 F.2d 550, 552 (5th Cir. 1993) (citations and internal quotation marks omitted).

### 1.

Evbuomwan asserts, for the first time on appeal, that the government should have been required to establish the existence of jointly undertaken criminal activity and the scope of that agreement by clear and convincing evidence. Parties are required to raise errors in the district court. When a defendant in a criminal case has forfeited an error by failing to object, this court may remedy the error only in the most exceptional cases. *U.S. v. Rodriguez*, 15 F.3d 408, 4145 (5th Cir. 1994). The Supreme Court has directed the courts of appeals to determine whether a case is exceptional by using a two-part analysis. *United States v. Olano*, ___ U.S. ___, ___, 113 S. Ct. 1770, 1777-79 (1993).

An appellant who raises an issue for the first time on appeal has the burden to show, *inter alia*, that there is actually an error.[2] There was none. Our court has held that, for sentencing,

---

[2] If the appellant meets this burden, he must also show that the error is plain ("clear" or "obvious"), and that it affects substantial rights. *Id.* at 1777-78; *Rodriguez*, 15 F.3d at 414-15; Fed. R. Crim. P. 52(b). This court lacks the authority to relieve an appellant of this burden. *Olano*, 113 S. Ct. at 1781. Moreover, "Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affect[s] substantial rights,' the Court of Appeals has authority to order correction, but is not required to do so." *Id.* at 1778 (quoting Fed. R. Crim. P. 52(b)). As the Court stated in *Olano*:

> [T]he standard that should guide the exercise of [this] remedial discretion under Rule 52(b) was

- 6 -

the government must establish the existence of jointly undertaken criminal activity and the scope of any agreement only by a preponderance of the evidence -- not, as Evbuomwan urges, by clear and convincing evidence. *See U.S. v. Smith*, 13 F.3d 860, 867 (5th Cir.), *cert. denied*, ___ U.S. ___, 114 S. Ct. 2151 (1994). Obviously, we need go no further.

2.

Evbuomwan also challenges the district court's findings that he agreed to jointly undertake criminal activity with Aakhideno and Dorenuma, and that the check fraud scheme was within the scope of the agreement. As stated, we review factual findings only for clear error. *E.g., United States v. Lghodaro*, 967 F.2d 1028, 1030 (5th Cir. 1992).

Evbuomwan rented an apartment under the name of Ron Ammed Richardson, and Aakhideno and Dorenuma were frequent visitors. The three had various fraudulent identification documents, including identification for both Aakhideno and Evbuomwan in the name of Kerry L. Coggin, stored in a paper sack in the apartment. (Evbuomwan also used identification in the name of Patrick Murken; Aakhideno sent Evbuomwan an American Express moneygram in that name.) The sack also contained fraudulent credit cards and twelve

---

articulated in *United States v. Atkinson*, (1936). The Court of Appeals should correct a plain forfeited error affecting substantial rights if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

*Olano*, 113 S. Ct. at 1779 (quoting *Atkinson*, 297 U.S. at 160). Thus, our discretion to correct an error pursuant to Rule 52(b) is narrow. *Rodriguez*, 15 F.3d at 416-17.

- 7 -

counterfeit Texas Department of Public Safety driving permits manufactured by the same counterfeiter. After Evbuomwan was arrested, he sent Tajani Momoh to retrieve the sack, but it had already been seized; and, when Dorenuma was arrested, he was upset that Evbuomwan had not told him the bag had been seized.

Further, Aakhideno's briefcase, which was in Evbuomwan's apartment, had false identification in the name of Karl D. Heinneman d/b/a Bite Electronics. Aakhideno's identification in the name of Heinneman was in the sack. (An account opened in the name of Bite Electronics was a fraudulent account used to pay down the balances on the fraudulent credit cards found in the sack.) In sum, the district court's findings that Evbuomwan agreed to undertake joint criminal activity with Aakhideno and Dorenuma, and that the check fraud scheme was within the scope of that agreement, were not clearly erroneous.

### III.

For the foregoing reasons, the judgment is

**AFFIRMED.**