UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
| PERTAINS TO:  BARGE | * * * | NO. 05-4182 and consolidated cases |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*         05-5531 | * | |
| *Mumford v. Ingram*      05-5724 | * | |
| *Lagarde v. Lafarge*      06-5342 | * | JUDGE |
| *Perry v. Ingram*            06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*         06-7516 | * | |
| *Parfait Family v. USA*   07-3500 | * | MAG. |
| *Lafarge v. USA*              07-5178 | * | JOSEPH C. WILKINSON, JR. |
| | * | |

**BARGE PLAINTIFFS' OPPOSITION TO
LAFARGE NORTH AMERICA'S MOTION TO COMPEL WRITTEN DISCOVERY**

**MAY IT PLEASE THE COURT:**

Lafarge North America complains in its motion of five areas in which Barge Plaintiffs' discovery responses are "woefully" incomplete: (1) responses by individual named plaintiffs, (2) claims of privilege, (3) labeling of responsive documents, (4) verifications and (5) responses to various specific discovery requests.

In summary, the Barge P.S.L.C. represents the following:

(a) A number of Lafarge's asserted deficiencies involve the delays stemming from the fact that records were destroyed in the flooding that is the subject of this lawsuit.  It takes time to obtain replacements, the Barge P.S.L.C. is proceeding in good faith to obtain the necessary documents, and the Barge P.S.L.C. has in fact been supplementing its responses

as the additional information and documents become available. This situation was caused by the Barge defendants' own actions, and they should have greater patience as to this problem.

(b) On review of Lafarge's specific assertions of deficiencies, the Barge P.S.L.C. is willing to take corrective actions without the need for judicial intervention, in the specific instances discussed below.

(c) As to a number of asserted deficiencies, the Barge P.S.L.C. has no incentive to preclude or delay discovery, and a strong incentive to provide the requested information.

(d) As to the greatest part of Lafarge's asserted deficiencies, its complaint is that counsel other than the Barge P.S.L.C. have not provided discovery.  As shown below, the Barge P.S.L.C. has done everything possible to obtain responses from other counsel in the Barge  cases other than Mumford, and have had mixed success.  There are limits on what the Barge P.S.L.C. can do, and one of those limits is that the Barge P.S.L.C. cannot interfere in the attorney-client relationship between other Barge counsel and their clients and contact directly the client plaintiffs of other Barge counsel.  The Barge P.S.L.C. has notified all other Barge counsel of this motion and has invited them to provide responses to the Motion on behalf of their clients.

(e) As to some of Lafarge's asserted deficiencies, the Barge P.S.L.C. urges that the responses are proper, as shown below.

**1. Responses by Individual Named Plaintiffs**

Undersigned obtained Lafarge's agreement to accept ongoing supplementation of discovery responses, as long as that initially produced was enough "to chew on."  This agreement was made by Lafarge counsel Mark Raffman, was heard by his co-counsel Derek Walker, and occurred in connection with a Rule 37.1 conference in January 2008 email.  Undersigned demonstrate that

Lafarge has received this much and more, and that undersigned have made multiple, ongoing supplementation of plaintiffs' responses as quickly as information becomes available.[1] This process is still ongoing, as undersigned expect to receive even more responsive information that will be tendered to Lafarge. Undersigned substantially met the February 15, 2008 "target date" mentioned in Lafarge's supporting memorandum, and have provided a wealth of responses.[2] However, as undersigned have repeatedly explained to Lafarge, undersigned are putting forth their best efforts to fill-in missing blanks, and will continue to do so as information becomes available.

The Barge PSLC agrees that all named plaintiffs in the consolidated barge track of cases are obligated to respond to Lafarge's discovery requests, yet have explained to Lafarge that much of what they seek was destroyed in the flooding subject of this suit. As undersigned have also explained to Lafarge, named plaintiffs still displaced are at a distinct disadvantage in that they are not necessarily sophisticated enough or proximate enough to the sources of information, i.e., death certificates, autopsies, acts of sale, IRS and other business records, mental health records, etc., to obtain these things on their own. Undersigned are doing everything in their power to obtain missing information, which is often limited by the speed of the U.S. Mail, or by the responsiveness of the sources of such information, and, no less, by the inevitable confusion of persons not accustomed to litigation, such most of the named plaintiffs.

Undersigned nonetheless point out that they are directly responsible for providing their own named plaintiff - clients' responses, and must rely upon other plaintiffs' counsel to provide responsive information on behalf of those named plaintiffs with whom undersigned enjoy no privity

---

[1]Lafarge North America's Exhibits 4, 5, 6, 7, 8, 9, and 10.

[2]Plaintiffs note that Lafarge has not submitted for the Court's consideration the multitude of documents, videos, photos and other things plaintiffs have produced in original and repeated supplemental response to Lafarge's requests.

of contract or communication. To this end, undersigned have provided to counsel for all named plaintiffs complete copies of all of Lafarge's discovery requests, multiple examples of initial discovery responses, repeated instructions, and various follow-ups and reminders - all for use in obtaining their clients' information and documents.

### A.   *Mumford* and *Boutte*

Undersigned have provided everything discoverable in the possession, custody or control of those named plaintiffs with whom undersigned have a contractual relationship, namely, the *Mumford* and *Boutte* Plaintiffs.  As explained above, that destroyed by the flood must be replaced, that unobtainable by clients must be obtained, and undersigned are trying to do so as quickly as possible. Undersigned expect to supplement prior responses.

Undersigned also concede that Herbert Warren, a named *Boutte* plaintiff, has not responded to discovery.  His whereabouts are uncertain, yet after much investigation and effort, his relatives have been located.  Undersigned continue their efforts to locate and contact Mr. Warren in order to obtain his responses, and expect to successfully do so in reasonable time.  Responsive documents from *Boutte* plaintiff Doris Shanks were received very recently, and were provided to Lafarge under cover letter dated April 2, 2008.

### B.   *Benoit* and *Lagarde*

As to named plaintiffs in the *Benoit* and *Lagarde* matters, undersigned have made every reasonable effort to obtain complete, verified responses from each.  These efforts include repeated mail, email, phone calls, personal visits with counsel, offers to assist in obtaining their clients' responses, and conversations with named plaintiffs in the *Lagarde* matter after receiving consent of their attorney. **In Globo Exhibit 1** demonstrates these efforts on the part of undersigned and counsel for *Benoit* and *Lagarde* plaintiffs, who have been cooperative with undersigned's efforts.  However,

liaison counsel is only empowered to do so much, and any shortcomings in the *Benoit* or *Lagarde* plaintiffs' discovery responses must be remedied by their own attorneys, as undersigned lack authority to communicate directly with these named plaintiffs, or authority to do more than the governing Case Management Order permits.[3]

### C. *Perry* and *Parfait*

The *Perry* plaintiffs are represented by Mr. John Musser. Undersigned have not received any reply to multiple written communications and telephone calls over several months to Mr. Musser concerning his clients' discovery responses, and cannot speak to any reasons for the delinquency.

As the Court is aware, the *Parfait* plaintiffs are represented by Mr. O'Dwyer. Mr. O'Dwyer named scores of persons in the Parfait complaint, and has stated that he is unable to contact them to obtain discovery responses. Two named *Parfait* plaintiffs, Melba Gibson and Kevin McFarland also retained undersigned. Through the undersigned, Ms. Gibson's responses have been provided, while Mr. McFarland has provided Answers to Interrogatories and is in the process of supplying responsive documents and things.[4] They will be tendered to Lafarge at the earliest opportunity. As for the remainder of the *Parfait* plaintiffs, there is nothing that undersigned can do to obtain discovery responses from these persons, as they are entirely unknown to undersigned, who have no authority to communicate with Mr. O'Dwyer's clients, or to do or say more than what has already been said and done.

---

[3] Please see Case Management Order No. 4, Section (C), governing duties of Master Liaison Counsel, PSLC Counsel, and PSLC Liaison Counsel.

[4] Kevin McFarland is incorrectly included in Lafarge's Exhibit 13 listing Parfait plaintiffs who have not provided discovery responses.

**Exhibit 1** also demonstrates undersigned's efforts as to the *Perry* and *Parfait* plaintiffs.[5] Lafarge includes additional exhibits referenced in its memorandum which bear on these efforts.

**2. Claims of Privilege**

Barge plaintiffs have not provided responses to the extent any requests call for expert opinion, consistent with the delays contained in the current iteration of Case Management Order No. 5, as modified. Likewise, plaintiffs have not produced certain materials covered by the attorney work product, trial preparation and attorney-client privileges. Lafarge seeks a privilege log as to these latter exceptions. Plaintiffs will immediately comply, to the same extent that Lafarge has logged its claims of privilege.

**Attorney Work Product/Trial Preparation Materials**

Barge Plaintiffs' Privilege Log makes clear the categories of documents that have been withheld, the basis of the privilege asserted, and the persons who have had access to the privileged materials. It is similar in approach to Lafarge's Privilege Log, although Barge Plaintiffs have produced photographs and similar materials for which Lafarge is claiming work-product privilege.

Plaintiffs note that, unlike defendants, they have not withheld any photographs, except to the extent that Lafarge has asked them to do so in light of their numerosity.

**Attorney-Client Privilege**

Barge Plaintiffs have not produced client correspondence and client communications, intake forms, or memorialized client interviews. These items are subject to attorney client privilege, as they contain information whereby potential and actual clients seek and obtain legal advice and opinions, and whereby undersigned evaluate the merits of their clients' claims. These materials

---

[5] Plaintiffs attachment of these communications is not be construed as waiver of any privilege.

were provided privately, directly to undersigned counsel, for purposes related to the present litigation. None of these materials have been provided to, or in the presence of, any persons external to undersigned's law offices. These items are in plaintiffs' privilege log.

### Privilege Log

Lafarge seeks in its motion an Order that plaintiffs provide a privilege log. Plaintiffs have done so.[6]

### 3. Labeling of Responses

Plaintiffs have produced responsive documents as they are kept in the ordinary course of business, that is, as filed and referenced by undersigned in their case file, which is according to the particular named plaintiff who provided them. They were provided to undersigned as kept by the households in whose possession, custody or control they existed prior. Lafarge seeks plaintiffs' designations as to which documents are responsive to which requests. Notwithstanding that the nature and ramifications of the documents are patently obvious (i.e. business records re business losses, photos re property damage, leases re loss of rental income, death certificates re death claims, etc...), certain documents may, in the eye of the beholder, be responsive to multiple discovery requests. This is especially true where Lafarge requests all documents to be introduced or relied upon, and additionally requests all documents intended as proof of particular facts such as the cause of the breakaway, cause of the breach, cause of the flooding, or specific types of damages alleged. The documents produced are clear in their application to these requests. Undersigned need not instruct the defense attorneys of the significance of the plainly recognizable documents produced as normally kept by the ordinary households to which the named plaintiffs belong. Likewise, it is plain that other documents clearly relate to negligence and causation, especially when the bulk of these

---

[6]Exhibit 2.

documents are those produced by Lafarge in response to plaintiffs' discovery requests.

### 4. Verifications

Counsel for plaintiffs will provide new forms of verification in the manner described by Lafarge.

### 5. Particular Responses (Facts, Contentions and Witnesses)

Lafarge apparently believes that plaintiffs have withheld a wealth of proof. They have not. Plaintiffs *want* Lafarge to know that eyewitnesses saw the barge strike and break the floodwall. Plaintiffs *want* Lafarge to know of all the people who claim to have heard the barge scraping against and hitting the floodwall. Plaintiffs *want* Lafarge to know that until these persons saw or heard the barge hit the wall, there was virtually no flooding, and that immediately after, a massive wave of water flung houses from their foundations and washed violently all the way to at least Parish Road. Plaintiffs *want* Lafarge to know of all the death, destruction and misery wrought by these events. Plaintiffs have no incentive to keep any of this information secret, but are nonetheless wary that the requests could be used in the future to seek privileged information. Should appropriate circumstances arise, plaintiffs will include appropriate entries in their privilege log, but seek to preserve the ability to do so. However, for now, plaintiffs raise legitimate objections, while providing responsive information, subject to preservation of these objections.

Subject to the above, subject to discussions herein of the difficulty of obtaining or reconstructing lost documents, and subject to undersigned counsels' ability to obtain information from persons not within their direct control, responses have been made thus far to the fullest extent possible, and will continue as per plaintiffs' obligation to supplement.

**Interrogatories Nos 1 and 2**

Lafarge accuses plaintiffs of trying to mask witnesses, however, plaintiffs have responded to the Interrogatories as they are written.

All persons listed in answer to Interrogatory No. 1 are, plainly and simply, sources of information used in formulating responses, and include all persons who provided testimony in *In Re Ingram Barge Company*, counsel for various parties who revealed information in conversations, experts retained in the MRGO and Levee litigation tracks, independent experts, all named plaintiffs who provided discovery responses, non-named plaintiffs who shared information with their attorneys, putative class members who also shared information with the undersigned, and independent witnesses not aligned with any party in the Barge litigation. All of these persons assisted, wittingly or not, in providing discovery responses. This is the answer to the question Lafarge asks. Moreover, Lafarge recognizes every name listed, and has had first-hand knowledge and interaction with most.

The same is true as to Interrogatory No. 2. Plaintiffs answered the Interrogatory posed, and listed the names of every person known to plaintiffs - other than individual plaintiffs, who Lafarge excluded from the Interrogatory - who are likely to have discoverable information that plaintiffs may use to support their contentions that the barge caused damage to plaintiffs and putative class members. Lafarge has no grounds for complaint, as plaintiffs exhaustively and comprehensively answered the Interrogatory Lafarge posed.

### Interrogatory No. 23

Plaintiffs have answered Interrogatory No. 23, providing in supplemental answers the facts expected to be elicited from every lay witness who supports plaintiffs' contentions that ING 4727 caused or contributed to the Northern IHNC Eastern floodwall breach (near Florida Avenue and Sewerage and Water Board Pumping Station OP5). As additional witnesses' identities and factual

accounts become known, plaintiffs supplement and will continue to supplement their answer to this Interrogatory. Lafarge ignores in its motion the fact that plaintiffs have supplemented repeatedly to provide the information Lafarge claims is missing, and Lafarge has been and is engaged in conducting numerous depositions of various eye and ear witnesses based upon these supplemental answers provided by plaintiffs. Plaintiffs have deposed Pumping Station Supervisor William Villavasso, the primary witness to the North breach, during whose deposition Lafarge list*en*ed to detailed testimony and cross examined Mr. Villavasso concerning his observations of the barge as it ploughed into the floodwall and unleashed a flood of water only a short distance from where he was standing. Plaintiffs have additionally provided all nonexpert documents and things supporting their contentions. Plaintiffs continue to supplement as additional information becomes available, but have not withheld any nonprivileged items. Opinions and inferences are not required according to any Case Management Order governing this discovery, and are not the types of factual information contemplated by Fed. R. Civ. P. 26 for production by lay persons.

### Interrogatory No. 24

Again, Lafarge complains without basis. Other than expert reports not yet required, plaintiffs have already identified every eye and ear witness known to them to the cause and source of flooding - ING 4727, stated all facts to be sought through such persons' trial testimony, and have tendered all documents responsive to the request. Again, Lafarge has already begun deposing all such persons, and further, was aware of many of them through Lafarge's own questionable contacts through Centanni Investigative Services, Inc., even before undersigned were. Plaintiffs have not withheld any information to which Lafarge is entitled.

### Interrogatory No. 27

Plaintiffs have submitted a proposed trial plan in the Motion for Class certification dismissed

as premature when the Court revised the schedule governing this litigation. Plaintiffs' counsel additionally attended the March 7, 2008 status conference, the attorney conference ordered at said status conference, and submitted their proposed case management plan in connection with the ongoing revisions of the schedule, by all of which means undersigned have detailed their trial plan for Lafarge and all others, even though the Court has not yet ordered anyone to do so. Plaintiffs stand on the responsive information already in Lafarge's possession.

### Request for Production No. 19

Plaintiffs have provided all responsive documents in their possession, *custody and control.* Plaintiffs have every incentive to provide to Lafarge all proof that the barge was heard scraping, etc., against the floodwall, and have divulged everything including witness accounts, witness identities, and the transcribed statement of Arthur Murph. In fact, Lafarge has been engaged in depositions of numerous persons revealed by undersigned through their own efforts, and others, who all claim to have heard the barge scraping against the floodwall for a period immediately preceding the deluge when the barge was heard and seen crashing through the floodwall.

### Particular Responses (Plaintiffs' Claims and Alleged Injuries)

### Interrogatory No. 26

Lafarge states that Doris Shanks and Donald Pritchett did not answer Interrogatory No. 26, which seeks description of all damages. This oversight will be remedied promptly.

### Interrogatory No. 37

Plaintiffs have alleged a class action and proposed a trial plan. Please see Record Doc. 11005, p. 27. The trial judge is considering his own trial plan, under which a test case will be tried first. Classwide property and business damages are the subject of expert investigation and opinion, which, according to the governing Case Management Order, are not subject to disclosure until arrival of the

expert deadline. This includes mass appraisal of damages for loss of value and loss of business value Information on remediation, restoration, and repairs is to some extent in the possession, custody or control of named plaintiffs, and has been and will continue to be provided to defendants as it becomes available. In many instances, plaintiffs' homes were demolished by the City without plaintiff's knowledge or participation. In many instances, plaintiffs are not rebuilding or repairing because they have relocated or lack funding to perform repairs. However, in instances in which plaintiffs are making repairs, ongoing supplementation will occur as promised. Plaintiffs are doing their best to continue to gather and supply information.

### Interrogatory No. 40

All named plaintiffs who have undergone mental health care for reasons relevant to this case have provided all responsive information in their possession, custody and control. Should any more such information come to light, it will be provided in full.

### Interrogatory No. 41

Plaintiffs have identified all decedents because of whose deaths named plaintiffs are bringing wrongful death claims in this litigation, and have provided death certificates containing the date, location and cause of death to the extent these facts are known. That all named plaintiffs' decedents died due to the floodwater (drowning) cannot be amplified further. It is what happened. Plaintiffs have no incentive to withhold any such. Undersigned are attempting to obtain autopsy reports as to those decedents for whom they exist, and will provide same if they are available.

### Request for Production No. 17

As stated above, plaintiffs have tendered to Lafarge all evidence in named plaintiffs' custody, control or possession of damages and expenditures caused by the flooding. Undersigned have also extended offers to allow Lafarge to inspect all damage photos at undersigneds' offices. Again,

should more information become available, it will be provided immediately and fully, subject to legitimate, logged objections of privilege.

### Request for Production No. 21

Named plaintiffs have tendered all responsive documents in their possession, custody or control concerning damage to real property, and will continue to supplement as per law. Lafarge has all named plaintiffs' ownership documents, i.e., acts of sale, judgments of possession, etc., and all available reconstruction/repair documents as to those persons making real property claims. Nothing is withheld as, at the present time, there is no incentive to do so. Again, undersigned will supplement, as recent LRA disbursements will probably enable many to begin repairs and renovations that have been, until now, financially impossible.

### Requests for Production No. 24

Undersigned properly amended the named plaintiffs' original response, and have provided all responsive information in their possession, custody or control concerning claims for loss or destruction of movable property. This includes photos, insurance claims documents and inventories. Plaintiffs will continue to supplement as per law should additional information become available.

### Request for Production No. 28

Requests for documents related to environmental testing clearly call for premature production of expert materials, in violation of the Case Managment Order. As plaintiffs have stated in their witness lists, plaintiffs retained Aurora Environmental to perform expert post-storm soil and water testing and analysis of the flood-affected areas. Aurora will be called as plaintiff's expert to testify as to their results and opinions. These tests, Aurora's data, analyses, and the conclusions reached therefrom are protected from disclosure by the Case Management Order until such time as the expert report deadline occurs. Clearly, Lafarge is not entitled to the information yet, and plaintiffs stand

behind their response. Lafarge's alleged ground for ordering production - sufficient lead time - is baseless, as Lafarge has been free for years to perform whatever environmental testing it deems appropriate (provided it does not involve unlawful entry onto private property).

### Request for Production No. 35

The documents requested - documents relating to damages to real property - are subsumed within other requests, to which named plaintiffs have responded to the fullest extent currently possible, as discussed above.

### Request for Production No. 22

As stated above, named plaintiffs have already provided everything in their possession, custody or control concerning emotional distress claims, and will continue to do so if more information comes to light, subject to the reservations raised in the responses and privilege log, and discussed herein. However, it appears that although everyone was adversely affected emotionally by this tragedy, few had the resources or ability to undergo formal mental health treatment. Perhaps Lafarge anticipates a larger segment of the affected population than is actually the case.

### Request for Production No. 23.

Please see the above. It is true that the only personal injuries for which named plaintiffs are making claims at present in this putative class action consist of emotional injuries and wrongful deaths.[7] All responsive materials in named plaintiffs possession, custody or control have been provided to the same extent described throughout this opposition.

### Request for Production No. 25

Named plaintiffs bringing business loss claims have produced all responsive documents in

---

[7]Plaintiffs and putative class members reserve the right to seek damages for all manner of injuries and damages should class certification not occur.

their possession, custody or control, much of which was lost by flooding and destruction of paper files and computer hardware. Undersigned are gathering and submitting tax return requests to the IRS, and will provide Lafarge with all responsive materials as soon as they are received.

### Request for Production No. 26

As stated with respect to Request for Production No. 25, Lafarge has been provided everything in the possession, custody or control of named plaintiffs making business loss claims. IRS returns will be provided when received from the IRS.

### Particular Responses (Footnote 18)

Lafarge makes specific mention in footnote 18 of their memorandum of Interrogatories Nos. 29 (homeowners or government benefits claims), 34 (criminal convictions or bankruptcies), 35 (prior civil suits), 36 (identification of damaged real property), 37 (damages for demolition, salvage, restoration), 38 (lost income), 39 (non-emotional personal injuries). Although Lafarge does not explicitly state whether issue is taken with the responses made, to the extent described throughout this opposition, named plaintiffs have complied to the fullest lawful and feasible extent with these requests, providing answers with as much discoverable information as possible in named plaintiffs' custody, control or possession, and in accord with the Federal Rules of Civil Procedure and Federal Rules of Evidence. Any additional information or changes will be tendered, to the same extent, at the earliest possibility.

### 6. A Note Concerning Requests for Admissions

All named plaintiffs who have provided any discovery responses at all have responded to Lafarge's Requests for Admissions. As undersigned demonstrate, Barge PSLC/Master Liaison counsel has been diligent and emphatic in seeking responses from other attorneys' clients. Undersigned have responded to Requests for Admissions on behalf of all named plaintiffs who have

been compliant. Except for responses tailored for individual persons (i.e., admit that you did not see the barge break the floodwall, etc.), responses to more general questions are made for the whole of the putative class. Additionally, to the extent that Requests for Admissions seek responses contained in original and supplemental Answers to Interrogatories and Responses for Requests for Production, Lafarge has the information they seek in Requests for Admissions.

Undersigned respectfully suggest that if the Court is inclined to do anything other than accept and/or compel late responses from noncompliant persons, the Court's action be limited only to those named plaintiffs who have not complied, allowing them the opportunity to supply superceding responses in the future upon a showing of good cause for past failures to do so. It would be unfair and prejudicial to attribute the ill-effects of these persons' inaction to persons who have upheld their obligations, or to lose sight of the fact that most if not all of the persons affected by the events subject of suit are neither sophisticated litigants, nor their lives and hearts fully recovered from the trauma they experienced.

**7. In Summary...**

Plaintiffs do not wish to deprive Lafarge of proof to which they are legitimately entitled, and Lafarge knows this to be the case. Undersigned have worked very closely with counsel for Lafarge, who know of all the prior and ongoing efforts undersigned have taken to continue to provide discovery responses. They also know all of the reasons why ongoing supplementation is necessary, and have agreed to accept this. They are aware as well of the difficulties and delays inherent in undersigned's efforts to obtain proof through other attorneys, from persons who have not directly retained the undersigned. Yet Lafarge fails to acknowledge the wealth of information they have been provided - so massive it is that Lafarge does not tender it for the Court's consideration - suggesting instead that plaintiffs are engaged in an effort to obfuscate or withhold this proof. Nothing could be

further from the truth. Undersigned have been candid, diligent, cooperative and forthcoming with proof, even that arguably protected by privilege. As to privileged information and things, named plaintiffs have produced all that might be used in trial, yet maintain their objections in order to preserve privilege and protect themselves against possible abuses should they occur in the future. For these reasons, plaintiffs urge the Court to uphold plaintiffs' objections, though in fact they have prevented little to nothing in the way of diclosure.

Furthermore, undersigned have produced a privilege log in accord with law. As well, undersigned continue their efforts to obtain additional information and things from their clients as well as those of other attorneys, and from independent sources such as healthcare providers, the vital records registry, IRS, and so forth. Plaintiffs have agreed and fully intend to continue to provide information as it comes into their possession, custody or control.

## CONCLUSION

For the foregoing reasons, undersigned pray that the Court deny Lafarge's Motion to Compel as to the named *Mumford* and *Boutte* plaintiffs, and as to those named *Parfait*, *Lagarde* and *Benoit* plaintiffs who have responded , at Lafarge's sole expense, as there is no need for the relief Lafarge seeks as to the foregoing persons, and that separate proceedings be held as to all other plaintiffs who have been noncompliant.

Respectfully submitted,

/s/ Brian A. Gilbert,
Brian A. Gilbert, Esq.(21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
   Telephone: (504) 885-7700
   Telephone: (504) 581-6180
   Facsimile: (504) 581-4336
   e-mail: bgilbert@briangilbertlaw.com

        /s/ Lawrence D. Wiedemann,
_____Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail: lawrence@wiedemannlaw.com,
    karl@wiedemannlaw.com, karen@wiedemannlaw.com,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
    Telephone: 504-834-0646
    e-mail: pistols42@aol.com

        /s/ Richard T. Seymour
_____Richard T. Seymour (D.C. Bar #28100)
Adele Rapport
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
    Voice: 202-862-4320
    Cell:   202-549-1454
    Facsimile:  800-805-1065 and 202-828-4130
    e-mail: rick@rickseymourlaw.net,
        adele@rickseymourlaw.net

        /s/ Lawrence A. Wilson
_____

Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
    Telephone: (212) 608-4400
    Facsimile: (212) 227-5159
    e-mail: lwilson@wgdnlaw1.com,
ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
_____

Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
    Telephone: 212-869-3500 ext. 235
    Facsimile:  212-398-1532
    e-mail: a.fuchsberg@fuchsberg.com,
    l.kelmachter@fuchsberg.com

Dated: April 8, 2008

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 8 day of April, 2008.

                      \s\Brian A. Gilbert