# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL | * | |
| BREACHES | | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge* | 05-5531 | * |
| *Mumford v. Ingram* | 05-5724 | * |
| *Lagarde v. Lafarge* | 06-5342 | * JUDGE |
| *Perry v. Ingram* | 06-6299 | * STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | * |
| *Parfait Family v. USA* | 07-3500 | * MAGISTRATE |
| *Lafarge v. USA* | 07-5178 | * JOSEPH C. WILKINSON, JR. |
| | * | |

## LAFARGE NORTH AMERICA INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Defendant Lafarge North America Inc. ("LNA") opposes each point in plaintiffs' motion to compel additional discovery responses [Doc. 11578]. Plaintiffs' motion provides very little argument regarding why LNA's challenged discovery responses are inadequate under the Federal Rules of Civil Procedure. As we show below, plaintiffs' motion to compel is without merit.

Before addressing the subjects of plaintiffs' motion, we must comment briefly on the hyperbolic accusations that permeate plaintiffs' motion papers.  Those accusations, which principally concern the efforts of LNA's investigators to learn the facts from potential witnesses., are now the subject of a separate motion for  protective order by the plaintiffs.  LNA will address every alleged impropriety in its response to that motion, and will show that no improprieties have occurred.

Plaintiffs' accusations are irrelevant to their motion to compel discovery.  Rather, insofar as discovery is concerned, plaintiffs largely concede that LNA has disclosed those fruits of its investigation to which plaintiffs are entitled.  For instance, while plaintiffs accuse LNA of having "looted … plaintiffs' homes" (Pl. Mem. 7) by recovering timepieces for preservation of evidence which would otherwise have been lost or destroyed – in the same manner as multiple expert investigation teams did – plaintiffs acknowledge that every one of these timepieces has been produced to the plaintiffs for their inspection and analysis.  Similarly, while plaintiffs accuse LNA of "hiding … recorded telephone interviews with plaintiffs" (*id.* at 7), their counsel are forced to concede that LNA has already produced, pursuant to Rule 26(b)(3), copies of all recorded interviews made by individuals whom they represent, including any plaintiffs in this case.

Accordingly, LNA addresses the merits of plaintiffs' contentions in the order plaintiffs have raised them.

**I.      Opposition to Plaintiffs' First Grouping of Topics in their Motion to Compel**

**A.      Merits Requests for Admission**

**1.      Requests for Admission No. 1**

Requests for Admission No. 1 asks LNA to admit its "awareness" of individuals who "claim" to have seen the barge transition into the Lower Ninth Ward.  LNA objected to the

interrogatory on the ground that it is directed at discovery rather than narrowing issues for trial, but nevertheless admitted the substance of the request while qualifying its admission to make clear that LNA does not admit any underlying factual allegations.

Requests to admit, unlike other discovery requests, are directed at closing issues for trial rather than learning facts or information.  *See* 7 Moore's Federal Practices § 36.02[2] (3d ed. 1991) ("Because Rule 36 was not designed to elicit information, to obtain discovery of the existence of facts, or [to] obtain production of documents, requests for admission should not be used as a method of discovery for those purposes.") (footnote omitted), quoted in this Court's June 27, 2007, discovery order [Rec. Doc. 6050].[1]  Whether LNA is "aware" of any person who "claims" to be an eyewitness to ING 4727's transition into the Lower Ninth Ward narrows no issue for trial; that is, an admission by LNA that it is "aware" of such "claims" does not eliminate any issues from dispute, nor avoid the need for proof on any issue.  Thus LNA appropriately objected to the request.

Nonetheless, in an attempt to avoid dispute and motion practice, LNA admitted the substance of the request using the very language of the request itself ("LNA admits that it is 'aware' of 'one or more persons...other than Terry Adams and Christopher Weaver who has claimed to be an eyewitness' to the supposed events recited in the request . . . .").  In admitting that LNA is "aware" of such accounts,[2] LNA's answer gave the plaintiffs all that they were entitled to receive.

---

[1] *See also Adventis, Inc. v. Big Lots Stores, Inc*., 2006 U.S. Dist. LEXIS 68332, 4-5 (W.D. Va. Sept. 11, 2006) ("The purpose of requests for admissions, Fed. R. Civ. P. 36(a), is to expedite the trial by establishing certain material facts as true, thus, narrowing the range of issues for trial.  Admissions limit and narrow issues to avoid 'litigation of the unessential and undisputed facts.'") (citations omitted).

[2] See, *e.g.*, Rec. Doc. 8695-2 (filing by plaintiffs identifying persons other than Adams or Weaver who have "claimed" to be an eyewitness to these events).

LNA qualified this admission, as it is entitled to do under Rule 36(a), to make clear that the response does not constitute an admission about the underlying facts.  Rule 36(a) allows, "when good faith requires that a party qualify an answer or deny only a part of the matter, the answer must specify the part admitted and so much of it as is true and qualify or deny the rest." Because the barge's transition into the Lower Ninth Ward is an important issue in the case, LNA qualified its response to make sure that the response could never be used (or, more accurately, misused) as an admission on the substantive factual issue of what actually transpired.  LNA's qualification of its response is valid and appropriately will help avoid any misunderstanding about the scope or nature of its response.

2**.**      **Requests for Admission No. 2**

This request seeks an admission that LNA "knows of no eyewitness to ING 4727's transition from the IHNC to the eastern side of the eastern IHNC floodwall who will testify that ING 4727 did not cause or contribute to any breach" in the eastern IHNC floodwall.  This request is also improper because it narrows no issues for trial.  The substantive question of whether the ING 4727 passed into the Lower Ninth Ward after the creation of the breach, and without causing or contributing to it, will be an important issue in this trial.  It will be contested as a matter of scientific and expert proof, as well as eyewitness testimony from those who saw the breach occur without the barge, regardless of whether LNA also locates an eyewitness to the transition of the barge who will testify as stated in the request.

Nonetheless, LNA admitted the substance of the request, to the extent it is currently able to do so, by saying it "knows of no person" who will testify as an eyewitness to the substance of the request.  LNA appropriately qualified that admission, as it is entitled to do under Rule 36(a), to make sure the response is clear and not misused by plaintiffs for another purpose.

### 3.   Requests for Admission No. 3

This request, like the previous two, is improper because it does not narrow issues for trial. Rather, it asks whether LNA is "aware" of anyone other than Adams and Weaver who "claim[s] to have seen a barge make contact with the floodwall."  As with the previous two requests, LNA's "awareness" of what witnesses might "claim" is ***not*** an issue for trial.

In any event, LNA has admitted the substance of the request in terms that track the language of the request itself.  LNA's admission, of course, acknowledges only that it is "aware" that there are persons other than Weaver and Adams who "claim" to have witnessed the relevant events, as suggested in papers plaintiffs have filed with this Court (see Rec. Doc. 8695-2). Plaintiffs are entitled to nothing more than this.

LNA qualified its admission, as it is entitled to do under Rule 36(a), to make clear that LNA does not admit the underlying substance of any of these supposed accounts.  Such a qualification was necessary to make sure that LNA's admission is not misused as an admission on the underlying facts.[3]

### B. 1. & C.1.   Merits Interrogatory No. 5 and Request for Production No. 3

These two discovery requests seek production or disclosure of "fact statements" from "any and all plaintiffs and/or persons potentially belonging to the putative class."  For purposes of the present motion, the question is whether LNA has provided whatever discovery is required.[4]  It has.  Importantly, LNA has already produced to the plaintiffs all "fact statements"

---

[3] Plaintiffs' citation to this Court's prior order (Rec. Doc. 874 in No. 05-4419), which takes plaintiffs to task for their own improper responses to requests for admissions, is inapposite.  This Court directed plaintiffs to "respond without objection to the question posed, not to some question that Group A wishes had been posed."  *Id.* at 2.  Here LNA has responded directly to the question plaintiffs posed in their request.  Similarly, plaintiffs' citation of a different order (Rec. Doc. 6592) is inapposite in that LNA has supplied a "denial or specific admission" of each request with only such qualification as expressly permitted by Rule 36(a).

[4] As noted above, although plaintiffs' motion levels a number of accusations against LNA concerning its investigation of the facts, their motion to compel does not squarely rely on them.  LNA will address plaintiffs'

made by any plaintiffs or persons represented by plaintiffs' counsel.  Thus, LNA has already

provided all "statements" required to be disclosed under Fed. R. Civ. P. 26(b)(3), and the

requirements of that rule form no part of plaintiffs' motion.  LNA produced these documents in

recognition that they receive special treatment under Rule 26(b)(3)(C).  That rule provides that

"[a]ny party or other person may, on request and without the required showing, obtain the

person's own previous statement about the action or its subject matter."  In this context, "[a]

previous statement is either: (i) a written statement that the person has signed or otherwise

adopted or approved; or (ii) a contemporaneous stenographic, mechanical, electrical, or other

recording — or a transcription of it — that recites substantially verbatim the person's oral

statement."  Fed. R. Civ. P. 26(b)(3).

     Further, LNA supplied plaintiffs' counsel with a list of all Lower Ninth Ward residents

interviewed by LNA's investigators (see Pls. Ex. D), whether or not a recorded transcription was

made.  By supplying that list, LNA enabled the plaintiffs to identify each interviewee who is

represented by their counsel and, thus, to request any statements that would be subject to

production under Rule 26(b)(3)(C).  Far from "hiding materials to which the plaintiffs are

entitled," (Pl. Mem. 7), LNA has provided all the information needed to permit discovery of

statements to which they are entitled.

     *a.*    *The Recorded Interviews are Work Product*

     The documents at issue are recorded transcriptions of interviews between LNA's

investigators and persons who reside or resided in the Lower Ninth Ward, but who are <u>neither</u>

plaintiffs nor clients of plaintiffs' counsel.  Plaintiffs are not entitled to those transcriptions.  In

response to both of these requests, LNA asserted a work product objection.  All recorded

---

accusations of improper conduct in its response to plaintiffs' separate protective order motion, and will show in that
response that no improprieties occurred.

transcriptions of interviews taken by LNA's investigators were prepared in anticipation of

litigation or for trial.  *See* Fed. R. Civ. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495 (1947).

Rule 26(b)(3) specifically provides that witness statements are work product and entitled to

protection unless the "required showing" is made to overcome the protection; otherwise, the

exception whereby a party or person can obtain production of his own statement without making

the "required showing" would have no meaning.  LNA's privilege log and affidavit previously

submitted to the plaintiffs and the Court satisfy LNA's burden of demonstrating that this material

is work product.  [Rec. Docs. 11037-6 and 11037-7.]

Of the 268 individuals listed, LNA's investigators recorded their interviews with only

113 such persons,[5] and LNA has already produced 29of these transcripts to the plaintiffs,

representing 27 persons identified to LNA by the plaintiffs as being a party or person whom their

counsel represent.[6]  The rest of the statements were made by persons who are not plaintiffs and

not represented by plaintiffs' counsel, and thus Rule 26(b)(3)(C) has no applicability to these

interview transcriptions.

LNA has shown that each of the interview transcriptions is entitled to work product

protection.  The investigative interviews were undisputedly carried out by LNA's investigators in

anticipation of litigation or for trial, and the transcriptions prepared for that very purpose.[7]

Plaintiffs' memorandum does not even begin to take issue with these fundamental facts, which

establish that the statements are entitled to work product protection.

---

[5] Centanni Dec. ¶ 2, attached as Ex. 1.

[6] Though plaintiffs' motion does not make clear that it is limited to transcriptions of recorded interviews, that
limitation is implicit in their use of the term "statement" in each of the requests at issue.  Thus, plaintiffs' requests
do not encompass memoranda prepared by LNA's investigators summarizing their witness interviews, or other
similar documents.  In any event, such memoranda would constitute "opinion work product" that is absolutely
protected from production.  See Rec. Doc. 11037 (LNA motion to quash subpoena demonstrating investigative
memoranda are opinion work product).

[7] See Rec. Doc. 11037-6 (Centanni affidavit submitted in support of LNA's motion to quash).

  b.      *Plaintiffs Have Not Made a Showing to Overcome LNA's Work-Product Protection*

Plaintiffs cannot overcome LNA's work product protection for the interview transcripts. Arguably, the interview transcripts may be considered highly-protected "opinion" work product which reveals counsel or the investigator's "mental impressions, conclusions, opinions, or legal theories" (Fed. R. Civ. P. 26(b)(3)) because the interviews and the memoranda reflect the investigators' own judgments about what leads should be pursued, what questions should be asked (including what follow-up) and what information should be gathered.[8]  But even if the transcripts constitute "ordinary" work product, plaintiffs are not entitled to their production unless they can show a "***substantial need of the materials in the preparation of [their] case***" and they are "***unable without undue hardship to obtain the substantial equivalent of the materials by other means***."  Fed. R. 26(b)(3) (emphasis added); see *Hickman*, 329 U.S. 509.

Plaintiffs' motion to compel does not even attempt to carry this burden.  Plaintiffs argue only that the interviews "contain facts relevant to the claims and defenses in this suit, enable witness identification, and will permit assessment of defense counsel's conduct in obtaining them."  Pl. Mem. 10.  But none of these reasons constitutes a showing of substantial need – indeed ***all*** attorney work product prepared by an adversary would meet this description.  Further, because plaintiffs have the names and contact information for the potential witnesses, and can interview them or subpoena them for deposition, they cannot show that they have "substantial need" of the fruits of LNA's investigation or that they cannot obtain them without undue

---

[8] See *id.* ¶¶ 6, 7.  The investigators' interview memoranda, as opposed to transcriptions, clearly constitute "opinion work product" entitled to near absolute protection.  See, *e.g.*, *Baker v. General Motors Corp.*, 209 F.3d 1051 (8th Cir. 2000) ('Notes and memoranda of an attorney, or an attorney's agent, from a witness interview are opinion work product entitled to almost absolute immunity.").  As noted above, such memoranda do not constitute "statements" and are not properly at issue on this motion.

hardship.[9]  This is plaintiffs' burden.  *Gator Marshbuggy Excavator LLC v. M/V Rambler*, 2004

U.S. Dist. LEXIS 16090, at *3 (E.D. La. Aug. 12, 2004) (Wilkinson, M.J.) (party seeking

material carries burden of establishing substantial need and undue hardship).

        *c.*     *Plaintiffs Cannot Avoid the Required Showing by Claiming They Are Only Seeking Facts.*

        Plaintiffs attempt to avoid making their required showing of substantial need and undue

hardship by claiming they have an unqualified right to "facts" from opposing counsel.  This

argument is to no avail.  LNA's memorializations of witness interviews are not "facts;" rather,

plaintiffs can obtain any facts by talking to the witnesses themselves.[10]  Nothing prevents

plaintiffs from interviewing or deposing the witnesses.   "Discovery of a witness statement to an

attorney is generally not allowed if that witness is available to the other party."  *Baker v. GMC*,

209 F.3d 1051, 1054 (8th Cir. 2000).[11]

        A party's attempt to poach the results of its adversary's investigation under the guise of

learning "facts" that the party could obtain from witnesses whose identities have been disclosed,

and who are the source of the investigator's knowledge, is an affront to Rule 26(b)(3).  The

purposes of the work product doctrine go beyond protecting the mental impressions of

attorneys—else there would be no protection for ordinary work product.  To the contrary, "[o]ne

---

[9] See, *e.g.*, *Hickman*, 329 U.S. 495, 518 (Jackson, J., concurring) ("Having been supplied the names of the witnesses, petitioner's lawyer gives no reason why he cannot interview them himself.")

[10] For example, while plaintiffs claim that "[i]t cannot be guessed how many of the [interviewees] claimed to see the barge break the floodwall" (Pls. Mtn. at 9-10), plaintiffs can find out *exactly* what the interviewees claim to have seen by interviewing them.  Indeed, by interviewing the witnesses they can find out anything they want about what the witnesses claim, not just those things that LNA's investigators chose to ask about.  They can do all of this without invading LNA's protected work product.

[11] *See also Gator Marshbuggy Excavator LLC v. M/V Rambler*, 2004 U.S. Dist. LEXIS 16090, at *10 (E.D. La. Aug. 12, 2004) (Wilkinson, M.J.) (no substantial need of investigator's file and no undue hardship to obtain substantial equivalent where "Plaintiffs have their own knowledge of the circumstances of the incident through the captain and crew members, and [the witness interviewed by the investigator] is available for deposition"); *Long v. Anderson Univ.*, 204 F.R.D. 129, 138 (S.D. Ind. 2001) (plaintiffs "may discover the names of the individuals [the investigator] interviewed and either conduct their own witness interviews or take depositions of relevant witnesses").

of the primary purposes of the work product doctrine is to prevent one party exploiting the other

party's efforts to prepare for litigation."  *O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 642

(C.D. Cal. 2003).  "The work-product privilege is intended to prevent a litigant from taking a

free ride on the research and thinking of his opponent's lawyer [or lawyer's agents] . . . ."

*United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999.)[12]  LNA has provided the identities

and contact information for the witnesses whose "factual accounts" plaintiffs seek to wrest from

LNA.[13]  Having been given this information, plaintiffs are not allowed a free ride on the efforts

of LNA's investigators in interviewing the witnesses.  Rather, plaintiffs can and should be

required to conduct their own investigation.

   d.  *Non-disclosed Recording Does Not Eliminate Work Product Protection*

       Plaintiffs' motion to compel does not contest LNA's assertion of work product protection

on the ground that LNA's investigators did not disclose to the interviewees that the interviews

were being recorded.  Nonetheless, because plaintiffs raise this issue in their separate motion for

a protective order, LNA will briefly address it.

       Plaintiffs' motion for a protective order [Rec. Doc. 11765-2] cites *Pfeifer v. State Farm*

*Ins. Co.*, 1997 WL 276085 (E.D. La. May 22, 1997) (No. Civ. A. 96-1895) at p. *3, and a pair of

similar cases, for the proposition that undisclosed recording of interviews destroys the work

---

[12] *See also Computer Assocs. Int'l, Inc. v. Quest Software, Inc.*, 2003 U.S. Dist. LEXIS 16378, at *5-6 (N.D. Ill. 2003) (noting that "defendants will have a fair opportunity to contact and interview these witnesses regarding any statements that they have made to [plaintiff]. We see no reason why plaintiff should be forced to assist defendants in their own witness interviews"); *In re Grand Jury Proceedings (Duffy)*, 473 F.2d 840, 842, 848-49 (8th Cir. 1973) (protecting as opinion work product attorney's "personal recollections, notes, and memoranda" of conversations with witnesses even though it was "the interviewees' assertions of fact rather than Duffy's legal conclusions or opinions which are at issue," noting that "[g]enerally, if a witness is available to the party seeking discovery of [that witness's] statement to opposing counsel, such discovery should not be allowed").

[13] Witness identities and contact information is the very information that this Court required to be disclosed in the case on which plaintiffs principally rely.  *See Mack v. GlobalSantaFe Drilling Co.*, No. Civ.A. 04-3461, 2006 WL 980746, *2 (E.D. La. Apr. 11, 2006) (stating that investigator must disclose "the identities of potential witnesses contacted or researched in its investigation").  Here, plaintiffs have the witnesses' identities and contact information and do not need the work-product witness statements to learn who the people are or what they may have to say.

product privilege.  *Pfeifer*, however, is not applicable here.  First, in *Pfeifer*, the interviews were of defendant's employees, possibly attributable to the defendant, and so they were statements of a party-opponent, separately discoverable under Rule 26(b)(3)(C).  That is not the case here.  Second, after *Pfeifer* was decided, the American Bar Association issued a Formal Ethics Opinion reversing the rule on which *Pfeifer* was based.  In *Pfeifer*, this Court relied on a line of cases concluding that undisclosed recording of interviews vitiated the work product protection based ABA Formal Opinion 337 (1974), which had concluded that recording of interviews in this manner was improper.[14]  But, in 2001, subsequent to *Pfeifer* and after much criticism of its 1974 ruling, the ABA withdrew that opinion and issued Formal Opinion 01-422 which ruled that the mere act of secretly but lawfully recording a conversation is not unethical.  ABA Formal Opinion 01-422 (2001), at 5, attached as Ex. 2.  As the ABA opinion explains, "there seems no reason to treat recording of conversations any differently in this respect from other methods of gathering evidence."  *Id*.  In light of the ABA's recognition that such recordings should not be treated "any differently" from "other methods of gathering evidence," it would be incorrect for this Court to rely on the now-discarded 1974 ABA Opinion, or the cases relying upon it, to carve out a special exception to the work product doctrine for such materials.[15]

The bottom line is that when a party records a witness interview in anticipation of litigation or for trial, that recording is entitled to work product protection under Rule 26(b)(3).

---

[14] *See Pfeifer*, *supra*, at *3 (relying on *Ward v. Maritz*, 156 F.R.D. 592, 594 (D.N.J. 1994)); *Ward*, 156 F.R.D. at 596 (relying on ABA Opinion 337).

[15] Plaintiffs' protective order motion cites a single case that post-dates the ABA's 2001 Formal Opinion stating that there is nothing unethical about undisclosed recording of interviews.  *Williams v. Gunderson Rail Servs., LLC,* 2008 WL 145251 (W.D. La. Jan. 14, 2008).  That case, however, relied exclusively on the holdings and rationales of cases decided before the ABA's 2001 Formal Opinion (*id.* at *3-4), and the court's opinion does not note or address the change in the applicable standards.  It therefore should not be considered guidance on the issue subsequent to the ABA's Formal Opinion.

e.      *Claimed Delay Does Not Justify the Discovery*

Plaintiffs argue -- although the point has no bearing on whether LNA has raised a valid work product objection or whether plaintiffs can overcome that objection -- that LNA has hidden the identities of these witnesses, "interfer[ing] with plaintiffs progress towards CMO deadlines." Pl. Mem. at 7.  These are not LNA's witnesses and LNA has not hidden them.  These individuals have at all times been equally available to plaintiffs as they were to LNA.  If plaintiffs declined to investigate the facts through attempts to interview potential witnesses, as appears from their argument, that is their own fault.  LNA has hardly "interfer[ed]" by conducting its own investigation and by identifying the relevant witnesses while withholding LNA's own work product.

f.      *Completeness of Statements Previously Produced*

Lastly, plaintiffs reference "redacted text" in the transcripts provided to them of the interviews of individuals who became plaintiffs' counsel's clients and evidence of "the existence of follow up calls not produced."  (Pls. Mtn. at 10)  As explained to plaintiffs at the time the transcripts were produced, sometimes multiple interviews were recorded on the same tape or at the same time.  Portions of a transcript containing interviews with individuals who are not plaintiffs' counsel's clients have been properly redacted from the materials produced to the plaintiffs.

Regarding the reference to follow-up calls, LNA believes that it has produced all transcripts of calls with counsel's clients.  If plaintiffs believe that LNA has omitted a transcript of an interview with one of plaintiffs' counsel's clients, plaintiffs should inform LNA what they believe was neglected.  The generalized accusations made in plaintiffs' motion to compel do not

advance resolution of this issue.  In the meantime, LNA believes that its search was diligent and complete.

For all of these reasons, plaintiffs have not made a showing to overcome LNA's work product protection and their motion to compel on this issue should be denied.

### 2.       Requests for Production No. 14-16

These requests are directed at discovery of settlements between LNA and other persons relating to the Barge ING 4727 (Request 14), "communications" relating to such settlements (Request 15), and "confidentiality agreements" relating to such settlements (Request 16).  LNA responded by producing the settlement agreement between LNA and the Murphs, on whose house the barge landed and from which it had to be recovered.  As LNA's response shows, this is the only settlement into which LNA has entered with anyone relating to the ING 4727.  LNA specifically identified the settlement agreement in its response, and disclosed the confidentiality language.  LNA redacted the amount of the settlement, however.

LNA's response fully complies with this Court's ruling regarding the discovery of settlement documents and information.  As this Court is aware, the plaintiffs long ago sought discovery concerning a settlement between LNA and the Murphs.  Although LNA opposed the requested discovery, the plaintiffs sought to justify their requests on the ground that it might bear on the credibility of Arthur Murph, whom plaintiffs had listed as a witness.  In resolving what it termed a "close question," the Court permitted the plaintiffs to discover "whether or not [Murph] has settled with Lafarge," Rec. Doc. 535 in No. 05-4419, at 23-24, but expressly limited the discovery such that LNA was ***not*** required to respond to interrogatories seeking the "amount" of the settlement or the "damage or injury … claimed" by Mr. Murph.  *Id.* at 24 (denying motion as to subparts 2 and 3 of plaintiffs' interrogatory 1).  LNA's objections to providing settlement-

related discovery beyond what the Court permitted – including settlement confidentiality, lack of relevance, and the potential for misuse – are perfectly in line with the Court's order.

Plaintiffs' motion omits any mention of this Court's prior order limiting settlement-related discovery.  Indeed, plaintiffs provide no argument or explanation whatsoever to support their motion to compel, but instead simply characterize LNA's responses as "evasive" and accuse LNA of "an improper attempt to conceal questionable conduct."  Thus plaintiffs supply no reason for this Court to re-examine its prior ruling allowing only "limited" settlement-related discovery regarding Mr. Murph, with which LNA has fully complied and which does not include the further discovery that plaintiffs now seek to compel.

>    ### D.    Class Requests for Production

>    >    #### 1.    Class Requests for Production Nos. 5-10

These class certification discovery requests ask LNA to produce documents that address the "sources," "causes," "timing," and "depth" of flooding in the proposed class area; the "timing, duration, and depth of precipitation" in the area; and "the area" within the proposed class area "affected by the breaches."  Because the requests are worded similarly with only minor variations, LNA responded in the same manner to each of the requests by identifying publicly-available sources of information while asserting objections to production of attorney work product or preliminary expert discovery.

Plaintiffs' motion takes issue with LNA's responses in only one respect – LNA's refusal to produce transcripts of "recorded class member interviews." (Pl. Mem. 10, 12).  Leaving aside plaintiffs' apparent attempt to fit a square peg (interview transcripts) into a round hole (class certification discovery), the recorded class member interview transcripts that plaintiffs seek to compel in response to these requests are the very same witness statement transcripts that plaintiffs seek to compel in response to requests that ask directly for their production (Request

for Production No. 5, Interrogatory No. 3, each relating to class member "fact statements").  For the reasons set forth in response to that portion of plaintiffs' motion to compel, plaintiffs' motion should and must be denied.

Plaintiffs' baseless assertion that "[t]hese interviews contain nothing if not a demonstration of Lafarge's and its attorney's abusive efforts to contrive a version of the flood sources, flood causes, flood times, flood depths, precipitation, and flood areas for later use in efforts to ambush and malign flood victims" is argumentative, groundless, and entirely beside the point.  LNA interviewed witnesses, as it is entitled to do.  These witnesses are equally available to plaintiffs.  LNA's investigators' memorializations of these interviews are LNA's protected work product.  Under Rule 26(a), LNA is not required to produce them.  Therefore, LNA has complied with its discovery obligations in response to these requests.

After raising its valid work product objection to each of these class RFPs, LNA further referred plaintiffs to the nonprivileged documents that contain information on the topics of class RFPs 5-10 of which LNA is aware and on which LNA intends to rely.  Rather than being "glib" or "evasive," the responses identify documents which contain a wealth of information on the subjects of these requests for production.

## II. Opposition to Plaintiffs' Second Grouping of Topics in their Motion to Compel

### A. Merits Requests for Admission

These requests to admit, and the others that follow in this section, address various aspects of LNA's communications or its storm preparation.  The gist of plaintiffs' objection to LNA's responses appears to be a mistaken belief that Rule 36 does not allow a responding party to qualify an admission or denial, where appropriate.  (Pl. Mem. 12-17).  This argument is incorrect.  Rule 36(a)(4) allows, "when good faith requires that a party qualify an answer or deny only a part of the matter, the answer must specify the part admitted and so much of it as is true

and qualify or deny the rest." LNA's responses directly address the substance of the requests and its qualifications to its responses are limited, succinct, and non-argumentative.

### 1-2.    Requests for Admission No. 6 (subparts A, C-E) and No. 22;

Request for Admission No. 6, subparts A, C-E, ask LNA to admit that it is aware of no person who will testify at trial on various topics of communication between LNA and Ingram Barge Company. As with previous requests for admission discussed above, LNA objected to these requests as improper use of a request for admission as a discovery tool: here, to determine what witness LNA may have testify at trial. Nonetheless, LNA admitted the substance of each subpart but also qualified its response to explain that the absence of trial witnesses on these topics does not constitute an admission of any impropriety – that is, no such communications were made because no such communications were necessary. LNA supplied a similar qualified admission in response to Request No. 22, which addresses whether LNA notified the Coast Guard that the Barge ING 4727 would remain moored at its facility during the storm.

Plaintiffs' motion demonstrates the need for qualification of these responses. Plaintiffs' motion says that "such communications are essential to vessel and waterfront owners' obligations under the USCG Sector New Orleans Hurricane Plan." (Pl. Mem. 12-13). LNA disputes that this is so, and has therefore qualified its admissions to make certain that they can never be taken as an admission with respect to plaintiffs' underlying premise.

Plaintiffs' own responses to LNA's requests for admissions recognize the propriety of these sorts of qualified responses. For instance, in response to LNA's request that plaintiffs "[a]dmit that New Orleans was under a mandatory evacuation order as of Sunday morning, August 28, 2005," plaintiffs responded:

> "Admitted, that the Mayor of New Orleans issued a mandatory evacuation order
> at 10:00 A.M. on Sunday, August 28, 2005, while simultaneously recognizing and

declaring that not all residents would be able to evacuate the area in compliance
with the order."

While LNA has not challenged plaintiffs' qualification of this response (and many others),
plaintiffs can hardly contend that this sort of qualification is improper.

### 3. Requests for Admission Nos. 12 and 13.

Requests Nos. 12 and 13 seek admissions regarding communications between LNA and
Joseph C. Domino.  Contrary to plaintiffs' assertion, each of these responses admits the
substance of the allegation – that is, LNA's responses admit that LNA "did not ask Domino to
alter the mooring" in response to Request No. 12, and that it "did not ask [Domino] to have the
ING 4727 cabled to the shore."  But LNA appropriately qualified the response, as LNA is
entitled to do under Rule 36(a), by making clear that its communications with Domino were
informed by its assessment of the situation.  Plaintiffs' motion, which suggests a different course
of action by LNA was "dictated" by "various statutory rules and regulations" (Pl. Mem. 14),
makes plain the necessity of LNA's qualification to prevent misuse of its answer.

### 4. Requests for Admission Nos. 14, 17, 18, 28 and 30

These requests generally relate to activities at LNA's New Orleans terminal prior to
Hurricane Katrina's arrival.

Request No. 14 asks LNA to admit that it knows of no document that corroborates Ed
Busch's claim that he called Zito Fleeting on August 27, 2005.  Though LNA objected to the
request, LNA also supplied a succinct denial.  Plaintiffs' motion identifies no defect in this
response.

Request No. 17 asks LNA to admit it did not have shoreside personnel on hand to
respond to the breakaway.  LNA's response supplies a qualified admission, which is all that

LNA can supply given the information available to it.  Plaintiffs' motion identifies no defect in this response.

Request No. 18 asks LNA to admit that it "did not decide to allow ING 4727 to remain moored" at its facility.  LNA's response objects to the request as vague and confusing (which it is) but nevertheless refers the plaintiffs to a previous interrogatory response which supplies a qualified admission – that is, LNA "did not decide" to allow the barge to remain at its facility in the sense that it was "present at the facility and there was no means to remove it."  Plaintiffs' memorandum identifies no defect in this response.

Request No. 28 asks LNA to admit that Mr. Busch "did not advise any of his Lafarge North America superiors" that LNA employees were "leaving early" on August 27.  LNA's response is properly qualified by admitting only what LNA can properly admit, and then denying the rest.  First, the term "leaving early" is undefined and is especially ambiguous in the face of an evacuation order.  Second, Mr. Busch had a responsive conversation with Jennifer Arnold, LNA's safety director, to whom Mr. Busch does not directly report.  Was this conversation with Ms. Arnold a conversation with his LNA "superiors"?  The context is unclear, and an unqualified admission or denial would therefore be unclear on these facts.  LNA's qualified response to the request, on the other hand, is clear and appropriately avoids confusion in the response to an unclear request.

Request No. 30 asks LNA to admit that "one or more of Ed Busch's Lafarge North America superiors" knew the barge ING 4727 was at the LNA facility.  Again, LNA supplied a qualified response that admitted the conversation with Ms. Arnold and denied the remainder of the request.  This is the best and most accurate answer that LNA can supply to this request.

**5.     Request for Admissions 19-20**

Plaintiffs' only argument to compel different responses is that they believe LNA's responses are "contradictory."  LNA stands by both of its responses, however.  LNA cannot admit that it did not ask anyone to remove ING 4727 from its terminal (Request No. 19) because Mr. Busch called Zito to release the barge, as he has previously testified.  Nor can LNA admit that LNA did not notify Ingram that ING 4727 was to remain moored its facility (Request No. 20) because Mr. Busch called Zito to release the barge, thus informing Ingram that ING 4727 would remain moored at the facility unless removed by Zito.  LNA has properly and succinctly denied these two requests.

**B.      Merits Interrogatories**

**1.      Interrogatory 1**

According to plaintiffs' memorandum (at 17), this prolix and difficult-to-decipher interrogatory "seeks, in essence, all written documents of Lafarge pertaining to mooring and securing of the vessel at its company."  LNA's response, which identifies by Bates number the documents that correspond to the request and promises further production from the facilities to which it pertains, satisfies this demand.

Plaintiffs complain, however, that LNA has limited its response to facilities in its River Region.  As LNA corporate representative Ed VanderMeulen testified at the Rule 30(b)(6) deposition of LNA, the company's River Region unit consists of thirty to forty facilities operating along the inland river system, and is the unit in which inland river barges operate.[16] Mr. VanderMeulen testified that he has been involved in development of standard operating procedures for the River Region, and described LNA's "two-tiered system" of standard operating procedures, with a high-level set of procedures that are "centrally generated that apply in general

---

[16] Deposition of Ed VanderMeulen at 7-8, 37, 52, 111 (excerpts attached as Exhibit 3).  Having taken Mr. VanderMeulen's testimony repeatedly referring to the River Region, plaintiffs should know better than to mischaracterize it to this Court it as an "alleged" or "so-called" unit of LNA.  Pl. Mem. 19.

to all of our facilities" and a second tier of "site-specific operating procedures" that are

"generated locally."[17]  LNA produced both the general and the site-specific procedures to the

plaintiffs, and referenced them by Bates number ("See Bates nos. LNA00113; LNA---469-480")

in response to plaintiffs' interrogatory.

LNA limited its response, on relevance and burden grounds, to facilities that use the type

of vessel at issue in this action and are potentially subject to hurricane force winds, and plaintiffs

take issue with that limitation.  But it was proper for LNA to limit its response to the River

Region, which is the region in which LNA utilizes inland river barges (such as the ING 4727).

Not only did LNA search for and produce River Region documents with general applicability to

facilities in that region, such as its New Orleans facility, but LNA also agreed to look for

responsive documents at its individual facilities in New Orleans, Union and Westlake – i.e.,

those facilities where inland river barges might potentially be subject to hurricane-force winds.

By including the Union and Westlake facilities within the search, in addition to New Orleans,

LNA recognized and appropriately addressed plaintiffs' contention that "written barge policies at

other Lafarge facilities" might be relevant for purposes of comparison.  Pl. Mem. at 19.

In short, LNA produced responsive documents from the local, regional, and company-

wide levels that are applicable to its facilities where inland river barges such as the ING 4727

might be subject to hurricane-force winds.  The documents produced include the two versions of

the highest-level company manual covering barge handling (referred to by Ed VanderMuelen in

his deposition as the Distribution Operating Procedures Manual) in effect during the three year

period covered by plaintiffs' interrogatory.

---

[17] Deposition of Ed VanderMeulen at 14-15.

Plaintiffs' insistence that LNA scour the company for other types of procedure documents applicable to other types of vessels at other facilities, and in circumstances other than hurricane preparation activities, promises an enormous waste of time and effort. LNA, a diversified supplier of construction materials over a wide area of the United States and Canada, utilizes many modes of transportation to move its products and materials throughout the country. This case, however, is about the mooring of an inland river barge in advance of a hurricane, and LNA's response is calibrated to yield responsive documents relating to that type of vessel in that situation. Based on the list of topics plaintiffs say would they would like to prove (Pl. Mem. at 19), they do not appear to be interested in vessels other than river barges.[18] Plaintiffs concede that their request is properly limited to "written documents of Lafarge ***pertaining to mooring and securing the vessel at its facility.***" Pl. Mem. at 17 (emphasis added). LNA has identified those documents in its response, and no further response is in order.

### C.    Merits Requests for Production

#### 1.    Requests for Production Nos. 1 and 12

Plaintiffs' memorandum mischaracterizes these requests as relating to Interrogatory No. 1, Pl. Mem. at 20, when in fact they have no relationship to that interrogatory. Rather, Request No. 1 asks about visits by Ingram personnel to LNA facilities in advance of Hurricane Katrina or other hurricanes, and Request No. 12 asks about communications between Ingram, LNA, and the U.S. Coast Guard concerning barges remaining at LNA facilities during Hurricane Katrina.

In response to Request No. 1, LNA reasonably limited its search to those facilities with barges that might be affected by a hurricane. Because Ingram would have no reason to visit

---

[18] Similarly the requests are mainly focused on hurricane preparation. In any case, to require LNA to search every individual facility for any mooring-related procedures developed for that specific facility, or communications about mooring at that facility, even though the facility is not subject to hurricane-force winds, would be, as LNA objected, unduly burdensome and outside the scope of legitimate discovery.

facilities not subject to hurricanes in advance of hurricanes, there was no point in pursuing documents from other facilities. Requiring LNA to search at all of its other facilities would be unduly burdensome, especially given that there is no reason to believe that relevant documents will be found at them.

In response to Request No. 12, LNA searched for documents related to those of its facilities that were potentially subject to Hurricane Katrina. There is no reason to expect communications with the Coast Guard or Ingram about location of barges during Hurricane Katrina from facilities not subject to Hurricane Katrina. It would, therefore, be pointless to look for such communications.

### 2. Requests for Production Nos. 17A and 17B

Plaintiffs object to LNA's claim of work product protection for materials responsive to these two unrelated requests. Plaintiffs, however, provide no argument as to why LNA's claim of work product protection is invalid or as to why they should overcome that protection—a showing which is plaintiffs burden. *Gator Marshbuggy Excavator LLC v. M/V Rambler*, 2004 U.S. Dist. LEXIS 16090, at *3 (E.D. La. Aug. 12, 2004) (Wilkinson, M.J.).

#### a. Request for Production 17A

Request 17A, which calls for production of "any and all writings and things …which contain opinions and/or information relative to" the breakaway barge and/or the floodwall breach(es), is so broad and vague as to be practically meaningless. As LNA objected, this request is sufficiently broad to encompass virtually every document in the litigation files of LNA's counsel and representatives.

In response to this request, LNA specifically directed plaintiffs to the publicly-available reports on Hurricane Katrina that provide a wealth of information "relative to the causes and/or occurrence" of the breaches. Beyond this, plaintiffs request is far too broad for a cognizable

response.  Nonetheless, LNA raised a work product objection as to materials generated by counsel or investigators in the course of LNA's investigation in anticipation of litigation.  As detailed in LNA's privilege log and affidavit, and as discussed above, LNA retained counsel on September 8, 2005, who have performed extensive work in anticipation of litigation and in preparation for trial.  Similarly LNA has retained experts whose opinions are subject to disclosure only in accordance with the Court's case management orders.  LNA has ***not*** asserted work product protection as to any documents that were in LNA's possession prior to September 8, 2005, when its investigation began.  Accordingly there is no basis for plaintiffs to contend that LNA is seeking to protect "facts" in the guise of attorney work product.

Plaintiffs appear to fundamentally misunderstand the work product protection encapsulated in Rule 26(b)(5), believing it to protect only the "written opinions" of counsel.  But, as discussed above at pages 5 to 10 of this brief, the work product protection extends beyond "written opinions of counsel" to all documents created by LNA or its investigators in anticipation of litigation.  This includes not only communications by and between LNA's attorneys and representatives, but also compilations of information by LNA's counsel and investigators.  For instance, LNA's investigators have worked diligently to assemble publicly-available materials from media and on-line sources, and these compilations reflect the investigators' professional judgment and discretion as well as their labor.[19]  These compilations are protected work product.  Like all of the work performed by LNA's investigators, they were created in anticipation of litigation.  Further, the selection of the materials to go into the compilation is protected opinion work product.  *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("We believe that the selection

---

[19] See Rec. Doc. 11037-7 and 11037-8.

and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product.").

As opinion work product, counsel's compilations are entitled to the near-absolute protection given to that type of work product. But even if they were only ordinary work product, plaintiffs could not make their showing of "substantial need" and of undue hardship in obtaining substantially equivalent materials by other means. Because the compilations are drawn from public records such as media accounts and on-line databases, plaintiffs have equal access to and are equally capable of accessing these records. As noted above, "[t]he work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer [or lawyer's agents] . . . ." *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999). Plaintiffs are simply not entitled to request that counsel and their representatives open their litigation files and produce every single document therein that "contain[s] information and/or opinions relative to" the case.

        *b.*    *Request for Production 17B*

Request 17B seeks documents "concerning fleeting, mooring, ballasting, scuttling, sinking and/or anchoring ING 4727 before and/or during the effects of Katrina." As LNA's response stated, no contemporaneous documents exist. Any documents discussing these topics were created after the incident by or at the request of counsel, in anticipation of litigation instituted on September 8, 2005.

        **3.**    **Requests for Production Nos. 20 and 21**

Here, plaintiffs grossly mischaracterize but do not quote LNA's discovery response. These requests seek photos and videos of damage to the barge before and after Katrina. and all photos and videos of the barge after August 22, 2005. LNA asserted a valid work product objection to these requests, but nevertheless agreed to "consider production of documents

responsive to this request if the plaintiffs agree to reciprocal production of similar documents requested by LNA."

LNA has produced all photos of the barge it gathered prior to its retention of counsel on September 8, 2005.  (See LNA 0000243, 329-330).[20]  Any photos of the barge taken by LNA's counsel, agents, and experts, and any photos gathered and culled from publicly available records after September 8, 2005, are protected work product.  *See* privilege log, Ex. 4.  Plaintiffs have made no attempt to make the showing of need required by Rule 26(b)(3) to overcome this protection.

Nonetheless, LNA has produced dozens of photographs of the barge.  *See* LNA 000770-790; 1088-1117; 1126-1127.  These photos show all sides of the barge and the entire bottom of the barge, both on-scene and in a protected warehouse where all bottom sections had been retained.  Furthermore, plaintiffs had equal access to the barge and the opportunity to photograph it to whatever extent they desired.  Facts are not being "hidden" from plaintiffs.  The damage to the barge is the factual evidence; LNA's documentation of that damage is LNA's work product.[21]

---

[20] It has no video of the barge prior to that date.

[21] Photographs, like other documents and tangible things, are subject to work product so long as they are prepared in anticipation of litigation or for trial.  *See, e.g., Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 n.4 (8th Cir. 1998) ("Ordinary work product includes such items as photographs and raw information."); *Poulin v. Greer*, 18 F.3d 979, 985-86 (1st Cir. 1994) (photographs protected as work product); *Equal Rights Ctr. v. Post Prop. Inc.*, 247 F.R.D. 208 [GET PIN – MISSING FROM LEXIS DOC] (D.D.C. 2008) (photographs protected as work product); *Carne v. Crete Carrier Corp.*, 244 F.R.D. 694, 699 (N.D. Ga. 2007) (photographs of accident scene protected as work product).  *See also* Restatement (Third) of Law Governing Lawyers § 87 cmt. d, at 640 (1998) ("Work product includes tangible materials and intangible equivalents prepared, collected, or assembled by a lawyer.  Tangible materials include documents, photographs, diagrams . . . .").

The cases cited in plaintiffs' memorandum (at 21 n.4) are inapposite.  The *Southern Scarp Materials Co. v. Fleming* court, in fact, concluded that photos were work product.  2003 U.S. Dist. LEXIS 10815, Case No. 01-2554, (E.D. La. June 18, 2003)  The Court nonetheless ordered production in an application of the 5th Circuits ruling in *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir. 1993) regarding the discoverability of surveillance tapes that a party seeks to use at trial.  This ruling has no application here.  The photograph at issue in *Advanced Display Sys. v. Kent State University* was itself the method of stealing the prototype that was years later the subject of a patent-infringement suit.  It certainly was not prepared in anticipation of litigation and so was not

Plaintiffs' motion to compel further suggests that LNA is flouting the rules of discovery by stating that it will "consider" producing further materials. This is a willful misreading of LNA's discovery response. LNA asserted a work-product objection to the discovery request, but then offered (at plaintiffs' option) to consider waiving that privilege in exchange for a reciprocal production from the plaintiffs. Plaintiffs' responses to LNA's discovery request for photos and video asserted objections based on work product and undue burden; and while plaintiffs proffered production of responsive materials, they have not produced any photographs or video of the barge taken by their investigators, counsel, or experts (or, if they have, it has not been identified by Bates number in the way that LNA identified the materials it has produced).[22]

## 4.    Request for Production No. 23

This request calls for LNA to produce its communications to the Coast Guard concerning the ING 4727. Plaintiffs' motion to compel on this request is without basis and is not made in good faith. LNA has already produced all of its communications with the U.S. Coast Guard related to this incident, including communications between counsel and the Coast Guard. LNA's response identified the responsive documents by Bates number (LNA 109-113; 791-807; 831-1019). LNA made no privilege objection to this request, as plaintiffs seem to suggest, and has withheld no responsive documents.

---

work product at all. 212 F.3d 1272, 1276 (Fed. Cir. 2000). Finally, this Court should not apply *Kiln Underwriting, Ltd. v. Jesuit High Sch.*, 2008 U.S. Dist. LEXIS 1635 (E.D. La. 2008), which, unfortunately, misstates the law. It states that "work product protections ***only*** apply to materials prepared in anticipation of litigation ***which set 'forth the attorney's theory of the case and [its] litigation strategy.'*** " *Id* at *12. This is ***not*** a correct statement of law. *See* Rule 26(b)(3). The *Kiln* opinion goes on, *id.* at *12-13, to conflate the two tests in Rule 26(b)(3), stating the lesser showing of need for ordinary work product as applicable to near-absolutely-protected opinion work product and affording no protection to ordinary work product. Applying this incorrect standard, the court ordered production of photographs with no further explanation. Respectfully, this Court should not follow *Kiln Underwriting*'s application of the wrong standard.

[22] See plaintiffs' response to LNA's Request for Production No. 16 (Ex. 5 hereto).

Plaintiffs accuse LNA of having misled the Coast Guard into believing that its employees used cable to moor the barge, rather than rope, and argue that LNA should produce its "statements" to the Coast Guard.  Pl. Mem. 21.   But LNA **has produced the witness statements it provided to the Coast Guard**, and expressly referenced those statements in its response to this request (LNA 109-112).  These witness statements clearly and affirmatively state that the barges were tied with "two –inch polypropylene line."[23]  Thus, plaintiffs know all too well that LNA did **not**  mislead the Coast Guard in its statements concerning the incident.  It is plaintiffs who have sought to mislead this Court by suggesting otherwise.

### 5.        Request No. 27

Request No. 27 seeks documents "from barge owners other than Ingram concerning safe-keeping and/or preparation of their barges at LNA dock facilities in advance of an approaching hurricane."  LNA searched for documents applicable to its River Region facilities potentially subject to hurricane-force winds, which are the facilities at which responsive documents would be expected to be found.[24]  It would be nonsensical – and overly-burdensome – to search for communications at other dock facilities that do not handle river barges and that are not subject to hurricane winds for communications about barge-handling "in advance of an approaching hurricane."

### 6.        Request No. 29

Plaintiffs fail to quote either their request or LNA's response and mischaracterize both. This request seeks "[a]ny and all communications, documents, statements, investigations, records, photo, video and evidence pertinent to the mooring or securing, and any shifting or

---

[23] See Exhibit 6 hereto (statement of Earl Smith, LNA 111) ("We added extra mooring ropes between the barges, using new, two-inch polypropylene line"); Exhibit 7 hereto (statement of Ed Busch, LNA 109) ("I assisted by cutting pieces of two-inch braided polypropylene rope:").

[24] LNA also conducted searches of relevant e-mail accounts for e-mails containing the word "hurricane" and produced those responsive documents that it found.

movement during the effects of Katrina, of the five-barge tier north of ING 4727 at the Lafarge France Road facility."  LNA has produced photographs of the tier of barges referenced in the request.  *See* LNA 000227, 317, 331, 379, and 739.  All of these photographs were taken after Katrina passed through the New Orleans area, and, as LNA noted in its response, LNA does not believe they necessarily reflect movement during Hurricane Katrina.

Plaintiffs' memorandum in support of their motion clarifies that the request seeks documents and things "showing the manner in which [the five-barge tier] was moored, and evidence that it shifted during the storm."  Pl. Mem. at 22.  To the extent such documents and things were generated by LNA's counsel or investigators in the course of their investigation in anticipation of litigation, plaintiffs' memorandum provides no basis for overcoming LNA's claims of work product protection – that is, there is no showing of "substantial need".

## III.    Opposition to Plaintiffs' Third Grouping of Topics in their Motion to Compel

### A.    Merits Interrogatories

#### 1.    Interrogatory No. 18

This interrogatory asks for LNA's contentions regarding what entities LNA blames for the breakaway of ING 4727.  LNA responded that it contends that the breakaway of ING 4727 was an Act of God, while also noting the possibility that acts of the governmental entities named as third-party defendants by LNA may have contributed to the breakaway, as further detailed in LNA's third-party complaint.  This response sufficiently answers plaintiffs' interrogatory. Plaintiffs' suggestion that LNA's response is somehow negated by inclusion of the fact that it has, to date, not "claimed" against another party specifically for the breakaway is a makeweight argument.

#### 2.    Interrogatory No. 19

Plaintiffs' Interrogatory No. 19 asks LNA to identify "simulation, replicas, reconstructions, models, mockups," etc., that LNA "contend[s] are pertinent to this litigation." Plaintiffs' motion to compel (at 23) recognizes that such materials created by experts need not be produced at this time. Thus, plaintiffs move only to compel non-expert material in the categories above.

LNA responded to this interrogatory by identifying the only responsive, non-expert material it has at this time: the publicly-available material. Plaintiffs have no basis for any assertion that, at this point in the litigation, LNA has developed any non-expert trial exhibits of this type, much less that LNA is withholding any such item from discovery. Indeed, until such time as LNA decides to "contend" that responsive materials are "pertinent to this litigation," the terms of the request do not require any further response. LNA's response is far superior to plaintiffs' own response to LNA's similar request, in which plaintiffs flatly decline to supply responsive information.[25] Notwithstanding this, LNA has supplemented its Exhibit list every month and produced those exhibits it has specifically identified, as it works to develop its trial evidence. It will continue to do so and will produce any material responsive to this request that is not governed by expert witness timelines at such time as LNA creates such materials for use at trial. At this time, there simply are no responsive documents beyond the publicly-available material specifically identified in LNA's response.

### B.      Merits Requests for Production

#### 1.      Request for Production No. 28

This document request is the companion to plaintiffs' Interrogatory No. 19, discussed immediately above. Plaintiffs responded to a similar request from LNA by stating that the

---

[25] See Exhibit 8 hereto (plaintiffs' response to LNA Interrogatory No. 3 (objecting to LNA's request as seeking to alter the timing of expert discovery, seeking production of attorney work product, and because plaintiffs have "not yet determined" what information is responsive).

request seeks to alter the timing of expert disclosure; that the request is "overbroad, vague, compound, and premature;" and that it "seeks information readily available to Defendants in the public domain."[26]  As noted above, LNA has modified its exhibit list each month to identify documents and things that it "contend[s] are pertinent to this litigation," and will continue to do so.[27]  In any event, LNA cannot be held to a higher standard than what plaintiffs set for themselves, and there is no basis to compel a further response from LNA.

## CONCLUSION

Though replete with accusation and innuendo (to which LNA will respond in due course), plaintiffs' motion to compel is an empty shell.  Plaintiffs' attempts to gain access to the fruits of LNA's investigative work, which bring to mind the fable of the "Ant and the Grasshopper," do not even approach the showing of substantial need and undue hardship required by *Hickman*, and the related rulings of this Court.  There is likewise no merit to plaintiffs' attempts to compel different responses to requests to admit that LNA has admitted or denied in succinct terms, to expand the scope of discovery beyond the bounds of this Court's prior orders, or to willfully misread LNA's responses as a pretext for motion practice.

For the reasons above, plaintiffs' motion to compel should be denied as to each of the discovery requests discussed in their motion.

Respectfully submitted,

/s/ Derek A. Walker
Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre

---

[26] See Exhibit 9 hereto (plaintiffs' response to LNA Request for Production No. 2).

[27] Significantly, plaintiffs have *not* moved to compel on LNA's response to Request for Production No. 7, which asks LNA to produce copies of its trial exhibits.

30

1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

***Attorneys for Lafarge North America Inc.***

## Certificate of Service

I do hereby certify that I have on this 8th day of April, 2008 served a copy of the foregoing
   pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ Derek A. Walker