UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION |
|  | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
|  | * |  |
|  | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*           05-5531 | * |  |
| *Mumford v. Ingram*      05-5724 | * |  |
| *Lagarde v. Lafarge*       06-5342 | * | JUDGE |
| *Perry v. Ingram*             06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*          06-7516 | * |  |
| *Parfait Family v. USA*          07-3500 | * | MAG. |
| *Lafarge v. USA*                  07-5178 | * | JOSEPH C. WILKINSON, JR. |
|  | * |  |

## BARGE PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES FROM LAFARGE NORTH AMERICA

MAY IT PLEASE THE COURT:

Plaintiffs reiterate their original memorandum in support of their Motion to Compel, and reply as follows to contentions Lafarge raises in its opposition.

**1.      Requests for Admissions**

Plaintiffs stand behind their contentions in their Motion to Compel, and reiterate that Fed. R. Civ. P. 26(b)(1) states:

> *(b) Discovery Scope and Limits.*
> *(1) Scope in General.*
>
> *Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature,*

*custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)©.*

Fed. R. Civ. P. 36 states:

*Rule 36. Requests for Admission*
***(a) Scope and Procedure.***

*(1) Scope.*

*A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:*

*(A) facts, the application of law to fact, or opinions about either; and*

*(B) the genuineness of any described documents.*

Plaintiffs seek, as sanctioned by and within the scope of the Federal Rules of Civil Procedure, admissions or denials of factual propositions whose purpose and effect is to narrow issues for eventual dispositive motions and/or for trial.  For instance, whether Lafarge knows of an eyewitness who saw the barge break the floodwall (other than those already known to plaintiffs), or who claims to have seen the barge go through an existing breach, is highly productive in terms of narrowing a key issue for trial (what broke the floodwall?), whatever shape such trial may take, or for dispositive motions concerning liability and/or causation. Plaintiffs purposes are in no way prohibited by or inconsistent with any authority governing Requests for Admissions.  Plaintiffs seek not new discovery, but to confirm facts already known - that the barge contacted the floodwall, and that Lafarge (still) claims that it passed through an existing breach, in spite of much contrary proof learned since Lafarge answered this suit. Plaintiffs are trying to narrow issues for trial or dispositive motion by narrowing the universe of

potential witnesses and proof into manageable, topical areas of inquiry for submission to the District Court in accord with whatever trial plan or schedule is eventually approved. The responses are essential to all Barge Track parties' ability to discourse with the District and Magistrate Courts and contribute meaningfully when planning the future of this litigation.

Though Lafarge argues correctly that a party may in accord with Rule 36(a)(4) qualify so much of its answer as required by good faith, in contrast, Lafarge's qualifications (e.g., Requests for Admissions 1 - 3) are based upon purposeful misconstruction of the requests. Lafarge, in many instances, does not address the actual requests, but instead answers requests not posed, in order to avoid admission or denial of the request as written. Moreover, Lafarge admits that its qualification of answers is intended to prevent their use, or, to use Lafarge's term, "misuse." This is not good faith qualification, but an admitted failure to meet the substance of the request for the redundant purpose of evidentiary gate-keeping, which is within the province and discretion of Judge Duval.

### 2. Regarding Centanni Interviews

Plaintiffs are not attempting to bootstrap or poach Lafarge's so-called work product for the purpose of avoiding their own investigation, but seek disclosure of surreptitious, recorded interviews of putative class plaintiffs, and the ability to meaningfully assess the methods employed, the information thus gathered, and the corrosive effects of these activities. As well, Lafarge's delayed disclosure of their activities, and their purposes for and uses of such information since then, subject plaintiffs to undue hardship in any effort to obtain substantially similar information by other means.

As the Fifth Circuit stated in *Dollar V. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir. 1977):

> *"On appeal, the plaintiff argues that the denial of the motion to compel was reversible error. We agree.*
>
> *"In our analysis, we start with the proposition that discovery ". . . together with pretrial procedures make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." United States v. Proctor & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)."*

Defense counsel urge their close alignment with Centanni Investigative in furtherance of claims that the interviews enjoy work product protection. So closely do they identify Centanni with themselves, that they posit Centanni's efforts as their own, and suggest that opinions and mental processes are protected to the same, if not greater, extent as that actually produced by attorneys. This raises two issues.

First, Defense counsel must ensure that Centanni comply with ethical and legal rules governing the same attorneys who claim Centanni as their alter ego.[1] Lafarge cites an ABA opinion which permits the surreptitious recording of telephone interviews of witnesses, but does not address the stark distinction between disinterested witnesses and the putative class members. In no instance of which undersigned are aware did the defense (Centanni) spontaneously identify itself as an investigator, instead, demonstrating obvious efforts to appear detached when that was not the case. Only when prompted by an interviewee did Centanni's employees disclose that they were employed by Centanni. In no instance were interviewees informed that the caller was hired by and aligned with attorneys for Lafarge, the entity from whose facility the barge broke away, for the purpose of gathering information to be used adversely in trial if the very same

---

[1] The 2001 ABA Advisory Opinion cited by Lafarge does not supercede the judgment of a Court of Law, should that court reject the mere opinion of the ABA. The opinion is that of a divided committee, and does not address all salient circumstances of the present dispute with Lafarge. *Williams v. Gunderson Rail Services*, cited in plaintiffs' original supporting memorandum, is more than mere guidance. Please see Footnote 15, Opposition Memorandum of LNA.

interviewees brought suit against Lafarge or formed part of a class doing so. The ABA opinion states at page 4, " We think the proper approach to the question of legal but nonconsensual recordings by lawyers is not a general prohibition with certain exceptions, but a prohibition of the conduct only where it is accompanied by other circumstances that make it unethical." Clearly, where something more occurs than nonconsensual recording, the recording is prohibited.

Summarized briefly here, and at length in the plaintiffs' Motion for Protective Order, are aggravating circumstances vitiating the defense team's privilege claims. Plaintiffs here do not allege that Lafarge and its attorneys merely obtained nonconsensual recordings, but that they did so as to persons they reasonably knew would be adverse in litigation, whose interests were in no way served by discourse with a virtually anonymous agent for Lafarge. Defendants, especially local counsel and Centanni, have ample reason to know that the population on which they foisted their interviewers - Lower Ninth Ward residents - are not typically sophisticated or savvy, and in desperation to tell their stories to anyone who would listen, were easy marks. At no time did any interviewer disclose the salient circumstances of the interview, nor make any suggestion that the interviewees' interests might be adverse, or that they seek legal counsel. Rather, the interviewers responded as curtly and minimally as possible when asked their identities. Missing from any response to this question is mention of Lafarge, Chaffe-McCall, Goodwin-Proctor, disclosure of the then-pending class action complaints and claims in limitation, or cautionary statement reflecting the adverse legal relationship between the interviewer and putative class member interviewee.

All of the disclosed transcripts of named plaintiff interviews, purported by Lafarge and Centanni to be complete and accurate, are in the Court's possession.[2] The remainder, those over

---

[2]Lafarge has not provided the actual recordings.

which Lafarge asserts privilege, are not. The Court also possesses extracts from the deposition of Sidney Williams, and can discern how Lafarge's efforts have borne fruit. Lafarge demonstrates clearly that it is not interested strictly in facts, but that Lafarge, its attorneys, and Centanni have been on a tactical mining expedition not for data, but to attempt to impeach the people most likely to have knowledge of the barge's breach of the floodwall, and to promote conflict among the victims for the purposes of impeachment and defeating class certification. This is seen most pointedly when considering Lafarge's repeated delay in disclosure until moments before showing Sidney Williams his interview. The disclosure occurred well into Mr. Williams' deposition, only after asking for his opinions about the barge moorings and floodwall breach in order to impeach opinions he expressed two years earlier in a secret interview.[3] Until then, plaintiffs' counsel had no clue of the nature or extent of Lafarge's activities. Lafarge's perceived need to shield itself is echoed in Lafarge's efforts to prevent Mr. Centanni's deposition.

The Barge PSLC, based upon the totality of the circumstances, does not perceive Lafarge's efforts or representations as legitimate and genuine, but as a form of sabotage and ambush. Privilege is asserted as a means of deflecting responsibility, not as a protection afforded to legitimately obtained work-product. This Court would be within its discretion to overrule Lafarge's privilege claim, and to compel production not only as a means of sanction, but in order to level the playing field, giving effect to the notions of fair play inherent in the rules governing discovery.

---

[3] He originally thought that the government detonated the floodwall, and that a barge could not break the floodwall, though he saw it strike the floodwall, and the immediate aftermath of flooding.

Second, though undersigned urge the Court to exercise its power to sanction[4], it is clear that Lafarge's activities result in confusion and contradiction among the unsuspecting plaintiffs and putative class. Had Lafarge refrained from surreptitious contacts, plaintiffs could at any time obtain interviews from the persons Lafarge interviewed, with a reasonable level of confidence in the results. However, because Lafarge's actions tend towards secretiveness, subversion, and ambush rather than candid investigation and bona fide trial preparation, plaintiffs cannot assess without the interviews the corrupting effects Lafarge has had on the putative class on whose behalf suit is pending. Undersigned are learning that interviewees did not know who they were talking to, that they did not understand that their words were being memorialized for use by an adverse litigant, and that since the flood, many have varying recollections of what they told whom, and have had changes of heart about their own perceptions of what caused the flooding. Now, two years later, many interviewees have had time to reflect and reason, and do not necessarily hold to the opinions or perceptions they may have expressed to Centanni. Lafarge is thus poised to ambush and impeach those who saw or heard the barge break the floodwall.

Lafarge has withheld for years facts, documents and things responsive to discovery the plaintiffs have conducted since discovery's inception in *In Re Ingram Barge*. Plaintiffs' counsel are interviewing putative class member witnesses, but cannot expect to replicate Lafarge's results in all instances. Delayed disclosure prevents plaintiffs from conducting any investigation comparable to that Lafarge conducted years ago. While Lafarge wields against putative plaintiffs their initial paranoia that the government blew up the floodwall, most if not all eye and ear witnesses interviewed by Centanni have since reached the self-reasoned conclusion that the gigantic barge sitting in their neighborhood made the sounds they assumed were detonating

---

[4] Additional remedies are urged in the Barge Plaintiffs' Motion for Protective Order pending before the Court.

explosives.  Plaintiffs' counsel are wary of aggravating the damage Lafarge's actions may have caused.  Plaintiffs face extreme hardship in blindly conducting interviews.  Lafarge's failure to disclose creates a minefield of minutiae, detail, chronology, and perception revealed at that time only to Lafarge, that now, it is reasonable to assume, could be contradicted two years later by persons not aware of the hidden dangers Lafarge and Centanni presented.  Though trivial in virtually every instance, Lafarge should not be afforded this unfair opportunity to blind-side the plaintiffs or jury.  Plaintiffs cannot *by any means* obtain the *substantial equivalent* of what Lafarge surreptitiously obtained two years ago and did not divulge until recently.[5]  Plaintiffs counsel do not want any putative class members, the Court, jury, or themselves, to blunder into this minefield.  Plaintiffs urge the Court to recognize that plaintiffs have articulated undue hardship and a substantial need for the interviews.  To countenance Lafarge's purported bases for withholding them would be to allow a prejudicial and unfair advantage to a litigant that overstepped legal and ethical bounds to obtain them in the first place.

> "While opinion work product enjoys absolute immunity and may be subject to disclosure only in "extraordinary circumstances," fact work product is discoverable if the requesting party is able to demonstrate a substantial need and an inability to obtain the requested materials by alternative means without undue hardship. National Union, 967 F.2d at 984; In re Grand Jury Subpoena,
> 463 F. Supp. 2d at 575-76." *Hunton & Williams, LLP v. U.S. Department of Justice*, Number 3:06cv477, (E.D.Va. 3-31-2008)

Undersigned can conduct witness interviews *ad nauseum*, but cannot time travel back to the dates upon which Lafarge's defense team secretly interrogated these persons.  Undersigned cannot undo what Lafarge has done.  Two years later, plaintiffs cannot hope to replicate Lafarge's efforts and obtain the substantial equivalent.

3. **Expert Opinion**

---

[5] Fed. R. Civ. P. 26(b)(3)(A).

Plaintiffs agree that opinions of <u>Lafarge's experts</u> are not subject to disclosure yet, but reserve the right to bring motions to remedy any shortcomings in Lafarge's responses to expert-related written discovery once any such issues ripen.  However, if Lafarge now has in its possession, custody or control anything generated by <u>other experts</u>, plaintiffs seek full disclosure and production.

**4.      Attorney Opinion**

Plaintiffs do not seek disclosure of <u>attorney</u> opinion.  None of plaintiffs' discovery requests are to be construed otherwise.  This is explicit in the Instructions accompanying the requests, and in the law that a responding party answer so much of a request as is not subject to privilege or objection.

**5.      Requests for Production, Interrogatories**

Plaintiffs reiterate the position contained in their original supporting memorandum as to Lafarge's particular responses to written discovery.

> "An evasive or incomplete response is equivalent to a party's complete failure to respond. Fed.R.Civ.P. 37(a)(4). Furthermore, a party is not excused from a failure to fully respond to a document production request merely because it does not possess the responsive requested materials. *Somerset Marine, Inc. v. Briese Schiffahrts GMBH & Co.*, No. 01-01881, 2002 WL 1933723, at *3 (E.D. La. Aug. 21, 2002). Rather, a party's duty to fully answer implies a duty to make reasonable efforts to obtain the information requested. *Id.*" *Asset Funding Group, LLC v. Adams & Reese*, LLP,  07-02965 (E.D.La. 4-4-2008).

**Note as to Request for Production No. 23**:   Lafarge either has overlooked, not produced, or undersigned counsel fail to discern in that produced, any statements to the Coast Guard identifying the mooring methods used to secure ING 4727.

**CONCLUSION**

Plaintiffs reiterate their prayer for relief, namely, an Order striking Lafarge's objections and claims of privilege, and compelling Lafarge to respond fully to plaintiffs' discovery requests.

Respectfully submitted,

/s/ Brian A. Gilbert,
Brian A. Gilbert, Esq.(21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
   Telephone: (504) 885-7700
   Telephone: (504) 581-6180
   Facsimile: (504) 581-4336
   e-mail: bgilbert@briangilbertlaw.com

/s/ Lawrence D. Wiedemann,
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
   Telephone: (504) 581-6180
   Facsimile: (504) 581-4336
   e-mail: lawrence@wiedemannlaw.com,
   karl@wiedemannlaw.com, karen@wiedemannlaw.com,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
   Telephone: 504-834-0646
   e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Adele Rapport
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
   Voice: 202-862-4320
   Cell:   202-549-1454

      Facsimile:  800-805-1065 and 202-828-4130
      e-mail: rick@rickseymourlaw.net,
        adele@rickseymourlaw.net

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
    Telephone: (212) 608-4400
    Facsimile: (212) 227-5159
    e-mail: lwilson@wgdnlaw1.com,
ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
    Telephone: 212-869-3500 ext. 235
    Facsimile:  212-398-1532
    e-mail: a.fuchsberg@fuchsberg.com,
l.kelmachter@fuchsberg.com

Dated: April 10, 2008

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 10 day of April, 2008.

        \s\Brian A. Gilbert