UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |  |
|---|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION |  |
|  | * * | NO. 05-4182 and consolidated cases |  |
| PERTAINS TO: BARGE | * * | SECTION "K" (2) |  |
| *Boutte v. Lafarge* | 05-5531 | * |  |
| *Mumford v. Ingram* | 05-5724 | * |  |
| *Lagarde v. Lafarge* | 06-5342 | * | JUDGE |
| *Perry v. Ingram* | 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | * |  |
| *Parfait Family v. USA* | 07-3500 | * | MAGISTRATE |
| *Lafarge v. USA* | 07-5178 | * | JOSEPH C. WILKINSON, JR. |
|  |  | * |  |

**LAFARGE NORTH AMERICA INC.'S SURREPLY TO PLAINTIFFS'
MOTION TO COMPEL**

Plaintiffs' reply brief raises several new arguments not presented in their motion to compel. For the reasons set forth herein, these belated arguments should be ignored as untimely or rejected on their merits.

*1.  Regarding requests for admissions:*

Plaintiffs' response to LNA's opposition demonstrates fundamental misunderstanding of the purpose of RFAs. Plaintiffs' RFAs fail to narrow issued for trail. Asking whether LNA is

aware of people who "claim" various things does not even narrow the universe of potential witnesses because plaintiffs do not ask LNA to identify people who claim these things but merely to admit the existence of such people. LNA properly responded and qualified its admissions to reflect the precise position that plaintiffs now say (p. 2) they were interested in ascertaining – that is, whether LNA contends that the barge "passed through an existing breach." It is no secret that has been LNA's position since the start of this litigation.

## 2. *Regarding the witness interviews:*

As LNA demonstrated in its opposition to plaintiffs' motion to compel, transcripts of interviews with witnesses are work product.[1] Plaintiffs now advance three new reasons why they should get the work product anyway.

First, they claim they need the materials to ensure LNA has complied with the "ethical and legal rules." Second, they claim failure to comply with ethical rules has vitiated LNA's work-product privilege. Finally, they claim they have "substantial need" for the interview transcripts and "cannot, without undue hardship, obtain their substantial equivalent by other means." Plaintiffs did not move to compel on any of these grounds, and should not be permitted to advance these new arguments in their reply brief. In any event, none of these new arguments is a basis for compelling production.

### a. *Investigation of alleged ethical claims.*

Plaintiffs' accusations of misconduct are the basis for an entirely separate motion for a protective order. LNA will show that those accusations are baseless in its opposition to that motion. Plaintiffs' other motion is the proper place to address these new issues.

---

[1] The exception here is the transcripts of interviews with named plaintiffs or with clients of plaintiffs' counsel, which have been produced.

1109403-1                                                   2

Plaintiffs attempt to tie allegations of misconduct into the motion to compel by claiming they need LNA's work product – the interview transcripts – "to meaningfully assess the methods employed, the information thus gathered, and the corrosive effects of these activities." [Pls. Reply at 3.] This is not a valid reason for invading LNA's work product. If the plaintiffs want to evaluate LNA's methods for interviewing witnesses, they should ask those witnesses themselves about the interviews. *See Kay Co. LLC v. Equitable Prod. Co.*, 246 F.R.D. 260, 264 (S.D. W. Va. 2007) ("Just as the defendants are free to communicate with putative class members, so may the plaintiffs engage putative class members in communications about defendants' contacts.").[2]

Plaintiffs have in their possession a sampling of the interview transcripts. These transcripts plainly show LNA's investigators simply asked potential witnesses for truthful accounts of their experiences during Hurricane Katrina.[3] These transcripts present an ample basis for evaluating – and vindicating – LNA's interview methods. Plaintiffs do not need and are not entitled to invade LNA's work product to further "evaluate" how the interviews were conducted.

> b. *"Aggravating Circumstances" have not vitiated the work-product protection.*

Plaintiffs argue that "unethical" conduct has vitiated the work product privilege. This issue is also addressed in plaintiffs' motion for a protective order. That other motion is the proper place to address these issues.

---

[2] Indeed, plaintiffs assert, without affidavit or factual support whatsoever, that: "Undersigned are learning that interviewees did not know who they were talking to, that they did not understand that their words were being memorialized for use by an adverse litigant, and that since the flood, many have varying recollections of what they told whom, and have had changes of heart about their own perceptions of what caused the flooding." If this is true, it just shows that plaintiffs can learn what they think they need to without invading LNA's work product. Further, a "change of heart" does not change the facts and/or what a witness saw or heard; thus plaintiffs' attempt to circumvent the interviews to attempt to "insert" a new version of suddenly newly recollected "perceptions" is totally transparent and inappropriate.

[3] Rec. Docs. 11765-4; 11765-17; 11765-24; 11765-25; 11765-26; 11765-27; 11765-28; 11765-29; 11765-30; 11765-31; 11765-32; 11765-33; 11765-34; 11765-35.

Plaintiffs recognize (at 4-5) that, under the 2001 ABA Opinion,[4] mere undisclosed recording of interviews is not unethical conduct. They argue "aggravating circumstances" make LNA's investigator's recording of interviews unethical. The purported aggravating circumstance is the failure of the LNA's investigator to "spontaneously identify itself as an investigator" or inform the potential witness who retained the investigator. As LNA will explain in depth in its opposition to plaintiffs motion for a protective order, the interviews were in no way misleading, abusive, or unethical. The mere fact that the investigator did not identify LNA as his employer does not render the interview unethical. Plaintiffs' argument that the investigator's conduct was unethical is based on an outdated version of the ethics rules that no longer applies (and did not apply at the time of the interviews). LNA will also show the investigator's conduct was entirely permissible under the ethical standards in force at the time of the interviews. Plaintiffs' protective order motion supplies no basis for the Court to grant their motion to compel, and particularly not before the record on the protective order motion is complete.

Plaintiffs have provided no support for their repeated use of loaded words like "sabotage" and "ambush" (e.g., at 6 and 7). LNA's investigators simply asked potential witnesses for truthful accounts of their experiences during Hurricane Katrina – this is plain to see from the interview transcripts that plaintiffs have submitted to this Court.[5] Plaintiffs are equally free to interview these witnesses to find out what they know. LNA has no designs to "sabotage" or

---

[4] Plaintiffs incorrectly identify this opinion as coming from a "divided committee." [Pls. Reply n.1.] This is untrue. The only point on which the committee was divided is "whether a lawyer may record a client-lawyer conversation without the knowledge of the client" – a circumstance not at issue in this motion.

[5] A review of these transcripts on their face will refute plaintiffs' overblown accusations, such as (at 6) when they claim: "Lafarge demonstrates clearly that it is not interested strictly in facts, but that Lafarge, its attorneys, and Centanni have been on a tactical mining expedition not for data, but to attempt to impeach the people most likely to have knowledge of the barge's breach of the floodwall, and to promote conflict among the victims for the purposes of impeachment and defeating class certification." A review of the transcript submitted to the court by plaintiffs reveals that this characterization simply holds no weight.

"ambush" anyone. The goal has always been to learn the truth.[6] If a particular witness gives one account when asked by LNA's investigator for the truth of his experience and another answer when interviewed by plaintiffs' counsel,[7] that is not LNA's misconduct.

> c.  *Plaintiffs have no substantial need for the transcripts.*

Plaintiffs argue for the first time they have "substantial need" for the interview transcripts and "cannot, without undue hardship, obtain their substantial equivalent by other means" – the test for overcoming work-product protection for non-opinion work product. Rule 26(b)(3)(A)(ii). LNA asserted work product protection in its discovery responses. Plaintiffs' motion to compel did not even attempt to overcome this assertion by showing "substantial need" and "undue hardship." Having failed to make this argument in their motion to compel, plaintiffs should not be permitted to make it in their reply brief. In any case, they have not come close to carrying their burden of making this showing. *Gator Marshbuggy Excavator LLC v. M/V Rambler*, 2004 U.S. Dist. LEXIS 16090, at *3 (E.D. La. Aug. 12, 2004) (Wilkinson, M.J.) (burden on party seeking material).

Plaintiffs' "substantial need" argument seems to have two parts: first, that it would be difficult and time consuming to interview these witnesses themselves; and, second, that plaintiffs "cannot time travel back" to when LNA interviewed the potential witnesses. Neither of these arguments is a basis for showing substantial need or undue hardship. LNA was able to interview

---

[6] Plaintiffs point to the timing of LNA's disclosure of its interview with Sidney Williams as part of its efforts to "ambush" plaintiffs. This is simply not true, as will be detailed in LNA's opposition to plaintiffs motion for a protective order. Plaintiffs' counsel knew or had reason to know, several days before the deposition, that LNA had interviewed Williams. Counsel for LNA showed plaintiffs' counsel the list of people whom LNA's investigators had interviewed on the Friday before Williams' deposition. The list was not turned over because LNA's counsel had inadvertently brought a version with work-product notations on it. Counsel later agreed to bring the list to Williams' deposition. Plaintiffs' effort to paint this interaction as part of a malevolent plan is not borne out by the facts.

[7] Plaintiffs' counsel should consider whether they are representing their role in the case to potential witnesses in a way that encourages untruthful accounts.

1109403-1                                            5

these potential witnesses; so can plaintiffs.  Nor is the passage of time a basis for overcoming the work-product protection where the witnesses were always available to plaintiffs.  *American River Transp. Co. v. M/V Bow Lion*, No. 03-1306, 2005 WL 144777 (E.D. La. Jan. 19, 2005).[8]  Plaintiffs have failed to present this Court with evidence that even one witness is now unavailable or that even one witness's memory has failed in such a way as to make out substantial need.

Without a legitimate argument of substantial need, plaintiffs fall back on blaming their failure to investigate their claims on LNA, claiming that "[d]elayed disclosure prevent[ed] plaintiffs from conducting any investigation comparable to that Lafarge conducted years ago."  This statement is outrageous.  These witnesses are not LNA's witnesses, and LNA has not hidden them.  LNA went out and talked to people to find out about events during Hurricane Katrina.  Plaintiffs *at all times* could have done the same.  Plaintiffs cannot create a "substantial need" argument out of their own failure to investigate their case.

Tied to this argument, plaintiffs make the bald assertion that "Had Lafarge refrained from surreptitious contacts, plaintiffs could at any time obtain interviews from the persons Lafarge interviewed, with a reasonable level of confidence in the results."  [Pls. Reply at 7.]  What is missing is any explanation whatsoever regarding why LNA's interviews have in any way undermined plaintiffs' "reasonable level of confidence in the results" of their own interviews.  A

---

[8] *See also Baker v. GMC*, 209 F.3d 1051, 1054 (8th Cir. 2000) ("Discovery of a witness statement to an attorney is generally not allowed if that witness is available to the other party."); *Computer Assocs. Int'l, Inc. v. Quest Software, Inc*., 2003 U.S. Dist. LEXIS 16378, at *5-6 (N.D. Ill. 2003) (noting that "defendants will have a fair opportunity to contact and interview these witnesses regarding any statements that they have made to [plaintiff]. We see no reason why plaintiff should be forced to assist defendants in their own witness interviews"); *In re Grand Jury Proceedings (Duffy)*, 473 F.2d 840, 842, 848-49 (8th Cir. 1973) (protecting as opinion work product attorney's "personal recollections, notes, and memoranda" of conversations with witnesses even though it was "the interviewees' assertions of fact rather than Duffy's legal conclusions or opinions which are at issue," noting that "[g]enerally, if a witness is available to the party seeking discovery of [that witness's] statement to opposing counsel, such discovery should not be allowed").

review of the interview transcripts attached to plaintiffs' motion for a protective order reveals that these interviews are very straightforward. It should be dispositive that plaintiffs have not identified a single question in any transcript that has sown "confusion" or "contradiction" or has had a "corrupting effect[]," as they so colorfully allege (at 7) but fail to support.

### 3. *Regarding request for production number 23:*

Plaintiffs continue to waste the time of the Court and the parties regarding this request. Plaintiffs requested production of LNA's communications with the Coast Guard about the breakaway of ING 4727. In its written response to RFP 23, LNA identified each communication *by bates number*. These specifically include the statements of Ed Busch and Ed Smith (LNA 109-113), which LNA provided to the Coast Guard.[9] In its opposition to plaintiffs' motion to compel (at 26-27), LNA identified *and quoted* the portion of those statements that specifically address and refute the scurrilous accusation made by the plaintiffs in their motion, i.e., that LNA misled the Coast Guard about mooring. If plaintiffs' counsel still "fail to discern" what statements provided by LNA to Coast Guard "identify[] the mooring methods used to secure the ING 4727," that failure is only the result of their own sloppiness or willful ignorance.

### Conclusion

For the reasons stated above, plaintiffs' new arguments should be rejected and the motion to compel should be denied.

    Respectfully submitted,

    /s/ Robert B. Fisher, Jr.
    Robert B. Fisher, Jr., T.A. (#5587)
    Derek A. Walker (#13175)
    Ivan M. Rodriguez (#22574)
    **CHAFFE MCCALL, L.L.P.**

---

[9] LNA had previously identified these same statements as having been produced to the Coast Guard in response to plaintiffs' discovery requests in 2006. See Ex. A.

>2300 Energy Centre
>1100 Poydras Street
>New Orleans, LA 70163-2300
>Telephone:  (504) 585-7000
>Facsimile:  (504) 585-7075
>Fisher@chaffe.com
>Walker@chaffe.com
>
>
>John D. Aldock
>Richard M. Wyner
>Mark S. Raffman
>**GOODWIN PROCTER LLP**
>901 New York Avenue, N.W.
>Washington, DC 20001
>Telephone:  (202) 346-4240
>
>Daniel A. Webb (#13294)
>**SUTTERFIELD & WEBB, LLC**
>Poydras Center
>650 Poydras Street, Suite 2715
>New Orleans, LA 70130
>Telephone:  (504) 598-2715
>
>*Attorneys for Lafarge North America Inc.*

## Certificate of Service

I do hereby certify that I have on this 15th day of April, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

>/s/  Robert B. Fisher, Jr.

1109403-1

8