UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br>NUMBER: 05-4182 "K"(2)<br>JUDGE Duval<br>MAG. Wilkinson |
| PERTAINS TO: MRGO, Robinson<br>(No. 06-2268) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO AMEND COMPLAINT**

**I.    INTRODUCTION**

Plaintiffs move to amend their Complaint to add allegations relating two additional acts of negligence of Defendants relating to the Mississippi River-Gulf Outlet ("MR-GO"). (A copy of the proposed First Amended Complaint with redlined additions is attached to the Declaration of Pierce O'Donnell as Exhibit "C.")

First, Plaintiffs allege that the operations, maintenance, and design of Reach 2 of the MR-GO caused the foreseeable erosion of the banks, widening of the Channel far beyond its authorized width, and eventual impairment of the earthen banks and spoil banks (EBSBs) along Reach 2 which had contributed to the failure and overtopping of the EBSBs and the resulting catastrophic flooding of St. Bernard Parish.

Second, Plaintiffs allege that excavation work by the Defendants' contractor Washington Group International ("WGI") on the eastern side of Inner Harbor Navigation Canal ("IHNC") contributed to the failure and overtopping of the floodwaters at two locations on the earthen side

1

of the IHNC and the resulting catastrophic flooding of the Lower Ninth Ward and portions of St. Bernard Parish.

As a result of ongoing discovery since the filing of the Complaint, Plaintiffs have learned that there is evidence that WGI on behalf of the United Sates Army Corps of Engineers ("Corps") with respect to the IHNC Lock Expansion Project and the Corps' negligent design and oversight of the IHNC Lock Expansion Project contributed to the flooding of the Lower 9th Ward and portion of St. Bernard Parish.  Similarly, during discovery, Plaintiffs have learned that the Corps' failure to stabilize the banks of Reach 2 of the MR-GO contributed to catastrophic drowning of St. Bernard Parish.  Accordingly, Plaintiffs seek leave of Court to amend Plaintiffs' complaint to add a negligence cause of action predicated on the Corps' sub-standard construction and supervision of contractors related to the IHNC Lock Expansion Project and to add to the existing claim for negligence allegations relating to the Corps' negligence in failing to prevent the widening of the Reach 2 channel.

As discussed below, the Corps intended the IHNC Lock Expansion Project to relieve commercial shipping congestion and to expand wharf facilities at the Port of New Orleans.  The project required the construction of a bypass channel at the East Bank Industrial Area ("EBIA") located in the Lower 9th Ward.  The Corps purchased the EBIA to construct the bypass channel and it contracted with WGI to excavate soil contaminated with toxic chemicals and other waste products during nearly a half a century of industrial use.  To remedy the contamination and remove below water obstacles to ship traffic, the Corps directed WGI to remove soil down to a specified depth of four feet below the existing grade and 15 feet from the bank edge.  However, in the process of extracting large solid objects buried at the site – *i.e.*, railroad cars, barges, etc. – WGI exceeded these limitations.  By surpassing these restrictions, WGI undermined the earthen

support for putative flood control structures, such as flood walls protecting the Lower 9th Ward, causing them to fail during and after Hurricane Katrina and resulting, in part, in the extensive flooding of the Lower 9th Ward.

The new factual allegations as to WGI are also relevant because Plaintiffs have argued since the inception of this case that the United States is not immune under the Flood Control Act of 1928 ("FCA"), 33 U.S.C. § 702c for Plaintiffs' damages caused, at least in part, by the Corps' negligence in designing, constructing, operating, or maintaining a non-flood control related, navigation project such at the Mississippi River-Gulf Outlet ("MR-GO").  The IHNC also lacks any flood control purpose since, like the MR-GO, the IHNC was constructed and maintained to facilitate ship navigation.  The United States therefore does not enjoy FCA immunity for Plaintiffs' damages caused by the Corps' negligence associated with the IHNC Lock Expansion Project.  For these reasons, Plaintiffs seek to amend their complaint to add a negligence cause of action against the United States based on the Corps' negligent design and construction of IHNC Lock Expansion Project, and the Corps' negligent supervision of WGI's work in connection with this project.

As for the new allegations concerning erosion of the Channel banks along Reach 2, Plaintiffs recently discovered documents indicating that the Corps was aware at least 26 years ago that the continued widening and erosion of the channel would eventually undermine the EBSBs.  *See* O'Donnell Decl. at ¶ 6 & Exhibit "B" at p. 4, (h).  Investigation by Plaintiffs' experts confirmed that this is precisely what happened during Hurricane Katrina.  *Id.*

Defendants' counsel, Robin Smith, has not stipulated to allowing Plaintiffs to amend their complaint.  O'Donnell Decl. at ¶ 2. The Government will likely argue that Plaintiffs have known about the inherent problems with the IHNC Lock Expansion Project for a considerable period of

time.  As for the new allegations about the widening of Reach 2, those facts were discovered only last month.  O'Donnell Decl. at ¶ 6.

With regard to the WGI allegations, the Government has been on notice of this issue since September 2005, and Plaintiffs' counsel have repeatedly advised the Government's counsel that these WGI claims were being asserted in the *Robinson* case.  Bruno Decl. at ¶¶ 6, 7.  In fact, while Plaintiffs' counsel have filed suit on this issue (Bruno Decl. at ¶ 6), it was not until last month that they received an expert report on the issue, and only on April 17, 2008 were they able to depose two designated WGI representatives: Steve Roe and Anne Veigel.  Bruno Decl. at ¶ 8.  Moreover, investigation and prosecution of this case—the worst engineering failure in American history—has necessarily been time consuming and expensive.  O'Donnell Decl. at ¶¶ 3, 7-10.  By no means have Plaintiffs' counsel been dilatory.  *Id.*; Bruno Decl. at ¶ 8.

Alleged delay in seeking leave to amend is not a basis for denying the motion.  "The courts have not imposed any arbitrary timing restrictions on a party's request for leave to amend . . . ."  6 Wright & Miller, Fed. Prac. & Proc. Civ. (2d ed.) § 1488.  The refusal to limit a plaintiff's right to amend a complaint exists because "[i]t would be unreasonable to restrict a party's ability to amend to a particular stage of the action inasmuch *as the need to amend may not appear until after discovery has been completed* or testimony has been taken at trial." *Id.* (emphasis added).  In this case, neither fact nor expert discovery has been completed. O'Donnell Decl. at ¶ 10.

In the final analysis, "the touchstone of the inquiry under rule 15(a) is whether the proposed amendment would unfairly prejudice the defense by denying the defendants notice of the nature of the complaint."  *Lowrey v. Texas A & M University System*, 117 F.3d 242, 246 (5th Cir. 1997).  Plaintiffs' proposed amended complaint fully apprizes Defendants of the factual

4

basis for Plaintiffs' negligence claims predicated on the IHNC Lock Expansion Project and widening of the Reach 2 Channel and destabilization of the EBSBs. The Government has at its disposal extraordinary resources to defend this litigation. O'Donnell Decl. at ¶ 4. Furthermore, discovery remains open in this litigation, and to the extent that Defendants require additional time to sufficiently investigate Plaintiffs' new factual allegations, Plaintiffs will stipulate to additional time for the Defendants to conduct discovery *as to these two issues*. In sum, since trial is not scheduled until September, 2008, and further considering Defendants' continuing ability to conduct relevant discovery into this new claim, Defendants can show no potential prejudice due to the amended complaint.

Under Fifth Circuit law, when a plaintiff moves to amend its complaint, "[t]he court should freely give leave when justice so requires," (Fed. R. Civ. P. 15(a)(2)) since this Federal Rule of Civil Procedure "evinces a strong bias in favor of granting a motion for leave to amend a pleading." *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994). Defendants will not be able to establish any prejudice caused by Plaintiffs' amended pleading, and Plaintiffs therefore respectfully request that this Court grant this motion for leave to file a first amended complaint.

## II.  FACTS

The failure and overtopping in two locations of the floodwalls along the east side of the IHNC prompted a number of forensic engineering investigations. One of those was conducted by the Plaintiffs' expert Dr. Bob Bea, a Civil Engineering Professor at the University of California at Berkeley and a member of the Independent Levee Investigation Team. Bruno Decl. ¶ 8. Last month, Dr. Bea furnished Plaintiffs' counsel with a draft report addressing reasons for the failure and overtopping of the IHNC floodwalls. *Id.* That draft report is attached as Exhibit "A" to the Bruno Declaration.

Specifically, Dr. Bea noted that there were two breaches of the alleged flood control structures on the east bank of the IHNC. *Id*. at ¶ 23; p. 12 at Figure 4. The larger of the two breaches "was the South Breach. This was a very long breach, nearly 900 feet in length, and the inrushing waters entered the adjacent Lower 9th Ward with great force." *Id*. at ¶ 23. The second breach was designated as the "North Breach." *Id*. at ¶ 24.

Dr. Bea describes the IHNC Lock Expansion Project as follows:

> During the 1990s work was commissioned by the USACE to expand the IHNC locks to relieve shipping congestion and allow further expansion of the Port of New Orleans. Congress authorized the study for the lock enlargement/replacement in 1956. The proposed new locks would require a bypass channel that would be constructed at the East Bank Industrial Area (EBIA). The EBIA was located in the Lower 9th Ward, west of the floodwall and east of the IHNC, between Florida Avenue and Claiborne Avenue . . . .

*Id*. at ¶ 31.

The Corps purchased the EBIA site from the Port of New Orleans to construct the bypass channel. *Id*. at ¶ 32. The EBIA had been occupied by various industrial companies, and "[p]urportedly, tenants contaminated the property as a result of their industrial operations." *Id*. at ¶ 35. Of particular significance was the apparent widespread practice in this area of placing "construction materials (concrete rubble) and solid wastes (barges, metal turnings, concrete blocks) to protect the properties from the effect of ship wakes." *Id*.

To reduce the potential negative environmental impact of these contaminants, and remove obstructions within the bypass channel, the Corps' New Orleans District contracted with WGI "to characterize and remediate" the problems. *Id*. at ¶ 36. "For remediation, the specifications required the canal back be excavated to a depth four feet below the existing grade and 15 feet from the edge of the water onto land." *Id*. at ¶ 37. However, "[i]n addition to removal of canal-side soils that had previously provided stability and protection to the flood protection structure, numerous underground storage tanks and debris were removed." *Id*. at ¶ 39.

6

"The effects of these site remediation activities clearly extended well below the specified soil excavation levels cited earlier. Removal of the barges, piles, and underground storage tanks could easily have reached to elevations of minus 10 feet to 25 feet. . . ." *Id.* at ¶ 42.

Dr. Bea concluded that by exceeding the scope of the approved work, WGI's remediation efforts undermined the stability of adjacent, alleged flood control structures. Dr. Bea first observed that:

> The information that is available clearly indicates a high degree of correlation of the site remediation work conducted by WGI at the EBIA sites and the breach locations in the flood protection structure adjacent to the Lower 9thWard. This remediation work (removal of soils, formation of cavities, vibrations) very probably had important effects on the soils relied upon to provide stability and protection for the flood protection structure. Removal and disturbance of the surface soils overlying the permeable subsoils (Marsh and Swamp layers) would have facilitated the under seepage.

*Id.* at ¶ 44.

Dr. Bea then adds:

> Information regarding waterside excavations indicate that work near the area of the breaches placed permeable material down to elevations of approximately –25 feet, more than 10 feet deeper than the sheet pile tip; thus producing significantly shorter paths for hydraulic pressures to reach beneath the embankment soils and levee toe, starting material saturation and softening potentially faster, as opposed to the subsoils being hydraulically charged from more than two hundred feet away (e.g. charged from the IHNC canal). Figures 33 through 36 show an evolution of the excavation along the IHNC waterside, and how alarmingly close the IHNC canal was moved to the floodwall early in 2005.

*Id.* at ¶ 45.

In sum, Dr. Bea painstakingly explains how the remediation work performed by WGI under the control and supervision of the Corps substantially weakened and undermined the alleged flood walls and other flood control structures bordering the Lower 9th Ward and

7

contributed to their ultimate catastrophic failure during and after Hurricane Katrina.  On this basis, Plaintiffs' counsel concluded that a separate claim for negligence against the Corps is appropriate.

Likewise, Plaintiffs' counsel have concluded that it is appropriate to add the new factual analysis in Paragraph 53 of the FAC regarding the Corps' negligence in allowing the Reach 2 channel to widen far beyond its authorized width and thereby undermine the ESBSs along Reach 2.  Plaintiffs' counsel learned of this fact about one month ago when they discovered a 1981 Corps document attached as Exhibit "B" to the O'Donnell Declaration.  The document states: "[w]ithin 10 years the MR-GO bank will have eroded past the MR-GO R/W line (over 200 feet) and will threaten the stability of the hurricane levee."  O'Donnell Decl. Exhibit B at p. 4, (h).

Based on this document, Plaintiffs' counsel asked Dr. Bea to investigate the issue. Recently, Dr. Bea concluded that there is evidence that the EBSBs were in fact adversely affected by the encroachment of the Reach 2 channel.  O'Donnell Decl. ¶ 6.  On this basis, Plaintiffs' counsel concluded that these detailed allegations about the operation, maintenance, and dredging of the Reach 2 should be added to the complaint because the Corps' negligence in this regard was a contributing factor in the failure and overtopping of the EBSBs.

### III.  LEGAL ARGUMENT

#### A.  The Fifth Circuit Has Repeatedly Stated That Leave to Amend A Complaint Should Be Freely Given Where, As Here, "Justice So Requires"

Fed. R. Civ. P. 15(a)(2) provides that after an answer is filed, a plaintiff may amend its complaint "only with the opposing party's written consent or the court's leave."  As set forth in the accompanying declaration of Pierce O'Donnell, Defendants' attorney, Robin Smith, has not consented to the proposed amendments of Plaintiffs' complaint, and Plaintiffs must therefore seek leave of Court to file a first amended complaint.  O'Donnell Decl. at ¶ 2.

When a plaintiff moves to amend his complaint, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This language "evinces a strong bias in favor of granting a motion for leave to amend a pleading." *F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994). Indeed, even though a decision as to "[w]hether leave to amend should be granted is entrusted to the sound discretion of the district court . . . (*Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993)), the Fifth Circuit has stated that "'[d]iscretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires.' It evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981) (citations omitted). In other words, "[u]nless there is a *'substantial reason to deny* leave to amend, the discretion of the district court *is not broad enough to permit denial*.'" *J. R. Stipling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (emphasis added; citations omitted); *see also Surgical Care Center of Hammond, L.C. v. Hospital Serv. Dist. No. 1 of Tangipohoa Parish*, 309 F.3d 836, 841 (5th Cir. 2002).

The judicial preference favoring amendment of pleadings is in fact so pronounced that "[t]he party seeking leave to amend need only establish the reason why amendment is required ('justice' so requires). The burden is then on the party opposing the motion to convince the court that 'justice' requires denial.'" William W Schwarzer, et al., Cal. Prac. Guide Fed. Civ. Pro. Before Trial, Chp. 8-G at 8:415 (2008) (citing *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 406–07 (11th Cir. 1989).

As discussed above, the effects of Hurricane Katrina were so vast, and the area affected by the storm so expansive, that a quick assessment of the causes of the flooding in the Greater New Orleans area was impossible. Indeed, during the two years of this litigation, this Court has

9

certainly seen the unfolding and continuing efforts by Plaintiffs' experts – world renowned leaders in the scientific and engineering communities – that have required an enormous expenditure of time and money to investigate the causes of the Katrina related flooding. Thus, any delay in uncovering the underlying facts, including those that point to the Corps' negligence in connection with the IHNC Lock Expansion Project, has not been due to lack of diligence, but instead has resulted from the magnitude of the investigative tasks, and the need to insure that any conclusions drawn are the result of rigorous scientific analysis.

As also noted above, Plaintiffs did not seek leave to add a new cause of action based on the IHNC Lock Expansion Project earlier because the underlying facts were not fully developed, and the causal relationship between Defendants' conduct and Plaintiffs' damages had not been established with any degree of certainty. Now, following Dr. Bea's March 8, 2008 draft expert report, the missing pieces to the negligence puzzle have been identified, and Plaintiffs should be permitted to amend their pleading to allege the full panoply of legal recourse against the United States.

Plaintiffs should be permitted to pursue any and all legal theories available to hold Defendants accountable for their negligent conduct, even if the facts reflecting that misconduct have taken a substantial time to develop.

### B. Defendants Will Not Be Prejudiced By This Court Granting Leave To Amend Plaintiffs' Complaint

In deciding whether to grant leave to amend, "a district court 'may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Price v. Pinnicle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "Not all of the factors merit equal weight,"

10

however. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th 2003). "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id*.; *see also Lone Star Ladies Invest. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("[P]rejudice is the 'touchstone of the inquiry under rule 15(a).'") (citation omitted).

The Government can be expected to argue that Plaintiffs had known about problems with the IHNC for some time, and have simply waited too long to seek to amend their complaint. As the Fifth Circuit has noted, however, "delay alone is an insufficient basis for denial of leave to amend: The delay must be undue, *i.e.*, it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayeaux v. Louisiana Health Serv. and Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004) (finding amendment prejudicial as causing "a *massive* change in the nature and direction of the case" and plaintiffs' attempt to "effectively reconstruct[] [their] case anew. . . .") (emphasis added).

Defendants can point to no prejudice stemming from an amendment of Plaintiffs' complaint. This is not a case where Plaintiffs seek and eleventh hour amendment on the eve of trial. *Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721, 728 (5th Cir. 1998) (denying amendment when amendment sought came seven months after the amendment deadline and one month before the trial date); *Grosch v. Tunica County, Mississippi*, No. 06CV204-P-A, 2008 WL 341576, at *1, slip op. (N.D. Miss. 2008) ("The plaintiff was well aware that the deadline to seek amendments was May 25, 2007. . . . However, his third motion for leave to file was submitted to the court on November 30, 2007-six months after the deadline to amend had expired, one month after the discovery deadline, and two weeks after the dispositive motion and expert motion deadline passed.").

11

In fact, to the extent that Defendants require additional discovery, past the discovery cut-off date, to investigate the facts related to Plaintiffs' claims concerning the IHNC Lock Expansion Project, Plaintiffs will agree to such an extension of time within reasonable limits. Put simply, Defendants will not be able to make any viable argument that it will be prejudiced as a result of this amendment, and this Court should therefore grant this motion for leave to file a first amended complaint.

## IV.  CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for leave to file a first amended complaint.

Dated: April 18, 2008                                          Respectfully submitted,

**O'Donnell & Associates P.C.**

By: s/ Pierce O'Donnell

Pierce O'Donnell (*pro hac vice*)
550 S. Hope St., Suite 1000
Los Angeles, California 90071
Phone:  (213) 347-0290
Fax:  (213) 347-0298

**The Andry Law Firm, LLC**
By: s/ Jonathan B. Andry
Jonathan B. Andry (LSBA No. 20081)
610 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 586-8899
Facsimile:  (504) 585-1788

| **Law Offices of Joseph M. Bruno** | **Domengeaux Wright Roy & Edwards LLC** |
|---|---|
| By: s/ Joseph M. Bruno | Bob F. Wright (LSBA No. 13691) |
| Joseph M. Bruno (LSBA No. 3604) | James P. Roy (LSBA No. 11511) |
| 855 Baronne Street | 556 Jefferson Street, Suite 500 |
| New Orleans, Louisiana 70133 | P.O. Box 3668 |
| Telephone: (504) 525-1335 | Lafayette, Louisiana 70502-3668 |

Facsimile:  (504) 581-1493

**Fayard & Honeycutt**
Calvin C. Fayard, Jr. (LSBA No. 5486)
Blayne Honeycutt (LSBA No. 18264)
519 Florida Avenue, S.W.
Denham Springs, Louisiana 70726
Telephone: (225) 664-4193
Facsimile:  (225) 664-6925

**Ranier, Gayle & Elliot, LLC**
N. Frank Elliot III
1419 Ryan Street
Lake Charles, LA 70601
Telephone: (337) 494-7171
Facsimile: (337).494.7218

**McKernan Law Firm**
Joseph Jerry McKernan (LSBA No 10027)
John Smith (LSBA No. 23308)
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: (225) 926-1234
Facsimile:  (225) 926-1202

**Law Office of Elwood C. Stevens, Jr., a Professional Law Corporation**
Elwood C. Stevens, Jr.  (LSBA No. 12459)
1205 Victor II Boulevard
P.O. Box 2626
Morgan City, Louisiana 70381
Telephone: (985) 384-8611
Facsimile:  (985) 385-4861

Telephone: (337) 233-3033
Facsimile:  (337) 233-2796

**Girardi & Keese**
Thomas V. Girardi (*pro hac vice*)
1126 Wilshire Boulevard
Los Angeles, CA 90017
Telephone: (213) 489-5330
Facsimile:  (213) 481-1554

**Levin, Papantonio, Thomas, Mitchell Echsner & Proctor, P.A.**
Clay Mitchell (*pro hac vice*)
Matt Schultz (*pro hac vice*)
316 S. Baylen Street, Suite 600
Pensacola, Florida 32502-5996
Telephone: (850) 435-7140
Facsimile:  (850) 436-6123

**Gainsburgh, Benjamin, David, Meunier & Warshauer, LLC**
Gerald E. Meunier  (LSBA 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 522-2304
Facsimile:  (504) 528-9973

**Cotchett, Pitre, Simon & McCarthy**
Joseph W. Cotchett  (*pro hac vice*)
840 Malcolm Road, Suite 200
Burlingame, California 94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

| | |
|---|---|
| **Law Office of Frank J. D'Amico, Jr. APLC** | **Salas & Co., LC** |
| Frank J. D'Amico, Jr. (LSBA No. 17519) | Camilo K. Salas, III (LSBA No. 11657) |
| Richard M. Exnicios, Esq. (LSBA No. 25666) | 650 Poydras Street, Suite 1650 |
| 622 Baronne Street | New Orleans, LA 70130 |
| New Orleans, LA 70113 | Telephone: (504) 799-3080 |
| Telephone: (504) 525-9561 | Facsimile: (504) 799-3085 |
| Fax: 504-525-9522 | |

**Robinson, Calcagnie & Robinson, Inc.**
Mark Robinson (Cal State Bar No. 54426
620 Newport Center Drive – 7th Floor
Newport Beach, CA 92660
1-888-701-1288

## **CERTIFICATE OF SERVICE**

I, Pierce O'Donnell, hereby certify that on April 18, 2008, I caused to be served **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO AMEND COMPLAINT**, upon Defendants' counsel, Robin D. Smith, George Carter, Keith Liddle, and Richard Stone by ECF and email at robin.doyle.smith@usdoj.gov; george.carter@usdoj.gov, keith.liddle@usdoj.gov, and richard.stone@usdoj.gov.

/s/ Pierce O'Donnell