UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 "K" (2) |
| PERTAINS TO:  BARGE | JUDGE DUVAL |
| *Mumford v. Ingram*        C.A. No. 05-5724<br>*Boutte v. Lafarge*         C.A. No. 05-5531<br>*Lagarde v. Lafarge*       C.A. No. 06-5342<br>*Perry v. Ingram Barge*    C.A. No. 06-6299<br>*Benoit v. Lafarge*         C.A. No. 06-7516<br>*Parfait Family v. USA*    C.A. No. 07-3500<br>*Lafarge v. USA*            C.A. No. 07-5178 | MAG. WILKINSON |

## ORDER ON MOTION

The Barge Plaintiffs filed a Motion to Compel Discovery Responses from Lafarge North America, Inc. Record Doc. No. 11578. Lafarge filed a timely opposition memorandum. Record Doc. No. 12331. Although Lafarge failed to seek leave to file a memorandum in excess of 25 pages, Local Rule 7.8.1E, I have considered its entire memorandum. Plaintiffs' motion for leave to file a reply memorandum was granted. Record Doc. Nos. 12374, 12380, 12381. Lafarge moved for leave to file a sur-reply memorandum, Record Doc. No. 12469, which was also granted. Record Doc. No. 12549.

Plaintiffs have categorized the discovery requests as to which they seek more complete responses into three topic headings. Lafarge's opposition follows the same grouping and this order will do the same.

For the following reasons, plaintiffs' motion is GRANTED IN PART AND DENIED IN PART, as follows.

I.  DISCOVERY CONCERNING COMMUNICATIONS BY DEFENSE COUNSEL AND/OR CENTANNI INVESTIGATIVE AGENCY AND FACTS ACQUIRED CONCERNING THE BARGE BREAKAWAY AND <u>FLOODWALL BREACHES</u>

   A.  <u>Requests for Admissions No. 1 through 3</u>

Plaintiffs' "motion to compel" seeks additional responses to their Requests for Admissions No. 1 through 3 under this topic heading and to several other Requests for Admissions under the other two topic headings. As to all Requests for Admissions, this motion is properly viewed not as a motion to compel, but as a motion "to determine the sufficiency of the answers or objections" to the requests. Fed. R. Civ. P. 36(a).

Rule 36(a) "allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact. Such breadth allows litigants to winnow down issues prior to trial and thus focus their energy and resources on disputed matters." <u>In re Carney</u>, 258 F.3d 415, 419 (5th Cir. 2001) (citations omitted). "Moreover, requests for admissions are properly used for facts or facts as applied to law, not pure legal conclusions . . . ." <u>Warnecke v. Scott</u>, 79 Fed. Appx. 5, 2003 WL 22391051, at *1 (5th Cir. Oct. 21, 2003) (citing <u>Carney</u>, 258 F.3d at 418; 8A Wright, Miller & Kane, <u>Federal Practice & Procedure</u> § 2255 & n.8 (2003) (collecting cases));

accord Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 Fed. Appx. 169, 2005 WL 481621, at *3 (4th Cir. 2005).

Rule 36 provides a procedure for denying the requests or qualifying partial admissions or denials.

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).

> [R]equests for admissions are not principally discovery devices, see 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, [Federal Practice and Procedure] § 2252, at 524-525 [2d ed. 1994] ("Strictly speaking Rule 36 is not a discovery procedure at all, since it presupposes that the party proceeding under it knows the facts or has the document and merely wishes its opponent to concede their genuineness. A party who desires to discover what the facts are should resort to other discovery rules rather than Rule 36.") (footnotes omitted), and they "are not to be treated as substitutes for discovery processes to uncover evidence . . . ." [California v. The Jules Fribourg, 19 F.R.D. 432, 436 (N.D. Cal. 1955)]; see 7 Moore's Federal Practices [sic] § 36.02[2] (3d ed. 1991) ("Because Rule 36 was not designed to elicit information, to obtain discovery of the existence of facts, or [to] obtain production of documents, requests for admission should not be used as a method of discovery for those purposes.") (footnote omitted).

Safeco of Am. v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998).

Therefore,

> [w]hen responding to requests for admissions, explanation generally is unnecessary. "The answer [to a request for admission] shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." Fed. R. Civ. P. 36(a). "Each request for an admission should be phrased simply and directly so that it can be admitted or denied without explanation." Explanation is only required if the party cannot truthfully admit or deny.

Id. at 447 (quoting 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2258, at 546-47) (citing United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 968 (3d Cir. 1988)).

Based on these principles, Lafarge's objection that Requests for Admissions No. 1 through 3 are improper discovery devices are overruled and its supposed "explanations" of its admissions, which are actually arguments, are stricken. Obscured amidst its overruled objections and misplaced explanations, Lafarge has admitted these requests, and they are deemed admitted for trial purposes, although Lafarge may make its arguments about the interpretation of those admissions at trial.

B.    Interrogatory No. 5 and Request for Production No. 3

Plaintiffs' Interrogatory No. 5 asks defendant to identify, describe and state the contents of all fact statements obtained from all "plaintiffs and/or persons potentially belonging to the putative class" concerning the subject of this lawsuit. The accompanying Request for Production No. 3 seeks production of all such statements.

4

According to its memorandum, Lafarge produced the transcripts of 29 recorded statements that it took from 27 persons who became named plaintiffs, pursuant to its obligation under Fed. R. Civ. P. 26(b)(3)(C) to give a party a copy of his own statement upon request. Lafarge provided plaintiffs with a chart that lists all 268 persons from whom it took statements, whether they were recorded or not, although the chart does not include the dates of any statements. Plaintiff's Exh. D. Lafarge objected to producing the remaining recorded statements,[1] arguing that these are statements of non-parties who are not represented by plaintiffs' counsel and that Rule 26(b)(3)(C) therefore does not require their production. Lafarge contends that the recorded statements were taken by its investigators, who were working with its attorneys in anticipation of litigation and/or in preparation for trial, and that the statements are protected from production by the work product doctrine and Rule 26(b)(3)(A).

Lafarge admits that its investigators, who took the recorded statements by telephone, did not tell the interviewees that they were being recorded. None of the sample redacted transcripts provided to me by plaintiffs, Plaintiff's Exh. F, indicate that any interviewee asked whether the conversation was being recorded. Thus, plaintiffs do <u>not</u> allege that the investigators lied to any interviewees concerning recordation. The

---

[1] Plaintiffs do not contend that the investigator's notes or memoranda concerning conversations that were not recorded are discoverable.

transcripts also reveal, and Lafarge does not deny, that the investigators identified themselves only as working for Centanni Investigative Agency, and did not state that they were working for Lafarge or the barge interests, or for attorneys for those parties.

Plaintiffs do not dispute that Lafarge's agents took the statements in anticipation of litigation. However, they argue in their original memorandum that, because the work product doctrine does not protect underlying facts from discovery, they are entitled to discover the contents of Lafarge's interviews without making the showing required by Rule 26(b)(3)(A)(ii) to overcome the work product protection.

In their reply memorandum, plaintiffs argue for the first time that Lafarge's conduct in taking recorded statements from persons with adverse or potentially adverse interests under the circumstances described in the preceding paragraph vitiates the work product protection. Plaintiffs also make conclusory allegations in their reply memorandum concerning their supposed substantial need for the statements and supposed inability to obtain the substantial equivalent without undue hardship. Because I find that plaintiffs may obtain the recorded statements without such a showing, as explained below, I do not address these allegations.

Neither side has cited any law regarding Rule 26(b)(3)(C) and the status of putative class members, who are neither represented by an attorney nor members of an actual class, but whose interests as a putative class are being pursued and protected by

plaintiffs' class counsel. Fed. R. Civ. P. 23(g)(4). My research has located no cases that address this issue. However, I find that all of the withheld recorded statements must be produced for the following reasons.

Although the Louisiana Electronic Surveillance Act "generally prohibits the interception of wire or oral communication, an exception is made where the interceptor is a party to the communication. Since the calls were recorded by . . . a party to the conversation, they were not illegally intercepted." Brown v. Brown, 877 So. 2d 1228, 1235 (La. App. 2d Cir. 2004) (citing La. Rev. Stat. § 15:1303(C)(4); State v. West, 553 So. 2d 945 (La. App. 4th Cir. 1989)). Thus, Lafarge's investigators did nothing illegal by recording the interviewees without their knowledge.

Nonetheless, like other courts, this court disapproves of the secret tape-recording of witnesses and finds that the investigators' conduct in surreptitiously taping conversations vitiates the qualified protection of Rule 26(b)(3). Ward v. Maritz, Inc., 156 F.R.D. 592, 594 (D.N.J. 1994) (citing Parrott v. Wilson, 707 F.2d 1262, 1270-72 (11th Cir. 1983); Moody v. IRS, 654 F.2d 795, 800 (D.C. Cir. 1981)). "[O]ne-sided, surreptitious taping of potential witnesses without discovery could produce an unfairly prejudicial effect in that witnesses could be subjected to surprise introduction of tapes at trial or potential blackmail." Id. at 595 (citing Bogan v. Northwestern Mut. Life Ins. Co., 144 F.R.D. 51, 56 (S.D.N.Y. 1992)). The "'extremely mild remedy of discovery'" does

not interfere with the rights of the parties or their counsel to interview witnesses, except when it is done secretly without the consent of the interviewee, in which case the tapes are discoverable. Id. (quoting Bogan, 144 F.R.D. at 54).

> Virtually all cases dealing with this issue have held that clandestine recordings of conversations with potential fact witnesses, whether made by a party or by counsel, before or after counsel is consulted, are not shielded under the work product doctrine. . . .
> [A] more basic[ ] reason that surreptitiously taping conversations of unsuspecting co-workers removes any work product protection is that such a practice could produce an "unfairly prejudicial effect in that witnesses could be subjected to surprise introduction of tapes at trial or potential blackmail." This practice conflicts with a basic purpose of the work-product doctrine, which is to promote the "broader public interests in the observance of law and administration of justice." "Among these public interests is to encourage the proper functioning of the adversary system." Secretly taped interviews with witnesses are considered unethical, and do damage to that system, regardless of whether the attorney or the client operates the tape recorder. Combining this disruption of the system with the inherent unfairness of allowing one party to use the tapes to further their case while preventing the other party from doing the same requires the Court's conclusion. Work product protection, therefore, is not available for the secretly recorded tapes in this case.

Smith v. WNA Carthage, L.L.C., 200 F.R.D. 576, 578-79 (E.D. Tex. 2001) (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); Otto v. Box USA Group, Inc., 177 F.R.D. 698, 701 (N.D. Ga. 1997); Ward, 156 F.R.D. at 594) (citing Chapman & Cole v. Itel Container Int'l B.V., 865 F.2d 676, 686 (5th Cir. 1989); Sea-Roy Corp. v. Sunbelt Equip. & Rentals, Inc., 172 F.R.D. 179, 183 (M.D.N.C. 1997); Robertson v. National R.R. Passenger Corp., No. 98-1397, 1999 WL 199093, at *2 (E.D. La. Apr. 8, 1999);

Pfeifer v. State Farm Ins. Co., No. 96-1895, 1997 WL 276085, at *2 (E.D. La. May 22, 1997); Giladi v. Albert Einstein College, No. 97 Civ. 9805(DC), 1998 WL 183874, at *1 (S.D.N.Y. Apr. 15, 1998); 6 James W. Moore et al., Moore's Federal Practice ¶ 26.70[2][d] (3d ed. 1998)); accord Williams v. Gunderson Rail Servs., LLC, No. 07-0887, 2008 WL 145251, at *2-3 (W.D. La. Jan. 14, 2008).

The Fifth Circuit has held that "the clandestine taping of a telephone conversation implicitly waives the protection of the work product doctrine because it violates the American Bar Association's Model Rules of Professional Conduct." Chapman & Cole, 865 F.2d at 686. "At a minimum, fairness and honesty require attorneys to disclose material facts to witnesses at the commencement of a conversation. Whether a conversation is being recorded is a material fact, just like whether the speaker is an attorney is a material fact. People may speak differently when their conversations are being recorded. Or, they may decide not to speak at all." Anderson v. Hale, 202 F.R.D. 548, 556-57 (N.D. Ill. 2001) (citations omitted).

Although private investigators, not lawyers, conducted the surreptitious tape-recording of these statements, the investigators were working as an extension of counsel of record in this case and the work of the investigators directly benefitted counsel. See declarations of Wayne Centanni, attached as (a) Defendant's Exh. 1 to the instant motion and (b) as an unnumbered exhibit, Record Doc. No. 11037-6, to Lafarge's Motion to

9

Quash Subpoena Duces Tecum Served on Centanni Investigative Agency (incorporated by reference in fn. 7 of Lafarge's opposition memorandum). Under these circumstances particularly, the Fifth Circuit's holding should extend to the investigators, and the work product and Rule 26(b)(3) protection is vitiated as to these recorded statements.

Lafarge argues that the cases cited above are no longer good law because some of them relied on Formal Opinion 337 of the American Bar Association's ("ABA") Standing Committee on Ethics and Professional Responsibility, issued in 1974, and subsequent cases then relied on the earlier cases. The ABA's Formal Opinion 337 was withdrawn and superseded by the ABA's Formal Opinion 01-422 (June 24, 2001). Formal Opinion 01-422 states that electronic recording of conversations by an attorney without the knowledge of the other party is not an ethical violation per se under the Model Rules of Professional Conduct (as opposed to the prior Code of Professional Responsibility, upon which Formal Opinion 337 was based),[2] particularly when applicable state law does not make such conduct unlawful (as Louisiana law does not). "We conclude that the mere act of secretly but lawfully recording a conversation

---

[2]The former Code
incorporated the principle that a lawyer "should avoid even the appearance of impropriety." That admonition was omitted . . . in the ABA's adoption of the Model Rules of Professional Conduct. . . . Model Rule 8.4(c) . . . [now] provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

Defendant's Exh. 2, ABA Formal Opin. 01-422, at p.2 & n.7 (footnotes omitted).

inherently is not deceitful" because such recordings "do not violate the legal rights of the person whose words are unknowingly recorded." Id. at pp. 2, 5 (citing Model R. Prof. Conduct 4.4); cf. La. R. Prof. Conduct 4.4(a) ("In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."). "We think the proper approach to the question of legal but nonconsensual recordings by lawyers is not a general prohibition with certain exceptions, but a prohibition of the conduct only where it is accompanied by other circumstances that make it unethical." Defendant's Exh. 2, ABA Formal Opin. 01-422, at pp. 4-5.

Despite the issuance of Formal Opinion 01-422 almost seven years ago, Lafarge has cited no federal cases, and my research has located none,[3] in which the ABA's opinion has been used to negate the longstanding, majority, precedential rule that nonconsensual recording of conversations by an attorney or his agent vitiates the

---

[3] I found only two district court cases that cite the ABA opinion, and neither is factually similar to the instant case. In Price v. Gwinnett Family Dental Care, LLC, No. 1:06-CV-2659-BBM-GGB, 2007 WL 3477771, at *3 (N.D. Ga. Oct. 31, 2007), the court found that a lawyer's intentional lie to a witness about tape-recording their conversation would violate either set of ethics rules, but that no such conduct was proven. In Nissan Motor Co. v. Nissan Computer Corp., 180 F. Supp. 2d 1089 (C.D. Cal. 2002), the court held that an attorney's surreptitious tape recording of conversations with opposing counsel contravened Fed. R. Civ. P. 1 and was unethical, despite Formal Opinion 01-422 and regardless whether the taping was illegal under state law. "[I]t is inherently unethical for an attorney to record a conversation with another attorney . . . without the other party's knowledge or consent. Inherent in the undisclosed use of a recording device is an element of deception, artifice, and trickery which does not comport with the high standards of candor and fairness by which all attorneys are bound." Id. at 1097 (quotation omitted).

11

protection of the work product doctrine. Certainly, the Fifth Circuit has not overruled Chapman & Cole, which specifically cited the Model Rules of Professional Conduct, rather than the Code of Professional Responsibility. Moreover, I am not persuaded that "the just, speedy and inexpensive determination of every action," Fed. R. Civ. P. 1, is well served by allowing clandestinely made, nonconsensual recordings of potential class members by investigators working for attorneys who represent parties with interests adverse to the potential class members.

Accordingly, plaintiffs' motion is granted as to Interrogatory No. 5 and Request for Production No. 3. Lafarge must supplement its Answer to Interrogatory No. 5 and its Exhibit D to include the dates of each statement taken, must supplement its written response to Request for Production No. 3 and must produce all recorded statements listed on its revised Exhibit D.

    C.    <u>Requests for Production No. 14 through 16</u>

Plaintiffs' motion is granted in part and denied in part as to Requests for Production No. 14 through 16 concerning settlements between Lafarge and any other party, specifically including Arthur Murph and Shirley Priestly. Although Lafarge states in its memorandum that it has entered into only one settlement arising out of the barge's movement during or in the aftermath of Hurricane Katrina, with Murph, its responses do not make that clear. The court previously ruled that Lafarge must disclose its settlement

agreement with Murph, but may keep the amount confidential, C.A. No. 05-4419, Record Doc. No. 535, which Lafarge has done in response to these Requests for Production. However, the motion is granted to the extent that Lafarge must supplement its response to Request for Production No. 14 to state clearly that it has not entered into any other settlement agreements. The motion is denied as to the remainder of these three Requests for Production.

   D. <u>Requests for Production No. 5 through 10</u>

Plaintiffs argue that the witness interviews discussed above are responsive to these requests and again seek their production. For the same reasons explained above, Lafarge must supplement its responses to these Requests for Production by producing all of the withheld, recorded witness interviews.

II. DISCOVERY CONCERNING COMPANY AND INDUSTRY STANDARDS <u>OF MARITIME CARE</u>

   A. <u>Requests for Admissions No. 6a, 6c, 6d, 6e, 12, 13, 14, 17, 18, 19, 20, 22, 28 and 30</u>

For the same reasons explained above in connection with Requests for Admissions No. 1 through 3, plaintiffs' motion is granted, Lafarge's objections are overruled and its supposed "explanations" of its responses to Requests for Admissions No. 6a, 6c, 6d, 6e, 12, 13 and 22 are stricken. As with Requests for Admissions No. 1 through 3, these

requests are deemed admitted for trial purposes, although Lafarge may make its arguments about these admissions at trial.

Lafarge's objection to Request for Admissions No. 14 is overruled, but plaintiffs' motion is otherwise denied as to this request. Lafarge's non-argumentative explanation of its denial clarifies its denial and complies with Rule 36(a)(4).

Plaintiffs' motion is denied as to Requests for Admissions No. 17, 18, 19 and 20. Lafarge's responses, including its qualifications, are sufficient.

Lafarge's objection is overruled and plaintiffs' motion is granted as to Requests for Admissions No. 28 and 30. The terms "superiors" and "leaving early" are common usage that do not require special definitions. While Lafarge may rely on the testimony of Ed Busch as the underlying source of its responses, Lafarge must either admit or deny the requests as written in the manner required by Rule 36(a)(4).

B.     Interrogatory No. 1 and Requests for Production No. 1 and 12

Lafarge's objections are sustained and plaintiffs' motion is denied as to Interrogatory No. 1 and Requests for Production No. 1 and 12. Lafarge's limitation of its responses to its River Region and its commitment to expand its search for responsive documents to include its facilities in New Orleans, Union and Westlake in Louisiana for the three years prior to August 29, 2005 are responsive and reasonable in light of the excessive breadth of these requests.

C.     Requests for Production No. 17A, 17B, 20, 21, 23, 27 and 29

Lafarge's objections are sustained and plaintiffs' motion is denied as to Request for Production No. 17A, which is so broad that any meaningful response is not possible and, moreover, is duplicative of other, more particular requests.

Lafarge's work product objections are sustained and plaintiffs' motion is denied as to Requests for Production No. 17B, 20, 21 and 29. Lafarge has produced all responsive materials that were created before September 8, 2005, when it hired counsel, and has withheld all materials created or gathered after that date because such materials were created by or at the direction of its counsel in anticipation of litigation or for trial preparation. Lafarge has adequately supported its work product objections with a privilege log and the declaration under penalty of perjury of Mark Raffman. Defendant's Exh. 4. Plaintiffs have made only conclusory allegations and have made no showing sufficient to overcome the protection of Fed. R. Civ. P. 26(b)(3) as to these materials.

Plaintiffs' motion is granted in part as to Request for Production No. 23. Although the request appears unlimited in time, plaintiffs' memorandum indicates that it seeks only communications between Lafarge and the Coast Guard related to the barge in preparation for, during and after Hurricane Katrina. Lafarge's written response says that "responsive documents will be produced," which appears to mean that there are more documents to be produced in addition to the documents listed in its response. Lafarge states in its

15

memorandum that it has already produced all of its communications with the Coast Guard related to this incident. Therefore, it must supplement its written response to clarify that it has produced all responsive documents, limited to communications between Lafarge and the Coast Guard related to the barge in preparation for, during and after Hurricane Katrina.

As to Request for Production No. 27, Lafarge's limitation of its responses to its River Region and its commitment to expand its search for responsive documents to include its facilities in New Orleans, Union and Westlake in Louisiana are responsive and reasonable. Accordingly, plaintiffs' motion is denied. However, Lafarge must supplement its written response and make any responsive documents available as soon as it has completed its additional search, which must be completed within thirty (30) days of this order.

III. DISCOVERY CONCERNING LAFARGE'S CONTENTIONS OF OTHERS' FAULT

Plaintiffs' motion is denied as to Interrogatories No. 18 and 19 and Request for Production No. 28. Lafarge's responses are sufficient, although it must supplement its answers if it obtains additional responsive information. Fed. R. Civ. P. 26(e)(1)(A).

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Lafarge must supplement its written responses to plaintiffs' Requests for Admissions, Interrogatories and Requests for Production and make all responsive documents available to plaintiffs' counsel, as ordered above, within thirty (30) days of entry of this order.

New Orleans, Louisiana, this __21st__ day of April, 2008.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE