UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K"(2) |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State*, C.A. No. 07-5528 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| | * | |

**************************************************************************

**SURREPLY TO MOTION OF
STATE FARM FIRE AND CASUALTY COMPANY
AND CERTAIN OTHER INSURER DEFENDANTS
TO DISQUALIFY PLAINTIFF'S PRIVATE COUNSEL**

Paul G. Aucoin, Attorney at Law; The Dudenhefer Law Firm; Fayard & Honeycutt, A.P.C.; McKernan Law Firm; Ranier, Gayle and Elliot, L.L.C.; and Domengeaux Wright Roy & Edwards L.L.C., along with their individual counsel who have appeared in this case, all through their undersigned counsel, respectfully submit this surreply to State Farm Fire and Casualty Company and certain other insurer defendants' (collectively the "Insurers") motion to disqualify plaintiffs' private counsel.[1]

**I.   Introduction**

> If only protection of client loyalty and client confidentiality were at stake, it would be a simple matter to devise conflict of interest rules that always required disqualification of the lawyer whenever the possibility of impairing these interests appeared. Even the

---
[1] The Insurers attempt to insinuate that the lack of a separate filing by the Attorney General opposing this motion is noteworthy. Any such insinuation is misplaced, as the State has counsel in this case, and those counsel, through their counsel, have responded to all of the claims made in the Insurers' motion.

> slightest possibility of a conflict would suffice. But reasons of public importance can be claimed for both client freedom and lawyer freedom from unduly restrictive conflict rules.
>
> Disqualification deprives the resulting unrepresented client of a free choice of counsel and will almost inevitably entail additional expense and delay. Disqualification orders might be sought not to protect loyalty or confidentiality, but to gain strategic advantage in litigation by depriving an opponent of the services of an advocate known by experience to be particularly effective.[2]

Professor Wolfram's admonition against strategic disqualifications has particular application to the motion before this Court.[3] Potential conflicts exist in any multiple representation of clients in litigation. But the mere ability to conjure up circumstances where one client's interests might differ from those of another does not set the standard for the harsh remedy of disqualification. If that were so, courts and lawyers could dispense with the notion of joint representations entirely, and require each party to appear with their own separate counsel to preclude all conceivable conflicts that could arise. That has never been the rule in conflicts law, and especially is not the case in a disqualification motion brought by one's opponents in litigation.

With regard to the conflict issues, the Insurers first err by arguing that it should be the burden of Plaintiffs' counsel to demonstrate the absence of a conflict in their representations. Though in fact this was done in the opposition as part of an effort to remove any doubt as to the matter, the burden to prove disqualification still rests squarely upon the Insurers. And, just as in their primary brief, the Insurers' reply continues to urge only hypothetical and speculative

---

[2] C. Wolfram, *Modern Legal Ethics*, at 318.

[3] This is not a motion brought by a current or former client of any of the firms involved in this matter to protect a duty of loyalty or to preserve confidentiality. Rather, it is a motion brought by opponents who appear to perceive a temporary strategic advantage by disqualifying experienced and able class action counsel for the State and the putative class. The Insurers can point to no harm they might suffer from the potential conflicts they allege, and no current or former client of any firm alleges any harm.

conflicts as a basis for disqualification, which cannot justify disqualification, and which have been remedied in any event.

Next, the Insurers argue that, at the least, Plaintiffs' counsel should be barred from representing the State. To support this contention, however, the Insurers must confuse the Attorney General's authority to engage counsel with an obligation to pay them. The Attorney General has not committed the State to pay these counsel, although he has authorized them to represent the State. Any legal basis for these counsel to be compensated does not come from any present obligation of the State, and need not come from whatever fund, if any, that may be due to the State. Despite these facts, the Insurers cannot deny that other legitimate avenues for compensation do exist, which renders premature any attempt to disqualify counsel on this basis.[4] For the reasons stated in the opposition memorandum and herein, the motion to disqualify should be denied.

## II. The Insurers have shown only that they cannot carry their burden of proving a conflict.

Courts have warned repeatedly that disqualifying a litigant's chosen counsel is a drastic remedy, and that such motions filed by an opponent present a serious risk of abuse and must be viewed skeptically.[5] This case exemplifies why such caution is so important. In their Reply

---

[4] In their Reply Brief, the Insurers refer to the State's "assertion" that it has a "current and independent" right, and to the State's interest as a "claimed subrogation right." Insurers' Reply Memo, at 6. These statements betray a procedural sleight of hand by the Insurers, and also demonstrate the prematurity of this motion. If, as these statements suggest, the Insurers intend to challenge in a preliminary motion the State's status as a real-party-in-interest, and should they prevail, the hypothetical future conflicts they assert here largely would disappear. But by asserting the motion to disqualify before filing responsive pleadings, the Insurers apparently hope first to replace opposing counsel, while preserving for another day arguments on standing that may resolve the conflicts asserted here.

[5] *Federal Deposit Ins. Corp. v. United States Fire Ins. Co.*, 50 F. 3d 1304, 1315 (5th Cir. 1995). In fact, some courts have held that only parties with a current or prior lawyer-client relationship with the lawyer to be disqualified have standing to seek disqualification. *Indest v. Sherman*, 894

Memorandum, the Insurers have turned the disqualification inquiry upside down by arguing that the Plaintiffs must prove the absence of any conceivable scenario–no matter how contrived–under which some conflict may develop.[6]  Even if this standard were not directly at odds with the law, the Insurers cannot escape that the limitation on the scope of counsel's representation is more than adequate to address their purported concerns.

By supporting their argument with attenuated hypotheticals, the Insurers have confused a straightforward situation.  In this case, the State and individual homeowners have joined forces to sue the Insurers based on their systematic failure to honor coverage for property damage caused by Hurricane Katrina.  It is an undeniable fact, therefore, that the Plaintiffs share the common goal of achieving maximum recovery.  If and when some recovery is achieved, and further if some allocation dispute arises thereafter, the Insurers know full well that the State and the individual homeowners will be represented by different counsel.[7]  In other words, the representation is limited to the creation of the fund to be divided between the clients.[8]  The inter-Plaintiff division of that fund – referred to by the Insurers as the "personal recovery" of each plaintiff – will be handled by others.

---

So. 2d 510, 512 (La. App. 5th Cir. 1/25/05) ("We note *ex proprio motu* that plaintiffs have not asserted any facts which would indicate to this Court that they have standing to bring this action to disqualify counsel.  There is no indication that defense counsel has ever represented plaintiffs in any capacity whatsoever.").

[6]It is well-settled that the burden of proof rests with the party seeking disqualification.  *Walker v. Dep't of Trans & Dev.*, 817 So. 2d 57, 60 (La. 5/14/02).

[7]The Insurers admit that this arrangement already has been put into practice without incident.  *See* Insurers' Reply Memorandum, at 8 n.13.

[8]Whether styled as a limitation of scope of representation or a conflict waiver, the consent of putative class members is not required.  "A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired…. Therefore, putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period." ABA Formal Ethics Op. No.  07-445 (2007).

What the Insurers refuse to acknowledge is that this limitation, coupled with the narrow focus of this lawsuit, *establish a firewall that prevents the formation of conflicts, including the two speculative ones imagined by the Insurers*. The Insurers' extended legal discussion of how likely the ripening of a potential conflict must be before disqualification is appropriate is irrelevant. The limitation ensures that there can be no ripening in this case.

First, the Insurers suggest–without explaining what the legal basis would be–that counsel perhaps should advise the individual homeowners to breach their Subrogation Agreements with the State.[9] However, constantly repeating that this non-existent dispute could become an issue in this action, as the Insurers have done, does not breathe merit into the argument. The fact of the matter is that whether an individual homeowner chooses to take issue with all or part of the Subrogation Agreement has nothing to do with whether the Insurers' have failed to honor their policies. That would be a post-recovery issue, the resolution of which would involve neither the Insurers nor the Plaintiffs' current counsel. Proving the point, and undercutting their own position that the validity of the Subrogation Agreement is "essential to the right asserted by the State in this action," the Insurers have not questioned the State's right to pursue this action.

Second, while understandably refusing to admit that it ever actually occurred, the Insurers suggest that they may have mischaracterized property-damage payments as payments on other forms of coverage, such as for contents or ALE. Setting aside the purely hypothetical nature of this argument, it overlooks that only claims for property damage are alleged here. Accordingly, there will be no need to "allocate" and "characterize" between different types of coverage because only one type of coverage is at issue. Even if the opposite were true, that would be

---

[9]Standing alone, this argument demonstrates that the conflicts standard advocated by the Insurers is unworkable. Very rarely, if ever, is there no conceivable adverse position that one co-party could take against another co-party. If that potentiality was enough to bar a lawyer from representing both parties under an appropriate agreement limiting the scope of the representation, dual representations would become virtually impossible.

5

another post-recovery issue to be worked out between the State and the individual homeowners' other counsel. This applies not only to the allocation argument, but also to all of the potential disputes the Insurers theorize could develop regarding the division of the recovery. Try as they may, the Insurers have not managed to articulate any reason why this Court would have to delve into these issues in order to determine the total amount (regardless of how it is later divided) that is due from the Insurers for property damage alone.

This type of arrangement is not unusual in the context of complex litigation. It is a reality that differences in the positions of class members sometimes arise, especially when the time comes to allocate recovery. The preferred remedy, however, is not disqualification, but rather the creation of sub-classes, each with separate counsel.[10] Properly viewed, the limitation on counsel's representation in this case outlines in advance a similar framework for post-recovery disputes, if any arise. For this reason, the Insurers' argument that the limitation somehow would be unreasonable must be rejected.

Since the Insurers have no defense to these points on the merits, the Reply Memorandum merely repeats their prior arguments, and then proceeds to quibble with the details of the arrangement between the Plaintiffs and their counsel. The crux of this procedural argument is a presumptuous allegation that the arrangement has not been documented and proven to the Insurers' satisfaction. Again, the Insurers misunderstand the law. Unlike conflict waivers, agreements to limit the scope of a representation under Rule 1.2 need not be in writing.[11] That counsel in some instances took the additional step of memorializing the agreement in a writing does not give rise to any "form" requirements for the Insurers to criticize, or otherwise mandate

---

[10] MANUAL FOR COMPLEX LITIGATION § 21.23 (2004).

[11] *Compare* Rule 1.2(c) ("A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent") *with* Rule 1.7(b)(4) (requiring each client to give "informed consent, *confirmed in writing*") (emphasis added).

6

that a writing be prepared for every client.  Further, it certainly does not deputize the Insurers, under the rubric of policing the judicial system, to compel review of communications between their opponents and their opponents' counsel.

In sum, the State and the individual homeowners have exercised their right to counsel of their choosing by assembling a group of experienced lawyers to pursue the claims against the Insurers and to recover as much money as possible for a collective and mutual benefit. Specifically so that counsel can concentrate on that task, they have also agreed that any potential disputes like those posited by the Insurers will be dealt with post-recovery and through different counsel, as already has been done in a number of cases.  Tellingly, the only parties who have an objection to this framework are the Insurers themselves.  Despite those self-serving objections, the arrangement limiting the scope of the representation forecloses the possibility of a conflict and the need to disqualify any of the Plaintiffs' counsel.

### III. The Attorney General's agreements to appoint counsel do not violate any state constitutional or statutory provision.

Failing to establish an existing actual conflict, the Insurers next contend that: (1) the Attorney General's agreements appointing counsel in this case violate state law and (2) the proposed methods of compensation in this case are improper.  As counsel has originally explained, the Attorney General's agreement does not violate any applicable state statute because the agreement does not obligate the State to pay counsel, even if there is a successful recovery. Further, the Insurers continued insistence on resolving issues of compensation before they have answered the lawsuit only highlights the premature and speculative nature of its motion to disqualify.  Accordingly, the Insurers' contentions are meritless.

**A.     The Attorney General does not need to comply with any state statute regarding the appointment of counsel unless he obligates the State to pay compensation.**

As explained in our original opposition, La. Const. art. IV, § 8 grants the Attorney General the express authority to: (1) appoint assistant attorneys general to serve at his pleasure and (2) institute, prosecute, or intervene in any civil action or proceeding to assert or protect the rights of the State.[12] Encompassed within that authority is the right to appoint private counsel to assist him in performing those duties.[13]

The Insurers do not challenge this, but instead assert that the legislature can enact statutes impinging upon the Attorney General's constitutional right to appoint counsel, even if public funds are not at issue. But the Legislature can only regulate the Attorney General's appointment of private counsel when the Attorney General's actions involve the Legislature's constitutional right to control State funds. Where the Attorney General, as here, does not obligate any public funds, the Legislature cannot infringe upon the Attorney General's constitutionally-granted right to appoint counsel. To hold otherwise violates the concept of separation of powers made express in the Louisiana Constitution.[14] Accordingly, none of the statutes cited by the Insurers, even those that do not expressly have a financial threshold, are applicable to the contracts between the Attorney General and the counsel he has appointed in this case unless the contracts obligate the State to compensate counsel.

---

[12] La. Const. art. 4, § 8.

[13] *See* cases cited in Counsel's Opposition to Motion to Disqualify, at 24, n.76.

[14] La. Const. art. II, § 2 ("Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others.").

Despite the unambiguous, clear language disclaiming all liability for compensation in the agreement, the Insurers continue to insist that the Agreement requires the State to compensate counsel. *First*, the Insurers claim that the agreement in *Bayer* is a "more explicit attempt to disclaim compensation from State property" than the agreements at issue here. This assertion is wrong. In *Bayer*, the agreement states: "After successful prosecution of this litigation, attorneys of the law firm will be compensated either by court order or by private agreement between the litigants."[15]  Here, the agreements state:

> The State does not guarantee the payment of any attorney fees or costs in connection with such representation and specifically disclaims all liability for payment of fees or costs out of actions filed herein by you or on behalf of the State.[16]

The difference between the two is clear—the former grants counsel the right to compensation and the latter does not.[17]

*Second*, the Insurers' reliance on the next provision in that agreement does not change this fact. The Insurers assert that the following sentence in the Attorney General's appointment letter grants counsel the right to compensation:

> In the case where the State itself would be included as a member of a class action, the State would receive all amounts due and owing to it without discount and without any fees or costs subtracted from the corpus of the judgment or settlement; the attorneys handling this case may receive attorneys' fees and costs permitted them by State or Federal law.[18]

---

[15] Ex. 9, Counsel's Opposition to Motion to Disqualify (emphasis added).

[16] Insurers' Memo in Support, Ex. 3 (emphasis added).  Further, despite the Insurers' contentions to the contrary, nothing in the letter purports to give counsel the right to a contingency fee if the State is successful in a non-class action context.

[17] Like the *Bayer* agreement, the contingency fee agreement in *Meredith v. Ieyoub* grants counsel the right to compensation upon successful prosecution of the action.

[18] Insurers' Memo in Support, Ex. 3.

The letter, however, grants counsel no such right unless the fees and costs are allowed by "State or Federal law." Whether that "right" grants counsel the right to compensation merely begs the question. If the Insurers' assertions are correct, counsel here cannot receive compensation because the counsel's agreement fails to comply with state law. Thus, this provision would not provide counsel with any right to compensation. If counsel can properly receive such compensation under state or federal law without complying with such provisions, then those provisions are necessarily inapplicable. Either way, this provision does not impermissibly grant counsel the right to compensation. Therefore, the state statutes cited by the Insurers are not a barrier to counsel's representation of the State in this matter.

      **B.**    **Although the issue need not be decided now, the Court can award common benefit fees to counsel.**

The Insurers also take issue with counsel's proposed means of compensation. But as it originally stated in its opposition, counsel have only discussed potential means of compensation for the sake of completeness, not because a determination of whether there are any means for which counsel may be compensated is necessary to decide the Insurers' motion to disqualify. It is plainly premature and speculative to discuss the methods by which counsel might be compensated when the Insurers have not yet answered the complaint. Further, the right to compensation should have no impact on whether counsel can continue to represent the State where counsel have voluntarily assumed the risk of whether they will be compensated for their work.

Even so, the Insurers' assertion that this Court cannot award common benefit fees in the absence of a state statute must be corrected. As stated in *In re: "Agent Orange" Product Liability Litigation*, a Court can award common benefit fees under its equitable authority to supervise and manage class actions:

> Generally speaking the federal courts have no power to award attorney fees to a prevailing party absent statutory authorization. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). A well-established exception to this rule applies when a common fund has been created in a class action. *See generally Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79, 100 S.Ct. 745, 749-50, 62 L.Ed.2d 676 (1980); 1 M. Derfner & A. Wolf, Court Awarded Attorney Fees ch. 2 (1983). The common fund doctrine, "part of the historic equity jurisdiction of the federal courts," *Sprague v. Ticonic National Bank*, 307 U.S. 161, 164, 59 S.Ct. 777, 779, 83 L.Ed. 1184 (1939), contemplates "fair and just allowances for expenses and counsel fees." *Trustees v. Greenough*, 105 U.S. 527, 536, 26 L.Ed. 1157 (1881).
>
> This equitable doctrine covers claims "filed not only by a party to the litigation, but also by an attorney whose actions conferred a benefit upon a given group or class of litigants." *City of Detroit v. Grinnell Corp.* (Grinnell I ), 495 F.2d 448, 469 (2d Cir.1974). In addition, the equitable supervisory authority that Rule 23 of the Federal Rules of Civil Procedure grants federal courts in class actions extends to attorney fee questions and itself provides a quasi-substantive predicate for fee allowances. *See, e.g., Vincent v. Hughes Air West, Inc*., 557 F.2d 759, 768 (9th Cir.1977); 7A C. Wright & A. Miller, Federal Practice and Procedure § 1803 (1972 & Supp.1984). The Rule recognizes applicability of the common fund doctrine to class action cases.[19]

Therefore, despite the Insurers' assertions, this Court is not limited to relying solely on state statutes in awarding common benefit fees—and the decisions cited by the Insurers do not require otherwise.[20] Accordingly, even if this issue had to be decided now, which it does not, the Court would not be required to rely solely on state provisions, including La. Code of Civil Proc. art.

---

[19] 611 F. Supp. 1296, 1304 (E.D. N.Y. 1985), *decision aff'd in part, rev'd in part on other grounds*, 818 F.2d 226 (2d Cir.1987); *Pavlidis v. New England Patriots Football Club, Inc*., 675 F. Supp. 707, 709-10 (D. Mass. 1987); *see also In re: Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 736 F. Supp. 1007, 1012-13 (E.D. Mo. 1990)(recognizing the difference between statutory fee and common fund situations).

[20] *Grant v. Chevron Phillips Chem Co*., 309 F.3d 864 (5th Cir. 2002) and *In re: Abbott Labs*, 51 F.3d 524 (5th Cir. 1995), concerned the denial of a motion to remand and only decided whether Art. 595 could be used to meet the minimum amount in diversity requirement, not whether the courts could award common fund fees under its equity jurisdiction in class action cases. *Shelak v. White Motor Co*., 636 F.2d 1069 (5th Cir. 1981), and *Mathis v. Exxon Corp*., 302 F.3d 448 (5th Cir. 2002) were "ordinary" diversity cases, not class action cases. And the Ninth Circuit in *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002), applied both state and federal law in assessing whether to award common benefit fees.

595 and La. Rev. Stat. § 42:1111(A)(1), in determining whether to award common benefit fees to counsel at the end of this class action case.[21]

### IV.     Conclusion

The Insurers have not met their burden of proving an actual conflict.  They have also failed to show that the Attorney General's agreements to appoint counsel violate any state law.  Accordingly, their motion to disqualify should be denied.

Respectfully submitted,

By:    /s/ Thomas P. Owen, Jr.

Richard C. Stanley, 8487
Thomas P. Owen, Jr., 28181
Melissa V. Beaugh, 28250
    Of
STANLEY, FLANAGAN &
REUTER, L.L.C
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile: (504) 524-0069

-and-

---

[21] Moreover, La. Rev. Stat. § 42:1111(A)(1) does not prevent counsel from being compensated for its work on behalf of the class.  Any assertion by the Insurers to the contrary would lead to absurd results as it would effectively preclude counsel who represented the State in any matter from ever receiving payment for services rendered to their other clients.

>Basile J. Uddo, 10174
>Attorney at Law
>3445 North Causeway Boulevard
>Suite 724
>Metairie, Louisiana 70002
>Telephone: (504) 834-1819
>Facsimile: (504) 832-7208
>
>Attorneys for Paul G. Aucoin, Attorney at Law; The Dudenhefer Law Firm, L.L.C.; Fayard & Honeycutt, A.P.C.; McKernan Law Firm; Ranier, Gayle and Elliot, L.L.C.; and Domengeaux Wright Roy & Edwards L.L.C.

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2008, I electronically filed the foregoing Opposition to Motion of State Farm Fire and Casualty Company and Certain Other Insurer Defendants to Disqualify Plaintiff's Private Counsel with the Clerk of Court using the CM/ECF system which will send a notice of filing to all counsel accepting electronic notice.  I further certify that I mailed the foregoing document and notice of electronic filing filed by first-class mail to all counsel of record who are non-CM/ECF participants.

>/s/ Thomas P. Owen, Jr.