UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | No. 05-4182 |
| PERTAINS TO: | * | & Consolidated Cases |
| | * | |
| LEVEE (Sims 06- 5116) | * | SECTION K |
|        (DePass 06-5127 | * | |
| | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE KNOWLES |
| | * | |

**************************************

MEMORANDUM IN OPPOSITION TO THE MOTION TO DISMISS
FILED BY THE BOARD OF COMMISSIONERS
EAST JEFFERSON LEVEE DISTRICT

**NOW COMES,** *Leslie Sims, Jr., Rosa Marquez, Floyd Aaron III and Hassen Sleem, et al* (No. 06-5116) and, *Elizabeth H. and William Keith DePass, IV, et al* (No. 06-5127), to file this Memorandum in Opposition to the Motion to Dismiss filed by the East Jefferson Levee District (Doc. No. 11374).

Plaintiffs were residents and property owners in the neighborhood abutting the 17th Street Canal, an outfall canal lying entirely in Jefferson Parish on the east side of the Mississippi River and thus within the jurisdiction of the Mover Levee District, the Board of Commissioners of the East Jefferson Levee District. LSA-R.S. 38:291 D[1]. At the time

---

[1] R.S.38:291 D **.** East Jefferson Levee District. (1) All the land in the parish of Jefferson lying on the east side of the Mississippi River shall constitute a levee district to be known as the East Jefferson Levee District. These lands and all property thereon situated, not exempt from taxation, shall be subject to the provisions of this Chapter.

1

of the events complained of, the Levee District was governed by a Board of Commissioners. Id. *DePass, et al*, resided or held property in Metairie, in Jefferson Parish, on the West side of the 17th Street Canal, in Jefferson Parish. *Sims, et al*, resided or owned property on the East side of the Canal, in Orleans Parish.

In Complaints filed August 28, 1996, Plaintiffs complained of flooding from the 17th Street Canal, formerly the Metairie Relief Canal, and its extension southward where it is known generally as the Monticello Canal. The canal is located entirely in Jefferson Parish, just to the West of the Orleans Parish line, and thus within the territorial jurisdiction of the East Jefferson Levee District. R.S.38:291D, *supra*. *DePass et al* complain of flooding from the 17th Street Canal East Side Breach, and the Industrial Canal West side breach, into the Metairie Relief Canal and into Jefferson Parish through the bridge at Orpheum, the bridge at Palm and Northline, from the Relief Canal via backflow and through the Hoey Canal gate, and at Airline Drive. *DePass, et al,* also complain of flooding from the Hoey Canal, located entirely in Jefferson, running westward direction from Monticello Canal west of Northline under Airline Drive and along Airline Highway. *Sims, et al*, complain from flooding from entire stretch of the 17th Street Canal West bank resulting from the closure due to the failure of and from the breach in the federalized portion of the 17th Street Canal north of pumping station six. Both *DePass* and *Sims* allege that their flooding stemmed in part from the Industrial Canal West Bank breaches, via the SWB drainage system, and the consequent flooding from the rupture of the 17th St Canal.

Pertinent to the Acts of Assurance Claims both the *DePass'* and *Sims'* Complaints allege that "(c)ontemporaneous with the filing of this Complaint, plaintiffs gave notice to

defendants Levee District and Port of their intention to accept the benefits of the Acts of Assurances and Agreements given pursuant to the various Public Laws in furtherance of the representation of local cooperation and required by Federal Law." *Original Complaint, DePass* ¶94; *Simms* ¶90.

**The Levee District's Position**:

In its moving papers, the Levee District cites two of this Court's Orders and Reasons. One dated November 7, 2007 [Record Doc. 8913] and a second dated October 12, 2007. [Doc. 8390] In the first the Court granted Motions to dismiss claims against the Port of New Orleans. In the second the Court dismissed *dePass'* and *Sims* claims against the Parish of Jefferson. On the basis of the November 7, 2007, Order and Reasons (the "Port Decision"), EJLD argues that the EJLD - United States Acts of Assurances "do not . . . provide plaintiffs or third parties with a right or cause of action against the indemnifying state or local agency," quoting this Court's holding dismissing the claims against the Port of New Orleans. Brief, p. 2. In the Order and Reasons of November 7, 2007 (the "Port decision"), this Court also held that neither Louisiana Direct Action Statute nor the Louisiana doctrine of stipulation *pour autri* afforded Plaintiffs' a remedy, and that state law, and not federal common law, applied and that resort to federal law was to no avail. [Doc. 8913]

The second Opinion and Reasons of October 12, 2007 (the "Jefferson Parish decision"), EJLD suggests, "addressed the garde issues raised by plaintiffs, and found that public bodies such as EJLD are immune from suits like plaintiffs." Brief p. 2. The Levee District also observes that there were no breaches in the West bank of the 17th Street Canal, neglecting to appreciate the fact that the waters from the East side breaches,

3

and from the resulting closure of the pumping station caused flooding in Jefferson. Furthermore, EJLD, unlike Jefferson Parish, is by definition "a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, *and all things incidental thereto*, within its territorial limits." LSA R.S 38:281(6).["(*A*)*ll things incidental thereto,* Plaintiffs suggest, includes the bridges at Orpheum, Palm and Northline and Airline Drive, from the Metairie Relief Canal via backflow and through the Hoey Canal gate, and flooding from the Hoey Canal.]

**Plaintiffs' Response:**

The Levee District's argument fails because the Levee District is different from the Port for purposes of both the third party remedy under the Acts of Assurance and the Direct Action, and it is different from Jefferson Parish for purposes of garde.

Art. 6, Sec. 41[2], constitutionally authorized levee districts to become local sponsor of federal levee projects "under terms and conditions provided by the federal authorities." The Acts of Assurance derive from local sponsorship and the hold harmless provision derives from The Federal Flood Control Act of 1928, specifically Sec. 3[3]. The United States participation is predicated on "States or levee districts . . .giv(ing) . . . assurances satisfactory", and the precondition that "No liability of any kind shall attach to or rest upon the United States for any damages from flood or flood waters."   Public Law 391,

---

[2] Section 41. The governing authority of any levee district may cooperate with the federal government in constructing and maintaining levees in this state, under terms and conditions provided by the federal authorities and accepted by the governing authority.

[3] Sec. 3 Public Law 391, 71st Congress 1st Session.["(N)o money shall be expended on the construction . . . until the States or local levee district have given assurance satisfactory . . .that they will maintain all flood control works after their completion …"]

4

70th Congress 1st Sess., approved May 15, 1928 (45 Stat. 534)[4].  If a third party cause of action is not available under state law, under *Cooper et al v. Louisiana Department of Public Works*, 870 So.2d 315 (3rd 2004) or under the La. Direct Action Statute[5], as Plaintiffs' suggest, then federal law preempts contrary state law, and affords such remedy under *Boyle v. United Technologies Corp.,* 487 U.S. 500, 108 S.Ct. 2510. (U.S.Va., 1988.)  In *Boyle* the Supreme Court has held that "a few areas, involving 'uniquely federal interests,' (case cited) are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary, by federal law of a content prescribed (absent explicit statutory directive) by the courts-so-called "federal common law." Plaintiffs suggest that federal participation in flood control is such an area involving "uniquely federal interests."

The Levee District is just wrong on *garde*.  Jefferson Parish presented a different case, as this Court noted in its October 12 Order and Reasons[6].  "Since 1866 the construction and maintenance of levees has devolved upon the state, and, for the past 46 years, the federal government, in aid of foreign and interstate commerce, has cooperated in this work."  *Russell v. Board of Com'rs of Lake Borgne Basin Levee Dist.* 159 La. 330,

---

[4] By contrast the Ports hold harmless derives from the April 4, 1957 Agreement of Local Cooperation entered into in furtherance of Pub. Law No. 455- 84th Cong. 2d Sess. To provide for the construction of Mr. Go.

[5] LSA-R.S. 22:655.

[6] There this Court observed:  "(f)urthermore, it appears to the Court that maintenance of the levees involved would be the duty of either the Orleans Levee District and/or the East Jefferson Parish Levee District, not Jefferson Parish.  It is primarily the state's duty to protect citizens from damage by flood which is inherent within its police power. . . . .Thus, a levee board is a creature or agency of the state brought into existence for the purpose of discharging the state's duties of flood protection.  Doc. 8390.

105 So. 361 (La. 1925)  Indeed "the constitution itself charges the general assembly with the duty of maintaining a levee system, authorizes the creation of levee districts under the administration of commissioners to be appointed or elected, and grants specified powers of taxation for this purpose. Const. arts. 213-216."  *Peart v. Meeker,* 45 La.Ann. 421, 12 So. 490 La. 1893.[7]

## Law & Argument

*Point 1. The Direct Action Statute applies with respect the Acts of Assurance granted by the Levee District; it is not a state agency and in any event, LSA-Const. Art. 6, § 41 put Levee Districts in the business of issuing such (insuring) agreements*.

Undeterred, Plaintiffs re-urge those state law theories again here, and submit that the Port decision is distinguishable.  The Direct Action Statute provides an entirely independent right of action directly against EJLD alone, and the Plaintiffs pled its application.  This Court held the Port was not an insurer for purposes of the Direct Action Statute relying on the holding in *Cooper v. Louisiana Dept. of Public Works*, 870 So.2d 315 La.App. 3 Cir.,2004. "Clearly, the state and its respective agencies were not designated as insurers under La.R.S. 22:5(2).  Therefore, the trial court improperly deemed the DOTD as an insurer of the United States and, as such, the application of the Direct Action Statute to this matter is not feasible" at p.329.

The rejection of the application of the Direct Action Statute in *Cooper v. LDOT, supra,* was premised on the definition of the insurer under La. R.S. 22:10 "Insurer" "every person engaged in the business of making contracts of Insurance" did not include

---

[7] Cf. LSA R.S 38:281(6) ["Levee district" means a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limits.]

6

the state and its agency LDTD.  EJLB is not the state or a state agency and it is "in the business of making contract of insurance."

The levee district is not a state agency.  In determining whether the Levee District is an insurer, La. R.S. 22:10 must be read in light of R.S.22:9(a) and LSA-Const. Art. 6, § 41, *supra*.  See also Act 169, 1920. The R.S. 22:10 defines "insurance" broadly as including "a contract whereby one undertakes to indemnify another or pay a specified amount."  The significant definition, however, is the one which precedes, La. R.S. 22:9(a).  It defines "Insurance" as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.  *It shall include any trust, plan or agreement*, popularly known as employee benefit trusts, not specifically exempted from state regulation, except collectively bargained union welfare plans, single employer plans or plans of the state." [Emphasis Added] Art. 6, Sec. 41 and Section 3 of the Flood Act of 1928, put Levee District in the business of issuing such Act of Assurance, "insurance" under R.S. 22:9(a).

The Direct Action Statute is properly invoked. .

Furthermore, *Cooper* did not settle for all time and all purposes that every such hold harmless agreement is as an indemnity contract, and no direct action lies against the promissor.  In *Cooper,* the City of Bogalusa was "willing to pay whatever expenses or assessment the United States might incur in connection with the acquisition of the necessary right-of-way and such property damage as the owner might recover against the United States."  Here the Port procured rights of way and agreed.  Furthermore, the decision in *Cooper v. City of Bogalusa*, 195 La. 1097, 198 So. 510 rendered in 1940 must be revisited in light of the Supreme Court's subsequent decision in *Quinlan v. Liberty*

7

*Bank and Trust Co.*, 575 So.2d 336 (La. 1990)*.  First Nat. Bank of Louisville v. Lustig,* 975 F.2d 1165 C.A.5 (La.), 1992.  Finally, the Court in *Cooper* applied Louisiana law. Federal common law applies in defining the obligation owed by the Levee district as local authority under congressionally mandated local cooperation agreement, and under federal common law hold harmless provisions and indemnity provisions are distinctly different species of contract clauses, Art 6, Sec. 41 and Sec 3 of the 28 Flood Act.  An agreement "to hold harmless from claims" requires no judgment against the wrongdoer in whose favor the hold harmless runs, whereas a judgment against the indemnified party is predicate to an action against the indemnifying party on an indemnity.

***Point II.  Plaintiffs are the third party beneficiary to the Act of Assurances and have a state law right to recover from EJLD.***

The agreement between the Mover EJLD and the United States Army Corps of Engineers, "created a stipulation *pour autri* in favor of the Plaintiffs who are the third party beneficiaries to the 'Act of Assurance.'"  *Cooper, et al v. Louisiana Department of Public Works,* 870 So.2d 315, (La.App. 3 Cir.,2004) "A stipulation *pour autri* gives a third party the right to demand performance from the promissor, directly." *Id*. 330.  "Our law favors stipulations made in favor of a third person."  The claims against the Mover EJLD fall squarely within the holding of the court in *Cooper,* et al v. *Louisiana Department of Public Works, et al., supra.*

In *Cooper* the landowners brought an action against Department of Transportation and Development (DOTD), seeking damages for the permanent flooding of portions of their lands which interfered with their servitudes of drainage, caused by construction of locks and dams.  Under the Act of Assurances the Department of Transportation and Development (DOTD) agreed to furnish free of cost necessary land, easements and right-

8

of-ways, and agreed to hold and save the United States free from damages due to the construction, were these held to be a stipulation *pour autri* in favor of landowners whose servitudes of drainage were interfered with in subsequent flooding, such that landowners could bring third party beneficiary action directly against LDTD. It matters not that the plaintiff in *Cooper* sought to recover the value of the land determined necessary for the works, while these plaintiffs seek to recover damages do to failure of the works. *Cooper* is about availability of remedy, not relief sought.

> To paraphrase the opinion of the *Cooper* Court:
>
> When we apply the factors to the facts of this case, the legal relationship between the promisee (United States ) and the third person (Plaintiffs) involves an obligation (to reimburse the Plaintiffs for permanent flooding of the land caused by the maintenance of (the 17th Street) owed by the promisee (United States) to the beneficiary (Plaintiffs), which the performance of the promise . . . for construction . . . and subsequent maintenance, when and as required 'and to [h]old and save the United States free from damages due to construction and maintenance of the project)' by the promissory (EJLD).

In other words, the obligation of the United States imposed as a condition of the "Act of Assurance" and undertaken by the EJLD constitutes a stipulation *pour autri* in favor of the *DePass*' and *Sims*' Plaintiffs.

> In addition, the relationship between the United States and the Plaintiffs was sufficient to support the inference that there was a possibility that the United States could be liable to Plaintiffs some time in the future the support for the Levee District's promise would protect the United States. The possibility was realized once before when the Port was sued in *Graci v. United States,* 456 F2d (5 Cir.; 1971).

Plaintiffs' suits fall within the guidelines set by the Louisiana Supreme Court for determining when claimants should receive third party beneficiary status as interpreted in, and falls squarely within, the rule of *Cooper et al v. Louisiana Department of Public*

9

*Works*, 870 So.2d 315 (3rd 2004).  Plaintiffs pled the application of the state law third party beneficiary doctrine, and the allegations of the Complaint sufficient to weather a 12(b)(6) challenge.

***Point III.   Given the "uniquely federal interests" involved, the Acts of Assurance must be interpreted in light of The Mississippi River Flood Control Act, to determine whether considered in light of "No Liability of any kind" proscription in the 1928 Act, the hold harmless provision affords plaintiffs a federal right of action against the sponsoring levee district.***

The Acts of Assurance hold harmless is a creature of federal law. It is a unilateral act of the sponsoring Levee District, a precondition to Federal participation in the construction.  It grew out of the Mississippi Flood Control Act, Public Law 391, 70th Congress 1st Sess. approved May 15, 1928  (45 Stat. 534) through the system of local sponsorship put in place for that purpose and was been carried forward in Public Law 516, Sec. 204, 81st Cong. 2nd Session, the addition of Lower Mississippi River project to the 28 Flood Act.  In the Assurance Agreement for the Lower Mississippi River, the United States required the local sponsor to "(d) hold and save the United States free from damage claims resulting from the construction of the project."  The Lake Pontchartrain And Vicinity Project was added to Lower Mississippi River Basin, General Projects, and thus to the Mississippi Flood Control Law by P.L. 89-298, 89th Cong. 1st Session[8].

Though the United States participation was predicated on the mandate that "No liability of any kind shall attach to or rest upon the United States for any damages from flood or flood waters," the Act was silent as to who would bear the burden of damage.  The Act did not say that private interest would bear that burden, however.  In fact, the

---

[8] This Court has held that the work on the Outfall canals was effected under the Lake Pontchartrain and Vicinity Project [Doc. 10984], considered laws of the case for these purposes.

10

Act was specific in imposing the burden on the participating State and local public interest to furnishing the necessary property and rights of way necessary for the construction of the works.

The construction would not be commenced "until the States or levee districts had given assurance satisfactory that they will so "maintain . . . the works after their completion" and provide all right of way necessary for which they would be reimbursed The Act provided that the lands would be "turned over . . . to the ownership of the States or local interests" [Sec. 4], to maintain all flood control works after their completion." Sec. 3. para. 1. Sec. 3 further provided the immunity that "No liability shall attach to or rest upon any States for any damages," [Sec. 3, para 2] considered to mean "damage claims" in the OLD Act of Assurance of September 19, 1950, cited above.

"Federal law controls the interpretation of the contract. See *United States v. County of Allegheny*, 322 U.S. 174, 183, 64 S. Ct. 908, 88 L. Ed. 1209 (1944); FN12, *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S. Ct. 573, 87 L. Ed. 838 (1943). This conclusion results from the fact that the contract was entered into pursuant to authority conferred by federal statute and, ultimately, by the Constitution. See *U. S .v. Seckinger,* 397 U.S. 203, 90 S.Ct.880 (U.S. Ga. 1970).

A hold harmless from claims does not require that the indemnified party be cast in judgment or otherwise ordered to pay. Cf*. U.S. v. Schwartz*, 90 F.3d 1388 (C.A.8 (Minn.), 1996). In contrast where a "contract is strictly one of indemnity. . . the indemnitee cannot recover until he has actually made payment or otherwise suffered a loss or damage. . . " Indemnity, 42 *Corpus Juris Secund*um Sec. 23, p. 111. *Taormina Bros., Inc. v. Compagnie Europeen D'ASSURANCES INDUSTRIELLES S.A.,* Not Reported in

11

F.Supp., 1994 WL 361414 (S.D.N.Y.,1994.)  *See Travelers Indemnity Co. v. Calvert Fire Ins. Co.,* 836 F.2d 850, 853 (5th Cir.1988); *Stuyvesant Ins. Co. v. Nardelli,* 286 F.2d 600, 602-03 (5th Cir.1961).  Under an indemnity policy, the insurer is not required to indemnify any amount to the insured until the insured "proves payment in the amount of its recovery." *Stuyvesant Ins.,* 286 F.2d at 603

   ***Point IV. The Levee District, unlike Jefferson Parish, is by definition "a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all things incidental thereto," and with the "care and maintenance" thereof.  The October 12, 2007, Order and Reasons.***

   EJLD misreads this Court's Order and Reasons of October 12, 2007. Doc. 8390. What EJLD ignores, or neglects to appreciate is that EJLD, unlike Jefferson Parish, is by definition "a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all things incidental thereto, within its territorial limits." LSA R.S 38:281(6).  By law, the "care and inspection of levees" lays with the "resident commissioners." LSA-R.S. 38:301.  In addition, LSA 38:325(A)(1) and (2) mandates that boards of commissioners engage in activities related to flood protection and maintenance of levees.

   Indeed in the very opinion, EJLD offers in support of its argument, the Order and Reasons of October 12, 2007 [Doc. 8390], this Court observed:

> Furthermore, it appears to the Court that maintenance of the levees involved would be the duty of the either the Orleans Levee District and/or the East Jefferson Parish Levee District, not Jefferson Parish. It is primarily the state's duty to protect citizens from damage by flood which is inherent within its police power. "Such power, however, belongs to the state; the police power may be exercised by agencies of the state only under a delegation of authority. The state retains the right to recall, abrogate of modify the delegation. *Board of Com'rs of Orleans Levee Dist. v. Dept. of Nat'l Resources of the State of Louisiana,* 493 So. 2d 281, 288-89 (La. 1986).  Thus, a levee board is a creature or agency of the state brought into existence for the purpose of discharging the state's duties of flood protection. *Id.*

*Point V.  The Federal Rules require only notice pleading.  Plaintiffs pleadings are sufficient for such purposes; Alternatively, Plantiffs should be permitted to amend.*

A claim will only be dismissed under Rule 12(b)(6) if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief.  See *Williams v. Seniff,* 342 F.2d 774 (7th Cir. 2003).  Even if the asserted legal theory is not cognizable or the relief sought is unavailable, a claim generally will not be dismissed if there are other tenable legal claims evident on the fact of the complaint.  See *Carparts Distrib. Cir. V. Automotive Wholesaler's Ass'n. of New England, Inc.,* 37 F.3d 12, 17 (1st Cir. 1994) ("For purposes of Fed. R.Civ. P. 12(b)(6), the possibility of a claim is enough to defeat dismissal.").

## Conclusion

The Levee District's Motion should be denied.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL:<br>MILLING BENSON WOODWARD LLC | /s/ William C. Gambel<br>William C. Gambel (LA Bar NO. 5900)<br>909 Poydras Street, Suite 2300<br>New Orleans, LA  70112-1010<br>Telephone:  (504) 56 9-7000<br>Telecopy:  (504) 569-7001<br>wgambel@millinglaw.com<br>Attorneys for Plaintiffs |

John J. Cummings, III (LA Bar No. 4652)
Cummings, Cummings & Dudenhefer
416 Gravier Street
New Orleans, LA  70130
Telephone:  (504) 569-0000
Telecopy:  (504) 586-8423
ccdlawfirm@aol.com

W371830

CERTIFICATE OF SERVICE

    I hereby certify that on this  29th  day of April, 2008, a copy of the foregoing pleading has been filed with the United States District Court for the Eastern District of Louisiana, and all counsel of record are being served this filing by either the court's electronic filing system or by telefaxing and/or placing a copy of same in the United States mail, properly addressed and with adequate postage affixed thereon.

                                                 /s/ William C. Gambel

W371830