UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NUMBER: 05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| | * | MAG. WILKINSON |
| | * | |
| | * | |
| PERTAINS TO: MRGO, Robinson | * | |
| (No. 06-2268) | * | |

*************************************************************************

**MEMORANDUM IN SUPPORT OF MOTION TO EXTEND**
**PLAINTIFFS' EXPERT REPORT DUE DATE**

**NOW INTO COURT**, through undersigned counsel, come the Plaintiffs, who move this Court to extend the Plaintiffs' expert report due date for the following reasons:

**I.**
**OVERVIEW**

On March 19. 2008, the Court instituted deadlines associated with expert productions. (See Record Document No. 11677). In that order, the Court established the Plaintiffs' expert report due date as May 1, 2008.

Since that time, plaintiffs and their experts have worked diligently to comply with this date. However, circumstances outside of their control have reduced capacity to meet this deadline.

**II.**
**FACTS**

***A.   IVOR VAN HEERDEN***

Due to the complexities of the computer modeling needed to extrapolate voluminous amounts of information into readily decipherable, verifiable outputs, the use off a Supercomputer

at Louisiana State University in Baton Rouge, Louisiana.  Plaintiffs' experts are performing ADCIRC surge runs looking at different configurations of the MRGO,  Reach 1 and Reach 2 and the value of wetlands in surge reduction. This data is an essential input int the overall expert production.

Included in this investigation is the inquiry into what would have happened during Hurricane Katrina if the MRGO had never been built and all the trees and wetlands had still being there, that is a pre MRGO scenario. However, since March 30, 2008, plaintiffs' experts have been unable to run the ADCIRC model on the LSU Supercomputer.  The administrators of the Supercomputer have been contacted by Dr. Ivor van Heerden, and the administrators have promised to help; but as of April 27, 2008, the experts had not been able to perform any computer runs.  Based upon information and belief, the LSU administrators have migrated the experts to another Supercomputer and upgraded some of that Supercomputer's software.  However, the new model will not run on the new system until the plaintiffs' experts complete modifications to the source code.

This procedure has now been resolved and the substance of the plaintiffs' expert's work can continue.  However, the delays associated to the factors outside of their control have set their work back for a number of weeks.

## B.     SHEA PENLAND

On March 25, 2008, plaintiffs' expert Shea Penland passed away. Since that time, Plaintiffs have retained Duncan Fitzgerald.  Mr. Duncan has undertaken an extensive review of Dr. Penland's materials.

The untimely passing of Shea Penland, the lead author and architect of the report, has resulted in new stewardship of this important document. It would seem reasonable that the new leadership be given more than 10 days to modify and attach new authorship to this document.

It was not until that Monday April 21, 2008 that Mr. Duncan was able to review the prior reports of Mr. Penland in detail and determine the various aspects of how the data were collected and presented, and used to substantiate the conclusions.  Mr. Duncan concluded that numerous changes are necessary to link the highly quantitative data base and presentation of these data to a list of conclusions, which will require some slight modifications (not substantive).

Questions have arisen concerning the presentation of the habitat change data due to MRGO. These issues can only be resolved by Karen Westphal, who assembled the tables and graphs and wrote the text for these figures.  Three days is far too little time to deal with these issues.

One of the important elements of the case involves the degradation of Breton Island due to construction of MRGO that has drastically reduced the sand supply to the island.  This important point can be significantly improved with additional data and analysis, improved figures, and more text. We want to quantify the volume changes of the island and correlate these changes to the reduction in sediment supply.

Mr. Duncan must attach ownership to the report and approve all aspects of the report, especially the conclusions. The conclusions must be supported by the data and there be should a logical pathway for the reader to follow how the charts, tables, graphs, figures, etc. were used to arrive at our conclusions. This will require a deadline past May 1, 2008.  However, Mr. Duncan has produced a preliminary report with the limitation that he will need to do additional work to

endorse the data and interpretations that may require some revision of the report; however, the content and conclusions are not expected to change substantively.

## C.     ALL OTHER PLAINTIFFS" EXPERTS

All other expert reports have been provided to defendants, with the following proviso:

> *"Originally planned for modeling data concerning surge, waves, and currents for the scenario of hurricane Katrina and the MRGO as it existed at the time of the storm (Scenario 1); for a virgin pre-MRGO condition (Scenario 2); and a MRGO-as-designed condition (Scenario 3). Scenario 2 and 3 were not completed by the time this report was to be submitted to the court.  The reason being that our team is relying on surge data from the Louisiana State University Hurricane Center and Dr. Ivor Van Heerden's team who have not been able to supply all the products we needed on time.  Dr. Van Heerden's team has been battling administrative problems with the LSU center for computation and technology who manage the supercomputer he uses for his surge modeling.  Dr. Van Heerden's team have successfully used the LSU supercomputer for many years.  He has not been able to supply us any product since March 30, 2008.  As soon as Dr. Van Heerden has sorted out the administrative problems with the LSU computing center and given us the data we need we will be adding to, complimenting, amending and/or modifying our report/s to the court.  Further, we reserve the right to modify or amend our report/s as additional data becomes available whether from our own team or from the defense team.."*

## III.
## DUE TO THE DILIGENCE OF THE PLAINTIFFS, THE COURT SHOULD GRANT THE EXTENSION

Federal Rules of Civil Procedure Rule 16, holds in pertinent part:

"**(b) Scheduling.**

**(1) Scheduling Order.** Except in categories of actions exempted by local rule, the district judge--or a magistrate judge when authorized by local rule--must issue a scheduling order:

**(A)** after receiving the parties' report under Rule 26(f); or

>     **(B)** after consulting with the parties' attorneys and any unrepresented parties at a scheduling conference or by telephone, mail, or other means.
>
> **(2) Time to Issue**. The judge must issue the scheduling order as soon as practicable, but in any event within the earlier of 120 days after any defendant has been served with the complaint or 90 days after any defendant has appeared.
>
> **(3) Contents of the Order.**
>
> **(A)** *Required Contents.* The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions.
>
> **(B)** *Permitted Contents.* The scheduling order may:
>
>> **(v)** set dates for pretrial conferences and for trial; and
>>
>> **(vi)** include other appropriate matters.
>
> **(4) Modifying a Schedule.** A schedule may be modified only for good cause and with the judge's consent.

Fed.R.Civ.P. 16(b)(4) allows the Court to amend a scheduling order upon a showing of good cause. The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements. <u>Inge v. Rock Financial Corp.</u>, 281 F.3d 613, 625 (6th Cir.2002). The good cause standard requires the party seeking relief to show that, despite its exercise of diligence, it cannot reasonably meet the scheduling deadlines. <u>S & W Enters., L.L.C. v. Southtrust Bank of Ala.</u>, 315 F.3d 533, 535 (5th Cir.2003). The Court has broad discretion to allow scheduling order modifications and considers four elements to determine if modification is appropriate: (1) the explanation for the party's failure to meet the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows the thing that would be excluded, and (4) the availability of a continuance to cure such prejudice. <u>Id.</u>, at 536.

In the present case, factors outside of the control of the plaintiffs attorneys and their experts has led to the need to seek this extension. The facts set forth, *supra*, should meet the first criteria as a death of one of the experts and the administrative issues that arose should be adequate to explain the failure to meet the deadline.

Plaintiffs' have produced a substantial set of reports to defendants. The delays associated with the requested extension have been substantially mitigated by the production of reports to date. The work contemplated will not change any conclusions, but will simply provide greater evidence relating to the conclusions presented. The defendant will *still* have over a month to evaluate these materials, and the plaintiffs will work with the defendants further mitigate any hardships with the future productions.

The continuance will still allow the trial date of September 6, 2008 to be maintained. Plaintiffs stand willing and able to further develop the deadlines associated with the Order dated March 19, 2008 (Document No. 11677).

Undersigned counsel has undertaken extensive discussion with the experts to determine an appropriate period of extension to produce final reports. It is generally considered that six (6) weeks will be needed to resolve all issues currently confronting the Plaintiffs' experts.

## IV.

### CONCLUSION

Based on the foregoing, Plaintiffs pray that the Court grant the Motion to Extend Plaintiffs' Expert Report Due Date, thereby extending the deadline to produce Plaintiffs' expert report due date for six weeks.

Alternatively, if the Court does not approve the six week extension, the Plaintiffs pray that the Court establish a telephone status conference with the parties for the purpose of selecting a different extension period.

**Respectfully Submitted,**

APPROVED PLAINTIFFS LIAISON COUNSEL

   /s/  Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing Notice of Deposition upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 30th day of April, 2008.

   /s/ Joseph M. Bruno
Joseph M. Bruno