## LEVEE BREACH LITIGATION GROUP CO-COUNSEL AGREEMENT

This Agreement is entered into with an effective date of the 7th day of June, 2006, by and between the following participating law firms:

1. **Bruno & Bruno**
   Through Joseph M. Bruno
   855 Baronne Street
   New Orleans, LA 70113
   Telephone: 504-525-1335
   Facsimile: 504-561-6775
   jbruno@brunobrunolaw.com

2. **The Law Offices of Daniel E. Becnel, Jr.**
   Through Daniel E. Becnel, Jr.
   Post Office Drawer H
   106 West 7th Street
   Reserve, LA 70084
   Telephone: 985-536-1186
   Facsimile: 985-536-6445
   dbecnel@becnellaw.com

3. **Lambert & Nelson, PLC**
   Through Hugh P. Lambert
   701 Magazine Street
   New Orleans, LA 70130
   Telephone: 504-581-1750
   Facsimile: 504-259-0517
   hlambert@lambertandnelson.com

4. **Fayard & Honeycutt**
   Through D. Blayne Honeycutt
   519 Florida Avenue, SW
   Denham Springs, LA 70726
   Telephone: 225-664-4193
   Facsimile: 225-664-6925
   dbhoneycutt@fayardlaw.com

-1-

Fayard & Honeycutt co-counsel
Murphy Law Firm
**Through Peyton Murphy**
7035 Jefferson Highway
Baton Rouge, LA 70806
Telephone: 225-928-8800
Facsimile: 225-928-8802
pmurphy@murphylfirm.com

5. **Gainsburgh, Benjamin, Meunier & Warshauer, LLC**
Through Gerald E. Meunier
2800 Entergy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: 504-522-2304
Facsimile: 504-528-9973
gmeunier@gainsben.com

6. **Law Offices of Ashton R. O'Dwyer, Jr.**
Through Ashton R. O'Dwyer, Jr.
One Canal Place
365 Canal Street
Suite 2670
New Orleans, LA 70130
Telephone: 504-561-6561
Facsimile: 504-561-6560
arod@odwyerlaw.com

7. **Jacobs & Sarrat**
Through Darleen M. Jacobs
823 St. Louis Street
New Orleans, LA 70112
Telephone: 504-522-3287
dollyno@aol.com

9. **Dumas & Associates Law Corporation**
Through Walter C. Dumas
1263 Government Street, Suite 2
Baton Rouge, LA 70802
Telephone: 225-383-4701
Facsimile: 225-383-4719
wdumas1@bellsouth.net

-2-

Each of the law firms named above shall have until the date of June 12, 2006 at 4:30 p.m. to execute this agreement and deliver it, along with their required contribution, to Joseph M. Bruno. Any law firm that does not timely do so shall not be deemed a Member of this Group unless the Executive Committee expressly allows same in writing.

The foregoing named law firms (membership contingent upon timely execution and delivery of this agreement and timely delivery of initial contribution to Group) admitted to this Group shall comprise the initial principals (Members) of this joint prosecution agreement/joint venture which shall be known as THE LEVEE BREACH LITIGATION GROUP or sometimes referred to herein as simply "The Group."

The Members have come to an agreement regarding the handling of certain individual and/or class action cases to be brought in state and/or federal court(s) on behalf of individuals, businesses and/or governmental entities (local, parish, and/or State) against the United States Corps of Engineers (U.S. Government) and/or others for damages arising out of the Hurricane Katrina flooding resulting from the design, construction, and/or maintenance of the 17th Street Canal and London Avenue Canals. The Members of the Group further agree that the work-product of the Group shall be kept confidential within the Group and shall not be disclosed except as expressly authorized by the Executive Committee.

Any Member who uses the Group's work product for purposes other than the Group's stated purpose (which may only be done with express written permission of the Executive Committee) shall compensate the Group for such use. If this Group's scope is expanded past its original stated purpose herein by agreement of the Group, unanimously, then any Member's individual client contracts dealing with such expanded purpose shall not become Group Clients, nor that fee shared with the group, unless the Individual Attorney Member and the Executive Committee expressly agree to same.

The signatory firms hereto (as well as any members added in the future by the Executive Committee) shall be referred to collectively as THE LEVEE BREACH LITIGATION GROUP, and said group has agreed to move forward with the above described litigation and in connection therewith, the Group Members agree to the following:

A.  **ADMINISTRATION**

   1.  **EXECUTIVE COMMITTEE:** There will be a five-member Executive Committee that consists of Joseph M. Bruno, Daniel E. Becnel, Jr., Hugh P. Lambert, Calvin C. Fayard, Jr., and Gerald E. Meunier. D. Blayne Honeycutt may be substituted for Calvin C. Fayard, Jr. on the Executive Committee. The Executive Committee will also serve as the Finance Committee, and the Chairman of such Committee shall be Joseph M. Bruno. The Executive Committee shall generally be charged with the duty

-3-

to represent the Group in legal proceedings, conferences, correspondence, to make assignments for the orderly accomplishment of work needed for the case(s), to determine financing needed to accomplish the goals of the Group, to make assessments upon the Group's Members and set deadlines for payment of same, to select Settlement Counsel, Lead Counsel, Trial Counsel, etc. The Members of the Executive Committee shall be empowered in all things to speak for the Group as a whole and to act on its behalf. The Executive Committee shall also have the authority to lease space, open and administer a document depository, hire and fire necessary staff and staff attorneys or outside experts, consultants, and attorneys on behalf of the Group to work for the common benefit of the Group. The Executive Committee shall establish such committees as are necessary and shall appoint such chairmen as needed. The Executive Committee shall have authority to enter into agreements with outside counsel and staff counsel as they deem necessary upon such terms and conditions as they decide upon behalf of the Group; such compensation may include a percentage of recovery. The Executive Committee shall, upon majority vote, also have the authority at anytime to admit additional members to the Group, after consultation with the then Members of the Group. Unless the membership agrees by two-thirds vote to the contrary, there shall be no greater than a combined total of 20 members and/or Funding Units as such term "Funding Unit" is used hereafter. A Member of the Executive Committee may be removed or replaced by two-thirds vote of the Executive Committee for good reason only.

2. **GROUP ADMINISTRATIVE LIAISON COUNSEL:** JOSEPH M. BRUNO shall act as Administrative Liaison for the group distributing correspondence and pleadings and acting as a point of collection of same, as well as keeping the books on a new account to be opened, which account shall be named Levee Litigation Group ("The Account") which shall be used at the direction of the Executive Committee to pay approved expenses incurred by the Group and/or reimbursement of expenses of Members of the Group. He shall also have authority to hire necessary accounting/CPA services on behalf of the Group and to obtain a federal tax id number for the Group. Administrative Liaison Counsel, if not a Member of the Executive Committee, shall be a non-voting member of such committee.

3. **TIME KEEPING ISSUES:** The Executive Committee shall promulgate time and expense keeping protocols and set reporting deadlines for same. Any time expenses not reported by the deadline set will not be considered for determining that Members' "Significant Contribution," if any, at the discretion of the Executive Committee.

-4-

B. **FINANCING**

1. Costs will be paid from the Account of the Group whenever possible. If a Group Member advances hard costs (with authority), then such Group Member shall promptly seek and be paid reimbursement of any such hard costs from the Group Fund. Only assessments actually timely paid by Members into the Group Fund are allowable for Cost Enhancement Payments as such phrase is applied herein this document. With authority of the Finance Committee, certain traditionally "held" costs of a Member, such as in-house CPA or required and authorized paraprofessional services, although "held" costs, will also then be subject to the cost enhancement payment provisions herein this agreement, unless they have been reimbursed to such Member.

2. **INITIAL ASSESSMENT:** This venture shall be financed by each law firm Member of the Group, each of which shall be deemed to initially hold one Funding Unit of the Group and shall contribute to the funding in an initial amount of Ten Thousand Dollars ($10,000.00) which shall be due and paid to the "Levee Litigation Group" contemporaneously as each Member signs this agreement, and in such additional amounts assessable pro rata among the Member Firms in good standing hereafter, or (for example, 1/15th each) upon capital call made by the Finance Committee. Additional funds required shall be assessed by Administrative Liaison Counsel upon authorization by the Finance Committee on an as-needed basis. Each Member is required to stay current on payment of future assessments for its Funding Unit(s). With the written permission of the Executive Committee and upon majority vote of the Executive Committee, a Member may commit to the funding of more than one "Funding Unit" and if such occurs, then such Member shall at all times be required to timely pay assessments for each Funding Unit that such Member is responsible for.

3. **ADDITIONAL ASSESSMENTS:** When additional assessments are made pursuant to the authority above, the assessments shall be made by e-mail or fax and certified mail. The assessment notice so transmitted shall contain the amount of the assessment required from each Member for each Funding Unit held by each Member, the deadline for its delivery to the Executive Committee in clear funds and the address for delivery. If such additional assessments are not timely paid, then the penalty shall, at the option anytime of the Executive Committee, be forfeiture by the delinquent Member of any right to COST ENHANCEMENTS as defined below. A Member who ceases making timely delivery of assessments to the Group shall become a Member not in good standing, although in the discretion of the Executive Committee, such Member may be allowed to continue performing work for the Group, even though the cost

-5-

enhancement payment provision for that Member will no longer be in effect.

C. The Members of this Litigation Group agree to actively participate in the litigation contemplated herein, and agree among themselves to work at the direction of the Executive Committee to undertake such responsibilities and actions as are necessary to further the object of this Agreement.

D. A majority vote of the Members of the Executive Committee shall be required to admit additional Members, after consultation with the Members of the Group.

E. **FEE DIVISION:** It is contemplated that the Members of the Group will receive a fee upon successful completion of their representation. Such attorney fees shall be divided as follows:

   1. **GROUP COMMON FEE AND EXPENSE FUND ("FUND"):** All of the attorney fees received by or due any Member Firm and any of its attorneys, from all individual cases and from all class action cases, all fees awarded by any Judge, as a result of any arbitration proceedings, fees paid by agreement with any defendant, fees awarded by any Court, as well as any MDL fees awarded to any Member of the Group or any employee or attorney of the Group, shall go into a GROUP COMMON FEE AND EXPENSE FUND administered by the Executive Committee which shall be distributed and divided among the Members of the Group at the conclusion of their representation as follows:

      a. All incurred costs, both hard and soft, of the Group shall first be fully satisfied and paid as shall any referral fees due any non-member firm or attorney;

      b. "Hard costs" are those normal and customary litigation costs authorized by the Executive Committee which are incurred out of office and require advanced cash out of pocket payment to third parties and which costs are usually and customarily taxed by the court as court costs and paid as such by the defendants and, if not, are designated as litigation costs and paid as such out of funds recovered on behalf of the claimant. Such costs shall include, but not be limited to, professional investigation, expert fees and costs, scientific testing and studies, deposition and court transcription costs, court filing and recording charges, printing, extraordinary copying, postage costs, outside or special personnel and/or counsel, document and

-6-

report costs, and satellite office personnel and expenses. Regardless of nature, hard or soft, if authorized costs of a Member are "extraordinary" or unique to a particular Member's assigned work task, then such expense may be periodically submitted to the Finance Committee as a "non-routine" expense which, upon approval, may be reimbursed or paid out of the Levee Litigation Group Account.

c. "Soft costs" are those normal and customary litigation costs authorized by the Executive Committee which are incurred in office or out of office and may require advanced cash out of pocket payment, but are customarily carried on the accounting records until the end of the litigation at which time at least some of such costs are reimbursable and paid out of funds recovered on behalf of the claimant and, if not, then paid out of the attorneys' fees awarded by the court or charged to the claimant. Such costs shall include, but not be limited to, telephone, fax and copy expenses, research, utilities, other investigation, personal secretarial wages and paraprofessional wages, travel, meals, and postage.

d. Hard costs of Member firms that were never timely submitted to the Finance Committee, shall be paid at actual cost without enhancement; soft costs generally are not subject to cost enhancement payments, except as may be specifically authorized by the Executive Committee on a case by case basis. Secretarial time should never be a reimbursable expense; nor shall paraprofessional time unless it is an essential need for a task authorized by the Executive Committee.

e. All assessments shall be returned to the contributing Members plus a Cost Enhancement Payment equal to three and one-half times each Member's timely paid total assessments paid theretofore, as a special cost incentive bonus for having the assessment contributions at risk; costs held by a Member, for any reason, during the litigation are not subject to this enhancement bonus - - only timely paid assessment contributions.