UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| _____ | § | |

## UNITED STATES OF AMERICA'S
## OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

MAY IT PLEASE THE COURT:  Defendant, the United States of America, hereby opposes Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 12546).

### INTRODUCTION

The deadline for amending pleadings expired more than a year ago.  Due solely to their own lack of diligence, Plaintiffs missed that deadline, and instead now seek leave to assert an entirely new claim, notwithstanding that the deadline for discovery has passed and that experts for the United States have nearly completed their reports.  Given the eleventh-hour nature of Plaintiffs' request, there can be no question that were it to be granted, the United States would suffer substantial prejudice.  Moreover, Plaintiffs' proposed amendments would be futile, as they are barred by both the administrative claim requirement and the discretionary function exception of the Federal Tort Claims Act.  For these reasons, the Court should deny Plaintiffs' motion for leave to amend.

**ARGUMENT**

On March 1, 2007, this Court entered a scheduling order which held that "the deadline for amending pleadings is now deemed lapsed." *See* Doc. 3299 (CMO No. 4) at 13.[1] Because the Court has already issued a scheduling order in this case, Plaintiffs' request for leave to amend is governed by Rule 16(b) rather than Rule 15, as Plaintiffs suggest in their motion. *See S&W Enters. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) ("We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."); *Smith v. BCE Inc.*, 225 Fed. Appx. 212, 217 (5th Cir. 2007) ("Fed.R.Civ.P. 16(b) governs the amendment of pleadings after the district court enters a scheduling order."); Doc. 3299 (CMO No. 4) at 13 (holding that, because the deadline for amending pleadings in this case has lapsed, no further amendments would be allowed unless "based on a showing of good cause as required by Fed. R. Civ. P. 16(b)").

Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). "Good cause" requires the moving party "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters.*, 315 F.3d at 535; *accord Smith*, 225 Fed. Appx. at 217. Courts consider four factors in determining whether this standard is met: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a

---

[1] The deadlines in CMO No. 4 clearly apply to this case. *See* Doc. 3299 (CMO No. 4) at 2 (exempting from the requirements of CMO No. 4 the Responder, Dredging Limitations, and St. Rita's categories of cases, but making no similar exemption for this case).

2

continuance to cure such prejudice." *Smith*, 225 Fed. Appx. at 217 (citing *S&W Enters.*, 315 F.3d at 536). Consideration of these factors does not justify a finding of "good cause" here.

I.    **Plaintiffs' Failure To Seek Timely Leave To Amend Is Attributable Solely To Their Own Lack Of Diligence.**

Plaintiffs' proffered reason for not seeking leave to amend their complaint within the time permitted is demonstrably false. Plaintiffs propose to add a claim for "Negligent Supervision and Vicarious Liability" in conjunction with the IHNC Lock Expansion Project. *See* Doc. 12546-9 ¶¶ 115-31. The gist of this claim is that the United States was negligent "in overseeing and supervising the work of [its] third party contractor," the Washington Group ("WGI"), and consequently failed to prevent WGI, in the course of performing work at the East Bank Industrial Area ("EBIA") adjacent to the IHNC, from committing negligence that resulted in the flooding of New Orleans East, the Lower Ninth Ward, and St. Bernard's Parish. *See generally id.* ¶¶ 115-21.

Plaintiffs argue that they were not able to assert this claim against the United States until recently, when they received a draft report by Dr. Bob Bea that purports to address "reasons for the failure and overtopping of the IHNC floodwalls." Doc. 12546-2 at 5-8. According to Plaintiffs,

> Dr. Bea painstakingly explains how the remediation work performed by WGI under the control and supervision of the Corps substantially weakened and undermined the alleged flood walls and other flood control structures bordering the Lower 9th Ward and contributed to their ultimate catastrophic failure during and after Hurricane Katrina. *On this basis*, Plaintiffs' counsel concluded that a separate claim for negligence against the Corps is appropriate.

*Id.* at 7-8 (emphasis added).

Contrary to Plaintiffs' argument, Bea's draft report does not provide a new basis for asserting this claim against the United States. In fact, the pertinent portions of Bea's draft report

3

have been available to Plaintiffs' counsel for more than a year. In a declaration filed by Plaintiffs' counsel with their initial disclosures in the MRGO track on April 16, 2007, Bea detailed his findings concerning WGI's work at the EBIA. *See* Ex. 1 ¶¶ 22-25.[2] These findings are almost identical to the pertinent portions of Bea's "new" draft report. *Compare id. with* 12564-4 & 12546-5 ¶¶ 31-44. For example:

| Ex. 1 (April 16, 2007 Bea Declaration) ¶ 25 | March 2008 Bea "Draft Report" ¶ 44 |
|---|---|
| The information that is available clearly indicates a high degree of correlation with the site remediation work conducted by WGI at the EBIA sites and the breach locations in the flood protection structure adjacent to the Lower 9th Ward. This remediation work (removal of soils, formation of cavities, vibrations) very probably had important effects on the soils relied upon to provide stability and protection for the flood protection structure (Figure 16). Removal and disturbance of the surface soils overlying the permeable subsoils (marsh layers) would have facilitated the under seepage discussed earlier in this declaration. . . . | The information that is available clearly indicates a high degree of correlation of the site remediation work conducted by WGI at the EBIA sites and the breach locations in the flood protection structure adjacent to the Lower 9th Ward. This remediation work (removal of soils, formation of cavities, vibrations) very probably had important effects on the soils relied upon to provide stability and protection for the flood protection structure. Removal and disturbance of the surface soils overlying the permeable subsoils (Marsh and Swamp layers) would have facilitated the under seepage. |

Obviously, there was no "new" information obtained from Bea that just now enabled Plaintiffs' counsel to assert a claim related to WGI's work on the Lock Expansion Project.

The ultimate proof that Bea's draft report was not a prerequisite to a claim related to the IHNC Lock Expansion Project is the assertion by Plaintiffs' counsel–in March 2007, in the MRGO case–of a nearly identical claim of "negligent supervision" by the United States. *See* Doc.12546-4 (Bruno Decl.) ¶ 6 ("Allegations were also made against the Corps as the

---

[2] Dr. Bea's affidavit is dated April 16, 200*6*. The United States believes this to be an error, as the initial disclosures were served on April 16, 200*7*.

4

contracting party responsible for the negligent performance of WGI's work in the MR-GO Master Consolidated Class Action Complaint filed on March 15, 2007."). Indeed, almost three years ago, in September 2005, Plaintiffs' counsel, again without the benefit of Bea's draft report, were willing and able to allege that WGI's work at the EBIA caused damages. *See* Doc.12546-4 (Bruno Decl.) ¶ 6 ("Allegations against WGI for its negligent work were first made in a Complaint filed against WGI in September of 2005."). Clearly, had they been diligent, Plaintiffs' counsel could have included a negligent supervision claim against the United States within the prescribed time for doing so.[3]

## II.     The Proposed Amendment Would Disrupt The Trial Schedule And Cause Prejudice To The United States.

"An amendment that a party raises late in the pre-trial life of a lawsuit has a significant tendency to disrupt trial proceedings." *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992). Accordingly, the Fifth Circuit "has recognized that a district court does not abuse its discretion by refusing to allow an eleventh-hour amendment." *Hypes v. First Commerce Corp.*, 134 F.3d 721, 728 (5th Cir. 1998); *see also, e.g., Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1199-1200 (5th Cir. 1995) (holding that district court did not abuse its discretion

---

[3] Plaintiffs also seek to amend their pleading to include claims alleging that the operation and maintenance of the MRGO caused a foreseeable erosion of the channel, eventually impairing the levees. According to Plaintiffs, they "recently discovered" documents indicating the United States was aware of possible widening caused by erosion. *See* Doc. 12546-2 at 3. This "recently discovered" document, Bates No. PET-011-000000764, was produced to Plaintiffs *eight months ago*, on September 7, 2007. *See* Doc. 7476. As with Plaintiffs' false claims regarding Bea's report, the Court should reject this asserted basis for Plaintiffs to amend at this late date.

5

by refusing amendment sought ten months after amendment deadline, where new matter could have been discovered and asserted earlier).

The prejudice to the opposing party caused by an eleventh-hour amendment is also a factor to consider. *See, e.g.*, *Little*, 952 F.2d at 846 (finding the delay "particularly egregious" where "the plaintiffs did not propose their amendment until well over a year after they had instituted their actions and several months after discovery on the actions had effectively terminated"); *Daves*, 661 F.2d at 1025 ("Considering a motion on the eve of trial after discovery and after an unexplained nineteen-month delay, the trial court acted within its discretion in refusing to allow appellant to amend her complaint."). The prejudice that would be caused to the United States by permitting Plaintiffs to assert a new claim so late justifies denial of leave to amend here.

The United States would be prejudiced in the preparation of its expert witnesses. For months, the United States has asked its experts to prepare reports regarding the merits of Plaintiffs' claims. *See* Ex. 2 (Mosher Decl.) ¶ 3; Ex.3 (Wolff Decl.) ¶ 3. Of course, because none of Plaintiffs' claims concerned the Lock Expansion Project or the EBIA, these experts have understandably focused their efforts elsewhere. *See* Ex. 2 (Mosher Decl.) ¶¶ 4-6; Ex.3 (Wolff Decl.) ¶¶ 4-6. If these experts were now to be required to examine Plaintiffs' proposed new claim regarding work done at the EBIA, they would require an additional three months to complete their reports, meaning their reports would not be available until the middle of September. *See* Ex.2 (Mosher Decl.) ¶¶ 7-8; Ex. 3 (Wolff Decl.) ¶¶ 7-8.

The consequences of this delay, of course, would impact the ability of the United States to prepare its forthcoming summary judgment motion and to prepare for trial. The only way to

cure this prejudice would be to revise significantly the *Robinson* schedule, including moving the trial date to 2009.

And in all likelihood, the *Robinson* schedule is not all that would be affected by the proposed amendment; the other categories of *Katrina* cases would probably be affected as well. On May 1, 2008, the Court entered Case Management Order No. 7.  That order, which sets forth a schedule for the Levee, MRGO, and Barge categories, creates a hiatus, from September 1, 2008 to November 1, 2008, during which the filing of summary judgment motions is prohibited. *See* Doc. 12935 (CMO No. 7) at 2.  This period was carved out in recognition of the anticipated trial in *Robinson,* which the Court has long intended to try in September.  Were the Court to permit the *Robinson* plaintiffs to amend their complaint now, conflicts with the new schedule that the Court recently adopted for three other categories would almost certainly arise.

Plaintiffs argue that because their counsel made allegations relating to the Lock Expansion Project and the EBIA in the MRGO cases, the United States had ample notice of this claim and amendment should therefore be permitted. *See* Doc. 12546-2 at 4.  The deficiencies of this argument are apparent.  Obviously, that a claim was asserted by *other* plaintiffs, in *other* cases—cases that are not scheduled to be tried until July of 2009.  Because those cases are on track for trial nearly a year after this one, the United States has not focused on the claims that are unique to those cases.  As noted, the United States' experts have not even begun their analyses of the claim that Plaintiffs now, belatedly, seek to import into this case.  The United States, with good reason, has not prepared to defend a claim related to the IHNC Lock Expansion Project in this case, which, until now, has dealt exclusively with alleged flooding from the MRGO.

7

Because Plaintiffs' undue delay in seeking to assert their negligent supervision claim would cause prejudice to the United States, the Court should deny Plaintiffs' motion.

### III.     Untimely Amendment Is Not Warranted Because The Claims Would Be Futile.

Finally, good cause for the requested untimely amendment does not exist because the amendment, if allowed, would prove to be of no import whatsoever. Even if the delay in seeking amendment were not solely attributable to Plaintiffs' own lack of diligence, and even if amendment would not cause a substantial disruption to the Court's schedule and incurable prejudice to the United States, Plaintiffs' motion should be denied simply because the proposed amendments, setting forth claims beyond the limited jurisdiction of the Court, are in no way important enough to justify relief under Rule 16(a).[4] If amendment were permitted, Plaintiffs' new claims would be subject to dismissal as matters of law. Even under the more liberal standard of Rule 15, the futility of the proposed amendment requires that a request for leave to amend be denied. *See McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989) ("The amendment proffered by [plaintiff] was futile, and thus the district court was justified in denying leave to amend."); *Bauchman ex rel. Bauchman v. W. High Sch.*, 132 F.3d 542, 562 (10th Cir. 1997) ("A court properly may deny a motion for leave to amend as futile when the proposed amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment."); *Wilson v. Am. Trans Air, Inc.*, 874 F.2d 386, 392 (7th Cir. 1989) ("An amendment is a 'futile gesture' if the amended pleading could not survive a motion for summary judgment."); *In re Katrina Canal Breaches Consol. Litig.*, Civil

---

[4] Plaintiffs have demonstrated just how insignificant they view their proposed amendments by waiting so long to seek to assert them. *See Baylor Univ. Med. Ctr. v. Epoch Group, L.C.*, No. Civ.A. 303CV2392G, 2005 WL 2124126, at *8 (observing that plaintiff's "failure to timely amend its claims undercuts the importance of the amended complaint").

Action No. 05-4182, 2008 WL 659467, at *2 (E.D. La. March 5, 2008) (holding that it was "unnecessary to give plaintiffs the opportunity to amend their complaints" because "amendment would be futile") (Duval, J.).  Plaintiffs' proposed amendments would be futile in several respects.

First, Plaintiffs' new claim related to the IHNC Lock Expansion Project would be barred by the administrative claim requirement of the FTCA, 28 U.S.C. 2675(a).  Prior to bringing a lawsuit, plaintiffs are required to provide an administrative claim to the agency responsible for the claimed injury.  This requirement is jurisdictional.  *See McAfee*, 884 F.2d at 222-23 ("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the Tort Claims Act, and absent compliance with the statute's requirement the district court was without jurisdiction."); *Green v. United States*, Civ. A. No. 02-616, 2003 WL 21500553, at *3 (E.D. La. June 24, 2003) (Duval, J.).

Although claimants are not required to specifically enumerate all of their *legal* theories in their administrative claims, they are required to provide the United States "facts sufficient to enable it thoroughly to investigate its potential liability." *Frantz v. United States*, 29 F.3d 222, 224 (5th Cir. 1994).  "[A] plaintiff cannot 'present one claim to the agency and then maintain suit on the basis of a different set of facts.'" *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012 (7th Cir. 1991) (quoting *Dundon v. United States*, 559 F. Supp. 469, 476 (E.D.N.Y. 1983)).

The administrative claims presented to the United States by the six Plaintiffs in this case do not reference or even suggest that acts or omissions related to the IHNC, the Lock Expansion Project, or the EBIA played any role in causing their injuries.  Rather, Plaintiffs' claims point *exclusively* to a completely different cause of their alleged injuries–flooding from the MRGO.  A

claim that certain property was damaged by the flooding of the MRGO would not have put the United States on notice to investigate work that occurred at the EBIA. Plaintiffs' administrative claims are, by their own terms, entirely based on the MRGO and wholly unrelated to the Lock Replacement Project or any part of it. In short, Plaintiffs' claims do not set forth sufficient facts to lay an adequate foundation for their proposed amendment.

Because Plaintiffs propose to "maintain suit on the basis of a different set of facts" than those presented in their administrative claims, the Court would lack jurisdiction to consider the proposed amendment, rendering it futile. *See, e.g.*, *McAfee*, 884 F.2d at 222-23 (holding that proposed amendment was futile because plaintiff "failed timely to file an administrative claim with the appropriate government agency as required by 28 U.S.C. § 2675(a)").

Second, Plaintiffs' proposed claim related to the IHNC Lock Expansion Project is futile because it would be barred by the discretionary function exception to the FTCA, which precludes claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Plaintiffs would allege that the United States was negligent "in overseeing and supervising the work of [its] third party contractor," WGI, and consequently failed to prevent WGI from causing damage to the flood control structures that protected their property. *See generally id.* ¶¶ 115-21. In other words, Plaintiffs seek to challenge the manner in which the United States supervised its contractor–a type of claim plainly barred by the discretionary function exception. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 819-20 (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private

individuals, it is exercising discretionary regulatory authority of the most basic kind."); *Guile v. United States*, 422 F.3d 221, 230-31 (5th Cir. 2005) ("Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function."); *Andrews v. United States*, 1212 F.3d 1430, 1440 (11th Cir. 1997) ("Nor is the government liable for negligent failure to supervise [its contractor]. The discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of independent contractors."); *Kirchmann v. United States*, 8 F.3d 1273, 1276-77 (8th Cir. 1993) ("If arguably based on policy considerations, both negligence in supervising a contractor and the failure to supervise a contractor at all are included in the decisions protected by the discretionary function exception."); *Vallier v. Jet Propulsion Lab.*, 120 F. Supp. 2d 887, 914 (C.D. Cal. 2000) ("[M]any courts have found that the government's negligent supervision or even total failure to supervise are discretionary decisions protected by the discretionary function exception.") (collecting cases).

Because Plaintiffs' proposed "negligent supervision" claim related to the IHNC Lock Expansion Project would be subject to dismissal, it would be futile for the Court to permit amendment.

## CONCLUSION

Plaintiffs have no good reason for having waited until after the deadline for amendments to assert a new claim against the United States. Granting Plaintiffs' request would cause substantial prejudice to the United States and result in a severe disruption of the trial schedule in both this case and the other *Katrina* categories of cases. Finally, the proposed amendment would add nothing to Plaintiffs' case, as their proposed claim is barred by the administrative claim

11

requirement and the discretionary function exception of the FTCA.  The Court should therefore deny Plaintiffs motion.

                Respectfully Submitted,

                GREGORY G. KATSAS
                Assistant Attorney General

                PHYLLIS J. PYLES
                Director, Torts Branch

                JAMES G. TOUHEY, JR.
                Assistant Director, Torts Branch

                s/ Robin D. Smith
                Robin D. Smith
                Senior Trial Counsel, Torts Branch, Civil Division
                U.S. Department of Justice
                Benjamin Franklin Station, P.O. Box 888
                Washington, D.C.  20044
                (202) 616-4400 / (202) 616-5200 (Fax)
                Attorneys for the United States

                s/ Jeffrey P. Ehrlich
                Jeffrey P. Ehrlich
                Trial Attorney, Torts Branch, Civil Division
                U.S. Department of Justice
                Benjamin Franklin Station, P.O. Box 888
                Washington, D.C.  20044
                (202) 616-4400 / (202) 616-5200 (Fax)
                Attorneys for the United States

**CERTIFICATE OF SERVICE**

    I, Jeffrey P. Ehrlich, hereby certify that on May 6, 2008, I served a true copy of the United States of America's Opposition to Plaintiffs' Motion for Leave to File First Amended Complaint upon all parties by ECF.


                                           s/    Jeffrey P. Ehrlich