# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*  05-5531 | * | |
| *Mumford v. Ingram*  05-5724 | * | |
| *Lagarde v. Lafarge*  06-5342 | * | JUDGE |
| *Perry v. Ingram*  06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*  06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAG. |
| *Lafarge v. USA*  07-5178 | * | JOSEPH C. WILKINSON, JR. |
| | * | |

## BARGE PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION OF LAFARGE NORTH AMERICA INC. FOR RECONSIDERATION OF THE APRIL 21, 2008 ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL

MAY IT PLEASE THE COURT:

Barge Plaintiffs, through undersigned, oppose Lafarge's efforts to induce reversal of this Court's order compelling production of surreptitiously recorded and secreted putative class member interviews.  Lafarge fails in its Motion for Reconsideration to identify any error in the exhaustively researched, well-supported and reasoned opinion.  In summary, this Court held that Lafarge must produce its surreptitious, recorded interviews of the putative class, in accord with the long standing, majority, precedential rule that nonconsensual recordings by an attorney or his agent vitiate the protection of the work product doctrine.  Though ample jurisprudence cited by the Court holds powerful sway, this Court made additional inquiry under Fed. R. Civ. P. 1, which admonishes that the Federal Rules are to be interpreted so as to secure the just, speedy and inexpensive determination

of every action and proceeding.  This Court found that Fed. R. Civ. P. 1 does not enhance Lafarge's position, or justify Lafarge's actions.  Plaintiffs join the Court in its analysis and conclusions.

Lafarge argues that jurisprudence supporting the Court's and plaintiffs' position is "no longer good law."  Lafarge states that *Chapman & Cole v. Itel Container Int'l, B.V.*, 865 F.2d 676 (5th Cir. 1989) is based entirely upon the 1974 ABA Formal Opinion 337, and that this opinion was vacated in 2001 by ABA Formal Opinion 01-422.  LNA is incorrect on both counts.  *Chapman & Cole* relied also upon *Parrott v. Wilson*, 707 F.2d 1262 (11th Cir. 1983).  *Parrott* is quoted in *Lyman v. St. Jude Medical S. C., Inc.*, 05-C-122 (E. D. Wis. 6-18-2007) where, though denying that unethical conduct vitiates <u>attorney client privilege</u>, that Court cited *Parrott* as an example wherein unethical conduct vitiates <u>work product privilege</u>.  *Lyman* post-dates the 2001 ABA opinion.  *Cf. Rambus, Inc. v. Infineon Technologies, AG*, Civil Action No. 3:00 cv 524  (E. D. Va. 2004).  The foregoing echo and analogize with this Court's finding, and the Fifth Circuit's, that "the clandestine taping of a telephone conversation implicitly waives the protection of the work product doctrine because it violates the American Bar Association's Model Rules of Professional Conduct." Chapman & Cole, 865 F.2d at 686.  The entire body of jurisprudence and reasoning on which this Court's opinion is also based is current (good law),  and still supportive of the same conclusions reached in *Chapman & Cole,* in the Fifth Circuit, and here in this Court.

ABA Formal Opinion 01-442 explicitly reflects the committee's abstention from the question of the ethics of misrepresentation of identity and purpose during a nonconsensual recorded conversation.[1]   Further, an ABA opinion is instructive, but not binding on this Court.

---

[1]"The transcripts also reveal, and Lafarge does not deny, that the investigators identified themselves only as working for Centanni Investigative Agency, and did not state that they were working for Lafarge or the barge interests, or for attorneys for those parties."  Opinion, Record Doc. 12605, at pp 5 - 6.  In several of the few transcripts provided, interviewees did ask for identification and explanation for the inquiry, and were told only that the interviewer was

"It is not illegal in South Dakota for one party to a conversation to record the conversation without the other party's knowledge or consent. *State v. Braddock*, 452 N.W.2d 785, 788 (S.D. 1990) ("[T]he consent of one party to the recording of a communication takes that communication out of the scope of SDCL ch. 23A-35A, whether the communication is oral or by wire.") It is, however, unethical for an attorney or his investigator or other agent to record a conversation without the other party's knowledge or consent because such conduct involves deceit or misrepresentation. See *Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir.) (while tape recording is not illegal, code of conduct imposes higher standard than mere legality), cert. denied, 464 U.S. 936 (1983); *Roe v. Operation Rescue*, 1989 WL 66452 at * 3 (E.D.Pa. 1989), aff'd 898 F.2d 142 (3rd Cir.) (Table), cert. denied, 498 U.S. 958 (1990); *Miano*, 148 FRD at 76; ABA Committee on Ethics and Professional Responsibility, Formal Op. 337 (1974) (ruling that "no lawyer should record any conversation whether by tapes or other electronic device, without the consent or prior knowledge of all parties to the conversation."); ABA Committee on Ethics and Professional Responsibility, Informal Op. 1320 (declining to reconsider Formal Op. 337 and specifically ruling that lawyer's conduct in causing investigator to tape record conversation between investigator, who knows tape recording is being made, and sales clerk, who does not, is unethical). Although the American Bar Association's Formal Opinions do not carry precedential weight, courts look to them for guidance in interpreting the Model Rules. *Aiken v. Business and Industry Health Group, Inc.*, 885 F. Supp. 1474, 1478 (D.Kan. 1995); *Olson v. Snap Products, Inc.*, 183 FRD 539, 544 (D.Minn. 1998); *In re United Mine Workers of America Employee Benefit Plans Litigation*, 156 FRD 507, 511-12 (D.D.C. 1994). Thus, the investigator's conduct, at the direction of Mr. Damgaard and Mr. Shattuck, in tape recording the conversations without the consent of sales person Bill at Elliott and of Jon Becker at A-Tech violated Rules 4.2, 5.3 and 8.4 because "the undisclosed use of a recording device is an element of deception, artifice, and trickery which does not comport with the high standards of candor and fairness by which all attorneys are bound." *People v. Selby*, 198 Colo. 386, 390, 606 P.2d 45, 47 (1979)." *Midwest Motor Sports v. Arctic Cat Sales, Inc.*, 144 F.Supp.2d 1147 (S. D. 2001) (emphasis added).

ABA Formal Opinion 01-422 is not universally accepted.  See, e.g. *New Mexico State Bar Opinion 2005-03 (2005),* that states that a lawyer may not secretly record a conversation if the lawyer believes that the witness would not consent to being interviewed if the witness knew the conversation was being recorded.

Also, "[m]embers of the Committee believe that lawyers in Arizona do not expect that opposing counsel is surreptitiously recording their telephone conversation.  The unrevealed recording

from Centanni Investigative, and was just trying to find out what happened with the barge.

therefore continues, at least in this State, to involve an element of deception that does not comport with Arizona ethical standards." *State Bar of Arizona Ethics Opinion 95-03.*[2] See also, *State Bar of Arizona Ethics Opinion 00-04.*[3]

> "Surreptitious recording of a conversation or statement occurs where one party to the conversation (the recording party) has consented to the recordation but at least one other party to the conversation or statement is not aware of the recording. Because surreptitious recording of conversations or statements by an attorney may involve an element of trickery or deceit, it is generally improper for an attorney to engage in surreptitious recording even if the recording is legal under state law. For the same reason, a lawyer generally may not direct or even authorize an agent to surreptitiously record conversations, and may not use the "fruit" of such improper recordings." Colorado Bar Association Ethics Opinion 122, July 19, 2003).

Clearly, this Court recognizes that the Fifth Circuit has not deemed Formal Opinion 01-442 sufficiently compelling to justify reversal of the long standing, majority, precedential rule that clandestine recordings vitiate the work product doctrine. The long standing rule is not vacated.

Undersigned believe that the Court's analysis is served by recognition that Lafarge's regard for its purported work product oscillates. Lafarge has demonstrated intense resistance to disclosure of the interviews, yet will abdicate its stance in instances in which Lafarge perceives a tactical advantage to disclosure. In response to multiple discovery requests, Lafarge disclosed virtually nothing of the interviews. The full extent of Lafarge's activities did not come to light until ambush

---

[2]This opinion is the Arizona State Bar Association's current view of the issue, and appears on its website.

[3]"We hasten to add that, while an attorney may advise a client about the client's right to surreptitiously tape record conversations, the attorney may not participate in the surreptitious tape recording of a conversation, except as permitted by our prior opinions. Further, even if a client does not raise the issue of surreptitious tape recording, the attorney may on the attorney's own initiative advise the client about the client's right to surreptitiously tape record conversations under Arizona law. Finally, attorneys may not use third parties to tape record conversations which an attorney ethically cannot tape record under the prior opinions of the Committee, Ariz. Ops. 75-13, 90-02, and 95-03."

of a putative class member during his deposition, and the subsequent wrangling over disclosure of

the remaining interviews, and Lafarge's efforts to prevent the deposition of the private investigator,

Wayne Centanni. In the putative class member-deposition's aftermath, Lafarge made various offers

in February 2008 to provide a limited number of interviews in exchange for various unacceptable

concessions by plaintiffs' counsel. Now, following this Court's order compelling their production,

Lafarge offers to tender all of the interviews and pretermit its Motion for Reconsideration if

undersigned will agree to withdraw with prejudice its Motion for Protective Order. Memo In

Support of Motion for Reconsideration, p. 2. Lafarge demonstrates its intent to use the interviews

as bargaining capital, when their utility as stealth weaponry against an unsuspecting putative class

and its attorneys falls into doubt. The defense seeks to bargain against further inquiry by

undersigned or the Court into their questionable conduct, suggesting that if the interviews are

precluded, they have no further purpose in the undersigneds' hands.[4] This view - an effort to avoid

the light of day - should not be countenanced.

Barge Plaintiffs adopt by reference the sections of their original Motion to Compel pertinent

to these matters (Record Doc. Record Doc. 11578), and of their Motion for Protective Order (Record

Doc. 11765).

Respectfully submitted,

/s/ Brian A. Gilbert,
Brian A. Gilbert, Esq.(21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street

---

[4]Preclusion is not the ultimate remedy for circumstances on which the jurisprudence underlying this Court's order to compel is based. The circumstances here can become only more clear with disclosure, potentially affording additional remedies, including but not limited to judicial declaration and adverse inference, and those arising under the crime-fraud exception. Some are sought in the Barge Plaintiff's now-pending Motion for Protective Order, while others may be the subject of future motion practice, depending upon what disclosure reveals.

New Orleans, Louisiana 70113
    Telephone: (504) 885-7700
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail: bgilbert@briangilbertlaw.com

/s/ Lawrence D. Wiedemann,
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail: lawrence@wiedemannlaw.com,
    karl@wiedemannlaw.com, karen@wiedemannlaw.com,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
    Telephone: 504-834-0646
    e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
    Voice: 202-862-4320
    Cell:   202-549-1454
    Facsimile:  800-805-1065 and 202-828-4130
    e-mail: rick@rickseymourlaw.net,

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
    Telephone: (212) 608-4400

Facsimile: (212) 227-5159
e-mail: lwilson@wgdnlaw1.com, ___ ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
      Telephone: 212-869-3500 ext. 235
      Facsimile:  212-398-1532
      e-mail: a.fuchsberg@fuchsberg.com,
      l.kelmachter@fuchsberg.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 7 day of May, 2008.

\s\Brian A. Gilbert