UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| *In Re:* KATRINA CANAL BREACHES *CONSOLIDATED LITIGATION* | * * * * * * | CIVIL ACTION NO.: 05-4182 "K"(2) <br><br> JUDGE DUVAL <br><br> MAG. WILKINSON |
| *************************************************** | | |
| PERTAINS TO: | * * | |
| INSURANCE 07-3432 (Landry v. Allstate) *************************************************** | * | |

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT

MAY IT PLEASE THE COURT:

Allstate Insurance Company ("Allstate") submits this Memorandum in Support of its Motion to Enforce Settlement Agreement with regard to the claims of Loney Landry. Allstate asserts that the plaintiff has previously voluntarily settled her claims with Allstate and that, therefore, this Court should enter an Order enforcing that settlement agreement and dismissing this action. (See Settlement Agreement attached hereto as Exhibit "A.")

### Background

Prior to the passage of Hurricane Katrina Allstate had issued policy number

015355163 to Loney Landry for property located at 2221 Painters Street in New Orleans, Louisiana. Allstate provided available coverages for the dwelling under Coverage A of its policy in the amount of $89,000, under Coverage B in the amount of $8,900 and contents coverage in the amount of $44,500. In addition, Allstate provided coverage for additional living expenses under the terms of the policy.

After the passage of Hurricane Katrina, Allstate established a claim file bearing number 5113848229 regarding Ms. Landry's claims and on September 8, 2005 issued an initial additional living expense payment in the amount of $3,280.00 to Ms. Landry. Subsequently, investigations of the plaintiff's home conducted on or about September 20, 2005, indicated that the home had been inundated with six feet of flood water and that all of the dwelling damage was related to flood and not wind. Initial investigations did indicate, however, that the plaintiff's home had sustained some limited damage to a chain link fence and a shed located in back of the house. In regards to this damage, the plaintiff was issued a check in the amount of $57.99 on December 9, 2005, and a subsequent check for $600.00 on January 18, 2006.

Ms. Landry was not satisfied with these payments and, thereafter, on August 23, 2006, Karen Emerson, a mediation coordinator with Allstate, noted that she had spoken to the claimant who indicated that the remaining issue that she had with Allstate was the damage that she claimed was sustained by two sheds, not one, by wind.

Accordingly, on September 18, 2006, the mediation was held and was attended by the insured, an Allstate representative, and attorney Brian Eiselen of the Connick and Connick Law Firm. At that time, Ms. Landry agreed to settle for a total payment of $2,511.74 as is evidenced in Exhibit "A".

Prior to the mediation, on October 7, 2005, an inspection of the plaintiff's home had been performed which revealed no roof damage. (See Exhibit "B")

On that same date, photographs of the plaintiff's home were taken which also revealed no roof damage. (See Exhibit "C")

In addition, on the date of the mediation, September 18, 2006, twenty-one additional photographs of the plaintiff's home were taken in which it was verified that the home had sustained no wind damage. (See September 18, 2006 photos attached as Exhibit "D", in globo)

## **Argument**

Louisiana Civil Code article 3071 governs the enforcement of settlement agreements and provides that a transaction or compromise[1] "must be either reduced into writing or recited in open court." La.C.C. art. 3071. The settlement agreement between Plaintiff and Allstate was, indeed, reduced to writing, as contemplated by the Civil Code. *See* Exhibit "A." In pertinent part, the mediation settlement agreement provides:

> This settlement amount is full, complete, and a total final payment by the insurance company to the homeowner for the claim brought to mediation. Both parties release any and all claims of any kind whatsoever against one another, except that if the homeowner discovers additional insured damage that was not known to the parties prior to this mediation, the insured may file a supplemental claim which shall be treated as a new claim.

Importantly, the Settlement Agreement further provides that "both parties recognize that this is a final and enforceable contract."

---

[1] Article 3071 defines a "transaction or compromise" as "the agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing." La. C.C. art. 3071.

Under such circumstances, Plaintiff cannot possibly recover against Allstate because she has clearly and unequivocally released these claims. *See, e.g., Gaubert v. Toyota Motor Sales USA, Inc.*, 770 So.2d 879, 884 (La. App. 1st Cir. 2000) (affirming dismissal of claims because release clearly and unambiguously released the claims against the insurer); *Sauerwin v. State Farm Mut. Auto Ins. Co.*, 490 So.2d 449, 450 (La. App. 5th Cir. 1986) (affirming dismissal of plaintiff's petition because plaintiff released "any and all claims" arising out of the loss at issue and, therefore, plaintiff's claims were barred as a matter of law under Article 3071); *see also Tulane Prop. V. General Star Indemn. Co.*, 2003 U.S. Dist. LEXIS 5751 at *9-11 (E.D. La. Apr. 7, 2003) ( finding plaintiff's claims against the insurer barred as a matter of law under Article 3071 based on settlement agreement, and entering order enforcing that agreement and dismissing plaintiff's claims).

Moreover, the strong public policy favoring settlement also weighs in favor of granting this motion and refusing to allow plaintiff to re-litigate issues that she already voluntarily released. *Bass v. Phoenix Seadrill/78, Ltd.*, 749 F.2d 1154, 1164 (5th Cir. 1985) ("[P]ublic policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation"); *Miller v. Republic Nat'l Life Ins. Co.*, 559 F2d 426, 428 (5th Cir. 1977) ("Settlement agreements are 'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits").

Undersigned counsel has discussed this point with Plaintiff's attorney to no avail.[2] Plaintiff contends that the damages which she now seeks were not known to Plaintiff at the time of the mediation.[3] Allstate submits, however, that Plaintiff does not seek to recover

---

[2] *See* letter of August 1, 2007, attached hereto as Exhibit "E."

[3] *See* Exhibit "E."

"additional insured damage that was not known to the parties prior to [the] mediation." Plaintiff seeks to recover supposedly undiscovered damages to her roof and to contents. But it is apparent that any such damage to the roof or contents would have been discovered and known to plaintiff at the time of the mediation, which occurred a year after the hurricane allegedly damaged plaintiff's property. Thus, what plaintiff really seeks is to recover additional payments for damage to contents inside of the home as well as damage to the structure that she was clearly and indisputably aware at the time of the mediation, and for which she therefore already received payments and released.

The fact that plaintiff retained an estimator in June of 2007, almost two years after the passage of Hurricane Katrina, that allegedly determined there was roof damage does not alter this result. The mediation settlement agreement only allows for newly discovered damage that was hidden and could not have been discovered prior to the mediation - not damages that were known, or should have been known to plaintiff at the time of the mediation. Certainly, if there was damage to the roof, it could have been easily discovered before the mediation. Moreover, the passage of almost two years from the time of the hurricane to the time that the plaintiff's inspection was done in June of 2007 suggests that the plaintiff's newly discovered roof damage could not causally be connected to the occurrence of the hurricane two years earlier.

Further, plaintiff's claim regarding the damaged contents is even more absurd given that any hurricane-related damaged caused to contents would have been apparent immediately after the storm, and certainly within a year after that storm prior to the mediation. Plaintiff simply cannot suggest that $34,750.00 of contents damages (see plaintiff's demand letter of July 13, 2007 attached as Exhibit "E") was only discovered after

the date of the mediation.

## Conclusion

For all of the foregoing reasons, Allstate requests that this Court enforce the settlement agreement entered into between Allstate and plaintiff and dismiss the plaintiff's claims against Allstate, with prejudice.

Respectfully submitted,

/s/ Scott G. Jones
SCOTT G. JONES #14408
INABNET & JONES, L.L.C.
1331 West Causeway Approach
Mandeville, LA 70471
Telephone: 985-624-9920
Facsimile:  985-624-9940

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

I further certify that there are no non-CM/ECF participants in this case.

/s/ Scott G. Jones
Scott G. Jones (Bar No. 14408)