United States Court of Appeals
Fifth Circuit

**F I L E D**

April 11, 2008

Charles R. Fulbruge III
Clerk

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED

MAY _ 9 2008

LORETTA G. WHYTE
CLERK

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

No. 08-30145

D.C. Docket No. 2:05-CV-4182
2:07-CV-5528

IN RE:  KATRINA CANAL LITIGATION BREACHES

-----------------------------------------------------

STATE OF LOUISIANA, etc; ET AL

        Plaintiffs - Appellants

   v.

AAA INSURANCE; ET AL

        Defendants - Appellees

    Appeals from the United States District Court for the
Eastern District of Louisiana, New Orleans.

Before HIGGINBOTHAM, STEWART, and ELROD, Circuit Judges.

### J U D G M E N T

    This cause was considered on the record on appeal and was argued by counsel.

    It is ordered and adjudged that the judgment of the District Court is affirmed.

    IT IS FURTHER ORDERED that each party to bear its own costs on appeal.

ISSUED AS MANDATE: MAY 0 5 2008

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: _____
        Deputy   MAY 0 5 2008

New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 11, 2008

No. 08-30145

Charles R. Fulbruge III
Clerk

IN RE: KATRINA CANAL LITIGATION BREACHES

STATE OF LOUISIANA; ETC., ET AL.

Plaintiffs - Appellants

v.

AAA INSURANCE; ET AL.

Defendants - Appellees

Appeals from the United States
District Court for the Eastern District of Louisiana
USDC No. 05-4182

Before HIGGINBOTHAM, STEWART, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The Attorney General of Louisiana filed a class action, naming the State and numerous Louisiana citizens as Plaintiffs. The class action alleged that the Defendant insurance companies failed to pay covered insurance claims following Hurricanes Katrina and Rita and as a result breached the insurance contracts to which the State is a partial assignee. It requested damages and declaratory and injunctive relief, all under state law. At several Defendants' request, the case was removed to federal district court under the Class Action Fairness Act

("CAFA").[1] Louisiana moved to remand to state court, arguing that CAFA did not apply and that Louisiana enjoyed sovereign immunity from involuntary removal to federal court in that it was suing in its state court to enforce state law. The district court denied remand. Louisiana petitioned this court for permission to appeal the interlocutory order under CAFA, which we granted.

## I

Louisiana administers the Road Home Program, which advances money to Louisiana homeowners for reconstructing homes damaged or destroyed by Hurricanes Rita and Katrina. Any homeowner could receive up to $150,000 from Louisiana with a written assignment to the State of the owner's claim against his insurer in the amount of the payment received from the State. Only an owner's claim for damage to his dwelling was assigned. These assignments, functionally subrogation agreements, read in part:

> Notwithstanding anything to the contrary contained herein, this is a limited subrogation and assignment, and is limited to an amount not to exceed the amount of the grant received by the undersigned [insured] under the Program, to which the State has not been reimbursed from other sources.

While an owner's assignment was partial in that the owner retained his claim against his insurer for amounts exceeding the sum advanced by the State, the assignment also granted Louisiana the right to sue his insurer in the owner's name for the owner's insured losses.[2]

---

[1] 28 U.S.C. § 1453. Section 1453(b) provides, "In general. - - A class action may be removed to a district court of the United States in accordance with section 1446 . . . ." Section 1453(c)(1) provides that "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order."

[2] The agreement stated, in relevant part, "I/we agree to assist and cooperate with the State should the State elect to pursue any of the claims I/we have against the insurers for reimbursement under any such policies. My/our assistance and cooperation shall include

No. 08-30145

Under a Louisiana statute, all insurance claims relating to damages from Hurricane Katrina had to be filed by September 1, 2007.[3] On August 23, 2007, Louisiana filed this suit in Orleans Parish against more than 200 insurance companies. By an amended petition filed five days later, Louisiana added a class action against the same defendants under Louisiana Code of Civil Procedure, Article 591.[4] It was filed on behalf of "The State of Louisiana, individually and on behalf of" the state agency administering the program. The asserted class consisted of:

> [a]ll current and former citizens of the State of Louisiana who have applied for and received or will receive funds through the Road Home Program, and who have executed or will execute a subrogation or assignment agreement in favor of the State, and to whom insurance proceeds are due and/or owed for damages sustained to any such recipient's residence as result of any natural or man-made occurrence associated with Hurricanes Katrina and/or Rita under any policy of insurance, as plead herein, and for which the State has been or will be granted or be entitled to recover as repayment or reimbursement of funds provided to any such recipient through the Road Home Program.

---

allowing suit to be brought in my/our name(s) . . . ."

[3] *See* LA. REV. STAT. § 22:658.3 (providing that "any person or entity having a claim for damages pursuant to a homeowners' insurance policy . . . . and resulting from Hurricane Katrina shall have through September 1, 2007, within which to file a claim with their insurer for damages").

[4] LA. CODE CIV. PROC. ANN. art. 591(A) provides,

> One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
> (1) The class is so numerous that joinder of all members is impracticable.
> (2) There are questions of law or fact common to the class.
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
> (4) The representative parties will fairly and adequately protect the interests of the class.
> (5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.

3

The amended petition[5] requested injunctive relief, declaratory judgment, damages, and "an order finding the Insurance Company Defendants liable to the State and the recipients (members of the class), as plead herein," "[f]or an injunctive order directing that the Insurance Company Defendants pay all coverage afforded under the terms of the recipients' policies, and where a total loss is found, an injunctive order directing the payment of the full value placed on the recipients' residence . . . with full reimbursement or repayment of any funds to which the State is entitled to as a result of any grant issued under The Road Home Program," "[f]or a declaration of the State's and the recipient's [sic] rights under Louisiana law, and . . . a declaration of the Insurance Company Defendants' responsibilities to the State and the recipients, as plead herein," "for an injunction prohibiting the Insurance Company Defendants from committing further breaches of their duties owed to the State and members of the class, and . . . forbidding . . . Defendants from failing to honor the coverage provided by the All Risk policies . . . issued to the recipients," and "[f]or any and all monetary, general and equitable relief or injunctive relief as this Court deems just and appropriate under Louisiana law, whether plead herein or otherwise."

The amended petition alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty, asserting *inter alia* that "repeated demands were made by recipients to the . . . Defendants which refused to meet their obligations under the All Risk policies and refused to pay the full damages for recipients' homes being destroyed or damaged," that the insurance companies had "by failing . . . to pay the recipients all of the benefits due and owing them . . . violated the duties of good faith and fair dealing owed to recipients," and that "Defendants' failure to fully disclose and properly

---

[5] First Amended and Restated Class Action Petition for Damages and Declaratory and Injunctive Relief (Aug. 29, 2007).

advise the recipients . . . breached the fiduciary duties owed to them as their policyholders." The amended petition also requested a declaratory judgment that "under Louisiana's Valued Policy Law, La. R.S. § 22:695, *et seq.*, recipients are entitled to recover the full value placed on their residences by the Insurance Company Defendants without deduction or offset, especially without any deduction or offset for funds received under The Road Home Program."

On the filing of the amended petition with its class action allegation, several Defendants filed a notice of removal in which others joined and consented. Louisiana moved to remand to state court, arguing that CAFA did not apply and that exercise of federal jurisdiction over the suit offended its sovereign immunity. Following a hearing, the district court refused to remand. At the hearing, the insurance companies argued that removal was proper under CAFA and the Multiparty Multiform Trial Jurisdiction Act (MMTJA), which provides for original jurisdiction in the district court, and removal to district court, for certain minimal diversity actions arising from a "single accident."[6] Finding minimal diversity under CAFA, the district court declined to reach the claim of jurisdiction under MMTJA.[7]

Louisiana here argues that CAFA does not apply, and that even if it does apply by its terms, it cannot abrogate sovereign immunity from federal process, or at the least Congress did not clearly do so in CAFA; and that MMTJA does not apply by its own terms.

II

---

[6] 28 U.S.C. § 1369 provides, "The district courts shall have original jurisdiction of any civil action involving minimal diversity between adverse parties that arises from a single accident." 28 U.S.C. § 1441(e)(1)(A) permits removal of a civil action to a federal district court if "the action could have been brought in a United States district court under 1369 of this title . . . ."

[7] Nor do we, as we affirm the district court's jurisdiction under CAFA.

5

No. 08-30145

Enacted in 2005, CAFA provides for removal of class actions involving parties with minimal diversity.  It defines a "class action" as

> any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.[8]

Louisiana argues that a state has never been treated as a person for purposes of diversity jurisdiction and that it has not filed a class action as defined by CAFA.  The argument is not without force,[9] but we are not persuaded. CAFA only requires that the action be brought under Rule 23 or a state statute that *authorizes* class actions to be brought by a person.[10]  Louisiana's Article 591(A) is such a statute, as it permits "members of a class" to "sue or be sued as representative parties."[11]  Congress considered and rejected an amendment that would have exempted class actions filed by an attorney general from removal under CAFA.[12]  Nor can we agree that CAFA's use of the term "citizen" bars its

---

[8] 28 U.S.C. § 1332(d)(1)(B); *see also* 28 U.S.C. § 1453(a) ("Definitions. - - In this section, the terms 'class', 'class action', 'class certification order', and 'class member' shall have the meanings given such terms under section 1332(d)(1).").

[9] *See, e.g.*, *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 658, 666-67 (1979) (citing (*United States v. Cooper Corp.*, 312 U.S. 600, 604-05 (1941)) (holding that under 28 U.S.C. § 194, applying to land disputes between a tribe and a "white person," a state was not a person but observing that "[t]here is nevertheless 'no hard and fast rule of exclusion,' . . . and much depends on the context, the subject matter, the legislative history, and executive interpretation"); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).  In *Will*, the Court found that a state was not a "person" as defined by § 1983 because reading the term "person" to include "state" under the statutory language would "be a decidedly awkward way of expressing an intent to subject the States to liability."

[10] 28 U.S.C. § 1453(a); 28 U.S.C. § 1332(d)(1).

[11] LA. CODE CIV. PROC. ANN. art. 591(A).

[12] *See* 151 Cong. Rec. S1157-02, S 1158, 2005 WL 309648 (Feb. 9, 2005).  Senator Pryor introduced the amendment, stating, "My amendment simply clarifies that State attorneys general should be exempt from S. 5 and be allowed to pursue their individual State's interests as determined by themselves and not by the Federal Government."  Congress rejected the

No. 08-30145

application here.  The statute refers to the citizenship of any class member and any defendant.[13]  It signifies that CAFA, in expanding federal jurisdiction over certain class actions filed in state court, escaped the rule that citizenship of the named representative is controlling.[14]

CAFA has additional general jurisdictional requirements that must be met.  CAFA requires that a class action involve an aggregate amount in controversy of at least $5 million[15] and present at least minimal diversity of parties.[16]  Louisiana contests only whether the requisite diversity is met.  Louisiana argues that it is the real party in interest and as a state, it is not a citizen for purposes of diversity jurisdiction.  We agree that a state is not a citizen under the diversity statutes, including CAFA.[17]  But that is not this case.  Louisiana seeks relief for both the State and the citizens as "recipients" of insurance.  While it is true that as partial assignees and assignors, both the

proposed amendment.  *Cf. Cooper Corp.*, 312 U.S. at 605, 607-09 (holding that "we are to read the statutory language in its ordinary and natural sense, and if doubts remain, resolve them in the light, not only of the policy intended to be served by the enactment, but, as well, by all other available aids to construction" and looking to "supplemental legislation" and the "scheme and structure of the legislation").

[13]  28 U.S.C. § 1453(b) provides, "In general.--A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(b) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants."

[14]  *Cf. Supreme Tribe of Ben Hur v. Cauble*, 255 U.S. 356, 363-64 (1921), *overruled on other grounds by Toucey v. New York Life Ins. Co.*, 314 U.S. 118 (1941).

[15]  28 U.S.C. 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which-- (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . .").

[16]  *See Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 545 (5th Cir. 2006) (discussing the requirements for federal jurisdiction under CAFA with respect to Louisiana class actions).

[17]  *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction.").

No. 08-30145

State and the citizens are likely real parties in interest,[18] we need not pause to examine its force. With citizens of Louisiana joined as plaintiffs there is minimal diversity. CAFA supplies federal jurisdiction and a path to removal unless state sovereignty turns away its exercise. We turn to this difficult question.

### III

Our precise question is not the insulating force of any sovereign immunity of the State of Louisiana from removal of a suit filed by it alone in its own state courts, seeking enforcement of its state laws against insurers who each qualified to do business in the State and are subject to its regulation. That question states Louisiana's claim of sovereign protection from removal in its most powerful form and has never been directly answered. It has eluded answer for the practical reason that it has been long settled that a State is not a person for purposes of diversity jurisdiction. This, with the long time companion insistence upon complete diversity, made the presence of additional parties aligned with the State irrelevant to federal diversity jurisdiction. CAFA, with its grant of jurisdiction to the federal district courts of qualifying class actions with minimal diversity of parties, pushes the question forward but does not tax the immunity claimed here by Louisiana—involuntary removal of its suit in its own courts to enforce its own laws against companies subject to its regulation.

Defendants reply that Louisiana enjoys no immunity as a plaintiff; that its immunity is from suit filed against it. As the argument goes, it is only those actions against the State that offend its dignitary interests and imperil its coffers. And indeed several courts seem to say as much. We would stop here if

---

[18] *See Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990) (addressing removal under 28 U.S.C. § 1441 and holding that "[w]ith a partial assignment . . . an actual transfer of a fractional interest is made, making both the transferor and transferee real parties in interest").

we found these cases to be dispositive, for joinder of the class would not weigh on the question of immunity–the State as a plaintiff would then surely have no protection from removal to federal court of a suit it filed in state court. This would be so whether such "immunity as a plaintiff rule" rested on the substantive reach of its immunity or waiver. Louisiana would distinguish these cases where either federal questions were at issue or the cited language was dicta. We will briefly explain why we do not share Defendants' dismissive ease, although we will ultimately conclude that any immunity from removal to federal court was waived by the addition of the class of private citizens in the amended complaint, and relatedly that immunity of the State from removal to federal court does not extend to the members of the class.

By their logical order we would first address whether Louisiana has any of the immunity from federal process that Louisiana claims for itself as a plaintiff suing in its own courts to enforce its own laws, turning next to whether Congress has sufficiently expressed its intent to abrogate the immunity and then to whether the State can extend any of its immunity to private citizens of Louisiana suing citizens of other states for money damages and declaratory relief. We will follow a narrower course.

By this course, we accept for now that there is some measure of insulation. Doing so, the question becomes rather whether the State can extend that protection to private citizens of the State–whether immunity's net casts so broadly as to protect private citizens joined in a state claim. There is a footnote to the question of whether Louisiana waived immunity by bringing private citizens into its suit, parties that provided the requisite minimal diversity under CAFA. If Louisiana had not named these citizens as plaintiffs, we would have faced the question of what effect immunity may have had given the fact that the assignments are only partial. Stated more directly, because Louisiana brought a class action, we need not address whether Louisiana might have been

No. 08-30145

compelled to join these additional parties in any event, or its effects upon federal jurisdiction.[19]

## IV

Constitutional questions unanswered by the Founders and which remain open ought not be reached unless doing so is necessary to the resolution of a case or controversy.  A brief repair to history informs our decision.  The scope of sovereign immunity is put in play by the intersection of Article III, Section 2 of the Constitution, providing for federal jurisdiction over "Controversies . . . between a State and Citizens of another State," and the Eleventh Amendment, which provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

As freestanding prose these grants and limitations could be read to end our inquiry, and, without more, affirm the district court's denial of remand. Louisiana as plaintiff has brought a suit against "citizen" insurance companies

---

[19] Where an assignment or subrogation is partial in Louisiana, the failure to include either of the contracting parties in a suit constitutes nonjoinder of a necessary party. LA. CODE CIV. PROC. ANN. art. 697 (2008); LA. CODE CIV. PRO. ANN. art. 698 (2008).  Of course, courts may still hear a case where joinder is not feasible.  *See, e.g.*, *Mount Beacon Ins. Co. v. Mills*, 205 So.2d 144, 145 (La. Ct. App. 1967) (affirming award of remainder of damages from auto accident to subrogor, despite subrogee insurance company's lack of authorization to do business in the State and the state court's lack of jurisdiction over the company); *see also* LA. CODE CIV. PROC. ANN. art. 642 (2008) ("If a person described in Article 641 cannot be made a party, the court shall determine whether the action should proceed among the parties before it, or should be dismissed.").  But given Louisiana's rights under the assignment to litigate the interests of citizen assignees, in their name, this could estop individual assignees–typically a necessary party in Louisiana–from later bringing their claims. *See, e.g.*, *Rond v. Sims*, 355 So. 2d 591, 593 (La. Ct. App. 1978) ("Ordinarily, a subrogor has no right of action for the right or that portion of the right which has been subrogated away, Code of Civil Procedure, Article 697, the subrogee being the only one who could sue for the subrogated right.").

No. 08-30145

of other states,[20] and the insurance companies, as defendants, have not "commenced or prosecuted" a suit against Louisiana. But read as Constitutional text, sovereign immunity is a "fundamental rule of which the Amendment is but an exemplification."[21] In *Hans v. Louisiana*, the Court held that the Eleventh Amendment bars suits against a State by the State's own citizens, stating:

> [T]he plaintiff in error contends that he, being a citizen of Louisiana, is not embarrassed by the obstacle of the eleventh amendment, inasmuch as that amendment only prohibits suits against a state which are brought by the citizens of another state, or by citizens or subjects of a foreign state. . . . It is an attempt to strain the constitution and the law to a construction never imagined or dreamed of. Can we suppose that, when the eleventh amendment was adopted, it was understood to be left open for citizens of a state to sue their own state in federal courts, while the idea of suits by citizens of other states, or of foreign states, was indignantly repelled?[22]

The *Hans* Court also held that despite the Eleventh Amendment's text, states as defendants may consent to federal jurisdiction.[23] In *Principality of Monaco v. Mississippi*, the Court recognized that "there is no express provision that the United States may not be sued in the absence of consent. . . . [A]rticle [III] . . . extends the judicial power 'to Controversies to which the United States shall be a Party.' Literally, this includes such controversies, whether the United States be party plaintiff or defendant."[24]   Yet it concluded that "by reason of the

---

[20] *Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 875 (5th Cir. 2004) (citing 28 U.S.C. § 1332) ("Section 1332(a) provides that a corporation is a citizen of both its state of incorporation and the state of its principal place of business for purposes of diversity jurisdiction.").

[21] *Ex parte New York, No. 1*, 256 U.S. 490, 497 (1921).

[22] 134 U.S. 1, 10, 15 (1890).

[23] *Id.* at 17.

[24] 292 U.S. 313, 321 (1934).

11

established doctrine of the immunity of the sovereign from suit except upon consent, . . . [A]rticle [III] . . . does not authorize the maintenance of suits against the United States."[25]  In *Seminole Tribe of Florida v. Florida*, the Court held that Congress through its Article I powers could not abrogate states' immunity against suit in federal court,[26] holding, "Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, 'we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition . . . which it confirms.'"[27]  In *Alden v. Maine*, the Court upheld a similar principle for suits against states in state court,[28] reasoning that

> sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution itself.  The Eleventh Amendment confirmed rather than established sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design.[29]

The many cases looking to immunity's purpose and rejecting a strict textual interpretation of immunity have all focused on the importance of protecting states as defendants, as did the Founders' debates over Article III. The *Alden* Court emphasized states' "immunity *from suit*,"[30] observing, "[T]he doctrine that a sovereign could not be sued without its consent was universal in

---

[25]  *Id.*

[26]  517 U.S. 44, 72 (1996).

[27]  *Id.* at 54 (quoting *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779 (1991)).

[28]  527 U.S. 706, 712 (1999).

[29]  *Id.* at 728-29.

[30]  527 U.S. at 713 (emphasis added).

No. 08-30145

the States when the Constitution was drafted and ratified."[31] In *Seminole Tribe*, the Court held that the "presupposition" confirmed by the Eleventh Amendment is that "'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'"[32]

Founders supporting Article III in the debates argued that it would not force defendant states into federal courts. At the Virginia Convention, James Madison maintained that under the Supreme Court's "jurisdiction in controversies between a state and citizens of another state . . . It is not in the power of individuals to call any state into court."[33] At the same convention, John Marshall asserted, "With respect to disputes between *a state and citizens of another state* . . . . I hope that no gentleman will think that a state will be called at the bar of federal court." In *The Federalist*, Alexander Hamilton wrote,

> It has been suggested that an assignment of the public securities of one State to the citizens of another, would enable them to prosecute that State in the federal courts for the amount of those securities; a suggestion which the following considerations prove to be without foundation. It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent*.[34]

These same supporters of Article III argued that its purpose, rather than to subject states to federal jurisdiction as defendants, was to require *plaintiff* states to bring suits against citizens in federal court. Madison stated, "The only operation it can have, is that, *if a state should wish to bring a suit against a*

---

[31] *Id.* at 715-16.

[32] 517 U.S. at 54 (quoting *Hans*, 134 U.S. at 13).

[33] Martha A. Field, *The Eleventh Amendment and other Sovereign Immunity Doctrines: Part One*, 126 U. PA. L. REV. 515, 527 (1978) (quoting THE DEBATES IN THE SEVERAL STATE CONVENTIONS ON THE ADOPTION OF THE FEDERAL CONSTITUTION 533 (J. Elliott ed. 1836)); *see also Hans*, 134 U.S. at 14 (also quoting Elliott).

[34] Field, *The Eleventh Amendment* at 528 (quoting 3 ELLIOT'S DEBATES at 555-56).

13

No. 08-30145

*citizen*, it must be brought before the federal court."[35] And Marshall urged, "The intent is, to enable states to recover claims of individuals residing in other states. . . . I see a difficulty in making a state defendant which does not prevent its being plaintiff."[36]

The anti-federalist doubters focused their fire upon subjecting defendant states to suits in federal courts, although they hinted at negative implications for states as plaintiffs.  Richard Henry Lee wrote,

> How far it may be proper so to humble a state, as to oblige it to answer to an individual in a court of law, is worthy of consideration . . . this new jurisdiction will subject the states, and many defendants to actions . . . which were not in the contemplation of the parties, when the contract was made . . . . [37]

At the Virginia Convention, Patrick Henry worried,

>  A state may be sued in the federal court, by the paper on your table . . . . [and later] [Madison's] construction of it [Article III] is to me perfectly incomprehensible. . . . What says the paper?  That it shall have cognizance of controversies between state and citizens of another state, without discriminating between plaintiff and defendant.[38]

More recently, courts have continued their focus on states as defendants, not plaintiffs.  In *Huber, Hunt, & Nichols, Inc. v. Architectural Stone Co.*, plaintiffs in a contract dispute with a state university sought arbitration, requesting removal to federal district court on diversity grounds.  This court

---

[35] *Id.* (quoting 3 ELLIOT'S DEBATES at 551) (emphasis added).

[36] *Id.* (quoting 3 ELLIOT'S DEBATES at 556).

[37] *Id.* at 533 (quoting R.H. LEE, LETTERS OF A FEDERAL FARMER (NUMBER III) (Oct. 10, 1787), *reprinted in* PAMPHLETS ON THE CONSTITUTION OF THE UNITED STATES 309 (P. Ford ed. 1888)).

[38] *Id.* at 532 (quoting 3 ELLIOT'S DEBATES at 318-19, 543-44).

observed in a footnote, "Of course, the eleventh amendment is inapplicable where a state is a plaintiff . . . ."[39] In *California ex rel. Lockyer v. Dynegy, Inc.*, the Ninth Circuit held, "[A] state that voluntarily brings suit as a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks removal to a federal court of competent jurisdiction."[40] The Federal Circuit held in *Regents of the University of California v. Eli Lilly & Co.* that "the Eleventh Amendment applies to suits 'against' a state, not suits by a state. Thus, we need not determine whether . . . [Plaintiff state] waived its immunity . . . ."[41] In *Oklahoma ex rel. Edmondson v. Magnolia Marine Transportation Co.*, a removal case grounded in federal question jurisdiction, the Tenth Circuit held, "[T]he Eleventh Amendment's abrogation of federal judicial power 'over any suit . . . commenced or prosecuted against one of the United States' does not apply to suits commenced or prosecuted *by* a State."[42]

The Supreme Court has similarly held.  In *Illinois v. City of Milwaukee*, the Court held, "where a State is suing parties who are not other States, the original jurisdiction of this Court is not exclusive and . . . those suits may now be brought in or removed to the Circuit Courts [now the District Courts] without regard to the character of the parties."[43] And in *Ames v. Kansas*, the Court held that

> a suit brought by a State in one of its own courts, against a corporation amenable to its own process, to try the right of the corporation to exercise corporate powers within the territorial limits

---

[39] 625 F.2d 22, 24 n.6 (5th Cir. 1980).

[40] 375 F.3d 831, 848 (9th Cir. 2004).

[41] 119 F.3d 1559, 1564-65 (Fed. Cir. 1997).

[42] 359 F.3d 1237, 1239 (10th Cir. 2004).

[43] 406 U.S. 91, 101 (1972) (internal quotation marks and citations omitted).

of the State, can be removed to the Circuit Court of the United States. . . .[44]

The Tenth Circuit recognized that *Ames* and *City of Milwaukee* were distinguishable from other removal questions but still found them relevant to the question of removing a plaintiff state, finding,

> While the immediate issue in *City of Milwaukee* and *Ames* was whether the Supreme Court's original jurisdiction in actions involving States is exclusive of jurisdiction in the lower federal courts, nearly every court to consider Eleventh Amendment immunity in the removal context has relied on the unconditional holding of those cases, in conjunction with the pointed and specific language used in the constitutional text itself, to conclude that a State cannot assert Eleventh Amendment immunity to bar the removal of a suit it has brought.[45]

That said, none of the cases or founding history speak directly to the issue at hand, which might well raise a constitutional concern had the State not waived immunity by bringing a suit with private citizens: whether a state as a plaintiff suing defendants over whom it has regulatory authority in state court under its own *state laws* may be removed to federal court on diversity grounds under CAFA, rather than federal question jurisdiction. In sum, we are persuaded that we ought to rest our decision on the most narrow of grounds[46]–waiver and its predicate that any immunity the State may have

---

[44] 111 U.S. 449, 462 (1884).

[45] *Edmondson*, 359 F.3d at 1239.

[46] *See, e.g., Wash. State Grange v. Wash. State Republican Party*, 128 S.Ct. 1184 (2008) (quoting *United States v. Raines*, 362 U.S. 17, 22 (1960)) ("Exercising judicial restraint in a facial challenge 'frees the Court not only from unnecessary pronouncement on constitutional issues, but also from premature interpretations of statutes in areas where their constitutional application might be cloudy.'"); *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (asking whether procedures were authorized by statute "[t]o avoid resolution of any constitutional issues").

No. 08-30145

cannot be conferred by the State upon the prosecution of suits by private citizens. We are persuaded that the State cannot pull these citizens under its claimed umbrella of protection in frustration of a congressional decision to give access to federal district courts to defendants exposed to these private claims,[47] presumably for reasons not far removed from those that led the first Congress to confer diversity jurisdiction—known then and now to the trial bar as "home cooking."

## V

At the oral hearing on removal in district court, Plaintiffs raised the possibility of splitting the action in two, leaving the Plaintiff citizens to pursue the class action in federal court and allowing Louisiana to remand its portion of the case to state court, perhaps staying the federal case to await the decision of the Louisiana courts, which will control in any event. The district court considered this remedy but did not implement it, denying the motion for remand.

We trust that given our caution in this matter of state sovereignty, the district court will explore the possibility of returning Louisiana to the state court while retaining the class suit—perhaps with new class representatives drawn from its membership. We express no opinion regarding either the permissible or the practicable segmenting of this case. We make these observations against the backdrop of the settled power of the district courts.[48] We will affirm the

---

[47] See, e.g., Hart v. FedEx Ground Package Sys., Inc., 457 F.3d 675, 681 (7th Cir. 2006) (quoting S. Rep. 14, 109th Cong. 1st Sess. 43 (2005), 2005 U.S.C.C.A.N. 3, 41). The Senate Judiciary Committee's report on CAFA stated that

> [o]verall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.

[48] See, e.g., Nix v. Grand Lodge of Int'l Ass'n of Mach. & Aerospace Workers, 479 F.2d 382, 385 (5th Cir. 1973) ("A district court is given broad discretion in controlling class actions because of the managerial difficulties which may develop . . . . [T]he district court may only

No. 08-30145

decision not to remand and will remand the case to the district court.  That court is the able manager of this complex litigation and we will not extend these appellate hands into that endeavor.

AFFIRMED.

---

take those parts of a lawsuit which lend themselves to convenient use of the class action motif."); *id.* at 386 (discussing how "[t]he court has the power under subdivision c(4)(a), which permits an action to be brought under Rule 23 'with respect to particular issues' to confine the class action aspects of a case to those issues pertaining to the injunction and to allow damages issues to be tried separately"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 202 (3d Cir. 2005) (citing Fed. R. Civ. Pro. 23(c)(4)(B)) ("A district court hearing a class action has the discretion to divide the class into subclasses and certify each subclass separately."); *Wagner v. Taylor*, 836 F.2d 578, 585 (Fed. Cir. 1987) ("[I]n all class actions," trial courts "can narrow the definition of the class, divide the proposed class into subclasses, and permit class members to opt out of the class."); *In Re Master Key Antitrust Litig.*, 528 F.2d 5, 12 n.11, 14 (2d Cir. 1975) (internal citations omitted) ("If the appellees establish [liability] at the trial. . . . and further establish injury . . . [,] the amount of such injury could then be computed at a separate trial for damages, and appropriate substratification of classes could be utilized to facilitate that determination.").

# *United States Court of Appeals*
**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

**CHARLES R. FULBRUGE III**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE**
**NEW ORLEANS, LA 70130**

May 5, 2008

Ms Loretta Whyte, Clerk
Eastern District of Louisiana, New Orleans
United States District Court
Room C-151
500 Poydras Street
New Orleans, LA 70130

No. 08-30145 Louisiana State v. AAA Insurance
USDC No.  2:05-CV-4182
          2:07-CV-5528

Enclosed, for the District Court only, is a certified copy of the
judgment issued as the mandate.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: _____
     Cindy Broadhead, Deputy Clerk
     504-310-7707

cc: (letter only)
     Honorable Stanwood R Duval Jr
     Mr Calvin Clifford Fayard Jr
     Mr Neil C Abramson
     Ms Judy Y Barrasso
     Mr Thomas R Blum
     Ms Kelly C Bogart
     Ms Nancy Scott Degan
     Mr Patrick D Derouen
     Ms Julia A Dietz
     Mr Richard Joseph Doren
     Mr Richard L Fenton
     Mr Levon G Hovnatanian
     Mr Ralph S Hubbard III
     Mr Thomas Hebert Huval
     Mr Howard Bruce Kaplan
     Mr Richard Edward King
     Mr Wayne J Lee
     Mr Edward J Lilly
     Mr Ben Louis Mayeaux

```
Mr Dominic J Ovella
Ms Maura Z Pelleteri
Mr Ethan N Penn
Mr Christopher Raymond Pennison
Mr Marshall M Redmon
Ms Wendy Hickok Robinson
Mr Harry A Rosenberg
Ms Deborah B Rouen
Mr Gordon Paul Serou Jr
Mr John E Unsworth
Mr Steven W Usdin
Mr John R Walker
Mr John W Waters Jr
Mr Gerard E Wimberly Jr
Mr John Powers Wolff III
Mr Alan J Yacoubian
```

MDT-1