UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:  KATRINA CANAL BREACHES                    CIVIL ACTION
        CONSOLIDATED LITIGATION
                                                  NO. 05-4182 "K" (2)

PERTAINS TO:  BARGE                               JUDGE DUVAL
*Mumford v. Ingram*          C.A. No. 05-5724      MAG. WILKINSON
*Boutte v. Lafarge*          C.A. No. 05-5531
*Lagarde v. Lafarge*         C.A. No. 06-5342
*Perry v. Ingram Barge*      C.A. No. 06-6299
*Benoit v. Lafarge*          C.A. No. 06-7516
*Parfait Family v. USA*      C.A. No. 07-3500
*Lafarge v. USA*             C.A. No. 07-5178


## ORDER AND REASONS ON MOTIONS

Three motions are pending before me in the captioned consolidated cases.  First,

the Barge Plaintiffs filed a Motion for Protective Order as to the Surreptitious Recordings

of Witness Interviews by Counsel for Lafarge North America, Inc., Through Their Agent

Centanni Investigative Services, Inc., for Lafarge's Concealment of the Interviews and

Other Misconduct, and for Declaratory and Other Relief.  Record Doc. No. 11765.

Lafarge filed a timely opposition memorandum.  Record Doc. No. 12831.

Second, the Barge Plaintiffs filed a Motion for Reconsideration, Record Doc.

No. 13017, of a portion of my prior ruling, Record Doc. No. 12605, that had denied in

part plaintiffs' motion to compel Lafarge to produce photographs and videotapes.

Record Doc. No. 11578.  Third, Lafarge also filed a Motion for Reconsideration, Record

Doc. No. 12961, of a portion of the same order that had granted in part plaintiffs' same

motion to compel production of recorded witness statements.  Plaintiffs filed a timely

opposition memorandum.  Record Doc. No. 12989.  The scheduled oral argument was

cancelled and the motions were submitted on the briefs.  Record Doc. No. 13098.

Having considered the record, the submissions of the parties and the applicable

law, IT IS ORDERED that all three motions are DENIED for the following reasons.

I.      PLAINTIFFS' MOTION FOR RECONSIDERATION, Record Doc. No. 13017

In this motion, the Barge Plaintiffs cite the same cases that they cited in support

of their motion to compel and they argue again that the photographs and videotapes

requested from Lafarge are not work product.  However, plaintiffs have failed to

demonstrate any of the following established reasons for granting a motion to reconsider

under Fed. R. Civ. P. 59(e):[1]  "(1) to correct manifest errors of law or fact upon which

judgment is based, (2) the availability of new evidence, (3) the need to prevent manifest

injustice, or (4) an intervening change in controlling law."  Restivo, 2007 WL 1341506,

at *1 (citing 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice

---

[1]Because the motion for reconsideration was filed within ten days of entry of the order, the court treats it as a motion to alter or amend a judgment under Rule 59(e).  United States v. 16,540 in U.S. Currency, 273 F.3d 1094, 2001 WL 1085106, at *2 (5th Cir. 2001) (citing Patin v. Allied Signal, Inc., 77 F.3d 782, 785 n.1 (5th Cir. 1996)); Restivo v. Hanger Prosthetics & Orthotics, Inc., No. 06-32, 2007 WL 1341506, at *1 (E.D. La. May 4, 2007) (Duval, J.).

& Procedure § 2810.1, at 124) (hereinafter "Wright & Miller"); accord Southern Constructors Group, Inc. v. Dynalectric Co., 2 F.3d 606, 611 (5th Cir. 1993). "The granting of a Rule 59(e) motion 'is an extraordinary remedy and should be used sparingly.'" In re Pequeño, 240 Fed. Appx. 634, 2007 WL 1806866, at *1 (5th Cir. 2007) (quoting Templet v. HydroChem Inc., 367 F.3d 473, 479 (5th Cir. 2004)).

"A motion for reconsideration may not be used to rehash rejected arguments or introduce new arguments." LeClerc v. Webb, 419 F.3d 405, 412 n.13 (5th Cir. 2005) (emphasis added). Because I have already rejected plaintiffs' arguments that the requested photographs and videotapes are not work product and because there was no manifest error in that ruling, I will not reconsider it based on any grounds that plaintiffs have previously urged.

Plaintiffs argue for the first time in the instant motion that, if the requested materials are work product, plaintiffs are entitled to their production because they have substantial need for the materials to prepare their case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3). Plaintiffs now contend that, while the City of New Orleans was under a mandatory evacuation order in the weeks after Hurricane Katrina, only Lafarge had the ability to photograph the positions and conditions of the barges, mooring lines, bollards, cavils and other mooring points and that, after Hurricane Rita hit the same area about a month after

3

Hurricane Katrina, the scene was so changed that plaintiffs cannot possibly obtain equivalent photographs and video recordings.

Plaintiffs' burden under Rule 26(b)(3) is a burden of proof.  Palmer v. Westfield Ins. Co., No. 5:05-CV-338-OC-10GRJ, 2006 WL 2612168, at *4 (M.D. Fla. June 30, 2006); Chambers v. Allstate Ins. Co., 206 F.R.D. 579, 584 (S.D. W. Va. 2002); D.E.J.S.A. Corp. v. Shooster, No. 92-2953, 1993 WL 65816, at *3 (E.D. Pa. Mar. 9, 1993).  Plaintiffs have submitted no evidence sufficient to carry their burden of proof or to support their argument, which is not self-evident.  In addition, "generally speaking, [the court] will not consider an issue raised for the first time in a Motion for Reconsideration."  Lincoln Gen. Ins. Co. v. De La Luz Garcia, 501 F.3d 436, 442 (5th Cir. 2007) (quotation and citations omitted); see also Mungo v. Taylor, 355 F.3d 969, 978 (7th Cir. 2004) ("Arguments raised for the first time in connection with a motion for reconsideration . . . are generally deemed to be waived."); accord Centerpoint Energy Houston Elec. LLC v. Harris County Toll Rd. Auth., 246 Fed. Appx. 286, 2007 WL 2491052, at *3 (5th Cir. 2007).

Thus, plaintiffs waived their argument about their alleged substantial need for the materials and inability to obtain substantial equivalents by failing to raise it in their motion to compel.  Even if they had not waived it, this argument also fails to satisfy one

4

of the four standards for granting a Rule 59(e) motion.  Accordingly, plaintiffs' motion for reconsideration is DENIED.

## II.     LAFARGE'S MOTION FOR RECONSIDERATION, Record Doc. No. 12961

Lafarge argues in its motion for reconsideration that the court committed a manifest error of law by holding that its investigators' surreptitious tape-recording of conversations with witnesses vitiated the work product protection for those recordings. However, Lafarge only seeks a ruling on its motion to reconsider if the court grants the Barge Plaintiffs' motion for protective order, which is addressed below.  On the other hand, if the court denies plaintiffs' motion for protective order, Lafarge offers to produce all of its recorded witness statements without pursuing its motion for reconsideration before me or the presiding district judge.  Because I am denying plaintiffs' motion for protective order, for the reasons discussed below, Lafarge's motion for reconsideration appears to be moot.  Nonetheless, in the event that any of these rulings are appealed to Judge Duval, I address Lafarge's motion for reconsideration under the Rule 59(e) standards set forth in the preceding section.

I have previously considered the cases cited and arguments advanced by Lafarge concerning the ABA's Formal Opinion 01-422 (June 24, 2001).  That opinion provides guidance to the courts, but is not a binding precedent.  Trudeau v. N.Y. State Consumer Prot. Bd., 237 F.R.D. 325, 344 n.15 (N.D.N.Y. 2006); Babineaux v. Foster, No. 04-1679,

2005 WL 711604, at *2 (E.D. La. Mar. 21, 2005) (Africk, J.) (citing <u>Midwest Motor</u>

<u>Sports, Inc. v. Arctic Cat Sales, Inc.</u>, 144 F. Supp. 2d 1147, 1159 (D.S.D. 2001)); <u>see also</u>

<u>In re Tyco Int'l Ltd. Secs. Litig.</u>, No. 00-MD-1335-B, 2001 WL 34075721, at *3 (D.N.H.

Jan. 30, 2001) (questioning whether a different ABA formal ethics opinion is "an

improper reach far beyond the text of the rule [but] assuming that this court would give

some deference to that portion of the formal opinion").   ABA Formal Opinion 01-422

does not, as Lafarge contends, change and cannot overrule binding Fifth Circuit

precedent or the other case law I have previously cited regarding surreptitious tape

recording and the work product doctrine.   While it may be accurate that Lafarge and its

agents and attorneys may not be criminally indicted, successfully sued for damages or

disciplined by the appropriate Bar Association for such tape recordings, surreptitious tape

recording remains an inappropriate discovery practice for the various reasons included

in the case law that I have previously cited, which are <u>not</u> limited to exclusive reliance

on any ABA opinion.

 The following examples, drawn from the witness interviews attached to plaintiffs'

motion for protective order, illustrate the dangers and problems associated with such

secret tape-recordings that are touched upon in the cases cited in my previous order.   As

a general practice, Lafarge's investigator who conducted most of the interviews identified

himself to the witnesses only by name and by stating that he worked for an investigative

agency.  If pressed by the witness for further identification, he would name the agency, which he sometimes vaguely characterized as "independent."  Although asked to identify himself and given the opportunity to respond honestly, the investigator carefully refrained from ever stating that the agency had been retained by Lafarge, a defendant in several civil actions in this court whose interests were potentially adverse to the interviewees.  While the investigator's statements were not literally false, they were evasive and misleading in what they omitted.  As the law of fraud teaches, a material omission can be just as misleading as an affirmative misrepresentation.  See, e.g., conversation between investigator Robert Garcia ("RG") and Ernest Edwards ("EE") (also known as "All Night Shorty") on December 19, 2005, Plaintiff's Exh. 24, Record Doc. No. 11765-26, at pp. 2-3 ("EE: . . . .  Who you investigating for, though?  Who are you working for?  RG:  I'm working for Centanni.  We're an independent investigative agency. . . .  And, uh, we don't work for the government or nothing like that."); conversation between Garcia and Michael Reed on December 7, 2005, Plaintiff's Exh. 30, Record Doc. No. 11765-32, at p. 10 (same); conversation between Garcia and Edwards on February 9, 2006, Plaintiff's Exh. 25, Record Doc. No. 11765-27, at pp. 9-10 (identifying Centanni Investigative Agency without any additional information); conversation between Garcia and Robert L. Green, Sr. on November 23, 2005, Plaintiff's Exh. 26, Record Doc. No. 11765-28, at pp. 2-3 (same).

One interviewee, "All Night Shorty," asked twice whether Garcia was taking down what he said and Garcia responded that he was writing it down.  Plaintiff's Exh. 24, Record Doc. No. 11765-26, at pp. 15-16, 20.  Again, while this may have been a true statement, it also presented an opportunity, which was not taken, to respond honestly and to tell the witness the full truth, that the conversation was being tape-recorded.  The witness may well have consented to the recording, but we will never know.

"All Night Shorty" also asked Garcia, "Is we gonna hear any results of this conversation?  Is we gonna get anybody to speak for us behind this?  RG:  Uh, I'm not sure.  EE:  Okay.  RG:  I'm just . . . I'm a private investigator and what we do is just collect the information."  Plaintiff's Exh. 24, Record Doc. No. 11765-26, at p. 41 (emphasis added).  Clearly, the witness wanted to know from Garcia if he and other flood victims were going to be helped by this conversation or, as plaintiffs put it in their memorandum in support of their motion for protective order, whether the interviewer was "on their side."  Garcia's response was again evasive and misleading by omission of the material information, clearly being sought by the witness, that he and his agency were working for Lafarge, whose interests were potentially adverse to those of the flood victims.

As I previously stated in my order granting plaintiffs' motion to compel, the "'extremely mild remedy of discovery'" does not interfere with the rights of the parties

or their counsel to interview witnesses, except when it is done secretly without the consent of the interviewee, in which case the tapes are discoverable.  Ward v. Maritz, Inc., 156 F.R.D. 592, 594 (D.N.J. 1994) (quoting Bogan v. Nw. Mut. Life Ins. Co., 144 F.R.D. 51, 54 (S.D.N.Y. 1992)).

The cases that Lafarge cites for the proposition that a change in intervening law negates contrary Fifth Circuit and other precedents are distinguishable, as they involved changes in underlying jurisprudential or statutory law.  See Federated Mut. Ins. Co. v. Grapevine Excavation, Inc., 241 F.3d 396, 398 n.3 (5th Cir. 2001) (Because "the Supreme Court of Texas's answer to our [certified] question in the instant case conflicts with our [prior] decisions . . . , those cases are no longer binding precedent of this Court."); Floors Unltd., Inc. v. Fieldcrest Cannon, Inc., 55 F.3d 181, 185 (5th Cir. 1995) (Published decisions by the Texas Courts of Appeals "are 'clearly contrary' to our [prior] decisions . . . and thus [our prior decisions are] no longer binding precedent in this Circuit."); Blair v. Sealift, Inc., 91 F.3d 755, 761 n.26, 762 (5th Cir. 1996) ("[S]ubsequent, clearly contradictory state law trumps both the law of the case and the otherwise binding nature of prior decisions of a panel of this court."  "[T]he district court properly determined that [the Louisiana Court of Appeal case] constitutes controlling authority which compels a departure from our earlier . . . decision on the issue . . . .").

Despite the issuance of the ABA's Formal Opinion 01-422 and unlike the decisions just cited, the Fifth Circuit has <u>not</u> overruled <u>Chapman & Cole v. Itel Container Int'l B.V.</u>, 865 F.2d 676, 686 (5th Cir. 1989), which remains binding precedent in this court, or the decisions of other courts cited in my previous order. Accordingly, there is no manifest error of law in my prior ruling, and Lafarge's motion for reconsideration is DENIED.

III.   <u>PLAINTIFFS' MOTION FOR PROTECTIVE ORDER, Record Doc. No. 11765</u>

Fed. R. Civ. P. 26(c)(1) sets the standard for granting a motion for protective order. "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, <u>for good cause</u>, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1) (emphasis added). "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a <u>particular and specific demonstration of fact</u> as distinguished from stereotyped and conclusory statements.'" <u>In re Terra Int'l</u>, 134 F.3d 302, 306 (5th Cir. 1998) (quoting <u>United States v. Garrett</u>, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978); citing 8 Wright & Miller, § 2035, at 483-86 (2d ed. 1994)) (emphasis added).

10

The Barge Plaintiffs have not made the showing required by <u>In re Terra</u>. Plaintiffs' summaries of the facts in their memorandum are hyperbolic and strained interpretations of the actual contents of their exhibits.   Furthermore, plaintiffs' memorandum does not merely exaggerate, but actually misrepresents, Lafarge's discovery responses, objections and actions.  In sum, plaintiffs' exhibits do not support their arguments, establish good cause for a protective order or justify the multiple draconian forms of relief requested.

Plaintiffs' motion for protective order has been rendered mostly moot by the court's recent order, ruling on plaintiffs' motion to compel responses to their discovery requests and directing Lafarge to produce all recorded witness statements, Record Doc. No. 12605, and by Lafarge's offer in its motion for reconsideration to produce all recorded statements without pursuing any appeal of that order, if plaintiffs' instant motion for protective order is denied.  The prior order provides an adequate remedy for the only ethical infringement that plaintiffs have proved, <u>i.e.</u>, the surreptitious tape recordings of putative class members by Lafarge's investigators without identifying themselves as working for an attorney.

Plaintiffs now contend that Lafarge's lawyers violated Louisiana Rule of Professional Conduct 4.2,[2] which prohibits Lafarge's lawyers from "communicat[ing] about the subject of the representation with: (a) a person the lawyer <u>knows</u> to be represented by another lawyer in the matter." La. R. Prof. Conduct 4.2 (emphasis added). However, plaintiffs have presented only speculation and supposition that Lafarge's lawyers <u>knew</u> that any of the witnesses its investigators interviewed was represented by counsel until after the interview was taken. In the case of Ronald McGill, when he revealed during the interview that he was represented by counsel, the investigator immediately terminated the interview. Plaintiff's Exh. 22, McGill interview. This indicates good faith compliance with the Rule by Lafarge's attorneys and investigators, not their bad faith violation of it, as plaintiffs suggest. When the Barge Plaintiffs' PSLC requested the statements of its clients in discovery, Lafarge produced them, as it knew that it must. Fed. R. Civ. P. 26(b)(3)(C).

Plaintiffs next argue that Lafarge's attorneys violated Louisiana Rule of Professional Conduct 4.3 because their investigators misrepresented themselves to putative class members. Rule 4.3 provides:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested.

---

[2]This court has adopted the Louisiana Rules of Professional Conduct. Local Rule 83.2.4E.

> When the lawyer <u>knows or reasonably should know</u> that the unrepresented person misunderstands the lawyer's role in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding.  The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

La. R. Prof. Conduct 4.3 (emphasis added).  The word "'knows' denotes actual knowledge of the fact in question.  A person's knowledge may be inferred from circumstances." <u>Id.</u> R. 1.0(f).  "'Reasonably should know' . . . denotes that a lawyer of reasonable prudence and competence would ascertain the matter in question." <u>Id.</u> R. 1.0(j).

Plaintiffs' allegation that Lafarge's investigators violated Rule 4.3 is not supported by the witness statements attached to plaintiffs' motion nor by the sign that Lafarge had posted in the Lower Ninth Ward seeking photographs and videotapes of the events of Hurricane Katrina.  In <u>Tyco Int'l Ltd. Secs. Litig.</u>, when faced with similar allegations in a defense motion for protective order that sought to preclude plaintiffs' counsel from using their witness interviews, the district court stated:

> None of these messages "state or imply" that counsel is disinterested and none contain any misrepresentations.  Each identifies that the individual seeking the contact is an investigator for a law firm and that the desired contact involves background research on, or investigating of, Tyco.  There is nothing in that to suggest disinterest and it does not constitute a misrepresentation.

<u>In re Tyco Int'l Ltd. Secs. Litig.</u>, 2001 WL 34075721, at *3.  The <u>Tyco</u> court therefore denied the motion for protective order.

Although the investigators in the instant case failed to identify themselves as working for an attorney, the court has already remedied that failure by ordering all of the recorded statements produced.  The investigators in the instant case did not "state or imply" that they were disinterested, they made no misrepresentations when they stated that they worked for a private investigative agency and they did not deliberately foster any "impression that the interviewers were on [the interviewees'] side," as alleged by plaintiffs.  Record Doc. No. 11765-2, at p.11.

The attorney's conduct in <u>La. State Bar Ass'n v. Harrington</u>, 585 So. 2d 514, 517 (La. 1990), cited by plaintiffs, was vastly dissimilar to the investigators' conduct in the instant case, and included lying to the unrepresented person about his identity, entering her home without permission, threatening to call the police and have her arrested, throwing his business card at her and falsely telling her that he and his client had filed a lien on her house.  The other case cited by plaintiffs, <u>First Nat'l Bank v. Assavedo</u>, 764 So.2d 162, 163 (La. App. 4th Cir. 2000), actually supports Lafarge's position, as the court there found that the attorney's employee had no obligation to tell the opposing party, who called the attorney's office after being served with the lawsuit, that she should hire an attorney of her own.  Furthermore, both of those cases were decided under a prior

14

version of Rule 4.3, which required the attorney to "'<u>assume</u> that an unrepresented person does not understand the lawyer's role in a matter and the <u>lawyer shall carefully explain</u> to the unrepresented person the lawyer's role in the matter.'"  <u>La. State Bar Ass'n</u>, 585 So. 2d at 516 n.1; <u>First Nat'l Bank</u>, 764 So. 2d at 163 (emphasis added).  That language was removed from Rule 4.3 when it was amended in 2004.  The current rule requires actual or constructive knowledge that the unrepresented person misunderstands the lawyer's role, instead of requiring the lawyer to assume a lack of understanding.  Plaintiffs fail to establish that knowledge.

In the absence of proof of any violations of Rule 4.2 or Rule 4.3, no sanctions are warranted.

Even if there had been any violations of Rule 4.2 or 4.3, plaintiffs have cited no case law for the proposition that relevant evidence should be precluded, thus punishing the client, as a disciplinary sanction for ethical misconduct by its attorneys.  The cases cited by Lafarge hold to the contrary, for the following reasons.

> An exclusionary policy frustrates truth and does not punish the ethical violation, but works against the client who may have been wronged by the opposing party as far as the substantive claim is concerned.  An ethical violation ought to be dealt with by sanctions against the errant attorney, except in special cases. . . .
> An exclusionary rule is an indirect sanction that sacrifices truth on the alter of advocacy rather than a more functional approach of imposing a direct sanction on the errant attorneys.  It leads to excessive quibbling, tactical maneuvering and possible frustration of justice. . . . .  Suppression

and exclusion in this case effects little benefit to the profession and is not directly corrective of misconduct.

Weider Sports Equip. Co. v. Fitness First, Inc., 912 F. Supp. 502, 510 (D. Utah 1996) (citing United States v. Adams, 977 F.2d 596, 1992 WL 279227 (10th Cir. 1992); United States v. Ryans, 903 F.2d 731, 740 (10th Cir. 1990); United States v. Hammad, 858 F.2d 834,  (2nd Cir. 1988); United States v. Dennis, 843 F.2d 652 (2d Cir. 1988); United States v. Thomas, 474 F.2d 110, 112 (10th Cir. 1973)); accord Calloway v. DST Sys., Inc., No. 98-1303-CV-W-6, 2000 WL 230244 (W.D. Mo. Feb. 28, 2000) (citing Plan Comm. in Driggs Reorg. Case v. Driggs, 217 B.R. 67, 72 (D. Md. 1998)); United States v. Scrushy, 366 F. Supp. 2d 1134, 1141 (N.D. Ala. 2005) (citing United States v. Lowery, 166 F.3d 1119, 1125 (11th Cir. 1999)).

Contrary to plaintiffs' arguments, Lafarge's objection that the work product doctrine protected these materials from disclosure was neither an ethical violation nor a violation of the discovery rules.  In making that objection and argument in opposition to plaintiffs' motion to compel production of the statements, Lafarge relied on the ABA's Formal Opinion 01-422.  Although the court overruled Lafarge's objection and ordered production of the statements, Lafarge made a good faith argument for a modification or reversal of existing law in opposition to plaintiffs' requests for production of documents. La. R. Prof. Conduct 3.1.

Plaintiffs overreach when they seek any notes made by defendant's investigators of the investigators' conversations with witnesses, whether the conversations were recorded or not.  "The Supreme Court has held that the work product doctrine applies to documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation."  In re Grand Jury Subpoena, 357 F.3d 900, 907 (9th Cir. 2004) (citing United States v. Nobles, 422 U.S. 225, 239 (1975)).  Under Fed. R. Civ. P. 26(b)(3), even if plaintiffs could show that they have "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means," the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).

Many courts have defined this second category of work product as "opinion work product."  See e.g. In re Qwest Commc'ns Int'l, 450 F.3d 1179, 1186 (10th Cir. 2006); In re EchoStar Commc'ns Corp., 448 F.3d 1294, 1302 (Fed. Cir. 2006); Tenn. Laborers Health & Welfare Fund v. Columbia/HCA Healthcare Corp., 293 F.3d 289, 294 (6th Cir. 2002); Baker v. General Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000); Better Gov't Bureau v. McGraw, 106 F.3d 582, 607 (4th Cir. 1997); Sporck v. Peil, 759 F.2d 312, 316 (3d Cir. 1985).  The Fifth Circuit has recognized "opinion work product" and noted that "some courts have provided an almost absolute protection for such materials."  In re Int'l Sys. and Controls Corp. Sec. Litig., 693 F.2d 1235, 1240 (5th Cir. 1982) (citing In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977); In re Doe, 662 F.2d 1073, 1080 (4th Cir. 1981)).  See also Robinson v. Texas Auto. Dealers Ass'n, 214 F.R.D. 432, 441 (E.D. Tex. 2003), vacated in part on other grounds, 2003 WL 21911333 (5th Cir. Jul. 25, 2003) ("A court cannot order production of

opinion work-product absent a showing of even higher necessity, which is a rare situation if it exists at all."); Conoco Inc. v. Boh Bros. Const. Co., 191 F.R.D. 107, 118 (W.D. La. 1998) ( "[O]pinion work product becomes subject to disclosure when (1) 'mental impressions are at issue in a case and the need for the material is compelling' and (2) pursuant to the crime-fraud exception to discovery.") (internal citations omitted).

Examples of opinion work product include notes and memoranda created by an attorney or his agent, regarding witness interviews, because they contain mental impressions.  Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875 (5th Cir. 1991); Baker, 209 F.3d at 1054.  Investigatory reports that contain summaries of witness interviews are also opinion work product because the reports are "suffused" with the investigator's mental impressions and conclusions.  Smith v. Diamond Offshore Drilling, Inc., 168 F.R.D. 582, 585 (S.D. Tex. 1996).

S.E.C. v. Brady, 238 F.R.D. 429, 442 (N.D. Tex. 2006); accord Disability Law Ctr. of Alaska, Inc. v. N. Star Behavioral Health Sys., No. 3:07-cv-00062, 2008 WL 616054, at *3 (D. Alaska Mar. 3, 2008); O'Connor v. Boeing N. Am., Inc., 216 F.R.D. 640, 643 (C.D. Cal. 2003) (citing Nobles, 422 U.S. at 239; Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000); Appeal of Hughes, 633 F.2d 282, 290 (3d Cir. 1980)).  Accordingly, plaintiffs may not obtain production of the investigators' notes of their conversations with witnesses.

Finally, plaintiffs' misrepresentations of Lafarge's discovery responses provide no basis for imposing any discovery sanctions.  The cited discovery responses in every case interposed work product objections and responded to the questions asked.  To the extent that any objections were improper or responses were evasive or incomplete, the

18

court has already ruled on plaintiffs' motion to compel and has required Lafarge to supplement its answers.  This is sufficient.

All of the relief sought, including requiring Lafarge to pay for a plaintiff's expenses to travel to New Orleans for the continuation of his deposition, which was terminated by his own counsel, Plaintiffs' Exh. P, deposition of Sidney Williams at pp. 89-91, is unwarranted.

Accordingly, plaintiffs' motion for a protective order is DENIED.

New Orleans, Louisiana, this  14th  day of May, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE