
| | |
|---|---|
| RICHARD IEYOUB IN HIS CAPACITY AS<br>LOUISIANA ATTORNEY GENERAL | 14TH JUDICIAL DISTRICT COURT |
| vs. NO. 98-6473 | PARISH OF CALCASIEU |
| PHILIP MORRIS INC., ET AL | STATE OF LOUISIANA |
| FILED: _____ | _____<br>DEPUTY CLERK OF COURT |

## OPINION AND JUDGMENT

On October 17, 2000, arguments were heard to consider the Motion to Enforce Master Settlement Agreement and for Injunctive Relief. Considering the pleadings, evidence received, applicable law and argument of counsel, the following findings of fact and orders are entered:

**RECEIVED JAN 0 9 2001 CIVIL DIVISION**

### OPINION

### Background and Jurisdiction

On March 16, 1996, a group of Louisiana attorneys filed a petition on behalf of the State of Louisiana to sue various companies to recover the cost of caring for Louisiana citizens who have been treated by the State for tobacco-related illnesses. This suit was filed in Calcasieu Parish, and it alleges a pattern of deception and abuse by the tobacco companies which have led millions to addiction and illness.

Attorney General Richard Ieyoub, choosing not to spend State resources on a case as uncertain as this one, elected to contract with more than one dozen private firms to pursue this claim. Several Louisiana firms and individuals, including Lake Charles Attorney Drew Ranier, were authorized to act on Behalf of the State through a Representation Agreement signed November 7, 1996. That agreement provided that Ranier would represent the State without compensation from the state but would pursue fees in accordance with law. Badon & Ranier, and the other private attorneys, were to pay all expenses of the case and they invested $3.5 million to prosecute the state's claims and to negotiate on behalf of Louisiana and other states to reach a settlement. The settlement was negotiated and signed by 47 attorneys general and the tobacco industry.

This court signed a motion to dismiss on December 11, 1998, which binds the parties to two master settlement agreements - one related to smokeless tobacco which was signed by 40 states, and one related


STATE'S EXHIBIT TV

to cigarettes, adopted by 47 states and the District of Columbia. (Collectively "MSA" or "Master Settlement Agreement"). Pursuant to the master settlement agreements, the State of Louisiana and the tobacco companies subjected themselves to the conditions set out in the "Consent Decree and Final Judgment". The Final Judgment specifically finds in Section VI(A) that:

> [j]urisdiction of this case is retained by the Court for the purposes of implementing and enforcing the Agreement and this Consent Decree and Final Judgment and enabling the continuing proceedings contemplated herein. . . . The State of Louisiana and/or any Participating Manufacturer may apply to the Court at any time for further orders and directions as may be necessary or appropriate for the implementation and enforcement of this Consent and Decree and Final Judgment.

Since this judgment has become final, the defendants have paid at least $200 million to the State of Louisiana, and all parties have honored this court's Final Judgment. It is under this continuing jurisdiction that the 14th Judicial District Court renders this opinion to enforce the provisions of the settlement pertaining to attorneys' fees.

### Attorneys' Fees

#### (a) Public Attorneys

Section XVII of the Master Settlement Agreement explains the defendants' obligation to pay attorneys' fees. It requires that the defendants pay government entities, such as the Louisiana Attorney General's Office, all costs and expenses related to the litigation or resolution of claims asserted by or against the participating manufacturers, providing that "such costs and expenses are of the same nature as costs and expenses for which the Original Participating Manufacturers would reimburse their own counsel or agents". The cost must be determined by the prevailing market rate for the area. This excludes costs and expenses relating to lobbying activities and is subject to an aggregate cap of $150 million for all Settling States, to be paid in the order in which states' judgments become final.

#### (b) Private Attorneys

Section XVII(d) provides that private attorneys listed in Appendix S of the Master Settlement Agreement, including Lake Charles attorney Drew Ranier, will be paid in accordance with Appendix O of the Master Settlement Agreement, which provides for binding, adversarial arbitration between the tobacco companies and the state's lawyers.

The parties contemplated that there might be disagreement regarding the amount of compensation. Therefore, Appendix O, Section 10 provides for a panel, established in Section 11, to determine the amount of outside counsel fees in case of a dispute. The three members of the panel are bound to consider "all relevant information submitted to them" to reach a fee award that "fairly provides for full reasonable compensation of state outside counsel," without considering fees received by other state counsel or necessarily limiting awards to an hourly-rate. Ranier was appointed to be the agent to receive and dispense payment of these fees from the defendants to the private attorneys. That panel met and determined that the Louisiana attorneys were entitled to $575 million. There are no provisions for appealing the panel's decision. The fees are paid over time according to an allocation formula for a period of 20-25 years.

### This Action

On April 7, 2000, Frederic Swaim, Jr. and Robert Marrero filed a petition in the Louisiana 19th Judicial District Court to modify the parties' settlement agreement because of alleged illegalities. This petition, docket number 471,238, attempts to certify all Louisiana taxpayers as a class in a suit against the Attorney General and Badon & Ranier. It alleges that the attorney payment agreement reached between Ieyoub and private counsel should be declared null because it violates Article II of the Louisiana Constitution and various aspects of the Louisiana Code of Professional Conduct. Petitioners' arguments are based, in part, on the assumption that the payment of attorneys' fees by the defendant tobacco companies is an illegal diversion of state funds.

In response to this suit, this court issued a temporary restraining order on behalf of the State of Louisiana and Drew Ranier which prohibits Frederick W. Swaim, Jr. and Robert L. Marrero from proceeding in their litigation in the 19th Judicial District.

### (a) Constitutional Considerations and the Code of Professional Conduct

Ieyoub v. W.R. Grace & Co., 708 So.2d 1227 (La.App. 3 Cir.1998) and Meredith v. Ieyoub, 700 So.2d 478 (La. 9/9/97) establish that it is illegal for the Louisiana Attorney General to pay attorneys with funds that have not been specifically allocated by the Louisiana Legislature. A contingency fee, by its nature, is the payment of attorneys' fees through a settlement that, otherwise, would belong to the State.

Under the current state constitution, there is only one remedy for this situation - for the legislature to allocate or ratify a portion of the tobacco settlement to pay attorneys' fees.

But the Meredith and W.R. Grace may distinguish them from this case. The contingency agreement in Meredith provided that private law firms were entitled to 25 percent of gross recovery to be paid directly from any settlement received by the State for environmental lawsuits. W.R. Grace provided for attorneys' fees of "thirty percent (30%) of Gross Recovery, if any". In the tobacco litigation, any fee recoveries are to come on top of, rather than as a part of, the State's recovery. While Swaim and Marrero argue that the right to pursue a claim at all constitutes the improper distribution of State funds, the nature of the tobacco settlement makes it less suspicious as a potential violation of the Louisiana Constitution.

A Maryland court considered whether that state's private attorneys were entitled to recover a tobacco contingency fee under its agreement with Phillip Morris and the other defendants. That court cited Meredith, then distinguished the tobacco settlement from earlier Maryland cases and statutes which, like Meredith, established that a state attorney general cannot sign contingency agreements because Maryland, like Louisiana, forbids the distribution of State money through any channels other than the Legislature. Phillip Morris, Inc. v. Glendening, 349 Md. 660, 709 A.2d 1230 (Md., May 19, 1998).

Glendening determined that the tobacco settlement is an exceptional case which, with the governor's blessing, allowed the contingency arrangement to take place without consulting the legislature. The Maryland court believed that the inherent functioning of government requires that executive officials sometimes act under an assumed power. While this argument has been rejected in Louisiana in Meredith, it was done so under different circumstances and by only the slimmest of Louisiana Supreme Court majorities.

Swaim and Marrero also claim that the Attorney General's agreement violates various sections of the Code of Professional Conduct. This court does not find any violation of the Code of Professional Conduct and will not pry into whether such a violation would invalidate any part of the tobacco settlement or the Representation Agreement, as suggested in that document. Because of procedural bars discussed, *infra*, this court will not have to determine whether Meredith applies to the tobacco settlement.

**(b) Can the Attorney Representation Agreement be Severed from the Judgment, and What Procedural Bars Exist to This Suit?**

Louisiana Code of Civil Procedure Article 531 provides that:

When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but *the first final judgment rendered shall be conclusive of all*. [emphasis added].

The crux of this case rests upon whether the Attorney Representation Agreement is final or whether it can be severed from the final judgment and attacked in another court. Swaim and Marrero allege that they are only attacking an agreement signed by Richard Ieyoub and not made part of the judgment. They characterize their suit as "simply a dispute between an attorney and client over a fee". This presupposes that they, as tax payers, stand in the shoes of the State as the "client" of Badon & Ranier.

The Attorney Representation Agreement is intricately woven into the settlement and final judgment issued by this court, which suggests that the two items cannot be separated. But in each of the previous cases limiting the Attorney General's ability to award files on a contingency basis, a petition was filed in the 19th Judicial District to attack the representation agreements separately from the case at issue. Swaim and Marrero point out that a dispute between an attorney and client over legal fees is separate from the underlying matters, and that a judgment can usually be separated into two distinct suits. They are correct, as a number of cases have demonstrated.

But in Meredith and W.R. Grace, the suits to nullify the representation contracts were made prior to the finalization of any judgment affected. In Meredith, the concerned taxpayers were members of the Louisiana Independent Oil & Gas Association which invalidated the contingency-based system of enforcing environmental regulations for fear of ongoing witch-hunts which could occur if the Attorney General's office were privatized. In W.R. Grace, asbestos contracts were attacked while a main demand was still pending in court. Because of this, Judge Patricia Minaldi severed the declaratory judgment from the main demand.

In this case, the main demand has already been settled and finalized. Petitioners had between November 7, 1996, and December 11, 1998, to file this suit. During at least a portion of this time, Swaim

-5-

and Marrero were aware that the Louisiana Supreme Court had invalidated contingency agreements with the State and they had several procedural options available. But once the judgment became final, res judicata took effect.

The Louisiana Legislature further approved and ratified the Final Judgment and the MSA by various acts including accepting and appropriating the tobacco manufacturers' settlement payments under the MSA and by enacting enabling legislation, La. R. S. 39:98.1, 98.4, 98.5, and 98.6. The Governor of Louisiana ratified the Final Judgment and the MSA by signing into law these statutes enacted by the Legislature. The voters of Louisiana ratified the Final Judgment and the MSA by approving two constitutional amendments, La. Const. Art. 7, § 10.8 and 10.10. Swaim and Marrero filed their suit in the 19th Judicial District Court on April 17, 2000, long after the case was filed, prosecuted and settled.

Louisiana Code of Civil Procedure Article 425(A) provides that, "[a] party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." Swaim and Marrero failed to prosecute their cause of action as taxpayers prior to the judgment becoming final. Louisiana Code of Civil Procedure Article 1841 provides that, "A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. . . . A judgment that determines the merits in whole or in part is a final judgment."

Swaim and Marrero point out that even final judgments have been reviewed to consider attorneys' fees. Again, they are correct. However, a number of items distinguish this case. First, the fees here are made by contractual agreement by parties who have knowledge and experience in such matters. The traditional attack on post-settlement attorneys' fees involve inexperienced clients who are overcharged out of their settlement. To correct this, a court would normally change the allocation of a static amount of money between the client and his attorney without changing what the defendant is required to pay. But the tobacco fees are on top of, rather than part of, the settlement amount. An inquiry into tobacco fees would require that a court change the amount paid by the defendants whose fees are already established by this court — a direct attack on the judgment.

## JUDGMENT

Based upon the foregoing opinion and findings,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that on December 11, 1998, this Court signed a Consent Decree and Final Judgment ("Final Judgment") which, in turn, approved and incorporated therein the Master Settlement Agreement ("MSA") between the plaintiff, the State of Louisiana, through Richard P. Ieyoub, the Attorney General for the State of Louisiana ("Louisiana"), and the defendants named therein, (collectively "tobacco manufacturers");

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that under the Final Judgment and the MSA, this Court retained exclusive and continuing jurisdiction and exclusive and continuing venue to implement and enforce all provisions of the Final Judgment and the MSA, including the provisions pertaining to the tobacco manufacturers' obligation to pay the individual attorneys and law firms that represented Louisiana (collectively referred to as "Louisiana private counsel");

**IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED** that Drew Ranier's motion is granted and that Frederick W. Swaim, Jr. and Robert L. Marrero and any and all of their attorneys, agents, servants, employees, successors, and assigns, and all other persons in active concert or participation with them (or either of them) be and are hereby preliminary and permanently ENJOINED AND RESTRAINED from instituting and/or prosecuting any action in any court other than the Fourteenth Judicial District Court that pertains to any part of the December 11, 1998 Consent Decree and Final Judgment entered by this Court in case number 98-6473, or that pertains to any part of the MSA that the Consent Decree and Final Judgment approved and implemented, specifically including, but not limited to, Section XVII and Exhibits O and S of the MSA.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that in accordance with the Final Judgment and the MSA, a three-member arbitration panel was established to determine, after an adversarial hearing, the amount of fees the tobacco manufacturers must pay Louisiana private counsel;

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that on January 31, 2000, and after an adversarial hearing, the three-member arbitration panel awarded Louisiana private counsel fees of $575 million, which, under the Final Judgment and the MSA will be paid over a period of 20-25 years, which has not, nor will be, funded by any part of the tobacco manufacturers' settlement payments to Louisiana;

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that in accordance with the Final Judgment and the MSA, Ranier was appointed as Designated Representative on behalf of Louisiana private counsel to receive and dispense the arbitration fee award;

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Louisiana, the tobacco manufacturers, and Louisiana private counsel have acted in good faith; in accordance with all applicable law, including the Rules of Professional Conduct; and in accordance with the Final Judgment and MSA;

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that no party or intervenor appealed or otherwise sought appellate review of the Final Judgment, the MSA, the arbitration procedure or the January 31, 2000 arbitration fee award;

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Swaim filed on April 7, 2000 a petition in the Louisiana 19th Judicial District Court, bearing docket number 471,238, to *inter alia*, retroactively challenge by an attempted class action the ability of Louisiana private counsel to have represented Louisiana in this case, the Master Settlement Agreement and the January 31, 2000 arbitration fee award;

**IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED** that after the Final Judgment and the MSA were approved by the Court on December 11, 1998, the Louisiana Legislature approved and ratified the Final Judgment and the MSA its actions, including but not limited to accepting and appropriating the tobacco manufacturers' settlement payments under the MSA and by enacting enabling legislation, La. R. S. 39:98.1, 98.4, 98.5, and 98.6, and by various other actions of its leaders and committees.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that Swaim's petition in the Louisiana 19th Judicial District Court constitutes a collateral attack upon the Final Judgment and the MSA, which have already conclusively and finally determined that this Court has exclusive and continuing jurisdiction and exclusive and continuing venue; that Louisiana private counsel had the right and the authority to represent Louisiana; and that the tobacco manufacturers have the exclusive obligation to pay the fees of Louisiana private counsel as determined by the arbitration panel;

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that if any such right or standing existed, Swaim had between November 7, 1996 and December 11, 1998, to institute an attack

upon Louisiana private counsel's ability to represent Louisiana in the State's lawsuit against the tobacco manufacturers but failed to do so;

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that if any such right or standing existed, Swaim nevertheless failed to timely intervene or to timely appeal or otherwise seek review of the Final Judgment, the MSA, the arbitration procedure, and the January 31, 2000 arbitration fee award, all of which are integral parts of the Final Judgment and the MSA;

**IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED** that the Motion to Enforce Master Settlement Agreement is granted and that Swaim's suit against Ranier has been extinguished by res judicata and estoppel principles and thus is barred from being brought in any other forum;

**IT IS FURTHER HEREBY ORDERED, ADJUDGED AND DECREED** that this Judgment constitutes a final judgment under La. Code of Civ. P. art. 1918.

**THUS DONE AND SIGNED** in Lake Charles, Louisiana on this __2__ day of January, 2001.

GREGORY D. LYONS,
JUDGE, 14TH JUDICIAL DISTRICT COURT