UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K"(2) |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State*, C.A. No. 07-5528 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**POST-HEARING BRIEF OF PLAINTIFF'S COUNSEL CONCERNING MOTION OF STATE FARM FIRE AND CASUALTY COMPANY AND CERTAIN OTHER INSURER DEFENDANTS TO DISQUALIFY PLAINTIFF'S PRIVATE COUNSEL**

Paul G. Aucoin, Attorney at Law; The Dudenhefer Law Firm, L.L.C.; Fayard & Honeycutt, A.P.C.; McKernan Law Firm; Ranier, Gayle and Elliot, L.L.C.; and Domengeaux Wright Roy & Edwards L.L.C., along with their individual counsel who have appeared in this case, all through their undersigned counsel, respectfully submit this post-hearing brief concerning State Farm Fire and Casualty Company and certain other insurer defendants' (collectively the "Insurers") motion to disqualify plaintiffs' private counsel.

**I.   Introduction**

Even after submitting two briefs and participating in a hearing, the Insurers have still not been able to demonstrate any actual, concurrent conflicts or any imminent potential conflicts for the six firms here representing the State of Louisiana—which is the sole Plaintiff in this suit. They have also failed to establish that the contracts between the Attorney General and these counsel violated any state statute or provision. Because of this, the Insurers have failed to carry

their admittedly significant burden of proving that counsel should be disqualified from representing the State in this case.

## II. Counsel's representation and participation in Katrina-related insurance litigation.

As the Court requested, what follows is a listing of: (1) the individual homeowner insureds represented by each firm concerning hurricane-related damage coverage issues and (2) the class action litigation concerning hurricane-related coverage damage issues in which the firms are participating.

### A. Paul G. Aucoin, Attorney at Law

Paul G. Aucoin, Attorney at Law is not representing any individual homeowner insureds concerning hurricane-related damage coverage issues or participating in any class action litigation concerning hurricane-related coverage damage issues, other than this case.

### B. The Dudenhefer Law Firm, L.L.C.

The Dudenhefer Law Firm, L.L.C. represents the following individual homeowner insureds concerning hurricane-related damage coverage issues:

(1)   Debra Jean Fischman v. State Farm Ins. Co., Case No. 06-4954 (E.D.La.)

(2)   Joseph Sher v. Lafayette Ins. Co. et al., Case No. 2006-09276, Div. G, Civil District Court, Orleans Parish.

Neither of these individual homeowner insureds has received or is currently eligible to receive Road Home benefits.[1] The Dudenhefer Law Firm, L.L.C. is not participating in any class action litigation concerning hurricane-related coverage damage issues, other than this case.

---

[1] *See* letters and agreements between counsel and individual homeowner insureds (attached hereto as *in globo* Ex. 10). This exhibit consists of letters and agreements containing confidential communications between counsel and their clients protected by the attorney-client privilege. Therefore, counsel is submitting this exhibit to the Court under seal simultaneously with the filing of this brief for *in camera* inspection.

### C.     Fayard & Honeycutt, A.P.C.

Fayard & Honeycutt, A.P.C. currently represents the following individual homeowner insureds concerning hurricane-related damage coverage issues in *Anne Kiefer, et al. v. Lexington Ins. Co. et al.*, Case No. 06-5370 (E.D.La.), a mass action which is currently administratively closed:

    (1)    Anne Z. Kiefer
    (2)    Sophie Dumoulins
    (3)    Tony Lyles
    (4)    Lynette Gordon
    (5)    Nicole Washington
    (6)    Jimmy and Sylvia Myles
    (7)    Breeda M. Thompson
    (8)    Dana M. Williams
    (9)    Yvette M. Poole Wallace
    (10)    Marguerite Williams
    (11)    Patrick and Amy Davis
    (12)    John Boyd, Jr.
    (13)    Kevin N. Brown
    (14)    Gail Melton
    (15)    Georgia Coleman
    (16)    Oliver and Melody Lee
    (17)    Georgianna Mitchell
    (18)    Gertrude Pierre
    (19)    Tobias and Oceal Stewart
    (20)    William P. Honeycutt, Sr.

Fayard & Honeycutt, A.P.C. also currently represents the following individual homeowner insureds concerning hurricane-related damage coverage issues in individual cases:

    (1)    Rene Hollins v. State Farm Fire & Casualty Co., Case No. 07-2660 (E.D. La.)

    (2)    Mary Beth Gillaspie v. State Farm Fire & Casualty Co., Case No. 07-2661 (E.D. La.)

    (3)    Shontra Varnado v. State Farm Fire & Casualty Co., Case No. 07-2662 (E.D. La.)

    (4)    Frank Anselmo v. State Farm Fire & Casualty Co., Case No. 07-2663 (E.D. La.)

    (5)    Viola Johnson v. State Farm Fire & Casualty Co.,, Case No. 07-2664 (E.D. La.)

    (6)    Jacqueline K. Brown v. State Farm Fire & Casualty Co., Case No. 07-2665 (E.D. La.)

    (7)    William Murdock v. Louisiana Citizen's Fair Plan et al., Case No. 07-4784 (E.D. La.)

    (8)    Guy Edwards v. Encompass Property and Casualty Co., Case No. 07-4808 (E.D. La.)

    (9)    Robert and Gwen Hankenhof v. Allstate Ins. Co., Case No. 07-4790 (E.D. La.)

    (10)    James Crawford v. Fidelity and Deposit Co. of Maryland, Case No. 07-4809 (E.D. La.)

    (11)    Charles and Sadie Gray v. Travelers Casualty & Surety Co., Case No. 07-4787 (E.D. La.)[2]

All of these thirty-one individuals have executed limited scope of representation and waiver agreements, which were reviewed by legal ethics counsel prior to their execution.[3] These agreements are being submitted to the Court under seal for *in camera* inspection simultaneously with the filing of this brief.[4] Fayard & Honeycutt, A.P.C. is also participating in the following class actions concerning hurricane-related coverage damage issues other than this case.[5]

---

[2] Mr. Fayard is also pursuing a personal claim for Katrina-related damage coverage, but he has not applied for Road Home benefits.

[3] Not all of these individual homeowner insureds have received or are eligible to receive Road Home benefits, but Fayard & Honeycutt, A.P.C. have obtained agreements for all its homeowner insured clients out of an abundance of caution.

[4] *See* Ex. 10.

[5] Ranier, Gayle and Elliot, L.L.C., Fayard & Honeycutt, A.P.C., Domengeaux Wright Roy & Edwards L.L.C., and the McKernan Law Firm are also involved in *Billy Broussard vs. Louisiana*

    (1)    Chehardy v. State Farm Fire & Cas. Co., Case Nos. 06-1672, 06-1673, 06-1674 (E.D. La.)

    (2)    Williams v. State Farm Fire & Cas. Co., Case No. 06-2919 (E.D. La.).

The *Chehardy* case has been superseded by the Insurance Master Consolidated Class Action Complaint. The master complaint has not yet been answered and no party has moved for class certification. In *Williams*, answers have been filed, but no party has moved for class certification. The *Williams* case was transferred to this Section by Judge Vance and is stayed.

### D. McKernan Law Firm

The McKernan Law Firm is not representing any individual homeowner insureds concerning hurricane-related damage coverage issues. Other than this case, the McKernan Law Firm is participating in the same class actions concerning hurricane-related coverage damage issues as Fayard & Honeycutt, A.P.C.

### E. Ranier, Gayle and Elliot, L.L.C.

Ranier, Gayle and Elliot, L.L.C. currently represents the following individual homeowner insureds concerning hurricane-related damage coverage issues:

    (1)    Bruce Paul & Betty Moore Kramer v. State Farm Fire & Casualty Co. et al., Case No. 08-0037 (E.D.La.)

    (2)    Paul S. & Janice C. Volpe v. Allstate Indemnity Co., Case No. 07-9421 (E.D.La.)

    (3)    Joseph Mitchell v. Allstate Insurance Co. et al., Case No. 07-9420 (E.D.La.)(this case includes a rental property claim).

---

*Citizens Property Insurance Corp.*, Case No. 85726, 15th J.D.C., Vermilion Parish, a putative class action in state court. In that suit, Ranier, Gayle and Elliot, L.L.C. represents the plaintiff Billy Broussard and has associated the other three firms. The plaintiff consented to limit the scope of these firms' representation to exclude any issues relating to the plaintiff's Road Home grant by executing an agreement reviewed by legal ethics counsel prior to its execution. *See* Ex. 10. The plaintiff has settled with the insurer and after the settlement is finalized, the entire case, including the putative class (which was never certified), is to be dismissed.

  (4) Wendy Volpe Charpio v. Allstate Insurance Co., Case No. 08-0072 (E.D.La.)

  (5) Warren Dudenhefer v. Louisiana Citizens, Case No. 110,267, 34th J.D.C., St. Bernard Parish.

None of these individual homeowner insureds has received or is currently eligible to receive Road Home benefits.[6] Other than this case, Ranier, Gayle and Elliot, L.L.C. is participating in the same class actions concerning hurricane-related coverage damage issues as Fayard & Honeycutt, A.P.C.

  **F.** **Domengeaux Wright Roy & Edwards L.L.C.**

Domengeaux Wright Roy & Edwards L.L.C. is not representing any individual homeowner insureds concerning hurricane-related damage coverage issues, but is participating in the same class actions concerning hurricane-related coverage damage issues as Fayard & Honeycutt, A.P.C.[7]

**III.** **Plaintiff's counsel do not have any actual or potential conflicts of interest in violation of Rule 1.7.**

Considering the above information, some firms simply do not have the necessary clients to implicate Rule 1.7. And as has been previously explained, the remaining firms' additional representations do not present any actual or potential conflict in violation of Rule 1.7.

The Insurers assert that Plaintiff's counsel must be disqualified because they cannot represent the State without violating Rule 1.7. But before we can determine whether that rule has been violated, we must determine whether it even applies. Rule 1.7 concerns whether an attorney has a concurrent conflict of interest between current clients. It is axiomatic then that one cannot have a conflict of interest in representing current clients unless there are at least two

---

[6] Ranier, Gayle and Elliot, L.L.C. has referred all of its individual homeowner insureds who received or were eligible to receive Road Home benefits to other competent counsel.

[7] *See supra*, n. 4.

6

clients. Therefore, it is essential that we first determine whether counsel has the two clients needed to implicate Rule 1.7. Only then can we examine whether there is a conflict between them.

The Insurers contend that counsel's representation of the State, the putative class members in this case, and individual homeowner insureds as well as counsel's participation in other class action suits against insurers for hurricane-related coverage issues create multiple clients that implicate Rule 1.7. The Insurers also take issue with Calvin Fayard's role as liaison counsel. But a review of each situation shows that: (1) counsel does not represent the putative class in this case for conflicts purposes, (2) conflicts based on the other class actions are much too attenuated and hypothetical to violate Rule 1.7, (3) only individual homeowner insureds who received or are waiting to receive Road Home benefits could create potential issues involving the State, and (4) Mr. Fayard's role as liaison counsel is one of coordinating claims, not of representing individuals. Therefore, a firm can only implicate Rule 1.7 if it represents individual homeowner insureds who have received or will receive Road Home benefits. But because each of those individual homeowner insureds has agreed to limit their counsel's scope of representation and waive any potential conflicts, these representations do not violate Rule 1.7. Accordingly, there is no conflict of interest in representing the State that requires disqualification.[8]

---

[8] Further, even if there were a conflict of interest for any one firm, it would not be imputed to the other firms. Conflicts cannot be imputed to co-counsel outside of one's firm, absent evidence that co-counsel learned confidential information that a client had not intended to be disclosed to the party that co-counsel represents. *Brennan's Inc v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 174 (5th Cir. 1979)("The courts have abjured a per se approach to the disqualification of co-counsel of disqualified counsel…. [Co-counsel] should not be disqualified unless he has learned from [disqualified counsel] information the plaintiff had intended not to be disclosed to the defendants.")(citing *Akerly v. Red Barn System, Inc.*, 551 F.2d 539 (3d Cir. 1977); *American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971)); Restatement (Third) of Law Governing Lawyers § 123, Reporter's note, cmt. c(iii), at 293 ("Courts generally have not imputed the

### A.  The State is the only named Plaintiff in this case because a putative class is not a separate client for conflict purposes.

The Insurers have proceeded on the premise that counsel represents more than one party in this suit because counsel represents both the State and the putative class in this case. This is incorrect. Since this lawsuit was filed, there has been only one named Plaintiff—the State of Louisiana. The only other parties to this suit are the defendant insurers, none of whom are represented by the counsel who are subject to this motion.

The Insurers contend that the putative class of individuals insureds who have or will receive Road Home benefits is a second client. But this contention is without merit. All of the relevant ethical guidelines and case law state that there is no attorney-client relationship between counsel and putative class members prior to certification of a class. For instance, the comments to Rule 1.7 of the ABA Model Rules provide:

> When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action suit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule.[9]

And, as explained in earlier briefing, the American Bar Association ("ABA"), in a recently issued formal opinion held:

> Before the class has been certified by a court, the lawyer for plaintiff will represent one or more persons with whom a client-lawyer relationship clearly has been established. As to persons who are potential members of a class if it is certified, however, no client-lawyer relationship has been established. A client-lawyer relationship with a potential member of the class does not begin until the class has been certified and the time for opting out by a potential member of the class has expired. If the client has neither a consensual relationship with the

---

disqualification of a person in one firm to lawyers in another firm, even if members of the two firms are working together, so long as there is only a small actual risk of confidential client information spreading from the primarily conflicted lawyer to the second firm."). Because there has been no allegation or evidence presented of such a disclosure here, we must consider each firm separately when assessing whether there has been a Rule 1.7 conflict.

[9] *Id.* 1.7 cmt. 25.

lawyer nor a legal substitute for consent, there is no representation. Therefore, putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period.[10]

Further, the Restatement (Third) of Law Governing Lawyers states:

> [A]ccording to the majority of decisions, once the proceeding has been certified as a class action, the members of the class are considered clients of the lawyer for the class; prior to certification, only those class members with whom the lawyer maintains a personal client-lawyer relationship are clients.[11]

Courts considering the issue have also consistently decided that there is no attorney-client relationship between counsel and a putative class prior to certification.[12] The basis for this conclusion is simply a matter of logistics and practicality:

> The sheer number of potential class members means that if each were considered an individual client … it would be impossible to ever pursue, much less resolve a case. Running a conflicts check—or obtaining a conflicts waiver would be impossible, as often, the number of individual class members is not known, much less the name of each class participant.[13]

---

[10] ABA Formal Ethics Op. No. 07-445 (2007).

[11] Restatement (Third) of Law Governing Lawyers § 99, cmt. l.

[12] *The Kay Co., LLC v. Equitable Production Co.*, 246 F.R.D. 260, 264 (S.D.W.Va. 2007)(stating that ABA Formal Op. No. 07-445 "reflects the majority rule that prior to class certification there is no lawyer-client relationship between the plaintiff's counsel and the putative class members."); *Hammond v. City of Junction City, Kans.,* Case No. 00-2146-JWL, 2002 WL 169370, at *4 (D. Kans. 1/23/02)("It is fairly well-settled that prior to class certification, no attorney-client relationship exists between class counsel and putative class members."); *In re: McKesson HBOC, Inc. Securities Litigation,* 126 F.Supp.2d 1239, 1245 (N.D. Cal. 2000)("The leading California case makes clear that putative class members are not 'represented'….)(*citing Atari v. Superior Court*, 166 Cal. App. 3d 867 (Cal App. 6th Dist. 1985)); Atari, 166 Cal. App. 3d at 873("We cannot accept the suggestion that a potential (but as yet unapproached) class member should be deemed 'a party … represented by counsel' even before the class is certified…."); *Garrett v. Metropolitan Life Ins. Co*., 95-CIV-2406, 1996 WL 325725, at *6 (S.D.N.Y. 6/12/96)("[B]efore class certification, the putative class members are not 'represented' by the class counsel for purposes of [applicable ethics provision]"); *Resnick v. American Dental Ass'n*, 95 F.R.D. 372, 377 n.6 (D.C. Ill. 1982)("Before certification [applicable ethics provision] does not apply because the potential class members are not yet 'represented by' counsel.").

[13] 21 FRANK L. MARAIST ET AL., LA. CIVIL LAW TREATISE § 8.16, 210 (2007)(quoting RICHARD A. ZITRIN & CAROL M. LANGFORD, LEGAL ETHICS IN THE PRACTICE OF LAW 291 (2d ed. 2002)).

Because counsel does not have an attorney-client relationship with the putative class, it is not counsel's client. Thus, the interests of the putative class cannot create a Rule 1.7 conflict. Because counsel represent only one party in this suit, that representation cannot form the basis of a concurrent conflict of interest. Accordingly, the Insurers must look outside of this litigation in an attempt to find the second client necessary to establish a conflict.[14]

### B. Disqualification of counsel based on hypothetical conflicts in other class action litigation that has not reached the certification stage is improper.

The Insurers first attempt to rely on other class action litigation to establish a conflict. The only relevant class actions concerning counsel here are the *Williams* and the *Chehardy* class actions, the latter of which has been superseded by the Insurance Master Consolidated Class Action Complaint. But these class actions are in the same procedural posture as this one—no party has moved for certification. Therefore, the Insurers, as they have asked the Court to do in this suit, again seek speculation about the entire course of a complex litigation that has barely begun. The Insurers' reliance on these class actions to establish a conflict highlights the premature nature of this motion to disqualify. And their attempt to use attenuated, hypothetical conflicts to seek the immediate disqualification of counsel when there are available class action procedures to resolve these issues should be denied.

The Insurers have made every attempt to identify any conceivable situation in which the interests of insureds would be adverse to the State and mandate that they require disqualification. But in any complex litigation, otherwise-aligned parties will have adverse interests.[15] Because

---

[14] For the same reason, the Insurers cannot use putative classes in other cases to establish a conflict.

[15] "Not all possibly differing interests of co-clients in complex and multiparty litigation involve material interests creating conflict." Restatement (Third) of Law Governing Lawyers § 128, cmt. d(iii). Moreover, "the possible existence of different objectives or other interests of class

issues regarding adverse interests between plaintiffs are not unique to this litigation, class action process has evolved to evaluate and resolve such issues.  First, as part of every class certification proceeding, the Court is required to determine whether class representatives and class counsel will adequately represent the class.[16]  This includes determining whether counsel has a conflict in representing the class.  Second, to resolve adverse interests between plaintiffs, courts often employ subclasses, particularly with respect to damage issues.[17]  These methods allow plaintiffs, with the oversight of the Court, to adjust the representatives and counsel that may best represent the class without resorting to the harsh remedy of disqualification.  By seeking disqualification prior to the certification process, itself designed to avoid conflicts, the Insurers have stripped Plaintiffs and the Court of their ability to use subclasses and other procedural mechanisms available during that process to solve any issue that may arise.

Moreover, the Insurers seek to force this issue when there is no need to do so.  As in this suit, the defendants have not yet answered the Insurance Master Consolidated Class Action Complaint lawsuit and the plaintiffs have not moved for class certification in either that case or

---

members" do not "necessarily produce conflicts requiring that the lawyer for the class not represent some or all members of the class or necessitate creation of subclasses." *Id.*

[16] Fed. R. Civ. P. 23(a)(4).

[17] *Id.* 23(c)(5).  As stated in Wright & Miller:

> Turning to Rule 23(c)(4)(B)[now Rule 23(c)(4)], the usual situation in which a court will divide a class into subclasses under that provision is when the class is found to have members whose interests are divergent or antagonistic.  As illustrated by the cases set out in the notes below, the court may group members into nearly homogeneous subclasses, thereby separating adverse as well as atypical class members.

WRIGHT & MILLER, FED. PRAC. & PROC. 3D § 1790; NEWBERG ON CLASS ACTIONS § 3.31 ("When the class members are united in interest on the liability issues but have potential conflicts regarding the nature of the relief or the division of a monetary award, the court may avoid the potential conflict by creating subclasses.").

in *Williams*.[18]  Further, even if the class certification process were underway in that case, any State participation in those suits is far off at best.  The State of Louisiana is not a party in either case and neither one of the class-action complaints mentions Road Home benefits.  Thus, the State will only be involved if it seeks a portion of the funds ultimately distributed to individual class members who have received Road Home benefits.  This will not occur unless first, there is a certified class and second, there are funds to distribute.  If neither occurs, and there are numerous scenarios in which it might not, then any issues related to the State will be rendered moot and these class actions will have no impact on the Road Home litigation.

In sum, class action procedure has been designed to resolve the numerous conflicts that can arise in complex litigation.  These procedures allow courts to evaluate and resolve conflict issues.  These procedures should not be disregarded unless there is an obvious immediate conflict that cannot be resolved.  That is not the case here.  At most, the Insurers can establish that in the latter stages of another class action lawsuit that has barely begun, there could be issues involving the State.  This is too attenuated and hypothetical to establish a conflict requiring disqualification now, where regular class action procedure is available to resolve these issues.  To disqualify counsel at this time without the presence of an actual conflict is unduly burdensome to the Plaintiffs in all of these litigations who wish to retain their chosen counsel and unnecessary.  Therefore, counsel's participation in other class actions in which the State is not participating and in which it will likely not participate in the near future does not create a Rule 1.7 conflict.

---

[18] The status of the class action lawsuits is contrasted with the individual lawsuits in which individual homeowner insureds are actively litigating and settling their claims and in which there is no similar process available to evaluate and resolve possible adverse interests.

### C. Counsel has resolved any potential conflicts involving the representation of individual homeowner insureds.

Finally, the Insurers contend that counsel's representation of individual insureds against insurers in individual lawsuits creates a Rule 1.7 conflict. However, as stated in our original opposition, representing individual insureds only implicates the State if the individual insured has received or is eligible to receive Road Home benefits.[19] If the individual insured has not participated in the Road Home program, then there are no State funds and no Subrogation Assignment at issue. Accordingly, only individual insureds who have received or are waiting to receive Road Home benefits can potentially constitute a second client for the purposes of Rule 1.7.

But as has been explained, any potential conflicts that may arise in pursuing individual litigation on behalf of those individual homeowner insureds have been resolved. *First*, each individual homeowner insured has consented to counsel limiting the scope of their representation to exclude issues involving the State and to obtain separate counsel to represent them on those issues. *Second*, the individual homeowner insured has waived any potential conflict by agreeing to continue the representation after being informed of the potential conflicts raised by the Insurers. *Third*, the State relies on its own attorney Dan Rees, as OCD counsel, or someone under his authority to negotiate all issues involving the State in individual cases. Therefore, in these cases, counsel does not have to take a position on any issue concerning the State. Because representing these individual homeowners in individual cases will not limit counsel's representation of the State in this litigation, these individual cases do not raise a Rule 1.7 conflict.

---

[19] Original Opposition to Motion to Disqualify, at 13-15.

13

### D.     Calvin Fayard's role as liaison counsel does not create a conflict.

Finally, the Insurers claim that Calvin Fayard's role as Plaintiffs' Steering Liaison Counsel for the Insurance subgroup creates a conflict. It does not. Mr. Fayard's role as liaison counsel is one of coordination, not representation, of individual insureds. The Manual for Complex Litigation defines the tasks of liaison counsel as follows:

> *Liaison Counsel.* Charged with essentially administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convening meetings of counsel, advising parties of developments, and otherwise assisting in the coordination of activities and positions. Such counsel may act for the group in managing document depositories and in resolving scheduling conflicts. Liaison counsel will usually have offices in the same locality as the court. The court may appoint (or the parties may select) a liaison for each side, and if their functions are strictly limited to administrative matters, they need not be attorneys.[20]

In the role of liaison counsel, Mr. Fayard does not gain any additional clients for conflicts purposes. Rather, he serves only to coordinate "the numerous parties with common or similar interests but separate counsel."[21] It is for this reason that courts issue additional orders to protect the work-product and attorney-client privilege for communications between various plaintiffs' counsel and their respective clients.[22] Therefore, this role does not create a Rule 1.7 conflict situation.[23]

---

[20] Manual for Complex Litigation (Fourth), § 10.221; Case Management Order No. 4, *In re: Katrina Canal Breaches Litigation*, No. 05-cv-4182 (E.D.La. Mar. 1, 2007) (Doc. 3299), at 10 (describing duties of Plaintiffs' Subgroup Liaison Counsel).

[21] Manual for Complex Litigation (Fourth) § 10.22.

[22] *Id.* § 10.222 ("Communication among the various allied counsel and their respective clients should not be treated as waiving work-product protection or the attorney-client privilege, and a specific court order on the this point may be helpful."); Case Management Order No. 4, *In re: Katrina Canal Breaches Litigation*, No. 05-cv-4182 (E.D.La. Mar. 1, 2007) (Doc. 3299), at 5 ("In addition to the privileged communications protected by the Federal Rules of Evidence and Civil Procedure, communications of any kind whatsoever, whether written, oral, or electronic, between or among plaintiffs' counsel and between or among plaintiffs' counsel and any plaintiffs

E. **None of the firms has a conflict.**

Considering the above, it is clear that these firms do not have a conflict. *First*, two of the six firms here either do not have the two clients necessary for a Rule 1.7 concurrent conflict. Although Paul G. Aucoin, Attorney at Law and The Dudenhefer Law Firm, L.L.C. represent the State in this suit, they simply do not represent any individual homeowner insureds who have received or are waiting to receive Road Home benefits. They also are not participating in any putative class actions against insurers outside of this case. Accordingly, Rule 1.7 will not apply to these two firms and they cannot have any conflict of interest. *Second*, while three of the four remaining firms, Ranier, Gayle and Elliot, L.L.C., the McKernan Law Firm, and Domengeaux Wright Roy & Edwards L.L.C. participate in other uncertified class actions against insurers, they do not currently have any individual clients that have received or are waiting to receive Road Home benefits. Because participation in these class actions does not violate Rule 1.7, these two firms also have no conflict. *Third*, Fayard & Honeycutt, A.P.C. represents individual homeowner insured clients who have received or are waiting to receive Road Home benefits in addition to participating in class actions against insurers. But each of Fayard & Honeycutt, A.P.C.'s individual homeowner insured clients have executed limited scope of representation and waiver agreements eliminating any potential conflict. Further, Mr. Fayard's role as liaison counsel concerns only the coordination of individual claims, not the representation of those

---

shall be privileged. Communications of any kind whatsoever, whether written, oral, or electronic, between or among defendants' counsel and between or among defendants' counsel and any defendants shall be privileged.").

[23] Mr. Fayard is also a member of the Insurance Plaintiff Subgroup Litigation Committee ("PSLC"), along with Joseph J. McKernan and Drew Ranier. This position is also one of coordination, rather than representation, of individual clients. Case Management Order No. 4, *In re: Katrina Canal Breaches Litigation*, No. 05-cv-4182 (E.D.La. Mar. 1, 2007) (Doc. 3299), at 10-11.

individuals. Accordingly, there is no basis to find that any firm has an actual or potential conflict in violation of Rule 1.7, and the Insurers' contentions to the contrary are without merit.

### IV.     The Attorney General's contract with counsel does not violate La. Rev. Stat. § 49:258.

The Insurers contend that the Attorney General contracts with counsel are invalid because they fail to comply with several state statutes. As explained in our earlier briefing, the vast majority of those statutes are only applicable if the Attorney General issues a contract obligating the State to compensate counsel. The only potential exception among those statutes is La. Rev. Stat. § 49:258, which does not facially implicate a financial purpose. However, La. Rev. Stat. § 49:258 does not invalidate the contracts at issue here because the Attorney General has complied with its provisions.

#### A.     The Attorney General has complied with La. Rev. Stat. § 49:258.

The Insurers claim that the Attorney General failed to comply with La. Rev. Stat. § 49:258 because there is no evidence that he first obtained the concurrence of the Commissioner of Administration before he appointed each counsel in this case. But this statute does not require that the Commissioner of Administration concur in each appointment of counsel. Rather, the commissioner only needs to concur in the preparation of the minimum qualifications and the appointment procedure used by the Attorney General to appoint counsel. Because the Commissioner has in fact participated in the minimum qualifications and procedure adopted to appoint counsel here, the Attorney General has fully complied with La. Rev. Stat. § 49:258.

La. Rev. Stat. § 49:258 states in full:

> Notwithstanding the provisions of any other law to the contrary and specifically the provisions of any law that authorizes the state or a state agency to appoint, employ, or contract for private legal counsel to represent the state or a state agency, including but not limited to the provisions of R.S. 42:261, 262, and 263, and R.S. 40:1299.39(E), **any appointment of private legal counsel to**

> **represent the state or a state agency shall be made by the attorney general with the concurrence of the Commissioner of Administration in accordance with the following procedure**:
>
> (1) All attorneys appointed as private legal counsel to represent the state or a state agency shall meet or exceed written minimum qualifications and all appointments shall be made in accordance with a written appointments procedure, both of which shall be established by the attorney general and the governor, or their designees. The Commissioner of Administration shall participate in the preparation of the minimum qualifications and the appointment procedure. The minimum qualifications and the appointments procedure shall be published at least annually in the Louisiana Bar Journal or such other publication as will reasonably assure dissemination to the membership of the Louisiana State Bar Association. The exercise of the authority provided in this Section shall not be subject to the Administrative Procedure Act.
>
> (2) All appointments of private legal counsel representing the state or a state agency that are in effect on the effective date of this Section shall be reviewed to ensure that such counsel satisfy the minimum qualifications provided for in Paragraph (1) of this Section and all such changes in or terminations of such appointments shall be made as are necessary to ensure such compliance.
>
> (3) For the purposes of this Section, "state agency" means any department, board, commission, agency, office, special district, authority, or other entity of the state, but does not include the Public Service Commission or the State Bond Commission or any political subdivision of the state, as defined by Article VI of the Constitution of Louisiana, or any entity of such political subdivision.[24]

Based on the plain language of the statute, how the Commissioner of Administration provides his concurrence is established "in accordance with the following procedure," which provides: "The Commissioner of Administration shall participate in the preparation of the minimum qualifications and the appointment procedure."[25] Nothing in those procedures authorizes the Commissioner of Administration then to approve each specific appointment. Accordingly, the

---

[24] La. Rev. Stat. § 49:258 (emphasis added).

[25] *Id.*

Commissioner's role is limited to preparing the minimum qualifications and the appointment procedure itself.

The Commissioner of Administration has satisfied that task. The minimum qualifications applicable to the contract here were published in the Louisiana Bar Journal as required by the statute.[26] Concerning those minimum qualifications, the Insurers assert only that counsel have a conflict of interest for the reasons set forth in their motion. Because there is no such conflict, as has been explained, the Insurers have not shown that counsel fail to satisfy these requirements. Accordingly, La. Rev. Stat. § 49:258 is not a basis to disqualify counsel here.[27]

### B. Even if La. Rev. Stat. § 49:258 has been violated, it is not a basis for permanent disqualification.

As stated in our original opposition, even if this Court were to invalidate the Attorney General contracts for failure to comply with La. Rev. Stat. § 49:258, which it should not, it still would not be a basis to grant a motion to disqualify. In the cases cited by the Insurers in which the Attorney General contracts were invalidated, none of the counsel was permanently disqualified from representing the State. Rather, they were enjoined from representing the State until such time as they complied with the applicable statutory provisions. Because the Insurers have not sought an injunction in their request for relief, their motion to disqualify should be denied.

---

[26] Minimum Qualifications for Appointment as a Special Assistant Attorney General, 55 La. Bar J. 123 (Aug./Sept. 2007)(attached hereto as Ex. 11).

[27] The Insurers maintain that the Attorney General is required to seek the approval of the Commissioner of Administration before appointing counsel in any matter. To construe this statute in this manner is inconsistent with the separation-of-powers doctrine as it would restrict the Attorney General's powers as an independent officer under the Louisiana Constitution to appoint counsel and prosecute claims as he deems fit. For that reason, such an interpretation would contravene elementary rules of statutory interpretation. *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Building & Construction Trades Council*, 485 U.S. 568, 575 (1988); *State v. Interiano*, 868 So. 2d 9, 13 (La. 2004).

**IV.     Conclusion**

The Insurers have not met their burden of proving an actual conflict or a potential conflict that is likely to occur in this case. The Insurers have also failed to prove that the Attorney General contracts are invalid. Accordingly, their motion to disqualify should be denied.

> Respectfully submitted,
>
> By:   /s/ Thomas P. Owen, Jr.
>
> Richard C. Stanley, 8487
> Thomas P. Owen, Jr., 28181
> Melissa V. Beaugh, 28250
>     Of
> STANLEY, FLANAGAN & REUTER, L.L.C
> 909 Poydras Street, Suite 2500
> New Orleans, Louisiana 70112
> Telephone: (504) 523-1580
> Facsimile: (504) 524-0069
>
> -and-
>
> Basile J. Uddo, 10174
> Attorney at Law
> 3445 North Causeway Boulevard
> Suite 724
> Metairie, Louisiana 70002
> Telephone: (504) 834-1819
> Facsimile: (504) 832-7208
>
> Attorneys for Paul G. Aucoin, Attorney at Law; The Dudenhefer Law Firm, L.L.C.; Fayard & Honeycutt, A.P.C.; McKernan Law Firm; Ranier, Gayle and Elliot, L.L.C.; and Domengeaux Wright Roy & Edwards L.L.C.

**CERTIFICATE OF SERVICE**

     I hereby certify that on May 22, 2008, I electronically filed the foregoing Post-Hearing Brief of Plaintiff's Counsel concerning State Farm Fire and Casualty Company and Certain Other Insurer Defendants to Disqualify Plaintiff's Private Counsel with the Clerk of Court using the CM/ECF system which will send a notice of filing to all counsel accepting electronic notice. I further certify that I mailed the foregoing document and notice of electronic filing filed by first-class mail to all counsel of record who are non-CM/ECF participants.

                                                   /s/ Thomas P. Owen, Jr.