UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K"(2) |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State*, C.A. No. 07-5528 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

**POST-HEARING MEMORANDUM IN SUPPORT OF MOTION OF
STATE FARM FIRE AND CASUALTY COMPANY AND CERTAIN OTHER
INSURER DEFENDANTS TO DISQUALIFY PLAINTIFF'S PRIVATE COUNSEL**

927801v.1

**TABLE OF CONTENTS**

I.      OTHER REPRESENTATIONS OF INSUREDS BY COUNSEL ................................... 1

    A.      Insurance Class Actions..................................................................................... 1

    B.      Waivers .............................................................................................................. 3

II.     CONSIDERATION OF PUTATIVE CLASS MEMBERS' INTERESTS IN
    CONFLICTS ANALYSIS ............................................................................................. 6

III.    IMPUTATION OF CONFLICTS AMONG CO-COUNSEL......................................... 11

IV.     DEMONSTRATED CONFLICTS OF INTEREST ....................................................... 12

V.      STANDING OF DEFENDANTS TO RAISE CONFLICTS OF INTEREST TO
    WHICH THEY ARE NOT PARTIES ......................................................................... 14

VI.     IMPACT OF DISQUALIFICATION ON THE COURT'S PREVIOUS ORDERS
    AND RULINGS .......................................................................................................... 15

VII.    PROPER INTERPRETATION OF LSA-R.S. 49:258 ................................................. 15

VIII.   ABSENCE OF LEGAL BASIS FOR COMPENSATION ............................................ 19

IX.     CONCLUSION............................................................................................................ 21

927801v.1

## TABLE OF AUTHORITIES

<u>**CASES**</u>:

*America Can Co. v. Citrus Feed Co.*, 436 F.2d 1125 (5th Cir. 1971).................................... 11-12

*Board of Commissioners of Orleans Levee District v. Department of Natural Resources*, 496 So. 2d 281 (La. 1986) .......................................................................................................... 18

*Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671 (5th Cir. 1977) .......................................................................................................................... 14-15

*Commission on Ethics for Public Employees v. IT Corp.*, 423 So. 2d 695 (La. App. 1st Cir. 1982) .......................................................................................................................... 19-20

*Fiandaca v. Cunningham*, 927 F.2d 825 (1st Cir. 1987) ............................................................ 15

*Flying J Inc. v. TA Operating Corp.*, No. 06-30, 2008 WL 648545 (D. Utah March 10, 2008) ............................................................................................................................................ 4

*Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2d Cir. 1977) ........................... 11

*Glazer v. Commission on Ethics for Public Employees*, 431 So. 2d 752 (La. 1983).................. 20

*Green v. Louisiana Underwriters Insurance Co.*, 571 So. 2d 610 (La. 1990) ...................... 16-17

*Harte Biltmore Ltd. v. First Pennsylvania Bank, N.A.*, 655 F. Supp. 419 (S.D. Fla. 1987)........ 4-5

*Huston v. Imperial Credit Commercial Mortgage Investment Corp.*, 179 F. Supp. 2d 1157 (C.D. Cal. 2001) ................................................................................................................ 9, 10

*In re America Home Products Corp.*, 985 S.W.2d 68 (Tex. 1998)............................................. 12

*In re Gopman*, 531 F.2d 262 (5th Cir. 1976) ............................................................................. 15

*Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir. 1984)...................................................................... 15

*Langbecker v. Electronic Data System Corp.*, 476 F.3d 299 (5th Cir. 2007)............................ 11

*Meredith v. Ieyoub*, No. 96-1110 (La. 9/9/97); 700 So. 2d 478.............................................15, 18

*Moreno v. Autozone, Inc.*, No. C05-04432, 2007 WL 4287517 (N.D. Cal. Dec. 6, 2007) ...... 9, 10

*Palmer v. Louisiana  State Board of Elementary & Secondary Education*, No. 02-2043, (La. 4/9/03); 842 So. 2d 363 ...................................................................................................... 16

927801v.1

*Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129 (D.D.C. 1994)............................... 9, 10

*Perillo v. Johnson*, 205 F.3d 775 (5th Cir. 2000)........................................................ 5

*Plaquemines Parish Commission Council v. Delta Development Co., Inc.*, 502 So. 2d 1034 (La. 1987) .................................................................................................. 5

*Scheffler v. Adams & Reese, LLP*, No. 06-1774, (La. 2/22/07); 950 So. 2d 641 ......................... 5

*Smith v. Whatcott*, 774 F.2d 1032 (10th Cir. 1985)..................................................... 11

*Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676 (E.D. La. 2006) .................................... 19

*Unified Sewerage Agency of Washington County, Oregon v. Jelco, Inc.*, 646 F.2d 1339 (9th Cir. 1981) ................................................................................................. 4

*United States v. Clarkson*, 567 F.2d 270 (4th Cir. 1971) .............................................. 15

*Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449 (S.D.N.Y. 2000)......................... 4

*Yates v. Applied Performance Technologies, Inc.*, 209 F.R.D. 143 (S.D. Ohio 2002) ............ 9, 10

## STATUTES, REGULATIONS & RULES:

La. Const. art. IV, § 8 .................................................................................... 18

LA Rev. Stat. § 49:257(C) .................................................................................. 19

LA Rev. Stat. § 49:258 ................................................................................. 15-18

LA Rev. Stat. § 49:258(1) .................................................................................. 16

LA Rev. Stat. § 1102(18) .................................................................................. 20

LA Rev. Stat. § 1102(19) .................................................................................. 20

1988 La. Session Law Service Act 448 at LA Rev. Stat. § 49:258............................................ 17

1992 La. Session Law Service Act 385 at LA Rev. Stat. § 39:1535........................................... 17

LA Civil Code art. 2030 .................................................................................... 20

Fed. R. Civ. P. 23(a)(4).................................................................................. 9, 10

Fed. R. Civ. P. 23(c)(1)(B) ................................................................................. 10

927801v.1

Fed. R. Civ. P. 23(c)(4) 1996 Advisory Committee Notes............................................................ 10

Fed. R. Civ. P. 23(c)(5)............................................................................................................... 10

Fed. R. Civ. P. 23(g).................................................................................................................... 10

Fed. R. Civ. P. 23(g)(2)(A) 2003 Advisory Committee Notes ................................................9-10

Model Rules of Prof'l Conduct R. 1.7................................................................................... 7, 8

Model Rules of Prof'l Conduct R. 1.7, cmt. 8 ........................................................................ 12

Model Rules of Prof'l Conduct R. 1.7, cmt. 25 ....................................................................... 7

Model Rules of Prof'l Conduct R. 1.9...................................................................................... 6

Model Rules of Prof'l Conduct R. 1.9, cmt. 3 ......................................................................... 5

Model Rules of Prof'l Conduct R. 4.2...................................................................................... 7

Model Rules of Prof'l Conduct R. 7.3...................................................................................... 7

LA R. Prof'l Conduct 1.9................................................................................................... 5, 7

LA R. Prof'l Conduct 1.9(a) ................................................................................................... 5

Proposed      LA     R.     Prof'l     Conduct     7.4(a),     available     at:
http://www.lsba.org/2007InsideLSBA/documents/ethics/1ProposedLARule7-1.pdf .................. 8

## OTHER AUTHORITIES:

Restatement (Third) of the Law Governing Lawyers § 132 cmt. c (2000) .................................... 4

Alba Conte & Herbert Newberg, 3 Newberg on Class Actions § 7.31 (4th ed. 2002) .................. 3

Manual for Complex Litigation (Fourth) § 21.15 (2004) ........................................................... 3

ABA Formal Opinion 07-445 ..................................................................................................... 7

La. State Bar Association, Rules of Professional Conduct Committee, Opinion 08-RPCC-016 (March 29, 2008) ................................................................................................................ 13

927801v.1

Pursuant to the Court's request at the hearing on May 1, 2008 (5/1/08 Tr. at 62-64; *see also* Doc. 12998), State Farm Fire and Casualty Company and the other moving insurers identified in Docs. 10937 and 10304 (collectively "Defendants") submit this supplemental memorandum in support of their motion to disqualify the seven (formerly eight[1]) law firms retained by the State in this putative class action lawsuit ("Counsel") based on conflicts of interest and the former Attorney General's non-compliance with Louisiana constitutional, statutory, and regulatory provisions.[2]  Defendants address various questions raised by the Court at argument and also respond to points made by Counsel in their Surreply and at argument.

## I.    OTHER REPRESENTATIONS OF INSUREDS BY COUNSEL

### A.    Insurance Class Actions

The Court asked for specific information as to other cases in which Counsel are representing insureds.  (5/1/08 Tr. at 5-6.)  While Counsel are in a better position to respond to that question in the first instance, Defendants note that publicly available federal docket information reflects that the Counsel identified below are counsel of record for plaintiffs in at least the following insurance putative class actions pending in federal court:

---

[1] On April 24, 2008, Gauthier, Houghtaling & Williams, LLP moved to withdraw from representing the State, without giving a reason.  (Doc. 12746.)  The motion was granted the following day.  (Doc. 12763.)

[2] It is significant that the current Attorney General did not seek to defend these engagements in the pre-argument briefing and did not participate in the argument.  Moreover, although Counsel in their Surreply suggested that they spoke for the Attorney General on these issues (Doc. 12772 ("Surreply") at 1 n.1), their attorney acknowledged at argument that he was speaking only for Counsel, and not for the Attorney General.  (5/1/08 Tr. at 49-50.)

1

| Case | Counsel Representing Plaintiffs | Proposed Class Definition |
|------|-------------------------------|---------------------------|
| ***Chehardy v. Wooley***, (3:05-cv-01140-FJP-CN, M.D. La.; subsequently transferred to E.D. La. and consolidated with No. 05-4182) | McKernan Law Firm (Joseph J. McKernan, Gordon J. McKernan, Chet Boudreaux)<br><br>Fayard & Honeycutt (Calvin C. Fayard, Jr., Vernon P. Thomas, Esq.) | Includes insured homeowners in the Parishes of Orleans, St. Bernard, and Jefferson whose property was damaged during Hurricane Katrina (Amended and Restated Complaint (ECF 516, No. 05-4182) ¶ 25.) |
| ***Turk v. Louisiana Citizens Property Ins. Corp.***, (6:06-cv-00144-RTH-CMH, W.D. La.) | Murray Law Firm (Stephen B. Murray, Arthur M. Murray, Nicole Ieyoub Murray) | Includes insured homeowners whose property was damaged during Hurricane Rita (Petition (ECF 1) ¶ IX.) |
| ***Williams v. State Farm and Casualty Co.***, 2:06-cv-02919-SRD-JCW (E.D. La. ; subsequently consolidated with No. 05-4182) | Ranier, Gayle & Elliot (Drew Ranier, Frank Elliot)<br><br>McKernan Law Firm (Joseph J. McKernan) | Includes insured homeowners in the Parishes of Jefferson, Orleans, Plaquemines, St. Bernard, and St. Tammany whose property was damaged during Hurricane Katrina (First Amended Class Action Complaint (No. 06-2919, ECF 16) ¶ 13.) |
| ***In re: Katrina Canal Breaches Consolidated Litigation***, 2:05-cv-04182-SRD-JCW (E.D. La.) (Ins. Master Consolidated Class Action Complaint, ECF 3413) | Fayard & Honeycutt (Calvin C. Fayard, Jr.)<br><br>McKernan Law Firm (Joseph J. McKernan)<br><br>Ranier, Gayle and Elliot (Drew A. Ranier) | Includes insured homeowners in the State of Louisiana whose property was damaged during Hurricane Katrina (Ins. Master Consolidated Class Action Complaint (ECF 3413) ¶ 48.) |

It is undisputed that the insured homeowners in these putative classes include many Road Home applicants and recipients under whose insurance policies the State seeks to recover in the Road Home litigation.

      As discussed below, the interests of members of these putative classes must be taken into account in the conflicts analysis. The Court's comments, however, suggested a question as to whether these putative class actions remain relevant for conflicts purposes in light of the Fifth Circuit's decision in the *Chehardy* case and the Louisiana Supreme Court's ruling in *Sher v. Lafayette Ins. Co..* (*See* 5/1/08 Tr. at 6.) Although these two decisions are significant developments in the legal landscape, the putative class actions remain relevant to the conflicts analysis as long as they remain pending—and counsel for plaintiffs in those cases (including

those attorneys who are among Counsel in this case) thus far have made no move to dismiss their class action complaints on the basis of *Chehardy* and/or *Sher*.

The Court has inquired as to which of the putative class actions would have primacy, apparently to suggest that perhaps some are more relevant than others for conflicts purposes.  (5/1/08 Tr. at 7.)  The law does not dictate any single approach or procedure for handling multiple, overlapping, and/or parallel putative class actions.   The authorities contemplate a range of options for managing multiple such actions, including consolidation, coordination, staying or enjoining certain pending actions, and a variety of other approaches. *See generally* Alba Conte & Herbert Newberg, 3 Newberg on Class Actions § 7.31 (4th ed. 2002); Manual for Complex Litig. (Fourth) § 21.15 (2004).  However, for the reasons discussed below, the interests of the putative class members in those actions cannot be disregarded, and that will remain the case as long as those actions remain pending with Counsel among the attorneys of record, regardless of how the Court resolves the primacy issues.

**B.    Waivers**

The Court also asked for identification of purported waivers of conflicts obtained by Counsel.  (5/1/08 Tr. at 5:16-23, 46:1-4, 62:19.)  Counsel are in a better position to respond to the Court's inquiry in the first instance.   As explained previously by Defendants, however, Counsel have conflicts that cannot be waived.  (*See* Doc. 10937 ("Motion") at 20 n.37; Doc. 12599 ("Reply") at 11-12.)   Moreover, even assuming their conflicts could be waived, Defendants note that there are two areas in which Counsel have not indicated that they have sought or obtained waivers.  First, none of the remaining Counsel claims to have obtained any

927801v.1

kind of conflicts waiver from their client the State.[3]   Second, none of the remaining Counsel claims to have obtained waivers from any of their former clients, including those Counsel who have represented that they have shed clients in an effort to avoid conflicts.

Initially, it is well established that a lawyer may not unilaterally cure a concurrent representation conflict arising from a new matter by the expedient of severing relationships with pre-existing clients whose interests would be adverse in the new matter:

> The weight of authority holds, … that once the lawyers find themselves representing clients with adverse interests, they generally may not drop one client in order to represent the other, preferred client.  In other words, a lawyer or firm may not drop a current client like a "hot potato" in order to turn the client into a former client as a means of curing the simultaneous representation of adverse interests.

*Flying J Inc. v. TA Operating Corp.*, No. 06-30, 2008 WL 648545, at *4 (D. Utah March 10, 2008); Restatement (Third) of the Law Governing Lawyers § 132 cmt. c (2000) ("A premature withdrawal violates the lawyer's obligation of loyalty to the existing client and can constitute a breach of the client-lawyer contract of employment.").   Therefore, for conflicts purposes, courts will not honor an attorney's unilateral termination of a client.   "If this were not the case, the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client.'"   *Unified Sewerage Agency of Wash. County, Or. v. Jelco, Inc.*, 646 F.2d 1339, 1345 n.4 (9th Cir. 1981); *see also Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 453 (S.D.N.Y. 2000) ("It is … established law that an attorney cannot avoid disqualification … merely by 'firing' the disfavored client, dropping the client like a hot potato, and transforming a continuing relationship to a former relationship by way of client abandonment."); *Harte Biltmore Ltd. v. First Pa. Bank, N.A.*, 655 F. Supp. 419, 422 (S.D. Fla.

---

[3] Only Gauthier, Houghtaling & Williams affirmatively represented that it had obtained an informed waiver from the State (*see* Doc. 12306 at 7, Exh. 3 ¶5), but as noted earlier, that firm has now withdrawn from this case.

1987) ("Public confidence in lawyers and the legal system must necessarily be undermined when a lawyer suddenly abandons one client in favor of another."). Accordingly, to the extent Counsel have attempted to avoid their concurrent conflicts of interest by jettisoning any of their individual homeowner clients, such efforts are insufficient.

Further, even where client relationships are terminated properly, conflicts may still arise under Rule 1.9 and proper waivers would be required as to any such conflicts. Such a conflict would exist for any former insurance client of Counsel whose insurance claims for Katrina- or Rita-related property damages the State seeks to assert in this case. Rule 1.9 provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." La. R. Prof'l Conduct 1.9(a).[4] Comment [3] to ABA Model Rule 1.9 explains that "[m]atters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." The same transaction (*i.e.*, the claim for hurricane-related property damages under a policy of insurance) is the basis for both the prior representation of an insured on his or her homeowners insurance damage claim

---

[4] The law imposes a paramount duty of fidelity and undivided loyalty upon an attorney's relationship with his client that continues even after termination of the attorney-client relationship; this duty "superinduces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client only on the basis of the strictest fidelity and honor." *Scheffler v. Adams & Reese, LLP*, 06-1774, p. 13 (La. 2/22/07); 950 So. 2d 641, 651 (quoting *Searcy v. Novo*, 188 So. 490, 498 (La. App. 2d Cir. 1939)); *see also Plaquemines Parish Comm'n Council v. Delta Dev. Co., Inc.*, 502 So. 2d 1034, 1040 (La. 1987) ("In no relationship is the maxim that 'no man can serve two masters' more rigidly enforced than in the attorney-client relationship."). Accordingly, an attorney has an ethical obligation not only to preserve client confidences, but also to avoid accepting employment that is adverse to the interests of a former client in the same or a substantially related matter. *See Perillo v. Johnson*, 205 F.3d 775, 801 (5th Cir. 2000).

and the State's current subrogation/assignment claim seeking to recover insurance proceeds; moreover, both claims involve the same legal dispute (*i.e.*, who is entitled to what, if any, amounts under such policy). Indeed, Counsel have acknowledged this substantial relationship in arguing that "the purpose of each representation is the same—to obtain the largest possible recovery from insurers," but ignore their clients' conflicting and competing claims to any amounts recovered. (Doc. 12293 ("Opp.") at 7 (emphasis added).)

Accordingly, Counsel would need proper and effective waivers from such former insurance clients in order to represent the State. This requirement would extend to all former insurance clients whose insurance policies the State may seek to invoke in this case, not just those clients terminated by Counsel after the motion to disqualify was filed. There is, however, no indication that Counsel have obtained waivers from any of these former clients. Moreover, as previously discussed, even as to *current* clients from whom Counsel represent that they have obtained waivers, Counsel have failed to provide sufficient *evidence* for this Court to evaluate whether such purported waivers were informed and otherwise valid. (*See* Reply at 13-14.)

## II.   CONSIDERATION OF PUTATIVE CLASS MEMBERS' INTERESTS IN CONFLICTS ANALYSIS

In an effort to avoid the conflicts presented by their efforts to represent putative classes of insureds, Counsel have mischaracterized various ethics authorities as establishing that interests of putative class members are to be disregarded prior to class certification. None of the authorities cited by Counsel stands for the proposition that ethics rules are to be applied in a mechanical manner such that putative class members' interests can be entirely ignored prior to a certification decision. Instead, the authorities cited by both Counsel and Defendants demonstrate that the application of ethics rules in the class action context depends on the particular rule

6

involved, the policies underlying the rule, and the unique posture of putative or actual class members in relation to those directly involved in the litigation.

*ABA Formal Opinion 07-445*:   Counsel incorrectly suggest that this opinion concludes "that you must disregard putative class members for conflict purposes."  (5/1/08 Tr. at 37.)  The opinion does not cite or discuss Model Rules 1.7 or 1.9 and does not address conflicts issues at all, but rather considers whether Model Rules 4.2 (communication with represented parties) and 7.3 (solicitation of prospective clients) impose any restrictions on communications with putative class members prior to class certification.  The Opinion's conclusion that putative class members are not considered clients of putative class counsel for purposes of those particular rules during the pre-certification stage does not translate into a conclusion that putative class members' interests may be disregarded for conflicts purposes, and courts have specifically held to the contrary, as discussed below.

*Comment [25] to Model Rule 1.7*:   Counsel also suggest that a comment to Rule 1.7 supports disregarding the interests of putative class members.  (5/1/08 Tr. at 37.)  Although the comment in question was not identified, presumably Counsel are referring to Comment [25] to Model Rule 1.7:

> [25] When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule. Thus, the lawyer does not typically need to get the consent of such a person before representing a client suing the person *in an unrelated matter*. Similarly, a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents *in an unrelated matter*.

(Emphasis added.)   Counsel fail to note the fact that the comment is focused on *unrelated* matters.  Thus, for example, if putative class counsel in an insurance case were defending an employer in an entirely unrelated employment matter brought by an unnamed putative class

7

member, the comment would support the conclusion that Rule 1.7 would not necessarily preclude the concurrent representations.   The concurrent representations here, however, are anything but unrelated.   In various putative class actions, Counsel seek to obtain insurance proceeds for putative class members.  In the Road Home case, Counsel assert the State's claims to some of those same insurance proceeds.

*Proposed Louisiana Rule 7.4*:  Counsel also assert that a proposed Louisiana rule on advertising states that "you don't represent anyone other than the named representatives.  Those are your clients for ethics purposes."  (5/1/08 Tr. at 45.)  The legal significance of a proposed rule is not immediately apparent, nor do Counsel even identify the rule to which they refer.  Presumably this was a reference to proposed Louisiana Rule 7.4(a),[5] which states as follows:

> RULE 7.4 DIRECT CONTACT WITH PROSPECTIVE CLIENTS
>
> (a) Solicitation. Except as provided in subdivision (b) of this Rule, a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or *prior lawyer-client relationship*, in person, by person to person verbal telephone contact, through others acting at the lawyer's request or on the lawyer's behalf or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain. A lawyer shall not permit employees or agents of the lawyer to solicit on the lawyer's behalf. A lawyer shall not enter into an agreement for, charge, or collect a fee for professional employment obtained in violation of this Rule. The term "solicit" includes contact in person, by telephone, telegraph, or facsimile, or by other communication directed to a specific recipient and includes (i) any written form of communication directed to a specific recipient and not meeting the requirements of subdivision (b) of this Rule, and (ii) any electronic mail communication directed to a specific recipient and not meeting the requirements of subdivision (c) of Rule 7.6. *For the purposes of this Rule 7.4, the phrase "prior lawyer-client relationship" shall not include relationships in which the client was an unnamed member of a class action.*

(Emphasis added.)   If adopted, Proposed Rule 7.4 would give lawyers greater latitude in soliciting business from former clients, but this increased latitude is not extended to solicitations

---

[5] Available at http://www.lsba.org/2007InsideLSBA/documents/ethics/1ProposedLARule7-1.pdf.

made to unnamed members of classes previously represented by the lawyer (who presumably would remain subject to the existing ethical restrictions on solicitations by lawyers). The proposed rule does not purport to address conflicts issues. Note also that the proposed rule expressly refers to the unnamed class members as "clients," but treats them as non-clients *only* for purposes of this particular rule.

By contrast, courts have specifically applied the conflicts rules to the interests of putative class members. For example, the court in *Yates v. Applied Performance Technologies, Inc.*, 209 F.R.D. 143, 151-53 (S.D. Ohio 2002), disqualified putative class counsel on the grounds of the law firm's concurrent representation of an individual whose interests were found to conflict with those of the putative class:

> In this case, the ethical considerations arising from Ferron's representation of Mr. McConnell and the putative classes of plaintiffs in *Yates, Dicks,* and *Lucent* far outweigh the parties' right to counsel of choice. The Court is required to protect not only the interests of the named plaintiffs in these cases, but also the putative class members. The conflicts of interest inherent in Ferron's multiple representation significantly impair Ferron's duty of loyalty to each of its clients and greatly undermine the Court's confidence in the firm's ability to adequately represent the interests of the putative class plaintiffs.

*Id.* at 152; *see also Palumbo v. Tele-Communications, Inc.*, 157 F.R.D. 129, 133 (D.D.C. 1994) ("In the class action context, the Court has an obligation to closely scrutinize the qualifications of counsel to assure that all interests, including those of as yet unnamed plaintiffs are adequately represented."). Indeed, relying on Rule 23(a)(4)'s adequacy requirement, some courts have applied a "stringent approach" or a "heightened standard" to conflict issues in the putative class context. *Huston v. Imperial Credit Commercial Mortgage Invest. Corp.*, 179 F. Supp. 2d 1157, 1167, 1180 (C.D. Cal. 2001); *Palumbo*, 157 F.R.D. at 133; *Moreno v. Autozone, Inc.*, No. C05-04432, 2007 WL 4287517, at *6-7 (N.D. Cal. Dec. 6, 2007); *see also* 2003 Advisory Committee Notes to Fed. R. Civ. P. 23(g)(2)(A) ("Whether or not formally designated interim counsel, an

9

attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole."). Accordingly, the interests of putative class members cannot be ignored.

Counsel suggest that consideration of their conflicts can wait until after a decision on class certification (5/1/08 Tr. at 45), but such an approach would impermissibly disregard the interests of putative class members recognized in the cases discussed above and frustrate the interests of the parties and the Court in efficiently litigating this matter. Because adequacy of representation is a consideration in determining whether to certify a class, Fed. R. Civ. P. 23(a)(4) & (g), the question of whether putative class counsel have disqualifying conflicts cannot be postponed until after a decision on class certification. Rather, the issue must be addressed at or before the time of a certification decision, *see* Fed. R. Civ. P. 23(c)(1)(B) (certification order must appoint class counsel), and is appropriately considered in a motion separate and apart from class certification briefing. *Yates*, *Moreno* and *Palumbo*, for example, each involved separate motions to disqualify. The *Huston* court specifically directed defendants to file a separate motion to disqualify after the issue had been raised first in briefing on certification and lead counsel appointment. *See Huston*, 179 F. Supp. 2d at 1162-63, 1181. Indeed, it would be counterproductive to proceed to the certification briefing stage ignoring Counsel's known and obvious conflicts.

Counsel also suggest (Surreply at 6; 5/1/08 Tr. at 41-47) that any conflicts could somehow be addressed by creating sub-classes pursuant to Fed. R. Civ. P. 23(c)(5). *See* 1996 Advisory Committee Notes to former Fed. R. Civ. P. 23(c)(4) ("Where a class is found to include subclasses divergent in interest, the class may be divided correspondingly, and each subclass treated as a class."). However, Defendants' motion is not based on conflicts between or among groups of putative class members that could be addressed through subclasses. Rather, the

927801v.1

conflicts are between *all* of the Road Home grant recipients Counsel seek to represent in this and other putative class actions and Counsel's client the State.   No amount of subclassing can eliminate the conflicts arising from the fact that Counsel seek to recover for the State some or all of the insurance proceeds they seek to recover for putative class members who received Road Home grants.  *Compare Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 316 (5th Cir. 2007) ("On remand, the district court must more fully consider the implications of the proven *intraclass* conflicts for the adequacy of representation …. If a class is certified, the court may have to consider certifying subclasses to represent the participants with conflicting interests." (emphasis added)).

## III.    IMPUTATION OF CONFLICTS AMONG CO-COUNSEL

At oral argument, the Court asked whether disqualification of some of the State's private attorneys on conflict grounds would require disqualifying the remaining firms as well. (5/1/08 Tr. at 6.)  In contrast to the rules automatically imputing conflicts to all members of a conflicted attorney's firm, the courts have declined to adopt a *per se* approach to the disqualification of co-counsel of disqualified counsel.   Instead, courts determine whether disqualification is warranted in such circumstances based upon consideration of several factors, including whether disqualified counsel actually possessed confidential information, the relationship between disqualified counsel and co-counsel, the role that both the tainted attorney and co-counsel have played in the underlying litigation, the likelihood that confidences have been shared, and the extent to which the tainted attorney has acted as a conduit of information to co-counsel.  *See Smith v. Whatcott*, 774 F.2d 1032, 1034 (10th Cir. 1985); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 233-36 (2d Cir. 1977); *Am. Can Co. v. Citrus Feed Co.*,

11

436 F.2d 1125, 1129-30 (5th Cir. 1971); *see also In re Am. Home Prods. Corp.*, 985 S.W.2d 68, 79-82 (Tex. 1998).

In this case, there is no specific evidence in the record as to the extent and/or manner of sharing of confidential client information among Counsel.  Defendants do not have access to such evidence, and Counsel have thus far provided no such evidence to the Court. What is in the record, however, is former Attorney General Foti's August 27, 2007 letter instructing Mr. Fayard and Mr. McKernan that the other private firms had been "approved as 'co-counsel' … to assist you under your direction."  (*See* Exh. 3.)[6]  Counsel have not attempted to rebut the inference that at least some information-sharing is likely to occur when one set of attorneys are working under the direction of other attorneys in representing the State in a single action.

## IV.   DEMONSTRATED CONFLICTS OF INTEREST

Counsel have continued to downplay their conflicts as only "hypothetical" or "potential" in nature (5/1/08 Tr. at 41, 46-47), but as previously discussed (*see* Reply at 3-5), any conflicts analysis must involve the exercise of a reasonable degree of foresight as to the issues likely to be implicated by a representation.  *See* ABA Model R. Prof'l Conduct 1.7, cmt. 8.  In this case, Counsel will face conflicting duties to the State and their homeowner clients with respect to any issues relating to the validity, enforceability, or interpretation of the Subrogation / Assignment Agreement and when they undertake (both in this case and others) to assert and

---

[6] As in their Reply brief, unless otherwise specified, all exhibit citations are to the exhibits submitted by Defendants in support of their motion to disqualify and those exhibits are numbered sequentially across all of Defendants' briefs, continuing with this Post-Hearing Memorandum.

927801v.1

develop the facts relating to the claim under a given insurance policy.[7]  *Compare* La. State Bar Association, Rules of Professional Conduct Committee, Opinion 08-RPCC-016 (March 29, 2008) (attached as Exhibit 26) (reasoning that in attempts to represent both driver and guest-passenger in connection with an automobile accident "even when a conflict is not apparent at the outset of the representation, in most cases a conflict will arise when the defense begins to assert and develop facts that the driver was partially at fault").  These conflicts are both real and unavoidable.

The parties have referenced and discussed a number of other cases as illustrative of the conflicts between the State and individual homeowners who are participating in the Road Home Program.  While the State's intervention in *Flotte v. State Farm Fire & Casualty Co.*, No. 06-5011 c/w 06-7497, Doc. 54-2 (E.D. La., filed Aug. 14, 2007), and the plaintiff-homeowner's concursus petition in *Gillard v. American Security Insurance Co.*, No. 06-9237 (Civ. Dist. Ct., Parish of Orleans) (filed October 2007), represent specific instances in which the conflicting interests of the State and insureds can and have played out, a more recent putative class action directly pits insureds and the Road Home Program against each other.  In *Groby v. Davis*, the putative representatives of a class of Road Home participants do not directly challenge the validity of the Subrogation / Assignment Agreement as such, but they do allege that the Road

---

[7] Counsel have previously attempted to dismiss conflicts relating to allocation of insurance settlements between dwelling coverage (in which the State asserts an interest) and other coverages (in which the State does not assert an interest) as a "red herring," asserting in their Opposition to the Motion to Disqualify that the State purportedly has no interest in such allocation issues.  (Opp. at 22.)  This representation to the Court is flatly contradicted not only by positions the State has taken in connection with the settlement review process (Reply at 7), but also by recent statements by Road Home officials to the press.  Rebecca Mowbray, *Road Home slows claim payoffs*, New Orleans *Times-Picayune*, May 14, 2008, at 1 (attached hereto as Exhibit 27) ("Recovery authority spokeswoman Christina Stephens said the state needs to review all of that information [regarding additional payments] to watch for suspicious classifications of damage, such as putting everything on contents and living expenses to avoid having a grant reduced.  'They want to look at how the settlements are structured and to look at what funds are included in the settlement,' Stephens said.  'Sometimes we'll have questions for the insurance companies and questions for the homeowner.'").

Home Program unconstitutionally discourages lawsuits challenging actions by the Road Home

Program, including with respect to the Subrogation / Assignment Agreement.  *See Groby v.*

*Davis*, No. 08-1524, Doc. 1 (E.D. La., filed Apr. 4, 2008) (Lemmon, J.).  Specifically, among the

actions the plaintiffs allege are unconstitutionally impeded is action:

> To protect rights to insurance benefits affected by subrogation provisions of the
> grant agreement documents, including, inter alia, challenging Defendants'
> arbitrary or capricious failure or refusal to consent to a settlement of a suit
> brought by the Homeowner against his/her wind or homeowner's insurer for
> damage caused by Hurricane Katrina or Rita …

*Groby v. Davis*, No. 08-1524, Doc. 1 ¶ 23(E) (E.D. La., filed Apr. 4, 2008) (Lemmon, J.).  In

addition to these barriers, Counsel's homeowner clients will now apparently also have to

overcome their own attorneys' refusal to raise challenges to the terms or application of the

Subrogation / Assignment Agreements or to pursue methods to expedite the State's consideration

and approval of a settlement with their insurer.

## V.   STANDING OF DEFENDANTS TO RAISE CONFLICTS OF INTEREST TO WHICH THEY ARE NOT PARTIES

Counsel have suggested at various times (*see, e.g.*, Surreply Brief at 2 n.3, 3 n.5)

that Defendants lack standing to seek their disqualification based upon conflicts of interest

associated with attorney-client relationships to which Defendants are not a party.  However, the

Fifth Circuit has specifically recognized that a party has standing to bring a motion to disqualify

the opposing party's counsel even if the moving party is not the other client whose interests

create the conflict for the attorney sought to be disqualified.  *Brown & Williamson Tobacco*

*Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir. 1977) ( "And appellant has standing to

seek disqualification even though it is not an aggrieved client because its attorneys are authorized

to report any ethical violations committed in the case."); *In re Gopman*, 531 F.2d 262, 265-66

(5th Cir. 1976); *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984); *United States v.*

*Clarkson*, 567 F.2d 270, 272 n.1 (4th Cir. 1971).[8]  Accordingly, both Defendants and the Court

have an interest in this case being litigated by counsel free of conflicts of interest, and Counsel is

mistaken in intimating that these conflicts issues should somehow be assessed differently due to

the mere fact that they are being raised by Defendants rather than by the affected homeowners

themselves.

## VI.   IMPACT OF DISQUALIFICATION ON THE COURT'S PREVIOUS ORDERS AND RULINGS

The Court also inquired about the impact of disqualification on any previously

issued orders and rulings.  (5/1/08 Tr. at 8.)  It appears that the parties are in agreement that none

of the orders entered to date by the Court would be undermined or called into doubt by the

disqualification of any of the private lawyers for the State.  (5/1/08 Tr. at 11, 55.)  Generally,

absent a showing of an actual adverse effect that taints the prior proceedings, the mere fact that

such proceedings were conducted by counsel subject to disqualification should not necessarily

render them invalid.  *See Fiandaca v. Cunningham*, 827 F.2d 825, 831 (1st Cir. 1987) (after

concluding district court had erred in denying motion to disqualify class counsel, looking to

"actual adverse effects caused by the court's error" in determining which rulings needed to be

reversed for further proceedings on remand).

## VII.   PROPER INTERPRETATION OF LSA-R.S. 49:258

Counsel have sought to excuse the former Attorney General's various procedural

failings in connection with his retention of Counsel on the basis that the statutory and regulatory

requirements identified by Defendants do not apply since Counsel are not to be paid out of State

property.   However—even setting aside the fact that Counsel's contemplated compensation

---

[8] Further, the Louisiana Supreme Court has held that parties that would be the subjects of lawsuits filed by private counsel retained by the Attorney General have standing to raise any constitutional or statutory violations associated with such counsel's retention.  *Meredith v. Ieyoub*, 96-1110, pp. 3-5 (La. 9/9/97); 700 So. 2d 478, 480.

would be in fact from State property—not all of these provisions require an expenditure of any sum of money in order to be applicable, including LSA-R.S. 49:258, which requires that "any appointment of private legal counsel" be made "with the concurrence of the commissioner of administration."

Counsel argue that 49:258 should be not be given its plain meaning of requiring the concurrence of counsel for each appointment of private counsel, but instead should be construed to provide that the only necessary concurrence occurs when the commissioner of administration participates in developing written minimum qualifications and appointment procedures.  (5/1/08 Tr. at 50:8-51:22.)   Counsel's interpretation is contrary to the plain language of the statute. Given that Section 49:258(1) specifically mandates that "[t]he commissioner of administration shall participate in the preparation of the minimum qualifications and the appointment procedure," the separate statement in the preceding paragraph that "any appointment of private legal counsel" shall be made "with the concurrence of the commissioner of administration" would be unnecessary and superfluous under Counsel's view.  "Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless, if that result can be avoided."  *Palmer v. La. State Bd. of Elementary & Secondary Educ.*, 02-2043, p. 5 (La. 4/9/03); 842 So. 2d 363, 367.   In the case of 49:258, the obvious meaning of the concurrence requirement in the first paragraph is that it applies to each appointment of private counsel.

This interpretation is supported by Louisiana Supreme Court case law discussing this statute.   In *Green v. Louisiana Underwriters Ins. Co.*, the Supreme Court stated its

understanding of 49:258 as requiring the concurrence of the office of risk management[9] in appointments of counsel in particular cases.   571 So. 2d 610, 613 (La. 1990) ("Pursuant to La.R.S. 49:258, *any* appointment of private counsel by the attorney general must be made 'with the concurrence of the director of the office of risk management.'") (emphasis added).   Indeed, it was that very understanding that ultimately led it to conclude that the statute only applies to cases involving the protection of a right or interest of the State and not cases involving state officers acting as fiduciaries for third parties and, therefore, the Commissioner of Insurance should not be deemed a "state agency" for purposes of 49:258 when acting as a liquidator, rehabilitator, or conservator of an insurance company.   *Id.*   In so holding, the Supreme Court noted, among other things, that holding otherwise would present a conflict of interest in "those situations where the failed insurance company has a claim against the state which must be defended by the attorney general and the office of risk management."   *Id.* at 613 n.4.   Plainly the Supreme Court understood the statute to require the concurrence of the office of risk management in the appointment of counsel in particular cases, not just the setting of general minimum qualifications and appointment procedures.   Otherwise, its concerns about the involvement of the office of risk management in appointment decisions for a discrete type of case would have been much less acute.

Counsel suggest, however, that the Louisiana Constitution grants the Attorney General the power to retain private legal counsel and argue that this purported constitutional power is impermissibly infringed by applying the statute's plain language to require the

---

[9] As originally enacted, 49:258 provided for concurrence by the office of risk management, which was charged with assisting in the defense of claims made against the State.   1988 La. Sess. Law Serv. Act 448 at LA R.S. 49:258; *Green*, 571 So. 2d at 613 n.3.   In 1992, this responsibility was switched to "the commissioner of administration through the office of risk management," and 49:258 was amended to require the concurrence of the commissioner of administration.   1992 La. Sess. La. Serv. Act 385 at LA R.S. 39:1535, LA R.S. 49:258.

commissioner of administration's concurrence in each appointment of private counsel.  Counsel further conclude that the constitutional problem they have constructed would be avoided by reading 49:258 (contrary to its plain language) to limit the commissioner's involvement to developing written minimum qualifications and appointment procedures.  (5/1/08 Tr. at 50:8-51:22.)  This argument fails because its premise—that the Louisiana Constitution grants the Attorney General the power to retain private legal counsel—is incorrect.  The constitution only authorizes the Attorney General "to institute, prosecute, or intervene in any civil action or proceeding" and provides that "[t]he assistant attorneys general shall be appointed by the attorney general to serve at his pleasure."  La. Const. art. IV, § 8.  The power to conduct litigation does not include the inherent authority to hire outside attorneys, and the power to appoint "assistant attorneys general" applies only to the Attorney General's staff.  *See Meredith*, 700 So. 2d at 482.  Unlike the federal Constitution, under the Louisiana Constitution all rights are reserved to the people as exercised through the Legislature unless expressly granted to other branches of government either by constitution or legislation.  *Bd. of Comm'rs of Orleans Levee Dist. v. Dept. of Natural Res.*, 496 So. 2d 281, 286 (La. 1986).  Because the constitution does not grant the Attorney General the power to hire private legal counsel to represent the State, that power is retained by the people and has been conferred by the Legislature through 49:258.  That the Legislature chose to limit such authority by requiring the concurrence of the commissioner of administration does not violate the constitution.[10]

---

[10] Moreover, even if there were any basis for the argument that involvement by the commissioner of administration in the appointment of private counsel would interfere with the purported constitutional powers of the Attorney General, Counsel do not explain why the commissioner's participation in developing minimum qualifications for private counsel would be constitutionally permissible while the commissioner's participation in the appointment of private counsel in particular cases would be constitutionally impermissible.  Further, to the extent that Counsel's argument effectively attacks the constitutionality of *any* involvement by the commissioner of administration, they are attacking the constitutionality of 49:258.  Such an attack would put them in a position of conflict with the

18

## VIII.   ABSENCE OF LEGAL BASIS FOR COMPENSATION

The law, whether state or federal, is clear that any attorney fee award under the common fund doctrine, whether calculated on a percentage basis (as required by Louisiana law and employed by Judge Fallon in *Turner v. Murphy Oil USA, Inc.*[11]) or under the lodestar method (as employed in some other jurisdictions), is to be taken *out of the recovery fund* created for the benefit of the class.  Counsel seek to render their proposed method of compensation constitutional by elevating form over substance and taking their fees exclusively from that portion of the recovery fund that otherwise would go to individual homeowners and leaving the State's portion unreduced.  However, this approach would run contrary to the equitable premise underlying the common fund doctrine, namely that *all* who benefit from the common fund contribute to the cost of creating that fund.  *See Turner*, 422 F. Supp. 2d at 680.  Therefore, the common fund doctrine would not permit Counsel to foist the *entirety* of their fees away from the State and onto individual homeowners.

Moreover, even if Counsel could conceive of some way to have someone other than the State pay their fees,[12] that arrangement would still violate the Louisiana Governmental Ethics Code.  Counsel have never disputed this point.  Instead, they merely note aspects of the on-point 2001 Opinion by the Louisiana Board of Ethics addressing illegalities in the settlement of the tobacco litigation (*see* Exh. 22) which Counsel apparently believe make it less forceful or somehow distinguishable.  For example, they point out that the tobacco counsel did not concede

---

Attorney General, who is required by law to "represent or supervise the representation of the interests of the state in any action or proceeding in which the constitutionality of a state statute or of a resolution of the legislature is challenged or assailed."  LSA-R.S. 49:257(C).

[11] 422 F. Supp. 2d 676, 680-83 (E.D. La. 2006).

[12] Indeed, Counsel candidly admitted at oral argument that it was their hope "to get [their fees] from [Defendants] at the end of the day."  (5/1/08 Tr. at 48:13-14.)

that they were "public servants" within the scope of the Ethics Code and that tobacco counsel were "only" required to pay a $650,000 fine.  (*See* Opp. at 33.)  However, case law makes clear that otherwise private persons or companies are considered "public servants" for purposes of the Ethics Code when they are engaged in the performance of a governmental function or are acting under the supervision or authority of an elected official or governmental entity.  LSA-R.S. 42:1102(18) & (19); *Glazer v. Comm'n on Ethics for Pub. Employees*, 431 So. 2d 752, 755-58 (La. 1983) (holding private businessman who served as member of State Mineral Board was public servant subject to Ethics Code as were any actions taken by his wholly-owned and controlled private corporation); *Comm'n on Ethics for Pub. Employees v. IT Corp.*, 423 So. 2d 695, 700-01 (La. App. 1st Cir. 1982) (holding private corporation contracting with state agency was "public employee" subject to Ethics Code).  Nor is it apparent why the size of the penalty imposed by the Board of Ethics for the violation in that case makes Counsel's arrangement with the former Attorney General any more legal.

Though Counsel appear to acknowledge that they are proposing to violate the Ethics Code, they are inexplicably dismissive of that illegality.  (*See* 5/1/08 Tr. at 53:11-16 (stating in reference to the ethics opinion from the tobacco cases that "the only thing they violated was the ethics law" and "with the exception of violating the ethics law, no violation there").)  Whether it violates the Louisiana Constitution, the State's procurement statutes and regulations, or the Ethics Code, Counsel's arrangement is still *illegal* and, therefore, a nullity. *See* LSA-C.C. art. 2030.  That in the tobacco cases the illegality may have only been identified, pursued, and punished after conclusion of the litigation does not give Counsel license to insist that the illegality of their own arrangement be ignored during the pendency of this case.

Nor does Counsel's apparent willingness to bear the risk of non-payment somehow render their arrangements any less illegal.  It would be the height of absurdity to permit a state contractor to continue to perform work under a contract with confessedly illegal payment provisions just so long as everyone acknowledges the illegality and the contractor agrees to take the chance that someone will discover the illegality and/or prevent the State from honoring the illegal arrangement.  Allowing such an end-run around the State Constitution, the specific procedures and requirements laid out in the procurement statutes and regulations, and the Ethics Code would undermine the transparency and efficiency sought by the process, not to mention the general rule of law.

## IX.     CONCLUSION

For the reasons set forth above and in Defendants' prior briefs, the private law firms representing the State should be disqualified.

Respectfully submitted,

*/s/ Wayne J. Lee*
Wayne J. Lee, 7916
  wlee@stonepigman.com
Stephen G. Bullock, 3648
  sbullock@stonepigman.com
Mary L. Dumestre, 18873
  mdumestre@stonepigman.com
Andrea L. Fannin, 26280
  afannin@stonepigman.com
           Of
STONE PIGMAN WALTHER
  WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

           And

927801v.1

Charles L. Chassaignac IV, 20746
 cchassaignac@phjlaw.com
        Of
PORTEOUS, HAINKEL
 & JOHNSON, L.L.P.
343 Third Street, Suite 202
Baton Rouge, Louisiana  70801
Telephone:  (225)383-8900
Facsimile:  (225) 383-7900

*Attorneys for State Farm Fire and Casualty
Company and State Farm General
Insurance Company*


/s/ Maura Z. Pelleteri
Maura Z. Pelleteri, 8463
Amy S. Malish, 28992
        Of
KREBS, FARLEY & PELLETERI, L.L.C.
Texaco, Center, Suite 2500
400 Poydras Street
New Orleans, Louisiana  70130
Telephone:  (504) 299-3570
Facsimile:  (504) 299-3582

*Attorneys for Aegis Security Insurance
Company*


/s/ Howard B. Kaplan
Howard B. Kaplan, 14414
        Of
BERNARD CASSISA ELLIOTT & DAVIS
1615 Metairie Road
P.O. Box 55490
Metairie, Louisiana  70055-5490
Telephone:  (504) 834-2612

*Attorneys for Lafayette Insurance Company,
United Fire and Casualty Company and
United Fire and Indemnity Company*

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
           Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

*Attorneys for America First Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Mutual Insurance Company*

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
           Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

*Attorneys for Metlife, Inc., Economy Premier Assurance Company, Metropolitan Casualty Insurance Company, and Metropolitan Property & Casualty Insurance Company*

/s/ Seth A. Schmeeckle
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
           Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

           And

927801v.1

Christopher W. Martin,
Texas Bar No. 13057620
Martin R. Sadler,
Texas Bar No. 00788842
        Of
MARTIN, DISIERE, JEFFERSON &
  WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas  77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

*Attorneys for United Services Automobile
Association, also separately named by
plaintiffs as USAA, USAA Casualty
Insurance Company and USAA General
Indemnity Company*


*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
        Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

        And

Of Counsel:

Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
        Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

*Attorneys for The Hanover Insurance
Company, The Hanover American Insurance
Company, and Massachusetts Bay Insurance
Company*

_/s/ Deborah B. Rouen_
Deborah B. Rouen, 2084
Chris A. D'Amour, 26252
      Of
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone:  (504) 581-3234
Facsimile:  (504) 566-0210

_Attorneys for Union National Fire Insurance Company_


_/s/ Dominic J. Ovella_
Dominic J. Ovella, 15030
Anne E. Medo, 24556
Sean P. Mount, 27584
Daniel M. Redmann, 30685
John Christopher Dippel, Jr., 30480
      Of
HAILEY, MCNAMARA, HALL,
  LARMANN & PAPALE, L.L.P.
One Galleria Boulevard, Suite 1400
P. O. Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500

_Attorneys for Fidelity and Deposit Company of Maryland, Empire Fire and Marine Insurance Company, Empire Indemnity Insurance Company, Centre Insurance Company, and ZC Sterling Corporation_

927801v.1

_/s/ Judy Y. Barrasso_
Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
     Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, LLC
LL&E Tower
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (5040 589-9701

_Attorneys for Allstate Insurance Company,_
_Allstate Indemnity Company, Encompass_
_Insurance Company, Encompass Insurance_
_Company of America, and Encompass_
_Property and Casualty Company_


_/s/ Seth A. Schmeeckle_
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
     Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

     And

Of Counsel:

Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
     Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

_Attorneys for Horace Mann Insurance_
_Company, Teachers Insurance Company,_
_and Horace Mann Property & Casualty_
_Insurance Company_

/s/ Alan J. Yacoubian
Alan J. Yacoubian, 17213
Neal J. Favret, 24412
Rachel P. Catalanotto, 31095
    Of
JOHNSON, JOHNSON, BARRIOS &
  YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone:  (504) 528-3001

*Attorneys for Auto Club Family Insurance
Company*


/s/ Neil C. Abramson
Neil C. Abramson, 21436
Nora B. Bilbro, 22955
Jacqueline M. Brettner, 30412
    Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

      And

Marshall M. Redmon, 18398
    Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

*Attorneys for Homesite Insurance Company*

927801v.1

*/s/ Harry Rosenberg*
Harry Rosenberg, 11465
Jacqueline M. Brettner, 30412
     Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for Fidelity National Insurance Company and Fidelity National Property and Casualty Insurance Company*


*/s/ Marshall M. Redmon*
Marshall M. Redmon, 18398
     Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

     And

Amy R. Sabrin
     Of
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760

*Attorneys for Farmers Insurance Exchange, Foremost Insurance Company, Foremost Property and Casualty Company, and Foremost Signature Insurance Company*

/s/ Neil C. Abramson
Neil C. Abramson, 21436
Jacqueline M. Brettner, 30412
      Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for American Manufacturers Mutual Insurance Company, Kemper Casualty Insurance Company, Lumbermens Mutual Casualty Company, Merastar Insurance Company, Unitrin Preferred Insurance Company, Unitrin Auto and Home Insurance Company, Trinity Universal Insurance Company, and Trinity Universal Insurance Company of Kansas, Inc.*


/s/ Harry Rosenberg
Harry Rosenberg, 11465
Jay R. Sever, 23935
Jacqueline M. Brettner, 30412
      Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for Scottsdale Indemnity Company and Scottsdale Insurance Company*


/s/ Ralph S. Hubbard
Ralph S. Hubbard, III, 7040
Seth A. Schmeeckle, 27076
      Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

And

Stephen E. Goldman
Wystan M. Ackerman
     Of
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut  06103-3597
Telephone:  (860) 275-8200
Facsimile:  (860) 275-8299

*Attorneys for The Standard Fire Insurance Company, "St. Paul" (a non-existent entity), "St. Paul Travelers Insurance Company" (a non-existent entity), St. Paul Fire & Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, Travelers Home & Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Insurance Company (a non-existent entity), Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company, and The Automobile Insurance Company of Hartford, Connecticut*

*/s/ Christopher R. Pennison*
Jay M. Lonero, 20642
Christopher R. Pennison, 22584
Angie Arceneaux Akers, 26786
     Of
LARZELERE  PICOU  WELLS  SIMPSON LONERO, LLC
Suite 1100 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA  70002
Telephone:  (504) 834-6500
Fax:  (504) 834-6565
*Attorneys For Republic Fire And Casualty Insurance Company,   American National*

*Property And Casualty Company, American National General Insurance Company, And Anpac Louisiana Insurance Company*

## <u>CERTIFICATE</u>

I hereby certify that a copy of the foregoing Memorandum in Support of Motion of State Farm Fire and Casualty Company and Certain Other Insurer Defendants to Disqualify Plaintiff's Private Counsel has been served upon all counsel of record by electronic notice from the Court's CM/EC Filing System, this 22nd day of May, 2008.

*/s/ Wayne J. Lee*

927801v.1