UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES  　　　　　　　　　　　　CIVIL ACTION
        CONSOLIDATED LITIGATION

                                                                                    NO. 05-4182

PERTAINS TO: RESPONDER  　　　　　　　　　　　　　　　SECTION "K"(2)
        <u>O'DWYER, 06-6099</u>

## ORDER AND REASONS

Before the Court is Defendant United States of America's Motion to Dismiss (Rec. Doc. 7895) ("Mot."). Plaintiff Maureen O'Dwyer and the named class members (collectively "Plaintiffs") have filed an opposition to the Defendant's motion ("Opp."). The Court has reviewed the pleadings, memoranda, and applicable law, and it finds that dismissal the claims against Defendant United States in this matter is appropriate for the reasons herein.

## I. BACKGROUND

This case is among the various suits arising out of Hurricane Katrina that have been consolidated within the *In re Katrina Canal Breaches Litigation* umbrella. Plaintiffs' original complaint asserted a class action on behalf of residents of Orleans, Jefferson, and St. Bernard parishes in Louisiana. Complaint at 16-17 ("Compl.") (Civ. A. No. 06-6099, Rec. Doc. 1). Plaintiffs allege claims against various state and federal government agencies and officials, and they assert that these entities breached their duty to competently prepare for and respond to the catastrophe of Hurricane Katrina. Compl. at 18-20; 24-32. As a result, Plaintiffs suffered harm in the wake of the failed response to Katrina.

In the present motion, Defendant United States seeks dismissal on two jurisdictional

grounds. Defendant claims that Plaintiffs have failed to exhaust their administrative remedies as required under the Federal Tort Claims Act ("FTCA") in order to bring suit against the federal government. Mot. at 18-24. Moreover, Defendant asserts that Plaintiffs cannot make a claim against the United States under any law except the FTCA, which includes a waiver of sovereign immunity. According to the Defendant, however, the FTCA cannot serve as a basis for this suit either because all of the alleged defalcations by the United States are protected by the discretionary function exception to the FTCA's waiver of sovereign immunity. Thus, the Defendant claims this Court lacks subject matter jurisdiction to hear this case. Plaintiffs oppose all of the Defendant's grounds for dismissal, alleging that indeed all class members did exhaust all administrative remedies. Opp. at 7. Moreover, Plaintiffs assert that subject matter jurisdiction is proper, and that at least they should be permitted to conduct discovery on the applicability of the discretionary function exception. Opp. at 8.

## II. ANALYSIS

This matter is before the Court on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). Under this standard, "a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of her claim which would entitle her to relief.'" *Wagstaff v. U.S. Dept. of Education*, 509 F.3d 661, 663 (5th Cir. 2007) (applying standard to Rule 12(b)(1) motion to dismiss), *quoting Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348, 351 (5th Cir. 2003). Defendant United States asserts two grounds for dismissal for lack of subject matter jurisdiction: (1) failure to exhaust administrative remedies, and (2) sovereign immunity.

**A. Administrative Exhaustion**

The FTCA contains an administrative prerequisite to suit that the plaintiff must exhaust administrative remedies before invoking the judicial process. *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 n.3 (5th Cir. 2006). The relevant statute provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

28 U.S.C.A. § 2675(a). In this case, the Defendant asserts that only one Plaintiff, Maureen O'Dwyer, timely submitted to the Federal Emergency Management Agency ("FEMA") the form SF-95, the required form for administrative grievances. Mot. at 20. Relying on a declaration by Angela Drinkwitz, a paralegal for the U.S. Army Corps of Engineers ("Drinkwitz Decl."), Defendant United States asserts that it could not confirm that any other named Plaintiff had filed the required form in a timely manner. Drinkwitz Decl. at 2. The Defendant also claims that O'Dwyer's SF-95 form was inadequate because her attorney did not properly file a document asserting his ability to represent Ms. O'Dwyer. Mot. at 23-24.

This Court elects to refrain from deciding the present motion on the grounds of administrative exhaustion. As will become apparent in the discussion to follow, this Court finds

that dismissal on grounds of sovereign immunity is appropriate.  This Court has "leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, --- U.S. ----, 127 S.Ct. 1184, 1191, 167 L.Ed.2d 15 (2007), *quoting Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585, 119 S.Ct. 1563, 1570, 143 L.Ed.2d 760 (1999).  The Court notes that both administrative exhaustion and sovereign immunity are grounds for dismissal based upon lack of subject matter jurisdiction.  Therefore, this Court will proceed to consider the issue of sovereign immunity.

**B.  Sovereign Immunity**

The Plaintiffs may only sue the United States if a statute explicitly provides for a waiver of sovereign immunity.  "The United States must consent to be sued, and that consent is a prerequisite to federal jurisdiction." *Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Mgmt. Council*, 364 F.3d 269, 273 (5th Cir. 2004).  "[W]aivers of sovereign immunity should be narrowly construed in favor of the United States." *In Supreme Beef Processors*, 468 F.3d at 253.

The Plaintiffs in this case cite several statutes as providing waivers of sovereign immunity, and therefore subject matter jurisdiction in this case.   Plaintiffs cite 28 U.S.C. § 1331; 28 U.S.C. § 1346 and § 2671, *et seq.* (FTCA); Section 5 of the Flood Control Act of 1941 (33 U.S.C. § 701 and 33 C.F.R. § 203); the legislation authorizing the Lake Pontchartrain and Vicinity Louisiana Hurricane Protection Project; 42 U.S.C. § 5121, *et seq.* (the Robert T Stafford Disaster Relief and Emergency Assistance Act); and Homeland Security Presidential Directive 5. Compl. at 20-21.  By and large, however, none of these (save for the FTCA) can provide

jurisdiction in this case.

First, 28 U.S.C. § 1331 does confer federal question jurisdiction to federal courts, but such general jurisdiction statutes do not waive sovereign immunity. *Koehler v. United States*, 153 F.3d 263, 266 (5th Cir. 1998) ("It is well settled, however, that sovereign immunity is not waived by a general jurisdictional statute such as 28 U.S.C. § 1331."). The Flood Control Act of 1941 similarly contains no waiver; 33 U.S.C. § 701 discusses procedures for flood control improvement while 28 C.F.R. § 203 discusses the operating procedures and polies of the Corps of Engineers. Plaintiffs do not point out to this Court how the Lake Pontchartrain and Vicinity Louisiana Hurricane Protection Project authorization legislation or Homeland Security Presidential Directive 5 contain waivers of sovereign immunity. The Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121, *et seq.*, similarly does not contain any language providing for a private right of action against the federal government.

However, the FTCA, codified at 28 U.S.C. § 1346 and § 2671, *et seq.*, is recognized as providing a waiver of sovereign immunity. Indeed, "[t]he FTCA provides the sole basis of recovery for tort claims against the United States." *In Supreme Beef Processors*, 468 F.3d at 252 n.4. The FTCA's waiver has exceptions, however. *Harvey v. United States*, 884 F.2d 857, 859 (5th Cir. 1989) ("Although the FTCA general waives the sovereign immunity of the United States and permits a plaintiff to sue the government, that Act contains several exceptions."). One such exception is the discretionary function exception, codified within the FTCA, which states that the waiver of sovereign immunity will not apply to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or

>the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C.A. § 2680(a); *see Baldassaro v. United States*, 64 F.3d 206, 208 (5th Cir. 1995). The Supreme Court has set forth a two-part test to determine if the discretionary function exception shields the Government from liability. "First, the conduct must be discretionary in nature, that is it must 'involv[e] an element of judgment or choice.'" *Theriot*, 245 F.3d at 397, *quoting United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991). "The requirement of judgment or choice is not satisfied if a 'federal statute regulation or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Gaubert*, 499 U.S. at 322, 11 S.Ct. at 1273, *quoting Berkovitz v United States*, 486 U.S. 531, 536, 108 S.Ct. 1954,1958-59, 100 L.Ed.2d 531 (1988). Second, the judgment must have been based on "considerations of social, economic, or political public policy," *Theriot*, 245 F.3d at 397, because "the purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Gaubert*, 499 U.S. at 323, 11 S.Ct. at 1273-74, *quoting United States v. Varig Airlines*, 467 U.S. 797, 813, 104 S.Ct. 2755, 2764, 81 L.Ed.2d 660 (1984).

In the present case, there does not appear to be any statute that prescribes mandatory duties that would require action by federal officials and agencies. Sections 1331 and 1346 of Title 28 are jurisdictional statutes, and therefore certainly do not impose any affirmative duties on federal officials. Likewise, the FTCA itself does not impose statutory duties on federal officials that could form the basis for an FTCA suit relevant to the present case. And, the

Plaintiff fails to point to any portion of the Lake Pontchartrain and Vicinity Louisiana Hurricane Protection Project authorization legislation that contains any mandatory duties.

The Homeland Security Presidential Directive/HSPD-5, 2003 WL 604606 (Feb. 28, 2003), would appear to impose some duty on federal agencies. HSPD-5 contains directives to government officials and agencies regarding planning and coordinating agencies' responses to emergencies. However, Judge Jay Zainey of this Court considered whether these directives constituted mandatory duties in *Freeman v. U.S. Department of Homeland Security*, Civ. A. No. 06-4846, 2007 WL 1296206, at *6 (E.D. La. Apr. 30, 2007) (Zainey, J.). *Freeman* very similarly involved allegations under the FTCA for the failures of the Department of Homeland Security and FEMA to prevent the catastrophe that ensued in Louisiana in the aftermath of Hurricane Katrina. Judge Zainey noted that HSPD-5 was a directive from the President to develop a National Response Plan ("NRP") that would "integrate Federal Government domestic prevention, preparedness, response, and recovery plans into one all-discipline, all hazards plan." *Id.* However, reliance on the HSPD-5 and the resulting NRP was "problematic because the NRP does not prescribe a specific course of conduct for federal employees to follow." *Id.* at *7. Instead, as observed by Judge Zainey:

> The NRP and its Annexes are worded for the most part in precatory language and even where stronger "must" language is used the document is still a very high level overview of the anticipated rollout plan for federal resources during a domestic incident. Likewise, the annex sections quoted by [Plaintiff] in his complaint recognize from a practical perspective the things that need to occur following a domestic incident. However, implicit in the structure of this generalized document is the discretion and flexibility that the affected agencies retain to allocate their limited resources in response to a disaster such as Hurricane Katrina. The NRP simply does not provide a source of non-discretionary *duties* imposed on Defendants under federal law.

*Id.* This Court's own review of the HSPD-5 reaches the same conclusion: it does not contain any specific course of conduct, but rather includes directives to formulate a plan without any specific requirements otherwise. Therefore, the HSPD-5 does not amount to a required duty that would prevent the discretionary exception from applying.

Plaintiffs also cite the Robert T Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"), codified at 42 U.S.C. § 5121, *et seq.*, as a source of a mandatory duty. However, in *Armstead v. Nagin*, Civ. No. 05-6438, 2006 WL 3861769, at *1 (E.D. La. Dec. 29, 2006) (Duval, J.), this Court heard a suit by New Orleans residents victimized by Hurricane Katrina that was filed against various state and federal defendants. The plaintiffs based their action, in part, on alleged violations of the Stafford Act by federal officials who failed to coordinate the government's hurricane emergency response. This Court, however, denied that any mandatory duty existed because the "duties" within the Stafford Act are "couched in discretionary language."[1] *Id.* at *6. Moreover, it should be noted that the Stafford Act clearly prescribes any action against the government arising out of the exercise of discretionary duties:

---

[1] As examples of this discretionary language, this Court cited the following portions of the Stafford Act:  42 U.S.C. § 5170a ("In any major disaster, the President *may* – (1) direct any Federal agency ... to utilize its authorities and ... resources ... in support of State and local assistance efforts; (2) coordinate all disaster relief assistance ...; (4) assist State and local governments in ... emergency assistance."); 42 U.S.C. § 5174(a)(1) (the President "*may* provide financial assistance, and, if necessary, direct services, to individuals and households . . . [who] have necessary expenses and serious needs"); 42 U.S.C. § 5174(b)(1) (the President "*may*" provide housing assistance); 42 U.S.C. § 5170b(a) ( "Federal agencies *may* . . . provide assistance essential to meeting immediate threats to life and property resulting from a major disaster," including "[p]erforming on public or private lands or waters any work or services essential to saving lives and protecting and preserving property or public health and safety," such as "search and rescue"); 42 U.S.C. § 5174(e)(2) (the President " *may* provide financial assistance ... to address personal property, transportation, and other necessary expenses or serious needs resulting from the major disaster") (emphasis added in each provision). *Armstead*, 2006 WL 3861769, at *6.

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148; *see Miceli v. Donjon Marine, Inc.*, Civ. A. No. 06-5442, 2008 WL 1834582, at *2 (E.D. La. Apr. 23, 2008) (Lemelle, J.) (recognizing application of discretionary function to debris cleanup activity by government subsequent to Hurricane Katrina).  Consistent with its earlier opinion in *Armstead*, this Court finds that the Stafford Act contains no relevant mandatory duties.

Lastly, Plaintiffs attempt to point out a mandatory duty in Section 5 of the Flood Control Act of 1941.  However, as aptly pointed out by the Defendant, Section 5 of the act, codified at 33 U.S.C. § 701n, and the relevant regulations, 33 C.F.R. § 203, *et seq.*, do not contain mandatory language.  Indeed, Section 5 places no duty on the Chief of Engineers of the Army Corps of Engineers, instead providing that an emergency fund "is authorized" and that may be used "in the discretion of the Chief of Engineers."  33 U.S.C. § 701n(a)(1).  The Chief of Engineers, likewise "in the exercise of his discretion," is authorized to provide emergency supplies of clean water and procure emergency vehicles.  *Id.*  The only apparent mandatory duty requires that the Chief of Engineers take into account certain factors in preparing "a cost benefit feasibility assessment for any emergency project," a requirement that hardly amounts to a mandatory duty to act with regards to the present case.  33 U.S.C. § 701(n)(a)(2).  Therefore, this Court finds that there are no mandatory duties in Section 5 of the Flood Control Act as well.

Where no duties are mandated, discretion is permitted.  As succinctly put by the Supreme Court, "if the policies and programs formulated by [federal agencies] allow room for

implementing officials to make independent policy judgments, the discretionary function exception protects the acts taken by those officials in the exercise of this discretion." *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 546, 108 S.Ct. 1954, 1964, 100 L.Ed.2d 531 (1988). The foregoing statutes clearly permit agencies and officials involved in emergency preparedness planning and response to use discretion and make public policy decisions. As such, these decisions are protected by the discretionary function exception. Indeed, "[c]ourts have generally drawn a line between decisions at a planning level, or decisions that exercise policy judgment, and decisions at a operational level, or decisions that are merely incident to carrying out a government policy." *Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1484 (5th Cir. 1989). The decisions concerning how the government is going to respond to an emergency situation are regularly protected by the discretionary function exception. *See Williams v. United States*, 242 F.3d 169, 175 (4th Cir. 2001) (holding discretionary function exception applies to policy decisions regarding whether to provide emergency medical services); *Fang v. United States*, 140 F.3d 1238, 1241-42 (9th Cir. 1998) (finding government immune from liability "for law suits challenging distribution of emergency medical equipment throughout a national park when those suits challenge the decisionmaker's policy-based judgment"); *Kiehn v. United States*, 984 F.2d 1100, 1106-07 (10th Cir. 1993) (holding decisions made by national park officials in providing emergency rescue to be protected by discretionary function exception); *Buchanan v. United States*, 915 F.2d 969, 971-72 (5th Cir. 1990) (finding discretionary function exception applies to prison administrators responding to emergency in prison).

Plaintiffs' laundry list of alleged breaches of duties by government officials herein similarly cannot overcome the discretionary function exception. They generally aver that

10

government officials did not competently prepare and respond to the Hurricane Katrina catastrophe.  Plaintiffs claim that the federal government failed "to timely and competently implement the National Response Plan," failed "to conduct a timely and competent post-incident assessment of the situation," and failed "to plan for or execute competent emergency support for life-saving and life-sustaining services," among other allegations.  Opp. at 5.  Even presuming all of Plaintiffs' allegations to be true, there appears no means by which they can overcome the discretionary function exception because each allegations challenges the way that officials chose to prepare and respond.  The discretionary function exception, however, protects all policy choices, even those that are an abuse of discretion.  28 U.S.C. § 2680(a).  Therefore, it is clear to this Court that no amount of discovery will lead to any different conclusion; in fact, additional discovery would only unnecessarily burden the parties.  Plaintiffs' complaint against the United States must be dismissed.

Plaintiffs also contend that this Court should wait until the final determination of another case within the *In re Katrina Canal Breaches* litigation umbrella, *Robinson v. United States*, Civ. A. No. 06-2268 (consolidated within Civ. A. No. 05-4182).  *Robinson*, however, is a case alleging negligence in the construction of the Mississippi River-Gulf Outlet that caused overflowing of various canals and resulted in damage caused by a barge moored in one of those canals.  *See In re Katrina Canal Breaches Consol. Litig.*, Civ. A. No. 05-4182, 2008 WL 1989672, at *1 (E.D. La. May 2, 2008).  Put simply, the two suits are apples and oranges.  *Robinson* does not make any allegation concerning the preparedness of government officials and their emergency response, and nothing in *Robinson* prevents this Court from adjudicating the matter at hand.

### III.  CONCLUSION

For the reasons stated herein, accordingly,

**IT IS ORDERED** that Defendant United States' Motion to Dismiss (Rec. Doc. 7895) is hereby **GRANTED.**

New Orleans, Louisiana, this ___27th___ day of May, 2008.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**