UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL | * | |
| BREACHES | | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*      05-5531 | * | |
| *Mumford v. Ingram*      05-5724 | * | |
| *Lagarde v. Lafarge*     06-5342 | * | JUDGE |
| *Perry v. Ingram*        06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*      06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAGISTRATE |
| *Lafarge v. USA*         07-5178 | * | JOSEPH C. WILKINSON, JR. |
| | * | |

**MEMORANDUM IN SUPPORT OF LAFARGE NORTH AMERICA INC.'S
MOTION FOR PROTECTIVE ORDER ON PLAINTIFFS' SECOND RULE
30(B)(6) NOTICE**

Plaintiffs have served a second Rule 30(b)(6) deposition notice on defendant Lafarge North America Inc. ("LNA") (Rec. Doc. 12871) (Exh. 1 hereto). The twenty-two topics listed in plaintiffs' Rule 30(b)(6) notice are duplicative and cumulative of the forty-five topics in plaintiffs' prior Rule 30(b)(6) notice for the corporate deposition of LNA that they took in November 2006. Plaintiffs' current notice is also duplicative and cumulative of written discovery that has been fully answered or as to which the time for discovery has long passed. Many of the deposition topics concern issues on which this Court has already upheld LNA's objections and found further discovery improper. At this stage of discovery the identity of relevant witnesses and documents has been fully developed and there is simply no need or basis for a second Rule 30(b)(6) deposition of LNA. The Court should enter an order barring the taking of a second Rule 30(b)(6) deposition.

## BACKGROUND

Discovery has been ongoing for two years. On August 18, 2006, Plaintiff served a "Notice of Proposed FRCP 30(b)(6) Deposition and Records Deposition" (hereinafter "Phase I Notice") on LNA.[1] In response, LNA moved for a protective order on the ground that the notice was unreasonably broad and outside the scope of discovery permitted in Phase I of the pending consolidated proceedings. On October 25, 2006, however, the Court denied LNA's motion for a protective order on all but a handful of topics, and ordered LNA to provide a corporate witness to testify as to nearly all of the topics listed in plaintiffs' deposition notice.[2] Those topics included, for instance, hurricane preparation, the mooring of the barge, the existence of "investigatory documents" concerning mooring of the barge or breaches of the floodwall, the identity of witnesses, and the location of relevant documents.[3] The Court expressly found that these topics were within the scope of permissible Phase I discovery. Phase I Order at 1-2.

LNA provided a 30(b)(6) witness, Edward VanderMeulen, to testify on November 10, 2006. He testified fully on all of the issues listed in the notice about which plaintiffs' counsel examined him. Plaintiffs asked Mr. VanderMeulen about a variety of topics, including hurricane preparation, the mooring of the barge, and LNA's investigation of the casualty.[4] Plaintiffs concluded the deposition and did not move to compel any further answers from Mr. VanderMeulen. There has been no complaint that LNA failed in any way to comply with its obligations to provide a witness on all topics listed in the notice and permitted by the Court.

---

[1] Plaintiffs' original Rule 30(b)(6) Notice is Doc. 291-3 in No. 05-4419 (Exhibit 2 hereto).

[2] The Court's ruling on the protective order motion is Doc. 317 in No. 05-4419 ("Phase I Order") (Exhibit 3 hereto).

[3] See Phase I Notice Topics 4, 9, 13, 23, 30, and 31.

[4] Representative excerpts from Mr. VanderMeulen's deposition are attached as Exhibit 4.

On December 28, 2007, LNA provided responses to two sets of interrogatories and two sets of document requests served by the plaintiffs, covering all merits and class-certification issues in the case.[5]  On April 21, 2008, the Court issued an order granting in part and denying in part plaintiffs' motion to compel on these requests.  Rec. Doc. 12605.  LNA has complied with that order to the extent further production was required.

On April 30, 2008, plaintiffs served LNA with a second 30(b)(6) deposition notice containing twenty-two numbered (22) topics with numerous subparts, amounting to a total of forty (40) separate topics.  Doc. 12871.  Plaintiffs' new notice covers the entire range of issues in the case, from mooring practices to the failure of the floodwall to witness interviews to settlements.  These topics have all been the subject of previous discovery, including plaintiffs' prior Rule 30(b)(6) deposition and their voluminous written discovery requests.  As shown below on a topic-by-topic basis, all of the topics in the new notice are duplicative of earlier discovery, or are otherwise improper.

## ARGUMENT

Fed. R. Civ. P. 26 (b)(2)(C) requires courts to limit the frequency or extent of discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; or (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.  Plaintiffs' new notice raises all of these concerns.  In addition, the notice seeks to circumvent the quantity and time limitations placed on document discovery, a practice that the Court has already rejected in connection with plaintiffs' first 30(b)(6) deposition notice.

---

[5] Plaintiffs' interrogatories and document requests are attached as Exhibits 5, 6, 7, and 8.

A compelling reason to limit or prohibit a deposition is "that the information sought has already been obtained by prior deposition or other means of discovery." Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d §2037. Plaintiffs have already requested and received all appropriate discovery on the topics listed in their new notice, which is merely an exercise in harassment. *See Landry v. Air Line Pilots Assoc. Int'l*, 901 F.2d 404, 435-36 (5th Cir. 1990) ("Discovery is not justified when cost and inconvenience will be its sole result.").

Courts generally have refused to permit a second Rule 30(b)(6) deposition of an organization that as already been deposed. *Padana Assicurazioni-Societa Azioni v. M/V Caribbean Express I*, 1999 WL 30966, at *2 (E.D. La. Jan. 21, 1999) (Wilkinson, M.J.) (second deposition would be unduly cumulative or duplicative); *Lernout v. KPMG*, 225 F.R.D. 64, 66 (D. Mass. 2004) (first deposition represented ample opportunity, and topics in second notice were identical or subsumed in topics from the first notice); *Barron v. Caterpillar, Inc.*, 168 F.R.D. 175 (E.D. Pa. 1996). Plaintiffs cannot plausibly contend that a second deposition is justified by any limitations placed on Phase I discovery because this Court expressly ***permitted*** discovery during Phase I concerning the topics in their prior notice. (Phase I Order at 1-2). As such, plaintiffs' attempt to take a second Rule 30(b)(6) deposition is squarely contrary to these cases.

Courts have also refused to permit the use of a Rule 30(b)(6) deposition to take discovery that has been, or should have been, obtained by other means. For example, in *In re Independent Service Organizations Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996), the court granted a protective order against a Rule 30(b)(6) deposition because the requested topics sought testimony that would require the party to marshal all factual proof even though that information would be better obtained through interrogatories. *See also Stanley v. Trinchard*, 2004 WL 1713885 (E.D. La. 2004) (discoverable information was best obtained through other discovery vehicles). Here,

4

plaintiffs have already fully availed themselves of written discovery methods -- including requests for production, interrogatories, and requests to admit -- on the precise topics listed in the new notice.

In short, plaintiffs' new Rule 30(b)(6) notice is defective for a multitude of reasons:

- Plaintiffs' notice is fundamentally duplicative of their prior notice. For example, Topics Nos. 3, 6, and 11 are verbatim repetitions of topics included in the Phase I Notice, corresponding to old Topics Nos. 23, 24, and 32 respectively.

- Plaintiffs' notice seeks the same discovery as their previous interrogatories and document requests. For example, Topic No. 7 regarding the mooring of other barges at LNA's facility is virtually identical to Document Request No. 29.

- Plaintiffs' notice seeks discovery that this Court has already forbidden. For example, Topic No. 16 seeks the same settlement communications as Document Request 15, which this Court specifically denied. Rec. Doc. 12605 at 12-14.

- Plaintiffs' notice seeks discovery that is clearly protected by legitimate work product objections that plaintiffs have never been able to overcome. For example, Topic No. 13 seeks information regarding LNA's investigative interviews, which this Court has already ruled are entitled to work product protection.

For all of these reasons, the Court should enter a protective order barring the taking of a second Rule 30(b)(6) deposition of Lafarge North America.

We now turn to address each of the topics listed in plaintiffs' notice:

**Topic No. 1.a. "Any and all knowledge Lafarge had preceding Katrina of ... [the] nature and contents of any and all written regulations, guidelines, recommendations and/or standards relevant to mooring of vessels and/or barges in advance of a hurricane."**

5

This topic is virtually identical to Topic No. 16 in plaintiffs' Phase I Notice, which requested a corporate deposition concerning "all written or other policies, standards, manuals, guidelines, regulations, … and other communications and/or publications possessed by, used by, implemented by, consulted by, or available to … Lafarge" concerning hurricane preparation relating to barges. The Court permitted that examination and Mr. VanderMeulen testified about LNA's mooring guidelines.

This topic is also duplicative of plaintiffs' Interrogatory No. 1.g, which sought identification of "any and all … written manuals, directives, recommendations, regulations … [on] proper methods of mooring or berthing barges in advance of an approaching hurricane." The Court rejected plaintiffs' attempt to compel further discovery from LNA in response to this request, holding that LNA had already provided a sufficient response. Rec. Doc. 12605 at 16.

Furthermore, to the extent that this topic is ultimately directed at discovery of written documents, it is inappropriate because the time for document requests has passed.

**Topic No. 1.b.** "Any and all knowledge Lafarge had preceding Katrina of … [the] nature and contents of written regulations, guidelines, recommendations, and/or standards relevant to mooring of vessels and/or barges within the IHNC."

This topic is duplicative of Topic 1.a above and is defective for the same reasons. The information sought is duplicative of Topic No. 16 in the Phase I Notice (quoted immediately above), which included vessels and barges in the IHNC as well as elsewhere. It is also duplicative of Interrogatory No. 1.a regarding mooring guidelines "generally and/or in advance of an approaching hurricane."

**Topic No. 1.c.** "Any and all knowledge Lafarge had preceding Katrina of [the] forecasted nature, strength, direction, and effects of Katrina."

This topic seeks information identical to Topics Nos. 3 and 14 in the Phase I Notice, which covered "[a]ny and all circumstances by which [LNA] acquired knowledge of the weather

6

disturbance eventually named Katrina," including specific details (when, where, how, by whom, etc.) (Topic 3) and regarding "[a]ny and all inquiries made by [LNA] regarding Katrina" (Topic 14). There is no basis for plaintiffs to take a second deposition of LNA on these topics.

**Topic No. 1.d. "Any and all knowledge Lafarge had preceding Katrina of any and all pre-Katrina actions undertaken by Lafarge with respect to the barges at the France Road facility in light of any or all knowledge, or lack thereof."**

This topic appears to seek testimony regarding what preparations LNA undertook at its France Road facility in light of what LNA knew (or did not know) about the storm and any applicable mooring guidelines. Plaintiffs' prior Rule 30(b)(6) notice covered exactly the same topics. For instance, Topic No. 4 of the Phase I notice required LNA to testify regarding "any and all measures and preparations which [it] undertook … to move, remove, prepare or secure ING 4727 for Katrina." Likewise, Topic 9 called for "[a]ny and all knowledge [LNA] had of the mooring methods and equipment used to tie ING 4727." These prior deposition topics directly address what actions LNA took at the terminal in light of what it knew.

This topic also duplicates plaintiffs' written discovery. For instance, LNA has already answered plaintiffs' Phase I Interrogatories Nos. 3 and 4, asking LNA to identify each person involved in securing the barge and to "describe in detail what each person did … to secure the barge in anticipation of the approach of Hurricane Katrina."[6] Likewise, this Court has upheld LNA's responses to Interrogatory No. 1.d regarding communications concerning barges berthed at LNA's facility in advance of an approaching hurricane, and Interrogatory No. 1.i regarding all instruction and supervision of mooring barges at LNA's facilities. Rec. Doc. 12605 at 16.

**Topic No. 2. "Nature and proof of any and all of Lafarge's knowledge, contention, and defenses as to ING 4727's escape from its berth at the Lafarge facility during the effects of Katrina."**

---

[6] LNA's responses to plaintiffs' Phase I interrogatories are Exhibit 9 hereto.

7

This topic is essentially identical to Topic No. 10 of plaintiffs' Phase I Notice covering "any and all knowledge Lafarge had/has of ING 4727's escape from its berth at Lafarge during the effects of Katrina." Plaintiffs have already had a Rule 30(b)(6) deposition on this topic.

This topic is also duplicative of Document Request No. 17.a, which sought documents containing "information and/or opinions relative to the breakaway and/or movements of ING 4727 during the effects of Katrina." This Court upheld LNA's answer to that request and refused to compel a further response. Rec. Doc. 12605 at 15. The topic is also duplicative of Interrogatory No. 18, which asked LNA to identify any persons or entities "that you contend to be at fault for the breakaway of ING 4727 [including] any and all facts on which you base your contention," and Interrogatory No. 25, which called for LNA to provide a "complete, detailed, exhaustive account of … the causes and occurrence of the breakaway of ING 4727." This Court denied plaintiffs' motion to compel a further response to Interrogatory No. 18 (Rec. Doc. 12605 at 16), and plaintiffs did not move to compel a further response to Interrogatory No. 25, apparently deeming LNA's response to be sufficient. Plaintiffs are not permitted to serve a Rule 30(b)(6) notice to circumvent the Court's prior discovery rulings.

Finally, this topic improperly seeks to force LNA to do the job of plaintiffs' counsel in analyzing and distilling the information produced in discovery in this case. The case law makes clear that parties have no claim to be spoon fed by their opponents. *See, e.g., In re Indep. Serv. Org.*, 168 F.R.D. at 654 (Rule 30(b)(6) notice seeking testimony about facts supporting a party's defenses inappropriately seeks attorney work product).[7] Plaintiffs can learn about LNA's evidence and contentions by reading LNA's written discovery responses, taking depositions of

---

[7] See also, e.g.; *American Nat. Red Cross v. Travelers Indem. Co. of Rhode Island*, 896 F. Supp. 8, 14 (D.D.C. 1995) (party not required to specify what facts and documents support each affirmative defense where extensive discovery reveals underlying information); *S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (barring a 30(b)(6) deposition based on work product objection); *Federal Trade Commission v. U.S. Grant Resources, Inc.* 2004 U.S. Dist. LEXIS 11769, at *33 (same).

LNA's fact witnesses, reading LNA's exhibits, and (at the appointed time) taking expert discovery. From there, analyzing what the evidence means is for plaintiffs to do on their own.

>**Topic No. 3.** **"The existence, nature, contents, and custodians of any and all investigatory documents pertaining to ING 4727's berthing and/or mooring at the LNA facility, escape from its berth at the Lafarge facility, and/or possible breach(es) of the Industrial Canal floodwall."**

This topic is a word-for-word copy of Topic No. 23 of the Phase I Notice, which reads: "The existence, nature, content and custodian(s) of any and all investigatory documents pertaining to ING 4727's berthing and/or mooring at Lafarge, escape from its berth at Lafarge, and/or possible breach(es) of the Industrial Canal floodwall." This Court permitted plaintiffs to proceed with their Rule 30(b)(6) deposition of LNA's witness on this topic, over LNA's objection (Phase I Order at 2). If the rule against duplicative discovery means anything, it means plaintiffs may not take a second Rule 30(b)(6) deposition on the exact same topic.

The topic is also duplicative of document requests such as Request No. 17.a, discussed immediately above, as to which this Court has ruled all permissible discovery has already been obtained. Finally, and in any event, to the extent that this topic is ultimately directed at written documents, it is inappropriate because the time for document requests has passed.

>**Topic No. 4.** **"The existence, nature, contents, and custodians of any and all communications, statements, representations, and reports made by Lafarge to any and all governmental agencies and/or investigative bodies relevant to the breakaway of ING 4727 and/or the eastern IHNC floodwall breaches subject of this suit, including but not limited to the United States Coast Guard, Army Corps of Engineers, IPET, ILIT, Team Louisiana, National Science Foundation; and/or parties to Robinson and/or MRGO litigation."**

This exceedingly broad topic is duplicative of Topic No. 23 in the Phase I notice covering investigatory documents concerning the breakaway and the breaches (quoted immediately above), and Topic No. 31 in the Phase I notice, which covered the "nature, existence, contents and custodian(s) of any and all writings" pertaining to the "foregoing" topics. The topic is also

duplicative of Document Request No. 22, a broad request for all communications regarding the equipment used to secure ING 4727, and Document Request No. 23, which requested all communications and documentation provided to the Coast Guard concerning ING 4727.

Plaintiffs have also had ample opportunity to discover the information requested in Topic No. 4 through written discovery, and to request it now is both untimely and unduly burdensome.

**Topic No. 5.   "The existence, nature, contents, and custodians of any and all communications, statements, representations, and reports made by Lafarge to any and all Robinson and/or MRGO and/or BARGE plaintiffs or putative class members relevant to the breakaway of ING 4727 and/or the eastern IHNC floodwall breaches subject of this suit."**

This topic is apparently directed at information regarding investigative interviews by LNA of putative class members.  This Court has ordered the production of recorded transcripts of investigative interviews and has denied plaintiffs any further discovery.  Doc. 13149.

To the extent plaintiffs also seek to discover whether LNA has made statements or reports to class members regarding its position on the merits, LNA denies that it has made any such statements or reports.  But if plaintiffs seek to establish to the contrary, it is their burden to come forward with evidence of such communications before seeking discovery from LNA.  *Kay Co. LLC v. Equitable Prod. Co.*, 246 F.R.D. 260 (S.D. W. Va. 2007).[8]  The information sought through Topic No. 5, if it existed, could be more easily obtained from the plaintiffs or putative class members who have supposedly received such "communications" or "reports."

---

[8] In fact, it is counsel for the Barge plaintiffs who, through advertisements. website postings, television appearances, and also (apparently) anonymous comments on the Times-Picayune website, has sought to influence putative class members.  See www.bargecase.com (plaintiffs' counsel's website); WDSU television appearance on January 22, 2008 (plaintiffs' counsel represents he has signed up 6000 clients and represents class of 90,000); www.nola.com/news/index.ssf/2008/05/judge_corps_can_be_sued_for_fl.html (anonymous postings by "nolatty" saying "THE BARGE DID IT") (attached as Exhibit 10); "Advertisement:  Litigation Concerning Ingram Barge ING 4727 is Alive and Well," New Orleans Times-Picayune, May 17 and 22, 2008 (attached as Exhibit 11).

In any event, the information sought by this topic could more easily have been obtained through written discovery which plaintiffs have had ample opportunity to pursue. And insofar as it seeks information in written documents, the time for document requests has passed.

**Topic No. 5 (Second). "The existence, nature, contents, and custodians of all communications, statements, accounts, representations and accident and/or incident reports describing any casualty in which ING 4727 was involved during Katrina."[9]**

This topic is a near-verbatim repetition of Topic No. 22 of the Phase I Notice, which called for LNA to provide a witness on "the existence, nature, contents and custodian(s) of any and all accident and/or incident reports describing occurrences in which ING 4727 was involved, during Katrina, and otherwise." The Court denied LNA's protective order motion and required LNA to designate a witness on this topic at the Phase I Deposition. Phase I Order at 4. There is no basis for a second deposition on this topic. Moreover, the topic self-evidently seeks untimely document discovery that plaintiffs have either received or had ample opportunity to seek.

**Topic No. 6. "The existence, nature, contents, and custodians of all communications, reports, writings, records, correspondence, memoranda, bulletins, and other materials concerning any movement of ING 4727 from within the Industrial Canal to or through the eastern floodwall, into the residential area of the Lower Ninth Ward."**

This topic is a near-verbatim repetition of Topic No. 24 of Phase I Notice, which called for testimony regarding all documents or "other materials" concerning "any movement of ING 4727 from within the Industrial Canal to or through the eastern floodwall, into the residential area of the Industrial Canal." The Court permitted plaintiffs' inquiry on this topic at the prior deposition. Phase I Order at 2. Plaintiffs are not entitled to a second deposition on this topic.

This topic is also duplicative of the information sought in Document Request No. 17.a regarding any and all writings and things which contain information and/or relative to the

---

[9] Plaintiffs' notice has two topics listed as "Topic 5." We have therefore listed this as "Topic 5 (Second)."

11

movement of ING 4727 during the effects of Katrina. Furthermore, insofar as it seeks written documents, the request is untimely as the deadline for written discovery has passed.

> **Topic No. 7. "Any and all knowledge, communication, documents, photos, and other information pertaining to the mooring methods of ING 4525 and/or the five barge tier of Bunge and/or other barges moored adjacent to the tier containing ING 4727, and the movements during the effects of Katrina of any and all of the aforesaid barges other than 4727."**

This topic is subsumed within Topics 9, 10, 13, and 41 of the Phase I Notice, which seek broad categories of information about the mooring methods and all other activities relating to the ING 4727 and the escape of the barge from its berth. At the very least, this topic could and should have been included in the Phase I Notice, which required LNA to comprehensively prepare its witness to testify about all activities undertaken at its terminal in advance of Hurricane Katrina, including mooring activities.

Moreover, this topic is duplicative (and nearly a verbatim repetition) of Document Request No. 29, which requested production of "any and all communications, documents, statements, investigations, records, photo, video and evidence pertinent to the mooring or securing, and any shifting or movement during the effects of Katrina, of the five-barge tier north of ING 4727 at the LNA France Road facility." This Court denied plaintiffs' motion to compel a further response to that document request (Doc. 12605 at 15) and denied their motion for reconsideration of that order (Doc. 13149 at 2-5). Plaintiffs have no basis to use a second Rule 30(b)(6) notice to seek discovery this Court has already denied.

> **Topic No. 8. "Lafarge's awareness of any publically [sic] available pre-Katrina information concerning any contention that MRGO would or might cause or contribute to hurricane related flooding or storm surge."**

This topic seeks information duplicative of Topics 4, 12, 15, and 16 of the Phase I Notice, all of which pertain to hurricane preparedness generally and several of which relate to "storm

surge" in particular.   Information regarding this topic has also been addressed through the

deposition testimony of Mr. Edward Busch, former Assistant Terminal Manager at LNA France

Road Facility, on November 14, 2006.[10]

**Topic No. 9. "Lafarge's awareness and/or observations of any and all pre-Katrina projects on or near the eastern batture or canal-side embankment of the eastern IHNC between Florida and North Claiborne Avenues."**

This topic is improper because Plaintiffs have had ample opportunity to collect this

information through prior discovery, including depositions of LNA France Road facility

employees, and because there is no evident need for more discovery from LNA concerning it.

LNA's discovery responses have already identified current and former employees at the France

Road facility.   These are the LNA persons, if any, who would have been aware or observed the

projects described in Topic No. 9.   Plaintiffs have deposed several of these employees, and

remain free to depose the rest of them.   Requiring LNA to poll its employees, to find out what

they knew or now know about pre-Katrina construction projects on the other side of the canal

from their facility, is a pointless exercise.   Plaintiffs should seek this information through fact

depositions rather than a Rule 30(b)(6) deposition of LNA.

**Topic No. 10.a.   "The existence, contents, and custodians of any land, aerial or satellite video or photo, and/or graphic, diagram, or visual representation … on August 28-29, 2005 [of] the Lafarge France Road facility and environs."**

This topic is duplicative of Topic No. 39 of Phase I Notice, which covered "[t]he

existence, contents and custodians of any video surveillance at the Lafarge facility," and more

generally Topics 23, 24, and 31, which covered documents regarding the events at the LNA

facility on August 28-29, 2005. Further, this topic self-evidently seeks production of documents

that were sought or should have been sought, if at all, in written discovery.   Plaintiffs served

---

[10] See Deposition of Ed Busch at 54:5-15 (testifying about measures undertaken in anticipation of storm surge) (excerpts attached as Exhibit 12 hereto).

numerous requests seeking production of photographic and other evidence of this sort (e.g., Document Request 29).   To the extent this topic pertains to exhibits or demonstratives, it duplicative of Document Requests Nos. 7 and 28, which call for production of these documents. Finally, to the extent that this topic seeks information or documents created or gathered after September 8, 2005, it intrudes on LNA's work product protection, which this Court has already upheld.  Rec. Doc. 12605 at 15.

> **Topic No. 10.b.   "The existence, contents, and custodians of any land, aerial or satellite video or photo, and/or graphic, diagram, or visual representation … on August 28-29, 2005 [of] … Industrial Canal and environs."**

This topic is duplicative of Topics 23, 24, and 31 of the Phase I Notice, which pertained generally to documents regarding the events that took place on August 28-29, 2005.  This topic is also duplicative of Class Certification Document Request No. 5, requesting every document that depicts or illustrates the sources of any flooding within the geographical area described in the Sixth Amended Complaint, and Class Certification Document Request No. 10, requesting every document that depicts or illustrates the geographical area described in the Sixth Amended Complaint affected by the breaches in the eastern Industrial floodwall.   And this topic is defective for the same reasons stated as to Topic 10.a above – it seeks production of documents after the time for requesting documents has expired, duplicates plaintiffs' requests for trial exhibits or demonstratives, and potentially intrudes on LNA's work product.

> **Topic No. 10.c.   "The existence, contents, and custodians of any land, aerial or satellite video or photo, and/or graphic, diagram, or visual representation … on August 28-29, 2005 [of] … ING 4727."**

This topic is duplicative of Topics 23, 24, and 31 of the Phase I Notice, which sought information regarding documents concerning the mooring and movement of ING 4727.  It is also duplicative of Document Request No. 20, which requested "all things, photos, documents and

writings reflecting … damage to ING 4727." This Court denied plaintiffs' motion to compel on

that request (Doc. 12605 at 15), and also their motion for reconsideration (Doc. 13149 at 2-5).

This topic is also defective for the same reasons stated above for topics 10.a and 10.b.

>    **Topic No. 10.d.  "The existence, contents, and custodians of any land, aerial or
>    satellite video or photo, and/or graphic, diagram, or visual representation … on
>    August 28-29, 2005 [of] … areas constituting and/or included within the proposed
>    Barge Class geography."**

This topic is virtually identical to Class Certification Document Request No. 10, which

requests production of every document depicting or illustrating the geographical area described

in the Sixth Amended Complaint affected by the breaches in the Industrial Canal floodwall. This

Court has resolved the parties' dispute over the scope of LNA's response to that request, Doc.

12605 at 13, and it is improper for plaintiffs now to serve another request on the very same

subject. Further, this topic has the same defects as Topics 10.a through 10.c discussed above.

>    **Topic No. 10.d.  "The existence, contents, and custodians of any land, aerial or
>    satellite video or photo, and/or graphic, diagram, or visual representation … on
>    August 28-29, 2005 [of] … any and all timing, sources, causes, locations, and extent
>    of flooding alleged by Lafarge to have affected any or all of the proposed Barge
>    Class geography on August 28-29, 2005."**

This topic is duplicative of numerous interrogatories and document requests served by

plaintiffs concerning class certification. For instance, Class Certification Document Request No.

5 requested the production of documents depicting or illustrating the "sources of any flooding"

within the proposed class area; Class Certification Document Request No. 6 requested the

production of documents depicting or illustrates the "causes of any flooding" within the area; and

Class Certification Document No. 7 requested the production of documents that depict or

illustrate the "timing of any flooding" within the proposed class area. Thus the information

sought in this topic could have been – and was – addressed in written discovery. This Court has

resolved the parties' dispute over LNA's responses to the plaintiffs' class certification document

requests (Rec. Doc. 12605 at 13) and plaintiffs should not be permitted to serve a duplicative 30(b)(6) notice.  And, again, this topic bears the same other defects as Topics 10.a through 10.d.

> **Topic No. 11.  "Identities and whereabouts of any and all persons who claim to have knowledge of the movement of ING 4727 from the Lafarge dock to its eventual resting place in the residential area of the Lower Ninth Ward."**

This topic is a virtually verbatim copy of Topic No. 32 of the Phase I Notice: "[i]dentities and whereabouts of any and all persons with knowledge of the movements of ING 4727 from the Lafarge dock to its eventual resting place in the residential area of the Lower Ninth Ward."  This topic is also duplicative of Topic No. 30 of the Phase I Notice, which included a broad request for identities and whereabouts of witnesses generally.  It is also duplicative of Interrogatory No. 22, which called for LNA to specifically identify witnesses who communicated about the barge contact with the floodwall or the barge breakaway, and to which LNA fully responded.  At a minimum, plaintiffs have had ample opportunity to pursue this topic by multiple other means, and there is no basis for them to do so now by a second Rule 30(b)(6) notice.

> **Topic No. 12.a.  "Identities and whereabouts of any and all persons who claim to have seen ING 4727 make contact with the eastern IHNC floodwall, and/or transit from the canal side of the eastern IHNC floodwall to the residential side during Katrina."**

This is another duplicative witness-identification request.  It seeks the same information as Topics Nos. 24 and 30 of the Phase I Notice, which concern the movement of the barge and its transit into the neighborhood and the identity of witnesses to these events.  The topic is also duplicative of Interrogatory No. 22 and Document Request No. 30.  Again, plaintiffs have had ample opportunity to pursue this topic by multiple other means and should not be permitted to undertake a repetitive Rule 30(b)(6) deposition.

> **Topic No. 12.b.  "Identities and whereabouts of any and all persons who claim to have heard scraping sounds and/or booms and/or explosions in the Lower Ninth Ward during Katrina."**

This topic seeks the same information as Topics Nos. 24 and 30 of the Phase I Notice. It also duplicates Interrogatory No. 22 and Document Request No. 30, which request the identities of persons who made or received complaints or communications regarding a "barge or other object knocking, scraping, or engaged in other contact" with the floodwall. Plaintiffs have already had all appropriate discovery on this topic.

> **Topic No. 13.  Nature, timing, location, content, methods of, and participants in any and all interviews of putative Barge class members by Centanni Investigative and/or any and all other persons or entities acting on behalf of LNA.**

This topic is duplicative of Interrogatory No. 5 and Document Request No.3, both of which requested all fact statements obtained from all plaintiffs and/or persons potentially belonging to the putative class. LNA has produced or is producing all of the recorded transcripts required to be produced by the Court's April 21 Order (Rec. Doc. 12605); and has also provided a list of the putative class members who were interviewed, regardless of whether they were recorded. Rec. Doc. 12331, Exhibit D. Nothing more is required.

This Court has, in fact, already specifically denied the discovery sought by this topic. The Court has definitively ruled that LNA's investigative interviews are entitled to work product protection and that plaintiffs have not overcome that protection. Doc. 13149 at 17-18. Although the Court ordered LNA to produce transcripts of recorded interviews, it has denied any further intrusion on LNA's work product. *Id.* Plaintiffs' notice is merely a backdoor attempt to obtain the same investigative materials that the Court has already ruled are not discoverable.[11]

> **Topic No. 14.   "Nature, contents, and custodians of all written, recorded, videotaped, or otherwise memorialized matter or communication acquired via abovesaid interviews."**

---

[11] See,, *e.g.*, *Gator Marshbuggy Excavator LLC v. M/V Rambler,* 2004 U.S. Dist. LEXIS 16090, at *10 (E.D. La. Aug. 12, 2004) (Wilkinson, M.J.) (discovery of investigator's file prohibited); *Appeal of Hughes*, 633 F.2d 282, 290 (3d Cir. 1980) (barring discovery of witness interviews through testimony of investigator).

This topic is duplicative of Interrogatory No. 5 and Document Request No. 3, and has been definitively resolved by the Court. LNA has produced or is producing the interview transcripts ordered to be produced by the Court (Doc. 12605) and the Court has upheld LNA's claims of work product protection as to all other interviews (Doc. 13149 at 17-18). There is no basis for a Rule 30(b)(6) deposition to plow the same ground or to reopen these resolved issues.

**Topic No. 15.   "Nature and timing of, and participants in, any and all activities conducted on Lafarge's behalf resulting in Lafarge's possession of any items of personal property acquired from the Lower Ninth Ward after Katrina, specifically including but not limited to stopped clocks."**

This topic is duplicative of previous discovery because LNA has already produced information regarding stopped clocks in its possession (including the clocks themselves) and has advised plaintiffs that its investigators gathered no other items of "personal property" from putative class members. This Court has denied plaintiffs' protective order motion, which was based in part on their allegations regarding the supposed gathering of personal property such as stopped clocks from putative class members. See Rec Doc. 11765-2 at 7 ¶ 30 & n.21. In briefing on that motion, LNA's investigators provided a sworn affidavit that they obtained "no photographs or videos" from putative class members during their investigation. Rec. Doc. 12831-3. The plaintiffs already have whatever discovery they need on this topic, and there is no reason to require a Rule 30(b)(6) deposition on it.

**Topic No. 16.   "Nature, timing, description, memorialization and/or recordation of, and participants in, any and all communication and contact between Lafarge, its agents, and representatives and Arthur Murph, Jeanne Murph, Shirley Priestly, Jennifer Fernandez, Wayne Priestly, New Berkley LLC and/or New Jourdan LLC concerning transaction or compromise of claims related to ING 4727, concerning the movement of ING 4727, concerning the sale or purchase of 1739 Jourdan Avenue and/or 105 Berkley Drive."**

This topic is duplicative of information sought during Phase I, in which this Court permitted the plaintiffs to take discovery regarding the Murph settlement but specifically limited

the scope of that discovery.   Rec. Doc. 535 in No. 05-4419, at 23-24.   This topic is also duplicative of Document Request No. 15, which called for production of "[a]ny and all communications" between LNA and the Murph parties regarding the settlement.   This Court expressly denied plaintiffs' motion to compel any further discovery under that request.   Rec. Doc. 12605 at 12-14.   Thus the Court has already ruled that LNA has satisfied its obligations concerning discovery of the Murph settlement, and plaintiffs may not use a Rule 30(b)(6) notice to pursue the same discovery that the Court has already specifically denied.

> **Topic No. 17.a.   "Any and all of Lafarge's factual contentions and defenses, and underlying proof, concerning … causes of the ING 4727 breakaway."**

This topic is essentially a verbatim copy of plaintiffs' Interrogatory No. 25, which requested LNA's "complete, detailed, exhaustive account of any and all things, persons, events, circumstances, and factors constituting the causes and occurrence of the breakaway of ING 4727."   LNA responded to plaintiffs' request and they did not move to compel a further response.   Plaintiffs have no basis to seek this same discovery in a Rule 30(b)(6) notice.

The topic is also duplicative of Document Request No. 17.a. which requested all documents "which contain information and/or opinions relative to the breakaway …."   This Court denied plaintiffs' motion to compel on that request.   Rec. Doc. 12605 at 15.   The topic is also duplicative of Document Request No. 7, calling for production of LNA's documentary evidence upon which it will rely at trial.   LNA has provided periodic updates of its witness and exhibit lists, and plaintiffs have never moved to compel a further response to that request.

Finally, to the extent this topic seeks to require LNA to explain or interpret the evidence it has designated in its witness and exhibit list, or will adduce through expert testimony, the topic violates LNA's work product protection.   In *American National Red Cross v. Travelers Indem. Co.*, 896 F. Supp. 8 (D.D.C. 1995), the court refused to permit inquiry in a Rule 30(b)(6)

deposition regarding the defendant's selection and compilation of facts and documents relevant to its defenses from among the large mass of materials that had been produced in the case, and held that it was improper to inquire on a Rule 30(b)(6) deposition about "which documents or data [defendant] would seek to use to prove its points." *Id.* at 13-14.[12]  In this case, plaintiffs seek to have LNA do their work for them by explaining and interpreting how the various witnesses and documents fit together.   This is the job of plaintiffs' counsel, through reading the documents and deposing the fact witnesses (and, in time, the expert witnesses as well).

> **Topic No. 17.b.  "Any and all of Lafarge's factual contentions and defenses, and underlying proof, concerning … movements of the ING 4727 in the IHNC (and from the IHNC) on August 29, 2005."**

This topic impermissibly invades LNA's work product for the same reasons as Topic 17.a: it seeks to short-circuit the process of reviewing documents, and interviewing or deposing witnesses, by forcing LNA and its counsel to distill and interpret the evidence for plaintiffs. LNA has provided its witness and exhibit lists.  LNA has provided the names of its experts, whose reports are not yet due.  LNA has also provided plaintiffs with the names of Lower Ninth Ward residents interviewed by its investigators, and the transcripts of those interviews that were recorded.  Plaintiffs have the facts, or at a minimum have had ample opportunity to discover them.

Moreover, this topic is plainly duplicative of multiple previous discovery requests, including topics listed in plaintiffs' Phase I Notice (*e.g.*, Topic 24) and plaintiffs' document requests and interrogatories (*e.g.,* Interrogatory 22 and Document Request 30), which in various ways sought discovery of facts concerning the movement of the barge within the canal or into the neighborhood.

---

[12] See also, u.g., *In re Indep. Serv. Org Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996); *S.E.C. v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992).

**Topic No. 17.c. "Any and all of Lafarge's factual contentions and defenses, and underlying proof, concerning … causes of the IHNC eastern floodwall breaches between Florida and N. Claiborne Avenues."**

This topic is defective for the reasons set forth in connection with Topics 17.a and 17.b. Further, this topic is duplicative of Interrogatory No. 26, which sought LNA's "complete, detailed, exhaustive account of any and all locations, things, persons, events, circumstances and factors constituting the causes and occurrence of the breaches in the eastern IHNC floodwall between S. Claiborne and Florida Avenues." Though LNA noted that its account would be the subject of expert testimony, LNA nevertheless provided plaintiffs with a detailed explanation of the reasons for the floodwall failures given by the independent expert panels that have investigated the matter, each of which has found that the failures occurred for reasons other than a barge. Plaintiffs therefore have the discovery sought by this topic, or at a minimum have had "ample opportunity" to obtain it, to the extent it may legitimately be obtained.

**Topic No. 17.d. "Any and all of Lafarge's factual contentions and defenses, and underlying proof, concerning … the causes, sources, location, and extent of flooding of the proposed Barge class geography."**

Like Topics 17.a through 17.c, this topic constitutes an impermissible intrusion on LNA and its counsel. Moreover, the topic is duplicative of Class Certification Interrogatory No. 8, which requested a detailed description of "each source of flooding and the manner in which you contend flooding occurred with respect to the geographic area encompassed by the Sixth Amended Complaint." LNA provided an extensive answer which plaintiffs did not challenge in a motion to compel. Plaintiffs have already received all the discovery to which they are entitled on this topic, or at a minimum have had "ample opportunity" to pursue it.

**Topic No. 17.e. "Any and all of Lafarge's factual contentions and defenses, and underlying proof, concerning … facts underlying any opposition to class certification in the Barge litigation track."**

This topic intrudes on the work product of LNA and its counsel for the same reasons as Topics 17.a through 17.d.   It is also duplicative of Class Certification Interrogatory No. 2, regarding any defenses LNA might set forth in response to class member's claims, which was answered extensively.   This topic is also duplicative of Interrogatory No. 20, requesting information regarding contributory and/or comparative fault on the part of the putative class members; Class Certification Interrogatory No. 1, requesting information supporting any contention that the putative class does not satisfy numerosity requirements; Class Certification Interrogatory No. 3, asking whether there are questions of law or fact common to the putative class; and Class Certification Interrogatories Nos. 4 and 6, requesting detailed description of LNA's opinion on the superiority of a class action trial in this matter.   Thus LNA has provided full contention discovery regarding class certification, in addition to filing its witness lists and exhibit lists.   Moreover, because plaintiffs have not supported their class certification motion with any evidence or legal argument, it is ridiculous for them to expect a deposition from LNA (presumably through counsel) regarding what LNA might argue when and if plaintiffs attempt to provide such support for their motion.

> **Topic No. 18.   "The nature, issuance, entry, contents, limits, coverage, terms, effects, underwriters of, and nature of any claims or controversies concerning, any and all policies of primary, excess, surplus and other marine casualty insurance issued to LNA and in effect at times pertinent to this litigation, specifically including but not limited to that issued by American Steamship Owners (The American Club)."**

This topic is duplicative of Request for Production No. 2 issued in early 2006, calling for "each and every policy of insurance" relevant to plaintiffs' claims.   LNA produced its insurance policies in early 2006 pursuant to that request.   This topic also duplicates Topic No. 28 of the Phase I Notice, which called for LNA to testify about "the existence, nature, contents, substance, language, coverage terms, and limits of any and all policies of liability, pollution, excess,

reinsurance and other hazard insurance issued to … Lafarge … and/or providing coverage of ING 4727 from August 22 – August 29, 2005." Thus, plaintiffs have already obtained the relevant documents and had a Rule 30(b)(6) deposition that included this topic.

> **Topic No. 19.a. "Existence, source or origin, contents, and custodian of any and all communications or accounts of persons reporting any or all of the following in or from the Lower Ninth Ward: flooding."**

This topic is duplicative of Topic No. 31 of the Phase I Notice because the information sought would be encompassed within that topic's broad request for the nature, existence, contents, and custodian(s) of any and all writings and/or things reporting and containing relevant information in general. It is also duplicative of the multiple requests served by plaintiffs concerning LNA's investigative interviews. Plaintiffs have, or are receiving, the transcripts of the recorded interviews and do not need an LNA witness to testify as to their contents. The Court has specifically denied any further discovery of LNA's investigative interviews. Rec. Doc. 13149 at 17-18. Indeed, to the extent LNA has any information responsive to this topic, it would only have been through investigation carried out in anticipation of litigation.

> **Topic No. 19.b. "Existence, source or origin, contents, and custodian of any and all communications or accounts of persons reporting any or all of the following in or from the Lower Ninth Ward: flood protection system breaches or failure."**

This topic is duplicative of previous deposition topics and is impermissible for the same reasons as Topic 19.a above.

> **Topic No. 19.c. "Existence, source or origin, contents, and custodian of any and all communications or accounts of persons reporting any or all of the following in or from the Lower Ninth Ward: ING movements or contact or impact with any object."**

This topic is duplicative of previous deposition topics and is impermissible for the same reasons as Topic 19.a above. Further, this topic is duplicative of Interrogatory No. 22 and

LIBW/1676919.7

Document 30, both of which requested information regarding complaints or communication about a barge coming in contact with the Industrial Canal floodwall.

>**Topic No. 19.d. "Existence, source or origin, contents, and custodian of any and all communications or accounts of persons reporting any or all of the following in or from the Lower Ninth Ward: scraping sounds or explosion or boom sounds."**

This topic is impermissible for the same reasons as Topic 19.a above, and is also duplicative of Interrogatory No. 22 and Document Request No. 30.

>**Topic No. 19.e. "Existence, source or origin, contents, and custodian of any and all communications or accounts of persons reporting any or all of the following in or from the Lower Ninth Ward: injuries or deaths."**

This topic is impermissible for the same reasons as Topic 19.a above.

>**Topic No. 19.f. "Existence, source or origin, contents, and custodian of any and all communications or accounts of persons reporting any or all of the following in or from the Lower Ninth Ward: emergencies."**

This topic is impermissible for the same reasons as Topic 19.a above.

>**Topic No. 20: "Nature, contents, title, and location of any and all policies, procedures, and standards in the possession, custody, or control of LNA relevant to barge arrivals, barge unloading, barge mooring, training of persons handling, scheduling and/or mooring barges in effect on August 29, 2005 at the Lafarge France Road facility.**

This topic is duplicative of Topic No. 16 of the Phase I Notice, requesting information regarding written policies and other documents about moving and securing of a barge possessed, used, or available to LNA on August 29, 2005. It is also duplicative of Interrogatory No. 1.h seeking information regarding policies, procedures, and other documents about instruction, education, supervision, and/or oversight relative to mooring, securing, transport, or removal of barges at LNA's dock facilities. This Court has already denied plaintiffs' motion to compel further discovery in response to Interrogatory No. 1.h.

>**Topic No. 21. "Nature, contents, title, and location of any and all policies, procedures, and standards in the possession, custody, or control of Lafarge relevant**

**to barge arrivals, barge unloading, barge mooring, training of persons handling, scheduling and/or mooring barges in effect on August 29, 2005, regardless of location."**

This topic is duplicative of Topic No. 16 of the Phase I Notice, requesting information regarding written policies and other documents about moving and securing of a barge possessed, used, or available to LNA on August 29, 2005.  It is also duplicative of Interrogatory No. 1.h, requesting information regarding policies, procedures, and other documents about instruction, education, supervision, and/or oversight relative to mooring, securing, transport, or removal of barges at LNA's dock facilities.  In response to Interrogatory 1.h, LNA specifically objected to producing documents concerning facilities other than those in its River Region at New Orleans, Westlake, and Union.  The Court upheld LNA's objection over plaintiffs' motion to compel.  Rec. Doc. 12605 at 14.  Accordingly, no further discovery on this topic should be permitted as plaintiffs have all the discovery to which the Court held they were entitled.

**Topic No. 22.  "Any and all other relevant factual matters disclosed by deponent(s) of which the deponent(s) have knowledge."**

This catch-all topic is duplicative of Topic No. 45 in the Phase I Notice, which was specifically prohibited by the Court.  Rec. Doc. 317 in No. 05-4419, at 2.  Plaintiffs' inclusion of this topic in their Rule 30(b)(6) notice is a symptom of their general disregard for this Court's prior restrictions on discovery, as evidenced generally in the notice.  This topic cannot have been included in good faith.  LNA therefore requests that the Court award it the costs (however minimal) of having to file a second motion for protective order against this topic.

## CONCLUSION

For the foregoing reasons, Defendant's motion for a protective order to limit Plaintiffs' 30(b)(6) deposition notice should be granted.

Respectfully submitted,

LIBW/1676919.7

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

  /s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

### Certificate of Service

I do hereby certify that I have on this 27th day of May, 2008 served a copy of the foregoing
pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ John D. Aldock

LIBW/1676919.7