# EXHIBIT 9

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF INGRAM BARGE COMPANY, AS OWNER OF THE ING 4727, PETITIONING FOR EXONERATION FROM OR LIMITATION OF LIABILITY | * CIVIL ACTION<br>*<br>* NO. 05-04419 and consolidated cases<br>*<br>* SECTION "C"<br>*<br>* MAGISTRATE (2)<br>* |

### RESPONSES OF LAFARGE NORTH AMERICA INC. TO PLAINTIFFS' SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

Lafarge North America Inc., for its answer to the Interrogatories and Requests for Production propounded by plaintiffs on August 18, 2006, states upon information and belief as follows, based upon information presently available:

### GENERAL OBJECTIONS

LNA objects to the instructions and preamble to plaintiffs' requests to the extent they purport to impose upon LNA duties or obligations beyond those provided in the Federal Rules of Civil Procedure. LNA further objects to the requests to the extent they are not "limited to Phase I issues" as required by the Court's Order of July 28, 2006. In addition, LNA objects to the requests to the extent they call for identification or production of documents created by or for

919276-1

LNA on or after September 8, 2005, the date on which LNA learned of the allegations that form the basis for plaintiffs' claims in this action; such documents are protected from disclosure under Fed. R. Civ. P. 26(b)(3). LNA states that it has attempted to retrieve and preserve records from its New Orleans terminal, but can neither guarantee nor represent that none were destroyed or lost because of Hurricane Katrina, which seriously flooded and damaged the plant. To the extent an objection may be necessary, LNA objects to producing any documents which may have been lost as a result of this hurricane. LNA's investigation is ongoing and LNA will supplement as and to the extent necessary.

Subject to these and any other stated objections, Lafarge North America Inc. (hereafter occasionally "LNA") responds upon information and belief as follows:

## ANSWERS TO INTERROGATORIES

### INTERROGATORY NO. 1:

Give the name and address of the any non-employee personnel at the Industrial Canal facility over the ten day period August 22-31, and give the name and address of the employer of each and state the reason for their presence.

### RESPONSE TO INTERROGATORY NO. 1:

LNA objects to this interrogatory as vague and construes it to request identification of persons who were present at LNA's New Orleans cement terminal from August 22-31 other than persons employed by LNA. LNA responds that, at times during this period prior to the advent of Hurricane Katrina, third-party personnel would have been present at LNA's facility as a matter of normal business operations – e.g., truck drivers of LNA's customers would have been present to pick up cement for delivery to LNA's customers. The names of such individuals are not known to LNA but the identities of the customers may be available from LNA records, including

New Orleans terminal records, that LNA will make available for plaintiffs' inspection.   Also, LNA understands that on the afternoon of August 27, 2006, a crew arranged by Joseph C. Domino Inc. was present at the facility to shift the barge at the LNA dock prior to Hurricane Katrina.   LNA has no first-hand knowledge of the identity of the crew members, but notes that this information may be available from documents previously produced to plaintiffs by Joseph Domino Inc..   Finally, LNA believes that at some point on August 27, individuals from the Orleans Levee Board were present on the site to close the flood gates; LNA does not know the identity of these individuals.   LNA's investigation continues and LNA will supplement if other persons are identified.   LNA does not know whether any individuals were present at the terminal on August 28 and 29, during which time the City of New Orleans was under a mandatory evacuation order.

## INTERROGATORY NO. 2:

Give the names and addresses of all of your employees at the Industrial Canal facility over the ten day period August 22-31, and describe the title and duty of each employee.

## RESPONSE TO INTERROGATORY NO. 2:

The following LNA employees were or may have been present at the LNA New Orleans cement terminal at various times during period from August 22 to August 27, 2005:

- Dennis Millon, terminal manager;

- Ed Busch, terminal operations assistant;

- Annette Gaskin, administrative assistant;

- Earl Smith, maintenance supervisor;

- Eric Peppin, terminal operator;

- Louis Robin, terminal operator;

- Roland Johnson, plant operator;

- Aaron Regas, plant operator;

- Daryl Evans, weighmaster;

- Ed Sturgis, truck loader.

Another employee, James Lewis, is believed not to have been present at the facility during the August 22-27 time frame.

The address of employment for each employee at that time was: Lafarge North America Inc., 2315 France Street, New Orleans, Louisiana.

LNA believes that no employees were present at the terminal from August 28 to August 31, during which time the City of New Orleans was under a mandatory evacuation order.

## INTERROGATORY NO. 3:

Give the name, and address, of any person engaged in securing the barge in anticipation of the approach of Hurricane Katrina and give the name and address of the employer of each person.

## RESPONSE TO INTERROGATORY NO. 3:

Ed Busch, Earl Smith, Roland Johnson and Louis Robin were the LNA employees who were involved in securing the barges at the LNA New Orleans terminal on August 27, 2005. The crew arranged by Joseph C. Domino Inc. would also have been involved in such activity.

## INTERROGATORY NO. 4:

Describe in detail what each person named in answer to the proceeding interrogatory did to secure the barge in anticipation of the approach of Hurricane Katrina.

## RESPONSE TO INTERROGATORY NO. 4:

With regard to the activities of LNA employees, barge mooring lines were checked, lines were replaced and added, hatch covers were fastened down, and dock lines were adjusted to allow for rise in the water level.  LNA refers plaintiffs to the statements of Ed Busch and Earl J. Smith produced in response to plaintiffs' requests for production of documents.  LNA does not have first-hand knowledge of what the Dominos crew did.

## INTERROGATORY NO. 5:

Describe any tele-faxes, e-mails, telegrams, notes or memos of cell phone calls, or telephone calls, made, or received, by any person in your employ to, or from, any person in the employ of Ingham  Barge Company regarding the transfer of the barge from your facility, or pre-Katrina preparation of the barge for wind, wave, and tidal serge   projections for Hurricane Katrina and give the name and address of the originator, the name and address of the recipient, the name and address of the employer of each, and the content of the communication.

## RESPONSE TO INTERROGATORY NO.5:

LNA objects to this interrogatory as vague and construes it to request a description of any documents in its possession, custody or control that reflect pre-Katrina communications with Ingram regarding transfer of the barge or preparations for the storm, and responds that responsive documents identified in its possession, custody or control if any, would be among those being produced or made available for inspection in response to plaintiffs' document requests.

**INTERROGATORY NO. 6:**

State how, when, and by whom, the barge was brought into your facility in the Industrial Canal prior to Hurricane Katrina and describe its purpose.

**RESPONSE TO INTERROGATORY NO. 6:**

The barge was brought to LNA's New Orleans terminal on August 26, 2005 by towboat believed to have been operated by or through Zito Fleeting, LLC for the purpose of delivering a load of cement to the terminal.

**INTERROGATORY NO. 7:**

State how, and when, the barge was scheduled to be transported from the Industrial Canal and state where it was to be transported to the next location.

**RESPONSE TO INTERROGATORY NO. 7:**

There does not appear to have been a "schedule" for the transportation of the barge from the Industrial Canal. Typically, barges would remain at the Industrial Canal facility for one or more days after they had been emptied of their load. In this instance, however, it appears there was no transport available to take the barge away from the facility. LNA does not know where the barge was to be transported to the next location.

**INTERROGATORY NO. 8:**

Describe any pre-Katrina communication received by you from any local, state, or federal, body, relating to the presence of the barge in the Industrial Canal, the hazard presented by Hurricane Katrina to, and by, unmanned vessel, or the advisability of moving unmanned vessels to a safe harbor.

**RESPONSE TO INTERROGATORY NO. 8:**

None known.


**INTERROGATORY NO. 9:**

Please describe any post-Katrina communication received by you from any local, state, or federal, body relating to the aforesaid barge.

**RESPONSE TO INTERROGATORY NO. 9:**

LNA objects to this request as beyond the scope of Phase I pursuant to the July 28 Order. Subject to and without prejudice to this objection, LNA responds that in late October 2005, LCDR Cheri ben-Iesau of the United States Coast Guard contacted counsel for LNA to request information relating to the barge.


**INTERROGATORY NO. 10:**

State who made the decision to leave the barge in your facility during the storm and describe any documents that support your conclusion.

**RESPONSE TO INTERROGATORY NO. 10:**

The highest-ranking LNA employee present at the LNA facility on August 27, 2005 was terminal operations assistant Ed Busch.  However, nobody "made the decision to leave the barge at" the LNA facility during the storm.   Rather, the barge was present at the facility and there was no means to remove it.


**INTERROGATORY NO. 11:**

State if the barge was capable of being intentionally flooded and, if so, describe.

919276-1

7

**RESPONSE TO INTERROGATORY NO. 11:**

LNA objects to this interrogatory as vague and construes it to relate to plaintiffs' allegation that LNA was negligent in its "failure to sink the barge prior to the storm." So construed, LNA responds: No.

**INTERROGATORY NO. 12:**

Describe any incident reports prepared by you are received by you from others relating to the breakaway barge at any time.

**RESPONSE TO INTERROGATORY NO. 12:**

LNA objects to this interrogatory as vague and construes it to relate to U.S. Coast Guard Form 2692. So construed, LNA responds: none prepared by LNA nor received from others outside the context of investigation by counsel this action.

**INTERROGATORY NO. 13:**

Describe any vessels owned, leased, or chartered, by you in the Industrial Canal, or within 20 miles thereof, during the time the barge was in your facility capable of moving the barge out of the facility.

**RESPONSE TO INTERROGATORY NO. 13:**

None.

**INTERROGATORY NO. 14:**

Describe any vessels owned, leased, or chartered, by Ingham in the Industrial Canal, or within 20 miles thereof, during the time the barge was in your facility, capable of moving the barge out of the facility.

**RESPONSE TO INTERROGATORY NO. 14:**

None known to LNA.

**INTERROGATORY NO. 15:**

Give the name and address, of any persons from whom statements were taken by you, or by others known to  you, pertaining to the pre-Katrina preparation of the Barge for projected wind, wave, and tidal surge, and give the name and address of his employer of each.

**RESPONSE TO INTERROGATORY NO. 15:**

LNA objects to this interrogatory as vague and construes it to request information about individuals from whom signed, written statements were taken.   So construed, LNA refers plaintiffs to documents produced in response to plaintiffs' document requests, which include the statements of Ed Busch and Earl Smith..

**INTERROGATORY NO. 16:**

Give the names and addresses of all persons at your facility on August 29, 2005 and give the name and address of the employer of each.

**RESPONSE TO INTERROGATORY NO. 16:**

To the best of LNA's knowledge, there were no LNA employees or other persons at the LNA New Orleans cement terminal on August 29, 2005, at which time the city was under a mandatory evacuation order.

**INTERROGATORY NO. 17:**

If there were no persons at your facility on August 29, 2005, state why that was the case and state if, when, and by whom, Ingham was advised.

**RESPONSE TO INTERROGATORY NO. 17:**

Among the reasons why there were no LNA employees or others known to LNA to have been present at the New Orleans cement terminal on August 29, 2005, there was a mandatory evacuation order in effect at that time.   Also, the flood gates had been closed by representatives of the Orleans Levee Board and at that point it would not have been safe for any personnel to have remained on the canal side of the floodwall.   LNA does not know whether Ingram was so advised or, if so, when and by whom.

**INTERROGATORY NO. 18:**

Describe any photographs taken by you or any other person, of the barge pre-Katrina which would depict its mooring in anticipation of the storm and any photographs taken of the condition of the moorings after the barge broke away.

**RESPONSE TO INTERROGATORY NO. 18:**

LNA is not aware of any photographs of the barge pre-Katrina depicting its mooring prior to the storm.   After learning of the allegations that form the basis for plaintiffs' claims in this

action on September 8, 2005, LNA engaged counsel and representatives to investigate.   Pursuant to that investigation, photographs were taken of conditions at the LNA terminal and of the barge. Such photographs constitute attorney work product that is protected from disclosure under Fed. R. Civ. P. 26(b)(3).

## INTERROGATORY NO. 19:

Describe any instructions received by you from Ingham  during the time the Ingham barge was in your facility and give the date and time received and the name and address of the recipient and the name and address of the transmitter.

## RESPONSE TO INTERROGATORY NO. 19:

LNA objects to this request as vague and potentially overbroad to the extent it applies to communications between LNA and Ingram having nothing to do with the ING 4727 or the New Orleans terminal, and construes the request to relate to instructions from Ingram personnel to LNA personnel related to the ING 4727 during the time the barge was present at the LNA New Orleans Cement Terminal prior to the hurricane.   So construed, LNA responds:  None known to LNA.   Written instructions, if any, would be included in the records being produced to plaintiffs in response to their requests for production of documents.

## INTERROGATORY NO. 20:

Describe any instruction given by you to Ingham  during the time its barge was in your facility and give the name and address of the transmitter and the name and address of the recipient.

## RESPONSE TO INTERROGATORY NO. 20

LNA objects to this request as vague and potentially overbroad to the extent it applies to communications between LNA and Ingram having nothing to do with the ING 4727 or the New Orleans terminal, and construes the request to relate to instructions by LNA personnel related to the ING 4727 during the time the barge was present at the LNA New Orleans Cement Terminal prior to the hurricane.   So construed, LNA responds:   LNA is not aware of any written instructions.  According to LNA employee Ed Busch, a call was made on August 27, 2005 to release the barge over voice mail to one of Ingram's representatives in New Orleans.

## INTERROGATORY NO. 21:

Describe any fleeting operations owned, or utilized, by you or Ingham  over the three year period preceding Katrina and give the exact location and the transportation time between your facility and the fleet.

## RESPONSE TO INTERROGATORY NO. 21:

LNA objects to this interrogatory as vague and potentially overbroad and construes it to seek information regarding barge fleeting operations owned or utilized by LNA or Ingram with respect to the New Orleans cement terminal.   LNA does not own any such fleeting operations. With respect to fleeting operations owned or utilized by Ingram, LNA objects and responds that the interrogatory is properly directed to Ingram, not LNA; but states that, on information and belief, Ingram has utilized Zito Towing as a fleeting operation.

**INTERROGATORY NO. 22:**

State your policy with regard to the barges of others in the face of a hurricane, or tropical storm.

**RESPONSE TO INTERROGATORY NO. 22:**

LNA objects to this interrogatory as vague and construes it to seek information regarding LNA's policy with respect to the mooring of barges at the New Orleans cement terminal in advance of an oncoming storm as of August 2005.   With respect to the mooring of barges, it was the practice of LNA's New Orleans terminal to utilize a procedure referred to as "long lining" to secure barges to the dock, as described in the statement of Ed Busch that is being produced in response to plaintiffs' requests for production of documents.   LNA's dock is in a protected slip on the Inner Harbor Navigation Canal, and thus barges are moored within the protected slip.

**INTERROGATORY NO. 23:**

State if you had barges of other customers in your facility at the time that the Ingham barge was in your facility and state what you, or the owners thereof, did with the barges.

**RESPONSE TO INTERROGATORY NO. 23:**

Apart from the ING 4727, there were six other barges at LNA's New Orleans cement terminal on August 27, 2005.   LNA took measures to secure these barges to the dock and to each other in advance of the storm, and none of these barges broke away from their moorings during the storm.

**INTERROGATORY NO. 24:**

Describe your relationship with Joe Domino, Inc., at the time of the hurricane.

**RESPONSE TO INTERROGATORY NO. 24**:

Joseph C. Domino Inc. was an independent contractor to LNA at the time that it arranged the shift of the barge at the LNA dock prior to Hurricane Katrina.

**INTERROGATORY NO. 25:**

Please identify all evidence which may be used in the case at the trial of this matter.

**RESPONSE TO INTERROGATORY NO. 25**:

LNA objects to this interrogatory as premature and in violation of the Court's July 28 Order, which calls for the identification of trial exhibits no earlier than November 1, 2006.

**INTERROGATORY NO. 26:**

Please identify al   witnesses who you contend have knowledge of the incident, events preceding the incident (August 22-29, 2005), events during the incident, and events following the incident.

**RESPONSE TO INTERROGATORY NO. 26**:

LNA objects to this interrogatory as vague to the extent it fails to specify the "events" as to which information is sought.   LNA further object to this interrogatory to the extent that it seeks information about "events following the incident" on the ground that such information is irrelevant to the issues to be addressed in Phase I and therefore beyond legitimate discovery pursuant to the Court's July 28 Order.   Subject to and without prejudice to these objections, LNA refers plaintiffs to its responses to Interrogatories 1, 2 and 3 above.

919276-1

## RESPONSES TO DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION OF DOCUMENT NO. 1:

Any contracts, agreements, or memoranda of understanding, pertaining to the relationship between your company and Ingram Barge Company, and Joe Domino, Inc., or M/V Regina H., or Unique Towing, Inc. and Riverway Company in force and effect on August 29, 2005.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

LNA objects to this request as overbroad to the extent it seeks production of "any" responsive documents regardless of their relevance to the allegations in this case. Subject to and without waiving any objections, LNA responds that it has previously produced the Transportation Agreement between itself and Ingram. LNA further responds, as to Joe Domino, Inc., or M/V Regina H., or Unique Towing, Inc., that it has not located any responsive documents, apart from those separately produced by those entities in response to a previous subpoena. Subject to and without waiving any objections, LNA states, further, that it will produce documents, including New Orleans terminal documents, by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions.

### REQUEST FOR PRODUCTION OF DOCUMENT NO. 2:

Any documentation reflecting vessels owned by you, leased by you, or chartered by you, as of August 29, 2005.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

LNA objects to the request as overbroad, vague, and potentially unduly burdensome to the extent it pertains to vessels apart from the seven barges that were moored at LNA's New Orleans cement terminal as of August 29, 2005. Subject to and without waiving any objections,

LNA states that it will produce documents including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions, which may contain documents that pertain to one or more of those seven barges.

## REQUEST FOR PRODUCTION OF DOCUMENT NO. 3:

Any records reflecting when, how, and by whom, the barge ING 4727 was delivered to your facility on the industrial canal prior to August 29, 2005 and, in connection therewith, any records that would reflect the names and addresses of crew aboard the vessel, or tow, and the name and address of the employer of each.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

Subject to and without waiving any objections, LNA states that it is producing herewith documents relating to the ING 4727 including: barge unloading report (bearing identification stamp number LNA000105); shipping day report (bearing identification stamp number LNA 000106); fleet picture (bearing identification stamp number LNA000107); and barge/truck/rail report (bearing identification stamp number LNA000108). LNA will produce further documents including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions. Such documents may include other documents responsive to this request.

## REQUEST FOR PRODUCTION OF DOCUMENT NO. 4:

Produce any records, or pictures, that would depict the position, and mooring, of barge ING 4727 at any time following its arrival your facility, and up until August 29, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Subject to and without waiving any objections, LNA states that it is producing herewith documents that may be responsive to this request including: statements of Ed Busch (bearing identification stamp numbers LNA000109 to LNA000110) and Earl Smith (bearing identification stamp numbers LNA000111 to LNA000112); and New Orleans terminal hurricane preparation checklist (bearing identification stamp number LNA000113). LNA will produce further documents including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions. Such documents may include documents responsive to this request. LNA objects to the production of documents created or obtained by LNA counsel or representatives on or after September 8, 2005, on the basis of work product protection. LNA is willing to meet and confer with plaintiffs regarding this request.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 5:**

Produce any records that would reflect when barge ING 4727 was scheduled to leave your facility and any records that would reflect its destination, and the means by which it would be transported from your facility to its destination.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Subject to and without waiving any objections, LNA states that it will produce documents including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions. Such documents may include documents responsive to this request.

## REQUEST FOR PRODUCTION OF DOCUMENT NO. 6:

Produce any weather reports received by you from any source, and any notes of television, or radio, commentary on the weather over the period August 22-29, 2005.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

LNA objects to this request as vague and potentially overbroad and unduly burdensome to the extent it seeks production of "any weather reports" without limitation to the facts relevant to this matter.  Subject to and without waiving any objections, LNA states that it will produce documents, including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions.  Such documents may include documents responsive to this request.


## REQUEST FOR PRODUCTION OF DOCUMENT NO. 7:

Produce any correspondence, emails, telefaxes, telegrams, notes of telephone, or radio, communications between your company and Ingram Barge Company, or Joe Domino, Inc., or M/V Regina H., or Unique Towing, inc. and Riverway Company over the period August 22-29, 2005.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

LNA objects to this request as vague and potentially overbroad and unduly burdensome to the extent it seeks production of "any" documents without limitation to the facts relevant to this matter (e.g., communications having nothing to do with the barge ING 4727).   Subject to and without waiving any objections, LNA states that it will produce documents including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually

convenient time and under agreed-upon conditions. Such documents may include documents responsive to this request.


**REQUEST FOR PRODUCTION OF DOCUMENT NO. 8:**

Produce any correspondence, emails, telefaxes, telegrams notes of telephone, or radio, communications between your company and the United States Coast Guard, local or state police, other vessels in the Industrial Canal, Homeland Security, FEMA, or any other governmental agency, over the period August 22-29, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

LNA objects to this request as vague and potentially overbroad and unduly burdensome to the extent it seeks production of "any" documents without limitation to the facts relevant to this matter (e.g., communications with "any ... governmental agency" about any subject whatsoever). Subject to and without waiving any objections, LNA states that it will produce documents including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions. Such documents may include documents responsive to this request.


**REQUEST FOR PRODUCTION OF DOCUMENT NO. 9:**

Produce any logbooks, ledgers, diaries, or similar other written documents, in which recording would be entered regarding the coming, and going, of barges, or vessels, the mooring of vessels, the positions of vessels, in your facility and problems with vessels over the period August 22-29, 2005.


919276-1

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

LNA objects to this request as vague and potentially overbroad and construes the term "your facility" to relate to LNA's New Orleans cement terminal and the term "problems with vessels" to relate to vessels located at that facility.  Subject to and without waiving any objections, LNA states that it is producing herewith documents including: barge unloading report; shipping day report; fleet picture; and barge/truck/rail report.  LNA will produce further documents including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions.  Such documents may include documents responsive to this request.


**REQUEST FOR PRODUCTION OF DOCUMENT NO. 10:**

Produce any payroll, attendance, time-clock records, or similar other records, which would reflect the names, addresses, and positions, of your employees at the facility over the period August 22-29, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

LNA objects to this request as vague and potentially overbroad and construes the term "the facility" to relate to LNA's New Orleans cement terminal.  Subject to and without waiving any objections, LNA states that it will produce documents including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions.  Such documents may include documents responsive to this request.

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 11:**

Produce any reports of the incident prepared by you, or received by you from others, on, or subsequent to, August 29, 2005, including but not limited to, reports to the United States Coast Guard, local or state police, FEMA, Homeland Security, or any other private or governmental agency.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

LNA objects to this request as vague construes it to request reports exemplified by U.S. Coast Guard Form 2692 or similar reports.  So construed, LNA responds:  So construed, LNA responds: none prepared by LNA nor received from others outside the context of this action..

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 12:**

Any correspondence between you and Ingram Barge Company, Joe Domino, Inc., or M/V Regina H., or Unique Towing, Inc. or Riverway Company, on or after August 29, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

LNA objects to this request as beyond the legitimate scope of Phase I discovery.   LNA further objects to the request to the extent that it seeks communications among counsel for defendants concerning the handling of these cases or the response to claims such as those asserted in these cases, which constitutes attorney work product shared among counsel for parties with a common interest (as recognized in the July 28 Order requiring these parties to cooperate as "Group B").

## REQUEST FOR PRODUCTION OF DOCUMENT NO. 13:

Produce any emails, telefaxes, telegrams notes of telephone, or radio, communications between you and Ingram Barge Company, or Joe Domino, Inc., or M/V Regina H., or Unique Towing, Inc. or Riverway Company pertaining to deteriorating weather conditions, and/or the need to move barge ING 4727 to a safe harbor.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

LNA objects to this request as duplicative of Request for Production No. 7.   Subject to and without waiving any objections, LNA is not aware of any documents responsive to this request but states that such documents, if any, would be included in the records that LNA will make available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions.

## REQUEST FOR PRODUCTION OF DOCUMENT NO. 14:

Produce any correspondence, emails, telefaxes, telegrams, notes of telephone, or radio, communications, between you and Ingram Barge Company memorializing the decision, and the party responsible for the decision to leave barge ING 4727 at your facility during Hurricane Katrina.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 14

LNA objects to this request as duplicative of Request for Production No. 7.   Subject to and without waiving any objections, LNA states that it will produce documents including New Orleans terminal records by making them available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions.   Such documents may include documents responsive to this request.

919276-1

**REQUEST FOR PRODUCTION OF DOCUMENT NO. 15:**

Provide documentation of any vessels owned by you, leased by you, or chartered by you, in, within one hundred and forty (140) miles of the Industrial Canal during the period August 27-29, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

LNA objects to this request on grounds of relevance and potential undue burden.  Subject to and without waiving any objections, LNA states that it is unaware of any such vessels.


**REQUEST FOR PRODUCTION OF DOCUMENT NO. 16:**

Produce any records which would reflect the name, address, and telephone of any eyewitnesses known to you to have witnessed the barge breaking away from it's mooring on August 29, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

None.


**REQUEST FOR PRODUCTION OF DOCUMENT NO. 17:**

Provide any records which would reflect the time that the barge broke loose from it's [sic] mooring at your facility on August 29, 2005.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

LNA has no company records which would reflect the time that the barge ING 4727 broke loose from its mooring at the New Orleans cement terminal on August 29, 2005.   LNA objects to this request to the extent it seeks production of attorney work product or expert

919276-1

23

analysis generated for purposes of this litigation regarding the time that the barge was likely to have broken loose from its moorings.

## REQUEST FOR PRODUCTION OF DOCUMENT NO. 18:

Produce any still, or motion, photographs taken by you or taken by others in your possession, of the mooring of the ING 4727 prior to it's breaking loose, following it's breaking loose, the condition of the moorings after it broke loose and the course of the barge after it broke loose.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

LNA does not possess any photographs of the mooring of the barge taken prior to the hurricane. The documents that LNA will make available for plaintiffs' inspection include post-hurricane photographs obtained by LNA prior to September 8, 2005; such photographs were publicly-available at the time that they were obtained. LNA objects to the production of documents created or obtained by LNA counsel or representatives on or after September 8, 2005, on the basis of work product protection. LNA is willing to meet and confer with plaintiffs regarding this request.

## REQUEST FOR PRODUCTION OF DOCUMENT NO. 19:

Produce records of any instruction given by you to Ingram Barge, or Joe Domino, Inc. or M/V Regina H, or Unique Towing Company or Riverway Company containing warnings, requests or concerns expressed by you to them concerning barge ING 4727 and the approaching storm.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

LNA objects to this request as vague and duplicative of Request for Production No. 7. Subject to and without waiving any objections, LNA is not aware of any documents responsive to this request but states that such documents, if any, would be included in the records that LNA will make available for plaintiffs' inspection at a mutually convenient time and under agreed-upon conditions.

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000

Daniel A. Webb (#13294)
**SUTTERFELD & WEBB, LLC**
650 Poydras Street, Suite 2715
New Orleans LA 70130
Telephone: (504) 598-2715

John D. Aldock
**GOODWIN PROCTER LLP**
901 New York Ave., N.W
Washington, D.C. 20001
Telephone: (202) 346-4400

*Attorneys for Lafarge North America Inc.*

919276-1

25

## Certificate of Service

I do hereby certify that I have on this _____ 18 _____ day of, _____ Sept _____, 2006

served a copy of the foregoing pleading on counsel for all parties to this proceeding, by facsimile

transmission and by mailing the same by United States mail, properly addressed, and first class

postage prepaid.

919276-1

26

## Barge Unloading Report

| ING-4727 | | | Tons 1615 3/4 | | Date/Time Arrived | |
|---|---|---|---|---|---|---|
| Billow 29 | | | Cement Type H | | Date/Time Sailed | |
| Date | Start Time | Stop Time | Kettle 1 | Kettle 2 | Begin | Start |
| 8-26-05 | 12:20 | | | | | 29 @ 65 |

| Sampled | Date | Initials | | Test | | Time-Per Hour |
|---|---|---|---|---|---|---|
| Consultants Dry | | | | Date | Time | Draft |
| Date and Batches Confirmed | | | Released | | | Lumber |
| Temperature Value | | | Loaded | | | Empty |
| Cargo Acct | | | Reached | | | Difference |
| Released By | | | Terminal Tons | | Source Tons | Difference |

37' O        O    PORT O         O         0.37"
  DRY       DRY      DRY       DRY        DRY

O DRY                                      DRY O BOW
STERN

37' DRY      DRY      DRY      DRY       DRY
   O        O   STARBOARD O     O        O 37"

### Maintenance Data

8/26/05 12:20 - PUMPING TO SILO 29 @ 65
  15:06 - SHUT DOWN TO SWITCH OVER TO SILO 28
  15:35 - CHANGING SHIFTS
  16:12 - PUMPING TO SILO 28 → @ M.T.
  20:05 - LOADING "CASE" OF LABOR
  20:35 PUMPING
  21:50 - MOVING COVERS
  22:30 - PUMPING

LNA000105

NWO TERMINAL ML MARKER 94

| FROM: | DENNIS | | | SHIPPING DAY: | | 21 OF 31 | | |
|--------|--------|--------|--------|--------|--------|--------|--------|--------|
| DATE: | 22-Aug | | | DAY: | 21-Aug | | | |
| LOCATION | TYPE | ON HAND | IN PORT | IN TRAN | TOTAL | MTD SH | DAY AVE | DAY SH | LOG DAYS |
| JOPPA 1 | 1N-0001 | 617 | 1,436 | - | 2,053 | 485 | 22 | 28 | 95 |
| JOPPA 1s | PY-6301 | 0 | 0 | - | 0 | 0 | | | 0 |
| MYLAKI 1 | 1N-0001 | 1,257 | 4,529 | 10,584 | 16,571 | 9432 | 449 | 591 | 37 |
| OFF/SPEC | 1N-2321 | 0 | | | 0 | 0 | | | 0 |
| FLY ASH | FI-0011 | 1,218 | 1,632 | 4,579 | 7,428 | 4893 | 238 | 183 | 31 |
| CLASS H | WS-2301 | 144 | 3,166 | | 3,310 | 6356 | 303 | 677 | 11 |
| CLASS A | W1-2301 | 1,348 | - | 1,612 | 2,960 | 970 | 46 | 50 | 84 |
| TOTAL PRO. | | 4,382 | 10,763 | 17,076 | 32,421 | 22,206 | 1,057 | 1,517 | |

BARGES IN PORT

| BARGE NO. | TYPE | TONS | ARRIVAL | ETC | NOTES |
|-----------|------|------|---------|-----|-------|
| ING 5882 | JOP I | 1,436 | | | PVHC418 05/21 (MYL) 2,306s/t |
| | JOP I | | | | BUNGE 725 05/25 (F-A) 1,471s/t |
| | JOP I | | | | BUNGE 734 05/26 (F-A) 1,470s/t |
| | JOP I | | | | BUNGE 446 05/26 (MYL) 2,004s/t |
| | JOP I | | | | MEM 5056 05/30 (H) 1,421s/t |
| | JOP I | | | | ING5789 06/01 (J-I) 1,636s/t |
| | JOP Is | | | | SUN1338 06/02 (MYL) 2,325s/t |
| | JOP Is | | | | BUNGE 495 06/03 (F-A) 1,493s/t |
| | MYL-I | | | | SUN1395 06/03 (MYL) 2,319s/t damaged cargo |
| SC204 | MYL-I | 2,352 | | | MEM 94211 06/07 (H) 1,465s/t |
| BUNGE 9316 | MYL-I | 2,177 | | | BUNGE 13507 06/08 (F-A) 1,614s/t |
| | MYL-I | | | | BUNGE 9138 06/10 (MYL) 2,195s/t |
| | F/A | | | | SUN1248 06/13 (MYL) 2,318s/t |
| BUNGE 9626 | F/A | 1,632 | | | PVHC258 06/15 (MYL) 2,339s/t |
| | F/A | | | | MPC55 06/16 (H) 1,416s/t |
| | F/A | | | | BUNGE 756 06/17 (F-A) 1,482 s/t |
| ING 4727 | H | 1,615 | | | T13882 06/23 (H) 1,883 s/t |
| ING4745 | H | 1,551 | | | BUNGE9418 06/23 2,187s/t |
| | H | | | | BUNGE 13008 (F-A) 06/24 1,451s/t |
| | H | | | | BUNGE 9408 (MYL) 06/25 2,184s/t |
| | H | | | | MPC 96 (A) 06/25 1,470s/t |
| | H | | | | T13887 (H) 06/26 1,865s/t |
| | H | | | | GV310 (MYL) 06/27 1,814s/t |
| | A | | | | BUNGE 8778 (F-A) 06/28 1,629s/t |
| | A | | | | BUNGE 432 (MYL) 06/28 2,034s/t |
| | A | | | | PLM6238 (A) 06/29 1,769s/t |
| | A | | | | PN 210 (H) 06/30 1,737s/t |
| | A | | | | EFC9632 (H) 07/08 1,744s/t |

BARGES IN TRANSIT

| BARGE NO. | TYPE | TONS | POSITION | E.T.A | |
|-----------|------|------|----------|-------|---|
| | JOP I | | | | BUNGE 8998 (F-A) 07/09 1,813s/t |
| | JOP I | | | | BUNGE 9298 (MYL) 07/11 2,164s/t |
| | JOP I | | | | ING6529 (J-I) 07/12 1,662s/t |
| | JOP I | | | | OR6301 (H) 07/14 1,563s/t |
| | JOP I | | | | BUNGE 9238 (MYL) 07/15 2,164s/t |
| | JOP I | | | | BUNGE 5966 (FA)07/16 1,621s/t |
| | JOP-1s | | | | QL818 (MYL) 07/18 2,316s/t |
| | JOP-1s | | | | SC2065 (MYL) 07/21 2,327s/t |
| | MYL-I | | | | MPC 56 (H) 07/24 1,362s/t |
| ART 480126 | MYL-I | 2,181 | | | BUNGE 706 (F-A) 07/25 1,473s/t |
| | MYL-I | | | | SIG519 (H) 07/25 1,455s/t |
| BUNGE 9306 | MYL-I | 2,178 | | | BUNGE 13011 (F-A) 07/26 1,487s/t |
| | MYL-I | | | | PVBL696 (MYL) 07/27 2,326s/t |
| | MYL-I | | | | ING7530 (H) 07/29 1,487s/t |
| BUNGE 9366 | MYL-I | 2,195 | | | PVBL 948 (MYL) 08/02 2,306s/t |
| BUNGE 9018 | MYL-I | 2,152 | | | BUNGE 778 (F-A) 08/03 1,476s/t |
| SUNGE 14005 | MYL-I | 2,178 | | | T13972 (H) 08/05 1,803s/t |
| | MYL-I | | | | ING 5835 (A) 08/06 1,715s/t |
| | MYL-I | | | | ART440665 (MYL) 08/10 2,352s/t |
| | MYL-I | | | | BUNGE 9038 (F/A) 08/11 1,812 s/t |
| | MYL-I | | | | BUNGE9445 (MYL) 08/15 2,154s/t |
| BUNGE 731 | F/A | 1,476 | | | MEN2092 (H) 08/16 1,509 s/t |
| BUNGE 778 | F/A | 1,477 | | | MEN3007 (H) 8/17 1,463 s/t |
| | F/A | | | | SUN9876 96 (F/A) 8/17 1,464 s/t |
| BUNGE 9618 | F/A | 1,625 | | | SC201 (MYL) 08/22 2,204s/t |
| | H | | | | |
| | H | | | | PHYSICAL ADJ. 06/19/06 |
| | H | | | | PHONES |
| | H | | | | CHANNEL    431-0614 |
| WBC 34 | A | 1,612 | | | TRIANGLE: (985) 536-0237 |
| | A | | | | ELMWOOD: 463-2202 |
| | A | | | | MEMCO : |
| | | | | | M453 LORI: 121°28'103 RADIO |
| | | | | | ZITO FLEET 835-8531 |

GINA 463 - 2201 DARREN

| AZEALA | 431-7368 | BUNGE | 314-292-2630 |
|--------|----------|-------|--------------|
| LOCKS | 947-2606 | | Ingram 985-536-0228 |
| SUN | (985) 747-1635 | | |
| DOMINO | 341-1122 | ACBL | 812-288-1857 |
| ABC TOWING | | 362-8210 | BOAT | STEVE OF AL |
| TURN | 9491152 | 392-5985 | | TODD -EYMARD |

LNA000106

# Fleet Picture

Date **8-9-05**          Time **8 AM**

## Barges at the dock

| Barge # | Product Type | Status |
|---|---|---|
| ART 14066 | myL 1 — 2352 Tons | UNLoaDING To SiLo 41 NOT Complet |
| BUNGE 903 B | FA — 1612 Tons. | UNLoaDING To Silo 32 |
| BUNGE 931 B | myL 1 — 2177 Tons | |
| ING 5882 | ToP 1 — 1436 Tons. | |
| BUNGE 944 B. | myL 1 — 2154 Tons. | |
| mEm 3092 | H — 1509 Tons. | ON The |
| mEm 3007 | H — 1483 Tons. | RiveR |
| PIN 324 | H — 1407 Tons. | ON The WAY |
| WBC 34 | A — 1612 Tons | To New ORLEANS |
| SC 301 | MyL 1 — 2204 | |
| SC 304 | myL 1 — 2352 | |
| BUNGE 769 | FA — 1,464 | |
| BUNGE 861 B | FA — 1,625 | |
| BUNGE 938 B | MYL 1 — 2,195 | |
| BUNGE 901 B | 12MYNAN — 2,182 | |
| BUNGE 930 B 10 | MYL 1 — 2,178 | |
| BUNGE 775 | FA — 1,477 | |
| ING 4727 | H — 1,615 | |
| ING 4745 | H — 1,551 | |

1 AM
8-10

ent
WESTLAKE.

LNA000107

Report Date:    5/16/2005                **Lafarge Barge/Truck/Rail**                Last Update: 5/13/2005 4:15:41 PM

| Brg/Trk/R | Trip # | Type | Tons | Status | E.T.A. | Destination | Location | Boat/Trk/Eng. | Grp | Vendor | Status Start | Trip Start |
|-----------|--------|------|------|--------|--------|-------------|----------|---------------|-----|--------|--------------|------------|
| MEM5056 | 7 | JOP H | 1421 | | 05/18 | New Orleans | New Orleans | MEMCO | | MEMCO | 05/09 | 05/09 |
| ING5758 | 1 | JOP H | 1652 | | | New Orleans | New Orleans | | | Ingram Barge | 05/01 | 04/24 |
| ING5891 | 1 | JOP H | 1611 | | | New Orleans | New Orleans | | | Ingram Barge | 05/01 | 04/24 |
| T13824 | 1 | JOP H | 1766 | | | New Orleans | New Orleans | | | Ingram Barge | 05/01 | 04/24 |
| CCT283 | 1 | JOP I | 1779 | | | New Orleans | New Orleans | | | Ingram Barge | 05/08 | 04/27 |
| B 437 | 1 | MYLAKI | 1952 | | | New Orleans | Laplace La | | | American | 01/06 | 12/29 |
| B 913B | 1 | MYLAKI | 2135 | | | New Orleans | Laplace La | | | Bunge Towing | 03/22 | 03/22 |
| B 941B | 1 | MYLAKI | 2128 | | | New Orleans | Laplace La | | | Bunge Towing | 03/23 | 03/23 |
| PVHC 47B | 1 | MYLAKI | 2336 | | | New Orleans | Laplace La | | | Bunge Towing | 03/23 | 03/23 |
| SUN 124B | 1 | MYLAKI | 2337 | | | New Orleans | Laplace La | | | American | 03/24 | 03/24 |
| SUN 131B | 1 | MYLAKI | 2318 | | | New Orleans | Laplace La | | | Sunn | 03/23 | 03/23 |
| T13982 | 1 | JOP H | 1784 | | 05/14 | New Orleans | DN 376 LM | Robert Kyle | | Sunn | 03/24 | 03/24 |
| T13905 | 1 | JOP A | 1475 | | 05/18 | New Orleans | Joppa IL | Ingram | | Ingram Barge | 05/08 | 05/08 |

ART4066B - MYLAKI - COMPLETED 8/11

BUNGE 903A - F/A - COMPLETED 8/11

BUNGE 944B - MYLAKI - COMPLETED 8/19

MEM 3007 - J-H - COMPLETED 8/19

MEM 2092 - J-H - COMPLETED 8/16

BUNGE 769 - F/A - COMPLETED 8/17

SC201B - MYLAKI - COMPLETED 8/22

BUNGE 831B - MYLAKI - COMPLETED 8/25

BUNGE 861B - F/A - COMPLETED 8/24

BUNGE 775 - F/A - COMPLETED 8/26

ING 4727 - H -

## STATEMENT OF ED BUSCH

I am Assistant Terminal Manager for the New Orleans Lafarge North America Inc. cement terminal, located on the Industrial Canal. I have worked at the terminal for four years, during which time we have prepared the terminal for heavy weather several times per year.

When we learned that Hurricane Katrina was approaching New Orleans, we began to prepare the terminal for the storm. On Saturday morning, August 27, we moved as much equipment as we could away from the dock before the floodgate walls were closed by the Orleans Levee Board, which was approximately 9:30–10:00 a.m. We completed the discharge of the ING 4727 and put the hopper covers back in place. We had a spool of new polypropylene line that we used to tie down the covers on all seven barges at the terminal. Extra mooring ropes were placed on the barges and any ropes that appeared old or worn were replaced. I assisted by cutting pieces of two-inch braided blue polypropylene rope from a spool of new rope, which we had obtained specifically for the purpose of preparing the terminal for heavy weather. Mooring ropes were added to all barges, including the ING 4727, which was positioned next to the loaded ING 4745.

Because of the predicted storm surge, I arranged for a tug to shift the light barge ING 4727 to the outside of the southern row of barges and to place the loaded ING 4745 on the inside, against the dock; this way, the light barge ING 4727 would be away from the dock and would not risk riding up onto the dock and causing a breakaway.

We also arranged the mooring lines between the dock and the barge so that the barges could rise with the expected tidal surge without over-tightening the mooring rope and pulling the barge underwater or breaking the line. We refer to this technique as "long lining." To do this, we secure one end of the line to the bollard on the dock. These bollards have ears so the rope

will not ride over the top of the bollard as the barge rises with the tidal surge.  The line is led around smooth-sided rubber/fiberglass pilings for several turns before they are secured on the barge cleat.  As the barge rises with the tidal surge and the lines begin to strain, one of the turns comes off the top of each piling, giving additional slack in the line.  The long-lining technique appears to have worked because all of the barges at the dock remained attached through Hurricane Katrina, although ING 4727, which was secured to the outside of ING 4745, did break away during the storm.

ED BUSCH

10/31/05
Date

2

LNA000110

## STATEMENT OF EARL J. SMITH

I am a maintenance supervisor at the Lafarge North America Inc. terminal in New Orleans. I have worked for Lafarge for 15 years.

On the morning of Saturday, August 27, 2005, there were seven barges at the terminal. In the northern row were five loaded barges, and in the southern row were the empty barge ING 4727 and, outboard of it, a loaded barge, the ING 4745. Along with other Lafarge employees, I began preparing the terminal for the approach of the storm.

We moved equipment off the dock and began replacing the fiberglass covers on the Barge ING 4727, which had completed unloading that morning. We used new polypropylene line to tie down the fiberglass covers on the barges.

We secured barges in the northern row to the dock and to each other in preparation for the storm. We added extra mooring ropes between the barges, using new, two-inch braided polypropylene line. We also replaced old mooring ropes with the new rope, and, for each of the barges, we added extra ropes between adjacent cleats. We used the same procedure for the southern row of barges, replacing at least one line between the ING 4727 and ING 4745 with a new line, and adding a new line between the cleats near the middle of the barges. In securing the barges to the dock, we allowed for the expected rise in the water level by making several turns of the mooring ropes around the dock pilings, after making the ropes fast to the dock bollard cleats and cleating the other end to the barges. This was to allow the turns to release gradually as the water rose, so the lines would not become too tight and break.

We had a boat shift around the two barges in the southern row so that the loaded barge (ING 4745) would be next to the dock and made fast to the dock in the same way as the northern

LNA000111

row of barges. This was done to give a better lead angle to the dock lines and to assure that the light barge (ING 4727) would not ride up over the dock during the surge of the storm.

We prepare for heavy weather several times a year, and this was the normal procedure that we have used to secure the plant and barges for storms. Because of the evacuation, we were not present during Hurricane Katrina. All of the loaded barges remained in place, but sometime during the storm the barge ING 4727 broke away from the terminal.

_Earl J. Smith Sr._
_____
EARL J. SMITH

_10-31-05_
_____
Date

LNA000112

# New Orleans Terminal

## Hurricane Preparation Checklist

Name of Hurricane _____

Date _____


\_\_\_\_ Move the barge unloader (Rambo) to the south end of the dock against the stops and tie barge ropes around the wheels.

\_\_\_\_Cable all barges to shore.

\_\_\_\_Disconnect power to the wharf

\_\_\_\_Remove all loose items from barge unloader (Rambo) and put inside the containers on the Rambo and lock the doors.

\_\_\_\_ Remove all loose items from the wharf and store in the marine shed or under group IV silos.

\_\_\_\_ Remove all equipment i.e. Welding machine, fork lift, Bobcat from the wharf and store in the marine shed or under group IV silos.

\_\_\_\_ Remove all loose items (Tools, etc.) from group III & IV silo roofs and store in the elevators

\_\_\_\_ Disconnect the power in the terminal (do this last)


## ((((((BE SAFE)))))

LNA000113