UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
| | * * | NO. 05-4182 and consolidated cases |
| PERTAINS TO: BARGE | * * | SECTION "K" (2) |
| *Boutte v. Lafarge*      05-5531 | * | |
| *Mumford v. Ingram*   05-5724 | * | |
| *Lagarde v. Lafarge*    06-5342 | * | JUDGE |
| *Perry v. Ingram*          06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*       06-7516 | * | |
| *Parfait Family v. USA* 07-3500 | * | MAGISTRATE |
| *Lafarge v. USA*           07-5178 | * * | JOSEPH C. WILKINSON, JR. |

**MEMORANDUM IN SUPPORT OF LAFARGE NORTH AMERICA INC.'S MOTION TO QUASH PLAINTIFFS' APRIL 30, 2008 DEPOSITION NOTICE AND DOCUMENT DEMAND TO CENTANNI INVESTIGATIVE AGENCY**

Lafarge North America Inc. ("LNA") moves to protect its work product by quashing plaintiffs' notice of a Rule 30(b)(6) deposition notice with accompanying document demand for LNA's investigator, Centanni Investigative Agency ("Centanni"). Exh. 1 The notice demands that Centanni produce its witness interviews notes and the other materials it has compiled, and that Centanni testify about those witness interviews and the methods and results of its investigative activities.[1]

Plaintiffs' notice must be quashed because the methods and product of Centanni's investigation constitute LNA's non-discoverable work product. Indeed, this Court has already ruled

---

[1] To date, plaintiffs have filed their notice but have not served a subpoena on Centanni.

that Centanni's notes of its witness interviews constitute opinion work product that plaintiffs cannot obtain. Rec. Doc. 13149 at 17-18. Furthermore LNA has already produced the identities and contact information for these witnesses. Rec. Doc. 12331, exht. D. Plaintiffs may interview these people for themselves and perform their own investigation rather than appropriating LNA's work product. Accordingly, plaintiffs' notice improperly seeks to invade LNA's protected work product and should be quashed.

Plaintiffs' notice should also be quashed because it is procedurally improper. Because Centanni is LNA's agent, plaintiffs cannot use third-party discovery techniques on Centanni to evade the limitations on discovery against LNA. This Court has repeatedly cautioned the use of discovery devices other than Rule 34 to secure documents from parties. *See* Rec. Doc. 317, in No. 05-4419, at 3, 4; Doc. 7724 at 9 ("Parties are prohibited from serving subpoenas for document production or Rule 30(b)(5) requests for production on other parties to this litigation."). Because the deadline for document production requests to parties has passed, plaintiffs' document demand to Centanni is improper for this additional reason.

## BACKGROUND

As has been previously briefed, LNA's counsel engaged Centanni Investigative Agency in October 2005, after barge-related litigation had already been filed, to assist in the investigation and defense of claims relating to the barge ING 4727. Centanni Declaration (Rec. Doc. 11037-6) ¶¶ 3-4. The Centanni investigators exercised professional judgment in determining what leads to pursue, what questions to ask, and what information to gather. *Id.* ¶ 7. Centanni located and interviewed potential witnesses. Id. ¶ 5. Centanni also selected, gathered, compiled, analyzed, and evaluated materials obtained from publicly available sources such as media accounts and on-line databases regarding possible witnesses, all in the exercise of the investigators' professional

1125799-1

2

judgment. *Id.* ¶ 6. Centanni met regularly with LNA's lawyers to provide investigative results and receive further guidance. *Id.* ¶ 8. Centanni had no other clients for which it investigated these Katrina-related matters. *Id.* ¶ 9. Because Centanni carried out its investigation on behalf of LNA, Centanni's investigative files are within the control of LNA and its counsel. *Id.* ¶ 10.

After LNA disclosed Centanni's identity to plaintiffs in response to a written discovery request, plaintiffs served a deposition and document demand directly on Centanni. After negotiation between the parties, that document was withdrawn, but plaintiffs reissued an identical notice on April 30, 2008.

Plaintiffs' notice does not merely seek information sufficient to identify potential witnesses so that plaintiffs can contact the witnesses to investigate the facts for themselves – information that, in fact, LNA has already provided to the plaintiffs. Rather, the notice seeks to take for plaintiffs' own use the ***results*** of Centanni's investigation by requiring the firm to testify or produce everything that it has learned from or about these potential witnesses during the course of the firm's investigation on behalf of LNA. Thus, the notice seeks to require Centanni to testify as to the contents of any interviews conducted with potential fact witnesses in the Lower Ninth Ward, and to turn over any "memorialization" of those interviews.[2] In addition, the notice demands that Centanni testify as to the instructions received from LNA's counsel in performing the investigation, and the decisions made by Centanni and counsel as to the "nature, methods, subject, scope and timing" of the investigation.[3] The notice seeks to require Centanni to testify about any "personal data gathered" as to any of the "putative class members," from whatever

---

[2] See Exhibit 1, Deposition Topic 5 and Document Request 2. The notice is framed to seek information regarding interviews of "named plaintiffs, persons represented by counsel, and putative class members in this suit." Exhibit 1, Depo Topic 5 and Document Request 2.

[3] See Exhibit 1, Deposition Topics 2 and 3.

1125799-1                                          3

source.[4]  Finally, the notice seeks testimony from the Rule 30(b)(6) witness about "any and all other relevant facts of which the deponent(s) have knowledge."[5]  However, as Mr. Centanni confirms in his declaration, the materials and information demanded in plaintiffs' notice were all "gathered to assist in the investigation and defense of claims against [LNA] relating to the Barge ING 4727 in anticipation of litigation or for trial."  Centanni Dec. ¶ 11.

## ARGUMENT

Plaintiffs' deposition and documents notice to Centanni is a substantively and procedurally improper effort to appropriate LNA's work product.[6]

### A.  Centanni's Investigation is Protected Work Product that Cannot be Invaded Either Through Document Demands or Through Depositions

The work product doctrine bars an opposing party from obtaining a party's work product either through document demands or through deposition.  Here, most if not or all of what plaintiffs seek is absolutely protected opinion work product, because it contains or would reveal Centanni's and LNA's counsel's "mental impressions, conclusions, opinions or legal theories."  And even if any of what plaintiffs seek were deemed ordinary work product, plaintiffs have independent access both to the witnesses (whose identities have been disclosed) and to the public sources that Centanni used in its investigation, and thus plaintiffs have no basis to invade *any* of Centanni's work product. *See Hickman v. Taylor*, 329 U.S. 495 (1947).

---

[4] See Exhibit 1, Deposition Topic 4.

[5] See Exhibit 1, Deposition Topic 6 (mis-numbered in original).

[6] LNA has standing to quash the notice because, *inter alia*, it requires the disclosure of LNA's work product. *See Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Ins. Co.*, 183 F.R.D. 627, 629 (N.D. Ill. 1999) (defendant had standing to move to quash subpoena based on claim that sought materials were defendant's work product); *see also Allocco Recycling Ltd. v. Doherty*, 220 F.R.D. 407, 411 (S.D.N.Y. 2004) (party had standing to quash subpoena on nonparty implicating party's personal right or privilege); *Transcor Inc. v. Furney Charters Inc.*, 212 F.R.D. 588, 590-91 (D. Kan. 2003) (same); *Stevenson v. Stanley Bostitch Inc.*, 201 F.R.D. 551, 555 n.3 (N.D. Ga. 2001) (same).

> **1.**   ***The Work Product Doctrine Prohibits Discovery of Centanni's Witness Interviews Either By Deposition or by Document Production (Deposition Topic 5 and Record Request 2).***

As this Court has already ruled, Centanni's notes of its witness interviews are highly-protected protected opinion work product that plaintiffs are not entitled to obtain. Doc. 13149 at 17-18. Specifically, the Court held that (1) the work product doctrine applies to documents created by investigators working for attorneys, provided the documents were created in anticipation of litigation" (*id.* at 17); (2) that the Court "must protect against disclosure of mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" (*id.*); and (3) that "[e]xamples of opinion work protect include notes and memoranda created by an attorney or his agent, regarding witness interviews" as well as "reports that contain summaries of witness interviews" (*id.* at 18).

Plaintiffs cannot get around this absolute work product protection by taking Centanni's deposition, because work product protection applies regardless of the method of inquiry – written discovery or deposition. In *Hickman v. Taylor* itself, the plaintiff sought to obtain both a copy of a written memorandum *and* the attorney's recollections of facts stated in the witness interviews. 329 U.S. at 512. The lower court had ordered the party's attorney to respond to interrogatories calling on him to "disclose any fact concerning this case" learned through the attorney's witness interviews. 329 U.S. at 499, 500. The Supreme Court protected from discovery both the attorney's memoranda and his "personal recollections" about what the witnesses had said. *Id.* at 510, 52-13. Thus an investigator's witness interviews are protected work product whether in written form or in the investigator's recollections about what was said.

Although Rule 26(b)(3) protects "documents and tangible things," *Hickman* and progeny continue to protect intangible work product, including attempts to take the deposition of a party's attorney or representative to obtain information that would, if written down, constitute protected

attorney work product. As the Fifth Circuit held in *Nguyen v. Excel Corp.*, 197 F.3d 200, 210-11 & n.34 (5th Cir. 1999), "[c]ourts have continued to apply *Hickman* to prevent circumventing the work product doctrine by attempting to elicit an attorney's thought processes through depositions or interrogatories."[7] Other courts have taken the same view. *See, e.g., U.S. v. One Tract of Real Property*, 95 F.3d 422, 428 n.10 (6th Cir. 1996); *In re Seagate Technology, LLC*, 497 F.3d 1360, 1376 (Fed. Cir. 2007). Indeed, if the protection on work product could be evaded simply by taking the author's deposition, the protection would be completely worthless. See *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 586 (N.D.N.Y. 1989) ("It is a necessary corollary that protected work product contained in documents and tangible things cannot be obtained through less tangible methods such as the deposition questioning of persons with knowledge of the protected information.").

In *Federal Trade Comm'n v. U.S. Grant Resources, LLC*, No. 04-596, 2004 U.S. Dist. LEXIS 11769 (E.D. La. June 25, 2004), for example, Judge Knowles quashed a Rule 30(b)(6) deposition notice that sought testimony as to the plaintiffs' investigation performed in anticipation of the litigation. He held that because the investigation was conducted by the party' attorneys or non-attorneys working under the direction of attorneys, a deposition would in effect constitute "an inappropriate attempt to depose opposing counsel and to delve into the theories, opinions and mental impressions" of the party's attorneys. *Id.* at *24-25. Judge Knowles also noted that, even if the subjects could be argued to involve facts rather than mental impressions

---

[7] In *Nguyen*, the Fifth Circuit upheld the trial court's decision to allow the deposition of an attorney to testify about the client's "good faith reliance on counsel" defense, but only after finding that the information sought could not be obtained in any other way. Even so, the court forbade inquiry into counsel's "work product and mental impressions." *Id.* at 210. Here, there is no basis for a deposition of Centanni other than to discover "work product and mental impressions." Thus, under *Nguyen*, a deposition would be precluded here.

1125799-1                                              6

and litigation strategy, those facts "are available elsewhere and by other means." *Id.* at *28-29. The same is true here.[8]

Indeed, as the Supreme Court has recognized, recollections of witness interviews taken by a party's attorney or other litigation agent necessarily involve mental impressions and opinion work product, not mere facts. Such interviews necessarily turn on and would review the questions that the interviewer selected to ask and the interviewer's present memory of the witness's responses, colored by those facts the investigator found important or worth noting. As such, those recollections are not subject to discovery. *See, e.g., Hickman*, 329 U.S. at 511 ("Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks."). Indeed, plaintiffs' demand for a deposition would require Centanni to study its witness interview notes and memoranda – the very documents that the Court has already ruled are absolutely-protected work product – and then to reveal the contents of those very same documents.

Although the Court has already held that Centanni's notes and impressions of witness interviews are strictly-protected opinion work product, plaintiffs would not be entitled to discovery even if they were deemed ordinary work product. As noted above, LNA has provided plaintiffs with the names and contact information of the witnesses, and thus plaintiffs have the ability to conduct their own investigation and cannot show that they have no other means for seeking any information the witnesses may have. The work product doctrine protects non-

---

[8] *See also, e.g., In re Linerboard Antitrust Litig.*, 237 F.R.D. 373 (E.D. Pa. 2006) (rejecting motion to compel Rule 30(b)(6) deposition as to investigation carried out in anticipation of litigation).

1125799-1

7

opinion work product specifically "to prevent one party exploiting the other party's efforts to prepare for litigation." *O'Connor v. Boeing N. Am., Inc.*, 216 F.R.D. 640, 642 (C.D. Cal. 2003).[9] Therefore, since plaintiffs have been given the witnesses' names and contact information, they would not be entitled to discovery concerning the witnesses' statements in any event.[10]

### 2. The Work Product Doctrine Protects LNA's Counsel's Instructions to Centanni and the Methodology of the Interviews (Deposition Topics 2 & 3).

Plaintiffs' deposition notice also identifies as deposition topics both (a) LNA's counsel's "instructions" to Centanni (Topic 2) and (b) "the nature, subject, scope and timing of attempted contacts and conducted interviews of named plaintiffs, persons represented by counsel, and/or putative class members" (Topic 3). As a threshold matter, these topics have no possible relevance "to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). Moreover, this line of inquiry would directly invade the core opinion work product of LNA's counsel and investigators: their theories about what information to seek out, the scope of the subjects to be covered in the interviews, which witnesses were most important to find, and the order in which to approach witnesses, amongst other strategies. See *Hickman*, 329 U.S. at 510 ("An attorney's private thoughts

---

[9] *See also United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999) ("The work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer [or lawyer's agents] ...." ); *Computer Assocs. Int'l, Inc. v. Quest Software, Inc.*, 2003 U.S. Dist. LEXIS 16378, at *5-6 (N.D. Ill. 2003) (noting that "defendants will have a fair opportunity to contact and interview these witnesses regarding any statements that they have made to [plaintiff]. We see no reason why plaintiff should be forced to assist defendants in their own witness interviews"); *In re Grand Jury Proceedings (Duffy)*, 473 F.2d 840, 842, 848-49 (8th Cir. 1973) (protecting as opinion work product attorney's "personal recollections, notes, and memoranda" of conversations with witnesses even though it was "the interviewees' assertions of fact rather than Duffy's legal conclusions or opinions which are at issue," noting that "[g]enerally, if a witness is available to the party seeking discovery of [that witness's] statement to opposing counsel, such discovery should not be allowed").

[10] The decision in *Mack v. GlobalSantaFe Drilling Co.*, No. 04-3461, 2006 WL 980746 (E.D. La. Apr. 11, 2006), involved very different circumstances. In *Mack*, the deposition was approved for purely factual information where the plaintiff had no other source for the factual information and the defendant had made an "attempt to conceal the identities of potential witnesses ...." *Id.* Here, by contrast, plaintiffs have been given the witnesses' identities and contact information and are receiving copies of the recorded transcripts, and thus have no genuine need for or right to the investigator's deposition, much less a deposition focused on LNA's opinion work product.

are inviolate."); *Nguyen*, 197 F.3d at 210 (attorney's "thought processes" are not subject to disclosure including through "depositions").

Other than providing a window into LNA's strategy, there is no need for plaintiffs to take discovery of the instructions given to and investigative methods used by LNA's investigators. Perhaps plaintiffs' goal is to pursue their strategic accusations of LRPC 4.2 and 4.3 violations against LNA's counsel and investigators. But the Court has already rejected those arguments, and plaintiffs' desire to do further fishing cannot justify the invasion into LNA's core opinion work product. Even where work product was not implicated, courts have been appropriately leery of allowing opposing counsel an overly affirmative role in discovery of ethical violations. See *Lefrak v. Arabian Am. Oil Co.*, 527 F.2d 1136 (2d Cir. 1975) (warning, in a disqualification-of-counsel case, of "a procedure which would cast counsel in the role of prosecutor"); *European Community v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297, 304, 310 (E.D.N.Y. 2001) (eschewing "extensive and time consuming satellite ethical inquiries" and declining to allow discovery "sought in support of a determination as to whether or not the various fee agreement provisions complained of violate the governing ethics laws"). Nor is it appropriate to preemptively punish LNA by invading its work product in the name of allowing plaintiffs to continue to trawl for evidence of the unsubstantiated ethical violations they have leveled at LNA's counsel. *Cf. Weider Sports Equip. Co. v. Fitness First, Inc.*, 912 F. Supp. 502, 511-12 (D. Utah 1996) (cautioning against a remedy that "works against the client who may have been wronged by the opposing party as far as the substantive claim is concerned").[11]

---

[11] Moreover, as the Court has observed, plaintiffs already have abundant information as to the methods that Centanni used in interviewing witnesses, given the transcripts that they already have and the others that they are to receive. Furthermore, plaintiffs can ask the witnesses what Centanni told them.

In sum, plaintiffs' demand to inquire into LNA's investigative methodology would impermissibly delve into LNA's opinion work product and bears no relationship to the issues to be litigated in this case. As such, these portions of the notice must be quashed.

### 3. *Centanni's Compilations of Information on Witnesses are Likewise Protected Work Product (Deposition Topic 4).*

In Deposition Topic 4, plaintiffs demand to question Centanni as to its compilations of data about named plaintiffs and putative class members. Those compilations are protected work product. Like all of the work performed by Centanni, they were created in anticipation of litigation. Further, the selection as to which materials to obtain, and which to place into the compilation is, protected opinion work product. *Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985) ("We believe that the selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."). Similarly, the selection of *who* Centanni chose to investigate is protected work product. *Schbley v. Gould*, 1994 U.S. Dist. LEXIS 4082, at *4 (D. Kan. Mar. 29, 1994).

As opinion work product, Centanni's compilations are entitled to the near-absolute protection given to that type of work product. But even if Centanni's compilations were only ordinary work product, plaintiffs could not make their showing of "substantial need" and of undue hardship in obtaining substantially equivalent materials by other means. Centanni's compilations are drawn from public records such as media accounts and on-line databases. [Centanni Dec. ¶ 6] Plaintiffs have equal access to these records. As noted above, "[t]he work-product privilege is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer [or lawyer's agents] . . . ." *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999). Accordingly, this aspect of the notice is entirely improper.

### 4. *There is No Basis for Discovery of Witness Identity from Centanni (Deposition Topic 1 and Record Request 1)*

As stated above, LNA has provided the identities and contact information for all of the Lower Ninth Ward residents interviewed by Centanni. As such, plaintiffs have no need to require Centanni to submit to a deposition about, or for Centanni to disclose "all documents" that contain, these witnesses' identities or contact information, as plaintiffs demand in Deposition Topic 1 and Record Request 1. Disclosure of this information through written discovery, as has been done, is less burdensome and more convenient than either deposition or document production. See Rule 26(b)(2)(C)(i). Moreover, having learned the witnesses' names, plaintiffs are not entitled to inquire further, because any further information constitutes protected work product.[12]

### 5. *There Is No Basis for a Rule 30(b)(6) Deposition on "Any and All Relevant Facts" (Deposition Topic 6, mis-numbered in the notice as Topic 4)*

Deposition Topic 6, which purports to require Centanni to designate a witness to testify as to "any and all other relevant facts of which the deponent has knowledge," is plainly improper under Rule 30(b)(6), which requires that the subject of the notice be described with "reasonable particularity." Deposition Topic 6 fails that requirement – it is as vague and general as English can be written. Indeed, this Court granted a protective order against Rule 30(b)(6) depositions of Ingram and LNA in response to an identically-stated notice.[13] Further, because Centanni's work has exclusively been to prepare for litigation, a deposition on such an amorphously-phrased topic necessarily would delve into matters constituting protected attorney work product.

---

[12] The notice includes identities of putative class members for whom contact was "attempted." This is a pure fishing expedition. By definition, if contact was only "attempted" then no facts were learned from such individuals (nor, indeed, would their status as putative class members have been confirmed). Having supplied a list of those persons with whom contact was made, LNA cannot be subjected to a deposition of its investigator directed at finding out the names of people LNA was unsuccessful in reaching.

[13] See Rec. Doc. 317 in No. 05-4419 (motion granted as to Topic 45).; Rec. Doc. 278-3 in No. 05-4419, at 7 (Rule 30(b)(6) deposition notice calling for "any and all other relevant factual matters of which the deponent(s) have knowledge").

### B. The Notice Must Also Be Quashed as a Procedurally Improper Effort to Obtain Discovery from LNA.

Plaintiffs' document demand to Centanni must also be quashed for the separate reason that it constitutes an improper attempt to circumvent the discovery deadlines in this case – specifically, to obtain written discovery from LNA even though the deadline for written discovery to parties passed on October 12, 2007. The notice to Centanni in fact seeks documents in the custody and control of LNA, which retained Centanni and which controls the documents. It is well settled that discovery of materials belonging to a party cannot be obtained through a subpoena addressed to the party's agent. *See In re Pabst Licensing GmbH Patent Litig.*, No. CIV A. 99-MD-1298, 2001 U.S. Dist. LEXIS 10012, at *60-61 (E.D. La. July 12, 2001) (Wilkinson, J.) (quashing third-party subpoena directed at party's attorney which sought documents within the party's custody or control); *Alper v. United States*, 190 F.R.D. 281, 283 (D. Mass. 2000) (quashing third-party subpoena of defendant's expert on same grounds).

Plaintiffs' document request could not properly be served on LNA. Not only has the time for Rule 34 requests passed, but Case Management Order #5 specifically provides that "Parties are prohibited from serving subpoenas for document production or Rule 30(b)(5) requests for production on other parties to this litigation." *See* CMO #5 ¶ (V)(B)(1); Rec. Doc. 7724 at 9. For this additional reason, plaintiffs' notice should be quashed.[14]

### CONCLUSION

Because all deposition topics noticed by plaintiffs have either been resolved through LNA's provision of its list of witnesses interviewed or impermissibly seek protected work

---

[14] Indeed, plaintiffs' implicit recognition that their notice to Centanni is really a notice to LNA is confirmed by the fact that plaintiffs did not comply with the requirements under Local Rule 45.1 for serving deposition notices on non-parties.

1125799-1                                    12

product, and because the notice is also procedurally improper, the notice to Centanni should be quashed.

Respectfully submitted,

/s/ Derek A. Walker
Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Charles P. Blanchard (#18798)
John L. Robert, III (#29400)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com
Blanchard@chaffe.com
Robert@chaffe.com

John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone: (504) 598-2715

*Attorneys for Lafarge North America Inc.*

## Certificate of Service

I hereby certify that I have on this 27th day of May, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ Derek A. Walker
