UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K"(2) |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State*, C.A. No. 07-5528 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |


**POST-HEARING REPLY MEMORANDUM IN SUPPORT OF MOTION OF
STATE FARM FIRE AND CASUALTY COMPANY AND CERTAIN OTHER
INSURER DEFENDANTS TO DISQUALIFY PLAINTIFF'S PRIVATE COUNSEL**

# TABLE OF CONTENTS

I.  COUNSEL SHOULD BE DISQUALIFIED BASED ON THEIR CONFLICTS ............. 1

    A.  Counsel's Disclosures Are Incomplete and Fail to Address All Conflicts............. 1

    B.  All Counsel Are Impacted by Conflicts of Interest................................................. 2

    C.  Other Lawsuits Create Conflicts Whether the State Participates or Not................ 3

    D.  That No Classes Have Been Certified Does Not Permit Ignoring Putative
        Class Members' Interests...................................................................................... 3

    E.  The Creation of Sub-classes Will Not Resolve Any of Counsel's Conflicts.......... 5

    F.  The Liaison Counsel Role Only Reinforces the Conflicts.................................... 6

II.  COUNSEL'S ENGAGEMENT VIOLATES STATE LAW AND THE STATE
     CONSTITUTION ....................................................................................................... 7

    A.  The Former Attorney General Did Not Comply with LSA-R.S. 49:258 ............... 7

    B.  The Constitution Does Not Grant the Attorney General the Power to
        Retain Private Counsel, Irrespective of the Compensation Arrangements ........... 8

    C.  Disqualification Is Appropriate.......................................................................... 10

III.  CONCLUSION.......................................................................................................... 10

i

# TABLE OF AUTHORITIES

<u>**CASES**</u>**:**

*Board of Commissioners of Orleans Levee District v. Department of Natural Resources*, 496 So. 2d 281 (La. 1986) ............................................................................................... 8

*Flying J Inc. v. TA Operating Corp.*, No. 06-30, 2008 WL 648545 (D. Utah March 10, 2008)................................................................................................................................... 1

*Garrett v. Metropolitan Life Insurance Co.*, No. 95-2406, 1996 WL 325725 (S.D.N.Y. June 12, 1996)................................................................................................................... 4

*Green v. Louisiana Underwriters Insurance Co.*, 571 So. 2d 610 (La. 1990) ............................ 7

*Hammond v. City of Junction City, Kan.*, No. 00-2146, 2002 WL 169370 (D. Kan. Jan. 23, 2002)............................................................................................................................. 4

*Huston v. Imperial Credit Commercial Mortgage Investment Corp.*, 179 F. Supp. 2d 1157 (C.D. Cal. 2001) ....................................................................................................... 5

*In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1239 (N.D. Cal. 2000) ......... 4

*Kay Co., LLC v. Equitable Production Co.*, 246 F.R.D. 260 (S.D. W. Va. 2007)......................... 4

*Meredith v. Ieyoub*, 96-1110 (La. 9/9/97); 700 So. 2d 478 .................................................... 8, 9

*Resnick v. America Dental Association*, 95 F.R.D. 372 (N.D. Ill. 1982) ...................................... 4

*State ex rel. Marr v. Bezou*, 20 So. 892 (La. 1896)................................................................... 9

*Taylor v. Allen*, 91 So. 635 (La. 1922) ...................................................................................... 8

*Unified Sewerage Agency of Washington County, Oregon v. Jelco, Inc.*, 646 F.2d 1339 (9th Cir. 1981)................................................................................................................... 1

<u>**STATUTES, REGULATIONS & RULES**</u>**:**

La. Const. art. IV § 8...................................................................................................8-9

LA Rev. Stat. § 49:258 .........................................................................................7, 8, 9, 10

Model Rules of Prof'l Conduct R. 1.7...................................................................................... 1

Model Rules of Prof'l Conduct R. 1.7(a)(1) ........................................................................... 4

928597v.1

Model Rules of Prof'l Conduct R. 1.7(a)(2) ................................................................. 4

Model Rules of Prof'l Conduct R. 1.7 cmt. 25 ......................................................... 4, 5

Model Rules of Prof'l Conduct R. 1.9, cmt. 3 ............................................................ 1

Model Rules of Prof'l Conduct R. 4.2 ....................................................................... 4, 7

Model Rules of Prof'l Conduct R. 7.3 ....................................................................... 4, 7

LA R. Prof'l Conduct 1.9(a) ...................................................................................... 1

## OTHER AUTHORITIES:

Restatement (Third) of the Law Governing Lawyers § 99 (2001) ................................. 4

Restatement (Third) of the Law Governing Lawyers § 132 cmt. c (2000) ................................... 1

21 Frank L. Maraist et al., La. Civ. Law Treatise § 8.16(B) (2008) ............................. 5

ABA Formal Opinion No. 07-445 (2007) ................................................................... 4

928597v.1

State Farm Fire and Casualty Company and the other moving insurers (*see* Docs. 10937 and 10304) ("Defendants") submit this supplemental reply in support of their motion to disqualify the State's private law firms ("Counsel").  (*See* 5/1/08 Tr. at 63-64; Doc. 12998.)

## I.      COUNSEL SHOULD BE DISQUALIFIED BASED ON THEIR CONFLICTS

### A.      Counsel's Disclosures Are Incomplete and Fail to Address All Conflicts

Counsel discuss only clients with *currently* pending matters.  (Doc. 13252 at 2-6.[1])  As previously discussed (Doc. 13253 at 5-6), because this case is a substantially related matter in which the State's interests are materially adverse to Road Home participants' interests, Counsel also must produce waivers from *former* clients who sought or received Road Home grants.  La. R. Prof'l Conduct 1.9(a); ABA Model Rule 1.9, cmt. 3.  Counsel do not identify any former clients or claim any waivers from them, but instead continue to ignore this issue. (Doc. 13252 at 2-6.)  Even if conflicts with former clients could be disregarded, Counsel cannot convert current clients into former clients by unilaterally dropping them like "hot potatoes" when a conflict impedes a preferred representation.[2]  Accordingly, clients dropped in this fashion are treated as current clients under Rule 1.7 for conflicts purposes.  The one firm that has admitted terminating clients in an attempt to cure conflicts (Ranier, Gayle & Elliot, LLC) has failed to produce (or even allege) any waivers from those clients.  Counsel also fail to identify any conflicts waiver from the State,[3] and the State's post-hearing brief (its only brief on this motion) does not address conflicts, much less claim a waiver was provided.  (*See* Doc. 13250.)

---

[1] Six of the firms filed this brief; it does not appear that the Murray Law Firm responded to the Court's inquiries.

[2] *See* Doc. 13253 at 4-5; *see also Unified Sewerage Agency of Wash. County, Or. v. Jelco, Inc.*, 646 F.2d 1339, 1345 n.4 (9th Cir. 1981); *Flying J Inc. v. TA Operating Corp.*, No. 06-30, 2008 WL 648545, at *4 (D. Utah March 10, 2008); Restatement (Third) of the Law Governing Lawyers § 132 cmt. c (2000).

[3] Only Gauthier, Houghtaling & Williams has ever represented that it obtained an informed waiver from the State (*see* Doc. 12306 at 7, Exh. 3 ¶5), but that firm has now withdrawn from this case.

### B.      All Counsel Are Impacted by Conflicts of Interest

Five of the seven firms acknowledge involvement in individual cases and/or putative class actions on behalf of insureds who are Road Home participants.[4]  (Doc. 13252 at 3-6.)  A sixth firm (the Dudenhefer Law Firm) claims not to be involved in such litigation (Doc. 13252 at 2), but Mr. Dudenhefer has appeared before the Court and argued on behalf of *all* insureds in these consolidated proceedings.  (*See* Exh. 7[5]; Doc. 8890 (arguing against entry of final judgment in *Vanderbrook*).)  Moreover, one firm (Fayard & Honeycutt) admits that it continues to represent individual insureds who are Road Home participants, and another (Ranier, Gayle & Elliot, LLC) states that it has terminated clients, but as discussed above, such termination does not cure its conflicts.  No firm disclaims having ever previously represented any affected homeowners and no firm has produced waivers from any former clients.

Even if one of Counsel (Mr. Aucoin) were shown not to be involved in other current or former representations of Road Home Program participants, he would still be subject to disqualification.  First, he seeks to represent a putative class of Road Home participants in this case.  Second, the conflicts of the remaining Counsel may be imputed to him under some circumstances.  The parties agree that the conflicts of disqualified co-counsel may be imputed where, *inter alia*, co-counsel has been privy to confidential information.  (*See* Doc. 13252 at 7 n.8; Doc. 13253 at 11-12.)  Although Counsel would best know the extent to which confidential information has been shared, they do not disclaim any such sharing, instead narrowly arguing that "there has been no allegation or evidence presented" of such sharing among Counsel.  In any

---

[4] Although the Murray Law Firm does not appear to have responded to the Court's inquiries, it has never disputed being counsel for plaintiffs in *Turk v. Louisiana Citizens Property Ins. Corp.*, No. 6:06-cv-00144-RTH-CMH (W.D. La.), a putative class action.  (*See* Doc. 12310.)

[5] Exhibit citations refer to exhibits submitted by Defendants with their prior briefing on this motion.  (Docs. 10937 (Exhibits 1-22), 12599 (Exhibits 23-25), 13253 (Exhibits 26-27).)

event, sharing of confidences is only one of the factors considered by the courts (*see* Doc. 13253 at 11-12), and Counsel do not address the implications of the engagement letters stating that other firms are to operate under the direction of Mssrs. Fayard and McKernan.  (*See* Exh. 3.)

      **C.**    **Other Lawsuits Create Conflicts Whether the State Participates or Not**

Counsel contend that other homeowner cases create no conflicts unless the State becomes involved.  (*See* Doc. 13252 at 11-13.)  However, the conflicting interests of the State and homeowners are not limited to a single action, but are implicated throughout this and other insurance litigation.  By representing the State, Counsel necessarily urge the enforceability of the Subrogation / Assignment Agreement, which is consistent with the State's interests, but adverse to their homeowner clients' interests.  Similarly, in pursuing their homeowner clients' claims, Counsel have a duty to identify and pursue theories that maximize the amount their clients will be able to keep and minimize the amount the Road Home Program will demand, all contrary to the State's interests.  It is doubtful that the scope limitations apparently obtained from certain homeowner clients (which Defendants have not seen) extract Counsel from all issues implicating State interests.  For example, there is no indication Counsel are excluded from settlement negotiations—in which insureds and the State have conflicting interests as to coverage allocations—and such a limitation would be impractical and prejudicial to clients in any event. In light of the nature of the issues and the duty of loyalty, Counsel cannot simply demur from taking "a position on any issue concerning the State."  (Doc. 13252 at 13.)

      **D.**    **That No Classes Have Been Certified Does Not Permit Ignoring Putative Class Members' Interests**

Initially, Counsel's argument is overly simplistic and disingenuous.  If they have no desire to represent the putative classes, they should not have filed the complaints.  On the other hand, if they do intend to seek to pursue the alleged class claims, then they should not urge

the Court to ignore putative class members' interests.  Moreover, Counsel's repeated mantra that, absent class certification, the putative class members' interests are irrelevant is not supported by the authorities.  As previously discussed (Doc. 13253 at 6-10), the application of ethics rules in the class action setting is not rigid and mechanical, but varies by rule and context.  For example, most of the authority Counsel cite relates to communications with represented persons and attorneys' solicitation of prospective clients.[6]  That absent class members would *not* be deemed clients of putative class counsel prior to certification makes sense in the context of those rules. Otherwise, defendants could be prevented under Rule 4.2 from investigating underlying facts and/or resolving claims on an individual basis, and the mere filing of a class action complaint would create a broad exception to provisions like Rule 7.3 governing solicitation and advertising.

However, that *individual* putative class members may not be viewed as having an attorney-client relationship with counsel prior to certification for purposes of those rules does not mean that their interests are irrelevant for conflicts purposes.  Counsel quote Comment 25 to ABA Model Rule 1.7, one authority Counsel cite actually relating to conflicts, but omit the portion making clear that it is focused on *unrelated* matters (*see* Doc. 13252 at 8.):[7]

---

[6] *See* ABA Formal Ethics Op. No. 07-445 (2007) (context of Model Rules 4.2 and 7.3); Restatement (Third) of the Law Governing Lawyers § 99 (2001) ("Represented Nonclient—The General Anti-Contact Rule"); *Kay Co., LLC v. Equitable Prod. Co.*, 246 F.R.D. 260, 264 (S.D. W. Va. 2007) (plaintiff's challenge of defendant's communications with putative class members); *Hammond v. City of Junction City, Kan.*, No. 00-2146, 2002 WL 169370, at *3-6 (D. Kan. Jan. 23, 2002) (plaintiffs' counsel's ex parte communications with employee of defendant which counsel sought to justify based on individual's status as potential class member); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245-46 (N.D. Cal. 2000) (attempt by lead plaintiff to ban other plaintiffs' counsel from communicating with putative class members); *Garrett v. Met. Life Ins. Co.*, No. 95-2406, 1996 WL 325725, at *6 (S.D.N.Y. June 12, 1996) (application of DR 7-104 relating to communications with represented parties); *Resnick v. Am. Dental Ass'n*, 95 F.R.D. 372, 377 n.6 (N.D. Ill. 1982) (same).

[7] Moreover, the comment's statement that "unnamed members of the class are ordinarily not considered to be clients of the lawyer" is explicitly limited to application of "paragraph (a)(1)" of Rule 1.7, which prohibits representations directly adverse to other clients (*e.g.*, a lawyer representing one current client in a lawsuit against another current client).  By its terms, it does not apply to a case such as this, involving a significant risk that one representation will be materially limited by an attorney's responsibilities to another client.  *See* La. R. Prof'l Conduct 1.7(a)(2).

4

> Thus, the lawyer does not typically need to get the consent of such a person [an unnamed class member] before representing a client suing the person in an *unrelated matter*.  Similarly, a lawyer seeking to represent an opponent in a class action does not typically need the consent of an unnamed member of the class whom the lawyer represents in an *unrelated matter*.

ABA Model R. Prof'l Conduct 1.7, cmt. 25 (emphasis added).  None of the authorities cited by Counsel[8] support ignoring putative class members' obvious interests that relate directly to the subject matter of the litigation, and as previously discussed (Doc. 13253 at 9-10), courts have specifically taken into account such interests in considering disqualification issues.

Moreover, Counsel's unsupported mechanical pre- and post-certification dichotomy would preclude the Court from addressing obvious conflicts issues, even though delaying those issues may disrupt the litigation and frustrate progress or proceedings until the issues are ultimately addressed.  Counsel's attempt to preclude consideration of their conflicts until certification briefing is refuted by case law,[9] and their argument that disqualification would be "unduly burdensome to the Plaintiffs in all of these litigations" (Doc. 13252 at 12) is disingenuous.  It is Counsel who have created this situation by taking on the State as a client when they were already deeply entrenched in insurance litigation on behalf of homeowners.

### E.     The Creation of Sub-classes Will Not Resolve Any of Counsel's Conflicts

Counsel continue to suggest that sub-classes could alleviate their conflicts, but by representing the State, Counsel have created a conflict with the *entire* proposed class in this case

---

[8] The only other authority cited by Counsel that purports to address conflicts issues in the class action context is 21 Frank L. Maraist, *et al.*, La. Civ. Law Treatise § 8.16 (2008), subsection (B) of which briefly acknowledges the "somewhat problematic" nature of attempts to rigidly apply the normal ethics rules to class action situations (*e.g.*, the impracticalities of running a conflicts check for the entire class) and recites quotes from various other authorities addressed to a variety of different contexts.  This is not inconsistent with Defendants' position that the ethics rules relating to conflicts should not be considered and applied rigidly and mechanically in this case, but in light of the circumstances of the litigation, the policies underlying the rules, and the need for orderly litigation of the matter.

[9] *See, e.g., Huston v. Imperial Credit Commercial Mortgage Invest. Corp.*, 179 F. Supp. 2d 1157, 1162-63, 1181 (C.D. Cal. 2001) (ordering defendants to file separate disqualification motions instead of litigating conflicts issue in context of certification briefing).

and Road Home participants in their other cases. While sub-classing may sometimes be used to address conflicts *within* a class, it cannot eliminate conflicts between the class and *Counsel*. Counsel apparently have in mind ignoring obvious conflicts for the present and later proposing a sub-class consisting of the entire putative class, but that amounts to an acknowledgment of the conflicts between the State and insureds in this and other cases. Counsel's contemplated procedure turns logic on its head and would frustrate the orderly progress of the litigation.

**F.    The Liaison Counsel Role Only Reinforces the Conflicts**

Counsel seek to minimize the impact of Mr. Fayard's role as PSLC-Insurance Liaison Counsel. (*See* Doc. 13252 at 7, 14.) Initially, even if such role was irrelevant, he still faces conflicts arising from being counsel in multiple putative class actions and individual actions. His Liaison Counsel role is relevant, however, and reinforces the conclusion that he has created a conflict by taking the State on as a client to pursue its claims under Subrogation / Assignment Agreements with insureds, under which the State seeks some or all of the insurance benefits claimed by the insureds. The role of liaison counsel varies from case to case, ranging from a purely administrative position not requiring an attorney to a more leading role involving advancement of positions on behalf of plaintiffs as a whole. The CMO here describes the position as one of "leadership" that includes making decisions, conducting conferences, attending hearings, and the undertaking of tasks on behalf of insurance plaintiffs, albeit with appropriate consultation. (Doc. 3299 at § I(C)(1)(a) & (C)(4).) Further, he and other Counsel are on the Insurance PSLC, which was granted the "authority to manage its respective subgroup of [the] consolidated litigation," approve and direct work performed on behalf of plaintiffs, and initiate, coordinate, and file motions, discovery, and other pretrial matters. (*Id.* at § I(C)(2), (C)(2)(c), & (C)(5).) Pursuit of State interests adverse to insureds is plainly inconsistent with that role.

## II.   COUNSEL'S ENGAGEMENT VIOLATES STATE LAW AND THE STATE CONSTITUTION

### A.   The Former Attorney General Did Not Comply with LSA-R.S. 49:258

At argument, Counsel articulated a new-found position that 49:258's requirement that any private counsel appointment be made "with the concurrence of the Commissioner of Administration" only requires the Commissioner's participation in preparing minimum qualifications and appointment procedures.[10]  However, such a strained interpretation is belied by the statute's plain language, is inconsistent with the case law, is undermined by the minimum qualifications themselves, and, in any event, would not cure the claimed constitutional infirmity.

As previously discussed (Doc. 13253 at 16-18), (1) a plain reading of 49:258 mandates the Commissioner's concurrence to each appointment; (2) reading the directive that the Commissioner "shall participate in the preparation of the minimum qualifications and the appointments procedure" as providing the exclusive concurrence mechanism would render the operative portion of 49:258 superfluous; (3) *Green v. Louisiana Underwriters Ins. Co.*, 571 So. 2d 610, 613 (La. 1990), is premised on an understanding that case-specific concurrence is required; and (4) Counsel's contention that requiring concurrence to each appointment "would be inconsistent with the separation-of-powers doctrine" is both mistaken and unhelpful since Counsel's proposed interpretation would suffer from the same alleged problem.  In addition, the minimum qualifications themselves undermine Counsel's interpretation.  Qualification number 12 provides that "[t]he commissioner of administration may withdraw his concurrence of any attorney only for cause."  (Doc. 13252, Exh. 11.)  If the Commissioner was not called upon to concur in each appointment, then there would be nothing to withdraw as to a particular attorney.

---

[10] Even Counsel's view of the statute would require that they meet the minimum qualifications.  Notably, although they deny any conflicts, Counsel make no assertion that they actually meet all of the other minimum qualifications.

Further, the Attorney General's own brief states that "[i]n practice," the division of administration does indeed review each individual engagement of private legal counsel.  (*See* Doc. 12350 at 2.)  He claims review is limited to contracts that "necessitate[]" the expenditure of state funds, but such a limitation is not found in 49:258 and was rejected in *Meredith v. Ieyoub*, 96-1110, pp. 9-11 (La. 9/9/97); 700 So. 2d 478, 483 (holding state procurement laws had to be complied with despite contingent fee nature of arrangement).[11]

**B.**      **The Constitution Does Not Grant the Attorney General the Power to Retain Private Counsel, Irrespective of the Compensation Arrangements**

The Attorney General contends that inherent in his power under La. Const. art. IV § 8 to institute, prosecute, or intervene in civil proceedings is the power to hire private counsel (Doc. 13250 at 2-3), but the plain language of the constitution does not encompass this claimed "inherent" power.  His expansive reading of his constitutional powers is contrary to established law that all rights are reserved to the people (through the Legislature) unless *expressly* granted to another branch.  *See Bd. of Comm'rs of Orleans Levee Dist. v. Dept. of Natural Res.*, 496 So. 2d 281, 286 (La. 1986).  Indeed, the Legislature has granted the Attorney General the power to hire private counsel in LSA-R.S. 49:258, but subject to conditions stated there and elsewhere. Because the Legislature granted the Attorney General the right to retain private counsel, the conditions it imposed do not implicate the separation of powers doctrine.[12]

---

[11] As previously discussed, it is clear under *Meredith* that Counsel's contemplated payment from a common fund would be an unlawful diversion of state funds.  Moreover, Counsel's argument (contrary to the law applicable to common funds) that their fees for representing the State could somehow be paid only from the insureds' portion of the common fund merely underscores the conflicts between the State and the insureds.

[12] Counsel previously cited three cases to support the general proposition that the Attorney General has authority to procure the assistance of private counsel (Doc. 12293 at 24 n.76), but those cases do not hold that the Attorney General is *constitutionally* empowered to retain private counsel and, in any event, they all predate the Louisiana Constitution of 1974.  Indeed, one of those cases, *Taylor v. Allen*, acknowledged that laws passed by the Legislature could limit or prohibit the Attorney General's use of private counsel.  91 So. 635, 638 (La. 1922) ("[w]e are not referred to any law, and are not aware of any, that forbids the Attorney General" to associate with private counsel).

8

The Attorney General also cites to additional tobacco litigation materials (Doc. 13250 at 3-5), but they do not support the engagements here. The 14th Judicial District Court rejected two taxpayers' challenge to the compensation arrangements for private attorneys engaged by then Attorney General Ieyoub. (Doc. 13250, Attach. IV.) However, the rejection was based on procedural bars in light of the fact that the petition was not filed until after the litigation had been settled, attorney fees had been awarded through arbitration, and the judgment had become final, with no timely appeal. (*See id.* at 4-6.) The court expressly stated that it "will not have to determine whether <u>Meredith</u> applies to the tobacco settlement." (*Id.* at 4.) To the extent any part of the opinion suggests *Meredith* could be distinguished based on the tobacco litigation's "exceptional" nature (*see id.* at 4 (relying upon *Phillip Morris, Inc. v. Glendening*, 709 A.2d 1230 (Md. 1998)), such is dicta, the court itself acknowledged that those arguments had been "rejected in Louisiana in <u>Meredith,</u>" and, in any event, this case is not analogous to the tobacco litigation. Moreover, even if Counsel could be compensated by the Court, Defendants, and/or the putative class of homeowners without reducing the State's recovery, such an arrangement would violate the Ethics Code, as was found in the tobacco case. (*See* Exh. 22.).

The Attorney General also suggests that he should be permitted to unilaterally enlist private counsel because, if the plain language of 49:258 is followed, then the Commissioner might decide not to concur in a given case and the Attorney General would be blocked from proceeding. (Doc. 13250 at 4.) However, this is precisely the result allowed for

---

Today, 49:258 does precisely that, and *Meredith*, the Louisiana Supreme Court's most recent decision in this area, indicates that the 1974 constitution does not broadly empower the Attorney General to hire private counsel. 700 So. 2d at 482 ("We find nothing in Article IV, § 8, nor any other constitutional provision, which expressly grants the attorney general the power to hire and pay outside legal counsel on a contingency fee basis."). Moreover, even if this line of cases was relevant to the question of constitutional powers, the Supreme Court made clear that private counsel retained to assist a state attorney (there a district attorney) could have no authority or discretion, but must have a role limited to providing ministerial assistance to the state attorney. *State ex. rel. Marr v. Bezou*, 20 So. 892, 893 (La. 1896). Counsel here do not claim to have such a limited role.

by the statutory regime; that the Commissioner might exercise the statutory authority contemplated by 49:258 is not a reason to read that provision out of the Revised Statutes.

### C.     Disqualification Is Appropriate

Counsel previously argued that even if hired illegally, they should be disqualified only until the State completed the required steps to properly retain them.  (*See* Doc. 12293 at 29 n.94.)  Neither Counsel nor the State has intimated, however, that any such steps have been taken in the four months this motion has been pending, and Counsel now argue instead that Defendants' motion to disqualify should be denied outright because Defendants should have sought to enjoin them from representing the State (rather than to disqualify them) until such time as they could achieve compliance.  (*See* Doc. 13252 at 18.)  If an opportunity to achieve compliance were warranted, such opportunity could be permitted just as easily through a temporary disqualification order as through an injunction subject to dissolution upon satisfaction of a stated condition.  However, there is no indication that Counsel can or intend to actually comply with the Louisiana Constitution or state procurement law, and in any event, the ethical conflicts discussed earlier could not be cured by compliance with the State legal requirements.

## III.     CONCLUSION

For the reasons stated above and in prior briefing, the private law firms retained by the State should be disqualified.

Respectfully submitted,

*/s/ Wayne J. Lee*
Wayne J. Lee, 7916
  wlee@stonepigman.com
Stephen G. Bullock, 3648
  sbullock@stonepigman.com
Mary L. Dumestre, 18873
  mdumestre@stonepigman.com
Andrea L. Fannin, 26280
  afannin@stonepigman.com

10

928597v.1

Of
STONE PIGMAN WALTHER
   WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

        And

Charles L. Chassaignac IV, 20746
  cchassaignac@phjlaw.com
        Of
PORTEOUS, HAINKEL
   & JOHNSON, L.L.P.
343 Third Street, Suite 202
Baton Rouge, Louisiana  70801
Telephone:  (225)383-8900
Facsimile:  (225) 383-7900

*Attorneys for State Farm Fire and Casualty
Company and State Farm General
Insurance Company*

/s/ Maura Z. Pelleteri
Maura Z. Pelleteri, 8463
Amy S. Malish, 28992
        Of
KREBS, FARLEY & PELLETERI, L.L.C.
Texaco, Center, Suite 2500
400 Poydras Street
New Orleans, Louisiana  70130
Telephone:  (504) 299-3570
Facsimile:  (504) 299-3582

*Attorneys for Aegis Security Insurance
Company*

/s/ Howard B. Kaplan
Howard B. Kaplan, 14414
        Of
BERNARD CASSISA ELLIOTT & DAVIS
1615 Metairie Road
P.O. Box 55490
Metairie, Louisiana  70055-5490
Telephone:  (504) 834-2612

11

928597v.1

*Attorneys for Lafayette Insurance Company, United Fire and Casualty Company and United Fire and Indemnity Company*

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
              Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

*Attorneys for America First Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Mutual Insurance Company*

/s/ Judy Y. Barrasso
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
              Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

*Attorneys for Metlife, Inc., Economy Premier Assurance Company, Metropolitan Casualty Insurance Company, and Metropolitan Property & Casualty Insurance Company*

/s/ Seth A. Schmeeckle
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
              Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD

12

928597v.1

601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990

And

Christopher W. Martin,
Texas Bar No. 13057620
Martin R. Sadler,
Texas Bar No. 00788842
Of
MARTIN, DISIERE, JEFFERSON &
  WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101

*Attorneys for United Services Automobile Association, also separately named by plaintiffs as USAA, USAA Casualty Insurance Company and USAA General Indemnity Company*

/s/ Seth A. Schmeeckle
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990

And

Of Counsel:

Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois 60606
Telephone: (312) 876-8000

13

928597v.1

*Attorneys for The Hanover Insurance Company, The Hanover American Insurance Company, and Massachusetts Bay Insurance Company*

/s/ Deborah B. Rouen
Deborah B. Rouen, 2084
Chris A. D'Amour, 26252
        Of
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone:  (504) 581-3234
Facsimile:  (504) 566-0210

*Attorneys for Union National Fire Insurance Company*

/s/ Dominic J. Ovella
Dominic J. Ovella, 15030
Anne E. Medo, 24556
Sean P. Mount, 27584
Daniel M. Redmann, 30685
John Christopher Dippel, Jr., 30480
        Of
HAILEY, MCNAMARA, HALL,
  LARMANN & PAPALE, L.L.P.
One Galleria Boulevard, Suite 1400
P. O. Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500

*Attorneys for Fidelity and Deposit Company of Maryland, Empire Fire and Marine Insurance Company, Empire Indemnity Insurance Company, Centre Insurance Company, ZC Sterling Insurance Agency, Inc., and ZC Sterling Corporation*

14

928597v.1

*/s/ Judy Y. Barrasso*

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
    Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, LLC
LL&E Tower
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (5040 589-9701

*Attorneys for Allstate Insurance Company, Allstate Indemnity Company, Encompass Insurance Company, Encompass Insurance Company of America, and Encompass Property and Casualty Company*

*/s/ Seth A. Schmeeckle*

Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
    Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990

      And

Of Counsel:

Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
    Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois 60606
Telephone: (312) 876-8000

*Attorneys for Horace Mann Insurance Company, Teachers Insurance Company, and Horace Mann Property & Casualty Insurance Company*

15

928597v.1

*/s/ Alan J. Yacoubian*
Alan J. Yacoubian, 17213
Neal J. Favret, 24412
Rachel P. Catalanotto, 31095
Of
JOHNSON, JOHNSON, BARRIOS &
 YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone:  (504) 528-3001

*Attorneys for Auto Club Family Insurance*
*Company*


*/s/ Neil C. Abramson*
Neil C. Abramson, 21436
Nora B. Bilbro, 22955
Jacqueline M. Brettner, 30412
Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

And

Marshall M. Redmon, 18398
Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

*Attorneys for Homesite Insurance Company*

16

928597v.1

*/s/ Harry Rosenberg*
Harry Rosenberg, 11465
Jacqueline M. Brettner, 30412
      Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for Fidelity National Insurance Company and Fidelity National Property and Casualty Insurance Company*


*/s/ Marshall M. Redmon*
Marshall M. Redmon, 18398
      Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

      And

Amy R. Sabrin
      Of
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760

*Attorneys for Farmers Insurance Exchange, Foremost Insurance Company, Foremost Property and Casualty Company, and Foremost Signature Insurance Company*

17

928597v.1

*/s/ Neil C. Abramson*
Neil C. Abramson, 21436
Jacqueline M. Brettner, 30412
    Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for American Manufacturers Mutual Insurance Company, Kemper Casualty Insurance Company, Lumbermens Mutual Casualty Company, Merastar Insurance Company, Unitrin Preferred Insurance Company, Unitrin Auto and Home Insurance Company, Trinity Universal Insurance Company, and Trinity Universal Insurance Company of Kansas, Inc.*


*/s/ Harry Rosenberg*
Harry Rosenberg, 11465
Jay R. Sever, 23935
Jacqueline M. Brettner, 30412
    Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for Scottsdale Indemnity Company and Scottsdale Insurance Company*


*/s/ Ralph S. Hubbard*
Ralph S. Hubbard, III, 7040
Seth A. Schmeeckle, 27076
    Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

18

And

Stephen E. Goldman
Wystan M. Ackerman
        Of
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut  06103-3597
Telephone:  (860) 275-8200
Facsimile:  (860) 275-8299

*Attorneys for The Standard Fire Insurance Company, "St. Paul" (a non-existent entity), "St. Paul Travelers Insurance Company" (a non-existent entity), St. Paul Fire & Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, Travelers Home & Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Insurance Company (a non-existent entity), Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company, and The Automobile Insurance Company of Hartford, Connecticut*


*/s/ Christopher R. Pennison*
Jay M. Lonero, 20642
Christopher R. Pennison, 22584
Angie Arceneaux Akers, 26786
Of
LARZELERE  PICOU  WELLS  SIMPSON
LONERO, LLC
Suite 1100 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA  70002
Telephone:  (504) 834-6500
Fax:  (504) 834-6565
*ATTORNEYS FOR REPUBLIC FIRE AND CASUALTY    INSURANCE    COMPANY,*

19

*AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, AMERICAN NATIONAL GENERAL INSURANCE COMPANY, AND ANPAC LOUISIANA INSURANCE COMPANY*

## CERTIFICATE

I hereby certify that a copy of the foregoing Memorandum in Support of Motion of State Farm Fire and Casualty Company and Certain Other Insurer Defendants to Disqualify Plaintiff's Private Counsel has been served upon all counsel of record by electronic notice from the Court's CM/EC Filing System, this 29th day of May, 2008.

*/s/ Wayne J. Lee*                      

20

928597v.1