UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K"(2) |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State*, C.A. No. 07-5528 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPLY TO INSURERS' POST-HEARING BRIEF CONCERNING MOTION TO DISQUALIFY PLAINTIFF'S PRIVATE COUNSEL

Paul G. Aucoin, Attorney at Law; The Dudenhefer Law Firm, L.L.C.; Fayard & Honeycutt, A.P.C.; McKernan Law Firm; Ranier, Gayle and Elliot, L.L.C.; and Domengeaux Wright Roy & Edwards L.L.C., along with their individual counsel who have appeared in this case, all through their undersigned counsel, respectfully submit this reply to the post-hearing brief of State Farm Fire and Casualty Company and certain other insurer defendants (collectively the "Insurers") concerning their motion to disqualify the State's private counsel.

I. **The other putative class actions referenced by the Insurers do not give rise to a concurrent conflict.**

As stated in our post-hearing brief, the putative class actions referenced by the Insurers are in their early stages as the plaintiffs in those suits have not yet moved for certification. Further, the State is not a party to these suits. Finally, the State will not have a role in those cases unless there is a recovery by the insureds, which presupposes that a class is certified and a judgment or settlement is rendered in favor of the insureds. These are not the situations

requiring disqualification contemplated in the Fifth Circuit trilogy of *In re: Dresser, American Airlines,* and *FDIC.* In those cases, actual conflicts, such as suing a current client, abandoning the representation of a client to represent an opponent, or having counsel testify as a witness, were present. By comparison, the attenuated and hypothetical conflicts raised by the Insurers are insufficient to require disqualification under the controlling precedents.

## II.      This is not a "hot potato" situation.

The Insurers insinuate that counsel have dropped certain clients like a "hot potato" situation when they referred certain clients to other competent counsel. They have not. For ethics purposes, a "hot potato" situation only arises when an attorney seeks to represent one client against another client.[1] In order to avoid the Rule 1.7 concurrent conflict that would result in that situation, an attorney might attempt to withdraw from one representation, treat that client as a "former" client under Rule 1.9, and then pursue the other client's more attractive claim against the "former" client.

Here, counsel is not seeking to represent either the State or an individual insured against the other. Therefore, there is no concurrent conflict under Rule 1.7 that arises from these representations and the "hot potato" doctrine is inapplicable. Rather, the purpose of the referrals to other competent counsel was to avoid a possible future conflict. This is no different than limiting the scope of a representation to prevent a conflict from arising, and is not prohibited by the "hot potato" doctrine. In fact, it is clearly contemplated by Rule 1.2.[2] Therefore, the

---

[1] Restatement (Third) of the Law Governing Lawyers 132 cmt. c ("If a lawyer is approached by a prospective client seeking representation in a matter adverse to an existing client, the present-client conflict may not be transformed into a former-client conflict by the lawyer's withdrawal from the representation of the existing client.").

[2] The Insurers should be familiar with this principle, as it is the same principle that permits defense counsel to represent an insured, but excludes any issue relating to coverage from the scope of the representation.

Insurers' attempt to re-introduce referred clients into the Rule 1.7 conflicts analysis is without merit.[3]

**III.   The putative class actions referenced by the Insurers do not give rise to a conflict.**

Despite the ABA's recent Formal Opinion explaining the relationship between counsel and putative class members, the Insurers continue to insist that putative class members must be considered for conflicts purposes.  The Insurers attempt to distinguish this ABA Opinion by claiming it: (1) concerns only attorney solicitation, not conflicts, and (2) does not comport with the case law.  These contentions are unpersuasive and are merely an attempt to push the "adequacy of representation" issue to the forefront of this litigation, before the Plaintiff has even moved for class certification.[4]

*First*, ABA Formal Opinion No. 07-445 clearly applies to our situation because the basis for the opinion is the lack of any attorney-client relationship with a putative class.  Without such a relationship, there can be no concurrent conflict of interest under Rule 1.7.  The Insurers

---

[3] The Insurers also claim that the referral of individual insureds to other competent counsel implicates Rule 1.9 because the representation of the State and the individual insureds involve "the same or a substantially related matter."  They do not.  In *Walker v. State, Department of Trans. & Develop.*, the Louisiana Supreme Court explained that "two matters are 'substantially related' when they are so interrelated both in fact and substance that a reasonable person would not be able to disassociate the two." 817 So. 2d 57 62 (La. 2002).  Although both involve the recovery of insurance proceeds, the suit here is a class action brought on behalf of the State to recover Road Home payments, while the other cases are individual suits in which the State is not a party.  Therefore, a reasonable person can disassociate the two.  But even assuming the two suits here are "substantially related," the Insurers do not explain how counsel's representation of the State is "materially adverse" to the individual insureds when the State has not asserted a claim against an individual insured.  Without material adversity between the two representations, Rule 1.9 is inapplicable.

[4] Despite the Insurers' assertion, counsel do not claim that consideration of the adequacy of counsel must wait until after certification.  Rather, counsel contends that this issue will be resolved during the class certification process, which provides various mechanisms to resolve potentially adverse interests of various class members.  Moreover, the Insurers claim that subclasses are unavailable to resolve conflicts between the State and the putative class is completely without merit.  The issues raised by the Insurers would constitute a classic intraclass conflict as they concern whether the State can adequately represent the interests of the putative class.  This is exactly what the Court will consider when it determines whether the named class representative will fairly and adequately protect the interests of the class under Fed. R. Civ. P. 23(a)(4).

contend that the ABA Formal Opinion applies only to issues concerning Rule 4.2 and 7.3, which concern communications with represented parties and potential clients. But the fundamental premise of the opinion is that there is no attorney-client relationship between counsel and putative class members:

> As to persons who are potential members of a class if it is certified, however, no client-lawyer relationship has been established. A client-lawyer relationship with a potential member of the class does not begin until the class is certified and the time for opting out by a potential member of the class has expired.

ABA Formal Ethics Op. No. 07-445, at 3 (2007)(attached hereto as Ex. 12). This conclusion has a direct effect on conflicts analysis, as there can be no Rule 1.7 (or Rule 1.9) conflict without clients. Thus, putative class members cannot be considered for conflicts purposes here because they are not counsel's clients.

*Second*, the cases cited by the Insurers do not compel a different result. Part of the reason for the ABA's issuance of this opinion was to resolve confusion regarding counsel's relationship with the putative class. With the exception of *Moreno*, the cases cited by the Insurers all pre-date the ABA's opinion and were part of the reason for the confusion. And in *Moreno*, the district court was bound by California law, which requires consideration of the putative class for conflicts purposes. No. 05-04432, 2007 WL 4287517, at *7 (N.D. Cal. Dec. 6, 2007). But these cases do not constitute the majority rule, and certainly do not constitute the law in Louisiana or the Fifth Circuit; thus they should not be followed.[5]

---

[5] Moreover, even if this Court were required to follow these cases, the circumstances of each are dissimilar to the instant case. In *Palumbo* and *Huston*, the plaintiffs had already moved for class certification. *Palumbo v. Telecommunications, Inc.,* 157 F.R.D. 129, 130 (D.D.C. 1994); *Huston v. Imperial Credit Comm'l Mortgage Invest. Corp.,* 179 F. Supp. 2d 1157, 1162 (C.D. Cal. 2001). Therefore, the motion to disqualify was properly part of the class certification process. And in *Yates,* counsel was disqualified because he represented plaintiffs who would be seeking recovery from one of his current clients. *Yates v. Applied Performance Technologies, Inc.,* 209 F.R.D. 143, 149-50 (S.D. Ohio 2002). Unlike in our situation, this was a clear Rule 1.7 violation that could not be resolved through the class certification process. Finally, in *Moreno*, the court found that counsel representing objectors and

**IV.    The Insurers have not proven that co-counsel should be imputed with the conflicts of other firms.**

The Insurers next assert that any conflict of any one counsel should be imputed to all counsel because there is an inference that counsel is sharing information.[6]   But as to the imputation of conflicts to co-counsel, "a presumption of disclosure of confidences is inappropriate." *Brennan's Inc v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 174 (5th Cir. 1979). Therefore, the Insurers needed to prove that co-counsel learned confidences from disqualified counsel that were not intended to be disclosed.  *Id.*  Because the Insurers have not provided any evidence that any co-counsel learned such confidences, it cannot impute conflicts for any one firm to the remaining firms.  Accordingly, the Insurers must prove that each firm has a conflict in order to disqualify all of the firms representing the State in this suit.

**V.    The Insurers have failed to prove how any adverse interests between the State and homeowner insureds will be litigated by counsel in this case.**

Despite the voluminous briefing and argument surrounding this motion, the Insurers have not satisfied their burden of showing how a concurrent conflict will arise in this case.  The Insurers have spent considerable time alleging that the State and the individual insureds may have some adverse interests concerning: (1) the validity of the subrogation agreement, (2) the allocation of insurance proceeds into different categories, and (3) based on *Groby*, the effect of some fee-shifting provisions.  But the mere notation of potential adverse interests does not prove a disqualifying conflict unless there is evidence that counsel is required to litigate those adverse interests as part of their representation.  This, the Insurers have failed to do.

non-objectors to a proposed class action settlement should be disqualified because the firm "simultaneously represent[ed] two different sets of clients that actively have adverse interests." 2007 WL 4287517 at *6. Here, there is no such simultaneous representation as counsel is not representing the State against any insured or any insured against the State.

[6] This argument is critical to the Insurers' conflicts analysis, since several firms had no individual representations whatsoever.

For instance, the Insurers have never explained the specific arguments counsel must raise in challenging the validity of the Subrogation/Assignment Agreement other than to refer to one petition that was subsequently withdrawn. Despite this lack of detail, the Insurers assert that counsel cannot act as a zealous advocate for homeowner insureds unless they challenge the validity of this agreement. But if challenging the validity of the subrogation were required for a counsel to be a zealous advocate, then the Insurers' assertion raises questions as to whether any other counsel representing homeowners have been zealous advocates. Despite the numerous individual insurance settlements that have been reached for hurricane-related claims, there are no pending challenges to the validity of this agreement.[7]

Similarly, the Insurers claim that homeowner insureds and the State may have adverse interests relating to the categories to which insurance payments are allocated, without stating how that issue could arise in this litigation. As explained in our original opposition, this issue will be presented only if the Insurers raise it as a defense to their underpayment of coverage for structural damage, an assertion the Insurers have not yet made.

Finally, the Insurers attempt to conjure up further adverse interests through the newly-filed *Groby* lawsuit, which concerns the constitutionality of the fee-shifting provisions and appeal rights for challenges to Road Home grants. The Insurers contend that although the putative class in that case does "not directly challenge the validity of the Subrogation/Assignment Agreement," it somehow will be relevant in this suit. Again, without any specifics as to how such an issue will affect our litigation, the Insurers do not carry their burden of proving that counsel's representation of the State in this suit constitutes a concurrent

---

[7] The Insurers conveniently overlook an alternative and simpler explanation, *i.e.*, that such a challenge may be frivolous given the plain terms of the Agreement and that the same result may obtain as a matter of law under the principles of legal subrogation. La. Civil Code art. 1829.

conflict of interest. In sum, the Insurers have not proven any conflicts that currently exist or will necessarily arise during counsel's representation of the State in this suit. [8]

**VI.    The Insurers' reliance upon *Green v. La. Underwriters Ins. Co.* to assert non-compliance with La. Rev. Stat. 49:258 is misplaced.**

The Insurers rely upon in *Green v. La. Underwriters Ins. Co.*, 571 So. 2d 610 (La. 1990), to assert that the Louisiana Supreme Court has already determined the role of the Commissioner of Administration in the appointment of counsel under La. Rev. Stat. § 49:258. Such reliance is seriously misplaced. In *Green*, the issue before the Court was whether it was the Attorney General or the Commissioner of Insurance who had the right to appoint counsel for the Insurance Commissioner "when the Commissioner is acting in his capacity as liquidator, rehabilitator, or conservator of a financially troubled insurance company." *Id.* at 611. The interpretative question at issue here was never raised or analyzed by the Court in *Green*. At no point in its decision did the Court examine whether the Office of Risk Management (now the Commissioner of Administration[9]) properly concurred in the appointment of counsel. This was because: (1) there was nothing to indicate that the Attorney General ever appointed counsel in that case, and (2) the Court did not need to reach the issue as to whether risk management properly concurred with the Attorney General's appointment of counsel under § 49:258 once it determined that that statute did not apply.

---

[8] The last issue the Insurers raise concerning conflicts relates to their standing to seek disqualification. Counsel have never challenged the Insurers' standing to seek disqualification of their opponent's counsel. Rather, counsel contend only that the motive of an opponent seeking to disqualify counsel is less pure than the motives of others. Therefore, counsel suggest, with the support of case law, that the Insurers' motion should be met with more skepticism and thus subject to a more cautious review than if brought by someone not in an adversarial relationship with the counsel they seek to disqualify.

[9] As the Insurers explained in their Post-Hearing Brief, La. Rev. Stat. § 49:258 was revised in 1992 to shift responsibility under La. Rev. Stat. § 49:258 from the Office of Risk Management to the Commissioner of Administration. Insurers' Post-Hearing Brief, at 17 n. 9.

If anything, the discussion of the role of risk management in *Green* supports the conclusion that La. Rev. Stat. § 49:258 does not require the concurrence of the Commissioner of Administration in our case. In *Green*, the Court concluded that the statute was not clear and unambiguous, and went on to restrict the broad language of § 49:258 concerning the appointment of counsel. *Id.* at 613. In examining the role of risk management, the Court stated:

> Pursuant to La.R.S. 49:258, any appointment of private counsel by the attorney general must be made "with the concurrence of the director of the office of risk management". However, the office of risk management has no authority over and plays no role in the liquidation of failed insurance companies. Thus, a literal reading of the statute produces an anomalous and illogical situation wherein the office of risk management is required to concur in the appointment of private legal counsel to represent the Insurance Commissioner in liquidation or rehabilitation proceedings. We are convinced the legislature did not intend such a result.

*Id.* Therefore, in narrowing the language of the statute, the Court looked elsewhere to the authority of the office of risk management to determine whether it could participate in such appointments. The duties of the commissioner of administration, which evolve out its duties to manage insurance for the State,[10] concern only the management of tort claims made against the State.[11] Those duties do not extend to situations where the State is pursuing rather than

---

[10] The duties and responsibilities of the Commissioner of Administration and the office of risk management are listed under Title 39 – Public Finance under Chapter 16-A – Insurance. *See* La. Rev. Stat. § 39:1535. It is these insurance duties, the management of which could affect the public fisc, which give the Commissioner of Administration a role in the appointment of counsel. Where, as here, insurance is not implicated because the case concerns pursuing the State's interests, rather than defending against claims, the Commissioner of Administration lacks the authority to impinge upon the Attorney General's right to appoint counsel. In this sense, La. Rev. Stat. § 49:258 is no different than the other provisions that expressly implicate the compensation of counsel.

[11] La. Rev. Stat. § 39:1535(A) ("It is also the responsibility of the commissioner of administration through the office of risk management to manage all tort claims made against the state or any state agency whether or not covered by the Self-Insurance fund."); *id.* § 39:1535(C)("[T]he commissioner of administration is authorized to adjust and negotiate tort claims which are not covered by the Self-Insurance Fund and to compromise or settle such claims against the state or against state agencies as defined by R.S. 39:1527(1) in the manner provided for in R.S. 39:1535(B)(6)"). The office of risk management's duties and responsibilities are also limited to the defense of claims made against the State. *Id.* § 39:1535(B); *Green*, 571 So. 2d at 613 n. 3.

8

defending claims, as is the case here. Accordingly, to the extent this Court relies upon *Green*, it should be to conclude that the Commissioner of Administration cannot participate in the appointment of counsel in cases where the State is acting as a plaintiff, rather than as a defendant.[12]   Regardless, La. Rev. Stat. § 49:258 does not hinder the Attorney General's appointment of counsel in this case.

## VII.   There is no support for the Insurers' contention that the Attorney General lacks the constitutional power to appoint counsel.

The Insurers contend for the first time that the Attorney General does not have the constitutional authority to engage private counsel. No court has ever reached that conclusion, including *Meredith*. In that case, the Court noted the Attorney General's power to institute suit on behalf of the State gives that office broad powers, but concluded that La. Const. art. IV, sec. 8 does not give the Attorney General the "power to hire and pay outside legal counsel on a contingency fee basis" because of the financial component of that relationship. 700 So. 2d 478, 482 (La. 1997). To reach that conclusion would contradict the decisions of Louisiana courts over the past 150 years and vastly diminish the powers of that office. *See* Original Opposition, at 24 n.76. The Insurers' argument does not mandate any such result.

## VIII.   The Insurers' continuing reliance on the payment issue to seek disqualification is baseless.

As has been explained numerous times throughout the briefing and oral argument, because the State has not obligated itself to pay counsel, whether counsel can ultimately be paid is completely irrelevant to the Insurers' motion to disqualify—the only issue now before this

---

[12] Under this reading, the Attorney General would still have the right to appoint counsel in this case because, as the *Green* Court noted, the Attorney General has the right to represent the State and state agencies in cases involving the protection of a right or interest of the State pursuant to La. Const. art. 4, sec. 8. and La. Rev. Stat. § 49:257. *Green*, 571 So. 2d at 614 & n.7.

Court. Despite this, the Insurers continue to insist that counsel's contracts with the Attorney General are illegal because they perceive no legal means to compensate counsel. This is based on the mistaken presumption that the contracts require compensation. They do not. They merely allow counsel to be compensated as long as that payment is permitted by law.[13] At most then, the Insurers can claim that certain methods of payment are illegal. But this will have no effect on the validity of the contract. Moreover, we have, in an abundance of caution, noted for the Court several permissible means for compensation: (1) a common benefit fund, (2) settlement with the Insurers, (3) a *post-hoc* enactment of an attorney fee award by the Louisiana Legislature, or (4) later compliance with the professional service contracts statutes raised by the Insurers.[14]

---

[13] Ex. 3, Insurers' Memo in Support of Motion to Disqualify ("[T]he attorneys handling this case may receive attorney fees and costs permitted them by State or Federal law.").

[14]    The Governmental Ethics Code is not a hindrance to any such payment, as Insurers' interpretation of that provision is unduly narrow. For purposes of this motion, the Insurers assert that counsel can never receive attorneys' fees from third parties for work performed on behalf of the State. The Insurers even claim that they are forbidden under that provision to pay attorneys' fees directly to counsel in any settlement, although this interpretation curiously does not seem to extend to settlements for individual suits as in those cases insurers routinely make checks directly payable to the State, the insured, and their counsel.

The sole basis for the Insurers' narrow interpretation is a 2001 opinion by the Louisiana Board of Ethics and concerning attorneys' fees made to counsel in the tobacco litigation. This opinion was a "Consent Opinion for the purpose of amicably settling the dispute without the need for administrative and/or judicial action, thereby obviating the need to adjudicate the matter." Ex. 22, Insurers' Memo in Support of Motion to Disqualify, at 9 n.1. Thus, this opinion is no more binding than any other settlement that has not been adjudicated. Accordingly, even if the Court were required to reach this issue, which it is not, it could take a more reasonable approach than that advocated by the Insurers and read the statute to allow the direct payment of attorneys' fees to counsel by third parties with the State's express approval.

Moreover, a settlement can be constructed to comply with even the strictest interpretation of this provision. The State could negotiate a settlement including attorneys' fees to be paid by the Insurers directly to the State. The State could then, with the approval of the Legislature, pay counsel the negotiated amount of attorneys' fees. In that situation, there would be no payment of fees by a third party.

Respectfully submitted,

By:  __ /s/ Thomas P. Owen, Jr. _____

Richard C. Stanley, 8487
Thomas P. Owen, Jr., 28181
Melissa V. Beaugh, 28250
        Of
STANLEY, FLANAGAN &
REUTER, L.L.C
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile: (504) 524-0069

-and-

Basile J. Uddo, 10174
Attorney at Law
3445 North Causeway Boulevard
Suite 724
Metairie, Louisiana 70002
Telephone: (504) 834-1819
Facsimile: (504) 832-7208

Attorneys for Paul G. Aucoin,
Attorney at Law; The Dudenhefer
Law Firm, L.L.C., Fayard &
Honeycutt, A.P.C.; McKernan Law
Firm; Ranier, Gayle and Elliot,
L.L.C.; and Domengeaux Wright
Roy & Edwards L.L.C.

## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2008, I electronically filed the foregoing Post-Hearing Brief of Plaintiff's Counsel concerning State Farm Fire and Casualty Company and Certain Other Insurer Defendants to Disqualify Plaintiff's Private Counsel with the Clerk of Court using the CM/ECF system which will send a notice of filing to all counsel accepting electronic notice. I further certify that I mailed the foregoing document and notice of electronic filing filed by first-class mail to all counsel of record who are non-CM/ECF participants.

                                                        /s/ Thomas P. Owen, Jr.