UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge* | 05-5531 | * |
| *Mumford v. Ingram* | 05-5724 | * |
| *Lagarde v. Lafarge* | 06-5342 | * | JUDGE |
| *Perry v. Ingram* | 06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | * |
| *Parfait Family v. USA* | 07-3500 | * | MAG. JOSEPH C. WILKINSON, JR. |
| *Lafarge v. USA* | 07-5178 | * |
| | * | |

# BARGE PLAINTIFFS' APPEAL FROM THE MAY 14, 2008, ORDER OF THE MAGISTRATE JUDGE DENYING THEIR MOTION FOR PROTECTIVE ORDER AND DENYING THEIR MOTION FOR RECONSIDERATION OF THE ORDER DENYING DISCOVERY OF PHOTOGRAPHS TAKEN BY LAFARGE NORTH AMERICA, INC., IMMEDIATELY AFTER THE STORM

A.    **Denial of Barge Plaintiffs' Motion for Protective Order**

1.    **The Conduct of Which Plaintiffs Complain**

For purposes of this appeal, Barge Plaintiffs accept the Magistrate Judge's description of the

modus operandi of defendant Lafarge North America, Inc. ("LNA"), and the agent of its counsel,

Centanni Investigative Services, in the secret tape-recording of witnesses by at pp. 6-8 of the May 14,

2008, Order and Reasons on Motions:

> The following examples, drawn from the witness interviews attached to plaintiffs'
> motion for protective order, illustrate the dangers and problems associated with such secret
> tape-recordings that are touched upon in the cases cited in my previous order.  As a general
> practice, Lafarge's investigator who conducted most of the interviews identified himself to the
> witnesses only by name and by stating that he worked for an investigative agency. If pressed

by the witness for further identification, he would name the agency, which he sometimes vaguely characterized as "independent." Although asked to identify himself and given the opportunity to respond honestly, the investigator carefully refrained from ever stating that the agency had been retained by Lafarge, a defendant in several civil actions in this court whose interests were potentially adverse to the interviewees. While the investigator's statements were not literally false, they were evasive and misleading in what they omitted. As the law of fraud teaches, a material omission can be just as misleading as an affirmative misrepresentation. See, e.g., conversation between investigator Robert Garcia ("RG") and Ernest Edwards ("EE") (also known as "All Night Shorty") on December 19, 2005, Plaintiff's Exh. 24, Record Doc. No. 11765-26, at pp. 2-3 ("EE: . . . . Who you investigating for, though? Who are you working for? RG: I'm working for Centanni. We're an independent investigative agency. . . . And, uh, we don't work for the government or nothing like that."); conversation between Garcia and Michael Reed on December 7, 2005, Plaintiff's Exh. 30, Record Doc. No. 11765-32, at p. 10 (same); conversation between Garcia and Edwards on February 9, 2006, Plaintiff's Exh. 25, Record Doc. No. 11765-27, at pp. 9-10 (identifying Centanni Investigative Agency without any additional information); conversation between Garcia and Robert L. Green, Sr. on November 23, 2005, Plaintiff's Exh. 26, Record Doc. No. 11765-28, at pp. 2-3 (same).

One interviewee, "All Night Shorty," asked twice whether Garcia was taking down what he said and Garcia responded that he was writing it down. Plaintiff's Exh. 24, Record Doc. No. 11765-26, at pp. 15-16, 20. Again, while this may have been a true statement, it also presented an opportunity, which was not taken, to respond honestly and to tell the witness the full truth, that the conversation was being tape-recorded. The witness may well have consented to the recording, but we will never know.

"All Night Shorty" also asked Garcia, "Is we gonna hear any results of this conversation? Is we gonna get anybody to speak for us behind this? RG: Uh, I'm not sure. EE: Okay. RG: I'm just . . . I'm a private investigator and what we do is just collect the information." Plaintiff's Exh. 24, Record Doc. No. 11765-26, at p. 41 (emphasis added). Clearly, the witness wanted to know from Garcia if he and other flood victims were going to be helped by this conversation or, as plaintiffs put it in their memorandum in support of their motion for protective order, whether the interviewer was "on their side." Garcia's response was again evasive and misleading by omission of the material information, clearly being sought by the witness, that he and his agency were working for Lafarge, whose interests were potentially adverse to those of the flood victims.

As I previously stated in my order granting plaintiffs' motion to compel, the "'extremely mild remedy of discovery'" does not interfere with the rights of the parties or their counsel to interview witnesses, except when it is done secretly without the consent of the interviewee, in which case the tapes are discoverable. . . .

2.        **The Basis of This Appeal**

Barge plaintiffs appeal the decision of the Magistrate Judge denying their Motion for

Protective Order insofar as it found (a) inconsistently with another finding, that the investigative

agents of defense counsel did not breach an ethical duty to inform putative class members that they

were working for defense counsel representing a party adverse to their interests, (b) that defendant

LNA attempted to conceal the existence of these tapes when responding to discovery; (c) that LNA

should be entitled to use directly the fruits of the improperly obtained and recorded interviews in

confronting witnesses with their taped conversations; and (d) denied reimbursement of the expenses

of Sidney Williams for the resumption of his deposition.

a.        **The Investigative Agents of Defense Counsel Were Under an Ethical Duty to Inform Putative Class Members That They Were Working For Defense Counsel Representing a Party Adverse to Their Interests**

Louisiana Rule of Professional Conduct 5.3 placed nondelegable duties on counsel for Lafarge

North America, to ensure that any assistant employed by counsel conform to the same ethical

standards as counsel.[1]  There is no exception for private investigators.  For purposes of RPC 5.3,

Centanni's actions were the actions of defense counsel.  *Cf. In re Tolchinsky*, 740 So.2d 109 (La.

1999) (consensual disbarment approved for attorney who failed to supervise activities of former

employee, who acted unethically).  Louisiana RPC 8.4(a) also bars violations of the Rules of

Professional Conduct committed through the acts of another.  For purposes of RPC 8.4(a), Centanni's

actions were the actions of defense counsel.

It is clear from the transcripts that Lafarge's counsel through Centanni executed a careful

---

[1] Relevant provisions of the Louisiana Rules of Professional Conduct are contained in Barge Plaintiffs' Exhibit 38.

program, presumably designed by defense counsel, to attempt to mislead residents of the Lower Ninth Ward into believing that the investigator was neutral, or was even on their side, and to evade direct questions about their role.  This was exactly contrary to the requirements of RPC 4.3.  The Supreme Court of Louisiana has construed RPC 4.3 as requiring lawyers to identify themselves as lawyers. *Louisiana State Bar Ass'n v. Harrington*, 585 So.2d 514, 517 (La. 1990), stated: "In addition, Harrington did not carefully explain to James his role in the matter; he did not even identify himself by name or indicate that he is a lawyer until he had asked James several questions about the purchase of the home and the carpet. His actions are, therefore, in violation of Rule 4.3 as well."  Similarly, *First Nat. Bank of St. Bernard v. Assavedo*, 764 So.2d 162, 163 (La. App. 4th Cir. 2000), stated: "A lawyer shall assume that an unrepresented person does not understand the lawyer's role in a matter and the lawyer shall carefully explain to the unrepresented person the lawyer's role in the matter."

The Magistrate Judge relied on a 2004 change in the language of RPC 4.3, Order and Reasons on Motion at p. 15, but also found an ethical infringement of the rule.  The order and Reasons state at p. 11 that the discovery order "provides an adequate remedy for the only ethical infringement that plaintiffs have proved, i.e., the surreptitious tape recordings of putative class members by Lafarge's investigators without identifying themselves as working for an attorney."

The Opinion and Order was correct on p. 11.  In addition to applying the Louisiana RPC, the Court, like class counsel and class representatives, is under an independent fiduciary duty to members of a putative class, to ensure that they are not overreached.  The entire structure of Rule 23, Fed. R. Civ. P.—including Rule 23(d)(1)(B) allowing orders for the protection of class members and Rule 23(e) regarding settlements and voluntary dismissals—is imbued with that understanding.  *Cf. In re Warner Communications Securities Litigation*, 798 F.2d 35, 37 (2d Cir. 1986) ("n approving the

4

proposed settlement of a class action, a district court has the fiduciary responsibility of ensuring that the settlement is fair and not a product of collusion, and that the class members' interests were represented adequately."); *Moore v. Halliburton Co.*, 2004 WL 2092019 (N.D. Tex. Sept. 9, 2004) (No. 3:02-CV-1152-M) at p. *3 ("The Court must protect the interests of the absent class members who would be bound by a settlement in this matter. As such, the Court 'owes a fiduciary duty to the class to ensure that the interests of every member of the class are adequately represented.' *In re Quintus Securities Litigation*, 148 F. Supp. 2d 967, 970 (N.D.Cal.2001).")[2]

Rule 4.3 or its equivalents in other states are frequently construed as requiring counsel dealing with an unrepresented person of adverse interest to identify himself or herself as counsel for a client adverse to them, and sometimes to state that the person in question has no obligation to answer questions. *Norton v. Sperling Law Office, P.C.*, 437 F. Supp. 2d 398, 404 (D. Md. 2006), stated that "under the Pennsylvania Rules of Professional Conduct an attorney who contacts an unrepresented person must disclose her relationship with her client and explain that the client has interests contrary to that person. PA RULES OF PROF'L CONDUCT R. 4.3 & cmt 1.  It is highly doubtful that Evans would have discussed *anything* with a Lebowitz attorney had he made such a call and properly explained that he had been retained to sue her for hundreds of thousands of dollars."  (Emphasis in original.)  *Accord*, *Paulson v. Plainfield Trucking, Inc.*, 210 F.R.D. 654, 659 (D. Minn. 2002); *Brown v. St. Joseph County*, 148 F.R.D. 246, 254 (N.D. Ind. 1993); *In re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 556, 562, 35 Fed. R. Evid. Serv. 207 (N.D. Ga. 1992).

*Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147 (D. S.D. 2001), *aff'd*, 347 F.3d 693 (8th Cir. 2003), is similar to the case at bar.  The court held that Rule 4.3 applies

---

[2] A copy is attached.

to investigators employed by defense counsel who secretly tape-recorded conversations with plaintiff's employees.  It considered such employees to be of adverse interest, and held that there was a duty of disclosure: "The attorney or investigator shall: (1) fully disclose his or her representative capacity to the employee, (2) state the reason for seeking the interview as it concerns the attorney's client and the employer, and (3) inform the individual of his or her right to refuse to be interviewed." (Citation omitted.)[3]  Accord, *Cole v. Appalachian Power Co.*, 903 F. Supp. 975 (S.D. W.Va. 1995) (investigators).

Protective disclosures were particularly necessary here.  The program of interviews was targeted against putative class members to induce them to open up under misleading circumstances, without the warnings to which they were entitled, and to damage their own interests.  Many of the residents of the Lower Ninth Ward had limited education.  The 2000 Census reported educational attainments by Census tract in the Lower Ninth Ward of New Orleans, where Centanni was active.  In most of this area imore than a third of the population aged 25 and up lacked a high school degree.[4] The danger that a witness may be misled into trusting a lawyer or lawyer's investigator would be increased by lower educational levels in the area.

This Court can also take judicial notice that the survivors of the Lower Ninth Ward who lived through the flooding and its aftermath likely endured a trauma greater than that of the ordinary victim of a physical injury.  Yet even ordinary victims are assumed to need time to recover some equanimity

---

[3] *Weider Sports Equipment Co., Ltd. v. Fitness First, Inc.*, 912 F. Supp. 502, 511-12 (D. Utah 1996), held that the rule may not apply to private investigators or "testers" because the public is not likely to think them disinterested, or to trust them, compared to the trust and assumptions of disinterest the public accords to lawyers.  Here, however, it is reasonable to believe that the public thought lawyers or an official investigative agency had placed the types of signs Centanni posted.

[4] March 24, 2008, Affidavit of Richard T. Seymour, ¶ 9 at pp. 2-3, Barge Plaintiffs' Exhibit 21.

before the lawyers are allowed to approach them for even a non-hostile activity such as offering their

legal services.[5]  Here, many of the interviewees were still scattered far from their homes.

The American Bar Association's Center for Professional Responsibility publishes THOMAS D.

MORGAN, LAWYER LAW: COMPARING THE ABA MODEL RULES OF PROFESSIONAL CONDUCT WITH THE

ALI RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (ABA, 2005)::

> This Section states two general requirements. First, the lawyer must not mislead the
> unrepresented nonclient to that person's detriment concerning the identity and interests of the
> person whom the lawyer represents.  For example, <u>the lawyer may not falsely state or imply</u>
> that the lawyer represents no one, that the lawyer is disinterestedly protecting the interests of
> both the client and the unrepresented nonclient, or <u>that the nonclient will suffer no harm by</u>
> <u>speaking freely</u>.  Such a false statement could disarm the unrepresented nonclient and result in
> unwarranted advantage to the lawyer's client.  Second, <u>the lawyer is subject to a duty of</u>
> <u>disclosure when the lawyer knows or reasonably should know that the unrepresented nonclient</u>
> <u>misunderstands the lawyer's role in the matter and when failure to correct the</u>
> <u>misunderstanding would prejudice the nonclient or the nonclient's principal</u>.

*Id.* at 651 (emphases supplied).  It continued: "A lawyer dealing with a sophisticated business person

will have less need for caution than when dealing with an unsophisticated nonclient.  *Id.*

When these principles are applied to the members of the proposed class, who lived through the

flooding and its aftermath, it is clear that RPC 4.3 required full disclosure of adverse interests before

these persons of adverse interest were interviewed, and Rule 23 reinforced that duty.

Centanni also requested persons of adverse interest to turn over irreplaceable physical

evidence— photographs and videos of the breaking of the levee—without revealing that anything

obtained would be sequestered from anyone trying to represent their interests, with Lafarge North

America then claiming that work-product privilege applied to all aspects of the matter.  This presents

one of the worst possible scenarios of abuse in violation of RPC 4.3.

---

[5] *Cf.* Louisiana RPC 7.3(b)(iii)(C), barring lawyers' communications until more than thirty
days after an accident or disaster.

While Lafarge's counsel have represented that no physical evidence was turned over by these witnesses, two years ago they also formally denied obtaining statements from others. Their representations cannot reasonably be relied upon.

Lafarge admits that Centanni's contacts with witnesses in the Lower Ninth Ward were all either after the filing of this class action or in the immediate anticipation of such litigation, for the purpose of defending claims by persons in the targeted interview population. It adopted a procedure of interviewing everyone it could find, while rigorously blinding itself to the possibility of their representation. Their approach virtually guaranteed that they would wind up interviewing represented persons of adverse interest. Plaintiffs have shown six instances in which they did so, and others are possible. Lafarge and its counsel by design placed themselves in a position in which violations of RPC 4.2(a) were inevitable.

Louisiana RPC 4.2(a) is identical to ABA Model Rule 4.2: The ABA's Comment 8 states that the rule cannot be evaded by ignoring the obvious: "Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." Although the Louisiana Supreme Court has not adopted the comments to the ABA Model Rules, the Western District of Louisiana relied on this Comment in construing Louisiana RPC 4.2. *In re Frank*, 2006 WL 1133871 (W.D. La. April 25, 2006) (No. Misc. 06-04), at p. *2, rejected respondent's argument that he did not know his client's co-defendants were represented by counsel.[6]

Moreover, Lafarge's counsel's violation of RPC 4.3 facilitated their violation of RPC 4.2. By failing to disclose that the interviews were a project of counsel representing a client adverse to their interests, Lafarge's counsel minimized the likelihood that legally unsophisticated witnesses would

---

[6] A copy of *In re Frank* is attached as Plaintiffs' Exhibit 39 to this Memorandum.

think to mention that they already had counsel in the matter.  The duty of disclosure mandated by RPC 4.3 is part of the mechanism by which the policy of RPC 4.2 is protected.  By analogy, the Louisiana Supreme Court imposed discipline in *In re Debose-Parent*, 869 So.2d 80, 85 (La. 2004), relying in part on the fact that in the tape-recorded interview defense counsel failed to ask plaintiff whether her counsel had granted permission for the interview.  "The committee determined respondent desired to meet with Ms. Becnel in the absence of her attorney, noting respondent did not ask Ms. Becnel on the tape whether she had permission from her attorney to speak to respondent." *Id.* at 83-84.

Lafarge's counsel violated RPC 3.3(a)(1) by representing to the Court, in its filings on behalf of its Motion to Quash the subpoena directed to Centanni, that it would turn over the names and contact information of all interviewees by February 15, while intending to hide the information so as to ambush Sidney Williams in his interview.

Where ethical violations interfere with the administration of justice in a case, Federal courts have authority to enforce the State and national ethical rules.  *In re American Airlines, Inc.*, 972 F.2d 605, 611 (5th Cir. 1992), *cert. denied*, 507 U.S. 912 (1993), rejected a "hands off" approach to ethical violations and cited and reaffirmed an earlier decision stating: "We have squarely rejected this hands-off approach in which ethical rules 'guide' whether counsel's presence will 'taint' a proceeding, holding instead that a '[d]istrict [c]ourt is *obliged* to take measures against unethical conduct occurring in connection with any proceeding before it.'"  (Emphasis supplied by the court.)  The court adopted this strong position in the context of a motion for disqualification of counsel, relief which goes well beyond what is sought by the Motion.  Similarly, the court stated in *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 370 (5th Cir. 1998), *reh'g denied*, 163 F.3d

223 (5th Cir. 1998), *cert, denied*, 525 U.S. 1068 (1999), a case involving an attorney's breach of confidentiality to support her Title VII claim: "The obligations of this profession are not 'merely hortatory appeals to [one's] conscience,' but enforceable strictures of a lawyer's conduct."  Citing an earlier decision, the court stated: "'An ethical code is not a garment that lawyers may don and doff at pleasure.'"

        **b.**        <u>**LNA Improperly Concealed its Statements in Discovery**</u>

The Magistrate Judge clearly erred in rejecting Barge Plaintiffs' showing that LNA improperly concealed the witness interviews and witness statements it had obtained.

Exhibit 4 in support of the Motion for Protective Order consisted of LNA's September 18, 2006, Responses to Plaintiff's Second Set of Interrogatories 26 (and cross-referenced responses to Interrogatories 1, 2, and 3) and Responses to Requests for Production 11, 17, and 18 in C.A. No. 05-04419, Section C.  LNA's part of that action was subsequently transferred into this consolidated action.

Lafarge explicitly denied obtaining any statements from others, never relied on work-product privilege in making that answer, and never amended that answer.[7]  Accordingly, Rule 37 sanctions are appropriate.

---

[7] Barge Plaintiffs' Exhibit 4 to their Motion for Protective Order is attached hereto for ease of reference.

###### c.   LNA Should Not Be Allowed to Profit from its Discovery and Ethical Breaches

Disclosure has been held to be an adequate remedy for the occasional surreptitious taping of a witness with no interest in the outcome, but is not an adequate remedy for a targeted program directed against putative class members in need of the Court's protection.

Rule 37(c)(1)(C) authorizes relief under Rule 37(b)(2)(A)(ii), which includes "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."  This authorizes an Order barring defendants from making any direct use of the interviews.  Such relief is critical in the interests of justice.  The deterrent value of precluding Lafarge and the Barge entities from making any direct use of the transcripts or recordings or referring to them at depositions or at trial would be great, and Lafarge and the Barge entities would still be able to use them to prepare questions for depositions or trial.  The transcripts and recordings would still need to be disclosed to plaintiffs, so that the witness can be prepared properly and the deposition and trial can occur on a fair and even-handed basis.  This meets the standard of *City of Waco v. Bridges*, 710 F.2d 220, 225 (5th Cir. 1983), *cert. denied*, 465 U.S. 1066 (1984), for suppression of evidence in a civil case: "For the exclusionary rule to ever be applicable in an action of this nature, the deterrent benefit of the exclusion must outweigh the detriment to the public interest in providing fact finders with all relevant testimony."  (Citation omitted.)  Without preclusion of use, Lafarge would be rewarded for its actions and other litigants will see an incentive to act similarly.

Rule 37(c)(1)(A) also authorizes the Court to order that the travel expenses of Mr. Williams be reimbursed for having to return to complete his deposition if the deposition is to be resumed.  The Magistrate Judge is certainly correct that Barge counsel stopped the deposition in order to obtain a ruling.  That was the only course of action open to them in the circumstances, and is not disqualifying

11

of relief to the imposed-upon witness.  In a word, LNA sought to lie low in the weeds with the statement they had denied having, and then spring out on the witness.  It is to prevent such behavior that Rule 37's sanctions were drafted.

Rule 37(c)(1)(B), Fed. R. Civ. Pro., also authorizes informing the jury of Lafarge's conduct.

**B.      Denial of the Motion for Reconsideration as to Photographs Taken by LNA Immediately After the Hurricane**

Barge Plaintiffs appeal from so much of the ruling of the Magistrate Court as sustained LNA's work-product objections to the production of photographs and videos that LNA or agents of its counsel took during the period after Hurricane Katrina when LNA had access to the LNA facility, moorings, barge, and floodwall, and when plaintiffs, the residents of the Class Area, and their counsel had no such access.

The physical condition of the docks, mooring lines, LNA facility, floodwall and markings on land immediately after the storm are of obviously high relevance to liability.  Plaintiffs had never considered that expert testimony might be necessary to make such a showing, but are prepared to go ahead and make such a showing if given the opportunity.

The inability of plaintiffs and residents of the Class Area to enter the Lower Ninth Ward and inspect the LNA facility, moorings, floodwall and markings immediately after Hurricane Katrina had seemed so self-evident to Barge Plaintiffs that it seemed appropriate for judicial notice.  Plaintiffs had never considered that there might be a need to depose public officials or obtain their affidavits or those of class members to make a record of what was so self-evident to plaintiffs, but are that prepared to go ahead and make such a showing if given the opportunity.

Barge plaintiffs relied on prior rulings that work-product privilege did not apply to photographs, and that reliance was reasonable. *Southern Scrap Material Co. v. Fleming*, C.A. No.

12

01-2554, Section "M" (E.D. La. June 18, 2003)[8]; *cf. Kiln Underwriting v. Jesuit High School of New Orleans*, 2008 WL 108787 (E.D. La. Jan. 9, 2008) (No. CIV.A. 06-04350, CIV.A. 06-05060, CIV.A. 06-05057),[9] in which Magistrate Roby held that photos are not protected under the work product doctrine.  Even if work product were to apply, these photographs and videos are not opinion work product, and would be entitled to lesser protection.

The Magistrate Judge treated the matter as if there had been a trial of an issue on the merits, applied the standards of Rule 59 far out of the language of the rule, and thereby caused a preclusion of evidence elsewhere decried in the opinion.  What is at issue instead is whether there will be a fair trial on the merits with joint access to this exclusive source of information.

Plaintiffs request this Court to hold that work-product privilege does not apply to these materials, or that judicial notice of the need for these materials on liability issues and of the inability of the class to obtain photographs and videos at the time overcomes any work-product privilege that exists, or that plaintiffs be given an opportunity before the Magistrate Judge to make the showings the Magistrate Judge considers necessary, without being prejudiced by inappropriate Rule 59 standards.

C.      <u>Conclusion</u>

WHEREFORE, Barge Plaintiffs pray that the Court:

1.    Determine that the investigative agents of defense counsel were under an ethical duty to inform putative class members that they were working for defense counsel representing a party adverse to their interests;

2.    Determine that defendant LNA attempted to conceal the existence of these tapes when responding to discovery;

---

[8] A copy is attached.

3.   Bar LNA from using directly the fruits of the improperly obtained and recorded interviews in confronting witnesses with their taped conversations, although allowing counsel to use the taped conversations in preparing for depositions or trial testimony;

4.   Reimburse Sidney Williams for his expenses for the resumption of his deposition;

5.   Determine (a) that work-product privilege does not apply to LNA's or its counsel's or their agents' photographs and videotapes during the period after Hurricane Katrina when LNA had access to the LNA facility, moorings, barge, and floodwall, and when plaintiffs, the residents of the Class Area, and their counsel had no such access to take photographs or videotapes; or (b) that judicial notice should be taken of the need for these materials on liability issues and of the inability of the class to obtain photographs and videos at the time, and that judicial notice of these conditions overcomes any work-product privilege that exists; or (c) that plaintiffs be given an opportunity before the Magistrate Judge to make the showings the Magistrate Judge considers necessary, without being prejudiced by inappropriate Rule 59 standards.

Respectfully submitted,

/s/ Brian A. Gilbert
Brian A. Gilbert, Esq. (21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
        Telephone: (504) 885-7700
        Telephone: (504) 581-6180
        Facsimile: (504) 581-4336
        e-mail: bgilbert@briangilbertlaw.com

---

[9] A copy is attached.

/s/ Lawrence D. Wiedemann,
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
 Telephone: (504) 581-6180
 Facsimile: (504) 581-4336
 e-mail: lawrence@wiedemannlaw.com,
 karl@wiedemannlaw.com, karen@wiedemannlaw.com,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
Telephone: 504-834-0646
e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell: 202-549-1454
 Facsimile:  800-805-1065 and 202-828-4130
 e-mail: rick@rickseymourlaw.net,

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
Telephone: (212) 608-4400
Facsimile: (212) 227-5159
e-mail: lwilson@wgdnlaw1.com, ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
Telephone: 212-869-3500 ext. 235
Facsimile:  212-398-1532
            e-mail: a.fuchsberg@fuchsberg.com,
            l.kelmachter@fuchsberg.com

Dated: May 29, 2008

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing document has been served upon

counsel of record, by ECF upload, or by facsimile or e-mail or First Class mail, this 29th day of May,

2008.

<u>/s/ Richard T. Seymour</u>
Richard T. Seymour
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
        Voice: 202-862-4320
         Cell:   202-549-1454
     Facsimile:  800-805-1065 and 202-828-4130
       e-mail: rick@rickseymourlaw.net