UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| | * | MAG. WILKINSON |
| | * | |
| | * | |
| | * | |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State* C.A. No. 07-5528 | * | |

**********************************************************************

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR ENTRY OF CASE MANAGEMENT ORDER ESTABLISHING ROAD HOME SETTLEMENT PROTOCOL

Insurer Defendants, through Liaison Counsel, Ralph S. Hubbard III, move for entry of the attached proposed Case Management Order ("CMO") establishing a protocol for the Road Home Program's review of insurance settlements entered into between Road Home grant recipients and the Insurer Defendants named in the Road Home Action. The proposed CMO is reasonable, appropriate, and within the Court's authority to enter.

**I.     Background**

As a condition to receipt of Road Home grants, grant recipients are required to sign the "*The Road Home* / Limited Subrogation / Assignment Agreement" (emphasis in original) ("Subrogation / Assignment Agreement"). In the Road Home lawsuit, the State asserts that the Subrogation / Assignment Agreement gives it the following rights:

> Pursuant to the Subrogation / Assignment Agreement, a recipient assigns, to the extent of the grant proceeds awarded or to be awarded to the recipient, the recipient's claims under any policy of casualty or property damage on the

1

damaged or destroyed residence and provides the State with a right of reimbursement of all insurance proceeds received by the recipient after execution of the Subrogation / Assignment Agreement from said casualty or property damage insurer. Through this Agreement, the State is granted, in its sole and uncontrolled discretion, a right to intervene into any action initiated by the recipient against that recipient's property or casualty insurer. The State is also granted an independent right and cause of action to assert a claim for reimbursement or repayment of The Road Home Program's grant funds against any property or casualty insurer.

(Amended Petition ¶ 12.)

As the Court is aware, the State has also taken the position that the Subrogation / Assignment Agreement grants the State the right to review and approve or disapprove settlements between grant recipients and their insurers.[1] In connection with this review process, the State has requested that certain information regarding such settlements be provided to it by policyholders and insurers, as set forth in Exhibits A and B to the proposed CMO. Exhibit A is to be completed by the insurer and Exhibit B by the policyholder. The State's grant or denial of consent is to be reflected on page 6 of Exhibit B. If consent is granted, the State fills in a blank stating what portion of the insurance proceeds it claims is due to it and executes a conditional release on pages 6-7 in favor of the insurer in return for receipt of such amount. On pages 7-8, there is a consent for the policyholder to sign agreeing to the amount claimed by the State and authorizing the insurer to make such payment to the State. Both Exhibit A and Exhibit B are subject

---

[1] In moving for entry of a CMO setting forth a procedure for resolution of the State's claimed rights under particular Subrogation / Assignment Agreements, the Insurer Defendants do not waive any of their defenses with respect to the validity, enforceability, interpretation, and/or application of such agreement.

to a Privacy Protocol of February 14, 2008 voluntarily issued by the State, a copy of which is attached to the proposed CMO as Exhibit C.[2]

As the Court is also aware, the State's review and approval of insurance settlements has been a very slow process. Where approvals have been forthcoming, the process has often taken many months. In addition, there is a substantial backlog of unapproved settlements. The Louisiana Recovery Authority has recently been quoted as stating that there are 420 requests for approval pending, with new requests coming in at the rate of 10 to 15 a day.[3] These delays are preventing policyholders from receiving settlement proceeds and are also standing in the way of the Court's ability to close and dismiss otherwise resolved insurance lawsuits.

In an effort to help address these problems, the Court has assisted the parties in facilitating the review and approval of particular settlements on an ad hoc basis.[4] In addition, the parties to the Road Home Action, attorneys for policyholders, and the Court have been discussing for many months the desirability of establishing a uniform protocol for State review of insurance settlements.[5]

---

[2] In attaching a copy of the State's voluntary Privacy Protocol, the Insurer Defendants do not intend to suggest that the Court adopt the Privacy Protocol as an order, only that a copy be provided with the proposed CMO so that relevant documents associated with the Road Home settlement review process will be compiled and available in a single location for the convenience and ease of reference of all parties. Paragraph 9 of the proposed CMO is intended to make this explicit.

[3] New Orleans *Times-Picayune*, "More talks set on Road Home rut" (May 15, 2008) (available at http://www.nola.com/timespic/stories/index.ssf?/base/money-1/121082989740410.xml&coll=1).

[4] *See, e.g.*, November 30, 2007 Letter from Joseph M. Bruno to Court (Doc. 9434); December 6, 2007 Minute Entry (Doc. 9395); December 10, 2007 Order (Doc. 9416); December 20, 2007 Minute Entry (Doc. 9650); January 11, 2008 Minute Entry (Doc. 10383); January 25, 2008 Minute Entry (Doc. 10793); April 22, 2008 Order (ECF 12671).

[5] *See, e.g.,* December 6, 2007 Minute Entry (Doc. 9395); December 20, 2007 Minute Entry (Doc. 9650); January 11, 2008 Minute Entry (Doc. 10383); January 29, 2008 Transcript at 7-9, 12-13, 17, 27-28; April 21, 2008 Order at 19-20 (Doc. 12669); May 16, 2008 Minute Entry (Doc. 13202).

The parties appear to be in substantial agreement that the settlement review protocol set forth in the attached proposed CMO is an appropriate way to address these issues, with three areas of dispute noted below. In general terms, the protocol requires that where a grant recipient/policyholder reaches a settlement with his or her insurer, the insurer and the policyholder are to complete Exhibits A and B, with counsel for the policyholder to submit the completed exhibits to the State.[6] The State then has 30 days to review the settlement. If the State consents to the settlement and executes the conditional release within 30 days and the policyholder executes the consent to the terms of the State's conditional release and notifies the insurance company within seven days, then the insurance company is required to deliver checks in the specified amounts within 30 days. On the other hand, if (a) the State withholds its consent; (b) the State fails to respond within 30 days; or (c) the policyholder rejects the terms of the State's conditional release, the protocol permits the insurance company or policyholder to request a settlement conference, at which attendance by counsel for the insurer, counsel for the policyholder, and a Road Home representative would be mandatory.

The Insurer Defendants understand that the State has three objections to the proposed CMO. First, it objects to the adoption of the settlement protocol in the form of an order, preferring instead that it be adopted by the State as a voluntary protocol. Second, the State requests a provision requiring the insurers to provide a copy of the

---

[6] The Insurer Defendants have made two related changes to Exhibit B subsequent to the last version of the form submitted to the Court and have alerted counsel for the State to such changes. First, on page 7, Exhibit B now reflects that an insurer's check to the State may reflect any lienholders as joint payee. This change conforms Exhibit B to what in fact has been the practice to date with respect to approved settlements. Second, language has been added on page 6 making clear that because of possible competing interests, the State may not receive the amount specified in the conditional release. This language is similar to language used at the request of the State in connection with certain other settlements. Accordingly, Defendants assume that these changes will be acceptable to the State.

protocol to counsel for the policyholder when an insurance lawsuit is settled. Third, the State objects to being required to participate in a settlement conference in circumstances where it has approved a settlement but the policyholder has not consented to the terms of the conditional release. (*See* Proposed CMO Par. B(7)(c).) These objections are without merit and should not prevent the Court from entering the proposed CMO.

## II.     Court Authority to Issue the Proposed CMO

In this action, the State seeks to assert claims against the Insurer Defendants under Subrogation / Assignment Agreements executed by grant recipients. The State's approval of an insurance lawsuit settlement constitutes the settlement by the State of a claim against a particular Insurer Defendant with respect to a particular policy. The proposed CMO sets forth procedures intended to facilitate such settlements. The authority of the Court to order the parties to participate in proceedings to determine whether claims at issue in a lawsuit can be settled is beyond question.

Rule 16(c) authorizes the Court to "consider and take appropriate action" on a variety of matters, including "settling the case" and "facilitating in other ways the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c)(2)(I) & (P). "Appropriate action" includes ordering that the parties appear before it for such purposes as expediting the disposition of the action, establishing early and continuing control so that the case will not be protracted because of lack of management, and facilitating settlement. Fed. R. Civ. P. 16(a)(1), (2), & (5). In addition, in proposed class action cases such as this one, the Court has broad power to make such orders as necessary to conduct and manage the case. *See* Fed. R. Civ. P. 23(d). Moreover, the proposed CMO would be permitted in the exercise of the Court's "'inherent power,' governed not by rule

or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962).

The proposed CMO would simply require the State to participate in a process to determine whether and on what terms it is willing to settle its claimed interest in insurance proceeds resulting from an insurance lawsuit settlement. The State has placed that claimed interest at issue in this lawsuit, and there is no basis for the State to challenge the Court's authority to direct it to participate in a process to determine whether its claims can be resolved by agreement rather than by adjudication.

Moreover, the State's settlement review record to date would undermine any argument by the State that the Court should exercise its discretion not to adopt a settlement protocol by order. Many insurance settlements have languished for months awaiting State review and approval. Where approval has been forthcoming, it has often been the result of ad hoc orders by the Court requiring the parties to appear and discuss the pending approval requests.[7] Absent a Court-ordered process applicable to all settlement approval requests, there will be a need for repeated ad hoc involvement by the Court. Moreover, the Road Home Program is now almost two years old. The State has had ample time to develop and implement procedures for the timely assertion and resolution of its claimed interest in insurance settlements with grant recipients but has failed to do so. The State has now put those claimed interests at issue in this lawsuit, and

---

[7] *See, e.g.*, December 10, 2007 Order (Doc. 9416); December 20, 2007 Minute Entry (Doc. 9650); April 22, 2008 Order (ECF 12671).

it is appropriate for the Court to enter the proposed CMO to facilitate timely resolution of those claimed interests by agreement where possible.

### III.     Responsibility for Disseminating Settlement Protocol

There is no basis for ordering that the insurers be responsible for informing policyholders as to the requirements for review of insurance settlements.  The State's claimed interest in insurance settlements is a result of an agreement between the State and the policyholder.  As such, the State should be responsible for disseminating information about the settlement review process.  As a practical matter, many insurers are likely to provide the protocol and exhibits to policyholders, because it will be in the insurers' interest to obtain the release by the State contemplated by the settlement review and approval process.  However, there is no basis for imposing a *duty* on insurers to provide this information.

### IV.     Attendance at Settlement Conferences

Under the proposed CMO, once Exhibits A and B have been submitted to the State, the State may consent or decline to consent to the insurance settlement.  If the State consents, it will fill in a blank in the conditional release specifying the portion of the settlement proceeds which it seeks.  If the policyholder consents, then the insurer is to make payments in accordance with these terms.  If the policyholder does not consent, the insurer may request a settlement conference.  The proposed CMO would require attendance at the settlement conference by a Road Home representative, along with the policyholder, the policyholder's counsel, and counsel for the policyholder.

The State objects to the request that a Road Home representative be required to participate in such a conference.  Counsel for the State has explained that (a) the State's

7

position is that it has done everything it needs to do once it has signed the conditional release; (b) policyholders may use such conferences as some kind of appeal process with respect to their grants; and (c) as to the State's claimed portion of the insurance settlement, that is determined by formula, so there is nothing further to discuss once the State has announced how much it claims.

The State's position is unreasonable on its face. The State's execution of the conditional release may be the first time it has communicated to the policyholder the State's position as to what portion of an insurance settlement should be paid to it. Any objection by the policyholder will most likely reflect a dispute between the policyholder and the State as to the amount the State is claiming out of the policyholder's insurance settlement. If there is a possibility of resolving that dispute, the participation by the State will obviously be required. The suggestion that there is nothing to talk about because the amount sought by the State is the product of a simple mechanical formula and nothing more is inconsistent with the range of information the State requests in Exhibits A and B, not to mention the time it has taken the State to review and act on settlements.

The State has put its claimed interest in insurance proceeds at issue in this lawsuit. It can and should be required to participate in settlement conferences that may lead to the resolution of some of its claims.

### V.    Conclusion

For the reasons set forth above and discussed in numerous conferences with the Court, the Insurer Defendants request that the attached proposed CMO be entered by the Court.

Respectfully submitted:

*/s/ Ralph S. Hubbard, III*
Ralph S. Hubbard III, T.A., La. Bar No. 7040
Seth A. Schmeeckle, La. Bar No. 27076
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone:   (504) 568-1990
Facsimile:   (504) 310-9195
Email:   rhubbard@lawla.com
         sschmeeckle@lawla.com
**Insurer Defendants Liaison Counsel**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2008, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all CM/ECF participants and I hereby certify that I have mailed by United States Postal Service the document to all non-CM/ECF participants.

/s/ Ralph S. Hubbard, III
Ralph S. Hubbard III