UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*       05-5531 | * | |
| *Mumford v. Ingram*    05-5724 | * | |
| *Lagarde v. Lafarge*     06-5342 | * | JUDGE |
| *Perry v. Ingram*            06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*         06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAG. |
| *Lafarge v. USA*             07-5178 | * | JOSEPH C. WILKINSON, JR. |
| | * | |

**PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER
AND MOTION TO QUASH FILED BY DEFENDANT, LAFARGE NORTH
AMERICA, INC AND HARRY HOLLADAY**

**NOW COME** Plaintiffs, through the Barge Plaintiffs' Subgroup Litigation Committee, who oppose the motion of Defendant, Lafarge North America (hereinafter "LNA") and Harry Holladay (hereinafter "Holladay") which both seek a protective order preventing Plaintiffs from deposing Holladay and an order quashing Subpoena *duces tecum* served on Holladay.

**BACKGROUND**

Ingram Barge ING 4727 landed on several Lower Ninth Ward homes after crashing through the south breach of the eastern Industrial Canal floodwall. One, at 1739 Jourdan Avenue, belonged to Arthur Murph and his wife Jeanne Murph. Mr. Murph was home during the storm, outside at the time the barge broke through the floodwall. LNA soon thereafter, through its attorneys at Chaffe

McCall, proposed settlement whereby LNA would take ownership of 1739 Jourdan Avenue and arrange the purchase of a new home for Mr. and Mrs. Murph.  They made no contact, and no such overtures or offers to the owners of any other homes on which the barge landed.  All of these other persons had evacuated, and had seen nothing of the barge during the storm.  Mr. Murph initially stated to an attorney he consulted on one occasion that the barge broke the floodwall. See Excerpts of Statement of Arthur Murph, pp.5-8, attached as **Exhibit "A."**  Eventually, Mr. Murph and LNA entered into a purported settlement agreement containing a harsh confidentiality provision penalizing Mr. Murph upon revelation of the settlement and which contained a very different account of the events that those stated previously by Mr. Murph. See Settlement agreement and affidavit attached as **Exhibit "B."**  An Act of Sale took place in which Mr. Murph was made owner of a new home on Berkley Drive in Algiers. See Berkley Drive Act of Sale attached as *in globo* **Exhibit "C."** Oddly, though it was a full price cash sale without any financing, LNA and its attorneys had Mr. Murph grant a collateral mortgage, pledging the new home, purportedly as an incentive for Mr. Murph to uphold the confidentiality agreement.  The collateral mortgage does not clearly identify the mortgagee, but reference to the settlement agreement reveals the possibility that it is Lafarge, its insurers, New Jourdan or New Berkley (an organization that appears not to exist in the Louisiana Secretary of State database).

  Mr. Murph revealed in a recent deposition that at no time that he signed numerous documents pertinent to the settlement, including a purported Affidavit containing LNA's version of his observations during the storm, and the documents pertinent to the sale, did he understand the contents, have benefit of counsel, or any explanation by LNA or its attorneys of his rights, or the meaning of the documents he was signing, nor was he provided an advance copy of the settlement

documents prior to execution. See Deposition of Arthur Murph, Jr., Vol. II, January 29, 2007 at pp. 216-218, 245-246, 264-265 attached as **Exhibit "D."**  He revealed in his deposition that he understood virtually nothing of the contents and legal effects of all that LNA and Chaffe, McCall placed before him for signature. *Id.*  He revealed in his deposition that he did not know whether giving testimony there would jeopardize the purported settlement. See Deposition of Arthur Murph, Jr., Vol. II, January 29, 2007 at pp.279-280 **Exhibit"D."**

  Instrumental in the settlement were New Jourdan, Chaffe McCall attorneys Harry Holladay, and, upon information and belief, Robert Fisher.  Mr. Fisher and Chaffe McCall represent LNA in this lawsuit.  Also instrumental was New Jourdan, LLC, a company created to serve as a conduit for funds used to purchase the home.  See New Jourdan Documents attached as *In globo* **Exhibit "E."** These funds were provided to New Jourdan via a Chaffe McCall check, which was then converted to a Crescent Bank and Trust cashier's check for the Act of Sale. See Crescent Bank Exhibits attached as *in globo* **Exhibit "F."**  New Jourdan's agent for service is Daniel Webb, counsel in this matter for LNA's insurer New York Marine.  It's mailing address and domicile address are the same as Mr. Webb's service address which is different from Mr. Webb's law firm address.   Mr. Holladay's name appears on numerous documents for reasons unknown, including the Berkley Drive Act of Sale, as counsel for LNA, which was not a party to the Act of Sale. His was a constant presence throughout these proceedings.  Both Mr. Holladay and Mr. Fisher are said to have had various communications with Mr. And Mrs. Murph long after the sale, the result of which is said to be the Murph Family's fear that they would lose their new home to LNA for one or more reasons. The first results from Mr. Murph's understanding, until recently advised otherwise by counsel, that revelation of his observations during the storm might be a violation of the confidentiality provision,

and that he could lose his house.  Mr. Murph hid in his home while plaintiffs tried over the course of weeks to subpoena him for deposition.  Undersigned asked counsel for LNA to advise Mr. Murph that his deposition testimony would not constitute a breach, but counsel did not comply.  Nor did LNA or their counsel grant Mr. Murph permission to testify or speak of these matters pursuant to language in the confidentiality agreement stating that such permission would not be unreasonably refused.  See Deposition of Arthur Murph, Jr., Vol. II, January 29, 2007 at pp. 164- 169. **Exhibit "D."**

The second reason for Mr. Murph's fear resulted from various phone calls made to the Murph Family, upon information and belief by Messrs. Holladay and/or Fisher, long after the Act of Sale took place and Mr. and Mrs. Murph had settled into their new Berkely Drive home.  A condition of the settlement was that LNA would take ownership of the damaged 1739 Jourdan Avenue property. However, when Mr. and Mrs. Murph originally bought the Jourdan Avenue property in early 2005 from Shirley Priestly, deceased, the Murphs were twelve thousand dollars ($18,680.00) short at closing.  See Act of sale and Promissory note attached as *in globo* **Exhibit "G."**  Ms. Priestly accepted a second mortgage and financed this shortfall.  LNA did not know this at the time of the Murph settlement.  According to Jennifer Fernandez, Shirley Priestly's daughter, Mrs. Murph would call in a panic, stating that Chaffe McCall was calling and exerting tremendous emotional stress over the second mortgage.  She expressed great fear that they would lose the new house.  Ms. Fernandez' cell phone records reveal several calls from Chaffe McCall (504-585-7000) during this period. **Exhibit "H."**

Plaintiffs question the existence of a pattern of oppression, threats, and sequestration of a witness whom LNA, its insurers, and their attorneys perceived as a danger to their claims that the

barge floated through an existing breach. Plaintiffs question the existence of a pattern of secrecy concerning the existence of the settlement, and exploitation of Mr. Murph's lack of legal counsel to induce or coerce him to endorse LNA's conduct described above. Plaintiffs perceive great need to investigate further for the benefit of the trier of fact, and in the interests of justice. [1]

## ARGUMENT

**I.     PLAINTIFFS HAVE GROUNDS FOR TAKING THE DEPOSITION OF HARRY HOLLADAY**

Mr. Murph's deposition testimony includes several troubling revelations:

- that Mr. Murph did not understand the multitude of settlement documents Chaffe, McCall attorneys had him sign;

- that Mr. Murph was unrepresented throughout the settlement;

- that LNA's attorneys did not explain the legal effects of the documents;

- that the attorneys had him sign an Affidavit, appended to the settlement, setting forth a self-serving version of Mr. Murph's observations during Katrina that conflicts with an earlier audio tape in which Mr. Murph related his account of the floodwall breach;

- that Mr. Murph did not understand that he had given to LNA a collateral mortgage under some very unusual circumstances;

- that Mr. Murph believed that his deposition testimony might cause the loss of his home;

---

[1] Plaintiffs adopt by reference their Plaintiffs' Opposition to Motion for Protective Order and Motion to Quash Filed by Defendant, Lafarge North America, Inc and New Jourdan, LLC, and Barge Plaintiffs' Opposition to Lafarge North America, Inc.'S Motion for Protective Order on Plaintiffs' Second Rule 30(b)(6) Notice to the extent consistent herewith.

- that LNA refused permission for Mr. Murph to testify about his observations during the storm;

- etc...etc...etc....

- that additional evidence reveals continuing activities by Chaffe McCall long after the Murph settlement, lending support to Jennifer Fernandez' claims that they may have been intimidating Mr. and Mrs. Murph in order to silence accounts of the barge having collided with the floodwall.

Fed. R. Civ. P. 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial. *Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993). Deposition of Mr. Holladay is intended to elicit competent, knowing testimony as to the settlement conditions including but not limited to intent and effect of the confidentiality provisions; nature and scope of protections, cautions and advice afforded to Mr. Murph; instructions and explanations provided concerning the documents he signed; bases for contentions contained in the affidavit LNA had him sign; reasons for and effects of the collateral mortgage; withholding of permission for Mr. Murph to testify; nature of and reasons for continuing contacts with Mr. or Mrs. Murph or with Jennifer Fernandez; reasons, effects and functions of business entities established in connection with the settlement; source(s) of settlement funds; acts and statements potentially having effect upon Mr. Murph's freedom to render an account of his observations during Katrina, or having a bearing upon his deposition testimony. All of these areas of inquiry will allow plaintiffs and the Court to assess the fairness of the settlement, and its potential effects on a key witness in this litigation. See *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.,* No. CIV-A 97-3012, 1998 WL 186705, at *3 (E.D.La.1998) (allowing

discovery of settlement agreements in order to evaluate a witness' potential bias, interest and credibility); *Tribune Co. v. Purcigliotti,* No. 93 Civ. 7222(LAP)(THK), 1996 WL 337277, at *2-3 (S.D.N.Y. June 19, 1996) (allowing discovery of settlement-related materials where materials might reveal possible bias of settling witness); *Sec. Exch. Comm'n v. Thrasher,* No. 92 Civ. 6897(MHD), 1996 WL 94533, at *2 (S.D.N.Y. Feb.27, 1996) (allowing party to discover information disclosed in settlement discussions where party proposed to use information to impeach witness' credibility).

LNA and Harry Holladay contend that it is inappropriate for Plaintiffs to take the testimony of counsel for an opposing party except in exceptional circumstances. Further, LNA contends that this Court has already ruled that the communications sought by Plaintiffs which involve Mr. Holladay and the Murphs are not discoverable.

Federal Rule of Civil Procedure 26(c) governs the granting of a protective order. A protective order should be granted when the moving party establishes "good cause" for the order and "justice requires [a protective order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c). However, before a protective order issues, the moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements. *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). LNA's contentions are insufficient to prevent Mr. Holladay's depostion.

LaFarge North America does not have standing to object to a subpoena duces tecum issued to a third party when they ""have not alleged any personal right or privilege with respect to that being subpoenaed."" *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979); accord *Garrett v. Blanton*, No. 89-4367, 1993 WL 262697, at *5 (E.D.La. July 6, 1993) (Clement, J.); 9A C.A. Wright & A.R.

Miller, Federal Practice and Procedure §§ 2459, at 41 & cases cited nn. 15, 16 (2d ed. 1997) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought."). See, *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, Not Reported in F.Supp., 1998 WL 186705 (E.D.La.,1998).  While Mr. Holladay is or was an attorney for LNA relative to the settlement with Murph, he is not counsel of record in this case, and is therefore not opposing counsel in this litigation.   In *Roeben V. Bg Excelsior Limited Partnership* the District Court, ruling on a motion to quash, analyzed *Shelton, 805 F.2d at 1327*, a case cited by LNA and Harry Holladay, finding it limited to instances in which one party was seeking to depose the trial counsel of the opposing party.  Such was not the case in *Roeben* and such is not the case herein. See *Roeben v. Bg Excelsior Limited Partnership* (E.D.Ark. 9-14-2007).  Mr. Holladay has not been enrolled as trial counsel in this case. In fact by LNA and Mr. Holladay's own admission, Mr. Holladay was counsel for LNA for the very limited work "on the title transfer aspects of the confidential settlement with the Murphs." Rec. Doc.____ dated May 27, 2008 at 5.  As stated at http://www.chaffe.com/bios/holladay.htm, "Mr. Holladay's law practice involves property and contract matters, particularly with respect to minerals, title to property rights, mineral rights, bankruptcy and corporate financing. He has had responsibility for oil, gas and solid mineral agreements for landowners and developers. He has assisted lenders in making and restructuring commercial loans and has advised secured and unsecured creditors in bankruptcy proceedings." He is not defending LNA in this maritime tort litigation, which is not his area of practice.  Robert Fisher is counsel of record in this case, but his deposition has not been sought.

Before discovery in this, the *Katrina Canal Breaches Consolidated Litigation*, plaintiffs had not been provided a copy of the entire Murph settlement. As explained in plaintiffs "Barge Plaintiffs' Opposition to LNA North America, Inc.'S Motion for Protective Order on Plaintiffs' Second Rule 30(b)(6) Notice," adopted and reiterated in pertinent part, the limitation action out of which the present matter was deconsolidated and transferred, was conducted in phases. Discovery and prosecution of the case was limited by Court Order to questions of Ingram, et al's privity or knowledge, or negligence or unseaworthiness. The settlement documents were deemed by this Court to be irrelevant to these questions. Only in the litgation *sub judice* have plaintiffs been afforded a copy of the settlement documents. "A party who has received written production is entitled to explanations of the information produced, including how the information was gathered, by whom, whether or not the party adopts that information, where the information came from, whether there is some additional information. See *State Farm Mutual Automobile Ins. v. New Horizont*, 03-6516 (E.D.Pa. 5-7-2008). Undersigned recognize that this Court undertook *in camera* examination of settlement documents during the pendency of *In Re Ingram Barge Company, Inc*. However, it is unknown whether all of the documents were provided to the Court. Moreover, this occurred long before produced to undersigned the (redacted) settlement documents, before Mr. Murph's statement was provided to undersigned, before the revelations contained in his deposition, and before undersigned had any reason for concern over LNA's methods or their ability to compromise Mr. Murph's willingness to testify, or his rights. As well, it occurred long before plaintiffs obtained via Fed. R. Civ. P. 45 a copy of the Act of Sale and Collateral Mortgage at issue, which were also outside the permitted scope of proceedings in the Limitation Action.

Plaintiffs respectfully submit that LNA and Harry Holladay have failed to state a particular and specific need for the protective order.  However, assuming *arguendo* that LNA has met it's threshold burden, which it has not, the circumstances underlying Mr. Holladay's deposition satisfy the criteria set forth in *Certain Underwriters at Lloyd's London v. Penthouse Owner's Association*, 2008 U.S. Dist. LEXIS 33723 (E.D.La.April 24, 2008), citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999). In *Certain Underwriters at Lloyd's London v. Penthouse Owner's Association*, the Court states that a party should be forbidden from deposing opposing counsel *unless* (1) no other means exist to obtain the information, (2) the information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *Id.* (Emphasis added).

    **A.**    **Plaintiffs have no other means of obtaining the information sought from Mr. Holladay.**

Plaintiffs have no other means of obtaining the information sought other than through Mr. Holladay.  Mr. Murph is admittedly ignorant of the purpose, contents and effects of the agreements he made and documents he signed relative to the settlement.  Jennifer Fernandez, who says that she received frantic calls from Mrs. Murph, fearing that they would lose their house, and whose phone records (Ms. Fernandez') demonstrate several calls from Chaffe, McCall long after the settlement, was in a hospice, unconscious, in the last stages of terminal of cancer when undersigned attempted about a month ago to schedule her deposition.  Plaintiffs intend through a Fed. R. Civ. P. 30(b)(6) deposition of LNA to question the corporation concerning the dealings with Mr. Murph, and expect that LNA itself has some knowledge.  However, plaintiffs anticipate that such knowledge is limited beyond a certain measure.  New Jourdan may have some knowledge, but this is unknown until New Jourdan is deposed, which proposed deposition is subject of a separate motion pending before this

Court.[2] Harry Holladay is the one person who is not counsel of record in this lawsuit who has full knowledge of the settlement and salient circumstances, including but not limited to:

- the nature and scope of protections, cautions and advice afforded to Mr. Murph;
- instructions and explanations provided concerning the documents he signed;
- bases for contentions contained in the affidavit LNA had him sign;
- conditions of the settlement vis-a-vis the confidentiality provisions;
- reasons for and effects of the collateral mortgage;
- withholding of permission for Mr. Murph to testify;
- nature of and reasons for continuing contacts with Mr. or Mrs. Murph or with Jennifer Fernandez;
- reasons, effects and functions of business entities established in connection with the settlement;
- source(s) of settlement funds;
- acts and statements potentially having effect upon Mr. Murph's freedom to render an account of his observations during Katrina, or having a bearing upon his deposition testimony.

### B. The information sought from Mr. Holladay is both relevant and non-privileged.

The second criterion enumerated in *Nguyen* is that the information sought be relevant and non-privileged. *Id.* Plaintiffs seek to depose Mr. Holladay regarding the conditions of the settlement and any communications between Mr. Holladay and Mr. Murph regarding said conditions. Fed. R.

---

[2]Plaintiffs adopt by reference their Plaintiffs' Opposition to Motion for Protective Order and Motion to Quash Filed by Defendant, Lafarge North America, Inc and New Jourdan, LLC to the extent consistent herewith.

Civ. P. 26(b)(1)   states in pertinent part that, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  The areas of inquiry described above  are relevant to LNA's potential influence over Mr. and Mrs. Murph, one of whom was present at the time and location of the southern breach, and both of whom were brought within LNA's direct reach via the compromise and property transactions.  Such influence, if any, is relevant, because Mr. Murph's truthful testimony is relevant in this litigation to the question of floodwall breach causation.

The next element required by the second prong is that the information sought be non-privileged. None of what plaintiffs seek is privileged.  Plaintiffs seek testimony as to settlement documents already provided to plaintiffs by LNA, including the compromise, affidavits purporting to contain Mr. Murph's account of his observations during the storm, and the confidentiality agreement.  Plaintiffs do not seek testimony as to the settlement amount, which is irrelevant to plaintiffs' concerns.  Additionally, plaintiffs seek testimony concerning documents provided by non parties pursuant to Fed. R Civ. P. 45 - to which document production LNA raised no objections. These include documents tendered by Crescent Bank and Trust pertinent to the nature, sources and routing of settlement funds,  and Act of Sale documents and the Collateral Mortgage document provided by True Title Corporation.  Plaintiffs also seek testimony concerning Chaffe McCall's nonprivileged communications made to Mr. Murph or Mrs. Murph, who were not LNA's clients, but unrepresented  potential adversaries, and communications to others such as Shirley Priestly (former owner of the Murph Jourdan Ave. property) Ms. Fernandez (Ms. Priestly's daughter and succession

representative), and attorney G. Patrick Hand of True Title Corporation, also not Chaffe-McCall's clients.

Any conversations and/or statements made by Mr. Murph to Mr. Holladay are not privileged. "[W]here legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relevant to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal advisor except the protection be waived."*Diversified Industries, Inc. v. Meredith,* 572 F2d 596, 602 (8th Cir. 1977) *citing Wonneman v. Stratford Securities*, 23 F.R.D. 281, 285 (S.D.N.Y. 1959).         In order for the privilege to be applicable, the parties to the communication in question must bear the relationship of attorney and client. Moreover, the attorney must have been engaged or consulted by the client for the purpose of obtaining services or advice - services or advice that a lawyer may perform or give in his capacity as a lawyer, no in some other capacity. A communication is not privileged simply because it is made by or to a person who happens to be a lawyer. 8 Wright & Miller, op. Cit., p. 136. See *Underwater Storage, Inc v. United States Rubber Co., supra; In re Natta*, 264 F. Supp 734, 741 (D.Del. 1967), aff'd on other issues, 388 F.2d 215 (3d Cir. 1968).    In the case at hand, Mr. Murph or Mrs. Murph, were not LNA's clients, but unrepresented potential adversaries. In fact, Mr. Murph did not have the benefit of counsel throughout his dealings with Mr. Holladay during the settlement process. Therefore, there is no attorney-client privilege protecting the communications between Mr. Holladay and Mr. Murph to the extent that these communications involved Mr. Murph's recollections of the factual events surrounding the effects of Hurricane Katrina and to the extent that Mr. Holladay or his client LNA imposed any conditions to the settlement that in any way may have coerced Mr. Murph into believing that revelation of his observations during the storm might be a

violation of the confidentiality provision of the settlement with LNA. Blanket claims of privilege are disfavored. *United States v. ElPaso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("The privilege must be specifically asserted with respect to particular documents."); 6 James Wm. Moore et al., Moore's Federal Practice § 26.47[1], at 26-148 (3ded. 1999) ("A bald assertion of privilege is insufficient. . . . [A]claim of privilege must be directed to specific questions . . ., so that the trial court has enough information so as to rule on the privilege claim.") (footnotes omitted); 3 Weinstein's Federal Evidence § 503.20[4][b], at 503-66.

    LNA and Holladay have asserted the privilege with regard to the settlement amount but not with regard to the specific information sought by the Plaintiffs. Again, the plaintiffs do not seek revelation of the settlement amount. Such information is publically available through municipal property records. Though plaintiffs seek nothing privileged, the District Court in *Roeben*, cited above, found that when testimony that the attorney might be called upon to give would be protected by the attorney-client privilege or by attorney work product, that issue could be submitted to the Court on a question-by-question basis after deposition. *Id.* citing *Nakash v. U.S. Dept.of Justice*, 128 F.R.D. 32, 35 (S.D.N.Y. 1989).

    LNA and Harry Holladay claim that this court has barred Plaintiffs from any further discovery concerning communications between Mr. Holladay and the Murphs. Rec. Doc. 12605, dated April 21, 2008 in No. 05-4182, at 1 and 12-13. Plaintiffs aver that the information they seek goes well beyond the settlement between LNA and the Requests for Production of Documents that this Court ruled on in the above referenced order. Again, Plaintiffs are not seeking the amount of the settlement or whether it exists, as this information has been obtained from third parties. Plaintiffs are interested in investigating the conditions of that settlement, and the communications between Mr.

Holladay, Chaffe-McCall, Mr. Murph, and other nonclients and nonparties relevant to said conditions and/or their effects on Mr. Murph's testimony. Plaintiffs seek to question Mr. Holladay concerning the documents already produced by LNA and in plaintiffs' possession. *State Farm Mutual Automobile Ins. v. New Horizont*, 03-6516 (E.D.Pa. 5-7-2008). Additionally, Plaintiffs seek any factual information regarding the Barge and the damage it caused during Hurricane Katrina that Mr. Murph may have relayed to Mr. Holladay during the settlement process.

### C. The information sought is crucial to the preparation of their case.

The third and final *Nguyen* criterion requires a showing that the information and documents sought are crucial to the preparation of their case. Mr. Murph is one of few people alive who did not evacuate, and who was present at the time the barge impacted the floodwall. Again, Mr. Murph was home during the storm, outside at the time the barge broke through. Mr. Murph initially stated to an attorney he consulted on one occasion, that he heard the barge scraping against the eastern IHNC floodwall, followed by a loud, booming crash, and that the barge broke through the floodwall, causing the south breach. Upon suggestion that the barge probably broke the floodwall, Mr. Murph exclaimed, "...probably, my ass!" See Excerpts of Statement of Arthur Murph, pp.5-8, attached as **Exhibit "A."** Mr. Murph also stated, "...and then I saw the barge. It looked like a whole block of steel coming at me...It was wiping houses out it was floating sideway*s." Id.* at 8. At subsequent depositions, Mr. Murph revealed that he did not understand the legal effects of documents he was required to sign, did not know whether giving testimony would jeopardize the purported settlement or cause him to lose his new home, and was not as adamant. His testimony and relevant documents raise questions whether he and Mrs. Murph were subject to any undue influence that might bear upon Mr. Murph's account of the south IHNC floodwall breach.

## II.   THE SUBPOENA TO HARRY HOLLADAY DOES NOT SEEK INFORMATION BEYOND THE SCOPE OF PERMISSIBLE DISCOVERY

A trial court enjoys wide discretion in determining the scope and effect of discovery. *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539 (5th Cir. 1980), cert. denied, 454 U.S. 927,102 S.Ct. 427, 70 L.Ed.2d 236 (1981). LNA and Harry Holladay state repeatedly that this Court has expressly denied production of documents plaintiffs now seek.  Plaintiffs aver that this is not the case.  Plaintiffs maintain that the Court ruled on a Motion to Compel discovery directed at LNA regarding specific Request for Productions 14- 16.  Rec. Doc. 12605, dated April 21, 2008 in No. 05-4182, at 1 and 12-13.  The Court did not have before it the facts and documentation regarding the actions of Harry Holladay, LNA, its insurers, and their attorneys. The information that Plaintiffs seek goes well beyond that of the confidential settlement of the Murphs. The actions and extensive role that Harry Holladay undertook relative to the Murphs settlement given the fact that Mr. Murph was not represented by counsel give rise to an overwhelming question whether Mr. Murph may have been coerced into believing that revelation of his observations during the storm might be a violation of the confidentiality provision, and that he could lose his house.  This would affect his testimony.

Plaintiffs are not seeking the amount of the settlement or whether it exists. That information has been obtained from LNA and third parties. Plaintiffs are interested in the conditions of that settlement, the communications between Mr. Holladay and Mr. Murph regarding said conditions, if any. Plaintiffs perceive a great need to investigate further for the benefit of the trier of fact, and in the interests of justice, Mr. Holladay's role in these matters. More importantly, if Mr. Holladay

was privy to any factual information provided by Mr. Murph regarding the Breach of the IHNC.

## CONCLUSION

Plaintiffs have clearly shown that based on the facts and the law and argument above, this matter falls within the very limited circumstances where the deposition of opposing counsel should be allowed. Mr. Holladay should be compelled to appear and to produce the requested documents.

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs respectfully ask that this Court enter an order denying, LNA and Harry Holliday's motion for protective order and motion to quash.

Respectfully submitted,

/s/ Brian A. Gilbert,
Brian A. Gilbert, Esq.(21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
   Telephone: (504) 885-7700
   Telephone: (504) 581-6180
   Facsimile: (504) 581-4336
   e-mail: bgilbert@briangilbertlaw.com

/s/ Lawrence D. Wiedemann,
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
   Telephone: (504) 581-6180
   Facsimile: (504) 581-4336

e-mail: lawrence@wiedemannlaw.com,
karl@wiedemannlaw.com, karen@wiedemannlaw.com,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
 Telephone: 504-834-0646
 e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Adele Rapport
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
 Voice: 202-862-4320
 Cell:   202-549-1454
 Facsimile:  800-805-1065 and 202-828-4130
 e-mail: rick@rickseymourlaw.net,
  adele@rickseymourlaw.net

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
 Telephone: (212) 608-4400
 Facsimile: (212) 227-5159
 e-mail: lwilson@wgdnlaw1.com,
ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor

New York, NY 10110-0002  
Telephone: 212-869-3500 ext. 235  
Facsimile:  212-398-1532  
e-mail:   a.fuchsberg@fuchsberg.com,  
l.kelmachter@fuchsberg.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 3 day of June, 2008.

\s\Brian A. Gilbert