UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES <br> CONSOLIDATED LITIGATION | * <br> * <br> * <br> * | CIVIL ACTION |
| PERTAINS TO:  BARGE | * <br> * <br> * | NO. 05-4182 <br> and consolidated cases |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*          05-5531 <br> *Mumford v. Ingram*       05-5724 <br> *Lagarde v. Lafarge*        06-5342 <br> *Perry v. Ingram*             06-6299 <br> *Benoit v. Lafarge*           06-7516 <br> *Parfait Family v. USA*   07-3500 <br> *Lafarge v. USA*               07-5178 | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | JUDGE <br> STANWOOD R. DUVAL, JR. <br><br> MAG. <br> JOSEPH C. WILKINSON, JR. |

**PLAINTIFFS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER
AND MOTION TO QUASH FILED BY DEFENDANT, LAFARGE NORTH
AMERICA, INC AND NEW JOURDAN, L.L.C.**

**NOW COME** Plaintiffs, through the Barge Plaintiffs' Subgroup Litigation Committee, who oppose the motion of Defendant, Lafarge North America (hereinafter "LNA") and New Jourdan, L.L.C.,(hereinafter "New Jourdan") which both seek a protective order preventing Plaintiffs from seeking any additional discovery from New Jourdan, L.L.C. and an order quashing Plaintiffs Notice of 30(b)(6) deposition of New Jourdan.

**I.     FACTUAL BACKGROUND**

Ingram Barge ING 4727 landed on several Lower Ninth Ward homes after crashing through the south breach of the eastern Industrial Canal floodwall.  One, at 1739 Jourdan Avenue, belonged to Arthur Murph and his wife Jeanne Murph.  Mr. Murph was home during the storm, outside at the

time the barge broke through the floodwall. LNA soon thereafter, through its attorneys at Chaffe McCall, proposed settlement whereby LNA would take ownership of 1739 Jourdan Avenue and arrange the purchase of a new home for Mr. and Mrs. Murph. They made no contact, and no such overtures or offers to the owners of any other homes on which the barge landed. All of these other persons had evacuated, and had seen nothing of the barge during the storm. Mr. Murph initially stated to an attorney he consulted on one occasion that the barge broke the floodwall. See Excerpts of Statement of Arthur Murph, pp.5-8, attached as **Exhibit "A."** Eventually, Mr. Murph and LNA entered into a purported settlement agreement containing a harsh confidentiality provision penalizing Mr. Murph upon revelation of the settlement and which contained a very different account of the events that those stated previously by Mr. Murph. See Settlement agreement and affidavit attached as **Exhibit "B."** An Act of Sale took place in which Mr. Murph was made owner of a new home on Berkley Drive in Algiers. See Berkley Drive Act of Sale attached as *in globo* **Exhibit "C."** Oddly, though it was a full price cash sale without any financing, LNA and its attorneys had Mr. Murph grant a collateral mortgage, pledging the new home, purportedly as an incentive for Mr. Murph to uphold the confidentiality agreement. The collateral mortgage does not clearly identify the mortgagee, but reference to the settlement agreement reveals the possibility that it is Lafarge, its insurers, New Jourdan or New Berkley (an organization that appears not to exist in the Louisiana Secretary of State database).

      Mr. Murph revealed in a recent deposition that at no time that he signed numerous documents pertinent to the settlement, including a purported Affidavit containing LNA's version of his observations during the storm, and the documents pertinent to the sale, did he understand the contents, have benefit of counsel, or any explanation by LNA or its attorneys of his rights, or the

meaning of the documents he was signing, nor was he provided an advance copy of the settlement documents prior to execution. See Deposition of Arthur Murph, Jr., Vol. II, January 29, 2007 at pp. 216-218, 245-246, 264-265 attached as **Exhibit "D."** He revealed in his deposition that he understood virtually nothing of the contents and legal effects of all that LNA and Chaffe, McCall placed before him for signature. *Id.* He revealed in his deposition that he did not know whether giving testimony there would jeopardize the purported settlement. See Deposition of Arthur Murph, Jr., Vol. II, January 29, 2007 at pp.279-280 **Exhibit"D."**

Instrumental in the settlement were New Jourdan, Chaffe McCall attorneys Harry Holladay, and, upon information and belief, Robert Fisher. Mr. Fisher and Chaffe McCall represent LNA in this lawsuit. Also instrumental was New Jourdan, LLC, a company created to serve as a conduit for funds used to purchase the home. See New Jourdan Documents attached as *In globo* **Exhibit "E."** These funds were provided to New Jourdan via a Chaffe McCall check, which was then converted to a Crescent Bank and Trust cashier's check for the Act of Sale. See Crescent Bank Exhibits attached as *in globo* **Exhibit "F."** New Jourdan is a party to the settlement, confidentiality agreement, collateral mortgage (by reference in the settlement documents) and is described therein as having various roles relative to the settlement and purchase of the new home for the Murph Family. New Jourdan's agent for service is Daniel Webb, counsel in this matter for LNA's insurer New York Marine. It's mailing address and domicile address are the same as Mr. Webb's service address which is different from Mr. Webb's law firm address. Mr. Holladay's name appears on numerous documents for reasons unknown, including the Berkley Drive Act of Sale, as counsel for LNA, which was not a party to the Act of Sale. His was a constant presence throughout these proceedings. Both Mr. Holladay and Mr. Fisher are said to have had various communications with

Mr. And Mrs. Murph long after the sale, the result of which is said to be the Murph Family's fear that they would lose their new home to LNA for one or more reasons.  The first results from Mr. Murph's understanding, until recently advised otherwise by counsel, that revelation of his observations during the storm might be a violation of the confidentiality provision, and that he could lose his house.  Mr. Murph hid in his home while plaintiffs tried over the course of weeks to subpoena him for deposition.  Undersigned asked counsel for LNA to advise Mr. Murph that his deposition testimony would not constitute a breach, but counsel did not comply. Nor did LNA or their counsel grant Mr. Murph permission to testify or speak of these matters pursuant to language in the confidentiality agreement stating that such permission would not be unreasonably refused.  See Deposition of Arthur  Murph, Jr., Vol. II, January 29, 2007 at pp. 164- 169. **Exhibit "D."**

The second reason for Mr. Murph's fear resulted from various phone calls made to the Murph Family, upon information and belief by Messrs. Holladay and/or Fisher, long after the Act of Sale took place and Mr. and Mrs. Murph had settled into their new Berkely Drive home.  A condition of the settlement was that LNA would take ownership of the damaged 1739 Jourdan Avenue property.  However, when Mr. and Mrs. Murph originally bought the Jourdan Avenue property in early 2005 from Shirley Priestly, deceased, the Murphs were twelve thousand dollars ($18,680.00) short at closing. See Act of sale and Promissory note attached as *in globo* **Exhibit "G."**  Ms. Priestly accepted a second mortgage and financed this shortfall.  LNA did not know this at the time of the Murph settlement.  According to Jennifer Fernandez, Shirley Priestly's daughter, Mrs. Murph would call in a panic, stating that Chaffe McCall was calling and exerting tremendous emotional stress over the second mortgage.  She expressed great fear that they would lose the new house.  Ms. Fernandez' cell phone records reveal several calls from Chaffe McCall (504-585-7000) during this period.

**Exhibit "H."**

Plaintiffs question the existence of a pattern of oppression, threats, and sequestration of a witness whom LNA, its insurers, and their attorneys perceived as a danger to their claims that the barge floated through an existing breach. Plaintiffs question the existence of a pattern of secrecy concerning the existence of the settlement, and exploitation of Mr. Murph's lack of legal counsel to induce or coerce him to endorse LNA's conduct described above. Plaintiffs perceive great need to investigate further for the benefit of the trier of fact, and in the interests of justice. [1]

## II. THE AREAS OF INFORMATION SOUGHT BY PLAINTIFFS THROUGH THE RULE 30(B)(6) DEPOSITION OF NEW JOURDAN ARE NOT UNDULY BURDENSOME

Both LNA and New Jourdan contend that Plaintiffs should be prohibited from questioning New Jourdan on the eight areas set forth in the Notice of Rule 30(b)(6) deposition on the basis that it "is unduly burdensome and seeks information beyond the scope of discovery allowed by the Court."(Rec. Doc.13288-2, dated May 27, 2008 in No. 05-4182, at 3). However, LaFarge North America does not have standing to object to a subpoena duces tecum issued to a third party when they ""have not alleged any personal right or privilege with respect to that being subpoenaed."" *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir.1979); accord *Garrett v. Blanton*, No. 89-4367, 1993 WL 262697, at *5 (E.D.La. July 6, 1993) (Clement, J.); 9A C.A. Wright & A.R. Miller, Federal Practice and Procedure §§ 2459, at 41 & cases cited nn. 15, 16 (2d ed. 1997) (""Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless

---

[1] Plaintiffs adopt by reference their Plaintiffs' Opposition to Motion for Protective Order and Motion to Quash Filed by Defendant, Lafarge North America, Inc and Harry Holladay, and Barge Plaintiffs' Opposition to Lafarge North America, Inc.'S Motion for Protective Order on Plaintiffs' Second Rule 30(b)(6) Notice to the extent consistent herewith.

the party claims some personal right or privilege with regard to the documents sought.""). See, *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, Not Reported in F.Supp., 1998 WL 186705 (E.D.La.,1998).

Rule 30(b)(6) clearly states that a party may name as the deponent a public or private corporation and describe with reasonable particularity the matters on which examination is requested. F.R.C.P Rule 30(b)(6). Fed. R. Civ. P. 30(b)(6). "Once served with a Rule 30(b)(6) notice, the corporation is compelled to comply, and it may be ordered to designate witnesses if it fails to do so." *United States v. J.M. Taylor*, 166 F.R.D. 356, 360 (M.D. N.C. 1996).

Plaintiffs have appropriately limited the areas of examination to include the duties, functions purposes and nexus of New Jourdan.  In addition, Plaintiffs have appropriately limited the areas of examination to include the involvement and knowledge of New Jourdan relative to the transaction and compromise with Arthur Murph and/or Jeannie Murph in an effort to discover the extent of New Jourdan's involvement in the potential improprieties by LNA, its insurers, and their attorneys.  See Notice of 30(b)(6) deposition, attached for ease of reference as **Exhibit "I."**

LNA and New Jourdan claim that the eight matters on which they purport to depose New Jourdan overlap their prior requests to New Jourdan and third parties. Pursuant to the foregoing claim LNA and New Jourdan invoke Rule 26 and Rule 45.

Rule 26 limits discovery when the Court determines that:

> (i)the discovery sought is *unreasonably* cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive

> (iii)the burden or expense of the proposed discovery outweighs it likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance ofthe proposed discovery in resolving the issues.

Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial. *Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D. Kan. 1993). Federal Rule of Civil Procedure 26(c) governs the granting of a protective order. A protective order should be granted when the moving party establishes "good cause" for the order and "justice requires [a protective order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c). However, before a protective order issues, the moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements. *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990).

In this litigation, LNA and New Jourdan have failed to show a particular and specific need for the this Court's granting of a protective order.

Rule 45(c)(3)(A)(iv) likewise requires a court to quash or modify a subpoena if it "subjects a person to undue burden." Relevance for purposes of the undue burden test is measured according to the standard of Rule 26(b)(1). The individual seeking to quash or modify must meet "the heavy burden of establishing that compliance with the subpoena would be unreasonable and oppressive." *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998).

In the case at hand, LNA and New Jourdan have not met this burden. To bolster their argument, LNA and New Jourdan cite to factors involved in determining whether a subpoena imposes undue burden, as enumerated in *The Travelers Indemnity Company*, which include "the relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden

imposed." *The Travelers Indemnity Company v. Metropolitan Life Insurance Company*, 228 F.R.D. 111, 113 (D.Conn. 2005).

LNA and New Jourdan's reliance on this authority is misplaced. Plaintiffs are not seeking further documentary discovery from New Jourdan, but rather an explanation regarding the documents produced by New Jourdan and third parties relating to subject matters outlined in the Notice of 30(b)(6) deposition. In addition, Plaintiffs seek clarification of the inner workings of New Jourdan and its overall purpose relative to their Rule 45 production and related Rule 45 productions of third parties. Again, Plaintiffs suspect a pattern of secrecy concerning the existence of the settlement, and exploitation of Mr. Murph's lack of legal counsel to induce or coerce him to endorse LNA's conduct described above. Even New Jourdan's registered agent, also counsel for defendant New York Marine, stated during Arthur Murph's deposition that he does not know who New Jourdan's principals are. Plaintiffs perceive great need to investigate further for the benefit of the trier of fact, and in the interests of justice New Jourdan's role in these matters.

Plaintiffs question whether documents produced by New Jourdan as well as those obtained from third parties demonstrate improprieties by LNA, its insurers, New Jourdan, and their attorneys, such as may influence the testimony of Mr. Murph, a witness present at the time and location of the south IHNC floodwall breach. "A party who has received written production is entitled to explanations of the information produced, including how the information was gathered, by whom, whether or not the party adopts that information, where the information came from, whether there is some additional information. See *State Farm Mutual Automobile Ins. v. New Horizont*, 03-6516 (E.D.Pa. 5-7-2008). In this Federal District Court opinion, District Judge cites to an April 2, 2007 hearing on the record where the court denied the motion for protective order and ordered the parties

to proceed with the Rule 30(b)(6) deposition. See Order, Apr. 2, 2007; Hr'g Tr. 28, Apr 2, 2007.

The purpose behind Plaintiffs Rule 30(b)(6) deposition is not merely an exercise in harassment but rather Rule sanctioned discovery, well within the confines of the Federal Rules of Civil Procedure. LNA and New Jourdan have not stated exactly how New Jourdan's attendance of Rule 30(b)(6) deposition is unduly burdensome. LNA and New Jourdan have simply provided some repetitive conclusory contentions that the discovery sought has already been obtained by Plaintiffs. It has not.

LNA and New Jourdan failed to meet their burden of proving that compliance with this 30(b)(6) deposition notice is unduly burdensome and therefore Plaintiffs ask that this Court deny the motion for protective order and the motion to quash the Notice of Rule 30(b)(6) deposition.

### III.  THE SUBJECT MATTERS ON WHICH NEW JOURDAN IS TO BE EXAMINED ARE NOT BEYOND THE SCOPE OF DISCOVERY ALLOWED BY THE COURT

LNA and New Jourdan's next argument in support of their motion is that the discovery Plaintiffs seek from New Jourdan is beyond the scope of discovery allowed by this Court regarding the Murph settlement. Rec. Doc. 13288-2, dated May 27, 2008. Plaintiffs aver that the Court ruled on a Motion to Compel discovery directed at LNA regarding specific Request for Productions 14-16 directed at LNA and not New Jourdan. Rec. Doc. 12605, dated April 21, 2008 in No. 05-4182, at 1 and 12-13. In addition, the Court did not have before it the facts and documentation regarding the actions of New Jourdan, LNA, its insurers, and their attorneys. The information that Plaintiffs seek goes well beyond that of the confidential settlement of the Murphs. Plaintiffs are also seeking relevant evidence of any other settlement agreements conducted by New Jordan and other persons, not for purposes of proving liability for or invalidity of the claims in this case but for other purposes,

including, for example, to evaluate witness', eg. Murph's, possible bias, interest and credibility when he testifies. Discovery of settlement agreements is routinely permitted for such purposes. *Griffin v. Mashariki*, No. 96 CIV 6400, 1997 WL 756914, at 2 (S.D.N.Y. Dec.8, 1997); *Glaze v. G & B Marine, Inc.*, No. 95-1845, 1997 WL 20738, at *1 (E.D.La. Jan.16, 1997) (Fallon, J.); *Securities & Exch. Comm'n v. Downe*, No. 92 Civ. 4092, 1994 WL 23141, at *6 (S.D.N.Y.1994); *Collins v. Coastline Constr., Inc.*, No. 92-16, 1992 WL 125328, at *3 (E.D.La. May 25, 1992) (Schwartz, J.); *Koch Indus., Inc. v. Columbia Gas Transmission Corp.*, No. 89-2156, 1990 WL 72789, at *2 (E.D.La. May 29, 1990); see also, *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, Not Reported in F.Supp., 1998 WL 186705 (E.D.La.,1998).

Also, if New Jordan has knowledge of any statement Lafarge made or knowledge of any other documents that were voluntarily provided to them by defendants' counsel, the work product doctrine has been waived because New Jordan is a nonparty witness, not a lawyer, representative, consultant or agent of defedants. Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.Not Reported in F.Supp., 1998 WL 186705 E.D.La.,1998.

A trial court enjoys wide discretion in determining the scope and effect of discovery. *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539 (5th Cir. 1980), cert. denied, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981).

In light of the suspected pattern of exploitation of Mr. Murph's lack of legal counsel and in light of the suspected pattern of oppression, threats, and sequestration of a witness, Plaintiffs respectfully suggest that New Jourdan should be required to come forward and testify regarding any involvement of its officers, managers, agents and organizers. In a further, example of LNA and New Jourdan's suspicious actions, Plaintiffs submit that during role call at Mr. Murphs deposition of

January 29, 2007, Daniel A. Webb, went on record stating that he represented New York General Marine Insurance Company and not New Jourdan but that he would pass on the information to New Jourdan's principals. When asked who the principals of New Jourdan were, Mr Webb stated he didn't know. See Depo of Arthur Murph, Vol. II, page 169, line 3, attached as **Exhibit "D."** This strikes Plaintiffs as odd because documents obtained by Plaintiffs through a Rule 45 request clearly show Mr. Webb as a member, manager, registered agent and organizer of New Jourdan. See **Exhibit "E."**

Plaintiffs assert that the information sought from New Jourdan is relevant to case at hand and not outside the scope of discovery.

LNA and New Jourdan have failed to prove that information sought from New Jourdan is beyond the scope of discovery allowed by the Court and therefore Plaintiffs ask that this Court deny the motion for protective order and the motion to quash.

### IV.    CONCLUSION

LNA and New Jourdan have failed to meet the heavy burden of proving that compliance with this 30(b)(6) deposition notice is unduly burdensome. In addition, LNA and New Jourdan have failed to prove that the information sought from New Jourdan is beyond the scope of discovery allowed by the Court.

Therefore, Plaintiffs respectfully request that this Court deny LNA and New Jourdan's motion for protective order and their motion to quash the 30(b)(6) deposition of New Jourdan.

Respectfully submitted,

/s/ Brian A. Gilbert,
Brian A. Gilbert, Esq.(21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
    Telephone: (504) 885-7700
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail: bgilbert@briangilbertlaw.com

/s/ Lawrence D. Wiedemann,
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail: lawrence@wiedemannlaw.com,
    karl@wiedemannlaw.com, karen@wiedemannlaw.com,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
    Telephone: 504-834-0646
    e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Adele Rapport
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
    Voice: 202-862-4320
    Cell:   202-549-1454
    Facsimile:  800-805-1065 and 202-828-4130
    e-mail: rick@rickseymourlaw.net,
      adele@rickseymourlaw.net

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
　　　Telephone: (212) 608-4400
　　　Facsimile: (212) 227-5159
　　　e-mail: lwilson@wgdnlaw1.com,
ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
　　　Telephone: 212-869-3500 ext. 235
　　　Facsimile:  212-398-1532
　　　e-mail:   a.fuchsberg@fuchsberg.com,
l.kelmachter@fuchsberg.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 3 day of June, 2008.

\s\Brian A. Gilbert