TRUE TITLE, INC.
[illegible]
Suite 304
New Orleans, Louisiana 70113

# CASH SALE

File No. R051212

February 9, 2006

BY

Hummel Construction, LLC

TO

Jeanne Church Murph and Arthur L. Murph, Jr.

UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF ORLEANS

BE IT KNOWN, that on this 9th day of February, 2006, before me, G. PATRICK HAND, JR., a Notary Public, duly commissioned and qualified in the Parish and State aforesaid, in the presence of the undersigned competent witnesses,

**PERSONALLY CAME AND APPEARED,**

Hummel Construction, L.L.C., a Louisiana Limited Liability Company organized under the Laws of the State of Louisiana, represented herein by Roland Hummel, its Managing Member, duly authorized by virtue of Certificate of Unanimous Consent of the Sole Members of Hummel Construction, L.L.C., said certificate duly recorded under conveyance instrument number 286283 in the records of the Register of Conveyances for the Parish of Orleans, State of Louisiana; Mailing Address: 11143 River Road, New Orleans, Louisiana 70131,

hereinafter referred to as "Vendor" who declared that it does by these presents grant, bargain, sell, convey, transfer, assign, setover, abandon and deliver with all legal warranties and with full substitution and subrogation in and to all the rights and actions of warranty which it has or may have against all preceding owners and vendors, unto:

Jeanne Church wife of and Arthur L. Murph, Jr., both persons of the full age of majority and residents of the Parish of Orleans, State of Louisiana, who declared unto me, Notary, that Jeanne Church Murph has been married but once and then to Arthur L. Murph with whom she presently lives and resides and Arthur L. Murph has been married but twice; first to Dianne Berry from whom he was divorced and secondly to Jeanne Church Murph with whom he presently lives and resides. Mailing Address: 105 Berkley Street, New Orleans, Louisiana 70131,

hereinafter referred to as "Purchaser", here present, accepting and purchasing for themselves, their heirs and assigns, and acknowledging due delivery and possession thereof, and all singular the following described property, to-wit:

THAT CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the **PARISH OF ORLEANS, STATE OF LOUISIANA**, situated in the **FIFTH DISTRICT OF THE CITY OF NEW ORLEANS**, in **SQUARE NUMBER 114** of **AURORA GARDENS SUBDIVISION**, bounded by Berkley Drive, Westchester Street, Kingston Court and Woodland Highway, designated by the **NUMBER TWENTY-SIX** on a survey made by Adloe Orr, Jr., Civil Engineer, dated March 25, 1952, and according to which said lot commences at a distance of one hundred eighty-five feet from the corner of Woodland Highway and Berkley Drive and measures thence eighty five feet front on Berkley Drive, by a depth between equal and parallel lines of one hundred and forty and twenty six one hundredths feet.

Improvements thereon bear the Municipal Number 105 Berkley Drive, New Orleans, LA. 70131

### REDHIBITION CLAUSE

Purchaser hereby acknowledges and recognizes that this sale is in "AS-IS" condition, and accordingly, hereby relieves and releases seller and all previous owners thereof from any and all claims for any vices or defects in said property, whether obvious or latent, know or unknown, easily discoverable or hidden, and particularly for any claim or cause of action for redhibition pursuant to Louisiana Civil Code of Articles 2520, et. seq., or for diminution of purchase price pursuant to Louisiana Civil Code Articles 2541, et seq. Purchaser acknowledges he understands that Louisiana redhibition law enables him to hold seller responsible for any obvious or hidden defects in the property existing on the act of sale date, and that he is waiving that right.

**We acknowledge that the above has been explained to us, that we read and understand the terms and agree to be bound by this waiver of warranty.**

WITNESSES:

_____   Jeanne Church Murph

_____   Arthur L. Murph, Jr.

To have and to hold the above described property unto the said purchasers, their heirs and assigns forever.

This sale is made and accepted for and in consideration of the price and sum of **Two Hundred Thirty Thousand dollars and Zero cents ($230,000.00)** cash, which the said purchaser has well and truly paid in ready and current money to the vendor who hereby acknowledges the receipt thereof and grants full acquittance and discharge thereof.

All taxes up to and including the taxes due and eligible in 2005 are paid, and taxes for the current year have been prorated between the parties hereto.

The parties hereto waive the production of any and all certificates required by law or customarily obtained and relieve and release me, Notary, from any and all responsibility or liability in connection therewith. The parties also agree to indemnify me, Notary, against any penalty or liability incurred as a result of the waiver of certificates.

The parties hereto take cognizance of the fact that no survey has been ordered or requested on the hereinabove described property and hereby relieve and release me, Notary, from any liability in connection therewith.

Vendor represents and warrants: (1) that no other sale or grant of interest in said property has been or will be made by vendor, and (2) that said property is not, and will not become subject to any lien or encumbrance by act of omission of vendor, or claim against vendor, except as otherwise noted or accepted.

**THUS DONE AND PASSED,** in my office in the aforesaid parish and state on the day, month and year first above written, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearers and me, Notary, after reading of the whole.

WITNESSES:

_____

_____
JANE HICKS

Hummel Construction, LLC

By: _____
Roland Hummel, Managing Member

_____

_____
Jeanne Church Murph

_____
Arthur L. Murph, Jr.

_____
G. PATRICK HAND, JR.
Bar Roll I.D. #6499
Notary Public

2006-05008 FEB 17
PARISH OF ORLEANS
ED-CUSTODIAN OF
NOTARIAL RECORDS

TRUE TITLE, INC.
1 Seine Court
Suite 304
New Orleans, Louisiana 70114

| | |
|---|---|
| ACT OF | UNITED STATES OF AMERICA |
| COLLATERAL MORTGAGE | |
| | STATE OF LOUISIANA |
| BY: JEANNE A. CHURCH MURPH | |
| AND | PARISH OF ORLEANS |
| ARTHUR L. MURPH, JR. | |

* * * * * * * * * * * * * * * * * * * * * *

On this 9th day of February 2006 before me, the undersigned Notary Public, duly commissioned and qualified in and for the above jurisdiction and in the presence of the undersigned, competent witnesses, personally came and appeared:

ARTHUR L. MURPH, JR., Social Security #XXX-XX-7947, and JEANNE A. CHURCH MURPH, Social Security #XXX-XX-1803, both persons of the full age of majority and residents of the Orleans Parish, State of Louisiana, who declared under oath to me, Notary, that Jeanne Church Murph has been married but once and then to Arthur L. Murph with whom she presently lives and resides and Arthur L. Murph has been married but twice; first to Dianne Bercy from whom he was divorced and secondly to Jeanne Church Murph with whom he presently lives and resides. Mailing Address: 105 Berkley Street, New Orleans, Louisiana 70131.

("Mortgagor", whether one or more). Mortgagor declared that in order to borrow funds and to secure any obligations of Mortgagor or other parties, now existing or hereafter arising, Mortgagor acknowledges a debt in the principal sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 ($250,000.00) DOLLARS (the "Principal Amount"), evidenced by a promissory note (the "Note"), executed by Mortgagor, dated the date hereof, in the Principal Amount, payable to the order of bearer, due on demand at such place as the holder of the Note may from time to time designate, bearing interest at the rate of twelve (12%) percent per annum from date until paid, and providing that if the Note is referred to an attorney to institute legal proceedings to recover any amount due on the Note, to protect interests of the holder of the Note, or for collection, compromise, or other action, Mortgagor shall pay the fee of such reasonable attorney fees. The Note was paraphed "Ne Varietur" on the date hereof by the undersigned Notary Public for identification with this mortgage and was delivered to Mortgagor, who acknowledges its receipt. Mortgagor declared that a security interest may be granted in the Note to secure any liabilities or obligations of Mortgagor or others, direct or contingent, due or to become due, now existing or hereafter arising, including, without limitations, future advances.

In order to secure the full payment of the Note, with interest, attorneys' fees and collection costs, and to secure the payment of insurance premiums, taxes, keeper's fees, and the performance of all obligations of Mortgagor under this mortgage (collectively, the "Indebtedness"), Mortgagor specially mortgages, pledges, assigns, affects, grants a security interest in, and hypothecates in favor of present and future holders of the Note ("Mortgagee"), whether the Note is held as an original obligation or as security for obligations, the following (collectively, the "Mortgaged Property"):

(1) The following described immovable property:

THAT CERTAIN PIECE OR PORTION OF GROUND, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the PARISH OF ORLEANS, STATE OF LOUISIANA, situated in the FIFTH DISTRICT OF THE CITY OF NEW ORLEANS, in SQUARE NUMBER 114 of AURORA GARDENS SUBDIVISION, bounded by Berkley Drive, Westchester Street, Kingston Court and Woodland Highway, designated by the NUMBER TWENTY-SIX on a survey made by Adloe Orr, Jr., Civil Engineer, dated March 25, 1952, and according to which said lot commences at a distance of one hundred eighty-five feet from the corner of Woodland Highway and Berkley Drive and measures thence eighty five feet front on Berkley Drive, by a depth between equal and parallel lines of one hundred and forty and twenty six one hundredths feet.

Improvements thereon bear the Municipal Number 105 Berkley Drive, New Orleans, LA. 70131

together with all component parts, buildings, constructions, improvements, appurtenances, attachments, rights, ways, privileges, servitudes, advantages, batture and batture rights now or hereafter attached or belonging to, affecting, forming part of, or used in connection with the above described property (collectively, the "Premises");

(2) all present and future rents, fruits, revenues, income and profits accruing from time to time from the use, possession, occupancy or lease of all or any part of the Premises and from Mortgagor's operation thereof including, without limitation, rights to rents, royalties, rentals, shut in payments and other payments which are rents or rentals attributable to Mortgagor's sale, lease or other disposition of his right to explore or develop mineral interests in the Premises (collectively, the "Rents"), and all present and future leases of all or any part of the Premises ("Leases"); and

(3) all incorporeal rights incidental or accessory to the Premises or its use (the "Incorporeal Rights"), including without limitation (i) the right to receive proceeds and awards from the sale, lease, insurance loss, claims for damages, or condemnation, expropriation or other taking of the Premises (the "Proceeds"); (ii) rights under service,

751766_1.DOC

maintenance, or warranty contracts relating to the Premises, and (iii) rights under trade names, patents, or copyrights that are subject to use in connection with the Premises or Mortgagor's business or other activities conducted thereon.

1.         Covenants.

1.1.     The Mortgaged Property shall remain specially mortgaged, pledged, affected and hypothecated to, and subject to a security interest in favor of, Mortgagee until the full and final payment of the Indebtedness and cancellation of this Mortgage from the public records. Mortgagor shall not sell, transfer, mortgage, assign, pledge, alienate or create any security interest in the Mortgaged Property. In no event shall any such act by Mortgagor, whether or not authorized by Mortgagee, prejudice the rights of Mortgagee under this mortgage.

1.2.     Mortgagor shall make all repairs, additions, and improvements necessary to maintain the Mortgaged Property in good condition and to prevent any impairment of the security of this mortgage. If Mortgagor fails to maintain the Mortgaged Property in good condition, Mortgagee may, at its option, cause the Mortgaged Property to be maintained in good condition at Mortgagor's cost.

1.3.     (a) Upon request after default in performance of an obligations secured hereby, Mortgagor shall keep the Mortgaged Property constantly insured against risk of loss by fire, wind, storm, flood, tornado, theft, and all such other hazards, casualties, and contingencies as may be deemed necessary by Mortgagee. The insurance shall be in such amounts and shall be issued by such companies as are acceptable to Mortgagee. All policies of insurance shall be delivered to Mortgagee, shall contain a loss payable clause in favor of Mortgagee, and shall be in a form acceptable to Mortgagee. All renewal policies shall be delivered to Mortgagee at least fifteen (15) days prior to the expiration date of the existing policy.

(b) The insurance policies required by this mortgage shall provide that any loss payable to Mortgagee and Mortgagor, as their respective interests may appear, shall be payable to Mortgagee notwithstanding any act or omission of Mortgagor or of any other party, which would otherwise result in a forfeiture of such insurance, and that policies shall not be cancelled even for nonpayment of premium or the coverage reduced without at least thirty (30) days prior written notice to Mortgagee.

(c) Mortgagor shall promptly notify Mortgagee of any insured loss. If Mortgagee receives any sum of money from any insurance policy affecting the Mortgaged Property, Mortgagee may, at its option and in such manner as it may determine, (i) retain the money and apply it toward the payment of any obligations secured by this mortgage or by a security interest in the Note with Mortgagee having the right to impute the money among the obligations in any manner specified by Mortgagee, or (ii) pay all or part of the money, under such conditions as Mortgagee may determine, to Mortgagor to enable Mortgagor to repair or restore the Mortgaged Property or use the money for any other purpose satisfactory to Mortgagee, all without prejudice to, and without affecting the lien of, this mortgage.

1.4.     Mortgagor shall pay promptly when due all taxes, local and special assessments, and governmental and utility charges (collectively, the "Taxes") imposed, assessed, or levied on all or any part of the Mortgaged Property, and Mortgagor shall furnish Mortgagee evidence of the payment of the Taxes. If Mortgagor for any reason does not pay promptly when due any of the Taxes, Mortgagee is hereby authorized to pay such unpaid Taxes with full subrogation to all rights of all authorities imposing such Taxes by reason of Mortgagee's payment, and Mortgagor shall promptly reimburse Mortgagee on demand for Taxes paid by Mortgagee. Upon request after default in performance of an obligations secured hereby, Mortgagor shall pay to Mortgagee an amount equal to the estimated annual Taxes and the premiums for the insurance required by this Mortgage, so that Mortgagee shall have sufficient funds available to pay such Taxes and insurance premiums, and Mortgagor shall, at the option of Mortgagee, pay such amounts either thirty (30) days before they become due, or in equal monthly payments in advance, with such payments commencing one (1) month after the date of this mortgage.

1.5.     Mortgagor shall pay promptly when due all of Mortgagor's obligations that might, if unpaid, result in or permit the creation of a lien or encumbrance on all or any part of the Mortgaged Property. Mortgagor shall do everything necessary to preserve the priority of this mortgage without any expense to Mortgagee. Mortgagor shall notify Mortgagee immediately if any lien is filed against any part of the Mortgaged Property or if any part of the Mortgaged Property is seized, attached, or levied against. Mortgagor shall immediately obtain the release of the Mortgaged Property from any seizure, lien, or attachment, and if Mortgagor fails to do so, Mortgagee may, at its option, obtain the release of the Mortgaged Property at Mortgagor's expense.

1.6.     (a) Mortgagor shall comply with all laws, ordinances, regulations, covenants, conditions, and restrictions affecting the Mortgaged Property, its use, construction, or maintenance, including, without limitation, all Environmental Laws. As used in this Mortgage, "Environmental Laws" shall mean any and all federal, state or local laws, rules, regulations, orders, permits, or ordinances involving the environment including, but without limitation, the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq., the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9607 et seq., as amended by the Superfund Amendment and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (codified as amended in various sections of 42 U.S.C.), the Hazardous Materials Transportation Act, Pub. L. No. 93-633, 88 Stat. 2156 (codified as amended in various sections of 46 U.S.C.); the Clean Water Act, 33 U.S.C. §§ 1251 et seq., the Clean Air Act, 42 U.S.C. §§ 7401 et seq., the Toxic Substances Control Act, 15 U.S.C. §§ 2601 et seq., Article 2315.3 of the Louisiana Civil Code, Statewide Order 29-B by Office of Conservation, Department of Natural Resources, State of Louisiana, the Louisiana Abandoned Oilfield Waste State Law (La. R.S. 30:71, et seq.), and the Louisiana Environmental Quality Act (La. R.S. 30:2001, et seq.), as they now exist or may subsequently be modified, supplemented or amended. Mortgagor warrants that neither Mortgagor, any occupant of the Mortgaged Property, or the Mortgaged Property is in violation of or subject to any existing, pending, or threatened investigation or inquiry by any governmental authority or to any remedial

751766_1.DOC

obligations under any of the Environmental Laws.

(b) Mortgagor shall forever indemnify, defend and hold harmless Mortgagee, its directors, officers, employees and agents from and against all harms, including, without limitation, damages, punitive damages, liabilities, losses, demands, claims, costs, recovery actions, lawsuits, administrative proceedings, orders, response costs, compliance costs, investigation expenses, consultant fees, attorneys' fees and litigation expenses arising from (i) the operation of any of the Environmental Laws, and (ii) the violation by Mortgagor, any occupant of the Mortgaged Property, or the Mortgaged Property of any of the Environmental Laws. Mortgagor shall pay all costs and expenses incurred by Mortgagee to enforce the provisions of this paragraph, including, without limitation, attorneys' fees and litigation expenses. The provisions of this paragraph shall survive the cancellation of this mortgage and shall remain in full force and effect beyond the expiration of any applicable statute of limitations and payment or satisfaction in full of any single claim of Mortgagee within the scope of the provisions of this paragraph.

1.7. Mortgagor shall not remove any part of the Mortgaged Property from its present location without Mortgagee's prior written consent.

1.8. Mortgagor shall permit Mortgagee and its agents to have access to, and to inspect the Mortgaged Property at all reasonable times.

1.9. Mortgagor warrants that Mortgagor lawfully owns and possesses the Mortgaged Property, that the Mortgaged Property is registered in Mortgagor's name, that the Mortgaged Property has not been alienated by Mortgagor, and that there are no mortgages, liens, judgments or encumbrances against the Mortgaged Property except:

1.10. The pledge and assignment of and security interest in the Leases and Rents provided for herein shall secure all Indebtedness, all liabilities and obligations for which the Note has been given as security, and all other obligations of Mortgagor to Mortgagee, now existing or hereafter arising, up to the maximum amount of five (5) times the Principal Amount. Mortgagee shall have full subrogation to Mortgagor's rights to all Leases and Rents.

1.11. If Mortgagor fails to perform any obligation under this mortgage, then the Mortgagee may, at its option, perform such obligation, and the cost of such performance shall be reimbursable to Mortgagee upon demand and added to the amount secured by this mortgage, provided that the maximum amount to be secured by this mortgage shall not, at any one time, exceed five times the Principal Amount. Authorizations granted to the Mortgagee to pay or perform obligations on behalf of the Mortgagor, or to enforce or collect Leases, Rents and Proceeds, are solely for the benefit of Mortgagee, to be exercised in Mortgagee's sole discretion, and shall be performed at the sole risk and expense of Mortgagor. Mortgagee shall have no liability to Mortgagor, or any other party, either directly or by set-off or compensation, for failure to perform such obligations or to enforce or collect Leases, Rents or Proceeds, or for performing in a manner that causes damage to the Mortgagor.

2. Default and Remedies.

2.1. The occurrence of any one or more of the following events shall constitute a default (a "Default") under this mortgage:

(a) failure to pay promptly on demand any principal or interest due on the Note;

(b) failure to pay promptly on demand any sums advanced by Mortgagee for the payment of insurance premiums, Taxes, the cost of maintaining the Mortgaged Property in good repair, or the cost of obtaining the release of the Mortgaged Property from any seizure, lien, or attachment;

(c) failure by Mortgagor to observe or perform any of Mortgagor's covenants, agreements, and obligations under this mortgage;

(d) the inaccuracy of any warranty made by Mortgagor to Mortgagee in this mortgage or otherwise;

(e) a default in the payment or performance of any obligation secured by a security interest affecting the Note, or

(f) the seizure, attachment or sequestration of any part of the Mortgaged Property.

2.2. If a Default occurs, Mortgagee may, at Mortgagee's option, without notice to Mortgagor, declare the Indebtedness and all obligations for which the Note is given as security to be immediately due and payable, and may immediately exercise all remedies provided under this mortgage or by law. For purposes of executory process, Mortgagor confesses judgment in favor of Mortgagee for the full amount of the Indebtedness. Mortgagee may cause all or any part of the Mortgaged Property to be seized and sold under executory or other legal process without appraisement, which is hereby expressly waived, as an entirety or in parcels, as Mortgagee may determine, to the highest bidder for cash, or on such terms as are acceptable to Mortgagee.

2.3. To the extent permitted by law, Mortgagor hereby expressly waives (a) the benefit of appraisement provided for in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring such benefits; (b) the demand and three (3) days delay accorded by Articles 2639 and 2721, Louisiana Code of Civil Procedure; (c) the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d) the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; (e) the benefit of the other provisions of Articles 2331, 2722, and 2723, Louisiana Code of Civil Procedure; (f) the benefit of the provisions of any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above; (g) all rights of

751766_1.DOC

- 3 -

division and discussion with respect to any obligation secured by this mortgage; and (h) all homestead and other exemptions relating to the Mortgaged Property.

2.4. In addition to all of the other rights and remedies of Mortgagee under this mortgage, if a Default occurs, Mortgagee may, at Mortgagee's option, without notice to Mortgagor, obtain an environmental site assessment for the Mortgaged Property prepared by an environmental consulting firm selected by Mortgagee and an appraisal of the Mortgaged Property prepared by an appraiser selected by Mortgagee. Mortgagor shall promptly on demand reimburse Mortgagee for the cost of the assessment and appraisal and the cost thereof shall be secured by this Mortgage. Mortgagor shall grant and hereby irrevocably grants to Mortgagee, and any consulting firms and appraisers hired by Mortgagee, access to the Mortgaged Property for purposes of preparing and obtaining all assessments and appraisals.

2.5. Pursuant to Louisiana Revised Statutes 9:5136, et seq., Mortgagor hereby designates Mortgagee, or any employee, agent, or other person named by Mortgagee at the time any seizure of the Mortgaged Property is effected by Mortgagee to serve as a keeper of the Mortgaged Property pending the judicial sale thereof. The keeper's fees shall be determined by the Court before which the proceedings are pending, and the payment of such fees shall be secured by this mortgage.

2.6. If any proceedings are instituted to enforce this mortgage by executory process or otherwise, all declarations of fact made by authentic act before a notary public in the presence of two witnesses by a person declaring that such facts lie within that person's knowledge shall constitute authentic evidence of such facts for the purpose of executory process.

3. Other Provisions.

3.1. Possession of the Note at any time by Mortgagor shall not in any manner extinguish the Note or this mortgage, and Mortgagor shall have the right to issue and reissue the Note one or more times without in any manner extinguishing or affecting the obligation on the Note or the security of this mortgage.

3.2. The parties to this mortgage waive the production of mortgage, tax and assessment certificates and all other certificates or researches, and release the undersigned Notary Public and the surety on the undersigned Notary Public's bond from all resulting responsibility and liability.

3.3. It is expressly agreed that any and all stipulations, agreements, warranties, and covenants by Mortgagor in favor of Mortgagee contained in this mortgage, and all rights, powers, and privileges conferred in this mortgage on Mortgagee by any of the provisions of this mortgage shall inure to and be for the benefit of and may be exercised by Mortgagee, its successors, and assigns. All covenants and agreements contained in this mortgage to be observed or performed by Mortgagor shall be binding upon Mortgagor and upon Mortgagor's heirs, administrators, executors, successors, and assigns, as well as upon any person, firm, or corporation hereafter acquiring title to the Mortgaged Property, or any part thereof, by, through, or under Mortgagor, and the word "Mortgagor," unless the context otherwise requires, shall also mean and include the heirs, administrators, executors, successors, and assigns of Mortgagor, and any other person, firm, or corporation acquiring title to any of the Mortgaged Property by, through, or under Mortgagor.

3.4. If any provision of this mortgage is invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this mortgage.

AND NOW TO THESE PRESENTS personally came and appeared _Harry R Hollady_, who on behalf of Mortgagee hereby accepts this mortgage.

THUS DONE AND PASSED, in multiple originals at New Orleans, Louisiana, on the day, month, and year first above written, in the presence of the undersigned competent witnesses, who sign their names with the appearers and the undersigned Notary Public.

WITNESSES:

Printed Name: _Colone Hummel_

Printed Name: _Jane Hicks_

MORTGAGOR:

_Arthur L. Murph, Jr._
ARTHUR L. MURPH, JR.

_Jeanne A. Church Murph_
JEANNE A. CHURCH MURPH

INTERVENOR:

Printed Name: _Harry R Hollady_

NOTARY PUBLIC
Printed Name: _Patrick H. Williams_
Bar No. 0477

751766_1.DOC

- 4 -

| A. U.S. Department of Housing and Urban Development | | B. Type of Loan | | |
|---|---|---|---|---|
| | | 1. [ ] FHA | 2. [ ] FMHA | 3. [ ] Conv. Unins. |
| | | 4. [ ] VA | 5. [ ] Conv. Ins. | [X] Other. |
| | | 6. File Number R051212 | | 7. Loan Number |
| Settlement Statement | | P. Mortgage Ins. Case No. | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing: they are shown here for information purposes and are not included in the totals.

D. Name of Borrower: Jeanne Church Murph, 105 Berkley Street, New Orleans, LA 70131
Arthur L. Murph

E. Name of Seller: Hummel Construction, LLC, 11143 River Road, New Orleans, LA 70131     TIN: 72-1291919

F. Name of Lender: Cash Sale

G. Property Location: Lot 26, Block 114, Fifth District, Aurora Gardens Subdivision
105 Berkley, New Orleans, LA 70131

H. Settlement Agent: TRUE TITLE, INC. (504) 368-1118     TIN: 72-1407076
Place of Settlement: One Seine Court, Suite 304, New Orleans, LA 70114

I. Settlement Date: 2/9/2006     Proration Date: 2/9/2006

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross amount due from borrower: | | 400. Gross amount due to seller: | |
| 101. Contract sales price | 230,000.00 | 401. Contract sales price | 230,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 1,566.50 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance: | | Adjustments for items paid by seller in advance: | |
| 106. City/town taxes  2/9/2006 to 1/1/2007 | 669.86 | 406. City/town taxes  2/9/2006 to 1/1/2007 | 669.86 |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross amount due from borrower: | 232,236.36 | 420. Gross amount due to seller: | 230,669.86 |
| 200. Amounts paid by or in behalf of the borrower: | | 500. Reduction in amount due to seller: | |
| 201. Deposit or earnest money | 5,000.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | 11,425.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. Deposit or earnest money | 5,000.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller: | | Adjustments for items unpaid by seller: | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total paid by/for borrower: | 5,000.00 | 520. Total reduction in amount due seller: | 16,425.00 |
| 300. Cash at settlement from/to borrower: | | 600. Cash at settlement to/from seller: | |
| 301. Gross amount due from borrower (line 120) | 232,236.36 | 601. Gross amount due to seller (line 420) | 230,669.86 |
| 302. Less amount paid by/for borrower (line 220) | 5,000.00 | 602. Less total reduction in amount due seller(line 520) | 16,425.00 |
| 303. CASH (X)FROM ()TO BORROWER | 227,236.36 | 603. CASH ()FROM (X)TO SELLER | 214,244.86 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I and on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

SELLER INSTRUCTION - If this real estate was your principal residence, file form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide TRUE TITLE, INC. (504) 368-1118 with your correct taxpayer identification number.

If you do not provide TRUE TITLE, INC. (504) 368-1118 with your correct taxpayer identification number, you may be subject to civil or criminal penalties.

Hummel Construction, L.L.C.

By: Roland Hummel, Managing Member

| Line | Description | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| 700. | Total sales/broker commission based on : $230,000.00 @ 4.5000% = $10,350.00 | | | |
| | Division of commission (line 700) as follows: | | | |
| 701. | $10,350.00 | to Prudential Gardner | | |
| 702. | | | | |
| 703. | Commission paid at settlement $10,350.00 | | | 10,350.00 |
| 704. | | | | |
| 800. | Items payable in connection with loan | | | |
| 801. | Loan origination fee | | | |
| 802. | Loan discount | | | |
| 803. | Appraisal fee | | | |
| 804. | Credit report | | | |
| 805. | Lender's inspection fee | | | |
| 806. | Mortgage insurance application fee | | | |
| 807. | Assumption fee | | | |
| 808. | Underwriting Fee | | | |
| 809. | Flood Certification Fee | | | |
| 810. | Tax Service Fee | | | |
| 811. | Doc. Prep. fee | | | |
| 812. | Processing fee | | | |
| 813. | | | | |
| 814. | Yield Spread Premium | | | |
| 900. | Items required by lender to be paid in advance | | | |
| 901. | Interest from | | | |
| 902. | Mortgage insurance premium for | | | |
| 903. | Hazard insurance premium for | | | |
| 904. | Flood Insurance for | | | |
| 905. | VA Funding Fee | | | |
| 1000. | Reserves deposited with lender | | | |
| 1001. | Hazard insurance | | | |
| 1002. | Mortgage insurance | | | |
| 1003. | City property taxes | | | |
| 1004. | County property taxes | | | |
| 1005. | Annual assessments (maint.) | | | |
| 1006. | Flood Insurance | | | |
| 1007. | | | | |
| 1008. | | | | |
| 1009. | Aggregate Adjustment | | | |
| 1100. | Title charges | | | |
| 1101. | Settlement or closing fee | | | |
| 1102. | Abstract or title search | to True Title | 200.00 | |
| 1103. | Title examination | | | |
| 1104. | Title insurance binder | | | |
| 1105. | Document preparation | to TRUE TITLE, INC. | 150.00 | |
| 1106. | Notary fees | | | |
| 1107. | Attorney's fees to | TRUE TITLE, INC. | 150.00 | |
| | includes above items no.: | | | |
| 1108. | Title insurance | to First American | 916.50 | |
| | includes above items no.: | | | |
| 1109. | Lender's coverage | | | |
| 1110. | Owner's coverage | $230,000.00   $916.50 | | |
| 1111. | Cancellation of 1 mortgage | | | |
| 1112. | Curative work | | | |
| 1113. | Closing Protection Ltr. | | | |
| 1200. | Government recording and transfer charges | | | |
| 1201. | Recording fees: | Deed $150.00 | 150.00 | |
| 1202. | City/county tax/stamps: | | | |
| 1203. | State tax/stamps: | | | |
| 1204. | Transaction taxes | to City of New Orleans | | 325.00 |
| 1205. | 2006 Taxes | to City of New Orleans | | 750.00 |
| 1206. | | | | |
| 1300. | Additional settlement charges | | | |
| 1301. | Survey/elevation | | | |
| 1302. | Pest inspection | | | |
| 1303. | Courier Fee | | | |
| 1304. | Home warranty | | | |
| 1305. | Recording Services | | | |
| 1400. | Total settlement charges (entered on lines 103, section J and 502, section K) | | 1,566.50 | 11,425.00 |

CERTIFICATION: I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

*Jeanne Church-Murph*
Jeanne Church-Murph

*Arthur L. Murph*
Arthur L. Murph

Hummel Construction, L.L.C.
*Roland Hummel*
By: Roland Hummel, Managing Member

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will disbursed by the undersigned as part of the settlement of this transaction.

TRUE TITLE, INC. (504) 368-1118                                    Date

**SELLER'S AND/OR PURCHASER'S STATEMENT** Seller's and Purchaser's signature hereon acknowledges his/their approval of tax prorations and signifies their understanding that prorations were based on taxes for the preceding year, or estimates for the current year, and in the event of any change for the current year, all necessary adjustments must be made between Seller and Purchaser; likewise any default in delinquent taxes will be reimbursed to Title Company by the Seller.

Title Company, in its capacity as Escrow Agent, is and has been authorized to deposit all funds it receives in this transaction in any financial institution, whether affiliated or not. Such financial institution may provide Title Company computer accounting and audit services directly or through a separate entity which, if affiliated with Title Company, may charge the financial institution reasonable and proper compensation therefore and retain any profits therefrom. Any escrow fees paid by any party involved in this transaction shall only be for checkwriting and input to the computers, but not for aforesaid accounting and audit services. Title Company shall not be liable for any interest or other charges on the earnest money and shall be under no duty to invest or reinvest funds held by it at any time. Sellers and Purchasers hereby acknowledge and consent to the deposit of the escrow money in financial institutions with which Title Company has or may have other banking relationships and further consent to the retention by Title Company and/or its affiliates of any and all benefits (including advantageous interest rates on loans) Title Company and/or its affiliates may receive from such financial institutions by reason of their maintenance of said escrow accounts.

The parties have read the above sentences, recognize that the recitations herein are material, agree to same, and recognize Title Company is relying on the same.

Purchasers/Borrowers

_Jeanne Church-Murph_ (signature)
Jeanne Church Murph

_Arthur L. Murph_ (signature)
Arthur L. Murph

Sellers

Hummel Construction, L.L.C.

By: _Roland Hummel_ (signature)
Roland Hummel, Managing Member

**WARNING:** It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18: U.S. Code Section 1001 and Section 1010.