```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA


IN RE: KATRINA CANAL BREACHES    *  CIVIL ACTION
                                 *  NO. 05-4182
PERTAINS TO: BARGES              *  Consolidated
                                 *  SECTION "K(2)"
Boutte v. Lafarge       05-5531  *
Mumford v. Ingram       05-5724  *  JUDGE DUVAL
Lagarde v. Lafarge      06-5342  *
Perry v. Ingram         06-6299  *  MAG. WILKINSON
Benoit v. Lafarge       06-7516  *
Parfait Family v. USA   07-3500  *
Lafarge v. USA          07-5178  *
   *   *   *   *   *   *   *   *   *   *   *


                    (V O L U M E   II)
         Deposition of ARTHUR LEE MURPH, JR.,
given at Chaffe McCall, L.L.P., 2300 Energy
Centre, 1100 Poydras Street, New Orleans,
Louisiana 70163-2300, on January 29th, 2007.


REPORTED BY:
         JOSEPH A. FAIRBANKS, JR., CCR, RPR
         CERTIFIED COURT REPORTER #75005
```

(Stamp: ORIGINAL)

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101          619 JEFFERSON HIGHWAY, SUITE 2G
METAIRIE, LA 70005                    BATON ROUGE, LA 70806
PHONE (504) 219-1993                  (225) 922-4527

MR. WALKER:

Okay. Secondly, with respect to a waiver, Lafarge does of the agree to waive any of the terms of the confidential agreement nor the settlement agreement. The redacted settlement agreement has been produced, the document speaks for itself, and Lafarge does not waive the terms of that document.

MR. GILBERT:

All right. And I'm going to join in Mr. Richthofen 's request, and I'm going to specifically, for the record, cite to the language in the confidentiality portion of the agreement which says that the Murphs agreed that in the event they should be compelled by legal process, and I believe that would include a subpoena, to reveal the terms of this receipt and release and settlement agreement, they shall first obtain the written permission of Lafarge North America, Inc., New Jourdan, LLC., and New

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1      Berkley, LLC, which permission shall
 2      not be unreasonably withheld.  Now, if
 3      there are representatives here of
 4      these entities and there is no reason
 5      to withhold that, I would join in
 6      Mr. Richthofen's request that
 7      Mr. Murph be allowed to speak about
 8      the terms of the settlement.
 9 MR. WALKER:
10      Well, again, on behalf of
11      Lafarge, Lafarge will not waive the
12      confidentiality terms of the agreement
13      to allow Mr. Murph to discuss the
14      terms of the agreement.  The agreement
15      speaks for itself as unredacted, Judge
16      Wilkinson has a complete and
17      unredacted version, and he can make a
18      determination beyond any that can be
19      made here today if you wish the bring
20      the matter up to the judge, other than
21      to have Mr. Murph and Lafarge will
22      acknowledge the existence of this
23      agreement.  Other than that, the terms
24      and conditions and other items that
25      are not self-evident from the document
```

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1  itself we do not waive. As far as New
2  Jourdan and Berkeley, we do not
3  represent them.
4  MR. GILBERT:
5      Okay. We acknowledge our
6  understanding of what you've just said
7  and we do reserve rights to bring this
8  matter and any other matters ancillary
9  to this to the Court's attention to
10 be addressed on the merits, if
11 necessary.
12     And what I'm going to do now is
13 I'm going to ask, if there are any
14 other entities here who are parties to
15 the settlement agreement, if they will
16 give their consent. If there are any
17 other representatives of any of the
18 other entities that are parties to
19 this agreement, I'm asking if they
20 would speak up for the record and
21 either give their consent or refuse.
22 MR. WALKER:
23     Specifically, which entities?
24 MR. GILBERT:
25     Let the record reflect that

1    there's utter silence in the room
2    right now and that no other
3    representative of any other entity
4    that has responded to our request.
5    MR. WALKER:
6         Specifically, you're talking
7    about New Jourdan and Berkley.
8    MR. GILBERT:
9         New Jourdan, Berkley -- there are
10   a number of entities that are named in
11   this settlement agreement as to whom
12   there's purportedly been a settlement
13   with the Murph family.
14   MR. WALKER:
15        I think for clarity of the record
16   you should name them, because I don't
17   think your characterization is
18   necessarily correct.  So New Jourdan,
19   New Berkley, and what other entities
20   are you referring to?
21   MR. GILBERT:
22        On Page 4 of the settlement
23   agreement there is an agreement that
24   the Murphs agreed to indemnify and
25   hold harmless New Jourdan, LLC and its

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS
315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993
619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

1  assignee and well as any other
2  released party as defined in Section 2
3  below.  And in Section 2.1, there's
4  language whereby the Murphs do release
5  and forever discharge Lafarge North
6  America, Ingram Barge Company, New
7  Jourdan, LLC, New Berkley, LLC, their
8  assigns, representatives, insurers, et
9  cetera.
10         And so I'm asking today if there
11 are any other entities that are party
12 to this agreement who will give
13 permission.
14 MR. WEBB:
15         Counsel, I'm Dan Webb.  I do not
16 represent New Jourdan, LLC.  I
17 represent New York Marine General
18 Insurance Company.  With respect to
19 New Jourdan, LLC, this is the first
20 request that it is aware of, and I can
21 pass it on to its principals, but I
22 have no idea what position its
23 principals would take.
24 MR. GILBERT:
25         Who are the principals of New

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1              Jourdan, LLC?
 2         MR. WEBB:
 3              Don't know.
 4         MR. GILBERT:
 5              Well, let's go for forward and
 6         let's see what we can accomplish.
 7  EXAMINATION BY MR. GILBERT:
 8         Q.   Mr. Murph, I introduced myself a few
 9  minutes ago.  My name is Bryan Gilbert.  I
10  represent residents of the Lower Ninth Ward,
11  parts of St. Bernard Parish in a lawsuit that's
12  been filed against companies that might be
13  responsible for a barge breaking the Industrial
14  Canal floodwall and causing flooding.  Those
15  allegations are not proven, but it is what we
16  allege.
17              You began your deposition
18  December 17th, 2007, if you recall, and there
19  are a few reasons for bringing you here today.
20  By way of explanation, let me just say it's to
21  clarify some matters that we began to talk
22  about in that earlier session, to speak about
23  some matters that you were unsure whether you
24  could talk about without first getting advice
25  of counsel, and to continue the deposition into
```

```
 1        Q.   But you settled with them.
 2        A.   Yes.
 3        Q.   Okay.  Do you know why New Jourdan's
 4   name is on here?  On this release agreement?
 5        A.   No.
 6        Q.   Do you know why New Berkley is on this
 7   release agreement?
 8        A.   No.
 9        Q.   Do you know why Ingram is on this
10   release agreement?
11        A.   No.
12        Q.   The agreement shows that you signed it
13   on February 9th, 2006.  Did you know on that
14   date of a lawsuit going on against any of these
15   companies?
16        A.   No.
17        Q.   The date you signed this, that wasn't
18   the first time you met with Mr. Walker and Mr.
19   Fisher, correct?
20        A.   I think it is.
21        Q.   But had you spoken with them before?
22        A.   I may have, I don't know.
23        Q.   Did any lawyers for Lafarge give you
24   any advice?
25        A.   No.
```

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1     Q.   Did any lawyer give you any advice
 2  concerning this agreement?
 3     A.   No.
 4     Q.   What about Mrs. Murph, did she go get
 5  advice from any lawyer concerning this
 6  agreement?
 7     A.   She may have.  I don't know.
 8     Q.   Did any lawyer ever explain to you
 9  what every one of these paragraphs and
10  sentences meant in this agreement and what --
11  how it might affect your rights by signing it?
12     A.   I don't know.  They may have.
13     Q.   They may have, but you don't remember?
14     A.   I don't remember.
15     Q.   Did you tell Lafarge or any of their
16  attorneys or anybody acting on behalf of
17  Lafarge or Ingram or any of the parties that
18  you settled with, did you tell them what you
19  wanted this settlement to say?
20     A.   No.
21     Q.   Did anybody acting on your behalf tell
22  them what you wanted this settlement to say?
23     A.   No.
24     Q.   Did you get to look at this before you
25  signed it --
```

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101          619 JEFFERSON HIGHWAY, SUITE 2G
METAIRIE, LA 70005                    BATON ROUGE, LA 70806
PHONE (504) 219-1993                  (225) 922-4527

```
1      A.    Yes.
2      Q.    -- or just that day?
3      A.    Yes.
4      Q.    How soon before -- when did you get to
5  see a copy of it before signing it?  How long
6  before you signed it?
7      A.    The same day.
8      Q.    The same day?  Did you take it to a
9  lawyer that day and say, hey, what do you think
10 about this?
11     A.    No.
12     Q.    Why not?
13     A.    For what?
14     Q.    Well -- so I interpret your answer to
15 mean that you didn't think that there was any
16 reason to see a lawyer.
17     A.    No.
18     Q.    Is that correct?
19     A.    Yes.
20     Q.    Did you trust that the lawyers that
21 were putting this together were going to
22 protect you?
23     A.    I don't know.
24     Q.    You don't know whether you did?
25     A.    No.
```

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1  And that's the Prudential Gardner Buy/Sell
 2  Agreement with a fax cover from Jane Hicks, and
 3  it looks like a couple of internal documents
 4  from TJ Real Estate Services, which is True
 5  Title.
 6          (Exhibit 3(a) was marked for
 7  identification and is attached hereto.)
 8  EXAMINATION BY MR. GILBERT:
 9      Q.   All right.  Before I forget,
10  Mr. Murph, on the last page of the agreement,
11  the settlement agreement, there's a document
12  called an affidavit which I'm showing to you
13  which is marked as LNA000705.
14          Is that your signature on it?
15      A.   Yes.
16      Q.   Did you tell anybody what to say in
17  this affidavit?
18      A.   No.
19      Q.   You didn't dictate something to
20  somebody and say, these are my words, put them
21  in an affidavit?
22      A.   No.
23      Q.   How did you come to sign this
24  affidavit?
25      A.   It's part of the settlement agreement.
```

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS
315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993
619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1       Q.    Okay.  Did you raise your hand and "I
 2  swear under oath" and all that?
 3       A.    I don't remember.  No, I don't know.
 4  I can't remember if I did or didn't.
 5       Q.    All right.  We're going to attach the
 6  entirety of the settlement agreement, which is
 7  LNA694 through 705 --
 8            MR. RICHTHOFEN:
 9                  Which is a redacted --
10            MR. GILBERT:
11                  -- which is a redacted copy of
12            it, because that's all we got, as
13            4(a).
14            (Exhibit 4(a) was marked for
15  identification and is attached hereto.)
16  EXAMINATION BY MR. GILBERT:
17       Q.    What happened to 1739 Jourdan Avenue?
18  Do you still own that?
19            (Whereupon the deponent conferred with
20  counsel off the record.)
21       A.    No.
22  EXAMINATION BY MR. GILBERT:
23       Q.    Who owns that now?
24       A.    I don't know.
25       Q.    How did it come to be that you don't
```

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101          619 JEFFERSON HIGHWAY, SUITE 2G
METAIRIE, LA 70005                    BATON ROUGE, LA 70806
PHONE (504) 219-1993                  (225) 922-4527

1  this correctly:  At no time before you signed
2  what has been identified as the agreement with
3  Lafarge, which is 4(a), at no time before you
4  signed that document did you have an attorney
5  representing your interests review that
6  document, is that correct?
7       A.   No.
8       Q.   When you signed the document that's
9  identified as 4(a) --
10      A.   Right.
11      Q.   -- you said it was in this building.
12 Is that right?
13      A.   Right.
14      Q.   Was that signing of the document
15 videotaped?
16      A.   I don't think.
17      Q.   And prior to arriving at the building
18 on the day that you signed the document
19 identified as 4(a), you had never been shown a
20 copy of the document --
21      A.   No.
22      Q.   -- prior to that time.
23           And similarly, when you signed the
24 papers dealing with Berkley which are
25 identified as 2(a), the Act of Sale and the

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS

315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993

619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1   Collateral Mortgage, had you ever had those
 2   documents looked at by a lawyer before you
 3   signed them?
 4        A.   No.
 5        Q.   Are you making any sort of payments on
 6   a note for Berkley?
 7        A.   No.
 8        Q.   Were you aware that you have a
 9   mortgage on -- that obligates you on the public
10   records for Berkley?
11        A.   No.
12        Q.   Is this the first time you're learning
13   of that, sir?
14        A.   Yes.
15        Q.   Why do you believe that you do not
16   currently own Jourdan Avenue -- what is it,
17   1739 Jourdan Avenue?
18        A.   Yes.
19        Q.   Yes.  Why do you believe that you
20   don't currently own it or that you may not
21   currently own that property?
22        A.   Well, I don't know.
23        Q.   Well, let's see.  At the time Katrina
24   hit, you were the owner of the property, is
25   that right?
```

JOHNS, PENDLETON & ASSOCIATES, INC.
CERTIFIED COURT REPORTERS
315 METAIRIE ROAD, SUITE 101
METAIRIE, LA 70005
PHONE (504) 219-1993
619 JEFFERSON HIGHWAY, SUITE 2G
BATON ROUGE, LA 70806
(225) 922-4527

```
 1                I understand.
 2         MR. WALKER:
 3                Which he's already answered for
 4         Mr. Gilbert twice.
 5         MR. RICHTHOFEN:
 6                I'm sorry.  Just for clarity, for
 7         my client's safety, I just want to
 8         make sure he understood that and that
 9         was the answer that was being given to
10         you.
11  EXAMINATION BY MS. BERTAUT:
12     Q.  Are you concerned that should you
13  break the agreement or violate the terms of the
14  agreement that you or your family might be at
15  risk financially?
16         MR. RICHTHOFEN:
17                You can answer that.
18     A.  I don't know.
19         MR. RICHTHOFEN:
20                No, you can answer that honestly.
21         THE WITNESS:
22                I don't understand what she's
23         saying.
24         MR. WALKER:
25                It's all right.  A lot of us
```

```
 1              don't understand what she's saying
 2              either.  You can say that.
 3   EXAMINATION BY MS. BERTAUT:
 4        Q.    You don't know?  Is that what your
 5   answer is?
 6        A.    That's what I said, yes.
 7        Q.    Do you have any concerns that if
 8   Lafarge believes that you broke the terms of
 9   the agreement that your house on Berkley might
10   be foreclosed on or lost?
11        A.    Somewhat.  Yes.
12        Q.    Was there ever a time when you
13   believed that Lafarge was responsible for the
14   damage to your house?
15        A.    Only because I saw the barge.
16        Q.    Do you still believe that to be true?
17        A.    Yeah.  It was on the house.
18        Q.    How about Ingram; was there ever a
19   time when you believed Ingram Barge was
20   responsible for the damage to your house?
21        A.    I didn't really care who was
22   responsible, I just wanted to be compensated
23   for my house.
24        Q.    I understand that.  But my question,
25   Mr. Murph, is was there ever a time when you
```