# SUTTERFIELD & WEBB, L.L.C.

### ATTORNEYS AND COUNSELORS AT LAW

SUITE 2715 · 650 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130-6111
WWW.SWSLAW.COM

Daniel A. Webb
dwebb@swslaw.com

TELEPHONE 504/598-2715
FACSIMILE 504/529-7197
E-MAIL: INFO@SWSLAW.COM

March 3, 2008

VIA HAND DELIVERY
Brian A. Gilbert, Esq.
Law Office of Brian A.Gilbert
821 Baronne Street
New Orleans, Louisiana 70113

> Re:   *In Re Katrina Canal Consolidated Litigation*
>         FRCP 45 Production Request
>         USDC/EDLA Case No. 2:05-cv-04182
>         <u>Our File No.  M1530-546</u>

Dear Brian:

New Jourdan, L.L.C. submits the following documents in response to the Notice of FRCP 45 Production Request:

1. Official Secretary of State copy of Articles of Organization and Initial Report of New Jourdan LLC;

2. Limited Liability Annual Report (for period ending February 10, 2007); First Amendment of Articles of New Jourdan LLC (December7th, 2007;

3. Limited Liability Annual Report (for period ending February 10, 2008);

5. Power of Attorney by Arthur L. Murph, Sr. and Jeanne A. Church Murph (February 9, 2006);

6. Agreement  to Purchase or Sell (February 9, 2006);

7. Act of Collateral Mortgage by Jeanne A. Church Murph and Arthur L. Murph, Sr., (February 9, 2006);

8. Collateral Mortgage Note (February 9, 2006);



A member of the Harmonic Group,
an affiliation of independent law firms

Mr. Brian A. Gilbert, Esq.
March 3, 2008
Page 2 of 2

    9.  Collateral Pledge Agreement (February 9, 2007);

    10. Promissory Note (February 9, 2006);

    11. Act of Sale of Property (December 5, 2007).

The Settlement Agreement executed by Mr. and Mrs. Murph has been produced.

Very truly yours,

DANIEL A. WEBB

DAW/ld
Enclosures

cc:    Derek A. Walker, Esq. (w/o enclosures)
       John Aldock, Esq. (with enclosures)



## UNITED STATES OF AMERICA
## State of Louisiana

### Al Ater
### SECRETARY OF STATE

*As Secretary of State, of the State of Louisiana, I do hereby Certify that*

a copy of the Articles of Organization and Initial Report of

**NEW JOURDAN, L.L.C.**

Domiciled at METAIRIE, LOUISIANA,

Was filed and recorded in this Office on February 10, 2006,

And all fees having been paid as required by law, the limited liability company is authorized to transact business in this State, subject to the restrictions imposed by law, including the provisions of R.S. Title 12, Chapter 22.

*In testimony whereof, I have hereunto set my hand and caused the Seal of my Office to be affixed at the City of Baton Rouge on,*

February 10, 2006



RFO 36118549K
*Secretary of State*

CERTIFICATE SS 102 PRINTED SEAL (Rev. 07/05)

AL ATER
SECRETARY OF STATE
RECEIVED & FILED
DATE **FEB 1 0 2006**

### Articles of Organization
### of
### New Jourdan, L.L.C.

The undersigned, acting pursuant to the Limited Liability Company Law of Louisiana (as amended from time to time or any successor statute, the "Act") adopts the following Articles of Organization.

## ARTICLE I
## Name

The name of this Limited Liability Company shall be **New Jourdan, L.L.C.**.

## ARTICLE II
## Purpose

The purpose of this Limited Liability Company shall be to engage in any lawful activity for which limited liability companies may be formed under the Act.

## ARTICLE III
## Management

This Limited Liability Company shall be manager managed by a single manager.

## ARTICLE IV
## Term

This Limited Liability Company shall have perpetual existence.

## ARTICLE V
## Certificates

All persons dealing with this Limited Liability Company may rely upon a certificate of Daniel A. Webb to establish the authority the membership of any Member, the authenticity of any records of this Limited Liability Company or the authority of any

751673-1

person to act on behalf of this Limited Liability Company.

## ARTICLE VI
### Effective Date

    This Limited Liability Company shall begin its existence on February 13, 2006 or as soon thereafter as permitted by law.

    **THUS DONE AND SIGNED** in my office in New Orleans, Louisiana, on this 8th day of February 2006 in the presence of the undersigned competent witnesses and me, Notary, after due reading of the whole.

**WITNESSES:**

Printed Name: LORI DEFOREST

                                    **DANIEL A. WEBB, Organizer**

Printed Name: JOHN J. DANNA, JR.

_____, NOTARY PUBLIC (BRN _____)
*MY COMMISSION IS ISSUED FOR LIFE.*

SCOTT T. WINSTEAD
NOTARY PUBLIC
PARISH OF JEFFERSON, STATE OF LA.
MY COMMISSION IS ISSUED FOR LIFE
NOTARY # 64990

SCOTT T. WINSTEAD
NOTARY PUBLIC
PARISH OF JEFFERSON, STATE OF LA.
MY COMMISSION IS ISS...
NOTARY #...

**LIMITED LIABILITY COMPANY INITIAL REPORT**
**As Required by LSA R.S. 12:1305(E)**

To the Secretary of State
State of Louisiana

The following Initial Report is hereby submitted in accordance with the provisions of Louisiana Revised Statutes, Title 12, Section 1305(E):

1. The name of this limited liability company is:  **New Jourdan, L.L.C..**

2. The location and municipal address (not a post office box only) of this limited liability company is:

    **322 Hector**
    **Metairie, Louisiana 70005**

3. The full name and municipal address (not a post office box only) of this limited liability company's registered agent is:

    **DANIEL A. WEBB**
    **322 Hector**
    **Metairie, Louisiana 70005**

4. The name and municipal address (not a post office box only) of the first manager is:

    **DANIEL A. WEBB**
    **322 Hector**
    **Metairie, Louisiana 70005**

**IN WITNESS WHEREOF,** the undersigned have duly executed this Initial Report on this _____ day of February 2006.

DANIEL A. WEBB

751673-1

## AGENT'S AFFIDAVIT AND ACKNOWLEDGMENT OF ACCEPTANCE

I hereby acknowledge and accept the appointment of registered agent for and on behalf of the above named limited liability company.

Registered Agent Signature:

DANIEL A. WEBB

SWORN TO AND SUBSCRIBED BEFORE ME THIS 8th DAY OF FEBRUARY 2006.

_____, NOTARY PUBLIC (BRN _____)

*MY COMMISSION IS ISSUED FOR LIFE.*

SCOTT T. WINSTEAD
NOTARY PUBLIC
PARISH OF JEFFERSON, STATE OF LA
MY COMMISSION IS ISSUED FOR LIFE
NOTARY # 64680

751673-1

**Jay Dardenne**
**Secretary of State**

## LIMITED LIABILITY COMPANY
## ANNUAL REPORT

For Period Ending
February 10, 2007

Mailing Address Only    (INDICATE CHANGES TO THIS ADDRESS IN THIS BOX)

36118549 K                                              82

NEW JOURDAN, L.L.C.

C/O DANIEL A. WEBB

322 HECTOR

METAIRIE, LA  70005

(INDICATE CHANGES TO THIS ADDRESS IN THIS BOX)
Registered Office Address in Louisiana
(Do Not Use P.O. Box)
322 HECTOR
METAIRIE, LA  70005

Federal Tax ID Number

---

Our records indicate the following registered agents for the company.  Indicate any changes or deletions below.
All agents must have a Louisiana address.  Do not use a P. O. Box.
**A NEW REGISTERED AGENT REQUIRES A NOTARIZED SIGNATURE.**

DANIEL A. WEBB
322 HECTOR/METAIRIE, LA  70005

I hereby accept the appointment of registered agent(s).

Sworn to and subscribed before me on
**NOTARY NAME MUST BE TYPED OR PRINTED WITH NOTARY #**

_____
**New Registered Agent Signature**

_____
**Notary Signature**          **Date**

---

Our records indicate the following managers or members for the company. Indicate any changes or deletions below.
If space is needed for additional managers or members, attach an addendum.  Do not use a P.O. Box.
*Officer titles, such as president or secretary, are not acceptable.*

DANIEL A. WEBB                          MANAGER
322 HECTOR/METAIRIE, LA  70005

---

**SIGN—>**

To be signed by a manager, member or agent

*Daniel A Webb*

Signer's Address
322 Hector
METAIRIE, LA 70005

| Title | Phone | Date |
|-------|-------|------|
| MEMBER | 504 832-8025 | 5 JAN 07 |

E-mail address
dwebb@swslaw.com

Enclose filing fee of (25.00)
Make remittance payable to Secretary of State
*Do Not Send Cash*
*Do Not Staple*
web site: www.sos.louisiana.gov

Return by:   February 10, 2007

to:   Commercial Division
P.O. Box 94125
Baton Rouge, LA 70804-9125
Phone (225) 925-4704

**DO NOT STAPLE**

CHECK
IF NO
CHANGE

122806

**UNSIGNED REPORTS WILL BE RETURNED**



**Jay Dardenne**
**Secretary of State**

## LIMITED LIABILITY COMPANY ANNUAL REPORT

For Period Ending
February 10, 2008





| Mailing Address Only | (INDICATE CHANGES TO THIS ADDRESS IN THIS BOX) |
|---|---|

36118549 K                                                      77
NEW JOURDAN, L.L.C.
C/O DANIEL A. WEBB
322 HECTOR
METAIRIE, LA  70005

(INDICATE CHANGES TO THIS ADDRESS IN THIS BOX)
Registered Office Address in Louisiana
(Do Not Use P.O. Box)
322 HECTOR
METAIRIE, LA  70005

Federal Tax ID Number

Our records indicate the following registered agents for the company.  Indicate any changes or deletions below.
All agents must have a Louisiana address.  Do not use a P. O. Box.
A NEW REGISTERED AGENT REQUIRES A NOTARIZED SIGNATURE.

DANIEL A. WEBB
322 HECTOR/METAIRIE, LA  70005

I hereby accept the appointment of registered agent(s).

_____
**New Registered Agent Signature**

Sworn to and subscribed before me on
NOTARY NAME MUST BE TYPED OR PRINTED WITH NOTARY #

_____
**Notary Signature**                         **Date**

This report reflects a maximum of three members/managers for the company.  Indicate any changes or deletions below.
Include a listing of all names and addresses.  Do not use a P.O. Box.  If additional space is needed, attach an addendum.
*Officer titles, such as president or secretary, are not acceptable.*

DANIEL A. WEBB                              MANAGER
322 HECTOR/METAIRIE, LA  70005

| **SIGN—>** | To be signed by a manager, member or agent | Title | Phone | Date |
|---|---|---|---|---|
| | Signee's Address | E-mail address | | |

Enclose filing fee of $    25.00
Make remittance payable to Secretary of State
*Do Not Send Cash*
*Do Not Staple*
web site: www.sos.louisiana.gov

Return by:   February 10, 2008

to:   Commercial Division
P.O. Box 94125
Baton Rouge, LA 70804-9125
Phone (225) 925-4704

## DO NOT STAPLE

CHECK
IF NO
CHANGE

(     )

122707

**UNSIGNED REPORTS WILL BE RETURNED**

# FIRST AMENDMENT TO ARTICLES
## OF
## NEW JOURDAN, L.L.C.

The undersigned, being the sole Member of New Jourdan, L.L.C., acting pursuant to the Limited

Liability Company Law of Louisiana (as amended from time to time or any successor statute, the "Act"),

hereby amends the Articles of New Jourdan, L.L.C., dated February 8, 2006, and filed

Charter/Organization ID: 361185549K with the Louisiana Secretary of State as follows:

Article V entitled "Certificates" is hereby deleted in its entirety and is amended to read as
follows:

"All persons dealing with this Limited Liability Company may rely upon a certificate of
Paul Hart to establish the membership of any Member, the authenticity of any records of
this Limited Liability Company, or the authority of any person to act on behalf of the
Limited Liability Company."

The original Articles of New Jourdan, L.L.C. filed February 10, 2006, as amended, shall remain

the same in all other respects.

The undersigned signatory declared unto me, Notary, in his capacity as the _Senior Vice President_

of the sole Member, that the above amendment was duly adopted by unanimous written consent and

resolution of the sole member of New Jourdan, L.L.C., executed as of December _____, 2007, a true copy

of which Resolution is annexed hereto.

**THUS DONE AND SIGNED** in my office in the State of New York, County of

_New York_, on this _17th_ day of December, 2007, in the presence of the undersigned

competent witnesses and me, Notary, after due reading of the whole.

WITNESSES:                                          MUTUAL MARINE OFFICE, INC.

_Kristina H. Neff_                                  BY: _Paul Hart_
Printed Name: Kristina H. Neff                      Printed Name: PAUL J. HART

_Diane Votrell_
Printed Name: Diane Votrell

_Jean M. Guarneri_
Printed Name: Jean Guarneri
                   NOTARY PUBLIC
My Commission Expires: 11-19-2009

JEAN M. GUARNERI
Notary Public, State of New York
No. 01GU6066639
Qualified in Richmond County
Commission Expires November 19, 20 09

1005719-1

**UNANIMOUS CONSENT**
**AND RESOLUTION**
**OF THE MEMBERS**
**NEW JOURDAN, L.L.C.**

The undersigned, being the sole Member of **NEW JOURDAN, L.L.C.**, unanimously consents to the following resolutions:

> **RESOLVED**, that Paul Hart be appointed as the Manager of New Jourdan, L.L.C.
>
> **RESOLVED FURTHER**, that Paul Hart the sole Manager of New Jourdan, L.L.C., be and he is hereby authorized and directed to take all such steps and execute all such documents as may be necessary to carry out the above described amendment to the Articles of Organization.

Dated this ___17___ day of December, 2007.

MUTUAL MARINE OFFICE, INC., Member

By: _____
Printed Name: _____PAUL  J.  HART_____
Title: _____Senior Vice President_____

1005719-1

- 2 -

| | |
|---|---|
| POWER OF ATTORNEY | * UNITED STATES OF AMERICA |
| | * |
| BY:  ARTHUR L. MURPH, JR. | * STATE OF LOUISIANA |
| AND | * |
| JEANNE A. CHURCH MURPH | * PARISH OF ORLEANS |
| | * |
| TO: | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

BEFORE ME, the undersigned Notary Public, duly commissioned and qualified, in and for the Parish and State set forth above, on the day, month and year hereinbelow written, and in the presence of the undersigned competent witnesses:

PERSONALLY CAME AND APPEARED:

ARTHUR L. MURPH, JR., Social Security #XXX-XX-7947, and JEANNE A. CHURCH MURPH, Social Security #XXX-XX-1803 , both persons of the full age of majority and residents of the Orleans Parish, State of Louisiana, who declared under oath to me, Notary, that Jeanne Church Murph has been married but once and then to Arthur L. Murph with whom she presently lives and resides and Arthur L. Murph has been married but twice; first to Dianne Bercy from whom he was divorced and secondly to Jeanne Church Murph with whom he presently lives and resides. Mailing Address:   105 Berkley Street, New Orleans, Louisiana 70131.

(herein collectively "Appearers")

Appearers declare that they do by these presents name, constitute and appoint Sharon F. Gunn or Christine Ricouard, both persons of the full age of majority, with mailing addresses of 1100 Poydras Street, New Orleans, LA 70163-2300 ("Agent"), to be their true and lawful agent and attorney-in-fact, and to act for them in their name, place and stead, for the sole purpose of acting as their agent and attorney in fact in connection with the sale of the property known as 1739 Jourdan Avenue, New Orleans, Louisiana 70117 ("Property"), more fully described as follows:

ONE (1) CERTAIN LOT OF GROUND, together with all buildings and improvements thereon and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Third District of the City of New Orleans, State of Louisiana, in Square No. 807, bounded by Jourdan Avenue, North Derbigny Street, North Roman and Deslonde Streets; said lot is designated by the Lot No. Eight (8) of said square, and measures forty (40') feet front on Jourdan Avenue, same width in the rear, by a depth, between equal and parallel lines, of one hundred ten (110') feet.

All according to plan of survey made by Gilbert and Kelly, Surveyors, dated December 29, 1926, copy of which is attached to an act of sale to Angus T. Stanley, passed before S. T. Cristina, Notary Public in and for the Parish of Jefferson, dated July 23, 1945;

Improvements thereon bear the municipal no. 1739 Jourdan Avenue, New Orleans, Louisiana 70117

And in order to accomplish such purposes in connection with the sale of the Property, Agent is hereby authorized and empowered to appear before any Notary Public and execute an act of sale, in such form, and containing such terms and conditions as said Agent, in Agent's discretion may deem necessary and advisable including for the consideration of cancellation of debt of the Appearers. Appearers declare, pursuant to Louisiana Civil Code art. 3015, that the Agent has, either directly or indirectly, an interest in the above property and the authority of Agent shall be and remain irrevocable until Agent transfers the Property in accordance with the authority granted hereby. To the greatest extent permitted by Louisiana law, including Louisiana Civil Code art. 3026 and 3030,

751761-1

1

the authority of Agent shall survive the death or disability of Appearers or either of them.

Said Agent is further authorized to pay any and all fees, expenses and charges in connection with the sale of the Property, and finally to do any and all things necessary or proper in Agent's sole and own discretion, in order to complete said transaction, Appearers hereby ratifying and approving each and every act of the said Agent to the same extent and as fully and completely as if they themselves had been present.

**THUS DONE AND PASSED** in New Orleans, Louisiana on the 9th day of February 2006 in the presence of the undersigned competent witnesses, who hereunto sign their names with the said Appearers and me, Notary, after reading of the whole.

WITNESSES:

Printed Name: _Parker Harrison_

Printed Name: _Shannen Helffrich_

APPEARERS:

ARTHUR L. MURPH, JR.

JEANNE A. CHURCH MURPH

Harry R. Holladay
La Bar Roll No. 06950B
NOTARY PUBLIC

ACCEPTED:

_____
Sharon F. Gunn

_____
Christine Ricouard

751761-1

2

## AGREEMENT TO PURCHASE OR SELL

Parish of Orleans                                             February 9 , 2006
State of Louisiana

**Property Description:** Arthur L. Murph, Jr., and Jeanne A. Church Murph ("Sellers"),
hereby offer and agree to sell the following described property:

ONE (1) CERTAIN LOT OF GROUND, together with all buildings and
improvements thereon and all the rights, ways, privileges, servitudes and
advantages thereunto belonging or in anywise appertaining, situated in the Third
District of the City of New Orleans, State of Louisiana, in Square No. 807,
bounded by Jourdan Avenue, North Derbigny Street, North Roman and Deslonde
Streets; said lot is designated by the Lot No. Eight (8) of said square, and
measures forty (40') feet front on Jourdan Avenue, same width in the rear, by a
depth, between equal and parallel lines, of one hundred ten (110') feet.

All according to plan of survey made by Gilbert and Kelly, Surveyors, dated
December 29, 1926, copy of which is attached to an act of sale to Angus T.
Stanley, passed before S. T. Cristina, Notary Public in and for the Parish of
Jefferson, dated July 23, 1945;

Improvements thereon bear the municipal no. 1739 Jourdan Avenue, New Orleans,
Louisiana 70117

("Property")

**Price:** Property to be sold and purchased subject to title and zoning restrictions, servitudes
of record, laws, and/or ordinances affecting the property for the sum of FIFTY THOUSAND AND
NO/100 ($50,000.00) DOLLARS.

**Payment of Price:** The payment of the price shall be as follows: (a) Purchaser shall
arrange for the advance of $50,000.00 in exchange for Sellers' promissory note in the amount of
$50,000.00 ("Note"); (b) Sellers agree that cancellation of the Note shall constitute payment in full
of the Purchase Price.

**Other Costs:** All costs and fees for necessary certificates, closing fee, survey and/or title
insurance, if required and/or requested, are to be paid for by the Purchaser unless otherwise stated
herein.

**Prorations:** Real Estate Taxes are to be paid by Purchaser.

**Liens:** All improvement liens and assessments, as well as any other liens of any kind,
bearing against the property at the time of Act of Sale shall be paid by the Sellers, except that
Purchaser will contribute not more than $12,000.00 towards payment in full and satisfaction of the
liens

1

**Minerals:** Ownership of all subsurface minerals, including but not limited to all oil and gas, are to be transferred to Purchaser by Sellers.

**Act of Sale:** Time being of the essence, the Act of Sale shall be at the expense of Purchaser, before a Notary Public chosen by Purchaser on or before March 15, 2006. Any extension shall be agreed to in writing by Sellers and Purchaser.

**Curative Work:** In the event curative work in connection with the title is required, the parties agree to and do extend the date for passing the Act of Sale to a date not more than 60 days from the stated date of Act of Sale. Sellers are obligated to cure Title so that title is merchantable or pay Purchasers damages.

**Acceptance:** Upon acceptance of this offer by Purchaser, Sellers and Purchaser shall be bound by all terms and conditions.

**Breach of Agreement by Sellers:** In the event Sellers fails or is unable to comply with this Agreement, Purchaser shall have the right to demand specific performance or payment of damages to Purchaser.

**Breach of Agreement by Purchaser:** In the event Purchaser fails to comply with this Agreement within the time specified, Seller shall have the right to demand specific performance or payment of damages to Sellers.

**Deadlines:** Time is of the essence and all deadlines are final except where modifications, changes or extensions are made in writing and signed by all parties to this agreement.

Purchaser hereby acknowledges and recognizes that the subject property is being purchased in "AS IS, WHERE IS and WITH ALL FAULTS" condition and, accordingly, Purchaser will and does hereby relieve and release Sellers and all previous owners from any and all liability for any vices or defects in such property, whether obvious or latent, known or unknown, easily discoverable or hidden, and particularly from any and all liability for any claim or cause of action for redhibition pursuant to the provisions of Louisiana Civil Code Articles 2520 et seq., or for diminution of the purchase price pursuant to the provisions of Louisiana Civil Code Articles 2541 et seq. Purchaser acknowledges and understands that Louisiana Redhibition Law enables the Purchaser to hold the Sellers responsible for any hidden defects in the property existing on the date of the Act of Sale and Purchaser hereby specifically waives that right.

Purchaser will waive and release Sellers from any and all claims and agrees to hold Sellers harmless from and against any demands, cause of actions, liens, loss, damage, liabilities, costs and expenses (including reasonable attorneys' fees, court costs, consultant's fees, mediation, clean up or other response costs) of any and every kind or character, suffered or incurred by Purchaser, its successors or assigns, under the Resource Conservation and Recovery Act, 42 U.S.C. 6901 et seq.; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9607 et seq., as amended by the Superfund Amendment and Reauthorization Act of 1986, Pub. O. No. 99-499, 100 Sat. 1613 (codified as amended in various sections of 42 U.S.C.); the Hazardous Materials Transportation Act, Pub. No. 93-633,88 Stat. 2156 (codified as amended in various section of 46 U.S.C.), the Clean Water Act, 33 U.S.C., 1251 et seq.; the Clean Air Act, 42 U.S.C. 7401 et seq.; the Toxic Substances Control Act, 15 U.S.C. 2601 et seq.; or any other applicable federal, state or local laws, rules, ordinances, permits, approvals, orders or regulations as they now exist or may subsequently be modified, supplemented or amended.

**Agent:** Sellers agree to appoint an agent to sign and deliver all documents needed to perform their obligations hereunder, which agent shall be deemed to have an interest in the Property and such that the agent shall have the irrevocable authority to act as set out in the power of attorney granted contemporaneously with this agreement.

This Offer remains binding and irrevocable until acceptance by Purchaser on or before 6:00 P.M., February 20th, 2006.

**SELLERS:**

ARTHUR L. MURPH, JR.

JEANNE A. CHURCH MURPH

Accepted by Purchaser the _____ day of February, 2006

**PURCHASER:**

Printed Name: _____
Date: _____ ___, 2006

751889-1

| | |
|---|---|
| ACT OF | *     UNITED STATES OF AMERICA |
| COLLATERAL MORTGAGE | * |
| | *     STATE OF LOUISIANA |
| BY: JEANNE A. CHURCH MURPH | * |
| AND | *     PARISH OF ORLEANS |
| ARTHUR L. MURPH, JR. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On this 9th day of February 2006 before me, the undersigned Notary Public, duly commissioned and qualified in and for the above jurisdiction and in the presence of the undersigned, competent witnesses, personally came and appeared:

       **ARTHUR L. MURPH, JR.**, Social Security #XXX-XX-7947, and **JEANNE A. CHURCH MURPH**, Social Security #XXX-XX-1803 , both persons of the full age of majority and residents of the Orleans Parish, State of Louisiana, who declared under oath to me, Notary, that Jeanne Church Murph has been married but once and then to Arthur L. Murph with whom she presently lives and resides and Arthur L. Murph has been married but twice; first to Dianne Bercy from whom he was divorced and secondly to Jeanne Church Murph with whom he presently lives and resides. Mailing Address: 105 Berkley Street, New Orleans, Louisiana 70131.

("Mortgagor", whether one or more). Mortgagor declared that in order to borrow funds and to secure any obligations of Mortgagor or other parties, now existing or hereafter arising, Mortgagor acknowledges a debt in the principal sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 ($250,000.00) DOLLARS (the "Principal Amount"), evidenced by a promissory note (the "Note"), executed by Mortgagor, dated the date hereof, in the Principal Amount, payable to the order of bearer, due on demand at such place as the holder of the Note may from time to time designate, bearing interest at the rate of twelve (12%) percent per annum from date until paid, and providing that if the Note is referred to an attorney to institute legal proceedings to recover any amount due on the Note, to protect interests of the holder of the Note, or for collection, compromise, or other action, Mortgagor shall pay the fee of such reasonable attorney fees. The Note was paraphed "Ne Varietur" on the date hereof by the undersigned Notary Public for identification with this mortgage and was delivered to Mortgagor, who acknowledges its receipt. Mortgagor declared that a security interest may be granted in the Note to secure any liabilities or obligations of Mortgagor or others, direct or contingent, due or to become due, now existing or hereafter arising, including, without limitations, future advances.

       In order to secure the full payment of the Note, with interest, attorneys' fees and collection costs, and to secure the payment of insurance premiums, taxes, keeper's fees, and the performance of all obligations of Mortgagor under this mortgage (collectively, the "Indebtedness"), Mortgagor specially mortgages, pledges, assigns, affects, grants a security interest in, and hypothecates in favor of present and future holders of the Note ("Mortgagee"), whether the Note is held as an original obligation or as security for obligations, the following (collectively, the "Mortgaged Property"):

       (1)   The following described immovable property:

       **THAT CERTAIN PIECE OR PORTION OF GROUND**, together with all the buildings and improvements thereon, and all of the rights, ways, privileges, servitudes, appurtenances and advantages thereunto belonging or in anywise appertaining, situated in the **PARISH OF ORLEANS, STATE OF LOUISIANA**, situated in the **FIFTH DISTRICT OF THE CITY OF NEW ORLEANS**, in **SQUARE NUMBER 114** of **AURORA GARDENS SUBDIVISION**, bounded by Berkley Drive, Westchester Street, Kingston Court and Woodland Highway, designated by the **NUMBER TWENTY-SIX** on a survey made by Adloe Orr, Jr., Civil Engineer, dated March 25, 1952, and according to which said lot commences at a distance of one hundred eighty-five feet from the corner of Woodland Highway and Berkley Drive and measures thence eighty five feet front on Berkley Drive, by a depth between equal and parallel lines of one hundred and forty and twenty six one hundredths feet.

       Improvements thereon bear the Municipal Number 105 Berkley Drive, New Orleans, LA. 70131

together with all component parts, buildings, constructions, improvements, appurtenances, attachments, rights, ways, privileges, servitudes, advantages, batture and batture rights now or hereafter attached or belonging to, affecting, forming part of, or used in connection with the above described property (collectively, the "Premises");

       (2)   all present and future rents, fruits, revenues, income and profits accruing from time to time from the use, possession, occupancy or lease of all or any part of the Premises and from Mortgagor's operation thereof including, without limitation, rights to rents, royalties, rentals, shut in payments and other payments which are rents or rentals attributable to Mortgagor's sale, lease or other disposition of his right to explore or develop mineral interests in the Premises (collectively, the "Rents"), and all present and future leases of all or any part of the Premises ("Leases"); and

       (3)   all incorporeal rights incidental or accessory to the Premises or its use (the "Incorporeal Rights"), including without limitation (i) the right to receive proceeds and awards from the sale, lease, insurance loss, claims for damages, or condemnation, expropriation or other taking of the Premises (the "Proceeds"); (ii) rights under service,

751766_1.DOC

maintenance, or warranty contracts relating to the Premises, and (iii) rights under trade names, patents, or copyrights that are subject to use in connection with the Premises or Mortgagor's business or other activities conducted thereon.

1.        Covenants.

1.1.    The Mortgaged Property shall remain specially mortgaged, pledged, affected and hypothecated to, and subject to a security interest in favor of, Mortgagee until the full and final payment of the Indebtedness and cancellation of this Mortgage from the public records. Mortgagor shall not sell, transfer, assign, pledge, alienate or create any security interest in the Mortgaged Property. In no event shall any such act by Mortgagor, whether or not authorized by Mortgagee, prejudice the rights of Mortgagee under this mortgage.

1.2.    Mortgagor shall make all repairs, additions, and improvements necessary to maintain the Mortgaged Property in good condition and to prevent any impairment of the security of this mortgage. If Mortgagor fails to maintain the Mortgaged Property in good condition, Mortgagee may, at its option, cause the Mortgaged Property to be maintained in good condition at Mortgagor's cost.

1.3.    (a) Upon request after default in performance of an obligations secured hereby, Mortgagor shall keep the Mortgaged Property constantly insured against risk of loss by fire, wind, storm, flood, tornado, theft, and all such other hazards, casualties, and contingencies as may be deemed necessary by Mortgagee. The insurance shall be in such amounts and shall be issued by such companies as are acceptable to Mortgagee. All policies of insurance shall be delivered to Mortgagee, shall contain a loss payable clause in favor of Mortgagee, and shall be in a form acceptable to Mortgagee. All renewal policies shall be delivered to Mortgagee at least fifteen (15) days prior to the expiration date of the existing policy.

(b) The insurance policies required by this mortgage shall provide that any loss payable to Mortgagee and Mortgagor, as their respective interests may appear, shall be payable to Mortgagee notwithstanding any act or omission of Mortgagor or of any other party, which would otherwise result in a forfeiture of such insurance, and that policies shall not be cancelled even for nonpayment of premium or the coverage reduced without at least thirty (30) days prior written notice to Mortgagee.

(c) Mortgagor shall promptly notify Mortgagee of any insured loss. If Mortgagee receives any sum of money from any insurance policy affecting the Mortgaged Property, Mortgagee may, at its option and in such manner as it may determine, (i) retain the money and apply it toward the payment of any obligations secured by this mortgage or by a security interest in the Note with Mortgagee having the right to impute the money among the obligations in any manner specified by Mortgagee, or (ii) pay all or part of the money, under such conditions as Mortgagee may determine, to Mortgagor to enable Mortgagor to repair or restore the Mortgaged Property or use the money for any other purpose satisfactory to Mortgagee, all without prejudice to, and without affecting the lien of, this mortgage.

1.4.    Mortgagor shall pay promptly when due all taxes, local and special assessments, and governmental and utility charges (collectively, the "Taxes") imposed, assessed, or levied on all or any part of the Mortgaged Property, and Mortgagor shall furnish Mortgagee evidence of the payment of the Taxes. If Mortgagor for any reason does not pay promptly when due any of the Taxes, Mortgagee is hereby authorized to pay such unpaid Taxes with full subrogation to all rights of all authorities imposing such Taxes by reason of Mortgagee's payment, and Mortgagor shall promptly reimburse Mortgagee on demand for Taxes paid by Mortgagee. Upon request after default in performance of an obligations secured hereby, Mortgagor shall pay to Mortgagee an amount equal to the estimated annual Taxes and the premiums for the insurance required by this Mortgage, so that Mortgagee shall have sufficient funds available to pay such Taxes and insurance premiums, and Mortgagor shall, at the option of Mortgagee, pay such amounts either thirty (30) days before they become due, or in equal monthly payments in advance, with such payments commencing one (1) month after the date of this mortgage.

1.5.    Mortgagor shall pay promptly when due all of Mortgagor's obligations that might, if unpaid, result in or permit the creation of a lien or encumbrance on all or any part of the Mortgaged Property. Mortgagor shall do everything necessary to preserve the priority of this mortgage without any expense to Mortgagee. Mortgagor shall notify Mortgagee immediately if any lien is filed against any part of the Mortgaged Property or if any part of the Mortgaged Property is seized, attached, or levied against. Mortgagor shall immediately obtain the release of the Mortgaged Property from any seizure, lien, or attachment, and if Mortgagor fails to do so, Mortgagee may, at its option, obtain the release of the Mortgaged Property at Mortgagor's expense.

1.6.    (a) Mortgagor shall comply with all laws, ordinances, regulations, covenants, conditions, and restrictions affecting the Mortgaged Property, its use, construction, or maintenance, including, without limitation, all Environmental Laws. As used in this Mortgage, "Environmental Laws" shall mean any and all federal, state or local laws, rules, regulations, orders, permits, or ordinances involving the environment including, but without limitation, the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901 et seq., the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9607 et seq., as amended by the Superfund Amendment and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (codified as amended in various sections of 42 U.S.C.), the Hazardous Materials Transportation Act, Pub. L. No. 93-633, 88 Stat. 2156 (codified as amended in various sections of 46 U.S.C.); the Clean Water Act, 33 U.S.C. §§ 1251 et seq., the Clean Air Act, 42 U.S.C. §§ 7401 et seq., the Toxic Substances Control Act, 15 U.S.C. §§ 2601 et seq., Article 2315.3 of the Louisiana Civil Code, Statewide Order 29-B by Office of Conservation, Department of Natural Resources, State of Louisiana, the Louisiana Abandoned Oilfield Waste State Law (La. R.S. 30:71, et seq.), and the Louisiana Environmental Quality Act (La. R.S. 30:2001, et seq.), as they now exist or may subsequently be modified, supplemented or amended. Mortgagor warrants that neither Mortgagor, any occupant of the Mortgaged Property, or the Mortgaged Property is in violation of or subject to any existing, pending, or threatened investigation or inquiry by any governmental authority or to any remedial

obligations under any of the Environmental Laws.

(b)  Mortgagor shall forever indemnify, defend and hold harmless Mortgagee, its directors, officers, employees and agents from and against all harms, including, without limitation, damages, punitive damages, liabilities, losses, demands, claims, costs, recovery actions, lawsuits, administrative proceedings, orders, response costs, compliance costs, investigation expenses, consultant fees, attorneys' fees and litigation expenses arising from (i) the operation of any of the Environmental Laws, and (ii) the violation by Mortgagor, any occupant of the Mortgaged Property, or the Mortgaged Property of any of the Environmental Laws.  Mortgagor shall pay all costs and expenses incurred by Mortgagee to enforce the provisions of this paragraph, including, without limitation, attorneys' fees and litigation expenses.  The provisions of this paragraph shall survive the cancellation of this mortgage and shall remain in full force and effect beyond the expiration of any applicable statute of limitations and payment or satisfaction in full of any single claim of Mortgagee within the scope of the provisions of this paragraph.

1.7.    Mortgagor shall not remove any part of the Mortgaged Property from its present location without Mortgagee's prior written consent.

1.8.    Mortgagor shall permit Mortgagee and its agents to have access to, and to inspect the Mortgaged Property at all reasonable times.

1.9.    Mortgagor warrants that Mortgagor lawfully owns and possesses the Mortgaged Property, that the Mortgaged Property is registered in Mortgagor's name, that the Mortgaged Property has not been alienated by Mortgagor, and that there are no mortgages, liens, judgments or encumbrances against the Mortgaged Property except:

1.10.    The pledge and assignment of and security interest in the Leases and Rents provided for herein shall secure all Indebtedness, all liabilities and obligations for which the Note has been given as security, and all other obligations of Mortgagor to Mortgagee, now existing or hereafter arising, up to the maximum amount of five (5) times the Principal Amount.  Mortgagee shall have full subrogation to Mortgagor's rights to all Leases and Rents.

1.11.    If Mortgagor fails to perform any obligation under this mortgage, then the Mortgagee may, at its option, perform such obligation, and the cost of such performance shall be reimbursable to Mortgagee upon demand and added to the amount secured by this mortgage, provided that the maximum amount to be secured by this mortgage shall not, at any one time, exceed five times the Principal Amount.  Authorizations granted to the Mortgagee to pay or perform obligations on behalf of the Mortgagor, or to enforce or collect Leases, Rents and Proceeds, are solely for the benefit of Mortgagee, to be exercised in Mortgagee's sole discretion, and shall be performed at the sole risk and expense of Mortgagor.  Mortgagee shall have no liability to Mortgagor, or any other party, either directly or by set-off or compensation, for failure to perform such obligations or to enforce or collect Leases, Rents or Proceeds, or for performing in a manner that causes damage to the Mortgagor.

2.            Default and Remedies.

2.1.    The occurrence of any one or more of the following events shall constitute a default (a "Default") under this mortgage:

(a)  failure to pay promptly on demand any principal or interest due on the Note;

(b)  failure to pay promptly on demand any sums advanced by Mortgagee for the payment of insurance premiums, Taxes, the cost of maintaining the Mortgaged Property in good repair, or the cost of obtaining the release of the Mortgaged Property from any seizure, lien, or attachment;

(c)  failure by Mortgagor to observe or perform any of Mortgagor's covenants, agreements, and obligations under this mortgage;

(d)  the inaccuracy of any warranty made by Mortgagor to Mortgagee in this mortgage or otherwise;

(e)  a default in the payment or performance of any obligation secured by a security interest affecting the Note; or

(f)  the seizure, attachment or sequestration of any part of the Mortgaged Property.

2.2.    If a Default occurs, Mortgagee may, at Mortgagee's option, without notice to Mortgagor, declare the Indebtedness and all obligations for which the Note is given as security to be immediately due and payable, and may immediately exercise all remedies provided under this mortgage or by law.  For purposes of executory process, Mortgagor confesses judgment in favor of Mortgagee for the full amount of the Indebtedness.  Mortgagee may cause all or any part of the Mortgaged Property to be seized and sold under executory or other legal process without appraisement, which is hereby expressly waived, as an entirety or in parcels, as Mortgagee may determine, to the highest bidder for cash, or on such terms as are acceptable to Mortgagee.

2.3.    To the extent permitted by law, Mortgagor hereby expressly waives (a)  the benefit of appraisement provided for in Articles 2332, 2336, 2723 and 2724, Louisiana Code of Civil Procedure, and all other laws conferring such benefits; (b)  the demand and three (3) days delay accorded by Articles 2639 and 2721, Louisiana Code of Civil Procedure; (c)  the notice of seizure required by Articles 2293 and 2721, Louisiana Code of Civil Procedure; (d)  the three (3) days delay provided by Articles 2331 and 2722, Louisiana Code of Civil Procedure; (e)  the benefit of the other provisions of Articles 2331, 2722, and 2723, Louisiana Code of Civil Procedure; (f)  the benefit of the provisions of any other articles of the Louisiana Code of Civil Procedure not specifically mentioned above;  (g)  all rights of

751766_1.DOC

division and discussion with respect to any obligation secured by this mortgage; and (h) all homestead and other exemptions relating to the Mortgaged Property.

2.4.    In addition to all of the other rights and remedies of Mortgagee under this mortgage, if a Default occurs, Mortgagee may, at Mortgagee's option, without notice to Mortgagor, obtain an environmental site assessment for the Mortgaged Property prepared by an environmental consulting firm selected by Mortgagee and an appraisal of the Mortgaged Property prepared by an appraiser selected by Mortgagee.   Mortgagor shall promptly on demand reimburse Mortgagee for the cost of the assessment and appraisal and the cost thereof shall be secured by this Mortgage. Mortgagor shall grant and hereby irrevocably grants to Mortgagee, and any consulting firms and appraisers hired by Mortgagee, access to the Mortgaged Property for purposes of preparing and obtaining all assessments and appraisals.

2.5.    Pursuant to Louisiana Revised Statutes 9:5136, et seq., Mortgagor hereby designates Mortgagee, or any employee, agent, or other person named by Mortgagee at the time any seizure of the Mortgaged Property is effected by Mortgagee to serve as a keeper of the Mortgaged Property pending the judicial sale thereof.  The keeper's fees shall be determined by the Court before which the proceedings are pending, and the payment of such fees shall be secured by this mortgage.

2.6.    If any proceedings are instituted to enforce this mortgage by executory process or otherwise, all declarations of fact made by authentic act before a notary public in the presence of two witnesses by a person declaring that such facts lie within that person's knowledge shall constitute authentic evidence of such facts for the purpose of executory process.

3.        Other Provisions.

3.1.    Possession of the Note at any time by Mortgagor shall not in any manner extinguish the Note or this mortgage, and Mortgagor shall have the right to issue and reissue the Note one or more times without in any manner extinguishing or affecting the obligation on the Note or the security of this mortgage.

3.2.    The parties to this mortgage waive the production of mortgage, tax and assessment certificates and all other certificates or researches, and release the undersigned Notary Public and the surety on the undersigned Notary Public's bond from all resulting responsibility and liability.

3.3.    It is expressly agreed that any and all stipulations, agreements, warranties, and covenants by Mortgagor in favor of Mortgagee contained in this mortgage, and all rights, powers, and privileges conferred in this mortgage on Mortgagee by any of the provisions of this mortgage shall inure to and be for the benefit of and may be exercised by Mortgagee, its successors, and assigns.  All covenants and agreements contained in this mortgage to be observed or performed by Mortgagor shall be binding upon Mortgagor and upon Mortgagor's heirs, administrators, executors, successors, and assigns, as well as upon any person, firm, or corporation hereafter acquiring title to the Mortgaged Property, or any part thereof, by, through, or under Mortgagor, and the word "Mortgagor," unless the context otherwise requires, shall also mean and include the heirs, administrators, executors, successors, and assigns of Mortgagor, and any other person, firm, or corporation acquiring title to any of the Mortgaged Property by, through, or under Mortgagor.

3.4.    If any provision of this mortgage is invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this mortgage.

AND NOW TO THESE PRESENTS personally came and appeared *Harry R Holladay* who on behalf of Mortgagee hereby accepts this mortgage.

THUS DONE AND PASSED, in multiple originals at New Orleans, Louisiana, on the day, month, and year first above written, in the presence of the undersigned competent witnesses, who sign their names with the appearers and the undersigned Notary Public.

WITNESSES:

_____
Printed Name: *Roland Hammel*

_____
Printed Name: *JANE HICKS*

MORTGAGOR:

_____
ARTHUR L. MURPH, JR.

_____
JEANNE A. CHURCH MURPH

INTERVENOR:
_____
Printed Name: *Harry R. Holladay*

_____
NOTARY PUBLIC
Printed Name: *G. PATRICK HAND, JR.*
BAR NO. 6499

- 4 -

751766_1.DOC

## COLLATERAL MORTGAGE NOTE

New Orleans, Louisiana

$250,000.00                                                        February 9, 2006

FOR VALUE RECEIVED, the undersigned promises to pay on demand to Bearer the sum of TWO HUNDRED AND FIFTY THOUSAND AND NO/100 ($250,000.00) DOLLARS, with interest thereon at the rate of twelve (12%) percent per annum from date until paid.

Both principal and interest shall be payable in lawful money of the United States of America at such place as the holder of this note may from time to time designate.

In case this note should be placed in the hands of attorneys-at-law for the filing of foreclosure proceedings, to protect the rights of the holder hereof or to enforce any of the agreements contained in this note or in the act of mortgage with which this note is identified, the undersigned herein and hereby agrees to pay the reasonable fees of the attorneys-at-law who may be employed for such purposes.

The undersigned severally waives presentment for payment, demand, notice of nonpayment and protest, and agrees that the payment hereof may be extended from time to time, one or more times, without notice.

No delay in the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

_____
ARTHUR L. MURPH, JR.

_____
JEANNE A. CHURCH MURPH

"NE VARIETUR"
For identification with an Act of Collateral Mortgage
Passed before me, Notary, this 9th day of February, 2006

_____
Notary Public
G. PATRICK HAND, JR.
BAR No. 6499

751764-1

## COLLATERAL PLEDGE AGREEMENT

THIS COLLATERAL PLEDGE AGREEMENT ("Agreement") dated February 9, 2006, is made between

ARTHUR L. MURPH, JR., Social Security #XXX-XX-7947, and JEANNE A. CHURCH MURPH, Social Security #XXX-XX-1803, both persons of the full age of majority and residents of the Orleans Parish, State of Louisiana, who declared under oath to me, Notary, that Jeanne Church Murph has been married but once and then to Arthur L. Murph with whom she presently lives and resides and Arthur L. Murph has been married but twice; first to Dianne Bercy from whom he was divorced and secondly to Jeanne Church Murph with whom he presently lives and resides. Mailing Address:  105 Berkley Street, New Orleans, Louisiana 70131.
("Pledgors"),

and

Mutual Marine Office, Inc., a New York corporation, whose address is  919 Third Ave, New York, NY  10022 and whose tax identification number is 13-2511244
("Obligee"),

who agree as follows:

### RECITALS

A. The Pledgors are the owners of the immovable property (the "Mortgaged Property") more particularly described in that certain act of collateral mortgage (the "Collateral Mortgage") executed by the Pledgors of even date herewith, which secures that certain collateral mortgage note (the "Collateral Note") executed by the Pledgors of even date herewith, payable on demand to bearer in the principal sum of $250,000.00 and paraphed for identification with the Collateral Mortgage.

B. Pledgors are or will be indebted unto the Obligee and others for advances and loans made or to be made pursuant to the terms of certain promissory notes by Pledgors in favor of the Obligee ("Hand Notes") and will or could become obligated to Obligee pursuant to one or more agreements, including particularly an agreement entitled "RECEIPT, RELEASE, AND SETTLEMENT AGREEMENT WITH RESERVATION OF RIGHTS", a purchase and sale agreement for the property at 1739 Jourdan Avenue, New Orleans, Louisiana and other related agreements (collectively the "Receipt and Release") among Pledgors and Lafarge North America, Inc., New Jourdan, L.L.C. and others as the Released Parties.

C. The making of the loans and the advancing of funds to purchase the Property by the Obligee to the Pledgors will be of substantial benefit to the Pledgors, and, consequently, in order to induce the Obligee to accept the Hand Notes and to secure the full and punctual payment of the amounts due thereunder and to secure the performance of Pledgors to the Released Parties under the Receipt and Release, the Pledgors have agreed to execute and deliver this Agreement and to pledge, deliver and grant a continuing security interest in and to the Collateral Note.

### AGREEMENT

NOW, THEREFORE, in consideration of the premises, the Pledgors and the Obligee agree as follows:

Section 1. *Definitions.* As used in this Agreement, the terms "Agreement," "Obligee," "Hand Notes", Receipt and Release" and "Pledgors" shall have the meanings indicated above. As used in this Agreement, the terms "Event of Default" and "Indebtedness" have the respective meanings defined in the Collateral Mortgage and including therein all obligations of Pledgors under the Receipt and Release. "Released Parties" shall have the meaning set forth in the Receipt and Release

Section 2. *Pledge of Collateral Note.* The Pledgors do hereby pledge, pawn, and grant a continuing security interest in and deliver the Collateral Note unto the Obligee, together with all of the Pledgors' right, title and interest in the Collateral Mortgage, to secure the full and punctual payment and performance of all present and future Indebtedness to the Obligee or

1

any successor or transferee thereof, including without limitation the Receipt and Release, the Hand Notes, and all promissory notes heretofore or hereafter executed by the Borrower, for specific performance, liquidated damages, and in principal, interest, deferral and delinquency charges, prepayment premiums, costs and attorney's fees, as therein stipulated.

Section 3. *Delivery of Collateral Note.* The Obligee hereby accepts the delivery of the Collateral Note on behalf of itself and on behalf of any future transferee of the Indebtedness or the other obligations secured by this pledge.

Section 4. *Remedies upon Default.* Upon the occurrence of an Event of Default as defined in the Collateral Mortgage or upon the breach by Pledgors of one or more obligations under the Receipt and Release, the Pledgors irrevocably authorize the Obligee to demand payment of and foreclose on the Collateral Note and the Collateral Mortgage and to cause all and singular the Mortgaged Property to be seized and sold under executory or ordinary process, at the Obligee's sole option, without appraisement, appraisement being hereby expressly waived, as an entirety or in parcels as the Obligee may determine, and otherwise to exercise the rights, powers and privileges afforded by the Collateral Mortgage and under applicable Louisiana law. For the purposes of Louisiana executory process procedures, the Pledgors do hereby confess judgment in favor of the Obligee for the full amount of the Indebtedness. The Obligee shall have the right to apply the proceeds of such foreclosure proceedings to the cost of enforcement (including court costs, keeper fees and attorneys' fees) and to the Indebtedness (in principal, interest, late charges or other amounts) in such order as the Obligee shall in its sole discretion determine.

Section 5. *Termination.* Upon the payment in full of the Indebtedness and upon the fulfillment of all obligations of the Pledgors under the Receipt and Release for a period of five (5) years from the date of this agreement, this Agreement shall terminate. Upon request of the Pledgors, the Obligee shall deliver the Collateral Note to the Pledgors and, at the Pledgors' expense, the Obligee shall execute and deliver such instrument or instruments, if any, as the Pledgors may reasonably request to evidence the cancellation of the Collateral Mortgage in the public records.

Section 6. *Notices.* Any notice or demand which, by provision of this Pledge, is required or permitted to be given or served by the Obligee to or on the Pledgors shall be deemed to have been sufficiently given and served for all purposes (if mailed) three calendar days after being deposited, postage prepaid, in the United States mail, registered or certified mail, or (if delivered by express courier) one business day after being delivered to such courier, or (if delivered in person) the same day as delivery, in each case addressed (until another address or addresses is given in writing by the Pledgors to the Obligee) as follows:

> Mutual Marine Office, Inc.
> 919 Third Avenue
> New York, NY 10022
>
> With a copy to
>
> Mr. Daniel A. Webb, Esq.
> Sutterfield & Webb
> 650 Poydras St., Suite 2715
> New Orleans, LA 70130

Any notice or demand which, by any provision of this Pledge, is required or permitted to be given or served by the Pledgors to or on the Obligee shall be deemed to have been sufficiently given and served for all purposes (if mailed) three calendar days after being deposited, postage prepaid, in the United States mail, registered or certified mail, or (if delivered by express courier) one business day after being delivered to such courier, or (if delivered in person) the same day as delivery, in each case addressed (until another address or addresses are given in writing by the Obligee to the Pledgors) as follows:

> **ARTHUR L. MURPH, JR., and/or**
> **JEANNE A. CHURCH MURPH**
> 105 Berkley
> New Orleans, Louisiana

Section 7. *Amendment.* Neither this Agreement nor any provisions hereof may be changed, waived, discharged or terminated orally or in any manner other than by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

2

Section 8. *Waivers*. No course of dealing on the part of the Obligee, its officers, employees, consultants or agents, nor any failure or delay by the Obligee with respect to exercising any of its rights, powers or privileges under this Agreement shall operate as a waiver thereof.

Section 9. *Cumulative Rights*. The rights and remedies of the Obligee under this Agreement shall be cumulative and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any other right or remedy.

Section 10. *Titles of Sections*. All titles or headings to sections of this Agreement are only for the convenience of the parties and shall not be construed to have any effect or meaning with respect to the other content of such sections, such other content being controlling as to the agreement between the parties hereto.

Section 11. *Governing Law*. This Agreement is a contract made under and shall be construed in accordance with and governed by the laws of the United States of America and the State of Louisiana.

Section 12. *Successors and Assigns*. All covenants and agreements contained by or on behalf of the Pledgors in this Agreement shall bind Pledgors' successors and assigns and shall inure to the benefit of the Obligee and its successors and assigns. This Agreement is for the benefit of the Obligee and for such other person or persons as may from time to time become or be the holders of any of the Indebtedness, and this Agreement shall be transferable with the same force and effect and to the same extent as the Indebtedness may be transferable, it being understood that, upon the transfer or assignment by the Obligee of any of the Indebtedness, the legal holder of such Indebtedness shall have all of the rights granted to the Obligee under this Agreement. Pledgors specifically agree that upon any transfer of all or any portion of the Indebtedness, the Obligee may transfer and deliver the Collateral Note to the transferee of such Indebtedness and the Collateral Note and the Collateral Mortgage shall secure any and all of the Indebtedness in favor of such a transferee, that such transfer of the Collateral Note and Collateral Mortgage shall not affect the priority and ranking thereof, and that the Collateral Note and Collateral Mortgage shall secure with retroactive rank the then existing Indebtedness of the Pledgors to the transferee and any and all Indebtedness thereafter arising. After any such transfer has taken place, the Obligee shall be fully discharge from any and all future liability and responsibility to the Pledgors with respect to the Collateral Note and Collateral Mortgage, and the transferee thereafter shall be vested with all the powers, rights and duties with respect to the Collateral Note and Collateral Mortgage.

Section 13. *Counterparts*. This Agreement may be executed in two or more counterparts, and it shall not be necessary that the signature of all parties hereto be contained on any one counterpart hereof; each counterpart shall be deemed an original, but all of which when taken together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the Pledgors and the Obligee have caused this Agreement to be duly executed as of the date first above written.

PLEDGORS:

_____
ARTHUR L. MURPH, JR.

_____
JEANNE A. CHURCH MURPH

OBLIGEE:

By:_____

3

# PROMISSORY NOTE

New Orleans, Louisiana

$50,000.00

February 9, 2006

FOR VALUE RECEIVED, the undersigned promises to pay on demand to Bearer the sum of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS, with interest thereon at the rate of twelve (12%) percent per annum from March 1, 2006 until paid.  This note may be paid in full by delivery of title to the land and all improvements thereon known by the municipal address 1739 Jourdan Avenue, New Orleans, Louisiana to New Jourdan, L.L.C. free and clear of all liens, claims and encumbrances from the undersigned to the holder of this Promissory Note or its designee through performance in full of a purchase and sale agreement dated of even date herewith.

Both principal and interest shall be payable in lawful money of the United States of America at such place as the holder of this promissory note may from time to time designate.

In case this promissory note should be placed in the hands of attorneys-at-law for collection, the undersigned herein and hereby agrees to pay the reasonable fees of the attorneys-at-law who may be employed for such purposes.

The undersigned severally waives presentment for payment, demand, notice of nonpayment and protest, and agrees that the payment hereof may be extended from time to time, one or more times, without notice.

No delay in the part of the holder hereof in exercising any rights hereunder shall operate as a waiver of such rights.

_____
ARTHUR L. MURPH, JR.

_____
JEANNE A. CHURCH MURPH

751869-1

| | | |
|---|---|---|
| ACT OF SALE OF PROPERTY | * | UNITED STATES OF AMERICA |
| | * | |
| | * | STATE OF LOUISIANA |
| BY:  ARTHUR L. MURPH, JR., AND | * | PARISH OF ORLEANS |
| JEANNE A. CHURCH MURPH | * | |
| | * | STATE OF NEW YORK |
| TO:  NEW JOURDAN, L.L.C. | * | COUNTY OF _____ |

**\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \***

**BE IT KNOWN,** that on the days of December 2007 set forth herein below,

**BEFORE US,** the undersigned, Notaries Public, duly commissioned and qualified within and for the below named Parish or County and State, and in the presence of the witnesses hereinafter named and undersigned, personally came and appeared:

**JEANNE A. CHURCH** (SS#: XXX-XX-*1803*) wife of and **ARTHUR L. MURPH, JR.,** (SS#: XXX-XX-*7947*) who declared to me that they are married to and living with each other and that they are living and residing at .
Mailing Address: 105 Berkley Drive, New Orleans, LA. 70131
(hereinafter "**Seller**"),

who declares that they do by these presents grant, bargain, sell, convey, transfer, assign, set over, abandon and deliver, with all legal warranties and with full substitution and subrogation in and to all rights and actions of warranty which they have or may have against all preceding owners and vendors, unto:

**NEW JOURDAN, L.L.C.,** (TIN#: _____, a Louisiana limited liability company herein represented by Paul Hart, its duly authorized representative.
Mailing Address: 322 Hector, Metairie, LA 70005
(hereinafter "**Purchaser**"),

here present accepting and purchasing for Purchaser and Purchaser's, successors and assigns, and acknowledging due delivery and possession thereof, all and singular, the following described property ("**Property**"), to-wit:

ONE (1) CERTAIN LOT OF GROUND, together with all buildings and improvements thereon and all the rights, ways, privileges, servitudes and advantages thereunto belonging or in anywise appertaining, situated in the Third District of the City of New Orleans, State of Louisiana, in Square No. 807, bounded by Jourdan Avenue, North Derbigny Street, North Roman and Deslonde Streets; said lot is designated by the Lot No. Eight (8) of said square, and measures forty (40') feet front on Jourdan Avenue, same width in the rear, by a depth, between equal and parallel lines, of one hundred ten (110') feet.

All according to plan of survey made by Gilbert and Kelly, Surveyors, dated December 29, 1926, copy of which is attached to an act of sale to Angus T. Stanley, passed before S. T. Cristina, Notary Public in and for the Parish of Jefferson, dated July 23, 1945;

Improvements thereon bear the municipal no. 1739 Jourdan Avenue, New Orleans, Louisiana 70117

("Property")

**TO HAVE AND TO HOLD** the above described Property unto the said Purchaser and Purchaser's successors and assigns forever.

This sale is made and accepted for and in consideration of the price and sum of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS cash and other good and valuable consideration, which the said Purchaser has well and truly paid, in ready and current money to said Seller, who hereby acknowledges the receipt thereof and grants full acquittance and discharge therefor.

Purchaser and Seller hereby acknowledge that this sale is in an "**AS IS**" condition and without any warranty whatsoever, whether express or implied, including, but not limited to, any such warranties with respect to fitness for intended purpose or any such warranties against vices and defects, even hidden or latent defects that could not be discovered by an inspection, including but not limited to termites, mold, and

mildew.  The foregoing waiver includes, but is not limited to, a waiver of all rights or remedies on account of redhibitory vices or defects, claims or actions *in quanti minoris,* or claims or actions for the return of all or any part of the purchase price of the unit.

Seller and Purchaser hereby acknowledge and recognize that this sale is in an "As Is" condition, and accordingly, Purchaser does hereby relieve and release Seller and all previous owners thereof from any and all claims for any vices or defects in said property, whether obvious or latent, known or unknown, easily discoverable or hidden, and particularly for any claim or cause of action for redhibition pursuant to Louisiana Civil Code Articles 2520, *et seq.,* or for diminution of purchase price pursuant to Louisiana Civil Code Articles 2541, *et seq.,* or for fitness for Purchaser's ordinary use pursuant to Civil Code Articles 2524, *et seq.* as same may apply to the unit, common elements or limited common elements.  Purchaser or their representatives have fully examined and inspected the property and acknowledge that Purchaser is satisfied with the physical condition, including but not limited to foundation, structures, utilities concerning but not limited to design, material, construction and workmanship of the premises in all respects, including but not limited to, any visible or hidden termite infestation and resultant damage therefrom, and that same is acceptable to Purchaser.

Purchaser acknowledges that the foregoing waivers have been called to Purchaser's attention and read and explained to Purchaser and that they are a material and integral consideration for this Act of Sale of Property.

The parties to this act hereby voluntarily waive the production and attachment of any and all research certificates required by law, statute or customarily obtained, including conveyance, mortgage, tax sale and local improvement lien certificates.  Pursuant to this waiver, the parties hereby indemnify and hold harmless Chaffe McCall, L.L.P. and the undersigned attorney/notary public from any penalty, liability or responsibility whatsoever in connection with or resulting from this waiver of certificates.

This sale is made subject to:

(i)     Building and use restrictions, conditions, covenants, reservations, exceptions, easements, rights of way, and all other rights and agreements of record; and

(ii)    Applicable zoning, building and land use laws, rules and regulations.

Purchaser and Seller covenant and agree that this sale is made subject to the restrictions and servitudes of record and visible from an inspection of the Property.

**THUS DONE AND PASSED,** on the 5th day of December 2007,  in New Orleans, Louisiana, in the presence of the undersigned competent witnesses, who hereunto subscribe their names with the below appearers and me, Notary.

WITNESSES:                                              SELLERS:

_____          _____
Printed Name: 2.5 RICHT HOFFLN Jr.           JEANNE A. CHURCH MURPH

_____          _____
Print Name: Stacy Phillips                          ARTHUR L. MURPH, JR.


_____
NOTARY PUBLIC
HARRY R. HOLLADAY
LA Bar Roll No. 06950
My Commission is Issued for Life.

**THUS DONE AND PASSED**, on the 17Th day of December  2007 in New York, New York, in the presence of the undersigned competent witnesses, who hereunto subscribe their names with the below appearer and me, Notary.

WITNESSES:

PURCHASER:
NEW JOURDAN, L.L.C.

Print Name: _Diane VoTinelli_

BY: _____
    Paul Hart, Agent
    J.

Printed Name: _Kristina H. Neff_


_____
NOTARY PUBLIC
My Commission expires _11-19-09_.

JEAN M. GUARNERI
Notary Public, State of New York
No. 01GU6066639
Qualified in Richmond County
Commission Expires November 19, 20 09

1004894-1

3