



PRESS RELEASE

FOR IMMEDIATE RELEASE

CONTACTS
Investors: Eric Olsen (703) 480-6705
Media: Sherry Peske (703) 480-3632

### Special Committee of Lafarge North America Board of Directors
### Considering Tender Offer Commenced by Lafarge S.A.

HERNDON, VA, February 21, 2006 — Lafarge North America Inc. (NYSE & TSX: LAF), the leading supplier of construction materials in the U.S. and Canada, today confirmed that its majority stockholder, Lafarge S.A. (Paris Stock Exchange: LG; NYSE: LR), has commenced a cash tender offer to acquire all of the outstanding shares of Lafarge North America's common stock not already owned by Lafarge S.A. or its affiliates for $75.00 per share. As part of the transaction, Lafarge S.A. is also offering to purchase all outstanding exchangeable preference shares of Lafarge Canada Inc., a subsidiary of Lafarge North America.

The tender offer is under consideration by the Special Committee of the Board of Directors of Lafarge North America, which is comprised of directors who are unaffiliated with Lafarge S.A. The Special Committee is being assisted in its consideration of the tender offer by its financial, legal and other advisors, including Merrill Lynch & Co., Simpson Thacher & Bartlett LLP, Venable LLP and MacKenzie Partners, Inc.

On or before March 6, 2006, Lafarge North America intends to file with the Securities and Exchange Commission a Solicitation/Recommendation Statement on Schedule 14D-9 stating whether the Special Committee recommends acceptance or rejection of the tender offer, expresses no opinion and remains neutral toward the tender offer, or is unable to take a position with respect to the tender offer, as well as setting forth the Special Committee's reasons for its position with respect to the tender offer. Lafarge North America stockholders are urged to defer making any determination with respect to the tender offer until they have been advised of the Special Committee's position with respect to the tender offer.

**Profile**

Lafarge North America is the U.S. and Canada's largest diversified supplier of construction materials such as cement and cement-related products, ready-mixed concrete, gypsum wallboard, aggregates, asphalt and concrete products. The company's materials are used in residential, commercial, institutional and public works construction across the U.S. and Canada. In 2005, net sales exceeded $4.3 billion.

**Note to Stockholders**

In response to the tender offer commenced by Lafarge S.A., Lafarge North America Inc. will file with the SEC a Solicitation/Recommendation Statement on Schedule 14D-9 Lafarge North America stockholders are advised to read Lafarge North America's Solicitation/Recommendation Statement on Schedule 14D-9 when it becomes available because it will contain important information. Stockholders may obtain a free copy of the Solicitation/Recommendation Statement on Schedule 14D-9 (when it becomes available), as well as any other documents filed by Lafarge North America in connection with the tender offer commenced by Lafarge S.A., free of charge at the SEC's website at www.sec.gov, or from Lafarge North America at www.lafargenorthamerica.com, or by directing requests to MacKenzie Partners, Inc. at 800-322-2885 or at proxy@mackenziepartners.com

Statements made in this press release that are not historical facts are forward-looking statements made pursuant to the safe harbor provisions of the Private Securities Litigation Reform Act of 1995. You can identify these statements by forward-looking words such as *"may," "will," "expect," "intend," "anticipate," "believe," "estimate," "plan," "could," "should,"* and *"continue"* or similar words. These forward-looking statements may also use different phrases. Such forward-looking statements are not guarantees of future performance and involve risks, uncertainties and assumptions (*"Factors"*), which are difficult to predict. Some of the Factors that could cause actual results to differ materially from those expressed in the forward-looking statements include, but are not limited to: the cyclical nature of the Company's business; national and regional economic conditions in the U.S. and Canada; Canadian currency fluctuations; seasonality of the Company's operations; levels of construction spending in major markets; supply/demand structure of the industry; competition from new or existing competitors; unfavorable weather conditions during peak construction periods; changes in and implementation of environmental and other governmental regulations; our ability to successfully identify, complete and efficiently integrate acquisitions; our ability to successfully penetrate new markets; and other Factors disclosed in the Company's Annual Report on Form 10-K and Quarterly Reports on Form 10-Q filed with the Securities and Exchange Commission. In general, the Company is subject to the risks and uncertainties of the construction industry and of doing business in the U.S. and Canada. The forward-looking statements are made as of this date and the Company undertakes no obligation to update them, whether as a result of new information, future events or otherwise.

# # #

*Visit the Lafarge North America web site at www.lafargenorthamerica.com*

# Offer to Purchase for Cash
## All Outstanding Shares of Common Stock
## of
# LAFARGE NORTH AMERICA INC.
## at
## $75.00 Net Per Share
## by
# EFALAR INC.
## a wholly-owned subsidiary of
# LAFARGE S.A.

---

**THE OFFER AND WITHDRAWAL RIGHTS WILL EXPIRE AT 12:00 MIDNIGHT, NEW YORK CITY TIME, ON MONDAY, MARCH 20, 2006, UNLESS THE OFFER IS EXTENDED.**

---

February 21, 2006

**To Our Clients:**

Enclosed for your information is an Offer to Purchase, dated February 21, 2006 (the *"Offer to Purchase"*), and the related Letter of Transmittal (which, together with the Offer to Purchase, as amended or supplemented from time to time, collectively constitute the *"Offer"*), relating to the Offer by Efalar Inc., a Delaware corporation (*"Purchaser"*) and a wholly-owned subsidiary of Lafarge S.A., a French société anonyme (*"Parent"*), to purchase all of the outstanding shares of common stock, par value $1.00 per share (the *"Common Shares"*), of Lafarge North America Inc., a Maryland corporation (the *"Company"*), at a price of $75.00 per Common Share, net to the seller in cash, without interest thereon, upon the terms and subject to the conditions set forth in the Offer to Purchase.

We are the holder of record (directly or indirectly) of Common Shares held by us for your account. A tender of such Common Shares can be made only by us as the holder of record and pursuant to your instructions. The Letter of Transmittal accompanying this letter is furnished to you for your information only and cannot be used by you to tender Common Shares held by us for your account.

We request instructions as to whether you wish to tender any or all of the Common Shares held by us for your account, pursuant to the terms and conditions set forth in the Offer to Purchase.

Your attention is directed to the following:

1. The offer price is $75.00 per Common Share, net to the seller in cash, without interest thereon, upon the terms and subject to the conditions set forth in the Offer to Purchase.

2. The Offer is being made for all of the outstanding Common Shares not already owned by Parent and its subsidiaries.

3. Concurrently with the Offer, Parent, through another of its wholly-owned subsidiaries, is offering to acquire all of the exchangeable preference shares (the *"Exchangeable Preference Shares"* and, such offer, the *"EPS Offer"*) of Lafarge Canada Inc. (*"Lafarge Canada"*). The Exchangeable Preference Shares are convertible into Common Shares on a 1-for-1 basis, subject to adjustment in accordance with their terms, and the per share offer price in the EPS Offer is the same as the per share price offered for the Common Shares in the Offer. That offer is subject to the

conditions contained in the Offer to Purchase, and Parent will not consummate the acquisition of such Exchangeable Preference Shares unless Parent also consummates the acquisition of the Common Shares pursuant to the Offer

4. **The Offer is conditioned upon, among other things, (i) there being validly tendered and not withdrawn a number of Common Shares which, when taken together with the Exchangeable Preference Shares validly tendered and not withdrawn pursuant to the EPS Offer, will constitute at least a majority of the outstanding Common Shares and Exchangeable Preference Shares, taken together as a single class, as of the date the Common Shares are accepted for payment pursuant to the Offer, excluding Common Shares and Exchangeable Preference Shares beneficially owned by Parent and certain other persons as set forth in the Introduction of the Offer to Purchase (the "*Minimum Tender Condition*") and (ii) there being validly tendered and not withdrawn a sufficient number of Common Shares such that, upon acceptance for payment and payment for the tendered Common Shares pursuant to the Offer (and taking into account any Exchangeable Preference Shares to be accepted for payment in the EPS Offer), Parent will, directly or through wholly-owned subsidiaries, own a number of Common Shares and Exchangeable Preference Shares representing at least 90% of the issued and outstanding Common Shares and Exchangeable Preference Shares, taken together as a single class, as of the date the Common Shares are accepted for payment pursuant to the Offer. The Minimum Tender Condition is not waivable. The Offer is also subject to certain other conditions set forth in the Offer to Purchase. See "*THE OFFER — Section 11. Conditions to the Offer*" of the Offer to Purchase.**

5. The Offer and withdrawal rights will expire at 12 00 midnight, New York City time, on Monday, March 20, 2006 (the "**Expiration Date**"), unless Purchaser has extended the period of time during which the Offer is open, in which event the term "*Expiration Date*" shall mean the latest time and date at which the Offer, as so extended by Purchaser, shall expire

6. Any stock transfer taxes applicable to the sale of Common Shares to Purchaser pursuant to the Offer will be paid by Purchaser, except as otherwise provided in Instruction 6 of the Letter of Transmittal

If you wish to have us tender any or all of the Common Shares held by us for your account, please so instruct us by completing, executing and returning to us in the enclosed envelope the instruction form set forth below. If you authorize the tender of your Common Shares, all such Common Shares will be tendered unless otherwise specified on the instruction form set forth below. **Please forward your instructions to us in ample time to permit us to submit a tender on your behalf prior to the Expiration Date.**

Payment for Common Shares will be in all cases made only after such Common Shares are accepted by Purchaser for payment pursuant to the Offer and the timely receipt by Computershare Shareholder Services, Inc. (the "*Depositary*") of (a) certificates for such Common Shares or a Book-Entry Confirmation (as defined in the Offer to Purchase) with respect to such Common Shares, (b) a Letter of Transmittal, properly completed and duly executed, with any required signature guarantees (or, in the case of a book-entry transfer, an Agent's Message (as defined in the Offer to Purchase) in lieu of the Letter of Transmittal) and (c) any other documents required by the Letter of Transmittal Accordingly, tendering shareholders may be paid at different times depending upon when certificates for Common Shares or Book-Entry Confirmations with respect to Common Shares are actually received by the Depositary **Under no circumstances will interest be paid on the purchase price for Common Shares, regardless of any extension of the Offer or any delay in payment for Common Shares.**

The Offer is not being made to (nor will tenders be accepted from or on behalf of) holders of Common Shares in any jurisdiction in which the making or acceptance of the Offer would not be in compliance with the laws of such jurisdiction However, Purchaser may, in its sole discretion, take such action as it may deem necessary to make the Offer in any such jurisdiction and extend the Offer to holders of Common Shares in such jurisdiction Neither Purchaser nor Parent is aware of any jurisdiction in which the making of the Offer or the acceptance of Common Shares in connection therewith would not be in compliance with the laws of such jurisdiction

2

**Instructions with Respect to the**
**Offer to Purchase for Cash**
**All Outstanding Shares of Common Stock**
**of**
# LAFARGE NORTH AMERICA INC.
**at**
**$75.00 Net Per Share**
**by**
**EFALAR INC.**
**a wholly-owned subsidiary of**
**LAFARGE S.A.**

The undersigned acknowledge(s) receipt of your letter and the enclosed Offer to Purchase, dated February 21, 2006 (the *"Offer to Purchase"*) and the related Letter of Transmittal (which, together with the Offer to Purchase, as amended or supplemented from time to time, collectively constitute the *"Offer"*) in connection with the offer by Efalar Inc., a Delaware corporation (*"Purchaser"*) and a wholly-owned subsidiary of Lafarge S.A., a French société anonyme (*"Parent"*), to purchase for cash all of the outstanding shares of common stock, par value $1.00 per share (the *"Common Shares"*), of Lafarge North America Inc., a Maryland corporation (the *"Company"*), at $75.00 per Common Share, net to the seller in cash, without interest thereon, upon the terms and conditions set forth in the Offer to Purchase.

This will instruct you to tender the number of Common Shares indicated below (or if no number is indicated below, all Common Shares) that are held by you for the account of the undersigned, upon the terms and subject to the conditions set forth in the Offer to Purchase and the related Letter of Transmittal.

The undersigned understands and acknowledges that all questions as to validity, form and eligibility of the surrender of any certificate representing Common Shares submitted on my behalf to the Depositary will be determined by Purchaser (which may delegate power in whole or in part to the Depositary) and such determination shall be final and binding.

---

Number of Common Shares to Be Tendered _____ Common Shares*

**Sign Below**

Account Number: _____  Signature(s): _____

Dated: _____, 2006

**Please Type or Print Name(s)**

**Please Type or Print Address(es) Here**

**Area Code and Telephone Number**

**Taxpayer Identification or Social Security Number(s)**

_____

\* Unless otherwise indicated, you are deemed to have instructed us to tender all Common Shares held by us for your account.

---

**Please return this form to the brokerage firm or other nominee maintaining your account.**

# "*Efalar Inc*"

### *Latest Filing:* **5/15/06 as Group Member**

---

### *As:* **Group Member** *(Non-Registrant Filer: Partner, Affiliate, etc.)*

### List All Filings as Group Member

### Search Recent Filings (as Group Member) for "*Efalar Inc*"

### "*Efalar Inc*" has been a Group Member with the following Registrant:

- Lafarge [ formerly Lafarge Coppee SA Et Al ]

### "*Efalar Inc*" has/had a Group Member interest in the following Registrant:

- Lafarge North America Inc

### "*Efalar Inc*" has been a Group Member with the following Group Member:

- *Cementia Holding A/G*

---

*Copyright © 2008 **Fran Finnegan & Company**  All Rights Reserved.*
*www.secinfo.com - Tue, 3 Jun 2008 23:01:55.1 GMT - Help at SEC Info*

*SEC Info*   Home   **Search**   My Interests   Help   User Info   ***Brian Gilbert***

# Search

*Search by Name, Industry, Business, SIC Code, Area Code, Topic, CIK, Accession Number, File Number, Date, ZIP, ...*   | Efalar Inc |   [ Search ]

*(Hints: Use names, not tickers.  Be concise.  Don't punctuate.  One or two words usually works best.)*

## "Efalar Inc"

---

### No Registrants *(Public Companies / Funds, Significant Individuals / Owners, et al.)*

### Try "Efala In" or simply "Efalar" or "Inc".

---

### 2 Group Members *(Non-Registrant Filers:  Partners, Affiliates, et al.)*

| *Last Filing* | *Name* |
|---|---|
| | (more-likely to less-likely) |
| 2/21/06 | *Efalar Inc* [ with Lafarge ] |
| 5/15/06 | *Efalar Inc* [ with Lafarge ] |

---

### No Names *(Directors, Officers, Attorneys, Accountants, Bankers, Agents, et al.)*

---

### No Industries *(2/3/4-Digit SIC Codes)*

---

### No Businesses *(5/6-Digit SIC Codes)*

---

A scan of **Topics** was *not* performed.  Search through **Topics** now.

---

*If you are looking for an SEC/CSA registrant who was not found:* (1) Use names or initials, and not tickers nor symbols, to minimize any ambiguity;  (2) Be concise, since one or two distinctive words usually works best;  (3) Minimize punctuation, because the SEC does so when assigning names;  (4) Be aware that this service only contains filings made electronically;  and (5) Note that not all foreign entities are required to file electronically in the U.S.

---

*Copyright © 2008 **Fran Finnegan & Company**  All Rights Reserved.*
*www.secinfo.com - Tue, 3 Jun 2008 23:00:23.15 GMT - Help at SEC Info*

*SEC Info*   Home   Search   My Interests   Help   User Info   *Brian Gilbert*

# Lafarge, et al. · SC 13D/A · Lafarge North America Inc · On 2/6/06

### Filed On 2/6/06 6:07am ET · SEC File 5-34692 · Accession Number 950123-6-1110

Find Efalar Inc   in this entire Filing.   Show Docs searched   and every "hit".
Help   Wildcards: ? (any letter), * (many), Logic: for Docs & (and), (or) for Text (anywhere), "(&)" (near)

| As Of | Filer | Filing | As/For/On | Docs:Pgs | Issuer | Agent |
|---|---|---|---|---|---|---|
| 2/06/06 | Lafarge Cementia Holding A/G Efalar Inc | SC 13D/A | | 9:160 | Lafarge North America Inc | 950123 |

### Amendment to General Statement of Beneficial Ownership · Schedule 13D
### Filing Table of Contents

| Document/Exhibit | Description | Pages | Size |
|---|---|---|---|
| 1: SC 13D/A | Amendment No. 17 to Schedule 13d | HTML | 68K |
| 2: EX-99.A | Ex-99.A: Directors and Executive Officers of Lafarge S.A. | HTML | 11K |
| 3: EX-99.B | Ex-99.B: Directors and Executive Officers of Cementia Holding A.G. | HTML | 7K |
| 4: EX-99.C | Ex-99.C: Directors and Executive Officers of Efalar Inc. | HTML | 6K |
| 5: EX-99.D | Ex-99.D:Letter to Board of Lafarge North America Inc. | HTML | 11K |
| 6: EX-99.E | Ex-99.E: Press Release | HTML | 15K |
| 7: EX-99.F | Ex-99.F: Joint Filing Agreement | HTML | 14K |
| 8: EX-99.G | Ex-99.G: $2,400,000,000 Credit Facility | HTML | 375K |
| 9: EX-99.H | Ex-99.H: Euro 1,850,000,000 Credit Facility | HTML | 431K |

### SC 13D/A · Amendment No. 17 to Schedule 13d
### Document Table of Contents

| Page | (sequential) | | (alphabetic) | Top |
|---|---|---|---|---|
| 1 | 1st Page | | Alternative Formats (RTF, XML, et al.) | |
| " | Table of Contents | | Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer | |
| " | Item 1. Security and Issuer | | Identity and Background | |
| " | Item 2. Identity and Background | | Interest in Securities of the Issuer | |
| " | Item 3. Source and Amount of Funds or Other Consideration | | Material to Be Filed as Exhibits | |
| " | Item 4. Purpose of Transaction | | Purpose of Transaction | |
| " | Item 5. Interest in Securities of the Issuer | | Security and Issuer | |
| " | Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer | | Signature | |
| " | Item 7. Material to Be Filed as Exhibits | | Source and Amount of Funds or Other Consideration | |
| " | Signature | | Table of Contents | |

Table of Contents

| OMB APPROVAL |
| --- |
| OMB Number: 3235-0145 |
| Expires: January 31, 2006 |
| Estimated average burden hours per response...15 |

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

## SCHEDULE 13D

Under the Securities Exchange Act of 1934
(Amendment No. 17 )*

# LAFARGE NORTH AMERICA INC.

(Name of Issuer)

COMMON STOCK, PAR VALUE $1.00 PER SHARE
(Title of Class of Securities)

505862-10-2
(CUSIP Number)

Laurent Alpert
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone (212) 225-2340
(Name, Address and Telephone Number of Person Authorized to
Receive Notices and Communications)

February 5, 2006
(Date of Event Which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box. ☐

Note: Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See §240.13d-7 for other parties to whom copies are to be sent.

* The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "*filed*" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("*Act*") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes).

**Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.**

## TABLE OF CONTENTS

Item 1. Security and Issuer
Item 2. Identity and Background
Item 3. Source and Amount of Funds or Other Consideration
Item 4. Purpose of Transaction
Item 5. Interest in Securities of the Issuer
Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer
Item 7. Material to Be Filed as Exhibits
SIGNATURE
EX-99.A: DIRECTORS AND EXECUTIVE OFFICERS OF LAFARGE S.A.
EX-99.B: DIRECTORS AND EXECUTIVE OFFICERS OF CEMENTIA HOLDING A.G.
EX-99.C: DIRECTORS AND EXECUTIVE OFFICERS OF EFALAR INC.
EX-99.D: LETTER TO BOARD OF LAFARGE NORTH AMERICA INC.
EX-99.E: PRESS RELEASE
EX-99.F: JOINT FILING AGREEMENT
EX-99.G: $2,800,000,000 CREDIT FACILITY
EX-99.H: EURO 1,850,000,000 CREDIT FACILITY

Table of Contents

### Item 1. Security and Issuer

This Statement amends and supplements the Schedule 13D dated March 21, 1985, as previously amended and supplemented on April 24, 1986, September 26, 1986, December 8, 1986, October 16, 1987, July 8, 1988, August 11, 1988, August 1, 1990, January 17, 1991, April 10, 1991, July 1, 1991, July 13, 1991, January 10, 1992, October 20, 1993, April 7, 1997 and August 24, 2000, relating to the common stock, $1.00 par value per share (the *"Common Shares"*), of Lafarge North America Inc. (the *"Company"* or *"LNA"*), formerly known as Lafarge Corporation, filed by Lafarge S.A. and Cementia Holding A.G. Unless otherwise defined or provided herein, all terms are used as defined in the Schedule 13D which this Statement amends.

### Item 2. Identity and Background

Item 2 is hereby amended and restated in its entirety as follows:

The persons filing this Statement are Lafarge S.A. (*"LSA"*), a société anonyme organized under the laws of France, Cementia Holding A.G. (*"Cementia"*), a corporation organized under the laws of Switzerland and a wholly-owned subsidiary of LSA and a member of the Lafarge Group (as defined below) and Efalar Inc. (*"Efalar"*), a corporation organized under the laws of Delaware and a wholly-owned subsidiary of Lafarge S.A. and a member of the Lafarge Group. Lafarge S.A., Cementia and Efalar are hereunder collectively referred to as the *"Reporting Persons."* Lafarge S.A. in February 1984, had previously filed a statement on Schedule 13G with respect to the Common Shares.

The address of Lafarge S.A.'s principal business and principal office is 61, Rue des Belles Feuilles, B.P. 75782 Paris Cedex 16, France. The address of Cementia's principal business and principal office is Nuschelerstrasse 45, CH-8001 Zurich, Switzerland. The address of Efalar's principal business and principal office is 61, Rue des Belles Feuilles, B.P. 75782 Paris Cedex 16, France.

LSA and its subsidiary and affiliated companies (*"Lafarge Group"*) are principally engaged in the manufacture and sale of cement, aggregates and concrete, roofing and gypsum and related products. The activities of the Lafarge Group are carried out in numerous countries in Western Europe, North America, Mediterranean Basin, Central & Eastern Europe, Latin America, Africa and Asia/Pacific. LSA is a public company whose shares primarily trade on Euronext (Paris). LSA's shares are included in the CAC40 Index the SBF 250 100 Index and the Dow Jones Eurostoxx 50 Index. LSA's shares have traded on the New York Stock Exchange in the form of American Depositary Shares, or ADSs under the symbol *"LR"* since July 23, 2001.

Cementia holds investments in companies engaged in cement trading for the Lafarge Group as well as shipping. Cementia is a wholly-owned subsidiary of LSA.

Efalar is a wholly-owned subsidiary of LSA and was created specifically to purchase and hold Common Shares of the Company.

1

Table of Contents

The name, residence or business address, citizenship and present principal occupation or employment of LSA's, Cementia's, and Efalar's directors and executive officers, and the name, address and principal business of the corporation (if other than LSA, Cementia or Efalar) in which such employment is conducted, are listed on Exhibits A, B and C respectively.

During the last five years, none of the Reporting Persons, nor any of the persons listed as directors or executive officers of the Reporting Persons, has been convicted in a criminal proceeding, excluding traffic violations and similar misdemeanors.

During the last five years, none of the Reporting Persons, nor any of the persons listed as directors or executive officers of the Reporting Persons, was a party to a civil proceeding of a United States judicial or administrative body of competent jurisdiction and as a result of such proceeding was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

## Item 3. Source and Amount of Funds or Other Consideration

Item 3 is hereby amended and restated in its entirety as follows:

In order to finance the tender offer and related transactions, Parent has entered into a $2,800,000,000 credit agreement with JPMorgan and BNP Paribas. In addition, in connection with the tender offer LSA also expects to borrow funds under an existing €1,850,000,000 credit facility agreement with a syndicate of other banks.

*$2,800,000,000 Credit Facility.* In connection with the transaction, Parent entered into a $2,800,000,000 Credit Facility, dated February 5, 2006 (the *"$2,800,000,000 Credit Facility"*), with BNP Paribas and JPMorgan plc. This facility will provide a revolving credit line in the amount of $2,800,000,000, which may be disbursed either in dollars or Euros. This facility has a maturity of 364 days (from the date of the facility). At its maturity, LSA may elect to obtain a loan for an additional six months in an amount up to $1,400,000,000. LSA may be required to prepay amounts owed under this facility from the proceeds of certain debt or equity financings.

*€1,850,000,000 Credit Facility.* LSA is a party to a €1,850,000,000 Credit Facility, dated October 29, 2004 and amended July 28, 2005 (as amended, the *"€1,850,000,000 Credit Facility"*), with the Royal Bank of Scotland plc, Société Générale, HSBC CCF, Citibank International plc, London branch and Calyon. This facility provides a revolving credit in the amount of €1,850,000,000, which may be disbursed either in dollars or Euros. This facility has a maturity of five-years (from the date of amendment).

Borrowing under each of the $2,800,000,000 Credit Facility and the €1,850,000,000 Credit Facility bears interest at a rate equal to (a) LIBOR, in the case of loans denominated in U.S. dollars, or EURIBOR, in the case of loans denominated in Euros, plus (b) a margin of 0.225% per annum (in the case of the $2,800,000,000 Credit Facility) and 0.20% (in the case of the €1,850,000,000 Credit Facility), subject in each case to adjustments for certain additional costs. Each facility also provides for a commitment fee for unutilized commitments in the amount of 0.06% per annum as well as other customary conditions.

2

Table of Contents

Borrowing under each of the $2,800,000,000 Credit Facility and the €1,850,000,000 Credit Facility is subject to the satisfaction of customary closing conditions. In addition, funding under the $2,800,000,000 Credit Facility is conditioned on the closing of the tender offer on or before May 31, 2006.

The summaries set forth above do not purport to be complete and are qualified in their entirety by reference to the $2,800,000,000 Credit Facility and the €1,850,000,000 Credit Facility, each of which is attached hereto as Exhibits G and H, respectively, and is incorporated herein by reference.

### Item 4. Purpose of Transaction

Item 4 is hereby amended and restated in its entirety as follows:

On February 5, 2006, LSA submitted a letter to the Board of Directors of the Company setting forth LSA's proposal to acquire via a tender offer all of the outstanding Common Shares not currently beneficially owned by the Reporting Persons in exchange for $75.00 in cash per share, subject to customary conditions. A copy of such letter is attached hereto as Exhibit D and the press release announcing the proposal are attached hereto as Exhibits E, each of which is incorporated herein by reference. The description herein of the proposal and the matters contemplated thereby is qualified in its entirety by reference to such letter and press releases.

If after the tender offer, LSA directly or indirectly owns at least 90.0% of the securities entitled to vote with respect to a merger, it plans, in compliance with the applicable provisions of the Maryland General Corporation Law and the Delaware General Corporation Law, to effect a "short-form" merger of the Company with Efalar, a wholly-owned subsidiary of LSA. If the proposed transaction is completed, the Company will become a wholly-owned subsidiary of LSA, and LSA plans to combine the Company with Blue Circle North America, a wholly-owed subsidiary of LSA.

The Common Shares of the Company are currently listed on the NYSE and registered under the Exchange Act. Depending upon the aggregate market value and the per Common Share price of any Common Shares not purchased pursuant to the tender offer, the Common Shares may no longer meet the requirements for continued listing on the NYSE and may no longer require registration under the Exchange Act. LSA currently intends to seek the delisting of the Common Shares from the NYSE and to cause the Company to terminate the registration of the Common Shares under the Exchange Act as soon as practicable after consummation of the proposed transaction if the requirements for such delisting and termination of registration are met.

The exchangeable preference shares of Lafarge Canada are listed on the Toronto Stock Exchange and are exchangeable, at any time at the option of the holder, into Common Shares of the Company. LSA intenders to make a concurrent offer for the exchangeable preference shares of Lafarge Canada and to seek the delisting of the exchangeable preference shares of Lafarge Canada from the Toronto Stock Exchange

3

Table of Contents

Except as set forth in this Item 4, none of the Reporting Persons has any present plans or proposals which relate to or would result in any of the matters set forth in paragraphs (a) through (j) of Item 4 of Schedule 13D (although the right to develop such plans or proposals is reserved).

### Item 5. Interest in Securities of the Issuer

Item 5 is hereby amended and restated in its entirety as follows:

As of February 5, 2006, the Lafarge Group beneficially owned, in the aggregate, 40,093,581 Common Shares (computed as provided in Rule 13D-3(d)(1) and including 488,520 Common Shares which it has a right to acquire upon exchange of the exchangeable preference shares of Lafarge Canada for Common Shares).

As of February 5, 2006, LSA beneficially owned 31,690,566 Common Shares (computed as provided in Rule 13D-3(d)(1) and including 98,006 Common Shares which it has a right to acquire upon exchange of the exchangeable preference shares of Lafarge Canada for Common Shares)

As of February 5, 2006, Cementia beneficially owns 8,403,015 Common Shares (computed as provided in Rule 13D-3(d)(1) and including 390,514 Common Shares which it has a right to acquire upon exchange of the exchangeable preference shares of Lafarge Canada for Common Shares).

Efalar does not beneficially own any Common Shares.

Included within LSA and the Lafarge Group's aggregate beneficial ownership of Common Shares are 23,914,976 Common Shares (computed as provided in Rule 13D-3(d)(1)) held of record and legally owned by Lafarge (U.S.) Holdings, a Maryland trust, in which LSA owns 100.0% of the beneficial interest. For purposes of this Statement, the 23,914,976 Common Shares held of record and legally owned by Lafarge (U.S.) Holdings are reported as directly owned by LSA and the Lafarge Group. The Lafarge (U.S.) Holdings Agreement and Articles of Trust, dated August 1, 2000, is filed as an Exhibit to Amendment No. 16 to this Schedule 13D, and the First Amendment thereto, dated as of May 23, 2003, is attached as an Exhibit to LSA's Annual Report on Form 20-F filed with the Securities and Exchange Commission for the fiscal year ended December 31, 2003 (as so amended, the "LSA Trust Agreement"), each of which is incorporated by reference herein.

Also included within LSA, Cementia and Lafarge Group's beneficial ownership of Common Shares are 15,614,688 Common Shares (computed as provided in Rule 13D-3(d)(1)) held of record and legally owned by Paris-Zurich Holdings, a New York trust, in which Lafarge (U.S.) Holdings owns 49.9% and Cementia owns 51.1% of the beneficial interest. For purposes of this Statement, the 15,614,688 Common Shares held of record and legally owned by Paris-Zurich Holdings are reported as directly owned by the Lafarge Group, 7,632,958 of such Common Shares are reported as directly owned by LSA and 7,981,730 of such Common Shares are reported as directly owned by Cementia. The Paris-Zurich Holdings Agreement and Articles of Trust, dated August 1, 2000, is filed as an Exhibit to Amendment No. 16 to this Schedule 13D, and the First Amendment thereto, dated as of May 23, 2003, is attached as an Exhibit to

4

Table of Contents

LSA's Annual Report on Form 20-F filed with the Securities and Exchange Commission for the fiscal year ended December 31, 2003 (as so amended, the *"Paris-Zurich Trust Agreement."*), each of which is incorporated by reference herein.

On a percentage basis, the Lafarge Group's aggregate ownership of 40,093,581 Common Shares represents the beneficial ownership of 53 2% of the outstanding Common Shares. LSA's beneficial ownership of 31,690,566 Common Shares represents the beneficial ownership of 42.0% of the outstanding Common Shares. Cementia's beneficial ownership of 8,403,015 Common Shares represents the beneficial ownership of 11.2% of the outstanding Common Shares. Efalar's does not beneficially own any Common Shares. All calculations of percentages of Common Shares herein are based on information as of December 31, 2005 as provided to LSA by the Company.

Subject to the terms of the LSA Trust Agreement, the Paris-Zurich Trust Agreement, the Settlor Agreement (filed as an Exhibit to Amendment No. 9 and incorporated herein by reference) and the Control Option Agreement, dated as of November 1, 2003 (filed as an Exhibit to Form 10-K filed by the Company for the year ended December 31, 2003 and incorporated herein by reference), LSA, directly and indirectly through the Lafarge Group, has the sole power to vote or to direct the vote of, and the power to dispose, or direct the disposition of, all the Common Shares beneficially owned by the Lafarge Group.

Subject to the terms of the Paris-Zurich Trust Agreement, Cementia has the sole power to vote or to direct the vote of, and the power to dispose, or direct the disposition of, all the Common Shares that it beneficially owns.

Efalar does not have the power to vote or to direct the vote of, or the power to dispose, or direct the disposition of, any Common Shares of the Company

Except as described herein, there have been no transactions by the Lafarge Group in the Common Shares of the Company effected during the past sixty days.

As described in the LSA Trust Agreement and the Paris-Zurich Trust Agreement, under certain circumstances the trustees of Lafarge (U.S.) Holdings and Paris-Zurich Holdings have the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of, Common Shares held of record and legally owned by Lafarge (U.S.) Holdings and Paris-Zurich Holdings.

## Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer

Item 6 is amended to include the following:

The responses to Items 4 and 5 of this Statement are incorporated herein by reference.

## Item 7. Material to Be Filed as Exhibits

Item 7 is amended to include the following:

5

Table of Contents

Exhibit A:    Directors and Executive Officers of Lafarge S.A.

Exhibit B:    Directors and Executive Officers of Cementia Holding A.G.

Exhibit C:    Directors and Executive Officers of Efalar Inc.

Exhibit D:    Letter, dated February 5, 2006, from Bruno Lafont to the Board of Directors of Lafarge North America Inc.

Exhibit E:    Press Release Issued by Lafarge S.A. on February 6, 2006

Exhibit F:    Joint Filing Agreement, dated as of February 5, 2006, among Lafarge S.A., Cementia and Efalar Inc.

Exhibit G:    $2,800,000,000 Credit Facility, dated February 5, 2006, with BNP Paribas and JPMorgan plc.

Exhibit H:    €1,850,000,000 Credit Facility, dated October 29, 2004 and amended July 28, 2005, with the Royal Bank of Scotland plc, Société Générale, HSBC CCF, Citibank International plc, London branch and Calyon

6

Table of Contents

**SIGNATURE**

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

LAFARGE S.A.

By:   /s/ Jean-Jacques Gauthier
      Name:   Jean-Jacques Gauthier
      Title:    Executive Vice-President, Finance
      Date:    February 5, 2005

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

CEMENTIA HOLDING A.G.

By:   /s/ Michel Rose
      Name:   Michel Rose
      Title:    Managing Director
      Date:    February 5, 2005

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

EFALAR INC.

By:   /s/ Michel Bisiaux
      Name:   Michel Bisiaux
      Title:    Secretary
      Date:    February 5, 2005