Westlaw.

Not Reported in F.Supp.                                                                          Page 1
Not Reported in F.Supp., 1995 WL 510071 (E.D.La.)
**(Cite as: 1995 WL 510071 (E.D.La.))**

**H**Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana
SCHWEGMANN WESTSIDE EXPRESSWAY, INC.
v.
KMART CORPORATION, et al.
**CIV. A. 94-2095.**

Aug. 25, 1995.

HEEBE, District Judge.

**\*1** This cause came on for hearing on a previous day on the motion of defendants, Gulf Life Insurance Company and Kmart Corporation, for review of the nondispositive pretrial order of Magistrate Judge Joseph C. Wilkinson, Jr., entered on July 24, 1995. Oral argument was waived and the Court took the matter under advisement on the briefs.

 The Court has studied the record and the legal memoranda submitted by the parties and is now fully advised in the premises and ready to rule.

*REASONS*

 On July 24, 1995, Magistrate Judge Joseph C. Wilkinson, Jr. ruled on the motion of defendants, Gulf Life Insurance Company (Gulf Life) and Kmart Corporation (Kmart), to compel plaintiff, Schwegmann Westside Expressway, Inc. (Schwegmann), to produce sixteen documents on its List of Schwegmann Privileged Documents. [FN1] The Magistrate granted the motion in part and denied the motion in part, ordering Schwegmann to produce Document Nos. 4, 5, 6, and 15 and the fax cover sheet only of document No. 16.

 Defendants maintain that Schwegmann waived the attorney-client privilege and the work product doctrine and so they are entitled to receive all of the documents requested. Defendants thus ask this Court to review and reverse the Magistrate's order.

 This lawsuit involves a series of events arising from the sale of the Tall Timbers Mall in August 1993. Schwegmann purchased the Tall Timbers Mall from Gulf Life at auction and executed a purchase and sale agreement and an act of sale that waived all representations and warranties of the sale.

 During discovery, David Erath, Schwegmann's Chief Financial Officer, as well as Stephen Prechter, Schwegmann's Real Estate Advisor, testified that Schwegmann's decision to purchase

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                              Page 2
Not Reported in F.Supp., 1995 WL 510071 (E.D.La.)
**(Cite as: 1995 WL 510071 (E.D.La.))**

the Tall Timbers Mall was influenced by the lease in existence between Gulf Life and Kmart, particularly Schwegmann's receipt of $135,000 in rental payments from Kmart.  Schwegmann's claim against Gulf Life is based on Schwegmann's alleged reliance on the lease and a landlord estoppel certificate provided by Gulf Life.

 In its opposition to motions for summary judgment filed by both defendants, Schwegmann produced an affidavit by Scott Whittaker, a partner at the law firm of Stone Pigman Walther Wittman & Hutchinson (Stone Pigman).  Whittaker, who was Schwegmann's real estate lawyer in the sales transaction, allegedly interpreted the lease and gave advice to Schwegmann regarding the lease in the context of the act of sale.  Doc. 62, Ex. A.  His affidavit sworn to in May 1995 states:

4. Prior to Schwegmann's execution of the Purchase and Sale Agreement, I advised Schwegmann that pursuant to the lease, Kmart was obligated to return the Building in good condition at the expiration of the lease.  I further advised Schwegmann that Kmart's responsibilities in this regard included any necessary repairs to the interior or any other repairs caused by Kmart's negligence, and excluded ordinary wear and tear, damages from casualty, and repairs required to be made by the landlord.  I advised Schwegmann that pursuant to the lease, the landlord was responsible for any repairs needed to keep the property in a safe, dry and tenantable condition, except those required to be made by Kmart or caused by Kmart's negligence.

**\*2** 5. Prior to Schwegmann's execution of the Purchase and Sale Agreement, I advised Schwegmann that it should not enter into that agreement or any final act of sale pursuant to that agreement unless it received satisfactory protection from liability under the lease for any default by Gulf Life, and from the possibility that Kmart could raise a default by Gulf Life as a defense to Kmart's obligations under the lease (including both its obligation to pay rent and to return the Building in good condition at the expiration of the lease).  I advised Schwegmann that a "clean" estoppel letter in the form attached to the Purchase and Sale Agreement and executed by either Kmart or Gulf Life would be satisfactory in this regard.

6. When I received, as Schwegmann's attorney in connection with the closing, the Landlord's Estoppel Letter executed by Gulf Life which certified, among other things, that Gulf Life knew of no existing material defaults by reason of any act or omission of Gulf Life and that Kmart had made no claim to Gulf Life for any offset against rent, I assumed and so advised Schwegmann that any damage to the roof, or caused by defects in the roof, that otherwise would have been Gulf Life's responsibility under the lease must have been caused by the negligence of Kmart or otherwise assumed or waived by Kmart.

Doc. 101, Ex. B.

 Schwegmann submitted the affidavit of Whittaker to show that "Schwegmann reasonably concluded that Kmart would be responsible for returning the property, including the roof, in good condition."  Doc. 62, p. 3.

 On June 27, 1995, defendants filed a joint motion to compel the production of the sixteen documents included on the List of Schwegmann Privileged Documents and "the entire file,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                Page 3
Not Reported in F.Supp., 1995 WL 510071 (E.D.La.)
**(Cite as: 1995 WL 510071 (E.D.La.))**

including bills and invoices of the law offices of plaintiff's counsel to the real estate transaction in question and up to the filing of the original petition in this action." Doc. 80. Defendants argued that these documents were discoverable in that they would lead to the discovery of relevant admissible evidence and were not protected by a privilege. Defendants maintain that ten of the sixteen documents on the List of Schwegmann Privileged Documents are handwritten notes which reflect Whittaker's or another attorney's impressions of the lease and which may reflect advice given Schwegmann, a door allegedly opened by Whittaker's affidavit.

After an *in camera* review of the allegedly privileged documents, on July 24, 1995, Magistrate Judge Wilkinson entered an order which granted in part and denied in part defendants' motion to compel. The Magistrate stated:

Applying these cases, I find that although Whittaker's affidavit waives the attorney/client privilege and the work product doctrine as to the subject matter of his legal advice disclosed therein, neither of these privileges has been totally waived, and no waiver has occurred as to any of the documents reviewed. However, I find that some of the documents are not confidential attorney/client communications or attorney work product.

**\*3** Doc. 94.

This is a nondispositive matter. Therefore, this Court may modify or set aside any portion of the Magistrate's order the Court finds to be clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a).

On June 27, 1995, defendants moved to compel Schwegmann to produce 1) all documents set forth on the "List of Schwegmann Privileged Documents" and 2) the entire file, including all bills and invoices of the law offices of plaintiff's counsel to the real estate transaction and up to the filing of the original petition in this action.

Several letters and handwritten notes appear on the privilege list. Defendants argue that they relate directly to Stone Pigman's review of the lease and their review of agreements and preparation for the purchase and sale of the Tall Timbers Mall.

Since this is a diversity case, the Court will look to Louisiana law to determine the attorney-client privilege. Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875 (5th Cir.1991).

The Louisiana Code of Evidence, Chapter 5, Art. 506 (West Supp.1995), sets forth the attorney-client privilege. Art. 506(B) states:

A client has a privilege to refuse to disclose and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition of the client in connection with such a communication, when the communication is:

(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                Page 4
Not Reported in F.Supp., 1995 WL 510071 (E.D.La.)
**(Cite as: 1995 WL 510071 (E.D.La.))**

   (2) Between the lawyer and a representative of the lawyer.

                                    * * *

   (4) Between representatives of the client or between the client and a representative of the
   client.
   (5) Among lawyers and their representatives representing the same client.
   (6) Between representatives of the client's lawyer.
*See also* Brown v. Car Ins. Co., 634 So.2d 1163, 1165 (La.1994).

 The Louisiana Supreme Court has stated that the attorney-client privilege "is limited to those
communications which the client either expressly made confidential or which he could
reasonably assume under the circumstances would be understood by the attorney as so
intended."   Succession of   Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138, 1143
(La.1987); Guaranty Corp. v. National Union Fire Ins. Co., No. 90-2695, 1992 U.S. Dist. LEXIS
18035, at * 10 (E.D.La. November 24, 1992).

 Since the client holds the attorney-client privilege, only the client or his attorney or agent acting
with his authority, or his representative may exercise this privilege. *Smith,* 513 So.2d at
1143; *Guaranty Corp.,* 1992 U.S. Dist. LEXIS 18035, at *10.

 "Waiver includes ... not merely words or conduct expressing an intention to relinquish a known
right, but conduct which would make it unfair for the client to insist on the privilege thereafter."
*Id.*   Waiver may be either express or implied.   Stumpf v. Stumpf, 613 So.2d 683, 685 (La.App.
5th Cir.1993).

**\*4** The concept of fairness is of primary importance in determining whether waiver has
occurred.   McLaughlin v. Lunde Truck Sales, Inc., 714 F.Supp. 916, 918 (N.D.Ill.1989).   The
Court will not allow the party asserting the attorney-client privilege to manipulate the privilege
to his own advantage. *Id.*

 The kind of unfairness justifying waiver of the privilege usually occurs in three types of
situations: (1) partial disclosure of privileged communications at trial; (2) partial disclosure of
privileged communications before the trial; and (3) " 'placing privileged communications at
issue'--an affirmative pleading of a claim or defense that inevitably requires the introduction of
privileged communications." *Smith,* 513 So.2d at 1143-44.

 Schwegmann partially disclosed privileged communications before the trial by submitting the
affidavit of Stone Pigman lawyer, Scott Whittaker, Schwegmann's real estate attorney, as an
exhibit in its opposition to a motion for summary judgment.

 In addition, Schwegmann placed privileged communications at issue in this case.
   Placing-at-issue waiver occurs when a privilege-holder pleads a claim or a defense in such a
way that he will be forced inevitably to draw upon a privileged communication at trial in order

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                    Page 5
Not Reported in F.Supp., 1995 WL 510071 (E.D.La.)
**(Cite as: 1995 WL 510071 (E.D.La.))**

to prevail.  Consequently, he places at issue and waives his privilege as to communications on
the same subject under his control.
*Id.* at 1145.

  The Louisiana Supreme Court chose not to adopt the more liberal view of placing-at-issue
waiver set forth in Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D.Wash.1975), and adopted by the
federal courts. *Guaranty Corp.,* 1992 U.S. Dist. LEXIS 18035, at *11-12.  The *Hearn* court
found that "attorney-client privilege is waived when the privilege holder (1) through some
affirmative act, makes an assertion that (2) renders relevant to the action (3) privileged matter
that is vital to the opposing party's defense." Smith, 513 So.2d at 1145.

  The Louisiana Supreme Court did not follow the three part test set forth in *Hearn* "because it
improperly undermines the legislatively established attorney-client privilege by causing courts to
reassess the privilege by weighing the individual privilege-holder's interests against his
opponent's need for evidence whenever the privilege is attacked." Smith, 513 So.2d at 1145.

  Instead the Louisiana Supreme Court adopted the anticipatory waiver theory:  "whether the
privilege holder has committed himself to a course of action that will require the disclosure of a
privileged communication." Id. at 1146.

  This Court must thus determine whether Schwegmann has committed itself "to a course of
action that will require the disclosure of a privileged communication" at trial in order to prevail
on the merits. *Id.; Guaranty Corp.,* 1992 U.S. Dist. LEXIS 18035, at *12.

  Schwegmann concedes that by submitting the affidavit of Stone Pigman partner, Scott
Whittaker, Schwegmann's real estate attorney, "it has waived its privilege as to the documents
relevant to Whittaker's advice dated up through the Act of Sale," that is, August 23, 1993.  Doc.
102.  Schwegmann claims that the statements made in Whittaker's affidavit pertain only to
Schwegmann's decision to purchase the premises, and so the only matter placed at issue is
Schwegmann's decision whether or not to purchase the premises.  Because the Act of Sale was
on August 23, 1993, Schwegmann contends that anything said or done by Stone Pigman after the
Act of Sale is immaterial to Schwegmann's decision to purchase and would not fall under the
waiver.

**\*5** Defendants argue that none of the documents sought to be protected by Schwegmann fits
under the attorney-client privilege because none is a communication from the client,
Schwegmann, to its attorney, Scott Whittaker. Defendants contend that the documents are
correspondence, hand written notes, and at least two legal memoranda that accompanied
Whittaker's correspondence to Prechter & Associates, Schwegmann's real estate advisors.  Thus
defendants maintain that the Magistrate is clearly in error in concluding that any of the
documents fit under the attorney-client privilege.

  Plaintiff has the burden of proof at trial.  As stated in Scott Whittaker's affidavit, he advised

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Schwegmann that "pursuant to the lease, Kmart was obligated to return the Building in good condition at the expiration of the lease."  Doc. 101, Ex. B.  The lease did not expire until January 31, 1994. Whittaker, in his deposition taken on August 8, 1995, stated that the right to require Kmart "to return the premises at the termination of the lease did not arise until the termination of the lease."  Doc. 113, p. 125 of Whittaker's deposition.

The Court finds that Schwegmann has placed at issue (1) the lease of the Tall Timbers Mall in existence between Gulf Life and Kmart, which was assigned to Schwegmann in the purchase and sale agreement and the act of sale; (2) the estoppel letters; (3) the purchase and sale agreement; and (4) the act of sale.  The Court finds that by submitting the affidavit of Scott Whittaker, Schwegmann's real estate attorney, Schwegmann has waived its attorney-client privilege as to documents relevant to Whittaker's advice, including the lease of the Tall Timbers Mall, the estoppel letters, the purchase and sale agreement, and the act of sale.  Thus the attorney-client privilege has been waived as to all documents created up to the filing of the original petition which concern the lease, the estoppel letters, the purchase and sale agreement, and the act of sale.

The Court has reviewed carefully Document Nos. 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16.  The Court finds that all of the documents relate to the act of sale and/or the lease of the Tall Timbers Mall.  Thus Schwegmann has waived the attorney-client privilege as to all of the documents on the List of Schwegmann Privileged Documents.

In addition, defendants argue that none of the documents sought to be protected by Schwegmann are immune from discovery by the work product doctrine.

The work product doctrine is governed by Fed.R.Civ.P. 26(b)(3).  Dunn v. State Farm Fire & Cas. Co., 927 F.2d 869, 875 (5th Cir.1991). Rule 26(b)(3) allows the production of materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

**\*6** "Like the attorney-client privilege, the work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn,* 927 F.2d at 875.  However, the work product doctrine "only protects documents produced by or for an attorney preparing for litigation."  *Id.*

The privilege derived from the work product doctrine is not absolute and may be waived. United States v. Nobels, 422 U.S. 225, 239 (1975). Schwegmann, by submitting the affidavit of Scott Whittaker, waived the privilege with respect to matters covered in Mr. Whittaker's affidavit, including the lease of the Tall Timbers Mall and the act of sale. *Id.*  The documents requested by defendants pertain to the lease of the Tall Timbers Mall and/or the act of sale. Thus the work product doctrine does not protect any of the documents.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.                                                                                    Page 7
Not Reported in F.Supp., 1995 WL 510071 (E.D.La.)
**(Cite as: 1995 WL 510071 (E.D.La.))**


 The Court finds that the Magistrate Judge was clearly erroneous in his ruling that no waiver of the attorney-client privilege and the work product doctrine occurred as to any of the documents on the List of Schwegmann Privileged Documents.   Schwegmann has waived its privileges with respect to matters covered in Mr. Whittaker's affidavit, including the lease of the Tall Timbers Mall, the estoppel letters, the purchase and sale agreement, and the act of sale.   Schwegmann is to produce all of the documents on the List of Schwegmann Privileged Documents to defendants no later than August 31, 1995.


 Accordingly,


 IT IS THE ORDER OF THE COURT that the motion of defendants, Gulf Life Insurance Company and Kmart Corporation, to review and reverse the order of Magistrate Judge Joseph C. Wilkinson, Jr. entered on July 24, 1995, be, and the same is hereby GRANTED.

 IT IS FURTHER ORDERED that plaintiff, Schwegmann Westside Expressway, Inc., PRODUCE all documents on the List of Schwegmann Privileged Documents no later than August 31, 1995.

> FN1. Schwegmann produced Document Nos. 1 and 3 to defendants prior to the Magistrate's ruling, so the Magistrate did not consider those documents.   This Court will not consider those documents either.

 Not Reported in F.Supp., 1995 WL 510071 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



Date of Printing: JUN 03,2008

## KEYCITE

**H** **Schwegmann Westside Expressway, Inc. v. Kmart Corp.,** 1995 WL 510071 (E.D.La., Aug 25, 1995) (NO. CIV. A. 94-2095)

### History

### Direct History

=>    1 **Schwegmann Westside Expressway, Inc. v. Kmart Corp.,** 1995 WL 510071 (E.D.La. Aug 25, 1995) (NO. CIV. A. 94-2095)

### Related References (U.S.A.)

**H**    2 Schwegmann Westside Expressway, Inc. v. Kmart Corp., 1995 WL 479814 (E.D.La. Aug 11, 1995) (NO. CIV. A. 94-2095)

**H**    3 Schwegmann Westside Expressway, Inc. v. Kmart Corp., 1996 WL 61781 (E.D.La. Feb 13, 1996) (NO. CIV. A. 94-2095)

**H**    4 Schwegmann Westside Expressway v. KMart Corp., 1996 WL 82252 (E.D.La. Feb 26, 1996) (NO. CIV. A. 94-2095)

**H**    5 Schwegmann Westside Expressway, Inc. v. KMart Corp., 1996 WL 117506 (E.D.La. Mar 14, 1996) (NO. CIV. A. 94-2095)

*Affirmed by*

**H**    6 Schwegmann Westside Expressway Inc. v. K-Mart Corp., 111 F.3d 893 (5th Cir.(La.) Mar 27, 1997) (Not selected for publication in the Federal Reporter, NO. 96-30386)

### Court Documents

### Dockets (U.S.A.)

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

**E.D.La.**

     7 SCHWEGMANN WESTSIDE v. KMART CORPORATION, ET AL, NO.
2:94cv02095 (Docket) (E.D.La. Jun. 23, 1994)

**Citing References**

**Positive Cases (U.S.A.)**

⭐⭐ **Cited**

H     8 Southern Scrap Material Co. v. Fleming, 2003 WL 21474516, *16+ (E.D.La. Jun
18, 2003) (NO. CIV.A. 01-2554)

▷     9 Newpark Environ. Ser. v. Admiral Ins. Co., 2000 WL 136006, *4 (E.D.La. Feb 03,
2000) (NO. CIV.A.99-331 E)

H     10 C.J. Calamia Const. Co., Inc. v. ARDCO/Traverse Lift Co., L.L.C., 1998 WL
395130, *4 (E.D.La. Jul 14, 1998) (NO. CIV. A. 97-2770)

⭐ **Mentioned**

C     11 Conoco Inc. v. Boh Bros. Const. Co., 191 F.R.D. 107, 118 (W.D.La. Jul 10, 1998)
(NO. 97-1378)

**Administrative Decisions (U.S.A.)**

**Federal Trade Commission Decisions**

H     12 In the Matter of TELEBRANDS CORP., a corporation, TV SAVINGS, LLC, a
limited liability company, and AJIT KHUBANI, Individually and as president of
Telebrands Corp. and sole member of TV Savings, LLC., 2003 WL 23010843, *40
(F.T.C. Dec 11, 2003) (NO. D 9316) ⭐

**Secondary Sources (U.S.A.)**

     13 Attorney-Client Privilege in the U.S., 2d s 11:26, s 11:26. Generally (2008)

     14 Attorney-Client Privilege in the U.S., 2d s 12:16, s 12:16. Civil suits--Rule 501 and
diversity cases (2008)

     15 Attorney-Client Privilege in the U.S., 2d s 9:35, s 9:35. Evidentiary use of
privileged communications--Attorney's use of information confidentially
communicated by client (2008)

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory
Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

16  Attorney-Client Privilege: State Law Louisiana s 9:44, s 9:44. Generally (2007)

## Court Documents

## Trial Court Documents (U.S.A.)

**Trial Motions, Memoranda and Affidavits**

17 Akesha SINGLETON, et al., v. RPM PIZZA. INC., D/B/A Domino's Pizza,, 2004 WL 5493033, *5493033+ (Trial Motion, Memorandum and Affidavit) (E.D.La. Sep 27, 2004) **Motion to Strike Affidavits and Newspaper Articles** (NO. 03-2219) ★★

18 Akesha SINGLETON and Kawanta Singleton, Plaintiffs, v. RPM PIZZA, INC., Defendant., 2004 WL 5493034, *5493034+ (Trial Motion, Memorandum and Affidavit) (E.D.La. Sep 27, 2004) **Plaintiffs' Memorandum in Opposition to ...** (NO. 03-2219) ★★

19 SOUTHERN SCRAP MATERIAL CO., L.L.C.; SSX, L.C.; and Southern Recycling, L.L.C., Plaintiffs, v. George M. FLEMING; Fleming & Associates, L.L.P., Fleming, Hovenkamp & Grayson, P.C.; John L. Grayson; Mark A. Hovenkamp; Bruce B. Kemp; L. Stephen Rastanis; The Law Offices of L. Stephen Rastanis; John B. Lambremont, Sr.; The Law Offices of John B. Lambremont, Sr.; Ken J. Stewart; Frederick A. Stolzle, Jr.; and Frederick A. Stolzle, Jr. & Associates, Defendants., 2002 WL 32698710, *32698710 (Trial Motion, Memorandum and Affidavit) (E.D.La. Jul 03, 2002) **Defendant Ken J. Stewart's Memorandum in ...** (NO. 01-2554) ★★

20 CONSOLIDATED ALUMINUM CORPORATION, Plaintiff, v. ALCOA INC., as Successor to and d/b/a Reynolds Metals Company, d/b/a Lake Chares Carbon, Defendants., 2005 WL 3136114, *3136114+ (Trial Motion, Memorandum and Affidavit) (M.D.La. Oct 21, 2005) **Alcoa's Opposition to Consolidated's Motion to ...** (NO. 03-CV-1055, 03CV5973, NRB) ★★

21 CONSOLIDATED ALUMINUM CORPORATION, v. ALCOA, INC., as Successor to and d/b/a Reynolds Metals Company, d/b/a Lake Charles Carbon., 2005 WL 4806004, *4806004 (Trial Motion, Memorandum and Affidavit) (M.D.La. Sep 28, 2005) **Consolidated's Memorandum of Law in Support of ...** (NO. 03-C-1055) ★★

22 (1) HERFF JONES, INC., an Indiana corporation, Plaintiff, v. (1) OKLAHOMA GRADUATE SERVICES, INC., an Oklahoma corporation; et al., Defendants., 2007 WL 4892142, *4892142 (Trial Motion, Memorandum and Affidavit) (W.D.Okla. Dec 03, 2007) **Defendant Richard L. Blackstock's Response and ...** (NO. CIV-06-709-L) ★★

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

23 OMAX CORPORATION, a Washington corporation, Plaintiff, v. FLOW INTERNATIONAL CORPORATION, a Washington corporation, Defendant; Flow International Corporation, a Washington corporation, Counterclaimant; v. Omax Corporation, A Washington corporation, Counterclaim Defendant., 2007 WL 759742, *759742+ (Trial Motion, Memorandum and Affidavit) (W.D.Wash. Jan 29, 2007) **Omax Corporation's Opposition to Flow ...** (NO. CV04-2334) ★★

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.