

Not Reported in F.Supp.2d                                                              Page 1
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

**H**Southern Scrap Material Co. v. Fleming
E.D.La.,2003.
Only the Westlaw citation is currently available.
United States District Court,E.D. Louisiana.
SOUTHERN SCRAP MATERIAL CO., et al,
v.
George M. FLEMING; Fleming & Associates L.L.P., Fleming, Hovenkamp & Grayson, P.C.; John L.
Grayson; Mark A. Hovenkamp; Bruce B. Kemp; L. Stephen Rastanis; The Law Offices of L. Stephen
Rastanis; John B. Lambremont, Sr.; The Law Offices of John B. Lambremont, Sr.; Ken J. Stewart;
Frederick A. Stolzle, Jr.; Frederick A. Stolzle, Jr. & Associates
**No. Civ.A. 01-2554.**

June 18, 2003.

MEMORANDUM OPINION AND ORDER

KNOWLES, Magistrate J.
**\*1** This action, which invokes the civil RICO jurisdiction of the Court under 18 U.S.C. § 1964,FN1
involves claims by plaintiffs, Southern Scrap Material Co., LLC, SSX, L.C., and Southern Recycling,
LLC, against the defendant attorneys listed above. This matter is before the undersigned magistrate
judge pursuant to the mandate of the Fifth Court of Appeals [Rec. Doc. 107] and the reference of district
judge to consider arguments of the parties that certain documents for which discovery is sought are
protected by the work-product doctrine or the attorney-client privilege. More particularly, presently
before the Court are the following contested discovery motions:

> FN1. On August 20, 2001, plaintiffs filed their Complaint [Rec. Doc. 1] pursuant to the 28
> U.S.C. §§ 1331 and 1337, and 18 U.S.C. §§ 1964(a) and 1964(c), Title IX of the Organized
> Crime Crime Control Act of 1970, also known as the Racketeer Influenced and Corrupt
> Organization Act (RICO).

(1) Plaintiffs Southern Scrap Material Co., LLC, SSX, L.C., and Southern Recycling Co. LLC's
(hereinafter collectively referred to as "Southern Scrap") Motion and Memorandum in Support of
Maintenance of Privilege over various documents submitted for *in camera* review [Rec. Doc. # 188];

(2) Defendants Frederick A. Stolzle, Jr. and Frederick A. Stolzle, Jr. & Associates' ("Stolzle
defendants") Motion to Sustain Attorney-Client and Work Product Privileges [Rec. Doc. # 187];

(3) Defendants Fleming & Associates, L.L.P., and George Fleming's ("Fleming defendants") Joint
Motion and Memorandum to Sustain Work Product and Attorney/Client Privileges [Rec. Doc. # 189];

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

(4) Defendant Ken J. Stewart's Motion and Memorandum to Sustain the Privilege on Documents Produced for *In Camera* Inspection [Rec. Doc. # 198]; and

(5) Defendant John B. Lambremont, Sr. and Law Offices' Memorandum in Support of Sustaining Work Product and Attorney-Client Privileges. [Rec. Doc. # 186].

I. BACKGROUND

Necessarily predicate to any ruling on the privileges claimed is some understanding of the climate in which the instant case arose and the tenor and substance of the allegations which presaged the instant motions to compel. On August 20, 2001, the plaintiff, Southern Scrap, filed a complaint naming the following trial attorneys as defendants, to wit: George M. Fleming, Fleming & Associates, L.L.P., Fleming, Hovenkamp & Grayson, P.C., John L. Grayson, Mark A. Hovenkamp, Bruce B. Kemp, L. Stephen Rastanis, The Law Offices of L. Stephen Rastanis, John B. Lambremont, Sr., The Law Offices of John B. Lambremont, Sr., Ken J. Stewart, Frederick A. Stolzle, Jr. and Frederick A. Stolzle, Jr. and Associates. *See* Southern Scrap's Complaint [Rec. Doc. # 1]. Southern Scrap seeks-relief pursuant to §§ 1961-68, § 901(a) of Title IX of the Organized Crime Control Act of 1970, as amended, otherwise known as the Racketeering Influenced and Corrupt Organizations Act of 1970 ("RICO"), and in particular, under 18 U.S.C. § 1964. Following the filing of the Southern Scrap's RICO case statement [Rec. Doc. # 3], defendants filed their motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). [Rec. Doc. # 11]. Finding that the alleged "improprieties and calculated manipulations set out in the RICO case statement" were sufficient to defeat the defendants' motion to dismiss the Court denied same, as well as the defendants' Motion for More Definite Statement. [Rec. Doc.'s 23 and 27]. The parties were ordered to exchange initial disclosures by March 12, 2002. The claims against the defendant Mark A. Hovenkamp were dismissed with prejudice. [Rec. Doc. # 41]. On May 6, 2002, Southern Scrap filed an amended complaint with respect to its damages.[FN2] [Rec. Doc # 65].

>    FN2. Plaintiff amended their original RICO complaint alleging "severe financial and business losses, and damage to reputation, negative publicity, decreased company productivity, decreased employee morale, and fear of frivolous lawsuits," to state: "As a proximate cause of the Attorneys' violation of 18 U.S.C. § 1962(c) and (d), Plaintiffs have been injured in their business or property for the reasons described above and because they were forced to expend a significant amount of time and money in the maintenance of defenses to these numerous, yet meritless lawsuits. The Attorneys have caused Plaintiffs damages consisting of the attorneys fees, expenses, costs, and time associated with the defense of these frivolous lawsuits." *See* Amended Complaint at ¶ 152 [Rec. Doc. # 65].

**\*2** In its application presently before the Court in the nature of a Motion to Compel Production of Documents, Southern Scrap characterizes the defendant attorneys as "a group of plaintiffs' attorneys that encircled Southern Scrap like jackals in an attempt to extort settlement funds,"[FN3] from plaintiff scrap metal companies, which are along, with the judicial system and others, victims of the defendant attorneys' RICO conspiracy.[FN4] Plaintiffs' RICO complaint casts the defendant attorneys into two groups

of actors, the Baton Rouge area plaintiffs' attorneys and the Texas plaintiffs' attorneys, who allegedly came together in 1995, formed an association-in-fact, and, working together, "unleashed a torrent of eleven (11) frivolous and baseless lawsuits against [Southern Scrap], alleging everything from mass exposure to toxic torts to discriminatory hiring practices."[FN5]Southern Scrap contends that "all of the resolved underlying cases were either dismissed on summary judgment, by the Court of Appeals, or in exchange for not seeking sanctions against the defendants," and "not a single one of these cases had any merit."[FN6]

> FN3.*See* Plaintiffs' Motion and Incorporated Memorandum in Support of Maintenance of Privilege over Various Documents Submitted for In Camera Review, at p. 2.

> FN4.*See* Complaint at ¶ IV [Rec. Doc. 1].

> FN5. Southern Scraps' Motion and Incorporated Memorandum in Support of Maintenance of Privilege over Various Documents Submitted for In Camera Review, at p. 3.

> FN6.*Id.* at 4.

Southern Scrap specifically alleges that the defendant attorneys (*i.e.,* plaintiffs' attorneys in the underlying state court litigation), exceeded any legitimate role they may have had as diligent adversaries by filing baseless claims and, in so doing, committed mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) in furtherance of their scheme to bring extortionate pressure to settle cases, inflicting heavy costs in terms of legal expenses for defense against the false and fraudulent claims. Additionally, Southern Scrap claims violations of the Hobbs Act, 18 U.S.C. § 1951, referring to attempts by defendant attorneys to induce the scrap metal companies to pay funds to settle the fraudulent state court suits by threats of filing more of the same and thus inflicting even heavier financial losses.

The defendant attorneys have denied the allegations against them and submit that the allegations in the RICO case statement are unsupported allegations. Defendants response to the plaintiffs' characterization of the underlying state court litigation and their roles, in that Southern Scrap's statement erroneously suggests that all of the attorney defendants assisted in the prosecution of all eleven (11) underlying lawsuits. Moreover, Defendants contend that the Court should give little or no credence to Southern Scrap's argument that the underlying lawsuits were frivolous and baseless, in light of the fact that three of the underlying state court cases remain pending, one having survived a La.Code Civ. Proc. Art. 863 motion to dismiss hearing.

## II. CONTENTIONS OF THE PARTIES

## 1. SOUTHERN SCRAP'S CHALLENGES TO DEFENDANTS' PRIVILEGE LOGS

Southern Scrap challenges the documents listed in the various defendant attorneys' privilege logs on various grounds, including the following, to wit: (1) regarding documents which relate to the business aspects of the defendants' legal practices, including fee agreements and agreements between counsel

entered prior to the commencement of the litigation, Southern Scrap contends that they are discoverable and do not constitute the rendition of legal advice, nor are they protected work product; (2) articles, including maps, photographs, videos, and the like, all without attorney commentary, are discoverable; (3) documents which discuss purely factual matters without the addition of mental impressions or strategy of counsel are discoverable and do not constitute protected work product; (4) vintage documents dating back one to six years prior to the institution of the first lawsuit are discoverable; (5) the attorney-client privilege was waived with respect to the publication of "Scrap Notes"; (6) any claim of privilege was waived with respect to "the Becnel communications;" (7) "ALR Customer" and "CLR Customer" documents are not privileged; and (8) certain miscellaneous items, including the "Letters to Reverends," are also discoverable. Plaintiffs argue that, in any event, they have demonstrated their substantial need for the challenged documents. Southern Scrap highlights that the attorney defendants have denied the RICO claim and alleged the affirmative defense of good faith, and contends that the documents are necessary impeachment and cannot be obtained from an alternative source.

**\*3** The Stolzle defendants submit that they currently represent individuals in toxic exposure/personal injury litigation against the Southern Scrap plaintiffs. Defendants further advise that three of the "eleven (11) underlying cases" were filed in Louisiana's Nineteenth Judicial District and are still pending, to wit: *Harmason v. Southern Scrap Material Co., Inc.,* Docket No. 415,360 "C"; *Curry v. Southern Scrap Material Co.,* Docket No. 421,244 "C"; and *Banks v. Southern Scrap Material Co.,* 421,023 "H." Essentially, the Stolzle defendants argue that Southern Scrap's discovery requests demand the production of nearly every document maintained in client and attorney work files of the aforesaid underlying toxic tort litigation, and Stolzle submits that certain documents are protected by the work product and/or attorney-client privileges. Per the Court's October 16, 2002 order, Stolzle submitted a tabular log identified as Exhibit "B" which identifies each of eighty-five (85) documents withheld, along with the corresponding documents in tabbed binders for *in camera* review. Stolzle notes that the list of eighty-five documents was narrowed down from an October 11, 2002 privilege log, which previously identified tens of thousands of pages of privileged documents.

Regarding the documents listed on Exhibit "B," the Stolzle defendants argue that the fact that defendants have denied the allegations asserted against them in Southern Scrap's RICO complaint does not "place-at-issue" any "factual information," resulting in a waiver of the privileges claimed. Defendants further hearken back to the strictures of Rules 9(b) and 11, and more particularly, remind Southern Scrap plaintiffs that, prior to filing the instant lawsuit, they should have had knowledge of the specific "facts" and "law," which support their allegations, and thus may not, consistently with their Rule 11 obligation, now claim they do not have access to the facts and/or that they have substantial need within the meaning of Rule 26(b)(3).[FN7] Defendants admit that the work product doctrine protects documents and not underlying facts, but highlight federal law which stands for the proposition that a document does not lose its privilege status merely because its contains factual information.[FN8]

FN7.*See* Stolzle Defendants' Motion to Sustain Attorney Client Privilege, at p. 5 n. 3 (*citing Williams v. WMX Technologies, Inc.,* 112 F.3d 175, 177 (5th Cir.1997)).

FN8.*Id.* at 6 (*citing High Tech Communications, Inc. v. Panasonic Co.,* 1995 WL 45847 at \*6

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

(E.D.La., Feb. 2, 1995), *inter alia* ).

The Stolzle defendants, along with the other defendants in this case, accuse Southern Scrap of attempting to use this RICO action to circumvent Louisiana's scope of discovery regarding experts in the pending state court litigation, *i.e.,* "experts" identified in an article 863 hearing in the underlying state court litigations.[FN9] Finally, the Stolzle defendants submit that surveillance videos, photographs, and all communications with prospective clients are clearly subject to the work product doctrine and the attorney-client privilege.[FN10]

> FN9. *See id.,* at p. 8 (*noting* La. Civ.Code of Proc. Art. 1424, *inter alia,* recognizing that under Louisiana law there is an absolute privilege against the discovery of writing, mental impressions, conclusions or opinions of an expert or any attorney).

> FN10. *Id.* at 11-12.

The Fleming defendants have submitted their own privilege log and corresponding tabbed binder of documents for *in camera* review. In addition to the arguments made by the Stolzle defendants, the Fleming defendants contend that Southern Scrap has failed to demonstrate either substantial need or the inability to discover the same evidence by other means as required by Fed.R.Civ.P. 26(b)(3). Moreover, the Fleming defendants submit that the following categories of documents are protected work product, to wit: (1) correspondence among co-counsel relating to legal strategy, legal issues, and division of labor; (2) counsel/co-counsel communications; (3) attorney notes regarding depositions, subpoenas, and testimony; (4) compilations of documents; (5) documents that set out a case plan of action and discuss legal issues; (6) documents that relate or refer to investigations and/or factual information; (7) sworn statements; and (8) defendants' communications with experts.

**\*4** Ken Stewart submitted his privilege log and corresponding tabbed binder of eighty (80) documents withheld under claims of privilege. To prevent repetition of legal arguments, Stewart adopted the arguments set forth in the Fleming Defendants' memorandum in support of sustaining work product and attorney-client privileges. Like the Stolzle Defendants, Stewart similarly points out that three of the eleven underlying cases identified in Southern Scrap's RICO complaint remain pending in state court. Although he contends that certain documents are protected from disclosure under the federal case law as well, Stewart urges the Court to carefully consider that law, in conjunction with Louisiana law strictly prohibiting disclosure of expert documents to opposing parties.

Defendant John B. Lambremont, Sr. submitted a privilege log, alleging both work product protection and/or attorney-client privilege with respect to the documents tabbed 1-4, 6, 7, 12, and 14. Defendant Lambremont filed a memorandum in support of his objections, arguing more specifically that: (1) Southern Scrap has not demonstrated substantial need or inability to discover the same evidence by other means; (2) the mere denial of an association-in-fact does not effect a waiver of the applicable privileges; (3) correspondence and communications among co-counsel relating to legal strategy, legal issues, and division of labor are protected work product; (4) attorney notes regarding depositions, subpoenas, and testimony are protected work product; (5) documents that set out a case plan of action

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

and discuss legal issues among co-counsel are protected work product; (6) case expense reports, invoices, and billing for experts and attorneys are privileged because they reveal legal strategies and attorney client communications; (7) communications with experts are protected; (8) discussions of expert testing results are protected work product because they reveal attorney thoughts and impressions; (9) communications between attorney and client are covered by the attorney client privilege; and (10) discussions with and information received from clients are privileged.[FN11]

> FN11.*See* John B. Lambremont, Sr.'s Memorandum to Sustain Work Product and Attorney/Client Privileges [Rec. Doc. No. 186].

## 2. DEFENDANTS' CHALLENGES TO SOUTHERN SCRAP'S PRIVILEGE LOG

Southern Scrap has withheld a total of twenty-two (22) documents, which it contends are shielded from discovery by either the work product or attorney-client privileges, or both. The defendant attorneys challenge the plaintiffs' claims of privilege on the basis that the plaintiffs waived any privilege they may have possessed over their files by filing the instant RICO complaint. The defendants contend that the "the Audit Letters" and "the Becnel Correspondence" are the core of plaintiff's RICO claims. Additionally, defendants contend that the audit letters were not prepared exclusively in anticipation of litigation. As for the Becnel correspondence, Ken Stewart notes that Southern Scrap has labeled Daniel Becnel as a fact witness, knowledgeable of some of the alleged RICO violations in the underlying cases.

**\*5** The Court will first address the applicable law generally, and then, the parties' privilege logs/documents serially.

## III. THE LAW

### 1. WORK-PRODUCT DOCTRINE

The attorney work-product privilege first established in *Hickman v. Taylor,* 329 U.S. 495 (1947), and codified in Fed.R.Civ.P. Rule 26(b)(3) for civil discovery, protects from disclosure materials prepared by or for an attorney in anticipation of litigation. *Varel v. Banc One Capital Partners, Inc.,* 1997 WL 86457 (N. D.Tex.) (*citing Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 403 (M.D.La.1992)). Since *Hickman, supra,* courts have reaffirmed the "strong public policy" on which the work-product privilege is grounded. The Supreme Court in *Upjohn Co. v. United States,* 449 U.S. 383 (1981) found that "it is essential that a lawyer work with a certain degree of privacy" and further observed that if discovery of work product were permitted "much of what is not put down in writing would remain unwritten" and that "the interests of clients and the cause of justice would be poorly served. *Upjohn,* 449 U.S. at 397-998;*see also In re Grand Jury Proceedings,* 219 F.3d 175, 190 (2nd Cir.2000); *United States v. Aldman,* 134 F.3d 1194, 11967(2nd Cir.1998)

Fed.R.Civ.P. 26(b)(3) provides that

> a party may obtain discovery of documents and tangible things otherwise discoverable under

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

subdivision (b)(1) of this rule and *prepared in anticipation of litigation* or for trial *by or for that other party's representative* (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3) (emphasis added). Federal law governs the parties' assertions that certain information is protected from disclosure by the work product doctrine. *See Naquin v. Unocal Corp ., 2002 WL 1837838 *2 (E.D.La.2002)* (Wilkinson, M.J.) (*citing Dunn v. State Farm, 927 F.2d 869, 875 (5th Cir.1991)*).

The Fifth Circuit describes the standard for determining whether a document has been prepared in anticipation of litigation as the "primary purpose" test. *See In Re Kaiser Aluminum and Chemical Co., 214 F.3d 586, 593 n. 19 (5th Cir.2000)* (*citing* precedents in *United States v. El Paso Co., 682 F.2d 530, 542 (5th Cir.1982)* and *United States v. Davis, 636 F.2d 1028, 1040 (5th Cir.1981)*). The primary purpose test, coined by the Fifth Circuit in *Davis,* states:

> It is admittedly difficult to reduce to a neat formula the relationship between the preparation of a document and possible litigation necessary to trigger the protection of the work product doctrine. We conclude that litigation need not necessarily be imminent, as some courts have suggested, as long as the *primary motivating purpose behind the creation of the document* was to aid in possible future litigation.

**\*6** *Davis, 636 F.2d at 1039*. The determination that one or more of the documents were not prepared by counsel is not necessarily dispositive of the inquiry, as Rule 26(b)(3) protects documents prepared by a party's agent from discovery, as long as they were prepared in anticipation of litigation. In *United States v. Nobles,* 422 U.S. 225 (1975),[FN12] the Supreme Court explained:

> FN12. In *Nobles,* the Supreme Court applied the work-product doctrine to criminal proceedings. The Court observed that, although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case. 422 U.S. at 238.

At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversarial system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation of trial. It is therefore necessary that the doctrine protect material *prepared by agents for the attorney* as well as those prepared by the attorney himself. *Nobles, 422 U.S. at 238-39* (emphasis added). In both *Hickman* and *Nobles, supra,* the Supreme Court recognized that the "the work-product doctrine is distinct from and broader than the attorney-client

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 8
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

privilege."*Hickman,* 329 U.S. at 508;*Nobles,* 422 U.S. at 238 n. 11. The doctrine protects not only materials prepared by a party, but also materials prepared by a co-party [FN13] or a representative of a party, including attorneys, consultants, agents, or investigators. *Nobles,* 422 U.S. at 228.[FN14]

> FN13.*See United States v. Medica-Rents, Co.,* 2002 WL 1483085 *1 n. 6 (N. D.Tex.) (noting that disclosure of documents by relators to co-party the United States and its representatives does not result in waiver and that the joint defense privilege, an extension of the attorney-client privilege, also applies in the context of work-product immunity).

> FN14.*Upjohn Co.,* 449 U.S. at 400;*United States v. El Paso Co .,* 682 F.2d 530, 543 (5th Cir.1982, *cert. denied,*466 U.S. 944 (1984).

Work product immunity extends to documents prepared in anticipation of prior, terminated litigation, regardless of the interconnectedness of the issues and facts. The work product privilege recognized in *Hickman, supra,* does not evaporate when the litigation for which the document was prepared has ended.[FN15] In *In re Grand Jury Proceedings,* 43 F.3d 966 (5th Cir.1994), the Fifth Circuit observed:

> FN15.*See In re Grand Jury Proceedings,* 43 F.3d 966, 971 (5th Cir.1994) (noting that neither Rule 26 nor its well-spring *(Hickman)* place any temporal constraints on the privilege).

   The emerging majority view among the circuits which have struggled with the issue thus far seems to be that the work product privilege does not extend to subsequent litigation. One circuit, the Third Circuit, appears to extend the work product privilege only to "closely related" subsequent litigation. *In re Grand Jury Proceedings,* 604 F.2d 798, 803-04 (3rd Cir.1979). A broader view, exemplified by the Fourth and Eighth Circuits, is that the privilege extends to all subsequent litigation, related or not. *Id.* at 971 (agreeing that the privilege extends to subsequent litigation but finding no need to choose between the two views since the subsequent litigation was "closely related" to the first).

The law is settled that "excluded from work product doctrine are materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation."*United States v. El Paso Co.,* 682 F.3d 530, 542 (5th Cir.1982) (citing Rule 26(b)(3) advisory committee notes)).

   Factors that courts rely on to determine the primary motivation for the creation of a document include the retention of counsel, his involvement in the generation of the document and whether it was routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance. If the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation.

**\*7** *Piatkowski v. Abdon Callais Offshore, LLC,* 2000 WL 1145825, at *2 (E.D.La. Aug. 11, 2000)."If a party or its attorney prepares a document in the ordinary course of business, it will not be protected from discovery even if the party is aware that the document may also be useful in the event of litigation."*Naquin v.. Unocal Corp.,* 2002 WL 1837838 *7 (E.D.La. Aug. 12, 2002) (internal quotation

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 9
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

marks omitted). The party seeking protection from discovery bears the burden of showing that the disputed documents are work-product.[FN16]

> FN16.*Id.* at *6 (*citing Guzzino v. Felterman,* 174 F.R.D. 59, 63 (W.D.La.1997) (Tynes, M. J.); *Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir.1985)).

The work product doctrine protects two categories of materials prepared in anticipation of litigation, fact and opinion work product. To obtain fact or ordinary work-product, a party seeking discovery of such material must make a showing of "substantial need ." Fed R Civ P 26(b)(3). However, absent a showing of *compelling* need and the inability to discover the substantial equivalent by other means, work product evidencing mental impressions of counsel, conclusions, opinions and legal theories of an attorney are not discoverable.[FN17]Indeed, opposing counsel may rarely, if ever, use discovery mechanisms to obtain the research, analysis of legal theories, mental impressions, and notes of an attorney acting on behalf of his client in anticipation of litigation.[FN18]The burden of establishing that materials determined to be attorney-work product should be disclosed is on the party seeking production.[FN19]

> FN17.*See Conkling v. Turner,* 883 F.2d 431, 434-35 (5th Cir.1989); *In Re Grand Jury Proceedings,* 219 F.3d 175, 190 (2nd Cir.2000); *Varel v. Banc One Capitol Partners, Inc.,* 1997 WL 86457 (N. D.Tex.) (Boyle M. J.).

> FN18.*See Dunn v. State Farm Fire & Casualty Co.,* 927 F.2d 869, 875 (5th Cir.1991); *Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir.1985).

> FN19.*Hodges,* 768 F.2d at 721.

## 2. ATTORNEY CLIENT PRIVILEGE

Federal courts look to various sources, including time-honored Wigmore formulation setting forth the various elements of the privilege, to wit: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless waived."[FN20]Relying on the Wigmore standard, Judge Alvin B Rubin observed:

> FN20.*Naquin v. Unocal,* 2002 WL 1837838, *2 (E.D.La.) (Wilkinson, M.J.) (*quoting,* 8 J. Wigmore, *Evidence* § 2292m at 554 (McNaughton rev.1961)).

The oldest of the privileges for confidential communications, the attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer to his client, at least if they would tend to disclose the confidential communications.[FN21]

> FN21.*Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 720-21 (5th Cir.1985).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it. Although this oldest and most venerated of the common law privileges of confidential communications serves important interests in the federal judicial system,[FN22] it is not absolute and is subject to several exceptions.[FN23]These exceptions also apply in the context of work-product immunity, and thus, waiver is discussed under that separate heading below.

> FN22.*United States v. Edwin Edwards,* 303 F.3d 606, 618 (5th Cir.2002) (*citing Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)).

> FN23.*Id.*

## 3. WAIVER OF PRIVILEGE

Federal law applicable to waiver of attorney client privilege provides that disclosure of any significant portion of a confidential communication waives the privilege as to the whole.[FN24]Waiver of the privilege in an attorney-client communication extends to all other communications relating to the same subject matter. *In re Pabst Licensing, GmbH Patent Litigation,* 2001 WL 1135465, at *4 (E.D.La. Sept. 24, 2001).

> FN24.*See also Nguyen v. Excel Corp.,* 197 F.3d 200, 207 (5th Cir.1999); *Alldread v. City of Grenada,* 988 F.2d 1425, 1434 (5th Cir.1993)("Patently, a voluntary disclosure of information which is inconsistent with the confidential nature of the attorney-client relationship waives the privilege.").

**\*8** Applying federal law, the Fifth Circuit in *Conkling v. Turner,* 883 F.3d 431 (5th Cir.1989) held that the plaintiff waived the attorney-client privilege and work product protection as to the issue of his own knowledge where the plaintiff had "injected [the issue] into [the] litigation. *Id.* at 435. The Fifth Circuit in *Conkling* further observed:

> The attorney-client privilege was intended as a shield, not a sword. When confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of privilege. The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.

*Conkling,* 883 F.2d at 434 (citations and inner quotation marks omitted).[FN25]

> FN25. The Second Circuit in *United States v. Blizerian,* 926 F.2d 1285 (2nd Cir.1991) similarly recognized that implied waiver may be found where the privilege holder "asserts a claim that in fairness requires examination of protected communications. *Id.* at 1292.Fairness considerations arise where the party attempts to use the privilege both as a sword and a shield, the quintessential

Not Reported in F.Supp.2d                                                                    Page 11
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

example being the defendant, who asserts an advice-of-counsel defense and is thereby deemed to have waived the privilege as to the advice he received. *Id.; see also In re Grand Jury Proceedings,* 219 F.3d at 182.

However, in light of the distinctive purpose underlying the work product doctrine, a general subject-matter waiver of work-product immunity is warranted only when the facts relevant to a narrow issue are in dispute and have been disclosed in such a way that it would be unfair to deny the other party access to facts relevant to the same subject matter. "[C]ourts have recognized subject-matter waiver of work-product in instances where a party deliberately disclosed work product in order to gain a tactical advantage and in instances where a party made testimonial use of work-product and then attempted to invoke the work-product doctrine to avoid cross-examination."[FN26]

> FN26.*See Varel v. Banc One Capital Partners, Inc.,* 1997 WL 86457 *3 (N. D.Tex.) (*citing United States v. Nobles,* 422 U.S. 225, 228 (1975) and *In re United Mine Workers,* 159 F.R.D. 307, 310-12 (D.C.Cir.1994)).

Another exception to both the attorney-client privilege and work product immunity is the crime-fraud exception.[FN27]Essentially, communications made by a client to his attorney during or before the commission of a crime or fraud for the purpose of being guided or assisted in its commission are not privileged.[FN28]The privilege may be overcome "where the communication or work product is intended to further criminal or fraudulent activity."[FN29]The proponent of the otherwise privileged evidence has the burden of establishing a *prima facie* case that the attorney-client relationship was intended to further criminal or fraudulent activity and the focus is on the client's purpose in seeking legal advice.[FN30]Although the pleadings in a case may be unusually detailed, as they are in the instant case, the pleadings are not evidence. Bare *allegations* will not supply the *prima facie* predicate necessary to invoke the crime-fraud exception to the attorney client and work-product privileges. *See In re International Systems and Control Corporations Securities Litigation,* 693 F.2d 1235, 1242 (5th Cir.1982).[FN31] The courts have evolved a two element test for the requisite *prima facie* predicate, to wit:

> FN27."The crime/fraud exception recognizes that because the client has no legitimate interest in seeking legal advice in planning future criminal activities, ... society had no interest in facilitating such communications," and thus "demonstrates the policy: persons should be free to consult their attorney for legitimate purposes."*In re Burlington Northern,* 822 F.2d 518, 524 (5th Cir.1987) (*citing In re International Systems & Control Corporation Securities Litigation,* 693 F.2d 1235, 1242 (5th Cir.1982)) (inner quotation marks omitted).

> FN28.*Garner v. Wolfinbarger,* 430 F.2d 1093, 1102 (5th Cir.1970).

> FN29.*Edwards,* 303 F.3d at 618 (*quoting United States v. Dyer,* 722 F.2d 174, 177 (5th Cir.1983)) (internal quotation marks omitted). In the *Edwards* case, the government was the proponent of information sought that was otherwise covered by the attorney-client privilege. The government carried its burden by establishing a prima facie case that Cecil Brown was using his lawyer's services to cover up crimes related to his extortion of LRGC/NORC which involved

payments made to Brown in exchange for his guarantee of obtaining river boat gambling licenses for the aforesaid organization *Id.*

FN30.*Edwards,* 303 F.3d at 618.

FN31.*See also* Minute Entry Order dated May 30, 2002 (*citing In re International Sys. & Controls Corp. Sec. Litigation, supra,* observing that Southern Scrap presents only allegations in support of its effort to breach the walls of the subject privileges, and holding that its position has been specifically rejected by Fifth Circuit precedent) [Rec. Doc. # 90].

First, there must be a *prima facie* showing of a violation sufficiently serious to defeat the work product privilege. Second, the court must find some valid relationship between the work product under subpoena and the *prima facie* violation.
**\*9***Id.*

Bearing all these basic principles in mind, the Court will examine the challenged documents submitted for *in camera* inspection.

## IV. ANALYSIS

## 1. SOUTHERN SCRAP'S DOCUMENTS

## A. Audit Letters

The plaintiff corporations have carried their burden of proof of demonstrating their privilege claim. In this case, the work product doctrine clearly applies to the audit letters (tabs 1-4) prepared and sent by Michael Meyer, counsel for Southern Scrap, to Deloitte & Touche and Price Waterhouse ("Deloitte & Touche").[FN32] The documents were generated at the request of general counsel for Southern Scrap and set forth a summary of all ongoing litigation, as well as counsel's mental impressions, opinions, and litigation strategy. The comments of the court in *Tronitech, Inc. v. NCR Corporation,* 108 F.R.D. 655, 656 (S.D.Ind.1985) are on point, to wit:

FN32. Because the work-product doctrine applies in the case of documents submitted for *in camera* review by Southern Scrap, the Court will not address the issue of whether the attorney-client privilege or some other privilege is applicable.

An audit letter is not prepared in the ordinary course of business but rather arises only in the event of litigation. It is prepared because of the litigation, and it is comprised of the sum total of the attorney's conclusions and legal theories concerning that litigation. Consequently, it should be protected by the work product privilege.
*Id.*

The audit letters were not prepared by or at the direction of Deloitte & Touche. Instead, the letters were

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 13
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

prepared by outside counsel at the request of Southern Scrap's general counsel with an eye toward litigation then ongoing. Clearly, the audit letters in this case are not accountant work-product. Instead, they are attorney work product of the opinion/mental impression/litigation strategy genre. Moreover, Southern Scrap is a closely-held corporation, and thus any report was to be made to its Board and not to the public.

More than once, the Fifth Circuit has held that the mere voluntary disclosure of work-product to a third person is insufficient in itself to waive the work product privilege.[FN33] This is not one of those cases where a party deliberately disclosed work-product in order to obtain a tactical advantage or where a party made testimonial use of work-product and then attempted to invoke the work-product doctrine to avoid cross-examination.[FN34]

> FN33. *See* *In re Grand Jury Proceedings,* 43 F.3d 966, 970 (5th Cir.1994); *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989); *see also* *Varel v. Banc One Capital Partners, Inc.,* 1997 WL 86457 *2 (N. D.Tex.).

> FN34. *Cf.* *United States v. Nobles,* 422 U.S. 225, 228 (1975); *In re Mine Workers of American Employee Benefit Plans Litigation,* 159 F.R.D.307, 310-12 (D.C.Cir.1994).

Considering that the plaintiffs have amended their complaint in pertinent part, deleting its allegations blaming the attorney defendants for the destruction of their business, defendants cannot now argue placing-at-issue waiver. Concomitantly, the defendants have failed to make the requisite showing of compelling need Absent that showing, the audit letters are not discoverable because the letters consist almost entirely of opinion work product, mental impressions and litigation strategies of the plaintiffs' counsel. Moreover, Michael Meyer is listed as a witness and available for deposition, and thus, the substantial equivalent is available through other methods of discovery.[FN35] The Fifth Circuit has held that the cost of one or even a few depositions is not sufficient to justify discovery of work product. Moreover, with the exception of the *Edwards* litigation, the lawsuits addressed by the audit letters are totally irrelevant to the underlying litigation or claims and defenses made in the RICO complaint, are similarly unlikely to lead to the discovery of relevant and are admissible evidence.

> FN35. *United States v. Medica-Rents Co.,* 2002 WL 1483085 (N. D.Tex.) (Means, J) (noting disclosure to a co-party does not result in waiver of the work-product doctrine and, that in any event, the information contained in the documents could have been readily obtainable through other means).

B. The Becnel Letters

**\*10** The Becnel letters are located at tabs 5 through 22 of Southern Scrap's binder submitted for *in camera* inspection. These letters consist of communications by and between various Southern Scrap attorney's, one of them is Daniel Becnel. Southern Scrap notes that Becnel argued a *Dauber* t motion on its behalf in the underlying *Houston* litigation. Plaintiffs correctly note the fallacy in the defendants' argument that materials sent or disclosed to Becnel (a non-party) are not privileged. The Becnel letters

Not Reported in F.Supp.2d                                                                        Page 14
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

listed below are aptly characterized as attorney work-product in that they set forth opinions, strategies, legal theories, and mental impressions of counsel, and thus are not subject to disclosure absent a showing of compelling need and the inability to obtain the information elsewhere.

As in the case of the audit letters, Southern Scrap has not waived the privilege by disclosure to a third party or by "placing at issue" the information. Becnel is one of many attorneys, who represent the plaintiff scrap metal companies in the underlying litigation. Daniel Becnel is listed as a witness and will be made available for deposition to speak to the issue of the *Houston* litigation, *inter alia.*Moreover, the defendants have failed to show either compelling [FN36] or even substantial need.[FN37]

> **FN36.** Although opinion work product, that which conveys the mental impressions, conclusions, opinions, strategies, or legal theories of an attorney has been accorded almost absolute protection by some courts, it may nevertheless become discoverable when mental impressions are at issue in a case. However, the requisite showing is one of compelling need.*Conoco, Inc. v. Boh Bros. Construction Co., 191 F.R.D. 107, 118 (W.D.La.1998)* (*citing In re International Systems, 693 F.2d at 1242).*

> **FN37.** The party seeking production of documents otherwise protected by the work product doctrine bears the burden of establishing that the materials should be disclosed. *Id.* (*citing Hodges, 768 F .2d at 721).*

*Becnel Letters*[FN38]

> **FN38.** Unless previously produced, fax cover sheets which bear no confidential communications, mental impressions or opinions must be produced as they contain no protected data. *See American Medical Systems, Inc., 1999 WL 970341 *4 (E.D.La.); Dixie Mill Supply Co., Inc., 168 F.R.D. at 559 (E.D.La.1996).*

Tab 5 Fax Cover Letter from Jack Alltmont (counsel/partner Sessions) to Brandt Lorio (in house counsel Southern Scrap), Daniel E. Becnel, Jr. (counsel/Southern Scrap), Rick Sarver (counsel/partner Stone Pigman), and Michael Meyer (counsel/Southern Scrap) regarding the *Houston* case and containing counsel's mental impressions and litigation strategy.

Tab 6 Fax Letter from Matthew A. Ehrlicher (General Counsel) to Daniel Becnel (Counsel/Southern Scrap), Rick Sarver, Michael Meyer and Jack Alltmont (Counsel/Southern Scrap) regarding *Houston* case strategy and mental impressions about upcoming work to be done

Tab 7 Fax Letter from Jack Alltmont to Matthew Ehrlicher (General Counsel), Daniel E. Becnel, Jr., Rick Sarver, and Michael Meyer (Counsel/Southern Scrap), regarding *Houston* case and enclosing draft motion, and discussing legal strategy, legal theory, and mental impressions of counsel.

Tab 8. Fax Letter from Michael Meyer to Daniel Becnel, copied to counsel for Southern Scrap, Ned Diefenthal, Matthew Ehrlicher, Jack Alltmont, and Richard Sarver regarding upcoming hearing in the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 15
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

*Houston* case, stating mental impressions and strategy.

Tab 9 Fax Letter from Jack Alltmont to Southern Scrap counsel, Matthew EHRLICHER, Daniel Becnel, Rick Sarver and Michael Meyer regarding *Houston* case, discussing correspondence from Jack Kemp, strategy and mental impressions.

Tab 10 Fax Letter from Jack Alltmont to Southern Scrap counsel, Matthew EHRLICHER, Daniel Becnel, Rick Sarver and Michael Meyer regarding *Houston* case, discussing conversation with from Jack Kemp, strategy and mental impressions.

**\*11** Tab 11 Fax Letter from Rick Sarver to Southern Scrap counsel, Matthew EHRLICHER, Daniel Becnel, and Jack Alltmont regarding *Houston* case, discussing strategy and giving mental impressions.

Tab 12 Fax Correspondence from Jack Alltmont to Southern Scrap counsel Brandt Lorio, Daniel Becnel, Rick Sarver, and Michael Meyer enclosing the judgment from Judge Ramsey dismissing the *Houston* case and May 16, 2001 letter from John Lambremont to Judge Ramsey and contains mental impression and strategy of counsel regarding that case.

Tab 13 A duplicate of the fax correspondence contained in the binder at Tab 5.

Tab 14 Fax Letter from Jack Alltmont to Southern Scrap counsel, Matthew Ehrlicher, Daniel Becnel, Rick Sarver and Michael Meyer regarding the *Houston* case enclosing a draft motion for summary judgment, and discussing legal theory, strategy and mental impressions of counsel.

Tab 15 Duplicate of the document discussed at Tab 7 but includes 4 fax transmittal sheets.

Tab 16 Duplicate of the document discussed at Tab 10 but includes 2 fax transmittal sheets and I transmission report.

Tab 17 Duplicate of the document discussed at Tab 11 but includes fax transmittal sheet.

Tab 18 Fax Letter from Jack Alltmont to Southern Scrap Counsel, Matthew Ehrlicher, Daniel Becnel, Rick Sarver and Michael Meyer regarding the *Houston* case, enclosing draft letter showing mental impressions of counsel and includes fax cover sheets and confirmation.

Tab 19 Duplicate of the document discussed at Tab 9, with letter from Bruce Kemp attached, and letter from Alltmont to Kemp also attached.

Tab 20 Duplicate of documents discussed at Tabs 10 and 16, but also contains handwritten attorneys' notes, and thus, not discoverable.

Tab 21 Fax transmission from Rick Sarver to Daniel Becnel regarding Houston case and outlining oral argument in that case and containing mental impressions of counsel and strategy for the hearing.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Tab 22 Duplicate of the document discussed at Tabs 7 and 15 but with the draft motion attached, with attorney's notes on the face of the document.

2. DEFENDANTS' PRIVILEGE LOG ENTRIES

Prior to addressing the individual categories of documents challenged by Southern Scrap, the Court will resolve the plaintiffs' claim of "placing-at-issue" waiver in the context of this particular case, to wit: whether by denying the allegation of the existence of an "association-in-fact" (RICO) enterprise, the defendant attorneys have placed-at-issue ordinary and opinion attorney work-product in the underlying state litigation. For reasons set forth below, the Court answers this question in the negative.

This precise issue was addressed by the Fifth Circuit in *In re Burlington Northern Inc.,* 822 F.2d 518 (5th Cir.1987). The *In re Burlington* case, involved the plaintiffs antitrust claim against defendant railroads which allegedly conspired to prevent the construction of a coal slurry pipeline, and did so by filing and defending various lawsuits.[FN39]The plaintiff ETSI sought discovery of documents relating to those underlying lawsuits and the railroads resisted discovery on the grounds of attorney-client and work product privileges. The Fifth Circuit observed:

> FN39. ETSI claimed that the defendant railroads unlawfully conspired to prevent, delay or make more expensive the pipeline's construction, because they were afraid of losing business to the pipeline ETSI was attempting to build from Wyoming to Arkansas. The railroads allegedly engaged in sham administrative and judicial challenges to ETSI in its attempts to secure crossing rights, water rights, inter alia, until ETSI abandoned the pipeline project in 1984. *In re Burlington,* 822 F.2d 518, 520 (5th Cir.1987).

**\*12** It (ETSI) argues that an antitrust defendant who relies on *Noerr-Pennington* bears the burden of proving the genuineness of his petitioning activities, and, having thus injected his good faith into the case, waives any privilege to documents bearing on that issue. We disagree.

   We cannot accept the proposition that a defendant in an antitrust suit who relies on the protection afforded by *Noerr-Pennington* necessarily gives up the right to keep his communications with his attorney confidential. Such a rule certainly cannot be justified on the basis of waiver. This is not a case where a party has asserted a claim or defense that explicitly relies on the existence or absence of the very communications for which he claims a privilege. *See, e.g.* United States v. Woodall, 438 F.2d 1317, 1324-26 (5th Cir.1970), *cert. denied,*403 U.S. 933 (1971). A defendant who relies on *Noerr-Pennington* merely denies the existence of an anti-trust violation. *Cf. Areeda,* at 4 (The "doctrine is in part an 'exception' or 'immunity' from normal antitrust principles ... but it principally reflects the absence of any antitrust violation to start with."). Accordingly, a plaintiff attempting to make an antitrust case based on conduct that involves lobbying or litigation bears the burden to show that such activity is not protected petitioning but a sham. *Coastal States,* 694 F.2d at 1372 n. 46;*Mohammad,* 586 F.2d 543. We do not see how it can be said that the railroads waived their privilege when it is ETSI who filed this lawsuit and who seeks to rely on attorney/client communications and work

Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

product to prove its claim.

*In re Burlington,* 822 F.2d at 533. The Fifth Circuit explained:
*Noerr-Pennington* is based on principles that individuals have a right to petition the government and that government has a need for the information provided by such petitioning. As we noted earlier in this opinion, the protection afforded by the attorney/client privilege furthers these principles. Under the rule ETSI suggests, whenever a competitor files a lawsuit alleging that some earlier petitioning was a sham and the defendant denies the allegation, the defendant would lose his privilege. This result would be inconsistent with both *Noerr-Pennington* and the attorney/client privilege. Attorney/client documents may be quite helpful in making out a claim of sham, but this is not a sufficient basis for abrogating the privilege.

*Id.* The Fifth Circuit concluded that *Noerr-Pennington* requires a *prima facie* finding that the particular litigation was a sham to warrant discovery of documents initially protected by the attorney/client privilege or work product immunity. *Id.* In *In re Burlington, supra,* the Fifth Circuit determined that the district court acted improperly in granting ETSI's motion to compel discovery without making the proper predicate factual determination that the individual petitioning activities in which the defendant railroads were engaged were sham lawsuits. *Id.* at 534.However, once a *prima facie* showing is made demonstrating that the underlying litigation is a sham, "then at that moment the attorney/client and work product privileges evaporate" and will not serve "to shield such dramatic evidence form the finder of fact."*Id.* at 534.

**\*13** Notwithstanding the foregoing, Southern Scrap contends that the documents withheld by the various defendant attorneys do not constitute work product. Additionally, and in the event that the Court disagrees with their position, Southern Scrap argues that it has made the requisite showing necessary to obtain discovery of ordinary work-product, *i.e.,* substantial need and the inability to obtain the substantial equivalent elsewhere. The Court hereinafter addresses the challenged documents categorically as did Southern Scrap in its Memorandum challenging the defendant attorneys various privilege log entries. *See* Plaintiffs' Challenges to the Defendants' Various Privilege Log Entries [Rec. Doc. # 194].

A. Documents Evidencing Business Relations, Including Fee Splitting Agreements Joint Representation Agreement, Business Development Plans

Information relating to billing, contingency fee contracts, fee-splitting arrangements, hourly rates, hours spent by attorneys working on litigation, and payment of attorney's fees does not fall within the attorney-client or the work product privilege.[FN40]Moreover, the work product doctrine does not protect documents and materials assembled in the ordinary course of business. These documents do not concern the client's litigation, but rather concern a business agreement to split fees by and between the defendant attorneys and their respective law firms regarding extant business and other business which may be developed.

FN40.*See In re Central Gulf Lines,* 2001 WL 30675 * 2 (E.D.La.) (Livaudais, J.) (noting that transmittal letters, letters sent for review by both legal and non-legal staff, investigation

Not Reported in F.Supp.2d                                                                        Page 18
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

documents containing factual information regarding the result of the investigation and business recommendations, but not as a legal service or to render a legal opinion, or client fee arrangements are *not protected by privilege);* *Tonti Properties v. The Sherwin-Williams Company,* 2000 WL 506015 (E.D.La.); *C.J. Calamia Construction Co., Inc. v. Ardco/Traverse Lift Co., LLC,* 1998 WL 395130 *2 (E.D.La.) (Clement, J.) (noting that billing statements and records which simply reveal the amount of time spent, the amount billed, and the type of fee arrangement are fully subject to discovery and, similarly, the purpose for which an attorney was retained and the steps taken by the attorney in discharging his obligations are not privileged).

(1) Frederick Stolzle Privilege Log

| | | |
|---|---|---|
| Number 11: | Confidentiality Agreement dated July 14, 1995 | Not Privileged |
| Number 12: | Joint Representation Arrangement dated July 24, 1995 | Not Privileged |
| Number 13: | Fee Arrangement dated July 24, 1995 | Not Privileged |
| Number 39: | Business Offer dated January 25, 2001 | Not Privileged |
| Number 40: | Discussing Litigation Management dated 1-25-01 sets forth mental impressions regarding various suits against Southern Scrap. There is no showing of compelling need. The information is otherwise available *via* deposition of Frank Dudenhefer | Work Product |
| Number 41: | Discussing Fee Potential dated 4-4-97 | Not Privileged |
| Number 42: | Fee Contracts by and between Counsel Various Fee Splitting Arrangements dated October 4, 1995 and October 5, 1999 | Not Privileged |
| Number 48: | Fee Sharing Agreement dated 2-20-96 | Not Privileged |

Not Reported in F.Supp.2d                                                                  Page 19
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

| | | |
|---|---|---|
| Number 49: | Confirmation of Fee Sharing Agreement | Not Privileged |
| | dated October 11, 1995 | |
| Number 50: | Joint Representation Agreement | Not Privileged |
| | dated 3-27-95 | |
| Number 69: | Fee Agreement and Confidentiality | Not Privileged |
| | Agreement dated July 14, 1995 and | |
| | July 24, 1995 | |
| Number 70: | Fee Sharing Agreement Clarification | Not Privileged |
| | dated July 20, 1995 and signed | |
| | August 16, 1995 | |
| Number 71: | Letter dated July 24 enclosing | Not Privileged |
| | Clarification (same as Number 70) | |
| Number 75: | 8-5-95 Handwritten Draft Addendum to | Not Privileged |
| | Joint Representation Agreement | |

(2) John B. Lambremont Sr.'s Privilege Log

| | | |
|---|---|---|
| Bates 88316-88317: | Letter from Bruce Kemp dated July 15, 1999 | Not Privileged |
| | No. 7 in Lambremont Binder | |
| Bates 27657-27658: | Correspondence between co-counsel | Not Produced |
| | No. 18 not in Lambremont binder | in camera |
| Bates: 27659-27661: | Correspondence between co-counsel | Not Produced |
| | No. 19 not in Lambremont binder | in camera |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 20
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

(3) Ken Stewart Privilege Log

| | | |
|---|---|---|
| Number 1: | 7-24-96 Memorandum between counsel | Work Product |
| | Plaintiff's strategy regarding tests for | |
| | Edwards case [previously Item Number 78]. | |
| Number 10: | Case investigation and analysis of | Underlying Factual |
| | of the levels of elements [previously | Data Not Privileged |
| | Item Number 11] | |
| Number 14: | 7-18-99 Article-Oulfport Explosion | Underlying Factual |
| | plaintiff strategy [previously Item Number 31] | Data Not Privileged [41] |
| Number 76 | 1995 Memorandum Discussing Case | Work Product |
| | Strategy and information regarding | |
| | Banks and Curry clients [previously Item Number 261] | |
| Number 252: | 10-30-95 unidentified handwritten notes | Not Produced |
| | not included for in camera review in new | in camera |
| | privilege log listing 80 documents for in | |
| | camera review | |
| Number 260 | 11-16-95 Letter Discussing Case | Not Produced |
| | Strategy enclosing lists to correct | in camera |
| | errors and discrepancies | |

FN41. Privilege log item number 14 consists of a copy of a newspaper article which appeared in the Baton Rouge Advocate regarding the toxic tort suit against Southern Scrap. The article

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

consists of non-protected factual information, and thus, must be produced. The mere fact that an attorney is copied with an newspaper article or document does not mean that the underlying data or that the document itself is privileged. *See United States v. Davis,* 636 F.2d 1028, 1040-41 (5th Cir.1981) (unprivileged documents are not rendered privileged by depositing them with an attorney); *Robinson v. Automobile Dealers Association,* 2003 WL 1787352 *2 (E.D.Tex).

(4) Fleming Group Privilege Log

| | | |
|---|---|---|
| Bates 8018 | 7/24/95 Clarification regarding Joint Representation | Not Privileged |
| Bates 7847-48 | 10/11/95 Fee Splitting Agreement | Not Privileged |
| Bates 6513-14 | 8/11/99 Revised Fee Arrangement instructions regarding litigations handling mental impressions of counsel | Work Product |
| Bates 5704 | same as Lambremont 88316-88317 | Not Privileged |
| Bates 5690-91 | 9/13/99 Letter Regarding Case Expenditures, Division of Work | Not Privileged |
| Bates 5688-89 | 9/14/99 Letter Invoice and Notice of Breach of Agreement | Not Privileged |
| Bates 3688 | 9/3/99 Fax re Case Handling | Work Product |
| Bates 3677-78 | 10-10-99 Fax re redoing fee arrangement payment of case expenses | Not Privileged |
| Bates 3273-74 | 8-11-99 Letter same as Bates 6513-14 | Work Product |
| Bates 3264-67 | 10-11-99 Letter Requesting Execution of New Fee Arrangement | Not Privileged |
| Bates 900-02 | 12-8-97 Fee Arrangement | Not Privileged |
| Bates 625-31 | 8-15-96 Letter regarding | Work Product |

Not Reported in F.Supp.2d                                                                                           Page 22
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

|  |  |  |
|---|---|---|
|  | legal strategy |  |
|  | mental impressions of counsel |  |
| Bates 583-85 | 1-9-96 Proposed Fee Arrangement | Not Privileged |
|  | regarding unrelated case not involving |  |
|  | Southern Scrap |  |
| Bates 294 | undated statement of wages and withholding | Not Privileged |
|  | regarding unidentified individual with matching |  |
| Bates 273-75 | August 16, 1995 Clarification | Not Privileged |
|  | July 20, 1995 Letter Fee Agreement |  |
|  | same as Stolze No. 70 |  |

B. Articles, Photographs, Maps and Videos

**\*14** As previously noted the work-product doctrine shields materials prepared by or for an attorney in preparation for litigation. *Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 403 (M.D.La.1992). It protects two categories of materials: ordinary work-product and opinion work product. *See Upjohn Co. v. U.S.,* 449 U.S. 383, 400-02 (1981). The doctrine is not an umbrella affording protection to all materials prepared by a lawyer or an agent of the client. The law of the Fifth Circuit is that "as long as the primary motivating purpose behind the creation of the document was to aid in potential future litigation," the work-product privilege is implicated. *See In re Kaiser Aluminum and Chemical Co.,* 214 F.3d 586, 593 (5th Cir.2000). However, if the materials were assembled or came into being in the ordinary course of business, work-product protection does not reach that far. *See United States v. El Paso Company,* 682 F.2d 530 (5th Cir.1982), *cert. denied,* 466 U.S. 944 (1984); *Beal v. Treasure Chest Casino,* 1999 WL 461970, *3 (E.D.La. July 1, 1999). Moreover, it does not extend to underlying facts relevant to the litigation. *See Upjohn,* 449 U.S. at 395-96. The burden of showing that documents were prepared in anticipation of litigation, and therefore, constitute work-product, falls on the party seeking to protect the documents from discovery. *St. James Stevedoring Co., Inc. v. Femco Machine Co.,* 173 F.R.D. 431, 432 (E.D.La.1997). The Court now turns to the documents and items listed on defendants' privilege logs to determine whether they are shielded from discovery pursuant to either the work-product or the attorney-client privilege.

(1) Frederick Stolzle Privilege Log No. 23-Photographs and Exhibit Video:

Defendant Stolzle argues that the surveillance video and photographs are privileged under the work

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 23
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

product doctrine and can only be produced upon a showing of "substantial need" and "undue hardship." The video tape and photographs at issue are clearly work product, having been gathered in anticipation of litigation, *i.e., Banks, et al, inter alia.*

Courts have expressed a diversity of views as to how to resolve the issue presented.[FN42]However, there is a common thread running through all of the jurisprudence, *i.e.,* surveillance can be a very important aspect of the party's case. The issue surfaces most often in the plaintiff-personal injury scenario; usually, it involves the defendant's surveillance of the plaintiff which tends to discredit the plaintiff's description of his or her injuries. Obviously, such surveillance evidence gathered in anticipation of litigation is generally protected as work product.

> FN42.*See, e.g., Chiasson v. Zapata Gulf Marine Corp., 988 F.2d 513,reh'g denied & opinion clarified,*3 F.3d 123 (5th Cir.1993); *Menges v. Cliffs Drilling Company,* 2000 W.L. 765083 (Vance, J.) (noting the seminal case in the Fifth Circuit is Chaisson, supra);*Fortier v. State Farm Mutual Automobile Insurance Co.,* 2000 WL 1059772 (E.D.La.) (Vance, J.); *Innovative Therapy Products, Inc. v. Roe,* 1998 WL 293995 (E.D.La.) (Wilkinson, J.); *Martino v. Baker,* 179 F.R.D. 588, 590 (D.Colo.1998) (balancing conflicting interests of parties best achieved by requiring the production of surveillance tapes); *Ward v. CSX Trnasportation, Inc.,* 161 F.R.D. 38, 41 (E.D. N.C.1995)* (noting that allowing discovery of surveillance materials prior to trial is consistent with the discovery rules in avoiding unfair surprise at trial); *Wegener v. Cliff Viessman, Inc.,* 153 F.R.D. 154, 159 (N. D.Iowa 1994)* (disclosure of surveillance materials is consistent with broad discovery and the notion of trial as a "fair contest"); *Boyle v. CSX Transportation, Inc.,* 142 F.R.D. 435, 437 (S.D.W.Va.1992).*

In *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 517 (5th Cir.1993)*, the Fifth Circuit addressed the discoverability of videotape surveillance. The court held that, regardless of whether the surveillance video has impeachment value, it must be disclosed prior to trial if it is at all substantive evidence [FN43] as opposed to solely "impeachment evidence." *Id.* at 517-18.[FN44]

> FN43. The *Chaisson* court defined substantive evidence as "that which is offered to establish the truth of the matter to be determined by the trier of fact."*Chaisson,* 988 F.2d at 517.

> FN44. In addition to *Chaisson, supra,* numerous other courts have considered the discoverability of surveillance tapes, which are intended for use at trial, and, almost uniformly, these courts have held that evidentiary films or videotapes must be provided to the opposing party prior to trial. *E.g., Forbes v. Hawaiian Tug & Barge Corp.,* 125 F.R.D. 505, 507-08 (D. Hawaii 1989); *Snead v. American Export-Isbrandtsen Lines, Inc.,* 59 F.R.D. 148, 150-51 (E.D.Pa.1973).

**\*15** Having reviewed the video tape and photographic surveillance (*i .e.,* the defendants' trial exhibits in the underlying litigation), the Court finds that the films, whether photograph or video, are of a substantive nature. More specifically, they may be used to either prove or disprove the plaintiffs' allegations in the underlying state court toxic tort litigation regarding the condition of Southern Scrap's facilities and the various operations conducted and materials stored upon or moved about the premises.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 24
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

Likewise, they may aid in either proving Southern Scrap's allegations or the defendants' affirmative defenses in the captioned RICO litigation. The thrust of Southern Scrap's claims herein is that the defendants made a concerted effort to prosecute baseless and frivolous claims against Southern Scrap for the purpose of extorting settlement funds in the underlying state court litigation. Because the subject video tapes and photographic materials are substantive in nature, and the same are not otherwise available to Southern Scrap,[FN45] under *Chaisson,* these items are discoverable.

> **FN45.** Surveillance evidence, available only from the ones who obtained it, fixes information available at a particular time and place under particular circumstances, and therefore, cannot be duplicated. The underlying facts which may be derived from the requested discovery are not freely discoverable. Southern Scrap has propounded interrogatories for the purpose of discovering the very facts which are the subject of the video/photographs to no avail.

(2) John B. Lambremont, Sr.'s Privilege Log

Lambremont's Bates Numbers 0026979-80: Defendant Lambremont withdrew his objection to production of this document.

Lambremont's Bates Numbers 0026982 and 0026984: For the same reasons discussed above with respect to videotape discovery withheld by the defendant Stolzle, the defendant John Lambremont Sr. must produce this withheld video surveillance.

Lambremont's Bates Numbers 0088517-0088520: Defendant Lambremont agreed to provide a copy of this article which is Bates Stamped No. 0088516.

Lambremont's Bates Numbers 0027198-0027201: Defendant Lambremont notes that he will produce this article *in camera* ordered by the Court and that these are his notes. The Court orders the defendant to produce Bates Numbers 0027198-0027201 to the undersigned Magistrate Judge for *in camera* review, as was done in the case of all other contested documentation withheld by the defendants.

(3) Ken Stewart's Privilege Log

Stewart Number 159 on Stewart's previous privilege log (*i.e.,* a letter dated 10-26-95 enclosing an invoice representing all outstanding invoices, etc.), is not included in Stewart's 80 item submission tendered to the undersigned Magistrate Judge for *in camera* review.

(4) The Fleming Group's Privilege Log

Fleming Bates Numbers FSS 007883-84, as defense counsel submits, consists of a copy of a newspaper article which appeared in the Baton Rouge Advocate regarding the toxic tort suit against Southern Scrap. The article consists of non-protected factual information, and thus, must be produced. As previously noted, the mere fact that an attorney is copied with a newspaper article or document does not mean that the underlying data or that the document itself is privileged.[FN46] Only confidential communications made

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 25
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

with a legal objective are privileged.

FN46. *See Davis,* 636 F.2d at 1040-41 (5ᵗʰ Cir.1981); *Robinson,* 2003 WL 1787352 *2 (E.D.Tex).

Fleming Bates Numbers FSS 006792-95 is a fax communication between plaintiff's counsel commenting on faxed newspaper article regarding the settlement of a lawsuit. Mere transmittal or confirmation letters, which do not contain any confidential communications or attorney advice, opinion or mental impressions, are not protected.FN47Whereas, here, the transmittal coversheets contain the opinion and/or mental impressions of counsel, the document is privileged. However, the newspaper article (*i.e.,* non-protected factual information) must be produced.

FN47. *See American Medical Systems, Inc.,* 1999 WL 970341 *4 (E.D.La.); *Dixie Mill Supply Co., Inc.,* 168 F.R.D. at 559 (E.D.La.1996).

**\*16** Flemings Bates Numbers FSS 001779, FSS 00937-938, FSS 000067-68 and 000046-48 must be produced for the same reasons set forth immediately above in subparagraphs a and b. These newspaper articles (*i.e.,* otherwise unprotected factual documents/data with comments removed, if any, per agreement of counsel) are NOT PRIVILEGED.

C. Purely Factual Matters are Discoverable

These documents are comprised of investigative materials, reports and opinions of experts who have been retained (possibly not *testifying experts* ), along with raw data, factual data displays on charts and maps, and other factual records, including but not limited to results of tests conducted on all air, water, soil and attic dust samples taken from various sites in and around Southern Scrap facilities in Baton Rouge and elsewhere in the state of Louisiana. Southern Scrap contends that these factual records, data and/or documentation is fully discoverable.

Defendant Stolzle contends that these documents are protected as attorney work product and that he should not be required to produce copies or disclose the contents. Moreover, the defendant urges the Court to find that unless and until the defendants disclose the names of their *testifying* experts, which disclosure is not due until July 9, 2003, these individuals should not be treated as "experts" in this RICO case at all. Stolzle notes generally that some of these experts may have or eventually will render opinions on issues pertinent to the underlying state court litigation; however, in this proceeding these individuals are presently only potential fact witnesses. Finally, defendant argues that *via* discovery in the instant federal RICO lawsuit, Southern Scrap is attempting to circumvent Louisiana's scope of discovery regarding experts as set forth in article 1424 of the Louisiana Code of Civil Procedure, which proscribes ordering the production or inspection of any part of a writing that reflects the mental impressions, conclusions, opinions, or theories of an attorney or an expert. *See*La.Code Civ. P. art. 1424. Stolzle contends that Southern Scrap is using this Court as a tool in its quest for production of documents and material otherwise unobtainable in the underlying *pending* state court litigation.

Southern Scrap counters that this third category of challenged documents are but recitations of purely

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                           Page 26
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

factual matters learned from third parties. The plaintiff contends that this information is either discoverable as documents given to testifying experts or that any privilege that may be applicable has been waived because the Fleming Group produced such "work product" protected documents.[FN48]Moreover, defendants point out that Stolzle and the other defendants challenge production on the basis of Louisiana procedural law, noting that the federal court must evaluate the claim of work product protection under the rubric of federal law.[FN49]

> FN48. The Court has not been informed which documents were produced by the Fleming Group to counsel for Southern Scrap. Absent a record as to the specific "work product" disclosed, the Court cannot properly determine either the fact or the extent of waiver of any privilege.

> FN49.*See* 6 Moore's Federal Practice, S 26.70[7] (Matthew Bender 3d ed.)(work product doctrine is governed by the federal standard, even in diversity cases).

As previously discussed, the work-product doctrine[FN50] is a judicially created immunity to prevent a party to a lawsuit from receiving the benefits of an opposing counsel's preparations for trial.[FN51]The doctrine is designed to protect the adversary process "by safeguarding the fruits of an attorney's trial preparations from discovery attempts of an opponent."[FN52]The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation.[FN53]Notwithstanding the foregoing, work product protection does not extend to the underlying facts relevant to the litigation.[FN54]

> FN50. The work-product doctrine is codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. *See Dunn,* 927 F.2d at 875;*Nance v. Thompson Medical Co.,* 173 F.R.D. 178, 181 (E.D.Tex.1997); *Schwegmann Westside Expressway v. Kmart Corporation,* 1995 WL 510071, *5 (E.D.La.1995).

> FN51.*See generally Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 393-94 (1947); *see also In Re Leslie Fay Companies Securities Litigation,* 161 F.R.D. 274, 279 (S.D. N. Y.1995).

> FN52.*Shields v. Sturm, Ruger. & Co.,* 864 F.2d 379, 382 (5th Cir .1989); *Guzzino,* 174 F.R.D. at 62.

> FN53.*Conoco, Inc. v. Boh Bros. Const. Co.,* 191 F.R.D. 107, 117 (W.D.La.1998); *In re Leslie Fay Companies Securities Litigation,* 161 F.R.D. 274, 280 (S.D. N. Y.1995).

> FN54.*See generally Upjohn Co. v. United States,* 499 U.S. 383, 395-96(1981).

**\*17** The Court here specifically distinguishes between the types of information sought by Southern Scrap. Insofar as documents sought recount factual information relevant to the claims against Southern Scrap in the underlying litigation, whether it is simply unannotated raw data, test results, maps indicating where samples were taken from, or a graphic display of test sample results, these factual matters are fully discoverable. This type of underlying factual information does not fall within the work-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 27
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

product doctrine. Moreover, this factual information goes to the very heart of the defendants' affirmative defenses in the captioned federal RICO case (*i.e.,* the existence of a basis in fact for the underlying state court cases filed against Southern Scrap).

(1) Frederick Stolzle Privilege Log

Stolzle Number 1: Correspondence between plaintiffs' counsel, authored by Bruce Kemp and mailed to co-counsel Lambremont and Stolzle, is protected WORK PRODUCT, rife with mental impressions and opinions of counsel.

Stolzle Numbers 3, 4: These documents are merely transmittal cover letters, without the appended test results and do not contain any confidential communications, mental impressions or other protected matters. Accordingly, the documents are NOT PRIVILEGED and should be produced.

Stolzle Number 5: The Fax Cover Sheet and Cover Letter dated 7-12-99, along with case narrative and Chain of Custody Form with instructions are PRIVILEGED and need not be produced. However, the remainder of the document consisting of 35 pages relevant factual data, including a map of sample locations, results of attic dust sampling, TAL metal lab results, and radiation survey records are NOT PRIVILEGED and shall be produced.

Stolzle Number 6: The Cover Letters dated 7-8-99 and 7-9-99 along with Expert Report and Analysis dates July 8, 1999 are protected WORK PRODUCT.

Stolzle Number 7: The Fax Cover Sheet dated 5-13-99 is PRIVILEGED and need not be produced. The one-page enclosure consisting of a recitation of lab results on a soil sample is NOT PRIVILEGED and shall be produced.

Stolzle Number 8: The Cover Letter dated April 23, 1999 and Report and Findings dated April 19, 1999 is protected WORK PRODUCT.

Stolzle Number 9: Histologic analysis and opinion of Dr. Daniel Perl regarding lung tissue taken from the autopsy of Mr. Eddie Edwards are protected WORK PRODUCT.

Stolzle Number 10: Correspondence to Mr. Kemp dated March 24, 1999 detailing the scope of the work is protected WORK PRODUCT.

Stolzle Number 14: Cover letter dated July 11, 1996, hand-sketched map, Report on Microscopic Analysis dated July 2, 1996 are protected WORK PRODUCT. However, Southern Scrap Materials Sampling Data Sheet (2 page chart) landscape mode and Southern Scrap Metals Sampling Results dated 6-23-96 (1 page chart) are NOT PRIVILEGED and shall be produced.

Stolzle Number 15: Cover letter dated October 22, 1996, Fax Cover Sheet dated 10-29-96 and Report of Results dated October 17, 1996 are protected WORK PRODUCT. However, the Southern Scrap

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Materials Sampling Data Sheet, Baton Rouge, La. (2 pages) is NOT PRIVILEGED and shall be produced.

**\*18** Stolzle Number 16: Correspondence between plaintiffs' counsel discussing households with lead poisoning is protected WORK PRODUCT.

Stolzle Number 17: Handwritten pages and comments noted are protected WORK PRODUCT. However, Maps of Zip Code 70805, Soil Sample Test Results dated 9-20-95, LSU Graphic Depicting Baton Rouge Wind Rose (Annual 1965-1974) are NOT PRIVILEGED and shall be produced.

Stolzle Number 18: Cover Letters dated January 20, 1996 and January 19, 1996, the narrative entitled "Map Interpretations of Data" and Fax Cover Sheet dated December 12, 1995 with enclosures including handwritten notes are protected WORK PRODUCT. However the 8 charts graphing attic dust test results and the attic dust sampling results dated December 1995 are NOT PRIVILEGED and shall be produced.

Stolzle Number 19: Fax cover sheets are protected WORK PRODUCT, but test results dated 1-31-96 are NOT PRIVILEGED and shall be produced.

Stolzle Number 20: Fax cover sheet with notations and Report dated March 20, 1996 are protected WORK PRODUCT.

Stolzle Number 21: Non-Fasting Blood test results for lead (2 pages) are NOT PRIVILEGED and shall be produced.

Stolzle Number 22: Un-executed Contractor Service Agreement is protected WORK PRODUCT.

Stolzle Number 24: Fax message regarding house testing dated 12-1-95 is later addressed under the section captioned "ALR Customer" and "CLR Customer" below.

Stolzle Number 25: Cover letter and Report dated July 8, 1999 are protected WORK PRODUCT

Stolzle Number 26: Same Document as Item Number 5 above (*i.e.,* fax cover sheet and cover letter dated 7-12-99, plus same test results). Test results need not be produced again.

Stolzle Number 27: Cover letter dated June 26, 2000 and Narrative Report dated 6-26-00 are protected WORK PRODUCT. However, Radiation Survey dated 6-19-00 (1 page) and the Draft TAL metal test results (14 pages) dated 6-26-00 are NOT PRIVILEGED and shall be produced.

Stolzle Number 28: Cover letter and report dated 3-20-96 are protected WORK PRODUCT.

Stolzle Number 29: Cover letter dated 4-8-96 and report dated 4-5-96 are protected WORK PRODUCT.

Not Reported in F.Supp.2d                                                                          Page 29
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

Stolzle Number 30: Cover letter and report dated 7-2-96 are protected WORK PRODUCT.

Stolzle Number 31: Same Documents included in Item Number 14 above.

Stolzle Number 32: Same Documents included in Item Number 14 above.

Stolzle Number 33: Same Documents included in Item Number 15 above.

Stolzle Number 34: Same Documents included in Item Number 26 above.

Stolzle Number 35, 36, 37, and 38: Data charts, portions of which were included as part of Items 14 and 15 above, are NOT PRIVILEGED and shall be produced.

Stolzle Number 55: Letter dated April 15, 1997 is protected WORK PRODUCT.

Stolzle Number 56: Letter dated September 29, 1995 is protected WORK PRODUCT.

Stolzle Number 57: Letter dated September 22, 1995 is protected WORK PRODUCT.

Stolzle Number 60: Letter dated September 12, 1995 is protected WORK PRODUCT.

**\*19** Stolzle Number 61: Letter dated September 6, 1995 is protected WORK PRODUCT.

Stolzle Number 62: Letter dated August 31, 1995 addressed to all "Residents" of a North Baton Rouge Neighborhood is NOT PRIVILEGED and shall be produced.

Stolzle Number 72: Correspondence to Mr. Grayson dated July 10, 1997 detailing the scope of the work is protected WORK PRODUCT.

Stolzle Number 73: Correspondence to Mr. Grayson dated August 5, 1998 discussing strategies is protected WORK PRODUCT.

Stolzle Number 74: Correspondence of Mr. Rastanis to Dr. George dated November 3, 1995 discussing the report of Dr. Ronald Gots is protected WORK PRODUCT.

Stolzle Number 79: Memorandum from Ken Stewart dated June 14, 1995 discussing the DEQ notification regarding the St. Thomas yard is protected WORK PRODUCT.

(2) John Lambremont, Sr.'s Privilege Log

Bates Numbers 0089024-31 is protected WORK PRODUCT. However, Fax Transmittal Cover Sheets are discoverable.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 30
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

Bates Numbers 087481-515 consisting of client lists with annotations regarding each is protected WORK PRODUCT.

Bates Number 0088190 consists of correspondence between counsel for plaintiffs in the underlying state court litigation, discussing trial strategy and mental impressions. It is protected WORK PRODUCT.

Bates Numbers 0012561-656 and 0013095-96: Defendant withdrew his objections to these items.

(3) Ken Stewart's Privilege Log

Stewart No. 20 [previously # 89]: Memorandum dated March 10, 1999 discussing case strategy is protected WORK PRODUCT.

Stewart No. 32 [previously # 76]: Fax cover letter dated 7-11-96 sent by Keith Partin without remarks but enclosing 10 pages of air sample test results is NOT PRIVILEGED and shall be produced.

Stewart No. 36 [previously # 45]: Unexecuted document which purports to be a Report of Patricia Williams, Ph.D., an expert consulted in a wholly unrelated matter number 89-23976 on the docket of the Civil District Court is protected WORK PRODUCT.

Stewart No. 39 [previously # 50]: Attic Dust Sample Test Results dated December, 1995 is NOT PRIVILEGED and shall be produced.

Stewart No. 42, 43, 44 [previously # 's 57, 58, 59]: Annotated client lists are protected WORK PRODUCT and plaintiffs have already been advised of the names of the clients.

Stewart Nos. 41 and 45 [previously # 's 60 and 61]: Southern Scrap Materials Sampling Data Sheet is NOT PRIVILEGED and shall be produced.

Stewart No. 50 [previously # 65]: Sample testing result data sheet dated January 31, 1996 is NOT PRIVILEGED and shall be produced.

Stewart No. 54 [previously # 84]: Letter dated March 7, 1997 is protected WORK PRODUCT.

Stewart No. 55 [previously # 88]: Letter dated August 31, 1998 along with enclosures are protected WORK PRODUCT.

Stewart No. 56 [previously # 90]: Test Results of Soil Samples dated May 11, 1999 is NOT PRIVILEGED and shall be produced.

Stewart No. 57 [previously # 91]: This Document consists of a Narrative Report by ETI and a Narrative Report of Results dated November 7, 1996 and both reports are protected WORK PRODUCT.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*20** Stewart No. 58 [previously # 92]: Information and sample surveys are protected WORK PRODUCT.

Stewart No. 70 [previously # 115]: Defendant has failed to show how this list of individuals identified by Caller Identification is protected work product, and thus, it is NOT PRIVILEGED and shall be produced.

Stewart Items Previously Numbered 83, 85-87, 93-114, 116-119, 124. 126 and 128 are not included in Stewart's 80 item submission tendered to the undersigned Magistrate Judge for *in camera* review.

The Court here notes that if and/or when any one or more of the defendants' or the plaintiffs' experts are designated as trial (*i.e.,* testifying) witnesses, their reports and all of the material furnished to them by counsel or utilized by them in producing their reports shall be produced to opposing counsel forthwith and without any further delay. This ruling obtains whether the designation of such an expert be as either a fact or an expert witness. This is so because any factual testimony elicited from such an expert will necessarily relate to their participation in the underlying case or cases as an expert witness. In other words, their trial testimony will inevitably touch upon matters which the parties, both plaintiffs and defendants, now claim are protected by privilege. Testimony of such experts at trial, even as to factual matters, would necessarily waive both the attorney-client privilege, to the extent such matters were disclosed, and any work product protection that is presently claimed.

Rule 26(a)(2) of the Federal Rules of Civil Procedure governs the disclosure of expert testimony and the Advisory Committee Notes to the 1993 Amendments clarify the intent of the disclosure requirement: "The [expert] report is to disclose the data and *other information considered* by the expert.... Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions-whether or not ultimately relied upon by the expert-are *privileged or otherwise protected* from disclosure when such persons are testifying or being deposed."(emphasis added). In other words, the plain language of Rule 26(a)(2)(B) and the accompanying Advisory Committee Note mandates the disclosure of any material, factual or otherwise, that is shared with a testifying expert, even if such material would otherwise be protected by the work product privilege.[FN55]

> FN55. See *Karn v. Ingersoll-Rand, 168 F.R.D. 633, 635 (N. D.Ind.1996)* (holding Rule 26(a)(2)(B) trumps the work product doctrine and establishing a "bright line" rule by which parties know in advance what is discoverable and courts are relieved from having to determine what documents or portions of documents are discoverable); *Musselman v. Phillips, 176 F.R.D. 194, 202 (D.Md.1997)* ("[W]hen an attorney furnishes work product-either factual or containing the attorney's impressions-to [a testifying expert], an opposing party is entitled to discovery of such communication."); *B.C.F. Oil Refining v. Consolidated Edison Co. of N.Y., 171 F.R.D. 57 (S.D. N. Y.1997)* (following *Karn, supra* ).

In *TV-3, Inc. v. Royal Insurance Company of America*, the Court noted that:

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 32
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

When an attorney hires an expert both the expert's compensation and his "marching orders" can be discovered and the expert cross-examined thereon. If the lawyer's "marching orders" are reasonable and fair, the lawyer and his client have little to fear. If the orders are in the nature of telling the expert what he is being paid to conclude, appropriate discovery and cross-examination thereon should be the consequence. Such a ruling is most consistent with an effort to keep expert opinion testimony fair, reliable and within the bounds of reason.[FN56]

> FN56.*TV-3, Inc.,* 194 F.R.D. 585, 588 (S.D.Miss.2000).

**\*21** Given the plain language of Rule 26(a)(2), *inter alia,* the district judge affirmed the Magistrate Judge's ruling denying the defendants' motion for a protective order and ordering full disclosure.[FN57] In *In re Hi-Bred International, Inc.,* 238 F.3d 1370 (D.C.Cir.2001), the Federal Circuit cited the *TV-3* decision with approval and observed that:

> FN57.*See id.* at 589 (holding that the Magistrate Judge's ruling was neither clearly erroneous nor contrary to law).

The revised rule proceeds on the assumption that fundamental fairness requires disclosure of all information supplied to a testifying expert in connection with his testimony. Indeed, we are quite unable to perceive what interest would be served by permitting counsel to provide core work product to a testifying expert and then to deny discovery of such material to the opposing party.[FN58]

> FN58.*In re Hi-Bred International, Inc.,* 238 F.3d 1370, 1375 (D.C.Cir.2001)

The Federal Circuit further specifically held that the attorney client privilege, to the extent such communications were disclosed, and any work product protection are waived by disclosure of confidential communications to a testifying expert.[FN59]

> FN59.*Id.*

It is not clear on this record which of the defendants' experts have already testified or will in fact testify in the underlying proceedings. Additionally, the parties in this proceedings have not yet designated the witnesses who will testify on their behalf at the trial in the captioned matter. Moreover, considering that these proceedings only recently advanced to the brink of the commencement of discovery depositions, the record does not yet demonstrate the full extent of the disclosures made to any testifying experts. Absent a proper record, disclosure to a testifying expert cannot be the basis of ordering production.

D. Lambremont's Vintage Documents

Southern Scrap refers to items listed on John B. Lambremont, Sr.'s Privilege Log which comprise Tab 6 of his *in camera* submission, to wit: Bates Nos. 0075835, 007586, 0075871, 0075944, 0075955, 0075978, 0075982, 0076003, 0076081, 0076242, 0076456, 0076463, 0076614, 0076674, 0076738, and 0076146.Southern Scrap argues that the above enumerated documents bear dates between one and six

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 33
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**

years prior to the institution of the first lawsuit. Essentially, Southern Scrap contends that because these documents were not created during a time frame within which "a real and substantial possibility of litigation" existed, they cannot properly be categorized as work product. A review of these documents, which appear to be the attorney's handwritten research notes, belies plaintiffs' contentions. Most of the documents bear dates in 1994, and quite a few refer specifically to underlying lawsuits filed against Southern Scrap by plaintiff/client name. The documents are protected WORK PRODUCT.

E. "Scrap Notes"

The publication "Scrap Notes" was the vehicle utilized by the defendants to advise clients of the progress of their cases against Southern Scrap in the underlying proceedings. Southern Scrap suggests that simply because it somehow came into possession of a copy of this informational pamphlet bulk mailed to clients, that the attorney-client privilege has been waived as to all of the topics discussed therein. Southern Scrap urges the Court to order the production of all documents related to the topics discussed in "Scrap News."

**\*22** Defendants Fleming & Associates, LLC and George Fleming filed formal reply on this issue. Fleming denies that "Scrap Notes," which on its face purports to be a confidential attorney-client communication,[FN60] was mailed to anyone other than clients. Essentially, the Fleming defendants contend that the simple fact that a third party somehow became possessed of a copy of an issue of its client newsletter, does not, in and of itself, effect a waiver of the attorney-client privilege in this matter. Moreover, the Fleming defendants highlight the facts that the newsletter was not circulated to potential clients and that the copy obtained by Southern Scrap was mailed to a plaintiff in the underlying proceedings.[FN61]

> FN60. The newsletter sets forth the following, to wit: "NOTE: This newsletter is considered privileged communication between clients and attorneys in connection with ongoing work in your case. Keeping this in mind, please use this newletter for your information and refrain from sharing it with anyone not a plaintiff in this case. This newsletter is published as a courtesy and contains confidential information that would normally only be revealed in attorney-client conferences." *See* Reply Brief [Rec. Doc. No. 197 at Exhibit "B"].

> FN61. *See* Reply Brief [Rec. Doc. No. 197 at Exhibit "B"].

The attorney-client privilege exists to protect confidential communications and the attorney-client relationship and may be waived by disclosure of the communication to a third party.[FN62] However, inadvertent disclosure to third party may or may not constitute a waiver of the attorney-client privilege; that determination depends on the facts of the disclosure.[FN63]

> FN62. *Alldread v. City of Grenada,* 988 F.2d 1425 (5th Cir.1993).

> FN63. *Id.* at 1433-1434; *see also* Myers v. City of Highland Village, Texas, 212 F.R.D. 324, 327 (E.D.Tex.2003).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 34
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**


While it is not clear how counsel for Southern Scrap came into possession of the client newsletter, the submissions to date do not militate in favor of finding waiver. The memorandum is very clearly and obviously an attorney-client communication. Based upon the facts known at this time and considering the criteria set forth in the Fifth Circuit's decision in *Alldread v. City of Grenada,* 988 F.2d 1425 (5th Cir.1993),[FN64] the undersigned Magistrate Judge finds that the client newsletter is protected by the attorney-client privilege.

> FN64. The five-part test adopted by the Fifth Circuit, under which consideration is given to all of the circumstances surrounding the disclosure, includes the following factors, to wit: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness." *Alldread,* 988 F.2d at 1433 (five-part test adopted from *Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323, 332 (N.D.Cal.1985)).

## F. Becnel Communications

Southern Scrap disputes that Document No. 2 on the Stolzle Privilege Log can possibly be considered work product. Southern Scrap highlights the fact that the letter dated September 13, 1999 (*i.e.,* after the underlying litigation was filed) and is addressed to Daniel E. Becnel, Jr., one of Southern Scrap's attorneys. The Court agrees that no matter how the argument is pared, defendants' objection must be OVERRULED. The document is NOT PRIVILEGED, contains no privileged information [FN65] and shall be produced.

> FN65.*See* Note 40 and accompanying text.

## G. "ALR Customer" and "CLR Customer"

Southern Scrap disputes the privilege claimed by defendants with respect to writings to and/or from either ALR Customer or CLR Customer, which items appear on the Stolzle Privilege Log at Tab 24 and on the Lambremont Privilege Log at Tab 5 (Bates No. 0029761-62).[FN66] As Southern Scrap aptly points out, the defendants have not identified these parties, designated only by the title "ALR Customer" and "CLR Customer." The burden of demonstrating that the information contained in the document constitutes "work product" is the defendants, who are claiming the privilege. Only after the court is convinced that the subject document is protected "work product," does the burden shift to Southern Scrap to show that the materials that constitute work-product should nonetheless be disclosed.[FN67]Accordingly, Stolzle No. 24 and Lambremont (0029761-62) are fully discoverable and shall be produced.

> FN66. Lambremont did not actually submit the document for in camera review, noting that he was unable to find the document, but would supplement.

> FN67.*See Hodges. Grant & Kaufmann,* 768 F.2d at 721.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 35
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.))**


H. Miscellaneous Stolzle Log Items

**\*23** Stolzle Numbers 43, 44, 45 and 46 are documents which simply refer to the division of work in a case. These documents are NOT PRIVILEGED, fully discoverable and shall be produced.[FN68]

    [FN68.]*See* citations of authority set forth at Note 40 and accompanying text.

I. Letters to Reverends

Stolzle Numbers 80, 81, 82, and 83, letters to various reverends in the community, regarding utilizing local church facilities for client meetings, constitute neither attorney-client communications nor protected work product; they are fully discoverable and shall be produced.

Accordingly and for all of the above and foregoing reasons, the Court issues the following orders.

IT IS ORDERED that:

    (1) Southern Scrap Material Co., LLC, SSX, L.C., and Southern Recycling Co. LLC's Motion for Maintenance of Privilege over various documents submitted for *in camera* review [Rec. Doc. # 188] is hereby GRANTED;

    (2) The Stolzle Defendants' Motion to Sustain Attorney-Client and Work Product Privileges [Rec. Doc. # 187] is hereby GRANTED IN PART and DENIED IN PART, all as more specifically set forth herein above;

    (3) The Fleming Defendants' Joint Motion to Sustain Work Product and Attorney/Client Privileges [Rec. Doc. # 189] is hereby GRANTED IN PART and DENIED IN PART, all as more specifically set forth herein above;

    (4) Ken J. Stewart's Motion to Sustain the Privilege on Documents Produced for *In Camera* Inspection [Rec. Doc. # 198] is hereby GRANTED IN PART and DENIED IN PART, all as more specifically set forth herein above; and

    (5) Defendant John B. Lambremont, Sr. et al's Motion to Sustain Work Product and Attorney-Client Privileges. [Rec. Doc. # 186] is hereby GRANTED IN PART and DENIED IN PART, all as more specifically set forth herein above.

E.D.La.,2003.
Southern Scrap Material Co. v. Fleming
Not Reported in F.Supp.2d, 2003 WL 21474516 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Date of Printing: JUN 03,2008

## KEYCITE

**H**[Southern Scrap Material Co. v. Fleming,](#) **2003 WL 21474516 (E.D.La., Jun 18, 2003) (NO. CIV.A. 01-2554)**

### History

### Direct History

=>        1 **Southern Scrap Material Co. v. Fleming,** 2003 WL 21474516 (E.D.La. Jun 18, 2003) (NO. CIV.A. 01-2554)

*Reconsideration Denied by*

**H**        2 Southern Scrap Material Co., LLC v. Fleming, 2003 WL 21783318 (E.D.La. Jul 30, 2003) (NO. CIV.A.01-2554)

### Related References (U.S.A.)

**H**        3 Southern Scrap Material Co. v. Fleming, 2001 WL 1631344 (E.D.La. Dec 18, 2001) (NO. CIV.A. 01-2554)

**H**        4 Southern Scrap Material Co., L.L.C. v. Fleming, 2002 WL 1974117 (E.D.La. Aug 27, 2002) (NO. CIV.A.01-2554)

**H**        5 Southern Scrap Material Co. v. Fleming, 2002 WL 31495660 (E.D.La. Nov 07, 2002) (NO. CIV.A. 01-2554)

**H**        6 Southern Scrap Material Co., L.L.C. v. Fleming, 2002 WL 31556357 (E.D.La. Nov 15, 2002) (NO. CIV.A. 01-2554)

**H**        7 Southern Scrap Material Co., L.L.C. v. Fleming, 2002 WL 31741243 (E.D.La. Dec 05, 2002) (NO. CIV.A. 01-2554)

**H**        8 Southern Scrap Material Co. v. Fleming, 2003 WL 21474479 (E.D.La. Jun 18, 2003) (NO. CIV.A. 01-2554)

**H**        9 Southern Scrap Material Co. v. Fleming, 2003 WL 21920899 (E.D.La. Aug 08, 2003) (NO. CIV.A.01-2554)

**H**        10 Southern Scrap Material Co. v. Fleming, 2003 WL 22415995 (E.D.La. Oct 21, 2003) (NO. CIV.A. 01-2554)

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.