# EXHIBIT 1 (IN GLOBO)

As explained in footnote 5, the following complaints are attached hereto:

1. 06-2919   *Genevieve Williams*
2. 06-4703   *Patrick and Rebecca Mooney*
3. 06-4952   *Fagey L. Fischman*
4. 06-9151   *Kenneth Jones, et al.*
5. 06-9152   *Jason Hammer, et al.*
6. 07-2660   *Rene Hollins* (representative of identical complaints in Case Nos. 07-2661; 07-2662; 07-2663; 07-2664; 07-2665)
7. 07-4784   *William Murdock, et al.*
8. 07-6488   *Christopher Bloom, et al.*





FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JUL 24  AM 8: 50

LORETTA G. WHYTE
CLERK

## IN UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| Genevieve Williams, Rosetta Irons and Eric Irons, and Ella Foster and Howard Foster, Jr. | : | CIVIL ACTION NO. 06-2919 |
| Plaintiffs | : | JURY TRIAL |
| | : | SECTION "R" |
| vs. | : | JUDGE VANCE |
| State Farm Fire and Casualty Company, Allstate Indemnity Company, and Louisiana Citizens Property Insurance Corporation | : | MAGISTRATE JUDGE ROBY |
| Defendants. | : | COMPLAINT – CLASS ACTION |

This Document relates to the following civil actions in the Eastern District of Louisiana: Nos. 05-6454, 05-6455, 05-6456, 05-6457, 05-6458, 05-6887, 05-6888, 06-0078, 06-0177, 06-0252, 06-0340, 06-0518, 06-0558, 06-0559, 06-0560, 06-0561, 06-0596, 06-0813, 06-0830, 06-0831, 06-0885, 06-1053, 06-1064, 06-1081, 06-1090, 06-1091, 06-1092, 06-1097, 06-1148, 06-1242, 06-1243, 06-1255, 06-1271, 06-1297, 06-1439, 06-1440, 06-1571, 06-1580, 06-1585, 06-1597, and all other cases transferred to this Section that contain claims under Louisiana Revised Statute 22:695.

## **FIRST AMENDED CLASS ACTION COMPLAINT**

Representative Policyholders Genevieve Williams, Rosetta Irons and Eric Irons, and Ella Foster and Howard Foster, Jr. (collectively, "the Representative Policyholders"), by and through their undersigned counsel, aver as follows.

___ Fee_____
___ Process_____
_X_ Dktd _____
___ CtRmDep_____
___ Doc. No_____

1

## I. **INTRODUCTION**

1.     The Representative Policyholders have instituted this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of homeowners insurance policyholders as defined in Paragraph 13 ("Policyholders") who, on August 29, 2005, were Louisiana residents who owned immovable property which was destroyed or damaged by winds associated with Hurricane Katrina, (the "subject properties") and who maintained insurance policies covering such property with one or more Defendants (the "subject policies").

The Representative Policyholders bring this class action for declaratory judgment and breach of Louisiana's valued policy law and bad faith statutes, arising from the wrongful, negligent, reckless, and/or intentional refusal of various Insurance Companies (collectively "Insurance Company Defendants") to provide insurance coverage to Policyholders for losses and damages to Policyholders' property caused by Hurricane Katrina, as required by the subject insurance policies and Louisiana law.

2.     Policyholders seek compensatory and punitive damages from the Insurance Company Defendants as a result of their wrongful conduct as well as declaratory relief by the Court that:

a.     The efficient proximate cause of the peril of "windstorm" is covered in the subject policies, and with respect to any loss, including total loss, of subject properties, any subsequent impact from water is legally irrelevant to determining coverage afforded by the subject policies;

2

b.  "Storm surge" is a known meteorological phenomenon that is not specifically excluded by any of the subject policies, so that any damage to the subject properties caused by "storm surge" and resulting water pressure is covered under the subject policies;

c.  The damage to the subject properties by water entering the Parishes of Jefferson, Orleans, Plaquemines, St. Bernard, and St. Tammany, neither falls within the regular definition of "flood," nor within any of the subject policies' exclusions for "flood;"

d.  Louisiana's Valued Policy Law, La. Rev. Stat. Ann. §22:695 ("VPL"), is read into the subject policies as a matter of law so that the total loss of any subject property is covered under the respective subject policy or policies, or alternatively, that certain VPL provisions conflict with other policy provisions, rendering the subject policies ambiguous;

e.  The Insurance Company Defendants placed valuations on their respectively insured subject properties and used such valuation for purposes of determining premiums to be charged for each subject policy so that Policyholders are entitled to recover the full value placed on their respective subject properties by the Insurance Company Defendants without deduction or offset pursuant to the VPL.

## II. PARTIES

3.      Representative Policyholder Genevieve Williams purchased a homeowners insurance policy from State Farm Fire and Casualty Company.

4.      Representative Policyholders Rosetta Irons and Eric Irons purchased a homeowners insurance policy from Allstate Indemnity Company.

5.      Representative Policyholders Ella Foster and Howard Foster, Jr. purchased a homeowners insurance policy from Louisiana Citizens Property Insurance Corporation.

6.      Defendant State Farm Fire and Casualty Company ("State Farm") is a foreign insurer domiciled in the State of Illinois and doing business in the State of Louisiana with a market share of approximately 33.34% of Louisiana homeowner's insurance policies and can be served through its registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

7.      Defendant Allstate Indemnity Company ("Allstate Indemnity") is a foreign insurer domiciled in the State of Illinois and doing business in the State of Louisiana with a market share of approximately 8.07% of Louisiana homeowner's insurance policies and can be served through its registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

8.      Defendant Louisiana Citizens Property Insurance Corporation ("Louisiana Citizens") is an insurer domiciled in the State of Louisiana and can be served through its registered agent for service of process, the Louisiana Secretary of State, 8549 United Plaza Blvd., Baton Rouge, LA 70809.

### III. <u>JURISDICTION AND VENUE</u>

9.      This Court has subject matter jurisdiction based upon 28 U.S.C. §
1332 because the individual Plaintiffs' actions involve a controversy exceeding the sum
or value of $75,000, exclusive of interests and costs, and are between citizens of
different states.  This Court maintains subject matter jurisdiction over the proposed
class based upon 28 U.S.C. § 1332(d) because the proposed class of policyholders
contains more than 100 members, the aggregate amount in controversy exceeds five
million dollars, and at least one member of the policyholders' class is diverse from at
least one of the insurance company defendants.

10.     This Court has personal jurisdiction over the Insurance Company
Defendants because the Insurance Company Defendants are or were transacting
business in this District within the relevant time periods, including the business of selling
insurance policies to the Policyholders, who also are located in this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391
because a substantial part of the events giving rise to this action occurred in this District
and the Insurance Company Defendants regularly transact business in this District.

### IV. <u>FACTUAL BACKGROUND</u>

#### IV.A. <u>The Appropriateness of Class Action</u>

12.     Representative Policyholders meet the prerequisites to bring this
action on behalf of the class for the following reasons.

> (a) As a result of this unprecedented catastrophic event, up
> to 160,000 homes are estimated to be unusable and the
> exact number and identities of the class of Policyholders are
> unknown at this time, and can only be ascertained through
> appropriate investigation.  Representative Policyholders
> believe the class of Policyholders consists of tens or perhaps
> hundreds of thousands of persons presenting a level of

numerosity capable of being handled only through the class action procedure. The class is so numerous that joinder of all members as individual plaintiffs is impracticable;

(b) There are common questions of law and fact common not only to all class members but will be applicable to all Insurance Company Defendants and all homeowners insurance companies in the New Orleans area including the issues of law and fact that form the basis for the declaratory and other relief sought by Representative Policyholders.

Among the questions of law and fact common to the class are:

i.  whether the fire (homeowner's) insurance policies issued by Insurance Company Defendants to Representative Policyholders are subject to the VPL, which provides in part:

   *"Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefore, shall set forth in type of equal size, the actual method of such loss computation by the insurer. Coverage may be voided under said contract in the event of criminal fault on the part of the insured or the assigns of the insured";*

ii.  whether Defendants placed valuations on the Representative Policyholders' subject properties and used such valuation for purposes of determining the premium charges to be made under the subject policies (that is, questions regarding industry standards and practices);

iii.  whether the VPL is read into the subject policies as a matter of law so that the total loss of any subject property is covered under the respective subject policy or policies, or alternatively, VPL provisions conflict with certain policy provisions and resulting ambiguities exist within the subject policies;

6

    iv.  whether the damage caused to the subject properties by water entering the Parishes of Jefferson, Orleans, Plaquemines, St. Bernard, and St. Tammany, State of Louisiana, falls within the uniform definitions of "flood," and/or within any of the subject policies' uniform flood exclusions;

    v.  whether "storm surge" is specifically excluded by any of the subject policies, so that any damage to the subject properties caused by "storm surge" and resulting water pressure covered under the subject policies; and

    vi.  whether Representative Policyholders are entitled, under La. R.S. 22:695(A), to recover the full value stated on the face of their policies.

(c) Representative Policyholders' claims are typical of the claims of the class insofar as each suffered virtually identical total losses insured by contracts containing substantively uniform provisions, and each seeks declaratory and other relief and damages from the Insurance Company Defendants for their bad faith conduct and wrongful refusal to pay benefits owed; and

(d) Representative Policyholders will fairly and adequately represent the interests of the class. The class representatives are represented by skilled attorneys who are experienced in handling class action and large-scale insurance litigation and who can be expected to handle this action in an expeditious and economical manner to the best interest of all class members.

    13.      The Policyholders' Class is defined as all persons who, on August 29, 2005, owned immovable property located within the Parishes of Jefferson, Orleans, Plaquemines, St. Bernard and/or St. Tammany, State of Louisiana, which property was insured by one or more Insurance Company Defendant(s) as to a covered peril, including the covered peril of windstorm, and which was rendered a total loss due at least in part to windstorm associated with Hurricane Katrina. The class excludes

members of the judiciary, their administrative staff, and any other personnel who may cause a member of the Louisiana judiciary to be unable to preside over this action.

### IV.B.  The Policyholders' Purchase of the Subject Policies

14.    Each policyholder owns immovable property with improvements, principally houses or related residential structures, with such property being located in the New Orleans Metropolitan Area.

15.    Each Policyholder purchased a subject homeowner's insurance policy ("All Risk Policy" or "All Risk Policies") from one or more of the Insurance Company Defendants.

16.    Plaintiffs purchased their policy with the reasonable expectation that they would be able to recover for any and all losses to their residence and personal property caused by hurricanes, including any and all damage caused by hurricane wind, and "storm surge" caused by hurricane wind.

17.    For the purpose of obtaining such hurricane coverage, some policyholders had to agree to pay a "hurricane deductible," in addition to any other applicable deductibles.

18.    Policyholders purchased their respective All Risk Policies either directly from State Farm, Allstate Indemnity, or Louisiana Citizens, each of whom sells its policies directly to policyholders, or from agents authorized by the Insurance Company Defendants to sell insurance as agents on their behalf.

19.    Plaintiffs trusted and relied upon the Insurance Company Defendants' representations, or representations made on their behalf by their authorized agents, that the All Risk Policies would cover any damage caused by a

hurricane and, thus, reasonably believed that their respective All Risk Policies would cover any and all hurricane damage.

20.     The amount of insurance varied for each Policyholder based on the estimated cost of replacing the home, an amount estimated by the Insurance Company Defendants or an agent authorized by them to determine the replacement cost of each individual home, but damages are liquidated in all such instances pursuant to the VPL.

21.     The Policyholders made timely payment of the premiums due on their respective All Risk Policies and have otherwise satisfied all conditions precedent to bringing this action.

### IV.C. **Hurricane Katrina Damages Policyholders' Property**

22.     At 6:10 a.m. on August 29, 2005, Hurricane Katrina made landfall near Buras, Louisiana as a Category 3 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border, the eye of the storm passing just east of the city of New Orleans at approximately 9:00 a.m.

23.     Policyholders' property sustained loss or damage from Hurricane Katrina, a category 3 storm, which is a covered peril under the policy issued by defendants.

24.     As a result of Hurricane Katrina, Policyholders' sustained substantial damage to their homes, rendering them a total loss.

### COUNT I – DECLARATORY JUDGMENT
### v. All Insurance Company Defendants

25.  Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

9

26. An actual controversy exists between Policyholders and the Insurance Company Defendants concerning the Insurance Company Defendants' duty to indemnify Policyholders for their losses.

27. Consequently, under the circumstances, it is necessary and appropriate for the Court to declare Policyholders' and Insurance Company Defendants' rights and duties under the Policies pursuant to 28 U.S.C. § 2201.

28. The losses suffered by Policyholders as a result of Hurricane Katrina are covered losses under their respective All Risk Policies.

29. Policyholders have given timely notification to the Insurance Company Defendants and made timely demands in writing that the Insurance Company Defendants cover Policyholders' losses.

30. The Insurance Company Defendants are obligated by the terms and conditions of their All Risk Policies to indemnify Policyholders for their losses.

31. The Insurance Company Defendants have refused to indemnify Policyholders for their losses and have denied coverage for the losses.

32. Thus, Policyholders are entitled to a declaratory judgment that the damages they suffered are covered losses under the All Risk Policies. Upon information and belief, the Insurance Company Defendants' actions, inaction and policies are representative of other unnamed insurance companies' actions, inaction and policies providing and failing to recognize coverage in the class' geographic area.

33. Specifically, the Policyholders' losses were caused by covered perils, the efficient causes of their losses were covered perils and the efficient and proximate causes of loss were covered perils.

34.   Policyholders suffered a "covered loss of, or damage to" the covered property.

35.   Further, that Policyholders suffered total losses to their property.

36.   The Insurance Company Defendants placed valuations on the Policyholders' properties and used such valuation for purposes of determining premiums to be charged under the policy, and, as such, under Louisiana's Valued Policy Law, Policyholders are entitled to recover the full value placed on their properties by the Insurance Company Defendants without deduction or offset.

37.   Finally, Policyholders should not be deprived of the coverage of the All Risk Policies where the Insurance Company Defendants have drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted. If so intended, and in contrast to other insurance policies available in the market, Insurance Company Defendants should have specifically excluded hurricane damage and/or the failure of levees as the most probable perils for the New Orleans Metropolitan Area.  Instead, Insurance Company Defendants decided to sell the same comprehensive All-Risk Homeowners Insurance Policies that they sell in the "high and dry" plains throughout the United States.

38.   While the Insurance Company Defendants may continue to make investment income during the course of any protracted legal proceedings, Policyholders, on the other hand, have little recourse but to sit idly by awaiting a decision, all the while being unable to begin reconstruction or renovation of their homes until they have the money to pay contractors.

39.   As a result, without resolution of this issue by declaratory judgment, Policyholders, in most instances, will be unable to remedy the damages they fully expected were covered by their All Risk Policies.

WHEREFORE, Policyholders respectfully request that this Court enter a declaratory judgment in their favor and against the Insurance Company Defendants as to Count I, ordering and decreeing that:

(i)     The efficient proximate cause of the losses suffered by the Policyholders on August 29, 2005 was "windstorm," a covered peril under all of the insurance policies purchased by the Policyholders, thereby rendering any subsequent impact from water irrelevant to coverage afforded by the insurance policies;

(ii)    "Storm surge" is a known meteorological phenomenon that is not specifically excluded by any of the Insurance Company Defendants' insurance policies, in contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

(iii)   The damage caused by water entering the Parishes of Jefferson, Orleans, Plaquemines, St. Bernard and St. Tammany, State of Louisiana, neither falls within the regular definition of "flood," nor within any of the subject insurance policies' exclusions of "flood;"

(iv)    The Policyholders have suffered total losses to their property which are covered under their respective All Risk Policies sold by the Insurance Company Defendants;

(v)    The Policyholders suffered a "covered loss of, or damage to" the covered property; and

(vi)    Because the Insurance Company Defendants placed valuations on the Policyholders' properties and used such valuation for purposes of determining premiums to be charged under the policy, under Louisiana's Valued Policy Law, La. Rev. Stat. Ann. §22:695, et seq., Policyholders are entitled to recover the full value placed on their properties by the Insurance Company Defendants without deduction or offset.

## COUNT II — BREACH OF LA. REV. STAT. ANN. § 22:695
## v. All Insurance Company Defendants

40.    Policyholders repeat and reallege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

41.    Louisiana is a "valued policy" state, requiring that if an "insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset." La. Rev. Stat. Ann. § 22:695.

42.     The Insurance Company Defendants placed a value on the respective Policyholders' property and used such valuation for purposes of determining the premium charged under their respective All Risk Policies.

43.     Policyholders have suffered total losses to their property which are covered under their respective All Risk Policies.

44.     Policyholders suffered a "covered loss of, or damage to" the covered property.

45.     The Insurance Company Defendants have failed to indemnify or compensate Policyholders for their "covered loss of, or damage to" the covered property in an amount equal to the values used for determining the individual policy premiums.

46.     Instead, the Insurance Company Defendants have failed to pay anything to Policyholder or paid an amount lower than the valuation assessed to the properties for purposes of determining premiums.

47.     As a result, the Insurance Company Defendants have breached La. Rev. Stat. Ann. §22:695 entitling Policyholders to damages equal to the full value placed on the Policyholders' property by the Insurance Company Defendants with no offset or deductions.

WHEREFORE, Policyholders demand judgment against the Insurance Company Defendants for all amounts due under the Policies, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

48.   Policyholders are entitled to and pray for trial by jury on all Counts in this Complaint.

Respectfully Submitted,

Ranier, Gayle & Elliot, L.L.C.

Drew Ranier, Esq. (T.A.)
LA Bar Roll. No. 8320
Frank Elliot, Esq.
LA Bar Roll. No. 23054
1419 Ryan Street
P.O. Box 1890
Lake Charles, Louisiana 70602-1890

AND

McKernan Law Firm
Joseph J. McKernan
LA Bar Roll. No. 10027
8710 Jefferson Highway
Baton Rouge, Louisiana 70809
Telephone: 225-926-1234
Fax: 225-926-1202

AND

Anderson Kill & Olick, P.C.
John N. Ellison, Esq.
Darin McMullen, Esq.
1600 Market Street
Suite 2500
Philadelphia, PA  19103
Telephone: 215-568-4202
Facsimile:  215-568-4375

AND

Larry D. Dyess, APLC
LA Bar Roll. No. 19555
4637 Jamestown Avenue, Suite C
Baton Rouge, Louisiana  70808
(225) 928-0019 office
(225) 924-0141 fax

AND

Joseph Bruno (La. Bar No. 3604)
David S. Scalia (La. Bar No. 21369)
BRUNO & BRUNO
855 Baronne Street
New Orleans, LA 70113
Ph: (504) 525-1335
Fax: (504) 561-6775

Attorneys for Policyholders

## CERTIFICATE OF SERVICE

       I, N. Frank Elliot III, an attorney of record in this case, hereby certify that on July 24, 2006, a copy of the foregoing Complaint was served on all parties by mailing it postage prepaid, properly addressed.

IN UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

PATRICK S. AND REBECCA MOONEY          CIVIL ACTION 06-4708

VERSUS                                                NO.          SECT. B MAG. 5

STATE FARM INSURANCE COMPANY           SECTION:

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2006 AUG 25  AM 11:37
LORETTA G. WHYTE

## COMPLAINT

NOW INTO COURT, come the plaintiffs in this matter, through undersigned counsel, who allege and aver as follows:

### I. PARTIES

1.      PLAINITFFS, Patrick S. and Rebecca Mooney, husband and wife, persons of the full age of majority and  residents of Orleans Parish of the State of Louisiana, who purchased two homeowners insurance policy from State Farm Insurance Company, to-wit: policy No. 18EL92636F and No.18ER66849F, respectively,  covering their residence located at 6964 Catina Street in New Orleans, Louisiana 70124, and a residence which was under construction at all material times located at 10 New Basin Way in New Orleans, Louisiana 70124.  The plaintiffs are hereinafter referred to as the "policy holders".

2.      Defendant, State Farm Insurance Company is, upon information and belief, a foreign insurer organized and existing under the laws of the State of Illinois and doing business in the State of Louisiana, who insured the residence of plaintiffs, Patrick S. and Rebecca Mooney, and the residents policy holders and may be served through their agent for service of process, the Louisiana Secretary of State, at 8549 United Plaza Blvd., Baton Rouge, La 70809.  This defendant is hereinafter referred to as the "Insurance Company Defendant".

Fee $350.

## II.  INTRODUCTION

3.      The plaintiffs are homeowners insurance policy holders who, on August 29, 2005, were Louisiana residents who owned immovable property with improvements, principally residential structures, as well as personal property located therein, which was destroyed or damaged in Hurricane Katrina.

4.      The policy holders bring this action for declaratory judgment, breach of contract, breach of the implied duty of fair dealing and good faith, and breach of Louisiana's bad faith statutes, arising out of the wrongful, negligent, reckless and/or intentional refusal of the Insurance Company Defendant to provide insurance coverage to policy holders for losses and damages to policy holders' property caused by Hurricane Katrina, as required by the insurance policy that policy holders purchased from the Insurance Company Defendant.

5.      Policy holders seek compensatory and punitive damages from the Insurance Company Defendant as a result of its wrongful conduct, in addition to declaratory relief by the Court that:

    a.      The first efficient proximate cause of the losses suffered by the policy holders on August 29, 2005 was "windstorm", a covered peril under the insurance policy purchased by the policy holders, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policy;.

    b.      The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were acts of negligence, standard

2

covered perils in the Insurance Company Defendant's homeowners insurance policy;

c.     The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005, was "storm surge", a known meteorological phenomenon that is not specifically excluded by the Insurance Company Defendant's insurance policy, in contrast to other insurance polices available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policy;

d.     The breaking or failure of levees or boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by the Insurance Company Defendant's  insurance policy in contrast to other insurance policies available in the market; and

e.     The damages caused by water entering the City of New Orleans and surrounding parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of "flood", nor within any of the subject insurance policy exclusion of "flood".

### III. JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction based upon 28 U.S.C. paragraph 1332 because of diversity of citizenship and the amount in controversy between plaintiffs and their insurer exceeds $75,000.00

7.     This Court has personal jurisdiction over the Insurance Company Defendant because the Insurance Company Defendant is or was transacting business in this District within the relevant

3

time periods by way of selling an insurance policy to the policy holders, who are also located in this District.

8.    Venue is proper in this District pursuant to 28 U.S.C. paragraph 1391 (a) because a substantial part of the events giving rise to this action occurred in this District and the Insurance Company Defendant regularly transacts business in this District and the property insured by the Insurance Company Defendant is located in this District.

## IV.  FACTUAL BACKGROUND

9.    Policy holders are the owners of immovable property with improvements; principally a house or related residential structure as well as personal property located there, with such property being located in the Parish of Orleans, State of Louisiana.

10.    Policy holders purchased a homeowner's insurance policy (the "All Risk Policy" or "All Risk Policies") from Insurance Company Defendant.

11.    Policy holders purchased their  policy with the reasonable expectation that they would be able to recover for any and all losses to their residence and personal property caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and "storm surge" proximately caused by hurricane wind.

12.    For the purpose of obtaining such hurricane coverage, policy holders had to agree to pay a "hurricane deductible".

13.    However, notwithstanding the specific topographic townsite of the Greater New Orleans Metropolitan Area specifically known to the Insurance Company Defendant, notwithstanding their advanced knowledge about the fragility of the New Orleans area levee systems, and in contrast to other insurance policies available in the market, at no time did they specifically

4

exclude from coverage the breaking or failure of boundaries and levees of lakes, rivers, streams, or other bodies of water.

14.   Policy holders purchased their All Risk Policy from an agent authorized by the Insurance Company Defendant, to sell insurance as agents on their behalf.

15.   Policy holders trusted and relied upon Insurance Company Defendant's representations that the subject policy would cover any damage caused by a hurricane and, thus, reasonably believed that their respective insurance policy would cover any and all hurricane damage.

16.   The amount of insurance for policy holders was based on the estimated cost of replacing the home, an amount estimated by the Insurance Company Defendant or an agent authorized by them to determine the replacement cost of policy holders' home.   At all times relevant hereto, policy holders made timely payment of the premiums due on their All Risk Policy.

INSURANCE COMPANY DEFENDANT FAILS TO ADVISE POLICY
HOLDER REGARDING THE AVAILABILITY OF FLOOD INSURANCE

17.   In 1956 Congress enacted the Federal Flood Insurance Act.  The National Flood Insurance Act, as amended in 1968, is now the seminal authority for the current National Flood Insurance Program ("NFIP").   Congress created the NFIP to provide insurance coverage for property located in floodplain areas where the risk of certain natural or seasonal flooding is increased.

18.   The NFIP provides a minimum level of insurance for the peril of natural or seasonable flooding with a cap of $250,000.00 per property.  42 U.S.C paragraph 4121(a) (1).

19.   Since the inception of the NFIP, the insurance industry has been willing to sell insurance in excess of the minimal level of coverage provided by the NFIP.  Thus, the availability of additional flood insurance was known to and sold by the Insurance Company Defendant at the time it sold its All Risk Policy to policy holder.

20.     Despite this knowledge, at no time prior to August 29, 2005 did the Insurance Company

Defendant advise policy holders that contrary to its representations its true intent was not to

cover damage or loss caused by hurricanes that may involve damage, in part from water beyond

the NFIP limit, and that their home may accordingly be grossly underinsured, or that additional

coverage could be purchased in excess of the NFIP limit.

21.     In addition, the policy holders had not been advised on the availability of flood insurance

under the NFIP by the Insurance Company Defendant.

## HURRICANE KATRINA DAMAGES POLICY HOLDER'S PROPERTY

22.     At 6:10 a.m. on August 29, 2005, Hurricane Katrina made landfall near Grand Isle,

Louisiana, as a category 4 hurricane, and then made a second landfall a short time later near the

Louisiana-Mississippi border, the eye of the storm passing just east of the City of New Orleans at

approximately 9:00 a.m.

23.     At 8:00 a.m. on August 29, 2005 there was water on both sides of the Industrial Canal

in New Orleans, and by 9:00 a.m., there was six to eight feet of water in the City's Lower Ninth

Ward.

24.     At 2:00 p.m. on August 29, 2005, New Orleans officials publicly confirmed the reason

for the water accumulating in the Lower Ninth Ward was a breach in the Industrial Canal levee

wall, a breach which was reported to be two city blocks wide.

25.     Other significant breaches in the New Orleans area levee systems occurred on or after

August 29, 2005, which similarly caused releases of water into the City and adjoining parishes.

In all, the levees around the City and adjoining parishes failed in at least eight (8) distinct

locations, including the 17th Street, London Avenue and Industrial Canals, causing distinct and

unique harm to different sections of the City and surrounding parishes.

6

26.     Policy holders sustained damage to their property as a result of the catastrophic events of August 29, 2005, and the following days said catastrophic events being precipitated by Hurricane Katrina, a category 4 storm with sustained winds of 145 miles per hour.

27.     In the aftermath of the storm, it was estimated that approximately 80% of Orleans Parish was underwater, and that losses from the hurricane are estimated to be as high as $200 billion.

28.     Recent engineering reports have stated that vast amounts of the water that entered the City of New Orleans and the surrounding parishes came about as the result of levee failures caused by negligent design, negligent maintenance and/or inadequate materials and not be topping of the levees.

29.     Moreover, in its April 6, 2006 edition, The Times Picayune reported that Lt. Gen. Carl Strock, the Chief of the Army Corps of Engineers, told a Senate committee that the Corps neglected to consider the possibility that the levee walls atop the 17th Street Canal levee would lurch away from their footings under significant water pressure and eat away at the earthen barriers below.  The levees simply failed to work the way they were supposed to work.

30.     Congressional investigators, experts, and some Army Corps of Engineers officers have also suggested that the failure of the levees might have been caused by leaks in the barriers based upon poor construction and/or maintenance of the levee.

31.     In addition it was learned that the levee breach of the Industrial Canal on the Lower Ninth Ward side was caused by an inadequately moored barge that crashed into the levee wall, rupturing the levee and compromising its ability to hold water back.

32.     As a result, policy holders aver, upon information and belief, that any damages attributable to the levee failures are the result of negligent design, construction, maintenance of the levees by various third parties and/or third party negligence.

7

COUNT I – DECLARAGTORY JUDGMENT VS.
INSURANCE COMPANY DEFENDANT

33.   Policy holders repeat and re-allege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

34.   An actual controversy exists between policy holders and the Insurance Company Defendant concerning the Insurance Company Defendant's duty to indemnify policy holder for their loss.

35.   Consequently under the circumstances, it is necessary and appropriate for the Court to declare policy holders and Insurance Company Defendant's rights and duties under the policy pursuant to 28 U.S.C. paragraph 2201.

36.   The losses suffered by policy holders as a result of Hurricane Katrina are covered losses under their All Risk Policy.

37.   Policy holders had given timely notification to the Insurance Company Defendant and made timely demands that the Insurance Company Defendant cover policy holders' loss.

38.   The Insurance Company Defendant is obligated by the terms and conditions of its All Risk Policy to indemnity policy holders for their losses.

39.   The Insurance Company Defendant has refused to indemnify policy holders for their loss and have denied coverage for the loss.

40.   Thus, policy holders are entitled to a declaratory judgment that the damages they suffered are covered losses under the All Risk Policy.

41.   Specifically, the policy holders' loss was caused by covered perils, the efficient causes of their loss was covered perils and the efficient and proximate causes of loss were covered perils.

42.   Further to give the "flood" exclusions a broad reading and thus disallow the coverage for the damages arising from this catastrophic disaster, which occurred despite the vast and

expansive levees existing in the greater New Orleans area, would contravene the very purpose of homeowner's policies.

43.     The reasonable expectations of the policy holders is that "flood" encompasses overflowing of the Mississippi River, accumulation of surface water due to heavy rainfalls, or similar phenomena, but not the failing of virtually all man-made structures containing canals, and/or navigable waters of the United States surrounding the New Orleans Metropolitan Area due to negligent conduct beyond the policy holders' control.

44.     Finally, policy holders should not be deprived of the coverage of the All Risk Policy where the Insurance Company Defendant has drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted.  If so intended, and in contrast to other insurance policies available in the market, Insurance Company Defendant should have specifically excluded hurricane damage and/or the failure of levees as the most probable perils for the New Orleans Metropolitan area.  Instead Insurance Company Defendant decided to sell the same comprehensive All Risk Homeowners Insurance Policies that they sell in the "high and dry" plains throughout the United States.

45.     While the Insurance Company Defendant may continue to make investment income during the course of any protracted legal proceedings, policy holders, on the other hand, have little recourse but to sit idly by awaiting a decision, all the while being unable to begin reconstruction or renovation of their home until they have the money to pay contractors.

46.     As a result, without resolution of this issue by declaratory judgment, policy holders, in most instances, will be unable to remedy the damages they fully expected were covered by their All Risk Policy.

WHEREFORE, policy holders respectfully request that this Court enter a declaratory judgment in their favor and against the Insurance Company Defendant as to Count I, ordering and decreeing that:

(1)     The first efficient proximate cause of the loss suffered by the policy holders on August 29, 2005, was "windstorm", a covered peril under the insurance policy purchased by the policy holder, thereby rendering any subsequent impact from water released by the levees and/or levee wall failures irrelevant to coverage afforded by the insurance policy;

(2)     The second efficient proximate cause of the loss resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, Industrial Canal, and elsewhere were acts of negligence, standard covered perils in the Insurance Company Defendant's homeowners insurance policy.

(3)     The third efficient proximate cause of the loss resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 was "storm surge", a known meteorological phenomenon that is not specifically excluded by the Insurance Company Defendant's policy in contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policy.

(4)     The breaking or failure of boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by the Insurance Company Defendant's insurance policy, in contrast to other insurance policies available in the market, and

(5)     The damage caused by water entering the City of New Orleans and adjoining

parishes from Hurricane Katrina beginning on August 29, 2005, due to the

breaches in the levees and levee walls along the 17th Street Canal, London

Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular

definition of "flood", nor within any of the subject insurance policy exclusions of

"flood".

## COUNT II – BREACH OF CONTRACT BY
## INSURANCE COMPANY DEFENDANT

47.     Policy holders repeat and re-allege the allegations of the foregoing paragraphs as if

the same were set forth at length herein.

48      A valid contract exists between policy holders and the Insurance Company

Defendant in the form of the individual All Risk Policy, which inter alia, obligates the

Insurance Company Defendant to cover the loss of or damage to a dwelling and personal

property therein, which is caused by wind or windstorms, storm surge, or act of negligence.

49.     Policy holders paid all premiums due under their All Risk Policy and materially

performed their obligations under that policy.

50.     Upon proper and repeated demands by policy holders, the Insurance Company

Defendant has refused to meet its obligation under the All Risk Policy and refused to pay

the full damages for policy holders' home being destroyed or damaged by the efficient

proximate cause of windstorms, storm surge and/or negligence.

51.     As a direct and proximate result of the breach by the Insurance Company

Defendant, policy holders were deprived of the benefit of insurance coverage for which the

Insurance Company Defendant was paid substantial premiums and, accordingly, policy

holders have suffered substantial damages.

11

WHEREFORE, policy holders demand judgment against the Insurance Company Defendant for all amounts due under the All Risk Policy, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

### COUNT III – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING BY. INSURANCE COMPANY DEFENDANT

52.      Policy holders repeat and re-allege the allegations of the foregoing paragraphs as if the same were set forth at length herein.

53.      By selling its All Risk Policy to policy holders, the Insurance Company Defendant assumed a duty of good faith and fair dealing to the policy holders, including an obligation to promptly indemnify policy holders for their losses.

54.      The Insurance Company Defendant has failed to follow Louisiana's long-standing efficient proximate cause doctrine and have instead adopted an industry-wide approach to denying valid claims for inappropriate reasons.

55.      The Insurance Company Defendant has also failed to provide coverage for policy holders' losses and instead have attempted to equate the efficient proximate cause of windstorm and the negligent design, construction and maintenance of the levees in the New Orleans area and/or third party negligence which caused policy holders' losses, with flooding in an effort to exclude coverage.

56.      The Insurance Company Defendant has also wrongfully denied coverage for claims by equating "storm surge" with flood, thereby improperly expanding the flood exclusion and defeating the reasonable expectation of Louisiana policy holders.

12

57.     By engaging in all of the conduct above, the Insurance Company Defendant lacks an arguable or legitimate basis for refusing to pay the policy holders' claims.

58.     By engaging in all of the conduct described above, the Insurance Company Defendant has violated the duties of good faith and fair dealing owed to policy holders.

59.     As a direct and proximate result of the Insurance Company Defendant's bad faith actions, policy holders have suffered, and will continue to suffer, substantial damages.

60.     Moreover, by engaging in the conduct above, the Insurance Company Defendant's persistent and systematic actions and failures to act were done with malice and gross negligence and with a disregard for policy holders' rights so as to warrant the imposition of punitive damages against the Insurance Company Defendant.

        WHEREFORE, policy holder demands judgment against the insurance Company Defendant for all amounts due under the policy, other compensatory damages, punitive damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

## COUNT IV – BREACH OF LA.REV.STAT.ANN PARAGRAPH 22:1220 ( BAD FAITH OF INSURANCE COMPANY DEFENDANT

61.     Policy holders repeat and re-allege the allegations of the foregoing paragraphs as if the  same were set forth at length herein.

62.     Pursuant to La. Rev. Stat. Ann Paragraph 22:1220A, the Insurance Company Defendant owes policy holders a "duty of good faith and fair dealing" as well as a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with policy holders.

13

63        La.Rev.Stat.Ann paragraph 22:1220B prohibits the Insurance Company

Defendant from, <u>inter alia</u>, "[m]isrepresenting pertinent facts or insurance policy

provisions relating to any coverage at issue" and [f]ailing to pay the amount of any

claim…when such failure is arbitrary capricious or without probable cause."

64.    The Insurance Company Defendant has misrepresented the coverage afforded by

the All Risk Policy provisions by wrongfully and without a legitimate basis seeking to

have the "flood" exclusions given a broad reading in an effort to disallow coverage for

the damages arising from Hurricane Katrina.

65.    The Insurance Company Defendant has failed to follow Louisiana's long-standing

efficient proximate cause doctrine and has instead adopted an industry-wide approach to

denying valid claims for inappropriate reasons without probable cause.

66.    Specifically, the Insurance Company Defendant has failed to provide coverage

for policy holders' loss and, instead, has attempted to equate the efficient cause of

windstorm and the negligent design, construction and maintenance of the levees in New

Orleans which caused policy holders' loss with <u>flooding</u> in an effort to exclude coverage

and/or third party negligence.

67.    The Insurance Company Defendant has also wrongfully denied coverage for

claims by equating "storm surge" with flood, thereby improperly expanding the flood

exclusion and defeating the reasonable expectation of Louisiana policy holders.

68.    As such, the Insurance Company Defendant has breached known duties through a

motive of self interest and/'or ill will without having a reasonable basis to deny these

claims instead denying claims in an arbitrary and capricious manner and without probable

cause.

69.     By engaging in all of the above conduct, Insurance Company Defendant has

engaged in bad faith conduct in violation of La. Rev. State. Ann. paragraph 22:1220.

        WHEREFORE, policy holders demand judgment against the Insurance Company

Defendant for all compensatory damages including all amounts due under the policy,

other compensatory damages, plus interest, on that amount, costs of suit, attorney's fees

incurred in pursuing payment of the loss, consequential damages,  punitive damages,

and such other relief deemed just an proper by the Court.


                        RESPECTFULLY SUBMITTED:


                        RAINER LORENZ, BAR NO. 8786
                        ATTORNEY AT LAW
                        108 SOUTH DRIVE
                        COVINGTON, LA 70433
                        985-264-2425

15

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 AUG 28  PM 12: 26

LORETTA G. WHYTE
CLERK

| | |
|---|---|
| **FAGEY LUPIN FISCHMAN**<br>**Plaintiff,** | * **CIVIL ACTION** |
| | * |
| | * **NO.** **06 - 4952** |
| **VERSUS** | * |
| | * **SECTION** **SECT. 1 MAG 1** |
| **STATE FARM INSURANCE COMPANY**<br>**Defendant.** | * **JUDGE** |
| | * |
| | * **MAGISTRATE** |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR INSURANCE COVERAGE, BAD FAITH PENALTIES, ATTORNEYS FEES AND COSTS, AND BAD FAITH BREACH OF INSURANCE CONTRACTS

**NOW COMES,** Plaintiff Fagey Lupin Fischman ("Mrs. Fischman") to submit, through undersigned counsel, her Complaint for Insurance Coverage, Bad Faith Penalties, Attorneys Fees and Costs, and Bad Faith Breach of Insurance Contract against Defendant State Farm Insurance Company ("State Farm").

## PARTIES

1.

Plaintiff, Fagey Lupin Fischman ("Mrs. Fischman") is a citizen of the State of Louisiana and domiciled in the State of Louisiana.

2.

Defendant, State Farm Insurance Company ("State Farm"), is a foreign insurance company with its principal place of business in a state other than Louisiana.

____ Fee 350 00
____ Process wD Iws
_X_ Dktd _____
____ CtRmDep_____
____ Doc. No_____

-1-

## JURISDICTION AND VENUE

3.

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332 as there is diversity between the parties and the amount in controversy is in excess of $75,000.00 exclusive of interest and costs.

4.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(2) as a substantial part of the events or omissions giving rise to Mrs. Fischman's claim occurred in this judicial district and the property that is the subject of this action is situated in this judicial district.

## THE STATE FARM POLICY

5.

Defendant State Farm issued Mrs. Fischman Homeowners Insurance Policy Number 18-47-3615-7 for the policy period March10, 2005, to March 10, 2006 (the "State Farm Policy").

6.

The State Farm Policy insures the residence located at 5401 Bellaire Drive, New Orleans, Louisiana 70124.

7.

The State Farm Policy provides Home and Contents coverage with the following limits of liability:

| | |
|---|---|
| Home: | $359,300.00 |
| Contents: | $269,475.00 |

-2-

8.

The State Farm Policy specifically provides coverage for the Dwelling, which includes Residence Premises, including any Dwelling Extension and other permanent structures, grounds, Personal Property, Additional Living Expenses, Prohibited Use, Temporary Repairs, Trees, Shrubs and Other Plants, Debris Removal, Power Interruption, Refrigerated Products, Property Removal, and Locks.

## STATE FARM'S BAD FAITH ADJUSTMENT AND BREACH OF THE INSURANCE POLICY

9.

On August 29, 2005, Hurricane Katrina struck southeastern Louisiana, causing substantial property damage to Mrs. Fischman's insured property rendering it uninhabitable.

10.

During the first week in September, 2005, Mrs. Fischman provided State Farm with notice of the loss at the insured property as a result of Hurricane Katrina.

11.

After the lapse of at least a few weeks, an adjustor for State Farm contacted Mrs. Fischman regarding her Homeowner's claim.

12.

After even more weeks, an adjustor was finally assigned to adjust Mrs. Fischman's dwelling (Coverage A), contents (Coverage B), and Loss of Use-Additional Living Expenses (Coverage C) claims under her State Farm policy.  Eventually, the insured property was inspected.

-3-

13.

Not having received any payments whatsoever, three weeks shy of the one year anniversary of Hurricane Katrina, on August 8, 2006, a mediation was held pursuant to the Louisiana Department of Insurance Mediation Program for Residential Insurance Claims resulting from Hurricanes Katrina and Rita. Present were Mrs. Fischman, undersigned counsel, Carol Carpenter (State Farm adjustor), Mr. Calhoun (State Farm supervisor), and the mediator. At the mediation, the *only* claim mediated was that under Coverage C-Loss of Use-Additional Living Expenses. At the conclusion of the mediation, $6,216.17 was paid to Mrs. Fischman under Coverage C-Loss of Use-Additional Living Expenses. This payment is the ***only*** payment received by Mrs. Fischman pursuant to the State Farm Homeowner's Policy.

14.

Mrs. Fischman's insured property, including structure and contents received extensive damage due to the breach of the 17th Street Canal and/or London Avenue Canal. The damage to the dwelling and damaged and lost contents exceeds the State Farm policy limits. The State Farm Policy with respect to the Dwelling provides:

> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

State Farm Policy at Section I, Losses Insured, page 7. (*See* Exhibit A, standard State Farm Policy.)

15.

The State Farm Policy's "water damage" exclusion provides:

> **Water Damage,** meaning:

-4-

      (1)     flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not.

(*See* Ex. "A", State Farm Policy at Section I, Losses Not Insured, page 10.)

16.

Mrs. Fischman's damages did not result, however, from flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, or any other cause listed in the water damage exclusion of the State Farm Policy. Rather, Mrs. Fischman's water damage resulted solely from the breach of the levees and floodwalls along the 17th Street Canal and/or the London Avenue Canal, which was caused by the actions a third party, the United States Army Corps of Engineers (the "Corps").

17.

The Corps has recently conceded that the failure of the levee protection systems was caused by problems within its control. Following Hurricane Katrina, the Corps undertook a massive investigation of the reason for the levee failures. The investigation was coordinated by the Interagency Performance Evaluation Taskforce ("IPET").

18.

On June 1, 2006, IPET issued its Draft Final Report concerning the Performance Evaluation of the New Orleans and Southeast Louisiana Hurricane Protection System ("IPET Draft Final Report"). *See* Exhibit "B," Volume 1, IPET Draft Final Report. The IPET Draft Final Report concluded that the levee breaches resulted from foundation failures that the Corps failed to consider in the original design of the structures. Most importantly, the levee breaches occurred before water levels reached the top of the floodwalls. *Id.* at I-3, I-7. Overall, IPET summarized its analysis of the

-5-

hurricane protection system with the concession that the performance of the levee system was compromised by the "presence of incomplete protection, lower than authorized structures, and levee sections with erodible materials." *Id.* at I-3.

19.

Therefore, any water damage sustained by Mrs. Fischman's insured property did not result from a natural flood as contemplated by any exclusion under the State Farm Policy.  Rather, any water damage sustained by the insured property was caused by Hurricane Katrina and the actions of the Corps - both of which are covered perils under the State Farm  Policy, and which are not expressly excluded.

20.

Mrs. Fischman has already sustained damages in excess of her policy limits as a result of Hurricane Katrina, and this figure may increase over time.  State Farm is liable for Mrs. Fischman's damages in full, up to the limits of liability under the State Farm Policy.

21.

It has been nearly one year since Hurricane Katrina damaged the insured residence, and State Farm has not rendered payment for any of Mrs. Fischman's covered damages, except for those pursuant to Coverage C of her State Farm Policy, despite having received timely notice of loss and supporting documents from Mrs. Fischman.  Thus, State Farm has, in bad faith, failed to timely adjust Mrs. Fischman's losses in violation of Louisiana law and in breach of the State Farm Policy.

## COUNT I

## DECLARATORY JUDGMENT

22.

Mrs. Fischman repeats and alleges the allegations in paragraphs 1-21 above as though fully set forth herein.

23.

An actual controversy has arisen and now exists between Mrs. Fischman and State Farm regarding whether the damages to the insured property caused by Hurricane Katrina are excluded under the State Farm Policy.

24.

A declaratory judgment is necessary to show that any water damage sustained by Mrs. Fischman's insured property did not result from a natural flood as contemplated by the any exclusion under the State Farm Policy. Rather, any water damage sustained by the insured property was caused by Hurricane Katrina and the actions of the Corps - both of which are covered perils under the State Farm Policy, and which are not expressly excluded.

25.

As Mrs. Fischman's damages are covered by the State Farm Policy, State Farm is liable for Mrs. Fischman's damages in full, up to the stated limits of liability under the State Farm Policy.

26.

Mrs. Fischman requests that this Court issue a declaratory judgment against State Farm stating the following:

-7-

(1)     The damage to the insured property was not caused by flooding as defined in the State Farm Policy;

(2)     The damage to the insured property was caused by *Hurricane Katrina and/or the actions of the Corps of Engineers* such that all damages to the insured property are covered under the State Farm Policy; and

(3)     State Farm is liable for Mrs. Fischman's damages in full, up to the stated limits of liability under the State Farm Policy, as well as all damages due to its bad faith conduct. *See* La. Rev .Stat. 22:1220; La. Rev. Stat. 22:658; La. Civ. Code art. 1997.

## COUNT II

## PAYMENT OF INSURANCE PROCEEDS, ATTORNEYS' FEES, AND PENALTIES

### 27.

Mrs. Fischman repeats and alleges the allegations in paragraphs 1-26 above as though fully set forth herein.

### 28.

State Farm has failed to comply with its obligations under the State Farm Policy, and as such, is in breach of its contract of insurance, and liable for all amounts owed under the policy, including all resulting damages.

### 29.

State Farm's breach of its policy of insurance is in bad faith pursuant to Louisiana Civil Code article 1997. As State Farm is an obligor in bad faith, Mrs. Fischman is entitled to all damages, whether foreseeable or not, that are a direct result of State Farm's failure to perform, including attorneys' fees.

-8-

30.

Pursuant to Louisiana Revised Statute 22:658, Defendant was obligated to pay Plaintiff any amounts owed within 30 days of receipt of proof of loss. Defendant failed to do so. As a result of this failure, which was arbitrary, capricious, and without probable cause, Defendant is liable for all amounts due under the State Farm Policy, as well as for attorneys' fees and costs, and an appropriate percentage of the amount found to be owed as a statutory penalty pursuant to Louisiana Revised Statute 22:658 (in effect since the time of the storm and as amended by Act No. 813 of the Louisiana Regular Session 2006).

31.

Pursuant to Louisiana Revised Statute 22:658, Defendant was obligated to initiate adjustment of Plaintiff's loss within 30 days of notice of loss. Defendant failed to initiate adjustment of the loss within 30 days of notice of loss. Accordingly, pursuant to Louisiana Revised Statute 22:658, State Farm is liable for the statutory penalty of two times Plaintiff's damages, as provided by Louisiana Revised Statutes 22:1220.

32.

Pursuant to Louisiana Revised Statute 22:1220, Defendant owed Plaintiff a duty of good faith and fair dealing and had an affirmative duty to adjust Plaintiff's claims fairly and promptly. Because Defendant breached its duty, Defendant is liable to Plaintiff for all damages as a result of its breach.

33.

Pursuant to Louisiana Revised Statute 22:1220, Defendant breached its duty of good faith and fair dealing and its affirmative duty to adjust the claims fairly and promptly when it failed to pay Plaintiff within 60 days of receipt of satisfactory proof of loss. Such failure was arbitrary, capricious,

-9-

and without probable cause. As a result and pursuant to Louisiana Revised Statutes 22:1220, Defendant is liable for penalties in the amount of two times the damages sustained by Plaintiff.

34.

As a result of the actions of State Farm as set forth above, Mrs. Fischman has sustained substantial damages, including delay of repairs to the insured property, loss of use of funds expended to repair damages covered by the State Farm Policy, financial damage, attorneys' fees, and other damages to be proven at trial.

**WHEREFORE**, Mrs. Fischman respectfully prays that:

(1)     A declaratory judgment issue stating that the "water damage" exclusions do not apply to the damage to the insured property or Mrs. Fischman's Hurricane Katrina claim under the State Farm Policy;

(2)     A declaratory judgment issue stating that the damage to the insured property was caused by Hurricane Katrina and/or the actions of the Corps of Engineers such that all damages to the insured property are covered under the State Farm Policy;

(3)     A declaratory judgment issue stating that State Farm is liable for Mrs. Fischman's damages in full, up to the stated limits of liability under the State Farm Policy ;

(4)     State Farm be held liable for all amounts due under Policy No. 18-47-3615-7, including but not limited to, the cost to repair and/or replace all damaged property, together with all damages as a result of State Farm's breach, including attorneys' fees, and all statutory penalties, including any and all applicable multipliers, together with pre-judgment interest, and post-judgment interest; and

(5)    Any other equitable and  general relief the nature of this case will allow.

Respectfully submitted,


JAMES M. GARNER , #19589, T.A.
DEBRA J. FISCHMAN #5578
**SHER GARNER CAHILL RICHTER
    KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile:  (504) 299-2300
jgarner@shergarner.com
dfischman@shergarner.com

**ATTORNEYS FOR PLAINTIFF,
FAGEY LUPIN FISCHMAN**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **KENNETH JONES** | * | **CIVIL ACTION NO.: 06-9151** |
| **and** | * | |
| **LORI JAMES-JONES** | * | **SECTION    "F"** |
| **Plaintiffs** | * | |
| | * | **JUDGE MARTIN L.C.** |
| **versus** | * | **FELDMAN** |
| | * | |
| | * | |
| **STATE FARM FIRE & CASUALTY,** | * | |
| **INSURANCE, BOB NOWLIN and** | * | **MAGISTRATE JUDGE** |
| **ABC INSURANCE COMPANY** | * | **JOSEPH C. WILKINSON, JR.** |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### FIRST SUPPLEMENTAL AND AMENDED COMPLAINT

The First Supplemental and Amended Complaint of Kenneth Jones and Lori James-Jones, persons of the full age of majority domiciled in the Parish of Orleans, respectfully represent that this First Supplemental and Amended Complaint should replace in its entirety the original Complaint of plaintiffs:

The Complaint of Kenneth Jones and Lorie James-Jones, both persons of the age of majority and citizens of the Parish of Orleans, State of Louisiana, through undersigned counsel, on information and belief, with respect allege that:

1

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the amount in controversy is within the jurisdictional limits of this Court, and complete diversity exists between the parties. Alternatively, there is federal question jurisdiction herein because certain of the defendants were contractors of the Federal Government as to some of the matters complained of herein.

2.

Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the negligent and wrongful actions of the defendants occurred in the Eastern District of Louisiana, the plaintiffs resided in the Eastern District of Louisiana at the time of the complained of damages, the damages to plaintiffs occurred within the Eastern District of Louisiana and the applicable facts which form the basis of this lawsuit occurred in the Eastern District of Louisiana.

3.

This Court has supplemental jurisdiction over all claims that arise under state law and are not within this Court's original jurisdiction, as those claims are so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

## II.  PARTIES

4.

Made defendants herein are:

a.        **STATE FARM FIRE AND CASUALTY COMPANY, INC.,** a foreign insurance

2

company authorized to do and/or doing business in the Parish of Orleans, State of Louisiana and subject to the jurisdiction of this Honorable Court, ("State Farm") which at all times pertinent herein was the homeowner's insurer of Kenneth Jones and Lorie James-Jones for the property located at the municipal address of 4715 Werner Drive, New Orleans, Louisiana 70126;

b.  **BOB NOWLIN,** a licensed insurance agent, which at all times pertinent hereto provided insurance advice and sold policies of insurance and/or provided other insurance services in the Parish of Orleans, State of Louisiana, and who sold homeowners' and flood insurance policies to the plaintiffs.[1]

c.  **ABC INSURANCE COMPANY**, a foreign and/or domestic insurance company authorized to do and/or doing business in the Parish of Orleans, State of Louisiana and subject to the jurisdiction of this Honorable Court, which at all times pertinent herein was the errors and omissions insurer of State Farm and Bob Nowlin.

d.  **THE BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT (THE "LEVEE BOARD")**, is a political subdivision of the State of Louisiana, domiciled in the Parish of Orleans, State of Louisiana, which, was responsible for the development and maintenance of, and directly in charge of and responsible for the efficient operation and maintenance of all of the levee structures and facilities during flood periods and for continuous inspection and maintenance of the levees and flood walls during periods of low water.

e.  **THE UNITED STATES OF AMERICA**, a sovereign government that may be sued for civil liability in accordance with the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. and the Federal Civil Rights Act 28 U.S.C. § 1983.  The U.S. Army Corps of Engineers is a division of the United States government under the direct jurisdiction of the Department of the Army.

f.  **PITTMAN CONSTRUCTION COMPANY OF LOUISIANA, INC.** ("Pittman") is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana.

g.  **PITTMAN CONSTRUCTION COMPANY, INC.** is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana.

---

[1]Bob Nowlin was dismissed as a defendant after the case was removed to this Court.  In an abundance of caution, plaintiffs have listed Mr. Nowlin as a defendant but acknowledge that this Court has dismissed him from this case.

h.   **EUSTIS ENGINEERING CO., INC.** is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in Metairie, Louisiana.

I.   **MODJESKI AND MASTERS, INC.** is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Mechanicsburg, Pennsylvania.

j.   **GULF GROUP, INC. OF FLORIDA** is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida.

k.   **WASHINGTON GROUP INTERNATIONAL, INC.,** a non-Louisiana corporation, f/k/a Morrison Knudsen Corporation, f/k/a MK-Ferguson Company, f/k/a The H.K. Ferguson Company, authorized to do and doing business in the State of Louisiana, and in the Parish of Orleans, with its domicile in the State of Ohio, its principal place of business in the State of Idaho, and its Louisiana principal place of business in Baton Rouge, Louisiana.

l.   **VIRGINIA WRECKING COMPANY, INC.,** a non-Louisiana corporation authorized to do and doing business in the State of Louisiana, and in the Parish of Orleans, with its domicile in the State of Alabama, its principal place of business in the State of Alabama, and its Louisiana principal place of business in Jefferson, Louisiana.

m.   **BURK-KLEINPETER, INC.,** a Louisiana corporation with its domicile in the Parish of Orleans, and doing business within the Parish of Orleans, State of Louisiana;

n.   **BURK-KLEINPETER, LLC**, a Louisiana Limited Liability Company with its domicile in the Parish of Orleans, and doing business within the Parish of Orleans, State of Louisiana;

o.   **B&K CONSTRUCTION CO., INC.,** a Louisiana corporation, f/k/a B&K Construction Company, with its domicile in the Parish of St. Tammany, and doing business within the Parish of Orleans, State of Louisiana;

p.   **MILLER EXCAVATING SERVICES, INC.,** a Louisiana corporation with its domicile in the Parish of St. Charles, and doing business within the Parish of Orleans, State of Louisiana;

q.      **JAMES CONSTRUCTION GROUP, LLC,** a non-Louisiana limited liability company, f/k/a Infrate Construction, LLC, with its domicile in the State of Florida, its principal place of business in the State of Louisiana, and its Louisiana principal place of business in Baton Rouge, Louisiana;

r.      **BOH BROTHERS CONSTRUCTION CO., L.L.C.** is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana (defendants I through u are referred to hereinafter as "the contractors");

s.      **THE STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT ("DOTD")** is a political subdivision of the State of Louisiana, domiciled in the Parish of East Baton Rouge, State of Louisiana, which has maintenance and surveillance obligations in respect to the levees at issue in this litigation.

## III.  FACTUAL BACKGROUND

*Negligence and/or Breach of Contract of State Farm*

5.

On or about August 29, 2005, Hurricane Katrina, as predicted by weather forecasters, passed through the Parish of Orleans, and thereafter caused massive damage, including storm water, flood and wind damage to component parts and contents of plaintiffs' residence located at 4715 Werner Drive, New Orleans, Louisiana 70126, including but not limited to ancillary structures insured by the insuring agreement between plaintiffs and State Farm.  The building, ancillary building and contents were a total loss entitling plaintiffs to the full insurable amount shown on their policy for building and structures.

6.

At all times relevant hereto, plaintiffs owned the insured residence and resided there until they were forced to evacuate by mandatory evacuation orders issued by the Governor of the State

of Louisiana and the Mayor of New Orleans.

7.

At all times material hereto, plaintiffs had a homeowners' insurance contract in effect with State Farm.  The applicable insurance contract specifically provided coverage for the incident that occurred on and after August 29, 2005.  Plaintiffs purchased from Defendants a homeowner's policy, issued to plaintiffs, naming Kenneth Jones and Lorie James-Jones  as the insured.  The subject policy insured the residence at 4715 Werner Drive, New Orleans, Louisiana 70126 for approximately $87,100 for dwelling, $65,000 for contents, $8,700 in dwelling extension/other structures, and the actual cost incurred for loss of use.

8.

Kenneth Jones and Lorie James-Jones sought advice from and purchased policies of insurance from Bob Nowlin, a licensed  insurance agent authorized to do and doing business in the State of Louisiana and the Parish of Orleans.  The plaintiffs relied on Mr. Nowlin's insurance expertise to provide them with complete and competent advice regarding the amount and type of insurance to provide them with full coverage.

9.

Plaintiffs' residence, as a result of the above sudden and accidental event was severely damaged and/or destroyed.  The National Weather Service reported the landfall winds reached and/or exceeded 145 MPH at 6:00 a.m. on August 29, 2005.  Katrina passed just to the east of the City of New Orleans, the winds were at and/or in excess of 135 MPH at 8:00 a.m.  The eye of Katrina was 32 miles in diameter and Katrina's winds radiated 125-150 miles from the center.  The

strength and magnitude of Katrina's violent winds leave little doubt to consider that the high velocity wind force was the "efficient proximate cause" of the damage to plaintiffs' building and ancillary structures and total destruction/loss of plaintiffs' building and ancillary structures.  As a result of this damage, subsequent storms and/or weather further aggravated and/or contributed to the property loss.

10.

Plaintiffs' residence sustained massive damage as a result of a sudden and accidental event that proceeded or occurred as a result of an otherwise covered peril as defined in their policy of insurance.

11.

Following the storm, plaintiffs notified State Farm of their loss and filed their claim.

12.

Subsequently, State Farm sent adjusters and/or other authorized representatives to evaluate plaintiff's loss.

13.

In turn, State Farm and/or its authorized agent advised the plaintiffs that the value of their loss was significantly less then the true value of the damages and/or the necessary repairs to the residence, other structures and its contents.

14.

At all times material hereto, plaintiffs have fully cooperated with State Farm and provided access to the residence, as well as claim documentation to the best of their ability.

***General Facts Regarding Levee Breach***

15.

After the Hurricane passed through the New Orleans area, levees and levee and flood waters protecting the City failed.   Upon information and belief, although the flood waters did not exceed the height of the flood waters at the 17th Street Canal, Industrial Canal and London Avenue Canal, the levees failed to hold back the water, and flood waters poured into the City, resulting in substantial property damage and loss of life.

16.

The levees at the 17th Street Canal, Industrial Canal and London Avenue Canal were constructed pursuant to the design specifications of the United States of America, Department of the Army, Corps of Engineers, as earthen levees and flood walls, built with steel sheet pilings driven into the ground.  The steel sheet pilings were topped with a concrete cap.

17.

Upon information and belief, before the levees and flood walls were constructed, soil borings were taken to assess the strength of the soil and its ability to withstand the force of flood waters pushing against it and still remain in place.

18.

Upon information and belief, before construction of the levees, studied were conducted to ensure that the levees would provide protection sufficient to withstand the effects of a category 3 hurricane.

8

***Facts Regarding 17th Street Canal***

19.

Upon information and belief, a soil stud was performed in 1981 by Defendant, Eustis Engineering, which took soil borings along the location of the 17th Street Canal Levee.

20.

The soil borings revealed alternating layers of soft clay and soft, black humus or peat, a soft, spongy soil compromised of decaying trees and other organic material, from fifteen to twenty-one feet below sea level.

21.

The layer of humus or peat substantially reduced the strength of the soil, particularity its strength in resisting lateral pressure and its ability to support the 17th Street Canal Levee when it was under pressure from flood water.

22.

Despite the presence of a later of soft, spongy material at a depth of fifteen (15) to twenty-one (21) feet below sea level, the flood walls of the 17th Street Canal Levee were constructed with steel sheet piling driven to a depth that was seventeen (17) feet below sea level.  At such depths, the protective sheet pilings ended above or right in the middle of layers of weak soil.

23.

Additionally, the soil adjacent to the 17th Street Canal Levee subsided significantly after construction of the levee and flood wall, thereby significantly reducing the amount of support that the land behind the levee provided against the pressure of flood waters.

9

24.

Upon information and belief, the soil studies performed in connection with construction of the 17th Street Canal Levee were not conducted with a reasonable degree of care and diligence and failed to account for the possible weakening of the soil in connection with the effect of subsidence of land on the protected side of the levee, soft soils at the base of the levee, and the soil that was weakened as flood waters pushed through subterranean levels under the levee and flood wall. Alternatively, the soil studies failed to warn against the dangers that should, in the exercise of reasonable care, have been anticipated in connection when the pressure of flood water was applied to soil beneath the 17th Street Canal Levee.

25.

New Orleans design firm, Modjeski and Masters, was hired to design the 17th Street Canal Levee.

26.

Upon information and belief, Modjeski and Masters failed to exercise that degree of professional care and diligence that should reasonably have been expected of a firm designing a levee for the protection of human life and billions of dollars in property, and the design work performed by Modjeski and Masters for the 17th Street Canal Levee failed to account for the possible weakening of the soil in connection with the effect of subsidence of the land on the protected side of the levee, soft soils at the base of the levee, and the soil weakened as flood waters pushed through subterranean levels under the levee and flood wall.

27.

Upon information and belief, Pittman and James Construction, acting individually and through Gulf Group, constructed and otherwise conducted extensive work on the 17th Street Canal Levee, including construction of the levee, dredging, pile driving, demolition and other work.

28.

Upon information and belief, Pittman, James Construction and Gulf Group were negligent in the manner in which they constructed the 17th Street Canal Levee, in that they failed to exercise reasonable care in accounting for the damages associated with soil conditions in the area of the levee and ensuring that the construction was adequate to withstand the lateral pressure applied by flood waters such as those associated with storms such as Hurricane Katrina.

29.

Upon information and belief, soil data was necessary for planning and executing a construction job of this nature.  Although its contract with the Corps of Engineers advised prospective bidders that physical data was available upon request, Pittman never asked for that data prior to bid, and was thus unable to have considered it in formulating its construction approach or bid.  Pittman was negligent in proceeding with the work without such information.

30.

Upon information and belief, Defendant Boh Bros. installed sheet piling and later dredged the 17th Street Canal and thereby exposed layers of unstable peat and soft clays to increased pressures from flood waters, without conducting adequate investigation into the consequences of such dredging and in a manner that was otherwise negligent.

11

*Facts Regarding London Avenue Canal*

31.

Upon information and belief, Defendant Miller Excavating Services, Inc. constructed the Leon C. Simon Boulevard Bridge over the London Avenue Canal, and it is believed that the negligence in the construction of the bridge and the use of heavy vehicles and equipment in construction of the bridge caused or contributed the above mentioned breach in the levee and/or flood wall.

32.

Upon information and belief, Defendants Burk-Kleinpeter, Inc. and Burk-Kleinpeter, L.L.C. performed engineering work used in construction of the London Avenue Canal levee/flood wall. Plaintiffs aver that the levees and flood walls were negligently designed and that the faulty design caused and/or contributed to the above-described failure of the levee and flood wall.

33.

Upon information and belief, B&K Construction Company, Inc. was the contractor that constructed the London Avenue levee and flood wall, said construction including but not limited to, the construction and placement of the sheet pilings and the construction and placement of the concrete flood wall slab atop the sheet pilings and the concrete slab sections caused or contributed to the above-described failure of the levee and flood wall. It is further believed that the use of heavy vehicles and construction equipment in construction and placement sheet piling and of the concrete slabs damaged the levee and caused or contributed to the above-mentioned breach in the levee and flood wall.

12

34.

Upon information and belief, Defendant C.R. Pittman Construction Company, Inc. constructed the Gentilly Boulevard Bridge over the London Avenue Canal.  It is believed that negligence in the construction of the bridge and the use of heavy vehicles and construction equipment in construction of the bridge caused to the above-mentioned failure of the levee and flood wall.

35.

Upon information and belief, Defendant Miller Excavating Services, Inc. contracted to construct the Leon C. Simon Boulevard bridge over the London Avenue Canal.  It is believed that negligence in the construction of the bridge and the use of heavy vehicles and/or contributed the above-mentioned failure of the levee and flood wall.

36.

Upon information and belief, Defendant James Construction Group, L.L.C. contracted to flood-proof the Filmore Avenue bridge and the Mirabeau Bridge over the London Avenue Canal. Flood-proofing of the bridges required that the original bridges be demolished and replaced with new brides that have steep concrete sides which continue the flood wall from one side of the canal to the other.  It is believed that negligence in the demolition of the old bridges and construction of the new bridge and the use of heavy vehicles and/or other heavy construction equipment in the demolition of the old bridges and construction of the new bridges caused and/or contributed the above-mentioned failure of the levee and/or flood wall.

13

*Facts Regarding Industrial Canal*

37.

On or about September 11, 2004 a New Orleans Public Belt Railroad train derailment caused a thirty-two and a half foot wide (32.5' wide) gap in Floodgate W-30 which is part of the flood wall system situated immediately west of, and running in a north-south direction parallel to, the Industrial Canal just north of the Interstate 10 high-rise.

38.

As a direct and proximate result of the Orleans Levee District's negligence, plaintiffs sustained damages that included but are not limited to, destruction and contamination of property, mental anguish, emotional distress, inconvenience, loss of use of property, loss of property value, loss of income, loss of profits, loss of business opportunity, and fear of future injury.

39.

Upon information and belief, Defendant Washington Group International, Inc. contracted to level and clear abandoned industrial sites along the Industrial Canal between the flood wall and the canal. It is believed that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal between the flood wall and the canal damages the levee and flood wall and caused or contributed the above mentioned failure of the levee and flood wall.

40.

Upon information and belief, Defendant Virginia Wrecking Company, Inc. contracted for the demolition, removal and disposal of the Galvez Street Wharf, a warehouse and an adjacent storeroom and for the removal of the debris by barge along the Industrial Canal. It is believed that

14

the use of heavy vehicles and/or flood wall and caused and/or contributed to the above-mentioned breach in the levee and/or in the flood wall.

41.

Upon information and belief, Defendant Boh Bros. Construction Co., L.L.C. contracted to install casings, test piles, and reaction piles along the Industrial Canal between December of 1999 and May of 2000.  It is believed that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal damaged the levee and/or flood wall and caused and/or contributed to the above-mentioned breach in the levee and/or flood wall.

## IV.  CAUSES OF ACTION

## FIRST CAUSE OF ACTION: VALUED POLICY LAW

42.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 41, as if delineated here in extenso.

43

Plaintiffs also allege that Hurricane Katrina destroyed plaintiffs' insured property, and that coverage extended by the terms in the  contract of insurance issued to plaintiffs by virtue of La. R. S. 22:695 and policy language contained within the State Farm contract of insurance, which entitles plaintiffs to the total face amount of the policy of insurance.

44.

Plaintiffs' home sustained loss or damage from hurricane related winds, which is a covered peril under the State Farm's  insurance policy, and the efficient proximate cause of their loss.

15

45.

As a result of Hurricane Katrina, and/or subsequent storms or weather, plaintiffs sustained substantial damage to their residence and its contents rendering it a total loss and/or constructive total loss.

46.

Prior to the placement of coverage, defendant, State Farm, placed a valuation upon the covered property and used such valuation for purposes of determining the premium charge to be made under the policy.

47.

Defendants, State Farm, did not use a different method in the computation of loss of the insured property.

48.

The homeowner's policy, which covers the peril of fire, and the application of it, if any, issued by defendants to plaintiffs did not set forth in type of equal size a different method of loss computation by the insurer.

49.

Plaintiffs are entitled to recover the stated value of the homeowner's policy, without deduction or offset, pursuant to La. Rev. Stat. 22:695.

**SECOND CAUSE OF ACTION: BREACH OF CONTRACT**

50.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through

16

49, as if delineated here in extenso.

51.

State Farm breached its contract of insurance with plaintiff by:

A.    Failing to promptly and reasonably adjust the claim;

B.    Failing to properly train and/or instruct its adjusters and/or agents;

C.    Failing to provide uniform and/or standard guidelines and/or materials to adjusters and/or agents to properly evaluate claims;

D.    Failing to take into account increases in the cost of labor, material and/or replacement cost and adjusting claims for these increased costs;

E.    Failing to timely provide sufficient funds for the repairs and replacement of the subject property;

F.    Failing to pay for sufficient living expenses incurred by plaintiff after they evacuated their insured residence in the time frame of the relevant insurance contract;

G.    Failing to promptly adjust and properly pay the policy limits for the plaintiffs' total loss of buildings;

H.    Failing to provide sufficient funds for the repair or replacement of the contents contained in the subject property, as per policy provisions; and

I.    Any other acts or omissions to be shown at trial on the merits.

**THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION**

52.

Plaintiffs  reallege and reaver each and every allegation contained in Paragraphs 1 through

17

51, as if delineated here in extenso.

53.

State Farm further breached its contract with plaintiff and/or acted negligently by the following actions:

A. Failing to respond to verbal requests and correspondence in a timely manner;

B. Failing to properly and timely adjust this case consistent with insurance industry standards;

C. Failing to provide any reasonable basis for denying payment on this claim now months following the incident;

D. Failing to meet its duty owed to plaintiff to engage in good faith and fair dealings; and

E. Any other actions or omissions that will establish bad faith, breach of contract and/or negligence which will be proven at the trial on the merits.

**FOURTH CAUSE OF ACTION: BAD FAITH**

54.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 53, as if delineated here in extenso.

55.

Pursuant to La. R. S. 22:1220; La. R.S. 22:658 and La. C.C. Art. 1997, State Farm further breached its duty of good faith and fair dealing, as well as its affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with plaintiffs by:

18

A.   Failing to issue a property insurance contract to plaintiffs that contained exclusionary language that is narrowly drafted;

B.   Failing to issue a property insurance contract to plaintiffs that contained exclusionary language that was defined within the agreement;

C.   Failing to issue a property insurance contract to plaintiffs that is not designed to be used to deny coverage for the cost of repairs and restoration of plaintiffs' property as a result of the damages arising from an occurrence or covered peril as defined in the policy;

D.   Failing to issue a policy of insurance that will provide for the repair of any covered damage resulting from a covered accident and direct physical loss which resulted from the high velocity hurricane winds that damaged plaintiffs' property and destroyed its contents;

E.   Failing to provide a property insurance contract that is unambiguous;

F.   Failing to pay plaintiffs sufficient additional living expenses;

G.   Failing to sufficiently pay plaintiffs for contents damages;

H.   Failing to pay a settlement within thirty (30) days after the agreement is reduced to writing;

I.   Failing to pay the full amount of any claim due the plaintiffs within sixty (60) days after receipt of satisfactory proof of loss;

J.   Failing to promptly adjust the claim within thirty (30) days of being notified by petitioners.

19

K.      Failing to reasonably and promptly adjust the amounts of the claim to reflect increases in the costs of repairs and/or replacement;

L.      The defendants failure and/or omissions constitute bad faith in that they were arbitrary and capricious, all of which entitles plaintiffs to recover attorney's fees, costs and penalties as allowed by law; and

M.     Any other acts or omissions to be shown at trial on the merits.

56.

Defendant's, State Farm, failures were willful and/or intentional and/or arbitrary and capricious so that the plaintiffs are entitled to an award of penalties, attorney's fees and costs.

**FIFTH CAUSE OF ACTION: DECLARATORY JUDGMENT**

57.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 56, as if delineated here in extenso.

58.

Plaintiffs seek a declaratory judgment pursuant to the Louisiana Code of Civil Procedure Article 1871, et seq., for the purposes of determining a question of actual controversy between the parties concerning their rights, obligations, and coverages under the subject policy.

59.

Plaintiffs further seek a declaration that the Louisiana Valued Policy Law, La. R.S. 22:265, applies to the policy at issue herein.

20

60.

Plaintiffs seek a declaration that the homeowner's policy provides full insurance coverage for all damage to the insured residence, property, and loss of use caused by Hurricane Katrina and/or Hurricane Rita.

## SIXTH CAUSE OF ACTION: SPECIFIC PERFORMANCE

61.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 60, as if delineated here in extenso.

62.

State Farm entered into the subject contract of insurance with the plaintiffs wherein it clearly and expressly agreed to provide insurance coverage for physical loss to property, contents and loss of use proximately and efficiently caused by a hurricane.  Plaintiff in turn paid State Farm a substantial premium and plaintiffs agreed to a "hurricane deductible" in consideration for the agreed upon hurricane coverage.

63.

Plaintiffs have now suffered total destruction of their insured residence and property as a proximate and direct result of Hurricane Katrina and/or subsequent storms or weather and have consequently been denied use of their residence as well.

64.

Plaintiffs have performed their end of the bargain and are accordingly now entitled to specific performance of the homeowner's insurance contract.  The Court should therefore require

21

State Farm  to specifically perform such agreement.

## SEVENTH CAUSE OF ACTION: UNJUST ENRICHMENT

65.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 64, as if delineated here in extenso.

66.

Despite realizing substantial premium from plaintiffs, State Farm has withheld the insurance proceeds owed to plaintiffs for the hurricane damage to their insured property.

67.

In addition, by classifying Hurricane Katrina and/or subsequent storms or weather and the damage to plaintiffs' residence and property as "flood", State Farm has wrongfully realized insurance premiums and withheld insurance proceeds for which plaintiffs are entitled.

68.

State Farm has therefore been unjustly enriched at plaintiffs' expense.

## EIGHTH CAUSE OF ACTION:  NEGLIGENCE OF THE LEVEE BOARD, THE STATE OF LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, THE UNITED STATES OF AMERICA CORPS OF ENGINEERS, AND THE CONTRACTORS

69.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 68, as if delineated here *in extenso*.

70.

The negligence of the Levee Board caused or contributed to the levee failures, in that the

levee board failed to fulfill its obligations to inspect, maintain, monitor, protect and repair the levees and flood walls along the 17th Street Canal, Industrial Canal and London Avenue Canal, all of which were within the jurisdiction and control of the Levee Board.  The Contractors, who were hired to work on the canal projects and/or supervise the canal projects and/or maintain the canals and/or monitor and report on the condition of the canals, were also negligent in the execution of their duties.

_____71.

With respect to flood walls, Defendant Levee Board was specifically required to conduct periodic inspections and ensure the following:

A.      No seepage, saturated areas, or sand boils were occurring;

B.      No undue settlement had occurred which affects the stability of the wall or its water tightness;

C.      No trees existed, the roots of which might extend under the wall and offer accelerated seepage paths;

D.      The concrete had not undergone cracking, chipping, or breaking to an extent which might affect the stability of the wall or its water tightness;

E.      There were no encroachments upon the right-of-way which might endanger the structure or hinder its functioning in time of flood;

F.      No bank caving conditions existed riverward of the wall which might endanger its stability;

G.      Toe drainage systems and pressure relief wells were in good working condition, and

that such facilities were not becoming clogged.

72.

The periodic inspections by Defendant Levee Board were specifically required to be made immediately prior to the beginning of the flood season, immediately following each major high water period, and otherwise at intervals not exceeding 90 days.

73.

In furtherance of the periodic inspections, Defendant Levee Board was required to undertake immediately measures to eliminate encroachments and effect repairs found necessary by such inspections, and all repairs were required to be accomplished by methods acceptable in standard engineering practice. Moreover, immediate steps were to be undertaken to correct any condition which endangered the stability of the wall.

74.

Defendant Levee Board was required to maintain continuous patrol of the wall during flood periods to locate possible leakage at monolith joints or seepage underneath the wall.

75.

The periodic inspections by Defendant Levee Board were specifically required to prohibit boats from lying against or tying up to the wall.

76.

With respect to levees, Defendant Levee Board was specifically required to provide at all times such maintenance as may be required to maintain serviceability of the structures in time of flood.

24

77.

With respect to levees, Defendant Levee Board also was specifically required to conduct periodic inspections and to be certain that:

A.    No unusual settlement, sloughing, or material loss of grade of levee cross section had taken place;

B.    No caving had occurred on either the land side or the river side of the levee which might affect the stability of the levee section;

C.    No seepage, saturated areas, or sand boils were occurring;

D.    Toe drainage systems and pressure relief wells were in good working condition, and that such facilities were not becoming clogged;

E.    Drains through the levees and gates on said drains were in good working condition;

F.    No revetment work or riprap had been displaced, washed out, or removed;

G.    No action was being taken, such as burning grass and weeds during inappropriate seasons, which were retarded or destroyed the growth of sod; and

H.    Encroachments were not being made on the levee right-of-way which might endanger the structure.

78.

Immediate steps were taken to control any condition which endangers the levee, and the Levee Board was specifically required to repair any damage.

79.

The Levee Board was required to take measures to promote the growth of sod on the levees, to exterminate burrowing animals, and to provide for routine mowing of the grass and weeds, removal of wild growth and drift deposits, and to repair all damage caused by erosion or other forces.

80.

During flood periods, the Levee Board was required to patrol the levee continuously to locate possible sand boils or unusual wetness of the landward slope and to be certain that:

A.      There were no indications of slides or sloughs developing;

B.      Wave wash or scouring action was not occurring;

C.      No low reaches of leave existed which may be overtopped;

D.      No other conditions existed which might endanger the structure.

81.

The Levee Board was also required to take appropriate advance measures to ensure the availability of adequate labor and materials to meet all contingencies.

82.

The Levee Board failed to fulfill almost every one of the foregoing obligations, and the other defendants failed to exercise reasonable care in inspecting the levees and flood walls and in warning about the hazards complained of herein.

83.

The State of Louisiana, Department of Transportation and Development has maintenance and surveillance obligations in respect of the levees at issue in this litigation, which obligations were negligently and intentionally breached by this Defendant through its misfeasance and malfeasance in respect of the discharge of those duties.  The breach of those duties was a proximate cause of the levee failures and resultant damages at issue in this litigation.

84.

Defendants' negligent conduct was a substantial cause of one of the worst disasters in United States history.  Homes, cars, and other property inundated with flood waters and many were destroyed.  The lives of many New Orleans residents were changed forever.

85.

Shortly after Hurricane Katrina passed through the New Orleans area, several hundred feet of the 17th Street Canal Levee breached just south of the point at which the Old Hammond Highway bridge crosses the 17th Street Canal.  Breaches and flooding also occurred along stretches of the Industrial Canal and the London Avenue Canal.  It is believed that the levee failures were the direct and proximate result of negligence in the design, construction, inspection, maintenance and monitoring of the levees and flood walls.  Resulting flood waters inundated the City of New Orleans, overtaking capacity of pumps and rains and causing a large portion of the City to remain flooded for weeks.

86.

Upon information and belief, the Defendant Contractors and the political subdivisions meant to oversee their work knew or should have known that their conduct would necessarily cause severe and irreparable damage to the plaintiffs and their property.

87.

Congress authorized hurricane protection for the areas along Lake Pontchartrain, including Orleans and Jefferson Parishes, as part of the Flood Control Act of 1965.  The project authorized and directed the Corps of Engineers to design and construct hurricane protection sufficient to protect

those parishes from flooding resulting from a fast-moving category 3 hurricane. Upon information and belief, soil studies and reports from independent consultants, and analysis by engineers employed by the Corps of Engineers showed that sheet piles more than thirty feet deep were required to support the concrete flood walls and withstand pressure resulting from such flooding. However, the Corps of Engineers disregarded those studies and reports and approved and implemented designs for flood walls having the depth of only 17 feet, which was inadequate to protect the area from flooding associated with a fast-moving category 3 hurricane.

88.

The Corps informed plaintiffs and other residents of Orleans and Jefferson Parishes that the levees were sufficient to protect against such flooding, with reckless disregard for the truth and/or with the knowledge that, as constructed, the levees and flood walls were inadequate. In doing so, the Corps deprived the plaintiffs of the protections authorized to which plaintiffs were entitled by law and wilfully disregarded an obvious threat of substantial harm to plaintiffs and their property. The Corps of Engineers thereby created a danger that plaintiffs would expose themselves and their property to harm, including the lack of adequate insurance.

89.

The United States of America, the State of Louisiana Department of Transportation and Development, the Levee Board, and the Contractors are liable for all damages sustained by plaintiffs as a result of the foregoing.

90.

The plaintiffs are entitled to and pray for trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs are entitled to full insurance coverage under the State Farm homeowner's policy of insurance for the damage to the insured residence and property caused by Hurricane Katrina and/or Hurricane Rita and other such, equitable relief set for in the petition, including, but not limited to:

A.   A Declaration and/or Judgment by this Court that the subject policy provides full insurance coverage for the damages caused by Hurricane Katrina and/or Hurricane Rita to plaintiffs' insured residence as well as loss of use and additional living expenses;

B.   A Declaration and/or Judgment by this Court that any damage to plaintiffs' insured residence and property caused by "storm surge" is not excluded under th subject policy;

C.   A Declaration and/or Judgment by this Court that the subject policy's "flood" exclusion is not applicable and ambiguous;

D.   A Declaration and/or Judgment by this Court that the State Farm policy is subject to the Louisiana Valued Policy Law, La. Rev. Stat. 22:695; that plaintiffs' residence is a total loss; and that the covered structure sustained a covered loss or damage;

E.   Specific Performance of the subject State Farm policy;

F.   Attorney's fees and court costs against defendants, State Farm Fire and Casualty Insurance Company and ABC Insurance Company, in accordance with La. Rev. Stat. 22:657 and 22:658;

G.   Damages and penalties against defendants, State Farm Fire and Casualty Insurance Company and ABC Insurance, in accordance with La. Rev. Stat. 22:1220, including damages for bad faith and arbitrary and capricious actions included hereinabove;

H.   Damages and penalties against defendants, Levee Board, the State of Louisiana Department of Transportation and Development, the United States of America, Corps of Engineers, and the contractors for water damage to plaintiffs' home resulting from levee breaches;

I.   Court costs, expenses, and judicial interest; and

J.   Any and all other equitable relief deemed appropriate by this Court.

**WHEREFORE,** petitioners pray that defendants be duly served and cited to appear and answer this Complaint, all as provided by law; and that after all legal delays and due proceedings be had, there be judgment rendered against defendants and in favor of the plaintiffs jointly, severally and *in solido,* for reasonable damages, with legal interest from the date of judicial demand until paid, all costs of these proceedings, including attorneys' fees, legal costs and related litigation expenses, along with such other relief as law, equity and the nature of this case shall require.

BY:   /s/ David A. Binegar
      Paul C. Miniclier, (Bar # 17062)
      David A. Binegar (Bar # 26603)
      Law Office of Paul C. Miniclier
      1305 Dublin Street
      New Orleans, Louisiana 70118
      Telephone:   (504) 864-1276
      Attorneys for Plaintiffs, Kenneth and Lori James-Jones

**CERTIFICATE OF SERVICE**

      The undersigned certifies that an electronic copy of the foregoing was served on all parties electronically through the electronic filing system of the United States District Court for the Eastern District of Louisiana this 21st day of August, 2007.

                      /s/David A. Binegar

50158/001/pldgs/first supp and amended complaint

31

State Farm Ins.          10/2/2006 9:18 AM  PAGE   2/010   Fax Server

10/02/2006 08.58 FAX  5048838812        SF RIVERSIDE SHU        → CIOS        ☒ 001/009

# STATE OF LOUISIANA
## SECRETARY OF STATE

HELEN COMBO                                    LEGAL SERVICES SECTION
ADMINISTRATOR                              P.O. BOX 94125, BATON ROUGE, LA 70804-9125
COMMERCIAL DIVISION              9/28/06              (225) 922-0415

STATE FARM FIRE & CASUALTY COMPANY
STATE FARM INSURANCE COMPANIES
DAVID A. ROSS - CLAIMS MANAGER
2077 O'NEAL LANE
BATON ROUGE, LA  70816

SUIT NO: 20069720
CIVIL DISTRICT COURT
PARISH OF ORLEANS

JASON HAMMER, ET AL
vs
STATE FARM FIRE & CASUALTY COMPANY

UNIT:

OFFICE:

REP: Tonya

CLAIM: 18R174 851

STATE FARM INSURANCE COMPANY

Dear Sir/Madam:

I am enclosing citation served in regard to the above entitled proceeding.
Please call the attorney that filed this document if you have any questions
regarding this proceeding.  If you received this document in error, please
return it to the above address with a letter of explanation.

22:1220

Yours very truly,

AL ATER
Secretary of State

Served on: HELEN COMBO              Date:  9/27/06 at  3:00 PM
Served by: J. BROWN                Title: DEPUTY SHERIFF

| Received | Number | Date | Paid By | Amount |
|---|---|---|---|---|
| CHECK/M.O. | 81951 | 9/19/06 | CIVIL SHERIFF | 25.00 |
| KM | | $700.00 | | |

# NO. 628008

 RECEIVED BY
SEP 2 8 2006
WEDGEWOOD CSO

EXHIBIT
A

Blumberg No. 5119

OCT-05-2006 THU 08:31 AM 309 766 8285

10/05/2006 09:34 FAX 309 766 8285          CONF. LAW DC

State Farm Ins.          10/2/2006 9:18 AM  PAGE   3/010   Fax Server

10/02/2006 08.59 FAX 5048938812          SF RIVERSIDE SHU          • CIOS          @ 002/005

ATTORNEY'S NAME:  Ketner, Kevin  21306
AND ADDRESS:      2640 Barracks St.
                  New Orleans   LA  70119-0418

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO:   2006 - 08726        1                          SECTION: 15   -B

HAMMER, JASON, ETAL versus STATE FARM FIRE AND CASUALTY COMPANY

C I T A T I O N

TO:   STATE FARM FIRE AND CASUALTY COMPANY
THROUGH:
      BY AND THROUGH ITS AGENT FOR SERVICE OF PROCESS
      THE LOUISIANA SECRETARY OF STATE
      BATON ROUGE          LA  70809

YOU HAVE BEEN SUED:

You must either comply with the demand contained in the petition
FOR DAMAGES AND DECLARATORY JUDGMENT AND CASE MANA
a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of
this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default.

*************************************************************
ADDITIONAL INFORMATION
      Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer
Referral Service at 561- 8828. This Referral Service operates in conjunction with the New Orleans Bar Association.
If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp.; you
may call 529 - 1000 for more information.
COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE.
*************************************************************

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA          September 8, 2006

Clerk's Office, Room 402, Civil Courts Building,          DALE N. ATKINS, Clerk of
421 Loyola Avenue                                        The Civil District Court
New Orleans, LA                                          for the Parish of Orleans
                                                        State of LA

                                                        by
                                                        Deputy Clerk

SHERIFF'S RETURN
(for use of process servers only)

PERSONAL SERVICE                          DOMICILIARY SERVICE

On the ____ day of ____              On this ____ day of ____
served a copy of the writ petition       served a copy of the writ petition
FOR DAMAGES AND DECLARATORY JUDGMENT AND CASE     FOR DAMAGES AND DECLARATORY JUDGMENT AND CASE
MANA                                     MANA
On STATE FARM FIRE AND CASUALTY COMPANY   On STATE FARM FIRE AND CASUALTY COMPANY

_____ in person through              _____ through

_____                               by leaving same at the dwellinghouse,
                                        or usual place of abode,
Returned same day                       In the hands of ____
                  No. ____              a person of suitable age and discretion residing therein as
                                        a member of the domiciliary establishment, whose name
Deputy Sheriff of ____                  and other facts connected with this service I learned by
                                        interrogating  HIM / HER the said
Mileage: $ ____                         STATE FARM FIRE AND CASUALTY COMPANY

                                        being absent from the domicile at time of said service.
                                        Returned same day
        / ENTERED /                                     No. ____
  PAPER          RETURN
                                        Deputy Sheriff of ____
SERIAL NO.   DEPUTY   PARISH

                              RECEIVED BY
                              SEP 28 2006
                              WEDGEWOOD CSO

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

**FILED**

HURRICANE LITIGATION

2006 AUG 28 P 4: 56

NO. 2006-9720

CIVIL
DISTRICT COURT
DIVISION B

Jason Hammer

VERSUS

State Farm Fire & Casualty Company

ORDER

THIS MATTER will come before the Court for case management conference

on the _2nd_ day of __November__, 2006,

at _1:40_ o'clock _p_ .m., before Division _B_ .

NEW ORLEANS, LOUISIANA, this _28th_ day of

_August_, 20 06.

_____
JUDGE

PLEASE SERVE WITH PETITION:

SEP 0 1 2006

ENTERED ON MINUTES

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

FILED

NO: 2006-9720          DIVISION "4 - 15          2006 APR 28 P 4 56

CIVIL
DISTRICT COURT

JASON HAMMER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED

VERSUS

STATE FARM FIRE AND CASUALTY COMPANY

FILED:_____

DEPUTY CLERK

CLASS ACTION PETITION FOR DAMAGES AND DECLARATORY JUDGMENT

NOW INTO COURT, comes Petitioner Jason Hammer, a person of the age of majority and a citizen of and domiciled in the Parish of Orleans, State of Louisiana, on behalf of himself and all others similarly situated and for their Petition for Declaratory Judgment with respect state:

I.

Venue is proper in this Court pursuant to LSA-C.C.P. art. 42.

FACTUAL BACKGROUND

II.

On Monday, August 29, 2005, Hurricane Katrina made its second landfall in Louisiana as a Category 4 hurricane with winds of 145 mph. The winds of the hurricane breached three levees on Lake Pontchartrain, allowing water to flow into the city of New Orleans. After, and only because, the levees breached, did water enter the city; it did not flow over the levees themselves. The water flowing through the levees subsequently damaged the personal property of residents who owned renter's insurance policies purchased from State Farm Fire and Casualty.

III.

The plaintiff in this action, Jason Hammer, is a second-year student at Tulane University Law School. He was a visiting student at the Northwestern University School of Law for the Fall 2005 semester pending the resumption of classes at Tulane. Prior to August 29, 2005, he lived in a first floor apartment at 3132 State Street Drive, across the street from the Tulane campus.

10/05/2006 08:34 FAX 309 766 8285                    COMP. LINE SER

State Farm Ins.        10/2/2006 9:18 AM    PAGE    7/010    Fax Server

10/02/2006 08.55 FAX  5049838812            SF RIVERSIDE SHU        + CIOS            @005/003

**IV.**

Jason Hammer purchased a renter's policy from State Farm Fire and Casualty with a term of twelve months, effective from February 10, 2005 through February 10, 2006, a copy of which is attached to this Complaint as Exhibit A. His policy and all class members' policies were valid when Hurricane Katrina made landfall, August 29, 2005.

**V.**

Jason Hammer suffered damage and loss of nearly all personal property located in his apartment as a result of water flowing from Lake Pontchartrain after Hurricane Katrina damaged the system of dams and levees protecting the city. He further sustained monetary losses when he evacuated his residence.

**VI.**

Jason Hammer applied to State Farm for coverage under the terms of the policy. State Farm denied coverage in a letter, dated September 23, 2005, citing exclusionary provision Section 1-1.c. of the policy: "Water damage, meaning: (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not". The policy contains an exclusion for hurricane water. The letter also states that the damaging water was rainwater which is likewise not excluded by the policy. Although plaintiff lost virtually all property located in his apartment, State Farm offered only to pay $535 for food spoiled as a result of the electrical service interruption following the storm.

**VII.**

Merriam-Webster's Dictionary defines flood as "a rising and overflowing of a body of water especially onto normally dry land." In the instant case, the damaging water did not rise and flow over the levees, but rather flowed through breaches caused by the hurricane winds.

**VIII.**

Made defendant herein is: STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurer domiciled in the State of Illinois and doing business in the State of Louisiana with a market share of approximately X% of Louisiana renter's insurance policies.

**IX.**

As a result of this denial of their claim, Plaintiffs reserve the right to retain their own experts to examine the damage to their property caused by Hurricane Katrina.

To date, Defendant, STATE FARM FIRE AND CASUALTY COMPANY has failed to make any payments on Plaintiffs claim under the renter's policy.

2

State. Farm Ins.      10/2/2006 9:18 AM   PAGE    8/010    Fax Server

10/02/2006 08.59 FAX  5048838812        SF RIVERSIDE THU       - CIOS            @ 008/008

## X.

Plaintiffs have complied with all of their duties and responsibilities as set forth by the policy.

## XI.

Defendant, STATE FARM FIRE AND CASUALTY COMPANY, is also liable for the full value of Plaintiffs' movable property under the policy pursuant to Louisiana's Valued Policy Clause, La.R.S.22:695, as Plaintiffs' property was a total loss caused by a covered peril.

## XII.

Louisiana R.S.22:658 requires insurers, among other things, to pay the amount of any claim due its insured within thirty (30) days after receipt of satisfactory proof of loss, initiate loss adjustment within thirty (30) days of notification of loss by claimant, and make a written offer to settle within thirty (30) days of satisfactory proof of loss.

## XIII.

Plaintiffs provided Defendants with satisfactory proof of loss over ninety (90) days prior to the filing of this petition, and Defendants have inspected Plaintiffs' property.

## XIV.

Defendants have failed to pay Plaintiffs the sums due them under the policy for repair and/or replacement of their damaged property, its contents and additional living expenses incurred, and Defendants have failed to timely and properly initiate loss adjustment to Plaintiffs' property.

## XV.

Defendants' failure to pay and/or timely initiate loss adjustment is arbitrary, capricious and without probable cause and is in bad faith, making Defendants liable to Plaintiffs for damages, penalties and attorney fees under applicable law, including but not limited to La.R.S.22:658, et seq.

## XVI.

Louisiana R.S.22:1220 provides that an insurer owes a duty of good faith and fair dealing to its insured, and it provides that insurers have an affirmative duty to adjust claims fairly and promptly and to make reasonable efforts to settle claims.

3

## XVII.

Defendant, STATE FARM FIRE AND CASUALTY COMPANY has violated its duties under La.R.S. 22:1220 as alleged herein and is therefore liable for damages, penalties and attorney fees under applicable law, including but not limited to La. R.S. 22:1220 by one of the following acts or omissions:

    a) knowingly misrepresenting pertinent facts or policy provisions regarding the coverage at issue;

    b) arbitrarily, capriciously and without probable cause, failing to pay the amount of claim due within sixty (60) days after receipt of satisfactory proof of loss.

## XVIII.

Defendant, STATE FARM FIRE AND CASUALTY COMPANY, is liable for the acts and omissions of its agents, employees and representatives in the handling of the Plaintiffs' claim, failure to adjust Plaintiffs' claim in good faith and failure to disclose material information to Plaintiffs causing further delay and damage to Plaintiffs as a result.

## XIX.

This action is appropriate for determination through the Louisiana Class Action Procedure (LSA-C.C.P. art. 591, et seq.) for the following reasons:

**a.**    **Numerosity**

Plaintiff is informed and believes, and on that basis alleges, that this class consists of thousands of persons presenting a level of numerosity most appropriately handled by the class action procedure.

**b.**    **Common Questions of Law and Fact**

This Petition for Declaratory Judgment seeks a declaration of the court that the water entering New Orleans beginning on August 29, 2005 due to breaches in the levees does not fall within the exclusion of flood or surface water nor was it caused by rainwater, as claimed in State Farm's denial letter, attached to this Complaint as Exhibit B.

**c.**    **Adequate Representation**

Plaintiff will fairly and adequately represent the interests of the class as no interest of plaintiff conflicts with any other member of the class.

4

d.    Typicality

The claims of the class representatives as named herein are typical of the claims of the class members they seek to represent in that they are all seeking declarations from the Court that: the damage caused by water entering New Orleans through breached levees does not fall within the exclusionary provisions of flood, surface water, etc.

e.    Superiority

The Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues herein presented, especially since individual joinder of each of the class members is impracticable. Individual litigation by each of the class members would be unduly burdensome to the plaintiff as well as unduly burdensome and expensive to the court system and the defendants.

XX.

Plaintiff brings this Petition for Declaratory Judgment on behalf of himself and ... others similarly situated, seeking a declaration by this Court that the damage caused by water entering New Orleans through breached levees does not fall within the exclusionary provisions of flood, surface water, etc. of plaintiff's State Farm renter's policy.

XXI.

It is appropriate for the issues presented in this Petition to be decided by declaratory judgment since their proper resolution affects thousands of Louisiana citizens. Many of the class members are suffering and will continue to suffer emotional and financial hardship until the issue is decided.  .

XXII.

WHEREFORE, plaintiff prays that after due proceedings had that this matter be certified as a class action in accordance with LSA-C.C.P. art. 591, et seq., and that the Court enter a declaratory judgment on behalf of himself and all other similarly situated that the damage caused by water entering New Orleans through the levee breaches does not fall within the exclusions of flood, surface water, nor any of the other exclusions contained in the policy, that the breaches were a result of wind or storm damage covered by the policy.

State Farm Ins.          10/2/2006 9:18 AM   PAGE   5/010   Fax Server

10/02/2006 08.00 FAX  5048626912          SF RIVERSIDE SHU       ~ CTOS          @005/005

Respectfully submitted:

Kevin J. Kleber. # 21306
2640 Barracks Street
New Orleans, LA 70119
Telephone: (504) 827-0494
Fax: (504) 301-0098 (call first)

Temporary location:
4465 Painters St.
New Orleans, LA 70122
(504) 460-2898

BLUHM LEGAL CLINIC
NORTHWESTERN UNIVERSITY
J. Samuel Tenenbaum
Not Licensed in Louisiana
Pro Hoc Vice
Illinois State Bar No. 15245
357 East Chicago Avenue
Chicago, IL 60611
Tel: (312) 503-4808

PLEASE SERVE:

STATE FARM FIRE AND CASUALTY COMPANY
By and through its agent for service of process:
The Louisiana Secretary of State,
8549 United Plaza Blvd.
Baton Rouge, LA 70809

TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| | * |
| | * CIVIL ACTION |
| JASON HAMMER, Individually and on behalf | * |
| of all others similarly situated | * NO. |
| | * |
| Plaintiffs | * SECTION |
| | * |
| VERSUS | * JUDGE |
| | * |
| STATE FARM FIRE & CASUALTY COMPANY | * MAGISTRATE |
| | * |
| Defendant | * |
| | * |

* * * * * * * * * * * * * * * * * * * * * * * * * *   *

## A F F I D A V I T

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

        BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and qualified in and for the Parish of East Baton Rouge, State of Louisiana, personally came and appeared:

WILLIAM A. GOURGUES

who, after being duly sworn, did depose and state the following.



EXHIBIT

B

Blumberg No. 5119

1

836077v.1

1.

I, William A. Gourgues, am a person of full age of majority and have been employed by State Farm Fire and Casualty Company ("State Farm") for approximately 13 years. I currently occupy the position of Claim Section Manager.

2.

I have first hand knowledge of the facts contained within this affidavit and am competent to testify thereto.

3.

As part of my responsibilities as a Section Manager, I oversee the handling of non-automobile Property and Casualty claims in Louisiana including claims presented to State Farm under Renter Insurance policies written by State Farm.

4.

Since August 29, 2005, 2750 Katrina damage claims have been made under Renters Insurance policies issued by State Farm in Orleans Parish. The aggregate contents coverage policy limits of these insureds who presented Katrina damage claims totaled in excess of $75 million and payments to these insureds totaled in excess of $11 million.

5.

I have reviewed data regarding renters insurance claims made by State Farm insureds in the following zip codes: 70112, 70117, 70122, 70124, and 70125. These zip codes include areas of the city most impacted by flooding from the three canal breaches in New Orleans. Additionally, 70125 is the Plaintiff's zip code. The majority of Katrina damage sustained in these zip codes was the result of flooding and not covered under the State Farm Renters Insurance policy. The total aggregate contents coverage policy limits for Hurricane

2

Katrina claims made by State Farm renter insureds in these zip codes was approximately $15 million and the payments to these insureds for personal property contents was approximately $660,000.

6.

I have reviewed the Plaintiff's State Farm Hurricane Katrina-related renters claim file.   At the time Hurricane Katrina struck, the coverage limits under the Plaintiff, Jason Hammer's State Farm Renters Insurance policy for his property at 3132 State Street Drive #B, New Orleans, Louisiana, was $10,946 for personal property contents and actual alternative living expenses.  Plaintiff was paid approximately $535.00 in benefits under his policy.

Sworn to and subscribed before me this 27 day of October, 2006.

_____
NOTARY PUBLIC
Dana Berthelot
80303

_____
William A. Gourgues

3

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MINUTE ENTRY
March 16, 2006
DISTRICT JUDGE FRANK J. POLOZOLA

GLADYS CHEHARDY, ET AL.

|  |  |
|---|---|
| VERSUS | CIVIL ACTION |
| | NO. 05-1140-FJP-CN |
| J. ROBERT WOOLEY, ET AL. | |

CONSOLIDATED WITH

GLADYS CHEHARDY, ET AL.

|  |  |
|---|---|
| VERSUS | CIVIL ACTION |
| | NO. 05-1162-FJP-CN |
| J. ROBERT WOOLEY, ET AL. | |

CONSOLIDATED WITH

GLADYS CHEHARDY, ET AL.

|  |  |
|---|---|
| VERSUS | CIVIL ACTION |
| | NO. 05-1163-FJP-CN |
| J. ROBERT WOOLEY, ET AL. | |

This matter came on this day for oral argument on subject matter jurisdiction and the motion to remand. All parties present signed the attached sign-in sheet.

Counsel present arguments.

For oral reasons assigned, the Court declines to exercise jurisdiction over the counterclaim[1] of defendant, The Standard Fire Insurance Company, under 28 U.S.C. §1367; therefore, the

_____

[1] Rec. Doc. No. 18.

Doc#43131



EXHIBIT

C

Blumberg No. 5119

counterclaim is hereby DISMISSED without prejudice.

The Court finds that it has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), 28 U.S.C. §1332(d) and 28 U.S.C. §1369.  Therefore:

IT IS FURTHER ORDERED that plaintiffs' motions to remand[2] are hereby DENIED.

IT IS FURTHER ORDERED that plaintiffs' claim against the Louisiana Insurance Commissioner is hereby DISMISSED, without prejudice.

IT IS FURTHER ORDERED that plaintiffs' claims against all defendants, except for State Farm Fire and Casualty Company, Allstate Indemnity Company, Allstate Insurance Company and American Insurance Company, are hereby DISMISSED without prejudice.

IT IS FURTHER ORDERED that the remaining issues in this matter shall be TRANSFERRED to the Eastern District of Louisiana.

Should it be later found on appeal that this Court did not have  jurisdiction, the Court reserves the right to the Eastern District to transfer this matter back to this Court for remand.

The Court reserves its right to supplement its oral reasons given this day with written reasons should it become necessary.

******

Reporter: E. Champion

C: CV 25b; T: 2:00

---

[2] Rec. Doc. Nos. 59 and 61.

Doc#43004                              2

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GLADYS CHEHARDY, ET AL.

CIVIL ACTION

VERSUS

NO.05-1140-FJP

J. ROBERT WOOLEY
LOUISIANA INSURANCE COMMISSIONER, ET AL.


March 16, 2006(10:00 a.m.)Hearing


**PLEASE PRINT**                    **PLEASE PRINT**


| Name | Firm | Represent |
|------|------|-----------|
| Judy Barrasso | Barrasso Usdin | Allstate |
| Joseph m Bruno | Bruno & Bruno | Π |
| Andrew L. Planché Jr | Planche Maselli | Farm Bureau |
| ALSTON JOHNSON | Phelps Dunbar | " " |
| STEVEN USDIN | BARRASSO Usdin | Chubb Custom |
| H. Minor Pipes, III | Barrasso Usdin | Liberty Mutual |
| Jay Lovero | Larzelere Picou | AVPAC La. Ins. Co. |
| MARShall Redmon | Phelps | FARMER's |
| Kelly Bogart | Duplass Zwain | American Ins Co. Fireman's Fund |

| | | |
|---|---|---|
| Robert Siegel | Gieger, Laborde + Laperouse | Audubon Ins. Co. + Nat. Union of La. |
| Ralph Hubbard | Lugenbuhl | Standard Fire |
| John Unsworth | Hailey, McNamara | Clarenden |
| David Fawley | " | " |
| Blayne Honeycutt | Fayard & Hungart | π |
| Calvin Fayard | " " | π |
| Wayne Lee | StonePigman | State Farm |
| Stephen Bullock | . " | " |

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 APR 25  PM 1: 35

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

# 07 - 2660

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| PERTAINS TO: SEVERED MASS JOINDER CASES | * | No. 05-4182 |
| | * | |
| *severed from Kiefer, 06-5370* | * | SECTION "K" (2) |
| | * | |
| | * | **SECT. K MAG 2** |
| | * | |
| RENE HOLLINS | * | |
| **Plaintiff** | * | CIVIL ACTION |
| VERSUS | * | |
| | * | No. |
| STATE FARM FIRE and CASUALTY COMPANY | * | |
| **Defendant** | * | SECTION "K" (  ) |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUPPLEMENTAL AND AMENDING COMPLAINT

## PURSUANT TO ORDER OF SEVERANCE DATED MARCH 27, 2007

**NOW INTO COURT,** through undersigned counsel, comes Rene Hollins (Hereinafter

"Policyholder"), who respectfully supplements and amends her Complaint as follows:

I.

Made defendant herein is:

1.    STATE FARM FIRE AND CASUALTY COMPANY, (hereinafter "State Farm"),

a  foreign insurer authorized to do and doing business the State of Louisiana.

II.

This Court has personal jurisdiction over State Farm because it was transacting business in

-1-

\_\_\_ Fee_____
✓ Process_____
X  Dktd_____
\_\_\_ CtRmDep_____
\_\_\_ Doc. No_____

this District within the relevant time periods by way of selling insurance policies to Policyholder.

III.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District and State Farm regularly transacts business in this District.

IV.

Policyholder seeks compensatory and punitive damages from State Farm as a result of its wrongful conduct, as well as declaratory relief by the Court that:

a. The first efficient proximate cause of the losses suffered by Policyholder on August 29, 2005 was "windstorm," a covered peril under the insurance policy purchased by Policyholder, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policy;

b. The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere was *acts of negligence*, standard covered perils in State Farm's homeowner insurance policy;

c. The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 was "storm surge," a known meteorological phenomenon that is not specifically excluded by State Farm's insurance policy, in contrast to other insurance policies available in the

-2-

market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policy;

d.    The breaking or failure of levees or boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by State Farm's insurance policy, in contrast to other insurance policies available in the market; and

e.    The damage caused by water entering the City of New Orleans and surrounding parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the common and approved definition of "flood," nor within the subject insurance policy's exclusions of "flood."

## FACTUAL BACKGROUND

### V.

At all pertinent times, Policyholder owned immovable property with improvements and personal property located at 1457 Pressburg Street, in New Orleans, Louisiana.

### VI.

Policyholder purchased a homeowner's insurance policy (the "All Risk Policy") from State Farm.

### VII.

Policyholder purchased the policy with the reasonable expectation that they would be able to recover for any and all losses caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and "storm surge" proximately caused by hurricane wind.

### VIII.

-3-

At no time did State Farm specifically exclude from coverage the breaking or failure of boundaries and levees of lakes, rivers, streams, or other bodies of water, despite State Farm's advanced knowledge of the fragility of the New Orleans area levee systems and the topography of the Greater New Orleans Metropolitan Area.

IX.

Policyholder trusted and relied upon State Farm's representations that the subject policy would cover any damage caused by a hurricane and, thus, reasonably believed that their Policy would cover any and all hurricane damage.

X.

The amount of insurance coverage for the Policyholder was based on the estimated cost of replacing the home, an amount established by State Farm or an agent authorized by them to determine the replacement cost of each individual home.

XI.

At all times relevant hereto, Policyholder made timely payment of the premiums due on their All Risk Policy, which was in full force and effect at the time of their loss.

XII.

At 6:10 a.m. on August 29, 2005, Hurricane Katrina made landfall near Grande Isle, Louisiana as a Category 4 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border, the eye of the storm passing just east of the City of New Orleans at approximately 9:00 a.m.

XIII.

As a result of the effects of Hurricane Katrina on the New Orleans region, Policyholder had

-4-

substantial damage to their home and the contents of their home were destroyed.

XIV.

Based upon information and belief, Policyholder avers that any damages attributable to the levee failures are the result of improper or negligent design, construction, maintenance of the levees by various third parties and/ or third party negligence.

XV.

Upon returning to the city and evaluating the damage associated with Hurricane Katrina and its aftermath, Policyholder instituted a claim for loss pursuant to their insurance policy.

XVI.

Despite presenting satisfactory proofs of loss for damage sustained as a result of the hurricane, State Farm continuously utilized dilatory tactics leading to substantial delays in adjusting Policyholder claims.

XVII.

Additionally, State Farm refused to adequately adjust the claims and make payment of the amount of the claim, despite having been presented with satisfactory proofs of loss for damage sustained as a result of the hurricane.

## COUNT I

## DECLARATORY JUDGMENT

XVIII.

Policyholder repeats and re-alleges the allegations of the foregoing paragraphs as if the same were set forth at length herein.

XIX.

An actual controversy exists between Policyholder and State Farm concerning State Farm's duty to indemnify Policyholder for their losses.

XX.

Consequently, under the circumstances, it is necessary and appropriate for the Court to declare Policyholder and State Farm's rights and duties under the Policy pursuant to 28 U.S.C. § 2201.

XXI.

The losses suffered by Policyholder as a result of Hurricane Katrina are covered losses under the respective All Risk Policy.

XXII.

Policyholder has given timely notification to State Farm and made timely demands in writing that State Farm cover Policyholder losses.

XXIII.

State Farm is obligated by the terms and conditions of their All Risk Policy to indemnify Policyholder for their losses.

XXXIV.

State Farm has refused to indemnify Policyholder for their losses and have denied coverage, in whole or in part, for the losses.

XXV.

Thus, Policyholder is entitled to a declaratory judgment that the damages they suffered are covered losses under the All Risk Policy.

XXVI.

Specifically, Policyholder losses were caused by covered perils, the efficient causes of their losses were covered perils and the efficient and proximate causes of loss were covered perils.

XXVII.

Further, to give the "flood" exclusions a broad reading and thus disallow the coverage for the damages arising from this catastrophic disaster, which occurred despite the vast and expansive levees existing in the greater New Orleans area, would contravene the very purpose of homeowner's policies.

XXVIII.

The reasonable expectations of Louisiana policyholders is that "flood" encompasses overflowing of the Mississippi River or other body of water, accumulation of surface water due to heavy rainfalls, or similar phenomena, but not the unnatural event of the failure of virtually all man-made water containment structure surrounding the New Orleans Metropolitan Area due to negligent conduct beyond the policyholders' control.

XXIX.

Finally, Policyholder should not be deprived of the coverage of the All Risk Policy where State Farm has drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted. If so intended, and in contrast to other insurance policies available in the market, State Farm should have specifically excluded hurricane damage and/or the failure of levees as the most probable perils for the New Orleans Metropolitan Area. Instead, State Farm decided to sell the same comprehensive All-Risk Homeowners Insurance Policy that they sell in the "high and dry" plains throughout the United States.

-7-

### XXX.

While State Farm may continue to make investment income during the course of any protracted legal proceedings, Policyholder, on the other hand, has little recourse but to sit idly by awaiting a decision, all the while being unable to begin reconstruction or renovation of their homes until they have the money to pay contractors.

### XXXI.

As a result, without resolution of this issue by declaratory judgment, Policyholder, in most instances, will be unable to remedy the damages they fully expected were covered by their All Risk Policy.

**WHEREFORE**, Policyholder respectfully requests that this Court enter a declaratory judgment in their favor and against State Farm as to Count I, ordering and decreeing that:

(1)    The first efficient proximate cause of the losses suffered by Policyholder on August 29, 2005 was "windstorm," a covered peril under the insurance policy purchased by Policyholder, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policy;

(2)    The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere, was *acts of negligence*, standard covered perils in State Farm's homeowners insurance policy;

(3)    The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 was "storm surge," a known meteorological phenomenon that is not specifically excluded by State Farm's insurance policy, in

-8-

contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

(4)    The breaking or failure of boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by State Farm's insurance policy, in contrast to other insurance policies available in the market; and

(5)    The damage caused by water entering the City of New Orleans and adjoining parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere, neither falls within the common and approved definition of "flood," nor within the subject insurance policy's exclusions of "flood."

## COUNT II.

## STATE FARM FAILED TO PROPERLY ADVISE POLICYHOLDER OF THE AVAILABILITY OF FLOOD INSURANCE

### XXXII.

In 1956 Congress enacted the Federal Flood Insurance Act. The National Flood Insurance Act, as amended in 1968, is now the seminal authority for the current National Flood Insurance Program ("NFIP"). Congress created the NFIP to provide insurance coverage for property located in flood plain areas where the risk of certain natural or seasonal flooding is increased.

### XXXIII.

The NFIP provides a minimum level of insurance for the peril of natural or seasonal flooding with a cap of $250,000 per property.  42 U.S.C. § 4121(a)(1).

### XXXIV.

-9-

Since the inception of the NFIP, the insurance industry has been willing to sell insurance in excess to the minimal level of coverage provided by the NFIP. Thus, the availability of additional flood insurance was known to and sold by State Farm at the time it sold its All Risk Policy to Policyholder.

## XXXV.

Despite this knowledge, at no time prior to August 29, 2005 did State Farm advise Policyholder that - contrary to their representations - their true intent was not to cover damage or loss caused by hurricanes that may involve damage, in part, from water beyond the NFIP limit, and that their home may accordingly be grossly under-insured, or that additional coverage could be purchased in excess of the NFIP limit.

## XXXVI.

Policyholder was not adequately advised of the scope and availability of flood insurance under the National Flood Insurance Program by State Farm.

## COUNT III

## BREACH OF CONTRACT

## XXXVII.

Policyholder repeats and re-alleges the allegations of the foregoing paragraphs as if the same were set forth at length herein.

## XXXVIII.

A valid contract exists between Policyholder and State Farm in the form of the All Risk Policy, which obligates State Farm to cover the loss of or damage to a dwelling and personal property therein which is caused by wind or windstorms.

## XXXIX.

Policyholder paid all premiums due under their All Risk Policy and materially performed their obligations under that policy.

## XL.

Upon proper and repeated demands by Policyholder, State Farm has refused to meet its obligations under the All Risk Policy and refused to pay the full extent of damages sustained by Policyholder home asa result of being destroyed or damaged by the efficient proximate cause of windstorms.

## XLI.

As a direct and proximate result of the breach by State Farm, Policyholder was deprived of the benefit of insurance coverage for which State Farm was paid substantial premiums and, accordingly, Policyholder has suffered substantial damages.

## XLII.

Policyholder avers that State Farm negligently failed to exercise reasonable care in fulfilling its duties to Policyholder, more particularly, but not limited to:

1).    Failing to initiate loss adjustment of a claim after notification of loss;

2).    Failing to promptly and adequately adjust the claims presented;

3).    Provide an initial tender of payment at prices falling below regional commercial standards;

4).    Failing to make complete payment after receipt of satisfactory proofs of loss of that claim;

5).    Failing to fulfill the terms and conditions of the insurance contract at issue;

6).    Failing to exercise reasonable care in the supervision of subordinates and employees;

7).    Failing to exercise reasonable care;

8).      Breach of express and implied warranties; and

9).      Any and all other acts of negligence to be proven at trial.

### XLIII.

As a result of the above referenced conduct, Policyholder has sustained damages in the following non exclusive ways:

1.      loss of personal property and property value;

2.      inconvenience;

3.      loss of use of property;

4.      loss of income;

5.      loss of profits;

6.      loss of business opportunity;

7.      as well as other damages to be proven at trial.

**WHEREFORE**, Policyholder demands judgment against State Farm for all amounts due under the All Risk Policy, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

### COUNT IV
### BREACH OF THE IMPLIED COVENANT OF
### GOOD FAITH AND FAIR DEALING

### XLIV.

Policyholder repeats and re-alleges the allegations of the foregoing paragraphs as if the same were set forth at length herein.

### XLV.

By selling its All Risk Policy to Policyholder, State Farm assumed a duty of good faith and fair dealing to Policyholder, including an obligation to promptly indemnify Policyholder for the

losses.

## XLVI.

State Farm has failed to follow Louisiana's long-standing efficient proximate cause doctrine and has instead adopted an industry-wide approach to denying valid claims for inappropriate reasons.

## XLVII.

State Farm has continuously denied coverage for Policyholder losses by equating the efficient proximate cause of windstorm and the negligent design, construction and maintenance of the New Orleans area levees and/or third party negligence with <u>flooding</u>.

## XLVIII.

State Farm has continuously denied coverage for claims by equating "storm surge" with flood, thereby improperly expanding the flood exclusion and ignoring the reasonable expectation of Louisiana policy holders.

## XLIX.

Moreover, State Farm directed its adjusters to follow specific "guidelines" whereby the adjusters would arbitrarily, capriciously and without probable cause, find a nearby waterline and apply it to Policyholder property in order to deny full payment of Policyholder claims.

## L.

State Farm further directed its adjusters to ignore all other information and evidence and, instead, to use only the procedure and guidelines mandated by them, specifically; the arbitrary application of any nearby waterline to Policyholder property.

## LI.

By engaging in all of the conduct above, State Farm lacks an arguable or legitimate basis for refusing to pay the Policyholder claims

## LII.

In directing its adjusters to undertake the ongoing practice of ignoring any information or evidence other than the arbitrary and capricious application of any nearby waterline, State Farm violated La. Rev. Stat. Ann. § 658.2(A)(1) which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when determining whether a loss is covered or not covered under a homeowners' insurance policy."

## LIII.

By engaging in the conduct described above, State Farm has violated the duties of good faith and fair dealing owed to Policyholder.

## LIV.

Moreover, by engaging in the conduct above, State Farm's persistent and systematic actions and failures to act were done with malice and gross negligence and with a disregard for Policyholder rights so as to warrant the imposition of punitive damages against State Farm.

## LV.

Additionally, that despite the fact that settlement negotiations have taken place, Policyholder contends that State Farm has been arbitrary and capricious in the adjustment and handling of this claim pursuant to Louisiana Revised Statute 22:658.

-14-

LVI.

Policyholder further contends that the actions of State Farm were arbitrary and capricious and violated the duty to deal with Policyholder in good faith in failing to make a reasonable effort to settle its claim pursuant to La. R.S. 22:1220.

LVII.

Pursuant to La. Rev. Stat. Ann. § 22:1220(A), State Farm owes Policyholder a "duty of good faith and fair dealing" as well as a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with Policyholder.

LVIII.

La. Rev. Stat. Ann. § 22:1220(B) prohibits State Farm from, inter alia, "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" and "[f]ailing to pay the amount of any claim . . . when such failure is arbitrary, capricious or without probable cause."

LIX.

State Farm has misrepresented the coverage afforded by its insurance policy provisions by wrongfully and without a legitimate basis seeking to have the "flood" exclusions given a broad reading in an effort to disallow coverage for the damages arising from Hurricane Katrina.

LX.

As such, State Farm has breached known duties through a motive of self interest and/or ill will without having a reasonable basis to deny these claims, instead denying claims in an arbitrary and capricious manner and without probable cause.

-15-

LXI.

By engaging in all of the above conduct, State Farm has engaged in bad faith conduct in violation of La. Rev. Stat. Ann. § 22:1220.

LXII.

As a direct and proximate result of the State Farm's bad faith actions, Policyholder has suffered, and will continue to suffer, substantial damages.

LXIII.

Policyholder hereby demands trial by jury on all issues so triable.

**WHEREFORE,** Policyholder prays that the defendant State Farm Fire and Casualty Company be duly served and cited to appear and answer the Supplemental and Amending Complaint Pursuant to Order of Severance dated March 27, 2007, and for trial by jury; and that after due proceedings, that there be judgment in favor of Policyholder and against State Farm Fire and Casualty Company for damages as are reasonable in the premises with legal interest thereon from date of judicial demand and for all costs of these proceedings, and all general and equitable relief deemed proper by this Honorable Court.

Respectfully submitted:

**FAYARD & HONEYCUTT, APC**

Calvin C. Fayard, Jr. (La. Bar Roll #5486)
D. Blayne Honeycutt (La. Bar Roll #18264)
Wanda J. Edwards (La. Bar Roll #27448)
519 Florida Avenue SW

-16-

Denham Springs, LA 70726
Telephone: (225) 664-4193
Facsimile: (225) 664-6925

and

**MURPHY LAW FIRM**
Peyton P. Murphy
7035 Jefferson Highway
Baton Rouge, LA 70809
Telephone:  (225) 928-8800
Facsimile: (225) 928-8802

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 AUG 28 PM 2: 24

LORETTA G. WHYTE
CLERK

| | | |
|---|---|---|
| WILLIAM MURDOCK and PAULA BATISTE MURDOCK | * | CIVIL ACTION NO. |
| | * | |
| Plaintiffs | * | SECTION " "( ) 07-4784 |
| | * | |
| VERSUS | * | JUDGE |
| | * | |
| LOUISIANA CITIZENS FAIR PLAN and STATE FARM FIRE AND CASUALTY COMPANY | * | SECT. K MAG. 2 |
| | * | |
| Defendants | * | MAGISTRATE |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes **WILLIAM MURDOCK and**

**PAULA BATISTE MURDOCK**, (Hereinafter "Policyholders"), who respectfully complain as

follows:

I.

Made defendant herein is:

1.  **LOUISIANA CITIZENS FAIR PLAN,** a foreign insurance company, authorized to do and doing business in the State of Louisiana, who has appointed Jay Dardenne, Secretary of State for the State of Louisiana as its agent for service of process and can be served at 8549 United Plaza Boulevard, Baton Rouge, Louisiana 70809; and

2.  **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY,** foreign insurance company, authorized to do and doing business in the State of Louisiana, who has appointed Jay Dardenne, Secretary of State for the State of Louisiana as its agent for service of process and can be served at 8549 United Plaza Boulevard, Baton Rouge, Louisiana 70809.

\_\_ Fee $350
\_\_ Process_____
X\_ Dktd_____
\_\_ CtRmDep_____
\_\_ Doc. No._____

II.

This Court has personal jurisdiction over **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** because it was transacting business in this District within the relevant time periods by way of selling insurance policies to Policyholder.

III.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this District and **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** regularly transacts business in this District.

IV.

Policyholder seeks compensatory and punitive damages from **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** as a result of its wrongful conduct, as well as declaratory relief by the Court that:

a.   *The first efficient proximate cause of the losses suffered by Policyholder on August 29, 2005 was "windstorm,"* a covered peril under the insurance policy purchased by Policyholder, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policy;

b.   The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere was *acts of negligence*, standard covered perils in LOUISIANA CITIZENS FAIR PLAN's homeowner insurance policy;

c.   The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005 was "storm surge," a known meteorological phenomenon *that is not specifically excluded by 's* insurance policy, in contrast to other insurance policies available in the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policy;

d.    The breaking or failure of levees or boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by LOUISIANA CITIZENS FAIR PLAN's insurance policy, in contrast to other insurance policies available in the market; and

e.    The damage caused by water entering the City of New Orleans and surrounding parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the common and approved definition of "flood," nor within the subject insurance policy's exclusions of "flood."

## FACTUAL BACKGROUND

### V.

At all pertinent times, Policyholder owned immovable property with improvements and personal property located at 5884 Old Gentilly Road, New Orleans, Louisiana 70126 and 5886 Old Gentilly Road, New Orleans, Louisiana 70126.

### VI.

Policyholder purchased a homeowner's insurance policy (the "All Risk Policy") from **LOUISIANA CITIZENS FAIR PLAN and STATE FARM FIRE AND CASUALTY INSURANCE COMPANY's** .

### VII.

Policyholder purchased the policy with the reasonable expectation that they would be able to recover for any and all losses caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, and "storm surge" proximately caused by hurricane wind.

VIII.

At no time did **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** specifically exclude from coverage the breaking or failure of boundaries and levees of lakes, rivers, streams, or other bodies of water, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** 's advanced knowledge of the fragility of the New Orleans area levee systems and the topography of the Greater New Orleans Metropolitan Area.

IX.

Policyholder trusted and relied upon **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** 's representations that the subject policy would cover any damage caused by a hurricane and, thus, reasonably believed that their Policy would cover any and all hurricane damage.

X.

The amount of insurance coverage for the Policyholder was based on the estimated cost of replacing the home, an amount established by **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** or an agent authorized by them to determine the replacement cost of each individual home.

XI.

At all times relevant hereto, Policyholder made timely payment of the premiums due on their All Risk Policy, which was in full force and effect at the time of their loss.

XII.

At 6:10 a.m. on August 29, 2005, Hurricane Katrina made landfall near Grande Isle, Louisiana as a Category 4 hurricane, and then made a second landfall a short time later near the Louisiana-Mississippi border, the eye of the storm passing just east of the City of New Orleans at approximately 9:00 a.m.

XIII.

As a result of the effects of Hurricane Katrina on the New Orleans region, Policyholder had substantial damage to their home and the contents of their home were destroyed.

XIV.

Based upon information and belief, Policyholder avers that any damages attributable to the levee failures are the result of improper or negligent design, construction, maintenance of the levees by various third parties and/ or third party negligence.

XV.

Upon returning to the city and evaluating the damage associated with Hurricane Katrina and its aftermath, Policyholder instituted a claim for loss pursuant to their insurance policy.

XVI.

Despite presenting satisfactory proofs of loss for damage sustained as a result of the hurricane **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** continuously utilized dilatory tactics leading to substantial delays in adjusting Policyholder claims.

XVII.

Additionally, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** refused to adequately adjust the claims and make payment of the amount of the claim, despite having been presented with satisfactory proofs of loss for damage sustained as a result of the hurricane.

## COUNT I

### DECLARATORY JUDGMENT

XVIII.

Policyholder repeats and re-alleges the allegations of the foregoing paragraphs as if the same were set forth at length herein.

XIX.

An actual controversy exists between Policyholder and **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** concerning **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY**'s duty to indemnify Policyholder for her losses.

XX.

Consequently, under the circumstances, it is necessary and appropriate for the Court to declare Policyholder and **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** 's rights and duties under the Policy pursuant to 28 U.S.C. § 2201.

XXI.

The losses suffered by Policyholder as a result of Hurricane Katrina are covered losses under the respective All Risk Policy.

XXII.

Policyholder has attempted to give timely notification to **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** and made demands that **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** cover Policyholder's losses.

XXIII.

**LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** is obligated by the terms and conditions of their All Risk Policy to indemnify Policyholder for their losses.

XXXIV.

**LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** has refused to indemnify Policyholder for their losses and have denied coverage, in whole or in part, for the losses.

XXV.

Thus, Policyholder is entitled to a declaratory judgment that the damages they suffered are covered losses under the All Risk Policy.

XXVI.

Specifically, Policyholder losses were caused by covered perils, the efficient causes of their losses were covered perils and the efficient and proximate causes of loss were covered perils.

XXVII.

Further, to give the "flood" exclusions a broad reading and thus disallow the coverage for the damages arising from this catastrophic disaster, which occurred despite the vast and expansive levees existing in the greater New Orleans area, would contravene the very purpose of homeowner's policies.

XXVIII.

The reasonable expectations of Louisiana policyholders is that "flood" encompasses overflowing of the Mississippi River or other body of water, accumulation of surface water due to heavy rainfalls, or similar phenomena, but not the unnatural event of the failure of virtually all man-made water containment structure surrounding the New Orleans Metropolitan Area due to negligent conduct beyond the policyholders' control.

XXIX.

Finally, Policyholder should not be deprived of the coverage of the All Risk Policy where **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** has drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted. If so intended, and in contrast to other insurance policies available in the market, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** should have specifically excluded hurricane damage and/or the failure of levees as the most probable perils for the New Orleans Metropolitan Area. Instead, **LOUISIANA CITIZENS FAIR PLAN** and **STATE**

**FARM FIRE AND CASUALTY INSURANCE COMPANY** decided to sell the same comprehensive All-Risk Homeowners Insurance Policy that they sell in the "high and dry" plains throughout the United States.

XXX.

While **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** may continue to make investment income during the course of any protracted legal proceedings, Policyholder, on the other hand, has little recourse but to sit idly by awaiting a decision, all the while being unable to begin reconstruction or renovation of their homes until they have the money to pay contractors.

XXXI.

As a result, without resolution of this issue by declaratory judgment, Policyholder, in most instances, will be unable to remedy the damages they fully expected were covered by their All Risk Policy.

WHEREFORE, Policyholder respectfully requests that this Court enter a declaratory judgment in their favor and against **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** as to Count I, ordering and decreeing that:

(1)    The first efficient proximate cause of the losses suffered by Policyholder on August 29, 2005 was "windstorm," a covered peril under the insurance policy purchased by Policyholder, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policy;

(2)      The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere, was *acts of negligence*, standard covered perils in **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** homeowners insurance policy;

(3)      The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 was "storm surge," a known meteorological phenomenon that is not specifically excluded **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** 's insurance policy, in contrast to other insurance policies available in the market, thereby rendering any damage *caused by "storm surge" and resulting water pressure covered under the policies;*

(4)      The breaking or failure of boundaries of lakes, reservoirs, rivers, streams, or other *bodies of water was a peril not specifically excluded by* **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** insurance policy, in contrast to other insurance policies available in the market; and

(5)      The damage caused by water entering the City of New Orleans and adjoining parishes from Hurricane Katrina beginning on August 29, 2005, *due to the breaches in the levees and levee* walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere, neither falls within the common and approved definition of "flood," *nor within the subject insurance* policy's exclusions of "flood."

<u>COUNT II.</u>

## <u>LOUISIANA CITIZENS FAIR PLAN and STATE FARM FIRE AND CASUALTY</u> <u>*INSURANCE COMPANY 's*</u> <u>FAILED TO PROPERLY ADVISE Policyholder</u> <u>OF THE AVAILABILITY OF FLOOD INSURANCE</u>

XXXII.

*In 1956, Congress enacted the Federal Flood Insurance Act.* The National Flood Insurance Act, as amended in 1968, is now the seminal authority for the current National Flood Insurance Program ("NFIP"). Congress created the NFIP to provide insurance coverage for property located in flood plain areas where the risk of certain natural or seasonal flooding is increased.

XXXIII.

*The NFIP provides a minimum level of insurance for the peril of natural or seasonal flooding* with a cap of $250,000 per property.  42 U.S.C. § 4121(a)(1).

XXXIV.

Since the inception of the NFIP, the insurance industry has been willing to sell insurance in excess to the minimal level of coverage provided by the NFIP. Thus, the availability of additional *flood insurance was known to and sold by* **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** at the time it sold its All Risk Policy to Policyholder.

XXXV.

Despite this knowledge, at no time prior to August 29, 2005 did **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** advise Policyholder that - contrary to their representations - their true intent was not to cover damage or loss caused by hurricanes that may involve damage, in part, from water beyond the NFIP limit, and that

their home may accordingly be grossly under-insured, or that additional coverage could be purchased in excess of the NFIP limit.

XXXVI.

Policyholder was not adequately advised of the scope and availability of flood insurance under the National Flood Insurance Program by **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** .

**COUNT III**

**BREACH OF CONTRACT**

XXXVII.

Policyholder repeats and re-alleges the allegations of the foregoing paragraphs as if the same were set forth at length herein.

XXXVIII.

A valid contract exists between Policyholder and **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** in the form of the All Risk Policy, which obligates **LOUISIANA CITIZENS FAIR PLAN and STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** to cover the loss of or damage to a dwelling and personal property therein which is caused by wind or windstorms.

XXXIX.

Policyholder paid all premiums due under their All Risk Policy and materially performed their obligations under that policy.

XL.

Upon proper and repeated demands by Policyholder **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** has refused to meet its obligations under the All Risk Policy and refused to pay the full extent of damages sustained by Policyholder home asa result of being destroyed or damaged by the efficient proximate cause of windstorms.

XLI.

As a direct and proximate result of the breach by **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** , Policyholder was deprived of the benefit of insurance coverage for which **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** was paid substantial premiums and, accordingly, Policyholder has suffered substantial damages.

XLII.

Policyholder avers that **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** negligently failed to exercise reasonable care in fulfilling its duties to Policyholder, more particularly, but not limited to:

1).     Failing to initiate loss adjustment of a claim after notification of loss;

2).     Failing to promptly and adequately adjust the claims presented;

3).     Provide an initial tender of payment at prices falling below regional commercial standards;

4).     Failing to make complete payment after receipt of satisfactory proofs of loss of that claim;

5).     Failing to fulfill the terms and conditions of the insurance contract at issue;

6).     Failing to exercise reasonable care in the supervision of subordinates and employees;

7).     Failing to exercise reasonable care;

8).      Breach of express and implied warranties; and

9).      Any and all other acts of negligence to be proven at trial.

XLIII.

As a result of the above referenced conduct, Policyholder has sustained damages in the following non exclusive ways:

1.      loss of personal property and property value;

2.      inconvenience;

3.      *loss of use of property;*

4.      loss of income;

5.      loss of profits;

6.      loss of business opportunity;

7.      as well as other damages to be proven at trial.

WHEREFORE, Policyholder demands judgment against **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** for all amounts due under the All Risk Policy, other compensatory damages, interest, attorney's fees, costs, and any further relief this Court deems equitable, just and proper.

**COUNT IV**
**BREACH OF THE IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**

XLIV.

Policyholder repeats and re-alleges the allegations of the foregoing paragraphs as if the same were set forth at length herein.

XLV.

By selling its All Risk Policy to Policyholder, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** assumed a duty of good faith and fair dealing to Policyholder, including an obligation to promptly indemnify Policyholder for the losses.

XLVI.

**LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** has failed to follow Louisiana's long-standing efficient proximate cause doctrine and has instead adopted an industry-wide approach to denying valid claims for inappropriate reasons.

XLVII.

**LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** has continuously denied coverage for Policyholder losses by equating the efficient proximate cause of windstorm and the negligent design, construction and maintenance of the New Orleans area levees and/or third party negligence with _flooding_.

XLVIII.

**LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** has continuously denied coverage for claims by equating "storm surge" with flood, thereby improperly expanding the flood exclusion and ignoring the reasonable expectation of Louisiana policy holders.

XLIX.

Moreover, upon information and belief, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** directed its adjusters to follow specific "guidelines" whereby the adjusters would arbitrarily, capriciously and without probable cause, find a nearby waterline and apply it to Policyholder property in order to deny full payment of Policyholder claims.

L.

Upon information and belief, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** further directed its adjusters to ignore all other information and evidence and, instead, to use only the procedure and guidelines mandated by them, specifically; the arbitrary application of any nearby waterline to Policyholder property.

LI.

By engaging in all of the conduct above, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** lacks an arguable or legitimate basis for refusing to pay the Policyholder claims.

LII.

In directing its adjusters to undertake the ongoing practice of ignoring any information or evidence other than the arbitrary and capricious application of any nearby waterline, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** violated La. Rev. Stat. Ann. § 658.2(A)(1) which provides that "[n]o insurer shall use the floodwater mark on a covered structure without considering other evidence, when

determining whether a loss is covered or not covered under a homeowners' insurance policy."

LIII.

By engaging in the conduct described above, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** has violated the duties of good faith and fair dealing owed to Policyholder.

LIV.

Moreover, by engaging in the conduct above, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** persistent and systematic actions and failures to act were done with malice and gross negligence and with a disregard for Policyholder rights so as to warrant the imposition of punitive damages against **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's**.

LV.

Additionally, Policyholder contends that **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** has been arbitrary and capricious in the adjustment and handling of this claim pursuant to Louisiana Revised Statute 22:658.

LVI.

Policyholder further contends that the actions of **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** were arbitrary and capricious and violated the duty to deal with Policyholder in good faith in failing to make a reasonable effort to settle its claim pursuant to La. R.S. 22:1220.

LVII.

Pursuant to La. Rev. Stat. Ann. § 22:1220(A), **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** owes Policyholder a "duty of good faith and fair dealing" as well as a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims" with Policyholder.

LVIII.

La. Rev. Stat. Ann. § 22:1220(B) prohibits **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** from, inter alia, "[m]isrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue" and "[f]ailing to pay the amount of any claim . . . when such failure is arbitrary, capricious or without probable cause."

LIX.

**LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** has misrepresented the coverage afforded by its insurance policy provisions by wrongfully and without a legitimate basis seeking to have the "flood" exclusions given a broad reading in an effort to disallow coverage for the damages arising from Hurricane Katrina.

LX.

As such, **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** has breached known duties through a motive of self interest and/or ill will without having a reasonable basis to deny these claims, instead denying claims in an arbitrary and capricious manner and without probable cause.

LXI.

By engaging in all of the above conduct **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** has engaged in bad faith conduct in violation of La. Rev. Stat. Ann. § 22:1220.

LXII.

As a direct and proximate result of the **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY 's** bad faith actions, Policyholder has suffered, and will continue to suffer, substantial damages.

LXIII.

Policyholder hereby demands trial by jury on all issues so triable.

WHEREFORE, Policyholder prays that the defendant **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** be duly served and cited to appear and answer the Complaint, and for trial by jury; and that after due proceedings, that there be judgment in favor of Policyholder and against **LOUISIANA CITIZENS FAIR PLAN** and **STATE FARM FIRE AND CASUALTY INSURANCE COMPANY** for damages as are reasonable in the premises with legal interest thereon from date of judicial demand and for all costs of these proceedings, and all general and equitable relief deemed proper by this Honorable Court.

Respectfully submitted:


Calvin C. Fayard, Jr. (La. Bar Roll #5486)
D. Blayne Honeycutt (La. Bar Roll #18264)
Wanda J. Edwards (La. Bar Roll #27448)
FAYARD & HONEYCUTT, APC
519 Florida Avenue SW
Denham Springs, LA 70726
Telephone: (225) 664-4193
Facsimile: (225) 664-6925

And


Peyton P. Murphy (La Bar Roll #22125)
MURPHY LAW FIRM
7035 Jefferson Highway
Baton Rouge, LA 70809
Telephone: (225) 928-8800
Facsimile: (225) 928-8802

09/24/2007 14:50 FAX 509 766 6265    CORT. LAW DC

State Farm Ins.    9/20/2007 3:49 PM    PAGE    3/011    Fax Server

09/20/2007 14:50 FAX 5048838812    SF RIVERSIDE SHU    → CIOS    @002/010

# STATE OF LOUISIANA
## SECRETARY OF STATE

LEGAL SERVICES SECTION
P. O. BOX 94125, BATON ROUGE, LA 70804-9125
(225) 922-0415

9/17/07

STATE FARM FIRE & CASUALTY COMPANY
STATE FARM INSURANCE COMPANIES
DAVID A. ROSS - CLAIMS MANAGER
2370 TOWNE CENTER BLVD.
BATON ROUGE, LA 70806

SUIT NO: 078941
CIVIL DISTRICT COURT
PARISH OF ORLEANS

CHRISTOPHER BLOOM, ETAL
VS
STATE FARM FIRE & CASUALTY CO.

| LEGAL DOC: |
| UNIT: |
| OFFICE: Fire Shu |
| REP: |
| CLAIM #: 18-R233-772    18 R 233 697 |

STATE FARM INSURANCE COMPANIES

Dear Sir/Madam:

I am enclosing citation served in regard to the above entitled proceeding.
Please call the attorney that filed this document if you have any questions
regarding this proceeding.  If you received this document in error, please
return it to the above address with a letter of explanation.

                    Yours very truly,

                    JAY DARDENNE
                    Secretary of State

Served on: JAY DARDENNE          Date:  9/14/07 at  3:00 PM
Served by: J. BROWN              Title: DEPUTY SHERIFF

| Received | Number | Date | Paid By | Amount |
|---|---|---|---|---|
| CHECK/M.O. | 91815 | 8/28/07 | ORLEANS CVL. SHERIFF | 35.00 |

RG                    $750.00

## NO. 663775 RECEIVED BY



SEP 1 5 2007

BATON ROUGE
OPERATION CENTER



State Farm Ins.        9/20/2007 3:49 PM  PAGE   4/011   Fax Server

09/20/2007 14:51 FAX  5048838812        SF RIVERSIDE SHU        → CIOS        @003/010

ATTORNEY'S NAME    Jacobs, Julie  23798
AND ADDRESS:       1515 poydras street, suite 800
                   New Orleans   LA 70112

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO:   2007 -- 08941        1                                    SECTION  5    -- K

BLOOM, CHRISTOPHER    ETAL VERSUS STATE FARM AND CASUALTY COMPANY

C I T A T I O N

TO:     STATE FARM FIRE AND CASUALTY COMPANY
THROUGH: THE LOUISIANA SECRETARY OF STATE

                                                    SERVED ON
                                                    JAY DARDENNE

            BATON ROUGE              LA              SEP 1 4 2007
YOU HAVE BEEN SUED:
                                                    SECRETARY OF STATE
You must either comply with the demand contained in the petition    COMMERCIAL DIVISION
NON DAMAGES
a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of
this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default

----------------------------------- ADDITIONAL INFORMATION ------------------------------------
  Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer
  Referral Service at 561 - 8828. This Referral Service operates in conjunction with the New Orleans Bar Association.
  If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp.; you
  may call 529 - 1000 for more information.
  COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE
------------------------------------------------------------------------------------------------
IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA    August 24, 2007

Clerk's Office, Room 402, Civil Courts Building,        DALE N. ATKINS,  Clerk of
421 Loyola Avenue                                        The Civil District Court
New Orleans, LA                                          for the Parish of Orleans
                                                         State of LA
                                                         by _____
                                                                    Deputy Clerk

SHERIFF'S RETURN
(for use of process servers only)

PERSONAL SERVICE                                    DOMICILIARY SERVICE

On this _____ day of _____            On this _____ day of _____
           served a copy of the w/i petition              served a copy of the w/i petition
FOR DAMAGES                                    FOR DAMAGES

On STATE FARM FIRE AND CASUALTY COMPANY        On STATE FARM FIRE AND CASUALTY COMPANY

THROUGH, THE LOUISIANA SECRETARY OF STATE      THROUGH, THE LOUISIANA SECRETARY OF STATE

                                               by leaving same at the dwelling house, or usual place of
                                               abode, in the hands of _____
                                               a person of suitable age and discretion residing therein as
            Returned same day                  a member of the domiciliary establishment, whose name
                                               and other facts connected with this service I learned by
                                               interrogating  HIM / HER the said _____
                        No. _____       STATE FARM FIRE AND CASUALTY COMPANY
  Deputy Sheriff of _____
Mileage. $_____                       being absent from the domicile at time of said service.
                                               Returned same day
  _____/ ENTERED / _____
    PAPER                     RETURN           Deputy Sheriff of    RECEIVED BY

  _____/_____/_____                                     SEP 1 5 2007
  SERIAL NO.   DEPUTY    PARISH
                                                                   BATON ROUGE
                                                                   OPERATION CENTER

State Farm Ins.          9/20/2007 3:49 PM   PAGE   5/011   Fax Server

09/20/2007 14.51 FAX  5048838012         SF RIVERSIDE SHU          → CIOS          @ 004/010

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

HURRICANE LITIGATION

CASE NO: 07-8941          SECTION: 5          DIVISION: K

CHRISTOPHER BLOOM AND GLADYS BLOOM

VERSUS

STATE FARM FIRE AND CASUALTY COMPANY

FILED ON:

DEPUTY CLERK

PETITION FOR DAMAGES

1.      Christopher Bloom and Gladys Bloom ("Plaintiffs"), complain of State Farm Fire and Casualty Company ("Defendant") and for cause of action would respectfully show the Court as follows:

I.
PARTIES

2.      Plaintiffs Christopher Bloom and Gladys Bloom were residents of Orleans Parish, Louisiana at the time this cause of action accrued.

3.      Defendant, State Farm Fire and Casualty Company is an insurance company authorized to do, and was actually doing business in Orleans Parish, Louisiana at the time this cause of action accrued. Defendant will be served through its agent for service of process, the Louisiana Secretary of State, Legal Services Sections, 8549 United Plaza Boulevard, Baton Rouge, Louisiana 70809.

II.
JURISDICTION AND VENUE

4.      Pursuant to LSA – C.C.P. Art. 6, this Court has jurisdiction over Defendant because at the time this cause of action accrued Defendant was transacting business within this Parish, and thus this Court's exercise of personal jurisdiction over Defendant is consistent with the constitution of this State and with the Constitution of the United States.

5.      Venue is proper in this Parish pursuant to LSA – C.C.P. Art. 42, 45, 76 because Plaintiffs were domiciled in this Parish at the time of the loss, because the loss occurred in this Parish and

09/24/2007 14:51 FAX 309 766 8285    CORP. LAW DC                                   007/012
Case 2:05-cv-04182-SRD-JCW   Document 13452-1   Filed 06/06/08   Page 132 of 139
State Farm Ins.        9/20/2007 3:49 PM   PAGE   6/011   Fax Server

03/20/2007 14:51 FAX  5048838812        SF RIVERSIDE SHU      + CIOS              005/010

because this action is founded upon an insurance contract which was executed in this Parish.

## III.
## BACKGROUND

6.  On August 29, 2005, Plaintiffs owned certain immovable property with improvements, and personal property located at 5761 Eastover Drive, New Orleans, LA 70128 (the "Property").

7.  The Property was insured by an all risk insurance policy issued by Defendant (policy no. 18-PO-7068-7), (the "Policy").

8.  On August 29, 2005, Hurricane Katrina made landfall in New Orleans, Louisiana causing wind damage to the Property and damages to the hurricane protection levee system that protects New Orleans and the surrounding areas. As a result of the damages to the levee system, water entered the streets of New Orleans and surrounding areas causing water damage to the Property.

9.  The water damage to the Property was not the result of flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, seepage under or over the outfall canal wall or spray from any of the above. The water intrusion and damage was a direct and proximate result of the breached levee system, which itself was directly and proximately caused by the acts and/or omissions of man, and not by natural causes.

10.  Subsequent to Hurricane Katrina, Plaintiffs made a claim and demand for payment on Defendant for wind, water and other damages to the Property (claim no. 18/8233697). To date, Defendant has refused to pay all amounts due and owing under the Policy for wind, water and other damages.

11.  At all times, Plaintiffs have complied with any and all of their obligations under the Policy.

12.  Further, in issuing the Policy, Defendant placed a valuation upon the Property. Defendant used such valuation for purposes of determining the premium charges to be made under the Policy. Defendant did not use a different method in the computation of the loss of the Property. The Policy, and any application therefore, issued by Defendant did not set forth in type of equal size a different method which was actually used in the loss computation.

13.  All conditions precedent with regard to the present action have been satisfied.

*Christopher Pharm and Gladys Bloom v. State Farm Fire and Casualty Company*
*Original Petition*
                                    2

State Farm Ins.       9/20/2007 3:49 PM   PAGE   7/011   Fax Server

09/20/2007 14:51 FAX  5048838812        SF RIVERSIDE SHU       ← CIOS            ☒006/010

IV.
CAUSES OF ACTION

14.     The facts as set forth in Section III above are incorporated by reference for all purposes.

A.  Count One – Breach of Contract.

15.     The Policy is a valid, binding and enforceable contract between Plaintiffs and Defendant. Defendant has breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Louisiana Law. Defendant's breach was a proximate cause of damages to Plaintiffs.

16.     All conditions precedent required under the under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiffs. Regardless, nonperformance of a condition precedent may be excused if its performance would cause extreme forfeiture or penalty, and/or the condition precedent it is not an essential part of the contract.

B.  Count Two – Breach of LSA-R.S. 22:1220 (Bad Faith).

17.     Pursuant to LSA-R.S. 22:1220, Defendant, an insurer, owes to his insured a duty of good faith and fair dealing. Defendant has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Defendant has breached these duties and is thus liable for any damages sustained as a result of the breach. Defendant breached its duty of good faith and fair dealing in one or more of the following ways by:

    (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue;

    (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing;

    (3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured;

    (4) Misleading a claimant as to the applicable prescriptive period;

    (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause; and

    (6) Failing to pay claims pursuant to LSA-R.S. 22:658.2 when such failure is arbitrary, capricious, or without probable cause.

*Christopher Bloom and Gladys Bloom v. State Farm Fire and Casualty Company*
*Original Petition*
                                        3

09/20/2007 14.51 FAX   5048838812          SF RIVERSIDE SMU          + CIOS .....        @007/010

18.     In addition to any general or special damages to which Plaintiffs are entitled for breach of the
imposed duty, Plaintiffs seek penalties assessed against Defendant in an amount not to exceed two
times the damages sustained or five thousand dollars, whichever is greater.

C.   County Three – Breach of LSA-R.S. 22:658 (Prompt Payment).

19.     Pursuant to LSA-R.S. 22:658, Defendant was obligated to pay Plaintiffs any amounts owed
within 30 days of proof of loss and has failed to do so.  As a result of such failure, which was
arbitrary, capricious and without probable cause, Defendant is liable for all amounts due under the
Policy, plus and additional twenty-five percent (25%).  Plaintiffs have engaged attorneys, and seek
reasonable attorneys' fees as a result of Defendant's breach of contract.

D.   Count Four – Breach of Fiduciary Duty.

20.     The relationship between the parties gives rise to a fiduciary duty owed by Defendant to
Plaintiffs.  Defendant's acts and omissions described herein constitute a breach of that fiduciary duty,
which has proximately caused damages to Plaintiffs.

E.   Count Five – Declaratory Judgment: Defendant's Flood Exclusion is Invalid and
Unenforceable.

21.     An actual controversy exists concerning Defendant's duty to provide insurance coverage for
water damage to the Property.  As such, pursuant to LSA – C.C.P. Art. 1871, et seq., Plaintiffs seek a
declaratory judgment regarding the rights, duties and obligations under the Policy.

22.     The losses suffered by Plaintiffs as a result of Hurricane Katrina are covered losses under the
all risk Policy.  Defendant is obligated by the terms and conditions of the all risk Policy to indemnify
Plaintiffs for their losses.  Defendant has refused to indemnify Plaintiffs for such losses and have
denied coverage for the losses.  Thus, Plaintiffs are entitled to a declaratory judgment that the
damages they suffered are covered losses under the all risk Policy.

23.     Specifically, Plaintiffs seek a declaratory judgment that the efficient and proximate causes of
the losses were covered perils.

24.     Further, to give the "flood" exclusions a broad reading and thus disallow the coverage for the
damages arising from this catastrophic disaster, which occurred despite the vast and expansive levees

*Christopher Bloom and Clarke Bloom v. State Farm Fire and Casualty Company*
*Original Petition*

4

existing in the greater New Orleans area, would contravene the very purpose of homeowner's policies.

25.    The reasonable expectations of Plaintiffs and other Louisiana policyholders is that "flood" encompasses overflowing of the Mississippi River, accumulation of surface water due to heavy rainfalls, or similar phenomena, but not the failing of virtually all man-made structures containing Navigable Waters of the United States surrounding the New Orleans Metropolitan Area due to negligent conduct beyond the policyholders' control.

26.    Finally, Plaintiffs should not be deprived of the coverage of the all risk Policy where Defendant has drafted vague, ambiguous and unclear limitations on coverage, thereby violating the rule that exclusions must be clearly and explicitly drafted. If so intended, and in contrast to other insurance policies available in the market, Defendant should have specifically excluded hurricane damage and/or the failure of levees as the most probable perils for the New Orleans Metropolitan Area.

27.    As a result, without resolution of this issue by declaratory judgment, Plaintiffs will be unable to remedy the damages Plaintiffs fully expected were covered by the all risk Policy.

28.    Therefore, Plaintiffs respectfully request that this Court enter a declaratory judgment against Defendant, ordering and decreeing that:

   (1) The first efficient proximate cause of the losses suffered by Plaintiffs on August 29, 2005 was "windstorm," a covered peril under the Policy, thereby rendering any subsequent impact from the water released by the levee and/or levee wall failures irrelevant to coverage afforded by the Policy;

   (2) The second efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 from the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere were acts of negligence, standard covered perils under the Policy;

   (3) The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and adjoining parishes on August 29, 2005 was "Storm Surge", a known meteorological phenomenon that is not specifically excluded by the Policy, in contrast to other insurance policies available in the market, thereby rendering any damage caused by "Storm Surge" and resulting water pressure covered under the Policy;

*Christopher Blount and Gladys Blount v. State Farm Fire and Casualty Company*
*Original Petition*                                  5

(4) The breaking or failure of boundaries of lakes, reservoirs, rivers, streams, or other bodies of water was a peril not specifically excluded by the Policy, in contrast to other insurance policies available in the market; and

(5) The damage caused by water entering the City of New Orleans and adjoining parishes from Hurricane Katrina beginning on August 29, 2005, due to the breaches in the levees and levee walls along the 17th Street Canal, London Avenue Canal, Industrial Canal, and elsewhere neither falls within the regular definition of "flood" nor within any of the Policy's exclusions of "flood".

**F.  Count Six – Declaratory Judgment: The Louisiana Value Added Policy Law Applies to the Policy.**

29.    An actual controversy exists concerning the application of La. Rev. Stat. Ann. 22:695 to the Policy. As such, pursuant to La. C.C.P. art. 1871, et seq., Plaintiffs seek a declaratory judgment that Plaintiffs are entitled to recover the face value stated in the Policy insuring the covered immovable property, without deduction or offset, pursuant to La. Rev. Stat. Ann. 22:695.

**V.
DAMAGES**

30.    Plaintiffs seek all damages available under Louisiana law, including but not limited to all amounts due under the Policy, other compensatory damages, punitive damages, interests, attorney's fees, costs, and statutory damages.

**VI.
PRAYER FOR RELIEF**

31.    WHEREFORE Plaintiffs pray for judgment against Defendant, for amounts due under the Policy, other compensatory damages, punitive damages, interests, attorney's fees, costs, statutory damages, and any further relief this Court deems equitable, just and proper.

*Christopher Blood and Gladys Blood v. State Farm Fire and Casualty Company*
Original Petition                                        6

09/20/2007 14.52 FAX  5048832812        SF RIVERSIDE SHU          CIOS              010/010

Respectfully submitted,

BRENT COON & ASSOCIATES

By: _____
    Jadie Jacobs
    Louisiana Bar No. 23796
    Douglas Kraus
    Louisiana Bar No. 26668
    Jason C. Bruzik
    Louisiana Bar No. 30418
    1515 Poydras, Suite 2200
    New Orleans, LA 70112
    Tel: (504) 566-1704
    Fax: (504) 566-1798

GRADY, SCHNEIDER & NEWMAN, LLP
    Peter B. Schneider*
    Texas State Bar No.: 00791613
    Keith Grady*
    Texas State Bar No. 00793853
    William T. Jones, Jr.*
    Texas State Bar No. 24052601
    801 Congress, 4th Floor
    Houston, Texas 77002
    Tel: (713) 228-2200
    Fax: (713) 228-2210
    *Application for admission pro hac vice to be filed

ATTORNEYS FOR PLAINTIFF

PLEASE SERVE DEFENDANT(S): Through the *Louisiana Secretary of State*, Legal Services Sections, 8549 United Plaza Boulevard, Baton Rouge, Louisiana 70809 by forwarding service to the East Baton Rouge Parish Civil Sheriff.

7

A TRUE COPY
DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA.

09/24/2007 14:50 FAX 309 766 0205    CORP. LAW DC
Case 2:05-cv-04182-SRD-JCW    Document 13452-1    Filed 06/06/08    Page 138 of 139
State Farm Ins.        9/20/2007 3:49 PM    PAGE    3/011    Fax Server

09/20/2007 14:50 FAX 5048038812        SF RIVERSIDE SHU        ~ CIOS            @002/010

# STATE OF LOUISIANA
# SECRETARY OF STATE

LEGAL SERVICES SECTION
P. O. BOX 94125, BATON ROUGE, LA 70804-9125
(225) 922-0415

9/17/07

STATE FARM FIRE & CASUALTY COMPANY
STATE FARM INSURANCE COMPANIES
DAVID A. ROSS - CLAIMS MANAGER
2170 TOWNE CENTER BLVD.
BATON ROUGE, LA  70806

SUIT NO: 078941
CIVIL DISTRICT COURT
PARISH OF ORLEANS

CHRISTOPHER BLOOM, ETAL
vs
STATE FARM FIRE & CASUALTY CO.

LEGAL DOC:
UNIT:
OFFICE: Fire Shu
REP:
CLAIM #: 18-R233-772
18 R 233 697
STATE FARM INSURANCE COMPANIES

Dear Sir/Madam:

I am enclosing citation served in regard to the above entitled proceeding.
Please call the attorney that filed this document if you have any questions
regarding this proceeding.  If you received this document in error, please
return it to the above address with a letter of explanation.

Yours very truly,

JAY DARDENNE
Secretary of State

Served on: JAY DARDENNE        Date:  9/14/07 at  3:00 PM
Served by: J. BROWN            Title: DEPUTY SHERIFF

Received    Number    Date    Paid By            Amount
CHECK/M.O.  91815    8/28/07  ORLEANS CVL. SHERIFF  35.00

RG          $750.00

NO. 663775 RECEIVED BY

DEP 1 5 2007
BATON ROUGE
OPERATION CENTER


State Farm Ins.      9/20/2007 3:49 PM   PAGE   4/011   Fax Server

09/20/2007 14:51 FAX  5048638812      SF RIVERSIDE SHU      → CIOS      @003/010

ATTORNEY'S NAME   Jacobs, Julie  23796
AND ADDRESS:      1515 Poydras street, suite 800
                  New Orleans   LA 70112

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
STATE OF LOUISIANA

NO.   2007 -- 08941       1                                      SECTION: 5   -- K

BLOOM, CHRISTOPHER    ETAL VERSUS STATE FARM AND CASUALTY COMPANY

C I T A T I O N

TO:   STATE FARM FIRE AND CASUALTY COMPANY
THROUGH: THE LOUISIANA SECRETARY OF STATE

                                                          SERVED ON
                                                          JAY DARUENNE

BATON ROUGE                   LA                          SEP 1 4 2007
YOU HAVE BEEN SUED:
                                                          SECRETARY OF STATE
You must either comply with the demand contained in the petition       COMMERCIAL DIVISION
NON DAMAGES

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk of
this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                              ADDITIONAL INFORMATION
   Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans Lawyer
   Referral Service at 561-9628. This Referral Service operates in conjunction with the New Orleans Bar Association.
   If you qualify, you may be entitled to free legal assistance through the New Orleans Legal Assistance Corp.; you
   may call 529-1000 for more information.
   COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA      August 24, 2007

Clerk's Office, Room 402, Civil Courts Building,                    DALE N. ATKINS, Clerk of
421 Loyola Avenue                                                  The Civil District Court
New Orleans, LA                                                    for the Parish of Orleans
                                                                   State of LA
                                                                   by _____
                                                                              Deputy Clerk

SHERIFF'S RETURN
(for use of process servers only)

PERSONAL SERVICE                                DOMICILIARY SERVICE

On this _____ day of _____              On this _____ day of _____
_____ served a copy of the w/n petition      _____ served a copy of the w/n petition
NON DAMAGES                                     FOR DAMAGES

On STATE FARM FIRE AND CASUALTY COMPANY         On STATE FARM FIRE AND CASUALTY COMPANY

THROUGH, THE LOUISIANA SECRETARY OF STATE       THROUGH, THE LOUISIANA SECRETARY OF STATE

                                                by leaving same at the dwelling house, or usual place of
                                                abode, in the hands of _____
                                                a person of suitable age and discretion residing therein as
             Returned same day                  a member of the domiciliary establishment, whose name
                                                and other facts connected with this service I learned by
                              No. _____     interrogating  HIM / HER the said
Deputy Sheriff of _____                     STATE FARM FIRE AND CASUALTY COMPANY
Mileage $ _____
                                                being absent from the domicile at time of said service.
_____ / ENTERED /                             Returned same day
   PAPER                RETURN                   Deputy Sheriff of  RECEIVED BY

_____   _____   _____                              SEP 1 5 2007
SERIAL NO    DEPUTY      PARISH                                     BATON ROUGE
                                                                   OPERATION CENTE