**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |  |
|---|---|---|---|
| | | * | |
| **IN RE: KATRINA CANAL** | | * | |
| **BREACHES** | | | |
| **CONSOLIDATED LITIGATION** | | * | **CIVIL ACTION** |
| | | * | |
| | | * | **NO. 05-4182** |
| | | * | **and consolidated cases** |
| **PERTAINS TO: BARGE** | | * | |
| | | * | **SECTION "K" (2)** |
| *Boutte v. Lafarge* | 05-5531 | * | |
| *Mumford v. Ingram* | 05-5724 | * | |
| *Lagarde v. Lafarge* | 06-5342 | * | **JUDGE** |
| *Perry v. Ingram* | 06-6299 | * | **STANWOOD R. DUVAL, JR.** |
| *Benoit v. Lafarge* | 06-7516 | * | |
| *Parfait Family v. USA* | 07-3500 | * | **MAGISTRATE** |
| *Lafarge v. USA* | 07-5178 | * | **JOSEPH C. WILKINSON, JR.** |
| | | * | |

**REPLY MEMORANDUM IN SUPPORT OF LAFARGE NORTH AMERICA**
**INC.'S MOTION FOR PROTECTIVE ORDER ON PLAINTIFFS' SECOND**
**RULE 30(B)(6) NOTICE**

Plaintiffs' opposition memorandum (Rec. Doc. 13416) completely fails to justify their

attempt to take a second Rule 30(b)(6) deposition of LNA.  Instead, plaintiffs misrepresent the

record in multiple respects, necessitating a brief reply memorandum.

**1.  Plaintiffs Have Already Taken a Rule 30(b)(6) Deposition of LNA in This Case.**

Plaintiffs assert, first, that "Lafarge has never been deposed in this case."  Opp. at 6-7.

This assertion is false.  This Court's Phase I case management order provided that discovery

would encompass ***all*** of the consolidated actions, including the putative class action cases that

plaintiffs now refer to as "this case".  Rec. Doc. 210 in No. 05-4419 at 1 (order applies to No.

05-4419 ***and consolidated*** cases") (emphasis added).  Plaintiffs' prior Rule 30(b)(6) deposition

notice to LNA included ***all*** of the consolidated cases, specifically including the class actions

styled as *Parfait Family* (No. 05-4237), *Boutte* (No. 05-5531) and *Mumford* (05-5724).[1]  This

Court's protective order concerning the prior Rule 30(b)(6) deposition, which set forth the scope

of permissible topics for inquiry in that deposition, was entered in "No. 05-4419 *and consol'd*

*cases*."[2]  And the transcript of the prior Rule 30(b)(6) deposition itself shows that the deposition

was taken in each of the consolidated putative class actions, as well as in the limitation action.[3]

In short, every record document concerning the prior Rule 30(b)(6) deposition of LNA confirms

that the deposition was taken "in this case."

Plaintiffs similarly assert that the prior deposition "was conducted by the claimants in

limitation" and not "Barge Plaintiffs and their proposed class."  Opp. at 7.  That assertion is also

false.  Plaintiffs' prior Rule 30(b)(6) deposition notice stated:  "You are hereby notified that

counsel for *plaintiffs* Ethel Mumford et al, The Parfait Family et al, Marie Benoit, et al, and

Blair Boutte, et al (Group A) will conduct the FRCP deposition of [LNA]."[4]  The notice

specifically referenced "plaintiffs," not "claimants in limitation."  As just quoted, the deposition

notice, the transcript, and all other related documents specifically referenced the docket numbers

of *all* of the consolidated actions.  In short, these same plaintiffs, through their same counsel, are

the ones who conducted the Rule 30(b)(6) deposition of LNA in this action.  Plaintiffs' assertion

to the contrary is simply untrue.

2. **The Previous Rule 30(b)(6) Deposition <u>Included</u> the Topics in the Current Notice.**

Plaintiffs assert that they were "precluded" from inquiring about the topics in their

current notice by the Court's "protective order during Phase I of the limitation action."  Opp. at

---

[1] LNA Mem. Exh. 1 (Rec. Doc. 291-3 in No. 05-4419).  The *Benoit* plaintiffs were also specifically included in the notice.  See *id*. at 2 (*Benoit* plaintiffs included in "Group A").

[2] LNA Mem. Exh. 2 (Rec. Doc. 317 in No. 05-4419) (emphasis added).

[3] LNA Mem. Exh. 4, Rule 30(b)(6) Deposition Transcript at 1 (caption shows deposition was taken in Nos. 05-4237, 05-5331, and 05-5724 as well as 05-4419).

LIBW/1679605.1

2-3 (citing Rec. Doc. 317 in No. 05-4419).  This assertion is, again, false.  The plain terms of the

Court's protective order, and the notice it incorporates, demonstrate that the subjects in

plaintiffs' current notice were among those allowed by the Court in the prior deposition.

As plaintiffs admit, the Court's protective order "clearly delineates which topics were

permitted, which were prohibited, and which were modified by the Court" in connection with the

prior deposition.  Opp. at 11.  But while plaintiffs complain about having been "precluded" from

inquiry on various topics, their opposition brief contains not a single reference to a topic in their

prior notice that was "prohibited" (or even "modified") by the Court in its protective order.  This

failure is no coincidence, because LNA's motion concerns only the prior topics that the Court

permitted.  Indeed, LNA provided a painstaking review of the Court's protective order and the

prior notice, including no fewer than two dozen references to specific deposition topics that the

Court expressly ***permitted*** and that are the same as the topics in plaintiffs' current notice.

Plaintiffs' response fails to take issue with any of these references, relying instead on groundless

assertions that uniformly contradict the plain terms of the Court's protective order and plaintiffs'

prior deposition notice.

Faced with precise symmetry between the previously-allowed deposition topics and the

topics of their current notice, plaintiffs nevertheless pretend (at 2) that they were not permitted to

take this discovery because Phase I "concerned only whether limitation petitioners had privity or

knowledge of acts of negligence or unseaworthiness."  Apparently plaintiffs wish to contend that

discovery about LNA was simply outside the scope of Phase I, regardless of what the Court may

have permitted or denied in its order.  That argument, too, is contrary to the record.  In denying

LNA's protective order and permitting plaintiffs to proceed on the topics in their prior notice, the

---

[4] LNA Mem. Exh. 1 at 2 (emphasis added).

3

Court necessarily found that the permitted topics *were within the scope of Phase I discovery*.

And, as plaintiffs do not and cannot deny, the topics stated in the current notice are the *same*

(often verbatim) as those in the prior notice.  Having obtained a favorable ruling allowing them

to take a broad Rule 30(b)(6) deposition of LNA on the various topics permitted by the Court,

plaintiffs cannot now legitimately contend (as they do) that those same topics "were never

permissible topics" and "were not open to discovery during Phase I."[5]  In fact, plaintiffs are

judicially estopped from taking such a position.  *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d

598, 600 (5th Cir. 2005) (judicial estoppel applies to prevent party from taking position

inconsistent with one that it previously persuaded a court to adopt).

Finally, plaintiffs assert that in conducting the prior deposition, they "took care to tread

lightly as to topics tending to elicit proof of LNA's negligence, proceeding only to the extent

needed to demonstrate limitation petitioners' privity or knowledge of their own negligence and

their vessels' unseaworthiness."  Opp. at 7.  This assertion is false.  At the prior deposition,

plaintiffs conducted a persistent and lengthy examination about matters that can only have

concerned alleged negligence by LNA, and not Ingram or Domino.[6]  But even if it were true that

plaintiffs were too timid to pursue the topics in their prior Rule 30(b)(6) notice, even after

obtaining a court ruling expressly establishing their right to do so, that does not entitle them a

second bite at the same apple.  Plaintiffs had their chance to examine LNA on every topic in their

---

[5]Opp. at 12, 13 (referring to deposition topics that are virtually verbatim repetitions of topics that the Court permitted in its Phase I protective order ruling).

[6] LNA Mem. Exh. 4 (asking about LNA's mooring practices, hurricane preparation, and investigation).  Plaintiffs' questioning at the deposition included, for instance, extended inquiry about LNA's national and local procedures and whether LNA complied with its own procedures when its employees used soft line rather than cable to moor the barges.  *Id.*, Dep. Tr. at 16-21.  The questions also included LNA's alleged negligence in not having the barge removed from its facility (*Id.*, Dep. Tr. at 100), and plaintiffs' theory about the cause of the breakaway, which is based on their assumption that the five-barge tier to the north of the ING 4727 "shifted" during the storm (*Id.*, Dep. Tr. at 124-29).

4

prior notice, except for the tiny handful of topics prohibited by the Court (none of which is relevant to this motion).  Plaintiffs are not entitled to another deposition on the same topics.

3. **Plaintiffs Supply No Justification for a Second Rule 30(b)(6) Deposition of LNA**

Plaintiffs acknowledge, or at least do not contest, that taking a second deposition of a party in a case is generally forbidden.  See LNA Mem. at 4 (citing cases); Pl. Opp. at 6 (citing Fed. R. Civ. P. 30(a)(2)(A)(ii).  Plaintiffs' failure to obtain Court approval to take a second deposition of LNA would, by itself, warrant LNA's requested protective order.

Beyond that, there are no good reasons to permit a second deposition.  Though plaintiffs say that their new notice is "vastly different in topic and scope" form their prior notice (Opp. at 9), a comparison of the actual topics in the notices reveals that they are in fact vastly duplicative in topic and scope, as shown by LNA's exacting analysis comparing the topics in the two notices, which plaintiffs fail to rebut.  Plaintiffs contend that a second deposition is justified by "disclosure or discovery after the first [d]eposition," but they never say what "disclosure or discovery" justifies a second corporate deposition of LNA in light of all the other discovery methods they have comprehensively brought to bear in the case.  Furthermore, because plaintiffs *chose* to take a broad deposition of LNA in November 2006, at a time when the could have anticipated that more information would subsequently emerge, the emergence of further information cannot justify a "do over" after the fact.  Otherwise there would be no end to the number of successive corporate depositions to which parties could subject their opponents based on the supposed emergence of "new information" in discovery.

Furthermore, plaintiffs do not dispute, in any instance, the overlap between their written discovery requests and what they now seek in a Rule 30(b)(6) deposition.  Plaintiffs appear to believe that using different methods to seek the exact same discovery is not "cumulative or

5

duplicative." Plaintiffs have no answer for the cases that instruct otherwise (see LNA Mem. at 4), so they ignore those cases. Instead, plaintiffs assert meaningless generalities, such as that the proposed deposition will provide "refinement," or "depth and specificity," or a chance to "test the validity of written responses." Opp. at 8. Not once, in addressing any specific request or deposition topic, do plaintiffs show that written discovery and fact depositions have proven inadequate to provide them with a basis for understanding the facts or evidence in this case. In this respect, plaintiffs' situation is quite distinct from the *State Farm* case that they rely on, in which a large insurance company was required to provide a Rule 30(b)(6) deposition to provide a "road map" to its business practices despite (or perhaps because of) the large volume of its prior document production regarding those practices.[7] Here, by contrast, plaintiffs do not require a "road map" into LNA's business practices or any other similar facts. Instead, this case is much more like the cases cited in LNA's opening memorandum (at 4, 8, 19-20), in which courts have refused to allow Rule 30(b)(6) discovery that is cumulative of written discovery and that seeks to co-opt the other party's distillation and analysis of the evidence.

There are numerous other defects and errors in plaintiffs' arguments. For instance, plaintiffs concede that they are, in fact, seeking untimely production of documents,[8] but persist in pursuing it. Plaintiffs similarly concede that their topics duplicate previous discovery, but tell the Court they don't care whether the requests are "old or new".[9] Plaintiffs misrepresent the Court's prior rulings denying discovery of settlement communications, portraying them instead

---

[7] *State Farm Mut. Auto Ins. Co. v. New Horizont, Inc.*, 2008 WL 1977522 (E.D. Pa. May 7, 2008), at * 6-7.

[8] Opp. Mem. at 14 (seeking production of "materials" constituting "photos, etc.").

[9] Opp. Mem. at 15 (arguing that deposition topics concerning witnesses should be allowed). As to these topics, nearly four months have passed since LNA gave plaintiffs the names and contact information for the putative class members interviewed by LNA's investigators. In the time it has taken plaintiffs to prepare and serve their duplicative Rule 30(b)(6) notice seeking repetitive discovery regarding witnesses, plaintiffs could already have interviewed these people to find out what they know.

6

as denying only the amount of the settlement.[10]  And plaintiffs wrongly seek belated and

irrelevant discovery concerning an unrelated 2006 corporate transaction by referring to "piercing

the corporate veil," even though *none* of the claims or defenses in this case even remotely raise

this issue.[11]

These are just examples.  The overall point is that plaintiffs' attempt to take a second

Rule 30(b)(6) deposition of LNA is completely unjustified and should be rejected.

## CONCLUSION

For the foregoing reasons, Defendant's motion for a protective order to limit Plaintiffs'

30(b)(6) deposition notice should be granted as to all topics set forth in the notice.

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com


 /s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**

---

[10] Opp. Mem. at 18-19 (pretending that the Court denied discovery only of the "amount" of the Murph settlement); compare Rec. Doc. 12605 at 12-14 (denying request for production of all settlement communications).

[11] Opp. Mem. at 21-22.  Plaintiffs' cited case, *Raspino v. JRL Enterprises, Inc.*, 2002 WL 465179 (E.D. La. March 25, 2002), involved express claims that the defendant was subject to suit because the corporate veil should be pierced.  This case involves no such allegations, period.

LIBW/1679605.1

Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

***Attorneys for Lafarge North America Inc.***

## Certificate of Service

I do hereby certify that I have on this 9th day of June, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ John D. Aldock

LIBW/1679605.1