UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL | * | |
| BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*          05-5531 | * | |
| *Mumford v. Ingram*      05-5724 | * | |
| *Lagarde v. Lafarge*       06-5342 | * | JUDGE |
| *Perry v. Ingram*              06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*          06-7516 | * | |
| *Parfait Family v. USA*   07-3500 | * | MAGISTRATE |
| *Lafarge v. USA*              07-5178 | * | JOSEPH C. WILKINSON, JR. |
| | * | |

**LAFARGE NORTH AMERICA INC. AND HARRY HOLLADAY'S
REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER AND MOTION TO QUASH
<u>SUBPOENA DUCES TECUM SERVICE ON HARRY HOLLADAY</u>**

Lafarge North America Inc. ("LNA") and Harry Holladay submit this reply memorandum to address plaintiffs' assertions in their Opposition [Doc. 13413] to LNA and Mr. Holladay's Motion for Protective Order and Motion to Quash a Subpoena Duces Tecum served on Harry Holladay. [Doc. 13286]

1130021-1

After Barge ING 4727 traveled through the INHC Breach, the Barge came to a rest on the Murphs' home. Mr. Murph obtained a telephone number off of the Barge and immediately began making contacts to determine the entities involved with the Barge. Exhibit A, Deposition of Arthur Murph at 206-209. After seeking out and contacting Lafarge, Mr. Murph and his wife Jeanne Murph began negotiations with LNA to resolve any claims they may have for damage to their home caused when the Barge came to rest on the Murphs' home. LNA agreed to attempt to resolve their claims.

Mr. Murph testified about communications between LNA and the Murphs prior to the Murphs agreeing to a settlement. Exhibit A at 210. Mrs. Murph is a nurse with an advanced degree (Exhibit A at 15-16), and she actively participated in the negotiations. These negotiations resulted in the February 9, 2006 Settlement Agreement, which LNA previously produced to this Court and to plaintiffs' counsel. The settlement provided funds for the Murphs to purchase a new home at 105 Berkley in New Orleans. Settlement ¶¶ 1.0, 1.2. The settlement also provides that New Jourdan L.L.C. would obtain title to the Murphs' Jourdan Avenue property. Settlement ¶ 1.2. The settlement agreement contains a provision obliging the Murphs to maintain confidentiality with respect to the settlement and its terms. There is no limitation on the Murphs' freedom to provide their account of the storm. Settlement ¶ 8.0.

Plaintiffs' memorandum tries, but utterly fails, to raise an inference that LNA exerted some sort of "pattern of oppression, threats, and sequestration" over Mr. Murph. Plaintiffs argue, first, that Mr. Murph was placed in "fear" that "revelation of his observations during the storm might be a violation of the confidentiality provisions" (pp. 3-4) based on the fact that LNA did not "advise Mr. Murph" concerning the meaning of the settlement or otherwise "grant Mr. Murph permission to speak" to plaintiffs' counsel. LNA has never had any control over the

Murphs' ability to speak to anyone, nor what might cause them fear, and nothing that LNA has said, done or agreed to implies misconduct on LNA's part. Plaintiffs' memorandum provides no support – **none** – for the allegation that LNA improperly threatened Mr. Murph with the loss of his house if he were to give his account of the underlying events in a deposition. Indeed, and to the contrary, Mr. Murph testified fully about his observations during the hurricane.

Plaintiffs' argument regarding post-settlement communications with the Murphs likewise fails to raise even the slightest inference of oppression or abuse. Plaintiffs acknowledge that, after the settlement was signed, the Murphs proved unable to convey title to the Jourdan Avenue property because they owed a second mortgage on the home, which they had not previously disclosed to LNA. Plaintiffs' Opposition at 4. It should come as no surprise that there would have been communications between LNA and the Murphs and the Priestly family, which held the mortgage, regarding what measures needed to be taken to retire the second mortgage so that clear title to the property could be conveyed as required in the settlement agreement. The fact that such communications may have occurred does not raise any inference of oppression by LNA.

The bottom line is that nothing in the history of LNA's dealing with the Murphs, or in the settlement documents, suggests that LNA had any influence over what Mr. Murph would testify he saw during Hurricane Katrina. Plaintiffs nonetheless attempt to manufacture an undue influence argument based on the notion that LNA's settlement with the Murphs was confidential, and that there were collateral mortgage provisions in the settlement securing plaintiffs' obligations. But there is nothing wrong or remarkable about parties agreeing that a settlement will be confidential. Indeed, it was the Murphs who contacted LNA and pushed this matter to settlement. LNA ultimately agreed, because the Murphs, unlike the plaintiffs in this case, owned

3

the home where the Barge landed. Although LNA agreed to settle this unique situation involving the Murphs, it did not want its actions misinterpreted by others, such as the plaintiffs in this case, and so it requested confidentiality.

Nor is there anything in the settlement that interferes with Mr. Murph's ability to testify to what he observed during Hurricane Katrina. The confidentiality provisions in the settlement relate to the terms, amount and negotiation discussions concerning the settlement. Settlement ¶ 8.0. There is nothing that prevents Mr. Murph's testimony on events that occurred before settlement discussions began. Mr. Murph has testified at length during two depositions on his observations during the storm, and confirmed that no one ever told him how to testify. Exhibit A at 258-259, 285-288.

Similarly, plaintiffs' complaint that the Murphs did not formally retain counsel during settlement discussions does not bolster its rank speculation concerning influence. The Murphs had the opportunity to review the proposed terms of the settlement with counsel. Plaintiffs' own brief confirms that the Murphs had consulted counsel regarding the settlement, even if they ultimately decided not to retain counsel.[1] They signed an affidavit at the closing of the settlement confirming that "they fully understand the … words [and] terms [of the settlement]," that "they believe [the settlement] is "fair and reasonable" and that they signed the settlement" voluntarily, of their own free will and consent." And the Murphs did subsequently formally retain Mr. Richard J. Richtofen as counsel, who actively defended Mr. Murph during Mr.

---

[1] Opp. at 15 & Exh. A. Plaintiffs obtained a partial copy of a surreptitiously-recorded statement taken by the lawyer whom Mr. Murph consulted. The redacted portions of the statement relate to the Murphs' discussion of the settlement with that same lawyer.

4

1130021-1

Murph's January 28, 2008 deposition.

Plaintiffs' real complaint here is not with the confidential settlement, but involves their disappointment with what Mr. Murph actually observed during the storm. Mr. Murph testified that he did not see the barge move at any time. Exhibit A at 60-61, 196. He further testified that although he heard a boom type noise during the storm, it did not sound like a barge hitting a flood wall. Exhibit A at 255-256.

The plaintiffs apparently believed Mr. Murph would testify differently based on an incomplete (and apparently unauthorized) recording of January 25, 2006 that plaintiffs claim they obtained from another lawyer – Mr. Guidry of the Cochran Law Firm. Exhibit A at 68, 178. Notably, Mr. Murph did not recall ever authorizing a recording or giving a statement, and never remembered going to Mr. Guidry's office. Exhibit A at 286-288. Moreover, Mr. Murph testified that the purported statement did not help him remember what he saw during Katrina, and he testified at deposition based solely on his memory of what occurred. Exhibit A at 286-290. The purported statement in no way supports plaintiffs' speculation of undue influence in this case, and plaintiffs have no basis for the extraordinary step of deposing LNA's counsel, Harry Holladay.

> **1. Plaintiffs have not and cannot establish grounds allowing them to take LNA's counsel's deposition.**

There is no question that Harry Holladay is counsel for LNA, and served as LNA's counsel during the settlement with the Murphs. Indeed, plaintiffs' Opposition is filled with allegations that Mr. Holladay has information concerning the negotiations with the Murphs. Nonetheless, plaintiffs rely on *Roeben v. BG Excelsior*, 2007 U.S. Dist. LEXIS 76215 (E.D. Ark. Oct. 10, 2007) for the proposition that Harry Holladay is not opposing counsel because he is not enrolled as trial counsel. This situation is nothing like *Roeben*. In *Roeben*, the plaintiffs sought

to depose a business executive of the defendant and although the executive was also a lawyer, he freely admitted that he did not represent the defendant in a legal capacity. Certainly, Mr. Holladay does represent LNA in the capacity as a lawyer. Plaintiffs therefore cannot depose him without satisfying the three requirements discussed by this Court in *Certain Underwriters at Lloyd's London v. Penthouse Owner's Association*, 2008 U.S. Dist. LEXIS 33727 (E.D. La. April 24, 2008), specifically (1) there are no other means to obtain the information; (2) the information is relevant and not privileged, and (3) the information is crucial to plaintiff's case.

Furthermore, plaintiffs have not and cannot satisfy this three part test for deposing Mr. Holladay. Plaintiffs assert that they need to depose Mr. Holladay concerning advice he allegedly provided the Murphs. But Mr. Murph testified he did not receive any advice from Chaffe McCall or Mr. Holladay (Exhibit A at 216), and the settlement that the Murphs signed states that fact. Plaintiffs also claim they need to know details about the confidentiality conditions of the Settlement Agreement. However, those provisions are detailed in the settlement, which plaintiffs have in their possession. Plaintiffs further claim they need information concerning the source of funds and details on the entities formed in connection with the settlement. But in addition to being irrelevant, the information is available through review of the settlement, and from documents plaintiffs have received by subpoena from third parties and through deposing Mr. Murph.

Second, the information they seek from Mr. Holladay is not discoverable. This Court has already denied plaintiffs access to that information. *See* Rec. Doc. 12605 dated April 21, 2008, in No. 05-4182, and Rec. Doc. 535 dated February 15, 2007, in No. 05-4419. Plaintiffs should not be allowed to obtain irrelevant information from LNA's counsel that the Court has previously denied when it was sought directly from LNA.

Finally, plaintiffs assert in their opposition that the information from Mr. Holladay is crucial because they believe that Mr. Murph somehow changed his version of the facts because of the settlement. Plaintiffs cross-examined Mr. Murph at length concerning his observations during the storm with the settlement and with a purported inconsistent (and incomplete) statement that Mr. Murph purportedly gave to Mr. Guidry, a lawyer at the Cochran Law Firm, allegedly obtained from Mr. Murph on January 25, 2006. *See* Exhibit A, Deposition of Arthur Murph at 68 and 178. So plaintiffs had in their possession, before they deposed Mr. Murph, the settlement, settlement-related documents and a purported statement from Mr. Murph. Mr. Holladay's deposition testimony is certainly not crucial to their case.

**2.   This Court has already barred plaintiffs' attempts to obtain discovery concerning communications between Mr. Holladay and Mr. Murph.**

This Court's Order on April 21, 2008 denied plaintiffs' Motion to Compel Discovery concerning plaintiffs' Request for Production No. 15 to LNA, which sought "any and all communications" between Mr. Holladay and Mr. Murph. That necessarily includes anything that plaintiffs may seek at Mr. Holladay's deposition. *See* Rec. Doc. 12605 dated April 21, 2008 in No. 05-4182 at 12-13. Plaintiffs now argue that they seek to go beyond their prior request. However, they admit that they seek Mr. Holladay's deposition to discover "communications between Mr. Holladay, Chaffe McCall, Mr. Murph and others …." *See* plaintiffs' Opposition at 14-15. *See also* p. 16 of plaintiffs' Opposition ("Plaintiffs are interested in … the communications between Mr. Holladay and Mr. Murph."). Again, plaintiffs cannot obtain from LNA's counsel (Mr. Holladay) the information that this Court held that they can not obtain from LNA directly.

Plaintiffs' only response to this Court's prior unambiguous orders is their erroneous assertions that the Court did not have before it facts and documentation regarding the actions of

7

1130021-1

Harry Holladay, LNA's insurers and their attorneys when it denied plaintiffs' Motion to Compel on April 21, 2008. But plaintiffs had the settlement, and they had documents from third parties Crescent Bank and True Title when they deposed Mr. Murph on January 28, 2008, and well before plaintiffs filed their Motion to Compel on March 7, 2008, when they sought <u>all</u> communications between Mr. Murph and Mr. Holladay. The Court correctly denied plaintiffs' attempt to obtain from LNA Mr. Holladay's communications with Mr. Murph, and plaintiffs should not now be allowed to obtain that same information directly from Mr. Holladay. There is no reason that this Court should upset its prior orders in this matter.

## CONCLUSION

This Court should grant LNA and Mr. Holladay's Motion for Protective Order and Motion to Quash Plaintiffs' Subpoena to Mr. Holladay.

Respectfully submitted,

/s/ Derek A. Walker
Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone: (202) 346-4240

8

1130021-1

                                              Daniel A. Webb (#13294)
                                              **SUTTERFIELD & WEBB, LLC**
                                              Poydras Center
                                              650 Poydras Street, Suite 2715
                                              New Orleans, LA 70130
                                              Telephone:  (504) 598-2715
                                              *Attorneys for Lafarge North America Inc.*
                                              *and Harry Holladay*

## Certificate of Service

    I do hereby certify that I have on this 9th day of June, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

                                                /s/ Derek A. Walker