UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 "K"(2) |
| | * | JUDGE DUVAL |
| | * | MAG. WILKINSON |
| | * | |
| | * | |
| | * | |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State* C.A. No. 07-5528 | * | |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
FOR ENTRY OF CASE MANAGEMENT ORDER
ESTABLISHING ROAD HOME SETTLEMENT PROTOCOL**

Insurer Defendants, through Liaison Counsel, Ralph S. Hubbard III, submit this reply brief in further support of their motion seeking entry of a proposed Case Management Order ("CMO") establishing a protocol for the Road Home Program's review of insurance settlements entered into between Road Home grant recipients and the Insurer Defendants named in the Road Home Action.

**I.      The Court Has Jurisdiction**

The State first claims that the Court lacks jurisdiction to enter the proposed order based upon the Fifth Circuit's recent ruling *affirming* this Court's denial of the State's motion to remand. While the Fifth Circuit's opinion referenced the possibility of splitting this action and remanding a portion of the case to state court, *see In re Katrina Canal Breaches Litig.*, 524 F.3d 700, 711-12 (5th Cir. 2008), that was only a litigation

1

management suggestion, and the Fifth Circuit specifically upheld this Court's denial of remand and the concomitant conclusion that jurisdiction did exist.  Indeed, the Fifth Circuit reached no conclusion as to whether part of the case could be remanded, instead stating that it "express[ed] no opinion regarding either the permissible or the practicable segmenting of this case," *id.* at 712, and further noting that "[w]here an assignment or subrogation is partial in Louisiana, the failure to include either of the contracting parties in a suit constitutes nonjoinder of a necessary party." *Id.* at 707 n.19.

## II.    The Proposed CMO Will Help Reduce Delays in Settlement Approval

The State next resists entry of the proposed CMO by deflecting blame for delays in the State's action on insurance settlements onto insurers and lenders.  Specifically, the State claims insurers have refused to provide information without entry of a protective order and/or have been providing incomplete submissions.  The protective order issue has now been litigated and resolved by the Court, but the fact that some insurers chose not to provide information while the protective order request was pending does not explain why the State did not (and in many cases still has not) acted upon those settlements for which information was submitted.  The problem is not delays in settlement packages being submitted, but delays in the Road Home's action on those packages which are submitted.  Even while the protective order motion was pending, some insurers elected to provide information to the State subject to a reservation of rights agreed to by the State.  If the State was unable to act in a timely manner on that smaller number of submissions, there is no reason to believe that, without the Court's adoption of a settlement protocol, the State will be any more expeditious now that the protective order issue has been resolved and information will be provided on a greater number of settlements.

In any event, even if it were true that incomplete information has been provided in certain instances, that should not grant the State license to simply sit on settlements for an indefinite period of time. If the information provided is incomplete, the State should be expected to at least initiate communications in an attempt to rectify any claimed incompleteness. In fact, the proposed CMO would actually help ensure that complete information is provided to the State. The very first provision of the proposed CMO orders insurers to complete Exhibit A and provide it to counsel for the policyholder and the obligations and deadlines imposed by the remainder of the CMO are only triggered upon the insurer's provision of information. Further, paragraph 6 of the proposed CMO would require an insurer or insured seeking a settlement conference to certify that "all necessary information has been tendered to the State." Therefore, even if it were true that insurers and/or insureds have failed to provide information or have provided incomplete information, this would actually support entry of the CMO.

The State also references the refusal of insurers to issue checks prior to Road Home approval of a settlement as a "source of delay." First, it is unclear how an insurer's refusal to issue a check pending Road Home approval serves to delay the Road Home approval process. Whether or not a check has been issued to the insured does not factor into the State's analysis and is not even information requested by the State on either Exhibit A or Exhibit B. In any event, it is entirely proper and reasonable for insurers to decline to distribute funds prior to resolution of the issue of to whom those funds are to be distributed.

Even if any of the delays experienced in obtaining Road Home approval of settlements were not attributable to the State, that would only be further reason why the

proposed CMO should be entered.  The proposed CMO makes all parties—the policyholder, the insurer, and Road Home—accountable for delays and provides a mechanism by which to deal with the failures or omissions that produce delays.

### III. The Proposed CMO Would Not Frustrate Road Home Policies and Procedures

The State also claims that "[t]here is a built in appeals process for a plaintiff to pursue should he or she be dissatisfied with the recovery sought by the Road Home Program" and that entry of the proposed CMO would "usurp" the State's claimed administrative appeal procedures.  However, it is not at all apparent that any such appeal process exists to be "usurped."  Road Home policies and procedures do provide for administrative appeals of eligibility decisions, denials of additional compensation grants, and the "amount of benefit compensation" including, *inter alia*, "amount of Insurance payments."   (*See Road Home* Appeals and Second Disbursements, *available at* http://www.road2la.org/Docs/policies/Appeals%20and%20Second%20Disbusements.pdf, and attached hereto as Exhibit 1.)  But this appeal option by its terms relates to the grant application and determination process, not the State's later exercise of its claimed rights under the Subrogation / Assignment Agreement after a grant has been awarded and a closing has taken place.  Indeed, any appeal must be submitted within 90 days from the date postmarked on the "Resolution letter" reflecting Road Home's decision on a grant application or the date of the first closing.  (*See id.* at 3.)

Even if there were an appeal process by which insureds could challenge the State's claim to some or all of an insured's proceeds from a post-grant insurance settlement, the proposed CMO would not disrupt that process.  Instead, it would provide an impetus for the State to make a timely decision on a settlement submitted for review.

As the Court is aware, the central problem has been the State's unexplained and unreasonable delays in making decisions on settlement submissions.  Thus, it is disingenuous for the State to rely upon claimed disruption to a purported administrative appeals process that could not even come into play until after a decision is made in an effort to avoid an order that would require the State to make at least an initial decision within the timeframe Road Home representatives have repeatedly said is a sufficient period in which complete a review.  In addition, the proposed CMO would provide a mechanism by which insureds, insurers, and the State could attempt to resolve their competing interests by settlement with the assistance of the Court.  As the Court is aware, where the State has taken action on settlements submitted for review, it has often done so only when spurred by the prospect of judicial involvement.

### IV.     Insurers Should Not Be Obligated to Do the State's Job For It

The State continues to argue that insurers should be required to provide copies of Exhibit B to settling insureds, but there is no basis for making insurers responsible for informing policyholders of the State's requirements for review of insurance settlements. The settlement review process is a product of the State's agreement with Road Home participants designed to promote the State's interests, and it is the responsibility of the State to make those efforts necessary to effectuate its claimed interests and rights.  As a practical matter, many insurers will likely provide the protocol and exhibits to policyholders with whom they are settling insurance claims in order to facilitate and expedite the settlement review process, but the State is ultimately responsible for enforcing its own rights and should be responsible for providing necessary information to its grant recipients.

### V.     Conclusion

For the reasons stated above and in the Insurer Defendants' opening brief, the Court should enter the proposed CMO.

>Respectfully submitted:
>
>*/s/ Ralph S. Hubbard, III*
>Ralph S. Hubbard III, T.A., La. Bar No. 7040
>Seth A. Schmeeckle, La. Bar No. 27076
>LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
>601 Poydras Street, Suite 2775
>New Orleans, Louisiana 70130
>Telephone:    (504) 568-1990
>Facsimile:     (504) 310-9195
>Email:           rhubbard@lawla.com
>                     sschmeeckle@lawla.com
>
>**Insurer Defendants Liaison Counsel**

### CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June, 2008, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to all CM/ECF participants and I hereby certify that I have mailed by United States Postal Service the document to all non-CM/ECF participants.

>/s/ Ralph S. Hubbard, III
>Ralph S. Hubbard III