UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES                          CIVIL ACTION
        CONSOLIDATED LITIGATION

                                                                                              NO. 05-4182

PERTAINS TO: LEVEE                                      SECTION "K"(2)
                DEPASS, 06-5127
                BOURGEOIS, 06-5131
                SIMS, 06-5116

**ORDER AND REASONS**

Before the Court are three motions to dismiss by Defendant Sewerage and Water Board of New Orleans ("SWB") pursuant to Federal Rules 12(b)(6) and 12(c). The motions to dismiss pertain to three cases consolidated within the *In re Katrina Canal Breaches Consolidated Litigation*, Civ. A. No. 05-4182. They are the *DePass* case, Civ. A. No. 06-5127 (Motion to Dismiss at Rec. Doc. 8893), the *Bourgeois* case, Civ. A. No. 06-5131 (Motion to Dismiss at Rec. Doc. 9007), and the *Sims* case, Civ. A. No. 06-5116 (Motion to Dismiss at Rec. Doc. 9009). The three motions are virtually identical, however, and therefore this Court will refer to Rec. Doc. 8893 for the purposes of this motion ("Mot."). To these three motions, the Plaintiffs have replied with one consolidated opposition. (Rec. Doc. 10005) ("Opp."). SWB has filed a consolidated reply. (Rec. Doc. 11155) ("Reply"). For the following reasons, the motions to dismiss will be granted in part and denied in part.

1

**I. BACKGROUND**

As with all cases consolidated in this litigation, the present matter arises out of alleged negligence and defalcations in relation to Hurricane Katrina's devastation of New Orleans. These particular cases allege that the SWB was negligent in maintaining drainage structures in and around New Orleans prior to the hurricane, and that SWB was negligent in operating these structures during and immediately after the storm. These structures include pumps and drainage canals that are designed to transport excess flood water out of the city to Lake Pontchartrain. The Plaintiffs in *Depass* and *Sims* are residents on the Metairie and Carrolton/Hollygrove sides of the 17th Street Canal, respectively, which flooded during Katrina. The *Sims* Plaintiffs also allegedly suffered damage from the flooding of the Orleans and New London Canals. The *Bourgeois* Plaintiffs are residents of the Gentilly neighborhood, and they also suffered damage from flooding of the Orleans and New London Canals.

Plaintiffs herein bring several claims against SWB. First, they allege a negligence claim against SWB, asserting that SWB failed to maintain canals and manage the flooding through pumps during Katrina. *See* First Amended Complaint ¶ 75.11 ("First Am. Compl."), Civ. A. No. 05-4182, Civ. A. No. 06-5127 (Rec. Doc. 1254). The Plaintiffs also make allegations of defalcations concerning the SWB's garde, or custody, of the canals and pumping stations that failed during the hurricane, averring that these failures violate La. Rev. Stat. 9:2800. Opp. at 10. Plaintiffs further base SWB's liability on various acts of assurance allegedly made between SWB and the United States, in which the SWB apparently agreed to competently operate the levee system.

SWB claims that dismissal is appropriate because it enjoys statutory immunity from the

actions that it took in relation to emergency preparedness and response to Hurricane Katrina. Mot. at 10.  SWB further asserts that it did not have *garde* over New Orleans' levees and canals, and even if it did, SWB has further statutory immunity from any damage caused during Hurricane Katrina as a result of negligent management of any structure. Mot. at 12-13.  Finally, SWB asserts that the acts of assurances are not a basis for liability because they confer no third party cause of action and, even if it did, Plaintiffs cannot point to any facts showing that SWB breached any of these assurances.

## II.  ANALYSIS

The motions under consideration here seek dismissal under Rule 12(b)(6) and, alternatively, Rule 12(c).  "Under Rule 12(b)(6), a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief."  *Lane ex rel. Lane v. Halliburton*, --- F.3d ----, 2008 WL 2191200, at *4 (5th Cir. 2008), *citing Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1965-66, 167 L.Ed.2d 929 (2007).  "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."  *Doe v. MySpace, Inc.*, --- F.3d ----, 2008 WL 2068064, at *3 (5th Cir. 2008) (citations omitted).  Thus, under both standards, this Court is restricted to looking only "at the pleadings and accept[ing] all allegations in them as true."  *Cuvillier v. Taylor*, 503 F.3d 397, 402 (5th Cir. 2007), *quoting St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991).  The Court notes that jurisdiction herein is proper because the United States is still joined in this action as a party, and therefore the present matter falls within this Court's supplemental jurisdiction under 28

U.S.C. § 1367. *In re Katrina Canal Breaches Consol. Litig.*, Civ. A. No. 05-4182, Civ. A. No. 06-5127, 2007 WL 3003168, at *4 (E.D. La. Oct. 12, 2007) (Duval, J.) (prior order in this case holding that supplemental jurisdiction over claim against parish government to be appropriate where United States was still a party).

**A.  Allegations Concerning Negligence in Operating and Maintaining Flood Control Structures**

The Plaintiffs claim first that SWB was negligent in operating the various flood control structures.  For instance, in the *DePass* case, Plaintiffs aver that SWB was "negligent in failing to close the drainage lines to prevent the back flow from the 17th Street Canal into Metairie, which flooded Plaintiffs' properties," and that it was "negligent in failing to halt the pumping at feeder stations . . . thus pumping flood and rain water into the 17th Street Canal and into Hoey Canal, damaging plaintiffs' property." Complaint ("Compl.") ¶¶ 76, 79, Civ. A. No. 06-5127 (Rec. Doc. 1).  Assuming Plaintiffs' allegations to be true, however, there appears no means by which they can recover for these alleged defalcations by SWB.

As pointed out by Defendant, those actions taken by it during Hurricane Katrina have been immunized from liability.  As explained by this Court in dismissing Jefferson Parish, another local governmental entity, from this case:

> In 1993, by Acts 1993 No. 800 § 1, the Louisiana Legislature enacted the "Louisiana Homeland Security and Emergency Assistance and Disaster Act" (hereinafter, "the Act") [La. Rev. Stat. 29:721 to 29:736].  The Legislature found the Act necessary:
>
>> Because of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from terrorist events, enemy attack,

> sabotage, or other hostile action, or from fire, flood, earthquake, or other natural or man-made causes (and) to reduce vulnerability of people and communities of this state to damage, injury and loss of life and property resulting from natural and man-made catastrophes.

[La. Rev. Stat. 29:722(A) and (A)(4) (emphasis added)].  In addition to empowering the Governor, Parish Presidents and others within the Executive branch of government to enact procedures to prepare for such natural and man-made disasters, the Legislature also granted immunity to the State's political subdivisions and their employees, providing as follows:

> A.  Neither the state nor any political subdivision thereof, nor other agencies, nor, except in the case of willful misconduct, the agents' employees, or representatives of any of them, engaged in any homeland security and emergency preparedness activities, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons, or damage to property, as a result of such activity.

La. Rev. Stat. 29:735(A).

*In re Katrina Canal Breaches Consol. Litig.*, Civ. A. No. 05-4182, Civ. A. No. 06-5127, 2007 WL 3003168, at *5 (E.D. La. Oct. 12, 2007).  Here, the moving party is SWB, clearly a political subdivision.  Moreover, there appears no allegation of willful misconduct as the complaint only alleges negligent conduct by SWB.  Emergency preparedness is defined within the statutory language as encompassing "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters," La. Rev. Stat. 29:723(3), a definition that reasonably includes the operation of water pumping systems during a hurricane or flood.  Accordingly, consistent with this Court's prior decision in this matter, SWB is immunized from liability for any possible negligent operation of the pumping stations and systems during Hurricane Katrina.

However, those actions strictly alleging negligence in maintaining drainage structures prior to Hurricane Katrina appear not to be barred.  Specifically, Plaintiffs claim that SWB "is

liable for failure to maintain the drainage canals as required by state law." Compl. ¶ 72. This allegation of negligence is not one that was contemporaneous to the hurricane, and it was not directly in preparation for a hurricane, thus it does not concern emergency preparedness. Moreover, this allegation is not one based on SWB's alleged garde, or custody, over these flood drainage facilities, and therefore does not receive immunity under the statutory grant of La. Rev. Stat. 9:2800(H), as further discussed in Part B, *infra*. Therefore, those allegations specifically asserting negligence with regards to the maintenance of flood drainage facilities by SWB will not be dismissed.

**B. Allegations Concerning Garde Over Water Pumping Stations**

Plaintiffs also assert claims against SWB regarding SWB's alleged garde, or custody, over the water pumping system. As alleged in the *DePass* complaint, "The Sewerage & Water Board is liable under Civil Code Article 2322 for the deterioration of the levees and the levee imposements and structures known to it before the events causing loss and damage and the failure to repair same." Compl. ¶ 71. In the following complaint, Plaintiffs assert that SWB "exercised control over the 17th Street Canal." First Am. Compl. ¶ 75.4. They claim that SWB "owns and possesses a fractional interest in the 17th Street Canal" and other structures involved in flood management that it allegedly failed to operate in an effective manner during Hurricane Katrina. First Am. Compl. ¶ 75.10.

Plaintiffs' claims on this point also fail. The claim concerning SWB's garde over the pumping stations was similarly pleaded against the Port of New Orleans in this matter. This Court, in an order dated October 12, 2007, dismissed those claims against the Port of New

Orleans on two bases.  PNO Dismissal Order, Civ. A. No. 05-4182, Oct. 12, 2007 (Rec. Doc. 8389).  First, this Court found that Section H of La. Rev. Stat. 9:2800 provided immunity for the Port of New Orleans for any suit under Civil Code Article 2317 for any damage arising from Hurricanes Katrina and Rita.[1]  PNO Dismissal Order at 2.  As stated by this Court previously, "[b]y operation of this statute, all claims for defalcations arising from the garde of any levee or flood gates are barred if brought against a public body." *Id.*

Moreover, however, the Plaintiffs cannot successfully aver that SWB has any garde over the flood water pump system.  That duty is held by the Orleans Levee District alone.  In a prior order by this Court, the Port of New Orleans was dismissed from this case because the allegations that the Port of New Orleans had custody over the levees was baseless; the Orleans

---

[1]Civil Code Article 2317 reads, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."  La. Civ. Code art. 2317.  Turning to section 9:2800, liability is extended to public entities: "A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody."  La. Rev. Stat. 9:2800(A).  However, subsection (H), the hurricane immunity provision, states:

> H. (1) Notwithstanding any provision of law to the contrary, except for gross negligence or willful and wanton misconduct, no person shall have a cause of action based solely upon liability imposed under Civil Code Articles 2317 and 2317.1 against a public entity for any damages arising from hurricanes Katrina or Rita, including aftereffects of either hurricane and post-hurricane restoration, repair, cleaning, and construction.
>
> (2) The provisions of this Subsection shall expire on August 30, 2008.
>
> (3) The provisions of this Subsection shall supersede and control to the extent of conflict with any other provisions of law.
>
> (4) The provisions of this Subsection shall be given retroactive application to August 26, 2005.

La. Rev. Stat. 9:2800(H).

7

Levee District clearly has custody over the levee system. As explained by this Court:

> Furthermore, the maintenance of the levees involved would be the duty of the Orleans Levee District, not the [Port of New Orleans] Dock Board. It is primarily the state's duty to protect citizens from damage by flood which is inherent within its police power. "Such power, however, belongs to the state; the police power may be exercised by agencies of the state only under delegation of authority. The state retains the right to recall, abrogate, or modify the delegation." *Board of Comm'rs of Orleans Levee Dist. v. Dep't of Natural Resources of the State of La.*, 493 So.2d 281, 288-89 (La. 1986). Thus, a levee board is a creature or agency of the state brought into existence for the purpose of discharging the state's duties of flood protection. *Id.*
>
> This delegation is manifested in La. Rev. Stat. 38:281(6), which provides that a levee district "means a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, drainage, and all other things incidental thereto within its territorial limits." In addition, La. Rev. Stat. 38:325(A)(1) and (2) mandates that levee boards engage in any activities related to flood protection and maintenance of levees. Finally, La. Rev. Stat. 38:307 provides that Orleans Levee District "shall have full and exclusive right, jurisdiction, power, and authority" with respect to the levees. Thus, these claims are without merit.

PNO Dismissal Order at 2-3; *see* Order, Civ. A. No. 05-4182, Sept. 13, 2006 (Rec. Doc. 1133) (dismissing claims against City of New Orleans because it "does not own and has no *garde*, care, custody or control of the levees in question"). Similarly, it is clear in this case that the SWB indeed did not have garde over the flood water pumping system. Custody over the flood system is held by the levee districts. Therefore, Plaintiffs' claims asserting negligence in the custody or garde of the flood pumps must be dismissed.

**C. Alleged Violations of Assurances**

Plaintiffs lastly claim that SWB violated various assurances that it entered into with the

8

United States.  Plaintiffs allege as follows:

> ¶ 57.   The defendant Sewerage & Water Board is sued under a first Act of Assurance given under dates of February 18, 1997, pursuant to and in furtherance of Public Law 298 of the 89th Congress which authorized the construction of the Lake Pontchartrain, Louisiana Vicinity Hurricane Protection Project, and the Reevaluation Study, dated December 1983, approved February 7th 1985 which authorized the construction of the High Level Plan, and agreed to hold and save the Government free from damages due to the construction works;
>
> ¶ 58.   Under the second Act of Assurance the Sewerage & Water Board assured the Secretary of the Army that it had the authority and capability to furnish local cooperation required by federal legislation authorizing the fronting protection to pumping station No. 6 located at the 17th Street Canal, and with the consent of the Orleans Levee District and the East Jefferson Levee District in which it "agree(d) that it will:
>     (a) Hold and save the Government free from all damages arising from the operation, maintenance repair replacement and rehabilitation of the fronting project, and any fronting project related to betterments, except for damages due to the fault of the Government or Government contractors;"

Compl. ¶¶ 57-58.

Assuming even that these allegations described some sort of violation of these assurances by the SWB, Plaintiffs cannot found a claim on such violations.  The Fifth Circuit has held that such assurances between government entities do not establish a cause of action by a third party for any violations of such assurances.  As stated by that court in *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211 (5th Cir. 2000):

> The plaintiffs' evidence citing to the RRWC's legal authority to manage the waterway and to acquire property, and the RRWC's "acts of assurance" to the United States does not controvert the fact that the RRWC never exercised any authority that it might have had to raise water levels and thereby damage the plaintiffs' property. Furthermore, the Corps of Engineers' potential right to seek indemnification from the RRWC does not confer power upon the plaintiffs to file suit against the RRWC. *See Soileau v. Yates Drilling Co.,* 183 So.2d 62, 64-65 (La. App. Ct.1966) (holding that indemnity clause does not confer cause of action

r

in favor of third parties) and *Haeuser v. Bd. of Comm'rs of the Port of New Orleans,* 170 So.2d 728, 729 (La. App. Ct.1965) ("Plaintiffs have no direct action against Defendant for such recovery, since Defendant, or the State, if liable, is answerable only to the United States in a proper proceeding.").

*Id.* at 215.  There is no language in the assurances cited by the Plaintiffs that would establish any cause of action by a third party against the SWB.  Therefore, these assurances cannot serve as a basis for Plaintiffs' cause of action here.[2]

---

[2]This Court notes that these acts of assurance affirm that SWB does not have custody over the flood management system considering that it could only grant such assurance "with the consent of the Orleans Levee District and the East Jefferson Levee District."  Compl. ¶ 58.

### III.  CONCLUSION

For the reasons cited herein, accordingly,

**IT IS ORDERED** that Defendant's Motions to Dismiss in the *DePass* case, (Rec. Doc. 8893), the *Bourgeois* case, (Rec. Doc. 9007), and the *Sims* case, (Rec. Doc. 9009), are hereby **GRANTED IN PART AND DENIED IN PART.**  Those claims regarding the Sewerage and Water Board's alleged negligence in maintaining flood control structures are not dismissed.  All other claims against the Sewerage and Water Board are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this ___24th___ day of June, 2008.

　　　　　　　　　　　　　　　　　　**STANWOOD R. DUVAL, JR.**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**