UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES <br> CONSOLIDATED LITIGATION <br> _____ <br><br> PERTAINS TO: MRGO, *Robinson* (06-2268) <br> _____ | § <br> § <br> § <br> § <br> § <br> § | CIVIL ACTION <br> NO. 05-4182 "K" (2) <br> JUDGE DUVAL <br> MAG. WILKINSON |

**DEFENDANT UNITED STATES' SUPPLEMENTAL BRIEF IN OPPOSITION
TO PLAINTIFFS' PROPOSED NOTICE OF DEPOSITION
OF THE ARMY CORPS OF ENGINEERS**

**INTRODUCTION**

On Monday, June 23, 2008, Plaintiffs served and filed a proposed notice of deposition of the Army Corps of Engineers. Attached to the notice was a lengthy list of descriptions of the "matters for examination" at the deposition. Although the list ostensibly included 168 separate descriptions, many of the descriptions were repeated several times in whole or in part. Some descriptions were repeated verbatim six or seven times. Not fewer than 60 descriptions pertain to the environmental impact of the Mississippi River-Gulf Outlet ("MRGO"). More than 20 descriptions pertain to erosion along the MRGO, and an equal number pertain to the hydrologic role of the waterway during hurricanes. More than 70 times the "matter for examination" is "[e]valuations by the Corps" "relative to" or "regarding" a broadly described subject.

-1-

At least some of the repetition is intentional, designed to make clear that certain topics pertain to the entire time span of the MRGO project—a period of more than 60 years. But even when identical or virtually identical topics are collapsed, the list sets forth more than 50 different "matters for examination." These matters are described so broadly as to encompass virtually every activity of the Corps with respect to not only the MRGO but also the design and construction of the levees along the MRGO, the GIWW, and the IHNC. By resorting to catch-all descriptions that fail to focus on specific activities and specific times, Plaintiffs' proposed deposition notice patently fails to comply with the Rule 30(b)(6) requirement that matters be described with "reasonable particularity." Plaintiffs' proposed notice should therefore be quashed, and Plaintiffs should be prohibited from issuing any further notice that fails to "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6).

## ARGUMENT

### Plaintiffs' motion should be denied because the matters which Plaintiffs propose for examination under Rule 30(b)(6) are not described with reasonable particularity.

More than two years ago, on April 2, 2006, Plaintiffs filed their "Complaint for Damages Caused by the Design, Construction, Operation, and Maintenance of the Mississippi River Gulf Outlet." Record Doc. 1-1 (Case No. 06-2268). More than one year ago, in April of 2007, discovery commenced. Now, at the eleventh hour, after fourteen months of discovery and less than three weeks from the extended deadline for the completion of fact discovery, Plaintiffs assert that they are unable to frame a request for testimony under Fed. R. Civ. P. 30(b)(6) with any specificity. The vague and conclusory descriptions in their proposed deposition notice echo the vague and conclusory allegations that formed the basis of their original complaint. Although

the descriptions of matters for examination are grouped into seven "eras," they generally track and are framed as broadly as, the Complaint's assertion that "the design, construction, operation, and maintenance of the MR-GO" destroyed wetlands and increased storm surge. *Compare, e.g.,* Complaint ¶ 2 ("[D]esign, construction, operation, and maintenance of the MR-GO eradicated . . . marshland . . . . Such destruction of the MR-GO marshland greatly exacerbated an east-west storm surge during Hurricane Katrina.") *and id.* ¶ 3 ("MR-GO creates a funnel effect . . . , furiously accelerating the power and force of the storm surge.") *with* Proposed Notice Exh. A ¶ 22 ("The design, construction, operation and maintenance of the Mississippi River-Gulf Outlet . . . ."), ¶ 24 ("The design, construction, operation and maintenance of the Citrus Back Levee, New Orleans East Levee, or the New Orleans East Back Levee . . . ."), ¶ 25 ("The design, construction, operation and maintenance of" any levees along the MRGO), ¶¶ 15, 35, 51, 68, 117, 138 ("Evaluations by the Corps regarding 'storm surges' within the MR-GO, Lake Borgne, Lake Pontchartrain, the IHNC, the GIWW and their relationship to the design, construction, operations, maintenance, dredging, or existence of part or parts of the MR-GO, individually or collectively."), ¶¶ 17, 18, 37, 38, 53, 54, 70, 71, 97. 98, 100, 101, 119, 120, 140, 141 ("Evaluations by the Corps relative to any and all other defects, inadequacies, or conditions posing a potential risk to public health, safety, or property (including what is sometimes referred to as the 'funnel' effect) of whatever nature . . . .").[1]

Plaintiffs' unwillingness to focus their proposed examination under Rule 30(b)(6) after lengthy and exhaustive discovery is telling. But if, even now, they cannot identify any specific

---

[1] It should be noted that all of the verbiage following "including" in item number 20 (and many others) is merely descriptive, not limiting. The request for testimony concerning "[t]he design, construction, operation and maintenance of" the MRGO is not restricted in any other way.

acts or omissions that caused their alleged damage, the significance of their inability, in this context, is that it has led Plaintiffs to draft an elephantine deposition notice that contravenes Rule 30(b)(6). Courts have rightly issued protective orders quashing deposition notices that are unreasonable in scope. *See, e.g., FDIC v. Wachovia Ins. Servs., Inc.,* 2007 WL 2460685, at *3-*5 (D. Conn. Aug. 27, 2007) (quashing notice that would have "burden[ed] the plaintiff with educating representative with respect to twenty-seven areas of inquiry (many of which are open ended)"); *Anderson v. Lowe's Home Centers,* 2008 WL 2446877 (S.D. Fla. 2008) (holding that plaintiff's deposition notice was overly broad and would create undue burden on defendant to search for information).

Plaintiffs here have requested that testimony be provided as to matters that are not reasonably defined. For example, testimony as to "[a]ny measures, actions, analyses, studies, and/or reports commenced and/or undertaken by the Army Corps concerning a change in hydrology associated with and/or caused by the digging and/or dredging of the MR-GO." Proposed Notice Exh. A ¶¶ 20, 56. The terms "measures, actions, analyses" are broad enough to encompass a broad range of activities that could have been undertaken by almost any employee whose duties at some time pertained to or touched upon the MRGO. The phrase "change in hydrology" could encompass almost any change that occurred on any of the approximately 22,000 days that the waterway has been in existence. No witness could possibly be prepared to address the "measures, actions, analyses" of countless employees on countless days as to "change[s] in hydrology" resulting from the digging and dredging of the MRGO. Similarly overbroad is the repeated request for "[a]ny environmental assessments, analyses, studies, reports and/or findings of no significant impact with regard to the maintenance, operations, dredging and/or repair of the MR-GO." *Id.* ¶¶ 26, 61, 88. The terms "assessments, analyses, studies,

reports and/or findings" are so broad as to be effectively indeterminate. The catch-all phrase "maintenance, operations, dredging and/or repair" is plainly meant to encompass every type of activity that could have had any effect on the environment.

The overbreadth of the requests is not limited to the "maintenance, operations, dredging, and/or repair" of the MRGO. It extends to requests concerning communications with Congress. Testimony is sought as to "[t]he Army Corps' budget, appropriations, proposals, and requests for funding associated with the construction and maintenance of the MR-GO, including all supporting documentation and submissions to Congress." *Id.* ¶¶ 4, 41, 75. This would comprise every "proposal" for a period of sixty years. Moreover, the verbiage that follows "including" in this description appears to enlarge the description, not merely clarify it: Plaintiffs are asking for "all supporting documentation" related to the MRGO's "budget, appropriations, proposals, and requests for funding" over six decades. Similarly overbroad are requests for testimony as to "[t]he ownership of lands on which the hurricane protection structures are built" and "[t]he ownership of land between the MRGO hurricane protection structure and the 40 Arpent Canal." *Id.* ¶¶ 27, 28. These descriptions are unduly burdensome and do not satisfy the requirement that matters of examination be described with "reasonable particularity."

## CONCLUSION

For these reasons, the Court should issue a protective order prohibiting Plaintiffs from issuing the proffered deposition notice or any other notice that fails to "describe with reasonable particularity the matters for examination."

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

THOMAS DUPREE
Deputy Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

  /s/ Robin D. Smith
ROBIN D. SMITH
Senior Trial Counsel
CONOR KELLS
Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
(202) 616-4289 (tel.)
(202) 616-5200 (fax)
robin.doyle.smith@usdoj.gov
Attorneys for Defendant United States

-7-

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served by ECF upon all counsel of record on June 25, 2008.

      /s/ Robin D. Smith
    ROBIN D. SMITH