UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION<br><br>PERTAINS TO INSURANCE | CIVIL ACTION<br><br>No.: 05-4182 "K" (2)<br><br>JUDGE DUVAL<br>MAG. WILKINSON |

### MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF POST-SHER INSURANCE UMBRELLA CASE MANAGEMENT ORDER

## I. INTRODUCTION

Representative Policyholders Gladys Chehardy, Daniel and Jacquelyn Fontanez, Larry and Glendy Forster, Kenneth and Judy Maier, Randy and Lori Gervais, Andre and Marlin Mauberret, Dave and Debbie Strawn, Stephanie and Brad Boyd, New Orleans Flooring Supply, Inc., Shawn and Angelina Burst, Susan Brown (incorrectly identified as Patricia Brown in the Amended Complaint), Marie Fatheree, Katrina Daniels, Lionel and Edna Jones, Karen Lewis,

- 1 -

Shane Sylvester, Austra Zapata, Sabrina Perkins, Eldridge Pollard, Michael Peterson, Wendell Glation and Mack Barham (collectively, the "Chehardy Representative Policyholders") brought a class action on behalf of a class of All-Risk Homeowners Insurance Policyholders. The class includes all Louisiana residents who, on August 29, 2005, owned immovable property with improvements, principally houses or related residential structures, which were destroyed or damaged by winds and/or rain generated by Hurricane Katrina. The Chehardy Representative Policyholders' Complaint names several insurance companies as defendants.

Each Chehardy Representative Policyholder purchased an All-Risk Homeowners Policy with the reasonable expectation that they would be able to recover for any and all losses to their residence and personal property caused by hurricanes, including any and all damage proximately and efficiently caused by hurricane wind, as well as losses resulting from water released from the negligently designed and/or maintained New Orleans Area Levee System.

Following the Insurance Companies' refusal to pay for their losses, the Representative Policyholders instituted this class action seeking declaratory relief on behalf of the class that their losses were covered under the All-Risk Homeowners Policies they purchased. In their Amended and Restated Complaint, Representative Policyholders allege, inter alia, that:

> (1) The first efficient proximate cause of the losses suffered by the class of Policyholders on August 29, 2005, was "windstorm," a covered peril under all of the insurance policies purchased by the Policyholders, thereby rendering any subsequent impact from water released by the levee and/or levee wall failures irrelevant to coverage afforded by the insurance policies;
>
> . . .
>
> (3) The third efficient proximate cause of the losses resulting from water entering the City of New Orleans and surrounding parishes on August 29, 2005, was "storm surge," a known meteorological phenomenon that is not specifically excluded by any of the policies, in contract to other insurance policies available in

> the market, thereby rendering any damage caused by "storm surge" and resulting water pressure covered under the policies;

Am. and Restated Compl., Docket # 516.

On June 13, 2008, this Court issued a Post-Sher Insurance Umbrella Case Management Order dismissing all claims against insurer defendants alleging failure of the insurers to provide flood damage coverage under an insurance policy that excludes such coverage, including all allegations that a class action should be certified concerning such a flood claim. See Order, dated June 13, 2008, Docket # 13521. The Order dismissed the claims based on the Louisiana Supreme Court's recent decision in Sher v. Lafayette Ins. Co., et al., Nos. 07-C-2441, 07-C-2443, 2008 WL 928486 (La. Apr. 8, 2008). There, the Court held that the water that flowed from levees broken by Hurricane Katrina was considered a "flood" within the meaning of the flood exclusion contained in the insurance policy. See id. at * 6-7. Based on the Supreme Court's determination, this Court dismissed all claims brought by policyholders in this case, including the claims by the Chehardy Representative Policyholders.

The Chehardy Representative Policyholders respectfully disagree with this Court's decision to dismiss all of their claims against the insurance companies based solely on the Louisiana Supreme Court's Sher decision. Along with the argument that the water flowing from the broken levees was not a "flood" within the meaning of the policy, the Chehardy Representative Policyholders made additional claims in the Amended Class Action Complaint that were not addressed in the June 13, 2008 Order. Furthermore, there is an Application for Rehearing pending in the Sher case. The Order dismissing the claims in this case based on Sher is premature until the Supreme Court of Louisiana has ruled on the Application for Rehearing, and this Court addresses the additional claims raised in items No. 1 and 3 above. The

Policyholders request that the Court reconsider the June 13, 2008 Order in light of the additional claims brought in the Amended Class Action Complaint, which are more fully explained below.

## II. ARGUMENT

### A. The Louisiana Supreme Court's Decision In Sher Regarding The Flood Exclusion Does Not Apply To Damage Caused By "Windstorm," Wind-Driven Water, Or Storm Surge.

As stated in Section I, supra, the Chehardy Representative Policyholders allege in their Amended Class Action Complaint, as a separate basis for relief against the insurance companies, that the first efficient proximate cause of their losses was "windstorm" or wind-driven rain. Another efficient proximate cause of the Policyholders' losses was the meteorological phenomenon known as "storm surge." The Louisiana Supreme Court did not address either of these claims relating to "windstorm" or "storm surge" in the Sher decision. Similarly, the Fifth Circuit Court of Appeals did not address these separate claims in a prior appeal from this Court. In re: Katrina Canal Breaches Litig., 495 F.3d 191 (5th Cir. 2007). Rather, the Courts focused on the definition of "flood" and whether water flowing from broken levees was considered a "flood" within the meaning of the flood exclusion.

Although the Louisiana Supreme Court ruled that water flowing from levees is a flood and therefore not covered, windstorm is a covered peril under the insurance policies in question. Moreover, none of the policies specifically excluded "storm surge" from coverage. None of the prior rulings address the Policyholders' "windstorm," "storm surge" or "efficient proximate cause" arguments in the Order dismissing their claims.

#### 1. Under The Efficient Proximate Cause Doctrine, If The Originating Or Dominant Cause of the Damage Is A Covered Peril, There Is Coverage.

Even if the flood exclusion applies to exclude damage caused by water rushing from broken levees, there is coverage pursuant to the "efficient proximate cause" doctrine. The

doctrine provides that a policyholder is entitled to coverage if a covered peril was the proximate or efficient cause of the loss or damage, notwithstanding that other excluded or non-covered perils contributed to the damage. See Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Continental Ins. Co., 112 So. 2d 680, 683 (La. 1959). "Efficient proximate cause" has been technically defined as "the efficient or predominant cause which sets into motion the chain of events producing the loss . . . not necessarily the last act in a chain of events." Graham v. Public Employees Mut. Ins. Co., 656 P.2d 1077, 1081 (Wash. 1983). The "efficient proximate cause" analysis focuses on whether all of the losses or claims can be traced to one original causative factor, regardless of the number of injuries or claims made. If the originating or dominant cause of the loss is a covered peril, there is coverage. Lorio v. Aetna Ins. Co., 232 So. 2d 490 (La. 1970) (holding that policyholders may have coverage when covered peril causes an excluded peril).

The Louisiana Supreme Court and other courts in the Gulf region have interpreted the "efficient proximate cause" doctrine to permit coverage for hurricane-related losses where the evidence has shown that wind was the "proximate cause" of the damage, notwithstanding that flooding contributed to the loss. See, e.g., Roach-Strayhan-Holland, 112 So. 2d at 683; Western Assur. Co. v. Hann, 78 So. 232, 236 (Ala. 1917); Glens Falls Ins. Co. of Glens Falls, N.Y. v. Linwood Elevator, 130 So. 2d 262, 270 (Miss. 1961); Evana Plantation, Inc. v. Yorkshire Ins. Co., 58 So. 2d 797, 798 (Miss. 1952). Under these cases and the underlying rationale behind the "efficient proximate cause" doctrine, coverage exists where wind is ultimately shown to be the proximate cause of damage despite contribution from a non-covered peril.

## 2. The Efficient And Proximate Causes Of The Policyholders' Losses, "Windstorm," Wind-Driven Rain, And "Storm Surge," Are Covered Perils Under The Insurance Policies.

There is a line of cases arising out of Hurricane Katrina which holds that the flood exclusion does not apply to damage caused by "wind-driven water." See, e.g., Northrop Grumman Corp. v. Factory Mut. Ins. Co., No. CV 05-08444DDPPLAX, 2007 WL 2385134 (C.D.Cal. Aug. 16, 2007) and Pinnacle Entertainment, Inc. v. Allianz Global Risks U.S. Ins. Co., CV-00935 (D. Nev. Mar. 26, 2008) (attached hereto as Exhibit "A"). In Northrop Grumman, a federal court in the Central District of California found that, because the flood exclusion did not expressly exclude wind-driven inundations of water, it was deemed by the court to be ambiguous. Northrop, 2007 WL 2385134, at *5-7. Similarly, in Pinnacle Entertainment, the all-risk policy defined flood as "[a] general and temporary condition of partial or complete inundation of normally dry land areas from…the overflow of inland or tidal waters." Ex. A at 2. The Court found that this definition did not "clearly and distinctly" exclude wind-driven inundations of water. Ex. A at 8. Thus, the court determined that this definition did not sufficiently communicate an exclusion for the distinct meteorological phenomenon of "storm surge," and ruled in favor of coverage. Ex. A at 8.

The Northrop Grumman court reviewed the available definitions from the National Hurricane Center, and other sources, and concluded that storm surge is "water pushed by the wind that combines with the hurricane storm tide to cause significant flooding." 2007 WL 2385134, at *6. The court then concluded that while storm surge is an "inundation of water," it is a particular type of inundation – specifically, one caused in part by wind. Id. at *6. Because the flood exclusion in the policy did not expressly exclude wind-driven inundations of water, it was deemed by the court to be ambiguous. Id. at *6-7.

Similarly, in Pinnacle Entertainment, the all-risk policy defined flood as "[a] general and temporary condition of partial or complete inundation of normally dry land areas from…the overflow of inland or tidal waters." The court found that this definition did not "clearly and distinctly" exclude wind-driven inundations of water. Ex. A at 8. Thus, the court determined that this definition did not sufficiently communicate an exclusion for storm surge.

In accepting the Louisiana Supreme Court's April 8, 2008 decision in Sher, this Court is agreeing that it was the hurricane that caused the losses claimed by the Policyholders in this case. Specifically, the Sher Court ruled:

> Finally, even if the [flood] exclusion only referred to natural, rather than man-made, floods, the flood at issue was not caused by man. The flood was caused by Hurricane Katrina, not by man. The levees did not cause the food, they, whether through faulty design, faulty construction, or some other reason, failed to prevent the flood.

Sher, 2008 WL 928486, at *5.

As is alleged in the Amended Class Action Complaint, the first efficient proximate cause of the losses here was "windstorm." "Windstorm" is a covered peril under the applicable insurance policies. Moreover, if this Court finds that the wind-driven water that caused damage to the Policyholders' property is best described as "storm surge," that damage is also covered under the policy. "Storm surge" was never excluded from the insurance policies relevant to this action. The insurance companies' decision not to include "storm surge" in the flood exclusion was a conscious decision. As a peril not specifically excluded, just like in Northrop Grumman and Pinnicle Entertainment, damage resulting from "storm surge" is covered because it was an efficient proximate cause of the losses claimed.

In rendering the Post-Sher Insurance Umbrella Case Management Order, the Chehardy Representative Policyholders respectfully submit that this Court did not consider the

Chehardy Representative Policyholders' claims in the Amended Class Action Complaint that "windstorm" and "storm surge" were two efficient proximate causes of the damage to their properties. The Policyholders' claims were, therefore, dismissed in their entirety prematurely. A decision on whether water from the broken levees is a "flood," does not answer whether the damage caused by "windstorm" or "storm surge" is covered under the policies. Respectfully, the Chehardy Representative Policyholders request this Court to reconsider the June 13, 2008 Order in light of the other arguments posed in the Amended Class Action Complaint.

### B. The Post-Sher Insurance Umbrella Case Management Order Is Premature Because The Louisiana Supreme Court Has Yet To Rule On Plaintiff Joseph Sher's Application For Rehearing In That Case.

On April 22, 2008, Joseph Sher filed an Application for Rehearing following the decision in Sher which this Court relied on in determining the June 13, 2008 Post-Sher Order. See Application For Rehearing, dated April 22, 2008 (attached hereto as Ex. "B"). In his motion, Sher argues that the Louisiana Supreme Court "erred by holding that the "flood" exclusion in the [insurance policy] is unambiguous, and therefore, finding that Mr. Sher's water damage is uncovered." Id. at iv. Sher argues that where there are two reasonable interpretations of a word, such as "flood," then the term is ambiguous. See id. at 8. Calling the Louisiana Supreme Court's holding "unreasonable," Sher takes issue with the Court's narrow view of the term "flood" based on the decisions of a number of trial and appellate courts that found the term to be ambiguous. Id. at 9.

Further, in his brief, Sher drew a distinction between the wind-driven water that caused significant damage to his property and the water that was released when the levees broke. See id. at 10. The insurance company in the Sher case did not address its wind-driven water argument and, therefore, Sher argues that the insurance company "failed to meet its burden of

proving that any particular part of the . . . damage was caused by excluded water as opposed to covered water." Id. at 10-11.

The Louisiana Supreme Court has not ruled on Joseph Sher's Application for Rehearing. Consequently, it is premature for this Court to rely on the Supreme Court's April 8, 2008 ruling in Sher as a basis for completely dismissing the Chehardy Representative Policyholder's claims against the insurance companies in this case. For this additional reason, the Policyholders respectfully request that this Court reconsider the June 13, 2008 Order.

## III. CONCLUSION

For the reasons listed above, the Chehardy Representative Policyholders respectfully request that this Court grant this Motion and reconsider the Court's June 13, 2006 Post-Sher Insurance Umbrella Case Management Order.

Respectfully submitted,

Dated: June 26, 2008

**PLAINTIFFS' SUBGROUP LITIGATION COMMITTEE – INSURANCE**

By: /s/ Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr. (#5486)
LIAISON COUNSEL - INSURANCE
FAYARD & HONEYCUTT, APC
519 Florida Avenue, SW
Denham Springs, LA 70726
(225) 664-4193
Email: calvinfayard@fayardlaw.com

And

Joseph J. Bruno (#3604)
PLAINTIFFS' LIAISON COUNSEL
BRUNO LAW FIRM
855 Baronne Street

New Orleans, LA 70113
(504) 525-1335
Email: jbruno@brunolaw.com

And

John N. Ellison, Esq. (Admitted *Pro Hac Vice*)
Reed Smith, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
(215) 851-8100
Email: jellison@reedsmith.com

James M. Garner (#19589)
SHER, GARNER, CAHILL, RICHTER,
KLEIN, & HILBERT, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, LA 70112
(504) 299-2100
Email: jgarner@shergarner.com

Joseph J. McKernan (#10027)
MCKERNAN LAW FIRM
8710 Jefferson Highway
Baton Rouge, LA 70809
(225) 926-1234
Email: jemckernan@mckernanlawfirm.com

Drew A. Ranier (#8320)
RANIER, GAYLE, & ELLIOT, L.L.C.
1419 Ryan Street
Lake Charles, LA 70601
(337) 494-7171
Email: dranier@rgelaw.com

And

**ADDITIONAL ATTORNEYS FOR CHEHARDY REPRESENTATIVE POLICYHOLDERS**

Darin McMullin (Admitted *Pro Hac Vice*)
ANDERSON KILL & OLICK, P.C.
1600 Market Street, Ste. 2500
Philadelphia, PA 19103

(215) 568-4710
Email: dmcmullen@andersonkill.com

James P. Roy (#11511)
DOMENGEAUX WRIGHT ROY
& EDWARDS LLC
556 Jefferson Street, Suite 500
P. O. Box 3668
Lafayette, LA 70502-3668
(337)233-3033
Email: jimr@wrightroy.com

Matt Schultz (Admitted *Pro Hac Vice*)
LEVIN, PAPANTONIO, THOMAS, MITCHELL,
ECHSNER AND PROCTOR, P.A.
316 South Baylen Street, Ste. 600
Pensacola, FL 32502
(850) 435-7140
Email: mschultz@levinlaw.com

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 26th day of June, 2008, served a copy of the foregoing pleading on counsel for all parties to this proceeding by electronic service through the CM/ECF system.

/s/   Calvin C. Fayard, Jr.
Calvin C. Fayard, Jr., Esq.