SUPREME COURT
STATE OF LOUISIANA

No. 2007-C-2441 c/w No. 2007-C-2443

JOSEPH SHER
Plaintiff/Applicant

VERSUS

LAFAYETTE INSURANCE COMPANY, *et al.*
Defendant/Respondent

ON WRIT OF REVIEW TO THE LOUISIANA FOURTH CIRCUIT COURT OF
APPEAL, NO. 2007-CA-0757, AND THE CIVIL DISTRICT COURT FOR THE PARISH
OF ORLEANS NO. 2006-9276, DIVISION "G", SECTION "L",
THE HONORABLE ROBIN M. GIARRUSSO PRESIDING

APPLICATION FOR REHEARING ON BEHALF OF PLAINTIFF/APPLICANT,
JOSEPH SHER

CIVIL PROCEEDING

JAMES M. GARNER, #19589,
   APPEAL COUNSEL
DARNELL BLUDWORTH #18801
TIMOTHY B. FRANCIS #14973
ELLEN PIVACH DUNBAR #30018
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, LA 70112
Telephone: (504) 299-2102
Facsimile: (504) 299-2300
jgarner@shergarner.com



and

FRANK C. DUDENHEFER, JR. # 5717
THE DUDENHEFER LAW FIRM, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130-6004
Telephone: 504-525-2553
fcdlaw@aol.com

COUNSEL FOR PLAINTIFF/APPLICANT, JOSEPH SHER


EXHIBIT

## SERVICE LIST

**Defense Counsel:**
ROBERT MCMAHON, JR. (#10406)
HOWARD B. KAPLAN (#14414)
WILLIAM D. O'REGAN, IV (#29730)
BERNARD, CASSISA, ELLIOT & DAVIS, APLC
1615 Metairie Road, P.O. Box 55490
Metairie, LA 70055-5490
Telephone: (504)834-2612

RALPH S. HUBBARD III
LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD
601 Poydras Street
Suite 2775 Pan American Life Center
New Orleans, LA

COUNSEL FOR LAFAYETTE INSURANCE COMPANY

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ASSIGNMENTS OF ERROR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     MR. SHER'S OFFER OF JUDGMENT TO LAFAYETTE
         WAS INCLUSIVE OF COSTS AND INTEREST, AND
         THEREFORE, THIS COURT INCORRECTLY APPLIED
         LOUISIANA CODE OF CIVIL PROCEDURE ARTICLE 970 . . . . . . . . . . . . 3

    II.    THE COURT ENTIRELY FAILS TO ADDRESS THE
         COVERAGE FOR MR. SHER'S BUSINESS PERSONAL
         PROPERTY UNDER THE COVERAGE FOR "BUILDING" . . . . . . . . . . . . 4

    III.   THE COURT'S RULING ON THE APPLICATION
         OF THE AMENDED VERSION OF LA REV. STATS.
         §22:658 IS INTERNALLY INCONSISTENT AND FACTUALLY
         AND LEGALLY INCORRECT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    IV.   THE COURT'S FINDING THAT THE LOWER COURTS'
         INTERPRETATION OF THE WATER EXCLUSION WAS
         UNREASONABLE IGNORES THE MULTIPLE DECISIONS
         REACHING A SIMILAR RESULT AND IS FLAWED. . . . . . . . . . . . . . . . 8

    V.    THIS COURT'S AFFIRMATION OF LAFAYETTE'S
         BAD FAITH VIOLATION OF §22:658 IS INCONSISTENT
         WITH ITS FINDING THAT MR. SHER DID NOT
         PRESENT EVIDENCE OF LAFAYETTE'S INTENT
         TO CAUSE MENTAL ANGUISH. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

**ARTICLES**

LA. CODE OF CIV. PROC. art. 970 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**STATUTES**

Louisiana Revised Statute §22:658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-8

**CASES**

*Andrew Jackson Life Insurance Company v. Williams,*
    566 So.2d 1172, 1179 (Miss. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Beck v. Farmers Ins. Exchange,*
    701 P.2d 795 (Utah 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York,*
    2008 WL 423451 (N.Y. 2/19/2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Change, Inc. v. Westfield Insurance Co.,*
    542 S.E.2d 475 (W. Va. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cock-N-Bull Steak House, Inc. v. General Ins. Co.,*
    466 S.Ed.2d 727 (S.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

*Ebbing v. State Farm Fire & Cas. Co.,*
    1 S.W.3d 459 (Ark. Ct. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Historic Restoration, Inc. v. RSUI Indem. Co.,*
    No. 06-4990, Div. D-16-11, Civil District Court, Parish of Orleans . . . . . . . . . . . . . . . . 9

*In re Katrina Canal Breaches Consol. Litig.,*
    466 F. Supp. 2d 729 (E.D. La. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Panasia Estates, Inc. v. Hudson Ins. Co.,*
    2008 WL 420014 (N.Y. 2/19/2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Popkin v. Security Mut. Ins. Co. of New York,*
    367 N.Y.S.2d 492 (N.Y. App. Div. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Townsend v. Louisiana Citizens Prop. Ins. Corp.,*
    No. 06-6780, Civil District Parish Court, Parish of Orleans . . . . . . . . . . . . . . . . . . . . . . 9

*White III, L.L.C. v. Travelers Prop. & Cas. Co.,*
    No. 06-9607, Div. G-11, Civil District Court, Parish of Orleans . . . . . . . . . . . . . . . . . . . 9

*White v. Louisiana Citizens Prop. Ins. Corp.,*
    No. 06-7975, Civil District Court, Parish of Orleans . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**OTHER DOCUMENTS**

April 8, 2008 Opinion of Louisiana Supreme Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 7, 10

Original Brief on Behalf of Lafayette Insurance Company . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

**APPENDIX**

A       April 14, 2008 Correspondence from Counsel for Lafayette to Counsel for Mr. Sher

B       April 10, 2008 Check in the Amount of $283,180.52

## ASSIGNMENTS OF ERROR

Mr. Sher asserts the following assignments of error warranting a rehearing in this matter:

1.  This Court erred in applying Louisiana Code of Civil Procedure article 970 by not including costs pursuant to Louisiana Code of Civil Procedure article 1920 or judicial interest owed on the amounts awarded to Mr. Sher in comparing the amended judgment to Mr. Sher's offer.

2.  This Court erred by holding that the Lafayette Policy does not cover Mr. Sher's business personal property, and therefore, decreasing the judgment by $31,577.

3.  This Court erred by holding that the amended version of La. Rev. Stats. §22:658 does not apply to Mr. Sher's claim against Lafayette, and therefore, applying only a 25% penalty and no attorneys' fees.

4.  This Court erred by holding that the "flood" exclusion in the Lafayette Policy is unambiguous, and therefore, finding that Mr. Sher's water damage is uncovered.

5.  This Court erred by affirming the court of appeal's decision to disallow a jury instruction regarding mental anguish as well as the trial court's failure to include a line item for mental anguish on the jury verdict form.

**MAY IT PLEASE THE COURT:**

**INTRODUCTION**

Hurricane Katrina was without a doubt the most crippling event to ever occur in the state of Louisiana. Thousands of Louisiana citizens faced unmeasurable devastation, much of which was caused by the failure of the New Orleans levee system due to the negligence of the U.S. Army Corps of Engineers. These Louisianians turned to their insurance companies, after years of paying premiums, to recover the proceeds owed to them such that they could begin to repair their homes and their lives. In typical fashion, when push came to shove, these insurers refused to tender payment owed, citing various exclusions of their policies and relying on bad-faith justifications to avoid payment. Now, these policyholders have turned to the Court to seek salvation from the acts of their insurers over the last two and a half years. The April 8, 2008 decision rendered by this Court fails the people of Louisiana and has frightening ramifications for Louisiana's citizens, that is, Louisiana insureds have essentially no protection from an insurer's bad faith conduct.

Moreover, this Court's decision contains several legal and factual errors that must be rectified on rehearing as discussed below. First, this Court improperly applied Louisiana Code of Civil Procedure article 970 by not including costs and judicial interest when comparing the amended judgment of April 8, 2008 to Mr. Sher's offer to Lafayette. Mr. Sher's offer of judgment expressly stated that it was "inclusive" of costs and interest and as such, costs and interest should have been included when comparing this Court's judgment to the offer of judgment. Second, this Court incorrectly held that the Lafayette Policy does not cover Mr. Sher's business personal property, ignoring the fact that "Building Coverage" specifically covers personal property used in maintaining the building — a fact that the Court ignores. Third, the Court's analysis of the application of the amendment to La. Rev. Stats. §22:658 is entirely inconsistent as it is undisputed that Mr. Sher submitted multiple *new* proofs of loss to Lafayette after the effective date of the amendment. The Court's ruling on this issue renders an insurer's continuing duty to adjust a claim in good faith entirely meaningless. Fourth, the decision with respect to the water exclusion is flawed in that it wholly ignores the fact that the interpretation of such exclusion favored by the Courts below is indeed reasonable – the fact that a number of Louisiana courts as well as courts in other jurisdictions

-1-

have reached a similar conclusion is proof positive that such conclusion is reasonable. Judge

Giarrusso and the court of appeal did not invent the ambiguity of the provision from whole cloth -

a number of decisions of other courts support it. Finally, this Court's affirmation of Lafayette's bad-

faith violation of La. Rev. Stats. §22:658 is inconsistent with its finding that Lafayette did not intend

to cause Mr. Sher mental anguish.

Accordingly, Mr. Sher contends that a rehearing is necessary in this matter on the issues

discussed above and herein such that both Mr. Sher and the people of Louisiana receive the judicial

relief warranted by law.

### ARGUMENT

Plaintiff, Joseph Sher, respectfully submits that this Court should grant rehearing in this

matter as the Court's decision contains several errors of law as follows:

- This Court **incorrectly applied Louisiana Code of Civil Procedure article 970** by not including costs and judicial interest when comparing the amended judgment of April 8, 2008 to Mr. Sher's offer to Lafayette. Mr. Sher's offer of judgment to Lafayette expressly stated that the offer was "**inclusive of costs, interest, attorney fees and any other amount which may be awarded Plaintiff against Lafayette in this matter**;"

- On April 10, 2008, Lafayette issued payment to Mr. Sher in the amount of **$283,180.52** for "**satisfaction of judgment**"—which is $1,930.52 **greater** than the $281,250 required for Mr. Sher to receive costs pursuant to article 970;

- In incorrectly deciding that the Lafayette Policy does not cover Mr. Sher's business personal property, the Court **entirely ignores** the policy's "Building" coverage, which **undisputably includes coverage of "personal property"** that is "used to maintain or service the building or structure or its premises;"

- The Court's holding that the amended version of La. Rev. Stats. §22:658 does not apply to Mr. Sher's claim against Lafayette is flawed. Regardless of the retroactivity issue, Lafayette admits that Mr. Sher submitted multiple **new** proofs of loss to Lafayette **post-amendment**, which Lafayette ignored and rejected in bad faith. Moreover, the Court's decision is even more troubling here, where it was uncontested at trial that Lafayette learned of its misconduct after the amendment to §22:658 and still failed to tender payment owed to Mr. Sher. The Court's ruling on this issue renders an insurer's continuing duty to adjust a claim in good faith entirely meaningless;

- The finding that the interpretation of "flood" favored by the courts below was unreasonable is incorrect - a number of other courts have reached a similar conclusion - all of these courts cannot be unreasonable;

- There was evidence in the record that wind-driven water came through the walls and damaged the basement as well as water from water hammer, which the Court found to be covered. Accordingly, even if the water from the levees is excluded, Lafayette

-2-

has failed to meet its burden of proving that any particular part of the basement damage was caused by excluded water as opposed to covered water; and

- This Court's affirmation of Lafayette's bad-faith violation of La. Rev. Stats. §22:658 is inconsistent with its finding that Lafayette did not intend to cause Mr. Sher mental anguish. As discussed in Justice Knowles's dissent, a finding that Lafayette acted in bad faith and a finding that Lafayette intended to aggrieve the feelings of Mr. Sher are one and the same.

I.  **MR. SHER'S OFFER OF JUDGMENT TO LAFAYETTE WAS INCLUSIVE OF COSTS AND INTEREST, AND THEREFORE, THIS COURT INCORRECTLY APPLIED LOUISIANA CODE OF CIVIL PROCEDURE ARTICLE 970.**

Rehearing is warranted in this matter as the Court incorrectly applied Louisiana Code of Civil Procedure article 970 by failing to include the costs and judicial interest awarded to Mr. Sher in the amended judgment. As recognized by the Court, on February 9, 2007, Mr. Sher tendered to Lafayette an offer of judgment under article 970 in the amount of $225,000.[1] Moreover, Mr. Sher's offer expressly stated that the offer was **"inclusive of costs, interest, attorney fees, and any other amount which may be awarded Plaintiff against Lafayette in this matter."[2]** Thus, in comparing the amended judgment against Mr. Sher's offer plus 25%, the Court should have included the $16,288.60 in costs awarded pursuant to Louisiana Code of Civil Procedure article 1920 as well as judicial interest owed on the amounts awarded to Mr. Sher. **The Court failed to do so.** In fact, article 870 specifically provides that all amounts expressly included in the offer of judgment are taken into consideration when comparing the offer of judgment and the final judgment:

> For purposes of comparing the amount of money offered in the offer of judgment to the final judgment, which judgment shall take into account any additur or remittitur, the final judgment obtained shall not include any amounts attributable to costs, interest, or attorney fees, or to any other amount which may be awarded pursuant to statute or rule, **unless such amount was expressly included in the offer.**[3]

Here, Mr. Sher expressly included costs and interest in his offer of judgment to Lafayette. This fact is undisputed. Therefore, costs and interest should be considered when comparing Mr. Sher's offer of judgment to the Court's amended judgment.

When properly including costs and judicial interest in comparing Mr. Sher's offer to the amended judgment, the amended judgment exceeds the offer plus 25%, and therefore, Mr. Sher is entitled to recover all costs under article 970. Indeed, Lafayette has already tendered payment to Mr.

---

[1] ROA p. 2966 (Vol. XII).
[2] *Id.*
[3] LA. CODE CIV. PROC. art. 970(E) (emphasis added).

-3-

Sher in the amount of <u>**$283,180.52**</u>, which Lafayette states is the "current judgment with legal

interest through April 18, 2008."[4]  This Court stated in its April 8, 2008 Opinion that "<u>**Lafayette**</u>

<u>**would only be required to pay plaintiff's costs if plaintiff's final award was at least $281,250.**</u>"[5]

This $283,180.52 figure, paid to Mr. Sher in "satisfaction of judgment," <u>**exceeds**</u> this Court's own

calculation of $281,250 by $1,930.52.  Thus, Mr. Sher is entitled to recover all costs incurred

pursuant to article 970, including, but not limited to those documented costs in the amount of

$40,020.24.  Accordingly, Mr. Sher requests that the Court grant rehearing on this issue and amend

the April 8, 2008 Opinion to properly award Mr. Sher costs under article 970.

**II.     THE COURT ENTIRELY FAILS TO ADDRESS THE COVERAGE FOR MR. SHER'S BUSINESS PERSONAL PROPERTY UNDER THE COVERAGE FOR "BUILDING."**

In deciding that the Lafayette Policy does not cover Mr. Sher's business personal property,

the Court entirely ignores the policy's "Building" coverage, which undisputably includes coverage

of "personal property" that is "used to maintain or service the building or structure or its premises."[6]

Indeed, the Court does not even address Mr. Sher's argument that his business personal property is

covered under the policy's "Building" coverage part. The Court also fails to distinguish *Cock-N-Bull*

*Steak House, Inc. v. General Insurance Company*, where the South Carolina Supreme Court

considered a policy with identical language and determined that certain items, including business

personal property, fell under the "Building" coverage.[7]  Neither the Court nor Lafayette can dispute

that the declarations page of the Lafayette Policy provides a limit of liability for "Building" coverage

of $463,000.  The policy expressly provides:

A.     **COVERAGE**

<u>**We will pay**</u> for direct physical loss or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

1.     **Covered Property**

Covered property, as used in this Coverage Part, means the following types of property for which a Limit of Insurance is shown in the Declarations.

---

[4]  *See* Appendix A, April 14, 2008 correspondence from counsel for Lafayette to counsel for Mr. Sher; *See also* Appendix B, April 10, 2008 check in the amount of $283,180.52 in payment of "satisfaction of judgment."

[5]  *See* April 8, 2008 Opinion at 29 (emphasis added).

[6]  *Id.*

[7]  466 S.Ed.2d 727 (S.C. 1996).

a.    **Building** meaning the building or structure described in the declarations, **including**:

4)    **Personal property** owned by you that is used to maintain or service the building or structure or its premises, **including**:

a.)    Fire extinguishing equipment;
b.)    Outdoor furniture:
c.)    Floor coverings; and
d.)    Appliances used for refrigeration, ventilation, cooking, dishwashing, or laundering;[8]

Under this policy language, all fixtures, machinery and equipment, and all personal property used to maintain or service the building are covered.  Mr. Sher presented evidence at trial of many such personal property items[9] that are covered under the "Building" coverage part, including:

| QUANTITY | DESCRIPTION | VALUE |
|---|---|---|
| 4 | Hot water heaters | $3,000.00 |
| 3 | Washer & dryer | $1,650.00 |
| Approx 40 | Tools - various for operation of apartment building | $6,000.00 |
| 1 | Lawnmower | $350.00 |
| 4 | Storage Units | $600.00 |
| 2 | Refrigerators | $1,000.00 |
| 1 | Freezer | $475.00 |
| 12 | Light bulbs | $12 |
|  | Stored lumber | $260 |
|  | Stored concrete mix | $60 |
| 1 | Stove | $650 |
| 1 | Air conditioner | $659 |
| 8 | Door locks | $22 |
| 1 | Vacuum cleaner | $240 |
| 1 | Space heater | $140 |

As found in the *Cock-N-Bull Steak House* decision, the "Building" and "Your Business Personal Property" coverages are not mutually exclusive.[10]  Certain fixtures, machinery, and equipment, such as those referenced above, fall within the definitions of both.  Accordingly, the Lafayette Policy

---

[8]  Pl. ex. P-3, p. 55 (emphasis added).
[9]  Pl. ex. P-123.
[10]  466 S.Ed.2d 727.

undisputably provides coverage for many of Mr. Sher's business personal property items under the "Building" coverage part, and this Court should grant rehearing on this issue.

III.     **THE COURT'S RULING ON THE APPLICATION OF THE AMENDED VERSION OF LA REV. STATS. §22:658 IS INTERNALLY INCONSISTENT AND FACTUALLY AND LEGALLY INCORRECT.**

The Court's holding that the amended version of La. Rev. Stats. §22:658 does not apply to Mr. Sher's claim against Lafayette is flawed. This finding will allow the insurance industry to continue to run roughshod over the people of Louisiana. Regardless of the retroactivity issue, Mr. Sher presented **undisputed evidence** at trial that he submitted multiple **new** proofs of loss to Lafayette **post-amendment**, which Lafayette ignored and rejected in bad faith. These post-amendment actions of Lafayette subject Lafayette to the increased penalties and attorneys' fees provided for in the current version of §22:658, which the Louisiana Legislature amended **specifically in response to insurers' conduct after Hurricane Katrina**.

Justice Knoll correctly argues in her dissenting opinion that it is entirely inconsistent for this Court to acknowledge that Lafayette "has a **continuing** duty of good faith and fair dealing which extends throughout the litigation period,"[11] and then fail to penalize Lafayette for its **continuous** acts of bad faith. Indeed, Lafayette itself **admits** that Mr. Sher tendered to it multiple proofs of loss after August 15, 2006, the effective date of the amendment, which Lafayette repeatedly rejected, including *new* estimates and *additional* expert reports.[12]  Specifically, Lafayette admits in its brief that Mr. Sher submitted the following proofs of loss **after** August 15, 2006:

- "August 28, 2006 — New estimate and invoices attached to the petition now totaling $223,488;

- February 17, 2007 — Carubba estimate of $53,012.50;

- February 26, 2007 — Scairono initial estimate for upper levels;

- February 28, 2007 — Scairono initial estimate for flooded basement;

- March 5, 2007 — Scairono final estimate for upper level of $134,850;

- March 5, 2007 — Scairono final estimate for basement of $144,300."[13]

---

[11]  *See* April 8, 2008 Opinion at 14 (emphasis added).
[12]  *See* Original Brief on Behalf of Lafayette Insurance Company ("Opposition") at 5.
[13]  *Id* at 5.

Lafayette in fact claims that it was only given $43,397.52 in invoices before the suit was filed on August 28, 2006[14] — a fraction of the $141,252.48 in damages this Court found it owed Mr. Sher — thus, **by its own admissions** Lafayette first received proof of loss for the vast majority of the amounts awarded **AFTER** the amendment. Further, it is **undisputed** that Lafayette failed to tender any payment to Mr. Sher since receipt of these multiple proofs of loss, until after this Court's April 8, 2008 ruling. This Court's decision does nothing but **reward Lafayette** for its rejection of these new proofs of loss, despite the fact that coverage was owed under the Lafayette Policy and despite the fact that Lafayette had a duty to pay the amounts owed under La. Rev. Stats. §22:658. Moreover, the Court's decision is even more troubling here, where it was uncontested at trial that Lafayette learned of its misconduct after the amendment to §22:658 and still failed to tender payment owed to Mr. Sher. Tom Miller, a Lafayette supervisor, admitted, at trial, that **after suit was filed on August 28, 2006** and **after the amendment to §22:658** , Mr. Miller reviewed and became aware of Lafayette's own underwriting documents, which revealed that the property had been well-maintained.[15] Despite learning the truth about this claim and having received new proofs of loss — **at a time when the current version of §22:658 was in effect**– Tom Miller and Lafayette did nothing to change their position and pay Mr. Sher the amounts he was due. In fact, **this Court upheld the jury's finding** that Lafayette's actions were in bad faith because of the reports in its underwriting file confirming that the property was well-maintained.[16] The Court **ignores**, however, that Lafayette learned of these reports and purposefully chose to ignore them, as well as rejected multiple new proofs of loss, **after the amendment** to §22:658. Again, the Court's ruling is inconsistent with its own findings, and this matter should be reheard on this issue.

Indeed, this Court has willingly given Lafayette and all insurers a "get out of jail free" card. That is, once an insured submits his first proof of loss, which is then rejected, an insurer can reject all other proofs of loss submitted, regardless of whether they are new or entirely valid. An insurer, therefore, has **no incentive** to continue to adjust the claim as required under §22:658 because there will be **no further consequences**. Such a result is entirely inconsistent with the continuing duty of

---

[14] *See* Original Brief of Lafayette Insurance Company at 4-5.
[15] Tr. 3/19/07, p. 122, ln. 19 - p. 123, ln. 3 (Vol. XVIII).
[16] *See* April 8, 2008 Opinion at 28.

good faith under §22:658 and the Louisiana Legislature's intent in enacting §22:658, and in fact, renders the notion of a continuing duty entirely meaningless. The Court's decision gives tremendous power to the insurance industry, allowing insurers to continuously deny a claim in bad faith and/or fail to admit misconduct until after suit is filed only to the detriment of Louisiana's policyholders. Although perhaps an unintended consequence, this Court's ruling gives an insurer a license to act unconscionably with impunity, as did Lafayette in this case. With all due respect, it is submitted that the Court has failed Mr. Sher and all the people of Louisiana in this regard.

Further, it is inexcusable to allow insurers such as Lafayette to avoid the increased penalties and attorneys' fees provided for under the amended version of §22:658 when these insurers were **well-aware** of the increased penalties and **purposefully** chose to repeatedly violate the statute. The Court's ruling as it stands now only condones the actions of a bad-faith insurer while punishing an insured who diligently and actively pursues his claim by submitting an initial proof of loss pre-lawsuit or pre-amendment. In fact, it is situations like these, where an insurer repeatedly denies a claim in bad faith, where the application of the amended version of §22:658 is most warranted. That is, because of Lafayette's repeated bad-faith denials, Mr. Sher was forced to aggressively pursue this lawsuit, incurring additional attorneys' fees to receive those proceeds that are rightfully his — attorneys' fees that this Court has decided are unrecoverable. Again, this Court's ruling only encourages insurers to refuse to adjust or pay a claim in good faith and discourages insureds such as Mr. Sher from enforcing the insurers' obligations. **Louisiana policyholders deserve better.** Accordingly, rehearing should be granted on this issue.

**IV.   THE COURT'S FINDING THAT THE LOWER COURTS' INTERPRETATION OF THE WATER EXCLUSION WAS UNREASONABLE IGNORES THE MULTIPLE DECISIONS REACHING A SIMILAR RESULT AND IS FLAWED.**

This Honorable Court is respectfully urged to rethink and reconsider its position on the water exclusion contained in Mr. Sher's policy, and in that of many other residents of Louisiana. The linchpin of the Court's finding that the "water" exclusion is not ambiguous is the conclusion that the courts' below determination that the word "flood" is subject to more than one interpretation is unreasonable. The Court is respectfully urged to take a step back from all of the doomsday threats of the insurance industry and unfounded claims that no court has ever concluded a "water" exclusion

to be ambiguous and to reexamine this issue apart from the insurance industry's cries that "the sky is falling."

All that is needed for ambiguity is two reasonable interpretations of a word. Here, the Court found that an interpretation of the word "flood" that limits it to natural causes is unreasonable. However, what that conclusion overlooks is the fact that not only the court of appeal and trial court found that meaning reasonable, but a number of other courts have reached the same result — how can such a meaning be unreasonable if it has been found by a number of respected judges?

As set forth in Mr. Sher's original brief, there have been a number of decisions rendered that the exclusion at issue is ambiguous and only applies to natural "flood" not man made ones. Initially, there are the Louisiana decisions issued in that regard:

1.  *In re Katrina Canal Breaches Consol. Litig.*, 466 F. Supp. 2d 729 (E.D. La. 2006)(reversed);

2.  *Historic Restoration, Inc. v. RSUI Indem. Co.*, No. 06-4990, Div. D-16-11, Civil District Court, Parish of Orleans, State of Louisiana, Judgment dated December 5, 2006;

3.  *White III, L.L.C. v. Travelers Prop. & Cas. Co.*, No. 06-9607, Div. G-11, Civil District Court, Parish of Orleans, State of Louisiana, Judgment dated July 26, 2007;

4.  *White v. Louisiana Citizens Prop. Ins. Corp.*,No. 06-7975, Civil District Court, Parish of Orleans, State of Louisiana, Judgment dated July 26, 2007;

5.  *Townsend v. Louisiana Citizens Prop. Ins. Corp.*, No. 06-6780, Civil District Parish Court, Parish of Orleans, State of Louisiana, Judgment dated August 29, 2007.

This Honorable Court's finding of no ambiguity is premised upon the finding that the judges issuing all of these decisions were not only legally wrong, but that their finding that one meaning of "flood" is naturally caused floods is in fact **unreasonable**.

The concept of a "flood" being a natural, not man made event is not one that was invented by Mr. Sher, by Louisiana lawyers, or by the respected jurists who reached that result. It is a result that has also been reached by several courts in other states. The Court is urged to reexamine the reasoning of the courts in *Change, Inc. v. Westfield Insurance Co.*,542 S.E.2d 475 (W. Va. 2000); *Ebbing v. State Farm Fire & Cas. Co.*,1 S.W.3d 459 (Ark. Ct. App. 1999); and *Popkin v. Security Mut. Ins. Co. of New York*, 367 N.Y.S.2d 492 (N.Y. App. Div. 1975). These courts all determined that water from man made causes was not excluded. The Court has attempted to distinguish these

cases on the basis that they involved pipes or water mains and not a "body of water."[17] However, the basis of the reasoning in these cases is the man made vs. natural distinction, not the presence or absence of a body of water. Here, the water at issue came from **man made canals** that are more similar to a pipe than a lake or an ocean, and hence are not bodies of water. Indeed, these canals do not have "natural boundaries" as noted in footnote two of this Court's April 8, 2008 Opinion because they were **built by man**, and thus, the water in these canals did not "overflow its natural boundaries."

To reject the distinction between man made and natural causes, the Court cannot just disagree with the varying interpretations of the term "flood," but rather, the Court must find that the interpretations are unreasonable. The distinction between man made and natural causes is supported by the number of courts that have made this very same distinction in the context of earth movement exclusions. Those cases are discussed at length in Mr. Sher's principal brief and that discussion will not be repeated here. However, the point to be taken from those cases and the decisions recited above is that defining terms in exclusions in the context of the cause of the damage as natural as opposed to man-made is not unreasonable as found by this Court. A number of other courts have reached such a conclusion, and this Honorable Court's decision necessarily finds that those other decisions are not simply legally flawed but are **unreasonable**. Contrary to the insurance industry's rhetoric, a number of other reasonable courts have reached such a conclusion.

Further, if this Court's interpretation of flood is considered correct, then the term "surface water," also found in Lafayette's water exclusion, has no meaning. Indeed, the Court interprets the definition of flood too broadly — if flood is an "overflow of a body of water causing a large amount of water to cover an area that is usually dry," what then, is "surface water?" Flood, therefore, must be distinguishable.

Regardless of this Court's ruling on the "water" exclusion, it is submitted that there was evidence in the record that would support a finding that the damages to the basement of Mr. Sher's home were covered even if the "water" exclusion is enforced. Particularly, Mr. Sher testified that

---

[17] *See* April 8, 2008 Opinion at pg 8, footnote 3.

the walls were "crying" during the storm,[18] and both Barry Scairono and Lafayette's own expert,

Jerry Householder, testified that wind-driven water came through the walls and traveled down —

Lafayette did not distinguish between this water and that from the broken levees.[19] Additionally,

there was testimony that the water from the broken pipes caused by water hammer, which this Court

found to be covered, ran down into the basement.[20] Again, Lafayette did not distinguish this covered

water damage from the water that came from the levees. Accordingly, even if the water from the

levees is excluded, Lafayette has failed to meet its burden of proving that any particular part of the

basement damage was caused by excluded water as opposed to covered water. Thus, this Court

incorrectly concluded in its April 8, 2008 Opinion that the damage in the basement was caused

entirely by levee water.

**V.     THIS COURT'S AFFIRMATION OF LAFAYETTE'S BAD FAITH VIOLATION OF §22:658 IS INCONSISTENT WITH ITS FINDING THAT MR. SHER DID NOT PRESENT EVIDENCE OF LAFAYETTE'S INTENT TO CAUSE MENTAL ANGUISH.**

This Court incorrectly concluded that the lower courts properly refused to allow a jury

instruction on mental anguish and a line item for mental anguish on the jury verdict form. Again,

the Court's ruling on this issue is internally inconsistent. On one hand, the Court affirmed the jury's

finding that Lafayette adjusted Mr. Sher's claim arbitrarily, capriciously, and in bad faith, thus

violating La. Rev. Stats. §22:658. On the other hand, the Court found that Mr. Sher failed to present

evidence that Lafayette intended to "aggrieve [his] feelings" or that Lafayette should have known

its violation of La. Rev. Stats. §22:658 would cause Mr. Sher mental anguish. As discussed in

Justice Knowles's dissent, a finding that Lafayette acted in bad faith and a finding that Lafayette

intended to aggrieve the feelings of Mr. Sher are one and the same. This Court incorrectly confuses

the two, finding that Mr. Sher did not meet the requirements of Louisiana Civil Code article 1998 —

despite the fact that this Court found that Mr. Sher **did introduce** evidence of his mental anguish.

Indeed, how can Lafayette adjust Mr. Sher's claim in bad faith, but not intend the consequences?

How can Lafayette repeatedly refuse to fulfill its obligations under the policy for nearly two and a

---

[18] *See* Tr. 3/14/07, p. 98, ln. 17 - p. 99, ln. 28, p. 99, lns. 8-12 (Vol. XVI).

[19] *See* Tr. 3/15/07, p. 71 lns. 23-29, p. 116, ln. 32, p. 117, lns. 1-5 (Vol. XVII); *See also* Tr. 3/19/07, p. 75 lns. 6-10, p. 78 lns. 6 -9 (Vol. XVIII).

[20] *See* Tr. 3/13/07, p.83, lns. 25-32, p. 84 lns 1-10 (Vol. XV).

half years, but not expect to "aggrieve" the feelings of Mr. Sher? Respectfully, the Court's finding on this issue is illogical.

Further, Justice Knowles correctly points out that a property insurance policy is not intended to fulfill only a pecuniary interest. In its decision, the Court focuses on the fact that a *commercial* insurance policy is not designed to satisfy a non-pecuniary interest. What the Court ignores, however, is that Mr. Sher <u>lived</u> in the property at issue, and thus, it was not merely a commercial property. As discussed in Mr. Sher's original brief, Mr. Sher did not merely insure the monetary value of the property, but protected his <u>**home**</u>, where he raised his family, and which was the <u>**first**</u> and <u>only</u> piece of real estate Mr. Sher ever purchased in this country after saving "<u>**every cent that he possibly could**</u>" to purchase the [P]roperty."[21] In fact, Lafayette's own file indicates that Mr. Sher "takes pride in ownership" of the property.[22] In *Bi-Economy Market, Inc. v. Harleysville Insurance Company of New York*, the court recognized that in entering a contract of insurance, the insured may "<u>**bargain for the peace of mind, or comfort, of knowing that [he] will be protected in the event of a catastrophe.**</u>"[23] In fact, the *Bi-Economy Market* court relied on the same decision cited by Mr. Sher in his original brief, *Beck v. Farmers Insurance Exchange*.[24] The court also relied on the Mississippi Supreme Court's decision in *Andrew Jackson Life Insurance Company v. Williams*, which held that "an insured bargains for more than mere eventual monetary proceeds of a policy; insureds bargain for such intangibles as risk aversion, peace of mind, and certain and prompt payment of the policy proceeds upon submission of a valid claim."[25] Here, Lafayette knew or should have known that it would "aggrieve the feelings" of Mr. Sher by continuously acting in bad faith while adjusting the claim. Therefore, rehearing on this issue is warranted.

---

[21]  Tr. 3/13/2007, p. 63, *ll.* 29-32, p. 64, *ll.* 1-16 (Vol. XV)(emphasis added).
[22]  Pl. ex. P-108, pp. 294, 295,300, 302, 429.
[23]  2008 WL 423451 (N.Y. 2/19/2008)(emphasis added); *see also Panasia Estates, Inc. v. Hudson Ins. Co.,* 2008 WL 420014 (N.Y. 2/19/2008)(citing to the *Bi-Economy* decision regarding an insured's ability to recover consequential damages for the bad faith breach of the insurance contract.).
[24]  701 P.2d 795, 802 (Utah 1985).
[25]  566 So.2d 1172, 1179 (Miss. 1990).

**VI.**   **CONCLUSION**

For the reasons listed above, Mr. Sher respectfully requests that this Court grant rehearing

in this matter on the issues discussed herein.

Respectfully submitted,

JAMES M. GARNER, #19589,
APPEAL COUNSEL
DARNELL BLUDWORTH #18801
TIMOTHY B. FRANCIS #14973
ELLEN PIVACH DUNBAR #30018
SHER GARNER CAHILL RICHTER
KLEIN & HILBERT, L.L.C.
909 Poydras Street, Suite 2800
New Orleans, LA 70112
Telephone: (504) 299-2102
Facsimile: (504) 299-2300

and

FRANK C. DUDENHEFER, JR. # 5717
THE DUDENHEFER LAW FIRM, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130-6004
Telephone: 504-525-2553

COUNSEL FOR PLAINTIFF, JOSEPH SHER

-13-