UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, *Robinson* (06-2268) | § | |
| _____ | § | |

**MEMORANDUM OF LAW IN SUPPORT
OF THE UNITED STATES OF AMERICA'S MOTION
TO DISMISS COUNTS TWO AND THREE OF THE AMENDED COMPLAINT**

On June 13, 2008, Plaintiffs filed an amended complaint, again seeking to hold the United States liable for the damage caused by Hurricane Katrina in August 2005. The amended complaint contains three counts. Counts One and Two relate to the Mississippi River Gulf Outlet ("MRGO"), and seek to hold the United States liable based on theories of negligence (Count One) and strict liability (Count Two). Count Three is a claim for "Negligent Supervision and Vicarious Liability." There, Plaintiffs allege that the United States negligently supervised the work that its contractor, Washington Group International ("WGI"), performed on the Lock Replacement Project at the East Bank Industrial Area ("EBIA") adjacent to the IHNC.

The Court should dismiss Count Two because under the Federal Tort Claims Act ("FTCA"), the United States may not be held liable based on a theory of strict liability. The Court should dismiss Count Three for three reasons: (1) Plaintiffs failed to present their administrative claims prior to filing suit; (2) this claim is barred by the statute of limitations; and

(3) this claim is barred by the discretionary function exception.  Additionally, to the extent Count Three seeks relief based on yet unidentified acts of negligence, the Court must dismiss it for failure to state a claim upon which relief could be granted.

## BACKGROUND

Hurricane Katrina struck southeast Louisiana in August 2005.  On October 24, 2005, Plaintiffs presented administrative claims to the United States Army.  *See* Ex. A.  There, Plaintiffs claimed damages "caused as a direct and proximate result of the negligence of the United States Army Corps of Engineers in the design, construction, and maintenance of the Mississippi River Gulf Outlet navigational/shipping structure located in St. Bernard and Orleans Parishes in Louisiana."  *See id*. at 1-2.

On April 25, 2006, Plaintiffs filed a "Complaint for Damages Caused by the Design, Construction, Operation, and Maintenance of the Mississippi River Gulf Outlet."  *See* Doc. 1.  True to its name, Plaintiffs' initial pleading presented two counts that focused entirely on the MRGO.  Count One sought to hold the United States liable for its alleged negligence in "designing, constructing, operating, maintaining, and repairing" the MRGO.  *Id.* ¶ 93.  Count Two, premised on a theory of strict liability, sought to hold the United States liable for designing the MRGO in a way that caused a "funneling/channeling effect" and destroyed the surrounding wetlands.  *Id.* ¶¶ 111-14.

On May 18, 2006, following the filing of this lawsuit, the United States Army denied Plaintiffs' administrative claims.  *See* Ex. B.[1]

---

[1] Notwithstanding these denials, the United States has not denied the overwhelming majority of claims presented to it that pertain to Hurricane Katrina.

Recently, Plaintiffs took the position that their original complaint could be read broadly enough to include a claim that the United States negligently supervised the work that its contractor, WGI, performed on the IHNC Lock Replacement Project at the EBIA. At a status conference on June 3, 2008, the Court rejected Plaintiffs' position: "Given the broadest reading to the Complaint, the Court finds that indeed the issue of liability for any damages arising from the EBIA was *not* raised in the initial Complaint." *See* Doc. 13438-3 at 2 (emphasis added). Accordingly, the Court gave Plaintiffs until June 13, 2008 to amend their pleading to assert a claim based on work performed at the EBIA. *See id.*

On June 13, 2008, Plaintiffs filed their amended complaint. In addition to reasserting their MRGO claims for negligence (Count One) and strict liability (Count Two), Plaintiffs asserted in Count Three their new claim for "Negligent Supervision and Vicarious Liability" related to the work performed by WGI at the EBIA. *See* Doc. 13527-2 ¶¶ 115-30. The gist of this claim is that the United States was negligent "in overseeing and supervising the work of [its] third party contractor," WGI, and consequently failed to prevent WGI, in the course of performing work at the EBIA, from committing negligence that resulted in the flooding of New Orleans East, the Lower Ninth Ward, and St. Bernard Parish. *See generally id.* ¶¶ 115-21. Specifically, Plaintiffs alleged that the United States was negligent in its "failure to adequately monitor, oversee, supervise, check or inspect the work of [WGI] in connection with the IHNC Lock Expansion Program" by, among other things, failing to make sure that WGI followed applicable construction guidelines, and failing to "train, inform, or caution" WGI about the potential damage that could be caused by its work.[2] *See id.* ¶ 120.

---

[2] Plaintiffs also alleged—in the broadest terms possible—that the United States "engaged in other related acts of negligence to be determined prior to time of trial." *See* Doc. 13527-2 ¶ 120.

3

**ARGUMENT**

The claims expressed in Counts Two and Three of the amended complaint must be dismissed with prejudice. Count Two is barred as a matter of law because under the FTCA, the United States may not be held liable based on a theory of strict liability. Count Three is barred as a matter of law by the FTCA's administrative claim requirement, statute of limitations, and discretionary function exception. Also, to the extent Count Three seeks relief based on unspecified acts of negligence, it fails to state a claim upon which relief could be granted.

**I.     The Court Must Dismiss Count Two As A Matter Of Law**

Count Two is labeled as one for "Strict Liability." Doc. 13527-2 at 41. It alleges that under Louisiana law, the United States is "strictly liable for the damages occasioned by the vices and/or defects in the MR-GO." *Id.* ¶ 112. Whatever can be said of this claim under state law, it plainly fails as a matter of law under the FTCA.

Under the FTCA, the United States may not be subjected to strict liability. *See Dalehite v. United States*, 346 U.S. 15, 44-45 (1953) (holding that under the FTCA there can be no "liability without fault"); *Laird v. Nelms*, 406 U.S. 797, 799 (1972) ("Regardless of state law characterization, the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of 'misfeasance or nonfeasance' . . . on the part of the Government.") (citation omitted); *Tindall v. United States*, 901 F.2d 53, 55 n.3 (5th Cir. 1990) ("Under the FTCA, the United States is not subject to liability under theories of strict liability."); *Lively v. United States,* 870 F.2d 296, 300 (5th Cir. 1989) ("Under the plain language of the [Act], it is clear that strict liability 'no fault' claims are not cognizable under the FTCA."); *Miller v. United States*, 463 F.3d 1122, 1124 (10th Cir. 2006) ("In *Dalehite*, the Supreme Court

held that the waiver of immunity under the FTCA, by its terms, . . . does not extend to liability without fault—namely, strict liability.").

Because Count Two is based exclusively on a theory of strict liability, and because under the FTCA, the United States cannot be held liable based on a theory of strict liability, the Court must dismiss Count Two with prejudice.

## II.     The Court Must Dismiss Count Three As A Matter Of Law

The claim asserted in Count Three, based on the alleged negligent supervision by the United States of the work performed by WGI at the EBIA, fails for three reasons.  First, this claim is barred by the administrative claim requirement.  *See* 28 U.S.C. § 2675(a).  Second, this claim is barred by the statute of limitations.  *See* 28 U.S.C. § 2401(b).  Third, this claim is barred by the discretionary function exception.  *See* 28 U.S.C. § 2680(a).  Moreover, to the extent Plaintiffs seek to recover based on "other related acts of negligence to be determined prior to time of trial," *see* Doc. 13527-2 ¶ 120, this claim must be dismissed for failure to state a claim upon which relief could be granted.

### A.     Count Three Is Barred By The Administrative Claim Requirement

Presenting an administrative claim to the agency responsible for the alleged injury is a jurisdictional prerequisite to filing suit under the FTCA.  *See*  28 U.S.C. § 2675(a); *Cook v. United States*, 978 F.2d 164, 166 (5th Cir. 1992); *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989); *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 2186400, at *2 (E.D. La. May 27, 2008) (Duval, J.).

To satisfy the FTCA, an administrative claim must provide to the United States "facts sufficient to allow [the] claim to be investigated."  *Cook*, 978 F.2d at 166; *accord Portillo v.*

5

*United States*, No. 93-8275, 1994 WL 395174, at *4 (5th Cir. 1994).[3] "All that is required is that the theory put forward in the complaint filed in the district court [must] be based on the facts that are stated in the administrative claim." *Burchfield v. United States*, 168 F.3d 1252, 1255 (11th Cir. 1999). Thus, "a suit brought under the [FTCA] cannot include additional claims never presented to the appropriate agency." *Franz v. United States*, 414 F. Supp. 57, 59 (D. Ariz. 1976); *see also Dynamic Image Techs., Inc. v. United States*, 221 F.3d 34, 40 (1st Cir. 2000) (affirming dismissal where "the amended complaint exceeded the scope of the administrative claim"); *Portillo v. United States*, 816 F. Supp. 444, 446 (W.D. Tex. 1993) ("Facts and theories of liability which were never presented to the agency as part of an administrative claim cannot form the basis for a complaint under the Federal Tort Claims Act."), *aff'd*, 1994 WL 395174.

In *Portillo*, for example, the plaintiff presented an administrative claim that he suffered injuries due to an Army hospital's failure to monitor him after surgery. *See Portillo*, 1994 WL 395174, at *4. Later, the plaintiff sought to amend his complaint to assert a "new contention that [hospital] personnel negligently administered his anesthesia." *Id.* The Fifth Circuit held that the plaintiff had failed to exhaust his administrative remedies:

> Because the administrative claim did not give the government notice of any facts that would have led it to investigate the circumstances surrounding the administration of [the plaintiff's] anesthesia, the exhaustion requirement was not satisfied, leaving the district court without jurisdiction to address the claim; its dismissal was not error. *See Bush v. United States*, 703 F.2d 491, 494 (11th Cir. 1983) (holding that an administrative claim must specifically delineate facts that put the government on notice of each potential basis for relief).

*Id.*

---

[3] Although unpublished, *Portillo* binds this Court. *See* 5th Cir. R. 47.5.3 ("Unpublished opinions issued before January 1, 1996, are precedent."); *see also Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 882 n.7 (5th Cir. 1998) (recognizing the precedential nature of unpublished decisions issued before January 1, 1996).

Like the administrative claim in *Portillo*, Plaintiffs' administrative claims "did not give the government notice of any facts that would have led it to investigate the circumstances surrounding" Plaintiffs' negligent supervision claim relating to WGI's work at the EBIA. Indeed, Plaintiffs' administrative claims did not even mention the Lock Replacement Project, WGI, or the EBIA; rather, they pointed *exclusively* to a completely different set of facts—"the negligence of the United States Army Corps of Engineers in the design, construction, and maintenance of the Mississippi River Gulf Outlet." Ex. A at 1.

Succinctly (and emphatically), Plaintiffs claimed that "the Corps of Engineers has had a legal duty under Louisiana law to maintain, design and/or construct the MRGO in a manner so as to prohibit the flooding of St. Bernard Parish. The Corps breached that duty by improperly designing, constructing and/or maintaining the MRGO . . . ." *Id.* at 2; *accord id.* at 4, 5; *see also id.* at 6 (stating that Plaintiffs represent a class of individuals who "experienced extensive property damage, business loss and related mental anguish as a direct and proximate result of . . . the negligence of the United States Army Corps of Engineers (USACE) in the design, maintenance and construction of the MRGO"); *cf. id.* at 7-8 ("Statement of the Case," alleging that certain "hydrodynamic phenomena" "should have been taken into account by the USACE in its design, construction and maintenance of the MRGO"). In no way did the administrative claims advert to any other act or omission of any employee of the United States as a cause of Plaintiffs' alleged damages.

Plaintiffs' administrative claims failed to put the United States on notice that their alleged damages might have been caused by the Lock Replacement Project or, more specifically, by work performed at the EBIA. *See Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012 (7th Cir. 1991) (observing that "a plaintiff cannot 'present one claim to the agency and then maintain suit

7

on the basis of a different set of facts'") (quoting *Dundon v. United States*, 559 F. Supp. 469, 476 (E.D.N.Y. 1983)); *Tidd v. United States*, 786 F.2d 1565, 1568 (11th Cir. 1986) ("For an agency to be able to initiate an investigation into a tort claim . . . it must be apprised of the location and approximate date of the incident.").

Further, the administrative claims presented no facts that would have suggested that Plaintiffs' injuries somehow stemmed from acts of negligent *supervision*. Again, Plaintiffs' pre-suit notice made no mention of WGI, or of Plaintiffs' claim—unveiled for the first time in Count Three—that the United States failed to adequately supervise WGI's work at the EBIA. Plaintiffs' failure to provide facts relating to their negligent supervision claim requires a finding that they failed to exhaust their administrative remedies. *See Kikumura v. Osagie*, 461 F.3d 1269, 1302 (10th Cir. 2006); *Bethel v. United States*, 495 F. Supp. 2d 1121, 1124 (D. Colo. 2007).

In *Kikumura*, the inmate-plaintiff presented an administrative claim stating that he received inadequate medical care while ill, *see Kikumura*, 461 F.3d at 1278, but pursued a lawsuit for negligent supervision of medical staff, *id.* at 1302. Following the district court's dismissal of that claim, the Tenth Circuit affirmed. *Id.* The court held that dismissal was required because the plaintiff's administrative claim, despite alleging inadequate medical care, "fail[ed] to mention the possibility that his injuries were caused by the inadequate training and supervision of [prison] staff." *Id.*

Similarly, in *Bethel*, the plaintiff initially brought suit for medical negligence based on the actions of a treating anesthesiologist. *Bethel*, 495 F. Supp. 2d at 1122. Later, the plaintiff sought to amend her complaint to assert a claim against the VA hospital for its "negligent

8

credentialing" of the same anesthesiologist. *Id.* at 1123. Applying the administrative claim requirement, the court denied the plaintiff leave to assert the new claim:

> Based on the comparison of the administrative claim to the claim plaintiff now seeks to add, the Court holds that, under the FTCA, plaintiffs' administrative claim provided insufficient notice to the government with respect to the negligent credentialing cause of action. Specifically, the "facts and circumstances" of which plaintiffs gave notice to the government via the administrative claim, which again focused on actions relating to Mr. Bethel's treatment during a surgical procedure on a specific date, are simply not those that would put the government on notice to investigate the [hospital's] failures in credentialing [the anaesthesiologist] or monitoring her competency.

*Id.* at 1124.

Like the administrative claims in *Kikumura* and *Bethel*, Plaintiffs' administrative claims make no reference to any alleged deficiencies in the manner in which the United States supervised or monitored its contractor, WGI. Instead, Plaintiffs' administrative claims allege acts of direct negligence by the United States relating to how it designed, constructed, and maintained the MRGO.

Simply put, Plaintiffs failed to provide "facts sufficient to enable [the United States] thoroughly to investigate its potential liability" with respect to how it supervised WGI's work at the EBIA. Consequently, the claims set forth in Count Three must be dismissed with prejudice because they were not administratively presented.

**B.     Count Three Is Barred By The Statute Of Limitations**

The FTCA provides that a tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the . . . final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). "Although phrased in the disjunctive, 'this statute requires a claimant to file an administrative claim within two years [of

9

accrual] *and* file suit within six months of its denial.'" *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001) (quoting *Houston v. U.S. Postal Serv.*, 823 F.2d 896, 902 (5th Cir. 1987)).

Plaintiffs cannot seriously contend that their EBIA claims were timely filed under the FTCA. Plaintiffs' cause of action accrued in August 2005.[4] Plaintiffs *never* presented their EBIA claims to the appropriate federal agency. Plaintiffs' EBIA claims therefore are time-barred because they were not presented to the appropriate Federal agency within two years after they accrued. *See* 28 U.S.C. § 2401(b).

Moreover, even if the Court were to find that Plaintiffs did present their EBIA claims in 2005 when they administratively presented their MRGO claims, Count Three still would be time-barred because an action on the EBIA claims was not begun within six months after the Army's final denial of those claims. *See* 28 U.S.C. § 2401(b).

Nor could Plaintiffs seriously contend that their EBIA claims should relate back to the date they filed their initial complaint. Federal Rule of Civil Procedure 15(c) provides that a subsequently filed claim "relates back" to the date of the originally filed complaint if it "arose out of the conduct, transaction, or occurrence" set forth in the original pleading. Fed. R. Civ. P. 15(c). "In contrast, when new or distinct conduct, transactions, or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed." *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985).

---

[4] "A cause of action accrues, under federal law, 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Brown v. Nationsbank Corp.*, 188 F.3d 579, 589 (5th Cir. 1999) (quoting *Moore v. McDonald*, 30 F.3d 616, 620-21 (5th Cir. 1994)); *see also Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2006) ("The general rule under the FTCA is that a tort action accrues at the time of a plaintiff's injury.").

The Fifth Circuit has regularly rejected untimely claims that arose from conduct different than that found in the original complaint. *See, e.g.*, *In re Coastal Plains*, 179 F.3d 197, 216 (5th Cir. 1999) (finding that a tortious interference claim did not arise from the same conduct as a failure to return inventory claim); *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 864 (5th Cir. 1993) (finding that amendment did not relate back because it alleged "new and distinct conduct"); *Holmes*, 757 F.2d at 1566 (finding that amendment did not relate back because under the original complaint, proof would require a demonstration of bias, fraud, and prejudice, while under the amended complaint, proof would require a showing of arbitrary or capricious conduct).

This Court has already determined that "the issue of liability for any damages arising from the EBIA was not raised in the initial Complaint." *See* Doc. 13438-3 at 2. This finding was unassailably correct, as the initial complaint focused *entirely* on allegations of negligence by the United States in the way it designed, constructed, and maintained *the MRGO*. Indeed, Plaintiffs' EBIA claim is wholly distinct and separate from their MRGO claims in several critical respects.

First, the EBIA claim involves conduct pertinent to a different waterway from the one that was at issue in the original complaint. The United States acquired the EBIA and engaged WGI to remediate it in preparation for the temporary re-routing of the IHNC during the construction of a replacement lock at the Mississippi River. None of this was relevant to the claims set forth in the original complaint, which pertained to the MRGO.

Second, the EBIA claim pertains entirely to conduct that occurred during a discrete period shortly before Hurricane Katrina. WGI's work at the EBIA began in 2000 and was

11

completed in 2005. In contrast, the original complaint concerns conduct that for the most part occurred in the twentieth century.

Third, the EBIA claim concerns the manner in which the United States supervised a contractor. Although the MRGO Project, like the Lock Replacement Project, was largely prosecuted by contractors, the original complaint did not challenge the manner in which the United States supervised contractors, but instead focused on decisions by the United States regarding how the project would be prosecuted. This last difference highlights how distinct the two claims are, as proof of Plaintiffs' EBIA claim would focus on whether the United States sufficiently supervised WGI's work, including the level of staffing the United States employed and the degree to which the United States actually directed WGI's activities. These and other elements of a negligent supervision claim are entirely distinct from the conduct challenged in Plaintiffs' original pleading.

Because the claim expressed in Count Three—relating to the alleged negligent supervision of WGI's work at the EBIA—did not arise "out of the conduct, transaction, or occurrence" described in Plaintiffs' original complaint, which pertained only to the MRGO, the Court should dismiss Count Three with prejudice.

    **C.**    **Count Three Is Barred By The Discretionary Function Exception**

Plaintiffs allege that the United States was negligent "in overseeing and supervising the work of [its] third party contractor," WGI, and consequently failed to prevent WGI from causing damage to the flood control structures that protected their property.[5] *See generally* Doc. 13527-2

---

[5] Although Count Three is partially labeled as one for "Vicarious Liability," *see* Doc. 13527-2 at 42, it is well established that the United States may not be held liable for the acts of independent contractors such as WGI. *See Guile v. United States*, 422 F.3d 221, 229 n.10 (5th Cir. 2005) (recognizing that a claim for "vicarious liability would be barred by the independent

¶¶ 115-21.  This claim is barred by the discretionary function exception to the FTCA, which precludes claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

Courts follow a two-tier analysis to identify protected discretionary functions in FTCA actions.  First, the court must determine whether the governmental act or omission complained of "involves an element of judgment or choice."  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *see also United States v. Gaubert*, 499 U.S. 315, 322 (1991).  "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to that directive.'"  *Gaubert*, 499 U.S. at 322 (quoting *Berkovitz*, 486 U.S. at 536).  Second, because the exception is designed to prevent, by way of tort suit, the second-guessing of legislative and administrative decisions grounded in social, economic, and political policies, the court must ask whether the choice or judgment was indeed based on considerations of public policy.  *Gaubert*, 499 U.S. at 322-23; *Berkovitz*, 486 U.S. at 536-37.

Courts have routinely recognized that because decisions regarding the extent to which the United States should supervise a contractor inherently involve judgments grounded in public policy, such decisions are protected by the discretionary function exception.  *See, e.g.*, *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 819-20 (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic

---

contractor exception to the FTCA") (citing to *Broussard v. United States*, 989 F.2d 171, 175 (5th Cir. 1993)).

kind."); *Guile v. United States*, 422 F.3d 221, 230-31 (5th Cir. 2005) ("Supervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function."); *Andrews v. United States*, 1212 F.3d 1430, 1440 (11th Cir. 1997) ("Nor is the government liable for negligent failure to supervise [its contractor]. The discretionary function exception encompasses government decisions about how and how much to supervise the safety procedures of independent contractors."); *Kirchmann v. United States*, 8 F.3d 1273, 1276-77 (8th Cir. 1993) ("If arguably based on policy considerations, both negligence in supervising a contractor and the failure to supervise a contractor at all are included in the decisions protected by the discretionary function exception.").

As the Supreme Court has held, "[f]or a complaint to survive a motion to dismiss [in an FTCA case], it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. 315, 324-25. In Count Three, Plaintiffs have alleged *no* facts that would support a finding that the conduct at issue was prescribed by a particular statute or regulation, or was not based on legitimate policy considerations. Accordingly, Count Three must be dismissed with prejudice.

### D. To The Extent Plaintiffs Seek To Recover Based On Yet Unidentified Acts Of Negligence, Count Three Fails To State A Claim

Finally, in paragraph 120 of their amended complaint, Plaintiffs allege that the United States "engaged in other related acts of negligence to be determined prior to time of trial." *See* Doc. 13527-2 ¶ 120. This allegation fails to state a claim upon which relief could be granted.

"A claimant does not have to set out in detail the facts on which the claim for relief is based, but must provide a statement sufficient to put the opposing party on notice of the claim."

*EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank*, 467 F.3d 466, 470 n.2 (5th Cir. 2006) (quoting 2 James W. Moore et al., Moore's Federal Practice § 8.04[1][a], at 8-22 (Matthew Bender 3d ed. 2006)); *see also Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 n.3 (2007) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."); *Swierkiewica v. Sorem N.A.*, 534 U.S. 506, 512 (2002) (holding that a complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

To simply allege that the United States "engaged in other related acts of negligence to be determined prior to time of trial," without providing any description of what those alleged acts might be, fails to satisfy the pleading requirements of the Federal Rules of Civil Procedure.  *See Twombly*, 127 S. Ct. at 1965 & n.3; *Swierkiewica*, 534 U.S. at 512; *EPCO*, 467 F.3d at 470 n.2. The Court should therefore dismiss Count Three, to the extent it is dependent on acts of negligence not yet identified by Plaintiffs.

**CONCLUSION**

Because the United States cannot be held liable based on a theory of strict liability, the Court must dismiss Count Two with prejudice.  Further, because it is barred by the administrative claim requirement, the statute of limitations, and the discretionary function exception of the FTCA, this Court should dismiss Count Three with prejudice.

      Respectfully Submitted,

      GREGORY G. KATSAS
      Assistant Attorney General

      PHYLLIS J. PYLES
      Director, Torts Branch

      JAMES G. TOUHEY, JR.
      Assistant Director, Torts Branch

      s/ Robin D. Smith
      Robin D. Smith
      Senior Trial Counsel, Torts Branch, Civil Division
      U.S. Department of Justice
      Benjamin Franklin Station, P.O. Box 888
      Washington, D.C.  20044
      (202) 616-4400 / (202) 616-5200 (Fax)
      Attorney for the United States

      s/ Jeffrey P. Ehrlich
      Jeffrey P. Ehrlich
      Trial Attorney, Torts Branch, Civil Division
      U.S. Department of Justice
      Benjamin Franklin Station, P.O. Box 888
      Washington, D.C.  20044
      (202) 616-4400 / (202) 616-5200 (Fax)
      Attorney for the United States