**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE KATRINA CANAL BREACHES** | **CIVIL ACTION** |
| **CONSOLIDATED LITIGATION** | |
| | **NO. 05-4182** |
| **PERTAINS TO:** | **SECTION "K"(2)** |
| *Albano* **C.A. No. 07-4837** | |

## ORDER AND REASONS

Before the Court is James Construction Group, LLC's ("James") Motion to Dismiss

Complaint (Doc. 8982) based on James' contention that this suit is prescribed.  For the reasons

that follow, the Court will deny the motion; however, it will administratively close it pending the

resolution of the Master Class Action Complaints that are being litigated presently in this

consolidated litigation.

The instant mass joinder complaint for damages arises out of the collapse of the levees on

and around August 29, 2005 in the aftermath of Hurricane Katrina.  It  was filed on August 28,

2007.  James maintains that the suit was therefore late filed as the prescriptive period for

delictual actions as found in La. Civ. Code art. 3492 is one year.   Defendant argues that there is

no allegation that plaintiffs could not have discovered their claims prior to August 28, 2006, thus

they cannot argue that the "discovery rule" would apply so as to suspend the running of that

period.   *Griffin v. Kinberger* 507 So.2d 821, 823 (La. 1987) (prescription begins to run when it

can be objectively determined that the exercise of reasonable diligence would have alerted a

reasonably minded plaintiff of the reasonable possibility that it was the victim of tortious

conduct).

In addition, James maintains that the period of suspension imposed by the United States

Court for the Eastern District of Louisiana as a result of Hurricane Katrina was lifted on

November 25, 2006, and thus, the addition of that period would still not cure the failure to file timely. The last date for a timely filed suit including the judicial suspension period would have been November 25, 2006, 10 months before the filing of this suit.

Finally, James contends that La. Rev. Stat. 9:5824, which provides that parties in storm-affected areas may seek a limited suspension and/or extension of the prescriptve deadlines, likewise does not save this Complaint as there is no allegation that plaintiffs timely sought such a suspension or extension as required under the statute.

Plaintiffs' oppose this motion averring that the sole reason for the filing of this lawsuit was to preclude these particular plaintiffs from being precluded from pursing their claims under either the Admiralty Extension Act or the Federal Tort Claims Act, specifically pertaining to the claims against the United States Army Corps of Engineers. In addition, they maintain that they desire to remain part of the class action lawsuit pending herein, that being *Colleen Berthelot, et al. v. Boh Bros. Constr. Co., et al.,* C.A. No. 05-4182. They also noted that they intended to file a motion to stay these proceedings. (Doc. 10510 at 4).[1] Finally, they argue that under La. Code Civ. Proc. art 596, that "liberative prescription on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein." That suspension under the statute begins to run again when (1) a person electing to be excluded from the class submits an election form so stating; (2) an individual is excluded from a class certification order and 30 days has expired after publication of notice to that person ; (3) or if class certification is denied

---

[1]It should be noted that the Court did enter a global stay on January 17, 2008 (Doc. 10620 and clarified in Doc. 10723) when it granted the United States's Motion for a Stay of All Cases Apart from Barge, *Robinson*, and the Levee and MRGO Master Class Action Cases.

in its entirety, after thirty days has passed from the mailing or publication of notice to the

purported class as a whole.  La Code Civ. Proc art. 596.

      As this case is not based on diversity jurisdiction, the Louisiana Code of Civil Procedure

does not control the issue of the effect of the filing of a class action and the subsequent filing of

an individual lawsuit on the timeliness of that individual suit.  Rather, this Court must look to

Fed. R. Civ. Pro. 23 and its interpretation by the Supreme Court  in *American Pipe & Const. Co.*

*v. Utah*, 414 U.S. 538 (1974) and that case's progeny.  The Supreme Court announced in

*American Pipe*, "We are convinced that the rule most consistent with federal class action

procedure must be that the commencement of a class action suspends the applicable statute of

limitations as to all asserted members of the class who would have been parties had the suit been

permitted to continue as a class action."  *Id* at 554.  The Supreme Court again addressed the issue

in  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 n. 13 (1974) noting again that the filing of a

class suit tolled the statute of limitations for class members who sought to intervene after the

class certification motion was denied for failure to demonstrate numerosity.  414 U.S. at 552-

523, 94 S.Ct. 756.  The third case discussing the issue is  *Crown, Cork & Seal Co. v. Parker,* 462

U.S. 345  (1983*),* where the Court, remarked that *American Pipe* was not limited to intervenors,

stating the "[t]he filing of a class action tolls the statute of limitations 'as to all asserted members

of the class.'" *Id.* at 350.  *American Pipe* and *Crown, Cork & Seal* arose in the context of filings

after class certification was addressed; however, the issue remains as to whether this same tolling

is applicable to suits filed after a case would be prescribed but for a pending class action upon

which a decision as to class certification had not been made.

While four Circuit Courts of Appeal have found that separately-filed, but otherwise prescribed lawsuits cannot be salvaged by a pending class action lawsuit, this Court recently ruled that it finds the minority analysis found in *In re WorldCom Securities Litigation*, 496 F.3d 245 (2nd Cir. 2007) more persuasive.  (Doc. 11247, Transcript of Proceedings of January 23, 2008). This Court cited the Second Circuit decision as follows:

> This court has not yet faced the question whether the tolling required by *American Pipe* for members of a class on whose behalf a class action is filed applies also to class members who file individual suits before class certification is resolved. [footnote omitted].  We now conclude that it does.
>
>  The theoretical basis on which *American Pipe* rests is the notion that class members are treated as parties to the class action "until and unless they received notice thereof and chose not to continue." *American Pipe,* 414 U.S. at 551, 94 S.Ct. 756. Because members of the asserted class are treated for limitations purposes as having instituted their own actions, at least so long as they continue to be members of the class, the limitations period does not run against them during that time. Once they cease to be members of the class-for instance, when they opt out or when the certification decision excludes them-the limitation period begins to run again on their claims.
>
> Nothing in the Supreme Court decisions described above suggests that the rule should be otherwise for a plaintiff who files an individual action before certification is resolved. To the contrary, the Supreme Court has repeatedly stated that " 'the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.' " *Crown,* 462 U.S. at 353-54, 103 S.Ct. 2392 (quoting *American Pipe,* 414 U.S. at 554, 94 S.Ct. 756). We see no reason not to take this statement at face value.
>
> It would not undermine the purposes of statutes of limitations to give the benefit of tolling to all those who are asserted to be members of the class for as long as the class action purports to assert their claims. As the Supreme Court has repeatedly emphasized, the initiation of a class action puts the defendants on notice of the claims against them. *See, e.g., American Pipe,* 414 U.S. at 554-55, 94 S.Ct. 756 (noting that the purposes of statutes of limitations "are satisfied when ... a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment"). A defendant is no less on notice when putative class members file individual suits before certification. The Supreme Court explained that "[c]lass members who do not file suit while the

class action is pending cannot be accused of sleeping on their rights," *Crown,* 462 U.S. at 352, 103 S.Ct. 2392; the same is certainly true of class members who file individual suits before the court decides certification.

In concluding that the Appellants could not benefit from *American Pipe* tolling, the district court stated that the goal of avoiding a "needless multiplicity of actions" is undermined when class members file individual suits before a certification motion is decided. The district court reasoned that class members who wait to sue individually until after the class certification decision will be in a "better position to evaluate whether they wish to proceed with their own lawsuit." Moreover, class members' desire to sue separately may "evaporate" once they have a chance to assess the class representatives' performance.

The district court may be correct that its conception of the *American Pipe* rule would reduce the number of individual suits filed by class members. But this is beside the point. While reduction in the number of suits may be an incidental benefit of the *American Pipe* doctrine, it was not the purpose of *American Pipe* either to reduce the number of suits filed, or to force individual plaintiffs to make an early decision whether to proceed by individual suit or rely on a class representative. Nor was the purpose of *American Pipe* to protect the desire of a defendant "not to defend against multiple actions in multiple forums." *Crown,* 462 U.S. at 353, 103 S.Ct. 2392. The *American Pipe* tolling doctrine was created to protect class members from being *forced* to file individual suits in order to preserve their claims. It was not meant to induce class members to forgo their right to sue individually.

*In re WorldCom Securities Litigation,* 496 F.3d at 254 -256.  *See also Shriners Hospitals for Children v. Quest Communications Int'l, Inc.*, 2007 WL 2801494 (D. Col. Sept. 24, 2007)

This Court embraced the *WorldCom* rationale, finding that the reverse is illogical as it appeared to the Court that the major impetus for the "majority view" was inconvenience for the Court because of the possibility of numerous filings.  Such a result could be handled with the administrative closing of such suits, which is precisely what this Court will do with this suit.

Accordingly,   **IT IS ORDERED** that the Motion to Dismiss (Doc. 8982) is **DENIED**.

**IT IS FURTHER ORDERED** that  this matter be and is hereby

**ADMINISTRATIVELY CLOSED.**

New Orleans, Louisiana, this ____2nd____ day of July, 2008.

5

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**