# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | • | |
| CONSOLIDATED LITIGATION | • | |
| | • | CIVIL ACTION |
| | • | |
| PERTAINS TO:  BARGE | • | NO. 05-4182 |
| | • | and consolidated cases |
| | • | |
| *Boutte v. Lafarge*      05-5531 | • | SECTION "K"  (2) |
| *Mumford v. Ingram*      05-5724 | • | |
| *Lagarde v. Lafarge*      06-5342 | • | |
| *Perry v. Ingram*      06-6299 | • | JUDGE |
| *Benoit v. Lafarge*      06-7516 | • | STANWOOD R. DUVAL, JR. |
| *Parfait Family v. USA*      07-3500 | • | |
| *Lafarge v. USA*_____07-5178_____ | • | MAG. |
| | • | JOSEPH C. WILKINSON, JR. |
| | • | |

<u>**MEMORANDUM IN SUPPORT OF OBJECTIONS AND APPEAL TO THE DISTRICT
COURT FOR REVIEW OF THE MAGISTRATE COURT'S ORDER ON MOTION
RELATIVE TO LAFARGE NORTH AMERICA, INC.'S MOTION FOR PROTECTIVE
ORDER WITH RESPECT TO PLAINTIFFS' NOTICE OF PROPOSED FRCP 30(B)(6)
DEPOSITION OF LAFARGE NORTH AMERICA**</u>

**MAY IT PLEASE THE COURT:**

The Barge Plaintiffs seek review of aspects of the Magistrate Court's ruling on a discovery

motion brought by Lafarge North America, seeking a protective order as to the Barge Plaintiffs'

proposed Fed. R. Civ. P. 30(b)(6) deposition of Lafarge North America.  Review is appropriate

because, though undersigned are confident of the Honorable Magistrate's intentions, the resulting

ruling contradicts the Magistrate's earlier orders, and supports this Court's findings of clear errors

as to facts and law which, in light of Lafarge's motion, result in deprivation of important discovery.

As well, new evidence - that is, this Court's increasingly refined and expressed intentions as to the

1

course of this litigation, which have evolved since submission of the matter below - demonstrates that review is proper, as is modification or reversal of the resulting Order.  Plaintiffs elect review by the District Court, in possible collaboration with the Magistrate Court, to offer a broader perspective given the Magistrate's involvement in the limitation action, and to mitigate potential delay and disruption of the trial schedule.

## FACTS

The procedural history of the Barge Track of the Katrina Litigation Umbrella is quite different from that of the Levee and MRGO tracks, and Robinson. While Levee, MRGO and Robinson proceeded in more or less normal fashion since their inception, that is, the parties were afforded all discovery devices pertinent to all questions of fault, causation, damages and defenses, the Barge Plaintiffs were, as a putative class, collectively stayed from proceeding with full-blown discovery. Meanwhile those members of the putative class who filed timely individual admiralty claims in limitation were afforded only limited discovery while Ingram Barge Company, Inc.'s, Domino Towing, Inc's, and Unique Towing, Inc,'s limitation actions were pending in Section C of this District Court.  The Magistrate Court from which the ruling subject of this request emanates was also the Magistrate Court assigned to those limitation actions, and has the benefit of a bird's eye view of these two distinct matters simultaneously underway in both Section C and Section K until September 2007, when the class and individual damages actions now known as the Barge Track were transferred and consolidated here.

The *Mumford, Boutte, Perry, Parfait, Lagarde and Benoit* plaintiffs, now consolidated in the Barge track of this matter, originally brought class and individual actions for damages against Ingram

2

Barge Company, Lafarge North America, their insurers, and others, beginning at roughly the same time that Ingram brought suit for limitation or exoneration. These damages actions were consolidated with Ingram's limitation action in Section "C" of this Court. Also consolidated was Domino Towing's and Unique Towing's limitation action. Judge Berrigan and Magistrate Wilkinson ordered a phased litigation schedule, whereby Phase I concerned only whether limitation petitioners had privity or knowledge of putative acts of negligence or unseaworthiness, and Phase II addressed whether limitation petitioners were actually negligent, or their vessels unseaworthy, as to acts, omissions or conditions of which they were found in Phase I to have had privity or knowledge. All discovery and prosecution of damages claims against Lafarge - such areas of inquiry and proof as Lafarge's negligence, fault for the breakaway, floodwall breach causation, defenses and damages - were, in practical effect, stayed until the limitation action reached a phase wherein these matters would be addressed. Lafarge was a nonparty to both of the limitation action phases completed in that matter, and was therefore not subject to any discovery as to matters outside of Ingram's, Domino's or Unique's privity or knowledge, their negligence, or their vessels' unseaworthiness.

Lafarge vociferously and repeatedly made known in open court, in pleadings, in depositions, and in discussion with the Court and counsel, its objections to any discovery, proceeding, or evidence that might tend to implicate Lafarge in any negligent acts, or which remotely concerned causation or damages.[3] Lafarge sought and obtained a protective order during Phase I of the limitation action which restricted the present Barge plaintiffs to Fed. R. Civ. P. 30(b)(6) topics bearing only upon the judicially sanctioned areas of inquiry relevant to liability of petitioners in limitation. This formerly-precluded inquiry is now appropriate in deposing Lafarge in its current status as a defendant organization whose negligence and contentions are now at issue. This differing

context afforded only the claimants in limitation the right to depose Lafarge, and only to the extent that Ingram's privity or knowledge was implicated. Moreover, the permissible scope of inquiry excluded the torts alleged against Lafarge - its duties, its breaches, causation and damages - and afforded no ability to examine Lafarge's defenses. Inpractice and effect, only the claimants in limitation have deposed Lafarge, cursorily, and only under strict scope limitations. The putative class that now exists - not a proper party to a limitation action - was not afforded any discovery against Lafarge.

Presumably, later phases in *In Re Ingram Barge* would have addressed class certification, Lafarge's negligence, the cause(s) of the IHNC floodwall breaches, the cause(s), sources, extent and nature of flooding, and the damages sustained bywhatever individuals or class were deemed rightful plaintiffs in the suit, and matters inherent to these areas of inquiry. Presumably, discovery would have been scheduled and ordered as to these matters. The limitation action and damages claims consolidated therewith did not progress to that point, as Ingram was exonerated, and Domino/Unique's liability limited.

In September 2007, the damages suits against Ingram, Lafarge and others were deconsolidated from Ingram's, Domino's and Unique's limitation actions, transferred to Section "K," designated the Barge track, and consolidated within the *In Re Katrina Canal Breaches Consolidated Litigation* umbrella.  The Barge Plaintiffs are a number of individuals seeking to represent a putative class consisting not only of the claimants in limitation, but also of tens of thousands of other individuals and businesses who were not party to the limitation action. Lafarge has not yet been deposed as a party defendant. The Case Management Orders governing this litigation require Lafarge to produce witnesses for deposition.

On April 30, 2008, the Barge Plaintiffs filed a Notice of Fed. R. Civ. P. 30(b)(6) Deposition of Lafarge North America, Inc. (Record Doc. 12871). The proposed topics concern, broadly, the breakaway of ING 4727 from the Lafarge facility, Lafarge's defenses (such as force majeure), movements of the barge during Katrina, transit of the barge from one side of the floodwall to the other, class treatment, the American Clubdispute, and Lafarge's reacquisition of all of its publically traded NYSE stock and merger with foreign corporations following inception of this lawsuit. Thereafter, Lafarge moved for a Protective Order seeking to have stricken all of the proposed depositiontopics (Record Doc. 13280). Plaintiffssubsequentlyfiled an Amended Notice of Fed. R. Civ. P. 30(b)(6) Deposition of Lafarge North America, Inc. (Record Doc. 13343) adding one particular topic. Plaintiffs filed a timely opposition to Lafarge's motion on June 3, 2008 (Record Doc. 13414), in which Plaintiffs addressed all of the proposed deposition topics, including the one newly added, under the presumption that Lafarge would oppose it as well. The Magistrate Court rendered Judgment on July 2, 2008 (Record Doc. 13711), granting Lafarge's motion in the respects noted herein.

Plaintiffs respectfully submit that the Magistrate's ruling unnecessarily and erroneously restricts the scope of exam so as to prevent plaintiffs from discovering matters key to this litigation. Lafarge is thus afforded the opportunityto advancetheories and proof as to which plaintiffs have not been allowed to conduct effective discovery. Much of the restriction is based upon an earlier Fed. R. Civ. P. 30(b)(6) of Lafarge in the In Re Ingram Barge Company matter. However, as Lafarge was not a party to the limitation action, and Lafarge's negligence was not at issue, the scope of the deposition was very narrowly limited despite possible interpretation of topics in that deposition as being identical to those proposed in the Katrina Canal Breaches litigation. Plaintiffs were not

allowed to question Lafarge as to any matter indicative of their negligence, but only in the context of determining the negligence of Ingram Barge Company, or the unseaworthiness of its barge, or Ingram's privity or knowledge of the foregoing.  As well, factual investigation and  development of proof in this case far exceeds that when Lafarge was deposed in In Re Ingram Barge.  Likewise, legal questions new to the controversy have arisen since deconsolidation and transfer, including legal causation, defenses, those inherent in the American Club dispute, inherent in consolidation with MRGO (and, by implication, Robinson), and discovery of Lafarge's questionable stock transactions such as might insulate themselves from judgment creditors.

## LAW AND ARGUMENT

*Plaintiffs reiterate and incorporate by reference their opposition filed as Record Doc. 13416, and all exhibits thereto, as well as references therein to exhibits attached to Lafarge North America's Motion for Protective Order (Record Doc. 13280).*  Barge Plaintiffs additionally direct this Court's attention to the Magistrate Court's ruling, Record Doc. 13711.

### *Standard Of and Procedure for Review*

A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.  28 U.S.C. § 636.  A motion to review a magistrate judge's order, or an Objection to the Proposed Findings and Recommendation of a Magistrate Judge acting as Special Master shall be made in the following manner:   The moving party shall file the original and one copy of his/her motion or objection along with a memorandum of law in support thereof, and shall notice it for hearing in the manner provided in these rules for motions requiring a hearing. To expedite the preparation of written findings from

the magistrate judge, the motion or objection shall contain a certificate verifying that a copy of the

motion or objection has also been served upon the judge and magistrate judge at the time of filing.

USDC EDLa. L.R. 74.1E.

***Page 2, First Paragraph of the Magistrate's Ruling  -  Proposed Deposition Topics Nos. 1, 2, 3, 5, 6, 10, 11, 12***

> "The motion is granted as to Topics Nos. 1(a), 1(b), 1(c), 1(d), 2, 3, 5(second), 6, 10(a), 10(b), 10(c), 11, 12(a), 12(b), 20 and 21 of plaintiffs' second Fed. R. Civ. P. 30(b)(6) deposition notice to Lafarge. These topics are virtually identical and/or substantially similar to Topics Nos. 3, 4, 9, 10, 14, 16, 22, 23, 24, 30, 31 and 32 of plaintiffs' first Fed. R. Civ. P. 30(b)(6) notice of deposition of Lafarge. Examination concerning these topics was permitted in an earlier phase of discovery in these cases by the court's order of October 25, 2006 in Civil Action No. 05-4419, Record Doc. No. 317, and the deposition was conducted on November 10, 2006. Thus, plaintiffs already have had ample opportunity to obtain through deposition testimony the information sought in this second Rule 30(b)(6) deposition, and another deposition on these topics would be unreasonably cumulative or duplicative of the earlier deposition. Fed. R. Civ. P. 26(b)(2)(C)(i), (ii). No further Rule 30(b)(6) deposition testimony will be permitted as to these topics." Order on Motion, p. 2, Record Doc. 13711.

The topics affected by the above erroneous findings, and the grounds for their modification

or reversal, are as follow:

1. Any and all knowledge Lafarge had preceding Katrina of any or all of the following:
   a. Nature and contents of any and all written regulations, guidelines, recommendations and/or standards relevant to mooring of vessels and/or barges in advance of a hurricane;
   b. Nature and contents of any and all written regulations, guidelines, recommendations and/or standards relevant to mooring of vessels and/or barges within the IHNC;
   c. The forecasted nature, strength, direction and effects of Katrina;
   d. Any and all pre Katrina actions undertaken and not undertaken by Lafarge with respect to barges at its France Road facility in light of any or all of the foregoing knowledge, or lack thereof.

2. Nature and proof of any and all of Lafarge's knowledge, contentions and/or defenses as to ING 4727's escape from its berth at Lafarge during the effects of Katrina;

3.    The existence, nature, contents and custodian(s) of any and all investigatory documents pertaining to ING 4727's berthing and/or mooring at Lafarge, escape from its berth at Lafarge, and/or possible breach(es) of the Industrial Canal floodwall;

5.    The existence, nature, contents and custodian(s) of any and all communications, statements, accounts, representations and accident and/or incident reports describing any casualty in which ING 4727 was involved during Katrina;

6.    The existence, nature, contents and custodian(s) of any and all communications, reports, writings, records, correspondence, memoranda, bulletins and other materials concerning any movement of ING 4727 from within the Industrial Canal to or through the eastern floodwall, into the residential area of the Lower Ninth Ward;

10.    The existence, contents and custodians of any land, aerial or satellite video or photo, and/or graphic, diagram, or visual representation of any or all of the following on August 28 - 29, 2005:
      a. the Lafarge France Road facility and environs;
      b. Industrial Canal and environs;
      c. ING 4727;

11.    Identities and whereabouts of any and all persons who claim to have knowledge of the movements of ING 4727 from the Lafarge dock to its eventual resting place in the residential area of the Lower Ninth Ward;

12.    Identities and whereabouts of any and all persons who claim:
      a. to have seen ING 4727 make contact with the eastern IHNC floodwall, and/or transit from the canal side of the eastern IHNC floodwall to the residential side during Katrina, and/or,
      b. to have heard scraping sounds and/or booms and/or explosions in the Lower Ninth Ward during Katrina.

The Magistrate ruled erroneously that the above topics are virtually identical or substantially similar to Rule 30(b)(6) topics contained in a deposition notice drafted during, and based upon, the phased discovery permitted in *In Re Ingram Barge*.  In that matter, Record Doc. 210, an Order rendered July 28, 2006, describes these phases, and the permitted scope of discovery, thus:

    "This is a complex matter requiring special case management provisions and cooperation among counsel for similarly situated parties. Accordingly, these consolidated cases will proceed to resolution in phases. Except as otherwise provided herein, Phase I will address privity of knowledge/limitation of liability of those

8

parties who have asserted admiralty petitions for limitation of liability (hereinafter "Phase I issues"). Later phases, which will be the subject of later scheduling orders, will address (a) overall liability, including specific causation and contributing or comparative fault issues, (b) class certification, and (c) damages."

"For purposes of this order, the parties are hereby categorized into Group A, consisting of all those who are parties to this lawsuit solely because they are asserting claims for relief (including all those who are represented by Messrs. Wiedemann, Gilbert, Sanders, O'Dwyer, Evans and Zelaya and/or their partners or associates), and Group B (including all other parties to these consolidated cases)."

"Discovery may commence immediately, but it shall be limited to Phase I issues, except as otherwise provided herein or by specific order of the court. Additional discovery beyond that permitted in this order as to later phases will be permitted at the appropriate time."

"Any Rule 30(b)(6) notice of deposition must be issued no later than **August 18, 2006**, so that any disputes concerning the scope of such notices may be resolved and parties may select appropriate corporate representatives and schedule dates during the period for fact depositions established in this schedule. To the extent possible, Rule 30(b)(6) depositions should be scheduled as early as possible during the fact deposition period, so that sufficient time will remain for the depositions of individual witnesses or the production of specific tangible items that might be identified during the Rule 30(b)(6) process."

Lafarge did not assert an admiralty petition for limitation. Lafarge did plead limitation as a defense to the suit naming Lafarge and consolidated with the vessel owners' limitation actions, but this is not sufficient to invoke a limitation proceeding in Federal Court. Rather, Lafarge was clear throughout the limitation proceeding that it was a non limiting party, that its fault and defenses were not at issue, and insisted upon restrictions on any discovery that could lead to findings as to Lafarge's fault. Lafarge obtained from the Magistrate a protective order to this effect in response to Group A's Rule 30(b)(6) notice served on August 18, 2006 seeking to depose Lafarge as a witness in the controversy with Ingram, not as an adverse party. *In Re Ingram Barge Company*, Record Doc. 317 contains this order, pertinent parts of which are as follow:

9

"GRANTED IN PART AND DENIED IN PART: In this motion, Lafarge requests a court order: (1) limiting the scope of permissible topics contained in the Rule 30(b)(6) notice it has received, essentially on grounds that (a) the notice is overly broad and unduly burdensome because the number of topics (45) is unmanageable; (b) the topics arebeyond the scope of Lafarge's corporate knowledge; (c) portions of the notice are beyond the scope of, or irrelevant to, Phase One discovery, as provided in the court's Rule 16 order, Record Doc. No. 210;..."

"The Rule 30(b)(6) notice submitted to Lafarge appears to be identical to the notice submitted to Ingram, which is addressed in the foregoing portion of this order concerning Ingram's motion for protective order."

"As to the topics contained in the Rule 30(b) notice, the motion is denied as to Topics No. 5, 6, 7, 8, 11, 12, 15, 16, 25, 26, 27, 29, 30, 31, 33, 35 and 42."[1]

As this Court will note, the topics now under review are hardly similar to topics permitted in the Phase I deposition of Lafarge - a nonparty to the limitation action then underway against Ingram.  At no time during the Ingram limitation action did permissible topics include Lafarge's theories as to the breakway, how the barge traversed the Industrial Canal, how the wall was broken, how the barge wound up on thewrong side of the wall, whether there are any witnesses to or tangible evidence of the foregoing, the factual bases of Lafarge's affirmative *force majeure* or causation defenses, all of which are placed outside of Barge Plaintiffs' reach by the erroneous ruling. Lafarge provided with its motion to the Magistrate portions of its Rule 30(b)(6) designee, Edward Vandermeulen's deposition, which demonstrates that undersigned complied with the Court's orders limiting discovery in *In Re Ingram Barge*.  Undersigned did not attempt to examine Lafarge as to matters outside the scope of Phase I.  By striking the proposed topics above (2, 3,5, 6, 10, 11 and 12), the Magistrate has effectively prohibited or hindered Barge Plaintiffs from ever examining Lafarge

---

[1]

Please see Exhibit 2 of Lafarge's Motion for Protective Order, etc., In Re Katrina Canal Breaches, Record Doc. 13280, for descriptions of topics in the limitation action Rule 30(b)(6) of Lafarge.

concerning these matters.  This is borne out of the Magistrate's perception that these questions were already covered in the limitation action.  As per the Court's orders in that action, these topics most certainly were not, and Lafarge does not demonstrate otherwise by merely claiming that the topics were identical.  Without the ability to conduct this discovery in timely and comprehensive fashion, parties to the Barge Litigation Track cannot hope to see this case in a trial posture in July 2009.

To the extent that the Barge Plaintiffs presently seek testimony concerning witness accounts of the barge breakaway and its transit into the residential area of the Lower Ninth Ward, ***please see In Re Katrina Canal Breaches, Record Docs. 11765, 13149 and 13347*** (an appeal pending before this Court) describing in detail Lafarge's, its attorney's, and agents' surreptitiously recorded telephone interviews (through Centanni Investigative Agency) of undersigned's clients and putative class members, and subsequent efforts to conceal from Plaintiffs these activities, and the information thus obtained by Lafarge and made known to the Plaintiffs only after multiple denials in discovery responses of the existence of such activities and information.  These activities and their concealment raise tremendous ethics and evidentiary issues, and, quite candidly, Barge Plaintiffs have no faith whatsoever that Lafarge's activities and knowledge of adverse witnesses have been shown the full light of day.  Neither are Barge Plaintiffs certain that the Court has imposed sufficient remedies given the gravity of Lafarge's misconduct.  The Magistrate's ruling subject of the present appeal (and that in Record Doc. 13347) is also in conflict with his ruling in *Annie R. Mack v. Global SantaFe Drilling Company*, Civil Action No. 04-3461 Section "S" (2), (United States District Court, E.D. Louisiana April 11, 2006), where under an analogous scenario, the Magistrate permitted unfettered

11

discovery of all facts underlying the investigator's activities.[23]  The Magistrate court erred in failing

to afford Barge Plaintiffs to challenge the veracity of Lafarge's red-handed revelations, made only

after being caught, about the surreptitious interviews and efforts at concealment.  Additionally, Barge

Plaintiffs asked in their opposition that if the Magistrate deemed any topics to be repetitive, that

leave be granted for a second deposition, pursuant to the following statement in the Barge Plaintiff's

opposition (Record Doc. 13414):

> "Sixth, given the above, given the time elapsed since the Rule 30(b)(6) deposition of
> Lafarge in the limitation action, and given the fact that a wealth of information now
> exists that did not during Phase I of the limitation proceedings, what the Barge
> Plaintiffs propose is a deposition vastly different in topic and scope from that in
> Phase I, when many matters were not onlyirrelevant to the Phase Iand II issues, but
> were not even developed enough to afford meaningful efforts at discovery. WRIGHT,
> MILLER & MARCUS, 8A FEDERAL PRACTICE AND PROCEDURE § 2104 (2008). "Second
> depositions may be justified in light of disclosure or discovery after the first
> eposition." MOORE'S FEDERAL PRACTICE § 30.05[1][c] (2003) (footnote omitted).
> Under Rule 26(b)(2), Fed. R. Civ.P., an unlimited-scope deposition is plainly proper

---

[2]

    The Magistrate recognized in *Mack*, supra, that :  "It is clear that [the] work product [doctrine] only protects documents and tangible things produced by or for an attorneypreparing for litigation and that it does not protect the disclosure of underlying relevant facts." Blockbuster Entertainment v. McComb Video, 145 F.R.D. 402, 403-04 (M.D. La. 1992) (Riedlinger, M.J.) (citation omitted); accord Freeport-McMoran Sulphur, LLC v. Mike Millen Energy Equip.Resource, Inc., No. 03-1496, 2004 WL 1299042, at *5 (E.D. La. June 3, 2004) (Roby, M.J.) (citing Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981)); Southern Scrap Material Co. v. Fleming, No. 01-2554, 2003 WL 21474516, at *14 (E.D. La. June 18, 2003) (Knowles, M.J.) (citing Upjohn Co., 449 U.S. at 395-96); 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024, at 337 (2d ed. 1994) (hereinafter "Wright & Miller")."

[3]"The work product doctrine does not prohibit Mack from deposing Ulicsni concerning factual information that he knows, regardless of how he gained that knowledge. See Protective Nat. Ins. Co. v. Commonwealth Ins. Co., 137 F.R.D. 267, 279-80 (D. Neb. 1989) (citing In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977))."  *Mack v. Global SantaFe.*

and not cumulative, and these qualities are enhanced by the availability of discovery materials not previously available."

No such leave was granted, though for good cause it is clearly afforded in the law, notwithstanding that the proposed deposition of Lafarge is actually the first of its kind.  The Court erred in denying leave to conduct this deposition.  Good cause exists, and was shown. To paraphrase, as Robinson and MRGO progress toward trial, Lafarge avails itself of every opportunity to fashion its defenses after the plaintiff' claims in those matters. Barge Plaintiffs have been expressly prohibited by Mr. Bruno, et al - presumably pursuant to authorization from the Court - from questioning any witnesses during depositions noticed in Robinson (regardless of whether they are also noticed in MRGO).  Barge Plaintiffs have no doubt that Lafarge's defenses are analogous to claims in MRGO and Robinson. However, not onlywere Barge Plaintiffs (a fraction of which were Group A in the limitation action) (1) not privy whatsoever to any proceedings in Section K before deconsolidation and transfer here, and (2) absolutely prohibited from conducting any discovery as to Lafarge's defenses or third-party claims against the USA, et al, but the critical information now being discovered in MRGO and Robinson was not even available during Phase I of the limitation action (notwithstanding the fact that it was not even a permissible area of inquiry at that time).  Now, a wealth of testimony is accumulating concerning degradation of wetlands, erosion of the MRGO, storm surge effects, WGI's activities on the EBIA, and so on, and Barge Plaintiffs ***must*** be afforded the opportunity to elicit testimony from Lafarge as to how theyplan to implement such contentions into their defense of the Barge Plaintiffs' suit.  Moreover, given that the Federal Code of Civil Procedure and Plaintiffs' discovery requests throughout these matters have required timely supplementation, there is no harm, burden or prejudice in affording the Barge Plaintiffs the right to

13

verbally question Lafarge in pursuit of such supplementation. Lafarge's witness can, in a matter of seconds, state for the record that no additional information exits, or identifythat information which Lafarge is already bound to provide by way of supplementation anyway. The Magistrate Court's ruling prohibiting Barge Plaintiffs from examining Lafarge North America concerning the above matters constitutes manifest error, and should be reversed.

### *Proposed Deposition Topic No. 16*

The ruling prevents full inquiry as to the following.

16.   Nature, timing, description, memorialization and/or recordation of, and participants in, anyand all written and verbal communications and contacts between Lafarge, its agents and representatives, and Arthur Murph, Jeanne Murph, Shirley Priestly, Jennifer Fernandez, Wayne Priestly, New Berkley, LLC and/or New Jourdan, LLC, their agents, employees, relatives, shareholders and members, concerning transaction or compromise of claims related to ING 4727, concerning the movements of ING 4727, concerning sale or purchase of 1739 Jourdan Avenue and/or 105 Berkley Drive.

A detailed description ofevents underlying the proposed discovery is contained in Barge Plaintiffs'opposition to Lafarge's Motion for Protective Order, which opposition is incoporated by reference into this appeal.  Record Doc. 13416.

*Page 2, Fourth Paragraph of the Magistrate's Ruling:*

"Defendant's motion is granted in part and denied in part as to Topic No. 16. The motion is granted to the extent that Topic No. 16 seeks communications by Lafarge and its agents concerning any transaction or compromise with the Murphs (including the sale and purchase of 1739 Jourdan Avenue and 105 BerkleyDrive). The court has ruled that limited discovery will be allowed concerning this topic, and the limited discovery has alreadyoccurred. However, the motion is denied as to communications by Lafarge and its agents with the listed persons concerning the movement of the Barge ING 4727, which was not the subject of prior deposition topics. This portion of Topic No. 16 remains subject to the court's prior rulings concerning Lafarge's work product privilege."

14

The Magistrate Court erred.  The error perpetuates Lafarge's desire to shield from inquiry the fact that of all the homeowners whose homes were destroyed when the barge landed on them, only one - Arthur Murph - was offered settlement.  To Lafarge's knowledge, only Mr. Murph was home at the time the barge hit his house. Only Mr. Murph posed a threat of having seen the barge break the floodwall. Lafarge, ever since first contact with Mr. Murph, is suspected of and appears to have exerted a significant measure of control and intimidation over him, exploiting his lack sophistication, lack of legal counsel, inducing him into plainly coercive scenarios, forcing him into a collateral mortgage attendant to an all-cash home purchase in order to leverage his silence about his observations during the storm, misleading him into an affidavit claiming that the barge floated through an existing breach (a fact that he denies), forming dummy corporations to hide financial transactions with Mr. Murph, and implicitly threatening to eject Mr. Murph from the property Lafarge bought for him in settlement of all of his claims - a settlement listing not only Lafarge, but Lafarge's insurers, Ingram, and anyone else Mr. Murph might conceivably have sued for the wayward barge events. The Magistrate errs in permitting only limited discovery as to this issue which clearly calls into question the likelihood that Lafarge has at least tried to influence or tamper with a key witness.

### Topics Nos. 18 and 22

Topics 18 and 22 are related, and give rise to extremely important questions and suspicions of serious corporate wrongdoing in this litigation.  Lafarge and the American Club, separately or in concert,  have undertaken measures whose effect is to shield Lafarge from judgment in this matter. **Undersigned cannot overemphasize the magnitude and importance of these issues.** TheMagistrate Court erred  in limiting or restricting examination as to the following:

18. The nature, issuance, entry, contents, limits, coverage, terms, effects, underwriters of, and nature of any claims or controversies concerning, any and all policies of primary, excess, surplus and other marine casualty insurance issued to Lafarge and in effect at times pertinent to this litigation, specifically including but not limited to that issued by American Steamship Owners (The American Club);

22. Any and all facts and circumstances relevant to nature, timing, purpose, occurrence and effects of 2006 stock reacquisition, divestiture, merger, sale, acquisition of Lafarge North America, Inc., to, through, and/or involving Efalar, Inc., Lafarge, SA, Lafarge Group, Cementia Holding Company, Blue Circle North America; the owners, directors, structure, relationships and purposes of any and all of the foregoing; any and all facts and circumstances surrounding and/or contained in Year 2006 SEC filings by any or all of the foregoing; purpose, intent and effects of any and all of the foregoing relative to this litigation and/or to any laws, statutes or regulations governing afore described conduct; any and all facts and circumstances surrounding Rice, et al v. Lafarge North America, Inc., et al, Civil Action 268974V, and consolidated cases, Circuit Court for Montgomery County, Maryland.

As to topic 18, limiting inquiry to "the nature of any claims or controversies" is clearly erroneous, contrary to this Court's intentions to fully examine the efficacy of litigating the American Club coverage dispute here, and contrary to Plaintiffs' rights to do so under the Louisiana Direct Action Statute. "The nature of claims and controversies" could be easily interpreted as requiring only a general description of the action pending in the Southern District of New York, which is now known, and guts the specificity of the remainder of the topic intended to yield full disclosure of matters potentially dispositive of the coverage contest that may shortly be underway in this Court.

Further, there is no legitimate reason to restrict inquiry into the existence of any insurance policies that Lafarge may have not yet revealed that potentially afford cover for the claims alleged herein in light of aspects of Judge Berrigan's ruling in the limitation action. This Court specifically ordered the Plaintiffs to address the question whether additional insurers might be added to this suit. Topic 18 affords the ability to determine this, as well as the ability to analyze for the benefit of the

16

Court and Plaintiffs the status and circumstances surrounding the American Club dispute and the pending SDNY declaratory action, as well as facts affording coverage as a matter of law.

The above questions juxtapose with topic 22, as they all concern acts tending to decrease Lafarge's solvency in light of this lawsuit.  Topic 22 was added by way of supplemental deposition notice.  The Magistrate stated in his ruling that the Plaintiffs did not quote the new topic or attach the amended notice, and that therefore, the Magistrate had no knowledge of the topic.  Plaintiffs described the topic in their opposition, and also submitted as evidence various S.E.C. filings and *Rice, et al v. Lafarge North America, Inc., et al*, Circuit Court for Montgomery County, Maryland, Civil Action No. 268974-V and consolidated cases, all of which are sufficient to inform the Magistrate of the need for this discovery. Though relevant information continues to come to undersigned's attention, undersigned submit that sufficient information was supplied to the Magistrate to permit full notice and understanding of the importance of these issues. In chronological summary, the following events are submitted for the Court's consideration.

1.      In September 2005 the American Club notified Lafarge North America  that they would not provide P & I coverage relative to ING 4727.  Barge Plaintiffs knew nothing of this denial.

2.      In September and November 2005, Barge Plaintiffs  sued  Lafarge North America for floodwall breaches caused by ING 4727.

3.      In February 2006, Mumford plaintiffs amended to implead the American Club as a first party defendant in their suit consolidated with the then pending Ingram Barge Company limitation action in Section C.

4.      The American Club sought and obtained an extension of time to answer, during which time they and Lafarge continued to debate coverage.  Presumably, the American Club knew that it would soon commence a declaratory action, but said nothing of this or of the coverage denial in the motion for extension.

5.      In April 2006, the American Club surreptitiously filed a Declaratory Action in the Southern District of New York, seeking to deny P & I cover,  without any notice to the Court or parties

in Louisiana, without compliance with the notice and stipulation rules governing separate litigation of matters subsumed within in limitation actions.

6.      A day later, the American Club answered in Louisiana, pleading the policy terms as best evidence of coverage, but did not expressly or clearly raise a coverage defense or object to venue.

7.      Neither Lafarge nor the American Club notified the Court in Louisiana of the American Club's commencement of action in New York, and Lafarge did nothing in Louisiana to enjoin or contest the action.  Lafarge remained silent on the record as to the New York action.

8.       Lafarge North America filed a notice to the Securities and Exchange Commission on 5/1/06 de-listing all of its public stock on the New York Stock Exchange.

9.      Lafarge North America reacquired all of its publically traded stock, and in June 2006, effected a short-form merger with its French parent and a shell corporation (Efalar, Inc.) created and owned by the French parent for purposes of the merger.  A short form merger requires the assent only of a majority of shareholders and the board of directors.  The majority shareholder of Lafarge North America at the time of the merger was the French parent.  The board of directors of Lafarge North America included, at that time, Philippe R. Rollier, President and CEO, Jean-Marc Lechene, EVP Thomas G. Farrell, EVP,and Dominique Calabrese, EVP.[4]

---

[4]

        An article on washingtonpost.com, at
http://projects.washingtonpost.com/post200/2006/LAF/, reproduced here,
states:

*About Lafarge North America Inc.*

*12950 Worldgate Dr., Herndon, Va. 20170*
*www.lafargenorthamerica.com | 703-480-3600 | Founded: 1983*

*Industry: Manufacturing | Category: Top 100 Companies*

*Lafarge North America's future as a free-standing corporation is in question. The company had its beginnings in 1956 when French parent Lafarge Group built a cement plant in British Columbia. It entered the U.S. market in 1974 and started selling public stock as Lafarge North America in 1983.*

*In early February of this year, Lafarge SA announced that it planned to spend $3 billion to buy the*

10.     Following merger, Lafarge North America's ownership assets are solely under foreign ownership.

11.     Lafarge North America filed a motion to transfer or stay the Declaratory Action in the Southern District of New York.

12.     The American Club filed an opposition in August 2006, containing an argument by the American Club that the relative financial strength of the parties should govern venue, noting Lafarge's inclusion in the NYSE.  Counsel for the American Club also submitted his declaration to Judge Haight that Lafarge North America is a 4.3 billion dollar enterprise traded on the NYSE.  In fact, Lafarge North America was no longer traded on the NYSE.

13.     Lafarge North America did not advise Judge Haight of Lafarge's privatization and merger. Lafarge North America and its attorneys remained silent, and did nothing to correct the record in the New York action to accurately reflect Lafarge's status after the stock reacquisition and short-form merger.

14.     Judge Haight ruled in January 2007, denying Lafarge North America's motion, quoting as support for his ruling the above portion of the declaration and argument by counsel for the American Club that the New York venue was proper because of Lafarge's financial strength

---

*47 percent of shares in the North American subsidiary that it didn't already own. The move is part of an aggressive strategy by Lafarge SA'snew chief executive, Bruno Lafont, who took over the reins of the parent company at the beginning of the year. Minority shareholders in the subsidiary sent a signal to the majority ownership across the ocean that they wouldn't be bought off at the proposed $75 a share; the stock price hovered above $80 after the buyout announcement. Several minority shareholders filed lawsuits. A special committee of the board of directors retained Merrill Lynch & Co. to advise the company on the offer, and in March the commitee rejected the initial offer as too low.*

*In early April, the French parent raised its offer by 9.3 percent, to $3.3 billion or $82 a share. In late April, the parent company raised its offer again to $85.50 a share, and this time the board's special committee recommended shareholder approval.*

*Lafarge North America benefitted from strong sales last year but also felt the pain of higher energy prices and costs related to Hurricane Katrina. The company repatriated almost $1.1 billion in cash from Canada to take advantage of a one-time tax cut for American companies that take monies from foreign earnings for purposes such as capital investment and hiring new workers. The move earned the company $102.8 million.*

as a publically traded NYSE corporation.

15.    Lafarge North America and the American Club still did not correct Judge Haight's false understanding of the facts.

16.    Judge Haight also based his ruling on a forum selection clause in the P & I policy. The judge mistakenly understood it to require all coverage disputes to be litigated in the SDNY. What it actually says is that suit commenced against the Club by Lafarge North America is to be brought in SDNY. Lafarge did not sue the Club. The Club sued Lafarge. Again, nobody corrected the Judge's misperception or misapplication of this fact.

17.    Lafarge allowed the adverse ruling in the Southern District of New York to stand without challenge.

18.    In September 2007, suits against Lafarge North America and the American Club were deconsolidated from the Ingram Barge limitation proceeding before Judge Berrigan and transferred to Section K.

19.    Section K declined to grant leave to the Barge Plaintiffs to file a Fed. R. Civ. P. 56 motion concerning the P & I coverage. In response to undersigned's request for reconsideration, Section K held a telephone conference in which Your Honor stated that deference would be given to Judge Haight's ruling not to transfer or stay the declaratory action. Counsel for Lafarge and the American Club neglected to inform Your Honor of the false declaration of counsel concerning the NYSE, or the misinterpretation of the forum selection clause in the policy, both of which underlie Judge Haight's decision.

20.    In October 2007, the French Parent - the Lafarge Group - de-listed its stock traded on the New York Stock Exchange. It had announced intent to do so in August 2007. As a result, all of the French parent's ownership assets are overseas.

As to topic 22, the above chronology speaks for itself. The facts demonstrate a highly suspect extra-judicial shifting and obscuring of assets, and Lafarge's enigmatic failures to act, or to notify either this Court or the New York Court of the declaratoryaction, to notify either Court of the plain errors on the SDNY record, all of which operate to impair Lafarge North America's solvency, Lafarge North America's insurance coverage, and to insulate Lafarge North America, its largest insurer, and the Lafarge parent from judgment collection in the United States. Consider

Lafarge's motives and activities in light of Mr. Aldock's memorable statement to this Court that from a civil-litigation point of view, a judgment against Lafarge is a death sentence. Consider how judgment might be enforced against a company whose parent has shifted billions of Dollars of Lafarge North America's and its own capital overseas after Lafarge North America was sued in this Court. Consider the importance in this litigation of any agreement or resolution whereby the parent assumed Lafarge North America's operating and long term liabilities arising prior to the sale. Depending upon the answers to the questions inherent in Lafarge's corporate and financial maneuvers, undersigned believe that a case might be made for various types of fraud, and/or for "piercing the corporate veil" of Lafarge North America and The Lafarge Group.[5] Effective discovery must be permitted in order to mine all potential deposits of buried facts relevant to these questions. Though undersigned hope that Lafarge and its parent never occupy the position whereby Barge Plaintiffs might be forced to seek redress for these matters, Barge Plaintiffs fully intend nonetheless to obtain answers by all lawful means, and, if appropriate, to pursue this matter to its conclusion

---

[5]
      But there is an equally fundamental principle of corporate law, applicable to the parent-subsidiary relationship as well as generally, that the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, inter alia, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf. See, e.g., Anderson v. Abbott, supra, at 362 ("[T]here are occasions when the limited liability sought to be obtained through the corporation will be qualified or denied"); Chicago, M. & St. P. R. Co. v. Minneapolis Civic and Commerce Assn., 247 U.S. 490, 501 (1918) (principles of corporate separateness "have been plainly and repeatedly held not applicable where stock ownership has been resorted to, not for the purpose of participating in the affairs of a corporation in the normal and usual manner, but for the purpose . . . of controlling a subsidiary company so that it may be used as a mere agency or instrumentality of the owning company"); P. Blumberg, Law of Corporate Groups: Tort, Contract, and Other Common Law Problems in the Substantive Law of Parent and Subsidiary Corporations §§ 6.01-6.06 (1987 and 1996 Supp.) (discussing the law of veil piercingin the parent-subsidiary context).
*United States v. Bestfoods*, 524 U.S. 51 (1998)

along every available avenue.  The same holds true for questions concerning Lafarge's merger as for questions concerning insurance coverage: the sooner the inquiry can begin and the more effective it is, the sooner it will culminate, and the greater the ability to preserve the trial schedule.

The Magistrate's ruling is clearly erroneous, however, for additional reasons unrelated to the importance of the questions provoked by Lafarge's shifting corporate status.  Topic 22 was added by way of an amended proposed Rule 30(b)(6) notice, and treated in Plaintiffs' opposition to Lafarge's motion for protective order under the presumption that Lafarge would seek to quash the topic.  The Magistrate ruled, however, that because Lafarge did not brief the topic, Lafarge need not designate a witness to testify to Topic 22.  This ruling is contrary to law.  The default effect of the law is not to absolve a party from producing a Rule 30(b)(6) designee, but to require it.  If a party seeks protection as to that topic, it is that party's burden to prove entitlement to such protection. The burden is not ordinarily on the party seeking discovery, and no extraordinary circumstances exist so as to warrant shifting of this burden.  Lafarge's failure to brief the topic is not justification for gratuitous and summary elimination of the topic from the Barge Plaintiffs' inquiry.  However, Lafarge *did* brief the topic in a supplemental memorandum, noting the particular record document designation of the amended notice, No. 13343. Lafarge claimed in its opposition that its corporate shell game has nothing to do with claims or defenses in this action. Plaintiffs hope that resolution of the insurance issues will obviate any need to resort to Lafarge North America's parent, The Lafarge Group.  Nonetheless, preservation of the current trial schedule militates in favor of beginning inquiry now.

## CONCLUSION

The Magistrate erred as a matter of fact and law in striking or limiting proposed Fed. R.

Civ. 30(b)(6) topics intended to elicit from Lafarge North America factual information key to the

cornerstone issues in this litigation. The ruling is subject to reversal as clearly erroneous and

contrary to law.

Respectfully submitted,

/s/ Brian A. Gilbert,

_____

Brian A. Gilbert, Esq.(21297)

LAW OFFICE OF BRIAN A. GILBERT, P.L.C.

821 Baronne Street

New Orleans, Louisiana 70113

Telephone: (504) 885-7700

Telephone: (504) 581-6180

Facsimile: (504) 581-4336

e-mail: bgilbert@briangilbertlaw.com

/s/ Lawrence D. Wiedemann,

_____

_____

Lawrence D. Wiedemann.(13457)

Karl Wiedemann (18502)

Karen Wiedemann (21151)

WIEDEMANN & WIEDEMANN

821 Baronne Street

New Orleans, Louisiana 70113

Telephone: (504) 581-6180

Facsimile: (504) 581-4336

e-mail: lawrence@wiedemannlaw.com, karl@wiedemannlaw.com, karen@wiedemannlaw.com,

/s/ Patrick J. Sanders

Patrick J. Sanders (18741)

3316 Ridgelake Drive

Suite 100

Metairie, LA 70002

     Telephone: 504-834-0646

     e-mail: pistols42@aol.com


/s/ Richard T. Seymour

Richard T. Seymour (D.C. Bar #28100)

Adele Rapport

Law Office of Richard T. Seymour, P.L.L.C.

1150 Connecticut Avenue N.W., Suite 900

Washington, D.C.  20036-4129

     Voice: 202-862-4320

     Cell:   202-549-1454

     Facsimile:  800-805-1065 and 202-828-4130

     e-mail: rick@rickseymourlaw.net,

             adele@rickseymourlaw.net


/s/ Lawrence A. Wilson

Lawrence A. Wilson (N.Y.S.B.A. 2487908)

David W. Drucker (N.Y.S.B.A. #1981562)

Wilson, Grochow, Druker & Nolet

Woolworth Building

233 Broadway, 5th Floor

New York, NY 10279-0003

     Telephone: (212) 608-4400

     Facsimile: (212) 227-5159

24

e-mail: lwilson@wgdnlaw1.com, ___
ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg

Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)

Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)

The Jacob D. Fuchsberg Law Firm

500 Fifth Avenue

45th Floor

New York, NY 10110-0002

Telephone: 212-869-3500 ext. 235

Facsimile:  212-398-1532

e-mail: a.fuchsberg@fuchsberg.com,
l.kelmachter@fuchsberg.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 14th day of July, 2008.

\s\Brian A. Gilbert