UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREGORY APP** * | |
| * | **CIVIL ACTION NO. 07-8717 – B(4)** |
| **VERSUS** * | |
| * | **JUDGE: IVAN L.R. LEMELLE** |
| **ASSURANCE COMPANY** * | |
| **OF AMERICA** * | **MAG: KAREN WELL ROBY** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN OPPOSITION TO ASSURANCE COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Gregory App, and files this Memorandum in Opposition to Defendant Assurance Company of America's (hereafter "ACA" or "defendant") Motion for Summary Judgment, and urges this Honorable Court to deny defendant's motion for the reasons set forth below.

**I. Introduction and Procedural Background**

This action arises from hurricane damages to plaintiff's property, which was insured by defendant, and from defendant's failure to adjust and pay plaintiff's claim timely and in good faith.  On August 29, 2005, plaintiff's property at 1106 Treme Street, New Orleans, Louisiana was severely damaged by hurricane winds and wind-driven rain.  Notwithstanding the timely claim made by Plaintiff, ACA did not begin adjusting plaintiff's claim within thirty days, as required by La. Rev. Stat. § 22:658(A)(3).  Indeed, as the Commercial Loss Report of ACA's first adjuster, Sal Sandoval, indicates, the first inspection was not conducted until October 26,

1

2005.[1]  Furthermore, this Commercial Loss Report was never sent to plaintiff, and ACA never made the $18,999.56 payment recommended by this report.  Instead, ACA hired a second adjuster, Matthew D. Coy, who produced a second report indicating that plaintiff's insured damages were $0.[2]

Plaintiff subsequently hired James A. Conn of Coastal Construction Services to inspect his property at 1106 Treme Street, New Orleans, Louisiana.  Mr. Conn is an expert in loss appraisal and the estimation of damages of residential and commercial properties with regard to losses caused by fire, wind, flood and other perils.[3]  Mr. Conn inspected plaintiff's property on or about March 14, 2007, and produced a Property Inspection Report indicating that plaintiff's insured damages were $61,290.93.[4]  Plaintiff immediately submitted this report to ACA, with a demand for payment.

In response to Mr. Conn's report and plaintiff's demand for payment, ACA hired a third adjuster, David McLaughlin, to reinspect plaintiff's property.  According to Mr. McLaughlin's report, plaintiff's insured damages totaled $56,767.54.[5]  ACA has provided no explanation for why it took more than a year and a half to determine that plaintiff's insured damages were more than $0, because there is no reasonable explanation.  ACA has, from the beginning, adjusted this claim in bad faith by failing to initiate adjustment timely, by rejecting an adjuster's report that recommended even a minimal (and grossly inadequate) payment, and by refusing to pay anything for more than a year and a half.

After ACA tendered an undisputed amount for plaintiff's insured damages, plaintiff began demolition and reconstruction.  After opening up the walls in this structure, plaintiff found

---

[1] See Commercial Loss Report of Sal Sandoval, attached hereto as Exhibit 1.
[2] See Adjuster Summary of Matthew D. Coy, attached hereto as Exhibit 2.
[3] See Affidavit of James A. Conn, attached hereto as Exhibit 3.
[4] See the March 14, 2007 Property Inspection Report of James A. Conn, attached hereto as Exhibit 4.
[5] See the March 26, 2007 Property Inspection Report of David McLaughlin, attached hereto as Exhibit 5.

additional damages caused by wind-driven rain, which were not visible previously.  At plaintiff's request, Mr. Conn reinspected plaintiff's property and found an additional $70,102.31 in damage.[6]  ACA has paid nothing for these additional damages.

Additionally, as a result of ACA's dilatory adjustment of plaintiff's claim, plaintiff was unable to put this property back into service for over two years.  Without rental income on this damaged and unrepaired property, plaintiff was unable to make mortgage payments, and plaintiff's mortgagee seized the property in a foreclosure.  But for ACA's arbitrary and capricious adjustment of plaintiff's claim, plaintiff would have been able to put this building back into to service within a few months of Hurricane Katrina, and would never have lost this property.

Because ACA failed to compensate plaintiff fully for his insured damages, and because ACA acted in bad faith in adjusting this claim – which resulted in consequential damages – plaintiff filed suit in Civil District Court for the Parish of Orleans.  Plaintiff alleged in his petition that defendant failed to adequately compensate him for the damages to his property, and that defendant's eventual payments were untimely.  Furthermore, as a result of ACA's bad faith adjustment practices, ACA is liable to plaintiff for extra-contractual damages, penalties and attorneys' fees pursuant to La. Rev. Stat. §§ 22:658 and 22:1220.

Clearly, there are factual issues in dispute regarding the scope and cost of plaintiff's insured damages, and regarding ACA's adjustment of plaintiff's claim.  These genuine issues of material fact preclude summary judgment.  Accordingly, defendant's motion must be denied.

---

[6] See the November 6, 2007 Report of James A. Conn, attached hereto as Exhibit 6.

3

## II. Law and Argument

### A. Legal Standard for Summary Judgment

Summary judgment is warranted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "might affect the outcome of the suit under governing law[.]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must review the facts "drawing inferences in a manner most favorable to the nonmoving party." *See General Universal Systems, Inc. v. Lee,* 379 F.3d 131, 137 (5th Cir.2004). A moving party must demonstrate an absence of genuine issues of material fact, meaning "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. If the party moving for summary judgment demonstrates such absence, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir.1995).

### B. Rules for Interpreting a Contract of Insurance

Generally, the rules for interpreting a contract are found in La. Civ. Code art. 2045, *et seq.* Although a contract of insurance must provide the minimum amount of coverage required by statute, the parties may contract for additional coverage and the insurer may exclude from coverage certain risks and limit its liability for certain losses, provided such coverages and limitations are not against public policy. *Landry v. Louisiana Citizens Prop. Ins. Corp.*, 964 So.2d 463, 469 (La.App. 3rd Cir.2007). A contractual provision is null if it violates a rule of

4

public order. La.Civ.Code art. 2030. The general rules for interpreting contracts of insurance were set forth by the Louisiana Supreme Court in *Pareti v. Sentry Indemnity*:

> There are certain elementary legal principles which apply to the interpreting of insurance policies. An insurance policy is a contract and, as with all of the contracts, it constitutes the law between the parties. If the policy wording at issue is clear and expresses the intent of the parties, the agreement must be enforced as written. An insurance contract is to be construed as a whole, and one portion thereof should not be construed separately at the expense of disregarding another. If there is an ambiguity in a policy, then that ambiguity should be construed in favor of the insured and against the insurer. However, courts have no authority to alter the terms of policies under the guise of contractual interpretation when the policy provisions are couched in unambiguous language.

536 So.2d 417, 420 (La.1988).

When the interpretation of a contract also hinges on the applicability and construction of a particular statute, the court, in addition, must refer to the rules for construing legislative acts. *Landry*, 964 So.2d at 970. Louisiana Civil Code Article 9 provides that "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." However, La. Civ. Code art. 10 instructs that "[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." Courts should assign to the words found in a statute "their generally prevailing meaning," (La. Civ. Code art. 11), and "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ. Code art. 12.

In cases involving the interpretation of a public policy law, particularly those applicable to insurance contracts, the courts must strive to give full effect to the interest or purpose which motivated the legislature in adopting such a law. *Landry*, 964 So.2d at 470; *see also Butler v. Allen*, 808 So.2d 746, 749 (La.App. 1st Cir.2001) (*citing Theriot v. Midland Risk Ins. Co.*, 694

So.2d 184, 186 (La.5/20/97)). Further, as provided in La. Civ. Code art. 7, "persons may not by their juridical acts derogate from laws enacted for the protection of the public interest." Although parties are generally free to contract under such terms and conditions as they see fit, in the area of insurance contracts, the Legislature has enacted several provisions, found in the Insurance Code and elsewhere, specifically regulating the insurance industry and limiting the rights of insurers to place certain clauses or exclusions in insurance policies issued in this State. *Landry*, 964 So.2d at 470.

### C. Discussion

As the foregoing evidences, there are genuine issues of material fact in dispute regarding the scope and cost of plaintiff's insured damages to his property at 1106 Treme Street, New Orleans, Louisiana. Plaintiff has submitted damage estimates from a qualified and reputable expert indicating that his insured damages are $131,393.24.[7] By its own admission, ACA has tendered only $55,767.54. Thus, there is at least $75,625.70 of property damage in dispute.

Furthermore, ACA paid nothing for more than a year and a half after Hurricane Katrina. It buried the report of its first adjuster, Sal Sandoval, and then produced a second report that – *coincidentally* – said that it owed nothing on this claim. Then, in May of 2007, ACA tendered $55,767.54, with no explanation of why the delay of this payment was not arbitrary, capricious or without probable cause. This is a textbook case of bad faith, and ACA is clearly liable for extra-contractual damages, penalties and attorneys' fees pursuant to La. Rev. Stat. §§ 22:658 and 22:1220. Accordingly, these genuine issues of material fact regarding ACA's bad faith also preclude summary judgment.

---

[7] See the March 14, 2007 Property Inspection Report of James A. Conn, attached hereto as Exhibit 4, and the November 6, 2007 Report of James A. Conn, attached hereto as Exhibit 6.

ACA argues that its policy specifically excludes "losses due to delay and loss of market use."[8]  However, it is well-settled in Louisiana that "persons may not by their juridical acts derogate from laws enacted for the protection of the public interest."  La. Civ. Code art. 7.  While ACA is generally free to contract under such terms and conditions as it sees fit, in the area of insurance contracts, the Legislature has enacted several provisions, including La. Rev. Stat. §§ 22:658 and 22:1220, specifically regulating the insurance industry and limiting the rights of insurers to place certain clauses or exclusions in insurance policies issued in this State.  *See Landry*, 964 So.2d at 470.  Clearly, any exclusions in ACA's policy which purport to exonerate it from liability for its bad faith adjustment practices are null and void and of no legal effect.

Because ACA, like every other property and casualty insurer in Louisiana, is liable for violations of La. Rev. Stat. §§ 22:658 and 22:1220, ACA may also be liable for consequential damages, if it is found to be arbitrary, capricious or without probable cause.  ACA contends that it is not liable for any financial consequences of its delayed adjustment and payment of plaintiff's claim – including, inter alia, the foreclosure of plaintiff's property – because its policy specifically excludes coverage for such damages.  Defendant misses the point.  If a jury finds that plaintiff suffered **extra-contractual damages** as a consequence of ACA's failure to adjust and pay plaintiff's insured damages in accordance with La. Rev. Stat. § 22:1220, ACA will liable for those **extra-contractual damages**.

With regard to plaintiff's claim under La. Rev. Stat. § 22:695, plaintiff concedes that the Valued Policy Law does not apply to builder's risk policies, such as the one issued by ACA to plaintiff.

---

[8] Defendant's Memorandum in Support of Motion for Summary Judgment, p. 2.

### III. Conclusion

Based upon the above and foregoing, it is clear that there are genuine issues of material fact in dispute regarding the scope and cost of plaintiff's insured damages, and whether ACA is liable for extra-contractual damages, penalties and attorneys' fees for its bad faith adjustment of plaintiff's claim. These genuine issues preclude summary judgment. Accordingly, plaintiff Gregory App respectfully urges this Honorable Court to deny Assurance Company of America's Motion for Summary Judgment.

Respectfully submitted,

/s/ Jeffery B. Struckhoff
_____

**TERRENCE J. LESTELLE - T.A. - 8540**
**ANDREA S. LESTELLE - 8539**
**JEFFERY B. STRUCKHOFF - 30173**
**LESTELLE & LESTELLE**
3421 N. Causeway Blvd., Suite 602
Metairie, Louisiana  70002
Telephone:  (504) 828-1224
Facsimile:   (504) 828-1229

### CERTIFICATE OF SERVICE

I do hereby certify that I have on this 11th day of March 2008, electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record who are CM/ECF participants.  I further certify that I faxed and/or mailed the foregoing document and the notice of electronic filing by first-class mail to all counsel of record who are not CM/ECF participants.

/s/ Jeffery B. Struckhoff
_____
**JEFFERY B. STRUCKHOFF**