UNITED STATE DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |
| *Boutte v. LaFarge* | 05-5531 | * |
| *Mumford v. Ingram* | 05-5724 | * |
| *Lagarde v. LaFarge* | 06-5342 | * |
| *Perry v. Ingram* | 06-6299 | * |
| *Benoit v. LaFarge* | 06-7516 | * |
| *Parfait Family v. USA* | 07-3500 | * |
| *LaFarge v. USA* | 07-5178 | * |

|  |  |  |
|---|---|---|
| *Boutte v. LaFarge* | 05-5531 | |
| *Mumford v. Ingram* | 05-5724 | |
| *Lagarde v. LaFarge* | 06-5342 | JUDGE |
| *Perry v. Ingram* | 06-6299 | STANWOOD R. DUVAL, JR. |
| *Benoit v. LaFarge* | 06-7516 | |
| *Parfait Family v. USA* | 07-3500 | MAG. |
| *LaFarge v. USA* | 07-5178 | JOSEPH C. WILKINSON, JR. |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

<u>MEMORANDUM IN SUPPORT OF ADJUDICATING THE COVERAGE
ISSUE VIS-À-VIS THE AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION, INC. and
LAFARGE NORTH AMERICA, INC. and
INCORPORATED EXHIBITS</u>

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT,** through undersigned counsel, come Barge Plaintiffs and respond

to the four specific questions addressed to counsel:  (1) "The issue of issue preclusion [collateral

estoppel] and what effect, if any, that a New York ruling might have on the present litigation;"

(2) "whether plaintiffs intend to pursue only the American Club in this matter…or intend to sue any other insurer directly;" (3) the status of claims against insurers sued directly in this proceeding; and (4) "the efficacy of referring the matter at the appropriate time to the MDL panel."

### BACKGROUND

This Court's familiarity with litigation between the American Steamship Owners Mutual Protection and Indemnity Association, Inc. (hereinafter "the American Club") and Lafarge North America, Inc. (hereinafter "LNA") and related aspects of the Industrial Canal barge cases makes unnecessary any exhaustive recitation of facts.   In this Court are multi-party consolidated lawsuits filed under 28 U.S.C. §§ 1332 and 1333 against defendants including LNA and its insurers:  New York Marine and General Insurance Company, The American Home Assurance Company, Northern Assurance Company of America, International Marine Underwriters, and the American Club.  Plaintiffs have asserted direct action claims against the above insurers under La. Rev. Stat. 22:655 (The Louisiana Direct Action Statute).   The Plaintiffs' Direct Action claims charge LNA and the American Club and other insurers with fault for a breakaway barge's role in breaching a crucial levee on the east side of the Industrial Canal

### A CRUCIAL CHRONOLOGY

1.    In September 2005 the American Club notified Lafarge North America  that they would not provide P & I coverage relative to ING 4727.  Barge Plaintiffs knew nothing of this denial.

2.    In September and November 2005, Barge Plaintiffs sued Lafarge North America for floodwall breaches caused by ING 4727.

2

3.    In February 2006, Mumford plaintiffs amended to implead the American Club as a first party defendant in their suit consolidated with the then pending Ingram Barge Company limitation action in Section C.

4.    The American Club sought and obtained an extension of time to answer, during which time they and Lafarge continued to debate coverage.  Presumably, the American Club knew that it would soon commence a declaratory action, but said nothing of this or of the coverage denial in the motion for extension.

5.    In April 2006, the American Club surreptitiously filed a Declaratory Action in the Southern District of New York, seeking to deny P & I cover,  without any notice to the Court or parties in Louisiana, without compliance with the notice and stipulation rules governing separate litigation of matters subsumed within in limitation actions.

6.    A day later, the American Club answered in Louisiana, pleading the policy terms as best evidence of coverage, but did not expressly or clearly raise a coverage defense or object to venue.

7.    Neither Lafarge nor the American Club notified the Court in Louisiana of the American Club's commencement of action in New York, and Lafarge did nothing in Louisiana to enjoin or contest the action.  Lafarge remained silent on the record as to the New York action.

8.    Lafarge North America filed a notice to the Securities and Exchange Commission on 5/1/06 de-listing all of its public stock on the New York Stock Exchange.

9.    Lafarge North America reacquired all of its publically traded stock, and in June 2006, effected a short-form merger with its French parent and a shell corporation

(Efalar, Inc.) created and owned by the French parent for purposes of the merger. A short form merger requires the assent only of a majority of shareholders and the board of directors. The majority shareholder of Lafarge North America at the time of the merger was the French parent. The board of directors of Lafarge North America included, at that time, Philippe R. Rollier, President and CEO, Jean-Marc Lechene, EVP Thomas G. Farrell, EVP,and Dominique Calabrese, EVP.

10.    Following merger, Lafarge North America's ownership assets are solely under foreign ownership.

11.    Lafarge North America filed a motion to transfer or stay the Declaratory Action in the Southern District of New York.

12.    The American Club filed an opposition in August 2006, containing an argument by the American Club that the relative financial strength of the parties should govern venue, noting Lafarge's inclusion in the NYSE. Counsel for the American Club also submitted his declaration to Judge Haight that Lafarge North America is a 4.3 billion dollar enterprise traded on the NYSE. In fact, Lafarge North America was no longer traded on the NYSE.

13.    Lafarge North America did not advise Judge Haight of Lafarge's privatization and merger. Lafarge North America and its attorneys remained silent, and did nothing

4

to correct the record in the New York action to accurately reflect Lafarge's status after the stock reacquisition and short-form merger.

14.     Judge Haight ruled in January 2007, denying Lafarge North America's motion, quoting as support for his ruling the above portion of the declaration and argument by counsel for the American Club that the New York venue was proper because of Lafarge's financial strength as a publically traded NYSE corporation.Lafarge North America and the American Club still did not correct Judge Haight's false understanding of the facts.

15.     Judge Haight also based his ruling on a forum selection clause in the P & I policy. The judge mistakenly understood it to require all coverage disputes to be litigated in the SDNY. What it actually says is that suit commenced against the Club by Lafarge North America is to be brought in SDNY.  Lafarge did not sue the Club. The Club sued Lafarge.  Again, nobody corrected the Judge's misperception or misapplication of this fact.

16.     Lafarge allowed the adverse ruling in the Southern District of New York to stand without challenge.

17.     In September 2007, suits against Lafarge North America and the American Club were deconsolidated from the Ingram Barge limitation proceeding before Judge Berrigan and transferred to Section K.

18.     Section K declined to grant leave to the Barge Plaintiffs to file a Fed. R. Civ. P. 56 motion concerning the P & I coverage.  In response to undersigned's request for reconsideration, Section K held a telephone conference in which Your Honor stated that deference would be given to Judge Haight's ruling not to transfer or stay the declaratory action.  Counsel for Lafarge and the American Club neglected to inform Your Honor of the false declaration of counsel concerning the NYSE, or the misinterpretation of the forum selection clause in the policy, both of which underlie Judge Haight's decision.

19.     In October 2007, the French Parent - the Lafarge Group - de-listed its stock traded on the New York Stock Exchange.  It had announced intent to do so in August 2007.  As a result, all of the French parent's ownership assets are overseas.

The suits against the American Club were filed in this Court in CA 05-4419 on November 3, 2005, and in CA O5-5724 on February 22, 2006.  Unknown to the Plaintiffs--and perhaps unknown to Judges Berrigan and Duval and others in the barge litigation proceedings-- was the fact that on September 23, 2005, LNA was advised in writing by the American Club that the American Club was denying any "potential claim" of LNA on the breakaway barge claim (see Exhibit A).

The American Club and LNA continued jousting on coverage from September 23, 2005, until April 21, 2006, when, for a second time, LNA was advised in writing by the American Club that it was denying coverage (see Exhibit B).  Notwithstanding the repeated denials of

coverage, the American Club's New Orleans counsel, to the best of our knowledge, only raised obliquely the policy and defenses with this Court in the American Club's Answer (CV 05-4419, Doc. 133) filed on April 25, 2006.[4]   After receiving summons in the *Mumford* matter, the American Club filed an Ex Parte Motion and Order for Extension of Time (In Re Ingram Barge, etc., Record Doc. 116), which mentioned nothing about the Declaratory Action that would soon be filed, or any coverage defense.  Notwithstanding the repeated denials of coverage known only to Lafarge, the American Club's New Orleans counsel, to the best of our knowledge, first hinted in this Court at the coverage dispute issue  in the American Club's Answer (CV 05-4419, Doc. 133) filed on April 25, 2006.[1]   Only a hindsight reading of the Answer, in light of the Declaratory Action unknown at the time, affords even the slightest inkling to plaintiffs and the Court that coverage was contested, yet clearly demonstrates that the American Club sought to raise the defense without actually entering the fray.  Ambiguous reference to the policy terms and exclusions, while effectively bringing the American Club within the Court's jurisdiction over Plaintiffs' direct action, does not afford sufficient notice of the dispute.  Fed. R. Civ. P. 8 requires that a  defendant's Answer "state in short and plain terms its defenses to each claim asserted against it;"  The American Club's answer does comply.  Nor does it comply with the Louisiana Direct Action Statute, La. Rev. Stat. 22:655, paragraph C, which states:

"It is the intent of this Section that **any action brought under the provisions of this Section shall be subject to all of the lawful conditions of the policy or contract and the**

---

[4]   The American Club's Answer in asserting the policy provisions and defenses did not explicitly alert the Direct Action Barge Plaintiffs to any coverage issue.  From this side of the looking glass, pleading its policy *in extenso* in its Twelfth Defense and in paragraph II of its Fourteenth Defense in hindsight at best, is a most unusual way to indicate to counsel and the Court a denial of coverage issue.  (see Exhibit C)

American Club's Answer raises the coverage issue obliquely rather than explicitly; it does so by pleading its policy in extenso in its Twelfth Defense and in paragraph II of its Fourteenth Defense.  (see Exhibit C)

7

**defenses which could be urged by the insurer** to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this state." (Emphasis added)

Despite the denial of coverage in a separate suit in another venue, and despite failure to defend Lafarge here or to fund a defense, the American Club counsel has undertaken considerable participation in discovery aspects of *In Re Ingram Barge* and the present proceeding. espite the denial of coverage, the American Club has remained active in the discovery aspects of this proceeding through today. Under *Steptore v. Masco Construction Co.*, 643 So.2d 1213 (La. 1994), the continued participation by the American Club may very well constitute a waiver of the American Club's coverage defense.

One day before filing its Answer (Doc. 133) in this Court (i.e., on April 24, 2006), the American Club filed a declaratory action against LNA in the Southern District of New York asserting that the breakaway barge was not covered under the policy (see Exhibit C). In this way the American Club sought to take the coverage issue away from this Court and away from the Direct Action context in which the issue arises.

The Barge Plaintiffs did not learn of the New York declaratory action for some time. If the Barge Plaintiffs had been given an explicit and timely notice of the declaratory action, they would have evaluated the need to move this Court to temporarily enjoin the American Club and LNA from further proceedings in New York pending resolution of the coverage issue in this Court. As will be demonstrated hereafter, such an injunction would have been well within this Court's authority under the First-filed rule. But because the Barge Plaintiffs did not get timely

notice of the New York declaratory action, they did not consider seeking injunctive relief; however, after learning of the New York litigation Barge Plaintiffs attempted to file a motion for summary judgment on the coverage issue, which the Court did not allow.

Meanwhile, on January 29, 2007, Judge Haight in the Southern District of New York issued a Memorandum Opinion and Order denying LNA's motions to transfer or stay based on the First-filed rule and to stay the American Club's declaratory action or in the alternative to transfer it under 28 U.S.C. § 1404(a) to this Court.  Thereafter--on November 9, 2007--this Court issued a Minute Entry (Doc. 9100, see Exhibit D) refusing to grant Barge Plaintiffs leave to file the motion for summary judgment addressing the coverage issue.  A reading of that Minute Entry suggests the Court was misinformed and mistakenly led to believe that the American Club's New York declaratory suit on the coverage issue was properly lodged in New York because of a "venue" provision in the subject policy (see Exhibit E at Exhibit A, p. 5).  That belief was wrong:  the American Club's 2005 Rules attempt to restrict venue in insureds' actions against the American Club, but they enable the American Club to sue an insured for unpaid premiums "in any jurisdiction whatsoever," and they say nothing about declaratory actions by the Club (see Exhibit F).

This Court's November 9, 2007 refusal to entertain the summary judgment motion on the coverage issue was further based on the view that judicial economy favored leaving this issue to the Southern District of New York.  On the basis of Judge Haight's January 9, 2007 Memorandum and Order, this Court on November 9 had every reason to expect that Judge Haight would soon decide the coverage issue.

## THE NEW YORK LITIGATION NOW THREATENS JUDICIAL ECONOMY

In the January 29, 2007 Memorandum and Order (CV 06-3123, Doc. 21) refusing to stay or transfer the American Club's declaratory action, Judge Haight acknowledged the existence of the First-filed rule but gave the rule short shrift by stating that "[t]he factors to be weighed in ... assessing the applicability of the First-filed rule and deciding a motion to transfer venue are essentially the same" (Op. at 9).   (This statement renders the First-filed rule meaningless or nearly so.)

On July 1, 2008 (Doc. 13701), Your Honor noted that Judge Haight still has not decided the insurance coverage issue and emphasized concern regarding this Court's July 13, 2009 trial date, the existence of a scheduled late-September 2008 pre-trial conference in the Southern District of New York, and the present lack of a trial date in the Southern District of New York (see Exhibit G).   Your Honor pointed out that "the litigation in New York has blossomed with a number of ancillary issues that are threatening the present schedule in New York" and expressed the Court's concern that the underlying reasoning for its decision to forgo litigating the issue of coverage in this forum is evaporating; at this juncture the New York litigation and its schedule are apparent impediments to judicial economy.   Your Honor's perceptions are well taken. Sharing Your Honor's concern that the pending New York lawsuits are threatening this Court's trial date, we now address the four specific questions.

## <u>THE NEW YORK COURT'S DECISION TO ESCHEW THE FIRST-FILED RULE</u>

The First-filed rule provides that the party who first brought the suit in a Court of competent jurisdiction, as this Court is, should be free from vexation of subsequent litigation over the same subject matter.  The economic waste involved in duplicate litigation (whatever the motive) is obvious.  Of equal importance is the second suit's adverse effect upon the prompt and efficient administration of justice.   Public policy requires courts actively to seek to avoid wasteful judicial time and energy and not allow duplication of work on the same issues.

Judge Haight's January 29, 2007 Memorandum Opinion and Order gave insufficient weight to the First-filed rule.  This "well established and salutary" rule[2] aims at preventing duplicative litigation and is "grounded in principles of comity and sound judicial administration."[3]  It establishes the presumptive superior authority respecting case-management decisions of the Court in which the action was first filed.  "The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving similar issues should proceed."[4]  The First-filed rule means that the court in which the second action was filed will be guilty of an abuse of discretion if it is inattentive to the rule.[5]  Judge Haight's decision to treat the First-filed rule as adding nothing to the 28 U.S.C. §1404(a) venue-transfer analysis demoted the First-filed rule into insignificance.  This would have been an abuse of discretion in the Fifth Circuit, and may well be in the Second.

---

[2] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir. 1999) (quoting *Berisford Capital Corp. v. Central States*, 677 F.Supp. 220, 226 (S.D.N.Y. 1988)).

[3] *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

[4] *Id.* (citing cases).

[5] See *Sutter Corp. v. P&P Industries, Inc.*, 125 F.3d 914, 920 (5th Cir. 1997).

11

The First-filed rule not only constrains the second court from being too aggressive in holding onto the case - equally or more importantly, it also empowers the first court to enjoin the parties from proceeding in the second forum pending a resolution of the matter.  See *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) (approving First-filed court's grant of temporary injunction); Milton Roberts, Annotation, *Propriety of Injunction by Federal Court in Civil Action Restraining Prosecution of Later Civil Action in Another Federal Court Where one or More Parties or Issues Are, or Allegedly Are, Same,* 42 A.L.R. FED. 592 (1979) (citing numerous cases affirming the First-filed court's authority to enjoin the parties from pursing the second proceeding).  We recognize that the issuance by this Court of an order enjoining the New York parties from going forward is discretionary, but it would certainly not be an abuse of discretion under the present circumstances and in light of the maneuverings by the American Club.

## **THE AMERICAN CLUB MISLED JUDGE HAIGHT**

Barge Plaintiffs intend no disrespect for Judge Haight when we suggest the coverage dispute would not have been allowed to "blossom" in this Court the way it has in New York. Moreover, it appears that Judge Haight based his decision to refuse to transfer on misinformation provided to him by the American Club.

Judge Haight (Op. at 15) states that "Defendant LaFarge [LNA] is publicly traded on the New York Stock Exchange and is the largest diversified supplier of construction materials in the U.S. and Canada, *see* Pl. Mem, in Opp'n, at 13, and for this reason the convenience factor, if anything, tips slightly in plaintiff's favor."   In reviewing Plaintiff's (the American Club's) Memorandum of Law in Opposition to Defendant's Motion to Transfer or Stay (CV 06-3123,

12

Doc. 13), the American Club states in an attempt to support New York venue that a factor for Judge Haight to consider is "The Relative Means of the Parties Favors New York". That factor is supported by the following statement made by the American Club's counsel in their August 18, 2006 Memorandum to Judge Haight on p. 13-14. He states:

> LaFarge [LNA] is the largest diversified supplier of construction materials in the U.S. and Canada. In 2005, LaFarge's [LNA] net sales exceeded $4.3 billion. LaFarge [LNA] is also publicly traded on the NYSE and part of the LaFarge Group, which claims to be a world leader in building materials that is active in seventy-five countries. (*See* www.lafargenorthamerican.com/wps/portal/ (last visited August 3, 2006.)

The quoted statement misrepresents LNA's status because effective June 13, 2006, all of LNA's stock was purchased by Lafarge Group of Paris (hereinafter "the French company") and LNA notified the Securities and Exchange Commission and the New York Stock Exchange Inc. of deregistration and delisting of LNA shares (see Exhibit H).

The purchase of all of LNA's stock by the French company and the deregistration and delisting on the NYSE was purportedly motivated by the French company's desire to consolidate ownership and increase the profits of the French company, even after accounting for the multi-billion dollar buy back costs (see Exhibit I). Oddly, at the time of the French acquisition of all LNA stock, the demand for cement was so strong that LNA was able to raise prices 10% in 2005 and raise the price of wallboard 24%. The stock acquisitions draining LNA of profits looks very much like a way of evading the Louisiana Direct Action Statute and circumventing the very purpose for which it was enacted (see Exhibit J).

**THE ISSUE OF ISSUE PRECLUSION [COLLATERAL ESTOPPEL] AND WHAT EFFECT, IF ANY, A NEW YORK RULING MIGHT HAVE ON THE PRESENT LITIGATION**

The area of issue preclusion is infamously a "bramble bush."  18 WRIGHT, MILLER, AND COOPER, FEDERAL PRACTICE & PROCEDURE § 4416 (hereafter "FPP") (quoting *Quinn v. Monroe Cty.*, 330 F.2d 1320, 1328 (11th Cir. 2003)).  Under the often-cited general rule that a nonparty to the proceeding in which the issue was decided cannot be bound by the decision,[6] the direct action Barge Plaintiffs could not be bound by a decision by Judge Haight against coverage.  On the other hand, the American Club probably would be bound by a decision upholding coverage.

At pp. 19-21 of his January 29, 2007 Memorandum Opinion and Order, Judge Haight provided a helpful analysis of the issue preclusion (collateral estoppel) situation presented here.  Judge Haight made the following points:

> • A dictum by the Fifth Circuit in *Talbott Big Foot, Inc. v. Boudreaux*, 887 F.2d 611, 614 n. 4 (5th Cir. 1989), could be read to mean that the direct action plaintiffs could not be adversely affected by a no-coverage decision by Judge Haight.  And in *Mangin v. Murphy Oil USA, Inc.*, 2005 WL 1074987 at * 6 (E.D. La. May 1, 2005), Judge Barbier "concluded that arbitration between an insurer and an insured concerning coverage of a liability policy would have no collateral estoppel effect on direct action claims against the insurer" (Judge Haight at 19).

> • On the other hand, the Fifth Circuit in *Acosta v. Master Maint. & Constr. Inc.*, 452 F.3d 373, 378 n. 7 (5th Cir. 2006), expressed explicit "skepticism of the analysis adopted by the *Mangin* court," and Judge Barbier subsequently wrote that *Acosta* has disapproved *Mangin*.  See *Ancar v. Murphy Oil*, 2006 WL 2850445 at * 4 (E.D. La. Oct. 3, 2006).

Judge Haight then concluded that the Fifth Circuit's *Talbott* and *Acosta* decisions take different views on the issue preclusion point[7].  He went on to summarize:

---

[6] See, e.g., RESTATEMENT (FIRST) OF JUDGMENTS § 93 (1942).
[7]

Barge Plaintiff's respectfully request this Court to take note of the article published by Victoria Holstein-Childress, *The Enforceability of Arbitral Clauses Contained in Marine Insurance Contracts Against Nonsignatory Direct Action*

> It may be that a court in the Fifth Circuit would find that the direct action plaintiffs in Louisiana would not be collaterally estopped by this Court's decision of non-coverage in favor of the American Club from litigating the same question, but there currently exists no decision squarely on point. Moreover, counsel for Lafarge [LNA] conceded at oral argument that if Lafarge [LNA] were to *win* the coverage dispute in New York, collateral estoppel may well be available against the American Club in the direct action suits.

Judge Haight's belief that the Barge Plaintiffs could not be collaterally estopped by an adverse decision in his Court from relitigating the coverage issue has been powerfully confirmed by the Supreme Court's brand-new decision in *Taylor v. Sturgell*, 128 S.Ct. 2161 (June 12, 2008), which reinforces the "principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Id.* at 2166-67 (citation and internal quotation marks omitted).

The issue preclusion situation, therefore, is probably this: If LNA won the coverage case in New York, the parties in this proceeding would probably be successful in urging issue preclusion against the American Club. On the other hand, if the American Club won in New York, *Taylor v. Sturgell* seems to powerfully suggest that issue preclusion could not work against the Plaintiffs in this Court. Therefore, only one thing respecting issue preclusion is certain: If the New York Court decides the coverage issues first, this Court and the parties in this litigation should expect a lengthy and costly fight about issue preclusion.

And Judge Haight added a further caution: He indicated that even if his decision could not operate via issue preclusion to settle the coverage issue, it should in his view operate as

_____

*Claimants*, 27 Tul. Mar. L.J. 205 (2002) and the unpublished Opinion and Order of District Judge Alex R. Munson, District Court of Guam (December 10, 1999) whose Direct Action Statute is patterned after the Louisiana Direct Action Statute (See Exhibit K)

binding precedent on the question.  See Op. at 21.  Judge Haight's analysis here has some facial plausibility.  But consider what it would mean if implemented.  Judge Haight has made it clear that his coverage determination will turn on New York law.  Suppose that Judge Haight decided that New York law operates to preclude coverage, and this Court then felt constrained to follow the Haight ruling because of the ruling's persuasive precedential effect.  This would mean that the direct actions against the American Club could not proceed.  *The ultimate effect would be judicial repeal by a New York forum of a substantial chunk of the Louisiana legislature's direct action statute.*  If this case can be managed in such a way as to steer it away from any such morass, it should be.

### WHETHER PLAINTIFFS INTEND TO PURSUE ONLY THE AMERICAN CLUB IN THIS MATTER OR INTEND TO SUE ANY OTHER INSURER DIRECTLY

In view of the LNA stock purchase by the French company, it now appears that it will be necessary to explore the possibility of other coverages of LNA, such as Collision Liability under the Hull Policy, coverage under a Marine General Liability (MGL) or Comprehensive General Liability (CGL) Policy[8], and Bumbershoot coverage.  At present, Barge Plaintiff's counsel is appealing Magistrate Wilkinson's Order disallowing a Rule 30(b)(6) deposition on this type of discovery.

---

[8] William E. O'Neil, *Insuring Contractual Indemnity Agreements Under CGL, MGL, and P&I Policies*, 21 Tul. Mar. L.J. (1997).

## THE STATUS OF CLAIMS AGAINST INSUREDS
## SUED DIRECTLY IN THIS PROCEEDING

As a result of the November 9, 2007 conference and Minute Entry, discovery, albeit not extensive, has taken place in the direct action cases, especially vis-à-vis the American Club.

## FIRST FILED COURT'S KNOWLEDGE AND JUDICIAL ECOMONY

Barge Plaintiffs respectfully urge the Court to allow us to file a motion for summary judgment addressing the coverage issue. This now seems essential in light of the fact that the New York proceedings have blossomed with numerous ancillary issues and declaratory actions. This Court is the proper place to resolve the coverage issue, and it has deep experience in insurance coverage disputes. In fact, Your Honor's opinion in *In Re Katrina Canal Breaches Consolidated Litigation*, 466 F. Supp. 2d 729; *rev'd* 495 F.3d 191 (5th Cir. 2007); *cert. denied* 128 S.Ct. 1230 (Feb 19, 2008); and *cert. denied* 128 S.Ct. 1231 (U.S. Feb 19, 2008) on the meaning of "flood" sets out a thorough analysis of the law and required methodology regarding coverage determinations under the Louisiana Direct Action Statute.

Moreover, the American Club is no stranger to Louisiana and its courts. When the American Club chose to insure Members who operate vessels world wide, rest assured it knew that Members and their vessels would call at Louisiana ports. The American Club is in no way prejudiced in having the coverage issue resolved here. The American Club has correspondents all over the world and in Lafayette and New Orleans who undoubtedly investigated facts surrounding the break away that will impact a coverage decision.

## REFERRING THE MATTER TO THE MDL PANEL

The provisions regarding multidistrict litigation are set out in 28 U.S.C. §1407.  Section 1407(a) makes it clear that parties who petition the Judicial Panel on Multidistrict Litigation to transfer the pending actions to a single district judge do so to consolidate actions for pre-trial proceedings.  That section specifically provides that "Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred…".  Barge Plaintiffs can conceive of only one argument for bringing the MDL Panel into this matter.  This would sidestep questions that might otherwise arise if Judge Haight decides the coverage issue before this Court can reach it.  We respectfully submit that these potential issue preclusion questions have been greatly simplified by the Supreme Court's new (June 12, 2008) decision in *Taylor v. Sturgell*.  And in any event, it seems clear that a transfer to the MDL Panel would be inimical to judicial economy.  It seems almost certain that transferring the case would sacrifice this Court's trial date.  Yet, eventually, the case would come back to this Court.  Getting a third Court involved, and then, in the end, having the matter remanded to this Court long after this Court's trial date is an undesirable result and would not promote judicial economy.

We respectfully urge this Court to bring a temporary halt to the blossoming New York litigations.

## CONCLUSION

This court has the power to enjoin the New York parties from proceeding further and to stop the vexatious cluster of New York consolidated declaratory suits, which are spinning out of control.  It is Barge Plaintiffs recommendation that this Court issue a <u>Conditional Temporary Injunction</u> enjoining the parties in the New York consolidated cases (all of whom are parties

18

here) from proceeding further in those cases and suggest this Court set a date certain for the

filing of Rule 56 motions in this Court no later than January 15, 2009, which will allow this

Court to decide the coverage issue well before the July 13, 2009 trial date.

Dated:  July14, 2008                 Respectfully submitted,


                                     /s/ Brian A. Gilbert,
                                     Brian A. Gilbert, Esq.(21297)
                                     LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
                                     821 Baronne Street
                                     New Orleans, Louisiana 70113
                                              Telephone: (504) 885-7700
                                              Telephone: (504) 581-6180
                                              Facsimile: (504) 581-4336
                                              e-mail: bgilbert@briangilbertlaw.com


                                     /s/ Lawrence D. Wiedemann,
                                     Lawrence D. Wiedemann.(13457)
                                     Karl Wiedemann (18502)
                                     Karen Wiedemann (21151)
                                     WIEDEMANN & WIEDEMANN
                                     821 Baronne Street
                                     New Orleans, Louisiana 70113
                                              Telephone: (504) 581-6180
                                              Facsimile: (504) 581-4336

                                              e-mail: lawrence@wiedemannlaw.com, ____
                                              karl@wiedemannlaw.com, karen@wiedemannlaw.com,


                                     /s/ Patrick J. Sanders
                                     Patrick J. Sanders (18741)
                                     3316 Ridgelake Drive
                                     Suite 100

Metairie, LA 70002
Telephone: 504-834-0646
e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Adele Rapport
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell:   202-549-1454
Facsimile:  800-805-1065 and 202-828-4130
e-mail: rick@rickseymourlaw.net,
adele@rickseymourlaw.net

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
Telephone: (212) 608-4400
Facsimile: (212) 227-5159
e-mail: lwilson@wgdnlaw1.com, ___
ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
Telephone: 212-869-3500 ext. 235
Facsimile:  212-398-1532

e-mail:   a.fuchsberg@fuchsberg.com,
l.kelmachter@fuchsberg.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been served upon

counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile,

and/or ECF upload, this 14th day of July, 2008.

\s\Brian A. Gilbert