# Exhibit B



Thacher Proffitt & Wood LLP
Two World Financial Center
New York, NY 10281
212.912.7400

Fax: 212.912.7751
www.tpw.com

April 21, 2006

**BY HAND**

Robert G. Clyne, Esq.
Hill Rivkins & Hayden LLP
45 Broadway, Suite 1500
New York, New York 10006-3739

        Re:    Lafarge North America, Inc.
               Barge ING 4727
               Alleged Contact with Levee, New Orleans, LA
               Date of Loss: September, 2005
               Our File No.: 20239-00002

Dear Mr. Clyne:

      We refer to your letter of March 3, 2006 addressed to the Shipowners Claims Bureau, Inc. ("SCB"), as Managers of the American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club" or the "Club") concerning the captioned matter. Your letter presents a claim to the Club on behalf of Lafarge North America, Inc. ("Lafarge") seeking "... indemnification for all potential liability and/or reasonable settlements and litigation costs ..." in connection with certain claims for property damage and/or personal injury relating to Ingram's Barge ING 4727 and arising from the Hurricane Katrina disaster in New Orleans. We have been asked to respond to your letter, and to explain the Club's position, which is that the Barge ING 4727 was not entered with the Club at the time of the casualty, or at any other time. Your very recent letter of March 31, 2006, attempting to declare the Barge ING 4727 – and only the ING 4727 – as insured under the Certificate of Entry (with a tender of premium of $852.00) is contrary to the provisions of the Certificate of Entry and rejected. Even if the barge had been entered with the Club, coverage for the claims asserted against Lafarge would have been excluded.

I.    The Barge ING 4727 was Not Entered with the Club

      Your letter of March 3, 2006 requests consideration of Lafarge's claim pursuant to Certificate of Entry No. 01729000 and the Club Rules. In that letter, and in your subsequent letter of March 31, 2006, Lafarge seeks coverage for the Barge ING 4727 pursuant to the Chartered Barges clause found in the Special Terms & Conditions which are attached to the

New York, NY        Washington, DC        White Plains, NY        Summit, NJ        México City, México

Robert G. Clyne, Esq.  
April 21, 2006

Page 2.  
*Without Prejudice*

Certificate of Entry. However, as discussed below, seeking coverage under this Clause is unavailing.

As an initial matter, in your claim submission letter of March 3, 2006, you only discuss two aspects of the Chartered Barges clause. We remind you that in our meeting of February 28, 2006, you were advised that in order for the ING 4727 to be entered with the Club under the Chartered Barges clause, Lafarge must demonstrate that the Barge ING 4727 meets all of the criteria set forth therein. It appears that you have chosen to ignore the criteria which the Barge ING 4727 cannot satisfy. You have also chosen to quote selectively from the clause. Accordingly, and for the sake of good order, we quote the entire Chartered Barges clause below:

> CHARTERED BARGES.
>
> If Lafarge Corporation et al. <u>acquires an insurable interest in any vessel in addition to or in substitution for those set forth herein, through purchase, charter, lease or otherwise</u>, such insurance as is afforded hereunder to any similar vessel shall <u>automatically</u> cover such additional vessel effective from the date and time the Assured acquires an insurable interest in such additional vessel. With respect to a chartered, leased or similarly acquired vessel, the insurance hereunder automatically includes the owner as an additional Assured with waiver of subrogation against the owner, if required, effective from the date and time such vessel is insured hereunder.
>
> The above provision shall not apply to vessels which are chartered under a contract whereby the owner (or Demise Owner) and Charterer agree that the owner (or Demise Owner) shall procure Protection & Indemnity Insurance on the vessel and such insurance shall include the charterer as an Assured.
>
> The Assured agrees to report the name and gross tonnage of any vessel in which they acquire an insurable interest at the expiration of this policy and pay any additional premium as may be required annually, at expiry at daily pro-rate the annual rates agreed. (emphasis added).

You will note that there are several requirements, each of which must be satisfied in order for a vessel to be entered with the Club pursuant to this clause. We will discuss each of the requirements in order below.

Robert G. Clyne, Esq.  Page 3.
April 21, 2006  ***Without Prejudice***

A. "If Lafarge Corporation et al. acquires an insurable interest in any vessel in addition to or in substitution for those set forth herein . . . ."

You have chosen to focus only on the insurable interest aspect of this requirement. You are aware that the Club does not necessarily agree that Lafarge acquired any insurable interest in the ING 4727, let alone the requisite interest for the purpose of the clause. However, even if Lafarge did have the requisite insurable interest in the ING 4727, the barge would not be covered because it is not a vessel which was "in addition to or in substitution for those [vessels] set forth herein" [*i.e.*, on the Schedule of Vessels attached thereto]. Lafarge has made no attempt in your letters of March 3 and 31, 2006, or in either of the two meetings, to argue that the ING 4727 was in addition to or in substitution for the vessels listed in Lafarge's Schedule of Vessels. On the contrary, it is quite apparent that the ING 4727 was used by Ingram to perform Ingram's obligations under the Transportation Agreement. It is further apparent that none of the Lafarge vessels listed on the Schedule of Vessels were used by Ingram to perform its obligations under the Transportation Agreement, nor did Lafarge use the ING 4727 for any purpose whatsoever. Ingram at all times was the owner and operator of the Barge and the Club disagrees entirely with your statement that "Lafarge would qualify as the operator, trustee and/or agent of the vessel at the time of the casualty." (March 3rd letter, p. 3) This is made clear beyond any doubt by paragraph 51 of the Transportation Agreement, which reads as follows:

51. Independent Contractor: Nothing contained in this Contract shall be construed as a contract by Shipper [Lafarge] for the chartering, hiring or leasing of any barge, towboat or other equipment of Carrier [Ingram] to be provided hereunder; nor shall any of the agents, servants, subcontractors or employees of Carrier be regarded as employees of Shipper, it being understood that Carrier is in all respects an independent contractor and that Shipper shall exercise no control over the operation of any barge, towboat or other equipment of Carrier or over Carrier's agent, servants, subcontractors or employees.

It seems perhaps simplistic, but is no less true, that Lafarge cannot invoke the "Chartered Barges" clause to obtain coverage over a vessel that by express contractual provision (paragraph 51, above) is not to be considered a chartered barge, or indeed anything other than Ingram's barge. As discussed further below, Lafarge simply did not have an interest in the barge that would allow it to declare the barge for coverage under that clause.

B. Lafarge's interest in the ING 4727 was not acquired ". . . through purchase, charter, lease or otherwise . . . ."

The above quoted language describes how Lafarge must acquire its insurable interest in any vessels sought to be covered under the Chartered Barges clause. However, the Barge ING 4727 was not purchased from Ingram, and Paragraph 51 of the Transportation Agreement quoted above makes clear that it was not chartered or leased either. Accordingly, you have focused on the phrase "or otherwise" to argue that any insurable interest of any kind whatsoever by Lafarge qualifies under this requirement. With respect, your argument both proves too much and is

Robert G. Clyne, Esq.  
April 21, 2006

Page 4.  
*Without Prejudice*

contrary to the established rule of construction known as *ejusdem generis*. That black letter canon of construction states that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only those persons or things of the same type as those listed. *See* BLACK'S LAW DICTIONARY, Seventh Edition, p. 535; *see also People v. Machalski*, 115 N.Y.S.2d 28, 31 (City Magistrates' Ct. of the City of N.Y. 1952); *see also Kleckner v. Lampert*, 52 A.D.2d 917, 917 (2d Dept. 1976) ("Under the theory of *jusdem generis* the term 'or otherwise' should be equated to something similar to that which is particularized . . . ."). Lafarge did not acquire an interest in the ING 4727 remotely akin to a purchase, charter or a lease, and the Transportation Agreement makes clear that Ingram was an independent contractor to Lafarge at all times. Moreover, Lafarge never had any control over Ingram's vessels with respect to the movement of the cargo under the Transportation Agreement. (*See* Transportation Agreement ¶ 21: "a barge loaded with shipper's cargo will move only at the convenience of the carrier . . . .")

We understand that the Chartered Barges clause has its origin in a Lafarge hull policy, which explains the use of the term "insurable interest" in the first place. (That being a term usually connected to first party property insurance, not liability insurance.) But it also clarifies the intent of the clause, which was to insure vessels in which Lafarge in fact had an ownership interest or the equivalent. This is confirmed by the fact that to our knowledge only one vessel was ever declared by Lafarge under the Chartered Barges clause in the seven years that Lafarge has had its vessels insured by the Club. That vessel was the STEELHEAD, a barge which was time chartered by Lafarge in 2001. The terms of the charter required Lafarge to name the vessel owner as an additional insured under Lafarge's insurance and to waive subrogation. In contrast, the Transportation Agreement with Ingram contains no such provision. On the contrary, under paragraph 17 of the Transportation Agreement, Lafarge is only required to insure the cargo on the barge, not the barge itself. Ingram therefore remains responsible for providing the barge's hull and liability insurance.

More importantly, the STEELHEAD was evidently within Lafarge's control during the period of the charter, and was therefore also clearly in substitution for or addition to the vessels insured by Lafarge under the Schedule of Vessels attached to the Certificate of Entry. In contrast, Lafarge did not charter and use the Ingram barges, nor was Lafarge required to insure them. Finally, none of the barges used by Ingram to perform Ingram's obligations under the Transportation Agreement were ever declared by Lafarge to the Club under the Chartered Barges clause, until your attempt to do so with respect to the ING 4727. Clearly, Lafarge itself never before expected or intended that the Chartered Barges clause would be applicable to Ingram's barges.

C. <u>The ING 4727 was not validly declared under the Charter Barges clause.</u>

The final paragraph of the Chartered Barges clause requires that Lafarge report the name and tonnage of any vessel in which it acquires an insurable interest, and to pay additional premium as may be required. Now, long after a major claim has been made against Lafarge in connection with the breakway of the Barge ING 4727, Lafarge seeks to declare the vessel to the Club. This is contrary not only to the wording of the Certificate of Entry, it is contrary to the most basic principle of insurance.

Robert G. Clyne, Esq.  
April 21, 2006

Page 5.  
*__Without Prejudice__*

      (i)     Lafarge has never declared Ingram barges before.

As noted above, Lafarge has never declared any barges operating under the Ingram Transportation Agreement as covered under the Chartered Barges clause. In this regard, we note that the Transportation Agreement incepted on January 1, 2005, which was during the 2004 – 2005 Club year. None of the Ingram barges that landed at the Lafarge facility between January 1 and February 20, 2005 (the end of the Club year) were declared under the Club Entry for that insurance year. Nor have any of the many barges transporting cargo under the Transportation Agreement from February 20 to December 31, 2005 been previously declared under the 2005 – 2006 Club year. In fact, Lafarge has never declared any barge which, like the ING 4727, simply landed at the Lafarge facility to load or discharge cargo. But Lafarge cannot now (nor could it ever) simply decide to pick and choose among the vessels which happened to land at its facilities for inclusion in its Certificate of Entry, when it has never declared one such vessel in the past. Moreover, clearly Lafarge itself never anticipated or believed that the Club would cover any of the barges that simply landed at its facility.

      (ii)    The Chartered Barges clause provides "automatic" cover for all vessels which fall within its scope.

It is axiomatic that insurance is intended to spread the risk of loss among many similar risks. No marine insurer would allow an assured to choose to insure a single vessel only after a claim had arisen against the vessel, which is what Lafarge is seeking to do. The Club certainly will not allow this, which is why the Chartered Barges clause provides "automatic" (i.e. mandatory) cover for all vessels within its scope. Thus, even if the ING 4727 was within the scope of the clause (which it is not), to be consistent with its wording, Lafarge would have to declare every vessel that had landed at its facilities for even a brief time, since February 20, 1999 (when Lafarge's Club entry incepted), and pay premium for each. Lafarge has never tried to do so and, since the Chartered Barges clause does not cover vessels that merely land at Lafarge's facilities, Lafarge cannot do so.

Frankly, the Club considers it outrageous that out of the hundreds, if not thousands, of vessels that landed at a Lafarge facility in the last seven years, Lafarge should seek to insure only the ING 4727, and only after it has been alleged to have caused billions of dollars in damages, in return for $852.00 in premium. The premium tendered is rejected will be returned by the Club under separate cover forthwith.

II.    Even if Entered With the Club, Coverage Would be Excluded

Even assuming that the ING 4727 was entered with the Club at the time it was present at Lafarge's New Orleans facility – which it was not – coverage is excluded pursuant to the terms of the Club Rules. The Chartered Barges clause of the Certificate of Entry specifically refers to such insurance *as is afforded hereunder.* . . ." (emphasis added). This clause confirms that coverage provided for in the Certificate of Entry is subject to the exclusions set forth in the Club Rules, which exclude coverage where the loss is subject to other insurance and where the loss is premised upon contractual liabilities that were not pre-approved by the Club.

Robert G. Clyne, Esq.  
April 21, 2006

Page 6.  
*__Without Prejudice__*

A.   Lafarge has other insurance for this claim

As you are aware, Lafarge has a primary marine liability/wharfinger's policy of $5,000,000 placed with New York Marine & General Insurance Company (the "MMO Policy"). Lafarge also has an excess policy providing $45 million in cover above the $5 million primary limit, for total coverage up to $50 million. The excess policy follows the terms and conditions of the MMO policy. The MMO Policy specifically includes coverage for Lafarge's "liability for damage caused directly or indirectly by the freeing or breaking away" of vessels at landing and/or mooring facilities that are owned, operated, utilized, controlled or leased by Lafarge. The "breaking away" of the barge from Lafarge's facility is exactly what caused the loss that gives rise to the claim against Lafarge.

As referenced in your March 3, 2006 letter, the Club Rules provide that "[t]he Association shall not be liable for any loss, damage or expense against which, but for the insurance herein provided, the Member, Co-assured or Affiliate would have been insured under any other existing insurance . . . ." (Rules Class I, Rule I, § 4(34).) Given that there is no cover, there is no need to analyze the legal effect of the "other insurance" clauses in the MMO Policy and Club Entry; suffice to say that we do not agree with your analysis.[1] What is important is that Lafarge had insurance that directly covers the claims at issue. (We understand that MMO has not denied that its policy covers this claim.) This demonstrates that Lafarge understood that it needed, and obtained, separate wharfinger's liability coverage for claims such as those arising from the ING 4727 breakaway.

B.   The Club does not insure undeclared contractual liabilities

Coverage from the Club is also excluded by Lafarge's failure to submit the Transportation Agreement to the Club for its review. The Rules exclude "[l]iabilities, costs and expenses which would not have arisen but for the terms of a contract or indemnity entered into by a Member, unless those terms have been expressly approved in writing by the Managers." (Rules Class I, Rule 3, § 2(8).) The Transportation Agreement with Ingram was never submitted to the Club for its review or approval. Accordingly, to the extent that Lafarge's liability arises from its contractual obligations under the Transportation Agreement, Lafarge's failure to submit the Transportation Agreement to the Club for review or approval excludes coverage.[2]

III.   Conclusion

For the foregoing reasons, the Club is declining coverage for Lafarge's request for "... indemnification for all potential liability and/or reasonable settlements and litigation costs..." in connection with certain claims for property damage and/or personal injury relating to Ingram Barge 4727 and arising from the Hurricane Katrina disaster in New Orleans. Should you or

---

[1]   Also, as noted above, the barge was insured against liabilities by Ingram.  
[2]   You have cited section 34 of the Transportation Agreement as a basis for Lafarge's liability to Ingram. (March 3rd letter, p. 4) However, we note parenthetically that section 34 imposes on Lafarge only the obligation to protect the barges in its possession from damage. It does not appear to make Lafarge contractually obligated to pay for all damage caused by the barge. Thus, we are unsure why you have cited that provision of the Transportation Agreement.

Robert G. Clyne, Esq.  
April 21, 2006

Page 7.  
*Without Prejudice*

Lafarge have any further information or documentation to submit to the Club for its review in connection with this claim or this letter, please provide same to the undersigned.

    Finally, the Club and SCB reiterate that they expressly reserve all rights and defenses whether arising under the terms of Lafarge's entry in the American Club, at law, or otherwise. Moreover, this letter is without prejudice to their right to modify or amend their coverage position, and nothing contained herein shall act as, or be deemed to act as, a waiver of any of their rights, at law or equity, with respect to the matters contained herein.

                      Very truly yours,

                      THACHER PROFFITT & WOOD LLP

                By    Original Signed By  
                         John M. Woods

cc (vial email):    Michael Mitchell, Esq.