

27 TLNMLJ 205 Page 1
27 Tul. Mar. L.J. 205
**(Cite as: 27 Tul. Mar. L.J. 205)**

Tulane Maritime Law Journal
Winter 2002

Article

***205** THE ENFORCEABILITY OF ARBITRAL CLAUSES CONTAINED IN MARINE INSURANCE CONTRACTS AGAINST NONSIGNATORY DIRECT ACTION CLAIMANTS

Victoria Holstein-Childress [FNa1]

Copyright (c) 2002 Tulane Maritime Law Journal; Victoria Holstein-Childress

| | |
|---|---|
| I. Introduction. | 206 |
| II. Direct Action Statutes Generally. | 208 |
| III. State Statutory Direct Action Claims in the Federal Courts. | 210 |
|     A. Contractual Limitations on the Direct Action: The Guam Approach. | 210 |
|     B. The Fifth Circuit Approach: The Arbitral Clause as an Unlawful Condition Precedent to a Louisiana Direct Action Claim?. | 214 |
|     C. Puerto Rico's Direct Action Statute: Trumping the Arbitral Clause. | 216 |
| IV. A Hypothetical and Analysis. | 217 |

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

|   |   |
|---|---|
| A. Aasma Does Not Support the Creation of a Uniform Rule Prohibiting State Statutory Direct Actions Against P & I Clubs. | 218 |
| B. England's Third Parties (Rights Against Insurers) Act of 1930 Does Not Confer an Immediate Right of Direct Action. | 220 |
| C. The McCarran-Ferguson Act Preserves State Direct Action Statutes from FAA Preemption. | 222 |
| V. Conclusion. | 225 |

It would be idle to pretend that the line separating permissible from impermissible state regulation is readily discernable in our admiralty jurisprudence, or indeed is even entirely consistent within our admiralty jurisprudence. [FN1]

**\*206 I. Introduction**

Despite the longstanding policy objective of promoting uniformity in admiralty law, both the United States Supreme Court and lower federal courts "disfavor the judicial creation of marine insurance rules." [FN2] Instead, like Congress, [FN3] they accord substantial deference to the state regulation of marine insurance matters in the absence of well-entrenched federal maritime precedent. [FN4] However, the Court has yet to clarify whether state direct action statutes, which grant tort claimants the right to proceed directly against a wrongdoer's insurer, may invalidate an arbitral clause contained in a marine insurance protection and indemnity (P & I) contract that requires arbitration of coverage disputes between the insurer and its assured as a condition precedent to any action against the insurer. Because "[f]ederal admiralty law neither authorizes nor forecloses a third party's right to directly sue an insurance company," [FN5] ascertaining the proper reach of state direct action statutes in this context will require the Court to consider not only whether, under the circumstances, there is a compelling need for the articulation of a uniform federal maritime rule, [FN6] but also whether the federal pro-arbitration policy embodied in the Federal Arbitration Act (FAA) [FN7] mandates the enforcement of such arbitral provisions against nonsignatory claimants as a "'term' and 'lawful condition'" of the insurance contract. [FN8]

This Article examines the enforceability of arbitral clauses contained in British marine P & I contracts against nonsignatory tort victims who would otherwise have a right of direct action against the insurer pursuant to the direct action statute of the Commonwealth of the **\*207** Northern Mariana Islands (C.N.M.I.). [FN9] Because no court has addressed this precise question to date, this Article will analyze federal and state court treatment of the analogous direct action statutes of Guam, [FN10] Louisiana, [FN11] and Puerto Rico, [FN12] which, like the C.N.M.I. legislation, afford tort claimants a right of action against the insurer without a prior judgment against the assured and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

without regard to whether the assured is insolvent. This Article will then contrast the narrowly circumscribed right of direct action afforded by England's Third Parties (Against Insurers) Act of 1930, which requires such a transfer of rights from the assured to the claimant as a condition precedent to an action against the insurer. [FN13] This Article contends that reliance upon the English legislation by some courts to bind nonsignatory claimants to arbitrate as mere third-party beneficiaries or assignees of the insured's rights is inappropriate when the direct action is based on a state statute rather than on the insurance contract alone. [FN14] Moreover, this Article asserts that by operation of the McCarran-Ferguson Act, [FN15] state direct action statutes are preserved from FAA preemption and thus effectively supersede arbitral clauses in a P & I contract as "terms or limits" that defeat the state statutes' underlying objectives. In conclusion, this Article proposes that, by supplementing federal statutory and judicially created maritime remedies available to claimants, direct action statutes are analogous to other state statutes for which the Supreme Court has repeatedly carved out exceptions to the general rule favoring uniformity in admiralty law. [FN16]

**\*208** II. Direct Action Statutes Generally

The direct action statutes of Guam, Louisiana, Puerto Rico, and the C.N.M.I. abrogate the common law rule that a third party may not proceed directly "'against a liability insurer . . . due to an absence of privity of contract'" [FN17] by affording a basis for suit directly against an insurer with or without the assured that is "separate and independent" from the insurance agreement. [FN18] By providing "an additional and cumulative remedy at law in the enforcement of obligations of indemnity voluntarily and lawfully assumed by the insurer," [FN19] such direct action statutes protect claimants' ability to recover for their injuries when the tortfeasor-assured is insolvent or otherwise judgment-proof. [FN20] Although the direct action statutes of those jurisdictions by their terms refer only to "liability" insurance contracts, courts have consistently held that both the Louisiana and Puerto Rico direct action statutes are equally applicable to liability and indemnity policies. [FN21]

The distinction between these two types of coverage is significant because marine P & I insurers only extend indemnity coverage to their members for losses that typically include injuries to seamen and third parties. [FN22] Under a liability policy, "coverage . . . attaches" at the moment of injury, regardless of whether the assured has sustained an "actual loss" **\*209** in the discharge of that liability. [FN23] By contrast, under an indemnity policy, the insurer's indemnification obligation traditionally runs only to the assured and is not triggered until after a judgment has been rendered against and has been paid by the assured. [FN24] Such "pay to be paid" provisions contained in most marine P & I contracts thus require the tort claimant to pursue a separate action or arbitration against the assured prior to initiating a proceeding against the insurer. [FN25] If enforced as a condition precedent to a direct action, "pay to be paid" or the analogous "no action" [FN26] clauses would leave claimants either in the unenviable position of being able to sue the insurer directly only after being paid by the assured (when presumably claimants have no need for such action) or without recourse at all when a judgment rendered against the assured is returned unsatisfied.

In order to redress this inequity and to protect the public interest, the Louisiana, Guam, and C.N.M.I. direct action statutes confer upon claimants a right of direct action "within the terms and limits of the policy . . . whether or not such policy contains a provision forbidding such direct action." [FN27] Derived from Louisiana's statute, [FN28] Puerto Rico's direct action statute similarly affords injured claimants the right to sue the tortfeasor's insurer directly, subject to the "terms," "limitations," and "conditions" of the insurance contract, [FN29] and voids any provision or stipulation that deprives the direct action claimant of access to the Puerto Rico courts [FN30] or deprives those courts of jurisdiction over the claimant's action against the insurer. [FN31] While both the Louisiana and Puerto Rico direct action statutes expressly allow the insurer to assert any defenses that would be available to it in an action initiated by the assured, [FN32] such defenses are themselves subject to the limitations of the respective **\*210** statutes. [FN33] Accordingly, courts asked to construe those two direct action statutes have consistently declined to enforce "pay to be paid" or "no action" clauses, reasoning that such provisions contravene the injured claimant's statutorily conferred right to bring a direct action. [FN34]

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

While a marine P & I insurer that is subject to suit brought by a tort claimant under the Louisiana or Puerto Rico direct action statutes cannot escape liability by cloaking its insurance contract in indemnity terms, it is unclear whether the direct action statutes of Guam and the C.N.M.I. similarly render "pay to be paid" or "no action" provisions void and unenforceable. As discussed below, the confusion surrounding the enforceability of arbitral clauses against nonsignatory direct action plaintiffs, which analogously require a separate adjudicatory proceeding as a condition precedent to an action against the insurer, stems in large part from this lack of consensus over the extent to which the right conferred by the direct action statute is subject to "the terms and limits of the policy." [FN35]

III. State Statutory Direct Action Claims in the Federal Courts

A. Contractual Limitations on the Direct Action: The Guam Approach

The view that an arbitral clause constitutes a valid contractual "term and limit" that restricts the nonsignatory tort claimant's state statutory right to bring a direct action against a marine P & I insurer is best exemplified by the United States District Court of Guam's decision in Heikkila v. Sphere Drake Insurance Underwriting Management, Ltd. [FN36] In that case, Heikkila, a seaman, was killed in a helicopter crash in the high seas that occurred while he was en route to work on the F/V LAURA Z, to which the helicopter had been assigned. [FN37] Pursuant to Guam's direct **211** action statute, [FN38] Heikkila's personal representative brought Jones Act, [FN39] Death on the High Seas Act (DOHSA), [FN40] and unseaworthiness claims against the vessel owner's British P & I insurer. [FN41] The district court dismissed the suit, holding that both the arbitral and English choice of law [FN42] clauses contained in the P & I contract bound the nonsignatory direct action plaintiff as "terms and conditions of the underlying policy" under English law. [FN43]

Addressing the threshold choice of law issue, the Heikkila court found that no federal maritime precedent precluded direct actions against marine P & I insurers [FN44] and, accordingly, conducted an "interstate choice of law" analysis [FN45] to identify which state's law among those eligible governed the construction of the insurance contract. [FN46] The district court concluded that England, as the "place of . . . negotiation and performance" of the contract, had "a considerably greater interest" in the enforcement of its "terms and conditions" than did Guam (the operating port of the F/V LAURA Z), Missouri (Heikkila's residence), or the C.N.M.I. (the place of incorporation of the vessel's owner). [FN47] The court found that Guam's interest was merely "remote" because the accident occurred far outside Guam's territorial waters and "no citizen of Guam [was] a party to or beneficiary of the [insurance] contract." [FN48] Relying upon the Sixth Circuit's decision in Aasma v. American Steamship Owners Mutual Protection and Indemnity Ass'n, [FN49] the district court reiterated that England's Third Parties (Rights Against Insurers') Act of 1930 does not place a third-party plaintiff "'in any better position as against the insurer than that of the insured himself.'" [FN50] Therefore, the Heikkila court ruled that under English law, the direct action plaintiff was **212** bound by the arbitration clause at issue as a "term and condition" of the relevant insurance contract. [FN51]

Moreover, the district court determined in the alternative that this result would be the same under Guam or federal maritime law [FN52] and was consistent with the mandates of the Convention on Recognition and Enforcement of Foreign Arbitral Awards (Convention), [FN53] as implemented by the FAA. [FN54] First, the Heikkila court found that Guam's direct action statute expressly limits the claimant's "'right of direct action against the insurer within the terms and limits of the policy,'" [FN55] regardless of whether public policy considerations compel a contrary conclusion. [FN56] Strikingly, in so ruling, the district court declined to accord Louisiana Direct Action Statute jurisprudence [FN57] "any special significance" in the case. [FN58] Instead, the court reasoned that even if Louisiana's statute had provided the basis for Guam's direct action statute as enacted in 1959, [FN59] "[a]ny similarities in text or policy that these two statutes may have had [at that time]" were obliterated by the "numerous legislative and judicial modifications that Louisiana's statute has [since] undergone." [FN60]

Second, the Heikkila court relied upon Aasma to conclude that the "uniquely maritime . . . nature" of disputes

between seamen and P & I clubs demanded the articulation of a "uniform, federal maritime" rule favoring the enforcement of contractual "terms and conditions." [FN61] According to the district court, such a rule would not only prevent the "hodge-podge of different direct action rules against Maritime P & I Associations" from burdening international shipping, but would also "advance" the "special federal protection" traditionally afforded seamen as "ward[s] of admiralty." [FN62] Although it acknowledged the Supreme Court's deference to the state regulation of insurance matters in Wilburn **\*213** Boat Co. v. Fireman's Fund Insurance Co., [FN63] the Heikkila court concluded that the "standard insurance policy issues" addressed in Wilburn Boat did not implicate the uniquely maritime concerns raised in cases such as that at bar involving P & I coverage. [FN64]

    Finally, the district court determined that the Convention, which requires courts to honor arbitral clauses contained in international marine insurance contracts unless such are deemed "null and void," [FN65] supported the enforcement of the arbitral clause. [FN66] Having already ascertained that the clause was a "lawful, binding condition" under Guam's direct action statute, the district court summarily concluded that the third-party direct action claimant merely "'stand[s in] the shoes' of the insured who [is] bound by the terms and conditions of the insurance [contract]." [FN67] Therefore, the Heikkila court found no existing legal or equitable grounds to deny its enforcement. [FN68]

    Less than a week after it rendered its decision in Heikkila, in TCW Special Credits v. F/V Chloe Z [FN69] the District Court of Guam again concluded on similar facts that an arbitral clause contained in a British marine P & I contract bound a Guam direct action plaintiff to arbitration in London as a lawful condition precedent to an action against the defendant insurer. [FN70] In TCW, a seaman who was injured while working as a crewmember aboard the F/V CHLOE Z on the high seas brought a Jones Act [FN71] suit against the vessel owner's P & I insurer, Sphere Drake Underwriting Management, Ltd. [FN72] In an opinion strikingly similar to Heikkila, [FN73] the district court determined that English law governed the construction of the insurance contract and that Guam, as the operating port of the vessel, had only a "remote" interest in the enforcement of the agreement's provisions. [FN74] Accordingly, the district court again held that under English, Guam, and federal maritime law, the direct action plaintiff **\*214** was "bound by the terms and conditions of the insurance policy, including the arbitration provision." [FN75]

B. The Fifth Circuit Approach: The Arbitral Clause as an Unlawful Condition Precedent to a Louisiana Direct Action Claim?

    Although the United States Court of Appeals for the Fifth Circuit has yet to address whether an arbitral clause contained in a P & I contract may bind a nonsignatory Louisiana direct action claimant to arbitrate, on two separate occasions it has ruled in favor of the injured claimants on the closely analogous question of whether a Louisiana direct action proceeding must be dismissed or stayed pending the outcome of a related arbitration between the assured and the insurer. [FN76] In In re Talbott Big Foot, Inc., three maritime workers were injured and one was killed in an accident that resulted in the sinking of a jack-up drilling barge in Louisiana coastal waters. [FN77] After the drilling barge's P & I insurer denied the barge owners' claims, the assured brought a third-party demand against the insurer. [FN78] The personal injury and death claimants then filed suit directly against the insurer pursuant to the Louisiana Direct Action Statute. [FN79] Relying upon the arbitral clause contained in the P & I contract, the insurer moved to dismiss the direct action or, alternatively, to stay proceedings pending the outcome of the arbitration of the policy coverage dispute between it and its assured. [FN80] The district court dismissed the suit, having concluded that the plaintiffs had no right to pursue a direct action until after the insurer and its assured had arbitrated their dispute. [FN81]

    On appeal, the Fifth Circuit disagreed, rejecting the insurer's contention that, "as a 'term' and 'lawful condition'" of the P & I contract, the arbitral clause limits the injured claimants' right to a direct action. [FN82] Contrary to the insurer's assertion that the direct action plaintiffs must await the arbitration between the insurer and its assured because such plaintiffs "have no greater rights [against the insurer] than the insured," who must arbitrate coverage disputes as a condition precedent to any **\*215** action against the insurer, the Big Foot court concluded that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"Louisiana courts have not read the Direct Action Statute so narrowly." [FN83] Instead, Louisiana courts have "disregarded" "terms and conditions" of insurance contracts that effectively "defeat[] the purpose of the Direct Action Statute," including "no action" clauses. [FN84] Significantly, the Fifth Circuit determined that the contested arbitral clause, if enforced, would have the same impact as the "proscribed no action clauses" on a statutory direct action suit: both require injured claimants to "await the outcome of [a separate] proceeding before [they] can file an action against the insurer." [FN85] Therefore, the Big Foot court concluded that, like a "no action clause," an arbitral provision cannot be used to "defeat" a claimant's direct action and thus held that the insurer was not entitled to a stay as a matter of law. [FN86]

The Fifth Circuit also held that the strong federal pro-arbitration policy embodied in the FAA did not eclipse any contrary Louisiana policy underlying the direct action statute. [FN87] Notably, the court emphasized that it was "unaware of any federal policy that favors arbitration for parties [such as the direct action claimants before the court] who have not contractually bound themselves to arbitrate their disputes." [FN88] However, notwithstanding its conclusion that the insurer was not entitled to a mandatory stay of the direct action proceedings, the Fifth Circuit concluded that a discretionary stay "for a brief" period might be available, but only if the district court placed "reasonable limits on its duration." [FN89] Accordingly, the Fifth Circuit instructed the district court on remand that, absent a showing by the defendants that the arbitration would terminate "very shortly," the stay should be denied. [FN90]

More recently, in Zimmerman v. International Cos. & Consulting, Inc., [FN91] the Fifth Circuit again held that a marine P & I contractual provision requiring arbitration of coverage disputes between the insurer and the assured does not entitle the P & I club to a stay of Louisiana direct action suits brought against it by nonsignatory tort victims pending **\*216** the outcome of the arbitral proceedings. [FN92] Reaffirming its decision in Big Foot, the Fifth Circuit reiterated that a policy term that purportedly delays the direct action claimant's suit until after the assured and insurer have arbitrated their dispute is "annulled or superseded" by operation of the direct action statute. [FN93] Moreover, the Zimmerman court added that when the direct action statute "authorizes a direct suit against a tortfeasor's insurer, the statute is read into and becomes a part of the insurance policy by law," regardless of whether that policy "contains language prohibited by the statute." [FN94]

Consistent with Big Foot, the Zimmerman court also concluded that neither the FAA nor its federal pro-arbitration policy favors arbitration "for parties who have not contractually bound themselves to arbitrate their disputes." [FN95] Strikingly, the Fifth Circuit further rejected the insurer's contentions that the direct action plaintiffs may be deemed to have "consented to be bound" by the arbitral clause at issue "simply because [some] courts have said that such plaintiffs are to be treated as . . . third party beneficiaries of the insurance contract" with "standing to sue the insurer on th[at] contract." [FN96] Rather, the Fifth Circuit emphasized that the right conferred by the direct action statute is independent of any "analogy between the direct action plaintiff and a third party beneficiary" and thus authorizes the injured claimant to sue the tortfeasor's insurer directly on the insurance policy regardless of whether that policy contains "any provision . . . forbidding an immediate direct action." [FN97] This is so because the direct action statute does not require claimants to "abide by any policy provision that would contravene" the injured claimant's right to proceed directly against the insurer "as provided by the statute." [FN98]

C. Puerto Rico's Direct Action Statute: Trumping the Arbitral Clause

Based on reasoning strikingly similar to that of the Fifth Circuit in Zimmerman, more than two decades earlier in Ocean Eagle--Limitation Proceedings [FN99] the District Court of Puerto Rico concluded that an arbitral clause contained in a British marine P & I insurer's contract did not **\*217** entitle the insurer to a stay of Puerto Rico direct action suits pending the outcome of an arbitration in London between the insurer and its assured. [FN100] In Ocean Eagle, a tanker split in half and sank while entering San Juan Harbor, spilling its cargo of crude oil into the waters all along the Northern Coast of Puerto Rico. [FN101] Numerous direct action claims were filed against the vessel, her owners, and the vessel's P & I insurer for pollution cleanup costs, wreck removal, and loss of coastal tourist business. [FN102] The P & I insurers contended that its rules required arbitration as a condition precedent to any

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

action brought against it. [FN103] However, the district court declined to extend the arbitral clause to encompass the nonsignatory claimants, reasoning that "the injured third-party beneficiary . . . is not a party to the contract," as evinced by the "limiting language of the arbitration clause which applies to a dispute between a 'member' and the 'association.'" [FN104] Significantly, the Ocean Eagle court also concluded that the third parties' right to a direct action conferred by Puerto Rico's statute is a right that is "totally independent of the contractual terms binding the insured and [the] insurer," which "the insurer could not abrogate by private agreement." [FN105]

IV. A Hypothetical and Analysis

   Suppose that a seaman who was injured aboard a vessel within the territorial waters of the C.N.M.I. were to file a Jones Act claim against the vessel owner's P & I insurer pursuant to the C.N.M.I.'s direct action statute. Although the P & I club's rules require arbitration to be conducted under English law as a condition precedent to any action against the insurer, the C.N.M.I. legislation, like that of Louisiana and Guam, confers a right of direct action within the terms and limits of the policy "whether or not [the] policy contains a provision forbidding such direct action." [FN106] How should a federal district judge sitting in the C.N.M.I. proceed?

   This Part of the Article contends that a federal court asked to address the enforceability of a P & I insurer's arbitral clause against a nonsignatory C.N.M.I. direct action claimant should forego the approach **\*218** taken by the District Court of Guam in favor of extending that taken by the United States Court of Appeals for the Fifth Circuit and the District Court of Puerto Rico in interpreting the direct action statutes of their respective jurisdictions. Specifically, this Part contends that the mere inclusion of an arbitral clause in a P & I contract does not suffice to defeat a third party's statutorily conferred right to an immediate direct action against the insurer when the relevant statute expressly voids "any provision forbidding a direct action." [FN107] As will be demonstrated below, the District Court of Guam's reliance upon Aasma to articulate a uniform rule mandating the enforcement of "terms and conditions" of a P & I contract [FN108] was misplaced and contrary to English and federal maritime law, the FAA, and the express provisions of that jurisdiction's direct action statute. Moreover, though unaddressed in the cases discussed above, the direct action claimant may also rely upon the McCarran-Ferguson Act [FN109] to preserve the state direct action statute from preemption by the FAA.

A. Aasma Does Not Support the Creation of a Uniform Rule Prohibiting State Statutory Direct Actions Against P & I Clubs

   To date, the United States Court of Appeals for the Sixth Circuit remains the sole federal appellate court to have determined that the "unique [] maritime . . . nature" of disputes between seamen and P & I clubs necessitated the creation of a uniform federal rule prohibiting a judicially created right of direct action against P & I clubs. [FN110] The District Court of Guam's reliance upon Aasma to fashion a rule prohibiting state statutory direct actions against P & I insurers was misplaced for several reasons. First, the Aasma court's rule was not only expressly limited to the facts of that case, which involved a class of seamen's latent onset asbestosis claims brought against the P & I insurers five years after the close of bankruptcy of the assured, but also applied only to the pay to be paid provision of one of the P & I contracts at issue. [FN111] Aasma did not involve a direct action statute; rather, the claimants in that case sought a declaratory judgment permitting them to "stand in [the] shoes" of the assured to proceed against the insurers directly. [FN112] Second, Aasma never **\*219** affirmatively held that an insurer may impose arbitration on nonsignatory direct action claimants who would otherwise have a right to litigate--whether judicially created or granted by statute. [FN113] Instead, the Aasma court merely dismissed the claimant's action against the insurer without prejudice for a determination by the arbitrators regarding whether the arbitral clause obliged the P & I club to arbitrate the plaintiff's claims when the claimants had no other recourse against the insurer. [FN114] In so ruling, the Aasma court had merely opined in dicta that courts must honor arbitral provisions "'as a condition precedent to recovery'"--but only "'when a plaintiff bases its right to sue on the contract itself, not upon a statute or some other basis outside the contract.'" [FN115] Consistent with this view, the Fifth Circuit and the District Court of Puerto Rico concluded that the right conferred by a direct action statute is independent of any "analogy between the direct action plaintiff and a third party beneficiary," and thus cannot be abrogated by a private agreement to which the

plaintiff is not a party. [FN116]

Third, in concluding that Aasma "laid the foundation for the formation of a uniform [maritime] rule," [FN117] the District Court of Guam not only inherited the Sixth Circuit's problematic justification for its departure from Wilburn Boat, but also erred by focusing its inquiry on the identity of the parties rather than the nature of the direct action statute itself. [FN118] More recently, in Kiernan v. Zurich Cos., [FN119] the United States Court of Appeals for the Ninth Circuit rejected the approach taken in Aasma. [FN120] In declining "to fashion such a rule" that would prohibit third parties from bringing direct actions against indemnity insurers, the Ninth Circuit stated:

> **\*220** While the [direct action statute] confers upon an injured party a substantive right which becomes vested at the moment of the injury, it is not a right essentially maritime in character, nor one peculiar to admiralty or maritime jurisdiction, but is one which applies alike to all contracts of public liability insurance, regardless of whether the injury occurs ashore or afloat. There is nothing in it which undertakes to change the substantive admiralty law . . . in the enforcement of obligations of indemnity voluntarily and lawfully assumed by the insurer. Thus the statute does not conflict with any feature of substantive admiralty law, nor with any remedy peculiar to admiralty jurisdiction. [FN121]

Even assuming that the nature of the entities involved in the suit should be the focus of the inquiry, Aasma does not support a departure from the Supreme Court and lower federal courts' "admonitions against judicial creation of federal maritime law to govern marine insurance policies." [FN122] In contrast to Aasma, in which an entire class of seamen sued for exposure to asbestos while engaged in international transport on the high seas, [FN123] a case involving a C.N.M.I. direct action suit brought by a sole seaman injured aboard a vessel within territorial waters does not affect "shipping in its national and international aspects" sufficiently to warrant the creation of a uniform federal rule. [FN124]

B. England's Third Parties (Rights Against Insurers) Act of 1930 Does Not Confer an Immediate Right of Direct Action

In contrast to the immediate right of action against insurers conferred by the state direct action statute that vests at the moment of injury, England's Third Parties (Rights Against Insurers) Act of 1930 [FN125] (Act) confers only a very limited right of direct action. [FN126] Under the Act, the third parties' right of action does not vest until after two conditions precedent have been satisfied: there must be a winding up of the assured or appointment of a receiver, and a judgment must have been rendered **\*221** against the assured that establishes and quantifies his liability. [FN127] Thus, in the absence of these two events, no transfer of rights occurs under the Act from the assured to the third-party claimant and the claimant will have neither standing to proceed directly against the insurer, nor will he be bound by the contract's terms. [FN128]

The Heikkila and TCW courts failed to recognize this critical distinction between Guam's direct action statute and the Act in concluding that English law mandated the enforcement of the arbitral clause. Unlike the judgment creditors in Aasma and the plaintiffs in the English cases The Fanti and The Padre Island, which the Sixth Circuit relied upon in reaching its decision, [FN129] neither Heikkila nor the plaintiff in TCW had obtained a judgment against the insured. Because both conditions precedent required by the Act had not been met, the insured's contractual rights against the insurer did not "transfer and vest in the third party to whom the liability was . . . incurred." [FN130] By contrast, in The Fanti and The Padre Island, because both conditions precedent were met and such transfer of rights did occur, the courts determined that the P & I contracts' arbitral provisions "regulate[] the means by which the transferred right is enforced" and thus treated them "as transferred with the right," binding the third party who sought to enforce that right. [FN131]

A C.N.M.I. direct action claimant would have neither the right nor the obligation to arbitrate pursuant to the terms and conditions of a marine P & I contract in the absence of a prior judgment against the insured and the event of the insured's insolvency as required under the Act. Where, as here, the arbitral clause and the English choice of law clause would "operate[] in tandem as a prospective waiver of [the third-party claimant's] right to pursue

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

statutory remedies" and effectively deprive him of a day in court, the Supreme Court has repeatedly ***222** recognized that such clauses are unreasonable and should be held unenforceable as "against public policy." [FN132]

C. The McCarran-Ferguson Act Preserves State Direct Action Statutes from FAA Preemption

    The FAA poses two significant obstacles to a state statutory right to a direct action. First, some courts have relied upon its federal pro-arbitration policy to compel arbitration of nonsignatories in certain limited instances under doctrines including assignment, estoppel, and third-party beneficiary; [FN133] and, second, the FAA generally preempts state laws that are hostile to arbitration. [FN134] The former is beyond the scope of this Article and alone merits lengthy commentary. However, direct action claimants may rely upon the McCarran-Ferguson Act to preserve the state statute from FAA preemption [FN135] and, in so doing, will avoid both obstacles by rendering the FAA inapplicable to a determination of the arbitral clause's enforceability.

    Under the McCarran-Ferguson Act, "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any [state] law . . . regulating the business of insurance." [FN136] Accordingly, the McCarran-Ferguson Act reverses federal preemption of conflicting state insurance laws only if (1) the federal statute does not specifically relate to the "business of insurance," [FN137] (2) the state law was enacted "for the purpose **\*223** of regulating the business of insurance," [FN138] and (3) the federal statute operates to "invalidate, impair, or supersede" the state law. [FN139]

    Because the FAA contains no provision that specifically relates to the business of insurance, only the last two factors are relevant to judicial inquiry into the enforceability of an arbitral clause that pertains to an insurance matter. [FN140] The Supreme Court has broadly categorized laws enacted "'for the purpose of regulating the business of insurance''' as those laws "that possess the 'end, intention, or aim' of adjusting, managing, or controlling the business of insurance." [FN141] In particular, statutes designed to protect "[t]he relationship between [the] insurer and insured" constitute regulation of the business of insurance, and thus trigger the reverse preemptive effect of the McCarran-Ferguson Act. [FN142]

    To determine whether a regulatory scheme involves the insurer-insured relationship, courts must consider three factors, including: "first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." [FN143]

    It is important to note that no single factor is dispositive in the determination. Applying these principles, both the United States Courts of Appeals for the Eighth and the Tenth Circuits have held that state statutes that invalidate arbitral clauses contained in insurance contracts reverse preempt the FAA by operation of the McCarran-Ferguson Act, rendering the contested arbitral clauses in those cases unenforceable. [FN144] In Standard Security Life Insurance Co. v. West, the Eighth Circuit reasoned that by invalidating arbitral clauses, the state statute transferred or spread risk "by introducing the possibility of jury verdicts." [FN145] Second, the Eighth Circuit noted that the state statute regulated an integral part of the insurer-insured relationship by invalidating an otherwise mandatory policy term requiring arbitration of all coverage disputes. [FN146] Third, the **\*224** Eighth Circuit concluded that the state statute, by singling out the insurance industry "for an across-the-board invalidation of arbitra[l] clauses," was limited in application to insurance companies. [FN147] Because the litigants agreed that the FAA would otherwise invalidate the state statute, the Eighth Circuit concluded that the statute was saved from FAA preemption. [FN148] Similarly, in Mutual Reinsurance Bureau v. Great Plains Mutual Insurance Co., the Tenth Circuit concluded that a state statute that voids an arbitral clause transfers risk by limiting the enforceability of an agreement to spread risk (the insurance contract). [FN149] In invalidating a compulsory term of the insurance contract, the state statute "touche[d] the core of the 'business of insurance.'" [FN150]

    Notably, public policy objectives compelled the Fifth Circuit's conclusion in Munich American Reinsurance Co.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

v. Crawford, in which an Oklahoma statute that vested its courts with "exclusive original jurisdiction" over all delinquency proceedings involving insolvent Oklahoma insurance companies reverse preempted the FAA by operation of the McCarran-Ferguson Act. [FN151] Emphasizing that the state statutory scheme was expressly intended to protect both individual policyholders and the public generally, the Fifth Circuit explained:

> Congress has evinced a strong federal policy in favor of deferring to state regulation of insolvent insurance companies as reflected in the McCarran-Ferguson Act and the express exclusion of insurance companies from the federal Bankruptcy Code. . . . These laws symbolize the public interest in having the States continue to serve their traditional role as the preeminent regulators of insurance in our federal system and indicates the special status of insurance in the realm of state sovereignty. [FN152]

The application of the Convention on Recognition and Enforcement of Foreign Arbitral Awards to international insurance contracts, including P & I contracts, [FN153] should not change the above analysis. [FN154] Although authority is sparse, the sole federal appellate court to squarely address whether a state law reverse preempts the Convention by operation of the **\*225** McCarran-Ferguson Act held in the affirmative, explaining that the treaty is "not self-executing," and thus, relies upon a congressional Act for its implementation. [FN155] The McCarran-Ferguson Act, in turn, prevents the treaty's implementing legislation from preempting state laws regulating the business of insurance. [FN156]

State direct action statutes such as that of the C.N.M.I. satisfy the requisite elements to reverse preempt the FAA. First, by guaranteeing the tort claimant a local (state court) venue to adjudicate the merits of his claim, the direct action statutes transfer or spread risk by introducing the possibility of a jury verdict otherwise unavailable in an arbitral forum. Second, the statutes affect the insured-insurer relationship by conferring a right to a judicial forum and thus invalidate an otherwise mandatory policy term requiring arbitration of all coverage disputes. Moreover, by requiring the insurer to answer for the assured tortfeasor's liability, the direct action statutes provide a method for recovering the intended benefit of the contract--the "payment of claims made against policies" is the "primary purpose of the insurance company itself." [FN157] Third, the direct action statute of the C.N.M.I. is part of that jurisdiction's insurance code and, by creating a right of action against insurers, applies only to entities within the insurance industry. Finally, the FAA would have the affect of superseding the state statute by demanding the enforcement of a contract provision that deprives the claimant of a statutorily conferred right to litigate in state court. Accordingly, the C.N.M.I. statute should be held to reverse preempt the FAA under the McCarran-Ferguson Act.

V. Conclusion

In declining to articulate a uniform federal rule governing marine insurance contracts in Wilburn Boat, the Supreme Court recognized that the McCarran-Ferguson Act embodies a broad declaration of congressional policy that the "continued [state] regulation . . . of the business of insurance is in the public interest." [FN158] The Fifth Circuit and the District of Puerto Rico remind us that such judicial and legislative deference to state governance is a first principle of marine insurance law that cannot be compromised by private agreement. Accordingly, courts asked to assess the enforceability of arbitral clauses contained in P & I **\*226** contracts against nonsignatory direct action claimants should follow the Supreme Court's approach in analogous contexts to conclude that state direct action statutes, by supplementing existing federal and state judicially created remedies available to maritime tort claimants, should not be defeated by the countervailing policy objective of promoting uniformity in admiralty law, [FN159] or that of promoting the enforcement of arbitral agreements.

[FNa1]. Associate, The O'Neil Group, LLC, New Orleans. J.D. 2002, Tulane Law School; A.B. 1993, Brown University. The author would like to thank Mr. Andrew S. de Klerk and Mr. William E. O'Neil for their inspiration and encouragement. Ms. Holstein-Childress's article won the 2002 Bell, Ryniker, Letourneau, and Nork Admiralty Writing Competition.

[FN1]. Am. Dredging v. Miller, 510 U.S. 443, 452, 1994 AMC 913, 920 (1994).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN2]. Kiernan v. Zurich Cos., 150 F.3d 1120, 1122, 1998 AMC 2533, 2534 (9th Cir. 1998); accord Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 314, 1995 AMC 467, 471 (1955); Acadia Ins. Co. v. McNeil, 116 F.3d 599, 603, 1997 AMC 2409, 2415 (1st Cir. 1997).

[FN3]. See Wilburn Boat, 348 U.S. at 321, 1955 AMC at 476; McCarran-Ferguson Act, 15 U.S.C. §§1011-1015 (2000).

[FN4]. E.g., Wilburn Boat, 348 U.S. at 321, 1955 AMC at 476;Kiernan, 150 F.3d at 1122, 1998 AMC at 2534;Albany Ins. Co. v. Anh Thi Kieu, 927 F.2d 882, 886, 1991 AMC 2211, 2214 (5th Cir. 1991).

[FN5]. Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1362, 1996 AMC 707, 715 (11th Cir. 1995) (citation omitted); accord Kiernan, 150 F.3d at 1122, 1998 AMC at 2534;Aasma v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, 95 F.3d 400, 403-04, 1997 AMC 1, 5 (6th Cir. 1996).

[FN6]. See Wilburn Boat, 348 U.S. at 321, 1995 AMC at 476; Cont'l Cas. Co. v. Anderson Excavating & Wrecking Co., 189 F.3d 512, 520, 1999 AMC 2714, 2722 (7th Cir. 1999); infra Parts III, IV.A.

[FN7]. 9 U.S.C. §§1-16 (2001).

[FN8]. In re Talbott Big Foot Inc., 887 F.2d 611, 613, 1990 AMC 1780, 1784 (5th Cir. 1989); see Heikkila v. Sphere Drake Ins. Underwriting Mgmt., No. CIV.A.96-00047, 1997 WL 995625, at *6, 1997 AMC 2975, 2987 (D. Guam Aug. 29, 1997).

[FN9]. 4 N. Mar. I. Code §4502(e) (1997).

[FN10]. 22 Guam Code Ann. §18305 (1998).

[FN11]. La. Rev. Stat. Ann. §22:655(B)(2) (West 1995).

[FN12]. 26 P.R. Laws Ann. §2003 (1994).

[FN13]. See Third Parties (Rights Against Insurers) Act, 1930, 20 & 21 Geo. 5, C.1 (Eng.); Firma-C Trade S.A. v. Newcastle Prot. & Indem. Ass'n (The Fanti) and Socony Mobil Oil Co. v. W. of Eng. Shipowner's Mut. Ins. Ass'n (The Padre Island), [1990] 2 All E.R. 705.

[FN14]. Cf. Cheshire Place Assocs. v. W. of Eng. Shipowners' Mut. Ins. Ass'n, 815 F. Supp. 593, 597, 1993 AMC 2701 (E.D.N.Y. 1993) (AMC reporter summarizing case). The court held that when a plaintiff "bases its right to sue on the contract itself, not upon a statute or some other basis outside the contract, the provision requiring arbitration as a condition precedent to recovery must be observed. This is true whether a plaintiff acquired rights under the contract as agent, third-party beneficiary, or assignee." Id. (internal citations omitted); Wells Fargo Bank Int'l Corp. v. London S.S. Owners' Mut. Ins. Ass'n, 408 F. Supp. 626, 629, 1976 AMC 592, 595 (S.D.N.Y. 1976) (stating that "assignees and subrogated insurers have been held to arbitration agreements they never signed").

[FN15]. 15 U.S.C. §§1011-1015 (2000).

[FN16]. See, e.g., Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 216, 1996 AMC 305, 318 (1996) (holding that state wrongful death statutes could supplement federal maritime remedies available to nonseafarers); Am. Dredging Co. v. Miller, 510 U.S. 443, 447, 1994 AMC 913, 915-16 (1994) (holding that federal maritime law did not preempt

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 TLNMLJ 205 Page 12
27 Tul. Mar. L.J. 205
**(Cite as: 27 Tul. Mar. L.J. 205)**

a Louisiana statute that prohibited the forum non conveniens defense in Jones Act and maritime cases brought in Louisiana state courts); Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 321, 1995 AMC 467, 476 (1955) (holding that in the absence of federal legislation or conflicting rule judicially established by federal courts, the regulation of marine insurance is to be left with the states).

[FN17]. Nicolas R. Foster, Marine Insurance: Direct Action Statutes and Related Issues, 11 U.S.F. Mar. L.J. 261, 262 (1998) (quoting 8 John A. Appleman & Jean Appleman, Insurance Law and Practice §4861, at 568 (1981)).

[FN18]. See McAvey v. Lee, 260 F.3d 359, 369 (5th Cir. 2001) (construing Louisiana's direct action statute); De Leon Lopez v. Corporacion Insular de Seguros, 931 F.2d 116, 122 (1st Cir. 1991) (construing Puerto Rico's direct action statute); In re Litigation Involving Alleged Loss of Cargo from Tug Atl. Seahorse, 772 F. Supp. 707, 710, 1992 AMC 52, 55 (D.P.R. 1991) (citing Ruiz Rodriguez v. Litton Indus. Leasing Corp., 574 F.2d 44, 46, 1978 AMC 1004, 1005 (1st Cir. 1978)) (same); Ocean Eagle--Limitation Proceedings, 1974 AMC 1629, 1633 (D.P.R. 1974) (same).

[FN19]. Cushing v. Md. Cas. Co., 198 F.2d 536, 539, 1952 AMC 1803, 1807 (5th Cir. 1952), rev'd on other grounds sub nom. Md. Cas. Co. v. Cushing, 347 U.S. 409, 1954 AMC 837 (1954); accord Kiernan v. Zurich Cos., 150 F.3d 1120, 1122, 1998 AMC 2533, 2534-35 (9th Cir. 1998).

[FN20]. See Foster, supra note 17, at 267; H. Alston Johnson, The Louisiana Direct Action Statute, 43 La. L. Rev. 1455, 1457 (1983).

[FN21]. E.g., Grubbs v. Gulf Int'l Marine, Inc., 625 So. 2d 495, 498, 1994 AMC 244, 247-49 (La. 1993); Quinlan v. Liberty Bank & Trust Co., 575 So. 2d 336, 352 (La. 1990); Morales-Melendez v. S.S. Mut. Underwriting Ass'n (Bermuda) Ltd., 763 F. Supp. 1174, 1179, 1991 AMC 2475, 2480-81 (D.P.R. 1991); Gonzalez v. Caribbean Carriers, Ltd., 379 F. Supp. 634, 637 (D.P.R. 1974).

[FN22]. See Foster, supra note 17, at 262; Norman J. Ronneberg, Jr., An Introduction to the Protection and Indemnity Clubs and the Marine Insurance They Provide, 3 U.S.F. Mar. L.J. 1, 31 (1990).

[FN23]. Foster, supra note 17, at 266.

[FN24]. Id.

[FN25]. See id.; cf. Daniel J. Dougherty, The Impact of a Member's Insolvency or Bankruptcy on a Protection & Indemnity Club, 59 Tul. L. Rev. 1466, 1482-83 (1985) (discussing the same treatment of indemnity policies under English law (quoting 2 J. Arnould, Law of Marine Insurance and Average §1356 (16th ed. 1981))).

[FN26]. In re Talbott Big Foot, Inc., 887 F.2d 611, 613, 1990 AMC 1780, 1784 (5th Cir. 1989).

[FN27]. La. Rev. Stat. Ann. §22:655(B)(1)-(2) (West 1995); 4 N. Mar. I. Code §4502(e) (1997); 22 Guam Code Ann. §18305 (1998); see also Lee R. Russ, 7 Couch on Insurance §103:4, at 103-14 (3d ed. 1997).

[FN28]. Tokyo Marine & Fire Ins. Co. v. Perez & CIA de P.R., Inc., 142 F.3d 1, 10 (1st Cir. 1998) (citing Garcia v. N. Assurance Co., 92 P.R. Dec. 245, 250-53, 1965 WL 14310 (1965)).

[FN29]. 26 P.R. Laws Ann. §2003(1) (1994).

[FN30]. Id. §1119(1)(a).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN31]. Id. §1119(1)(b).

[FN32]. La. Rev. Stat. Ann. §22:655; 26 P.R. Laws Ann. §2003.

[FN33]. See La. Rev. Stat. Ann. §22:655; 26 P.R. Laws Ann. §1119(1)(a)-(b); 15 W. McKenzie & H. Alston Johnson, Insurance Law and Practice 56 n.21 (2d ed. 1986).

[FN34]. See, e.g., Ruiz v. Clancy, 162 So. 734, 735 (La. 1934) (construing Louisiana's Statute); Hidalgo v. Dupuy, 122 So. 2d 639, 644 (La. Ct. App. 1960) (same); Rambin v. S. Sales Co., 145 So. 46, 50 (La. Ct. App. 1932) (same); Fraticelli v. St. Paul Fire & Marine Ins. Co., 375 F.2d 186, 187 (1st Cir. 1967) (construing Puerto Rico's statute); Gonzalez v. Caribbean Carriers, Ltd., 379 F. Supp. 634, 637 (D.P.R. 1974) (same).

[FN35]. See La. Rev. Stat. Ann. §22:655(B)(1); 4 N. Mar. I. Code §4502(e) (1997); 22 Guam Code Ann. §18305 (1998); 26 P.R. Laws Ann. §2003(1); discussion infra Part III.

[FN36]. No. CIV.A.96-00047, 1997 WL 995625, at *1, 1997 AMC 2975, 2976 (D. Guam Aug. 29, 1997).

[FN37]. Id.

[FN38]. 22 Guam Code Ann. §18305.

[FN39]. 46 U.S.C. app. §688 (1994).

[FN40]. Id. §§761-767.

[FN41]. Heikkila, 1997 WL 995625 at *1, 1997 AMC at 2976.

[FN42]. Id. at *3 n.3, 1997 AMC at 2980 n.3 (noting that the insurance contract provided that it "shall be governed by, and construed in accordance with English law").

[FN43]. Id. at *4, 1997 AMC at 2981.

[FN44]. Id. at *2, 1997 AMC at 2978.

[FN45]. Id. at *3, 1997 AMC at 2979 (citing Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 673, 1997 AMC 1617, 1630 (9th Cir. 1997) (citing Restatement (Second) of Conflict of Laws §188, at 575 (1986))).

[FN46]. See id., 1997 AMC at 2980.

[FN47]. Id.

[FN48]. Id.

[FN49]. 95 F.3d 400, 1997 AMC 1 (6th Cir. 1996).

[FN50]. Heikkila, 1997 WL 995625, at *4, 1997 AMC at 2981 (quoting Aasma, 95 F.3d at 405, 1997 AMC at 8 (citing Firma-C Trade v. Newcastle Prot. & Indem. Ass'n (The Fanti) and Socony Mobil Oil Co. v. W. of Eng.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 TLNMLJ 205 Page 14
27 Tul. Mar. L.J. 205
**(Cite as: 27 Tul. Mar. L.J. 205)**

Shipowner's Mut. Ins. Ass'n (The Padre Island), [1990] 2 All E.R. 705)).

[FN51]. Id. at *3, 1997 AMC at 2980.

[FN52]. See id. at *4, 1997 AMC at 2981-83.

[FN53]. 9 U.S.C. §§201-208 (2000).

[FN54]. Id. §§1-16.

[FN55]. Heikkila, 1997 WL 995625, at *5, 1997 AMC at 2983 (quoting 22 Guam Code Ann. §18305 (1998)).

[FN56]. See id.

[FN57]. Id., 1997 AMC at 2984 (citing Zimmerman v. Int'l Cos. & Consulting, Inc., 107 F.3d 344, 346, 1997 AMC 1812, 1813 (5th Cir. 1997); In re Talbott Big Foot, 887 F.2d 611, 613, 1990 AMC 1780, 1783 (5th Cir. 1989)).

[FN58]. Heikkila, 1997 WL 995625, at *4 n.4, 1997 AMC at 2981-82 n.4.

[FN59]. Id. (citing La. Rev. Stat. Ann. §22:655 (West 1995)).

[FN60]. Id. at *4 n.4, 1997 AMC at 2981-82 n.4. See generally 2B Norman J. Singer, Sutherland Statutory Construction §52.02, at 198-220 (5th ed. 1992).

[FN61]. Heikkila, 1997 WL 995625, at *6-*7, 1997 AMC at 2985-86.

[FN62]. Id. at *6, 1997 AMC at 2985.

[FN63]. 348 U.S. 310, 1955 AMC 467 (1955).

[FN64]. Heikkila, 1997 WL 995625, at *7, 1997 AMC at 2986 (citing Aasma v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, 95 F.3d 400, 404, 1997 AMC 1, 5-6 (6th Cir. 1996)).

[FN65]. Id. (citing 9 U.S.C. §§201-208 (2000)).

[FN66]. Id.

[FN67]. Id. at *8, 1997 AMC at 2987.

[FN68]. Id.

[FN69]. 1998 AMC 750 (D. Guam 1997).

[FN70]. Id. at 755.

[FN71]. 46 U.S.C. §688 (1994).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN72]. 1998 AMC at 751 (citing 22 Guam Code Ann. §18305 (1998)).

[FN73]. See supra notes 36-68 and accompanying text.

[FN74]. TCW, 1998 AMC at 755.

[FN75]. Id.

[FN76]. In re Talbott Big Foot, Inc., 887 F.2d 611, 612, 1990 AMC 1780, 1781-82 (5th Cir. 1989); Zimmerman v. Int'l Cos. & Consulting, Inc., 107 F.3d 344, 346-47, 1997 AMC 1812, 1813-14 (5th Cir. 1997).

[FN77]. 887 F.2d at 612, 1990 AMC at 1781.

[FN78]. Id., 1990 AMC at 1781-82.

[FN79]. Id. (citing La. Rev. Stat. Ann. §22:655 (West 1995)).

[FN80]. Id., 1990 AMC at 1782.

[FN81]. Id.

[FN82]. Id. at 613, 1990 AMC at 1783.

[FN83]. Id.

[FN84]. Id. (citing authorities).

[FN85]. Id., 1990 AMC at 1784.

[FN86]. Id. at 613-14, 1990 AMC at 1784-85.

[FN87]. Id. at 614, 1990 AMC at 1785.

[FN88]. Id.

[FN89]. Id., 1990 AMC at 1785-86 (citing GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711, 716 (5th Cir. 1985); Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 545 (5th Cir. 1983)).

[FN90]. Id. at 615, 1990 AMC at 1786.

[FN91]. 107 F.3d 344, 1997 AMC 1812 (5th Cir. 1997).

[FN92]. Id. at 346, 1997 AMC at 1813 (citing La. Rev. Stat. Ann. §22:655 (West 1995)).

[FN93]. Id. (citing Big Foot, 887 F.2d at 613, 1990 AMC at 1783).

[FN94]. Id. (citing La. Rev. Stat. Ann. §22:655).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN95]. Id. (citing Big Foot, 887 F.2d at 614, 1990 AMC at 1784 (internal citations omitted)).

[FN96]. Id., 1997 AMC at 1814 (citing Fed. Deposit Ins. Corp. v. Duffy, 47 F.3d 146, 150 (5th Cir. 1995); Shockley v. Sallows, 615 F.2d 233, 238 (5th Cir. 1980)).

[FN97]. Id. (citing La. Rev. Stat. Ann. §22:655).

[FN98]. Id. (citing Big Foot, 887 F.2d at 613, 1990 AMC at 1783 (citing cases proscribing "no action" clauses) (internal citations omitted)).

[FN99]. 1974 AMC 1629 (D.P.R. 1974).

[FN100]. Id. at 1633.

[FN101]. Id. at 1631.

[FN102]. Id.

[FN103]. Id. at 1633.

[FN104]. Id.; accord Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n, 62 F.3d 1356, 1364-65, 1996 AMC 707, 719 (11th Cir. 1995).

[FN105]. 1974 AMC at 1633; accord Morewitz, 62 F.3d at 1364-65, 1996 AMC at 719.

[FN106]. 4 N. Mar. I. Code §4502(e) (1997); 22 Guam Code Ann. §18305 (1998); La. Rev. Stat. Ann. §22:655(B)(2) (West 1995).

[FN107]. 4 N. Mar. I. Code §4502(e); 22 Guam Code Ann. §18305; La. Rev. Stat. Ann. §22:655(B)(2); see also 7 Couch on Insurance, supra note 27, §103:4, at 103-14.

[FN108]. See supra notes 61-64 and accompanying text.

[FN109]. 15 U.S.C. §§1011-1015 (2000).

[FN110]. Aasma v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, 95 F.3d 400, 404, 1997 AMC 1, 5-6 (6th Cir. 1996).

[FN111]. Id. at 403-05, 1997 AMC at 3-8.

[FN112]. Id. at 405, 1997 AMC at 7.

[FN113]. See id. at 404, 1997 AMC at 6.

[FN114]. See id. at 404-05, 1997 AMC at 6.

[FN115]. Id. at 405, 1997 AMC at 7 (quoting Cheshire Place Assocs. v. W. of Eng. Ship Owners Mut. Ins. Ass'n,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 TLNMLJ 205                                                                                             Page 17
27 Tul. Mar. L.J. 205
**(Cite as: 27 Tul. Mar. L.J. 205)**

815 F. Supp. 593, 597, 1993 AMC 2701 (E.D.N.Y. 1993) (AMC reporter summarizing case) (internal citation omitted)).

[FN116]. Zimmerman v. Int'l Cos. & Consulting, Inc., 107 F.3d 344, 346, 1997 AMC 1812, 1814 (5th Cir. 1997) (citing La. Rev. Stat. Ann. §22:655 (West 1995)); Ocean Eagle--Limitation Proceedings, 1974 AMC 1629, 1633 (D.P.R. 1974); see Aasma, 95 F.3d at 405, 1997 AMC at 6.

[FN117]. Heikkila v. Sphere Drake Ins. Underwriting Mgmt., No. CIV.A.96-00047, 1997 WL 995625, at *6, 1997 AMC 2975, 2984 (D. Guam Aug. 29, 1997) (citing Aasma, 95 F.3d at 403-05, 1997 AMC at 3-6); accord TCW Special Credits v. F/V Chloe Z, 1998 AMC 750, 755 (D. Guam 1997).

[FN118]. Cf. Am. Dredging v. Miller, 510 U.S. 443, 452, 1994 AMC 913, 920 (1994) (examining whether the forum non conveniens defense prohibited by a state statute was uniquely maritime in nature).

[FN119]. 150 F.3d 1120, 1998 AMC 2533 (9th Cir. 1998).

[FN120]. Id. at 1122-23, 1998 AMC at 2535-36; accord United States v. Tug Marine Venture, No. CIV.A.96-1090, 1998 WL 1108933, at *4, 1999 AMC 741, 745 (D. Md. 1998).

[FN121]. Id. at 1122, 1998 AMC at 2535 (quoting Steelmet, Inc. v. Caribe Towing Corp., 779 F.2d 1485, 1491, 1986 AMC 1641, 1649 (11th Cir. 1986) (alterations in original) (quoting Cushing v. Md. Cas., 198 F.2d 536, 539, 1952 AMC 1803, 1807 (5th Cir. 1952), rev'd on other grounds sub nom. Md. Cas. Co. v. Cushing, 347 U.S. 409, 1954 AMC 837 (1954))).

[FN122]. Id. at 1123, 1998 AMC at 2536.

[FN123]. See Aasma v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n, 95 F.3d 400, 402, 1997 AMC 1, 2 (6th Cir. 1996).

[FN124]. Id. at 404, 1997 AMC at 5 (quoting Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 322, 1955 AMC 467, 478 (1955) (Frankfurter, J., concurring)).

[FN125]. 1930, 20 & 21 Geo. 5, c.1 (Eng.).

[FN126]. See Firma-C Trade v. Newcastle Prot. & Indem. Ass'n (The Fanti) and Socony Mobil Oil Co. v. W. of Eng. Shipowner's Mut. Ins. Ass'n (The Padre Island), [1990] 2 All E.R. 705; Post Office v. Norwich Union Fire Ins. Soc'y Ltd., [1967] 1 Lloyd's Rep. 216, 220 (Q.B.).

[FN127]. See Third Parties (Rights Against Insurers) Act, 1930, 20 & 21 Geo. 5, c. 1 (Eng.); Norwich Union, 1 Lloyd's Rep. at 220. See generally Clare Ambrose, When Can a Third Party Enforce an Arbitration Clause?, 2001 J. Bus. L. 415 (2001).

[FN128]. See Third Parties (Rights Against Insurers) Act, 1930, 20 & 21 Geo. 5, c.1 (Eng.); Ambrose, supra note 127, at 415-32.

[FN129]. Aasma, 95 F.3d at 405, 1997 AMC at 8 (citing The Fanti and The Padre Island, [1990] 2 All E.R. 705); accord Heikkila v. Sphere Drake Ins. Underwriting Mgmt., Ltd., No. CIV.A.96-00047, 1997 WL 995625, at *4, 1997 AMC 2975, 2981 (D. Guam Aug. 29, 1997).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN130]. See Third Parties (Rights Against Insurers) Act, 1930, 20 & 21 Geo. 5, c.1 (Eng.).

[FN131]. Ambrose, supra note 127, at 416 (citing The Fanti and The Padre Island, [1990] 2 All E.R. 705).

[FN132]. Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 540, 1995 AMC 1817, 1826 (1995) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985)).

[FN133]. See Thomson-CSF, S.A. v. Am. Arb. Ass'n, 64 F.3d 773, 776-80 (2d Cir. 1995). Compare Am. Bureau of Shipping v. Tencara Shipyard, 170 F.3d 349, 353, 1999 AMC 1858, 1862 (2d Cir. 1999) (holding that an arbitral clause in a classification agreement bound nonsignatory yacht-owners under an estoppel theory because they derived the direct benefits of reduced insurance rates and the ability to sail under the French flag from the agreement), with MAG Portfolio Consult, GMBH v. Merlin Biomed Group, 268 F.3d 58, 61 (2d Cir. 2001) (declining to compel a nonsignatory to arbitrate by estoppel where it derived merely an indirect benefit from the agreement by "exploit[ing] the contractual relation of [the] parties to an agreement [without] ... exploit[ing] ... the agreement itself" (emphasis added)), and E.I. DuPont de Nemours v. Rhone Poulenc Fiber & Resin Intermediates, 269 F.3d 187, 195 (3d Cir. 2001) (declining to bind a nonsignatory to an arbitral agreement under a third-party beneficiary theory where the benefit derived was only indirect).

[FN134]. E.g., Southland Corp. v. Keating, 465 U.S. 1, 16 (1984).

[FN135]. See 15 U.S.C. §1012(b) (2000).

[FN136]. Id.

[FN137]. Munich Am. Reinsurance Co. v. Crawford, 141 F.3d 585, 589 (5th Cir. 1998).

[FN138]. Id. at 590 (quoting United States Dep't of Treasury v. Fabe, 508 U.S. 491, 505 (1993)).

[FN139]. Id. (quoting the McCarran-Ferguson Act, 15 U.S.C. §§1011-1015 (2000)).

[FN140]. See id.

[FN141]. Fabe, 508 U.S. at 505 (quoting Black's Law Dictionary 1236, 1286 (6th ed. 1990)).

[FN142]. Id. at 501 (quoting SEC v. Nat'l Sec., Inc., 393 U.S. 453, 460 (1969)).

[FN143]. Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129 (1982).

[FN144]. Standard Sec. Life Ins. Co. v. West, 267 F.3d 821, 823 (8th Cir. 2001) (per curiam) (citing Mo. Rev. Stat. §435.350 (2000)); Mut. Reinsurance Bureau v. Great Plains Mut. Ins. Co., 969 F.2d 931, 932-33 (10th Cir. 1992) (citing Kan. Stat. Ann. §5-401 (1991)).

[FN145]. West, 267 F.3d at 824 (citing Fabe, 508 U.S. at 503-04;Mut. Reinsurance Bureau, 969 F.2d at 933).

[FN146]. Id. (citing Express Scripts, Inc. v. Wenzel, 262 F.3d 829, 837 (8th Cir. 2001)).

[FN147]. Id.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

27 TLNMLJ 205                                                                                                                                  Page 19
27 Tul. Mar. L.J. 205
**(Cite as: 27 Tul. Mar. L.J. 205)**

[FN148]. Id.

[FN149]. Mut. Reinsurance Bureau, 969 F.2d at 933.

[FN150]. Id. (quoting SEC v. Nat'l Sec., Inc., 393 U.S. 453, 460 (1969)).

[FN151]. 141 F.3d 585, 591 (5th Cir. 1998); accord Davister Corp. v. United Republic Ins., 152 F.3d 1277 (10th Cir. 1998).

[FN152]. Munich Am. Reinsurance Co., 141 F.3d at 595 (citations omitted).

[FN153]. E.g., DiMercurio v. Sphere Drake Ins., 202 F.3d 71, 74 (1st Cir. 2000) (citing 9 U.S.C. §§201-208 (2000)).

[FN154]. See generally Kathleen B. Carr, The Enforceability of Arbitration Clauses in Marine Insurance Contracts: The Conflict Between the McCarran-Ferguson Act and the Arbitration Convention, 18 Tul. Mar. L.J. 71, 79-87 (1993).

[FN155]. Stephens v. Am. Int'l Ins. Co., 66 F.3d 41, 45 (2d Cir. 1995) (citing Foster v. Neilson, 27 U.S. (2 Pet.) 253, 313-14 (1829)).

[FN156]. Id. (citing 15 U.S.C. §1012(b) (2000)).

[FN157]. Davister Corp. v. United Republic Ins., 152 F.3d 1277, 1280 (10th Cir. 1998) (quoting United States Dep't Treasury v. Fabe, 508 U.S. 491, 505-06 (1993)).

[FN158]. H.R. Rep. No. 79-143, at 3 (1945).

[FN159]. Cf. Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 216, 1996 AMC 305, 318 (1996); Am. Dredging v. Miller, 510 U.S. 443, 447, 1994 AMC 913, 915 (1994); Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 321, 1955 AMC 467, 476-77 (1955); supra note 16.

27 Tul. Mar. L.J. 205

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.