

FILED
DISTRICT COURT OF GUAM
DEC 10 1999
MARY L.M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM
## TERRITORY OF GUAM

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY AND SEATECH INTERNATIONAL INC., <br> Plaintiff, <br><br> vs. <br><br> INTERTUG S.A. AND BRITISH MARINE MUTUAL ASSOCIATION, *in personam*, <br> Defendant. | Civil Case No. 99-00019 <br><br><br><br> ORDER |

This case comes before the Court on defendant's Motion to Dismiss the case based on Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(3).

**FACTS:**

Plaintiff St. Paul Fire and Marine Insurance Company (St. Paul) is a Minnesota Corporation, with its principle place of business in St. Paul, Minnesota. St. Paul had in full force and effect a policy of insurance on the M/V Laura, which sank January 18, 1997. The sinking seems to have occurred outside the territorial waters of Guam. No party has disputed that fact as of this date.

Seatech International, Inc. is a British Virgin Islands corporation, with its principle place of business in the British Virgin Islands. Seatech owned the M/V/ Laura Z.

Defendant Intertug S.A. (Intertug) is a Columbian corporation, with its principle place of business in Columbia. Seatech owned the Tug Apolo.

On October 17, 1996 in Cartegena, Columbia, Seatech and Intertug entered into a contract, wherein Intertug, by use of the Tug Apolo, towed the M/V Laura from Guam to Manta, Ecuador. While being towed by the Apolo the M/V Laura sank on January 18, 1997.

Defendant BMM is a Mutual Insurance Association organized under the laws of England, with its principle place of business in London, England. On October 20, 1996, in London, England, BMM negotiated and contracted to provide Protection and Indemnity (P&I) insurance coverage to Intertug and, in particular, the Tug Apolo for the Apolo's voyage to Guam and tow of the M/V Laura from Guam to Guayaguil.

Seatech claims damages of $6,500,000 as a result of the sinking. St. Paul paid Seatech the amount claimed by Seatech. St. Paul as subrogee, seeks recovery of $6,500,000 against BMM as the insurer of Intertug, under the Guam direct action statute.

**LAW AND ANALYSIS:**

The defendant's argue that the plaintiff's action against BMM should be dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1). The defendant's claim the insurance contract at issue is a maritime contract subject to the Federal Arbitration Act (FAA), 9 U.S.C. sec. 2, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention), 21 U.S.T. 2517, T.I.A.S. #6997, 330 U.N.T.S. 38, 9 U.S.C. sec. 202. Under English, Guam or general federal maritime law, the plaintiffs stand in the shoes of the insured and are bound by the terms and conditions of the insurance contract.

The Court holds that BMM's motion to dismiss is, in fact, a motion to compel arbitration. As such the issues that it raises are the same as those summarized by the Second Circuit in deciding whether the Federal Arbitration Act would require the state of New York to arbitrate its claim for declaratory and injunctive relief against an Indian nation :

> "This case highlights the relationship between guiding principles of the law of arbitration. The first principle requires the full enforcement of arbitration clauses and resolves ambiguities regarding the arbitrability of claims in favor of arbitration. The second principle protects parties from being compelled to arbitrate claims they did not agree to arbitrate."

State of New York v. Oneida Indian Nation of New York, 90 F.3d 58, 59 (2d Cir. 1996). In that case, the court of appeals held that the state was not required to arbitrate an issue it had expressly excluded from the scope of the arbitration clause in its agreement with the Indian nation. Id. at 61. The decision recognizes the important limitation that the Federal Arbitration Act, 9 U.S.C. secs. 1-14 (1994), cannot be used to force a party to arbitrate when it has not agreed to do so.

The Plaintiff's maintain, and the Court agrees that in the field of arbitration law, few principles are more settled than the rule that a party cannot be compelled to arbitrate a dispute unless it has bound itself to do so. Western Employers Ins. Co. v. Jeffries & Co., 958 F.2d 258, 261 (9th Cir. 1992) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219, 105 S.Ct. 1238, 1241, 84 L.Ed. 2d 158 (1985). As an alternative to litigation, arbitration is fundamentally a matter of contract law. A party may be forced to arbitrate only if it has agreed to arbitrate. Decisions of the U.S. Supreme Court and virtually every federal circuit apply this rule. The Ninth Circuit refers to this as "the first principle of arbitration." Although the first principle of arbitration was set forth in cases involving federal labor law, it applies with equal force to non-labor cases pursuant to the Federal Arbitration Act." Three Valley's Municipal Water Dist. v. E.F. Hutton Co., 925 F.2d 1136, 1142 (9th Cir. 1991)(quoting AT&T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct.1415, 1418, 89 L.Ed. 2d (1986)).

Recently, the Ninth Circuit addressed the issue in Cariaga v. Local No. 1184 Laborers Int'l Union of North America, 154 F.3d 1072, 1074 (9th Cir. 1998). In Cariaga, the Court held that a union could not compel a subcontractor to arbitrate under the arbitration clause in the union's collective-bargaining agreement with the general contractor. The case turned on whether the general contractor's contract with the subcontractor incorporated by reference the arbitration clause in the general contractor's collective-bargaining agreement. Applying the basic principles of contract interpretation,[1] the Ninth Circuit determined that the subcontract did not effectively

---

[1] The Ninth Circuit holds that "the duty to arbitrate is a contractual obligation which is governed by general principles of contract interpretation." Zolezzi v. Dean Witter Reynolds, Inc., 789 F.2d 1447, 1449 (9th Cir. 1986).

- 3 -

incorporate the collective-bargaining agreement's arbitration clause.

Next, defendant argues that Guam's Direct Action Statute, 22 G.C.A. Sec. 18305, provides:

> On any policy of liability insurance the injured person or his heirs or representatives shall have a right of direct action against the insurer within the terms and limits of the policy, whether or not the policy of insurance sued upon was written or delivered in Guam, and whether or not such policy contains a clause forbidding such direct action, provided that the cause of action arose in Guam. Such action may be brought against the insurer alone, or against both the insured and insurer.

Defendants argue that by its express language Sec. 18305 requires that the action be brought "within the terms and limits of the policy." In the instant action the subject insurance contract requires arbitration in London, specifies English Law as applicable, places sole jurisdiction with the English courts and requires that the insured shall have paid the liability before BMM is liable to indemnify.

Finally, defendants argue that the "cause of action" did not occur on Guam. The M/V Laura sank outside the territorial waters of Guam.

The Court holds that the "first principle" of arbitration applies to direct actions. Authority for applying the Ninth Circuit's "first principle" of arbitration in this proceeding under the Guam direct-action statute may be found in cases from Louisiana, another direct action jurisdiction. See Zimmerman v. International Companies and Consulting, Inc., 107 F.3d 344 (5th Cir. 1997) and In re Talbott Big Foot, Inc., 887 F.2d 611 (5th Cir. 1989). In Talbott, the Fifth Circuit held that the FAA "does not require arbitration unless the parties to a dispute have agreed to refer it to arbitration." Zimmerman, 107 F.3d at 346. In Zimmerman and Talbott, the Fifth Circuit followed the same Supreme Court precedent as the Ninth Circuit did in Three Valleys, 925 F.2d at 1142. Therefore, it would appear that the Ninth Circuit would apply the "first principle" of arbitration in an appeal of a claim brought under the Guam direct-action statute.

This courts admiralty jurisdiction under Article III, Section 2 of the United States Constitution and 28 U.S.C. 1333 is sufficiently broad and provides the judicial power for this court to hear the case. Admiralty jurisdiction encompasses suits for any physical damage to ships

- 4 -

or cargo on navigable waters or for recovery of indemnity or premiums on Marine Insurance policies. Gilmore & Black, The Law of Admiralty, p.23, (2nd ed. 1975). Marine Insurance "...is as unquestionably an integral part of the admiralty and maritime jurisdiction as is any other subject matter." Insurance Company v. Dunham, 78 U.S. (11 Wall) 1 (1871).

As early as Justice Story's opinion in De Lovio v. Boit, 7 Fed. Cas. 418, No. 3776 (C.C.D. Mass. 1815), it was recognized that admiralty jurisdiction:

> "... comprehends all maritime contracts, torts and injuries. The latter branch is not necessarily bounded by locality; the former extends over all contracts (wheresoever they be made or executed, or whatsoever may be the form of the stipulations which relate to the navigation, business or commerce of the sea ..." Id. at 444.

Direct actions against an insurer created by state law are within the subject matter jurisdiction of this admiralty court, as are tort actions relating to the physical loss or damage of a vessel. See generally, Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955) (State statutory law provides the rule of decision as to maritime contract of insurance).

Accordingly, the Court holds that based on the Ninth Circuit case law on subject matter jurisdiction and the maritime jurisdiction provided to federal courts the 12(b)(1) Motion is DENIED.

Defendant's next argument is that plaintiff's action against BMM should be dismissed for lack of personal jurisdiction under F.R.C.P. 12(b)(2). BMM moves this Court for dismissal on the grounds that BMM lacks sufficient contacts with Guam for the exercise of personal jurisdiction. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154 (1945).

The Court holds that the minimum contacts test has been satisfied. A federal district court may maintain personal jurisdiction over a non-resident defendant through the use of the Guam Long-arm Statute, 7 Guam Code Annotated 14109, (allowing the exercise of personal jurisdiction on any basis not inconsistent with the constitution or Organic Statutes of Guam), if the defendant has minimum contacts with the forum, has purposefully availed itself of the laws of or protection

of the forum, and fundamental concepts of fair play and due process are not offended in requiring the defendant to defend an action in a particular forum. At this stage in the case, where there has not been any discovery as to jurisdictional facts, the Court holds that there is a *prima facie* case of personal jurisdiction based on the following minimum contacts :

    1. The defendant, Intertug, sought P&I insurance from BMM who provided that insurance for one specific voyage. BMM knew precisely what jurisdictions their Member's vessel would be in and approximately when. The fact that BMM provided P&I insurance, which it knew would be within the territorial limits of Guam, for at least a part of the policy term, evidences a minimum contact by BMM with Guam. Moreover, it is not unreasonable to expect BMM, whom the Court can presume was well aware of the Guam Direct Action Statute, to be subject to service in Guam for liabilities alleged to have arisen in Guam. Fukaya v. Velho, 416 F. Supp. 785 (D. Guam 1976).

    2. BMM is in the business of providing various types of marine insurance world wide to more than 1700 members in 93 countries in connection with more than 6500 Member entered vessels. The risks it insures and the scope of its membership require that BMM anticipate it may be subject to litigation in any jurisdiction where a direct action statute exists. Presence of a P&I Club's Members in a jurisdiction is sufficient for the exercise of personal jurisdiction over the P&I Club. McKeithen v. M/T FROSTA, 435 F. Supp. 572 (E.D. La. 1977). In this instance, M/V APOLO called in Guam from November 26 to December 9, 1996. Plaintiffs have had no opportunity to engage in discovery to determine if any of the other Member's 6500 vessels insured by BMM have likewise called in Guam.

    3. A surveyor from the American Bureau of Shipping, examined the M/V APOLO in Guam. Presumably, he reported to BMM the results of his findings, consistent with the BMM Rules. The employment or use of an agent to examine the M/V APOLO in Guam, in compliance with the Cover Note and BMM's General Rule 17 certainly constitutes a minimum contact with Guam.

    4. Intertug appointed a ship agent, Green Globe Shipping Agency, in Guam through which it presumably purchased fuel, stores and ordered parts.

1. Defendant's third argument is that plaintiffs' action against BMM should be dismissed for improper venue under F.R.C.P. 12(b)(3). The defendant asserts that the subject insurance contract between BMM and Intertug contains a forum selection clause requiring arbitration in London under English law and placing sole jurisdiction with English courts. Forum selection clauses are *prima facie* valid and should not be set aside unless the party challenging the clause can show that it is "unreasonable under the circumstances." Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 1913 (1972).

The Court holds that venue in Guam is proper because the general venue statute is not applicable to *in personam* admiralty actions, such as the one before this court, and venue is proper wherever personal jurisdiction may be obtained over a defendant.

> Admiralty proceedings are not considered "civil actions" within the scope of the general venue statute, 28 U.S.C. sec. 1391-1393 . . . In the absence of a pre-empting statute, venue of admiralty actions *in personam* is in any district where respondent is found and service of process is made on him. 1A (Part II) Moore's Federal Practice, Paragraph 0.344[13.-1], pp. 4271-4274(2d Ed. 1991).

In conclusion, since the purpose of the FAA is to achieve the enforcement of private contractual agreements to arbitrate disputes, BMM bears the burden - when invoking the FAA - of proving existence of a private contract between plaintiffs and BMM wherein plaintiffs contractually agreed to arbitrate their disputes with BMM. "The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked . . . '[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes - but only those disputes - that the parties have agreed to submit to arbitration.'" First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924, 131 L.Ed. 2d 985(1995).

BMM has produced no agreement of any kind between itself and plaintiffs. The agreement on which it relies for this motion is an agreement exclusively between BMM and Intertug. Just as the Ninth Circuit concluded in Lorber Industries of California v. Los Angeles Printworks Corp., 803 F.2d 523, 525, that Mark Fabrics had "demonstrated no basis" for compelling Lorber to arbitrate where the subject arbitration clause was in a contract between

1  Lorber and Timely Trends, BMM has demonstrated no basis for compelling plaintiffs to arbitrate
2  under the clause in an insuring agreement that does not mention plaintiffs and to which they are
3  not parties.
4      Accordingly, BMM's Motion to Dismiss is DENIED because it fails to meet BMM's
5  burden of proving the existence of an enforceable arbitration agreement to which plaintiffs bound
6  themselves.
7      Furthermore, the Court does have subject matter jurisdiction under Article III Sec. 2 of the
8  Constitution. (Admiralty Jurisdiction). Moreover, plaintiffs have shown that defendants have
9  enough contact with Guam to satisfy the minimum contacts test for personal jurisdiction under
10 International Shoe.
11     Finally, plaintiffs correctly point out that the general venue statute is not applicable in *in*
12 *personam* admiralty cases. Therefore, venue is proper wherever the defendant is found and
13 service of process is made on him.
14     The Motion is DENIED in all respects.
15
16 **IT IS SO ORDERED.**
17 Dated: December 10, 1999
18
19                               ALEX R. MUNSON
20                               District Judge
21
22 Notice is hereby given that this document was entered on the docket on 12/10/99.
23 No separate notice of entry on the docket will be issued by this Court.
24 Mary L. M. Moran
25 Clerk, District Court of Guam
26 By: [signature] San Nicolas 12/10/99
    Deputy Clerk    Date

- 8 -