# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **KENNETH JONES** | * | **CIVIL ACTION NO.: 06-9151** |
| **and** | * | |
| **LORI JAMES-JONES** | * | **SECTION    "F"** |
| **Plaintiffs** | * | |
| | * | **JUDGE MARTIN L.C.** |
| **versus** | * | **FELDMAN** |
| | * | |
| | * | |
| **STATE FARM FIRE & CASUALTY,** | * | |
| **INSURANCE, BOB NOWLIN and** | * | **MAGISTRATE JUDGE** |
| **ABC INSURANCE COMPANY** | * | **JOSEPH C. WILKINSON, JR.** |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## FIRST SUPPLEMENTAL AND AMENDED COMPLAINT

The First Supplemental and Amended Complaint of Kenneth Jones and Lori James-Jones, persons of the full age of majority domiciled in the Parish of Orleans, respectfully represent that this First Supplemental and Amended Complaint should replace in its entirety the original Complaint of plaintiffs:

The Complaint of Kenneth Jones and Lorie James-Jones, both persons of the age of majority and citizens of the Parish of Orleans, State of Louisiana, through undersigned counsel, on information and belief, with respect allege that:

1



EXHIBIT

Z

## JURISDICTION AND VENUE

1.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as the amount in controversy is within the jurisdictional limits of this Court, and complete diversity exists between the parties. Alternatively, there is federal question jurisdiction herein because certain of the defendants were contractors of the Federal Government as to some of the matters complained of herein.

2.

Venue is proper in this district pursuant to 28 U.S.C. § 1391, because the negligent and wrongful actions of the defendants occurred in the Eastern District of Louisiana, the plaintiffs resided in the Eastern District of Louisiana at the time of the complained of damages, the damages to plaintiffs occurred within the Eastern District of Louisiana and the applicable facts which form the basis of this lawsuit occurred in the Eastern District of Louisiana.

3.

This Court has supplemental jurisdiction over all claims that arise under state law and are not within this Court's original jurisdiction, as those claims are so related to the claims in the action within this Court's original jurisdiction that they form part of the same case or controversy.

## II. PARTIES

4.

Made defendants herein are:

a.    **STATE FARM FIRE AND CASUALTY COMPANY, INC.,** a foreign insurance

2

company authorized to do and/or doing business in the Parish of Orleans, State of Louisiana and subject to the jurisdiction of this Honorable Court, ("State Farm") which at all times pertinent herein was the homeowner's insurer of Kenneth Jones and Lorie James-Jones for the property located at the municipal address of 4715 Werner Drive, New Orleans, Louisiana 70126;

b.      **BOB NOWLIN,** a licensed insurance agent, which at all times pertinent hereto provided insurance advice and/or sold policies of insurance and/or provided other insurance services in the Parish of Orleans, State of Louisiana, and who sold homeowners' and flood insurance policies to the plaintiffs.[1]

c.      **ABC INSURANCE COMPANY,** a foreign and/or domestic insurance company authorized to do and/or doing business in the Parish of Orleans, State of Louisiana and subject to the jurisdiction of this Honorable Court, which at all times pertinent herein was the errors and omissions insurer of State Farm and Bob Nowlin.

d.      **THE BOARD OF COMMISSIONERS OF THE ORLEANS LEVEE DISTRICT (THE "LEVEE BOARD"),** is a political subdivision of the State of Louisiana, domiciled in the Parish of Orleans, State of Louisiana, which, was responsible for the development and maintenance of, and directly in charge of and responsible for the efficient operation and maintenance of all of the levee structures and facilities during flood periods and for continuous inspection and maintenance of the levees and flood walls during periods of low water.

e.      **THE UNITED STATES OF AMERICA,** a sovereign government that may be sued for civil liability in accordance with the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. and the Federal Civil Rights Act 28 U.S.C. § 1983. The U.S. Army Corps of Engineers is a division of the United States government under the direct jurisdiction of the Department of the Army.

f.      **PITTMAN CONSTRUCTION COMPANY OF LOUISIANA, INC.** ("Pittman") is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana.

g.      **PITTMAN CONSTRUCTION COMPANY, INC.** is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana.

---

[1]Bob Nowlin was dismissed as a defendant after the case was removed to this Court. In an abundance of caution, plaintiffs have listed Mr. Nowlin as a defendant but acknowledge that this Court has dismissed him from this case.

h.   **EUSTIS ENGINEERING CO., INC.** is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in Metairie, Louisiana.

I.   **MODJESKI AND MASTERS, INC.** is a corporation organized and existing under the laws of the State of Pennsylvania with its principal place of business in Mechanicsburg, Pennsylvania.

j.   **GULF GROUP, INC. OF FLORIDA** is a corporation organized and existing under the laws of the State of Florida, with its principal place of business in the State of Florida.

k.   **WASHINGTON GROUP INTERNATIONAL, INC.,** a non-Louisiana corporation, f/k/a Morrison Knudsen Corporation, f/k/a MK-Ferguson Company, f/k/a The H.K. Ferguson Company, authorized to do and doing business in the State of Louisiana, and in the Parish of Orleans, with its domicile in the State of Ohio, its principal place of business in the State of Idaho, and its Louisiana principal place of business in Baton Rouge, Louisiana.

l.   **VIRGINIA WRECKING COMPANY, INC.,** a non-Louisiana corporation authorized to do and doing business in the State of Louisiana, and in the Parish of Orleans, with its domicile in the State of Alabama, its principal place of business in the State of Alabama, and its Louisiana principal place of business in Jefferson, Louisiana.

m.   **BURK-KLEINPETER, INC.,** a Louisiana corporation with its domicile in the Parish of Orleans, and doing business within the Parish of Orleans, State of Louisiana;

n.   **BURK-KLEINPETER, LLC,** a Louisiana Limited Liability Company with its domicile in the Parish of Orleans, and doing business within the Parish of Orleans, State of Louisiana;

o.   **B&K CONSTRUCTION CO., INC.,** a Louisiana corporation, f/k/a B&K Construction Company, with its domicile in the Parish of St. Tammany, and doing business within the Parish of Orleans, State of Louisiana;

p.   **MILLER EXCAVATING SERVICES, INC.,** a Louisiana corporation with its domicile in the Parish of St. Charles, and doing business within the Parish of Orleans, State of Louisiana;

4

q.   **JAMES CONSTRUCTION GROUP, LLC,** a non-Louisiana limited liability company, f/k/a Infrate Construction, LLC, with its domicile in the State of Florida, its principal place of business in the State of Louisiana, and its Louisiana principal place of business in Baton Rouge, Louisiana;

r.   **BOH BROTHERS CONSTRUCTION CO., L.L.C.** is a corporation organized and existing under the laws of the State of Louisiana with its principal place of business in New Orleans, Louisiana (defendants I through u are referred to hereinafter as "the contractors");

s.   **THE STATE OF LOUISIANA, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT ("DOTD")** is a political subdivision of the State of Louisiana, domiciled in the Parish of East Baton Rouge, State of Louisiana, which has maintenance and surveillance obligations in respect to the levees at issue in this litigation.

### III. FACTUAL BACKGROUND

*Negligence and/or Breach of Contract of State Farm*

5.

On or about August 29, 2005, Hurricane Katrina, as predicted by weather forecasters, passed through the Parish of Orleans, and thereafter caused massive damage, including storm water, flood and wind damage to component parts and contents of plaintiffs' residence located at 4715 Werner Drive, New Orleans, Louisiana 70126, including but not limited to ancillary structures insured by the insuring agreement between plaintiffs and State Farm. The building, ancillary building and contents were a total loss entitling plaintiffs to the full insurable amount shown on their policy for building and structures.

6.

At all times relevant hereto, plaintiffs owned the insured residence and resided there until they were forced to evacuate by mandatory evacuation orders issued by the Governor of the State

of Louisiana and the Mayor of New Orleans.

7.

At all times material hereto, plaintiffs had a homeowners' insurance contract in effect with State Farm. The applicable insurance contract specifically provided coverage for the incident that occurred on and after August 29, 2005. Plaintiffs purchased from Defendants a homeowner's policy, issued to plaintiffs, naming Kenneth Jones and Lorie James-Jones as the insured. The subject policy insured the residence at 4715 Werner Drive, New Orleans, Louisiana 70126 for approximately $87,100 for dwelling, $65,000 for contents, $8,700 in dwelling extension/other structures, and the actual cost incurred for loss of use.

8.

Kenneth Jones and Lorie James-Jones sought advice from and purchased policies of insurance from Bob Nowlin, a licensed insurance agent authorized to do and doing business in the State of Louisiana and the Parish of Orleans. The plaintiffs relied on Mr. Nowlin's insurance expertise to provide them with complete and competent advice regarding the amount and type of insurance to provide them with full coverage.

9.

Plaintiffs' residence, as a result of the above sudden and accidental event was severely damaged and/or destroyed. The National Weather Service reported the landfall winds reached and/or exceeded 145 MPH at 6:00 a.m. on August 29, 2005. Katrina passed just to the east of the City of New Orleans, the winds were at and/or in excess of 135 MPH at 8:00 a.m. The eye of Katrina was 32 miles in diameter and Katrina's winds radiated 125-150 miles from the center. The

6

strength and magnitude of Katrina's violent winds leave little doubt to consider that the high velocity wind force was the "efficient proximate cause" of the damage to plaintiffs' building and ancillary structures and total destruction/loss of plaintiffs' building and ancillary structures.  As a result of this damage, subsequent storms and/or weather further aggravated and/or contributed to the property loss.

10.

Plaintiffs' residence sustained massive damage as a result of a sudden and accidental event that proceeded or occurred as a result of an otherwise covered peril as defined in their policy of insurance.

11.

Following the storm, plaintiffs notified State Farm of their loss and filed their claim.

12.

Subsequently, State Farm sent adjusters and/or other authorized representatives to evaluate plaintiff's loss.

13.

In turn, State Farm and/or its authorized agent advised the plaintiffs that the value of their loss was significantly less then the true value of the damages and/or the necessary repairs to the residence, other structures and its contents.

14.

At all times material hereto, plaintiffs have fully cooperated with State Farm and provided access to the residence, as well as claim documentation to the best of their ability.

*General Facts Regarding Levee Breach*

15.

After the Hurricane passed through the New Orleans area, levees and levee and flood waters protecting the City failed.   Upon information and belief, although the flood waters did not exceed the height of the flood waters at the 17th Street Canal, Industrial Canal and London Avenue Canal, the levees failed to hold back the water, and flood waters poured into the City, resulting in substantial property damage and loss of life.

16.

The levees at the 17th Street Canal, Industrial Canal and London Avenue Canal were constructed pursuant to the design specifications of the United States of America, Department of the Army, Corps of Engineers, as earthen levees and flood walls, built with steel sheet pilings driven into the ground.  The steel sheet pilings were topped with a concrete cap.

17.

Upon information and belief, before the levees and flood walls were constructed, soil borings were taken to assess the strength of the soil and its ability to withstand the force of flood waters pushing against it and still remain in place.

18.

Upon information and belief, before construction of the levees, studied were conducted to ensure that the levees would provide protection sufficient to withstand the effects of a category 3 hurricane.

*Facts Regarding 17th Street Canal*

19.

Upon information and belief, a soil stud was performed in 1981 by Defendant, Eustis Engineering, which took soil borings along the location of the 17th Street Canal Levee.

20.

The soil borings revealed alternating layers of soft clay and soft, black humus or peat, a soft, spongy soil compromised of decaying trees and other organic material, from fifteen to twenty-one feet below sea level.

21.

The layer of humus or peat substantially reduced the strength of the soil, particularity its strength in resisting lateral pressure and its ability to support the 17th Street Canal Levee when it was under pressure from flood water.

22.

Despite the presence of a later of soft, spongy material at a depth of fifteen (15) to twenty-one (21) feet below sea level, the flood walls of the 17th Street Canal Levee were constructed with steel sheet piling driven to a depth that was seventeen (17) feet below sea level. At such depths, the protective sheet pilings ended above or right in the middle of layers of weak soil.

23.

Additionally, the soil adjacent to the 17th Street Canal Levee subsided significantly after construction of the levee and flood wall, thereby significantly reducing the amount of support that the land behind the levee provided against the pressure of flood waters.

24.

Upon information and belief, the soil studies performed in connection with construction of the 17th Street Canal Levee were not conducted with a reasonable degree of care and diligence and failed to account for the possible weakening of the soil in connection with the effect of subsidence of land on the protected side of the levee, soft soils at the base of the levee, and the soil that was weakened as flood waters pushed through subterranean levels under the levee and flood wall. Alternatively, the soil studies failed to warn against the dangers that should, in the exercise of reasonable care, have been anticipated in connection when the pressure of flood water was applied to soil beneath the 17th Street Canal Levee.

25.

New Orleans design firm, Modjeski and Masters, was hired to design the 17th Street Canal Levee.

26.

Upon information and belief, Modjeski and Masters failed to exercise that degree of professional care and diligence that should reasonably have been expected of a firm designing a levee for the protection of human life and billions of dollars in property, and the design work performed by Modjeski and Masters for the 17th Street Canal Levee failed to account for the possible weakening of the soil in connection with the effect of subsidence of the land on the protected side of the levee, soft soils at the base of the levee, and the soil weakened as flood waters pushed through subterranean levels under the levee and flood wall.

27.

Upon information and belief, Pittman and James Construction, acting individually and through Gulf Group, constructed and otherwise conducted extensive work on the 17th Street Canal Levee, including construction of the levee, dredging, pile driving, demolition and other work.

28.

Upon information and belief, Pittman, James Construction and Gulf Group were negligent in the manner in which they constructed the 17th Street Canal Levee, in that they failed to exercise reasonable care in accounting for the damages associated with soil conditions in the area of the levee and ensuring that the construction was adequate to withstand the lateral pressure applied by flood waters such as those associated with storms such as Hurricane Katrina.

29.

Upon information and belief, soil data was necessary for planning and executing a construction job of this nature. Although its contract with the Corps of Engineers advised prospective bidders that physical data was available upon request, Pittman never asked for that data prior to bid, and was thus unable to have considered it in formulating its construction approach or bid. Pittman was negligent in proceeding with the work without such information.

30.

Upon information and belief, Defendant Boh Bros. installed sheet piling and later dredged the 17th Street Canal and thereby exposed layers of unstable peat and soft clays to increased pressures from flood waters, without conducting adequate investigation into the consequences of such dredging and in a manner that was otherwise negligent.

11

*Facts Regarding London Avenue Canal*

31.

Upon information and belief, Defendant Miller Excavating Services, Inc. constructed the Leon C. Simon Boulevard Bridge over the London Avenue Canal, and it is believed that the negligence in the construction of the bridge and the use of heavy vehicles and equipment in construction of the bridge caused or contributed the above mentioned breach in the levee and/or flood wall.

32.

Upon information and belief, Defendants Burk-Kleinpeter, Inc. and Burk-Kleinpeter, L.L.C. performed engineering work used in construction of the London Avenue Canal levee/flood wall. Plaintiffs aver that the levees and flood walls were negligently designed and that the faulty design caused and/or contributed to the above-described failure of the levee and flood wall.

33.

Upon information and belief, B&K Construction Company, Inc. was the contractor that constructed the London Avenue levee and flood wall, said construction including but not limited to, the construction and placement of the sheet pilings and the construction and placement of the concrete flood wall slab atop the sheet pilings and the concrete slab sections caused or contributed to the above-described failure of the levee and flood wall. It is further believed that the use of heavy vehicles and construction equipment in construction and placement sheet piling and of the concrete slabs damaged the levee and caused or contributed to the above-mentioned breach in the levee and flood wall.

12

34.

Upon information and belief, Defendant C.R. Pittman Construction Company, Inc. constructed the Gentilly Boulevard Bridge over the London Avenue Canal. It is believed that negligence in the construction of the bridge and the use of heavy vehicles and construction equipment in construction of the bridge caused to the above-mentioned failure of the levee and flood wall.

35.

Upon information and belief, Defendant Miller Excavating Services, Inc. contracted to construct the Leon C. Simon Boulevard bridge over the London Avenue Canal. It is believed that negligence in the construction of the bridge and the use of heavy vehicles and/or contributed the above-mentioned failure of the levee and flood wall.

36.

Upon information and belief, Defendant James Construction Group, L.L.C. contracted to flood-proof the Filmore Avenue bridge and the Mirabeau Bridge over the London Avenue Canal. Flood-proofing of the bridges required that the original bridges be demolished and replaced with new brides that have steep concrete sides which continue the flood wall from one side of the canal to the other. It is believed that negligence in the demolition of the old bridges and construction of the new bridge and the use of heavy vehicles and/or other heavy construction equipment in the demolition of the old bridges and construction of the new bridges caused and/or contributed the above-mentioned failure of the levee and/or flood wall.

*Facts Regarding Industrial Canal*

### 37.

On or about September 11, 2004 a New Orleans Public Belt Railroad train derailment caused a thirty-two and a half foot wide (32.5' wide) gap in Floodgate W-30 which is part of the flood wall system situated immediately west of, and running in a north-south direction parallel to, the Industrial Canal just north of the Interstate 10 high-rise.

### 38.

As a direct and proximate result of the Orleans Levee District's negligence, plaintiffs sustained damages that included but are not limited to, destruction and contamination of property, mental anguish, emotional distress, inconvenience, loss of use of property, loss of property value, loss of income, loss of profits, loss of business opportunity, and fear of future injury.

### 39.

Upon information and belief, Defendant Washington Group International, Inc. contracted to level and clear abandoned industrial sites along the Industrial Canal between the flood wall and the canal. It is believed that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal between the flood wall and the canal damages the levee and flood wall and caused or contributed the above mentioned failure of the levee and flood wall.

### 40.

Upon information and belief, Defendant Virginia Wrecking Company, Inc. contracted for the demolition, removal and disposal of the Galvez Street Wharf, a warehouse and an adjacent storeroom and for the removal of the debris by barge along the Industrial Canal. It is believed that

the use of heavy vehicles and/or flood wall and caused and/or contributed to the above-mentioned breach in the levee and/or in the flood wall.

41.

Upon information and belief, Defendant Boh Bros. Construction Co., L.L.C. contracted to install casings, test piles, and reaction piles along the Industrial Canal between December of 1999 and May of 2000. It is believed that the use of heavy vehicles and/or other heavy construction equipment along the Industrial Canal damaged the levee and/or flood wall and caused and/or contributed to the above-mentioned breach in the levee and/or flood wall.

## IV.  CAUSES OF ACTION

### FIRST CAUSE OF ACTION: VALUED POLICY LAW

42.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 41, as if delineated here in extenso.

43

Plaintiffs also allege that Hurricane Katrina destroyed plaintiffs' insured property, and that coverage extended by the terms in the  contract of insurance issued to plaintiffs by virtue of La. R. S. 22:695 and policy language contained within the State Farm contract of insurance, which entitles plaintiffs to the total face amount of the policy of insurance.

44.

Plaintiffs' home sustained loss or damage from hurricane related winds, which is a covered peril under the State Farm's  insurance policy, and the efficient proximate cause of their loss.

45.

As a result of Hurricane Katrina, and/or subsequent storms or weather, plaintiffs sustained substantial damage to their residence and its contents rendering it a total loss and/or constructive total loss.

46.

Prior to the placement of coverage, defendant, State Farm, placed a valuation upon the covered property and used such valuation for purposes of determining the premium charge to be made under the policy.

47.

Defendants, State Farm, did not use a different method in the computation of loss of the insured property.

48.

The homeowner's policy, which covers the peril of fire, and the application of it, if any, issued by defendants to plaintiffs did not set forth in type of equal size a different method of loss computation by the insurer.

49.

Plaintiffs are entitled to recover the stated value of the homeowner's policy, without deduction or offset, pursuant to La. Rev. Stat. 22:695.

**SECOND CAUSE OF ACTION: BREACH OF CONTRACT**

50.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through

49, as if delineated here <u>in extenso.</u>

51.

State Farm breached its contract of insurance with plaintiff by:

A.      Failing to promptly and reasonably adjust the claim;

B.      Failing to properly train and/or instruct its adjusters and/or agents;

C.      Failing to provide uniform and/or standard guidelines and/or materials to adjusters and/or agents to properly evaluate claims;

D.      Failing to take into account increases in the cost of labor, material and/or replacement cost and adjusting claims for these increased costs;

E.      Failing to timely provide sufficient funds for the repairs and replacement of the subject property;

F.      Failing to pay for sufficient living expenses incurred by plaintiff after they evacuated their insured residence in the time frame of the relevant insurance contract;

G.      Failing to promptly adjust and properly pay the policy limits for the plaintiffs' total loss of buildings;

H.      Failing to provide sufficient funds for the repair or replacement of the contents contained in the subject property, as per policy provisions; and

I.      Any other acts or omissions to be shown at trial on the merits.

**THIRD CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION**

52.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through

17

51, as if delineated here in extenso.

53.

State Farm further breached its contract with plaintiff and/or acted negligently by the following actions:

A.    Failing to respond to verbal requests and correspondence in a timely manner;

B.    Failing to properly and timely adjust this case consistent with insurance industry standards;

C.    Failing to provide any reasonable basis for denying payment on this claim now months following the incident;

D.    Failing to meet its duty owed to plaintiff to engage in good faith and fair dealings; and

E.    Any other actions or omissions that will establish bad faith, breach of contract and/or negligence which will be proven at the trial on the merits.

**FOURTH CAUSE OF ACTION: BAD FAITH**

54.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 53, as if delineated here in extenso.

55.

Pursuant to La. R. S. 22:1220; La. R.S. 22:658 and La. C.C. Art. 1997, State Farm further breached its duty of good faith and fair dealing, as well as its affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with plaintiffs by:

18

A.  Failing to issue a property insurance contract to plaintiffs that contained exclusionary language that is narrowly drafted;

B.  Failing to issue a property insurance contract to plaintiffs that contained exclusionary language that was defined within the agreement;

C.  Failing to issue a property insurance contract to plaintiffs that is not designed to be used to deny coverage for the cost of repairs and restoration of plaintiffs' property as a result of the damages arising from an occurrence or covered peril as defined in the policy;

D.  Failing to issue a policy of insurance that will provide for the repair of any covered damage resulting from a covered accident and direct physical loss which resulted from the high velocity hurricane winds that damaged plaintiffs' property and destroyed its contents;

E.  Failing to provide a property insurance contract that is unambiguous;

F.  Failing to pay plaintiffs sufficient additional living expenses;

G.  Failing to sufficiently pay plaintiffs for contents damages;

H.  Failing to pay a settlement within thirty (30) days after the agreement is reduced to writing;

I.  Failing to pay the full amount of any claim due the plaintiffs within sixty (60) days after receipt of satisfactory proof of loss;

J.  Failing to promptly adjust the claim within thirty (30) days of being notified by petitioners.

19

K.    Failing to reasonably and promptly adjust the amounts of the claim to reflect increases in the costs of repairs and/or replacement;

L.    The defendants failure and/or omissions constitute bad faith in that they were arbitrary and capricious, all of which entitles plaintiffs to recover attorney's fees, costs and penalties as allowed by law; and

M.    Any other acts or omissions to be shown at trial on the merits.

56.

Defendant's, State Farm, failures were willful and/or intentional and/or arbitrary and capricious so that the plaintiffs are entitled to an award of penalties, attorney's fees and costs.

## FIFTH CAUSE OF ACTION: DECLARATORY JUDGMENT

57.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 56, as if delineated here in extenso.

58.

Plaintiffs seek a declaratory judgment pursuant to the Louisiana Code of Civil Procedure Article 1871, et seq., for the purposes of determining a question of actual controversy between the parties concerning their rights, obligations, and coverages under the subject policy.

59.

Plaintiffs further seek a declaration that the Louisiana Valued Policy Law, La. R.S. 22:265, applies to the policy at issue herein.

20

60.

Plaintiffs seek a declaration that the homeowner's policy provides full insurance coverage for all damage to the insured residence, property, and loss of use caused by Hurricane Katrina and/or Hurricane Rita.

## SIXTH CAUSE OF ACTION: SPECIFIC PERFORMANCE

61.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 60, as if delineated here in extenso.

62.

State Farm entered into the subject contract of insurance with the plaintiffs wherein it clearly and expressly agreed to provide insurance coverage for physical loss to property, contents and loss of use proximately and efficiently caused by a hurricane.  Plaintiff in turn paid State Farm a substantial premium and plaintiffs agreed to a "hurricane deductible" in consideration for the agreed upon hurricane coverage.

63.

Plaintiffs have now suffered total destruction of their insured residence and property as a proximate and direct result of Hurricane Katrina and/or subsequent storms or weather and have consequently been denied use of their residence as well.

64.

Plaintiffs have performed their end of the bargain and are accordingly now entitled to specific performance of the homeowner's insurance contract.  The Court should therefore require

State Farm  to specifically perform such agreement.

## SEVENTH CAUSE OF ACTION: UNJUST ENRICHMENT

65.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 64, as if delineated here in extenso.

66.

Despite realizing substantial premium from plaintiffs, State Farm has withheld the insurance proceeds owed to plaintiffs for the hurricane damage to their insured property.

67.

In addition, by classifying Hurricane Katrina and/or subsequent storms or weather and the damage to plaintiffs' residence and property as "flood", State Farm has wrongfully realized insurance premiums and withheld insurance proceeds for which plaintiffs are entitled.

68.

State Farm has therefore been unjustly enriched at plaintiffs' expense.

## EIGHTH CAUSE OF ACTION:  NEGLIGENCE OF THE LEVEE BOARD, THE STATE OF LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, THE UNITED STATES OF AMERICA CORPS OF ENGINEERS, AND THE CONTRACTORS

69.

Plaintiffs reallege and reaver each and every allegation contained in Paragraphs 1 through 68, as if delineated here in extenso.

70.

The negligence of the Levee Board caused or contributed to the levee failures, in that the

22

levee board failed to fulfill its obligations to inspect, maintain, monitor, protect and repair the levees and flood walls along the 17th Street Canal, Industrial Canal and London Avenue Canal, all of which were within the jurisdiction and control of the Levee Board. The Contractors, who were hired to work on the canal projects and/or supervise the canal projects and/or maintain the canals and/or monitor and report on the condition of the canals, were also negligent in the execution of their duties.

_____71.

With respect to flood walls, Defendant Levee Board was specifically required to conduct periodic inspections and ensure the following:

A.     No seepage, saturated areas, or sand boils were occurring;

B.     No undue settlement had occurred which affects the stability of the wall or its water tightness;

C.     No trees existed, the roots of which might extend under the wall and offer accelerated seepage paths;

D.     The concrete had not undergone cracking, chipping, or breaking to an extent which might affect the stability of the wall or its water tightness;

E.     There were no encroachments upon the right-of-way which might endanger the structure or hinder its functioning in time of flood;

F.     No bank caving conditions existed riverward of the wall which might endanger its stability;

G.     Toe drainage systems and pressure relief wells were in good working condition, and

Case 2:06-cv-09151-MLCF-JCW   Document 35   Filed 09/05/2007   Page 24 of 31

that such facilities were not becoming clogged.

72.

The periodic inspections by Defendant Levee Board were specifically required to be made immediately prior to the beginning of the flood season, immediately following each major high water period, and otherwise at intervals not exceeding 90 days.

73.

In furtherance of the periodic inspections, Defendant Levee Board was required to undertake immediately measures to eliminate encroachments and effect repairs found necessary by such inspections, and all repairs were required to be accomplished by methods acceptable in standard engineering practice. Moreover, immediate steps were to be undertaken to correct any condition which endangered the stability of the wall.

74.

Defendant Levee Board was required to maintain continuous patrol of the wall during flood periods to locate possible leakage at monolith joints or seepage underneath the wall.

75.

The periodic inspections by Defendant Levee Board were specifically required to prohibit boats from lying against or tying up to the wall.

76.

With respect to levees, Defendant Levee Board was specifically required to provide at all times such maintenance as may be required to maintain serviceability of the structures in time of flood.

77.

With respect to levees, Defendant Levee Board also was specifically required to conduct periodic inspections and to be certain that:

A.  No unusual settlement, sloughing, or material loss of grade of levee cross section had taken place;

B.  No caving had occurred on either the land side or the river side of the levee which might affect the stability of the levee section;

C.  No seepage, saturated areas, or sand boils were occurring;

D.  Toe drainage systems and pressure relief wells were in good working condition, and that such facilities were not becoming clogged;

E.  Drains through the levees and gates on said drains were in good working condition;

F.  No revetment work or riprap had been displaced, washed out, or removed;

G.  No action was being taken, such as burning grass and weeds during inappropriate seasons, which were retarded or destroyed the growth of sod; and

H.  Encroachments were not being made on the levee right-of-way which might endanger the structure.

78.

Immediate steps were taken to control any condition which endangers the levee, and the Levee Board was specifically required to repair any damage.

79.

The Levee Board was required to take measures to promote the growth of sod on the levees, to exterminate burrowing animals, and to provide for routine mowing of the grass and weeds, removal of wild growth and drift deposits, and to repair all damage caused by erosion or other forces.

25

80.

During flood periods, the Levee Board was required to patrol the levee continuously to locate possible sand boils or unusual wetness of the landward slope and to be certain that:

A.     There were no indications of slides or sloughs developing;

B.     Wave wash or scouring action was not occurring;

C.     No low reaches of leave existed which may be overtopped;

D.     No other conditions existed which might endanger the structure.

81.

The Levee Board was also required to take appropriate advance measures to ensure the availability of adequate labor and materials to meet all contingencies.

82.

The Levee Board failed to fulfill almost every one of the foregoing obligations, and the other defendants failed to exercise reasonable care in inspecting the levees and flood walls and in warning about the hazards complained of herein.

83.

The State of Louisiana, Department of Transportation and Development has maintenance and surveillance obligations in respect of the levees at issue in this litigation, which obligations were negligently and intentionally breached by this Defendant through its misfeasance and malfeasance in respect of the discharge of those duties.  The breach of those duties was a proximate cause of the levee failures and resultant damages at issue in this litigation.

26

84.

Defendants' negligent conduct was a substantial cause of one of the worst disasters in United States history. Homes, cars, and other property inundated with flood waters and many were destroyed. The lives of many New Orleans residents were changed forever.

85.

Shortly after Hurricane Katrina passed through the New Orleans area, several hundred feet of the 17th Street Canal Levee breached just south of the point at which the Old Hammond Highway bridge crosses the 17th Street Canal. Breaches and flooding also occurred along stretches of the Industrial Canal and the London Avenue Canal. It is believed that the levee failures were the direct and proximate result of negligence in the design, construction, inspection, maintenance and monitoring of the levees and flood walls. Resulting flood waters inundated the City of New Orleans, overtaking capacity of pumps and rains and causing a large portion of the City to remain flooded for weeks.

86.

Upon information and belief, the Defendant Contractors and the political subdivisions meant to oversee their work knew or should have known that their conduct would necessarily cause severe and irreparable damage to the plaintiffs and their property.

87.

Congress authorized hurricane protection for the areas along Lake Pontchartrain, including Orleans and Jefferson Parishes, as part of the Flood Control Act of 1965. The project authorized and directed the Corps of Engineers to design and construct hurricane protection sufficient to protect

those parishes from flooding resulting from a fast-moving category 3 hurricane.  Upon information and belief, soil studies and reports from independent consultants, and analysis by engineers employed by the Corps of Engineers showed that sheet piles more than thirty feet deep were required to support the concrete flood walls and withstand pressure resulting from such flooding. However, the Corps of Engineers disregarded those studies and reports and approved and implemented designs for flood walls having the depth of only 17 feet, which was inadequate to protect the area from flooding associated with a fast-moving category 3 hurricane.

88.

The Corps informed plaintiffs and other residents of Orleans and Jefferson Parishes that the levees were sufficient to protect against such flooding, with reckless disregard for the truth and/or with the knowledge that, as constructed, the levees and flood walls were inadequate.  In doing so, the Corps deprived the plaintiffs of the protections authorized to which plaintiffs were entitled by law and wilfully disregarded an obvious threat of substantial harm to plaintiffs and their property. The Corps of Engineers thereby created a danger that plaintiffs would expose themselves and their property to harm, including the lack of adequate insurance.

89.

The United States of America, the State of Louisiana Department of Transportation and Development, the Levee Board, and the Contractors are liable for all damages sustained by plaintiffs as a result of the foregoing.

90.

The plaintiffs are entitled to and pray for trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs are entitled to full insurance coverage under the State Farm homeowner's policy of insurance for the damage to the insured residence and property caused by Hurricane Katrina and/or Hurricane Rita and other such, equitable relief set for in the petition, including, but not limited to:

A.   A Declaration and/or Judgment by this Court that the subject policy provides full insurance coverage for the damages caused by Hurricane Katrina and/or Hurricane Rita to plaintiffs' insured residence as well as loss of use and additional living expenses;

B.   A Declaration and/or Judgment by this Court that any damage to plaintiffs' insured residence and property caused by "storm surge" is not excluded under th subject policy;

C.   A Declaration and/or Judgment by this Court that the subject policy's "flood" exclusion is not applicable and ambiguous;

D.   A Declaration and/or Judgment by this Court that the State Farm policy is subject to the Louisiana Valued Policy Law, La. Rev. Stat. 22:695; that plaintiffs' residence is a total loss; and that the covered structure sustained a covered loss or damage;

E.   Specific Performance of the subject State Farm policy;

F.   Attorney's fees and court costs against defendants, State Farm Fire and Casualty Insurance Company and ABC Insurance Company, in accordance with La. Rev. Stat. 22:657 and 22:658;

G.   Damages and penalties against defendants, State Farm Fire and Casualty Insurance Company and ABC Insurance, in accordance with La. Rev. Stat. 22:1220, including damages for bad faith and arbitrary and capricious actions included hereinabove;

H.   Damages and penalties against defendants, Levee Board, the State of Louisiana Department of Transportation and Development, the United States of America, Corps of Engineers, and the contractors for water damage to plaintiffs' home resulting from levee breaches;

I.   Court costs, expenses, and judicial interest; and

J.   Any and all other equitable relief deemed appropriate by this Court.

**WHEREFORE,** petitioners pray that defendants be duly served and cited to appear and answer this Complaint, all as provided by law; and that after all legal delays and due proceedings be had, there be judgment rendered against defendants and in favor of the plaintiffs jointly, severally and *in solido,* for reasonable damages, with legal interest from the date of judicial demand until paid, all costs of these proceedings, including attorneys' fees, legal costs and related litigation expenses, along with such other relief as law, equity and the nature of this case shall require.

BY:     /s/ David A. Binegar
Paul C. Miniclier, (Bar # 17062)
David A. Binegar (Bar # 26603)
Law Office of Paul C. Miniclier
1305 Dublin Street
New Orleans, Louisiana 70118
Telephone:   (504) 864-1276
Attorneys for Plaintiffs, Kenneth and Lori James-Jones

## CERTIFICATE OF SERVICE

The undersigned certifies that an electronic copy of the foregoing was served on all parties electronically through the electronic filing system of the United States District Court for the Eastern District of Louisiana this 21st day of August, 2007.

/s/David A. Binegar

50158/001/pldgs/first supp and amended complaint