# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*   05-5531 | * | |
| *Mumford v. Ingram*   05-5724 | * | |
| *Lagarde v. Lafarge*   06-5342 | * | JUDGE |
| *Perry v. Ingram*   06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*   06-7516 | * | |
| *Parfait Family v. USA*   07-3500 | * | MAGISTRATE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

## LAFARGE NORTH AMERICA INC.'S OPPOSITION TO PLAINTIFFS' APPEAL FROM THE MAY 14, 2008 ORDER OF THE MAGISTRATE JUDGE

Lafarge North America Inc. ("LNA") hereby opposes plaintiffs' appeal [Doc. 13347] of

Magistrate Judge Wilkinson's well-considered May 14, 2008 Order [Doc. 13149]. The Order

rejected what the Magistrate Judge termed plaintiffs' demand for a "draconian" order precluding

LNA's use of certain highly relevant evidence – namely, recorded telephone interviews with

potential fact witnesses conducted by LNA's investigators. In so ruling, he specifically found (1)

that plaintiffs' factual assertions "are hyperbolic and strained interpretations of the actual

contents of their exhibits"; (2) that "plaintiffs' memorandum does not merely exaggerate, but

actually misrepresents, Lafarge's discovery responses, objections and actions"; and (3) that there

also is "no case law" that would support an order excluding such relevant evidence in any event.

Magistrate Judge Wilkinson also noted that he had already ordered LNA to produce the evidence in question to the plaintiffs as a remedy for a different perceived violation – the unannounced recording of the telephone conversations – and held that such disclosure was an adequate remedy for that violation.  Finally, the Order also denied plaintiffs' demand that LNA produce certain work product photographs.  On this point, the Magistrate Judge held that plaintiffs had waived any argument that they have substantial need for the photographs and cannot get their equivalent from any other source by failing to raise that argument until their motion for reconsideration, and also that plaintiffs had not established such need and inability in any event.

As we now show, plaintiffs' appeal fails to cast doubt on, much less establish grounds to reverse, Magistrate Judge Wilkinson's rulings, which must be affirmed unless found to be "clearly erroneous" or "contrary to law."  LNA has already complied with the order to produce the transcripts of the recorded conversations to plaintiffs, which Magistrate Judge Wilkinson specifically held to be "an adequate remedy for the only ethical infringement that plaintiffs have proved, i.e., the surreptitious tape recording of putative class members by Lafarge's investigators without identifying themselves as working for an attorney."  Although plaintiffs' appeal repeats what Magistrate Judge Wilkinson held to be their "hyperbolic and strained interpretations" of the documents and their "misrepresent[ations]" concerning LNA's discovery responses, those merit-less rehashed arguments provide no basis for overturning the May 14 Order.

## BACKGROUND

1.     On September 8, 2005, LNA hired counsel to investigate media reports that the Barge ING 4727 may have caused the breach of an IHNC floodwall in anticipation of litigation. Subsequently, LNA's counsel hired Centanni Investigative Agency ("Centanni") to assist in the

investigation and defense of the pending and anticipated litigation.  See Doc. 11037-6 ¶ 3 (Declaration of Wayne Centanni).

2.      Centanni has conducted interviews with numerous potential witnesses who lived in the Lower Ninth Ward, solely asking them for factual information as to the events of August 29, 2005.  Some of those interviews were conducted over the telephone and were recorded by Centanni.  See Doc. 12831-3 ¶¶ 3-4 (Supplemental Declaration of Wayne Centanni).

3.      The recordings and transcripts of the interviews are highly probative evidence in both the Barge and MRGO cases.  The interviews are important corroborative or impeachment evidence supporting the position of both LNA and the MRGO plaintiffs that the floodwall breach was caused by the government's negligence, not by the barge ING 4727.

4.      A telling example of this relates to potential witness Sidney Williams, who said he was in the Lower Ninth Ward when Katrina made landfall.  LNA's investigator interviewed Mr. Williams on March 20, 2006.  The interviewer told Mr. Williams that "what we're doing is investigating the – the levee breaches over there in the 9th Ward" and that "we're … just trying to find out what really happened out there."  Doc. 11765-4, at 2.  Mr. Williams thereupon gave the following account:

- ►    He saw water about to enter his home and evacuated to his attic and then his roof.  *Id*. at 2.

- ►    The water was into his attic before he got up onto his roof.  *Id*.

- ►    He heard three booms <u>after</u> he reached the roof, <u>after</u> the water was up into his attic.  *Id*. at 2-3.

- ►    He did not see the barge for <u>another hour or more after that</u>, at which time it was already in the neighborhood and the water was high enough for the barge to float over the wall.  *Id*. at 3, 7-9, 12.

- ►    He does <u>not</u> believe that the barge broke the floodwall.  *Id*. at 8-12.

►     Based on his experience handling barges, empty barges "don't make that
much noise" when they strike objects. *Id*. at 4.

However, apparently after speaking to plaintiffs' counsel prior to his deposition, Mr. Williams

testified that, immediately upon reaching his roof, he saw the barge knocking against the flood-

wall, causing three loud booms, right before the levee failed. Doc. 12831-2, at 41, 47-50. It is

vital to the basic purpose of this case – enabling the fact-finder to determine the <u>truth</u> – that it be

permitted to consider Mr. Williams' original statement, not only his later, coached testimony.

5.      On April 21, 2008, Magistrate Judge Wilkinson ordered LNA to produce the

transcripts of the recorded telephone interviews, even though they had been prepared in anti-

cipation of litigation. Doc. 12605. Relying on the decision in *Chapman & Cole v. Itel Container

Int'l B.V.*, 865 F.2d 676, 686 (5th Cir. 1989), he held that, even though recording the conversa-

tions was legal under Louisiana law, the work product protection that otherwise would have

attached to the interview transcripts nevertheless was "vitiated" by the fact that Centanni had not

obtained the witnesses' consent to the recording of the conversations. Although LNA disagreed

with that ruling because the ABA has subsequently held that such recording is not an ethics

violation,[1] LNA elected not to appeal the ruling and has produced the transcripts of the inter-

views to the plaintiffs.[2]

6.      Not content with receiving the transcripts, plaintiffs filed a so-called "Motion for

Protective Order" seeking to prohibit LNA from <u>using</u> the interviews at trial, in depositions, or in

support of motions to the Court on the ground that LNA's counsel had supposedly violated Rules

---

[1]  ABA Formal Opinion 01-422 (June 24, 2001).

[2]  LNA also did so even though plaintiffs themselves have, in this litigation, used a telephone conversa-
tion that was recorded without consent. Mid-way through their deposition of Arthur Murph, after he had
testified regarding his recollection of the events of August 29, 2005, plaintiffs for the first time produced
a transcript of a secretly-recorded telephone call between Mr. Murph and an attorney from whom Mr.
Murph was seeking representation, and sought to use it in his deposition.

4.2 and 4.3 of the Louisiana Rules of Professional Conduct ("LRPC") by virtue of statements

that the Centanni investigators either made or failed to make during the interviews.  Doc. 11765.

     7.     On May 14, 2008, Magistrate Judge Wilkinson entered the Order denying plain-

tiffs' Motion for Protective Order, as described above.

## ARGUMENT

     Plaintiffs have a high burden to meet in their appeal.  This Court has previously empha-

sized the limited scope of its review of rulings by the Magistrate Judge as follows:

> The Federal Rules of Civil Procedure permit district courts to refer
> nondispositive pretrial matters, including discovery disputes, to
> federal magistrates.  Fed. R. Civ.P. 72(a); see also Eastern District
> of Louisiana Local Rule 72.1E(A) [hereinafter Local Rules]; 28
> U.S.C. § 636(b)(1)(A).  A magistrate's ruling on such a nondis-
> positive matter is appealable to the district court.  *Id*.  "The district
> judge to whom the case is assigned ... shall modify or set aside any
> portion of the magistrate's order [only if] found to be clearly erro-
> neous or contrary to law."  Fed.R.Civ.P. 72(a) (emphasis added);
> see also Local Rule 74.1M(A); 28 U.S.C. § 636(b)(1)(A).  Indeed,
> the "clearly erroneous" standard requires that the court affirm the
> decision of the magistrate judge unless "on the entire evidence [the
> court] is left with a definite and firm conviction that a mistake has
> been committed."  *United States v. United States Gypsum Co.*, 333
> U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *See also*
> Fed.R.Civ.P. 72(a).  The district court may not undertake a de novo
> review of the magistrate's disposition.  *See e.g.*, *Merritt v. Int'l*
> *Brotherhood of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. Unit
> A 1981).  Under the clearly erroneous standard of review, the
> review by the district court is circumscribed and the district court
> is bound by the clearly erroneous rule in reviewing questions of
> fact.  *Blair v. Sealift*, 848 F.Supp. 670 (E.D.La.1994) (*citing*
> *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir.1992).

Doc. 11391 at 1.  Furthermore, "[a] party is not entitled to raise new theories or arguments in its

objections that the party did not present before a magistrate judge."  *Hunter v. Copeland*, 2004

U.S. Dist. LEXIS 12992 (E.D. La. July 9, 2004) (*citing Cupit v. Whitley*, 28 F.3d 532, 535 n.5

(5th Cir. 1994)).

Here, as we now show, plaintiffs do not argue that Magistrate Wilkinson's ruling is contrary to law and do not even begin to show that his ruling is clearly erroneous.  The Order should therefore be affirmed.

I.      **MAGISTRATE JUDGE WILKINSON CORRECTLY DENIED PLAINTIFFS' MOTION TO PRECLUDE LNA FROM USING THE INTERVIEW TRANSCRIPTS AS EVIDENCE.**

Magistrate Judge Wilkinson denied plaintiffs' motion to preclude LNA from using the witness interview transcripts for three separate reasons.  First, he held that plaintiffs had failed to show that LNA's counsel had violated either LRPC 4.3 or 4.2 in connection with the interviews conducted by Centanni.  Second, he held that the preclusion of relevant evidence would not be a lawful remedy even if such an ethical violation by LNA's counsel had been established.  Finally, he rejected plaintiffs' alternative argument that LNA had committed discovery violations that warranted preclusion of the evidence.  As we now show, plaintiffs fail to establish that any of these rulings should be reversed.

A.      **Plaintiffs Failed to Establish Any Violation of the Louisiana Rules of Professional Conduct by LNA's Counsel.**

As explained above, Magistrate Judge Wilkinson held (1) that Centanni should have asked for the witnesses' consent prior to recording the telephone conversations, and (2) that his order requiring LNA to produce the transcripts of those conversations "provides an adequate remedy for the only ethical infringement that plaintiffs have proved, i.e., the surreptitious tape recording of putative class members by Lafarge's investigators without identifying themselves as working for an attorney."  Order at 11.

Plaintiffs argue on appeal that Magistrate Judge Wilkinson erred in not also holding that LNA's counsel had violated LRPC 4.3 (which bars a lawyer from stating or implying to an unrepresented person that the lawyer is disinterested) or LRPC 4.2 (which forbids a lawyer from

contacting persons he knows to be represented by counsel) as a result of the statements that the Centanni investigators made or did not make.  These arguments are meritless.

LNA's counsel did not violate LRPC 4.3:    Plaintiffs' argument on appeal repeats the same fundamental legal mistake that Magistrate Judge Wilkinson found that plaintiffs were making in their argument to him (Order at 14-15).  Specifically, plaintiffs (at 4-5) argue that Rule 4.3 requires a lawyer (or his agent) to affirmatively disclose his identity when speaking to a potential witness.  As the Magistrate Judge found (at 14-15), however, that assertion is based on caselaw under the prior version of LRPC 4.3, not the one that has been in effect throughout this case.

As quoted in the Order (at 12-13), the current version of LRPC 4.3 provides as follows:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested.  When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding.  The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

As the Order further noted (at 13), LRPC 1.0 specifies that the word "know" "denotes actual knowledge of the fact in question."  Thus, as the Order correctly observed (at 15), the current version of the Rule does not require the lawyer to affirmatively identify himself absent proof that the lawyer actually knows that the witness misunderstands the lawyer's role.  Instead, the current Rule 4.3 only requires the lawyer not to "state or imply that the lawyer is disinterested."

By contrast, as the Order explained, the prior version of LRPC 4.3 "required the attorney to 'assume that an unrepresented person does not understand the lawyer's role in a matter and the lawyer shall carefully explain to the unrepresented person  the lawyer's role in the matter.'"

Order at 14-15 (citation omitted).  That language, which "require[d] the lawyer to assume a lack of understanding" and therefore affirmatively to identify himself, "was removed from Rule 4.3 when it was amended in 2004."  Order at 15.

In this regard, Magistrate Judge Wilkinson correctly distinguished the two Louisiana cases that plaintiffs relied on before him – and that they continue to improperly rely on in this Court (Appeal Mem. 4) – because those cases applied the former version of Rule 4.3  See *Louisiana State Bar Ass'n v. Harrington*, 585 So. 3d 514 (La. 1990); *First Nat'l Bank v. Assavedo*, 764 So. 2d 162 (La. App. 4th Cir. 2000).  As he explained:

> those cases were decided under a prior version of Rule 4.3, which required the attorney to "'<u>assume</u> that an unrepresented person does not understand the lawyer's role in a matter and the <u>lawyer shall carefully explain</u> to the unrepresented person the lawyer's role in the matter.'" <u>La. State Bar Ass'n</u>, 585 So. 2d at 516 n.1; <u>First Nat'l Bank</u>, 764 So. 2d at 163 (emphasis added).  That language was removed from Rule 4.3 when it was amended in 2004.  The current rule requires actual or constructive knowledge that the unrepresented person misunderstands the lawyer's role, instead of requiring the lawyer to assume a lack of understanding.  Plaintiffs fail to establish that knowledge.

Order at 14-15.

Plaintiffs assert that "[t]he Magistrate Judge relied on a 2004 change in the language of RPC 4.3 but also found an ethical infringement <u>of the rule</u>."  Appeal Mem. at 4 (emphasis added).  That is untrue.  As explained above, Magistrate Judge Wilkinson did not find any violation of Rule 4.3, but instead found only a violation of the what he viewed as the caselaw (*i.e.*, uncodified) rule that telephone conversations should not be recorded without the consent of all persons on the call.  And, as quoted above, the Magistrate Judge held that that violation had been fully

remedied by the order requiring LNA to produce the transcripts of the phone calls despite their work-product nature.[3]

In short, the fundamental premise of plaintiffs' appeal – that the Centanni interviewers "were under an ethical duty to inform putative class members that they were working for defense counsel representing a party adverse to their interests" (Appeal Mem. at 3) – is simply wrong as a matter of law under the current version of LRPC 4.3.[4]  The current version of the rule does not impose any such "ethical duty," as the Magistrate Judge correctly held.

Magistrate Judge Wilkinson also correctly held that, tested against the standard set forth in the current version of Rule 4.3, the conversations in question did not show any violation of the Rule.  Although the Magistrate Judge found that the Centanni investigators did not affirmatively disclose that they were working for LNA, he also correctly ruled that such affirmative disclosure is <u>not</u> required under the current version of the Rule, as just discussed.  By contrast, Magistrate Judge Wilkinson expressly and correctly found that the Centanni interviewers did not make any of the false statements that the current Rule forbids:

> The investigators in the instant case did not "state or imply" that they were disinterested, they made no misrepresentations when they stated that they worked for a private investigative agency and they did not deliberately foster any "impression that the interviewers were on [the interviewees'] side," as alleged by plaintiffs.

Order at 14.

---

[3]  As explained above, LNA strongly believes that no violation of any kind occurred because the ABA has specifically held that recorded conversations are not unethical and *Chapman & Code* was specifically premised on an earlier ABA opinion that reached a contrary conclusion.  Nevertheless, LNA elected not to appeal the ruling and produced the transcripts to plaintiffs' counsel.

[4]  Plaintiffs' reliance (at 4-6) on cases from other states is misplaced.  For example, not only did the decision in *Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.*, 144 F. Supp. 2d 1147 (D.S.D. 2001), not apply Louisiana law, but it was affirmed on appeal based solely on Rule 4.2 without any mention of Rule 4.3.  See 347 F.3d 693 (8th Cir. 2003).

Plaintiffs mistakenly argue that there is some internal inconsistency between this finding and Magistrate Judge Wilkinson's statements on pages 6-8 of the Order that the Centanni investigators did not disclose their identities.  That argument overlooks precisely the distinction that Magistrate Judge Wilkinson correctly drew between the old version of Rule 4.3, which required disclosure, and the current version of Rule 4.3, which merely forbids misrepresentation absent actual knowledge that the witness misunderstands the lawyer's role.

Magistrate Judge Wilkinson's above-quoted finding (at 14) that the Centanni investigators (a) did not state or imply that they were disinterested, (b) made no misrepresentations, and (c) did not deliberately foster any impression that they were on the interviewees' side, is fully borne out by the record and certainly is not "clearly erroneous."

(a)     The investigators never told any witness that they were disinterested – no such statement appears in any interview transcript.  Moreover, the statement made in some interviews that the investigator was trying to find out what happened during the hurricane did not imply the investigator was disinterested.  Magistrate Judge Wilkinson (at 13-14) quoted the district court's opinion in *In re Tyco Ltd. Sec. Litig.*, 2001 U.S. Dist. LEXIS 819 (D.N.H. Jan. 30, 2001), which correctly held that asking for factual information does not in any way imply that the questioner is disinterested in the matter.

(b)     The Magistrate Judge found (at 7) that the interviewers' statements in a few of the interviews that they worked for Centanni Investigative Agency was not a misrepresentation because they "were not literally false."  Instead, again, he simply found that the investigators in

those few conversations had not volunteered the name of Centanni's client – which, as noted above, he correctly held is not required by the current version of Rule 4.3.[5]

(c)      The investigators never told any witness that they were on the witness's side – once again, no such statement appears in any interview transcript.

In sum, plaintiffs have failed to establish that Magistrate Judge Wilkinson's key factual findings – that the interviewers did not state or imply that they were disinterested and had no actual knowledge that any witness misunderstood their role – are "clearly erroneous."

Plaintiffs also assert (at 7) that LRPC 4.3 was violated because "Centanni also requested persons of interest to turn over irreplaceable physical evidence … without revealing that anything obtained would be sequestered …."  Plaintiffs cite no evidence for that false assertion, and none exists.  Moreover, the uncontradicted sworn evidence establishes that no physical evidence was ever turned over to Centanni.  Doc. 11037-6 ¶ 11; Doc. 12831-3 ¶ 5.

Although Magistrate Judge Wilkinson correctly rejected plaintiffs' motion on the ground that the statements at issue were not the kind that could violate Rule 4.3, another basis for affirming his Order is that LRPC 4.3 does not even apply to investigator interviews because its limited purpose is to address the expectations of persons dealing <u>with lawyers</u>.  See *Weider Sports Equip. Co. v. Fitness First, Inc.*, 912 F. Supp. 502, 511-12 (D. Utah 1996) (noting that "the expectations are those of the unrepresented person dealing with a lawyer" and that "[n]o unrepresented person is realistically likely to apply his or her expectations of lawyers to an investigator," but not finding it necessary to decide whether Rule 4.3 can ever apply to the activities of a non-lawyer); ABA Formal Opinion 07-445 (Apr. 11, 2007) ("Rule 4.3 … does not limit factual

---

[5]  Moreover, the few witnesses who asked who the interviewer worked for – and were truthfully told, Centanni Investigative Agency – did <u>not</u> ask who Centanni's <u>client</u> was.  Doc. 11765-27, at 9-10; Doc. 11765-28, at 2-3.

inquiries but requires both sides to refrain from giving legal advice ….").[6]  There is no basis to believe that any of the witnesses believed that the Centanni investigators were lawyers, and thus LRPC 4.3 did not even apply to these interviews in any event.[7]

LNA's counsel did not violate LRPC 4.2.  LRPC 4.2(a) forbids communicating "about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter."  This rule employs an actual knowledge standard – the lawyer must actually know that the witness in question is represented by counsel.  *See* LRPC 1.0(f) ("'knows' denotes actual knowledge of the fact in question").

Magistrate Judge Wilkinson found that plaintiffs have adduced no evidence that LNA's investigators interviewed a single person that LNA, its counsel, or its investigators knew to be represented by counsel.  He also found that, to the contrary, the evidence affirmatively establishes that, as soon as LNA learned that a witness was represented by counsel, it terminated the interview.  Specifically, Magistrate Judge Wilkinson held as follows:

> [P]laintiffs have presented only speculation and supposition that Lafarge's lawyers knew that any of the witnesses its investigators interviewed was represented by counsel until after the interview was taken.  In the case of Ronald McGill, when he revealed during the interview that he was represented by counsel, the investigator immediately terminated the interview. Plaintiff's Exh. 22, McGill interview.  This indicates good faith compliance with the Rule by Lafarge's attorneys and investigators, not their bad faith violation of it, as plaintiffs suggest.

---

[6]  *See also Apple Corps Ltd. v. International Collectors Society*, 15 F. Supp. 2d 456, 476 (D.N.J. 1998) ("It is clear from the language of RPC 4.3 that it is limited to circumstances where an attorney is acting in his capacity as a lawyer.").

[7]  Plaintiffs cite the general rules about supervision of non-lawyer employees (LRPC 5.3) and the prohibition on violating rules through the acts of others (LRPC 8.4(a)), but these rules do not mean that a rule based specifically on the expectations of individuals dealing with lawyers should be extended to non-lawyers such as the Centanni investigators.

Order at 12; see also Doc. 12831-3 ¶ 6 (Centanni Supp. Declaration).   Plaintiffs do not even begin to try to show that these factual findings are clearly erroneous.

Instead, plaintiffs baldly assert (at 8) that they "have shown six instances" in which LNA interviewed "represented persons of adverse interest."  But plaintiffs cite no evidence – none – in support of that assertion.  In fact, plaintiffs did not present any evidence to the Magistrate Judge that LNA's investigators conducted an interview of any person who was represented by counsel at the time, much less one whom the interviewer knew to be represented by counsel.

Plaintiffs' reliance (at 8) on *In re Frank*, 2006 WL 1133871 (W.D. La. Apr. 25, 2006), is wholly misplaced.  In that case, a lawyer interviewed an adverse person who was actually represented by counsel in circumstances where the lawyer's claim to have been unaware of that representation was found incredible.  Here, by contrast, the witnesses were not represented by counsel, and LNA in any event had no reason to think that they were.

Finally, to the extent that plaintiffs imply that all persons who would be covered by the putative class alleged in plaintiffs' complaint are represented by plaintiffs' counsel for purposes of Rule 4.2, they are wrong.  The ABA has specifically held that, prior to class certification and the end of the opt-out period, putative class members are *not* represented by counsel for purposes of Rule 4.2.  See ABA Formal Opinion No. 07-445 (Apr. 11, 2007) ("putative class members are not represented parties for purposes of the Model Rules prior to certification of the class and the expiration of the opt-out period"). [8]

---

[8]  As a final argument, plaintiffs (at 9) make a conclusory accusation that LNA's counsel violated Rule 3.3(a)(1) by representing that they would turn over a list of the interviewees and then not doing so on the specified date.  Magistrate Judge Wilkinson did not even find that argument worthy of comment in denying plaintiffs' motion.  The argument is meritless in any event:  LNA's counsel brought the wrong copy of the list to a meeting on the specified date but allowed plaintiffs' counsel to fully and completely review it at the meeting, as explained in LNA's opposition to the motion.  Doc. 12831 at 12-13.

In sum, the Magistrate Judge's rejection of plaintiffs' allegations of ethical violations by LNA's counsel was correct – and certainly was not clearly erroneous or contrary to law.

**B.      The Magistrate Judge Also Correctly Held that a Draconian Order Precluding the Use of Highly Relevant Evidence Order Would be Inappropriate In Any Event**

As a separate and independent basis for his Order, Magistrate Judge Wilkinson held that "[e]ven if there had been any violations of Rule 4.2 or 4.3, plaintiffs have cited no case law for the proposition that relevant evidence should be precluded, thus punishing the client, as a disciplinary sanction for ethical misconduct by its attorneys." Order at 15. Instead, he ruled, "[t]he cases cited by Lafarge hold to the contrary, for the following reasons":

> An exclusionary policy frustrates truth and does not punish the ethical violation, but works against the client who may have been wronged by the opposing party as far as the substantive claim is concerned. An ethical violation ought to be dealt with by sanctions against the errant attorney, except in special cases....
>
> An exclusionary rule is an indirect sanction that sacrifices truth on the altar of advocacy rather than a more functional approach of imposing a direct sanction on the errant attorneys. It leads to excessive quibbling, tactical maneuvering and possible frustration of justice.... Suppression and exclusion in this case effects little benefit to the profession and is not directly corrective of misconduct.

Order at 15-16, quoting *Weider Sports Equip. Co. v. Fitness First, Inc.*, 912 F. Supp. 502, 510 (D. Utah 1996), and also citing *United States v. Ryans*, 903 F.2d 731, 740 (10th Cir. 1990); *United States v. Hammad*, 858 F.2d 834, (2nd Cir. 1988); *United States v. Dennis*, 843 F.2d 652 (2d Cir. 1988); *United States v. Thomas*, 474 F.2d 110, 112 (10th Cir. 1973)); *Calloway v. DST Sys., Inc.*, No. 98-1303-CV-W-6, 2000 WL 230244 (W.D. Mo. Feb. 28, 2000) (citing *Plan Comm. in Driggs Reorg. Case v. Driggs*, 217 B.R. 67, 72 (D. Md. 1998)); and *United States v. Scrushy*, 366 F. Supp. 2d 1134, 1141 (N.D. Ala. 2005) (citing *United States v. Lowery*, 166 F.3d 1119, 1125 (11th Cir. 1999)).

Plaintiffs do not try to rebut any of these numerous cases or to cite any case holding that the exclusion of relevant evidence is an appropriate remedy for a lawyer's alleged ethical trespass. The one case they do cite to is *City of Waco v. Bridges*, 710 F.2d 220 (5th Cir. 1983), but that case is wholly inapposite. In *City of Waco*, the Fifth Circuit *refused* to apply an exclusionary rule in a civil case, and in any even the exclusionary rule it was addressing was the exclusionary rule arising from Fourth Amendment violations, not one arising from alleged ethics violations by a party's lawyer.

Moreover, as the Magistrate Judge's opinion (and the many cases he cited) also hold, the policy considerations overwhelmingly lie against excluding relevant evidence as a sanction for as alleged ethics violation by a party's counsel. Such a sanction would punish the client for the lawyer's actions, would encourage unfounded ethics charges like the ones plaintiffs made here, and would undermine the fundamental truth-seeking role of the judicial system.

In sum, plaintiffs have not even begun to show that this alternative, independently sufficient reason given by Magistrate Judge Wilkinson for denying plaintiffs' motion is contrary to law. For this additional reason, the Order should be affirmed.

### C.    Magistrate Judge Wilkinson Correctly Rejected Plaintiffs' Argument Based On Their Misrepresentations of LNA's Discovery Responses.

Plaintiffs argued below that the interview transcripts should also be excluded as a sanction under Rule 37 because LNA supposedly failed to disclose their existence in its discovery responses. The Magistrate Judge specifically held that that, in making this argument, "plaintiffs' memorandum does not merely exaggerate, but actually misrepresents, Lafarge's discovery responses, objections and actions." Order at 11. He also held that "plaintiffs' misrepresentations of Lafarge's discovery responses provide no basis for imposing any discovery sanctions." Order at 18.

On appeal, plaintiffs (at 10) limit themselves to repeating just one of their misrepresen-tations – namely, the misrepresentation that four of LNA's discovery responses of September 18, 2006 "explicitly denied obtaining any statements from others."  The reason why this assertion is false is that the four discovery requests at issue did not encompass the witness interviews.

Specifically, as LNA explained in its opposition to plaintiffs' motion (Doc. 12831), the discovery requests were made during Phase I of the Limitation of Liability proceeding before Chief Judge Berrigan, which concerned the breakaway of the barge ING 4727 from its moorings. Plaintiffs' Interrogatory 26 asked for the identity of witnesses LNA "contends have knowledge of the incident," and, as just noted, the "incident" at issue in Phase I was the breakaway of the Barge from its moorings.  None of the interviews at issue here dealt with the breakaway of the Barge from its moorings, and hence none of them was responsive to that request.  Moreover, LNA expressly objected to the interrogatory to the extent it asked about events after the incident, *i.e.*, after the breakaway.  Likewise, plaintiffs' Phase I Requests for Production 11, 17, and 18 sought, respectively, "reports of the incident" (with reference to several government agencies); "records which would reflect the time that the barge broke loose from it's [sic] mooring"; and photographs of the barge's moorings or the course of the barge.  Once again, the interviews at issue here simply are not responsive to any of those requests.[9]

In sum, Magistrate Judge Wilkinson considered and properly rejected plaintiffs' claim that LNA improperly concealed the witness interviews during Phase I discovery, and this Court should affirm that finding.  As such, plaintiffs' argument that the Magistrate Judge erred by

---

[9]  Moreover, contrary to plaintiffs' statement (at 10) LNA's responses to those requests expressly asserted a work product objection for any documents created by LNA on or after September 8, 2005, which would include the interview transcripts even had they been called for by the document requests.

refusing to exclude the interview transcripts from evidence as a supposed Rule 37 sanction should be rejected as well.

## II.   MAGISTRATE JUDGE WILKINSON CORRECTLY DENIED PLAIN-TIFFS' MOTION TO COMPEL PRODUCTION OF LNA'S WORK PRODUCT PHOTOGRAPHS.

### A.   Background

Plaintiffs served discovery requesting that LNA produce its photographs of the Barge. LNA produced all of its photographs of the Barge from both the period before Hurricane Katrina and the period immediately thereafter.  LNA only asserted work product protection for photographs that had been taken as part of its attorney-directed work-product investigation on or after September 8, 2005.

On March 7, 2008, plaintiffs moved to compel production of photographs of the Barge and of a five-barge tier that LNA had withheld on work-product grounds.  The <u>only</u> argument that plaintiffs made in their motion was that photographs are never entitled to work product protection.  Doc. 11578.[10]  On April 8, 2008, LNA filed an opposition rebutting that argument.  Doc. 12331.

On April 21, 2008, Magistrate Judge Wilkinson denied plaintiffs' motion to compel on the ground that LNA had carried its burden of establishing that the materials were work product in that they had been prepared in anticipation of litigation.  Doc. 12605 at 15.

On May 5, 2008, plaintiffs filed a motion for reconsideration.  Doc. 13017.  In this document, they raised – for the first time – a new argument that they have a substantial need for

---

[10]  Not only was that the sole ground advanced in plaintiffs' motion to compel, but the motion to compel also was limited to those two categories of photographs.  In yet another impropriety, however, plaintiffs' current appeal from the denial of that motion purports to demand additional categories of photographs that were not even covered by the motion, such as those showing "the physical condition of the docks, mooring lines, LNA facility, floodwall and markings on land immediately after the storm."  Appeal Mem. at 12.

the photographs and cannot obtain their substantial equivalent from any other source, thereby seeking to overcome LNA's work product protection.

As part of the May 14, 2008 Order, Magistrate Judge Wilkinson denied plaintiffs' motion for reconsideration.  He held, first, that "plaintiffs waived their argument about their alleged substantial need for the materials and inability to obtain substantial equivalents by failing to raise it in their motion to compel."  Order at 4.  He also held that, "[e]ven if they had not waived it," plaintiffs' new argument failed because plaintiffs had the burden of proving the requirements of Rule 26(b)(3), and "[p]laintiffs have submitted no evidence sufficient to carry their burden of proof or support their argument, which is not self-evident."  Order at 4 (emphasis in original).

### B.   Plaintiffs Provide No Basis For Overturning Magistrate Judge Wilkinson's Waiver and Alternative Merits Rulings.

As a dispositive threshold matter, plaintiffs fail to provide any legal basis for reversing the Magistrate Judge's holding that plaintiffs waived their "need/hardship" argument by failing to raise that argument in their motion to compel, and instead raising it for the first time in their motion for reconsideration.  As Magistrate Judge Wilkinson held with citations to ample authority (Order at 4), it is well settled that new arguments cannot be raised in a motion for reconsideration.

Plaintiffs imply (at 12-13) that their failure to raise this argument until their motion for reconsideration should somehow be excused because they supposedly "relied on prior rulings that work-product privilege did not apply to photographs."  But reliance on a supposed basis for one argument does not justify a failure to make other arguments and does not permit those other arguments to be raised for the first time on a motion for reconsideration.[11]

---

[11]   Moreover, plaintiffs' supposed reliance was not reasonable.  See *Southern Scrap Materials Co. v. Fleming*, No. 01-2554, 2003 U.S. Dist. LEXIS 10815, at *53-54, (E.D. La. June 18, 2003) (holding that the photographs were work product but ordering their production on other grounds).

In short, the Magistrate Judge correctly held that plaintiffs had waived the only argument that they press on appeal, and Order should be affirmed on that ground.

Moreover, Magistrate Judge Wilkinson's alternative ruling that plaintiffs have failed to carry their burden of proof to overcome LNA's work product protection for the photographs at issue is equally unimpeachable.  Plaintiffs do not deny that, under the express terms of Rule 26(b)(3), they had the burden of showing both (1) that they have substantial need for the materials and (2) that they cannot, without undue hardship, obtain their substantial equivalent by other means.  Nor could plaintiffs deny that that was their burden, given the case citations set forth by the Magistrate Judge in the Order (at 4).  Moreover, plaintiffs admit that they did not meet that burden of proof:  plaintiffs admit that they did not come forward with any evidence to establish either their alleged substantial need for the documents or their supposed inability to obtain their substantial equivalent by other means.

Instead, plaintiffs seek to justify their failure to come forward with any evidence (when they belatedly raised this issue) by asserting (at 12) that these points "seemed to self-evident to Barge Plaintiffs."  The Magistrate Judge specifically rejected this assertion, saying that plaintiffs' argument that the requirements of Rule 26(b)(3) are met "is not self-evident."  That conclusion was plainly correct.  Work product protection is strong and will not be overcome absent a strong factual showing of both (1) substantial need and (2) an inability to obtain the equivalent from other sources that is not due to the party's own delay in seeking such evidence.  Plaintiffs' assertion that these stringent requirements are satisfied here is simply untrue, much less self-evident.

Finally, plaintiffs ask (at 13) that they "be given an opportunity before the Magistrate Judge to make the showing the Magistrate Judge considers necessary."  In other words, having belatedly raised this issue for the first time in their motion for reconsideration, and then having

done so without bothering to come forward with any evidence, plaintiffs are requesting that they

be given a third opportunity to litigate this issue.  Plaintiffs have shown no basis in the law or the

facts that would support such an extraordinary course, which would severely prejudice LNA by

requiring LNA to relitigate this issue yet again.  Plainly, the Magistrate Judge acted well within

his authority in holding that even if plaintiffs had not waived this argument, they failed to satisfy

their burden of proof.

## CONCLUSION

For the reasons stated above, the portions of Magistrate Judge Wilkinson's May 14, 2008

Order appealed by plaintiffs should be affirmed.

Respectfully submitted,

/s/ Derek A. Walker
Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

**<u>Certificate of Service</u>**

I hereby certify that I have on this 15th day of July, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding by electronic filing notification.


/s/ Derek A. Walker