Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 737
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.))**

C U.S. E.E.O.C. v. TIC-The Indus. Co.
E.D.La.,2002.

United States District Court,E.D. Louisiana.
UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
v.
TIC-THE INDUSTRIAL COMPANY et al.
**No. Civ.A. 01-1776.**

Nov. 21, 2002.

*ORDER AND REASONS*

WILKINSON, Magistrate J.

**\*1** The United States Equal Employment Opportunity Commission ("EEOC") brought this employment discrimination action under Title VII and 42 U.S.C. § 1981a against defendant, TIC-The Industrial Company ("TIC").[FN1] The EEOC alleges that defendant, a construction company, has engaged in a long-term pattern and practice of refusing to hire African-American job applicants on the basis of their race in the New Orleans area and nationwide. The EEOC sued on behalf of five named aggrieved parties (Michael Brooks, Willie Brooks, David Dunn, Shedrick Winfield and Kevin Gautier) and all individuals similarly situated to them. Plaintiff seeks compensatory damages, equitable relief and punitive damages. Complaint, Record Doc. No. 1.

>    FN1. TIC's co-defendant, TIC Holdings, Inc., was recently dismissed with prejudice by stipulation of the parties. Record Doc. No. 100.

The EEOC filed a motion for protective order, asking that TIC be prohibited from engaging in ex parte communications with all potential claimants in this action. Record Doc. No. 91.[FN2] Plaintiff states in its memorandum that it is trying to identify all of the potential claimants, has currently identified more than 130 and will supplement its disclosures to TIC when it learns the identities of additional potential claimants through discovery. *Id* ., Plaintiff's Exh. A, list of claimants. The EEOC argues that, although it does not have an attorney-client relationship with all potential claimants, it is entitled to invoke the attorney-client privilege and the American Bar Association's Model Rule of Professional Conduct 4.2 to prevent defendant from talking with potential claimants because the EEOC represents all claimants' interests in this action.

>    FN2. In future memoranda, the EEOC must either use Westlaw or LEXIS citations for unpublished opinions or attach copies of the cases it cites if they appear only in looseleaf

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 737
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.))**

services. Local Rule 7.4.

Presumably the EEOC invokes Model Rule 4.2 because the EEOC brings this action on behalf of claimants nationwide. Louisiana Rule of Professional Conduct 4.2 is identical to the Model Rule, and this court has adopted the Louisiana Rules to govern the conduct of attorneys appearing here. Local Rule 83.2.4E. Louisiana Rule 4.2 provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so. A lawyer shall not effect the prohibited communication through a third party, including the lawyer's client.

La. R. Prof. Conduct 4.2.

Title VII grants the EEOC the authority to sue on behalf of aggrieved complainants, who are often described as a "class." However, such an action does not arise under Fed.R.Civ.P. 23 and class certification of the type contemplated in Rule 23 class actions is not necessary. *General Tel. Co. of the NW, Inc. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 323-24 (1980) (citing 42 U.S.C. §§ 2000e-5(a), (f)(1), (g)).

By enacting this provision of Title VII,

Congress sought to implement the public interest as well as to bring about more effective enforcement of private rights.... The EEOC's civil suit was intended to supplement, not replace, the private action. The EEOC was to bear the primary burden of litigation, but the private action previously available under § 706 [42 U.S.C. § 2000e-5] was not superseded. Under § 706(f)(1) [42 U.S.C. § 2000e-5(f)(1) ], the aggrieved person may bring his own action.... The aggrieved person may also intervene in the EEOC's enforcement action. These private-action rights suggest that *the EEOC is not merely a proxy for the victims of discrimination and that the EEOC's enforcement suits should not be considered representative actions* subject to Rule 23.... When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.

**\*2** *Id.* at 325-26 (emphasis added).
[U]nlike the Rule 23 class representative, the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged. The individual victim is given his right to intervene for this very reason. The EEOC exists to advance the public interest in preventing and remedying employment discrimination, and it does so in part by making the hard choices where conflicts of interest exist.

*Id.* at 331.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 737
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.))**

Because the EEOC has not yet designated specifically for which potential claimants it will seek damages, TIC wants to interview informally the 131 identified potential claimants so that it can decide which ones to depose. The EEOC contends in its motion for protective order that the attorney-client privilege and the work product doctrine protect its communications with all potential claimants, and it seeks an order prohibiting TIC from communicating ex parte with any potential claimant in this action and preventing TIC from discovering the written questionnaires that the 131 identified potential claimants have provided to the EEOC. TIC responds that plaintiff has failed to meet its burden for a protective order under Fed.R.Civ.P. 26(c) and has failed to show that it is entitled to any attorney-client privilege or work product protection because it admittedly does not have a traditional attorney-client relationship with potential claimants.

First, the court notes that class action cases arising under Fed.R.Civ.P. 23, cases that do not involve the EEOC as a plaintiff and cases in which the EEOC sues under the Age Discrimination in Employment Act ("ADEA"), which have been cited by both parties, are not dispositive in deciding the issues presented in this Title VII enforcement action. The strictures of Rule 23 do not apply in the instant action and many of the concerns expressed by the courts in those cases are not of concern here. Similarly, cases in which the EEOC is not a plaintiff do not address the situation here, in which the EEOC asserts an attorney-client privilege despite its admitted lack of an attorney-client relationship with all potential claimants. In addition, ADEA enforcement actions differ significantly from Title VII actions. In *Equal Employment Opportunity Comm'n v. Nebco Evans Distrib.,* No. 8:CV96-00644, 1997 WL 416423 (D. Neb. June 9, 1997), a case cited by plaintiff, the court held that the EEOC could invoke the attorney-client privilege on behalf of the ADEA class. This case is not on point for reasons explained by the *Nebco Evans* court itself.

Unlike the Title VII enforcement provisions, under the ADEA, the right of an individual to bring a private action "shall terminate upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee under this chapter."Further, "while Title VII explicitly provides for intervention by both the EEOC and the aggrieved party, the ADEA makes no mention of intervention whatsoever."

**\*3***Id.* at \*4 (citing 29 U.S.C. § 626(c)(1); *Lorillard v. Pons,* 434 U.S. 575, 584-85 (1978); *Equal Employment Opportunity Comm'n v. Wackenhut Corp.,* 939 F.2d 241, 242 (5th Cir.1991)) (quoting *Wackenhut Corp.,* 939 F.Supp. at 244). Thus, " 'the conclusion that the EEOC is the individual's representative in ADEA suits ... seems inescapable.' The Court also agrees that '[w]hile there does not appear to be any formal attorney-client relationship, the EEOC, through its attorneys, [is] essentially acting as *de facto* counsel for the [individuals].' " *Id.*(quoting *Equal Employment Opportunity Comm'n v. v. U.S. Steel Corp.,* 921 F.2d 489, 495 (3d Cir.1990); *Bauman v. Jacobs Suchard, Inc.,* 136 F.R .D. 460, 461 (N.D.Ill.1990)). That conclusion is not "inescapable" in Title VII enforcement actions.

Second, the burden of showing good cause for a protective order under Fed.R.Civ.P. 26(c), *seeIn re Terra Int'l, Inc.,* 134 F.3d 302, 306 (5th Cir.1998), is satisfied in this case if the EEOC is

entitled to invoke the attorney-client privilege. That privilege, if applicable, provides good cause for a protective order without any other showing, although its presence does not necessarily mandate the blanket prohibitions that plaintiff seeks.

Third, the EEOC's entitlement, if any, to the protection of the work product doctrine and TIC's ability to obtain the EEOC's work product documents depend on the application of Rule 26(b)(3). Thus, the EEOC must show that the documents it seeks to protect were "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."Fed.R.Civ.P. 26(b)(3). If the EEOC makes that showing, TIC must show that it "has substantial need of the materials in the preparation of [its] case and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means."*Id.*

As to the attorney-client privilege issue, the EEOC admits that it does not have an attorney-client relationship with all potential claimants, but asserts that it is nonetheless entitled to invoke the attorney-client privilege on behalf of those claimants because of the representative nature of this Title VII action. However, the case law is not as clear as the EEOC contends.

The district court for the Southern District of New York recently summarized the state of the law in this area.

The case law is not definitive regarding the moment when the EEOC enters into an attorney-client relationship with the members of the class it seeks to represent. Moreover, the cases provide little guidance on the precise nature of the relationship between the EEOC and the members of the class it seeks to represent. On the one hand, the EEOC represents the interests of all members of the defined class when it acts to "vindicate the public interest in preventing employment discrimination."On the other hand, the EEOC's lawsuit does not preclude a separate action by members of the class. An aggrieved party may bring a separate, private action or intervene in the EEOC's enforcement action. Even where the EEOC represents a class to which an individual employee belongs, there are differences between the public interest protected by the EEOC and the private interest of the employee. It would therefore be inconsistent with the remedial purposes of Title VII to bind class members by the EEOC's action, and problematic to define the nature of the relationship between the EEOC and the general class members.

**\*4***Equal Employment Opportunity Comm'n v. Morgan Stanley & Co.,* 206 F.Supp.2d 559, 561 (S.D.N.Y.2002) (quoting *General Tel. Co.,* 446 U.S. at 326, 333) (citing *Equal Employment Opportunity Comm'n v. Johnson & Higgins, Inc.,* 1998 WL 778369, at \*5-6 (S.D.N.Y. Nov. 6, 1998); *Bauman,* 136 F.R.D. at 462;*Gormin v. Brown-Forman Corp.,* 133 F.R.D. 50, 53 (M.D.Fla.1990); *Equal Employment Opportunity Comm'n v. Chemtech Int'l Corp.,* No. H-94-2848, 1995 WL 608333, at \*1 (S.D.Tex. May 17, 1995)).

Despite the "problematic" nature of the relationship between the EEOC and the claimants it represents, some courts have recognized the existence of an attorney-client privilege between the

EEOC and the class members in a Title VII enforcement action. *Id.* at 561; *Equal Employment Opportunity Comm'n v. International Profit Assocs., Inc.,* 206 F.R.D. 215, 218-19 (N.D.Ill.2002); *see also* *Equal Employment Opportunity Comm'n v. Mitsubishi Motor Mfg. of America, Inc.,* 960 F.Supp. 164, 167-68 (C.D.Ill.1997) (without expressly finding an attorney-client relationship between the EEOC and potential claimants, the court held that the EEOC has a "legitimate interest in communicating legal advice and information to those persons it will potentially represent in this action;" the court memorialized defendant's voluntary agreement to contact past or current employees regarding past incidents of discrimination only by deposition).

A few courts have rejected the assertion of attorney-client privilege when the EEOC has proffered no evidence that the potential claimants have contacted the EEOC or want the EEOC to represent them. In *Gormin,* the EEOC brought an enforcement action under the ADEA. Without discussing the nature of an ADEA action, the court denied the EEOC's motion for protective order seeking to prevent defendant from contacting class members. The court found no evidence that any aggrieved individual had either initiated contact with the EEOC by filing a charge or expressly asserted a desire to have the EEOC represent him or her. If the EEOC could present such evidence, the court might conclude that an attorney-client relationship existed. *Gormin,* 133 F.R.D. at 52, 53.

Similarly, in *Equal Employment Opportunity Comm'n v. McDonnell Douglas Corp.,* 948 F.Supp. 54 (E.D.Mo.1996), another ADEA case [FN3] in which the court did not discuss the distinction between the ADEA and Title VII, the court denied the EEOC's motion for a protective order. The court found that, because the EEOC is acting on its own authority to vindicate the public interest, it "does not sue in a representative capacity." *Id.* at 55 (citing *General Tel. Co.,* 446 U.S. at 327-29). Because a group of former employees had never filed a discrimination charge or otherwise sought the EEOC's representation, the court held that the EEOC could not invoke Rule 4.2 of the Missouri Rules of Professional Conduct to prevent defendant from communicating with those employees. *Id.*

> FN3. The cited opinion does not state what type of discrimination or what statute is involved. However, the court stated in *Equal Employment Opportunity Comm'n v. McDonnell Douglas Corp.,* 960 F.Supp. 203, 203 (E.D.Mo.1996), another opinion rendered in the same case, that it arose under the ADEA.

**\*5** By comparison, the court found in *EEOC v. International Profit Assocs.* that the EEOC could invoke the attorney-client privilege because each class member had affirmatively stated in interviews with EEOC attorneys that she wanted the EEOC to represent her in the sex discrimination lawsuit. *EEOC v. International Profit Assocs.,* 206 F.R.D. at 218-19. The *International Profit Assocs.* court also cited an unreported decision of the district court in *EEOC v. Mitsubishi Motor Mfg.,* which held that the attorney-client privilege applied in that case because the identified claimants " 'at some point identified themselves to the EEOC as persons seeking representation in the lawsuit." ' *Id.* at 219; *see also* *EEOC v. Johnson & Higgins,* 1998 WL 778369, at \*5-6 (affidavits of claimants established date that they first believed EEOC

Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 737
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.))**

represented them; attorney-client privilege applied only after that date); *EEOC v. Chemtech,* 1995 WL 608333, at *1-2 (attorney-client privilege applied in EEOC action brought on behalf of single claimant, who intervened in action and provided affidavit stating his belief that the EEOC's attorneys represented him and that his communications with the EEOC's attorneys were confidential; court also recognized "joint prosecution privilege that extends to communications between a party and the attorney for a co-litigant"); *Equal Employment Opportunity Comm'n v. HBE Corp.,* No. 4:93-CV-722, 1994 WL 376273, at *2 (E.D.Mo. May 19, 1994) (attorney-client privilege applied in EEOC action brought on behalf of single claimant, who intervened in action and provided affidavit stating that he had sought legal advice from EEOC's attorney with understanding that their communications were confidential); *Bauman,* 136 F.R.D. at 463 (former employees filed class action under ADEA; EEOC intervened; attorney-client privilege applied because the "primary purpose of the letter [that the EEOC sent to potential claimants] was to ask if the claimants wished to be represented by the EEOC. Only those who desired to be represented were asked to complete the questionnaire.").

Courts that have found the EEOC able to invoke the attorney-client privilege and/or Professional Conduct Rule 4.2 have imposed restrictions, but not necessarily blanket restrictions, on the defendant's ability to communicate with potential claimants. Thus, in *Morgan Stanley,* the court "found that all women defined in the class are to some degree represented by the EEOC,"*EEOC v. Morgan Stanley,* 206 F.Supp.2d at 561, and placed some limitations on the defendant's permissible communications with class members to protect the claimants "from the potential influences inherent in their employment status."*Id.* at 562.

"[A]n order limiting communications between parties and potential class members should be *based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties....* [S]uch a weighing-identifying the potential abuses being addressed-should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances."*Coercion of potential class members by the class opponent may exist if both parties are "involved in an ongoing business relationship."*Courts have found the danger of such coercion *between employers and employees* sufficient to warrant the imposition of restrictions regarding communication between defendants and potential class members.

**\*6***Id.* (quoting *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101-02 (1981); *Ralph Oldsmobile, Inc. v. General Motors Corp.,* 2001 WL 1035132, at *3 (S.D.N.Y. Sept. 7, 2001)) (citing *Bublitz v. E.I. duPont de Nemours & Co.,* 196 F.R.D. 545, 547 (S.D.Iowa 2000); *Abdallah v. Coca-Cola Co.,* 186 F.R.D. 672, 678-79 (N.D.Ga.1999); *EEOC v. Mitsubishi Motor Mfg.,* 960 F.Supp. at 168) (emphasis added).

In the instant case, the EEOC has not provided any evidence that any potential claimant has consented to be represented by the EEOC or considers the EEOC's attorneys to be his attorneys. On this record and based on the well-reasoned case law, the court cannot find that the EEOC is entitled to the benefits of the attorney-client privilege or to invoke Louisiana Rule of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 737
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.))**

Professional Conduct 4.2, except as to the five named charging parties.

Moreover, the EEOC is suing on behalf of job applicants who were *denied employment* with TIC. TIC states at one point in its memorandum that "the large majority of [the 131 identified potential claimants] are *not* TIC employees," Record Doc. No. 95, defendant's memorandum at p.4 (emphasis added), and at another point that *none* of the potential claimants are TIC employees. *Id.*at p.6. The EEOC has failed to identify any particular danger or abuse that might arise from TIC's proposed contacts with non-employees. In *Abdallah v. Coca-Cola Co.,* 186 F.R.D. 672 (N.D.Ga.1999), a race discrimination class action brought by current employees under Rule 23 and a case cited by the EEOC, the court found "an inherent danger" that internal communications from defendant to its employees about the lawsuit or direct contacts with employees about the lawsuit "could deter potential class members from participating in the suit out of concern for the effect it could have on their jobs."*Id.* at 678-79.

Non-employees are not subject to this inherent danger or concern for their jobs. In *EEOC v. Morgan Stanley,* 206 F.Supp.2d at 563, the court allowed defendant to contact its own employees who had *not* affirmatively agreed to join the EEOC's lawsuit, subject to some informational restrictions on the contacts because of the inherent possibility of coercive communication with current employees. In *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742 (4th Cir.1998), the Fourth Circuit upheld a protective order in a Rule 23 class action brought by African-American current and former employees, which prohibited defendant from engaging in ex parte communications about the lawsuit with its *current* employees only. *Id.* at 764.

Accordingly, I find that the EEOC has not carried its burden to show that it is entitled to invoke the attorney-client privilege or Rule of Professional Conduct 4.2 to prevent defendant from contacting potential claimants other than the five named charging parties, who apparently filed charges of discrimination with the EEOC. However, the court instructs defendant that, in its contacts with potential claimants, it must inform the claimants that the EEOC has brought this action; summarize the claims in the action; advise the claimants that they may, but are not required to, join in the action; and tell them that they may contact the EEOC for additional information. TIC may discuss with potential claimants only the facts of the case and must not in any way attempt to influence them about joining this action or bringing a separate action. If any of the potential claimants is a current employee of TIC, TIC must in addition advise the employee that it is unlawful for TIC to retaliate against him for participating in the lawsuit.

**\*7** Finally, for essentially the same reasons, the EEOC has not carried its burden under Fed.R.Civ.P. 26(b)(3) to show that the questionnaires returned to it by the 131 listed, potential claimants were prepared in anticipation of litigation *by or for a party or a party's representative,* except as to the five named charging parties. TIC has attached a blank questionnaire form to its opposition memorandum. Defendant's Exh. B. The questionnaire does not ask the respondents to indicate in any way whether they wish to be represented by the EEOC in this action. The form's stated purpose is to determine "your legitimacy" as a potential claimant, *id.*at p.1, and the 19 numbered questions address personal information and the facts upon which a claim might be

Not Reported in F.Supp.2d                                                                                   Page 8
Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 737
**(Cite as: Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.))**

based. At the end of the questionnaire, the EEOC asks the respondents to answer "yes" or "no" as to whether they want to receive payment from a settlement fund, if one is awarded. *Id.*at p.5. Although this question might obliquely indicate a claimant's desire to have the EEOC represent him, the EEOC has not provided the court with any evidence that any potential claimants have responded "yes" to that question.

Accordingly, IT IS ORDERED that plaintiff's motion for protective order is DENIED IN SUBSTANTIAL PART, subject to the conditions contained herein, AND GRANTED IN LIMITED PART, only to the extent that communications between the EEOC and the five named charging parties are protected by the attorney-client privilege and that defendant may not contact these five persons ex parte.

E.D.La.,2002.
U.S. E.E.O.C. v. TIC-The Indus. Co.
Not Reported in F.Supp.2d, 2002 WL 31654977 (E.D.La.), 90 Fair Empl.Prac.Cas. (BNA) 737

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Date of Printing: JUL 15,2008

## KEYCITE

**C** U.S. E.E.O.C. v. TIC-The Indus. Co., 2002 WL 31654977, 90 Fair Empl.Prac.Cas. (BNA) 737 (E.D.La., Nov 21, 2002) (NO. CIV.A. 01-1776)

### History

=>     1 **U.S. E.E.O.C. v. TIC-The Indus. Co.,** 2002 WL 31654977, 90 Fair Empl.Prac.Cas. (BNA) 737 (E.D.La. Nov 21, 2002) (NO. CIV.A. 01-1776)

### Court Documents

### Dockets (U.S.A.)

**E.D.La.**

     2 EEOC v. TIC THE INDUS CO, ET AL, NO. 2:01CV01776 (Docket) (E.D.La. Jun. 11, 2001)

### Citing References

### Positive Cases (U.S.A.)

★★   Cited

⚑     3 Vines v. University of Louisiana at Monroe, 398 F.3d 700, 708, 95 Fair Empl.Prac.Cas. (BNA) 144, 144 (5th Cir.(La.) Jan 28, 2005) (NO. 03-31172) "

**H**     4 E.E.O.C. v. Collegeville/Imagineering Ent., 2007 WL 158735, *2+, 100 Fair Empl.Prac.Cas. (BNA) 154, 154+, 89 Empl. Prac. Dec. P 42,673, 42673+ (D.Ariz. Jan 17, 2007) (NO. CV 05 3033 PHX DGC)

⚑     5 E.E.O.C. v. Joslin Dry Goods Co., 2006 WL 1215386, *1 (D.Colo. May 05, 2006) (NO. CIV.A. 05-CV-00177WD)

### Secondary Sources (U.S.A.)

     6 Attorney-Client Privilege in the U.S., 2d s 11:1, s 11:1. Standing (2008)

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

**c**

7 14 Wright & Miller: Federal Prac. & Proc. s 3653, s 3653. Actions Brought by the United States--Illustrative Cases (2008)

8 EEOC CLASS ACTION LITIGATION Workplace discrimination can have far-reaching effects, so it is only natural that the EEOC can seek class-wide remedies. But there are important ethical considerations for EEOC and defense a, 19 NO. 2 Prac. Litigator 39, 43+ (2008)

## Court Documents

### Appellate Court Documents (U.S.A.)

**Appellate Petitions, Motions and Filings**

9 Sidley Austin LLP v. U.S. E.E.O.C., 2006 WL 4833631, *4833631+ (Appellate Petition, Motion and Filing) (U.S. May 18, 2006) **Petition for a Writ of Certiorari** (NO. 05-1481) " ★★★

### Trial Court Documents (U.S.A.)

**Trial Motions, Memoranda and Affidavits**

10 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et. al., Plaintiffs, v. INTERNATIONAL PROFIT ASSOCIATES, INC., Defendant., 2004 WL 1685829, *1685829 (Trial Motion, Memorandum and Affidavit) (N.D.Ill. Jun 28, 2004) **International Profit Associates, Inc.'s Response ...** (NO. 01C4427) ★★

11 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., Plaintiffs, v. INTERNATIONAL PROFIT ASSOCIATES, INC., Defendant., 2004 WL 5546002, *5546002+ (Trial Motion, Memorandum and Affidavit) (N.D.Ill. Jun 22, 2004) **Plaintiff EEOC's Objections to Magistrate Judge's ...** (NO. 101CV04427) ★★

12 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, v. CATERPILLAR INC., Defendant., 2004 WL 1607861, *1607861+ (Trial Motion, Memorandum and Affidavit) (N.D.Ill. Apr 02, 2004) **Defendant Caterpillar's Response to EEOC's ...** (NO. 03C5636) ★★

13 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, Marion Towson, Plaintiff-Intervenor, v. INTERNATIONAL PROFIT ASSOCIATES, INC., Defendant., 2004 WL 1685825, *1685825 (Trial Motion, Memorandum and Affidavit) (N.D.Ill. Feb 06, 2004) **International Profit Associates, Inc.'s Reply in ...** (NO. 01C4427) ★★

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.

14 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., Plaintiffs, v. INTERNATIONAL PROFIT ASSOCIATES, INC., Defendant., 2004 WL 1685816, *1685816 (Trial Motion, Memorandum and Affidavit) (N.D.Ill. Jan 27, 2004) **EEOC's Response to Defendant International Profit ...** (NO. 01C4427) ★★

15 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, v. THE DIAL CORPORATION, Defendant., 2005 WL 1217948, *1217948 (Trial Motion, Memorandum and Affidavit) (S.D.Iowa Mar 14, 2005) **Defendant's Brief Regarding Post-Trial Damages ...** (NO. 3-02-CV-10109) ★★

16 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, v. DIAL CORPORATION, Defendant., 2005 WL 851355, *851355 (Trial Motion, Memorandum and Affidavit) (S.D.Iowa Mar 11, 2005) **Eeoc Brief Regarding Remedies** (NO. 302-CV-10109) ★★

17 EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff, v. THE DIAL CORPORATION, Defendant., 2004 WL 3267293, *3267293 (Trial Motion, Memorandum and Affidavit) (S.D.Iowa Mar 14, 2004) **Defendant's Brief Regarding Post-Trial Damages ...** (NO. 3-02-CV-10109) ★★

18 In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION., 2008 WL 2164613, *2164613 (Trial Motion, Memorandum and Affidavit) (E.D.La. Apr 29, 2008) **Memorandum of Lafarge North America Inc. In ...** (NO. 205CV04182) ★

19 EXECUTIVE RISK INDEMNITY INC., Plaintiff and Defendant-in-CounterClaim, v. MCLEOD REGIONAL MEDICAL CENTER OF THE PEE DEE, INC., Defendant and Plaintiff-in-CounterClaim., 2004 WL 1876829, *1876829 (Trial Motion, Memorandum and Affidavit) (D.S.C. Jul 12, 2004) **Memorandum in Support of Plaintiff's Motion for a ...** (NO. 403-430-25) ★★

© Copyright 2008 West, Carswell, Sweet & Maxwell Asia and Thomson Legal & Regulatory Limited, ABN 64 058 914 668, or their Licensors. All rights reserved.