## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL | * | |
| BREACHES | | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*      05-5531 | * | |
| *Mumford v. Ingram*   05-5724 | * | |
| *Lagarde v. Lafarge*    06-5342 | * | JUDGE |
| *Perry v. Ingram*         06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*       06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAGISTRATE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

### LAFARGE NORTH AMERICA INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND/OR WITHDRAW ADMISSION DEEMED MADE DUE TO LAPSE OF DEADLINE FOR RESPONDING AND/OR FOR EXTENSION OF TIME TO RESPOND

Plaintiffs failed to file timely responses to Requests for Admissions. (Rec. Doc. 13724).   Now that the admissions are deemed admitted, plaintiffs have filed a motion for leave to amend and/or withdraw admissions.  Lafarge North America Inc. ("LNA") opposes plaintiffs' motion.

First, plaintiffs' motion misstates the governing legal standard by failing to recognize that their own unexcused lassitude is a factor to be weighed by the Court in evaluating their motion.  Second, plaintiffs have failed to satisfy their burden of showing that withdrawal of each deemed admission would serve the presentation of the merits of this action; instead, as a review of the specific admissions makes clear, plaintiffs seek to

replace many of the deemed admissions with inadequate, improper and unsupported responses that fail to advance the presentation of the merits.  Third, permitting wholesale withdrawal as plaintiffs propose will prejudice LNA in preparing to defend itself against the individual claims of plaintiffs who failed to respond – many of whom have provided *no* discovery, months after having been ordered to do so by this Court.  Fourth, plaintiffs make no attempt to defend their dilatory conduct which has resulted in their failure to adhere to the Court's deadlines.  Finally, as to plaintiffs who moved for an "extension" of their time to respond (having failed to respond even as of the time plaintiffs filed their motion), such relief has no basis in the rules, and there is no reason to award it, particularly given that these same plaintiffs have defaulted on other discovery obligations ordered by this Court.

## BACKGROUND

On October 12, 2007, in compliance with this Court's Case Management Order No. 5 (Rec. Doc. 7724), LNA (together with Zito) propounded requests for admissions along with other written discovery to all named plaintiffs in the "Barge" track litigation, which consists of six consolidated cases: *Mumford*, *Boutte*, *Benoit*, *Parfait*, *Lagarde*, and *Perry*.  Case Management Order No. 5 specifically required that "written discovery directed to each individual plaintiff must be answered individually."  Rec. Doc. 7724 at 8.  On December 7, 2007, after the Court had extended the response date at plaintiffs' request, LNA counsel reminded plaintiffs' counsel by letter of their obligation to provide a response for each individual plaintiff in each of the consolidated actions.[1]

Plaintiffs' counsel did not respond to LNA's letter.  Rather, on December 26, 2007, two days before the extended due date, plaintiffs' counsel contacted LNA counsel

by telephone to advise that plaintiffs would only be able to provide timely responses for a handful of the individual plaintiffs who had filed suit against LNA.[2]  Plaintiffs' responses to LNA's requests, served on December 28, 2007, made clear that the responses were made only on behalf of the *Mumford* class representative plaintiffs, and *not* on behalf of the much longer list of "named individual non-representative plaintiffs," as to whom plaintiffs promised to "supplement to include their responses as soon as possible."[3] Ultimately, counsel for LNA agreed to February 15, 2008, as a deadline for the missing responses from the remaining individual plaintiffs.[4]  However, plaintiffs did not provide *any* additional responses to LNA's requests for admissions by the February 15 deadline. Thus, by operation of Fed. R. Civ. P. 36(a)(3), the requests were deemed admitted by all plaintiffs who had failed to respond.

In March 2008, LNA moved to compel responses to its interrogatories and document requests, while noting that unanswered requests for admissions were deemed admitted.  Rec. Doc. 11666-2 at 9 n.23.  Thereafter, on April 4, 2008, three of the *Lagarde* plaintiffs and one *Parfait* plaintiff (McFarland) responded minimally to the requests for admissions.  (Rec. Doc. 13738-5).  On April 14, 2008, the *Benoit* plaintiffs supplied responses on their own behalf.  (Rec. Doc. 13738-6).  Neither of these groups of plaintiffs sought, however, to withdraw the deemed admissions as required by Fed. R. Civ. P. 36(b).  The remaining plaintiffs, including the *Perry* group, several Lagarde plaintiffs, the *Boutte* group, and the remaining *Parfait* group, did not respond at all to the

---

[1] Rec. Doc. 11666-2, Exh. 3.
[2] Contrary to plaintiffs' current motion (at 1), plaintiffs did not "object" that "only designated class representatives should be subject to written discovery."  Any such objection would have been frivolous given the Court's case management order that discovery was required from "each individual plaintiff." Plaintiffs' failure to timely respond was *not* the result of a valid objection (or even an invalid one).
[3] Rec. Doc. 13738-4 at 4.
[4] See Rec. Doc. 11666-2 at 4; Rec. Doc. 12328 at 3.

requests at that time.  In their opposition to LNA's motion to compel, plaintiffs asked the Court to "allow[] them the opportunity to supply superceding responses in the future upon a showing of good cause for past failures to do so."  Rec. Doc. 12328 at 16.

On April 29, 2008, this Court granted LNA's motion to compel responses to interrogatories and document requests.  Rec. Doc. 12824.  In that order, the Court held that any requests for admissions not timely answered were deemed admitted by operation of law, and called upon the plaintiffs to file a motion to withdraw the admissions under Rule 36(b) if they so desired.  Rec. Doc. 12824 at 8.  However, rather than providing full responses and promptly moving to withdraw the deemed admissions, the plaintiffs waited over two months – until July 7, 2008 – to bring their motion.  Even then, many individual plaintiffs had failed to supply any responses to the requests for admissions.[5]

Because of the exceptionally late responses by the *Lagarde* plaintiffs, the *Benoit* plaintiffs, the *Perry* plaintiffs, and the *Parfait* plaintiffs, Daniel Weber and Kevin McFarland, and the complete failure to respond by the *Boutte* plaintiffs and the rest of the *Parfait* plaintiffs, all of these individual plaintiffs have been properly deemed to have admitted all the requests for admissions propounded by the defendants nine months ago. Plaintiffs' attempt to reverse that consequence of their dilatory conduct through the present motion, especially in order to replace deemed admissions with responses that amount to incomplete and evasive answers and that highlight the inadequate character of their discovery, is unacceptable at this point in the litigation and should be denied.

_____

[5] On July 11, 2008, three days after filing their motion, plaintiffs purported to supply yet another set of late responses, this time in the name of the *Perry* plaintiffs, Jimmie and Nellie Perry; the remaining *Lagarde* plaintiffs, Jocelyn Moses, Jocelyn Carter, and Anthony Dunn; and a single *Parfait* plaintiff, Daniel Weber.

ARGUMENT

**A. Plaintiffs' motion misstates the governing legal standards.**

In arguing that the Court should allow them to withdraw their deemed admissions, plaintiffs rely on an incomplete statement of the governing legal standards. Citing *Le v. Cheesecake Factory Restaurant, Inc.*, No. 06-20006, 2007 WL 715260, at *2 (5th Cir. Mar. 6, 2007), plaintiffs argue (at 6) that the Court should grant their motion if (1) they can show that "presentation of the merits of the action will be subserved" and (2) LNA "fails to satisfy the court that withdrawal or amendment will prejudice" its defense. See also Fed. R. Civ. P. 36(b). Under Rule 36(b), the Court "may" permit withdrawal or amendment if these two conditions are satisfied (but not otherwise). However, as the Fifth Circuit has emphasized, "even when Rule 36(b)'s two-factor test has been satisfied, the district court 'still has discretion to deny a request to withdraw or amend an admission.'" *Le,* 2007 WL 715260, at *2 (quoting *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001)).

The Fifth Circuit has made clear that, in conducting this analysis, "a court acts within its discretion in considering the fault of the party seeking the withdrawal." *Id.* at *3. Thus, in an earlier ruling in the MRGO action, this Court conducted a searching review of the diligence of the party seeking to withdraw a series of deemed admissions, and concluded that the admissions should be withdrawn based in part on a determination that the party seeking withdrawal had acted diligently. Rec. Doc. 6592 at 12. In their opposition to LNA's motion to compel, plaintiffs asked the Court for "the opportunity to supply superceding responses [to the requests for admissions] in the future ***upon a***

---

The remainder of the individual plaintiffs, including the *Boutte* plaintiffs and remaining *Parfait* plaintiffs, have never purported to respond to LNA's requests for admissions.

***showing of good cause for past failures to do so***." Rec. Doc. 12328 at 16 (emphasis added). Thus, plaintiffs have recognized that the legal standard on withdrawn admissions considers not only whether the merits will be served and whether the other party has been prejudiced, but also the fault of the party seeking withdrawal.

We address each of these three criteria below and demonstrate that they do not favor the relief sought in plaintiffs' motion.

### B. Plaintiffs Have Not Met Their Burden of Showing that Withdrawal Would Advance the Presentation of the Merits as to Each Deemed Admission.

It is the plaintiffs' burden to show that the withdrawal of admissions will support presentation of the merits of the case. Among the factors to be considered are whether the admission is "contrary to the record in the case" or is "no longer true" or is the product of an "honest error." *Le, 2007* WL 715260, at *2. Plaintiffs make no real attempt to argue, on a request-by-request basis, that the presentation of the merits would be aided by the withdrawal of the admission and substitution of the proposed response. Instead, plaintiffs recite a partial list of the deemed admissions (at 4) and then argue -- as a general matter (at 8-9), and without citation to any record evidence -- that the presentation of the merits would be aided if all of the deemed admissions are allowed to be withdrawn en masse. This shotgun approach completely fails to satisfy plaintiffs' burden as to any particular admission, or as to the deemed admissions as a group.[6]

---

[6] *Republic Savings Bank v. U.S.*, 57 Fed. Cl. 73, 75 (Fed. Cl. 2003) (denying motion to withdraw and amend when "[moving party] failed to offer any evidence tending to support the proposition that the original admissions were erroneous"); *Ropfogel v. U.S.*, 138 F.R.D. 579, 583 (D. Kan. 1991) (denying motion to withdraw when "[the moving party] has made no showing that the admissions are contrary to the record, that they are no longer true, or that they were made through error on the part of previous counsel"); *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 123 F.R.D. 97, 103 (D. Del. 1998) (providing an in depth analysis of the presentation of the merits prong based on what the revised response would be).

Indeed, consideration of the individual responses that plaintiffs seek to substitute for their deemed admissions demonstrates how far from the mark plaintiffs' motion really is.  As we discuss below in detail, many of plaintiffs' belated responses are incomplete, evasive, or non-responsive.[7]  It cannot be argued that replacing deemed admissions with defective responses supports the presentation of the merits.  Furthermore, many of the proposed responses are simply contrary to the record in the case and unsupported by any diverging evidence, making withdrawal unwarranted.  Although the burden is on plaintiffs to support the withdrawal of their responses on a request-by-request basis, rather than the other way around, we address the requests individually to show the withdrawal should not be permitted.

Request No. 6:  This request seeks an admission that the center of Hurricane Katrina was south and east of New Orleans at all time prior to 8:00 a.m. on August 29, 2005.  The *Lagarde/McFarland* plaintiffs admit the request as of 5:30 a.m. but not thereafter,[8] while the *Benoit* plaintiffs say they can neither admit or deny this request.[9]  However, plaintiffs' own experts, Don Green and Melvin Spinks, have each opined that the center of the storm was south and east of New Orleans as of at least 6:00 a.m. local time and did not make landfall on the Mississippi Coast until 9:45 a.m. local time.[10]  Plaintiffs cannot plausibly argue that their admissions should be withdrawn when their own evidence contradicts their proposed responses.  *See Le*, 2007 WL 715260, at *2.

Request No. 9:  This request seeks an admission that the retaining wall on the east side of the Inner Harbor Navigation Canal was breached in at least one location before

---

[7] In addition to opposing the withdrawal of the deemed admissions, LNA reserves the right to seek a ruling that the responses of those plaintiffs who timely responded are defective for reasons discussed herein.

[8] Rec. Doc. 13738-5 at 1 (adopting other plaintiffs' responses); Rec. Doc. 13738-4 at 6 (adopted response).

[9] Rec. Doc. 13738-6 at 4.

the barge made contact with the wall.  Plaintiffs seek to replace their deemed admissions with a series of meritless objections, followed by a denial in relevant part asserting that "there were no breaches until the barge caused the North breach."[11]  Plaintiffs' motion states (at 8), without citation to any evidence, that their deemed admission is contrary to the record in the case because "witnesses throughout the Lower Ninth Ward contend that they saw or heard the barge breach the floodwall."  Insofar as it concerns the North Breach of the floodwall, that assertion is patently false.  Plaintiffs' assertion that the barge caused the North Breach is based on *one single purported eyewitness* who said he saw what "appeared to be a piece of steel, appeared to be a barge," but who admitted he had "fuzzy" long-distance vision and could not tell the color, length, width, or shape of the object – that is, he "couldn't tell what it was."[12]  In contrast to this equivocal testimony, the record reveals that every independent expert investigation to consider the issue has found the barge did *not* cause any breaches in the floodwall, or has ascribed the breaches to other causes.[13]  Thus, while the deemed admission of this request is certainly inconsistent with the position the plaintiffs wish to take, it cannot be said to be "contrary to the record."

Request No. 10:  This request asks plaintiffs to admit that "there was flooding to the rooftops of at least some homes in the Lower Ninth Ward before 6:10 a.m. on the

---

[10] See Exh. 1 at 3(excerpt of report of Don Green); Exh. 2 at 7-8 (excerpt of report of Melvin Spinks).

[11] Rec.. Doc. 13738-4 at 7-8; Rec. Doc. 13738-5 at 1; Rec. Doc. 13738-6 at 5.

[12] Exh. 3 (William Villavaso deposition at 202-04, 210-11).  Plaintiffs refer to testimony of unspecified persons who supposedly "heard the barge" but cite no such testimony; in fact, people heard noises at one or more locations but none conclusively linked the noises to a barge.

[13] See I. van Heerden et al., *The Failure of the New Orleans Levee System during Hurricane Katrina* at 67 (barge "clipped the end of the already formed breach as it was sucked through"); R.B. Seed et al., *Investigation of the Performance of the New Orleans Flood Protection Systems in Hurricane Katrina* at 6-7 (barge "slipped its moorings and was drawn in through a breach that was already well developed"); Interagency Performance Evaluation Task Force, *Performance Evaluation of the New Orleans and*

morning of August 29, 2005." Plaintiffs seek to replace their deemed admission with a response that they "cannot admit or deny this request" because "there is conflicting evidence" as to the time of the North Breach, or because "[n]o *Benoit* plaintiffs were present throughout the entire geographic location."[14] The *Benoit* plaintiffs' answer is a non-answer; the request is not about the "entire geographic location," but rather "at least some locations" within the class area. There is no reason for the Court to allow them to withdraw their admission to assert an answer that is not responsive to the request. As to the remaining plaintiffs, their concession that "there is conflicting evidence" precludes a finding that the admission is "contrary to the record," and indeed their own expert appears to agree with the deemed admission.[15]

Request No. 12: This request seeks an admission that "barges struck floodwalls without causing the walls to be breached." Both sets of plaintiffs seek to withdraw their deemed admissions in favor of an answer that they "can neither admit nor deny the request" because they "do not know whether other barges struck any floodwalls."[16] Plaintiffs' lack of knowledge precludes them from arguing that the admission is "contrary to the record in the case." Further, such an argument would be impossible to make given that the IPET report contains numerous images of barges that struck and landed on floodwall structures without breaching those structures.[17] Withdrawal has been denied where the party could have accessed publicly-available information with due diligence.[18]

---

*Southeast Louisiana Hurricane Protection System* (March 2007) at V-79, 80 (ascribing failures to overtopping and loss of soil support) (available at https://ipet.wes.army.mil).
[14] Rec. Doc. 13738-5 at 1 (adopting other plaintiffs' responses); Rec. Doc. 13738-4 at 8-9; Rec. Doc. 13738-6 at 6..
[15] Exh. 4 at 22 (Spinks report regarding timing and depth of flooding).
[16] Rec. Doc. 13738-5 at 1 (adopting other responses); Rec. Doc. 13738-4 at 9; Rec. Doc. 13738-6 at 6.
[17] Exh. 5 (IPET Report Figures 14-102, 14-103, 14-109, 14-110, and 14-111)
[18] *Branch Banking & Trust Co. v. Deutz-Allis Corp.*, 120 F.R.D. 655, 660 (E.D.N.C. 1988) (cited in *Le*, supra, at *3).

Request No. 14:  This request seeks an admission that flooding due to levee and floodwall breaches would have occurred in the proposed class area whether or not the barge had broken free from its moorings.  Plaintiffs' proposed responses are really non-responses.[19]  In any event, their own expert Melvin Spinks has submitted a report that appears to show that the proposed class area would have flooded to depths in excess of ten feet even had there been no breaches along the IHNC.[20]  The deemed admission is not "contrary to the record" in this case.

Request No. 16:  This request asks plaintiffs to admit that no experts, other than those retained by the plaintiffs or their counsel, have concluded that the barge caused the IHNC floodwall breach(es).  Both groups of plaintiffs seek to withdraw their deemed admission and replace it with a denial, with one group explaining that "Professor Bea has opined that the barge cause the IHNC floodwall breach(es)."[21]  But the record in the case shows that Professor Bea has concluded the barge did ***not*** cause any of the floodwall breaches.[22]

Request No. 20:  This request asks plaintiffs to admit that barges other than the ING 4727 broke away from their moorings during Katrina from locations other than the LNA terminal on the IHNC.  Both groups of plaintiffs asserted a variety of meritless objections before admitting the request, in equivocal terms.[23]  Given the unassailable photographic evidence of other breakaways, see Exh. 5 (IPET excerpts), there is no point

---

[19] Rec. Doc. 13738-5 at 1 (adopting other  responses); Rec. Doc. 13738-4 at 10; Rec. Doc. 13738-6 at 7.
[20] Exh. 6 at 25-26 (excerpts from Spinks report).
[21] Rec. Doc. 13738-5 at 1 (adopting other  responses); Rec. Doc. 13738-4 at 11; Rec. Doc. 13738-6 at 7.
[22] Rec. Doc. 12546-4 (Bea declaration from 2008 regarding causes of breaches); Rec. Doc. 11031, Exh. 31 at 50-51 (Bea declaration dated September 17, 2007 opining that barge impact did not cause breach) (excerpts attached hereto as Exhibit 7).
[23] Rec. Doc. 13738-5 at 1 (adopting other  responses); Rec. Doc. 13738-4 at 12; Rec. Doc. 13738-6 at 8.

in permitting plaintiffs to interpose meritless objections and equivocal responses instead of their deemed admissions.

Request No. 21:  This request seeks an admission that "the USCG Port Contingency Plan is not a statute and not a regulation."  The *Benoit* plaintiffs are prepared to admit the request,[24] but their proposed response includes excess verbiage that would have to be stricken had it been included in a timely response.[25]  The proposed response of the other plaintiffs (*Lagarde/McFarland)* is even worse – it asserts meritless objections and then does not even answer the request as propounded by LNA.  Instead of admitting that the Port Contingency Plan is not a statute or regulation, as the *Benoit* plaintiffs did, these plaintiffs seek to deny the request on the ground that "parts of the [Plan] incorporate elements of Coast Guard regulations" and that "all parts at least establish a standard of care."[26]  That response, of course, does not "fairly respond to the substance" of LNA's request, which asks for an admission that the Plan is not itself a statute and is not itself a regulation.  Fed. R. Civ. P. 36(a)(4).  The Court should not permit the withdrawal of the deemed admission in favor of a defective non-response.

Request No. 24:  This request asks for an admission that "the contributing negligence of a plaintiff or class member is an individual rather than a common issue." Plaintiffs seek to replace their deemed admission with a meritless objection and then a denial on the ground that "maritime law governing fault and liability is classwide in application."[27]  This proposed response is non-responsive and contrary to the record.  The question is not whether maritime law governs the claims of all class members, as

---

[24] Rec. Doc. 13738-6 at 8-9.
[25] Rec. Doc. 12605 at 4 ("explanations" and "arguments" are stricken from responses).
[26] Rec. Doc. 13738-5 at 1 (adopting other  responses); Rec. Doc. 13738-4 at 12.
[27] Rec. Doc. 13738-5 at 1 (adopting other  responses); Rec. Doc. 13738-4 at 13; Rec. Doc. 13738-6 at 9.

plaintiffs assert, but rather whether each individual plaintiff's or class member's contributing negligence is an issue that must be addressed, as the Fifth Circuit has required as a matter of maritime law.[28]  Plaintiffs' proposed denial is not responsive to LNA's request and is not consistent with the law on which it purports to rely, and thus the proposed denial should be rejected in favor of the deemed admission.

   Request No. 28:  This request seeks an admission that the degree to which a particular floodwall breach contributed to the damage suffered at a given location is different at different locations within the class area.  The *Lagarde/McFarland* plaintiffs seek to withdraw their deemed admission and instead say that they are "unable to admit or deny" because "the damage from the South breach alone may have been sufficient to destroy the entire value of the property in the class area."[29]  But the request does not ask whether the South breach "may have been sufficient" to cause anything – it asks whether the different breaches that ***did***  occur contributed differently to the damage at different locations.  Further, plaintiffs have admitted that the North Breach occurred first,[30] and its contribution is different from that of the South Breach, which was a separate event..  Plaintiffs' evasive non-response to this request should not be accepted.[31]

   Request No. 29:  This request seeks an admission that causation of personal injury is an individual issue.  Both groups of plaintiffs seek to replace their deemed admission with a denial "as to this litigation," with the *Lagarde/McFarland* plaintiffs explaining that "no personal injury would have occurred" if not for the barge.  Again, this is an

---

[28] *National Marine Serv., Inc. v. Petroleum Serv. Corp.*, 736 F.2d 272, 276 (5th Cir. 1984) (plaintiff's fault "must be compared with  the fault of the … defendant").

[29] Rec. Doc. 13738-5 at 1 (adopting other  responses); Rec. Doc. 13738-4 at 10-11.

[30] Rec. Doc. 13738-6 at 6-7 (response to RFA No. 4).; Rec. Doc. 13738-6 at 4 (same).

[31] The *Benoit* plaintiffs seek to withdraw their admission and simply deny this request.  Rec. Doc. 13738-6 at 10-11.  Because these plaintiffs' deemed admission is not "contrary to the record" for the reasons just discussed, this withdrawal likewise should not be permitted.

evasive response because the question is not simply whether the barge played any role in causing any injuries, but whether the various causal factors that contributed to any given plaintiff's personal injuries (including that plaintiff's own fault) must be evaluated individually. Other individual issues that must be evaluated include whether a claimed injury was, in fact, a pre-existing injury that had nothing to do with Katrina; and whether a claimed injury that developed after the storm was, in fact, too attenuated to be causally-related to the flooding. Plaintiffs' non-responsive responses do not fairly meet the substance of LNA's request, and their deemed admissions are not contrary to the record. For both of these reasons, the withdrawal should not be permitted.

Request No. 30: This request seeks an admission that damages is an individual issue rather than a common issue. The *Lagarde* plaintiffs' own brief demonstrates that their deemed admission is the proper response to this request. They assert in their brief (at 5) that the barge "smashed into their home on Jourdan Avenue." Assuming the truth of that assertion, the barge obviously affected these plaintiffs in a unique way not common with other members of the proposed class. Their attempted denial of this request, and the attempted denial of other plaintiffs, is not consistent with the record; rather, the deemed admission is the only response that is consistent with the record, and it should not be disturbed.

Request No. 32: This request seeks an admission that some members of the proposed class have chosen to sue other entities for flood-related damages and have not included the barge in their suits. Plaintiffs seek to replace their deemed admissions with responses that include meritless objections and evasive admissions ("admitted that some class members have filed insurance claims") or that assert lack of knowledge regarding

what "unknown or unidentified persons have done." [32]  These responses cannot be accepted.  To begin, the lawyers for the *Benoit* plaintiffs have actually *filed* litigation on behalf of certain plaintiffs, seeking recompense for flood damage, against the United States but not against the barge entities.[33]  Beyond that, the Court and every other participant in these proceedings is aware of the large number of claimants who have joined the MRGO track and the relatively small number of plaintiffs who have joined the Barge cases, which has left the parties in the MRGO case scrambling to figure out which of the many individual cases can be tried in July 2009 even as the Barge parties are left with a much smaller number of potential candidates.

Request No. 33:  This request seeks an admission that conflicts exist between plaintiffs' counsel in this case and plaintiffs' counsel in the MRGO case (denominated "Katrina" in the request which was formulated before the consolidation).  The plaintiffs have refused to respond to Request No. 33 and object to it based on ambiguity of the terms used to distinguish the "Barge" track case from other cases regarding Katrina damage.  However, they have admitted through their own prior pleading that "[a]nticipated consolidation in the Consolidated Levee Breach Litigation, which is based upon other causes for the floodwall failure, … would create *numerous conflicts of interest* between attorneys and litigants, no matter their status as plaintiff or defendant."[34]  At that point they were not confused by the terminology, which is essentially the same as used by LNA, and admitted to the conflict, which is the subject of Request No. 33.  Their

---

[32] Rec. Doc. 13738-5 at 1; Rec. Doc. 13738-4 at 16; Rec. Doc. 13738-6 at 11.
[33] See Complaint in *Tommaseo v. United States*, No. 05-1119 (U.S. Court of Federal Claims, October 17, 2005) (suit by Maples & Kirwan, the same firm representing the *Benoit* plaintiffs, seeking recovery from the United States for flood-related damages).
[34] Rec. Doc. 781-2 in No. 05-4419 (emphasis added).

deemed admissions are not contrary to the record in the case; rather their proposed objections and denials are contrary to the record.

Request No. 37:  This request seeks an admission that members of the proposed class who lost their homes in Hurricane Katrina have an interest in individually controlling the prosecution of their claims.  The *Lagarde/McFarland* plaintiffs seek to withdraw their deemed admissions and, after asserting meritless objections and ambiguous partial admissions, seek to deny the request on the ground that "no class members have amounts at stake that would justify the enormous expense of individual litigation."[35]  But the *Lagarde* plaintiffs' own brief demonstrates that this denial is untrue; they have specifically brought their ***own*** lawsuit, asserting ***individual*** claims, and their brief (at 5) complains that they have not received an individualized settlement offer despite their allegation that the barge landed on their house.  Their deemed admission is consistent with the record, not contrary to it.  The *Benoit* plaintiffs, meanwhile, say they cannot admit or deny the request because "all lost their homes … not due to Katrina, but due to ING 4727."[36]  This response is not only unresponsive, it is a non-sequitur.

Request No. 40:  This request seeks an admission that some class members sustained damage due to rain and wind during Hurricane Katrina.  The record in this case clearly reflects that this is so.[37]  Plaintiffs propose to replace their deemed admissions with meritless objections and non-responsive and evasive answers and irrelevant qualifications.  The deemed admissions should be allowed to stand.[38]

---

[35] Rec. Doc. 13738-5 at 1; Rec. Doc. 13738-4 at 19.
[36] Rec. Doc. 13738-6 at 13-14.
[37] See Rec. Doc. 8286 at 16-17, 20-21, 32, 54-55 (collecting anecdotal evidence of wind and rain damage).
[38] The same reasons apply to Request No. 41, which seeks an admission that some class members sustained losses due to looting or other criminal activity.  See Rec. Doc. 8286 at 54.

Request No. 43:  This request seeks an admission that the class includes persons or entities whose property had pre-existing damage when Katrina hit.  Plaintiffs seek to replace their deemed admission with meritless objections and either a grudging admission (in the case of the *Lagarde/McFarland* plaintiffs) or averment of lack of knowledge (as to the *Benoit* plaintiffs).[39]  Nothing in plaintiffs' brief establishes that the deemed admissions are contrary to the record, and the fact that some plaintiffs are prepared to admit the request (albeit with improper extraneous language) militates against their motion.

Request No. 45:  This request seeks an admission that some proposed class members do not have clear title to the property for which damage is claimed.  Plaintiffs assert meritless objections and then include only information as to renters.[40]  But plaintiffs aver that there are thousands of properties in the proposed class area.[41]  It is unfathomable for them to suggest that all of the "owners" of all of these parcels have clear title to the property.  The deemed admissions are more consistent with the record than the proposed substitutes, or at least there is no way for plaintiffs to satisfy their burden of showing to the contrary.

**B.  LNA Will Be Prejudiced By Withdrawal.**

Because plaintiffs have not met their burden of showing that withdrawal of the admissions would serve the presentation of the merits, LNA need not show prejudice in order for the plaintiffs' motion to be denied.  Rather, the prejudice test only arises once plaintiffs have met their burden of showing that withdrawal will advance the presentation of the merits.  Fed. R. Civ. P. 36(b).

---

[39] Rec. Doc. 13738-5 at 1; Rec. Doc. 13738-4 at 22-23; Rec. Doc. 13738-6 at 16.
[40] Rec. Doc. 13738-5 at 1; Rec. Doc. 13738-4 at 23; Rec. Doc. 13738-6 at 16.

If prejudice were to be considered by the Court, however, there are several respects in which granting this motion would prejudice LNA. LNA recognizes, of course, that discovery has not closed in this case, and that this Court has previously declined to find prejudice in circumstances where discovery remained open. Rec. Doc. 6592 at 12. By the same token, plaintiffs' handling of these requests for admissions is part of a pattern of dilatory conduct taken by the plaintiffs throughout the discovery period, which is impairing LNA's ability to prepare these cases for trial according to the schedule set by the Court. LNA's motion for sanctions, which addresses the plaintiffs' violations of this Court's order compelling production of documents and interrogatory responses (Rec. Doc. 13557-2) sets out LNA's position in detail, and we will not repeat it here. The fact remains that the original, Court-ordered deadline for full responses to these requests for admission expired over six months ago. The Court crafted its schedule in the contemplation that written discovery would be completed in an orderly way so that further proceedings could follow. Now, after numerous communications, tolerance of plaintiffs' delays, and orders by this Court, plaintiffs still have not responded at all or have responded inadequately to these requests for admissions. The Court cannot expect this case to move forward as long as plaintiffs are permitted to take one mulligan after another.[42]

The Fifth Circuit has recognized that the prejudice inquiry can include consideration of the timing of the motion of withdrawal as it relates to the diligence of the

---

[41] Rec. Doc. 13166 at 9-11.

[42] There are other recent examples of plaintiffs' dilatory conduct of discovery. On June 24-25, LNA noticed the depositions of several witnesses represented by plaintiffs' counsel and included on plaintiffs' witness list. LNA refrained from serving subpoenas on the representation of plaintiffs' counsel that the witnesses would appear. Several of them, however, did not show up for the deposition, leaving a room full of lawyers including several who had flown in from out of town. See Exh. 8 (transcript of Weber deposition detailing witnesses' failure to appear).

party seeking withdrawal.  *Le*, 2007 WL 715260, at *3.  In *Le*, the Fifth Circuit

considered the months that passed before the filing of the motion to withdraw admissions

as evidence of lack of diligence on the part of the moving party.  *Id.*  Not only have many

months passed since these responses were initially due, but months have also passed

since this Court specifically outlined to plaintiffs how they could rectify the situation they

created by failing to respond to requests for admissions.  *See* Rec. Doc. 12824 at 8.  The

allowance of responses based not on court orders or agreed to timeframes but subject

only to plaintiffs' whims prevents LNA from preparing properly its defense against the

numerous individual plaintiffs.

### C.  Plaintiffs' Dilatory Conduct is Unexcused.

As noted above, the Court is authorized to deny a motion to withdraw admissions

even if the plaintiff satisfies the requirements of Rule 36(b), and in that connection courts

will consider "the fault of the party seeking the withdrawal."  *Le*, 2007 WL 715260, at

*3.  Plaintiffs themselves have acknowledged that a motion to withdraw the admissions

should be accompanied by "a showing of good cause for past failures to do so." Rec.

Doc. 12328 at 16.

Here, plaintiffs have no excuse – none – for their months-long failure to respond

to the requests for admissions.  Nor do they ever seek to excuse their delay of over two

months between the time the Court told them they would have to move to withdraw the

admissions and the actual filing of their motion to withdraw them.

This Court's July 19, 2007 Order allowing the MRGO plaintiffs to amend belated

responses is a point of contrast to the present motion.  There, the Court noted that the

plaintiffs had sought immediately to rectify their error by serving responses to requests to

admit within days of the passage of the deadline, and then moving promptly to withdraw the deemed admissions. Rec. Doc. 6592 at 12. In contrast, the plaintiffs here have been dilatory in their responses, waiting until months after the deadline to respond, and then even more months to move to withdraw the deemed admissions. Accordingly, for this additional reason, plaintiffs' motion to withdraw their deemed admissions should be denied.

### D.  Plaintiffs' Motion for an "Extension" Should Also be Denied.

Even more meritless is plaintiffs' insistence that those plaintiffs who did not respond, even belatedly, should be granted an "extension" to respond to the requests and then to move to have the prior admissions withdrawn. Any motion for extension of time should have been filed before the discovery deadline. *See Buckley v. Donohue Industries, Inc.,* 100 Fed. Appx. 275, 278 (5th Cir. 2004). At this point, these plaintiffs' only remedy is to move to withdraw the deemed admissions by satisfying the requirements of Rule 36(b) as to the specific admissions they seek to withdraw. These plaintiffs have not done so, and cannot do so now.

Moreover, as noted above, most of the *Parfait* plaintiffs have never responded to any discovery of any kind. The *Boutte* plaintiffs have not provided even belated responses to the requests to admit. The *Perry* plaintiffs and three of the *Lagarde* plaintiffs waited until July 11, 2008 – after this motion was filed – to serve what purported to be responses to the requests to admit.[43] The Court should reject out of hand

_____

[43] As of July 14, 2008, these plaintiffs had not served LNA with responses to any interrogatories despite the Court's order requiring them to do so by the end of May 2008. However, plaintiffs' opposition to LNA's motion for sanctions attaches what purport to be interrogatory responses from these plaintiffs. Rec. Doc. 13803-2. Although these responses bear a certificate of service stating they were served on July 7, 2008, that certificate is incorrect. These interrogatory responses were *not* among the documents served on LNA's counsel on July 7, and LNA counsel had never seen them before July 15, 2008. LNA is studying those

these plaintiffs' motion for an "extension of time" to serve responses to requests for admissions that the Court has already held to have been admitted.

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

/s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

**Certificate of Service**

---

responses now to determine whether they comply with the Court's discovery order.  For present purposes, it suffices to say that these plaintiffs' conduct in discovery warrants no special dispensation from the rules.

I do hereby certify that I have on this 15th day of July, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ John D. Aldock_____