# EXHIBIT 7

## DECLARATION OF DR. ROBERT GLENN BEA

Robert G. Bea, under penalty of perjury, states as follows:

1. This Declaration is submitted on behalf of the Plaintiffs in *Robinson v. United States* in connection with the Flood Control Act ("FCA") immunity issues. As detailed below, this Declaration constitutes my FCA expert report concerning the composition of the materials, design, and construction, and the performance during Hurricane Katrina, of the man-made features bordering the Mississippi River- Gulf Outlet (MR-GO). In particular, this Declaration will address: (a) the condition, composition, design, and construction of man-made features along the MR-GO prior to Hurricane Katrina; (b) the performance of those features during and following Hurricane Katrina; (c) engineering forensic studies that provide insights into the reasons for breaches, failures, and overtopping that developed with respect to those features; and (d) the extent to which any of those features constitute hurricane flood protection systems for human population areas according to generally accepted engineering principles and/or the pertinent manuals, guidelines, criteria, and policies of the United States Army Corps of Engineers ("USACE"). I reserve the right to revise and supplement this Declaration in light of the fact that the USACE has not completed production of documents, has not provided Plaintiffs'' counsel with usable electronic copies of numerous documents selected for production, and I have not had the opportunity to review or assess these documents. If called to testify, I could and would testify competently as follows:

2. My Declaration is divided into four sections. Section I provides an overview of my qualifications to serve as an expert on the issues discussed below. Section II provides a summary of the results of engineering forensic observations to determine the causes of the breaches, failures, and overtopping that developed with respect to the man-made features along

1



Figure 30: View of the large barge that entered through the south breach at the east bank of the IHNC at the south end of the Lower 9th Ward (ILIT 2006)

64.     There is a single large dent low on the side of the barge just around the left side of the bow and a pronounced scrape on the bottom of the barge at that same location. Most of the concrete floodwall was failed in extension and flexure, with its reinforcing steel (rebar) fairly extended. There was one single section of wall which clearly evinced a major impact, however, and that was at the extreme southern end of the breach. Figure 31 shows a close-up view of the floodwall at this location. The rebar is compressed and bent, and the concrete crushed at this location. It was the consensus view of our investigation team that the barge had scraped along the wall and then impacted the end of the wall at this location.



Figure 31: View of crushed – impacted – concrete floodwall at the south end of the south breach at the east bank of the IHNC at the Lower 9th Ward (ILIT 2006)

65. As this was the extreme southern end of the very long breach, available evidence and analyses indicate that this impact was not the cause of the breach and failure (ILIT 2006; Team Louisiana 2007; USACE IPET 2007). Instead, the barge was apparently traveling southwards along the IHNC (driven by the prevailing storm winds at that time) and was drawn into the breach by the inflowing waters. The barge did not enter cleanly into the breach, but struck at the south end before passing in. That does not mean that the barge might not have struck the floodwall twice (or more times) before finally impacting the southern end of the breach, but our investigation's view is that there are other modes of failure that would have been expected to fail this section without any need for help from the barge, so that the likelihood is that the barge slipped its moorings and was eventually drawn in through a breach that was already well developed.