UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * * | and consolidated cases |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*  05-5531 | * | |
| *Mumford v. Ingram*  05-5724 | * | |
| *Lagarde v. Lafarge*  06-5342 | * | JUDGE |
| *Perry v. Ingram*  06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*  06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAG. JOSEPH C. WILKINSON, JR. |
| *Lafarge v. USA*  07-5178 | * * | |

# BARGE PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR APPEAL FROM THE MAY 14, 2008, ORDER OF THE MAGISTRATE JUDGE DENYING THEIR MOTION FOR PROTECTIVE ORDER AND DENYING THEIR MOTION FOR RECONSIDERATION OF THE ORDER DENYING DISCOVERY OF PHOTOGRAPHS TAKEN BY LAFARGE NORTH AMERICA, INC., IMMEDIATELY AFTER THE STORM

A.  **Introduction**

Barge Plaintiffs file this Reply Memorandum in order to respond to some specific points raised by defendant Lafarge North America, Inc. ("Lafarge"), and to ask the Court to take judicial notice of the portions of the additional draft transcripts turned over to plaintiffs on May 21, 2008, after the order appealed from, pursuant to the order of the Magistrate Judge from which plaintiffs took their appeal.

The portions in question are identified in ¶¶ 19-21 of the July 15, 2008, Barge Plaintiffs' Memorandum in Support of their Motion for Protective Order Barring Defendant Lafarge North

America and its Counsel From Having any Ex Parte Contact with any Member of the Putative Class the Barge P.S.L.C. Seeks to Represent, Without the Consent of the Barge P.S.L.C. or the Permission of the Court, for Declaratory Relief, and for Other Appropriate Relief (doc. # 13839) ("Plaintiffs' Memorandum in Support of their Class Contacts Motion").  These materials could not have been considered by the Magistrate Judge because they had not yet been turned over at the time of decision and were thus unknown to plaintiffs, but are nevertheless material to the questions raised on the appeal because they confirm and expand.

The Court should, of course, have the benefit of Lafarge's response to the additional materials before ruling on the appeal.  For this reason, plaintiffs have sought to have both this Appeal and plaintiffs' Class Contacts Motion heard together.

No reply is necessary with respect to many of Lafarge's points, and the lack of a reply to any point should not be taken as implying agreement.

### B.     Lafarge Mistakes the Operative Provision of Louisiana RPC 4.3

Lafarge's Opposition makes a great deal of the 2004 change in Louisiana RPC 4.3 deleting the language stating that a lawyer should assume that an unrepresented person does not understand the lawyer's role, and should make a careful explanation.  Lafarge then treated Rule 4.3 as doing nothing more than forbidding active misrepresentation.

This approach is fundamentally incorrect.  Both before and after the 2004 change, Rule 4.3 stated: "When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding."  Lafarge acknowledged this obligation at p. 10 of its Opposition, as did the Magistrate Judge, but ignored the obligation in practice.

Lafarge relies on *In re Tyco Intern. Ltd. Securities Litigation*, 2001 WL 34075721 (D.N.H. No. 00-MD-1335-B, Jan. 30, 2001),[1] as justifying its conduct. The court there stated:

> Defendants claim that plaintiffs violated N.H. Rules of Professional Conduct 4.3 and 8.4 in the language of two messages left on answering machines and in two e-mails. *See* Document no. 34, Exhibits A to D. None of these messages "state or imply" that counsel is disinterested and none contain any misrepresentations. Each identifies that the individual seeking the contact is an investigator for a law firm and that the desired contact involves background research on, or investigating of, Tyco. There is nothing in that to suggest disinterest and it does not constitute a misrepresentation.

The difference between Lafarge's conduct here and plaintiffs' conduct in *Tyco* is sharp. Plaintiff's investigators in *Tyco* revealed that they were working for a law firm. Lafarge's investigators did not reveal that they were working for attorneys. That is a material distinction. That revelation can lead to further questions by interviewees, and a decision not to proceed with the interview. *Tyco* was a securities case, and the interviews in question were of former employees of Tyco and of companies acquired by Tyco. There was no question of attempting to obtain admissions against interest, which was the purpose of the interviews herein. That is a material distinction. Plaintiff's investigators in *Tyco* also revealed that they were investigating Tyco. Potential interviewees knew exactly where they stood and whether they had a stake, and could make decisions based on that knowledge. Here, Lafarge's attorneys' investigators did not reveal the identity of the defendant. In addition, the *Tyco* plaintiffs provided an affidavit explaining their protocol for investigators' contacts with these potential witnesses, and the court relied on the affidavit. Here, Lafarge has failed to produce any similar information. For all of these significant reasons, *Tyco* is distinguishable and does not shield the actions of Lafarge's counsel herein.

The Magistrate Judge's findings, quoted in the Appeal at pp. 1-2, make abundantly clear that

---

[1] Plaintiffs have attached a copy of this decision as Exhibit 1 to this Reply Memorandum.

3

the interviewees did not understand the role of the investigators, that interviewees tried to find out more about the role, and that they were met with resistance instead of information. Having described the confusion of the interviewees as to the role of the investigators, the Magistrate Judge clearly erred in finding that the investigators had no actual or constructing knowledge of the interviewees' misunderstanding of the lawyers' role as represented by their investigative agents. Indeed, when investigators try to conceal the involvement of lawyers, it is difficult to see how the lawyers' roles—and even their existence—would *not* be misunderstood by interviewees.

In these circumstances, defense counsel through their investigative agents were required by Rule 4.3 to "make reasonable efforts to correct the misunderstanding." This would have required disclosure of the fact that the interviewers were working for defense counsel in opposition to their interests. In interview after interview, interviewees triggered Rule 4.3 by their statements, no such disclosure was made, and Rule 4.3 was violated.

Lafarge argues that the only ethical violation found by the Magistrate Judge was the secret tape-recording, Opposition at 8. However, the Magistrate Judge stated: "While the investigator's statements were not literally false, they were evasive and misleading in what they omitted. As the law of fraud teaches, a material omission can be just as misleading as an affirmative misrepresentation." Where the ethical standard of Rule 4.3 is triggered by actual or constructive knowledge of misunderstanding of the lawyer's role, evasive and misleading answers to interviewees seeking clarification are direct evidence of such actual or constructive knowledge.

### C. Lafarge's Opposition Agrees that Rule 4.3 is Violated if the Lawyer States or Implies Disinterest

Lafarge's Opposition states at p. 7 that "the current Rule 4.3 only requires the lawyer not to 'state or imply that the lawyer is disinterested.'" While an incomplete statement of the obligations of

4

the Rule, this too was clearly violated. Every time a Centanni investigator told an interviewee that he or she was "independent," or did not know the uses to which the information would be put, or implied a use other than the true use of the information, Lafarge's counsel through their investigative agents actively stated or implied disinterest, and thus violated Rule 4.3, as well as RPC 4.1(a).

These violations occurred routinely in interviews, as shown by the record before the Magistrate Judge and as confirmed by the additional excerpts produced on May 21, 2008, and set forth in ¶¶ 19-21 of Plaintiffs' Memorandum in Support of their Class Contacts Motion.

Lafarge attempts to minimize the significance of these violations by arguing that the 2004 rule change left it without any obligation to reveal its "true colors" to interviewees. This is not so. Where Lafarge's counsel have violated Rule 4.3 by stating or implying disinterest, they can and must cure the violation by making affirmative disclosures so that no one was misled by their violations. Leaving interviewees ignorant is to allow defense counsel to continue asking questions, depriving interviewees of important information that could well lead them to stop answering questions, and allowing defense counsel to obtain answers that are not as fully considered as they would have been if the interviewees had known the questioners were working against their interests.

The Magistrate Judge's Order was based on a mistake of law, and is subject to *de novo* review on that mistake of law. To the extent that the Magistrate Judge failed to find that defendant stated or implied disinterest, its finding was clearly erroneous.

**D.  Lafarge Cannot Now Deny that Centanni's Actions are the Actions of Its Counsel**

Lafarge now argues at pp. 11-12 that Rule 4.3 was not violated because investigators are not lawyers.

Lafarge has previously represented to this Court that its investigators were entitled to work-

5

product privilege because they were the agents of counsel, and working under the direction of counsel. It refused to produce draft transcripts of interviews because it claimed they were protected by work-product privilege. See Barge Plaintiffs' March 25, 2008, Motion for Protective Order (doc. # 11765) at pp. 7-8 and 13-14, and exhibits, 9, 10, 18, 19, and 20 to the Memorandum. Lafarge is estopped to deny that the actions of Centanni are the actions of its counsel.

Lafarge seems to argue that its counsel can employ investigators to do what its counsel cannot do themselves. Louisiana RPC 5.3 and 8.4(a) bar such a conclusion. See the Appeal at p. 3 (doc. # 11765).

### E. Lafarge's Discovery Responses in the Limitation Proceedings Were Misleading

Lafarge has represented that the discovery proceedings in limitation were limited to the breakaway of the barge. It does not mention that Barge Plaintiffs' Interrogatory No. 26 asked specifically about witnesses "who you contend have knowledge of the incident, events preceding the incident (August 22-29, 2005), events during the incident, and events following the incident." It does not mention that Barge Plaintiffs' Request for Production 11 asked for "reports of the incident prepared by you, or received by you from others, on, or subsequent to, August 29, 2005, including but not limited to, reports to the United States Coast Guard, local or state police, FEMA, Homeland Security, or any other private or governmental agency."

The names of Centanni interviewees and the tapes and draft transcripts would have been responsive to the requests. Lafarge did object in the text of its response that the interrogatory was outside the scope of Phase I of the limitation proceeding, but did not make such an objection in the text of its response to the request for production.

Lafarge's response to the request for production was misleading: "LNA objects to this request

as vague construes it to request reports exemplified by U.S. Coast Guard Form 2692 or similar reports. So construed, LNA responds: So construed, LNA responds: [sic] none prepared by LNA nor received from others outside the context of this action." Lafarge did make a general work-product privilege objection albeit not within the text of its response to this request,[2] did not provide a timely privilege log in the limitations proceeding making clear that documents responsive to this particular request existed, and eventually provided a privilege log in this action.

No cases in this Court upheld a work-product privilege for secretly recorded conversations, and the cases in this Court addressing the issue held that the secret recording vitiated the privilege.

Further, the work-product privilege did not protect the underlying facts from disclosure, and these facts were not disclosed. Interrogatory No. 26 should have been answered notwithstanding the assertion of work-product privilege.

### F. Admissibility of the Draft Transcripts

Plaintiffs have presented two bases for barring direct use of the draft transcripts. *First*, the exclusion or limitation of evidence is a permissible sanction for discovery violations, and one that is used with some frequency. See Rules 37(c)(1)(C) and 37(b)(2)(A)(ii), Fed. R. Civ. Pro. *Second*, the Fifth Circuit has recognized that the exclusion of improperly obtained evidence may be appropriate in some cases, where the deterrent benefit of the exclusion outweighs the detriment to the public interest

---

[2] Lafarge's General Objections to these requests stated:

> LNA objects to the instructions and preamble to plaintiffs' requests to the extent they purport to impose upon LNA duties or obligations beyond those provided in the Federal Rules of Civil Procedure. LNA further objects to the requests to the extent they are not "limited to Phase I issues" as required by the Court's Order of July 28, 2006. In addition, LNA objects to the requests to the extent they call for identification or production of documents created by or for LNA on or after September 8, 2005, the date on which LNA learned of the allegations that

in providing fact finders with all relevant testimony. While this has not been used with enough frequency to provide case law on its use for unethically obtained information, it is still available and this case may be an appropriate first such use. If the Court agrees with plaintiffs as to the discovery violations, there would be no need to resolve the novel question.

### G.     Discovery of Photographs

Lafarge's Opposition presents cases at pp. 14-15 on the importance of making evidence available to the factfinder even where such evidence was obtained improperly, but argues on pp. 17-20 that plaintiffs should be denied access to the photographs in question[3] because plaintiffs assertedly made a procedural mistake, and contends that the consequences of that mistake should forever bar discovery and thus prevent the factfinder from seeing the evidence. The juxtaposition of these irreconcilable arguments demonstrates why Rule 59, Fed. R. Civ. Pro., is not always a suitable model for requesting reconsideration of discovery disputes, particularly in the dynamic process of pretrial preparation.

Defendant is correct on one point: plaintiffs miscited *Southern Scrap Material Co. v. Fleming*, C.A. No. 01-2554, Section "M" (E.D. La. June 18, 2003). That case did in fact hold that the photographs were work-product and did in fact order that they be turned over on other grounds. Nevertheless, the fact that another Judge of this Court had held otherwise constituted a reasonable, good-faith basis for plaintiffs' belief that the photographs were not protected by the work-product

---

form the basis for plaintiffs' claims in this action; such documents are protected from disclosure under Fed. R. Civ. P. 26(b)(3). . . . ."

[3] Defendant argues that only photos of Barge 4727 were raised in plaintiff's Motion to Compel, and that plaintiffs are impermissibly broadening the Motion to Compel. Opposition at 17 n. 10. However, Part II(C)(6) of the Motion to Compel, at p. 2, included Request for Production 29, which requested: "Any and all communications, documents, statements, investigations, records, photo, video and evidence pertinent to the mooring or securing, and any shifting or movement during

privilege.

        Respectfully submitted,

        /s/ Brian A. Gilbert
        Brian A. Gilbert, Esq. (21297)
        LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
        821 Baronne Street
        New Orleans, Louisiana 70113
            Telephone: (504) 885-7700
            Telephone: (504) 581-6180
            Facsimile: (504) 581-4336
            e-mail: bgilbert@briangilbertlaw.com

        /s/ Lawrence D. Wiedemann,
        Lawrence D. Wiedemann.(13457)
        Karl Wiedemann (18502)
        Karen Wiedemann (21151)
        WIEDEMANN & WIEDEMANN
        821 Baronne Street
        New Orleans, Louisiana 70113
            Telephone: (504) 581-6180
            Facsimile: (504) 581-4336
            e-mail: lawrence@wiedemannlaw.com,
            karl@wiedemannlaw.com, karen@wiedemannlaw.com,

        /s/ Patrick J. Sanders
        Patrick J. Sanders (18741)
        3316 Ridgelake Drive
        Suite 100
        Metairie, LA 70002
        Telephone: 504-834-0646
        e-mail: pistols42@aol.com

---

the effects of Katrina, of the five-barge tier north of ING 4727 at the Lafarge France Road facility."

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell:    202-549-1454
           Facsimile:  800-805-1065 and 202-828-4130
           e-mail: rick@rickseymourlaw.net,

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
Telephone: (212) 608-4400
Facsimile: (212) 227-5159
e-mail: lwilson@wgdnlaw1.com, ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor
New York, NY 10110-0002
Telephone: 212-869-3500 ext. 235
Facsimile:  212-398-1532
           e-mail: a.fuchsberg@fuchsberg.com,
           l.kelmachter@fuchsberg.com

Dated: July 24, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by ECF upload, and by e-mail, this 24th day of July, 2008.

/s/ Richard T. Seymour
Richard T. Seymour
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell:    202-549-1454
Facsimile:  800-805-1065 and 202-828-4130
e-mail: rick@rickseymourlaw.net