UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In re KATRINA CANAL BREACHES LITIGATION | * | CIVIL ACTION NO. 05-4182 |
| | * | SECTION "K" MAG. (2) |
| | * | JUDGE STANWOOD R. DUVAL, JR. |
| | * | MAG. JOSEPH C. WILKINSON, JR. |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OF EXCESS INSURERS: NEW YORK MARINE & GENERAL INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AND THE NORTHERN ASSURANCE COMPANY OF AMERICA PURSUANT TO THE COURT ORDER OF JULY 1, 2008 ISSUED BY THE HONORABLE JUDGE STANWOOD R. DUVAL, JR. WITH INCORPORATED EXHIBITS**

MAY IT PLEASE THE COURT:

NOW INTO COURT, through undersigned counsel, come New York Marine & General Insurance Company (hereinafter "NYMAGIC"), American Home Assurance Company (hereinafter "AHAC"), and The Northern Assurance Company of America (hereinafter "NACA") (hereinafter collectively referred to as "Excess Insurers"), and respectfully submit the following pursuant to the Court's Order dated July 1, 2008, pertaining to insurance coverage issues and litigations pending in New York.

The purpose of this submission is to advise this Court of the status of the litigation in New York, which was not accurately disclosed at the July 1st conference before this Court. These non-disclosures, we believe, may have misled the Court into believing that no dispositive motions are filed in the New York actions to resolve the coverage issues involving the policy issued by the American Steamship Owners Mutual Protection & Indemnity Association, Inc.

(hereinafter "the Club"). Further, it appears that the Court is under the incorrect impression that the introduction of recent so-called "ancillary" issues (apparently a reference to the coverage action involving the Excess Insurers) into the New York actions have somehow impaired or slowed down the pace of the litigation between the Club and Lafarge. This is simply not true.

**The Excess Marine Liabilities Policy For The Term of May 1, 2005 to May 1, 2006**

The Excess Insurers issued an Excess Marine Liabilities Policy ("Excess Policy") to Lafarge on a several and not joint basis for the period May 1, 2005 to May 1, 2006, with coverage of $45 million excess of all primary coverage set forth on the schedule of underlying insurance and subscribed to 25% by NACA, 35% by AHAC, and 40% by NYMAGIC. As with most excess policies, this Excess Policy contains a Schedule of Underlying Insurance policies and specifically lists the primary Protection and Indemnity (P&I) Policy issued by the Club, among others, as a primary policy as an underlying primary policy to the Excess Policy. That means, the Excess Policy is triggered <u>only</u> after the limits of the applicable Scheduled Underlying Insurance Policies (*i.e.* the Club's) are exhausted.

It is, for instance, a requirement of the Excess Policy that Lafarge shall maintain the primary policies specifically identified on the Schedule of Underlying Insurance, including the Club's primary coverages. The consequence of Lafarge's failure to maintain the applicable underlying policies is not denial of coverage, but the primary limit becomes a self-insured retention by the insured. Therefore, unlike the Club, the Excess Insurers <u>do</u> <u>not</u> contest coverage for the claims asserted against Lafarge in the various and several Katrina litigations. The Excess Insurers acknowledge that <u>coverage does exist</u> for the subject claims. Instead, the Excess Insurers' contention is that the attachment point of the Excess Policy is excess of or above all applicable primary limits, including the primary limit for the Club cover. The Excess Insurers

further contend that to the extent a Court (either in New York or New Orleans) finds that coverage does not exist with respect to Barge ING 4727 because of some default by Lafarge, and thus no coverage is provided by the Club to Lafarge, then again the Excess Policy is excess of the limits of all available primary limits <u>and</u> excess of the Club's primary limits as a self-insured retention pursuant to the Maintenance of Underlying Insurance provision in the Excess Policy. This latter issue is made irrelevant if the Club covers the loss.

**The New York Litigation Vis-à-Vis The Excess Insurers**

On April 2, 2008, almost two (2) years after the Club had commenced its declaratory judgment action against Lafarge in New York, AHAC and NACA commenced a separate declaratory judgment action[1] in New York to obtain confirmation of the following: (1) that the Club cover was and is triggered with regard to the Katrina claims; (2) that if the Court finds the Barge ING 4727 is not covered or insured by the Club, that the attachment point of Excess Policy is still excess of the available primary limits and excess of the Club's primary limit as a self-insured retention by Lafarge pursuant to the Maintenance of Underlying Insurance clause in the Excess Policy; and (3) that based on the available primary limits (*i.e.* the primary limit under the marine liability policy issued by NYMAGIC, and the primary limit available by the Club) that the available policies should be stacked in the following order: the Club cover, followed by the primary NYMAGIC cover, followed by the Excess Policy cover, respectively.[2] The final cause of action involves the interpretation of the naming of attorneys clause in the primary policy issued by NYMAGIC.

---

[1] We note that NYMAGIC has recently filed a separate motion to intervene in the excess action as a plaintiff and has also ratified the action filed by AHAC and NACA.

[2] The issue surrounding payment by Excess Insurers for the cost of defending Lafarge only becomes ripe as the NYMAGIC primary policy limit is near exhaustion and the Club has denied coverage.

On May 12, 2008, Judge Haight conducted an on the record status conference with counsel representing the Club, Excess Insurers, NYMAGIC as the primary insurer, and counsel for Lafarge. *See* a complete copy of the Transcript of the Hearing before Judge Haight, attached hereto as Ex. "1".

During this conference, Judge Haight had a wide ranging discussion with counsel regarding the status of the three (3) pending insurance coverage litigations with a particular inquiry regarding the filing of dispositive motions. Counsel for the Club, for instance, stated that, because there are "too many factual issues for us to put a stipulated record before Your Honor", the Club would instead opt to try the insurance coverage issues. *See* Transcript of the May 12th hearing before Judge Haight Ex. "1" at p. 43. The Club has now changed its position, apparently as a result of this Court's July 1st conference.[3] As stated by Lafarge's New York counsel in their letter of July 18th to Judge Haight, "[i]t appears the Club, having previously advised you that it would not make a motion for summary judgment, is in fact scrambling to submit a motion for summary judgment solely on account of the action taken by Judge Duval." *See* Hill Rivkins, *et. al.* letter to Judge Haight dated July 18, 2008 Ex. "7".

On or about June 23, 2008, NACA and AHAC advised all parties of their intention to shortly file a cross-motion for summary judgment against the Club, among others. *See* Excess Insurers' Opp. to Motion to Stay Ex. "8" p. 2 n.2. It appears, however, that at the July 1st Conference before this Court, nobody advised the Court of the Excess Insurers' intention to file a dispositive motion on the coverage issues. As a result, the Court may have been left with the

---

[3] We note that the Club has now changed its position, advising Judge Haight that it intends to file its own motion for summary judgment on or before August 2, 2008. *See* a series of correspondence with Judge Haight starting with the July 15th letter from New York counsel for AHAC and NACA (Ex. "3"); the July 15th letter from New York counsel for Lafarge (Ex. "4"); the July 17th letter from New York counsel for the Club (Ex. "5"); and July 18th letters from New York counsel for the AHAC and NACA and Lafarge (Exs. "6" and "7").

impression that, with no dispositive motions in the works and no trial date, the New York litigations were not near conclusion.

In point of fact, on July 2, 2008 (one day after the July 1st conference before this Court), NACA and AHAC filed a cross-motion for summary judgment on several issues, including the coverage issues involving the Club policy. We respectfully submit for the Court's consideration a copy of the cross-motion for summary judgment, which was filed on July 2, 2008, in New York. *See* Ex. "2." This cross-motion for summary judgment which is expected to be fully briefed before Judge Haight no later than the end of August, 2008, may well decide the coverage issues as they relate to the Club.[4]

As further evidence of the Club's strategy to stall and delay the inevitable finding of its wrongful denial of coverage to Lafarge, it has opposed NACA and AHAC's motion to consolidate the Excess Insurers' action with the Club action, based on the alleged claim that all fact discovery in the Club action was concluded as of the May 12th conference before Judge Haight. In that conference, counsel for the Club and Lafarge made the representation to Judge Haight that all factual discovery "has now closed, the deadline for fact discovery has passed, we are now into the expert phase." *See* Transcript of the May 12th hearing before Judge Haight Ex. "1" at p. 42. This was another misrepresentation. In their July 18th letter to Judge Haight, Lafarge's counsel disclosed that the parties had conducted further factual discovery as late as July 17, 2008, some sixty (60) days after the May 12th conference. *See* Ex. "7".[5]

---

[4] In an attempt to delay resolution of the coverage issues, the Club has made a groundless application to Judge Haight to stay or dismiss the action by the Excess Insurers – thus seeking to forestall a decision on its coverage. We must note that Lafarge has also joined in this meritless application.

[5] We have further learned that by the time of the May 12th Conference, Lafarge and the Club had reached an agreement to conduct an outstanding fact deposition outside the Court Ordered factual discovery cut-off date, on May 30, 2008. This was a fact that was known by both counsel

5

By virtue of the foregoing, we respectfully submit that far from delaying the resolution of the New York litigations or raising "ancillary" issues, the Excess Insurers have moved expeditiously to resolve the insurance coverage issues in New York, particularly with respect to the Club cover.

Respectfully submitted:

FRANK A. PICCOLO (02049)
PREIS & ROY, APLC
601 Poydras Street, Suite 1700
New Orleans, LA 70130
Telephone:(504) 581-6062
Facsimile: (504) 522-9129
COUNSEL FOR AMERICAN HOME ASSURANCE COMPANY AND INTERNATIONAL MARINE UNDERWRITERS

-and-

ROBERT H. MURPHY (9850)
MURPHY ROGERS SLOSS & GAMBEL
701 Poydras Street, Suite 400
New Orleans, LA 70139
Telephone:    (504) 523-0400
Facsimile:    (504) 523-5574

---

for the Club and Lafarge but was not disclosed to the Court or to the parties at the May 12th Conference. Instead, counsel represented on the record that all factual discovery was closed as of May 12, 2008. While we acknowledge with sympathy, the Club's counsel's recent advice that due to a family illness, the May 30th fact deposition was adjourned, there was reportedly an additional delay of several weeks in conducting the deposition due to the witness's schedule and/or availability. This sixty (60) day delay in conducting further factual discovery was apparently never disclosed to the Court. It was certainly not disclosed in any motion papers until Messrs. Hill Rivkins reported it in a letter several days ago to the Court and the undersigned counsel for the Excess Underwriters. *See* Ex. 7.

rmurphy@mrsnola.com

COUNSEL FOR NEW YORK MARINE
AND GENERAL INSURANCE COMPANY

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading has been served on all counsel of record in these proceedings by:

    (  ) Hand Delivery          (  ) Prepaid U.S. Mail

    (  ) Facsimile              (  ) Federal Express

    ( √ ) ECF Filing            (  ) E-Mail

New Orleans, Louisiana, this _____ day of July, 2008.

                               _____
                                  FRANK A. PICCOLO