UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182<br>and consolidated cases |
| PERTAINS TO: BARGE | SECTION "K" (2) |
| *Boutte v. Lafarge* 05-5531<br>*Mumford v. Ingram* 05-5724<br>*Lagarde v. Lafarge* 06-5342<br>*Perry v. Ingram* 06-6299<br>*Benoit v. Lafarge* 06-7516<br>*Parfait Family v. USA* 07-3500<br>*Lafarge v. USA* 07-5178 | JUDGE<br>STANWOOD R. DUVAL, JR.<br><br>MAG.<br>JOSEPH C. WILKINSON, JR. |

**MEMORANDUM IN OPPOSITION TO BARGE PLAINTIFFS' REQUEST FOR INJUNCTION OF DECLARATORY JUDGMENT ACTION FILED BY AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC. AND LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT ON COVERAGE ISSUES**

MAY IT PLEASE THE COURT:

Defendant American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club"), by and through its attorneys, Montgomery, Barnett, Brown, Read, Hammond & Mintz, LLP and Thacher Proffitt & Wood LLP, hereby opposes the request of the plaintiffs to this action (the "Barge Plaintiffs"), as set forth in the memorandum they submitted to this Court on July 14, 2008 (the "July 14 Memorandum"), for a "Conditional Temporary Injunction" enjoining the parties to the New York cases, including the declaratory judgment action initiated by the American Club against Lafarge N.A., Inc. ("LNA") in the U.S. District

Court for the Southern District of New York (the "New York Coverage Action") from further proceedings in those cases[1] and permitting the Barge Plaintiffs to file a motion for summary judgment in the action currently before this Court (the "New Orleans Action") on or before January 15, 2009, as follows:

## PRELIMINARY STATEMENT

The Barge Plaintiffs seek to have this District Court enjoin the U.S. District Court for the Southern District of New York from hearing the New York Coverage Action despite Judge Haight's determination over a year ago that the dispute should be tried in New York, the "center of operative facts" to the case. Order of Judge Haight dated January 29, 2007, attached hereto as Exhibit 1 (the "Haight Order"), at p. 16. This request by the Barge Plaintiffs is extraordinary, and Plaintiffs cite no authority for the proposition that one Federal Court Judge can effectively enjoin another from hearing a case, let alone overturn the decision of a District Court Judge that venue is proper. Further, while the Barge Plaintiffs argue that they should be permitted to file a motion for summary judgment on the issue of coverage in the New Orleans Action – despite this Court's earlier determination to the contrary – because the New York Coverage Action threatens judicial economy, both their statements pertaining to the New York Coverage Action and the New Orleans Action, as well as the relief they seek, belie the fact that their current and proposed efforts can only work to further hinder the resolution of the coverage dispute that is being decided in a capable and timely fashion by Judge Haight. Because the New York Coverage Action is proceeding on schedule, and because the American Club intends to file a motion for summary judgment in the New York Coverage Action on or before August 4, 2008 (more than

---

[1] Plaintiffs refer to those actions as "the New York consolidated cases." However, although certain underwriters have recently moved to consolidate the three actions before Judge Haight, no decision has been issued on the motion and there has been no order of consolidation.

five months before the Barge Plaintiffs' proposed due date for a motion for summary judgment in this case) the Court should not undo the earlier determinations that were properly made by it and by Judge Haight, and the Barge Plaintiffs' requests should therefore be denied.

## FACTUAL BACKGROUND

In light of this Court's familiarity with the New York Coverage Action, the American Club does not submit an exhaustive recitation of the facts at issue, and instead sets forth the following for the purpose of clarifying and/or correcting false statements made by the Barge Plaintiffs as to the facts and circumstances relating to the New York Coverage Action and the New Orleans Action:

1. On April 21, 2006, the American Club initiated the New York Coverage Action by filing a Complaint for a declaratory judgment, seeking to have the S.D.N.Y. determine "whether the insurance coverage provided by [the American Club] to [LNA] extends to a particular barge that was owned and operated by another company that had contracted to transport cement for [LNA]." Haight Order at p. 1.

2. The New York Coverage Action involves the ING 4727, for which LNA has sought cover in connection with claims brought against it for property damage and/or personal injury relating to this barge and arising from the Hurricane Katrina disaster in New Orleans. *See* Letter from John M. Woods to Robert G. Clyne dated April 21, 2006, attached to July 14 Memorandum as Exhibit B (the "Denial of Coverage Letter"), at p. 1.

3. Pursuant to a transportation agreement dated December 14, 2004 between LNA and Ingram Barge Company ("Ingram") (the "Transportation Agreement"), Ingram used the ING 4727 to transport LNA's cement from its Joppa, Illinois plant to its New

3

Orleans facility, where it was moored on the date of Hurricane Katrina in August 2005.

4. The Transportation Agreement specifically provided that Ingram was an "Independent Contractor" and that "[n]othing contained in this Contract shall be construed as a contract by Shipper [LNA] for the chartering, hiring, or leasing of any barge, towboat or other equipment of Carrier [Ingram] . . . ." *See* Denial of Coverage Letter at p. 3.

5. The coverage dispute turns on whether the ING 4727 is insured under the "Certificate of Entry" issued by the American Club to LNA, which contains a Schedule of Vessels which specifically identifies the vessels that LNA insured with the Club. The ING 4727 is not listed on the Schedule of Vessels, nor are any Ingram barges. *See id.*

6. Recognizing that the ING 4727 is not included in the Schedule of Vessels, LNA has asserted that cover for the ING 4727 arises out of the "Chartered Barges" clause contained in its Certificate of Entry with the American Club, which provides in part:

> If Lafarge Corporation et al <u>acquires an insurable interest in any vessel in addition to or in substitution for those set forth herein, through purchase, charter, lease or otherwise,</u> such insurance as is afforded hereunder to any similar vessel shall automatically cover such additional vessel effective from the date and time the Assured acquires an insurable interest in such additional vessel. With respect to a chartered, leased or similarly acquired vessel, the insurance hereunder automatically includes the owner as an additional Assured with waiver of subrogation against the owner, if required, effective from the date and time such vessel is insured hereunder.

(emphasis added.) *See* Denial of Coverage Letter at p. 2.

7. On April 21, 2006, the American Club denied coverage to LNA for any liability related to the ING 4727 because, *inter alia*, (1) LNA never entered it, or any other

4

Ingram barge, with the Club; (2) the ING 4727 could not be insured under the Chartered Barges clause because, *inter alia*, Lafarge had not acquired an insurable interest in the barge "through purchase, charter, lease or otherwise"; (3) LNA never provided the Club with a copy of the Transportation Agreement for its approval; and (4) coverage for these claims is provided by LNA's other insurers. *See* Denial of Coverage Letter.

8. The American Club filed the New York Coverage Action in response to LNA's continued attempts to press its claims for coverage despite the American Club's denial thereof.

9. Shortly after the New York Coverage Action was initiated, the American Club filed an Answer to the Amended Complaint filed in the action initiated by Ethyl Mumford, which was subsequently consolidated with the instant litigation. *See* Answer, attached to July 14 Memorandum as Exhibit C.

10. This Answer specifically refers to the provisions of the Certificate of Entry, the Special Terms and Conditions attached thereto, and the Club's By-Laws and Rules incorporated by reference in the Certificate of Entry, in addressing claims relating to coverage. *See id.* at pp. 4-5.

11. On July 7, 2006, in an attempt to force the American Club to litigate the coverage dispute in New Orleans, LNA moved the S.D.N.Y. to transfer the action to this Court or to stay the New York Coverage Action pending the outcome of this litigation. The American Club then filed an opposition to LNA's motion to transfer or stay the New York Coverage Action on August 18, 2006.

12. At the time the New York Coverage Action was initiated, stock of both LNA and its parent company, Lafarge, were publicly traded on the New York Stock Exchange (the "NYSE"). At that time, Lafarge already owned 53% of LNA's stock. *See* Jerry Knight, *French Parents Targets Huge but Little-Known Lafarge North America*, washingtonpost.com, February 13, 2006, attached to July 14 Memorandum as Exhibit J. Subsequently, Lafarge decided to buy the remaining 47% of the stock of LNA that it didn't own. The purpose of the buy-out of the public shareholders was for accounting purposes, and it resulted in the delisting of LNA's stock. *See id.*

13. The delisting of LNA was not completed until Fall 2006 – after both the New York Coverage Action and the American Clubs's opposition to LNA's motion to transfer or stay the New York Coverage Action were filed with the S.D.N.Y.

14. While LNA merged with Lafarge in 2006, there has been no diminution in its assets in the United States.

15. Following oral argument on LNA's motion on December 18, 2006, Judge Haight issued the Haight Order on January 29, 2007, which found that the S.D.N.Y. was the proper venue for the coverage dispute, and denied LNA's motion to transfer or stay.

16. In a subsequent Order dated November 9, 2007 (the "Duval Order", attached to July 14 Memorandum as Exhibit D), this Court denied the Barge Plaintiffs' request for leave to file a motion for summary judgment in the New Orleans Action with respect to coverage by the American Club because it was "premature" in light of the "significant factual issue to be determined in [the New York Coverage Action], that is whether the barge, the ING 4727, is covered pursuant to specific contractual

provisions that have nothing to do with the issues before this Court and are independent thereof...."

17. This Court further noted that such a motion for summary judgment by the Barge Plaintiffs "would be duplicative and not in the interest of judicial economy," and therefore should not be filed. *Id.* at p. 2.

18. Subsequently, the New York Coverage Action has continued to progress under the current scheduling order signed by Judge Haight.

## ARGUMENT

I. **THE RELIEF SOUGHT BY PLAINTIFFS WOULD HINDER, NOT HASTEN, THE RESOLUTION OF THE COVERAGE DISPUTE BETWEEN LNA AND THE AMERICAN CLUB**

While the Barge Plaintiffs claim that the New York Coverage Action is an "impediment[] to judicial economy," the relief they themselves seek could only serve to complicate and hinder resolution of the coverage dispute between the American Club and LNA, which is in fact progressing in the S.D.N.Y., and their requests should therefore be denied.

a. **The Coverage Action is Proceeding on Schedule**

Contrary to the Barge Plaintiffs' assertion, the New York Coverage Action is proceeding in a timely fashion: fact discovery has now been completed, and expert discovery would almost certainly have been completed by the end of this month but for the fact that LNA has slowed down the completion of the experts' reports, and refuses to go ahead with depositions of experts on the basis that they have asked for a conference with Judge Haight to discuss developments in the New Orleans Action. In other words, the Barge Plaintiffs' actions have already hindered the progress of the New York Coverage Action, since LNA is using the Barge Plaintiffs' request to

file a motion for summary judgment as an excuse to slow down the New York litigation.[2] *See* Letter from Anthony J. Pruzinksy to Judge Haight dated July 18, 2008, attached hereto as Exhibit 2; Letter from John M. Woods to Anthony J. Pruzinsky and John J. Sullivan dated July 22, 2008, attached hereto as Exhibit 3.

Most importantly, however, the American Club intends to file a motion for summary judgment that the Certificate of Entry does not provide cover for the claims made against LNA which arise from the breakaway of the ING 4727 on or before August 4, 2008, *i.e.*, within the next seven days. In light of the fact that this motion may lead to the most swift resolution possible of the coverage dispute between the American Club and LNA, the Barge Plaintiffs' requests are particularly inappropriate and should thus be denied.

### b. The Proposed Relief Sought by the Barge Plaintiffs Would Hinder Resolution of the Coverage Issue

As noted above, the Barge Plaintiffs seek permission to file a motion for summary judgment on or before January 15, 2009 – more than five months after the American Club will have filed its motion for summary judgment. Why the delay of five months to bring such a motion? Although nowhere stated in the Barge Plaintiffs' July 14 Memorandum, the Barge Plaintiffs no doubt intend to conduct extensive discovery before making the motion. That must be their intent because they certainly are not in a position to make the motion now: no discovery relating to coverage issues, other than production of a small number of documents which included the Certificate of Entry, has been conducted in the New Orleans Action. And there is no guarantee that five months will be sufficient for that discovery. Indeed, it is highly likely that

---

[2] Not surprisingly, LNA has stated that it intends to support the Barge Plaintiffs' application. It is doing so for the obvious reason that Judge Haight denied its motion to dismiss or transfer the American Club's coverage action to New Orleans. Accordingly, Barge Plaintiffs' proposed motion may give LNA an opportunity to circumvent Judge Haight's ruling, by joining in the Barge Plaintiffs' motion.

there may be discovery disputes requiring judicial resolution, which could cause substantial delays. Thus, for the sake of judicial economy, the Barge Plaintiffs' requests should be denied.

## II. PRIOR DETERMINATIONS BY THE NEW ORLEANS AND NEW YORK COURTS WERE PROPERLY MADE

While the Barge Plaintiffs attempt to show that the prior determinations by both Judge Haight and this Court were improperly or incorrectly made, its own arguments indicate that the contrary is true – both decisions were properly rendered, and the relief now sought by the Barge Plaintiffs would interfere with these decisions and should therefore be denied.

### a. Judge Haight Considered the Appropriate Tests in Determining that the S.D.N.Y. is the Correct Venue

In determining that the S.D.N.Y. was the proper venue for the coverage dispute between the American Club and LNA – "a straightforward question of contract law" – Judge Haight properly engaged in a balancing of the conveniences under 28 U.S.C. § 1404(a) to assess whether it should transfer the action, and found that "[a]ll of the factors either weigh in [the Club's] favor, albeit with varying strengths, or are neutral." Haight Order at pp. 4, 26. In particular, Judge Haight found that:

- New York is the center of operative facts. *See* Haight Order at p.16. ("[T]his action concerns a policy that was negotiated and executed in New York, issued in New York by a New York insurer, and subject to interpretation under New York law. . . . That the casualty giving rise to the P&I policy coverage dispute happened in Louisiana is therefore irrelevant, and New York is the center of operative facts as to that dispute.")

- The non-party witnesses primarily consist of New York brokers, which may only be able to be deposed through FRCP 45(a)(2) if the action was transferred to New Orleans. ["[T]his would clearly be second-best to their live testimony."] *See* Haight Order at p. 17.

- There is not one witness relevant to coverage residing in New Orleans. *See* Haight Order at pp. 12-14. ("I conclude that [LNA] has failed entirely to show that evidence of how the casualty occurred would have any relevance to the issues of policy coverage presented by the case at bar.")[3]

- Since the LNA's coverage is governed by New York law, a New York court will be most familiar with the governing law. *See* Haight Order at pp. 17-18.

Such a determination that the S.D.N.Y. is the most appropriate venue to decide this coverage dispute was particularly proper since the interpretation of the Chartered Barges clause included in LNA's Certificate of Entry with the Club – which was negotiated for and issued in New York – is the key issue in determining whether coverage exists. In contrast – and as recognized in the Duval Order – New Orleans had nothing to do with the placement of the insurance or the negotiation of the Chartered Barges clause in the Special Terms & Conditions of the Certificate of Entry. *See* Duval Order at pp. 1-2.

### b. Judge Haight Afforded Proper Weight to the First-Filed Rule

In further holding that the first-filed rule did not require the S.D.N.Y. to refuse to entertain the New York Coverage Action, Judge Haight properly recognized that the first-filed rule "need not be applied where there is a 'showing of balance of convenience or special circumstances giving priority to the second [case].'" Haight Order at p. 9 (citing *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)).

While the Barge Plaintiffs claim the analysis of the first-filed ruled employed by Judge Haight was improper, numerous courts in the Fifth Circuit have, like Judge Haight, expressly acknowledged and employed the same factors in analyzing both the first-filed rule and a motion for transfer of venue under 28 U.S.C. § 1404. In a recent decision in the Eastern District of Louisiana, for example, the court noted that the first-filed rule may be set aside where there are

---

[3] In the New York Coverage Action, a total of 13 witnesses have been deposed. Of those 13, eight were from New York or New Jersey, one was from Virginia, and four were from other states. None were from Louisiana.

10

"compelling circumstances," and determined that it should look to the public and private factors the govern transfer of venue under 28 U.S.C. § 1404 in applying the first-filed rule. *See Poche v. Geo-Ram, Inc.*, No. CIV. A. 96-1437, 1996 WL 371679, at *2-3 (E.D. La. July 2, 1996) (requiring parties to address and provide proof of private and public factors in order to determine whether first-filed rule mandates that court should hear the case). *See also Browning-Ferris Industries Asia Pacific, Inc. v. Texas World Operations, Inc.*, No. 2:05 CV 0934, 2005 WL 2898646, at *3 (M.D. La. Oct. 31, 2005) (stating that "[e]ssentially the same factors that are of significance on a motion to stay a 'second filed' action come into play on a motion to transfer under 28 U.S.C. section 1404(a).").

Moreover, courts in the Fifth Circuit recognize that the first-filed rule "is not to be applied mechanically," and that a "first filed action should not have priority when little if anything has been done to advance it for trial, and the balance of convenience favors the forum in which the later suit is commenced.'" *Goudchaux's, Inc v. Wohl Shoe Co., Inc.*, 541 F. Supp. 463, 465 (E.D. La. 1982) (citation omitted). Judge Haight specifically found that such special circumstances existed in the New York Coverage Action, which further diminish the effect of the first-filed rule. The Court noted that "the direct actions began little more than a month before the American Club" commenced the New York Coverage Action, and "Chief Judge Berrigan has not devoted significant judicial resources to the direct action claims against the American Club or developed any expertise with regard to the insurance coverage issues...." Haight Order at p. 24. In addition, the S.D.N.Y. did not accord the rule great weight because a decision in the New Orleans Action in favor of LNA would not resolve whether LNA is entitled to defense costs, which will be decided in the New York Coverage Action. *See id.* at pp. 18-19.

Thus, because Judge Haight analysis is in accordance with the approach long applied by courts in both the Second and Fifth Circuits, the Barge Plaintiffs' attacks on Judge Haight's reasoning are baseless. The New York Coverage Action should proceed unhindered, and the Barge Plaintiffs' request to file a motion for summary judgment should be denied.

### c. Proper Consideration Was Given to the Matter of Issue Preclusion

Judge Haight thoroughly analyzed both issue preclusion in the New Orleans action and the potential persuasive effect of his decision in determining that the S.D.N.Y. was the proper venue, as acknowledged by the Barge Plaintiffs themselves. *See* July 14 Memorandum at p. 14 (stating that "Judge Haight provided a helpful analysis of…issue preclusion").

Judge Haight recognized that the question of issue preclusion is far from settled, and he correctly noted that "there currently exists no decision squarely on point." Haight Order at p. 20. He based his decision to retain jurisdiction in part on Fifth Circuit precedent stating that the New York court's decision may be persuasive, even if not binding. *See* Haight Order at pp. 19-21 (citing *Acosta v. Master Maintenance*, 452 F.3d 373 (5th Cir. 2006); *Ancar v. Murphy Oil, U.S.A., Inc.*, 2006 WL 2850445 (E.D. La. Oct. 3, 2006)). Reading the reasoning of the Fifth Circuit in *Acosta*, 452 F.3d at 378 n.7 (explaining that a court may find arbitration between an insured and insurer "to be persuasive, if not binding" on a court in a direct action statute), Judge Haight noted:

> I find [the Acosta Court's reasoning] particularly apt in the present circumstances where the question will be litigated in this Court of law as opposed to an arbitration [in Acosta], the action will be subject to all of its evidentiary and procedural rules, the Court will be applying New York law, and the decision may (I dare hope) be affirmed by the Second Circuit. Certainly, if the roles were reversed I would be inclined to accept the determination by the Eastern District of Louisiana on the extent of coverage of a Louisiana insurance policy governed by Louisiana law.

Haight Order at p. 21.

Moreover, even after the recent decision in *Taylor v. Sturgell*, 128 S.Ct. 2161 (June 12, 2008), it still remains the case that (1) the realm of issue preclusion is far from settled; and (2) this Court may treat a decision in the New York Coverage Action as persuasive, even if not binding. Accordingly, this Court should deny the Barge Plaintiffs' requests and allow the New York Coverage Action to proceed in the same manner that it has following the issuance of the Duval Order.

### d. The Duval Order is Correct

As shown above, Judge Haight's analysis in determining that the S.D.N.Y. was the proper venue for the New York Coverage Action was thorough and in accordance with applicable law, and as such, the Duval Order was properly issued. As discussed at length by the Barge Plaintiffs themselves, the Duval Order focused on the goal of furthering judicial expediency. The New York Coverage Action was and is best-suited for effectuating that goal, as it is progressing in a timely manner; fact discovery in the New York Coverage Action is complete, and the American Club intends to file a motion for summary judgment in that action within the next seven days.

In addition, the Duval Order was correct because it afforded the Haight Order the deference it is entitled to as a properly rendered decision by a Federal District Court. "The structure of the federal courts does not allow one judge of a district court to rule directly on the legality of another district judge's judicial acts or to deny another district judge his or her lawful jurisdiction." *Dhalluin v. McKibben*, 682 F. Supp. 1096, 1097 (D. Nev. 1988); *see also CitiFinancial Corp. v. Harrison*, 453 F.3d 245, 252 n.16 (5th Cir. 2006) (quoting same).

It is telling that the Barge Plaintiffs have not offered any authority for the proposition that one District Court Judge can enjoin another from hearing a case and thereby effectively overturn

a decision on venue. Accordingly, the Court should continue to recognize the Haight Order, and should therefore reject the Barge Plaintiffs' request for an injunction of the New York Coverage Action and leave to file a motion for summary judgment in the New Orleans Action.

### e. Counsel for the American Club Did Not Act in a Surreptitious Manner, and Did Not Mislead this Court or Judge Haight

#### i. The American Club's Answer Fully Complied with Rule 8 of the Federal Rules of Civil Procedure

The Barge Plaintiffs complain about the wording used in the Answer filed on behalf of the American Club and suggest that the Answer did not afford "even the slightest inkling" to the Plaintiffs that the American Club contested coverage. This is a false argument. The Answer responded to a very short Amended Complaint which contains one paragraph alleging a claim against the American Club pursuant to the Louisiana Direct Action Statute and LNA's Certificate of Entry with the American Club. Neither the Amended Complaint nor the original Complaint cite any terms or conditions of LNA's entry with the American Club and allege no legal basis for coverage. Having been cited no specific terms of coverage allegedly afforded by the American Club to LNA, the American Club filed its Answer denying the Plaintiffs' allegation of coverage and specifically pled all terms, conditions, limitations and exclusions of the American Club's Rules and Bylaws which govern the terms of coverage afforded by the Certificate of Entry. This pleading clearly complies with Rule 8(b) of the Federal Rules of Civil Procedure and clearly frames the American Club's denial of coverage. The suggestion that the American Club's Answer is "unusual" in framing the denial of coverage in this matter is disingenuous to say the least, as is the allegation by the Barge Plaintiffs that the <u>public</u> filing of

the declaratory judgment Complaint in the New York Coverage Action was "surreptitiously" done.[4]

### ii. No Material Misstatements Were Made Regarding Listing on the NYSE

The Barge Plaintiffs also overstate the significance of the delisting of LNA from the NYSE. First, this listing was mentioned by Judge Haight, *see* Haight Order at p. 15, but the listing itself was not the issue – the size and means of LNA were, and there has been no change nor was there any misrepresentation or misunderstanding in that regard. LNA's parent company, Lafarge, continues to be one of the largest and most profitable companies in the world. LNA reported sales of $2,147.5 million in 2007,[5] and Lafarge ranks 333rd on the 2008 list of Fortune Global 500 companies with revenue of $24,109 million.[6] The Global 2000 published in March of 2008 states that Lafarge had $22.31 billion in sales, $1.81 billion in profits, $39.07 billion in assets and $30.06 billion in market value.[7]

Second, LNA was not delisted from the NYSE until Fall 2006, and Lafarge was still publicly traded at the time of the Haight Order, as the Barge Plaintiffs themselves noted in the July 14 Memorandum.[8] *See* July 14 Memorandum at p. 6 (stating that Lafarge's stock traded on

---

[4] And the Barge Plaintiffs do not begin to explain, let alone provide support for their puzzling and incorrect statement that the American Club's Answer somehow violates the Louisiana Direct Action Statute.

[5] Hoovers.com, Lafarge North America Inc., http://hoovers.com/lafarge-north-america/--ID__10880--/free-co-factsheet.xhtml (last visited July 27, 2008).

[6] *See* Fortune Global 500 List, *available at* http://money.cnn.com/magazines/fortune/global500/2008/snapshots/6455.html (last visited July 27, 2008).

[7] *See* Forbes Global 2000 List, *available at* http://www.forbes.com/lists/2008/18/biz_2000global08_The-Global-2000_Rank_3.html (last visited July 27, 2008).

[8] The Barge Plaintiffs failed to reveal this information to the Court in the July 14 Memorandum, stating instead that the shares were "delisted effective 6/13/06" (emphasis added), and implying that the delisting had occurred at that

the NYSE was delisted in October 2007). Moreover, while LNA merged with Lafarge in 2006, Barge Plaintiffs made no showing, and do not even allege, that LNA's assets in the United States have somehow diminished. In fact, substantially all of its assets remain in the United States.

Finally, the listing was only one of many factors that Judge Haight considered in determining that venue was proper.

### iii. Judge Haight Was Aware of, and Discussed, the Scope of the Forum Selection Clause

Similarly, the Barge Plaintiffs' statements pertaining to the applicability of the forum selection clause in the American Club's P&I policy to the New York Coverage Action are incorrect and irrelevant because New York – the location of the American Club, and the place where its policies are negotiated and issued – is the logical venue for resolution of this coverage dispute irrespective of the scope of the forum selection clause. Moreover, contrary to the Barge Plaintiffs' statements in paragraph 15 of the July 14 Memorandum, Judge Haight was fully aware that the clause only applied to actions brought against the American Club at the time he determined that the S.D.N.Y. was the proper venue. *See* Haight Order at p. 25. He further acknowledged that not much weight was afforded to the forum selection clause in his analysis, and that it was only one of many factors considered in determining that the S.D.N.Y. was the proper venue of the coverage dispute. *See id.* at pp. 25-6.

## III.   REFERRING THE MATTER TO A MDL PANEL WOULD BE IMPROPER AND INEFFECTIVE

---

time. In reality, the delisting of the shares was not finalized until Fall 2006, after the August 18, 2006 date of the opposition to LNA's motion to transfer or stay the New York Coverage Action. While it is unclear what the exact date of delisting was, a visit to LNA's website on August 3, 2006 by counsel for the American Club revealed that LNA's stock was still traded on the NYSE at that time. *See* July 14 Memorandum at p. 13. Moreover, even the Barge Plaintiffs have not alleged in the July 14 Memorandum that LNA's shares were actually delisted, or that the SEC recognized the delisting as finalized, at the time of the American Club's submission to Judge Haight on August 18, 2006.

The American Club is in agreement with the Barge Plaintiffs on one issue – the coverage dispute should not be submitted to a MDL panel, as doing so would not only be procedurally improper, but also would not further the goal of expediency or judicial economy. As noted by the Barge Plaintiffs on pages 17-18 of the July 14 Memorandum, the MDL panel would still be required to remand the proceedings to the district court from which it was transferred prior to trial pursuant to 28 U.S.C. § 1407; accordingly, this type of transfer could not further the interest of judicial economy and therefore should not occur.

## CONCLUSION

For all of the foregoing reasons, the Court should continue to permit the Coverage Action to proceed in an unhindered fashion, and should thus (1) reject the Barge Plaintiffs' request for a "Conditional Temporary Injunction," the effect of which would be for this Court to enjoin the New York Coverage Action and overrule the Haight Order; and (2) continue to deny their

request for leave to file a motion for summary judgment in the New Orleans Action as to the coverage issues.

Dated: New Orleans, Louisiana
      July 28, 2008

                            MONTGOMERY, BARNETT, BROWN,
                            READ, HAMMOND & MINTZ, LLP

                            */s/ A. Gordon Grant, Jr.*
                            A. GORDON GRANT, JR. (#6221) (T.A.)
                            PHILIP S. BROOKS, JR. (#21501)
                            1100 Poydras Street, Suite 3300
                            New Orleans, LA 70163
                            Phone: 504-585-3200
                            Fax: 504-585-7688

                            and

                            THACHER PROFFITT & WOOD LLP
                            John M. Woods, Esq.
                            Two World Financial Center
                            New York, New York 10281
                            (212) 912-7400

                            *Attorneys for American Steamship Owners*
                            *Mutual Protection and Indemnity Association, Inc.*

**CERTIFICATE OF SERVICE**

     I do hereby certify that I have on this <u>28th</u> day of <u>July, 2008</u>, a copy of the above and foregoing has been electronically filed with the Clerk of Court using the CM/ECF system, which then sent notification of such filing to counsel of record.

                            */s/ A. Gordon Grant, Jr.*