UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION,
INC.

                  Plaintiff,

  -against-

LAFARGE NORTH AMERICA, INC.,

                  Defendant.

------------------------------------------------------------------------x

06 Civ. 3123 (CSH)

MEMORANDUM OPINION
AND ORDER

HAIGHT, Senior District Judge:

    The issue in this case is whether the insurance coverage provided by American Steamship Owners Mutual Indemnity Association ("American Club" or "Club") to defendant Lafarge North America ("Lafarge" or "LNA") extends to a particular barge that was owned and operated by another company that had contracted to transport cement for Lafarge. The American Club seeks a declaratory judgment that the barge was not covered under its policy and thus that it is not responsible for any potential liability or defense costs associated with the barge. Lafarge now moves to transfer this case to the Eastern District of Louisiana or, in the alternative, to stay this proceeding until the outcome of proceedings pending in that district. For the reasons given below, I deny defendant's motion in its entirety.

## I. BACKGROUND

### A.   Hurricane Katrina and Litigation in New Orleans

    The instant action arises out of extensive litigation in the aftermath of Hurricane Katrina, which devastated New Orleans in August of 2005. The dispute at bar was triggered by the

1


EXHIBIT
1

breakaway of a barge moored in New Orleans during the hurricane and its subsequent alleged allision with one of the levees protecting the city. This was one of the levees that broke, flooding the city. The offending barge, Barge ING 4727, was owned and operated by Ingram Barge Company ("Ingram"), which had contracted in December of 2004 with Lafarge, a construction materials company and supplier of cement and other construction materials, to transport cement from Lafarge's plant in Illinois to its New Orleans facility. The barge had been moored at Lafarge's terminal in New Orleans at the time of the storm, pursuant to a Transportation Agreement between the two companies which stated that "Shipper [Lafarge] shall assume the duty and responsibility of the safety of each barge in its possession." Decl. of Robert B. Fisher, Jr., in Supp. of Def.'s Mot. Transfer, dated Jul. 7, 2006 ("Fisher Decl.") ¶¶ 2, 3.

Lafarge is a defendant in a number of federal actions filed in the Eastern District of Louisiana that seek to hold it responsible for damage allegedly caused as a consequence of the ING 4727 striking the levee.[1] Ingram is also a defendant in these lawsuits, together with various federal, state, and municipal government entities and officials who have been sued for numerous torts, including defective and negligent design, construction, operation, and maintenance of the New Orleans navigable waterway system and failure to take precautions prior to the hurricane to prevent the ING 4727 from causing or contributing to the breaching of the levee. *See* 3d Party Compl., 05 Civ. 4419 (filed E.D. La. Aug. 31, 2006) §§ 3, 4.

In response to this deluge of litigation, Ingram as owner of the barge petitioned for exoneration from or limitation of liability pursuant to 46 U.S.C. App. § 183 *et seq.* in the Eastern District of Louisiana. Under this statute, known as the Limitation of Liability Act, a vessel owner

---

[1] It has not yet been determined whether class status will be granted. *See* Fisher Decl. ¶ 5.

may, if it meets certain criteria, be exonerated from liability or limit its liability to the value of the vessel after the accident. *See Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 414 & n.4 (1954). Thus, even if found liable for the injuries alleged by the class action plaintiffs, Ingram hopes to limit its liability to the value of the ING 4727, an insignificant sum given the vast damages presumably at stake. When a limitation of liability petition is filed, all claims and proceedings against the owner with respect to the matter in question are enjoined except insofar as they are part of the Limitation Proceeding. *See* 46 U.S.C. App. § 185. Chief Judge Berrigan of the Eastern District of Louisiana issued such an injunction and additionally consolidated all the other pending actions in the Hurricane Katrina litigation into the Limitation Proceeding. *See* Fisher Decl., Ex. H.

The involvement of the American Club, a nonprofit mutual protection and indemnity ("P&I") association of which Lafarge is a member, arises in this manner. P&I policies cover the insured against costs and liability arising out of death, injury, or property damage suffered by third parties. While at common law the doctrine of privity of contract prevented a third party injured by an insured from suing the insurer, a number of states now have "direct action" statutes that permit an injured party to sue a tortfeasor's insurer directly. *See generally* Mark Christian Elmer, Note, *Marine P&I Insurers No Longer Safe from the Louisiana Direct Action Statute (If They Ever Were): Grubbs v. Gulf International Marine, Inc.*, 18 Tul. Mar. L.J. 371, 372 (1994). Louisiana is one of these states. *See* La. Rev. Stat. Ann. § 22:655. Exercising their right to proceed directly against the insurer, plaintiffs in the Hurricane Katrina class actions filed amended complaints in the Eastern District of Louisiana naming the American Club as a defendant once they learned about Lafarge's policy with the American Club from interrogatories

3

in the litigation.[2]  *See* Def.'s Mem. in Supp. of Mot. Transfer ("Def.'s Mem."), at 4.  The American Club has filed answers in these cases.  *See* Fisher Decl. ¶ 8, Exs. F, G.

Under Fifth Circuit case law, the shipowner's ability to limit its liability under 46 U.S.C. § 183 does not affect its insurer's exposure, unless the terms of the policy themselves exclude coverage in such a situation.  *See Crown Zellerbach Corp. v. Ingram Indus. Inc.*, 783 F.2d 1296 (5th Cir. 1986).  The American Club's exposure could therefore potentially be great even if Ingram successfully limits its liability in the Limitation Proceeding.  Nevertheless, to prevail against the American Club on their direct action for damages at large, the direct action claimants will have to prove that the barge caused the damage alleged and that the barge was covered under Lafarge's P&I policy with the American Club.  The Club's action in this Court seeks a declaratory judgment that the policy did not cover the barge.

**B.    The Insurance Coverage Dispute Between the American Club and Lafarge**

Despite the complexity of the Hurricane Katrina litigation, the coverage issue presented by the case at bar appears to be a straightforward question of contract law.  On September 23, 2005, Lafarge gave the American Club written notice that it might be subject to claims for the ING 4727's breach of the 17th Street Canal Levee.[3]  *See* Aff. of Michael J. Mitchell in Opp'n to

---

[2] The plaintiff who had filed in February of 2006 had misidentified the American Club and filed an amended complaint on March 22, 2006 that properly identified the Club for the first time.  *See* Pl.'s Mem. in Opp'n to Def.'s Mot. Transfer ("Pl.'s Mem. in Opp'n"), at 16 n.6.

[3] Lafarge also held a primary marine liability/wharfinger's insurance policy with New York Marine & General Insurance Company ("NYMAGIC") that covered it for loss or damage caused by the breakaway of vessels at Lafarge's landing and/or mooring facilities, with a limit of $5,000,000 and additional excess coverage up to $45,000,000.  *See* Compl. ¶¶ 20-22.  NYMAGIC agreed that this policy covers the loss.  *See* Pl.'s Mem. in Opp'n, at 2.  In a separate action before this Court, NYMAGIC contends that it is not required under the policy to cover certain costs incurred by Lafarge in defending actions against it in Louisiana.  *See New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, No. 05 Civ. 9612 (S.D.N.Y.), discussed *infra* Part II.B(1)(I).

Def.'s Mot. Transfer, dated Aug. 18, 2006 ("Mitchell Aff."), Ex. 6.  In a letter to the American Club dated October 24, 2005, Lafarge's representative explained why Lafarge took the view that the Transportation Agreement, the contract with Ingram governing shipment of cement via the ING 4727, brought the barge within the coverage of Lafarge's P&I policy with the American Club. *See* Mitchell Aff., Ex. 8.

Each member of the American Club is issued a Certificate of Entry ("COE") with the Club that recites the terms of the governing P&I policy.  The policy is in turn governed by the American Club's Bylaws and Rules (collectively known as the "Club Rules"), together with any special terms and conditions applicable to that member.  Lafarge's COE contains a provision under the "Member Specific Clauses" that states as follows:

> If Lafarge corporation et al acquires an insurable interest in any vessel in addition to or in substitution for those set forth herein, through purchase, charter, lease or otherwise, such insurance as is afforded hereunder to any similar vessel shall automatically cover such additional vessel effective from the date and time the Assured acquires an insurable interest in such additional vessel.

Mitchell Aff., Ex. 7.

Clause 51 of the Transportation Agreement between Ingram and Lafarge states:

> Independent Contractor: Nothing contained in this Contract shall be construed as a contract by Shipper [Lafarge] for the chartering, hiring or leasing of any barge, or other equipment of Carrier [Ingram] to be provided hereunder; nor shall any of the agents, servants, subcontractors or employees of Carrier be regarded as employees of Shipper, it being understood that Carrier is in all respects an independent contractor and that Shipper shall exercise no control over the operation of any barge, towboat or other equipment of Carrier or over Carrier's agent servants, subcontractors or employees.

*Id.*

The American Club contends that the Transportation Agreement clearly shows that Lafarge did not purchase, charter, or lease the ING 4727, and thus that Lafarge did not obtain an "insurable interest" in the vessel within the meaning of its policy with the Club.  The American

Club also points to the phrase "in addition to or in substitution for" and maintains that the ING 4727 was not in addition to or in substitution for any vessel on the COE. *See* Tr. of Oral Argument on Dec. 18, 2006 ("Oral Arg. Tr."), at 29. Lafarge maintains that, to the contrary, it had acquired an insurable interest within the meaning of the policy, both because of the words "or otherwise" in the Member Specific Clause and because of the meaning of "insurable interest" as construed by New York law. Affirm. of Robert G. Clyne, Jr. in Supp. of Def.'s Reply Mem., dated Sept. 8, 2006 ("Clyne Affirm."), Ex. I. To resolve this dispute, the American Club filed the instant declaratory action on April 24, 2006, asking the Court to determine whether it is obligated to defend and/or provide coverage to Lafarge for the claims arising from the breakaway of the ING 4727. Compl. ¶ 1.

In the present motion, Lafarge claims, *inter alia*, that because the direct actions against the American Club were filed in the Eastern District of Louisiana prior to the declaratory action in this Court, the rule of judicial administration known as the "first-filed rule" should cause this Court to transfer the instant case to that district. *See generally First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (it is a "well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience . . . or special circumstances . . . giving priority to the second") (internal quotations and citation omitted). Alternatively, defendant seeks a stay of this action pending resolution of the issue in New Orleans.

The American Club contends that the first-filed rule does not warrant transfer of the case or a stay for a variety of reasons, among them that the present litigation in New Orleans would not fully dispose of the issues before this Court and that resolution of the issues in New Orleans would be so long in coming that the Club would suffer prejudice. The Club further contends that

the customary factors to be weighed in considering a transfer or stay make plain the appropriateness of venue in this district.

## II. DISCUSSION

### A.   Legal Background

#### 1.   Motion to Transfer Venue

28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The objectives of Section 1404(a) are "to prevent waste of time, energy and money and to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense." *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 394 (S.D.N.Y. 2006) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)) (internal quotations omitted).

District courts have broad discretion in determining whether transfer is warranted, and the factors of convenience and fairness are considered on a case-by-case basis. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). The analysis is a flexible one, because "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 179 (2d Cir. 1969). *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (challenge to district court's denial of motion to transfer because of alleged applicability of first-filed rule "ultimately fails

7

because the policy favoring consolidating related disputes is subject to the discretion of the trial court").

The factors considered by courts in the Second Circuit when deciding whether to transfer a case include: "(1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, No. 06 Civ. 2072, 2006 WL 2949932 (S.D.N.Y. Oct. 16, 2006); *Lynch v. Nat. Prescription Admin'rs*, No. 03 Civ. 1303, 2004 WL 385156, at *2 (S.D.N.Y. Mar. 1, 2004). "There is no rigid formula for balancing these factors and no single one of them is determinative" in what is "essentially an equitable task left to the Court's discretion." *Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (internal quotations and citation omitted). In performing the analysis, however, the district court must "give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum." *Id.* (internal citations and quotation omitted); *MK Sys. v. Schmidt*, No. 04 Civ. 8106, 2005 WL 590665, at *3 (S.D.N.Y. Mar. 10, 2005). The party moving for a change of venue bears the burden of establishing by clear and convincing evidence that transfer is appropriate. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 45, 56 (S.D.N.Y. 2001).

**2.      First-filed Rule**

"Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a 'first-filed' rule, whereby the court which first has possession of

the action decides it." *1-800 Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994) (citations omitted). It is only applicable where "in fact the suits are duplicative." *Spotless Enters. Inc. v. The Accessory Corp.*, 415 F. Supp. 2d 203, 205 (E.D.N.Y. 2006) (citation omitted). This principle requires a "substantial overlap" between the cases, in that they have "identical or substantially similar parties and claims." *Id.* (citation omitted).

However, the rule need not be applied where there is a "showing of balance of convenience or special circumstances giving priority to the second [case]." *D.H. Blair*, 462 F.3d at 106 (citation omitted). *Compare William Gluckin*, 407 F.2d at 178-79 (special circumstances warranted departure from first-filed rule even though facts did not fit neatly into an established exception to the rule), *with Simmons*, 878 F.2d at 80 (no facts or circumstances in the case compelled departure from first-filed rule). Special circumstances include situations where there is only a short span of time between the filing of the two actions, *In re Arbitration Between Griffin Indus., Inc. & Petrojam, Ltd.*, 58 F. Supp. 2d 212, 218 (S.D.N.Y. 1999), where there is a lack of progress in either litigation, *id.*, or where the interest of justice favors the second action. *Spotless Enterprises*, 415 F. Supp. 2d at 207. "The determination as to whether there are circumstances warranting departure from the first-filed rule is committed to the sound discretion of the district court." *MK Systems*, 2005 WL 590665, at *3 (citing *Simmons*, 878 F.2d at 77; *William Gluckin*, 407 F.2d at 179).

The factors to be weighed in balancing the competing interests for the purposes of assessing the applicability of the first-filed rule and deciding a motion to transfer venue are essentially the same, and so a single analysis will resolve both issues. *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 514 (S.D.N.Y. 2004). *See Spotless Enterprises*, 415 F. Supp. 2d at 207 (weighing same factors as in its § 1404(a) analysis). Thus, "[t]he first-filed

9

rule does not supersede the inquiry into the balance of convenience under § 1404(a)." *MK Systems*, 2005 WL 590665, at *3 (citation omitted). Consequently, where the first-filed rule is invoked in support of a motion to transfer, the court considers the rule as one among several factors in the overall calculus of efficiency and the interests of justice. *See MK Systems*, 2005 WL 590665, at *6-*7 (analyzing first-filed rule under "trial efficiency and interests of justice" factor). *See also Micromuse, Inc. v. Aprisma Mgmt Tech., Inc.*, No. 05 Civ. 0894, 2005 WL 1241924, at *4 (S.D.N.Y. 2005) (discussing prior related action pending in another court under "judicial economy" factor).

Because the first-filed rule is only applied after consideration of these factors, "a transfer justified under § 1404(a) is proper even if the action to be transferred was filed before a related action was filed in the transferee district." *MK Systems*, 2005 WL 590665, at *3. Conversely, when there are countervailing factors, transfer may be denied even if the existence of a pending related action in the proposed transferee district would otherwise favor transfer. *See Micromuse*, 2005 WL 1241924, at *4-*5 (declining to transfer even though a different patent infringement action between the parties was ongoing in proposed transferee district and therefore the factor "slightly favors transfer," because the other factors weighed against transfer).[4]

### 3.   Motion to Stay an Action

---

[4] The court in *Micromuse* did not invoke the first-filed rule specifically, because the first-filed action in that case concerned different patents, even though it was between the same parties. The claim was therefore related, even though not so intimately related as to be styled a "first-filed" action. For such related cases the analysis is similar, even though the pull to the transferee district is less than if the case had concerned the same issue or issues. *See Lynch*, 2004 WL 385156, at *6 ("While the existence of related litigation in another district is a factor that favors transfer . . . it is only one factor to consider and balance with all the other factors on a case-by-case basis.") (citation omitted) (declining to transfer case despite presence of related litigation on proposed transferee district). *See generally Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968) (noting existence of policy favoring litigation of related claims in same forum).

In determining whether an action should be stayed, courts in this circuit generally consider: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *GTFM, Inc. v. Park*, No. 02 Civ. 7020, 2002 WL 31890940, at *2 (S.D.N.Y. Dec. 30, 2002) (citation omitted). These factors are to be balanced, with the principal objective being the avoidance of unfair prejudice. *Consol. Edison Co. of N.Y. v. United States*, 30 F. Supp. 2d 385, 389 (S.D.N.Y. 1998) (declining to stay a declaratory judgment action upon balancing of factors). "The party moving for a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.'" *Authors Guild, Inc. v. Dialog Corp. (In re Literary Works in Elec. Databases Copyright)*, 2001 WL 204212, at *2 (S.D.N.Y. Mar. 1, 2001) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). When a district court decides to grant a stay, "it presumably concludes that the parallel litigation will be an adequate vehicle for the complete resolution of the issues between the parties." *Id.* (citation omitted).

**B.**  **Application of the Law**

**1. Motion to Transfer Venue**

A balancing of the factors considered for a motion to transfer venue demonstrates that defendant Lafarge has not met its burden of showing that transfer is warranted.

A. *Convenience of Witnesses*

11

Some courts have found the convenience of witnesses to be the most important factor in a motion to transfer. *See Lynch*, 2004 WL 385156, at *2-*3 (denying motion to transfer venue); *Aoerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) (denying motion to transfer venue). "When a party seeks the transfer on account of the convenience of witnesses under § 1404(a), [it] must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *rev'd on other grounds*, 652 F.2d 278 (2d Cir. 1981). *See also Flowserve Corp. v. BMCE., Inc.*, No. 05 Civ. 8075, 2006 WL 2927176, at *3 (S.D.N.Y. Oct. 12, 2006) (denying motion to transfer in part because defendant failed to provide even a general statement of the likely testimony of the witnesses it identified in the transferee district); *Samrat Ashoka Exp., Ltd. v. Mannix World Imp., Inc.*, No. 00 Civ. 3586, 2005 WL 77099, at *3 (S.D.N.Y. Jan. 12, 2005) (denying motion to transfer in part because movant did not specify number of witnesses or give "any indication as to the nature of the testimony" to be given by them). In assessing whether this factor favors transfer, the court generally considers only those witnesses residing in the proposed transferee district. *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 403 (S.D.N.Y. 2005).

Plaintiff American Club contends that the most relevant witnesses are the parties who negotiated the terms of the Certificate of Entry for defendant Lafarge, namely, the insurer, insured, and the two brokers. *See* Pl.'s Mem. in Opp'n, at 10. The insurer, American Club, has its only office in New York, as do both brokers. Defendant's headquarters are in Herndon, Virginia, and plaintiff points out that this location will be more convenient to New York than Louisiana, *see* Pl.'s Mem. in Opp'n, at 11. The parties dispute the need for witnesses from Ingram. *See* Pl.'s Mem. in Opp'n, at 12. In any event, while Ingram has an office in New

12

Orleans, it is headquartered in Nashville, Tennessee, and Lafarge entered into the Transportation Agreement with Ingram through Lafarge's Missouri office and Ingram's Illinois office, *see* Pl.'s Mem. in Opp'n, at 12; Ex.10, indicating that Louisiana is no more convenient than New York for witnesses concerning the Transportation Agreement.

So far the witness convenience factor would seem to clearly favor plaintiff. But there exists a dispute between the parties as to the relevance of testimony about the circumstances of the barge's unmooring and, as a result, the convenience of venue for these non-party witnesses. *Compare* Def.'s Reply Mem. in Supp. of Def.'s Mot. Transfer ("Def.'s Reply Mem."), at 8 ("The Club's mistaken claim that the only relevant witnesses are those on behalf of the broker, insurer and insured is based on its faulty assumption that the circumstances of the casualty in New Orleans have no bearing on coverage for any liability arising from that casualty."), *with* Pl.'s Mem. in Opp'n, at 13 ("In discussing the location of material witnesses, Lafarge again makes reference to the plaintiffs in the New Orleans Limitation Proceeding, who cannot give any relevant testimony on the insurance coverage issue before this Court.").

I conclude that defendant has failed entirely to show that evidence of how the casualty occurred would have any relevance to the issues of policy coverage presented by the case at bar. Defendant states in several places that there are factual issues in New Orleans that bear on the question of whether Barge ING 4727 was covered under the American Club's policy. In its Reply Memorandum, for instance, defendant claims that "[w]hether coverage attaches because of LNA's acquisition of an insurable interest turns entirely on activity in New Orleans and clearly has little to do with New York." Def.'s Reply Mem., at 9. Defendant relies upon an affirmation by its attorney Robert Clyne to support the proposition that "the circumstances under which the barge came to be located at LNA's New Orleans facility at the time Hurricane Katrina struck

establish coverage under the 'Chartered Barges' clause of the Certificate of Entry." *Id.* But these conclusory assertions in defendant's brief have no factual support. The Clyne affirmation and its attached exhibit make no reference whatsoever to circumstances involving the barge's operation. The supporting materials merely quote the "insurable interest" clause under Lafarge's policy and portions of its Transportation Agreement with Ingram and then cite to New York law construing the meaning of an insurable interest. *See* Clyne Affirm., Ex. I. Lafarge's summary of its position in a letter to the American Club, likewise, makes no mention of any facts on the ground or in the litigation in New Orleans. *See id.* at 5 ("We respectfully submit, therefore, that both the wording of the policy and the law support LNA's position that LNA had an insurable interest in Barge ING-4727 at the time of the casualty."). At oral argument Mr. Clyne did not provide much further elucidation.[5] Thus I agree with plaintiff that Lafarge's laundry list of witnesses residing in or near Louisiana who are likely to be needed for the liability questions in the Limitation Proceeding is irrelevant for purposes of the present motion.

Quite apart from its failure to persuade me of the general proposition that testimony of witnesses in New Orleans will be relevant, Lafarge has not specified key witnesses to be called or described what their testimony will cover. *See* Fisher Decl. ¶¶ 10, 11 (giving general list of witnesses for the Katrina litigation, not the case at bar).

   B.  *Location of Relevant Documents and the Relative Ease of Access to Sources of Proof*

---

[5] Counsel did offer his opinion that the question of whether Lafarge had care, custody, and control of the barge at the time of the hurricane implicated witnesses in Louisiana, *see* Oral Arg. Tr. at 12; *see also* Clyne Affirm., Ex. I (under Clause 34 of the Transportation Agreement, Lafarge assumed "the duty and responsibility for the safety of each barge in its possession"). The testimony of witnesses in New Orleans may indeed be helpful in answering that question, but the question itself does not bear on the coverage issue but rather on whether the suits in New Orleans attempting to hold Lafarge responsible for damage allegedly caused by the barge have merit.

14

The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents. *See Aerotel Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) (cited by *Lynch*, 2004 WL 385156, at *3). Defendant has indicated no special facts that would make this factor weigh in its favor.

### C. *Convenience of the Parties*

Where a transfer would "merely switch the burden of inconvenience from one party to the other," this factor either is essentially neutral. *Lynch*, 2004 WL 385156, at *3 (balance of convenience factor, "if not neutral, does not clearly swing in [movant's] favor" in such a situation) (citation omitted). Defendant claims that transfer would save it from having to "fight a two front war in different jurisdictions." Def.'s Reply Mem., at 2. Defendant expresses the view that transfer of the case would actually benefit the American Club because it would save the Club's witnesses from giving testimony in two venues. *See* Def.'s Mem., at 8. But plaintiff Club's headquarters and only U.S. offices are in New York, and I find no reason to question its assertion that New York is more convenient for it. *See MK Systems*, 2005 WL 590665, at *3 ("[E]ach party naturally prefers the convenience of litigating in the forum of residence."). At most, then, defendant would merely shift the burden of inconvenience from one party to the next, a result that does not cause the factor to weigh in its favor.

Additionally, courts have held that where the movant has an extensive nationwide network, the scale tilts slightly in favor of the nonmovant. *1-800 Flowers*, 860 F. Supp. at 134. Defendant Lafarge is publicly traded on the New York Stock Exchange and is the largest diversified supplier of construction materials in the U.S. and Canada, *see* Pl.'s Mem. in Opp'n, at 13, and for this reason the convenience factor, if anything, tips slightly in plaintiff's favor.

### D. *Locus of Operative Facts*

15

The locus of operative facts is a "primary factor" in determining whether to transfer venue. *Mattel, Inc. v. Procount Bus. Servs.*, No. 03 Civ. 7234, 2004 WL 502190, at *4 (S.D.N.Y. Mar. 10, 2004) (cited by *MK Systems*, 2005 WL 590665, at *5). Along with the location of material witnesses, this has a bearing on where the "center of gravity" of the action rests. *See Foothill Capital Corp. v. Kidan*, No. 03 Civ. 3976, 2004 WL 434412, at *1 (S.D.N.Y. Mar. 8, 2004) (citation omitted). Defendant claims that Louisiana is the center of gravity, since this case originates in the extensive Hurricane Katrina litigation that is ongoing in Louisiana. However, in determining the locus of operative facts for an insurance coverage issue, the locus in question is the site of "the execution of the contract, not the location of the incident which triggered the insurance claim." *Royal Ins. Co. of Am. v. Tower Records*, No. 02 Civ. 2612, 2002 WL 31385815, at *4 (S.D.N.Y. Oct. 22, 2002) (terrorist attack in New York giving rise to policyholders' claim did not shift locus of operative facts to New York, in situation where policy was negotiated, purchased, and delivered in California). As plaintiff points out, this action concerns a policy that was negotiated and executed in New York, issued in New York by a New York insurer, and subject to interpretation under New York law. *See* Pl.'s Mem. in Opp'n, at 1. That the casualty giving rise to the P&I policy coverage dispute happened in Louisiana is therefore irrelevant, and New York is the center of operative facts as to that dispute. Nor does the existence of lawsuits against the American Club under Louisiana's direct action statute change the center of gravity for the particular claim presented in this action, namely, whether the Club's P&I policy issued to Lafarge covers Ingram's barge.

Defendant also asserts in its Reply Memorandum that facts on which the coverage question turns pertain to Louisiana. *See* Reply Mem., at 9. However, as discussed *supra*, the documents which defendant cites to support this point nowhere mention any facts specific to

Louisiana but instead merely recite the contractual provisions on which Lafarge relies for its coverage position. *See* Clyne Affirm. & Ex. I. If there are facts relevant to the question of policy coverage that are grounded in Louisiana, defendant has not specified what they are, and it is difficult to imagine what they might be. Defendant certainly has not shown that the "locus of operative facts" resides there. This factor therefore weighs in plaintiff's favor.

### E.  *Availability of Process to Compel Attendance of Unwilling Witnesses*

For the reasons stated *supra*, this case does not appear to involve non-party witnesses, apart from the brokers and possibly witnesses from Ingram. While defendant points out that the brokers could be deposed in New York pursuant to Fed. R. Civ. P. 45(a)(2) if this case were transferred to the Eastern District of Louisiana, *see* Oral Arg. Tr. at 20, this would clearly be second-best to their live testimony. This factor weighs against defendant.

### F.  *Relative Means of the Parties*

Defendant is the largest diversified supplier of construction materials in the U.S. and Canada, with net sales exceeding $4.3 billion in 2005. *See* Pl.'s Mem. in Opp'n, at 13-14. Plaintiff states that "[b]y any measure, the Club's revenue and its size are dwarfed by Lafarge." *Id.* at 14. Defendant does not address this factor or dispute plaintiff's characterization, so I assume for the purposes of this motion that the relative means of the parties favors plaintiff.

### G.  *Forum's Familiarity with the Governing Law*

While federal courts in other states are capable of construing New York law, especially in a straightforward contract question, *see Flowserve*, 2006 WL 2927176, at *4, the forum's familiarity with the governing law may be a factor even in contract cases. *See MK Systems*, 2005 WL 590665, at *5 (factor "tips decidedly in favor" of defendants in contract dispute). *See also Am. Eagle Outfitters*, 2006 WL 2949932, at *4 (where there are state law claims, the "forum's

familiarity with governing law supports retention of the action"). This factor therefore tips somewhat in plaintiff's favor, as even defendant concedes. *See* Def.'s Mem., at 9.

### H. *Weight Accorded a Plaintiff's Choice of Forum*

A plaintiff's choice of forum is to be given substantial weight and "should not be disturbed unless the balance of convenience and justice weighs heavily in favor of defendant's proposed forum." *Micromuse*, 2005 WL 1241924, at *3; *MK Systems*, 2005 WL 590665, at *3. This deference is even greater where there is a material connection or significant contact between the forum state and the events allegedly underlying the claim, or where the plaintiff's chosen forum is its principal place of business. *MK Systems*, 2005 WL 590665, at *6. Deference to a plaintiff's choice of forum can, however, be overcome by application of the first-filed rule. *1-800 Flowers*, 860 F. Supp. at 145. Here, because the disputed contract was negotiated and executed in New York, and the American Club's principal place of business is New York, this factor favors plaintiff. As explained in Part II.B.1(I) *infra*, the first-filed rule does not have great force in this case, and I do not apply it. As a consequence, the heavy weight accorded to plaintiff's choice of forum remains undiminished.

### I. *Trial Efficiency and the Interests of Justice*

Defendant's motion rests heavily on the contention that the first-filed rule warrants transfer of the case. However, as noted in Part II.A.2, *supra*, the rule is not applied automatically. There are a number of relevant inquiries. The first inquiry is whether virtually the same issue or issues are being decided between the same parties in the respective actions. *See Spotless Enterprises*, 415 F. Supp. 2d at 205. While Lafarge and the American Club are not adverse parties in Louisiana, as they are both defendants vis-à-vis the third-party plaintiffs, the coverage issue may indeed have to be decided in that action. However, even Lafarge concedes that a ruling

18

in its favor would still leave unresolved the question of whether LNA is entitled to defense costs in the Hurricane Katrina litigation. *See* Def.'s Mem., at 15.[6] The two actions are therefore not coextensive, although they overlap on one of the two issues at stake.

Defendant would have me consider the effect of not transferring the case and argues that this would amount to an enormous waste of private and judicial resources. In its brief defendant makes much of the case *Mangin v. Murphy Oil USA, Inc.*, No. 04 Civ. 2172, 2005 WL 1074987 (E.D. La. May 1, 2005), which concluded that arbitration between an insurer and an insured concerning coverage of a liability policy would have no collateral estoppel effect on direct action claims against the insurer. *Id.* at *6. Defendant uses this case to argue that if this Court adjudicated plaintiff's declaratory action, collateral estoppel would not bar the suit by the direct action plaintiffs in Louisiana, thereby creating duplicative litigation. Def.'s Reply Mem., at 3-4. Contrary to the impression that defendant forwarded in its brief, however, *see* Fisher Decl. ¶ 5 ("A decision in a declaratory judgment or any other action brought by the American Club in a jurisdiction outside of Louisiana would have no collateral estoppel effect on the direct action claim against The American Club in New Orleans."), this is not settled law. *Mangin* was called into question by the Fifth Circuit on precisely the point for which defendant uses it. *See Acosta v. Master Maint. & Constr. Inc. et al.*, 452 F.3d 373, 378 n.7 (5th Cir. 2006) ("[W]e note our skepticism of the analysis adopted by the *Mangin* court."). Moreover, after the motion before this Court was fully briefed, District Judge Barbier, who wrote the *Mangin* opinion, acknowledged the

---

[6] Lafarge contends that "[b]ecause the Eastern District of Louisiana is intimately involved in the disposition of the underlying claims giving rise to this case, it can sensibly apply such disposition in the coverage dispute." Def.'s Mem., at 15. The Eastern District of Louisiana's intimacy with the questions surrounding the breakaway of the barge does not, however, make it any more acquainted with the insurance coverage question. I do not see how it can "apply" its disposition as to liability to the coverage dispute, although I do not doubt that it could competently address the coverage issue if it were obliged to reach that question.

Fifth Circuit's criticism of that opinion. *See Ancar v. Murphy Oil, U.S.A., Inc. et al.*, No. 06 Civ. 3246, 2006 WL 2850445, at *4 (E.D. La. Oct. 3. 2006) ("The Fifth Circuit's decision in *Acosta* expressly criticized this Court's *Mangin* decision and certainly seems to be at odds with it.").

Indeed at oral argument defendant's counsel muted the reliance placed upon *Mangin* in his brief and attempted to shift focus to two other cases in support of its collateral estoppel theory. *See* Oral Arg. Tr. at 7-9, 40-41. These cases, however, do not speak directly to the collateral estoppel issue; they address the question of whether arbitration between an insurer and insured entitles the insurer to a stay of a direct action plaintiff's claim against it. *See Talbott Big Foot, Inc. v. Boudreaux*, 887 F.2d 611 (5th Cir. 1989) (while arbitration between insurer and insured proceeds, insurer is not entitled to stay of direct action plaintiffs' claims against it as a matter of law but rather district court has discretion to issue such a stay for a brief period); *Zimmerman v. Int'l Companies & Consulting, Inc.*, 107 F.3d 344 (5th Cir. 1997) (affirming denial of insurer's motion to stay litigation by direct action claimant pending arbitration between insurer and insured). These cases consider the rights of the direct action plaintiffs prospectively rather than addressing what effect a coverage *decision* would have on their claims.[7] It may be that a court in the Fifth Circuit would find that the direct action plaintiffs in Louisiana would not be collaterally estopped by this Court's decision of non-coverage in favor of the American Club from litigating the same question, but there currently exists no decision squarely on point. Moreover, counsel for

---

[7]It is true that the Fifth Circuit in *Talbott* did touch upon the question of preclusion when the court ruminated, "The question would be closer if the insured, Patterson, and the plaintiffs could be considered in privity so that an arbitrator's award in [insurer's] favor would have preclusive effect against the plaintiffs. We disagree with [insurer] that [insured] is an adequate representative of [direct action claimants] so as to be in privity with [them]. Privity in this context requires some type of legal relationship between the two entities so that the one engaged in the litigation is legally accountable to the other. Mere alignment of interests is not sufficient to establish privity." *Talbott*, 887 F.2d at 614 n.4 (citations omitted). While the court in this dicta did begin to approach the collateral estoppel question, I read the Fifth Circuit's later opinion in *Acosta* as signaling an altered view on that question. At the very least, this group of cases indicates that the Fifth Circuit has not decided the question.

Lafarge conceded at oral argument that if Lafarge were to *win* the coverage dispute in New York, collateral estoppel may well be available against the American Club in the direct action suits. *See* Oral Arg. Tr. at 40.

Furthermore, as the Fifth Circuit made clear in *Acosta*, even without the application of collateral estoppel, "a court might find the results of arbitration between insurers and insured . . . to be persuasive, if not binding, and thus rely thereon in determining policy coverage." *Acosta*, 452 F.3d at 378 n.7. The Fifth Circuit, in other words, observed that a court faced with a coverage determination resulting from arbitration might well find it persuasive. I find this particularly apt in the present circumstances where the question will be litigated in this Court of law as opposed to an arbitration, the action will be subject to all of its evidentiary and procedural rules, the Court will be applying New York law, and the decision may (I dare to hope) be affirmed by the Second Circuit. Certainly, if the roles were reversed I would be inclined to accept the determination by the Eastern District of Louisiana on the extent of coverage of a Louisiana insurance policy governed by Louisiana law.

A risk of inconsistent interpretations of the policy does remain, and this, I agree, is undesirable. But while courts should seek to avoid the possibility of two interpretations of the same policy language in different courts, *see Lumbermens Mut. Cas. Co. v. Conn. Bank & Trust Co.*, 806 F.2d 411, 414 (2d Cir. 1986), in this case competing concerns about timing tip the interests of justice analysis in favor of maintaining venue here.

Judicial efficiency has a temporal component and "mandates that the matter be decided at the *earliest* possible time." *Raytheon Co. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*, 306 F. Supp. 2d 346, 354 (S.D.N.Y. 2004). If I transfer this case to the Eastern District of Louisiana, the matter will not be decided at the earliest possible time. Plaintiff points out that a scheduling order

21

in the Katrina litigation has divided the trial into four phases, none of which specifically mentions insurance claims. *See* Pl.'s Mem. in Opp'n, at 16-17. As the scheduling order describes, "Phase I will address privity of knowledge/limitation of liability of those parties who have asserted admiralty petitions for limitation of liability." Decl. of Neil T. Bloomfield in Opp'n to Mot. Transfer, dated Aug. 18, 2006 ("Bloomfield Decl."), Ex. 4, at 2. That group of parties includes Ingram, which has petitioned to limit its liability. The next three phases will address "(a) overall liability, including specific causation and contributing or comparative fault issues; (b) class certification; and (c) damages." *Id.* In its reply brief, defendant interprets the "overall liability" phase to "necessarily include" the insurance coverage issue, *see* Def.'s Reply Mem., at 5 ("As 'overall liability' should necessarily include the liability of the Club on the direct action complaints, the Club cannot reasonably argue that the coverage issues would be litigated any later than the second phase."), but defendant's inference from the scheduling order is not entirely self-evident. Contrary to defendant's reading, it would also be reasonable for the coverage question to follow both liability phases and be addressed in the damages phase, as the question of coverage is irrelevant unless Lafarge is liable for the damage caused by the ING 4727.[8] I also note that under *Cushing*, the direct action claims can only be addressed after the limitation proceeding has concluded. *See Cushing*, 347 U.S. at 422-23. While defendant seeks to distinguish *Cushing* and points out that it was only a plurality decision, *see* Oral Arg. Tr. at 44, that case undercuts defendant's contention that plaintiff has "been sitting on [its] rights down there, and there's

---

[8] Like the schedule ultimately adopted by Chief Judge Berrigan, defendants' scheduling proposal in the Limitation Proceeding, signed by attorneys for Lafarge, envisioned two initial liability phases, followed by a class action certification phase and then by a "merits phase" that would consider "all issues as to all parties including third-party defendants." Bloomfield Aff., Ex. 3. Although the language of the proposed "merits phase" is vague, this could plausibly be read to encompass coverage issues.

22

nothing to suggest that the American Club can't get a prompt adjudication of coverage in New Orleans if they speak up in that proceeding and ask for it." Oral Arg. Tr. at 17.

The trial for Phase I in the Eastern District of Louisiana has been set down for May 21, 2007, but no dates have been given for the remaining stages of the litigation. *See* Pl.'s Mem. in Opp'n, at 17. Since the earliest the coverage issue could be resolved is in Phase II's consideration of "overall liability," and even this is not a certain prospect, it is safe to say that resolution of this issue will not be expeditious. The parties may well be staring down the barrel of this case for years to come. This is particularly troubling because one issue in this declaratory action is whether the American Club is responsible for Lafarge's litigation costs. Defendant dismisses the importance of this issue to the present transfer motion by arguing that the district court in New Orleans could resolve that issue in addition to the indemnity issue if this declaratory action were transferred. *See* Def.'s Mem., at 15. However, the American Club has a strong interest in not watching Lafarge's defense costs mount ever higher in a proceeding as it waits years for its possible obligations in the matter to be determined. The purpose of the first-filed rule is to promote judicial efficiency, and I cannot conclude that in this case judicial efficiency would be served by applying the rule: quite the reverse. *Cf. Micromuse*, 2005 WL 1241924, at *4 (while "[u]ndoubtedly, some judicial economy could be realized by transferring this action to a Court already somewhat familiar with the parties and patents involved," transferring the action "could also prove inefficient" because plaintiff's related claim against a different defendant would remain pending in New York).

Additionally, where suits are filed in quick succession and/or the court with the first filed action has done little with respect to it, the rule carries less weight. *See Raytheon*, 306 F. Supp. 2d at 352-53 (first-filed rule "should not be applied mechanically," and "where the two actions

were filed within a short span of time, the court may afford a diminished degree of deference to the forum of the first filing"). *See also Petrojam*, 58 F. Supp. at 218 (rejecting first-filed rule in part because of a lack of progress in both litigations); *Findwhat.Com v. Overture Servs., Inc.*, No. 02 Civ. 447, 2003 WL 402649, at *5 (S.D.N.Y. Feb. 21, 2003) (taking into consideration lack of progress in either litigation in departing from first-filed rule). Here, the fact that the direct actions began little more than a month before the American Club filed the instant action, *see* Pl.'s Mem. in Opp'n, at 16,[9] and that Chief Judge Berrigan has not devoted significant judicial resources to the direct action claims against the American Club or developed any expertise with regard to the insurance coverage issues, give the first-filed rule still less force.

Two final considerations in the interests of justice analysis under § 1404(a) remain. The first is the pull that the case captioned *New York Marine and General Insurance Co. v. Lafarge North America*, No. 05 Civ. 09612 (S.D.N.Y.) ("NYMAGIC") may exert in keeping the instant action in this judicial district. *NYMAGIC* involves a dispute over whether Lafarge is due defense costs and/or possesses the right to appoint defense counsel under another insurance policy it held whose extent of coverage was also put at issue by the wayward ING 4727. *See* Pl.'s Mem. in Opp'n, at 2-3. I agree with defendant that this case is not so related to the present action as to weigh heavily against transfer. If this motion were merely a contest between the relative draw of related cases over the present action—a contest between the first-filed actions in Louisiana and the *NYMAGIC* case in this Court—the first-filed actions would win. Nevertheless, considered merely as a factor in and of itself (as I have considered the weight of the direct actions separately), *NYMAGIC* does weigh against transfer, as it involves a similar coverage issue for the

---

[9] The instant action was filed on April 24, 2006. *See* Pl.'s Mem. in Opp'n, at 16 n.7.

defendant in the instant case. Moreover, as counsel for the American Club pointed out at oral argument, the NYMAGIC policy may help me understand how Lafarge's overall insurance coverage was put together. *See* Oral Arg. Tr. at 35 ("[I]t will shed light on the testimony that would be heard by your Honor with respect to the brokers testifying who obtained the policies, what their intentions were in terms of obtaining coverage and what types of liabilities were intended to be covered under both policies, because . . . there is a conscious decision to dovetail insurances to avoid overlapping. . . .").

One final consideration is the forum-selection clause in the Club Rules, which provides that if Lafarge were to bring an action against the American Club disputing coverage, this action would have to be brought in the Southern District of New York. *See* Pl.'s Mem. in Opp'n, at 2 (in the event of any "difference or dispute . . . concerning the construction of the [Club Rules], or the insurance afforded by the [Club]," suit against the American Club "shall be brought in the United States District Court for the Southern District of New York"). While this clause does not carry great weight in my analysis, both because it only applies to actions initiated by Lafarge and because even mandatory forum-selection clauses do not themselves dispose of a motion to transfer under § 1404(a), *see Beatie*, 431 F. Supp. 2d at 394, it does speak to the fairness concerns of § 1404(a). Defendant had to have been fully prepared, from the moment it entered into the P&I policy, to litigate disputes arising under the policy in New York. Even defendant concedes that the forum-selection clause could be a factor under my § 1404(a) analysis. *See* Def.'s Mem. at 7 ("Therefore, the permissive forum selection clause in the Club Rules . . . is at best no more than one of several factors for the court to consider as part of its § 1404(a) analysis."). The jurisdictional provision ultimately makes Lafarge's contention that this district is inconvenient and unfair less convincing. Counsel for plaintiff contended at oral argument that since "Lafarge

is contractually obligated to have that determination made up here . . . they're seeking to do by this motion what they could not do directly, that is, they could not bring this action directly in Louisiana. . . ." Oral Arg. Tr. at 42.

When the totality of the circumstances are considered, the interests of justice weigh in favor of maintaining this action in the present forum.

### Balancing of the Factors

All of the factors either weigh in plaintiff's favor, albeit with varying strengths, or are neutral. As none of the factors clearly weighs in defendant's favor, defendant has fallen short of its burden of showing by clear and convincing evidence that transfer is warranted.

### 2. Motion to Stay the Action

The public interest here favors resolving the dispute now, as "New York has an undoubted interest in regulating an insurance contract negotiated, executed, and administered in New York by a New York Company." *Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs. Inc.*, No. 04 Civ. 1852, 2005 WL 696897, at *6 (S.D.N.Y. Mar. 24, 2005) (internal quotations and citation omitted) (declining to transfer venue in insurance coverage dispute). Judicial economy only slightly favors a stay as the only judicial resources saved by a stay would be those of this Court in deciding the insurance coverage issue now as opposed to allowing Chief Judge Berrigan to decide it (or to decide that it need not be decided); the issue concerning legal expenses would remain and would need to be resolved by this Court.

The private interests at stake, however, militate against issuing a stay. Defendant's burden of litigating this action in this Court cannot be overwhelmingly great, as the COE's forum selection clause would have required Lafarge to bring this action in this district had it chosen initiate litigation concerning coverage. It is possible that, as defendant states, both parties may

26

have to relitigate the extent of indemnity in response to the direct action claims if I allow this case to proceed. The burden to defendant of such duplicative litigation, however, is relatively minimal, as the coverage question may never be reached in the Limitation Proceeding or, if it is reached, the court may be persuaded by the Court's resolution of the coverage dispute (after appeals, if any). On the other hand, if I were to grant a stay, the American Club would have to litigate the remaining issue of legal expenses incurred by Lafarge in this forum upon the conclusion of the direct action lawsuits. That means that this question will be reopened regardless of what happens there, and, due to the unavoidable delays inherent in such a large proceeding, the American Club may have to wait years for a decision. This is precisely the sort of substantial prejudice to a party that the law seeks to avoid.

### III. CONCLUSION

Balancing these factors, this Court concludes that transfer of the action to the Eastern District of Louisiana is unwarranted. The case at bar is a discrete contract issue under New York law, and under the circumstances, I find that remaining in this district would be "the least abrasive method of judicial administration." *Simmons*, 878 F.2d at 80. I discern no compelling reason to transfer the case to Louisiana, such as would overcome the substantial deference due to plaintiff's selection of forum. And I find that plaintiff would be significantly prejudiced if I were to stay this action pending the outcome of the Limitation Proceeding.

Accordingly, defendant's motion to transfer the case or, in the alternative, to stay this action, is denied in its entirety.

It is SO ORDERED.

Dated: New York, New York
       January 29, 2007

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE



# HILL RIVKINS

## HILL RIVKINS & HAYDEN LLP

45 Broadway, Suite 1500, New York, NY 10006-3739
Tel: 212 669-0600    Fax: 212 669-0698/0699
e-mail: thefirm@hillrivkins.com
Website: www.hillrivkins.com

July 18, 2008

**Fax Transmission 212-805-7909 and BY HAND**

The Honorable Charles S. Haight
United States District Judge
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:  **New York Marine and General Insurance
Co. v. Lafarge North America Inc.
05 Civ. 9612 (CSH)
Our File No.: 29089-RGC/AJP/JJS**

**American Steamship Owners Mutual
Protection and Indemnity Association,
Inc. v. Lafarge North America, Inc.
06 CV 3123 (CSH)
Our File No: 29089-1-RGC/AJP/JJS**

**Northern Assurance Co. of America, et al.
v. Lafarge North America, Inc.
08 Civ. 3289
Our File No.: 29089-3-RGC/AJP/JJS**



EXHIBIT
2

Dear Judge Haight:

We represent the defendant, Lafarge North America, Inc. ("LNA"), with respect to the captioned matters and write (1) to discuss a discovery issue in the American Club action, and (2) in response to the July 17, 2008 letter from counsel for the American Club, to explain why an early conference with Your Honor is necessary.

(1) With respect to discovery in the American Club case, the last fact witness was deposed yesterday, July 17, 2008, by the Club and the only discovery remaining are

North Broadway
Ambow, NJ 08879-1638
Sk. 2809  Fax: 732 316-2365
thefirm@hillrivkins.com

TEXAS
712 Main Street, Suite 1515
Houston, TX 77002-3209
Tel: 713 222-1515 Fax: 713 222-1359
e-mail: thefirm@hillrivkins.com

CONNECTICUT
60 Quarry Dock Road
Branford, CT 06405-4654
Tel: 203 315-9274 Fax: 203 315-9264
e-mail: thefirm@hillrivkins.com

CALIFORNIA
Hill Rivkins/Brown & Associates
11140 Fair Oaks Boulevard, Suite 100
Fair Oaks, CA 95628-5126
Tel: 916 535-0263 Fax: 916 535-0268
e-mail: thefirm@brnlaw.com

The Honorable Charles S. Haight
July 18, 2008
Page 2

expert depositions which we understand were to be completed during the week of July 28. Each of the Club and LNA has one expert on insurance coverage, and expert reports have already been exchanged. In view of the action of Judge Duval in the Katrina Barge Litigation in New Orleans (*In Re Katrina Canal Breaches Consolidated Litigation*, Civil Action No. 05-4182), we have proposed to counsel for the Club that expert depositions be held in abeyance unless or until it is finally determined that this case is going forward regardless of any decision taken by Judge Duval in New Orleans. Both sides are ready and willing to provide experts to be deposed. However, the Club's counsel has indicated to us a desire to proceed during the week of July 28th and we have expressed a desire to hold the depositions in abeyance. We are hesitant to proceed with expert depositions here without certainty as to whether this case is going forward, and we believe a conference with Your Honor will help the parties resolve any issues with respect to conducting those depositions.

(2) We strongly disagree with the Club's suggestion that a conference is not necessary with respect to submissions ordered by Judge Duval in the New Orleans Katrina Barge Litigation. If for no other reason, the status of this case needs to be clarified in light of what we are being asked to do in New Orleans. As you are aware, we initially moved to transfer this case to New Orleans where all insurance issues were bound to be determined, most especially the direct action claims against the various insurers. Our client has been invited/ordered to make a submission to Judge Duval on or before July 28, and as the responsible advocates we must be, we intend to argue that Judge Duval consider a summary judgment by the Barge Plaintiffs in that action, particularly given the fact that Lafarge's claim is obviously covered under the Certificate of Entry. It now appears the Club, having previously advised you that it would not make a motion for summary judgment, is in fact scrambling to submit a motion for summary judgment solely on account of the action taken by Judge Duval. We firmly believe that this is the type of "rush to judgment" that federal practice discourages, and we believe that all the outstanding issues in this case need to be addressed in a conference before the Court, including the Court's commitment to moving forward with this litigation.

In view of the foregoing, we respectfully request a telephone conference with Your Honor at your earliest possible opportunity and stand available at your convenience to coordinate such a conference.

Respectfully submitted,

HILL RIVKINS & HAYDEN LLP

Anthony J. Pruzinsky



The Honorable Charles S. Haight
July 18, 2008
Page 3


AJP:ds

cc:     *Via E-mail*
        Thacher Proffitt & Wood LLP
        Attn:   John M. Woods, Esq.

        *Via E-mail*
        Nicoletti Hornig Campise & Sweeney
        Attn: John A.V. Nicoletti, Esq.

        *Via E-mail*
        David Fromm, Esq.
        Brown Gavalas & Fromm LLP


29089-1\036JudgeHaight



# Thacher Proffitt

Thacher Proffitt & Wood LLP
Two World Financial Center
New York, NY  10281
212.912.7400

Fax: 212.912.7751
www.tpw.com

July 22, 2008

**VIA EMAIL AND REGULAR MAIL**

Anthony J. Pruzinsky, Esq.
John J. Sullivan, Esq.
Hill Rivkins & Hayden LLP
Suite 1500
45 Broadway
New York, New York 10006

Re:    American Steamship Owners Mutual Protection and Indemnity
        Association, Inc. v. Lafarge North America, Inc. (06 Civ. 3123 (CSH))
        Your File No.: 29089-1-RGC/AJP/JJS
        Our File No.:  20239-00002

Gentlemen:

We write with respect to the depositions of the respective parties' experts in the captioned matter, which were proposed for July 30 and 31, 2008.  As discussed between the undersigned and Mr. Pruzinsky in person on July 17, 2008, and as stated in your letter of July 18, 2008 to the Honorable Charles S. Haight, we understand your position to be that those depositions should not go forward, due to your client's pending request for a conference before Judge Haight.  As you are aware, we disagree with that position, as we do not believe that the request for a conference has any bearing on the completion of discovery in the case.  Accordingly, we are prepared to go forward with those depositions on the dates above mentioned.

However, and as you are aware, the American Club's expert, Mr. Graham Edmiston, lives in London.  His travel plans must be cancelled or finalized by tomorrow to avoid significant costs and penalties, as well as in fairness to Mr. Edmiston.  Accordingly, if we do not hear from you by noon tomorrow, July 23, 2008, we will tell Mr. Edmiston to cancel his reservations.

We trust the foregoing is clear, but please contact the undersigned if you have any questions.

Very truly yours,

THACHER PROFFITT & WOOD LLP

By: *John M Woods*

**EXHIBIT**

**3**

New York, NY        Washington, DC        White Plains, NY        Summit, NJ