**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

|  |  |  |
|---|---|---|
| | * | |
| **IN RE: KATRINA CANAL BREACHES** | * | |
| **CONSOLIDATED LITIGATION** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO. 05-4182** |
| | * | **and consolidated cases** |
| | * | |
| **PERTAINS TO: BARGE** | * | |
| | * | **SECTION "K" (2)** |
| *Boutte v. Lafarge* 05-5531 | * | |
| *Mumford v. Ingram* 05-5724 | * | |
| *Lagarde v. Lafarge* 06-5342 | * | **JUDGE** |
| *Perry v. Ingram* 06-6299 | * | **STANWOOD R. DUVAL, JR.** |
| *Benoit v. Lafarge* 06-7516 | * | |
| *Parfait Family v. USA* 07-3500 | * | **MAGISTRATE** |
| | * | **JOSEPH C. WILKINSON, JR.** |
| | * | |

**MEMORANDUM OF LAFARGE NORTH AMERICA INC.
IN OPPOSITION TO PLAINTIFFS' OBJECTIONS AND APPEAL
FROM THE MAGISTRATE JUDGE'S RULING ON
LNA'S MOTION FOR A PROTECTIVE ORDER WITH RESPECT TO
PLAINTIFFS' SECOND RULE 30(B)(6) NOTICE TO LNA**

On July 2, 2008, Magistrate Judge Wilkinson issued an order that <u>allowed</u> plaintiffs to take a <u>second</u> Rule 30(b)(6) deposition of defendant Lafarge North America Inc. ("LNA"), except with respect to specific topics on which – as the Magistrate Judge found in a detailed, topic-by-topic decision – he had already permitted plaintiffs to depose LNA during their first Rule 30(b)(6) deposition of LNA or that invade LNA's work product as established in prior discovery rulings. Doc. 13711 (Exh. 1 hereto). Plaintiffs have appealed that ruling. Doc. 13804. Plaintiffs' appeal plainly fails to satisfy the high standard for overturning such a fact-specific discovery order and should therefore be denied.

## THE RELEVANT PROCEEDINGS TO DATE

1.      On August 18, 2006, Plaintiff served a "Notice of Proposed FRCP 30(b)(6) Deposition and Records Deposition" (hereinafter "First 30(b)(6) Notice") on LNA.[1]  LNA moved for a protective order on the ground that the notice was unreasonably broad and covered topics that were outside the scope of discovery during Phase I of the proceedings before Chief Judge Berrigan.

2.      On October 25, 2006, however, Magistrate Judge Wilkinson <u>denied</u> LNA's motion for a protective order on all but a handful of topics and ordered LNA to provide a corporate witness to testify as to nearly all of the topics listed in plaintiffs' deposition notice.[2]  Those topics included, for instance, hurricane preparation, the mooring of the barge, the existence of "investigatory documents" concerning mooring of the barge or breaches of the floodwall, the identity of witnesses, and the location of relevant documents.[3]  The Magistrate Judge expressly found that these topics were within the scope of permissible Phase I discovery.  Exhibit 3 hereto at 1-2.

3.      In accordance with the Magistrate Judge's ruling, LNA provided a 30(b)(6) witness, Edward VanderMeulen, to testify on November 10, 2006.  He testified fully on all of the issues listed in the notice about which plaintiffs' counsel examined him.  Plaintiffs asked Mr. VanderMeulen about a variety of topics, including hurricane preparation, the mooring of the barge, and LNA's investigation of the casualty.[4]  Plaintiffs concluded the deposition and did not move to compel any further answers from Mr. VanderMeulen.  There has been no complaint that

---

[1] Plaintiffs' original Rule 30(b)(6) Notice is Doc. 291-3 in No. 05-4419 (Exhibit 2 hereto).

[2] The Magistrate Judge's ruling on the protective order motion is Doc. 317 in No. 05-4419 (Exhibit 3 hereto).

[3] See First 30(b)(6) Notice at Topics 4, 9, 13, 23, 30, and 31.

[4] Representative excerpts from Mr. VanderMeulen's deposition are attached as Exhibit 4 hereto.  These excerpts, like all other exhibits to this memorandum, were presented to the Magistrate Judge.

LNA failed in any way to comply with its obligations to provide a witness on all topics listed in the notice and permitted by the Court.

4.      Plaintiffs' appeal contains a number of misstatements concerning that first Rule 30(b)(6) deposition of LNA.  First, plaintiffs erroneously assert (at 4) that LNA was not deposed as a party defendant in the first deposition.  To the contrary, as the caption to plaintiffs' first Rule 30(b)(6) notice explicitly states, the first deposition was taken in these very same cases, brought by these very same plaintiffs with their very same counsel, against LNA as a defendant:  No. 05-4237 (*Parfait Family*), No. 05-5531 (*Boutte*), and No. 05-5724 (*Mumford*).   See Exhibit 2 at caption.[5]  Along the same lines, plaintiffs inaccurately assert (at 4) that the first deposition was taken only by them as individual claimants in limitation, not as representatives of a putative class.  This again is disproved by the first deposition notice, which expressly shows that it was taken in the very same putative class action lawsuits in which the Second Rule 30(b)(6) Notice was filed, that the plaintiffs were taking the deposition in their role as "plaintiffs" rather than as defendants in the limitation action filed by Ingram, and that plaintiffs were taking the deposition as putative class representatives against LNA, which is what they remain today.  See Exhibit 2 at caption (listing case numbers of putative class actions against LNA) and p. 1 (expressly stating that deposition was being taken by "plaintiffs Ethel Mumford, et al, The Parfait Family, et al, Marie Benoit, et al, and Blair Boutte, et al") (emphasis added).  Finally, plaintiffs assert (at 3-4) that Magistrate Judge Wilkinson granted LNA's motion for a protective order with respect to the first deposition and thereby precluded plaintiffs from questioning LNA about matters going to its supposed negligence.  To the contrary, as Magistrate Wilkinson held in his July 2, 2008 Order and as shown above, the Magistrate Judge denied LNA's motion for a protective order and

---

[5]  Indeed, page 1 of the first notice also specifically said that the deposition was also being taken on behalf of plaintiffs Marie Benoit et al., who are plaintiffs in No. 06-7516.

allowed questioning as to the vast majority of issues, specifically including those involving issues relating to LNA's alleged negligence.

5.      On April 30, 2008, without seeking (much less obtaining) leave of court, plaintiffs served their second Rule 30(b)(6) deposition notice of LNA.  Doc. 12871 (Exhibit 5 hereto). This Second 30(b)(6) Notice contained 22 topics with numerous subparts, amounting to a total of 40 separate topics.  The vast majority of those topics duplicate the topics that the Magistrate Judge had expressly allowed plaintiffs to ask LNA about during the first Rule 30(b)(6) deposition, while the remaining topics either seek to invade LNA's work product or, in LNA's view, are otherwise improper.  Accordingly, on May 27, 2008,  LNA filed a motion for a protective order seeking to bar plaintiffs for taking a second deposition of LNA in this case. Doc. 13820.

6.      Because plaintiffs filed the Second 30(b)(6) Notice without obtaining leave of court, which is specifically required under F.R.C.P. 30(a)(2)(A)(ii) for a second deposition, the Magistrate Judge could have summarily granted LNA's May 27, 2008 motion for a protective order barring the deposition in toto.  Instead, Magistrate Judge Wilkinson reviewed each topic listed in plaintiffs' Second 30(b)(6) Notice.  See Exhibit 1.  He granted LNA's motion with respect to the particular subjects that, he found, he had authorized the plaintiffs to depose LNA about in their first Rule 30(b)(6) deposition of LNA, and that accordingly plaintiffs' repetition of those topics in the Second Rule 30(b)(6) Notice constituted "duplicative" discovery.  He denied LNA's motion as to topics that did not duplicate plaintiffs' first Rule 30(b)(6) deposition notice, even where plaintiffs have already obtained discovery on those topics by other means.  Finally, he declined to address the propriety of an additional topic ("Topic 23") that plaintiffs had tried to

add to their deposition notice after LNA had already filed its motion for a protective order,

indicating that that additional topic would be addressed in a subsequent proceeding.

## ARGUMENT

Plaintiffs again ignore the high burden that they must meet in this appeal.  This Court has

previously emphasized the limited scope of its review of rulings by the Magistrate Judge:

> The Federal Rules of Civil Procedure permit district courts to refer nondispositive pretrial matters, including discovery disputes, to federal magistrates.  Fed. R. Civ.P. 72(a); see also Eastern District of Louisiana Local Rule 72.1E(A) [hereinafter Local Rules]; 28 U.S.C. § 636(b)(1)(A).  A magistrate's ruling on such a nondispositive matter is appealable to the district court.  *Id*.  "The district judge to whom the case is assigned ... shall modify or set aside any portion of the magistrate's order [only if] found to be clearly erroneous or contrary to law."  Fed.R.Civ.P. 72(a) (emphasis added); see also Local Rule 74.1M(A); 28 U.S.C. § 636(b)(1)(A).  Indeed, the "clearly erroneous" standard requires that the court affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed."  *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)); *See also* Fed.R.Civ.P. 72(a).  The district court may not undertake a de novo review of the magistrate's disposition.  *See e.g.*, *Merritt v. Int'l Brotherhood of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. Unit A 1981).  Under the clearly erroneous standard of review, the review by the district court is circumscribed and the district court is bound by the clearly erroneous rule in reviewing questions of fact.  *Blair v. Sealift*, 848 F.Supp. 670 (E.D.La.1994) (*citing Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir.1992).

Doc. 11391 at 1.  Furthermore, "[a] party is not entitled to raise new theories or arguments in its

objections that the party did not present before a magistrate judge."  *Hunter v. Copeland*, 2004

U.S. Dist. LEXIS 12992 (E.D. La. July 9, 2004) (*citing Cupit v. Whitley*, 28 F.3d 532, 535 n.5

(5th Cir. 1994

I.      **The Magistrate Judge Correctly Barred Plaintiffs from Taking a Second 30(b)(6) Deposition of LNA on the Same Subjects Covered by Plaintiffs' Notice for their First 30(b)(6) Deposition of LNA**

Magistrate Judge Wilkinson granted LNA's motion for a protective order with respect to 16 of the topics in plaintiffs' Second 30(b)(6) notice because they duplicate topics allowed by his October 25, 2006 order.  The Magistrate Judge ruled as follows (Order at 2):

> The motion is granted as to Topics Nos. 1(a), 1(b), 1(c), 1(d), 2, 3, 5(second), 6, 10(a),  10(b), 10(c), 11, 12(a), 12(b), 20 and 21 of plaintiffs' second Fed. R. Civ. P. 30(b)(6) deposition notice to Lafarge.  These topics are virtually identical and/or substantially similar to Topics Nos. 3, 4, 9, 10, 14, 16, 22, 23, 24, 30, 31 and 32 of plaintiffs' first Fed. R. Civ. P. 30(b)(6) notice of deposition of Lafarge.  Examination concerning these topics was permitted in an earlier phase of discovery in these cases by the court's order of October 25, 2006 in Civil Action No. 05-4419, Record Doc. No. 317, and the deposition was conducted on November 10, 2006. Thus, plaintiffs already have had ample opportunity to obtain through deposition testimony the information sought in this second Rule 30(b)(6) deposition, and another deposition on these topics would be unreasonably cumulative or duplicative of the earlier deposition.  Fed. R. Civ. P. 26(b)(2)(C)(i), (ii).  No further Rule 30(b)(6) deposition testimony will be permitted as to these topics.

This ruling was well within the Magistrate Judge's discretion.  With respect to second depositions, Federal Rule of Civil Procedure 30(a)(2)(A)(ii) specifically provides that "[a] party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(2), if the parties have not stipulated to the deposition and the deponent has already been deposed in the case."  It is well settled that this rule fully applies to Rule 30(b)(6) depositions of corporations and other organizations.  See *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001); *In re Sulfuric Acid Antitrust Litig.*, 2005 U.S. Dist. LEXIS 17420 (N.D. Ill. Aug. 19, 2005).

Plaintiffs violated Rule 30(a)(2)(A)(ii) by noticing their second Rule 30(b)(6) deposition of LNA without having first obtained leave of court.  That alone constitutes sufficient reason to

quash the deposition notice, regardless of whether plaintiffs could have established good cause if they had properly sought leave. *E.g.*, *In re Sulfuric Acid Antitrust Litig.*, 2005 U.S. Dist. LEXIS 17420, at *8. Since the Magistrate Judge could have quashed the deposition notice on this ground, Your Honor likewise may deny plaintiffs' appeal on this threshold ground.

As set forth above, however, the Magistrate Judge elected to overlook plaintiffs' procedural default and to examine plaintiffs' second notice under the standards of Rule 26(b)(2), whose application is specified by Rule 30(a)(2)(A)(ii). As the Magistrate Judge explained, Rule 26(b)(2)(C) provides that the court "must" limit discovery if it determines that "(i) the discovery sought is unreasonably cumulative or duplicative" or "(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action." Under these principles, courts have repeatedly refused to permit a second Rule 30(b)(6) deposition of an organization on a subject that was open for questioning during the first deposition. See *Padana Assicurazioni-Societa Azioni v. M/V Caribbean Express I*, 1999 WL 30966, at *2 (E.D. La. Jan. 21, 1999) (Wilkinson, M.J.) (second deposition would be unduly cumulative or duplicative); *Lernout v. KPMG*, 225 F.R.D. 64, 66 (D. Mass. 2004) (first deposition represented ample opportunity, and topics in second notice were identical or subsumed in topics from the first notice); *Barron v. Caterpillar, Inc.*, 168 F.R.D. 175 (E.D. Pa. 1996).

Plaintiffs do not (and cannot) dispute that legal principle – a party may not take a second deposition of an entity on a topic that was open for questioning during that entity's first deposition. Instead, plaintiffs argue that Magistrate Judge Wilkinson factually misunderstood what topics were open for questioning during their first Rule 30(b)(6) deposition of LNA. That argument is absurd on its face, given that it was Magistrate Judge Wilkinson who issued the detailed

October 25, 2006 order allowing plaintiffs to depose LNA on these same subjects during their first Rule 30(b)(6) deposition.  See Exhibit 3.

Not only is plaintiffs' argument inherently incredible, it is refuted by the record.  First, plaintiffs imply that the first deposition was taken solely in the limitation of liability proceeding, that they took it as limitation claimants rather than as putative class action plaintiffs against LNA, and that LNA was a mere witness rather than a defendant.  Each of these assertions is demonstrably false.  As demonstrated above, the first deposition was formally noticed by plaintiffs in their putative class action lawsuits against LNA.  The caption of the deposition notice specifically listed the plaintiffs' class action lawsuits against LNA:  "05-4237" (which is *Parfait Family*), "05-5531" (*Boutte*), and "05-5724" (*Mumford*).  Moreover, the very first sentence of the notice specifically said that it was being taken by "counsel for <u>plaintiffs</u> Ethel Mumford, <u>et al</u>, The Parfait Family, <u>et al</u>, Marie Benoit, <u>et al</u>, and Blair Boutte, <u>et al</u>," thereby confirming that they were taking the deposition (1) as "plaintiffs," not as defendants in a limitation proceeding; and (2) in their role as named representatives of their putative class action lawsuits against LNA.  See Exhibit 2 (emphasis added).  Plaintiffs' assertion is also disproved by the plain language of the topics in their first deposition notice which, for example, inquire into LNA's "defenses" – thus underscoring that plaintiffs were deposing LNA as a defendant, not a bystander.

Thus, the first deposition was taken in the same cases that are now pending, and by the same plaintiffs in the same role that they have today – namely, named plaintiffs in a putative class action against LNA.

Likewise, plaintiffs' contention (at 8-10) that their first deposition of LNA was limited to the "Phase I" issue of the "privity or knowledge" of the limitation petitioners, and that they were barred from inquiring into LNA's allegedly negligent actions, is patently untrue, as Magistrate

Judge Wilkinson's ruling makes clear.  At plaintiffs' request, the Magistrate Judge <u>rejected</u> just that kind of limit on their first deposition of LNA.   See Exhibit 3 at 4 (holding that LNA's request to limit the deposition to "privity or knowledge" is "specifically rejected" because LNA's proposed limited scope "is unduly narrow, overly restrictive and based on objections that I find have no merit").   Indeed, having successfully persuaded Magistrate Judge Wilkinson that the proper scope of discovery at the time of their First 30(b)(6) notice included the subjects at issue, plaintiffs are <u>judicially estopped</u> from now arguing that those subjects were outside the scope of "Phase I" discovery.  See *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005) (judicial estoppel applies to prevent party from taking position inconsistent with one that it previously persuaded a court to adopt).

Indeed, the Magistrate Judge found as a fact that many of the topics in plaintiffs' second deposition notice are "virtually identical and/or substantially similar" to the topics in plaintiffs' First 30(b)(6) Notice that he allowed to go forward.  We now address each of these topics:

> **Topic No. 1(a):  "Any and all knowledge Lafarge had preceding Katrina of … [the] nature and contents of any and all written regulations, guidelines, recommendations and/or standards relevant to mooring of vessels and/or barges in advance of a hurricane."**

As the Magistrate Judge found (at 2), this topic is virtually identical to Topic No. 16 in plaintiffs' First 30(b)(6) Notice, which requested a corporate deposition concerning "all written or other policies, standards, manuals, guidelines, regulations, … and other communications and/or publications possessed by, used by, implemented by, consulted by, or available to … Lafarge" concerning hurricane preparation relating to barges.  The Magistrate Judge allowed the first deposition to cover that topic.

**Topic No. 1(b):  "Any and all knowledge Lafarge had preceding Katrina of … [the] nature and contents of written regulations, guidelines, recommendations, and/or standards relevant to mooring of vessels and/or barges within the IHNC."**

Just like prior Topic 1(a), this topic is, as the Magistrate Judge found (at 2), virtually identical to Topic No. 16 in plaintiffs' First 30(b)(6) Notice.

**Topic No. 1(c):  "Any and all knowledge Lafarge had preceding Katrina of [the] forecasted nature, strength, direction, and effects of Katrina."**

As the Magistrate Judge found (at 2), this topic is virtually identical to Topics Nos. 3 and 14 in the First 30(b)(6) Notice, which covered "[a]ny and all circumstances by which [LNA] acquired knowledge of the weather disturbance eventually named Katrina" (Topic 3) and "[a]ny and all inquiries made by [LNA] regarding Katrina" (Topic 14).

**Topic No. 1(d):  "Any and all knowledge Lafarge had preceding Katrina of any and all pre-Katrina actions undertaken by Lafarge with respect to the barges at the France Road facility in light of any or all knowledge, or lack thereof."**

As the Magistrate Judge found (at 2), this topic is virtually identical to Topic No. 4 of the First 30(b)(6) Notice, which covered "any and all measures and preparations which [LNA] undertook … to move, remove, prepare or secure ING 4727 for Katrina" and Topic 9 of that First Notice, which covered "[a]ny and all knowledge [LNA] had of the mooring methods and equipment used to tie ING 4727."

**Topic No. 2:  "Nature and proof of any and all of Lafarge's knowledge, contention, and defenses as to ING 4727's escape from its berth at the Lafarge facility during the effects of Katrina."**

As the Magistrate Judge found (at 2), this topic is virtually identical to Topic No. 10 of the First 30(b)(6) Notice, which covered "any and all knowledge Lafarge had/has of ING 4727's escape from its berth at Lafarge during the effects of Katrina."

**Topic No. 3:   "The existence, nature, contents, and custodians of any and all investigatory documents pertaining to ING 4727's berthing and/or mooring at the LNA facility, escape from its berth at the Lafarge facility, and/or possible breach(es) of the Industrial Canal floodwall."**

As the Magistrate Judge found (at 2), this topic is virtually identical to Topic No. 23 of the First 30(b)(6) Notice, which reads: "The existence, nature, content and custodian(s) of any and all investigatory documents pertaining to ING 4727's berthing and/or mooring at Lafarge, escape from its berth at Lafarge, and/or possible breach(es) of the Industrial Canal floodwall."

**Topic No. 5 (Second):   "The existence, nature, contents, and custodians of all communications, statements, accounts, representations and accident and/or incident reports describing any casualty in which ING 4727 was involved during Katrina."**

As the Magistrate Judge found (at 2), this topic is virtually identical to Topic No. 22 of the First 30(b)(6), which called for LNA to provide a witness on "the existence, nature, contents and custodian(s) of any and all accident and/or incident reports describing occurrences in which ING 4727 was involved, during Katrina, and otherwise."

**Topic No. 6:   "The existence, nature, contents, and custodians of all communications, reports, writings, records, correspondence, memoranda, bulletins, and other materials concerning any movement of ING 4727 from within the Industrial Canal to or through the eastern floodwall, into the residential area of the Lower Ninth Ward."**

As the Magistrate Judge found (at 2), this topic is virtually identical to Topic No. 24 of First 30(b)(6) Notice, which called for testimony regarding all documents or "other materials" concerning "any movement of ING 4727 from within the Industrial Canal to or through the eastern floodwall, into the residential area of the Industrial Canal."   The Magistrate Judge permitted plaintiffs' inquiry on this topic at the prior deposition.

**Topic No. 10(a):  "The existence, contents, and custodians of any land, aerial or satellite video or photo, and/or graphic, diagram, or visual representation … on August 28-29, 2005 [of] the Lafarge France Road facility and environs."**

As the Magistrate Judge found (at 2), this topic is virtually identical to Topics 23, 24, and 31 of the First 30(b)(6) Notice, which covered documents regarding the events at the LNA facility on August 28-29, 2005.

**Topic No. 10(b):  "The existence, contents, and custodians of any land, aerial or satellite video or photo, and/or graphic, diagram, or visual representation … on August 28-29, 2005 [of] … Industrial Canal and environs."**

As with the previous topic, this topic, as the Magistrate Judge found (at 2), is virtually identical to Topics 23, 24, and 31 of the First 30(b)(6) Notice, which covered documents regarding the events at the LNA facility on August 28-29, 2005.

**Topic No. 10(c):  "The existence, contents, and custodians of any land, aerial or satellite video or photo, and/or graphic, diagram, or visual representation … on August 28-29, 2005 [of] … ING 4727."**

As with the two prior topics, this topic, as the Magistrate Judge found (at 2), is virtually identical to Topics 23, 24, and 31 of the First 30(b)(6) Notice, which covered documents regarding the events at the LNA facility on August 28-29, 2005.

**Topic No. 11:  "Identities and whereabouts of any and all persons who claim to have knowledge of the movement of ING 4727 from the Lafarge dock to its eventual resting place in the residential area of the Lower Ninth Ward."**

As the Magistrate Judge found (at 2), this topic is virtually identical to Topic No. 32 of the First 30(b)(6) Notice, which covered the "[i]dentities and whereabouts of any and all persons with knowledge of the movements of ING 4727 from the Lafarge dock to its eventual resting place in the residential area of the Lower Ninth Ward."

**Topic No. 12(a):  "Identities and whereabouts of any and all persons who claim to have seen ING 4727 make contact with the eastern IHNC floodwall, and/or transit from the canal side of the eastern IHNC floodwall to the residential side during Katrina."**

As the Magistrate Judge found (at 2), this topic is substantially similar to Topics Nos. 24 and 30 of the First 30(b)(6) Notice, which covered the movement of the barge, its transit into the neighborhood, and the identity of witnesses to these events.

**Topic No. 12(b):  "Identities and whereabouts of any and all persons who claim to have heard scraping sounds and/or booms and/or explosions in the Lower Ninth Ward during Katrina."**

As with the prior topic, this topic, as the Magistrate Judge found (at 2), is substantially similar to Topics Nos. 24 and 30 of the First 30(b)(6) Notice, which covered the movement of the barge, its transit into the neighborhood, and the identity of witnesses to these events.

**Topic No. 4.   "The existence, nature, contents, and custodians of any and all communications, statements, representations, and reports made by Lafarge to any and all governmental agencies and/or investigative bodies relevant to the breakaway of ING 4727 and/or the eastern IHNC floodwall breaches subject of this suit, including but not limited to the United States Coast Guard, Army Corps of Engineers, IPET, ILIT, Team Louisiana, National Science Foundation; and/or parties to Robinson and/or MRGO litigation."**

The Magistrate Judge granted LNA's motion in part as to this topic, ruling that "[t]o the extent that this topic seeks (1) oral communications made by Lafarge to governmental and/or investigative agencies and (2) any communications by Lafarge to the parties in the Robinson and/or MRGO litigation, Topic No. 4 is not duplicative of previous topics.  The motion is granted in all other respects as to this topic, which is otherwise duplicative of previous Topics Nos. 23 and 31."  Order at 2.

The Magistrate Judge was correct in finding that, other than the parts on which he allowed a deposition, this topic is substantially similar to Topic No. 23 in the First 30(b)(6) Notice, which covered "[t]he existence, nature, content and custodian(s) of any and all

investigatory documents pertaining to ING 4727's berthing and/or mooring at Lafarge, escape from its berth at Lafarge, and/or possible breach(es) of the Industrial Canal floodwall," and Topic No. 31 in the First 30(b)(6) Notice, which covered the "nature, existence, contents and custodian(s) of any and all writings" pertaining to the "foregoing" topics.  The Magistrate Judge permitted plaintiffs' inquiry on those topics at the first deposition.

In sum, the Magistrate Judge's ruling granting a protective order against Topics 1(a), 1(b), 1(d), 2, 3, 5(second), 6, 10(a), 10(b), 10(c), 11, 12(a), and 12(b),, and against part of Topic 4, as duplicating topics allowed during their earlier deposition plainly was not clearly erroneous and should be affirmed.[6]

The Magistrate Judge also granted a protective order against part of Topic 18 on this same ground – because it duplicates a topic during plaintiffs' First 30(b)(6) deposition.  Because plaintiffs address this topic separately, we address it separately below.

## II.    The Magistrate Judge's Other Rulings Challenged by Plaintiffs Should Also be Affirmed

Plaintiffs also challenge three miscellaneous rulings by the Magistrate Judge.  Once again, their arguments do not begin to meet the stringent standards for overturning the Magistrate Judge's discovery rulings.

**Topic No. 16:  "Nature, timing, description, memorialization and/or recordation of, and participants in, any and all communication and contact between Lafarge, its agents, and representatives and Arthur Murph, Jeanne Murph, Shirley Priestly, Jennifer Fernandez, Wayne Priestly, New Berkley LLC and/or New Jourdan LLC concerning transaction or compromise of claims related to ING 4727, concerning the movement of ING 4727, concerning the sale or purchase of 1739 Jourdan Avenue and/or 105 Berkley Drive."**

The Magistrate Judge granted LNA's motion in part, ruling as follows:

---

[6] The Magistrate Judge also granted a protective order against Topics 20 and 21.  Plaintiffs did not appeal that aspect of the Magistrate Judge's ruling.  Also, those two Topics are identical to Topic 16 in the First 30(b)(6) Notice.

> The motion is granted to the extent that Topic No. 16 seeks communications by Lafarge and its agents concerning any transaction or compromise with the Murphs (including the sale and purchase of 1739 Jourdan Avenue and 105 Berkley Drive). The court has ruled that limited discovery will be allowed concerning this topic, and the limited discovery has already occurred. However, the motion is denied as to communications by Lafarge and its agents with the listed persons concerning the movement of the Barge ING 4727, which was not the subject of prior deposition topics. This portion of Topic No. 16 remains subject to the court's prior rulings concerning Lafarge's work product privilege.

Order at 2. In other words, Magistrate Judge Wilkinson held that (1) plaintiffs <u>can</u> depose LNA about any communications with Mr. Murph (or the other individuals) concerning the movement of the Barge, but (2) plaintiffs <u>cannot</u> depose LNA about its settlement with the Murphs.

This topic is duplicative of information sought during Phase I, in which this Court permitted the plaintiffs to take discovery regarding the Murph settlement but specifically limited the scope of that discovery. Rec. Doc. 535 in No. 05-4419, at 23-24. This topic is also duplicative of Document Request No. 15, which called for production of "[a]ny and all communications" between LNA and the Murph parties regarding the settlement. This Court expressly denied plaintiffs' motion to compel any further discovery under that request. Rec. Doc. 12605 at 12-14. Thus the Court has already ruled that LNA has satisfied its obligations concerning discovery of the Murph settlement, and plaintiffs may not use a Rule 30(b)(6) notice to pursue the same discovery that the Court has already specifically denied. The Magistrate Judge was clearly correct – and ***not*** "clearly erroneous" – to deny a Rule 30(b)(6) deposition on topics as to which he has previously prohibited further discovery.

**Topic No. 18:** "The nature, issuance, entry, contents, limits, coverage, terms, effects, underwriters of, and nature of any claims or controversies concerning, any and all policies of primary, excess, surplus and other marine casualty insurance issued to LNA and in effect at times pertinent to this litigation, specifically including but not limited to that issued by American Steamship Owners (The American Club)."

As noted above, Magistrate Judge Wilkinson granted LNA's motion in part as to this topic on the same ground discussed above – namely, that it covered the same topic that plaintiffs were allowed to depose LNA about during the first 30(b)(6) deposition.   Specifically, the Magistrate Judge ruled that "[t]he motion is denied to the extent that this topic seeks information concerning any claims or controversies arising out of Lafarge's insurance coverage, which was not included in plaintiffs' first Rule 30(b)(6) deposition notice.  The motion is granted as to the remainder of the topic, which is duplicative of previous Topic No. 28."

This ruling is plainly correct to the extent it found duplication with Topic No. 28 of the First 30(b)(6) Notice, which covered "the existence, nature, contents, substance, language, coverage terms, and limits of any and all policies of liability, pollution, excess, reinsurance and other hazard insurance issued to … Lafarge … and/or providing coverage of ING 4727 from August 22 – August 29, 2005."  The Magistrate Judge permitted plaintiffs' inquiry on those topics at the first deposition.  Accordingly, he was clearly correct in ruling that plaintiffs had already had their opportunity to depose LNA on all of Topic 18 other than "information concerning any claims or controversies arising out of Lafarge's insurance coverage."

To the extent that plaintiffs seek to imply that the corporate transaction they seek to inquire about in their new, belated transaction Topic 23 affords some basis for duplicating the insurance issues about which they already had a chance to depose LNA, plaintiffs are wrong. The corporate stock repurchase transaction took place, and was fully publicly disclosed, in early 2006.  Magistrate Judge Wilkinson's order <u>allowing</u> plaintiffs to depose LNA on insurance

16

matters was not issued until about six months later, on October 26, 2006.  Accordingly, even if the corporate transaction had any bearing on LNA's insurance – which is not the case – plaintiffs had a full opportunity to depose LNA on that subject during their first deposition.

**Topic No. 23:  Added in plaintiffs' "amended" Second 30(b)(6) Notice**

As set forth above, plaintiffs served their Second 30(b)(6) notice on LNA on April 30, 2008, and LNA filed its motion for a protective order on May 27, 2008.

Two days <u>after</u> LNA filed its motion for a protective order, plaintiffs purported to file and serve an amended Rule 30(b)(6) deposition notice on LNA.  Doc. 13343.  That amended notice sought to add a new Topic 23 (which plaintiffs actually mis-numbered as a second Topic 22). That Topic 23 seeks to inquire into a corporate stock repurchase transaction that took place in early 2006, a shareholder lawsuit concerning that transaction, and LNA's SEC filings in 2006. LNA thereupon filed a supplemental memorandum with the Magistrate Judge, showing that, if the Magistrate Judge elected to address this belated topic, it has no bearing on the issues framed by plaintiffs' complaints against LNA and should therefore be quashed as well.  Doc. 13392-2. Plaintiffs filed a response urging the Magistrate Judge to allow them to depose LNA on this new topic.

In the July 2, 2008 order, Magistrate Judge Wilkinson declined to rule on this Topic, noting that it had been added after LNA had already filed its motion and that plaintiffs had not even attached a copy of the amended notice to their response.  Order at 3.  Requiring that the issue be properly presented to the court was well within the Magistrate Judge's discretion. Having failed to include this Topic in their original notice, plaintiffs cannot complain that the Magistrate Judge allowing LNA to file a separate motion addressing any newly-added Topics.

LNA has filed a new motion for a protective order, addressing this new Topic, with the Magistrate Judge.  Doc. 14073 (Exhibit 6 hereto).

Although Topic 23 is therefore not ripe for Your Honor's consideration at this time (because it is pending before Magistrate Judge Wilkinson), it is also evident that Topic 23 lies far outside the permissible scope of discovery in this case.  It is well settled that, under Rule 26(b)(1) as amended in 2000, discovery is limited to information relevant to the issues in the case as framed by the pleadings.[7]  Topic 23 is utterly irrelevant to the issues in plaintiffs' complaints and LNA's answers, which solely concern the events during Hurricane Katrina during 2005, not some corporate transaction in 2006.  Plaintiffs assert that the 2006 transaction could be relevant to a potential "veil piercing" claim against LNA's parent company.  But that hypothetical claim is not within the pleadings and hence is outside the scope of discovery.[8]  Nor will it ever be in the pleadings, since the Court-imposed deadline for adding parties to these cases expired over two years ago (see Doc. No. 199 in Case No. 05-4419 et al., at 3; Doc. No. 210 in Case No. 05-4419 et al, at 2), and plaintiffs could never establish good cause to reopen that deadline to add this claim since the 2006 transaction was a matter of public record before that dead-

---

[7]  See Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's <u>claim or defense</u>") (emphasis added); *Aetna Life Ins. Co. v. DFW Sleep Diagnostics Center*, No. 02-1335, 2004 U.S. Dist. LEXIS 3786, *8 n.1 (E.D. La. Mar. 28, 2004) (Berrigan, J.) ("[t]he scope of discovery" is "determined by the pleadings"); *Ehrlich v. Incorporated Village of Sea Cliff*, No. 04-4025, 2007 U.S. Dist. LEXIS 39824 (E.D.N.Y. May 31, 2007) (scope of discovery is confined "to those claims and defenses asserted in the pleadings"); *Equal Rights Center v. Archstone-Smith Trust*, No. 04-3975, 2008 U.S. Dist. LEXIS 53000, *7-8 (D. Md. Feb. 7, 2008) (current version of Rule 26(b)(1) "was intended to narrow the scope of discovery and limit it to the claims and defenses raised in the complaint"); *Burns v. American United Life Ins. Co.*, No. 05-466, 2006 U.S. Dist. LEXIS 46126 (S.D. Ill. Jul. 7, 2006) (the scope of discovery is … controlled by the issues raised in the complaint); *Grother v. Union Pacific RR*, No. 04-3279, 2006 U.S. Dist. LEXIS 38415, *35-36 (S.D. Tex. 2006) (plaintiff's "complaint circumscribed the scope of relevant discovery").

[8]  See, *e.g.*, *Chen v. Imperial Buffet & Restaurant, Inc.*, No. 06-3459, 2007 U.S. Dist. LEXIS 78883, *5 (D.N.J. Oct. 23, 2007) (refusing to permit discovery on alter ego liability theory not pled in complaint because "Plaintiffs may not proceed to the discovery stage to support an allegation that does not exist in the pleadings").

line expired.  Furthermore, no veil-piercing issue would even potentially arise until after plaintiffs had secured, and been unable to collect on, a judgment against LNA.  For all of these reasons, this Court should not overturn the Magistrate Judge's handling of new Topic 23.

## CONCLUSION

Plaintiffs' appeal should be denied.

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
Ivan M. Rodriguez (#22574)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

/s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

## Certificate of Service

I do hereby certify that I have on this 29th day of July, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ John D. Aldock

19