UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO.: 05-4182 "K"(2) |
| | * | |
| _____ | * | JUDGE DUVAL |
| **PERTAINS TO:  ALL INSURANCE** | * | |
| | * | MAGISTRATE JUDGE WILKINSON |
| | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * * * * * | * | |

### DEFENDANTS' RESPONSE TO CHEHARDY PLAINTIFFS' MOTION FOR RECONSIDERATION OF POST-SHER INSURANCE UMBRELLA CASE MANAGEMENT ORDER

Defendants, through undersigned liaison counsel, hereby respond to the motion made by the "Chehardy Representative Policyholders" ("Movants") for reconsideration of this Court's Post-Sher Insurance Umbrella Case Management Order.

### INTRODUCTION

The Louisiana Supreme Court, in *Sher v. Lafayette Ins. Co.*, 07-2441 (La. 4/8/08), 2008 WL 928486, unanimously reaffirmed what the Fifth Circuit had already held in *In re Katrina Canal Breaches Litig.*, 495 F.3d 191 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1231 (2008); *i.e.*, that the insurers' flood exclusions preclude coverage for all flood damage, regardless of the cause.  The Fifth Circuit's decision in *In re Katrina*, which included the *Chehardy* case (as to which mandate has issued), required dismissal of Movants' flood damage claims, and *Sher* has eliminated any doubt about the necessity to effectuate the Fifth Circuit mandate.  As a result, on June 13, 2008, this Court properly dismissed with prejudice "all claims asserted by plaintiffs in this consolidated litigation against any insurer defendant alleging failure of the defendant to

1

provide plaintiffs with flood damage coverage under an insurance policy that excludes such coverage." (Dkt. 13521 at 2.)

Movants now ask this Court to reconsider its June 13, 2008 order, arguing that neither *Sher* nor *In re Katrina* held that damage caused by wind-driven flood waters or "storm surge" is included within the water damage exclusion of Defendants' policies. (Pl. Br. at 4.) However, wind-driven floodwaters and storm surge were clearly within the meaning of "flood" as defined by both the Louisiana Supreme Court and the Fifth Circuit, and Movants have failed to meet the standard for reconsideration.

As the Fifth Circuit has admonished repeatedly, a motion for reconsideration "is an extraordinary remedy" that cannot be used to "rehash[] evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004); *accord Molina v. Equistar Chem. LP*, 261 Fed. App'x 729, 732 (5th Cir. 2008). Rather, reconsideration is reserved for cases in which there is: (1) an intervening change in controlling law; (2) newly obtained evidence that was reasonably unknown; or (3) a need to correct a manifest error of law or fact. *Id.*; *see also Schiller v. Physicians Res. Group, Inc*., 342 F.3d 563, 567 (5th Cir. 2003).

Movants have made no such showing in this case. To the contrary, both the Louisiana Supreme Court and the Fifth Circuit have held that the word "flood," as used in the policy exclusions, is clear and unambiguous. A flood is the overflow of a body of water onto land that is normally dry. This definition clearly encompasses storm surge. Moreover, on four separate occasions, the Fifth Circuit has expressly held that Hurricane Katrina storm surge is flooding and excluded by the water damage exclusion of Defendants' policies. Further, both the Louisiana Supreme Court and the Fifth Circuit have made plain that a flood is a flood regardless of cause. As a result, Movants' efforts to recharacterize their flood losses as wind damage through misplaced reliance on the efficient proximate cause doctrine should be rejected.

The unequivocal holdings of the Louisiana Supreme Court and the Fifth Circuit leave no room for further argument regarding the meaning of the word "flood" and the scope of the flood

2

exclusions in Defendants' policies. Movants cannot recover for losses caused by flood, whether as a result of levee failures, overtopping, wind-driven flood waters, or storm surge. For these reasons, as further discussed below, Movants' motion should be denied.

## ARGUMENT

**I.  Damage Caused By Storm Surge Flooding is Excluded by the Water Damage Exclusions of Defendants' Policies**

There is no question that storm surge was encompassed within the term "flood" as defined by the Louisiana Supreme Court and the Fifth Circuit. In *Sher*, the Louisiana Supreme Court considered the meaning of the word "flood" as used in the following policy exclusion:

> We will not pay for the loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
> * * *
>
> g. Water
>
> > (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not . . . .

*Id.* at *4. The Supreme Court made clear that the word "flood," as used in the exclusion, is not ambiguous and must be given its "ordinary and generally prevailing meaning." *Id.* The Court held that "[t]he plain, ordinary and generally prevailing meaning of the word 'flood,' is the overflow of a body of water causing a large amount of water to cover an area that is usually dry." *Id.*

The Supreme Court's discussion of the scope of the exclusion leaves no doubt that policy exclusions for "flood" also extend to damage caused by storm surge. As the Court explained:

> This definition [of flood] does not depend on locality, culture, or even national origin – *the entire English speaking world recognizes that a flood is the overflow of a body of water causing a large amount of water to cover an area that is usually dry land*. Contrary to the court of appeal's reasoning, this definition does not change or depend on whether the event is a natural disaster or a man-made one – in either case, a large amount of water covers an area that is usually dry. The plain, ordinary and generally prevailing meaning is all-inclusive. Further, of the examples of high water contained in the exclusion and described by the court of appeal as "natural disasters," only one, tides, is exclusively natural – waves,

> tidal waves, and the overflow of water may be either natural or man-made, as may be "floods." Far from supporting the court of appeal's conclusion that the term "flood" is ambiguous because it does not distinguish between man-made and natural flood, this tends to show that the parties intended the word "flood," to have its plain, ordinary and generally prevailing meaning – the overflow of a body of water causing a large amount of water to cover an area that is usually dry – *regardless of its cause*.

*Id.* (emphasis added, footnotes omitted).[1]

It cannot seriously be disputed that the storm surge from Hurricane Katrina caused the overflow of a body of water onto dry land.[2] Storm surge is simply another term for a type of flood that occurs along a coastline during a hurricane. *See* Federal Emergency Management Agency, "Hurricane Hazards: Storm Surge,"[3] ("Storm surge is simply water that is pushed toward the shore by the force of the winds swirling around the storm. . . . This rise in water level can cause severe flooding in coastal areas . . . ."); *Leonard v. Nationwide Mut. Ins. Co.*, 438 F. Supp. 2d 684, 692 (S.D. Miss. 2006) ("Storm surge is a phenomenon associated with hurricanes. Atmospheric conditions and wind forces combine to force tidal waters ashore and temporarily inundate areas of normally dry land."), *aff'd*, 499 F.3d 419 (5th Cir. 2007). Storm surge is "little more than a synonym for a 'tidal wave' or wind-driven flood, both of which are excluded perils" in homeowners' policies. *Leonard v. Nationwide Ins. Co.*, 499 F.3d 419, 437 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1873 (2008).

Likewise, in *In re Katrina*, the Fifth Circuit held that the word "flood" was unambiguous. As the court stated: "When a body of water overflows its normal boundaries and inundates an area of land that is normally dry, the event is a flood." 495 F.3d at 214. Holding

---

[1] In *Sher*, the intermediate appellate court had held, although incorrectly, that the term flood encompassed only flooding resulting entirely from natural causes. *See Sher*, 2008 WL 928486, at *5. Movants now seek to turn *Sher* on its head and argue that an overflow of dry land resulting from a *natural* cause (storm surge) is somehow not covered by an insurance exclusion for flood.

[2] *Cf. State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed to Do Business in the State*, 06-2030, p.2 (La. 8/25/06), 937 So. 2d 313, 316 (observing that "[t]he storm surge associated with Hurricane Rita inundated coastal communities"); *Avenal v. State*, 03-3521 (La. 10/19/04), 886 So. 2d 1085, 1111 n.3 (Weimer, J., concurring) (citing a Louisiana Department of Economic Development report which described the need for "flood control, including buffering hurricane storm surges").

[3] Available at http://www.fema.gov/hazard/hurricane/hu_surge.shtm.

4

that the flood exclusion in the Defendants' policies unambiguously precluded recovery for damage caused by flood waters that followed Hurricane Katrina, the Fifth Circuit explained that a "flood" is a "flood" regardless of cause, and that "[a]n insured may not avoid a contractual exclusion merely by affixing . . . [a] separate characterization to the act or event causing the loss." *Id.* at 223.

Movants suggest that the Fifth Circuit has not addressed the issue of storm surge flooding because *In re Katrina* discussed whether the policies' water damage exclusions included flooding from levee failures.  (Pl. Mem. at 4.)  The Fifth Circuit's *In re Katrina* opinion, however, notes that Movants had raised precisely the same arguments regarding storm surge and the "efficient proximate cause" doctrine that they now seek to relitigate, long after the Fifth Circuit's mandate was issued and *certiorari* denied.  *See* 495 F.3d at 201 ("The Chehardy plaintiffs seek a declaratory judgment that the efficient proximate causes of their damage were windstorm, acts of negligence, and storm surge, all of which were covered perils.").  In the Fifth Circuit, Movants made arguments substantively similar to those arguments they now make in this Court.  *See* Movants' Appellee Brief in Fifth Circuit, at 5-6, 59-63.  Movants cannot relitigate these issues after the appellate process has run its course merely because the Fifth Circuit found them not worthy of discussion in its opinion.

Put simply, the water damage exclusions in Defendants' policies make abundantly clear that loss caused by "flood" is excluded "whether or not driven by wind" (or contain similar language).  (*See* Exh. A.)[4]  This language, by itself, precludes Movants' arguments.  *See Leonard*, 499 F.3d at 437 (explaining that policy excluded "wind-driven flood"); *see also Lower Chesapeake Assoc. v. Valley Forge Ins. Co.*, 532 S.E.2d 325, 328, 331 fn* (Va. 2000) (finding no coverage for storm surge damage, and stating "the trial court's finding that wind-driven water

---

[4] Attached hereto as Exhibit A is the appendix of policy excerpts provided to the Fifth Circuit in *In re Katrina*, which provides a representative sampling of the relevant policy language at issue here, including language used in ISO and non-ISO policies.

contributed to the damage is a sufficient reason to exclude coverage under the policy") (emphasis added).

Indeed, the Fifth Circuit has repeatedly held that the word "flood," as used in water damage exclusions in insurance policies, clearly and unambiguously includes storm surge. *See Leonard*, 499 F.3d at 430 (5th Cir. 2007) (applying Mississippi law); *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 353 (5th Cir. 2007) (applying Mississippi law); *Smith v. Allstate Indem. Co.*, No. 07-60013, 2007 WL 4259194, at *2 (5th Cir. Dec. 4, 2007) (applying Mississippi law); *Bilbe v. Belsom*, ___ F.3d ___, 2008 WL 2332880, at *2 (5th Cir. May 12, 2008) (applying Louisiana law).[5]

In *Leonard*, the Fifth Circuit explained that "[c]ourts have interpreted water-damage exclusions like the one found in the [plaintiffs'] policy to encompass the peril of wind-driven inundation by water, or storm surge, for ages." *Leonard*, 499 F.3d at 430. The Fifth Circuit reiterated its *Leonard* holding in *Tuepker*, where it explained:

> The Water Damage Exclusion states that water damage includes damages caused by, among other things, flood, waves, tidal water, and overflow of a body of water, "all whether driven by wind or not." These words accurately describe the influx of water into the [plaintiffs'] home that was caused by the Katrina storm surge. Furthermore, courts have held that similarly worded water damage exclusions apply to flooding that occurs during a hurricane.

*Tuepker*, 507 F.3d at 352 (citation omitted). In *Bilbe*, the Fifth Circuit extended its reasoning in *Leonard* and *Tuepker* to a case governed by Louisiana law. *See Bilbe*, 2008 WL 2332880, at *2 (noting it had "repeatedly held that the term 'flood' includes storm surges").

In the face of such overwhelming and controlling precedent, Movants rely on two unpublished decisions from district courts in other jurisdictions to argue that "flood" does not include storm surge: *Northrup Grumman Corp. v. Factory Mut. Inc. Co.*, No. 05-0844, 2007 WL 2385134 (C.D. Cal. Aug. 16, 2007), and *Pinnacle Entertainment, Inc. v. Allianz Global*

---

[5] The Fifth Circuit has addressed this issue in cases involving Nationwide's (*Leonard*), Allstate's (*Smith*) and State Farm's (*Tuepker*, *Bilbe*) policy language. Comparable language to one of these examples is contained within Defendants' policies at issue in this litigation.

6

*Risks U.S. Ins. Co.*, No. 06-00935 (D. Nev. Mar. 26, 2008). (Pl. Br. at 6.) However, both of these decisions are predicated on a faulty premise – more specifically, that the word "flood" is ambiguous. *See Northrup*, 2007 WL 2385134, at *6; *Pinnacle*, slip op. at 8. This premise is wholly negated by the decisions of the Louisiana Supreme Court and Fifth Circuit, both of which have held that "flood" is not ambiguous and have further held that it has a commonly understood and prevailing meaning (overflow of dry land by a body of water) that encompasses storm surge. *See supra* at 3-5. Indeed, the *Northrup* court noted that interpreting the flood exclusion to include storm surge was consistent with a majority of Mississippi and Louisiana courts. *See Northrup*, 2007 WL 2385134, at *6. For that reason, among others, the Fifth Circuit has flatly rejected *Northrup*. *See Tuepker*, 507 F.3d at 353 n.5 ("*Northrup* is not controlling and does not in the least even arguably support the Tuepkers' argument that the Water Damage Exclusion here does not clearly exclude losses caused by storm surge.").[6]

Controlling precedent from the Louisiana Supreme Court and the Fifth Circuit leaves no doubt that Movants' claims for damage caused by storm surge flooding are excluded by the flood exclusions of Defendants' policies. Movants' motion for reconsideration should, therefore, be denied.

**II.   Movants Cannot Avoid Application of the Water Damage Exclusions by Claiming Wind Was the *Efficient Proximate Cause* of the Flooding**

Movants also argue as a basis for reconsideration that wind was the efficient proximate cause of storm surge flooding. This argument is a red-herring. The Louisiana Supreme Court and Fifth Circuit have plainly held that flood damage resulting from any cause is not covered. So, there is no covered peril here, and *efficient proximate cause* analysis never comes into play.

---

[6] The *Northrup* court relied heavily on the fact that the primary policy defined "flood" to include the words "whether driven by wind or not," while the excess policy at issue did not contain that language. The court noted that, if it were interpreting the excess policy standing alone, it may well have concluded "that the policy clearly and explicitly encompasses a storm surge exclusion." *See Northrup*, 2007 WL 2385134, at *7. The *Pinnacle* court relied heavily on *Northrup*, and also found the absence of the words "driven by wind" in the exclusion at issue to be significant. *See Pinnacle*, slip op. at 9. The court also focused on a definition of "Weather Catastrophe Occurrence" in the policy at issue, which is not contained in Defendants' policies. *Id.* at 9-11. For the reasons discussed above, the word "flood," with or without such language is not ambiguous. But, in any event, the policies at issue in this litigation generally exclude flood, "whether driven by wind or not," or contain comparable language. (*See* Exh. A.)

7

As the Fifth Circuit explained in *In re Katrina*, "'An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss.'" *Id.* at 223 (citing *Kish v. Insurance Co. of North Am.*, 883 P.2d 308, 311 (Wash. 1994)). For example, in *Kish*, upon which the Fifth Circuit relied, the policy covered loss caused by rain, but excluded loss caused by flood. Holding that the efficient proximate cause rule was inapplicable, the court explained that the insured could not avoid the flood exclusion by merely re-characterizing the peril as rain-induced flood. *See In re Katrina*, 495 F.3d at 223 (citing *Kish*, 883 P.2d at 311-13). Following the reasoning of *Kish*, the Fifth Circuit also held that the efficient proximate cause doctrine was inapplicable to flood: "[T]he sole cause of the losses for which they seek coverage in this litigation, flood, was excluded from coverage regardless of what factors contributed to its development." *In re Katrina*, 495 F.3d at 223. The court reached this conclusion even though it also noted that the plaintiffs' losses were, in a general sense, caused by Hurricane Katrina. *See id.* at 214.[7]

Here, as in *Kish* and *In re Katrina*, where a plaintiff's loss resulted from storm surge, the cause of loss was flood, an excluded event. The exclusion is not rendered inapplicable merely by characterizing the loss as "wind driven," any more than characterizing the flood as "rain driven" in *Kish* or "man-made" in *In re Katrina* altered the cause of loss. Where property was damaged by storm surge, wind "did not act, apart from flood," to bring about the water damage. *In re Katrina*, 495 F.3d at 223.

The Fifth Circuit's analysis comports with numerous decisions of courts applying Louisiana law, which have repeatedly treated damage from hurricane-related flooding as a cause

---

[7] *Graham v. Public Employees Mut. Ins. Co.*, 656 P.2d 1077 (Wash. 1983), upon which Movants rely, (Pl. Br. at 5), was decided over ten years before the Washington Supreme Court's decision in *Kish* and is limited by that later decision. *Graham* also did not involve storm surge flooding but rather a complex sequence of events allegedly attributable to a volcanic eruption. The other cases cited by Movants in section A(1) of their brief did not involve flood loss. For example, in *Glens Falls Ins. Co. v. Linwood Elevator*, 130 So. 2d 262 (Miss. 1961), the court held that Movants' loss was caused by fire, a covered peril, regardless of whether the source of combustion was internal or external. *See id.* at 269; *see also Western Assur. Co. v. Hann*, 78 So. 232, 236 (Ala. 1917) (fire, a covered peril, so damaged a wall that it could not withstand wind); *Evana Plantation, Inc. v. Yorkshire Ins. Co.*, 58 So. 2d 797, 800 (Miss. 1952) (construing the term "hail," a covered peril, to include sleet).

8

of loss distinct from wind.  For example, in *Morehead v. Allstate Insurance Co.*, 406 F.2d 122 (5th Cir. 1969) (*per curiam*), the Fifth Circuit, applying Louisiana law, affirmed dismissal of the plaintiff's claim for water damage to his dwelling caused by Hurricane Betsy where the policy excluded "loss caused by, resulting from, contributed to or aggravated by . . . flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water" and "the evidence showed that the loss occurred because of water damage rather than directly as the result of wind damage."  *See id.* at 122; *see also Ebert v. Pac. Nat'l Fire Ins. Co.*, 40 So. 2d 40, 41 (La. Ct. App. 1949) (under policy that excluded loss "caused directly or indirectly by . . . storm, tidal wave, high water or overflow, whether driven by wind or not," the only pertinent question was "whether plaintiff's house was blown or floated off of its foundation"); *S. Hotels Ltd. P'ship v. Lloyd's Underwriters at London Cos.*, No. Civ. A. 95-2739, 1997 WL 325972, at *4 (E.D. La. June 10, 1997) (plaintiff could not recover for replacement of furniture damaged during Hurricane Andrew where the evidence showed that the loss was caused by flood, not wind driven rain); *Milton v. Main Mut. Ins. Co. of Ill.*, 261 So. 2d 723, 726 (La. Ct. App. 1972) (no coverage for vehicle damaged by rising water during Hurricane Betsy).  The mere fact, therefore, that flooding results in some sequence from hurricane winds does not render the flood exclusion a nullity.  Otherwise, the courts would have reached a different result in the cases above.

For all the foregoing reasons, the efficient proximate cause doctrine does not render Defendants' clear and unambiguous exclusions for flood damage inoperative.  *See Katrina Canal Breaches*, 495 F.3d at 223.

### III. Application of the Efficient Proximate Cause Doctrine Is Precluded by Anti-Concurrent Cause Language

Even if it were somehow applicable to storm surge flooding,[8] the judicially created "efficient proximate cause" doctrine can be limited by contract. Where it has been so limited, plaintiffs cannot avoid flood exclusions and recover for storm surge damage by arguing that wind is the efficient proximate cause of storm surge.

To the extent Louisiana has adopted the doctrine of efficient proximate cause, it has done so merely as a default causation rule. *See Roach-Strayhan-Holland Post No. 20, Am. Legion Club, Inc. v. Cont'l Ins. Co. of N.Y.*, 112 So. 2d 680, 683 (La. 1959); *accord Lorio v. Aetna Ins. Co.*, 232 So. 2d 490, 493 (La. 1970). At the same time, the Louisiana Supreme Court has expressly stated that this default causation rule may be otherwise defined or limited in the contract of insurance. *See Roach-Strayhan-Holland*, 112 So. 2d at 68 ("[I]t is sufficient, in order to recover upon a windstorm insurance policy *not otherwise limited or defined*, that the wind was the proximate or efficient cause of the loss or damage.") (emphasis added); *accord Lorio*, 232 So. 2d at 493. Thus, in *Sweeney v. City of Shreveport*, 584 So. 2d 1248 (La. App. 1991), *writ denied*, 589 So. 2d 1057 (La. 1991), the court gave effect to policy language that stated: "We do not insure for *loss caused directly or indirectly* by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss." *Id.* at 1250-51 (emphasis in original); *see also Prytania Park Hotel v. General Star Indem. Co.*, 896 F. Supp. 618, 624 (E.D. La. 1995) (applying similar anti-concurrent causation language). As this Court previously recognized, "parties may contract in any manner they want and could obviously exclude coverage using an anti-concurrent cause clause." *In re Katrina Canal Breaches Litig.*, 466 F. Supp. 2d 729, 750 n.12 (E.D. La. 2006), *aff'd in part and vacated in part*, 495 F.3d 191 (5th Cir. 2007).

---

[8] The argument set forth in this section provides an alternative and independent reason for denying Movants' motion. However, for the reasons discussed in Sections I and II, this Court need not reach this issue in order to deny Movants' motion for reconsideration.

Here, the exclusions for flood in many of Defendants' policies include language commonly referred to as "anti-concurrent cause" ("ACC") provisions. (*See* Exh. A.) And, regardless of whether they include broad anti-concurrent cause language, Defendants' policies include language making clear that flooding is an excluded peril, regardless of whether it is wind-driven or not. (*See id.*)

As noted by the Fifth Circuit, anti-concurrent-causation clauses "ha[ve] been recognized as demonstrating an insurer's intent to contract around the operation of the efficient-proximate-cause rule." *Katrina Canal Breaches*, 495 F.3d at 222. While the Fifth Circuit did not need to address the effect of such language in *Katrina Canal Breaches*, it later expressly held that anti-concurrent cause language overrides the efficient proximate cause doctrine. *See Leonard*, 499 F.3d at 436; *Tuepker*, 507 F.3d at 354; *see also Bilbe*, 2008 WL 2332880, at *3 n.3 (applying *Leonard* in case arising under Louisiana law); *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 231 (5th Cir. 2007) (explaining that, while "Louisiana law equates 'direct loss' [as used in an insurance policy] with proximate cause; an insurance policy . . . may limit or otherwise define 'direct loss.'").

For example, in *Leonard*, the water damage exclusion provided that "[s]uch a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss." *Leonard*, 499 F.3d at 424. Noting that a majority of states and two federal appellate courts have enforced ACC exclusion clauses, *id.* at 434, the Fifth Circuit held that the ACC language in the policy supplanted Mississippi's efficient proximate cause doctrine. *See id.* at 436. Similarly, in *Tuepker*, the water damage exclusion was preceded by ACC language that excluded losses caused by flood "regardless of . . . whether other causes acted concurrently or in any sequence with the excluded event to produce the loss." *Tuepker*, 507 F.3d at 352. The Fifth Circuit held: "*Leonard* governs this case, and compels the conclusion that the ACC Clause in State Farm's policy is not ambiguous, and should be enforced under Mississippi law." *Id.* at 354. Although *Leonard* and *Tuepker* were decided under Mississippi law, their holdings apply equally

to Louisiana cases. Indeed, the Fifth Circuit has extended the reasoning of *Leonard* to a case decided under Louisiana law. *See Bilbe*, 2008 WL 2332880, at *3 n.3.

Louisiana law allows parties to decline to adopt common law causation rules so long as the contract does not offend public policy. As the Louisiana Supreme Court stated in *Sher*, an insurer "is entitled, through use of the term 'flood,' to limit its own liability and impose and enforce such reasonable conditions upon the policy obligations that the insurer has contractually assumed." *Sher*, 2008 WL 928486, at *7; *see also Jackson v. Rogers*, 95-0486 (La. App. 1st Cir. 11/9/95), 665 So. 2d 440, 443 (La. App. 1995) ("An unambiguous provision of an insurance policy, which does not conflict with public policy or statutes, is an allowable limitation of liability and must be given effect."); *cf. Leonard*, 499 F.3d at 435 (discussing similar principles of Mississippi law, as well as general insurance law). Nor does Louisiana statutory law mandate that insurance policies reflect the efficient proximate cause doctrine. *Cf. Leonard*, 499 F.3d at 435. To the contrary, the Louisiana Insurance Code specifically provides that "[a]ny insurer may insert in its policies any provisions or conditions required by its plan of insurance or method of operation which are not prohibited by the provisions of this Code." LSA-R.S. 22:620(A)(4).[9]

As the Fifth Circuit observed, "[m]ost jurisdictions concur that ACC clauses comport with state public policy." *Leonard*, 499 F.3d at 435. Here, the Louisiana Supreme Court has already held the flood exclusions are "reasonable and do[] not conflict with any statutory provision or public policy." *Sher*, 2008 WL 928486, at *7. As a result, there is no impediment to enforcement of the ACC language in Defendants' policies.

---

[9] Furthermore, Louisiana law requires that all basic policy forms used in this state must be filed with and approved by the Department of Insurance. *See* LSA-R.S. 22:620(A)(1). It is the role of the legislature and the insurance commissioner, not a court, to establish public policy with respect to the use of particular insurance policy forms. *See Leonard*, 499 F.3d at 436; s*ee also State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 314 (Ala. 1999) ("To elevate the efficient-proximate-causation rule to a principle of public policy today would invade the province of the Legislature, because it has delegated to the Commissioner of the Department of Insurance the responsibility of supervising insurance policies.").

**IV.     This Court's Order Was Not Premature**

Finally, Movants argue that this Court should withdraw its Order on the grounds that the plaintiff in *Sher* has made a motion for reconsideration. Yet, as this Court is no doubt aware, that motion has just been denied on the flood exclusion issue. Accordingly, the Louisiana Supreme Court has now conclusively reaffirmed what the Fifth Circuit has unequivocally held in *In re Katrina*, *Leonard*, *Tuepker*, and *Bilbe*, that the flood exclusions apply to all flood damage, regardless of the cause.

## CONCLUSION

Both the Louisiana Supreme Court and the Fifth Circuit have held that the flood exclusions in Defendants' policies are unambiguous and must be enforced. Movants simply cannot recover for storm surge flooding regardless of how they seek to characterize it. For all these reasons, the Fifth Circuit's mandate *In re Katrina* should be enforced, and Movants' motion for reconsideration denied.

Respectfully submitted,

/s/Ralph S. Hubbard
**Ralph S. Hubbard, III, T.A., La. Bar #7040**
**Seth A. Schmeeckle, La. Bar #27076**
**Insurer Defendants' Liaison Counsel**
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130
Telephone: (504) 568-1990
Facsimile: (504) 310-9195
E-Mail:      rhubbard@lawla.com
             sschmeeckle@lawla.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on the 31st day of July 2008, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to All Known Counsel of Record by operation of the Court's electronic filing system and/or U.S. mail.

                                      /s/ Ralph S. Hubbard_____
                                              Ralph S. Hubbard