UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION NO.: 05-4182 "K"(2) |
| _____ PERTAINS TO: ALL INSURANCE | * * * * * * | JUDGE DUVAL MAGISTRATE JUDGE WILKINSON |

* * * * * * * * * * * * * * * * *

**MEMORANDUM IN OPPOSITION TO THE INSURANCE PSLC'S
MOTION FOR ENTRY OF THE ORGANIZATION AND COMPENSATION OF
COMMON BENEFIT PLAINTIFFS' ATTORNEYS CASE MANAGEMENT ORDER**

The Insurance PSLC has moved the Court for a Case Management Order ("CMO") establishing a system for paying "common benefit" attorneys' fees and costs.[1] For the reasons discussed in detail below, the system contemplated by the proposed CMO will make it more difficult to settle the claims of the individual Umbrella plaintiffs; will delay the final resolution of those claims; and will severely increase the administrative burden on the Court, the Insurance Defendants, and Insurance Liaison Counsel. Accordingly, by and through their Liaison Counsel, the Insurer Defendants hereby oppose the Insurance PSLC's motion.

---

[1] More formally, the motion was brought by the Katrina Canal Breaches Litigation Plaintiffs' Liaison Counsel, Joseph M. Bruno; Liaison Counsel for the Insurance PSLC, Calvin C. Fayard, Jr.; and the Plaintiffs' Sub-Group Litigation Committee – Insurance, John Ellison, Jerry Joseph McKernan, Drew Ranier, and James Garner, to whom this brief collectively will refer as the "Insurance PSLC."

1

**I.      The Insurance PSLC's Motion is Legally Unsupported and Unwarranted.**

As a fundamental legal matter, the Court should deny the Insurance PSLC's motion because it fails to cite a single authority authorizing the relief sought. It instead merely asserts that "Courts commonly impose a common benefit assessment on plaintiffs in mass joinder actions[.]" (Plfs. Memo., p. 4.) This vague, conclusory, unsupported statement is patently insufficient to justify imposing a fee award of the magnitude sought here. In fact, it is contrary to the pertinent law.

**A.      No "Substantial Benefit" Was Conferred on the Individual Plaintiffs Through the Insurance PSLC's Efforts.**

To recover fees under the "common benefit" or "common fund" doctrine, an attorney must show that his or her efforts (1) were successful, and (2) conferred a substantial benefit on others. In the words of the Fifth Circuit, "[a]ttorney's fees may . . . be awarded to a *successful* litigant whose success confers 'a *substantial benefit* on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." *Rogers v. Air Line Pilots Ass'n., Int'l*, 988 F.2d 607, 616 (5th Cir. 1993) (quoting *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 393-94, 90 S. Ct. 616, 626, 24 L. Ed. 2d 593 (1970)) (emphasis added).

Conceptually, this equitable fee-spreading rule is premised on the notion that "persons who obtain the *benefit* of a lawsuit without contributing to its costs are unjustly enriched at the *successful* litigant's expense." *Boeing v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749, 2 L. Ed. 2d 676 (1980) (emphasis added); *accord Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 360 (5th Cir. 2003). To avoid this unjust result, when appropriate, the Court can "'assess[] attorney's fees against the entire fund,

2

thus spreading fees proportionately among those *benefited* by the suit.'" *Boeing*, 444 U.S. at 478 (emphasis added) (quoting *Mills*, 396 U.S. at 394).

Here, the Insurance PSLC claims it has "advanced and opposed . . . motions, and performed other action[s] for the benefit of all the plaintiffs," and then provides a conclusory list of nine examples, including non-descriptive categories such as "[c]onducted discovery." (Plfs. Memo., p. 3.) However, the Insurance PSLC makes no effort to explain how or why these activities actually provided any *substantial benefit* to the Umbrella plaintiffs. The fact that the Insurance PSLC may have expended substantial *effort* on certain issues does not mean that their efforts were *beneficial* to the plaintiffs. Moreover, as noted above, the "common fund" doctrine only applies when the attorneys' efforts were *successful*. While the Insurance PSLC may have spent a considerable number of hours opposing the "motions to dismiss . . . relating to water damage exclusions" (Plfs. Memo., at p. 2), the fact of the matter is that their arguments did not succeed, but instead were rejected by both the Fifth Circuit Court of Appeals and the Louisiana Supreme Court.

Moreover, to the extent that any plaintiffs may have benefited at all from the Insurance PSLC's unsuccessful litigation of the "water damage" exclusion issue, those hypothetical benefits only would have inured to those *former* plaintiffs who *already settled* and who may have received somewhat higher settlements because the Louisiana Supreme Court had not finally ruled upon the applicability of the exclusion. Those prior settlements, however, would not be subject to the proposed assessment of "common benefit" fees. Instead, the proposed assessment would apply only to *future* settlements by plaintiffs who *still remain* in the litigation. As to those plaintiffs, it is now unquestionably established that the "water damage" exclusion precludes any recovery for flood damage. Accordingly, those plaintiffs cannot expect to receive any additional

3

settlement proceeds as a result of the supposed "uncertainty" regarding the application of the "water damage" exclusion.

In short, "common benefit" attorneys' fees are not available simply because an attorney invested a significant amount of time or money in a case. Rather, such fees are only available when the attorney's efforts were successful, and conferred a substantial benefit on other claimants who did not contribute to the costs of the litigation. The Insurance PSLC has failed to demonstrate that its work on this matter provided the Umbrella plaintiffs with *any* benefit, let alone a substantial benefit. If anything, the Insurance PSLC's efforts, while perhaps well-intentioned, only delayed the resolution of thousands of individual plaintiffs' cases, as the dispute over the applicability of the "water damage" exclusion slowly wound its way through the federal and state courts.

### B. No "Common Fund" Was Created Through the Insurance PSLC's Efforts.

The "common fund" doctrine only applies when the litigation produces an *actual monetary fund* under the Court's jurisdiction, from which the attorneys' fees can be drawn. The doctrine cannot be used to impose additional liability on the defendants or the fund beneficiaries. *See*, *e.g.*, *Knight v. United States*, 982 F.2d 1573, 1579 (Fed. Cir. 1993) ("[T]he common fund theory does not impose additional liability on the losing defendant."); *Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1319 (10th Cir. 2000) ("[T]he dispositive fact is that this action did not result in the creation of a fund from which others would benefit. Thus, we find no legal basis on which the award of attorney's fees can be sustained."); *Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984) (litigation requiring HUD to make subsidy payments to individual landlords did not create a "fund" from which fees could be recovered).

4

Here, the Insurance PSLC's litigation efforts have not created an actual monetary fund from which attorneys' fees could be deducted. There is no global judgment or settlement representing the combined value of all the Umbrella plaintiffs' claims. Indeed, the Insurance PSLC's proposed CMO does not even contemplate the creation of any such global fund. It instead purports to assess an *additional* fee of 2% or 5% on the settlement of *each individual plaintiff's claim*, depending on the timing of the settlement. (*See* Plfs. Proposed CMO, p. 4.) That these individual attorneys' fees awards might ultimately be deposited into a single registry with the Court (*see id.*, ¶ 5) does not make them a "common fund." Otherwise, an attorney always could claim to have created a "common fund" – even when the litigation resulted in no lump-sum judgment or settlement – simply by asking the Court to tax each individual judgment or settlement with an additional fee. As noted above, however, the relevant case law prohibits taxing the litigants with any such additional liability. *See*, *e.g.*, *Knight*, 982 F.2d at 1579.

**C.  The Insurance PSLC Has Failed to Satisfy the Criteria for an Award of "Common Fund" Attorneys' Fees.**

As clarified by the United States Supreme Court, the "common fund" doctrine should only be applied when three criteria are met:

(1)   The classes of persons benefited by the lawsuits are small in number and easily identifiable.

(2)   The benefits must be traceable with reasonable accuracy.

(3)   The Court must be confident that the costs of litigation can be shifted with exactitude to those benefiting.

*Boeing*, 444 U.S. at 478-479; *see also Morganroth*, 213 F.3d at 1319 ("[T]he common fund doctrine requires identifiable beneficiaries and circumstances that permit proportionate sharing among the beneficiaries with some exactitude."); 10 MOORE'S FEDERAL PRACTICE, § 54.171[2][a][iii] at pp. 54-253 to 54-254 (3d ed. 1999) ("The beneficiaries of the fund must . . .

be readily identifiable, so that the fees may be charged against their portion of the fund with some exactitude.")

Here, none of these three criteria have been satisfied, nor could they ever be. It is entirely questionable whether *any* of the Umbrella plaintiffs benefited in *any* meaningful way from the Insurance PSLC's efforts. But even if the Court were to assume that some of the remaining plaintiffs may have gained some collateral, trickle-down advantages from the Insurance PSLC's litigation activities, there would be no easy way to identify which plaintiffs received any such benefits. Nor would there be any reasonably objective way to trace those hypothetical benefits to any particular activities on the part of the Insurance PSLC. As a result, the Court could not be "confident" that it was shifting the costs of the Insurance PSLC's efforts to the appropriate plaintiffs with any degree of "exactitude." *Boeing*, 444 U.S. at 478-479.

### D. There Is No Reason or Need to Award "Common Benefit" Attorneys' Fees.

Finally, granting the Insurance PSLC an award of attorneys' fees would not serve the fundamental purpose of the "common benefit" doctrine – namely, to prevent plaintiffs from enjoying the benefits of an attorney's work without compensating the attorney for his or her efforts. *See Boeing v. Van Gemert*, 444 U.S. at 478.

Here, the attorneys who are serving on the Insurance PSLC typically represent hundreds (if not thousands) of individual plaintiffs. Had those attorneys' efforts on behalf of the Insurance PSLC been successful, their individual clients would have been handsomely rewarded, and the attorneys working on a contingency basis would have received sizeable contingency fees. Indeed, if the "water damage" exclusion had been found inapplicable to the flooding associated with Hurricane Katrina, Louisiana insurers could have faced multiple billions of dollars in exposure. As a result, the potential rewards to the plaintiffs' attorneys as a whole would have

been staggering – and a significant portion of those rewards would have flowed to the attorneys who presently serve on the Insurance PSLC.

In these circumstances, had the Insurance PSLC been successful in its efforts, it could not seriously have maintained that an award of "common benefits" attorneys fees would be necessary to ensure it received adequate compensation. Quite to the contrary, if the Insurance PSLC had been successful, an award of "common benefit" attorneys' fees would have represented nothing more than an unnecessary double-dip windfall.

The fact that the Insurance PSLC's efforts were *unsuccessful* provides no greater justification for an award of attorneys' fees. To the contrary, all it would accomplish is to retroactively place the Insurance PSLC attorneys in a "win-win" situation: if their litigation efforts were successful, they would receive a bonanza of higher contingency fees, and if their efforts were unsuccessful, they still would receive "common benefit" attorneys' fees. Nothing in federal or state law allows an award of attorneys' fees to an unsuccessful litigator as a "consolation prize."

Finally, even if the attorneys serving on the Insurance PSLC receive no "common benefit" attorneys' fees, they still will receive their normal contingency fees in connection any future settlements. Moreover, some of these attorneys may not have had contingency fee agreements with certain of their clients, and thus will be compensated on an hourly basis. In either event, there is no need to provide these attorneys with an additional contingency fee of either 2% or 5%, above and beyond what they already will receive – particularly given the fact that the Insurance PLSC's litigation efforts ultimately proved unsuccessful.

**II.     Practical Considerations Militate Against Granting the Insurance PSLC's Motion.**

In addition to the legal defects explained above, the Court should deny the Insurance PSLC's motion based on important practical considerations relating to the efficient settlement and management of the cases within the Insurance Umbrella.

First, awarding "common benefit" attorneys' fees to the Insurance PSLC will only make it more difficult to settle individual plaintiffs' claims, thereby compounding the delay in their resolution. Effectively, if the Court adopts the Insurance PSLC's proposed CMO, the cost of settling an individual plaintiff's claim will increase by either 2% or 5%, depending on whether the settlement is reached within 150 days after the entry of the Court's Post-*Sher* CMO. (*See* Plfs. Proposed CMO, p. 4.) To pay for this additional cost, one of three things would need to occur. Either (1) the individual plaintiff would have to accept 2% or 5% less in the total settlement; (2) the individual plaintiff's attorney would have to reduce his or her contingency fee by 2% or 5%; or (3) the insurer would have to pay 2% or 5% more on the claim. Introducing this new, disruptive dynamic into the settlement process will only create additional delays and make claims more difficult to settle.

Furthermore, the mechanics of the Insurance PSLC's proposed CMO will dramatically increase the administrative burdens on the Insurance Defendants, the Insurance Liaison Counsel, and the Court, and will further delay the final resolution of individual claims. Among other administrative obligations, the proposed CMO would require:

- That the Plaintiffs' Liaison Counsel and Insurance Liaison Counsel "promulgate time and expense keeping protocols," including the filing of "quarterly reports," which protocols the Court would have to approve (Plfs. Proposed CMO, p. 3);

- That the Court would have to "determine the fees to which each individual committee member shall be entitled," based on a host of amorphous factors including "significant contribution of skill and effort," "perceived

>       value of time and effort," "time and monies expended," and "customary
>       standards" (*Id.*, pp. 3-4);
>
> - That individualized exceptions would have to be made for "pro se litigants or attorneys representing a claimant for no fee," provided that they "elect to enter the settlement track and resolve their case" (*Id.*, p. 4); and
>
> - That Insurance Liaison Counsel would have to review monthly time records submitted by the attorneys seeking to recover "common benefit" fees, and perhaps negotiate a "separate sharing agreement." (*Id.*, p. 5.)

In addition, Paragraph 5 of the proposed CMO would require the Insurance Defendants, upon settling an individual plaintiff's claim, to segregate the portion of the settlement that represents attorneys' fees and deposit that portion into an interest-bearing account,to be maintained by the Court.  (*See* Plfs. Proposed CMO, ¶ 5.)  Currently, the Insurance Defendants' claim processes are not configured to handle these types of segregated claim payments – nor, presumably, is the Court presently in a position to receive and account for the checks that would start pouring in.

Moreover, under the Insurance PSLC's proposed CMO, once the attorneys' fees portions of the settlements were paid into the Court's depository, Plaintiffs' Liaison Counsel and Insurance Liaison Counsel would have to review claims submitted by the individual plaintiffs' attorneys, and then calculate the proper "assessments" to pay to those attorneys.  (*See id.*)  This assessment process no doubt would prove complicated and contentious – particularly once competing claims or liens are presented by the Louisiana Road Home program, the Small Business Association, or the plaintiffs' mortgage-holders.  Presumably, the Court would have to resolve any disputes arising over the proper "assessments" to be paid to the individual plaintiffs' attorneys, thereby further taxing the Court's already strained judicial resources.[2]

---

[2] While the proposed CMO would provide for "binding arbitration" with respect to "a dispute *among common benefit attorneys* as to how the . . . fund should be allocated" (*Id.*, p. 6 [emphasis added]), no similar alternative

### III.     Conclusion

The Insurance PSLC's request for "common benefit" attorneys' fees is legally unsupported and unwarranted, would delay and frustrate the settlement of individual claims, and would greatly increase the administrative burden on the Court, the Insurance Defendants, and the Insurance Liaison Counsel.  Accordingly, the Court should deny the Insurance PSLC's request.

        Respectfully submitted,

        /s/Ralph S. Hubbard
        **Ralph S. Hubbard, III, T.A., La. Bar #7040**
        **Seth A. Schmeeckle, La. Bar #27076**
        **Insurer Defendants' Liaison Counsel**
        Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
        601 Poydras Street, Suite 2775
        New Orleans, Louisiana 70130
        Telephone:  (504) 568-1990
        Facsimile:  (504) 310-9195
        E-Mail:     rhubbard@lawla.com
                      sschmeeckle@lawla.com

### CERTIFICATE OF SERVICE

I hereby certify that, on the 31st day of July 2008, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to All Known Counsel of Record by operation of the Court's electronic filing system and/or U.S. mail.

        /s/ Ralph S. Hubbard
        Ralph S. Hubbard

---

dispute resolution procedure would apply to disputes with the *individual* plaintiffs' attorneys, or other competing claimants or lienholders, regarding the proper assessments to be paid from the supposed "common fund."