

2007

FY 2007 United States Army Annual Financial Statements – Restated Civil Works Financials

*Commitment to Current and Future Readiness*

U.S. ARMY

**Civil Works Fund**

Principal Financial Statements, Notes and Supplementary Information

| As of September 30 | | 2006 | | | | |
|---|---|---|---|---|---|---|
| (Amounts in thousands) | | Current Liability | | Noncurrent Liability | | Total |
| **Intragovernmental Due to Treasury** | $ | 78,023 | $ | 1,539,435 | $ | 1,617,458 |
| | | | | | | |
| Advances from Others | $ | 9,835 | $ | 0 | $ | 9,835 |
| Deposit Funds and Suspense Account Liabilities | | 1,648 | | 0 | | 1,648 |
| Disbursing Officer Cash | | 493 | | 0 | | 493 |
| Judgment Fund Liabilities | | 164,221 | | 0 | | 164,221 |
| FECA Reimbursement to the Department of Labor | | 20,522 | | 27,224 | | 47,746 |
| Other Liabilities | | 13,830 | | 0 | | 13,830 |
| **Total Intragovernmental Other Liabilities** | $ | 288,572 | $ | 1,566,659 | $ | 1,855,231 |
| | | | | | | |
| **Nonfederal** | | | | | | |
| Accrued Funded Payroll and Benefits | $ | 380,917 | $ | 0 | $ | 380,917 |
| Advances from Others | | 73,883 | | 0 | | 73,883 |
| Deposit Funds and Suspense Accounts | | 6,978 | | 0 | | 6,978 |
| Other Liabilities | | 232,144 | | 0 | | 232,144 |
| **Total Nonfederal Other Liabilities** | $ | 693,922 | $ | 0 | $ | 693,922 |

**Other Information**

Intragovernmental - Due to Treasury is comprised of the custodial liability to offset interest and accounts receivable which, when collected, will be deposited in the U.S. Treasury.

Intragovernmental - Other Liabilities represent future revenue from hydraulic mining contracts. USACE records a custodial liability for payables from water storage and hydraulic mining contracts.

Nonfederal Other Liabilities includes contract holdbacks on construction-in-progress payments and unfunded contingent liabilities for probable losses for contract claims, civil litigation and tort claims.

Judgment Fund Liabilities. USACE Civil Works Directorate recognized 41 unfunded liabilities in FY 2007 and 37 in FY 2006 arising from Judgment Fund Contract Disputes Act (CDA) settlements, in accordance with the Interpretation of Federal Financial Accounting Standards No. 2, *Accounting for Treasury Judgment Fund Transactions*. USACE cannot fund the CDA claims since USACE is funded for projects and does not include an allowance for this type of claim. USACE sought supplemental appropriations for payment of CDA claims in FY 2000 and FY 2006, which were not approved. The FY 2007 budget does not provide funding for payment of the CDA claims. The U.S. Government Accountability Office is currently reviewing the status of the outstanding CDA claims and should provide recommendations regarding the payment or other treatment of these claims.

**54**

# Note 16.   Commitments and Contingencies

**Disclosures Related to Commitments and Contingencies:**

The U.S. Army Corps of Engineers (USACE) is a party in various administrative proceedings and legal actions, with claims including environmental damage claims, equal opportunity matters, and contractual bid protests. The USACE has accrued contingent liabilities for legal actions where the USACE's Office of the General Counsel (OGC) considers an adverse decision probable and the amount of loss is measurable. In the event of an adverse judgment against the government, some of the liabilities may be paid from the Department of the Treasury's Judgment Fund. The USACE discloses amounts recognized as contingent liabilities in Note 15 "Other Liabilities". Amounts that are determined to be payable by the Judgment Fund are reclassified as an imputed financing source and disclosed in Note 19 "Disclosures Related to the Statement of Changes in Net Position".

The U.S. Army Claims Service (USARCS) supervises, processes, investigates, adjudicates and negotiates the settlement of non-contractual administrative claims on behalf of, and against, the Department of the Army (including USACE); however, because of their uniqueness, the hurricane Katrina-related administrative claims are processed differently, as discussed below. By law, administrative claims filed against the government are either adjudicated, denied or are effectively denied if no action is taken within six months from the claim filing date. Barring such resolution within six months from the date of filing, claimants may file legal cases with the Federal court. Filing of an administrative claim for resolution is a required precursor to a claimant's filing against the government in Federal court.

Claims settled below the statutory threshold of $2,500 are paid using Civil Works appropriations; settlements above this threshold are referred to Treasury's Judgment Fund for payment. With the exception of the Contract Disputes Act and Notification and Federal Employee Antidiscrimination and Retaliation Act, settlements disclosed in Note 15 "Other Liabilities", are amounts that are paid by the Judgment Fund and recorded as expenses and imputed financing sources and are disclosed in Note 19 "Disclosures Related to the Statement of Changes in Net Position".

*Katrina-Related Claims and Litigation*

Numerous administrative claims have been filed with USACE as a result of hurricane Katrina. Over 489 thousand, as of September 30, 2007, and over 25 thousand, as of September 30, 2006, Federal Tort Claims Act administrative claims have been filed by claimants seeking approximately $152 billion and $104 billion (respectively) as compensation for alleged personal injury, wrongful death, and property damages as a result of massive flooding caused by hurricane Katrina [Satisfies the disclosure requirements of (B) above]. Since claimants are allowed to file with USACE for up to two years after the event, Katrina-related administrative claims were accepted through August 29, 2007. The U.S. Department of Justice (DOJ) currently has the responsibility to collect, record and track these Katrina-related administrative claims due to their volume and the dollar amounts claimed. DOJ has established a stand-alone system to track them, and continues to perform reviews to identify and remove possible duplicates; therefore, the estimated Katrina-related administrative claims information summarized above is subject to change. DOJ expects to complete its review and processing of adjustments in June 2008, and plans to transition responsibility for maintaining these administrative claims to USARCS at that time.

The DOJ, USARCS, and USACE have not settled or denied any Katrina-related administrative claims. USARCS and USACE, who bear the decision-making responsibility for settling the claims, subject to DOJ approval, have indicated they do not intend to settle or deny any Katrina-related administrative claim prior to lapse of the statutory six-month period. As a result, such unsettled claims have the potential of becoming litigations in Federal court at the claimants' discretion.

In addition to the administrative claims, the Katrina-related cases filed in Federal courts against USACE have aggregated alleged damages of approximately $277 billion as of September 30, 2007 and approximately $106 billion as of September 30, 2006. Katrina-related administrative claims described above and other possible matters not currently known may result in additional litigation in Federal court. A case may be filed in Federal court up to six years after the right of first action accrues with the plaintiff.

The DOJ, which is responsible for litigating Katrina-related matters in Federal court on behalf of the government, intends to vigorously defend the government in these matters. DOJ has concluded that there is a reasonable possibility that the Katrina-related administrative claims and court cases currently asserted could result in a loss to the Federal government, with the estimated potential loss ranging between $10 billion and $100 billion [Satisfies the disclosure requirements of (C) above]. The amount of losses pertaining to potential hurricane Katrina-related damages not currently asserted against USACE, if any, is not determinable [Satisfies the disclosure requirements of (A) above].

The majority of cases currently pending as of September 30, 2007, have been divided into three groups: Robinson v. United States, the lead case, and the LEVEE and MRGO groups. The LEVEE and MRGO groups are primarily based on geography of the city of New Orleans, LA. In both Robinson and the LEVEE group, the United States filed a motion to dismiss asserting immunity under the Flood Control Act, 33 U.S.C. SS 702c, and the FTCA, 28 U.S.C. SS 2680 (a). The Robinson and the LEVEE group was denied,

55

## Civil Works Fund

the Court having ruled that factual development was required in order to decide whether the United States is immune. The second motion to dismiss remains pending and a ruling is expected in one to two months. The court declined to certify the Robinson ruling for interlocutory appeal, and if the LEVEE motion to dismiss also is denied, it is not expected to be certified for appeal. Discovery in all cases is ongoing on the issue of class certification as well as liability. Hearings on motions to certify a class were scheduled for November 2007. Summary judgment motions in the Robinson case were scheduled to be filed in November 2007 with oral arguments in January 2008. If the United States' motion for summary judgment is denied, merits discovery will continue in all cases, and trials are scheduled for September 2008 in Robinson and the spring of 2009 in the LEVEE AND MRGO cases.

On 31 January 2008, Judge Stanwood Duval ruled that the Corps should be held immune over the failure of the canal wall which caused much of the flooding of New Orleans in 2005. The ruling relied on the Flood Control Act of 1928, which made the federal government immune when flood-control projects fail. The plaintiffs do plan to file an appeal to the 5th U.S. Circuit Court of Appeals.

*Other Litigation*

Outside of Katrina-related litigation, USACE has 23 and 24 cases, as of September 30, 2007 and 2006, respectively, above the materiality threshold of $7.2 million. The USACE OGC has determined that 3 and 5 cases are probable, 1 and 0 cases are reasonably possible, 9 and 6 cases are not determinable, and 10 and 13 cases are remote as of September 30, 2007 and 2006, respectively. Of the 3 and 5 probable cases, 3 and 2 are recorded as liabilities for $80 million and $40 million dollars and the amount for the remaining 0 and 3 probable cases were not determinable, as of September 30, 2007 and 2006, respectively. As of September 30, 2007 and 2006, the 1 and 0 reasonably possible cases had an estimated potential loss of $400 thousand and $0, respectively.

The USACE management treated cases for which the USACE OGC was unable to determine a potential adverse outcome, as reasonably possible. The total amount of relief sought for the 10 and 6 cases is $289 million and $202.4 million and the potential loss is not determinable, as of September 30, 2007 and 2006, respectively.

Additionally, USACE had a total of $260 million as of September 30, 2007, and $330.0 million as of September 30, 2006, in pending contract claims, civil litigation and non-Katrina tort cases which were individually under the threshold of $7.2 million. As such, the likelihood of an unfavorable outcome or potential liability is provided as an overall assessment of all cases currently pending and not on an individual basis (as with the over-threshold cases). The likelihood of an unfavorable or potential liability was determined by using a three-year historical average. The total dollar amount of the cases closed was divided by the total dollar amount claimed in those closed cases for each of the last three years which were then used to calculate the three year average of 10%. This average represents the percentage that has historically been paid on claims and is based entirely on historical data. The merits of each individual case have not been taken into consideration. Based on the 10% average, a contingent liability of $26 million as of September 30, 2007, and $33 million as of September 30, 2006, was recorded.

*Other Contingencies*

The USACE does not have undelivered orders for open contracts citing cancelled appropriations which may remain unfilled or unreconciled and for which the reporting entity may incur a contractual commitment for payment.

The USACE does not have contractual arrangements such as fixed price contracts with escalation, price redetermination, or incentive clauses; contracts authorizing variations in quantities; and contracts where allowable interest may become payable based on contractor claims under the "Dispute" clause contained in contracts.