```
           UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF LOUISIANA


IN RE:  KATRINA CANAL BREACHES    CIVIL ACTION
CONSOLIDATED LITIGATION
                                  NO. 05-4182
                                      "K" (2)
PERTAINS TO:  MRGO-ROBINSON        JUDGE DUVAL
FILED IN:  05-4181, 05-4182,       MAG. WILKINSON
05-5237, 05-6073, 05-6314,
05-6324, 05-6327, 05-6359,
06-0225, 06-0886, 06-1885,
06-2152, 06-2278, 06-2287,
06-2824, 06-4024, 06-4065,
06-4066, 06-4389, 06-4634,
06-4931, 06-5032, 06-5155,
06-5159, 06-5161, 06-5162,
06-5260, 06-5771, 06-5786,
06-5937, 07-0206, 07-0621,
07-1073, 07-1271, 07-1285


           Videotaped Deposition of

       WASHINGTON GROUP INTERNATIONAL BY
               STEPHEN CLAY ROE,
14054 West Cornell Avenue, Lakewood, Colorado
80228, taken in the offices of Hawley,
Troxell, Ennis & Hawley, 877 Main Street,
Suite 1000, Boise, Idaho 83702, on Thursday,
the 17th day of April, 2008.
```

Page 1

```
 1  APPEARANCES:
 2    LAW OFFICE OF JOSEPH M. BRUNO
       (BY: JOSEPH M. BRUNO, ESQ.
 3          SCOTT JOANEN, ESQ.)
       855 Baronne Street
 4     New Orleans, Louisiana 70113
           PLAINTIFFS LIAISON COUNSEL
 5
 6
 7    LEVIN, PAPANTONIO, MITCHELL,
      ECHSNER & PROCTOR
 8     (BY: MATT SCHULTZ, ESQ.)
       316 South Baylen Street
 9     Suite 600
       Pensacola, Florida 32591
10         ATTORNEYS FOR PLAINTIFFS
11
12
      JONES, DAY
13     (BY:  ADRIAN WAGER-ZITO, ESQ.
             DEBRA CLAYMAN, ESQ.
14           JULIA CRONIN, ESQ.)
       51 Louisiana Avenue, N.W.
15     Washington, D.C. 20001
           ATTORNEYS WASHINGTON GROUP
16         INTERNATIONAL
17
18
      UNITED STATES DEPARTMENT OF JUSTICE
19    CIVIL DIVISION
      TORTS BRANCH
20     (BY: JEFF EHRLICH, ESQ.
            RICHARD STONE, ESQ.)
21     Post Office Box 888
       Benjamin Franklin Station
22     Washington, D.C.  20044
           ATTORNEYS FOR UNITED STATES
23
24
25
```

Page 2

```
 1
 2  VIDEOTAPED BY:
       Brad Fischer
 3     I-Dep, Inc.
 4
 5  REPORTED BY:
       ROGER D. JOHNS, RMR, CRR, RDR, CSR
 6     Certified Court Reporter
       State of Louisiana
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1         S T I P U L A T I O N
 2
 3      It is stipulated and agreed by and between
 4  counsel for the parties hereto
 5  that the deposition of the aforementioned
 6  witness is hereby being taken under the
 7  Federal Rules of Civil Procedure, for all
 8  purposes, in accordance with law;
 9      That the formalities of reading and
10  signing are specifically not waived;
11      That the formalities of certification and
12  filing are specifically waived;
13      That all objections, save those as to the
14  form of the question and the responsiveness of
15  the answer, are hereby reserved until such
16  time as this deposition, or any part thereof,
17  may be used or sought to be used in evidence.
18
19            * * * *
20
21      ROGER D. JOHNS, RDR, CRR, Certified Court
22  Reporter for the State of Louisiana,
23  officiated in administering the oath to the
24  witness.
25
```

Page 4

1 (Pages 1 to 4)

```
 1         MR. BRUNO:
 2             I recognize your objection and I
 3         encourage you to make all the
 4         objections you want.
 5         MS. CLAYMAN:
 6             Thank you.
 7         MR. BRUNO:
 8             We have said that all during the
 9         week.  You get yelled at if you don't
10         object.  And that's true.
11    EXAMINATION BY MR. BRUNO:
12         Q.  Let's see.  Where was I?  Forgive
13    me.  I lose my train of thought.  Let's see.
14    Boom.
15             All right.  Now, the reason I ask
16    you the question is because you told me before
17    the lunch break that when it came to
18    permitting and so forth, you did your best,
19    you got on the phone, you know, you started
20    making inquiries about the need for permits;
21    right?
22         A.  Right.
23         Q.  Okay.  And certainly if there was a
24    need for some kind of engineering evaluation
25    of excavations near a flood control project,
                                          Page 121
```

```
 1    you would have expected the United States
 2    Corps of Engineers to tell you that.  Isn't
 3    that true?
 4         A.  Yes.
 5         Q.  Okay.  Did anyone at the Corps of
 6    Engineers, up until the point in time when
 7    this December 2 recommendations report was
 8    drafted, tell you that under-seepage was an
 9    issue to be considered when working around a
10    flood control project?
11         A.  No.  Not that I am aware of.
12         Q.  All right.  Has the Washington Group
13    International, and forgive me, it's a broad
14    question I know, so what it is, worked around
15    flood control projects in the past before?
16         MS. WAGER-ZITO:
17             Objection.
18    EXAMINATION BY MR. BRUNO:
19         Q.  Before December 2, 1999?
20         MS. WAGER-ZITO:
21             Objection.
22         MR. BRUNO:
23             Okay.  Thank you, Counsel.
24    EXAMINATION BY MR. BRUNO:
25         Q.  Answer.
                                          Page 122
```

```
 1         A.  Oh, I can answer it.
 2         MS. WAGER-ZITO:
 3             He is not going to discuss that.
 4             You can answer that question.
 5         It's not one of the categories, but
 6         you can answer if you know.
 7         THE WITNESS:
 8             MK has built dams.  That was part
 9         of our legacy here, building dams and
10         stuff.  But this was a remediation
11         contract.  That was our scope.  That
12         was our charter.
13    EXAMINATION BY MR. BRUNO:
14         Q.  Okay.  Do I gather from your answer
15    that the scope of the contract -- I'm sorry.
16    The fact that it's remediation is what
17    dictates whether or not you're going to
18    consider the potential impact of the
19    remediation on a flood control structure?  Is
20    that what you're testifying to?
21         A.  I was testifying that the scope was
22    not for us to investigate the flood control
23    structure.  Our customer, the Corps of
24    Engineers, are the ones who design flood
25    control, maintain flood control, contract to
                                          Page 123
```

```
 1    have them constructed, maintained.  So our
 2    assumption was that the Corps had taken care
 3    of all of that.  They hired us to knock down
 4    buildings and pull out piles and remediate
 5    soil.
 6         Q.  All right.
 7         A.  They didn't hire us for engineering
 8    expertise on flood control.
 9         Q.  Wasn't the -- I'm sorry, forgive
10    me.  I didn't mean -- I wanted to let you
11    finish your answer.
12         A.  That's it.
13         Q.  All right.  Wasn't the purpose of
14    the permitting from the Orleans Levee District
15    specifically to ascertain whether or not the
16    proposed work would affect the flood control
17    structure there?  That's why the permit was
18    necessary?
19         MR. EHRLICH:
20             Object to the form.
21         MS. WAGER-ZITO:
22             Objection.
23         THE WITNESS:
24             I don't know why.
25    EXAMINATION BY MR. BRUNO:
                                          Page 124
```

31 (Pages 121 to 124)