Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | NO. 05-4182 "K" (2) |
| PERTAINS TO: MRGO-ROBINSON | JUDGE DUVAL |
| FILED IN: 05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 05-6359, 06-0225, 06-0886, 06-1885, 06-2152, 06-2278, 06-2287, 06-2824, 06-4024, 06-4065, 06-4066, 06-4389, 06-4634, 06-4931, 06-5032, 06-5155, 06-5159, 06-5161, 06-5162, 06-5260, 06-5771, 06-5786, 06-5937, 07-0206, 07-0621, 07-1073, 07-1271, 07-1285 | MAG. WILKINSON |

Videotaped Deposition of

WASHINGTON GROUP INTERNATIONAL BY
PHILLIP LEE STAGGS,
225 South Tropical Trail, Merritt Island,
Florida 32952, taken in the Marriott Hotel,
3435 North Atlantic Avenue, Cocoa Beach,
Florida 32931, on Saturday, the 26th day of
April, 2008.

Page 50

1  right?
2      A.  I would have to look and -- and
3  confirm that.
4      Q.  Well, all right.
5      A.  I don't know the level of detail
6  that was described in the work plan regarding
7  installation of the chain link fence.
8      Q.  That's fair enough.  But in any --
9  there was really never any specific -- I mean,
10 let me see if I can -- Can you think of a
11 single piece of paper that came from the
12 government with regard to directing the work
13 of the WGI, okay, just one, that was not a
14 comment on a work plan that you had submitted
15 to the government for approval?  In other
16 words, something that came outside of WGI's
17 suggestion, and a comment on that section by
18 the government?
19         MR. EHRLICH:
20            Objection.
21         MS. WAGER-ZITO:
22            Objection.
23 EXAMINATION BY MR. BRUNO:
24     Q.  Just one piece of paper.
25     A.  If allowed access to the project

Page 51

1  records, I believe we could find numerous
2  pieces of paper.
3      Q.  All right.  Well, what kinds of
4  things would the government tell you to do
5  that were not part of the work plan?  Maybe I
6  can ask it on a general level.  Work down.
7      A.  Say again?
8      Q.  What kinds of things -- You have
9  already told me that you were asked to develop
10 a work plan and then you told me that the --
11 there was really one -- Let's see.  How did
12 you distinguish it from the others.  Yes.  You
13 made -- You said that there was one project
14 work plan and that there were numerous project
15 plans, I think.  Did I write that down
16 correctly?
17     A.  I believe so.
18     Q.  All right.  So there's one project
19 work plan.  That was written by the Washington
20 Group International, submitted to the
21 government, and they approved it.  Or made
22 comments and then ultimately approved it?
23     A.  Uh-huh (affirmatively).
24     Q.  Right?
25     A.  Yes.

Page 52

1      Q.  Okay.  And you have no memory as you
2  sit here today as to whether or not that work
3  plan called for WGI to install a fence?
4      A.  I don't remember the specifics of
5  it.
6      Q.  All right.  That's fine.  But in any
7  case, we do know that generally the purpose of
8  the fence was the protect the work site;
9  right?
10     A.  Yes.
11     Q.  And that, in fact, the fence had
12 barbed wire on it; right?
13     A.  Yes.
14     Q.  Okay.  And that was to keep people
15 out?
16     A.  Yes.
17     Q.  All right.  And that the fence was
18 on the protected side of the concrete wall
19 which was a component part of the flood
20 control structure; right?
21     A.  It was on the protected side of the
22 floodwall, yes.
23     Q.  All right. Good.  Thanks.  Now,
24 have you read the TERC?  You know, at any time
25 since you were employed?

Page 53

1      A.  I don't recall if I read it at the
2  beginning of the project or not.
3      Q.  Okay.  So at some point, though, you
4  read it?
5      A.  No, I said I don't recall whether I
6  read it at the beginning of the project.
7      Q.  I'm sorry.  I apologize.  I thought
8  you were referencing a time period.  So you
9  don't remember having read it; right?
10     A.  No, I don't.
11     Q.  All right.  Was there a project
12 geotechnical engineer assigned by the
13 Washington Group International to work on the
14 Inner Harbor Navigation Canal project?
15     A.  No.
16     Q.  Was there a project environmental
17 engineer assigned to work on the project?
18     A.  Was that as a -- as a project
19 person?  Or -- I mean, we had an environmental
20 manager.
21     Q.  I know you did.  I know you did.
22 And look, I am not trying to, you know, pull a
23 rabbit out of the hat.  I am reading the TERC
24 and I am reading it at 4.11, and I will show
25 it to you.  It's Bates number WGI-000140.  It

Page 58

```
 1        MR. TREEBY:
 2          He's not finished.
 3        MR. BRUNO:
 4          Bill, --
 5        MR. TREEBY:
 6          You have got to let him finish.
 7   EXAMINATION BY MR. BRUNO:
 8     Q.  All right.  Finish.  It's not
 9   responsive, because I understand what the
10   lawyers have told you to say, but that wasn't
11   my question.  Okay?
12        MS. WAGER-ZITO:
13          Objection.
14        MR. BRUNO:
15          It's no objection.
16   EXAMINATION BY MR. BRUNO:
17     Q.  Finish and I will illustrate my
18   point.
19        MS. WAGER-ZITO:
20          It is an objection.
21        MR. BRUNO:
22          All right?
23        MS. WAGER-ZITO:
24          If you can even remember what you
25        were in the middle of.
```

Page 59

```
 1        THE WITNESS:
 2          The scope of our work didn't
 3        include geotechnical engineering, so
 4        we would not have anybody in -- in the
 5        WGI organization that we would have
 6        contacted for those issues.
 7   EXAMINATION BY MR. BRUNO:
 8     Q.  Finished?
 9     A.  Yes.
10     Q.  All right.  Here's the question.
11   It's an "if" question.  If, and I am reading
12   it, because I've got my little realtime here.
13   And I understand how they told you and talked
14   to you about how to prepare for this
15   deposition.
16        MS. WAGER-ZITO:
17          Objection.
18   EXAMINATION BY MR. BRUNO:
19     Q.  But here's the question, and all I
20   want is an answer and then you can explain
21   it.  You can say all of that stuff about, you
22   know, covering WGI.  But here's the question.
23   If you had the need, if you had the need to
24   get engineering support, okay?  You understand
25   it's an "if".  I am not saying you had the
```

Page 60

```
 1   need.  I am saying if you had the need.
 2   Okay?  And that's why I am, you know, -- it's
 3   a little testy here.  Because I didn't ask you
 4   about did you.  I said if you had the need.
 5   If you had the need to get engineering support
 6   with regard to geotechnical issues while you
 7   were employed on the site, who would you have
 8   called?
 9        MR. EHRLICH:
10          Object to form
11   EXAMINATION BY MR. BRUNO:
12     Q.  Okay?
13        MS. WAGER-ZITO:
14          Objection.
15        MR. BRUNO:
16          Noted.
17   EXAMINATION BY MR. BRUNO:
18     Q.  Now may I have an answer to that
19   question?
20        MS. WAGER-ZITO:
21          Objection.
22   EXAMINATION BY MR. BRUNO:
23     Q.  You can explain.
24        MS. WAGER-ZITO:
25          Asked and answered.
```

Page 61

```
 1        MR. BRUNO:
 2          It has not been answered.
 3        MS. WAGER-ZITO:
 4          It has been answered.
 5        MR. BRUNO:
 6          It has not been answered.
 7        Anybody -- If you want to call the
 8        Judge, I will, but this is
 9        ridiculous.
10        THE WITNESS:
11          We would have presented it to the
12        Corps of Engineers, because that's --
13   EXAMINATION BY MR. BRUNO:
14     Q.  That's fine.
15     A.  They were responsible for
16   geotechnical issues.
17     Q.  Thank you, sir.  That's not hard.
18   Okay.  That's the answer to the question.  All
19   right.
20          Now, was there a geotechnical --
21   Did you guys, WGI, have a geotechnical
22   engineer at the home office, in other words, a
23   person at home office who had the training as
24   a geotechnical engineer?  That person, did you
25   have somebody with that technical expertise at
```

Page 62

```
 1    the home office?
 2         MS. WAGER-ZITO:
 3            Objection.
 4         THE WITNESS:
 5            Not associated with this project.
 6    EXAMINATION BY MR. BRUNO:
 7      Q.  All right.  Thank you.  But you had
 8    people in WGI who, I mean, had geotechnical
 9    expertise, didn't you?
10      A.  Absolutely.
11      Q.  Sure.  Of course.  Of course.
12    Thanks.
13         MR. BRUNO:
14            Man, all of that coaching doesn't
15         work.
16         MR. TREEBY:
17            Objection.
18         MR. EHRLICH:
19            Is that on the record?
20         MR. BRUNO:
21            It doesn't work.  No, it's not on
22         the record.  I'm mumbling to myself.
23         MR. TREEBY:
24            It is on the record.
25         MR. EHRLICH:
```

Page 63

```
 1            It is on the record.  You said it
 2         on the record.
 3         MR. BRUNO:
 4            Well, I'm sorry.  I was mumbling
 5         to myself.
 6         MR. TREEBY:
 7            Do you withdraw it?
 8         MR. BRUNO:
 9            I withdraw it.
10    EXAMINATION BY MR. BRUNO:
11      Q.  All right.  Now, did you know
12    whether or not WGI had the following
13    obligation in connection with the work that
14    WGI contracted to do for the government at the
15    Inner Harbor Navigation Canal?  Okay?  And I
16    am going to read this so that you'll know what
17    obligation I am talking about and then I will
18    show it to you, too, --
19      A.  Okay.
20      Q.  -- before you have to answer so you
21    know what I am doing.  You'll know where it
22    comes from, too.  So here's the question.  I
23    mean, the obligation.  "The contractor shall,
24    without additional expense to the government,
25    be responsible for obtaining any necessary
```

Page 64

```
 1    licenses and permits and for complying with
 2    any Federal, state and municipal laws, codes
 3    and regulations applicable to the performance
 4    of the work.  The contractor shall also be
 5    responsible for all damages to persons or
 6    property that occur as a result of the
 7    contractor's fault or negligence.  The
 8    contractor shall also be responsible for all
 9    materials delivered and work performed until
10    completion and acceptance of the entire work
11    except for any completed unit or work which
12    may have been accepted under the contract."
13            Okay?  So that's the obligation
14    that I am asking you if you knew that WGI
15    had.  Now, as I promised, in fairness to you,
16    what I am reading from is a document which has
17    been Bates numbered, first, by the lawyers,
18    WGI-91 and 92.  I am going to show you the
19    whole document.  I want to make sure I get all
20    the documents.  I am going to give you 90,
21    because I don't know if this is a part of this
22    or not, Mr. Staggs.  In fact I'm going to give
23    you maybe 89, too.  What the heck.  All
24    right?  So when I give you these stack of
25    documents, I am not suggesting to you that
```

Page 65

```
 1    they all belong together.  They just came
 2    Bates numbered that way.
 3      A.  Uh-huh (affirmatively).
 4      Q.  Okay?  So with that, I am going to
 5    hand them to you.  Give you a chance first
 6    just to look at them so that you can answer my
 7    question and then we'll have some follow-ups
 8    from those papers if you don't mind.
 9         MS. WAGER-ZITO:
10            Object to the form of the
11         question.
12         MR. BRUNO:
13            What's wrong with the form
14         again?
15         MS. WAGER-ZITO:
16            It's asking for a legal
17         conclusion, it's compound, and it was
18         so long I have forgotten some of the
19         other problems with it, but it clearly
20         is asking for a legal conclusion and
21         it's compound.
22         MR. BRUNO:
23            It's asking for a legal
24         conclusion?
25         MS. WAGER-ZITO:
```

Page 162

```
 1     piles on the site that he worked on.
 2     You asked him a question about the
 3     sheet pile depths of the floodwall.
 4         MR. BRUNO:
 5            The sheet pile depth of the East
 6     Bank Industrial Area flood protection
 7     system.  It couldn't be clearer than
 8     that.
 9         MS. WAGER-ZITO:
10            And we told you there were
11     several things he wasn't going to know
12     the answer to.  You kept it in here so
13     that he could tell you that that
14     wasn't something he did.
15         MR. BRUNO:
16            It's not he.  It's WGI.  If WGI
17     doesn't know how deep the sheet pile
18     is --
19         MR. TREEBY:
20            He's the man.
21         MR. BRUNO:
22            He' the man.  All I am asking you
23     to confirm to me is this.
24         MR. TREEBY:
25            He's the man.  He's the man.
```

Page 163

```
 1         MR. BRUNO:
 2            He's the man for 31.  Thank you,
 3     Bill.
 4         MR. TREEBY:
 5            He's the man.
 6         MR. BRUNO:
 7            Good.
 8         MS. WAGER-ZITO:
 9            And he's answered your question.
10         MR. TREEBY:
11            He answered your question.  He
12     doesn't know.
13     EXAMINATION BY MR. BRUNO:
14        Q.  The Washington Group International
15     does not know how deep the sheet pile is in
16     the floodwall; right?
17        A.  I was not aware.
18        Q.  Well, the WGI is not aware.  Right?
19         MR. TREEBY:
20            Well, he's the designee.  Of
21     course.
22         MR. BRUNO:
23            He's -- Then fine.  Let him
24     answer.
25         MR. TREEBY:
```

Page 164

```
 1            Stipulated.
 2         MR. BRUNO:
 3            Let him -- Stipulated?
 4         MR. TREEBY:
 5            We stipulate he's the designee
 6     for 31.  Yes.
 7         MR. BRUNO:
 8            All right.  So he then can say
 9     WGI didn't know how deep the sheet
10     pile was in the floodwall.
11     EXAMINATION BY MR. BRUNO:
12        Q.  Right?
13        A.  That's right.
14        Q.  Thank you.  Do you know, sir,
15     whether or not the United States Army Corps of
16     Engineers furnished the WGI with any
17     information that would allow WGI to ascertain
18     how deep the sheet pile was?
19        A.  Do not know.
20        Q.  Do you know whether or not WGI
21     evidenced believing that the sheet pile was 25
22     feet in depth?
23         MR. STONE:
24            Object to form.
25         MS. WAGER-ZITO:
```

Page 165

```
 1            Object.
 2         THE WITNESS:
 3            Could you restate the question?
 4     EXAMINATION BY MR. BRUNO:
 5        Q.  Do you know of any document, piece
 6     of information, fact wherein the document
 7     suggests that WGI believed that the sheet pile
 8     depth was 25 feet?
 9        A.  I don't recall that.
10        Q.  Are you familiar with the recap
11     document at all?
12        A.  Yes.
13        Q.  The recap criteria document that the
14     WGI published, produced?
15        A.  I am familiar with the document.  I
16     am not -- You know, I don't -- I don't know --
17     I know the general kind of information that's
18     in there.
19        Q.  Okay.  Are you designated to talk
20     about paragraph number 27?
21         MS. WAGER-ZITO:
22            Do you have it in front of you?
23         THE WITNESS:
24            Yes.
25         MS. CLAYMAN:
```

Page 166

1      You want me --
2      MS. WAGER-ZITO:
3        Steve Roe is designated to
4   address permits.  Steve Roe did
5   address permits.  27 is "All permits
6   obtained by you from U.S. Corps of
7   Engineers and the Orleans Levee
8   District concerning the East Bank
9   Industrial Area from 1999 to the
10  present."  And it's duplicative of 17,
11  which Steve Roe did address.
12     MR. BRUNO:
13       At the beginning of the
14  deposition I asked you to tell us on
15  the record the paragraphs and you told
16  me 18 through 66.
17     MS. WAGER-ZITO:
18       And I took out several.
19     MR. BRUNO:
20       62 and 63.
21     MS. WAGER-ZITO:
22       Including --
23     MR. BRUNO:
24       No.
25     MS. WAGER-ZITO:

Page 167

1        No, I said on the record 27.
2      MR. TREEBY:
3        The record shows.
4      MR. BRUNO:
5        The record shows what it shows.
6   All right.  The question is really
7   simple.  Is he designated for 27?  Yes
8   or no?
9      MS. WAGER-ZITO:
10       No.  He does not know about
11  permits.
12  EXAMINATION BY MR. BRUNO:
13    Q.  Are you designated for paragraph
14  28?
15     MS. WAGER-ZITO:
16       That's another one I pointed out
17  the record that Steve Roe addressed.
18  The ground- --
19     MR. BRUNO:
20       29.
21     MS. WAGER-ZITO:
22       -- water.  He is designated on
23  29.
24  EXAMINATION BY MR. BRUNO:
25    Q.  Did the WGI do any inspection at all

Page 168

1   of the levee floodwall along the eastern
2   boundary of the site?
3     A.  We may have done an initial
4   inspection of the area for, you know, for
5   damage that would have been present before we
6   started work versus damage that would result
7   from our work.  I don't know if there -- I
8   don't know that that was done, but we may have
9   done that.
10    Q.  All right.  Do you know what
11  under-seepage is?
12    A.  Not being a geotech, I mean, I have
13  a general idea of what it might be, but I
14  don't think I have been -- formally been given
15  a definition of it.
16    Q.  Well, are there employees of WGI
17  who, in your opinion, know what under-seepage
18  is?
19    A.  I would assume that there would be.
20    Q.  Can you tell me what effort you
21  undertook to make inquiry of other employees
22  of WGI so that you could properly come to this
23  deposition and be prepared to speak to this
24  issue?
25     MS. WAGER-ZITO:

Page 169

1        The issue of under-seepage?
2      MR. BRUNO:
3        Number 30, paragraph 30,
4   generally.
5      THE WITNESS:
6        Would you restate the question?
7   EXAMINATION BY MR. BRUNO:
8     Q.  What did you do in order to prepare
9   yourself to be able to discuss the subject
10  identified in paragraph 30?
11    A.  I didn't contact anybody or do
12  anything with regards to addressing
13  under-seepage.
14    Q.  Well, is it possible that some of
15  the specifications that were drafted by WGI
16  may have taken some of these issues in
17  consideration?
18     MS. WAGER-ZITO:
19       Object to the form.
20     THE WITNESS:
21       I wouldn't expect them to.
22  EXAMINATION BY MR. BRUNO:
23    Q.  Well, it's not about whether you
24  expected it.  I said is it possible.
25    A.  I think it's not likely.