UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * | CIVIL ACTION |
| | * | NO. 05-4182 "K"(2) |
| PERTAINS TO: ROAD HOME *Louisiana State*, C.A. No. 07-5528 | * * * | JUDGE DUVAL |
| | * * | MAGISTRATE WILKINSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S COUNSEL'S SUPPLEMENTAL BRIEF ON STANDING AND ELEVENTH AMENDMENT IMMUNITY CONCERNING THE MOTION TO DISQUALIFY PLAINTIFF'S PRIVATE COUNSEL**

Paul G. Aucoin, Attorney at Law; The Dudenhefer Law Firm, L.L.C.; Fayard & Honeycutt, A.P.C.; McKernan Law Firm; Ranier, Gayle and Elliot, L.L.C.; and Domengeaux Wright Roy & Edwards L.L.C., along with their individual counsel who have appeared in this case, all through their undersigned counsel, respectfully submit this supplemental brief to address the standing and Eleventh Amendment immunity issues concerning State Farm Fire and Casualty Company and certain other insurer defendants' (collectively the "Insurers") motion to disqualify plaintiffs' private counsel, in accordance with the Court's minute entry dated July 21, 2008.

**I.      Introduction**

The Insurers' attempt to seek disqualification of the State's counsel based on alleged violations of state statutes is flawed as a matter of law. Standing for non-clients to seek disqualification of counsel is limited to, at most, situations involving potential violations of ethics rules. Further, even assuming the Insurers had an interest sufficient to confer standing

upon them to challenge the State's contracts with its counsel, such a challenge must be raised through an action for declaratory and/or injunctive relief, which the Insurers have not done. Even had they done so, the Eleventh Amendment would prohibit this or any federal court from issuing such relief against a State or its officials concerning violations of state law. As such, the Insurers cannot obtain such relief in federal court. Because the Insurers' attempt to challenge the validity of the State's contracts with its counsel is improperly before this Court, this Court cannot decide this portion of the Insurers' motion to disqualify.

**I.      As non-clients, the Insurers lack standing to challenge any issue outside of potential violations of ethics rules in their motion to disqualify.**

In determining whether a party may raise a particular issue, the Court must initially determine whether that party has standing. Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III."[1]  Standing must be established for each particular issue or claim raised by a party,[2] and the establishment of standing on one issue will not suffice to establish standing for all issues raised by a party.[3]

In order to have Article III standing, "a plaintiff must show: (1) it has suffered, or imminently will suffer, a concrete and particularized injury-in-fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable judgment is likely to redress the

---

[1] *Ford v. NYLCare Health Plans of the Gulf Coast, Inc*., 301 F.3d 329, 332 (5th Cir. 2002)(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[2] *Warth v. Seldin*, 422 U.S. 90, 498 (1975)("In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues.").

[3] *James v. City of Dallas, TX*, 254 F.3d 551 (5th Cir. 2001)("[S]tanding … must be addressed on a claim-by-claim basis.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105 (1998); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*. (TOC) Inc., 528 U.S. 167, 185 (2000); *Bolin v. Sears, Roebuck & Co*., 231 F.3d 970, 976 (5th Cir.2000)); *see also O'Connor v. Jones*, 946 F.2d 1395, 1399-1400 (8th Cir. 1991).

2

injury."[4]  The party invoking federal jurisdiction bears the burden of proof in establishing all three elements.[5]  Failure to establish any of these elements deprives federal courts of jurisdiction to hear the matters in question.[6]

The Fifth Circuit has limited the scope of standing for a non-client who seeks disqualification of opposing counsel.  "As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification."[7]  Narrow exceptions to this rule have been made where: (1) the party seeking disqualification was a corporation controlled by a former client, or (2) the court raised the issue because the conflict was "manifest and glaring."[8]

Neither exception applies here.  *First*, neither the Insurers nor any entity controlled by them have ever been a client of the State's counsel, especially with regard to the issues involved in this litigation.  *Second*, although this Court may have inquired as to potential conflicts of interest in this case, the subsequent briefings have shown that the asserted conflicts are not present, let alone "manifest or glaring."  More importantly, prior to the instant motion to disqualify, the Court had never raised the issue of whether the State has valid engagement contracts with its counsel.

Apart from these narrow exceptions, some Fifth Circuit panels also have held that non-clients do have standing to seek disqualification of counsel when the motion concerns violations

---

[4] *Miss. Democratic Party v. Barbour*, 529 F.3d 538, 544 (5th Cir. 2008)(quoting *Houston Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 617 (5th Cir. 2007)).

[5] *Lujan*, 504 U.S. at 561.

[6] *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002).

[7] *In re: Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir. 1976).

[8] *Id*. at 89.

of Court-adopted rules of professional conduct.[9] The basis for standing in such circumstances is a lawyer's reporting obligations to the court with respect to ethical violations, and the court's inherent authority to regulate professional conduct.[10] This principle was explained in *In Re: Gopman*, which concerned the standing of the federal government to seek to disqualify opposing counsel based on a conflict of interest:

> It is argued that the government lacked standing to challenge the alleged conflict of interest, and that the trial judge had no jurisdiction to entertain the government's motion for disqualification. We reject these contentions. The substance of the government's motion was that appellant had violated the ethical canons of the American Bar Association, which prohibit a lawyer from representing parties with adverse interests. These ethical canons had been explicitly adopted by the local rules of the district court in which this action arose. When an attorney discovers a possible ethical violation concerning a matter before a court, he is not only authorized but is in fact obligated to bring the problem to that court's attention. Nor is there any reason why this duty should not operate when, as in the present case, a lawyer is directing the court's attention to the conduct of opposing counsel. In fact, a lawyer's adversary will often be in the best position to discover unethical behavior. We also conclude that the trial judge had jurisdiction to act upon this claim of unethical conduct. Local rules whose validity is not challenged expressly incorporate the American Bar Association's ethical canons and expressly give the district court the power to fashion sanctions. Furthermore, it is beyond dispute that lawyers are officers of the court and that the courts have the inherent authority to regulate their professional conduct.[11]

In contrast, the Insurers here seek to disqualify counsel not merely by reference to the rules of ethics, but also by challenging the validity of the State's engagement contracts with

---

[9] *In re: Gopman*, 531 F.2d 262, 265-66 (5th Cir. 1976); *see also Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir. 1977).

[10] *In re: Gopman*, 531 F.2d at 265-66; *Brown & Williamson*, 563 F.2d at 673.

[11] 531 F.2d at 265-66 (citations and footnotes omitted); *see also Brown & Williamson*, 563 F.2d at 673 ("And appellant has standing to seek disqualification even though it is not an aggrieved client because its attorneys are authorized to report any ethical violations committed in this case.").

them.[12]  Moreover, this latter argument for disqualification is based solely on disputed interpretations of state statutes regarding the process for contract approval and is unrelated to either the reporting of violations Court-adopted ethical rules or the Court's inherent authority to regulate the professional conduct of counsel.  Therefore, the Insurers have not established any basis under current law for standing to challenge non-compliance with state statutes affecting the process by which counsel is engaged for the State.

## II. The Insurers' challenge to the validity of the State's contract must be brought in either an action for declaratory or injunctive relief.

Moreover, when one considers the specific relief that the Insurers are requesting in their motion, it becomes clear that <u>no</u> party would be able to seek a ruling on the validity of an attorney-client contract in a motion to disqualify.  Instead, any challenge to the validity of a contract must be raised as a separate action by requesting declaratory and/or injunctive relief against the State and its counsel.

We have been unable to locate any case within the Fifth Circuit in which a court has granted attorney disqualification on any basis other than a violation of the applicable rules of professional conduct.  In *O'Connor v. Jones*, the Eighth Circuit, in considering whether a federal court could disqualify counsel if the Missouri Attorney General violated Missouri law in appointing such counsel, expressed "serious doubts" as to whether a federal court may "use its discretionary power to disqualify counsel for reasons unrelated to professional conduct."[13]

---

[12] In addition, some cases have raised the possibility that the Insurers also lack standing to seek disqualification based on alleged conflicts of interest.  *In re: Yarn Processing Patent Validity Litigation*, 530 F.2d at 88; *Clemens v. McNamee*, 2008 WL 1969318, at *4-*6 (N.D. Tex. 5/6/08).

[13] 946 F.2d at 1399.

Further, none of the cases concerning the validity of the State's contracts with its counsel that have been cited by the Insurers has been brought as a motion to disqualify counsel. In *Meredith*, the Louisiana Oil & Gas Association and several of its members filed a separate suit seeking declaratory relief to invalidate the State's contract with its counsel alleging it was an illegal contingency fee contract.[14] Similarly, in *Ieyoub v. W.R. Grace & Co.*, the issue of the validity of the contracts was presented through a specific request for declaratory relief by the State and its counsel, which was severed and decided separately from the main demand.[15] Finally, in *Foti v. Bayer Corp.*, the defendants brought a reconventional demand against the State seeking a preliminary and permanent injunction preventing the State from "implementing the illegal contingency fee arrangement that the Attorney General has entered into with private counsel" in that case.[16] Accordingly, previous challenges to the validity of a State's contract with its counsel all have been brought as actions for declaratory and/or injunctive relief, not as disqualification motions.

The reason for this is basic. A motion to disqualify, if granted, disqualifies a particular counsel from acting as counsel for a party in connection with the cause pending before the court. In contrast, a declaration that a contract of engagement is void under substantive (rather than ethical) law first requires issue to be joined on that question with the State itself as one of the potentially-affected parties to the contract, such that the State can defend its interests on the merits of that question. Moreover, the relief to be granted on that question, whether declaratory, injunctive, or both, is far broader in its effects than an order disqualifying a counsel from participation in a single case. In this case, the failure of the Insurers to make this distinction

---

[14] 700 So. 2d 478, 479-80 (La. 1997).

[15] 708 So. 2d 1227, 1230 (La. App. 3d Cir. 1998).

[16] *See* Insurers Memo in Support, Ex. 19.

actually obscures a more fundamental problem—that is, the actual relief sought (voiding a State contract for an alleged failure to comply with State law) cannot be obtained in federal court consistent with the Eleventh Amendment, which we next address.

### III.     Any request for relief in federal court against the State or its officials for alleged violations of State law is prohibited by the Eleventh Amendment.

Even if the Insurers were to correct the procedural posture of the relief they truly seek, it would be futile.  The Insurers simply cannot challenge the validity of these State's contracts in federal court because the Eleventh Amendment prohibits federal courts from deciding actions against a State based on alleged violations of state law.  At best, the Insurers can only challenge the validity of the State's contracts with its counsel in state court.

The Eleventh Amendment bars suits in federal court against a State or a State agency or department.[17]  "The state is the real party in interest if the decision rendered in a case would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the state to act or to refrain from acting."[18]  Thus, "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State."[19]  Accordingly, as the Supreme Court explained in *Pennhurst State School and Hospital v. Halderman*:

---

[17] U.S. Const. amend. XI; *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984)("This Court's decisions thus establish that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'")(citation omitted).

[18] *Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990)(citing *Pennhurst*, 465 U.S. at 101; *Dugan v. Rank*, 372 U.S. 609, 620 (1963); *Voisin's Oyster House v. Guidry*, 799 F.2d 183, 188 (5th Cir. 1986)).

[19] *Id.* (emphasis added)(citing *Pennhurst*, 465 U.S. at 121; *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 556 (5th Cir. 1988); *Livingston Louisiana School Board v. La. State Bd. of Education*, 830 F.2d 563, 569 n. 13 (5th Cir.1987)).

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.[20]

Here, any action brought by the Insurers that is based on the validity of the State's contract with its own counsel under state law cannot be entertained in federal court. *First*, any action regarding these contracts must involve either the State or the Attorney General in his official capacity. Both are protected by the Eleventh Amendment.[21] *Second*, any action regarding the validity of these contracts will be based solely on state-law issues. The Insurers have challenged the validity of the State's contracts with its counsel by alleging both that the contracts as issued violate state constitutional provisions concerning the separation-of-powers between state branches of government, and that they fail to comply several state statutes and regulations concerning the appointment of counsel by the Attorney General. Determination of these issues will require this Court to interpret State statutes and regulations and weigh state constitutional concerns with the State itself as a party-in-interest. Indeed, the Insurers have not alleged any issue involving any federal statute, regulation, or other interest. Accordingly, the only issues raised by the Insurers fall squarely under the immunity provided States and State officials by the Eleventh Amendment, and cannot be decided in federal court, absent a waiver by the State.[22] Because this has not occurred, the Insurers can only challenge the validity of the

---

[20] *Pennhurst*, 465 U.S. at 106.

[21] *Nguyen v. Gusman*, 2008 WL 1903166, at *6 (E.D. La. 4/28/08)("The Attorney General, in his official capacity, stands in the place of the State itself and enjoys Eleventh Amendment immunity.") (citing *Muhammed v. Louisiana*, 2000 WL 1568210 (E.D. La. 10/18/00)).

[22] *O'Connor*, 946 F.2d at 1397-98 ("The District Court entered forbidden territory when it held that the Missouri Attorney General violates Missouri law when he contracts with private law firms to engage their attorneys' services as "special assistant attorneys general." This holding

State's contract as a separate action in state court, as was done in *Meredith*, *Bayer*, and *W.R. Grace*.[23]

## IV. Conclusion

The Insurers lack standing to seek disqualification of counsel based on alleged violations of state statutes. Moreover, they have failed to challenge the validity of the State's contract with its counsel through a request for declaratory or injunctive action. Finally, the Insurers are prohibited from maintaining this action in federal court under the Eleventh Amendment. Accordingly, this Court is without authority to decide whether the State's contracts with its counsel are valid as urged in the motion pending before this Court.

Respectfully submitted,

By:    /s/ Thomas P. Owen, Jr.

Richard C. Stanley, 8487
Thomas P. Owen, Jr., 28181
Melissa V. Beaugh, 28250
    Of
STANLEY, FLANAGAN & REUTER, L.L.C
909 Poydras Street, Suite 2500
New Orleans, Louisiana 70112
Telephone: (504) 523-1580
Facsimile: (504) 524-0069

---

runs afoul of the Eleventh Amendment, as decalrared by the United State Supreme Court in *Pennhurst*....")

[23] Of course, if this case was subsequently remanded back to state court, the Insurers could raise this issue as a reconventional demand.

-and-

Basile J. Uddo, 10174
Attorney at Law
3445 North Causeway Boulevard
Suite 724
Metairie, Louisiana 70002
Telephone: (504) 834-1819
Facsimile: (504) 832-7208

Attorneys for Paul G. Aucoin, Attorney at Law; The Dudenhefer Law Firm, L.L.C.; Fayard & Honeycutt, A.P.C.; McKernan Law Firm; Ranier, Gayle and Elliot, L.L.C.; and Domengeaux Wright Roy & Edwards L.L.C.

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 1, 2008, I electronically filed the foregoing Plaintiff's Counsel's Supplemental Brief on Standing and Eleventh Amendment Immunity concerning the Motion to Disqualify Plaintiff's Private Counsel with the Clerk of Court using the CM/ECF system which will send a notice of filing to all counsel accepting electronic notice. I further certify that I mailed the foregoing document and notice of electronic filing filed by first-class mail to all counsel of record who are non-CM/ECF participants.

    /s/ Thomas P. Owen, Jr.    
