UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K"(2) |
| PERTAINS TO: ROAD HOME | * | |
| *Louisiana State*, C.A. No. 07-5528 | * | JUDGE DUVAL |
| | * | |
| | * | MAGISTRATE WILKINSON |
| * * * * * * * * * * * * * * * * * * * * * * * * * * * | * | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION OF
STATE FARM FIRE AND CASUALTY COMPANY AND CERTAIN OTHER
INSURER DEFENDANTS TO DISQUALIFY PLAINTIFF'S PRIVATE COUNSEL**

**TABLE OF CONTENTS**

I.   THE ELEVENTH AMENDMENT DOES NOT PRECLUDE THE COURT FROM ADDRESSING ALL OF THE ISSUES RAISED IN DEFENDANTS' MOTION TO DISQUALIFY COUNSEL ...................................................................... 1

II.  DEFENDANTS HAVE STANDING TO RAISE THE LEGAL AND CONSTITUTIONAL SHORTCOMINGS OF THE ARRANGEMENT BETWEEN THE ATTORNEY GENERAL AND COUNSEL ...................................... 7

III. RECENT EVENTS UNDERSCORE COUNSEL'S CONFLICTS ............................... 10

IV.  CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES:

*Ames v. Kansas*, 111 U.S. 449 (1884) ............................................................................ 2

*Brown & Williamson Tobacco Corp. v. Daniel International Corp.*, 563 F.2d 671 (5th Cir. 1977) .................................................................................................................... 7

*Cappel v. Adams*, 434 F.2d 1278 (5th Cir. 1970) ........................................................... 4

*City and County of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130 (N.D. Cal. 1997) ........................................................................................................................ 4-5, 9

*Clair v. DeLuca*, 232 F.R.D. 219 (W.D. Pa. 2005) ......................................................... 6

*Ex parte Burr*, 22 U.S. 529 (1824) ................................................................................. 4

*Foti v. Bayer Corp.,* No. 04-439, slip op. (La. Civ. Dist. Ct. Sept. 27, 2004) ................ 7

*Gardner v. New Jersey*, 329 U.S. 565 (1947) ................................................................. 4

*Gray v. Dummitt*, No. 06-322, 2006 WL 5157708 (E.D.N.Y. Dec. 21, 2007) ............... 9

*Huber, Hunt, & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22 (5th Cir. 1980) ............. 1-2

*Ieyoub ex rel. State v. W.R. Grace & Co.*, 97-728 ( La. App. 3 Cir. 3/6/98); 708 So. 2d 1227 ............................................................................................................................... 7

*Illinois v. City of Milwaukee*, 406 U.S. 91 (1972) .......................................................... 2

*In re Gopman*, 531 F.2d 262 (5th Cir. 1976) ............................................................... 7-8

*In re Katrina Canal Breaches Litigation*, 524 F.3d 700 (5th Cir. 2008) ............... 1, 2, 6

*In re Quintus Securities Litigation*, 201 F.R.D. 475 (N.D. Cal. 2001) .......................... 6

*Jones ex rel. Jones v. Correction Medical Services, Inc.*, 401 F.3d 950 (8th Cir. 2005) ............... 4

*Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir. 1984) .......................................................... 8

*Louisiana ex rel. Caldwell v. Allstate Insurance Co.,* --- F.3d --, No. 08-30465, 2008 WL 2779210 (5th Cir. July 18, 2008) ................................................................................ 2

*Meredith v. Ieyoub*, 96-1110 (La. 9/9/97); 700 So. 2d 478 .......................................... 7, 9

*O'Connor v. Jones*, 946 F.2d 1395 (8th Cir. 1991) ............................................................*passim*

*Oklahoma ex rel. Edmondson v. Magnolia Marine Transport Co.*, 359 F.3d 1237 (10th Cir. 2004) .............................................................................................................. 2

*Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89 (1984) ........................................... 2

*People ex rel. Clancy v. Superior Court*, 705 P.2d 347 (Cal. 1985) ............................................. 4

*Tomlinson v. Florida Iron & Metal, Inc.*, 291 F.2d 333 (5th Cir. 1961) .................................. 4, 9

*United States v. Clarkson*, 567 F.2d 270 (4th Cir. 1977) ............................................................. 8

*Weber v. Goodman*, 9 F. Supp. 2d 163 (E.D.N.Y. 1998) ............................................................. 6

## **RULES:**

LA R. Prof'l Conduct 1.5(c) ....................................................................................................... 5

LA R. Prof'l Conduct 1.7(b)(4) ................................................................................................... 9

LA R. Prof'l Conduct 1.9(a) ....................................................................................................... 9

LA R. Prof'l Conduct 1.16(a)(1) ................................................................................................. 5

Fed. R. Civ. P. 23(a)(4) .............................................................................................................. 5

Unif. Local Civ. R. 83.2.10E, Rule I(D) .................................................................................... 5

In response to the issues raised by the Court in a status conference on July 21, 2008, and a related minute entry (Doc. 13924), State Farm Fire and Casualty Company and the other moving insurers (*see* Docs. 10937 and 10304) ("Defendants") submit this supplemental memorandum in support of their motion to disqualify the State's private law firms ("Counsel").

## I.   THE ELEVENTH AMENDMENT DOES NOT PRECLUDE THE COURT FROM ADDRESSING ALL OF THE ISSUES RAISED IN DEFENDANTS' MOTION TO DISQUALIFY COUNSEL

The Court first asked "whether a federal court has the power under the Eleventh Amendment to declare invalid the contract for legal services between the Louisiana Attorney General and private counsel," citing *O'Connor v. Jones*, 946 F.2d 1395 (8th Cir. 1991).  (Doc. 13924.)  As discussed below, however, *O'Connor* is distinguishable because, as the Fifth Circuit has already held, the State waived its sovereign immunity by bringing this case as it did and, moreover, as this Court itself has already held, the Eleventh Amendment does not apply to this case in any event because the State is the plaintiff.  Even if it did apply to this case in any respect, the Eleventh Amendment would not prohibit the Court from exercising its inherent powers to manage litigation before it and ensure that Counsel's engagement to conduct this action is consistent with applicable law, particularly in a case in which Counsel seek to represent a putative class.

Initially, pursuant to the Fifth Circuit's prior jurisdictional ruling and the law of the case doctrine, the State has waived any sovereign immunity it might have had under the Eleventh Amendment or otherwise by pleading the insurance contract claims of a large number of private citizens.  *In re Katrina Canal Breaches Litig.*, 524 F.3d 700, 707, 710-11 (5th Cir. 2008).  Further, even had there been no general waiver of sovereign immunity, the Eleventh Amendment has no application to this suit since it was initiated by the State of Louisiana as plaintiff.  *See Huber, Hunt, & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22, 24 n.6 (5th

1

Cir. 1980) ("Of course, the eleventh amendment is inapplicable where a state is a plaintiff …."); *see also Illinois v. City of Milwaukee*, 406 U.S. 91, 101 (1972); *Ames v. Kansas*, 111 U.S. 449, 462 (1884); *Oklahoma ex rel. Edmondson v. Magnolia Marine Transp. Co.*, 359 F.3d 1237, 1239 (10th Cir. 2004). This Court has previously so held in this case (*see* Transcript of November 14, 2007 Ruling (Doc. 9066) at 82-87), and the Fifth Circuit has affirmed the absence of immunity. *Canal Breaches*, 524 F.3d at 712. Moreover, in a more recent decision the Fifth Circuit has reinforced the inapplicability of the Eleventh Amendment to cases in which the State brings a case as plaintiff. *See Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, --- F.3d ----, No. 08-30465, 2008 WL 2779210, at *10 n.12 (5th Cir. July 18, 2008) ("A number of circuit courts have interpreted the Eleventh Amendment as only applicable when a state is a defendant. …. This is consistent with Supreme Court precedent.") (citations omitted).

 The Eighth Circuit's opinion in *O'Connor v. Jones* and the Supreme Court's opinion in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), on which it relies are inapposite for the simple reason that, unlike in either *O'Connor* or *Pennhurst*, in this case and in *Caldwell v. Allstate* the State initiated the lawsuit in the first instance. In *O'Connor*, a state prisoner pursuing a *pro se* claim under 42 U.S.C. § 1983 filed a motion to disqualify the private law firm retained by the Missouri Attorney General as "special assistant attorneys general" to represent the state prison officials the plaintiff had named as defendants. The prisoner argued that the state's practice of retaining many different law firms to represent officials in such suits had the effect of reducing the number of attorneys available to be appointed to represent prisoners. 946 F.2d at 1396-97. While the district court granted the motion to disqualify, the Eighth Circuit reversed concluding that the district court had "run[] afoul of the Eleventh Amendment." *Id.* at 1398. However, unlike the *O'Connor* case, the State initiated this lawsuit

and seeks to be the representative of a putative class of individual homeowners; thus the Eleventh Amendment has no application and any sovereign immunity has been waived for the reasons stated previously.

Additionally, the only defendants in Mr. O'Connor's underlying § 1983 suit were individual state officials; accordingly, by challenging the state's general practices in contracting with private attorneys, the plaintiff was effectively seeking to force the attorney general and the state to become participants in and subjects of the litigation where they had not previously been so.  Here, by contrast, both the State and the Attorney General are already parties to this case of their own accord and the State is simply not being compelled to participate in this litigation against its will.  Further, *O'Connor* did not involve a challenge to the legality or ethical propriety of the state's agreements with counsel as such, but rather a broad challenge to the general policy and practice by which the state selected counsel in all such cases.   In this case, however, Defendants have identified numerous specific shortcomings in Counsel's actual agreements which render their engagements a nullity.   As detailed *infra*, the Court's own rules of professional responsibility, procedures, and inherent authority permit, if not compel, it to address the fact that Counsel are appearing before it pursuant to illegal and/or unethical agreements.  Indeed, *O'Connor* expressly recognized that "a federal district court has the authority to supervise attorneys practicing before it."  946 F.2d at 1399.

Moreover, despite the many rounds of briefing and argument on Defendants' motion to disqualify over the past six months, neither Counsel nor the State have ever argued that if this Court has jurisdiction over this action (an issue that has now been resolved[1]) it

---

[1] The Fifth Circuit affirmed this Court's jurisdiction on April 11, 2008, and the time for seeking Supreme Court review has now passed.

nonetheless lacks jurisdiction to decide the issues raised by Defendants' motion.  Even if such an argument were not deemed to be waived at this stage,[2] any argument that the Court lacks jurisdiction to consider whether Counsel are proceeding under an illegal engagement agreement is without merit for several reasons.

First, the power to disqualify an attorney from a case is "incidental to all Courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Ex parte Burr*, 22 U.S. 529, 531 (1824) (Marshall, C.J.).  More generally, "[a] federal court has 'inherent power to oversee attorneys' who appear before it," *Jones ex rel. Jones v. Corr. Med. Servs., Inc.*, 401 F.3d 950, 951 (8th Cir. 2005), a power which includes the authority to modify or invalidate counsel's contractual arrangements where illegal, unethical, or inequitable.  *See Cappel v. Adams*, 434 F.2d 1278, 1280-81 (5th Cir. 1970) (affirming district court's invalidation and/or modification of lawyer's contingent fee contract in course of approving settlement agreement); *People ex rel. Clancy v. Superior Court*, 705 P.2d 347, 353 (Cal. 1985) (disqualifying private lawyer hired by local government to bring nuisance abatement actions because contingent fee arrangement was improper).  A federal court's power to disqualify is thus not limited to conflicts violating the court's own rules of professional responsibility, but rather extends to other circumstances arising out of federal or state law regulating the engagement of counsel.  *See, e.g.*, *Tomlinson v. Fla. Iron & Metal, Inc.*, 291 F.2d 333, 335 (5th Cir. 1961) (granting motion to disqualify taxpayer-plaintiff's counsel on basis of statute imposing time restrictions on former government lawyer's ability to act as counsel prosecuting any claim

---

[2] In addition to failing to make any such argument up to this point, the State, by filing this action, has placed any issues necessarily raised by its claims or the process of fully and fairly litigating those claims within the power of this Court to address.  *See, e.g., Gardner v. New Jersey*, 329 U.S. 565, 573-74 (1947) (holding that when State of New Jersey filed proof of claim for unpaid taxes with federal bankruptcy court state waived sovereign immunity not only as to priority of claim but also adjudication of substantive merits of claim in the event of objection to claim by debtor).

against government); *City and County of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1135-36 (N.D. Cal. 1997) (addressing, though ultimately denying on the merits, motion to disqualify "Special Attorneys" hired pursuant to contingent fee arrangement to prosecute claims against tobacco manufacturers based on alleged violation of state law relating to retention of private lawyers to represent governmental interests).

Second, there is no dispute about this Court's jurisdiction to enforce the Rules of Professional Conduct that it has adopted, specifically, the Louisiana Rules of Professional Conduct.  *See* Unif. Local Civ. R. 83.2.10E, Rule I(D) (adopting the Louisiana Rules of Professional Conduct).  Those rules are implicated by an illegal engagement agreement.  Counsel acknowledge that any fees they contemplate receiving would be contingent on a favorable outcome generating some kind of recovery.  (*See* Doc. 12293 at 29-36.)  Any such contingency fee arrangement, however, is precluded by the rules adopted by this Court if the arrangement is "prohibited by … other law."  La. R. Prof'l Conduct 1.5(c).  Because the arrangement does not comply with the statutory requirements for professional services contracts and violates the Louisiana Constitution, the arrangement is illegal and thus violates the Court's rules.  *See id.*; *see also* La. R. Prof'l Conduct 1.16(a)(1) (prohibiting lawyer from commencing or continuing representation that violates "the rules of professional conduct *or other law*") (emphasis added).  Accordingly, this Court's Rules of Professional Responsibility not only permit, but require the Court to determine whether Counsel's engagement agreement accords with state law.  Indeed, the opinion in *O'Connor* recognized that the Eleventh Amendment does not foreclose federal courts from enforcing their own rules and addressing ethical violations.[3]  946 F.2d at 1399.

---

[3] To the extent that *O'Connor* may suggest that in cases where the Eleventh Amendment may have some application, federal district courts lack power to take into account state law in connection with motions to disqualify

5

Third, the Court's jurisdiction to consider Counsel's fee agreement is even more clear in the context of a putative class action in which Fed. R. Civ. P. 23(a)(4) would ultimately require the Court to examine the ability of the State and its counsel to fairly and adequately protect the interests of the class in determining whether to certify the putative class of individual homeowners.   The legality of Counsel's fee agreement is without question a relevant consideration.  "Almost certainly, the best way for the court to assess a potential lead plaintiff's adequacy is to consider the manner in which he has retained counsel and negotiated an attorney's fee for the class." *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 482 (N.D. Cal. 2001); *see also Clair v. DeLuca*, 232 F.R.D. 219, 226 (W.D. Pa. 2005) ("A lead plaintiff also has a fiduciary duty to identify and retain competent counsel and to negotiate a reasonable attorney's fee for the class."); *Weber v. Goodman*, 9 F. Supp. 2d 163, 172-74 (E.D.N.Y. 1998) (holding class representative and counsel inadequate where named plaintiff's fee arrangement with counsel violated applicable state ethics code in not making plaintiff responsible for at least pro rata share of costs and expenses of lawsuit if unsuccessful).  As discussed in previous briefing, it makes sense to resolve possible counsel disqualification issues separate from and in advance of class certification briefing, and courts have often done so.  (Doc. 13253 at 10.)  Nor is there any Eleventh Amendment bar to the Court's consideration of such issues.  By bringing a putative class action, the State has waived any possible such argument.  *See Canal Breaches*, 524 F.3d at 707 ("that immunity of the State from removal to federal court does not extend to the members of the class").

---

counsel, Defendants believe that *O'Connor* is wrongly decided.  Moreover, the court in *O'Connor* had no occasion to consider the applicability of Rule 1.5(c) or 1.16(a)(1).

In summary, the issue of the legality and enforceability of Counsel's retainer agreements is part and parcel of this litigation, to which the Eleventh Amendment does not apply and as to which in any event the State has waived any sovereign immunity that it might otherwise have.

## II. DEFENDANTS HAVE STANDING TO RAISE THE LEGAL AND CONSTITUTIONAL SHORTCOMINGS OF THE ARRANGEMENT BETWEEN THE ATTORNEY GENERAL AND COUNSEL

The Court has also asked the parties to address whether Defendants have "standing in this matter to challenge the validity of the contract between the Attorney General and private counsel." (Doc. 13924.) The Louisiana Supreme Court has specifically held that parties in the position of Defendants have standing to raise the constitutional and statutory issues implicated by the Attorney General's retention of private counsel. *See Meredith v. Ieyoub*, 96-1110 (La. 9/9/97); 700 So. 2d 478, 480-81; *see also Ieyoub ex rel. State v. W.R. Grace & Co.*, 97-728 (La. App. 3 Cir. 3/6/98); 708 So. 2d 1227, 1230; *Foti v. Bayer Corp.*, No. 04-439, slip op. at 1-2 (La. Civ. Dist. Ct. Sept. 27, 2004) (Ex. 20). Indeed, in *Meredith* the Louisiana Supreme Court found standing where the issue was raised by an industry association, the Louisiana Independent Oil & Gas Association, Inc., prior even to the filing of any lawsuits by or on behalf of the Attorney General. *See Meredith*, 96-1110, pp. 3-5; 700 So. 2d at 479-81. Nonetheless, the court held "the individual members of LIOGA, who would be subject to law suits filed by Intervenors under the Contract, clearly have an interest and therefore have standing

to institute this action to restrain the Attorney General from entering into the Contract allegedly in violation of the Constitution and statutory law." *Id.* p. 4; 700 So. 2d at 480.[4]

The Fifth Circuit has explicitly recognized (and neither Counsel nor the State has disputed) that a litigant has standing to raise, by way of a motion to disqualify, issues relating to the legality or propriety of the relationship between the opposing party and its counsel even if that relationship does not directly aggrieve the moving party's own interests. *See Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir. 1977) (holding party had standing to move to disqualify opposing party's counsel on basis of conflict of interest not involving any past or present representation of moving party); *see also In re Gopman*, 531 F.2d 262, 265-66 (5th Cir. 1976); *Kevlik v. Goldstein*, 724 F.2d 844, 848 (1st Cir. 1984); *United States v. Clarkson*, 567 F.2d 270, 272 n.1 (4th Cir. 1977). If Defendants have standing to raise, through a motion to disqualify, the conflicts of interest occasioned by various attorney-client relationships to which they are not a party, then certainly Defendants would have standing to raise in a similar procedural manner the illegal and/or unenforceable nature of retention agreements which have directly resulted in the prosecution of a putative class action lawsuit against them in the name of the State.

The Eighth Circuit's finding of a lack of standing in *O'Connor* is inapposite as the plaintiff-prisoner in that case could not argue that he was subjected to a lawsuit or the threat of a lawsuit as a result an illegal retainer agreement entered into by the state (indeed, he had filed the lawsuit himself). Rather, the plaintiff's only argument as to why his interests were implicated was a general claim that the state's practice of hiring private lawyers to defend state officials

---

[4] While *Meredith*, *W.R. Grace*, and *Bayer* each recognized standing in the specific context of an action or motion for declaratory or injunctive relief, there is no legal justification for not similarly recognizing standing in the context of a motion to disqualify.

against prisoner lawsuits diluted the pool of attorneys available to be appointed to represent prisoners like himself who brought such actions even though he himself had been appointed "highly capable counsel" and, therefore, not suffered any actual harm. *See* 946 F.2d at 1397, 1399-1400. In any event, to the extent the reasoning in *O'Connor* might be read to apply to any situation beyond the unique facts of that case, that opinion is not binding on this Court and any suggestion of a lack of standing would run contrary to the two lines of cases discussed *supra* recognizing standing (1) on the part of litigants to raise conflicts of the opposing party's counsel irrespective of whether such litigant is itself a party to that conflict or even itself aggrieved by the conflict, and (2) on the part of party or even *potential* party litigants to raise the Attorney General's non-compliance with the Louisiana Constitution and/or Louisiana procurement law in retaining private counsel.

   If anything, standing as to the constitutional and procurement law issues implicated by Counsel's engagement would be more readily apparent in the context of a motion to disqualify than if raised by way of a separate and independent claim for declaratory or injunctive relief. In the context of a motion to disqualify, it is at least a certainty that there is an actual case pending against the movant with the resulting identification of parties and establishment of counsel's roles and relationships. Yet in *Meredith* the Louisiana Supreme Court recognized standing to bring a declaratory and injunctive action prior even to the filing of any actual lawsuit, the naming of any specific defendants, or the assertion of any actual allegations. 96-1110, pp. 3-5; 700 So. 2d at 480-81. If Defendants had standing to raise these issues even prior to the filing of this lawsuit, then surely they have standing to raise them now within the framework of the pending litigation. Indeed, various courts have recognized the standing of litigants to raise issues relating to the legality and/or enforceability of their opponent's retention

of counsel by way of disqualification motions.  *See Tomlinson*, 291 F.2d at 335 (considering and granting motion to disqualify taxpayer-plaintiff's counsel on basis of statute imposing time restrictions on former government lawyer's ability to act as counsel prosecuting any claim against government); *Gray v. Dummitt*, No. 06-322, 2006 WL 5157708, at *3-4 (E.D.N.Y. Dec. 21, 2007) (holding defendants had standing to seek disqualification of plaintiff's counsel on basis of illegal and/or unethical provisions in plaintiff's retainer agreement with counsel curtailing plaintiff's exclusive right to settle her claims on terms acceptable to her); *City and County of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. at 1135-36 (implicitly recognizing defendant's standing to seek disqualification of plaintiffs-California counties' counsel based on state common law rules relating to retention of private lawyers to represent governmental interests).

## III.    RECENT EVENTS UNDERSCORE COUNSEL'S CONFLICTS

Developments subsequent to the last briefing submitted on this motion serve to underscore the other portion of the motion establishing that Counsel should be disqualified on the basis of the conflicts inherent in their multiple representations of both the State and homeowners who have received or will receive Road Home funds, both individually and as members of putative classes.[5]  Counsel have previously sought to minimize the impact of Mr. Fayard's role as PSLC-Insurance Liaison Counsel and Mr. McKernan and Mr. Ranier's status as

---

[5] The Court has previously requested and purportedly received clarification as to the extent and nature of Counsel's potentially conflicting representations of homeowners.  However, Defendants note that Ranier, Gayle & Elliot, LLC, has recently asked to withdraw from four individual homeowner cases within the Insurance Umbrella (Docs. 13705, 13706, 13707, & 13709; *see also*  Docs. 14226, 14227, 14228, & 14235 (Orders granting motion)), none of which has ever been disclosed in Counsel's submissions which purported to list all cases in which the Ranier firm "represents … individual homeowner insureds concerning hurricane-related damage coverage issues."  (Doc. 13252 at 5-6.)  While the court's docket does not reflect whether any of the plaintiffs in these cases are also Road Home recipients or applicants, it can likely be inferred from the Ranier firm's withdrawal that some, if not all, of these cases fall into that category.  Significantly, Counsel have never made any representation as to whether any conflict waiver or scope of representation agreement was obtained from any of these plaintiffs, whether of the type required from former clients under La. R. Prof'l Conduct 1.9(a) or from terminated clients under La. R. Prof'l Conduct 1.7(b)(4) and the "hot potato" rule.  (*See* Docs. 13253 at 3-6, 13344 at 1.)

members of the Insurance PSLC, arguing such roles were limited to mere "coordination" or "administrative" matters.  (*See* Doc. 13252 at 7, 14-15.)  However, those very attorneys (along with the other members of the Insurance PSLC) have since filed a motion seeking to be compensated for activities that they say include the following:[6]

> Over the course of the last two years, principally, the Insurance PSLC has undertaken to advance and oppose numerous motions, including motions to dismiss. . . .  This battle was fought on many fronts, including federal and state courts, and the United State Fifth Circuit, Court of Appeals and the United States Supreme Court. . . .
>
> In addition to advancing this critical issue, the Insurance PSLC has been diligently involved in all aspects of the insurance litigation in the Umbrella.  The Insurance PSLC has also advanced and opposed other motions, and performed other action for the benefit of all plaintiffs, including but not limited to the following:  . . .  2.  Drafted/Filed amicus briefs in individual cases within the umbrella;  3.  Opposed pleadings filed by defendants on behalf of all plaintiffs; . . . 5.  Drafted and filed briefs on various issues such as need for special master, retroactivity of Act 813, collateral source, and burden of proof;  . . . .  All of these efforts were undertaken for the benefit of all plaintiffs.

(Doc. 13688-2 at 2-3.)  Plainly Counsel are claiming a very substantive role on the merits of all plaintiffs' claims, and not merely a coordinating or administrative role.  It is certainly appropriate for the Court to take into account the claimed substantive role in determining whether Counsel can appropriately take on a new client claiming for itself a portion of amounts that may be recovered by many of the same plaintiffs.

---

[6] Note also that the PSLC request to receive a percentage of individual insurance settlements, if granted, would reduce the settlement proceeds available to satisfy the asserted interests of Road Home in settlements involving grant recipients, further illustrating the conflicts presented by the simultaneous representation of the State by certain PSLC members.

## IV.     CONCLUSION

For the reasons stated above and in prior briefing, the private law firms retained by the State should be disqualified.

Respectfully submitted,

*/s/ Wayne J. Lee*
Wayne J. Lee, 7916
  wlee@stonepigman.com
Stephen G. Bullock, 3648
  sbullock@stonepigman.com
Mary L. Dumestre, 18873
  mdumestre@stonepigman.com
Andrea L. Fannin, 26280
  afannin@stonepigman.com
          Of
STONE PIGMAN WALTHER
  WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

          And

Charles L. Chassaignac IV, 20746
  cchassaignac@phjlaw.com
          Of
PORTEOUS, HAINKEL
  & JOHNSON, L.L.P.
343 Third Street, Suite 202
Baton Rouge, Louisiana  70801
Telephone:  (225)383-8900
Facsimile:  (225) 383-7900

*Attorneys for State Farm Fire and Casualty Company and State Farm General Insurance Company*

12

*/s/ Maura Z. Pelleteri*
Maura Z. Pelleteri, 8463
Amy S. Malish, 28992
     Of
KREBS, FARLEY & PELLETERI, L.L.C.
Texaco, Center, Suite 2500
400 Poydras Street
New Orleans, Louisiana  70130
Telephone:  (504) 299-3570
Facsimile:  (504) 299-3582

*Attorneys for Aegis Security Insurance Company*

*/s/ Howard B. Kaplan*
Howard B. Kaplan, 14414
     Of
BERNARD CASSISA ELLIOTT & DAVIS
1615 Metairie Road
P.O. Box 55490
Metairie, Louisiana  70055-5490
Telephone:  (504) 834-2612

*Attorneys for Lafayette Insurance Company, United Fire and Casualty Company and United Fire and Indemnity Company*

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
     Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

*Attorneys for America First Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Mutual Insurance Company*

13

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
           Of
BARRASSO USDIN KUPPERMAN
   FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

*Attorneys for Metlife, Inc., Economy Premier Assurance Company, Metropolitan Casualty Insurance Company, and Metropolitan Property & Casualty Insurance Company*


*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
           Of
LUGENBUHL, WHEATON, PECK,
   RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

           And

Christopher W. Martin,
Texas Bar No. 13057620
Martin R. Sadler,
Texas Bar No. 00788842
           Of
MARTIN, DISIERE, JEFFERSON &
   WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas  77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

*Attorneys for United Services Automobile Association, also separately named by plaintiffs as USAA, USAA Casualty Insurance Company and USAA General Indemnity Company*

14

/s/ Seth A. Schmeeckle
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
      Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

       And

Of Counsel:

Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
      Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

*Attorneys for The Hanover Insurance Company, The Hanover American Insurance Company, and Massachusetts Bay Insurance Company*

/s/ Deborah B. Rouen
Deborah B. Rouen, 2084
Chris A. D'Amour, 26252
      Of
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone:  (504) 581-3234
Facsimile:  (504) 566-0210

*Attorneys for Union National Fire Insurance Company*

15

_/s/ Dominic J. Ovella_

Dominic J. Ovella, 15030
Anne E. Medo, 24556
Sean P. Mount, 27584
Daniel M. Redmann, 30685
John Christopher Dippel, Jr., 30480
     Of
HAILEY, MCNAMARA, HALL,
 LARMANN & PAPALE, L.L.P.
One Galleria Boulevard, Suite 1400
P. O. Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500

_Attorneys for Fidelity and Deposit Company of Maryland, Empire Fire and Marine Insurance Company, Empire Indemnity Insurance Company, and Centre Insurance Company_


_/s/ Judy Y. Barrasso_

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
     Of
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, LLC
LL&E Tower
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (5040 589-9701

_Attorneys for Allstate Insurance Company, Allstate Indemnity Company, Encompass Insurance Company, Encompass Insurance Company of America, and Encompass Property and Casualty Company_

16

/s/ Seth A. Schmeeckle
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
    Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

    And

Of Counsel:

Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
    Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

*Attorneys for Horace Mann Insurance Company, Teachers Insurance Company, and Horace Mann Property & Casualty Insurance Company*

/s/ Alan J. Yacoubian
Alan J. Yacoubian, 17213
Neal J. Favret, 24412
Rachel P. Catalanotto, 31095
    Of
JOHNSON, JOHNSON, BARRIOS &
  YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone:  (504) 528-3001

*Attorneys for Auto Club Family Insurance Company*

17

/s/ *Neil C. Abramson*

Neil C. Abramson, 21436
Nora B. Bilbro, 22955
Jacqueline M. Brettner, 30412
        Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

        And

Marshall M. Redmon, 18398
        Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

*Attorneys for Homesite Insurance Company*

/s/ *Harry Rosenberg*

Harry Rosenberg, 11465
Jacqueline M. Brettner, 30412
        Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for Fidelity National Insurance Company and Fidelity National Property and Casualty Insurance Company*

*/s/ Marshall M. Redmon*

Marshall M. Redmon, 18398
    Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

    And

Amy R. Sabrin
    Of
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760

*Attorneys for Farmers Insurance Exchange, Foremost Insurance Company, Foremost Property and Casualty Company, and Foremost Signature Insurance Company*


*/s/ Neil C. Abramson*

Neil C. Abramson, 21436
Jacqueline M. Brettner, 30412
    Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for American Manufacturers Mutual Insurance Company, Kemper Casualty Insurance Company, Lumbermens Mutual Casualty Company, Merastar Insurance Company, Unitrin Preferred Insurance Company, Unitrin Auto and Home Insurance Company, Trinity Universal Insurance Company, and Trinity Universal Insurance Company of Kansas, Inc.*

19

_/s/ Harry Rosenberg_
Harry Rosenberg, 11465
Jay R. Sever, 23935
Jacqueline M. Brettner, 30412
      Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

_Attorneys for Scottsdale Indemnity Company
and Scottsdale Insurance Company_

20

/s/ Ralph S. Hubbard
Ralph S. Hubbard, III, 7040
Seth A. Schmeeckle, 27076
        Of
LUGENBUHL, WHEATON, PECK,
 RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

        And

Stephen E. Goldman
Wystan M. Ackerman
        Of
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut  06103-3597
Telephone:  (860) 275-8200
Facsimile:  (860) 275-8299

*Attorneys for The Standard Fire Insurance Company, "St. Paul" (a non-existent entity), "St. Paul Travelers Insurance Company" (a non-existent entity), St. Paul Fire & Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, Travelers Home & Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Insurance Company (a non-existent entity), Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company, and The Automobile Insurance Company of Hartford, Connecticut*

21

/s/ Christopher R. Pennison
Jay M. Lonero, 20642
Christopher R. Pennison, 22584
Angie Arceneaux Akers, 26786
Of
LARZELERE PICOU WELLS SIMPSON
LONERO, LLC
Suite 1100 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA  70002
Telephone:  (504) 834-6500
Fax:  (504) 834-6565
*ATTORNEYS FOR REPUBLIC FIRE AND CASUALTY INSURANCE COMPANY, AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, AMERICAN NATIONAL GENERAL INSURANCE COMPANY, AND ANPAC LOUISIANA INSURANCE COMPANY*

## CERTIFICATE

I hereby certify that a copy of the foregoing Supplemental Memorandum in Support of Motion of State Farm Fire and Casualty Company and Certain Other Insurer Defendants to Disqualify Plaintiff's Private Counsel has been served upon all counsel of record by electronic notice from the Court's CM/EC Filing System, this 1st day of August, 2008.

/s/ Wayne J. Lee

22