UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NO. 05-4182 "K" (2) |
| | * | |
| | * | |
| | * | |
| PERTAINS TO:  ALL INSURANCE | * | JUDGE DUVAL |
| | * | MAG. WILKINSON |

**********************************************************************************

**MEMORANDUM IN REPLY TO THE OPPOSITIONS TO
THE INSURANCE PSLC'S MOTION FOR ENTRY OF THE ORGANIZATION
AND COMPENSATION OF COMMON BENEFIT PLAINTIFFS' ATTORNEYS
CASE MANAGEMENT ORDER**

## TABLE OF CONTENTS

**Section**                                                                                  **Pages**

I.  THERE IS NO REASONABLE BASIS FOR DENYING
    ENTRY OF THE PROPOSED CMO ................................. 1 - 6

II. THE AUTHORITY OF THIS COURT TO AWARD
    COMMON BENEFIT FEES AND EXPENSES IS CLEAR ................ 6 - 11

III. THE OPPONENTS JACOBS' AND COUNSEL
     IN THE *AARON* AND *AGUILAR* ACTIONS
     VOLUNTARILY ACCEPTED THE BENEFITS
     OF THE PSLC AND SHOULD PARTICIPATE
     IN THE PAYMENT OF COMMON BENEFIT
     FEES AND EXPENSES ......................................... 11 - 15

IV. INDIVIDUAL CLIENT RECOVERIES WILL BE
    UNAFFECTED BY ENTRY OF THE PROPOSED CMO .............. 16 - 18

V.  A COMMON FUND CAN BE ESTABLISHED
    IN THE UMBRELLA ........................................... 8 - 19

CONCLUSION ....................................................... 19

CERTIFICATE OF SERVICE ......................................... 20

i

# TABLE OF AUTHORITIES

**Citation**  **Pages**

Cases:

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn. 7

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 fn.6

*Trustees v. Greenough,*
  105 U.S. 527 (1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn.7

*In re Diet Drug,*
  2008 WL 942592 (E.D. Pa. 4/8/08) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn. 6

*In re Guidant Corp. Implantable Defibrillators
  Products Liability Litigation,*
  MDL 05-1708 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 fn. 25

*In re MGM Grand Hotel Fire,*
  570 F. Supp. 488 (D.C. Nev. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn. 6

*In re Vioxx Products Liability Litigation,*
  MDL 1657 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16 fn. 21

*In re Zyprexa,*
  424 F. Supp. 2d 488 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn. 6

*Kirkpatrick v. Young,*
  456 So 2d 622 (La.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn. 9

*In re Interstate Trust & Banking Company,*
  106 So.2d  276 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn. 9

*Louisiana State Mineral Board v. Abadie,*
  164 So.2d 159 (La.App.1st Cir.1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn 8, fn. 9, fn. 10

Treatises:

Manual for Complex Litigation,
  Fourth Edition, 24.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8 fn.11

Newberg on Class Actions,
  §14.01 (3rd ed. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn. 7

Articles:

Alan Hirsch and Diane Sheehey,
  "Common Fund and Substantial Benefit"
  Awarding Attorneys' Fees and Managing Fee Litigation
  (Federal Judicial Center 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn.7

Charles Silver, *A Restitutionary Theory of*
  *Attorneys Fees in Class Actions,*
  76 CORNELL LAW REVIEW 401 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 fn 7

MAY IT PLEASE THE COURT:

The Katrina Canal Breaches Litigation Plaintiffs' Insurance PSLC[1] submits this memorandum in reply to the various memoranda filed by Opponents Attorney Darlene M. Jacobs, counsel in the *Aaron* and *Aguilar* actions, and the Insurer Defendants[2] in opposition to the Insurance PSLC's motion for entry of the proposed Case Management Order ("CMO") establishing an organizational system for the compensation of common benefit plaintiffs' attorney fees and expenses.  For the reasons that follow, and for the reasons previously stated, the Insurance PSLC respectfully requests this Honorable Court enter an order establishing the proposed CMO.

## I.    THERE IS NO REASONABLE BASIS FOR DENYING ENTRY OF THE PROPOSED CMO.

Any suggestion by the Opponents that a common benefit was not and will not be bestowed upon the Individual Plaintiffs and the Insurer Defendants in this action by the efforts of the Insurance PSLC is simply ludicrous.  It is equally outrageous for the Opponents to suggest that a common benefit fund should not be established at this point in the Umbrella.

First and foremost, the PSLC would point out that the Opponents' memoranda eschew the real issues for the Court presented by the proposed CMO.  The proposed CMO is not about "confiscating" some attorney's client's funds.  Nor is there any real dispute between the PSLC

---

[1] Plaintiffs' Liaison Counsel, Joseph M. Bruno, Liaison Counsel for the Plaintiffs' Insurance PSLC, Calvin C. Fayard, Jr., and the Plaintiffs' Sub-Group Litigation Committee - Insurance, John Ellison, Jerry Joseph McKernan, Drew Ranier, and James Garner, are collectively referred to herein as "the Insurance PSLC" or "the PSLC".

[2] These opposing parties are hereinafter referred to collectively as "Opponents".

and the Insurer Defendants.  The proposed CMO is simply a mechanism to achieve what this Court recognized in Case Management Order No. 4 well over a year ago–a just and equitable system for compensating efforts performed in the Umbrella by the Insurance PSLC and others for the common good.[3]

The PSLC's proposed CMO is not novel or unique.  It is a customary and standard practice for courts to make fee assessments and create fee hold-backs to ensure the equitable sharing of fees and costs in a mass joinder or complex consolidation matter between plaintiffs' counsel such as is presented by the Umbrella.  This Court's authority to enter such an order is without reproach.   The concept of shifting a small portion of an individual attorney's fees to a common fund to compensate attorneys for efforts undertaken for common good is well-settled in American jurisprudence.  Any suggestion that this Court does not have the authority to grant the proposed CMO is unconscionable and unsupported by any established legal theory currently existing in complex, mass joinder litigation in this Country.

Of utmost significance, the Opponents' memoranda totally and utterly miscomprehends (1) why the Umbrella was created, (2) how it has truly succeeded, and (3) what is at issue in the proposed CMO, or they intentionally ignore or avoid them.

The Umbrella was created as an intra-district consolidation mechanism to deal with the obvious problems created by the mass filings of cases in the Eastern District following Hurricane Katrina.  The Umbrella stands as a testament to the Eastern District and this Court as a novel approach to handling the swell of cases resulting from a catastrophic event of biblical proportion.

---

[3] Case Management and Scheduling Order No. 4, entered on 3/1/07, at pp. 9, 12 (Doc. No. 3299).

The federal and state courts of this Country are not generally equipped or prepared to deal with the mass of filings that were seen by this Court following Hurricane Katrina. Actions of this nature are normally confined to the mulit-district litigation scenario. Obviously these actions were not ripe for multi-district litigation. Regardless, the Eastern District and this Court have wisely and ably addressed the needs of litigants through the formation of the Umbrella.

As a subset of the Umbrella, the Court established the Insurance section. This sub-section has functioned extremely efficiently and for the benefit of all for more than two years. In that time period, many complex issues of law and procedure have been resolved. The resolution of these complex disputed issues of law and liability has enured to the benefit of all claimants and insurers in the Umbrella. But for the resolution of the disputed central issues of law, almost all of the cases now being settled through the Umbrella would still be held in abeyance awaiting definitive rulings of law. No one can legitimately dispute this fact! The very reason so many thousands of cases sat idly in the Umbrella was because of the entirety of the Umbrella's desire to obtain finality on central legal and procedural issues.

Lest one forgets, the common thread throughout the Umbrella is the presence of one simple allegation: Levee failures or acts of man caused actionable harm which is covered under a homeowner's insurance policy. The presence or absence of this simple allegation in a litigant's complaint is what determined whether a case was allotted to the Umbrella. Under most circumstances, claimants intentionally pleaded this allegation or amended to add this allegation to be transferred to the Umbrella, with the hope of obtaining the benefits created by being in the Umbrella.

3

The principal benefit conveyed upon all claimants and their counsel in the Umbrella was and is the ability to sit back and allow the PSLC to litigate key issues of law and handle procedural matters.   The resolution of these issues obviously was central to the ability of the claimants in the Umbrella to ultimately resolve their cases.  It is equally important for the individual plaintiffs' counsel to limit their costs and efforts, and to ultimately resolve their clients' claims and obtain their fees.  Any suggestion to the contrary is pure fantasy.

Given the large number of claims left pending in the Umbrella at the time of the Court's entry of its *Post-Sher Case Management Order*, it is quite clear that everyone involved was awaiting a final resolution of the central issues of disputed law in the Umbrella (e.g., coverage for levee failures and acts of man).  Otherwise, individual plaintiffs would have previously settled their claims.  Plaintiffs' counsel would not have parked their clients' cases for upwards of two years.  And, the Insurer Defendants would have entered into mass settlements of claims at least a year ago. Again, the reason everything has transpired the way it has is because of the quintessential efforts of the PSLC to resolve fundamental issues of law.  Absent the PSLC's efforts, these cases would undoubtedly still be sitting idly in the Umbrella.

The benefit to the individual plaintiffs, their counsel and the Insurer Defendants is unequivocal.  First, the PSLC expended hundreds of thousands of dollars to litigate central issues of disputed law and address numerous procedural matters which otherwise would have been borne by individual plaintiffs and their counsel.  Second, the PSLC, and others assisting them, expended hundreds of man hours litigating these issues which would have been assumed by individual plaintiffs' counsel.  Lastly, the Insurer Defendants were even benefitted by focusing

4

their efforts and constraining their costs to a limited basis.[4]  The so-called "rifle shot" approach is always more efficient and cost effective than "the scatter-gun" approach.

One can only imagine the costs in dollars and hours to plaintiffs and defendants, if these complex central disputed issues of law and procedure were fought in each and every case, rather than on a mass limited action basis.  The synergistic effects and economies of scale realized by all the parties in the Umbrella justify the establishment of an assessment by this Court to compensate the efforts of the common benefit work performed in the Umbrella.

Additionally, one should not be critical of the Umbrella, or question its successes.  The fact that individual plaintiffs' claims are now being settled at a discounted rate does not diminish the common benefit provided to the claimants and their counsel in the Umbrella.  The resolution of claims is taking place and will continue to take place.  Of utmost significance, the reason resolution is taking place on such a wide scale is the effort of the PSLC to bring these central legal and procedural issues to conclusion.[5]  Accordingly, there is but one real issue which this Court needs to address in the context of the proposed CMO: What is the value of the efforts of the PSLC in the Umbrella to be assessed?

---

[4] The PSLC would further note that the Insurer Defendants lack standing, at a certain level, to object to the entry of the proposed CMO.  The real parties at interest in any dispute regarding the establishment of a system envisioned by the proposed CMO are the plaintiffs' attorneys in the Umbrella.  It is not the insurers or the individual claimants.  The fee assessment sought will be the responsibility of plaintiffs' counsel only.

[5] By analogy, if a litigant participates in a MDL, that litigant is assessed a fee for common benefit work.  When you choose to participate in such systems, you subject yourself to a fee assessment for the benefit you obtain from the system.  Sometimes the benefit is large.  Sometimes it is very small, such as being able to utilize a tolling agreement.  Regardless of the magnitude of the benefit, a fee assessment is levied for participation in the system.

Lastly, the PSLC would redirect the Court's focus on the issue of what is truly being sought in the proposed CMO. The PSLC is not attempting to abscond with any individual plaintiffs' funds. Likewise, the PSLC is not seeking additional funds from any Insurer Defendant in the resolution of any claim. The PSLC is asking this Court to set aside or hold-back a very small and modest portion of the attorneys' fees to be paid in any action pending in the Umbrella to support the common efforts undertaken therein. While disputes may arise between an individual plaintiff's counsel and the PSLC regarding the amount of any fee assessment levied in a particular action, that dispute in no way should act as an impediment to the entry of the proposed CMO. Such disputes are common place in class action, mass joinders and large scale consolidations. Those disputes have and will continue in such cases. That does not mean that common benefit fees will cease to be awarded. On the contrary, common benefit fee funds remain and will continue to remain critical to the just, efficient and speedy management, administration and resolution of these types of actions for years to come.

Accordingly, the Opponents' objections to the entry of the prosed CMO are without merit.

## II. THE AUTHORITY OF THIS COURT TO AWARD COMMON BENEFIT FEES AND EXPENSES IS CLEAR.

It is well-settled, horn book law that federal courts have inherent power to assess attorneys' fees against counsel in a mass consolidation proceeding under the common fund doctrine.[6] Under the common fund or benefit doctrine, first articulated by the Supreme Court

---

[6] *See e.g. Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), in which the United States Supreme Court reiterated the longstanding inherent power of federal courts expressed in numerous decisions to shift fees under the "common fund exception" as part of the courts'

over a century ago, counsel whose efforts obtain, protect, preserve or make available substantial benefits to a class of persons are entitled to attorneys' fees based upon the court's determination of the benefit to the class.[7]  Generally, the right of an attorney to remuneration for services is dependent upon a contract, either express or implied.[8]  An exception to this rule is recognized, however, in those instances where an attorney, alone and at his own expense, has maintained an action for the preservation, protection, increase, or creation of a fund in which persons other than his own clients may share or from which they may benefit.[9]  In such instances, equity requires that all who seek and/or obtain the benefit must pay the costs and expenses incident thereto, including attorneys' fees.[10]

The exception allowing for the award of attorneys' fees, even in the absence of a contract under the "common fund doctrine," is not limited solely to class actions.  A variant on the traditional common fund class action case occurs frequently in mass tort litigation–both multi-

---

historic equity jurisdiction.  *Id.* (citations omitted).  *See also In re Diet Drug,* 2008 WL 942592 (E.D. Pa. 4/8/08); *In re Zyprexa,* 424 F. Supp. 2d 488 (E.D.N.Y. 2006); *and In re MGM Grand Hotel Fire,* 570 F. Supp. 488 (D.C. Nev. 1983).

[7]   Newberg on Class Actions, §14.01 (3rd ed. 1992); *Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980); *Trustees v. Greenough,* 105 U.S. 527 (1881). *See also* Alan Hirsch and Diane Sheehey, "Common Fund and Substantial Benefit" Awarding Attorneys' Fees and Managing Fee Litigation (Federal Judicial Center 2005), pp. 49-85; *and* the history and justification for the practice of awarding fees from common funds are examined in detail in Charles Silver, *A Restitutionary Theory of Attorneys Fees in Class Actions,* 76 CORNELL LAW REVIEW 401 (1991).

[8]   *See e.g. Louisiana State Mineral Board v. Abadie,* 164 So.2d 159, 166 (La.App.1st Cir.1964).

[9]   *Kirkpatrick v. Young,*456 So 622, 625 (La.1984); *In re Interstate Trust & Banking Company,* 106 So.2d 276, 282 (on rehearing); *Abade,* 164 So.2d at 166.

[10]   *Abadie,* 164 So.2d at 166.

7

district litigation and large consolidations–where a fund to pay attorneys' fees is created by the court. In these situations, the court sets aside a sum of money from individual cases and eventually decides how, if any, of the funds should be allocated among various plaintiffs' attorneys, including court designated lead and liaison counsel, and other individual plaintiffs' counsel whose efforts are utilized by a class or group of claimants for their benefit.[11]

Thus, the authority of the Court to award common benefit fees and expenses is well-settled. The only issue is, thus, whether such work for the common benefit of all claimants and their counsel took place in the Umbrella. The Insurance PSLC respectfully suggests that this Court can take judicial notice of the fact that extensive common benefit work was performed and will likely continue to be performed in the Umbrella.

The equitable nature of a common benefit fund derives directly from its common sense approach to the management, administration, prosecution and defense of a mass action by a limited number of lead attorneys such as presented in the case at bar. In this matter, a small group of attorneys was appointed by this Court to oversee and direct the litigation against the Insurance Company Defendants. The roles and obligations of these attorneys were clearly set forth in Case Management Order No. 4.[12] This Order expressly provides for "counsel management and coordination" of efforts through Liaison Counsel and committees appointed by this Court.[13] The Order further acknowledges that the cases in the Umbrella are not limited to

---

[11] Manual for Complex Litigation, Fourth Edition, 24.11.

[12] Case Management Order No. 4, (Doc. No. 3299).

[13] See generally Id. At pp. 4-11.

8

class actions, but include actions filed for individual insureds not seeking class action status.[14]

Most notably, while the Court recognized the early importance of the *Chehardy v. State Farm* case, the Court acknowledged in Case Management Order No. 4 that the attorneys originally filing that case had begun to coordinate with other attorneys in common efforts against the Insurance industry. The Umbrella has never existed solely for the benefit of the *Chehardy* case. Clearly, the *Chehardy* case, and other cases such as the *Xavier* and *Sher* cases, were central to these proceedings, the role and ultimate importance of those cases was not limited to the four corners of the pleadings in those matters. The rulings in those cases have had far reaching effects, including but not limited to the ability for claimants, their counsel and the Insurer Defendants to resolve large numbers of cases in the Umbrella.

No one can reasonably dispute the importance of these actions to the thousands of actions in the Umbrella. Again, the cases which comprised the Umbrella were allotted or transferred to this Section because of allegations that damages asserted in each case were caused, at least in part, by failures in the levee system that surrounded the Greater New Orleans area. The so-called "levee failure" or "levee breach" allegation was the cornerstone to the existence of the entire Umbrella. But for thousands of claimants making this same identical allegation in their original or amending complaints–including those opposing the current motion, the Umbrella might never have been formed. Certainly, the Umbrella would not have existed in the same manner and for the same means that it was in fact created and operated to achieve: Resolution of the overarching levee failure or breach coverage disputes. It is the resolution of these central and common disputed issues of liability which had to be resolved before the multitude of cases in the Umbrella

---

[14] *Id.* at p. 8.

could be resolved.[15]

The resolution of these issues has resulted in a benefit which is common to all claimants in the Umbrella. Prior to the resolution of these central issues, almost all of the claimants were content to have their claims parked, stayed or administratively closed. The simple reason for this mass inaction by claimants was the recognition of the levee breach coverage issues being fought by the PSLC, and the other attorneys working with them. No reasonably minded plaintiffs' attorney would have allowed their client's case to remain parked or administratively closed, in some cases for more than two years, unless they sought the benefit to be obtained by the resolution of these common issues of disputed liability.

Even today, the PSLC is unaware of any mass abandonment of claims as a result of the resolution of these issues. In fact, the contrary is true. Under the Court's direction, and with the cooperation of the PSLC and the Insurer Defendants, cases in the Umbrella are being advanced toward settlements on an unprecedented level. If claimants and their counsel had not sought the benefit of the resolution of these fundamental issues of law, then they would reasonably have been expected to have previously settled their cases or sought to voluntarily dismiss any levee breach or failure allegations from their complaints. All those remaining in the Umbrella through the Court's entry of its *Post-Sher CMO* obviously did not choose to exercise this option.

---

[15] The Insurance PSLC efforts to address disputed issues of liability such as the levee breach coverage allegations should not be viewed as over-shadowing or diminishing the other efforts undertaken by the Insurance PSLC in assisting the Court in establishing, managing and coordinating activities under the Umbrella. The Insurance PSLC believes that many examples exist supporting the establishment of a common benefit fund. Ultimately, the Court will be presented with the applications of all counsel seeking common benefit fees and expenses, and at that time, the Court will decide what, if any, fees are due any counsel, including members of the PSLC, submitting an application.

Thus, it is the resolution of contested issues central to all of the cases in the Umbrella which has now allowed these cases to be settled. To the extent any case is being settled as a result of the resolution of such contested issues of liability, the Insurance PSLC respectfully suggests that the attorneys who advanced and defended these issues for the benefit of all claimants and their counsel in the Umbrella are entitled to compensation for their common benefit effort and expense. This right to a common benefit fee is no less warranted, even if cases are being settled on a discounted basis. The settlements are still nonetheless the result of the common effort of the Insurance PSLC. No one can legitimately argue otherwise.

Accordingly, the Court should enter the proposed CMO establishing a fee assessment, with the award and allocation of any fees to be decided at a future date.

## III. THE OPPONENTS JACOBS AND COUNSEL IN THE *AARON* AND *AGUILAR* ACTIONS VOLUNTARILY ACCEPTED THE BENEFITS OF THE PSLC AND SHOULD PARTICIPATE IN THE PAYMENT OF COMMON BENEFIT FEES AND EXPENSES.

The Insurance PSLC initially notes that Opponents Jacobs' and *Aaron* and *Aguilar* counsel's oppositions are flawed for three primary reasons: (1) Opponents voluntarily elected to be included under the Katrina Umbrella, (2) Opponents voluntarily accepted the benefit of the administration, management, oversight and efforts of the Insurance PSLC under the Katrina Umbrella, and (3) the Insurance PSLC's request is a hold-back to be allocated by the Court at a future date, and the Opponents have failed to demonstrate why such an assessment is unreasonable.

11

Opponent Jacobs cites in her opposition memorandum four actions she filed or which were filed on her behalf, and which are pending in the Eastern District: 06-6303[16], 06-5731, 06-5732, and 06-5733.  Opponent Jacobs further states that the Insurance PSLC "has not made any law which will benefit mover."   Additionally, Opponent Jacobs says she is entering the settlement track *established under the Umbrella* and if her case is unresolved, will try it without help from the Insurance PSLC.[17]   Opponent Jacobs fails to point out that she voluntarily undertook steps to have her cases transferred to the Katrina Umbrella.  In each of the actions numbered 06-5731, 06-5732, and 06-5733, the Opponent Jacobs filed a *First Supplemental and Amending Complaint* asserting levee breach and/or negligent acts of man allegations in an obvious effort to take advantage of the Insurance PSLC's position that "All-Risk" homeowners' insurance policies provided coverage to policyholders like the Opponent Jacobs for such alleged causes of damage or injury.[18]  Moreover, there does not appear to be any evidence in the record of any of these matters, including those in the Umbrella, where the Opponent Jacobs sought to oppose the transfer or consolidation of her cases to and under the Umbrella.

---

[16]  A review of the Eastern District's electronic docket sheets reveal that the case captioned as *Levy v. Vigilant Insurance Company, et al*, 06-cv-6303-JCZ-KWR was remanded by Judge Zainey to the Civil District Court for the Parish of Orleans on 10/30/2006 (Doc. No. 9).

[17]  Opponent Jacobs' Opp. Memo., at p. 1, (Doc. No. 13730).

[18]  *See Levy v. Axis Surplus Insurance Co.*, 06-cv-5731, First Supplemental and Amending Complaint (Doc. No. 31), Order Reassigning Case signed by Judge Fallon on 7/27/07 (Doc. No. 35), and Case Consolidated with 05-4182 (Doc. No. 36); *Levy v. Axis Surplus Insurance Co.*, 06-cv-5732, First Supplemental and Amending Complaint (Doc. No. 28), Order Transferring Case signed by Judge Porteous on 7/19/07 (Doc. No. 35), and Case Consolidated with 05-4182 (Doc. No. 36); *and Levy v. Axis Surplus Insurance Co.*, 06-cv-5733, First Amended Complaint (Doc. No. 38), Order Transferring Case signed by Judge Berrigan on 5/10/07 (Doc. No. 35), and Case Consolidated with 05-4182 (Doc. No. 41)

The Insurance PSLC would also point out that since the inception of the Katrina Umbrella the PSLC, together with a number of other attorneys working together with and assisting the PSLC, has made and continues to make numerous appearances, advance and oppose motions, and has performed and continues to perform extensive additional activities under the Court's direction and for the benefit of all individual plaintiffs and plaintiffs' counsel in the Umbrella. As discussed more fully in other sections of this reply brief, the Opponents have clearly received the benefit of the PSLC's actions. The Opponents do not cite, nor can they cite, any situation where they were forced to appear at a status conference or in defense of a critical motion on an issue of liability central to their claims. Every time the Insurance PSLC attended or attends such a conference or hearing on behalf of the plaintiffs in the Umbrella, there was and is a benefit to the Opponents and others. Similarly, the reason the Opponents Jacobs and *Aaron* and *Aguilar* counsel cannot cite such a situation is because the Insurance PSLC, or someone assisting them, has made all those appearances, or fought the fight for them. No one can reasonably dispute that benefit has been sought and obtained by litigants and counsel like the Opponents by seeking to have their cases transferred to and maintained in abeyance for the last year or two in the Umbrella.

Consistent with this point, the Opponents *Aaron* and *Aguilar* Plaintiffs' counsel actually concede in their opposition that they have done nothing to advance their clients' cases pending resolution of key contested issues of law in the Umbrella. The *Aaron* counsel go as far as to admit that they permitted the *Aaron* case to be administratively closed for more than two years, all the time watching and awaiting a resolution of the matters being advanced and fought by the Insurance PSLC on their behalf and for the benefit of all others in the Umbrella.

Diligence is the cornerstone to proper representation of a client. The *Aaron* counsel's diligence, in the last two years, admittedly is derived from the PSLC's actions and efforts, and not their own. For this reason, and others, these counsel should be subjected to a reasonable fee assessment.

More important, the Insurance PSLC contemplates continued efforts in the future which are intended to benefit all individual policyholders and their counsel in the Umbrella. Status conferences with the Court continue to take place. Motions continue to be filed and set for hearing. The Insurance PSLC fully intends to continue its efforts to advance and protect the interests of all individual plaintiffs and their counsel in the Umbrella.

Lastly, the Insurance PSLC points out that the proposed CMO contemplates establishing a hold-back which must be approved by the Court for distribution. Nothing in the proposed CMO prejudices any Attorney or *Pro Se* Litigant from challenging the payment of any common benefit fee, or more important, from submitting an application demonstrating efforts they have undertaken to support or provide common benefit to plaintiffs in the Umbrella. The Opponents, like all other plaintiffs and their counsel, will be able to submit an application for common benefit work. If the Opponents choose not to make this submission or cannot make a submission that in no way should prejudice the Insurance PSLC or the other attorneys who have undertaken and will continue to undertake great time, effort and expense for the common benefit of all plaintiffs and their counsel in the Umbrella.

14

The Insurance PSLC would also point out that it is inappropriate to use clients to cloak counsels' efforts to refuse to contribute to the common efforts of other counsel. Counsel should not be rewarded for allowing others to shoulder the burden and responsibility of handling key issues of contested liability. Equity compels a fair and just apportionment of the costs of having handled the common enterprise for all in the Umbrella. No one should be permitted a free ride. More important, there is no real or manifest harm to any clients' recovery in the Umbrella; the clients have and will continue to receive the benefits. And, the requested assessment is minuscule in comparison to the fees to be earned by counsel subject to the proposed CMO, who have done little or nothing in the past two years.

The Insurance PSLC would further point out that the numerous questions presented by counsel for the *Aaron* and *Aguilar* Plaintiffs are either premature or at best addressed by the Court at a future fee allocation and award hearing. The PSLC does not know what the total amount of any assessments permitted by the Court will be, nor can they. Fees in the Umbrella are solely in the discretion of this Court. There is no justification for any claim that the proposed CMO is a "confiscation" of any clients' funds. The proposed CMO is simply a fair and just approach to ensure that those attorneys appointed by the Court, together with the attorneys who have voluntarily undertaken to assist the Insurance PSLC, are fairly and adequately compensated for their time and effort expended in protecting, preserving and defending the common interests of all claimants in the Umbrella.

Accordingly, the Opponents' oppositions are unsubstantiated and should be disregarded.

15

IV.    **INDIVIDUAL CLIENT RECOVERIES WILL BE UNAFFECTED BY ENTRY OF THE PROPOSED CMO.**

Regardless of any assertion by the Opponents, the Insurance PSLC is not seeking to "confiscate" any "client's recovery."[19]  On the contrary, the Insurance PSLC is only seeking a modest fee and expense assessment of 2%, and not to exceed 5%.  The Insurance PSLC envisions this percentage to be paid solely from the fee portion of any recovery obtained in the settlement of any claim in the Umbrella, since the Court entered its *Post-Sher Case Management Order*.  The 2% assessment is at the low end of common benefit awards provided in most cases,[20] and yet, it is consistent with the recognition of common benefit work performed and anticipated to be performed in other mass joinder cases such as in the *Vioxx* litigation.[21]

Moreover, the fact that a common benefit fund is now being sought should be of no surprise to any claimant or their counsel in the Umbrella.  In Case Management Order No. 4, the Court established the foundation upon which future common benefit fees and expenses would be addressed.  The Court noted that work performed prior to the entry of that Order, "at the appropriate time, be submitted to the Court for approval as compensable work performed."[22]  The

---

[19]  *Aaron* and *Aguilar* Pls. Opp., at p. 1 (Doc. No. 14120).

[20]  *See In re Diet Drug, supra,* at *40.

[21]  *See In re Vioxx Products Liability Litigation*, MDL 1657, Fallon, J., Pretrial Order No. 19, establishing a range for common benefit fees and expenses early in the litigation.  The lowest range was 2% fees and 1% for costs.  (Doc. No. 786).  *Compare with In re Vioxx Products Liability Litigation*, MDL 1657, Pre-Trial Order No. 37, in which the Court assessed all claimants who had not complied with Pretrial Order No. 19, with an 8% assessment, post-global settlement.  (Doc. No. 14504).

[22]  *Id.* at p. 9.

16

Court maintained jurisdiction over any fees awarded under the Umbrella, and more importantly, the Court provided that "the parties to the litigation will be treated fairly and justly."[23] All cases allotted or transferred to the Umbrella were apprised of Case Management Order No. 4. Equally significant, those attorneys who have made no effort to advance their clients' claims while awaiting the resolution of the central contested issues common in all the Umbrella cases lack any rational basis for disputing the payment of a modest fee for the work performed for their and their clients' benefit.

Additionally, the Insurance PSLC would further point out that the establishment of the Umbrella has provided other benefits to many litigants. Of utmost importance, the Umbrella has provided an intra-district consolidation proceeding that has allowed counsel to mass file and maintain large numbers of cases which would otherwise be prohibited by the Federal Rules of Civil Procedure.[24] For example, the *Aguilar* and *Aaron* cases each involve mass joinders of hundreds of unrelated plaintiffs against a myriad of insurance companies. The only common thread in these cases is the levee breach allegation. If not for the establishment and maintenance of the Umbrella, these cases, and many others, would have been severed and required to be filed as individual suits with the standard filing fees of $350.00 per case. Additionally, counsel would have been required to prepare separate pleadings in each case, issueseparate service, prepare separate cover sheets, undertake separate motion practice, etc.

---

[23]  *Id.* at p. 12.

[24]  The Court specifically noted this problem in its Order of March 27, 2007, administratively closing a number of mass joinder cases in the Umbrella. (Doc. No. 3573).

17

Moreover, absent the efforts of the Insurance PSLC, each claimant and their counsel would have been forced to defend, brief, argue and appeal–at their sole costs–the very same issues which the PSLC handled for them. Clearly, this is a savings of time, effort and expense to each claimant and his or her attorney. Absent a ruling by this Court capping all fees permitted to be recovered in the Umbrella by plaintiffs' counsel,[25] the traditional attorney charging a standard 1/3 contingent fee will still be able to recover between 31 1/3% to 28 1/3% (standard 1/3 less the proposed 2% to 5% assessment). This is a very small sum given the enormity of the effort undertaken to date by the PSLC, and for future efforts anticipated to be undertaken as the Umbrella continues to move forward to total resolution.

Accordingly, the proposed 2% to 5% assessment is reasonable and should be established for all cases still in the Umbrella, as set forth in the proposed CMO.

## V.    A COMMON FUND CAN BE ESTABLISHED IN THE UMBRELLA.

The Umbrella provides a mechanism for establishing a common fee and expense fund. The actions sought to be assessed under the proposed CMO are all in the Umbrella. More importantly, all of the fees being generated from which a hold-back is being requested are being developed through settlements arising under the Umbrella. Individual plaintiffs, their counsel and the Insurer defendants are utilizing the mechanics of the Umbrella to obtain resolution of countless claims. There is no reaching beyond the Umbrella by the PSLC. All claims and fees are solely the result of actions taking place through the Umbrella. It is clearly from these actions

---

[25] *See e.g. In re Guidant Corp. Implantable Defibrillators Products Liability Litigation,* MDL 05-1708 (DWF/AJB), Dist. of Minn., Order Regarding Determination of the Common Benefit Attorney Fee Amount (2/15/08), at p. 5, in which the Court placed a cap on all private contingency fees. (Doc. No. 2603).

and the PSLC's efforts to establish and maintain the historic operation of the Umbrella which is permitting these cases to be resolved on a large scale. The settlement of these cases, at this time, is justification alone for a fee assessment.

Finally, as in all actions, the Insurance PSLC reiterates this Court's authority to regulate fees. Only this Court can decide who should receive any fees and the amount of fees to be received. The PSLC does not have this authority, nor does it request it. The PSLC simply asks this Court to establish a system by which a fund may be created to ensure that counsel profit at the expense of any other counsel in pursuing and obtaining the common efforts of all others in the Umbrella.

## **CONCLUSION**

For the foregoing reasons, and for the reasons previously provided to this Court, the Insurance PSLC respectfully requests this Honorable Court deny the Opponents' opposition and grant the Insurance PSLC's Motion for Entry of the Organization and Compensation of Common Benefit Plaintiffs Attorneys CMO on an expedited basis, and establish a formal, court-supervised system for the allocation of common benefit fees and expenses.

Respectfully submitted,

__/s/ Joseph M. Bruno_____
Joseph M. Bruno,
Plaintiffs' Liaison counsel

Calvin C. Fayard, Jr.,
PSLC - Insurance Liaison Counsel
John N. Ellison
James M. Garner
Joseph J. McKernan
Drew A. Ranier,
PSLC - Insurance Committee

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of August, 2008, I presented the foregoing to the

Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of

such filing to all CM/ECF participants.


<u>/s/ Joseph M. Bruno</u>
Joseph M. Bruno

20