# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | No. 05-4182 |
| PERTAINS TO: | * | & Consolidated Cases |
| LEVEE (Bourgeois, No. 06-5131) | * | |
| (Ferdinand, No. 06-5132) | * | SECTION K |
| (Christophe, No. 06-5134) | * | JUDGE DUVAL |
| (Williams, No. 06-5137) | * | |
| (Porter, No. 06-5140) | * | MAGISTRATE WILKINSON |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLANTIFFS' OPPOSITION TO MOTION FOR JUDGMENT
## FILED BY PORT OF NEW ORLEANS [DOC. 13670]

**NOW COMES** Plaintiffs, Linda C. and Arnold F. Bourgeois, et al, Old Gentilly and Lake Terrace Plaintiffs, Keith C. Ferdinand, M. D., APMC, et al, Bywater Plaintiffs, Mary and Farrell Christophe, et al, East Gentilly Plaintiffs, Susan and August Williams, et al, Kenilworth Subdivisions, Lakefront, Spring Lake, Lake Willow and Pines Village Plaintiffs, Rhealynda and Eric E. Porter, et al, Lower Ninth Ward Plaintiffs, to file this opposition to the Motion for Judgment on the Pleadings filed by the Port of New Orleans (Port) [Doc. 13670].

Your plaintiffs' claims are set forth in five separate Complaints, First Amendments[1] filed in April 2007 and Second Amendments[2] filed in September, 2007.

---

[1] Bourgeois Doc. 3714, Ferdinand Doc. 3716, Williams Doc. 3719, Christophe Doc. 3725 and Porter Doc. 3721;

[2] Bourgeois Doc. 8197, Ferdinand Doc. 8198, Williams Doc. 8200, Christophe Doc. 8199 and Porter Doc. 8202;

On January 31, 2007, the Port filed a Motion to Dismiss under Rule 12(b)(6) for Failure to State a Claim Upon which Relief Can Be Granted (Doc. 2935). That Motion was granted by Order & Reasons entered November 11, 2007. Doc. 8913.  In the interim, Plaintiffs amended their Complaints twice, the first adding additional parties Plaintiff and adding Federal Tort Claim Act claims against the United States, and the second to detail plaintiffs' claims against the United States and the Port with added specificity, particularly as respects the Inner Harbor Navigational Canal, the Industrial Canal, the Inter Coastal Waterway and MRGO.

In the instant Motion the Port seeks entry of Judgment on the Pleadings with respect to Plaintiffs claims. The Motion invites revisitation of the court's Order & Reason on garde.[3]

The Port's position is set out in its initial Memorandum [Doc. 13670-2], and in a Supplemental Memorandum [Doc. 16798];

In the Supplemental Memorandum the Port observes that its " Motion was premised, in part upon La. R. S. 9:2800H's prohibition against strict liability claims against public bodies, . . . for damages arising out of Hurricane Katrina."  The Port then acknowledges the recently declared retroactive application of La. R. S. 9:2800H unconstitutional *Burmaster v. Plaquemines Parish Government*, --- So.2d ---, 2008 WL 2150729, La., 2008, and "withdraws its prior argument regarding La. R. S. 9:2800H. The Port's Motion thus stands on "other grounds," essentially that the levee district is responsible for flood walls and flood control.

***Port's Contentions***

The Port cites two allegations from Plaintiffs Second Amended Complaint, the first 11a and the last 27e, as if that's all that's relevant.  The first references the failure of the floodwall on

---

[3] Plaintiffs oppose dismissal of the Assurance Claims under the FRCP 12c Motion as to both the Direct Action Statute and pour autri for the reasons articulated in Opposition to the 12(b)(6) [Doc. 3407] and call to the court attention *Cohort Energy Co. v. Caddo-Bossier Parishes Port Com'n,* 852 So.2d 1174 (La.App. 2 Cir., 2003), which held the Port of Cowley to be a juridical person, and not , like LDTD, in Cooper an agency of the state.

the Industrial Canal or Inner Harbor Navigational Canal, and the second asserts that "Port had the care custody and control of the Industrial Canal having acquired the lands from the Ursulines and retaining an interest in same and is, accordingly, answerable for Plaintiffs damages under Civil Code Articles 2317 and 2317.1." The Port complains that Plaintiffs' allegations are conclusory, not factual allegations, and stresses that it had no responsibility for flood walls and floodgates, in the exclusive charge of the Orleans levee Board, citing this Court's dismissal of claims against the Port in the Master Consolidated Class Action Complaint.

The Port also claims the absence of allegations which would defeat application of La. R.S. 9:2800C.

***Plaintiffs' Position;***

Plaintiffs respond, first, by citing FRCP 8a, d and e, and suggesting that Plaintiffs Complaint, as Amended, satisfies the notice pleading requirement of Federal Rules. Secondly, Plaintiffs observe that immunity is an affirmative defense, to be pled and proved by the one who asserts it, and not suitable for disposition via  FRCP 12(c), unless the defense is established on the face of the Complaint. Third, Plaintiffs cite other allegations, which the Port overlooks, the ones between the first, ¶11a, and the last, ¶27e. What's between is replete with the factual allegations about the Port's Canal, and not at all about the Levee District's Levees, not the least of which that  "the Port  and the Corp collaborated on the construction of the Industrial Canal Locks"[¶11l] , that "the erection of the new New Lock . . . meaningfully altered the hydrology of the Canal and contributed and contributing to the failures or breaches of the floodwalls and causing overtopping of the floodwalls" [¶11f], and "altered the flow of waters . . . contributing to the failure of the banks and walls of the Industrial Canal" [¶ 27c] and "overtopping" [¶27d].

Second, in ¶92 of the original Complaints, Plaintiffs specifically invoked the doctrine *of res ipsa loquitur*, thus bringing the allegations within the concluding sentence of Civil Code Article 2317.1. ["Nothing shall preclude the court from the application of the doctrine of res ipsa loquitur.]

## Law & Argument

### 1.   *The notice pleading requirements of Rule 8 do not require that a plaintiff anticipate the assertion of immunity by the defendant and plead allegations that will defeat that immunity*.

The pleading requirements of Rule 8 do not require that a plaintiff anticipate the assertion of qualified immunity by the defendant and plead allegations that will defeat that immunity. *See Crawford-El v. Britton,* 523 U.S. 574, 595, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Gomez v. Toledo,* 446 U.S. 635, 639-40, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). If the existence of immunity  depends on the particular facts of a given case, the " the plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense*." Jacobs v. City of Chicago,* 215 F3d 758 (7th Cir., 2000).  *See Crawford-El,* 523 U.S. at 597-98, 118 S.Ct. 1584 (noting that the district court may order a reply to a defendant's answer under Rule 7(a) or a more definite statement of the plaintiff's claim under Rule 12(e)); *Elliott v. Thomas,* 937 F.2d 338, 345 (7th Cir.1991) (stating that summary judgment may be granted in the district court's discretion without permitting discovery)

### 2.   *Immunity is an affirmative defense, to be pled and proved and not suitable for disposition via FRCP 12(c),*

As to Port's claim of immunity, plaintiff suggests that immunity is an affirmative defense which the Port must first plead and then prove.  Dismissal is appropriate on an affirmative defense only if relief is apparent from the face of the complaint. 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34(4).  A motion to dismiss should not be granted unless the

4

plaintiff would not be entitled to relief "under any set of facts that he could prove consistent with the complaint." *Johnson v. Johnson*, 385 F.3d 503 (C.A.5 (Tex.), 2004.)  As such "the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff" Id.  *Brooks v. City or Winston Salem*, 85 F.3d 178, 181 (4th  Cir; 1996) (observing that an affirmative defense may also be raised in a pre-answer motion pursuant to Rule 12(b)(6) of the Federal Rules when the face of the complaint clearly reveals [its] existence).  The defense faces a formidable hurdle when advanced on such a motion.  *Cohn v. New Paltz Cent. School Dist.*, 171 Fed. Appx. 877 (2d. Cir, 2006).

*3.        The Port misreads Plaintiffs allegations, other allegations which the Port overlooks, the ones between the first, 11a, and the last, 27e, are replete with the facts affording notice of the claim;*

As the following makes clear the allegations of the Second Amended Complaint have to do with the Port's contribution to the failure of the flood walls to effect containment.  See particularly, that "Port . . . built the  Inner Harbor Navigation Canal" [ ¶ 11b], "the Canal is owned by the Port" ¶11c, that "the Port  and the Corp collaborated on the construction of the Industrial Canal Locks"[¶ 11l] , that the erection of the new New Lock . . . meaningfully altered the hydrology of the Canal and contributed and contributing to the failures or breaches of the floodwalls and causing overtopping of the floodwalls [¶11f] altered the flow of waters . . . contributing to the failure of the banks and walls of the Industrial Canal" [¶ 27c] and "overtopping" [¶27d]

11a.
The flooding was proximately caused by the failure of the flood wall on the West Bank of the Industrial Canal or Inner Harbor Navigational Canal;
11b.
The Board of Commissioners, Port of New Orleans *built* the Inner Harbor Navigation Canal, it was completed in 1921, before the Flood Control Act of 1928, and for reasons wholly unrelated to it;

11c.

The Canal is *owned* by the Port of New Orleans and The United States . . .

11f.

*The erection of the New Lock*, completed in June 2005, increased the size to 110 feet wide by 1,200 feet long by 36 feet in the place of the existing Lock erected in 1921 which was only 640 feet long, 75 feet wide and 31.5 feet deep, which *meaningfully altered the hydrology of the Canal, and contributed to the failures or breaches of the floodwalls and causing overtopping of the floodwalls in Hurricane Katrina.*

11l

The canal were (sic) designed and operated to accommodate the maritime interests as aforesaid; in fact, *the Port and Corps collaborated on the construction of the Industrial Canal Locks* constructed on lands acquired by the United States form the Port;

11q.

Plaintiffs allege, on information and belief, that the *design of both the Lake Plan and the Lock Project,* and their subsequent implementation, and in operation of the completed work, . . . compromised the Lake Plan and the New Lock Project;

27a.

The Industrial Canal is *owned* by the Port and the United States as aforesaid .

27c

The *Inner Harbor Navigational Canal, New Lock Project*, authorized by the Act of Congress approved March 29, 1956,  November 7, 1986 and October 12, 1996 completed in June 2005  (P.L. 104-303) of the Industrial *Canal altered the flow of waters advancing from the Gulf of Mexico through the Mississippi River Gulf Outlet and the Intercoastal waterway in a manner not contemplated by the Lake Pontchatrain and Vicinity Plan contributing to the failure of the banks and walls of the Industrial Canal and which resulted in damage to Plaintiffs' properties and causing their losses.*

27d

*The erection of the New Lock*, 110 feet wide by 1,200 feet long by 36 feet in the place of the existing Lock erected in 1921 only 640 feet long, 75 feet wide and 31.5 feet deep, *meaningfully altering the hydrology of the Canal, contributing to the failures and breaches and overtopping of the floodwalls during Hurricane Katrina.*

27e.

The defendant Port *had the care custody and control of the Industrial Canal having acquired the lands from the Ursulines and retaining an interest in same and is, accordingly, answerable for Plaintiffs damages under Civil Code Articles 2317 and 2317.1.*

4.      *Plaintiffs pled res ipsa loquitur.*

In paragraph 92 of the Complaints Plaintiffs invoke the doctrine of res ipsa locquitur. *Bianchini v. Humble Pipe Line Co.,* 480 F.2d 251, C.A.5, 1973 described the rule in the following terms:

> "The doctrine of *res ipsa loquitur* is little more than an evidentiary technique that allows an injured person, who would not otherwise be able to do so, to show a *prima facie* case of negligence. Thus, when the doctrine's initial factors are shown and defendant is the person who had exclusive control of an instrumentality that injured plaintiff in a way that ordinarily would not have occurred unless there was negligence on the part of defendant, the burden shifts to defendant to disprove the inference of negligence or to show that he did not cause the damage."

Commenting on that holding the Fifth Circuit had this to say in *Fruge v. Penrod Drilling Co.,* 918 F.2d 1163 (C.A.5 (La.), 1990):

> "*Bianchini* was a diversity case interpreting and applying Louisiana law. Louisiana treats res ipsa loquitur as "an evidentiary technique" allowing the plaintiff to show a prima facie case of negligence, whereupon "the burden shifts to defendant to disprove the inference of negligence or to show that he did not cause the damage." *Bianchini,* 480 F.2d at 255.

The Port may well suggest that *res ipsa* does not support the inference that it had actual or constructed notice of the particular vice or defect in the terms of the immunity provision it seeks to invoke, 2800C. If so, the Port will have the opportunity to plead and prove it. For it to do so, Plaintiffs suggest, it will have to show that it was oblivious to Hurricane Betsy, the flooding associated with it and indeed, the fact that it was sued by the United States under the Acts of Assurances. See *Graci v. United States*, 472 F.2d 124, (C.A.5, 1973) [The United States denied liability to the plaintiffs and filed a third-party complaint against the Board of Commissioners of the Port of New Orleans, claiming indemnity for any sums the Government might eventually become obligated to pay as a result of the lawsuits for damages because of the flood caused by Hurricane Betsy.] In fact the affirming opinion put the Port on notice of the

defect.  Furthermore, it will have to profess an ignorance of the Lake Pontchartrain and Vicinity Plan, The Barrier Plan, the High Level Plan, all pled, an assertion which will strain credulity.

**Conclusion**

The FRCP 12(c) Motion should be denied.

Respectfully submitted,,

OF COUNSEL:

MILLING BENSON WOODWARD LLP

/s/ William C. Gambel
William C. Gambel (LA Bar No. 5900)
909 Poydras Street, Suite 2300
New Orleans, LA  70112-1010
Telephone:  (504) 569-7000
Telecopy:  (504) 569-7001
wgambel@millinglaw.com

John J. Cummings, III, (LA Bar No. 4652)
Cummings, Cummings & Dudenhefer
416 Gravier Street
New Orleans, LA  70130
Telephone:  (504) 586-000
Telecopy:  (504) 586-8423
ccdlawfirm@aol.com

W375193

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by electronic notice in accordance with Local Rules to those counsel receiving electronic notice, and all others depositing same in the United States mail, postage prepaid and properly addressed, this 11th day of August, 2008.

/s/ William C. Gambel
William C. Gambel

W357193