UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION<br><br>PERTAINS TO: LEVEE/MRGO<br>*Bourgeois*, No. 06-5131<br>*Ferdinand*, No. 06-5132<br>*Christophe*, No. 06-5134<br>*Williams*, No. 06-5137<br>*Porter*, No. 06-5140 | CIVIL ACTION<br><br>NO. 05-4182<br>& Consol. Cases<br><br>SECTION "K" (2)<br>JUDGE DUVAL<br><br>MAGISTRATE WILKINSON |

**REPLY MEMORANDUM OF DEFENDANT, BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

**MAY IT PLEASE THE COURT:**

In opposition to the Dock Board's motion, Plaintiffs' argue that certain overlooked amended allegations of their Petitions, namely "those between the first, 11a, and the last, 27e, are replete with the facts affording notice of the claim" against the Dock Board. See, Plaintiffs' Opposition to Motion for Judgment Filed by Port of New Orleans ("Plaintiffs' Opposition") (Rec. Doc. 14388) at p. 5. Plaintiffs also suggest that those allegations are "replete with the factual allegations about the Port's canal, and not at all about the Levee District's Levees," see, Plaintiffs' Opposition at p. 3, and that those allegations "have to do

- 1 -

with the Port's contribution to the failure of the flood walls to effect containment."

See, Plaintiffs' Opposition at p. 5.  In particular, Plaintiffs rely, in part, on the following allegations in an attempt to defeat the Dock Board's motion:

> 11f.
>
> The erection of the New Lock, completed in June 2005, increased the size to 110 feet wide by 1,200 feet long by 36 feet in the place of the existing Lock erected in 1921 which was only 640 feet long, 75 feet wide and 31.5 feet deep, which meaningfully altered the hydrology of the Canal, and contributed to the failures or breaches of the floodwalls and causing overtopping of the floodwalls in Hurricane Katrina.
>
> \* \* \*
>
> 27c.
>
> The Inner Harbor Navigational Canal, New Lock Project, authorized by the Act of Congress approved March 29, 1956, November 7, 1986 and October 12, 1996 completed in June 2005 (P.L. 104-303) of the Industrial Canal altered the flow of waters advancing from the Gulf of Mexico through the Mississippi River Gulf Outlet and the Intercoastal waterway in a manner not contemplated by the Lake Pontchartrain and Vicinity Plan contributing to the failure of the banks and walls of the Industrial Canal and which resulted in damage to Plaintiffs' properties and causing their losses.
>
> 27d.
>
> The erection of the New Lock, 110 feet wide by 1,200 feet long by 36 feet in the place of the existing Lock erected in 1921 only 640 feet long, 75 feet wide and 31.5 feet deep, meaningfully altering the hydrology of the Canal, contributing to the failures and breaches and overtopping of the floodwalls during Hurricane Katrina.

See, Plaintiffs' Opposition at p. 6 (emphasis in original omitted).

One significant problem, however, still confronts Plaintiffs— the replacement or "New Lock," which Plaintiffs contend, among other things: (1)

"altered the hydrology of the Canal;" (2) "altered the flow of waters advancing from the Gulf of Mexico through the Mississippi River Gulf Outlet and the Intercoastal waterway in a manner not contemplated by the Lake Pontchartrain and Vicinity Plan;" (3) was "completed in June 2005 [and] increased the size to 110 feet wide by 1,200 feet long by 36 feet in the place of the existing Lock erected in 1921;" (4) "contributed to the failures or breaches of the floodwalls and caus[ed] overtopping of the floodwalls in Hurricane Katrina;" and (5) "contribut[ed] to the failure of the banks and walls of the Industrial Canal and which resulted in damage to Plaintiffs' properties and caus[ed] their losses"— is not yet in existence. Although a new lock for the Inner Harbor Navigation Canal has been authorized by Congress for over fifty years, it has not yet been built. Thus, the Plaintiffs, in essence, allege that the Dock Board should be held liable to them because a "New Lock," which does not yet exist, "altered the flow of waters" and "contribut[ed] to the failure of the flood walls to effect containment." The legally deficient nature of such a claim requires no further comment.

Moreover, these amended allegations are arguably not even directed against the Dock Board. For example, in the original Complaint for Declaratory Judgment and Damages and Request for Jury Trial filed by Plaintiffs in Bourgeois No. 06-5131 (Rec. Doc. 1-1) at p. 7, the amended allegations 27c and 27d shown above would fall under the subheading entitled "Plaintiffs' Claims against the Corps." Also, when Plaintiffs sought leave to amend their Complaints, they represented, among other things, that: (1) "[t]he amendments

define the claim against the United States;"[1] (2) "the allegations are, in the main, particular to the claim against the United States;"[2] and (3) as "they relate[] to defendants other than the United States, the amendments merely elaborate of allegations previously made as a result of information only recently discovered."[3] In fact, according to Plaintiffs, the whole stated purpose of their amended Complaints was the fact that "[t]he requirement for a predicate administrative claim ha[d] precluded Plaintiffs from asserting Federal Tort Claim[s] Act claims much earlier and the Court ha[d] only just now acted on Plaintiffs' Motion for a Procedures Order simplifying the procedures for filing Admiralty and Admiralty Extension Act Claim[s]."[4]

Plaintiffs' sole original allegations against the Dock Board were claims made under various Acts of Assurance that the Dock Board had entered into in favor of the United States. Those claims have since been dismissed by this Honorable Court. Now, Plaintiffs apparently claim that the Dock Board has "misread the Plaintiffs' allegations," see, Plaintiffs' Opposition at p. 5, and that the

---

[1] See, Bourgeois No. 06-5131 Memorandum in Support of Motion to Amend Complaint for Declaratory Judgment and Damages and Request for Jury Trial (Rec. Doc. 7083-2) at p. 1; Ferdinand No. 06-5132 Memorandum in Support of Motion to Amend Complaint for Declaratory Judgment and Damages and Request for Jury Trial (Rec. Doc. 7081-2) at p. 1; Christophe No. 06-5134 Memorandum in Support of Motion to Amend Complaint for Declaratory Judgment and Damages and Request for Jury Trial (Rec. Doc. 7088-2) at p. 1; Williams No. 06-5137 Memorandum in Support of Motion to Amend Complaint for Declaratory Judgment and Damages and Request for Jury Trial (Rec. Doc. 7084-2) at p. 2; Porter No. 06-5140 Memorandum in Support of Motion to Amend Complaint for Declaratory Judgment and Damages and Request for Jury Trial (Rec. Doc. 7080-2) at p. 1.

[2] See, Bourgeois No. 06-5131 (Rec. Doc. 7083-2) at p. 2; Ferdinand No. 06-5132 (Rec. Doc. 7081-2) at p. 2; Christophe No. 06-5134 (Rec. Doc. 7088-2) at p. 2; Williams No. 06-5137 (Rec. Doc. 7084-2) at p. 2; Porter No. 06-5140 (Rec. Doc. 7080-2) at p. 2.

[3] See, Bourgeois No. 06-5131 (Rec. Doc. 7083-2) at p. 2; Ferdinand No. 06-5132 (Rec. Doc. 7081-2) at p. 2; Christophe No. 06-5134 (Rec. Doc. 7088-2) at p. 2; Williams No. 06-5137 (Rec. Doc. 7084-2) at p. 2; Porter No. 06-5140 (Rec. Doc. 7080-2) at p. 2.

[4] See, Bourgeois No. 06-5131 (Rec. Doc. 7083-2) at p. 1-2; Ferdinand No. 06-5132 (Rec. Doc. 7081-2) at p. 1; Christophe No. 06-5134 (Rec. Doc. 7088-2) at p. 1-2; Williams No. 06-5137 (Rec. Doc. 7084-2) at p. 2; Porter No. 06-5140 (Rec. Doc. 7080-2) at p.1-2.

allegations contained in their various amended Complaints "have to do with the Port's contribution to the failure of the flood walls to effect containment." See, Plaintiffs' Opposition at p. 5.

To the extent that the amended allegations Plaintiffs rely upon in opposing the Dock Board's motion are found to be directed toward the Dock Board, which is specifically denied, they are based upon a legal fiction, namely, the existence of a "New Lock," and should respectfully be rejected. Moreover, and more importantly, even if a New Lock was in existence, all of these supposedly "overlooked" allegations fall into the same conclusory category as Plaintiffs' other claims. Despite Plaintiffs' characterization of their amended allegations as "replete with the facts affording notice of the claim," see, Plaintiffs' Opposition at p. 5, no facts alleged would even arguably support the strict liability claims allegedly now asserted against the Dock Board. Again, to state a cause of action against the Dock Board, Plaintiffs must allege facts which, if true, would be sufficient to establish the cause of action asserted. Conclusory allegations made by Plaintiffs here, without more, are legally insufficient to state a strict liability claim against the Dock Board for any alleged defect of the allegedly existent New Lock.

Again, to state a claim against the Dock Board on the basis now argued by Plaintiffs, facts must be alleged sufficient to show that: (1) the Dock Board had garde over the New Lock; (2) the New Lock was defective; and (3) there is a basis to find that the Dock Board had actual or constructive knowledge of such a

defect.[5] Here, Plaintiffs make absolutely no allegations which would establish that the Dock Board had garde over the allegedly existent New Lock. To the contrary, Plaintiffs allege only that the New Lock is a project authorized by Congress and within the domain and control of the United States government only. There is no allegation that the Dock Board had any ownership or control whatsoever of that allegedly existent and defective thing called the New Lock. Without ownership or control, there can be no garde, and without garde, there can be no strict liability as alleged. Given the foregoing, the amended allegations relied upon by Plaintiffs fail to state a claim against the Dock Board under La. R.S. 9:2800(C) or any other theory of liability for any alleged defect in the allegedly existent New Lock.

Next, Plaintiffs argue that the doctrine of res ipsa loquitur somehow requires the denial of the Dock Board's motion. Under Louisiana law, res ipsa loquitur may be applicable if the following conditions are established:

> (1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; (2) the defendant had exclusive control over the thing causing the injury; and (3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part.

See, Spot v. Otis Elevator Co., 601 So.2d 1355, 1362 (La. 1992). Of course, the quintessential "unusual case" giving rise to the doctrine of res ipsa loquitur is that of a barrel of flour rolling out of a warehouse window and injuring a passerby. See, Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d

---

[5] In their Opposition Memorandum, Plaintiffs mistakenly construe this last element as an affirmative defense rather than an element of recovery on which they have the burden of proof. See generally, Plaintiffs' Opposition at p. 4.

654, 665 n. 6 (La. 1989). No such unusual circumstances exist here, and Plaintiffs have alleged no basis for the application of this doctrine. First, res ipsa loquitur cannot apply unless the defendant against whom its application is sought had control over the thing allegedly causing harm. As discussed above, there is neither allegation nor evidence that the Dock Board had any control over the New Lock. Second, the allegations in Plaintiffs' Complaints do not establish that the only reasonable cause of the Plaintiffs' alleged injuries is the Dock Board's alleged negligence or breach of duty. On the contrary, Plaintiffs have sued numerous defendants in these actions and principally contend that the cause of the flooding at issue was anything but having to do with this New Lock (which does not even exist). Third, an allegation of res ipsa loquitur cannot be used as a substitute for establishing that the Dock Board had actual or constructive notice of any alleged defects as required under La. R.S. § 9:2800(C). See, Broussard v. Voorhies, 970 So.2d 1038, 1045 (La.App.1Cir. 2007)("[T]he trial court was correct in concluding that the doctrine of res ipsa loquitur was inapplicable to prove negligence in this matter, as it did not apply to establish the required proof of constructive knowledge and failure to exercise reasonable care."), writ denied, 970 So.2d 535 (La. 2007). Finally, Plaintiffs have not alleged that the Dock Board has breached any alleged duties owed to them. Accordingly, the doctrine of res ipsa loquitur does not preclude the granting of the Dock Board's motion.

The Plaintiffs next argue that the U.S. Fifth Circuit's decision in Graci v. United States, 472 F.2d 124 (5th Cir. 1973), "put the Port on notice of the defect." See, Plaintiffs' Opposition at p. 7-8. Plaintiffs do not explain what alleged

"defect" they are talking about. Moreover, the citation Plaintiffs provide is simply an opinion of the U.S. Fifth Circuit affirming the district court's denial of a motion for class certification in that action. The Dock Board fails to see how that decision has any relevance to the issue before the Court today or how such a decision could have put the Dock Board on notice of anything, especially anything relevant to the New Lock. Plaintiffs' argument on this point should respectfully be rejected.

Finally, contrary to the Plaintiffs' suggestion, the Dock Board's motion does not "invite[] revisitation of the court's Order [and] Reason[s] on garde." See, Plaintiffs' Opposition at p. 2 & n. 3. Rather, this motion seeks to continue the same goal as the Dock Board's original Rule 12(b)(6) motion filed against the Plaintiffs' equally-flawed "Acts of Assurance Claims," and that is the dismissal of the Plaintiffs' meritless claims against the Dock Board. Plaintiffs continue to make baseless allegations against the Dock Board attempting to convince this Court that the Dock Board could somehow be strictly liable for defective things over which the Dock Board had no ownership, custody or control whatsoever. For what ultimate purpose Plaintiffs do so, remains unknown. For all reasons set forth herein, the Dock Board respectfully requests dismissal of Plaintiffs Amended Complaints as legally insufficient to state a claim upon which relief can even arguably be granted.

## Conclusion

Based upon the reasons contained herein and in our original supporting memoranda, it is respectfully requested that the Dock Board's Motion for

Judgment on the Pleadings be granted and that the Plaintiffs' remaining claims against the Dock Board in the above-referenced actions be dismissed, with prejudice, each party to bear its own costs.

> Respectfully submitted,
>
> DAIGLE FISSE & KESSENICH, PLC
>
> BY: /s/ Kirk N. Aurandt
> J. FREDRICK KESSENICH (7354)
> JONATHAN H. SANDOZ (23928)
> MICHAEL W. MCMAHON (23987)
> JON A. VAN STEENIS (27122)
> KIRK N. AURANDT (25336)
> P. O. Box 5350
> Covington, Louisiana 70434-5350
> Telephone: 985/871-0800
> Facsimile: 985/871-0899
> Attorneys for Defendant, The Board of Commissioners of the Port of New Orleans

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by the Court's ECF system, this 13th day of August, 2008.

> /s/ Kirk N. Aurandt
> KIRK N. AURANDT