# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES                          CIVIL ACTION
      CONSOLIDATED LITIGATION

                                                                   NO. 05-4182

PERTAINS TO: ROAD HOME                                 SECTION "K"(2)
           Louisiana State, No. 07-5528

## ORDER AND REASONS

Before the Court is a Motion of State Farm and Casualty Company and Certain other Insurer Defendants to Disqualify Plaintiff's Private Counsel.  (Rec. Doc. 10937) ("Mot.").  The Defendants, insurance companies that insured Louisiana property owners during Hurricanes Katrina and Rita ("Defendants" or "Insurers") have sought disqualification on two grounds. First, Defendants allege that the lawyers representing the Attorney General of Louisiana ("Attorney General" or "State") and the putative class of Louisiana citizens who received reconstruction funds from the Road Home Program face a potential conflict of interest because the interests of the State and the putative class members may conflict at a future point in the litigation.  Defendants also allege that a potential conflict may arise between the State and current clients of these private attorneys who are pursuing separate insurance-related litigation. Second, Defendants assert that the contract between the Attorney General and private counsel to represent the State in this matter is invalid because the Attorney General failed to comply with Louisiana statutory requirements for the retention of private counsel by state agencies.  The Attorney General has filed his opposition to the disqualification.  This Court has reviewed the pleadings and relevant law, and for the reasons provided herein will deny the Defendants'

motion to disqualify the attorneys due to conflict of interest, but this Court will defer its decision regarding whether the Attorney General has complied with Louisiana statutes for retaining private counsel.

## I.      BACKGROUND

In the aftermath of Hurricanes Katrina and Rita, the State established the Road Home Program, a state-administered initiative that provided reconstruction funds to Louisiana citizens who suffered damage to their homes as a result of the storms.  Eligible applicants could receive as much as $150,000 from the program.  As of August 13, 2007, the Road Home Program recorded over 183,867 applications for aid.

Upon acceptance of the funds, the recipients assigned their insurance claims under any policies of casualty or property damage to the State with a right of reimbursement for all insurance proceeds.  The State allowed Road Home recipients to choose whether to pursue their insurance claims individually or permit the State to seek reimbursement.  On September 19, 2005, the State filed suit on behalf of Louisiana property owners and against all insurance companies licensed to provide property or casualty insurance policies for residences in the State of Louisiana.  Specifically, the Defendants include those insurers that provided one or more property or casualty insurance policies to recipients who sustained damages as a result of Hurricanes Katrina and Rita and have or will receive funds under the Road Home Program.  The State attempted to recover the claims due to the holders of the insurance policies that had been assigned to the State via the Road Home Program.

The Attorney General  retained seven private law firms to represent the State as putative

class representative in this litigation.  On January 29, 2008, the Defendants moved to disqualify

class counsel by alleging a conflict of interest.  The Defendants claimed that the Plaintiffs'

lawyers could not avoid a conflict of interest by representing both the State and the members of

the class.  Under the terms of the Road Home Program, the State could recover insurance funds

related to damage to the structure of the home.  However, the insured homeowner could still

recover insurance funds related to damaged items within the home.  If the insurer reaches a

settlement with the insured for the value of the damaged home and the damaged or lost objects,

the State reserves the right to void  the settlement if it believes the damage to the home was

undervalued.  Under the scenario posited by the Insurance Company Defendants, the State and

some class members will inevitably disagree about the allocation of insurance funds for damage

to structures and damage to personal items.  At that point, the Defendants allege that the

attorneys representing the State and the class in *In re Katrina Canal Breaches Litigation* will

incur an impermissible conflict of interest.

The post-hearing brief by Plaintiffs' counsel explained that the State had waived any

conflict with their private counsels' clients, and it further documented attorney-client

relationships between those lawyers and the individual insureds that they represent who are

pursuing claims for damages sustained as a result of Hurricanes Katrina and Rita[1]:

• Paul G. Aucoin does not represent any individual homeowner insureds concerning

   hurricane-related damage coverage issues.  The firm is not participating in any class

_____

[1] Post-Hearing Brief of Plaintiffs' Counsel Concerning Motion of State Farm Fire and Casualty Company and Certain Other Insurer Defendants to Disqualify Plaintiff's Private Counsel (Rec. Doc. 13252).  Plaintiffs' attorneys Gauthier, Houghtaling & Williams, LLP withdrew as counsel for the State, a motion that was granted on April 25, 2008 (Rec. Doc. 12763).  Accordingly, the Court need not consider any conflicts that may exist for that firm.

action litigation concerning hurricane coverage damages issues besides the present case.

• The Dudenhefer Law Firm, L.L.C. represents two individual homeowner insureds
concerning hurricane-related damage coverage issues.  Neither of these insureds has
received or is currently eligible to receive Road Home benefits.  The Dudenhefer Law
Firm, L.L.C. is not participating in any class action litigation concerning hurricane-
related coverage damage issues besides the present case.

• Fayard & Honeycutt, A.P.C. represents twenty individual homeowner insureds
concerning hurricane-related damage coverage issues in *Anne Kiefer, et al. v. Lexington
Ins. Co. et al.*, Civ. A. No. 06-5370, a mass action which is currently administratively
closed.  Fayard & Honeycutt, A.P.C. also represents eleven individual homeowner
insureds concerning hurricane-related damage coverage issues in individual cases.  All
thirty-one clients have executed limited scope of representation and waiver agreements,
which were reviewed by the firm's legal ethics counsel prior to their execution.  Fayard
& Honeycutt, A.P.C. is also participating in three additional class actions concerning
hurricane-related coverage damage issues besides the present case.[2]

• The McKernan Law Firm is not representing any individual homeowner insureds
concerning hurricane-related damage coverage issues.  The McKernan Law Firm is

_____

[2] Fayard & Honeycutt, A.P.C. is participating in *Chehardy v. State Farm Fire & Cas.
Co.*, Civ. A. Nos. 06-1672, 06-1673, 06-1674 (E.D. La.), and *Williams v. State Farm Fire & Cas.
Co.*, Civ. A. No. 06-2919 (E.D. La.).  The firm is also involved in *Billy Broussard v. Louisiana
Citizens Property Insurance Corp.*, No. 85726, 15th J.D.C., Vermilion Parish, a putative class
action in state court.  Those federal class actions have not yet been certified.  The main thrust of
those actions concerned the plaintiffs' claim that the breaches of the flood levees due to
Hurricane Katrina do not qualify as a "flood" within the terms of the water damage exclusion in
hurricane insurance policies.  However, the Louisiana Supreme Court has recently ruled that, as
a matter of state law, any damage caused by the breaches of the flood levees falls within the
water damage exclusion.

participating in the same class actions concerning hurricane-related coverage damage issues as Fayard & Honeycutt, A.P.C.

- Ranier, Gayle and Elliot, L.L.C. currently represents five individual homeowner insureds concerning hurricane-related damage coverage issues. None of these individual homeowner insureds has received or is currently eligible to receive Road Home benefits. Ranier, Gayle and Elliot, L.L.C. is participating in the same class actions concerning hurricane-related coverage damage issues as Fayard & Honeycutt, A.P.C.

- Domengeaux Wright Roy & Edwards L.L.C. is not representing any individual homeowner insureds concerning hurricane-related damage coverage issues. Domengeaux Wright Roy & Edwards L.L.C. is participating in the same class actions concerning hurricane-related coverage damage issues as Fayard & Honeycutt, A.P.C.

- The Murray Law Firm currently represents six insureds in cases seeking recovery for hurricane damage. That firm has submitted to this Court waivers from all six of those clients.[3]

## II. ANALYSIS

## A. Conflict of Interest

The case law concurs that "motions to disqualify attorneys are generally disfavored." *American Mortgage Sec. Funding Corp. v. First La. Fed. Sav. Bank of Lafayette*, Civ. A. No. 87-5933, 1988 WL 92026, at *2 (E.D. La. Aug. 26, 1988). "Fifth Circuit case law is not entirely

---

[3]These waivers were submitted *in camera* under claim of attorney-client privilege (Rec. Docs. 13872, 13873, 13874). A seventh client of the Murray Law Firm has already settled his claims.

clear on the proper standard of review for the grant or denial of a motion to disqualify counsel." *Federal Deposit Ins. Corp. v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1310 (5th Cir. 1995) (hereinafter "*F.D.I.C.*").[4]   However, since courts are reluctant to deprive clients of their choice of counsel, "a high standard of proof is placed upon one who seeks to disqualify counsel." *Id.*; *see also Babineaux v. Foster*, No. Civ. A. 04-1679, 2005 WL 711604, at *2 (E.D. La. Mar. 21, 2005) ("U.S. District Courts in the Fifth Circuit and the Louisiana Supreme Court have explained that the burden of proof is on the party seeking the disqualification.").  The defendant has "standing to seek disqualification even though it is not an aggrieved client because its attorneys are authorized to report any ethical violations committed in the case." *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir. 1977).

The relevant standards for ethics in this Court include "(1) the Local Rules for the Eastern District of Louisiana; (2) the American Bar Association's (ABA's) Model Rules of Professional Conduct; (3) the ABA's Model Code of Professional Responsibility; and (4) the state rules of conduct." *Babineaux*, 2005 WL 711604, at *1.  Furthermore, "the Eastern District of Louisiana has expressly adopted the State of Louisiana's Rules of Professional Conduct." *Id.* The Fifth Circuit held that "disqualification cases are governed by state and national standards adopted by the court." *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992).  In the State of Louisiana, the Louisiana Rules of Professional Conduct provide as follows:

Rule 1.7. Conflict of Interest: Current Clients

---

[4] "The *Dresser* opinion, however, discussed in a footnote what the proper standard of review would be on a direct appeal: 'On appeal, the standard of review for the grant or denial of a motion to disqualify would be for abuse of discretion.  Underlying determinations would be reversed if findings of fact are clearly erroneous, but the ethical standards applied would be carefully examined.'" *F.D.I.C.*, 50 F.3d at 1310.

(a)    Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if:

    (1)    the representation of one client will be directly adverse to another client; or

    (2)    there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b)    Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

    (1)    the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

    (2)    the representation is not prohibited by law;

    (3)    the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

    (4)    each affected client gives informed consent, confirmed in writing.

La. R. Prof'l Conduct 1.7.

Class counsel can cure potential conflicts of interest between named members of the class action by obtaining "informed consent" in writing from all affected parties.  Model Rules of Prof'l Conduct R. 1.7 (1983).  "Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of the client."  Model Rules of Prof'l Conduct R. 1.7 cmt. 18 (1983); *see* Restatement (Third) of the Law Governing Lawyers § 122 (2002) ("Informed consent requires that the client or former client have reasonably adequate information about the material risks of such representation to that client or former client.");

*F.D.I.C.*, 50 F.3d at 1314 n.13; *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 268 (5th Cir. 2001) (plaintiff waived any conflict that may have arisen with her lawyer "by her consent to the representation after full disclosure.").[5]

Here, the attorneys that represent individual Road Home claimants as well as the State have obtained such informed consent. Fayard & Honeycutt and the Murray Law Firm submitted substantially identical informed consent documents. After *in camera* review, this Court has determined that these documents indeed do provide thorough and comprehensive informed consent to any potential conflict of interest. The firm of Ranier, Gayle & Elliot does not represent any individual homeowners who are seeking Road Home benefits from the State, and consequently no conflict of interest could arise between the homeowners and the State.

As informed consent has been obtained from all named individual plaintiffs, the relevant issue becomes whether the potential conflict of interest with unnamed class members in this litigation would prohibit these attorneys from proceeding as counsel for the State. According to the Comments to the Model Rules, where a potential conflict of interest arises that could involve unnamed class members, a lawyer need not obtain informed consent from those unnamed class members. "When a lawyer represents or seeks to represent a class of plaintiffs or defendants in a class-action lawsuit, unnamed members of the class are ordinarily not considered to be clients of the lawyer for purposes of applying paragraph (a)(1) of this Rule. Thus, the lawyer does not

---

[5]Other courts have held that lawyers owe putative class members fewer duties than named class members. *Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1085 (S.D. Iowa 2007) (Court held that "class counsel owe a fiduciary duty to putative class members prior to class certification is inapplicable in the context of "opt-in" collective actions."); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245 (N.D. Cal. 2000) ("While lead counsel owes a generalized duty to unnamed class members, the existence of such a fiduciary duty does not create an inviolate attorney-client relationship with each and every member of the putative class.").

typically need to get the consent of such a person before representing a client suing the person in

an unrelated matter."  Model Rules of Prof'l Conduct R. 1.7 cmt. 25 (1983).  Moreover, the fact

that a conflict has not yet arisen suggests that disqualification is not merited in this context.

Comment 8 of Rule 1.7 of the Model Rules states that "[t]he mere possibility of subsequent harm

does not itself require disclosure and consent."  Model Rules of Prof'l Conduct R. 1.7 cmt. 8

(1983).  Yet, the law within this district requires counsel to "exercise reasonable foresight and

consider the interests of all affected clients as they are reasonably likely to manifest themselves

over the course of the representations."  *Guaranty Corp. v. Nat'l Union Fire Ins. Co. of

Pittsburgh, Pa.*, No. 90-2695, 1993 WL 165690, at *8 (E.D. La. May 10, 1993) (disqualifying

attorneys and their firms based explicitly on "possibility of" and "potential for" conflicts of

interest).

  Applying these guidelines in the context of class actions, the relevant federal case law

reveals that courts do not mechanically disqualify attorneys because of potential conflicts of

interest between unnamed class members and class counsel.  The Second Circuit advanced a

class action-specific approach to managing conflicts of interest in *In re "Agent Orange"

Product Liability Litigation*, 800 F.2d 14, 19-20 (2d Cir. 1986).  In that case, a class comprised

of Vietnam War veterans and their families sued the manufacturers of Agent Orange for the

injuries that resulted from exposure to the chemical during the soldiers' tours in the Vietnam

War.  Two attorneys who assisted in representing the class quit during the litigation.  After class

certification and the entry of final judgment approving the class settlement, these two attorneys

appeared before the court on behalf of approximately 3,000 additional class members and

appealed the settlement.  Class counsel moved to disqualify the lawyers who appealed the

settlement because they had served as representatives to the whole class at an earlier point in the litigation. *Id.* at 16-17.

Rather than disqualifying the attorneys representing the discontent members of the class, the appellate court attempted "a balancing of the interests of the various groups of class members and of the interest of the public and the court in achieving a just and expeditious resolution of the dispute." *Id.* at 19-20. The court considered "the costs to the class members of requiring that they obtain new counsel, taking into accounts such factors as the nature and value of the claim they are presenting, the ease with which they could obtain new counsel, the factual and legal complexity of the litigation, and the time that would be needed for new counsel to familiarize himself with all that has gone before." *Id.* at 19. The *In re "Agent Orange"* court concluded "that the traditional rules that have been developed in the course of attorneys' representations of the interests of clients outside of the class action context should not be mechanically applied to the problems that arise in the settlement of class action litigation," and therefore affirmed the lower court's decision to deny the disqualification of counsel. *Id.*

The Third Circuit also held that disqualification of class counsel was unwarranted in *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999), a case in which oil producers brought a class action against three oil purchasers and a refiner for violation of antitrust laws. After class certification and several months of negotiation, the opposing parties reached a settlement; however, a sizable faction within the class objected to the settlement and filed a motion to disqualify the attorneys who had originally represented the class. The objectors reasoned that since the class counsel had represented them in the initial lawsuit, those lawyers were barred from opposing them in the subsequent settlement dispute. After the district court denied their

motion to dismiss the class counsel, the settlement objectors appealed the decision. *Id.* at 584-85.

Acknowledging the difficulty class representatives would face in replacing their attorneys if they were dismissed, the appellate court applied the balancing test employed by the *In re "Agent Orange"* court and affirmed the district court's order. The *Lazy Oil* court considered "the information in the attorney's possession, the availability of the information elsewhere, the importance of this information to the disputed issues, actual prejudice that could flow from the attorney's possession of the information, the costs to class members of obtaining new counsel and the ease with which they might do so, the complexity of the litigation, and the time needed for new counsel to familiarize himself with the case." *Id.* at 590. The court found that "Class Counsel adequately represented the interests of all class members, even if some class members and some of the class representatives are unsatisfied with the results of Class Counsel's efforts." *Id.* However, the court did order a limited disqualification because of considerations specific to a class action. The lawyers with the conflict of interest were not permitted to represent the class objectors, but they were allowed to continue representing the non-objecting members of the class.

Turning to the more specific context of a pre-class certification motion to disqualify, one court has addressed this issue and determined that putative class members reduced consideration when a conflict of interest threatens to disqualify class counsel. *Sharp v. Next Entertainment, Inc.*, 78 Cal. Rptr. 3d 37 (Cal. Ct. App. 2008). In a lawsuit brought by non-union writers against reality television production companies, the defendants attempted to disqualify class counsel because the lawyers also represented the writers' labor union. The defendants alleged that the

potential conflict of interest in representing non-union writers and the writers' union required immediate disqualification of class counsel.  The court held that "obtaining consent from all absent class members prior to certification is impractical, as the names of the absent class members are most likely unknown."  *Id.* at 54.  Concerned about a chilling effect on class action lawsuits, the court reasoned, "were we to require a procedure by which each and every member of a class action lawsuit has to agree to the choice of class counsel, we would eviscerate the class action device that is designed to permit class members to sit back through the process, knowing there are safeguards for their protection."  *Id.* at 55.  The court affirmed the lower court's dismissal of the motion to disqualify class counsel.

The similarities between the *Katrina Canal Breaches Litigation* and *In re "Agent Orange"* and *Lazy Oil* suggest that dismissing class counsel for a potential conflict of interest is unwarranted.  Like the litigation in the aforementioned cases, the *Katrina Canal Breaches Litigation* encompasses a substantial plaintiff class that has yet to be identified, but could potentially number in the tens of thousands.  Finding replacement counsel capable of handling litigation of this size and complexity will significantly, if not fatally, stall the class suit.  The daunting task of replacing the State's initial seven choices for class counsel will unacceptably disfavor the "interest of the public and the court in achieving a just and expeditious resolution of the dispute." *In re "Agent Orange"*, 800 F.2d at 19-20.

The court in *Sharp* characterized the motion to disqualify counsel as "a request that we require all members of the class opt-in to the class action litigation.  However, opt-in procedures conflict with California's class action procedures and inevitably are methods that permit a class action defendant to chip away at the size of the litigation."  *Sharp*, 78 Cal. Rptr. 3d at 54.

12

Requiring the insureds that comprise the putative class in *In re Katrina Canal Breaches Litigation* to identify themselves and consent to a potential conflict of interest will impose an unnecessary burden on class counsel at this stage of the litigation.  The members of the putative class will be forced to identify themselves and become named clients much earlier in the litigation if waivers are required.

Unlike the conflicts in *In re "Agent Orange"* and *Lazy Oil,* the conflict of interest between the State and members of the putative class posited by the defendants has yet to manifest itself.  It is simply a *potential* conflict of interest.  The court must "ensure that any disqualification is linked to an actual, real conflict rather than an imaginary one."  *In re: Complaint of Cardinal Services, Inc.*, No. CIVA 001909, CIVA 00-1910, 2006 WL 2089925, at *3 (W.D. La. July 21, 2006).  Disqualification of the attorneys in the present case for a purely conjectural conflict of interest alleged on behalf of putative class members would be highly punitive in comparison.

Even though this case has not reached the settlement phase, it has already grown to a point that the State and class members would expend tremendous resources in retaining replacement counsel.  The application of the balancing test set out in *In re "Agent Orange"* and *Lazy Oil* is not limited to conflicts of interest that arise during the settlement segment of the litigation.  Furthermore the distinction between an actual and potential conflict of interest is only consequential if the putative class members are in fact clients.  Since the putative class members in *In re Katrina Canal Breaches Litigation* are non-clients for the purposes of Rule 1.7, as supported by Comment 25, the putative class members do not have to waive a potential conflict of interest in order for their attorneys to proceed.

13

**B. Validity of the Attorney General's Contract with Private Counsel**

As to Defendant Insurers' second basis for disqualification, they assert that the Attorney General's contract with private counsel violates state law on two grounds.  First, they assert that the Attorney General failed to comply with relevant statutes in appointing private counsel to represent the state.  They claim that the contracts were never submitted to or approved by the Louisiana Office of Contractual Review ("OCR"), which is required under La. Stat. Rev. § 39:1502(A).  The Attorney General also allegedly failed to comply with various other statutory and regulatory hurdles to appoint private counsel.

Second, they aver that any compensation scheme for private counsel's services is unconstitutional or illegal.  They claim that any contract for payment using public funds without legislative approval infringes on the state legislature's appropriation authority.  Moreover, even if private counsel did not receive any payment from the State, any compensation received from Insurers, putative class members or third parties would violate the Louisiana Governmental Ethics Code which prevents any public servant from receiving any kind of payment from any entity other than the government for performing his duties and responsibilities.

This Court reviewed the briefs submitted by the parties and requested additional briefing on several points:  what precautions or special procedures, if any, must be employed where the Attorney General challenges the constitutionality of a statute; whether this Court has the ability to invalidate this contract under the Eleventh Amendment; and whether Defendants have standing to challenge this contract.

With regards to the issue of compensation of the Attorney General's counsel, the Court

14

notes that settled state law suggests that any compensation of private counsel retained by the State without legislative consent is prohibited. *See Meredith v. Ieyoub*, 700 So.2d 478, 482-84 (La. 1997) (holding Attorney General has no authority to enter into contingency fee contracts with private counsel without legislative authorization).  The relevant contract in this case, however, promises no compensation to private counsel except that counsel "may receive attorneys fees and costs as permitted them by State or Federal law."  Mot., Ex. 3.  As the contract does not guarantee fees, this Court finds it unnecessary to visit this issue presently, but it will admonish the parties that it fully intends to enforce the relevant law should this issue become ripe for adjudication.[6]

The provisions under which the Defendants seek to invalidate the Attorney General's contract are as follows.  The relevant provision of La. Stat. Rev. § 39:1502(A) provides as follows:

> Notwithstanding the provisions of any other law to the contrary and specifically the provisions of any law that authorizes the state or a state agency to appoint, employ, or contract for private legal counsel to represent the state or a state agency, including but not limited to the provisions of R.S. 42:261, 262, and 263, and R.S. 40:1299.39(E), any appointment of private legal counsel to represent the state or a state agency shall be made by the attorney general with the concurrence

---

[6]The Court likewise will refrain from adjudicating the Defendants' claim that the Attorney General's contract could run afoul of La. Rev. Stat. § 42:1111, which states in relevant part:

> No public servant shall receive anything of economic value, other than compensation and benefits from the governmental entity to which he is duly entitled, for the performance of the duties and responsibilities of his office or position; . . . .

La. Rev. Stat. § 42:1111(A)(1).  Presently, the issue of compliance with statutory requirements for the appointment of counsel takes precedence over any issues regarding compensation. Should the appointment issues be resolved contrary to the Defendants, they will have leave to assert their claims regarding compensation again.

of the commissioner of administration . . . .

La. Stat. Rev. § 39:1502(A).  There is no evidence provided by the Attorney General to prove that the Commissioner of Administration indeed concurred with this appointment of legal counsel, and therefore it appears likely that the retention of private counsel in this case may have been contrary to Louisiana law.[7]  However, this Court finds that it cannot decide whether the Attorney General complied with these constitutional or statutory provisions before addressing two preliminary issues:  whether this Court has the jurisdiction to invalidate the Attorney General's contract with its private attorneys, and whether Defendants have standing to challenge this contract.

### 1.  Jurisdiction

As to this Court's jurisdiction to address the Attorney General's contract, the Attorney General contends that the validity of its contract is beyond the reproach of this Court by virtue of the Eleventh Amendment, and therefore any challenge must be brought as an action for injunctive or declaratory relief in state court.  The Defendant Insurers contend that the Attorney General, as representative of Louisiana, has waived the State's sovereign immunity in this case, and therefore this Court may consider the validity of the contract.

The Court's analysis starts with the Eleventh Amendment to the United States

---

[7]The Court's concern regarding constitutionality arose because the Attorney General argued in briefing that he has the constitutional authority to appoint counsel, and that no state law can abridge that power.  It appeared that a relevant issue may arise regarding what precautions must be taken where the Louisiana Attorney General is challenging the constitutionality of a statute instead of defending the validity of that statute.  This concern prompted the Court to request briefing on this issue, see *supra*.  However, this Court finds it unnecessary to address this issue because the constitutionality of any state statute was not properly presented for consideration before this Court by the Attorney General.

Constitution, which states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XXI.  The Supreme Court has explained that the Eleventh Amendment "stand[s] not so much for what it says, but for the presupposition of our constitutional structure which it confirms: that the States entered the federal system with their sovereignty intact; that the judicial authority in Article III is limited by this sovereignty, . . . and that a State will therefore not be subject to suit in federal court unless it has consented to suit, either expressly or in the 'plan of the convention.'"  *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779, 111 S.Ct. 2578, 2581, 115 L.Ed.2d 686 (1991) (internal citations omitted).  Thus, barring consent by the State to litigate this issue, it would be contrary to the "constitutional structure" for this Court to pass judgment on the validity of a contract between the Louisiana Attorney General and private attorneys to represent the State.

*O'Connor v. Jones*, 946 F.2d 1395 (8th Cir. 1991) appears to be the only case in a federal court considered its ability to void a state attorney general's contract with private counsel.  The plaintiff, a state prisoner petitioning for relief under 42 U.S.C. § 1983, sought to disqualify opposing private counsel appearing on behalf of Missouri.  The district court had granted the motion, invalidating the Missouri Attorney General's contract with private attorneys on the basis that the Attorney General had contracted with numerous civil rights firms, precluding the court from appointing the plaintiff counsel under 28 U.S.C. § 1915(d) and therefore violating the Supremacy Clause of the U.S. Constitution.  *Id.* at 1398.  The Eighth Circuit reversed on several grounds, noting that "it is by no means clear" that a violation of state law occurred.

Significantly, the *O'Connor* court held:

> The District Court entered forbidden territory when it held that the Missouri
> Attorney General violates Missouri law when he contracts with private law firms
> to engage their attorneys' services as "special assistant attorneys general."  This
> holding runs afoul of the Eleventh Amendment, as declared by the United States
> Supreme Court in *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104
> S.Ct. 900, 79 L.Ed.2d 67 (1984).  The *Pennhurst* Court "concluded . . . that a
> claim that state officials violated state law in carrying out their official
> responsibilities is a claim against the State that is protected by the Eleventh
> Amendment," even if the state claim is in federal court under pendent jurisdiction.
> *Id.* at 121, 104 S.Ct. at 919.  "[I]t is difficult to think of a greater intrusion on state
> sovereignty than when a federal court instructs state officials on how to conform
> their conduct to state law."  *Id.* at 106, 104 S.Ct. at 911.

*Id.* at 1397-98.

Despite *O'Connor*, the history of the litigation in this case requires a different result.  The
present action was originally filed by Louisiana in state court, but was removed by Defendants to
this Court.  In ruling upon the State's subsequent motion to remand, this Court found that the
State had consented to federal jurisdiction under the Class Action Fairness Act ("CAFA") by
filing this class action in the role of a class representative.  The Fifth Circuit affirmed,
"ultimately conclud[ing] that any immunity from removal to federal court was waived by the
addition of the class of private citizens in the amended complaint, and relatedly that immunity of
the State from removal to federal court does not extend to the members of the class."  *In re
Katrina Canal Breaches Litig.*, 524 F.3d 700, 707 (5th Cir. 2008).  Admittedly, the appellate
court chose to base its holding on the premise that a State "cannot pull [its] citizens under a
claimed umbrella" of sovereign immunity, instead of the broader holding that any suit
commenced by a state as plaintiff does not implicate Eleventh Amendment immunity.  *Id.* at 711.
Nevertheless, the Fifth Circuit's decision is based on the fundamental premise that Louisiana
consented to federal jurisdiction through its affirmative act of filing this class action.  This Court,

bound by the law-of-the-case doctrine, certainly is unable to revisit the issue of consent. *See Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of America*, 272 F.3d 276, 279 (5th Cir. 2001) ("The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal.") (citation omitted).

Based on the Fifth Circuit's opinion in this matter finding jurisdiction under CAFA, this Court finds that it has jurisdiction to decide the validity of the Attorney General's contract. *O'Connor* certainly appears correctly decided based upon the facts presented in that case. However, *O'Connor* involved a § 1983 claim against Missouri's officials, a suit that is premised upon Congress' abrogation of state immunity via the Fourteenth Amendment. *See Black v. North Panola School Dist.*, 461 F.3d 584, 593 (5th Cir. 2006) ("[U]nder § 5 of the Fourteenth Amendment, states cannot prohibit individuals from bringing private suits in state court under § 1983. When Congress enacts appropriate legislation, such as § 1983, pursuant to its enforcement power under § 5, it may properly assert authority over the States that is otherwise unauthorized by the Constitution."). Here the Louisiana Attorney General's consent to suit through joining individual plaintiffs has subjected the State to this Court's jurisdiction over this action and all matters pendent upon it. This voluntary consent contrasts the present case from *O'Connor*, and leads this Court to the conclusion that it has jurisdiction to decide the validity of the Attorney General's contract based upon the authority of the Fifth Circuit in this same litigation.

### 2. Standing

With regards to the issue of standing, however, this Court finds that Defendant Insurers

cannot establish adequate standing here.  As explained by the Supreme Court, "[O]ur standing jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12, 124 S.Ct. 2301, 2308, 159 L.Ed.2d 98 (2004) (internal citations omitted).  "[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'"   *Davis v. Federal Election Comm'n*, --- U.S. ----, 28 S.Ct. 2759, 2768 (2008) (citations omitted).  To establish Article III standing, "a claimant must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and likely to be redressed by a favorable ruling."  *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).  In explaining the prudential facet of the federal standing requirement, the Court has stated:

> Although we have not exhaustively defined the prudential dimensions of the standing doctrine, we have explained that prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."

*Newdow*, 542 U.S. at 12, 124 S.Ct. at 2309, *quoting Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed. 556 (1984); *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979), *quoting Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) (noting that prudential considerations include, "[f]or example, a litigant normally must assert an injury that is peculiar to himself or to a distinct group of which he is a part, rather than one 'shared in substantivally equal measure by all or a large class of citizens.'").

Here, the Insurers cannot establish either Article III standing or prudential standing.  It would appear that the Insurers are suffering the injury here because these allegedly improperly retained private counsel are suing them on behalf of the Attorney General.  However, even if this Court were to invalidate the contract, the Insurers would not necessarily be relieved from suit because the Attorney General would still be a viable plaintiff.  Indeed, any adverse ruling by this Court would simply prompt the Attorney General to either properly hire these private attorneys, or carry out the litigation through his own appointed assistants.[8]  The parties that actually would potentially suffer injury would be those putative class members whose interests are being advocated by the Attorney General as putative class representative.  The most particularized injury, however, would likely be suffered by the Louisiana Commissioner of Administration, whose authority has been allegedly infringed upon by the Attorney General.  The Defendant Insurers have no standing to assert the injury inflicted upon class members or within the branches of state government, particularly where those who have suffered actual injury are capable of asserting their own rights.  *See Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992) (denying standing on prudential grounds for claim seeking to invalidate California tax law on grounds that it limited the right to travel where petitioner did not identify "any obstacle preventing others who wish to travel or settle in California from asserting claims on their own behalf").  Consequently, this Court is bound to hold that the Defendant

---

[8]*See Lujan*, 504 U.S. at 568, 112 S.Ct. at 2140 (holding claim lacked redressability because a declaratory judgment against the Secretary would not resolve plaintiffs' suit "unless the funding agencies were bound by the Secretary's regulation, which is very much an open question"); *Bates v. Rumsfeld*, 271 F. Supp. 2d 54, 63 (D.D.C. 2002) (finding plaintiffs' suit lacked redressability where relief sought, namely a declaratory judgment finding Secretary of Defense acted illegally in ordering plaintiff soldiers to receive experimental anthrax vaccine, would not redress the plaintiffs' harm of having suffered a military court martial).

Insurers lack federal standing.

Defendant Insurers rely on *Meredith v. Ieyoub*, 700 So.2d 478 (La. 1997), in which the Louisiana Supreme Court permitted an opposing party to challenge a similar retention contract between the Attorney General and private counsel.  The Louisiana high court found that the defendants had standing based upon "a mere showing of an interest, however small and indeterminable," namely the danger of having lawsuits brought against them by private counsel, instead of the general standard for standing in Louisiana of a "special or particular interest which is distinct from the public at large."  *Id.* at 480 (citing *League of Women Voters v. City of New Orleans*, 381 So.2d 441 (La. 1980)) (using "mere showing of an interest" standard instead of general Louisiana standing requirement of a "special or particular interest which is distinct from the public at large.").  Defendants cannot rely on state law to establish federal standing, however. Standing has both constitutional and statutory dimensions, and while state law is generally used to determine *statutory* standing in diversity cases, constitutional standing is always premised upon Article III of the U.S. Constitution.  *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) ("Where, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action."); *Lee v. American Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) ("[A] plaintiff whose cause of action is perfectly viable under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury.).  Statutory standing likely would be based on substantive state law considering that CAFA is codified within the diversity jurisdiction statute, 28 U.S.C. § 1332.  *See Palma v. Verex Assurance, Inc.*, 79 F.3d 1453, 1456

22

(5th Cir. 1996) (applying Texas law to determine statutory standing to challenge wrongful foreclosure claim based on diversity jurisdiction).  However, regardless of Defendants' success in establishing statutory standing, they cannot succeed with their claim in this Court because they cannot sufficiently assert federal standing.

This Court finds that the most prudent course, however, is not to ignore this issue of whether the attorneys before this Court have been properly hired.  As the Insurers have persuasively demonstrated, there is some question as to whether the attorneys before the Court have been properly retained by the Attorney General.  While Defendant Insurers may not have standing to challenge the Attorney General's contract with private counsel, the Louisiana Commissioner of Administration certainly does considering that official has the power to approve any appointment of private counsel by the Attorney General.  La. Stat. Rev. § 39:1502(A) ("Notwithstanding the provisions of any other law to the contrary . . . any appointment of private legal counsel to represent the state or a state agency shall be made by the attorney general with the concurrence of the commissioner of administration . . . .").  In order to resolve this issue, the Court will order that the Attorney General serve upon the Louisiana Commissioner of Administration a copy of this opinion and order.  The Attorney General will notify this Court of when service was made, whereupon the Commissioner of Administration will have forty-five days to notify this Court of his concurrence with the Attorney General's appointments of private counsel.  Should the Commissioner notify this Court of his disapproval, or make no notification whatsoever, this Court will disqualify the State's private counsel under § 39:1502(A).  The Court finds this measure appropriate to ensure the expeditious and orderly

conduct of this trial while protecting the interests of unnamed class members.[9]  *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997) ("The federal courts are vested with the inherent power 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'") (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630, 82 S.Ct. 1386, 1388, 1389, 8 L.Ed.2d 734 (1962)).

## III.  CONCLUSION

For the reasons provided herein, accordingly

**IT IS ORDERED** that the Defendant Insurers' Motion to Disqualify Counsel is **DENIED IN PART AND DEFERRED IN PART.**  Defendants' motion is denied on the basis of a conflict of interest, and it is deferred with regards to the Attorney General's compliance with state law; and

**IT IS FURTHER ORDERED** that the Louisiana Attorney General is ordered to serve this Order upon the Louisiana Commissioner of Administration as soon as is practicable, and that he notify this Court when service is effectuated; and

---

[9]The Court is aware that the standing issue could be more easily resolved by ordering the Commissioner of Administration to appear as an intervenor.  However, doing so could open the Commissioner to counterclaims that would only further entangle this Court in Eleventh Amendment concerns.  In attempting to navigate the Scylla of ignoring the possible illegality of the Attorney General's contracts and the Charybdis of forcing a state constitutional issue into the maelstrom, and relying on the Fifth Circuit's trust in this Court management of this litigation, this Court deems this resolution a limber and appropriate one for these circumstances.  *See In re Katrina Canal Breaches Consol. Litig.*, 524 F.3d 700, 712 (5th Cir. 2008) (reaffirming "settled power of the district courts" in case administration and remanding litigation because this Court "is the able manager of this complex litigation and we will not extend these appellate hands into that endeavor").

**IT IS FURTHER ORDERED** that the Louisiana Commissioner of Administration has forty-five (45) days to inform this Court of his concurrence or lack thereof regarding the Attorney General's appointment of private counsel.  Should the Commissioner not communicate his concurrence with the Court, the Court will determine that the Commissioner does not concur with the appointment of private counsel; and

**IT IS FURTHER ORDERED** that this case (Civ. A. No. 07-5528) be **STAYED** pending resolution of this motion.

New Orleans, Louisiana, this ____13th____ day of August, 2008.

_____
        **STANWOOD R. DUVAL, JR.**
     **UNITED STATES DISTRICT JUDGE**

25