UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO:<br>*ALL CASES* | SECTION "K"(2) |

## ORDER AND REASONS

Before the Court is a Motion for Recusal (Doc. 14387) filed by Ashton O'Dwyer, Jr. on August 11, 2008. On February 22, 2008, this Court entered an order requiring Mr. O'Dwyer to inform his clients of certain rulings of the Court. (Doc. 11357). Mr. O'Dwyer refused to do so. On April 21, 2008, the Court then found Mr. O'Dwyer in contempt of court and ordered him again to inform his clients of the February 22, 2008 order as well as that second order (Doc. 12552); the Court sanctioned Mr. O'Dwyer in that second order instructing the Clerk of Court not to accept any filing in the *In re Katrina* litigation by Mr. O'Dwyer until Mr. O'Dwyer came into compliance with both orders. On June 13, 2008, in response to his continued failure to comply with the orders of this Court and his contumacious conduct, the Court stayed and statistically closed all of the cases in which Mr. O'Dwyer appears in the *In re Katrina Canal Breaches Consolidated Litigation,* C.A. No. 05-4182. As Mr. O'Dwyer remains in contempt of Court and has no standing in *In re Katrina Canal Breaches Consolidated Litigation,* C.A. No. 05-4182,

**IT IS ORDERED** that this Motion for Recusal is **STRICKEN.**

Nonetheless, for completeness of the record, the Court will make the following observations.

In a hearing on another Motion for Disqualification filed by Camillo Salas and Daniel Becnel,[1] the Court responded to an observation made in Mr. Salas' reply brief concerning the appearance of Salley, Hite, Rivera and & Mercer, LLC, in the *In re Katrina Canal Breaches Consolidated Litigation*, C.A. No. 05-4182.  Based on a statement made by the undersigned in open court, without further investigation, Mr. O'Dwyer filed this motion.  Once again, Mr. O'Dwyer has caused this Court to waste its precious time and resources in responding to his vexatious pleadings.

This Court has undertaken the daunting task of attempting to manage for pre-trial purposes over 1350 suits with hundreds of thousands of individual plaintiffs, and thousands of defendants.  This umbrella was the creation of the Executive Committee of the Eastern District of Louisiana and was an attempt to streamline and coordinate for the convenience of the litigants all litigation in which the levee and floodwall failures were at issue.  This consolidation has resulted in subcategories within the umbrella concerning Insurance, Levee, MRGO, Barge, Responder, St. Rita's Nursing Home, and Dredging.  Another consolidated action was also spawned from these cases as a result of the inability of the docketing system to incorporate it by virtue of the volume of claimants into the *In re Katrina Canal Breaches Consolidated Cases* docket sheet–that case being the one in which Messrs. Salas and Becnel filed their motion–*In re Katrina Dredging Limitation Actions*, C.A. No. 06-8676.

This consolidation is akin to and has been managed as one would manage multi-district litigation.  The consolidation of all of these suits was not and is not for purposes of a single trial;

---

[1] The Motion to Disqualify filed by Messrs. Salas and Becnel and the multiple motions to disqualify or recuse filed by Mr. O'Dwyer were made long after the *In re Katrina* umbrella was established and only after adverse rulings were made against them.

rather, it was an attempt to coordinate the discovery that would be required for the adjudication of cases wherein the causes of the levee breaches would be central to the issues for trial.

On August 25, 2006, Jim Hall filed *Aaron v. AIG Centennial Ins. Co., et al.*, C.A. No. 06-4746. The case was initially assigned to Judge Sarah Vance and was transferred into the umbrella on November 13, 2006, consistent with the practices of the Court concerning the transfer of all cases involving the Water Exclusion clause in plaintiffs' respective homeowner's insurance policies. (Doc. 98 in C.a. No. 06-4746).[2]  There were 1430 individual plaintiffs in the suit suing approximately 108 insurance defendants.  On August 28, 2006, another mass joinder suit was filed, *Connie Abadie, et al v. Aegis Sec. Ins. Co., et al*, C.A. No. 06-5164.  This case had 4,600 plaintiffs and approximately 153 insurance defendants.

Both of these suits were filed on the eve of the anniversary date of Hurricane Katrina without which all of these claims would have potentially prescribed and these suits were attempts by local attorneys to deal with the catastrophic devastation caused by Hurricane Katrina.[3]  The *Abadie* case was apparently directly allotted to this court and consolidated on September 6, 2006 into C.A. No. 05-4182.

On October 13, 2006, Maria Rabieh filed a Motion for Extension of Time to Answer in *Abadie*  for American Bankers Insurance Company of Florida, American Security Insurance Company, Standard Guaranty Insurance Company and Voyager Indemnity Company and/or

---

[2]This transfer was one among 19 from Judge Vance.  Simultaneously, all of these suits were

[3]From August 22-29, 2006, 1010 new cases approximately  were filed.  The Court was receiving approximately 200 complaints a day. The paper work for the Court's Case Manager and Docket Clerk was overwhelming and frankly made processing information of conflicts quite difficult.

Voyager Insurance Company. This order was not signed by the undersigned, but by Judge Carl Barbier as I was out of town. Thus, I had no knowledge of her enrollment. Maria Rabieh was a partner in the firm of Salley, Hite, River & Mercer, L.L.C. Six months before, on March 6, 2006, the undersigned's daughter married Edward Rivera, who was a partner in the firm of Salley, Hite, River & Mercer, L.L.C. which created a relationship within the third degree and which had the Court had knowledge thereof, it would have immediately severed these insurers from these cases or transferred these cases from the umbrella.

On November 26, 2006, this Court issued its opinion finding the Water Damage Exclusion in the *Chehardy* cases to be ambiguous and finding coverage for flooding under the homeowner policies involved. This decision was certified for appeal, and a briefing schedule for Rule 12 motions which centered on issues within the Levee sub-category was established. (Doc. 2034 in C.A. No. 05-4182). This motion practice had nothing to do with any insurance matters. On January 2, 2007, the Court set a Motion to Administratively Close the *Abadie* and *Aaron* matters for January 24, 2007. (Doc. 2471 in C.A. No. 05-4182). It was recognized that the cases were misjoined; however, it was determined that the parties would work toward settlements on the individual claims that were imbedded there. For that reason, at the hearing it was agreed among all counsel except for State Farm Fire and Casualty Company that it would be best to administratively close both of these cases as well as a third mass joinder case, *Keifer*, C.A. No. 06-5370. The parties were given time to prepare the proper documents.

On or about February 1, 2007, the Court learned of the fact that Maria Rabieh was acting as counsel for the above-named insurers. As these cases were to be administratively closed and with the knowledge that if they were ever to be re-opened, the individual plaintiffs and the

4

respective insurers were to be severed and randomly reallotted throughout the Courthouse, the need to sever the insurers represented by Ms. Rabieh from the umbrella was questionable. Splitting those cases up and/or severing it totally out of the umbrella would have worked a hardship on both plaintiffs and defendants named therein. Indeed, these cases have been the subject of on-going settlement negotiations as a result of the parties involved and this Court's efforts through the dedicated work of Magistrate Judge Jay Wilkinson, thousands of insurance claims have been settled.

Furthermore, shortly after learning of Ms. Rabieh's involvement in theses two cases, and before the Court could sever the cases, the Court also learned that the subject insurers only wrote lender placed policies and did not write any homeowner's insurance policies in Louisiana during the relevant time period and that they did not act as a servicer for any other homeowner's insurance writer in Louisiana during the relevant period. As such, plaintiffs' counsel informed the Court that these insurers had been erroneously named in these two lawsuits and that motions to dismiss these insurers were to be filed forthwith.

Indeed, an Insurance Master Consolidated Class Action Complaint was filed on March 15, 2007, which included the *Abadie* case. None of the subject insurers were named except American Bankers Insurance Company of Florida.[4] On March 16, 2007, a motion to dismiss these erroneously joined defendants which motion included American Bankers Insurance Company of Florida was filed (Doc. 3429) and granted on March 22, 2007. (Doc. 3513).[5]

---

[4] The Court was informed by counsel for plaintiffs that this inclusion was a clerical error.

[5] It appears that there was no specific dismissal of American Reliable Insurance Co. from the underlying C.A. No. 06-5164; however, there is no question that it was the intention of plaintiffs to dismiss this party in light of their having failed to name them in the Insurance

On March 22, 2007, a Motion to Dismiss American Bankers Insurance Company of Florida, American Security Insurance Company, and Standard Guaranty Insurance Company in the *Aaron* matter was filed (Doc. 3493) and granted on March 22, 2007 (Doc. 3514) and on April 11, 2007, a motion to dismiss American Reliable Insurance Company (Doc. 3717) was filed and granted on April 16, 2007. (Doc. 3761). Thus, all subject insurers were dismissed from the *Aaron* matter.

On March 27, 2007, the Court issued its order administratively closing all mass joinder cases (Doc. 3573), and all parties that were erroneously named were dismissed.

On July 15, 2007, Edward Rivera left the firm partnership ending any possible need for recusal with respect to the Salley, Hite firm. His payout was a liquidated lump sum amount payable in five monthly installments the first being paid on August 1, 2007 and the final installment paid on or about December 1, 2007. The liquidated lump sum amount the Firm agreed to pay Mr. Rivera was in no way dependent upon, or in any way connected to, the Firm's billings and/or collections. (C.A. No. 06-8676, Doc. 204, Exhibit "A"). Two other payments were forthcoming, both of which were solely related to contingency fee cases which had no connection to any insurance matters handled by the firm.

Now, Mr. O'Dwyer for reasons that this Court sees as verging on harassment filed the subject motion (1) over a year after Mr. Rivera left the subject firm, (2) all insurers that created the conflict were erroneously named in those cases and have been dismissed therein except as noted in Footnote 4, and (3) both cases involved remain administratively closed. He filed this

---

Master Consolidated Class Action Complaint (Doc. 3413). Furthermore, counsel for plaintiffs have verified this fact.

matter in *In re Katrina Canal Breaches Consolidated Canal Breaches Litigation* opining that the Court should have recused itself out of the entirety of the umbrella.

The relevant statute upon which Mr. O'Dwyer filed this motion is 28 U.S.C. § 455(b)(5)(iii) which provides that a judge:

> ...shall disqualify himself in the following circumstances:
>
> (5) He or his spouse, or a person with the third degree of relationship to either of them, or the spouse of such a person:
>
> > (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding.

Certainly based on the above narrative, there is no demonstration that Edward Rivera had an interest that could have been substantially affected by the outcome of the proceeding. That reality is underscored by the fact that these two cases were :

> (1) ordered to be statistically closed as agreed to by the parties in January prior to the Court's knowledge of the Salley, Hite firms' involvement and were closed on March 27, 2007 with the filing of the appropriate documents;
>
> (2) were never to be litigated in this section of Court but were consolidated here solely for pre-trial purposes;
>
> (3) remained under the umbrella so that the litigants could use the Court to aid in the resolution of insurance claims; and
>
> (4) were never to remain as mass joined cases or tried by this Court, but are to be severed and reallotted should the claims made therein were not resolved;[6] and
>
> (5) that the Salley, Hite insurer clients had been erroneously named as defendants in these two suits.

---

[6]It should be noted that in the *Abadie* matter, nearly 4000 of those claims have been resolved.

Moreover, if the Court had determined disqualification from the insurance sub-category was appropriate, such disqualification would have no effect on the remaining categories which involve Mr. O'Dwyer's numerous lawsuits.  In addition, the hardship that severance would have wreaked on the litigants combined with the fact that the cases were to be administratively closed, the subject insurers had been erroneously named,  the consolidation was solely for pre-trial purposes and no litigation of any matter was to be  had was the reason the Court did not do so.

In addition, the Court notes that the subject motion is grossly late.[7]  Any possible "conflict" was resolved more than a year ago and has no bearing on any litigation in which Mr. O'Dwyer appears.  Likewise, he has no standing to make such a motion.  The Court finds this motion to have been filed solely to harass the Court and is just one more antic to recite in reasons for Mr. O'Dwyer's need to be disciplined.  Mr. O'Dwyer's footnotes such as "Duval and his Staff know the true facts" are insulting and do not meet the standards required of an attorney and demonstrates his continuing flouting of the standards of conduct required of a professional.

New Orleans, Louisiana, this   14th   day of August, 2008.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE

---

[7] The Court notes that the purpose of the Insurance sub-category involved litigation over the "Water Damage Exclusion" which has since been resolved by rulings of the United States Court of Appeals for the Fifth Circuit and the Louisiana Supreme Court.  The continued existence of this sub-category is done at the request of liaison counsel in order to attempt the orderly resolution by settlement of as many outstanding claims as possible prior to these matters being reallotted.