UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * | CIVIL ACTION NO. 05-4182 |
| | * | SECTION "K" MAG. (2) |
| PERTAINS TO: BARGE | * | JUDGE STANWOOD R. DUVAL, JR. |
| | * | MAG. JOSEPH C. WILKINSON, JR. |

| | | |
|---|---|---|
| *Boutte v. LaFarge* | 05-5531 | |
| *Mumford v. Ingram* | 05-5724 | * |
| *Lagarde v. LaFarge* | 06-5342 | |
| *Perry v. Ingram* | 06-6299 | * |
| *Benoit v. LaFarge* | 06-7516 | |
| *Parfait Family v. USA* | 07-3500 | * |
| *LaFarge v. USA* | 07-5178 | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**NEW YORK MARINE AND GENERAL INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, AND THE NORTHERN ASSURANCE COMPANY OF AMERICA'S AMENDED ANSWER, AFFIRMATIVE DEFENSES AND CROSS-CLAIMS AGAINST LAFARGE NORTH AMERICA, INC. AND AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION & INDEMNITY ASSOCIATION**

NOW INTO COURT, through undersigned counsel, come defendant New York Marine and General Insurance Company ("NYMAGIC"), American Home Assurance Company ("AHAC") and The Northern Assurance Company of America's ("NACA") (hereinafter,

collectively referred to as "EXCESS INSURERS") and submit the following Amended Answer together with Affirmative Defenses and Cross-Claims against defendants American Steamship Owners Mutual Protection & Indemnity Association, Inc. (the "AMERICAN CLUB") and Lafarge North America, Inc. ("LAFARGE"), upon information and belief as follows:

### FIRST DEFENSE

The Third-Party Complaint and First through Seventh Supplemental Complaints fail to state a claim, right, or cause of action against defendants upon which relief may be granted.

### SECOND DEFENSE

Third-Party Plaintiffs are not the real parties in interest, and thus are not entitled to maintain this action.

### THIRD DEFENSE

Defendants owed no duty to Third-Party Plaintiffs.

### FOURTH DEFENSE

Defendants submit that, if Third-Party Plaintiffs sustained any damages as alleged, which is specifically denied, such damages were solely caused, or were contributed to, by Third-Party Plaintiffs' own negligence or fault, which is hereby pled in bar and/or diminution of recovery herein.

### FIFTH DEFENSE

Alternatively, defendants submit that, if Third-Party Plaintiffs sustained any damages as alleged, which is specifically denied, such damages were solely, caused, or were at least contributed to, by the negligence, fault, failure to perform their duties and/or inattention to duty

2

of third parties over whom defendants had no control and for whose actions or inactions defendants are in no way responsible or liable.

## SIXTH DEFENSE

Alternatively, defendants submit that, if Third-Party Plaintiffs sustained any damages as alleged, which is specifically denied, such damages were solely caused, or at a minimum were contributed to, by the defective design, improper construction, and lack of inspection and maintenance of the Inner Harbor Navigation Canal ("IHNC" or "Industrial Canal") floodwalls, as well as the levees and flood walls to the east and north associated with the Mississippi River Gulf Outlet Canal ("MRGO"), Gulf Intracoastal Waterway ("GICW"), Bayou Bienvenue, and related structures, for which defendants are in no way responsible or liable.

## SEVENTH DEFENSE

Alternatively, in the event that Third-Party Plaintiffs sustained any damages as alleged, which is specifically denied, then such damages were proximately caused by Hurricane Katrina, a catastrophic hurricane with an unprecedented storm surge and therefore a *force majeure* event.

## EIGHTH DEFENSE

Alternatively, in the event that Third-Party Plaintiffs sustained any damages as alleged, which is specifically denied, then such damages were the result of an Act of God and/or inevitable accident.

## NINTH DEFENSE

Defendants specifically aver that Barge ING 4727 did not cause any breach in the IHNC levee or flood wall and that Barge ING 4727 was not the proximate cause or cause-in-fact of any

damages or injuries alleged by Third-Party Plaintiffs.   Rather, the flood wall was overtopped ultimately resulting in the failure of the flood wall in two places.

## TENTH DEFENSE

Alternatively, in the event that Third-Party Plaintiffs sustained any damages as alleged, which is specifically denied, then Third-Party Plaintiffs are put on full proof of their damages, as well as the fairness and reasonableness of the steps, if any, taken to remedy, mitigate, or minimize their damages.

## ELEVENTH DEFENSE

Defendants deny that Third-Party Plaintiffs' claims may be certified for class treatment under Rule 23 of the Federal Rules of Civil Procedure.

## TWELFTH DEFENSE

Defendants deny that the "Parfait Family" may be a proper party plaintiff, as a "family" is not a juridical person and therefore lacks procedural capacity under Louisiana law.

## THIRTEENTH DEFENSE

Defendants aver that Plaintiffs' claims for punitive damages are not recoverable under the applicable law.

## FOURTEENTH DEFENSE

Defendants aver that at the time of the subject incident certain insurance policies were issued to Lafarge North America, Inc., and defendants specifically refer to the terms, conditions, limitations, and exclusions contained in said insurance policies as if copied *in extenso*.

**FIFTEENTH DEFENSE**

Alternatively, defendants aver that if any party is entitled to recover against them which is specifically denied, then the defendants claim the benefit of limitation of liability as provided for in 46 U.S.C. § 181 et seq. (and all laws supplementary and amendatory thereto).

**SIXTEENTH DEFENSE**

Defendants adopt and reiterate all defenses raised by Lafarge North America, Inc.

**SEVENTEENTH DEFENSE**

In the further alternative, without waiving any other defenses, and for its answer to each individual allegation of the Third-Party Complaint and First through Seventh Supplemental and Amended Claims and Third-Party Complaint (hereinafter "Third-Party Complaint"), defendants aver as follows:

I.

The allegations contained in Paragraph I of the Third-Party Complaint require no response of defendants; however, to the extent that a response is required, defendants deny the allegations for lack of sufficient information upon which to justify a belief therein.

II.

The allegations contained in Paragraph II of the Third-Party Complaint are denied for lack of sufficient information to justify belief therein.

III.

The allegations contained in Paragraph III of Third-Party Complaint state legal conclusions to which no response is required; however, to the extent that a response is required,

defendants admit that subject matter jurisdiction exists on grounds other then diversity of citizenship and otherwise deny the allegations of that paragraph.

IV.

The allegations contained in Paragraph IV of the Third-Party Complaint are denied for lack of sufficient information to justify belief therein.  At some point while or shortly after Hurricane Katrina passed through the Greater New Orleans metropolitan area on August 29, 2005, the barge ING 4727 broke free from its moorings on the Industrial Canal and was drawn through a pre-existing breach in the flood wall.  Flooding of the adjacent neighborhoods occurred due to the multiple failures of the MRGO levees, GICW levees, and the IHNC flood wall, none of which was occasioned or caused by the barge ING 4727.

V.

Defendants deny the allegations of Paragraph V of the Third-Party Complaint, except to admit that, to the extent that human factors played any part in causing the alleged damages, such damages were caused by the defective design, improper construction, and lack of inspection and maintenance of MRGO levees, GICW levees, the IHNC flood wall, and related structures, by the U.S. Army Corps of Engineers, New Orleans Levee District, Lake Borgne Levee District, the Board of Commissioners of the Port of New Orleans, the Sewerage & Water Board of New Orleans, and the Louisiana Department of Transportation and Development as well as other parties that the evidence may disclose.

VI.

The allegations contained in Paragraph VI are denied.

VII.

The allegations of Paragraph VII of the Third-Party Complaint state legal conclusions to which no response is required; however, to the extent that a response is required, defendants deny the allegations of that paragraph.  In further answer to the allegations of Paragraph VII, defendants submit that Third-Party Plaintiffs' damages, if any, were caused in whole or in part by an Act *of God ,force majeure* and/or inevitable accident, for which defendants have no responsibility or liability.

VIII.

Defendants deny Third-Party Plaintiffs' request for trial by jury and for an advisory jury.

IX.

Defendants deny Third-Party Plaintiffs' prayer for relief in both the Third-Party Complaint and in the First through Seventh Supplemental and Amended Third-Party Complaints.

X.

Defendants reserve the right to file supplemental answers and/or defenses, as well as cross-claims and third-party claims, depending on the facts as they may be revealed.

XI.

Defendants further reserve the right to invoke the benefits and protections of the Limitation of Shipowners' Liability Act, 46 U.S.C. § 181 *et seq.*

## CROSS-CLAIMS AGAINST DEFENDANTS
## THE AMERICAN CLUB AND LAFARGE

1.       The matter in controversy relates to the demands by defendant LAFARGE under separate primary liability insurance coverages issued by NYMAGIC and the defendant

AMERICAN CLUB, and an excess liability policy issued on a subscription basis by AHAC, NACA and NYMAGIC, for defense costs and indemnification against potential liability in respect of claims arising from the breakaway of a barge that was at defendant LAFARGE'S New Orleans, Louisiana facility during Hurricane Katrina in August, 2005 ("Katrina Claims").

2.     In the several third-party lawsuits pending against defendant LAFARGE for Katrina Claims, it is alleged that the barge, called the Barge ING 4727, struck and caused or contributed to the collapse of the 17th Street Industrial Canal floodwall causing massive flooding in the City of New Orleans.

3.     By their cross-claims, NACA, AHAC and NYMAGIC seek 1) a declaration that coverage for defense costs and indemnity exists under defendant LAFARGE'S entry in the defendant AMERICAN CLUB and 2) a declaration that NACA, AHAC and NYMAGIC are not obligated to pay the defense costs and/or to indemnify defendant LAFARGE until all limits under primary policies have been exhausted up to their full respective limits.

## JURISDICTION

4.     The following issues constitute questions of insurance coverage under Admiralty or Maritime contracts of insurance and thereby come within the Admiralty and Maritime jurisdiction of the United States District Court pursuant to Title 28 U.S.C. § 1333 *et seq.*, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

5.     An actual controversy of a justiciable nature exists between the parties involving the rights and obligations under these several marine contracts of insurance and depending on the construction of said contracts, the aforesaid controversy can be determined by a judgment of this Court without further suit. *See* 28 U.S.C. § 2201.

## PARTIES

6.    At all times relevant, NACA was and is a corporation duly organized and existing under and by virtue of the laws of the State of Massachusetts, with a place of business for marine insurance located at One Beacon Street, Boston, Massachusetts 02108.

7.    At all times relevant, NACA was and is authorized to issue policies of marine excess liability insurance in the State of New York.

8.    At all times relevant, AHAC was and is a corporation duly organized under and existing under and by virtue of the laws of the State of New York with an office and principal place of business at 70 Pine Street, New York, New York.

9.    At all times relevant, AHAC was and is authorized to issue policies of marine excess liability insurance in the State of New York.

10.    NYMAGIC is an insurance company duly qualified pursuant to the laws of the State of New York and doing business in this jurisdiction through its authorized representative Mutual Marine Office, Inc. ("MMO"), with an office and principal place of business at 919 Third Avenue, New York, New York.

11.    Defendant LAFARGE is a corporation duly organized under and existing by virtue of the laws of the State of Maryland or another one of the states of the United States of America, with its principal place of business at 12950 Worldgate Drive, Suite 500, Herndon, Virginia 20170.

12.    Defendant LAFARGE is registered to do business in the State of New York and/or is otherwise doing business in the State of New York.

13.     Defendant LAFARGE is a diversified construction materials company and supplier of cement, aggregates and concrete, and other materials for residential, commercial, institutional and public works construction.

14.     Defendant AMERICAN CLUB is a mutual insurance association, operated by its members for their exclusive benefit and is incorporated in New York and has a principal place of business at 60 Broad Street, New York, New York.

15.     Defendant AMERICAN CLUB provides liability insurance, which provides cover to members against third-party liabilities encountered in their commercial operations.

**THE POLICIES**

**The Primary MMO Policy**

16.     MMO, as the authorized representative for NYMAGIC, agreed to issue a Primary Marine Liabilities Policy of Insurance No. MMO-30981ML505, to defendant LAFARGE, for the period of May 1, 2005 to May 1, 2006 (the "MMO Policy").

17.     For the policy period of May 1, 2005 to May 1, 2006, NYMAGIC and defendant LAFARGE agreed that the general terms and conditions of the Binding Memorandum for the Primary Marine Policy of Insurance would remain in force and effect for the period of May 1, 2005 to May 1, 2006 until such time as the policy of insurance was issued.

18.     The MMO Policy has an aggregate limit of $5,000,000.00 for any one accident or occurrence.

19.     MMO, as the authorized representative of NYMAGIC, also agreed to participate in an excess liability policy issued to defendant LAFARGE with limits in excess of the primary limit of $5,000,000.00 and up to $50,000,000.00 under certain circumstances for the period of May 1, 2005 to May 1, 2006.

20.   The MMO Policy provides in relevant part:

**14.   <u>OTHER INSURANCE</u>:**

Except for insurance carried by the Assured specifically as excess over and above the amount(s) recoverable hereunder, <u>this Company shall not be liable for any loss, damage, liability or expense which may be recoverable under any other insurance</u> arranged by the Assured, arranged by others for the Assured's account or otherwise available to the Assured, <u>except as excess over and above the amount(s) recovered thereunder</u>. (emphasis added).

21.   The MMO Policy's "Other Insurance" clause is commonly referred to as an "excess clause."

22.   NYMAGIC has accepted the obligation under the MMO Policy to pay the reasonable defense costs and has provided defendant LAFARGE with a defense in the multiple Katrina Claims lawsuits through an assigned counsel, Sutterfield & Webb, LLC., as well as through other investigators and experts.

23.   To date, NYMAGIC has paid and/or incurred defense costs in excess of $4.6 million.

24.   At this time, defendant LAFARGE is claiming against NYMAGIC under the MMO Policy for payment of its separately incurred defense costs in an amount in excess of $7.5 million, which, if payable, would exhaust the limits of the primary MMO Policy and potentially trigger the obligations of plaintiffs NACA and AHAC, *albeit* denied by these plaintiffs, to pay defense costs under a particular Excess Policy issued to defendant LAFARGE in which they participate.

**The American Club Primary Policy**

25.     The rights and obligations of every member of THE CLUB, including defendant LAFARGE, are governed at least in part by the American Club By-Laws and Rules (the "Club Rules").

26.     Upon becoming a member of THE CLUB, defendant LAFARGE received a Certificate of Entry, which expressly makes applicable the Club Rules to the member's insurance. The Certificate of Entry includes additional Member-Specific provisions, which are listed on a separate rider to the Certificate of Entry.  (LAFARGE'S Certificate of Entry for the period February 20, 2005 to February 20, 2006, is attached as Exhibit 1).

27.     The Certificate of Entry is the paramount document and to the extent that the terms of the Certificate of Entry are contrary to the Club Rules, the terms of the Certificate of Entry are controlling with respect to the rights and obligations of the defendant AMERICAN CLUB and defendant LAFARGE under the Club cover.

28.     The Certificate of Entry does not by its terms require any pre-approval by the Club of an agreement pursuant to which defendant LAFARGE acquires an insurable interest in a vessel for the Club cover to automatically attach to said vessel.

29.     Defendant LAFARGE first became a member of THE CLUB on or about February 20, 1999.  It renewed its coverage each year, up to and including the policy year commencing February 20, 2005.

30.     At all times relevant, defendant LAFARGE was a member of the defendant AMERICAN CLUB.

31.     Defendant LAFARGE'S Certificate of Entry contains a Member-Specific clause entitled "Chartered Barges," which states:

12

CHARTERED BARGES.

If Lafarge Corporation et al <u>acquires an insurable interest in any vessel in addition to or in substitution for those set forth herein, through purchase, charter, lease or otherwise</u>, such insurance as is afforded hereunder to any similar vessel shall <u>automatically</u> cover such additional vessel effective from the date and time the Assured acquires an insurable interest in such additional vessel. With respect to a chartered, leased or similarly acquired vessel, the insurance hereunder automatically includes the owner as an additional Assured with waiver of subrogation against the owner, if required, effective from the date and time such vessel is insured hereunder.

The above provision shall not apply to vessels which are chartered under a contract whereby the owner (or Demise Owner) and Charterer agree that the owner (or Demise Owner) shall procure Protection & Indemnity Insurance on the vessel and such insurance shall include the charterer as an Assured.

The Assured agrees to report the name and gross tonnage of any vessel in which they acquire an insurable interest at the expiration of this policy and pay any additional premium as may be required annually, at expiry at daily pro-rate the annual rates agreed. (emphasis added).

32.    Pursuant to the terms of the Certificate of Entry, defendant LAFARGE did report the name and gross tonnage of the Barge ING 4727 and is prepared to pay the reasonable additional premium assessed by the defendant AMERICAN CLUB, if any reasonable additional premium is due and owing.

33.    The Club Rules also provide in relevant part:

Class I Rule 2  Risks and Losses Covered

Each Member of the Association shall be indemnified in connection with each vessel entered in the Association for Protection and Indemnity Insurance against any loss, damage or expense which the Member shall become liable to pay and shall pay <u>by reason of the fact that the Member is the owner (or operator, manager, charterer, mortgagee, trustee, receiver or agent, as the</u>

case may be) of the insured vessel, subject to the provisions of these Rules and to all the limitations herein stated or agreed to by the acceptance of the application for membership, or by the entry of the vessel, in the Association, and which shall result from the following liabilities, risks, events, occurrences and expenditures; provided that such liabilities, risks, events, occurrences and expenditures arise in respect of the Member's interest in such vessel; and in connection with the operation of such vessel by or on behalf of the Member; and out of events occurring during the period of entry of such vessel. (emphasis added).

34.     The Club Rules also provide in relevant part:

Class I Rule 1  Introductory: Interpretation:
               Membership: General Provisions

**34.**     The Association shall not be liable for any loss, damage or expense against which, but for the insurance herein provided, the Member, Co-assured or Affiliate would have been insured under any other existing insurance, except as set forth above in Rule 1.4.33; nor shall the Association provide prorated or allocated cover on the basis of double insurance or otherwise, except as set forth above in Rule 1.4.33; nor will this insurance replace any other insurance where (for whatever reason) that other insurance does not or is not able to respond to a claim thereunder.

35.     The defendant AMERICAN CLUB'S "Other Insurance" terms are commonly referred to as an "escape clause."

36.     The defendant AMERICAN CLUB has wrongfully declined defendant LAFARGE'S demand for payment of defense costs and indemnification under the Certificate of Entry and Club Rules.

**The Excess Policy**

37.     On or before May 1, 2005, NACA and AHAC, together with NYMAGIC, subscribed to an Excess Marine Liability Policy ("Excess Policy") with an insured limit of $45,000,000.00, and up to $50,000,000.00 under certain circumstances, excess of $5,000,000.00 any one accident or occurrence.

14

38.    AHAC, NACA and NYMAGIC, issued the Excess Policy on a several and not joint basis.

39.    NACA subscribed to 25% of risk under the Excess Policy.

40.    AHAC subscribed to 35% of the risk under the Excess Policy.

41.    NYMAGIC subscribed to 40% of the risk under the Excess Policy.

42.    As a true Excess Policy, there was a requirement that defendant LAFARGE maintain certain "Underlying Insurances" as set forth and identified in the Excess Policy binder.

43.    The primary MMO Policy with a primary limit of $5,000,000.00, is identified as "Underlying Insurance" to the Excess Policy.

44.    Defendant LAFARGE'S entry in the defendant AMERICAN CLUB'S coverage with an underlying limit per Club Rules in an amount of at least $1,000,000,000.00, is also listed as an "Underlying Insurance" in the Excess Policy.

45.    The Excess Policy also provides in relevant part:

7.    **OTHER INSURANCE:**

If other valid and collectible insurance with any other Insurer is available to the Assured covering a loss also covered by this Policy, other than insurance that is in excess of the insurance afforded by this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance, either as double insurance or otherwise. Nothing herein shall be construed to make this Policy subject to the terms, conditions and limitations of other insurance.

46.    The "Other Insurance" clause in the Excess Policy is commonly referred to as an "excess clause."

## UNDERLYING KATRINA CLAIMS

47.     Prior to August 29, 2005, Barge ING 4727 was utilized by defendant LAFARGE to transport cement under the Transportation Agreement ("TA") to its New Orleans facility.

48.     On or about August 29, 2005, Barge ING 4727 was moored at defendant LAFARGE'S facility on the Inner Harbor Navigation Canal.

49.     On or about August 29, 2005, Hurricane Katrina made landfall along the Louisiana and Mississippi Gulf Coast.

50.     On or about August 29, 2005, Barge ING 4727 became adrift from her moorings and floated through a breach in the Industrial Canal floodwall or was carried over the floodwall by the rising water.

51.     At least four lawsuits, including class actions, arising out of Hurricane Katrina are pending against defendant LAFARGE.

52.     The allegations set forth in the pleadings in the multiple Katrina Claims-related lawsuits are sufficient to trigger the obligations of both NYMAGIC under the primary MMO Policy and under the defendant AMERICAN CLUB'S primary cover for the cost of defending defendant LAFARGE in the actions.

53.     For example, in the action entitled: *Blair Boutte, et al. v. Lafarge North America, Inc.*, Index No.: 05 CV 5531, U.S.D.C. : E.D.La., it is alleged:

## CLASS ACTION COMPLAINT

* * *

## I.

## Nature of the Action

1.     This is a personal injury, wrongful death/survival, real property damage, personal property damage and business

damage class action on behalf of all persons, property owners, and business owners who sustained personal injury, wrongful death/survival claims, personal and real property damage and/or business damage as the result of flooding in New Orleans, Louisiana following Hurricane Katrina, beginning on or about August 30th, 2005 and thereafter. Plaintiffs seek compensatory and exemplary damages.

\* \* \*

## III.

### Parties

3.   Plaintiffs, BLAIR BOUTTE, DORIS SHANTS AND HERBERT WARREN are representative of classes of persons on New Orleans, Louisiana and surrounding parishes who sustained the following types of damage due to flooding following Hurricane Katrina: persons who sustained damage to their personal and real property, persons who sustained personal injury, persons who are the heirs of persons who died as the result of the flooding and are representative of those with wrongful death and survival claims, persons whose businesses were damaged due to the flooding.

4.   The following parties, made defendants in this suit, are indebted to plaintiffs, *in solido*, for such damages as are reasonable in the premises, with legal interest thereon from the date of judicial demand until paid:

a.   Defendant, Lafarge North America, Inc., is a Virginia Corporation that can be served through its registered agent for service of process, The Prentice-Hall Corporation Systems, Inc., 11 S. 12th Street, P.O. Box 1463, Richmond, Virginia, 23218.

b.   Defendant, John Doe, was an individual charged with the responsibility of adequately securing the barge made the basis of this suit prior to Hurricane Katrina's landfall.

c.   Defendants' acts and omissions have caused Plaintiffs' injuries and damages detailed above in that Defendants' negligence lead to the flooding of

New Orleans following Hurricane Katrina on or about August 30, 2005.

## IV.

### Louisiana State Law Causes of Action

5.  Prior to Hurricane Katrina's landfall, Lafarge North America, Inc. (hereafter "Lafarge") was operating a barge believed to be know as the ING4727, owned by Ingram Barge Company, as an inland hopper barge.  On or about August 28 and 29, 2005, the ING4727 was under the care, custody and control of Lafarge after having unloaded its cargo at Lafarge's terminal adjacent to the Industrial Canal.

* * *

## V.

### Count 1 Negligence

9.  Defendants' conduct in not removing and/or failing to adequately secure the barge was the cause in fact of all Plaintiffs' injuries and damages as set forth above. Defendants owed a duty to Plaintiffs to exercise reasonable care in removing and/or securing the barge prior to the landfall of Hurricane Katrina.  Defendants breached their duty and such breach was the legal cause of all Plaintiffs' injuries.  Plaintiffs have all suffered substantial damage as the result of Defendants' conduct, including, but not limited to, personal injury, wrongful death, medical expenses, hospital expenses, funeral expenses, physical pain and suffering, mental anguish and distress, permanent injury and disability, loss of earnings, and or loss of real and personal property and damage to their businesses.

## VI.

### The Class

10.  Plaintiffs, Individually, and on behalf of THOSE SIMILARLY SITUATED, bring this action as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of a Class, consisting of all persons who sustained personal injury, wrongful death/survival, real property damage, personal property damage and business damage

class action on behalf of all persons, property owners, and business owners who sustained personal injury, wrongful death/survival claims, personal and real property damage and/or business damage as the result of flooding in New Orleans following Hurricane Katrina, beginning on or about August 30th, 2005. Excluded from the Class is the Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as officers, directors, agents, servants, or employees of Defendants, and the immediate family members of such persons and any trial judge who may preside over this case.

54.    For example, in the action entitled:  *Ethel Mumford v. Ingram Barge Company and Riverway Company*, Index No.: 05 CV 5724, U.S.D.C. : E.D.La., it is alleged:

### FIRST SUPPLEMENTAL AND AMENDED COMPLAINT

The first supplemental and amended complaint of Ethel Mumford, individually, and on behalf of a class of persons with common claims, with respect, represents:

I.

Plaintiff desires to add Lafarge North America, Inc., a foreign corporation licensed to do and doing business in the State of Louisiana and within the venue of this Honorable Court, as a party defendant in the title, body, and prayer of the original complaint liable, jointly and *in solido*, with the original defendants for the legal liability, acts of omission, acts of commission, and damages, alleged arising out of their joint, and concurrent, responsibility arising out of its ownership, charter, operation, and [ . . . .]

\* \* \*

### SUIT FOR DAMAGES
### TRIAL BY JURY

\* \* \*

IV.

Defendants at all times pertinent were the owners, charterers, operators of a steel freight barge 200 feet in length, 35 feet in breadth, and 12 feet in depth, identified as ING 4727, VIN #955868, hull # 1942-10, and alternative VIN #CG025606.

V.

The allision between the unmanned barge and the east side flood wall compels defendants to prove that their negligence was not a proximate cause of the allision. At all times pertinent the aforesaid barge was under the joint, and concurrent, control and supervision of defendants through their employees acting in the course and scope of their employment with defendants. The incident was of a kind and nature that cannot occur without negligence and all of the facts are within the exclusive knowledge, and control of defendants and not equally accessible to plaintiffs wherefore the doctrine of *res ipsa loquitur* is applicable and specially pleaded herein.

\* \* \*

VII.

The aforesaid barge, abandoned by defendants to the elements, broke loose from its inadequate moorings and crashed through the East side flood wall of the Industrial Canal taking out a large section of the flood wall causing a huge amount of water from Lake Pontchartrain and the Industrial Canal to flow into the Ninth Ward of Orleans Parish and St. Bernard Parish causing catastrophic damage, personal injury and mental anguish to the nominal plaintiff and the class she seeks to represent.

\* \* \*

IX.

Plaintiffs are entitled to recover of defendants the following elements of compensatory damage, among others that will be shown at the time of trial, to wit:

1.    Damage to their immovable and movable properties;

2.    Demolition and salvage of their immovable and movable properties;

3.    Cost of restoration of their land to the pre-Katrina uncontaminated state;

4.    Displacement cost in the temporary replacement of their home, and property;

5.      Lost income;

6.      Pain, suffering, and mental anguish.

55.     For example, in the action entitled:  *In The Matter Of The Complaint Of Ingram Barge Company, As Owner Of The ING4727, Petitioning For Exoneration From Or Limitation Of Liability*, Index No.: 05 CV 4419, U.S.D.C. : E.D.La., it is alleged:

### THIRD-PARTY COMPLAINT AND CLASS ACTION FOR COMPENSATORY AND EXEMPLARY DAMAGES AND FOR REASONABLE <u>ATTORNEY'S FEES AND TAXABLE COSTS</u>

I.

Claimants and Third-Party Plaintiffs are The Parfait Family, Ashton R. O'Dwyer, Jr. (appearing in proper person), Wilson Simmons, Procula D. Simmons, Tammy Amos, Michael Green, Helen Frank . . . .

II.

Made third-party defendants in this action are the following:

\* \* \*

2)      Lafarge North America Inc., a foreign corporation having its principal office and place of business in Baltimore, Maryland.

\* \* \*

IV.

Sometime during or after the Category 5 hurricane KATRINA's passing through the Greater New Orleans Metropolitan area, a barge owned by Ingram Barge Company, namely the Barge ING-4727, broke free from its moorings and knocked down the floodwall of the Industrial Canal, causing widespread flooding in an area below the Industrial Canal, which otherwise would have survived the storm, causing Claimants to suffer the following:

a)  Death;

b)  Bodily injury;

c)  Loss of or damage to immovable property;

d)  Loss of or damage to movable property;

* * *

VII.

Claimants and Third-Party Plaintiffs invoke the Pennsylvania Rule, and aver that Third-Party Defendants are presumed to be at fault, because a moving vessel struck and penetrated a fixed or stationary object, namely the floodwall of the Industrial Canal.

56.   In each of the actions referenced above in paragraphs 55, 56, and 57, *supra*, it has been alleged that defendant LAFARGE was, at all times relevant, the owner, operator and/or in control of the Barge ING 4727 and by virtue of alleged negligent conduct caused the Barge ING 4727 to break loose of its moorings and strike the levy along the Industrial Canal, causing widespread flooding with ensuing personal injury and property damage.

57.   On or about September 9, 2005, defendant LAFARGE placed NYMAGIC on notice of claims that may be covered by the primary MMO Policy.

58.   On or about March 3, 2006, defendant LAFARGE submitted a claim to THE CLUB seeking "indemnification for all potential liability and/or reasonable settlements and litigation costs . . ." in connection with certain claims for property damage and/or personal injury relating to the breakaway of Barge ING 4727 and arising from the Hurricane Katrina disaster in New Orleans.

59.   On or about April 21, 2006, the defendant AMERICAN CLUB sent a letter to defendant LAFARGE wrongfully declining coverage to defendant LAFARGE, on the alleged

ground that Barge ING 4727 had not been entered with the defendant AMERICAN CLUB at the time of the casualty, or at any other time, and even if it had been entered, coverage for claims against the vessel would have been excluded.

60.    Defendant LAFARGE is pursuing its claim for coverage and defense costs from the defendant AMERICAN CLUB relating to claims arising from the breakaway of the Barge ING 4727 in a related lawsuit entitled:  *American Steamship Owners Mutual Protection and Indemnity Association, Inc. v. Lafarge North America, Inc.*, United States District Court, Southern District of New York, 06 CV 3123 (CSH) ("the Club D.J. Action").

61.    Defendant AMERICAN CLUB maintains that it does not cover any of defendant LAFARGE'S liabilities or defense costs arising from the breakaway of Barge ING 4727, which is central to the Katrina Claims.

62.    If the defendant AMERICAN CLUB is permitted to maintain its wrongful denial of defendant LAFARGE'S claim for defense costs and possible indemnification, NACA, AHAC, and NYMAGIC, will sustain damage by defendant LAFARGE'S pursuit of coverages under the Excess Policy.

### AS AND FOR A FIRST CROSS-CLAIM
### <u>AGAINST THE AMERICAN CLUB</u>

63.    Repeat and incorporate by reference the allegations set forth in paragraphs 1 through 62, inclusive of this Complaint with the same force and effect as if more fully set forth herein.

64.    On or about April 21, 2006, defendant AMERICAN CLUB declined the claim by defendant LAFARGE for defense costs and indemnity with regard to the Katrina Claims by filing the Club D.J. Action.  A copy of the Complaint without exhibits is annexed hereto as Exhibit 2.

65.     In the Club D.J. Action filed by the defendant AMERICAN CLUB, two (2) causes of action are set forth for the declination of defendant LAFARGE'S claim for defense costs and indemnity with regard to the Katrina Claims.

66.     In the First Cause of Action in the Club D.J. Action, the defendant AMERICAN CLUB alleges that it does not insure the defendant LAFARGE for the liabilities arising out of or in connection with the Barge ING 4727 because 1) that barge is not listed on the Schedule of Vessels in the Certificate of Entry, 2) the Barge ING 4727 was not acquired by defendant LAFARGE in addition to or in substitution of scheduled vessels, 3) defendant LAFARGE did not acquire insurable interest in Barge ING 4727, and 4) defendant LAFARGE'S interest in Barge ING 4727 was not pursuant to a purchase or charter.

67.     The legal relationship which defendant LAFARGE has with the Barge ING 4727 is set forth, at least in part, in a particular Transportation Agreement (hereinafter "TA") by and between defendant LAFARGE and Ingram Barge Company.   A copy of the TA is annexed hereto as Exhibit 3.

68.     In and by the terms of the TA, it provides in relevant part:

34.     Possession of the Barge during Loading/Unloading:

Carrier [Ingram] shall deliver an empty or loaded barge to a loading/unloading facility designated by Shipper [Lafarge] for loading or unloading.  Shipper shall assume the duty and responsibility for the safety of each barge in its possession.   For the purposes of this Agreement, "possession" shall begin when a Carrier delivers an empty or loaded barge for loading or unloading to the landing designated by Shipper and shall end when the barge is removed by the Carrier or its agent(s).  Shipper shall be responsible for the safekeeping of Carrier's barge delivered to a landing regardless of whether Shipper owns or operates the landing.  During possession, any barge delivered to a landing designated by the Shipper shall be held without charge to Carrier.

* * *

36.   Mooring:

> Shipper warrants that barges will be safely and adequately moored free of wharfage, dockage, port and harbor charges at the loading and unloading points and that the barges will have warning lights properly displayed as required by applicable U.S. Coast Guard and U.S. Army Corps. of Engineers regulations and permits.  While barges are in the care and custody of Shipper, or its agents, all U.S. Coast Guard and U.S. Army Corps of Engineers regulations will be complied with, . . . . (emphasis added).

69.   At all times relevant, pursuant to the terms of the TA and at law, defendant LAFARGE had an insurable interest in Barge ING 4727.

70.   At all times relevant, Barge ING 4727 was at least a vessel in addition to if not in substitution for those vessels identified in the "Certificate of Entry."

71.   Pursuant to the terms of the TA, defendant LAFARGE did obtain an insurable interest in the Barge ING 4727 through a "charter, lease or otherwise."  (emphasis added).

72.   Pursuant to the Certificate of Entry, and the terms and conditions of the TA, coverage under the Club Rules "automatically" attached to the Barge ING 4727.

73.   Defendant LAFARGE did report to the defendant AMERICAN CLUB the name and gross tonnage of Barge ING 4727 and is willing to pay any additional reasonable premium as part of the automatic coverage that attached to the Barge ING 4727.

74.   Defendant LAFARGE has complied with all necessary conditions under the Certificate of Entry for coverage to attach on the Barge ING 4727 under the liability insurance provided by the Club Rules and the Certificate of Entry.

75.   Defendant AMERICAN CLUB is liable under the Certificate of Entry and the Club Rules 1) to provide defendant LAFARGE with the defense costs in the underlying Katrina

related litigations, 2) to reimburse defendant LAFARGE for the cost of defending the Club D.J. Action and is liable to pay the cost of this declaratory judgment action incurred by plaintiffs NACA and AHAC to have the defendant AMERICAN CLUB'S wrongful declination found judicially null and void and without effect.

76.    In the Second Cause of Action in the Club D.J. Action, defendant AMERICAN CLUB alleges that defendant LAFARGE does not have any coverage under the Club Rules because of 1) the existence of Other Insurance and/or 2) that whatever liability, if any, arises from a indemnity agreement, because no such indemnity agreement was presented to the defendant AMERICAN CLUB for approval, and/or 3) defendant LAFARGE did not provide the defendant AMERICAN CLUB with a copy of the TA for THE CLUB'S approval.

77.    By virtue of the specific grounds for declination set forth in the Declaratory Judgment Complaint filed by defendant AMERICAN CLUB, any other possible or potential defenses to coverage under the Club Rules or Certificate of Entry have been waived.

78.    There is no express or implied term in the Certificate of Entry requiring THE CLUB'S approval for the TA.

79.    As set forth in the allegations of the underlying complaint by the various and several claimants in the Katrina litigations, liabilities being sought to be imposed upon defendant LAFARGE, in whole or in part, do not arise under a contract of indemnity.

80.    Based upon the terms and conditions of the "Other Insurance" clauses set forth in the MMO Policy and the Club Rules, THE CLUB'S defense of "Other Insurance" under New York law is invalid because an escape clause, such as that set forth in the Club Rules, is rendered ineffective and/or invalid when the Other Insurance policy on the same level as THE CLUB'S

primary cover contains an "Other Insurance" clause which transforms the primary to an excess

policy such as that set forth in the MMO Policy.

## AS AND FOR A SECOND CROSS-CLAIM
## AGAINST LAFARGE

81.   Repeat and incorporate by reference the allegations set forth in paragraphs 1

through 80, inclusive of this Complaint with the same force and effect as if more fully set forth

herein.

82.   The Excess Policy provides in relevant part:

11.   MAINTENANCE OF UNDERLYING INSURANCE:

A.   It is a condition of this policy that the Section(s) or
Policy(ies) referred to below in the "Schedule of
Underlying Insurance" shall be maintained in full
effect during the currency of this insurance except
for any reduction of the aggregate limit(s) contained
therein solely by payment of claims in respect of
accidents and/or occurrences, occurring during the
term of this Policy.

B.   Inadvertent failure of the Assured to comply with
Paragraph A above or inadvertent failure to notify
this Company of any changes in the Underlying
Insurances shall not prejudice the Assured's rights
of recovery under this Policy, but in the event of
such failure, this Company to be liable only to the
same extent as they would have been had the
Assured complied with the said condition.

83.   In the event that defendant LAFARGE failed to comply with all requirements of

the Club Rules and/or the Certificate of Entry, which were and are necessary to bring the Barge

ING 4727 within the scope of the coverage provided by the AMERICAN CLUB, such failure

even if inadvertent, relieves the subscribers to the Excess Policy, including these plaintiffs of any

obligation to make payment to defendant LAFARGE until such time as the amount which would

have been covered under the Club Rules and the Certificate of Entry would have been exhausted

as if coverage under the Club Rules and the Certificate of Entry were in fact in full force and effect.

84.    By virtue of the foregoing premises, the subscribing underwriters to the Excess Policy shall not be required to pay under the Excess Policy until such time as an amount equivalent to the full amount of coverage under the AMERICAN CLUB has been paid by defendant LAFARGE.

## AS AND FOR A THIRD CROSS-CLAIM
## AGAINST LAFARGE

85.    Repeat and incorporate by reference the allegations set forth in paragraphs 1 through 84, inclusive of this Complaint with the same force and effect as if more fully set forth herein.

86.    The MMO Policy provides in relevant part:

> 4.    **NAMING ATTORNEYS:**
>
> This Company, in consideration, in consultation with the Assured, shall have the option of naming any mutually acceptable attorneys who shall represent the Assured in the prosecution or defense of any litigation or negotiations between the Assured and third parties concerning any claim based on a liability or an alleged liability covered by this policy, and shall have the direction of such litigation's [sic] or negotiations.  If the Assured shall fail or refuse to settle any claim as authorized by this Company, the liability of this Company shall be limited to the amount for which settlement could have been made. (emphasis added).

87.    In and by the terms of the MMO Policy, NYMAGIC had the sole right with the consent of the Assured to name counsel for defendant LAFARGE in the actions involving the Katrina Claims.

88.    In and by the terms of the MMO Policy, defendant LAFARGE had no right whatsoever to name counsel to defend its interest in the Katrina Claims at the expense of the

primary insurer NYMAGIC and/or the EXCESS INSURERS, NYMAGIC, and AHAC and NACA.

89.     At all times relevant, the NYMAGIC, after consultation with LAFARGE, sought the consent of LAFARGE for the retention of one of several firms to provide a defense for defendant LAFARGE in the underlying actions involving the Katrina Claims.

90.     At all times relevant, defendant LAFARGE failed to consult with NYMAGIC in good faith and wrongfully and unreasonably withheld consent to the appointment of counsel by NYMAGIC to defend defendant LAFARGE in the underlying Katrina Claims.

91.     By reason of defendant LAFARGE's failure to consult with NYMAGIC in good faith and then unreasonably withhold its consent to the counsel named by NYMAGIC, defendant LAFARGE has, as a matter of law, waived its rights to participate in the naming of defense counsel under the MMO Policy and Excess Policy.

92.     After due consideration, NYMAGIC retained the law firm of Sutterfield & Webb, LLC., as counsel to defend LAFARGE in the Katrina Claims.

93.     At this time, defendant LAFARGE has paid and/or incurred cost for its separately retained counsel, Goodwin Procter, Holland & Knight, and Chaffe McCall, in an amount in excess of $7.5 million, whose services were and are, in whole or in part, duplicative of those services and/or unwarranted services rendered by counsel retained by NYMAGIC on behalf of defendant LAFARGE in defense of the underlying Katrina Claims.

94.     Defendant LAFARGE is now making claim under the MMO Policy and the Excess Policy for reimbursement of the costs for its separately retained counsel without having consulted with and/or having obtained the approval of plaintiffs AHAC and NACA and the non-party NYMAGIC.

95.     In and by the terms of the Excess Policy, it provides in relevant part:

4.      **ASSISTANCE AND COOPERATION:**

This Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceedings instituted against the Assured, but <u>this Company shall have the right and shall be given the opportunity to associate with the Assured or the Assured's Underlying Insurers, or both, in the defense and control of any claim</u>, suit or proceeding relative to an occurrence where the claim or suit involves or appears reasonably likely to involve this Company in which event the Assured, the Underlying Insurers and this Company shall cooperate in all things in the defense of such claim, suit or proceeding. (emphasis added).

96.     By the terms of the Excess Policy, AHAC, NACA, and NYMAGIC, have the absolute right to be given the opportunity to associate with the insured and the underlying insurer in the defense and control of the Katrina Claims.

97.     Defendant LAFARGE did not give the AHAC, NACA and NYMAGIC an opportunity to associate with the defendant LAFARGE on the selection of its counsel and/or on the proper management and cost control of the defense of the underlying Katrina Claims with respect to the counsel which were separately retained by defendant LAFARGE.

98.     By virtue of the foregoing premises, defendant LAFARGE has no right to seek reimbursement for the past and/or future payments to be made to those counsel which were separately retained by defendant LAFARGE without the consent of, and/or without consultation with, its primary and EXCESS INSURERS.

## AS AND FOR A FOURTH CROSS-CLAIM
## <u>AGAINST BOTH THE AMERICAN CLUB AND LAFARGE</u>

99.     Repeat and incorporate by reference the allegations set forth in paragraphs 1 through 100, inclusive of this Complaint with the same force and effect as if more fully set forth herein.

100.    The MMO Policy contains an "Other Insurance" clause which renders the MMO Policy excess to any other primary policy.

101.    The primary insurance coverage provided under the Club Rules and Certificate of Entry contains an "Other Insurance" clause or terms which attempts to make THE CLUB coverage null and void if Other Insurance coverage is applicable to the claim.

102.    Under New York law, when comparing an excess type "Other Insurance" clause in a primary policy to an escape type of "Other Insurance" clause in a second primary policy covering the same insured, the escape clause is given no force and effect rendering the primary policy with the escape clause the ultimate primary policy to respond to the claim with the other primary policy containing the excess clause being the first excess policy.

103.    The Excess Policy subscribed to by AHAC, NACA and NYMAGIC, is a true Excess Policy which schedules both the MMO Policy and THE CLUB cover as Underlying Insurance and therefore renders the Excess Policy the excess insurance coverage to both the MMO Policy and THE CLUB cover.

104.    The Excess Policy also contains an "Other Insurance" clause which by its terms makes it excess to any primary policy.

105.    By virtue of the foregoing, the coverage afforded under the Excess Policy is not triggered until the limits of liability for the coverage afforded under both the MMO Policy and THE CLUB cover are fully exhausted.

WHEREFORE, AHAC, NACA and NYMAGIC pray for judgment as follows:

A.    On the First Cross-Claim, a judgment in favor of The Northern Assurance Company of America, American Home Assurance Company, and NYMAGIC against the defendant American Steamship Owners Mutual Protection and Indemnity Association, Inc. declaring that the Club's denial of coverage to defendant Lafarge North America, Inc. is invalid and that there is coverage under the Club Rules and Certificate of Entry issued to defendant Lafarge North America, Inc. for, at a minimum, the cost of paying for defending all underlying Katrina Claims and related litigations;

B.    On the Second Cross-Claim, a judgment in favor of The Northern Assurance Company of America, American Home Assurance Company and NYMAGIC against defendant Lafarge North America, Inc., declaring that the Excess Marine Liability Policy, issued by The Northern Assurance Company of America, American Home Assurance Company and NYMAGIC, to defendant Lafarge North America, Inc. does not respond until the dollar limit under the primary MMO Policy has been paid up to its full limit of $5,000,000.00 and defendant Lafarge North America, Inc. has paid the full amount which should have been paid under the Club cover but for defendant Lafarge North America, Inc.'s failure to comply with the requirements to have the Barge ING 4727 validly entered for coverage under the Club Rules and Certificate of Entry.

C.    On the Third Cross-Claim, a judgment in favor of The Northern Assurance Company of America, American Home Assurance Company and NYMAGIC against defendant Lafarge North America, Inc. declaring that under the Excess

Marine Liability Policy issued by them they are not liable to reimburse defendant

Lafarge North America, Inc. for payments to those several counsel engaged by

Lafarge North America, Inc. without the consent of the insurers.

D.     On the Fourth Cross-Claim, a judgment in favor of The Northern Assurance

Company of America, American Home Assurance Company and NYMAGIC

against both defendants Lafarge North America, Inc. and American Steamship

Owners Mutual Protection and Indemnity Association, Inc. declaring that the

Excess Marine Liability Policy issued by them is excess to the available

coverages under both the MMO Policy and the Club cover; and

E.     For other and such further relief as the Court deems just and proper;

and for the cost and disbursements of this action.

Dated: August 18, 2008

Respectfully submitted:

/s/ *Leah N. Engelhardt*
FRANK A. PICCOLO (02049)
LEAH N. ENGELHARDT (23232)
PREIS & ROY, APLC
601 Poydras Street, Suite 1700
New Orleans, LA 70130
Telephone:(504) 581-6062
Facsimile: (504) 522-9129

COUNSEL FOR AMERICAN HOME
ASSURANCE COMPANY AND
INTERNATIONAL MARINE UNDERWRITERS

-and-

/s/ Robert H. Murphy
ROBERT H. MURPHY (9850)
MURPHY ROGERS SLOSS & GAMBEL
701 Poydras Street, Suite 400
New Orleans, LA 70139

COUNSEL FOR NEW YORK MARINE AND
GENERAL INSURANCE COMPANY


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing pleading has been served on all

counsel of record in these proceedings by:

(   ) Hand Delivery      (   ) Prepaid U.S. Mail

(   ) Facsimile      (   ) Federal Express

( √ ) ECF Filing      (   ) E-Mail


New Orleans, Louisiana, this 18th day of August, 2008.

    /s/ Leah N. Engelhardt
    LEAH N. ENGELHARDT

1528900