# EXHIBIT 2

THACHER PROFFITT & WOOD LLP
Two World Financial Center
New York, New York 10281
(212) 912-7400
John M. Woods (JW/0697)
Alan F. Kaufman (AK/9114)
Neil T. Bloomfield (NB/0669)
*Attorneys for Plaintiff*



06 CV 3123

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN STEAMSHIP OWNERS MUTUAL
PROTECTION AND INDEMNITY ASSOCIATION,
INC.,

                                        Plaintiff,

    - against -

LAFARGE NORTH AMERICA, INC.,

                                        Defendant.

RECEIVED
APR 2 4 2006
U.S.D.C. S.L N.Y.
CASHIERS

ECF CASE

Case No.:

**COMPLAINT**

Plaintiff, American Steamship Owners Mutual Protection and Indemnity Association, Inc. (the "American Club" or the "Club"), by and through its attorneys, Thacher Proffitt & Wood LLP, as and for its Complaint alleges as follows:

1.    The matter in controversy relates to the demand of one of the Club's members, Lafarge North America, Inc. ("Lafarge"), for indemnification against potential liability and defense costs in respect of claims arising from the breakaway of a barge that was at Lafarge's New Orleans, Louisiana facility during Hurricane Katrina in August, 2005. In other lawsuits pending against Lafarge, it is alleged that the barge, called the ING 4727, struck and caused or contributed to the collapse of the 17th Street Industrial Canal floodwall causing massive flooding in the City of New Orleans. By this action, the Club seeks a declaration that it is not obligated to defend or provide cover to Lafarge because the Barge ING 4727 was never insured by the Club,

and because even if the barge had been insured pursuant to Lafarge's Certificate of Entry in the Club, coverage is excluded pursuant to the terms of the Club's rules.

## JURISDICTION

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1333 because it is an admiralty or maritime dispute between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of fees and costs.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Club's principal place of business is within this district and a substantial part of the events giving rise to Lafarge's claim occurred in this judicial district.

## NATURE OF THE ACTION

4.      This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and involves an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

5.      Plaintiff seeks a declaration of its rights and other legal relations pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, in order to resolve an actual controversy between the parties to this action as is more fully described below.

## THE PARTIES

6.      Plaintiff, the American Club, is a non-profit mutual insurance association, operated by its members for their exclusive benefit. The Club provides protection and indemnity insurance (commonly referred to as "P&I Insurance"), which provides cover to shipowners and charterers against third-party liabilities encountered in their commercial operations. Traditional P&I Insurance is based on the not-for-profit principle of mutuality where members of the Club essentially insure one-another and, therefore, are both the insurers and the assureds. The

2

American Club is incorporated in New York and has its principal place of business at 60 Broad Street, New York, New York.

7.      Upon information and belief, defendant Lafarge is a diversified construction materials company and supplier of cement, aggregates and concrete, and other materials in the United States and Canada.  Lafarge is incorporated in Maryland and has its principal place of business at 12950 Worldgate Drive, Suite 500, Herndon, Virginia.

8.      Lafarge is registered to do business in the State of New York and/or is otherwise doing business in the State of New York including, but not limited to, entering into contracts with the Club.

## FACTUAL BACKGROUND

### A.      Entry into the Club

9.      The rights and obligations of every member of the Club are governed by the American Club By-Laws and Rules (the "Club Rules").

10.     When an assured becomes a member of the Club, it receives a Certificate of Entry, which expressly makes applicable the Club Rules to the member's insurance, and which lists a Schedule of Vessels which are insured by the Club.  The Certificate of Entry may include additional Member-Specific provisions, which are listed on a separate rider to the Certificate of Entry.  (Lafarge's Certificate of Entry for the period February 20, 2005 to February 20, 2006, is attached as Exhibit A.)

11.     Traditional P&I insurance is written on a policy year basis, with an inception date of February 20th for each policy year.  For example, the Club's current policy year incepted on February 20, 2006 and runs for twelve months.

3

**B.**     **Lafarge's Entry into the Club**

12.     Lafarge first became a member of the Club on or about February 20, 1999.  It renewed its coverage each year, up to and including the policy year commencing February 20, 2005.

13.     Lafarge's Certificate of Entry contains a Schedule of Vessels that Lafarge entered with the Club.  The Barge ING 4727 was never listed on any Schedule of Vessels for Lafarge's entry with the Club.

14.     Lafarge's Certificate of Entry contains a Member-Specific clause entitled "Chartered Barges," which states:

> CHARTERED BARGES.
>
> If Lafarge Corporation et al <u>acquires an insurable interest in any vessel in addition to or in substitution for those set forth herein, through purchase, charter, lease or otherwise,</u> such insurance as is afforded hereunder to any similar vessel shall <u>automatically</u> cover such additional vessel effective from the date and time the Assured acquires an insurable interest in such additional vessel. With respect to a chartered, leased or similarly acquired vessel, the insurance hereunder automatically includes the owner as an additional Assured with waiver of subrogation against the owner, if required, effective from the date and time such vessel is insured hereunder.
>
> The above provision shall not apply to vessels which are chartered under a contract whereby the owner (or Demise Owner) and Charterer agree that the owner (or Demise Owner) shall procure Protection & Indemnity Insurance on the vessel and such insurance shall include the charterer as an Assured.
>
> <u>The Assured agrees to report the name and gross tonnage of any vessel in which they acquire an insurable interest at the expiration of this policy and pay any additional premium as may be required annually, at expiry at daily pro-rate the annual rates agreed.</u> (emphasis added).

15.     Accordingly, to obtain cover for a vessel under the Chartered Barges clause, Lafarge must meet each of the following conditions:

     a.     first, Lafarge must acquire the requisite insurable interest in a vessel;

4

b.      second, the vessel must be acquired <u>in addition to or in substitution for</u> those vessels listed on the Schedule of Vessels;

c.      third, the interest in a vessel acquired by Lafarge must be akin to a purchase, charter or lease;

d.      fourth, the vessel(s) to be covered must be declared to the Club;

e.      fifth, Lafarge must pay premium to the Club for the vessel(s) to be covered.

## C.     <u>The Transportation Agreement</u>

16.     Upon information and belief, on or about December 14, 2004, Lafarge entered into a Transportation Agreement (the "Transportation Agreement") with Ingram Barge Company ("Ingram"), to be performed during the period from January 1, 2005 through December 31, 2005, and providing for the transportation by Ingram of approximately 160,000 net tons of cement in covered barges from Lafarge's Joppa, Illinois plant to its New Orleans, Louisiana facility on the Inner Harbor Navigation Canal. (The Transportation Agreement is attached as Exhibit B.)

17.     Clause 51 of the Transportation Agreement defines Lafarge as an "Independent Contractor" and explicitly states that "[n]othing in this Contract shall be construed as a contract by Shipper [Lafarge] for the chartering, hiring, or leasing of any barge . . . ."

18.     Upon information and belief, Ingram began transporting cargo for Lafarge under the Transportation Agreement beginning in January of 2005.

19.     Lafarge did not submit the Transportation Agreement to the Club for its review and approval.

20.     Upon information and belief, on or about May 1, 2005, Lafarge obtained a primary marine liability/wharfinger's policy with a limit of $5,000,000 from New York Marine & General Insurance Company (the "MMO Policy").

5

21.    The MMO Policy specifically includes coverage for Lafarge's "liability for damage caused directly or indirectly by the freeing or breaking away" of vessels at landing and/or mooring facilities that are owned operated, utilized, controlled or leased by Lafarge.

22.    Lafarge also obtained a policy providing excess coverage to the MMO Policy with a limit of $45,000,000 above the MMO Policy limit, for total wharfinger's liability coverage up to $50,000,000.

**D.    Lawsuits Against Lafarge Arising From Hurricane Katrina**

23.    Upon information and belief, prior to August 29, 2005, Ingram used its Barge ING 4727 to transport cement under the Transportation Agreement to Lafarge's New Orleans' facility.

24.    Upon information and belief, on or about August 29, 2005, Barge ING 4727 was moored at Lafarge's facility on the Inner Harbor Navigation Canal.

25.    On or about August 29, 2005, Hurricane Katrina made landfall along the Louisiana and Mississippi Gulf Coast.

26.    Upon information and belief, on or about August 29, 2005, Barge ING 4727 tore free of her moorings and drifted through a breach in the Industrial Canal floodwall or was carried over the floodwall by the rising water.

27.    Barge ING 4727 is not listed on any Lafarge Schedule of Vessels entered with the Club, nor were any Ingram vessels.

**E.    Lafarge's Claim for Defense and Cover from the Club**

28.    At least four lawsuits arising out of Hurricane Katrina are pending against Lafarge.

6

29.     Upon information and belief, on or about September 9, 2005, Lafarge placed their terminal operators and wharfinger's liability underwriters on notice of claims that may be covered by the MMO Policy.

30.     On or about March 3, 2006, Lafarge submitted a claim to the Club seeking "indemnification for all potential liability and/or reasonable settlements and litigation costs . . ." in connection with certain claims for property damage and/or personal injury relating to the breakaway of Barge ING 4727 and arising from the Hurricane Katrina disaster in New Orleans.

31.     On or about April 21, 2006, the Club sent a letter to Lafarge declining coverage to Lafarge because Barge ING 4727 had not been entered with the Club at the time of the casualty, or at any other time, and even if it had been entered, coverage for claims against the vessel would have been excluded.

32.     Upon information and belief, Lafarge intends to pursue its claim for cover and defense costs relating to claims arising from the breakaway of the ING 4727 from the Club.

33.     The Club maintains that it does not cover any of Lafarge's liabilities or defense costs arising from the breakaway of Barge ING 4727.

34.     An actual and justiciable controversy within the jurisdiction of this Court therefore exists between the parties to this action regarding the rights and liabilities of the parties, which controversy may be determined by a judgment of this Court.

## AS AND FOR A FIRST CAUSE OF ACTION

35.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs 1 through 34 as though fully set forth herein.

36.     Barge ING 4727 is not listed on the Schedule of Vessels in Lafarge's 2004 – 2005 Certificate of Entry issued by the Club.

37.     Lafarge did not acquire the Barge ING 4727 in addition to or in substitution for the vessels set forth in the Schedule of Vessels.

38.     Lafarge did not acquire an insurable interest in Barge ING 4727 as required by Lafarge's Certificate of Entry.

39.     Any interest that Lafarge acquired in Barge ING 4727 was not akin to a purchase, charter or lease.

40.     Lafarge cannot obtain cover from the Club for Barge ING 4727 pursuant to the Chartered Barges clause of Lafarge's Certificate of Entry.

41.     Nonetheless, Lafarge contends that the Club is required to defend and provide cover to Lafarge for the claims asserted against Lafarge in connection with the breakaway of Barge ING 4727.

42.     An actual and justiciable controversy has thus arisen between the Club and Lafarge concerning the coverage of Barge ING 4727.

## AS AND FOR A SECOND CAUSE OF ACTION

43.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

44.     Even if Barge ING 4727 could be insured with the Club under the Chartered Barges clause, coverage is excluded.

45.     The Club Rules exclude liability "for any loss, damage or expense against which, but for the insurance herein provided, the Member, Co-assured or Affiliate would have been insured under any other existing insurance . . . ."

46.     The Club Rules also exclude "[l]iabilities, costs and expenses which would not have arisen but for the terms of a contract or indemnity entered into by a Member, unless those terms have been expressly approved in writing by the Managers."

47.    Cover by the Club for Barge ING 4727 is excluded because Lafarge's liability for the breakaway of Barge ING 4727 is covered by the MMO Policy.

48.    Cover by the Club for Barge ING 4727 is also excluded because Lafarge did not provide for review or obtain the Club's approval of the Transportation Agreement.

49.    Nonetheless, Lafarge contends that the Club is required to defend and provide cover to Lafarge for the claims asserted against Lafarge in connection with Barge ING 4727.

50.    The Club maintains that coverage is excluded.

51.    An actual and justiciable controversy has thus arisen between the Club and Lafarge concerning the coverage of Barge ING 4727.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

1.    that this Court declare the rights and liabilities of the parties with respect the American Club's obligations, if any, to defend and/or provide cover to Lafarge for the claims asserted against Lafarge in connection with Barge ING 4727;

2.    that this Court find and declare that Barge ING 4727 was not entered with or insured by the American Club, and as a result, the Club has no obligation to defend and/or provide cover to Lafarge for the claims asserted against Lafarge in connection with Barge ING 4727;

3.    that this Court find and declare that, because Lafarge maintained other insurance coverage, the American Club has no obligation to defend and/or provide cover to Lafarge for the claims asserted against Lafarge in connection with Barge ING 4727;

4.    that this Court find and declare that, because Lafarge failed to submit the Transportation Agreement to and obtain the approval of the American Club, the Club has no

obligation to defend and/or provide cover to Lafarge for the claims asserted against Lafarge in connection with Barge ING 4727;

     5.    that this Court award the American Club its costs and disbursements for this action, including attorneys fees; and

     6.    that this Court grant the Club such other and further relief as is just and proper.

Dated:      New York, New York
            April 21, 2006

                      THACHER PROFFITT & WOOD LLP

                      By: *John M Woods*

                          John M. Woods (JW/0697)
                          jwoods@tpw.com
                          Alan F. Kaufman (AK/9114)
                          akaufman@tpw.com
                          Neil T. Bloomfield (NB/0669)
                          nbloomfield@tpw.com

                          Two World Financial Center
                          New York, New York 10281
                          (212) 912-7400

                          *Attorneys for Plaintiff*

10