UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES                CIVIL ACTION
         CONSOLIDATED LITIGATION

                                                                                          NO. 05-4182

PERTAINS TO: INSURANCE                         SECTION "K"(2)
         **HOLBROOK, 06-2617**

## ORDER AND REASONS

Before the Court are two motions for summary judgment. Plaintiffs Ronald and April Holbrook ("Plaintiffs") have sued Fidelity National Property and Casualty Insurance Company ("Fidelity"), seeking reformation of their Standard Flood Insurance Policy ("SFIP") that was in effect during Hurricane Katrina. They have also filed breach of fiduciary duty claims against Defendant Club Insurance Agency, Inc. ("AAA"). AAA has filed a motion for summary judgment (Rec. Doc. 9310) ("AAA Mot."), and Fidelity has also filed a motion for summary judgment (Rec. Doc. 9311) ("Fidelity Mot."). Plaintiffs have opposed both motions in a consolidated reply. (Rec. Doc. 9575) ("Opp."). For the reasons provided herein, this Court will grant Fidelity's motion but deny AAA's motion.

## I. BACKGROUND

The relevant facts are substantially not in dispute.[1] On May 20, 2005, Plaintiffs

---

[1] While both Defendants filed statements of undisputed facts, the Plaintiffs failed to file its statement of disputed facts. Therefore, this Court can only glean what is undisputed from the Plaintiffs' brief. *See* LR 56.2 ("Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried.").

contacted their insurance agents, JoAnn Daleo and Lisa Dufour of AAA, in order to obtain flood and homeowner's insurance for their residence at 6123 Charlotte Drive, New Orleans, Louisiana, a property that they were in the process of purchasing. The Plaintiffs requested policy limits of $183,000 for building coverage and $40,000 for contents coverage. Ms. Daleo and Ms. Dufour prepared the SFIP for the Plaintiffs for the requested coverage on behalf of Fidelity, a Write-Your-Own ("WYO") insurer. On June 30, 2005, the Plaintiffs closed on their property and paid the required premium of $836.00 for flood insurance the same day.

On July 25, 2005, Fidelity sent a letter to Plaintiffs, Ms. Daleo, and National City Bank, notifying them that an error had been made in calculating their premium. Fidelity Mot., Ex. 4. Fidelity's letter explained that an additional premium of $342.00 would be required to maintain the same policy limits. The letter informed Plaintiffs that if the additional payment was not received by August 24, 2005, the policy limits would be lowered to $111,600 for structure and $20,000 for contents.[2] Plaintiffs received this letter on or about August 4, 2005.

---

[2]The Fidelity letter providing notice to the Plaintiffs read as follows:

Dear Flood Insurance Customer:

Your Flood Insurance policy has been issued with lower limits of coverage than were originally requested because the submitted premium was inadequate.

Additional coverage limits may be purchased and added by endorsement to the policy. If you wish to increase your building and/or contents to the originally requested amounts, you may submit an additional premium of $342.00. If payment is received by 8-24-05, the policy will be restored from its inception to provide flood coverage in the amount initially requested.

Please provide either elevation certificate or additional premium.

Fidelity Mot., Ex. 4.

Immediately after receiving the Fidelity letter, Plaintiff Ronald Holbrook contacted AAA to arrange a meeting that occurred on August 4, 2005.  Mr. Holbrook met with Ms. Daleo and Ms. Dufour to discuss the change in coverage.  Daleo and Dufour explained that the change in the premium was the original premium had been based on an incorrect flood elevation certificate that corresponded to a different property at 6762 Colbert Street, New Orleans.  Ms. Dufour apparently had been provided the wrong elevation certificate from the title company that had performed the closing, although Plaintiffs contend that "it is not clear that any elevation certificate was submitted with the Holbrooks' application for flood insurance."  Opp. at 4.  Mr. Holbrook admits that Ms. Dufour and Ms. Daleo told him during this meeting, "[Y]ou owe more money, you [owe] more money."  Deposition of Ronald Holbrook, AAA Mot., Ex. A at 102.  Later during the meeting, however, Dufour and Daleo attempted to recreate the original premium calculation and the revised premium calculation using the new flood elevation certificate, but "when the correct and incorrect elevation certificates were used, the premium was the same."  Opp. at 5.  Mr. Holbrook appears to have expressed concern, at which time "AAA promised the Holbrooks that it would undertake to correct the premium discrepancy."  Opp. at 5; Deposition of Ronald Holbrook, AAA Mot., Ex. A at 106.  Plaintiffs claim that Dufour or Daleo stated that would give them a call regarding the premium calculations.  Opp. at 5.

Subsequent to this meeting, no AAA representative gave the Plaintiffs a call or any other notification.  Mr. Holbrook called AAA on the 11th of August, and then again on August 24th, the deadline for submitting the additional insurance premium.  Opp. at 6.  He left messages that were not returned.  "Finally, on or about August 29, 2005, the Holbrooks offered to pay the disputed premium to Fidelity out of an abundance of caution."  Opp. at 7.  At that time, Fidelity

rejected the Holbrooks' offer of payment.  On the same day, Hurricane Katrina struck New Orleans, flooding Plaintiffs' property.  Fidelity sent an adjuster to the Plaintiffs' property soon thereafter, and he declared the property a total loss.  Fidelity thereafter paid the policy limits that were in effect on August 29, 2005: $111,600 for building loss and $20,000 for contents loss.  Plaintiffs' claim that their coverage should have been at the higher policy limits that they had originally sought: $183,000 for building coverage and $40,000 for contents coverage.  They claim that it was the negligence of AAA that resulted in their lower policy limits, and that AAA's agents' representations to Mr. Holbrook justified his reliance that AAA or Fidelity would recalculate his premium.

**II.  ANALYSIS**

This Court has jurisdiction pursuant to 42 U.S.C. § 4001, *et seq.* (the National Flood Insurance Act), and under supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Summary judgment may be granted pursuant to Federal Rule of Civil Procedure 56 "when the movant can demonstrate that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law."  *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 248 (5th Cir. 2008).  "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008); *McIntosh v. Partridge*, --- F.3d ----, 2008 WL 3198250, at *2 (5th Cir. Aug. 8, 2008) ("Fact issues are viewed in the light most favorable to the nonmovant.").  "Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine

4

factual issue for trial." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see Bilbe v. Belsom*, 530 F.3d 314, 315 (5th Cir. 2008) (citing *TIG Ins. Co.*).

## A. Fidelity's Motion for Summary Judgment

Plaintiffs' claim is based on their SFIP, which was issued by Fidelity, a WYO carrier participating in the United States government's National Flood Insurance Program ("NFIP"), which is administered by the Federal Emergency Management Agency ("FEMA"). *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 386 (5th Cir. 2005) (*Wright I*). The Fifth Circuit has explicitly held that any extra-contractual claims based on SFIPs are preempted by federal law. *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 398 (5th Cir. 2007) (*Wright II*) (holding that plaintiff's "extra-contractual claims for fraud and negligent misrepresentation are neither explicitly nor implicitly authorized by the NFIA [National Flood Insurance Act]," and therefore dismissing federal common law claims); *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 345 (5th Cir. 2001) ("Based on our decision in *Wright*, the district court erred in concluding that state law claims against a WYO carrier are not preempted by the National Flood Insurance Act and related regulations."); *see Nelson v. Charles Smith & Assocs. Ins. Co.*, Civ. A. No. 06-9631, 2008 WL 2188797, at *1 (E.D. La. May 27, 2008) (dismissing state law extra-contractual claims brought by SFIP holder as preempted). Therefore, all extra-contractual claims sought by Plaintiff must be dismissed, leaving the sole claim by Plaintiff that his SFIP should be reformed to the higher policy limits.

"The terms of SFIP policies are dictated by FEMA." *Wright I*, 415 F.3d at 386 (citing 44

C.F.R. §§ 61.4(b), 61.13(d)). "Payments on SFIP claims come ultimately from the federal treasury." *Id.* (citing *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998)). Because payments for SFIP claims derive from the United States Treasury, the terms of the SFIP must be strictly construed and applied. *Gowland*, 143 F.3d at 954 ("[T]he provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced . . . ."); *Long v. Am. Nat. Prop. & Cas. Co.*, Civ. A. No. 07-4827, 2008 WL 2951965, at *2 (E.D. La. July 29, 2008) (Africk, J.) (Because the federal treasury is implicated in the payment of flood claims, the provisions of an SFIP must be strictly construed and enforced."); *Hamide v. Omaha Prop. & Cas. Ins. Co.*, Civ. A. No. 03-1405, 2004 WL 74316, at *2 (E.D. La. Jan. 14, 2004) (Fallon, J.) ("Failure to [strictly] construe [an SFIP] runs afoul of the Appropriations Clause of the United States Constitution.").

The terms of the SFIP that are most relevant to the resolution of this case are Article VII(G). Article VII(G) reads as follows:

> G. Reduction and Reformation of Coverage
>
> 1. If the premium we received from you was not enough to buy the kind and amount of coverage you requested, we will provide only the amount of coverage that can be purchased for the premium payment we received.
>
> 2. The policy can be reformed to increase the amount of coverage resulting from the reduction described in G.1. above to the amount you requested as follows:
>
> a. Discovery of Insufficient Premium or Incomplete Rating Information Before a Loss:
>
> (1) If we discover before you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current policy term (or that portion of the current policy term following any endorsement changing the amount of coverage). If you or the mortgagee or trustee pay the additional premium within 30 days from the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested

6

amount effective to the beginning of the current policy term (or subsequent date of any endorsement changing the amount of coverage).

(2) If we determine before you have a flood loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information within 60 days of our request. Once we determine the amount of additional premium for the current policy term, we will follow the procedure in G.2.a.(1) above.

(3) If we do not receive the additional premium (or additional information) by the date it is due, the amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

b. Discovery of Insufficient Premium or Incomplete Rating Information After a Loss:

(1) If we discover after you have a flood loss that your premium payment was not enough to buy the requested amount of coverage, we will send you and any mortgagee or trustee known to us a bill for the required additional premium for the current and the prior policy terms. If you or the mortgagee or trustee pay the additional premium within 30 days of the date of our bill, we will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the prior policy term.

(2) If we discover after you have a flood loss that the rating information we have is incomplete and prevents us from calculating the additional premium, we will ask you to send the required information. You must submit the information before your claim can be paid. Once we determine the amount of additional premium for the current and prior policy terms, we will follow the procedure in G.2.b.(1) above.

(3) If we do not receive the additional premium by the date it is due, your flood insurance claim will be settled based on the reduced amount of coverage. The amount of coverage can only be increased by endorsement subject to any appropriate waiting period.

3. However, if we find that you or your agent intentionally did not tell us, or falsified, any important fact or circumstance or did anything fraudulent relating to this insurance, the provisions of Condition B. Concealment or Fraud and Policy Voidance apply.

44 C.F.R. Pt. 61, App. A(1), Art. VIII(G).  These terms provide the conditions under which an SFIP can be reformed, and "the guidelines are exclusive rather than illustrative," therefore providing the only means for reformation.  *Englande v. Bradshaw Ins. Agency*, Civ. A. No. 06-

8572, 2007 WL 2461683, at *5 (E.D. La. Aug. 22, 2007).

Consistent with the text of Article VIII(G), relevant case law holds that a property owner who fails to pay the requisite additional premium within thirty days loses the original policy limits. This Court has considered similar fact patterns in two cases: *Englande v. Bradshaw Ins. Agency*, Civ. A. No. 06-8572, 2007 WL 2461683, at *1 (E.D. La. Aug. 22, 2007) (Duval, J.), and *Connell v. Allstate Insurance Co.*, Civ. A. No. 06-4820, 2007 WL 4233830, at *1 (E.D. La. Nov. 28, 2007) (Duval, J.). In both cases, a WYO insurer had errantly calculated the premiums for the plaintiffs' respective properties due to incorrect flood elevation certificates. The insurers subsequently notified the plaintiffs that an additional premium payment would be due within thirty days, or the coverage would be correspondingly lowered. *Connell*, 2007 WL 4233830, at *2; *Englande*, 2007 WL 2461683, at *1. Plaintiffs in both cases did not make the required payments and subsequently suffered loses due to Hurricane Katrina. Plaintiffs sought reformation of their insurance contracts to the higher, original levels. However, this Court in both cases rejected these claims because the SFIP required strict construction and application. *Connell*, 2007 WL 4233830, at *3-4; *Englande*, 2007 WL 2461683, at *3. Because the plaintiffs received notice that an additional premium was due but failed to pay it, the terms of the SFIP barred the plaintiffs from seeking reformation for higher policy coverage. *Connell*, 2007 WL 4233830, at *4; *Englande*, 2007 WL 2461683, at *5.

Here, the strict requirements of the SFIP demand the same conclusion as in *Connell* and *Englande*. Fidelity properly reformed the contract to the lower policy coverage limits when Plaintiffs failed to pay the additional premiums within thirty days after Fidelity realized there was an calculation error and notified the Plaintiffs of that error. There is no other applicable

provision that would allow Plaintiffs to reform the contract in their favor after having elected not to pay the additional premiums. Accordingly, this Court must enforce the terms of the SFIP and refuse Plaintiffs' request to reform the contract.

Plaintiffs contend that, despite the SFIP's strict terms, they are entitled to a reform of the policy due to the representations of AAA's insurance agents. Essentially, this argument posits that Fidelity should be estopped from enforcing the terms of the SFIP because AAA's insurance agents suggested that the calculation may be incorrect. However, as observed by the Fifth Circuit, "[t]he Supreme Court has made clear that 'judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized.'" *Wright I*, 415 F.3d at 387 (quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)). Federal courts have repeatedly held that, despite incorrect assurances to customers by insurance agents and adjusters, the terms of the SFIP must be strictly applied. *See Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1343 (11th Cir. 2007) (denying equitable estoppel claim because "[e]quitably estopping Fidelity from raising the failure to file a proof of loss as a defense would allow the erroneous letter from Fidelity to alter the requirements for the disbursal of federal funds."); *Dawkins v. Witt*, 318 F.3d 606, 612 (4th Cir. 2003) (holding insurance adjuster's assurances that "FEMA was not concerned about the 60 day requirement [for filing proof of loss] with major disasters . . . does not rise to a level to justify estoppel against the government"). Even assuming that estoppel were available against the government, this case does not present the facts necessary to allow estoppel to apply. *See Shuford*, 508 F.3d at 1343 ("Even assuming for the sake of argument that equitable estoppel might be available for a claiming under a [SFIP], Shuford cannot establish 'affirmative and

9

egregious misconduct.'") (citation omitted).  Here, viewing the facts in the light most favorable to the Plaintiffs, Ms. Dufour and Ms. Daleo had some difficulty replicating the premium calculation during the August 4, 2005 meeting at AAA offices.  The agents said that they would be in contact with Mr. Holbrook regarding the premium calculations, although they never did contact him.  Mr. Holbrook attempted to contact Ms. Dufour and Ms. Daleo, even doing so on August 24th because it was the last day that Plaintiffs could pay the additional premium.  While Ms. Dufour and Ms. Daleo indeed may be guilty of bad customer service for failing to contact the Plaintiffs, their actions certainly do not rise to the level necessary to apply equitable estoppel against the government.  Indeed, courts have refrained from applying equitable estoppel against the government in cases where clear misrepresentations were made, whereas in this case Dufour and Daleo simply created confusion and failed to resolve that confusion.  *See Dawkins*, 318 F.3d at 612 (refusing to apply equitable estoppel against FEMA where insurance adjuster incorrectly asserted that 60-day rule for filing proof of loss would not apply to plaintiffs).  Accordingly, summary judgment must be granted in favor of Fidelity.

**B.  AAA's Motion for Summary Judgment**

As to Defendant AAA, Plaintiffs assert that AAA breached its fiduciary duty to the Plaintiffs to obtain the requested insurance.  "An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance."  *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730 (La. 1973).  "The client may recover from the agent the loss he sustains as a result of the agent's failure to

procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage." *Id.* at 730-31; *see Roger v. Dufrene*, 613 So.2d 947, 948 (La. 1993) (citing *Karam*). "To recover for losses resulting from such failure, the plaintiff must establish: 1) an undertaking or agreement by the insurance agent to procure insurance; 2) failure of the agent to use reasonable diligence to obtain insurance and to notify the client promptly of the absence of coverage; and 3) actions by the agent which warranted the client's assumption that he was insured in the amount of the desired coverage." *Id.* (citing *Opera Boats, Inc. v. Continental Underwriters, Ltd.*, 618 So.2d 1081, 1085-86 (La. Ct. App. 1993)).

    In the present case, Plaintiffs certainly can prove that there was an agreement between them and AAA for the procurement of flood insurance for their home; indeed, there is no dispute on this point. This Court also finds that there is substantial issues of fact concerning whether AAA's agents used reasonable diligence to obtain insurance and whether their actions warranted the Plaintiffs' assumption that they had the coverage that they requested. Plaintiffs here received notice promptly from Fidelity, the WYO insurer, that an additional premium was needed. At the August 4, 2005 meeting between Mr. Holbrook and AAA agents Ms. Dufour and Ms. Daleo, the agents informed him that he "owed more money." Deposition of Ronald Holbrook, AAA Mot., Ex. A at 102. However, the agents then attempted to justify this adjustment in the premium to Mr. Holbrook by reiterating the calculations. The agents failed to replicate the calculations though, instead finding that the there should be no difference in premium when the new elevation certificate was used for the calculations. The agents told Mr. Holbrook that they would seek to determine the reason for the difference in premium and get back to him with the results.

Accordingly, after having received clear instruction from Fidelity regarding the need for additional payment, Ms. Daleo and Ms. Dufour confused Mr. Holbrook, and certainly there is a possibility that he relied on their representations that the premium calculations were incorrect.

Defendant AAA cites *Opera Boats, Inc. v. Continental Underwriters, Ltd.*, 618 So.2d 1081, 1085-86 (La. Ct. App. 1993) to support its assertion that summary judgment should be granted where a plaintiff receives prompt notice that the requested insurance could not be procured. In *Opera Boats*, the plaintiff had been advised that he had breach of warranty coverage included in his premium for marine hull insurance by one of his insurance agent's employees. Plaintiff thereafter lost two of its vessels and sought to recover under the breach of warranty insurance. *Id.* at 1083. Their insurance company denied the claim, asserting that no breach of warrant insurance had been purchased by the plaintiff, and accordingly plaintiff sued. The *Opera Boats* court denied plaintiff's claim, however. It explained that, while plaintiff indeed did receive verbal assurances over the phone from the insurance agency's employee, the agency thereafter acknowledged the misunderstanding in a letter to the plaintiff, and thereafter was "consistent, at least through the time of the loss of the vessels, in its position that breach of warranty coverage was not included in the policy and would not be added without the payment of an additional premium." *Id.* at 1087.

*Opera Boats* is inapposite to the present case. While the insurance agency in *Opera Boats*, after admitting the misunderstanding, was "consistent" in asserting that breach of warranty insurance was not included in the plaintiff's policy, here this misunderstanding occurred when the Plaintiffs sought further clarification to the letter demanding the additional premium payment. Had the AAA agents only informed Mr. Holbrook that he owed more

12

money, then no confusion would have resulted.  However, instead they attempted to recalculate the premium based on the new elevation certificate, and they found that they reached the same premium payment.  They then told Mr. Holbrook that they would contact him regarding this calculation.  Viewing the facts in the light most favorable to the Plaintiffs, a reasonable jury could conclude that AAA agents had induced Plaintiffs to rely on them to recalculate his premium payment, and indeed Mr. Holbrook repeatedly contacted AAA's agents to seek the resolution of the matter.  The AAA agents never responded to Mr. Holbrook or otherwise contacted him, facts which could prompt the conclusion that they did not exercise reasonable diligence in resolving this confusion that they appear to have created.  As there are material issues of fact that could lead a jury to find in Plaintiffs' favor against AAA, this Court will deny AAA's motion for summary judgment.

### III.  CONCLUSION

For the reasons stated herein, accordingly,

**IT IS ORDERED** that Defendant AAA's Motion for Summary Judgment (Rec. Doc. 9310) is **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant Fidelity's Motion for Summary Judgment (Rec. Doc. 9311) is **GRANTED**; and

**IT IS FURTHER ORDERED** that all of Plaintiffs' claims in the above-captioned matter against Defendant Fidelity are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana, this ___19th___ day of August, 2008.

_____
**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT JUDGE**