1            UNITED STATES DISTRICT COURT

2            EASTERN DISTRICT OF LOUISIANA

3

4

5

IN RE:  KATRINA CANAL BREACHES   *    Docket 05-CV-4182-K
6           CONSOLIDATED LITIGATION  *
                                     *    New Orleans, Louisiana
7    * * * * * * * * * * * * * * * * *
                                     *    January 23, 2008
8    PERTAINS TO:                    *
                                     *    2:00 p.m.
9    ALL LEVEE CASES                 *
                                     *
10   * * * * * * * * * * * * * * * * *

11

12            TRANSCRIPT OF PROCEEDINGS BEFORE THE
               HONORABLE STANWOOD R. DUVAL JR.
13              UNITED STATES DISTRICT JUDGE

14

15   APPEARANCES:

16

17   For the Plaintiffs:        Sher Garner Cahill Richter
                                  Klein & Hilbert
18                              BY:  PETER L. HILBERT JR., ESQ.
                                     JOHN T. BALHOFF II, ESQ.
19                              909 Poydras Street, 28th Floor
                                New Orleans, Louisiana 70112

20
21   For the Plaintiffs:        Frilot Partridge Kohnke & Clements
                                BY:  KERRY J. MILLER, ESQ.
22                              1100 Poydras Street, Suite 3600
                                New Orleans, Louisiana 70163

23
24   For the Plaintiffs:        Lobman Carnahan Batt
                                  Angelle & Nader
25                              BY:  JONATHAN B. WOMACK, ESQ.
                                400 Poydras Street, Suite 2300
                                New Orleans, Louisiana 70130

1    APPEARANCES:

2

3    For the Sewerage & Water        Christovich & Kearney
     Board of New Orleans:           BY:  KEVIN R. TULLY, ESQ.
                                          W. NICK DIETZEN IV, ESQ.
4                                    601 Poydras Street, Suite 2300
                                     New Orleans, Louisiana 70130
5

6    For the East Jefferson         Duplass Zwain Bourgeois Morton
     Levee District:                   Pfister & Weinstock
7                                    BY:  JOSEPH E. BEARDEN III, ESQ.
                                     3838 North Causeway Boulevard
8                                    Metairie, Louisiana 70002

9

     Official Court Reporter:       Toni Doyle Tusa, CCR, FCRR
10                                   500 Poydras Street, B-406
                                     New Orleans, Louisiana 70130
11                                   (504) 589-7778

12

13

14

15
     Proceedings recorded by mechanical stenography, transcript
16   produced by computer.

17

18

19

20

21

22

23

24

25

1        <u>PROCEEDINGS</u>

2        **(January 23, 2008)**

3              **THE DEPUTY CLERK:**  All rise.

4              Court is in session.  Please be seated.

5              **THE COURT:**  Good afternoon.  Thank you for showing up

6    this afternoon because it would have been rather fruitless this

7    morning.  We were busy until 12:30 with criminal stuff.

8              **THE DEPUTY CLERK:**  The first matter on the docket is

9    In Re: Katrina Canal Breaches Consolidation Litigation.  We are

10   dealing with the Sewerage and Water Board's motions to dismiss,

11   documents 9910, 10037, 10039, 10041, 10043, and 10115.

12             **THE COURT:**  Since the East Jefferson Levee District's

13   motion seems to be the same, we are going to take those up

14   together since the argument is basically the same.  Why don't

15   we call that one, as well, Sheena.

16             **THE DEPUTY CLERK:**  The East Jefferson Levee

17   District's motion to dismiss is record document 10201.

18             **THE COURT:**  Okay.  I don't know if you have talked

19   about who is going to take the laboring oar here because the

20   motions are, in essence, the same.  To put it succinctly, it's

21   a question whether I'm going to take the so-called "minority

22   view" as espoused by the Second Circuit or the so-called

23   "majority view," such as it is, espoused by the Sixth and the

24   Ninth.  I'm looking at the *Wachovia* case.  I'm not sure it's

25   clearly espoused by the D.C. Circuit, 1980.

1          Only one circuit, the Second Circuit, has
2     clearly held that it does not foster the purposes of *American*
3     *Pipe* to state that, in essence, the party who files after a
4     class action has been filed, as part of the putative class,
5     forfeits their rights of suspension, as enunciated under
6     *American Pipe*, when they bring suit on their own behalf; if
7     they bring it after the tolling period, they are prescribed.
8          The Second Circuit says one thing.  Clearly, the
9     Sixth and the Ninth say something else.  Apparently, the
10    majority of the district courts have held that the tolling
11    period is forfeited.  So the question is:  Is this Court going
12    to go with the majority view or the minority view, as I'm
13    characterizing it?  What's more persuasive to me?  That stated,
14    you can commence your arguments.
15         **MR. TULLY:**  Good afternoon, Your Honor.  Kevin Tully
16    and my associate, Nick Dietzen, on behalf of the Sewerage and
17    Water Board.
18         Your Honor, I'm not going to repeat everything I
19    have said in writing to you.  Obviously, it is going to be your
20    decision.  The District of Columbia, you're correct,
21    Your Honor --
22         **THE COURT:**  And maybe the Supreme Court because it's
23    clearly a circuit split.
24         **MR. TULLY:**  Actually, Your Honor, I think it's one of
25    the more interesting things I've run across in a long time

1    because, instinctively, you could see both arguments.  I

2    concede that.  I will point out, Your Honor, the District of

3    Columbia, that was not the basis of their holding except in

4    footnote 7 of that case.

5               THE COURT:  I was rummaging through it this morning.

6               MR. TULLY:  Yes, Your Honor.  What they say in

7    footnote 7 is -- the appellant had made that argument and they

8    dispensed with it in a footnote.  I won't read the footnote to

9    you, but it's footnote 7, Your Honor, of the opinion.  It was a

10   third argument the appellants had made and they addressed why

11   it didn't apply, why the tolling provision didn't apply.

12               What they said was it didn't apply because the

13   plaintiffs, they didn't await for class certification, they

14   didn't await for class certification opt-out; they had chosen

15   to file their own lawsuit nine months before certification was

16   decided and, therefore, they forfeited any rights they would

17   have had under *American Pipe*.  So while it may not be part of

18   the First Circuit's holding, it was an argument that was

19   advanced and the First Circuit addressed.  Your Honor is

20   correct, they just talk about it in a footnote as an argument.

21   It wasn't necessary for the holding.  I think it's fair to say

22   the First Circuit, reading their footnote, would be in

23   agreement with the Ninth and the Sixth, Your Honor.

24               THE COURT:  Okay.

25               MR. TULLY:  Your Honor, looking back doing the

 1    reply -- and I'm sorry I didn't get it to you-all yesterday.

 2    Frankly, we were thinking perhaps everything was -- yes, sir,

 3    the reply came in yesterday.  I did it yesterday afternoon.

 4                    I guess, from a public policy point of view,

 5    Your Honor -- and I'm not trying to take Peter's argument away

 6    from him, but it seems to me the majority view -- and I'll keep

 7    calling it the majority view because that's the view I'm

 8    espousing, and I think by numbers we win on that.  In rereading

 9    the cases, I was trying to find a theme of the majority cases.

10    The majority's theme, it seems to me, Your Honor -- and this is

11    just my view of the case law.  The majority's theme is a focus

12    on the public policy rationale for not allowing someone who

13    opts out of a class action beforehand -- in other words,

14    decides to go their own way.  The public policy rationale, it

15    seems to me the majority view is to focus on the court,

16    Your Honor.

17                    The courts all talk about the concept of

18    judicial efficiency, and that is one of the foremost purposes

19    of a class action, so Your Honor isn't going to deal with

20    395,000 individual claims asserted by the citizens of

21    New Orleans.  That's the point.  When Your Honor rereads the

22    cases with this in mind, I think you will see that to be the

23    underlying theme --

24              **THE COURT:**  I agree that is them.

25              **MR. TULLY:**  -- it's the court.  What it is, it's a

1   very broad policy.  It's a broad policy that we do not want to

2   waste judicial resources with endless copycat cases brought

3   before this Court decides whether something should be correctly

4   certified as a class action or not.  That public policy is very

5   important not only for the resources of this Court -- and,

6   Your Honor, I think I can say, having been in your Court a

7   number of times on the Katrina litigation, Your Honor is quite

8   busy as it is and doesn't really need another 150, 200, however

9   many suits are going to start coming down the pike on this

10  basis.

11              So if you look at it that way, I think

12  conceptually the majority view is right, if you're going to

13  focus on the court and the purpose for having a class action

14  procedure in the first place.  Plus, it also should focus on

15  the parties because, quite frankly, this litigation is

16  expensive for everybody involved.  Now, if Your Honor holds to

17  the contrary, I guess I will be running around drafting 150

18  more answers, electronically filing them.  There's just a lot

19  of busywork involved in this.

20              The minority view, it seems to me, reading the

21  cases again, they focus on the historic concept of statutes of

22  limitations and prescription being:  Well, as long as the

23  defendant got adequate notice, it's no harm, no foul.  I think

24  that's the theme of those cases.

25              "Why is the defendant complaining?  He already

1    knew."  I'm not trying to anticipate what Peter is going to

2    say, but he will say, "Well, what is Mr. Tully complaining

3    about?"  I think they made it one of the things.  "He knew

4    perfectly well.  All my clients lived in Orleans Parish.  It's

5    no surprise because they were in the class action."  Well, of

6    course, they opted out of the class action.  They are not in it

7    anymore.  Certainly, I cannot argue that I am surprised because

8    there happens to be more people.  I don't even know how many

9    people would be in the putative class.  The population of

10   New Orleans is still not very clear to me.

11            So I understand that argument in the concept of

12   old-fashioned prescription.  But my suggestion, Your Honor, in

13   weighing which of the public policies to adopt, quite frankly,

14   I think for the purposes underlying a class action and for the

15   very important purpose of conserving judicial resources, the

16   majority view is the better view from the perspective of the

17   Court.  That, to me, if I were tipping the balance -- and I'm

18   not being presumptuous enough to suggest I'm the judge.  But

19   were I the judge, that would be the balance that would tip

20   because conserving judicial resources is to me a fundamentally

21   important public policy decision to make.

22            In looking at the two stream of cases, I suggest

23   to the Court that that -- assuming, intellectually, you could

24   see both sides of the coin, but that tips the balance in favor

25   of the majority opinion.  On that basis, I would urge the Court

1    to adopt the majority view and hold that these plaintiffs

2    cannot take the benefit of the class action tolling that

3    *American Pipe* provides when they have consciously chosen to

4    pursue their own litigation in this Court.  With that said,

5    Your Honor, I can answer any questions.

6              **THE COURT:**  No.  You have set it out.  Thank you very

7    much.

8              **MR. TULLY:**  Thank you very much, Judge.

9              **MR. BEARDEN:**  Joseph Bearden for the East Jefferson

10   Levee District.  I just have a few things to say that would

11   follow up.

12             Obviously, the East Jefferson Levee District

13   believes that the appropriate course of action here is for

14   these actions to be deemed prescribed.  I don't want to repeat

15   the arguments Mr. Tully made, but obviously we have four

16   reasons why we believe the plaintiffs' arguments fail to

17   support the position of the majority of these cases.

18             First, the plaintiffs don't address the stated

19   efficiency goals of *American Pipe* and *Crown, Cork*, the other

20   district court cases.  In their memos they say that the

21   lawsuits were filed to protect their interests, but they don't

22   explain how their interests weren't protected by the pending

23   class actions.

24             We can't quite figure out exactly what they gain

25   by filing these lawsuits.  Had the Court decided class

1  certification, they could opt out later.  If the Court denied

2  class certification, they could file their own individual

3  lawsuits under the tolling provisions provided by

4  *American Pipe*.  So what were they worried about?  Were they

5  worried about missing notice of the class certification

6  decision and then not receiving the benefits of the tolling

7  provision if they filed too late?  So there's a fundamental

8  flaw in their argument here of what are the efficiency reasons

9  for allowing them to file these cases now.

10          The second point is they say that they're still

11  class members.  In one of the memos, they specifically point

12  out they have not opted out of the class yet.  Your Honor, the

13  *Hanford Nuclear* decision specifically states that filing a case

14  like this indicates opting out.  If this isn't opting out, what

15  is opting out?  If they still are a member of the class, all

16  they have done is filed the type of interventions that

17  *American Pipe* and *Crown, Cork* were designed to prohibit from

18  being filed.

19          Third, they cite *Schimmer v. State Farm* as

20  distinguishing *Wyser-Pratte*.  *Wyser-Pratte* is one of the

21  circuit court decisions that specifically come out and say that

22  these types of cases are prescribed.  In the quote at the

23  bottom of page 7 of one of the memos -- this one was filed by

24  Omega -- it says:

25          "If the putative class member knew about the

1   class litigation but elected to proceed separately, then
2   disallowing application of the class action tolling penalizes
3   him for his informed decision.  On the other hand, if the
4   putative class member did not know about the class litigation
5   and simply commenced a separate action for purposes of
6   protecting his rights, the disallowing application of class
7   action tolling penalizes him for being aware of the class
8   action litigation and awaiting a ruling on class
9   certification."
10          Your Honor, this logic is fundamentally flawed.
11  The first part, "If the putative class member knew about the
12  class litigation, but elected to proceed separately," all they
13  are doing are filing the duplicative lawsuits that *American*
14  *Pipe* and *Crown, Cork* are designed to prohibit from being filed.
15          **THE COURT:**  Where do you see that in *American Pipe*?
16          **MR. BEARDEN:**  I'm sorry?
17          **THE COURT:**  I've got it right here.  Where do you see
18  in *American Pipe* that the rationale of the case is to inhibit
19  other suits from being filed?
20          **MR. BEARDEN:**  *Crown, Cork* interpreting *American Pipe*.
21          **THE COURT:**  All right.
22          **MR. BEARDEN:**  The second portion, "On the other hand,
23  if the putative class member did not know about the class
24  litigation and simply commenced a separate action for purposes
25  of protecting his rights," Your Honor, if that's the case, all

1    the plaintiff has done is filed a lawsuit that he should have

2    known or already knew was prescribed; because he didn't know

3    about the class litigation, so he can't get the benefits of the

4    pending class litigation, so he filed a lawsuit that he already

5    knew was prescribed.  The logic in *Schimmer* is flawed and

6    plaintiffs rely upon it.

7                   Finally, Your Honor, the plaintiffs talk about

8    relying upon this Court's -- I believe it was August of 2007 --

9    admonition to protect your interests and file your own

10   lawsuits.  Your Honor, in August of 2007, these cases were

11   already prescribed.  Under the *American Pipe, Crown, Cork*

12   doctrines and circuit court decisions interpreting them, these

13   cases were already prescribed.

14              **THE COURT:**  You mean when I was talking about the

15   Federal Tort Claims Act or the AEA?

16              **MR. BEARDEN:**  One of the memos -- I believe it's

17   Omega's -- says, "The individual suits were filed by Omega in

18   response to the advice of the Court."  This is roman numeral V,

19   page 8, of the Omega memo.  It cites an August 24, 2007 order

20   where the Court said -- and I'm quoting -- "By this order, all

21   claimants who have not filed suit are put on notice that the

22   validity of this order may well be challenged."

23              **THE COURT:**  That was in reference to the Federal Tort

24   Claims Act and the AEA and there were two different

25   prescriptive periods.  It had nothing to do with -- in other

1   words, there's a different statute of limitations applying to

2   the federal government.  That has nothing to do with filing

3   suit against the East Jefferson Levee District or the Sewerage

4   and Water Board.

5           **MR. BEARDEN:**  Then plaintiffs' reliance upon it is

6   misplaced.

7           **THE COURT:**  I agree it has nothing to do with it.

8           **MR. BEARDEN:**  Thank you, Your Honor.

9       **MR. HILBERT:**  Good afternoon, Judge Duval.

10  Peter Hilbert and John Balhoff of Sher Garner for a number of

11  plaintiffs.  I think we have 82 separate cases.  Just for

12  convenience, I'll refer to them as the "Adler cases" since a

13  number of our plaintiffs are members of the Adler family.

14          Judge, as I understand the defendants' position,

15  they start with the *American Pipe* and the *Crown, Cork & Seal*

16  case, where the Supreme Court said, "A timely filed class

17  action suit during the pendency of class action litigation

18  tolls the statute of limitations."  From that point they hop to

19  the *Wyser-Pratte* line of cases where those courts, we are going

20  to submit to Your Honor, wrongly interpreted *American Pipe* and

21  *Crown, Cork* and came up with this judicial efficiency theory.

22          As Your Honor knows, the *American Pipe* and the

23  *Crown, Cork* case said nothing at all about a plaintiff filing a

24  suit during the pendency of a class action suit, whether that

25  case is time barred or not.  It is totally in opposite to that,

1    has nothing to do with that particular scenario.  The

2    defendants point to you the *Wyser* cases, where the courts

3    enunciated this judicial economy theory, and said that if you

4    file a separate suit during the pendency of a timely filed

5    class action case but after the statute of limitations has

6    otherwise passed and before the court decides class action

7    issues, your case is prescribed, it's toll barred.

8         **THE COURT:**  I note that the *Wyser-Pratte* case, which

9    is 413 F.3d 553, the Sixth Circuit case, referred to the

10   district court case in *WorldCom*.

11        **MR. HILBERT:**  Right.  Exactly.

12        **THE COURT:**  However, that case was decided and filed

13   June 28, 2005 -- "that case" meaning *Wyser-Pratte* -- whereas

14   the Second Circuit overturned that ruling on July 26, 2007.  So

15   it apparently --

16        **MR. HILBERT:**  Exactly.  That's exactly where I was

17   going.

18        **THE COURT:**  That was in your brief.

19        **MR. HILBERT:**  The *WorldCom* case, however, looked at

20   the *Wyser-Pratte* line of cases and said the *American Pipe* and

21   *Crown, Cork* decisions were not trying to foster this judicial

22   efficiency theory that *Wyser-Pratte* latched on to.  What it

23   says is:

24             "While reduction of the number of suits may be

25   an incidental benefit of the *American Pipe* doctrine, it was not

1   the purpose of *American Pipe* either to reduce the number of

2   suits filed or to force individual plaintiffs to make an early

3   decision whether to proceed by individual suit or rely on a

4   class representative.  Nor was the purpose of *American Pipe* to

5   protect the desire of a defendant not to defend against

6   multiple actions in multiple forums.  The *American Pipe* tolling

7   doctrine was created to protect class members from being forced

8   to file individual suits in order to preserve their claims.  It

9   was not meant to induce class members to forego their rights to

10  sue individually."

11         **THE COURT:**  I did note that the Ninth Circuit in

12  *In Re: Hanford Nuclear Reservation Litigation*, which was filed

13  August 14, 2007, took what we are calling the majority view,

14  the *Wyser-Pratte* view, but I don't recall it discussing the

15  Second Circuit's opinion in *WorldCom*.

16         **MR. HILBERT:**  Correct.

17         **THE COURT:**  It may have, but I don't think it did.

18         **MR. HILBERT:**  I think you are absolutely right on

19  that.

20         **THE COURT:**  It clearly is contrary to the

21  Second Circuit.

22         **MR. HILBERT:**  Right.  Absolutely.  Then, Your Honor,

23  if you take this judicial efficiency theory and apply it to the

24  very unique situation in Katrina, this is what would have

25  happened.  We have a timely filed suit of the *Berthelot v.*

1    *Boh Bros.* class action suit against the Sewerage and Water

2    Board and others.  It's filed in June of 2006.  We have the

3    issue with suits against the government, where the plaintiffs

4    had to go through the administrative proceeding first.  They

5    had to file their claims.  And after the claims weren't acted

6    upon by the federal government, then there was 180 days for the

7    claimants to file their suit, which was past the first

8    anniversary when all that would have occurred.

9            This is what would have happened.  Applying the

10   defendants' judicial economy theory, the plaintiffs would have

11   been forced to file suit against the Sewerage and Water Board

12   and other similar Louisiana tort defendants within the first

13   anniversary, and then after the Form 95 issues had worked

14   themselves out then come right back and file a second suit

15   against the government.  So where is the judicial efficiency in

16   this case, applying what the defendants want you to do?  Two

17   suits would have been filed.  It would have been absolutely

18   necessary for the plaintiffs to file two separate suits.

19           Now, let's take one step further and ask:

20   What's the primary policy of the statute of limitations?

21   Undoubtedly, it has to be to force plaintiffs to file timely

22   suits so that the defendants are on notice that suits are being

23   filed, claims are being filed against them, give the defendants

24   a timely opportunity to preserve evidence and start forming

25   their defenses.  These defendants had that opportunity when

1   *Berthelot* was timely filed, and the proposed class in *Berthelot*

2   is obviously big enough to include the Adler plaintiffs.

3            So applying what they just presented to you, no

4   judicial efficiency would have been realized in this Court, and

5   these defendants cannot really show you how they have been

6   detrimentally prejudiced in this case.  The most Mr. Tully

7   could say is that electronically he would have to file another

8   answer.  There's no prejudice in this case.

9            We submit that if you look at *American Pipe* and

10  the *Crown, Cork & Seal* case, the Adler cases were timely filed

11  and that the better side of the argument is that the *Berthelot*

12  case gave a legal tolling to the Adler plaintiffs and their

13  cases are timely.

14          **THE COURT:**  Thank you, sir.

15          **MR. HILBERT:**  Thank you, Judge.

16          **THE COURT:**  Do you want just a couple minutes?

17          **MR. TULLY:**  Yes, Your Honor.  Just a few points.

18  Like Your Honor, I think this is a very fascinating area of

19  law.  I wanted to point out to the Court -- for reasons I don't

20  know, and I could stand to be corrected.  I kept thinking, in

21  reading the Second Circuit's opinion in *WorldCom*, they would

22  discuss the other view.  I can't find where they recognize that

23  there was a contrary view to theirs.  I could be mistaken, but

24  I don't see where they discuss --

25          **THE COURT:**  Hold on.  I have the case right here.

 1          **MR. TULLY:**  I just couldn't find it.  Maybe I didn't

 2    catch it, because I don't always catch everything.  It was just

 3    curious to me because it seems like it's such an interesting

 4    issue.

 5          **THE COURT:**  I just had it out.

 6          **MR. TULLY:**  The discussion starts and they go on

 7    and -- whether they overturned the district court or not, one

 8    of the majority circuits that liked the district court's things

 9    said, "We find the reasoning persuasive."  Now, they adopted

10    that reasoning, and I think it's persuasive.  Whether the

11    Second Circuit ultimately decided it wasn't, we know that one

12    circuit, quoting the district court, thought it was persuasive

13    and that's the law of that circuit.  Whether the Second Circuit

14    agrees or not, it was still persuasive and it still is

15    persuasive.

16          The idea -- and Peter hit upon it, and I'm just

17    curious what he means by this.  He keeps saying that his poor

18    plaintiffs would have had to make an early decision to file

19    suit.  Well, in Louisiana we have a year to file suit against

20    somebody, so I don't know why this is different.  He said they

21    would have been forced to file an early suit.  I dare say, as

22    good a lawyer as Peter is, I bet he hasn't learned anything

23    about Hurricane Katrina in this additional year that he didn't

24    know in the prior year, when he could have counseled his

25    clients to file suit.

1          The issue before this Court isn't whether

2    *American Pipe* and *Crown* prevent someone from filing an

3    individual suit.  I would agree with Peter.  I see nothing in

4    that opinion that says if Kevin Tully wants to file his own

5    suit against the world over Katrina he --

6          **THE COURT:**  Within the appropriate statute of

7    limitations.

8          **MR. TULLY:**  Within the appropriate statute of

9    limitations.

10          **THE COURT:**  I understand.

11          **MR. TULLY:**  That's where it is.  In other words,

12    "Mr. Tully, if you don't like the way Joe Bruno is handling

13    that class action, there is nothing stopping you from filing

14    your suit.  Judge Duval's courtroom is open to you," but you

15    have to do it within the applicable time.  You can't say, "I'm

16    not going along with Mr. Bruno anymore.  I'm going on my own.

17    But by the way, I want to use Mr. Bruno's timely filing to

18    protect my untimely filing."  That's the underlying issue.

19          You know, Your Honor, I talked about that I

20    would have to file more answers.  That's going back to the

21    unfairness and the notice to the defendant, and Peter went back

22    to that, but it isn't just the burden on me.  In the scheme of

23    things, I get paid for that.  I'm not complaining.  It goes

24    back to the Court.  You have to decide as a public policy

25    reason -- and that's what I think we are really going down to.

1    That's what I suspect Your Honor is going to focus on and I

2    suspect ultimately the Fifth Circuit is going to focus on.  We

3    may be making arguments and law that the Supreme Court, I would

4    think, is ultimately going to decide on.

5                    As a matter of public policy, it seems to me --

6    and I said it before and I'm going to say it again -- you have

7    two, I think, intellectually interesting approaches to a

8    question I frankly never thought existed.  You could make good

9    arguments for each side.  The one extra pebble to me that is

10   going to tip it or should tip it in favor of what I call the

11   majority opinion is the notion of judicial economy and one of

12   the underlying principles behind a class action.  To me, all

13   intellectual arguments aside, that little pebble extra tips the

14   balance in favor of ruling with the majority.

15            **THE COURT:**  Thank you, sir.

16            **MR. TULLY:**  Thank you, Your Honor.

17            **MR. HILBERT:**  Your Honor, could I have just --

18            **THE COURT:**  He gets the last word since it's his

19   motion.  He will have to talk again, so we are going to have to

20   wrap it up.

21            **MR. MILLER:**  May I say something, Your Honor?  They

22   have filed motions against my clients as well.

23            **THE COURT:**  Again, they get the last word.

24            **MR. MILLER:**  Sure.  Can I make a couple points?

25            **THE COURT:**  Go ahead.

1          **MR. TULLY:**  Your Honor, I didn't mean to cut him off.

2          **THE COURT:**  I understand.

3          **MR. TULLY:**  I apologize.

4          **MR. MILLER:**  Kerry Miller on behalf of Murphy

5    Building Corp., Rault Resources, and Joe Rault, Your Honor.  We

6    would like to adopt what Mr. Hilbert said on behalf of his

7    plaintiffs.  There are a couple points we wanted to make,

8    though, Your Honor, and one is the application of Louisiana

9    prescription law to this particular issue against these

10   defendants.  It's something that was identified in all of our

11   memoranda on this side of the aisle.  We do think that

12   Louisiana prescription law would apply with respect to the

13   claims the plaintiffs have against the Levee District and the

14   Sewerage and Water Board.

15          All the cases, I think, that we have been

16   discussing -- *WorldCom, Wachovia*, what have you -- the

17   substantive law in those cases is federal securities law and so

18   those would have been clearly 1331 jurisdictional cases.  Here

19   we think that under the *Erie* doctrine you look to Louisiana

20   prescriptive law.  Article 595 of the Code of Civil Procedure

21   sets forth that there's no way that prescription could have

22   run.  So that's an issue, Your Honor.

23          The other issue that was made in their reply

24   brief last night deals with whether or not filing suit during

25   the pendency of a class action in which you are a member opts

1    you out.  I think the majority of cases on a whole different

2    issue says no.  You have to opt out to opt out; filing a

3    lawsuit doesn't.  They cite one case that says that it does,

4    but there are cases that hold otherwise.

5              Lastly, Your Honor, just to recap one of Peter's

6    points, and that is that proper joinder of the claims by the

7    plaintiffs against the United States and these defendants --

8    there's been no allegation there's improper joinder, so in fact

9    this is the most efficient vehicle to bring these claims,

10   Your Honor.

11             THE COURT:  Thank you, sir.

12             I'll let you speak to that and it will be the

13   last word.

14             MR. TULLY:  Again, it may be the lateness,

15   Your Honor, of my filing reply.  If you haven't seen it, I

16   apologize.  I think the discussion of *Erie* --

17             THE COURT:  I know you did discuss that.

18             MR. TULLY:  -- it's irrelevant.  I reread every one

19   of the complaints -- not every one of the individual complaints

20   Peter filed, but Murphy and everybody else.  Nowhere do they

21   allege diversity jurisdiction.  That's not a basis for the

22   jurisdiction they raise; the state law claims they raise under

23   supplemental jurisdiction.  I cited *Hanna v. Plumer* and the

24   progeny.  I agree with him that Louisiana prescription law

25   applies and it's one year, but he says when you look to

1   Louisiana law and then he harkens to the Louisiana Code of

2   Civil Procedure on class actions.  That is a procedural law

3   and, Your Honor, *Hanna v. Plumer* and all the progeny of those

4   cases, that simply doesn't apply.  We are looking to the class

5   action provisions of --

6             **THE COURT:**  Rule 23.

7             **MR. TULLY:**  -- Rule 23 of the Rules of Civil

8   Procedure.  So I think he is making a non sequitur argument on

9   that even if *Erie* had some application to this.

10            Your Honor, addressing the issue of against the

11  United States, the fact of the matter is if they believe they

12  needed to file -- in fact, some might say that if the

13  government hasn't responded to their Form 95 they may not even

14  have to file suit yet.  That is perhaps a discrete issue here.

15  If they thought that, in light of whatever discussion there

16  was, that they needed to file their own individual suit against

17  the United States -- assuming that they had gotten their 95

18  rejection back -- there's nothing stopping them from filing a

19  suit against the United States.  They could have filed this

20  suit against the United States without adding everyone else.

21  That, to me, is they're piggybacking.  They are saying, "Well,

22  okay, we want to use that as our excuse."  Frankly, Your Honor,

23  that's an issue, but I don't think that's the issue at hand.

24            Going back, the rule you are going to make --

25  assuming the Fifth Circuit agrees with you and the

1    Supreme Court agrees with the Fifth Circuit -- is going to
2    apply to all class actions henceforth in all permutations.
3    There are cases where you might have a longer statute of
4    limitations against one defendant and not the other.  Those are
5    all permutations that we are going to deal with.  The fact of
6    the matter is, the simple issue before us is:  In the interest
7    of the class action proceeding and this Court's resources, what
8    is the better rule to apply?
9              As I keep repeating myself -- and I hate to do
10   it, but I'm going to do it one more time.  That pebble, I
11   believe, weighs in favor of the majority intellectual view
12   versus the minority intellectual view and I would urge the
13   Court to adopt that view.
14         **THE COURT:**  Thank you.  Thank you for your arguments.
15   I'm going to make a ruling from the bench and it's going to be
16   a rather straightforward ruling.
17             I agree that this is a policy decision.  I
18   further agree that it appears the majority of courts that have
19   addressed this have held that when a putative plaintiff files
20   its own suit after the applicable prescriptive period that the
21   tolling period enunciated in *American Pipe* is lost or forfeited
22   some say.  However, the Court does not see embedded in
23   *American Pipe* that policy, which is the Supreme Court decision,
24   or in the *Crown* case mentioned by the parties as well.
25             The Court is, by virtue of its oath, bound to

1   follow Supreme Court precedent; that being absent,

2   Fifth Circuit precedent; and, of course, upon all of that

3   superimposed the will of Congress.  Well, the will of Congress

4   is not clearly enunciated in Rule 23.  It's been explicated by

5   the Supreme Court in *American Pipe*.  I think this is obviously

6   something that certainly warrants appeal.  The circuit court is

7   going to make the ultimate decision and perhaps the

8   Supreme Court, since there is a circuit split, no question.

9                Let me give you my reasons.  One, I do not see

10  the notion of forfeiture embedded in *American Pipe* and *Crown*.

11  The notion of forfeiture really comes, as counsel for

12  defendants so eloquently put it, in judicial economy.  It is

13  certainly not economical and not efficient judicial policy to

14  allow a plethora of suits to be filed after a class action is

15  filed.  It becomes unwieldy.  It defeats the purpose of the

16  class action.

17               However, it is also the individual right to look

18  and see how the class action is going and not be particularly

19  satisfied with it.  There may be individual nuances or

20  permutations that don't quite "gee and haw" with the class.  A

21  person may make a decision to file the suit with the

22  understanding that that person has been protected by virtue of

23  *American Pipe* until the suit is filed and the statute of

24  limitations, whatever it may be, has been tolled.

25               It seems counterintuitive to me that if

something is tolled it can be forfeited.  We are not dealing

with the concept of interruption of prescription, which is

discussed in Louisiana law, but suspension.  So how do you

unsuspend it?  It seems to me that if it's tolled, it's tolled.

Unless Congress would speak to it clearly or the Supreme Court,

I'm not sure where I, as a district court, have the power to

say, "You just forfeited these rights, but I do it because I

don't like the way my docket is."  That's simply not enough for

me to throw somebody out of court that may have thought they

were protected, especially since there's no Fifth Circuit law

on this.

        So I'm going to adopt what I will call the

minority view, and that certainly will help the defendants on

their appeal since this Court is adopting the minority view

rather than the majority view, perhaps.  I feel that if I'm

going to make any kind of policy decision -- which I really, as

a district court, certainly try not to do -- it would be my

policy that, unless I have a clear mandate, I'm not going to

have somebody forfeit their rights unwittingly by filing suit.

        Now, insofar as the management of my docket, I

can issue a stay; simply, all tagalongs, if they are filed,

they are stayed and no action can be done.  I have issued a

stay, by the way, a day ago or so.  I'm going to stay these

things because I think counsel has a point.  I can't manage all

of these cases.  So I'm going to stay them, with the idea that

1   someone, if they want to file something, can get permission

2   from the Court, and it has to be good cause.  Otherwise, we are

3   going to go with the class actions in Levee and MRGO as it is

4   right now.

5            I might say, defense counsel, you made a good

6   argument and a good point.  You have a lot of case law on your

7   side.  I just have difficulty with the concept of forfeiture of

8   a suspension.  If the Supreme Court says their right is

9   suspended, I don't know how it's unsuspended by the filing of

10  suit.  That's a trap for the unwary that I'm not willing to do

11  just in the name of judicial economy.

12           To quote from the Second Circuit, which is the

13  only circuit that has talked about this that agrees with the

14  plaintiffs -- and I happen to be agreeing with it.  It is the

15  minority view.  In the *WorldCom Securities Litigation*,

16  496 F.3d 245 (2nd Cir. 2007), the court stated:

17           "This Court has not yet faced a question whether

18  the tolling required by *American Pipe* for members of the class

19  on whose behalf a class is filed applies also to class members

20  who filed individual suits before class certification was

21  resolved.  We now conclude that it does.

22           "The theoretical basis on which *American Pipe*

23  rests is the notion that class members are treated as parties

24  to the class action 'until and unless they receive notice

25  thereof and chose not to continue.'  *American Pipe*,

1   414 U.S. 551, 94 S.Ct. 756.  Because members of the asserted

2   class are treated for limitation purposes as having instituted

3   their own actions, at least so long as they continue to be

4   members of the class, the limitations period does not run

5   against them during that time.  Once they cease to be members

6   of the class -- for instance, when they opt out or when the

7   certification decision excludes them -- the limitation period

8   begins to run again on their claims.

9              "Nothing in the Supreme Court decisions

10  described above suggest that the rules should be otherwise for

11  a plaintiff who files an individual action before certification

12  is resolved.  To the contrary, the Supreme Court has repeatedly

13  stated that 'the commencement of a class action suspends the

14  applicable statute of limitations as to all asserted members of

15  the class who would have been parties had the suit been

16  permitted to continue as a class action.'  *Crown*, 462 U.S. at

17  353-54, 103 S.Ct. 2392 (quoting *American Pipe*, 414 U.S. at 554,

18  94 S.Ct. 756).  We see no reason not to take this statement at

19  face value.

20             "It would not undermine the purposes of statutes

21  of limitations to give the benefit of tolling to all those who

22  are asserted to be members of the class for as long as the

23  class purports to assert their claims.  As the Supreme Court

24  has repeatedly emphasized, the initiation of a class action

25  puts the defendants on notice of the claims against them.

*See, e.g., American Pipe*, 414 U.S. at 554-55, 94 S.Ct. 756 (noting that the purposes of statutes of limitations 'are satisfied when ... a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also the number and the generic identities of the potential plaintiffs who may participate in the judgment'). A defendant is no less on notice when putative class members file individual suits before certification.  The Supreme Court explained that 'class members who did not file suit while the class action is pending could not be accused of sleeping on their rights,' *Crown*, 462 U.S. at 352, 103 S.Ct. 2392; the same is certainly true of class members who filed individual suits before the court decides certification.

"In concluding that the appellants could not benefit from *American Pipe* tolling, the district court stated that the goal of avoiding a 'needless multiplicity of actions' is undermined when class members file individual suits before a certification motion is decided.  The district court reasoned that the class members who wait to sue individually until after the class certification decision will be in a 'better position to evaluate whether they wish to proceed with their own lawsuit.'  Moreover, class members' desire to sue separately may 'evaporate' once they have a chance to assess the class representatives' performance.

1            "The district court may be correct that its

2    conception of the *American Pipe* rule would reduce the number of

3    individual suits filed by class members, but this is beside the

4    point.  While reduction in the number of suits may be an

5    incidental benefit of the *American Pipe* doctrine, it is not the

6    purpose of *American Pipe* either to reduce the number of suits

7    filed or to force individual plaintiffs to make an early

8    decision whether to proceed by individual suit or rely on a

9    class representative.  Nor was the purpose of *American Pipe* to

10   protect the desire of a defendant 'not to defend against

11   multiple actions in multiple forums.'  *Crown,* 462 U.S. at 353,

12   103 S.Ct. 2392.  The *American Pipe* tolling doctrine was created

13   to protect class members from being forced to file individual

14   suits in order to preserve their claims.  It was not to induce

15   class members to forego their right to sue individually."

16           I'm quoting from the New York case, *WorldCom*,

17   pages 254 and 255 of that case.

18           The only other case I will mention is a Colorado

19   case, *Shriners Hospitals for Children v. Quest Communications*

20   *International, Inc.  It's* a district court case, 2007 WL

21   2801494, out of Colorado.  The judge there has a thorough

22   discussion of *American Pipe* tolling.  I won't read all of that

23   into the record, but I note the case.  The one thing I wanted

24   to point out is this.  He does talk about the various line of

25   cases:

1          "The opposing view of this issue, which holds

2     that *American Pipe* tolling does not apply when a plaintiff

3     files a separate suit before a decision has been made on class

4     certification, has been adopted by several district courts and

5     by the Sixth Circuit.  *Wyser-Pratte Management Co., Inc. v.*

6     *Telxon Corp.*, 413 F.3d 553, 568-569 (6th Cir. 2005).  The basic

7     rationale for this position is that the 'purposes of *American*

8     *Pipe* tolling are not furthered when plaintiffs file independent

9     actions before decision on the issue of class certification,

10    but are when plaintiffs delay until the certification issue has

11    just been decided.'

12         "Having reviewed this issue again, and in light

13    of the Second Circuit's recent position in *In Re: WorldCom*

14    *Securities Litigation,* I conclude that *American Pipe* tolling is

15    applicable to SHC, even though SHC filed *Shriners I* while the

16    issue of class certification was still pending in *In Re: Quest.*

17    The Supreme Court's repeated statement that the filing of a

18    class action suspends the applicable statute of limitations as

19    to all members of the class should be taken at face value.

20    Further, it is important to note that the filing of a separate

21    lawsuit by a putative class member does not automatically cause

22    that putative class member to be removed from the putative

23    class.  In this case, SHC was not treated as having opted out

24    of the *In Re: Quest* class when SHC filed a separate suit.

25    Rather, SHC was treated as having opted out of the putative

1    class only when it formally opted out of the plaintiff class in

2    *In Re: Quest.*  Application of *American Pipe* tolling to a

3    plaintiff who chooses to file a separate suit while the issue

4    of class certification is unresolved does not fundamentally

5    undermine the primary purposes of the *American Pipe* tolling

6    doctrine."

7                I might add one other note.  If you can file the

8    suit while the prescriptive period is extant, if it's tolled,

9    you out to be able to file it, too, because you could have a

10   thousand suits filed during the prescriptive period.  It's up

11   to me, then, to manage it.  I've taken a long time to issue a

12   stay order, admittedly, but I have issued a stay order.  I'm

13   attempting to manage it and will take all suggestions from

14   anyone as to how to more efficiently manage it.

15               I guess the basis of my decision, in adopting

16   the so-called minority view, is I agree with the logic and

17   reasoning of the cases that I just cited.  *American Pipe* was

18   not decided to create a trap, and that's what this would be.

19   We hope to efficiently manage this despite this ruling.  Of

20   course, I understand that there's a definitive circuit split

21   and the Fifth Circuit needs to decide it.

22               I don't know how many cases this affects,

23   frankly.  I know it affects these.  There may be others out

24   there as well.  I simply don't know how many come under this

25   situation, where people filed after the statute of limitations

1    may apply.  I'm not sure what impact it has on the umbrella.

2         **MR. TULLY:**  Your Honor, if I could just ask -- and I

3    haven't spoken to my partner, Charles Lanier, for the Sewerage

4    and Water Board.  Would Your Honor entertain, if the Sewerage

5    and Water Board were to decide to go forward, a motion to

6    certify this as an appealable judgment?

7         **THE COURT:**  I would certainly entertain it.

8         **MR. TULLY:**  Okay.  I don't know whether they would

9    want to or not, Your Honor.

10         **THE COURT:**  Right.  I will entertain anything, but I

11    assumed you might attempt to do that.

12            I'll let the other side tell me why I shouldn't

13    certify it.  You may want it answered, as well, because you

14    would like to know whether you have a suit or not.

15            Certainly, I would entertain it, absolutely,

16    because it's certainly one that ultimately is an appellate

17    decision.  I'm not making any findings of fact here.  It's

18    clearly an appellate decision ultimately.

19         **MR. TULLY:**  Thank you.

20         **MR. HILBERT:**  Thank you.

21         **THE COURT:**  We are adjourned for the day.

22         **THE DEPUTY CLERK:**  All rise.

23         (WHEREUPON the Court was in recess.)

24                * * *

25

1

**<u>CERTIFICATE</u>**

2      I, Toni Doyle Tusa, CCR, FCRR, Official Court

3 Reporter for the United States District Court, Eastern District

4 of Louisiana, do hereby certify that the foregoing is a true

5 and correct transcript, to the best of my ability and

6 understanding, from the record of the proceedings in the

7 above-entitled and numbered matter.

8

9

10                                    /s Toni Doyle Tusa
                                     Toni Doyle Tusa, CCR, FCRR
11                                    Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25