UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO:<br>   LEVEE MASTER COMPLAINT | SECTION "K"(2) |

### ORDER AND REASONS

Before the Court is National Union's Motion to Dismiss (Doc. 9171) filed by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union").  National Union issued a Public Officials and Employees Liability Insurance to  the East Jefferson Levee District ("EJLD") and has been sued under the Direct Action Statute by plaintiffs harmed in the aftermath of Hurricane Katrina. The insurer contends that all claims and complaints consolidated under 05-4182 are excluded from coverage because plaintiffs' claims arise out of property damage and/or bodily injury, which are specifically excluded under the National Union policy's unambiguous terms.  Thus, it maintains that it is relieved from any liability.  Having reviewed the pleadings, memoranda, exhibits and having entertained oral argument on this motion on February 20, 2008, the Court finds that the motion must be granted, but solely with respect to the specific insurance policy placed at issue herein.

**Rule 12(b)(6) Standard**

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complaint must be liberally construed in favor of plaintiff,  and all facts pleaded in the original complaint must be taken as true.  *Campbell v. Wells Fargo Bank*, *N.A.,* 781 F.2d 440, 442 (5th Cir. 1980). In *Bell Atlantic Corporation v. Twombly*, ___ U.S. ___, ___, 127 S.Ct.

1955, 1969 (2007) the Supreme Court "retired" the *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Id.* at ___, ____, 127 S.Ct. at 1969.  "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997) quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969).

**The Complaints at Issue**

Plaintiffs' Corrected Restated Levee Master Consolidated Class Action Complaint alleges that National Union had in full force and effect a policy or polices of liability insurance, under the terms, provisions, and conditions of which it assumed the liability for the acts and/or negligence of its insured the EJLD [East Jefferson Levee District], and against whom the Class Representative assert their claim under the Louisiana Direct Action Statute. (Corrected and Restated Master Complaint ¶16(j).  EJLD had the legal responsibility and duty to conduct the dredging activity of the 17th Street Canal "in a manner that would not compromise the safety of the canal's levee/flood wall system." (Corrected and Restated Master Complaint ¶85).  As such,

plaintiffs contend that National Union is directly liable to them as the liability insurer of EJLD. The damages sought include those for "property damage, personal injury and societal harm." (¶191).

While denoting this motion as applicable to all cases pending in the Levee sub-category, National Union has also mentioned specifically three cases that were not folded into the Restated and Corrected Master Complaint.  These cases are *Bennett v. Board of Comm. for the East Jefferson Levee District*, C.A. No. 07-3130, *Sims v. The Board of Comm. of the Orleans Levee District*, C.A. No. 06-5116, and *DePass v. The Board of Comm. of the Orleans Levee District*, C.a. No. 06-5127.  The Fifth Circuit affirmed this Court's order of remand in  *Bennett* on May 29, 2008.  As to the other two cases, plaintiffs there seek a declaratory judgment and damages with a request for jury trial for damages suffered due to the failure of the flood protection and drainage system for the New Orleans East Bank.  At paragraph 8, plaintiffs allege that they owned property that was "damaged and destroyed by flood and rain waters associated with Hurricane Katrina.  The *DePass* plaintiffs contend that EJLD failed to close drainage lines and the Hoey Canal in order to prevent the flow of water from the 17th Street Canal into Metairie, which flooded plaintiffs' properties.  (*DePass* Complaint ¶¶ 76 & 77).  Thus,  National Union maintains that all damages sought in these two complaints consist of damage to plaintiffs' property and personal injuries from the canal breaches during and following Hurricane Katrina.

**The Policy at Issue–National Unions' Argument**

The policy at issue is a Public Officials and Employees Liability claims-made-and-reported policy numbered 884-78-97 [1] with a policy period from January 1, 2006 through January 1, 2007. For purposes of this motion, the defendants assume that all the claims made by the complaints were timely filed and the claims satisfy all the elements of the insuring agreement–that is that the acts alleged to have been done by the insureds constitute "wrongful acts."

Endorsement # 1 the "Coverage Enhancement Endorsement" states:

Insuring Agreements

To pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any Claim first made against the Insured during the Policy Period or the discovery period (if applicable) and reported to the Company pursuant to the terms of this policy for any Wrongful Act of the Insured in the performance of duties for the Public entity

(Doc. 9171-3, Appendix of Exhibits, at 13).

Initially excluded under the insurance policy, the original policy provided:

This policy does not apply:

> (d)   to any claim for bodily injury to, or sickness, disease or death, or mental anguish of any person, or loss of or damage to or destruction of any property, including the loss of use thereof;

(Doc. 9171-3, Appendix of Exhibits, at 6).

Endorsement # 1 amended this language to read:

This policy does not apply to any Damages or Claims

> (d)   Arising Out Of **(1) bodily injury to, or sickness, disease, emotional distress or death of any person, (2) damage to or destruction of any property, including the loss of use thereof**, (3) any allegation relating to the foregoing exclusion (d)(1) through (d)(2) that an insured negligently employed, investigated,

---

[1] This policy number is the one used in National Union's memorandum; however, the policy provided as an exhibit for purposes of this motion is No. 625-49-23. This discrepancy has not been explained to the Court. Thus, this Court will render its opinion solely with respect to the provided policy No. 625-49-23.

4

>> supervised or retained a person, or based on an alleged practice, custom or policy and including, without limitation, any allegation that the violation of a civil right caused or resulted from such Damages or Claim.

(Doc. 9171-3, Appendix of Exhibits, at 16) (emphasis added).

Endorsement #2 amended Endorsement #1 to read:

> This policy does not apply to any Damages or Claim:
>
> (d)  Arising Out Of **(1) bodily injury to, or sickness, disease, or death of any person, (2) damage to or destruction of any property, including the loss of use thereof**, (3) any allegation relating to the foregoing exclusion (d)(1) through (d)(2) that an insured negligently employed, investigated, supervised or retained a person, or based on an alleged practice, custom or policy and including, without limitation, any allegation that the violation of a civil right caused or resulted from such Damages or Claim.

(Doc. 9171-3, Appendix of Exhibits, at 22) (emphasis added).

Thus, emotional distress was no longer excluded from the damages covered by this exclusion.

> As to the definition of "Arising Out Of " in Endorsement #1, it provides:
>
> 6.  Arising Out Of means originating from, having its origin in, growing out of, flowing from, incident to or having connection with whether directly or indirectly;

(Doc. 9171-3, Appendix of Exhibits, at 14).

Based on this "arising out of" definition, National Union maintains that there is no coverage afforded for plaintiffs' claims since all of the damages claims arise out of bodily injury and/or destruction of property, including loss of use caused by the floodwall and levee breaches that occurred in the aftermath of Hurricane Katrina. The insurer cites to *Cadwallder v. Allstate Ins. Co.,* 848 So.2d 577, 580 (La. 2003) and *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759 (La. 1994) for the proposition that an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set

5

forth in the Louisiana . National Union also relies on a Texas insurance case applying Texas law, *American States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir. 1998) which states that:

> held that the words "arising out of," when used within an insurance policy, are "broad, general, and comprehensive terms effecting broad coverage." *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.,* 189 F.2d 374, 378 (5th Cir.1951). The words are "understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.' " *Id.; see also Continental Cas. Co. v. City of Richmond,* 763 F.2d 1076, 1080-81 (9th Cir.1985) (applying *Red Ball*'s interpretation of the term "arising out of," and concluding that a claim need only bear an "incidental relationship" to the excluded injury for the policy's exclusion to apply).

*American States Ins. Co. v. Bailey,* 133 F.3d 363, *370 (C.A.5 (Tex.),1998).

National Union also notes that plaintiffs seek to represent a class composed of all persons on the eastbank of New Orleans, "who/which sustained damages as a result of the inundation in this area." Furthermore each subclass is defined by a specified geographic area and reiterates that damages were sustained as a result of inundation. Each paragraph describing the class and subclass representatives includes details of their real and personal property that was damaged. One class representative also alleges the wrongful death of his father.

Nation Union then summarizes paragraph 191 of the Master Complaint (damages) as:

> (1)   property damage and related losses such as loss of use, and relocation and evacuation expenses, increased repair costs, and income loss;
> (2)   personal injury and related general damages such as mental anguish, emotional distress, and pain and suffering; and
> (3)   societal harm form the loss of cultural heritage and alteration of the character of New Orleans.

As such, it contends that all of these damages are the consequence of property damage and bodily injury from the canal breaches and thus are all excluded because all of the claims arise out of property damage or personal injury.

6

**Plaintiffs' Response**

Counsel for plaintiffs in the Corrected and Restated Master Complaint argue that the EJLD negligently (1) allowed, failed to challenge and prevent the dredging of the 17th Street Canal and (2) that it failed to conduct appropriate oversight, maintenance and inspection of the 17th Street Canal allowing the safety flaws and discoverable dangers of the system to remain uncorrected and undisclosed to the public.  Thus, plaintiffs contend that these are acts and omissions which arise out of the breach of duties owed by the District to plaintiffs and thus constitute wrongful acts which is defined in Endorsement #2 as meaning "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or employment practices Violation by an Insured solely in the performance of duties for the Public Entity."

     **a.**     **Exclusion is not specific enough**

Plaintiffs argue that the policy language on which National Union relies "does not expressly exclude claims alleging the negligence or malfeasance of the District" and thus as coverage exclusions must be expressly stated to have an effect, the exclusion relied on should not apply.  At a minimum, they maintain that they are entitled to discovery to "develop evidence as to the history and intention of the exclusion and whether the policy including the endorsements and exclusions, were properly submitted and approved by the Louisiana Commissioner of Insurance as required by La. Rev. State. 22:620.

Thus, plaintiffs' primary argument runs that the claims do not arise out of "property damage" or "personal injury" but out of the alleged errors and omissions of the EJLD.  As an insurer must expressly and specifically exclude a particular loss or claim from coverage, so that

"'[a]ny exclusion from coverage in an insurance policy [is] clear and unmistakable." *Roger v. Estate of Moulton*, 513 So.2d 1126 (La. 1987).

### b. Exclusion is so broad as to render insurance meaningless

Plaintiffs also argue that National Union's interpretation of the policy excluding property damage "effectively excludes coverage for all consequences of wrongful acts–it negates the sole purpose for purchasing the policy–to insure the District against claims arising out of its affirmative duty to maintain the levee system. Plaintiffs cite *National Union Fire Ins. Co. of Pittsburgh, PA v. L.E. Myers Co. Group*, 1995 WL 581692 (S.D.N.Y. Oct. 4, 1995) where the Court denied a motion to dismiss because there were questions of fact concerning a binder which would have provided coverage and the actual umbrella policy which would have excluded coverage by virtue of a number of provisions including a prior acts exclusion and an exclusion for certain property damage. In addition, there was a course of dealing post-accident that would indicate that the insurer intended to provide coverage.[2]

Another case upon which plaintiffs rely is *Stewart Title Guaranty Co. v. Kiefer*, 984 F. Supp. 988 (E.D. La. 1997) . There, a title insurer brought an action against its E&O insurer seeking coverage. The insurance company denied coverage on the basis that the claims fell within various exclusion listed in the policy. The policy holder countered that the insurance company's "interpretation of the exclusions. . . [should] be rejected because it would exclude

---

[2]The Court notes that this case is highly distinguishable from the facts before the Court in the instant case. There has been no representation or argument to the Court by EJLD there was any mistake or confusion as to the coverage that was provided–there is no factual dispute with a difference between a binder and the policy, or any actions demonstrating that National Union ever intended to provide coverage of the nature sought by plaintiffs.

coverage for any conceivable 'negligent act, error or omission' that an escrow agent might commit 'in the rendering or failure to render professional service.'" 984 F.Supp. at 994. Ultimately, the district court denied summary judgment for the insurer finding the interpretation of very specific E&O provisions overly broad such that it would exclude coverage for virtually any claim made against a title insurer.

Finally, plaintiffs rely on *Manis v. St. Paul Fire and Marine Ins*., 2001 WL 1397318 (E.D.La. Nov. 8, 2001). As the Fifth Circuit described *Manis* in *Coleman v. School Board of Richland Parish*, 418 F.3d 511 (5th Cir. 2005):

> In *Manis*, the court addressed whether an insurance policy issued to a city provided coverage for claims arising under § 1983 and the Louisiana civil Code alleging that city police officers violated the plaintiff's civil rights by intentionally using excessive force during the course f an arrest and detention. The policy provided coverage for losses resulting from claims based on injuries caused by "wrongful acts" such as *, inter alia*, false arrest, malicious prosecution, and violations of civil rights protected under federal or state laws. The policy limited coverage in two ways. First it defined 'wrongful act" as "any error omission or negligent act." Second, it expressly excluded coverage for "injury or damage that results from any criminal, dishonest or fraudulent act or omission." The court found that it could harmonize the policy's coverage and exclusionary provisions by interpreting the policy as providing coverage for acts which "constitute[] error, omission or negligence, but [are] not criminal, dishonest, or fraudulent. The Court found this interpretation "cramped," noting that it would preclude recovery for all excessive force claims brought against Louisiana police officers under § 1983 because such claims necessarily involve conduct amounting to criminal battery under Louisiana law. "Consequently," the court opined, "two provisions of the contract–one expressly covering liability for 'violation of civil rights' and on excluding coverage for injury or damage resulting form a 'criminal' act are directly in conflict." The court found that it was "unclear from the contract which provision trumps," giving rise to an ambiguity requiring the court to adopt the "interpretation that provides coverage."

*Id.* at 519.

So, plaintiffs contend that if the Court were to accept National Union's interpretation of the property damage exclusion, it would render the policy in question meaningless. By

9

excluding claims because they result in property damage, in essence results in the there being no coverage for the consequences of a covered claim making coverage illusory. There are 18 exclusions including exclusions for fraud, dishonesty, criminal acts or omission; claims seeking relief other than in the form of damages or attorney's fees costs or expenses; false arrest, detention or imprisonment, libel, slander or defamation, assault, battery, malicious prosecution or abuse of process; breach of fiduciary duty, responsibility or obligation in connection with any employee benefit plan; and breach of contract. To read the "arising out" language as broadly as advocated by National Union would make the exclusions superfluous since the exclusion of damages arising from all personal injuries and property damage would swallow these specific exclusions.

### c. Discovery is Needed

Plaintiffs further contend that they are entitled to conduct discovery on the drafting history of these broad exclusions and the policy and whether the policy was approved by the Louisiana Commissioner of Insurance prior to its sale to the EJLD.

### d. Other Arguments by Other Counsel

Other arguments raised by another counsel for another group of plaintiffs in the Levee sub-category also noted that there is confusion among three different policy numbers as to which one is applicable to the claims made. In addition, counsel argues that National Union's approach

oversimplifies plaintiffs allegations. Counsel contends that certain of these losses can occur independently of property damage, and thus they cannot be deemed to "arise out" of such damage. For example plaintiffs may have suffered an ongoing loss in business income and business opportunity due to the evacuation and displacement of their customer base, and due to the depressed economic activity in the metropolitan New Orleans area following Hurricane Katrina and the breaches of the levees. Such losses would have accrued even after plaintiffs' property damage was repaired , on in the absence of any property damage. Similarly, plaintiffs' property may have been reduced in value due to economic considerations, as opposed to physical damage. Relocation expenses and the cost of raising one's home are other examples. Thus, he argues that the exclusion cannot be defined so broadly so as to exclude anything tangentially related to the broader economic conditions of the New Orleans metropolitan area.

Finally counsel for the EJLD lodged an opposition to this motion. EJLD maintains that the allegations in the Master Complaint are within the definition of "wrongful acts" contained in the policy which provides $5,000,000 in coverage. The putative class damages include:

1) loss of real property;
2) loss of personal property;
3) diminished property value:
4) loss of income;
5) relocation costs;
6) lost business opportunities;
7) business interruption;
8) evacuation expenses;
9) loss of opportunity to avoid injury and damages through preventative measures;
10) wrongful death;
11) survival damages;
12) fear fright, emotional distress, grief, mental anguish, pain and suffering;
13) inconvenience
14) loss of capacity to enjoy life;
15) loss of consortium;
16) societal harm, including "the breakdown of New Orleans' social structure"

17)  loss of cultural heritage; and
18) damages due to "the dramatically altered physical economic, political, social and psychological character of the New Orleans area.

In addition there are other suits where the inundation severely restricted access to New Orleans, causing depopulation which choked off commerce and caused other plaintiffs to be unable to collect rents.  There are claims for business interruption and lost revenues.

Based on that overview, EJLD maintains that plaintiffs' alleged damages include claims for things other than damage to or destruction of property.  For instance "stigma damage" associated with the perception that New Orleans is a "disaster area"   since the policy does not define the term property, the parties and the Court are to determine its meaning form customary usage of the term and the context in which it appears in the contract.  *Norfolk Shipbuilding & Drydock Corp.*, 274 F.3d 249, 254 (5th Cir. 2001).

Relying on *Couch on Insurance*, the typical liability policy requires physical injury to, or destruction of tangible property and the typical insurance industry definition of "property damage" is:

> (1) the physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

Ostrager, Newman, *Handbook on Insurance Coverage Disputes*, 12th Ed., Vol. 1 2004, Sec. 7.03({b}{3}.  Looking at Exclusion (d) and this definition, EJLD maintains that the exclusion refers only to corporeal (tangible) property.  Thus, National Union may not cover claims for damages arising from one's flooded home, but the policy does not exclude claims for incorporeal damages if they do not arise from the claimant's loss of tangible property.

Likewise, with respect to "bodily injury", there are only a fraction of these kinds of claims in this umbrella but there are allegations of damages from "inconvenience, "loss of capacity to enjoy life," societal harm, and cultural loss. Whether these damages constitute emotional distress as intended by the policy cannot be assessed without consideration of each individual claim.

Finally, EJLD argues that National Union's contention that all claims aries from "widespread property damage from flooding" and are therefor outside the coverage of its policy is unsupported by any case law. Because each plaintiff's damages claim requires a case-by case determination, the policy definition of "arising out of" must relate to the specific individual claim for which coverage is sought. That is to say the claimant must claim damages "Arising Out of" his/her own property loss or bodily injury, not someone else's. The exclusion should be more specific if it is to be that sweeping in effect.

**Analysis**

Sitting in diversity, this Court must apply Louisiana law. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007). In one of the Louisiana Supreme Court's most recent decisions concerning the interpretation of insurance contracts, quoting from its previous decision in *Huggins v. Gerry Lane Enterprises, Inc.*, 957 So.2d 127, 128-9 (La. 2007), the court stated:

> An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the

>   words have acquired a technical meaning.
>
>   An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes.
>
>   If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. **Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable.** (Citations omitted).
>
>   *Huggins,* 957 So.2d at 128-9.

*Sher v. Lafayette Ins. Co.,* 2008 WL 928486, *3 (La. April 8, 2008) (emphasis added); *In re Katrina*, 495 F.3d at 207.

>   Here, the pertinent exclusion states:

This policy does not apply to any Damages or Claim:

>   (d)   Arising Out Of **(1) bodily injury to, or sickness, disease, or death of any person, (2) damage to or destruction of any property, including the loss of use thereof**, (3) any allegation relating to the foregoing exclusion (d)(1) through (d)(2) that an insured negligently employed, investigated, supervised or retained a person, or based on an alleged practice, custom or policy and including, without limitation, any allegation that the violation of a civil right caused or resulted from such Damages or Claim.

(Doc. 9171-3, Appendix of Exhibits, at 22) (emphasis added).  Furthermore, "Arising Out Of" is defined as: "

>   6.   Arising Out Of means originating from, having its origin in, growing out of, flowing from, incident to or having connection with, whether directly or indirectly.

14

Simply put, this provision is not susceptible to two different interpretations. While this provision certainly greatly restricts the coverage provided under this policy of insurance, the Court is constrained to apply its terms as written. To do otherwise would require the Court to rewrite the policy and ignore the definition of "Arising Out Of." While the argument that each individual plaintiff seeking damages should be examined since the alleged damage of such a person might not have to do with personal injury or property damage to that particular individual, the definition states unequivocally that arising out of –whether directly or indirectly. The damages that are sought arise either directly or indirectly from the person injury and/or property damage that occurred as a result of the flooding caused by the breaches of the floodwalls around the City of New Orleans. For example, business was interrupted for all persons since there was an enforced evacuation of New Orleans for a number of weeks. Certainly, those damages indirectly arise out of the property destruction caused by the floodwall breaches.

Furthermore, the policy is not illusory. It does provide coverage to certain officials and employees under certain circumstances for wrongful acts such as liable, slander, wrongful employment practices and the like.

However, to the extent that National Union seeks a blanket dismissal from this suit, the Court will not do so. It is unclear whether there are any other policies which may provide coverage for the damages sought and National Union has been sued directly under polices of liability insurance, under the terms, provisions, and conditions of which it assumed the liability for the acts and/or negligence of its insured the EJLD. Accordingly,

**IT IS ORDERED** National Union's Motion to Dismiss (Doc. 9171) filed by National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") is **GRANTED** with respect to the policy numbered 625-29-23 with a policy period from January 1, 2006 through January 1, 2007 which is the only policy presented to the Court.  The policy numbered 884-78-97 which was mentioned in the body of the motion was not presented to the Court and the Court shall not rule on a policy that it has not seen or evaluated.  Furthermore, it will not grant a wholesale dismissal of National Union until it can be represented to the Court that there are no other relevant policies.

New Orleans, Louisiana, this 26th day of August, 2008.

  
STANWOOD R. DUVAL, JR.  
**UNITED STATES DISTRICT COURT JUDGE**