# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **IN RE: KATRINA CANAL BREACHES** | * | **CIVIL ACTION** |
| **CONSOLIDATED LITIGATION** | * | **NUMBER: 05-4182 "K"(2)** |
| | * | **JUDGE DUVAL** |
| | * | **MAG. WILKINSON** |
| | * | |
| | * | |
| **PERTAINS TO: MRGO, Robinson** | * | |
| **(No. 06-2268)** | * | |

*********************************************************************************

## <u>MEMORANDUM IN SUPPORT OF MOTION FOR *IN CAMERA* INSPECTION</u>

**NOW INTO COURT,** through undersigned counsel, comes the Plaintiffs Norman Robinson, Kent Lattimore, Lattimore & Associates, Tanya Smith, Anthony Franz, Jr., and Lucielle Franz, who request that the Court perform an incamera review of documents, as more fully set forth below.

On May 23, 2007, the Court issued its Discovery Order Concerninmg Materials As to Which Privileges May be Asserted.

In July, 2008, Plaintiffs undertook the depositions of Greg Breerwood and John Saia regarding their knowledge of events while they were employed by the United States Corps of Engineers.  Certain documents were referenced as the basis for a line of inquiry.  Counsel for the United States asserted an attorney-client privilege regrding those documents.

By letter dated July 16, 2008, counsel for the United States informed Plaintiffs in writing that it was asserting the attorney-client privilege over the above referenced documents.  A telephonic meet and confer was held on August 4, 2008; however, an amicable resolution was not reached

Plaintiff now timely file their Motion for *In Camera* Inspection.  The documents at issue have been provided to the Court under separate cover.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS' LIAISON COUNSEL**

    /s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS' LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

**MR-GO PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**
    /s/ James Parkerson Roy
JAMES PARKERSON ROY (La. Bar # 11511)
MR-GO PSLC LIAISON COUNSEL
Domengeaux Wright Roy & Edwards LLC
P.O.Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: 337-233-2796
Email: jimr@wrightroy.com

For

MR-GO PLAINTIFFS' SUB-GROUP LITIGATION
COMMITTEE
Jonathan Andry
Clay Mitchell
Pierce O'Donnell
James Parkerson Roy

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the above and foregoing Notice of

Deposition upon all counsel of record by placing same in the United States mail, properly

addressed and with first-class postage, or by facsimile or other electronic transmission this 28th

day of August, 2008.


   /s/ Joseph M. Bruno
_____

Joseph M. Bruno

<u>**"EXHIBIT "A"**</u>

Please produce, pursuant to Federal Rule 30(b)(6), the person(s) most knowledgeable of

the following areas for the entire time from the development, construction and maintenance of

the MRGO:

1.                      The Army Corps's procedure for obtaining congressional authorization for the MRGO.

                      This topic of inquiry necessarily includes the following topic areas:

                      (A)     decisions on when to advise Congress of damage to the environment or other deleterious effects caused by the design, construction or maintenance of the MRGO, and

                      (B)     when to advise of the need for capital improvements that will mitigate or stop the damage or deleterious effects.

2.                      The Army Corps' analyses and/or evaluations of any modifications to the MRGO deemed necessary to address impacts on the health and safety of the human environment, both before the enactment of the National Environmental Policy Act and as defined by the National Environmental Policy Act.

3.                      The Army Corps' budget, appropriations, proposals, and requests for funding associated with the construction and maintenance of the MR-GO, including all supporting documentation and submissions to Congress.

4.      The manner and methods of obtaining and responding to comments received from Federal, State or local agencies and/or the public regarding environmental impact(s) of the MRGO and/or any and all maintenance and operation activities of same; including the funnel effect, surge impact and the effect of bank erosion on the environment.

5.      The Army Corps' exploration of alternative actions designed to avoid or minimize actual or potential adverse impacts and to evaluate the long- and short- range implications to the environment surrounding the MRGO and/or any and all maintenance and operation activities relating to same; including the funnel effect, the surge impact and the effect of bank erosion on the safety of the human environment.

6.      The Army Corps' consultation(s) with concerned environmental groups, or any other concerned third party, for revisions of Corps' methods and procedures for assessing the environmental impact(s) of the MR-GO and any related opportunities for public comment.

7.      Evaluations by the Corps regarding wetlands or marshland and their relationship to  the design, construction, operation, maintenance, dredging of any part or parts of the MR-GO, individually or collectively, including any loss, destruction, diminution or contraction of such wetlands or marshland.

8.      Evaluations by the Corps regarding the alleged potential for the MR-GO to serve as a conduit and/or "funnel" for hurricane-generated storm surge.

9.      Evaluations by the Corps regarding erosion of the banks of the MR-GO from the wave wash of vessels traversing the MR-GO, including the Corps' evaluation of requests for reduction in vessel speed on the MRGO.

10.     Evaluations by the Corps regarding storm surges within the MR-GO, Lake Borgne, Lake Pontchartrain, the IHNC, the GIWW and their relationship to the design, construction, operation and maintenance of part or parts of the MR-GO, individually or collectively.

11.     Measures, actions, analyses, studies, and/or reports commenced and/or undertaken by the Army Corps in response to any claim, assertion, protest, and/or communication by the State of Louisiana and/or St. Bernard Parish and/or any agency or political subdivisions thereof, concerning the MR-GO's deleterious and/or negative impact and effect on the wetlands fronting Greater New Orleans, including the 1957 Tidewater Advisory Committee Report, dated 09/03/1957.

12.        The design, construction, operation, maintenance, or modification of the Inner Harbor Navigation Canal (IHNC), also known as the Industrial Canal as it relates to the development and implementation of the MRGO.

13.        The design, construction, operation and maintenance of the Mississippi River-Gulf Outlet (MR-GO).

This topic of inquiry necessarily includes the following topic areas:

(A)        Any coordination or communication between either the United States Department of the Army, the United States Army Corps of Engineers, or the New Orleans District of the United States Army Corps of Engineers, on the one hand, and either (1) the United States Department of Interior; (2) any subdivision of the United States Department of Interior, including the United States Fish and Wildlife Service; (3) any agency or political subdivision of the State of Louisiana; or (4) any other local interest or political entity, including, but not limited to, any commission associated or connected with the Port of New Orleans, on the other hand, concerning or related to (5) any investigation or reconnaissance conducted in connection with the submission of House Doc. No. 245 to the United States Congress; (6) the preparation, compilation or drafting of any design memoranda related to the Mississippi River-Gulf Outlet; or (7) the construction of the Mississippi River-Gulf Outlet.

(B)        The design, construction, maintenance, operation and contents of any "spoil bank" constructed during, or in connection with, the construction or operation of the MR-GO.  For purposes of this notice of deposition, the term "spoil bank" shall refer to any location created, designated, demarcated, constructed or otherwise maintained for the receipt or deposit of earthen material "dredged" or otherwise excavated in connection with the construction, operating or maintenance of the MR-GO.

( C)        The dredging methods or techniques used in connection with the construction, operation or maintenance of the Mississippi River-Gulf Outlet.

14.        The standards and criteria for the construction of levees between 1955 and the present.

This topic of inquiry necessarily includes the following topic areas:

(A)        written standards, manuals or guidelines maintained or published

6

by the United States Army Corps of Engineers during this time period, and

(B)     any and all changes, modifications, or amendments to such written standards, manuals or guidelines.

15.     The design, construction, operation and maintenance of the levees protecting the New Orleans East polder.

This topic of inquiry necessarily includes the following:

(A)     Any and all reports investigations, notes, memoranda, compliance, transferals, or all other actions taken by either the United States Department of the Army, the United States Army Corps of Engineers, or the New Orleans District of the United States Army Corps of Engineers to comply with, or ensure compliance by any third party with, 33 C.F.R. §§ 208.10, 209.300, 209.330, or any other relevant or applicable, statute, regulation, policy, or practice.

16.     The design, construction, operation and maintenance of federal flood protection structures along the MR-GO.

This topic of inquiry necessarily includes the following:

(A)     Any and all reports investigations, notes, memoranda, compliance, transferals, or all other actions taken by either the United States Department of the Army, the United States Army Corps of Engineers, or the New Orleans District of the United States Army Corps of Engineers to comply with, or ensure compliance by any third party with, 33 C.F.R. §§ 208.10, 209.300, 209.330, or any other relevant or applicable, statute, regulation, policy, or practice.

17.     Environmental assessments, analyses, studies, reports, impact statements and/or findings of no significant impact with regard to the maintenance, operations, dredging and/or repair of the MRGO

18.     The Army Corps's compliance with the National Environmental Policy Act and procedures for creating, drafting, filing, and/or reporting Environmental Impact Statements and/or Supplemental Environmental Reports and/or

Supplemental Impact Statements for the MRGO and of its operation and maintenance as it relates environmental impacts on the safety of the human environment.

19.     The Army Corps's procedures and methods of subdividing ongoing projects for the purposes of obtaining input on environmental impact and analyses of changes in the conditions of the environment surrounding the MR-GO caused by its maintenance and operation.

20.     The Army Corps's procedures for obtaining coordinated interdisciplinary input for evaluating any environmental impacts of projects and continued maintenance of projects to assess the potential environmental impact for Environmental Assessments and/or  Environmental Impact Statements and/or Findings of No Significant Impact.

21.     The Army Corps's internal engineering regulations concerning the MR-GO and its operation and maintenance, including dredging and other operations and the applicable Federal Regulations and any cross reference(s) or "keys" to the corresponding CFR provision(s).

22.     The Army Corps' procedures for congressional authorization of Civil Works Projects, including decisions on when and how to seek approval for modifications in plans that spanned over time.

23.     The Reconnaissance Report.

        This topic of inquiry necessarily includes the following:

        (A)     the efforts by the US Corps of Engineers to understand the impact of the MRGO on the environment, relative to the Reconnaissance Report,

        (B)     the decision to initiate the development of the Reconnaissance Report;

        ( C)    the drafting of the Reconnaissance Report.

24.     Efforts by the US Corps of Engineers to address the impact of the MRGO on the environment relative to the Reconnaissance Report, including bank erosion, increased salinity, as well as impacts on potential for MRGO to exacerbate storm surge.

25.     Communications with Congress regarding the US Corps of Engineers efforts to understand the impact of the MRGO on the environment in relation to the Reconnaissance Report, and any subsequent communications

regarding the scope of work anticipated relative to the Reconnaissance
Report, the financial needs of those works, and the results of the works
either undertaken or deferred.

26.     The Army Corps's procedure for creating, drafting, filing, and/or reporting
        Environmental Impact Statements and Supplemental Environmental
        Reports or Supplemental Impact Statements for the MR-GO, its operation
        and maintenance.

27.     The drafting, creation, analyses, results, and/or findings of the *Report of the
        Environmental Sub-Committee to the MRGO Technical Committee*, March
        16, 2000.  *See* Exhibit "A" at NED-188-000001511-1630.

28.     Any measures, actions, further analyses, studies, reports, recommendations,
        and/or communications with Congress commenced and/or undertaken by
        the Army Corps in response to the *Report of the Environmental Sub-
        Committee to the MRGO Technical Committee*.

29.     The drafting, creation, analyses, results, and/or findings of the *Habitat
        Impacts of the Construction of the MRGO*, December 1999, prepared by the
        New Orleans District Corps of Engineers.  *See* Exhibit "A" at NED-188-
        000001556-1591.

30.     Any measures, actions, further analyses, studies, reports, recommendations,
        and/or communications with Congress commenced or undertaken by the
        Army Corps in response to the *Habitat Impacts of the Construction of the
        MRGO*.

31.     The analyses, studies, reports, and decision making concerning the Army
        Corps's conceptual plan to construct a MR-GO/GIWW surge barrier as
        detailed in the Army Corps's Greater New Orleans Hurricane and Storm
        Damage Risk Reduction System 100-Year Design Map downloaded from
        http://www.mvn.usace.army.mil/hps/100yr_design_map.html.

32.     The analyses, studies, reports, and decision making concerning the Army
        Corps's conceptual plan to construct flood protection along Reach 2 of the
        MR-GO ("Upper St. Bernard Levee" and "Lower St. Bernard Levee")
        ranging in height from 26.5 feet to 29 feet as detailed in the Army Corps's
        Greater New Orleans Hurricane and Storm Damage Risk Reduction System
        100-Year Design Map downloaded from
        http://www.mvn.usace.army.mil/hps/100yr_design_map.html.

33.     The analyses, studies, reports, and decision making concerning the Army
        Corps's conceptual plan to construct the "Seabrook Surge Barrier" at the
        northern end of the IHNC as detailed in the Army Corps's Greater New
        Orleans Hurricane and Storm Damage Risk Reduction System 100-Year
        Design Map downloaded from

http://www.mvn.usace.army.mil/hps/100yr_design_map.html.

34.      All scientific research and studies relative to the effects of wetlands and/or swamps on hurricane generated waves.

35.      All scientific research and studies relative to the effects of hurricane generated surge, current or waves on earthen levees.

36.      Studies and evaluations regarding the closure of MRGO, who had authority to initiate the studies and subsequent procedures, and the results of these studies.

37.      The performance of the flood control structures along the MRGO, GIWW, and  IHNC during Hurricane Katrina.

38.      The four-page report entitled "Mississippi River-Gulf Outlet, PM-R Proposal for Gaining National Environmental Policy Act Compliance for the Operation and Maintenance Program," (NOP-019-000000207), dated April 11, 2005, including all versions and iterations of that report entitled "Mississippi River-Gulf Outlet, PM-R Proposal for Gaining National Environmental Policy Act Compliance for the Operation and Maintenance Program," (NOP-019-000000207), dated April 11, 2005.

39.      All documents commenting on, concerning, or addressing the report entitled "Mississippi River-Gulf Outlet, PM-R Proposal for Gaining National Environmental Policy Act Compliance for the Operation and Maintenance Program," (NOP-019-000000207), dated April 11, 2005, attached hereto as Exhibit B.

40.      Measures, actions, analyses, studies, and/or reports commenced and/or undertaken by the Army Corps concerning a change in hydrology associated with and/or caused by the digging and/or dredging of the MR-GO