# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| | * | |
| *Boutte v. Lafarge*          05-5531 | * | |
| *Mumford v. Ingram*      05-5724 | * | |
| *Lagarde v. Lafarge*      06-5342 | * | **JUDGE** |
| *Perry v. Ingram*          06-6299 | * | **STANWOOD R. DUVAL, JR.** |
| *Benoit v. Lafarge*        06-7516 | * | |
| *Parfait Family v. USA*   07-3500 | * | **MAG.** |
| *Lafarge v. USA*_____07-5178_____ | * | **JOSEPH C. WILKINSON, JR.** |
| | * | |

## ANSWERS TO INTERROGATORIES PROPOUNDED BY THE BARGE ENTITIES

Plaintiffs respond to Defendants, LNA and Zito entities', discovery as follows:

## GENERAL OBJECTIONS

A.      Plaintiffs object to those definitions and instructions included in defendant's discovery
requests which seek to impose upon Plaintiffs an obligation to respond in a manner which
is more burdensome than that required by applicable provisions of the Federal Rules of
Civil Procedure.  Plaintiffs will answer specific Interrogatories in a manner sufficient to
comply with their obligations as stated therein.

B.      Plaintiffs object to Defendants' discovery requests insofar as they seek information and/or
documents protected by the attorney/client privilege, information obtained by or on behalf
of counsel for Plaintiffs in preparation for trial of this proceeding, information protected
by the work-product doctrine and/or information beyond the permissible scope of
discovery as set forth in the Federal Rules of Civil Procedure.  Plaintiffs expressly reserve
all claims of privilege and renounce any waiver thereof except where specifically
communicated in writing with a full statement of the particulars.

C.      Plaintiffs object to each of the requests to the extent that they seek information regarding
"each," "all," or "every," person, entity, document, or other thing, or uses a similar all-

inclusive adjective.  It is not reasonably possible for Plaintiffs to determine whether "each," "all," or "every" document, person or other thing falling within the scope of a request can be determined, located, or included in a response.  In the usual course of time, numbers of records may have been created or received, lost or destroyed, particularly in connection with this matter involving a mass disaster and widespread flooding.  Records may have been misfiled, lost or simply not retained.  And even after diligent search through those places that the information would likely exist, the information may not be located.  Therefore, whenever Plaintiffs respond to a request asking for "each," "all," "every," or similarly broad adjective, Plaintiffs cannot warrant that each, all, or every bit of information has been located or determined.  Plaintiffs can only warrant that a reasonably diligent inquiry or search for the requested information has been made, and that the response is the result of that reasonably diligent inquiry or search.  To the extent any request purports to require more, Plaintiffs object on the grounds that compliance would be unduly burdensome and expensive and would call for speculation.

D.      Plaintiffs object to the Interrogatories to the extent they are either not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

E.      Plaintiffs object to the Interrogatories to the extent they are overly broad and unduly burdensome.

F.      Plaintiffs object to the Interrogatories to the extent that they exceed the scope of admissible discovery.

G.      Plaintiffs object to the Interrogatories to the extent that they are vague and ambiguous.

H.      Plaintiffs object to the Interrogatories as going beyond the permissible limits allowed pursuant to the Federal Rules of Civil Procedure.

I.      Plaintiffs object to the Interrogatories that seek information readily available to Defendant in the public domain.

J.      These general objections are applicable to and are hereby incorporated into Plaintiffs' responses below as if specifically set forth therein and are on a continuing basis and may not be reiterated in response to each Interrogatory that does or may call for disclosure or production of objected to information.

**GENERAL RESPONSE AND RESERVATIONS**

**GENERAL RESPONSE AND RESERVATIONS**

As used herein, the term "named class representative plaintiffs" means the following

named plaintiffs:

> Ethel Mae Coleman Mumford
> Josephine Long Richardson
> Jimmie Donnell Harris
> Kismit Bourgere
> Michael Joseph Riche
> Jacob Robert "Bob" Glaser
> Dianne Glaser
> Herman Koch
> Aida Koch
> Rico Terrence Sutton

As used herein, the term "named individual non-representative plaintiffs" means the following named plaintiffs who are not currently named as class representatives:

> Marie Short Benoit
> Henry Adams
> Gwendolyn Adams
> John Alford
> Jerry Alford
> Michael Watts
> Robert Green, Sr.
> Jonathon Green
> David Green, individually and as the representative of the Estate of Joyce H. Green
> Everage Green, individually and as representative of the Estate of Shanai Green, as as the natural tutor of Shaniya Green and Shamiya Green
> Hyman Sheppard
> Earl Matthew Daniels, Sr.
> Joyce B. Matthews
> Mildred Delores Dean
> Ethel Leon
> Karen Leon
> Joyce Daniels
> Myrna Daniels, in her individual capacity and as natural tutrix of Keina Daniels
> Tom Browder
> Albertine Browder
> Gaynell Browder
> Blair Boutte
> Doris Shanks
> Herbert Warren, Jr.

3

> Marenthia Lagarde
> Michael Lagarde
> Donald Pritchett
> Jocelyn Moses
> Anthony Dunn
> Jocelyn Carter
> One or more persons named in the matter entitled "*The Parfait Family, et al v. United States of America, et al,*" Civil Action No. 07-3500.

All of the responses hereto are made on behalf of all named class representative plaintiffs except where specifically indicated otherwise.

Plaintiffs are in the process of obtaining answers as to the named individual non-representative plaintiffs, working through their counsel, and will supplement these responses to include their responses as soon as possible.

All responses reflect the best efforts of counsel and the persons responding, in light of loss of much information during the events subject of suit.  The plaintiffs responding reserve the right to supplement and amend any and all of the following in light of new information as discovery, class certification preparation and trial preparation progress.

## INTERROGATORY NO. 1:

Identify each person who was consulted or who provided information or who otherwise assisted in preparing plaintiffs' responses to the interrogatories, document requests, and requests for admissions served by LNA and the Zito entities.

## ANSWER TO INTERROGATORY NO. 1:

Objection: attorney work product.  Subject to and without waiver of any objections, and excluding the undersigned counsel:

1. Ethel Mumford, Michael Riche, Kismit Bourgere, Rico Terrence Sutton, Jimmie Harris, Bob and Dianne Glaser, Herman and Aida Koch, and Josephine Richardson.

2. Terry Adams (client of undersigned)

3. Christopher Weaver (client of undersigned)

4. Ronald McGill (client of undersigned)

4

5.      Wilson Simmons (client of undersigned)

6.      Arthur Murph (putative class member, depending upon nature of settlement with LNA)

7.      William Villavasso

8.      Maj. Pete Tufaro (putative class member)

9.      Sal Gutierrez (putative class member)

10.     James Ruiz (client of undersigned)

11.     Sally Jones (client of undersigned)

12.     R. Lee Wooten

13.     Robert Bea

14.     Ray Helmer

15.     Don Green

16.     Aurora Environmental

17.     IPET

18.     Team Louisiana

19.     ILIT

20.     United States Coast Guard

21.     Johannes Vrijling

22.     Paul Kemp

23.     John Kilpatrick

24.     www.weatherunderground.com,

25.     Dan Mecklenborg

26.    David  Sehrt

27.    Pankaj Shah

28.    Patrick Morton

29.    Stanley Cook

30.    Greg Jarrell

31.    David Williams

32.    Pete Tassin

33.    Gary Holman

34.    Ed Vandermeulen

35.    Ed Bush

36.    Earl Smith

37.    Richard Heck

38.    Eric Thigpen

39.    Raymond Grabert

40.    Gerald McNeil

41.    Barry Boudreaux

42.    Rachael Burnett

43.    Liskow and Lewis

44.    Emmett, Cobb and Waits

45.    Harris and Rufty

46.    Goodwin - Proctor

47.    Chaffe-McCall

48.     Sutterfield and Webb

49.     Charlie Lanier

50.     Jim Reed (layperson, re 40 Arpent - 4025 Kings Dr., Chalmette, putative class
        member)

51.     MRGO Plaintiffs' counsel

**INTERROGATORY NO. 2:**

Provide the name and, if known, the address and telephone number of each person (other than the individual plaintiffs themselves) who is likely to have discoverable information that plaintiffs may use to support their claim that the Barge ING 4727 caused damage to any plaintiff or member of the proposed class in this action.

**ANSWER TO INTERROGATORY NO. 2:**

For the most part, plaintiffs have not yet made decisions as to which persons they may use as witnesses as to their claim that the barge was the cause of the damage to plaintiffs and their class.  Plaintiffs have responded below as to those persons for whom plaintiffs have already made the decision that they may be called as witnesses on this issue of causation.  Plaintiffs are reviewing information as to putative class members who did not evacuate.

Plaintiffs will comply with court orders concerning witness disclosure, and will supplement this answer when they reach decisions that particular persons may be used as witnesses on this question.

1.      Dan Mecklenborg

2.      David Sehrt

3.      Pankaj Shah

4.      Patrick Morton

5.      Stanley Cook

6.      Greg Jarrell

7.      David Williams

8.      Pete Tassin

9.      Gary Holman

10.     Ed Vandermeulen

11.     Ed Busch

12.     Earl Smith

13.     Eric Thigpen

14.     Raymond Grabert

15.     Gerald McNeill

17.     Arthur Murph (status as putative class member depends upon extent of
        compromise with LNA)

18.     William Villavasso

19.     Maj. Pete Tufaro (resides in Arabi, is putative class member; contact information
        shown on plaintiffs' witness list)

20.     Salvador Gutierrez, Esq. (has stated that he is putative class member; contact
        information shown on plaintiffs' witness list)

20.     James Ruiz (client of undersigned)

21.     Sally Jones (client of undersigned)

22.     Carolyn Berryhill (has been deposed)

23.     Clarence Sartin (effort has been made to depose him)

24.     Kendrick Pounds (has been deposed)

25.     Any and all persons identified during depositions of Arthur Murph, Carolyn
        Berryhill, Kendrick Pounds, and/or any and all other persons deposed or to be
        deposed.  Plaintiffs have not yet determined which of such persons may be called,
        and will supplement according to law and applicable Case Management Orders
        and other orders of the Court.

26.    Lt. Cmdr. Donald Green, USCG (Ret.)

27.    Raymond Helmer, P.E.

28.    R. Lee Wooten

29.    Don C. Coker

30.    Aurora Environmental Consultants

31.    Ronald C. Kessler, Ph.D

32.    John Kilpatrick

33.    Hector Pazos, P.E.

34.    Robert Bartlett, P.E.

35.    Jim Reed (putative class member, 4025 Kings Dr., Chalmette, LA)

36.    Any and all putative plaintiff class members, named class representatives, named plaintiffs (see the above explanation).

37.    Any and all purported experts retained by other parties to this consolidated litigation (see the above explanation).

38.    Any and all known to or identified by other parties (see the above explanation).

39.    Any and all others yet to be determined (see the above explanation)

40.    Any and all listed above in Answer No. 1.


**INTERROGATORY NO. 3:**

Identify and fully describe all simulations, replicas, models, mockups, and other study, investigation, or representation, forensic or otherwise, of any an all things, events and/or locations which you will (1) introduce at trial, and/or (2) rely upon at trial, and/or (3) disclose, display or publish to the trier of fact, and/or (4) of which any witness you will call at trial will be informed and/or upon which any such witness will rely in furtherance of trial testimony.

**ANSWER TO INTERROGATORY NO. 3:**

Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Plaintiffs have not yet determined whether to use any of the items subject of the request, but anticipate the possibility of computer or other simulation of the variety devised by Vrijling, and/or reconstruction of the movements of the barge and/or breaches of the eastern IHNC floodwall subject of this suit, and/or additional models, studies, demonstrative exhibits, etc., pertaining to elements of damages claimed herein and/or relative to the particular areas of expertise of expert witnesses to be called.

## INTERROGATORY NO. 4:

Please state the full names, job titles, employers, credentials, and areas of expertise of any and all experts or opinion witnesses whom you will or may call to render any opinion concerning any issues in this matter, whether by affidavit, report, or trial testimony, and provide a summary of all such opinions and a list of all documents consulted, used or relied upon by such expert or opinion witness.

## ANSWER TO INTERROGATORY NO. 4:

Plaintiff objects to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

_____Plaintiffs will submit their expert reports and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.  Please see witness lists filed into the record hereof.

Plaintiffs may call:

1.      Lt. Cmdr. Don Green, USCG (Ret.) - maritime operations and regulations - negligence of defendants and unseaworthiness of their vessels, breakaway causation;

2.      Raymond Helmer, P.E. - breach causation and hydrological flood analysis;

3.      Robert Bartlett, P.E. - breach causation

4.       Hector Pazos, P.E. - breach causation

5.       Aurora Environmental Consultants - pollution, contamination;

6.       John Kilpatrick - real property losses;

7.       Don Coker - business losses;

8.       Ron C. Kessler, Ph.D - emotional damages;

9.       Any and all others yet to be determined and/or as reflected on said witness lists.

Please see curricula vitae submitted herewith.

**INTERROGATORY NO. 5:**

Please state the full names, addresses, job titles and employers of all lay persons you will call or may call to testify at trial, and state the substance of each fact you intend to prove through testimony elicited from such witnesses.

**ANSWER TO INTERROGATORY NO. 5:**

Plaintiffs will submit their witness lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Please see Answers Nos. 2 and 4, above, and Witness List filed November 20, 2007, and every 20th day of every month thereafter until final witness lists are required.

Ethel Mumford c/o BARGE PSLC

Michael Riche c/o BARGE PSLC

Kismit Bourgere c/o BARGE PSLC

Rico Terrence Sutton c/o BARGE PSLC

Jimmie Harris c/o BARGE PSLC

Bob and Dianne Glaser c/o BARGE PSLC

Herman and Aida Koch c/o BARGE PSLC

11

Josephine Richardson c/o BARGE PSLC

Terry Adams c/o BARGE PSLC

Christopher Weaver c/o BARGE PSLC

Ronald McGill c/o BARGE PSLC

Wilson Simmons c/o BARGE PSLC

Arthur Murph

Bill Villavasso

Maj. Pete Tufaro, St. Bernard Parish Sheriff's Office

Sal Gutierrez, Esq.

James Ruiz c/o BARGE PSLC

Sally Jones c/o BARGE PSLC

Jim Reed

Dan Mecklenborg

David Sehrt

Pankaj Shah

Patrick Morton

Stanley Cook

Greg Jarrell

David Williams

Pete Tassin

Gary Holman

Ed Vandermeulen

Ed Busch

Earl Smith

Eric Thigpen

Raymond Grabert

Gerald McNeill

Any and listed in any other responses herein.

Any and all known to or disclosed by any other party.

Any and all others yet to be determined.


**INTERROGATORY NO. 6:**

What do you contend caused the breakaway of the Barge ING 4727?  (Please provide a full narrative account of all factors, including the time at which you contend the barge broke away and the reasons why it broke away, all parties at fault in the breakaway, and all measures which, if taken, would have prevented the breakaway).

**ANSWER TO INTERROGATORY NO. 6:**

_____Objections: calls for expert opinion and speculation as to all imaginable measures that would have prevented the breakaway.  Subject to and without waiver of any objections, plaintiffs respond:

Pursuant to Rule 33(d), Fed. R. Civ. Pro., see Plaintiffs' Complaints herein, Answers, Claims and Defenses, Phase I and Phase II motions and oppositions, and pretrial and trial submissions, in *In Re Ingram Barge Company, etc.*, 05-4419.  To paraphrase, the barge broke away due to negligence and unseaworthiness and allided twice with the eastern Industrial Canal floodwall between Florida Avenue and N. Claiborne Avenue, causing the North and South breaches.  Had defendants complied with USCG and other governmental and professional regulations and guidelines, with applicable standards of maritime care, and with the tenets of good seamanship, as described in 05-4419, ING 4727 would not have broken away from the LNA terminal.

The responsive information is the subject of various expert reports which will be provided to Defendants pursuant to the Case Management Orders and scheduling deadlines set by the Court.

**INTERROGATORY NO. 7:**

Identify any past instance in which a barge breakaway caused flooding as the result of an allision with a flood protection structure.

**ANSWER TO INTERROGATORY NO. 7:**

Plaintiffs object to this request as unduly burdensome, in that the Coast Guard has already determined that breakaway barges are a significant hazard in hurricanes, and has promulgated regulations and plans designed to safeguard against this hazard and avoid the type of breaches that occurred here.

Defendant may, as readily as plaintiffs, file a Freedom of Information inquiry as to all of the prior incidents that led the Coast Guard to recognize the risks in question.

Plaintiffs also object to this request as overly broad, vague, and not limited in either time, place, or scope, and to the extent that the request is not reasonably calculated to lead to discovery of admissible evidence. This litigation concerns the breakaway of ING4727 on August 29, 2005 and consequent allisions with the eastern Industrial Canal floodwall, not other barges at other times relative to other structures.

Subject to and without waiver of any objection, Plaintiffs answer, "unknown."

**INTERROGATORY NO. 8:**

In Court Record Doc. 798-3 in Case No. 05-4419, Group A plaintiffs stated that "eyewitnesses...saw the barge crash through the intact floodwall long before the MRGO flooded." Please identify all such eyewitnesses and state the date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account.

**ANSWER TO INTERROGATORY NO. 8:**

Plaintiffs object to this Request on the grounds of the attorney work-product doctrine insofar as the Interrogatory requests the "date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account."

Subject to said objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their witness lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

14

Subject to these objections and without waiving same, on the date that Record Doc. 789-3 was filed in Case No. 05-4419, the Group A Plaintiffs had identified the eyewitnesses listed in the pretrial order(s) applicable as of that date.  Additionally, Plaintiffs identify the following:

1.  Terry Adams - account of breach learned through 2006 interview

2.  Arthur Murph - account of breach learned through interview of unknown date

3.  William Villavasso - account of breach learned through 2007 interview, and December 18, 2007, deposition

4.  Christopher Weaver - account of breach learned through 2006 interview

5.  Deputy Pete Tufaro - flood time and direction learned through 2007 interview

6.  Sal Gutierrez - flood time and direction learned through 2007 interview

7.  James Ruiz - flood time and direction learned through 2007 interview

8.  Sally Jones - flood time and direction learned through 2007 interview

9.  James Reed - flood time and direction learned through 2007 interview

Plaintiffs reserve the right to supplement and amend this Answer to Interrogatory.

**INTERROGATORY NO. 9:**

Identify all "witnesses [who] say that they heard the barge scraping against the still intact floodwall, and then saw it crash through" as you represented to the public on www.bargecase.com and state the date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account.

**ANSWER TO INTERROGATORY NO. 9:**

Plaintiffs object to this Request on the grounds of the attorney work-product doctrine insofar as the Interrogatory requests the "date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account." Subject to said  objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their witness lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

15

Arthur Murph, through interview of unknown date.

Carolyn Berryhill (has been deposed)

Clarence Sartin (effort has been made to depose him)

Kendrick Pounds (has been deposed)

## INTERROGATORY NO. 10:

Identify every other person, if any, who claims to have seen or heard the barge make contact with the IHNC floodwall, pass from the canal side of the floodwall to the residential side of the wall, or cause one or more breaches of the floodwall, and state the date and means by which plaintiffs' counsel or representatives learned the substance of each person's account.

## ANSWER TO INTERROGATORY NO. 10:

Plaintiffs object to this Request on the grounds of the attorney work-product doctrine insofar as the Interrogatory requests the "date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account." Subject to said objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their witness lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Subject to and without waiver of any objections, plaintiffs respond as follows:

1.  William Villavasso - Sewerage and Water Board of N.O - Station 05 - Intersection of Surecoat Dr. and Florida Ave. - 2007 interview

2.  Terry Adams - Jourdan Avenue -2006 interview

3.  Arthur Murph - 1739 Jourdan Ave. -interview of unknown date

4.  Ronald McGill - 2006 interview

5.  Wilson Simmons - 2006 inteview

6.  Christopher Weaver - 2006 interview

7.  Rico Terrence Sutton - 2523 and a Half Jourdan Ave. - 2007 interview.

Additionally, other putative class members have stated that they heard one or more explosions, whose times  -  to the best of each relator's recollection - generally or roughly coincide with times at which witnesses maintain that they saw the barge crash through the floodwall with an explosive sound, and with times at which they and others experienced a violent surge of water, lifting houses from their foundations and propelling them up the street.  These accounts are commonplace among persons from the Lower Ninth Ward, including but not limited to the following clients of the undersigned, who may be called to testify:

Ernest Offray, formerly of 2028 Deslonde;

Sidney Williams, formerly of 1720 Tennessee Street;

Delores St. Cyr-Butler, formerly of 5434 N. Johnson Street;

Robert Green - 1826 Tennessee Street.

Carolyn Berryhill (has been deposed)

Clarence Sartin (effort has been made to depose him)

Kendrick Pounds (has been deposed)


**INTERROGATORY NO. 11:**

In Court Record Doc. 726 (at page 7, footnote 1), Group A represented to the Court that "pronouncements of experts" state "that the barge is what breached the floodwall."  Similarly, on the website www.bargecase.com, Group A counsel have represented to the public that experts have formed the opinion that the barge "broke the floodwall" and that "scientific investigations...reveal that the Industrial Canal breach was caused by a barge adrift in the canal during Katrina, which slammed into the concrete floodwall, allowing the wall and levee to topple."  Please identify every expert pronouncement that the barge is what breached the floodwall, every expert who has formed the opinion that the barge broke the floodwall, and every scientific investigation that reveals that the Industrial Canal breach was caused by a barge.

**ANSWER TO INTERROGATORY NO. 11:**

_____Plaintiffs will submit their expert reports and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Raymond Helmer, Hector Pazos, Robert Bartlett and Robert Bea have stated that the

barge broke the floodwall.  The IPET and R. Lee Wooten state that the barge could have broken the floodwall.

**INTERROGATORY NO. 12:**

State the whereabouts/physical location of each individual plaintiff during the period from August 28, 2005 through August 30, 2005.  Provide street address(es) or other similar information.

**ANSWER TO INTERROGATORY NO. 12:**

_____To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver as follows:

**Ethel Mae Mumford:**

From August 28, 2005 through August 30, 2005, Plaintiff, Ethel Mae Mumford, was located at a Motel 6 in Lafayette, Louisiana.

**Josephine Richardson:**

On August 28, 2005, Plaintiff, Josephine Richardson, was located at 1321 Egania Street, New Orleans, LA 70117.  On August 29-30, Mrs. Richardson was located at 3800 Clermount Drive, New Orleans, Louisiana.

**Jimmie Harris:**

From August 28, 2005 through August 30, 2005, Plaintiff, Jimmie Harris, was located at Children's Hospital in New Orleans, Louisiana in his capacity as a firefighter.

**Harris Irvin:**

Harris Irvin declines to continue service as a class representative, in light of demands on his time relative to ongoing repairs of his property.

**Kismit Bourgere:**

August 28 - 29: Meridian, Mississippi; August 30: Plano, Texas.

**Michael Riche:**

18

From August 28, 2005 through August 30, 2005, Plaintiff, Michael Riche, was located at the Vineyard Apartments in Brandon, Mississippi.

**Jacob Glaser:**

From August 28, 2005 through August 30, 2005, Plaintiff, Jacob Glaser, was located at the Fairfield Inn in Dothan, Alabama.

**Dianne Glaser:**

From August 28, 2005 through August 30, 2005, Plaintiff, Dianne Glaser, was located at the Fairfield Inn in Dothan, Alabama.

**Herman Koch:**

On August 28, 2005, Plaintiff, Herman Koch, traveled from Louisiana to 3023 Dolphin Court, Seabrook, Texas 77586 and remained there through August 30, 2005.

**Aida Koch:**

On August 28, 2005, Plaintiff, Aida Koch, traveled from Louisiana to 3023 Dolphin Court, Seabrook, Texas 77586 and remained there through August 30, 2005.

**Rico Sutton:**

On August 28, 2005 through August 30, 2005, Plaintiff, Rico Sutton, was located at his home in the Lower Ninth Ward.  His address is 2523 ½ Jourdan Avenue, New Orleans, LA 70117.

**INTERROGATORY NO. 13:**

As to each individual plaintiff, state whether the plaintiff claims to have seen the barge and/or the breaches of the retaining wall on the eastern side of the IHNC on August 29, 2005.

**ANSWER TO INTERROGATORY NO. 13:**

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver as follows:

**Ethel Mae Mumford:**

No.

19

**Josephine Richardson:**

No.

**Jimmie Harris:**

No.

**Harris Irvin:**

Harris Irvin declines to continue service as a class representative, in light of demands on his time relative to ongoing repairs of his property.

**Kismit Bourgere:**

No.

**Michael Riche:**

No.

**Jacob Glaser:**

No.

**Dianne Glaser:**

No.

**Herman Koch:**

No.

**Aida Koch:**

No.

**Rico Sutton:**

Yes.

**<u>INTERROGATORY NO. 14:</u>**

Plaintiffs' complaints in this case allege that the barge "crashed through the East side flood wall taking out a large section of the flood wall" (Mumford Paragraph VII) and that it "raced diagonally across the Industrial Canal, and struck the east wall of the Industrial Canal, causing it to fail" (Boutte Paragraph 8).  Identify all witnesses, documents, and facts that support any of these allegations.

## ANSWER TO INTERROGATORY NO. 14:

1.   IPET

2.   Ray Helmer

3.   Hector Pazos

4.   Robert Bartlett

5.   R. Lee Wooten

6.   Robert Bea

7.   United States Coast Guard

8.   Terry Adams

9.   William Villavasso

10.   Arthur Murph

11.   Christopher Weaver

12.   Ronald McGill

13.    Wilson Simmons

14.   Rico T. Sutton

15.   Multiple photos already produced for requestors

16.   Any and all others yet to be determined.

Also, please see Plaintiffs' Complaints herein, Answers, Claims and Defenses, Phase I and Phase II motions and oppositions, and pretrial and trial submissions, in *In Re Ingram Barge Company, etc.*, 05-4419.

21

Plaintiffs reserve all theories and allegations concerning the barge's rate or direction of travel within the IHNC.

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

## INTERROGATORY NO. 15:

Identify each person who has told you, your counsel, or your representatives (including investigators employed by you or your counsel), that he or she saw or heard the barge and/or saw or heard the failure of the IHNC retaining wall on August 29, 2005 and state the substance of the communication.

## ANSWER TO INTERROGATORY NO. 15:

_____Plaintiffs object to this request as duplicative.

Subject to and without objection, please see responses above.

## INTERROGATORY NO. 16:

Identify each person who has told you, your counsel, or your representatives (including investigators employed by you or your counsel) that the failure of the IHNC retaining wall occurred for reasons other than the barge, or occurred before the barge passed through or in the absence of the barge, and state the substance of the communication, including any reasons or support given.

## ANSWER TO INTERROGATORY NO. 16:

Despite extensive and ongoing investigation to try to determine the existence of any such persons, none whatsoever, other than attorneys for BARGE defendants and MRGO plaintiffs, have been discovered.

## INTERROGATORY NO. 17:

Identify each person who called or who has been interviewed by Kendrick Harding or any other investigator or person working on the plaintiffs' behalf in connection with the barge breakaway and/or the breach(es) of the IHNC floodwall, including the person's name, address, and telephone number, and date of interview, whether a tape recording or other transcription was

made, and whether documents exist memorializing the interview.

**ANSWER TO INTERROGATORY NO. 17:**

_____Objection: calls for attorney work product and privileged client communications.  Subject to and without waiver of any objections, Plaintiffs respond:

_____Cmdr. Don Green's staff polled several barge companies to determine whether they had a written hurricane plan.  Their identities are contained in Don Green's Phase II deposition in 05-4419.

_____Kenrick (not "Kendrick") Harding has interviewed no one.

_____The following clients of undersigned have made oral or written statements to undersigned attorneys throughout the representation: All plaintiffs represented by undersigned, including Terry Adams, Christopher Weaver, Wilson Simmons, Ronald McGill, and numerous others concerning the sound of the barge hitting the floodwall, whose identities will be determined and provided to requestor.

Plaintiffs who are clients of other attorneys may have made statements to their attorneys.

Arthur Murph made an oral statement to his attorney in 2005 or 2006.

The following experts have made oral or written statements to undersigned in 2006 and 2007:  Ray Helmer, Robert Bartlett, Hector Pazos, Don Green.

William Villavasso made an oral statement to undersigned. in 2007.

Dan Mecklenborg, David Sehrt, Pankaj Shah, Patrick Morton, Stanley Cook, Greg Jarrell, David Williams, Pete Tassin, Gary Holman, Ed Vandermeulen, Ed Bush, Earl Smith, Richard Heck, Eric Thigpen, Raymond Grabert, Gerald McNeill, Barry Boudreaux, Rachael Burnett, Terry Adams and Wilson Simmons were deposed in 2006 and 2007.

**INTERROGATORY NO. 18:**

For each individual plaintiff, did you make or receive any telephone calls on August 29 to or from a location in the Lower Ninth Ward or St. Bernard Parish?  If so, provide the phone number from which the call was made, the phone number to which it was placed, the time of the call, the identity of the other party to the call, and the subject of the call.

**ANSWER TO INTERROGATORY NO. 18:**

_____To the best of Plaintiffs' current knowledge, information, recollection, and belief,

Plaintiffs aver as follows:

**Ethel Mae Mumford:**

Plaintiff, Ethel Mae Mumford, did not make or receive any telephone calls on August 29 to or from a location in the Lower Ninth Ward or St. Bernard Parish.

**Josephine Richardson:**

Plaintiff, Josephine Richardson, placed phone calls to her brother, Earl Long, Sr., at 504-943-9961.

**Jimmie Harris:**

Plaintiff, Jimmie Harris, did not make or receive any telephone calls on August 29 to or from a location in the Lower Ninth Ward or St. Bernard Parish**.**

**Harris Irvin:**

Harris Irvin declines to continue service as a class representative, in light of demands on his time relative to ongoing repairs of his property.

**Kismit Bourgere:**

None.

**Michael Riche:**

Plaintiff, Michael Riche, did not make or receive any telephone calls on August 29 to or from a location in the Lower Ninth Ward or St. Bernard Parish**.**

**Jacob Glaser:**

Plaintiff, Jacob Glaser, did not make or receive any telephone calls on August 29 to or from a location in the Lower Ninth Ward or St. Bernard Parish**.**

**Dianne Glaser:**

Plaintiff, Dianne Glaser, did not make or receive any telephone calls on August 29 to or from a location in the Lower Ninth Ward or St. Bernard Parish

**Herman Koch:**

Plaintiff, Herman Koch, did not make or receive any telephone calls on August 29 to or from a location in the Lower Ninth Ward or St. Bernard Parish**.**

**Aida Koch:**

Plaintiff, Aida Koch, did not make or receive any telephone calls on August 29 to or from a location in the Lower Ninth Ward or St. Bernard Parish**.**

**Rico Sutton:**

Plaintiff, Rico Sutton, made and received phone calls on August 29 to and from locations in the Lower Ninth Ward or St. Bernard Parish.  He made phone calls from 504-314-5006.

## INTERROGATORY NO. 19:

The website maintained by plaintiffs' counsel www.bargecase.com, asserts: [T]he barge "was the sole cause of the eastern Industrial Canal breaches in the Lower Ninth Ward."  Do you contend in this action that the barge was the "sole cause" of the eastern Industrial Canal breaches in the Lower Ninth Ward?  If so, then provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely.

## ANSWER TO INTERROGATORY NO. 19:

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Plaintiffs answer in the affirmative.  Eyewitnesses identified herein saw the barge breach the intact floodwall, described by Bea as otherwise performing "admirably" before his retention by any litigants; further expert opinion will be provided in accord with the Court's scheduling orders.  Also, the sudden and violent introductions of massive flooding occurred contemporaneously with the appearances of the barge through the floodwall, and the sound of an "explosion" at each of the two occasions.

## INTERROGATORY NO. 20:

The reports of the Interagency Performance Evaluation Team (IPET), Independent Levee Investigation Team (ILIT), and Team Louisiana investigations have each attributed the IHNC floodwall breaches to causes other than the barge.  Do you disagree with the conclusions of these reports regarding the causes of the IHNC floodwall breaches?  If so, then provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely.

**ANSWER TO INTERROGATORY NO. 20:**

_____Plaintiffs object to this request as calling for speculation, mental impressions of counsel and expert opinion outside the purview of anyone but experts.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Plaintiffs also object to this Interrogatory because it assumes or states that "the Interagency Performance Evaluation Team (IPET), Independent Levee Investigation Team (ILIT), and Team Louisiana investigations have each attributed the IHNC floodwall breaches to causes other than the barge, " which is inaccurate.  The IPET represents that the barge, if it allided with the floodwall, breached it.  Plaintiffs and their expert agree with this conclusion.  Plaintiffs and their expert disagree with theories attributing the IHNC floodwall breaches to causes other than the barge - because, among other reasons - eyewitnesses saw the barge destroy the flood protection structures that otherwise were found to have performed admirably.

**INTERROGATORY NO. 21:**

Do you contend that the IHNC floodwall would have remained intact if the barge had not broken away from its moorings?  If so, then provide all reasons and identify witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.  If not, then state what mechanism would have caused the wall to fail in the absence of the barge.

**ANSWER TO INTERROGATORY NO. 21:**

_____Plaintiffs object to this request in that it calls for speculation and expert opinion.  Plaintiffs further object in that the Interrogatory is not reasonably calculated to lead to discovery of admissible evidence, as this litigation (or any other litigation) does not concern what would have or might have happened in time, but what actually did happen.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Subject to and without waiver of any objections, "yes." The eastern IHNC floodwall

26

between Florida and N. Claiborne remained intact in all areas with which the barge did not allide.

In addition, please see the above responses.

## INTERROGATORY NO. 22:

Do you contend that the plaintiffs would not have suffered damages if the ING 4727 had remained at its moorings?  If so, then provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.  If not, state what you contend damages would have been if the barge had remained at its moorings.

## ANSWER TO INTERROGATORY NO. 22:

_____Plaintiffs object to this request in that it calls for speculation and expert opinion. Plaintiffs further object in that the Interrogatory is not reasonably calculated to lead to discovery of admissible evidence, as this litigation (or any other litigation) does not concern what would have or might have happened in time, but what actually did happen.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

Subject to and without waiver of any objections, plaintiffs respond that had the barge remained moored, the plaintiffs would not have suffered the damages complained-of in the subject litigation.

In addition, please see the above responses.

## INTERROGATORY NO. 23:

Do you contend that the barge ING 4727 caused or contributed to the northern breach of the IHNC retaining wall (near the pump station by the Florida Avenue Bridge)?  If so, provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.

## ANSWER TO INTERROGATORY NO. 23:

_____Yes, Plaintiffs contend that the barge ING 4727 caused or contributed to the northern breach of the IHNC retaining wall (near the pump station by the Florida Avenue Bridge).  The event was witnessed by William Villavasso, and heard by others.

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

In addition, please see the above responses.

## INTERROGATORY NO. 24:

Do you deny that the actions or inactions of the United States Government, including the Army Corps of Engineers, caused or substantially contributed to the flooding in the Lower Ninth Ward and St. Bernard Parish?  If so, provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.

## ANSWER TO INTERROGATORY NO. 24:

_____Plaintiffs object to this request in that it calls for speculation, expert opinion, the mental impressions of counsel, and legal conclusions.  Plaintiffs also object on the grounds of overbreadth and undue burden in that the subject litigation involves only portions of St. Bernard Parish.

_____Yes, plaintiffs deny the matters subject of the Interrogatory, based upon first-hand accounts that the barge caused the flooding of the proposed class geography.

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

In addition, please see the above responses.

## INTERROGATORY NO. 25:

Provide your complete, detailed, exhaustive account of any and all locations, things, persons, events, circumstances, and factors constituting the causes and occurrences of the breaches of the eastern IHNC floodwall between S. Claiborne and Florida Avenues, including, but not limited to, the time that each breach occurred and all facts and evidence showing what time each breach occurred.

## ANSWER TO INTERROGATORY NO. 25:

_____Plaintiffs object to the request as premature (discovery is ongoing) and as calling for attorney work product, mental impressions of counsel, and expert opinion.  Subject to and without waiver of any objections:

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class

Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

_____The barge broke away, first breached the intact floodwall near the Florida Avenue bridge, and next caused the southern breach.  See also all record documents filed by plaintiffs in 05-4419, and BARGE complaints in this matter.  Please also see other responses herein.

In addition, please see the above responses.

**INTERROGATORY NO. 26:**

For each individual plaintiff, including each proposed class representative, identify every injury or harm for which damages are sought by that person and for each element of damages, identify all evidence regarding the existence and the amount of the claimed damages including how the amount of damages is determined.

**ANSWER TO INTERROGATORY NO. 26:**

_____Please see Sixth Supplemental Complaint in *Mumford*.  Plaintiffs are studying the most appropriate means of valuing their losses, and will supplement their answers to this interrogatory when they are able to do so.

Further, Plaintiffs' experts' reports will address the claimed damages and how the amount of damages is determined.   Plaintiffs will submit their expert reports and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

_____

**INTERROGATORY NO. 27:**

Describe in detail how this case can be tried as a class action, including an identification of all issues that plaintiffs propose to try to a single jury and a description of how plaintiffs propose to try, on a classwide or individualized basis, causation and damages as to each category of harm for which damages are sought in the complaint.

**ANSWER TO INTERROGATORY NO. 27:**

Plaintiffs object on the ground that this interrogatory seeks privileged attorney work-product and the mental impressions of counsel.

Subject to and without waiver of any objections, Plaintiffs state the following:

Plaintiffs have not yet made final decisions on these topics, and  will submit class

certification pleadings and their detailed trial plan in accord with Court order and with proper input from the Court and from any other sources.  To the extent that defendants wish to propose particular ideas to plaintiffs, plaintiffs will consider them.  Further, Plaintiffs' proposed trial plan will require the selection of classes of Plaintiffs who adequately represent the Class.

**INTERROGATORY NO. 28:**

Identify all "conflicts of interest between attorneys and litigants" referenced in plaintiffs' motion for reconsideration (Rec. Doc. 781-2) and every "conflict" referenced in Rec. Doc. 804 (at 4).

**ANSWER TO INTERROGATORY NO. 28:**

_____Objections: seeks attorney work product, mental impressions, conclusions of law. Argument of counsel is not an admission and is not evidence.  Subject to and without waiver of any objections:

There are differences of focus, approach and emphasis among the different plaintiffs in case no. 05-4182, as there are among the different defendants in case no. 05-4182.  Plaintiffs do not yet know how these differences will be resolved, but are confident that there are various ways and means by which they can be resolved.

Additionally, plaintiffs note the potential but unknown effect of *ex parte* communications with putative class members by counsel for defendants.

**INTERROGATORY NO. 29:**

For each individual plaintiff and proposed class representative: Did you submit a claim for homeowners insurance and/or government benefits (such as "Road Home" benefits) related to Hurricane Katrina?  If so, state the date of the claim, the present status of the claim, and any amounts received.

**ANSWER TO INTERROGATORY NO. 29:**

_____Plaintiffs object to this request as overbroad, vague, compound, and not likely to lead to the discovery of admissible evidence.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver as follows:

**Ethel Mae Mumford:**

1.      Plaintiff, Ethel Mae Mumford, submitted a claim for homeowners insurance.  On or about December, 2005, she received $12,000.00.

2.      Plaintiff, Ethel Mae Mumford, submitted a claim to the Road Home.  On or about January, 2007, she received $50,000.00**.**

        Plaintiff, Ethel Mae Mumford, submitted a claim to the SBA.  On or about May, 2007, she received a loan in the amount of $70,000.00.

        Plaintiff, Ethel Mae Mumford, submitted a claim to FEMA.  On or about December 6, 2005, she received $4,300.00.

        Plaintiff, Ethel Mae Mumford, received approximately $300.00 from the Red Cross in December, 2005.

**Josephine Richardson:**

        Plaintiff, Josephine Richardson, submitted a claim for homeowners insurance.  On or about December 13, 2005, she received $10,489.91.

        Plaintiff, Josephine Richardson, submitted a claim to the Road Home.

        Plaintiff, Josephine Richardson, submitted a claim to the SBA.

        Plaintiff, Josephine Richardson, submitted a claim to FEMA.

        Plaintiff, Josephine Richardson, received funds from the Red Cross in approximately September of 2005, but Plaintiff cannot recall the amount.

**Jimmie Harris:**

1.      Plaintiff, Jimmie Harris, submitted a claim for homeowners insurance. On or about August 30, 2006, he received $1,680.71.

2.      Plaintiff, Jimmie Harris submitted a claim to the Road Home.  On or about January 5, 2007, he received approximately $48,000.00.

        Plaintiff, Jimmie Harris, submitted a claim to the SBA.  On or about February 22, 2006, his claim was denied.

        Plaintiff, Jimmie Harris, submitted a claim to FEMA.  On or about December 6, 2005, his claim was denied.

Plaintiff, Jimmie Harris, received a refrigerator from the Red Cross.

**Harris Irvin:**

Harris Irvin declines to continue service as a class representative, in light of demands on his time relative to ongoing repairs of his property.

**Kismit Bourgere:**

Submitted claim to LRA, received $700.00

Submitted claim to FEMA, received approximately $14,000.00.

Submitted claim to Red Cross or Salvation Army, received $2600.00

**Michael Riche:**

1.    Plaintiff, Michael Riche, made the following homeowners insurance claims:

All homeowners insurance claims were made in September, 2005.  Michael Riche received the following homeowners insurance proceeds:

                Property A:    $2,000.00
                Property B:    $$7,146.79

2.    Plaintiff, Michael Riche, submitted a claim to the Road Home and received an initial grant in the amount of $18,000.00 and an additional grant in the amount of $50,000.00.

Plaintiff, Michael Riche, submitted a claim to the SBA.  The claim was approved, but the SBA made it impossible to receive the loan.

Plaintiff, Michael Riche, submitted a claim to the LRA for a small business grant.  He received $20,000.00.

Plaintiff, Michael Riche, submitted a claim to FEMA and received $5,000.00.

Plaintiff, Michael Riche, received $965.00 from the Red Cross.

**Jacob Glaser:**

1.    Plaintiffs, Jacob and Dianne Glaser, submitted a claim for homeowners insurance on the

following properties:

>3716 Riverland Drive
>Chalmette, LA 70043

The claim on the home is still ongoing.

2.      Plaintiffs, Jacob and Dianne Glaser, applied for Road Home benefits in approximately November of 2006.  The claim is ongoing.  They have received nothing as of this date.

Plaintiffs, Jacob and Dianne Glaser, submitted a claim to the SBA for benefits and received $10,000.00.  Their claim is still ongoing.

Plaintiffs, Jacob and Dianne Glaser, submitted a claim to FEMA and received benefits. Date and amount unknown.  Plaintiffs will supplement this answer as soon as the information is obtained.

Plaintiffs, Jacob and Dianne Glaser, received approximately $600.00 from the Red Cross.

**Dianne Glaser:**

Please see Jacob Glaser's response to this Interrogatory.

**Herman Koch:**

1.      Plaintiffs, Herman and Aida Koch, made the following homeowners insurance claims:

All homeowners' insurance claims were made in early September, 2005.  Herman and Aida Koch received the following homeowners insurance proceeds:

>Property A.    $35.625.99
>Property B.    $16,577.93
>Property C.    $14,419.92
>Property D.    $23,329.10

Their homeowners' claims have been resolved.

2.      Plaintiffs, Herman and Aida Koch, submitted a claim to the LRA.  The first claim was submitted on February 21, 2007.  The second claim was submitted in July of 2007.  The claim is still ongoing.  No monies have been received.

Plaintiffs, Herman and Aida Koch, received a FEMA grant in the amount of approximately $2,000.00.  Date unknown.

33

Plaintiffs, Herman and Aida Koch, received a Red Cross credit while in Houston, Texas. They do not recall the exact amount.

**Aida Koch:**

Please see response to Herman Koch's Interrogatory.

**Rico Sutton:**

Plaintiff, Rico Sutton, did not submit a claim for homeowners' insurance.

Plaintiff, Rico Sutton, submitted a claim to the SBA, but was denied.

Plaintiff, Rico Sutton, did not submit a claim to the LRA.

Plaintiff, Rico Sutton, submitted a claim to FEMA. Plaintiffs will supplement this answer as soon as the information is obtained.

Plaintiff, Rico Sutton, received $1,000.00 from Red Cross.

## INTERROGATORY NO. 30:

Without stating the substance of any attorney-client communication, identify each occasion on which proposed class counsel has communicated with the proposed representative plaintiffs regarding the subject matter of this suit, including the date of each communication and whether it was in writing, by phone, in person, by e-mail, or by other means.

## ANSWER TO INTERROGATORY NO. 30:

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver that, while each Named Plaintiff has communicated with class counsel, the Named Plaintiffs did not keep records of such communications. To the best of undersigneds' and class representatives' recollections, the Named Plaintiffs have communicated verbally with proposed class counsel or their staff an approximate average of five occasions since their designation as class representatives, have received approximately three mass mailings from undersigned, two or three additional mailings from undersigned, and have met personally with undersigned for purposes of introduction, interview or document production. Additional instances are unknown, as numerous putative class members call throughout the day for updates or to ask questions, which calls are not memorialized, and it is therefore unknown whether such calls were received from class representatives before they were so designated.

## INTERROGATORY NO. 31:

34

State how you propose to ascertain the identities of the individuals and/or entities that make up the proposed class and subclasses, including the true owners of real property located within the proposed class area.

**ANSWER TO INTERROGATORY NO. 31:**

Many putative class members have already been in touch with counsel for plaintiffs, and additional putative class members contact counsel for plaintiffs every day.

With respect to putative class members who have not yet contacted counsel for plaintiffs as of the date of a Class Notice, plaintiffs will use all publicly available information, press releases, web sites, and referrals from existing clients.  Plaintiffs will seek to use the information of governmental and private aid organizations that have been in contact with putative class members.  An advertising program will likely be necessary.  It is possible that plaintiffs will use a recognized claims processing agency such as Bourgeois Bennett.

Plaintiffs do not limit themselves by the foregoing response, and may use other means that occur to them hereafter as appropriate in this matter.

Plaintiffs anticipate that a Plan of Notice will be part of their submissions in support of class certification.

**INTERROGATORY NO. 32:**

Identify every floodwall and levee breach that caused water to flow into the proposed class area of which plaintiffs and their representatives are aware.

**ANSWER TO INTERROGATORY NO. 32:**

_____Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

According to information and belief, the proposed area was entirely flooded and destroyed by the two IHNC breaches subject of this suit, known as the North and South breaches, before water from any other flood source was present in the area.

**INTERROGATORY NO. 33:**

Identify and describe any mathematical or formulaic calculations or models that you contend may be used to determine the cause(s) of alleged injuries to any proposed class member and/or to determine the type or amount of damages sustained by any class member, and explain

35

how such calculations or models would be legally sufficient in any trial of your proposed class action.

## ANSWER TO INTERROGATORY NO. 33:

Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

## INTERROGATORY NO. 34:

Identify and describe in detail the circumstances if any of the individual plaintiffs or proposed class representatives have ever been convicted of a crime, filed for bankruptcy, or been adjudicated to have breached a fiduciary duty.

## ANSWER TO INTERROGATORY NO. 34:

Plaintiffs object to this request as overbroad, unduly burdensome, harassing, embarrassing, annoying, and not reasonably calculated so as to lead to the discovery of admissible evidence.  Plaintiffs also object to this Interrogatory as it seeks information readily available to Defendants in the public domain.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

Criminal convictions - no class representatives have been convicted of a felony within the last ten years.

Bankruptcies - none.

Adjudication of breach of fiduciary duties - none.

## INTERROGATORY NO. 35:

Identify, by court and docket number, each civil or criminal proceeding in which any individual plaintiff or proposed class representative has been a party.

## ANSWER TO INTERROGATORY NO. 35:

Plaintiffs object to this request as overbroad, unduly burdensome, harassing, embarrassing, annoying, and not likely to lead to the discovery of admissible evidence.  Plaintiffs

also object to this Interrogatory as it seeks information readily available to Defendants in the public domain.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver as follows:

**Ethel Mae Mumford:**

Has been party to motor vehicle accident litigation, and a succession, in Civil District Court for the Parish of Orleans.

**Josephine Richardson:**

Plaintiff, Josephine Richardson, has not been a party to a civil proceeding or a criminal proceeding.

**Jimmie Harris:**

Plaintiff, Jimmie Harris, has not been a party to a civil proceeding or a criminal proceeding.

**Harris Irvin:**

Harris Irvin declines to continue service as a class representative, in light of demands on his time relative to ongoing repairs of his property.

**Kismit Bourgere:**

Divorce in 2005.  Ms. Bourgere has also submitted administrative and/or Form 95 claims.

**Michael Riche:**

Plaintiff, Michael Riche, has not been a party to a civil proceeding or a criminal proceeding.  However, Plaintiff, Michael Riche, received funds from the Murphy Oil Spill class action lawsuit.

**Jacob Glaser:**

Plaintiffs, Jacob and Dianne Glaser, are parties in a civil proceeding involving a car accident.  They are also parties in civil proceedings regarding their Katrina-related insurance claims.  Plaintiffs, Jacob and Dianna Glaser, have not been parties to a criminal proceeding.

**Dianne Glaser:**

Plaintiffs, Jacob and Dianne Glaser, are parties in a civil proceeding involving a car accident.  They are also parties in civil proceedings regarding their Katrina-related insurance claims.  Dianne Glaser was party to a nursing/medical malpractice suit concerning her mother's care by a nursing home.  Plaintiffs, Jacob and Dianne Glaser, have not been parties to a criminal proceeding.

**Herman Koch:**

Has submitted administrative and/or Form 95 claims.

**Aida Koch:**

See the answer of Herman Koch above.

**Rico Sutton:**

_____Plaintiff, Rico Sutton, has not been a party to a civil proceeding.  He has not been party to any criminal proceeding resulting in a felony conviction.

**INTERROGATORY NO. 36:**

If you claim damages to real property, identify the real property by address and location and identify all owners, lienholders, mortgagees and mortgagors, and all other persons with a legal interest in said property.

**ANSWER TO INTERROGATORY NO. 36:**

_____Plaintiffs claim damages to real property evaluated by expert analysis on a classwide approach, possibly performed by John Kilpatrick, unless a class is not certified, in which event plaintiffs reserve all of their claims for property damage.  Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver that the following properties were damaged at the following locations:

**Ethel Mae Mumford:**

1.      6101 North Robertson Street (lot)
        New Orleans, Louisiana

No lienholders and no mortgage.

2.      6107-05 North Robertson Street (house)
        New Orleans, Louisiana
        No lienholders and no  mortgage.

3.      6113-15 North Robertson Street (house)
        New Orleans, Louisiana
                Ethel Mae Mumford
                Lois M. Callum
                Henderson Mumford, III
                SBA loan on 6113-15 North Robertson

**Josephine Richardson:**

1321 Egania Street
New Orleans, Louisiana
Josephine Richardson
No lienholders and no mortgage

**Jimmie Harris:**

924 Lamanche Street
New Orleans, Louisiana
Jimmie and April Harris
No lienholders and no mortgage

**Harris Irvin:**

Harris Irvin declines to continue service as a class representative, in light of demands on his time relative to ongoing repairs of his property.

**Kismit Bourgere:**

        827 Sister Street
        New Orleans, Louisiana 70117
        Rental.

**Michael Riche:**

1.      8825-27 West Judge Perez Drive
        Chalmette, Louisiana 70043

Michael and Glenda Riche
No lienholders and no mortgage
Business

2.      128-130 West Philip Court
Chalmette, Louisiana 70043
Michael Riche
No lienholders and no mortgage
Rental property

**Jacob Glaser:**

1.      8400 W. Judge Perez Dr.
Chalmette, Louisiana
Jacob and Dianne Glaser
No lienholders and no mortgage
Business location - Rental

**Dianne Glaser:**

Please see the response of Jacob Glaser.

**Herman Koch:**

1.      6035-37 Burgundy Street
New Orleans, Louisiana
Herman and Aida Koch
No lienholders and no mortgage

2.      6317-19 Douglas Street
New Orleans, Louisiana
Herman and Aida Koch
No lienholders and no mortgage

3.      8545-47 Deerfield Drive
Chalmette, Louisiana
Herman and Aida Koch
No lienholders and no mortgage

4.      3409-11 Shangri-La Street
Chalmette, Louisiana
Herman and Aida Koch
No lienholders and no mortgage

5.      3619 Shangri-La
         Chalmette, Louisiana
         Herman and Aida Koch
         No lienholders and no mortgage

**Aida Koch:**

Please see the response of Herman Koch.

**Rico Sutton:**

_____2523 ½ Jourdan Avenue
         New Orleans, Louisiana
         Rico and Arcola Sutton
         Lienholder: Arcola Sutton

_____Plaintiffs reserve the right to supplement and amend this Answer to Interrogatory.

## INTERROGATORY NO. 37:

If you claim damages for demolition, salvage or restoration of property, identify the person or persons who carried out the demolition, salvage or restoration, the dates on which it was carried out, and describe what was done and the costs incurred.

## ANSWER TO INTERROGATORY NO. 37:

_____Please see Sixth Supplemental Complaint in *Mumford*.

Plaintiffs claim damages to real property evaluated by expert analysis on a classwide approach, possibly performed by John Kilpatrick, unless a class is not certified, in which event plaintiffs reserve all of their claims for property damage.  Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

## INTERROGATORY NO. 38:

If you claim damages for lost income, describe the source and amount of income prior to the storm, the circumstances under which it was "lost," and all efforts to generate income or find work after the storm.

## ANSWER TO INTERROGATORY NO. 38:

Plaintiffs, Michael Riche, Harris Irvin, Rico Sutton, Jacob and Dianne Glaser, and Herman and Aida Koch, claim damages for lost income evaluated by expert analysis on a classwide approach, possibly performed by Don Coker, unless a class is not certified, in which event plaintiffs reserve all of their claims for lost income.

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

## INTERROGATORY NO. 39:

Do you claim damages for personal injury other than emotional distress?  If so, identify the injury, the date of its occurrence, and any medical providers who provided treatment.  If not, state why you are not claiming damages for personal injury other than emotional distress.

## ANSWER TO INTERROGATORY NO. 39:

None of the named plaintiffs other than Josephine Richardson is asserting a claim for personal injury for anything other than emotional distress.

Plaintiff Josephine Richardson is asserting a wrongful death claim as a surviving spouse. Her claim is described in detail in the Sixth Amended Complaint in *Mumford*.

Plaintiffs object to this request to the extent it asks for the reasons why a claim was never made.  Such a request is outside the scope of discovery under Rule 26(b)(1), Fed. R. Civ. Pro., which limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense."

Plaintiffs further object to this request to the extent it asks for the substance of communications protected by the attorney-client privilege, the substance of interview notes and other documents protected by the privilege for attorney work-product.

Plaintiffs not that, if the class is not certified in conformity with plaintiffs' motion for certification, plaintiffs anticipate that at least 6,000 individuals will pursue their claims in individual cases, consolidated cases, or mass tort actions against defendants, and will seek all compensable damages.

## INTERROGATORY NO. 40:

Do you claim damages in this case for emotional distress?  If so, identify any medical, psychiatric, or other professional who provided treatment and the dates of treatment.

**ANSWER TO INTERROGATORY NO. 40:**

Plaintiffs claim damages for emotional distress and are considering the best trial plan under which such claims could properly be resolved in a class action.

Plaintiffs will supplement their answer to this interrogatory.

**INTERROGATORY NO. 41:**

If you claim damages for wrongful death, identify the decedent and circumstances of death, including the date, location, and cause of death.

**ANSWER TO INTERROGATORY NO. 41:**

Please see Sixth Supplemental Complaint.  All decedents the subject of this litigation died as a result of the flooding made the subject of this litigation during its presence.

Plaintiffs are considering the best trial plan under which such claims could properly be resolved in a class action.

Plaintiffs will supplement their answer to this interrogatory.

**INTERROGATORY NO. 42:**

State how and when you or your representatives or counsel learned about any settlement involving the Murph family, including the name of every person who provided any information about a settlement involving the Murph family and the date(s) on which such information was provided.

**ANSWER TO INTERROGATORY NO. 42:**

The information was learned during the years 2005, 2006 and 2007, through rumor, privileged communications with clients, prospective clients, and co-counsel, through property record research, research conducted at http://www.chaffe.com/bios/holladay.htm, and various legal research relevant to known and reputed terms of the settlement.

**INTERROGATORY NO. 43:**

Was any of the flooding attributable to the northern breach?  If so, state what portion you contend is attributable compared to the southern breach, and describe the evidence supporting that contention.

**ANSWER TO INTERROGATORY NO. 43:**

Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

_____Plaintiffs further object on the grounds of irrelevance in accord with *Edmonds v. Compagnie*, *Coats v. Penrod*, etc., and because the same defendants, through the same negligence and unseaworthiness, caused both the North and South breaches. Subject to said objections and without waiving same, Plaintiffs respond as follows:

Yes, flooding in the proposed class area is attributed to the northern breach, caused by ING 4727.

## INTERROGATORY NO. 44:

Was any of the flooding in the proposed class area attributable to other breaches or failures other than the northern and southern IHNC breaches?  If so, state what portion you contend is attributable compared to the southern breach, and describe the evidence or reports or studies supporting that contention.

## ANSWER TO INTERROGATORY NO. 44:

Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Subject to and without waiver of any objections, Plaintiffs respond:

No.  This answer is based upon witness interviews and scientific conclusions.  Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

## INTERROGATORY NO. 45:

[On behalf of Zito entities only]: Please identify the full names, addresses, telephone numbers, job titles, and employers of any and all witnesses that purport to support the claim that a representative(s) of LaFarge North America Inc. called and left a voice mail message with Zito on the morning of August 27, 2005.

**ANSWER TO INTERROGATORY NO. 45:**

Edward Bush, Earl Smith.  They have been deposed.

**INTERROGATORY NO. 46:**

[On behalf of Zito entities only]: Please identify all facts, documents, evidence, and witnesses that you are aware of that purportedly support your contention that Zito had knowledge on August 27, 2005 that Barge ING 4727 had been offloaded and/or was ready for pick up from LaFarge North America, Inc.'s facility.

**ANSWER TO INTERROGATORY NO. 46:**

Edward Bush said that he called Zito.

**INTERROGATORY NO. 47:**

[On behalf of Zito entities only]: If you contend that Zito was in any way at fault for the breakaway of Barge ING 4727, identify all facts, documents, evidence, and witnesses (if any), that you are aware of that purportedly support this contention.

**ANSWER TO INTERROGATORY NO. 47:**

Please see complaints filed herein, plaintiffs' pleadings, memoranda, etc., in 05-4419, depositions of Busch, Smith and Boudreaux, Zito phone records.  Edward Bush called Zito to release the barge.  Zito did not respond.  Plaintiffs reserve the right to supplement as investigation and discovery are ongoing.

**INTERROGATORY NO. 48:**

[On behalf of Zito entities only]: If you contend that Zito violated or failed to comply with any Coast Guard, industry, or other applicable rules, regulations, standards, or duties that caused or contributed to the breakaway of Barge ING 4727, please identify the specific rules, regulations, standards, and/or duties, together with factual basis for the alleged violations /non-compliance.

**ANSWER TO INTERROGATORY NO. 48:**

Objection.   Calls for legal conclusions.

Subject to and without waiver of any objections, Zito, as Ingram's towing, delivery, pickup, release, demurrage, transport and fleeting agent, had a duty to comply with applicable standards of maritime care and maritime regulations relative to ING 4727.  Such standards and regulations, and the factual basis for the assertions, are expressed throughout plaintiffs' pleadings and submissions in 05-4419.

## INTERROGATORY NO. 49:

[On behalf of Zito entities only]: If you disagree with Barry Boudreaux's testimony that had a telephone call been placed to Zito's 504-835-8531 phone number on August 27, 2005, the call would not go to an answering machine or a voice mail system, identify all facts, documents, evidence and witnesses (if any) that you are aware of that support your contention.

## ANSWER TO INTERROGATORY NO. 49:

Plaintiffs object to this request because it calls for speculation as to the operation of Zito's telephone system and its possible culpability or negligence for having such a telephone system, and as such is not a permissible subject of discovery.  Discovery is ongoing, and plaintiffs will supplement this interrogatory if additional information becomes available.

## INTERROGATORY NO. 50:

[On behalf of Zito entities only]: If you contend that Zito had the means to pickup Barge ING 4727 on August 27, 2005 after Edward Busch allegedly left a voice mail message with Zito that morning, identify the specific basis for this contention including all facts, documents, evidence and witnesses that you are aware of that purportedly support this contention.

## ANSWER TO INTERROGATORY NO. 50:

Zito records reflect that Zito was engaged in IHNC lock transit, barge towing and fleeting activities after the Busch phone call.  Boudreaux testified in Phase I of 05-4419 that he could have picked up and fleeted the barge.

Respectfully Submitted by
Counsel for Plaintiffs, BARGE PSLC

**WIEDEMANN & WIEDEMANN**
\s\Lawrence D. Wiedemann_____
LAWRENCE D. WIEDEMANN, (13457)
KARL WIEDEMANN, (18502)

46

KAREN WIEDEMANN, (21151)
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-6180
Attorneys for Plaintiffs

**LAW OFFICE OF BRIAN A. GILBERT**

\s\Brian A. Gilbert
BRIAN A. GILBERT (21297)
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 885-7700
Attorney for Plaintiffs

And

\s\Patrick J. Sanders
PATRICK J. SANDERS
Attorney at Law
3316 Ridgelake Drive
Metairie, Louisiana 70002
Telephone: (504) 834-0646
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record via ECF Upload, U.S. Mail, first class postage prepaid and properly addressed, and/or via facsimile and/or electronic mail, this 28 day of December, 2007.

\s\Brian A. Gilbert

47