# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | * * * CIVIL ACTION * |
| PERTAINS TO:  BARGE | * NO. 05-4182 * and consolidated cases * |
| | * SECTION "K"  (2) * |
| | * * |
| | * JUDGE * STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*          06-7516 | * * MAG. * JOSEPH C. WILKINSON, JR. * |

## BENOIT PLAINTIFFS 'ANSWERS TO INTERROGATORIES PROPOUNDED BY THE BARGE ENTITIES

Plaintiffs reiterate prior discovery responses herein, subject to amendment with respect to Interrogatory No. 6, *infra*, and further, the Benoit plaintiffs hereby respond to Defendants, LNA and Zito entities', discovery as follows, supplementing and amending all Benoit plaintiffs' prior responses as follow:

## GENERAL OBJECTIONS

A.      Plaintiffs object to those definitions and instructions included in defendant's discovery requests which seek to impose upon Plaintiffs an obligation to respond in a manner which is more burdensome than that required by applicable provisions of the Federal Rules of Civil Procedure.  Plaintiffs will answer specific Interrogatories in a manner sufficient to comply with their obligations as stated therein.

B.      Plaintiffs object to Defendants' discovery requests insofar as they seek information and/or documents protected by the attorney/client privilege, information obtained by or on behalf of counsel for Plaintiffs in preparation for trial of this proceeding, information protected by the work-product doctrine and/or information beyond the permissible scope of discovery as set forth in the Federal Rules of Civil Procedure.  Plaintiffs expressly reserve all claims of privilege and renounce any waiver thereof except where specifically communicated in writing with a full statement of the particulars.

C.      Plaintiffs object to each of the requests to the extent that they seek information regarding "each," "all," or "every," person, entity, document, or other thing, or uses a similar all-inclusive adjective.  It is not reasonably possible for Plaintiffs to determine whether "each," "all," or "every" document, person or other thing falling within the scope of a request can be determined, located, or included in a response.  In the usual course of time, numbers of records may have been created or received, lost or destroyed, particularly in connection with this matter involving a mass disaster and widespread flooding.  Records may have been misfiled, lost or simply not retained.  And even after diligent search through those places that the information would likely exist, the information may not be located.  Therefore, whenever Plaintiffs respond to a request asking for "each," "all," "every," or similarly broad adjective, Plaintiffs cannot warrant that each, all, or every bit of information has been located or determined.  Plaintiffs can only warrant that a reasonably diligent inquiry or search for the requested information has been made, and that the response is the result of that reasonably diligent inquiry or search.  To the extent any request purports to require more, Plaintiffs object on the grounds that compliance would be unduly burdensome and expensive and would call for speculation.

D.      Plaintiffs object to the Interrogatories to the extent they are either not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

E.      Plaintiffs object to the Interrogatories to the extent they are overly broad and unduly burdensome.

F.      Plaintiffs object to the Interrogatories to the extent that they exceed the scope of admissible discovery.

G.      Plaintiffs object to the Interrogatories to the extent that they are vague and ambiguous.

H.      Plaintiffs object to the Interrogatories as going beyond the permissible limits allowed pursuant to the Federal Rules of Civil Procedure.

I.      Plaintiffs object to the Interrogatories that seek information readily available to Defendant in the public domain.

J.      These general objections are applicable to and are hereby incorporated into Plaintiffs' responses below as if specifically set forth therein and are on a continuing basis and may not be reiterated in response to each Interrogatory that does or may call for disclosure or production of objected to information.

**GENERAL RESPONSE AND RESERVATIONS**

**GENERAL RESPONSE AND RESERVATIONS**

As used herein, the term "named class representative plaintiffs" means the following named plaintiffs:

Ethel Mae Coleman Mumford
Josephine Long Richardson
Jimmie Donnell Harris
Kismit Bourgere
Michael Joseph Riche
Jacob Robert "Bob" Glaser
Dianne Glaser
Herman Koch
Aida Koch
Rico Terrence Sutton

As used herein, the term "named individual non-representative plaintiffs" means the following named plaintiffs who are not currently named as class representatives:

Marie Short Benoit
Henry Adams
Gwendolyn Adams
John Alford
Jerry Alford
Michael Watts
Robert Green, Sr.
Jonathon Green
David Green, individually and as the representative of the Estate of Joyce
    H. Green
Everage Green, individually and as representative of the Estate of Shanai
    Green, as as the natural tutor of Shaniya Green and Shamiya Green
Hyman Sheppard
Earl Matthew Daniels, Sr.
Joyce B. Matthews
Mildred Delores Dean
Ethel Leon
Karen Leon
Joyce Daniels
Myrna Daniels, in her individual capacity and as natural tutrix of Keina
    Daniels
Tom Browder
Albertine Browder
Gaynell Browder
Blair Boutte
Doris Shanks
Herbert Warren, Jr.
Marenthia Lagarde
Michael Lagarde
Donald Pritchett

Jocelyn Moses
Anthony Dunn
Jocelyn Carter
One or more persons named in the matter entitled "*The Parfait Family, et al v. United States of America, et al,*" Civil Action No. 07-3500.

All of the responses hereto are made on behalf of all named class representative plaintiffs except where specifically indicated otherwise.

Plaintiffs are in the process of obtaining answers as to the named individual non-representative plaintiffs, working through their counsel, and will supplement these responses to include their responses as soon as possible.

All responses reflect the best efforts of counsel and the persons responding, in light of loss of much information during the events subject of suit.  The plaintiffs responding reserve the right to supplement and amend any and all of the following in light of new information as discovery, class certification preparation and trial preparation progress.

## INTERROGATORY NO. 1:

Identify each person who was consulted or who provided information or who otherwise assisted in preparing plaintiffs' responses to the interrogatories, document requests, and requests for admissions served by LNA and the Zito entities.

## ANSWER TO INTERROGATORY NO. 1:

Objection: attorney work product.  Subject to and without waiver of any objections, and excluding the undersigned counsel:

1. Marie Short Benoit
2. Henry Adams
3. Gwendolyn Adams
4. Robert Green, Sr.
5. Jonathon Green
6. David Green, individually and as the representative of the Estate of Joyce H. Green
7. Everidge Green, individually and as representative of the Estate of Shanai Green, as as the natural tutor of Shaniya Green and Shamiya Green
8. Hyman Sheppard
9. Earl Matthew Daniels, Sr.
10. Joyce Daniels
11. Mildred Delores Dean
12. Ethel Leon
13. Karen Leon

**INTERROGATORY NO. 2:**

Provide the name and, if known, the address and telephone number of each person (other than the individual plaintiffs themselves) who is likely to have discoverable information that plaintiffs may use to support their claim that the Barge ING 4727 caused damage to any plaintiff or member of the proposed class in this action.

**ANSWER TO INTERROGATORY NO. 2:**

For the most part, plaintiffs have not yet made decisions as to which persons they may use as witnesses as to their claim that the barge was the cause of the damage to plaintiffs and their class.  Plaintiffs have responded below as to those persons for whom plaintiffs have already made the decision that they may be called as witnesses on this issue of causation.  Plaintiffs are reviewing information as to putative class members who did not evacuate.

Plaintiffs will comply with court orders concerning witness disclosure, and will supplement this answer when they reach decisions that particular persons may be used as witnesses on this question.

1.   Dan Mecklenborg

2.   David Sehrt

3.   Pankaj Shah

4.   Patrick Morton

5.   Stanley Cook

6.   Greg Jarrell

7.   David Williams

8.   Pete Tassin

9.   Gary Holman

10.   Ed Vandermeulen

11.   Ed Busch

12.     Earl Smith

13.     Eric Thigpen

14.     Raymond Grabert

15.     Gerald McNeill

17.     Arthur Murph (status as putative class member depends upon extent of compromise with LNA)

18.     William Villavasso

19.     Maj. Pete Tufaro (resides in Arabi, is putative class member; contact information shown on plaintiffs' witness list)

20.     Salvador Gutierrez, Esq. (has stated that he is putative class member; contact information shown on plaintiffs' witness list)

        James Ruiz (client of undersigned)

21.     Sally Jones (client of undersigned)

22.     Carolyn Berryhill (has been deposed)

23.     Clarence Sartin (effort has been made to depose him)

24.     Kendrick Pounds (has been deposed)

25.     Any and all persons identified during depositions of Arthur Murph, Carolyn Berryhill, Kendrick Pounds, and/or any and all other persons deposed or to be deposed.  Plaintiffs have not yet determined which of such persons may be called, and will supplement according to law and applicable Case Management Orders and other orders of the Court.

26.     Lt. Cmdr. Donald Green, USCG (Ret.)

27.     Raymond Helmer, P.E.

28.     R. Lee Wooten

29.     Don C. Coker

30.     Aurora Environmental Consultants

31.     Ronald C. Kessler, Ph.D

32.    John Kilpatrick

33.    Hector Pazos, P.E.

34.    Robert Bartlett, P.E.

35.    Jim Reed (putative class member, 4025 Kings Dr., Chalmette, LA)

36.    Any and all putative plaintiff class members, named class representatives, named plaintiffs (see the above explanation).

37.    Any and all purported experts retained by other parties to this consolidated litigation (see the above explanation).

38.    Any and all known to or identified by other parties (see the above explanation).

39.    Any and all others yet to be determined (see the above explanation)

40.    Any and all listed above in Answer No. 1.

## INTERROGATORY NO. 3:

Identify and fully describe all simulations, replicas, models, mockups, and other study, investigation, or representation, forensic or otherwise, of any an all things, events and/or locations which you will (1) introduce at trial, and/or (2) rely upon at trial, and/or (3) disclose, display or publish to the trier of fact, and/or (4) of which any witness you will call at trial will be informed and/or upon which any such witness will rely in furtherance of trial testimony.

## ANSWER TO INTERROGATORY NO. 3:

Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Plaintiffs have not yet determined whether to use any of the items subject of the request, but anticipate the possibility of computer or other simulation of the variety devised by Vrijling, and/or reconstruction of the movements of the barge and/or breaches of the eastern IHNC floodwall subject of this suit, and/or additional models, studies, demonstrative exhibits, etc.,

pertaining to elements of damages claimed herein and/or relative to the particular areas of expertise of expert witnesses to be called.

**INTERROGATORY NO. 4:**

Please state the full names, job titles, employers, credentials, and areas of expertise of any and all experts or opinion witnesses whom you will or may call to render any opinion concerning any issues in this matter, whether by affidavit, report, or trial testimony, and provide a summary of all such opinions and a list of all documents consulted, used or relied upon by such expert or opinion witness.

**ANSWER TO INTERROGATORY NO. 4:**

Plaintiff objects to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

Plaintiffs will submit their expert reports and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.  Please see witness lists filed into the record hereof.

Plaintiffs may call:

1. Lt. Cmdr. Don Green, USCG (Ret.) - maritime operations and regulations - negligence of defendants and unseaworthiness of their vessels, breakaway causation;

2. Raymond Helmer, P.E. - breach causation and hydrological flood analysis;

3. Robert Bartlett, P.E. - breach causation
4. Hector Pazos, P.E. - breach causation

5. Aurora Environmental Consultants - pollution, contamination;

6. John Kilpatrick - real property losses;

7. Don Coker - business losses;

8. Ron C. Kessler, Ph.D - emotional damages;

9. Any and all others yet to be determined and/or as reflected on said witness lists.

Please see curricula vitae submitted herewith.

**INTERROGATORY NO. 5:**

Please state the full names, addresses, job titles and employers of all lay persons you will call or may call to testify at trial, and state the substance of each fact you intend to prove through testimony elicited from such witnesses.

**ANSWER TO INTERROGATORY NO. 5:**

Plaintiffs will submit their witness lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Please see Answers Nos. 2 and 4, above, and Witness List filed November 20, 2007, and every 20th day of every month thereafter until final witness lists are required.

Ethel Mumford c/o BARGE PSLC

Michael Riche c/o BARGE PSLC

Kismit Bourgere c/o BARGE PSLC

Rico Terrence Sutton c/o BARGE PSLC

Jimmie Harris c/o BARGE PSLC

Bob and Dianne Glaser c/o BARGE PSLC

Herman and Aida Koch c/o BARGE PSLC

Josephine Richardson c/o BARGE PSLC

Terry Adams c/o BARGE PSLC

Christopher Weaver c/o BARGE PSLC

Ronald McGill c/o BARGE PSLC

Wilson Simmons c/o BARGE PSLC

Arthur Murph

Bill Villavasso

Maj. Pete Tufaro, St. Bernard Parish Sheriff's Office

Sal Gutierrez, Esq.

James Ruiz c/o BARGE PSLC

Sally Jones c/o BARGE PSLC

Jim Reed

Dan Mecklenborg

David Sehrt

Pankaj Shah

Patrick Morton

Stanley Cook

Greg Jarrell

David Williams

Pete Tassin

Gary Holman

Ed Vandermeulen

Ed Busch

Earl Smith

Eric Thigpen

Raymond Grabert

Gerald McNeill

Any and listed in any other responses herein.

Any and all known to or disclosed by any other party.

Any and all others yet to be determined.

**INTERROGATORY NO. 6:**

What do you contend caused the breakaway of the Barge ING 4727?  (Please provide a full narrative account of all factors, including the time at which you contend the barge broke away and the reasons why it broke away, all parties at fault in the breakaway, and all measures which, if taken, would have prevented the breakaway).

## ANSWER TO INTERROGATORY NO. 6:

Objections: calls for expert opinion and speculation as to all imaginable measures that would have prevented the breakaway.  Subject to and without waiver of any objections, plaintiffs respond:

Pursuant to Rule 33(d), Fed. R. Civ. Pro., see Plaintiffs' Complaints herein, Answers, Claims and Defenses, Phase I and Phase II motions and oppositions, and pretrial and trial submissions, in *In Re Ingram Barge Company, etc.*, 05-4419.  To paraphrase, the barge broke away due to negligence and unseaworthiness and allided **(NOTE TO DEFENDANTS: Amendment on behalf of all named plaintiffs: delete the word, "twice" at this location in all prior responses.)** with the eastern Industrial Canal floodwall between Florida Avenue and N. Claiborne Avenue, causing the North and South breaches.  Had defendants complied with USCG and other governmental and professional regulations and guidelines, with applicable standards of maritime care, and with the tenets of good seamanship, as described in 05-4419, ING 4727 would not have broken away from the LNA terminal.

The responsive information is the subject of various expert reports which will be provided to Defendants pursuant to the Case Management Orders and scheduling deadlines set by the Court.

## INTERROGATORY NO. 7:

Identify any past instance in which a barge breakaway caused flooding as the result of an allision with a flood protection structure.

## ANSWER TO INTERROGATORY NO. 7:

Plaintiffs object to this request as unduly burdensome, in that the Coast Guard has already determined that breakaway barges are a significant hazard in hurricanes, and has promulgated regulations and plans designed to safeguard against this hazard and avoid the type of breaches that occurred here.

Defendant may, as readily as plaintiffs, file a Freedom of Information inquiry as to all of the prior incidents that led the Coast Guard to recognize the risks in question.

Plaintiffs also object to this request as overly broad, vague, and not limited in either time, place, or scope, and to the extent that the request is not reasonably calculated to lead to discovery of admissible evidence.  This litigation concerns the breakaway of ING4727 on August 29, 2005 and consequent allisions with the eastern Industrial Canal floodwall, not other barges at other

times relative to other structures.

Subject to and without waiver of any objection, Plaintiffs answer, "unknown."

## INTERROGATORY NO. 8:

In Court Record Doc. 798-3 in Case No. 05-4419, Group A plaintiffs stated that "eyewitnesses...saw the barge crash through the intact floodwall long before the MRGO flooded." Please identify all such eyewitnesses and state the date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account.

## ANSWER TO INTERROGATORY NO. 8

Plaintiffs object to this Request on the grounds of the attorney work-product doctrine insofar as the Interrogatory requests the "date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account."

Subject to said objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their witness lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Subject to these objections and without waiving same, on the date that Record Doc. 789-3 was filed in Case No. 05-4419, the Group A Plaintiffs had identified the eyewitnesses listed in the pretrial order(s) applicable as of that date. Additionally, Plaintiffs identify the following:

1. Terry Adams - account of breach learned through 2006 interview

2. Arthur Murph - account of breach learned through interview of unknown date

3. William Villavasso - account of breach learned through 2007 interview, and December 18, 2007, deposition

4. Christopher Weaver - account of breach learned through 2006 interview

5. Deputy Pete Tufaro - flood time and direction learned through 2007 interview

6. Sal Gutierrez - flood time and direction learned through 2007 interview

1. James Ruiz - flood time and direction learned through 2007 interview

2. Sally Jones - flood time and direction learned through 2007 interview

9. James Reed - flood time and direction learned through 2007 interview

Plaintiffs reserve the right to supplement and amend this Answer to Interrogatory.

**INTERROGATORY NO. 9:**

Identify all "witnesses [who] say that they heard the barge scraping against the still intact floodwall, and then saw it crash through" as you represented to the public on www.bargecase.com and state the date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account.

**ANSWER TO INTERROGATORY NO. 9:**

Plaintiffs object to this Request on the grounds of the attorney work-product doctrine insofar as the Interrogatory requests the "date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account." Subject to said  objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their witness lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Arthur Murph, through interview of unknown date.

Carolyn Berryhill (has been deposed)

Clarence Sartin (effort has been made to depose him)

Kendrick Pounds (has been deposed)

**INTERROGATORY NO. 10:**

Identify every other person, if any, who claims to have seen or heard the barge make contact with the IHNC floodwall, pass from the canal side of the floodwall to the residential side of the wall, or cause one or more breaches of the floodwall, and state the date and means by which plaintiffs' counsel or representatives learned the substance of each person's account.

**ANSWER TO INTERROGATORY NO. 10:**

Plaintiffs object to this Request on the grounds of the attorney work-product doctrine insofar as the Interrogatory requests the "date and means by which plaintiffs' counsel or representatives learned the substance of each witness's account." Subject to said objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their witness lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Subject to and without waiver of any objections, plaintiffs respond as follows:

1.    William Villavasso - Sewerage and Water Board of N.O - Station 05  - Intersection of Surecoat Dr. and Florida Ave. - 2007 interview

2.    Terry Adams - Jourdan Avenue -2006 interview

3.    Arthur Murph - 1739 Jourdan Ave. -interview of unknown date

4.    Ronald McGill - 2006 interview

5.    Wilson Simmons - 2006 inteview

6.    Christopher Weaver - 2006 interview

7.    Rico Terrence Sutton - 2523 and a Half Jourdan Ave. - 2007 interview.

Additionally, other putative class members have stated that they heard one or more explosions, whose times - to the best of each relator's recollection - generally or roughly coincide with times at which witnesses maintain that they saw the barge crash through the floodwall with an explosive sound, and with times at which they and others experienced a violent surge of water, lifting houses from their foundations and propelling them up the street.  These accounts are commonplace among persons from the Lower Ninth Ward, including but not limited to the following clients of the undersigned, who may be called to testify:

Ernest Offray, formerly of 2028 Deslonde;

Sidney Williams, formerly of 1720 Tennessee Street;

Delores St. Cyr-Butler, formerly of 5434 N. Johnson Street;

Robert Green - 1826 Tennessee Street.

Carolyn Berryhill (has been deposed)

Clarence Sartin (effort has been made to depose him)

Kendrick Pounds (has been deposed)

**INTERROGATORY NO. 11:**

In Court Record Doc. 726 (at page 7, footnote 1), Group A represented to the Court that "pronouncements of experts" state "that the barge is what breached the floodwall." Similarly, on the website www.bargecase.com, Group A counsel have represented to the public that experts have formed the opinion that the barge "broke the floodwall" and that "scientific investigations...reveal that the Industrial Canal breach was caused by a barge adrift in the canal during Katrina, which slammed into the concrete floodwall, allowing the wall and levee to topple." Please identify every expert pronouncement that the barge is what breached the floodwall, every expert who has formed the opinion that the barge broke the floodwall, and every scientific investigation that reveals that the Industrial Canal breach was caused by a barge.

**ANSWER TO INTERROGATORY NO. 11:**

Plaintiffs will submit their expert reports and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Raymond Helmer, Hector Pazos, Robert Bartlett and Robert Bea have stated that the barge broke the floodwall. The IPET and R. Lee Wooten state that the barge could have broken the floodwall.

**INTERROGATORY NO. 12:**

State the whereabouts/physical location of each individual plaintiff during the period from August 28, 2005 through August 30, 2005. Provide street address(es) or other similar information.

**ANSWER TO INTERROGATORY NO. 12:**

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver as follows:

**Marie Benoit:** Mrs. Benoit left New Orleans on August 28, 2005 and went to stay with a friend in Baker, Louisiana for the time period mentioned.

**Henry Adams and Gwendolyn Adams:** Mr. and Mrs. Adams left their home on August 28, 2005 at about 2:00 p.m. and went to the Hotel St. Marie at 812 Toulouse Street New Orleans, LA 70112. They stayed at the Hotel through August 30, 2005

**Robert Green, Sr.:** Mr. Green went with his mother, Joyce Green, and her granddaughter Shanai Green to the Superdome. They were directed to go to the Special Needs area where they were turned away. They returned to their home at 1826 Tennessee Street. On August 29, 2005 during the storm the house was lifted from its foundation and floated to 1617 Tennessee. Mr. Green and his family (Joyce Green, Robert Green, Sr., Jonathan Green, Hyman Shepherd, and Mr. Green's three grandchildren Shanai, Shaniya, and Shamiya) spent the remainder of the storm on the rooftop of 1617 Tennessee. After losing both his mother and her great granddaughter Shanai in the storm, the remainder of the family were rescued, taken to the Claiborne Avenue

Bridge, and finally transported to the Superdome.

**David Green:**  Mr. Green, the administrator of the estate of Joyce H. Green, was in Nashville Tennessee at all times referred to in the interrogatory.  His address is 7904 Boone Trace, Nashville, LA 37221.

**Everidge Green:**  Mr. Green left New Orleans on August 28, 2005 and was in between New Orleans and Houston until August 30, 2005.  He stayed in a house in Houston with about thirty other people.  He does not recall the address of the house.

**Jonathan Green:**  Mr. Green was at 1826 Tennessee Street on August 28, 2005.  During the storm he was on the roof at 1826 Tennessee until the house was removed from its foundations and moved two blocks.  From this location he was taken to the Claiborne Street Bridge and then to the Superdome.

**Hyman Shepherd:**  Mr. Robert Green, Sr. reports that Mr. Shepherd was at 1826 Tennessee on August 28, 2005 and remained with him until all were taken to the Superdome.  Mr. Shepherd is a nonverbal, mentally challenged individual cared for by Mr. Green's family. Please see Mr. Robert Green's location in preceding paragraph.

**Mr. Earl Daniels** and his wife **Joyce B. Daniels:** Mr. and Mrs. Matthews left their home on August 28, 2005 and ended up in an evacuation center in Natchez, LA.  Neither one of them can remember the address of the center.  When they left the center they went to stay with a nephew in Atlanta, GA.

**Mrs. Mildred D. Dean-** Mrs. Dean left her home and went to the Fairmont Hotel at 123 Baronne Street, New Orleans, LA 70112 for the entire time referred to in the question.

**Ms. Ethel Leon:**  Ms**.** Leon left her home on August 28, 2005 at around 12:00 p.m. and evacuated to the La Quinta Hotel 7750 North Davis Hwy. Pensacola, FL 32514-7557 where she stayed for the entire time referred to in the question.

**Ms. Karen Leon**:  Ms**.** Leon left her home on August 28, 2005 at around 12:00 p.m. and evacuated to the La Quinta Hotel 7750 North Davis Hwy. Pensacola, FL 32514-7557 where she stayed for the entire time referred to in the question.

John Alford and Jerry Alford have not been located.

Tom Browder, Albertine Browder and Gaynell Browder have not been located.

Myrna Daniels, Keina Daniels( now of legal age), and Keiara Cartwright have not responded.

Michael Watts has failed to respond and has refused certified mail from counsel.

**INTERROGATORY NO. 13:**

As to each individual plaintiff, state whether the plaintiff claims to have seen the barge and/or the breaches of the retaining wall on the eastern side of the IHNC on August 29, 2005.

## ANSWER TO INTERROGATORY NO. 13:

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver as follows:

**Marie Benoit:**
No.

**Henry Adams and Gwendolyn Adams:**
No.


**Robert Green, Sr.:**
Yes after he was evacuated to the Claiborne Bridge.

**David Green:**
No.

**Everidge Green:**
No.

**Jonathan Green:**
Yes after he was evacuated to the Claiborne Bridge.

**Hyman Shepherd:**
Unable to answer

**Mr. Earl Daniels** and his wife **Joyce B. Daniels:**
No.

**Mrs. Mildred D. Dean**
No.

**Ms. Ethel Leon**
No.

**Ms. Karen Leon**
No.

**John Alford** and **Jerry Alford** have not been located.

**Tom Browder**, **Albertine Browder** and **Gaynell Browder** have not been located.

**Myrna Daniels**, **Keina Daniels** (now of legal age), and **Keiara Cartwright** have not responded.

**Michael Watts** has failed to respond and has refused certified mail from counsel.

## INTERROGATORY NO. 14:

Plaintiffs' complaints in this case allege that the barge "crashed through the East side flood wall taking out a large section of the flood wall" (Mumford Paragraph VII) and that it "raced diagonally across the Industrial Canal, and struck the east wall of the Industrial Canal, causing it to fail" (Boutte Paragraph 8).  Identify all witnesses, documents, and facts that support any of these allegations.

## ANSWER TO INTERROGATORY NO. 14: (Gilbert Answer)

1.      IPET

2.      Ray Helmer

3.      Hector Pazos

4.      Robert Bartlett

5.      R. Lee Wooten

6.      Robert Bea

7.      United States Coast Guard

8.      Terry Adams

9.      William Villavasso

10.     Arthur Murph

11.     Christopher Weaver

12.     Ronald McGill

13.      Wilson Simmons

14.     Rico T. Sutton

15.     Multiple photos already produced for requestors

16.     Any and all others yet to be determined.

Also, please see Plaintiffs' Complaints herein, Answers, Claims and Defenses, Phase I and Phase II motions and oppositions, and pretrial and trial submissions, in *In Re Ingram Barge Company, etc.*, 05-4419.

Plaintiffs reserve all theories and allegations concerning the barge's rate or direction of travel within the IHNC.

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

## INTERROGATORY NO. 15:

Identify each person who has told you, your counsel, or your representatives (including investigators employed by you or your counsel), that he or she saw or heard the barge and/or saw or heard the failure of the IHNC retaining wall on August 29, 2005 and state the substance of the communication.

## ANSWER TO INTERROGATORY NO. 15:

Plaintiffs object to this request as duplicative.

Subject to and without objection, please see responses above.

## INTERROGATORY NO. 16:

Identify each person who has told you, your counsel, or your representatives (including investigators employed by you or your counsel) that the failure of the IHNC retaining wall occurred for reasons other than the barge, or occurred before the barge passed through or in the absence of the barge, and state the substance of the communication, including any reasons or support given.

## ANSWER TO INTERROGATORY NO. 16:

Despite extensive and ongoing investigation to try to determine the existence of any such persons, none whatsoever, other than attorneys for BARGE defendants and MRGO plaintiffs, have been discovered.

## INTERROGATORY NO. 17:

Identify each person who called or who has been interviewed by Kendrick Harding or any other investigator or person working on the plaintiffs' behalf in connection with the barge

breakaway and/or the breach(es) of the IHNC floodwall, including the person's name, address, and telephone number, and date of interview, whether a tape recording or other transcription was made, and whether documents exist memorializing the interview.

**ANSWER TO INTERROGATORY NO. 17:**

Objection: calls for attorney work product and privileged client communications.  Subject to and without waiver of any objections, Plaintiffs respond:

Cmdr. Don Green's staff polled several barge companies to determine whether they had a written hurricane plan.  Their identities are contained in Don Green's Phase II deposition in 05-4419.

Kenrick (not "Kendrick") Harding has interviewed no one.

The following clients of undersigned have made oral or written statements to undersigned attorneys throughout the representation: All plaintiffs represented by undersigned, including Terry Adams, Christopher Weaver, Wilson Simmons, Ronald McGill, and numerous others concerning the sound of the barge hitting the floodwall, whose identities will be determined and provided to requestor.

Arthur Murph made an oral statement to his attorney in 2005 or 2006.

The following experts have made oral or written statements to undersigned in 2006 and 2007:  Ray Helmer, Robert Bartlett, Hector Pazos, Don Green.

William Villavasso made an oral statement to undersigned. in 2007.

Dan Mecklenborg, David Sehrt, Pankaj Shah, Patrick Morton, Stanley Cook, Greg Jarrell, David Williams, Pete Tassin, Gary Holman, Ed Vandermeulen, Ed Bush, Earl Smith, Richard Heck, Eric Thigpen, Raymond Grabert, Gerald McNeill, Barry Boudreaux, Rachael Burnett, Terry Adams and Wilson Simmons were deposed in 2006 and 2007.

**INTERROGATORY NO. 18:**

For each individual plaintiff, did you make or receive any telephone calls on August 29 to or from a location in the Lower Ninth Ward or St. Bernard Parish?  If so, provide the phone number from which the call was made, the phone number to which it was placed, the time of the call, the identity of the other party to the call, and the subject of the call.

**ANSWER TO INTERROGATORY NO. 18:**

To the best of Plaintiffs' current knowledge, information, recollection, and belief,

Plaintiffs aver as follows:

None of the Plaintiffs in the *Benoit* petition made any telephone calls to or from the Ninth Ward.

## INTERROGATORY NO. 19:

The website maintained by plaintiffs' counsel www.bargecase.com, asserts: [T]he barge "was the sole cause of the eastern Industrial Canal breaches in the Lower Ninth Ward." Do you contend in this action that the barge was the "sole cause" of the eastern Industrial Canal breaches in the Lower Ninth Ward? If so, then provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely.

## ANSWER TO INTERROGATORY NO. 19:

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Plaintiffs answer in the affirmative. Eyewitnesses identified herein saw the barge breach the intact floodwall, described by Bea as otherwise performing "admirably" before his retention by any litigants; further expert opinion will be provided in accord with the Court's scheduling orders. Also, the sudden and violent introductions of massive flooding occurred contemporaneously with the appearances of the barge through the floodwall, and the sound of an "explosion" at each of the two occasions.

## INTERROGATORY NO. 20:

The reports of the Interagency Performance Evaluation Team (IPET), Independent Levee Investigation Team (ILIT), and Team Louisiana investigations have each attributed the IHNC floodwall breaches to causes other than the barge. Do you disagree with the conclusions of these reports regarding the causes of the IHNC floodwall breaches? If so, then provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely.

## ANSWER TO INTERROGATORY NO. 20:

Plaintiffs object to this request as calling for speculation, mental impressions of counsel and expert opinion outside the purview of anyone but experts. Subject to said objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and

scheduling deadlines set by the Court.

Plaintiffs also object to this Interrogatory because it assumes or states that "the Interagency Performance Evaluation Team (IPET), Independent Levee Investigation Team (ILIT), and Team Louisiana investigations have each attributed the IHNC floodwall breaches to causes other than the barge, " which is inaccurate.  The IPET represents that the barge, if it allided with the floodwall, breached it.  Plaintiffs and their expert agree with this conclusion. Plaintiffs and their expert disagree with theories attributing the IHNC floodwall breaches to causes other than the barge - because, among other reasons - eyewitnesses saw the barge destroy the flood protection structures that otherwise were found to have performed admirably.

## INTERROGATORY NO. 21:

Do you contend that the IHNC floodwall would have remained intact if the barge had not broken away from its moorings?  If so, then provide all reasons and identify witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.  If not, then state what mechanism would have caused the wall to fail in the absence of the barge.

## ANSWER TO INTERROGATORY NO. 21:

Plaintiffs object to this request in that it calls for speculation and expert opinion. Plaintiffs further object in that the Interrogatory is not reasonably calculated to lead to discovery of admissible evidence, as this litigation (or any other litigation) does not concern what would have or might have happened in time, but what actually did happen.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Subject to and without waiver of any objections, "yes." The eastern IHNC floodwall between Florida and N. Claiborne remained intact in all areas with which the barge did not allide.

In addition, please see the above responses.

## INTERROGATORY NO. 22:

Do you contend that the plaintiffs would not have suffered damages if the ING 4727 had remained at its moorings?  If so, then provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.  If not, state what you contend damages would have been if the barge had remained at its moorings.

**ANSWER TO INTERROGATORY NO. 22:**

Plaintiffs object to this request in that it calls for speculation and expert opinion. Plaintiffs further object in that the Interrogatory is not reasonably calculated to lead to discovery of admissible evidence, as this litigation (or any other litigation) does not concern what would have or might have happened in time, but what actually did happen.   Subject to said objections and without waiving same, Plaintiffs respond as follows:

Subject to and without waiver of any objections, plaintiffs respond that had the barge remained moored, the plaintiffs would not have suffered the damages complained-of in the subject litigation.

In addition, please see the above responses.

**INTERROGATORY NO. 23:**

Do you contend that the barge ING 4727 caused or contributed to the northern breach of the IHNC retaining wall (near the pump station by the Florida Avenue Bridge)?  If so, provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.

**ANSWER TO INTERROGATORY NO. 23:**

Yes, Plaintiffs contend that the barge ING 4727 caused or contributed to the northern breach of the IHNC retaining wall (near the pump station by the Florida Avenue Bridge).  The event was witnessed by William Villavasso, and heard by others.

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.
In addition, please see the above responses.

**INTERROGATORY NO. 24:**

Do you deny that the actions or inactions of the United States Government, including the Army Corps of Engineers, caused or substantially contributed to the flooding in the Lower Ninth Ward and St. Bernard Parish?  If so, provide all reasons and identify every witness, document, fact, opinion, inference, and conclusion upon which you rely, and specifically including any experts who have so concluded.

**ANSWER TO INTERROGATORY NO. 24:**

Plaintiffs object to this request in that it calls for speculation, expert opinion, the mental impressions of counsel, and legal conclusions.  Plaintiffs also object on the grounds of

overbreadth and undue burden in that the subject litigation involves only portions of St. Bernard Parish.

Yes, plaintiffs deny the matters subject of the Interrogatory, based upon first-hand accounts that the barge caused the flooding of the proposed class geography.

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

In addition, please see the above responses.

**INTERROGATORY NO. 25:**

Provide your complete, detailed, exhaustive account of any and all locations, things, persons, events, circumstances, and factors constituting the causes and occurrences of the breaches of the eastern IHNC floodwall between S. Claiborne and Florida Avenues, including, but not limited to, the time that each breach occurred and all facts and evidence showing what time each breach occurred.

**ANSWER TO INTERROGATORY NO. 25:**

Plaintiffs object to the request as premature (discovery is ongoing) and as calling for attorney work product, mental impressions of counsel, and expert opinion. Subject to and without waiver of any objections:

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

The barge broke away, first breached the intact floodwall near the Florida Avenue bridge, and next caused the southern breach. See also all record documents filed by plaintiffs in 05-4419, and BARGE complaints in this matter. Please also see other responses herein.

In addition, please see the above responses.

**INTERROGATORY NO. 26:**

For each individual plaintiff, including each proposed class representative, identify every injury or harm for which damages are sought by that person and for each element of damages, identify all evidence regarding the existence and the amount of the claimed damages including how the amount of damages is determined.

**ANSWER TO INTERROGATORY NO. 26:**

Please see Sixth Supplemental Complaint in *Mumford*.  Plaintiffs are studying the most appropriate means of valuing their losses, and will supplement their answers to this interrogatory when they are able to do so.

Further, Plaintiffs' experts' reports will address the claimed damages and how the amount of damages is determined.   Plaintiffs will submit their expert reports and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Counsel for *Benoit* refer to Petition attached as part of Document 1 in 2: 06-cv-07516 which enumerated Plaintiffs' damages including wrongful deaths.

**INTERROGATORY NO. 27:**

Describe in detail how this case can be tried as a class action, including an identification of all issues that plaintiffs propose to try to a single jury and a description of how plaintiffs propose to try, on a classwide or individualized basis, causation and damages as to each category of harm for which damages are sought in the complaint.

**ANSWER TO INTERROGATORY NO. 27:**

Plaintiffs object on the ground that this interrogatory seeks privileged attorney work-product and the mental impressions of counsel.

Subject to and without waiver of any objections, Plaintiffs state the following:

Plaintiffs have not yet made final decisions on these topics, and  will submit class certification pleadings and their detailed trial plan in accord with Court order and with proper input from the Court and from any other sources.  To the extent that defendants wish to propose particular ideas to plaintiffs, plaintiffs will consider them.  Further, Plaintiffs' proposed trial plan will require the selection of classes of Plaintiffs who adequately represent the Class.

**INTERROGATORY NO. 28:**

Identify all "conflicts of interest between attorneys and litigants" referenced in plaintiffs' motion for reconsideration (Rec. Doc. 781-2) and every "conflict" referenced in Rec. Doc. 804 (at 4).

**ANSWER TO INTERROGATORY NO. 28:**

Objections: seeks attorney work product, mental impressions, conclusions of law. Argument of counsel is not an admission and is not evidence.  Subject to and without waiver of

any objections:

There are differences of focus, approach and emphasis among the different plaintiffs in case no. 05-4182, as there are among the different defendants in case no. 05-4182.  Plaintiffs do not yet know how these differences will be resolved, but are confident that there are various ways and means by which they can be resolved.

Additionally, plaintiffs note the potential but unknown effect of *ex parte* communications with putative class members by counsel for defendants.

**INTERROGATORY NO. 29:**

For each individual plaintiff and proposed class representative: Did you submit a claim for homeowners insurance and/or government benefits (such as "Road Home" benefits) related to Hurricane Katrina?  If so, state the date of the claim, the present status of the claim, and any amounts received.

**ANSWER TO INTERROGATORY NO. 29:**

Plaintiffs object to this request as overbroad, vague, compound, and not likely to lead to the discovery of admissible evidence.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver as follows:

**Marie Benoit:**

1.  Claims filed with Plaintiffs homeowners insurance were denied as uncovered under the policy.  Claims filed with Plaintiff's flood insurer were paid in the amount of $55, 000 for structure and $10,000 for contents.
2.  Application for an SBA loan was denied.
3.  Plaintiff received a grant from Road Home in the amount of $41,000 on December 20, 2007.
4.  Plaintiff received $3800 dollars in housing assistance from FEMA.
5.  Plaintiff received $300 from the Red Cross.

**Henry Adams and Gwendolyn Adams:**

1.  Claims filed with Plaintiffs homeowners insurance were denied as uncovered under the policy.  Claims filed with Plaintiff's flood insurer were paid in the amount of $50,000.
2.  Plaintiff's application for SBA loan was denied.
3.  Plaintiffs received a grant from Road Home in the amount of $82, 585.01
4.  Plaintiff received housing assistance from FEMA.

**Robert Green, Sr.:**

1. Mr. Green received $8,000 in housing assistance for Hyman Shepherd and himself.
2. Mr. Green's application for a SBA loan was denied.
3. As a co-owner of the property at 1826 Tennessee Street Mr. Green is appealing a grant award of $700 from the Road Home Program.

**David Green:**

1. As Administrator of the estate of Joyce H. Green, owner at her death of the family home at 1826 Tennessee Street, Plaintiff received $32,200 for the structure  and $6500 for contents from the deceased's flood insurer.
2. Life insurance policies covering Mrs. Green paid $27, 967.74.
3. As administrator and now co-owner an award in the amount of $700 is on appeal.

**Everidge Green:**

1. Plaintiff received $10,000 from FEMA in housing and other assistance.
2. Plaintiff received $1650 from Red Cross.
3. Plaintiff's application for an SBA loan was denied.

**Jonathan Green:**

1. Plaintiff was denied assistance from FEMA and his application for a loan from the SBA was denied.
2. Plaintiff received $275 from Red Cross.
3. As co-owner of 1826 Tennessee Street family home an award of $700 from the Road Home Program is on appeal.

**Hyman Shepherd:**

See response supplied for Robert Green, Sr.

**Earl Daniels and Joyce B. Daniels**:

1. Plaintiffs received $38,000 from a claim filed with their flood insurer.
2. Plaintiffs received a grant from Road Home in the amount of $60,800.
3. Plaintiffs received $600 from the Red Cross.

**Mildred D. Dean:**

1. Mrs. Dean has filed for a Road Home Grant in September 2006 and is now nearing the final stage of title closing.
2. Plaintiff's application for a SBA loan was denied.
3. Plaintiff received $4300 in housing assistance from FEMA.
4. Plaintiff received $100 in aid from the Red Cross.

5.  Plaintiff received a mattress set and electric stove from the Salvation Army.

**Ms. Ethel Leon:**

1.  Plaintiff received $45,000 from her homeowners insurance and $35,000 from her flood insurer.
2.  Plaintiff received a $67,000 grant from Road Home Program.
3.  Plaintiff received housing assistance from FEMA.
4.  Plaintiff received $360 from the Red Cross.

**Ms. Karen Leon:**

Plaintiff is a co-owner with Ms. Ethel Leon and lived at the family home with her please see responses above.

**John Alford** and **Jerry Alford** have not been located.

**Tom Browder**, **Albertine Browder** and **Gaynell Browder** have not been located.

**Myrna Daniels**, **Keina Daniels**(now of legal age), and **Keiara Cartwright** have not responded.

**Michael Watts** has failed to respond and has refused certified mail from counsel.


## INTERROGATORY NO. 30:

Without stating the substance of any attorney-client communication, identify each occasion on which proposed class counsel has communicated with the proposed representative plaintiffs regarding the subject matter of this suit, including the date of each communication and whether it was in writing, by phone, in person, by e-mail, or by other means.

## ANSWER TO INTERROGATORY NO. 30:

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver that, while each Named Plaintiff has communicated with class counsel, the Named Plaintiffs did not keep records of such communications.  To the best of undersigneds' and class representatives' recollections, the Named Plaintiffs have communicated verbally with proposed class counsel or their staff an approximate average of five occasions since their designation as class representatives, have received approximately three mass mailings from undersigned, two or three additional mailings from undersigned, and have met personally with undersigned for purposes of introduction,  interview or document production.  Additional instances are unknown, as numerous putative class members call throughout the day for updates or to ask questions, which calls are not memorialized, and it is therefore unknown whether such calls were received from class representatives before they were so designated. (Gilbert)

Counsel for the *Benoit* Plaintiffs has communicated with plaintiffs through mail (3 letters) and by telephone (calls to and from Plaintiffs not counted). Some Plaintiffs have visited the office on one or more occasions while others have communicated only by mail.

**INTERROGATORY NO. 31:**

State how you propose to ascertain the identities of the individuals and/or entities that make up the proposed class and subclasses, including the true owners of real property located within the proposed class area.

**ANSWER TO INTERROGATORY NO. 31:**

Many putative class members have already been in touch with counsel for plaintiffs, and additional putative class members contact counsel for plaintiffs every day.

With respect to putative class members who have not yet contacted counsel for plaintiffs as of the date of a Class Notice, plaintiffs will use all publicly available information, press releases, web sites, and referrals from existing clients. Plaintiffs will seek to use the information of governmental and private aid organizations that have been in contact with putative class members. An advertising program will likely be necessary. It is possible that plaintiffs will use a recognized claims processing agency such as Bourgeois Bennett.

Plaintiffs do not limit themselves by the foregoing response, and may use other means that occur to them hereafter as appropriate in this matter.

Plaintiffs anticipate that a Plan of Notice will be part of their submissions in support of class certification.

**INTERROGATORY NO. 32:**

Identify every floodwall and levee breach that caused water to flow into the proposed class area of which plaintiffs and their representatives are aware.

**ANSWER TO INTERROGATORY NO. 32:**

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

According to information and belief, the proposed area was entirely flooded and destroyed by the two IHNC breaches subject of this suit, known as the North and South breaches, before water from any other flood source was present in the area.

**INTERROGATORY NO. 33:**

Identify and describe any mathematical or formulaic calculations or models that you contend may be used to determine the cause(s) of alleged injuries to any proposed class member and/or to determine the type or amount of damages sustained by any class member, and explain how such calculations or models would be legally sufficient in any trial of your proposed class action.

**ANSWER TO INTERROGATORY NO. 33:**

Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

**INTERROGATORY NO. 34:**

Identify and describe in detail the circumstances if any of the individual plaintiffs or proposed class representatives have ever been convicted of a crime, filed for bankruptcy, or been adjudicated to have breached a fiduciary duty.

**ANSWER TO INTERROGATORY NO. 34:**

Plaintiffs object to this request as overbroad, unduly burdensome, harassing, embarrassing, annoying, and not reasonably calculated so as to lead to the discovery of admissible evidence.  Plaintiffs also object to this Interrogatory as it seeks information readily available to Defendants in the public domain.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

Criminal convictions -  **Robert Green, Sr**., **Earl M. Daniels and Joyce Daniels** have been convicted of a crime.

Bankruptcies -  **Robert Green, Sr.** filed for bankruptcy in 1981.  **Henry and Gwendolyn Adams** filed for bankruptcy in 1989.

Adjudication of breach of fiduciary duties - none.

**INTERROGATORY NO. 35:**

Identify, by court and docket number, each civil or criminal proceeding in which any individual plaintiff or proposed class representative has been a party.

**ANSWER TO INTERROGATORY NO. 35:**

Plaintiffs object to this request as overbroad, unduly burdensome, harassing, embarrassing, annoying, and not likely to lead to the discovery of admissible evidence.  Plaintiffs also object to this Interrogatory as it seeks information readily available to Defendants in the public domain.  Subject to said objections and without waiving same, Plaintiffs respond as follows:

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver as follows:

1. **Marie Short Benoit- Plaintiff was a party to a civil suit involving a car accident that occurred in 2003.**
2. **Henry Adams and Gwendolyn Adams – Plaintiffs were parties in an action against a company responsible for a chemical spill and fire due to a leaking tank car in 1987.**
3. **Robert Green, Sr. - Plaintiff is an heir to his late mother's succession in Civil District Court for Orleans Parish and a defendant in a criminal matter in federal court.**
4. **Jonathan Green- Plaintiff is an heir to his late mother's succession in Civil District Court for Orleans Parish.**
5. **David Green- Plaintiff is an heir to his late mother's succession in Civil District Court for Orleans Parish.**
6. **Earl Matthew Daniels, Sr. and Joyce Daniels- Plaintiff filed a claim against State Farm for an auto accident some seven or eight years ago, but are not sure if any action was filed relating to this claim.  Mr. and Mrs. Daniels were defendants in a criminal matter in federal court in 1990.**
7. **Mildred Delores Dean- Plaintiff was in a car accident in December of 1980 that was settled but she is not sure whether a suit was filed.**

**John Alford** and **Jerry Alford** have not been located.

**Tom Browder, Albertine Browder** and **Gaynell Browder** have not been located.

**Myrna Daniels, Keina Daniels**, and **Keiara Cartwright** have not responded.

**Michael Watts** has failed to respond and has refused certified mail from counsel.

**INTERROGATORY NO. 36:**

If you claim damages to real property, identify the real property by address and location and identify all owners, lienholders, mortgagees and mortgagors, and all other persons with a legal interest in said property.

**ANSWER TO INTERROGATORY NO. 36:**

Plaintiffs claim damages to real property evaluated by expert analysis on a classwide approach, possibly performed by John Kilpatrick, unless a class is not certified, in which event plaintiffs reserve all of their claims for property damage. Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

To the best of Plaintiffs' current knowledge, information, recollection, and belief, Plaintiffs aver that the following properties were damaged at the following locations:

**Marie Benoit:**
2401-2401 ½ Deslonde St. owned by Plaintiff, no liens or mortgages.
2344-2346 Deslonde St. owned by Plaintiff, mortgage held by EMC Mortgage Company

**Henry Adams and Gwendolyn Adams:**
2414 Deslonde- owned by Plaintiffs, mortgage held by Citifinancial

**Robert Green, Sr.:**

1826 Tennessee Street- owned by Joyce H. Green but now owned by Robert Green, Sr., David Green, Jonathan Green, and Khalid Green.

**David Green:** 1826 Tennessee Street- owned by Joyce H. Green but now owned by Robert Green, Sr., David Green, Jonathan Green, and Khalid Green.

**Jonathan Green:** 1826 Tennessee Street- owned by Joyce H. Green but now owned by Robert Green, Sr., David Green, Jonathan Green, and Khalid Green.

**Earl Daniels and Joyce B. Daniels**: 2233 Deslonde Street owned by Plaintiffs until sold to Road Home.

**Mildred D. Dean:** 2302 Tennessee Street- owned by Marion and Mildred Dean, mortgage held by American General Finance.

**Ms. Ethel Leon:** 2311 Deslonde Street- owned by Karen Leon, Donna McCray, Ethel Leon, Kim Price, and Donald Leon, Jr.

**Ms. Karen Leon:** 2311 Deslonde Street- owned by Karen Leon, Donna McCray, Ethel Leon, Kim Price, and Donald Leon, Jr.

**John Alford** and **Jerry Alford** have not been located.

**Tom Browder**, **Albertine Browder** and **Gaynell Browder** have not been located.

**Myrna Daniels**, **Keina Daniels**(now of legal age), and **Keiara Cartwright** have not responded.

**Michael Watts** has failed to respond and has refused certified mail from counsel.

Plaintiffs reserve the right to supplement and amend this Answer to Interrogatory.

## INTERROGATORY NO. 37:

If you claim damages for demolition, salvage or restoration of property, identify the person or persons who carried out the demolition, salvage or restoration, the dates on which it was carried out, and describe what was done and the costs incurred.

## ANSWER TO INTERROGATORY NO. 37:

Please see Sixth Supplemental Complaint in *Mumford*.

Plaintiffs claim damages to real property evaluated by expert analysis on a classwide approach, possibly performed by John Kilpatrick, unless a class is not certified, in which event plaintiffs reserve all of their claims for property damage. Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

## INTERROGATORY NO. 38:

If you claim damages for lost income, describe the source and amount of income prior to the storm, the circumstances under which it was "lost," and all efforts to generate income or find work after the storm.

## ANSWER TO INTERROGATORY NO. 38:

Marie Benoit, Robert Green, and Earl Daniels lost equipment and records used in a home-based businesses and therefore claim damages for lost income evaluated by expert analysis on a classwide approach, possibly performed by Don Coker, unless a class is not certified, in which event plaintiffs reserve all of their claims for lost income.

Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and

scheduling deadlines set by the Court.

**INTERROGATORY NO. 39:**

Do you claim damages for personal injury other than emotional distress?  If so, identify the injury, the date of its occurrence, and any medical providers who provided treatment.  If not, state why you are not claiming damages for personal injury other than emotional distress.

**ANSWER TO INTERROGATORY NO. 39:**

None of the named plaintiffs other than Josephine Richardson is asserting a claim for personal injury for anything other than emotional distress.

Plaintiff Josephine Richardson is asserting a wrongful death claim as a surviving spouse.  Her claim is described in detail in the Sixth Amended Complaint in *Mumford*.

Plaintiffs object to this request to the extent it asks for the reasons why a claim was never made.  Such a request is outside the scope of discovery under Rule 26(b)(1), Fed. R. Civ. Pro., which limits the scope of discovery to "any nonprivileged matter that is relevant to any party's claim or defense."

Plaintiffs further object to this request to the extent it asks for the substance of communications protected by the attorney-client privilege, the substance of interview notes and other documents protected by the privilege for attorney work-product.

Plaintiffs not that, if the class is not certified in conformity with plaintiffs' motion for certification, plaintiffs anticipate that at least 6,000 individuals will pursue their claims in individual cases, consolidated cases, or mass tort actions against defendants, and will seek all compensable damages.

**INTERROGATORY NO. 40:**

Do you claim damages in this case for emotional distress?  If so, identify any medical, psychiatric, or other professional who provided treatment and the dates of treatment.

**ANSWER TO INTERROGATORY NO. 40:**

Plaintiffs claim damages for emotional distress and are considering the best trial plan under which such claims could properly be resolved in a class action.

Plaintiffs will supplement their answer to this interrogatory.

**INTERROGATORY NO. 41:**

If you claim damages for wrongful death, identify the decedent and circumstances of death, including the date, location, and cause of death.

**ANSWER TO INTERROGATORY NO. 41:**

Please see Sixth Supplemental Complaint. All decedents the subject of this litigation died as a result of the flooding made the subject of this litigation during its presence.

Certain *Benoit* Plaintiffs have claims for the wrongful deaths of Joyce H. Green and Shanai Green on August 29, 2005. Both drowned in the Lower Ninth Ward in the vicinity of 1617 Tennessee Street.

Plaintiffs are considering the best trial plan under which such claims could properly be resolved in a class action.

Plaintiffs will supplement their answer to this interrogatory.

**INTERROGATORY NO. 42:**

State how and when you or your representatives or counsel learned about any settlement involving the Murph family, including the name of every person who provided any information about a settlement involving the Murph family and the date(s) on which such information was provided.

**ANSWER TO INTERROGATORY NO. 42:**

The information was learned during the years 2005, 2006 and 2007, through rumor, privileged communications with clients, prospective clients, and co-counsel, through property record research, research conducted at http://www.chaffe.com/bios/holladay.htm, and various legal research relevant to known and reputed terms of the settlement.

**INTERROGATORY NO. 43:**

Was any of the flooding attributable to the northern breach? If so, state what portion you contend is attributable compared to the southern breach, and describe the evidence supporting that contention.

**ANSWER TO INTERROGATORY NO. 43:**

Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Plaintiffs further object on the grounds of irrelevance in accord with *Edmonds v. Compagnie*, *Coats v. Penrod*, etc., and because the same defendants, through the same negligence and unseaworthiness, caused both the North and South breaches. Subject to said objections and without waiving same, Plaintiffs respond as follows:

Yes, flooding in the proposed class area is attributed to the northern breach, caused by ING 4727.

## INTERROGATORY NO. 44:

Was any of the flooding in the proposed class area attributable to other breaches or failures other than the northern and southern IHNC breaches?  If so, state what portion you contend is attributable compared to the southern breach, and describe the evidence or reports or studies supporting that contention.

## ANSWER TO INTERROGATORY NO. 44:

Plaintiffs object to this request to the extent that it seeks to alter the timing of disclosure of experts and of expert testimony provided by Rule 26(a)(2)(C), Fed. R. Civ. Pro., and C.M.O. #5, Part V(F).

Plaintiffs will submit their exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

Subject to and without waiver of any objections, Plaintiffs respond:

No.  This answer is based upon witness interviews and scientific conclusions.  Plaintiffs will submit their expert reports and/or witness lists and/or exhibit lists and/or other evidence and/or information which Plaintiffs may or will use at the time of the Class Certification Hearing or Trial in this matter pursuant to the Case Management Orders and scheduling deadlines set by the Court.

## INTERROGATORY NO. 45:

[On behalf of Zito entities only]: Please identify the full names, addresses, telephone numbers, job titles, and employers of any and all witnesses that purport to support the claim that a representative(s) of LaFarge North America Inc. called and left a voice mail message with Zito on the morning of August 27, 2005.

## ANSWER TO INTERROGATORY NO. 45:

Edward Bush, Earl Smith.  They have been deposed.

## INTERROGATORY NO. 46:

[On behalf of Zito entities only]: Please identify all facts, documents, evidence, and witnesses that you are aware of that purportedly support your contention that Zito had knowledge on August 27, 2005 that Barge ING 4727 had been offloaded and/or was ready for pick up from LaFarge North America, Inc.'s facility.

**ANSWER TO INTERROGATORY NO. 46:**

Edward Bush said that he called Zito.

**INTERROGATORY NO. 47:**

[On behalf of Zito entities only]: If you contend that Zito was in any way at fault for the breakaway of Barge ING 4727, identify all facts, documents, evidence, and witnesses (if any), that you are aware of that purportedly support this contention.

**ANSWER TO INTERROGATORY NO. 47:**

Please see complaints filed herein, plaintiffs' pleadings, memoranda, etc., in 05-4419, depositions of Busch, Smith and Boudreaux, Zito phone records.  Edward Bush called Zito to release the barge.  Zito did not respond.  Plaintiffs reserve the right to supplement as investigation and discovery are ongoing.

**INTERROGATORY NO. 48:**

[On behalf of Zito entities only]: If you contend that Zito violated or failed to comply with any Coast Guard, industry, or other applicable rules, regulations, standards, or duties that caused or contributed to the breakaway of Barge ING 4727, please identify the specific rules, regulations, standards, and/or duties, together with factual basis for the alleged violations /non-compliance.

**ANSWER TO INTERROGATORY NO. 48:**

Objection.   Calls for legal conclusions.

Subject to and without waiver of any objections, Zito, as Ingram's towing, delivery, pickup, release, demurrage, transport and fleeting agent, had a duty to comply with applicable standards of maritime care and maritime regulations relative to ING 4727.  Such standards and regulations, and the factual basis for the assertions, are expressed throughout plaintiffs' pleadings and submissions in 05-4419.

**INTERROGATORY NO. 49:**

[On behalf of Zito entities only]: If you disagree with Barry Boudreaux's testimony that had a telephone call been placed to Zito's 504-835-8531 phone number on August 27, 2005, the

call would not go to an answering machine or a voice mail system, identify all facts, documents, evidence and witnesses (if any) that you are aware of that support your contention.

**ANSWER TO INTERROGATORY NO. 49:**

Plaintiffs object to this request because it calls for speculation as to the operation of Zito's telephone system and its possible culpability or negligence for having such a telephone system, and as such is not a permissible subject of discovery. Discovery is ongoing, and plaintiffs will supplement this interrogatory if additional information becomes available.

**INTERROGATORY NO. 50:**

[On behalf of Zito entities only]: If you contend that Zito had the means to pickup Barge ING 4727 on August 27, 2005 after Edward Busch allegedly left a voice mail message with Zito that morning, identify the specific basis for this contention including all facts, documents, evidence and witnesses that you are aware of that purportedly support this contention.

**ANSWER TO INTERROGATORY NO. 50:**

Zito records reflect that Zito was engaged in IHNC lock transit, barge towing and fleeting activities after the Busch phone call. Boudreaux testified in Phase I of 05-4419 that he could have picked up and fleeted the barge.

Plaintiffs reserve the right to supplement and amend.


Respectfully submitted,

/s/ Brian A. Gilbert,
Brian A. Gilbert, Esq.(21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
    Telephone: (504) 885-7700
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail: bgilbert@briangilbertlaw.com

/s/ Lawrence D. Wiedemann,
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street

New Orleans, Louisiana 70113
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail: lawrence@wiedemannlaw.com,
    karl@wiedemannlaw.com, karen@wiedemannlaw.com,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
Telephone: 504-834-0646
e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Adele Rapport
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell:   202-549-1454
    Facsimile:  800-805-1065 and 202-828-4130
    e-mail: rick@rickseymourlaw.net,
        adele@rickseymourlaw.net

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. 2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
Telephone: (212) 608-4400
Facsimile: (212) 227-5159
e-mail: lwilson@wgdnlaw1.com,     ddruker@wgdnlaw1.com

/s/ Alan L. Fuchsberg
Alan L. Fuchsberg, Esq.(N.Y.S.B.A. #1755966)
Leslie Kelmachter, Esq.(N.Y.S.B.A. #1795723)
The Jacob D. Fuchsberg Law Firm
500 Fifth Avenue
45th Floor

New York, NY 10110-0002
Telephone: 212-869-3500 ext. 235
Facsimile:  212-398-1532
    e-mail: a.fuchsberg@fuchsberg.com,
    l.kelmachter@fuchsberg.com

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, electronic mail, facsimile, and/or ECF upload, this 14 day of April, 2008.

    \s\Brian A. Gilbert