### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | CIVIL ACTION |
| | NO.  05-4182 |
| PERTAINS TO:  BARGE | & Consol. Cases |
| Boutte, No. 05-5531 | |
| Mumford, No. 05-5724 | SECTION "K" (2) |
| Lagarde, No. 06-5342 | JUDGE  DUVAL |
| Perry, No. 06-6299 | |
| Benoit, No. 06-7516 | MAGISTRATE WILKINSON |

### MEMORANDUM OF THIRD-PARTY DEFENDANT, THE BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

### Introduction

Under federal law, when a plaintiff's claim for relief falls within a federal court's admiralty or maritime jurisdiction, and also within the court's jurisdiction on some other ground, if the plaintiff wishes to benefit from certain distinctive features of the admiralty practice and proceed under the court's admiralty or maritime jurisdiction, he must designate his claim as an admiralty or maritime claim under Rule 9(h) of the Federal Rules of Civil Procedure.  By designating such a claim as an admiralty or maritime claim, the plaintiff makes Rules 14(c), 38(e), and 82 of the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset

- 1 -

Forfeiture Actions applicable to his action. In particular, Rule 14(c) allows a defendant, as a third-party plaintiff, to implead a third-party defendant who may be liable to either the original plaintiff or to the third-party plaintiff, and demand that a judgment be entered in favor of the original plaintiff against the third-party defendant. In contrast, Rule 14(a), which governs third-party practice in non-admiralty or maritime claims, prohibits the impleader of a third-party defendant simply because the third-party defendant may be liable to the original plaintiff. Instead, Rule 14(a) impleader must be based solely upon the third-party defendant's derivative or secondary liability to the third-party plaintiff, if the original plaintiff recovers against the third-party plaintiff. Thus, a third-party plaintiff proceeding under Rule 14(a) may not demand that a judgment be entered in favor of the original plaintiff against the third-party defendant.

Plaintiffs, in the above-referenced actions, have sued defendant, Lafarge North America, Inc. ("Lafarge"), in both state and federal court, alleging that Barge 4727, while moored at Lafarge's facility, broke free from its moorings during Hurricane Katrina and knocked down the east side wall of the Inner Harbor Navigation Canal ("IHNC") causing flooding. Plaintiffs have not identified their claims against Lafarge as admiralty or maritime claims, and this Honorable Court's diversity jurisdiction has been invoked either by the Plaintiffs, when initially filing suit, or by Lafarge, when removing those actions originally filed in state court. In response to the Plaintiffs' claims, Lafarge denies that Barge 4727 knocked down the wall and instead claims that the Barge passed through one of several openings in the IHNC wall that arose during the hurricane. Additionally, Lafarge has filed Third-Party Complaints in these actions

against the Board of Commissioners of the Port of New Orleans (the "Dock Board") and others denying any liability for the Plaintiffs' damages and alleging that the Plaintiffs' damages were solely caused by the pre-hurricane negligence of the third-party defendants. In its Third-Party Complaints, Lafarge seeks to recover the "full amount" of any liability it may have to Plaintiffs, and further demands that a judgment be entered in favor of Plaintiffs solely against the Dock Board and the other third-party defendants, and not against Lafarge.

As will be explained more fully below, because Plaintiffs have not designated their claims against Lafarge as admiralty or maritime claims for purposes of Rule 9(h), Lafarge's impleader of the Dock Board is governed by Rule 14(a), and not Rule 14(c). Under Rule 14(a), Lafarge's demand that a judgment be entered in favor of Plaintiffs and against the third-party defendant, Dock Board, fails as a matter of law. Moreover, Lafarge's basic theory of third-party recovery against the Dock Board— namely, that the Plaintiffs' alleged damages were not caused by anything that Lafarge either did or did not do, but rather were caused solely by the negligent acts of the Dock Board and others— is patently improper under Rule 14(a) because such allegations do not establish that the Dock Board is secondarily or derivatively liable to Lafarge, if the Plaintiffs successfully recover against Lafarge. Accordingly, the Dock Board respectfully requests that this Honorable Court grant the Dock Board's Motion for Summary Judgment and dismiss Lafarge's Third-Party Complaints against the Dock Board, with prejudice, each party to bear its own costs.

- 3 -

**Basic Facts and Law**

Plaintiffs have filed five separate actions[1] against Lafarge in the Barge category of the Katrina litigation umbrella.  In each of those actions, Lafarge has filed Third-Party Complaints against the Dock Board and others.[2]  In those actions originally filed in federal court (Mumford, Lagarde,  and Boutte), the Plaintiffs demanded a jury trial and asserted multiple grounds of federal jurisdiction, including diversity of citizenship and admiralty or maritime jurisdiction.  In those cases removed from state court to federal court (Perry and Benoit), removal jurisdiction was based upon diversity of citizenship.

When multiple grounds of federal jurisdiction exist, and one of those grounds is admiralty or maritime jurisdiction, a Plaintiff has the "power to determine procedural consequences by the way in which he exercises the classic privilege given by the savings to suitors clause (28 U.S.C. §1333) or by equivalent statutory provisions." See, Advisory Committee Notes 1966 Amendment to Fed.R.Civ.P. 9.  A plaintiff's power to determine procedural consequences when admiralty and another ground of federal jurisdiction exist stems from Rule 9(h) of the Federal Rules of Civil Procedure.  Under Rule 9(h), "[i]f a claim for relief is within the admiralty or maritime jurisdiction and also

---

[1] These actions are:  (1) Ethel Mumford, et al. v. Ingram Barge Company, et al., No. 05-5724 (class action)(hereinafter "Mumford"); (2) Marenthia Lagarde, et al. v. Lafarge North America, Inc., No. 06-5342 (non-class action)(hereinafter "Lagarde"); (3)  Mary Short Benoit, et al. v. Lafarge North America, et al., No. 06-7516 (class action)(removed from  Civil District Court for the Parish of Orleans)(hereinafter "Benoit"); (4) Jimmie A. Perry, et al. v. Ingram Barge Company, et al., No. 06-6299 (non-class action)(removed from Civil District Court for the Parish of Orleans)(hereinafter "Perry"); (5) Blair Boutte, et al. v. Lafarge North America, Inc., No. 05-5531 (class action)(hereinafter "Boutte").

[2] See, Answer and Third-Party Complaint in Lagarde [No. 05-4419 Rec. Doc. No. 333]; Answer and Third-Party Complaint in Perry [No. 05-4419 Rec. Doc. No. 391]; Answer and Third-Party Complaint in Benoit [No. 05-4419 Rec. Doc. No. 597]; Third-Party Complaint of Defendant Lafarge North America, Inc. Against the Board of Commissioners of the Port of New Orleans, et al. in Boutte [No. 05-4419 Rec. Doc. No. 203]; Answer to Sixth Supplemental and Amended Complaint and Third-Party Complaint in Mumford [No. 05-4182 Rec. Doc. No. 9032].

within the court's subject matter jurisdiction on some other ground," a Plaintiff who wishes to take advantage of "[c]ertain distinctive features of the admiralty practice," <u>see</u>, Advisory Committee Notes 1966 Amendment to Fed.R.Civ.P. 9, may, in his pleading, "designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions." <u>See</u>, Fed.R.Civ.P. 9(h).  As further explained by the U.S. Fifth Circuit:

> With the unification of [the] admiralty rules [with the civil rules in 1966], it was necessary to preserve those historical procedures traditionally attached to actions in admiralty, not the least of which was the non-jury trial.  The solution that was applied was the preservation in Rule 9(h) of the plaintiff's right to choose the procedural consequences of a civil or admiralty action, by choosing the jurisdictional basis of the action and designating that basis in the complaint.  This solution complied with the existing procedural choice provided by the 'saving [to] suitors' clause, codified in 28 U.S.C. 1333(1), the effect of which is that a suitor who holds an <u>in personam</u> claim, which might be enforced by a suit <u>in personam</u> in admiralty, may also, at his election, file suit at 'common law,' by the filing of an ordinary civil action, in state court or in federal court, without reference to 'admiralty,' given diversity and jurisdictional amount.  Rule 9(h), in providing that a reference to admiralty results in the invocation of admiralty procedure, requires that all suits invoking admiralty jurisdiction continue to carry the election of the procedural consequences incident to admiralty procedure, despite the unification of civil and admiralty rules.

<u>See</u>, <u>Durden v. Exxon Corporation</u>, 803 F.2d 845, 849 n. 10 (5th Cir. 1986).  Thus, when a plaintiff chooses to proceed under the court's admiralty or maritime jurisdiction, certain distinctive features of the admiralty practice such as the special rules regarding venue and the availability of an interlocutory appeal, the non-availability of a jury trial, the availability of certain maritime remedies such as Rule B attachment and the Rule C action <u>in rem</u> to enforce a maritime lien, and the recovery of pre-judgment interest will

- 5 -

apply. See, T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc., 702 F.2d 585, 586-87 (5th Cir. 1983), cert denied, 464 U.S. 847, 104 S.Ct. 151 (1983).

Another procedural consequence of a plaintiff designating his claim as an admiralty or maritime claim is the availability to the defendant of Rule 14(c) of the Federal Rules of Civil Procedure, which allows a third-party plaintiff to not only implead a third-party defendant who may be liable in whole or in part to the original plaintiff, but also to demand that a judgment be entered in favor of the original plaintiff against the third-party defendant:

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable— either to the plaintiff or to the third-party plaintiff— for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. … The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant.…

See, Fed.R.Civ.P. 14(c). In contrast, Rule 14(a) of the Federal Rules of Civil Procedure governs third-party impleader in non-admiralty actions. Under Rule 14(a), "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." But unlike Rule 14(c), "[u]nder Rule 14(a), a third-party defendant may not be impleaded merely because he may be liable to the plaintiff." See, Owen Equipment and Erection Company v. Kroger, 437 U.S. 365, 368 n. 3, 98 S.Ct. 2396, 2400 n. 3 (1978). Rather, impleader under Rule 14(a) is based upon a third-party defendant's derivative or

secondary liability to the original defendant, not the third-party defendant's liability to the original plaintiff:

> It is no longer possible under Rule 14[(a)], as it was prior to the 1948 amendment to the rule, to implead a third party claimed to be solely liable to the plaintiff.  A proposed third-party plaintiff must allege facts sufficient to establish the derivative or secondary liability of the proposed third-party defendant.  Thus, under Rule 14(a), a third-party complaint is appropriate only in cases where the proposed third-party defendant would be secondarily liable to the original defendant in the event the latter is held to be liable to the plaintiff.

See, Barab v. Menford, 98 F.R.D. 455, 456 (E.D.Pa. 1983).  Also, under Rule 14(a), a third-party plaintiff may not demand that a judgment be entered against the third-party defendant in favor of the original plaintiff.  See, Williams v. United States, 42 F.R.D. 609, 615 (S.D.N.Y. 1967).  Finally, it is well settled that impleader under Rule 14(c) is much broader than impleader under Rule 14(a):

> F.R.Civ.P. 14(c) was modeled on old Admiralty Rule 56.  An important feature of Admiralty Rule 56 was that it allowed impleader of any person who might be liable to the plaintiff.  The importance of Rule 56 was that the defendant was entitled to insist that the plaintiff proceed to judgment against the third-party defendant.   Thus, consistent with traditional admiralty practice, Rule 14(c) allows impleader on a broader basis tha[n] Rule 14(a).  The difference is highlighted by 3 J. Moore, Moore's Federal Practice ¶14.34 at 14-156 (2d ed. 1985)(footnote omitted):

>> A third-party defendant may be brought in under Rule 14(c) not only on a theory of liability over to the third-party plaintiff for any recovery the original plaintiff may secure from such third-party plaintiff (the original defendant), but also on a theory that the third-party defendant is directly liable to the original plaintiff either jointly with the original defendant or instead of the original defendant.

See, Frota Oceanica Brasileira, S.A. v. M/V ALICE ST. PHILIP, 790 F.2d 412, 417 n. 9 (5th Cir. 1986)(Brown, J.).

- 7 -

1. **Because Plaintiffs have not designated their claims against Lafarge as admiralty or maritime claims, Rule 14(a), and not Rule 14(c), governs Lafarge's impleader of the Dock Board, and under Rule 14(a), Lafarge cannot demand that a judgment be entered directly in favor of Plaintiffs and against the Dock Board, as a matter of law.**

In its Third-Party Complaints, Lafarge demands that a judgment be entered in favor of Plaintiffs solely against the Dock Board and the other third-party defendants, and not against Lafarge:

> (3)     If plaintiffs are entitled to judgment, said judgment be solely against third-party defendants the United States of America, the Board of Commissioners of the Port of New Orleans, and/or the Board of Commissioners of the Orleans Levee District [the Southeast Louisiana Flood Protection Authority- East], and not against LNA.[3]

Applying the foregoing basic legal principles, in order to ascertain whether Lafarge may take advantage of the broader impleader practice under Rule 14(c) and demand a judgment in favor of the Plaintiffs against the Dock Board, we must determine whether the Plaintiffs have identified their claims against Lafarge as "admiralty or maritime claims" for purposes of Rule 9(h).

Interpreting Rule 9(h), the U.S. Fifth Circuit has held that "a party need not make a specific reference to Rule 9(h) in order to fall under [the court's] admiralty jurisdiction." See, Teal v. Eagle Fleet, Inc., 933 F.2d 341, 345 (5th Cir. 1991), reh'g denied, 951 F.2d 347 (5th Cir. 1991)(Table). Instead, the Fifth Circuit has stated that "a case cognizable

---

[3] See, Lafarge Third-party Complaints in: Lagarde at Prayer (3) [No. 05-4419 Rec. Doc. No. 333 at p. 24]; Benoit at Prayer (3) [No. 05-4419 Rec. Doc. No. 597 at p. 29]; Perry at Prayer (3) [No. 05-4419 Rec. Doc. No. 391 at p. 23]; Boutte at Prayer (3) (Prayer reads, "If plaintiffs are entitled to judgment, said judgment be solely against third-party defendants, the Dock Board and/or the Orleans Levee District.")[No. 05-4419 Rec. Doc. No. 203 at p. 11]; Mumford at Prayer (3)[No. 05-4182 Rec. Doc. No. 9032 at p. 24-25](substituting "the Southeast Louisiana Flood Protection Authority- East" for "the Board of commissioners of the Orleans Levee District").

under both admiralty and diversity jurisdiction will be treated as an admiralty action if the plaintiff asserts a simple statement asserting admiralty or maritime claims." See, Teal, 933 F.2d at 345; see also, T.N.T. Marine Service, Inc., 702 F.2d at 587.  It should be noted, however, that "[a] plaintiff's allegation that his claim is within the admiralty and maritime jurisdiction is not sufficient to make it an admiralty and maritime claim within the meaning of Rule 9(h), if the claim is also within the district court's jurisdiction on some other ground."  See, Harrison v. Glendel Drilling Company, 679 F.Supp. 1413, 1418 (W.D.La. 1988).

Applying the foregoing law, and beginning with the action in Mumford,[4] the only reference to admiralty or maritime in the original and numerous supplemental and amending Complaints is the jurisdictional statement contained in the Original Complaint:

> This Court has jurisdiction over this matter as follows:  Diversity, under 28 U.S.C. 1332; General Maritime Law under 28 USC §1333; and the surrogate law of the state of Louisiana under the saving to suitor's clause of 28 USC §1333.

See, Mumford Suit for Damages Trial by Jury at ¶ 1 [No. 05-5724 Rec. Doc. No. 1]. Nowhere else do the words admiralty or maritime appear.  Also, Plaintiffs specifically requested a trial by jury, which would be wholly inconsistent with the invocation of this Court's admiralty or maritime jurisdiction.  See, Mumford Suit for Damages Trial by Jury at p. 4-5 [No. 05-5724 Rec. Doc. No. 1].  Given that the Mumford Plaintiffs have not

---

[4] The various Complaints in Mumford are: (1) Suit for Damages Trial by Jury [No. 05-5724 Rec. Doc. No. 1]; (2) First Supplemental and Amended Complaint [No. 05-5724 Rec. Doc. No. 5]; (3) Second Supplemental and Amended Complaint [No. 05-4419 Rec. Doc. No. 43]; (4) Third Supplemental and Amended Complaint [No. 05-4419 Rec. Doc. No. 129]; (5) Supplemental and Amended Complaint Adding Defendants Zito Fleeting, LLC and Zito Fleeting, Inc. [No. 05-4419 Rec. Doc. 449]; (6) Fifth Supplemental and Amended Complaint [No. 05-4419 Rec. Doc. No. 719]; and (7) Sixth Supplemental and Amended Complaint [No. 05-4182 Rec. Doc. No. 8779].

identified their claims as admiralty or maritime claims, they have not invoked this Court's admiralty or maritime jurisdiction.

In Benoit, Plaintiffs originally filed suit in Civil District Court for the Parish of Orleans. In their Petition, the only reference to admiralty or maritime is the following:

> 24.   Plaintiff and the class are entitled to punitive damages under the general maritime law because of defendants' reckless, wanton, egregious and reprehensible conduct.

See, Benoit Class Action Petition for Damages at ¶ 24 [No. 06-7516 Rec. Doc. No. 1-2]. Plaintiffs also requested a jury trial. See, Benoit Class Action Petition for Damages at ¶25 [No. 06-7516 Rec. Doc. No. 1-2]. Lafarge subsequently removed the Benoit action to this Honorable Court and, in doing so, premised federal jurisdiction under:  (1) the Class Action Fairness Act; (2) the Multiparty, Multiforum Trial Jurisdiction Act;  and (3) diversity jurisdiction based upon fraudulent joinder. See, Notice of Removal at ¶¶ 7, 8 [No. 06-7516 Rec. Doc. No. 1].  Because a Savings-to-Suitors case filed in state court "may only be removed if there exists some independent basis for federal jurisdiction [other than admiralty], such as diversity of citizenship," see, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 390 (3rd Cir. 2002)(citing to Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468 (1959)), this Honorable Court's admiralty jurisdiction cannot have been invoked, and Plaintiffs' claims cannot now be considered to be admiralty or maritime claims within the meaning of Rule 9(h).

In Perry, Plaintiffs filed suit in the Civil District Court for the Parish of Orleans, and the only potential reference to admiralty or maritime can be found in the following jurisdictional statement:

> Jurisdiction and venue are proper in this Court in accordance with the
> Louisiana Code of Civil Procedure and the Savings to Suitors Clause of
> [28] U.S.C. §1333(1).

See, Perry Petition for Damages at ¶ 3 [No. 06-6299 Rec. Doc. No. 1-2].   Lafarge

subsequently removed the Perry action on grounds of diversity of citizenship jurisdiction

under 28 U.S.C. §1332.   See, Perry Notice of Removal at ¶2 [No. 06-6299 Rec. Doc.

No. 1].   Again, the Perry Plaintiffs have not designated their claims as admiralty or

maritime.

In Lagarde, Plaintiffs filed a Complaint against Lafarge in federal court.   Again,

the only reference to admiralty or maritime is found in the following allegation:

> This Honorable Court has subject matter jurisdiction over this controversy
> pursuant to 28 U.S.C. 1333, admiralty and maritime jurisdiction and
> diversity jurisdiction, 28 U.S.C. 1332, as the matter in controversy is in
> excess of $75,000.

See, Lagarde Complaint at ¶ 4 [No. 06-5342 Rec. Doc. No. 1].   Plaintiffs also requested

a trial by jury.   See, Lagarde Complaint at ¶13 [No. 06-5342 Rec. Doc. No. 1].   As

shown above, the mere statement that admiralty and maritime jurisdiction exists is

insufficient to identify a claim as an admiralty or maritime claim for purposes of Rule

9(h).

Finally, in Boutte, Plaintiffs base their claims against Lafarge solely upon diversity

jurisdiction under 28 U.S.C. §1332 and request a jury trial.   See, Boutte Class Action

Complaint at ¶ 2 & p. 7 [No. 05-5531 Rec. Doc. No. 1].   There is no mention of admiralty

or maritime anywhere in the Complaint.

Given the foregoing, it cannot be seriously maintained that Plaintiffs have alleged admiralty or maritime claims against Lafarge within the meaning of Rule 9(h). Plaintiffs have specifically requested a trial by jury for their claims against Lafarge in all cases except Perry, which was originally filed in state court. A jury-trial request is wholly inconsistent with the invocation of this court's admiralty or maritime jurisdiction. Moreover, in none of their suits have Plaintiffs identified their claims against Lafarge as admiralty or maritime claims. Nor do Plaintiffs refer to Federal Rules 9(h), 14(c), 38(e) or 82 anywhere in their claims against Lafarge. Therefore, because Plaintiffs have elected not to take advantage of "[c]ertain distinctive features of the admiralty practice," and because Rule 14(c) impleader is a distinctive feature of the admiralty practice that is only available to a defendant when the plaintiff asserts admiralty or maritime claims within the meaning of Rule 9(h), Lafarge's impleader of the Dock Board is governed by Rule 14(a), and not Rule 14(c). Under Rule 14(a), Lafarge's demand  in its Third-Party Complaints that a judgment be entered in Plaintiffs' favor against the Dock Board necessarily fails as a matter of law, and must respectfully be dismissed.

2.    **Lafarge's Third-Party Complaints evidence an improper use of impleader under Rule 14(a) because Lafarge has not alleged that the Dock Board is secondarily or derivatively liable to Lafarge for the Plaintiffs' claims against Lafarge; rather, Lafarge seeks a full recovery of any monies Lafarge may be forced to pay Plaintiffs, and asserts that the Plaintiffs' alleged damages were caused solely by the negligent acts of the Dock Board, and not by anything Lagarde did or did not do.**

Given that Rule 14(c) impleader is not available to Lafarge, it next must be determined, through an examination of Lafarge's Third-Party Complaints, whether Lafarge has validly impleaded the Dock Board under Rule 14(a). In this regard,

- 12 -

Lafarge's Third-Party Complaints against the Dock Board in <u>Lagarde</u>, <u>Benoit</u>, <u>Perry</u>, and <u>Boutte</u> are structured and numbered essentially the same.  For the convenience of the Court, the following excerpts from Lafarge's Third-Party Complaint in <u>Lagarde</u> are set forth below with footnotes to show the parallel numbering used for the same allegations for Lafarge's Third-Party Complaints in <u>Benoit</u>, <u>Perry</u>, and <u>Boutte</u>:

XV.[5]

At some point while or shortly after Hurricane Katrina passed through the Greater New Orleans Area on August 29, 2005, the barge ING 4727 broke free from its moorings and was drawn through one of four pre-existing breaches in the levee/retaining wall/I-wall structures of the IHNC. The barge ING 4727 did not cause that breach or any other breach in those structures; nor did it cause any of the injuries or damages complained of by the plaintiffs in this action.

*   *   *

For a First Cause of Action Against the Board of Commissioners of the<br>Port of New Orleans

XXXV.[6]

The Dock Board caused or contributed to the breaches and failures of the levees, retaining walls, and I-walls along the IHNC in the following non-exclusive particulars:

*   *   *

[Specious allegations of fault or neglect omitted]

---

[5] <u>See</u>, Lafarge Third-Party Complaints in: <u>Benoit</u> (Article XV)[No. 05-4419 Rec. Doc. No. 597]; <u>Perry</u> (Article XV)[ No. 05-4419 Rec. Doc. No. 391]; <u>Boutte</u> (Article XIV)[No. 05-4419 Rec. Doc. No. 203].

[6] <u>See</u>, Lafarge Third-Party Complaints in: <u>Benoit</u> (Article XXXVI)[No. 05-4419 Rec. Doc. No. 597]; <u>Perry</u> (Article XXXV)[No. 05-4419 Rec. Doc. No. 391]; <u>Boutte</u> (Article XV)[No. 05-4419 Rec. Doc. No. 203].

- 13 -

XXXVI.[7]

As a result of the foregoing conduct, and as is more fully set forth below, the Dock Board is accountable for the damages (if any) sustained by the plaintiffs, and is liable to LNA for contribution and/or indemnity to the extent that LNA is found liable unto the plaintiffs.

\*   \*   \*

For a Third Cause of Action Against both the Dock Board and the Orleans Levee District

\*   \*   \*

[Specious allegations of fault or neglect omitted]

XLVI.[8]

As a result of the foregoing conduct, and as is more fully set forth below, the Dock Board and Orleans Levee District are accountable for the damages (if any) sustained by the plaintiffs, and are liable to LNA for contribution and/or indemnity to the extent that LNA is found liable unto the plaintiffs.

Damages, Indemnity, and Contribution

XLVII.[9]

Plaintiffs in this action claim to have sustained damages in the form of property loss and/or damage, personal injury and/or death, emotional distress, and other damages as a result of the breach of the IHNC levee and retaining wall (including I-wall) system failures, as well as their connections and component parts.  Plaintiffs have alleged that LNA is liable for those damages.

---

[7] See, Lafarge Third-party Complaints in: Benoit (Article XXXVII)[No. 05-4419 Rec. Doc. No. 597]; Perry (Article XXXVI)[No. 05-4419 Rec. Doc. No. 391]; Boutte (Article XVI)[No. 05-4419 Rec. Doc. No. 203].

[8] See, Lafarge Third-Party Complaints in: Benoit (Article XLVII)[No. 05-4419 Rec. Doc. No. 597]; Perry (Article XLVI)[No. 05-4419 Rec. Doc. No. 391]; Boutte (Article XXVI (incorrectly numbered as "Article XVI"))[No. 05-4419 Rec. Doc. No. 203].

[9] See, Lafarge Third-Party Complaints in: Benoit (Article XLVIII) [No. 05-4419 Rec. Doc. No. 597]; Perry (Article XLVII)(words "personal injury and/or death" omitted)[No. 05-4419 Rec. Doc. No. 391]; Boutte (Article XXVII)(Last sentence of this allegation reads "Plaintiffs have named LNA as one of several defendants allegedly liable for those damages.")[05-4419 Rec. Doc. No. 203].

XLVIII.[10]

LNA avers that the plaintiffs' damages, if any, are the result of negligence in the maintenance and inspection of the IHNC and its respective levee, retaining wall (including I-wall), and related systems and components by the Dock Board, Orleans Levee District, or both, some or all of which caused or contributed to the multiple levee, retaining wall, and I-wall failures and resulted, in turn, in the injuries and damages (if any) complained of by the plaintiffs in this case.

XLIX.[11]

If the Court should find LNA liable unto plaintiffs, which LNA specifically denies, said liability arises out of the breach of duties of the Dock Board and/or Orleans Levee District, and LNA is therefore entitled to indemnity, recovery over, and/or contribution from the Dock Board and Orleans Levee District, in the full amount of any liability that LNA may incur herein, together with interest, costs, and attorneys' fees.

\*   \*   \*

WHEREFORE, Lafarge North America, Inc. prays for the following relief:

\*   \*   \*

(3)   If plaintiffs are entitled to judgment, said judgment be solely against third-party defendants the United States of America, the Board of Commissioners of the Port of New Orleans, and/or the Board of Commissioners of the Orleans Levee District, and not against LNA;[12]

(4)   If LNA should be found liable unto plaintiffs, then LNA be granted indemnity, recovery over, and/or contribution against third-party defendants the United States of America, the Board of

---

[10] See, Lafarge Third-Party Complaints in: Benoit (Article XLIX)[No. 05-4419 Rec. Doc. No. 597]; Perry (Article XLVIII)[No. 05-4419 Rec. Doc. No. 391]; Boutte (Article XXVIII)[No. 05-4419 Rec. Doc. No. 203].

[11] See, Lafarge Third-Party Complaints in: Benoit (Article L)[No. 05-4419 Rec. Doc. No. 597]; Perry (Article XLIX)[No. 05-4419 Rec. Doc. No. 391]; Boutte (Article XXIX)[No. 05-4419 Rec. Doc. No. 203].

[12] See, Lafarge Third-Party Complaints in: Benoit (Prayer 3)[No. 05-4419 Rec. Doc. No. 597]; Perry (Prayer 3)[No. 05-4419 Rec. Doc. No. 391]; Boutte (Prayer 3)(Prayer reads "If plaintiffs are entitled to judgment, said judgment be solely against third-party defendants, the Dock Board and/or the Orleans Levee District.")[No. 05-4419 Rec. Doc. No. 203].

> Commissioners of the Port of New Orleans, and/or the Board of Commissioners of the Orleans Levee District, in the full amount of said liability, together with interest, expenses, costs, and attorneys' fees incurred in the defense of this action....[13]

See, Lafarge Answer and Third-Party Complaint in Lagarde at ¶¶ XV, XXXV, XXXVI, XLVI, XLVII, XLVIII, XLIX, and Prayers (3) and (4)[No. 05-4419 Rec. Doc. No. 333].

In Mumford, Lafarge's Third-Party Complaint is structured and numbered somewhat differently, but, as the following excerpts show, the basic salient allegations against the Dock Board are essentially the same as in the other four actions:

16.   At some point while or shortly after Hurricane Katrina passed through the Greater New Orleans Area on August 29, 2005, the barge ING 4727 broke free from her moorings and was drawn through one of four pre-existing breaches in the walls of the IHNC. The barge ING 4747 did not cause that breach or any other breach in those structures; nor did it cause any of the injuries or damages complained of by the plaintiffs in this action.

* * *

For a First Cause of Action Against the Board of Commissioners of the Port of New Orleans

[Specious allegations of fault or neglect omitted]

* * *

64.   The Dock Board's above-described negligent actions and/or omissions were a direct and proximate cause of, and substantial factor in, the overtopping and/or breaching of the banks and/or levees, retaining walls, and I-walls along the IHNC, MR-GO, and GICW.

65.   If LNA [Lafarge] is held liable unto plaintiffs, which LNA specifically denies, said liability arises out of the breach of duties of the Dock

---

[13] See, Lafarge Third-Party Complaints in: Benoit (Prayer 4)[No. 05-4419 Rec. Doc. No. 597]; Perry (Prayer 4)[No. 05-4419 Rec. Doc. No. 391]; Boutte (Prayer 4)[No. 05-4419 Rec. Doc. No. 203].

Board, and LNA is therefore entitled to indemnity, recovery over, and/or contribution from the Dock Board in the full amount of any liability that LNA may occur herein, together with interest, costs, and attorney's fees.

\*   \*   \*

### For a Second Cause of Action Against Both the Dock Board and the SLFPA-East

[Specious allegations of fault or neglect omitted]

\*   \*   \*

78.  If the Court should find LNA [Lafarge] liable unto plaintiffs, which LNA specifically denies, said liability arises out of the breach of duties of the Dock Board and/or Orleans Levee District (now SLFPA- East), and LNA is therefore entitled to indemnity, recovery over, and/or contribution from the Dock Board and the SLFPA-East, in the full amount of any liability that LNA may incur herein, together with interest, costs, and attorney's fees.

\*   \*   \*

WHEREFORE, Lafarge North America, Inc. prays for the following relief:

\*   \*   \*

(3)  If plaintiffs are entitled to judgment, said judgment be solely against third-party defendants the United States of America, the Board of Commissioners of the Port of New Orleans, and/or the Southeast Louisiana Flood Protection Authority- East, and not against LNA;

(4)  If LNA should be found liable unto plaintiffs, then LNA be granted indemnity, recovery over, and/or contribution against third-party defendants the United States of America, the Board of Commissioners of the Port of New Orleans, and/or the Southeast Louisiana Flood Protection Authority- East, in the full amount of said liability, together with interest, expenses, costs, and attorneys' fees incurred in the defense of this action....

- 17 -

See, Lafarge Answer to Sixth Supplemental and Amended Complaint and Third-Party

Complaint in Mumford at ¶¶ 16, 64, 65, 78, and Prayers (3) and (4)[No. 05-4182 Rec.

Doc. No. 9032].

       As explained above, in order to validly implead a third-party defendant under

Rule 14(a), Lafarge "must allege facts sufficient to establish the derivative or secondary

liability of the proposed third-party defendant." See, Barab, 98 F.R.D. at 456. As shown

above, however, Lafarge simply disclaims any and all liability and alleges that the

Plaintiffs' damages were caused by the negligence of the Dock Board and the other

third-party defendants. This, Lafarge cannot do under FRCP 14(a):

> In federal practice, … impleader of a third party because she is directly
> liable to the plaintiff in the original action is forbidden. Accordingly,
> impleader is not suitable when the defendant believes that someone other
> than himself is responsible for the breach of legal duty giving rise to
> plaintiff's claim. A defendant sued for negligence, for example, cannot
> implead a third party on the theory that that person's negligence was
> totally responsible for plaintiff's injury. When a third party's conduct
> furnishes a complete defense against the defendant's liability, the
> defendant may raise that conduct defensively in the answer but may not
> use it as a foundation for impleader.

See, Friedenthal, Kane & Miller, Civil Procedure §6.9 (2nd ed. 1993). According to one

federal judge:

> Not too infrequently, … the courts are confronted with a confusion of
> thought on the part of some members of the bar. Some proposed third-
> party complaints allege that the defendant is not liable to the plaintiff, but
> that if anyone is, it is the third-party defendant. Obviously, a third-party
> complaint does not lie under such circumstances. Such facts may be
> shown by the original defendant under his general denial. A third-party
> complaint may be maintained only in cases in which the third-party
> defendant would be liable secondarily to the original defendant in the
> event that the latter is held liable to the plaintiff.

- 18 -

See, Entry of Additional Parties in a Civil Action:  Intervention and Third-Party Practice,

31 F.R.D. 101, 106 (Holtzoff, J.)(D.D.C. 1962).   Moreover:

> Courts have stringently followed the rule that a third party complaint may
> not set forth a claim of the third party defendant's liability to the plaintiff.  It
> must set forth a claim of *secondary* liability such that, if the third party
> plaintiff is found liable, the third party defendant will be liable to him/her
> under a theory of indemnification, contribution, or some other theory of
> derivative liability recognized by the relevant substantive law.  Any third
> party complaint which does not … meet this test is not proper under Rule
> 14 and thus falls outside of this court's ancillary jurisdiction.  A theory that
> another party is the correct defendant is not appropriate for a third party
> complaint.
>
> A defendant sued for negligence, for example, cannot implead a
> third party whose negligence was totally responsible for plaintiff's injury.
> When a third party's conduct furnishes a complete defense against the
> defendant's liability, the defendant may raise that conduct defensively in
> his answer but may not use it as a foundation for impleader.

See, Toberman v. Copas, 800 F.Supp. 1239, 1242 (M.D.Pa. 1992).   Finally, "a

defendant cannot use impleader merely to suggest new targets for the plaintiff."  See,

Toberman, 800 F.Supp. at 1242 n. 3.

Lafarge's Third-Party Complaints violate all of these general rules.  For example,

Lafarge has not alleged that if the barge crashed into the wall and caused Plaintiffs'

damages, then the Dock Board is somehow liable to Lafarge for the Plaintiffs' claims

against Lafarge.  Instead, Lafarge alleges just the opposite— that the Barge neither

crashed into the wall nor caused any of the Plaintiffs' damages:

> [B]arge ING 4727 broke free from her moorings and was drawn through
> one of four pre-existing breaches in the walls of the IHNC. The barge ING
> 4727 did not cause that breach or any other breach in those structures;

nor did it cause any of the injuries or damages complained of by the plaintiffs in this action.[14]

In fact, Lafarge's contention that the Barge did not crash into the wall and that the plaintiffs' damages were caused by the negligence of others, if true, would be a total defense to the Plaintiffs' claims. Such a defense, however, does not provide a proper foundation for third-party impleader under Rule 14(a):

> In seeking indemnity the defendants and third party plaintiffs are not attempting to bring in one who may be secondarily liable to them in event of their own liability, but are attempting to cast all fault for the accident upon the third party defendants. This they cannot do since rule 14(a) operates only where the original defendants seek to establish secondary liability of a third party in the event that he himself is held liable.

See, Schnappauf v. Marra, 285 F.Supp. 917, 918 (D.C.N.D. 1968). Moreover, by alleging that the Plaintiffs' damages were caused by the Dock Board's negligence, Lafarge has not established that the liability of the Dock Board is somehow derivative of or secondary to Lafarge's liability to Plaintiffs. See, Kohl's Department Store, Inc. v. Target Stores, Inc., 214 F.R.D. 406, 413 (E.D.Va. 2003). Rather, such allegations show that the Dock Board's potential liability would be independent of any possible liability of Lafarge. In other words, Lafarge's Third-Party Complaints basically state that the Dock Board is liable to Lafarge because the Dock Board is responsible for the Plaintiffs' alleged damages. This is nothing more than the "it was him, not me" theory, which is wholly improper under Rule 14(a), and must respectfully be rejected:

---

[14] See, Lafarge Third-Party Complaints in: Benoit at Article XV [No. 05-4419 Rec. Doc. No. 597]; Perry at Article XV [No. 05-4419 Rec. Doc. No. 391]; Boutte at Article XIV [No. 05-4419 Rec. Doc. No. 203]; Lagarde at Article XV [No. 05-4419 Rec. Doc. No. 333]; Mumford at ¶ 16 [No. 05-4182 Rec. Doc. No. 9032].

- 20 -

[A] third party claim is not appropriate where the defendant and putative third party plaintiff says, in effect, "It was him, not me." Such a claim is viable only where a proposed third party plaintiff says, in effect, "If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part (one-half, if a joint tortfeasor) of anything I must pay plaintiff." Legum & Norman's claim against Brisk is a "him, not me" situation and therefore must fail.

See, Watergate Landmark Condominium Unit Owners' Association v. Wiss, Janey, Elstner Associates, Inc., 117 F.R.D. 576, 578 (E.D.Va. 1987).

Given the foregoing, because Lafarge has failed to establish the secondary or derivative nature of the Dock Board's liability to Lafarge if Plaintiffs recover against Lafarge, Lafarge's Third-Party Complaints against the Dock Board necessarily fail as a matter of law under Rule 14(a), and must respectfully be dismissed.

## 3.   In any event, Lafarge's claims against the Dock Board lack merit under Louisiana law or General Maritime Law.

Finally, if Lafarge's impleader of the Dock Board is found to comply with Rule 14(a), which is specifically denied, then we must determine whether Lafarge's Third-Party Complaints state a valid cause of action against the Dock Board. As an initial observation, Lafarge claims that the Plaintiffs' damages were caused in part by the Dock Board's alleged neglect in maintaining and inspecting "the IHNC and its respective levee, retaining wall (including I-wall), and related systems and components."[15] This Honorable Court, however, has previously held that the Dock Board has no such duties with regard to levee maintenance and flood control, see, Order and Reasons at p. 2-3

---

[15] See, Lafarge Third-Party Complaints in: Benoit (Article XLIX)[No. 05-4419 Rec. Doc. No. 597]; Perry (Article XLVIII)[No. 05-4419 Rec. Doc. No. 391]; Boutte (Article XXVIII)[No. 05-4419 Rec. Doc. No. 203]; Lagarde (Article XLVIII)[No. 05-4419 Rec. Doc. No. 333].

(No. 05-4182 Rec. Doc. No. 8389), and, therefore, cannot be held liable to Lafarge for any such alleged violations.   Nevertheless, Lafarge labels its claims against the Dock Board as being ones for indemnity and/or contribution.  The U.S. Fifth Circuit has held that "the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party."  See, Marathon Pipe Line Company v. Drilling Rig Rowan/Odessa, 761 F.2d 229, 235 (5th Cir. 1985).  For purposes of this motion, it appears that either Louisiana law or general maritime law could potentially govern Lafarge's claims against the Dock Board.  It is unnecessary to make a specific choice of law because Lafarge's claims fail under either body of law.

To the extent that Louisiana law governs Lafarge's third-party claims against the Dock Board, there is no longer a right of contribution in Louisiana when tortfeasors are not solidarily liable.  See, La. C.C. Art. 2324.  Since 1996, solidary liability in Louisiana is limited to situations where an intentional tort has been jointly committed:

> [n]oncontractual solidary liability was abolished in 1996, except as to those tortfeasors who conspire to cause intentional or willful harm.

See, Gardes Directional Drilling, Inc. v. Bennett, 787 So.2d 1201, 1206 (La.App.3Cir. 2001).  According to the Louisiana Supreme Court:

> The 1996 amended article [La. C.C. Art. 2324] revoked solidarity for non-conspiratorial acts and expressed defendant's liability instead as a joint and divisible obligation.  A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person.  That shift from solidary liability to joint and several obligation altered the existing rule.

See, Aucoin v. State Department of Transportation and Development, 712 So.2d 62, 67 (La. 1998).  Lafarge has not alleged that the Dock Board conspired with it to commit an

- 22 -

intentional or willful act. Thus, contribution is not available to Lafarge. Also, Lafarge can only be held liable to Plaintiffs for its own degree of fault and cannot be held liable for the fault of others. See, La. C.C. Art. 2324(B). As such, there is no longer a need for non-contractual indemnity under Louisiana law, because a defendant that is found to be zero percent at fault will not be liable to the plaintiffs for anything. Accordingly, Lafarge's third-party claims wholly lack merit under Louisiana law.

Turning to general maritime law, although contribution between joint tortfeasors is generally allowed, any such contribution "rests upon a finding of concurrent fault." See, Cooper Stevedoring Company, Inc. v. Fritz Kopke, Inc., 417 U.S. 106, 113, 94 S.Ct. 2174, 2178-79 (1974). Despite Lafarge's conclusory and "talismanic characterization of its claims," see, Kohl's Department Stores, Inc., 214 F.R.D. at 413, as being for "contribution," Lafarge does not allege that the Dock Board stands in a joint tortfeasor relationship with Lafarge. For example, there are no allegations that the concurrent fault of the Dock Board and Lafarge caused the Plaintiffs' damages. Nor are there any allegations that the Dock Board's negligence combined with Lafarge's negligence to cause the barge to break free from its moorings and crash through the wall. On the contrary, Lafarge's "it's him, not me" theory is wholly averse to a finding that the Dock Board and Lafarge are joint tortfeasors. In any event, because Lafarge denies all liability, and seeks to recover from the Dock Board the "full amount" of any liability Lafarge may have to Plaintiffs, Lafarge's claim for full reimbursement is not even one for contribution, but rather is one for indemnity. See, Freeport McMoran, Inc. v. Energy Catering Services, Inc., 35 F.3d 1008, 1012 n. 3 (5th Cir. 1994). Lafarge,

however, similarly fails to assert any allegations to support a claim for indemnity.  In this regard, the U.S. Fifth Circuit recognizes only three theories of indemnity under general maritime law, none of which are present:

> Only a handful of viable indemnity theories remain.  This Court has determined, for instance, that a vicariously liable or non-negligent tortfeasor is entitled to indemnity from a co-debtor guilty of actual fault. ... In Marathon Pipe Line, this Court held that the user of a defective product which injured the plaintiff was entitled to recover indemnity from the manufacturer of the product. ...  [T]he term "non-negligent tortfeasor," as used in Marathon Pipe Line, applies only to those defendants on which the law imposes responsibility even though they committed no negligent acts. ... Another remaining theory of indemnity is the Ryan doctrine.  In Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), a longshoreman was injured when he attempted to shift cargo that a stevedore had improperly stowed.  The longshoreman sued the vessel owner.  The Supreme Court concluded that the vessel could recover indemnity from the stevedore because the stevedore breached a warranty of workmanlike performance implied in the contract between the vessel and the stevedore.  The scope of Ryan indemnity, however, is narrow.  The Fifth Circuit has been reluctant to expand the Ryan doctrine beyond its facts. ...
>
> A final available theory of indemnity under general maritime law is contractual indemnity.

See, Hardy v. Gulf Oil Corporation, 949 F.2d 826, 833-35 (5th Cir. 1992).

To recover for indemnity under Marathon Pipe Line, Lafarge must show that it could be held vicariously liable to the Plaintiffs without fault.  Lafarge alleges no facts to support such a conclusion.  Moreover, the Ryan doctrine of indemnity is similarly inapplicable.  The basic facts of Ryan— vessel owner held liable without fault for damages caused by an unseaworthy condition aboard the vessel created by a stevedore— are obviously not present in this action.  Finally, Lafarge alleges no basis for contractual indemnity against the Dock Board and none exists.

Based upon the foregoing reasons, Lafarge's claims against the Dock Board also fail under general maritime law.

### Conclusion

In this motion, the Dock Board has come forward and established that the pleadings show that there are no genuine issues of material fact and that the Dock Board is entitled to judgment as a matter of law. <u>See</u>, Fed.R.Civ.P. 56(c). For all of the reasons set forth above, the Dock Board respectfully requests that this Honorable Court grant its Motion for Summary Judgment and dismiss Lafarge's Third-Party Complaints against the Dock Board, with prejudice, each party to bear their own costs.

Respectfully submitted,

DAIGLE FISSE & KESSENICH, PLC

BY:   /s/ Kirk N. Aurandt
      J. FREDRICK KESSENICH (7354)
      JONATHAN H. SANDOZ (23928)
      MICHAEL W. MCMAHON (23987)
      JON A. VAN STEENIS (27122)
      KIRK N. AURANDT (25336)
      P. O. Box 5350
      Covington, Louisiana 70434-5350
      Telephone: 985/871-0800
      Facsimile:   985/871-0899
      Attorneys for Board of Commissioners
      of the Port of New Orleans

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by the Court's ECF system, this 29th day of August 2008.

/s/ Kirk N. Aurandt
KIRK N. AURANDT