**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NUMBER: 05-4182 "K"(2) |
| | * | |
| | * | JUDGE DUVAL |
| | * | |
| PERTAINS TO: MRGO, Robinson | * | MAG. WILKINSON |
| (No. 06-2268) | * | |

**********************************************************************************

**SUR REPLY OF THE MRGO PSLC, AS *AMICUS CURIAE*, TO THE REPLY**

**MEMORANDUM OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS**

**COUNTS TWO AND THREE OF THE AMENDED COMPLAINT**

**NOW INTO COURT**, through undersigned counsel, comes the MRGO PSLC, as

*amicus curiae*, which files its Sur Reply to the Reply Memorandum of the United States of

America's Motion to Dismiss Counts Two and Three of the Amended Complaint, as it relates to

the discretionary function exception to the Federal Tort Claims Act ("FTCA").

**I.**

**THE UNITED STATES HAS MISINTERPRETED THE ALLEGATIONS AGAINST IT**

Throughout it's argument regarding the discretionary function exception, the United

States would have the Court believe that the entirety of the allegations lodged against it stem

merely from the "negligent supervision" of its contractor, Washington Group International, Inc.

("WGI").  However, the *Robinson* Amended Complaint sets forth detailed allegations of the U.S.

Army Corps of Engineers ("Army Corps"or "Corps") *own negligent acts*, coupled with

additional negligent acts in administering the construction contract at the East Bank Industrial

Area ("EBIA").  The *Robinson* Amended Complaint sets forth the following specific allegations:

1.    *Defendant Army Corps knew or should have known* that the Washington Group's work was causing, and caused, damage to the levee and/or flood wall structures adjacent to the IHNC/Industrial Canal, but *was negligent because it did nothing to prevent the damage or remediate damage once it was discovered*.

2.    *The Army Corps negligently failed to insure* that the Washington Group followed and complied with the Army Corps guidelines, specifications, policies, regulations or practices and/or professionally acceptable engineering and construction practices while performing its work.

3.    *Defendant Army Corps negligently failed to notice* the damage caused by the Washington Group's work.

4.    *The Army Corps negligently failed to adequately train, inform, or caution the Washington Group* about the potential damage to the levee and/or flood wall system that could result from conducting its work in an improper, unsafe or haphazard manner, or in any manner that failed to comport or comply with Army Corps guidelines, specifications, policies, regulations or practices and/or in any manner that failed to comply with professionally acceptable engineering and construction practices.

5.    *The Army Corps negligently failed to adequately evaluate* the potential damage to, and the damage, actually inflicted on, the levee and/or flood wall structure caused by the Washington Group.

6.    *The Army Corps negligently failed to correct, repair, or in any way remediate* the damage caused by the Washington Group to the levee and/or flood wall system.

7.    *The Army Corps negligently failed to discharge its duty* to maintain the strength and integrity of the levee and/ or flood wall system of the IHNC/Industrial Canal.

8.    *The Army Corps negligently allowed* the work of the Washington group to substantially degrade the strength, integrity and performance of the levee and/or flood wall system.[1]

Each of these allegations not only sets forth specific negligent conduct by the Corps in failing to fulfill its own mandatory "in house" engineering obligations for this construction project, but also for its negligent managerial acts during the Corps's interaction with WGI.

---

[1] See Record Document 13527-2, ¶120 & 121. (Emphasis added).

Of particular importance to the Court's evaluation of the applicability of the discretionary function exception is a thorough review of the nature of the contract between the Corps and WGI, as well as the institutional failures by each during the progress of the project. The MRGO PSLC has previously set forth the Corps defalcations in administering the EBIA project in its Administrative Master Complaint,[2] as well as providing the Court with the basic facts of the project in its Amicus Curiae Opposition, to allow the Court to understand the import of the mandatory guidelines that the Corps was obligated to follow. The United States has failed to address these matters in its Reply Brief.

As set forth in the Amicus Curiae Opposition, the Corps failed to follow specific mandatory regulations in administering the construction project. By the Corps's own testimony in the recent continuation of the Rule 30(b)(6) deposition on August 21st, 2008, these engineering regulations convey mandatory policy requirements for the management of engineering functions.[3] The failure of the United States to grasp the import of this assertion is shown by its reliance on specific testimony of Alvin Clouatre, the Corps's Quality Assurance Officer, in its Reply Memorandum. Neither the MRGO PSLC nor the *Robinson* Plaintiffs have taken issue with the Corps's procedure to assure that the "public fisc is not milked." To the contrary, the allegations by Plaintiffs are that the Corps failed to meet the mandatory guidelines established to insure that collateral damage greater than what Mr. Clouatre could appreciate

---

[2] Previously, the MRGO PSLC asserted in its Master Complaint that the negligence of the Corps (including allowing the work to proceed; failing to caution WGI about potential damage to the floodwall system by its work; failing to monitor /and/or inspect the work of WGI; failing to adequately evaluate the potential damage to the flood wall structure by WGI; failing to correct damage caused by the actions of WGI; failing to discharge its duty to maintain the integrity of the flood wall system) resulted in underseepage-induced erosion to the flood wall that caused or contributed to its catastrophic failure. Master Complaint, ¶ 47.

[3] See Exhibit 1 - (Greishaber (Vol. II), pg. 64, l.6-11).

would occur.[4]  The failure of the Corps to comply with these mandatory regulations precludes

the benefit of immunity it seeks.

In each of the cases cited by the United States in its Reply Memorandum as providing

factual guidance, the conduct reviewed by the Court was related to the direct scope of

supervision of the contractor, not the administration of an entire construction contract.

1.    Guile v. U.S.,[5] (Army's decision to hire, supervise, and degree of
      oversight were "discretionary");

2.    Kirchmann v. United States,[6] (monitoring of a contractor's work
      where no statute or regulation controls is a question of judgment);

3.    Cohen v. U.S.,[7] (Bureau of Prison's decisions concerning
      classification of prisoners and what institution to place them in
      involves an element of judgment or choice);

4.    Terbush v. U.S.,[8] (management policies implicate Park Service's
      mandate to balance access with conservation);

5.    Garcia v. U.S. Air Force,[9] ("field guide"- whose purpose "is to
      provide ready reference for establishing and conducting a roof
      management program for steep-sloped roofing systems - does not
      prescribe a mandatory course of conduct").

Each of these cases differs starkly from the present case because the complained of

conduct was not governed by mandatory regulations.  In the *Robinson* case, however, the Corps

was obligated both to perform certain tasks to meet the necessary criteria of the construction

---

[4] See MRGO PSLC Amicus Curiae Opposition, pg. 18-19.

[5] 422 F.3d 221 (C.A.5 (Tex.),2005).

[6] 8 F.3d 1273, 1276-77 (8th Cir.1993).

[7] 151 F.3d 1338, (C.A.11 (Ga.),1998).

[8] 516 F.3d 1125 (C.A.9 (Cal.), 2008).

[9] 533 F.3d 1170 (C.A.10 (N.M.),2008).

project, *AND* to meet additional criteria in administering the contract.  The failure of the Corps

to meet either one of these essential obligations allowed institutional errors by both WGI and the

Corps to propagate unchecked; ultimately contributing to the catastrophic failure of the flood

walls adjacent to the EBIA.

Moreover, the Defendant also conveniently ignores its burden on the first prong of the

discretionary function exception to establish that "all actions . .. were **not** in contravention of the

relevant regulations and policies of the Army Corps . . . . This issue is one that must be examined

in discovery. . . . Did the Corps violate any of its own engineering policies when it acted?" In re

Katrina Canal Breaches Consolidated Litigation,[10]; *see also* Griffin v. United States,[11] (A

government agency had no discretion "to disregard the mandatory regulatory command," and

violation of a nondiscretionary command removed the action from the scope of the statutory

exception.").  Plaintiffs maintain that here the Corps violated clear, mandatory engineering

standards with regard to the EBIA activities.  *See* Oppostion, pp. 16-21.  If proven, this would

defeat any immunity at the outset because a set of Army Corps standards, guidelines and

regulatons "specifically prescribes a course of action for an employee to follow…the employee

has no rightful option but to adhere to the directive."  Berkovitz v. United States[12]; *see also* Bean

Horizon Corp. v. Tennessee Gas Pipeline Co..[13]

Furthermore, at the pleading stage and in the face of  Plaintiffs' detailed factual

allegations, a motion to dismiss on this immunity ground must be denied. As noted in the

---

[10] 471 F.Supp.2d 684, 699.

[11]  500 F.2d 1059, 1068-69 (3rd Cir. 1974).

[12]  486 U.S. 531, 536 (1988).

[13] 1998 WL 113935, (E.D. La. 1998), *citing* United States v. Gaubert, 499 U.S. 315, 322 (1991).

Opposition filed by the *Robinson* Plaintiffs, resolution of the discretionary function exception at the motion to dismiss stage is, as this Court ruled in denying the Government's first motion to dismiss, procedurally inappropriate, particularly in light of the disputed facts developed without even the benefit of discovery.  Opposition, p. 14.  The Court should deny this motion for the same reasons for its denial of the Government's first motion to dismiss: "The MRGO is not a simple, one-time isolated project  . . The Court cannot accept on the record before it that all actions done by the Corps were based on policy determinations." *See* In re Katrina Canal Breaches Consolidated Litigation; Oppostion at pp. 22-23.

## II.

### ONLY "SIMPLE" ENGINEERING ANALYSIS WAS NEEDED BY THE CORP

Only if the Court finds that the Corps had discretion to ignore the specific guidelines established for the management of engineering functions should the Court concern itself with whether the Corps's decisions were based on considerations of public policy.  Not surprisingly, the United States urges the Court to so find, but curiously relies upon the benchmark case regarding governmental contractor immunity to convince the Court that the Corps's actions were justified.

In Boyle v. United Technologies Corp.,[14] a widow brought suit against an independent contractor, not the United States, alleging that the defective design of an emergency escape hatch on a Sikorsky helicopter led to the death of her husband because the escape hatch opened out instead of in, preventing him from exiting the aircraft after it crashed.  The United States Supreme Court found that more than "merely engineering analysis" was at issue; there was a

---

[14]   487 U.S. 500, 108 S.Ct. 2510 (U.S.,1988)

specific balancing of military considerations to achieve greater combat effectiveness that had to be reviewed.[15]

No such analysis is involved in the present case.  Here, the Court is not analyzing decisions regarding the combat effectiveness of military aircraft.  By the Corps's own testimony, we are dealing with the evaluation of a "fairly simplistic" job. "The only way you could endanger the flood wall system is by some form of inappropriate excavation or inappropriate backfill." [16]  These "fairly simplistic" parameters do not require the balancing of technical, military or social considerations, just simple engineering analysis.

Under longstanding case law, engineering and safety matters do not implicate the kinds of discretionary policy choices at issue in the second prong of the discretionary function exception to the waiver of sovereign immunity in the Federal Tort Claims Act.  *See* In re Katrina Canal Breaches Consolidated Litigation,[17] (while the decision whether to embark on a course of action such as  whether to adopt safety precautions may involve a discretionary policy choice, the manner in which that decision is implemented is not a policy consideration); *see also* Bear Medicine v. United States,[18] ("Safety  measures, once undertaken, cannot be shortchanged in the name of policy.").

However, even simple jobs can have substantial ramifications, and a trickle of water can carve away mountains.  In the present case, geotechnical analysis was required to understand the

---

[15] Id., at U.S. 511, S.Ct. 2518.

[16] See Exhibit 1- (Greishaber (Vol. II), pg. 14-15, l.18-11).

[17] 471 F.Supp.2d 684, 699-705.

[18] 241 F.3d 1208, 1215 (9th Cir. 2001).

effects of groundwater migration and under seepage potential of the flood wall. The Corps failed

to ensure that either it or its contractor performed this analysis.  This neglect was the undoing of

the neighborhoods the flood wall was designed to protect.  There was no balancing of technical,

military or social considerations undertaken by the Corps; and unfortunately for the residents of

the Lower Ninth Ward and St. Bernard Parish, there wasn't even a simple relevant geotechnical

engineering analysis done.

Finally, resolution of the discretionary function exception is premature.  The Court will

be addressing this issue in later in the year.  As matter of judicial economy and in the interest of

comprehensive briefing and a full record, the motion on this issue should be denied without

prejudice to renewal at a later time.

## III.

## CONCLUSION

For the reasons set forth above, the Court should deny the United States of America's

Motion to Dismiss Counts Two and Three of the Amended Complaint as it relates to the

discretionary function exception raised in the United States's motion.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

　　/s/  Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
PLAINTIFFS LIAISON COUNSEL
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

MR-GO PLAINTIFFS SUB-GROUP
LITIGATION COMMITTEE

s/ James Parkerson Roy
JAMES PARKERSON ROY
MR-GO PSLC Liaison Counsel
LA Bar Roll Number: 11511
Domengeaux Wright Roy & Edwards LLC
Post Office Box 3668
Lafayette, Louisiana 70502
Telephone: (337) 593-4190 or (337) 233-3033
Email: jimr@wrightroy.com

for

MR-GO PLAINTIFFS SUB GROUP
LITIGATION COMMITTEE

Jonathan Andry (The Andry Law Firm,
   New Orleans, Louisiana)
Clay Mitchell (Levin, Papantonio, et al.,
   Pensacola, Florida)
Pierce O'Donnell (O'Donnell & Associates,
   Los Angeles, California)
James Parkerson Roy (Domengeaux, Wright, et al.,
   Lafayette, Louisiana)

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing upon all counsel of

record by placing same in the United States mail, properly addressed and with first-class postage,

or by facsimile or other electronic transmission this 9th day of September, 2008.

/s/ Joseph M. Bruno

Joseph M. Bruno