UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § | CIVIL ACTION NO. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| PERTAINS TO: MRGO | § § § § § § § | |

**DEFENDANT WASHINGTON GROUP INTERNATIONAL'S OPPOSITION TO MOTION TO INTERVENE IN MRGO MASTER CONSOLIDATED CLASS ACTION**

Defendant Washington Group International, Inc. ("WGII") respectfully opposes Entergy New Orleans, Inc., Entergy Louisiana, L.L.C., Entergy Services, Inc., Entergy Corp., and Hartford Steam Boiler Inspection and Insurance Company's (collectively, "Entergy") motion to intervene in the MRGO cases.

Filed more than a year after the deadline for class certification discovery and almost a year-and-a-half after the Court declared the deadline to amend pleadings lapsed, Entergy's eleventh-hour motion to intervene should be denied as untimely, unnecessary, unhelpful, and even prejudicial to the other parties.[1]  Indeed, given the untimely and futile nature of Entergy's motion, one is left to wonder why, at this late date, Entergy is even making such an effort.  The only plausible answer is that Entergy seeks to leapfrog existing individual cases, to the head of the line, for potential individual case trial in July 2009.

---

[1] As an aside, with its untimely motion to intervene, Entergy inadvertently acknowledges what WGII and other Defendants have maintained from the outset of this litigation: that the members of the proposed class all have individual and varying interests, turning on individualized facts, that make class certification improper.

And, regardless of its motivations, Entergy is clearly asking the Court to ignore the interests of the putative class and putative class representatives by granting it the best of two worlds: named plaintiff status and whatever other benefits might accompany class action litigation, but without responsibility to the putative class.  The approach Entergy proposes recalls the practice of "one-way intervention" that Congress disavowed more than forty years ago, *see Premier Elec. Const. Co. v. National Elec. Contractors Ass'n, Inc.*, 814 F.2d 358, 362 (7th Cir. 1987) (discussing 1966 revisions to Federal Rules), and should be rejected outright.

**ARGUMENT**

The Fifth Circuit has stated that Fed. R. Civ. P. Rule 24(b)(2) provides for permissive intervention[2] only "when (1) *timely* application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n. 2 (5th Cir. 1989) (emphasis added).  Even where those requirements are satisfied, the decision whether to allow permissive intervention is still "wholly discretionary" for the district court. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1988).  That discretion should be exercised to deny intervention where, as here, the would-be intervenor is adequately represented by the existing parties and where the intervenor's presence is unlikely to make a significant contribution to the development of the underlying factual issues. *Clements,* 884 F.2d at 189; *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984).  Entergy's proposed intervention in this case is untimely, would unduly

---

[2] Entergy does not propose intervention of right.

delay the litigation and prejudice WGII and other parties, is unnecessary to protect any of Entergy's rights, and would serve only to further complicate this litigation.

### A.   Entergy's Motion Is Untimely.

"Parties having knowledge of litigation which may affect their interest sit idle at their peril." *Narragansett Indian Tribe v. RIBO, Inc.*, 868 F.2d 5, 7 (1st Cir. 1989). Thus, "[t]he threshold consideration of *any* motion to intervene is timeliness." *Corley v. Jackson Police Dep't*, 755 F.2d 1207, 1209 (5th Cir. 1985) (emphasis added). The timeliness of a motion to intervene with permission of the court is "determined from all the circumstances,"[3] but includes "(1) the length of time [Entergy] knew or should have known of [its] interest in the case; (2) prejudice to existing parties caused by [Entergy's] delay; [and] (3) prejudice to [Entergy] if [its] motion is denied." *Ruiz v. Estelle*, 161 F.3d 814, 827 (5th Cir. 1998); *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 167-68 (5th Cir. 1993). The Fifth Circuit has previously found that a proposed intervention in a complex litigation delayed by only seven months was untimely. *See United States v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir. 1977), *cert. denied*, 435 U.S. 914 (1978).

The list of deadlines that have already passed is telling. The deadline for written class certification discovery was July 27, 2007; the deadline for depositions of class certification fact witnesses was August 3, 2007; the deadline for expert class certification depositions was September 17, 2007. And, nearly eighteen months ago, on March 29, 2007, this Court declared that "the deadline for amending pleadings is now deemed lapsed, and only answers and responsive motions may now be filed without leave of Court." CMO No. 4 Section (II)(A). Yet, now at the eleventh hour, Entergy comes before the Court seeking a novel style of intervention

---

[3] *See Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001); *United States v. Marion County Sch. Dist.*, 590 F.2d 146, 148 (5th Cir. 1979).

944527v.1

that would allow it to divorce itself from the other putative class members to the extent that it could conceivably benefit it, while still maintaining any perceived strategic advantages that members of a proposed class enjoy during litigation.  In light of the factors that this Court considers in assessing the motion, it is clear that the motion to intervene is untimely.

        1.      <u>Entergy Has Known Of Its Interest In This Case For More Than Three Years</u>.

Entergy alleges damages caused when New Orleans flooded on or about August 29, 2005, more than three years ago, but only now does it seek to intervene.  In fact, given this latest maneuver, its claims would be time-barred if it were allowed to intervene for the purpose of asserting claims against a new party, like WGII.  Entergy had one year after the event, that is by August 29, 2006, by which to file suit against WGII.  In fact, Entergy filed suit against the United States on August 28, 2007, and since that time has been embraced in the umbrella created by the various case management orders applicable in this case. [*Entergy New Orleans, Inc. et al. vs. The United States of America, 07-4608*]  Ordinarily, putative class members enjoy the prescription tolling benefit that accrues so long as they have not affirmatively rejected the class action by filing their own individual lawsuits or affirmatively opting out of the class.  *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).  But, according to the majority of the Circuits that have considered the issue, where an unnamed plaintiff—as Entergy acknowledges itself to be—chooses to file its own individual action before a class-certification decision, it forfeits the tolling benefit [if indeed any applies here] that the pending class action provides to those who await the Court's determination.  *See In re Hanford Nuclear Reservation Litigation*, 479 F.3d 1005, 1026-27 (9th Cir. 2007); *Wyser Pratte Mgmt. Co., Inc. v. Telxon*, 413 F.3d 553, 568-69 (6th Cir. 2005); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983); *Wachovia Bank and Trust Co. N.A. v. Nat'l Student Marketing Corp.*, 650 F.2d 342 , 346 n. 7 (D.C. Cir. 1981).  While this Court  previously has declined to join the circuits denying tolling in

these circumstances, the Fifth Circuit has not yet considered the question and WGII respectfully raises the argument now. Permitting an untimely intervention to test this issue at this point would lead only to an unnecessary interlocutory appeal[4] or, at a minimum, to an increased risk of a reversal of any final judgment on account of further complication of an already hopelessly complex proceeding. And, regardless of whether Entergy's claims would be time-barred, the fact remains that it has known of its interest in this case for more than three years.

      2.      <u>Entergy's Delayed Intervention Would Prejudice Other Parties</u>.

The second factor that the Court considers in determining if a motion is untimely also weighs against Entergy. In fact, this proposed intervention would be a significant expansion, in effect an amendment, to the MRGO Master Class Complaint. "An amendment that a party raises late in the pre-trial life of a lawsuit has a significant tendency to disrupt trial proceedings." *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992); *Daves v. Payless Cashways Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981) ("Considering a motion on the eve of trial after discovery and after an unexplained nineteen-month delay, the trial court acted within its discretion in refusing to allow appellant to amend her complaint."). In effect, Entergy has sat idle, as to any claims it might think it has as to WGII, for three years as this litigation developed. Now, at the last minute, it seeks to inject additional complexity into an already overly-complicated case, instead of attempting what should clearly fail, to add WGII as a party to its already existing case against the United States. This putative class action is not a simple one-on-one, plaintiff versus defendant action that can be turned and maneuvered like a speed boat on still water, but rather a large putative class action—that already presents a potentially insurmountable hosts of a case management challenges—more akin to an oil tanker on heavy sea. Stopping this litigation,

---

[4] The Fifth Circuit has jurisdiction to review a permissive intervention order for abuse of discretion. *Woolen v. Surtran Taxicabs, Inc.*, 684 F.2d 324, 330-31 (5th Cir. 1982).

turning it around and allowing Entergy and potentially other unnamed class members to add new claims, serves no one's legitimate interest.

Despite Entergy's assertion that its "claims are virtually identical to those asserted in the [putative] class action," the claims are in fact far from the same. In addition to the difference in the identity of the Defendants, the claim on the merits is different in a number of ways that would add yet another layer of argument that jurors would be required to navigate in the event of class certification. *See Castano v. American Tobacco Co.,* 84 F.3d 734, 750 (5th Cir. 1996). First, despite Entergy's claims of "sameness," the underlying geography of the claims is entirely different. Rather than confining the litigation to the Lower 9th and St. Bernard Parishes like the MRGO putative class action, Entergy seek to impose liability regarding a larger area that would also include all of Plaquemines Parish. *See* Complaint in Intervention at 1. Second, unlike the putative class,[5] Entergy seeks recovery of business losses that present different factual and legal constraints that would have to be monitored and accounted for throughout the proceedings.

While this proposed intervention underscores how ill-suited this case is for class action treatment already, the unexpected addition of Entergy as a named plaintiff would do nothing to alleviate the already staggering complexity of the case.

    3.    <u>Entergy Would Not Be Prejudiced By A Denial Of Its Proposed Intervention</u>.

Entergy essentially waives any argument as to the third factor—whether it would be prejudiced by a denial of its proposed intervention—when it affirmatively states that it does "not challenge the adequacy of representation of the class by existing parties or Plaintiffs' class counsel." Entergy's Mem. in Support of Motion to Intervene ("Entergy Memorandum") at 2. In

---

[5] Class counsel, despite the broad class definition, have made it clear in their class certification economic expert's report [Rec. Doc. 7992-4] and deposition [Rec. Doc. 7992-6] that they do not seek a class that embraces business losses. The Court directly questioned Plaintiffs' counsel as to evidence of businesses losses and counsel stated "loss of revenue or loss of income associated with a property would not, as I appreciate it, be the subject of a modeling." *See* attached Ex. A, Trans. of Oct. 18, 2007, pp.14-26.

other words, the proposed intervention is, by Entergy's own admission, unnecessary. This is after it effectively opted out of this class action by filing its own case in 07-4608 on August 28, 2007, a case Entergy has allowed to lay dormant, without even attempting to amend its existing case to add WGII. Obviously to do so would likely be untimely. In any case the existence of its pending case prevents any colorable argument that Entergy would be prejudiced by the denial of its motion to intervene.

Indeed, the most compelling reason Entergy offers in support of the proposed intervention is its "desire to be represented by [its] own counsel." This motivation might surface as to any unnamed class member up to and through the trial. And, however sincere that desire may be, Entergy can hardly contend that denying intervention would create real "prejudice," particularly where it has filed its own suit, it has expressed no desire to be a class representative, and it acknowledges its own satisfaction with Plaintiffs' Putative Class Counsel. *See, e.g., Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (when parties share same ultimate objective, differences in litigation strategy do not justify intervention).

       **B.**    **The Proposed Intervention Would Prejudice Washington Group International**

The would-be intervenor must carry the burden of showing that intervention will not prejudice the adjudication of the rights of the original parties. *Kneeland*, 806 F.2d at 1289-90; *Bush v. Viterna*, 740 F.2d 350, 358-59 (5th Cir. 1984). Cognizable prejudice includes delay, unnecessary costs, and reduced control over the lawsuit. *Tasby v. Wright*, 109 F.R.D. 296, 298-99 (N.D. Tex. 1985). In particular, a court may deny intervention where allowing the party to intervene would unduly complicate the proceedings, *see Taylor Communications Group, Inc. v. Southwestern Bell Telephone Co.*, 172 F.3d 385, 389 (5th Cir. 1999), and the denial of intervention is not an abuse of discretion if there is any possibility of trial confusion. *Lipsett v.*

*United States*, 359 F.2d 956 (2d Cir. 1966). Setting aside Entergy's bald assertion that "this intervention will not unduly delay or prejudice the adjudication of the right of the original parties," it fails to even shoulder, let alone carry this burden.

As discussed above, this is already a complex case that—if certified—would require jurors to sift through a staggering number of distinct claims and parties. Even as currently proposed, it would be an enormous management burden for any court to undertake. Furthermore, the same sort of divergent interests that have prompted Entergy to step forward at this time likely also exist with regard to many other putative class members. Allowing Entergy to participate in the manner it seeks would allow one party effectively to leap ahead of those other putative class members in advancing their interests, or might encourage those other putative class members to attempt to intervene seriatim as this case moves forward. This would make the case more difficult, if not impossible, to manage and try. *See, e.g., Wyatt v. Hanan*, 170 F.R.D. 189, 194 (M.D. Ala. 1995) (recognizing that permitting all interested parties to intervene would render lawsuit "more unmanageable and unnecessarily confusing than it already is."). This would all lead to the further fracturing of a putative class that is already ill-suited for certification. *See In re Cendant Corp. Securities Lit.*, 404 F.3d 173, 202 (3d Cir. 2005) ("such a fragmented class might be unmanageable").

Permitting interventions at this time would also require the reopening of discovery to the delay and prejudice of the litigants that have already completed class discovery. During the course of discovery, WGII focused its efforts on the geographic areas, and the class certification theories implicated in the putative class litigation and the supporting expert reports, not the areas, and economic interests, that Entergy now seeks to add to this mix.

944527v.1

## C.     The Proposed Intervention Would Be Unhelpful To This Litigation

Beyond the initial requirements that the would-be intervenor must satisfy as a matter of law, the Court should also consider whether the would-be intervenor's interests are adequately represented by the existing parties in the absence of intervention, and whether the intervenor's presence is likely to make a significant contribution to the development of the underlying factual issues. *Clements,* 884 F.2d at 189.  Should these considerations weigh against intervention or be evenly balanced, the Court possesses wide discretion to deny the motion. *Kneeland*, 806 F.2d at 1289; *Mayo v. Hartford Life Ins. Co.*, 214 F.R.D. 458, 463 (S.D. Tex. 2002) (denying intervention because no reason for such action).

As noted, Entergy is quick to assert that it is adequately represented by the existing parties.  *See* Entergy Mem. at 2 ("Entergy does not challenge the adequacy of representation of the class by existing parties or plaintiffs' class counsel.").  It also is quick to disclaim any interest in strengthening the adequacy of the proposed class representation. *Id.* at 3.  And while Entergy offers bald assertions that it "will assist with the cohesive litigation of damages issues" and urges that its inclusion "will benefit all the citizens of New Orleans," it offers no concrete explanations of that alleged assistance or benefit.  Indeed, except for its "desire to be represented by [its] own counsel," Entergy cannot point to any substantive contribution that it would make to this litigation as a named plaintiff.  *See Bottoms v. Dresser Indus., Inc*., 797 F.2d 869, 872 (10th Cir. 1986) (finding no justification for intervention where interests are already addressed); *California v. Tahoe Regional Planning Agency*, 792 F.2d 775 (9th Cir. 1986) (same).

Of course, the Court may consider any evidence Entergy has, if relevant, regardless whether it is allowed to intervene as named plaintiffs.  Similarly, Entergy's counsel may enter an appearance without Entergy appearing as a named plaintiff.  FRCP 23(c)(2)(B)(iv).  However, in this circumstance in which Entergy receives full notice of the proceedings based on its individual

case, and can protect its interests as it sees fit, there is no need for Entergy's counsel to enter yet another appearance.

In short, the only conceivable, legitimate contribution that Entergy's proposed intervention would make to this class litigation is an undesirable contribution of additional complexity at a very late hour and, in this case, at the risk of a stampede of other, similarly situated plaintiffs.

## CONCLUSION

For all of the foregoing reasons, Defendant WGII respectfully requests that Entergy's motion to intervene in the MRGO cases be denied.

944527v.1

- 11 -

Dated:  September 12, 2008                          Respectfully submitted,

/s/ William D. Treeby
William D. Treeby, Bar No. 12901
Heather S. Lonian, Bar No. 29956
Stone Pigman Walther Wittmann LLC
546 Carondelet Street
New Orleans, LA 70130
Phone:  504-581-3200
Fax:  504-581-3361

Jerome R. Doak
Margaret I. Lyle
Jones Day
2727 N. Harwood Street
Dallas, Texas  75201
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

Adrian Wager-Zito
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
Phone:  202-879-3939
Fax: 202-626-1700

*Attorneys for*
*Washington Group International, Inc.*

944527v.1

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the above and foregoing Opposition to Motion to Intervene has been served upon all counsel of record through the Court's CM/ECF electronic filing system or by placing same in the United States mail, postage prepaid and properly addressed, this 12th day of September, 2008.

                                           */s/ William D. Treeby*
                                            William D. Treeby

944527v.1