## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**IN RE:   KATRINA CANAL BREACHES**
**CONSOLIDATED LITIGATION**

**CIVIL ACTION**

**NO. 05-4182**

**SECTION "K" (2)**

**PERTAINS TO: MR-GO**

---

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
### IN MR-GO MASTER CONSOLIDATED CLASS ACTION

**Entergy New Orleans, Inc., Entergy Louisiana, L.L.C., Entergy Services, Inc., Entergy Corporation,** and **Hartford Steam Boiler Inspection and Insurance Company (collectively "Applicants")**, have moved the Court under rules 24(b) and (c), and rule 23(d) of the Federal Rules of Civil Procedure for leave to intervene as plaintiffs in the MR-GO Master Consolidated Class Action in order to assert the claims set forth in their proposed Complaint in Intervention. Applicants seek through this intervention to change their status in the class action from that of unnamed plaintiffs to named plaintiffs. Plaintiffs' counsel in the Master Consolidated Class Action supports Applicants' intervention.

1

Defendants United States and Washington Group International, Inc. ("WGII") have both opposed the intervention.

Contrary to defendants' arguments, Applicants' intent in this Motion to Intervene is not mysterious or entirely self-serving. As has been made clear in Applicants' August 25, 2008 correspondence to the Court (attached as Exhibit A) and in the Motion to Intervene, Applicants' ultimate goal in this process is to have their claims considered for the Court's next round of merits trials, currently scheduled to begin in July 2009. Applicants believe that it would be beneficial for them, and also instructive to all of the parties in the MR-GO group of cases, for Entergy's claims to be tried in July 2009. WGII and the United States both assert prejudice in a conclusory fashion. However, aside from objecting to the obligation to defend an action brought by a plaintiff with viable claims throughout the geographic area, neither the Government nor WGII articulates the substance of any actual prejudice. Desire to avoid presenting a defense does not amount to prejudice sufficient to defeat permissive intervention.

As noted in Plaintiff's letter to the Court and in its pending application, because of the extensive and largely uniform nature of Entergy's losses throughout the geographic area affected by Katrina, Applicants' intervention will best preserve options for choosing a trial configuration for the July 2009 merits trials—both for the Court and for the Applicants themselves. The intervention will also benefit the class action by providing a comprehensive and cohesive damages case that will be instructive to all parties, in all affected locations including the Lower Ninth Ward impacted by WGII.

**A.   The Unique and Unsettled Procedural Status of this Case Supports Applicants' Intervention.**

The posture of the consolidated Katrina litigation, and the MR-GO subset of that litigation, presents unusual procedural issues.   As currently situated, the following factors are relevant to Applicants' desire to change their status in this class action from unnamed plaintiffs to named plaintiffs:

- Individual actions filed by Applicants, and virtually all other claimants, have been stayed since they were first filed.  No answers have been filed. Thus, no case management deadlines have begun to run as to Applicant.

- In the Master Consolidated Class Action, class certification proceedings have been continued several times; there is no hearing date currently set to decide the issue.

- The Court has indicated that it would like to have a trial of individual merits claims in July 2009.

- CMO #7 requested parties to submit proposals for a protocol for choosing trial plaintiffs by August 15, 2008.   Following a status conference with liaison counsel on August 28, 2008, the Court has requested additional submissions related to the protocol by September 24, 2008.

- In the minute entry following that status conference, the Court stated that "the decision as to which cases will actually be tried in July will be made in January of 2010.   Thus a final decision on this issue is not imminent." (Rec. Doc. 14720).  (Nonetheless, it is believed that the Court intended to write January of 2009, not 2010.)

- In the same minute entry, the Court also indicated that it is "not inclined to allow individual named class members to be used as test cases unless that particular plaintiff chooses to opt out of said class." *Id.*

Faced with this unsettled procedural status—before a protocol is established for choosing trial plaintiffs and before class certification is decided— Applicants seek to keep open all possible procedural avenues for being considered for a July 2009 merits trial of their claims.

B.  **Applicants Should be Permitted to Intervene in the Class Action: Defendants Will Suffer no Prejudice and Applicants' More Active Role will Provide a Benefit.**

### 1. Standard for Permissive Intervention

The requirements for permissive intervention are very straightforward. Rule 24(b)(1) states, "On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact." With regard to "delay or prejudice," subpart (3) of the rule states: "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Further, the rules regarding class actions specifically contemplate intervention by class members. Class members may intervene to present their claims and the court may impose conditions upon those intervenors. Fed. R. Civ. P. 23(d)(1)(B)(iii) and (C). It is even appropriate for a court to solicit or encourage intervention when such action would improve the representation of the class or otherwise benefit the case. *See* comments to Fed. R. Civ. P. 23(d)(2) at 129 (2008 Rev'd ed.) citing *Oppenheimer v. F.J. Young & Co.,* 144 F.2d 387 (2d Cir. 1944).

The primary analysis for permissive intervention thus centers upon whether or not there is a common question of law or fact, a premise not challenged by either defendant in this case, and whether the intervention will unduly delay or prejudice the resolution of the original parties' rights.[1] In this

---

[1]    WGII's argument on page 6 and footnote 5 of its opposition that by making a claim for business losses Applicants will inject a new category of damages into the case is completely misleading. As class members, Applicants have never waived a claim for business losses, nor do

matter, neither defendant has demonstrated any actual prejudice. To the contrary, Defendants have conceded that Applicants could voluntarily contribute the substance of their claims to the master class case without adopting the role of an active litigant. Thus, the only "prejudice" resulting from intervention that Defendants purport to set forth is the possibility that they will have to defend against Applicants' substantial and easily comprehended claims as well as contend with Applicants' more active role in the litigation.

### 2. Defendants are Not Prejudiced by the Intervention.

Defendants have not set out the arguments relevant to a opposition to this application. WGII's objection based on adequacy of class counsel is a component of the analysis for intervention as of right, not permissive intervention, and is actually an objection that could be raised by existing class counsel, who has not objected to this application.

WGII also inappropriately argues that Applicants' claims against that defendant are prescribed and that the *American Pipe* tolling doctrine does not apply. Nonetheless, Applicants are currently class members with timely pending claims against WGII in the class action suit. WGII's position as to timeliness of Applicants' claims is not appropriately raised in opposition to this application.

WGII also devotes much attention to its argument that Applicants' Motion to Intervene is untimely (*see* Opp. at 3-7). However, all of the decisions cited by WGII are in suits in which the intervention adds an entirely new party to

---

they believe that plaintiffs' class counsel has waived—or could waive—the right of all class members to make any claim for economic losses. Applicants do not purport to speak for class counsel, but the quoted statement that such economic claims would not be "the subject of modeling" does not equate to a blanket waiver of class members' claims.

the case. This matter—a class action suit—presents a very different situation: Applicants are already parties to the suit and the allegations of causation against WGII have already been articulated by the class. Unlike an individual suit, in a class action it is appropriate for an unnamed class member to monitor the progress of the case from the sidelines and only intervene when there becomes a need for that individual class member to play a more active role. For example, class members are commonly allowed to intervene after a trial on the merits is concluded so that they can appeal the judgment.

Even under the traditional timeliness analysis, however, Applicants' motion should succeed. Timeliness is determined by considering the totality of the circumstances. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977). Moreover, the requirement of timeliness is not a "tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Sierra Club v. Epsy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Generally, the "federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Id.*

To assist district courts in deciding whether intervention is timely and thus appropriate, the Fifth Circuit has enumerated the following factors:

> (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as son as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual

> circumstances militating either for or against a determination that
> the application is timely.

*Stallworth.*, 558 F.2d at 264-66. These considerations, however, were intended to be a "framework" for "determining timeliness," not a "formula." *Edwards v. City of Houston*, 78 F.3d 983, 1004 (5th Cir. 1996). Thus, the timeliness analysis remains "contextual." *Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir 2005). In fact, "a motion to intervene may still be timely even if all the factors do not weigh in favor of a finding of timeliness." *Doe v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (citing *Stallworth*, 558 F.2d at 267). In the instant case, the factors weigh in favor of intervention; despite WGII's speculative, doomsday predictions,[2] the case would not grind to a halt, and neither WGII nor the United States will be prejudiced by the timing of the intervention. More significantly, by allowing Applicants to intervene, the Court will reap the benefits of the flexibility of a plaintiff that can demonstrate specific, relatively consistent damages in any relevant area, whether it is the Lower Ninth Ward, New Orleans East, St. Barnard Parish or any other geographic location that the Court deems prudent to explore. Thus, greater justice could be attained by allowing intervention.

WGII places particular emphasis on its allegation that "Entergy has known of its interest in this case for more than three years." (Opp. at 4.) The defendant, however, misses the point. Intervention is not based on the mere lapse of time, but on the "totality of the circumstances." *Stallworth*, 558 F.2d at 263. In fact, it can be permitted at any time—even after a final judgment—where,

---

[2] There has been no indication that Applicants motion has led to or will lead to a "stampede" of other intervening plaintiffs.

as here, there is no prejudice to the rights of the existing parties or substantial interference with the orderly process of the court. As stated in the Motion to Intervene, Applicants are ready to proceed with initial disclosures, are prepared to issue and respond to any necessary discovery requests, and can timely participate in any pretrial practice as scheduled by the Court. Thus, there would be no "substantial interference" with the orderly process of the proceeding.

Additionally, as Defendants ignore, the relevant prejudice to be considered is "only that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew, or reasonably should have known about the action." *Stallworth*, 558 F.2d at 265. WGII argues that Entergy complicates the proceeding by "adding another layer of argument that jurors would be required to navigate in the event of class certification." (Opp. at 6.) This bald assertion is without any basis in fact. The arguments against WGII are not altered in any way by Entergy's presence as a named plaintiff in the event of class certification. However this is not prejudice that results from the timing of Applicants' intervention, but from Applicants' mere presence in the case.

WGII also points to "lists of deadlines that have already passed." (Opp. at 3.) Entergy's claims have always been "in the case," and WGII has seen fit to "let them lie." Applicants have no right or desire to re-litigate issues that have already been decided in this case or to re-do discovery that has been completed. Thus, the timing of this Motion to Intervene cannot be said to prejudice Defendants.

### 3.  The Case Will Benefit from Applicants' Intervention.

Finally, this case presents unusual circumstances such that "greater justice" can be obtained through intervention.  The inclusion of Applicants as intervening plaintiffs will assist with the cohesive litigation of damages issues. *See* 5 Abla Conte & Herbert Newberg, *Newberg on Class Actions* § 16:9 (4th Ed. 2002), and cases cited therein.  Specifically, and as further detailed in Applicants' letter to the Court (Exhibit A), Entergy's losses fall throughout the entire MR-GO "footprint" such that a merits determination may help resolve a wide array of other claims.  Entergy can demonstrate specific, quantifiable damages in each of the geographic areas at issue, including in the area adjacent to the IHNC levees implicated in the allegations asserted against WGII.

Further, as the utility providing necessary infrastructure to the entire affected New Orleans area, Entergy is in the unique position of being capable of furnishing credible evidence regarding both the extent of damage sustained to its business and that sustained by its customers throughout the impacted area (regardless of the final designation of that geographic area).

By presenting a damages "package" that includes any  geographic area for claims against both the United States and WGII, Applicants can provide a cohesive damages picture that is otherwise available to the Court only in fragments from individual resident and small business claimants.  Resolution of Applicants' claim could potentially enable the Court to create a simplified, standardized method of calculating damages that might ultimately be applied to the whole class of MR-GO claimants.

Finally, since Entergy is a utility actively attempting to restore necessary infrastructure to the City of New Orleans, its ability to play an active role in this class action litigation in an effort to obtain a time-sensitive recovery will benefit all the citizens of New Orleans.

## Conclusion

The unusual and unsettled procedural status of this case presents a difficult situation. Applicants seek to intervene in this Master Consolidated Class Action in order to preserve options for choosing trial plaintiffs for the July 2009 merits trials—both for the Court and for the Applicants themselves. Applicants' intervention is timely and will not impose any actual prejudice upon defendants beyond simply having to defend against Applicants' claims. Rather, intervention will benefit the class action by providing a comprehensive and cohesive damages case that will be instructive to all parties.

Respectfully submitted on September ___16___, 2008,

> Ewell E. Eagan Jr. (La. Bar No. 5239), T.A.
> A. Gregory Grimsal (La. Bar No. 6332)
> Wendy Hickok Robinson (La. Bar No. 25225)
> Gordon, Arata, McCollam,
>   Duplantis & Eagan, L.L.P.
> 201 St. Charles Avenue, 40th Floor
> New Orleans, Louisiana  70170-4000
>     Telephone: (504) 582-1111
>     Fax: (504) 582-1121
>
> By:_____/s/Wendy Hickok Robinson_____
>
> and

O.H. Storey (Arkansas Bar No. 69078)
Marcus V. Brown (La. Bar No. 18817)
Leila A. D'Aquin (La. Bar No. 18884)
Entergy Services, Inc.
639 Loyola Avenue, Suite 2600
New Orleans, LA  70113
Tel:  504-576-2765

Attorneys for Plaintiffs, Entergy New Orleans,
Inc., Entergy Louisiana, L.L.C., Entergy
Services, Inc., and Entergy Corporation

Elisa T. Gilbert (ETG 5713), T.A.
Brendan R. O'Brien (BO 9033)
The Gilbert Firm, LLC
325 East 57th
New York, NY 10022

and

Ernest E. Svenson (La. Bar No. 17164)
The Svenson Law firm, LLC
432 Henry Clay Avenue
New Orleans, LA 70118-5724
Tel: 504-208-5199

Attorneys for Hartford Steam Boiler Inspection
and Insurance Company