UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| _____ | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MRGO, Robinson, No. 06-2268 | § | |
| _____ | § | |

**DEFENDANT UNITED STATES' RESPONSE TO PLAINTIFFS'
CORRECTED MOTION FOR *IN CAMERA* INSPECTION**

**I. INTRODUCTION**

Plaintiffs have objected to the defendant United States' assertion of the attorney-client privilege under Fed. R. Civ. P. 26(b)(5) for inadvertently released United States Army Corps of Engineers' (Corps) documents the plaintiffs introduced during the depositions of retired Corps employees Greg Breerwood and John Saia.[1]  The plaintiffs' objections are without merit because the Corps' documents clearly contain protected attorney-client communications from in-house Office of Counsel Corps' attorneys who, in their role as attorney-advisors, were rendering legal advice, analysis and opinions to Corps' employees for which the United States has not purposefully waived the attorney-client privilege.  Therefore, the Court should overrule the plaintiffs' objections and uphold the United States' assertion of the attorney-client privilege over the Corps' documents.

---

[1] The United States will be filing a motion requesting the Court to place under seal any portion of the two depositions that reference the Corps' attorney-client privileged documents.

## II. BACKGROUND

On July 10, 2008, Hugh Lambert, plaintiffs' counsel, deposed Greg Breerwood, a retired Corps employee. During the deposition, Mr. Lambert questioned the deponent about privileged Corps' documents with Bates range NED-187-000000377 thru 0378, which were inadvertently produced to the plaintiffs by the United States on August 10, 2007. See Doc. Rec. No. 6944. On July 14, 2008, Scott Joanen, plaintiffs' counsel, deposed John Saia, a retired Corps employee. During the deposition, Mr. Joanen questioned the deponent about privileged Corps' documents with Bates ranges MVD-003-000001586 thru 1588 and MVD-003-000001591 thru 1603, which were also inadvertantly produced to the plaintiffs by the United States on August 10, 2007. See Doc. Rec. No. 6944. During both depositions, United States counsel objected and provided oral notice on the record of its intent to assert a privilege over these Corps documents.

On July 16, 2008, the United States provided written notice to both Mr. Lambert and Mr. Joanen of its intent to assert the attorney-client privilege over the above referenced Corps' documents per the Discovery Order of May 23, 2007 concerning materials as to which privileges may be asserted.[2] See Exhs. 1 and 2. The written notice to the plaintiffs' counsel provided the following reasons why the United States was asserting the attorney-client privilege over the documents:

---

[2] The Discovery Order provides that "[n]otice may be made orally on the record at a deposition or hearing, provided that it is subsequently confirmed in writing, per CMO No. 4, ¶ IV(C)(3)(e), within 10 days from the date of the hearing or receipt of the deposition transcript by the party asserting privilege or other protection." See Doc. Rec. No. 5183.

    A.  Regarding the documents introduced at the deposition of Mr. Breerwood:

    "[D]ocuments at Bates range NED-187-000000377 thru 0378 . . . are communications between Corps employees and Gwendolyn Nachman, Corps attorney.  Moreover, the e-mail at NED-187-000000378 clearly identifies Ms. Nachman as being with the New Orleans District Office of Counsel and indicates that the e-mail is Attorney Work Product."

See Exh. 1.

    B.  Regarding the documents introduced at the deposition of Mr. Saia:

    "The e-mails at MVD-003-000001586 thru 1588 and MVD-003-000001599 are communications between Corps employees and G. Rogers Sloan, Annette Kuz and Maurya Kilroy, all Corps attorneys.  The e-mails at MVD-003-000001586 thru 1588 clearly identify Mr. Sloan and Ms. Kuz as Corps counsel.  Moreover, these e-mails along with the e-mail at MVD-003-000001599 indicate that they are Attorney Work Product and/or Attorney-Client Communications.  The documents at Bates ranges MVD-003-000001591 thru 1598 and MVD-003-000001600 thru 1603 are all attachments to the referenced e-mails.  With the exception of MVD-003-000001594 thru 1595 (copy of a statute), all the attachments are clearly marked as Attorney-Client Privileged Communication/Attorney Work Product.  All the above referenced documents are privileged attorney-client communications and/or protected by the Attorney Work Product Doctrine."

See Exh. 2.

On July 16, 2008, the United States also filed a Notice and Privilege Log with the Court asserting the attorney-client privilege over the Corps' documents.  See Doc. Rec. No. 13847. The Privilege Log provided the Bates range, privilege assertion, document date, document author, author organization, addressee, addressee organization and description of the documents.[3]

---

[3] The Discovery Order provides that "[a] party who wishes to assert privilege or other protection as to a document or ESI produced shall 'file a notice into the record identifying the document [or ESI] by its specific identifying characteristic, such as by Bates number.'  CMO No. 4, ¶ IV(C)(3)(e).  This notice shall contain information sufficient to identify: (1) the document or ESI, including information as necessary to locate the materials produced; and (2) the privilege or other protection that applies."  See Doc. Rec. No. 5183

Copies of the Notice and Privilege Log were provided to plaintiffs' counsel via ECF with the written notices.  See Doc. Rec. No. 13847 attached to Exhs. 1 and 2.

The July 16, 2008 notices to plaintiffs' counsel also informed them of the Discovery Order requirement to meet-and-confer in order to reach an agreement regarding the assertion of privilege that may apply to these documents within 20 days after notice.[4]  See Exhs. 1 and 2.  The 20 day time period expired on August 4, 2008.  However, Mr. Lambert failed to meet-and-confer regarding the Corps' documents he introduced at Mr. Breerwood's deposition despite the United States' reminder to him on August 4, 2008 thru an e-mail message.  See Exh. 3.

In response to the July 16, 2008 notice to Mr. Joanen regarding the Corps' documents he introduced at Mr. Saia's deposition, Mr. Joanen indicated via e-mail that he would check on his availability to meet and confer for the rest of the week.  He stated in that message that "[p]ersonally, I don't see what we'll need to discuss because I don't see the emails as anything I need to be concerned about, but I will need to check in with the chiefs around here to make sure I've fulfilled their expectations about this issue."  See Exh. 4.  The United States received no further communications from Mr. Joanan regarding this matter until the United States sent an e-mail to him on August 4, 2008 reminding him to provide the United States with a decision

---

[4] The Discovery Order provides that "[u]pon notice per CMO No. 4, ¶ IV(C)(3)(e), from the producing party pursuant to this order, the parties shall attempt to reach agreement regarding the assertion of privilege or protection that may apply to the document or ESI or any portion of the document or ESI.  If the parties do not reach an agreement within 20 days after notice ('the meet and confer period'), the receiving party 'is to immediately destroy the documents [or ESI] received and all copies thereof, unless it received the originals, in which case it shall return the original to the producing party.'  CMO No. 4, ¶ IV(C)(3)(e)." (emphasis added)  See Doc. Rec. No. 5183.

regarding whether the plaintiffs had any objections to the United States asserting the attorney-client privilege over the referenced Corps' documents in the Saia deposition.  See Exh. 4.

On August 4, 2008, Mr. Joanen called and informed the United States that the plaintiffs were going to contest the United States' assertion of the attorney-client privilege over the Corps' documents he introduced at Mr. Saia's deposition, but provided no basis for contesting the privilege assertion.  In the spirit of the "meet-and-confer" requirement under the Discovery Order, the United States e-mailed Mr. Joanen and requested that he let the United States know the plaintiffs' rationale for wanting to contest the privilege assertions over the Corps' documents he attempted to introduce at Mr. Saia's deposition.  See Exh. 4.  Unfortunately, Mr. Joanen did not respond to the e-mail.

The only information the United States received regarding the plaintiffs' position concerning the privileged Corps' documents was in their August 27, 2008 letter to Magistrate Wilkinson requesting an *in camera* inspection of the above referenced Corps' documents that were attached to the letter.[5]  In the letter, plaintiffs allege: (1) that the United States has failed to meet its burden of demonstrating that the contested information is protected by the attorney-client privilege because it has not supplemented its privilege log to provide information necessary to make an informed determination of the validity of their objections,[6] and (2) the

---

[5] The Discovery Order provides that "[w]ithin 30 days of the expiration of the meet and confer period described herein, '[a]ny party seeking to contest the assertion of privilege [or protection] as to inadvertently produced documents [or ESI] must request *in camera* review of the document(s) [or ESI] in question by filing a motion that does not disclose the content of the document(s) [or ESI] over which the producing party has asserted privilege.' CMO No. 4, ¶ IV(C)(3)(e)." See Doc. Rec. No. 5183.

[6] One important purpose for the meet-and-confer process initiated with the plaintiffs was the opportunity for them to ask specific questions about each of the Corps' documents at issue in

communications at Bates range MVD-003-000001586 thru 1588 and MVD-003-000001591 thru 1603 indicate that the Corps' counsel are acting as regulatory decision-makers, and thus the communications are not protected under the attorney-client privilege.[7]  The plaintiffs also included with the letter a Corps' document with Bates range MVD-003-000001589 thru 1590 that they introduced at Mr. Saia's deposition for which the United States has not asserted a privilege.[8]

### III. THE ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer to the client, at least if they would tend to disclose the client's confidential communications.  Hodges, Grant & Kaufmann v. United States Government, 768 F.2d 719, 720-21 (5th Cir. 1985).[9]  The burden to establish the applicability of the attorney-client privilege rests on the party who invokes it.  Hodges, 768 F.2d at 721.  The privilege must be specifically

---

order for them to gain more insight into the nature of the documents and the application of the attorney-client privilege.  In the absence of that informal give-and-take process, the United States cannot be expected to know what more information the plaintiffs require about the documents in order for them to either maintain or withdraw their challenges.

[7] The plaintiffs' letter which includes the August 27, 2005 e-mail from Scott Joanen to Ms. Mosley that includes the Corps' privileged documents that should have been destroyed by the plaintiffs per the Discovery Order since they were not original documents.  Moreover, the documents should have been filed, if at all, with the Court under seal in order to maintain the confidentiality of the documents.

[8] After reviewing the plaintiffs' letter, the United States is withdrawing its assertion of the attorney-client privilege over the Corps' document at Bates range MVD-003-000001594 thru 1595 (copy of a statute).  See Doc. Rec. No. 15196.

[9] The federal common law attorney-client privilege governs claims arising under federal law.  Willy v. Administrative Review Bd., 423 F.3d 483, 495 (5th Cir. 2005).

asserted with respect to particular documents. United States v. El Paso Co., 682 F.2d 530, 539 (5th Cir. 1982), cert. denied, 466 U.S. 944 (1984).[10] In addition, applicability of the privilege is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents. Hodges, 768 F.2d at 721. The proponent of the privilege must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived. United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982). Moreover, documents which are not protected by the attorney-client relationship are not immunized from discovery by mere delivery of the documents to the hands of an attorney. United States v. Davis, 636 F.2d 1028, 1040 (5th Cir. 1981). Finally, an attorney-client relationship exists and the communications are privileged when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is (the) member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Proceedings, 517 F.2d 666, 670 (5th Cir. 1975).

The purpose of the attorney-client privilege is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice. Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The privilege protects not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and

---

[10] Blanket claims of privilege are disfavored. El Paso Co., 682 F.2d 530 at 539.

informed advice. Mobil Oil Corp. v. Dep't of Energy, 102 F.R.D. 1, 9 (N.D.N.Y. 1983) (quoting Upjohn, 449 U. S. at 390). Moreover, the attorney-client privilege applies to communications between government counsel and government employees. See Deseret Management Corps. v. U.S., 76 Fed. Cl. 88, 91 (2007) (Explaining that communications by the Department of Justice to a client agency and by that agency's own attorneys to non-attorney personnel seeking or being provided with legal advice are entitled to protection under the attorney-client privilege.).

The attorney-client privilege applies whenever a client seeks legal advice from an attorney. Hodges, 768 F2d 721. However, the presumption that the client sought legal advice may not be as readily apparent in the context of in-house counsel. The relevant question is whether counsel, regardless of his or her title, is acting in a legal or a non-legal capacity within the client organization. See O'Brien v. Board of Educ., 86 F.R.D. 548, 549 (S.D.N.Y. 1980) (he fact that the document was authorized by in-house counsel rather than by an independent attorney is of no significance. The relevant inquiry is whether the attorney, regardless of his place of employment, was acting as confidential counsel to the party asserting the privilege.). An attorney's status as in-house counsel alone does not dilute the privilege. In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984).

The courts have held that communications to and from in-house counsel can be protected only upon a showing that in-house counsel gave advice in a professional legal capacity. In re Sealed Case, 737 F.2d at 99.[11] A presumption that legal advice is sought is still appropriate

---

[11] See also Borase v. M/A COM, Inc., 171 F.R.D. 10, 15, 37 Fed. R. Serv. 3d (LCP) 428 (D. Mass. 1997) (If an in-house counsel has other nonlegal responsibilities, the party invoking the privilege has the burden of producing evidence in support of its contention that in-house counsel was engaged in giving legal advice and not in some other capacity at the time of the disputed conversations); Resolution Trust Corp. v. Diamond, 773 F.Supp. 597, 600 ( S.D.N.Y.

when the client is dealing with attorneys in the legal department who are working for the general counsel, as opposed to attorneys who may be working in other sections of the company. BOCA Investering Partnership v. United States, 31 F. Supp. 2d 9, 12 (D.D.C. Dec. 29, 1998). In BOCA the lawyer in question gave tax advice (assistance that can be considered legal if it does not relate to tax return preparation), but he was employed by a part of the company that was known as the Financial Group. The court explained how a presumption that legal advice was sought might work for some lawyers within the company, but not for others.

> One important indicator of whether a lawyer is involved in giving legal advice or in some other activity is his or her place on the corporation's organizational chart. There is a presumption that a lawyer in the legal department or working for the general counsel is most often giving legal advice, while the opposite presumption applies to a lawyer such as Mr. Nee who works for the Financial Group of some other seemingly management or business side of the house. . . . A lawyer's place on the organization chart is not always dispositive, and the relevant presumption therefore may be rebutted by the party asserting the privilege.

Id.

The attorney-client privilege also applies when an agency attorney is asked for or provides situation-specific advice regarding the proper interpretation and application of statutes and regulations that the agency administers. As the Federal Circuit has recognized, information presented to an attorney for purposes of assessing compliance with law and regulation is a communication covered by the attorney-client privilege. In re The Regents of the Univ. Of California, 101 F.3d 1386, 1390-91 (Fed. Cir. 1996), cert. denied, 520 U.S. 1193 (1997) (citing

---

1991) (The court found certain documents were privileged because they were written requests for legal advice from its counsel; legal advice, opinion or strategy memoranda generated by in-house and outside counsel; documents prepared based upon the substance of counsel's opinion or advice, reports of attorney-client communications, and drafts of documents prepared by counsel).

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). The Court explained:

> It is well established that the attorney-client privilege is not limited to actions taken and advice obtained in the shadow of litigation. Persons seek legal advice and assistance in order to meet legal requirements and to plan their conduct; such steps serve the public interest in achieving compliance with law and facilitating the administration of justice and indeed may avert litigation.

Id.

## IV. ARGUMENT

A. The United States has met its burden of demonstrating that the Corps' documents are protected under the attorney-client privilege.

First, the United States provided a privilege log to plaintiffs on July 16, 2008 that asserted the attorney-client privilege over the Corps' documents. See Doc. Rec. No. 13847. The privilege log prepared by the United States conforms to the guidance provided in the Discovery Order. See Doc. Rec. No. 5183. Second, with its July 16, 2008 notice to the plaintiffs, the United States provided additional information regarding the privileged documents. See Exhs.1 and 2. Finally, the United States is providing under seal a declaration from the Corps whereby they spell out in greater detail the nature of each privileged document, generally described below, and why the documents are protected by the attorney-client privilege. See Exh. 5.[12]

The Corps' documents are privileged for the following reasons:

1. Bates range NED-187-000000377 through NED-187-000000378 is a two page document comprising three e-mails in which district Corps' counsel requests information from

---

[12] An Ex Parte/Consent Motion to File Exhibit Under Seal is being filed contemporaneously with this brief by the United States for the referenced Exhibit 5 to be reviewed *in camera* by the Court.. The submission of the Corps' declaration for *in camera* review and the limited description of the documents within this brief do not constitute a waiver of the attorney-client privilege or any other privilege.  Therefore, all such privileges are expressly preserved.

district Corps' employees about a Corps' project and its authorization.  See Exh. 5.  This document is protected from disclosure under the attorney-client privilege because it involves confidential communications which have been maintained between the Corps' District Counsel's Office and Corps' employees evaluating the statutory authority for a Corps' project for their client, the Corps.  See In re Grand Jury Proceedings, 517 F.2d at 670..

    2.  Bates range MVD-003-000001586 through MVD-003-000001588 is a three page document comprising four e-mails containing confidential communications which have been maintained between division in-house Corps' counsel with the Office of Counsel and Corps' employees requesting an explanation of federal environmental regulatory and statutory requirements for work performed under a contract for a Corps' project.  See Exh. 5.  Accordingly, this document is protected from disclosure under the attorney-client privilege.  See In re Grand Jury Proceedings, 517 F.2d at 670; In re The Regents of the Univ. of California, 101 F.3d at 1390-91.

    3.  Bates range MVD-003-1591 through MVD-003-1593 and MVD-003-000001596 through MVD-003-000001598 are documents attached to the document at Bates range MVD-003-000001586 through MVD-003-000001588.  These confidential documents, whose confidentiality have been maintained, were prepared in response to a request from a Corps' headquarters employee seeking legal advice from in-house Corps' counsel with the Office of Counsel regarding environmental fines and exposure for various Corps' projects.  See Exh. 5.  Accordingly, these documents are protected from disclosure under the attorney-client privilege.  See In re Grand Jury Proceedings, 517 F.2d at 670.

4.  Bates range MVD-003-000001599 through MVD-003-000001603 is a five page document comprised of an e-mail with an attachment. The e-mail is between in-house division and district Corps' counsel with the Office of Counsel engaging in confidential communications, which have been maintained, with other Corps' employees referencing the document attached to the e-mail which provides factual information, analysis and legal opinions on a topic of potential criminal exposure and liability. See Exh. 5. Accordingly, these documents are protected from disclosure under the attorney-client privilege. See Jury Proceedings, 517 F.2d at 670.

As described above, the United States has met its burden of demonstrating that the Corps' documents are protected by the attorney-client privilege.

B.  The Corps' in-house counsel were acting in their role as attorney-advisors when advising their Corps clients.

The plaintiffs argue that:

> The communications at issue (sequentially numbered before and after the non-privileged document [MVD-003-000001589 thru 1590]), as interpreted by Plaintiffs, relate to prospective liability of the Corps as a potentially responsible party under CERCLA. The communications indicate that the Corps's counsel are acting as regulatory decision makers, because the sale of the property occurred before the disputed communications took place. (See MVD-003-000001592).

See Exh. 5. Additionally, the plaintiffs cite Mobil Oil Corp. v. Department of Energy, 102 F.R.D. 1, 9-10 (N.D.N.Y. 1983) in support of their argument that "[i]n fact, it is recognized that the attorney-client privilege does not normally protect communications between client and counsel where counsel are acting as regulatory decision-makers rather than as attorney advisors." See plaintiffs' August 27, 2008 letter to the Court.

In Mobil Oil, the Court found that "[a]lthough Funk was a high ranking official in the

12

[EPA's] General Counsel's office, the document [in dispute] addresses regulatory-related matters, and it is not clear whether the addressees Funk and McRae were acting in their capacities as attorney advisors or as regulatory decision-makers." Id. at 9-10.  Thus, the Court held that the attorney-client privilege did not apply to the disputed document. That case is inapposite to the facts of this case.  In this case, the in-house Corps' counsel, who were working in the division and district Offices of Counsel, were providing their Corps clients with legal analysis and opinions concerning a wide variety of legal matters to include, among others, contractual, real estate, environmental, regulatory and statutory issues in their role as attorney-advisors in an effort to assist their Corps clients in achieving compliance with the law and to plan their conduct.  See Ex. 5.  Thus, their communications are protected under the attorney-client privilege.  See In re The Regents of the Univ. of California, 101 F.3d at 1390-91.  Moreover, there is a presumption that a lawyer working in a legal department or working for the general counsel is most often giving legal advice.  See BOCA Investering Partnership, 31 F. Supp. 2d at 12.

      C.  <u>The United States did not waive the attorney-client privilege over the Corps' documents.</u>

      The United States did not intend to disclose the Corps' privileged documents introduced by the plaintiffs during the Breerwood and Saia depositions.  In the course of producing hundreds of millions of pages of hard copy and electronically stored information in response to the plaintiffs' voluminous requests for various categories of documents, the United States inadvertently produced these few privileged Corps' documents.  Early on, the Court recognized the potential massive number of documents that might be produced by the parties to this

litigation, and the narrow time constraints under which the parties were to produce the materials. Accordingly, the Court entered a Discovery Order that provides, in part:

> Pursuant to and in furtherance of Fed. R. Civ. P. 16, 26b(5)(B) and Case Management and Scheduling Order No. 4 ("CMO No. 4", Record Doc. No. 3299, the court hereby enters the following order concerning privileges.
>
> The parties and the court anticipate that a large volume of documents and electronically stored information ("ESI") will be produced during discovery in these cases. Under these circumstances and in view of the time restraints imposed by the court, it is foreseeable that parties will inadvertently produce documents and ESI that are privileged or otherwise protected. To speed production, it is hereby **ORDERED** that the production of a document or ESI, in whole or in part, shall <u>not</u> alone constitute a waiver of any privilege or other protection as to any portion of that document or ESI, in this or in any other proceeding.

<u>See</u> Doc. Rec. No. 5183 (emphasis in original). Therefore, per the above Discovery Order, the United States has not waived its attorney-client privilege for the inadvertently produced Corps' documents.

## V. CONCLUSION

The United States has carried its burden of proving that the withheld Corps' documents are protected by the attorney-client privilege. The plaintiffs' objections are without merit because the Corps' documents clearly contain protected attorney-client communications from in-house Office of Counsel Corps' attorneys who, in their role as attorney-advisors, were rendering legal advice, analysis and opinions to Corps' employees for which the United States has not purposefully waived the attorney-client privilege. Therefore, the United States respectfully requests that the Court overrule the plaintiffs' objections and uphold the United States' assertion of the attorney-client privilege over the following Corps' documents:

14

Bates range NED-187-000000377 through NED-187-000000378;

Bates range MVD-003-000001586 through MVD-003-000001588;

Bates range MVD-003-1591 through MVD-003-1593;

Bates range MVD-003-000001596 through MVD-003-000001603.

Respectfully submitted,


GREGORY G. KATSAS
Assistant Attorney General

PHYLLIS J. PYLES
Director, Torts Branch

JAMES G. TOUHEY, JR.
Assistant Director, Torts Branch

 s/ James F. McConnon, Jr.
JAMES F. McCONNON, JR.
Trial Attorney, Torts Branch, Civil Division
U.S. Department of Justice
Benjamin Franklin Station, P.O. Box 888
Washington, D.C.  20044
(202) 616-4400/ (202) 616-5200 (Fax)
Attorneys for the United States

Dated: September 22, 2008

## CERTIFICATE OF SERVICE

I, James F. McConnon, Jr., hereby certify that on September 22, 2008, I served a true copy of the Defendant United States' Response to Plaintiffs' Corrected Motion for *In Camera* Inspection upon all parties by ECF.

                                                         s/ James F. McConnon, Jr.
                                                         JAMES F. McCONNON, JR.