# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF INGRAM BARGE COMPANY, AS OWNER OF THE ING4727, PETITIONING FOR EXONERATION FROM OR LIMITATION LIABILITY | CIVIL ACTION<br><br>NO. 05-4419<br><br>SECTION "C" (2)<br>JUDGE BERRIGAN |

### ORDER & REASONS

For the reasons that follow, the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) filed by third-party Defendant, the United States, in response to Lafarge North America Inc.'s ("LNA") third-party complaint is DENIED at this time.

### I. BACKGROUND

This action arises from injuries to persons and property sustained as a result of the flooding of the Inner Harbor Navigation Canal ("Industrial Canal"), the Mississippi River Gulf Outlet ("MRGO"), and the Gulf Intracoastal Waterway ("GIWW") that occurred in New Orleans in the wake of Hurricane Katrina.

In *Boutte*, 05-5531, *Mumford*, 05-5724, and *Parfait*, 05-4237, plaintiffs filed suit against multiple defendants, including LNA as the owner of the terminal in the Industrial Canal where the barge ING 4727, owned by Ingram Barge Company, was moored and secured on August 28-

1

29, 2005 when Hurricane Katrina made landfall. As part of the litigation related to these cases, LNA filed third-party complaints against the United States in *Boutte* and *Mumford*.[1]

In its third-party complaint, LNA alleged that the United States was liable for indemnification and/or contribution based on the following:

(1) the government's negligent design, configuration, maintenance, and construction of the MRGO, related canals and their surrounding levees and retaining walls;

(2) negligent dredging by vessels operated by the U.S. Army Corps of Engineers ("USCOE") and its contractors, which destroyed protective wetlands and cypress swamps in Southeast Louisiana, thereby exacerbating the effects of Hurricane Katrina; and

(3) the unconstitutional taking of plaintiffs' property by the United States in violation of plaintiffs' Fifth Amendment rights pursuant to the Little Tucker Act. (Rec. Doc. 383).

In response to LNA's complaint, the United States filed this Motion to Dismiss asserting that LNA has failed to allege a cognizable claim and/or failed to exhaust certain administrative remedies, both of which effectively deprive the Court of jurisdiction over LNA's complaint. Specifically, the United States first claims that the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), applies to LNA's claims, that the FTCA applies the law of the state where the alleged tort occurred, and that Louisiana law does not recognize a cause of action for indemnity or contribution. Failing to allege a valid claim not only merits dismissal based on 12(b)(6), but it also results in the FTCA's waiver of immunity being inapplicable to LNA's claims, effectively depriving the Court of jurisdiction under 12(b)(1).

The United States next asserts that in the event admiralty law is deemed applicable to any or all of LNA's claims, that the Admiralty Extension Act ("AEA") is the only statute capable of supplying jurisdiction to such claims, that the AEA requires that LNA adhere to certain

---

[1] In addition to filing third-party complaints in *Boutte* and *Mumford*, LNA also filed a cross-claim containing identical arguments against the United States in *Parfait*. The Court subsequently dismissed plaintiffs' claims against the United States in *Parfait*. (Order at Rec. Doc. 161). Because this Court dismissed plaintiffs' claims against the United States in the *Parfait* action and a cross-claim cannot be sustained against an entity that is no longer a party to the suit, the Court will limit its discussion to LNA's third-party complaints.

2

administrative requirements, and that LNA has not complied with these administrative requirements.

In regards to the Little Tucker Act claim, the United States argues that LNA's complaint improperly alleged a claim under the Little Tucker Act and that LNA insufficiently alleged a "taking" under the Fifth Amendment.

## II. APPLICABLE LAW

### A. STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a district court must accept the factual allegations of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff. *See Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). A complaint should not be dismissed for failure to state a claim unless it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim." Id. at 284-85 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, dismissal is warranted if the complaint contains only "conclusory allegations and unwarranted deductions of fact." *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97 (5th Cir. 1974); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)(citing *Fernandez-Montes,* 987 F.2d at 284).

Because the motion to dismiss pursuant to 12(b)(1) challenges the Court's subject matter jurisdiction based on the sufficiency of the pleadings' allegations, the court will also construe those allegations as true and consider them in the light most favorable to the complainant for the purposes of the 12(b)(1) motion. *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993), *cert. denied* 512 U.S. 1235 (1994). Moreover, inasmuch as the 12(b)(1) motion depends upon whether LNA has sufficiently alleged a complaint and, if so, under which statute,

3

the Court begins its analysis with what statute applies and whether LNA *potentially* has a cognizable cause of action under that statute.

### B.   POTENTIALLY APPLICABLE STATUTES

It is well established that the United States government may not be sued without its specific consent. *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Minnesota v. United States*, 305 U.S. 382, 387 (1939); *Houston v. U.S. Postal Service*, 823 F.2d 896, 898 (5th Cir. 1987), cert. denied, 485 U.S. 1006 (1988). The statutes that could conceivably supply the government's consent to suit in regards to LNA's claims include the FTCA, 28 U.S.C. § 2671 *et seq.*, the Suits in Admiralty Act ("SAA"), 46 U.S.C. § 741 *et seq.*, the Public Vessels Act ("PVA"), 46 U.S.C. § 781 *et seq.*, the AEA, 46 U.S.C. § 740, and the Little Tucker Act, 28 U.S.C. § 1346. Each one of these statutes constitutes a waiver of the government's immunity to certain types of suits, provided that specific conditions are followed. *Honda v. Clark*, 386 U.S. 484 (1967). Courts must strictly construe any conditions imposed by a statute and should resolve any ambiguity in construction against consent. *Garcia v. United States*, 766 F.2d 116, 118 (5th Cir. 1985).

1. FTCA

The FTCA makes the United States liable in tort for injury or loss of property or personal injury or death caused by a negligent or wrongful act of any employee of the government acting within the scope of his or her employment. 28 U.S.C. § 1346(b)(1); *Charles v. United States*, 15 F.3d 400, 401 (5th Cir. 1994). In order for the waiver to be effective, however, the FTCA normally requires plaintiffs to present an administrative claim to the responsible federal agency prior to the initiation of the suit. 28 U.S.C. § 2675(a). The FTCA explicitly exempts "such claims as may be asserted under the Federal Rules of Civil Procedure by third-party complaint,

4

cross claim, or counterclaim" from the administrative exhaustion requirement. 28 U.S.C. § 2675(a).

As a further requirement for an effective waiver under the FTCA, the claim against the government must be cognizable under the substantive law applicable to the case. Under the FTCA, the right to indemnity or contribution in a tort action is normally determined under the law of the state where the negligent act or omission occurred. *United States v. Yellow Cab Co.*, 340 U.S. 543 (1951). When applying a state's substantive law, federal district courts are to apply the "whole law" of the state, including the state's choice-of-law rules. *Richards v. United States*, 369 U.S. 1 (1962); *see also Charles*, 15 F.3d at 403.

If a federal court has jurisdiction to hear a tort claim pursuant to the FTCA, then as a matter or law, it does not have jurisdiction to hear the claim under an admiralty statute. 28 U.S.C. § 1346, 2671 *et seq.*, 2680(d); *See also, Weatherford v. U.S.*, 957 F.Supp. 830, 833 (M.D.La. 1997) (citing, *McCormick v. U.S.*, 680 F.2d 345 (5th Cir. 1982)). Nevertheless, the substantive law ultimately applied to a claim may be maritime or federal substantive law if that is the substantive law a state court would ultimately apply. *See Hess v. United States,* 361 U.S. 314, 318 (1960); *Caban v. United States*, 728 F.2d 68, 72 (1986); *Zimmerman v. United States*, 171 F.Supp.2d 281, 292-93 (S.D.N.Y. 2001).

2. SAA

The SAA permits suits in admiralty against the United States in cases where, if the vessel or cargo were privately owned or possessed, a proceeding could be maintained in admiralty. 46 U.S.C. § 741 *et seq.*; *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 121 S. Ct. 1927, 1933 (2001); *see also Faust v. South Carolina State Highway Dep't.*, 721 F.2d 934, 938 n.2 (4th Cir. 1983).

5

3. PVA

The PVA permits admiralty claims against the United States for damages and injuries caused by a public vessel of the United States, and for compensation for towage and salvage services, including contract salvage, rendered to a public vessel of the United States. 46 U.S.C. § 781 *et seq*.

4. AEA

The AEA extends to "all cases of damage … to property caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land." 46 U.S.C. § 740. The AEA was passed as a means to extend the PVA and SAA to cover suits in which the damage or injury caused by a vessel on navigable water occurred on land. Prior to the passage of the AEA admiralty jurisdiction did not normally extend to injuries caused by a vessel to persons or property on land where navigable aids were not involved.

In suits against the United States, the AEA requires that no suit be filed until there shall have expired a period of six months after the claim has been presented in writing to the federal agency owning or operating the vessel causing the injury or damage.

5. LITTLE TUCKER ACT

The Little Tucker Act provides that a district court has jurisdiction over "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded [] upon the Constitution …" 28 U.S.C. § 1346(a)(2). The Tucker Act is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." United States v. Testan, 424 U.S. 392, 398 (1976). Thus, in order to for the court to have jurisdiction, a plaintiff must identify and plead a separate contractual relationship, constitutional provision, federal statute, and/or agency regulation that provides a substantive right to money damages.

6

*Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004). In addition to these substantive pleading requirements, the complaint must allege that the claim comes within the $10,000 jurisdictional limit. *See Bd. of Governors v. DLG Fin. Corp*., 29 F.3d 993, 999 (5th Cir. 1994); *Oakbrook Vill. Assocs. v. Cisneros*, 25 F.Supp. 2d 730, 732 n. 5 (E.D. La. 1998); *Jomokenyatta-Bean v. Hous. Auth. of New Orleans*, 2006 WL 3193773 at *3 (E.D. La. 2006).

### III. ANALYSIS

A. <u>NEGLIGENT DESIGN, MAINTENANCE & CONSTRUCTION OF THE LEVEES</u>

This Court has already determined that claims for recovery based on the government's negligent design, configuration, maintenance, and construction of the MRGO and related canals, levees, and retaining walls arise under the FTCA. *See In the Matter of the Complaint of Ingram Barge Company, as Owner of the ING4727*, 435 F.Supp.2d 524 (E.D. La. 2006)(dismissing *Parfait* plaintiffs' direct claim against the United States). As previously indicated, the administrative exhaustion requirements involved in bringing a suit based on the FTCA do not extend to third-party complaints. Thus, LNA's failure to adhere to any such requirements would not act as a jurisdictional bar.

The remaining jurisdictional issue is whether Louisiana law would recognize a claim for indemnity and/or contribution in this case. LNA has offered Louisiana case-law supporting its interpretation of Louisiana law and the United States has not disputed that Louisiana's choice-of-law principles could result in the application of general maritime law. *See Gibbs v. Falcon Drilling Co*., 97-1688 (La. App. 3 Cir. 5/13/98), *writ denied*, 98-1623 (La. 10/9/98). Without definitively ruling on the issue, the Court is satisfied that Louisiana law may recognize a claim for indemnity and/or contribution in this case, which is all that is necessary to maintain a cause of action at this time.

B.   LNA'S DREDGING CLAIM

LNA's claim relating to the negligent dredging of certain waterways, while arguably encompassed by the Court's decision in *Parfait* as part of the government's maintenance of the levees or other land-based structures, was not directly addressed in the *Parfait* decision and, therefore, merits separate consideration.

When determining if a claim sounds in admiralty, courts must apply the "location" and "connection" tests for admiralty tort jurisdiction set out in *Grubart v. Great Lakes Dredge & Dock Co.* 513 U.S. 527, 534 (1995).  The primary concern of the "location" test is "whether the tort occurred on navigable waters or whether injury suffered on land was caused by a vessel on navigable water." *Grubart*, 513 U.S. at 534.  The "caused by" language is traditionally construed as requiring the tort law concept of "proximate cause." *Margin v. Sea-Land Services, Inc.*, 812 F.2d 973, 976 (5th Cir. 1987).  In other words, "[t]he vessel or its defective appurtenances must be the proximate cause of the accident." *Id.*

Neither party disputes that the MRGO is a navigable waterway or that vessels owned and/or operated by the United States were used in dredging the MRGO.  Instead, the United States argues that the "location" test is unsatisfied inasmuch as the dredging was neither alleged to be negligent nor alleged to be the proximate cause of the accident.  (Rec. Doc. 422, p. 18). Neither of these arguments have merit.

The United States first contends that "there is no allegation that any dredging by the United States or its contractors was performed negligently."  This characterization misconstrues LNA's claims.  LNA's complaint does not appear to be primarily that the dredging was negligently performed, but rather that the dredging itself (or its frequency or degree) was negligent.  LNA, therefore, sufficiently alleged negligence in its complaint.

8

The government further argues that LNA's claim ultimately depends on negligence related to the levee since LNA has argued that a proper levee would have been able to withstand the storm surge regardless of the eroded state of the MRGO and its banks. In other words, even if the dredging intensified the effects, had the levees been correctly built, plaintiffs' damages would not have occurred. While this interpretation has merit, it is not the only possible or the most obvious interpretation of LNA's claims as set out in its complaint. An equally plausible interpretation of LNA's complaint is that the levees could have been negligently built but still withstood the storm surge had the government not continuously dredged the MRGO. To be sure, LNA does not indicate the degree to which it considers each factor ultimately responsible for plaintiffs' damages, nor is LNA so required. A plain reading of LNA's complaint, however, indicates that it considers both the "eroded condition of the MRGO and the inadequacies of the levee and retaining wall systems and related structures along the GIWW and IHNC" potentially responsible for the "catastrophic inundation of Orleans and St. Bernard Parishes." (Rec. Doc. 202, p.7). In sum, the "locality" test is satisfied.

There are two issues which must be considered under the "connection" test. The Court must first "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." *Grubart*, 513 U.S. at 534 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363-64 (1990)(internal citations and quotations omitted). In addition, the Court should "determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id*. (quoting *Sisson*, 497 U.S. at 364-65)(internal citations and quotations omitted).

By its very nature, dredging seems to affect maritime commerce as a key motivation for dredging is to keep waterways passable for commercial and other vessels. Nor does the United States seriously contest whether dredging affects maritime commerce. Instead, the United States

9

relies on this Court's holding in *Parfait*, which established that the maintenance and construction of levees and other similar land-based structures was, by and large, unrelated to maritime commerce. The Court's holding in *Parfait* is inapplicable here because *Parfait* was primarily concerned with the construction and maintenance of land-based structures and not, as it is here, with the degree to which dredging impacts or undermines these land-based structures. Thus, it would appear that the first part of the "connection" test is satisfied.

As to the second part of the test, whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity, LNA's dredging claim appears to satisfy this prong as well. Dredging itself appears to be a traditional maritime activity. *See, Grubart*, 513 U.S. at 540 (noting that "a dredge … on navigable waters is subject to maritime jurisdiction"); *see also Southern Natural Gas Co. v. Pontchartrain Materials, Inc.*, 711 F.2d 1251 (5th Cir. 1983)(finding the Corps liable under the SAA for failing to warn dredging vessels of certain pipelines and/or for failing to prohibit dredging altogether in the area of the pipelines); *Dunaway v. United States*, 136 F.Supp. 2d 576 (E.D. La. 1999)(applying discretionary function exception to dredging suit brought under SAA). Having satisfied both the "location" and "connection" tests, LNA's dredging claim sounds in admiralty.

Given that the allegedly negligent dredging was caused by vessels owned or operated by the United States with effects occurring on land, the AEA applies. The statutory determination gives rise to yet another issue in this case; namely, whether LNA must exhaust the administrative requirements set forth in the AEA in order for this Court to properly exercise jurisdiction.[2] The United States argues that because the AEA does not contain an explicit exemption for third-party claims similar to the one contained in the FTCA, the administrative

---

[2] In a footnote, the United States also indicated its intent to raise the issue of whether the Dredging Claim cannot be sustained because it falls within the Discretionary Function Exception to the FTCA's and the Admiralty Statutes' waiver of sovereign immunity. The Court notes that although this argument appears to have some merit, both parties should have the opportunity to fully brief the issue before the Court makes any definitive ruling in this regard.

10

requirements cannot be waived. In response, LNA points to a case affirmatively cited by both LNA and the United States, though for different reasons, *Loeber v. United States*. 803 F.Supp. 1154 (E.D. La. 1992). While *Loeber* is not controlling, the Court nevertheless finds its reasoning persuasive, particularly in the absence of any cases cited by the United States compelling a contrary finding.³ Were the Court to dismiss a party potentially liable for a substantial amount of the damages, it would leave LNA, if found liable in the primary case, with no recourse against the United States except to bring a separate administrative claim and, eventually, a separate judicial action for indemnification or contribution. Not only would this situation potentially deny complete relief to all parties, it would also result in a significant waste of judicial resources.

### C.  LNA's FIFTH AMENDMENT LITTLE TUCKER ACT CLAIM

As previously indicated, the pleading requirements for the jurisdictional amount in Little Tucker Act claims is stringent. LNA did not plead the amount it sought in its complaint and the bare reference to the statute contained in LNA's complaint is insufficient to establish the amount it was seeking. This is particularly the case in light of the fact that the plaintiffs are seeking substantially more than $10,000 against LNA and LNA otherwise indicated that it sought indemnification and/or contribution for the maximum extent to which the government is liable. Thus, this Court finds that LNA did not properly state a claim under the Little Tucker Act.

---

³ In *Loeber*, the plaintiffs' claims against the United States were dismissed because the plaintiffs had failed to comply with the requirements of the AEA. The United States then moved for dismissal of the private vessel owner's third-party contribution claim and the District Court held that the third-party complaint was not barred by plaintiffs failure to comply with the six-month notice requirement of the AEA. Specifically, the District Court noted that "[s]imply because the Loebers failed to properly enforce their rights against the United States, [the third-party defendant] cannot be foreclosed from its claim for contribution." 803 F.Supp. at 1157.

11

Nevertheless, the Court, in its discretion,[4] will permit LNA 15 days from the date of this order to submit an amended complaint.

### D. APPLICABILITY OF *MARATHON*

As both parties recognize, the law governing the primary case has yet to be determined. If the primary case is found to arise under admiralty law, this could directly impact the law applicable to LNA's claims. *See Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229 (5th Cir. 1985). *Marathon* stands for the proposition that a court should, at times, apply admiralty law to a third-party claim if admiralty law governs the primary cause of action. In *Marathon*, the plaintiff's pipeline ruptured when it was struck by a vessel owned by the defendant (Rowan). 761 F.2d at 231. When repairing the damage caused by the defendant, Marathon utilized parts manufactured and sold by HydroTech. *Id*. The HydroTech components were defective, resulting in further damage to the pipeline and requiring further repair work by Marathon. *Id*. Marathon filed suit against Rowan, which in turn initiated a third-party claim for contribution and indemnity against HydroTech. *Id*. at 232. Marathon's claim against *Rowan* sounded in admiralty. Had Marathon sued HydroTech directly and/or Rowan sued HydroTech separately, the applicable law would have been state law. The *Marathon* Court determined that regardless of the law that would be applied in a direct action by Marathon or in a separate indemnification action by Rowan, admiralty law, as the law governing the primary case, should apply to Rowan's third-party claim against HydroTech. *Id*. at 236.

The government argues that *Marathon* would not apply in this case as it only applies to cases involving vicarious liability and LNA is not alleging that the United States is vicariously

---

[4] 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." It is established that this section of the Code is to be liberally construed, so that a party can cure improperly pleaded statements of jurisdiction. *Miller v. Stanmore*, 636 F.2d 986 (5th Cir. 1981); *McGovern v. American Airlines*, 511 F.2d 653 (5th Cir. 1975).

12

liable for any of the damages. (Rec. Doc. 422, p. 12-15). On its face, the *Marathon* case does not appear to limit itself to situations involving vicarious liability. Contrary to the United States' assertion that vicarious liability was central to the Court's decision in that case, the *Marathon* Court only discussed the issue of vicarious liability once. *Marathon*, 761 F.2d at 236. Moreover, the discussion of vicarious liability occurred entirely in the context of whether Rowan could seek full indemnity against HydroTech for the damage caused by its defective parts and *not* in regards to whether maritime law should extend to Rowan's third-party claim. *Id*. In fact, the discussion of vicarious liability occurred only after the Court concluded that maritime law was applicable to Rowan's claims against HydroTech. *Id.*

The Court acknowledges that, insofar as *Marathon* was a case involving vicarious liability, it can be and has been construed as standing for the proposition that admiralty jurisdiction extends to third-party claims only in situations involving vicarious liability and no more. S*ee In the Matter of the Compl. of Merichem Co*., 1997 WL 472509 at *2 (E.D. La. 1997). This Court, however, is disinclined to construe *Marathon* so narrowly. The reasons for extending maritime law to cover the third-party claims set forth in *Marathon* apply with no less force to LNA's claims against the United States. For example, the *Marathon* Court noted that "[l]ogic and consistency point in the direction of using a single doctrine to cover all aspects of these interrelated claims." 761 F.2d at 234. The Court then focused on the degree to which the entire tort occurred in a "maritime place," before ultimately deciding to extend maritime law to cover Rowan's third-party claim. *Id*. at 236.

E. SUBSTANTIVE LAW GOVERNING LNA'S THIRD-PARTY CLAIMS

The Court defers ruling on precisely what law would govern LNA's third-party claims at this time, as the law governing the primary case has yet to be determined. Insofar as the substantive law governing LNA's claims affects subject-matter jurisdiction, LNA has

13

sufficiently established that a claim for indemnity and/or contribution could be cognizable regardless of the substantive law applied. In other words, LNA has demonstrated that it could have a claim for indemnity and/or contribution under the admiralty statutes or under the FTCA. Once the law governing the case is determined, the Court is willing to revisit LNA's claims and determine whether the substantive law applied would in fact recognize LNA's claims for indemnity and/or contribution.

## IV. CONCLUSION

For the preceding reasons,

IT IS ORDERED that the Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) filed by third-party defendant, the Untied States, is **DENIED**.[5]

New Orleans, Louisiana, this 14th day of March, 2007.

Helen G. Berrigan
United States District Judge

---

[5] Upon motion by the parties, the Court will reconsider questions pertaining to the substantive law governing LNA's claims once the law governing the primary case has been determined.