UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES     * | | CIVIL ACTION |
| CONSOLIDATE LITIGATION     * | | |
| * | | NO. 05-4182 |
| * | | SECTION "K" (2) |
| PERTAINS TO: LEVEE & MR-GO     * | | |
| * | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF THE LEVEE & MR-GO PSLCS'
JOINT MOTION TO MODIFY CASE MANAGEMENT ORDER NO. 7
TO DEFER CLASS ACTION CERTIFICATION PROCEEDINGS**

**I.**

**INTRODUCTION**

On November 7, 2007, the Court granted the LEVEE & MRGO PSLC's Joint Motion to Modify Case Management and Scheduling Order No. 4, as Amended, to Defer Class Action Certification Proceedings. (Record Doc. 8928). In that Order, it was expressed that it was "the opinion of the Court that the threshold motions involving [the United States and Washington Group International ("WGI")] defendants must be decided before a cogent decision can be made as to class certification." The Court further opined "that the best use of its resources is to address and decide ...dispositive motions which could have a significant affect on class certification prior to taking up the issue of certification."

At the time, the Court had under submission two motions. In LEVEE, the United States's Motion to Dismiss, premised on § 702c immunity under the Flood Control Act of 1928 (Record Doc.6380), was ultimately granted. In MRGO, WGI's Motion to Dismiss (Record Doc.4140) was ultimately denied. Resultant from the Motion to Modify CMO 4, the Court entered Case Management and Scheduling Order No. 7 on May 1, 2008 to consolidate the MRGO, LEVEE,

and BARGE cases under the Katrina umbrella; and the court established a new schedule setting the class certification hearing for December 9, 2008. (Record Doc. 12935).

Since that time however, more dispositive motions have been filed or are being contemplated. The *Robinson* plaintiffs amended their Complaint to include Counts II and III once the Court determined that the original *Robinson* complaint did not include allegations concerning works at the East Bank Industrial Area of the Industrial Canal. This amendment was intended to incorporate the flood wall failures adjacent to the Lower Ninth Ward of Orleans Parish into the *Robinson* trial. The United States filed a Motion to Dismiss that is currently under submission; in that Motion the United States raised the spector of its discretionary function exception immunity.

Additionally, the much anticipated Motion for Summary Judgment of WGI will be filed on October 9, 2008, with oral argument scheduled for November 13, 2008. Finally, the United States has expressed that it will file its discretionary function exception motion relative to the MRGO channel, along with a renewed Motion for Summary Judgment relative to 702c immunity.

The Court has scheduled *Robinson* to be the first trial in the Katrina umbrella on April 20, 2008. *Robinson* is indicative of many of the pending consolidated cases to the extent that it involves the U.S. Army Corps of Engineers as the primary defendant; a Federal Tort Claims Act case tried to the Court; two claims of immunity (Flood Control Act of 1928 and discretionary function); alleged negligence in the design, construction, operation, dredging, and maintenance of the Mississippi River-Gulf Outlet; discrete areas of flooding of Greater New Orleans (Lower Ninth Ward, New Orleans East, and St. Bernard Parish) allegedly caused by the MR-GO; and damages to residential and business properties caused by the flooding. A resolution of these

issues in the initial *Robinson* trial will "mature the tort" and offer significant guidance to the parties and Court with regard to class action certification, future trials, and overall case management.

The MR-GO PSLC - after months of class action related discovery and briefing - are convinced that many of the contested issues involved with class certification proceedings in the Consolidated Litigation can be made more manageable - and the decision on class action certification more informed - by awaiting the outcome of the trial in *Robinson*. It should be noted that the MR-GO PSLC is not seeking any other modifications to CMO 7. Thus, discovery would proceed as scheduled, and trial dates would remain in effect. The only modification to the existing schedules would be deferral of class action certification determinations until sometime after the Court decides *Robinson* in the spring of 2009.

As shown below, the basis for the MRGO PSLC's efforts to Modify Case Management and Scheduling Order No. 4 to Defer Class Action Certification Proceedings continue to exist. The modification of Case Management and Scheduling Order No. 7 to defer the class certification hearing and proceed with bellwether trials continues to provide the most efficient way to resolve the multiple substantial issues pending in this litigation.

## II.

## ARGUMENT

**A.     *The Rulings in Robinson Will Bear Directly on Many Common Factual and Legal Issues in Other Pending Cases in the Consolidated Litigation***

In *Robinson* Case Management Order No. 1, the Court designated *Robinson* for separate tracking "in the best interest of justice and proper case management . . . ." *Robinson* therefore has its own schedule for discovery, motions, and pre-trial proceedings. The Government's Section 702c immunity Motion for Summary Judgment has been decided, and *Robinson* will be

the first case in the Consolidated Litigation to go to trial on April 20, 2009. Since the *Robinson* case is a Federal Tort Claims Act case solely against the United States, it does not involve a trial by jury. Accordingly, as a judge trial, it is subject to plenary judicial management on the sequence of discovery, pre-trial rulings, and scope of trial. Thus, resolution of *Robinson* can provide critical information for the trial of future cases, whether as class actions or otherwise, without risking mistrials or other complications arising from the strictures of a jury trial.

*Robinson* is an ideal representative case that raises directly the central issues of immunity, liability, and causation and is premised on the same legal theories of damages as the overwhelming bulk of the other pending consolidated cases involving the MR-GO, LEVEE, and the Inner Harbor Navigational Canal. As noted above, the factual and legal issues that will be adjudicated in *Robinson* permeate many of the other pending LEVEE and MRGO cases. In addition to the obvious overlap of factual and legal issues of liability, immunity, causation, and damages outlined above, the Court will necessarily decide in *Robinson* other far-reaching issues such as the availability of immunity defenses when acts by the U.S. Army Corps of Engineers were not authorized by Congress or Congressional mandates.

From the *Robinson* decision will emerge a much clearer picture of the Government's liability, the availability of immunity defenses, the MR-GO's contribution to the flooding, the potential allocation of causes of damages, and other issues that cut across all of the Levee and MR-GO cases.

**B.**   ***Deferring Class Certification Will Promote More Effective Case Management and A More Informed Class Certification Determination***

Deferring class certification proceedings is a sensible and prudent case management approach for numerous reasons - the most significant of which is that future case management and the advisability of a class action in the various pending cases will undoubtedly be influenced

by the resolution of substantial factual and legal issues in *Robinson* that are common to all cases. *Robinson* will necessarily decide contested factual and legal issues that will facilitate efficient and orderly management of the other pending claims in the Consolidated Litigation. And in the event of appellate review, many of the contested liability and damages issues can be adjudicated on the basis of a complete fact record.

In addition, the resolution of factual and legal issues in *Robinson* will surely help resolve some of the contested issues about class certification, including the manageability of aggregate proof of liability and damages, commonality and typicality of causation and damages, and the predominance of class-wide claims. For example, if the Court finds that the U.S. Army Corps of Engineers was negligent with respect to the design, construction, operation, and/or maintenance of the MR-GO, that finding establishes a common legal basis for core liability for all other pending cases involving MR-GO claims against the U.S. Army Corps of Engineers. Similarly, a finding by the Court that the MR-GO caused flooding in certain areas of Orleans and St. Bernard Parishes will help establish appropriate sub-classes. Likewise, the Court's decision to reject the immunity claims by the United States would be a binding determination affecting pending cases with similar facts in the MR-GO cases.

It is therefore certain that rulings in *Robinson* will also assist the parties and this Court in determining the appropriateness of class certification. *Cf. In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 459 (E.D.La.2006) ("Having presided over several bellwether trials in this MDL, the Court need not speculate on the issue of commonality, but rather is confident that common questions exist."). There is precedent in this Circuit for this use of trials like *Robinson* to help clarify the conditions for class certification. *See In re Norplant Contraceptive Products Litigation*, 165 F.3d 374, 376 (5th Cir 1999) ("On August 5, 1996, the court denied the plaintiffs' motion for class certification, deciding that class certification was premature and that bellwether

trials were appropriate to determine whether the class should be certified under rule 23©)(4). The plaintiffs in this case were selected for the first of three bellwether trials."). *See also In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1018 (5th Cir.1997) (considering the use of bellwether trials to resolve mass torts with widely diverse issues); *Manual for Complex Litigation (Fourth)* § 20.132 (2004).

There is another advantage to staying class certification proceedings. Allowing an opportunity for maturing the tort here—by fully adjudicating *Robinson*—would also be beneficial in assisting Plaintiffs' counsel to refine their focus and the Court to make the findings required by Rule 23. *Cf. Castano v. American Tobacco Company*, 84 F.3d 734, 747 (5th Cir. 1996) (advantage of "a prior track record of trials from which the district court can draw the information necessary to make the predominance and superiority analysis required by rule 23"). The Master Consolidated Class Action Complaints in the Levee and MR-GO cases—filed as a result of the Court's understandable desire to make the gargantuan Hurricane Katrina litigation as administratively manageable as possible under the circumstances - are an amalgam of different complaints filed by different lawyers alleging different facts and legal theories. No single lawyer asserted all of the facts and theories contained in the Master Consolidated Class Action Complaints in each category. Nevertheless, both PSLCs felt obligated to include all of the theories, defendants, and class allegations contained in all the pending complaints. With the benefit of rulings on the merits of various factual and legal issues in *Robinson*, the Levee and MR-GO PSLCs will have significant guidance on such currently unanswered questions as whether all the claims asserted in the consolidated actions are amenable to class treatment, whether these claims are manageable in one proceeding, and whether class certification is superior for some of the claims asserted. It is therefore inevitable that the class action motions will be modified in light of the Court's decisions in *Robinson*.

Finally, the trial and rulings in *Robinson* will serve to inform the parties of the relative strengths and weaknesses of their case, potentially assisting settlement possibilities and avoiding the need for years more of litigation, including contentious class action proceedings.

**C.     There Are No Compelling Reasons To Plough Ahead With Class Certification Proceedings**

The reflexive opposition to this practical approach of deferring class certification rulings lacks merit. In effect, those opposing this proposal are insisting that the Court plough ahead with class action proceedings despite the considerable amount of time required of a Court and staff whose finite resources are already strained by this super-complex litigation that daily grows like Topsy. The opponents can point to no salutary reason for not deferring class action matters until *Robinson* is decided

First, the Court has vast discretion to manage this complex litigation—involving hundreds of separately filed civil actions and more than four dozen putative class actions—in a manner that maximizes judicial economy, minimizes unnecessary cost to the parties, and improves the prospects for fair and reasonable decision-making. *See Manual for Complex Litigation (Fourth)* § 22.1 (2004) (urging "innovation and creativity" in managing mass torts cases to achieve Fed. R. Civ. P. 1 goal of the "just, speedy, and inexpensive determination of every action").

Second, the Court will be required to invest substantial time in hearing, deciding, and issuing a ruling on the pending and any future class action motions. (The Court has reserved a substantial number of days for the hearing on class certification in the Levee and MR-GO cases set to begin on December 9, 2008.).   It is highly likely that as discussed above, the Court can make a more informed decision on class certification issues with the benefit of the evidence and rulings in *Robinson*.

<u>Third</u>, the rights and interests of all the parties will not be adversely affected— and, indeed, will likely be better preserved - by this modest modification to CMO 7. Discovery on the merits in all cases will proceed as currently scheduled. Whether or not there is a class action, individual plaintiffs may pursue their claims, and defendants will remain in the case (subject to any rulings on motions to dismiss and for summary judgment that are unaffected by class issues). The time and money that has been expended on class action proceedings will not have been wasted since the pending motions are being deferred and may be renewed at the appropriate time. If anything, the issues will be more refined.

### III.

### CONCLUSION

For the foregoing reasons, the Levee and MR-GO PSLCs respectfully request that the Court grant the LEVEE & MRGO PSLCs' Joint Motion to Modify Case Management Order No. 7 to Defer Class Action Certification Proceedings.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

/s/ Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
The Law Offices of Joseph M. Bruno,
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**

  /s/ James Parkerson Roy
JAMES PARKERSON ROY (La. Bar # 11511)
MR-GO PSLC LIAISON COUNSEL
Domengeaux Wright Roy & Edwards LLC
P.O.Box 3668
Lafayette, LA. 70502
Telephone: (337) 593-4190 or (337) 233-3033
Facsimile: (337) 233-2796
Email: jimr@wrightroy.com

For

**MR-GO PLAINTIFFS SUB-GROUP LITIGATION COMMITTEE**
Jonathan Andry
Clay Mitchell
Pierce O'Donnell
James Parkerson Roy

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**

  /s/Gerald E. Meunier
GERALD E. MEUNIER (La. Bar #9471)
LEVEE PSLC LIAISON COUNSEL
Gainsburgh, Benjamin, David, Meunier & Warshauer, L.L.C.
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Telephone: (504) 522-2304
Facsimile: (504) 528-9973
Email: gmeunier@gainsben.com

For

**LEVEE PLAINTIFFS' SUB-GROUP LITIGATION COMMITTEE**
Gerald E. Meunier
Daniel E. Becnel, Jr.
Joseph M. Bruno
D. Blayne Honeycutt
Hugh P. Lambert
Darlene Jacobs
Walter Dumas

**CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 23rd of September, 2008.

                                                              /s/ Joseph M. Bruno