UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE KATRINA CANAL BREACHES      CIVIL ACTION
CONSOLIDATED LITIGATION

NO. 05-4182

PERTAINS TO:      SECTION "K"(2)
Robinson C.A. No. 06-2268

## ORDER AND REASONS

Before the Court is the United States of America's Motion to Dismiss Counts Two and Three of the Amended Complaint (Doc. 13653) filed in the *Robinson* matter.  The original *Robinson* complaint seeks damages allegedly caused by the design, construction, operation and maintenance of the Mississippi River Gulf Outlet ("MRGO") in the wake of Hurricane Katrina as detailed and discussed in the Court's ruling of May 2, 2008 (Doc. 12946).[1]   In the First Amended Complaint (Doc. 13529), plaintiffs added Count 2, denominated as one in "Strict Liability" which alleges that the Corps is liable pursuant to La. Civ. Code 2317 based on its "garde" of the MRGO.   Count 3 alleges negligent supervision and vicarious liability for activities of a third-party contractor, the Washington International Group, Inc. ("WGI") undertaken in the East Bank Industrial Area ("EBIA") adjacent to the Inner Harbor Navigational Chanel (" IHNC") or the Industrial Canal.  This motion seeks to dismiss both counts pursuant to Fed. R. 12(b)(1) and (6).

---

[1] The factual background concerning the MRGO is discussed at length in that opinion and is incorporated herein.  *In re Katrina Canal Breaches Cons. Litig. (Robinson)*, 2008 WL 1989672 (E.D.La. May 2, 2008).

**Background**

On August 29, 2005, Hurricane Katrina lashed the Louisiana coast and cause catastrophic damage in the Greater New Orleans area.  Much of the damage was caused by the alleged failure of the levees surrounding New Orleans and storm surge allegedly exacerbated by the Mississippi River-Gulf Outlet ("MRGO").  The *Robinson* suit was filed on April 25, 2006, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* against the United States of America and the United States Army Corps of Engineers (referred to collectively as "the United States" or "the Corps") by six named plaintiffs[2] living in New Orleans East, St. Bernard Parish, and the Lower Ninth Ward.  In the initial complaint, these plaintiffs maintained that the negligent design, construction, maintenance and operation of the Mississippi River Gulf Outlet ("MRGO") caused the catastrophic flooding which damaged their property making the United States liable for their damages.

As required by 28 U.S.C. § 2675(a) for a suit to be brought pursuant to the FTCA claims, claims denominated as a "Notice of Class Claim Pursuant to the Federal Tort Claims Act" were filed by plaintiffs. (hereinafter "the Notice)  (Doc. 13653 Exhibit A). [3] In the first paragraph of the Notice, plaintiffs opine that "[a]ll of the damage complained of herein were caused as a direct and proximate result of negligence of the United States Army Corps of Engineers in the design, construction, and maintenance of the Mississippi River Gulf Outlet navigational/shipping structure located in St. Bernard and Orleans Parishes in Louisiana."

---

[2]Norman Robinson, Kent Lattimore, Lattimore & Associates, Tanya Smith, Anthony Franz, Jr. and Lucille Franz are the named plaintiffs.

[3]Apparently, counsel for the *Robinson* plaintiffs contemplated filing a class action; however, this approach was jettisoned as this suit is not brought as a class action.  In addition, a traditional "Form 95" which is provided by the United States to make an FTCA claim was attached to the Notice for each plaintiff.

In the section describing the "Representative Claimants," the focus of each claim concerns the effects on the MRGO with respect to the flooding and consequential damages each experienced. The only references made to the Industrial Canal are (1) in the class description which states:

> "[t]he geographic area in which the Class of Claimants' damage occurred, is bordered on the south and southwest by the Mississippi River, on the west by *the Inner Harbor Navigation Canal (IHNC)* and the Industrial Canal. . . All of the individuals/entities residing in this area experience extensive property damage, business loss and related mental anguish. . . . "

(Doc. 13653, Exhibit A at 6) (emphasis added), and (2) in the "Statement of the Case" contained in the Notice which states:

> The MRGO originates in Breton Sound and runs in a northwesterly direction to the confluence with it and the Gulf Intercoastal Waterway, where the two bodies of water merge and *flow into the Inner Harbor Navigational Canal/Industrial Canal*. . . . [T]he USACE had negligently maintained the MRGO which has allowed the area to become more than 2000 feet wide which *allows it to carry a tidal surge into the geographic area occupied by the class of claimants*. . . .

(Doc. 13653, Exhibit A. at 6-7). On May 18, 2006, following the filing of the lawsuit, the Corps denied plaintiffs' administrative claims. (Doc. 13653, Exh. "B").

Two years later, in May of 2008, the Court was made aware of the intention of plaintiffs to raise an issue in *Robinson* which they contended was already encompassed in the initial complaint. That claim centers on certain work done by WGI which had been raised in the MRGO class action cases but had not been specifically addressed in the *Robinson* matter. Allegedly, the United States Army Corps of Engineers ("the Corps") had contracted with WGI to clear abandoned industrial facilities and debris from the EBIA in order for the Corps to replace the lock on the IHNC or the Industrial Canal. Plaintiffs contend that the two floodwall failures that occurred on that side of the Industrial Canal are located where certain excavations

3

took place which were deeper than the level to which the floodwalls were in place.  Plaintiffs sought to litigate the liability of the Corps for the alleged defalcations arising from the performance of this contract in the *Robinson* trial.

Plaintiffs filed a Motion for Leave to File First Amended Complaint which was set for hearing on May 14, 2008; however, the motion was withdrawn.  At a status conference held on June 3, 2008, plaintiffs maintained that there was no need for amendment to include these allegations in the matters to be tried.  The Court then independently reviewed the *Robinson* Complaint under Fed. R. Civ. 8(a)(2), and found, giving the broadest reading to the Complaint possible, that the issue of liability for any damages arising from the EBIA was not raised in the initial Complaint. (Doc. 13438 at 2).  The Court then ordered an amended complaint to be filed.

It was in this context that Counts 2 and 3 were added to the *Robinson* complaint.  As noted, Count 2 concerns allegations based on La. Civ. Code art. 2317.  In Count 3, plaintiffs contend that the United States was negligent "in overseeing and supervising the work of [its] third party contractor" WGI, and consequently failed to prevent WGI, in the course of performing work at the EBIA, from committing negligence that resulted in the flooding of New Orleans East, the Lower Ninth Ward, and St. Bernard Parish.  ¶¶ 115-121.  In addition, in the Amended Complaint, there are allegations of direct Corps negligence which do not encompass a failure to supervise WGI.

The United States filed the subject motion on June 26, 2008, which the Court will now address.

**Standard of Review**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provide a method by which a party may challenge the subject matter jurisdiction of the district court to hear a case. The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Ramming v. United States,* 281 F.3d 158 (5th Cir. 2001). As the Fifth Circuit has stated:

> When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (per curium). This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursing a claim in a court that does have jurisdiction.

*Id.* A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998).

Rule 12(b)(6) of the Federal Rule of Civil Procedure provides that in response "to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim" the pleader may raise by motion the defense of "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)(quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "[T]he plaintiff must plead 'enough facts to state a claim to relief **that is plausible on its face**" in order to survive a Rule 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, --- U.S. ----,

5

127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added).[4] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965 (quotation marks, citations, and footnote omitted). The Court will first address the Motion to Dismiss as it pertains to Count 2.

**Count 2**

Under the Federal Tort Claim Act, 28 U.S.C. § 2680(a), ("FTCA"), the defendant maintains that the United States may not be subjected to strict liability. *See Dalehite v. United States*, 346 U.S. 15, 44-45 (1953) (under FTCA there can be no "liability without fault" ); *Laird v. Nelms*, 406 U.S. 797, 799 (1972) ("Regardless of state law characterization, the FTCA precludes liability if there has been no negligence or other form of 'misfeasance or nonfeasance'); *Tindall v. United States*, 901 F.2d 53, 55 n. 3 (5th Cir. 1990); *Lively v. United States*, 870 F.2d 296 (5th Cir. 1989) (Fifth Circuit rejected Louisiana plaintiffs' attempt to impose strict liability for ultra-hazardous activity).

---

[4] This Court has previously stated that a district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Blackburn v. Marshall,* 42 F.3d 925, 931 (5th Cir.1995). The Supreme Court abrogated the often cited "no set of facts" language in *Conley* commenting that the case has been frequently mischaracterized as setting forth a minimum pleading standard when it was simply "describ[ing] the breadth of opportunity to prove what an adequate complaint claims." *Twombly*, 127 S.Ct. at 1968. In other words, the *Twombly* court reads *Conley* as standing for the proposition that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* (citing *Sanjuan v. American Bd. of Psychiatry and Neurology*, 40 F.3d 247, 251 (7th Cir. 1994)(once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint"). Thus, rejecting the *Conley* "no set of facts" test, the *Twombly* court employs a plausibility standard for scrutinizing the sufficiency of pleadings in the context of Rule 12(b)(6) motion.

Plaintiffs respond that while article 2317 historically provided for "strict liability," by virtue of the 1996 amendments to the Code, the article creates in reality a "reasonable care standard" thus imposing a requirement of fault and eliminating "strict liability" turning it into a negligence claim. *Burmaster v. Plaquemines Parish Government*, 982 So.2d 795, 799 n. 1, La. 2008). The salient articles provide:

> **Art. 2317 Acts of others and of thing in custody**
>
> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of things which we have in our custody. This, however, is to be understood with the following modifications.
>
> **Art. 2317.1 Damage caused by ruin, vice or defect in things**
> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. Civ. Code arts. 2317 and 2317.1. Thus, plaintiffs maintain that the motion has no merit in this regard.

The Court finds that plaintiffs' argument correctly states the status of the law of the State of Louisiana, and while the count might be denominated as one in strict liability, plaintiffs in essence have invoked another theory of negligence. Article 2317 and 2317.1 require a finding of fault, and, therefore, can be invoked in the context of an FTCA claims. *Burmaster v. Plaquemines Parish Government*, 982 So.2d 795, 799 n. 1, La. 2008). Accordingly, the Court will deny the motion in this regard except to the extent that the words "strict liability" contained therein shall be stricken. The Court will now turn to Count 3.

**Count 3**

The United States maintains that Count 3 is barred for three reasons. To begin, they contend that plaintiffs never presented a claim based on the alleged EBIA defalcations and thus did not satisfy the administrative claim requirement 28 U.S.C. § 2675(a). *Portillo v. United States* (W.D. Tex. 1993), *aff'd* 1994 WL 395174 (5th Cir. 1994). In addition, the United States maintains that the claim is barred by the statute of limitations 28 U.S.C. §2401(b) as the EBIA claims was not presented in writing within two years after such claim accrues. *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001); *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985). Finally, the United States maintains that the claim is barred by the discretionary function exception 28 U.S.C. § 2680(a).

Plaintiffs respond contending that the claim filed was sufficient to trigger the Corps' responsibility to investigate the EBIA claim. They maintain that they are not required to articulate every conceivable basis of liability–whether based on fact or legal theory. *Rise v. United States,* 630 F.2d 1068, 1071 (5th Cir. 1980). Indeed, they argue that a government agency is mandated to investigate not only the theories of liability detailed in the Form 95, but also any other related theories of liability not expressly mentioned. *Adams v. United States*, 615 F.2d 284, 298 (5th Cir. 1980), *clarified* 622 F.2d 197 (1980). They also argue that the claim as filed, because it included the above-mentioned descriptions of the Industrial Canal area, was sufficient to satisfy the notice requirement. In addition, they maintain that the EBIA claim relates back pursuant to Fed. R. Civ. P. 15, as that rule is to be liberally construed to permit amendments to pleadings. *William v. United States*, 405 F.2d 234, 236 (5th Cir. 1968). Finally, as to the discretionary function exception, they maintain that the Corps exercised sufficient control over

the project to defeat the exception. In addition, plaintiffs contend that by virtue of the Corps violating its own guidelines the exception is inapplicable.

### Analysis

### The Administrative Claim Did Not Provide Adequate Notice of the EBIA Claim

Filing an administrative claim to the agency responsible for the alleged injury is a jurisdictional prerequisite to filing suit under the FTCA. 28 U.S.C. § 2675(a); *Cook v. United States*, 978 F.2d 164, 166 (5th Cir. 1992). "A claimant gives proper notice within the meaning of § 2675(a) only when the agency obtains sufficient written information to begin investigating and the claimant places a value on his claim." *Id. citing Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1441, *amended on other grounds*, 905 F.2d 61 (5th Cir. 1990). Plaintiffs contend they have satisfied this requirement in that all that is required is that they have made a "claim" for flooding and thus the Government is put on notice to inquire into all possible causes. The statute states:

> **(a)** An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim

28 U.S.C.A. § 2675.

In *Portillo v. United States*, 816 F. Supp. 444, 446 (W.D. Tex. 1993) ,*aff'd* 1994 WL 395174, the court found that facts and theories of liability which were never presented to the agency as part of an administrative claim cannot form the basis for a complaint under the Federal Tort Claims act. In that case, the Form 95 centered on medical malpractice arising from the Beaumont nursing staff's alleged negligence in failing to monitor a plaintiff adequately following his surgery. Their delay in his catheterization allegedly caused a chronic urinary tract infection. Plaintiff sought to amend his complaint to allege negligent administration of spinal anesthesia resulting in an injury to his lower spine and assorted other problems. The Court dismissed the anesthesia claim and the Fifth Circuit affirmed:

> In his administrative claim, Portillo apprised the government that he sought compensation for urological injuries allegedly suffered as a result of Beaumont's failure to monitor him after the ankle surgery. Nowhere on the claim form, and not until he sought leave of court to amend his complaint approximately eleven months after instituting suit, did Portillo even allude to the new contention that Beaumont personnel negligently administered his anesthesia resulting in injuries to his lower spine and the onset of diabetes. Because the administrative claim did not give the government notice of any facts that would have led it to investigate the circumstances surrounding the administration of Portillo's anesthesia, the exhaustion requirement was not satisfied, leaving the district court without jurisdiction to address the claim; its dismissal was not error. *See Bush v. United States,* 703 F.2d 491, 494 (11th Cir.1983) (holding that an administrative claim must specifically delineate facts that put the government on notice of each potential basis for relief).

*Id. at* *4 ( 5th Cir. 1994). This case is highly analogous to the instant one.

The Notice of a Class Claim that was filed on behalf of plaintiffs did not include sufficient facts to place the Corps on notice that these particular plaintiffs[5] sought recovery for the alleged defalcations that occurred at the EBIA. The *Robinson* claim as filed with the Corps

---

[5] In reality only Lucille Franz and Anthony Franz who were located in the Lower Ninth Ward would have been impacted by the failure of the IHNC floodwall.

10

focuses on the alleged harm caused and defalcations surrounding MRGO. There is simply no indication that the EBIA, and the work of WGI would be the subject of this lawsuit. Furthermore, with respect to the individual claimant's allegations in the Form 95s included in the Notice, there is not a single mention of WGI, the failure of the Industrial Canal floodwall, the EBIA project or the like. All of the claims are in terms of the detriment caused by the MRGO with flood waters emanating from the MRGO. In addition, in the statement of the case, the only mention of the Inner Harbor Navigational Canal/Industrial Canal is to define the geographical boundaries of the class which is not being pursued in this action or to explain where the terminus of the MRGO occurs.

Just as the plaintiff in *Portillo* sought compensation for damages caused by the negligence of one agency based on two distinct and different actions, so it is with the instant plaintiffs. While it is beyond cavil that flooding caused plaintiffs' damages, there is a distinct difference between lodging a claim based on the defalcations concerning a navigable waterway–the MRGO and the storm surge it allegedly caused–and a lock replacement project that concerned different contracts and a different waterway–the Industrial Canal. *See Cook v. United States*, 978 F.2d 164 (5th Cir. 1992) (failure to provide *specific* information about claim in timely manner so as to allow investigation bars suit); *Dynamic Image Technologies v. United States*, 221 F.3d 34 (1st Cir. 2000) (where claim did not contain "hint" about alleged false arrest, amended claim seeking to add same exceeded scope of the administrative was properly dismissed).

Plaintiffs argue that considering the numbers of claims that have been filed concerning damages caused by the failure of the Industrial Canal floodwall, the agency has received

11

sufficient notice for the claim to be brought by them.  The Court is unaware and has not been presented with any case that stands for the proposition that because others have put an agency on notice for damages arising from a common occurrence (flooding), but invoking a different factual basis (in this instance the flooding of the Lower Ninth Ward caused by the failures of the IHNC floodwall), such other notice would vicariously satisfy the notice requirement of § 2675(a) as to these particular plaintiffs.  Nor, is this Court prepared to do so.  Thus, the Court finds that the United States' motion has merit in this regard.

### Count Three is Barred by the Statute of Limitations

Even if plaintiffs' Notice was sufficient to satisfy § 2675(a)'s requirements, the Court finds that the claim would be time barred.  The FTCA provides that a tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the . . . final denial of the claim by the agency to which it was presented."  28 U.S.C. §2401(b).  This statute requires a claimant to file an administrative claim within two years of the accrual and file suit within six months of its denial.  *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001).   This suit was filed timely as to the MRGO allegations; however, this amendment was filed almost two years after the initial complaint was filed on April 25, 2006, and the administrative claim was denied on May 18, 2006.

Even if the Court were to find the Notice sufficient, the suit cannot "relate back" under Fed. R. Civ. P. 15(c) which provides that it does so only if the subsequently filed claim "arose

out of the conduct, transaction, or occurrence" as set forth in the original pleading.  As noted by the commentators:

> Of course, amendments that go beyond the mere correction or factual modification of the original pleading and significantly alter the claim or defense alleged in that pleading are treated more cautiously by the courts in applying the relation back doctrine.  Amendments of this type often have a substantial impact on the merits of the case and may require the opposing part to prepare the case a second time.  As is true in a number of other contexts, such as compulsory counterclaims, cross-claims, and certain third-party claims, the search under Rule 15(c) is for a common core of operative facts in the two pleadings.

6A Wright & Miller, *Federal Practice and Procedure* § 1497 at 84.

Thus, when new or distinct conduct, transactions or occurrences are alleged as grounds for recovery, there is no relation back, and recovery under the amended complaint is barred by limitations if it was untimely filed.  *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985).  In *Holmes,* a union employee of Greyhound was discharged on December 29, 1981, for driving a bus while having ingested alcohol within eight hours.  Grievance procedures were followed under the union rules with the arbitrator upholding the discharge on February 4, 1983.  On June 9, 1983, Holmes filed an action in state court seeking to set aside the arbitration award "' because the arbitrators exceeded their powers, refused to hear evidence pertinent and material to the controversy, rendered an award which is arbitrary and capricious and deprived plaintiff substantial rights by fraud or undue means.'" *Id.* at 1564.  Thus, the gravamen of the suit was with respect to the defalcations of the arbitrators.  Greyhound removed the suit on June 29, 1983.

On December 9, 1983, Holmes sought to join the Union as a defendant.  The amended complaint did not allege any defect in the arbitration or wrongdoing by the arbitrators but alleged that Greyhound had wrongfully discharged him and the Union breached its duty of fair

13

representation in the grievance procedures. Greyhound and the Union moved to dismiss these charges which were barred by the six-month limitation period applicable thereto.

The district court dismissed the amended complaint finding that "the amended complaint did not relate back to the filing of the original complaint pursuant to Fed. R. Civ. P. 15(c) because the breach of the duty of fair representation and wrongful discharge claims did not arise out of the original complaint which was based solely on a charge of misconduct of the arbitrators." *Id.* at 1565.

The Fifth Circuit stated:

> In determining if an amended complaint relates back, this Court regards as "critical" whether the opposing party was put on notice regarding the claim raised therein. *Woods Exploration & Producing Co. v. Aluminum Co. of America,* 438 F.2d 1286, 1299 (5th Cir.1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972) (quoting *Williams v. United States,* 405 F.2d 234, 236 (5th Cir.1968)). Holmes urges that he should prevail because this Court applies Rule 15(c) liberally rather than restrictively, *Woods* at 1299. But liberal application cannot cure a failure of the amended complaint to meet the requirement of the rule. The rule provides that the new claim must have arisen "out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The claim against the Union alleged in Holmes' amended complaint is based on entirely different facts, transactions, and occurrences.
>
> The original complaint alleged that the arbitration award should be set aside because of the arbitrators' improper conduct. This claim was abandoned completely in the amended complaint. The amended complaint focused entirely upon allegations that the Union breached its duty of fair representation in several respects. Moreover, these events allegedly occurred prior to the date of the arbitration award, and most of them allegedly occurred around the date Holmes was discharged. *See Barnes v. Callaghan & Co.,* 559 F.2d 1102, 1105 (7th Cir.1977); *Rosenberg v. Martin,* 478 F.2d 520, 526 (2d Cir.), *cert. denied,* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Griggs v. Farmer, supra.*
>
> To recover under the original complaint, Holmes would have had to prove bias, fraud, or prejudice of the arbitrators. *Int'l Union of Electrical, Radio and Machine Workers v. Ingram Mfg. Co.,* 715 F.2d 886, 890 (5th Cir.1983), *cert. denied,* 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984). In contrast, under the theory advanced in the amended complaint, Holmes would have to prove that the Union engaged in arbitrary or capricious conduct, or acted or failed to act in

> bad faith. *See Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976). That is, Holmes would have to prove that the Union breached its duty of fair representation and by this means removed the arbitration award as a bar. *See Int'l Union v. Ingram,* 715 F.2d at 888 (noting the difference between a suit to set aside an arbitration award and a hybrid § 301 duty of fair representation action). The district court did not abuse its discretion in holding that the amended complaint failed to relate back to the date of the filing of the original complaint.

*Id.*  Thus, the Fifth Circuit does not find a complaint relates back where the untimely claim arises from conduct different than that found in the original complaint. *See In re Coastal Plains*, 179 F.3d 197, 216 (5th Cir. 1999) (finding that a tortious interference claim did not arise from the same conduct as a failure to return inventory claim); *McGregor v. La. State Univ. Bd. of Supervisors,* 3 F.3d 850, 864 (5th Cir. 1993) (finding that amendment did not relate back because it alleged "new and distinct conduct");  *3 Eagles Aviation, Inc. v. Rousseau*, 2005 WL 236201 (E.D. La. Jan. 28, 2005) (Vance, J.) (the same pattern of conduct and some of the same facts need to be present for the complaint to relate back).

This Court has already determined that the issue of liability for any damages arising from the EBIA was not raised in the initial Complaint. (Doc. 13438-3 at 2).   This determination was based on the fact that the initial complaint focused entirely on allegations of negligence by the United States in the way it designed, constructed, and maintained the MRGO.  The Court concurs in the Government's  argument  that the EBIA claim is wholly distinct and separate from their MRGO claims in several respects:

1. EBIA involves conduct pertinent to a different waterway from the one at issue in the original complaint;

2. EBIA claim involves a discrete period shortly before Hurricane Katrina-2000 to 2005.  The original complaint "concerns conduct that for the most part occurred in the twentieth century; " and

      3.      EBIA concerns the manner the United State supervised a contractor. "Although the MRGO Project, like the Lock Replacement Project, was largely prosecuted by contractors, the original complaint did not challenge the manner in which the United States supervised contractors, but instead focused on decisions by the United States regarding how the project would be prosecuted." Doc. 13653-2 at 12.

Thus, as in *Holmes* where the plaintiff was fired, here plaintiffs here were flooded. But in *Holmes* plaintiff went from arguing that the arbitration process was faulty to contending that the Union breached its duty as concerned the entire activity. Here, while it is the same actor involved–the Corps–the MRGO claim spans 50 years of activity on one waterway, whereas the EBIA claim concerns the failure of the Corps to properly implement another project on a different waterway. It is a different focus altogether. Plaintiffs have added allegations concerning a different project, focusing on a different technique or defalcation occurring at a different time. Thus, the Court finds that the claim contained in Count 2 is time barred as well.

Considering the foregoing, the Court finds no need to address the applicability of the discretionary function exception at this time. Accordingly,

**IT IS ORDERED** that the United States of America's Motion to Dismiss Counts Two and Three of the Amended Complaint (Doc. 13653) is **DENIED** with respect to Count 2 and **GRANTED** with respect to Count 3.

New Orleans, Louisiana, this  29th  day of September, 2008.

                                            STANWOOD R. DUVAL, JR.
                                UNITED STATES DISTRICT COURT JUDGE