UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL  BREACHES CONSOLIDATED LITIGATION | * * * * | CIVIL ACTION  NO. 05-4182  and consolidated cases |
| PERTAINS TO: BARGE | * * * | SECTION "K" (2)  JUDGE: DUVAL |
| *Parfait Family v. USA*       07-3500 | * | MAG: WILKINSON |

*******************************************************************************

### LAKE BORGNE BASIN LEVEE DISTRICT'S
### REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

On June 24, 2008, Defendant Lafarge North America, Inc. ("LNA"), filed a Third Party Complaint against the Lake Borgne Basin Levee District ("LBLD") and others for contribution and indemnity. On August 12, 2008, LBLD filed a Rule 12(b)(6) Motion to Dismiss LNA's claims on the basis that LNA is not entitled to contribution and indemnity in this case, and LNA responded with an Opposition on September 23, 2008. The LBLD now respectfully submits this Reply Memorandum in further support of its Motion to Dismiss. The LBLD asserts that LNA's claims for contribution and indemnity sound only in Louisiana substantive law, and the Court must therefore dismiss those claims because Louisiana law allows for neither contribution nor indemnity. In the alternative, LBLD asserts that LNA has failed to plead properly its third-party claim against the LBLD, so the claim must be dismissed.

### I. The General Maritime Law Does Not Apply to LNA's Claim Against The LBLD.

In its Motion to Dismiss, LBLD argued that Louisiana law would apply to LNA's claim against LBLD. In its Opposition, LNA asserted that under the ruling in *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229 (5th Cir. 1985), and its progeny, the body of law

that governs the claim brought by Plaintiffs against LNA would also govern the suit brought by LNA against LBLD. Doc. 15216, p. 7. Because maritime law allegedly governs Plaintiffs' claim, LNA argued that under *Marathon*, maritime law governs its claim against LBLD, too. *Id*.

Despite LNA's arguments to the contrary, *Marathon* and similar decisions <u>do not</u> apply in this case. This is so because a crucial element of *Marathon* and its progeny – an element that is not present in the *Parfait* case – is that the plaintiff(s) had a colorable claim against both the main defendant <u>and</u> the third-party defendant. That fact gives rise to a potential conflict when the law that applies to the principal demand differs from the law that applies to the third-party claim. *See Marathon*, 761 F.2d at 235. *Marathon* and its progeny resolve that conflict by applying the law of the principal demand to the law of the third-party claim. *See id*. Yet, in this case, Plaintiffs <u>have not</u> asserted a claim against the third-party defendant, LBLD; thus, there is no conflict and any guidance *Marathon* may have on how to resolve the conflict is inapplicable.

In *Marathon*, defendant Rowan ruptured plaintiff Marathon's pipeline when, during the transport of Rowan's drilling vessel, a leg of the vessel clipped the pipeline and caused a breach in the pipe. *Id*. at 231. When Marathon commenced repairs, it used equipment that a company named HydroTech manufactured and sold to Marathon prior to the rupture. *Id*. However, the HydroTech equipment failed to fix the pipe's opening, and Marathon was forced to undertake additional repairs to patch the line. *Id*. Eventually, Marathon sued Rowan, but not HydroTech. *Id*. Rowan filed a third-party claim against HydroTech for contribution and indemnity. *Id*. at 231-32.[1] The district court dismissed Rowan's third-party claim, and Rowan appealed. *Id*. at 232.

---

[1] Though Marathon did not sue HydroTech directly, Marathon never released HydroTech from liability. *Id*. at 232. In fact, as part of Marathon's settlement of its primary claim against Rowan, Marathon assigned its rights against HydroTech to Rowan. *Id*. HydroTech's potential liability to Marathon, therefore, was still viable when the court recognized the conflict between the law governing the principal and third-party claims. This is wholly distinguishable from the present case, wherein the *Parfait* Plaintiffs have never asserted any claim against LBLD.

2

On appeal, the U.S. Fifth Circuit Court of Appeals noted that Marathon had a claim against both Rowan and HydroTech for Marathon's damages. *See id.* at 235. However, the body of law that would govern Marathon's claim against Rowan (general maritime law) was different from the body that would govern Marathon's claim against HydroTech (Louisiana substantive law). *Id.* Thus, because Marathon had a potential claim against both the defendant and the third-party defendant, and because two different bodies of law would govern those claims, the court was faced with a choice of which law applied to Rowan's third-party claim against HydroTech. *See id. Marathon* then decided that maritime law applied to the third-party claim, but again only after recognizing that there was a conflict between the laws that would govern the principal and third-party demands. *See id.* ("<u>This</u>" – referring to the conflict – "requires us to choose the law governing the third-party action . . .") (emphasis added).

A Louisiana appellate court decision decided years after *Marathon*, *Gibbs v. Falcon Drilling Co.*, expanded on the Fifth Circuit's analysis. *Gibbs* explained that the existence of the plaintiff's claims against both the main defendant and third-party defendant in *Marathon* created a situation in which there was a conflict of law that the Fifth Circuit had to resolve. 713 So.2d 669, 672 (La. App. 3 Cir. 1998). "Only then," after determining the bodies of law that would govern the principal demand and third-party claim, was the *Marathon* court within its rights to choose the body of law applicable to the third-party action. *Id.*[2] *Gibbs* highlights the importance of the plaintiff's potential claim against the third-party defendant because without that claim, the court would have no conflict to resolve and no occasion to apply the law of the principal demand to the third-party claim. It comes as no surprise that each case cited by LNA in support of its

---

[2] Of critical importance in *Gibbs* is the fact that the plaintiff in that case also had a claim against the contribution and indemnity defendant. *Id.* at 671. In fact, the contribution and indemnity claim in that case was a cross-claim because the plaintiff had already brought suit against the defendant who allegedly owed contribution and indemnity to the other defendant. *Id.*

3

argument that the principal claim's law will govern the third-party claim involves a plaintiff with an actionable claim against both the main and third-party defendant. *See Tri-State Oil Tool Indus., Inc. v. Delta Marine Drill Co.*, 410 F.2d 178 (5th Cir. 1969); *In re Dearborn Marine Serv.*, 499 F.2d 263 (5th Cir. 1974); *Loeber v. United States*, 803 F.Supp. 1154 (E.D. La. 1992).

In contrast, when a plaintiff has no claim against the third-party defendant, the result is the complete opposite from *Marathon*. In *Joiner v. Diamond M Drilling Co.*, a seaman was working aboard a drilling vessel. 688 F.2d 256, 258 (5th Cir. 1982). As he was cleaning a tank aboard the drilling vessel, he was injured and sought treatment from his own physician, Dr. Fresh. *Id*. Eventually, the seaman succumbed to his injuries and months later his estate brought suit against only the vessel owner and tank manufacturer. *Id*. at 259. The owner and manufacturer then filed third-party complaints for contribution and indemnity against Dr. Fresh for his malpractice in treating the seaman. *Id*. On appeal, the owner and manufacturer argued that their claim against Dr. Fresh arose under maritime law. *Id*. at 260. The Louisiana appellate court rejected that argument, holding that state law governed the third-party claim. *Id*. at 261. *See also Gauthier v. Crosby Marine Serv., Inc.*, 688 F.2d 256 (5th Cir. 1985) (holding that Louisiana law applied to the third-party claim for contribution and indemnity); *Ducre v. Executive Officers of Halter Marine, Inc.*, 752 F.2d 976 (5th Cir. 1985) (same).

The ruling of *Joiner*, rather than that of *Marathon* and its progeny, is applicable to the instant lawsuit. Here, Plaintiffs have no claim against LBLD, evidenced by the fact that they did not name LBLD as a defendant in any complaint. Surely, had they any potential claim against LBLD Plaintiffs would have named LBLD in one of their complaints. Yet, Plaintiffs have not done so. Without such a claim, there is no conflict between the law that would govern the principal demand and third-party complaint. Without the conflict, this Honorable Court is not

4

bound by the *Marathon* decision on how to resolve such a conflict. As seen in *Joiner*, the law of the principal demand is immaterial when there is no conflict in the first place, and Louisiana substantive law will therefore apply. Louisiana does not allow for tort contribution or indemnity, so LNA's claims must be dismissed.

## II. Louisiana Choice-of-Law Principles Do Not Dictate The Application Of Maritime Law.

In its Opposition, LNA correctly argued that even if *Marathon* and its progeny would not direct the application of maritime law to its third-party claim against LBLD, then the Court must look to Louisiana's choice-of-law rules to determine which law should apply. Doc. 15216, p. 8. However, LNA was incorrect to assert that the application of those choice-of-law rules would still result in the application of general maritime law.

LNA has argued that Louisiana appellate authority "expressly" adopts the choice-of-law principle that contribution and indemnity claims are governed by the body of law that applies to the primary claim, even if that results in the application of maritime law instead of Louisiana tort law. The only case it cited in support of that "express" argument was *Gibbs v. Falcon Drilling Co.*, a Louisiana appellate court case involving a suit brought by an injured Jones Act seaman against his employer and a physical therapist that allegedly aggravated the seaman's workplace injury. *See* 713 So.2d 669, 671 (La. App. 3 Cir. 1998). In addition to that claim, the employer cross-claimed against the physical therapist for contribution and indemnity. *Id*. The court, relying solely upon the ruling in *Marathon*, held that the maritime law governing the primary claim applied to the incidental demand for contribution and indemnity, as well. *See id*. at 672.

Evidently, LNA believes that *Gibbs* stands for the proposition that Louisiana's choice-of-law rules dictate the application of maritime law to its claim for contribution and indemnity.

5

However, *Gibbs*' actual holding is quite distinguishable from this case, wherein Plaintiffs have no direct claim against the third-party defendant. As such, there is again no conflict between what law could apply to the principal and third-party claims, and so this Court has no reason to apply the principal claim's law to the third-party suit. Furthermore, though a state court decision, *Gibbs* ignored the specific Louisiana choice-of-law rules promulgated in the Louisiana Civil Code. The U.S. Fifth Circuit has held, however, that a federal court sitting in diversity must apply the choice-of-law rules of the forum state. *Int'l Interests, L.P. v. Hardy*, 448 F.3d 303 (5th Cir. 2006). Accordingly, this Honorable Court must apply Louisiana's choice-of-law rules to the question of which law applies to LNA's claim for contribution and indemnity.

Louisiana's choice-of-law rules are embodied in Book IV of the Civil Code. Louisiana Civil Code art. 3515 (2007), the general rule, states that an issue having contacts with states other than Louisiana is governed by the law of the state whose policies are most seriously impaired by the failure of the court to apply that state's law. As it pertains to the rule of conflicts on torts, the law employs the same type of "serious impairment" test. LA. CIV. CODE art. 3542 (2007). In addition, the torts article states that a court must consider the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual resident, or place of business of the parties, and the state in which the relationship between the parties is centered; the general policies of article 3515; and the policies of deterring wrongful conduct and of repairing the consequences of injurious acts as factors when deciding which state's law to apply. *Id*. The U.S. Fifth Circuit expanded on the factors to consider, which include: "(1) upholding the justified expectations of the parties, (2) minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state, (3) deterring wrongful conduct, and (4) repairing the consequences of

injurious acts." *Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 487 (5th Cir. 2001). Additionally, the court may consider the factors of discouraging forum shopping and maintaining the interstate uniformity of results. *Id*. at 487-88.

Application of Louisiana's choice-of-law rules to the question of which law should apply to LNA's claim against LBLD results in the application of Louisiana substantive law.[3] An analysis of the "serious impairment" test and associated factors shows that the application of maritime law would "seriously impair" Louisiana substantive law. First, the basic claim LNA has brought against LBLD is centered on an inherently non-maritime activity – LBLD's maintenance and operation of levees. *See In re Ingram Barge Co.*, 2007 WL 837181, at *6 (E.D. La. March 14, 2007) (citing *Parfait*). It is the law of this case that the maintenance and operation of levees is unrelated to maritime commerce. *Id*. "A levee is more akin to those structures like bridges, whose fixed land-based nature and non-maritime purpose have been found not to need the protection of a uniform body of federal law that is accorded vessels which roam the sea for business purposes." *In re Ingram Barge Co.*, 435 F.Supp.2d 524, 530 (E.D. La. 2006). The events giving rise to the dispute over indemnity and contribution are non-maritime, land-based issues. Additionally, the place of the conduct giving rise to LNA's claim was land-based – LBLD's maintenance and operation of the levees took place, of course, on land. Because LBLD's activity was land-based, it held a justified expectation that state law would apply to its activities and potential liabilities.

Second, Louisiana has a strong interest in the case and its laws would be seriously impaired by the application of maritime law. LBLD is a political subdivision of the state of Louisiana. LA. REV. STAT. ANN. § 39:551.9 (2008). Louisiana has expressed a strong interest in

---

[3]  Unfortunately, research of Louisiana's choice of law principles did not yield a decision on point regarding the choice between state substantive law and maritime law under the Code articles and jurisprudence.

limiting the liability of its political subdivisions. *See* LA. REV. STAT. ANN. § 13:5106 (2008); LA. REV. STAT. ANN. § 29:735 (2007). It stands to reason, therefore, that Louisiana has a strong interest in having the LBLD subjected to the law of this state, especially when LBLD would not otherwise be subject to contribution and indemnity if state substantive law applied to it. *See id.* Furthermore, the state has established principles of comparative fault that would normally govern LBLD's liability. *See* LA. CIV. CODE art. 2323 (2007). The codification of article 2323 in the Louisiana Civil Code expresses the clear legislative intent to have a system of pure comparative fault by which a party would only be liable for its share of fault. *Snearl v. Mercer*, 780 So.2d 563 (La. App. 1 Cir. 2001). Louisiana certainly has an interest in upholding that scheme rather than subjecting its political subdivision to contribution and indemnity laws it has eradicated.

Third, other considerations weigh in favor of applying Louisiana law – the place of injury was on land, the domicile of LBLD is Louisiana, and the relationship of the parties is centered in Louisiana. Finally, Louisiana has a strong interest in deterring wrongful conduct and repairing the conduct of tortious acts.

In contrast, the application of Louisiana law would not "seriously impair" the general maritime law. The fundamental issue underlying LNA's claim is based on a non-maritime issue, the maintenance and operation of LBLD's levees. While LBLD concedes that maritime law must prevail as it pertains to maritime matters, *Welch v. Fugro Geosciences, Inc.*, 804 So.2d 710 (La. App. 1 Cir. 2001), that rule is inapplicable to wholly land-based, non-maritime issues. In such a context, the general maritime law would suffer no more impairment than Louisiana would if state law were not applied to a vessel collision on the Mississippi River. This case simply does not fall under the province of maritime law. And, though maritime law may have an interest in

uniformity, no other choice-of-law factors weigh in favor of applying maritime law. This argument is buttressed by the fact that LNA offered no such argument in its Opposition.

Therefore, Louisiana's choice-of-law principles require the application of Louisiana substantive law. Applying the overarching "serious impairment" test and its corresponding factors, it is clear that Louisiana would suffer "serious impairment" if its political subdivision (the liability of which is limited by Louisiana law) were subjected to the maritime law that rejects comparative fault principles (in contradiction of Louisiana law) for a claim that revolves around an inherently non-maritime issue. The law of this case has already established that the underlying facts for which LNA seeks relief are non-maritime, so the general maritime law would suffer no impairment if Louisiana substantive law applied. As discussed above, the application of Louisiana substantive law forbids the tort contribution and indemnity sought by LNA, so its claims must be dismissed.

### III. The Law Of The Case Does Not Preclude Dismissal Of LNA's Third-Party Claims.

LNA argued that under the ruling issued by Chief Judge Berrigan in an earlier phase of the BARGE litigation, the law of the case doctrine applies to foreclose LBLD's Motion to Dismiss. The law of the case doctrine states that it is the general practice of courts to refuse to reopen what has been decided. *Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006). "[U]nlike res judicata, the law of the case doctrine applies only to issues that were <u>actually decided</u>, rather than all questions in the case that might have been decided, but were not." *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 425 (5th Cir. 2006) (emphasis added).

In its Opposition, LNA argued that Judge Berrigan's reliance on *Marathon* to rule that maritime law could govern LNA's third-party claim means that maritime law could apply in this

9

case, as well. As LBLD has shown, *Marathon* and its progeny are entirely inapplicable to this case. *Marathon* only involved the application of the general maritime law to the third party claim after the court was forced to resolve a conflict of law that arose when plaintiff's claim against the main defendant was governed by a different body of law than plaintiff's claim against the third-party defendant. Judge Berrigan's ruling as to the third-party claim between LNA and the United States correctly applied *Marathon* because several of the plaintiffs in that action had directly sued the United States. Unlike *Marathon* and Judge Berrigan's proceeding, however, there is no such conflict here because The *Parfait* Plaintiffs have not sued LBLD. Judge Berrigan never decided the issue of which law would apply when the third-party defendant is <u>not</u> liable to the plaintiff. As stated above, the law of the case doctrine only applies to issues that have been actually decided.

Furthermore, it is of note that Judge Berrigan expressly avoided ruling on the issue of which law applied, holding instead only that it was enough to defeat the third-party defendant's Motion to Dismiss in that proceeding. Even if she analyzed the same issue in that proceeding as in this Motion, which she did not, Judge Berrigan chose not to rule. There is no "actual decision" that would govern subsequent proceedings in this litigation.

LNA also pointed to Judge Berrigan's ruling that Louisiana law may allow the application of general maritime law through choice-of-law rules. Judge Berrigan based that decision on the fact, in that case, that LNA provided authority for its argument regarding choice of law and that the third-party defendant did not dispute the issue. Here, however, LBLD has shown that LNA's authority, consisting solely of the *Gibbs* case, is not applicable because the third-party defendant in that case had potential liability to the plaintiff. In this case, Plaintiffs have not even alleged that LBLD is liable for Plaintiffs' damages. In addition, LBLD has shown

10

through jurisprudential and statutory authority that Louisiana's choice-of-law rules for LNA's claim would result in the application of Louisiana substantive law. Because both of Judge Berrigan's reasons for denying the United States Motion to Dismiss in the earlier phase of this litigation are distinguishable from LBLD's proceeding, the law of the case doctrine does not apply.

### IV. LNA's Claims Must Be Dismissed Because Of Its Failure To Properly Utilize Rule 14 Third-Party Practice.

LBLD maintains that LNA has no valid claim under maritime law. However, if this Honorable Court believes a maritime claim would otherwise apply to LNA's claim against LBLD, LBLD alternatively argues that LNA has not properly utilized the Federal Rule of Civil Procedure allowing it to proceed under maritime law, and as a result has not stated a claim upon which relief can be granted.

When a plaintiff is entitled to bring an admiralty claim, he has the right under the Federal Rules of Civil Procedure to designate the claim as admiralty. FED. R. CIV. P. Rule 9(h). Suing under maritime law provides the plaintiff with certain procedural advantages only available under maritime law. *See T.N.T. Marine Serv. v. Weaver Shipyards & Dry Docks, Inc.*, 702 F.2d 585, 586-87 (5th Cir. 1983). One of those advantages inures to the benefit of the defendant – if the plaintiff brings an admiralty suit, the defendant has the ability to bring a third-party claim against a third-party defendant both for liability to the third-party plaintiff and the principal plaintiff. *See* FED. R. CIV. P. Rule 14(c). This type of third-party claim, known as 14(c) impleader, is much broader than the normal third-party claim found in Rule 14(a). *Compare* FED. R. CIV. P. Rule 14(c) *with* FED. R. CIV. P. Rule 14(a).

The ability to utilize the broader impleader is predicated on the plaintiff's designation of the claim as an admiralty or maritime case. What is needed is a simple statement affirmatively asserting admiralty or maritime claims. *Teal v. Eagle Fleet, Inc.*, 933 F.2d 341, 345 (5th Cir. 1991). In the *Parfait* matter, however, Plaintiffs <u>have not</u> made such a statement. The only specific reference to maritime and admiralty was Plaintiffs' jurisdictional statement that this case was brought under aspects of maritime law. *See* Doc. 1, p. 6 ¶ IV. Additionally, Plaintiffs requested a trial by jury on all issues, *Id*. at p. 11 ¶ XI., which is not allowed in a maritime case. Without the definitive statement that the claims are admiralty or maritime, Plaintiffs have not designated this as an admiralty case; in fact, their request for trial by jury shows that they have actively chosen to avert maritime law in this action. Thus, thus defendant LNA is not entitled to the broad 14(c) impleader. LNA's only option for a third-party claim is 14(a) impleader.

Thus, the question becomes whether LNA has properly utilized the Rule 14(a) third-party procedure. Under Rule 14(a), the main defendant must allege facts sufficient to establish the derivative or secondary liability of the proposed third-party defendant. *Barab v. Menford*, 98 F.R.D. 455, 456 (E.D.Pa. 1983). The main defendant <u>may not</u> argue that the third-party defendant is liable for the plaintiff's injuries. *Toberman v. Copas*, 800 F.Supp. 1239, 1242 (M.D.Pa. 1992). A third party claim is not proper where the main defendant simply presents the "It was him, not me" defense. *See Watergate Landmark Condominium Unit Owners Ass'n v. Wiss, Janey, Elstner Assoc., Inc.*, 117 FRD 576, 578 (E.D.Va. 1987) The main defendant must establish secondary liability – the 14(a) claim requires the argument that if the main defendant is liable to plaintiff, then third-party defendant is liable to main defendant. *See id*.

In this case, LNA has failed to plead the derivative type of liability necessary under Rule 14(a). First of all, it denied any and all liability to Plaintiffs, stating that its barge did not cause

the breach of the levees along the Inner Harbor Navigational Canal (IHNC) or the injuries and damages claimed by Plaintiffs. Doc. 8060, p. 11 ¶ 16. Instead, it alleged that LBLD failed to perform several tasks regarding the operation and maintenance of the levees under its control, *See id*. at p. 22-23 ¶¶ 67-71, and LBLD's failure to perform its tasks caused the levees along the IHNC to be overtopped and/or breached. *Id*. at p. 23 ¶ 72. Finally, though still denying liability to Plaintiffs, LNA alleged it is entitled to indemnity and/or contribution from LBLD. *Id*. at p. 23 ¶ 73; Doc. 13649, p. 5 ¶ 74-a. These allegations plainly show that LNA denied liability to Plaintiffs while pointing the finger at LBLD. This is precisely the type of "It was him, not me" tactic that is forbidden by Rule 14(a). LNA never once alleged that if it is liable to Plaintiffs, then LBLD is liable to LNA. It maintained at every opportunity that it is not liable; the truly liable party, LNA alleged, is LBLD. Because LNA alleged no derivative or secondary liability, its third-party claim as plead fails to state a claim upon which relief may be granted. Accordingly, this Honorable Court must dismiss LNA's claims.

### V. Conclusion.

Louisiana substantive law governs LNA's claims against LBLD. As pointed out above, the general maritime law would not apply under *Marathon* and its progeny or through the application of Louisiana choice-of-law rules. Additionally, the law of the case doctrine is inapplicable here. If, however, this Honorable Court believes maritime law would otherwise apply, LNA has not properly utilized the federal procedure for third-party claims. For these reasons, LBLD asks that this Honorable Court dismiss LNA's claims against it for contribution and indemnity.

Respectfully submitted,

**DUPLASS, ZWAIN, BOURGEOIS, PFISTER & WEINSTOCK**

s/Joseph E. Bearden

_____

**LAWRENCE J. DUPLASS (#5199)**
**ANDREW D. WEINSTOCK (#18495)**
**JOSEPH E. BEARDEN, III (#26188)**
**JENNIFER M. MORRIS (#29936)**
3838 N. Causeway Boulevard, Suite 2900
Metairie, Louisiana 70002
(504) 832-3700
lduplass@duplass.com
andreww@duplass.com
jbearden@duplass.com
jmorris@duplass.com
**Attorneys for Lake Borgne Basin Levee District**

## C E R T I F I C A T E

I hereby certify that on the 29th day of September, 2008, a copy of the foregoing Reply Memorandum in Support of Rule 12(b)(6) Motion to Dismiss was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this file will be sent to liaison counsel by operation of the court's electronic filing system and all other counsel of record via e-mail and U.S. Mail.

s/Joseph E. Bearden
_____
**JOSEPH E. BEARDEN, III #26188**
jbearden@duplass.com