UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re:  KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | CIVIL ACTION |
| | Case No.:  05-4182 |
| | and consolidated cases |
| **PERTAINS TO:  BARGE** | SECTION "K" (2) |
| | |
| *Boutte v. Lafarge*         05-5531 | |
| *Mumford v. Ingram*     05-5724 | |
| *Lagarde v. Lafarge*      06-5342 | Hon. Stanwood R. Duval, Jr. |
| *Perry v. Ingram*          06-6299 | Magistrate Judge Joseph C. Wilkinson, Jr. |
| *Benoit v. Lafarge*        06-7516 | |
| *Parfait Family v. USA*  07-3500 | |
| *Lafarge v. USA*           07-5178 | |

# BARGE PLAINTIFFS' AMENDED MOTION TO CERTIFY THE CLASS AND SUBCLASSES, TO APPOINT CLASS COUNSEL, AND TO APPROVE PLAINTIFF'S PROPOSED TRIAL PLAN

**MAY IT PLEASE THE COURT:**

On May 15, 2008, pursuant to the May 1, 2008, Case Management and Scheduling

Order No. Seven (doc. 12935) and Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), 23(b)(2), and 23(b)(3)

of the Federal Rules of Civil Procedure, Barge plaintiffs moved to certify the class and

subclasses, to appoint the counsel listed below as class counsel, to approve the proposed trial

plan, and to approve the proposed class notice.  Based upon information learned through

formal and informal discovery and based upon the Proposed Seventh Amended Consolidated Class Action Complaint that has been submitted to this Court in connection with a request for leave to file that amended pleading, Barge Plaintiffs file this Amended Motion to conform to that Proposed Seventh Amended Complaint and the Memorandum filed concurrently herewith. The grounds of this Amended Motion and the details of plaintiffs' request are specified below.

A.     THE PROPOSED CLASS

Barge Plaintiffs ask this Court to certify a class consisting of the following general group of claimants:[1]

> All persons and/or entities who/which, on August 29, 2005, were residents of, or owned properties or businesses in, the following geographic area: the Industrial Canal floodwall on the West, Paris Road on the East, the Mississippi River on the South, and, on the North, the Public Belt or other Railway adjacent to and immediately north of Florida Avenue and the east-west channel or canal (Florida Walk Canal and Forty Arpent Canal) extending from the aforementioned railway to Paris Road.[2]

Plaintiffs also propose the following two Sub-Class Definitions:

> **PERSONAL/REAL PROPERTY CLAIM SUB-CLASS** (SUB-CLASS ONE): All persons who are members of the Class and who sustained personal or real property loss and/or damages as a result of the flooding that began on Monday, August 29, 2005.

> **BUSINESS CLAIM SUBCLASS** (SUB-CLASS TWO): All businesses and/or the owners of such businesses, where the businesses (1) were located in the geographic area defined by the Industrial Canal floodwall on the West, Paris Road on the East, the Mississippi River on the South, and, on the North, the Public Belt or other Railway adjacent to and immediately north of Florida Avenue and the east-west channel or canal (Florida Walk Canal and Forty Arpent Canal) extending from the aforementioned railway to Paris Road, and (2) sustained loss and/or damages related to flooding that began on Monday, August 29, 2005.

---

[1] Excluded from the Class are any persons who are directors, officers and/or employees of any Defendants or their affiliates, and the immediate family members thereof, as well as all attorneys for the Class and any employees of the attorneys or their firms.

[2] The proposed class area consists of the following Census Tracts and parts of Census Tracts: a. In Orleans Parish, Census tracts 7.01, 7.02, 8, 9.01, 9.02, 9.03, and 9.04;2 and b. In St. Bernard Parish, Census tracts 303, 304, 305, 306.1, 306.2, 306.3, and the portions of Census tracts 307 and 308 that lie West of Paris Road. *See Declaration of Rick Seymour* ("*Seymour Dec.*"), at ¶4-11; Exhs.A through D.

For purposes of clarity, the Barge Plaintiffs identify several Categories of persons that are members of the Class having damages that will likely entail some level of individualized inquiry:

**ZONE OF DANGER PROPERTY CLAIM CATEGORY** (Category One), comprised of persons suffering consequential emotional harm that is defined as all persons who (1) are members of the Class, and (2) who sustained personal or real property loss and/or damage as a result of the flooding that began on Monday, August 29, 2005, and (3) at that time they sustained such personal or real property loss and/or damages were physically present in the defined class area.

**PERSONAL INJURY CATEGORY** (Category Two), is comprised of persons who (1) are members of the Class, (2) were, at the time of flooding on August 29, 2005, present in the defined class area, and (3) sustained personal injuries as a result of flooding that began on Monday, August 29, 2005.

**WRONGFUL DEATH CATEGORY** (Category Three), is comprised of persons who (1) are members of the Class, and (2) who have a claim for wrongful death related to the flooding that began on Monday, August 29, 2005.

B.      THE PROPOSED CLASS REPRESENTATIVES

Plaintiffs propose the following class representatives for the class for a whole:  *Ethel Mae Coleman Mumford*, *Josephine Long Richardson*, *Jimmie Donnell Harris*, *Michael Joseph Riche*, *Bob* & *Dianne Glaser* (as owners of Holiday Jewelers), *Herman* & *Aida Koch* (as owners of residential rental property), and *Arcola Sutton*.

**Plaintiff ETHEL MAE COLEMAN MUMFORD**:  At the time of the flooding subject of this suit, Ms. Mumford resided at 4829 Burgundy Street, New Orleans, Louisiana 70117, in the Lower Ninth Ward.  Mrs. Mumford is approximately 81 years old and works as a cleaning service provider.  She owns her residence, which was a single-family, one story house of approximately 1200 square feet, on a 45' x 115' lot, together with a carport, garage, and patio.  She resides now at 1423 Feliciana Street, New Orleans, Louisiana 70117.  Ms. Mumford also owns rental properties in the Lower Ninth Ward, including properties at:

(a)      6101 N. Robertson Street;

(b)      6105-07 N. Robertson Street;

(c)      6113-15 N. Robertson Street; and,

(d)      4829 Burgundy Street.

3

All of these properties were damaged by flooding proximately caused by Defendants.  Of these properties, the property at 6113-15 N. Robertson has been restored by Diamond Construction at a cost of $109,000.00.  Ms. Mumford has also begun the restoration process the 4829 Burgundy Street.

Mrs. Mumford suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005.  Ms. Mumford is a proposed Class Representative for Sub-Class One, described *infra*.

**Plaintiff JOSEPHINE LONG RICHARDSON**:  At the time of the flooding made the subject of this suit, Mrs. Richardson resided with her late husband, Joseph Richardson, at 1321 Egania Street, New Orleans, Louisiana 70117, in the Lower Ninth Ward.  She is approximately 81 years old, and was formerly a cashier for K&B.  She owns that property, a single -family, one story house on a lot approximately 120' x 30'. She has been unable to return to her home for an extended period, residing for a time at 9696 Hayne Boulevard, Apt. 13, New Orleans, Louisiana 70127.  Recently, her property at 1321 Egania Street was restored sufficiently to render it habitable.  At the time of the storm, her husband, Joseph Richardson, sent Mrs. Richardson to safety, while he remained to secure their family home.  Mr. Richardson became trapped in the attic and drowned due to the flooding caused by ING 4727.  Mrs. Richardson suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005.  Mrs. Richardson is also bringing a wrongful death claim on behalf of her late husband, Joseph Richardson.  Mrs. Richardson is a proposed Class Representative for Sub-Class One, described *infra*.  Mrs. Richardson is a member of Category Three, the WRONGFUL DEATH CATEGORY.

**Plaintiff JIMMIE DONNELL HARRIS**:  At the time of the flooding made the subject of this suit, Mr. Harris resided at 924 Lamanche Street, New Orleans, Louisiana, 70117, in the Lower Ninth Ward.  He is approximately 40 years old, and is a New Orleans Fire Department volunteer firefighter and a member of the United States Army Reserve deployed to the streets of New Orleans in the immediate aftermath of Katrina.  He owns his aforesaid residence, where he lived with his wife and daughter until the flood.  The house was a two

story, single -family residence, of approximately 2400 square feet on a lot approximately 90' x 120', and had undergone addition of about one-thousand square feet in 2002, plus addition of a new shed and carport.  He, along with his wife and daughter, were forced to relocate to 790 Bateswood Drive, Apt. 24, Houston, Texas 77282 while their family home was restored.  Just recently, the family was able to return home.  Mr. Harris suffered damages as a result of the breaches of the eastern Industrial Canal Floodwall, which damages were proximately caused by Defendants, on August 29, 2005.  Mr. Harris is a proposed Class Representative for Sub-Class One, described *infra*.

**Plaintiff MICHAEL JOSEPH RICHE, as owner of MR. RIBBON, and RESIDENTIAL RENTAL PROPERTY**:  At the time of the flooding made the subject of this suit, Mr. Riche owned Mr. Ribbon, a wedding supply business located at 8825-27 W. Judge Perez Drive, Chalmette, Louisiana, in the Village Square Shopping Center.  The business property, which he owned, was approximately 4000 square feet of showroom, sales, office, and warehouse area, all destroyed by the flood.  Mr. Riche has been financially unable to reestablish or repair his business, and lost his clientele.  At the time of the flooding made the subject of suit, Mr. Riche also owned residential rental property at 128-130 W. Phillip Court, consisting of a two story townhouse duplex of approximately 2400 square feet.  The property was rented at the time of the flooding.  Mr. Riche has been financially unable to make repairs and return his property to the rental market.  Mr. Riche's business and business property suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005.  Mr. Riche is a resident of Lacombe, Louisiana.  Mr. Riche is a proposed Class Representative for Sub-Class Two, described *infra*.

**Plaintiff JACOB ROBERT "BOB" GLASER AND DIANNE GLASER as owners of HOLIDAY JEWELERS**:  At the time of the flooding made the subject of this suit, Mr. and Mrs. Glaser owned Holiday Jewelers, a retail jewelry business located at 8400 W. Judge Perez Drive, Suite 7, Chalmette, Louisiana 70043.  Mr. Glaser is approximately 58 years old.  Mrs. Glaser is fifty-six (56) years old.  They leased the property where the business was located,

which consisted of approximately 1000 square feet of showroom, office, and workshop space. Due to the loss of inventory, equipment, fixtures, and clientele, as well as the financial inability to amass start-up costs after thirty-one (31) years in business, they have not been able to reestablish their business, and have been forced to seek employment on the Northshore. Jacob and Dianne Glaser's business suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005. Jacob and Diane Glaser are residents of Madisonville, Louisiana. Jacob and Dianne Glaser are proposed Class Representatives for Sub-Class Two.

**Plaintiffs HERMAN AND AIDA KOCH as owners of RESIDENTIAL RENTAL PROPERTY**: At the time of the flooding made the subject of this suit, Mr. and Mrs. Koch were the owners of several residential rental properties in the affected areas. Mr. and Mrs. Koch are approximately 71 and 66 years old, respectively. After the destruction of their residence, Mr. and Mrs. Koch now reside at 506 Country Club Drive, Picayune, Mississippi. Their pre-August 29, 2005 income was based upon rental income generated by the following properties:

> (a) 3409-11 Shangri La Lane, Chalmette, Louisiana, was a one story double of approximately 2400 square feet on a 60' x 120' lot. Mr. and Mrs. Koch had made recent improvements before the flood, including new flooring and paint. Both units were rented at the time of the flooding. Recently, the property was restored, and 3411 is now rented.

> (b) 3619 Shangri La Street, Chalmette, Louisiana, was a party wall double, half of which was owned by Mr. and Mrs. Koch. It has approximate interior space of 1250 square feet, and sits on a 60' x 125' lot with a shed. It was newly painted in 2004, and was rented at the time of the flooding. 3619 Shangri La Street was recently restored but has not been rented.

> (c) 6317-19 Douglas Street, New Orleans, Louisiana 70117 in the Lower Ninth Ward was a single story double located in an historic district. It was approximately 3000 square feet on a lot of approximately 45' x 200',

plus two out buildings containing a carport and laundry space. New floors were installed in 2003. Both units were rented at the time of the flooding, but have not been repaired due to Mr. and Mrs. Koch's financial inability to pay for same, and, therefore, cannot be rented.

(d)    6035-37 Burgundy Street, New Orleans, Louisiana 70117 in the Lower Ninth Ward was a single story shotgun double of approximately 2500 square feet on a 50' x 120' lot with a double shed and carport. Extensive improvements and renovations in early 2005 included new kitchens, plumbing, and floors. Both units were rented at the time of the flooding but were not repaired due to Mr. and Mrs. Koch's financial inability to pay for same. They had to sell that property to a private party.

(e)    8545-8547 Deerfield, Chalmette, Louisiana 70043 is a single, divided structure, consisting of approximately 4000 square feet, on a 55' x 120' lot with two outbuildings. Mr. and Mrs. Koch used to reside in the residence half of the property located at 8545 Deerfield and rent out 8547 Deerfield. The entire property was newly painted and carpeted in 2005. Both halves have been repaired in the aftermath, and 8545 Deerfield is now rented.

Mr. and Mrs. Koch's business and business property suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005. Mr. and Mrs. Koch are proposed Class Representatives for Sub-Class Two, described *infra*.

As a result of the flooding in the class area, Mr. and Mrs. Koch suffered damages as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005. They are also a proposed Class Representatives for Sub-Class One, described *infra*.

**Plaintiff ARCOLA SUTTON**: At the time of the flooding made the basis of this suit, Mrs. Sutton owned residential property located at 2523 Jourdan Avenue, New Orleans,

Louisiana 70117 in the Lower Ninth Ward.  The property is a single family, five bedroom one story house of approximately 1800 square feet, on a 30' x 134' lot.  The property includes an efficiency apartment with its own address of 2523 ½ Jourdan Avenue.  At the time of Hurricane Katrina, 2523 ½ Jourdan Avenue was rented to Rico Sutton for $210 per month.  She now lives at 1509 Charbonnet Street, New Orleans 70117.  She is currently employed by the City as a security guard at the New Orleans Museum of Art.

Mrs. Sutton was unable to evacuate due to financial inability to do so.  In the early morning of August 29, 2005, Mrs. Sutton was at home.  She heard a large booming sound just after 5:00 a.m. and then observed massive flooding.  Mrs. Sutton was forced to flee to her roof to avoid the rising floodwaters.  Mrs. Sutton placed a 911 call at about 6:36, stating she was on her roof.  She was evacuated from her roof by helicopter on August 30, 2005.

The house at 2523 Jourdan Avenue was totally destroyed by the flooding and, on information and belief, has since been demolished by the City of New Orleans or other governmental entity.  Mrs. Sutton's property, including her home, its contents and her Chrysler 300 automobile all suffered catastrophic damage as a result of the breaches of the eastern Industrial Canal floodwall, which damages were proximately caused by Defendants, on August 29, 2005.  Mrs. Sutton also suffered physical injury after exposure to toxic floodwaters.  Mrs. Sutton is a proposed Class Representative for Sub-Classes One and Two, described *infra*.  Mrs. Sutton is a member of Category One, the ZONE OF DANGER PROPERTY CLAIM CATEGORY, and Category Two, the PERSONAL INJURY CATEGORY.


C.     THE GROUNDS FOR CLASS CERTIFICATION

1.     Numerosity Is Established For The Class And Subclasses

The class meets the requirements of Rule 23(a)(1), Fed. R. Civ. Pro., because the class is so numerous that joinder of all members is impracticable.  Based on 2000 U.S. Census Report data, there roughly 42,000 putative class members who were "residents" of the geographic region comprising the "class area."  Within this area, 2000 U.S. Census data also reflects that

there were approximately 16,086 residential units, while 2002 Economic Census Report data reflects that there were approximately 1,158 distinct business units.

        2.      <u>Common Questions Of Law And Fact Predominate Over Individualized Issues</u>

The class meets the requirements of Rule 23(a)(2), Fed. R. Civ. Pro., because there are questions of law or fact common to the class.  Among the many questions of law and fact common to the class are:

      (a)     Whether Lafarge allowed loaded Barge ING 4727 to be docked at the Lafarge facility on the Industrial Canal on Friday, August 26, 2005;

      (b)     Whether Lafarge refused to remove the loaded Barge ING 4727 from the Lafarge North America facility on the Industrial Canal on and after Friday, August 26, 2005;

      (c)     Whether Lafarge unloaded Barge ING 4727 on Saturday, August 27, 2005;

      (d)     Whether Lafarge refused to remove the unloaded Barge ING 4727 from the Lafarge North American facility on the Industrial Canal on and after Saturday, August 27, 2005;

      (e)     Whether Lafarge switched unloaded Barge ING 4727 from inboard of a loaded barge to outboard of a loaded barge on Saturday, August 27, 2005;

      (f)     Whether Assistant Manager Ed Busch directed Zito Fleeting to "release" Barge ING 4727;

      (g)     Whether placing unloaded Barge ING 4727 outboard of a loaded barge created a "sail effect" that increased the likelihood of a breakaway in high winds;

      (h)     Whether Lafarge had a Hurricane Checklist which required that all barges be cabled to the shore;

(i)      Whether Lafarge used fewer mooring lines than specified in U.S. Coast Guard standards for stormy weather to attach unloaded Barge ING 4727 to a loaded barge;

(j)      Whether Lafarge used three single-part (strand) lines to attach unloaded Barge ING 4727 to a loaded barge;

(k)      Whether Lafarge failed to inspect the moorings on Barge ING 4727 to determine whether those moorings exceed U.S. Coast Guard standards for mooring barges to each other in stormy weather;

(l)      Whether Lafarge was in possession of the Sector New Orleans Hurricane Plan prior to the arrival of Hurricane Katrina;

(m)      Whether the Sector New Orleans Hurricane Plan required that mooring lines should be "doubled up" as part of hurricane preparedness activities;

(n)      Whether  the Sector New Orleans Hurricane Plan identified barges moored near bridges as requiring special attention when determining adequate mooring;

(o)      Whether, on August 26, 2005, the Governor of Louisiana issued an emergency proclamation, directing waterfront facilities to secure hazards and halt cargo operations;

(p)      Whether, shortly before the time that Barge ING 4727 was delivered to the Lafarge North America facility on the Industrial Canal, Lafarge had suffered approximately $170,000 in losses due to stock shortages of oil field cement;

(q)      Whether Barge ING 4727 broke free of its moorings on Monday, August 29, 2005;

(r)      Whether the East wall of the Industrial Canal was breached in two locations proximate to the Lower Ninth Ward, a "North" breach and a "South" breach;

10

(s)     Whether, somewhere between 4:00 a.m. and 6:00 a.m. on August 29, 2005, Barge ING 4727 struck the East wall of the Industrial Canal floodwall opposite the Lafarge facility (the "North" breach);

(t)     Whether, shortly after Barge ING 4727 struck the East wall of the Industrial Canal in the area of the "North" breach, it broke through the Industrial Canal in the area of the "South" breach;

(u)     Whether Barge ING 4727 was the only barge that broke free of its moorings in the Industrial Canal proximate to the Lower Ninth Ward;

(v)     Whether, when Barge ING 4727 struck the East wall of the Industrial Canal, it caused the "South" breach proximate to the Lower Ninth Ward;

(w)     Whether, when Barge ING 4727 struck the East wall of the Industrial Canal, it caused the "North" breach proximate to the Lower Ninth Ward;

(x)     Whether Ingram breached a duty to the Class when it failed to retrieve Barge ING 4727 prior to August 29, 2005 and engaged in the conduct alleged herein;

(y)     Whether Lafarge breached a duty to the Class when it engaged in the conduct alleged herein;

(z)     Whether 33 CFR § 6.14-2 created a duty of care in Defendant regarding the mooring of Barge ING 4727 on the dates in question, and if so, what was the nature and scope of that duty;

(aa)    Whether 33 CFR § 6.19-1 created a duty of care in Defendant to protect and secure Barge ING 4727 and the surrounding levies, and if so, what was the nature and scope of that duty; and,

(bb)    Whether 33 CFR § 162.75 (b)(3)(ii) created a duty of care in Defendant regarding the mooring of Barge ING 4727 on the dates in question, and if so, what was the nature and scope of that duty.

3.     <u>The Claims Of The Proposed Class Representatives Are Typical Of The Claims Of The Class</u>

The class meets the requirements of Rule 23(a)(3), Fed. R. Civ. Pro., because the claims or defenses of the representative parties are typical of the claims or defenses of the class. Plaintiffs have been affected by the same events as other class members, have been affected at the same time as other class members, have had the same difficulties as other class members in recovering from defendants' negligence, have suffered the same spectrum of injuries as class members, and cannot recover on their own claims in any manner other than by prevailing for the class as a whole.

Plaintiff **Ethel Mae Coleman Mumford** resided within the class region at 4829 Burgundy, New Orleans, LA 70117.  Plaintiff Mumford claims to have sustained damage as the result of said the breach of the East wall of the Industrial Canal, including damage to residential, business, rental and personal property.

Plaintiff **Josephine Long Richardson** resided within the class region at 1321 Egania Street, New Orleans, LA 70117.  Plaintiff Richardson, whose husband was physically present in the class area at the time of the breach of the East wall of the Industrial Canal, and subsequently drowned in the attic of their home, claims to have sustained damage as the result of said the breach of the East wall of the Industrial Canal, including damage to residential  and personal property, as well as damages relating to the wrongful death of her husband.

Plaintiff **Jimmie Donnell Harris** resided within the class region at 924 Lamanche Street, New Orleans, LA 70117.  Plaintiff Harris claims to have sustained damage as the result of said the breach of the East wall of the Industrial Canal, including damage to residential  and personal property.

Plaintiff **Michael Joseph Riche** owned rental property within the class region at 128-130 W. Phillip Court, Chalmette, Louisiana, 70043.  Plaintiff Riche also operated a business within the class region at 8825-27 W. Judge Perez Drive, Chalmette, Louisiana, 70043.  Plaintiff Riche claims to have sustained damage as the result of said the breach of the East wall of the Industrial Canal, including damage to rental and business property.

Plaintiff **Jacob Robert Glaser** owned business property within the class region, a retail jewelry business located at 8400 W. Judge Perez Drive, Chalmette, Louisiana 70043. Plaintiff Glaser claims to have sustained damage as the result of said the breach of the East wall of the Industrial Canal, including damage to business property.

Plaintiff **Herman Koch** owned several rental property within the class region, including properties located at 3409-11 Shangri La Street, Chalmette, Louisiana, 70043, 3619 Shangri La Street, Chalmette, Louisiana, 70043, 6317-19 Douglass Street, New Orleans, Louisiana 70117, 6035-37 Burgundy Street, New Orleans, Louisiana 70117, and 8547 Deerfield, Chalmette, Louisiana 70043. Plaintiff Koch claims to have sustained damage as the result of said breach of the East wall of the Industrial Canal, including damage to personal property as well as rental properties.

Plaintiff **Arcola Sutton** owned residential property located at 2523 Jourdan Avenue, New Orleans, Louisiana 70117 and rental property at 2523 ½ Jourdan Avenue. Mrs. Sutton, who was unable to evacuate, was present in the Class area on the morning of August 29, 2005, and was evacuated from her roof by helicopter on August 30, 2005. Plaintiff Sutton claims to have sustained damage as the result of said the breach of the East wall of the Industrial Canal, including physical injury and emotional distress, and damage to real, personal and rental property.

    4.    <u>The Representative Plaintiffs And Their Counsel Will Adequately And Fairly Protect The Interests Of The Class</u>

        a)    *The Proposed Representative Plaintiffs Will Fairly And Adequately Represent And Protect The Interests Of The Class*

Plaintiffs will adequately represent the class. As demonstrated above, each of the named Plaintiffs were residents of the proposed Class area at the time in question and, like other members of the proposed Class, sustained damage as the result of said the breach of the East wall of the Industrial Canal. Thus, the proposed class representatives collectively have

13

claims for all of the types of damage that would be claimed by members of the putative class. As the interests of these named Plaintiffs are coextensive of other members of the proposed class, their personal interests do not conflict in any manner with the interests of the members of the class they seek to represent as they all seek similar relief.   Further, each class representative has a strong interest in this case and has demonstrated a willingness to take an active role in the litigation and to protect the interests of absentees.

b)     *Proposed Class Counsel Will Zealously, Fairly And Adequately Represent The Interests Of The Class*

Federal Rule of Civil Procedure 23(g) requires that the district court appoint class counsel for any class that is certified. Fed. R. Civ. P. 23(g)(1)(A). The counsel proposed herein by Barge Plaintiffs to serve as class counsel will "fairly and adequately represent the interests of the class," satisfying the requirements Fed. R. Civ. P. 23(g).

Here, Plaintiffs' counsel consists of a team of distinct law firms, comprised of Khorrami, Pollard & Abir LLP, the Law Office of Brian A. Gilbert P.L.C., Wiedemann & Wiedemann, the Law Office of Richard T. Seymour, P.L.L.C., and Patrick J. Sanders, Esq. Designation of each of these distinct law firms ensures that each of the above factors are met, and thereon, Plaintiffs propose that each firm be appointed as co-class counsel in this matter. As set forth in their accompanying declarations, each of these firms brings its own significant and specialized experience to the table to ensure that the interests of the class are both fairly and adequately represented in this action.  Such experience may be summarized as follows:

*Khorrami Pollard & Abir LLP* ("KPA"), while relatively new to this action, brings to the table extensive experience in terms of both mass tort and class action litigation.  In the Past five years, KPA has obtained more than $300 million in verdicts and settlements for clients throughout the United States, involving cases against large companies such as Yahoo, Papa John's Pizza, Coca-Cola, McDonalds, GlaxoSmithKline, Eli Lilly, Merck and many more. KPA, which is employs 16 attorneys and nearly 70 administrative employees, is uniquely suited to assist in the complexities of this litigation.  Since joining the instant litigation, KPA

has dedicated significant resources to this litigation to research, investigate and identify the potential claims in this action, and has undertaken significant effort to prepare such claims for presentation to this Court through this Motion.  The expenditure of such resources (which includes both a financial component and dedication of manpower) is a testament to KPA's commitment to the overall interest of the putative class, which commitment shall continue as this litigation progresses.

The *Law Office of Brian A. Gilbert P.L.C.*, a local New Orleans solo practice, has been involved with this litigation since its inception.  Brian A Gilbert brings to the table significant experience in maritime and personal injury litigation, both of which are material issues here. Mr. Gilbert is one the three attorneys who originally commenced the Mumford action, which is the lead suit in the Barge Litigation Umbrella, and he was appointed interim co-class counsel in 2006.  Mr. Gilbert is appointed Barge Plaintiffs' Liaison to the Preliminary Master Committee, and has performed all duties attendant therewith, including but not limited to law and motion practice, conducting discovery, obtaining experts, client acquisition and contacts and court appearances and presentation on the record, as well as supervision of a staff wholly dedicated to this litigation. The expenditure of such resources (which includes both a financial component and dedication of time) is a testament to Brian Gilbert's commitment to Plaintiffs and the overall interest of the putative class, which commitment shall continue as this litigation progresses.

*Wiedemann & Wiedemann LLC* ("W&W") is a New Orleans based firm specializing in representing plaintiffs in personal injury actions in State and Federal Courts.  Lawrence D. Wiedemann, and the attorneys who work with him, has been representing individuals in the southeastern United States for over 53 years, and has obtained successful results against companies such as Halliburton, Brown & Root, Nabors Drilling, TODCO, Rowan, State Farm, Progressive, and GEICO. As suggested by the list above, W&W has extensive experience in Maritime litigation.  W&W has also been involved in many class actions and/or mass torts, including actions involving the Continental Grain Elevator explosion, the American Sugar explosion, the M/V Frosta/ Luling Ferry collision, the Monsanto Train derailment, the Eunice

train derailment, and the Gaylord disaster in Bogalusa.  W&W has also spearheaded class action suits against the New Orleans Aviation Board and the New Orleans Real Estate Board. With regard to the instant litigation, W&W has been involved in all aspects since the case was filed. W&W has dedicated significant financial resources and manpower to the prosecution of this case, and as residents of New Orleans, lend a perspective which will prove invaluable to the representation of the putative class.

The *Law Office of Richard T. Seymour, P.L.L.C.* brings to the table significant experience in large scale plaintiff class actions.  Prior to forming his own practice, Mr. Seymour worked at the U.S. Commission on Civil Rights; the Washington Research Project; the Lawyers' Committee for Civil Rights Under Law; and Lieff, Cabraser, Heimann & Bernstein, LLP.  Over his distinguished career, Mr. Seymour has obtained more than $41 million dollars in judgments and settlements against large companies such as Miller Brewing Co. and Federal, State, and local government agencies such as the Mississippi State Employment Service.  In the instant action, Mr. Seymour has invested a substantial amount of time, effort and expense in the prosecution of this litigation, chiefly with respect to discovery, expert issues, class certification, and defendant Lafarge's conduct with respect to class members.  He is committed to continuing to do so in representing the interest of the putative class.

Patrick Sanders has been practicing law for over 20 years, and was one of the three attorneys to initiate the Mumford action.  Past experience includes prosecution/defense of maritime matters, class action matters involving the River City Casino pursuant to the Worker Adjustment and Retraining Act, the Louisiana Lottery Corporation and breast Implant Litigation.  Further, Mr. Sanders, as general counsel to several companies, has overseen, investigated and/or prosecuted multimillion dollar litigation involving patents, including "337" proceedings, antidumping actions before the International Trade Commission/ Department of Commerce and numerous other litigations in state and federal courts.  For the past 3 years, Mr. Sanders has worked as Interim Class Counsel on behalf of claimants against Lafarge North America Inc. and Ingram Barge Company, devoting substantial time to the investigation and

16

prosecution of the instant matter as well as the limitation action filed by Ingram Barge company.  In connection therewith, Mr. Sanders has taken and attended numerous depositions and invested substantial amounts of time and funds in the prosecution of the cases.  Further, Mr. Sanders, along with other interim class counsel represent approximately 4,000 individual clients who are also members of the putative Class.

5.   The Proposed Class Satisfies The Requirements Of Fed. R. Civ. P. 23(b)(1)(A)

The class meets the requirements of Rule 23(b)(1)(A), Fed. R. Civ. Pro., because the prosecution of separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. In addition to the monetary remedy sought in this case, it is important that these defendants receive a single, clear message that their actions in connection with any future severe storm must be far different from their actions in the days leading up to August 29, 2005. If the defendants win some cases and lose some cases, they will readily repeat their actions in the future, in New Orleans or in any other area afflicted by substantial storm danger, and many others will suffer as this class has suffered.

6.   The Proposed Class Satisfies The Requirements Of Fed. R. Civ. P. 23(b)(1)(B)

The class meets the requirements of Rule 23(b)(1)(B), Fed. R. Civ. Pro., because the prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. No class member has the personal stake that would enable him or her or it to prosecute a claim successfully against defendants, because the time and expenses of litigation would dwarf the potential recovery.

17

Only by grouping their claims together can class members have a fair opportunity to litigate their claims.

       7.    <u>The Proposed Class Satisfies The Requirements Of Fed. R. Civ. P. 23(b)(3)</u>

     The class meets the requirements of Fed. R. Civ. P. 23(b)(3) because the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

     (a)   Members of the class do not have a strong interest in individually controlling the prosecution or defense of separate actions, because the time and expense of prosecuting successful individual litigation against defendants would be much greater than their individual stakes in such litigation. Only by grouping their claims together can class members have a fair opportunity to litigate their claims. In addition, the geographic dispersion of class members means that it would be difficult for all of them to learn of defendants' negligence, and the negligence of defendant insurance companies' insureds, in time to take effective action.

     (b)   There are a limited number of cases in the Barge Subgroup. The vast majority of the almost 42,000 class members have not filed individual cases. The undersigned counsel have retainers from many thousands of clients who would pursue their own claims with the assistance of the undersigned counsel if class certification is denied. These clients understand that their interests are protected by the instant class action, but will have no choice but to pursue individual litigation if that is their only option. Even so, a substantial percentage of class members have not signed retainers and may obtain no relief in the absence of a class action.

18

(c) It is highly desirable to concentrate discovery and motion practice for the efficient resolution of this class action in this forum. The litigation of thousands of individual cases would add severely to the time required to obtain relief, even if individual plaintiffs managed to succeed. It would also impose severe burdens on the judicial system, with individual trials taking years to complete.

(d) Managing this litigation through the class device would pose fewer difficulties than the difficulties likely to be encountered in the management of literally thousands of individual actions arising out of this common catastrophe. Discovery, scheduling, trying representative flights of class members to inform the expectations of both sides, are easier to organize by use of the class device, and have the added advantage of not leaving the vast majority of the class unrepresented.

(e) In addition, class certification provides the ability to have judicial supervision of any settlements.  For example, Defendants' highly irregular settlement with Arthur Murph underscores the need for open and aboveboard settlements entered with judicial supervision.

8.   <u>The Proposed Subclasses Also Satisfy All Requirements Of Rule 23</u>

   *a)   The Property Damage Subclass*

As more fully defined above, the proposed Property Damage subclass consists of all class members who owned residential and associated buildings, business and associated buildings, personal property, or business property other than buildings, within the class area. All buildings and other property within the class area were damaged or destroyed in the flooding of the class area in connection with Hurricane Katrina on August 29, 2005.

There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.  The class meets the requirements of Rule 23(a)(1), Fed. R. Civ. Pro., because the class is so numerous that joinder of all members is impracticable.  The

requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied by this subclass.

### b)   The Business Damage Subclass

As more fully defined above, the proposed Business Damage subclass consists of all class members who owned businesses within the class area.  All businesses within this area were either destroyed or lost substantial income in the flooding of the class area in connection with Hurricane Katrina on August 29, 2005.

There is no conflict between this subclass and any other subclass, or between this subclass and the class as a whole.  The class meets the requirements of Rule 23(a)(1), Fed. R. Civ. Pro., because the class is so numerous that joinder of all members is impracticable.  The requirements of Rules 23(a), 23(b)(1)(a), 23(b)(1)(B), and 23(b)(3) of the Federal Rules of Civil Procedure are satisfied by this subclass.

### D.   NOTICE TO THE CLASS

Plaintiffs move that the Notice to class members, in addition to informing them of the matters explicitly required to be covered by Fed. R. Civ. P..23(c)(2), provide them with an explanation of the various types of claims in language worked out with defendants or decided by the Court, an opportunity to meet with class counsel at designated times and places to ask questions and receive information, and an opportunity to state:

(a)   whether they wish to take themselves outside of a classwide approach to determining claims for damages to contents of dwellings or businesses, and to proceed individually on such claims;

(b)   whether they wish to take themselves outside of a classwide approach to determining claims for emotional-distress damages;

(c)   whether they wish to press claims for individualized determinations of their emotional-distress damages as part of this action;

(d)     whether they wish to take themselves outside of a classwide approach to determining claims for wrongful death, and to proceed individually on such claims; and,

(e)     whether they want to opt out of this action for all claims.


E.     THE PROPPOSED TRIAL PLAN

Filed concurrently herewith, Plaintiffs submit for the Court's consideration a detailed Proposed Trial Plan.  That Plan sets forth Plaintiffs' proposal for a trifurcated proceeding that will efficiently resolve class issues and matters requiring individualize inquiry in an orderly fashion.


Plaintiffs' Motion is based upon this Amended Motion, the Memorandum of Points and Authorities filed concurrently herewith, the Exhibits and Declarations in support thereof, any and all papers previously filed herein and any and all oral argument and/or evidence as may be offered at the time of the hearing in this matter.


WHEREFORE, plaintiffs pray that their Motion be granted.


Dated: September 29, 2008                    Respectfully submitted,

By: _____
SHAWN KHORRAMI  (CA Bar #180411)
DYLAN POLLARD  (CA Bar #180306)
H. SCOTT LEVIANT  (CA Bar #200834)
MATT BAILEY  (CA Bar #218685)
444 S. Flower St., Thirty-Third Floor
Los Angeles, California 90071
Telephone:     (213) 596-6000
Facsimile:     (213) 596-6010
skhorrami@kpalawyers.com
dpollard@kpalawyers.com
hsleviant@kpalawyers.com
mbailey@kpalawyers.com

/s/  Brian Gilbert
Brian A. Gilbert, Esq.(21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 885-7700
Telephone: (504) 581-6180
Facsimile: (504) 581-4336
bgilbert@briangilbertlaw.com


/s/  Lawrence D. Wiedemann
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 581-6180
Facsimile: (504) 581-4336
lawrence@wiedemannlaw.com
karl@wiedemannlaw.com
karen@wiedemannlaw.com


/s/  Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
Telephone: 504-834-0646
pistols42@aol.com


/s/  Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
Voice: 202-862-4320
Cell:   202-549-1454
Facsimile:  800-805-1065 and 202-828-4130
rick@rickseymourlaw.net

*Attorneys for Barge Plaintiffs*

22

<u>**CERTIFICATE OF SERVICE**</u>

I do hereby certify that I have on this 29th day of September 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.


_____

H. Scott Leviant