LEXSEE 2006 U.S. DIST. LEXIS 9726



Positive
As of: Sep 29, 2008

IN RE: EDUCATIONAL TESTING SERVICE PRAXIS PRINCIPLES OF
LEARNING AND TEACHING: GRADES 7-12 LITIGATION

MDL NO. 1643 SECTION: R(5)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
LOUISIANA

2006 U.S. Dist. LEXIS 9726

**March 13, 2006, Decided**

**SUBSEQUENT HISTORY:** Motion granted by, Costs and fees proceeding at *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig., 2006 U.S. Dist. LEXIS 62264 (E.D. La., Aug. 31, 2006)*

**PRIOR HISTORY:** *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching: Grades 7-12 Litig., 429 F. Supp. 2d 752, 2005 U.S. Dist. LEXIS 41823 (E.D. La., 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The Judicial Panel on Multidistrict Litigation transferred 13 actions against defendant educational testing service from three courts, under *28 U.S.C.S. § 1407*, for consolidated or coordinated proceedings. Additional actions were added; a master complaint was filed. Plaintiff test-takers sought settlement class certification under *Fed. R. Civ. P. 23(b)(3)*, preliminary approval of their proposed class settlement, and appointment of class counsel.

**OVERVIEW:** The service administered the Praxis Principles of Learning and Teaching: Grades 7-12 test, which it incorrectly scored over nine administrations, meaning that about 27,000 people received artificially low scores. About 4,100 received a "false failure." All sought damages for delays in obtaining their credentials, which allegedly prevented them from securing employment and/or completing degrees, and caused some to incur more registration fees or abandon the profession. The parties fashioned an agreement whereby the service would pay damages and give free score reports to some members. The court found that the requirements of *Fed. R. Civ. P. 23(a)* (i.e., numerosity, commonality, typicality, and adequacy of representation) and *Rule 23(b)(3)* (i.e., predominance and superiority) were satisfied. The claims of 27,000 people, which were typified by the named representatives, were focused on a single testing service error and counsel was adequate to represent them. Although there were individual issues, the number of common issues supported a finding of predominance, which potential state law variations did not defeat, and certification was the superior method of dealing with those issues.

**OUTCOME:** The court granted the test-takers' motions to certify a settlement class and to have class counsel appointed.

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Compromises*

Case 2:05-cv-04182-SRD-JCW   Document 15549-60   Filed 09/29/08   Page 2 of 9

Page 2
2006 U.S. Dist. LEXIS 9726, *

*Civil Procedure > Class Actions > Prerequisites > Maintainability*
[HN1] The practice of certifying a class of plaintiffs for settlement purposes only is a common method for resolving mass litigation. As the United States Supreme Court made clear in Amchem Products, Inc. v. Windsor, however, settlement classes must still satisfy the requirements of *Fed. R. Civ. P. 23(a)* and *(b)*. Under Amchem, the "settlement-only" status of a class is relevant to the *Rule 23* inquiry, but only to the extent that a district court faced with a settlement class need not inquire whether the case, if tried, would present intractable management problems. Because the parties are not in an adversarial position when they seek approval of a settlement class, other of *Rule 23*'s requirements, such as those foreclosing unwarranted or overbroad class definitions, require undiluted, even heightened, attention in the settlement context.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
[HN2] Before a federal district court can certify plaintiffs' proposed class in a proposed *Fed. R. Civ. P. 23(b)(3)* class action, it must be satisfied that the class meets the requirements of both *Rule 23(a)* (numerosity, commonality, typicality, and adequacy of representation) and *Rule 23(b)(3)* (predominance and superiority).

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > Maintainability*
*Civil Procedure > Class Actions > Prerequisites > Numerosity*
[HN3] Class treatment is appropriate only if a class is so numerous that joinder of all members is impracticable. *Fed. R. Civ. P. 23(a)*. The numerosity requirement is ordinarily satisfied if a plaintiff presents some evidence or a reasonable estimate to show that the number of class members is sufficiently large. A class consisting of approximately 27,000 people is more than sufficient to satisfy the numerosity requirement.

*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Civil Procedure > Class Actions > Prerequisites > Commonality*
*Civil Procedure > Class Actions > Prerequisites > Maintainability*
[HN4] Commonality, in the context of a class action, requires only that there be at least one issue of law or fact that is common to the class. The commonality element is of less importance in a *Fed. R. Civ. P. 23(b)(3)* class action because the class must also meet the more stringent predominance requirement of *Rule 23(b)(3)*.

*Civil Procedure > Class Actions > Class Members > Named Members*
*Civil Procedure > Class Actions > Prerequisites > Maintainability*
*Civil Procedure > Class Actions > Prerequisites > Typicality*
[HN5] The third of *Fed. R. Civ. P. 23(a)*'s requirements, typicality, considers whether the claims or defenses of class representatives are typical of the claims of other class members. Typicality does not require that the representative plaintiffs' claims be identical to those of the rest of the class. Rather, typicality requires only that the claims of the proposed class representatives have the same fundamental characteristics as the claims of the class.

*Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation*
*Civil Procedure > Class Actions > Prerequisites > Commonality*
*Civil Procedure > Class Actions > Prerequisites > Maintainability*
[HN6] Adequacy of representation, in the context of a class action, tests whether the representative plaintiffs are willing and able to actively participate in the litigation to protect the interests of the class and whether proposed class counsel are competent, experienced, and zealous advocates for the class. *Fed. R. Civ. P. 23(a)(4)* also requires courts to examine whether any conflicts exist between the interests of the representative plaintiffs and the interests of the absent class members. As the United States Court of Appeals for the Fifth Circuit held in Mullen v. Treasure Chest Casino, LLC, in the context of a class action, differences among plaintiffs concerning proof of damages do not affect the alignment of their interests. Differences between named plaintiffs and class members render the named plaintiffs inadequate only where those differences create conflicts between the named plaintiffs' and the class members' interests.

*Civil Procedure > Class Actions > Compromises*
*Civil Procedure > Class Actions > Prerequisites > General Overview*
*Civil Procedure > Class Actions > Prerequisites > Commonality*

[HN7] The first requirement for a *Fed. R. Civ. P. 23(b)(3)* class action is that the questions of law or fact that are common to the members of the class predominate over any questions affecting only individual members. In the non-settlement context, many courts, including the United States Court of Appeals for the Fifth Circuit, have held that variations in state law can undermine the predominance of common issues. This concern is less pronounced, however, in the context of a settlement class. The primary hurdle that the application of multiple, and possibly varying, state laws poses for satisfying the predominance requirement is one of manageability, an issue that courts faced with settlement-only classes need not consider under the holding of the United States Supreme Court in Amchem Products, Inc. v. Windsor.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Compromises*
*Civil Procedure > Class Actions > Prerequisites > Commonality*

[HN8] Differences in state law do not prevent a finding of predominance in a settlement class if they are simply variations on broadly similar legal principles or if the variations among states fall into a limited number of predictable patterns. Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > General Overview*

[HN9] The final requirement for a *Fed. R. Civ. P. 23(b)(3)* class action, superiority, requires a determination that a class action is superior to other methods of adjudicating the dispute. Factors to be considered in this analysis include: (i) the interests of class members in prosecuting their own actions; (ii) the extent of litigation already commenced by class members; (iii) the desirability of concentrating the claims in one forum; and (iv) the likely difficulties of managing the case as a class action.

*Civil Procedure > Class Actions > Class Counsel > Appointments*

[HN10] *Fed. R. Civ. P. 23(g)* requires that a federal district court appoint class counsel who will fairly and adequately represent the interests of the class. *Fed. R. Civ. P. 23(g)(1)(B)*. In appointing class counsel, the court must consider: (i) counsel's work in investigating and identifying potential claims; (ii) counsel's experience in class actions, complex litigation, and litigation involving similar claims; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

**COUNSEL:** [*1] For Plaintiff, Plaintiff: Dawn M. Barrios, Barrios, Kingsdorf & Casteix, LLP, New Orleans, LA; Richard J. Arsenault, Neblett, Beard & Arsenault, Alexandria, LA.

For - Educational Testing Services, Inc., Defendant: A. Stephen Hut, Jr., Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; Keith M. Pyburn, Jr., Fisher & Phillips, LLP, New Orleans, LA.

Michael J Beck, unknown, Pro se, Washington, DC.

**JUDGES:** SARAH S. VANCE, UNITED STATES DISTRICT JUDGE. MAG. JUDGE CHASEZ.

**OPINION BY:** SARAH S. VANCE

**OPINION**

**ORDER AND REASONS**

Plaintiffs move to certify a settlement class in this multidistrict litigation and for preliminary approval of their proposed class settlement. For the following reasons, the Court GRANTS plaintiffs' motion to certify a class for settlement purposes and GRANTS plaintiffs' motion to appoint class counsel. The Court grants plaintiffs' motion for preliminary approval of the proposed settlement in a separate order.

**I. BACKGROUND**

**A. Factual Background**

Defendant Educational Testing Service is a not-for-profit corporation that designs, administers, and scores a wide range of standardized educational tests.

Case 2:05-cv-04182-SRD-JCW   Document 15549-60   Filed 09/29/08   Page 4 of 9

Page 4
2006 U.S. Dist. LEXIS 9726, *1

ETS is the world's largest private educational [*2] testing organization, and it administers over 12 million examinations annually.

Among the educational tests that ETS designs, administers and scores are the Praxis Series examinations. The Praxis tests are a series of tests used by many states in the teacher licensing process. Passage of one or more of the Praxis tests is required for licensing in 39 states and U.S. jurisdictions. The Praxis tests are administered six times per year, at 650 test centers in all 50 states.

This litigation concerns only one of the Praxis series of tests - the Praxis Principles of Learning and Teaching: Grades 7-12 (the "PLT: 7-12") test. The PLT: 7-12 consists of both multiple choice and short-answer "constructed response" questions and is designed to evaluate a beginning teacher's knowledge of a variety of material relevant to teaching students in grades seven through twelve. During 2003-2004, 19 states contracted with ETS to use the PLT: 7-12 as part of their teacher licensing process. The PLT: 7-12 is also relevant to colleges, universities and professional organizations as a measure of teaching credentials. Persons who take the PLT: 7-12 can request that ETS report their scores directly to various [*3] states, colleges, and universities.

ETS incorrectly scored the PLT: 7-12 over the course of nine test administrations between January 2003 and April 2004. Specifically, when scoring the tests from those nine administrations, ETS graded the constructive response portion of the exams more stringently than it should have graded them. As a result of this error, approximately 27,000 people who took the PLT: 7-12 during that time period received a score that was lower than it would have been had the exams been graded properly. The scoring error caused about 4,100 test-takers to receive a "false failure," *i.e.,* they were notified that they had received a failing score in at least one state in which their score was reported, when in fact they should have received a passing score. The scoring error caused approximately 23,000 other test-takers to receive passing scores that were lower than they would have been had the tests been scored correctly.

After a client state questioned ETS about scoring results for the PLT: 7-12, ETS began an investigation that ultimately led it to discover the scoring error. On or about July 10, 2004, ETS began to notify affected test-takers by telephone and [*4] letter that they had incorrectly been told that they had failed the PLT: 7-12 test when, after rescoring, they had actually passed the test. Although ETS re-scored all of the PLT: 7-12 tests taken during the relevant period, it provided the adjusted scores to only those people who had received false failures. ETS did not provide the re-scored results to test-takers whose initially-reported score was sufficient to pass the exam in all of the states to which it was reported.

Plaintiffs allege that ETS's scoring error prevented many test-takers who received a false failing score from obtaining, or from obtaining in a timely manner, their teaching credentials and therefore prevented them from securing or retaining employment as certified teachers. The scoring error also allegedly delayed some test-takers' completion of bachelor's and/or master's degrees, and it allegedly caused some test-takers to abandon teaching and pursue alternate majors and careers. Many of those test-takers also retook the PLT: 7-12 and in the process incurred additional registration fees and test preparation expenses. Moreover, some test-takers who initially received a passing score in each of the jurisdictions [*5] to which their score was reported were allegedly harmed by having artificially low scores reported to states and institutions.

**B. Procedural Background**

On December 16, 2004, the Judicial Panel on Multidistrict Litigation transferred 13 actions relating to the PLT: 7-12 scoring error from federal district courts in Pennsylvania, Louisiana and Ohio to this Court under *28 U.S.C. § 1407* for consolidated or coordinated pretrial proceedings. On January 4, 2005, the Court consolidated those actions for pretrial purposes. A number of additional actions were later consolidated with those cases, and a total of 28 actions are currently consolidated before this Court. On January 24, 2005, the Court appointed lead and liaison counsel for plaintiffs and directed plaintiffs to file a master complaint. Plaintiffs filed the master complaint on March 10, 2005. ETS then moved to dismiss a number of the claims asserted in the master complaint. Specifically, ETS moved to dismiss plaintiffs' state law claims for negligence and negligent misrepresentation, as well as plaintiffs' requests for emotional distress and punitive damages on both their contract and tort claims. ETS [*6] also moved to dismiss plaintiffs' claims under the Sherman Act. The Court ultimately granted ETS's motion to dismiss plaintiffs' Sherman Act claims. ETS's other motions to dismiss

remain pending.

**C. The Proposed Settlement Class**

In November 2005, the parties reached a tentative settlement in an effort to resolve all of the claims relating to the PLT: 7-12 scoring error. Under the terms of the proposed settlement, ETS would pay $ 11 million into a settlement fund for the benefit of participating class members who suffered damages as a result of the scoring error. ETS has also agreed to provide a free score report, purportedly valued at $ 35, to any class member who did not receive a false failure and requests a score report. In connection with the proposed settlement, plaintiffs ask the Court to certify a nationwide class consisting of:

> All persons who took the Praxis Principles of Learning and Teaching: Grades 7-12 examination between January 1, 2003 and April 30, 2004. Specifically excluded from the Class are all persons who have executed full and final releases of their Causes of Action with ETS.

The parties have informed the Court that 41 affected test-takers [*7] have executed full and final releases with ETS.

Plaintiffs have proposed four plaintiffs to serve as class representatives: Kathleen Jones, Paul Perrea, Raffael Billet, and Janet Riehle. Each of these plaintiffs took the PLT: 7-12 during the relevant time period and received a false failure because of the scoring error. Moreover, each of the proposed class representatives is a named plaintiff in an action against ETS concerning the scoring error. Plaintiffs also ask the Court to appoint a number of attorneys as class counsel.

The Court held a hearing on plaintiffs' motions on February 22, 2006. At that hearing, the plaintiffs explained the process through which the parties arrived at the proposed settlement and responded to the Court's questions concerning both the proposed settlement and plaintiffs' motion for class certification. Specifically, the plaintiffs' submitted additional information concerning the geographical breakdown of the putative class members by state.

**II. DISCUSSION**

**A. Settlement Classes**

[HN1] The practice of certifying a class of plaintiffs for settlement purposes only is a common method for resolving mass litigation. *See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 618, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)* [*8] (noting that "the 'settlement only' class has become a stock device" and stating that "all Federal Circuits recognize the utility of *Rule 23(b)(3)* settlement classes"); *see also* Manual For Complex Litigation (Fourth) § 21.132 (2004) (discussing settlement classes). As the Supreme Court made clear in *Amchem,* however, settlement classes must still satisfy the requirements of *Rule 23(a)* and *(b)*. *Amchem, 521 U.S. at 621* ("Federal courts . . . lack authority to substitute for *Rule 23*'s certification criteria a standard never adopted--that if a settlement is 'fair,' then certification is proper."). Under *Amchem,* the "settlement-only" status of a class is relevant to the *Rule 23* inquiry, but only to the extent that a district court faced with a settlement class "need not inquire whether the case, if tried, would present intractable management problems." *Id. at 620*. Because the parties are not in an adversarial position when they seek approval of a settlement class, other of *Rule 23*'s requirements, such as those foreclosing "unwarranted or overbroad class definitions," require "undiluted, even heightened, attention in the settlement context." [*9] *Id.*

Accordingly, [HN2] before the Court can certify plaintiffs' proposed class in this proposed *Rule 23(b)(3)* class action, it must be satisfied that the class meets the requirements of both *Rule 23(a)* (numerosity, commonality, typicality and adequacy of representation) and *Rule 23(b)(3)* (predominance and superiority).

**B.** *Rule 23(a)*

1. *Numerosity*

[HN3] Class treatment is appropriate only if "the class is so numerous that joinder of all members is impracticable." *Fed. R. Civ. P. 23(a)*. The numerosity requirement is ordinarily satisfied if the plaintiff presents some evidence or a reasonable estimate to show that the number of class members is sufficiently large. *James v. City of Dallas, 254 F.3d 551, 570 (5th Cir. 2001)*. Here, based on their investigation of the case and their review of documents from ETS, plaintiffs' counsel estimates that the class consists of approximately 27,000 people, 4,100 of whom received a false failure. This number is more than sufficient to satisfy the numerosity requirement.

2. *Commonality*

*Rule 23(a)*'s commonality requirement is also met in this case. [HN4] Commonality requires only that there [*10] be at least one issue of law or fact that is common to the class. *See James, 254 F.3d at 570*. Because this litigation is focused on a single scoring error made by a single defendant on a number of administrations of a single standardized examination, the commonality requirement is clearly satisfied. Moreover, the commonality element is of less importance in a *Rule 23(b)(3)* class action such as this one because the class must also meet the more stringent predominance requirement of *Rule 23(b)(3)*. *See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)* (commonality is "less rigorous than the companion requirements of *Rule 23(b)(3)*"); *In re Ford Motor Co. Bronco II Prod. Liab. Litig., 177 F.R.D. 360, 366 (E.D. La. 1997)* ("Courts usually do not spend a great deal of time addressing whether common issues exist, but instead focus on the related issue under *Rule 23(b)(3)* of whether common issues *predominate* over individual ones.").

3. *Typicality*

[HN5] The third of *Rule 23(a)*'s requirements, typicality, considers whether the claims or defenses of the class representatives are typical of the claims of the other class members. [*11] Typicality does not require that the representative plaintiffs' claims be identical to those of the rest of the class. Rather, typicality requires only that the claims of the proposed class representatives have the same fundamental characteristics as the claims of the class. *See James, 254 F.3d at 571* ("'If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.'") (quoting 5 James Wm. Moore et al., Moore's Federal Practice P23.24[4] (3d ed. 2000)). In this case, each of the named plaintiffs took the PLT: 7-12 during the relevant time period, and each alleges that he or she received a false failure because of the scoring error. Moreover, the legal claims asserted by the proposed class representatives are typical of the claims that could be asserted by the other members of the class. The proposed class representatives therefore satisfy the typicality requirement.

4. *Adequacy of Representation*

[HN6] Adequacy of representation tests whether the representative plaintiffs are willing and able to actively participate in the litigation to protect the interests of the class and whether proposed class [*12] counsel are competent, experienced and zealous advocates for the class. *See Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir. 2001)*. *Rule 23(a)(4)* also requires courts to examine whether any conflicts exist between the interests of the representative plaintiffs and the interests of the absent class members. *See id. at 480-81*; *Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 625-26 (5th Cir. 1999)*.

In their brief in support of class certification, plaintiffs assert that the proposed class representatives are familiar with the facts and circumstances surrounding both the litigation and the proposed settlement. Plaintiffs further assert that the proposed class representatives have taken part in discovery and are willing to take all actions necessary to comply with their responsibilities as class representatives. They also submit affidavits to this effect from each of the proposed class representatives. This is *prima facie* sufficient to establish the proposed class representatives' willingness to participate in the litigation and protect the interests of the class.

Moreover, the Court finds that the interests of the [*13] class representatives do not conflict with the interests of the class. The Court notes that the proposed class representatives differ in one respect from some of the class members, because each of the proposed class representatives received a false failure, while many other class members simply received an artificially low, but passing, score. This difference does not, however, create a conflict between the proposed class representatives and the other class members, and it does not render the proposed class representatives inadequate. As noted above, all of the class members have an identical interest in establishing ETS's liability for the PLT: 7-12 scoring error, whether or not they received a false failure. The only difference between those two groups of class members relates to the relative difficulty that each might have in establishing damages. As the Fifth Circuit held in *Mullen,* however, differences among plaintiffs concerning proof of damages "do[] not affect the alignment of their interests." *Mullen, 186 F.3d at 626*; *see also Berger, 257 F.3d at 480* ("Differences between named plaintiffs and class members render the named plaintiffs [*14] inadequate only where those differences create conflicts between the named plaintiffs' and the class members' interests.").

Case 2:05-cv-04182-SRD-JCW   Document 15549-60   Filed 09/29/08   Page 7 of 9

Page 7
2006 U.S. Dist. LEXIS 9726, *14

Finally, the Court finds that proposed class counsel are adequate to represent the class. The Court has reviewed the resumes of plaintiffs' proposed settlement class counsel, Dawn Barrios of Barrios, Kingsdorf, & Casteix, L.L.P., Richard Arsenault of Neblett, Beard & Arsenault, and Philip Bohrer of Bohrer Law Firm, L.L.C., and proposed settlement class counsel have also appeared before the Court at several points in this litigation. Counsel possess ample experience in complex litigation, and the Court is convinced that they have capably and vigorously represented the interests of the class in this action. The Court has also reviewed the resumes of the other members of the plaintiffs' steering committee, Phyllis Brown of Law Offices of Phyllis Brown, Sherrie Savett of Berger & Montague, Steven Bell, of Counsel to the Simon Law Firm, and Walter Leger of Leger & Mestayer. The Court finds that they are each also sufficiently able and experienced to represent the interests of the class in this matter. Accordingly, the Court finds that the proposed class representatives [*15] and their counsel will adequately represent the class.

### C. *Rule 23(b)(3)*

1. *Predominance*

[HN7] The first requirement for a *Rule 23(b)(3)* class action is that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." *Fed. R. Civ. P. 23(b)(3)*. In their class certification brief, plaintiffs have identified a significant number of common questions affecting the class, including: factual questions concerning ETS's conduct in scoring the PLT: 7-12; the nature and cause of the PLT: 7-12 scoring error; whether ETS was negligent in improperly scoring the PLT: 7-12; whether ETS breached its contract with test-takers; whether ETS timely failed to detect inaccurate scores; and whether ETS owed non-contractual duties to test-takers. Although individual issues exist concerning damages, the Court finds that the number and significance of the common questions in this litigation supports a finding of predominance.

Moreover, although a number of different states' laws would apply to the class members' claims, potential variations in state law do not defeat predominance in this case. [*16] In the non-settlement context, many courts, including the Fifth Circuit, have held that variations in state law can undermine the predominance of common issues. *See Castano v. Am. Tobacco Co., 84 F.3d 734, 741 (5th Cir. 1996)* ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *see also Spence v. Glock, GmBH, 227 F.3d 308, 311 (5th Cir. 2000)* (same) (quoting *Castano, 84 F.3d at 741*). This concern is less pronounced, however, in the context of a settlement class. The primary hurdle that the application of multiple, and possibly varying, state laws poses for satisfying the predominance requirement is one of manageability, [1] an issue that courts faced with settlement-only classes need not consider under *Amchem*. *See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 529 (3d Cir. 2004)* ("When dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class.").

> 1  *See, e.g., In re Sch. Asbestos Litig., 789 F.2d 996, 1010-11 (3d Cir. 1986)* (discussing variations in state laws as a manageability problem); *In re Ford Motor Co. Vehicle Paint Litig., 182 F.R.D. 214, 224 (E.D. La. 1998)* ("Differences in state law combined with peculiarities in the facts combine to make national class treatment unmanageable and unfair."); *see also Castano, 84 F.3d at 743-44* (discussing district court's "duty to determine whether the class action would be manageable in light of state law variations").

[*17] Absent manageability concerns, the Court finds that any variations among the applicable state laws do not overwhelm the predominance of common issues in this case. [HN8] Differences in state law do not prevent a finding of predominance in a settlement class if they are simply variations on broadly similar legal principles or if the variations among states fall into a limited number of predictable patterns. *See Hanlon, 150 F.3d at 1022-23* ("The idiosyncratic differences between state consumer protection laws are not sufficiently substantive to predominate over the shared claims."); *Krell v. Prudential Ins. Co. of Am. (In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions), 148 F.3d 283, 315 (3d Cir. 1998)* (certifying settlement class; "Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar state laws together and applying them as a unit."). The issues presented by plaintiffs' claims in this litigation arise

under broadly-recognized principles of contract and tort law. The variations among the various states' laws relevant to plaintiffs' claims would in all likelihood generate [*18] a small number of predictable outcomes. Further, the claims of the vast majority of the class members would be governed by, at most, a limited number of states' laws. Forty-eight percent of the 27,000 class members, and sixty percent of those who received false failures, took the PLT: 7-12 in one of just four states (Ohio, Pennsylvania, Louisiana and Tennessee). Eighty-four percent of the class, and eighty-nine percent of the false failures, took the exam in one of 13 states, and ninety percent of the class, and ninety-five percent of those who received false failures, took the exam in one of the 19 states that require the PLT: 7-12 for teacher certification.

Given the significant and overarching common legal and factual questions in this litigation, that any variations in state law would fall into small number of predictable categories, and the limited importance of state law variations in the settlement class context, the Court finds that common issues of law and fact predominate.

2. *Superiority*

[HN9] The final requirement for a *Rule 23(b)(3)* class action, superiority, requires a determination that a class action is superior to other methods of adjudicating the dispute. Factors [*19] to be considered in this analysis include: (i) the interests of class members in prosecuting their own actions; (ii) the extent of litigation already commenced by class members; (iii) the desirability of concentrating the claims in one forum; and (iv) the likely difficulties of managing the case as a class action. *Fed. R. Civ. P. 23(b)(3)*.

Each of these factors favors class certification here. First, the value of the average class member's claim is relatively small, particularly among the 23,000 class members who did not receive a false failure. Thus, the average class member has little incentive to litigate individually against ETS. Second, only a very small fraction of the class has actually instituted suits against ETS (and most of those suits are designated as class actions). Third, because of the common issues in this case, resolution in a single forum would be beneficial to the class and would promote judicial economy. Finally, as the class is being certified for settlement purposes only, the Court need not consider whether the case would present manageability problems as a class action.

Accordingly, the Court finds that a class action [*20] is superior to other methods of adjudication.

As the proposed class satisfies all of the requirements of *Rule 23(a)* and *(b)(3)*, the Court will grant plaintiffs' motion to certify the class for settlement purposes only.

### D. Appointment of Class Counsel

[HN10] *Rule 23(g)* requires that the Court appoint class counsel who will fairly and adequately represent the interests of the class. *Fed. R. Civ. P. 23(g)(1)(B)*. In appointing class counsel, the Court must consider: (i) counsel's work in investigating and identifying potential claims; (ii) counsel's experience in class actions, complex litigation and litigation involving similar claims; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class.

In their brief in support of class certification, plaintiffs assert that each of plaintiffs' proposed class counsel has been involved in numerous aspects of this litigation. Though the Court cannot practically isolate each counsel's role in investigating and prosecuting this action, the record before the Court reveals that on the whole, plaintiffs' counsel have diligently investigated the claims [*21] of the class and have prosecuted this litigation in a very professional manner. Further, as discussed *supra,* the Court is satisfied that proposed class counsel possess sufficient knowledge and experience to fairly and adequately represent the class. The record also reveals that counsel have devoted a significant amount of time and resources to pursuing this litigation. The Court will therefore grant plaintiffs' motion to appoint class counsel.

### III. CONCLUSION

For the reasons stated above, the Court GRANTS plaintiffs' motion to certify a settlement class in this litigation. The Court certifies, for settlement purposes only, the following class:

> All persons who took the Praxis Principles of Learning and Teaching: Grades 7-12 examination between January 1, 2003 and April 30, 2004. Specifically excluded from the Class are all persons who have executed full and final releases of their Causes of Action with ETS.

The Court also GRANTS plaintiffs' motion to appoint class counsel. Accordingly, Dawn Barrios of Barrios, Kingsdorf, & Casteix, L.L.P., Richard Arsenault of Neblett, Beard & Arsenault, Philip Bohrer of Bohrer Law Firm, L.L.C., Phyllis Brown of Law Offices [*22] of Phyllis Brown, Sherrie Savett of Berger & Montague, Steven Bell, of Counsel to the Simon Law Firm, and Walter Leger of Leger & Mestayer are hereby appointed as class counsel.

New Orleans, Louisiana, this 13th day of March, 2006.

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE