LEXSEE 1994 U.S. DIST. LEXIS 4783



Positive
As of: Sep 29, 2008

KENNETH D. McGUIRE and wife, ELSIE JEANETTE McGUIRE, PLAINTIFFS v. INTERNATIONAL PAPER COMPANY, A New York Corporation, DEFENDANT

CIVIL ACTION NO. 1:92-CV-593(Br)(R)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI, SOUTHERN DIVISION

*1994 U.S. Dist. LEXIS 4783*

February 18, 1994, Decided
February 18, 1994, Filed

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs, the owners of a fishing camp located on a bayou, filed an action against defendant corporation and sought damages that resulted from the corporation dumping toxic chemicals in a river that was upstream from the bayou. The owners invoked jurisdiction pursuant to *28 U.S.C.S. §§ 1331*, *1332(a)(1)* and filed a motion to maintain class action, certification of class, and notice to class members pursuant to *Fed.R.Civ.P. 23*.

**OVERVIEW:** The owners alleged that the corporation should have known no later than 1985 that a by-product of their pulp making process contaminated the river system and aquatic life downstream from the corporation's mill. The owners alleged damages to their business, loss of income, damage to real property, and resulting emotional anxiety. They proposed a class action on persons who fell within six subclasses. Upon consideration, the court had to deny the application for class certification. The court concluded that the owners failed to meet their burden to show that the suit should have proceeded as a class action under *Fed.R.Civ,P. 23(b)(3)* and also failed to adequately define a class and failed to show that they would have fairly and adequately protected the interests of the class. The court noted that many other civil claims had already been filed and the existing state court litigation was extensive and superior to the proposed class action. The court also noted that whatever efficiency that might have been gained by a class action would surely have been outweighed by the unmanageability of the litigation.

**OUTCOME:** The court denied the application for class certification.

**LexisNexis(R) Headnotes**

*Civil Procedure > Class Actions > Certification*
[HN1] The appropriateness of class action certification is a procedural question. The burden of proof is on the plaintiffs to show that the suit should proceed as a class action.

*Civil Procedure > Class Actions > Certification*
[HN2] The requirements for class certification include two that are found by the courts to be implicit in

*Fed.R.Civ.P. 23(a)*. In the first place, a class capable of definition must exist. An identifiable class is essential so that the court can determine whether a particular claimant is a class member. The inquiry is whether it is administratively feasible for the court to determine whether a particular individual is a member. This requires that the class be defined in objective terms that are capable of present ascertainment. In the second place, the representative parties must be members of the proposed class.

*Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation*
*Civil Procedure > Class Actions > Prerequisites > Commonality*
*Civil Procedure > Class Actions > Prerequisites > Numerosity*
[HN3] *Fed.R.Civ.P. 23(a)* imposes the following prerequisites to the certification and the maintenance of a class action: (1) that the class is so numerous that joinder of all class members is impracticable, (2) that there are questions of law or fact common to the class, (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) that the representative parties will fairly and adequately protect the interests of the class. Each of these requirements must be satisfied as to each subclass. *Fed.R.Civ.P. 23(c)(4)(B)*. In addition, the plaintiffs must show that the action qualifies for class action treatment under at least one of the subsections of *Fed.R.Civ.P. 23(b)*.

*Civil Procedure > Class Actions > Prerequisites > Commonality*
*Civil Procedure > Class Actions > Prerequisites > Numerosity*
*Civil Procedure > Class Actions > Prerequisites > Typicality*
[HN4] Plaintiffs who propose a class must show that they are members of each of the subclasses for which they seek certification, and that the members of the subclasses are so numerous that joinder of all members is impracticable. They must show that there are questions of law or fact common to the class as a whole. The requirements of *Fed.R.Civ.P. 23(a)(2)* are less stringent than those of *Fed.R.Civ.P. 23(b)(3)*. *Rule 23(a)(2)* requires only a showing of a common question. *Rule 23(b)(3)* requires that those common issues predominate over the individual ones. The plaintiffs must also show that their claims are typical of the claims of each subclass. Typicality ensures that the named plaintiffs' claims are so similar to the absent class members' claims that the named plaintiffs' claims can serve as proxies for those of the absent claimants. This requirement cannot be satisfied solely by conclusory allegations. The typicality requirement refers to the nature of the claim and not to the specific facts from which it arose. Factual differences are acceptable provided the claim arises from the same event or course of conduct and is based on the same legal theory.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > Adequacy of Representation*
[HN5] The basic thrust of *Fed.R.Civ.P. 23(a)(4)* is whether or not the putative class of plaintiffs will fairly and adequately protect the interests of those whom they claim to represent. Courts are commonly faced with two factors to consider. First, whether the class is assured vigorous prosecution, and second, whether there is an absence of conflict. The court must evaluate the adequacy of both the party representatives and their legal representatives. Blind reliance, even on competent counsel, is insufficient. The due process interests of the absent class members require some restraint on the attorneys. The attorneys themselves must be qualified, experienced and able to conduct the litigation.

*Civil Procedure > Class Actions > Certification*
*Civil Procedure > Class Actions > Prerequisites > Commonality*
[HN6] *Fed.R.Civ.P. 23(b)(3)* requires the court to find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a *Rule 23(b)(3)* action would be inappropriate. Where class members' injuries are separate and individual, common questions typically do not predominate.

**JUDGES:** [*1] Bramlette

**OPINION BY:** DAVID BRAMLETTE

**OPINION**

MEMORANDUM OPINION

This cause is before the Court on the plaintiffs' Motion to Maintain Class Action, for Certification of Class, and for Notice to Class Members. Having considered the motion and response, as well as the memorandum briefs with arguments of counsel and legal authorities contained therein, and supporting documents, affidavits, and excerpts from depositions, the Court finds as follows:

International Paper Company ("IP") is a New York corporation engaged in the business of making paper. In 1928, IP commenced operation of a "bleach kraft" paper pulp mill at Moss Point, Mississippi, on the Escatawpa River upstream from its confluence with the Pascagoula River. Treated effluent from the mill's papermaking process is discharged into the Escatawpa River.

The plaintiffs, Kenneth D. and Elsie Jeanette McGuire ("the McGuires") are the owners of Mac's Fishing Camp, located on Bennett Bayou in Jackson County, Mississippi. Mac's Fishing Camp sells bait and tackle, rents and stores boats and other "marine appliances," serves as a launching point for boats, and provides other goods and services for persons using the Escatawpa and Pascagoula Rivers. The [*2] plaintiffs are also recreational users of the rivers and have consumed fish from the rivers. They own real property which abuts the Escatawpa and lies within its flood plain.

The plaintiffs invoke the jurisdiction of this Court pursuant to *28 U.S.C. § 1331*, and *28 U.S.C. § 1332(a)(1)*. Their complaint charges that IP should have known, no later than 1985,

> that a by-product of the bleach kraft pulp making process is 2.3.7.8-tetrachlorodibenzo-p-dioxin (TCDD) and its mill was discharging at levels which resulted in contamination of the river system and aquatic life downstream from the mill discharge site. Despite possessing such knowledge, International Paper Company continued its operations at Moss Point, Mississippi, and at no time issued any warnings to the public, including plaintiffs, that fish in the Escatawpa and East Pascagoula Rivers might or would be contaminated with TCDD, or that there was any hazard to persons or property.

(Complaint, P 7). The complaint further alleges that the International Paper Company mill at Moss Point, Mississippi, also discharges into the waters of the Escatawpa [*3] River dark and foul smelling effluent in sufficient quantities that the color of the rivers is often altered. The operation of the International Paper Company mill has been conducted in a manner that has resulted in the aquatic life of the Escatawpa and East Pascagoula Rivers being so contaminated with TCDD and a closely related chemical known as TCDF that the State of Mississippi has banned commercial fishing and consumption of fish from the Escatawpa River below International Paper Company's mill to the Mississippi Sound.

(Complaint, P 7).

According to the complaint, the defendant is dumping toxic chemicals into the Escatawpa, polluting "the entire stretch of river and all creeks, bayous, lakes, other rivers and other bodies of water into which the streams flow." (Complaint, P 8). The plaintiffs attribute this pollution with causing the State of Mississippi to post warning signs banning commercial fishing on the Escatawpa and recommending that fish taken from those bodies of water not be consumed by the public. (Complaint, P 9) The plaintiffs claim they have been damaged through injury to their business, loss of income, damage to real property, and resulting emotional anxiety [*4] and worry. (Complaint, P 9).

In addition to their individual claims, the plaintiffs propose a class action on behalf of persons falling within one of the following subclasses:

> (1) all present and former owners of real property which properties make connection with the flood plain of the Pascagoula/Escatawpa River and estuarine system and who owned such property prior to the posting of notices by the State of Mississippi warning of dioxin contamination of fish taken from the river and estuarine system;

(2) all present and former residents of real property which property makes connection with the flood plain of the affected river system and who resided upon said property prior to the posting of notices by the State of Mississippi warning of dioxin contamination of fish taken from the river and estuarine system;

(3) all present and former marina owners or operators whose marinas are or were affected by the defendant's contamination of the Pascagoula/Escatawpa River and estuarine system and who own [sic] or operated such marinas prior to the posting of notices by the State of Mississippi warning of dioxin contamination of fish taken from the river and estuarine system;

(4) all present [*5] or former business owners and operators such as commercial fishermen, bait and tackle shop owners, boat sales and boating equipment businesses whose business premises are located and affected by the contaminated river system;

(5) all persons who claim to have in the past regularly consumed fish taken from the Pascagoula/Escatawpa River and estuarine system and to have made recreational use of the system, and who have suits based upon such consumption or use pending in Mississippi state courts against the defendant herein as well as those persons who are similarly situated who have not filed suit as of the date of the filing of this class action complaint.

(Complaint, P 13). In addition, the plaintiffs, in their Memorandum in Support of Motion for Class Certification, propose a sixth subclass:

(6) Fish or hunting camp owners or lessees, which camps are located within Jackson County, Mississippi, and which lie within two miles of the Escatawpa and Pascagoula Rivers floodplain.

(Memorandum in Support of Motion for Class Certification, p. 5).

The Plaintiffs allege seven separate causes of action against the defendant, as follows:

1. Negligence

2. Intentional Infliction [*6] of Emotional Distress

3. Strict Liability

4. Nuisance

5. Trespass

6. Violation of Environmental Statutes

7. Conspiracy

The plaintiffs demand compensatory damages from the defendant for:

(a) Toxic pollution of the lands, waters and property of each plaintiff;

(b) Destruction of the value of the plaintiffs' said lands, rendering their said lands unmerchantable and without substantial fair market value;

(c) Exposure of the lands, waters and property of plaintiffs to toxic chemical pollution, hazardous to health;

(d) Exposure of each plaintiff's body to toxic chemical pollution, hazardous to health;

(e) Necessity of each plaintiff undergoing and incurring the expense of undergoing annual toxic chemical medical screening each year for the remainder of his life;

(f) Necessity of each plaintiff testing on a regular basis his property for toxic chemical contamination;

(g) Intense fear, and associated acute and chronic severe mental pain, anguish,

distress and depression, which is real and reasonable of each plaintiff, that he will suffer cancer and/or other long-term personal injury from TCDD exposure or exposure to other chemical contaminants released by the defendant, the [*7] manifestations of which may be delayed for years or may commence at any time;

(h) Severe mental distress, pain and anguish from having to deal from a business and economic point of view with the fact that plaintiffs' lands, constituting for each plaintiff in this case a major portion of his total assets, are now unmerchantable and without substantial market value because of the aforesaid chemical contamination and exposure to said chemical contamination proximately caused by defendant;

(i) Annoyance, discomfort and inconvenience occasioned by the defendant's created nuisance; or the loss of use and enjoyment of each plaintiff's separate property and the loss of use and enjoyment of the river system itself to each plaintiff.

(Complaint, P 47). The plaintiffs also seek punitive damages, and equitable relief from the "usurpation of [their] riparian rights" in the form of a penal bond "to stimulate the defendant to develop a plan to abate and correct the nuisance within a time certain." (Complaint, PP 52, 54).

The immediate question before the Court is not the merits of the plaintiffs' suit, but [HN1] the appropriateness of class action certification, which is a procedural question. *See* [*8] *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 2152-53, 40 L. Ed. 2d 732 (1974)*. The burden of proof is on the plaintiffs to show that the suit should proceed as a class action. *See State of Alabama v. Blue Bird Body Co., 573 F.2d 309 (5th Cir. 1978)*; *Garcia v. Gloor, 618 F.2d 264, 267 (5th Cir. 1980)*; *Miller v. Mackey International, Inc., 452 F.2d 424 (5th Cir. 1971)*.

The plaintiffs must show that the necessary requirements for class certification have been met in this case. [HN2] Those requirements include two that have been found by the courts to be implicit in *Rule 23(a) of the Federal Rules of Civil Procedure*. In the first place, a class capable of definition must exist. An identifiable class is essential so that the Court can determine whether a particular claimant is a class member. *DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam)* ("adequately defined and clearly ascertainable"). The inquiry is whether "it is administratively feasible for the court to determine [*9] whether a particular individual is a member." 7A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 2d § 1760 at 121 (1986). This requires that the class be defined "in objective terms that are capable of present ascertainment." *Manual for Complex Litigation* 2d § 30.14 at 213 (1985). In the second place, the representative parties must be members of the proposed class. *Wagner v. Central Louisiana Elec. Co., Inc., 99 F.R.D. 279, 281 (E.D. La. 1983)*.

[HN3] *Rule 23(a)* itself imposes the following prerequisites to the certification and the maintenance of a class action:

(1) that the class is so numerous that joinder of all class members is impracticable,

(2) that there are questions of law or fact common to the class,

(3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) that the representative parties will fairly and adequately protect the interests of the class.

Each of these requirements must be satisfied as to each subclass. *See Fed.R.Civ.P. 23(c)(4)(B)*; *Stewart v. Winter, 669 F.2d 328, 337 (5th Cir. 1982)*.

In addition, the plaintiffs must [*10] show that the action qualifies for class action treatment under at least one of the subsections of *Fed.R.Civ.P. 23(b)*. *Eisen v. Carlisle & Jacquelin, supra, 417 U.S. at 163*; *Payne v. Travenol Laboratories, Inc., 673 F.2d 798, 810 n. 9 (5th Cir. 1982)*. Under the particular class approach proposed by plaintiffs' counsel, the plaintiffs must demonstrate under *Rule 23(b)(3)*

> that the questions of law or fact common to the members of the class predominate over any questions affecting only

individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of [*11] a class action.

1. *A Definable Class*

Not all subclasses proposed to the Court by the plaintiffs are clearly defined. Subjective elements are present in subclasses 3 (marina owners whose marinas are "affected" by the river's contamination), 4 (business owners whose businesses are "located by" and "affected by" the contaminated river), and 5 (persons who "claim" to have "regularly" consumed fish taken from the river and who "claim" to have made recreational use of the river). In their memorandum brief, the plaintiffs modify their definition of subclass 4 to include owners of businesses in Jackson County "directly related" to fishing, recreational or other uses of the river, who sell products and services "directly related" to the use of the river. The terms "related to," "affected by," and "located by" are not capable of the kind of precise definition needed to facilitate the identification of a class.

Similarly, the criteria for determining the members of the fish consumer subclass are vague and indefinite. The proposed definition depends on the state of mind of each putative claimant, making it difficult, if not impossible, to know if he or she is a member of the subclass. [*12] Here, we are we not dealing with workers in a laboratory or factory exposed to concentrated amounts of dioxin. In fact, the proposed definition lacks any limitation of time or place that can be objectively ascertained.

The plaintiffs, in their rebuttal memorandum, propose that the Court establish criteria for determination of this subclass, such as requiring all proposed class members to submit to blood tests and depositions. However, such an approach would necessitate the holding of an inestimable number of individual hearings, in order to determine a subclass which plaintiffs' counsel estimates to comprise 150,000 people, and would create insurmountable administrative problems. The judicial and litigation costs of making these threshold determinations would eliminate any possibility that a class action would yield any of its intended efficiencies.

2. *Membership in the Proposed Class; Numerosity; Typicality; Commonality*

[HN4] The McGuires must show that they are members of each of the subclasses for which they seek certification, and that the members of the subclasses are so numerous that joinder of all members is impracticable.

They must show that there are questions of law or fact [*13] common to the class as a whole. The Court notes that the requirements of *Rule 23(a)(2)* are less stringent than those of *Rule 23(b)(3)*. *Rule 23(a)(2)* requires only a showing of a common question. *Rule 23(b)(3)* requires that those common issues predominate over the individual ones. *Rule 23(b)(3)* will be discussed at greater length below.

The McGuires must also show that their claims are typical of the claims of each subclass. Typicality ensures that the named plaintiffs' claims are so similar to the absent class members' claims that the named plaintiffs' claims can serve as proxies for those of the absent claimants. 7A Wright, Miller & Kane § 1764 at 232-33. This requirement "cannot be satisfied solely by conclusory allegations." *Id. at 235*. The typicality requirement refers to the nature of the claim and not to the specific facts from which it arose. Factual differences are acceptable provided the claim arises from the same event or course of conduct and is based on the same legal theory.

The Court finds that a readily ascertainable class is crucial to the plaintiffs' claims of membership, numerosity, typicality and commonality. Because of this shortcoming, and because of the other [*14] findings set forth below, the Court deems it unnecessary to rule on

these issues.

3. *Adequacy*

[HN5] The basic thrust of *Rule 23(a)(4)* is whether or not the putative class of plaintiffs will fairly and adequately protect the interests of those whom they claim to represent. Courts are commonly faced with two factors to consider. First, whether the class is assured vigorous prosecution, 7A Wright, Miller & Kane § 1766 at 302-03; and second, whether there is an absence of conflict. *Id.* § 1768 at 326.

The Court must evaluate the adequacy of both the party representatives (the McGuires) and their legal representatives. The Court finds that it is not at all clear that the McGuires understand just how expensive and painstaking the determination of their proposed class action is likely to be. There is no telling analysis of plaintiffs' resources. There has been no forecast presented to the Court of the financial needs of the action and the funding sources to meet them. In addition, the McGuires seem to lack familiarity with their suit, and are not able to articulate the class they seek to represent. (Deposition of Kenneth McGuire, pp. 7, 17-19, 24, 63, 72, 97; Deposition of Elsie McGuire, [*15] pp. 8-9). Blind reliance, even on competent counsel, is insufficient. The due process interests of the absent class members require some restraint on the attorneys. Therefore, the Court finds that the record does not support a finding that these plaintiffs will adequately represent absent class members.

The attorneys themselves must be qualified, experienced and able to conduct the litigation. *Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968)*. In support of this requirement, counsel have directed the Court's attention to class action suits in which they have been involved. Standing alone, citation of these cases does not establish an adequate record in the type of litigation here involved. Nor is there any indication of how many lawyers will actually devote time to this case or what their support staffs or resources are.

The Court does not question the competence of plaintiffs' counsel. However, having thoroughly reviewed the file, this Court is of the opinion that the record is inadequate to support a positive finding that the plaintiffs' attorneys will adequately represent absent class members. The Court emphasizes that it does not conclude [*16] the attorneys are inadequate counsel; rather, the record reflects too little for the Court to make a finding.

4. *Predominance and Superiority*

[HN6] *Rule 23(b)(3)* requires the Court to find that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." In their memorandum brief, the plaintiffs provide meager analysis of this complex question, except to offer argument on the broad question of whether "class action procedure is appropriate for mass tort litigation." (Memorandum in Support of Motion for Class Certification, pp. 10-16). Their argument is not directed to the specific facts and theories of this case.

If the "main issues in a case require the separate adjudication of each class member's individual claim or defense, a *Rule 23(b)(3)* action would be inappropriate." 7A Wright, Miller & Kane § 1778 at 535. Where class members' injuries are separate and individual, common questions typically do not predominate. *See, e.g., In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 854 (9th Cir. 1982)*, [*17] *cert. denied, 459 U.S. 1171 (1983)*. In the case *sub judice,* individual issues of liability, causation and damages seem to predominate over any common issues of fact or law. *See id. at 852*; *see also McDonnell Douglas Corp. v. United States Dist. Court, 523 F.2d 1083, 1085-87 (9th Cir. 1975), cert. denied, 425 U.S. 911, 47 L. Ed. 2d 761, 96 S. Ct. 1506 (1976)*.

In the few mass tort cases where a *Rule 23(b)(3)* class has been approved, unique factors, which are absent here, have been controlling. For instance, in *In re "Agent Orange" Prod. Liab. Litig., 818 F.2d 145 (2d Cir. 1987), cert. denied, 484 U.S. 1004 (1988)*, the Second Circuit approved a *Rule 23(b)(3)* class, but only because of "the centrality of the military contractor defense." *Id. at 166*. Had that common defense been absent, the Second Circuit observed, "certification of a class action would have been error," because (1) proximate causation is a "highly individualistic" determination [*18] which "depends upon the characteristics of individual plaintiffs *(e.g.,* state of health, lifestyle) and the nature of their exposure;" (2) with the exception of the common military-contractor defense, "there may be few, if any, common questions of law;" and (3) "the dynamics of a class action" impair the ability of representative parties to protect the interests of the class because "potential

plaintiffs in toxic tort cases do not share common interests because of differences in the strength of their claims." *Id. at 165-66*. Further, the Second Circuit opined that the Agent Orange litigation "justifies the prevalent skepticism over the usefulness of class actions in so-called mass tort cases and, in particular, claims for injuries resulting from toxic exposure." *Id. at 164*.

*Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir. 1992), reh. en banc granted, 990 F.2d 805 (5th Cir. 1993)*, a case which the plaintiffs assert to be factually similar to the case *sub judice,* actually presents a quite different scenario, as it arose from an explosion at an oil refinery. [*19] In such "single occurrence" cases, the facts and law are necessarily more common and typical for all injured parties. In contrast, the proposed claimants in this case are affected individually over a long period of time and in different ways.

Both the property damage claims and emotional distress claims depend on a wide variety of individual factors. Individual inquires will also be required relating to causation and damages, *e.g.,* whether a class member might have been exposed to dioxin in other circumstances, whether he or she suffers from a pre-existing disease, or whether other factors may have caused business losses or reduction in property values.

In *Mattoon v. City of Pittsfield, 128 F.R.D. 17 (D. Mass. 1989)*, the plaintiffs sought to represent a class of city residents who became ill with a virus brought on by contaminated drinking water. In denying certification, the court held:

> Proximate cause will necessarily be different for every person in the proposed class, based on each person's length of exposure to contaminated water, notice, preexisting medical conditions and other factors. For these reasons, defendants' liability can not "be [*20] determined on a class-wide basis. . . ." Common questions, in sum, do not predominate. Proximate causation with regard to each party remains a thorny, individual question. The liability of each defendant under the various legal theories asserted in the complaint will also require individual attention. Damages, of course, are individual issues as well.

*Id. at 21* (quoting *Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. 1988))*.

The present action does not turn on a single act committed by the defendant that affects all class members identically, such as an explosion, a single toxic spill, or an air crash. Rather, the claims concern an alleged course of conduct extending over a number of years, during which class members supposedly claim that they have been affected in different ways and at different times.

IP has also raised affirmative defenses that require individual examination. Depending on their knowledge and conduct, some class members' claims may be barred or diminished by contributory negligence. Claimants who claim to own businesses will be subject to individual defenses, such as failure to [*21] mitigate damages. Some claims may be barred by the applicable statute of limitations.

Overall, the issues that are individual in nature predominate over those that are common. Even a recovery by the class representatives will not necessarily entitle other class members to recover. This means that class treatment cannot achieve the economies of time, effort and expense which justify the other sacrifices of class actions.

As stated earlier, the plaintiffs are required to prove that a class action suit is a superior medium for adjudication. The Court finds, however, that a class action is not the superior method for the fair and efficient adjudication of this controversy. This is not the only dioxin litigation against IP, nor is it the only such suit involving these plaintiffs and their attorneys. On November 14, 1990, the McGuires filed suit in the Circuit Court of Jackson County, Mississippi, against IP, Georgia-Pacific Corporation, and other defendants. Subsequent to the McGuire's suit, 79 similar suits were filed against IP on behalf of approximately 5,000 plaintiffs. Three of these cases have already been tried, and appeals taken in two of them to the Mississippi Supreme Court. There [*22] are compelling reasons for permitting the dioxin cases to remain in state court, where the predominantly state law claims can be resolved. The factors listed in *Rule 23(b)(3)* support this finding:

> (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions.

1994 U.S. Dist. LEXIS 4783, *22

The major factors supporting individual litigation include extremely large damage claims and a need to tailor trial conduct to individual issues. *See, e.g., Butt v. Allegheny Pepsi-Cola Bottling Co., 116 F.R.D. 486, 492 (E.D. Va. 1987)*. Individual interests are at their peak in tort cases, *see, e.g., In re "Agent Orange", supra, 818 F.2d at 165*, and the strength of individual interests can be gauged in large part from the number of individual suits already filed. "The court should inform itself of any litigation actually pending by or against the individuals. The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action." *Advisory Committee Notes to Rule 23,* 39 F.R.D. 69, 104 (1966). *Compare Riordan v. Smith Barney, 113 F.R.D. 60, 66 (N.D. Ill. 1986)* [*23] (class action found to be "superior" method of adjudication in light of "the fact that no other actions against defendants arising out of the transaction at issue are currently pending").

Here, it is clear that "some of the interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action." 7A Wright, Miller & Kane § 1780 at 570. The defendant has presented affidavits to the effect that there are 79 dioxin cases pending against IP in the Mississippi courts on behalf of almost 5,000 plaintiffs, and additional cases involving thousands of plaintiffs against Georgia-Pacific (many of whom also have cases pending against IP).

> (B) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class.

The plaintiffs are essentially asking this Court to supplant state court litigation with a federal class action. The Court finds, however, that the existing state court litigation is extensive and superior to the proposed class action. *See, e.g., Pennsylvania v. Budget Fuel Co., 122 F.R.D. 184, 185-86 (E.D. Pa. 1988)* (ongoing [*24] state court action superior to a federal class action).

> (C) The desirability or undesirability of concentrating the litigation of the claims in the particular forum.

Most of the claims presented in the class action, *e.g.* emotional distress, trespass and nuisance, are state-law claims best resolved in the state courts. In fact, the viability of the claims as a matter of state law is currently pending in the two appeals before the Mississippi Supreme Court. (Defendant's Memorandum in Opposition to Class Certification, p. 32). A federal decision on these issues would be disruptive of the emerging state law. These questions are more appropriately addressed to the Mississippi trial courts, whose decisions, unlike this Court's, may be appealed directly to the Mississippi Supreme Court. Considerations of comity and federalism support denying certification in this case.

> (D) The difficulties likely to be encountered in the management of a class action.

Finally, the Court reiterates the anticipated problems in managing a case of this magnitude. If a class were certified, an inordinate amount of time and expense would be spent addressing individual claims, involving evidentiary [*25] development at hearings or trials. Whatever efficiency might be gained by a class action would surely be outweighed by the unmanagability of the litigation.

Upon consideration, this Court concludes that the plaintiffs have failed to meet their burden of proof to show that their suit should proceed as a class action. The plaintiffs have not persuasively demonstrated that class certification as requested under *Fed.R.Civ.P. 23(b)(3)* is appropriate. The plaintiffs have also failed to adequately define a class, and have failed to show that they will fairly and adequately protect the interests of the class. With these deficiencies, the Court finds it unnecessary to rule on any other issues raised. The instant application for class certification shall accordingly be denied.

Counsel for the defendant shall submit an Order in conformity with this Memorandum Opinion within ten (10) days of the date of entry hereof.

DATED, this the 18th day of February, 1994.

David Bramlette

UNITED STATES DISTRICT JUDGE