

Newberg on Class Actions
Database updated June 2008

Alba Conte and Herbert B. Newberg

Chapter 3. Prerequisites for Maintaining a Class Action

References

## § 3:5. Impracticability of joinder, Rule 23(a)(1)—Evidence of exact class size is not required

Though some courts have said that a class action determination may not be based on mere speculation,[1] the prevailing view is that the plaintiff need not allege the exact number or identity of class members.[2] A contrary rule would foreclose most class litigation because of the impossibility of identifying all class members at the outset and would make large class suits unduly burdensome because of the great expense involved in identifying members. While the plaintiff has the burden of showing that joinder is impracticable,[3] a good-faith estimate should be sufficient when the number of class members is not readily ascertainable.[4] Courts have denied class motions for lack of numerosity when the plaintiff has failed to provide facts or demonstrate circumstances that would provide support for a reasonable estimate of class size.[5]

**Numerosity Threshold**

Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds,[6] or thousands,[7] or even millions.[8] In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met. The issue ordinarily receives only summary treatment in such cases and has often gone uncontested.[9]

Because of the conflicting precedents and the broad discretion vested in the trial court, it is impossible to predict with certainty a minimum number that will satisfy the Rule 23(a)(1) prerequisite in every case. Nevertheless, a general approximation may be helpful.

Certainly, when the class is very large, for example, numbering in the hundreds, joinder will be impracticable; but in most cases, the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower. While emphasizing that the joinder impracticability requirement requires examination of the specific facts of each case, the Supreme Court in General Telephone Co. v. E.E.O.C.[10] cited several lower court precedents denying certification to classes in the approximate range of 18 to 37 and concluded, in light of those

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 2 of 31

CLASSACT § 3:5                                                          Page 2
1 Newberg on Class Actions § 3:5 (4th ed.)

illustrative precedents, that a court would probably require joinder of all aggrieved parties rather than certify a class with as few as 15 members.[11]

In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone. Joinder of larger classes might sometimes be practicable, or the action might fail to meet the superiority test of Rule 23(b)(3). Joinder of a smaller class may be impracticable because of the circumstances of the particular case.[12]

However, the plaintiff whose class numbers in the 40-or-more range should have a reasonable chance of success on the basis of number alone.

**Upper Limits of Class Size**

When class size reaches substantial proportions, the joinder impracticability test is satisfied by numbers alone. As the Supreme Court noted in General Telephone Co. v. E.E.O.C.: "The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations."[13] Califano v. Yamasaki[14] recognizes that a national class may be appropriate in certain circumstances.[15] The salient issue commonly raised in large cases under Rule 23(b)(3) by the opposing party goes to the manageability and superiority of the proposed class action relative to other means for fair adjudication of the controversy.[16]

[FN1] **First Circuit**

Makuc v. American Honda Motor Co., Inc., 835 F.2d 389, 24 Fed. R. Evid. Serv. 456, 9 Fed. R. Serv. 3d 1179, 5 U.C.C. Rep. Serv. 2d 565 (1st Cir. 1987) (consumer protection/products liability and breach of warranty). An expert's testimony that 1 of every 50 axles on a particular motorcycle was defective did not establish numerosity in a consumer protection action, but showed only that other people might have suffered an injury similar to that of the plaintiff. The plaintiff was unable to demonstrate that even one other person was injured due to a defective axle after two years of discovery and there was no evidence that even one other Honda axle had failed.

**Second Circuit**

In re Smith, 95 B.R. 286 (Bankr. N.D.N.Y. 1988). A plaintiff debtor did not meet the numerosity requirement when she failed to offer evidence of any other debtors who had had their income tax refund garnished by the student loan creditor. "A named plaintiff may only rely on estimates or speculative and conclusive representations where the relief sought is limited to injunctive and declaratory relief." In re Smith, 95 B.R. 286, 292 (Bankr. N.D.N.Y. 1988).

**Third Circuit**

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 3 of 31

CLASSACT § 3:5                                                                              Page 3
1 Newberg on Class Actions § 3:5 (4th ed.)

Stewart v. Abraham, 275 F.3d 220, 51 Fed. R. Serv. 3d 1145 (3d Cir. 2001), cert. denied, 122 S. Ct. 2661, 153 L. Ed. 2d 836 (U.S. 2002). An arrestee who brought a § 1983 class action under the Fourth Amendment against the city relating to the city's rearrest policy demonstrated numerosity, commonality, and typicality. Several arrestees detained under this procedure filed a class action against county officials in federal district court alleging that they had a constitutional right to a judicial hearing on the issue of probable cause and requesting declaratory and injunctive relief.

Plaintiffs satisfied the numerosity requirement when both parties conceded that, prior to the injunction, the District Attorney had re-arrested 67 defendants under Rule 544 pursuant to the disputed policy. Forty-one of those defendants had been discharged for lack of evidence and the resulting failure to establish probable cause. The number of class members would increase further if the policy continued.

Cf. Lloyd v. City of Philadelphia, 121 F.R.D. 246 (E.D. Pa. 1988) (First and Fourteenth Amendments). A provisional class was certified consisting of current and former city employees who were required to join a union despite their objections. The court would permit the parties to conduct additional discovery to determine whether the class satisfied the joinder impracticability requirement, which was not met by speculation that the class could exceed 10,000 employees. The plaintiffs could show only that the 4 original plaintiffs and 14 potential class members objected to compulsory union membership.

## Sixth Circuit

O'Neil v. Appel, 165 F.R.D. 479, 489 (W.D. Mich. 1996) (securities). Certification was denied in a shareholder action alleging misrepresentation involving the sale of common stock and stock purchase warrants. The court found that the plaintiffs had asked it "to engage in guesswork by presuming a large number of purchasers ('possibly hundreds') on the basis of the existence of ten million shares of outstanding common stock." When the size of a proposed class is purely speculative, the numerosity requirement of Rule 23(a) is not met.
There is no indication concerning how many of these persons held shares before the beginning of the class period and how many acquired them during the class period. Reliance upon the mere number of outstanding shares as indicative of a large number of purchasers could be misleading in this case, because of the huge concentration of shares in the hands of insiders, who are expressly excluded from the class.

O'Neil v. Appel, 165 F.R.D. 479, 489 (W.D. Mich. 1996). There had been no showing of any difficulty in ascertaining the identity of class members, nor had the plaintiffs made any effort to do so.

## Seventh Circuit

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 4 of 31

CLASSACT § 3:5                                                                 Page 4
1 Newberg on Class Actions § 3:5 (4th ed.)

Marcial v. Coronet Ins. Co., 880 F.2d 954 (7th Cir. 1989) (RICO). The district court denied certification of a class of policyholders in a racketeering action against an automobile insurer and adjustor. Plaintiff alleged mail and wire fraud stemming from polygraph tests used by the insurer before paying insurance claims. Plaintiffs asserted that the class constituted approximately 400 to 600 persons. However, these figures assumed that every person who failed the test and was told that the insurance company had rejected his or her claim was rejected solely on the basis of the test results. The record did not indicate whether this assumption was correct and, thus, the plaintiffs' assertion was considered speculative.

Osterberg v. Board of Trustees of State Employees' Retirement System, 722 F. Supp. 415 (N.D. Ill. 1989) (civil rights). A state employee challenging the denial of disability benefits during a high-risk pregnancy failed to meet the numerosity requirement in an action against the Board of Trustees of Illinois State Employees' Retirement System and others. While it was true that the state of Illinois employed tens of thousands of women and that many of those women were of childbearing age, the court could not take judicial notice of the fact that the number of women who would suffer a disabling pregnancy was so large as to make joinder impracticable.

Marcial v. Coronet Ins. Co., 122 F.R.D. 529 (N.D. Ill. 1988), aff'd, 880 F.2d 954 (7th Cir. 1989) (RICO) (allegations of numerosity too speculative in action involving mandatory polygraph examination as precondition to theft or vandalism claims).

**Eighth Circuit**

Saey v. CompUSA, Inc., 174 F.R.D. 448, 39 Fed. R. Serv. 3d 255 (E.D. Mo. 1997). In an action under Missouri's Merchandise Practices Act against a computer retailer that allegedly sold returned computers as new without informing second purchasers and without providing a discount, the district court held that the numerosity requirement for class certification was not satisfied, because the retailer's inability to determine whether a particular computer had been previously sold and then returned, or whether a computer had been opened and used by first buyer, made identification of class members other than named plaintiff difficult.

**Eleventh Circuit**

Jackson v. Motel 6 Multipurposes, Inc., 175 F.R.D. 337 (M.D. Fla. 1997). A nationwide class of lodging patrons and would-be patrons alleging that Motel 6 unlawfully discriminated against them on the basis of their race was certified. They alleged that this discrimination occurred not only at five separate motels but also nationwide, manifesting itself in a variety of ways, such as: (1) refusing to rent otherwise vacant rooms to African-American and other non-Caucasian persons, (2) segregating African-American

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW    Document 15549-65    Filed 09/29/08    Page 5 of 31

CLASSACT § 3:5                                                                              Page 5
1 Newberg on Class Actions § 3:5 (4th ed.)

and other non-Caucasian patrons from Caucasian patrons within a single facility, and (3) providing substandard housekeeping and other services to African-American and other non-Caucasian patrons as compared to Caucasian patrons. The numerosity requirement was met when over 550 people responded to the notices published by the Jackson plaintiffs, as approved by this court's order granting in part, denying in part, the plaintiffs' motion for leave to conduct class. Joinder would be impracticable given the very real notion that many of the alleged victims will never be located, let alone identified prior to trial.

Sandlin v. Shapiro & Fishman, 168 F.R.D. 662 (M.D. Fla. 1996). Class certification was denied in an action by mortgagors against mortgagees, alleging that mortgagees violated RICO and Fair Debt Collection Practices Act by charging unauthorized payoff fees. The plaintiffs offered no proof or estimate of the proposed class size. Class members must have suffered actual injury to have standing to sue, but the plaintiffs presented no evidence as to actual number of class representatives who paid or were forced to pay the unauthorized payoff fees. Thus, the court could not ascertain whether the numerosity requirement had been satisfied.

Sueoka v. U.S., 101 Fed. Appx. 649 (9th Cir. 2004) (Not selected for publication in the Federal Reporter). The district court erroneously found that plaintiffs, who were bringing a purported class action for disgorgement of interest and return of improper expense deductions on currency and cash cost bonds, provided no information regarding number of bonds and therefore failed to provide adequate data on the numerosity requirement, where numerosity data relied on by plaintiffs, although not explicit, could have pertained only to cash cost bonds. The plaintiffs showed numerosity for one subclass, even though plaintiffs could not offer estimate as to class size since it included only future claimants whose cause of action had not yet arisen, where plaintiffs sought only injunctive or declaratory relief, which allowed the numerosity requirement to be relaxed and allowed plaintiffs to rely on reasonable inference arising from plaintiffs' other evidence that the number of unknown members was sufficient to make joinder impracticable. The district court correctly found that subclasses A-1, A-2 and A-3 (the "interest" subclasses) satisfy the numerosity requirement, but abused its discretion in concluding that plaintiffs failed to meet their burden of proving numerosity as to the B (cash cost bonds—interest) and C-1 through C-3 (cash cost bond—improper deductions) subclasses. The district court erroneously found that because plaintiffs defined their subclasses as having posted cash cost bonds and the data submitted included information as to other types of bonds, it was left with no information in the record regarding the number of bonds—in absolute numbers, by percentage, or on average—that were secured by cash rather than posted by a surety. The flaw here was that the numerosity data relied on by the plaintiffs referred to the plaintiffs' interrogatories and the government's responses, which could only have referenced cash cost bonds because the interrogatories expressly sought data as to bonds that could be "returned."

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 6 of 31

CLASSACT § 3:5                                                                Page 6
1 Newberg on Class Actions § 3:5 (4th ed.)

[FN2] **First Circuit**:

Upper Valley Ass'n for Handicapped Citizens v. Mills, 168 F.R.D. 167, 24 A.D.D. 1446, 112 Ed. Law Rep. 943 (D. Vt. 1996). Class certification was appropriate in a civil rights action alleging that the Commissioner of the Vermont Department of Education and members of the Vermont State Board of Education had violated rights secured by the Individuals with Disabilities Education Act. The court noted that courts have looked favorably upon requests for class certification in cases which allege systemic violations of the IDEA. The plaintiffs asserted that there were more than 10,000 children who met the criteria for being disabled under the IDEA, but the defendants responded by claiming that the putative number of class members was highly inflated, arguing that the class consisted of children or parents who filed complaints under the IDEA and did not receive a response within the sixty-day time limit proscribed by the regulations. According to the defendants, fifty-seven complaints had been filed since 1993 and only one had gone unanswered for more than sixty days without the consent of the complainants. The court noted that the plaintiffs' complaint sought to remedy systematic failures to adopt and implement procedures for consideration of these petitions.

Assuming, arguendo, that the representations made by Defendants are accurate, the failure to comply with the requirements of the IDEA necessarily affect all children eligible for services under that statute, together with their parents, guardians and organizations representing their interests. Plaintiffs also dispute Defendants' failure to correct instances of noncompliance with the IDEA, an allegation much broader than mere objections to delays in processing complaints. Therefore, the class includes more than those individuals whose complaints are delayed beyond the statutory or regulatory time period. In view of these factors, joinder of the members of the class and the proposed subclass is highly impracticable.

Upper Valley Ass'n for Handicapped Citizens v. Mills, 168 F.R.D. 167, 169 to 170, 24 A.D.D. 1446, 112 Ed. Law Rep. 943 (D. Vt. 1996).

**Second Circuit**

Robidoux v. Celani, 987 F.2d 931, 25 Fed. R. Serv. 3d 86 (2d Cir. 1993) (government benefits). In an action by applicants for Vermont public assistance benefits, challenging alleged delays in processing their applications by the state Department of Social Welfare, the numerosity requirement was met when plaintiffs presented documentary evidence of delays in 22 to 133 cases per month, depending on the month and the assistance sought (citing Newberg on Class Actions (2d ed.)).

In re Joint Eastern and Southern Dist. Asbestos Litigation, 129 B.R. 710 (E.D. N.Y. 1991), judgment vacated on other grounds, 982 F.2d 721, 24 Fed. R. Serv. 3d 686 (2d Cir. 1992), opinion modified on reh'g, 993 F.2d 7 (2d Cir. 1993) (citing Newberg on Class Actions (2d ed.).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Andre H. by Lula H. v. Ambach, 104 F.R.D. 606, 23 Ed. Law Rep. 914, 40 Fed. R. Serv. 2d 1319 (S.D. N.Y. 1985) (health). Numerosity requirement was satisfied by the existence of over 40 class members; class membership consistently revolved.

Folsom v. Blum, 87 F.R.D. 443 (S.D. N.Y. 1980) (government benefits). Defendant's argument that numerosity was lacking because plaintiff could not state the exact number of persons in the class was characterized as "pure sophistry" by the court, where the exact number was known to the defendant, who had the means to identify class members.

**Third Circuit**

Welch v. Board of Directors of Wildwood Golf Club, 146 F.R.D. 131, 25 Fed. R. Serv. 3d 1097 (W.D. Pa. 1993) (employment/sex). A Rule 23(b)(3) class of all past, present, and future female members of a golf club was certified in an action against the club, alleging discriminatory membership practices: plaintiffs alleged that, among other things, under the club's by-laws, either gender may be Class 2-A members, and therefore, eligible to become a Class A member, but when a married couple applied for membership, the application and the membership was in the husband's name and that under class rules, only males could continue to be Class A members upon the death or divorce of the other spouse. The numerosity requirement was satisfied when plaintiffs alleged that the proposed class consisted of over 250 female Class A family members of the club, an undetermined number of past members who were spouses of male Class A members, all future female spouses of male Class A members and females who currently held Class A memberships. The court rejected defendants' claims that the class action allegations failed to explicitly mention the inclusion of female spouses of class members, and thus, the class was comprised of only 21 members for all classes, when it was difficult for the court to discern from the record before it whether Class A family members were considered to be Class A members, but held nonetheless that the spouses of Class A members could reasonably be included in the plaintiffs' definition of all past, present, and future female members of all classes of the golf club.

Easton & Co. v. Mutual Ben. Life Ins. Co., Fed. Sec. L. Rep. (CCH) ¶97348, 1993 WL 89146 (D.N.J. 1993). In a securities action by bondholders, the numerosity requirement was met when the plaintiffs established the existence of a number of institutional bondholders and that a large number of transactions had taken place.

Lerch v. Citizens First Bancorp, Inc., 144 F.R.D. 247 (D.N.J. 1992) (securities). A class was certified in an action by investors against a financial corporation, its executives, and auditor, alleging state and federal securities law violations. The plaintiffs clearly satisfied the numerosity requirement when 7,750,000 shares of stock held by thousands of persons were traded.

Ardrey v. Federal Kemper Ins. Co., 142 F.R.D. 105 (E.D. Pa. 1992).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 8 of 31

CLASSACT § 3:5                                                                Page 8
1 Newberg on Class Actions § 3:5 (4th ed.)

Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. 1989) ("No magic number exists satisfying the numerosity requirement").

Davenport by Fowlkes v. Gerber Products Co., 125 F.R.D. 116 (E.D. Pa. 1989) (tort, class certification denied on other grounds). The numerosity requirement was met in an action by parents of children and children suffering from "nursing bottle syndrome," despite the fact that the named plaintiff did not identify by name and address any other plaintiffs, when an affidavit by an expert physician indicated that more than 1,000 children are treated each year at Children's Hospital in Philadelphia for nursing mouth syndrome.

Bartelson v. Dean Witter & Co., 86 F.R.D. 657 (E.D. Pa. 1980) (employment discrimination). In Title VII cases, when the exact size of the class is unknown, but common sense indicates it is large, courts have taken judicial notice of the fact and have assumed joinder is impractical (citing Newberg on Class Actions).

**Fifth Circuit**

Phillips v. Joint Legislative Committee on Performance and Expenditure Review of State of Miss., 637 F.2d 1014 (5th Cir. 1981) (employment discrimination). Where there were at least 33 class members and there were also an unknown number of future applicants who could not be identified, the numerosity requirement was clearly met; it was clearly impracticable to join unknown members.

Stewart v. Bank of Pontotoc, Mississippi, 74 F.R.D. 552 (N.D. Miss. 1977) (employment discrimination). Plaintiff would be granted class certification despite the fact that she could not identify other persons who had been the subject of an employer's discriminatory policies.

**Sixth Circuit**

Ockerman v. May Zima & Co., Fed. Sec. L. Rep. (CCH) ¶93,068 (M.D. Tenn. Dec 22, 1986).

Glover v. Johnson, 85 F.R.D. 1 (E.D. Mich. 1977) (criminal justice). The fact that the class is indefinite in number does not make it indefinite in membership; anyone who has certain qualities is a member.

**Seventh Circuit**

Owner-Operator Independent Drivers Ass'n v. Mayflower Transit, Inc., 204 F.R.D. 138 (S.D. Ind. 2001). Certification was granted in two separate class actions brought against a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 9 of 31

CLASSACT § 3:5                                                                    Page 9
1 Newberg on Class Actions § 3:5 (4th ed.)

motor carrier on behalf of owner/operators of truck tractors who entered into truck leasing agreements with the carrier or its agents, alleging state law violations and violations of federal truth-in-leasing regulations promulgated under Motor Carrier Act. The class was sufficiently definite to allow class certification without resolution of underlying merits. A nonprofit association of truck tractor owners was an adequate class representative.

In both cases here, the numerosity requirement was obviously satisfied. Initial document production indicated that the classes would consist of at least 1,000 similarly situated owner-operators whoare geographically dispersed throughout the nation. Joinder would be little short of impossible. The court noted that in contrast, it certified a class of 200 in Hubler Chevrolet, Inc. v. General Motors Corp., 193 F.R.D. 574, 577 (S.D. Ind. 2000). In Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992), the court approved a potential class consisting of 129 to 300 members where they were geographically dispersed.

Mayflower questions whether the plaintiffs have established even an approximate number of potential plaintiffs and argue that speculation as to the size of the classes cannot substitute for reasonable specificity. While it is correct in observing that we cannot found a class on purely speculative numbers, its argument rests on the erroneous proposition that we must resolve the question of who is owed money--that is, whether the claims are meritorious--before resolving the question of whether the proposed class--that is who may be owed money--meets the numerosity requirement.

Owner-Operator Independent Drivers Ass'n v. Mayflower Transit, Inc., 204 F.R.D. 138, 145 (S.D. Ind. 2001).

Peterson v. H & R Block Tax Services, Inc., 174 F.R.D. 78 (N.D. Ill. 1997). Class certification was appropriate in an action by taxpayers against tax preparer that allegedly deliberately misrepresented the availability of its refund anticipation loan service by way of a standard document and sold its service despite knowing that taxpayers could not receive loans if they claimed the earned income tax credit. "Common sense tells us that the class is large enough to make joinder impracticable and to satisfy numerosity." Peterson v. H & R Block Tax Services, Inc., 174 F.R.D. 78, 81 (N.D. Ill. 1997), citing Newberg on Class Actions (3d ed.). The court rejected the defendant's argument that proof of individual reliance was an especially significant issue in this case because it is necessary to establish violations of both RICO and the Illinois Consumer Fraud Act (ICFA).

First, with regard to points one and two, Block presents no evidence that any of these theoretical differences among class members actually exists See Arenson v. Whitehall Convalescent and Nursing Home, Inc., 164 F.R.D. 659, 665 (N.D. Ill. 1996) ("Whitehall fails to show, however, that oral representations … were ever actually made to any resident or sponsor… ."). Block identifies no specific advertising or promotional materials or oral representations to which the class members were exposed, arguing in a tentative manner only

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 10 of 31

CLASSACT § 3:5                                                                    Page 10
1 Newberg on Class Actions § 3:5 (4th ed.)

that class members "might have" seen or heard these things. Supported by nothing more than such vague assertions, Block's contention that class members' experiences varied on these fronts is pure guesswork.

Second, assuming that the class members were presented various ads, promotions and oral statements, none of these materials or statements forms the basis of the fraud alleged here. Rather, the claims in this case are premised on written misrepresentations contained in standard documents furnished to every class member—a situation that presents a "classic case for treatment as a class action." Haroco, Inc., 121 F.R.D. at 669. Consequently, any oral representations the class members received personally "may have supplemented the written documents that [the class] received, but they do not replace those written statements as the focus of the fraud alleged." Arenson, 164 F.R.D. at 665. Courts will find predominance despite the existence of oral representations that vary among class members if those representations are not integral to the alleged fraud. See Scholes v. Moore, 150 F.R.D. 133, 136 (N.D. Ill. 1993) (common issues predominated even though oral misrepresentations were made to plaintiffs because misrepresentations also appeared in standard written documents); In re United Energy Corp. Solar Power Modules Tax Shelter Investments Securities Litigation., 122 F.R.D. 251, 256, 14 Fed. R. Serv. 3d 734 (C.D. Cal. 1988) (class certification granted despite oral representations where complaint focused on disclosures and admissions in standardized letters) Cf. Marcial v. Coronet Ins. Co., 880 F.2d 954, 957-58 (7th Cir. 1989) (affirming denial of class certification where oral representations were the determining factor in the case). Here, as Peterson's allegations are predicated on standard written documents presented by Block, we cannot characterize any individualized representations outside these documents as "integral."

Peterson v. H & R Block Tax Services, Inc., 174 F.R.D. 78, 83 (N.D. Ill. 1997). The court noted that individual reliance is not an element of either the ICFA or a RICO claim based on mail and wire fraud the predicate RICO acts alleged here. The mail fraud statute, 18 U.S.C.A. § 1341, focuses on the defendant's conduct in devising or intending to devise a scheme to defraud, not the individual experiences of each defrauded person. Assuming reliance were relevant in this case, it is well-established that individual issues of reliance do not thwart class actions.

Scholes v. Tomlinson, 145 F.R.D. 485 (N.D. Ill. 1992) (securities). Putative class consisting of between 129 and over 300 investors met the numerosity requirement.

Harris v. General Development Corp., 127 F.R.D. 655 (N.D. Ill. 1989) (employment/race). Although plaintiffs acknowledged that the total number of African-American applicants denied employment was unknown because the defendants did not maintain records of the rejected applicants, the joinder impracticability requirement was met when plaintiffs alleged that at least 35 African-American applicants were rejected in the span of one month and that this pattern of discrimination was pervasive since 1987 (citing Newberg on Class Actions (2d ed.)).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 11 of 31

CLASSACT § 3:5                                                        Page 11
1 Newberg on Class Actions § 3:5 (4th ed.)

Jones v. Bowen, 121 F.R.D. 344 (N.D. Ill. 1988), order amended and supplemented, 1988 WL 105343 (N.D. Ill. 1988), order vacated in part, Unempl. Ins. Rep. (CCH) ¶14913A, 1989 WL 91865 (N.D. Ill. 1989), decision vacated on other grounds, 938 F.2d 801 (7th Cir. 1991) (government benefits/Fifth Amendment). The numerosity requirement was met despite defendant's argument that the class was not precisely defined and was overbroad, that the class was not limited to those individuals who fulfilled the requirements for the issuance of a Social Security number or duplicate card, and that the class could not include dependents or survivors of applicants for Social Security numbers because the benefits were not necessarily affected by the denial of the applications (citing Newberg on Class Actions (2d ed.)).

Patrykus v. Gomilla, 121 F.R.D. 357 (N.D. Ill. 1988) (civil rights). The existence of approximately 50 class members alleging improper police conduct met the joinder impracticability requirement when, among other things, the potential social prejudice against gays and lesbians or those who associate with them could deter class members from bringing their own suits (citing Newberg on Class Actions (2d ed.)) for the proposition that the complaint need not allege the exact number or identity of class members.

**Eighth Circuit**

Chutich v. Green Tree Acceptance, Inc., 759 F. Supp. 1403 (D. Minn. 1991), aff'd, 960 F.2d 721 (8th Cir. 1992).

Biben v. Card, Fed. Sec. L. Rep. (CCH) ¶92,462 (W.D. Mo. Jan. 6, 1986) (securities). Plaintiff need not allege the exact number or identity of class members (citing Newberg on Class Actions (2d ed.)).

**Ninth Circuit**

Arnold v. United Artists Theatre Circuit, Inc., 158 F.R.D. 439, 7 A.D.D. 1165 (N.D. Cal. 1994), as amended on denial of reconsideration, (Sept. 15, 1994). A Rule 23(b)(2) class was certified of disabled persons who used wheelchairs or who walked using aids such as crutches, charging that the defendant's movie theaters did not afford disabled persons full and equal access to their accommodations in violation of California and federal law. Joinder of plaintiffs was impracticable when plaintiffs submitted evidence that there are over 175,000 wheelchair users and over 700,000 semi-ambulatory persons in California and that movies are an important form of recreation for such persons; class members were unknown and not readily identified.

Schwartz v. Harp, 108 F.R.D. 279 (C.D. Cal. 1985).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**Tenth Circuit**

Joseph v. General Motors Corp., 109 F.R.D. 635 (D. Colo. 1986).

**Eleventh Circuit**

Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 35 Fed. R. Serv. 2d 1311 (11th Cir. 1983) (employment discrimination). When evidence of numerosity was at least sufficient to have permitted trial court to certify a conditional class, class certification denial would be remanded to allow plaintiff to present additional evidence. Plaintiff need not show exact number in class, and when the question is a close one, it is better to find the criterion satisfied than not.

Leszczynski v. Allianz Ins., 176 F.R.D. 659, 39 Fed. R. Serv. 3d 908 (S.D. Fla. 1997). Class certification was appropriate in an action by persons injured in accidents while occupying vehicles obtained from a single lessor against the automobile insurer asserting that automobile insurance policies provided medical payments, personal injury protection, and uninsured/underinsured motorist (UM/UIM) coverage for their injuries. The district court held that it could exercise supplemental jurisdiction over putative members of class, even though they did not each meet amount-in-controversy requirement with respect to claimed insurance coverage for medical payments and personal injury protection, and named plaintiffs' claims in certain counts of multicount class action complaint could be aggregated with their claims in another count which did meet threshold amount for diversity jurisdiction. Conditional certification was warranted with respect to numerosity requirement.

The plaintiffs alleged that at any given time, MBCC leased in excess of 80,000 vehicles in the United States, and that statistics indicated that in 1993, there were approximately 11,000,000 registered vehicles in Florida, as well as 199,039 crashes and approximately 215,000 fatal and nonfatal injuries, approximately two injuries per 100 registered vehicles per year in the State of Florida. The plaintiffs then applied this trend on a national basis to the total number of Mercedes Benz vehicles and concluded that approximately 1,600 people per year were injured in accidents involving Mercedes Benz leased vehicles, and that a significant portion of the aforementioned sought medical treatment for which medical payments (Med Pay) coverage would be payable under the Allianz Insurance policy. The plaintiffs argued that, taking these statistics into consideration, along with the geographic disbursement of Mercedes Benz Credit Corporation leased vehicles, and the judicial economy which would be served by certification, the numerosity requirement is satisfied by this proposed class.

The court noted that the degree of proof necessary to establish numerosity, and the distinction between pure speculation and common sense assumptions, is not entirely clear. Several relevant factors, however, supported the plaintiffs' numerosity argument.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 13 of 31

CLASSACT § 3:5                                                        Page 13
1 Newberg on Class Actions § 3:5 (4th ed.)

Some courts have held that where only injunctive or declaratory relief is pled, numerosity is relaxed so that even speculative or conclusory allegations are sufficient. Also the wide geographic dispersion of the class members both nationwide and throughout Florida supported a finding of impracticability of joinder. Individual claims in two of the counts involve only a small amount of damages and, therefore, it seemed unlikely that they would file separate actions, and joinder of all claims would be expensive, time-consuming, and logistically unfeasible.

In this case, the plaintiffs' estimate of the number of purported class members borders between reasonable and speculative. Frankly, it is a close call at this juncture. But where the question on numerosity is a close one, a balance should be struck in favor of a finding of numerosity, as the court always has the option to decertify pursuant to Rule 23(c)(1) … . On balance, applying, the factors enumerated above, including the nature of the relief sought, the Court finds that the numerosity requirement has been met on a preliminary basis sufficient to warrant a conditional certification, subject to further evidence as to the actual number of potential class members who may fit the class definitions. Decertification may be appropriate, following further discovery and evidence, if it appears that plaintiffs are unable to identify how many of the 1,600 persons were denied coverage by Allianz… .

Leszczynski v. Allianz Ins., 176 F.R.D. 659, 670, 39 Fed. R. Serv. 3d 908 (S.D. Fla. 1997).

Anderson v. Bank of the South, N.A., 118 F.R.D. 136 (M.D. Fla. 1987) (securities). Plaintiff need not allege the exact number and identity of class members (citing Newberg on Class Actions (2d ed.)).

Fisher v. U.S., 69 Fed. Cl. 193 (2006). A taxpayer who brought suit seeking a refund of income taxes paid on the sale of stock it received as result of the conversion of a mutual life insurance company to a stock company failed to show that proposed class of similarly situated taxpayers satisfied the numerosity requirement of the class action rule based on the assertion that "if only 1/2 of one percent of a potential 50,000,000 policyholders filed refund claims" there would be 250,000 potential class members, since the assumption that at least 1/2 of one percent of policyholders filed refund claims was pure speculation.

Coco v. Incorporated Village of Belle Terre, 233 F.R.D. 109 (E.D. N.Y. 2005). Conditional class certification was granted in an action alleging that a New York village and several of its present and former officials and employees created a scheme whereby, under color of law, they purported to enforce traffic and other laws and collect purported fines for alleged violations of those laws through a distinct enterprise in violation of, inter alia, Racketeer Influenced and Corrupt Organizations Act (RICO) and § 1983.

The numerosity requirement for class certification was met when the plaintiff estimated at least 800 persons had been defendants in Village Court and alleged that village records would bear that estimate out, and even if that number were substantially reduced it would

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 14 of 31

CLASSACT § 3:5                                                                  Page 14
1 Newberg on Class Actions § 3:5 (4th ed.)

still likely far exceed that generally considered sufficient for numerosity.

In re BearingPoint, Inc. Securities Litigation, 232 F.R.D. 534 (E.D. Va. 2006). Certification of a class of investors was warranted in an action against a strategic consulting corporation, alleging securities fraud under 1934 Act.

Numerosity was met when the corporation had more than 194 million shares of common stock outstanding, and it was reasonable to infer that there were large numbers of potential class members dispersed throughout the country.

In re GenesisIntermedia, Inc. Securities Litigation, 232 F.R.D. 321 (D. Minn. 2005). The numerosity requirement was met in an action by investors brought action against a corporation, chief executive officer (CEO), chief financial officer (CFO), and the corporation's largest controlling shareholders alleging violation of the federal securities statutes. Plaintiffs alleged that the trading volume of common stock at issue was 167,740,200 shares, which was an average of 380,363 shares per day during class period, and that the defendant corporation had more than 23 million shares of stock outstanding, owned by "hundreds if not thousands of persons."

Does I through III v. District of Columbia, 232 F.R.D. 18 (D.D.C. 2005). A class was certified of mentally disabled adult women who received habilitation services from the District of Columbia through the Mental Retardation and Developmental Disabilities Administration (MRDDA) and who brought an action against MRDDA for violations of their constitutional and civil rights.

There was an identifiable class, as required for bringing as class action a suit claiming that District of Columbia failed to obtain informed consent prior to performance of surgical and invasive diagnostic procedures; proposed class members (1) all had mental or other developmental disabilities, (2) had received habilitation services from District, and (3) had consent to elective surgical procedure given on their behalf by a District official, making class eligibility determinations easy.

The numerosity requirement was satisfied through allegations that over 440 consents were given over the past seven years.

Coleman v. General Motors Acceptance Corp., 220 F.R.D. 64 (M.D. Tenn. 2004). National class certification was proper in an action by African-American consumers against an automobile finance company under Equal Credit Opportunity Act (ECOA), alleging that company charged African-American consumers a higher finance charge markup than it charged Caucasian consumers.

The plaintiffs contended that they meet the numerosity requirement based on projections from statistics garnered as part of a 1999 GMAC study in which GMAC produced

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 15 of 31

CLASSACT § 3:5                                                                    Page 15
1 Newberg on Class Actions § 3:5 (4th ed.)

electronic data concerning all finance transactions originated by three Tennessee dealer arrangers/originators between January 1, 1995, and December 31, 1998, amounting to 6,890 finance accounts (5,050 of which could be race-coded). Of the 5,050 accounts in that three-year period, 775 of the primary buyers were black. Relying on this Tennessee-based data, along with the nature of the commerce involved and GMAC publications, the plaintiffs estimated a nationwide class exceeding 100,000 to 125,000 class members.

Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 31 Employee Benefits Cas. (BNA) 2883 (S.D. N.Y. 2003). Class certification was denied in an action by beneficiaries of Employee Retirement Income Security Act (ERISA) pension plans against their employer, related companies, six pension plans, and their administrative committees, claiming that defendants violated ERISA by failing to properly calculate their pension benefits under the terms of the plans. Plaintiffs did not show that it would be unnecessary to conduct highly individualized, fact-intensive inquiries into the circumstances surrounding the execution of general and lump sum releases by absent class members in order to determine whether these individuals were entitled to recover under ERISA, raising serious concerns about the manageability of the action.

When plaintiffs alleged that the class includes at least 10,000 members, the court rejected defendants' argument that the plaintiffs' estimate of the class size was based on several inaccuracies and is consequently overstated. While defendants disputed plaintiffs' estimate of class size, there was no dispute that the class consists of many more individuals than 40.

[FN3] Siles v. ILGWU Nat. Retirement Fund, 783 F.2d 923, 4 Fed. R. Serv. 3d 193 (9th Cir. 1986) (ERISA). Denial of class certification was affirmed in an action charging that a pension fund's requirement that an employee work 435 hours in covered employment in 1974 and 1975 to qualify for a pension violated the transitional rules of ERISA. In support of numerosity, plaintiffs proffered evidence that 31 employees covered by the plan had lost their jobs in 1974 and 1975. Plaintiff presented no evidence regarding how many of these employees did not receive a pension as a result of failing to meet the plan's eligibility requirements.

Robinson v. Lehman, 771 F.2d 772 (3d Cir. 1985) (employment/race). Class certification was denied when plaintiff did not establish the number of African-Americans precluded from supervisory and managerial positions and, thus, did not meet the numerosity requirement.

Ortiz v. Eichler, 616 F. Supp. 1046 (D. Del. 1985), on reargument, 616 F. Supp. 1066 (D. Del. 1985), judgment aff'd, 794 F.2d 889 (3d Cir. 1986) (government benefits). Court certified class of applicants for and recipients of public assistance benefits who had or would have questions concerning their ineligibility determined at administrative hearings. A showing that in 1982 and 1983 alone there were 469 such hearings supported a finding

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 16 of 31

CLASSACT § 3:5                                                            Page 16
1 Newberg on Class Actions § 3:5 (4th ed.)

of numerosity.

Plaintiff has burden to show satisfaction of all Rule 23 prerequisites. East Texas Motor Freight System Inc. v. Rodriguez, 431 U.S. 395, 97 S. Ct. 1891, 52 L. Ed. 2d 453, 23 Fed. R. Serv. 2d 397 (1977) (employment discrimination); Rex v. Owens ex rel. State of Okl., 585 F.2d 432 (10th Cir. 1978) (health care); Johnson v. Brelje, 482 F. Supp. 121 (N.D. Ill. 1979) (health care); Smith v. B & O R. Co., 473 F. Supp. 572, 4, 4 Fed. R. Evid. Serv. 816 (D. Md. 1979) (employment discrimination); Fewlass v. Allyn and Bacon, Inc., 83 F.R.D. 161 (D. Mass. 1979) (employment discrimination).

[FN4] Jackson v. Foley, 156 F.R.D. 538, 542, 94 Ed. Law Rep. 289 (E.D. N.Y. 1994). Two overlapping classes were certified in a civil rights action challenging the administration of a renewed eligibility for financial aid program for students who had defaulted on student loans but then became eligible again after they made six consecutive monthly reasonable payments on the defaulted loan. One class consisted of all persons who had been or would be denied participation in the REFA program because judgments had been entered against them on defaulted loans, and the other of all persons who had been or would be denied participation in the program because of their inability to make monthly payments that were more than reasonable and affordable amounts given their total financial circumstances. The numerosity requirement was met against defendant's objection when, in asserting that the number of potential class members was in the hundreds and probably in the thousands, the plaintiffs had limited information available to them. "Only the State Defendants know the exact number of borrowers who were denied participation in the REFA program due to a default judgment or inability to make the monthly payments." The court noted that "[s]uch an information monopoly will not stand in the way of persons seeking relief." The class members would likely come from extremely low income households, thereby decreasing greatly their ability to bring individual suits, and many people would seek relief in the future.

Gomez by Hernandez v. Comerford, 833 F. Supp. 702 (N.D. Ill. 1993). A class was certified of children of unmarried parents alleging that the chief judge of the Illinois circuit court had violated their equal protection rights by adopting and enforcing two separate and unequal systems for adjudicating child support, custody, and visitation disputes. Although the exact number of class members was impossible to pinpoint, the class included tens of thousands of children, and the exact number or identity of class members need not be pleaded (citing Newberg on Class Actions (2d ed.)).

Ventura v. New York City Health and Hospitals Corp., 125 F.R.D. 595 (S.D. N.Y. 1989) (civil rights). A class of employees challenging a hospital's drug-testing policies was conditionally certified pending further discovery with respect to the numerosity of class members when, although the class members were not identified or ascertained, the court found it reasonable to conclude that their numbers would probably be sufficient to allow certification. Plaintiff asserted that at least 100 employees at the hospital had been tested

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 17 of 31

CLASSACT § 3:5                                                                Page 17
1 Newberg on Class Actions § 3:5 (4th ed.)

for drugs on a selective basis without proper notification.

Schwartz v. Harp, 108 F.R.D. 279 (C.D. Cal. 1985) (securities). In a Rule 10b-5 action, the sale of one million shares and the belief that there were over 1,000 members in the class met the numerosity requirement.

Ragsdale v. Turnock, 625 F. Supp. 1212, 1220 (N.D. Ill. 1985), judgment aff'd in part, vacated in part, 841 F.2d 1358 (7th Cir. 1988) (health). Court certified classes of licensed physicians and surgeons performing or desiring to perform abortions in Illinois and of women who might desire abortions in that state in an action challenging the constitutionality of statutes that allegedly required all abortions in effect to be performed in a hospital or its functional equivalent. Though the plaintiffs did not present direct testimony concerning the number of class members, evidence that approximately 65,860 abortions were performed annually in Illinois amounted "to more than mere speculation or conclusory allegations as to the numerosity of the class."

Peil v. Speiser, 97 F.R.D. 657 (E.D. Pa. 1983) (securities). Trial court (citing Newberg on Class Actions), accepted plaintiff's common sense assumption of numerosity when evidence showed several thousand persons had purchased defendant's stock during the relevant period.

Garcia v. Rush-Presbyterian-St. Luke's Medical Center, 80 F.R.D. 254, 268 (N.D. Ill. 1978) (employment discrimination). A court may, in its determination of whether or not numerosity exists, "consider reasonable inferences which can be drawn from the facts before it and the broad remedial purposes of the Civil Rights Acts." Charges of pattern and practice discrimination and a prima facie showing that only 2 per cent of the employer's workforce were Latinos satisfied the numerosity requirement.

[FN5] Robidoux v. Celani, 987 F.2d 931, 25 Fed. R. Serv. 3d 86 (2d Cir. 1993) (government benefits). In an action by applicants for Vermont public assistance benefits, challenging alleged delays in processing their applications by the state Department of Social Welfare, the numerosity requirement was met when plaintiffs presented documentary evidence of delays in 22 to 133 cases per month, depending on the month, and the assistance sought (citing Newberg on Class Actions (2d ed.)). The court rejected the defendant's contention that not all of the delayed cases included in the figures provided to the court could be attributed to departmental fault when it failed to document its claim.

Jamerson v. Board of Trustees of University of Alabama, 662 F.2d 320, 1 Ed. Law Rep. 60 (5th Cir. 1981) (employment discrimination). Class certification was denied where plaintiff alleging discriminatory refusal of tenure could not name any other persons who had not received tenure or who had been discriminated against during the time of the suit.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 18 of 31

CLASSACT § 3:5                                                          Page 18
1 Newberg on Class Actions § 3:5 (4th ed.)

Rodriguez v. U.S. Dept. of Treasury, 131 F.R.D. 1, 7 (D.D.C. 1990) (employment/disability). A proposed class of 21 persons who were rejected for employment on the basis of asthma did not meet the numerosity requirement. The existence of a substantial group of deterred applicants remained speculative following plaintiffs' discovery. The court declined to certify the class based "on so speculative a group of alleged discriminatees."

Armstrong v. Chicago Park Dist., 117 F.R.D. 623 (N.D. Ill. 1987) (employment/sex/§ 1983 and Title VII). The failure of plaintiffs charging § 1983 violations to establish that sufficient numbers of female employees had been discriminatorily denied promotional opportunities during the class period defeated the numerosity requirement because the court would be unable to define the class before trial (quoting Newberg on Class Actions (2d ed.)).

Grant v. Morgan Guar. Trust Co. of New York, 548 F. Supp. 1189, 1193 (S.D. N.Y. 1982) (employment discrimination). Plaintiff whose poor job performance subjected her to unique defenses and whose statistical evidence did not show the existence of a class "in need of protection" was an inadequate representative.

In re Three Mile Island Litigation, 95 F.R.D. 164 (M.D. Pa. 1982) (mass tort). Certification was denied for a class of tourist-related businesses located outside the 25-mile radius from the Three Mile Island reactor but within Lancaster County, which is contiguous to the county where the reactor is located. Numerosity could not be shown because there was no way to determine the size of the class as plaintiffs had defined it. The court noted that only two businesses within the geographical boundaries described by plaintiffs had filed individual damages suits.

Lyon v. U. S., 94 F.R.D. 69 (W.D. Okla. 1982) (civil rights/Privacy Act). Class certification was denied for a group of persons who had requested, under the Privacy Act, information from Labor Department concerning their employment-related disabilities. Plaintiff failed to demonstrate the existence of an identifiable number of persons in his situation.

[FN6] Sagers v. Yellow Freight System, Inc., 529 F.2d 721, 38 A.L.R. Fed. 1 (5th Cir. 1976) (employment discrimination).

Allen v. City of Chicago, 828 F. Supp. 543 (N.D. Ill. 1993). Rule 23(b)(2), (b)(3) class certification was denied in an action by laid-off employees of the city charging racial and age discrimination against the city and city officials. A putative class of over 600 members met the numerosity requirement.

In re Appliance Store, Inc., 158 B.R. 384, 27 Fed. R. Serv. 3d 176 (Bankr. W.D. Pa. 1993), as amended, (Sept. 20, 1993) (bankruptcy). A class of former employees of a

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 19 of 31

CLASSACT § 3:5                                                        Page 19
1 Newberg on Class Actions § 3:5 (4th ed.)

Chapter 7 debtor was certified in an adversary action against secured creditors, seeking unpaid wages. A class of approximately 180 former employees met the numerosity.

Westman v. Textron, Inc., 151 F.R.D. 229 (D. Conn. 1993) (ERISA). A Rule 23(b)(1)(A) class was certified of all management employees who were eligible for retirement as of the specified date. Joinder of 278 putative class members was impracticable.

Evans v. Evans, 818 F. Supp. 1215, 2 A.D.D. 158, 82 Ed. Law Rep. 492, 27 Fed. R. Serv. 3d 158 (N.D. Ind. 1993) (Individuals with Disabilities Education Act). A class was certified in an action by disabled students challenging the legality of Indiana's procedures regarding the implementation of individualized educational programs. A class of 100 to 200 class members satisfied the numerosity requirement.

Lewis v. National Football League, 146 F.R.D. 5 (D.D.C. 1992) (antitrust). A class of approximately 250 professional football players met the numerosity requirement when joinder was impracticable because of the geographic dispersion of potential class members. Certification was denied on Rule 23(a)(4) grounds.

Scholes v. Tomlinson, 145 F.R.D. 485 (N.D. Ill. 1992) (securities). Putative class consisting of between 129 and over 300 investors met the numerosity requirement.

In re Badger Mountain Irr. Dist. Securities Litigation, 143 F.R.D. 693 (W.D. Wash. 1992) (securities). A class was certified of those persons who held general obligation bonds issued by an irrigation district which financed the development of an irrigation system and subsequently defaulted. A potential class of 324 met the numerosity requirement.

Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181 (N.D. Ill. 1992) (securities). Potential class of 129 to 300 members was geographically dispersed and met the numerosity requirement.

McGlothlin v. Connors, 142 F.R.D. 626 (W.D. Va. 1992) (breach of fiduciary duty and contract claims) (120,000 class members).

Kirkland v. New York State Dept. of Correctional Services, 520 F.2d 420 (2d Cir. 1975) (employment discrimination).

Ardrey v. Federal Kemper Ins. Co., 142 F.R.D. 105 (E.D. Pa. 1992) (breach of contract) (approximately 200 insurance agent class members).

Stolz v. United Broth. of Carpenters and Joiners of America, Local Union No. 971, 620 F. Supp. 396 (D. Nev. 1985) (labor) (potential class of nearly 700 met numerosity requirement).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 20 of 31

CLASSACT § 3:5                                                    Page 20
1 Newberg on Class Actions § 3:5 (4th ed.)

Hurley v. Toia, 432 F. Supp. 1170 (S.D. N.Y. 1977), aff'd, 573 F.2d 1291 (2d Cir. 1977) (welfare benefits).

Hagen v. City of Winnemucca, 108 F.R.D. 61, 3 Fed. R. Serv. 3d 1115 (D. Nev. 1985) (civil rights) (existence of 450 class members met the numerosity requirement; class certification denied on typicality and adequacy grounds).

Matz v. Household Intern. Tax Reduction Inv. Plan, 232 F.R.D. 593 (N.D. Ill. 2005), aff'd, 441 F.3d 500 (7th Cir. 2006). Only the named plaintiffs in ERISA class actions have to exhaust administrative remedies before proceeding to federal court. Here a Participant, who was not fully vested at time his employment ended, in a defined contribution plan in which employer matched contributions made by employees through payroll deductions to individual retirement accounts (IRAs), sued the plan under Employee Retirement Income Security Act (ERISA), on behalf of himself and all others similarly situated, claiming he was entitled to matching contributions forfeited as result of a corporate reorganization which resulted in the plan's partial termination.

The numerosity requirement was met where class contained at least 862 employees of a reorganization entities who were not 100% vested and were involuntarily terminated from plan.

[FN7] Sullivan v. Zebley, 493 U.S. 521, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (government benefits) (national class of more than 300,000 members) (see Ch 23).

Califano v. Yamasaki, 442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979) (government benefits) (national class of more than 4,000 members).

In re A.H. Robins Co., Inc., 880 F.2d 709, 13 Fed. R. Serv. 3d 1239 (4th Cir. 1989).

Dujanovic v. MortgageAmerica, Inc., 185 F.R.D. 660 (N.D. Ala. 1999). Class certification was warranted in an action by a residential mortgage borrower against a mortgage lender, asserting that the lender violated the Real Estate Settlement Procedures Act (RESPA) when it paid a yield spread premium to a referring broker who also received a loan origination fee from the borrower. Rule 23(a)(1) was met when the plaintiff alleged that the class members numbered more than a thousand. The defendant admitted that in 1998, it made between 1,500 and 2,500 mortgage loans through brokers, and that most involved payment of a yield spread premium. It did not contend that the number of loans closed in 1997, during the period of time delineated in the proposed class definition, would be significantly different, or that if the class were certified as plaintiff proposed, the numerosity requirement would not be met.

Schaefer v. Overland Exp. Family of Funds, 169 F.R.D. 124 (S.D. Cal. 1996). A class was certified of investors who brought a securities fraud action against various

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 21 of 31

CLASSACT § 3:5                                                              Page 21
1 Newberg on Class Actions § 3:5 (4th ed.)

individuals and entities involved in a mutual fund that declined in value. The numerosity requirement was met when there were over 195 million shares outstanding at one point in the class period, hundreds of thousands of shares traded, and over 2,500 shareholder accounts.

Walco Investments, Inc. v. Thenen, 168 F.R.D. 315, 35 Fed. R. Serv. 3d 848 (S.D. Fla. 1996) (securities). A class was certified in an action by investors against promoters, a law firm, and numerous other parties related to the operation of an alleged Ponzi scheme for securities fraud, RICO violations, and common-law fraud. In executing this alleged scheme, the investors' capital was not used to fund any legitimate business, but rather was simply paid out by the defendants to themselves and to other investors, with the defendants falsely characterizing the funds as returns or profits on investments. As a result of this alleged fraudulent scheme, the plaintiffs brought this class action lawsuit against over 100 individuals and entities for the events that led to the collapse of their multimillion dollar investment. More than 1,500 class members invested approximately $550 million in the Premium fraud, and the putative class was geographically dispersed across the United States and Canada.

U.S. Trust Co. of New York v. Alpert, 163 F.R.D. 409 (S.D. N.Y. 1995). The court certified three classes in each of two related interpleader actions by trustees of unit investment trusts, organized under the Investment Company Act of 1940, which had been funded with bonds financing the construction of nuclear facilities that went into default when construction was discontinued. Plaintiffs were banks appointed as trustees by the investment banking firms which created the trusts, and defendants were individuals who purchased units and were named as class representatives of three separate classes in each action. The numerosity requirement was met when the U.S. Trust complaint alleged that each of the three classes included at least 50,000 claimants, and the Investors complaint alleges that each of the three classes in that case included "thousands" of members.

Durrett v. John Deere Co., 150 F.R.D. 555, 28 Fed. R. Serv. 3d 935 (N.D. Tex. 1993) (consumer) (14,000 class members).

Mayo v. Sears, Roebuck & Co., 148 F.R.D. 576 (S.D. Ohio 1993) (TILA/fraud). A class of consumers alleging that Sears did not inform them that the home improvements they purchased from and financed through Sears would result in a security interest being placed on their principal residences and that Sears fraudulently misrepresented and failed to disclose to them their rights as borrowers was certified with respect to the fraud claim, but not with respect to the claim for rescission. The numerosity requirement was met when the complaint alleged that at least 1,000 similarly situated individuals sought home improvements.

Lerch v. Citizens First Bancorp, Inc., 144 F.R.D. 247 (D.N.J. 1992) (securities). A class was certified in an action by investors against a financial corporation, its executives, and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 22 of 31

CLASSACT § 3:5                                                              Page 22
1 Newberg on Class Actions § 3:5 (4th ed.)

auditor, alleging state and federal securities law violations. The plaintiffs clearly satisfied the numerosity requirement when 7,750,000 shares of stock held by thousands of persons were traded.

Central Wesleyan College v. W.R. Grace & Co., 143 F.R.D. 628, 78 Ed. Law Rep. 848 (D.S.C. 1992), judgment aff'd, 6 F.3d 177, 86 Ed. Law Rep. 69, 27 Fed. R. Serv. 3d 381 (4th Cir. 1993) (mass tort) (16 to 35% of 3,000 public and private colleges and universities).

Coleman v. Cannon Oil Co., 141 F.R.D. 516 (M.D. Ala. 1992) (antitrust) (54,000 potential plaintiff former gasoline retailers in action against retail gasoline sellers).

In re Bally Manufacturing Securities Corp. Litigation, 141 F.R.D. 262 (N.D. Ill. 1992), order clarified, 144 F.R.D. 78 (N.D. Ill. 1992), judgment aff'd, 2 F.3d 1456, 26 Fed. R. Serv. 3d 873 (7th Cir. 1993) (securities) (up to 16,000 class members).

Boggs v. Divested Atomic Corp., 141 F.R.D. 58 (S.D. Ohio 1991) (thousands of individuals living within six miles of radioactive materials).

In re AM Intern., Inc. Securities Litigation, 108 F.R.D. 190 (S.D. N.Y. 1985) (securities) (proposed class of several thousand).

State of N.Y. v. Heckler, 105 F.R.D. 118 (S.D. N.Y. 1985) (government benefits) (class numbered in the tens of thousands).

Ouellette v. International Paper Co., 86 F.R.D. 476 (D. Vt. 1980) (environmental). In a suit by landowners and lessees for relief arising from depressed property values and impairment of property enjoyment caused by lake pollution, the court found numerosity satisfied with two proposed classes of 400 and 3,150.

Sommers v. Abraham Lincoln Federal Sav. and Loan Ass'n, 66 F.R.D. 581 (E.D. Pa. 1975) (antitrust) (several thousand members).

Palmer v. Stassinos, 233 F.R.D. 546 (N.D. Cal. 2006).

Suits based on the California Fair Debt Collection Practices Act may be certified as class actions, but injunctive or declaratory relief is not available under the Fair Debt Collection Practices Act.

Plaintiffs moved for class certification in two similar cases, each based primarily on alleged violations of the federal Fair Debt Collection Practices Act and one also involving alleged violations of the California Fair Debt Collection Practices Act ("Rosenthal Act").

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

The numerosity requirement for class certification was satisfied where the debt collector in one suit admitted that collection letters similar to the one sent to plaintiff were sent to 1,000 people within California, and the debt collector in second suit admitted demanding interest from 35,000 people in one year, as joinder of 1,000 or more co-plaintiffs was clearly impractical.

[FN8] Zachary v. Chase Manhattan Bank, N. A., 52 F.R.D. 532 (S.D. N.Y. 1971) (consumer credit) (several million members).

[FN9] Bryan v. Amrep Corp., 429 F. Supp. 313 (S.D. N.Y. 1977) (Interstate Land Sales Act). Defendants conceded numerosity.

Carnivale Bag Co. v. Slide-Rite Mfg. Corp., 1976-2 Trade Cas. (CCH) ¶61,032 (S.D.N.Y. July 26, 1976) (antitrust). The number of class members asserted by plaintiff (11,500) was uncontested by defendant.

Guardians Ass'n of New York City Police Dept., Inc. v. Civil Service Commission of City of New York, 431 F. Supp. 526, 23 Fed. R. Serv. 2d 1223 (S.D. N.Y. 1977), vacated and remanded, 562 F.2d 38 (2d Cir. 1977) (employment discrimination) (allegation of class of 200 to 600 African-American and Latino police officers uncontroverted).

Snidler v. All Am. Life & Fin. Corp., 22 Fed. R. Serv. 2d (Callaghan) 470 (S.D. Iowa Sept 14, 1976) (numerosity uncontested in securities action).

[FN10] General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980) (employment discrimination).

[FN11] In ruling that the Equal Employment Opportunity Commission (EEOC) does not have to satisfy Rule 23 prerequisites when it proceeds on behalf of a class of aggrieved employees, the Court stated:
Title VII … applies to employers with as few as fifteen employees. When judged by the size of the putative class in various cases in which certification has been denied, this minimum would be too small to meet the numerosity requirement. In such cases, applying Rule 23 would require the EEOC to join all aggrieved parties despite its statutory authority to proceed solely in its own name.

Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Texas, 511 F.2d 1073, 1077 (10th Cir. 1975) (37 class plaintiffs); Peterson v. Albert M. Bender Co., Inc., 75 F.R.D. 661, 667 (N.D. Cal. 1977) (35-45); Murray v. Norberg, 423 F. Supp. 795, 798 (D.R.I. 1976) (fewer than 20); Chmieleski v. City Products Corp., 71 F.R.D. 118, 150-151 (W.D. Mo. 1976) (22); Lopez v. Jackson County Bd. of Sup'rs, 375 F. Supp. 1194, 1196-1197 (S.D. Miss. 1974)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 24 of 31

CLASSACT § 3:5                                                                    Page 24
1 Newberg on Class Actions § 3:5 (4th ed.)

(16); Moreland v. Rucker Pharmacal Co., Inc., 63 F.R.D. 611, 613-614 (W.D. La. 1974) (26); Anderson v. Home Style Stores, Inc., 58 F.R.D. 125, 130-131 (E.D. Pa. 1972) (18).

General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980).

Rose v. Saginaw County, 232 F.R.D. 267 (E.D. Mich. 2005). A class of former jail detainees could not be certified in the absence of a precise definition in a suit against the county, claiming that the practice of forcing detainees in administrative segregation to be naked violated their constitutional rights. The proposed class would arguably include postconviction detainees and those allowed paper gowns, requiring the court to revisit a decision already made that practice was unconstitutional as applied to preconviction detainees and those left completely naked. Their numbers were not sufficiently high to render separate suits impractical, and the commonality and typicality requirements were not satisfied because of the differences in the claims by pre and postconviction detainees and those left totally naked versus those allowed paper gowns.

The present plaintiffs, twenty-two individuals, claimed they were subjected to an unconstitutional policy by officials at the Saginaw County jail when they were held as pretrial detainees at various times between May 1999 and December 2001, in that the Saginaw County sheriff instituted a policy and practice of housing uncooperative and disruptive detainees in administrative segregation cells; and jail personnel would take all of the clothing from such detainees so that they were naked for the time that they spent in administrative segregation. The complaint and its several amendments assert claims under 42 U.S.C.A. § 1983 and state law.

The plaintiffs amended their complaint from time to time with leave of court in order to add additional plaintiffs who emerged during the pendency of the case and alleged that they also were subjected to the naked detention policy. On December 9, 2002, the plaintiffs filed their sixth amended complaint, adding more named plaintiffs and repeating the allegations that the plaintiffs, when detained while awaiting arraignment or trial, were forced to disrobe in the presence of corrections officers even though there was no reason to believe the plaintiffs were dangerous or possessed weapons. The amended complaint focused on the viewing of the plaintiffs' naked bodies by jail personnel and alleged constitutional violations, gross negligence, invasion of privacy, assault and battery, intentional infliction of emotional distress, and violation of the Michigan Elliott Larson Civil Rights Act, Mich. Comp. Laws. § 37.2101 et seq. The court noted that this version of the complaint omitted reference to class action certification, but it did request injunctive relief to prevent the defendants from engaging in the alleged illegal behavior.

In February 2003, a local television station showed a story about the naked segregation policy, and subsequently plaintiffs' lawyers apparently received a number of phone calls, leading them to dozens of potential plaintiffs. The plaintiffs collected data from these

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

potential plaintiffs, and on December 22, 2004, the plaintiffs filed a motion to join even more parties as plaintiffs, arguing that the defendant had misrepresented the extent to which the naked segregation policy had been applied, and that this misrepresentation prevented them from discovering 100 additional potential grievants in a timely manner and caused them to withdraw their class action claims. The plaintiffs' motion requested permission to add additional plaintiffs discovered some time after the filing of the lawsuit. The defendants opposed the motion stating the plaintiffs had not shown good cause, and the defendants would be prejudiced if the motion were granted. The defendant also claimed many of the new plaintiffs' claims would be barred by the statute of limitations.

On January 26, 2005, the court filed an opinion adjudicating the parties' cross motions for summary judgment; it addressed and resolved all of the liability issues in the case, holding that the naked detention policy was unconstitutional as applied to pretrial detainees. Rose v. Saginaw County, 353 F.Supp.2d 900 (E.D. Mich. 2005). The court also denied the plaintiffs' motion to add additional parties plaintiff and stated that adding new parties as plaintiffs would serve to further complicate the litigation because extensive discovery had already taken place and the defendants' assertion that the statute of limitations barred many of the new plaintiffs' claims. The Court suggested that any new claimants not barred by the statute could file their own lawsuits.

On April 29, 2005, the plaintiffs filed a motion for class certification or, in the alternative, for joinder, submitting an affidavit of Peggy Goldberg Pitt, a lawyer working on the case and a chart listing plaintiffs and potential plaintiffs, a summary of what happened to them, the date of their detention, and other information. The list indicated that sixty-four people were subject to the naked detention policy; twenty of these people were original plaintiffs in the case, leaving forty-four new possible plaintiffs. The affidavit states that twenty-three people were segregated while naked from 2002 through the date of the motion, despite the defendants' claims that they have ended the naked detention policy.

The court noted that the lack of a precise definition exacerbated the problem in a case in the procedural posture of this one because the previous liability determination necessarily turned on the status and circumstances surrounding the detention of the named plaintiffs. If the implied definition of the class advanced by the plaintiffs would allow others who do not share all of the features of those named plaintiffs to benefit from that ruling, a liability holding could be distorted.

When the plaintiffs conceded at oral argument that they had not offered a specific class definition in their motion papers, the court directed them to submit a definition, and the plaintiff submitted one as follows:
All detainees who were placed in administrative segregation in the Saginaw County Jail from October 19, 1998 and were stripped of their clothing before being placed in administrative

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 26 of 31

CLASSACT § 3:5                                                        Page 26
1 Newberg on Class Actions § 3:5 (4th ed.)

segregation pursuant to Defendants' policy.

The core holding of the liability opinion in this case was that the County's policy of removing all clothing from pretrial detainees housed in administrative segregation violated the detainees' due process rights, inasmuch as policy was an exaggerated response to the County's articulated concerns about suicide, the guards' safety, and administrative costs, and given the magnitude of the right to privacy in one's own body and availability of alternatives to the policy (such as suicide gowns); and the policy was unreasonable under the Fourth Amendment because the scope of the intrusion was substantial, and the detainees had a legitimate expectation that they would not be required to forfeit all clothing and covering, even briefly, when they had been detained for relatively minor violations, there was no individualized suspicion of drug, weapon, contraband possession, and there was no indication that they were suicidal. The plaintiffs argue that in reaching that result the court cited cases that dealt with convicted inmates, but those cases were cited for the sole proposition that prisoners have a liberty and privacy interest in shielding their naked bodies from view by others, especially members of the opposite gender. In making a determination of whether a particular practice is unconstitutional, the court must balance that interest against the competing consideration whether the regulation is reasonably related to legitimate penological interests. Here the court relied heavily on Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) in striking that balance. Bell discusses the rules applicable to pretrial detainees:

The difference between pretrial detainees—that is, those who are presumed innocent of crime—and convicted inmates who are sentenced to a punishment, might call upon the Court to weigh that balance on different scales. On the other hand, the interests might be identical. However, injecting the extra factor into this case by expanding the universe of possible plaintiffs makes this a different case than the one the Court decided in its summary judgment opinion. It is that primary reason that impels the Court to view the plaintiffs' proposed class definition as problematical at this stage of the proceedings. In order to accommodate the definition, the Court must plow old ground and reassess the issues already decided in the summary judgment motions in a new light. Of course, the defendants quite properly could demand their right to be heard again since the case becomes a new and different lawsuit.

Rose v. Saginaw County, 232 F.R.D. 267, 272 (E.D. Mich. 2005). The court was simply unable to grant certification without a class definition sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. It appeared that the class they sought to have certified included all detainees from 1998 to present who were sent to administrative segregation, either naked or with a paper gown, whether they were pretrial or postconviction detainees, and whether or not they were exposed to members of the opposite sex.

Although the plaintiffs stated in their reply brief that they had not limited their claim to pretrial detainees, all the named plaintiffs in the several amended complaints were pretrial detainees. In their motion for summary judgment, which resulted in a ruling that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the policy was unconstitutional as applied to pretrial detainees, the plaintiffs stated, "Plaintiffs are pretrial detainees accused of misdemeanors, not felonies," and described the policy as one that requires officers "to strip naked pretrial detainees for insubordination." The argument section of their brief stated that the officers must have probable cause for "any significant pretrial restraint of liberty," and the brief contained an entire section about the punishment of people not convicted of any crime. It plainly appears that the plaintiffs were arguing on behalf of a group of plaintiffs defined as pretrial detainees who were stripped naked.

Attempting to define the class after the liability determination has been made creates additional problems with respect to the other requirements of Rule 23(a). In determining whether the class was so numerous that joinder of all members is impracticable, the court had to consider the plaintiffs' submissions in light of the opinion deciding the cross motions for summary judgment. Although a strict numerical test does not exist to determine when the class is too numerous to join, there must be some evidence to establish generally that the number of potential class members is large, even if plaintiffs do not know the exact figure. Although the plaintiffs argued that they identified forty-four new possible plaintiffs, only seven of the new potential plaintiffs on the chart were actually pretrial detainees when they were placed in administrative segregation cell, and it was not clear how many of those were given paper gowns when their clothing was taken. The court was not satisfied that the number of potential new plaintiffs was so large that class certification was a preferred or joinder of all plaintiffs was impractical.

[FN12] Foster v. City of Detroit, Mich., 405 F.2d 138 (6th Cir. 1968) (property rights) (impractical to join persons living within 25 block area).

Thonen v. McNeil-Akron, Inc., 661 F. Supp. 1271 (N.D. Ohio 1986) (ERISA/LMRA). A class of 79 retirees was certified (quoting Newberg on Class Actions (2d ed.)).

Santiago v. City of Philadelphia, 72 F.R.D. 619 (E.D. Pa. 1976) (criminal justice). In an action challenging conditions in youth detention center, the constant change in the center's population made joinder impracticable.

Beavers v. Sielaff, 400 F. Supp. 595 (N.D. Ill. 1975) (criminal justice). In a challenge to rules regarding confidentiality of juveniles' correction records, it was impracticable to join all members of a class of hundreds of juveniles because of size and transitory nature of the class.

U. S. v. Truckee-Carson Irrigation Dist., 71 F.R.D. 10 (D. Nev. 1975) (property rights). Class members could not be joined though area was small.

Cf. Doe v. Renfrow, 475 F. Supp. 1012 (N.D. Ind. 1979), aff'd in part, remanded in part, 631 F.2d 91 (7th Cir. 1980) (suit alleging unconstitutionality of police search for drugs in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 28 of 31

CLASSACT § 3:5                                                           Page 28
1 Newberg on Class Actions § 3:5 (4th ed.)

high school classrooms). Class certification would not be granted to plaintiff when only three students underwent illegal search, many other putative class members held opposing views concerning plaintiffs' claim, and plaintiffs' pleadings failed to establish satisfaction of Rule 23 requirements.

Mirfasihi v. Fleet Mortgage Corp., 2005 WL 1950386, *12 (N.D. Ill.) ("where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met").

[FN13] General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission, 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980).

[FN14] Califano v. Yamasaki, 442 U.S. 682, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979) (government benefits).

Council of and for the Blind of Delaware County Valley, Inc. v. Regan, 709 F.2d 1521, 1543 n. 48 (D.C. Cir. 1983) (Robinson, C.J., dissenting) (government regulation), cites Newberg on Class Actions for proposition that numerosity considerations include dispersement of members and ability to initiate suit).

[FN15] In Califano, certification of a nationwide class was proper when all requirements of Rule 23(a) were clearly met, and a plea for injunctive classwide relief was not inharmonious with § 205(g) of the Social Security Act, which, while contemplating case-by-case adjudication, is also consistent with class relief. Moreover, a nationwide class was not found to be inconsistent with principles of equity jurisdiction since the scope of injunctive relief is dictated by the extent of the violation established, not by the geographical extent of the class.

[FN16] Cf. Ansari v. New York University, 179 F.R.D. 112, 115 to 116, 126 Ed. Law Rep. 1043 (S.D. N.Y. 1998). A potential plaintiff class of 35 members did not satisfy numerosity requirement for class certification, in an action by a dentist against a university, its college of dentistry, and various college officials, alleging breach of contract and of state statutes in connection with failure to provide educational services. A class action was not superior to other available methods of adjudication of controversy. Here, the parties recognized that the proposed class of 35 members falls within the gray area of numerosity. There was no evidence that permitting this suit to go forward as a class action is necessary to avoid a multiplicity of redundant lawsuits. This was not a situation where individual members of the prospective class have filed or threatened to file their own actions; two years have elapsed since completion of the program, during which time no dental student other than Ansari has brought suit against defendants. Although the proposed class was geographically dispersed, and this dispersion weighs in favor of finding that joinder is impracticable, dispersion is not dispositive. Ansari was a classmate of the individuals he seeks to represent and currently had or was capable of

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-65   Filed 09/29/08   Page 29 of 31

CLASSACT § 3:5                                                         Page 29
1 Newberg on Class Actions § 3:5 (4th ed.)

obtaining recent addresses of most if not all of them. Although knowledge of the whereabouts of proposed class members does not automatically make joinder practicable, "it should provide comfort to Ansari who, if he so chooses, can contact each of his former classmates, apprise each of his lawsuit, and invite each to join." There was no evidence that the prospective class members lacked the financial resources to participate in Ansari's lawsuit. Each of the students that took part in the program is a licensed dentist who had the resources both to study abroad and to pay the $30,000 tuition for the program. Like Ansari, each likely had the wherewithal to retain an attorney either to join in the pending action or to file a separate suit, should he or she wish to do so. This was not a case where the prospective class members lack a monetary incentive to protect their own interests. Assuming that each member of the proposed class had a claim similar to Ansari's, then each could expect to recover the amount of the tuition, $30,000, plus the opportunity cost of having attended the program, which Ansari estimated at about $60,000 for himself. "A potential award of around $90,000 is hardly the type of de minimis recovery that would discourage individual class members from joining Ansari's suit or from filing suits in their own behalf." Finally, Ansari did not seek prospective relief of the sort that will have an effect on "future class members." The class Ansari sought to certify consisted of a finite number of people all of whom are identifiable and all of whom had been injured, if at all, in the past.

Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 31 Fed. R. Serv. 3d 1471 (2d Cir. 1995). The district court properly certified a class in an action by a railroad against the New York State Board of Equalization and Assessment and several tax assessing and tax collecting jurisdictions alleging discriminatory taxation. Numerosity was satisfied whether viewed as 700 tax-collecting jurisdictions or 300 assessing jurisdictions, since the number of defendants vastly exceeded the threshold of 40 class members (citing Newberg on Class Actions (2d ed.)).

Hendricks-Robinson v. Excel Corp., 164 F.R.D. 667 (C.D. Ill. 1996) (ADA). A class was certified of employees, most of whom suffered from various degrees of nerve entrapment syndrome of the upper extremities, who brought suit against their employer challenging the employer's medical layoff policy. The class would consist of all Excel employees who were adversely affected by the policy at issue as a result of their perceived permanent medical restrictions. The court concluded that regardless of whether the class continued to grow, 38 members was sufficient to satisfy the numerosity element when joinder would be impracticable. In response to the defendant's contention that a class action was not an appropriate manner to litigate claims under the ADA, the court saw no reason why a case which challenges a policy cannot proceed as a class action under the ADA, citing Wilson v. Pennsylvania State Police Dept., 11 A.D.D. 1001 (E.D. Pa. 1995) (certifying a class of plaintiffs who challenge the Pennsylvania State Police Department's employment policy against an applicant with poor eyesight as violative of the ADA).

Becher v. Long Island Lighting Co., 164 F.R.D. 144 (E.D. N.Y. 1996), order amended,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

172 F.R.D. 28, 38 Fed. R. Serv. 3d 1102 (E.D. N.Y. 1997) (ERISA). Numerosity is presumed at 40 class members, citing Newberg on Class Actions (3d ed.).

Cf. Hum v. Dericks, 162 F.R.D. 628 (D. Haw. 1995) (products liability). Class certification was denied in an action by a patient who received an artificial ligament, alleging that the defendant clinic and doctor did not obtain informed consent from proposed class members and that they failed to inform patients that the ligaments lacked FDA approval. The plaintiff did not demonstrate that the 39 likely plaintiffs already signed up by counsel could not be joined, along with any of the 200 potential plaintiffs yet to be identified.

Rodger v. Electronic Data Systems Corp., 160 F.R.D. 532, 537, 31 Fed. R. Serv. 3d 1001 (E.D. N.C. 1995). Class certification was appropriate in an action by employees against a successor employer, alleging state law violations arising out of the defendant's acquisition of the predecessor as well as from their alleged wrongful discharge. The plaintiff presented evidence that at least fifty-seven individuals, some of whom were geographically dispersed from this region, could potentially fall within the putative class. Although most of the class members had been readily identified and were likely subject to service, the court remained persuaded that joinder was impracticable in that it would place an untenable burden and costs on these putative class members as well as drain the court's time and resources. "Common sense also dictates that class members would suffer financial hardship and inconvenience in having to litigate an individual claim against EDS inasmuch as many of the class members' stake in a potential increase in their retirement pay is probably not enough to warrant litigating an individual claim against EDS."

McCree v. Sam's Club, 159 F.R.D. 572 (M.D. Ala. 1995) (employment/race). African-American former and current employee plaintiffs did not establish that joinder was impracticable in a Title VII action charging that African-Americans had not been selected for a manager-in-training program or promoted to management in certain states because they were of the African-American race, where, despite extensive discovery, the plaintiffs failed to enumerate any other individuals who fell within the class definition, but merely alleged in conclusory fashion that they were wronged by the defendant and that they believed that others had been similarly wronged. The court noted that the primary evidence submitted on the numerosity issue has been the estimations of the class size made by the named plaintiffs. The observations of the named plaintiffs indicated that there are at least fifteen class members presently employed by Sam's in the state of Alabama alone, but a class of 15 was not so numerous that joinder was impracticable. Moreover, the plaintiffs offered no evidence from which a court could conclude that there existed a class of persons who had suffered the same injury alleged by the named plaintiffs. Although the plaintiffs alleged that the discrimination occurred at other stores in the chain, each store manager determined the criteria by which employees of that store became eligible for the management training program, and employees deemed eligible

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1 Newberg on Class Actions § 3:5 (4th ed.)

competed with employees of other stores nationwide for management positions. "Plaintiffs do not show that this policy is in itself racially discriminatory, but merely argue that it must allow for discriminatory practices by local stores because of the raw statistics furnished. Such speculation does not satisfy the court that this case is an appropriate one for class action."

Stambaugh v. Kansas Dept. of Corrections, 151 F.R.D. 664 (D. Kan. 1993) (employment/sex). The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable (citing Newberg on Class Actions (2d ed.)).

© 2008 Thomson Reuters/West

CLASSACT § 3:5

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.