

CLASSACT § 4:29 Page 1
2 Newberg on Class Actions § 4:29 (4th ed.)

Newberg on Class Actions
Database updated June 2008

Alba Conte and Herbert B. Newberg

Chapter 4. Class Categories and Defendant Classes

References

**§ 4:29. Superiority factors enumerated in Rule 23—Interests of members of class in individually controlling prosecution or defense of separate actions**

The first factor listed by Rule 23(b)(3) as pertinent to the superiority issue is "the interests of members of the class in individually controlling the prosecution or defense of separate actions." Presumably, this factor refers to the interests of most or all class members, rather than the interests of a few individual members. When a small segment of class members has a strong interest in individual litigation, that interest may be served by opting out of the suit or by entering an appearance under Rule 23(c)(2) or by intervening.[1] The comments of the Rules Advisory Committee provide the following guidance:

> In this connection the court should inform itself of any litigation actually pending by or against the individuals. The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interests may be theoretic rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable. The burden that separate suits would impose on the party opposing the class, or upon the court calendars, may also fairly be considered.[2]

This factor has received minimal discussion in Rule 23(b)(3) actions. The interest of class members in individually controlling separate actions may be determined by relevant facts, directly or by inference. The pendency or lack thereof of separate actions at the time when class certification is being considered may be relevant to this issue. Relevance notwithstanding, most courts agree that the pendency or lack thereof of other actions is not conclusive of this issue or of the propriety of class certification. Lack of other suits may indicate a lack of interest in individually controlling separate actions[3] or may be the result of other factors such as insufficient time to have filed individual actions or lack of knowledge that a cause of action exists.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW Document 15549-68 Filed 09/29/08 Page 2 of 11

CLASSACT § 4:29 Page 2
2 Newberg on Class Actions § 4:29 (4th ed.)

A multiplicity of separate actions may indicate interest in individually controlling separate actions, but as the Advisory Committee Notes observe in the above-quoted extract, the "burden that separate suits would impose … upon the court calendars" which could be avoided by a class suit "may also fairly be considered" in weighing this interest. The nature of the other pending suits must also be examined. Not infrequently when multiple suits are filed, many or most of the suits are filed as class actions. In this event, a court may reasonably determine that the multiple class suits filed may reveal that individual suits are not really feasible, and other measures such as consolidation or transfer under 28 U.S.C.A. § 1407 are necessary to coordinate overlapping class actions.[4]

In In re Revco Securities Litigation,[5] a class was certified in an action brought by a "disappointed" investor alleging securities violations in connection with the sale of debt and securities for purposes of financing a leveraged buyout. The superiority requirement was met despite the defendants' contention that the class members were wealthy investors capable of proceeding on their own without the use of a class action and that the court would encounter difficulties in managing the litigation as a class action. The fact that few suits were filed indicated that the class members had no great interest in controlling the prosecution of the litigation. While members of the class might be capable of separate litigation, "Rule 23 has no restriction on wealth."[6] At any rate, it was unclear that all class members could afford to bring separate actions. Approaching the issue from another angle, the court in Rivera v. Fair Chevrolet Geo Partnership,[7] concluded that the superiority requirement was met in an action by an automobile buyer against the seller alleging violations of TILA. The court rejected the defendant's contention that it would be superior for plaintiff to adjudicate the Balance Protection Plan claim individually because he could then seek $1,000 in statutory damages as opposed to a pro rata share. "Following this argument to its natural conclusion, a class of more than 500 would never be certified, because the named plaintiff's pro rata share would be less than $1,000. Such a result would severely weaken the class action enforcement provision of TILA, a result not supported by TILA's legislative history."[8] The interest factor has been considered significant in class actions seeking damages for personal injuries.[9] For example, in Hobbs v. Northeast Airlines,[10] an action brought on behalf of persons injured and survivors of persons killed in an airline crash, the court denied class certification on the ground that class members had a strong interest in prosecuting individual suits. The court said:

> But irrespective of similarities or dissimilarities in the legal standards to be applied to a particular defendant, it is clear that each claimant in this situation may properly be regarded as having a legitimate interest in litigating independently. Not only do the claims vitally affect a significant aspect of the lives of the claimants (unlike the usual class action, where individual claims are usually somewhat peripheral to the lives of the claimants), but there is a wide range of choice of the strategy and tactics of the litigation. Some claimants may well evaluate their chances against certain potential defendants as better than against others. Some claimants may prefer the wholesale approach. At least one group of claimants, the employees of Northeast Airlines, obviously would not be able to participate in this litigation, as against that defendant.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-68   Filed 09/29/08   Page 3 of 11

CLASSACT § 4:29                                                                                                    Page 3
2 Newberg on Class Actions § 4:29 (4th ed.)

> I recognize that none of the difficulties outlined above is insuperable. Plaintiffs are clearly correct in suggesting that claimants wishing to control their own litigation need only elect to be excluded from the class. Nevertheless, the fact that sixteen suits have already been filed …, together with the variety of potential theories of liability, makes it clear that very little would be accomplished by permitting a class action in this case, and that the few class members who would be likely to remain could presumably intervene in this action if they saw fit.[11]

Among the factors generally inferred to support individual litigation in such a case are a high degree of emotional involvement, extremely large damage claims, and a desire to tailor trial tactics to inidividual needs.[12] Some courts agree that individual claims may be so large that the interest in individually controlling separate actions is obvious.[13]

Other courts have held that the existence of large individual claims that are sufficient for individual suits is no bar to a class when the advantages of unitary adjudication exist to determine the defendant's liability.[14] In In re Badger Mountain Irrigation Dist. Securities Litigation,[15] a Rule 23(b)(3) class was certified of those persons who held general obligation bonds issued by an irrigation district which financed the development of irrigation system and subsequently defaulted. A class action was superior to other available methods of adjudication when the average class member held approximately $15,000 in face value of bonds and this was an insufficient investment to justify each individual financing a complex securities fraud action against sophisticated defendants. In Scholes v. Moore,[16] a Rule 23(b)(3) class action was a superior method of adjudication in an action by investors alleging violations of RICO and securities laws, and common law fraud, even though some of the plaintiffs had large claims. Moreover, several hundred claimants shared purported claims against this defendant and not every claimant sustained such large damages that she or he could pursue her or his own action and thus class certification would ensure judicial efficiency and consistent judgments in this matter. A class also was certified in In re Revco Securities Litigation,[17] an action brought by a "disappointed" investor alleging securities violations in connection with the sale of debt and securities for purposes of financing a leveraged buyout. The superiority requirement was met despite the defendants' contention that the class members were wealthy investors capable of proceeding on their own without the use of a class action and that the court would encounter difficulties in managing the litigation as a class action. While members of the class might be capable of separate litigation, "Rule 23 has no restriction on wealth."[18] At any rate, it was unclear that all class members could afford to bring separate actions. At least one court has approved a class action for personal injuries resulting from an airline accident. In Petition of Gabel,[19] three actions remained severed as to damages, but consolidated on the issue of liability. The plaintiffs sought approval of a class action on behalf of 100 persons seeking damages in connection with the death of 44 airline passengers. The court held that a class action was proper on the liability issue. It said:

> The Court is of the view that, notwithstanding some cases to the contrary and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW Document 15549-68 Filed 09/29/08 Page 4 of 11

CLASSACT § 4:29 Page 4
2 Newberg on Class Actions § 4:29 (4th ed.)

notwithstanding the suggestion in the notes of the advisory committee that class actions should not be used in Tort cases, the plain language of Fed R Civ P 23 was devised for just such a situation as this. If that rule was not intended to cover Tort actions or death actions in crash cases, or any kind of a mass Tort, it would have been simple enough to have said so in the text of the rule. But the rule is very broad in its language so as to permit the courts to eliminate repetitive and burdensome litigation and to eliminate in mass Tort cases the situation which existed for so many years in patent cases, for instance, where suits were filed in as many as 10 Districts for infringement, even after the patent had been held invalid after trial, affirmation on appeal and denial of certiorari by the Supreme Court.[20]

The interest in prosecuting individual suits has not been particularly significant in most Rule 23(b)(3) actions, because most of them have been based on violations of the antitrust and securities laws, and have involved significant numbers of small individual claimants relative to costs of litigation. In these cases the dictates of judicial economy and the economic disadvantages of individual suits have generally outweighed any interest in individual litigation.[21]

In other cases, especially in mass tort cases, the growing awareness of the need to fashion a means for unitary adjudication at least for material liability issues affecting a multiplicity of related suits, together with recent decisions upholding the offensive use of collateral estoppel without mutuality of parties, has led to a similar discounting of the significance of interest in individual litigation.[22]

> [FN1] Rule 23(c)(2) provides that notice in a Rule 23(b)(3) class action "shall advise each class member that (A) the court will exclude him from the class if he so requests by a specific date."
>
> Rule 24(a) and (b) provides:
>
> **Intervention**
>
> (a) Intervention of Right. Upon timely application any one shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately protected by existing parties.
>
> (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state government officer or agency or upon

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW Document 15549-68 Filed 09/29/08 Page 5 of 11

CLASSACT § 4:29 Page 5
2 Newberg on Class Actions § 4:29 (4th ed.)

any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

>Wachtel v. Guardian Life Ins. Co., 223 F.R.D. 196 (D.N.J. 2004). A class was certified of beneficiaries of two employee benefit health plans offered by a group health insurer under the Employee Retirement Income Security Act ("ERISA") against a group health insurer to recover benefits and for breach of fiduciary duty.

>The superiority requirement for class certification was satisfied when there was no indication that individual members of class would have a compelling interest in controlling the prosecution of separate actions, and high cost of the litigation suggested that meritorious claims might go unaddressed unless plaintiffs were permitted to proceed as a class.

>The court noted that while this case was not easy, it was both desirable and manageable to litigate this case as a class action in this forum. Even if individual damages calculations presented individual issues, no need for "mini-trials" was anticipated. Rather, if it was determined that Health Net was liable for violations of ERISA, Health Net could recalculate its reimbursements for each class member whose benefits were determined based on improper methods. If the computation of damages became difficult and if exceptional conditions arose, the court could consider whether this is an appropriate case for appointment of a special master to submit a damage report. In addition, after liability is determined, if damages presented manageability problems, the court could amend the class or establish subclasses for damages calculations.

>The court considered that Health Net may use a different database for determining UCR for West Coast Plans and that Health Net may not have used outdated data for the West Coast plans. Because the general method of determining UCR is substantially similar even if a different database is used, the court would not exclude these plans from the class, but rather would consider creating a subclass for the West Coast plans. Different states may have different regulations applicable to employer health benefit plans. If such differences render it useful to create subclasses, grouping together states with similar regulations, this can be done. Because Health Net only administers plans in the Northeast and on the West Coast, there are quite a limited number of states involved in this action, diminishing the possibility of any manageability problems.

>[FN2] Rules Advisory Committee Notes to 1966 Amendments to Rule 23, 39 Federal Rules Decisions pp 69, 104.

>[FN3] See, e.g., Central Wesleyan College v. W.R. Grace & Co., 143 F.R.D. 628, 78 Ed. Law Rep. 848 (D.S.C. 1992), judgment aff'd, 6 F.3d 177, 86 Ed. Law Rep. 69, 27 Fed. R.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-68   Filed 09/29/08   Page 6 of 11

CLASSACT § 4:29                                                      Page 6
2 Newberg on Class Actions § 4:29 (4th ed.)

Serv. 3d 381 (4th Cir. 1993) (mass tort) (in a survey of approximately 2,000 potential class members in an asbestos property damage action, only 15 stated their intention to opt out).

*Sterling v. Velsicol Chemical Corp.*, No. 78-1100 (W.D. Tenn. Feb. 12, 1981) (mass tort) (fact that no suits had been filed elsewhere was indication of predominance).

Hochschuler v. G. D. Searle & Co., 82 F.R.D. 339, 350 (N.D. Ill. 1978) (securities) ("The class members do not appear to have a special interest in controlling the suit and the court is unaware of any other pending actions").

Bentkowski v. Marfuerza Compania Maritima, S. A., 70 F.R.D. 401 (E.D. Pa. 1976) (mass tort) ("[d]earth of other suits" tends to indicate lack of interest in individual prosecution of claims).

Cf. Steinmetz v. Bache & Co., Inc., 71 F.R.D. 202, Fed. Sec. L. Rep. (CCH) ¶95528 (S.D. N.Y. 1976) (securities) (existence of other suits indicated strong interest in individual control).

Daye v. Com. of Pa., 344 F. Supp. 1337 (E.D. Pa. 1972), order aff'd, 483 F.2d 294 (3d Cir. 1973) (mass tort) (fact that other suits had been filed was one reason for class denial).

Hobbs v. Northeast Airlines, Inc., 50 F.R.D. 76 (E.D. Pa. 1970) (mass tort).

[FN4] In re Mid-Atlantic Toyota Antitrust Litigation, 93 F.R.D. 485 (D. Md. 1982) (antitrust); *Garcia-Mir v. Civiletti*, 32 Fed. R. Serv. 2d 509 (D. Kan. 1981) (civil rights).

Some courts, however, will deny duplicative classes if one class has already been certified. Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90, Fed. Sec. L. Rep. (CCH) ¶93019, 29 A.L.R. Fed. 620 (10th Cir. 1971) (securities); In re Plywood Antitrust Litigation, 1978-1 Trade Cas. (CCH) ¶61919, 1977 WL 1549 (E.D. La. 1977) (antitrust).

[FN5] In re Revco Securities Litigation, 142 F.R.D. 659, Fed. Sec. L. Rep. (CCH) ¶96839 (N.D. Ohio 1992) (securities).

[FN6] In re Revco Securities Litigation, 142 F.R.D. 659, 669, Fed. Sec. L. Rep. (CCH) ¶96839 (N.D. Ohio 1992).

[FN7] Rivera v. Fair Chevrolet Geo Partnership, 165 F.R.D. 361 (D. Conn. 1996), adhered to on reconsideration, 168 F.R.D. 11 (D. Conn. 1996) (TILA).

[FN8] Rivera v. Fair Chevrolet Geo Partnership, 165 F.R.D. 361, 366 (D. Conn. 1996),

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-68   Filed 09/29/08   Page 7 of 11

CLASSACT § 4:29                                                                     Page 7
2 Newberg on Class Actions § 4:29 (4th ed.)

adhered to on reconsideration, 168 F.R.D. 11 (D. Conn. 1996).

[FN9] In re Northern Dist. of California, Dalkon Shield IUD Products Liability Litigation, 693 F.2d 847 (9th Cir. 1982), as amended, (July 15, 1982) (mass tort).

Ouellette v. International Paper Co., 86 F.R.D. 476 (D. Vt. 1980) (environmental/mass tort) (class of property owners denied for personal damage claims because plaintiffs might have interest in litigating separately).

Nguyen Da Yen v. Kissinger, 70 F.R.D. 656 (N.D. Cal. 1976) (adoption procedures); Causey v. Pan Am. World Airways, Inc., 66 F.R.D. 392, 28 A.L.R. Fed. 709 (E.D. Va. 1975) (mass tort) (air crash); Yandle v. PPG Industries, Inc., 65 F.R.D. 566 (E.D. Tex. 1974) (mass tort) (asbestos suit).

Daye v. Com. of Pa., 344 F. Supp. 1337 (E.D. Pa. 1972), order aff'd, 483 F.2d 294 (3d Cir. 1973) (mass tort) (fact that other suits had already been filed was one reason for denial of class).

[FN10] Hobbs v. Northeast Airlines, Inc., 50 F.R.D. 76 (E.D. Pa. 1970) (mass tort).

[FN11] Hobbs v. Northeast Airlines, Inc., 50 F.R.D. 76, 79 (E.D. Pa. 1970).

[FN12] Hobbs v. Northeast Airlines, Inc., 50 F.R.D. 76, 79 (E.D. Pa. 1970).

Stoudt v. E.F. Hutton & Co., Inc., 121 F.R.D. 36, 38 (S.D. N.Y. 1988) (tax shelter litigation). A class of persons who purchased limited partnerships was not certified when the class consisted of "large claimants, who are fully capable of proceeding on their own" and who should not be able to "strengthen their bargaining position by threatening their adversaries with the prospect of class-wide relief and large attorney fee awards." The named plaintiff sought recovery in the amount of at least $60,000.

[FN13] Causey v. Pan Am. World Airways, Inc., 66 F.R.D. 392, 28 A.L.R. Fed. 709 (E.D. Va. 1975) (mass tort); Daye v. Com. of Pa., 344 F. Supp. 1337 (E.D. Pa. 1972), order aff'd, 483 F.2d 294 (3d Cir. 1973) (mass tort); Bentkowski v. Marfuerza Compania Maritima, S. A., 70 F.R.D. 401 (E.D. Pa. 1976) (mass tort); Hobbs v. Northeast Airlines, Inc., 50 F.R.D. 76 (E.D. Pa. 1970) (mass tort).

In re Arthur Treacher's Franchise Litigation, 93 F.R.D. 590 (E.D. Pa. 1982) (antitrust) (large amount of damages for which each franchise was potentially liable made individual control of litigation predominant).

Carr v. New York Stock Exchange, Inc., 414 F. Supp. 1292, Fed. Sec. L. Rep. (CCH) ¶95563 (N.D. Cal. 1976) (securities) (class action not superior when claims were large).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-68   Filed 09/29/08   Page 8 of 11

CLASSACT § 4:29                                                                    Page 8
2 Newberg on Class Actions § 4:29 (4th ed.)

[FN14] Lubin v. Sybedon Corp., 688 F. Supp. 1425, Blue Sky L. Rep. (CCH) ¶72759, Fed. Sec. L. Rep. (CCH) ¶93934 (S.D. Cal. 1988) (securities). A class action was superior despite the defendants' assertion that wealthy putative class members could proceed individually. The court found that a class action would provide the most fair and efficient adjudication of this case.

In re IGI Securities Litigation, 122 F.R.D. 451, Fed. Sec. L. Rep. (CCH) ¶93972 (D.N.J. 1988) (securities). A class action was the superior method of adjudication despite a $75,000 loss by each of the three named plaintiffs, given the potentially large number of plaintiffs, the likelihood that they are widely dispersed, and the finding of predominance. There was no suggestion that the suit would be difficult to manage.

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727 (N.D. Ill. 1977) (antitrust) (where typical claim would be medium to large in size, test case was inappropriate).

Petition of Gabel, 350 F. Supp. 624 (C.D. Cal. 1972) (mass tort).

State of Ill. v. Harper & Row Publishers, Inc., 301 F. Supp. 484, 6 A.L.R. Fed. 1 (N.D. Ill. 1969) (antitrust) (named plaintiff with large claim may be expected to pursue the case diligently and thoroughly).

[FN15] In re Badger Mountain Irr. Dist. Securities Litigation, 143 F.R.D. 693, Fed. Sec. L. Rep. (CCH) ¶96870 (W.D. Wash. 1992) (securities).

[FN16] Scholes v. Moore, 150 F.R.D. 133, Fed. Sec. L. Rep. (CCH) ¶97759, R.I.C.O. Bus. Disp. Guide (CCH) ¶8397 (N.D. Ill. 1993) (securities).

[FN17] In re Revco Securities Litigation, 142 F.R.D. 659, Fed. Sec. L. Rep. (CCH) ¶96839 (N.D. Ohio 1992) (securities).

[FN18] In re Revco Securities Litigation, 142 F.R.D. 659, 669, Fed. Sec. L. Rep. (CCH) ¶96839 (N.D. Ohio 1992).

[FN19] Petition of Gabel, 350 F. Supp. 624 (C.D. Cal. 1972) (mass tort).

[FN20] Petition of Gabel, 350 F. Supp. 624, 627 (C.D. Cal. 1972). Class certification in Gabel was overruled in a subsequent case, McDonnell-Douglas Corp. v. U. S. Dist. Court for Central Dist. of California, 523 F.2d 1083 (9th Cir. 1975) (mass tort).

[FN21] A class action was the superior method of adjudication in Owner-Operator Independent Drivers Ass'n v. Mayflower Transit, Inc., 204 F.R.D. 138 (S.D. Ind. 2001), discussed earlier, in which certification was granted in two separate class actions brought

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW Document 15549-68 Filed 09/29/08 Page 9 of 11

CLASSACT § 4:29 Page 9
2 Newberg on Class Actions § 4:29 (4th ed.)

against a motor carrier on behalf of owner/operators of truck tractors who entered into truck leasing agreements with the carrier or its agents, alleging state law violations and violations of federal truth-in-leasing regulations promulgated under Motor Carrier Act. Both classes include 1,000 or more members. The amounts at issue in Case No. 0457 range between $1,000 and $2,500; in Case No. 0458 between $79.00 and $100.00 per month during the leases. A lawsuit by each individual plaintiff was impracticable since the amount of money at issue is less, in many cases, than the amount it would cost for each to prosecute a case. In addition, the individual owner-operators suffered an additional disadvantage that most individual litigants do not: because they travelled an average of 100,000 miles per year, they were absent on the average 300 nights per year. Accordingly, even if they were inclined to prosecute their cases, it is unlikely that they could marshal the time to do so. It follows that, absent a class action, the individuals would likely be without a remedy and Mayflower would likely retain the benefits of its alleged wrongdoing.

Heastie v. Community Bank of Greater Peoria, 125 F.R.D. 669, 677 (N.D. Ill. 1989) (consumer). The superiority requirement was met when the individual claims were "perhaps larger than in many consumer credit class actions, but still relatively small and therefore well-suited for class treatment."

Tedesco v. Miskin, 689 F. Supp. 1327 (S.D.N.Y. 1988) (securities). The superiority requirement was met in a fraud action against the creator and trustee of an investment company when there was no indication that any class member was interested in individually controlling the prosecution of a separate action, concentration of the litigation in this district was desirable, and four state actions had been stayed under the Bankruptcy Code. Even if the state actions had not been stayed, crucial theories of relief asserted in the instant complaint (such as the antifraud provisions of the Securities Exchange Act and RICO) would be unavailable in state court.

Riordan v. Smith Barney, 113 F.R.D. 60, 7 Fed. R. Serv. 3d 1325 (N.D. Ill. 1986) (securities/fraudulent sale of limited partnership interests). A Rule 23(b)(3) investor class was certified in an action to recover damages for the allegedly fraudulent sale of partnership interests. A class action was clearly the superior method of adjudication when investors had been reluctant to bring individual actions, no putative class member opposed certification, the geographical dispersion of the class members made concentration of the litigation in a single forum desirable, and the case would not involve insurmountable case management problems.

In re Gulf Oil/Cities Service Tender Offer Litigation, 112 F.R.D. 383, Fed. Sec. L. Rep. (CCH) ¶92931 (S.D. N.Y. 1986) (securities). The relatively small amount of an individual shareholder's damage and the potentially large liability of the defendants rendered the class action device superior to alternative methods of adjudication.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-68   Filed 09/29/08   Page 10 of 11

CLASSACT § 4:29                                                          Page 10
2 Newberg on Class Actions § 4:29 (4th ed.)

Rishcoff v. Commodity Fluctuations Systems, Inc., 111 F.R.D. 381 (E.D. Pa. 1986) (securities). Class certification was granted in an action by a plaintiff investor who purchased an extended futures account from a commodity trading advisor and suffered a loss during a 21-month period. As the case involved a large number of relatively small claims, the class action was superior to other forms of adjudication.

Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 105 F.R.D. 506, 511, Fed. Sec. L. Rep. (CCH) ¶91977 (S.D. Ohio 1985) (securities). Class action treatment was superior to individual suits when it was unlikely that any individual investor would prefer to litigate this suit alone. The case was filed two and a half years earlier and already involved 200 documents. Potential manageability problems were "no more intimidating than the difficulties invariably encountered in managing a suit involving large numbers of plaintiffs who each have several claims."

National Constructors Ass'n v. National Elec. Contractors Ass'n, Inc., 498 F. Supp. 510, 105 L.R.R.M. (BNA) 2434, 89 Lab. Cas. (CCH) ¶12294 (D. Md. 1980), judgment modified, 678 F.2d 492, 110 L.R.R.M. (BNA) 2385, 94 Lab. Cas. (CCH) ¶13543 (4th Cir. 1982) (antitrust).

Hochschuler v. G. D. Searle & Co., 82 F.R.D. 339, 350 (N.D. Ill. 1978) (securities) ("The class members do not appear to have a special interest in controlling the suit and the court is unaware of any other pending actions").

Fox v. Prudent Resources Trust, 69 F.R.D. 74 (E.D. Pa. 1975) (securities) (class action highly efficient method of trying securities cases).

Technograph Printed Circuits, Limited v. Methode Electronics, Inc., 285 F. Supp. 714, 157 U.S.P.Q. (BNA) 313 (N.D. Ill. 1968) (patent).

Filosa v. U.S., 70 Fed. Cl. 609 (2006). Class certification was proper in an action by nurse case managers employed by the Veterans Health Administration (VHA) against the United States alleging that the VHA violated statute by failing to provide additional pay for on-call duty services extending beyond regular working hours.

The superiority requirement was satisfied when plaintiffs established that they were similarly situated to the potential class of nurses that they sought to represent, and such similarity indicated that there was little benefit to having each proposed class member retain counsel, pay filing fees, and submit duplicative pleadings.

A class action must also be superior to other available methods for the fair and efficient adjudication of the controversy. RCFC 23(b)(2). Under FRCP 23, the superiority requirement is met when a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-68   Filed 09/29/08   Page 11 of 11

CLASSACT § 4:29                                                                                      Page 11
2 Newberg on Class Actions § 4:29 (4th ed.)

sacrificing procedural fairness or bringing about other undesirable results. RCFC 23 enumerates a similar factors: under this prong of the analysis, "the court is obliged to conduct a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such an action."

Given that joinder under RCFC 20(a) is not possible in this case, the "superiority" analysis is limited to a comparison between the benefits of individual litigation versus those of a class action. Plaintiffs established that they similarly are situated to the potential class of nurses that they seek to represent. This similarity indicates that there is little benefit to having each proposed class member retain counsel, pay filing fees, and submit duplicative pleadings.

The Government acknowledged that there is some benefit of not requiring the court to respond to duplicative filings that would be generated by individual suits, but the Government did not concede the "superiority" of a class action, because it perceived the proposed class as not being manageable. This argument was not supported by the evidence and overlooks the import of the opt-in only nature of class actions under RCFC.

[FN22] Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552, Fed. Sec. L. Rep. (CCH) ¶96713, 26 Fed. R. Serv. 2d 669 (1979) (securities).

See Ch 17.

© 2008 Thomson Reuters/West

CLASSACT § 4:29

END OF DOCUMENT