

Newberg on Class Actions
Database updated June 2008

Alba Conte and Herbert B. Newberg

Chapter 4. Class Categories and Defendant Classes

References

### § 4:32. Superiority factors enumerated in Rule 23—Manageability

Finally, Rule 23(b)(3) suggests that the court consider "the difficulties likely to be encountered in the management of a class action." Although some courts have held that there is a presumption against dismissing a class action on management grounds,[1] of all the superiority factors listed in Rule 23, manageability has been the most hotly contested and the most frequent ground for holding that a class action is not superior. The rule lists management difficulties as a matter to be considered when comparing the class action device to other methods of adjudicating the controversy. It is only when such difficulties make a class action less fair and efficient than some other method, such as individual interventions or consolidation of individual lawsuits, that a class action is improper.[2]

In Amchem Products, Inc. v. Windsor,[3] an asbestos mass tort case, the Supreme Court, in an opinion by Justice Ginsberg, cited management problems as among those that supported the Third Circuit's decertification of an asbestos class action.

The argument is sensibly made that a nationwide administrative claims processing regime would provide the most secure, fair, and efficient means of compensating victims of asbestos exposure. Congress, however, has not adopted such a solution. And Rule 23, which must be interpreted with fidelity to the Rules Enabling Act and applied with the interests of absent class members in close view, cannot carry the large load CCR, class counsel, and the District Court heaped upon it.[4]

Class decertification on manageability grounds was warranted in Sikes v. American Tel. & Tel. Co.,[5] an action by the parent of a young child who repeatedly called an automated 900-number "Let's Make a Deal" game against the telephone company, asserting claims under Racketeer Influenced and Corrupt Organizations Act (RICO), Communications Act, and various state laws. The district court improperly concluded that "reliance may be virtually presumed" in this case, as any caller who played the game and who was charged more than he or she won in prizes was necessarily injured "by reason of" the game. Here, over 119 different commercials

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 2 of 24

CLASSACT § 4:32                                                                    Page 2
2 Newberg on Class Actions § 4:32 (4th ed.)

were broadcast on the U.S.A. Network alone. The advertising for LMAD included thirty-second commercials, two-minute commercials, thirty-minute "infomercials," print advertising (in the National Enquirer, newspapers, and local publications), and direct mail solicitations. The record indicated that few of these advertisements are still in existence, that LMAD did not retain copies of all of the advertising, that LMAD did not send copies of all of its advertising to AT&T prior to its use (despite a contractual obligation to do so), and that even the advertisements that remain in existence vary considerably in terms of content and language. The plaintiffs' own expert conceded that those advertisements that were still available varied in terms of their "potential to deceive." The claims would involve extensive individualized inquiries on the issues of injury and damages, and thus a class action was not sustainable.

Class certification was denied in Buford v. H&R Block,[6] an action by customers brought against a tax preparer and related entities, alleging that a refund anticipation loan program violated RICO, the National Bank Act, and the Georgia RICO statute. "Of all the superiority factors listed in Rule 23, manageability has been the most hotly contested and the most frequent ground for holding that a class action is not superior."[7]

A class was certified of buyers of industrial diamonds in In re Industrial Diamonds Antitrust Litigation,[8] an action against two producers controlling majority of the world market, alleging a price-fixing conspiracy. With respect to superiority, the court was not persuaded that consolidation rather than class certification was the superior method of adjudication in this situation. While GE was most likely correct that handling only the three currently pending actions would consume less of this court's time than adjudicating a class action, the premise of GE's argument was its belief that plaintiffs' antitrust claims were without merit. GE argued that most of the purchasers of industrial diamond products shared its assessment of plaintiffs' claims and that therefore few of them are likely to file suit against the defendants if the court denied the plaintiffs' motion for class certification.

The court found its concerns about manageability to be speculative. Although common questions predominated over individual issues with respect to the claims of those putative class members who purchased list-price products from GE and De Beers, the court identified a number of individual issues that would require resolution. First, the court would have to decide the amount of damages suffered by each putative class member who purchased list-price products. In addition, each putative class member who purchased list-price products outside the four-year limitations period would have to establish that it had no knowledge of the alleged conspiracy despite exercising due diligence. Based on the court's current knowledge of these cases, it appeared that these individual issues were likely to be manageable. "Our current information is rather limited, however, and this preliminary assessment may prove to be incorrect."[9]

For this reason, we conclude that the most efficient way to proceed in this case is to bifurcate the trial of these actions. In the first phase, we will try the issues of conspiracy and impact, and the jury will determine liability. The jury will also consider the issue of whether defendants concealed the alleged conspiracy. In the event that the jury finds defendants

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 3 of 24

CLASSACT § 4:32                                                                Page 3
2 Newberg on Class Actions § 4:32 (4th ed.)

liable, we will revisit the question of whether class treatment of the damage issues is feasible. At that point, we will have a number of options, including utilizing a formula to calculate damages, referring the damage issues to a special master or trying these issues, perhaps after certifying appropriate subclasses.[10]

In Commonwealth of Puerto Rico v. M/V Emily S.,[11] an action by persons exposed to fumes from fuel oil that spilled from a barge, class certification was denied when manageability problems barred a finding of superiority as well when the process and cost to the plaintiff class of providing individualized notice to class members and of making suitable opt-out arrangements for such a class would be disproportionate to any benefits that the plaintiffs might argue would accrue from class certification, and the expenditure of judicial resources to oversee the prosecution of the class action, including the resources essential to supervising notice and opt-out procedures, the effort required to assess the propriety of any proposed settlement, and the effort to manage the defense against the class action presented additional and costly management problems. "Our judicial resources would be more efficiently spent in managing the oil spill litigation on the basis of consolidated individual claims to ensure that the interests of all litigants are adequately presented."[12]

The denial of class certification was affirmed in Hardy v. City Optical,[13] an action by a patient who had been examined at City Optical but discovered that she could obtain her contact lenses more cheaply at Lens Express. She orally requested contact lens specifications from City Express and was refused, relying on a statute and regulation that provide that if an optometrist prescribes contact lenses for a patient, she or he has a responsibility to examine the patient and be personally and directly involved with the followup care of the contact lens patient. Manageability problems could result from the inclusion of class members who made oral requests. However, the court rejected the two reasons the lower court gave for the denial of certification:

The first was that Hardy is not an appropriate class representative because the defendants have a defense unique to her-that she failed to request her contact-lens specifications in writing, as the statute requires … .

But the "unique defense" here, while possibly unique, is not a defense. The defendants have made clear from the start of this case-and their counsel repeated at oral argument-that they would not have given Hardy her contact-lens specifications even if she had requested them in writing, because they interpret the regulation as forbidding them to give a patient [her or] his contact-lens specifications in any circumstances. The law does not require a futile act … . Hardy would not have gotten the specifications by writing. She saved the price of a stamp.

The judge's second ground for denying class certification was that antitrust suits, at least when they involve issues of coercion and damages, are not appropriate for class treatment. In support of this proposition, the judge cited only the defendants' memorandum in opposition to class certification and a district court decision from Texas. This was not an adequate

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

engagement with a difficult question. There have been many antitrust class actions in which the relief sought was damages, and the fact that the damages would generally be different for each member of the class was not deemed an insuperable obstacle … . As for coercion, since City Optical has a blanket policy of refusing to give its patients their contact-lens specifications we do not see how the issue would create unworkable complexity in a class-action setting. Everyone who required [her or] his specifications was turned down. Some responded by getting their replacement lenses from City Optical at a higher price than they would have gotten them elsewhere-which is why they wanted their specifications-and the difference in price is their damages. Why these claims could not be consolidated in a class action is not easy to see, and is not illuminated by anything in the district court's opinion or the defendants' submissions.

But in their brief in this court the defendants make a plausible argument, not alluded to by the district court, for why Hardy is not an appropriate class representative. It involves her failure to make a written request for her specifications. That failure has no substantive significance, as we have seen. But a class defined as all persons who within the statute of limitations orally or in writing requested their contact-lens specifications from City Optical may present serious problems of manageability. City Optical submitted an affidavit in which it states that it has a record of every patient who has submitted a written request for his or her specifications. Were the class limited to such patients, the identification of the class members for purposes of notice would be feasible. But if the class is broadened to include patients who made only oral requests-as it must be for Hardy to be within the class and thus an eligible candidate for class representative-the problem of identifying and thus of notifying the class members may be infeasible. May be. Or may not be, since, for all that appears, City Optical has a record of their oral requests too. Nevertheless it is an issue that would have to be explored before Hardy could be deemed an adequate class representative.

… City Optical claims, not wholly implausibly, that a class defined as it must be for Hardy to be an appropriate representative would be unmanageable. Hardy does not deny that such a class action would be unmanageable, and she could not reasonably have assumed that its manageability was obvious to us, so that it was unnecessary for her to explain why it was manageable. In an adversary system, in which by its nature judges are heavily dependent on the lawyers to establish the facts upon which decision will be based, the failure to reply to an adversary's point can have serious consequences. The district judge's ruling denying class certification must be affirmed even though it is conceivable that if he had explored the issue he would have found the problems of unmanageability to be less serious than City Optical claims.[14]

Some courts have denied classes as unmanageable without any real comparison to other means of adjudicating the claims of all class members.[15] In Central Wesleyan College v. W.R. Grace & Co.,[16] a national class action involving asbestos abatement in colleges, the district court addressed the manageability issue in national class actions:

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 5 of 24

CLASSACT § 4:32                                                                    Page 5
2 Newberg on Class Actions § 4:32 (4th ed.)

Courts which have confronted the manageability problem have adopted one of two attitudes. One court has simply ruled that problems of manageability prevent the certification of a national class action. See Sisters of St. Mary v. AAER Sprayed Insulation, 151 Wis. 2d 708, 445 N.W.2d 723 (Ct. App. 1989). Other courts have attacked the manageability issue by viewing the class not as an "all or nothing" proposition, but an effort to determine if certification of a limited number of issues, coupled with sub-classes where required, can reduce manageability concerns. These courts have typically certified certain issues for determination which are heavily weighted toward the repetitive factual issues. See Section 1B.

This approach has appeal. The main problem in handling large numbers of asbestos claims individually has been with the duplication of effort on common issues, such as Defendants' knowledge, testing, warning—(or lack thereof)—state of the art, and similar issues where the same testimony and evidence is introduced repeatedly. A Texas federal court, citing the brief of several asbestos companies in the National Schools class action, recently discussed this problem of repetitive proceedings:

As noted by Defendants in their brief in In re: Asbestos School Litigation, … "with respect to such issues as negligence, reasonable danger, state of the art … the precise facts applicable to the claim of any plaintiff are equally applicable to the claims of others … ." The resolution of these issues, Defendants assert, "involves the same witnesses, the same discovery, the same documents, and the same factual and legal determinations."

Dayton Independent School Dist. v. U.S. Mineral Products Co., 1989 WL 237732 (E.D. Tex. 1989) at 3–4.

In the National Schools class action, 789 F.2d at 1010, the appellate panel expressed a similar sentiment:

Experience shows that in the asbestos litigation arena redundant evidence is the rule rather than the exception… . the use of the class action device appears to offer some hope of reducing the expenditure of time and money needed to resolve the common issues which are of substantial importance.

The Third Circuit panel approved the use of limited certification pursuant to Fed. R. Civ. P. 23(c)(4)(a):

There may be cases in which class resolution of one issue or small group of them will so advance the litigation that they may fairly be said to predominate. Resolution of common issues need not guarantee a conclusive finding on liability … nor is it a disqualification that damages must be assessed on an individual basis.

789 F.2d at 1010. (citations omitted)

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 6 of 24

CLASSACT § 4:32                                                        Page 6
2 Newberg on Class Actions § 4:32 (4th ed.)

The Third Circuit's sentiment was echoed by Judge Russell in A.H. Robins where he stated:

In order to promote the use of the class device and to reduce the range of the issues, courts should take full advantage of the provision in subsection (c)(4) permitting class treatment of separate issues in the case and, if such separate issues predominate sufficiently (i.e., is the central issue), to certify the entire controversy as in Agent Orange.

880 F.2d at 740.

Judge Russell's observation makes an important distinction. He notes that separate issues can be certified for class treatment to reduce the range of disputed issues, even if the certified issues are not the "central" issues in the case. If the certified issues are the central issues, then the court can certify the entire controversy for class treatment.

For a review of the cases, there appears to be a judicial consensus on the common issues in asbestos cases when certification can advance the judicial inquiry. With some variations, these issues focus on hazard, knowledge, conspiracy, testing, warning, and intentional or reckless conduct.[17]

A court cannot refuse to hear an individual action merely because the case is complex or time consuming. Such was not the intent of the drafters of the rule. Rule 23 does not give a court this option or support a denial of a class action to avoid delay on the court's docket or because the court does not wish to become involved in complex or protracted litigation. As stated in the Antibiotics antitrust case, "the court cannot simply close its doors to these litigants because their actions present novel and difficult questions."[18]

Many courts have recognized that complexity is often a characteristic of class action litigation and that potential management difficulties are not grounds for class denial when justice can be done only through the class action device:

Although there may be difficulties encountered in managing this antitrust suit as a class action, as the court pointed out in Technograph, 285 F. Supp. 714 (ND Ill 1968), the difficulties likely to be encountered in the management of a class action are not important when weighed against the benefits to the class, and any subclasses thereof, and to the administration of justice. This court agrees.[19]

It must also be remembered that manageability is only one of the elements that goes into the balance to determine the superiority of a class in a particular case. Other factors must also be considered, as must the purposes of Rule 23, including: conserving time, effort, and expense;[20] providing a forum for small claimants;[21] and deterring illegal activities.[22] Many courts have realized that the extent of management difficulties cannot be accurately predicted at the outset of the litigation and have therefore conditionally certified the class and

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 7 of 24

CLASSACT § 4:32                                                                                        Page 7
2 Newberg on Class Actions § 4:32 (4th ed.)

adopted a wait-and-see attitude.[23] Thus, if the litigation proves manageable, the case can proceed without sacrificing the advantages of a class action, and if insurmountable administrative difficulties arise, the class can be limited or the proceedings otherwise modified to eliminate the problem. If trial of a case is beyond the capabilities of the judicial system, it is axiomatic that it cannot be tried, but few if any such cases have been presented.[24]

Contentions that management difficulties exist which preclude the superiority of a class action have taken many forms. In Eisen v. Carlisle & Jacquelin,[25] the Supreme Court observed that manageability "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular case."[26] It has been contended, especially in some of the earlier cases construing amended Rule 23 that involved small individual claims, that the action is complex and presents manageability problems of great magnitude that would not exist in the absence of a class action because the small individual claims will not likely be the subject of individual suits.[27] Most courts have rejected this contention, holding that manageability difficulties cannot support a class denial ruling when no other practical litigation alternative exists.[28] As has been noted with the predominance test,[29] Rule 23(b)(3) permits a class denial for lack of superiority only when other available methods for the fair and efficient adjudication of the controversy actually exist. The rule is silent concerning the power of a court to refuse a class when a class action represents the only feasible means of relief. Such power is unlikely, especially in light of the Supreme Court's recognition that class actions for small claimants will frequently be the only means available for judicial redress.[30] For example, in Macarz v. Transworld Systems, Inc.,[31] a class was certified of consumers who sued a debt collector for alleged violation of Fair Debt Collection Practices Act (FDCPA). A consumer was not precluded from serving as the named plaintiff by virtue of being an attorney, nor did the combination of consumer's profession as attorney and his pre-existing business relationship with counsel preclude a finding of adequacy of representation. The debt collector failed to show that consumer's counsel was engaged in improper claim-splitting and piecemeal litigation, such that superiority would not be satisfied. Class certification was not inappropriate because of the debt collector's alleged inability to identify, through its records, which recipients of its collection letters were consumer debtors protected by FDCPA.

Under Rule 23(c)(2)(A), members of class actions maintained under 23(b)(3) who determine that their interests are better served by an individual action, and provide timely notice of this election to the court, will be excluded from the class. This "opt out" provision is designed to ensure that even in a class action that meets all the prerequisites of Rule 23, "the individual interest is respected." Advisory Committee Notes to the 1966 Amendments. In addition, the notion that individual plaintiffs may recover higher damages if they were to pursue their own claims is implicit in the very idea of a class action, and is part of the balance that is struck in Rule 23.

The court could not accept the conclusion that at least 15,000 individual FDCPA actions would somehow provide for greater fairness and efficiency than the streamlined procedure of a class action the defendant would no doubt benefit from such result, as the vast majority, if not

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 8 of 24

CLASSACT § 4:32                                                    Page 8
2 Newberg on Class Actions § 4:32 (4th ed.)

all, of those potential plaintiffs would fail to pursue what this court already determined were meritorious claims. But defendant's desire to limit its exposure in damages cannot be a criteria for assessing the appropriateness of a class action. Rather, a court must keep in mind the "private attorney general" enforcement mechanism chosen by Congress in enacting the FDCPA. If only those recipients of the letter with significant damages, and thus incentive to sue, brought actions to challenge its legality, the FDCPA would not have the deterrent and curative effect of eliminating abusive collection practices intended by Congress. Although class members may recover smaller damages amounts than would have been the case in individual actions, the Court found that the class action vehicle was nonetheless superior, given the remote likelihood that such individual actions actually would be brought.

The defendant maintained that plaintiff's counsel, were engaging in "improper claim-splitting and piecemeal litigation" such that class certification should be denied, and pointed to a motion to compel discovery filed by counsel in a companion case brought by Mary Macarz against Transworld in which plaintiff's counsel sought information regarding individualized instructions from a particular creditor. To defendant, this demonstrates hypocrisy on the part of plaintiff's counsel in that in individual FDCPA claims over the TSI letters, individual, particularized issues predominate and justify discovery fishing expeditions. In class actions, counsel asserted, common issues predominate. The court first noted that looking to the formulation of discovery requests in a separate case in order to discern some sort of underlying strategy on the part of plaintiff's counsel is an unorthodox means of opposing class certification. Given the broad scope of discovery under the Federal Rules, the terminology of such requests is unlikely to have much relevance to the questions presented in a motion for class certification. In addition, characterizing counsel's discovery requests as a "fishing expedition" is not entirely accurate, since the docket sheet indicates that plaintiff's motion to compel was granted by the Magistrate. Finally, information regarding Transworld's instructions from individual creditors bears on defendant's intent, a component of damages under the Act. Seeking such information in an individual case is not inconsistent with pursuing class certification, as similar factors may go into a determination of individual damages for the class members.

The court also rejected defendants's contention that a number of other suits filed by the same counsel against Transworld indicated counsel's motive is to bring multiple suits to generate fees. At least two of the suits referenced appear to involve a different communication from Transworld, and allege different violations of the FDCPA. By choosing to continue to utilize the same collection letter the defendant would leave itself open to further lawsuits premised on a "continuing violations" theory. If a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations.

Transworld also unsuccessfully argued that a statewide class is improper, as allowing repeated statewide class actions for violation of the same letter would render the $500,000 per class action damages cap in the FDCPA meaningless.

Defendant would have the Court read an implied limitation on statewide class actions into the

FDCPA $500,000 damages cap, such that plaintiff's attempt to certify a class solely of Connecticut residents would constitute "improper claim-splitting." Defendant's argument has been considered, and rejected, in a number of cases. First, the Seventh Circuit in Mace concluded that the language of the statute did not support such an interpretation. While the Truth in Lending Act damages cap applied to class actions as well as to a "series of class actions … arising out of the same failure to comply by the same creditor," the Seventh Circuit noted that the same language was "conspicuously absent from the FDCPA." 109 F.3d at 342. The Mace court identified several problems arising from requiring nationwide class certification, ranging from the short statute of limitations for FDCPA actions (one year) to the de minimis recovery for class members that would result. Id. The Seventh Circuit reserved decision on the propriety of a nation-wide class in the case of "multiple serial class actions to recover for the same misconduct," because the facts before the court did not present such a situation.[32]

Thus the court concluded that these facts do not present the multiple serial class action" scenario that might have prompted the Seventh Circuit to address a nationwide class requirement, and accordingly refuses to accept defendant's invitation to graft such a requirement onto the FDCPA.

The court also rejected the defendant's argument that a definite identification of class members was impossible. The FDCPA applies only to consumer debts, and although the FDCPA disclosures appear on all notices Transworld sends, it apparently collects both consumer and business debts, and does not distinguish between the two in its internal record-keeping. Due to its inability to separate out the FDCPA-protected consumer debtors from non-protected business debts, defendant argues that class certification is inappropriate. According to an affidavit submitted by the president of Transworld, TSI does not distinguish between non-consumer and consumer debts, and there are no records or information available to TSI to ascertain whether debts are consumer debts or commercial debts. Accordingly, defendant maintained, determining whether each debt was a commercial or consumer debt would be an "overwhelming task" necessitating the reassembly of vast quantities of data, design of a new computer program, and thousands of hours of work.

The defendant's "protestations of impossibility" of definite identification of class members did not alter the Court's conclusion that class certification was appropriate here. First, several courts have rejected the identical argument, and concluded that difficulties in differentiating consumer and commercial debts does not serve as a bar to class certification, if all the other prerequisites of Rule 23 are met … .

Should a debt collection company as large and as sophisticated as Transworld be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted. Given the number of claims that have been pursued against Transworld and the number of classes that have been certified, defendant's claim that their records are not up to the task of differentiating the debts it

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 10 of 24

CLASSACT § 4:32                                                    Page 10
2 Newberg on Class Actions § 4:32 (4th ed.)

collects rings hollow. In addition, any disputes regarding whether a particular class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case.[33]

The manageability contentions most frequently raised relate to the complexity and numerousness of individual issues, class size, geographical scope of class, compulsory counterclaims, problems in giving class notice, complications from exclusions by class members, and lack of benefit to class members. Proponents of class actions have pointed to innovative management techniques that are available to overcome management difficulties.

There is a close relationship between the predominance test and the superiority requirement for Rule 23(b)(3) tests. Both are founded on judicial economy notions,[34] and the superiority criteria embrace other concepts in addition. When a court determines that common questions do not predominate over individual ones because judicial fairness and efficiency of a class action will not be served in light of the individual questions involved, the court is highly likely to find that a class action is also not superior because of the management difficulties posed by the individual questions.[35]

In class actions by customers against long-distance telephone companies which provided "900" telephone number service to sponsors of promotions, and an independent service bureau, which allegedly operated games of chance for sponsors, alleging racketeering, mail and wire fraud, and illegal gambling business, arising from alleged "900" number games of chance and credit card offers, the court of appeals in Andrews v. AT&T[36] held that the district court improperly certified plaintiff master classes and Georgia plaintiff subclasses. Although the named plaintiffs had standing to bring their claims, and the typicality and adequacy of representation requirements were met, the actions regarding alleged illegal gambling schemes and credit card offers would not be manageable. The named plaintiffs had standing to assert their claims when at a minimum, the plaintiffs were allegedly induced by misleading solicitations to make 900-number calls, and they were the targets of appellants' attempts to collect what they allege to be illegal debts. One plaintiff's phone service was disconnected in part for his failure to pay 900-number charges, and the record indicated that the named plaintiffs paid at least some of the 900-number charges on their phone bills. The court rejected the defendants' contention that because the named representatives dialed different 900-number programs, and the programs actually dialed amount to only a minuscule portion of the total number of programs encompassed by these class actions, none of the named plaintiff's claims could be considered typical of those of unnamed class members. The class representatives need not have participated in a wide variety of 900-number programs to have suffered harm typical of the harm suffered by the class members in general. The court noted that as a practical matter, the resolution of the "overarching" common issue of whether the defendants were involved in the operation of illegal gambling schemes that used 900 numbers to facilitate caller participation, broke down into an "unmanageable variety of individual legal and factual issues… . The class's mail and wire fraud allegations, for example, are not wholly subject to class-wide resolution."[37]

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 11 of 24

CLASSACT § 4:32                                                                    Page 11
2 Newberg on Class Actions § 4:32 (4th ed.)

With respect to the gambling claims raised by the Andrews class, the biggest problems arise not so much in relation to the class plaintiff's participation in the 900-number programs, but with the contours of the programs themselves. In assessing the gambling claims, aspects of each 900-number program will have to be individually examined to determine whether a particular program actually involves gambling or runs afoul of state gambling laws. For example, some programs were designed to involve skill or knowledge on the part of callers, while others appear to have depended only upon chance. Many 900-number programs also provided various means of free entry into contests or made more complete disclosures than others. In short, the 900-number programs implicated in Andrews cannot be lumped together and condemned or absolved en masse.[38]

900-number programs could conceivably be legal in one state but not in another. "Scrutinizing hundreds of 900-number programs under the provisions of fifty jurisdictions complicates matters exponentially."[39]

The court was even more certain that the Harper class, which brought the credit card litigation, was not sustainable under Rule 23(b)(3).

Unlike Andrews, which alleges an activity-gambling-that, if proven, would be illegal in most jurisdictions regardless of a plaintiff's motivation for calling a 900 number, Harper attacks programs offering credit cards or information about credit availability, perfectly legal activities unless coupled with illegal means of solicitation, in this case mail or wire fraud. The 900-number programs at issue in Harper differ widely in terms of the advertising and solicitation used, the extent to which disclosures were made, and the existence and promotion of free means of participation, so each program must be assessed individually to determine whether fraudulent tactics were employed by the appellants.

Even if it could be shown that the appellants were engaged in a scheme to defraud and made misrepresentations to further that scheme, the plaintiffs would still have to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages.[40]

The court rejected the plaintiffs' suggestion at oral argument that these cases would be made manageable by virtue of the fact that, if the classes were certified, the defendants would likely settle, stating, "We do not view this as an appropriate measure of manageability."[41]

And in Kaczmarek v. International Business Machines Corp.,[42] parties who had purchased computers equipped with allegedly defective digital signal processor and who brought suit to recover damages, and to require manufacturer to repair their computers, on breach of contract, breach of warranty, misrepresentation, and unfair practices theories, failed to establish that the lawsuit was appropriate for class certification. The court considered the proposed subclasses and found that these subclasses would not cure the problems of such diverse individual factual issues and that if the litigation were so subdivided, it would be unmanageable. Accordingly, the class

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 12 of 24

CLASSACT § 4:32                                                                 Page 12
2 Newberg on Class Actions § 4:32 (4th ed.)

action was not a superior method for fair and efficient adjudication. In addition, under Phillips Petroleum Co. v. Shutts,[43] the court would have to apply the law of all fifty states where those state laws differ materially. Although claims of common law fraud and breach of contract may be similar from state to state, the states have diverse bodies of law on warranty and negligent misrepresentation, and each state has its own CPL. The state laws on these claims present different procedural and substantive elements, including differing requirements of privity, demand, scienter and reliance. In addition, bringing the case under the Magnuson-Moss Act did not make uniform the plaintiffs' warranty claims because liability under that Act depends on state law which differs on issues of express and implied warranties. The defendant's counsel presented a lengthy analysis of the diverse laws of the various states and demonstrated sufficiently that many of the jurisdictions have different standards and elements of proof for the claims of breach of express and implied warranty, negligent misrepresentation and deceptive trade practices. The prospect of determining the law of all fifty states and then applying the materially different laws that exist for some of the claims in this case would make this class action too complicated and unmanageable.

In Davenport v. Gerber Products Co.,[44] a class of children suffering from "nursing bottle syndrome" and their parents, seeking damages arising from injuries allegedly caused by defendants' infant-feeding bottles and seeking to compel the defendants to issue warnings on such bottles, and seeking certification only on the issue of defendants' duty to warn of "nursing mouth syndrome," would not be certified in an action against the bottle manufacturer when common questions of liability did not predominate over individual questions relating to each parent's knowledge of the risks involved and the other possible causes for the children's injuries.

The most pressing concerns presented by certification of the defined class, even under the flexibility afforded by Rule 23(c)(4)(A), is that certification in this case would prove unmanageable and would not serve any of the judicial efficiency and economy concerns that underpin Rule 23. Even if the class were certified on the duty to warn and breach of duty issues, individual issues relating to each parent's knowledge of the risks and other possible causes for the infant's injury would remain unresolved. The jury in each individual trial would have to examine the knowledge of the defendant manufacturer and weigh the manufacturer's relative fault against the knowledge and fault of the juice manufacturer and any other potential wrongdoer such as the child's physician. In addition, the comparative fault of the parents would need to be weighed on an individual basis. In sum, certification on the narrow legal issue presented by the plaintiff does not advance this litigation in light of the fact that virtually all of the issues related to liability would remain unresolved on an individual basis… . The manageability at trial concerns raised by the presentation of evidence on the question of the adequacy of various warnings defendants alleged were provided in various fashions at various times and the interplay of that problem with a single jury's undertaking the task of allocating comparative fault as between plaintiffs or various subclasses and defendants is insurmountable.[45]

Thus, when a court determines that a multitude of mini-trials will be necessary to dispose of

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 13 of 24

CLASSACT § 4:32                                                                    Page 13
2 Newberg on Class Actions § 4:32 (4th ed.)

individual claims, the court will likely find that common questions do not predominate, and the need for numerous mini-trials renders the class action unmanageable and not superior. However, a determination that common questions predominate does not automatically mean that a class action is superior.

Even when the number of individual issues is not inordinately large, the complexity of the individual issues, such as the need to determine individual recoveries by means of long individual accounting procedures,[46] may present unreasonable burdens on the judicial system.

Courts have developed several innovative management techniques to eliminate or minimize court burdens arising from management difficulties posed by class actions. With reference to problems of complexity or numerousness of individual questions remaining in a class action, courts have pointed to or have agreed to use devices such as conditional class certification under Rule 23(c)(1),[47] limitation of the class to particular issues under Rule 23(c)(4),[48] bifurcated trials for liability and damages,[49] common proof of class damages,[50] use of special masters or magistrates,[51] use of liaison and lead counsel for the parties,[52] class recovery distribution techniques involving cy pres notions,[53] and monitoring procedures for time expended by class counsel to avoid duplication or excessiveness of hours.[54]

[FN1] In re Potash Antitrust Litigation, 159 F.R.D. 682 (D. Minn. 1995) (there is a presumption against dismissing actions for management reasons).

[FN2] Reiter v. Sonotone Corp., 442 U.S. 330, 346, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979) (antitrust) (allowing consumers to sue for alleged antitrust violations would not result in "administrative chaos, class action harassment, or 'windfall' settlements if the district courts exercise sound discretion and use the tools available").

In re Workers' Compensation, 130 F.R.D. 99 (D. Minn. 1990) (antitrust). Dismissal for management reasons is never favored.

Seidman v. Stauffer Chemical Corp., 1986 WL 9803, *9 (D.Conn., 1986) (securities). "There is nothing inherently unmanageable about a class action which spans approximately 22 months and involves thousands of potential members."

Old Broadway Corp. v. Hjelle, 411 N.W.2d 81 (N.D. 1987) (Levine, J, dissenting) (class of advertisers, whose messages appeared on highway signs scheduled for removal by state highway commissioner, was certified, citing Newberg on Class Actions (2d ed.).

In re Asbestos School Litigation, 104 F.R.D. 422, 40 Fed. R. Serv. 2d 8 (E.D. Pa. 1984), opinion amended, 107 F.R.D. 215, 2 Fed. R. Serv. 3d 1316 (E.D. Pa. 1985) and order aff'd in part, rev'd in part, 789 F.2d 996, 32 Ed. Law Rep. 50, 4 Fed. R. Serv. 3d 750 (3d Cir. 1986) (product liability) (court certified a (b)(3) nationwide class, and held applicability of state laws of 54 jurisdictions would not render suit unmanageable).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 14 of 24

CLASSACT § 4:32                                                    Page 14
2 Newberg on Class Actions § 4:32 (4th ed.)

Stertz v. Gulf Oil Corp., 95 F.R.D. 116 (E.D. N.Y. 1982), on reconsideration, 99 F.R.D. 74 (E.D. N.Y. 1983) (antitrust) (though the Economic Stabilization Act provided incentives to individual litigation, class alleging overcharges under the Act would be certified when class size and complexity of case made class action superior).

In re Folding Carton Antitrust Litigation, 88 F.R.D. 211 (N.D. Ill. 1980) (antitrust) (if management problems are speculative and not already apparent in litigation, class is proper).

In re Antibiotic Antitrust Actions, 333 F. Supp. 278, 282 to 283 (S.D. N.Y. 1971), order amended, 333 F. Supp. 291 (S.D. N.Y. 1971) and order amended, 333 F. Supp. 299 (S.D. N.Y. 1971), mandamus denied, 447 F.2d 122 (2d Cir. 1971) and mandamus denied, 449 F.2d 119 (2d Cir. 1971) (antitrust):
It should be noted at the outset that difficulties in management are of significance only if they make the class action a less "fair and efficient" method of adjudication than other available techniques. This perspective is particularly important … where the defendants, after reciting potential manageability problems, seem to conclude that no remedy is better than an imperfect one.

In re Antibiotic Antitrust Actions, 333 F. Supp. 278, 282 to 283 (S.D. N.Y. 1971), order amended, 333 F. Supp. 291 (S.D. N.Y. 1971) and order amended, 333 F. Supp. 299 (S.D. N.Y. 1971) (emphasis in original).

[FN3] Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689, 37 Fed. R. Serv. 3d 1017, 28 Envtl. L. Rep. 20173 (1997).

[FN4] Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 2252, 138 L. Ed. 2d 689, 37 Fed. R. Serv. 3d 1017, 28 Envtl. L. Rep. 20173 (1997). (footnote omitted).

[FN5] Sikes v. American Tel. & Tel. Co., 281 F.3d 1350, R.I.C.O. Bus. Disp. Guide (CCH) ¶10225, 52 Fed. R. Serv. 3d 621 (11th Cir. 2002), cert. denied, 2002 WL 1764041 (U.S. 2002).

[FN6] Buford v. H & R Block, Inc., 168 F.R.D. 340, R.I.C.O. Bus. Disp. Guide (CCH) ¶9123 (S.D. Ga. 1996), aff'd, 117 F.3d 1433 (11th Cir. 1997).

[FN7] Buford v. H & R Block, Inc., 168 F.R.D. 340, 363, R.I.C.O. Bus. Disp. Guide (CCH) ¶9123 (S.D. Ga. 1996), aff'd, 117 F.3d 1433 (11th Cir. 1997), quoting Newberg on Class Actions (3d ed.).

[FN8] In re Industrial Diamonds Antitrust Litigation, 167 F.R.D. 374, 36 Fed. R. Serv. 3d 744 (S.D. N.Y. 1996).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 15 of 24

CLASSACT § 4:32                                                    Page 15
2 Newberg on Class Actions § 4:32 (4th ed.)

[FN9] In re Industrial Diamonds Antitrust Litigation, 167 F.R.D. 374, 386, 36 Fed. R. Serv. 3d 744 (S.D. N.Y. 1996).

Parker v. Time Warner Entertainment Co., L.P., 331 F.3d 13, 55 Fed. R. Serv. 3d 791 (2d Cir. 2003). The district court acted prematurely when it decided without hearing or any discovery that plaintiffs' cable television subscribers who brought a class action alleging that cable provider violated subscriber privacy provisions of Cable Communications Policy Act, and seeking both injunctive and monetary relief fell short of rule authorizing certification where relief sought is predominantly injunctive, and that predominance and superiority requirements of class certification rule were unmet.

Time Warner argued in the district court that certification under Rule 23(b)(3) should be denied as a matter of law because the highly individualized nature of the alleged privacy violations destroys the commonality of issues required by Rule 23(b)(3) and because allowing plaintiffs to proceed on their claims through a class action would be unduly burdensome to the parties and the court and that subsequently neither the commonality requirement nor the superiority requirement of Rule 23(b)(3) could be met in this case. The lower court cited Wilson v. American Cablevision of Kansas City, 133 F.R.D. 573 (W.D. Mo. 1990), as the only case to consider whether a class action is the superior vehicle for litigating a violation of section 551(f) of the Cable Act. Focusing on the "disproportionality of a damages award that has little relation to the harm actually suffered," the court followed the Wilson rationale that the class action suit was not intended to turn what is fundamentally a consumer protection scheme for cable subscribers into a vehicle for the financial demise of a cable service provider that failed to comply with the technical aspects of that scheme.

Although he conceded that manageability of the action was a serious consideration in a case where potential class members total 12 million subscribers in 23 states, Judge Glasser concluded that other factors had been considered and that Judge Azrack's recommendation had not improperly relied on manageability alone in denying certification.

In denying class certification under Rule 23(b)(3), the district court focused on the superiority of class litigation, the technical nature of the claimed violations of the Cable Act, and the impact of a potentially huge class, and was particularly concerned about a damages award that would be disproportionately large compared to the harm actually suffered by the potential class members. A class action is not the superior manner of proceeding where the liability defendant stands to incur is grossly disproportionate to any actual harm sustained by an aggrieved individual. The lower court noted that there are due-process concerns when the prospect of a stunningly large damages award looms as the result of technical violations of the Cable Act that affect potentially millions of subscribers. The district court also noted that the case raised obvious manageability

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

concerns where potential class members total 12 million subscribers in 23 states.
The difficulty we have with these conclusions is that they are based on assumptions of fact rather than on findings of fact. The District Court precluded any class discovery and even the filing of a motion for class certification. Thus, it remains unknown what class Parker would have sought to certify and the numbers of potential class members in that proposed class. Although the Amended Complaint alleges that the total number of Time Warner cable subscribers number about twelve million in twenty-three states, Parker has given no indication that he would actually seek to certify a class of all twelve million subscribers. Indeed, counsel for Parker stated in a hearing before Magistrate Judge Azrack that the number of potential class members could not be identified without discovery on the issue: "[T]here is simply no number because we've had no discovery as to the number of people who have actually been injured. We think it is a large number. We have no idea of whether it's thirteen million or one million or 1,000." George Sampson, Transc. of Motion Hearing (Sept. 9, 2000). Absent at least limited discovery concerning the composition of the class, the District Court had no evidence regarding the size of the recovery that Time Warner might face if the class claims were successful. Under the circumstances, the Court's conclusion that the size of the class would inevitably lead to "the financial demise" of Time Warner, …or even to significant manageability problems, was speculative.

We acknowledge Judge Glasser's legitimate concern that the potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues. Those issues arise from the effects of combining a statutory scheme that imposes minimum statutory damages awards on a per-consumer basis—usually in order to encourage the filing of individual lawsuits as a means of private enforcement of consumer protection laws—with the class action mechanism that aggregates many claims—often because there would otherwise be no incentive to bring an individual claim. Such a combination may expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages—yet ones that are awarded as a matter of strict liability, rather than for the egregious conduct typically necessary to support a punitive damages award. It may be that the aggregation in a class action of large numbers of statutory damages claims potentially distorts the purpose of both statutory damages and class actions. If so, such a distortion could create a potentially enormous aggregate recovery for plaintiffs, and thus an in terrorem effect on defendants, which may induce unfair settlements. And it may be that in a sufficiently serious case the due process clause might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award.… At this point in this case, however, these concerns remain hypothetical. There has been no class certification motion filed nor any actual evidence presented that raises a reasonable possibility that principles of due process may restrict an ultimate damages award. Accordingly, we decline to consider what limits the due process clause may impose.

Parker v. Time Warner Entertainment Co., L.P., 331 F.3d 13, at 21to 22, 55 Fed. R. Serv. 3d 791 (2d Cir. 2003). Because the district court decided Time Warner's motion without

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 17 of 24

CLASSACT § 4:32                                                                    Page 17
2 Newberg on Class Actions § 4:32 (4th ed.)

the factual support necessary to support its legal conclusions, the decision to deny Rule 23(b)(3) class certification was vacated and this matter was remanded for further proceedings.

[FN10] In re Industrial Diamonds Antitrust Litigation, 167 F.R.D. 374, 386, 36 Fed. R. Serv. 3d 744 (S.D. N.Y. 1996).

Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 31 Employee Benefits Cas. (BNA) 2883 (S.D. N.Y. 2003). Class certification was denied in an action by beneficiaries of Employee Retirement Income Security Act (ERISA) pension plans against their employer, related companies, six pension plans, and their administrative committees, claiming that defendants violated ERISA by failing to properly calculate their pension benefits under the terms of the plans. Plaintiffs did not show that it would be unnecessary to conduct highly individualized, fact-intensive inquiries into the circumstances surrounding the execution of general and lump sum releases by absent class members in order to determine whether these individuals were entitled to recover under ERISA, raising serious concerns about the manageability of the action. A class action is not suited to litigation so heavily dependent on questions requiring individualized proof. Given the significance of the general and lump sum releases executed by members of the class and the fact-intensive inquiry required to analyze the releases' enforceability, a class action was neither a superior nor an efficient means of resolving this controversy.

[FN11] Com. of Puerto Rico v. M/V Emily S., 158 F.R.D. 9, 1995 A.M.C. 1025, 30 Fed. R. Serv. 3d 1293 (D.P.R. 1994) (mass tort).

[FN12] Com. of Puerto Rico v. M/V Emily S., 158 F.R.D. 9, 16, 1995 A.M.C. 1025, 30 Fed. R. Serv. 3d 1293 (D.P.R. 1994).

[FN13] Hardy v. City Optical Inc., 39 F.3d 765, 30 Fed. R. Serv. 3d 1059 (7th Cir. 1994).

[FN14] Hardy v. City Optical Inc., 39 F.3d 765, 770, 30 Fed. R. Serv. 3d 1059 (7th Cir. 1994).

[FN15] Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, Fed. Sec. L. Rep. (CCH) ¶93963, Fed. Sec. L. Rep. (CCH) ¶93999, 17 Fed. R. Serv. 2d 83, 17 Fed. R. Serv. 2d 272 (2d Cir. 1973), cert. granted, 414 U.S. 908, 94 S. Ct. 235, 38 L. Ed. 2d 146 (1973) and judgment vacated, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732, 9 Fair Empl. Prac. Cas. (BNA) 1302, 7 Empl. Prac. Dec. (CCH) ¶9374A, Fed. Sec. L. Rep. (CCH) ¶94570, 18 Fed. R. Serv. 2d 877, 4 Envtl. L. Rep. 20513 (1974) (antitrust); U.S. v. Trucking Management, Inc., 28 Fed. R. Serv. 2d 839 (D.D.C. 1979), order amended, 22 Empl. Prac. Dec. (CCH) ¶30872, 1980 WL 128 (D.D.C. 1980) and aff'd, 662 F.2d 36 (D.C. Cir. 1981) (employment discrimination) (defendant Rule 23(b)(2) class); Trecker v. Manning Implement, Inc., 73 F.R.D. 554 (N.D. Iowa 1976) (antitrust); Beck v. Mather, 417 F.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 18 of 24

CLASSACT § 4:32                                                    Page 18
2 Newberg on Class Actions § 4:32 (4th ed.)

Supp. 648, 18 Fair Empl. Prac. Cas. (BNA) 1713, 13 Empl. Prac. Dec. (CCH) ¶11462 (W.D. Va. 1976) (employment discrimination); Shumate & Co., Inc. v. National Ass'n of Securities Dealers, Inc., 509 F.2d 147 (5th Cir. 1975) (securities).

[FN16] Central Wesleyan College v. W.R. Grace & Co., 143 F.R.D. 628, 78 Ed. Law Rep. 848 (D.S.C. 1992), judgment aff'd, 6 F.3d 177, 86 Ed. Law Rep. 69, 27 Fed. R. Serv. 3d 381 (4th Cir. 1993).

[FN17] Central Wesleyan College v. W.R. Grace & Co., 143 F.R.D. 628, 641 to 642, 78 Ed. Law Rep. 848 (D.S.C. 1992), judgment aff'd, 6 F.3d 177, 86 Ed. Law Rep. 69, 27 Fed. R. Serv. 3d 381 (4th Cir. 1993) (footnotes omitted).

[FN18] In re Antibiotic Antitrust Actions, 333 F. Supp. 278, 289 (S.D. N.Y. 1971), order amended, 333 F. Supp. 291 (S.D. N.Y. 1971) and order amended, 333 F. Supp. 299 (S.D. N.Y. 1971), mandamus denied, 447 F.2d 122 (2d Cir. 1971) and mandamus denied, 449 F.2d 119 (2d Cir. 1971) (antitrust).

Esplin v. Hirschi, 402 F.2d 94, 12 Fed. R. Serv. 2d 525 (10th Cir. 1968) (securities).

Stertz v. Gulf Oil Corp., 95 F.R.D. 116 (E.D. N.Y. 1982), on reconsideration, 99 F.R.D. 74 (E.D. N.Y. 1983) (antitrust) (size of class and complexity of issues made class treatment superior).

Abrams v. Johns-Manville Corp., Fed. Sec. L. Rep. (CCH) ¶ 98348, 1981 WL 1700 (S.D. N.Y. 1981) (securities) (in case in which defendant was alleged to have withheld information about its liability in hundreds of asbestos tort suits, thereby materially affecting the share price of its stock, defendant could not argue that class suit was unmanageable because its liability in each tort suit was relevant to the action; the tort suits would be an issue even if the securities suits were tried individually, and difficulty was not ground for denying class).

Shelter Realty Corp. v. Allied Maintenance Corp., 75 F.R.D. 34 (S.D. N.Y. 1977) (antitrust) (class of purchasers of building maintenance materials manageable despite speculation to contrary).

In re Sugar Industry Antitrust Litigation, 73 F.R.D. 322, 357, 1 Fed. R. Evid. Serv. 1219 (E.D. Pa. 1976) (antitrust) ("[e]xperience … shows that visions of unmanageability soon disappear" when courts and counsel work together to manage increasingly complex and large-scale litigation).

[FN19] Research Corp. v. Pfister Associated Growers, Inc., 301 F. Supp. 497, 162 U.S.P.Q. (BNA) 432 (N.D. Ill. 1969) (patent).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 19 of 24

CLASSACT § 4:32                                                    Page 19
2 Newberg on Class Actions § 4:32 (4th ed.)

[FN20] See § 4:39.

Grace v. Rosenstock, Fed. Sec. L. Rep. (CCH)¶ 92541, 1986 WL 2709 (E.D. N.Y. 1986) (securities). Superiority requirement was met when court found that the benefits of economy of time, efficiency, and fairness would be effectively obtained through a class action, and without a class action many potential members would be forced to forgo their class claims because of high litigation costs.

[FN21] See § 4:40.

State of Ill. v. Harper & Row Publishers, Inc., 301 F. Supp. 484, 6 A.L.R. Fed. 1 (N.D. Ill. 1969) (antitrust) (redefinition of class to eliminate small claimants was inappropriate).

[FN22] See § 4:41.

[FN23] Brady v. LAC, Inc., 72 F.R.D. 22 (S.D. N.Y. 1976) (securities) (class conditionally certified so court could amend its order if individual issues became more significant).

Hawkins v. Holiday Inns, Inc., 1975-1 Trade Cas. (CCH) ¶60153, 1975 WL 848 (W.D. Tenn. 1975) (securities); Marks v. San Francisco Real Estate Bd., 1972 Trade Cas. (CCH) ¶74242, 1972 WL 642 (N.D. Cal. 1972) (antitrust); Wainwright v. Kraftco Corp., 54 F.R.D. 532 (N.D. Ga. 1972) (antitrust).

[FN24] In two cases, courts were apparently overwhelmed by the prospect of managing classes with several million members and failed to explore possible methods of managing litigation with the class as defined or limiting the class to a more manageable size. In both cases class was denied, and other negative factors were present.

Boshes v. General Motors Corp., 59 F.R.D. 589 (N.D. Ill. 1973) (consumer credit) (17 million members at minimum, plus alleged continuing violations, made idea of class staggering).

United Egg Producers v. Bauer Intern. Corp., 312 F. Supp. 319 (S.D. N.Y. 1970) (consumer credit) (class would have comprised all consumers of eggs in the United States).

Gelman v. Westinghouse Elec. Corp., 73 F.R.D. 60 (W.D. Pa. 1976) (securities) (class of several thousand denied because required proof would cause litigation to degenerate into a "snarled welter of confusion").

Cf. American Airlines, Inc. v. Remis Industries, Inc., 494 F.2d 196 (2d Cir. 1974) (government regulation) (plaintiff class of several million upheld).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 20 of 24

CLASSACT § 4:32                                                    Page 20
2 Newberg on Class Actions § 4:32 (4th ed.)

State of W. Va. v. Chas. Pfizer & Co., 440 F.2d 1079, 14 Fed. R. Serv. 2d 1360 (2d Cir. 1971) (antitrust) (class of over 1 million members certified).

In re Motor Vehicle Air Pollution Control Equipment, 52 F.R.D. 398 (C.D. Cal. 1970) (consumer credit) (until management is recognized as impossible or near impossible, the court will depend upon the ingenuity and aid of counsel to solve the complex problems of the litigation).

[FN25] Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732, 9 Fair Empl. Prac. Cas. (BNA) 1302, 7 Empl. Prac. Dec. (CCH) ¶9374A, Fed. Sec. L. Rep. (CCH) ¶94570, 18 Fed. R. Serv. 2d 877, 4 Envtl. L. Rep. 20513 (1974) (antitrust).

[FN26] Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732, 9 Fair Empl. Prac. Cas. (BNA) 1302, 7 Empl. Prac. Dec. (CCH) ¶9374A, Fed. Sec. L. Rep. (CCH) ¶94570, 18 Fed. R. Serv. 2d 877, 4 Envtl. L. Rep. 20513 (1974).

[FN27] Bogus v. American Speech & Hearing Assn, 582 F.2d 277 (3d Cir. 1978) (antitrust) (lack of other suits filed cited as one reason for lack of superiority).

Clark v. South Central Bell Tel. Co., 419 F. Supp. 697, 18 Fair Empl. Prac. Cas. (BNA) 630 (W.D. La. 1976) (employment discrimination).

Reilly v. Frederick, Fed. Sec. L. Rep. (CCH) ¶95417, 1976 WL 754 (N.D. Ala. 1976) (securities) (lack of other suits pending indicated lack of superiority).

Schaffner v. Chemical Bank, 339 F. Supp. 329, Fed. Sec. L. Rep. (CCH) ¶93403 (S.D. N.Y. 1972) (securities); City of Philadelphia v. American Oil Co., 53 F.R.D. 45 (D.N.J. 1971) (antitrust).

State of Hawaii v. Standard Oil Co. of Cal., 301 F. Supp. 982 (D. Haw. 1969), judgment rev'd, 431 F.2d 1282 (9th Cir. 1970), cert. granted, 401 U.S. 936, 91 S. Ct. 931, 28 L. Ed. 2d 215 (1971) and judgment aff'd, 405 U.S. 251, 92 S. Ct. 885, 31 L. Ed. 2d 184, 15 Fed. R. Serv. 2d 1384, 2 Envtl. L. Rep. 20133 (1972) (antitrust) (the Supreme Court held that a class action, rather than a parens patriae suit was the proper device for judicial redress of damages from alleged price-fixing violations).

[FN28] Brown v. Cameron-Brown Co., 92 F.R.D. 32 (E.D. Va. 1981) (antitrust) (common questions predominated and there was no other effective way to try the case).

In re Independent Gasoline Antitrust Litigation, 79 F.R.D. 552 (D. Md. 1978) (antitrust) (class action was the only realistic way to try the case which would provide redress for injured purchasers).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 21 of 24

CLASSACT § 4:32                                                     Page 21
2 Newberg on Class Actions § 4:32 (4th ed.)

[FN29] Rule Advisory Committee Notes to 1966 Amendments to Rule 23, 39 Federal Rules Decisions pp 69, 103.

That common questions predominate is not itself sufficient to justify a class action under subdivision (b)(3), for another method of handling the litigious situation may be available which has greater practical advantages. Thus one or more actions agreed to by the parties as test or model actions may be preferable to a class action, or it may prove feasible and preferable to consolidate actions.

[FN30] Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809, 105 S. Ct. 2965, 86 L. Ed. 2d 628, 2 Fed. R. Serv. 3d 797 (1985) (contract) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually … this lawsuit involves claims averaging about $100 per plaintiff; most of the plaintiffs would have no realistic day in court if a class action were not available.").

Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732, 9 Fair Empl. Prac. Cas. (BNA) 1302, 7 Empl. Prac. Dec. (CCH) ¶9374A, Fed. Sec. L. Rep. (CCH) ¶94570, 18 Fed. R. Serv. 2d 877, 4 Envtl. L. Rep. 20513 (1974) (antitrust).

Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427, 29 Fed. R. Serv. 2d 1 (1980) (consumer credit) (when it is economically infeasible for small claimants to file individual damage suits, aggrieved persons may be without effective relief unless the class action device is available).

Reiter v. Sonotone Corp., 442 U.S. 330, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979) (antitrust).

[FN31] Macarz v. Transworld Systems, Inc., 193 F.R.D. 46 (D. Conn. 2000).

[FN32] Macarz v. Transworld Systems, Inc., 193 F.R.D. 46, 56 (D. Conn. 2000).

[FN33] Macarz v. Transworld Systems, Inc., 193 F.R.D. 46, 57 (D. Conn. 2000).

[FN34] Amalgamated Workers Union of Virgin Islands v. Hess Oil Virgin Islands Corp., 478 F.2d 540, 21 Wage & Hour Cas. (BNA) 19, 71 Lab. Cas. (CCH) ¶32895, 17 Fed. R. Serv. 2d 293 (3d Cir. 1973) (labor) (superiority and predominance requirements are stated in same sentence, both are concerned with the desirability of one rather than many suits, and Rules Advisory Committee Notes on superiority are concerned with economy of a single suit as opposed to multiple suits).

[FN35] Feinstein v. Firestone Tire and Rubber Co., 535 F. Supp. 595, 608, 33 Fed. R. Serv. 2d 1649, 34 U.C.C. Rep. Serv. 82 (S.D. N.Y. 1982) (consumer credit/mass tort)

Case 2:05-cv-04182-SRD-JCW   Document 15549-70   Filed 09/29/08   Page 22 of 24

CLASSACT § 4:32                                                              Page 22
2 Newberg on Class Actions § 4:32 (4th ed.)

(when individual issues predominated, certification of the suit as a class action would "unleash a Frankenstein monster of unmanageability, weighted down with individual questions … to the potential disadvantage of the litigants …").

Gelman v. Westinghouse Elec. Corp., 73 F.R.D. 60 (W.D. Pa. 1976) (securities) (predominance and superiority considered together; class denied because certification would cause degeneration of the suit into a "snarled welter of confusion").

[FN36] Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, R.I.C.O. Bus. Disp. Guide (CCH) ¶9164, 35 Fed. R. Serv. 3d 816 (11th Cir. 1996).

[FN37] Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1023 to 1024, R.I.C.O. Bus. Disp. Guide (CCH) ¶9164, 35 Fed. R. Serv. 3d 816 (11th Cir. 1996).

[FN38] Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1025, R.I.C.O. Bus. Disp. Guide (CCH) ¶9164, 35 Fed. R. Serv. 3d 816 (11th Cir. 1996).

[FN39] Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1025, R.I.C.O. Bus. Disp. Guide (CCH) ¶9164, 35 Fed. R. Serv. 3d 816 (11th Cir. 1996).

[FN40] Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1024 to 1025, R.I.C.O. Bus. Disp. Guide (CCH) ¶9164, 35 Fed. R. Serv. 3d 816 (11th Cir. 1996).

[FN41] Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1025 n.6, R.I.C.O. Bus. Disp. Guide (CCH) ¶9164, 35 Fed. R. Serv. 3d 816 (11th Cir. 1996).

[FN42] Kaczmarek v. International Business Machines Corp., 186 F.R.D. 307 (S.D. N.Y. 1999).

[FN43] Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 822, 105 S. Ct. 2965, 86 L. Ed. 2d 628, 2 Fed. R. Serv. 3d 797 (1985),

[FN44] Davenport by Fowlkes v. Gerber Products Co., 125 F.R.D. 116 (E.D. Pa. 1989).

[FN45] Davenport by Fowlkes v. Gerber Products Co., 125 F.R.D. 116, 119 to 120 (E.D. Pa. 1989).

[FN46] See Ch 10.

[FN47] Axelrod v. Saks & Co., 77 F.R.D. 441 (E.D. Pa. 1978) (antitrust) (when plaintiffs asserted general measure of damages could be proven, certification would be granted, but court would reconsider if it appeared after discovery that separate analyses of impact would be necessary).

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2 Newberg on Class Actions § 4:32 (4th ed.)

Brady v. LAC, Inc., 72 F.R.D. 22 (S.D. N.Y. 1976) (securities).

Link v. Mercedes-Benz of North America, Inc., 550 F.2d 860 (3d Cir. 1977) (antitrust) (if plaintiffs failed to come up with sufficient plan to prove damages, class would be decertified after liability determination).

[FN48] See Ch 7 and § 4:25.

[FN49] See Ch 9 and § 4:26.

Greenhaw v. Lubbock County Beverage Ass'n, 721 F.2d 1019 (5th Cir. 1983) (overruled on other grounds by, *International Woodworkers of America, AFL-CIO and its Local No. 5-376 v. Champion Intern. Corp.*, 790 F.2d 1174, 43 Fair Empl. Prac. Cas. (BNA) 385, 40 Empl. Prac. Dec. (CCH) ¶36148, 4 Fed. R. Serv. 3d 721 (5th Cir. 1986)) (antitrust).

In re Folding Carton Antitrust Litigation, 75 F.R.D. 727 (N.D. Ill. 1977) (antitrust) (bifurcation is constitutional and not violative of Seventh Amendment).

Cf. Payne v. A.O. Smith Corp., 99 F.R.D. 534, 14 Fed. R. Evid. Serv. 1640 (S.D. Ohio 1983) (bifurcation denied in nonclass tort suit).

[FN50] See Ch 10 and § 4:26.

[FN51] See Ch 9 and § 4:26.

[FN52] See Ch 9.

Vincent v. Hughes Air West, Inc., 557 F.2d 759, 42 A.L.R. Fed. 108 (9th Cir. 1977) (mass tort); Lloyd v. Industrial Biotest Laboratories, Inc., 454 F. Supp. 807 (S.D.N.Y. 1978) (securities); Wellman v. Dickinson, 79 F.R.D. 341, Fed. Sec. L. Rep. (CCH) ¶96484 (S.D. N.Y. 1978) (securities); In re Plywood Anti-Trust Litigation, 76 F.R.D. 570, 23 Fed. R. Serv. 2d 303 (E.D. La. 1976) (antitrust); In re Nissan Motor Corp. Antitrust Litigation, 385 F. Supp. 1253 (J.P.M.L. 1974), judgment aff'd, 577 F.2d 910 (5th Cir. 1978) (antitrust).

On the duties and powers of liaison counsel, see, Pearson v. Ecological Science Corp., 522 F.2d 171 (5th Cir. 1975) (securities); In re Franklin Nat. Bank Securities Litigation, 73 F.R.D. 25 (E.D. N.Y. 1976), order vacated, 574 F.2d 662, Fed. Sec. L. Rep. (CCH) ¶96373 (2d Cir. 1978), on reh'g, 599 F.2d 1109 (2d Cir. 1978) (securities); Seiden v. Nicholson, 72 F.R.D. 201, Fed. Sec. L. Rep. (CCH) ¶95732 (N.D. Ill. 1976) (securities).

[FN53] See Ch 10 and § 4:26.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

2 Newberg on Class Actions § 4:32 (4th ed.)

[FN54] See Ch 9.

In re Air Crash Disaster at Florida Everglades on December 29, 1972, 549 F.2d 1006 (5th Cir. 1977) (mass tort).

*Weinberger v. Integrated Container Serv. Indus. Corp.*, 69 Civ. 2284 (S.D.N.Y. Sept. 8, 1970) (securities) (court appointed one lead counsel to avoid waste and fragmentation of effort).

© 2008 Thomson Reuters/West

CLASSACT § 4:32

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.