

Newberg on Class Actions
Database updated June 2008

Alba Conte and Herbert B. Newberg

Chapter 6. Prefiling Considerations

References

### § 6:14. Defining the class

The class definition is often central to class action pleading. It provides the court with a framework with which to apply Rule 23 criteria and thus to reach an initial determination whether a class action may be maintained. Though some courts have retained concepts of original Rule 23 requiring the existence of a class before applying amended Rule 23 criteria, most courts have recognized that the 1966 amendments rejected the notion that a threshold class must first exist in order to maintain a class action.[1] The courts have properly taken a functional approach and determined whether an action filed as a class complaint may be maintained as such by application of Rule 23 criteria directly.[2] Thus, the class definition of a complaint serves not to demonstrate the existence of a class in the abstract but, as one court observed, of an adequate class definition: "A sufficient basis upon which to determine the scope of the class and the propriety of permitting plaintiffs to represent all or a part of it."[3]

Care should be taken to define the class in objective terms capable of membership ascertainment when appropriate, without regard to the merits of the claim or the seeking of particular relief. Such a definition in terms of objective characteristics of class members avoids problems of circular definitions which depend on the outcome of the litigation on the merits before class members may be ascertained, and does not require the court to engage in an impermissible consideration of the merits of the claims in connection with its class certification determination. The Manual for Complex Litigation, Third states:[4]

Definitions, particularly under (b)(3), should avoid criteria that are subjective (e.g., a plaintiff's state of mind) or that depend on the merits (e.g., persons who were discriminated against). Such definitions frustrate efforts to identify class members, contravene the policy against considering the merits of a claim in deciding whether to certify a class, and create potential problems of manageability. Similarly, objective terms should be used in defining persons to be excluded from the class, such as affiliates of the defendants, residents of particular states in diversity cases, or persons who have filed their own actions or are members of another class. The judge should consider whether the definition will serve the purpose for which the class

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-71   Filed 09/29/08   Page 2 of 8

CLASSACT § 6:14                                                                                    Page 2
2 Newberg on Class Actions § 6:14 (4th ed.)

is certified (i.e., the resolution of common questions of fact and law in a single proceeding). The definition should not, therefore, exclude a substantial number of persons with claims similar to those of persons included in the class. The appropriate scope of a class may also be affected by the applicable substantive law and choice-of-law considerations, which may, among other things, require subclasses.

The Manual goes on to explain that a description of the claims made on behalf of or against the class will be valuable if res judicata questions are presented in later litigation.[5]

The rule governing class actions requires mandatory individual notice to all class members, in an action certified under Rule 23(b)(3), "who can be identified through reasonable effort."[6] Such a mandatory notice of the pendency of a class action is not required for representative actions certified under Rule 23(b)(1) or (b)(2), which are brought primarily for declaratory or injunctive relief.[7]

Addressing an issue of first impression, the Second Circuit held in *In re Holocaust Victim Assets Litigation*,[8] that a broadly defined "worldwide class" in a consolidated class action seeking redress for wrongs arising out of Swiss banks' alleged participation and complicity in crimes committed by the Nazi regime did not entitle proposed intervenors to be part of the class ultimately certified.

*In re Holocaust Victim Assets Litigation* is the "overarching caption" for four consolidated class action lawsuits filed on behalf of various worldwide classes of victims of Nazi crimes and their heirs against a group of Swiss banks. These lawsuits seek redress for the defendants' "knowing participation and complicity in crimes" committed against plaintiffs and their relatives by the Nazi regime. Plaintiffs alleged that the Swiss banks unjustly enriched themselves at the expense of these victims by: (1) failing to account for funds deposited in the years preceding the period of Nazi persecution by individuals who feared they would become the targets of this persecution and who then failed to survive the death camps; (2) serving as a vehicle for the disposal of Nazi plunder looted from victims; and (3) financing the construction of Nazi slave labor camps and providing a safe haven for profits obtained through the use of slave labor.

The settlement defines "Victims or Targets of Nazi Persecution" as those persons "persecuted or targeted for persecution by the Nazi Regime because they were or were believed to be Jewish, Romani, Jehovah's Witness, homosexual, or physically or mentally disabled or handicapped." This definition reflects the parties' agreement that the Settlement should benefit persons targeted for persecution "on grounds of race, religion, or personal status." The Settlement divides the plaintiff class into five subclasses, four of which are limited to "Victims or Targets of Nazi Persecution." A fifth subclass, "Slave Labor Class II," covers any individual, including ethnic Poles, who performed slave labor for an entity "headquartered, organized, or based in Switzerland."

The district court provisionally certified the class proposed by the parties and preliminarily

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

approved the Settlement. Subsequently, plaintiffs implemented a worldwide notice program describing the Settlement and the classes, and providing potential class members with an opportunity to opt out.

PADC, the Polish American Congress, and six named individuals filed a motion to intervene in the lawsuit, along with formal objections to the Settlement classes. They asserted that "ethnic Poles were among the classes of plaintiffs on whose behalf the consolidated cases were filed" but that this group had "been excluded from the definition of the class for purposes of the proposed Settlement of the cases." PADC argued that it had standing to represent absent class members—namely, those who are included in Slave Labor Class II but seek to object to their exclusion from the other four subclasses. But this court concluded that it did not have jurisdiction to review the objections of absent class members to the terms of the Settlement (as opposed to the objection of non-class members to their exclusion from the Settlement altogether) because this appeal was filed before the Settlement had even been approved. The district court's order provisionally certifying the class and preliminarily approving the Settlement was a non-final order and thus not appealable. Thus this court's review was limited to the district court's denial of appellants' motion to intervene.

The court noted that other than PADC's self-proclaimed status as a representative of the Polish community, the record reveals nothing about its size, membership, or activities. The court did not even know whether PADC had any members other than the individual intervenors. Although in some unusual cases even an organization without "members" in a traditional sense may be deemed a membership organization for purposes of standing, the record in this case did not reveal whether PADC would qualify as such an organization.

The court noted at the outset that the Settlement does not exclude all Polish victims of the Nazi regime from the class. Rather, it excludes, from four out of five subclasses, those persons who were not targeted "because they were or were believed to be Jewish, Romani, Jehovah's Witness, homosexual, or physically or mentally disabled or handicapped." In other words, Polish Jews (and Polish homosexuals, and disabled Polish persons, and so on) are among those included in all five subclasses. Nevertheless, appellants argued that the exclusion of ethnic Poles from the definition of "Victims or Targets of Nazi Persecution" is irrational and confusing, and that it suggests inadequate representation of ethnic Poles by class plaintiffs, as well as a conflict of interest on the part of class counsel. Moreover, appellants maintained that a denial of their motion to intervene would promote the "historically incorrect view" that ethnic Poles did not suffer at the hands of the Nazis.

Here the parties engaged in extensive negotiations, lasting more than a year, before reaching an agreement. Once the parties submitted the written Settlement—with its definition of "Victims or Targets of Nazi Persecution"—appellants waited another eight months before moving to intervene in October 1999. Appellants had been on notice of their arguable interest in this litigation for at least eight months, since they had submitted their letter objecting to the Settlement in February 1999.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

In short, intervention at this late stage would prejudice the existing parties by destroying their Settlement and sending them back to the drawing board. In light of this prejudice, and of appellants' unjustified delay in submitting their motion, the district court did not abuse its discretion in denying intervention as of right.

In rejecting the applicants' claim of inadequate representation, the district court explained that the settlement amount was based on an estimate of the assets of European Jews that flowed into Swiss banks during the period of Nazi rule and, consequently, that it made sense to direct the settlement offer primarily to Jewish victims and their heirs. In addition, the court questioned the relevance of the broad language of the original complaints for purposes of determining whether intervention had to be granted.

The thrust of appellants' inadequate representation argument is that class counsel used the threat of a lawsuit brought on behalf of broadly defined "worldwide" classes to obtain the greatest possible offer from defendants, and subsequently narrowed the class drastically in order to secure the greatest possible recovery for a smaller group of plaintiffs. Appellants argue that this alleged maneuver not only amounts to inadequate representation by class plaintiffs, but also suggests the existence of a conflict of interest on the part of class counsel, because some of the attorneys for the class in the instant case represent ethnic Poles—as defined by the parties herein—in other related litigation, where a similar "Victims or Targets" category has included ethnic Poles.

These arguments rely principally on the notion that the broad language of the original complaint in a class action lawsuit vests in putative class members— that is, those who seem to be included in the class described in the complaint—a right to be included in the class ultimately certified by the District Court. Appellants' inadequate representation claim is somewhat unusual, for, as they acknowledge, "normally the concern is that class counsel may unfairly bind the interests of absent class members"—that is, those ultimately included in the class and thereby barred from future lawsuits. … However, appellants cite three cases from other federal courts in support of the proposition that they are "not the first putative class members to complain that they have been excluded from a class settlement unfairly, as a result of the narrowing of the class."Harriss v. Pan American World Airways, Inc., 74 F.R.D. 24, 26 (N.D. Cal. 1977) (citing In re Fine Paper Antitrust Litigation, 695 F.2d 494 (3d Cir. 1982); In re Records and Tapes Antitrust Litigation, 118 F.R.D. 92 (N.D. Ill. 1987); In re Chicken Antitrust Litigation, 560 F. Supp. 943 (N.D. Ga. 1979)). In response, appellees assert that a complaint's "[a]spirational language describing a proposed class creates no such rights or duties." Appellees' Brief at 38.[9]

Rule 23 gives the District Court broad discretion to modify the definition of the class even after certification, while the case law on intervention sets forth the multi-factor analysis, which does not require a court even to consider the language of the original complaint when assessing a motion to intervene.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-71   Filed 09/29/08   Page 5 of 8

CLASSACT § 6:14                                                                        Page 5
2 Newberg on Class Actions § 6:14 (4th ed.)

Appellants here could not demonstrate that they were inadequately represented by asserting that they were "excluded" from a class to which they originally belonged. While it was true that the language of the original complaints described the class broadly, and that the "Agreement in Principle" referred to "the worldwide classes delineated in the complaints," it was also true that the broad language of these complaints is simply not relevant to the decision concerning whether to grant a motion to intervene. Once the district court exercised its discretion in certifying a class, the broad language of the complaints did not create an exception to the general rule that a nonsettling party may not object to the terms of a settlement which does not affect its own rights. The non-party's only recourse is to file a motion to intervene, and the evaluation of such a motion does not require a court to take into account the language of the original complaint.

The court noted that appellants inadequate representation and conflict of interest claims also contradicted lower court Judge Korman's statements at the hearing on their motion to intervene.

…Judge Korman explained that the Settlement amount does not account for the losses of a "worldwide class" but, rather, reflects a calculation of Jewish assets transferred into Swiss banks during the relevant period. As a result, the Settlement offer is properly directed primarily to Jewish victims and their heirs. Class counsel have not excluded appellants from a settlement offer based on an estimate of funds that includes the losses of ethnic Poles. Instead, the parties have justifiably limited the class to those whose losses are reflected in the Settlement amount.[10]

Particularly because of the difference in notice requirements among the various class categories, and because of the potential need to distribute a recovery to individual class members in an action for damages, the degree of specificity or precision necessary in a class definition will vary depending on the type of class action sought to be maintained.

[FN1] Richardson v. Hamilton Intern. Corp., 62 F.R.D. 413 (E.D. Pa. 1974); Dorfman v. First Boston Corp, 62 F.R.D. 466 (E.D. Pa. 1973).

[FN2] Richardson v. Hamilton Intern. Corp., 62 F.R.D. 413 (E.D. Pa. 1974). Furthermore, a jural relationship is no longer required among class members before a class action will be authorized. See Ch 13.

[FN3] Thomas S. by Brooks v. Flaherty, 902 F.2d 250, 16 Fed. R. Serv. 3d 851 (4th Cir. 1990) (constitutional rights of mentally retarded patients). In an action by mentally retarded adults seeking declaratory and injunctive relief in the form of constitutionally required treatment, individuals who were released from psychiatric hospitals after the date of class certification could be included within the class. All class members were institutionalized patients on the date of certification:
The district court sought to remedy the harm suffered by class members whether they remained in the institution or had been discharged. The object of the court's order is twofold:

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

to ameliorate the lingering effects, if any, of improper treatment; and to remedy inappropriate community placements, if any, … that were not anticipated by professionals in the institutions. …

Furthermore, we note that the district court's definition of the class is only a practical starting point for identifying the persons needing help. If the class members have not been injured by constitutionally inadequate treatment in the past or are currently receiving minimally adequate treatment in appropriate placements, their present situation need not be disturbed.

Thomas S. by Brooks v. Flaherty, 902 F.2d 250, 254 to 255, 16 Fed. R. Serv. 3d 851 (4th Cir. 1990).

In re Tetracycline Cases, 107 F.R.D. 719 (W.D. Mo. 1985) (mass tort). The primary concern underlying the requirement of a class capable of definition is that the proposed class not be amorphous, vague, or indeterminate (citing Newberg on Class Actions (Shepard's/McGraw-Hill 1st ed 1977)).

Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335, 338 (D. Minn. 1971).

Harriss v. Pan American World Airways, Inc., 74 F.R.D. 24 (N.D. Cal. 1977) (employment discrimination) (initial class definition may be relevant to discovery and to trial preparation but it may be changed and does not establish the class which will be bound by the judgment).

[FN4] Manual for Complex Litigation (3d ed.) § 30.14 (footnote omitted).

[FN5] Manual for Complex Litigation (3d ed.) § 30.14, n.684.

[FN6] Vernon J. Rockler & Co. v. Graphic Enterprises, Inc., 52 F.R.D. 335, 338 (D. Minn. 1971).

Harriss v. Pan American World Airways, Inc., 74 F.R.D. 24 (N.D. Cal. 1977) (employment discrimination) (initial class definition may be relevant to discovery and to trial preparation but it may be changed and does not establish the class which will be bound by the judgment).

[FN7] Rule 23(c)(2).

[FN8] In re Holocaust Victim Assets Litigation, 225 F.3d 191, 47 Fed. R. Serv. 3d 862 (2d Cir. 2000).

Hnot v. Willis Group Holdings, Ltd., 234 Fed. Appx. 13 (2d Cir. 2007) (unreported

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

opinion). The denial of intervention was not abuse of discretion given a former employee's delay after learning that her interests might not be adequately protected.

The court noted that the resolution of this appeal turned on timeliness, which is in large part an equitable determination to be made based upon the totality of the circumstances. In making this discretionary determination, the district court is required to consider (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.

The court noted that the first factor—the length of time between when an applicant knew or should have known of her or his interest before making his motion—is among the most important.

The district court's decision that Cronas's motion was untimely was well within the bounds of its discretion. Cronas learned of the class certification and its terms in May 2005. She did not inform the district court of her intent to intervene until mid-July 2006 and did not file her motion until August 1, 2006, more than two weeks prior to the August 17, 2006 ruling of the district court that she now claims was the sole basis for her belief that her interest in the class action litigation was not adequately protected. Cronas also argued that she would suffer substantial prejudice because of what she called "considerable hurdles to bringing an independent action."

Without deciding the proper benchmark for assessing the length of Cronas's delay in filing, the court assumed for purposes of deciding this appeal that it was the date upon which she learned that her interests were not adequately represented. Even so, that date was plainly May 2005. The district court did not abuse its discretion in concluding that the possibility that Cronas may not ultimately be able to prevail in a separate suit did not warrant granting her motion in light of her extended delay in filing and the substantial prejudice—for example the significantly enhanced delay in reaching an adjudication— that the defendant would face as a result of Cronas's delay if her motion were granted. The fact that appellant in this case would face many significant obstacles if she files her own lawsuit did not as a matter of law require her intervention.

[FN9] In re Holocaust Victim Assets Litigation, 225 F.3d 191, 200, 47 Fed. R. Serv. 3d 862 (2d Cir. 2000) (footnote omitted).

[FN10] In re Holocaust Victim Assets Litigation, 225 F.3d 191, 201 to 202, 47 Fed. R. Serv. 3d 862 (2d Cir. 2000).

© 2008 Thomson Reuters/West

2 Newberg on Class Actions § 6:14 (4th ed.)


CLASSACT § 6:14

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.