

CLASSACT § 17:5 Page 1
5 Newberg on Class Actions § 17:5 (4th ed.)


Newberg on Class Actions
Database updated June 2008

Alba Conte and Herbert B. Newberg

Chapter 17. Mass Torts

References

**§ 17:5. Modern recognition of mass tort class actions**

    Modern conditions are forcing courts to examine the issue of class actions in mass tort cases more closely. The worldwide use of jumbo jets capable of carrying 300 or more passengers, security-related terrorism issues, the availability to millions of purchasers of low-cost products with possible design defects, and the latency period between exposure to industrial toxins and the manifestation of many disease processes all increase the likelihood that large groups of people will continue to seek redress for personal injuries allegedly caused by one or, at most, a small group of defendants.

    The 1980s marked the turning point for individual negligence practice. Mass tort class actions rapidly emerged as a permanent part of the landscape for claims flowing from negligent acts or defective or toxic products affecting groups of similarly situated parties. The historical barriers to class actions in the negligence field were tested and expanded. It was in the 1990s, however, that courts began to focus on limitations and constitutional issues inherent in such cases. Although class certification may be a useful device for mass tort disposition, a series of cases has now stated that limitations do apply, and certifications of mass torts will be strictly scrutinized.[1]

    Despite the increased scrutiny given to class certifications of mass torts, mass tort class actions will likely remain a permanent fixture on the negligence practice horizon. Society relies on the tort system as enforced by private damage actions to prevent or deter mass exposure accidents and to compensate such victims. Historically, the major obstacle to mass tort class actions has been the predominance of individual issues, such as different liability standards in different states, individual issues of causation and damages, and unique defenses. These individual issue obstacles are being overcome by the increased use of class actions limited to selected common issues and the creation of subclasses. Moreover, potential common issues are not limited to liability questions but include damages questions also, such as entitlement to punitive damages.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-72   Filed 09/29/08   Page 2 of 5

CLASSACT § 17:5                                                                                           Page 2
5 Newberg on Class Actions § 17:5 (4th ed.)

Unique defenses that go to the right of a particular party to recover will not bar a class action.[2] Many courts are now abandoning their historical reluctance to certify mass tort class actions in light of what is often an overwhelming need to create an orderly, efficient means for adjudicating hundreds or thousands of related claims. It is not surprising that the Manual for Complex Litigation (3d ed.) discusses class actions in mass disasters and other complex tort cases.[3] More and more trial and appellate courts[4] are now recognizing that a central judicial tool for coordinating a multitude of related tort claims is the flexible use of the class action device.[5] Asbestos personal injury and property damage suits evidence a growing trend of counsel and the courts to rely on the class action device to dispose of carefully selected common issues affecting the entire class.[6]

Nowhere has the endless multiplication of related tort claims more sharply manifested itself than in the asbestos exposure field.[7] Johns-Manville Corporation, one of the chief targets of more than 16,000 asbestos suits, looked for a way out of this morass of litigation. Not able to fashion a mandatory Rule 23 class of all federal and state court claimants in one forum for a unitary adjudication, Manville conceived of a more dramatic solution. By filing bankruptcy proceedings, Johns-Manville Corporation, in one fell swoop, stopped all pending and future suits dead in their tracks.[8] This single act caught everyone by surprise and sent everyone in the asbestos litigation bar—representing both plaintiffs and defendants—scrambling to become familiar with the Bankruptcy Code, to learn what was taking place, was it legal, and if so, what then? Manville's aim in bankruptcy was nothing short of using a mandatory class action format authorized by the Bankruptcy Code to extinguish all present and future claims against it forever, by imposing a liability ceiling for injuries or losses suffered from asbestos-containing products which it manufactured.[9] The ice-breaking nature of the Manville bankruptcy filing—a mandatory class procedure to extinguish unliquidated claims facially authorized by the Bankruptcy Code—coupled with national Rule 23 class actions certified in School Asbestos, Agent Orange, Skywalk, and other cases,[10] demonstrated the onset of an expanding use of class action litigation in mass tort contexts in modern times. As the bankruptcy case would eventually evolve, it became clear that bankruptcy would not provide a panacea for the extinguishing of future claims in the context of asbestos personal injury litigation. Through the bankruptcy process, a trust fund to compensate victims was created, and the overwhelming majority of shareholder equity in Johns-Manville was lost in the process.

> [FN1] See, e.g., Georgine v. Amchem Products, Inc., 83 F.3d 610, 34 Fed. R. Serv. 3d 407 (3d Cir. 1996), reh'g and suggestion for reh'g in banc denied, (June 27, 1996) and cert. granted, 519 U.S. 957, 117 S. Ct. 379, 136 L. Ed. 2d 297 (1996) and aff'd, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689, 37 Fed. R. Serv. 3d 1017 (1997) (asbestos personal injury class inappropriate for certification); Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715, 43 Fed. R. Serv. 3d 691 (1999) (asbestos personal injury settlement class approval reversed); Castano v. American Tobacco Co., 84 F.3d 734, 34 Fed. R. Serv. 3d 1167 (5th Cir. 1996) (class certification in nicotine addiction case reversed); In re American Medical Systems, Inc., 75 F.3d 1069, 34 Fed. R. Serv. 3d 685, 1996 FED App. 49P (6th Cir. 1996) (class decertified in penile implant

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 15549-72   Filed 09/29/08   Page 3 of 5

CLASSACT § 17:5                                                                                               Page 3
5 Newberg on Class Actions § 17:5 (4th ed.)

personal injury case); Matter of Rhone-Poulenc Rorer Inc., 51 F.3d 1293 (7th Cir. 1995).

[FN2] Ch 9.

[FN3] Manual for Complex Litigation (3d ed.) § 33.2.

[FN4] See Class Action Decisions Checklists vol 6.

[FN5] Three of the mass tort class suits that were certified on a nationwide basis include those involving school asbestos and Agent Orange claims, and the Skywalk case.

In re Asbestos School Litigation, 104 F.R.D. 422, 40 Fed. R. Serv. 2d 8 (E.D. Pa. 1984), opinion amended on other grounds, 107 F.R.D. 215, 2 Fed. R. Serv. 3d 1316 (E.D. Pa. 1985) and order aff'd in part, rev'd in part, on other grounds, 789 F.2d 996, 32 Ed. Law Rep. 50, 4 Fed. R. Serv. 3d 750 (3d Cir. 1986) (nationwide Rule 23(b)(3) class of public and private schools and school districts certified for compensatory damages to recover asbestos abatement costs; nationwide Rule 23(b)(1)(B) class certified, limited to punitive damages claims).

In re "Agent Orange" Product Liability Litigation, 100 F.R.D. 718, 38 Fed. R. Serv. 2d 279 (E.D. N.Y. 1983), mandamus denied, 725 F.2d 858 (2d Cir. 1984) and decision aff'd, 818 F.2d 145 (2d Cir. 1987) (nationwide classes for personal injury claims of veterans exposed to Agent Orange in the Vietnam War, and their families, certified under Rule 23(b)(3) for compensatory damages, and under Rule 23(b)(1)(B) for punitive damages).

In re Federal Skywalk Cases, 95 F.R.D. 483 (W.D. Mo. 1982) (Rule 23(b)(3) class of business invitees, certified for personal injury and death claims arising from defective construction accident).

[FN6] Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 473, 3 Fed. R. Serv. 3d 1137 (5th Cir. 1986) (affirming districtwide class of asbestos personal injury claimants).

In re School Asbestos Litigation, 789 F.2d 996, 32 Ed. Law Rep. 50, 4 Fed. R. Serv. 3d 750 (3d Cir. 1986). In affirming a nationwide class of school asbestos claimants for compensatory damages issues and vacating mandatory a nationwide school class for punitive damages, the court observed that "the trend has been for courts to be more receptive to use of the class action in mass tort litigation." In re School Asbestos Litigation, 789 F.2d 996, 1009, 32 Ed. Law Rep. 50, 4 Fed. R. Serv. 3d 750 (3d Cir. 1986).

*Board of Educ. of School Dist. v. Celotex Corp.*, No. 84-429634 NP (Mich. Cir. Ct. Sept. 6, 1985) (certifying statewide class of schools who opt out of national class action). For more information on class action laws in Ohio, see American Bar Association's Survey of

Case 2:05-cv-04182-SRD-JCW   Document 15549-72   Filed 09/29/08   Page 4 of 5

CLASSACT § 17:5                                                          Page 4
5 Newberg on Class Actions § 17:5 (4th ed.)

State Class Action Law, Ohio.

Cleveland Bd. of Educ. v. Armstrong World Industries, 22 Ohio Misc. 2d 18, 476 N.E.2d 397 (C.P. 1985) (certification of statewide class of schools denied). For more information on class action laws in Ohio, see American Bar Association's Survey of State Class Action Law, Ohio; In re All Maine Asbestos Litigation (PNS Cases), 772 F.2d 1023 (1st Cir. 1985).

See also In re Asbestos School Products Liability Litigation, 606 F. Supp. 713 (J.P.M.L. 1985) (denying § 1407 multidistrict transfer for federal school asbestos actions).

Before 1980, attempts to certify classes of asbestos claimants were unsuccessful. *Kohr v. Johns-Manville Corp.*, No. 78-3942 (E.D. Pa. Sept. 5, 1979); *McDaniel v. Johns-Manville Sales Corp.*, No. 77-C-3534 (N.D. Ill. May 7, 1979); Yandle v. PPG Industries, Inc., 65 F.R.D. 566 (E.D. Tex. 1974). See also, In re Asbestos and Asbestos Insulation Material Products Liability Litigation, 431 F. Supp. 906 (J.P.M.L. 1977) (denying § 1407 multidistrict transfer for federal asbestos personal injury suits).

[FN7] See, e.g., Georgine v. Amchem Products, Inc., 83 F.3d 610, 34 Fed. R. Serv. 3d 407 (3d Cir. 1996), reh'g and suggestion for reh'g in banc denied, (June 27, 1996) and cert. granted, 519 U.S. 957, 117 S. Ct. 379, 136 L. Ed. 2d 297 (1996) and aff'd, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689, 37 Fed. R. Serv. 3d 1017 (1997); Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715, 43 Fed. R. Serv. 3d 691 (1999).

[FN8] *In re Johns-Manville Corp.*, Nos. 82 B 11656 to 82 B 11676 (Bankr. S.D. N.Y. Aug. 26, 1982).

[FN9] Manville filed a motion on February 3, 1983, requesting the bankruptcy court to make such an aggregate estimate. See Class Action Complaint for Estimation of Contingent Unliquidated Asbestos Related Health Claims, (filed Aug. 26, 1982), *In re Johns-Manville Corp.*, Nos. 82 B 11656 to 82 B 11676 (Bankr. S.D. N.Y. Aug. 26, 1982).

Note, The Manville Bankruptcy: Treating Mass Tort Claims in Chapter 11 Proceedings, 86 Harv. L. Rev. 1121 (1983).

[FN10] See Class Action Decisions Checklists vol 6.

See also § 17:6 for further discussion of growing judicial acceptance of mass tort class actions: In re A.H. Robins Co., Inc., 85 B.R. 373 (E.D. Va. 1988), aff'd, 880 F.2d 709, 13 Fed. R. Serv. 3d 1239 (4th Cir. 1989). See § 17:15.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

5 Newberg on Class Actions § 17:5 (4th ed.)

© 2008 Thomson Reuters/West

CLASSACT § 17:5

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.