UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| *In Re:* KATRINA CANAL BREACHES | * | CIVIL ACTION NO.: 05-4182 "K"(2) |
| *CONSOLIDATED LITIGATION* | * | |
| | * | JUDGE DUVAL |
| | * | |
| | * | MAG. WILKINSON |

**PERTAINS TO:**

**INSURANCE 07-3406** (Gafur v. Allstate)

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

This Memorandum is presented on behalf of Allstate Insurance Company ("Allstate") in support of its Motion for Summary Judgment to dismiss, alternatively, the claim for dwelling damages being made by the plaintiffs, Asif Gafur and Aliya Asif, and/or to also request dismissal of the claims for contents damages by plaintiffs, all on the basis that these damages have already been designated as flood damages and are thus not compensable under the terms of the Allstate wind policy. In this regard, Allstate offers the following:

## FACTS

Prior to the passage of Hurricane Katrina, Allstate issued a policy bearing policy number 031384778 for homeowners coverage to plaintiffs, Asif Gafur and Aliya Asif, for certain property located at 4659 Chalmark Drive, New Orleans, LA 70127.

The policy issued by Allstate to plaintiffs provided coverage for their dwelling with limits of $143,000, coverage to other structures in the amount of $14,300, and coverage for personal property (contents) in the amount of $71,500. (See Allstate declarations sheet attached as Exhibit "A").

Prior to the events of Hurricane Katrina, plaintiffs had also purchased flood insurance for the property located at 4659 Chalmark Drive, New Orleans, LA. The policy of flood insurance purchased by plaintiffs was a WYO policy issued through the NFIP, and administrated by Allstate, bearing policy number 0000000280035496. The flood policy purchased by plaintiffs provided flood coverage on the dwelling owned by plaintiffs in the amount of $139,200, and coverage for the contents in the amount of $16,600. (See Exhibit "B").

After the events of Hurricane Katrina, Allstate, in its capacity as the flood carrier, conducted an inspection of the plaintiffs' property at the aforementioned address on November 1, 2005. As a result of the inspection, the adjuster, Paul Pearson, estimated the dwelling damages from flood to be extensive and, in the flood narrative report, indicated that the full amount of dwelling payments and contents payments would be made to the plaintiffs. (See Exhibit "C"). In conjunction with the flood narrative, Allstate also prepared a National Flood

Insurance Program final report which indicated that the total damage sustained by flood to the plaintiffs' home amounted to $228,942 which, after taking into account a $500 deductible, left an uninsured loss under the flood policy, for damages due to flood, in the amount of $89,242. (See Exhibit "D").

In addition to the estimate of dwelling loss from flood, Allstate also prepared a contents loss estimate relating to the flood damage. In regards to that contents estimate, the flood claims handler, upon viewing the extent of flood damage to the home, simply replaced all of the contents in every room of the home (see Exhibit "E") for a total of $31,000 in contents losses. In light of the extent of those losses, as mentioned, the flood claims handler paid out the extent of limits on contents coverage, a total of $16,600.

Subsequent to the events of Hurricane Katrina, Allstate also inspected the plaintiffs' property and prepared an estimate for wind damage to the plaintiffs' roof. (See Exhibit "F"). In addition to the estimate for damages to the roof, Allstate also prepared a wind damage estimate for damage to other structures. (See Exhibit "G").

Based on the estimates of exterior wind damage, Allstate issued a payment under the dwelling coverage for $6,746.95, a payment under the "other structures" coverage for $1,011.56, and paid $2,500 in additional living expenses to the plaintiffs for a total of $10,258.51. Allstate paid zero on contents to the plaintiffs on the basis that all contents had been damaged by flood.

Allstate's policy, in regards to dwelling coverage (coverages A and B), states as follows:

3

> "We do not cover loss to the property described in Coverage A-Dwelling Protection or Coverage B-Other Structures Protection consisting of or caused by:
>
> 1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or a spray from any of these, whether or not driven by wind...."

Allstate's policy herein also sets forth, under the personal property "contents" protection as follows:

> "We do not cover loss to the property described in Coverage C-Personal Property Protection caused by or consisting of:
>
> 1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or a spray from any of these, whether or not driven by wind...."

## ARGUMENT

### A.  Standard on Motion for Summary Judgment

Summary judgment should be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F. 3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex Corp. V. Catrett*, 477 U.S. 317, 323-25 (1986)). If the moving party meets this burden, Federal Rule of Civil Procedure 56(c) requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's

4

burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Washington Capital Dus., Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).

### B. Plaintiffs are Estopped From Claiming that Damage to Their Dwelling and Contents was Caused by Wind when Those Damages have been Designated as Being Caused by Flood

Louisiana law prohibits plaintiffs from seeking duplicate recovery for the same damaged contents that plaintiffs initially claimed were damaged by flood, and for which they have already been fully compensated under their flood policy. In *Esposito v. Allstate Ins. Co.*, 2007 WL 1125761 (EDLA 2007), the plaintiff received $185,265 for damage to the building structure under the flood policy. The plaintiff then contended that wind caused a total loss of the property and sought the full policy limits under the homeowners policy. Judge Zainey, relying on Judge Vance's decision in *Weiss v. Allstate Ins. Co.*, 2007 WL 891869 (EDLA 2007), held that "because the plaintiff had already received compensation for the full value of his property he was not entitled to recharacterize as wind damage those losses for which he has already been compensated by previously attributing them to flood waters." *Id.*

Similarly, in *Terrien v. State Farm Ins. Co.*, 2008 WL 2788678 (EDLA 7/14/08), the plaintiffs filed claims with State Farm under their homeowners policy and their flood policy. In connection with their flood claim, State Farm paid the Terriens the limits of their coverage ($152,900 for dwelling damages and $52,900 for contents/personal property).

5

State Farm then paid them, under the homeowners policy, $9,125 for dwelling damages, $400 for contents damage, and $11,564.36 for loss of use of the home. State Farm denied the remainder of plaintiffs' homeowners claim and moved for summary judgment on the basis that the other damage for which recovery was sought had resulted from flood, which was an excluded peril under the homeowners policy. The court granted State Farm's motion, holding that:

> Insurance contracts are contracts of indemnity; as such an insured is barred from recovering twice for the same loss. *See, e.g. Lambert v. State Farm Fire & Cas. Co.*, 2008 WL 2185419 at *2 (EDLA 5/20/08) . . . However, a plaintiff whose property sustains damage from flood and wind can clearly recoverable for his segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss. . . . Therefore, plaintiffs are entitled to recover any previously uncompensated losses that are covered by the homeowners policy and when combined with their flood proceeds did not exceed the value of the property. . . While receipt of the money for damages under a flood policy does not preclude plaintiffs from asserting a claim under their homeowners policy, it does preclude plaintiffs from obtaining a windfall double recovery by now recharacterizing as wind damages those losses for which they have already been compensated by previously attributing them to flood waters.

*Terrien v. State Farm, supra.*

Likewise, in *Boudoin v. State Farm Ins. Co.*, 2007 WL 2066853 (WDLA 2007), the Court specifically held "plaintiffs may not recover under their homeowners policy for any property damage they have received compensation for under their flood policy. . . ." *Id.*

Applying this well established precedent to our present set of facts, Allstate avers that the plaintiffs should be precluded from recovering any further amounts for dwelling loss on the basis that the payments issued to the plaintiffs, under their flood policy, exceeded the insured value of the property under the wind policy, and further, on the basis that the flood damage reports clearly set forth that the full value of the dwelling was

6

damaged as a result of flood, not wind. The plaintiffs, throughout this litigation, have attempted to advance an argument that Allstate, under its wind coverage, should simply pay the uninsured "gap" between the value of the dwelling that was paid for by flood, and the total replacement cost of the dwelling. However, Allstate should be under no obligation to make any payments under the homeowners/dwelling policy because the plaintiffs' entire dwelling was designated as being damaged by flood, which Allstate's homeowners/dwelling policy does not cover. Quite simply, the plaintiffs' house, with a replacement cost at $228,000 or so, was damaged as a result of flood, the plaintiffs were compensated for that loss to the extent of their flood policy limits, and the plaintiffs should not be allowed to now recover against Allstate for any further amounts for dwelling loss.

### C. <u>Plaintiffs Should Not be Allowed a Double Recovery for Contents Loss</u>

Likewise, the flood file, as indicated, designated every room in the plaintiffs' home as requiring replacement of all contents due to flood. Allstate understands that the contents argument it is making in this Motion is somewhat murkier on the basis that, eventually, the plaintiffs submitted a much more detailed list of contents to Allstate for a value considerably higher than the $31,000 in contents loss estimated by the flood claims handler. (See Exhibit "H," plaintiffs' personal property inventory loss form submitted to Allstate with the demand under the wind policy.) However, Allstate suggests that the difference here is simply a difference in itemization and value, and is not a difference in the basic cause for the damage. In other words, the plaintiffs already received compensation for entire rooms of contents that were damaged by flood. Accordingly, the plaintiffs cannot now submit a more detailed list of contents from the same rooms, thus resulting in a higher value, and suggest to the Court that these contents were now damaged by wind.

7

Regardless of the number of contents itemized, those rooms, and everything in them, were damaged by flood, and the change in designation simply because the plaintiffs were underinsured under their flood policy for contents, should not be allowed.

## CONCLUSION

Accordingly, for the reasons set forth herein, Allstate avers that its Motion for Summary Judgment should be granted, and that the plaintiffs' claims for dwelling and contents damages under the wind policy should be dismissed.

Respectfully submitted,

/s/ Scott G. Jones
Scott G. Jones (Bar No. 14408)
1331 West Causeway Approach
Mandeville, Louisiana 70471
Telephone: 985-624-9920
Facsimile: 985-624-9940
scott@inabnetjones.com

## CERTIFICATE OF SERVICE

I certify that on this __8__ day of October, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel.

/s/ Scott G. Jones
Scott G. Jones