UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | * | |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*            05-5531 | * | |
| *Mumford v. Ingram*          05-5724 | * | |
| *Lagarde v. Lafarge*          06-5342 | * | JUDGE |
| *Perry v. Ingram*                06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*             06-7516 | * | |
| *Parfait Family v. USA*     07-3500 | * | MAG. |
| *Lafarge v. USA*                 07-5178 | * | JOSEPH C. WILKINSON, JR. |
| *Weber v. Lafarge*             08-4459 | * | |

**BARGE PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE
BARGE PLAINTIFFS' SEVENTH AMENDED CONSOLIDATED CLASS ACTION
COMPLAINT FOR DAMAGES**

MAY IT PLEASE THE COURT:

The Barge Plaintiffs reiterate in all respects their Motion for Leave to File the Seventh Amended Consolidated Class Action Complaint for Damages, and reply as follows to various parties' oppositions. The Port Commission's opposition is Record Doc. 15767. The Orleans Levee District's opposition is at Record Doc. 15817. Unique Towing's opposition is Record Doc. 15778. Lafarge North America, Inc.'s opposition is Record Doc. 15813.

**REPLY TO OPPOSITION BY THE PORT COMMISSION AND
ORLEANS LEVEE DISTRICT**

The crux of the Port Commission's and Levee District's common opposition arises from their

1

effort to defeat Lafarge's third party claims against them, based upon the argument that because the Barge Plaintiffs did not assert claims in admiralty, Lafarge's third-party demands are improperly asserted under Fed. R. Civ. P. 14(c). The Levee District's and Port Commissions intentions are at cross purposes with the Barge Plaintiffs' abundant concern that their claims proceed as intended, subject to the substantive general maritime law. The Barge Plaintiffs, therefore, cannot tacitly countenance the Port Commission's or Levee District's premise, that is, that the Barge Plaintiffs' complaints do not invoke this Court's admiralty jurisdiction. Barge Plaintiffs, in their September 19, 2008 Response to the Board of Commissioners of the Port of New Orleans' Motion for Summary Judgment and Orleans Levee District's Motion for Summary Judgment, reject all such contentions. Barge Plaintiffs hereby adopt, reiterate and incorporate their aforementioned response, Record Doc. 15071.

**No prejudice to the Port Commission or Orleans Levee District**

The Port Commission's and Levee District's claims of prejudice arise from their efforts vis-a-vis Lafarge's third party claims. There is no prejudice, however, because the Barge Plaintiffs' Seventh Amended Complaint does not posit any new jurisdictional ground. It merely clarifies and makes more manifest what already existed. Plaintiffs' contentions have been clear from the outset. The Seventh Amended Complaint is the Barge Plaintiffs' response to a technical point made by third-party defendants for the first time three years after the filing of this lawsuit. Any delay on this score is not the Plaintiffs' fault. Plaintiffs did not wait three years to raise the issue, but nonetheless have a right to address any technicalities, no matter how wrong the Levee Board and Port Commission might be. It is apparent that the Levee Board's and Port Commission's contentions arise from a slanted and selective view of applicable maritime jurisprudence.

Admittedly, were substantive admiralty law clearly applicable to maritime torts in *any* jurisdictional setting, clarification might be unnecessary. However, it is Barge Plaintiffs' copiously researched and considered understanding that all features of the substantive maritime law are assured only within the admiralty jurisdiction. "With admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Co. V. TransAmerica DeLeval, Inc.*, 476 U.S. 858, 1986 AMC 2027 (1986). Despite conceivable arguments that the substantive rules might apply to a case satisfying mere situs and connexity requirements for admiralty, regardless of which "side" of Court this case is tried to, the law is clear that admiralty jurisdiction imparts the substantive admiralty law.[1]

Though courts strive to achieve uniformity in admiralty, the concept is aspirational, and not always achieved, which might account for the Levee District's and Port Commission's startling assertions. Their position seems to be based upon jurisprudence at odds with the Fifth Circuit's long-standing approach. The Fifth Circuit clearly articulates the low-threshold requirements of an admiralty jurisdiction election, adding that explicit Fed. R. Civ. P. 9(h) election is ideal, despite the fact that much less is required. The Fifth Circuit follows the doctrine that if a suitor pleads a simple statement to the effect that his is an admiralty or maritime claim, the suit will be treated as such regardless of diversity as additional grounds for jurisdiction. See *T.N.T. Marine Service v. Weaver Shipyards*, 702 F.2d 585 (5th Cir. 1983), stating at 587:

> "...a suit falling under admiralty as well as diversity jurisdiction will be treated as an admiralty case for purposes of the right to a jury trial (Rule 38(e)) if the

---

[1] "Determinations of the applicability of federal admiralty jurisdiction are governed by the two part test adopted by the Supreme Court in Sisson v. Ruby, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1995) ("Sisson")... After Sisson, then, a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity."*Scarborough V. Clemco Industries*, 391 F.3d 660 (5th Cir. 2004).

> pleading contains an "identifying statement" asserting an admiralty or maritime claim. The plaintiff may elect to have a suit treated as either a diversity or admiralty suit, each option having advantages and disadvantages, but the plaintiff's case will be treated as one in admiralty "by a simple statement in his pleading to the effect that the claim is an admiralty or maritime claim." Fed.R.Civ.P. 9 advisory committee note (1966 amendment)."

In *Rosales v. Bouchard Coastwise Management Corp.*, Civil Action No. 03-2978, Section "K"(2), (E.D.La. 2004), Judge Duval stated that:

> "In the Fifth Circuit, a "plaintiff may elect to have a suit treated as either a diversity or admiralty suit, . . . but the plaintiff's case will be treated as one in admiralty `by a simple statement in his pleading to the effect that the claim is an admiralty or maritime claim.'" T.N.T. Marine Serv., 702 F.2d at 587 (quoting Fed.R.Civ.P. advisory committee note (1966 amendment)); see also Hunt, 2002 WL 1906914 at* 1. Therefore, "when [a] complaint contains a statement identifying the claim as an admiralty or maritime claim, there is no right to a jury trial even if diversity jurisdiction also exists." Hunt, 2002 WL 1906914 at * 1 (citing Romero v. Bethlehem Steel Corp., 515 F.2d 1249 (5th Cir. 1975)). Express invocation of a 9(h) claim, while desirable, is not necessary when a complaint otherwise contains a simple statement identifying the claim as one in admiralty or maritime law. Id. (citing Breeden, 2001 WL 64772 at *1). This type of simple statement is sufficient to designate a claim as one in admiralty notwithstanding the existence of a diversity jurisdiction. Id."

Please also see *Brown v. Carnival Corporation*, No. 07-22878-CIV (S.D.Fla. 6-9-2008); *Borque v. D. Huston Charter Services, Inc.*, 525 F. Supp.2d 843(S.D.Tex. 11-19-2007); *Rao v. Delta Queen Steamship Company, Inc.*, Civil Action No. 05-4968, SECTION "F"(E.D.La. 1-16-2007). The Barge Plaintiffs have included such "simple statement[s]" in their pleadings, along with reference to maritime torts, admiralty jurisdiction, and 28 U.S.C. 1333, and based upon jurisprudence arising within the Fifth Circuit, have been in admiralty since commencement of these actions.

Then why specifically reference Fed. R. Civ. P. 9(h) now? As stated, the Levee Board and Port Commission posit a technical, though incorrect, assertion that the Barge Plaintiffs have not invoked admiralty jurisdiction. Barge Plaintiffs' objective in responding to this assertion has nothing

to do with a jury trial, or with Lafarge's third party claims, but everything to do with certainty that the substantive general maritime law, rather than state law, will apply to this action. The reason for express reference to Fed. R. Civ. P. 9(h) is to forestall any ambiguity flowing from jurisprudence concerning invocation of admiralty jurisdiction, along with the attendant attributes of the substantive maritime law. Given the Levee Board's and Port Commission's assertions, it is evident that someone might fall prey to such ambiguity and urge matters that miss the mark.

For example, The Port Commission cites *Harrison v. Glendel Drilling Company*, 679 F.Supp. 1413 (W.D. La. 1988) in its opposition. Though the ruling would appear to be swept aside by contrary statements in *Scarborough, T.N.T. Marine Sevice*, and *Rosales*, the Court in *Harrison* nonetheless creates ambiguity in the statement that:

> "A plaintiff's allegation that his claim is within the admiralty and maritime jurisdiction is not sufficient to make it an admiralty and maritime claim within the meaning of Rule 9(h), if the claim is also within the district court's jurisdiction on some other ground. Smith v. Pinell, 597 F.2d 994 (5th Cir. 1979); Banks v. Hanover Steamship Corp., 43 F.R.D. 374, 376-77 (D.Md. 1967); 5 Wright & Miller, supra, at 454."

This statement is at very apparent odds with *T.N.T. Marine Services*, *supra*, which places a matter within the admiralty jurisdiction regardless of concurrent diversity jurisdiction, as long as the "simple statement" appears.[2]  The "simple statement" contemplated by the Fifth Circuit in *T.N.T. Marine Service* was included in Barge Plaintiffs' various complaints long ago. Therefore, little wrangling should occur over the impact of Fed. R. Civ. P. 9(h) on the Levee District's or Port

---

[2]See also *Urgin v. Crescent Towing & Salvage, Inc.*, Civil Action No. 00-1602, Section "N" (E.D.La. 2002), which is not necessarily at odds with T.N.T. Marine Services, as the plaintiff appears to have alleged only that the defendant "was negligent in the manner in which the tug was positioned and failed to provide him with a safe place to work." Here, the Barge Plaintiffs alleged admiralty and maritime torts, admiralty jurisdiction, and pled 28 U.S.C. 1333.

Commission's rights in this case, because the proposed Seventh Amended Complaint changes nothing. It adds nothing new to this issue.

Barge Plaintiffs, as per the Fifth Circuit's approach as it is understood here, intend clarity in their rejection of the Levee District's and Port Commission's contentions to the extent that they imply that the substantive general maritime law does not apply. Barge Plaintiffs therefore clarify - reiterating not for the first time - that consistent with their initial and continued invocation of admiralty jurisdiction, they rely for the fullest possible measure of relief upon the admiralty and general maritime law attendant to admiralty jurisdiction.[3] A matter subject to admiralty jurisdiction obligates courts to apply federal maritime substantive law. *Southern Pacific R.R. Co. v. Jensen*, 244 U.S. 205 (1917). This specifically includes without limitation its application in terms of maritime statutes of limitation, and the general maritime law as articulated in *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979), *Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993), and related cases, standing for a tortfeasor's liability for the full measure of damages when the tortfeasor's fault was a substantial cause. These cases manifest this principle in application of joint and several liability in admiralty.

By contrast, in diversity, "[o]ther aspects of substantive law would vary as well, since state law applies to diversity suits under the Erie doctrine, while federal common law governs admiralty suits. *T.N.T. Marine Service v. Weaver Shipyards*, 702 F.2d 585 (5th Cir. 1983).[4] Louisiana law

---

[3]See, for example, Barge Plaintiffs October 26, 2007 Opposition to Modification of Case Management Order No. 4, Record Doc. 8695, Exhibit A, a brief history of the "Barge Case" including application of the general maritime law of joint and several liability among joint tortfeasors.

[4]Cf. *Garber v. Oppenheimer,* Civil Action No. 04-2251 Section "K" (5) (E.D.La. 2005): "The submission of medical malpractice claims to a review panel prior to suit is a substantive

6

incorporates an apportionment scheme vastly different than the general maritime law. La. C. C. Art. 2324. Louisiana law also includes shorter prescriptive periods than the substantive maritime law. This case has been treated as one in admiralty all along, including limitation actions by Ingram Barge Company, Domino Towing and Unique Towing (E. D. La. Civil Actions 05-4419 c/w 06-3363), in which all known Barge Plaintiffs at the time (with one exception; see below, footnote 6) brought claims in limitation identical to their claims against Lafarge.

Barge Plaintiffs avoid the pitfalls inherent in admiralty's checkerboard approach to uniformity by responding to Levee District's and Port Commission's assertions arising out of such doctrinal gaps. Plaintiffs seek to resolve any misperception by doing what the Fifth Circuit terms "ideal," and Judge Duval considers "desirable," that is, by exceeding the admiralty pleading requirements, and broadcasting "Federal Rule of Civil Procedure 9(h)" for all eyes and ears. It is the surest way of reinforcing Plaintiffs' original and continued intention that this matter proceed in

---

rule of law. See Woods v. Holy Cross Hospital, 591 F.2d 1164 (5th Cir, 1979) (holding that Florida's Medical Malpractice Act is substantive state law); cf. Harrison v. Glendel Drilling Co., 679 F.Supp. 1413, 1424 (W.D.La. 1988) (concluding that Louisiana's Medical Malpractice Act is substantive state law). Thus, this Court is obligated when exercising diversity jurisdiction to apply the provisions of the LMMA."

But see *Offshore Logistics v. Tallentire*, 477 U.S. 207, 222-223 (1980), obligating state courts under the reverse-*Erie* doctrine to apply substantive maritime law. Additional rulings have held that where the substantive maritime law does not preempt state law, state law will apply. *Tungus v. Skovgaard*, 358 U.S. 588 (1959).

Though the 'reverse-*Erie* doctrine' and saving- to-suitors clause are sometimes used to harmonize substantive law in maritime cases, even this is not uniform. Reverse-*Erie* would favor an historical maritime approach over much more recent legislative intent via amendment of Louisiana Civil Code article 2324 governing apportionment among joint tortfeasors. Plaintiffs choose not to risk that this Court would reject this approach. As well, divergent opinions abound as to whether the effects of the saving-to-suitors clause are substantive, procedural, jurisdictional or all three. In any event, such tension blurs uniformity.

7

admiralty, along with application of the substantive admiralty and maritime law. Again, none of this is new, as the Barge Plaintiffs already sufficiently invoked the Admiralty long before the Levee District and Port Commission moved against Lafarge. The Levee Board and Port Commission are not affected by the proposed Seventh Amended Complaint in any way that they were not already affected by any Barge Plaintiff's prior complaints.

### REPLY TO OPPOSITION BY UNIQUE TOWING, INC.

Undersigned and counsel for Unique agree that the proposed Seventh Amended Complaint does not seek nor accomplish any lifting of the still effective *ad interim* stipulation and stay in limitation, and does not extend the monition period already lapsed.[5] Undersigned has informed counsel for Unique, and asked that he inform counsel for Unique's insurers, that to any extent that the proposed pleading exceeds the limits of Orders already in place, Unique and its insurers need not respond. Undersigned presume that the Court will rule in this instance consistent with its Orders already in place, and will restrict the effect of the proposed pleading accordingly. Then, why implead Unique and the several insurers? The answer is no different than the matters expressed in support of the Barge Plaintiffs' motion for leave - to harmonize and clarify all of the proposed class representatives' allegations - to aggregate them into a consolidated pleading, as part of a course of action intended to make it easier for all parties and the Court to address class certification and individual trials scheduled for December 2008 and July 2009, respectively. The measure is no different, and of no greater impact, than that previous complaint which added Ingram's insurers. Action against Ingram and its insurers was stayed by Judge Duval pending the outcome of Ingram's

---

[5]Undersigned do ask, however, that Ethel Mumford be allowed to assert a late claim in limitation. She is only one person, is the lead plaintiff in the suit filed well before Unique's limitation action, and her inclusion would have no impact on Unique or Domino.

petition for exoneration or limitation. That matter is now on appeal. So is the limitation action commenced by Unique. No action need be taken by plaintiffs or defendants here, as the allegations against Unique and its insurers are entirely formalistic at this point, unless and until the Fifth Circuit renders a decision adverse to Unique. Likewise, the Barge Plaintiffs do not now bring a class action against Unique, but simply restate the claimants- in-limitation's already pending allegations for the sake of litigating the remaining issues of causation and damages. The proposed class representatives and claimants in limitation do not hold the impression that a class action can occur unless and until the Fifth Circuit renders a decision adverse to Unique, but again, come forward with the allegations already made in order to fit them within readily accessible pleading alongside claims that have been consolidated by the Court.

### REPLY TO OPPOSITION OF LAFARGE NORTH AMERICA, INC.

Predictably and typically, Lafarge resorts to hyperbole, denigrates opposing counsel, and claims prejudice where there is none, in order to thwart the Barge Plaintiffs. Lafarge makes expansive and unsupported claims that it will be prejudiced, which by-now-familiar complaints should be dismissed out of hand.

First, Lafarge notes that the Barge Plaintiffs have known of Arcola Sutton for significant time before her proposed substitution as a class representative. This is irrelevant. She was not intended until now as a class representative or named plaintiff, so there was no reason to name her as such. She is named now in substitution for three other formerly proposed class representatives who are no longer suitable in accord with the Barge Plaintiffs class certification motion or proposed trial plan. She is suitable, and due to her presence at home during the flooding, the fact that she owned her home, and the fact that she leased the adjacent apartment and derived income, Barge Plaintiffs seek

9

to substitute her as a proposed class representative. Substitution of class representatives is routine and should not afford any great hardship to anyone. In this instance, it does not.[6]

Second, Lafarge claims that addition of Arcola Sutton does not sufficiently serve an important purpose underlying amendment. This is incorrect. Arcola Sutton is consistent with the Barge Plaintiffs' trial plan and the class and subclasses they seek to certify, as articulated in their class certification motion. She is representative of those who were present during the flooding, those whose movable and immovable property was destroyed, and those who lost business income which she derived from rental of half of the double she owned. She is also representative of those who suffered emotional distress from destruction of her property, and due to her presence in the "zone of danger." She brings a mix of classwide and individual damages consistent with the proper approach to this case. Whether or not Lafarge disagrees or wants or does not want a class certified is irrelevant, and should not supplant, or afford Lafarge the opportunity to subvert, the Barge Plaintiffs' legitimate purposes in seeking leave to amend.

Third, Lafarge claims prejudice. Lafarge complains with great emphasis that Arcola Sutton has provided "**no written discovery responses**" (emphasis original). Arcola Sutton was not a named plaintiff throughout any of the history that Lafarge retells yet again in its opposition (P. 3, 2d paragraph). Discovery responses were neither sought from nor owed by Arcola Sutton.

Lafarge complains that it cannot conduct discovery after the class certification discovery cutoff. As far as the Barge Plaintiffs are concerned, yes, Lafarge can. In fact, Lafarge is still

---

[6]Lafarge takes the position for the first time that Barge Plaintiffs have exceeded for significant time the allowable number of proposed class and subclass representatives specified in Case Management Order No. 7. Lafarge is wrong. CMO 7, p. 3, permits five proposed members per subclass. Barge Plaintiffs propose fewer.

10

conducting discovery, by agreement with undersigned, and if Lafarge wanted yet more discovery, it would not hesitate to ask or move for it if more discovery served Lafarge's ends.

Lafarge unjustifiably impugns undersigned's veracity by questioning whether undersigned will comply with undersigned's representations made to the Court and to Lafarge that Arcola Sutton will be subject to discovery, and that written responses will be tendered. In fact, those written responses are complete, and will be tendered to Lafarge upon filing of the Seventh Amended Complaint. Likewise, Lafarge is free to depose Arcola Sutton whenever it desires. Lafarge has not demonstrated that its depositions of the proposed class representatives are all that demanding or beyond routine. Again, undersigned will produce her at Lafarge's request.

Lafarge claims that insufficient means exist to submit Ms. Sutton for an independent medical exam. By this, Lafarge is referring to psychiatric evaluations performed upon members of the former proposed emotional damages subclass. However, as the Barge Plaintiffs' recently filed Amended Motion for Class Certification, supporting memoranda and proposed trial plan demonstrate, as does the proposed Seventh Amended Complaint, the Barge Plaintiffs do not seek to certify an emotional damages subclass! Further, although Arcola Sutton suffered an un-treated skin rash from toxic floodwater, it healed, she has no signs or symptoms now, and so, there is nothing to examine.

Undersigned urge this Court to recognize that Lafarge's claims of prejudice are overblown, and are overshadowed by Lafarge's own conduct. Lafarge's anguished peal about late discovery is especially difficult to accept when just last week, well after the formal close of written class certification discovery, long after Lafarge's receipt of Barge Plaintiffs' class certification expert reports, and only after Barge Plaintiffs filed their class certification motion, Lafarge tendered unannounced to the Barge Plaintiffs a disc containing thousands of pages of material and photos.

**(Exhibit A)**. These materials have been in Lafarge's possession for years, and are responsive to numerous of the Barge Plaintiffs' class certification and merits discovery requests, and to undersigned's separate, repeated written requests for production of things listed on Lafarge's Exhibit Lists. These materials were subject of the Barge Plaintiffs' motion to compel discovery of the very same Lafarge facility and barge photos, in response to which, Lafarge vehemently and repeatedly represented to this Court that these materials are privileged, and even described them in its privilege log. This Court denied discovery of these things based upon Lafarge's claims, which decision is now on appeal before Judge Duval. Lafarge allowed Barge Plaintiffs' class certification experts to opine and tender reports rendered without the benefit of these late-disclosed materials, and denied the Barge Plaintiffs the right to question Lafarge's experts concerning the same materials. It would seem that Lafarge's aversion to late discovery is a very recent and self-serving development, and that privilege is again misused, not to promote a legitimate claim of protection, but as a tactic to further concealment and ambush.[7]

Fourth, Lafarge hopes to manipulate this Court with threats to derail this proceeding by a "significant extension in the class certification schedule, measured in months." How Lafarge can posit this is baffling, when Lafarge's only activities as to any other class representative was receipt of written discovery responses (already completed and awaiting tender), a five or six hour deposition, a twenty minute property inspection, and a few hours with Lafarge's psychiatrist.[8] How does

---

[7] It should be noted that the Barge Plaintiffs reserve the right to seek any and all remedies available in light of Lafarge's untimely disclosures, misleading claims of privilege, representations to the Court and undersigned, as well as any and all other matters inherent in Lafarge's conduct.

[8] There is no longer a proposed emotional damages subclass. Arcola Sutton has no immovable property to inspect either. Her house was demolished by the City of New Orleans

Lafarge measure months into the scenario? Again, and again, Lafarge overstates the issue before the Court and welcomes any opportunity to claim prejudice. Lafarge has ample time to proceed without continuance.

## CONCLUSION

The Barge Plaintiffs reiterate in all respects their Motion for Leave to File the Seventh Amended Consolidated Class Action Complaint for Damages, and reply as follows to various parties' oppositions, and for the foregoing reasons, urge that the motion be granted.

October 8, 2008.

                                                        Respectfully submitted,

/s/ Brian A. Gilbert,
Brian A. Gilbert, Esq.(21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
    Telephone: (504) 885-7700
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail: bgilbert@briangilbertlaw.com

/s/ Lawrence D. Wiedemann,
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
    Telephone: (504) 581-6180
    Facsimile: (504) 581-4336
    e-mail:  lawrence@wiedemannlaw.com,

---

long before Lafarge scheduled any property inspections. All that remains is an empty lot.

karl@wiedemannlaw.com,
karen@wiedemannlaw.com,

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
    Telephone: 504-834-0646
    e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
    Voice: 202-862-4320
    Cell:   202-549-1454
    Facsimile:  800-805-1065 and 202-828-4130
    e-mail: rick@rickseymourlaw.net,

/s/ Lawrence A. Wilson
Lawrence A. Wilson (N.Y.S.B.A. #2487908)
David W. Drucker (N.Y.S.B.A. #1981562)
Wilson, Grochow, Druker & Nolet
Woolworth Building
233 Broadway, 5th Floor
New York, NY 10279-0003
    Telephone: (212) 608-4400
    Facsimile: (212) 227-5159
    e-mail:   lwilson@wgdnlaw1.com,
ddruker@wgdnlaw1.com

/s/Shawn Khorrami
Shawn Khorrami (CA SBN #14011)
H. Scott Leviant (CA SBN #200834)
Matt C. Bailey (CA SBN #218685)
Khorrami, Pollard & Abir, LLP
444 S. Flower Street, 33rd Floor
Los Angeles, California 90071
    Telephone: (213) 596-6000
    Facsimilie: (213) 596-6010
    e-mail:  Skhorrami@kpalawyers.com;

                                                    hsleviant@kpalawyers.com;
                                                    Mbailey@kpalawyers.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the above and foregoing document has been served upon counsel of record, by United States Mail, postage prepaid and properly addressed, facsimile, and/or ECF upload, this 8th day of October, 2008.

                                      \s\Brian A. Gilbert