# Expert Report

of

# Robert Glenn Bea, Ph.D., P.E.

Prepared for:

Katrina Canal Breaches Consolidated Litigation
[Civil Action Number: 05-4182 "K" (2)]

United States District Court
Eastern District of Louisiana

## Pertains to MR-GO, Robinson

(C. A. No. 06-2268)

Moraga, California

July 14, 2008

Format edits: July 15, 2008

**SUMMARY AND CONCLUSIONS**

1.  It is my conclusion, based on my experience, my observations and analyses, and my forensic engineering studies, that the primary cause for the breaches of the man-made features along Reach 1 and Reach 2 of the MR-GO was the design, construction, and maintenance of the MR-GO <u>itself</u> from 1958 to the date of Hurricane Katrina. Decisions of the USACE that resulted in the breaching and the catastrophic flooding of St. Bernard Parish, the Lower 9th Ward, New Orleans East, and portions of New Orleans Metro (Figure 1) include the following:

   (a) to construct a deep-draft navigation channel in the immediate vicinity of Lake Borgne that would foreseeably connect with the narrow waterway of the GIWW - MR-GO Reach 1 and the IHNC, without any structures to control excessive and prolonged water flow into the confined IHNC during hurricane storm surge conditions;

   (b) to use the MR-GO channel as a "borrow pit" for construction material for the Congressionally mandated hurricane flood protection system, the Lake Pontchartrain and Vicinity (LPV) flood protection, and thus to construct the EBSBs in the vicinity and on alignment with the MR-GO navigation channel such that the EBSBs along the MR-GO channel to the south would foreseeably connect with the EBSBs along the GIWW and MR-GO Reach 1 to the north to confine and convey ("funnel") storm surge from Lake Borgne into the narrow IHNC, thus predictably exacerbating excessive and prolonged water flow into the confined GIWW - MR-GO Reach 1 and IHNC during hurricane storm surge conditions

6

      ("funnel effect") – again without any structures to control excessive and prolonged water flow during hurricane storm surge conditions;

(c)    to construct, maintain, and operate the MR-GO channel in a manner that foreseeably allowed salt water intrusion which predictably led to the rapid destruction of tens of thousands of acres of protective, cypress forests, wetlands and swamps in the Lake Borgne Basin and the Central Wetlands Unit (area between EBSBs and 40 Arpent Canal) (Kemp 2007, Freudenberg et al 2007; see also Declarations of Kemp, Fitzgerald et al, Day, Morris); the erosion and degradation of these protective cypress forests, swamps, and wetlands predictably exacerbated storm surge levels and duration in the area; in addition, loss of these natural protective barriers – often described as "horizontal levees" that are highly effective in reducing hurricane surge, currents and waves—predictably resulted in exposing the MR-GO EBSBs directly to hurricane surge, current and wave effects from the Gulf of Mexico, and the geometry of the constructed features foreseeably magnified the forces and effects of the storm surge, currents, and waves in some sections.

(d)    to maintain and operate the MR-GO channel in a manner that foreseeably allowed it to (i) erode its banks and widen Reach 2 several times its authorized width, thereby endangering the stability and elevations of the adjacent EBSBs and (ii) erode and degrade the protective vegetation buffer between the authorized channel alignment and the toe of the EBSBs that would have protected the EBSBs; maintenance dredging - required to keep the MR-GO in operation – and uninhibited wakes of ships traversing the channel foreseeable caused bank erosion

7

and significantly widened the channel in many areas beyond its authorized width (Team Louisiana 2007). The widening of the MR-GO had a further damaging effect in that the bank erosion exacerbated the settling of the soil constituting the EBSBs along Reach 2. Consequently, the settling of this soil ('creeping') reduced the height of the tops of the EBSB when measured against mean sea level.

(e) failed to use USACE guidelines for excavations near or within a federally constructed flood control project in connection with the EBIA site clearing activities at the Lower 9th Ward. Likewise, these activities did not conform with generally accepted engineering practice;

(f) to construct the LPV along Reach 2 and portions of Reach 1 (New Orleans 'Back Levee') with dredged spoil from the MR-GO channel which was not suitable for constructing a hurricane flood protection system for a coastal environment; a foreseeable consequence of which was that EBSBs, and not the Congressionally mandated hurricane flood protection system, were constructed;

(g) to construct the LPV hurricane flood protection structures along Reach 1 and Reach 2 without utilizing applicable USACE manuals, guidelines, criteria, standards, and polices in effect from 1965 to the present, and without utilizing the prevailing, generally-accepted engineering standards for coastal hurricane flood protection structures;

(h) Failure to expeditiously complete the hurricane flood protection system; 40 years after authorization by Congress to design and construct "200 to 300- year" hurricane flood protection for this area, it was still not completed. Time ran out

8

early the morning of 29 August 2005 as Hurricane Katrina crossed the delta of the Mississippi River.

2.  Each of these factors, as well as in combination, were substantial in causing the failures and breaches of the man-made hurricane flood protection structures along Reach 1 and Reach 2 of the MR-GO. But for the increased and sustained surge and waves caused and abetted by the MR-GO during and after Hurricane Katrina, large portions of Greater New Orleans (particularly the Lower 9th Ward, New Orleans East, and St. Bernard Parish) would not have experienced catastrophic flooding of Biblical proportions. The MR-GO was a substantiated factor in causing the catastrophic flooding in these areas. The system in place would have been adequate to contain most of the surge but for the increased and sustained surge, currents, and waves exacerbated by the MR-GO.

3.  The USACE failed to recognize the foreseeable and foreseen damaging effects of the design, construction, operation, and maintenance of the MR-GO on the natural environmental defenses and the adjacent, insufficient man-made hurricane flood protection structures. It was recognized that the MR-GO had important adverse impacts on the environment, such as the degradation and erosion of the vital protection vegetation between the outboard side of the EBSBs and the authorized channel alignment, but no effective action was ever taken to either remediate the effects or correct the deficiencies. In addition, the USACE recognized that the MR-GO channel itself could have deleterious effects on the crest elevations of man-hade hurricane flood protection structures that would be built upon its banks, but again no effective early action was ever taken to prevent the MR-GO channel from encroaching into the protective berm areas.

catastrophic flooding of the St. Bernard Parish – Lower 9th Ward 'polder' (area enclosed by contiguous flood protection structures, Figure 1).

18. Results of analyses performed to determine the timing and causes of the Reach 1 flood protection structures at the Lower 9th Ward, clearly demonstrate the adverse effects of excavations developed during the USACE IHNC Lock Expansion Project site clearing operations. These operations were completed just prior to hurricane Katrina (about May 2005). The locations of the breaches are directly correlated with the locations of these excavations. Two of the deepest excavations were in the immediate vicinity of the North Breach (Boland Marine Site) and the South Breach (Saucer Site). Both the sand backfilled, native soil backfilled and non-backfilled excavations provided ready and early access of the rising waters in the IHNC to communicate with the buried marsh and swamp layers that underlie this entire area. The hydraulic flow and pressure effects were sufficient to initiate very early movements of the supporting levee and floodwalls – well before overtopping, opening up the vertical water-stop joints, and eventually developing complete breaching as the floodwalls were overtopped. Each of these factors—enhanced surge, current, and waves caused by the MR-GO and the USACE EBIA excavation work—was a substantial factor in the failure of these structures and the ensuing catastrophic flooding. In addition, but for the contributions of the exacerbated hurricane surge, waves, and currents caused by the MR-GO and the USACE EBIA site clearing activities to the failures of the man-made structures at the Lower 9th Ward, there would have been greatly reduced flooding and much less catastrophic damage done to the areas within the St. Bernard-Lower 9th Ward polder during Hurricane Katrina.

19. The 'Neutral' MR-GO Hurricane Katrina Conditions assessments which are contained in Declaration No. 3 and which are summarized here are based on the assumption that

17

the Congressionally mandated and authorized MR-GO project should 'do no harm' to the environment and to the man-made flood protection structures that were intended to defend this region against hurricane flooding. It is further assumed that if there would be negative effects of the MR-GO that would have substantial deleterious effects on these elements, it was incumbent that the USACE properly address and mitigate these negative effects. Such negative effects—all of which were foreseeable, if not actually foreseen, before 1958, include:

(a) destruction and degradation of the natural hurricane flood protection features;

(b) salinity increases resulting in degradation of protective vegetation (marshes, swamps, wetlands, forests) both natural and associated with other constructed works (e.g. protective berms for flood protection levees and other man-made structures);

(c) water flow increases resulting in increases in surge elevations, currents, and waves;

(d) channel effects resulting in increases in the intensity of the hurricane waves and currents;

(e) erosion of both natural and man-made flood protection elements and the Reach 2 banks; and

(f) channel erosion which caused the MR-GO channel to encroach into the protective berm of the man-made hurricane flood protection structures of the LPV causing loss of crest elevation of these structures

No effective and early action was taken to prevent these various processes from continuing. These negative effects have been evaluated in development of the 'Neutral' MR-GO Hurricane Katrina Conditions summarized in Declaration No. 3.

20. Before construction and throughout its life cycle, the negative effects of the MR-GO could have and should have been addressed by feasible mitigating elements applied directly to the MR-GO channel itself and to the adjacent man-hade hurricane flood protection structures (Bea and Arnold 2008). It was incumbent on the USACE to address these potential environmental effects in the MR-GO environmental impact statement. The scientific and engineering technology, although not as well developed as today, did exist to properly address these effects over the past half century (Bea and Arnold 2008). In fact, the history of the development of the MR-GO project (*MR-GO -Chronology*, attached as Appendix B to Kemp Expert Report (July 2008) clearly shows that the USACE was aware of but never attempted to remediate these critical negative impacts. It is also clear that preoccupations with continued development of navigable waterways and other factors led to decisions not to mitigate these important impacts (Bea Declaration I). Today, some MR-GO channel mitigations are being developed and evaluated by the USACE as part of the *Mississippi River Gulf Outlet Deep-Draft De-Authorization Report* to Congress (USACE 2008a), the *Louisiana Coastal Protection and Restoration Project* (LCPRA, USACE 2008b), and the MR-GO Reach 2 man-hade hurricane flood protection structures mitigations included in the *Hurricane and Storm Damage Reduction System Design Guidelines* (USACE 2008c). These documents contain the very mitigation measures that have been recommended to the USACE since the at least the mid-1960s (*MR-GO Chronology*). These include placing barriers or gates at the entrance of the MR-GO at the Gulf of Mexico, at the intersection of the MR-GO with the GIWW in the vicinity of Paris Road, and at the IHNC at Seabrook, restoring natural protective features (barrier beaches, wetlands, marshes, swamps), providing armoring of channel banks, and provision of foreshore protection to protect the EBSBs and other similar levee alignments. Potential man-hade hurricane flood protection

structure mitigating measures include provision of protected and flood side armor for levees and embankments, wave berms, foreshore protection, EBSB and levee profiles that reduce surge – current – and wave effects, use of proper materials and construction methods, use of deeper sheet piling and other means to cut-off subterranean seepage paths, and construction and maintenance procedures to maintain levees and EBSBs to adequate elevations.

21.  In summary, based on my experience, my observations and analyses, and the forensic engineering studies of the breaches of the man-made features of the MR-GO that resulted in the catastrophic flooding of St. Bernard Parish, the Lower 9th Ward, New Orleans East, and portions of the New Orleans Metro Bowl (Upper 9th Ward), it is my conclusion that given Hurricane Katrina Neutral MR-GO conditions as analyzed and determined by Wit, et al (2008) and Gautier, et al (2008):

(a)  Reach 2 – There would have not been any significant breaching of the EBSBs along Reach 2 (Figure 1). Breaching of the Bayou Bienvenue (south) navigation structure wing-wall to EBSB interface would have developed following surge overtopping initiating between 8:00 am and 9:00 am (CDT) and completing approximately one hour later. The Bayou Dupre (north) navigation structure wing-wall to EBSB interface breach would not have developed. There would have not been any breaching or overtopping of the 40 Arpent Levees—and therefore no catastrophic flooding of the areas on the protected side of the 40 Arpent Levees. These times are referenced to the surge hydrographs developed by Wit, et al (2008) for Hurricane Katrina Neutral MR-GO conditions (characterized as Scenario 2C). Engineering analyses of the performance of these man-made flood