IN REPLY REFER TO
LMNED-MP

21 April 1975

Mr. G. J. Lannes, Jr.
Regional Planning Commission
333 St. Charles Avenue
Suite 900
New Orleans, LA  70130

Dear Mr. Lannes:

This is in reply to your letter of 7 March 1975 in which you requested information concerning the Lake Pontchartrain, Louisiana, and Vicinity hurricane protection project, particularly the alternative which would combine the Lake Pontchartrain Barrier Plan and the Chalmette Area Plan.

As you noted in your letter, this alternative plan which you have called the "Combined Levees Plan" was discussed in section 5 of the final environmental statement of the project dated August 1974. This plan was first considered about 8 years ago. Basically, this alternative plan would provide for a levee which would connect the Chalmette Area Plan levee located along the Mississippi River-Gulf Outlet (MR-GO) with the Chef Menteur Complex. It would include navigable floodgates in the MR-GO, and Bayou Bienvenue, and a navigation lock in the Gulf Intracoastal Waterway (GIWW) in the vicinity of the Chef Menteur Complex.

This alternative plan would not eliminate the requirement for the barrier complexes at The Rigolets, Chef Menteur Pass, and Seabrook. In effect, this alternative plan would move the primary line of hurricane protection for the areas in the vicinity of Lake Borgne eastward to the western shore of that lake. This realinement would not eliminate the need for controlling the water level in Lake Pontchartrain under hurricane conditions by operating The Rigolets and Chef Menteur Complexes. The regulation of the salinity level of Lake Pontchartrain and the reduction of existing high currents in the Inner Harbor Navigation Canal (IHNC), both of which are required to mitigate adverse effects of the MR-GO, necessitate a navigation lock and control structure complex somewhere in the IHNC between MRGO and Lake Pontchartrain. This complex is presently authorized at Seabrook and a floodgate in the MR-GO would not eliminate this requirement.

LMNED-MP
Mr. G. J. Lannes, Jr.

Mr. Shelton/pbs/430
21 April 1975

This alternative plan would have allowed the IHNC and MR-GO levees to be constructed to lower grades. These lower levees would still be required, however, to protect against non-hurricane generated tides and wave action. This plan would also have provided hurricane protection for the industrial development along the IHNC outside the authorized protective works. However, this alternative plan was more expensive than the selected plan and would impede navigation in both the MR-GO and the GIWW.

There are certain advantages to this alternative plan as it pertains to a new ship lock in St. Bernard Parish. The levees along the channel between the new ship lock and the MR-GO levee could be built to a lower grade. The floodgate in the Violet Canal where it would intersect the channel, would not be required. The dredged material from the construction of the recommended barge canal connecting the GIWW and the MR-GO could be used in the construction of the alternate plan levee. However, the new ship lock and the alternative levee plan are separate features and they are in no way dependent on each other.

Even if we could support the "Combined Levees Plan," and we cannot, the modifications involved are so broad in scope that congressional action would be required to authorize it. The attending time loss in the preparation of planning documents for congressional review and in the cessation of design and construction activities in the affected area would delay the achievement of hurricane protection for Orleans and St. Bernard Parishes. Were this alternative plan to receive congressional authorization, a large portion of the work already accomplished by local interests could not be incorporated into the new, authorized project and no credit for this portion of the local interests' work could be allowed. Also, any Federal funds expended to bring protective systems to grades in excess of the new, authorized project grades would have been wasted.

I hope that this discussion of the alternative plan and its history has answered your questions concerning the viability of the plan as an alternative barrier alinement. If I may be of any further service in this matter, please call on me.

BARTON
LMNED-MP

SEALE
LMNED-M

Sincerely yours,

E. R. HEIBERG III
Colonel, CE
District Engineer

2

IN REPLY REFER TO
LMNED-MP

11 April 1975

Mr. G. J. Lannes, Jr.
Regional Planning Commission
333 St. Charles Avenue
Suite 900
New Orleans, LA 70130

Dear Mr. Lannes:

This is in reply to your letter of 7 March 1975 in which you requested information concerning the Lake Pontchartrain, Louisiana, and Vicinity hurricane protection project, particularly the alternative which would combine the Lake Pontchartrain Barrier Plan and the Chalmette Area Plan.

As you noted in your letter, this alternative plan which you have called the "Combined Levees Plan" was discussed in Section 5 of the Final Environmental Statement of the project dated August 1974. It was also considered, along with two other alternatives, in some detail in a letter report prepared by this District ("Lake Pontchartrain, La., and Vicinity - Evaluation of Alternate Plans Involving Modifications in the Alignment of the Lake Pontchartrain Barrier" dated 13 March 1967).

Basically, this alternative plan calls for a levee which would connect the Chalmette Area Plan levee located along the Mississippi River-Gulf Outlet (MR-GO) with the Chef Menteur Complex. It would include navigable floodgates in the MR-GO, and Bayou Bienvenue, and a navigation lock in the Gulf Intracoastal Waterway (GIWW) in the vicinity of the Chef Menteur Complex.

It is important to note that this alternative plan does not eliminate the requirement for the barrier complexes at The Rigolets, Chef Menteur Pass, and Seabrook. In effect, this alternative plan would move the primary line of hurricane protection for the areas in the vicinity of Lake Borgne eastward to the western shore of that lake. This realinement would not eliminate the need for controlling the water level in

LMNED-MP　　　　　　　　　　　　　　　　　　　　　　　　11 April 1975
Mr. G. J. Lannes, Jr.

Lake Pontchartrain under hurricane conditions through the operation of the Rigolets and Chef Menteur Complexes; neither would the proposed navigable floodgate in the MR-GO fulfill the MR-GO mitigation purposes of the Seabrook Complex. The regulation of the salinity level of Lake Pontchartrain and the reduction of existing, high currents in the Inner Harbor Navigation Canal (IHNC), both of which are required to mitigate adverse effects of the MR-GO, necessitate a navigation lock and control structure complex somewhere in the IHNC MR-GO system. This complex is presently authorized at Seabrook and a floodgate in the MR-GO would not eliminate this requirement. A ship lock and control structure complex in the MR-GO would be required in order to eliminate the Seabrook Complex.

The implementation of this alternative plan would allow the existing IHNC and MR-GO levees to be constructed to lower grades. These lower levees would still be required, however, to protect against non-hurricane generated tides and wave action. Hurricane protection would be provided for the industrial development along the IHNC outside the authorized protective works and for the area bounded by the MR-GO, the GIWW and the alternative levee.

There are certain advantages to this alternative plan as it pertains to the new ship lock and the Centroport development. The levees along the ship lock channel between the new ship lock and the MR-GO levee could be built to a lower grade. The floodgate in the Violet Canal where it would intersect the ship lock channel, would not be required. The dredged material from the construction of the recommended barge canal connecting the GIWW and the MR-GO could be used in the construction of the alternate plan levee. Port development experts state that Centroport facilities would be improved by the lowering of the levees in that operational economies would be realized by container, LASH/SEABEE, and roll-on roll-off facilities. A relatively safer harbor, during hurricane conditions, would be provided in the IHNC and the MR-GO/GIWW since the navigation structures would control the ingress of hurricane tides and reduce wave action.

Navigation would be impeded by the operation of the GIWW lock during periods when currents in the lock would make transit of an open lock hazardous. In addition, the restricted width of the navigation structures would result in some delays to traffic even in normal weather conditions because of the necessity to transit the structures at reduced speeds. As was pointed out in the final environmental statement, this alternative plan would permanently alter an 8,100-acre tract of prime estuarine marsh located between the western shore of Lake Borgne and the intersection of the MR-GO and the GIWW.

2

LMNED-MP                                                          11 April 1975
Mr. G. J. Lannes

The modifications involved in this alternative plan are so broad in scope that Congressional action would be required to authorize it. The attending time loss in the preparation of planning documents for Congressional review and in the cessation of design and construction activities in the affected area would delay the achievement of hurricane protection for Orleans and St. Bernard Parishes. Were this alternative plan to receive Congressional authorization, a large portion of the work already accomplished by local interests could not be incorporated into the new, authorized project and no credit for this portion of the local interests' work could be allowed. Also, any Federal funds expended to bring protective systems to grades in excess of the new, authorized project grades would have been wasted.

Any modification of the currently authorized project plan to expand the protection provided by the project must be incrementally justified. This alternative plan with some differences was thoroughly evaluated in the 1967 letter report on alternative plans. In this report, an incremental hurricane protection benefit-cost ratio of 0.22 to 1 was derived for this alternative. There is no reason to doubt that a similarly unfavorable, incremental, hurricane protection benefit-cost ratio would be derived through any detailed analysis that might be conducted today.

From the standpoint of the construction of the new ship lock and the operation of the Centroport facilities, there would be attending construction savings and economic benefits in the implementation of this alternative plan as previously discussed. It is doubtful, however, thatt these benefits would be sufficient to produce a favorable, incremental, navigation benefit-cost ratio at this time.

This alternative plan with some variations was studied in detail and rejected in the 1967 letter report, and in the Final Environmental Statement for the project dated August 1974. It is now being evaluated in the Site Selection Report for the Mississippi River-Gulf Outlet—New Lock and Connecting Channels project dated March 1975. Its rejection has been recommended on the basis of construction cost and "...the potentially great ecological damage to all the marshland west of Lake Borgne." In addition to the results of these studies, we must consider as particularly important to local interests, the losses both they and the Federal Government would sustain in the form of work already accomplished in excess of that which would be required were this alternative to be authorized.

In the above discussion, the "Combined Levees" alternative plan has been described along with its effect on the hurricane protection project, the new ship lock project, and the operation of Centroport. The prior

3

LMNED-MP  
Mr. G. J. Lannes

Mr. Shelton/phs/430  
11 April 1975

considerations of this plan have been discussed along with the reasons for rejection of the plan. There seems to be be little indication that another detailed investigation of this alternative would result in a conclusion differing from the ones previously derived.

I hope that this discussion of the alternative plan and its history has answered your questions concerning the viability of the plan as an alternative barrier alinement as well as the advisability of conducting another detailed study of the plan. If I may be of any further service in this matter, please call on me.

BARTON  
LMNED-MP

Sincerely yours,

SEALE  
LMNED-M

Exec Ofc

E. R. HEIBERG III  
Colonel, CE  
District Engineer

4