LMNED-PP  19 October 1966
SUBJECT: Lake Pontchartrain, La. and Vicinity - Report on Controlling Elevation of Seabrook Lock

25. The question has been raised as to whether lowering the controlling elevation of the Seabrook Lock involves a modification of the authorized local cooperation which is beyond the discretionary authority of the Chief of Engineers (see LMVED-TD letter to OCE dated 8 December 1965 subject "Lake Pontchartrain and Vicinity, Louisiana," copy of which is inclosed, incl 5). This concern would appear to be without foundation. In effect, the authorizing law directs that a lock capable of serving both the needs of hurricane flood control and mitigation of MR-GO effects be designed and constructed and that the costs for the lock be shared equally by the navigation and hurricane flood control functions. Thus, the requirements of local cooperation for the lock are clearly independent of its physical configuration and controlling elevation.

26. Inasmuch as the requirements of local cooperation for the Seabrook Lock as authorized are independent of the controlling elevation of the lock, selection of the controlling elevation may be based on purely technical considerations. A departure from the project document plan based on such considerations is clearly within the discretionary authority of the Chief of Engineers.

27. Conclusions. Based on the material presented herein, it is concluded that:

a. A change in the controlling elevation of Seabrook Lock from the authorized elevation of 13.2 feet m.s.l. to elevation 7.2 feet m.s.l. is both feasible and desirable. The reduction in controlling elevation will lower the required levee grades on the IHNC north of its junction with the MR-GO and reduce flood damages to industries located outside the levee system on the banks of the canal for hurricanes on tracks critical to the canal. It will not result in any significant increase in average lake levels during hurricanes, and thus will have no practical effect on levee grade requirements for the lakefront levee systems.

b. A controlling elevation of 7.2 feet m.s.l. is optimum. A higher controlling elevation would increase the levee grade requirements on the IHNC and damage riparian industries outside the levee system without producing any compensating advantage. A materially lower controlling elevation would be clearly undesirable. It would significantly raise average lake levels during hurricanes and thus require upward revision of the grades of all the lakefront protective systems, while producing little additional reduction of stages in the IHNC.

LMNED-PP                                                      19 October 1966
SUBJECT:  Lake Pontchartrain, La. and Vicinity - Report on Controlling
          Elevation of Seabrook Lock

     c.  The requirements of local cooperation for the Seabrook Lock as contained in the authorizing law are fixed and can only be changed by further action on the part of the Congress.

     d.  The authorized requirements of local cooperation for the Seabrook Lock are independent of the controlling elevation of the lock.

     e.  The selection of a controlling elevation for the Seabrook Lock involves technical considerations only, and a change in controlling elevation from that contained in the survey report on which authorization is based may be treated as a departure from the project document plan within the discretionary authority of the Chief of Engineers.

   28.  Recommendations.  It is recommended that the Seabrook Lock be designed with a controlling elevation of 7.2 feet m.s.l.; that the change in controlling elevation be covered as a departure from the project document plan in the general design memoranda for the Lake Pontchartrain Barrier Plan and the Seabrook Lock; and that this report be included as an appendix to both memoranda.

5 Incl (quint)
  1. General map, file No.
    H-2-24040/plate 1
  2. Map IHNC, file No. H-2-24040/plate 2
  3. Profile, IHNC, file No. H-2-24040/plate 3
  4. DPW ltr dtd 13 Apr 66
  5. LMVED-TD ltr dtd 8 Dec 66

                            THOMAS J. BOWEN
                            Colonel, CE
                            District Engineer

① Engr
② Real Estate

LMVED-TD (NOD 19 Oct 66)        1st Ind
SUBJECT: Lake Pontchartrain, La. and Vicinity - Report on Controlling
         Elevation of Seabrook Lock

DA, Lower Miss. Valley Div, CE, Vicksburg, Miss.  39180   9 Nov 66

TO: Chief of Engineers, ATTN: ENGCW-V/ENGCW-EH/ENGCW-EZ/ENGRE-AP

    1. Subject report is forwarded for review and approval pursuant to para 9, ER 1110-2-1150. The recommendations of the District Engineer in para 28 are concurred in.

    2. The location of Seabrook Lock with adjoining rock dike is shown on Plate 4 of Interim Survey Report dated 21 Nov 62 and forwarded by our 1st Ind, LMVGN, dated 18 Jan 63. The Survey Report was printed as HD No. 231, 89th Congress, 1st Session. Plate 4 was not included in the printed document.

    3. The correspondence referred to in para 1, basic communication, instructed the District to make a study to determine the controlling elevation for Seabrook Lock and to prepare a letter report, discussing their findings, for submission to your office.

    FOR THE ACTING DIVISION ENGINEER:

5 Incl (quad)
  wd 1 cy ea

                              A. J. DAVIS
                            Chief, Engineering Division

Copy furnished:
  New Orleans District
  ATTN: LMNED-PP

ENGCW-EZ (19 Oct 66)                    2nd Ind
SUBJECT:  Lake Pontchartrain, La. and Vicinity - Report on Controlling
          Elevation of Seabrook Lock

DA, CofEngrs, Washington, D. C., 20315, 12 January 1967

TO:  Division Engineer, Lower Mississippi Valley Division

   The controlling elevation of 7.2 feet m.s.l. for the proposed Seabrook Lock appears reasonable and is approved, subject to consideration of such modifications as may be indicated by the results of surge studies now under way on the effects of the Mississippi River - Gulf Outlet and surge studies for south shore Lake Pontchartrain. These studies are referred to in paragraph 8d(7) of Design Memorandum No. 1, Hydrology and Hydraulic Analysis, Part I, Chalmette and paragraph 13 of Design Memorandum No. 3, Chalmette Area Plan, General Design.

        FOR THE CHIEF OF ENGINEERS:

wd Incl

                                    WENDELL E. JOHNSON
                                    Chief, Engineering Division
                                    Civil Works

11



