# EXHIBIT 15



# STATEMENT OF WORK
## FOR
## PROJECT SITE DEVELOPMENT
## AND REMEDIAL ACTION
## OF
## EAST BANK INDUSTRIAL AREA (EBIA)
## INNER HARBOR NAVIGATION CANAL (IHNC)
## LOCK REPLACEMENT PROJECT
### NEW ORLEANS, LOUISIANA

Contract Number DACA56-94-D-0021
WGI/MK Task Order 0026
Modification 002604

28 Aug 00

1. <u>General</u>. The Contractor shall furnish all services, materials, supplies, labor, equipment, superintendence, procurement, security services, surveying services, subcontracting, all necessary permits, licenses, laboratory services and travel, as required, for the project site development and remedial action of the IHNC East Bank Industrial Area in accordance with the USACE-approved "Recommendation Report for Demolition and Site Preparation Activities", Work Plans, LDEQ RECAP requirements, etc. Interagency partners involved in this project consists of the US Army Corps of Engineers Tulsa District, US Army Corps of Engineers New Orleans District, Washington Group International, Inc.(formerly Morrison Knudsen Corporation), Materials Management Group and the Louisiana Department of Environmental Quality (LDEQ).

2. <u>Site History</u>. The East Bank Industrial Area consists of inactive and active industrial sites leased to private operators by the Port of New Orleans on the east side of the IHNC along Surekote Road. Specific sites include: Boland Marine, McDonough Marine, Indian Towing, Distributor's Oil, Mayer Yacht, Saucer Marine, and International Tank Terminal. All of these sites have been vacated by Port tenants. The project property will be purchased by USACE through negotiations with the Port. The 32-acre project site includes approximately 50 above-ground buildings, 35 additional concrete slabs, 10 abandoned barges, wharves, bulkheads, fencing, paved areas, trash piles, above ground storage tanks(ASTs), underground storage tanks(USTs), transformer units, miscellaneous equipment, and debris. Previous investigations have shown lead-based paint, asbestos,

WGI000093

and PCBs in the above-ground structures, creosote-treated timbers along the wharves and bulkheads, and soil contaminated with products and wastes utilized by the marine service industry including oil, petroleum fuel, arsenic, and lead associated with sand blasting. Other unknown debris and contaminants may exist at the site. TERC Task Order 0026 was awarded by USACE Tulsa and New Orleans Districts to Morrison Knudsen on 12 Jul 99 to perform a demolition and site preparation recommendations report for the IHNC East Bank Industrial Area. The task order scope was modified via modification 002601 on 23 Nov 99 to perform an arsenic background investigation for the IHNC Replacement Project. After review and comments by USACE and LDEQ, the field work scope of work consisting of quantity and depths of borings was modified via modification 02602 17 May 00. Modification 02603 was awarded 5 Jul 00 to WGI/MK for the Development of Work Plans and Subcontracting Plan/Services.

3.  **Project Requirements Packages.** The following definable packages have been identified and consolidated from the Recommendation Report and shall be estimated and priced separately with estimated durations to complete each one in the Contractor's proposal. USACE's negotiation and award of a portion of the packages or the total amount will be contingent upon the following factors: (1) the availability of right-of-way to USACE from the Port of New Orleans and; (2) the available civil works funding constraints per fiscal year.

3.1  **Mobilization and Site Infrastructure.**

    3.1.1  Mobilization. The Contractor shall mobilize all necessary equipment, materials, etc. via the designated vehicular access route of Interstate 10, Poland Ave/Alvar Street, Florida Avenue and Surekote Road and via navigable waterways leading to the IHNC.

    3.1.2  Project Office Area. The Contractor shall furnish and construct the Project Office Area located at the entrance to Surekote Road (on the right) with 1 USACE trailer of 12' x 60' (720 SF) minimum dimensions that will accommodate 3 full-time employees with 3 separate office areas, a conference room table that will seat 6 people, four (4) four-drawer file cabinets, two (2) Contractor-furnished desktop computer systems with Microsoft Windows 98, Microsoft Office 2000, 17-inch color monitors and color bubble-jet printers. The computers shall meet the following minimum requirements: Pentium III 700 MHz processor, 128 Mb SDRAM, 13.0 GB hard drive, one 3-1/2 inch floppy disk drive, one Microsoft mouse, a 24X CD-ROM drive and an internal fax/modem (V.90 56k U.S. Robotics or equal) linked via telephone line interface (TLI) module. The Contractor shall bear all costs for preventative and corrective maintenance to the computer hardware and software throughout the contract period. If the computer equipment requires repair, the repair shall be completed within five (5) business days or less. Provide four(4) Corps telephone/data lines as follows: voice(1), computer(2) and fax(1) services. Also, provide an internet service provider(ISP) for 2 computers systems for the duration of the field work. WGI/MK and subcontractor project

WGI000094

office area will be fully developed with 1 or more trailers, Conex boxes, crushed limestone parking areas and laydown areas. Key WGI/MK and subcontractor personnel will have full telephone, cellular, radio or pager capabilities. WGI/MK shall also provide cellular phones and service for 2 USACE personnel for the duration of the field work. Full temporary utility systems for project office area will be set-up for water, sewer, electricity, HVAC, telephone, garbage, fire protection, etc.

3.1.3   Security Services. WGI/MK shall procure and provide professional security guard services for 24-hours/day and 7-days/week for the duration of the field work. Two guards shall be provided at night and 1 guard per day shift.

3.1.4   Fencing. The entire 32-acre site boundary shall be fenced on three sides with a permanent 8' chain-link fencing with 3-strand barbed wire on brackets facing outward with double swing gates at Surekote Road entrance. The Contractor shall provide and maintain on the fence "KEEP OUT, U.S. GOVERNMENT PROPERTY" signs every 100-feet facing outward from the work site. The permanent fencing shall be placed immediately adjacent to and on the protected side of the Jourdan Avenue floodwall and the posts shall be set in concrete. The Project Office Area will also be temporarily perimeter fenced with a 6-foot chain-link fencing system with 3-strand barbed wire on brackets facing outward and swing gates to protect Government and Contractor property, equipment, supplies and vehicles.

3.1.5   USACE Project Sign. Prior to commencement of work, the Contractor shall construct a project sign at the site of the work at a location directed by the COR. The sign, which will identify the work with the Corps of Engineers shall be 4 feet by 6 feet in size and shall conform to the requirements of the PROJECT SIGN drawing attached at the end of this SOW. The lettering for the 2 feet by 4 feet section of the sign with the Corps logo shall be white, all other lettering shall be black. Lettering for the project name shall be Helvetica Bold, all other lettering shall be Helvetica Regular. Upon completion of the field work, the sign shall become the property of the Contractor and shall be removed from the job site.

3.1.6   USACE Safety Sign. The Contractor shall furnish, erect, and maintain a safety sign at the site where indicated by the COR. The sign shall conform to the requirements of this paragraph and the drawing included at the end of this SOW. The lettering shall be black, the castle red, and the background white. Upon request, the Government will furnish decals of the engineer castle. The sign shall be erected as soon as practicable, but not later than 15 calendar days after the date established for commencement of work. The data required shall be kept current.

WGI000095

3.2 **Permits and Licenses**

    3.2.1   <u>RA Permits and Licenses</u>. The Contractor shall concurrently develop, apply for and acquire from all appropriate agencies permits that will enable the Contractor to proceed with remedial action work on behalf of USACE. Examples of activities requiring permits include the removal of a sewer lift station, utility connects/disconnects, Orleans Levee District permits, City of New Orleans permits, LPDES permits, LDEQ permits, etc.

3.3  Site Assessment and Surveying

3.4  Miscellaneous Abatement Operations

3.5  Above-Ground Structure Demolition

3.6  Surface Clean-up, Concrete Foundation and Onshore Foundation Piling Removal

3.7  Barge Removal and Disposal

3.8  Wharf and Offshore Piling Removal and Disposal

3.9  Site Investigation Sampling and Analysis

    3.9.1   <u>Laboratory</u>. The Contractor HTRW laboratory(ies) shall meet USACE lab validation requirements and LDEQ state certification in accordance with "Interim Accreditation-Applied, Excepting Data". USACE, New Orleans District's QA laboratory will be designated as Pace Analytical Services, Inc., St. Rose, LA.

3.10 Geophysical Survey

3.11 Grid Trenching

3.12 RECAP Soil Excavation, Remediation and Disposal

3.13 Canal Bank, Surekote Road Removal and Disposal

3.14 Clearance Sampling and Analysis

3.15 Final Site Grading and Restoration

3.16 Demobilization

3.17 Completion Report and Record Drawings

**WGI000096**

3 18 Task Order Close-out

4   **Project Changes**.  Amendments, additions, or changes proposed by the Contractor as part of this task order shall be reviewed, annotated and approved by the Contracting Officer prior to field implementation.  Requests for changes shall be submitted to the Contracting Officer or the Contracting Officer's Representative (COR) in the form of Contractor Information Requests (CIR).  A standard form shall include the date of request, CIR sequence number, problem identification, explanation and nature of problem, resolutions, cost and schedule impacts, and recommendations.  The form shall be signed by the Contractor's representative with space for a Government response.  The work shall incorporate the requirements as discussed in any pre-proposal and site visit conference(s) and all data included in Government-furnished material.

5   **Project Schedule**.  Duration is in calendar days.

| | | |
|---|---|---|
| 5.1 | WAD Setup | 7 days after T.O. Mod. award. |
| 5.2 | Pre-construction Meeting | 14 days after T.O. Mod. award. |
| 5.3 | Project Office and Site Infrastructure | Commence within 30 days after T.O. Mod. award. |
| 5.4 | Field Work | Commence 45 days after T.O. Mod. award. |
| 5.5 | Demobilization | 21 days after field work completion |
| 5.6 | Completion Report and Record Drawings | 45 days after field work completion |
| 5.7 | Close-Out | |

6.   **Government-Furnished Information**.  Numerous site documents, maps, information from Dames and Moore, Waldemar S. Nelson, USACE, New Orleans District, etc. has been previously provided to the Contractor by USACE, New Orleans District in hardcopy and electronic formats initially with the award of Task Order 0026 and modifications 02601 through 02603.

7.   **Work Sequencing and General Performance**.  The time for completion of the work shall be extended 730 calendar days from 30 Sep 00 to 30 Sep 02.

8.   **Reports**.  In addition to the reports required by the Basic Contract, the Contractor shall provide the following reports:

8.1 **Biweekly Progress Reports**. The Contractor shall submit biweekly progress reports that include project cost and project accomplishment for the period and cumulative accomplishment to the date of the report; material quantities; and forecast activities for the following period   The format for this report shall be discussed at the pre-construction meeting

WGI000097

**8.2 Monthly Cost Reports.** The Contractor shall continue submitting monthly cost reports to USACE, New Orleans District. The Contractor shall include in the cost reports all field and home office costs.

9    **Deliverables.**

9.1 Monthly Project Photographs. The Contractor shall take and submit a minimum of 36 exposures (3-1/2" x 5" minimum size) of photographs per month for the duration of the RA field work. Two(2) copies of each photograph shall be submitted to USACE and each labeled with the view shown, object/building shown, date taken, etc.

9.2 Draft and Final RA Completion Reports and Record Drawings. The Contractor shall prepare, assemble and submit an original and 7 copies of a Draft and Final RA completion reports with detailed record drawings describing all aspects of work accomplished during the RA.

10.  **Contractor Quality Control (CQC).** The Contractor shall provide the assurance that required levels of quality are being achieved throughout all design and coordination work, including all work performed by subcontractors, laboratories, etc. and shall be conducted in accordance with a USACE-approved CQC Plan.

10.1 **Daily Reports.** The Contractor shall provide daily CQC reports to the on-site USACE Quality Assurance Representative (QAR). The Contractor shall complete a form that depicts sequential numbering for each day of the project and shall deliver the form to the COE QAR by 12:00 p.m. the following workday.

10.2 **Normal Reporting.** The Contractor shall develop, implement and document 3-phase inspection quality checks each day in the daily CQC report. The Contractor shall report all items in specific, quantitative and definitive terms.

10.3 **Reporting of Irregularities.** The Contractor shall notify the COR of accidents, equipment failure, customer concerns, non-availability of materials, etc. The Contractor shall provide verbal notification the same business day (notification shall be made to the QAR if the COR is unavailable). The Contractor shall report these events in writing in the daily CQC report.

11   **Points of Contact.** The USACE HTRW Construction Manager will be Mr. Lee Guillory, 504-862-2934 and the USACE CORs will be Messrs. Harvey Morgan; James Montegut III, Guillory; and Ostrander. Any questions concerning technical issues, contract administration, billing, and payment should be directed to Mr. Morgan and Mr. Montegut or Mr. Guillory in their absence. The Contracting Officer is Mr. John Weatherly, (918) 669-7281. All contract questions should be directed to Mr. Weatherly.

LDEQ POC:
Mr. William N. Perry
Louisiana Dept. of Environmental Quality
Remediation Services Division

P. O. Box 82178
Baton Rouge, LA 70884-2178
Phone: 225-765-0461
Fax: 225-765-0484
Email: williamp@deq.state.la.us

Direct all LDEQ correspondence regarding remediation issues in triplicate to (1 copy directed to attention of Mr. Perry):
Keith L. Casanova, Administrator
LDEQ, Remediation Services Division
P O Box 82178
Baton Rouge, LA 70884-2178

12. **Distribution of Submittals.**

    12.1 Copies of technical comments, submittals, monthly reports, etc. shall be mailed to:

        ATTN: Mr. Lee A. Guillory - CEMVN-CD-QM
        USACE, New Orleans District
        Post Office Box 60267
        New Orleans, LA 70160-0267
        Phone: 504-862-2934
        Fax: 504-862-2896
        Lee.A.Guillory@mvn02.usace.army.mil

        The street address for FedEx mail is:

        ATTN: Mr. Lee A. Guillory - CEMVN-CD-QM
        USACE, New Orleans District
        7400 Leake Avenue
        New Orleans, LA 70118

    12.2 Subcontract Consent/Notification of Award packages shall be submitted as follows:

    Original to: (mail and FedEx)

    U.S. Army Corps of Engineers, Tulsa District
    ATTN: Mr. John Weatherly - CESWT-CT-M
    1645 S. 101st E. Ave.
    Tulsa, OK 74128-4609

    Copy to: Messrs. Morgan, Montegut and Guillory

    12.3 Cost schedule reports will be submitted as follows:

WGI000099

Original to Mr. Montegut
Copy to Mr. Guillory
Copy to Mr. Weatherly
Copy to Mr Rex Ostrander, same address as Mr. Weatherly, except CESWT-EC-E

12.4 Vouchers will be submitted as follows:

Original SF1034, SF1035, certification and highlighted back-up data FedExed to Mr. Montegut. Copy to Mr. Guillory.

12.5 WAD, WBS, travel and overtime requests shall be mailed or faxed to Mr. Montegut or Mr. Guillory.

12.6 Percent complete reports for Fixed/Base Fee/Award Fee (all T.O.s)

Original to Mr. Ostrander
Copy to Mr. Guillory and Mr. Montegut

12.7 Form 743R, Monthly Exposure Reports to Mr. Guillory.

13   **Project Close-out**. Within three (3) days after substantial completion of the work, the Contractor shall conduct a walk-through with the COR.  The COR will prepare a punch-list of items that the Contractor is responsible for correcting within five (5) days of receiving the punch-list.

14   **General Provisions**. See Contract DACA 56-94-D-0021.

WGI000100

# EXHIBIT 16



**Government**

Dennis O'Conner
Project Manager

November 7, 2000

Mr. Stevan G. Spencer
Orleans Levee District
6001 Stars & Stripes Blvd.
New Orleans, LA 70126

Subject:    Levee Board Permits and Notifications
            East Bank Industrial Area – Inner Harbor Navigation Canal

Dear Mr. Spencer:

Bobby Smith of Washington Group International Inc. (WGI) contacted the Levee
Board District on 18-Oct-00 to inquire about permits and notifications required for
demolition and remediation work Washington Group International will be performing
at the East Bank Industrial Area (EBIA) of the Inner Harbor Navigation Canal (IHNC)
under contract to the United States Army Corps of Engineers.

The 32-acre site is located between Florida Avenue and Claiborne Avenue and
extends from the canal to the floodwall. The project will prepare the site for future
construction of a new lock to replace the existing canal lock located south of
Claiborne. Project work will include removal of existing structures and installation of
temporary facilities to support the project. Project work is scheduled to begin
approximately November 27, 2000 and be complete in November 2002.

Details of temporary facilities to be constructed and the existing facilities to be
demolished are provided below. Reference to the enclosed drawings has been
provided where applicable.

### Facilities to be installed

- Two new temporary electrical feed drops at existing Levee crossing and two new
  utility poles in the office complex area. (Fig.1-1 Site Electrical Pan)
- Vehicle and equipment wash station with pit (Fig.3-1 Site Office Plan)
- Temporary potable water line for office trailers and wash station. (Fig. 1
  Construction Water System Plan & Fig. 2 Site Facilities Plumbing Plan)
- Temporary sanitary sewer line and holding tanks. (Fig. 2)

EXHIBIT
4

WGI003455

Stevan G. Spencer
November 7, 2000
Page 2

- 8-Foot permanent security fence on three sides of the site at the perimeter of the property. (Fig. 1-2)
- Grid trenching over entire site at a depth of five feet. (Drawing 25' Grid Trench Map)
- Development of barrow pit for soil to backfill (South end of site)

### Demolition and Removal

- Removal of all electrical, sewer, gas, water and telephone facilities on the site including Boland sewer lift station. (Identified as Item 114 on Figure 3-5 and Table 3-5)
- Demolition of all above ground and subsurface structures including slabs, foundations and barges etc. (Fig. 3-5)
- Excavations and remediation areas (Fig. 3-2, 3-3, 3-6 and Table 3-7)
- Removal of all wooden and steel pilings to a depth of 36-Feet

When all demolition and remedial activities have been completed, entire area will be graded, and hydro-mulched.

Should you have any questions or need additional information please contact me at **504-386-3148.**

Sincerely,


Dennis O'Conner
Project Manager

DOC:js

Enclosure(s)

Federal Projects • 3520 General DeGaulle Drive, Suite 3010 • New Orleans, Louisiana USA 70114 • Phone (504) 368-3148 • Fax (504) 368-8403
•www.wgint.com

WGI003456

# EXHIBIT 17





**STATE OF LOUISIANA**
**DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT**
P.O. Box 94245
Baton Rouge, Louisiana 70804-9245

(225) 274-4345

12-29-2000

M. J. "MIKE" FOSTER, JR.
GOVERNOR

KAM K.
MOVASSAGHI
SECRETARY

Orleans Levee District
Board of Commissioners
Suite 202, Administration Building
New Orleans Lakefront Airport
New Orleans, LA 70126

Attention:   Mr. James P. Huey, President

**PERMIT REQUEST**
**FORM OF NO OBJECTION**

This Letter of No Objection is <u>not a regulatory permit</u> and does not authorize the implementation of any project without documented approval from all appropriate regulatory authorities.

Permit Applicant: Washington Government

Form of Request:   Copy of a letter to the Orleans Levee District.

Date of Request:   11-07-2000

Applicant's Proposed Request:  Approval to conduct demolition and removal activities and to install facilities for future construction of a new lock.

Project Location:   All work will take place on a 32 acre site located between Florida Avenue and Claiborne Avenue and extending from the canal to the floodwall, in New Orleans; and in Orleans Parish, Louisiana.

The above referenced request has been examined by Ms. Geneva P. Grillo, District Design, Water Resources and Development Engineer(s) for the Department of Transportation and Development, and no objection is proffered for the proposed work, provided:

1.   Any damage to levee/floodwall caused by the construction, operation, and maintenance of the facility be repaired by the applicant, at their expense, and to the satisfaction of the Levee Board.

2.   That the Levee District be notified upon completion of the demolition activities, so that an inspection and an approval of the levee condition may be made.

3.   That the proposed work and structures do not adversely impact or prohibit the Levee District's maintenance operations, or any potential flood fight activities at the levee.

4.   That should changes in the location or the section of the existing floodwall and waterway in the generally prevailing conditions in the vicinity be required in the future, in the public interest, the applicant shall make such changes in the project concerned or in the arrangement thereof as may be necessary to satisfactorily meet the situation, and shall bear the cost thereof.

AN EQUAL OPPORTUNITY EMPLOYER
A DRUG FREE WORKPLACE



WGI040965

12-29-2000
Page 2

Yours very truly,

CURTIS PATTERSON, P.E.
ASSISTANT SECRETARY, PUBLIC
WORKS & INTERMODAL
TRANSPORTATION

for: D. J. WEBRE, JR., P.E.
PORTS & FLOOD CONTROL CHIEF

5060/GPG/AG

cc:   Mr. John E. Evanoo
      Ms.  Geneva P. Grille
United States Army Corps of Engineers
Coastal Management Section
Louisiana Department of Wildlife & Fisheries
State Land Office
Division of Water Pollution Control
Orleans Parish City Council
Washington Government
  Federal Projects
  35520 General DeGaulle Drive, Suite 3010
  New Orleans, LA 70114

WGI040966

# EXHIBIT 18



# DEPARTMENT OF THE ARMY
NEW ORLEANS DISTRICT, CORPS OF ENGINEERS
P.O. BOX 60267
NEW ORLEANS, LOUISIANA 70160-0267



REPLY TO
ATTENTION OF:

April 6, 2001

Operations Division
Technical Support Branch

Mr. Stevan Spencer, Chief Engineer
Board of Commissioners
Orleans Levee District
202 Administration Building
New Orleans Lakefront Airport
New Orleans, Louisiana 70126



Dear Mr. Spencer:

We have received a copy of a letter request dated November 7, 2000, addressed to your Board, from Washington Group International, Inc., concerning permission to remove existing structures and install temporary facilities on the floodside of the Inner Harbor-Navigation Canal (IHNC) east levee/floodwall, between approximate baseline stations 13+00 and 56+00, in Orleans Parish, Louisiana. The proposed work is necessary to accommodate our IHNC Lock Replacement Project scheduled to be done in this area.

The applicant was advised to submit additional information and revised drawings for our further review. Subsequently, by letter dated January 17, 2001, the applicant submitted the necessary information and revised drawings which have been reviewed and approved. Therefore, we have no objection to your Board's issuance of a permit for the proposed work provided:

a. The work is accomplished in accordance with the above referenced letters and accompanying revised drawings.

b. The temporary facilities are removed upon completion of the IHNC Lock Replacement Project.

c. Any damage to the levee/floodwall resulting from the applicant's activities is repaired at the applicant's expense.

This letter of no objection is based upon engineering criteria, and no interpretation or comments regarding local laws, zoning, or ordinances concerning property rights, etc., have been made. Additionally, this letter of no objection does not obviate the applicant's requirement to obtain federal, state, or local permits required by law.

EXHIBIT

7

-2-

Please furnish this office a copy of your permit if the applicant's proposal is approved by your Board.

Sincerely,

Gregory E. Breerwood
Deputy Chief, Operations Division

Copies Furnished:

LA DOTD, Baton Rouge
LA DOTD, New Orleans
Washington Group International, Inc.
    Attn:  Dennis O'Conner
Orleans Levee District   Attn:  Tony Bertucci

# EXHIBIT 19

April 11, 2001

Mr. Dennis O'Conner
Project Manager
Washington Group International, Inc.
3520 General DeGaulle Drive
Suite 301D
New Orleans, Louisiana  70114

RE:    PG 01-14
       PERMISSION TO DEMOLISH AND REMOVE EXISTING STRUCTURES AND TO
       INSTALL TEMPORARY FACILITIES ON THE FLOOD SIDE OF THE INNER
       HARBOR NAVIGATION CANAL (IHNC) EAST LEVEE/FLOODWALL, BETWEEN
       BASELINE STATIONS 13+00 AND 56+00, TO ACCOMMODATE NEW IHNC
       LOCK REPLACEMENT PROJECT, IN ORLEANS PARISH

Dear Sir:

We are in receipt of your letter dated November 7, 2000 requesting permission for the
subject project.

The Board of Commissioners of the Orleans Levee District (OLD) grants permission to
Washington Group International, Inc. (hereinafter referred to as "Permittee") for the subject
project provided that:

1.     All work is done in accordance with the above referenced letter.

2.     All provisions of the letter of no objection from the U.S. Army Corps of Engineers
dated
       April 6, 2001 are followed.

3.     All provision from the Louisiana Department of Transportation in their letter of
       December 29, 2000 be strictly adhered to.



EXHIBIT

8

PG01-14
April 11, 2001
- Page 2 -

As further consideration for the issuance of the aforesaid permit, Permittee understands and agrees that any and all improvements constructed pursuant hereto are done so at the Permittee's sole risk, and in the future, should any changes in the existing servitude be required in the public nterest, this permit is NULL AND VOID and Permittee agrees and covenants to promptly remove any and all improvements constructed on District property in the area encompassed by this permit, at Permittee's sole cost and expense, and without any rights for reimbursement whatsoever against this Board for any costs or damages related or unrelated thereto.

This permit is granted subject to the express condition that Permittee shall protect, defend, indemnify, and keep, save and hold forever harmless the OLD from any and all liabilities, losses, costs, claims, damages, demands, judgments, attorneys' fees, expenses, penalties, fines, lawsuits under any theory of law (including strict and/or absolute liability) and legal actions of any kind and nature arising out of any accident or any occurrence, negligent or otherwise, causing injury including death, to any person or persons or damage to property, directly or indirectly due to, resulting from, or growing or arising out of the use and/or occupation of the subject OLD property or the work to be done thereon or on adjacent property, including but not limited to such as may be imposed for the violation of any law, ordinance, or regulation (federal, state, or local); and, Permittee shall defend, indemnify and hold forever harmless the OLD from and against any and all costs and expenses in connection with the foregoing, including court costs, related litigation expenses and reasonable attorneys' fees that may be incurred by the OLD; provided, however, that nothing herein shall be construed as indemnifying the OLD against its own negligence or that of its officers, agents, servants, or employees when such negligence is the sole and only direct cause of such loss, damage, injury or death and only when there is no negligence on Permittee's part which is a contributing cause of such loss, damage, injury or death.   Only those matters that are the result of the sole negligence of the OLD and its employees and agents and not caused or contributed by the negligence, fault or strict liability of  Permittee or any third party shall be excluded from Permittee's duty to defend, indemnify, and hold harmless the OLD.   Furthermore, Permittee shall be liable for all attorneys' fees and costs incurred by the OLD if it must retain counsel or file suit to enforce the terms of this defense and indemnity agreement. The OLD shall notify Permittee of any claim, demand, suit or other action brought on or raised against the OLD for which Permittee may be liable as stated above. Permittee further agrees that the obligations of the Permittee to hold forever harmless, defend and indemnify the OLD, as required under the terms of this agreement, shall be effective and enforceable by the OLD against the Permittee upon notice given by the OLD to the Permittee of any said indemnified liabilities, claims, demands or lawsuits asserted by any party or third person against the OLD. The OLD expressly reserves the right to participate in its defense with counsel of its own choosing, and the charges of such counsel shall be reimbursed by Permittee.

In addition to any other provisions provided herein, Permittee specifically assumes any and all responsibility for property damage to the OLD's property, and to personal injury to the OLD's officers, agents, servants or employees caused by, resulting from, arising out of or connected with PG01-14
April 11, 2001
- Page 3 -

the use of the Premises and/or any buildings and improvements thereon or caused by the activities of Permittee and/or its invitees and/or licensees on the subject OLD property. In addition, to any hold harmless previously provided for hereinabove, Permittee does hereby agree
to defend, indemnify and hold the OLD forever harmless from any legal liability or responsibility from any and all liabilities claims and causes of action for injury, damage or otherwise, of and by and to any person, firm or corporation or their property, occurring on the subject OLD property, resulting from or arising out of any defect or condition of the OLD's property that is not part of the subject OLD property.

It is further hereby expressly agreed that the obligations of Permittee under this Permit shall survive the expiration and/or termination of this Permit granted by the OLD.

Further provided that this permit shall automatically expire if construction of the permitted facility has not started within six months of the date hereof or it is not completed within one year of the date of this letter. In any event, this permit shall expire one year from the date hereof.

If the permitted work described herein has not been completed on expiration hereof, the Permittee shall apply for a new permit for which the prevailing fee will be charged.

(For use on Mississippi River batture permits only: Further provided that the consent herein given is conditioned upon Permittee being the owner of the riparian property described above or upon Permittee having obtained the written authorization of the riparian proprietor to Permittee use of said property for the purpose mentioned).

Permittee is solely responsible for inspecting and maintaining all improvements covered by this permit. Permittee shall be responsible for the upkeep of their improvements regardless of damage by others or by weather conditions. Permittee shall restore all Board property to its original condition as it was prior to improvements.

Prior to beginning construction, Permittee shall contact the Board, telephone (504) 243-4045, in order that inspection can be arranged for compliance with the conditions of this permit. The Board maintains at all times all rights to revoke this permit with Permittee agreeing to promptly removing any and all improvements contained in the area encompassed by this permit at Permittee's sole cost and expense, and without any rights for reimbursement whatsoever against this Board for any costs or damages related or

unrelated thereto. Should the Chief Engineer of the Board determine that the Permittee has violated any condition of this permit, including but not limited to, violation of Permittee's responsibility for maintaining all improvements covered by this permit, the Chief Engineer may at his sole discretion and without any appeal or recourse by Permittee revoke and terminate this permit, without notice to permittee.

This permit is granted based upon engineering criteria, and no interpretation or comments regarding local laws, zoning, or ordinances concerning property rights, etc., have been made. Additionally, this permission does not obviate Permittee's requirement to obtain federal state or PG01-14
April 11, 2001
- Page 4 -


local permits required by law, and no work should commence until all necessary permits are acquired. This permission is being granted to the Permittee and is not transferable to any other person, company or agency.

Enclosed for your signature are duplicate original permits. Please sign both as indicated and return to this office for execution. A duplicate original permit will be forwarded to you upon completion.

Sincerely,


Stevan G. Spencer, P.E.<br>Chief Engineer

SGS:ABB:dba

xc:    Lionel Thompson, Asst. O & M Director
       Brian Keller, USACE
       Geneva Grille, LADOTD


THE WASHINGTON GROUP INTERNATIONAL<br>AGREES TO THE CONDITIONS CONTAINED HEREIN


Signature


Title


Date