# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **In re** | **CIVIL ACTION NO. 05-4182** |
| **KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | **SECTION "K" (2)** |
| | **JUDGE DUVAL** |
| **PERTAINS TO: MRGO** | **MAGISTRATE JUDGE WILKINSON** |

_____

## AMICUS BRIEF IN OPPOSITION TO WASHINGTON GROUP INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT

**May It Please the Court:**

Plaintiffs in several consolidated individual suits[1] submit this *amicus* brief in Opposition to

_____

[1]   CII Carbon, L.L.C.; Entercom Communications Corp.; Quintessa Huey and Caryn L. Fong as trustees of the Huey & Fong Trust, and Amy Huey as trustee of the Kenneth Huey Family Trust; Dr. Frederick Keppel and Dr. Frederick Keppel, a Professional Medical Corporation; Radio Parts, Inc.; Harold T. Sloan, both individually and on behalf of his minor child, Zachary Sloan, Bambi G. Shamah, Michelle Shamah, and Megan Shamah; Universal Health Services, Inc.; WETCO Restaurant Group, LLC; and White III, LLC.  *See CII Carbon, L.L.C. v. United States*, No. 07-4995 (E.D. La. filed Aug. 29, 2007); *CII Carbon, L.L.C. v. United States*, No. 07-5355 (E.D. La. filed Sept. 4, 2007); *Entercom Communications Corp. v. United States*, No. 07-4976 (E.D. La. filed Aug. 29, 2007);  *Entercom Communications Corp. v. United States*, No. 07-5375 (E.D. La. filed Sept. 4, 2007); *Quintessa Huey & Caryn L. Fong as Trustees of the Huey & Fong Trust v. United States*, No. 07-4550 (E.D. La. filed Aug. 28, 2007); *Keppel v. United States*, No. 07-5007 (E.D. La. filed Aug. 29, 2007);  *Keppel v. United States*, No. 07-5343 (E.D. La. filed Sept. 4, 2007); *Radio Parts, Inc. v. United States*, No. 07-4555 (E.D. La. filed Aug. 28, 2007); *Sloan v. United States*, No. 07-5013 (E.D. La. filed Aug. 29, 2007); *Sloan v. United States*, No. 07-5344 (E.D. La. filed Sept. 4, 2007); *Universal Health Servs, Inc. v. United States*, No. 07-5016 (E.D. La. filed Aug. 29, 2007); *Universal Health*

the Motion for Summary Judgment filed by Washington Group International, Inc. ("WGI").  WGI

has asked this Court to apply the government contractor defense in order to shield it from state tort

liability.  Plaintiffs assert that numerous genuine issues of material fact exist in this litigation and

that WGI cannot meet its summary judgment burden regarding the government contractor defense.

Therefore, Plaintiffs request that this Court deny WGI's motion.

Plaintiffs liaison counsel ("PSLC") has filed a separate opposition to WGI's motion for

summary judgment, which accurately cites the fact pertaining to WGI's involvement with the causes

of action asserted in the Amended MRGO Class Action Complaint.  While Plaintiffs herein adopt

the facts as presented by PSLC, Plaintiffs herein focus on the legal authority cited by WGI in its

motion, as applied to those facts.

## I.    Government Contractor Defense

The government contractor defense has its roots in the United States Supreme Court ruling

of *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 60 S. Ct. 413 (1940), when the Court found

that an independent contractor was immune from liability for damages caused by work authorized

and directed by the United States Government.  The United States Supreme Court later expanded

upon the *Yearsley* decision in the seminal government contractor defense ruling in *Boyle v. United*

*Technologies Corp.*, 487 U.S. 500, 108 S. Ct. 2510 (1988).

In *Boyle*, an independent contractor performing its obligation under a procurement contract

---

*Servs, Inc. v. United States*, No. 07-5254 (E.D. La. filed Aug. 30, 2007); *Universal Health Servs, Inc. v. United States*, No. 07-5286 (E.D. La. filed Aug. 31, 2007); *Universal Health Servs, Inc. v. United States*, No. 07-5350 (E.D. La. filed Sept. 4, 2007); *WETCO Restaurant Group, LLC v. United States*, No. 07-5012 (E.D. La. filed Aug. 29, 2007); *WETCO Restaurant Group, LLC v. United States*, No. 07-5012 (E.D. La. filed Sept. 4, 2007); *White III, LLC v. United States*, No. 07-4979 (E.D. La. filed Aug. 29, 2007); *White III, LLC v. United States*, No. 07-5356 (E.D. La. filed Sept. 4, 2007).

for the supply of military helicopter parts was sued in connection with a U.S. Marine helicopter crash that killed the pilot.  The pilot drowned when the helicopter crashed because he was unable to escape due to an allegedly defective device designed by the defendant.  The court of appeals overturned a jury award in favor of the deceased pilot's father, finding that the contractor could not be held liable for the allegedly defective design under the military contractor defense.  487 U.S. 500, 503.  The Supreme Court granted certiorari.

The Supreme Court reasoned that federal law pre-empted state law when a "'significant conflict' exists between an identifiable 'federal policy or interest and the [operation] of state law,' or the application of state law would 'frustrate specific objectives of federal legislation.'"  *Id.* at 507 (citation omitted).  The Court found two areas of "uniquely federal interests" were involved: (1) obligations to and rights of the United States under its contracts are governed exclusively by federal law; and, (2) civil liability of federal officials for actions taken in the course of their duty is controlled by federal law.  *Id.* 504-05.

In *Boyle*, the Court refined the requirements for a type of derivative immunity for government military contractors, holding that a military contractor was entitled to a federal defense from a state law tort claim when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  *Id.* at 512.  The first and second requirements are "designed to ensure that 'a conflict with state law exists'" and to "assure that the suit is within the area where the policy of the 'discretionary function' would be frustrated."  *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 93 (2d Cir. 2008); *Boyle*, 487 U.S. at 512.  The third condition eliminates the incentive for manufacturers to take advantage

3

of this defense by withholding from the government their knowledge of risks. *Id.* This Court in this very suit boiled down the elements an independant contractor must prove to invoke this defense: "(1) the government must have approved 'reasonably precise' specifications; (2) the equipment must have conformed to those specifications; and (3) the supplier/contractor must have warned of those equipment dangers that were known to the supplier/contractor but not the government." *In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 4219351, *5 (E.D. La. Nov. 27, 2007).

In *In re World Trade Center Disaster Site Litigation*, 456 F. Supp. 2d 520 (S.D.N.Y. 2006), the court discussed contractor immunity. Notably, the court found that there is **no** immunity for a government contractor when the Government does not closely supervise the contractor or the specifics of the project, because in that case it would be the **contractor** exercising the discretion on the project, thus opening the contractor to liability:

> The crucial element is that the government contractor acted in compliance with "reasonably precise specifications" approved by the United States. *Boyle,* 487 U.S. at 512. The very essence of the defense is to "prevent the contractor from being held liable when the government is actually at fault," *Trevino,* 865 F.2d at 1478, for "[w]hen a contractor acts under the authority and direction of the United States, it shares in the immunity enjoyed by the Government." *Zinck,* 690 F.Supp. at 1333 (*citing Yearsley*, 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554). If, however, the private actor was acting independently of precise government directions and approvals, the defense does not apply. *Trevino,* 865 F.2d at 1480; *see also Tate v. Boeing Helicopters*, 55 F.3d 1150 (6th Cir.1995*)*. Furthermore, the government must supervise and control the contractor's actions, for if it does not, or if it fails to exercise supervisory judgment as to the particularities of the project, state law allowing lawsuits for negligence and federal policy providing for immunity are not in conflict and displacement of state law may not be warranted. *Tate,* 55 F.3d at 1154. In the latter case, the discretionary functions of the government are not implicated and the government contractor defense as enunciated in *Yearsley* and *Boyle* may not apply. *Trevino,* 865 F.2d at 1480.

> When the government merely accepts, without any substantive review or evaluation, decisions made by a government contractor, then the contractor, not the government, is exercising discretion. A rubber stamp is not a discretionary function; therefore, a rubber stamp is not 'approval' under *Boyle.*

4

*Id.* at 562-63.

In the present suit, the government contractor defense is inapplicable and WGI's motion for summary judgment should be denied. The Government failed to approve reasonably precise specifications and it failed to conduct a substantive review or evaluation of WGI's plans. The Government failed to supervise WGI's decisions and it simply rubber stamped many actions that WGI presented. WGI also was aware of the danger and hazards involved in backfilling the excavation with sand but it failed to inform the Government. Given the Government's insufficient supervision and control over the design and specifics of the contractor's work, its discretionary functions were never implicated and the government contractor defense cannot apply.

**A. The Government's discretionary function was never implicated because it did not approve or conduct a substantive review or evaluation of the contractor's decisions.**

As WGI asserts when discussing the first prong of the government contractor defense, in order for the defense to apply, the Government must have approved reasonably precise specifications for the project. This initial requirement under *Boyle* ensures that the government's discretionary function is implicated such that federal pre-emption is warranted.

The United States Fifth Circuit Court of Appeals in *Trevino v. General Dynamics Corp.*, 865 F.2d 1474 (5th Cir. 1989) held that "approval" required more than a rubber stamp. The court said that "when the government merely accepts, without any substantive review or evaluation, decisions made by a government contractor, then the contractor, not the government, is exercising discretion." *Id.* at 1480. Further, the Government does not exercise discretion by the "mere retention of a right of 'final approval' of a design nor by the mere approval of the design without any substantive review or evaluation of the relevant design features." *Id.* at 1480. The court finally noted that the purpose

of the test established by *Boyle* "is to deny the defense to a government contractor 'that is itself ultimately responsible for the design defect.'" *Id.* at 1481.

 In this case, the Army Corps of Engineers ("Corps"), essentially rubber stamped and failed to supervise the conduct of WGI in the demolition, excavation, and environmental remediation services preparing the East Bank Industrial Area ("EBIA") for work on the lock system.  While the Corps claims that it worked closely with its contractor, there is a genuine factual dispute as to the control and level of involvement between the Corps and WGI.  Indeed, the existence of a genuine factual dispute has not escaped the attention of this Court in this case.  In a prior ruling, this Court noted that there was a question of the Corps's control, involvement, and oversight in WGI's conduct. *See In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 4219351 (E.D. La. Nov. 27, 2007) at *7.

The Corps did not design or develop the work plans to be carried out by WGI.  Rather, the Corps left it up to WGI's discretion to formulate a plan and carry out the work as decided by WGI. In fact, the highest ranking Corps employee on site testified that the Corps did not perform the mandatory engineering evaluation because the Corps relied on WGI's advice and design.[2]

WGI cites to a number of cases in its memorandum that are distinguishable from the circumstances of this case.  For example, WGI cites *In re Air Disaster at Ramstein Air Base*, 81 F.3d 570 (5th Cir. 1996) for the proposition that if the "government did not leave 'the critical design decisions to the private contractor,' but worked closely with the defendants every step of the way" then the Government has not acted as a rubber stamp and the contractor defense would apply.  *Id.* at 575.

In *In re Air Disaster*, a military plane crash resulted in the death of thirteen servicemen and

---

[2]  *See* PSLC's Opposition at Exhibit 8, Corps 30(b)(6) deposition transcript, pg. 157:24 thru 161:21.

their families filed suit against the defense contractor that built the plane.  The contractor asserted the government contractor defense.  The court found that the Government had worked closely with the contractor from the planning stages to full production, the Government provided precise specifications, and it inspected and supervised every aspect of production of the plane.  The court also noted that the plane had been used by the Air Force for over twenty years without any significant problems and over those twenty years the Air Force remained actively involved throughout review, development, and testing of the plane's design.  *Id.* at 575.

In the present suit, the Government and WGI were not involved in designing and testing the work plans formulated by WGI over a twenty-year period.  The Corps entered into an indefinite delivery-indefinite quantity contract fo the remediation of various hazardous, toxic, and radioactive waste sites in the southwest region.  WGI was not even tasked to prepare and demolish existing structures in the EBIA site until July 12, 1999.  Further, this was a single project governed by a performance contract rather than a design contract, and the Corps rubber stamped the plans presented by WGI.  The design, review, and testing of an Air Force plane in no way compares to the work being performed by WGI.  The design and planning stages that go into building an aircraft for military necessarily requires the input and active involvement of the military.  The government's discretionary function is implicated to a much greater extent in a military setting than in the situation where the Corps has hired a contractor to excavate and clean up a future construction site.

WGI's reliance upon *Stout v. Borg-Warner Corp.*, 933 F.2d 331 (5th Cir. 1991) is also misplaced, given that it is factually distinguishable from the Corps's involvement in WGI's work. In *Stout*, an Army air conditioner repairman was injured while working on an air conditioning unit, and he sued the contractor that built the unit.  The court found that the Government had conducted

a thorough review of the design of an air conditioning unit to be used on military bases.  The Government had reviewed the critical design features, critiqued those designs, tested and evaluated prototypes for months, and had used a very similar design for over ten years.  Based on those facts, the court concluded that the Government had not merely rubber stamped the design but was involved and properly approved the specifications of the air conditioning unit.

The decision in *Stout* does not apply to this situation because the Corps has not used WGI's services in this exact manner for over ten years.  The court in *Stout* appeared to find that the length of the Army's familiarity and relationship with the design of the unit and the contractor as evidence that more than a rubber stamp had occurred.  Here, WGI was hired to perform a single line of work — excavation and clearing of the EBIA site — so the Corps could not have developed the long-working relationship that existed between the Government and contractor in *Stout*.

Lastly, WGI again cites to a case involving the military and a defense contractor.  In *Tate v. Boeing Helicopters*, 55 F.3d 1150 (6th Cir. 1995), the manufacturer of Army helicopters was sued in connection with a crash that killed two servicemen.  The crash was caused by a defect in the helicopter's tandem hook system and the plaintiffs sued the defense contractor.  The court found that a twelve-year development process during which the Government had approved drawings, provided detailed changes, and specifically required certain engineering changes, demonstrated that the Government was heavily involved in the design of the helicopter parts.  Given this level of involvement, the Court ruled that the Government had acted in a discretionary manner, satisfying the first element of the *Boyle* test, and ultimately it applied the government contractor defense.

Once again, the Corps's interaction with WGI hardly reaches the level present in *Tate*.  There was no twelve-year development process regarding WGI's work, the Corps did not provide detailed

8

changes to WGI's plans nor did it mandate specific engineering aspects be used. Two of the most important issues surrounding this suit are WGI's improper backfilling and compaction of certain excavations sites, and at no time did the Corps mandate what material or compaction processes WGI was to use. The fact that the Corps did not provide or approve detailed specifications regarding backfilling and compaction at such a sensitive and vital point of the New Orleans flood prevention and levee system demonstrate the lack of involvement and control the Corps had over the project.

The cases WGI cites demonstrate a very involved, back-and-forth relationship between Government and contractor. But those very facts were absent in the working relationship between the Corps and WGI. It is clear from the law and facts of this case that there is a genuine issue of fact as to the control and involvement the Corps had over the work of WGI. The Corps merely rubber stamped the specifics and plans of WGI, and therefore it did not interject into that work the Corps's own discretionary function. Therefore, WGI has not satisfied the first element under the government contractor defense at this stage of the proceedings, and the court should deny WGI's motion for summary judgment.

**B.     <u>WGI's work failed to conform to the specifications.</u>**

As for the second prong of the government contractor defense, *Boyle* additionally requires that the equipment or work provided conforms to reasonably precise specifications. 487 U.S. at 512. As noted above, the "specifications" provided by the Corps were not reasonably precise and amounted to little more then a broad performance request. Additionally, the limited guidance and input provided by the Corps was not subjected to the review process necessitated for Government approval. The lack of reasonably precise specifications and the rubber stamp authorization provided by the Corps negates the applicability of the government contractor defense. Further, WGI's work

9

also fails to meet the second prong of the *Boyle* analysis through failure to conform to the sparse specifications the Corps did provide. *Id.* at 508. Specifically, WGI failed to comply with the specifications provided by the Corps in several material aspects, including a failure to obtain the requisite permits and to perform proper geotechnical evaluations.

WGI failed to secure the requisite permits demanded by the Corps. As noted by the PSLC's Opposition to WGI's Motion for Summary Judgment, the Corps produced a Statement of Work for the Project Site Development and Remedial Action of the EBIA requiring WGI to furnish "all necessary permits, licenses [. . .] for the project site."[3] Despite this specified requirement, WGI did not obtain the requisite permit. The failure to obtain the permit constitutes a failure to meet the specifications of the limited performance plan identified by the Corps. The failure caused direct damages to plaintiffs, as the permit would have provided an additional source of oversight and review which could have mitigated, or possibly averted, the levee breach.

Further, WGI failed to perform or incorporate mandatory geotechnical evaluations into the dredging and removal operations. The EBIA flood wall was built on alluvial deposits with pervious organic zones. The pervious organic zones allow water to pass through the soil layers and seep under the flood wall, weakening the integrity of the wall. Due to the adverse effect of under-seepage on the flood wall, the Corps considers it mandatory that a geotechnical evaluation be performed on excavations, such as the two excavations at the Saucer Marine and Boland Marine sites. But neither the Corps nor WGI performed testing that qualified as proper geotechnical evaluations. The lack of testing further evidences a failure to comply with precautionary specifications of the project.

The inconsistencies and questionable adherence to the specifications creates a genuine issue

---

[3] *See* PSLC's Statement of Disputed Facts, at 8 n. 31.

of material fact.  In fact, one of the cases cited by WGI supports the denial of government contractor immunity on the basis of similar inconsistencies.  In *Beaver Valley Power Co. v. National Engineering & Contracting Co.*, 883 F.2d 1210 (3d Cir. 1989), the appellate court reversed the district court's grant of summary judgment in favor of the contractor defendant.  In *Beaver Valley*, the plaintiff, a hydraulic dam owner, sued the defendant contractor after the defendant's construction of a cofferdam that resulted in damage to the hydraulic dam and a loss of revenues.  The defendants alleged that they were immune from liability as the cofferdam was the result of a compliance with a Pennsylvania Department of Transportation contract.  The district court granted summary judgment in favor of the defendants on the basis of the government contractor defense.  But the appellate court reversed the summary judgment and noted "the record indicates several genuine issues of material fact as to what were the specifications of the cofferdams, as to which specifications were 'approved' by [Pennsylvania Department of Transportation], and concerning whether and to what extent specifications were followed by [the Defendant]."  *Id.* at 1217.

In the current suit, the record also indicates instances of material fact concerning the extent of the specifications and WGI's compliance.  As noted, WGI failed to obtain permits required under the limited specifications.  Additionally, vital evaluations, which could have provided notice of the weakening of the flood wall, were neglected.  The failure to follow the performance guidelines draws WGI's performance into question and eliminates the immunity provided by the government contractor defense.

In an attempt to bolster the lack of adherence to the specifications, WGI advances several arguments.  WGI first asserts that any form of written acceptance by the United States constitutes

compelling evidence that the work met the government's specifications.[4] But the case cited by WGI in support of this broad proposition does not extend its holding to every "form or report." Rather, it specifies that the issuance of a specific form, a DD Form 250, may establish an item's conformity. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001). Further, the argument is unsound and absurd on its own terms. In practice, WGI's argument would shield contractors from liability simply for receiving a completion of work form, regardless of whether the work is in compliance with the outlined specifications. The second prong of the *Boyle* analysis was not intended to be without import. The prong is intended to ensure that discretionary decisions made by the Government are not cause for imposing liability on the Government. Compliance with the second step of the *Boyle* analysis is meant to protect the Government. The analysis does not serve as a shield for non-compliant defendants that obtain a generic completion certificate. In addition, the generic approval form provided by an agency may not reflect an in-depth and complete inspection of the work for evidence of compliance. Clearly, broadening the second step of a *Boyle* analysis to include the issuance of any "form or report" would defeat the in-depth analysis necessitated by the Supreme Court and render the second prong without effect.

WGI's second argument for the compliance with Government specifications is likewise flawed. In essence, WGI alleges that the Corps supervised and controlled implementation of the specifications and that the control demonstrates compliance with the specifications.[5] But the facts before the Court refute the supervision and control argument. As noted, the Corps played a passive role in the excavation operations and preferred to defer to the judgment of WGI. The rubber stamped

---

[4] *See* WGI's Memorandum of Law in support of Motion for Summary Judgment at 49.

[5] *See* WGI's Memorandum of Law in support of Motion for Summary Judgment at 48-49.

approval provided by the Corps does not constitute the supervision and control necessary to substantiate a contractor's compliance.  Further, the poor communication of information between the Corps and WGI  negates the possibility that the Corps exercised supervision and control over the project.  As noted, there was a clear lack of communication between WGI and the Corps.  For example, there was a lack of communication concerning permits and  general confusion over which party properly bore the responsibility of tasks, such as geotechnical evaluations.  The discord between the specifications of the Corps and the actions of WGI indicate the passive approach adopted by the Corps.  If the Corps had truly been integrally involved in the implementation of the design, then the disconnect concerning the permits and geotechnical analyses would have been appropriately resolved in line with the specifications.

In a third attempt to establish compliance, WGI argues that compliance is achieved if the work is accepted and used by the Government agency.[6]  But the cases cited by WGI involve a depth of acceptance and use not present in the current suit.  In *Kerstetter v. Pacific Science Co.*,  210 F.3d 431 (5th Cir. 2000), the mother of a deceased Navy pilot sued the manufacturer of the pilot restraint system when the system malfunctioned and the pilot was inadvertently released from the plane.  The district court granted summary judgment in favor of the contractor on the basis of government contractor immunity and the Fifth Circuit affirmed.  The court emphasized the coordinated effort of the Navy and the manufacturer in the specifications of the pilot restraint system as "all drawings were approved by the Navy through thorough review and training sessions." *Id*. at 434.  In fact, "once approved, these drawings could not be modified without Navy approval." *Id*.  In addition, the Navy "specifically tested the [plane's pilot restraint system] during its evaluation of the aircraft." *Id*.

---

[6] *See id*. at 49.

at 437.

WGI asserts that the acceptance of performance analysis in *Kerstetter* is directly applicable to the current suit.  Notably, WGI fails to mention that the "extensive acceptance and use" required for the government contractor defense was met in *Kerstetter* by the use and testing of the previous model of the pilot restraint system for a period of twenty years.  *Id*.  Further, the lack of participation by the Corps differs from the express control exhibited by the Navy in *Kerstetter*.  In contrast to the active involvement by the Navy, the Corps elected to rely on the expertise, specifications, and representations of WGI.  Further, the "extensive acceptance and use" of the plane's pilot restraint system in *Kerstetter* referred to the use of the previous model of the plane "for 20 years," while the case at issue involves a simple rubber stamp seal of approval issued immediately before the failure of the design.  *Id*.

In addition, WGI cites *Kleemann v. McDonnell Douglas Corp.*, 890 F. 2d 698 (4th Cir. 1989), and argues that compliance is achieved when "there is a continuous exchange between the contractor and the government."[7]  But *Kleemann* is materially distinguishable from the issue before the Court.  *Kleemann* involved an extensive give-and-take process accompanied by six years of Navy test flights.  *Id.* at 702-03.  Further, "the Navy exercised complete discretion over suggested design changes."  *Id.* at 703.  As previously noted, the relationship between the Corps and WGI involved deference by the Corps to WGI's judgment.  Further, the Corps demanded permits and evaluations that WGI failed to obtain.  The lack of communication and the irreconcilable positions on permits and geotechnical evaluations evidences a lack of a continuous exchange between the contractor and the government.

---

[7] *Id.*

Overall, the lack of a meaningful approval process and reasonably precise specifications is compounded by WGI's failure to follow the limited guidance provided by the Corps. WGI's failure to obtain permits and sub-soil evaluations, at the least, prevented the flow of information necessary to adequately complete the project. The failure to follow the sparse specifications also prevents the application of government contractor immunity.

### C.    WGI failed to inform the Government of dangerous conditions that it had actual knowledge of and would have influenced the Corps' decision making process.

The third condition under *Boyle* is that the contractor is not aware of reasons not known to the Government why the application is unsafe or unreasonable. Under *Boyle*, a contractor has a duty to warn the government of dangers about which it has actual knowledge. *Miller v. Diamond Shamrock*, 275 F.3d 414, 422 (5th Cir. 2001). The Supreme Court included this requirement to eliminate any incentive for the contractor to withhold information that might be relevant to the Government's discretionary function.

In the present suit, WGI had actual knowledge of the dangers involved in using certain material to backfill the excavations it had performed but failed to inform the Corps as the nature and extent of those dangers. In doing so, WGI prevented the Corps from exercising its discretionary function in analyzing and dealing with the potential dangers. WGI's conduct does not satisfy the third *Boyle* condition, and therefore the government contractor defense cannot apply.

WGI cites *Miller* in an attempt to support its failure to inform the Corps about the nature of the soil revealed by the exploratory drilling.[8] 275 F. 3d 414 (5th Cir. 2001). In *Miller*, individuals affected by the handling of Agent Orange sought recovery from the manufacturer of the product.

---

[8] *See* WGI's Memorandum of Law in support of Motion for Summary Judgment at 50.

The Fifth Circuit affirmed the summary judgment granted in favor of the manufacturer on the basis of the military contractor defense. In consideration of the third condition of *Boyle*, the court noted that "the government possessed information about the potential dangers of Agent Orange that was as great as, if not greater than, that possessed by the defendants." *Id.* at 421. In essence, the court affirmed the military contractor defense on the grounds that the government was fully aware of the risks and made a discretionary military decision that the court was unwilling to second guess.

The *Miller* court's recognition of a discretionary decision exercised with full awareness by the government stands in sharp contrast to WGI's failure to communicate a material risk concerning the nature of the soil. In *Miller,* the court noted that the Government was aware of the risks of Agent Orange and made a discretionary decision to contract for the product. In contrast, WGI was the only party in possession of the specific information related to the geology of the soil at the Saucer Marine and Boland Marine sites. The failure to apprise the Corps of the relevant information prevented the possibility of a discretionary decision. In essence, WGI possessed specific knowledge concerning a risk and failed to pass the information to the government. The failure of WGI to apprise the Corps of a specific and hidden risk is clearly distinguishable from the Government's election to contract for Agent Orange with full awareness of the possible adverse health implications. The failure to communicate the risks revealed by the borehole analysis and to recommend a safe course of action evidences WGI's failure to communicate a known, dangerous condition to the government.

WGI also attempts to draw an analogy between the issue before the court and the Fifth Circuit's analysis of the government contractor defense in *Kerstetter.* 210 F. 3d 431. As noted, *Kerstetter* involved a suit by the representatives of a deceased Navy pilot against the manufacturer of a failed pilot restraint system. The Fifth Circuit upheld the government contractor defense and

16

briefly outlined the third part of the *Boyle* test.  WGI cites *Kerstetter* and claims that the contractor is not required to "warn the government of defects about which it only should have known." *Id.* at 436.  But WGI fails to acknowledge that the borehole analyses provided WGI with **actual** knowledge of the dangerous condition of the soil and the potential for under-seepage.  The results of the analyses, which were known to WGI, demonstrated a real risk to the integrity of the levee wall.  The known risk should have been communicated to the Corps.

Plaintiffs are not arguing that WGI is required to report "defects about which it *should* have known."  Rather, Plaintiffs assert that WGI is implicated for its **actual** knowledge of defects that were not communicated to the Corps.[9]  In fact, releasing WGI from liability would result in the exact situation the third step of the *Boyle* analysis is intended to protect against.  In *Boyle,* the United States Supreme Court noted, "the third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability." 487 U.S. at 512.  The position asserted by WGI directly challenges the accountability established by the third condition of *Boyle* through an attempt to characterize a known risk within the knowledge of the manufacturer as a latent defect.  WGI's argument should be rejected to enforce the duty of a government contractor to inform the government of risks within the contractor's actual knowledge.

Lastly, WGI asserts that a contractor can also satisfy the third *Boyle* condition by showing the United States's knowledge of potential risks either equaled or exceeded the contractor's knowledge.  But this proposition is not found in the *Boyle* decision.  The only place this idea is even

---

[9] *I d.* at 51.

17

mentioned is in *Kersetter*, and even then it is found in a footnote containing dicta specific to the facts of the case.  210 F.3d at 438 n.9.  *Boyle* requires that the contractor inform the Government of any dangers it has actual knowledge of so that the Government can analyze that danger and exercise its discretionary function.  The purpose is to have the contractor keep the Government's discretion intimately involved in the decision making process and introducing this exception to *Boyle* undermines the premise behind the government contractor defense.

Plaintiffs have clearly shown that a genuine issue of fact exists regarding WGI's actual knowledge of the dangerous nature of the backfilling operation and whether or not it informed the Corps as to what those dangers were and how they might effect the flood and levee protection system.  WGI's project manager, Dennis O'Connor, testified that he understood that the soils of the EBIA were not homogenous,[10] and that if a porous layer was charged with water from above, that water could flow laterally and undermine the integrity of the levee.[11]  WGI claims that the Corps was experienced and familiar with the levee protection system, but it fails to state whether or not the Corps knew of the specific dangers involved with the work being done by WGI.  The Corps's experience and familiarity with the levee system does not automatically mean that it was aware of the specific dangers involved and used its discretionary function in analyzing and responding to any such dangers.

*Boyle* requires that WGI inform the Corps of those dangers it has actual knowledge of, and there is an issue of fact as to whether WGI presented the dangers associated with backfilling to the Corps.  Given that an issue of fact exists as to whether WGI complied with the final requirement

---

[10]  *See* PSLC's Oppotion at Exhibit 6, Depo. transcript of Dennis O'Connor, 72:16-21.

[11]  *See id.* at 78:2-17 and 171:10-18.

under *Boyle*, WGI's motion for summary judgment must be denied and left for the trier of fact to decide.

## II.  <u>Conclusion</u>

WGI has asserted that it is immune from state tort liability in connection with the work performed at the EBIA because it was working as a government contractor.  But there are numerous material facts that raise a genuine issue as to whether all three of the requirements under the Government Contractor Defense have been satisfied by WGI.  Given the existence of a genuine issue of material fact, WGI cannot meet its summary judgment burden and its motion should be denied.

///

///

Respectfully submitted,

s/ James M. Garner

_____

JAMES M. GARNER #19589 — T.A.
DARNELL BLUDWORTH #18801
MARTHA Y. CURTIS #20446
JOHN T. BALHOFF, II #24288
KEVIN M. McGLONE #28145
ASHLEY G. COKER #30446
AMANDA R. SCHENCK #30706
RYAN O. LUMINAIS #30605
**SHER GARNER CAHILL RICHTER KLEIN &**
  **HILBERT, L.L.C.**
909 Poydras Street, Twenty-eighth Floor
New Orleans, Louisiana  70112
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
**ATTORNEYS FOR CII CARBON, L.L.C.;**
**ENTERCOM COMMUNICATIONS CORP.;**
**QUINTESSA HUEY and CARYN L. FONG as**
**trustees of the HUEY & FONG TRUST, and AMY**
**HUEY as trustee of the KENNETH HUEY**
**FAMILY TRUST; DR. FREDERICK KEPPEL and**
**DR. FREDERICK KEPPEL, A PROFESSIONAL**
**MEDICAL CORPORATION; RADIO PARTS,**
**INC.; HAROLD T. SLOAN, both individually and**
**on behalf of his minor child, ZACHARY SLOAN,**
**BAMBI G. SHAMAH, MICHELLE SHAMAH, and**
**MEGAN SHAMAH; UNIVERSAL HEALTH**
**SERVICES, INC.; WETCO RESTAURANT**
**GROUP, LLC; and WHITE III, LLC**

20

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2008 a copy of the above and foregoing has been filed electronically with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


s/ James M. Garner

_____

JAMES M. GARNER