# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NUMBER: 05-4182 "K"(2) |
| | * | |
| | * | JUDGE DUVAL |
| PERTAINS TO: MRGO | * | |
| | * | MAG. WILKINSON |
| ************************************** | | |

## SUR REPLY OF THE MRGO PSLC TO THE REPLY MEMORANDUM OF LAW OF WASHINGTON GROUP INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF AUTHORITIES

*Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988) . . . 6

*Bynum v. F.M.C. Corp.*, 770 F.2d 556, 574 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cormier v. Honiron Corp.*, 771 So.2d 193, 197 (La. App. 3 Cir. 2000). . . . . . . . . . . . . . . . . . . . 2

*Favalora v. Aetna Casualty & Surety, Cp.*, 144 So.2d 544 (La. App. 1st Cir. 1962). . . . . . . . . . 2

*Fox v. Bd. of Supervisors of Louisiana State University and Agric.*
    *And Mech. Coll*, 576 So.2d 978, 981 (La.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Hastings v. Baton Rouge General Hospital*, 498 So.2d 713 (La.1986) . . . . . . . . . . . . . . . . . . . . . 2

*Hogan Exploration v. Monroe Engineering Associates, Inc.*,
    430 So.2d 696, 700 (La.App. 2d Cir.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*M.J. Womack, Inc. v. House of Representatives*, 509 So.2d 62, 65 (La. App. 1st Cir.) . . . . . . . . 2

*McGonigal v. Gearhart Industries, Inc.*, 851 F.2d 774, 777 (5th Cir., 1998). . . . . . . . . . . . . . . . 7

*Smith v. Xerox Corp.*, 866 F.2d 135, 137 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1481 (5th Cir. 1989) . . . . . . . . . . . . . . . . . 8

# TABLE OF CONTENTS

I.      WGI FAILED TO FULFILL ITS DUTY UNDER LOUISIANA LAW . . . . . . . . . . . . . 1

II.     WGI'S CIRCUMVENTION OF THE OLD PERMIT PROCESS PRECLUDED THE
        LAST OPPORTUNITY FOR GEOTECHNICAL EVALUATION . . . . . . . . . . . . . . . . 4

III.    WGI HAS FAILED TO MEED THE LEGAL STANDARD NECESSARY TO ENJOY
        IMMUNITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.     CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | |
| | * | NUMBER: 05-4182 "K"(2) |
| | * | |
| | * | JUDGE DUVAL |
| PERTAINS TO: MRGO | * | |
| | * | MAG. WILKINSON |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SUR REPLY OF THE MRGO PSLC TO THE REPLY MEMORANDUM OF LAW OF WASHINGTON GROUP INTERNATIONAL, INC.'S MOTION FOR SUMMARY JUDGMENT

Washington Group International, Inc.'s ("WGI") avoidance of acknowledging its duty of due care is the very reason why it can not rely on compliance with the Task Order 26 contract as a shield for their negligence: WGI could have complied with the contract *AND* fulfilled its state law duty of due care. Thus, there is no significant conflict between an identifiable federal policy and the operation of state law; and as a result, there is no need to preempt state law by applying the governmental contractor defense.

## I.   WGI FAILED TO FULFILL ITS DUTY UNDER LOUISIANA LAW

The Louisiana Civil Code provides that "[e]very act whatever of man that causes damage to another obliges him by those whose fault it happened to repair it."[1]  "A duty is defined as the

---

[1] La. C.C. art. 2315.

1

obligation to conform to the standard of conduct associated with a reasonable man in like circumstances."[2]  The general standard of care applicable to all professionals, including engineers, is that the services be performed "with the same degree of skill and care exercised by others in the same profession in the same general area."[3]  Additionally, a contractor owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions in the fulfillment of its contractual obligations.[4]

The plaintiff ordinarily has the burden of proving a breach of the above standards of care. However, an exception to this rule exists "when the conduct of [the professional] may be so unprofessional, so clearly improper, and so manifestly below reasonable standards dictated by ordinary intelligence, as to constitute a prima facie case of either a lack of the degree of skill and care exercised by others in the same general vicinity or failure to reasonably exercise such skill and care."[5]  Thus, the determination of whether a professional has breached a standard of care is not dependent on expert testimony in those instances when "lay persons can infer negligence by applying a common sense standard."[6]

It is the position of the United States Army Corps of Engineers ("Corps") that flood

---

[2] Fox v. Bd. of Supervisors of Louisiana State University and Agric. and Mech. Coll., 576 So.2d 978, 981 (La.1991).

[3] Hogan Exploration v. Monroe Engineering Associates, Inc., 430 So.2d 696, 700 (La.App. 2d Cir.1983).

[4] Cormier v. Honiron Corp., 771 So.2d 193, 197 (La.App. 3 Cir. 2000).

[5] Hogan, quoting Favalora v. Aetna Casualty & Surety, Co., 144 So.2d 544 (La.App. 1st Cir.1962).

[6] M. J. Womack, Inc. v. House of Representatives, 509 So.2d 62, 65 (La.App. 1st Cir.) writs denied 513 So.2d 1208 and 513 So.2d 1211 (La.1987), quoting Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986).

protection is "extremely important," and as such they will not jeopardize flood protection.[7]  The New Orleans District's ("NOD") own internal policies and procedures establish the requirement that an assessment be performed for any excavations proposed at or near flood control structures. The purpose of such an assessment is "to ascertain whether or not the work will damage or undermine the hurricane protection structure."[8]  Hurricane flood protection structures are evaluated differently than riverine protection structures because the hurricane protection structures do not have water against the structures on a regular basis.  As a result, the NOD requires that a geotechnical analysis be performed for any subsurface work performed within three hundred (300) feet from levee center line.[9]

Another prerequisite to proposed work within 300 feet from a levee center line is the requirement that a contractor obtain a permit from the Orleans Levee District ("OLD"), the owner of the flood control structure.  The permit application process is designed to insure that any concerned agencies are fully informed of the "pertinent specifications of all work that is done relative to excavations, pile driving or drilling."[10]  The process necessarily informs the applicant of the hazards associated with this kind of excavation.

As shown throughout Plaintiffs' Opposition, and as now conceded by WGI in its Reply Brief, WGI failed to evaluate the potential for under seepage that could have affected the integrity of the flood wall during high water conditions.  WGI's omissions were not precluded by

---

[7] Exhibit 7 -Corps 30(b)(6) (Grieshaber) deposition transcript, pg. 72, l. 3-14.

[8] Exhibit 31 - Depo. transcript of Gerard A. (Jerry) Colletti, p. 103, l. 12-20.

[9] Exhibit 31 - Depo. transcript of Gerard A. (Jerry) Colletti, p. 34, l. 3-12.

[10] See WGI's Declaration of Stevan G. Spencer, dated 10/12/08, ¶ 3, Exhibit 8.

the TERC/Task Order 26 contract, and these omissions were so manifestly below the reasonable standard of care for engineers and contractors in the New Orleans District as to constitute a prima facia case of breach of state law duty of care.

## II.   WGI'S CIRCUMVENTION OF THE OLD PERMIT PROCESS PRECLUDED THE LAST OPPORTUNITY FOR GEOTECHNICAL EVALUATION

One of the "safety nets" designed to insure that an engineer or contractor performing work involving the flood protection system meets the state law duty of care is the necessity of obtaining a permit to perform work within the zone of concern adjacent to the flood protection structure.  It is well known by the entities in the business of doing excavations that a permit is mandatory for the type of work at issue in the present case.[11]

Per the Corps directive, WGI inquired about the need for a permit at the EBIA on November 7, 2000.  Steven Spencer, the Orleans Levee District's ("OLD") Chief Engineer and responsible for the issuance of permits, considered this a request for a permit, and directed WGI to forward copies of the letter and accompanying plans to Brian Keller in the Operations Division of Corps and the Louisiana Department of Transportation and Development ("LADOTD").  The LADOTD responded by producing a document to OLD entitled *Permit Request Form of No Objection*, that was proffered with the condition that the "Levee District be notified upon completion of the demolition activity, so that an inspection and an approval of the levee condition be made."  Likewise, the Corps's Operations Division advised that it had "no objection to the [OLD's] issuance of a permit for the proposed work" provided that the work was accomplished in accordance with the information produced by WGI as of January 17, 2001.

---

[11] Exhibit 7 -Corps 30(b)(6) (Grieshaber) deposition transcript, pg. 47, l. 1-14.

On April 11, 2001, the OLD issued two unsigned permit forms to WGI, that in the ordinary course of business were sent by regular US Mail, postage prepaid. As the Court is aware, mail sent via the U.S. Postal Service is presumed to be received; and WGI has already conceded that the unsigned permit was received and reviewed by legal counsel, who in turn advised WGI not to sign and return the permit.

This permit form indicated that the OLD was willing to grant permission to WGI as "Permitee" to perform work as specified prior to this date. As addressed in the Plaintiffs' Opposition to WGI's Motion for Summary Judgment, the only work plan involving excavations that could have been presented to the CORPS and LADOTD as of January 2001 was the Project Work Plan, a plan that had significant data gaps in it. The Sewer Lift Station excavation plan was not produced until October 19, 2001. The wedding cake structure was not even discovered until July or early August of 2001, with the final work plan prepared in December of 2001. Clearly, WGI failed to inform the OLD of these two substantial excavations, as prudent engineers were mandated to do.[12]

The MRGO PSLC obtained another sworn Declaration of Steven G. Spencer on November 5, 2008 - wherein he averred that he had no recollection of telling WGI or its subcontractors that a permit was not required for the work at the EBIA, but that a current review of WGI's November 2000 request would require a permit.[13] WGI maintains that the OLD informed it that no permits were required; however, this assertion is highly suspect considering

---

[12] See WGI's Declaration of Stevan G. Spencer, dated 10/12/08, ¶ 3 - the OLD is mandated to monitor and permit all subsurface construction within 250 ft. of hurricane flood control structures.

[13] See Exhibit 32 - MRGO PSLC's Declaration of Stevan G. Spencer, dated November 5, 2008.

the dictates of the Corps at the outset of the project, the documents presented in support of the pleadings, and the Declaration of Mr. Spencer secured by Plaintiffs.

The Court should also take note that the unsigned permit form presented by WGI in support of Mr. Spencer's October 27, 2008 Declaration that the permit would automatically expire one year from the date of issuance of the permit, or on April 10, 2002. Therefore, WGI was on notice that its obligations to the OLD were manyfold. The new excavations that were not previously presented, whose depths penetrated the underlying marsh layer and far exceeded the adjacent sheet pile depth, should have been presented to the OLD, the LADOTD, and the Corps for assessment of the effects of groundwater migration and under seepage potential of the flood wall. Furthermore, WGI should have requested another permit upon the expiration of the first year's permit.

WGI's failure to adhere to the permitting mandates established by the State of Louisiana was but one in a number of institutional defalcations that reveal WGI's utter disregard for the duties imposed upon it by Louisiana law. Such multiple transgressions should preclude the grant of summary judgment.

## III. WGI HAS FAILED TO MEET THE LEGAL STANDARD NECESSARY TO ENJOY IMMUNITY

In <u>Boyle v. United Technologies Corp.</u>,[14] when the U.S. Supreme Court recognized that the government contractor's defense extended government immunity to military contractors in cases involving design defects, the "opinion did not change the law in the Fifth Circuit except to

---

[14] 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

reject the ideological basis for contractor immunity based upon the <u>Feres</u>[15] doctrine."[16]  Prior to

<u>Boyle</u>, the Fifth Circuit in <u>Bynum v. F.M.C. Corp.</u>, [17] had adopted the Ninth Circuit's formulation

of the government contractor's defense set forth in <u>McKay v. Rockwell International Corp.</u>.[18]

    <u>Boyle</u> adopted three of the four prongs of the <u>McKay</u> (and <u>Bynum</u>) test, **rejecting the**

**first *requirement*** that the plaintiff must be otherwise precluded from suing the government.  The

Supreme Court eliminated this requirement because it would produce "results that are in some

respects too broad and in some respects too narrow."[19]  On the one hand, an overly broad, free

wheeling application of the governmental contractor defense would preclude suit for claims that

clearly were not intended to be precluded; while on the other hand, the immunity would be too

narrow if it could not be invoked to prevent civilian suits (not just military personnel suits)

against the manufacturer.  By relieving the plaintiff of the burden of proving that their right to

recovery in tort against the government was precluded, the U.S. Supreme Court did not relieve

the governmental contractor of the Fifth Circuit's precedent that there can be no derivative

immunity when there is no originating immunity.[20]

    After <u>Boyle</u>, the Fifth Circuit recognized that the "Supreme Court's rejection of the <u>Feres-</u>

<u>Stencel</u> doctrine as the basis for the defense means that the purpose behind the three elements of

---

[15] The <u>Feres</u> doctrine prohibited all military service-related tort claims against the government.

[16] <u>McGonigal v. Gearhart Industries, Inc.</u>, 851 F.2d 774, 777 (5th Cir.,1988).

[17] 770 F.2d 556 (5th Cir.1985).

[18] 704 F.2d 444 (9th Cir.1983).

[19] <u>Smith v. Xerox Corp.</u>, 866 F.2d 135, 137 (5th Cir. 1989).

[20] <u>Bynum v. F.M.C. Corp.</u>, 770 F.2d 556, 574 (5th Cir.1985).

the defense is not the attainment of the policies in <u>Feres</u> and in <u>Bynum</u>, but deference to the discretionary functions of the government."[21]  This is consistent with Supreme Court's intent to shield the government from ultimately paying for transgressions involving the balancing of technical, military, and social considerations from which Congress intended to insulate itself. The result is that when the Court determines that the challenged conduct of the government did not involve its permissible exercise of policy judgment, no further deference to the discretionary function of the government can be extended and the resultant immunities must fail.

In the present case, the Corps was obligated both to perform certain tasks to meet the necessary criteria of the construction project, ***AND*** to meet additional criteria in administering the contract.  Geotechnical analysis was required to understand the effects of groundwater migration and under seepage potential of the adjacent flood wall.  Both WGI and the Corps failed to ensure that this analysis was performed.  This neglect allowed institutional errors to propagate unchecked, ultimately contributing to the catastrophic failure of the flood walls adjacent to the EBIA.

The end result is this: WGI's own negligent acts were substantial contributing factors to the Plaintiffs'complained of harm; and WGI is not entitled to avoid its liability by hiding behind the cloak of immunity, especially when the purpose for which the derivative immunity exists is not served.

## IV.    CONCLUSION

Plaintiffs have proven to this Court that summary judgment must not be granted to WGI because it has failed to meet its burden of proof in coming forward with evidence that would

---

[21] <u>Trevino v. General Dynamics Corp.</u>, 865 F.2d 1474, 1481 (5th Cir. 1989).

entitle it to a directed verdict if the evidence went uncontroverted at trial. Both the Plaintiffs and WGI will argue incessantly about what portions of the deposition testimony are more important, or what documents must be given greater weight in evaluating WGI's duty, but this type of discourse indicates that summary judgment is not ripe from a factual stand point.

Clearly, Boyle established standards that only allow for the displacement of state law where a "significant conflict" exists between an identifiable federal policy or interest and the operation of state law. WGI is not telling this court that the government "made me do it," WGI is seeking immunity because it claims it was not told what it was supposed to do. This type of excuse is not the conduct contemplated by the Courts when the derivative immunity of the governmental contractor defense was crafted.

As proven by the Plaintiffs, WGI's fulfillment of its state law duty of care would not have conflicted with the fulfillment of the Task Order 26 contract; and as a result, there is no need to preempt state law by applying the governmental contractor defense. As such, WGI's Motion for Summary Judgment must be denied.

Respectfully Submitted,

**APPROVED PLAINTIFFS LIAISON COUNSEL**

   /s/  Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

MR-GO PLAINTIFFS SUB-GROUP
LITIGATION COMMITTEE

s/ James Parkerson Roy
JAMES PARKERSON ROY
MR-GO PSLC Liaison Counsel
LA Bar Roll Number: 11511
Domengeaux Wright Roy & Edwards LLC
Post Office Box 3668
Lafayette, Louisiana 70502
Telephone: (337) 593-4190 or (337) 233-3033
Email: jimr@wrightroy.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing upon all counsel of

record by placing same in the United States mail, properly addressed and with first-class postage,

or by facsimile or other electronic transmission this 10th day of November, 2008.


    /s/ Joseph M. Bruno

Joseph M. Bruno

10