# EXHIBIT 7

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE: KATRINA CANAL BREACHES       CIVIL ACTION

CONSOLIDATED LITIGATION             NO. 05-4182 K2

                                    JUDGE DUVAL

PERTAINS TO:  MRGO AND ROBINSON

              (No. 06-2268)


     Rule 30(b)(6) deposition of THE UNITED STATES OF AMERICA, BY AND THROUGH THE UNITED STATES ARMY CORPS OF ENGINEERS' DESIGNEE JOHN GRIESHABER, Ph.D., P.E., given at the U.S. Army Corps of Engineers New Orleans District offices, 7400 Leake Avenue, New Orleans, Louisiana 70118-3651, on June 27th, 2008.




     REPORTED BY:

          JOSEPH A. FAIRBANKS, JR., CCR, RPR

          CERTIFIED COURT REPORTER #75005

GRIESHABER, Ph.D., JOHN
6/27/2008

Page 46

```
 1      Q.  That's correct.  Okay.  Now, and is
 2  that something that would require some kind of
 3  in evaluation by the Corps?
 4      A.  That would require a permit, that's
 5  correct.
 6      Q.  All right.  It requires a permit.  All
 7  right.
 8          Now, how does one know that one needs
 9  a permit?  I mean, is there a sign, you know,
10  next to the floodwall that says, hey, fellows,
11  if you guys are going to dig, come get a
12  permit?
13          MR. STONE:
14              Objection again.  Permitting is
15          not part of this analysis.  It's not
16          part of what you've asked for here.
17          It's not part of --
18          MR. BRUNO:
19              I respectfully disagree.
20          MR. STONE:
21              It is not part of what we've
22          presented this witness for, so
23          permitting is not part of it.
24          MR. BRUNO:
25              All right.  Fine.
```

Page 47

```
 1      EXAMINATION BY MR. BRUNO:
 2      Q.  Mr. Grieshaber, how does a person know
 3  that you need to get a permit?
 4      A.  The same way you know any of the
 5  rules.  It's posted.  If you're in the business
 6  of doing excavations, you've seen the thing
 7  you've got to call Louisiana One Call, if
 8  you're too close to a flood protection you've
 9  got to get a permit.  Um -- you know, there are
10  probably people who could swear ignorance and
11  tell the truth --
12      Q.  Sure.
13      A.  -- but this is -- people who do this
14  type work know you need a permit.
15      Q.  All right.  Let me show you a document
16  which we've marked as Plaintiffs' Number 4.
17  And the purpose of the question first is just
18  to ask you whether or not you've ever seen this
19  document.
20          (Exhibit 4 was marked for
21  identification and is attached hereto.)
22      A.  I don't remember ever seeing this
23  particular document.
24      EXAMINATION BY MR. BRUNO:
25      Q.  All right.  Let me just for the record
```

Page 48

```
 1  identify it, if you don't mind.
 2      A.  Okay.
 3      Q.  Thanks.
 4          MR. BRUNO:
 5              For the record, this is
 6          Geotechnical Design and Dam Safety
 7          Section, Construction Guidance page,
 8          and it is attached to something called
 9          Guidance for Work Proposed Near or
10          Within a Federally Constructed Flood
11          Control Project.
12      EXAMINATION BY MR. BRUNO:
13      Q.  Now, you've already testified you
14  haven't seen this.  I will represent to you
15  that this is a document prepared by the
16  district office in Kansas City.  Okay?
17      A.  Okay.
18      Q.  All right, sir.  Now, while you may
19  not have seen this particular document, have
20  you seen documents which give guidance for work
21  proposed near or within a federally constructed
22  flood control project?
23      A.  Off the top open my head I don't
24  remember, but I would think I probably have.
25  We do have processes and procedures, but I
```

Page 49

```
 1  can't give them to you off the top of my head.
 2      Q.  That's fine.  All right.
 3          Does this office, the New Orleans
 4  District office, have a written guideline for
 5  guidance for work proposed near or within a
 6  federally constructed flood control project?
 7      A.  Um -- yes.  There is.  You would have
 8  to ask Mr. Colletti, you know, for copies of
 9  it.
10      Q.  Okay.  Well, Mr. Colletti told us
11  there wasn't a written one.
12      A.  There is a, um -- there are
13  guidelines, and that's the question that you
14  asked, that are established.  And as far as I
15  know, and we're going back ancient history when
16  Jerry Satterlee was chief of engineering
17  division, they definitely existed.
18      Q.  All right.  Well, let me see, just for
19  the record, because I want us to make certain
20  that we're, you know, not talking at
21  cross-purposes.  The Corps has -- I'm trying to
22  find the right -- precise word.
23          They're called EMs?
24      A.  Engineering manuals.
25      Q.  Engineering manual.  And why don't you
```

Page 70

```
 1   just -- it's no big deal?  Is it important?
 2   You know --
 3       A.  I guess the question is what is
 4   proposed work?
 5       Q.  All right.  Well, that's a good
 6   question.  Because since there is nothing
 7   written down, how would one know what proposed
 8   work would be -- help me with that.  What
 9   proposed work would be the kind of work that
10   you guys believe you need to evaluate to
11   determine whether there's a potential for
12   damage to the flood control structure?
13       A.  Anything that would change the loading
14   on the wall.
15       Q.  All right.  Well, you would agree
16   that's not something that the guy who's digging
17   or building the thing could do, that's
18   something that the Corps of Engineers has to
19   do, right?
20       A.  Correct.
21       Q.  Okay.  All right.  So since the guy
22   who's doing the work doesn't know it, then, you
23   know, what is the criteria that should be
24   utilized in order to determine whether or not
25   to ask the Corps to do this evaluation?
```

Page 71

```
 1           MR. STONE:
 2               Object to form and foundation.
 3           MR. BRUNO:
 4               It's noted.
 5       A.  If they're removing any material or
 6   they're adding any material.  If they're
 7   actually changing the cross-section in the
 8   vicinity of the flood protection.
 9   EXAMINATION BY MR. BRUNO:
10       Q.  All right.  Now, can we agree that
11   300 feet is a parameter within which if the
12   work is proposed that's a start point for
13   asking the Corps for an evaluation?  Or do we
14   use a different number?
15       A.  Are you -- if you're looking at a
16   one-size-fits-all number, 300 is probably an
17   acceptable number.
18       Q.  Okay.  All right.  Is that on the
19   water side and the land side, or just -- or
20   does it matter?
21       A.  Either side.
22       Q.  All right.  Okay.  But I'm gathering
23   from your answer that it may well be that
24   something that's further away than 300 feet may
25   merit some evaluation.
```

Page 72

```
 1       A.  That's a possibility, depending on the
 2   circumstances, the height of the wall --
 3       Q.  Okay.  All right.  Now, I asked that
 4   question in order to understand this:  How
 5   important is this evaluation to the Corps?
 6           MR. STONE:
 7               Object to form.
 8       A.  I guess I don't understand the
 9   question.  How important?
10   EXAMINATION BY MR. BRUNO:
11       Q.  Yeah.
12       A.  The flood protection is extremely
13   important to us.  We do not jeopardize the
14   flood protection.
15       Q.  All right.  I will ask you to accept
16   that Engineering Manual 1110-2-1913 entitled
17   Design and Construction of Levees, USACE 2000,
18   states as follows:  Without control,
19   underseepage in pervious foundations beneath
20   levees may result in, a -- and I'll show this
21   to you if you like -- excessive hydrostatic
22   pressures beneath an impervious top stratum on
23   the land side, b, sand boils, and c, piping
24   beneath the levee itself.  Underseepage
25   problems are most acute when a pervious stratum
```

Page 73

```
 1   underlies a levee and extends both landward and
 2   riverward of the levee and where a relatively
 3   thin top stratum exists on the land side of the
 4   levee.
 5           All right.  Are you familiar with
 6   that?
 7       A.  That's correct.
 8       Q.  All right.  And this is the design
 9   consideration that this district office
10   follows, right?
11       A.  That's correct.
12       Q.  All right.  What I'd like is for you
13   to explain to me how -- and I'll give you an
14   example, a hole, all right, 25 feet deep,
15   within 30 feet of the levee.  First question:
16   Is that something that your office would feel
17   that it would need to evaluate to determine
18   whether or not the hole could possibly
19   negatively impact a flood control structure
20   like the one that existed at the Lower Nine
21   before Katrina?
22       A.  It depends when the hole is there.  If
23   the hole is on the flood side --
24       Q.  Yes.
25       A.  -- and, you know, we're outside of
```