# EXHIBIT 25

Re: Katrina Canal Breaches

Pertains to: Barge

ECONOMIC ANALYSIS

Kenneth J. Boudreaux, Ph.D.
Consulting Economist
1424 Bordeaux Street
New Orleans, LA 70115

August 26, 2008

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

*Introduction*

I have been retained on behalf of defendants in the above matter to perform analyses and offer opinions as to certain economic aspects of the issue of class certification. I have performed those analyses and present my opinions below. These opinions should be considered preliminary in the sense that new or amended information could cause me to change them.

I have specifically been retained to address the issue of whether business loss liability and damages can be addressed on a class basis. As I demonstrate below, treating such plaintiffs as a class or various significant subclasses for purposes of demonstrating liability and damages is not an economically feasible prospect. There are essentially no available efficiency benefits for class treatment of business liability and losses compared to the demonstration of liability and losses on an individual business basis.

I am Professor of Economics and Finance at the A. B. Freeman School of Business, Tulane University, where I have been a faculty member since 1970. I hold a Ph.D. in economics and finance from the University of Washington. My primary fields of academic research have been corporate finance and financial economics, in which I have published two textbooks and many refereed research articles. I regularly teach courses in economics and corporate finance to graduate students at Tulane and other universities. I have been a consultant in corporate financial and economic issues both within and outside the litigation context to many large corporations in the United States and internationally, as well as to governmental entities. I have also been accepted and testified as an expert economist in both State and Federal courts across the United States, many times over the past 34 years. The essential subject matter of my teaching, research and consulting relates directly to the issues that I have been asked to evaluate. I attach my curriculum vitae and a list of my testimonies at trial or by deposition in the last four years. My compensation in this matter is at an hourly rate of $475.00.

In performing my analysis I have used the following documents and other information:

2

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

- Plaintiff's Motion to Certify the Class and Subclasses, to Appoint Class Counsel, and to Approve Plaintiff's Proposed Trial Plan, and
- The Affidavit of John A. Kilpatrick, Ph.D., MRICS, *Re: Katrina Canal Breaches Litigation*, and
- Notices of FRCP 45 Production Requests to:
  - o Board of Assessors, Parish of Orleans, and
  - o City of New Orleans, and
  - o Louisiana Department of Revenue, and
  - o Louisiana Department of Economic Development, and
- Various documents produced by plaintiffs that purport to support their claims, including income tax returns and other business records, which I discuss in more detail below, and
- The depositions and related exhibits of Herman Koch, Ethel Mae Coleman Mumford, Jacob Robert Glaser and Michael Joseph Riché.

*The Economic Issues of Class Certification*

Plaintiffs seek to have a particular "business subclass" defined for the purposes of this litigation and claims of economic damages: "The proposed Business Damage subclass consists of all class members who owned businesses within the class area."[1]

The Kilpatrick affidavit contains a section asserting that reasonable estimates of damages to affected businesses can be accomplished on aggregated bases for a "...few generic categories..." (p. 20). The Kilpatrick affidavit envisions collection of pre-Katrina and post-Katrina business records from putative class members (whether comprehensively or by sampling is not clear) and the development of "...benchmark, market-based multipliers..." to ascertain business values. Though not explicitly stated, presumably these values would be compared before and after Katrina in order to arrive at damage estimates. The Kilpatrick affidavit further discusses

---

[1] Plaintiffs' Motion to Certify, D. 18, p. 23.

3

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

collection of information as to physical property damage, incurrence of extra-normal costs and the use of national or regional databases in the absence of individual business records.

The rationale for this "business subclass" certification, from the Kilpatrick affidavit, is apparently:

> *Whichever approach to business valuations proves most feasible and accurate, it is certain that a class treatment would allow for economies of scale in determining these values and increased consistency and accuracy of damages estimates. With individual business valuations by diverse valuers using varying methods, the scope for different and inconsistent business value damages estimates would be greater than would be the case for residential property.* [2]

In what follows I evaluate this assertion, first with respect to the necessary conditions for reliable estimates of business losses using aggregative measures such as those implied by the Kilpatrick affidavit and whether such conditions exist in this matter.

### *Requirements for Valid Business Damage Estimation Using Aggregative (Class) Methods*

Treating a wide range of businesses as a class or group of subclasses for estimating liability and damages is *a priori* economically suspect in a matter such as this due to the immense potential differences among businesses in all factors that would determine liability and damages. Businesses differ greatly in these factors, including size, risk, customer base, product lines, managerial expertise, supply sources, financial strength, access to capital markets, and potential for mitigation. When a business is disrupted, in my experience, reasonable demonstration of its cause and extent economic damage requires a quite detailed and specific investigation and analysis of that particular business's situation before and after the disruption. The results of this study, because of the great differences among businesses, are unlikely to be suitable for generalization to other businesses.

---

[2] Kilpatrick affidavit, #73, p. 21.

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

It is not possible to employ aggregative methodologies implied by the Kilpatrick affidavit to produce valid and efficient estimates of business liability and damages in this matter because the following conditions are not met:

- *Uniformity of Causality* -- any demonstrable damages were caused by the alleged event and not confounded by other contributing factors that could be significantly different among potential sub-class members, and

- *Commonality of Business Characteristics* - members of the potential subclass or sub-subclass pursue lines of business that are either relatively few in number or share common sources of profitability and therefore potential damage, and

- *Representatives as Valid Class Proxies* — to the extent that putative class representatives are offered as examples to validate proposed class methodology, these class representatives must be good proxies for the subclass they represent in terms of the various factors that produce economic loss estimates, and

- *Data Availability, Collection and Analysis* - there exist valid data sources that are reasonably available and economically robust with respect to the estimation of the profits that would have been earned by members of the potential subclass and that produce mitigation offsets by the potential subclass. The collection and analysis of data necessary to implement any valid plan to prove potential subclass damages must produce estimates of economic damage that are within reasonable range of those that would be produced by correctly performed individual plaintiff analyses, with more efficiency and lower cost than would be required by demonstration of individual damages.

Although every one of these conditions would need to be met, not a single one of them is satisfied in this matter.

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

*Economic Evaluation of "Business Subclass" Viability*

*Causality*

With respect to commonality of business damage causality, even if the assertions of plaintiffs as to the physical effect of the barge on the flood wall were correct, isolation of that effect on aggregates of businesses is not possible in this matter. Conceptually, "barge-caused damages" would necessarily be separated from any and all other business damage effects that appeared during and after Hurricane Katrina. Even were the separation of such effects possible in the limited sense of physical property (which issue other experts will address), differential effects on business activities is hugely more complex and diverse, and vanishingly unlikely to be classifiable beyond the individual business level.

Damage caused by "non-barge" storm effects would have been disruptive to businesses including customer dislocations, supply interruptions, wind damage, vandalism, flooding from other sources, other business-related disruptions and legally required evacuations. These disruptions would likely have had quite different effects and durations depending on the type, size and location of businesses. Because of this diversity, correctly estimating the extent to which businesses were affected uniquely by the barge's alleged breach as opposed to other causes is not amenable to aggregative or formulaic analysis. Below I discuss this diversity in more detail.

*Commonality*

My preliminary analysis indicates that in the allegedly affected areas there are literally hundreds of businesses that comprise twenty or more gross (two-digit) industry categories such as those indicated in the Kirkpatrick affidavit. Within such gross industry categories (retail trade, for example) there are very significant differences in more specific businesses that could not be adequately captured by this aggregate treatment (for example, the difference between a grocery store and an automobile dealership in terms of the factors that generate profits are tremendously different and would be grossly obscured by such aggregate treatment)

6

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

Even within a quite specific line of business (such as grocery stores) there are large differences in factors that affect profits, such as size, location, organizational nature, expertise and assiduousness of the business owner. There is no reasonable mechanism for estimating causality and estimating profits aside from collection of data from actual operations of each individual business for a significant pre-storm period.

The above implies that any valid demonstration of the profits that would have been earned by the potential sub-class of business owners but for the alleged actions of defendants will require a business-by-business evaluation of the exact same depth and complexity that would be required by individual lawsuits. There are no efficiency gains in either data collection or analysis with respect to aggregating individual businesses into subclasses, and any such aggregation is likely to produce results that are not representative of reasonable expectations for the individual businesses.

*Representatives as Valid Class Proxies*

According to the Plaintiffs' Motion to Certify, the proposed class representatives for business losses are Ethel Mae Coleman Mumford, Jacob Robert "Bob" Glaser, Herman Koch, Michael Joseph Riché and Rico Terrence Sutton.

**Ethel Mae Coleman Mumford**

Ms. Mumford is described in the Plaintiffs' Motion to Certify as an 81 years old woman who was a Cleaning Service Provider before the storm and now is a babysitter. I have seen no documentation of pre or post-storm earnings.

7

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

In her deposition, Ms. Mumford indicates that she is currently employed as a sitter-nurse assistant for an elderly lady, does some house-cleaning and owns rental property. The "cleaning service" mentioned in the Motion to Certify seems to be a part-time personal job as does the sitter-nurse assistant work, leaving the rental property as her "business." Ms. Mumford indicated that she thinks her 2005 and 2006 income tax returns are available, but that no pre-storm tax returns are.

With respect to her rental property business, in her deposition Ms. Mumford described several diverse properties with various rents before and after the storm (with rents higher after the storm), with storm damages caused both by flooding and wind, damages and reconstruction costs varied by property, and varying reoccupation experiences on the properties. She also apparently either does or intends to rent some of these properties to relatives.

Though Ms. Mumford likely did experience some loss of rental revenue due to the storm and has incurred costs of fixing storm damage, the lack of pre-storm earnings data and the ambiguities of how any profits from that business were and are being produced implies that reasonable demonstration of causality and damages to Ms. Mumford's business would require a very individual and detailed analysis and would be unlikely to produce results that could be generalized to others' businesses.

**Jacob Robert "Bob" Glaser**

Mr. Glaser is described in the Plaintiffs' Motion to Certify as 58 years old. Before the storm he was co-owner of a jewelry business in Chalmette and now is a real estate agent on the North Shore of Lake Pontchartrain.

In his deposition, Mr. Glaser indicated that he could not recall his jewelry business's results for the years prior to the storm, but that it was not profitable every year. Records for the business prior to the storm were not available.

8

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

Mr. Glaser indicated that physical damage to his business occurred both from flood and non-flood causes, including vandalism.  Mr. Glaser received payments from his insurance companies for physical damage, but a very small payment for lost profits.

Mr. Glaser indicated that in the absence of customers he could not have continued to operate his business in Chalmette post-storm.  He also indicated that his pre-storm customers were from not only the area that is the subject of this litigation, but also from other nearby areas that were also affected severely by Katrina.  The jewelry business continues "on paper" and makes a few sales based on inventory that was recovered from the safe that survived the storm and vandalism.  Tax returns are presently available for the business (a corporation) for only 2005 and 2006.

Mr. Glaser indicated that he did not pursue an opportunity to obtain at least one loan that potentially could have been used for an attempt to rehabilitate his business, because he thought that loan would not be beneficial.  Though he may or may not have been correct in that opinion, some type of evaluation of that decision's effect on any claimed loss would be appropriate.

Mr. Glaser has been a real estate agent on the North Shore since mid-2006.  He testified that in 2007 he had revenues of approximately $25,000.00 from selling real estate.  He indicated there were expenses to be claimed against that revenue, but was not explicit as to the amount.

Mr. Glaser has at this point essentially discontinued his business in Chalmette and begun business as a real estate agent elsewhere.  Any business-based economic loss he has incurred would necessarily compare the profits he would have made in the jewelry business with the profits he can expect to make as a real estate agent.  Both of these endeavors are quite unique to Mr. Glaser.  His jewelry business was apparently relatively small, locally-focused and not associated with any of the larger local or national chains.  Its pre-storm profitability, though perhaps eventually discoverable, is not now known or remembered.  Real estate agents' success is notoriously variable, both across time and individual agents.

Demonstration of Mr. Glaser's economic loss and its causality related to the allegations of this lawsuit would, given the above information, be a complex individual exercise, unlikely to be

9

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

even faintly matched by a single other potential class member and not useful for projecting others' losses.

**Herman Koch**

Mr. Koch is described in the Plaintiffs' Motion to Certify as 66 years old and owning real estate prior to the storm.   Mr. and Mrs. Koch reported $10,867.00 in 2002, $9,671.00 in 2003, $4,481.00 in 2004 and -$674.00 in 2005, as income from rental property.   His 2002 and later income tax returns list Mr. Koch as "retired."

In his deposition, Mr. Koch describes the several properties that he owns and rents to others, the extent to which various properties were (and were not) damaged in the storm, and the extent to which flooding varied by property and location.   He indicated that he has sold real estate that he owned in Orleans Parish and retained his St. Bernard Parish properties because of the complexities and difficulties of doing business in Orleans Parish.   He indicates that he has essentially rented his remaining properties at rates higher than pre-storm rates, but that there were varying periods of lost rental revenue after the storm.

Mr. Koch indicated that Mrs. Koch keeps records of the costs and revenues for each of their properties and that this data is available.   The Koch properties are held in a Trust, which is not named as a potential class representative.   The relationship between the Trust and Mr. Koch in the sense of which party benefits from the properties profits is ambiguous.

Both Mr. Koch and Ms. Mumford are offered as potential class representatives, and both had and have real estate rental businesses.   But the discussions above as to their business experiences pre and post-storm and the availability of information relating to the profits from these businesses show large disparities and demonstrate that the use of either for the purpose of demonstrating liability and damages for a larger group would be economically inappropriate.

10

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

**Michael Joseph Riché**

Mr. Riché is described in the Plaintiffs' Motion to Certify as 63 years old.  Before the storm he ran a wedding supply specialty business called "Mr. Ribbon," and owned real estate.  He is described now as attempting to continue as a wholesaler of ribbon.  Mr. Riché's income tax returns indicate earnings in 2002 from his business as $5,763.00 and a real estate loss of $3,638.00, in 2003 business earnings of $13,182.00 and a real estate loss of $3,235.00, in 2004 business earnings of $11,616.00 and a real estate loss of $5,477.00, in 2005 business earnings of $2,513.00 and a real estate loss of $309.00, in 2006 business income of $7,180.00 and a real estate loss of $1,279.00 and in 2007 business income of $6,839.00 and a real estate loss of $1,279.00.

Mr. Riché relocated to Lacombe, Louisiana after the storm and has continued to pursue his business, but in the wholesale side of selling supplies to florists instead of from the building he owned in Chalmette and from which he operated the "Mr. Ribbon" business.  Mr. Riché indicates that he is limited in pursuing this business due to financing constraints and could make more money if he could finance more inventory.

Mr. Riché also indicates that one reason his business is not doing better is that his customer base, which extends across the Gulf Coast, is more economically challenged than it was before the storm, which is of course independent of any flooding of his Chalmette shop.

Mr. Riché indicates that there was damage to his business property, some of which was flood-related and the rest of which was not.

Mr. Riché indicates that he used the proceeds of flood insurance for the three buildings he owned pre-storm (one of which was his business location) to purchase for cash a house in Lacombe for $190,000.00.  He indicates that he did not use any of the insurance proceeds to finance his business because he felt that he would have been unable to obtain a mortgage on the Lacombe property.  He did not attempt to obtain such a mortgage.

11

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

From the above, there is clearly a debate that would take place as to Mr. Riché's choice in mitigating his business loss as opposed to owning a mortgage-free home. Further, Mr. Riché's business before the storm was clearly a very specialized one, unlikely to have close proxies in other potential business subclass members.

**Rico Terrance Sutton**

Mr. Sutton is described in the Plaintiffs' Motion to Certify as 30 years old and a former truck driver, pressure washer and owner of a business named "Big Shot Trucking." He is described as currently being employed at Popeye's Fried Chicken. Mr. Sutton's income tax returns indicate that he reported wage-only (non-business) income from 2002 through 2004 and in 2005 reported wages of $1,765.00 and a business loss from Big Shot Trucking (a sole proprietorship) of $14,405.00. I have seen no earnings records for 2006, and 2007 indicates wages of $4,188.00 as an employee. Mr. Sutton had apparently just begun his trucking business in mid-2005 prior to the storm. The Plaintiffs' Motion to Certify indicates that Mr. Sutton "...will drive trucks again on August 31, 2008..." without further explanation. At this writing Mr. Sutton's deposition has not been taken.

*Discussion of Proposed Business Subclass Representatives*

The above description of the specific plaintiffs who are proposed as business subclass representatives is quite illustrative of the various serious impediments that would cause the failure of any attempt to deal with even this small sample range of diversity in any type of aggregation. The above set of five proposed representatives includes only three with what can readily be described as "businesses" in the sense that governmental and other databases exist for them. Of those three, one had been in existence for perhaps a month prior to the storm (with the attendant impossibility of predicting success or failure based on such short duration), and of the remaining two only one has produced records of business earnings prior to the storm.

12

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

There are differences among the "businesses" with respect to damage causality from flood and other causes. Potential class representatives have made claims for damages against other parties that duplicate the alleged damages in this matter.

Within the business representative group there is a wide diversity of ages, and therefore expectations of durations of any business loss.

Only one of the proposed representative businesses ("Mr. Ribbon") would be amenable to valuation in any traditional economic sense given either the nature of the "business," or the information that is available or has been produced relative to the claims, and there would likely be significant dispute as to the post-storm mitigation choices made for that business.

Potentials for mitigation of any business loss would clearly vary widely amongst the proposed class representatives, given the diversity of their ages, business history and other personal characteristics. Investigation of actual and potential mitigation would clearly require quite individual analysis and perhaps professional rehabilitation judgments.

*Data Collection and Analysis*

The necessary collection of very individual business data that capture pre-storm business profitability (such as income tax returns for each individual business) is a major impediment to class treatment. I discuss this issue above. In addition, the issue of mitigation constitutes a very important barrier to subclass wide demonstration of damages.

The potential subclass is defined as the *owners* of businesses. A business owner's economic damage is the difference between the profits that the owner could have earned but for the alleged event, minus any offsetting income that the same owner either did or could have earned given that the event did happen. This latter set of information is the mitigation that must be used to offset the loss of business profits discovered by evaluating the business pre-storm.

13

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

Such mitigation would be provable by very specific information from individual business owners, at first blush, by the income they have actually earned since the storm. However, this is not necessarily the best estimate of mitigation, which would be the income that pre-storm business owners could have earned post-storm, putting forward reasonable efforts to earn income. This latter type of potential, but not actual, mitigation is very difficult to determine, even on an individual level, and commonly requires that analysis by vocational and other experts be performed through individual interviews and testing.

The final demonstration of validly-estimated economic damages on the part of the potential subclass will require quite specific individual analysis of both actual and reasonably available mitigation of lost business profits, of the same type that would be necessary in individual legal proceedings. It is quite likely (given for example, simply the diverse evidence of mitigation produced by class representatives that I discuss above) that producing reasonable estimates of mitigation is an inherently individual process that is not at all subject to aggregation across any subset of business owner plaintiffs.

*Evaluation of the Kilpatrick Affidavit*

Over and above the class certification issues I discuss above, the Kilpatrick affidavit makes certain statements about the analysis of business losses that raise issues as to the reliability of any results that would be produced using the affidavit's proposed mechanisms:

- The Kilpatrick affidavit says that business economic damages in this matter can be assessed by addressing the before and after storm values of plaintiff businesses. If taken literally, this is a naïve view of how such damages would necessarily be analyzed. Keeping in mind that the plaintiffs are the *owners* of the business, the simple comparison of before and after business values does not necessarily capture other important aspects of proving damages, such as other remunerative activities that a business owner pursued or could have pursued post-storm (such as finding a job as an employee in another geographic area, or working on restoring other owned property), that would have mitigated the business loss.

14

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

- The Kilpatrick affidavit implies that there are elements of potential business loss over and above the loss of business value that would include loss of property value, loss of other physical assets and loss of intangible items such as goodwill or customer loyalty. This assertion is contrary to received financial economics, and would likely result in overestimation or double-counting of any business losses. The issue is essentially that in order to produce profits (and thus value) a business must have assets, and those assets are not otherwise useable without foregoing profits. Thus if a business is compensated for loss of profits (and business value) it cannot also be compensated for loss of asset values. Further, it is commonly known in financial economics that correctly calculated business values (such as those quoted in financial markets) include all items, such as goodwill (typically defined as the difference between market value and accounting book value) and customer loyalty.

- The Kilpatrick affidavit, in discussing documentation appropriate for analyzing business loss, cites federal corporate income tax returns (Form 1120), and specifically states that compilation of the data on line 3 of that form ("Gross Profits") is the correct standard by which to judge business profits. This is a puzzling statement because this item on a corporate income tax return is in no sense a potentially correct measure of business profits, being simply the difference between a company's receipts and its cost of goods. A company's gross profit number completely ignores operating, financial and other costs that must also be addressed in order to arrive at a "bottom line" (which resides on Form 1120 as line 30 "Taxable Income"). The only context in which a business's gross profit would be of interest would be that in which the business continued to incur all of the other operating costs below that line on its tax return, a highly unlikely situation in this matter.

- The Kilpatrick affidavit in recognizing that some businesses may have lost records during the storm mentions certain database accumulations that could be substituted for individual business records. The best data that do exist on well-defined business lines also indicate a very large variation across individual businesses, even very finely classified, for the reasons that I state above.

15

Re: Katrina Canal Breaches
Pertains to: Barge
August 26, 2008

- The Kilpatrick affidavit cites as a potential source of business income data the Forms
  R-4310 that are required filings by corporations doing business in the State of
  Louisiana, and record gross sales revenues of the business (this form is for Louisiana
  to decide on taxation of corporations that do business in other states, given tax
  apportionment formulas among such states). The affidavit says that such data could be
  combined with the profit ratio data mentioned above to estimate business profits.
  Aside from the other problems with the profitability data I mention above, I note that
  this R-4310 data is only for formally incorporated companies, and would not include
  other non-corporate entities such as sole proprietorships, which likely comprise
  numerically most of the putative business subclass (see my discussion of the class
  representatives above).

*Conclusion*

My evaluation of the available information on the proposed business subclass in this matter
demonstrates that any attempt to produce reasonable estimates of economic loss to plaintiffs
through some type of aggregative or formulaic process such as that described in the Kilpatrick
affidavit is destined to fail. Because of the great diversity amongst business types, sizes, and
success or failure likelihoods, because of the great disparity in available information about such
businesses, because of owner-mitigation complexities and diversity post-storm, and because of
causality issues that would differ amongst plaintiffs, the only reasonable avenue to proving
damages would be to analyze each business on an individual basis, and not as a member of a
group. As I have illustrated above, the business class representatives offered by plaintiffs cannot
be considered to be useful proxies for other businesses owners that are potential class members
in this litigation.

16

<u>CURRICULUM VITAE</u>

**Kenneth Justin Boudreaux**
Professor of Finance and Economics
A. B. Freeman School of Business
Tulane University
New Orleans, LA  70118


Ph.D.  University of Washington  1970

MBA    Tulane University        1967

A.B.   Princeton University     1965


## POSITIONS HELD:

| | |
|---|---|
| 1978 - Present | Professor of Economics and Finance, A. B. Freeman School of Business, Tulane University. |
| 1981 - 1983 | Associate Dean for the Faculty, School of Business, Tulane University |
| 1973 - 1978 | Associate Professor of Economics & Finance, School of Business, Tulane University. |
| 1970 - 1973 | Assistant Professor of Economics & Finance, School of Business, Tulane University. |


## PUBLICATIONS:


### Books:

<u>Finance</u>, Pitman (Financial Times) Publishers, London, 1990, 1999.

<u>The Basic Theory of Corporate Finance</u>, Prentice-Hall, Englewood Cliffs, NJ, 1977.  (With H. W. Long.)

**Articles:**

"Patton & Nelson Personal Consumption Revisited: Is Income Important?" Journal of Forensic Economics, Vol. 12, No. 3. (Fall 1999)

"Conglomerate Merger, Wealth Redistribution and Debt: A Note" Journal of Finance, Vol. 39 (March 1984) pp. 275-281. (With Chun Lam.)

"Compensating Balances, Deficiency Fees, and Lines of Credit," Journal of Banking and Finance, Vol. 7 (1983) pp. 307-322. (With Chun Lam.)

"Compensating Balance, Rationality and Optimality," Journal of Banking and Finance, Vol. 5, No. 4 (1981) pp. 451-466. (With Chun Lam.)

"The Weighted Average Cost of Capital as a Cutoff Rate: A Further Analysis," Financial Management, Summer 1979. (With H. W. Long.)

"The Compensation Implicit in Employee Stock Options," Journal of Accounting Research, Vol. 14, No. 1, Spring 1976. (With S.A. Zeff.)

"Divestiture and Stock Price," Journal of Financial and Quantitative Analysis, Vol. X, No. 4, November 1975.

"Competitive Rates, Market Efficiency, and the Economics of Security Analysis," The Financial Analysts Journal, Vol. 31, No. 2, March/April 1975.

"The Profitability of Managerial Enterprise: Comment," Western Economic Journal (Economic Inquiry), Vol. XIII, No. 1, March 1975.

"The Pricing of Mutual Fund Shares," The Financial Analysts Journal, Vol. 30, No. 1, Jan/Feb 1974.

"Discounts and Premiums on Closed-End Mutual Funds: A Study in Valuation," Journal of Finance, Vol. XXVIII, May 1973.

Managerialism and Risk-Return Performance," Southern Economic Journal, Vol. XXXIX, No. 1, January 1973.

"Managerialism and Risk-Return Performance: Reply," Southern Economic Journal, VOl. XXXXX, January 1974.

**COMMUNICATIONS:**

"One Reason Interest Rates Are Likely to Stay High," American Banker, CXLVI, 247 pp. 3-5. (With R. Haney Scott.)

Page 2

"A Further Adjustment Necessary to Estimate Lost Income". <u>Monthly Labor Review</u>, Vol. 106, 10. pp. 30-31. (October 1983).

## <u>PEDAGOGY</u> - <u>PUBLICATIONS</u>:

"Incorporating the Capital Asset Pricing Model into the Basic Finance Course," <u>Journal of Financial Education</u>, Fall 1977. (With H. W. Long.)

"Culver II:  An Economic Perspective," <u>Louisiana Bar Journal</u>, Vol. 32, No. 3 (October 1984) pp. 142-147. (With Dr. Seymour Goodman.)

"On the Use of Experts" Torts and Insurance Section <u>Proceedings of the American Bar Assoc.</u>, Summer 1987. (Invited Paper).

### - <u>INVITED WORK</u>:

<u>Finance</u>, a set of materials including a programmed text, cases, examinations, etc. used in the first non-residential MBA degree program offered the U.K., the Continent, and developing countries.  (With Professors Keith Lumsden, Harper Boyd, etc., published by Pittman Publishers (acquired by Longman and thence Addison-Wesley) and degree granted by Heriot-Watt University of Edinburgh, Scotland.)

## <u>UNPUBLISHED RESEARCH</u> (completed):

"Capital Budgeting and the Art of Optimal Capital Structure Maintenance".  (With H. W. Long.)

"Bank Capital Regulation and the Probability of Bank Failure".  (With Chun Lam.)

"Multiperiod Discounting, Valuation, and Corporate Financial Decisions".

"A Resolution of the 'Fallacy' in Correcting the Yield Curve for Duration."

"Valuation, Leverage, and the Cost of Capital:  Comment."

"A Note on the Controversy Regarding Control and Performance," cited in <u>Journal of Finance</u>, Vol. XXVII, No. 4.

"A Model for Control-Performance Dependence."

"On the Use of Mutual Funds in Market-Model Bias Testing."

"Pipeline Financing."  (With Timothy Greening.)

## PAPER PRESENTATIONS:

"Discounts and Premiums on Closed-End Mutual Funds," Toronto, 1972, American Finance Association.

"Divestiture and Share Price," San Diego, 1975, Western Finance Association.

"Incorporating the Capital Asset Pricing Model into the Basic Finance Course," San Francisco, 1977, Western Finance Association.  (With H. W. Long.)

"Multiperiod Discounting, Valuation, and Corporate Financial Decisions," Seattle, 1978, Financial Management Association.

"Financial Modeling," various bodies (Financial Executives Institute, Systems Analysts Society, etc., 1973, 1976, 1977, etc.).

"Compensating Balances vs. Fee Arrangements," Financial Management Association, Boston, October 1979.

"Financing and Pipeline Regulation," Financial Management Association, New Orleans, October 1980.

"Compensating Balances, Deficiency Fees, and Lines of Credit" Western Finance Assoc. (1981).

"The Participation Effect of Preexisting Debt," Financial Management Association, San Francisco 1982.

"On the Use of Experts" <u>American Bar Association</u>, Annual Meetings, San Francisco Summer 1987 (invited).

## SEMINARS:

"New Developments in Capital Market Theory," Tulane University, 1974, 1975, 1976, 1977, 1980, various groups.

"Financial Management," London, 1978, ACL consortium; Oslo 1978 Norwegian Ship Research Institute, also 1979 London and Oslo, 1980 Oslo, 1981 Oslo, 1982 Oslo and Bermuda, 1983 London, 1984 Oslo and London, 1985 Hilton Head, 1986 Hilton Head, 1987 Hilton Head, 1988-1989 Edinburgh; also to Reckitt-Colman, London 1984-1989.

"The Economist in Litigation," To several legal associations in Louisiana, and Texas, various times 1981 - present; also to the Louisiana Judicial College, Spring 1984, and

Tulane <u>Maritime Law Institute</u>, annually since 1980.

"Changes in Financial Markets and the Future of Financial Institutions," Tulane Business Forum, 1982.

Diversification Through Acquisition:   "The Evidence to Stage III" top management of British Petroleum, plc, London, annually 1983, 1984, 1985, 1986, 1987.

## <u>ASSOCIATION ACTIVITIES</u>:

### <u>Editorships</u>

- <u>Journal of Financial Research</u>, Associate Editor.

- <u>Review of Business and Economic Research</u>, Associate Editor.

<u>Referee</u>  - <u>Journal of Financial and Quantitative Analysis</u>.

- <u>Journal of Finance</u>.

- <u>Financial Management</u>.

- <u>Economic Inquiry</u>.

- <u>The Accounting Review</u>.

- <u>Journal of Marketing Research</u>.

- <u>Southern Economic Journal</u>.

- <u>Journal of Financial Research</u>.

- <u>Journal of Financial Economics</u>.

## <u>Memberships</u>:

American Economic Association.

American Finance Association.

Western Finance Association.

Western Economic Association.

Southern Finance Association.

Southern Economic Association.

Page 5

Financial Management Association.

Financial Analysts Federation.

Beta Gamma Sigma (University of Washington).

## AWARDS:

Faculty Honor Roll.

Outstanding Professor (1970-71; 1991).

Howard W. Wissner Award (1971-72; 1973-74).

Honorary Lectures - "Inflation and Financial Decisions," April 1978, Instituto Technologico y de Estudios Superiores de Monterrey, Mexico.

Distinguished Professor - Tulane University 1980 (continuing).

## CONSULTING:

| **Voluntary:** | Mayor's Task Force |
| | League of Women Voters - Municipal - Finance |
| | Contemporary Arts Center |
| **Paid:** | Economic Valuation in Personal and Corporate Litigation |
| | Antitrust Analysis |
| | Merger and Takeover Analysis |
| | Regulatory Rate Structures |
| | Securities Market Economics |

## COURSES TAUGHT:

Basic Managerial Finance

Evaluation of Securities and Portfolios

Page 6

Advanced Corporate Finance

Microeconomics

Managerial Economics

Advanced Financial Theory Seminar

**SCHOOL, UNIVERSITY COMMITTEES:**

(Just about everything at one time or another.)

**DISSERTATION SUPERVISION:**

Seereiter, Dennis, Ph.D. 1981.

Horwitz, Joan, Ph.D. 1979.

Marjorie Utsey, Ph.D. 1984.

Mitchell Porche, Ph.D. 1990.

# Testimony of Kenneth J. Boudreaux, Ph.D.
## During Last Four Years

| Date | Plaintiff | Defendant | Attorney | Firm Name |
|---|---|---|---|---|
| 9 /28/04 | Clifford Crane, III | Henry Larocca, M.D., et al. | Gallagher | Gallagher Law Firm |
| 9 /30/04 | Pam Rabalais | St. Tammany Parish School | Dabdoub | Irwin Fritchie Urquhart & |
| 10/14/04 | Shaun Lee Smith | Harrah's New Orleans | Ballina | Heller, Draper, Hayden, Patrick |
| 10/22/04 | Randy Walker | Alton Ochsner Medical | Batt | Lobman, Carnahan, Batt, |
| 10/22/04 | James Vineyard | Estes Express Lines Corp., et al. | Hailey | Hailey, McNamara |
| 11/17/04 | Willie J. Garry | Exxon Mobil Corporation, et al. | Gelpi | Terriberry, Carroll & Yancey |
| 12/14/04 | Dr. Robert Rosenthal | United States | Moir | Quilling Selander Cummiskey |
| 12/16/04 | Scott Morse | APEX Digital TV | Holwadel | Adams, Hoefer, Holwadel & |
| 12/29/04 | Melba Margaret Schewgmann | John F. Schwegmann, et al. | Barker | Harang & Barker, LLC |
| 1 /6 /05 | Melba Margaret Schewgmann | John F. Schwegmann, et al. | Barker | Harang & Barker, LLC |
| 1 /19/05 | Charles Elmer | West Jefferson Levee District, et | Mole | Frilot Partridge |
| 1 /26/05 | Gerald Page, Jr. | Dr. Gregg Bendrick, et al. | Fontenot | Adams and Reese |
| 2 /4 /05 | LHO New Orleans, L.P. | MHI Leasco New Orleans, Inc., | Corcoran | KMZ Rosenman |
| 2 /11/05 | LHO New Orleans, L.P. | MHI Leasco New Orleans, Inc., | Corcoran | KMZ Rosenman |
| 2 /23/05 | Broadscape | Jones Walker | Lund | Montgomery, Barnett |
| 2 /23/05 | LHO New Orleans, L.P. | MHI Leasco New Orleans, Inc., | Corcoran | KMZ Rosenman |
| 3 /2 /05 | Walter A. Glod, Jr. MD | W. Gregory Baker, et al. | Viviano | Attorney at Law |
| 3 /7 /05 | Fashion Plantation, LLC | Union Pacific Railroad | Howard | Baker Donelson |
| 3 /10/05 | Manuel Van Dugas | Argent Advisors, Inc. | Hand | Baldwin Haspel |
| 3 /30/05 | Rudolph Fletcher | State Farm Ins. Co., et al. | Loehn | Boggs, Loehn & Rodrigue |
| 4 /8 /05 | James (Matthew) Ott | Consolidated Freightways | Baay | Gieger, Laborde & Laperouse |
| 4 /20/05 | Marcus Todd Odom | Entergy New Orleans,  Inc. | Lambert | Baker Donelson |
| 5 /10/05 | Dale Herbert | Avondale Industries,  et al. | Ordeneaux | Plauché Maselli  Parkerson |
| 5 /25/05 | Terry Len Hoyt | Berry Bros. General Contractors, | Mahtook | Mahtook & Lafleur |
| 6 /7 /05 | Capital One | Massachusetts | Carchia | Capital One Services, Inc. |
| 6 /21/05 | Felicien Sanchez | ITEQ Tank Services, Inc. | Baay | Gieger, Laborde & Laperouse |
| 7 /12/05 | Jeramy Robert Govan, et al. | DuPont, et al. | Abbott | Abbott, Simses |
| 7 /19/05 | Jeremy Graham | Ensco Offshore Company | Schwartz | Baldwin Haspel Burke & |

# Testimony of Kenneth J. Boudreaux, Ph.D.
## During Last Four Years

| Date | Plaintiff | Defendant | Attorney | Firm Name |
|---|---|---|---|---|
| 11/8 /05 | David Pennywell | Carter Construction Company, | Fraser | Fowler Rodriguez |
| 1 /11/06 | Marilyn Morgan | O. S. Johnson, Inc., et al. | Higgins | Jeansonne & Remondet |
| 1 /27/06 | Charmaine Banks | Burger King, et al. | Miller | Waller & Associates |
| 3 /9 /06 | Tortorich | Morgan Stanley | Gill | Gill, Ward & Echols |
| 3 /27/06 | Caleb Miers | Cintas Corporation No. 2, et al. | Newman | Attorney at Law |
| 3 /30/06 | Melinda Doucet | Gayden, et al. | Recile | Chehardy, Sherman, Ellis, |
| 4 /7 /06 | Vernell Collins | Seahorse Marine, Inc. | Shelton | Johnson, Johnson, Barrios & |
| 4 /7 /06 | Thompson Walker, Jr. | Kenneth Riddle, et al. | Batt | Lobman, Carnahan, Batt, |
| 4 /13/06 | Wade H. Stanley | United States of America | DeYampert | Torts Branch, Civil Division |
| 5 /3 /06 | Sarah L. Elfert | Ford Motor Company (Ford | Maxwell | McCranie Sistrunk |
| 5 /16/06 | Sarah L. Elfert | Ford Motor Company (Ford | Maxwell | McCranie Sistrunk |
| 5 /24/06 | Durlin J. Dixon | National Union Fire Insurance | Eckert | Bastian & Associates |
| 5 /25/06 | Jemone Johnson | Murphy Exploration & | Kiefer | Kiefer & Kiefer |
| 5 /25/06 | Terry Lejeune | Transocean Offshore Deepwater | Hymel | Preis & Roy |
| 6 /14/06 | Michael L. Sanford | Florida Marine Transporters, | Staines | Staines & Eppling |
| 7 /13/06 | Willam F. Schmidt, DDS | MTD Products, Inc., et al. | Nelson | Nelson Fay |
| 7 /24/06 | Daphne LeRay | Nissan Motor Corp. in USA, et | Galvis | Entergy Services, Inc. |
| 8 /2 /06 | Geoffrey D. Duke | Crescent Ship Service | Gianna | Middleberg, Riddle & Gianna |
| 8 /24/06 | Sal Ciolino & Associates | First Extended Service | Gianna | Middleberg, Riddle & Gianna |
| 8 /25/06 | Daphne LeRay | Nissan Motor Corp. in USA, et | Galvis | Entergy Services, Inc. |
| 9 /20/06 | Cody Leonard | Brink's Inc. | Anderson | Galloway, Johnson, Tompkins, |
| 9 /28/06 | Nolan Broussard, Jr. | Stolt Offshore, Inc. | Mouton | Mahtook & Lafleur |
| 10/2 /06 | Louisa Keleher | State of Louisiana, et al. | Bumpas | Connick & Connick |
| 10/9 /06 | Marcus Ryan | Zurich American Insurance Co. | Burke | The Law Offices of Geraldine |
| 10/11/06 | Kerry LeBlanc | State of Louisiana DOTD | Culver | Department of Justice |
| 11/15/06 | NOEILA Pension Fund | Gabriel, Roeder & Smith, et al. | Wright | Deutsch, Kerrigan & Stiles |
| 11/21/06 | Tara (Mickey) LeBlanc | Stainless Tank and Equipment | Albert | Galloway, Johnson, Tompkins, |
| 12/6 /06 | Michael Brown | DOTD | Huffman | Department of Justice |

Tuesday, August 26, 2008

# Testimony of Kenneth J. Boudreaux, Ph.D.
## During Last Four Years

| Date | Plaintiff | Defendant | Attorney | Firm Name |
|---|---|---|---|---|
| 12/7 /06 | Walter A. Glod, Jr. MD | W. Gregory Baker, et al. | Viviano | Attorney at Law |
| 12/19/06 | Angela Forsythe | Bean Dredging, LLC | Breaud | Breaud & Meyers |
| 2 /2 /07 | Robert Theodile | Delmar Systems,Inc., et al. | Simon | Laborde & Neuner |
| 2 /8 /07 | Price | Sentry Insurance Company, et | Privat | Hurlburt, Privat & Monrose |
| 2 /12/07 | Roger Nunn | Dolese | Nelson | Attorney at Law |
| 2 /22/07 | General Mills | California | Vallejo | Morrison Foerster |
| 2 /23/07 | Michelle (Jaysen) Underhill | AVCO Corporation, et al. | Smith | Smith & Moore |
| 2 /28/07 | George Carroll | Praxair | Gianna | Middleberg, Riddle & Gianna |
| 3 /8 /07 | NOEILA Pension Fund | Gabriel, Roeder & Smith, et al. | Wright | Deutsch, Kerrigan & Stiles |
| 3 /21/07 | Edward Howard | National Union Fire Ins. Co., et | Bone | Gieger, Laborde & Laperouse |
| 3 /30/07 | Marcos Masariegos | Patient's Compensation Fund | Groh | Hemelt and Foshee |
| 4 /5 /07 | Jose Alfaro Jr. | Allied Van Lines, Inc. | Roniger | James Ryan III & Associates |
| 4 /9 /07 | Christopher Srubar | Rotorcraft Leasing Co., LLC | Tuttle | Guglielmo, Lopez, Tuttle, |
| 4 /11/07 | James Gaspard | Sentry Insurance | Schutte | Guglielmo, Marks |
| 5 /7 /07 | Michael Schmidt | CCF-Weston | Vezina | McIntosh, Sawran, Peltz & |
| 5 /16/07 | Wanda (Richard, Sr.) Lafleur | AFTCO Enterprises, et al. | Dill | The Dill Firm |
| 5 /17/07 | Rattler Tools, Inc. | BilcoTools, Inc. | Ruttley | Rattler Tools |
| 5 /31/07 | Susan Hicks | State of Louisiana, et al. | Heard | Department of Justice |
| 6 /12/07 | David Garcia, Jr. | Ford Motor Company, et al. | Maxwell | McCranie Sistrunk |
| 6 /26/07 | Robert L. Vaughn | Leonard C. Hawkins, et al. | Kerrigan | Deutsch, Kerrigan & Stiles |
| 6 /27/07 | Tyronne Flemings | LSU Board of Supervisors | Imbornone | Favret, Demarest, Russo & |
| 7 /3 /07 | Yvette (Rickey) Mire | Wilmar J. O'Shee, et al. | Culver | Department of Justice |
| 8 /6 /07 | Ervin Dwayne Ledoux | Rolls-Royce Corporation, et al. | Colletta | Christovich & Kearney |
| 8 /17/07 | Reynaldo Gonzalez | Great Lakes Dredge & Dock | Watkins | Royston, Rayzor |
| 8 /23/07 | Christopher L. Morgan | TODCO | Welch | Lemle & Kelleher |
| 9 /1 /07 | Tana Pittman | National Interstate Ins. Co., et al. | Williams | Breazeale, Sachse & Wilson |
| 9 /5 /07 | Angelia Wallace | THE Offshore Drilling Company | Crawford | Balch & Bingham |
| 9 /11/07 | Faith Darby | City of New Orleans, et al. | Gaines | Attorney at Law |

Tuesday, August 26, 2008

# Testimony of Kenneth J. Boudreaux, Ph.D.
## During Last Four Years

| Date | Plaintiff | Defendant | Attorney | Firm Name |
|---|---|---|---|---|
| 10/2 /07 | Shannon Suarez | LP Gaming Company, et al. | Solari | Woodley, Williams |
| 10/3 /07 | Robin Mitchell | Dr. Hazeem Elariny | Trowbridge | Porteous, Hainkel & Johnson |
| 10/5 /07 | Mathew Wendelboe | Exxon Shipping Company, et | Rayer | Wagner & Bagot |
| 11/8 /07 | Nga Thi (Thuan Van) Tran | Dufrene Boats | Cohn | Lugenbuhl, Wheaton |
| 11/13/07 | Lion Copolymer, LLC | DSM Copolymer, Inc. | Currault | Gordon, Arata |
| 11/29/07 | James Carey | Hercules Ocean Corporation | Lawton | Phelps Dunbar |
| 12/10/07 | James Harold Moore, et al. | State Farm Mutual Automobile | Mallery | Kieswetter Wise Kaplan Prather |
| 12/11/07 | Frank L. Willis | TRC Companies, Inc. | Rundell | Gold, Weems |
| 1 /11/08 | Randall Flowers | Entergy, et al. | Ellis | Perry, Atkinson, Balhoff, |
| 1 /15/08 | Grayling Vital | Coastal Catering, LLC, et al. | Meeks | Wheat, Opperman and Meeks |
| 2 /8 /08 | Alex Frizzell, Jr. | Diamond Offshore Drilling, Inc. | Watkins | Royston, Rayzor |
| 2 /13/08 | Robert C. Baucom | Sisco Stevedoring, LLC, et al. | McCauley | Rabalais, Unland & Lorio |
| 3 /6 /08 | Dewright Peters | Nissan Forklift Corp, N.A. | Williams | McCranie Sistrunk |
| 3 /17/08 | Sondra (Bruce M.) Rubin | Aggressor Fleet, Inc., et al. | Raines | Murphy, Rogers, Sloss & |
| 3 /26/08 | Tommy Aubert | David Guidry, et al. | Roy | Preis & Roy |
| 4 /17/08 | Roel Cepeda | T. W. LaQuay Dredging, Inc. | Ribarits | Preis & Roy |
| 4 /25/08 | Michelle Isles | State of Louisiana | McGaw | Department of Justice |
| 4 /28/08 | Discount Cigarettes | Franklin Supply, Inc. | Enright | deLaup,Miranda & Enright |
| 4 /29/08 | Sackman | Galliano Tugs | Green | Kean, Miller |
| 4 /30/08 | Wallace Wills | Hornbeck Offshore Operators | Crane | Johnson, Johnson, Barrios & |
| 5 /2 /08 | Roel Cepeda | T. W. LaQuay Dredging, Inc. | Ribarits | Preis & Roy |
| 5 /2 /08 | Sandra R. Sanchez | Newton & Associates | Rovira | Leake & Andersson, LLP |
| 5 /19/08 | Glenn Logan | Brink's, Inc., et al. | Anderson | Galloway, Johnson, Tompkins, |
| 5 /20/08 | Larry Poole | Bernard Bethley, et al. | Alsobrook | Ostendorf, Tate, Barnett & |
| 5 /21/08 | Ronnie J. Thornton | Diamond Offshore Drilling, Inc. | Baynham | Baynham Best |
| 6 /23/08 | The Shoe Show of Rocky | Palace Properties, LLC, et al. | Chastain | Chamblee Ryan |
| 8 /21/08 | Rodney J. Fontana | CEC Entertainment, Inc., et al. | Archey | Kantrow, Spaht, Weaver & |
| 8 /21/08 | Herman Newton | Versatility Marine | Staines | Staines & Eppling |