UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES * | | CIVIL ACTION |
| CONSOLIDATED LITIGATION * | | |
| * | | NUMBER: 05-4182 "K"(2) |
| * | | |
| * | | JUDGE DUVAL |
| PERTAINS TO: MRGO * | | |
| * | | MAG. WILKINSON |
| ************************************* | | |

## MEMORANDUM IN SUPPORT ON MOTION TO ADMIT

## DEMONSTRATIVE EXHIBITS

The MRGO PSLC asserts that the demonstrative exhibits presented at the oral argument of the Washington Group International, Inc.'s ("WGI") Motion for Summary Judgment should be admitted because they were presented to aid the Court's understanding of salient facts and issues in a concise fashion. As will be shown below, each demonstrative exhibit was presented in response to issues brought up by WGI, and that had been utilized throughout the discovery process.

Demonstrative evidence must of course be probative of the matter sought to be determined by the trier of fact while not substantially outweighing the danger of unfair prejudice. Furthermore, the foundation of that evidence must be sufficient to support a finding that the demonstrative evidence in question is what its proponent claims.[1]

---

[1] Fed. R. Evid. 901(a).

1

The thrust of the Plaintiffs' Opposition to WGI's Motion for Summary Judgment regarding the government contractor defense is twofold:

1. that there were no specifications with respect to geotechnical evaluations regarding under seepage;

2. that there is no evidence that any government official considered the defective feature of the project in its lack of under seepage evaluations; nor that after a substantive and meaningful review, the government approved these deficiencies in an exercise of discretion balancing technical, military, social and safety trade-offs.[2]

Because the Corps did not exercise any discretion with respect to geotechnical evaluations relative to under seepage, it cannot be said that the government is being "second-guessed" or that its governmental discretion is being infringed upon because the Corps never considered the issue in the first place.[3]

With this background established, Plaintiffs address each particular demonstrative exhibit.

**I.**

**PLAINTIFFS DEMONSTRATIVE EXHIBIT SHOULD BE ADMITTED**

**A.**     **DEMONSTRATIVE EXHIBIT 1 - Colletti Depo. Excerpt**

WGI, in its Reply Memorandum of Law, asserted that "Plaintiffs have not offered a scintilla of evidence beyond self-serving speculation that a finalized O.L.D. permit could have led to the discovery of some otherwise undetected impact that WGII's work allegedly had on the nearby levees

---

[2] Snell v. Bell Helicopter Textron, Inc., 107 F.3d 744 (9th Cir. 1997); Shurr v. A.R. Siegler, Inc., 70 F. Supp.2d 900 (E.D. Wisc. 1999).

[3] Anzalone v. Westech Gear Corp., 638 A.2d 1365 (N.J. 1994).

2

and floodwalls.[4] Plaintiffs responded to this assertion in its Sur Reply, explaining the Corps New Orleans District's ("NOD") own internal policies and procedures requiring that a geotechnical analysis be performed for any subsurface work performed within three hundred (300) feet from the levee center line. The testimony of Gerald "Jerry" Colletti substantiated this axiom.[5]

As argued by the Plaintiffs in its Opposition and Sur Reply, WGI had an independent state law duty to exercise due care in not undermining the integrity of the adjacent flood control facility. Contractors, even government contractors, have no entitlement to blanket immunity from later allegations of negligence. When a contractor prepares designs in any other setting, it is liable for any negligence, even if its customer approves its designs. No immunity for negligence arises merely because the federal government is the customer. The government contractor defense is available only where the contractor could not both comply with its contract and satisfy its state-prescribed duty of care.[6]

Gerald Colletti's testimony was further substantiated by Mr. John Greishaber and Mr. Lee Guillory, the Rule 30(b)(6) designees of the Corps, who both confirmed that permits were required for excavations within the critical area of the flood wall. WGI was present at all of the Corps 30(b)(6) deposition, and had every opportunity to confront those witnesses regarding this issue. For WGI's counsel to argue that WGI does not know where the issue of "the critical area" of the flood wall relative to excavations is derived is completely disingenuous.

---

[4] Def.'s Reply (Rec. Doc. 16296-3), p. 15.

[5] Plaintiffs Sur Reply (Rec. Doc. 16345), at pg. 3.

[6] <u>Boyle v. United Tech. Corp</u>, 487 U.S. 500, 509, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

3

**B.     DEMONSTRATIVE EXHIBIT 2 - Colletti Depo. Excerpt**

This video demonstrative likewise provides the Court with insight regarding the permit process and the need for evaluation of an excavation within the critical area of concern to determine if there would be any impacts on an adjacent floodwall.

Again, this testimony was presented to refute the assertions in WGI's Reply Memorandum that "whatever engineering studies Plaintiffs speculate should have been conducted prior to excavation work commencing in the EBIA were in fact conducted by the USACE and LDOTD, to O.L.D.'s satisfaction, as of Spring 2001."[7]  As evidenced by WGI's own submission of the Declaration of Steven Spencer, the only information provided by WGI that either agency could rely upon was produced in January of 2001, not the Spring of 2001.  Neither the "wedding cake structure" nor the "Sewer Lift Station" work plans had been developed when the permitting information was presented. Therefore, it is impossible for WGI to argue that it had complied with the obligation to obtain permits for these works.

In the interest of economy, the most concise statement was chosen to address this fact, and Mr. Colletti's testimony provided the best opportunity to explain the Corps's local requirement that there is a need for evaluations of excavations within the critical area of the flood wall.  The testimony of both Lee Guillory and John Greishaber, the Corps 30(b)(6) designees, is replete with similiar testimony, and WGI was present for each of these depositions.[8]

---

[7] Def.'s Reply (Rec. Doc. 16296-3), p. 15.

[8] Exhibit 7 of Plaintiffs' Opposition to WGI MOSJ (Rec. Doc. 16216) - Corps 30(b)(6) (Grieshaber) deposition transcript, pgs. 41-43, 74-77, 88-91, 160; Exhibit 8 of Plaintiffs' Opposition to WGI MOSJ (Rec. Doc. 16216) - Corps 30(b)(6) (Guillory) deposition transcript, pgs. 120-21, 124-131, 150-51, 158.

**C.     DEMONSTRATIVE EXHIBITS 3 - 5 - FAQ's**

Each of these demonstrative exhibits utilized at oral argument were taken from the Corps public website.  In its Reply Memorandum, WGI presented the Declaration of Steven Spencer to substantiate its argument that the failure to obtain a permit was immaterial to the Court's evaluation of WGI's duty regarding excavations near the flood wall.  As addressed in Plaintiffs' Sur Reply, WGI's failure to adhere to the permitting mandates established by the State of Louisiana (which incorporated relevant federal law) precluded the supervising agencies from grasping the full import of WGI's works and preventing them from ensuring the structural integrity of the flood control structures.

These demonstrative exhibits cite, in a concise manner, the relationship of the relevant federal law with the statutory mandates of the OLD. Coming from a public source, these demonstrative exhibits are admissible pursuant to Fed.R.Evid. 803(8) and Fed.R.Evid. 902(5).

**D.     DEMONSTRATIVE EXHIBIT 7 - C.F.R. § 208.10**

This demonstrative exhibit simply highlights for the Court the statutory language that governs the conduct of the Corps and the OLD in relationship to the flood control structures.  The inter-relationship of demonstrative exhibits 1 through 7 were presented to provide an accurate context by which the court should consider WGI's submitted Declaration of Steven Spencer.

First and foremost, the use of a demonstrative aid to illustrate the language of a federal statute should be beyond reproach.  In the federal system, "[t]he law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United

States are bound to take judicial notice without plea or proof."[9]

Secondly, the Court should be circumspect of WGI's assertion that it can not be expected to understand the import of the federal regulations relative to the relationship of the Corps and the OLD concerning insuring the integrity of the flood control projects near which it was tasked for work.

Because this demonstrative exhibit merely highlighted the language of a federal statute, this exhibit should be admitted.

**E.      DEMONSTRATIVE EXHIBIT 8 - OLD Letter**

This demonstrative exhibit was Exhibit 8 of the Declaration of Steven Spencer produced by WGI. This demonstrative was of particular interest because it concisely explained the OLD permit process as established in the deposition testimony of the Corps of Engineers and was carbon copied to Gerald "Jerry" Colletti, thereby revealing the interdependent nature of the communication between the OLD and the Corps.

This exhibit was presented by WGI, but simply highlighted by Plaintiffs to the Court as an indication that there should be no question that contractors performing excavations within the "critical area" of the flood control project must present these works for review to ensure the integrity of the adjacent facility.

**F.      DEMONSTRATIVE EXHIBITS 26 - 31 - Kansas City Guidelines**

The demonstrative exhibit of the document referred to colloquially throughout discovery as the "Kansas City Guidelines" was offered to show the Court what "specifications" would look like

---

[9] Lamar v. Micou, 114 U.S. 218, 223, 5 S.Ct. 857, 29 L.Ed. 94 (1885); U.S. v. White, 258 F.3d 374 (C.A.5 (Tex.),2001); Budget Rent-A-Car Corp. v. Fein, 342 F.2d 509, 514 n. 11 (5th Cir.1965) ("federal courts take judicial knowledge of the laws, statutory and judicial, of all of the states. Neither pleading nor proof is required"); J.M. Blythe Motor Lines Corp. v. Blalock, 310 F.2d 77, 78 (5th Cir.1962); Gallup v. Caldwell, 120 F.2d 90, 93 (3d Cir.1941).

had WGI utilized prescriptive specifications instead of the generic terms it chose. In effect, this aid is an exemplar of more detailed specifications actually used by the Corps of Engineers for work proposed near a federally constructed flood control structure.

The Kansas City Guidelines were first utilized in the cross examination of Stephen Roe, one of WGI's 30(b)(6) designees, to establish that not only did WGI fail to review any Corps engineering or technical manuals for performing work near an federally constructed flood control project, but also that WGI did not know the Corps even had such guidelines.[10] The Plaintiffs further utilized the Kansas City Guidelines in the deposition of Mr. Greishaber, one of the Corps 30(b)(6) designees, to establish that WGI only utilized general specifications in its work plans. The Kansas City Guidelines were attached as Exhibit 4 to the Greishaber deposition transcript and were relevant to demonstrate that there are in fact more detailed specifications used by the Corps of Engineers for work proposed near a federally constructed flood control structure.

## II.

## WGI'S OWN DEMONSTRATIVE EXHIBITS SEEK TO DEFLECT THE COURT'S ATTENTION FROM SALIENT ISSUES BEFORE IT

### A. WGI's Demonstrative Exhibits 13 & 14

WGI so eagerly wants to the divert the Court's attention from the irrefutable fact that WGI failed to fulfill its state law duty of care that it begins to present its causation defense with two digitized aerial maps that were not presented, nor even mentioned, in its moving papers.

The Court should consider two salient issues regarding these exhibits. Most importantly,

---

[10] Exhibit 10 of Plaintiffs' Opposition to WGI MOSJ (Rec. Doc. 16216) - Depo. transcript of WGI by Stephen Clay Roe, p. 155-157.

Plaintiffs's expert Robert Bea has already provided detailed reports analyzing the mechanism of failure for each of the levee breaches and the relationship to the work performed by WGI near these breaches. WGI has yet to present its expert reports, and these two aerial photographs were never utilized by WGI during discovery.

Secondly, WGI and the Corps had been in discussions regarding the direction of underground water flow in August of 2005. As was addressed in the Plaintiffs' deposition of George Bacuta, the Task Order 26 geochemist for the Corps, Bacuta advised WGI that the "receiving water body" for the below surface ground water was Bayou Bienvenue northeast of Boland Marine. This bayou is not shown on WGI's Exhibit 13, but it is just off the top of picture to the north of the Pump Station building above of Florida Avenue. Such evidence is but another factor that addresses the mechanism of failure of the flood wall.

Similarly at the Saucer site, Professor Bea's expert report delineates subsurface faults that provided naturally occurring direct conduits for subsurface seepage. The excavation works of WGI, along with their negligent acts associated with these works, allowed the subsurface permeable layers to become charged with a hydrostatic head that caused or substantially contributed to the flood wall failures.

The import of the direction of subsurface ground water flow and the force of the hydrostatic head on the soils beneath the sheet pile tips are as much questions of material fact as are the import of the words of the witnesses and the terms in the documents presented to the court. WGI attempts to draw attention away from these salient facts with aerial maps lacking any foundation. Clearly then, there are substantial questions of material fact that exist that preclude summary judgment. Plaintiffs' demonstrative exhibits substantiate this point.

 B. **WGI's reference to its' MSJ Exhibit 61**

  In its final words to the Court, WGI argued that at ¶ 2.4 of pg. 13 of Exhibit 61 to its Motion for Summary Judgment that import sand was an acceptable specification for the Corps. Notwithstanding the observations that the Bates stamp number indicates that this document was not produced in discovery by WGI, or that this document is only a purported draft of a Corps inner-office memo that did not include any WGI personnel, a plain reading of the exhibit reveals that it addressees RECAP remediation, which was not contemplated to go below a general depth of five feet. (See ¶ 1.2.1 of pg. 3 of the Exhibit). The general specifications addressed here are for general grading purposes of the soil surface to prevent ponding of water. This document does not in any way address the potential for under seepage of the adjacent flood walls. This calculated subversion is telling.

### III.

### THE SIGNIFICANCE OF THE DEMONSTRATIVE EXHIBITS

  WGI has sought to divert the Court's attention from the most salient issue before the Court: that it could have met its state law duty of care while still fulfilling the terms of its contract.

  The present case is not unlike the scenario presented to the Ninth Circuit in Snell v. Bell Helicopter Textron, Inc.,[11] a case in which the trial court's grant of summary judgement was overturned because the court found that "a trier of fact could find that the government did not exercise judgment with respect to the design feature in question, the drive shaft and its

---

[11] Supra.

components."[12]  In that case, the contractor proposed detailed specifications and drawings, and after requiring a number of changes, the military examined, reviewed and approved final detail specifications and drawings.

In overruling the trial court, the Ninth Circuit found that although the evidence revealed that each drawing was signed by a government representative to indicate approval, the evidence did not establish as a matter of law that the government had exercised its discretion with respect to the drive shaft and its components.  The Ninth Circuit found that on the record, the Detail Specification for the helicopter left the design and placement of the drive shaft and its components to the contractor Bell.  The record further showed that Bell then prepared and submitted the drawings for the entire helicopter to the government for examination, review and approval to ensure that they met the Detail Specification.

Despite the district court's finding that this process was conducted by government engineers with expertise to ensure that each drawing was correct and met the Detail Specification, the appellate court found that this evidence did not establish as a matter of law that the government exercised its discretion with respect to the drive shaft and its components. On the contrary, testimony of the Bell official in charge of dealing with the military about the design of the helicopter, who attended all of the design meetings, was that there were no discussions with the government about the design of the critical isolation mounts.

As already shown in the Plaintiffs Opposition, Lee Guillory testified on behalf of the Corps that every time he accepted a document or a work, he was not approving or agreeing that whatever work was done was not having an impact on the potential for under seepage to effect

---

[12] Id., at 748.

the flood wall.[13] Accompanying this Opposition and Sur Reply, the entirety of the Plaintiffs' demonstrative exhibits show in concise fashion that WGI failed to comply with its state law duty of care and that this failure did not result from following precise specifications provided by the Corps.

## IV.

## CONCLUSION

Each of the Plaintiffs demonstrative exhibits were intended to provide the framework for the Court to answer the specific questions of did WGI fail to fulfill its state law duty, and if so, is it appropriate that state tort law be preempted.

As shown above, WGI can not claim prejudice because the information presented through the particular demonstrative was utilized throughout the discovery process. These demonstrative exhibits, read in conjunction with the Plaintiffs' pleadings, demonstrate that the same scenario as was addressed by the Ninth Circuit in <u>Snell</u> is presented to this Court. Because these demonstrative exhibits aid the Court's understanding of the salient facts and issues, each of the Plaintiffs' demonstrative exhibits should be admitted.

**Respectfully Submitted,**

**APPROVED PLAINTIFFS LIAISON COUNSEL**

　　/s/  Joseph M. Bruno
JOSEPH M. BRUNO (La. Bar # 3604)
Law Offices of Joseph M. Bruno
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 561-6775
Email: jbruno@jbrunolaw.com

---

[13] Plaintiffs Opposition (Rec. Doc. 16216), at pg. 25.

MR-GO PLAINTIFFS SUB-GROUP
LITIGATION COMMITTEE

<u>s/ James Parkerson Roy</u>
JAMES PARKERSON ROY
MR-GO PSLC Liaison Counsel
LA Bar Roll Number: 11511
Domengeaux Wright Roy & Edwards LLC
Post Office Box 3668
Lafayette, Louisiana 70502
Telephone: (337) 593-4190 or (337) 233-3033
Email: jimr@wrightroy.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have served a copy of the above and foregoing upon all counsel of record by placing same in the United States mail, properly addressed and with first-class postage, or by facsimile or other electronic transmission this 18th day of November, 2008.

    /s/ Joseph M. Bruno
Joseph M. Bruno