UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In re | CIVIL ACTION NO. 05-4182 |
| **KATRINA CANAL BREACHES CONSOLIDATED LITIGATION** | SECTION "K" (2) |
| | JUDGE DUVAL |
| | MAGISTRATE JUDGE WILKINSON |

**PERTAINS TO:**

**MRGO:**

**NO. 06-2268 (Robinson)**

### AMICUS BRIEF IN OPPOSITION TO UNITED STATES'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**May It Please the Court:**

Universal Health Services ("UHS"), Plaintiff in four consolidated matters in the MRGO category of cases, submits this amicus brief in opposition to the Motion for Partial Summary Judgment (the "Motion") filed by the United States (the "Defendant").[1]  UHS files this brief to

---

[1] The four case numbers in which UHS is a Plaintiff are 07-5016, 07-5286, 07-5254, and 07-5350.

respond to plain misstatements of law in Defendant's Reply Memorandum.

Defendant posits that, "under well-established tenets of Louisiana law, the widening of the MRGO cannot be deemed a substantial factor unless there is evidence that the widening was a 'but for' cause of their alleged damage."[2] Defendant then asserts that "even conduct that combines with other conduct to cause harm cannot be considered a legally sufficient cause-in-fact unless the conduct itself, *considered alone*, is shown to have been a substantial causative factor."[3] Taking these two sentences together, Defendant purportedly believes its maintenance and operation of the MRGO is a "substantial causative factor" only if there is evidence that, considered alone, it was a "but for cause" of the alleged harm. There is **no** support for this position in Louisiana law.

I.      **Defendant's Disregard of the "Colossus"**

Alston Johnson, a former nominee to the Fifth Circuit, has described Professor Wex Malone, a longtime professor at the LSU Law Center, as a "Colossus bestriding the harbor of tort law as almost no other scholar ever has."[4] Defendant's Reply Memorandum disregards the teaching of this "Colossus" in its brief on causation in Louisiana. Over fifty years ago, Professor Malone ruminated on the substantial factor test in "combined force situations."[5] Professor Malone described a situation "familiar to every first-year law student: Two noisy motorcycles simultaneously pass the horse on which plaintiff was riding, frightening the animal and causing it to run away and injure

---

[2] *See* Defendant's Reply Memorandum at 14, Doc. No. 16288.

[3] *See id* at 18 (emphasis added).

[4] *See* Johnson, Alston "*Ruminations on Tort Law: A Symposium in Honor of Wex Malone - Reminiscing About the Great Ruminator*," 44 La. L. Rev. 1167 (May, 1984).

[5] *See* Malone, Wex, "*Ruminations on Cause-In-Fact*," 9 Stan. L. Rev. 60, 88 (December 1956).

plaintiff."[6]

Professor Malone recognized that, in such a situation, the "but for" test "fail[s] . . . to justify itself policywise."[7]  He then opined that the causation requirement is not abandoned by courts in "combined force cases." Rather, courts "merely re-establish the point of acceptable affinity between misconduct and loss <u>lower on the scale</u>.  There must be evidence that the force set in motion by the defendant was a 'substantial factor' in bringing about the damage."[8]  Critically, Professor Malone rejected any attempt to limit the substantial factor test to combined force cases where, standing alone, each force would be sufficient to cause the harm:

> The *Restatement of Torts*, although recognizing the substantial factor test in the combined force cases, nevertheless insists that it be restricted to situations where the force set in motion by defendant would have been sufficient to produce the damage alone.  This requirement would make the necessity of making an arbitrary estimate with reference to a nonexistent state of affairs . . . . **There is little, if any, support for such a limitation.**  The leading case from which the illustration of two noisy cyclists was taken [*Corey v. Havner*][9] laid down no restriction of this kind.  Instead, the court observed that: 'If each contributed to the injury that is enough to bind both.  **Whether each contributed was a question for the jury**.'[10]

According to Professor Malone, then, there is "little, if any, support" for Defendants' proposed limitation of the substantial factor to combined force cases where, standing alone, each force would have caused the harm.  Subsequent jurisprudence validates Professor Malone's opinion that it would be completely arbitrary to imagine a nonexistent state of affairs, i.e., to remove one

---

[6] *Id.* at 89.

[7] *Id.*

[8] *Id.* (emphasis added).

[9] 182 Mass. 250, 251, 65 N.E. 69 (1902).

[10] Malone, "*Ruminations on Cause-In-Fact*," 9 Stan. L. Rev. at 90 (emphasis added).

cause from a concurrent cause case out of the equation, as the sole basis for a causation determination.

## II. Defendant's Argument Flatly Conflicts With Jurisprudence

Defendant asserts that Louisiana law does not "allow 'but for' causation to be dispensed with merely because there are multiple causes that concur in causing damage."[11] As alleged by Defendant, "only in the rare instance in which multiple causes combine in such a way as to prevent the contribution of each from being analyzed separately does the law allow the substantial factor test to be the sole test of causation-in-fact."[12] While the facts that spawned this litigation may be *res nova*, the Defendant's assertions are not — they were made and rejected in *In re Manguno*.[13]

In *Manguno*, plaintiffs had allegedly contracted lung cancer due to a combination of cigarette smoking and asbestos exposure. Even though there were alleged concurrent causes of the harm, the defendants nevertheless argued that the "but for" test applied.[14] Citing the prototypical example of two bullets converging on a single person, defendants argued that the "but for" test was only dispensed with when each concurrent cause "independently would have caused the damage."[15] Writing for the Fifth Circuit, Chief Judge Poltiz framed the defendants' position as that a "case cannot be a concurrent cause case unless the defendants' actions alone would have caused the

---

[11] *See* Reply Memorandum at 15.

[12] *See id.*

[13] 961 F. 2d 533 (1992).

[14] *See id.* at 535.

[15] *Id.*

4

damage."[16]  Critically, the Fifth Circuit flatly rejected this position, noting that "**[t]his argument misperceives Louisiana law**."[17]

After stating the "long-recognized principle of Louisiana law that causation is not defeated by the possibility that the injury would have happened without the defendant's involvement," the Fifth Circuit "distilled the controlling Louisiana law" as follows:

> Many factors or things or the conduct of two or more persons or companies may operate at the same time either independently **or together** to cause injury and in such case may be a proximate cause.[18]

Here, Plaintiffs in *Robinson* and UHS contend that the negligent maintenance and operation of the MRGO operated "together" with the negligent design and construction of the MRGO to cause injury. Under *Manguno*, the mere "possibility" that the injury could have happened without the negligent maintenance and operation is irrelevant.

### III.  Cases Cited by Defendant Are Inapposite

In the Reply Memorandum, Defendant barely addresses *Manguno*.[19] Defendant focuses, instead, on *LeJeune v. Allstate Insurance Co.*[20] and *Quick v. Murphy Oil Co.*[21] and asserts that those cases "dispose of Plaintiffs' 'operation and maintenance' claim because there is no evidence that the

---

[16] *Id.*

[17] *Id.* (emphasis added).

[18] *Id.* (*citing Petes v. Hayes,* 664 F. 2d 523, 525, n. 1) (emphasis added).

[19] *See* Reply Memorandum at 16.

[20] 365 So. 2d 471 (La. 1978).

[21] 93-2267 (La. App. 4 Cir. 9/20/1994), 643 So. 2d 1291.

maintenance of the MRGO was itself a substantial factor in causing the harm."[22] However, *LeJeune* and *Quick* cannot bear the burden imposed by Defendant.

*LeJeune* shows merely that **one way** to prove causation is to establish that the conduct at issue, considered alone, "would have been sufficient to cause" the alleged damage.[23] There is nothing in *Lejeune*, though, to suggest that this is the **exclusive** means of establishing causation in a concurrent cause case. Indeed, in *Perkins v. Entergy Corp.*, the Louisiana Supreme Court set forth several different methods for satisfying the "substantial factor" test, only one of which could be classified as the "considered alone" test.[24]

Additionally, in *Quick*, the Fourth Circuit stated that "[plaintiff's] exposure to [Garlock's] asbestos-containing products must constitute a substantial factor in causing the asbestosis."[25] UHS agrees with this statement. The difference between this case and *Quick* is that the Louisiana Fourth Circuit Court of Appeal made the decision as to whether Garlock's products were a substantial factor **after a full trial**. The Fourth Circuit had the ability to read the full trial transcript, with testimony from experts, before issuing a ruling on causation. Here, by contrast, Defendant wants this Court to render a judgment on a fact-intensive issue like causation on a **summary judgment motion**, when all doubt and all inferences to be drawn from the facts, including facts asserted in expert reports, must be resolved in favor of the non-movant.[26] In light of these principles, the expert reports

---

[22] *See* Reply Memorandum at 22.

[23] *LeJeune*, 365 So. 2d at 477.

[24] 2000-1372 (La. 3/23/2001), 782 So. 2d 606, 612.

[25] *Quick*, 643 So. 2d at 1296.

[26] *See Reid v. State Farm Mut. Auto Ins. Co.,* 784 F. 2d 577, 578 (5th Cir. 1986); *Gross v. So. R.R. Co.,* 414 F.2d 292, 297 (5th Cir. 1969).

produced by Plaintiffs preclude any summary judgment.

## IV.   Expert Reports Create Issue of Material Fact

In his Declaration, Dr. G. Paul Kemp affirmatively states that the width of the MRGO was a "substantial factor" in the flooding of Plaintiffs' properties:

> This analysis confirmed our hypothesis that the MRGO was a substantial factor in causing catastrophic flooding of Plaintiffs' home and business due to four primary adverse effects created by the MRGO 's design, construction, **operation, and maintenance**. These four conditions were: . . . and (d) **substantial widening** of the MRGO channel from is authorized 650' (top width) to more than 1,000' in Reach 1, and up to 3,000 in Reach 2.[27]

In his discussion of the storm surge, Dr. Kemp noted that "widening of the channel and loss of wetlands" was a factor in the "intensification" and "acceleration" of [the] storm surge."[28] Flooding is a function of when the levee overflows, how long it overflows, and the rate at which it overflows, and storm surge water levels are indicators as to when water will overtop levee protection systems, inducing flooding.[29] In his Declaration, Dr. Kemp concluded that "the potential for flooding of developed areas through overtopping and breaching was increased by the enlargement of the channel as it was operated and maintained by the USACE."

Regarding wave height, Dr. Kemp noted that "channel width and depth clearly matters for waves" and that the wave heights would have been less had the MRGO been maintained at its "as authorized" width and depth.[30] Further, the erosive energy of the wave is directly proportional to

---

[27] Declaration of Dr. G. Paul Kemp, ¶2, Document 16063-3 (emphasis added),

[28] *Id.* at ¶20.

[29] *Id.* at ¶19.

[30] *Id.* at ¶30(a).

height of the wave height.[31] This being the case, the "expansion of the channel, considered separately, contributed more than a third of the increase in wave energy due to the MRGO channel at the time that Katrina struck."[32] The analysis led Dr. Kemp to opine that "the waves crossing the MRGO . . . grow due to the depth of the channel and its fetch, more so for the MRGO as-is scenario than for the smaller authorized channel."[33]

Dr. Kemp's conclusion in his Declaration runs directly counter to Defendant's assertions regarding Plaintiffs' lack of evidence:

> The presence of the MRGO channel as it existed on 29 August 2005—considerably deeper and wider than authorized, denuded of adjacent surge buffering wetlands, and without any in-channel surge inhibitors—increased the wave energy . . . and led to greater surge discharges . . . than would have occurred if the authorized dimensions had been maintained or the project had not been built.
> MRGO channel size matters to flooding. The operations and maintenance program executed by the USACE, consisting primarily of channel dredging, increased the total oceanographic stresses to which the LPV structures were exposed during Katrina, and significantly increased the likelihood of breaching and catastrophic flooding of Plaintiffs' properties.[34]

Defendant never addresses Dr. Kemp's conclusions in its Reply Memorandum. Just as the analysis from the "Colossus" of torts and the opinion from the Fifth Circuit in *Manguno* undermine Defendant's legal position, the opinion of Dr. Kemp fatally weakens Defendant's factual arguments. In a case perhaps unparalleled in its factual complexity, it is incumbent upon Defendant to establish a clear entitlement, factually and legally, to a summary Judgment. Because Defendant has patently

---

[31] *Id.* at ¶30(c).

[32] *Id.*

[33] *Id.* at ¶31.

[34] *Id.* at ¶32.

failed to do so, UHS respectfully requests that this Court deny Defendant's Motion for Partial Summary Judgment.

                                Respectfully submitted,

                                /s/ James M. Garner
                                _____
                                JAMES M. GARNER #19589
                                DARNELL BLUDWORTH #18801
                                JOHN T. BALHOFF, II #24288
                                ASHLEY G. COKER #30446
                                **SHER GARNER CAHILL RICHTER KLEIN &**
                                   **HILBERT, L.L.C.**
                                909 Poydras Street, Twenty-eighth Floor
                                New Orleans, Louisiana  70112-1033
                                Telephone: (504) 299-2100
                                Facsimile: (504) 299-2300
                                **ATTORNEYS FOR UNIVERSAL HEALTH SERVICES, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2008 a copy of the above and foregoing has been filed electronically with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                s/ James M. Garner
                                _____
                                JAMES M. GARNER