# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION  NO.   05-4182 "K"(2) |
| CONSOLIDATED LITIGATION | § | |
| | § | JUDGE DUVAL |
| | § | |
| | § | MAGISTRATE WILKINSON |
| | § | |
| PERTAINS TO:  ROAD HOME | § | |
| *Louisiana State*  C.A. No. 07-5528 | § | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ....................................................................................................... 1

BACKGROUND ......................................................................................................... 4

A.    The State's Petition. ........................................................................................ 4

B.    The Road Home Program And The Purported Transfer Of Policyholders' Rights To The State. ................................................................................................... 5

LEGAL STANDARDS ............................................................................................... 7

A.    Federal Rule Of Civil Procedure 12(b)(6) And *Bell Atlantic Corp. V. Twombly*. ............... 7

B.    Interpretation And Application Of Insurance Contracts And Insurance Law In Louisiana. ......................................................................................................... 9

ARGUMENT .............................................................................................................. 10

I.    The Amended Petition Should Be Dismissed Because The State Lacks Standing, As A Purported Assignee, To Sue On The Insurance Policies. .......................................... 10

    A.    The State Has No Right To Sue Because The Partial Assignments Are Not Enforceable As A Matter Of Law Without The Defendants' Consent. ................. 10

    B.    The Partial Assignment And Subrogation Agreement Violates The Policies' Anti-Assignment Provisions, Which Are Expressly Authorized By Louisiana Law. ........................................................................................ 12

        1.    Defendants' Homeowners Policies Include An Anti-Assignment Clause Prohibiting Assignment Without Consent. ..................................... 12

        2.    Louisiana Civil Code Article 2653 Requires Enforcement Of The Anti-Assignment Clause In The Defendants' Policies. ............................ 13

        3.    Courts Within And Outside Of Louisiana Have Enforced Anti-Assignment Clauses. ................................................................................ 14

        4.    Enforcement Of The Anti-Assignment Clause In This Case Would Fulfill Its Purpose. ............................................................................... 16

    C.    The Partial Assignment And Subrogation Agreements Drafted By The State Authorize The State To Sue Only If An Insured Has Chosen To Abandon, Dismiss Or Release His Or Her Claims. ............................................. 20

i

D.    The State's Attempt To Characterize Its Right As One Of "Subrogation" As Well As "Assignment" Is Unavailing.............................................................21

II.    The State's Claims Seeking Recovery Or Declaratory Judgment With Respect To Flood Claims Are Barred By Controlling Precedent. .........................................23

III.    The State's Claims Seeking Recovery Or Declaratory Judgment Under The VPL Fail As A Matter Of Law. ...............................................................................24

IV.    The State's Claims For Extra-Contractual Damages Or Penalties Fail As A Matter Of Law. .......................................................................................................26

A.    The State Has No Standing To Assert Claims Under Sections 22:658 Or 22:1220. ......................................................................................................26

1.    The State Was Not Assigned The Right To Assert Any Extra-Contractual Bad Faith Claims....................................................................26

2.    Assignees Cannot Assert Claims Under Sections 22:658 Or 22:1220. ........................................................................................28

B.    The State's Claims For Breach Of Fiduciary Duty Fail As A Matter Of Law. ......................................................................................................29

1.    The State's Breach Of Fiduciary Duty Claims Are Not Recognized By Louisiana Law. ................................................................29

2.    Claims For Breach Of Fiduciary Duty Are Preempted............................30

V.    The State's Claims Are Prescribed If The Insured Did Not File Suit By September 1, 2007 With Respect To Katrina Claims And October 1, 2007 With Respect To Rita Claims, At The Latest. ............................................................32

VI.    The State Has Failed To Adequately Plead Any Breach Of Contract Or Bad Faith Action.........................................................................................................35

A.    The State Fails To Adequately Allege That The Insureds Complied With Their Duties Under The Policies, Which Is A Condition Precedent To Suit. ...............................................................................................................35

B.    The State's Breach Of Contract Claims Fail To Plead Breach Of Specific Policy Provisions, As Required By Louisiana Law................................37

C.    The State's Bad Faith Claims Fall Along With The Breach Of Insurance Contract Claims. ..................................................................................38

D.    The State Does Not Allege Any Facts To Support Its Bad Faith Claims. .............39

CONCLUSION............................................................................................................40

# TABLE OF AUTHORITIES

**CASES**                                                                       **Page(s)**

*A. Copeland Enterprises Inc. v. Slidell Memorial Hospital*, 657 So. 2d 1292
(La. 1995).........................................................................................................21

*Abell Corp. v. Northland Insurance Co.*, No. 96-0717, 1996 WL 481072
(E.D. La. Aug. 23, 1996) .................................................................................38

*Alvis v. CIT Group/Equipment Finance, Inc.*, 918 So. 2d 1177
(La. Ct. App. 3d Cir. 2005)..............................................................................22

*American International Specialty Lines Insurance Co. v. Canal Indemnity Co.*,
352 F.3d 254 (5th Cir. 2003) .......................................................................9, 15

*Arias-Benn v. State Farm Fire & Casualty Insurance Co.*, 495 F.3d 228
(5th Cir. 2007)....................................................................................................8

*Auto Owners Insurance Co. v. Star Windshield Repair, Inc.*, 743 N.W.2d 329
(Minn. Ct. App. 2008), *review granted*, No. A07-972, 2008 Minn. LEXIS 214
(Minn. Apr. 29, 2008)................................................................................17, 18

*Barnes v. State Farm Fire & Casualty Co.*, 623 F. Supp. 538 (E.D. Mich. 1985).......................36

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ....................................4, 7, 8, 25
30, 36, 39

*Bilbe v. Belsom*, 530 F.3d 314 (5th Cir. 2008) ...............................................24

*Brown v. Sibley*, 650 F.2d 760 (5th Cir. Unit A July 1981)...............................10

*Cadwallader v. Allstate Insurance Co.*, 848 So. 2d 577 (La. 2003)..........................9, 14

*Campbell v. Stone Insurance Inc.*, 509 F.3d 665 (5th Cir. 2007) .......................30, 31

*Chauvin v. State Farm Fire & Casualty Co.*, 495 F.3d 232 (5th Cir. 2007),
*cert. denied*, 128 S. Ct. 1075 (2008) ..............................................................25

*Ciliberti v. Mistretta*, 879 So. 2d 789 (La. Ct. App. 1st Cir. 2004)......................13

*Clausen v. Fidelity & Deposit Co. of Maryland*, 660 So. 2d 83 (La. Ct. App. 1st
Cir. 1995).........................................................................................................38

*Commercial Tire & Retreading, Inc. v. Mt. Hawley Insurance Co.*, No. 06-4865,
2007 WL 3353413 (E.D. La. Nov. 6, 2007), *withdrawn on other grounds*,
No. 06-4865, 2007 WL 4294594 (E.D. La. Dec. 3, 2007) ...............................31

*Conley v. Gibson*, 355 U.S. 41 (1957) ...............................................................8

*Conoco, Inc. v. Republic Insurance Co.*, 819 F.2d 120 (5th Cir. 1987) ................................15, 16

*In re Consolidated Cos.*, 106 F.3d 396 (5th Cir. 1996) ....................................................................26

*In re Consolidated Cos.*, 185 B.R. 223 (E.D. La. 1995), *aff'd mem.*, 106 F.3d 396
(5th Cir. 1996)..........................................................................................................................26

*Cresson v. State Farm Fire & Casualty Co.*, No. 06-4763, 2006 WL 2912824
(E.D. La Oct. 5, 2006)..............................................................................................................31

*Cuvillier v. Taylor*, 503 F.3d 397 (5th Cir. 2007)............................................................................7

*Del Monte Fresh Produce (Hawaii) Inc. v. Fireman's Fund Insurance Co.*,
183 P.3d 734 (Haw. 2007) .......................................................................................................14

*Del-Remy Corp. v. Lafayette Insurance Co.*, 616 So. 2d 231 (La. Ct. App.
5th Cir. 1993)...........................................................................................................................28

*Dobson v. Allstate Insurance Co.*, Nos. 06-0252 et al., 2006 WL 2078423 (E.D.
La. July 21, 2006) ....................................................................................................................31

*Dousay v. Allstate Insurance Co.*, 741 So. 2d 750 (La. Ct. App. 3d Cir. 1999)...........................39

*Edwards v. Allstate Property & Casualty Co.*, No. Civ. A. 04-2434, 2005 WL
221558 (E.D. La. Jan. 27, 2005) ..............................................................................................38

*Edwards v. Concord Development Corp.*, No. 174487, 1996 WL 33358104
(Mich. Ct. App. Sept. 17, 1996)...............................................................................................16

*Engleman v. Royal Insurance Co. of Liverpool, England*, 51 P.2d 417 (Nev. 1935)...................36

*Farciert v. American National Property & Casualty Co.*, No. 650-102
(La. 24th Jud. Dist. Ct. Oct. 27, 2008).....................................................................................15

*Fontenot v. Hanover Insurance Co.*, 465 So. 2d 743 (La. Ct. App. 3d Cir. 1984),
*rev'd on other grounds*, 465 So. 2d 678 (La. 1985)................................................................15

*Geddes & Moss Undertaking & Embalming Co. v. Metropolitan Life Insurance
Co.*, 167 So. 209 (La. Ct. App. Orleans 1936)........................................................................15

*Geo. H. Jett Drilling Co. v. Tibbits*, 230 F. Supp. 58 (W.D. La. 1964)........................................11

*Gladney v. American Heritage Life Insurance Co.*, 80 F. Supp. 2d 594
(W.D. La. 1999) .......................................................................................................................10

*Graves v. State Farm Mutual Automobile Insurance Co.*, 821 So. 2d 769
(La. Ct. App 3d Cir. 2002)........................................................................................................29

*Harrington v. Amica Mutual Insurance Co.*, 645 N.Y.S.2d 221 (App. Div. 1996).....................36

*Henkel Corp. v. Hartford Accident & Indemnity Co.*, 62 P.3d 69 (Cal. 2003)........................18, 19

*Holloway v. Republic Indemnity Co.*, 147 P.3d 329 (Or. 2006) ....................................16

*Insurance Co. of State of Pennsylvania v. Hutter*, No. 4:98-CV-1063-E, 2001 U.S. Dist. LEXIS 5800 (N.D. Tex. Feb. 26, 2001), *aff'd mem.*, 34 F. App'x 976 (5th Cir. 2002) ...........................................................................................16

*In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182, 2008 WL 3906760 (E.D. La. Aug. 26, 2008) ...................................................34

*In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1230 *and* 128 S. Ct. 1231 (2008) ...............................................7, 12, 23, 24

*L & A Contracting Co. v. Ram Industrial Coatings, Inc.*, 762 So. 2d 1223 (La. Ct. App. 1st Cir. 2000) ....................................................14

*Landry v. Louisiana Citizens Property Insurance Co.*, 983 So. 2d 66 (La. 2008) ........................26

*Langsford v. Flattman*, 864 So. 2d 149 (La. 2004)........................................................28

*LaSalle Parish School Board v. Allianz Global Risks U.S. Insurance Co.*, No. 07-0399, 2008 WL 1859847 (W.D. La. Apr. 24, 2008) ...................................28

*Lee v. United Fire & Casualty Co.*, 607 So. 2d 685 (La. Ct. App. 4th Cir. 1992) ......................36

*Leonard v. Nationwide Mutual Insurance Co.*, 499 F.3d 419 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1873 (2008)....................................................24

*LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348 (5th Cir. 2002) ....................................................16

*Lewis v. Kubena*, 800 So. 2d 68 (La. Ct. App. 4th Cir. 2001) .....................................27

*Lila, Inc. v. Underwriters at Lloyd's, London*, ___ So. 2d ___, 2008 WL 4191139 (La. Ct. App. 4th Cir. Sept. 10, 2008).......................................................34

*Loconte Partners, LLC v. Costa*, No. 650-259 (La. 24th Jud. Dist. Ct. Aug. 20, 2008) ...........................................................................................15

*Louque v. Allstate Insurance Co.*, 314 F.3d 776 (5th Cir. 2002)...........................................37, 38

*Louisiana Associated General Contractors, Inc. v. Louisiana Department of Agriculture & Forestry*, 924 So. 2d 90 (La. 2006) ....................................................9

*Moise v. Mutual Reserve Fund Life Association*, 13 So. 170 (La. 1893) ......................................14

*Mosadegh v. State Farm Fire & Casualty Co.*, No. 07-4427, 2008 WL 4544361 (E.D. La. Oct. 8, 2008)........................................................................................36

*Motor Insurance Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199 (5th Cir. 1990) ...........................29

*N. Vo, Inc. v. Atlantic Casualty Insurance Co.*, No. 07-6861, 2008 WL 687188
(E.D. La. Mar. 10, 2008)................................................................................................15

*N.S.Q. Associates v. Beychok*, 659 So. 2d 729 (La. 1995)............................................................35

*Nguyen v. St. Paul Travelers Insurance Co.*, No. 06-4130, 2007 WL 3275133
(E.D. La. Nov. 5, 2007) ...........................................................................................37, 39

*P.O.P. Construction Co. v. State Farm Fire & Casualty Co.*, 328 So. 2d 105
(La. 1976)........................................................................................................................32

*Papasan v. Allain*, 478 U.S. 265 (1986) .......................................................................................8

*Parkway Insurance Co. v. New Jersey Neck & Back*, 748 A.2d 1221
(N.J. Super. Ct. Law Div. 1998) ....................................................................................18

*Parrish Chiropractic Centers, P.C. v. Progressive Casualty Insurance Co.*,
874 P.2d 1049 (Colo. 1994)...........................................................................................18

*Pelican Supply Co. v. Shreveport Plumbing Co.*, 128 So. 2d 924 (La. Ct. App.
2d Cir. 1961) ..................................................................................................................11

*Pervis v. State Farm Fire & Casualty Co.*, 901 F.2d 944 (11th Cir. 1990)...................................36

*Phillips v. Patterson Insurance Co.*, 813 So. 2d 1191 (La. Ct. App. 3d Cir. 2002) .....................38

*Pumphrey v. City of New Orleans*, 925 So. 2d 1202 (La. 2006) ....................................................9

*Quemetco Inc. v. Pacific Automobile Insurance Co.*, 29 Cal. Rptr. 2d 627
(Ct. App. 1994) ..............................................................................................................18

*Randolph v. Hanover Insurance Co.*, No. 07-3265, 2007 WL 2701139
(E.D. La. Sept. 11, 2007) ...............................................................................................29

*Real Asset Management, Inc. v. Lloyd's of London*, 61 F.3d 1223 (5th Cir. 1995) .....................25

*Riley v. Transamerica Insurance Group Premier Insurance Co.*, 923 F. Supp. 882
(E.D. La. 1996), *aff'd sub nom. Riley v. TIG Insurance Co.*, 117 F.3d 1416
(5th Cir. 1997)................................................................................................................38

*Robbert v. Equitable Life Assurance Society of the United States*, 46 So. 2d 286
(La. 1949)........................................................................................................................35

*Seago v. Travelers Insurance Co.*, No. Civ. A. 02-1949, 2002 WL 31109366
(E.D. La. Sept. 20, 2002) ...............................................................................................14

*Sher v. Lafayette Insurance Co.*, 988 So. 2d 186 (La. 2008)................................................23, 24

*Smith v. Allstate Indemnity Co.*, 256 F. App'x 694 (5th Cir. 2007) ...........................................24

*Society of the Roman Catholic Church v. Interstate Fire & Casualty Co.*,
126 F.3d 727 (5th Cir. 1997) ...........................................................................22

*SR International Business Insurance Co. v. World Trade Center Properties, LLC*,
375 F. Supp. 2d 238 (S.D.N.Y. 2005)...............................................................17

*Staples v. Rush*, 99 So. 2d 502 (La. Ct. App. 2d Cir. 1957) ...........................................11

*Star Windshield Repair, Inc. v. Western National Insurance Co.*, 744 N.W.2d 237
(Minn. Ct. App. 2008), *review granted*, No. A07-216, 2008 Minn. LEXIS 214
(Minn. Apr. 29, 2008) .............................................................................17, 18

*Stein v. Williams Lumber Co.*, 36 So. 2d 62 (La. Ct. App. Orleans 1948) ...................................11

*Talbert v. Allstate Insurance Co.*, No. 06-8807, 2007 WL 1428702
(E.D. La. May 10, 2007) ....................................................................................31

*Taylor v. Sider*, 765 So. 2d 416 (La. Ct. App. 4th Cir. 2000)...........................................29

*Theriot v. Midland Risk Insurance Co.*, 694 So. 2d 184 (La. 1997)................................................28

*Travelers Casualty & Surety Co. of America v. Wright Insurance Agency, Inc.*,
404 F.3d 927 (5th Cir. 2005) .............................................................................30

*Tuepker v. State Farm Fire & Casualty Co.*, 507 F.3d 346 (5th Cir. 2007)................................24

*Westenberger v. State*, 333 So. 2d 264 (La. Ct. App. 1st Cir. 1976) ...........................................35

**STATUTES**                                                                                   **Page(s)**

Fed. R. Civ. P. 12(b)(6)...........................................................................7, 12, 40

Haw. Rev. Stat. § 431:10-228(a) ....................................................................14

La. Civ. Code art. 1 ...............................................................................9

La. Civ. Code art. 9...............................................................................9, 33

La. Civ. Code art. 1825 ...........................................................................22

La. Civ. Code art. 1827 ...........................................................................22

La. Civ. Code art. 1827 cmt. (g) ..................................................................22

La. Civ. Code art. 1829 ...........................................................................22

La. Civ. Code art. 2045 ...........................................................................9

La. Civ. Code art. 2045 to 2057 .......................................................................9

La. Civ. Code art. 2046 ...........................................................................9, 12

La. Civ. Code art. 2047 ...........................................................................9, 12

La. Civ. Code art. 2653 ................................................................................13

La. R.S. 1:4 ..................................................................................................33

La. R.S. 9:5606(A) ......................................................................................30

La. R.S. 22:629(B) .......................................................................................32

La. R.S. 22:1220 ..............................................................................26, 27, 28, 39

La. R.S. 22:658 ................................................................................26, 27, 28, 39

La. R.S. 22:658.3 .....................................................................................33, 34

La. R.S. 22:691(F) ................................................................................13, 26, 32

La. R.S. 22:695 ........................................................................................24, 25

Louisiana Act of June 30, 2006, No 802, 2006 La. Sess. Law Serv. 1918............................33, 34

Robert T. Stafford Disaster Relief and Emergency Assistance Act,
42 U.S.C. § 5155 .........................................................................................6

**OTHER AUTHORITIES**                                                       **Page(s)**

5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357
(3d ed. 2004) ...........................................................................................7

Ins. Info. Inst., Hurricane Katrina:  Fact File, 2007, www.iii.org/media/research/
katrinafacts07/?printerfriendly=yes ....................................................................1

Miss. Dev. Auth., Homeowner Assistance Program Phase 1 Technical
Modification Number 5, www.mississippi.org/userfiles/file/
Home_Owners_Assistance_Program/HAP%20modification %205.pdf ..................................2

The Road Home, Weekly Detailed Statistics as of November 10, 2008,
www.road2la.org/newsroom/stats.htm .................................................................3

Press Release, U.S. Dep't Hous. & Urban Dev., Jackson Approves Louisiana's
$4.6 Billion "Road Home" Program (May 30, 2006),
www.hud.gov/news/release.cfm?content=pr06-058.cfm ...........................................6

## INTRODUCTION

The State of Louisiana ("State" or "Plaintiff") seeks to take over the rights to 155,000 homeowners insurance claims, in order to recover funds that it distributed (or may in the future distribute) to insureds under the Road Home program.  The State, however, has already deducted prior insurance payments in calculating the amounts of the grants it distributed.  This Court has also established a protocol for the State to approve settlements between insurers and insureds, and recover any insurance payments that duplicate amounts previously paid by the State. Although this process has substantially delayed homeowners' receipt of settlement funds, insurers and insureds have cooperated with the State's insistence on inserting itself into that process.

With the protocol in place, what remains of this suit is a bald attempt by the State to squeeze more money out of the insurance companies than was provided to insureds as a result of adjustments and/or settlements of claims which insureds either found to be acceptable or challenged in their own individual lawsuits if they disputed the amounts paid.  The vast majority of the insureds long ago reached a mutually agreeable resolution with their insurer regarding their hurricane-related claims, resolutions that the State seeks to re-open by this litigation.  The insurance industry as a whole has paid out in excess of $40 ***billion*** dollars to policyholders as a result of Hurricane Katrina losses along the Gulf Coast.[1]

---

[1] *See* Ins. Info. Inst., Hurricane Katrina:  Fact File, 2007, www.iii.org/media/research/ katrinafacts07/?printerfriendly=yes (noting that insurance companies have paid out an estimated $40.6 billion dollars on 1.7 million claims in six states from Hurricane Katrina property and auto claims, and that more than 95% of the 1.1 million homeowners claims from Hurricane Katrina in Louisiana and Mississippi, totaling more than $15.5 billion, were settled within one year of the storm) (last visited Nov. 13, 2008).

The State is imposing substantial litigation costs on the insurance industry, taxing this judicial system, and delaying settlement payments, all because the State believes that it knows better than the insureds and the insureds' personal attorneys how much money they should receive from their insurance company for their Hurricane Katrina- and Rita-related losses. As this Court knows, any insureds that are dissatisfied with their insurance adjustment have already brought individual suits. Moreover, there are also putative class action lawsuits making the same or similar allegations. If the insureds recover in those suits and those insureds are Road Home recipients, they will be required to pay the proceeds of those suits, up to the amount of the grant, to the Road Home program. Thus, this lawsuit adds nothing, except unnecessary litigation costs.[2]

In the history of federal and state disaster relief for catastrophes, there is no known precedent for what the State seeks to do in this case. The State's unprecedented action suffers from numerous legal infirmities. As a threshold matter, the purported assignments of policy rights which form the basis of the State's claims are without force and effect, for three reasons. First, the State has no right to sue on a partial assignment of the kind at issue here, without the insurers' consent. Indeed, Louisiana law prohibits partial assignment precisely to preclude the situation created here, where defendants are forced to defend against the same claim in different lawsuits, whether contemporaneously or sequentially.

---

[2] The State of Mississippi has a similar program which, like Louisiana's, is funded by the federal Department of Housing and Urban Development. In contrast to Louisiana, however, Mississippi has not brought suit against insurance companies seeking to recover additional monies on claims for which the insured has not sued his or her insurer. Mississippi, with HUD approval, has decided not to seek to enforce any assignment/subrogation rights with respect to claims on which the homeowner has filed suit against an insurer and reached a settlement that does not specifically allocate payments to particular coverages. *See* Miss. Dev. Auth., Homeowner Assistance Program Phase 1 Technical Modification Number 5, www.mississippi.org/userfiles/file/Home_Owners_Assistance_Program/HAP%20modification%205.pdf (last visited Nov. 13, 2008).

Second, the State's claims are barred by express anti-assignment provisions in the Defendants' policies – anti-assignment provisions which must be honored pursuant to the Louisiana Civil Code.  The State simply cannot take over the rights and commensurate obligations of thousands of policyholders.  If the State has the right to transform itself into a "superpolicyholder" on over 155,000 insurance policies,[3] it would fundamentally alter the nature of a homeowners insurance contract and the risk that insurers agree to assume when they enter into such a contract.

Third, the Road Home partial assignment and subrogation agreements only give the State the right to sue after the insured has chosen to abandon, dismiss or release his or her claim.  The State has failed to allege that the insureds have abandoned, dismissed or released their claims.

In addition, even assuming the purported assignments on which the State's claims are premised are valid and enforceable, each of the State's causes of action is also subject to dismissal on other grounds:

- To the extent that the State seeks to recover for flood damage and under the Louisiana Valued Policy Law, those allegations are barred by controlling precedent and should be dismissed.

- The State's allegations that the Defendants violated the Louisiana bad faith statutes fail because the purported assignment agreements drafted by the State and signed by the insureds did not transfer their bad faith claims to the State and, in any event, bad faith claims cannot be assigned as a matter of Louisiana law.  In addition, bad faith claims do not stand alone.

- The State's allegations of breaches of fiduciary duty on the theory that insurers who sold policies directly to insureds functioned as agents or brokers and gave improper advice fail because even if insurers could be analogized to brokers or agents, insurance agents owe no such duty to insureds unless the agent voluntarily assumes such a duty, and there are no allegations in the Amended Petition that any insurer did

---

[3] The total number of eligible applicants for the Road Home program is over 155,000.  *See* The Road Home, Weekly Detailed Statistics as of November 10, 2008, www.road2la.org/newsroom/stats.htm (last visited Nov. 14, 2008).

so. In any event, these claims are perempted, having been filed long after the required one year from the issuance of the insurance policy.

- The State cannot recover on any claims where the insured did not either file suit or execute an assignment agreement with the State by the September 1, 2007 deadline (for Katrina claims) or the October 1, 2007 deadline (for Rita claims). Under the terms of the policies as modified by Acts 739 and 802 of 2006, all Hurricane Katrina and Rita lawsuits are "forever barred" if they were not filed by the applicable deadlines.

Finally, the State has failed to plead certain essential elements of its causes of actions with the specificity required by *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Initially, the State's Amended Petition fails to identify any specific provision in any policy that any Defendant allegedly violated, as required by Louisiana law. In addition, the State has not alleged (except on "information and belief" in the most conclusory fashion) that the insureds have actually presented proof of the losses on which the State seeks to recover or met other conditions precedent in their policies. Nor has the State alleged any facts supporting its claims for bad faith, which fail in any event due to the State's failure to sufficiently plead the underlying breach of contract claims.

What the State is trying to do in this case is contrary to law, and contrary to the way that insurance policies have operated and insurance claims have traditionally been adjusted. The State's assertion of purported rights to thousands of claims has delayed payment and resolution of many claims. Dismissing this case is the legally correct result for numerous reasons, and it would help bring closure to thousands of Hurricane Katrina and Rita claims and thousands of lawsuits pending in this Court and the state courts.

## BACKGROUND

### A.    The State's Petition.

On August 23, 2007, the State filed this action in the Civil District Court for the Parish of Orleans, on behalf of itself and a putative class of current and future Road Home grant recipients

who had homeowners insurance with one of the Defendants.  (Am. Pet. ¶¶ 17-22.)  On August 29, 2007, the State filed its "First Amended and Restated Class Action Petition for Damages and Declaratory Injunctive Relief" ("Amended Petition" or "Am. Pet.").

The State has named as Defendants 203 non-Louisiana insurance carriers who are citizens of more than 30 different states, and 11 domestic Louisiana insurers.  (Am. Pet. ¶ 18.)  According to the State, the Defendants are all of the insurance companies that wrote property insurance in the State of Louisiana in effect at the time of Hurricane Katrina.  The Amended Petition alleges that: (1) the insurers' water damage exclusions are inapplicable to the inundation of New Orleans at the time of Hurricane Katrina; (2) the Louisiana Valued Policy Law requires payment of the policy limit where a home is a total loss and any part of the damage, no matter how small, is covered; (3) the insurers failed to make sufficient payment for covered damage; and (4) insurers, in selling policies directly to insureds, acted like brokers or agents and failed to provide insureds with appropriate advice.  (*Id.* ¶¶ 46-97.)  The State made these claims without any factual investigation into, or allegations concerning, the individualized conduct of any particular insurer.   Nonetheless, the State asserts claims against all 203 Defendants for declaratory judgment and injunctive relief, breach of contract, violation of the Valued Policy Law, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and penalties, attorneys' fees and costs (including violation of the Louisiana bad faith statutes, La. R.S. 22:658 and 22:1220).  (*Id.* ¶¶ 32-107.)

## B.    The Road Home Program And The Purported Transfer Of Policyholders' Rights To The State.

The Louisiana Road Home program ("Road Home") is a federally funded grant program administered by the State of Louisiana to provide relief to Louisiana residents for uninsured

dwelling losses suffered as a result of Hurricanes Katrina and Rita.[4]  The funds were appropriated by Congress and provided through HUD's Community Development Block Grant Program.  The State established the Road Home program to distribute those federal funds. Consistent with federal law that prohibits providing relief funds that would duplicate payments from other sources,[5] the Road Home program deducts any insurance payments from its grants. Similarly, the Road Home program requires grant recipients to reimburse the State to the extent they subsequently receive insurance or other payments for losses covered by their grants.[6]

According to the State's Amended Petition, as of August 13, 2007, the State had recorded 183,867 applications for the Road Home program, but had conducted only 41,071 grant closings. (Am. Pet. ¶ 10.)  Thus, at the time the Petition was filed, more than three-quarters of the Road Home applicants had not yet been approved to receive, nor had they received, *any* Road Home funds and had not entered into any subrogation or assignment agreement with the State.

The State alleges that it has the right to recover benefits that it claims should have been paid to policyholders pursuant to a document entitled "The Road Home Limited Subrogation/Assignment Agreement" (hereinafter "Partial Assignment and Subrogation Agreement" or "Agreement") (emphasis in original), a form copy of which is attached to the State's Amended Petition as Exhibit A and hereto as Appendix C.  (Am. Pet. ¶¶ 11, 46, 61, 79,

---

[4] *See* Press Release, U.S. Dep't Hous. & Urban Dev., Jackson Approves Louisiana's $4.6 Billion "Road Home" Program (May 30, 2006), www.hud.gov/news/release.cfm?content=pr06-058.cfm (approving Louisiana's Road Home program and authorizing disbursement of funds via HUD's Community Development Block Grant Program).

[5] Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5155.

[6] This lawsuit does not concern the State's right to sue a grant recipient to recover such duplicative payments.  Defendants do not dispute that the State is entitled to recover duplicate funds from a grant recipient to the extent the recipient agreed to reimburse the State for such insurance payments under the Road Home program.

84, 89, 97, 106, Prayer ¶¶ f-h.)  The recipients of Road Home funds are required to execute such Partial Assignment and Subrogation Agreements as part of the closing process.  (Am. Pet. ¶¶ 10-11.)

The State seeks to use these Agreements to transform itself into the insured and to pursue additional recoveries even where the insured has already filed a separate lawsuit, where the insured was satisfied with the amount paid, or where the insured reached a settlement agreement with the insurer.  The insurance policies, however, contain anti-assignment provisions that prohibit assignment without the insurer's written consent.  None of the Defendants is alleged to have consented to such an assignment, nor have they done so.

## LEGAL STANDARDS

### A.    Federal Rule Of Civil Procedure 12(b)(6) And *Bell Atlantic Corp. v. Twombly*.

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)), *cert. denied*, 128 S. Ct. 1230 and 128 S. Ct. 1231 (2008).  The complaint must "'contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory.'"  *Twombly*, 127 S. Ct. at 1969 (emphasis in original, citation omitted).  This requires identification of both some cognizable legal theory and specific, non-speculative factual allegations supporting such a claim.  *See* 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 544-48 (3d ed. 2004).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 127 S. Ct. at 1965 (citations and footnote omitted); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)

(stating that the grounds for entitlement to relief must "'raise a right to relief above the speculative level,'" quoting *Twombly*, 127 S. Ct. at 1964-65).  Although well-pleaded facts are accepted as true, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor must they accept "'unwarranted factual inferences,'" *Arias-Benn v. State Farm Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (citation omitted).

In May 2007, the Supreme Court decided *Twombly*, in which it "retired" the restrictive *Conley* test,[7] describing it as "best forgotten as an incomplete, negative gloss on an accepted pleading standard."  *Twombly*, 127 S. Ct. at 1969.  As the *Twombly* Court explained, Rule 8(a) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and "[w]ithout some factual allegation in the Complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."  *Id.* at 1965 n.3.  The Court stressed that, in light of the large expenses incurred in class actions and other complex litigation, "'a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed,'" "lest a plaintiff '"with a largely groundless"' claim be allowed to 'take up the time of a number of other people.'"  *Id.* at 1966-67 (citations omitted).  Under *Twombly*, dismissal is proper where the complaint merely recites the elements of a claim in conclusory fashion, without providing meaningful *factual* allegations showing that the elements have been satisfied.  *See id.* at 1965 (plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  As discussed below, the State fails to meet these basic pleading standards.

---

[7] *Conley v. Gibson*, 355 U.S. 41 (1957).

**B.     Interpretation And Application Of Insurance Contracts And Insurance Law In Louisiana.**

This motion involves construction of insurance policies issued in Louisiana and application of Louisiana insurance statutes. The primary authoritative source of law in Louisiana is legislation. La. Civ. Code art. 1; *see also Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). Insurance policies, like all other contracts, are construed based on the rules set forth in articles 2045 to 2057 of the Louisiana Civil Code. *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). The Court's task is to determine "the common intent of the parties." La. Civ. Code art. 2045. The Civil Code instructs that "[t]he words of a contract must be given their generally prevailing meaning." La. Civ. Code art. 2047. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. An insurance policy "should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated." *Cadwallader*, 848 So. 2d at 580.

Similarly, Louisiana statutes are construed in accordance with the rules of statutory construction in the Civil Code. *La. Associated Gen. Contractors, Inc. v. La. Dep't of Agric. & Forestry*, 924 So. 2d 90, 97 (La. 2006). Statutes are applied as written unless their application would lead to absurd consequences. La. Civ. Code art 9. A statute must "be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it." *Pumphrey v. City of New Orleans*, 925 So. 2d 1202, 1210 (La. 2006).

**ARGUMENT**

**I.     The Amended Petition Should Be Dismissed Because The State Lacks Standing, As A Purported Assignee, To Sue On The Insurance Policies.**

The State lacks standing to pursue any of the claims in this litigation because the assignments to it are invalid.  The State cannot cure its lack of standing by asserting its status as a putative class representative on behalf of homeowners.  "Inclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue.  If the plaintiff has no standing individually, no case or controversy arises."   *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A July 1981); *see also Gladney v. Am. Heritage Life Ins. Co.*, 80 F. Supp. 2d 594, 599 (W.D. La. 1999) (holding that putative class representative had no standing to pursue claims on behalf of a class where his claims were barred by res judicata).  Because the State has no valid assignment, it has no standing to sue either individually or as a class representative.

**A.     The State Has No Right To Sue Because The Partial Assignments Are Not Enforceable As A Matter Of Law Without The Defendants' Consent.**

The purported assignments transferring policyholders' rights to the State are unenforceable as a matter of law, because the assignments are *partial* assignments and Defendants have not consented to them.  The purported assignments are captioned "Limited Subrogation/Assignment Agreement."   (Am. Pet., Ex. B; Appendix C (emphasis in original).)  The Agreement expressly provides that the assignment applies only "to the extent of the grant proceeds awarded or to be awarded to [the insured] under the Program," and further explains that "this is a limited subrogation and assignment, and is limited to an amount not to exceed the amount of the grant received by the undersigned under the Program, to which the State has not been reimbursed from other sources."  (*Id.*)

10

Louisiana courts have repeatedly held that partial assignments are not enforceable without the consent of the obligor.  *See, e.g.*, *Pelican Supply Co. v. Shreveport Plumbing Co.*, 128 So. 2d 924, 925 (La. Ct. App. 2d Cir. 1961) ("'It is a general rule of law that a debt cannot be divided by the creditor and partially assigned, without the debtor's consent, and thereby subject the debtor to separate actions.'") (citation omitted); *Stein v. Williams Lumber Co.*, 36 So. 2d 62, 64 (La. Ct. App. Orleans 1948) ("A debt is indivisible without the consent of both parties, and a debtor cannot be compelled to pay his debt to a number of transferees among whom it may please the creditor to divide it . . . ."); *Geo. H. Jett Drilling Co. v. Tibbits*, 230 F. Supp. 58, 62 (W.D. La. 1964) ("Under Louisiana law a partial assignment which is not expressly accepted by the debtor is ineffective against him.").  The purpose of this rule is that an obligor should not be required to deal with more than one party, and should not have to defend more than one lawsuit:

> The reason or basis of this principle as to partial assignment of an obligation is that a debtor has a right to stand upon the contract with his creditor as originally made and to pay the debt as a whole.  The creditor should not be allowed to divide an obligation to pay him a stated sum of money into fragments and assign them to different persons, thereby subjecting the debtor to the necessity of defending more than one suit for the same cause of action in the event he has a defense to the contract as originally made.  Therefore, if a partial assignment is given effect, the debtor would be deprived of the right to pay his debt as a whole and in its entirety and would be subjected to the risk of many actions, embarrassments and responsibilities not contemplated in his original contract.

*Staples v. Rush*, 99 So. 2d 502, 505 (La. Ct. App. 2d Cir. 1957).

This case involves precisely the circumstances that led Louisiana courts to adopt the rule barring partial assignments without consent.  Defendants are faced with defending claims from both policyholders and the State, either concurrently or sequentially.  In many instances, Defendants have been sued twice on the same insurance claim for the same damage to the same property or, alternatively, they are faced with a lawsuit filed by the State on a claim that has been

resolved with the insured.  These types of partial assignments are prohibited by Louisiana law without the Defendants' consent, and the State has not alleged that the Defendants provided consent.  The Amended Petition should therefore be dismissed in its entirety.

**B.      The Partial Assignment And Subrogation Agreement Violates The Policies' Anti-Assignment Provisions, Which Are Expressly Authorized By Louisiana Law.**

**1.      Defendants' Homeowners Policies Include An Anti-Assignment Clause Prohibiting Assignment Without Consent.**

Even if partial assignments were allowed by Louisiana law, all of the Defendants' insurance policies prohibit assignment.  (*See* Appendix A.)  For example, the standard ISO anti-assignment clause, which appears in many of the Defendants' policies, states:  "Assignment.  Assignment of this policy will not be valid unless we give our written consent."   (*See* Appendix A at 6.)[8]   Others contain language similar to the policy language employed by Encompass Insurance Company, which states:  "Your rights and duties under this Segment may not be assigned without our written consent. . . ."  (*Id.* at 3.)

These provisions clearly and unambiguously prohibit assignments without the insurers' written consent.  Under Louisiana's Civil Code, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046; *see also id.* art. 2047 ("The words of a contract must be given their generally prevailing meaning.").  These anti-assignment provisions make clear that any attempted assignment is invalid absent the insurer's written consent, which the State does not allege the recipients obtained from their insurers.  The purpose of such anti-

_____

[8] The relevant contract language at issue in the complaint and this motion is collected in Appendices A and B hereto.  Where documents outside of the pleadings are referenced in a plaintiff's complaint and are central to the plaintiff's claims, such documents may be considered by the court in deciding a motion under Rule 12(b)(6).  *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205

*(cont'd)*

assignment provisions in insurance policies is to control the insurer's risk in issuing the policies, preventing increased risks like those the Defendants face here, *e.g.*, being forced to defend against two suits on the very same insurance claim, and being forced to negotiate and litigate with a third party with which Defendants did not choose to enter into a contract.  *See* Section I.B.4., *infra*.

### 2.    Louisiana Civil Code Article 2653 Requires Enforcement Of The Anti-Assignment Clause In The Defendants' Policies.

Louisiana law expressly authorizes anti-assignment clauses and requires their enforcement.  Article 2653 of the Civil Code, which became effective in 1995, states: "A right cannot be assigned when the contract from which it arises prohibits the assignment of that right." La. Civ. Code art. 2653.  Article 2653 is broadly phrased in its command that anti-assignment clauses are enforceable.  "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature."  *Ciliberti v. Mistretta*, 879 So. 2d 789, 795 (La. Ct. App. 1st Cir. 2004) (citing La. Civ. Code art. 9).  The plain language of this Code provision compels this Court to enforce the anti-assignment clauses as written, which renders invalid the Agreement under which Road Home recipients purportedly assigned their policies to the State.[9]

Although no Louisiana court has been called upon to apply Article 2653, Hawaii has an analogous statutory provision, and its supreme court enforced that statute to invalidate a purported assignment of an insurance policy.  Hawaii's Insurance Code provides that "[a] policy

---

*(cont'd from previous page)*
(5th Cir. 2007), *cert. denied*, 128 S. Ct. 1230 & 128 S. Ct. 1231 (2008).

[9] That public policy favors the enforcement of anti-assignment provisions is evident from the fact that Louisiana's statutorily-defined standard fire insurance policy contains the following anti-assignment clause:  "Assignment of this policy shall not be valid except with the written consent of this Company." La. R.S. 22:691(F) (Supp. 2008).

may be assignable or not assignable, as provided by its terms."  Haw. Rev. Stat. § 431:10-228(a).

The Hawaii Supreme Court recently held that, under this provision, an assignment of an

insurance policy in connection with a transfer of corporate assets was invalid where the policy

contained an anti-assignment clause and the insurers did not consent to the assignment.   The

court found the language of the governing statute clear, and stressed that "'[i]nsurers have the

same rights as individuals to limit their liability, *and to impose whatever conditions they please*

*on their obligation*, provided they are not in contravention of statutory inhibitions or public

policy.'"  *Del Monte Fresh Produce (Haw.) Inc. v. Fireman's Fund Ins. Co.*, 183 P.3d 734, 747

(Haw. 2007) (emphasis in original, citation omitted).  The same rule of law applies in Louisiana.

*See Cadwallader*, 848 So. 2d at 583 ("[I]n the absence of a conflict with statutes or with public

policy, insurers have the same rights as do individuals to limit their liability and to enforce

whatever conditions they impose upon their obligations.").

> **3.     Courts Within And Outside Of Louisiana Have Enforced Anti-Assignment Clauses.**

Louisiana courts have enforced anti-assignment clauses as far back as 1893, and as

recently as this year.  *See Moise v. Mut. Reserve Fund Life Ass'n*, 13 So. 170, 170 (La. 1893)

(holding that "[t]he alleged assignment of the policy by [the insured] need not be considered,

because the policy contains an express clause that no assignment 'shall be valid without the

consent of the association, and upon such terms as shall be approved by its secretary or assistant

secretary,' and no such consent is alleged or proved"); *L & A Contracting Co. v. Ram Indus.*

*Coatings, Inc.*, 762 So. 2d 1223, 1230 (La. Ct. App. 1st Cir. 2000) (affirming trial court finding

that subcontractor breached anti-assignment provision in agreement with contractor); *Seago v.*

*Travelers Ins. Co.*, No. Civ. A. 02-1949, 2002 WL 31109366, at *2 (E.D. La. Sept. 20, 2002)

(granting motion to dismiss based upon the failure to allege the insurer consented to the

assignment of rights).  In *Loconte Partners, LLC v. Costa*, No. 650-259 (La. 24th Jud. Dist. Ct. Aug. 20, 2008), a Louisiana district court recently granted summary judgment for an insurer on this basis, "finding the policy provision requiring the written consent of [the insurer] to effectuate a valid transfer of the insured's rights and duties under the policy to be clear and unambiguous and enforceable as written."  *Id.*, slip op. at 1; *see also N. Vo, Inc. v. Atl. Cas. Ins. Co.*, No. 07-6861, 2008 WL 687188, at *3 (E.D. La. Mar. 10, 2008) (holding that, where insurer did not provide written consent to assignment, assignee was not entitled to recover under policy absent viable claim for reformation); *Farciert v. Am. Nat'l Prop. & Cas. Co.*, No. 650-102 (La. 24th Jud. Dist. Ct. Oct. 27, 2008) (granting judgment for defendant insurer based on anti-assignment provision).[10]

The State may attempt to rely upon cases that distinguish between assignments made before and after a loss has occurred.  However, Article 2653 makes no distinction between pre-loss and post-loss assignments.[11]  Indeed, the Legislature's decision to require enforcement of anti-assignment clauses, whether before or after loss, is consistent with the approach that several other jurisdictions have taken.  For example, in *Conoco, Inc. v. Republic Insurance Co.*, 819 F.2d 120 (5th Cir. 1987), the Fifth Circuit held that, under Texas law, a post-loss assignment of "insurance proceeds" had no legal effect where the policy contained an anti-assignment clause.

---

[10] *Loconte* and *Farciert* are included in Appendix D.

[11] Prior to the passage of article 2653, two Louisiana courts had ruled that an anti-assignment clause did not invalidate an assignment made after a loss occurred.  *See Fontenot v. Hanover Ins. Co.*, 465 So. 2d 743, 748 (La. Ct. App. 3d Cir. 1984), *rev'd on other grounds*, 465 So. 2d 678 (La. 1985); *Geddes & Moss Undertaking & Embalming Co. v. Metro. Life Ins. Co.*, 167 So. 209, 210 (La. Ct. App. Orleans 1936).  These cases pre-date article 2653, which took effect in 1995, and provides for no such distinction. Article 2653 controls over older caselaw.  *See Am. Int'l Specialty Lines*, 352 F.3d at 260; La. Civ. Code art. 3.  Further, in *Fontenot*, it was the policyholder, and not the insurer, who sought to enforce the anti-assignment provision.  *See* 465 So. 2d at 748 ("[A] non-assignment clause is for the benefit of the insurer, not an insured who imprudently assigns his policy, his rights under his policy, or his cause of action against his insurer.").

The court held that Texas law permits the enforcement of anti-assignment clauses and found "specious" the purported assignee's attempted distinction between assignment of a "claim or demand" and a mere assignment of "proceeds." *Id.* at 124.[12]

Likewise, the Oregon Supreme Court rejected a distinction between pre-loss and post-loss assignments because "[n]othing in the [policy's anti-assignment] clause suggests a limitation to pre-loss rights or duties or provides an exception for post-loss rights or duties." *Holloway v. Republic Indem. Co.*, 147 P.3d 329, 334 (Or. 2006).  The court explained that "[r]eading such an exception into the policy would not be reasonable and would 'insert what has been omitted.'" *Id.* (citation omitted).  A Michigan court of appeals has also enforced an anti-assignment clause as applied to a post-loss assignment.  *See Edwards v. Concord Dev. Corp.*, No. 174487, 1996 WL 33358104, at *1-2 (Mich. Ct. App. Sept. 17, 1996).  As all these courts recognize, where the policy provision does not distinguish between pre- and post-loss assignment, a court should give effect to the clause as written.

> **4.      Enforcement Of The Anti-Assignment Clause In This Case Would Fulfill Its Purpose.**

As noted above, in Louisiana and several other jurisdictions, anti-assignment clauses are enforceable in accordance with their plain terms, as applied to both pre-loss and post-loss assignments.  But even in jurisdictions where courts have sanctioned post-loss assignments of insurance proceeds notwithstanding anti-assignment clauses, courts have enforced anti-

---

[12] *See also Ins. Co. of State of Pennsylvania v. Hutter*, No. 4:98-CV-1063-E, 2001 U.S. Dist. LEXIS 5800, at *17-18 (N.D. Tex. Feb. 26, 2001) (citing *Conoco*, holding that an anti-assignment clause prohibited a post-loss assignment under Texas law), *aff'd mem.*, 34 F. App'x 976 (5th Cir. 2002); *LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 353 (5th Cir. 2002) (enforcing anti-assignment clause in employee health care benefit plan).

assignment clauses when, as here, a post-loss assignment significantly affects the insurer's risk. As one court has explained:

> [C]ourts addressing whether post-loss assignments of insurance claims will be recognized rely on (i) the characteristics of the assignee (*i.e.*, who the policy is transferred to, as well as their conduct), and (ii) the nature of the claim (*i.e.*, whether it is fixed and measurable, as opposed to speculative and contingent). Both factors illuminate whether the risk imposed on an insurer by the assignment of a claim is meaningfully different from that borne by the insurer before such assignment.

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 375 F. Supp. 2d 238, 248 (S.D.N.Y. 2005).

Applying similar reasoning, two recent decisions by the Minnesota Court of Appeals enforced anti-assignment clauses where the assignment was executed after the loss and the assignee attempted not only to become the payee on the settlement check, but also to negotiate and litigate the amount owed on the claim. *See Auto Owners Ins. Co. v. Star Windshield Repair, Inc.*, 743 N.W.2d 329, 332-37 (Minn. Ct. App. 2008), *review granted*, No. A07-972, 2008 Minn. LEXIS 214 (Minn. Apr. 29, 2008); *Star Windshield Repair, Inc. v. Western Nat'l Ins. Co.*, 744 N.W.2d 237, 239-42 (Minn. Ct. App. 2008), *review granted*, No. A07-216, 2008 Minn. LEXIS 214 (Minn. Apr. 29, 2008). Both cases involved claims under auto insurance policies for damage to windshields or other glass on automobiles. Auto glass repair companies had obtained assignments from several insureds of their insurance claims. The repair companies disputed the adequacy of the amounts paid by the insurers, and sought to arbitrate the amounts owed on the claims. However, the insurance policies contained anti-assignment clauses.

The courts held that these clauses were enforceable because "insurers should not have to do business with parties with which the insurer has not chosen to enter a contractual relationship," and should not be "compelled to negotiate with a non-contractual party issues involving the actual dollar amounts owed on a claim." *Auto Owners*, 743 N.W.2d at 333. By

being forced to negotiate and litigate with a third party, "the insurance company would face additional risk that it expressly avoided through the language of the contract." *Id.* at 334. The courts further explained that, while "[c]aselaw has not always made the distinction between assigning liquidated proceeds and unliquidated proceeds," the "distinction is significant because the former assignment implicates only the mechanical transfer of money, while the latter assignment carries with it the substantive right to litigate the amount of the insurance benefit the insurer is obligated to pay." *Star Windshield*, 744 N.W.2d at 240.

The California Supreme Court has also held that an anti-assignment clause in a liability policy is enforceable after the loss occurs where the "claims had not been reduced to a sum of money due or to become due," reasoning that "[i]f both assignor and assignee were to claim the right to defense, the insurer might effectively be forced to undertake the burden of defending both parties." *Henkel Corp. v. Hartford Accident & Indem. Co.*, 62 P.3d 69, 75 (Cal. 2003). Numerous other courts have reached the same conclusion.[13]

Here, the State wants to be far more than a payee on a check – it seeks to take over the policyholders' duties to prove up the claim, and try to recover larger payments on claims never disputed by the insured or where a settlement was reached between the policyholder and the insurer. As a result, the assignments to the State significantly affect Defendants' risk in several respects:

---

[13] *See also Quemetco Inc. v. Pac. Auto. Ins. Co.*, 29 Cal. Rptr. 2d 627, 632 (Ct. App. 1994) (holding that anti-assignment clause was enforceable because "unless the consent clauses are enforced [the insurers] would be faced with the increased risk of having to defend two corporations"); *Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1054-55 (Colo. 1994) (upholding anti-assignment clause as applied to post-loss assignment, stressing "the public policy in favor of the freedom of contract, and the corollary right of the insurer to deal only with the party with whom it contracted"); *Parkway Ins. Co. v. New Jersey Neck & Back*, 748 A.2d 1221, 1227-28 (N.J. Super. Ct. Law Div. 1998) (holding that post-loss assignments were barred by anti-assignment clause, reasoning that "[t]o find otherwise would force insurers to deal with parties with whom they had not contracted, violating the

*(cont'd)*

- In many instances, Defendants are forced to defend concurrently or sequentially against two separate lawsuits seeking to recover on the same insurance claim under the same policy for the same property damage – one lawsuit filed by a policyholder and this lawsuit filed by the State.  *See Henkel*, 62 P.3d at 75 (recognizing increase of risk where liability insurer was required to defend two parties in the same lawsuit). Settlements with policyholders cannot be finalized without the State's consent. Litigating the same claim in two separate lawsuits imposes substantial additional costs and can also lead to inconsistent results.

- Where the policyholder did not file his or her own lawsuit and Defendants face only one lawsuit, Defendants are forced to litigate that case with a third party (the State) as its adversary, a party with which it did not contract and never anticipated having to litigate against.

- For all claims in which the policyholder did not challenge the adjustment, Defendants are required, many years after the fact, to deal with the State, rather than the policyholder, in attempting to resolve the claim.  But the State will have less knowledge of and access to the information and evidence relating to the claim than the policyholder.  In addition, in many cases, the damage was repaired (or the home was torn down if it was flooded) long ago.  This will substantially increase the administrative costs and legal fees that Defendants will incur to reach a final resolution.

- Where the policyholder did not challenge the adjustment and chose not to file suit before the prescription deadline, Defendants are now being required not only to litigate against the State, a non-party to the insurance contracts, but are being required to do so on thousands of previously-closed claims that would otherwise be time-barred.

These additional risks are magnified many times over here, where the State is seeking to negotiate and litigate thousands of hurricane wind damage claims.

For all these reasons, enforcement of the anti-assignment clauses is not only required by Louisiana's Civil Code and Louisiana contract law, it furthers the purposes underlying such legislative enactments and contractual clauses.

_____

*(cont'd from previous page)*
basic tenet and public policy of freedom of contract").

C.    **The Partial Assignment And Subrogation Agreements Drafted By The State Authorize The State To Sue Only If An Insured Has Chosen To Abandon, Dismiss Or Release His Or Her Claims.**

Even if the insureds' claims could validly be assigned to the State (which, as discussed above, they cannot), the plain language of the State's own Agreement demonstrates that, with respect to the vast majority of Road Home grant recipients, the relief it is seeking in this lawsuit is not authorized.  The Agreement provides the State with the right to sue insurers only if the insured decides to abandon, dismiss or release his or her claims and notifies the State of that decision:  "In the event that I/we choose to *abandon, dismiss, or release* the claims against my insurance company, I/we agree to provide the State thirty (30) days prior written notice . . . to allow the State to individually pursue recovery of the rights which have been assigned to the State herein."  (Appendix C (emphasis added).)

Thus, the Agreement purports to create a structure by which the State can step into the shoes of an insured and pursue litigation against the insurer only if an insured chooses to completely abandon, dismiss or release a claim and notifies the State of that decision.  Here, however, the State does not allege that the claims on which it has brought suit are claims that the insureds chose to abandon, dismiss or release.  With respect to the status of their claims, the Road Home grant recipients whose insurance claims are potentially at issue in this lawsuit will fall into one of several groups:  (1) insureds who have never challenged the adjustment of their claims, but have not have given their insurer a release, (2) insureds who have filed suit against their insurers and continue to pursue that litigation, (3) insureds whose lawsuits against their insurers were dismissed for lack of merit, (4) insureds who have released their claims against their insurer prior to receiving a Road Home grant (so that there were no insurance rights left to assign at the time of the grant), (5) insureds who have settled their claims with the consent of Road Home, which has also released the insurer (in which case the claim is no longer a potential

20

part of this lawsuit), and (6) insureds who released their insurers after receiving a grant but without Road Home also providing a release of the insurer.

Of these, only Road Home recipients in the sixth category have, even arguably, abandoned, dismissed or released their claims.[14]  The State's action with regard to the remainder of the insureds, the vast majority of Road Home grant recipients, seeks to interfere with the insured/insurer relationship and to disrupt the status quo in which both the insured and insurer are satisfied with the resolution of the insurance claim.  Such actions are not allowed under the plain language of the Agreement, which the State itself drafted.  This Court should therefore dismiss the Amended Petition, unless the State pleads with specificity that particular Road Home grant recipients have chosen to abandon, dismiss or release their claims, which would vastly narrow the scope of this litigation.

### D.    The State's Attempt To Characterize Its Right As One Of "Subrogation" As Well As "Assignment" Is Unavailing.

To the extent that the Petition characterizes the State's rights as "subrogation" rights in addition to "assignment" rights, the State's "subrogation" allegations are unavailing.

> [S]ubrogation is the legal fiction established by law whereby an obligation, extinguished with regard to the original creditor by payment which he has received from a third person . . . is regarded as substituting in favor of this third person who in essence steps into the shoes of the original debtor and is entitled to assert, in the measure of what he has paid, the rights and actions of the former creditor.

*A. Copeland Enters. Inc. v. Slidell Mem'l Hosp.*, 657 So. 2d 1292, 1296 (La. 1995).  This doctrine has no application here because the payments made by the State are a grant that does not "extinguish" insurers' obligations under the policies.

---

[14] Those claims falling in the sixth category would be barred by the release, unless they were validly assigned to the State and the insurer was notified of the assignment before the release was executed.

Moreover, the Louisiana Civil Code recognizes only two species of subrogation: conventional and legal, neither of which have any application here. *See* La. Civ. Code art. 1825 ("Subrogation . . . may be conventional or legal."). Pursuant to Louisiana law, conventional subrogation can occur when a third party acquires the rights of an obligee by virtue of an express agreement. La. Civ. Code art. 1827. However, conventional subrogation is inapplicable in this case because, under Louisiana law, "there is no distinction between conventional subrogation by the obligee and *an assignment* of rights." *Alvis v. CIT Group/Equip. Fin., Inc.*, 918 So. 2d 1177, 1184 (La. Ct. App. 3d Cir. 2005) (emphasis added) (citing La. Civ. Code art. 1827 cmt. (a)). As the statutory commentary makes clear, "a transferee of rights cannot claim any advantage based on the allegation that his right was acquired by subrogation rather than by assignment." La. Civ. Code art. 1827 cmt. (g). Thus, calling the Agreement a subrogation makes it no more effective than calling it an assignment; the State cannot characterize the transfer of rights as a "subrogation" agreement in order to make an end run around the anti-assignment clause.

Legal subrogation also has no relevance here. Legal subrogation occurs by operation of law in certain statutorily defined situations involving one party's payment of a debt owed by another. *See* La. Civ. Code art. 1829. Pursuant to the Louisiana Civil Code, legal subrogation applies only in five specific circumstances, none of which apply here. *See id.*; *see also Society of Roman Catholic Church v. Interstate Fire & Cas. Co.*, 126 F.3d 727, 743 (5th Cir. 1997).[15]

---

[15] Article 1829 of the Louisiana Civil Code lists the following five distinct instances in which legal subrogation can occur: "(1) In favor of an obligee who pays another obligee whose right is preferred to his because of a privilege, pledge, mortgage, or security interest; (2) In favor of a purchaser of movable or immovable property who uses the purchase money to pay creditors holding any privilege, pledge, mortgage, or security interest on the property; (3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment; (4) In favor of a successor who pays estate debts with his own funds; and (5) In the other cases provided by law." La. Civ. Code art. 1829.

## II.     The State's Claims Seeking Recovery Or Declaratory Judgment With Respect To Flood Claims Are Barred By Controlling Precedent.

In Section VI of the Complaint, the State alleges that Defendants have improperly equated inundation or storm surge with flooding and, thereby, have denied policy benefits to their insureds.  (Am. Pet. ¶¶ 63-64.)  The State further seeks a declaratory judgment that neither storm surge nor damage caused by water entering the affected parishes of Louisiana or Greater New Orleans was excluded by Defendants' policy exclusions for flood damages.  (*Id.* ¶ 46(b)-(d).)    However, as this Court recently recognized, both the Fifth Circuit and the Louisiana Supreme Court "have ruled that the exclusions in Louisiana homeowners policies of coverage for damages caused by the flood that resulted from the various levee breaches in the aftermath of Hurricane Katrina are valid and unambiguous."  (Post-*Sher* Insurance Umbrella Case Management Order, Doc. 13521, at 1.)

In *Sher v. Lafayette Insurance Co.*, 988 So. 2d 186 (La. 2008), the Louisiana Supreme Court dispelled any doubt about whether the damage caused by the massive inundation of New Orleans at the time of Hurricane Katrina was excluded by water damage exclusions in property insurance policies.  The Louisiana Supreme Court held that "the entire English speaking world recognizes that a flood is the overflow of a body of water causing a large amount of water to cover an area that is usually dry land."  *Id.* at 194.  The Fifth Circuit, considering allegations nearly identical to those alleged by the State, reached the same result:  "[T]he flood exclusions are unambiguous in the context of this case" because "[w]hen a body of water overflows its normal boundaries and inundates an area of land that is normally dry, the event is a flood," and "[t]his is precisely what happened in New Orleans in the aftermath of Hurricane Katrina."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 214 (5th Cir. 2007) (footnote omitted), *cert. denied*, 128 S. Ct. 1230 & 128 S. Ct. 1231 (2008).

The holdings of the Louisiana Supreme Court and the Fifth Circuit apply to storm surge as well.  Both courts made clear that the overflow of normally dry land by a body of water is a flood, *regardless of its cause*.  *See Sher*, 988 So. 2d at 194; *Katrina Canal Breaches*, 495 F.3d at 214, 217.  The State, therefore, cannot avoid the effect of these controlling precedents by arguing that the flooding was "wind-driven" or that "windstorm" was the efficient proximate cause of the loss."  As the Fifth Circuit has held, "[t]he phrase 'storm surge' is little more than a synonym for a 'tidal wave' or wind-driven flood, both of which are excluded perils."  *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 437 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1873 (2008); *accord Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 353 (5th Cir. 2007); *Smith v. Allstate Indem. Co.*, 256 F. App'x 694, 695-96 (5th Cir. 2007); *Bilbe v. Belsom*, 530 F.3d 314, 316 (5th Cir. 2008) (applying Louisiana law).   In fact, in denying reconsideration of the post-*Sher* Insurance Umbrella Case Management Order, this Court previously rejected the very same "efficient proximate cause" argument that the State raises in its Complaint.   (Doc. 14394 (denying Docs. 13631 & 14323).)

Thus, the State's allegations regarding water released from levee breaches or storm surge and the supposed inapplicability of Defendants' flood exclusions are barred and should be dismissed with prejudice.

## III.    The State's Claims Seeking Recovery Or Declaratory Judgment Under The VPL Fail As A Matter Of Law.

In Section VII of the Complaint, the State argues that Defendants have breached Louisiana's Valued Policy Law, La. R.S. 22:695 ("VPL").  (Am. Pet. ¶¶ 73-74.)  The State also seeks a declaratory judgment that Road Home grant "recipients are entitled to recover the full value placed on their properties" by the Defendants.  (Am. Pet. ¶ 42.)  The State has not alleged that any specific insured's property was rendered a *total loss* from a *covered peril* and, therefore,

24

its VPL claims fail as a matter of law.  *See Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 239 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1075 (2008).  In fact, the opposite is true; the State's VPL allegations suggest that the VPL claims are focused on properties that were not rendered a total loss by covered perils because they specifically mention residences in the City of New Orleans, which would have been rendered total losses (if such a total loss occurred) in substantial part by an excluded peril, namely flood, due to the water released by the levee breach.  (*See, e.g.*, Am. Pet. ¶ 76.)  As discussed above, such levee breach flood damages are excluded under the policies at issue as a matter of law.  Thus, as with the State's allegations regarding levee breach flood damages, the VPL claims fail as a matter of law.

The Amended Petition baldly alleges in several places that many Road Home recipients suffered a "total loss" (*see, e.g.*, Am. Pet. ¶ 41), but this is nothing more than a "'legal conclusion couched as a factual allegation,'" which the Supreme Court has disapproved. *Twombly*, 127 S. Ct. at 1965 (citation omitted).  The phrase "total loss" is not a factual allegation, but a conclusion of law.  *See Real Asset Mgmt., Inc. v. Lloyd's of London*, 61 F.3d 1223, 1229 (5th Cir. 1995) (defining "total loss" under Louisiana law).  For property damage to qualify as a "total loss," it must be serious enough that "the cost of repair exceeds the value of the property." *Id.*  Here, the Amended Petition includes no factual allegations describing the extent of the covered damage to any of the properties at issue, the cost to repair that damage, or the value of those properties.  Consequently, the State's allegations of "total loss" fall short of *Twombly*'s requirement of "'something more'" than conclusory allegations that "'merely create[] a suspicion'" of entitlement to relief.  127 S. Ct. at 1965 (citation omitted).  Moreover, even if the

State had sufficiently pled a covered "total loss" (which it did not), the VPL claims would still fail, because the Valued Policy Law applies only to fire losses.[16]

## IV.    The State's Claims For Extra-Contractual Damages Or Penalties Fail As A Matter Of Law.

### A.    The State Has No Standing To Assert Claims Under Sections 22:658 Or 22:1220.

#### 1.    The State Was Not Assigned The Right To Assert Any Extra-Contractual Bad Faith Claims.

The Agreement between the State and the policyholders does not transfer bad faith claims to the State.  The Agreement states that:

> I/we hereby assign to the State of Louisiana, Division of Administration, Office of Community Development (the "*State*"), to the extent of the grant proceeds awarded or to be awarded to me under the Program, all of my/our claims and future rights to reimbursement and all payments hereafter received or to be received by me/us: (a) under any policy of casualty or property damage insurance or flood insurance on the residence, excluding contents ("*Residence*") described in my/our application for Homeowner's Assistance under the Program ("*Policies*"); (b) from FEMA, Small Business Administration, and any other federal agency, arising out of physical damage to the Residence caused by Hurricane Katrina and/or Hurricane Rita.

(Appendix C (emphasis added).)

---

[16] The Louisiana Supreme Court recently stated that "[t]he 'fire insurance policy' to which La. R.S. 22:695 applies appears to be a specific policy separate and distinct from a typical homeowners' policy, although both policies insure against the peril of fire."  *Landry v. La. Citizens Prop. Ins. Co.*, 983 So. 2d 66, 76 (La. 2008).  The Court concluded that the Valued Policy Law "is intended to apply only to fire insurance policies, which may include coverage against other perils as allowed by La. R.S. 22:691 *and is distinct from homeowners' policies*."  *Id.* (emphasis added).  The Fifth Circuit has also concluded that the Valued Policy Law applies only to fire losses, albeit for different reasons.  *See In re Consolidated Cos.*, 106 F.3d 396 (5th Cir. 1996) (text available on Westlaw at 1996 WL 773044, at *3)  ("The language of section 22:695 indicates that it applies only to fire insurance policies."); *see also In re Consolidated Cos.*, 185 B.R. 223, 226 (E.D. La. 1995) ("Sections A and B of R.S. 22:691, which mandate a particular form with standard provisions, conditions, etc., and would also trigger the application of R.S. 22:695 [the Valued Policy Law] for valuation purposes, need not be complied with, with respect to the non-fire perils covered by the policy."), *aff'd mem.*, 106 F.3d 396 (5th Cir. 1996).

This language only purports to transfer to the State claims "under" a policy of insurance. It does not transfer statutory or extra-contractual claims such as claims under sections 22:658 and 22:1220 of the Louisiana Revised Statutes.  Indeed, the only reference to sections 22:658 or 22:1220 in the Agreement makes clear that the insured retains any rights he or she may have to assert claims under those provisions:

> I/We agree that rights to insurance proceeds assigned to the State herein shall be paid from any insurance payments I/we may receive, whether through unconditional transfer by the insurance carrier, through settlement, or through judgment adverse to the insurance company, with preference and priority over any other party entitled to any portion of such proceeds, up to the amount of my/our grant received under the Program for which the State has not been reimbursed from other sources. ***The State's right for recovery shall be with preference and priority as set forth above, from those portions of my/our recovery related to physical damage to the Residence and of any penalties under the provisions of La. R. S. 22:1220 and/or La. R.S. 22:658 relating to those insurance proceeds***. If I/we are now or in the future become represented by an attorney in connection with such insurance claims, I/we hereby agree that any funds received from which the State may be entitled to recovery shall be [sic] subject to Rule 1.15(e) of Louisiana Rules of Professional Conduct and hereby instruct my/our attorney to handle any such payments in compliance with that Rule.

(Agreement, attached as Appendix C (emphasis added).)

Thus, the Agreement expressly does not give the State any right to recover under the bad faith statutes; it simply provides that the State will be paid first to the extent it is entitled to recover under the contract.  A plain reading of this provision and the Agreement as a whole demonstrates that the parties intended that the insureds would retain any rights they had under the bad faith statutes, and did not transfer those to the State, since otherwise a right of recovery by the State under the statutes would have expressly been mentioned.  *See Lewis v. Kubena*, 800 So. 2d 68, 72 (La. Ct. App. 4th Cir. 2001) (holding that "because the language of these agreements does not clearly reflect an intent to transfer ownership of the claim or cause of action, there was no valid assignment").

27

### 2.  Assignees Cannot Assert Claims Under Sections 22:658 Or 22:1220.

Even if policyholders' rights under the bad faith statutes were purportedly transferred to the State, the State has no standing to sue under these statutes.  Sections 22:658 and 22:1220 are "statutes subjecting insurers to penalties" and, therefore, "are to be considered penal in nature and should be strictly construed."  *Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184, 186 (La. 1997).  As the Louisiana Fifth Circuit has held in a case in which the insured purported to assign its rights, "La. R.S. 22:1220 addresses the duty an insurer owes to its insured," and thus "the provisions of this statute are of no help" to an assignee.  *Del-Remy Corp. v. Lafayette Ins. Co.*, 616 So. 2d 231, 232 (La. Ct. App. 5th Cir. 1993).

The only persons entitled to bring suit under these statutes are a first-party "insured" and, in certain limited circumstances, a third-party "claimant" under a liability insurance policy.  *See Langsford v. Flattman*, 864 So. 2d 149, 151 (La. 2004) (holding that third-party claimant could not recover under section 1220(B)(5) because "[a]lthough La. R.S. 22:1220(B)(5) uses the word 'claimant,' the subsection is clearly intended to apply to a claim due 'any person insured by the contract'"); *LaSalle Parish Sch. Bd. v. Allianz Global Risks U.S. Ins. Co.*, No. 07-0399, 2008 WL 1859847, at *8 (W.D. La. Apr. 24, 2008) ("We can find no case and no other authority allowing a 'claimant' who is not the insured to proceed with a claim under § 658 or § 1220 where the policy covered the insured's loss only.  Virtually all of the cases discussing 'claimants' at all – whether or not the claimants are allowed to proceed with a claim under a penal statute – involve *liability* policies where a 'claimant' (or a 'third-party claimant') is one who is the ultimate beneficiary of the policy.").

**B.      The State's Claims For Breach Of Fiduciary Duty Fail As A Matter Of Law.**

**1.      The State's Breach Of Fiduciary Duty Claims Are Not Recognized By Louisiana Law.**

The State alleges that the Defendant insurers who sold policies directly to homeowners (none of whom are identified specifically) functioned as insurance brokers and/or agents, and that they breached their fiduciary duty by failing to properly advise their insureds as to proper coverage.   (Am. Pet. ¶¶ 91-97.)   Even assuming that insurers who sell policies directly to homeowners would have the same duties as an insurance agent, such allegations fail as a matter of Louisiana law because there is no such duty unless the agent voluntarily assumes it (and the Amended Petition is devoid of any such allegations).   *See, e.g.*, *Motor Ins. Co. v. Bud's Boat Rental, Inc.*, 917 F.2d 199, 205 (5th Cir. 1990) ("[T]he client is himself considered responsible for adequately advising the agent of the coverage needed and for reading the clear provisions of the insurance policy.") (applying Louisiana law); *see also Graves v. State Farm Mut. Auto. Ins. Co.*, 821 So. 2d 769 (La. Ct. App 3d Cir. 2002) (holding insurance agent had no duty either in contract or tort to inquire into insureds' financial condition and advise them to carry higher liability limits or purchase an umbrella policy); *Taylor v. Sider*, 765 So. 2d 416, 418 (La. Ct. App. 4th Cir. 2000) (holding that insurance agent has no fiduciary duty to procure particular coverage unless specifically requested to do so); *Randolph v. Hanover Ins. Co.*, No. 07-3265, 2007 WL 2701139, at *1 (E.D. La. Sept. 11, 2007) (dismissing claims against agent and finding the agent improperly joined, stating: "Louisiana law imposes no duty on agents to identify spontaneously a client's needs and advise him as to whether he is underinsured or carries the right type of coverage") (collecting cases).[17]

---

[17] Moreover, certain Defendants do not sell policies directly to insureds (or directly employ agents who do so), but rather provide insurance through third-party licensed agents or brokers under

*(cont'd)*

Here, the State's conclusory allegations fail to establish any basis for this Court to conclude that any agent or Defendant voluntarily assumed such a fiduciary duty to any insured. As such, these claims fail as a matter of law and should be dismissed. *Twombly*, 127 S. Ct. at 1965.

### 2.      Claims For Breach Of Fiduciary Duty Are Perempted.

Additionally, these breach of fiduciary duty claims are perempted by the one-year peremptive period codified at La. R.S. § 9:5606. *See, e.g., Campbell v. Stone Ins. Inc.*, 509 F.3d 665, 672-73 (5th Cir. 2007) (affirming lower court's ruling that the insurance agent was improperly joined because the claims were perempted based on the date the policy was issued); *Travelers Cas. & Sur. Co. of Am. v. Wright Ins. Agency, Inc.*, 404 F.3d 927, 929-30 (5th Cir. 2005) (affirming judgment in favor of insurance agent because the claims were perempted under section 9:5606). Section 9:5606 states, in relevant part:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

La. R.S. § 9:5606(A). Here, the period of peremption ended no later than August 2006 for Hurricane Katrina claims and September 2006 for Hurricane Rita claims.[18]

_____
*(cont'd from previous page)*

provisions of Louisiana's insurance code. Because Louisiana law requires that a plaintiff alleging a breach of fiduciary duty establish an "agreement by the insurance agent to procure insurance," *Taylor v. Sider*, 765 So. 2d 416, 418 (La. Ct. App. 4th Cir. 2000), the State has not – and cannot – establish this element with respect to Defendants that do not sell policies directly to insureds.

[18] As discussed *infra*, Louisiana law extended the period for filing claims for losses or damages to property from Hurricanes Katrina and Rita; it did not extend the period for filing breach of fiduciary duty
*(cont'd)*

This suit was filed in August 2007 based upon alleged losses that occurred nearly two years earlier – in August and September of 2005. Although the State has failed to properly plead facts as required by *Twombly* to support its claims, there is no set of facts that could be pled under which the insureds would not have known of the alleged failure of their agent to procure coverages or insurance limits any later than August or September of 2005. As the Fifth Circuit has held, the date the policy is issued triggers the one-year peremptive period because an insured is deemed to have read and know the provisions of his or her policy. *See, e.g., Campbell*, 509 F.3d at 671-72 (observing that "Louisiana law imposes a duty on the insured to read and know his or her insurance policy provisions," and therefore the date the policy documents were issued to plaintiff triggered the peremptive period). As such, the claims here are perempted, as a legion of cases have held in the circumstance presented here. *See id.* at 672-73 (affirming lower court's ruling that the insurance agent was improperly joined because the claims were perempted based on the date the policy was issued).[19]

_____

*(cont'd from previous page)*
claims.

[19] *See also Commercial Tire & Retreading, Inc. v. Mt. Hawley Ins. Co.*, No. 06-4865, 2007 WL 3353413, at *4-6 (E.D. La. Nov. 6, 2007) (holding claims against agent were perempted because they were brought more than one year after the policy was issued) (collecting cases), *withdrawn on other grounds*, No. 06-4865, 2007 WL 4294594 (E.D. La. Dec. 3, 2007); *Talbert v. Allstate Ins. Co.*, No. 06-8807, 2007 WL 1428702, at *4-5 (E.D. La. May 10, 2007) (holding claims against agent perempted because they were filed more than one year after policy was issued); *Cresson v. State Farm Fire & Cas. Co.*, No. 06-4763, 2006 WL 2912824, at *1-2 (E.D. La Oct. 5, 2006) (holding that peremptive period began at time the claimant purchased her policy); *Dobson v. Allstate Ins. Co.*, Nos. 06-0252 *et al.*, 2006 WL 2078423, at *6, *8 (E.D. La. July 21, 2006) (holding claims against agents were perempted because the alleged wrongful act occurred when the policy was issued, and the insured was on notice of that act on that date).

**V.     The State's Claims Are Prescribed If The Insured Did Not File Suit By September 1, 2007 With Respect To Katrina Claims And October 1, 2007 With Respect To Rita Claims, At The Latest.**

A substantial portion of the claims asserted by the State are, according to the State's own allegations, premised upon partial assignment agreements that the State **"anticipates"** it will obtain based upon funds it **"anticipates"** it will distribute in the future.  (Am. Pet. ¶ 1; *see also* Am. Pet. ¶ 22 (defining class to include insureds that have not yet assigned their claims to the State).)  Significantly, the State admits that such recipients (*i.e.*, those who had not executed an assignment) vastly outnumbered those who had actually executed partial assignments at the time this lawsuit was filed.  (Am. Pet. ¶ 10 (noting that the Road Home Program has recorded 183,867 applications, but only conducted 41,071 grant closings).)  Clearly, the State could not bring suit as an assignee as to claims that were not assigned to it.  Moreover, the prescription deadlines for all insurance claims arising out of Hurricanes Katrina and Rita passed shortly after this lawsuit was filed and any claims as to which the insured neither filed suit nor executed a Partial Assignment and Subrogation Agreement with the State by those prescription deadlines are barred.

The Defendants' insurance policies contain explicit language providing that any lawsuits brought against the insurer must be filed within either one year or two years of the date of loss.  (*See, e.g.*, Appendix B at INS 00000170 ("No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss."; *see also* Appendix A.)[20]  These provisions have long been enforced under Louisiana law.  *See* La. R.S.

_____

[20] It makes no difference whether Defendants' policies provide prescriptive periods of one or two years.  Even as to policies containing two-year periods, the latest date for policyholders to file suit was September 1, 2007 for Katrina claims and October 1, 2007 for Rita claims.  Both dates are more than two years after the respective events.

§§ 22:629(B), 22:691(F); *P. O. P. Constr. Co. v. State Farm Fire & Cas. Co.*, 328 So. 2d 105, 107 (La. 1976).

The one-year contractual prescriptive period provided for in Defendants' policies would have expired on August 29, 2006 for Hurricane Katrina claims and on September 24, 2006 for Hurricane Rita claims.  In June of 2006, however, the Louisiana Legislature enacted Act 802,[21] which "establishe[d] an additional, limited exception to the running of prescription . . . prevent[ing] the running of prescription for one year on any claim seeking to recover for loss or damage to property against an insurer on any homeowner's insurance policy . . . ."  Act 802 § 2. Pursuant to this Act, "any such claim for damages caused by Hurricane Katrina shall be instituted on or before August 30, 2007" and "[a]ny such claim for damages caused by Hurricane Rita shall be instituted on or before September 25, 2007."  *Id.*  "[A]ny suit not instituted within that time and any claims relating thereto *shall be forever barred* unless a contract or the parties thereto provide for a later date."  *Id.* (emphasis added).

The legislature also enacted Act 739,[22] which established adjusted deadlines of September 1, 2007 for Hurricane Katrina claims and October 1, 2007 for Hurricane Rita claims. *See* La. R.S. 22:658.3(A) ("Notwithstanding any other provision of this Title to the contrary, any person or entity having a claim for damages pursuant to a homeowners insurance policy . . . resulting from Hurricane Katrina shall have through September 1, 2007, within which to file a claim with their insurer for damages, unless a greater time period to file such claim is otherwise provided by law or by contract."); *see also id.* § 22:658.3(B) (setting October 1, 2007 deadline for Hurricane Rita claims).  In accordance with these Acts, many thousands of lawsuits were

---

[21] Act of June 30, 2006, No. 802, 2006 La. Sess. Law Serv. 1918, 1919 ("Act 802").

[22] La. R.S. 22:658.3 (enacted by La. Acts 2006, No. 739) ("Act 739").

filed by individual policyholders in this Court and other Louisiana state and federal courts prior to the deadlines.

Acts 739 and 802 must be enforced as written.  "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made . . . ."  La. Civ. Code art. 9; *see also* La. R.S. § 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.").  Under the clear and direct language of Act 802, "any claims" for Katrina- or Rita-related damage that were not instituted "on or before" the deadlines are "*forever barred*."

As the Louisiana Fourth Circuit recently held in affirming a trial court decision dismissing an untimely Hurricane Katrina lawsuit, the legislature could not have been more clear about the deadline:

> By the express terms of this legislative exception [referring to Act 802], prescription on any Hurricane Katrina property damage claim, such as the claim asserted by Lila against Lloyd's, was prevented from running for a period of one year, and any suit asserting such hurricane-related claim had to be filed on or before 30 August 2007, or such an action would be *forever barred*, unless a contract between the parties provided for a later date.  The Legislature could not have been more clear:  if a party did not institute judicial proceedings to recover for damages sustained arising out of Hurricane Katrina by 30 August 2007, the party would not be able to sustain an action filed thereafter.

> The Legislature also enacted Act 739, which added La. R.S. 22:658.3 . . . .

> It is clear from reviewing these statutes in conjunction with one another that the Legislature extended the time for instituting a judicial action against an insurer seeking recovery for property damages arising out of Hurricane Katrina to 1 September 2007, *at the very latest*, or forever be barred from doing so.

> The *only* exception the Legislature provided to the filing deadlines set forth in Acts 802 and 739 was if the contract or the parties (Acts 802) or the law (Act 739) provided for a later date for the filing of an action.

*Lila, Inc. v. Underwriters at Lloyd's, London*, ___ So. 2d ___, 2008 WL 4191139, *3 (La. Ct. App. 4th Cir. Sept. 10, 2008) (emphasis in original, footnotes omitted). The Fourth Circuit concluded that the slightly longer deadlines in Act 739 were the operative deadlines. *See id.* at n.11; *see also In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2008 WL 3906760, at *2 (E.D. La. Aug. 26, 2008) (granting motion to dismiss on prescription grounds based on La. R.S. 22:658.3).

Neither the insureds themselves nor the State as partial assignee can recover on stale claims because the State stands in the shoes of the insureds. *See N.S.Q. Assocs. v. Beychok*, 659 So. 2d 729, 734 (La. 1995) ("[A]n assignee usually stands in the shoes of his or her assignor. Thus, the relevant statute of limitations usually continues to run against an assignee according to the same rules that applied to the assignor."); *Westenberger v. State*, 333 So. 2d 264, 270 (La. Ct. App. 1st Cir. 1976) ("An assignee is governed by the same prescriptive rules applicable to his assignor."). Accordingly, if the insured did not bring suit before the applicable deadline, and the State did not receive a partial assignment prior to that date, the claim is "forever barred" and should be dismissed.

**VI.    The State Has Failed To Adequately Plead Any Breach Of Contract Or Bad Faith Action.**

**A.    The State Fails To Adequately Allege That The Insureds Complied With Their Duties Under The Policies, Which Is A Condition Precedent To Suit.**

The Defendants' policies require the insureds to comply with certain duties in order to perfect their claims. For example, under the ISO policies, the insured must: (1) give prompt notice of damage to the insurer or an agent thereof; (2) make reasonable and necessary repairs to protect the property and keep an accurate record of repair expenses; (3) prepare an inventory of damaged personal property; (4) show the damaged property to the insurer or agents thereof; (5) provide the insurer with requested records and documents; (6) submit to examination under

oath; and (7) within 60 days after request, send a signed, sworn proof of loss setting forth certain specified information.  (*See, e.g.*, Appendix  B at INS 00000168 to INS 00000171)  These duties must be performed *before* suit is filed – the policies provide that "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss."  (*Id.* at 11.)  Courts have recognized that the insured's compliance with his or her duties under an insurance policy is a condition precedent to recovery.  *See*, *e.g.*, *Robbert v. Equitable Life Assurance Soc'y of the U.S.*, 46 So. 2d 286, 292 (La. 1949) ("'The burden [is] clearly upon the insured to perform the condition required by the policy, failing which performance there could be no liability or obligation upon the insurer to bestow the benefits provided.'") (citation omitted); *Lee v. United Fire & Cas. Co.*, 607 So. 2d 685, 688 (La. Ct. App. 4th Cir. 1992) ("Courts have generally reviewed compliance with insurance policy provisions as a condition precedent to recovery."); *Pervis v. State Farm Fire & Cas. Co.*, 901 F.2d 944, 947 (11th Cir. 1990) (insured's duty to submit to examination under oath was condition precedent to suit); *Mosadegh v. State Farm Fire & Cas. Co.*, No. 07-4427, 2008 WL 4544361, at *3 (E.D. La. Oct. 8, 2008) (Feldman, J.) (same).

The insured's duties are not delegable to the State.  *See, e.g.*, *Barnes v. State Farm Fire & Cas. Co.*, 623 F. Supp. 538, 540 (E.D. Mich. 1985) (granting summary judgment to insurer on the ground that proof of loss submitted by husband and not signed by wife was insufficient to satisfy wife's independent obligation as an insured to submit a sworn proof of loss); *Engleman v. Royal Ins. Co. of Liverpool, Eng.*, 51 P.2d 417, 417-19 (Nev. 1935) (holding that where insured assigned policy to plaintiff several days after fire loss, plaintiff could not collect insurance proceeds despite providing proof of loss to insurer because proof of loss requirement cannot be delegated to assignee); *Harrington v. Amica Mut. Ins. Co.*, 645 N.Y.S.2d 221, 222-24 (App. Div.

1996) (where third party rebuilt fire-damaged house, insured could not recover repair cost because he had not repaired the property).

Here, the State's Complaint has not identified a single specific claim where all of the policy conditions are alleged to have been met. Instead, the State alleges that the insureds have complied with their duties under the policy only "[u]pon information and belief" and in conclusory fashion. (Am. Pet. ¶ 82.) This allegation fails to satisfy *Twombly*. *See* 127 S. Ct. at 1965 (plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

**B.   The State's Breach Of Contract Claims Fail To Plead Breach Of Specific Policy Provisions, As Required By Louisiana Law.**

The State broadly avers that each of the approximately 200 Defendants breached their insurance contracts with each of their insureds that suffered Hurricane Katrina damages. (Am. Pet. ¶¶ 80-84.) These allegations fail under any pleading standard, but they especially fail under Louisiana law, which the Fifth Circuit has held requires the State to allege a ***specific*** policy provision that was breached by each insurer in order to state such a claim against each Defendant. *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002) ("To state a claim for breach of an insurance contract under Louisiana law, a plaintiff must allege a breach of a specific policy provision."); *accord Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2007 WL 3275133, at *7 (E.D. La. Nov. 5, 2007). In conjunction with *Twombly*, this rule requires the State to allege facts explaining *which* policy provisions the Defendants allegedly breached, and *how* each and every one of them supposedly breached them. The State's Amended Petition fails to meet this standard, as its allegations are wholly conclusory and devoid of any facts raising these claims beyond the speculative level.

For example, here, there are at a minimum policies from approximately 200 different Defendants, as to which the State asserts it has been assigned rights to insurance benefits, each with potentially different language that the State may (or may not) be alleging was breached. The Amended Petition fails to reference any specific provision from any of these policies that it claims was breached.  Additionally, the Amended Petition contains no factual allegations explaining why any Defendant's claim adjustments with respect to any particular insured supposedly were improper.  There are no facts describing the extent of the damage that any insured claims to have suffered, what happened during the adjustment process of that particular claim, or why that adjustment failed to comply with the terms of that insured's specific policy. Similarly, the Amended Petition contains no factual allegations regarding the cost of repairing or replacing any of the damaged property, or how much the pertinent Defendant has paid for that damage to date.  This Court would never permit a private plaintiffs' attorney with thousands of clients to file one vague complaint asserting thousands of breach of contract claims in the manner that the State has done.  Thus, unless and until the State alleges facts as to how each Defendant supposedly breached each and every insurance contract, this Complaint is fatally deficient under *Louque*.  *Louque*, 314 F.3d at 782.

## C.  The State's Bad Faith Claims Fall Along With The Breach Of Insurance Contract Claims.

Louisiana law recognizes that bad faith claims "'do not stand alone,' but depend upon a 'valid underlying claim.'"  *Edwards v. Allstate Prop. & Cas. Co.*, No. Civ.A. 04-2434, 2005 WL 221558, *9 (E.D. La. Jan. 27, 2005) (quoting *Phillips v. Patterson Ins. Co.*, 813 So. 2d 1191, 1195 (La. Ct. App. 3d Cir. 2002)).  Thus, "absent a valid, underlying, insurance claim," neither section 22:1220 nor 22:658 "provide a cause of action against an insurer."  *Clausen v. Fidelity & Deposit Co. of Md.*, 660 So. 2d 83, 85 (La. Ct. App. 1st Cir. 1995); *see also Phillips v. Patterson*

*Ins. Co.*, 813 So. 2d 1191, 1195 (La. Ct. App. 3d Cir. 2002) (statutory bad-faith claims unavailable unless plaintiff has viable breach-of-contract claim); *Abell Corp. v. Northland Ins. Co.*, No. 96-0717, 1996 WL 481072, at *4 (E.D. La. Aug. 23, 1996) (to state viable "bad faith" claim, plaintiff must establish "existence of insurance coverage" and a "valid, underlying insurance claim"); *Riley v. Transamerica Ins. Group Premier Ins. Co.*, 923 F. Supp. 882, 888 (E.D. La. 1996) (same), *aff'd sub nom. Riley v. TIG Ins. Co.*, 117 F.3d 1416 (5th Cir. 1997).

As discussed above, the State fails to state a claim that Defendants breached their insurance policies.  Accordingly, the State's claims for violations of Louisiana's "bad faith" statutes fail as a matter of law.  *See Dousay v. Allstate Ins. Co.*, 741 So. 2d 750, 754-55 (La. Ct. App. 3d Cir. 1999) (upholding dismissal of claims under Sections 22:658 and 22:1220 where plaintiff failed to allege viable breach-of-contract claim); *Nguyen*, 2007 WL 3275133, at *7 (dismissing claims under Sections 22:658 and 22:1220 because plaintiffs "have not alleged a valid, underlying breach of contract claim").

## D.     The State Does Not Allege Any Facts To Support Its Bad Faith Claims.

The State's statutory "bad faith" claims fail, in any event, because the Amended Petition alleges no facts showing any entitlement to relief under section 22:1220 and/or section 22:658. As with all its other defectively pled claims, the State's bad faith count is devoid of any meaningful, factual allegations regarding specific alleged misconduct on the part of any of the approximately 200 insurer Defendants that supposedly violated the statutes.  Instead, the Amended Petition merely vaguely alleges, in wholly conclusory fashion, that Defendants' conduct "was arbitrary, capricious, and without probable cause."  (Am. Pet. ¶¶ 104-06.)  This is insufficient.  *See Twombly*, 127 S. Ct. at 1965.

Indeed, the Amended Petition does not contain a single factual allegation regarding the manner in which any of the Defendants handled or adjusted any of the tens of thousands of

particular insurance claims at issue, let alone any fact from which it could be reasonably inferred that any Defendant acted arbitrarily or capriciously or without probable cause with respect to any specific claim.   The State alleges no facts indicating, for example, (1) what constitutes the "appropriate amount" a particular insured should have received from his or her insurer; (2) why that amount was appropriate, (3) why the amount actually paid was inappropriate, (4) why the payment of that amount was arbitrary, capricious, and without probable cause, (5) how any insurer breached a duty to adjust the claims, or (6) why the adjusting decisions were untimely, including when and how a sufficient proof of loss was submitted by the insured.

## CONCLUSION

For all of the foregoing reasons, the Amended Petition should be dismissed in its entirety under Rule 12(b)(6).

Respectfully submitted,

*/s/ Wayne J. Lee*
Wayne J. Lee, 7916
 wlee@stonepigman.com
Stephen G. Bullock, 3648
 sbullock@stonepigman.com
Mary L. Dumestre, 18873
 mdumestre@stonepigman.com
Andrea L. Fannin, 26280
 afannin@stonepigman.com
Of
STONE PIGMAN WALTHER
 WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200
Facsimile:  (504) 581-3361

And

Charles L. Chassaignac IV, 20746
cchassaignac@phjlaw.com
Of
PORTEOUS, HAINKEL & JOHNSON, L.L.P.
343 Third Street, Suite 202
Baton Rouge, Louisiana  70801
Telephone:  (225)383-8900
Facsimile:  (225) 383-7900
*Attorneys for State Farm Fire and Casualty*
*Company and State Farm General Insurance*
*Company*

And

*/s/ Maura Z. Pelleteri*
Maura Z. Pelleteri, 8463
Amy S. Malish, 28992
Of
KREBS, FARLEY & PELLETERI, L.L.C.
Texaco, Center, Suite 2500
400 Poydras Street
New Orleans, Louisiana  70130
Telephone:  (504) 299-3570
Facsimile:  (504) 299-3582
*Attorneys for Aegis Security Insurance Company*

And

*/s/ Howard B. Kaplan*
Howard B. Kaplan, 14414
Of
BERNARD CASSISA ELLIOTT & DAVIS
1615 Metairie Road
P.O. Box 55490
Metairie, Louisiana  70055-5490
Telephone:  (504) 834-2612
*Attorneys for Lafayette Insurance Company, United*
*Fire and Casualty Company and United Fire and*
*Indemnity Company*

And

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
                    Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701
*Attorneys for America First Insurance Company,*
*Liberty Mutual Fire Insurance Company, and*
*Liberty Mutual Insurance Company*


And


*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
                    Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701
*Attorneys for Metlife, Inc., Economy Premier*
*Assurance Company, Metropolitan Casualty*
*Insurance Company, and Metropolitan Property &*
*Casualty Insurance Company*


And


*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
                    Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

And

42

Christopher W. Martin,
Texas Bar No. 13057620
Martin R. Sadler,
Texas Bar No. 00788842
        Of
MARTIN, DISIERE, JEFFERSON &
  WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas  77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101
*Attorneys for United Services Automobile*
*Association, also separately named by plaintiffs as*
*USAA, USAA Casualty Insurance Company and*
*USAA General Indemnity Company*

And

*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
        Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

And

Of Counsel:
Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
        Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000
*Attorneys for The Hanover Insurance Company,*
*The Hanover American Insurance Company, and*
*Massachusetts Bay Insurance Company*

And

43

*/s/ Deborah B. Rouen*
Deborah B. Rouen, 2084
Chris A. D'Amour, 26252
       Of
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone:  (504) 581-3234
Facsimile:  (504) 566-0210
*Attorneys for Union National Fire Insurance*
*Company*

And

/s/ *Dominic J. Ovella*
Dominic J. Ovella, 15030
Anne E. Medo, 24556
Sean P. Mount, 27584
       Of
HAILEY, MCNAMARA, HALL,
  LARMANN & PAPALE, L.L.P.
One Galleria Boulevard, Suite 1400
P. O. Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500

*Attorneys for Fidelity and Deposit Company of*
*Maryland, Empire Fire and Marine Insurance*
*Company, Empire Indemnity Insurance Company,*
*Centre Insurance Company, ZC Sterling Insurance*
*Agency, Inc., and ZC Sterling Corporation*

And

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
   Of
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, LLC
LL&E Tower
909 Poydras Street, Suite 1800
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (5040 589-9701

And

Of Counsel
Richard L. Fenton
Steven M. Levy
Anthony T. Eliseuson
Sonnesnchein Nath & Rosenthal LLP
7800 Sears Tower
Chicago IL 60606
Telephone:  (312) 876-8000
*Attorneys for Allstate Insurance Company, Allstate
Indemnity Company, Encompass Insurance
Company, Encompass Insurance Company of
America, and Encompass Property and Casualty
Company*

And

*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
   Of
LUGENBUHL, WHEATON, PECK,
 RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

And

45

Of Counsel:
Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
       Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000
*Attorneys for Horace Mann Insurance Company,*
*Teachers Insurance Company, and Horace Mann*
*Property & Casualty Insurance Company*

And

*/s/ Alan J. Yacoubian*
Alan J. Yacoubian, 17213
Neal J. Favret, 24412
Rachel P. Catalanotto, 31095
       Of
JOHNSON, JOHNSON, BARRIOS &
  YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone:  (504) 528-3001
*Attorneys for Auto Club Family Insurance Company*

And

*/s/ Neil C. Abramson*
Neil C. Abramson, 21436
Nora B. Bilbro, 22955
Jacqueline M. Brettner, 30412
       Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

And

46

Marshall M. Redmon, 18398
       Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197
*Attorneys for Homesite Insurance Company*

And

*/s/ Harry Rosenberg*
Harry Rosenberg, 11465
Jacqueline M. Brettner, 30412
       Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
*Attorneys for Fidelity National Insurance Company*
*and Fidelity National Property and Casualty*
*Insurance Company*

And

*/s/ Marshall M. Redmon*
Marshall M. Redmon, 18398
       Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

And

47

Amy R. Sabrin
            Of
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
*Attorneys for Farmers Insurance Exchange,*
*Foremost Insurance Company, Foremost Property*
*and Casualty Company, and Foremost Signature*
*Insurance Company*

And

*/s/ Neil C. Abramson*
Neil C. Abramson, 21436
Jacqueline M. Brettner, 30412
            Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
*Attorneys for American Manufacturers Mutual*
*Insurance Company, Lumbermens Mutual Casualty*
*Company, Merastar Insurance Company, Unitrin*
*Preferred Insurance Company, Unitrin Auto and*
*Home Insurance Company, Trinity Universal*
*Insurance Company, and Trinity Universal*
*Insurance Company of Kansas, Inc.*

And

*/s/ Ralph S. Hubbard*
Ralph S. Hubbard, III, 7040
Seth A. Schmeeckle, 27076
            Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

And

48

Stephen E. Goldman
Wystan M. Ackerman
                   Of
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut  06103-3597
Telephone:  (860) 275-8200
Facsimile:  (860) 275-8299
*Attorneys for The Standard Fire Insurance Company, "St. Paul" (a non-existent entity), "St. Paul Travelers Insurance Company" (a non-existent entity), St. Paul Fire & Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, Travelers Home & Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Insurance Company (a non-existent entity), Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company, The Automobile Insurance Company of Hartford, Connecticut, Hartford Accident & Indemnity Company, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, "Hartford Insurance Group" (a non-existent entity), Hartford Underwriters Insurance Company, Property and Casualty Insurance Company of Hartford, and Twin City Fire Insurance Company*

And

*/s/ Christopher R. Pennison*

Jay M. Lonero, 20642
Christopher R. Pennison, 22584
Angie Arceneaux Akers, 26786
      Of
LARZELERE PICOU WELLS SIMPSON
  LONERO, LLC
Suite 1100 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA  70002
Telephone:  (504) 834-6500
Fax:  (504) 834-6565
*Attorneys for Republic Fire and Casualty Insurance*
*Company,  American National Property and*
*Casualty Company, American National General*
*Insurance Company, and ANPAC Louisiana*
*Insurance Company*

And

*/ s/Gerard Wimberly, Jr.*

GERARD E. WIMBERLY, JR. (#13584) (T.A.)
ANTHONY ROLLO ( # 01133)
DANIEL T. PLUNKETT (# 21822)
McGlinchey Stafford, PLLC
601 Poydras Street, 12th Floor
New Orleans, LA 70130
Telephone: (504) 586-1200
Facsimile: (504) 596-0377


STEPHANIE G. JOHN (# 25111)
1001 McKinney St. Suite 1500
Houston, TX 77002
Telephone: (713) 520-1900
Fax: (713) 520-1025
*ATTORNEYS FOR BALBOA INSURANCE*
*COMPANY ANDMERITPLAN INSURANCE*
*COMPANY*

And

*/s/ John E. Unsworth*

JOHN E. UNSWORTH, JR., #09477
W. GLENN BURNS, #3698
LAUREN E. BRISBI, #29778
HAILEY, McNAMARA, HALL,
LARMANN & PAPALE, L.L.P.

50

```
One Galleria Blvd, Suite 1400
Post Office Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500
```
*Counsel for Defendant,*
*Clarendon National Insurance Company*

And

*/s/ Richard J. Doren*
Richard J. Doren
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
(213) 229-7038

Daniel W. Nelson
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
(202) 955-8500

Robert I. Siegel, La. Bar No. 12063.
Gieger, Laborde & Laperouse, LLC
One Shell Square
701 Poydras St., Suite 4800
New Orleans, Louisiana 70139-4800
(504) 654-1307
*Attorneys for Lexington Insurance Company,*
*Audubon Insurance Company, and AIU Insurance*
*Company*

And

*/s/ Laurie L. DeArmond*
Patrick D. DeRouen
Laurie L. DeArmond
Porteous, Hainkel & Johnson
704 Carondelet Street
New Orleans, LA 70130
504-581-3838
*Counsel for Armed Forces Insurance*

*/s/ Andrew L. Plauche, Jr.*
ANDREW L. PLAUCHÉ, JR. (11023)
JAMES K. ORDENEAUX (28179)
PLAUCHÉ MASELLI PARKERSON, L.L.P.
701 Poydras Street, Suite 3800

51

New Orleans, LA 70139-3800
Office: 504.582.1142; Fax: 504.582.1172

And

H. ALSTON JOHNSON III (7293)
PHELPS DUNBAR, L.L.P.
445 North Blvd., Suite 701
Baton Rouge, LA 70802
Office: 225.346.0285; Fax: 225.381.9197
*ATTORNEYS FOR LOUISIANA FARM
BUREAU MUTUAL INSURANCE COMPANY AND
LOUISIANA FARM BUREAU CASUALTY
INSURANCE COMPANY AND SOUTHERN FARM
BUREAU CASUALTY INSURANCE COMPANY*

And

*/s/ Gordon P. Serou, Jr.*
Gordon P. Serou, Jr., 14432
        Of
LAW OFFICES OF
GORDON P. SEROU, JR., LLC
650 Poydras Street, Suite 1420
New Orleans, Louisiana 70130
Telephone: (504) 299-3421

And

Walter D. Willson
        Of
WELLS MARBLE & HURST, PLLC
300 Concourse Blvd., Suite 200
Ridgeland, Mississippi 39157
Telephone:  (601) 605-6944
*Attorneys for American Bankers Insurance
Company of Florida, American Security Insurance
Company, American Reliable Insurance Company,
Standard Guaranty Insurance Company, Voyager
Indemnity Insurance Company, and Voyager
Property and Casualty Insurance Company*

And

*/s/ John R. Walker*

John R. Walker, 02165

                    Of

ALLEN & GOOCH

3900 N. Causeway Boulevard

Suite 1450

Metairie, Louisiana  70002

Telephone:  (504) 836-5210

*Attorneys for American Summit Insurance*
*Company and National Lloyds Insurance*
*Company*


And

*/s/ Julia A. Dietz*

Sidney W. Degan, III (#4804)

Julia A. Dietz (#18866)

Maryann G. Hoskins (#20869)

Degan, Blanchard & Nash

400 Poydras St., Suite 2600

New Orleans, LA  70130

(504) 529-3333 phone

(504) 529-3337 fax

*Attorneys for National Security Fire*
*and Casualty Company and Omega*
*One Insurance Company*


And

*/s/   Matthew A. Woolf*

Matthew A. Woolf, 27146

mwoolf@bakerdonelson.com

                    Of

BAKER DONELSON BEARMAN

CALDWELL & BERKOWITZ, PC

201 St. Charles Avenue, Suite 3600

New Orleans, Louisiana  70170

Telephone:  (504) 566-5200

Facsimile:  (504) 636-4000

53

*Attorneys for G.U.I.C. Insurance Company,*

*American Family Home Insurance Company,*

*American Modern Home Insurance Company,*

*American Southern Home Insurance Company, and*

*American Western Home Insurance Company*
And

*/s/ Nancy B. Gilbert*
John P. Wolff, III, Bar #14504
Nancy B. Gilbert, Bar #23095
Christopher K. Jones #28101
**KEOGH, COX & WILSON, LTD.**
701 Main Street (P. O. Box 1151)
Baton Rouge, Louisiana  70821
Telephone:  225.383.3796
Facsimile: 225.343.9612
*Attorneys for Amica Mutual Insurance Co.*

And

*/s/ Matthew J. Lindsay*
RICHARD E. KING (#25128)
DAVID M. MORAGAS (#29633)
MATTHEW J. LINDSAY (#30599)
GALLOWAY, JOHNSON, TOMPKINS,
        BURR & SMITH
701 Poydras Street, Suite 4040
New Orleans, Louisiana  70139
Telephone: (504) 525-6802
Facsimile:  (504) 525-2456
*Counsel for Defendants,*
*Assurance Company of America, Zurich American*
*Insurance Company, and Zurich North America*

And

*/s/ Thomas R. Blum*
Thomas R. Blum, 3170
M. Davis Ready, 24616
Simon, Peragine, Smith & Redfearn, L.L.P.
30th Floor - Energy Centre
1100 Poydras Street
New Orleans, LA 70163

54

Telephone: (504) 569 - 2030
Facsimile: (504) 569 - 2999
*Attorneys for Shelter Mutual Insurance Company
and Shelter General Insurance Company*

And

*/s/ Steven W. Usdin*
Steven W. Usdin, 12986
Stephen L. Miles, 31263
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  504/589-9700
*Attorney for Chubb Indemnity Insurance Company,
Chubb Custom Insurance Company, Chubb
National Insurance Company, Federal Insurance
Company, Great Northern Insurance Company, (for
itself and as erroneously sued as Chubb Insurance
Group, a non-entity, incapable of being sued), and
Vigilant Insurance Company*

And

*/s/Kelly Cambre Bogart*
KELLY CAMBRE BOGART (#22985)
LAWRENCE J. DUPLASS (#5199)
C. MICHAEL PFISTER (#14317)
JAIME M. CAMBRE (#29116)
DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK
Three Lakeway Center, Suite 2900
3838 N. Causeway Boulevard
Metairie, LA 70002
Tel.:    (504)  832-3700
kbogart@duplass.com
lduplass@duplass.com
mpfister@duplass.com
jcambre@duplass.com
*Attorneys for Fireman's Fund Insurance
Company, and The American
Insurance Company*

And

55

*/s/  Jacqueline M. Brettner*
Neil C. Abramson (Bar #21436)
Jacqueline M. Brettner (Bar #30412)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130

And

Marshall M. Redmon (Bar #18398)
445 North Boulevard, Suite 701
Baton Rouge, LA  70802
Telephone: (225) 346-0285
Fax: (225) 381-9197
*Attorneys for Defendants*
*The Involved Lloyd's Underwriters*

And

*/s/   Harry Rosenberg*
Harry Rosenberg (Bar #11465)
Jay R. Sever (Bar #23935)
Jacqueline M. Brettner (Bar #30412)
Canal Place
**PHELPS DUNBAR LLP**
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
*Attorneys for Defendant Scottsdale Insurance*
*Company*

And

*/s/ Edward J. Lilly*
EDWARD J. LILLY, LSBA #8571
CRULL, CASTAING &  LILLY
601 Poydras Street, Suite 2323
New Orleans, LA 70130
Tel. (504)581-7700
Fax (504)581-5523
*Attorneys for Southwest Business Corporation*

56

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Defendants' Memorandum in Support of Motion to Dismiss has been served upon all counsel of record by electronic notice from the Court's CM/EC Filing System, this 20th day of November, 2008.

*/s/ Ralph S. Hubbard*
Ralph S. Hubbard
