LEXINGTON

INS 00000183

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance – Coverage E – Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

      Proof of mailing will be sufficient proof of notice.

      (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

         (b) If the risk has changed substantially since the policy was issued.

         This can be done by letting you know at least 30 days before the date cancellation takes effect.

      (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

INS 00000184

**LIBERTY**

INS 00000185

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgement; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

    a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or un-controlled or however caused, or any consequence of any of these.

10

LIB-016

INS 00000186

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

| *MUTUAL POLICY CONDITIONS |
|---|

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class II.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

*[signature]*
SECRETARY

*[signature]*
PRESIDENT

Includes copyrighted material of Insurance Services Office,
with its permission.
Copyright, Insurance Services Office, Inc., 1990

16

LIB-022

**INS 00000187**

# REPUBLIC FIRE & CASUALTY

INS 00000188

HO 00 03 04 91

    (5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition 3. Loss Settlement.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

    a. Repair or replace any part to restore the pair or set to its value before the loss; or

    b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

    Each party will:

    a. Pay its own appraiser; and

    b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

INS 00000189

HO 00 03 04 91

6. **Suit Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

   No one will have the right to join us as a party to any action against an "insured." Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false statements;

   relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**
   a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.
   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

      Proof of mailing will be sufficient proof of notice.

      (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

         (b) If the risk has changed substantially since the policy was issued.

         This can be done by letting you know at least 30 days before the date cancellation takes effect.

      (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

HO 00 03 04 91    Copyright, Insurance Services Office, Inc., 1990    Page 17 of 18

V.0001

**INS 00000190**

1000049    YOUNG: RAYMOND           FI1    3234921    15    10 28 08
REPUBLIC FIRE AND CASUALTY INSURANCE COMPANY
DWG-2 Ed. 1-93

(a) the actual cash value of that part of the building damaged; or

(b) that proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) excavations, foundations, piers or any supports which are below the under surface of the lowest basement floor;

(b) those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage unless:

(a) actual repair or replacement is complete; or

(b) the cost to repair or replace the damage is both:

(i) less than 5% of the amount of insurance in this policy on the building; and

(ii) less than $2500.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis. You may then make claim within 180 days after loss for any additional liability on a replacement cost basis.

6. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between actual cash value of the property before and after the loss.

7. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

8. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon on umpire within 15 days, you or we may request that the choice be made by judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. pay its own appraiser; and

b. bear the other expenses of the appraisal and umpire equally.

9. **Other Insurance.** If property covered by this policy is also covered by other fire insurance, we will pay only the proportion of a loss caused by any peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance covering the property.

10. **Subrogation.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the person insured must sign and deliver all related papers and cooperate with us.

11. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

12. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

13. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. reach an agreement with you;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with us.

000051        YOUNG: RAYMOND                          FI1      3234921     15            10 28 08
              REPUBLIC FIRE AND CASUALTY INSURANCE COMPANY
                                                                                              DWG-2 Ed. 1-93

19. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

    This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

20. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

21. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

22. **Death.** If you die, we insure:
    a. your legal representatives but only with respect to the property of the deceased covered under the policy at the time of death;
    b. with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

23. **Nuclear Hazard Clause.**
    a. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.
    b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.
    c. This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

24. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

25. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

*[signature]*

President

*[signature]*

Secretary

# SOUTHWEST BUSINESS

INS 00000193

9. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

10. **Subrogation.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. If an assignment is sought, the person insured shall sign and deliver all related papers and cooperate with us in any reasonable manner.

11. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

12. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

13. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Payment for loss will be made within 30 days after we reach agreement with you, entry of a final judgment, or the filing of an appraisal award with us.

14. **Abandonment of Property.** We need not accept any property abandoned by you.

15. **Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

   a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. pays any premium due under this policy on demand if you have neglected to pay the premium;

   c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If the policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

If we pay the mortgagee for any loss and deny payment to you:

   a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

16. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

17. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the

INS 00000194

Declarations. Proof of mailing shall be sufficient proof of notice.

    (1) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

    (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

    (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 30 days before the date cancellation takes effect.

    (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 30 days before the date cancellation takes effect.

  c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our short rate rules. When we cancel, the return premium will be pro rata.

  d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**18. Non-Renewal.** We may elect not to renew this policy. We may do so by delivery to you or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

**19. Liberalization Clause.** If we adopt any revision which would broaden the coverage under this policy without additional premium within 60 days prior or during the policy period, the broadened coverage will immediately apply to this policy.

**20. Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

**21. Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

**22. Death.** If you die, we insure:

  a. your legal representatives but only with respect to the property covered under the policy at the time of death;

  b. with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**23. Nuclear Hazard Clause**

  a. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequences of any of these.

  b. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

  c. This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**TRAVELERS**

INS 00000196

HO-3 (04-91)

4. **Waiver or Change of Policy Provisions.**

    A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

    a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

    b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations.

    Proof of mailing will be sufficient proof of notice.

    (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

    (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us we may cancel:

        (a) If there has been a material misrepresentation of fact which if known to us, would have caused us not to issue the policy; or

        (b) If the risk has changed substantially since the policy was issued.

    This can be done by letting you know at least 30 days before the date cancellation takes effect.

    (4) When this policy is written for a period more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

    c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

    d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

    If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

    Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

    a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

    b. "Insured" includes:

        (1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

        (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

HO-3 (04-91)

Page 17 of 17

INS 00000197

HO-3 (04-91)

of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. Reach an agreement with you;

    b. There is an entry of a final judgment; or

    c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured."

12. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

14. **Nuclear Hazard Clause.**

    a. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused or any consequence of any of these.

    b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

    c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

15. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

16. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

HO-3 (04-91)

Page 11 of 17

INS 00000198

HO-3 (04-91)

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

g. **Nuclear Hazard**, to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

h. **Intentional Loss**, meaning any loss arising out of any act committed:

(1) By or at the direction of an "insured"; and

(2) With the intent to cause a loss.

2. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered.

a. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph 1. above to produce the loss;

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

c. Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises."

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

    a. To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

    b. For more than the applicable limit of liability.

2. **Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

    a. Give prompt notice to us or our agent;

    b. Notify the police in case of loss by theft;

    c. Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

    d. Protect the property from further damage. If repairs to the property are required, you must:

        (1) Make reasonable and necessary repairs to protect the property; and

        (2) Keep an accurate record of repair expenses;

    e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

    f. As often as we reasonably require:

        (1) Show the damaged property;

        (2) Provide us with records and documents we request and permit us to make copies; and

        (3) Submit to examination under oath, while not in the presence of any other "insured" and sign the same;

    g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

        (1) The time and cause of loss;

        (2) The interest of the "insured" and all others in the property involved and all liens on the property;

        (3) Other insurance which may cover the loss;

        (4) Changes in title or occupancy of the property during the term of the policy;

        (5) Specifications of damaged buildings and detailed repair estimates;

        (6) The inventory of damaged personal property described in 2.e. above;

        (7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

        (8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

HO-3 (04-91)

INS 00000199

HS 661 09 99

c. Protect the property from further damage. If repairs to the property are required, you must:

   (1) Make reasonable and necessary repairs to protect the property; and

   (2) Keep an accurate record of repair expenses;

d. Cooperate with us in the investigation of a claim;

e. Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

f. As often as we reasonably require:

   (1) Show the damaged property;

   (2) Provide us with records and documents we request and permit us to make copies; and

   (3) Submit to examination under oath, while not in the presence of another "insured", and sign the same;

g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1) The time and cause of loss;

   (2) The interest of all "insureds" and all others in the property involved and all liens on the property;

   (3) Other insurance which may cover the loss;

   (4) Changes in title or occupancy of the property during the term of the policy;

   (5) Specifications of damaged buildings and detailed repair estimates;

   (6) The inventory of damaged personal property described in 2.e. above; and

   (7) Receipts for additional living expenses incurred and records that support the fair rental value loss.

3. **Loss Settlement.** Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

6. **Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

   a. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

   b. A service agreement, the coverage provided under this policy is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is said to be insurance.

7. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

8. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

9. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. Reach an agreement with you;

   b. There is an entry of a final judgment; or

HS 661 09 99

INS 00000200