USAA

INS 00000201

## YOUR DWELLING POLICY

*Louisiana Fire Policy*

### READ YOUR POLICY, DECLARATIONS AND ENDORSEMEI

The Dwelling Policy Insurance contract between you an
Declarations page and any applicable forms and endorsemi
outlines Information contained in the Declarations and the m

**QUICK REFERENCE**

| | Beginning On Page |
|---|---|
| **DECLARATIONS PAGE** | |
| Your Name and Address
Described Location
Policy Period
Coverages, Amounts of
   Insurance and Premiums
Forms and Endorsements | |
| **AGREEMENT** | 2 |
| **DEFINITIONS** | |
| **COVERAGES** | |
| Property Coverages
Fair Rental Value/Additional
   Living Expense
Other Coverages
   Debris Removal
   Improvements, Alterations
   and Additions
   World-Wide Coverage
   Fire Department Service
   Charge | |
| **PERILS INSURED AGAINST** | 4 |
| **GENERAL EXCLUSIONS** | 5 |
| **CONDITIONS** | 6 |
| Policy Period
Insurable Interest
Duties After Loss
Loss Settlement
Mortgage Clause
Cancellation
Non-Renewal | |

**RECIPROCAL PROVISIONS. . .**
apply when United Services Automobile Association, or USAA, Is named on the Declarations as the Company.

**A non-assessable policy**

Reciprocals

Special definitions and provisions

Plan of operation

In your policy these sets of words have the same meaning: Policy means Contract; You, Your or Insured means Subscriber. We, us, our, USAA or Company means Reciprocal or Interinsurance Exchange; Premium means Deposit; President means Attorney-in-Fact.

Your Policy Is Issued as part of an Interinsurance Exchange by the President of USAA as Attorney-in-Fact under the authority given him by the subscribers.

No Contingent Liability: You are liable only for the amount of your premium since USAA has a free surplus in excess of the amount required by Article 19.03 of the Texas Insurance Code of 1951, as amended.

Participation: By purchasing this policy, you are a member of USAA and subject to its bylaws. You are entitled to dividends as may be declared by us, after approval as required by the Texas Insurance Code of 1951, as amended.

Includes copyrighted material of Insurance Services Office with Its permission.
Copyright, Insurance Services Office, 1988

DWG-1 ED 1-93

INS 00000202

6. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between actual cash value of the property before and after the loss.

7. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

8. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the Described Location is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. pay its own appraiser; and

   b. bear the other expenses of the appraisal and umpire equally.

9. **Other Insurance.** If property covered by this policy is also covered by other fire insurance, we will pay only the proportion of a loss caused by any peril insured against under this policy that the limit of liability applying under this policy bears to the total amount of fire insurance covering the property.

10. **Subrogation.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, the person insured must sign and deliver all related papers and cooperate with us.

11. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

12. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

13. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. reach an agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

14. **Abandonment of Property.** We need not accept any property abandoned by you.

15. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1988

INS 00000203

**20. Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**21. Assignment.** Assignment of this policy will not be valid unless we give our written consent.

**22. Death.** If you die, we insure:

    **a.** your legal representatives but only with respect to the property of the deceased covered under the policy at the time of death;

    **b.** with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**23. Nuclear Hazard Clause.**

    **a.** "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

    **b.** Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

    **c.** This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**24. Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**25. Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1988

DWG-1 ED 1-93

INS 00000204

USAA    --          PAGE   5



**USAA**
9800 Fredericksburg Road • San Antonio, Texas 78288

## UNIT OWNERS – HOMEOWNERS POLICY.
### **READ YOUR POLICY CAREFULLY**

This policy is a legal contract between you, the policyholder, and us, the insurer. And like other contracts, it contains certain duties and responsibilities of both parties to the contract. This contract consists of the Declarations page, the policy, and any applicable endorsements.

Your policy provides the coverages and amounts of insurance shown in the Declarations with a premium.

This cover sh[...]
some of the [...]
This is not th[...]
actual policy [...]
itself sets forl[...]
of both you a[...]

IT IS THER[...]
READ YOUR [...]

*Louisiana
Condominium
Policy*

### QUICK REFERENCE

| | Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | |
| **SECTION I** | |
| **PROPERTY COVERAGES** | 2 |
| Dwelling | |
| Personal Property | |
| Special Limits | |
| Property Not Covered | |
| Loss of Use | |
| Additional Coverages | |
| Debris Removal | |
| Reasonable Repairs | |
| Trees, Shrubs and Plants | |
| Fire Department Charge | |
| Property Removed | |
| Credit Card | |
| Loss Assessment | |
| Collapse | |
| Lock Replacement | |
| Refrigerated Products | |
| Glass | |
| Building Ordinance or Law | |
| Temporary Living Expense | |

| | |
|---|---|
| **PERILS IN[...]** | |
| **EXCLUSI[...]** | |
| **CONDITI[...]** | |
| **LIABILITY** | |
| Person | |
| Medica[...] | |
| **EXCLUSIONS** | 11 |
| **ADDITIONAL COVERAGES** | 14 |
| Claims Expenses | |
| First Aid Expenses | |
| Damage to Property of Others | |
| Loss Assessment | |
| **CONDITIONS** | 15 |
| **SECTIONS I and II** | |
| **CONDITIONS** | 16 |

This policy is issued by United Services Automobile ("USAA"), a reciprocal interinsurance exchange, by the President of USAA as Attorney-in-Fact under the authority given him by the subscribers.

- By purchasing this policy you are a member of USAA and are subject to its bylaws.
- This is a non-assessable policy. You are liable only for the amount of your premium as USAA has a free surplus in compliance with Article 19.03 of the Texas Insurance Code of 1951, as amended.

- This is a participating policy. You are entitled dividends as may be declared by the USAA Board of Directors.
- The USAA Board of Directors may annually allocate a portion of USAA's surplus to subscriber's savings accounts. Amounts allocated to such accounts remain a part of USAA's surplus and may be used as necessary to support the operations of the Association. A member shall have no right to any balance in the member's account except until following termination of membership, as provided in the bylaws.

QR6 (04–93)

**INS 00000205**

Case 2:05-cv-04182-SRD-JCW   Document 16493-13   Filed 11/20/08   Page 6 of 33

If, at the time of loss, there is other insurance in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance.

This policy does not apply to motorized golf carts and their equipment and accessories when an automobile policy also applies.

7. **Suit Against Us.** No action can be brought against us unless you have:

   a. given us notice of the loss,

   b. complied with all other policy provisions, and

   c. started the action

   within one year after the date of the loss.

8. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

9. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach an agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

10. **Abandonment.** You may not abandon property to us for any reason.

11. **Mortgage Clause.** The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgagees.

    If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    a. promptly notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. pays any premium due under this policy on demand if you have neglected to pay the premium; and

c. sends to us, within 60 days after our request, a signed sworn proof of loss which sets forth, to the best of the mortgagee's knowledge and belief:

   (1) the time and cause of loss;

   (2) the interest of the mortgagee and all others in the property involved and all liens on the property;

   (3) other insurance which may cover the loss;

   (4) changes in title or occupancy of the property during the term of the policy;

   (5) specifications of damaged buildings and detailed repair estimates.

   Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

d. submits to examinations under oath.

If we decide to cancel or not to renew this policy, the mortgagee will be properly notified at least 10 days before the date cancellation or nonrenewal takes effect.

If we pay the mortgagee for any loss and deny payment to you:

   a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

12. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

13. **Recovered Property.**

    a. we have an interest in the salvage value of any property for which we have made a payment under the loss settlement provisions. At our option, property that we have paid for or replaced becomes our property.

Copyright, USAA, 1993. All rights reserved.

HO-6R  (04-93)

INS 00000206

USAA

## SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in SECTION I or bodily injury or property damage in SECTION II, which occurs during the policy period.

2. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

3. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a. You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (b) If the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

6. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

7. **Subrogation.** An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an insured must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under SECTION II to Medical Payments to Others or Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. Insured includes:

   (1) any member of your household who is an insured at the time of your death, but only while a resident of the residence premises; and

   (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Copyright, USAA, 1993. All rights reserved.

INS 00000207

(2) pay you the cost to repair or restore the property to the condition it was in just before the loss, or

(3) pay you the necessary amount actually spent to repair or replace the damaged property.

b. We will pay no more than actual cash value until repair or replacement of the damaged property is completed, unless the entire loss is less than $500.

c. You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability under the terms of this endorsement.

d. For property that is not eligible for replacement cost coverage, it is our option to:

(1) pay you the actual cash value; or

(2) replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition; or

(3) pay you the cost to repair or restore the property to the condition it was in just before the loss.

e. We will not pay more than the Limit of Liability that applies to Coverage C. Nor will we pay more than any Special Limits of Liability that apply as stated in this policy.

**SECTION I – CONDITIONS**

SUIT AGAINST US is deleted and replaced by:

7. **Suit Against Us.** No action can be brought against us unless you have:

a. given us notice of the loss,

b. complied with other policy provisions, and

c. started the action

within one year after the date of the loss.

9. Loss Payment is deleted and replaced by:

9. **Loss Payment.**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

HO-LA (04-04)

The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.

11. **Mortgage Clause**

The following sentence is deleted:

If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

The following sentences are added to replace the above:

If this policy is cancelled by us, the mortgagee will be notified:

a. At least 10 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

b. At least 30 days before the date cancellation takes effect if we cancel for any other reason.

If the policy is not renewed by us, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

14. Concealment or Fraud is deleted and replaced by:

14. **Concealment or Fraud.**

a. Under Section I – Conditions

(1) With respect to loss caused by fire, we do not provide coverage to the insured who, whether before or after a loss, has:

(a) Intentionally concealed or misrepresented any material fact or circumstance;

(b) Engaged in fraudulent conduct; or

(c) Made false statements;

relating to this insurance.

(2) With respect to loss caused by a peril other than fire and with respect to all insureds covered under this policy, we provide no coverage for loss under Section I – Property Coverages if, whether before or after a loss, one or more insureds have:

INS 00000208

Homeowners 3R
Special Form
(04-93)
HO-93 Program

## AGREEMENT

In return for payment of premium and subject to all terms of th described.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in resident of the same household. "We", "us" and "our" refer to the ( words and phrases are defined and are printed in boldface when used

*Louisiana*
*HO Policy*

1. "bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "business" includes trade, profession or occupation.

3. "insured" means you and residents of your household who are:

   a. your relatives; or

   b. other persons under the age of 21 and in the care of any person named above.

   Under SECTION II, "insured" also means:

   c. with respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3a or 3b above. A person or organization using or having custody of these animals or watercraft in the course of any business or without consent of the owner is not an insured;

   d. with respect to any vehicle or conveyance to which this policy applies:

      (1) persons while engaged in your employ or that of any person included in 3a or 3b above; or

      (2) other persons using the vehicle on an insured location with your consent.

4. "insured location" means:

   a. the residence premises;

   b. the part of other premises, other structures and grounds used by you as a residence;

   c. any premises used by you in connection with a premises in 4a or 4b above;

   d. any part of a premises:

      (1) not owned by an insured; and

      (2)

   e. vac
      or

   f. lan
      wh
      bui

   g. ind
      vau

   h. any ...... .. ................. ......
      to an insured for other than business use.

5. "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. bodily injury; or

   b. property damage.

6. "property damage" means physical damage to, or destruction of tangible property, including loss of use of this property.

7. "residence employee" means:

   a. an employee of an insured whose duties are related to the maintenance or use of the residence premises, including household or domestic services; or

   b. one who performs similar duties elsewhere not related to the business of an insured.

8. "residence premises" means:

   a. the one family dwelling, other structures, and grounds; or

   b. that part of any other building;

   where you reside and which is shown as the "residence premises" in the Declarations.

   "Residence premises" also means a two family dwelling where you reside in at least one of the family units and which is shown as the "residence premises" in the Declarations.

Includes copyright material of Insurance Services Office, with its permission.

HO-3R   (04-93)

INS 00000209

6. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

   This policy does not apply to motorized golf carts and their equipment and accessories when an automobile policy also applies.

7. **Suit Against Us.** No action can be brought against us unless you have:

   a. given us notice of the loss,

   b. complied with all other policy provisions, and

   c. started the action

   within one year after the date of the loss.

8. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

9. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach an agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

10. **Abandonment.** You may not abandon property to us for any reason.

11. **Mortgage Clause.** The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

    If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    a. promptly notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. sends to us, within 60 days after our request, a signed sworn proof of loss which sets forth, to the best of the mortgagee's knowledge and belief:

    (1) the time and cause of loss;

    (2) the interest of the mortgagee and all others in the property involved and all liens on the property;

    (3) other insurance which may cover the loss;

    (4) changes in title or occupancy of the property during the term of the policy;

    (5) specifications of damaged buildings and detailed repair estimates.

    Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    d. submits to examinations under oath.

    If we decide to cancel or not to renew this policy, the mortgagee will be properly notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

12. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

13. **Salvage and Recovered Property.**

    a. We have an interest in the salvage value of any property for which we have made a payment under the Loss Settlement provision. At our option, property that we have paid for or replaced becomes our property.

    b. If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property may be retained by you. If you retain the property, the loss payment, or any lesser amount to which we agree, must be refunded to us.

Includes copyright material of Insurance Services Office, with its permission.

HO-3R   (04-93)

INS 00000210

3. **Waiver or Change of Policy Provisions.** A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

   a. You may cancel this policy at any time. But the effective date of cancellation cannot be earlier than the date of your request.

   b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

   Proof of mailing will be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

   (b) if the risk has changed substantially since the policy was issued.

   This can be done by letting you know at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

   d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

6. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

7. **Subrogation.** An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an insured must sign and deliver all related papers and cooperate with us.

   Subrogation does not apply under SECTION II to Medical Payments to Others or Damage to Property of Others.

8. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

   b. **Insured includes:**

   (1) any member of your household who is an insured at the time of your death, but only while a resident of the residence premises; and

   (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

Includes copyright material of Insurance Services Office, with its permission.

INS 00000211

(2) pay you the cost to repair or restore the property to the condition it was in just before the loss, or

(3) pay you the necessary amount actually spent to repair or replace the damaged property.

b.  We will pay no more than actual cash value until repair or replacement of the damaged property is completed, unless the entire loss is less than $500.

c.  You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability under the terms of this endorsement.

d.  For property that is not eligible for replacement cost coverage, it is our option to:

    (1) pay you the actual cash value; or

    (2) replace, or to pay you our cost to replace the property with property of like kind, age, quality and condition; or

    (3) pay you the cost to repair or restore the property to the condition it was in just before the loss.

e.  We will not pay more than the Limit of Liability that applies to Coverage C. Nor will we pay more than any Special Limits of Liability that apply as stated in this policy.

SECTION I – CONDITIONS

SUIT AGAINST US is deleted and replaced by:

7.  Suit Against Us.  No action can be brought against us unless you have:

    a.  given us notice of the loss,

    b.  complied with other policy provisions, and

    c.  started the action

    within one year after the date of the loss.

9.  Loss Payment is deleted and replaced by:

9.  Loss Payment.

    We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

HO-LA  (04–04)

The undisputed portion of the loss will be payable within 30 days after we receive your proof of loss.

11.  Mortgage Clause

The following sentence is deleted:

If the policy is cancelled or not renewed by us, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

The following sentences are added to replace the above:

If this policy is cancelled by us, the mortgagee will be notified:

a.  At least 10 days before the date cancellation takes effect if we cancel for nonpayment of premium; or

b.  At least 30 days before the date cancellation takes effect if we cancel for any other reason.

If the policy is not renewed by us, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

14.  Concealment or Fraud is deleted and replaced by:

14.  Concealment or Fraud.

    a.  Under Section I – Conditions

        (1) With respect to loss caused by fire, we do not provide coverage to the insured who, whether before or after a loss, has:

            (a) Intentionally concealed or misrepresented any material fact or circumstance;

            (b) Engaged in fraudulent conduct; or

            (c) Made false statements;

            relating to this insurance.

        (2) With respect to loss caused by a peril other than fire and with respect to all insureds covered under this policy, we provide no coverage for loss under Section I – Property Coverages if, whether before or after a loss, one or more insureds have:

INS 00000212

**MERITPLAN & BALBOA**

INS 00000213

(PM7RAF1P/01A52MFPO0002E1103)

STK# 00 0000

## BALBOA INSURANCE COMPANY
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

### RESIDENTIAL DWELLING FLOOD INSURANCE FORM

### INSURING AGREEMENT

AGREEMENT OF INSURANCE between Balboa Insurance Company as Insurer, (hereinafter known as "The Company", "we", "our", and "us") and the Named Insured, (hereinafter known as "Named Insured," "you" and "your").

We insure you against all DIRECT PHYSICAL LOSS BY OR FROM FLOOD to the insured property, based upon:
1. You having paid the correct amount of premium; and
2. Our reliance on the accuracy of information and statements you have furnished; and
3. All terms of this Policy.

On this basis, you are insured up to the lesser of:
1. The actual cash value, except as provided in Article 8, not including any antique value, of the property at the time of loss; or
2. The amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss.

THEREFORE, in consideration of the foregoing and the mutual promises exchanged herein, we and you agree, as follows:

### ARTICLE 1—NAMED INSURED

You, as the Policy holder, and the Mortgagor(s) named in the evidences of insurance shall be the sole insureds under the Policy, notwithstanding the insurable interests of any other person or persons in the properties insured under the Policy. All loss payments under the Policy shall be made directly to You, and you shall apportion and distribute the proceeds thereof to its Mortgagors as their interests may appear. You may not assign your right to receive any portion of the loss payments without our prior written consent and any assignment made without our prior written consent shall be invalid and may be disregarded by us. You, by accepting this Policy, agree to indemnify, defend and hold harmless the Company and our representative(s) from the misapplication of the proceeds of any loss payment in violation of any mortgagor's interests or of your deed of trust, mortgage document or other mortgage Instrument.

### ARTICLE 2—DEFINITIONS

AS USED IN THIS POLICY:

"Act" means the National Flood Insurance Act of 1968, and any acts amendatory thereof.

"Actual Cash Value" means the amount it would take to repair or replace the damaged property on the Date of Loss with material of like kind and quality subject to deduction for deterioration, depreciation or obsolescence, and contractor's overhead and profit. Actual Cash Value applies to valuation of property whether the property has sustained partial or total loss.

"Association" means the group of Unit owners that manages the Condominium Building in which the mortgagor, as the insured Unit owner, maintains a residence.

"Base Flood" means the flood having a one percent chance of being equaled or exceeded in any given year.

"Basement" means any area of the building, including any sunken room or sunken portion of a room, having its floor subgrade (below ground level) on all sides.

"Building" means a walled and roofed structure, other than a gas or liquid storage tank, that is principally above ground and affixed to a permanent site, including a Manufactured (i.e., mobile) Home on a permanent foundation, subject to Article 6, paragraph H, and a Walled and Roofed Building in the course of construction, alteration or repair.

"Cancellation" means the ending of the insurance coverage provided by this Policy prior to the expiration date.

"Coastal High Hazard Area" means an area subject to high velocity waters, including hurricane, wave wash and tsunamis.

"Condominium" means a system of individual ownership of Units in a multi-Unit Building or Buildings or in single-Unit Building as to which each Unit owner in the condominium has an undivided interest in the common areas of the Building(s) and facilities that serve the Building(s).

04A52-MFPO0002-E1103

Page 1

EXHIBIT
A

(PM7MF1F0IAS2MFPO0002E1103)                                                                STK# 00-0000

replacement cost and the amount of loss to each item and, failing to agree, shall submit their differences only, to the umpire. An award in writing, so itemized, of any two appraisers or appraiser and umpire, when filed with us, shall determine the amount of Actual Cash Value and loss or, should this Policy's replacement cost provisions apply, the amount of replacement cost and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by both of us equally. However, each party shall pay its own attorney fees, expert witness fees or the other voluntarily incurred expenses.

M. **Loss Clause:** If we pay you for damage to property sustained in a Flood loss, you are still eligible, during the term of the Evidence of Insurance, to collect for a subsequent loss due to another Flood. Of course, all loss arising out of a single, continuous Flood of long duration shall be adjusted as one Flood loss.

N. **Mortgage Clause:** Loss, if any, under this individual Evidence of Insurance shall be payable to you as interest may appear under all present or future mortgages upon the property described in which the aforesaid may have an interest as mortgagee or trustee, in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee or trustee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this Policy provided that you shall notify us of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of you and, unless permitted by this Policy, it shall be noted thereon and you shall, on demand, pay the premium for such increased hazard for the term of the use thereof, otherwise, this individual Evidence of Insurance shall be null and void.

O. **Conditions for Filing a Lawsuit:** You may not sue us to recover money under this Policy unless you have complied with all the requirements of the Policy. If you do, you must start the suit within 12 months from the date of loss, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss.

P. **Subrogation:** Whenever we make a payment for a loss under this Policy, we are subrogated to your right to recover for that loss from any other person. That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for this loss. We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything that would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back before you may keep any of that money.

Q. **Continuous Lake Flooding:** Where an insured Building has been inundated by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in covered damage to the insured Building equal to or greater than the Building Policy limits plus the deductible or the maximum payable under the Policy for any one Building loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:

   1. To make no further claim under this Policy;
   2. Not to seek renewal of this Policy;

   If the Evidence of Insurance term ends before the insured Building has been flooded continuously for 90 days, the provisions of this paragraph Q. still apply so long as the first Building damage reimbursable under this Policy from the continuous flooding occurred before the end of the Evidence of Insurance's term.


ARTICLE 11—LIBERALIZATION CLAUSE

If, during the period that insurance is in force under this Policy, we have adopted any forms, endorsements, rules or regulations by which this Policy could be extended or broadened, without additional premium charge, by endorsement or substitution of form, then, such extended or broadened insurance shall inure to your benefit as though such endorsement or substitution of form had been made. Any broadening or extension of this Policy to your benefit shall only apply to losses occurring on or after the effective date of the adoption of any forms, endorsements, rules or regulations affecting this Policy.


*[signature]*
SECRETARY

*[signature]*
PRESIDENT

04A52-MFPO0002-E1103                                      Page 13

EXHIBIT
**B**

**INS 00000215**

(TX1F/F296C)                                                                    STK# 00 0000

14. Abandonment. WE have the right to take all, part, or none of the property for which WE have paid YOU, but YOU cannot abandon any property to US without our prior written approval.

15. No Benefit to Bailee. WE will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of the CERTIFICATE.

16. Cancellation:

    a. YOU may cancel the CERTIFICATE at any time by giving written notice to US and the BORROWER stating when, thereafter, such cancellation is to take effect.

    b. The BORROWER may cancel the CERTIFICATE by providing proof of other insurance to YOU that is acceptable to YOU and covers YOUR interest in the RESIDENTIAL PROPERTY. In such case, the effective date of cancellation will be the effective date of the coverage obtained by the BORROWER or the effective date of the CERTIFICATE, whichever is latest.

    c. WE may cancel the CERTIFICATE if YOU have not paid the premium, and WE have given you 10 days' written notice at YOUR last address known to US. We may also cancel the CERTIFICATE if we discover that other insurance acceptable to YOU is in effect to protect YOUR interest in the RESIDENTIAL PROPERTY, even if such other insurance is discovered after a LOSS.

    d. The completion of foreclosure proceedings on RESIDENTIAL PROPERTY by YOU shall terminate coverage under the CERTIFICATE, and notice of foreclosure by YOU to US will be YOUR request for cancellation. Cancellation will be effective on the date the RESIDENTIAL PROPERTY is conveyed to YOU or to a third party via the foreclosure process.

In the event of cancellation of this CERTIFICATE any refund will be computed on a pro-rata basis.

17. Continuing Coverage. The CERTIFICATE/Residential Property Form is written under the terms of the MASTER POLICY that has been issued to YOU. If, upon expiration of the CERTIFICATE, the MASTER POLICY is in force, YOU may request that a new CERTIFICATE be issued to cover the RESIDENTIAL PROPERTY. If YOU fail to request the issuance of a new CERTIFICATE, coverage on the RESIDENTIAL PROPERTY will cease upon the expiration date of the CERTIFICATE.

If, upon expiration of the CERTIFICATE, the MASTER POLICY is no longer in force then all coverage under the CERTIFICATE will end on its expiration date.

18. Changes of Provisions. No change may be made to any provision of the CERTIFICATE/Residential Property Form except by written endorsement issued by US. No oral or other written changes will be valid. OUR request for an appraisal or an examination shall not waive any of our rights.

19. Assignment. There shall be no valid assignment of YOUR rights under the CERTIFICATE/Residential Property Form unless WE have given OUR advance written consent to YOU.

IN WITNESS WHEREOF, the Meridian Insurance Company has caused the CERTIFICATE/Residential Property Form to be signed by its President and Secretary, at Irvine, California and countersigned on the DECLARATIONS PAGE by OUR authorized representative

          SECRETARY                                 PRESIDENT

F296C E1002



EXHIBIT
C

INS 00000216

(TX1FIF298C)                                                                                    STK# 00 0005

    c.  exhibit the damaged RESIDENTIAL PROPERTY to US or OUR representatives as often as WE reasonably require and submit to examination(s) under oath;

    d.  submit to US, within 60 days after we request, YOUR signed, sworn proof of loss which sets forth, to the best of YOUR knowledge and belief:

        (1)  the time and cause of LOSS;

        (2)  YOUR interest and the interest of all others in the RESIDENTIAL PROPERTY and all encumbrances existing thereon;

        (3)  the details of any other insurance that may cover the LOSS;

        (4)  any changes in the title or occupancy of the property during the term of the CERTIFICATE;

        (5)  specifications of the damaged RESIDENTIAL PROPERTY and detailed estimates for repair of the damage;

5.  Loss settlement.  A covered LOSS will be settled as follows:

    a.  OTHER STRUCTURES at ACTUAL CASH VALUE at the time of loss, but not exceeding the amount necessary to repair or replace;

    b.  Installed carpeting, covered domestic equipment or appliances, awnings, outdoor antennas and outdoor equipment, whether or not attached to a structure, at ACTUAL CASH VALUE at the time of loss but not exceeding the necessary cost to repair or replace;

    c.  The one to four-unit dwelling structure included in the RESIDENTIAL PROPERTY at replacement cost without deduction for depreciation if repair or replacement is completed within a reasonable time after the LOSS; at ACTUAL CASH VALUE until such repair or replacement is completed.

6.  Pair or Set.  In settlement of covered damage to a pair or set, WE may elect to;

    a.  Replace or repair any part of the pair or set;

    b.  Pay the difference between the ACTUAL CASH VALUE of the pair or set before and after the loss.

7.  Replacement of Glass.  WE will pay to replace glass with safety glazing materials when required by ordinance or law.

8.  Appraisal.  If YOU and WE fail to agree on the amount of LOSS, either can make a written demand upon the other that the amount of LOSS be determined by appraisal. Within 20 days of such written demand, each party shall select a competent and disinterested appraiser and notify the other of the appraiser selected. The two appraisers shall then select a competent and impartial umpire. If the appraisers do not agree on an umpire within 15 days, then, on the request of YOU or US, such umpire shall be determined by a judge of a court of record in the state where the RESIDENTIAL PROPERTY is located. The appraisers shall then appraise the LOSS. If the appraisers submit a written proof of agreement to US, the amount agreed upon shall prevail. If the appraisers fail to agree they shall submit their differences to the umpire within a reasonable time. Written agreement signed by any two of these three shall be the amount used to settle the dispute. The appraisal award shall be considered binding as to the amount of the LOSS. WE shall pay all the expenses of OUR chosen appraiser and YOU shall pay all the expenses of YOUR chosen appraiser. Any other expenses of the appraisal and the compensation of the umpire shall be paid equally by YOU and US.

9.  Other Insurance.  YOU and WE agree that the CERTIFICATE has been requested by YOU because YOU believe that no other coverage acceptable to YOU is in force to protect YOUR interest in the RESIDENTIAL PROPERTY.

Coverage under the CERTIFICATE will automatically terminate on the effective date and time of any other policy or certificate of insurance acceptable to YOU. WE shall not make any payment for any claim or LOSS if other coverage acceptable to YOU is in force on the DATE OF LOSS.

10.  Subrogation.  WE shall be subrogated to any right(s) YOU have to recovery against any person(s). However, WE shall not exercise this right against the BORROWER. WE may require an assignment of rights of recovery from YOU to the extent that payment is made by US. If an assignment is sought, YOU shall sign and deliver all requested documents, and will otherwise cooperate with US and will do nothing to impair OUR subrogation rights.

11.  Suit against US.  No action may be brought unless there has been compliance with the provisions of the CERTIFICATE, and the action is started within one year after the DATE OF LOSS.

12.  Repair or Replacement Option.  WE may repair or replace any part of the damaged property with equivalent property if WE have given YOU or mailed to YOU at YOUR last known address, written notice of our intention to do so within 30 days after we receive your signed, sworn proof of loss.

13.  Loss Payment.  WE will adjust each LOSS with YOU. WE will pay YOU. Payment for LOSS will be made within 30 days after WE reach agreement with YOU as to the amount of the LOSS, or failing that, the entry of a final judgement, or the filing of an appraisal award with US.

F298C E1092

EXHIBIT
D

INS 00000217

(PN7AMF1R04A09MPPO0001E1103)

STK# 00 00KIII

16. Cancellation:

a. YOU may cancel the insurance provided under the Residential Property Form at any time by giving written notice to US and the BORROWER stating when, thereafter, such cancellation is to take effect.

b. The BORROWER may cancel the insurance provided under the Residential Property Form by providing proof of other insurance to YOU that is acceptable to YOU and which covers YOUR interest in the RESIDENTIAL PROPERTY and OTHER STRUCTURES. In such case, the effective date of cancellation will be the effective date of the insurance obtained by the BORROWER or the effective date of the insurance provided under the Residential Property Form, whichever is later.

c. WE may cancel the insurance provided under the Residential Property Form if YOU have not paid the premium and WE have given you 10 days' written notice at YOUR last address known to US. We may also cancel the insurance provided under the Residential Property Form if we discover that other insurance acceptable to YOU is in effect to protect YOUR interest in the RESIDENTIAL PROPERTY and OTHER STRUCTURES, even if such other insurance is discovered after a LOSS.

d. The completion of foreclosure proceedings on RESIDENTIAL PROPERTY by YOU shall terminate the insurance provided under the Residential Property Form, and notice of foreclosure by YOU to US will be YOUR request for cancellation. Cancellation will be effective on the date the RESIDENTIAL PROPERTY is conveyed to YOU or to a third party via the foreclosure process.

In the event of cancellation of the insurance provided under the Residential Property Form, any refund due will be computed on a pro-rata basis.

17. Expiration of Insurance. The Residential Property Form is written under the terms of the Master Policy that has been issued to YOU. If the Master Policy is in force upon expiration of the insurance provided under the Residential Property Form, YOU may request that new insurance under the Residential Property Form be issued to cover the RESIDENTIAL PROPERTY and OTHER STRUCTURES. If YOU fail to request the issuance of new insurance under the Residential Property Form, insurance on the RESIDENTIAL PROPERTY and OTHER STRUCTURES will cease upon the expiration date of the Residential Property Form as shown on the EVIDENCE OF INSURANCE.

If, upon expiration of the Residential Property Form, the MASTER POLICY is no longer in force, then all insurance under the Residential Property Form and on its expiration date.

18. Changes of Provisions. No change may be made to any provision of the Residential Property Form except by written endorsement issued by US. No other written changes or oral changes will be valid. OUR request for appraisal or examination(s) under oath shall not waive any of our rights.

19. Assignment. There shall be no valid assignment of YOUR rights or the rights of the BORROWER under the Residential Property Form unless WE have given OUR advance written consent to YOU and the BORROWER.

IN WITNESS WHEREOF, Meritplan Insurance Company has caused the Residential Property Form to be signed by its President and Secretary, at Irvine, California.

SECRETARY

PRESIDENT

04A09-MPPO0001-E1103

6


EXHIBIT
E

INS 00000218

[PM7AMF1P04A09MFP00001E1103]

S1K5-00-0000

   c.  The one to four-unit dwelling structure included in the RESIDENTIAL PROPERTY, at replacement cost without deduction for depreciation if repair or replacement has been completed within a reasonable time after LOSS; at ACTUAL CASH VALUE until such repair or replacement is completed.

6.  Pair or Set. In settlement of covered damage to a pair or set, WE may elect to:
   a.  Replace or repair any part of the pair or set;
   b.  Pay the difference between the ACTUAL CASH VALUE of the pair or set before and after the loss.

7.  Replacement of Glass. WE will pay to replace glass with safety glazing materials when required by ordinance or law.

8.  Appraisal. If YOU and WE fail to agree on the amount of LOSS, either can make a written demand upon the other that the amount of LOSS be determined by appraisal. Within 20 days of such written demand, each party shall select a competent and disinterested appraiser and notify the other of the appraiser selected. The two appraisers shall then select a competent and impartial umpire. If the appraisers do not agree on an umpire within 15 days, then, at the request of YOU or US, such umpire shall be selected by a judge of a court of record in the state where the RESIDENTIAL PROPERTY is located. The appraisers shall then appraise the LOSS. If the appraisers submit a written proof of agreement to US, the amount agreed upon shall prevail. If the appraisers fail to agree, they shall submit their differences to the umpire within a reasonable time. Written agreement signed by any two of these three shall be the amount used to settle the dispute. The appraisal award shall be considered binding as to the amount of the LOSS. WE shall pay all the expenses of OUR chosen appraiser, and YOU shall pay all the expenses of YOUR chosen appraiser. Each party shall also pay for its own voluntarily-incurred expenses including, but limited to, attorney fees or expert witness fees. Any other expenses of the appraisal and the compensation of the umpire shall be paid equally by YOU and US.

9.  Other Insurance. YOU and WE agree that the insurance provided under the Residential Property Form has been requested by YOU because YOU believe that no other coverage acceptable to YOU is in force to protect YOUR interest in the RESIDENTIAL PROPERTY.

   insurance under the Residential Property Form will automatically terminate on the effective date and time of any other policy or certificate of insurance acceptable to YOU. WE shall not make any payment for any claim or LOSS if other insurance acceptable to YOU is in force on the DATE OF LOSS.

10.  Subrogation. WE shall be subrogated to any rights YOU have to recovery against any person(s). However, WE shall not exercise this right against the BORROWER. WE may require an assignment of rights of recovery from YOU to the extent that payment is made by US. If an assignment is sought, YOU and the BORROWER shall sign and deliver all related papers, and shall otherwise cooperate with US and do nothing to impair OUR subrogation rights.

11  Suit against US. No action may be brought unless there has been compliance with the provisions of the Residential Property Form, and the action is started within one year after the DATE OF LOSS.

12  Repair or Replacement Option. WE may repair or replace any part of the damaged property with equivalent property if WE have given YOU or mailed to YOU at YOUR last known address, written notice of OUR intention to do so within 30 days after WE receive YOUR signed, sworn proof of loss.

13.  Loss Payment. WE will adjust each LOSS with YOU and will pay YOU. If the amount of LOSS exceeds YOUR insurable interest, WE will pay the BORROWER any residual amount due for the LOSS, not exceeding the applicable Limit of Liability indicated on the EVIDENCE OF INSURANCE. Payment for LOSS will be made within 30 days after WE reach agreement with YOU as to the amount of the LOSS, or failing that, the entry of a final judgment or the filing of an appraisal award with US.

14.  Abandonment. WE may take all, part, or none of the property for which WE have paid YOU or the BORROWER but neither YOU nor the BORROWER can abandon any property to US without our prior written approval.

15.  No Benefit to Bailee. WE will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of the Residential Property Form.

34A09-MFP00001-E1103

5

```
EXHIBIT
F
```

INS 00000219

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 30 days before the date cancellation takes effect

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary by notifying you at least 30 days before the date cancellation takes effect,

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our short rate rules. When we cancel, the return premium will be pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

18. Non-Renewal. We may elect not to renew this policy. We may do so by delivery to you or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice

19. Liberalization Clause. If we adopt any provision which would broaden the coverage under this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

20. Waiver or Change of Policy Provisions. A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

21. Assignment. Assignment of this policy shall not be valid unless we give our written consent.

22. Death. If you die, we insure:

a. your legal representatives but only with respect to the property covered under the policy at the time of death;

b. with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

23. Nuclear Hazard Clause.

a. "Nuclear Hazard" means any nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

c. This policy does not apply to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

   Copyright, Insurance Services Office, Inc., 1983, 1992   DP-3 Ed. 9-93


EXHIBIT
C

INS 00000220

(AIFIP/0001450)                                                                STKX001450

10. **Subrogation.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss in the extent that payment is made by us. If an assignment is sought, the person insured shall sign and deliver all related papers and cooperate with us in any reasonable manner.

11. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss.

12. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn statement of loss, we may repair or replace any part of the property damaged with equivalent property.

13. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy to receive payment. Payment for loss will be made within 30 days after we reach agreement with you, entry of a final judgment, or the filing of an appraisal award with us.

14. **Abandonment of Property.** We need not accept any property abandoned by you.

15. **Mortgage Clause.**

The word "mortgagee" includes trustee.

If a mortgagee is named in this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order or precedence of the mortgages.

If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

   a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. pays any premium due under this policy on demand if you have neglected to pay the premium;

   c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If the policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

If we pay the mortgagee for any loss and deny payment to you:

   a. we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

16. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this policy.

17. **Cancellation.**

   a. You may cancel this policy at any time by returning it to us or by notifying us in writing of the date cancellation is to take effect.

   b. We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice.

      (1) When you have not paid the premium, whether payable to us or to our agent or under any finance or credit plan, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.

DP-3 Ed. 9-83          Copyright, Insurance Services Office, Inc., 1983, 1992          Page 9 of 10


EXHIBIT
H

**INS 00000221**

(PMi05Mi3F4F224P-E001)                                                                                          STKif 00 0000

The Company shall not take any action which prejudices the lien of the Insured on the property, provided, however, that if the Insured shall make any recovery from the Borrower or it's successor in interest after payment, the Company shall be reimbursed for its payment to the Insured on such Borrower's loan to the extent of the excess of such recovery over the Insured's cost in making the recovery.

This insurance shall not be invalidated should the Insured waive in writing its right to subrogate prior to a loss occurring to the property reported on the reporting forms.

8. Reports and Examinations: The Company may at any time call upon the Insured for such reports as it may deem necessary and may inspect the books, records, and accounts of the Insured as they pertain to property insured, and may make inspections at the Insured's office and elsewhere to ascertain whether the terms and provisions of this policy are being observed.

9. Amendments: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy. The terms of this policy may be waived or changed only after written approval of the Company and by an endorsement signed by it's President, Vice President or Secretary and/or countersigned by a duly authorized representative of the Company.

10. Misrepresentation and Fraud: This policy shall be void if the Insured, or any of the Insured, has knowingly or willfully concealed or misrepresented any material fact or circumstances concerning this insurance or its subject, or in case of any fraud, attempted fraud, or false swearing by the Insured, or it's agent, touching any matter relating to this insurance, or the property reported whether before or after a loss, or if the insured, or it's agent shall make any claim which is false or, fraudulent either in amount or otherwise.

11. Assignment of Policy: This policy shall be void if assigned or transferred without the written consent of this Company, whether such transfer be voluntary or involuntary.

12. Appraisal: In case the Insured and the Company shall fail to agree as to the amount of loss, then, on written demand of either, each shall select a competent and disinterested appraiser, and notify the other of the appraiser selected within 20 (twenty) days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 (fifteen) days to agree upon such umpire, then on request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraiser shall then appraise the loss, stating the loss to each item; and, failing to agree shall submit their differences, only to the umpire. An award in writing, so itemized, of any 2 (two) when filed with the Company shall determine the amount of loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

13. Suit Against Company: No suit, action or proceeding for the recovery of any loss under this policy shall be instituted or sustainable in any court of law or equity unless Notice of Loss has been duly filed with respect thereto, and unless such suit, action or proceeding be commenced within 12 (twelve) months after the amount of the loss is finally determined.

14. Conformity to Statute: Terms of this policy which are in conflict with the statutes of the State where this policy is issued are amended to conform to such statutes.

15. Loss Clause: Loss shall not reduce the amount of this policy.

16. Control of Property: This insurance shall not be prejudiced by any act or neglect of any person (other than the Insured), when such act or neglect is not within the control of the Insured.

17. Alterations and Repairs: Permission is granted to make alterations, additions and repairs, and to complete structures in course of construction. In the event of loss, the Insured is permitted to make reasonable repairs, temporary or permanent; provided such repairs are confined solely to the protection of the property from further damage and provided further that the Insured keep an accurate record of such repair expenditures. The cost of any such repairs directly attributable to damage by any peril insured against shall be included in determining the amount of loss. Nothing contained is intended to modify the policy requirements applicable in case loss occurs.

18. Pro Rata Clause: If this policy covers on two or more items of insurance for which specific amounts are shown, the amount of this policy applies to each item in the proportion that the specific amount shown for each item bears to the sum of all items. However, in no event shall the total amount recoverable exceed the limit of liability as shown on the Declaration Page.

4F224P-E001                                                  Page 2

EXHIBIT
2

INS 00000222

(FM50V4D'-4F224P-E601)                                                                                                              STK/'00 0000

The Company shall not take any action which prejudices the lien of the insured on the property, provided, however, that if the insured shall make any recovery from the Borrower or it's successor in interest after payment, the Company shall be reimbursed for its payment to the insured on such Borrower's loan to the extent of the excess of such recovery over the insured's cost in making the recovery.

This insurance shall not be invalidated should the insured waive in writing its right to subrogate prior to a loss occurring to the property reported on the reporting forms.

8.  Reports and Examinations: The Company may at any time call upon the insured for such reports as it may deem necessary and may inspect the books, records, and accounts of the insured as they pertain to property insured, and may make inspections at the insured's office and elsewhere to ascertain whether the terms and provisions of this policy are being observed.

9.  Amendments: Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or stop the Company from asserting any right under the terms of this policy. The terms of this policy may be waived or changed only after written approval of the Company and by an endorsement signed by it's President, Vice President or Secretary and/or countersigned by a duly authorized representative of the Company.

10. Misrepresentation and Fraud: This policy shall be void if the insured, or any of the insured, has knowingly or willfully concealed or misrepresented any material fact or circumstances concerning this insurance or it's subject, or in case of any fraud, attempted fraud, or false swearing by the insured, or it's agent, touching any matter relating to this insurance, or the property reported whether before or after a loss, or if the insured, or it's agent shall make any claim which is false or, fraudulent either in amount or otherwise.

11. Assignment of Policy: This policy shall be void if assigned or transferred without the written consent of this Company, whether such transfer be voluntary or involuntary.

12. Appraisal: In case the insured and the Company shall fail to agree as to the amount of loss, then, on written demand of either, each shall select a competent and disinterested appraiser, and notify the other of the appraiser selected within 20 (twenty) days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for 15 (fifteen) days to agree upon such umpire, then on request of the insured or the Company, such umpire shall be selected by a judge of a court of record in the State in which the property covered is located. The appraiser shall then appraise the loss, stating the loss to each item; and, failing to agree shall submit their differences, only to the umpire. An award in writing, so itemized, of any 2 (two) when filed with the Company shall determine the amount of loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

13. Suit Against Company: No suit, action or proceeding for the recovery of any loss under this policy shall be instituted or sustainable in any court of law or equity unless Notice of Loss has been duly filed with respect thereto, and unless such suit, action or proceeding be commenced within 12 (twelve) months after the amount of the loss is finally determined.

14. Conformity to Statute: Terms of this policy which are in conflict with the statutes of the State where this policy is issued are amended to conform to such statutes.

15. Loss Clause: Loss shall not reduce the amount of this policy.

16. Control of Property: This insurance shall not be prejudiced by any act or neglect of any person (other than the insured), when such act or neglect is not within the control of the insured.

17. Alterations and Repairs: Permission is granted to make alterations, additions and repairs, and to complete structures in course of construction. In the event of loss, the insured is permitted to make reasonable repairs, temporary or permanent; provided such repairs are confined solely to the protection of the property from further damage and provided further that the insured keep an accurate record of such repair expenditures. The cost of any such repairs directly attributable to damage by any peril insured against shall be included in determining the amount of loss. Nothing contained is intended to modify the policy requirements applicable in case loss occurs.

18. Pro Rata Clause: If this policy covers on two or more items of insurance for which specific amounts are shown, the amount of this policy applies to each item in the proportion that the specific amount shown for each item bears to the sum of all items. However, in no event shall the total amount recoverable exceed the limit of liability as shown on the Declaration Page.

4F224P-E601                                                    Page 2

EXHIBIT
J

INS 00000223

## MERITPLAN INSURANCE COMPANY
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

### RESIDENTIAL DWELLING FLOOD INSURANCE FORM

### INSURING AGREEMENT

AGREEMENT OF INSURANCE between Meritplan Insurance Company as Insurer, (hereinafter known as "The Company", "we", "our", and "us") and the Named Insured, (hereinafter known as "Named Insured," "you" and "your").

We insure you against all DIRECT PHYSICAL LOSS BY OR FROM FLOOD to the insured property, based upon:

    1.  You having paid the correct amount of premium; and
    2.  Our reliance on the accuracy of information and statements you have furnished; and
    3.  All terms of this Policy.

On this basis, you are insured up to the lesser of:

    1.  The actual cash value, except as provided in Article 8, not including any antique value, of the property at the time of loss; or
    2.  The amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss.

THEREFORE, in consideration of the foregoing and the mutual promises exchanged herein, we and you agree, as follows:

### ARTICLE 1—NAMED INSURED

You, as the Policy holder, and the Mortgagor(s) named in the evidences of insurance shall be the sole insureds under the Policy, notwithstanding the insurable interests of any other person or persons in the properties insured under the Policy. All loss payments under the Policy shall be made directly to You and You shall apportion and distribute the proceeds thereof to its Mortgagors as their interests may appear. You may not assign your right to receive any portion of the loss payments without our prior written consent and any assignment made without our prior written consent shall be invalid and may be disregarded by us. You, by accepting this Policy, agree to indemnify, defend and hold harmless the Company and our representatives from the misapplication of the proceeds of any loss payment in violation of any mortgagor's interests or of your deed of trust, mortgage document or other mortgage instrument.

### ARTICLE 2—DEFINITIONS

AS USED IN THIS POLICY:

"Act" means the National Flood Insurance Act of 1968, and any acts amendatory thereof.

"Actual Cash Value" means the amount it would take to repair or replace the damaged property on the Date of Loss with material of like kind and quality, subject to deduction for deterioration, depreciation or obsolescence, and contractor's overhead and profit. Actual Cash Value applies to valuation of property whether the property has sustained partial or total loss.

"Association" means the group of Unit owners that manages the Condominium Building in which the mortgagor, as the insured Unit owner, maintains a residence.

"Base Flood" means the flood having a one percent chance of being equaled or exceeded in any given year.

"Basement" means any area of the building, including any sunken room or sunken portion of a room, having its floor subgrade (below ground level) on all sides.

"Building" means a walled and roofed structure, other than a gas or liquid storage tank, that is principally above ground and affixed to a permanent site, including a Manufactured (i.e., mobile) Home on a permanent foundation, subject to Article 8, paragraph H, and a Walled and Roofed Building in the course of construction, alteration or repair.

"Cancellation" means the ending of the insurance coverage provided by this Policy prior the expiration date.

"Coastal High Hazard Area" means an area subject to high velocity waters, including hurricane, wave wash and tsunamis.

"Condominium" means a system of individual ownership of Units in a multi-Unit Building or Buildings or in single-Unit Building as to which each Unit owner in the condominium has an undivided interest in the common areas of the Building(s) and facilities that serve the Building(s).



EXHIBIT
K

K. **Options After a Loss:** Options we may, in our sole discretion, exercise after a loss include the following:

1. Evidence of Loss: If we specifically request it, in writing, you may be required to furnish a complete inventory of the destroyed, damaged and undamaged property, including details as to quantities, costs, Actual Cash Values, amount of loss claimed, and any written plans and specifications for repair of the damaged property which can reasonably be made available to us.

2. Examination Under Oath and Access to the Condominium Association's Articles of Association or Incorporation, Property Insurance Policies, and Other Condominium Documents: We may require you to:
   a. Show us or our designee, the damaged property;
   b. Be examined under oath by us or our designee;
   c. Sign any transcripts of such examinations; and
   d. At such reasonable times and places as we may designate, permit us to examine and make extracts and copies of any Condominium documents, including the Articles of Association or Incorporation, Bylaws, rules and regulations, Declarations of the Condominium, property insurance Policies, and other Condominium documents; and all books of accounts, bills, invoices and vouchers, or certified copies thereof if the originals are lost, pertaining to the damaged property.

3. Options to Repair or Replace: We may take all or any part of the damaged property at the agreed or appraised value and also, repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving you notice of our intention to do so within 30 days after the receipt of the proof of loss herein required under paragraph K. above.

M. **When Loss Payable:** Loss is payable within 60 days after you file proof of loss, (or within 90 days after the insurance adjuster files an adjuster's report signed and sworn to by you in such proof of loss) and ascertainment of the loss is made either by agreement between you and us in writing or by the filing with us an award as provided in paragraph O. below.

If we reject your proof of loss in whole or in part, you may accept such denial of your claim, or exercise its rights under this Policy, or file an amended proof of loss as long as it is filed within 60 days of the date of the loss or any extension of time allowed by us.

N. **Abandonment:** You may not abandon damaged or undamaged insured property to us. However, we may permit you to keep damaged, insured property ("salvage") after a loss and reduce the amount of the loss proceeds payable to you under the Policy by the value of the salvage.

O. **Appraisal:** In case you and we shall fail to agree as to the Actual Cash Value of the amount of loss, then:

1. On the written demand of either us or you, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand.

2. The appraisers shall first select a competent and disinterested umpire, and failing, after 15 days, to agree upon such umpire, then, on the request of your request, such umpire shall be selected by a judge of a court of record in the State in which the insured property is located.

3. The appraisers shall then appraise the loss, stating separately Actual Cash Value and loss amount to each item; and, failing to agree, shall submit only their differences, to the umpire.

4. An itemized, written award of any two appraisers or appraiser and umpire when filed with us shall determine the amount of Actual Cash Value and loss amount.

5. Each appraiser shall be paid by the party selecting him or her, and the expenses of appraisal and umpire shall be paid by both parties equally. Any other expenses incurred by the parties shall be borne by that party.

P. **Suit Against Us:** No suit or action on this Policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this Policy shall have been complied with, and unless commenced within 12 months next after the date of loss. An action on such claim against us must be instituted, without regard to the amount in controversy, in the United States District Court for the district in which the property is situated.

Q. **Subrogation:** In the event of any payment under this Policy, we shall be subrogated to all your rights of recovery against any party, and we may require from you an assignment of all rights of recovery against any party for loss to the extent that payment is made by us. You shall do nothing after loss to prejudice such rights; however, this insurance shall not be invalidated should you waive in writing prior to a loss any or all rights of recovery against any party for loss occurring to the described property.



EXHIBIT

L

(PM05WI3F\4F223P)                                                                    STK# 00 0000

No.

_5965-0002_     NEW
RENEWAL OF NUMBER

# MERITPLAN INSURANCE COMPANY
(Herein Called, "The Company")
3349 Michelson Drive, Suite 200, Irvine, California  92612-8893

Insured's Name and Mailing Address        IndyMac Bank
6900 Beatrice Drive
Kalamazoo, MI 49009-4045

Inception Date:    _08_    _29_    _02_
Mo.     Day     Yr.

Expiration Date:     Until Cancelled
Mo.     Day     Yr.

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.
It is important that the written portions of all policies covering the same property read exactly alike. If they do not, they should be made uniform at once.

INSURANCE IS PROVIDED AGAINST ONLY THOSE PERILS AND FOR ONLY THOSE COVERAGES INDICATED BELOW BY A PREMIUM CHARGE AND AGAINST OTHER PERILS AND FOR OTHER COVERAGES ONLY WHEN ENDORSED HEREON OR ADDED HERETO.

| AMOUNT | RATE | PREPAID TERM PREMIUM DUE AT INCEPTION | ANNUAL PAYMENT DUE UNDER DEF. PREM. PAY. PLAN | PERIL(S) Insured Against and Coverage(s) provided (Insert name of Each) |
|---|---|---|---|---|
| $ | $ | $ | | FIRE AND LIGHTNING |
| [    ] | $ | $ | | EXTENDED COVERAGE |
| | $ | | | |
| | $ | | | |
| | TOTAL(S) | $ | $ | |

$ _____ TOTAL PREMIUM
FOR POLICY TERM UNDER D.P.P.P.

| Item No. | Amount Fire or Fire and Extended Coverage, or Other Peril | Per Cent of Co-Insurance Applicable | DESCRIPTION AND LOCATION OF PROPERTY COVERED Show construction, type of roof and occupancy of building(s) covered or containing the property covered. If occupied as a dwelling state number of families. |
|---|---|---|---|
| | $[ 2,000,000 ] per occurrence | | On Commercial or Residential Property in which the Insured has a mortgage and/or owner interest and which is specifically described in the reporting forms supplied by the Company. |

Misc.—Total Insurance—See form attached—Item 1, $ _____ ; Item 2, $ _____ ; Item 3, $ _____ ; Item 4, $ _____
S.C.—Valuation Clause—See form attached—Item , $ _____ ; Item , $ _____ ; Item , $ _____ ; Item , $ _____
Subject to Form No(s).                          INSERT FORM NUMBER(S) AND EDITION DATE(S)                          attached hereto.

Mortgage Clause: Subject to the provisions of the mortgage clause attached hereto, loss, if any, on building items, shall be payable to:

INSERT NAME(S) OF MORTGAGEE(S) AND MAILING ADDRESS(ES)

Agency at _____

Countersignature Date _____                                                      _____ Agent

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO AND OF the premium above specified, this Company, for the term of years specified above from inception date shown above At 12:01 A.M. (Standard Time) to expiration date shown above At 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the amount(s) above specified, does insure the named Insured above and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor in any event for more than the interest the Insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND BY REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described herein while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

4F223P-E601

EXHIBIT
M

INS 00000226

Concealment, fraud.

Uninsurable and excepted property.

Perils not included.

Other Insurance.

Conditions suspending or restricting insurance.

Other perils or subjects.

Added provisions.

Waiver provisions.

Cancellation of policy.

Mortgage interest and obligations.

STATE EXCEPTIONS

Pro rata liability.

Requirements in case loss occurs.

Appraisal.

Company's options.

Abandonment.

When loss payable.

Suit.

Subrogation.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

SECRETARY                              PRESIDENT

EXHIBIT
N

INS 00000227

(PMGGMF7P\RFPMF01)          STK# 00 0000

### BALBOA INSURANCE COMPANY
3349 Michelson Drive, Suite 200, Irvine, California 92612-8893

#### RESIDENTIAL DWELLING FLOOD INSURANCE

THIS IS TO CERTIFY that the Balboa Life Insurance Company (hereinafter called "The Company", "we", "our" or "us") has issued the contract described above and this Certificate of Insurance (hereinafter called "policy") does not in any way amend, extend, alter or vary the coverage afforded by the contract.

#### INSURING AGREEMENT

AGREEMENT OF INSURANCE between Balboa Life Insurance Company as Insurer, (hereinafter known as "The Company", "we, our", and "us") and the Persons Insured, (hereinafter known as "you" and "your").

We insure you against all DIRECT PHYSICAL LOSS BY OR FROM FLOOD to the insured property, based upon:

1. Your having paid the correct amount of premium; and
2. Our reliance on the accuracy of information and statements you have furnished; and
3. All terms of this policy.

On this basis, you are insured up to the lesser of:

1. The actual cash value, except as provided in Article 8, not including any antique value, of the property at the time of loss; or
2. The amount it would cost to repair or replace the property with materials of like kind and quality within a reasonable time after the loss.

THEREFORE, in consideration of the foregoing and the mutual promises exchanged herein, we and you agree, as follows:

#### ARTICLE 1—PERSONS INSURED

The Mortgagee, as the policy holder, and the Mortgagor(s) named in the evidence of insurance shall be the sole persons insured under the policy, notwithstanding the insurable interests of any other person or persons in the properties insured under the policy. All loss payments under the policy shall be made directly to the Mortgagee, and the Mortgagee shall apportion and distribute the proceeds thereof to its Mortgagors as their interests may appear. The Mortgagee may not assign its right to receive any portion of the loss payments without the prior consent of our representative, and any such assignment shall be invalid and may be disregarded by us. The Mortgagee, by accepting this policy, agrees to indemnify, defend and hold harmless us and our representative(s) from the misapplication of the proceeds of any loss payment in violation of any Mortgagor's interests or of the Mortgagee's deed of trust, mortgage document or other mortgage instrument.

#### ARTICLE 2—DEFINITIONS

AS USED IN THIS POLICY:

"Act" means the National Flood Insurance Act of 1968, and any acts amendatory thereof.

"Actual Cash Value" means the replacement cost of an insured item of property at the time of the loss, less the value of physical depreciation as to the item damaged.

"Association" means the group of unit owners which manages the condominium building in which the Mortgagor, as the insured unit owner, maintains a residence.

"Base Flood" means the flood having a one percent chance of being equaled or exceeded in any given year.

"Basement" means any area of the building, including any sunken room or sunken portion of a room, having its floor subgrade (below ground level) on all sides.

"Building" means a walled and roofed structure, other than a gas or liquid storage tank, that is principally above ground and affixed to a permanent site, including a manufactured (i.e., mobile) home on a permanent foundation, subject to Article 6, paragraph H, and a walled and roofed building in the course of construction, alteration or repair.

"Cancellation" means the ending of the insurance coverage provided by this policy prior to the expiration date.

"Coastal High Hazard Area" means an area subject to high velocity waters, including hurricane wave wash and tsunamis.

"Condominium" means a system of individual ownership of units in a multi-unit building or buildings or in single-unit buildings as to which each unit owner in the condominium has an undivided interest in the common areas of the building(s) and facilities that serve the building(s).

"Condominium Association Policy" means a policy of flood insurance coverage issued to an association pursuant to the Act.

RFPMF01          Page 1



EXHIBIT
0

INS 00000228

(PM65M17FRFPMF01)                                                                                          STK# 00 0000

K. **Abandonment:** You may not abandon damaged or undamaged insured property to us.
However, we may permit you to keep damaged, insured property ("salvage") after a loss and we will reduce the amount of the loss proceeds payable to you under the policy by the value of the salvage.

L. **Appraisal:** If at any time after a loss, we are unable to agree with you as to the actual cash value or, if applicable, replacement cost of the damaged property so as to determine the amount of loss to be paid to you, then, on the written demand of either one of us, each of us shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing, after 15 days, to agree upon such umpire, then, on your request or our request, such umpire shall be selected by a judge of a court of record in the State in which insured property is located. The appraisers shall then appraise the loss, stating separately replacement cost, actual cash value, and loss to each item; and, failing to agree, shall submit their differences only, to the umpire. An award in writing, so itemized, of any two (appraisers or appraiser and umpire) when filed with us shall determine the amount of actual cash value and loss or, should this policy's replacement cost provisions apply, the amount of replacement cost and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by both of us equally.

M. **Loss Clause:** If we pay you for damage to property sustained in a flood loss, you are still eligible, during the term of the property endorsement, to collect for a subsequent loss due to another flood. Of course, all loss arising out of a single, continuous flood of long duration shall be adjusted as one flood loss.

N. **Mortgage Clause:** Loss, if any, under this policy shall be payable to the Mortgagee's interest may appear under all present or future mortgages upon the property described in which the aforesaid may have an interest as mortgagee or trustee, in order of precedence of said mortgages, and this insurance, as to the interest of the mortgagee or trustee only therein, shall not be invalidated by any act or neglect of the mortgagee owner of the described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy provided that the Mortgagee, shall notify us of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said Mortgagee and, unless permitted by this policy, it shall be noted thereon and the Mortgagee shall on demand, pay the premium for such increased hazard for the term of the use thereof otherwise, this policy shall be null and void.

O. **Conditions for Filing a Lawsuit:** You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. If you do sue you must start the suit within 12 months from the date we mailed you notice that we have denied your claim or part of your claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss.

P. **Subrogation:** Whenever we make a payment for a loss under this policy, we are subrogated to your right to recover for that loss from any other person. This means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us, to the extent that we have paid you for the loss. We may require you to acknowledge this transfer in writing. After the loss, you may not give up our right to recover this money or do anything which would prevent us from recovering it. If you make any claim against any person who caused your loss and recover any money, you must pay us back before you may keep any of that money.

Q. **Continuous Lake Flooding:** Where an insured building has been inundated by rising lake waters continuously for 90 days or more and it appears reasonably certain that a continuation of this flooding will result in damage, reimbursable under this policy, to the insured building equal to or greater than the building policy limits plus the deductible or the maximum payable under the policy for any one building loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing:
1. To make no further claim under this policy;
2. Not to seek renewal of this policy.

If the evidence of insurance term ends before the insured building has been flooded continuously for 90 days, the provisions of this paragraph Q. still apply so long as the first building damage reimbursable under this policy from the continuous flooding occurred before the end of the evidence of insurance's term.

### ARTICLE 11—LIBERALIZATION CLAUSE

If during the period that insurance is in force under this policy, we have adopted any forms, endorsements, rules or regulations by which this policy could be extended or broadened, without additional premium charge, by endorsement or substitution of form, then, such extended or broadened insurance shall inure to your benefit as though such endorsement or substitution of form had been made. Any broadening or extension of this policy to your benefit shall only apply to losses occurring on or after the effective date of the adoption of any forms, endorsements, rules or regulations affecting this policy.

RFPMF01                                                      Page 12



EXHIBIT
P

**INS 00000229**

(PM7\NF1P-RFPMF02)                                                                      STK#00:0000

## BALBOA INSURANCE COMPANY
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

### RESIDENTIAL DWELLING FLOOD INSURANCE

### INSURING AGREEMENT

AGREEMENT OF INSURANCE between Balboa Insurance Company as Insurer, (hereinafter known as "The Company", "we", "our" and "us") and the Named Insured, (hereinafter known as "Named Insured", "you" and "your").

We insure you against all DIRECT PHYSICAL LOSS BY OR FROM FLOOD to the insured property, based upon:

1. You having paid the correct amount of premium; and
2. Our reliance on the accuracy of information and statements you have furnished; and
3. All terms of this Policy.

On this basis, you are insured up to the lesser of:

1. The actual cash value, except as provided in Article 6 not including any antique value, of the property at the time of loss; or
2. The amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss

THEREFORE, in consideration of the foregoing and the mutual promises exchanged herein, we and you agree, as follows:

### ARTICLE 1—NAMED INSURED

You as the Policy holder shall be the sole insured under the Policy, notwithstanding the insurable interests of any other person or persons in the properties insured under the Policy. All loss payments under the Policy shall be made directly to you. You may not assign your right to receive any portion of the loss payments without the prior consent of our representative, and any such assignment shall be invalid and may be disregarded by us. You, by accepting this Policy, agree to indemnify, defend and hold harmless the Company and its representative(s) from the misapplication of the proceeds of any loss payment in violation of any mortgagor's interests or of your deed of trust, mortgage dominant or other mortgage instrument

### ARTICLE 2—DEFINITIONS

AS USED IN THIS POLICY:

"Act" means the National Flood Insurance Act of 1968, and any acts amendatory thereof.

"Actual Cash Value" means the replacement cost of an insured item of property at the time of the loss, less the value of physical depreciation as to the item damaged.

"Association" means the group of Unit owners that manages the Condominium Building in which the mortgagor, as the insured Unit owner, maintains a residence.

"Base Flood" means the flood having a one percent chance of being equaled or exceeded in any given year.

"Basement" means any area of the building, including any sunken room or sunken portion of a room, having its floor subgrade (below ground level) on all sides.

"Building" means a walled and roofed structure, other than a gas or liquid storage tank, that is principally above ground and affixed to a permanent site, including a Manufactured (i.e., mobile) Home on a permanent foundation, subject to Article 6, paragraph H, and a Walled and Roofed Building in the course of construction, alteration or repair.

"Cancellation" means the ending of the insurance coverage provided by this Policy prior to the expiration date.

"Coastal High Hazard Area" means an area subject to high velocity waters, including hurricane, wave wash and tsunamis.

"Condominium" means a system of individual ownership of Units in a multi-Unit Building or Buildings or in single-Unit Buildings as to which each Unit owner has an undivided interest in the common areas of the Building(s) and facilities that serve the Building(s).

"Condominium Association Policy" means a Policy of flood insurance coverage issued to an Association pursuant to the Act

01A02-21P02001-E1103                               Page 1



EXHIBIT
Q

INS 00000230

(CPM7MF1F/CFPMF0803)                                                                    STG/4-00 0000

3.  The appraisers shall then appraise the loss, stating separately Actual Cash Value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire.

4.  An award in writing, so itemized, of any two (appraisers or appraiser and umpire) when filed with us shall determine the amount of Actual Cash Value and loss.

5.  Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by both parties equally.

P.  Suit Against Us:  No suit or action on this Policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this Policy shall have been complied with, and unless commenced within 12 months next after the date of mailing of a notice of disallowance or partial disallowance of the claim. An action on such claim against us must be instituted, without regard to the amount in controversy, in the United States District Court for the district in which property shall have been situated.

Q.  Subrogation:  In the event of any payment under this Policy, we shall be subrogated to all your rights of recovery therefore against any party, and we may require from you an assignment of all rights of recovery against any party for loss to the extent that payment therefore is made by us. We shall do nothing after loss to prejudice such rights; however, this insurance shall not be invalidated should you waive in writing prior to a loss any or all rights of recovery against any party for loss occurring to the described property.

R.  Continuous Lake Flooding:  Where the Insured Building has been inundated by rising lake waters continuously for 90 days or more, and it appears reasonably certain that a continuation of this flooding will result in covered damage, to the insured Building equal to or greater than the Building Policy limits plus the deductible(s) or the maximum payable under the Policy for any one Building loss, we will pay you the lesser of these two amounts without waiting for the further damage to occur if you sign a release agreeing to:

1   Make no further claim under this Policy; and

2   Not seek renewal of this Policy; and

3   Not apply for any Flood Insurance under this Program for property at the property location of the insured Building.



If an Evidence of Insurance's term ends before the Insured Building has been flooded continuously for 90 days, the provisions of this paragraph R. will apply so long as the first Building damage reimbursable under this Policy from the continuous flooding occurred before the end of the Evidence of Insurance's term.

CFPMF0803                                    Page 13


EXHIBIT

INS 00000231

(PM7\MF1P\RFPMF02)                                                                                        STK# 60.0000

## BALBOA INSURANCE COMPANY
3349 Michelson Drive, Suite 200, Irvine, CA 92612-8893

### RESIDENTIAL DWELLING FLOOD INSURANCE
### INSURING AGREEMENT

**AGREEMENT OF INSURANCE** between Balboa Insurance Company as insurer, (hereinafter known as "The Company", "we", "our", and "us") and the Named Insured, (hereinafter known as "Named Insured," "you" and "your").

We insure you against all DIRECT PHYSICAL LOSS BY OR FROM FLOOD to the insured property, based upon:

1. You having paid the correct amount of premium; and
2. Our reliance on the accuracy of information and statements you have furnished; and
3. All terms of this Policy.

On this basis, you are insured up to the lesser of:

1. The actual cash value, except as provided in Article 8, not including any antique value, of the property at the time of loss; or
2. The amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss.

THEREFORE, in consideration of the foregoing and the mutual promises exchanged herein, we and you agree, as follows:

### ARTICLE 1—NAMED INSURED

You as the Policy holder shall be the sole insured under the Policy, notwithstanding the insurable interests of any other person or persons in the properties insured under the Policy. All loss payments under the Policy shall be made directly to you. You may not assign your right to receive any portion of the loss payments without the prior consent of our representative, and any such assignment shall be invalid and may be disregarded by us. You, by accepting this Policy, agree to indemnify, defend and hold harmless the Company and our representative(s) from the misapplication of the proceeds of any loss payment in violation of any mortgagor's interest or of your deed of trust, mortgage document or other mortgage instrument.

### ARTICLE 2—DEFINITIONS

AS USED IN THIS POLICY:

"**Act**" means the National Flood Insurance Act of 1968, and any acts amendatory thereof.

"**Actual Cash Value**" means the replacement cost of an insured item of property at the time of the loss, less the value of physical depreciation as to the item damaged.

"**Association**" means the group of Unit owners that manages the Condominium Building in which the mortgagor, as the Insured Unit owner, maintains a residence.

"**Base Flood**" means the flood having a one percent chance of being equaled or exceeded in any given year.

"**Basement**" means any area of the building, including any sunken room or sunken portion of a room, having its floor subgrade (below ground level) on all sides.

"**Building**" means a walled and roofed structure, other than a gas or liquid storage tank, that is principally above ground and affixed to a permanent site, including a Manufactured (i.e., mobile) Home on a permanent foundation, subject to Article 6, paragraph H. and a Walled and Roofed Building in the course of construction, alteration or repair,

"**Cancellation**" means the ending of the insurance coverage provided by this Policy prior to the expiration date.

"**Coastal High Hazard Area**" means an area subject to high velocity waters, including hurricane, wave wash and tsunamis

"**Condominium**" means a system of individual ownership of Units in a multi-Unit Building or Buildings or in single-Unit Buildings as to which each Unit owner in the condominium has an undivided interest in the common areas of the Building(s) and facilities that serve the Building(s).

"**Condominium Association Policy**" means a Policy of Flood insurance coverage issued to an Association pursuant to the Act.

01A52-21PC0031-E1103                                         Page 1



EXHIBIT

S

INS 00000232

(PM7\MF1P\RFPMF02)                                                                                                      STK# CO 0000

includes information about your loss and the damages sustained, which is needed by us in order to adjust your claim;

8.  Any false statements made in the course of presentment of a claim under this Policy may be punishable by fine or imprisonment under the applicable Federal Laws.

9.  Notwithstanding anything contained to the contrary herein, it is an express condition of this Policy that no claim shall be made against us following twelve months after the expiration of this insurance.

I.  Our Options After a Loss: Options we may, in our sole discretion, exercise after a loss include the following:

1.  Evidence of Loss: If we specifically request it, in writing, you may be required to furnish us with a complete inventory of the destroyed, damaged and undamaged property, including details as to quantities, costs, Actual Cash Values or replacement cost (whichever is appropriate), amount of loss claimed, and any written plans and specifications for repair of the damaged property which you can make reasonably available to us.

2.  Examination Under Oath and Access to Insured Property Ownership Records and Condominium Documents: We may require you to:

a.  Show us or our designee, the damaged property, to be examined under oath by our designee and to sign any transcripts of such examinations; and

b.  At such reasonable times and places as we may designate, permit us to examine and make extracts and copies of any policies of property insurance insuring you against loss and the deed establishing your ownership of the insured real property; and the Condominium documents including the Declarations of the Condominium, its Articles of Association or Incorporation, Bylaws, rules and regulations, and other Condominium documents if you are a Unit owner in a Condominium Building; and all books of accounts, bills, invoices and other vouchers, or certified copies thereof if the originals are lost, pertaining to the damaged property.

3.  Options to Replace: We may take all or any part of the damaged property at the agreed or appraised value and, also, repair, rebuild or replace the property destroyed or damaged with other of like kind and quality within a reasonable time, on giving you notice of our intention to do so within 30 days after the receipt of the proof of loss herein required under paragraph H.3. above.

4.  Adjustment Options: We may adjust loss to any insured property of others with the owners of such property or with you for their account. Any such insurance under this Policy shall not inure directly or indirectly to the benefit of any carrier or other bailee for hire.

J.  When Loss Payable: Loss is payable within 60 days after you file your proof of loss (or within 90 days after the insurance adjuster files an adjuster's report signed and sworn to by you in lieu of a proof of loss) and ascertainment of the loss is made either by agreement between us and you expressed in writing or by the filing with us of an award as provided in paragraph L. below.

If we reject your proof of loss in whole or in part, you may accept such denial of your claim, or exercise your rights under this Policy, or file an amended proof of loss as long as it is filed within 60 days of the date of the loss or any extension of time allowed by us.

K.  Abandonment: You may not abandon damaged or undamaged insured property to us.

However, we may permit you to keep damaged, insured property ("salvage") after a loss and we will reduce the amount of the loss proceeds payable to you under the Policy by the value of the salvage.

L.  Appraisal: If at any time after a loss, we are unable to agree with you as to the Actual Cash Value or, if applicable, replacement cost of the damaged property so as to determine the amount of loss to be paid to you, then, on the written demand of either one of us, each of us shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing, after 15 days, to agree upon such umpire, then, on your request or our request, such umpire shall be selected by a judge of a court of record in the State in which insured property is located. The appraisers shall then appraise the loss, stating separately replacement cost, Actual Cash Value, and loss to each item; and, failing to agree, shall submit their differences only, to the umpire. An award in writing, so itemized, of any two (appraisers or appraiser and umpire) when filed with us shall determine the amount of Actual Cash Value and loss or, should this Policy's replacement cost provisions apply, the amount of replacement cost and loss. Each appraiser shall be paid by the party selecting him or her and the expenses of appraisal and umpire shall be paid by both of us equally.

M.  Loss Clause: If we pay you for damage to property sustained in a Flood loss, you are still eligible, during the term of the Evidence of Insurance, to collect for a subsequent loss due to another Flood. Of course, all loss arising out of a single, continuous Flood of long duration shall be adjusted as one Flood loss.

N.  Conditions for Filing a Lawsuit: You may not sue us to recover money under this Policy unless you have complied with all the requirements of the Policy. If you do sue, you must start the suit within 12 months from the date we mailed you notice that we have denied your claim or part of your claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss.

O.  Subrogation: Whenever we make a payment for a loss under this Policy, we are subrogated to your right to recover for that loss from any other person. That means that your right to recover for a loss that was partly or totally

01A52-21PCO001-E1103                                        Page 12

EXHIBIT

T

INS 00000233