Case 2:05-cv-04182-SRD-JCW   Document 16510-10   Filed 11/25/08   Page 1 of 4

79TH CONGRESS }     **SENATE**     { Report
2d Session }                       { No. 1698

---

## TO AMEND THE ACT OF MARCH 10, 1934, ENTITLED "AN ACT TO PROMOTE THE CONSERVATION OF WILDLIFE, FISH, AND GAME

---

JULY 10 (legislative day, JULY 5), 1946.—Ordered to be printed

---

Mr. THOMAS of Oklahoma, from the Committee on Agriculture and Forestry, submitted the following

# REPORT

[To accompany H. R. 6097]

The Committee on Agriculture and Forestry, to whom was referred the bill (H. R. 6097) to amend the act of March 10, 1934, entitled "An act to promote the conservation of wildlife, fish, and game, and for other purposes," having considered same, report thereon with the recommendation that it do pass with the following amendment:

On page 6, line 25, after the word "authorized", strike out the following words "and directed".

The report of the House of Representatives on said bill is hereby submitted as the report of the Senate committee as follows:

[H. Rept. No. 1944, 79th Cong., 2d sess.]

The Committee on Agriculture, to whom was referred the bill (H. R. 6097) to amend the act of March 10, 1934, entitled "An act to promote the conservation of wildlife, fish, and game, and for other purposes," having considered the same, report thereon with a recommendation that it do pass.

**STATEMENT**

The proposed bill would place in effect a much-needed program and facilities for the effectual planning, maintenance, and coordination of wildlife conservation, management, and rehabilitation. Although such a program was contemplated by the act of March 10, 1934 (48 Stat. 401), that legislation has proved to be inadequate in many respects and it now is proposed that it be amended to provide for more adequate procedures. With the ever-increasing pressure on the important national wildlife resources of the country, both because of extensive economic developments that have materially reduced the habitat heretofore available in the production of wildlife and because of the extended interest in the resource as a source of food and recreational enjoyment, it is essential that the plans for wildlife management be intelligently coordinated and given the necessary Federal assistance if this great national resource is to maintain its proper relation to the other resources of the country. Notwithstanding the widespread interest in wildlife of the hunting public, which represents an extremely large

cross section of humanity, no unified effort, except with respect to certain migratory species, has been possible in the past.

A number of public hearings on several similar measures were held by the committee and, as a result of these hearings, the more important features of those measures together with suggested amendments now have been incorporated in the provisions of H. R. 6097. The general purposes of the bill, namely the coordination of wildlife conservation, management, and rehabilitation, have wide support and the committee believes that the proposed bill reflects nearly all, if not all, of the various viewpoints with respect to the manner in which coordination of somewhat diverse interests may be accomplished.

State and Federal conservation interests working independently cannot adequately develop and maintain a resource that has no knowledge of, and gives no heed to, county, State, or even international boundaries. A number of the States already have developed effective organizations and programs for the development and maintenance of the wildlife resources within their boundaries. However, the migrant nature of the resource is such that there is no assurance that these programs will result in continuing benefits even to the States wherein effective management steps already have been taken. Other States have not as yet developed adequate wildlife management programs either because the State legislatures have not seen fit to provide sufficient funds or, in other instances, because proper studies of problems involved have not been made. Again the relationship between wildlife as a resource and other economic developments has not been fully understood or effectively correlated.

From time to time both Federal and State agencies have made many impoundments, diversions, or other uses of waters that needlessly have destroyed the habitat upon which wildlife is dependent. Such destruction has been needless in the sense that these otherwise necessary economic developments could have been carried out, in many instances, without destroying wildlife or its habitat if adequate and reasonable provision had been made for the use of the lands and waters involved in such developments for wildlife conservation as a secondary use. Restoration of the proper balance between uses of the lands and waters made by man and those made by wildlife may involve difficult problems and require considerable thought, but the solving of such problems is not impossible if intelligently handled.

In addition to providing for the necessary authority to cooperate with, and give assistance to, State and private agencies and organizations in all phases of wildlife conservation and protection, the proposed bill also would make available for administration for wildlife conservation purposes by State, public, or private agencies or organizations areas of land and water acquired by the Federal Government primarily for flood control, irrigation, and other uses but, at the same time, adaptable for the secondary use of wildlife conservation. This feature of the bill alone is extremely important in facilitating proper cooperation in the management of the wildlife resource as well as in affording additional opportunity for the protection and management of the resource.

Both in the consideration of the proposed legislation before the committee and in the consideration of other legislation relating to flood control and similar matters, considerable discussion has been had with respect to the part that the States should play in the planning for impoundments, diversions, and other water-control facilities constructed or authorized by the Federal Government insofar as such planning would serve either as a means of mitigating damage to wildlife or as affording an opportunity to utilize the proposed facilities for the benefit of wildlife. Although it is impossible to outline specifically in legislation all of the steps that should be taken in planning flood control, irrigation, and similar projects so as to provide also for the conservation of wildlife resources, it is believed that the second and third paragraphs of the bill establish adequate procedures for the proper coordination of these seemingly diverse interests. As drafted, these two sections require coordination between constructing and operating agencies of both the Federal and State Governments not alone after flood control, irrigation, or impoundment projects have been started but also in connection with the initial planning for such projects. This type of coordination is extremely important from the standpoint of economical planning and construction as well as from the standpoint of effectuating conservation of wildlife. There have been many instances in the past where minor changes in construction plans could have been made for the benefit of wildlife resources without increasing materially the cost of a project if consideration of the possible wildlife interests had been included in the initial planning of such projects. It should be noted, however, that the bill purposely does not provide for the curtailment of flood control, irrigation,

and other impoundment programs for the sole benefit of wildlife resources but rather it provides simply that due consideration be given to the requirements of these resources as well as the requirements of such other resources as may be affected by those programs.

During the course of hearings on the bill a question was raised by the Department of Agriculture as to whether certain provisions of the bill would make any change in the existing jurisdiction of that Department over the administration of wildlife resources within the national forests or other lands under its control. It is the opinion of the committee that the provisions of the bill, and particularly those found in sections 2, 3, and 4, do not alter in any way the primary responsibilities for the administration of lands now vested in any agency of the Government, and the committee wishes to make it clear that other than to require consultation with the States in future water impounding or diversion projects, that it is not the intent of the bill to make any change in the jurisdiction of the Department of Agriculture over such areas or the resources thereof.

Section 5 of the bill authorizes the Secretary of the Interior, through the Fish and Wildlife Service and the Bureau of Mines, to study the effects of domestic sewerage, lime, petroleum, and industrial wastes, erosion silt, and other polluting substances, on wildlife, and to make reports to the Congress concerning such investigations. Stream and water pollution has become in some instances a threat to public health, as well as a menace to aquatic life.

The studies of that problem authorized to be made should furnish the basis for appropriate Federal and State legislation on the subject.

In compliance with clause 2a of rule XIII of the House of Representatives, there is set forth below in black brackets the entire text of the act of March 10, 1934, which the reported bill would supersede:

[[PUBLIC—No. 121—73D CONGRESS]

[[S. 2529]

[AN ACT To promote the conservation of wildlife, fish, and game, and for other purposes

[Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of Agriculture and the Secretary of Commerce are authorized to provide expert assistance to and to cooperate with Federal, State, and other agencies in the rearing, stocking, and increasing the supply of game and fur-bearing animals and fish, in combating diseases, and in developing a Nation-wide program of wild-life conservation and rehabilitation.

[SEC. 2. The Secretary of Agriculture and the Secretary of Commerce are authorized to make such investigations as they may deem necessary to determine the effects of domestic sewage, trade wastes, and other polluting substances on wildlife, with special reference to birds, mammals, fish, and shellfish, and to make reports to the Congress of their investigations with recommendations for remedial measures. Such investigations shall include studies of methods for the recovery of wastes and the collation of data on the progress being made in these fields for the use of Federal, State, municipal, and private agencies.

[SEC. 3. (a) Whenever the Federal Government through the Bureau of Reclamation or otherwise, impounds water for any use, opportunity shall be given to the Bureau of Fisheries and/or the Bureau of Biological Survey to make such uses of the impounded waters for fish-culture stations and migratory-bird resting and resting areas as are not inconsistent with the primary use of the waters and/or the constitutional rights of the States. In the case of any waters heretofore impounded by the United States, through the Bureau of Reclamation or otherwise, the Bureau of Fisheries and/or the Bureau of Biological Survey may consult with the Bureau of Reclamation or other governmental agency controlling the impounded waters, with a view to securing a greater biological use of the waters not inconsistent with their primary use and/or the constitutional rights of the States and make such proper uses thereof as are not inconsistent with the primary use of the waters and/or the constitutional rights of the States.

[(b) Hereafter, whenever any dam is authorized to be constructed, either by the Federal Government itself or by any private agency under Government permit, the Bureau of Fisheries shall be consulted, and before such construction is begun or permit granted, when deemed necessary, due and adequate provision, if economically practicable, shall be made for the migration of fish life from the upper to the lower and from the lower to the upper waters of said dam by means of fish lifts, ladders, or other devices.

Case 2:05-cv-04182-SRD-JCW   Document 16510-10   Filed 11/20/08   Page 4 of 4

[SEC. 4. The Office of Indian Affairs, the Bureau of Fisheries, and the Bureau of Biological Survey are authorized, jointly, to prepare plans for the better protection of the wildlife resources, including fish, migratory waterfowl, and upland game birds, game animals and fur-bearing animals, upon all the Indian reservations and unallotted Indian lands coming under the supervision of the Federal Government. When such plans have been prepared they shall be promulgated by the Secretary of the Interior, the Secretary of Commerce, and the Secretary of Agriculture, who are authorized to make the necessary regulations for enforcement thereof and from time to time to change, alter, or amend such regulations.

[SEC. 5. The Bureau of Biological Survey and the Bureau of Fisheries are hereby authorized to make surveys of the wildlife resources of the public domain or of any lands owned or leased by the Government, to conduct such investigations as may be necessary for the development of a program for the maintenance of an adequate supply of wildlife in these areas, to establish thereon game farms and fish-cultural stations commensurate with the need for replenishing the supply of game and fur-bearing animals and fish, and, in cooperation with the National Park Service, The Forest Service, or other Federal agencies, the State agencies, to coordinate and establish adequate measures for wildlife control on such game farms and fish-cultural stations: *Provided*, That no such game farm shall hereafter be established in any State without the consent of the legislature of that State.

[SEC. 6. In carrying out the provisions of this Act the Federal agencies charged with its enforcement may cooperate with other Federal agencies and with States, counties, municipalities, individuals, and public and private agencies, organizations, and institutions, and may accept donations of lands, funds, and other aids to the development of the program authorized in this Act: *Provided, however*, That no such donations of land shall be accepted without consent of the legislature of the State in which such land may be situated: *Provided*, That no authority is given in this Act for setting up any additional bureau or division in any department or commission, and shall not authorize any additional appropriation for carrying out its purposes.

[Approved, March 10, 1934.]