# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO. 05-4182 "K" (2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: MR-GO, *Robinson* (06-2268) | § | |
| | § | |

## DEFENDANT UNITED STATES' REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

detailed planning for the project consider fully the effects on fish and wildlife resources."[14] *Id.* To allow consideration of the views of the Fish and Wildlife Service and the Louisiana Wildlife and Fisheries Commission, the Corps "deferr[ed] submission of the general design memorandum." MR-GO Design Mem. No. 1-B, Endorsement of Norman R. Moore, Chief Engineering Div., dated Oct. 24, 1958 (Exh. 8A). The views of these two agencies are specifically addressed in Design Memoranda Nos. 1-B, 2, and 1-C, and the Corps took the recommendations of these agencies into account in the design of the project. *See* MRGO Design Mem. No. 1-B (Exh. 8A) ¶¶33, 35; MRGO Design Me. No. 2 (Exh. 15)[15] at 4, 6, 7, 10, 14-15, 22, 24, & app. I, at 9, app. II, at 2, 9, 15, app. III, at 1-9, 11-12; MRGO Design Mem. No. 1-C (Exh. 12)[16] ¶ 25, at 9; *see also id.* app. I, at 2.[17]

---

or did not have before it.

[14]It should be noted that the Wildlife Coordination Act ("WCA") did not require the Corps to "consider fully" the effects of MR-GO on fish and wildlife resources, nor did it require the Corps to "accept reasonable modifications in the alignment of the canal," Exh. W at 1. In fact, the WCA put no binding constraints on the Corps's exercise of discretion. The Act provided only that the Corps "consult with the Fish and Wildlife Service and the head of the agency exercising administration over the wildlife resources of the State wherein the impoundment [of waters] . . . is to be constructed with a view to preventing loss of and damage to wildlife resources . . . ." Pub. L. No. 732, 60 Stat. 1080 (1946) (Exh. N). *A fortiori,* the Act did *not* "require[] that the Army Corps allow the FWS to conduct environmental studies on the effects of the MR-GO." Plt. Mem. 26 n.15. Moreover, the 1958 amendment of the Wildlife Coordination Act, Pub. L. No. 624, 72 Stat. 463, merely "authorized" the Corps to modify the MR-GO project in order to accommodate recommendations of the Fish and Wildlife Service. Nothing in the law required more than the Corps did.

[15]DM02 GMD - MRGO (Sep 1959).pdf, available at https://ipet.wes.army.mil, published to the website on September 18, 2006. Once at the website go to "Pre-Katrina" then to "MRGO - Mississipi River Gulf Outlet" then to "Design Memoranda (DM) and Reconnaissance Report" then to the referenced document.

[16]DM01C - Channels Mile 0 to 36.43 (Bayou La Loutre) Mile 0 to -9.75 (38 ft contour) (Nov 1959), available at https://ipet.wes.army.mil, published to the website on February 15, 2006. Once at the website go to "Pre-Katrina" then to "MRGO - Mississipi River Gulf Outlet" then to "Design Memoranda (DM) and Reconnaissance Report" then to the referenced document.

[17]Long before the project was approved, the Corps was consulting with the State and the U.S. Fish and Wildlife Service. At the August 5, 1943, public hearing held in New Orleans, Governor Jones testified that "appear[ed] on behalf of the State of Louisiana which, in all of its departments and

23

Given the consultations reflected in the design memoranda, the "length[y]" discussion of the River and Harbor Act of 1945 in the Declaration of Nina Froschle, and the citation of it in the plaintiffs' brief are pointless. *See* Plt. Mem. 27, 59. The State of Louisiana was so involved in the planning of the MR-GO that Governor Davis sent a telegram in 1948 advising the Corps's Chief of Engineers that he (the Governor) was "familiar with the provisions of th[e] proposed report [on MR-GO] and thoroughly concur[red] in the views and recommendations expressed therein." H.R. Doc. No. 245 (Exh. 1A). The telegram, which was among the papers submitted to Congress, went on to report that the State's "support . . . for a tidewater canal on the eastern side of the Mississippi River is well shown by Concurrent Resolution No. 18 of the Louisiana Legislature of 1944, in which it was resolved that the Governor of Louisiana be specifically empowered to aid and assist the Federal Government in obtaining and completing such a project." *Id.* at 3.

> 2. DECISIONS ABOUT WHERE TO BUILD MR-GO AND WHETHER TO DESIGN OR ADD FEATURES TO COMBAT STORM SURGE AND EROSION ARE SUSCEPTIBLE TO POLICY ANALYSIS.

The Complaint broadly alleges that the Corps designed, built, operated, and maintained a waterway that posed a potential threat to people living in the vicinity, a threat that the Corps recognized but *chose not to address* (at least, not in the way the plaintiffs say it should have been addressed).[18] The Corps allegedly built the waterway in the wrong place and then did nothing to

---

agencies, urges the approval of the project." MRGO Record of Public Hrg. No. 10. The list of invitees to the hearing included the Fish and Wildlife Service. *See* MRGO Hrg. List of Invitees 1. These documents have been published by the Army Corps of Engineers at https://ipet.wes.army.mil. They are accessed from that URL through the "Pre-Katrina," "MRGO," and "Reports" tabs.

[18] *See* Complaint ¶¶ 2 ("inherent problems" were "neglect[ed]"), 3 (Corps "was well aware of—but did nothing to correct" "faulty design"), 4 ("Despite repeated warnings . . . Corps did nothing to mitigate or prevent . . . calamity"), 5 (effects of MR-GO were "disregard[ed]"), 34 (problems were "ignored entirely"), 49 ("Corps failed to take account of" alleged dangers posed by MR-GO), 50 ("Corps failed to account for" wetlands loss), 52-53 ("Corps knew . . . that proper dredging . . . would ameliorate the 'funneling effect' . . . [but] failed to properly dredge"), 56 (Corps recognized that "'erosion stabilization measures'" were needed), 61 (same), 63-70 ("report . . . predicted vast

24