approximately 3 miles, it would practically eliminate traversing open
water within the marshes thus minimizing the shoaling potential and possible
detrimental effect upon fish and wildlife.

16. <u>Geological data</u>. The Waterways Experiment Station Miscellaneous
Paper No. 3-259, February 1958, and comments made in a letter from the
Director, W.E.S. to the Division Engineer 7 March 1958 transmitting the
report, have been carefully reviewed. All statements in the latter
paper are concurred in except the last sentence in paragraph 10, quoted
as follows: "And finally, judging from the direction of movement of
the North and Freemason Groups of islands during the last 100 years,
the spoil should be placed on the south side of the channel." It cannot
be established with certainty that the change in area and position of
these islands is truly a migration in the sense of indicating the direction
of sediment transport within the Sound. It could be hypothesized that
the changes might occur entirely as a result of infrequent severe storms
or that the combined effects of subsidence and sediment accretion from the
south could produce the changes in area and position of the islands.
Surficial sediment would be transported primarily by wave induced currents
whereas suspended sediments in deeper water would be less sensitive to
wave direction than to the mass circulation pattern of the waterway. It
is believed that available evidence more strongly supports a general
northward dispersion of sediment within the Sound and for that reason
disposal of spoil to the north would more probably minimize channel
shoaling from dredged spoil. Statements contained in paragraphs 13
and 14 of the above-referenced letter have been particularly noted as
being in complete accord with the findings of this report.

17. <u>Dredging methods</u>. Existing depths on any route through
Chandeleur Sound would necessitate the use of shallow draft dredging
equipment over a major portion of the route. It is presumed that con-
ventional pipeline dredging equipment would be the only suitable plant
where the existing depth is less than 12 feet. With such plant it is
believed desirable to dispose of the dredged material as far north of
the channel as may be economically practicable which should be at least
4,000 feet for any large modern dredge. For areas exceeding 12 feet in
depth and for all maintenance dredging in open water, it is recommended
that consideration be given to an overboard-disposal dredge of the
"Sealanes" type. The "Sealanes", a converted T-2 tanker with twin pumps
and drag-heads comparable to those on the "Essayons", has a dredging
capability of about 5,000 cubic yards per hour in mud and discharges
through a pipe boomed 250 feet off the side of the vessel. Productivity
is dependent upon the proportion of material placed in suspension which
is carried away from the channel by transverse currents and it is there-
fore most effective when the dredged material contains little or no sand.
The "Sealanes" has just completed a channel 22 miles long, 34 feet deep
and 400 feet wide through a bar composed almost entirely of silt and clay
at the mouth of the Orinoco River. The original depth over a major
portion of the route averaged 11 feet. The effective production rate of
the dredge cannot be accurately determined since the shoaling rate from
fresh riverborne sediment is not yet known but it was probably in excess

Appendix I

MISSISSIPPI RIVER-GULF OUTLET, LOUISIANA

GENERAL DESIGN MEMORANDUM NO. 2, GENERAL DESIGN

APPENDIX II

VIEWS OF LOCAL INTERESTS

Table of Contents

| Description | Page Number |
|---|---|
| Letter to Board of Commissioners of the Port of New Orleans dated 12/10/56 | A |
| Act of Designation by Governor of Louisiana dated 12/10/56 | B |
| Letter to Governor of Louisiana dated 12/17/56 | C |
| Letter to Board of Commissioners of the Port of New Orleans dated 2/3/59 | 1 |
| Letter from Board of Commissioners of the Port of New Orleans dated 3/5/59 | 2 |
| Letter from New Orleans Steamship Association (Exhibit "A") dated 2/17/59 | 6 |
| Letter from American Merchant Marine Institute, Inc., (Exhibit "B") dated 2/20/59 | 8 |
| Letter from New Orleans Tidewater Development Association, (Exhibit "C") dated 2/16/59 | 9 |
| Letter from St. Bernard Council, Chamber of Commerce of the New Orleans Area, (Exhibit "D") dated 2/19/59 | 10 |
| Letter from St. Bernard Council, Chamber of Commerce of the New Orleans Area, (Exhibit "D") dated 2/16/59 | 11 |
| Letter to Board of Commissioners of the Port of New Orleans dated 3/23/59 | 12 |
| Letter from New Orleans Steamship Association dated 3/5/59 | 13 |
| Letter from New Orleans Steamship Association dated 6/10/59 | 14 |
| Letter from Board of Commissioners of the Port of New Orleans dated 6/10/59 | 16 |
| Letter from New Orleans Tidewater Development Association, dated 5/26/59 | 17 |
| Letter from St. Bernard Council, Chamber of Commerce of the New Orleans Area, dated 5/25/59 | 18 |

STATE OF LOUISIANA

Executive Department

Baton Rouge

Earl K. Long
Governor

December 10, 1956

Board of Commissioners
Port of New Orleans
P. O. Box 46
New Orleans, Louisiana

Gentlemen:

Public Law Number 455, 84th Congress, authorizes construc-
tion by the Corps of Engineers of a deep water navigation channel
designated as the Mississippi River Gulf Outlet from the Mississippi
River at New Orleans in an easterly direction across Orleans and St.
Bernard Parishes to the Gulf of Mexico. The authorization provides
that local interests furnish such lands, servitudes and rights-of-way
necessary for the construction and maintenance of the project and that
certain assurances as set forth in the law be given to the United
States by a local agency.

After due consultation between Mr. Lorris Wimberly, Director
of Public Works, and Dr. Robert W. French, Director of the Port of
New Orleans, it has been decided that it is to the best interest of
all concerned that the Board of Commissioners for the Port of New
Orleans be designated as the state agency to give assurances of local
cooperation to the Federal Government. I have, therefore, designated
your body as the assuring agency and there is enclosed a copy of the
Act of Designation for your information.

I am requesting Mr. Wimberly and his staff to cooperate with
you in coordinating the project with the Corps of Engineers in order
to bring about its completion at the earliest possible date. In lay-
ing out the alignment for the channel, it is requested that full con-
sideration be given to the interest of all concerned and that a location
be selected that will prove most beneficial to Orleans and St. Bernard
Parishes and the State of Louisiana.

Sincerely yours,

/s/ EARL K. LONG

GOVERNOR

EKL:a
cc: U. S. Corps of Engineers
    New Orleans, Louisiana

    State Department of Public Works
    Baton Rouge, Louisiana

A                                        Appendix II

### ACT OF DESIGNATION

WHEREAS, upon the recommendation of the United States Army, Corps of Engineers, the Congress of the United States by Public Law No. 455, 84th Congress, approved March 29, 1956, has authorized the said Corps of Engineers to construct a deep water navigation channel or seaway canal from the Mississippi River at New Orleans, Louisiana to the Gulf of Mexico;

WHEREAS, the said navigation channel to be known as the Mississippi River-Gulf Outlet will pass through parts of the Parishes of Orleans and St. Bernard in which Parishes it will be necessary to secure lands, servitudes and rights-of-way necessary in connection with said construction and subsequent maintenance;

WHEREAS, the Congress of the United States has required that such lands, servitudes and rights-of-way necessary to said construction and maintenance be furnished by local interests and that certain assurances as set out in said law be given by said local interests to the United States:

WHEREAS, the construction of the said Mississippi-River-Gulf Outlet will be of inestimable value to -

        1.  The immediate area through which it passes.

        2.  The State of Louisiana and the City and Port of New Orleans.

        3.  The entire Mississippi Valley.

NOW, THEREFORE, by virtue of the authority vested in me by Section 81, Title 38, Louisiana Revised Statutes of 1950, I do hereby designate the Board of Commissioners of the Port of New Orleans to the extent to which they are lawfully empowered to acquire and furnish to the United States of America as required, such lands, servitudes and rights-of-way as are or may become necessary to the construction and maintenance of the Mississippi River-Gulf Outlet and to furnish to the United States the assurances of local participation required by said Public Law 455, 84th Congress.

THUS DONE AND SIGNED by me at my office in the City of Baton Rouge, Louisiana, on this 10th day of December, 1956.

                      /s/ EARL K. LONG
                      EARL L. LONG, GOVERNOR

I hereby certify that the original of the above and foregoing instrument was filed in the records of my office on this the 11th day of December, 1956.

/s/ Wade O. Martin, Jr.
Wade O. Martin, Jr.
Secretary of State           B                 Appendix II

BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS
(An Agency of the State of Louisiana)
2 Canal Street
P. O. Box 46
New Orleans (6), La.

17 December 1956

The Honorable Earl K. Long
Governor
State of Louisiana
Baton Rouge

My dear Governor

On behalf of the Board of Commissioners of the Port of New Orleans I want to acknowledge receipt today of your letter of December 10, designating this Board as the assuring agency for the Mississippi River-Gulf Outlet project.

The Board is mindful of heavy responsibilities associated with its designation and will do its best to discharge those responsibilities to the interest of all concerned.

You may be sure that the Board will cooperate fully with the Department of Public Works, and with the Corps of Engineers in bringing this important project to completion at the earliest possible date.

Sincerely yours,

EDGAR A. G. BRIGHT
President

cc:
Mr. Lorris Wimberly
State Department of Public Works
Baton Rouge, Louisiana

Colonel William H. Lewis, USA
U.S.Corps of Engineers
New Orleans, La.

C

Appendix II

U. S. ARMY ENGINEER DISTRICT, NEW ORLEANS
CORPS OF ENGINEERS
Foot of Prytania Street
New Orleans 9, Louisiana

LMNGY                                    3 February 1959

Board of Commissioners of
the Port of New Orleans
No. 2 Canal Street
New Orleans, Louisiana

ATTENTION:  Mr. R. W. French, Director

Gentlemen:

Reference is made to your letter dated 3 April 1957 approving
the tentative alignment of the Mississippi River-Gulf Outlet Channel,
generally as indicated by Route "D" on the inclosed map.  This route
has now been approved for construction from the Industrial Canal to
Bayou LaLoutre Crossing.

For some time studies have been under way in Chandeleur Sound
and the Gulf of Mexico with the view of determining the most economic-
al crossing of Chandeleur Sound and the entrance into the Gulf.  Two
alternative routes, "E-6" and "B" are being studied in addition to
Route "D".

Studies indicate that Routes "E-6" and "B" can be constructed
without jetties and will be more economical to maintain.  It is
therefore requested that you review the several alignments of the
project beyond Bayou LaLoutre and furnish the comments of your Board
or any other planning groups or interests.

Since orderly prosecution of the project requires that the
alignment be established at an early date, your prompt action in
this matter will be appreciated.

Sincerely yours,


1 Incl.                                  DUANE W. ACKERSON
  Map, File J-15-21423                   Lt. Col., CE
                                         Acting District Engineer


1                              Appendix II

BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS
(An Agency of the State of Louisiana)
2 Canal Street
Post Office Box 46
New Orleans (6), La.

March 5, 1959

District Engineer
U.S. Army Engineer District, New Orleans
P.O. Box 267
New Orleans, Louisiana.

Dear Sir:

Reference is made to your letter, file No. LMNGY, dated
February 3, 1959, requesting comments of this Board and other
planning groups and interests, concerning the proposed routes
for the Mississippi River-Gulf Outlet from Bayou La Loutre to
the Gulf of Mexico.  Reference is also made to the conference on
this subject in your office on February 25, 1959.

Various aspects of this problem have been considered, in-
cluding those pertaining to acquisition of rights-of-way, navi-
gation, steamship operations, fish and wildlife values, de-
velopment of terminal facilities and industrial sites, as well
as engineering features.  A number of other planning groups
and interests have been consulted including experienced pilots,
steamship organizations, fish and wildlife interests, civic or-
ganizations, and other state agencies.  The facts and opinions
obtained from these sources unanimously and strongly favor the
selection of Route "D".

Route "D" represents decided advantages to navigation, in-
dustrial and other user interests.  It will minimize the damage
to fish and wildlife values.  It will pass through an area
through which the acquisition of rights-of-way unquestionably
will be feasible.  The selection of Route "D" would be consistent
with the recommendations of the Chief of Engineers, as contained
in House Document No. 245, 82d Congress, 1st Session.  Accordingly,
this Board recommends Route "D".

No advantages can be attributed to Route "E-6" by any of the
agencies having cognizance of this project.  To the contrary, the
route presents serious disadvantages which militate strongly
against its selection.  The acquisition of rights-of-way would
be more expensive and difficult.  Over a portion of this route the
ability of this Board to acquire timely the right-of-way is seriously
questioned.  Fish and wildlife values would be damaged to a serious
degree.  Navigation would be penalized by higher costs of operation

Appendix II

2

District Engineer                2                 March 5, 1959

due to greater sailing distances.  This route represents a wide
excursion from the provisions of the project document alignment.
Considering the various factors, this Board objects to the selec-
tion of Route "E-6," as being unsuitable and prejudicial to the
interests of the Port of New Orleans, and the State of Louisiana.

Route "B" offers certain advantages which are outweighed, how-
ever, by its disadvantages.  This route provides the shortest sail-
ing distance and requires the least rights-of-way.  However, it
will cause serious damage to seed oyster beds and will interfere
with extensive oil and gas productions in the Breton Sound area.
Hazards to navigation are created by the lights of drilling rigs.
The presence of these rigs will be confusing to pilots and navi-
gators attempting passage of the channel through the Sound on
Route "B".  Furthermore, hazards to navigation exist in the ap-
proaches to this route.  The selection of Route "B" is not favor-
ably considered.

Additional remarks in extension of the above observations,
together with certain economic factors, are contained in the follow-
ing paragraphs.  Correspondence received by this Board from other
interests is attached for your information and records, being i-
dentified as Exhibits "A" through "D".

Navigation interests strongly favor Route "D" as indicated
in the attached letter from the New Orleans Steamship Association,
dated February 17, 1959 (Exhibit "A") and the letter from the
American Merchant Marine Institute, Inc., dated February 20, 1959,
(Exhibit "B").  In addition to the information contained in these
letters, it is to be noted that the majority of vessels which will
use the Mississippi River-Gulf Outlet in travelling to and from
the Port of New Orleans will pass through either Yucatan Strait or
the Straits of Florida.  Using a focal point in Yucatan Strait the
distances, in nautical miles, to the entrances of each of the pro-
posed routes are:  Route "B" - 497; Route "D" - 506.5; and Route
"E-6" - 548.

It may be noted that the distance to Route "E-6" is 51 miles
greater than to Route "B", and 41.5 miles greater than to Route
"D".  The distance to Route "D" is only 9.5 miles greater than to
Route "B".

Making a similar comparison with reference to a focal point
in the Straits of Florida the distances to the entrances of each
of the proposed routes are:  Route "B" - 464; Route "D" - 468.5;
and Route "E-6" - 500.

Appendix II

3

District Engineer                    3                    March 5, 1959

The distance to Route "E-6" is 31.5 miles greater than
to Route "D" and 36.0 greater than to Route "B". The difference
between the distances to Route "B" and to Route "D" is only 4.5
miles.

Considering the greater sailing distances to Route "E-6"
(average of 44 miles), the average vessel operating costs ($150
per hour), and average vessel speeds (10-12 knots), the cost is
$1,200 per vessel trip greater for Route "E-6" than for either
of Routes "B" or "D". Assuming that 1,500 vessels per year will
use the new channel, when fully developed, the total additional
costs for Route "E-6" are $1,800,000 per year.

Selection of Route "E-6" would materially reduce the bene-
fits of this project attributable to savings in ships' time, and
is considered to be detrimental to the project. Furthermore, the
selection of Route "E-6" would eliminate all savings in distance
over the Mississippi River route, either through South or South-
west Passes. In fact, the distance from the Straits of Florida
through the Mississippi River-Gulf Outlet by Route "E-6" is 17.5
miles longer than through South Pass and three miles longer than
through Southwest Pass. From Yucatan Strait the distance is
50.5 miles longer through Route "E-6" than through South Pass and
43 miles longer than through Southwest Pass. Finally, the ad-
ditional costs in ships' time through Route "E-6" exceed any
savings which may be realized in the annual costs ($250,000 esti-
mated) of jetties in the event they may be eliminated on Route
"E-6".

Considering the real estate aspects of the three routes,
it is obvious that the route having the shortest land section
will involve the least cost in rights-of-way. Route "B" is the
shortest, involving 13 1/2 miles of right-of-way, Route "D" is
next with 18 1/2 miles, and Route "E-6" is the longest involving
23 1/2 miles.

It is estimated that right-of-way in this area will cost
from $12,800 to $32,000 per mile. Notwithstanding the fact that
a large portion of the right-of-way on Route "E-6" involves the
open water of bays and lakes for about one-half of its length,
the costs of right-of-way on Route "E-6" will exceed the costs
on either of the other two routes.

In addition to being longer, Route "E-6" passes through
an area lying in the loop of Bayou La Loutre, east of Bayou St.
Malo, which has been subdivided into multiple ownerships and has
been partially developed. It is estimated that the costs of
right-of-way on Route "E-6" will exceed those costs on Route "D"
by $115,000 and those costs on Route "B" by $179,000. The real

Appendix II

District Engineer                    4                    March 5, 1959

estate costs on Route "D" are estimated to be $64,000 greater
than on Route "B".

In considering the merits of Route "B" versus Route "D",
it is observed that sand bar formations exist both north and
south of Breton Island on Route "B".  These constitute threats
to navigation and will involve extensive maintenance operations
which likewise will create obstructions to navigation.  Other
hazards to navigation are discussed in Exhibit "A" with which
this Board concurs.  It is estimated that channel maintenance
costs on Route "B" will exceed those on Route "D" by $200,000
to $350,000 per year.

It is realized that the requirements for jetties at the
entrances to each of these proposed routes will be the subject
of detailed study by qualified experts.  Navigation would great-
ly benefit if the construction of jetties at the entrance could
be eliminated without creating other hazards or incurring higher
maintenance costs and more frequent dredging.  However, the ad-
visability of locating the entrance of the channel in such a
manner as to preclude the construction of jetties, if subsequent-
ly needed, is seriously questioned.  This Board would favor a
channel entrance with jetties over one without jetties if the
latter required considerably more frequent periodic maintenance
dredging.  This Board would object to the construction of the
channel on a route where the maintenance of the entrance was not
assured either by dredging, by jetties, if needed, or by both.

It is considered that economic as well as other factors
support and fully justify the selection of Route "D".  Converse-
ly, economic and other factors are not favorable to Routes "B"
and "E-6".

This Board favors Route "D" and strongly recommends its
selection in preference to the other two suggested routes.

Very truly yours,


Incl.                                Robert W. French
Exhibits A - D                       Director of the Port


Appendix II

5

NEW ORLEANS STEAMSHIP ASSOCIATION
308 Marine Building
New Orleans 12, La.

February 17, 1959

Mr. William H. Lewis
Planning Coordinator
Board of Commissioners
Port of New Orleans
2 Canal Street
New Orleans 6, La.

Dear Mr. Lewis:

This is in reply to your letter of February 9, 1959, to which
was attached a map, File No. J-15-21423, reflecting three proposed
alternate crossings of Chandeleur Sound and entrances to the Mississippi
River-Gulf Outlet Channel.  Your letter solicited our comments on each
of the three possible Channel alignments.

Your letter and the accompanying map was referred to the Special
Port Captains Committee of this Association and, as you may know, this
Committee is composed exclusively of Master Mariners, all of whom have
had many years of extensive experience at sea in command of all types of
ocean vessels.

In the unanimous opinion of this Committee, Route "D" is by far
the most preferable of the three shown on the aforementioned map.  Pro-
posed Route "D", our Committee feels, has much safer approaches from sea
than the other two.  The anchorage areas at this Route are good beyond
the ten fathom curve, thus providing vessels with more sea room.  In con-
nection with this Route it will be noted that shallow water lies close in
to Curlew Island and it is, in addition, a more direct route to the Gulf
than the other two routes shown on the map.  Moreover, our Committee
believes that less fog should develop along Route "D" than would exist
at the more southerly Route "B" due to the latter's closer proximity to
the river passes and the cold water being discharged into the Gulf from
the Mississippi River.

In connection with Route "E-6", we consider this route to be a
totally unnecessary diversion for the majority of vessels which would be
using the Gulf outlet.  Additionally, route "E-6" has no advantages over
Route "D" that our Committee could determine.

As respects Route "B", the approaches from sea are much more
hazardous than they are at Route "D".  Reference to the map shows clearly
that the change in soundings occurs so quickly -- from 20 fathoms to
EXHIBIT "A"

6                                    Appendix II

Mr. William H. Lewis            2            February 17, 1959

unnavigable depths in about a mile -- that it would make this route very dangerous to navigate during periods of poor visibility.  The concensus of opinion of our Committee was that Route "D", being located further away from both Pass a Loutre and North Pass than Route "B", would be much better from a navigational standpoint.  In this connection it will be noted that the soundings to Route "D" are much better than those to Route "B" in that they gradually change from 40 fathoms to 13 fathoms over a distance of about 20 miles.  This fact would give the navigator a much better fix by soundings, as the bottom contours are more clearly demarked than they are along the approaches to Route "B".

Another point which our Committee felt should be considered in connection with discussion of the alternate routes is pilot services, and it is our Committee's feeling that a pilot boat would enjoy just about as much sheltered water at Route "D" as at either of the other two routes, "B" and "E-6".

Due to the request for a rather prompt submission of our comments, we have not had the opportunity of submitting the foregoing thoughts and recommendations of our Special Port Captains Committee to our full Association for approval.  However, it is our feeling that undoubtedly these recommendations will receive such approval when they are presented to the Association at the next monthly meeting, March 4, 1959.  You may be sure we will let you know the outcome promptly after March 4.

We trust that the foregoing will be of some assistance to you and the Board in reviewing these possible alignments of the Mississippi River - Gulf Outlet beyond Bayou LaLoutre.

Yours very truly,

McVFS/lp                                    McVey F. Ward
                                            Executive Secretary

cc:  Mr. Frank G. Strachan
     Capt. C. E. Biggers
     Mr. O. B. Cloudman

EXHIBIT "A"

Appendix II

7

AMERICAN MERCHANT MARINE INSTITUTE, INC.
11 Broadway - New York 4


<u>Air Mail</u>                                            February 20, 1959

Mr. William H. Lewis
Planning Coordinator
Board of Commissioners
Port of New Orleans
2 Canal Street
New Orleans 6, La.

Dear Mr. Lewis:

> <u>MISSISSIPPI RIVER - GULF OUTLET CHANNEL - ROUTE TO</u>
> <u>GULF OF MEXICO ACROSS CHANDELEUR SOUND</u>

Thank you for your letter of February 11 with accompanying map re-
questing our views as to which of the three alternative routes shown
on the map should be recommended by the Board of Commissioners of
the Port of New Orleans to the District Engineer, New Orleans Dis-
trict, Corps of Engineers, U. S. Army, for selection as the best
route for the Mississippi River - Gulf Outlet Channel - from Bayou
La Loutre through Chandeleur Sound to the Gulf of Mexico.

As the result of consultation with our member companies which plan
to operate ocean going vessels through the Mississippi River -
Gulf Outlet Channel from New Orleans to the Gulf of Mexico when
it is completed, the Institute strongly urges that route "D" be
recommended for selection by the District Engineer.  The reasons
in support of route "D" are adequately set forth in the letter
dated February 17 addressed to you by Mr. McVey F. Ward, Executive
Secretary of the New Orleans Steamship Association, upon the recom-
mendation of the special Port Captain's Committee of that associa-
tion.

                                        Sincerely yours,



OLD/eb                                  O. Lincoln Cone
                                        Assistant Secretary
c:  Mr. McVey F. Ward, Executive Secretary, NOSA
    Captain C. E. Biggers, Lykes Steamship Co., Inc.
    Mr. H. X. Kelly, President, Mississippi Shipping Co.
    Gen. J. H. Stratton, TAMS

                                        EXHIBIT "B"

                                        Appendix II

NEW ORLEANS TIDEWATER DEVELOPMENT ASSN.
P. O. Box 340
New Orleans, Louisiana

February 16, 1959

Colonel William H. Lewis
Planning Coordinator
Board of Commissioners of the Port of New Orleans
P. O. Box 46
New Orleans (6), Louisiana

Dear Colonel Lewis:

Your letter of February 9, 1959, together with the map attached thereto, dealing with possible routes of the Mississippi River-Gulf Outlet generally east of Bayou La Loutre has received our interested attention.

In our opinion, route "B" should be discarded from **further** consideration. It is probably the most objectionable to Fish and Wild Life interests. Its distance through open water in the Sound is the greatest and its entrance to the Gulf of Mexico north of Breton Island makes it the least desirable. There is much to be said in favor of route "E-6". That route entering the Gulf at deep water might obviate the necessity for jetties. In my opinion, the decision between route "D" and route "E-6" is one to be determined by engineering analyses, and also the consideration of Fish and Wild Life interests.

Sincerely,

George S. Dinwiddie
Acting President

EXHIBIT "C"

Appendix II

ST. BERNARD COUNCIL
CHAMBER OF COMMERCE OF THE NEW ORLEANS AREA
315 Camp Street - P. O. Box 1460 - New Orleans 5, La.

February 19, 1959

Board of Commissioners of the Port of New Orleans
# 2 Canal Street
New Orleans 6, Louisiana

Gentlemen:

    Attached hereto is a copy of the third interim report of the
Subcommittee of the Executive Committee of the St. Bernard Council, on
the Mississippi River-Gulf Outlet.  Since it deals with the alternate
routes of the Gulf Outlet from Bayou La Loutre to the Gulf it may be
of interest to you in connection with your conference with the U.S.
District Engineer as outlined in your letter dated February 9, 1959,
to Mr. A. N. Horcasitas, Jr.

    There has not been sufficient time for the Executive Committee
of the Council to act on this report and it therefore is released to
you subject to the consideration of the said committee.

                          Sincerely,


                          Glenn Weekley
                          Chairman
                          ST. BERNARD COUNCIL

Encl.
cc:  Mr. Andres Horcasitas, Manager
     Waterways Development Committee
     Chamber of Commerce of the New Orleans Area

EXHIBIT "D"

Appendix II

ST. BERNARD COUNCIL
CHAMBER OF COMMERCE OF THE NEW ORLEANS AREA
315 Camp Street - P. O. Box 1460 - New Orleans 5, La.

February 16, 1959

Mr. Glenn Weekley, Chairman,
and Members, Executive Committee,
ST. BERNARD COUNCIL
Chamber of Commerce of
the New Orleans Area

Gentlemen:

### THIRD INTERIM REPORT OF THE SUBCOMMITTEE

Re:  Mississippi River-Gulf Outlet
(Routes from Bayou La Loutre to Gulf)

There has been brought to the attention of the Subcommittee on Waterways Development a copy of a letter from the Board of Commissioners of the Port of New Orleans to Mr. A.N. Horcasitas, Jr., Manager of the Waterways Development Committee of the Chamber, and a map prepared by the U. S. Army District Engineer showing three alternative routes for the Gulf Outlet from Bayou La Loutre to the Gulf.  The letter states that the Board is acting as the State coordinating agency of comments received from interested parties and requests his comments in anticipation of its conference with the District Engineer shortly after February 18, 1959.  While comments of the St. Bernard Council are not requested in the letter, we feel that a short observation is justified.

From an inspection of the map on which the three alternative routes are projected, it would appear that route D is to be preferred because the route crosses more continuous land area than the others, thereby affording more land for possible industrial development.  We are not equipped to review the desirability of this route from an engineering standpoint as to problems of construction and of maintenance, nor from the standpoint of its relationship to trade routes.

Sincerely,

Edwin M. Roy
C h a i r m a n

EXHIBIT "D"

Appendix II

11

U. S. ARMY ENGINEER DISTRICT, NEW ORLEANS
CORPS OF ENGINEERS
Foot of Prytania Street
New Orleans 9, Louisiana

LMNGY                                                      23 March 1959

Board of Commissioners of
the Port of New Orleans
No. 2 Canal Street
New Orleans 6, Louisiana

ATTENTION:  Dr. R.W. French, Port Director

Gentlemen:

    Receipt is acknowledged of your letter dated 5 March 1959
relative to your preference of Route "D" over Routes "B" and "E-6"
for the alignment of the Mississippi River-Gulf Outlet.

    It is understood that your preference was based upon your
thorough investigation of your interests as the agency designated
to furnish "local assurances" as well as those of others interested
in the project.

    Your report and recommendations are appreciated and will be
given due consideration in the selection of the project alignment.

Sincerely yours,

G. M. COOKSON
Colonel, CE
District Engineer