

EXHIBIT
5.6, #2

# REPORT TO THE POLICE JURY OF THE PARISH OF ST. BERNARD

## OF THE

## TIDEWATER CHANNEL ADVISORY COMMITTEE

By Resolution of the Police Jury of the Parish of St. Bernard adopted on September 3, 1957, the President of the Police Jury was authorized to appoint to members of the Tidewater Channel Advisory Committee to consider the pontentialities of the "Mississippi River-Gulf Outlet" for the benefit of the Parish of St. Bernard.

The question of a tidewater connection between the Port of New Orleans and the Gulf of Mexico has been one that has been discussed, actively, in excess of the past fifteen years. As early as August 5, 1943, the Corps of Engineer, U. S. Army held a hearing on the project in New Orleans, Louisiana. From that date, to the present time, there has been considerable publicity to the project but concrete facts have been hard to come by. The particulars surrounding the project have not heretofore been made known to the local authorities in order that an analysis of the project could be made to determine the full effects thereof on the Parish of St. Bernard, its peoples, its lands and its industries.

With this in mind, the Tidewater Channel Advisory Committee, after its appointment, met with the representatives of the Corps of Engineer, U. S. Army; Hon. F. Edward Hebert, U. S. Congressman, First Congressional District of Louisiana; the Board of Commissioners of the Port of New Orleans; and the Louisiana Wildlife and Fisheries Commission. The Advisory Committee was able to determine that the United States Government will provide the funds and excavate the proposed channel and construct a bridge across the channel at Paris Road.



It was further determined that the route of the proposed channel had been fixed from the intersection of the Inner Harbor Navigational Canal (the Industrial Canal) and the Inter-coastal Waterway Canal to Bayou La Loutre in accordance with the Corps of Engineers plan File No. J-I5-20835/I dated June 1957 annexed hereto.

Aside from the excavation of the channel and the bridge at Paris Road, the remainder of the works connected with the project must be furnished by "Local Interests", including harbor facilities and rights-of-ways. This, in itself, may present a considerable burden on the Parish of St. Bernard as will be shown later herein.

The Advisory Committee has considered the various effects of the channel on the Parish and has broken them down into the following catagories, which will be discussed herein:

A. Exposure to Tidal Waters

The upper reaches of the Parish heretofore have been protected from excessive tidal waters due to the slowing down action of the outer marsh areas and the circuitous routes of the various natural streams. Before the full tides can reach the upper areas, the tides change or adverse winds will hold the waters back. However, with the existence of a channel 40 feet deep traversing the marsh lands from the Gulf to the upper Parish, the full fluctuation of the tide will be felt throughout the Parish. The tidal action will have adverse effects on the entire marsh area with consequent crosive action and the intrusion of high saline content water into areas normally fresh or only slightly blackish.

Prod. # MRGOX5729


-3-

During times of hurricane conditions, the existence of the channel will be an enormous danger to the heavily populated areas of the Parish due to the rapidity of the rising waters reaching the protected areas in full force through the avenue of this proposed channel. This danger is one that cannot be discounted. No matter how small a flood may be, or how small the area to which it is confined, to the families that have water in their houses, it is a major catastrophe. The City of New Orleans through the Board of Commissioners of the Orleans Levee District has recognized this danger and to combat it is constructing the required levees with the spoil from the channel to protect the lands within the Parish of Orleans. There has been no provision for the erection of similar levees in the Parish of St. Bernard to prevent inundation. The estimated costs of the protection levees in Orleans Parish runs into many hundreds of thousands of dollars and the levees extend for less than five miles on only one side of the Channel. The costs of such protection of St. Bernard Parish, with its 67 miles of channel, would reach astronomical figures. The Board of Commissioners of the Lake Borgne Basin Levee District is financially unable to undertake any type of program to adequately provide similar protection.

The problems of salt water intrusion throughout the marsh land area are mainifold. High saline content water is determintal to the existing natural vegetation that is depended on by the wild fowl, fish and fur-bearers in the area. The loss of this vegetation will cause great monetary loss to the Parish and the recreation to the vast multitude of sportsmen who use the area.

Prod. # MRGOX5730



-4-

B. <u>Damages to Property</u>

The proposed routes of the channel, whichever one may be finally selected, will effectively cut the Parish in two. That part of the Parish EAST of the channel comprises an area of approximately 300 square miles or 190,000 acres, which, for all purposes, will become an isolated island, inaccessible from the mainland except by boat. The value of these lands will fail to nothing due to inaccessibility and the communities in the area consequently will become ghost settlemtns, the inhabitants, who are now WITHIN minutes from metropolitan areas, will be forced to abandon their homes because of the channel without envisioned compensation for such losses.

It has been pointed out as distinct possibility that the existence of the proposed channel to the rear of this vast, and valuable, marsh area will within the forseeable future cause the march lands to disappear due to subsidence. The loss of this land will be an inestimable loss to industry, the property owners and to the Parish in ad volorem taxes and to the persons who now depend on this area for their livelihood.

C. <u>Damages to Wildlife.</u>

It is estimated that the marshlands have annually produced from $10 to $13 million of fish and wildlife resources. Even in relation to the estimated cost of $95 million for the channel, the value of these fish and wildlife resources is great enough to require serious consideration by the authorities charged with the planning of the channel project to provide adequate conservation measures to protect the continued growth of such industries. The nearness of these marshlands to metropolitan New Orleans, and the abundant wildlife in the area, permits as estimated 750,000 to 1,000,000 sport fishing trips and 110,000 hunting trips annually. The monetary value has been calculated but the recreation-al value thereof is inestimable.

Prod. # MRGOX5731



-5-

Under date of May 29, 1957, the Louisiana Wildlife and Fisheries Commission issued a statement relative to the effects of the proposed channel on wild life, a copy of which is annexed hereto. The Commission among other things, pointed out that the channel will adversely affect 9 per cent of the high quality waterfowl area of Louisiana. The Commission mentions the anticipated loss to the oyster, fishing, shrimping and fur industries due to the proposed channel's location and its consequent effects by salf water intrusion.

On March 24, 1958, the Louisiana Wildlife and Fisheries Commission wrote to the Advisory Committee, supplementing its report of May 29, 1957, reiterating its position on the proposed channel as to the eminent dangers to wildlife in the area, specifically pointing out the problems of 1. disruption of occupations, 2. spoil disposition, 3. natural waterways crossing the channel, 4. salt water intrusion in the marshlands and 5. recreational activity. A copy of this letter is annexed hereto and made a part of this report. It is the earnest request of the Wildlife and Fisheries Commission that a biological and hydrographical study be made to determine the answers to these problems.

The value of wildlife, both commercial and sport, being one of the greatest assets of the Parish of St. Bernard and the State of Louisiana that is irreplacable, all means and methods should be taken to minimize these anticipated damages, for the further reason that the vast majority of the residents of the lower parts of the Parish derive their livelihood from the marshlands. The proposed channel may well work an extreme economic hardship on these residents that may never be overcome.

D. Status of Existing Navigable Waterways

The marshland area of the Parish is traversed by numerous navigable waterways that will be necessity be crossed by the

Prod. # MRGOX5732



PROPOSED CHANNEL. THE STATUS OF THESE NAVIGABLE WATERWAYS IN RELATION TO THE CHANNEL IS AT THIS TIME UNDETERMINED. IF THE OUTLETS OF THESE WATERWAYS ARE PLUGGED AT THE CHANNEL THE EXISTING INDUSTRIES ON THE WATERWAYS WILL BE EFFECTIVELY FORECLOSED. IF THEY ARE PERMITTED TO REMAIN OPEN, THE RAPID FLOW OF TIDAL WATERS INTO THE EXISTING WATERWAYS WILL ACTIVELY INCREASE THE FLOOD DANGERS AS MENTIONED HEREINABOVE AND ACCENTUATE THE PROBLEMS OF SALT WATER INTRUSION.

E. MISSISSIPPI RIVER-GULF OUTLET CONNECTION TO THE MISSISSIPPI RIVER

THE CONNECTION OF THE CHANNEL TO THE MISSISSIPPI RIVER IS AT THE PRESENT TIME PROPOSED. HOWEVER, THE ADVISORY COMMITTEE FELT THAT IT SHOULD CONSIDER THE CONNECTION ALONG WITH THE CHANNEL. THE PROPOSED CHANNEL WILL CUT THE PARISH IN TWO AND IF THE CONNECTION TO THE RIVER IS INSTALLED THE PARISH WILL BE QUARTERED. IT IS PROPOSED THAT THE CONNECTION LINK ENTER THE MISSISSIPPI RIVER IN THE VICINITY OF MERAUX, LOUISIANA. SHOULD THIS HAPPEN, IT WILL BE NECESSARY TO HAVE DUPLICATE FACILITIES FOR DRAINAGE, SEWERAGE AND OTHER UTILITIES. THE CAPITAL COSTS OF SUCH FACILITIES CAN READILY BE SEEN. THE EXPENSE OF PROVIDING SUCH FACILITIES WILL HAVE TO BE BORNE ENTIRELY BY THE PARISH OF ST. BERNARD, THE PROPOSED CHANNEL COSTS MAKING NO SUCH PROVISION FOR THIS PURELY LOCAL PROBLEMS. COSTS OF SUCH DUPLICATE FACILITIES, CAN BE SAFELY ESTIMATED, WILL RETARD, OR HALT, THE GROWTH OF THE AREA. THE PLACEMENT OF THE CONNECTION AT MERAUX, LOUISIANA, WILL BISECT, AND RENDER OBSOLETE, EXISTING UTILITY SYSTEMS. FOR THIS REASON IT IS SUGGESTED THAT IF THE RIVER CONNECTION IS INSTALLED, IT BE LOCATED BELOW VIOLET, LOUISIANA, AS THESE FACILITIES HAVE NOT AS YET BEEN INSTALLED IN THAT VICINITY.

Prod. # MRGOX5733



The location of a River connection will further burden the Parish of St. Bernard with traffic problems due to limited access across the River connection from one side to the other that will be further accentuated during times of emergency and/or disaster.

The area that will lie below the River connection will be greatly depreciated in value due to its inaccessibility, and future growth will be stymied. An example of this construction until recent times. St. Bernard Parish has become attractive to industry in recent years due to the saturation of plants above New Orleans and a favorable tax structure in this Parish. Additional real property tax burdens will have a detrimental affect on new industry location in the Parish. Further, the problems of one route accessibility are pointed up clearly by the recent Ingram Oil & Refining Company fire that completely closed off the Parish below its plant. A similar situation occured many years ago when the American Sugar Refinery suffered extensive fire damages because fire fighting equipment was held up awhile the Industrial Canal Bridge was open. Industry quickly recognizes this problems and the River connection to the channel will present the same situation with its consequent retarding effects on industrial as well as residental growth of the lands below the connection.

The proposed River connection will effectively preclude the Parish of St. Bernard of revenue from dockage and wharfage facilities inasmuch as the U. S. Government will require absolute title to a tract of land 2000 feet wide from the Mississippi River by a depth of 7000 feet, which depth reaches the marshlands beyond the highlands along the River.

The foregoing features of the proposed channel must be considered along with the benefits, it any, that may be realized the the Parish of St. Bernard as a result of the channel.

Prod. # MRGOX5734

-8-

The major benefit to the Parish of St. Bernard from the construction of the channel would be the possible industrilization of the area due to the proximity of the tide water, deep water dockage. However, the channel route across St. Bernard Parish will run exclusively in marsh lands with the only road leading therto being the present Shell Beach Highway where it will "Dead End" at the channel. Hence, it is difficult to visualize the immediate material value of the channel to the Parish. The industrilization that will occur as a result of the channel project will be located wholly within the Parish of Orleans and the anticipated revenues therefrom will be realized by that Parish and not St. Bernard Parish.

In considering the foregoing, it is the conclusion of the Advisory Committee that:

1. The Police Jury of the Parish of St. Bernard oppose the Mississippi River-Gulf Outlet under the present planning program.

2. That the Louisiana Department of Public Works undertake a comprehensive survey to study the overall problems with corrective meausres for the proposed Mississippi River-Gulf Outlet, together with the proposed River connection, taking into account:

    A. Dangers of Exposure to Tidal Waters; constuction of protection levees;

    B. Damages to Property on the East side of the Channel;

    C. Damages to marshlands and wildlife with full correlation of surveys by Louisiana Wildlife and Fisheries Commission and U. S. Fish and Wildlife Service;

    D. Effective possible use of existing deep water River frontage in the Parish of St. Bernard in lieu of proposed channel and River connection.



-9-

It is felt that the Louisiana Department of Public Works should undertake the above survey because of the costs involved therein and due to the fact that little present benefits can be anticipated by the Parish of St. Bernard whereas the disadvantages envisioned are of statewide proportion. Further, it is felt that the Parish of St. Bernard is about to be placed in the inevitable position of again being sacrificed for the benefit of the City of New Orleans as occured in the breaking of the levees at Caernavron and the digging of the Industrial Canal. For the past 30 years the Board of Commissioners of the Port of New Orleans have not seen fit to erect one new dock in the Parish of St. Bernard, within its jurisdication, but now, in order to locate new docks, within the Parish of Orleans, the Parish of St. Bernard is about to be quartered and to be eventually drawn into financial indebtedness of enormous proportion to provide facilities for its people without reciprocal gain. There are many problems that could be rectified long before additional burdens are imposed on the Parish. The Industrial Canal traffic bottleneck could be alleviated with a tunnel at St. Claude Avenue and major access roads leading from the Claiborne Avenue Industrial Canal Bridge into the Parish.

It is felt by the Advisory Committee that a comprehensive survey of the above proportion, studying all facets of the problems involved, will insure to the benefit of the people of the State of Louisiana as well as the Parish of St. Bernard and that the natural resources and assets of the area may be developed to their full potential.

Respectfully submitted,

TIDEWATER CHANNEL ADVISORY COMMITTEE

By:_____
J. M. Meraux, Chairman

Prod. # MRGOX5736