4/11/2005

## Mississippi River-Gulf Outlet
### PM-R Proposal for Gaining National Environmental Policy Act Compliance for the Operation and Maintenance Program

Introduction

The operations and maintenance (O&M) program for the Mississippi River-Gulf Outlet involves dredging of the channel and shoreline protection features. Hydraulic cutterhead dredges are normally used to remove shoal material from the inland, jetty, and bay reaches of the channel, with material used beneficially to restore wetlands or existing CDFs. Environmental compliance has been obtained for the use of hopper dredges in the jetty and bay reaches of the channel, as long as the material is placed within the authorized channel (sidecasted), but it is not known if this method has been used. Also, environmental compliance has been obtained for the use of hopper dredges in the inland reach as long as the dredged material is disposed in existing disposal sites. This method of dredging and disposal has apparently not been used. Hopper dredges are normally used to remove material from the bar channel, with disposal of material into the approved ocean dumping site. Occasionally, cutterhead dredges are used in part of the bar channel and material is pumped either onto or adjacent to Breton Island.

Shoreline protection features include rock dikes and articulated concrete mattress (ACM). Rock dikes have been constructed along considerable portions of the north bank of the channel. ACM has been placed along the south channel bank on two occasions to demonstrate the ability of the existing plant to place the ACM and also to evaluate the effectiveness of the ACM. In 2003, several adjacent test sections of ACM were placed upstream from Bayou LaLoutre utilizing some of the plant associated with the Mississippi River Mat Sinking Unit, but not the main unit. In 2004, another test section was placed immediately upstream from Bayou LaLoutre, duplicating the best performing configuration from the previous year. The main Mat Sinking Unit was used for this demonstration.

Status of National Environmental Policy Act (NEPA) Compliance

NEPA compliance is complete for all existing O&M activities. However, the dredged material disposal sites and methods that have been used along the inland reach since the mid-1980s bear little resemblance to those described in the environmental impact statement (EIS) prepared in 1976 for the O&M of the MR-GO. All of the changes that have occurred in the dredging and disposal plan since preparation of the original EIS have been addressed in environmental assessments (EAs) and associated findings of no significant impact (FONSIs). The main reason why a supplemental EIS has not been prepared is that each change has been discrete and not associated with other changes. In other words, each change was planned and executed separately over time, and while each change was being evaluated through preparation of an EA, there was no knowledge of subsequent changes that would be implemented afterward. Each of the changes was individually determined to not have a significant impact on the environment.

In early 2005, PM-RP became aware of a "master plan" for the use of ACM along approximately 25 miles of the south bank of the MR-GO. Although referred to as a master plan, the plan apparently consists only of three maps showing where ACM would be placed along the south bank for the next 20 years. The maps were prepared by the channel stabilization section of Engineering Division, in cooperation with the Operations Manager. Correspondence received from the Chief of Operations Division confirms that the plan is supported by Operations Division.

Based on information provided by Operations Division, Engineering Division, and Mat Sinking Unit personnel, the 4,360 feet of ACM that was placed in 2004 had the following impacts: 2.0 acres of existing bank was graded; 11.0 acres of bank was cleared of vegetation; 5.5 acres of channel slope was graded; 24.8 acres of water bottom was dredged for flotation; and 13.9 acres of water bottom was used for dredged material disposal. This is a total of 57.2 acres. Extrapolating to 25 miles of ACM, approximately 1,730 acres would be impacted. It is important to note, from an environmental perspective, that ACM is considered as an alternative to the traditional method of shoreline protection utilized rock. Information provided by Engineering Division and Mat Sinking Unit personnel indicate that ACM has much greater environmental impact per linear foot compared to a rock dike. Further, rock dikes are widely known as providing usable habitat for a variety of estuarine organisms, whereas ACM would likely not provide such usable habitat. When compared in an environmental document, the environmentally preferred alternative could be a rock dike.

In addition to the proposed ACM, several other changes to the O&M of the MR-GO are being proposed by Operations Division. An EA is currently under preparation for hopper dredging with sidecasting of the material in the bar channel of the MR-GO. That EA will also include an evaluation of increased advanced maintenance of the MR-GO bar channel. Another proposal, for which funding for an EA has been provided, is to use a water injection dredge in the MR-GO and the Michoud Canal. Work has not begun on this EA. There is also a proposal to construct a test section of ACM along the north bank of the MR-GO, with the anticipation that there may be methods that can be developed to extend ACM protection to larger sections of the north bank. Finally, there has been at least one meeting to discuss possible new disposal areas along the north bank of the channel. These initiatives constitute the potential for a significant impact on the environment, which would require an EIS. The cumulative impact of all the changes that have already occurred since preparation of the 1976 EIS alone constitutes a significant impact on the environment, compared to the O&M plan described in the EIS, although there has been no supplemental EIS (SEIS) prepared. In summary, both the existing O&M of the channel and the proposed changes to the O&M of the channel require preparation of an SEIS. Therefore, no unnecessary changes to the O&M of the MR-GO should be implemented without the preparation of an SEIS and record of decision.

Complicating Factors

There are several factors that could affect the timely preparation of an SEIS and a record of decision. The first factor is the MR-GO Reevaluation study. This study, which has been ongoing for at least five years, is scheduled for completion in FY05, however the study has been scheduled for completion in several previous fiscal years and it is still

NOP-019-000000208

ongoing. While an officially endorsed decision has not been announced, the preliminary recommendation is that maintenance of the deep draft channel should continue. If the recommendation does not change, the EIS that was being prepared to accompany the reevaluation study would not be completed since there would be no significant change from the current O&M program. However, formal closure of the NEPA process for the reevaluation study needs to be accomplished before an EIS can be started ~~can be started~~ for the O&M program.

A second complicating factor is Section 201 of WRDA96 and the Corps' implementing guidance contained in Planning Guidance Letter (PGL) #47. WRDA96 requires non-Federal sponsors to share the cost of constructing dredged material disposal facilities necessary for maintenance of navigation channels. This requirement for non-Federal cost sharing has the potential to significantly affect O&M of the channel. The most radical departure from the existing dredging scheme would be a reversion to the use of the south bank upland, confined disposal areas, which Engineering Division has recently determined to have a remaining capacity of at least 20 years. It appears that the effects of PGL #47 will have to be determined before a long-term dredged material management plan can be developed for the channel. However, it may be possible to complete an EIS and record of decision for the currently planned changes to the O&M program without having to wait for a determination on the long-term dredging plan if the scope of the SEIS could be limited to the changes to the O&M program that have occurred and those that are proposed. This possibility needs to be further explored with the Office of Counsel and the MVD District Support Team.

[margin note: 2 SEISs 1) O&M 2) DMMP only one]

The final complicating factors are studies planned under the Louisiana Coastal Area (LCA) authority. Even though the LCA Ecosystem Restoration Study has not been authorized, significant efforts are underway to start feasibility-level studies for ecosystem restoration of areas adversely affected by the MR-GO; beneficial use of dredged material from Federal navigation channels; and shoreline protection along the MR-GO and Lake Borgne. The project management plans for these studies are being developed. PM-R is under tremendous pressure to publish notices of intent (NOIs) to prepare EISs for these studies, and scoping meetings are already tentatively set for the dredged material project in June. Once feasibility cost sharing agreements are signed for these studies, there will undoubtedly be a major push to complete them as quickly as possible. However, these studies will have difficulty proceeding in a meaningfully way until a decision is made on the future O&M of the MR-GO, as that decision constitutes the future without-project condition, also known as the no-action plan, upon which all impact analyses of alternatives must be based for ecosystem restoration, dredged material disposal and, to a lesser degree, shoreline protection.

Recommendations

[handwritten: Complete MR-GO Re-evaluation Study ASAP.]

PM-R recommends that a withdrawal of the notice of intent (NOI) to prepare an EIS for the Reevaluation Study should be published as soon as MVD and HQUSACE endorse the reevaluation study, which will recommend continued channel maintenance. This will officially close the NEPA process for the reevaluation study. This closure is important because the public has to be advised that the issue of whether or not the MR-GO will continue as a deep-draft channel has to be settled before they are advised that we

3

are initiating an EIS to address O&M of the channel. This public announcement on the decision to continue O&M of the MR-GO would be followed shortly by the initiation of an SEIS for O&M of the MR-GO, as soon as funds are available through the MR-GO project. It may be possible to officially end the Reevaluation Study EIS and publish a NOI for the O&M SEIS in a combined notice that would be published in the Federal Register and distributed to known interested parties in order to minimize confusion.

The SEIS for O&M would include, as the existing condition, all of the changes that have occurred since the original EIS, which have been addressed through EAs and FONSIs. The future without-project condition, or no-action condition, would be the continued O&M of the channel with no changes to the O&M program. The future without-project condition would also include continued dredging and dredged material disposal as it is currently accomplished, using existing disposal sites for beneficial use to the maximum extent. The alternatives for future O&M that would be considered include the currently proposed changes, which are ACM along the south bank and the north bank, the use of water injection dredges, ~~the sidecasting of material from hopper dredging in the bar channel, increased advanced maintenance of the bar channel~~, and possibly new disposal areas for beneficial use of dredged material.

[handwritten margin note: as w 1976 EIS?]

The major points of this proposal are:

- An SEIS needs to be prepared for the O&M program of the MR-GO.
- The future of the MR-GO as a authorized deep-draft navigation channel must be decided under the reevaluation study and must be presented to the public before, or at least concurrently, with any NOI to prepare an EIS for the O&M program.
- Meaningful analyses of LCA projects that address the MR-GO cannot be accomplished until the future O&M plan for the MR-GO has been determined since it forms the basis upon which the plan formulation for the LCA studies and the impacts of the LCA alternative plans must be based.

NOP-019-000000210