# EXHIBIT 2

AIN-179-000002518

| 82d Congress | HOUSE OF REPRESENTATIVES | Document |
|---|---|---|
| 1st Session | | No. 245 |

# MISSISSIPPI RIVER-GULF OUTLET

## LETTER

FROM

# THE SECRETARY OF THE ARMY

TRANSMITTING

A LETTER FROM THE CHIEF OF ENGINEERS, UNITED STATES ARMY, DATED MAY 5, 1948, SUBMITTING A REPORT, TOGETHER WITH ACCOMPANYING PAPERS AND AN ILLUSTRATION ON A REVIEW OF REPORTS ON, AND A PRELIMINARY EXAMINATION AND SURVEY OF, THE MISSISSIPPI RIVER–GULF OUTLET AND THE MOBILE TO NEW ORLEANS INTRACOASTAL WATERWAY, REQUESTED BY RESOLUTIONS OF THE COMMITTEE ON RIVERS AND HARBORS, HOUSE OF REPRESENTATIVES, ADOPTED ON MAY 5, 1943, AND THE COMMITTEE ON COMMERCE, UNITED STATES SENATE, ADOPTED ON APRIL 19, 1943, AND ALSO AUTHORIZED BY THE RIVER AND HARBOR ACT APPROVED ON MARCH 2, 1945

OCTOBER 1, 1951.—Referred to the Committee on Public Works and ordered to be printed, with one illustration

## LETTER OF TRANSMITTAL

DEPARTMENT OF THE ARMY,
*Washington 25, D. C., September 25, 1951.*

The SPEAKER OF THE HOUSE OF REPRESENTATIVES.

DEAR MR. SPEAKER: I am transmitting herewith a report dated May 5, 1948, from the Chief of Engineers, United States Army, together with accompanying papers and an illustration, on a review of reports on, and a preliminary examination and survey of, the Mississippi River-Gulf outlet. This investigation was requested by resolutions of the Committee on Rivers and Harbors, House of Representatives, adopted on May 5, 1943, and the Committee on Commerce, United States Senate, adopted on April 19, 1943, and also authorized by the River and Harbor Act approved on March 2, 1945.

In accordance with section 1 of Public Law 14, Seventy-ninth Congress, the views of the Governor of the State of Louisiana are set forth in the enclosed communication.

89660—51——1

1

AIN-179-000002519

The Bureau of the Budget makes certain comments on the report and advises that there is no objection to authorization of the recommended works, with the understanding, however, that no appropriation for construction of the project will be sought until such time as the budgetary situation clearly makes possible the initiation of such improvements. The complete views of the Bureau of the Budget are contained in the attached copy of its letter.

Sincerely yours,

FRANK PACE, Jr.,
*Secretary of the Army.*

------

### COMMENTS OF THE BUREAU OF THE BUDGET

EXECUTIVE OFFICE OF THE PRESIDENT,
BUREAU OF THE BUDGET,
*Washington 25, D. C., September 17, 1951.*

The honorable the SECRETARY OF THE ARMY.

MY DEAR MR. SECRETARY: Reference is made to Secretary Royall's letter dated May 12, 1948, submitting the proposed report of the Chief of Engineers on the Mississippi River-Gulf outlet, requested by resolutions of the Committee on Rivers and Harbors, House of Representatives, adopted May 5, 1943, and the Committee on Commerce, United States Senate, adopted April 19, 1943, and also authorized by the River and Harbor Act approved March 2, 1945.

The Chief of Engineers recommends modification of the existing project for the Mississippi River, Baton Rouge to the Gulf of Mexico, to provide for construction of two new features:

(1) A seaway canal, 36 feet deep and 500 feet wide, extending 70 miles as a land and water cut from Micheaud southeasterly to Lake Borgne, and across Chandeleur Sound to the 38-foot contour in the Gulf of Mexico, with protective jetties, a permanent retention dike through Chandeleur Sound, and a wing dike along the islands as required.

(2) An inner tidewater harbor consisting of a 1,000- by 2,000-foot turning basin 36 feet deep at the landward end of the seaway canal, and a connecting channel 36 feet deep and 500 feet wide extending westerly along the Gulf Intracoastal Waterway from the turning basin to the Industrial Canal.

The plan also provides for the future construction of a channel and a lock at Meraux to furnish an additional connection between the tidewater harbor and the river. The results of this project would be, therefore, a new harbor at New Orleans and a new entrance channel entirely separate from the Mississippi River. The new harbor and channel would supplement but not replace the present port facilities at New Orleans and the present entrance channel in the river.

The Federal cost of the recommended project is estimated on the basis of 1948 prices at $67,000,000 for construction, with annual charges of $4,004,000, including $1,000,000 for maintenance. The estimated non-Federal cost is $610,000 with annual charges of $23,000.

The prospective tangible annual benefits total $5,835,000. These include $3,250,000 savings in ship turn-round time; $950,000 savings due primarily to relief of congestion at existing general cargo terminals and in the landward access facilities to the present wharves; and

AIN-179-000002519

AIN-179-000002520

$1,635,000 from reduced sailing time of coastwise vessels, reductions in hazards to navigation, savings in terminal handling charges and annual charges on wharves, and enhancement in value of water-front property.

The economic justification for the project as presented in the report is based largely on savings to shipping and ship-borne commodities once they reach the harbor and the direct monetary benefits from the outlet channel to the Gulf when considered as a separate incremental feature would not appear to warrant the large ultimate cost. However, while the inner harbor basin part of the plan can be operated feasibly as a separate unit without the seaway through use of existing and proposed connections to the Intracoastal Waterway and the Mississippi River, it is apparent that many of the advantages of convenience and efficiency which could be offered by the inner harbor would be lost without the tidal connection and that the economic benefits of the combined harbor and channel project would appear to justify its costs.

It is considered that the inner harbor and outlet channel works, taken together, are valuable long-range improvements which may be added to the backlog of work to be undertaken as conditions permit. Accordingly, you are advised that there would be no objection to authorization of the recommended works, with the understanding, however, that no appropriation for construction of the project will be sought until such time as the budgetary situation clearly makes possible the initiation of such improvements.

Sincerely yours,

ELMER B. STATTS,
*Acting Director.*

———

## COMMENTS OF THE GOVERNOR OF LOUISIANA

[Telegram]

BATON ROUGE, LA., *April 28, 1948.*

Lt. Gen. R. A. WHEELER,
*Chief of Engineers, United States Army,*
*Washington, D. C.:*

Reference is made to the review of reports on the Mississippi River-Gulf and Mobile to New Orleans Intracoastal Waterway as proposed by the Chief of Engineers, United States Army.

I am familiar with the provisions of this proposed report and thoroughly concur in the views and recommendations expressed therein. The project recommended will be of inestimable benefit to the State of Louisiana and to the Nation. A tidewater channel to the sea will permit rapid development of sorely needed additional port facilities by the Board of Commissioners, Port of New Orleans, and will provide great additional benefits to the port.

Support of the State of Louisiana for a tidewater canal from New Orleans to the Gulf on the eastern side of the Mississippi River is well shown by Concurrent Resolution No. 18 of the Louisiana Legislature of 1944, in which it was resolved that the Governor of Louisiana be specifically empowered to aid and assist the Federal Government in obtaining and completing such a project.

JAMES H. DAVIS,
*Governor of Louisiana.*

AIN-179-000002521

REPORT OF THE CHIEF OF ENGINEERS, UNITED STATES ARMY

DEPARTMENT OF THE ARMY,
OFFICE OF THE CHIEF OF ENGINEERS,
*Washington, D. C., May 5, 1948.*

Subject: Mississippi River-Gulf outlet and the Mobile to New Orleans Intracoastal Waterway.

To: The Secretary of the Army.

1. There is submitted herewith for transmission to Congress the report of the Board of Engineers for Rivers and Harbors in response to resolution of the Committee on Commerce of the United States Senate, adopted April 19, 1943, requesting the Board to review the reports on Mississippi River-Gulf outlet submitted in Committee on Rivers and Harbors, House of Representatives, Document No. 46, Seventy-first Congress, second session, and previous reports, and to review the reports on the Mobile, Ala., to New Orleans Intracoastal Waterway submitted in the report of the Chief of Engineers dated April 27, 1942, and previous reports, with a view to determining whether any modification of the recommendations contained therein is advisable at this time, particularly with respect to the advisability and cost of providing an emergency outlet from the Mississippi River in the interest of national defense and general commerce by the construction and maintenance of a permanent deep-draft channel 40 feet deep or of such lesser depth as may be determined to be an economical ship channel, from the Industrial Canal, New Orleans, La., eastward along the authorized route of the Intracoastal Waterway to a point at or near the Mississippi Sound, mouth of the Rigolets, thence to the 40-foot contour in the vicinity of the Government light at the northern extremity of the Chandeleur Islands; and also a resolution of the Committee on Rivers and Harbors of the House of Representatives, adopted May 5, 1943, requesting the Board to review the reports on Mississippi River-Gulf outlet submitted in Committee on Rivers and Harbors, House of Representatives, Document No. 46, Seventy-first Congress, second session, and previous reports; and to review the reports on the Mobile, Ala., to New Orleans Intracoastal Waterway submitted in the report of the Chief of Engineers dated April 27, 1942, and previous reports, with a view to determining whether any modification of the recommendations contained therein is advisable at this time, particularly with respect to the advisability and cost of providing an emergency outlet from the Mississippi River in the interest of national defense and general commerce by the construction and maintenance of a permanent deep-draft channel 40 feet deep or of such lesser depth as may be determined to be an economical ship channel, from the Industrial Canal, New Orleans, La., eastward along the authorized route of the Intracoastal Waterway to a point at or near the Mississippi Sound, mouth of the Rigolets, thence to the 40-foot contour in the vicinity of the Government light at the northern extremity of the Chandeleur Islands.   It is also in review of the report of the division engineer on a ship canal to extend from the Mississippi River at a point at or near the city of New Orleans, La., to the Gulf of Mexico, by way of the best available route or routes, authorized by the River and Harbor Act approved March 2, 1945.

AIN-179-000002521

AIN-179-000002522

MISSISSIPPI RIVER-GULF OUTLET                5

2. I concur in general in the views and recommendations of the Board. It is noted that the conditions of local cooperation prescribed by the Board include among other requirements that local interests make necessary highway changes. The existing project for the Gulf Intracoastal Waterway provides, however, for the United States to construct a highway bridge over this section of that waterway. Since existing congressional authority specifically provides for the construction of a highway crossing by the United States, it is considered that the project for the ship channel should carry similar authority.

3. I recommend modification of the existing project for Mississippi River, Baton Rouge, to the Gulf of Mexico, to provide for construction of a seaway canal 36 feet deep and 500 feet wide extending 70 miles as a land and water cut on tangents and easy curves from a point south of the Intracoastal Waterway at Micheaud southeasterly to and along the south shore of Lake Borgne and through the marshes to and across Chandeleur Sound to Chandeleur Island at or north of Errol Island, thence increasing gradually to a width of 600 feet and depth of 38 feet in the Gulf of Mexico, with protective jetties at the entrance, a permanent retention dike through Chandeleur Sound, and a wing dike along the islands as required; a turning basin at the landward end of the seaway canal, 36 feet deep, 1,000 feet wide and 2,000 feet long; and a connecting channel 36 feet deep and 500 feet wide extending westerly along the Gulf Intracoastal Waterway from the turning basin to the Industrial Canal, including construction of a suitable highway bridge with approaches to carry Louisiana State Highway 61 over the channel; all generally in accordance with the plans of the division engineer and with such modifications thereof as in the discretion of the Secretary of the Army and the Chief of Engineers may be desirable, at an estimated cost to the United States of $67,-000,000 for construction exclusive of aids to navigation, and $1,000,000 annually for maintenance in addition to that now required; provided that, prior to initiation of construction, local interests furnish free of cost to the United States all lands, easements, rights-of-way, and spoil-disposal areas for the initial construction, and when and as required for subsequent maintenance; furnish assurances satisfactory to the Secretary of the Army that they will accept ownership of the highway bridge and approaches upon completion of construction, together with maintenance, operation, and future replacement or alteration as may be required; will provide and maintain any other bridges required over the waterway, and accomplish all necessary utility and other highway relocations and alterations and the maintenance thereof; will hold and save the United States free from all claims for damages due to construction, maintenance, and operation of the project; and will construct, maintain, and operate terminal facilities commensurate with requirements of the expanded port.

R. A. WHEELER,
*Lieutenant General,*
*Chief of Engineers.*

AIN-179-000002522

AIN-179-000002529

12            MISSISSIPPI RIVER-GULF OUTLET

alternate plan provides for improvements on the west bank of Missis-
sippi River, substantially as proposed by the Mississippi Valley
Seaway Canal Association and other west-bank interests, to consist
of an eased entrance channel 36 feet deep from the right bank of
Mississippi River near Westwego at mile 103, leading into and
combined with a riverside mooring basin and forebay; a lock tenta-
tively 760 feet long and 110 feet wide with a depth of 40 feet on the
sills; a landside forebay and turning basin suitable for development as
a tidewater terminal harbor; a seaway canal, 36 feet deep and 500 feet
wide, extending 55 miles as a land and water cut on tangents and
easy curves from the terminal turning basin southerly to and through
the Barataria marshes and Caminada Bay and Pass to deep water in
the Gulf of Mexico; and readjustment of the Mississippi River main
west-bank levee, relocation or reconstruction of highways, railways,
and utilities, and construction of a movable railway and highway
bridge.  Provision is included for parallel jetties from Caminada Pass
to the 20-foot contour in the Gulf and for the canal through the
jetties and across the bar to be flared to a width of 600 feet at the
38-foot contour.  Costs of the improvements under the alternate
plan, as estimated in 1946, total $53,500,000, of which $53,000,000
are Federal costs of construction, including $300,000 for aids to navi-
gation, and $500,000 are non-Federal costs for rights-of-way and
spoil-disposal areas.  Annual carrying charges are estimated at
$2,870,000.

13. The division engineer has considered the prospective benefits
under each of the two plans of improvement on the basis of economies
that may be effected in pertinent present and prospective general
cargo commerce (foreign and coastwise), inland-waterway commerce,
and internal port traffic, together with savings on construction and
operation costs of terminal facilities, and benefits due to enhancement
of property values incident to creation of tidewater harbors.  He
notes that the proposed outlets at New Orleans would not benefit
river terminals and installations above and below the port nor be
utilized by petroleum interests now using the river channel in view of
their aversion to locks and side channels.  He estimates annual
benefits of $5,260,000 as being reasonably prospective from the
proposed improvements on the east side of Mississippi River, as
a result of reduction in sailing and turn-round time and navigation
hazards for deep-draft general-cargo vessels, savings in terminal
handling and annual wharf charges, and enhancement of water-front
property.  The annual benefits from comparable items of savings to
commerce and from land enhancement attributable to the alternate
west-bank improvements are estimated to total $1,690,000.  The
ratio of estimated annual benefits to annual carrying charges is 1.61
under the plan providing for the supplementary outlet eastward of
Mississippi River and 0.59 under the alternate plan for the west-bank
outlet, therefore, the division engineer finds that the improvements to
provide the eastward outlet are economically justified and those for
the west-bank outlet lack economic justification.  He also notes that
the improvements would greatly enhance the capacity of the port
for emergency war service by provision of an additional outlet and
wide dispersion of terminal facilities for embarkation of personnel,
material, and supplies in the interest of national defense.  The divi-
sion engineer recommends modification of the existing project "Mis-

AIN-179-000002529

AIN-179-000002534

MISSISSIPPI RIVER-GULF OUTLET          17

division engineer and with such modifications thereof as in the dis-
cretion of the Secretary of the Army and the Chief of Engineers may
be desirable, at an estimated cost to the United States of $65,000,000
for construction exclusive of aids to navigation, and $1,000,000
annually for maintenance in addition to that now required; provided
that, prior to any construction expenditures, local interests furnish
free of cost to the United States all lands, easements, rights-of-way,
and spoil-disposal areas required for initial construction and subse-
quent maintenance; make necessary highway, railway, and utility
changes; and furnish assurances satisfactory to the Secretary of the
Army that they will hold and save the United States free from all
claims for damage due to construction, maintenance, and operation
of the project, and will construct, maintain, and operate terminal
facilities commensurate with requirements of the expanded port,
under regulations approved by the Secretary of the Army.

For the Board:

R. C. CRAWFORD,
Major General,
Senior Member.

---

## REPORT OF THE DIVISION ENGINEER

### SYLLABUS

The Board of Commissioners of the Port of New Orleans, the State agency for
operation of the port, requests Federal construction of an additional deep-draft
outlet (seaway) from New Orleans to the Gulf of Mexico east of Chandeleur
Islands. West-bank interests, by the Mississippi Valley Seaway Canal Associa-
tion, request a deep-draft outlet (seaway) from the river at Westwego to the
Gulf south of Caminada Bay.

Under uniform postulates, comparison of estimated annual charges and benefits
indicates economic justification for proposed east bank but not for proposed
west-bank improvements.

The division engineer finds that the proposed outlet and tidewater harbor
east and southeast of New Orleans, in conjunction with the river and its improved
passes and the Intracoastal Waterway and Industrial Canal, will facilitate expan-
sion and improvement of port facilities to serve all water-borne commerce that
may be attracted to the port with resulting benefits to present and prospective
seagoing and inland waterway navigation and commerce considerably in excess
of charges for construction and operation, and will greatly enhance the capacity
of the port for war service by providing for dispersion of terminal facilities.

He recommends that the existing project, "Mississippi River, Baton Rouge
to the Gulf of Mexico," be modified to provide for an additional east-bank, deep-
draft outlet and tidewater harbor by construction of connecting harbor channel
36 feet deep and 500 feet wide extending from the existing inner harbor canal to
a turning basin south of Micheaud; and a channel 36 feet deep and 500 feet wide
extending as a land and water cut on tangents and easy curves from this turning
basin southeasterly to and along the south shore of Lake Borgne and through the
marshes to and through Chandeleur Sound and Islands, at or north of Errol
Island, to deep water in the Gulf of Mexico, a distance of approximately 70 miles,
with provision for the future construction, when found to be economically justi-
fiable, of an additional lock near Meraux with necessary channels and appur-
tenances for connections with the turning basin and the Mississippi River, gen-
erally as outlined in paragraph 60 hereof, subject to such modifications of location,
alinement, and dimensions as may be approved by the Chief of Engineers, at an
estimated cost of $53,000,000 for construction and $810,000 annually for main-
tenance and operation, in addition to that now required; subject to stated condi-
tions of local cooperation.

AIN-179-000002534

AIN-179-000002535

**18**      MISSISSIPPI RIVER-GULF OUTLET

War Department, Corps of Engineers,
Office of the Division Engineer,
Lower Mississippi Valley Division,
*Vicksburg, Miss., September 30, 1946.*

Subject: Review of reports on Mississippi River-Gulf outlet and the Mobile to New Orleans Intracoastal Waterway.

To: The Chief of Engineers, United States Army.

I. GENERAL

1. *Authority.*—This report is submitted in compliance with instructions of the Chief of Engineers contained in third endorsement, dated June 22, 1943, and in accordance with congressional authorities as follows:

*Resolved by the Committee on Commerce of the United States Senate,* That the Board of Engineers for Rivers and Harbors, created under section 3 of the River and Harbor Act, approved June 13, 1902, be, and is hereby, requested to review the reports on the Mississippi River-Gulf outlet submitted in Committee on Rivers and Harbors, House of Representatives, Document numbered 46, Seventy-first Congress, second session, and previous reports, and to review the reports on the Mobile, Alabama, to New Orleans Intracoastal Waterway, submitted in the report of the Chief of Engineers dated April 27, 1942, and previous reports, with a view to determining whether any modification of the recommendations contained therein is advisable at this time, particularly with respect to the advisability and cost of providing an emergency outlet from the Mississippi River in the interest of national defense and general commerce by the construction and maintenance of a permanent deep-draft channel 40 feet deep or of such lesser depth as may be determined to be an economical ship channel, from the Industrial Canal, New Orleans, Louisiana, eastward along the authorized route of the Intracoastal Waterway to a point at or near the Mississippi Sound mouth of the Rigolets, thence to the 40-foot contour in the vicinity of the Government light at the northern extremity of the Chandeleur Islands.

Adopted April 19, 1943.

*Resolved by the Committee on Rivers and Harbors of the House of Representatives, United States,* That the Board of Engineers for Rivers and Harbors created under section 3 of the River and Harbor Act, approved June 13, 1902, be, and is hereby, requested to review the reports on Mississippi River-Gulf outlet submitted in Committee on Rivers and Harbors, House of Representatives, Document Numbered 46, Seventy-first Congress, second session, and previous reports; and to review the reports on the Mobile, Alabama, to New Orleans Intracoastal Waterway, submitted in the report of the Chief of Engineers dated April 27, 1942, and previous reports, with a view to determining whether any modification of the recommendations contained therein is advisable at this time, particularly with respect to the advisability and cost of providing an emergency outlet from the Mississippi River in the interest of national defense and general commerce by the construction and maintenance of a permanent deep draft channel 40 feet deep or of such lesser depth as may be determined to be an economical ship channel, from the Industrial Canal, New Orleans, Louisiana, eastward along the authorized route of the Intracoastal Waterway to a point at or near the Mississippi Sound mouth of the Rigolets, thence to the 40-foot contour in the vicinity of the Government light at the northern extremity of the Chandeleur Islands.

Adopted May 5, 1943.

Public Law 14, Seventy-ninth Congress, Approved March 2, 1945

Sec. 6. The Secretary of War is hereby authorized and directed to cause preliminary examinations and surveys to be made at the following-named localities:

    \*        \*        \*        \*     \*        \*        \*

Ship canal to extend from the Mississippi River at a point at or near the city of New Orleans, Louisiana, to the Gulf of Mexico, by way of the best available route or routes.

    \*        \*        \*        \*     \*        \*        \*

AIN-179-000002535

AIN-179-000002550

### X. ADDITIONAL OUTLETS

48. Consideration was given to nine alternative outlets in reports contained in House Document No. 46, 71st Cong., 2d sess. The route outlined in authorizing resolutions and those proposed at and subsequent to the public hearing for this review (fig. 1 [1]) generally correspond to those discussed in reference reports as Chandeleur, Lake Borgne, and Barataria routes. Comparative estimates under uniform postulates (table 6 [1]) indicate that relatively slight difference in over-all cost of east-bank outlets and appurtenances results from change in alinement between common termini.

49. An east-bank outlet from New Orleans necessarily traverses marshlands and open waters (Lake Borgne, Mississippi, Chandeleur, or Breton Sounds) to the Gulf of Mexico. Construction and maintenance of inland sections of such a channel involve only routine dredging operations. Offshore sections, however, present more complex problems. Departmental experience in developing and maintaining harbors along the Gulf coast has shown it to be difficult to maintain deep channels in open shoal waters, particularly if alinement transverses prevailing winds and currents unless dikes of some type are provided. A nearby project, pertinent to a Mississippi east-bank outlet, is that for Gulfport-Ship Island Pass across Mississippi Sound. Here the authorized 26- by 220-foot channel, substantially in line with prevailing southeast winds but transverse to tidal currents through the sound, has been maintained by dredging alone since 1934 at an average annual cost of about $10,000 per mile, it being noted that shoals may consist of soft mud even though the dredged bottom is sand (reference, H. Doc. No. 692, 69th Cong., 2d sess, p. 25).

50. Construction work near New Orleans, notably that at the Industrial Canal lock where quicksand was encountered, and in the Gulf Intracoastal Waterway, indicates that subsurface strata in this part of the lower Delta comprise variable thicknesses of humus, clay, sand, and silt, and mixtures thereof. Borings in Chandeleur and Breton Sounds indicate that similar materials would be encountered there (plates 4 and 5 [1]).

51. The proposed west-bank outlet, as outlined in the brief (exhibit LXXIV-A [1]), leaves the river at or near mile 103, crosses the Texas & Pacific Railroad and then veers to a tangent extending southerly to and through Caminada Bay and Pass to the Gulf of Mexico west of Grand Isle. This route offers the obvious advantage that exposed shoal water is encountered only in Caminada Bay and at the Gulf entrance where protection works would be necessary.

52. *Sea level harbor basins.*—Proponents of east-bank outlets stressed the advantage of a tidewater channel and the benefits resulting from reclamation of marshlands for use in development of a tidewater port (par. 27). Generally tidewater harbor basins serve ports, such as London, Antwerp, and Le Havre, located on waterways where great tidal fluctuations make it advisable to provide constant level terminal basins connected with the tideway through locks. Use of such basins reduces foundation uncertainties and facilitates handling of cargoes at shipside. At New Orleans the range of tide

[1] Not printed.

AIN-179-000002550

AIN-179-000002558

values incident to creation of tidewater harbors. On this basis it is found that the proposed west-bank outlet is not economically justified at this time (pars. 63 and 64).

72. Prospective seagoing commerce, general cargo, pertinent to an east-bank outlet developed as a tidewater harbor is estimated at not less than 10,000,000 tons annually (par. 37). This estimate excludes all seagoing traffic in oil, the dominant commodity of water-borne commerce, and disregards possible diversion of traffic not served by east-bank terminals heretofore. It is considered ultraconservative. Prospective waterway commerce east of New Orleans, greatly expanded in war years, may be expected to decline, but such decline presumably will be offset by diversion of Mississippi River commerce to the authorized Tombigbee-Tennessee waterway (par. 39). The east-bank improvement outlined herein may in the future be amplified, when found justifiable, by the construction of an additional lock and connecting channels to the Mississippi River, which will complete the Mobile-New Orleans section of the Gulf Intracoastal Waterway (which now utilizes leased facilities of the State-owned Industrial Canal) and relieve congestion in the harbor. The improvement, implemented by improved port facilities, will effect reduction in turn-around time for seagoing general-cargo vessels, savings in terminal and transfer charges, and in costs for construction and operation of terminal facilities. Resulting benefits are estimated at $5,260,000 annually (par. 64).

73. Estimated costs for the east-bank improvement are $53,000,000 for Federal construction and $500,000 for non-Federal expenditures for rights-of-way (par. 61). Corresponding annual charges, Federal and non-Federal, are $3,240,000 and $30,000, respectively. The indicated ratio of charges to benefits is 1.61.

74. Under established practice, port development is effected cooperatively, with harbor channels and connections (access, outlet and inland waterway channels), turning basins and locks, as well as bridges over land cuts, generally provided by the Federal Government. Rights-of-way and terminal facilities (including slips, piers, warehouses, land transportation, and other port facilities) are responsibilities of port authorities, subject to regulations approved by the Secretary of War to ensure equitable operation. The plan outlined in paragraph 60 supra is predicated on such cooperative development to create a tidewater harbor with alternate outlets to the river and sea. Full utilization of existing river, inner harbor, and Intracoastal Waterway facilities is contemplated. The plan lends itself to step construction, with priorities and definitive location of features fixed in the discretion of the Chief of Engineers to fit into a flexible, long-range program of port development to serve the public through many generations.

75. Comprehensive development of a national port such as New Orleans properly should be planned to facilitate its use for national defense in emergencies. In the recent World War, the port of New Orleans, the Mississippi River, and the system of inland waterways were important factors in deployment of war supplies, but locks and terminals at New Orleans were greatly overtaxed. With continuing growth of population and development of resources of the Mississippi Valley and decentralization of industry, it is believed that the port, the river, and the inland waterways will be used to a still greater extent in another national emergency.

AIN-179-000002558