# EXHIBIT 18

ENGCW-OM

DEPARTMENT OF THE ARMY
Office of the Chief of Engineers
Washington, D. C. 20315

ER 1130-2-307

Regulation
No. 1130-2-307

31 October 1968

## PROJECT OPERATION

### Dredging Policies and Practices

1. **Purpose and Scope.** This regulation prescribes the policies and practices governing the accomplishment of dredging operations.

2. **Applicability.** This regulation is applicable to the President of the Mississippi River Commission and to all Division and District Engineers responsible for dredging operations.

3. **References.**

   a. Sec. 5, R&H Act approved 4 March 1915.(38 Stat. 1049, 1053; 33 USC 562).

   b. Sec. 5, R&H Act approved 13 July 1892.(27 Stat. 88, 111; 33 USC 628).

   c. ER 415-2-301.

   d. ER 1165-2-101.

   e. ER 690-1-702.

   f. ER 11-2-101.

   g. ER 1180-1-1.

   h. ER 1125-2-304.

4. **Channel Dimensions Authorized.**

   a. As specified in Section 5 of the River and Harbor Act approved 4 March 1915, the channel depths referred to in project authorizations, unless otherwise expressed, shall signify:

   (1) The depth at mean low water in tidal waters tributary to the Atlantic and Gulf Coasts.

   (2) The depth at mean lower low water in tidal waters tributary to the Pacific Coast.

---

This Regulation rescinds ER 1130-2-307, 30 June 1967

F-1

ER 1130-2-307
31 Oct 1968

(3) The mean depth for a continuous period of 15 days of the lowest water in the navigation season of any year in rivers and nontidal channels.

b. Where rivers have been canalized, the channel depth referred to shall signify the depth at normal pool. On the Great Lakes the depths are referred to low-water datum as established for the respective lakes.

c. Unless otherwise provided in the project authorization, channel depths specified will be construed as actual dredging limits (Exclusive of overdepth dredging) and not as the draft limits of vessels to be accommodated.

d. Where a width of channel is specified it will be understood to mean width of bottom at project depth.

e. Section 5 of the Act cited above further provides that the channel dimensions specified shall be understood to admit of such increases at the entrances, bends, sidings, and turning places as may be necessary to allow for the free movement of boats. Any increase in channel dimensions contemplated under this authority shall be approved by the Chief of Engineers except where the work is of minor scope and expense. Requests for approval will describe the amount and location of proposed increases; including estimate of cost; and contain a statement of size, nature, draft, and number of vessels or tows using the reach of waterway under consideration.

5. <u>Prohibition on Dredging Shoreward of Harbor Lines</u>. Pursuant to Section 5 of the River and Harbor Act approved 13 July 1892, no funds appropriated for navigation projects shall be expended for dredging shoreward of harbor lines duly established.

6. <u>Reconnaissance and Condition Surveys</u>.

a. Every active waterway and harbor project should be surveyed at least once each year to determine the capability of the project to serve current navigation requirements. Such determination may be based on telephonic information or letter from local navigation interests, a visit to the project involving a discussion with such interests, a reconnaissance survey, or a detailed condition survey.

b. Maximum use will be made of condition surveys of reconnaissance scope utilizing echo sounding devices. For channel and harbor projects on which no maintenance work is programmed, a reconnaissance survey will be made to determine the need for a detailed condition survey. Detailed surveys will be limited to projects or sections of projects for which maintenance work can be justified and there is reasonable assurance the work can be financed. If maintenance work is accomplished on a project, the cost of all surveys will be included under the appropriate cost features of that project. If no costs are incurred during the fiscal year other than for

ER 1130-2-307
31 Oct 1968

surveys, the cost of all surveys on that project will be charged to the project "Reconnaissance and Condition Surveys."

   c. Upon completion of the surveys, District and Division Engineers will take such action as may be necessary, including requests for any required authority, to perform maintenance dredging determined to be justified. The actual requirements of existing commerce and the economics which may be obtained by a reduction in the frequency of dredging operations will govern the extent of the maintenance work to be undertaken. (see para. 9).

7. <u>Channel Sweeping</u>. When dredging is performed in hard material or in localities where boulders, submerged logs, stumps, and similar obstructions are likely to be found, the inspection of contract and hired labor dredging will include careful sweeping to insure a clear channel of specified depth. After-dredging sounding may be substituted for the sweeping requirements only if the bottom material is unquestionably known to be soft.

8. <u>After Dredging Surveys</u>. Adequate steps will be taken sufficiently in advance of the completion of dredging operations to insure that final surveys are accomplished promptly upon completion of the work, thereby avoiding delay in demobilization or reassignment of plant.

9. <u>Channel Dimensions to be Provided</u>.

   a. It is the policy with respect to authorized navigation projects to have full project dimensions maintained where feasible and justified. To avoid frequent redredging in order to maintain full project depths, "overdepth dredging" should be performed in critical, fast shoaling areas to the extent that it results in the least over-all cost. Such additional dredging is exclusive of and beyond the allowable overdepth to compensate for dredging inaccuracies.

   b. The foregoing pertains not only to projects on which dredging operations are relatively continuous throughout the year, but also to those projects on which dredging is performed periodically and by application of this additional dredging principle dredging intervals could be extended with attendant savings or justified needs of commerce can be satisfied.

   c. In the accomplishment of new work dredging, additional overdepth should be performed in those areas in which it is planned to provide additional maintenance dredging depth in accordance with a and b above.

   d. Division Engineers are hereby authorized to approve additional overdepth for new work and subsequent maintenance in conformance with the above stated policy.

   e. When a period of channel restoration occurs following the annual high water season, it is the intention herein not to advance the initiation of such restoration but, once restored, to preserve project dimensions until the following year.

ER 1130-2-307
31 Oct 1968

    f. The President of the Mississippi River Commission may authorize additional dredging at troublesome locations on the Mississippi River between Cairo, Illinois and Baton Rouge, Louisiana, as necessary to obtain a satisfactory low water navigation channel.

    g. In some waterways and harbors the current needs of navigation can be met adequately by dredging the project channel or basin to less than the authorized depth and/or width. However, in the fast shoaling areas, additional dredging should be performed to avoid frequent redredging of such areas. If a temporary reduction in width from that authorized is acceptable, removal of moderate shoaling along channel lines will be deferred until essential dredging in the channel proper is undertaken. Only where known progressive shoaling along channel lines is unduly restrictive to navigation will its removal be undertaken prior to the normal rescheduling of maintenance dredging.

    h. Budget estimates will be prepared based on the cost of dredging in accordance with the above stated policies except when specifically directed otherwise.

10. <u>Channel Clearing</u>. The policies and procedures to be followed for snagging and clearing for navigation under authority of Section 3 of the River and Harbor Act approved 2 March 1945 are covered in ER 1165-2-101.

11. <u>Disposal of Dredged Material</u>. It is the policy to secure the maximum practicable benefits through the utilization of materials dredged from authorized navigation channels and harbors, provided extra cost to the Government is not incurred. Such use of dredged materials will include nourishment of beaches, erosion control of river banks, and land reclamation. If it is evident during the initial planning of dredging operations that additional costs would be incurred, local interests will be given reasonable opportunity to finance the additional costs. In the utilization of sand for beach nourishment, the technical advice of the Coastal Engineering Research Board will be obtained in determining the beaches most urgently in need of replenishment.

12. <u>Alternate Disposal Areas</u>. Advertisements for dredging work shall provide for the use of alternate contractor furnished disposal areas. The following uniform policy will apply, without exception.

    a. The specification will require the contractor to furnish with his bid written permission of the owners of the property proposed as disposal areas and of the property involved in obtaining access to the disposal areas.

    b. The contractor will be required to coordinate on the use of the proposed contractor furnished disposal area with Federal, State and local fish and wildlife and pollution control agencies and to submit with his bid written approval of these agencies for the use of the disposal area.