## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES | § | CIVIL ACTION |
| CONSOLIDATED LITIGATION | § | NO.  05-4182 "K"(2) |
| | § | JUDGE DUVAL |
| | § | MAG. WILKINSON |
| | § | |
| PERTAINS TO: | § | |
| | § | |
| MRGO | § | |
| | § | |
| | § | |
| | § | |

## DEFENDANT WASHINGTON GROUP INTERNATIONAL, INC.'S OPPOSITION TO MOTION OF THE MRGO PSLC TO ADMIT DEMONSTRATIVE EXHIBITS

All evidence submitted to the court on summary judgment—including any so-called "demonstrative evidence"—must be admissible under the Federal Rules of Evidence. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991) ("'Rule 56(e) requires the adversary to set forth facts that would be admissible in evidence at trial.  Material that is inadmissible will not be considered on a motion for summary judgment because it would not

establish a genuine issue of material fact if offered at trial and continuing the action would be useless.'") (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990)).[1]

At a minimum, admissibility under the Federal Rules requires a showing that the proffered exhibit:  (1) "is relevant" (Fed. R. Evid. 402, 401); (2) has "probative value" that is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" (Fed. R. Evid. 403); and (3) is authentic (*i.e.*, foundation for the evidence is sufficient to support a finding that the demonstrative "is what its proponent claims") (Fed. R. Evid. 901(a)).  *See* Plaintiffs' Mem. in Support of Mot. to Admit Demonstrative Exs. (Doc. No. 16440-2) ("Pls.' Mem.") at 1, 7; *Triteck*, 67 Fed. Cl. at 729.  Plaintiffs have failed to meet the necessary showing for the Court to admit Plaintiffs' Demonstrative Exhibits 1-5 and 26-31. Thus, Plaintiffs' Motion for Admission with respect to these particular slides should be denied.[2]

---

[1]   Here, it is unclear what the Plaintiffs define as "demonstrative exhibits."  The slides that they seek to admit simply contain excerpts of documents and/or deposition testimony. *Cf. Triteck Technologies, Inc. v. United States*, 67 Fed. Cl. 727, 729 (Fed. Cl. 2005) (noting the term "demonstrative evidence" is not mentioned in the Federal Rules of Evidence, and legal scholars disagree about what the term means).

[2]   Moreover, despite this Court's order directing Plaintiffs to file a "brief two-page motion" regarding the demonstrative exhibits that they want the Court to admit into evidence, Plaintiffs improperly have used this opportunity to belatedly re-argue the merits of WGII's Motion for Summary Judgment.  Transcript of Hearing on Motion for Summary Judgment (Nov. 13, 2008) at 119 ("Hearing Tr.").  For example, Section III of Plaintiffs' Memorandum (Doc. No. 16440-2), in its entirety, is an argument about the application of the government contractor defense (citing a case that the Plaintiffs previously failed to raise in its Opposition Brief (Doc. No. 16216), in its Sur-Reply Brief (Doc. No. 16345), or during oral argument).  This argument is wholly unrelated to the admissibility of Plaintiffs' demonstrative exhibits.  *See* Pls.' Mem. at 9-11 (citing *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744 (9th Cir. 1997)); *see also, e.g., id.* at 2 (summarizing Plaintiffs' Opposition to WGII's Motion for Summary Judgment); *id.* at 3 & n.6 (arguing that WGII had "an independent state law duty to exercise due care").  Accordingly, because such arguments are not relevant to this Motion, and the Court did not grant leave for Plaintiffs to make them, these arguments should not be considered by the Court.

- 2 -

A.  **Demonstrative Exhibit 1 – Colletti Depo. Excerpt**

This slide refers to pages 33:21 to 34:12 of the April 2, 2008 deposition of Mr. Gerard A. Colletti.  Plaintiffs noticed this deposition only in *Robinson v. United States*, No. 06-2268, a case in which WGII is not a party.[3]  Indeed, during the deposition, Counsel for the United States objected to any mention of WGII's work in the East Bank Industrial Area ("EBIA") because:  (1) such work was outside the scope of the *Robinson* complaint;[4] and (2) Mr. Colletti lacked any personal knowledge about WGII or the work it performed for the Corps at the EBIA.[5]  For these reasons and because WGII had no opportunity to redirect or ask follow up questions during the deposition, the Court should accord little, if any, weight to Mr. Colletti's testimony.

Additionally, WGII objects to Plaintiffs' argument—without citations to the record—that Mr. Colletti's testimony "was further substantiated by Mr. John Grieshaber and Mr. Lee Guillory . . . who both confirmed that permits were required for excavations within the

_____

(continued…)

In any event, unlike *Snell*, here, there is no genuine factual dispute about the proposition that there was back and forth, give and take, with respect to the "design features in question" (*i.e.,* the sewer lift station and the wedding cake structure excavations, or even backfill and compaction).  In contrast to *Snell*, here there is no witness who retracted earlier testimony that such back and forth did not exist.  *See Snell*, 107 F.3d at 748.

3       As with other depositions noticed only in Robinson, WGII's Counsel was permitted to observe the Colletti deposition, but not participate.  Cf. Deposition of Robert G. Bea in Robinson v. United States, No. 06-2268, Nov. 17, 2007, at 8:7-11 ("William D. Treeby for Washington Group International, Inc.  I am not participating today, just appearing by agreement of Counsel.").  Pursuant to this agreement, WGII simply observed Mr. Colletti's deposition via streaming video.

4       Colletti at 38:15-39:23 [Pls.' Ex. 31].

5       Id. at 40:1-41:20.

critical area of the flood wall."[6]  To the contrary, neither of these witnesses defined, or even mentioned, a so-called "critical area" of the floodwall.  Moreover, Mr. Guillory unequivocally testified that he was <u>not</u> aware "of any New Orleans District office regulations, requirements, et cetera, that require that someone who wants to work within 300 feet of a flood protection structure . . . get a permit before they can dig or trench or work."[7]

B.      **Demonstrative Exhibit 2 – Colletti Depo. Excerpt**

This slide refers to pages 41:21 to 42:8 of Mr. Colletti's deposition in the *Robinson* case.  For the reasons described above, the testimony that Plaintiffs cite merits little, if any, weight.

In addition, WGII objects to the excerpt of Mr. Colletti's testimony from Plaintiffs' Demonstrative Exhibit 2 because, on the whole, the "probative value" of  the demonstrative "is substantially outweighed by the danger of [ ] confusion of the issues."  Fed. R. Evid. 403.  Plaintiffs' demonstrative fails to disclose an important distinction Mr. Colletti made in response to Plaintiffs' hypothetical.[8]  Immediately after answering the hypothetical question Plaintiffs cited to the Court, Mr. Colletti explained that "if it's the <u>Corps</u> doing the work again through a contractor," then the Corps analyzes what impact the work would have on the adjacent levee or floodwall "prior to developing the scope of work" for the contractor.[9]  Because Plaintiffs offer only part of Mr. Colletti's testimony, their Demonstrative Exhibit 2 confuses the issues and

---

6       Pls.' Mem. at 3.

7       Guillory I at 154:17-24 [Pls.' Ex. 8].

8       See Colletti at 41:21-43:11 [Pls.' Ex. 31].

9       Colletti at 42:10-43:9 [Pls.' Ex. 31] (emphasis added).

interferes with the Court's determination of the Summary Judgment Motion before it.  Thus, the demonstrative should be excluded.

        C.      **Demonstrative Exhibits 3-5 – FAQs**

        Plaintiffs' bald assertion that "each demonstrative exhibit" they seek to admit "had been utilized throughout the discovery process" is flatly untrue.[10]  On the contrary, the "FAQs" excerpted on Plaintiffs' Demonstrative Exhibits 3-5 were neither produced by any party during discovery, nor were they presented for witness authentication during any deposition in this litigation.  Plaintiffs fail even to provide a citation for where the Court or WGII might locate the FAQs, stating instead that the FAQs simply were "taken from the Corps public website."[11]  But in fact, the only place WGII was able to locate the FAQs was on an Internet site for a nonprofit organization known as the Red River Valley Association.[12]  The FAQs apparently were part of a January 2008 PowerPoint presentation entitled, "U.S. Army Corps of Engineers Levee Safety Program."[13]  There is no indication of who drafted the "Levee Safety" presentation, who reviewed the presentation, or for what purpose the presentation was used.  As such, the FAQs lack proper foundation, and are inadmissible under Rule 901(a).[14]

---

10      Pls.' Mem. at 1.

11      Pls.' Mem. at 5.

12      See http://www.rrva.org/LeveeMeeting/Vicksburg%20Dist%20Overview.ppt.  According to its website, the Red River Valley Association's purpose "is to advance the economic development and well-being of the millions of citizens who reside in the area traversed by the Red River in Arkansas, Louisiana, Oklahoma and Texas." http://www.rrva.org/whatis.htm.

13      Levee Safety Program Presentation, Jan. 2008 [attached as Ex. A hereto].

14      Plaintiffs claim that because the FAQs came "from a public source," they automatically are admissible under Federal Rules of Evidence 803(8) and 902(5). Pls.' Mem. at 5.  But Federal Rule 803(8) supplies an exception to the hearsay rule, and does not relieve a

Perhaps more importantly, the FAQs are not relevant and have no probative value that might aid the Court in deciding WGII's Motion for Summary Judgment. *See* Fed. R. Evid. 402, 403. Most notably, the FAQs are dated January 2008—more than two years <u>after</u> WGII completed its work in the EBIA and more than seven years <u>after</u> WGII first notified the Orleans Levee District ("O.L.D.") of its intention to remediate the EBIA.[15] Thus, aside from Plaintiffs' own self-serving contentions, there is no evidence that these post-Katrina FAQs, which are not even on the Corps' website, have any bearing on the O.L.D. permitting process that WGII allegedly should have followed while performing Task Order 26 between 2000 and 2005.

D.   **Demonstrative Exhibit 7 – 33 C.F.R. § 208.10**

WGII does not object to the admission of Demonstrative Exhibit 7, which simply displays excerpts of 33 C.F.R. § 208.10.

---

(continued…)

party of its obligation to authenticate proffered evidence. Moreover, Plaintiffs have not shown that the FAQs actually came from a public source as required under Rule 902(5). See EEOC v. E.I. DuPont de Nemours & Co., 2004 WL 2347559, at *2 (E.D. La. Oct. 18, 2004) (admitting table of information from webpage where exhibit contained the Internet domain address from which table was printed, webpage was maintained on the U.S. Census Bureau website, and court was able to verify that table did in fact exist at the Internet location provided by moving party); see also Williams v. Sandra Long, 2008 U.S. Dist. LEXIS 91110, at *16-28 (Md. Nov. 10, 2008) (holding "[a] proponent of ESI [electronically stored information] could use the URL, date, and/or official title on a printed webpage" to satisfy the conditions for admissibility under Rule 902(5)).

15   See Plaintiffs' Demonstrative Exhibits 3-5 (dated Jan. 2008); Levee Safety Presentation at 1, 5 [Ex. A] (acknowledging that "Hurricane Katrina and Rita devastation in 2005 brought levee safety to the forefront of public awareness"); id. at 6 (the "National Levee Safety Program" is part of "Title IX of Water Resources Development Act of 2007"); Decl. of Stevan G. Spencer, October 27, 2008 [Def.'s Ex. 121 at 2].

E.      **Demonstrative Exhibit 8 – OLD Letter**

WGII does not object to the admission of Demonstrative Exhibit 8, which contains a record copy of a March 30, 2005 O.L.D. letter addressed "TO WHOM IT MAY CONCERN." [16]   Rather, during the Summary Judgment Hearing, WGII simply objected to Plaintiffs' Counsel's unsupported representation to the Court that the contents of this March 2005 letter "applie[d] to WGI." [17]   As Counsel for WGII subsequently explained, "there is nothing in the evidence to say [WGII] ever got such a letter." [18]   Plaintiffs have not cited record evidence to the contrary.

F.      **Demonstrative Exhibits 26-31 – Kansas City Guidelines**

Plaintiffs' argument that the so-called "Kansas City Guidelines" should be admitted into evidence for the purpose of opposing WGII's Summary Judgment Motion is baseless.   To be sure, Plaintiffs did present the guidelines to several witnesses in both this litigation and the *Robinson* case.   But what Plaintiffs fail to mention is that not a single witness either recognized the guidelines or could vouch for their authenticity. [19]   Further, as with the FAQs, Plaintiffs provide no source citation for the Kansas City Guidelines, but rather claim,

---

16    See Ex. 8 to Decl. of Stevan G. Spencer [Def.'s Ex. 121 at 78].

17    Hearing Tr. at 75.

18    Hearing Tr. at 108.   Indeed, the letter is from the O.L.D. files, not WGII's (or the Corps'); and it is dated March 2005, years after WGII notified the O.L.D. of its intent to perform work in the EBIA.   See Decl. of Stevan G. Spencer [Def.'s Ex. 121 at 2].

19    See, e.g., Grieshaber I at 47:15-48:17 [Pls.' Ex. 7]; Deposition of Walter O. Baumy, Apr. 9, 2008, at 232:4-233:2 [attached as Ex. B hereto]; Deposition of Richard J. Varuso, Apr. 1, 2008, at 154:14-155:9 [attached as Ex. C hereto].   Plaintiffs claim to have utilized the Kansas City Guidelines in the deposition of Stephen Roe, see Pls.' Mem. at 7, but the record shows that Mr. Roe was never actually shown the guidelines.   Roe at 156:14-158:8 [Pls.' Ex. 10].

954546v.1

without any support, that the guidelines are "actually used by the Corps of Engineers."[20]  Merely attaching an exhibit to a deposition without any evidence of authenticity is not sufficient to establish foundation under Rule 901(a).  *See Crescent Ship Serv. v. M/V MITERA VASSILIKI*, 1995 WL 389814, at *2 (E.D La. June 28, 1995) (holding that evidence was not authenticated where defendants simply attached exhibits to their opposition memoranda and otherwise "made no effort" to authenticate exhibits); *see also Bell v. City of Topeka*, 496 F. Supp. 2d 1182, 1185 (D. Kan. 2007) (holding that where plaintiff failed to "set forth the proper authentication for [ ] deposition exhibits, the Court may not consider these documents").

Moreover, as their name indicates, the Kansas City Guidelines are also inadmissible evidence because they are "not relevant" to the issues before the Court on summary judgment.  Fed. R. Evid. 402.  Plaintiffs offer absolutely no foundation for the proposition that these flood control guidelines are applicable in the Corps' New Orleans District.  Indeed, to the contrary, Mr. Richard Varuso, P.E., Deputy Chief of the Geotechnical Branch in the Corps' New Orleans District (and a fact witness in the *Robinson* case), after questioning whether the guidelines were official Corps' materials, testified:  "This document from Kansas City gives a very specific definition of what a critical area is. . . .  And I do not think that definition applies to the Lower Ninth Ward. . . .  [W]hen the Kansas City District put this document together . . . they did that with their levees and their structures in mind."[21]  Even  Plaintiffs'  Counsel acknowledged on the record that the "guys in Kansas City" created the guidelines to determine,

---

20    Pls.' Mem. at 6-7.  At least one Corps' witness, when presented with the Kansas City Guidelines, questioned whether the guidelines were official Corps materials at all.  See Varuso at 156:21-25 [Ex. C] ("It's accessible if you're saying it's on the Internet.  But it doesn't appear to be an official Corps of Engineers document.  It doesn't have an official . . . designation to it.").

21    Varuso at 165:5-166:22 [Ex. C]; see id. at 158:23-159:18, 169:1-9, 195:9-196:8.

954546v.1

"for them," what should be considered when proposing work near a hurricane protection structure.[22]   In addition to the questionable assumption that hurricane protection structures might exist in the Kansas City District, there is no demonstrable connection between these "guidelines" and the facts in this litigation.   Thus, the Kansas City Guidelines are irrelevant and should be excluded under Rule 402.[23]

G.   **WGII's Demonstrative Exhibits 13 & 14**

Plaintiffs take issue with WGII's Demonstrative Exhibits 13 and 14 because the two maps "were not presented, nor even mentioned, in [WGII's] moving papers."[24]   First, as WGII made clear during its argument, these maps were provided to the Court for context as to the layout of the EBIA and the locations of the lift station and wedding cake excavations; they are not material to WGII's Summary Judgment Motion.[25]   Nevertheless, the aerial photograph is publicly available at the Louisiana Atlas website, a geographic information systems repository maintained by Louisiana State University.[26]   Moreover, these demonstratives appear to use the

---

22   Id. at 171:21-24 (emphasis added).

23   Lastly, Plaintiffs' argument that the Kansas City Guidelines were offered merely as an example of what the Corps' specifications for backfill and compaction on Task Order 26 "should have looked like" is beside the point.  See Hearing Tr. at 87; Pls.' Mem. at 6-7. The case law in this Circuit is clear that such "could have" or "should have" arguments are not relevant to the analysis under the government contractor defense.  See Reply Br. (Doc. No. 16303) at 6-7.

24   Pls.' Mem. at 7.

25   See Hearing Tr. at 30 ("That [Slide 13] has to do with merits, really, but I just want Your Honor to keep that in mind.").

26   See http://atlas.lsu.edu.

very same aerial photograph that Dr. Robert Bea, Plaintiffs' Expert in *Robinson*, repeatedly used in his Expert Report.[27]

Second, the location of the wedding cake excavation on slide 13 comes from a sketch of the "Boland Marine Subsurface Foundations," which was identified and authenticated by Mr. Guillory during his 30(b)(6) deposition.[28]  Similarly, the location of the sewer lift station on the map comes from a Construction Water System Plan that both WGII and the United States produced to Plaintiffs in this litigation, and which was an exhibit in Mr. Guillory's deposition.[29]  More importantly, however, the approximate locations of both these excavations at the EBIA are independently supported by undisputed testimony from the Corps' 30(b)(6) witness, and this testimony was attached to WGII's Summary Judgment Brief.[30]

---

27   Technical Report No. IV, Dr. Robert Bea and Rune Storesund, July 11, 2008, in *Robinson v. United States*, No. 06-2268, at 12-14, 17 [attached as Ex. D hereto].

28   See Boland Marine Subsurface Foundations Sketch [attached as Ex. E hereto].  Mr. Guillory testified that the relevant "sketch or map," labeled Guillory Exhibit 42, was "developed by Washington Group and given to the Corps."  Guillory II at 114:9-23 [Def.'s Ex. 6].  He furthered identified the wedding cake structure as the item on the sketch marked "southern block."  Id. at 114:25-115:8.

29   The copy of the Construction Water System Plan found in the Corps' files was attached to a January 2001 letter from Dennis O'Conner (WGII) to Brian Keller (Corps-NOD) "in response to [Mr. Keller's] questions regarding the work to be performed by [WGII] at the East Bank Industrial Area, Inner Harbor Navigation Canal."  See Ltr. from D. O'Conner, Jan. 17, 2001, at NCS-005-000000397 [attached as Ex. F hereto] (Construction Water System Plan, dated Aug. 28, 2000).  Mr. Guillory testified that he received a copy of this letter and its attachments in January 2001.  See Guillory II at 70:10-71:6 [Def.'s Ex. 6] (referring to Guillory Deposition Exhibit 23).

30   See WGII Summ. J. Mot. (Doc. No. 15861-2) at 24 n.145, 27 n.163.  Mr. Guillory testified that the sewer lift station was located "at the corner of Saucer Marine and Mayer Yacht," Guillory I at 83:2-6 [Def.'s Ex. 17], and was "approximately 80 to 100 feet away from the [flood]wall."  Guillory II at 132:12-23 [Def.'s Ex. 6].  Mr. Guillory also testified that the wedding cake excavation was located at the Boland Marine site, approximately 100 to 150 feet away from the floodwall.  Id. at 114:9-115:20.

H.      <u>**WGII's Reference to its Summary Judgment Exhibit 61**</u>

Plaintiffs' belated attack on Exhibit 61 to WGII's Motion for Summary Judgment (Mr. Guillory's handwritten notes demonstrating specific input to backfill specifications) simply is inaccurate.  First, as noted in WGII's Motion for Summary Judgment, the Corps' 30(b)(6) witness and Contracting Officer Representative on Task Order 26 established a foundation for the authenticity and admissibility of Exhibit 61.[31]  Second, the Plaintiffs' unsupported statement that the draft was a "Corps inner-office memo that did not include any WGI personnel" is flatly contradicted by Mr. Guillory's testimony, which acknowledges that the draft was sent to Dennis O'Conner, WGII's project manager.[32]

Finally, Plaintiffs' argument that Summary Judgment Exhibit 61 "does not in any way address the potential for underseepage of the adjacent floodwalls" is irrelevant.[33]  As WGII already explained in its Reply Brief to the Court, Plaintiffs cannot defeat application of the government contractor defense by merely arguing about what type of specifications the Corps "should have" approved for use on Task Order 26.[34]  The only relevant consideration here is whether the Corps, in its discretion, actually considered and approved specifications that addressed the feature of WGII's work that Plaintiffs challenge.  The undisputed evidence is that it did.[35]  This approval was no "rubber stamp."

---

31      Guillory II at 100:20-102:3 [Def.'s Ex. 6].

32      Id. at 101:15-25.

33      Pls.' Mem. at 9.

34      See Reply Br. (Doc. 16303) at 6-7.

35      See id. at 8-11.

954546v.1

When the additional smoke is dispelled, it remains clear that WGII, a contractor for the United States, faithfully performed its work in the EBIA in compliance with reasonably precise specifications, approved by knowledgeable representatives of the Corps prior to the beginning of the work.  Further, there is no legitimate argument that WGII knew of any hazard or danger not known by the Corps.  The government contractor defense applies.  WGII's Motion for Summary Judgment should be granted.

Dated:          November 21, 2008              Respectfully submitted,


                                               /s/ Heather S. Lonian
                                               William D. Treeby, Bar No. 12901
                                               Heather S. Lonian, Bar No. 29956
                                               STONE PIGMAN WALTHER WITTMANN L.L.C.
                                               546 Carondelet Street
                                               New Orleans, LA 70130
                                               Phone:  504-581-3200
                                               Fax:  504-581-3361

                                               Of Counsel:
                                               Adrian Wager-Zito
                                               Debra S. Clayman
                                               JONES DAY
                                               51 Louisiana Avenue, N.W.
                                               Washington, D.C. 20001-2113
                                               Phone:  1-202-879-3939
                                               Fax: 1-202-626-1700

                                               Attorneys for Defendant
                                               Washington Group International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Opposition to Motion of the MRGO PSLC to Admit Demonstrative Exhibits has been served upon all counsel of record by electronic notice via the Court's CM/ECF system, this 21st day of November, 2008.


*/s/ Heather S. Lonian*
Heather S. Lonian

- 13 -

954546v.1