# **Exhibit 31**

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE: KATRINA CANAL BREACHES   * CIVIL ACTION

                                * NO. 05-4182

PERTAINS TO: BARGES             * Consolidated

                                * SECTION "K(2)"

Boutte v. Lafarge        05-5531 *

Mumford v. Ingram        05-5724 * JUDGE DUVAL

Lagarde v. Lafarge       06-5342 *

Perry v. Ingram          06-6299 * MAG. WILKINSON

Benoit v. Lafarge        06-7516 *

Parfait Family v. USA    07-3500 *

Lafarge v. USA           07-5178 *

   *  *  *  *  *  *  *  *  *  *  *


        Deposition of JIMMIE DONNELL HARRIS,

given at Chaffe McCall, L.L.P., 2300 Energy

Centre, 1100 Poydras Street, New Orleans,

Louisiana 70163-2300, on August 4th, 2008.



REPORTER BY:

        JOSEPH A. FAIRBANKS, JR., CCR, RPR

        CERTIFIED COURT REPORTER #75005

### Page 14

1  Q. Well, do you have any idea what
2  observations you made during the storm that you
3  might be asked to testify about in this case?
4  A. Yes.
5  Q. And what observations would those be?
6  A. The devastation of the area that was
7  destroyed.
8  Q. Okay. During the storm, where were
9  you physically located?
10  A. Children's Hospital.
11  Q. And where is Children's Hospital?
12  A. Tchoupitoulas and Henry Clay Street.
13  Q. That location is not in the Lower
14  Ninth Ward, correct?
15  A. Correct.
16  Q. And if I'm right, that location is
17  near the river on the west side of the
18  Industrial Canal, correct?
19  A. Correct.
20  Q. From that location were you able to
21  see devastation in the Lower Ninth Ward during
22  the storm?
23  A. No.
24  Q. Are there any other observations
25  during the storm that you expect to testify

### Page 15

1  about?
2  A. No.
3  Q. What observations after the storm do
4  you expect to testify about?
5  A. The devastation of my home and many
6  homes around my home.
7      MR. GILBERT:
8          Let me just object to the line of
9          questioning because it does call for
10         him to speculate as to what counsel
11         will ask him when he's on the witness
12         stand.
13         But subject to the objection you
14         can answer.
15  EXAMINATION BY MR. RAFFMAN:
16  Q. Apart from the devastation of your
17  home and many areas around your home, are there
18  any other observations after the storm that you
19  expect to testify about?
20  A. No.
21  Q. When is the first time that you
22  returned to your home after the storm?
23  A. I don't have the exact time, but it
24  was maybe between a month or two after the
25  storm.

### Page 16

1  Q. Returning your eyes to the witness
2  list that's in front of you, the next topic on
3  that list says, evacuation and displacement.
4      Do you see that under your name?
5  A. Yes.
6  Q. What would you expect to testify about
7  regarding evacuation and displacement?
8  A. I had to evacuate my home, my family
9  had to evacuate, and all of us was displaced
10 from our home.
11 Q. When did your family evacuate your
12 home?
13 A. Sunday morning prior to the storm.
14 Q. How long was your family displaced?
15 A. Close to three years.
16 Q. Has your family returned to your home
17 now?
18 A. Yes.
19 Q. When did your family return to your
20 home?
21 A. The 31st of May of this year.
22 Q. Are there any other subjects regarding
23 evacuation and displacement that you would
24 expect to testify about?
25     MR. GILBERT:

### Page 17

1          Continuing objection.
2  A. Not that I can recall right now.
3  EXAMINATION BY MR. RAFFMAN:
4  Q. The next item on this witness list
5  under your name is destruction of areas and
6  things within class geography.
7      Do you see that?
8  A. Yes.
9  Q. Do you know what the class geography
10 is?
11 A. No.
12 Q. What do you expect to testify about
13 regarding destruction of areas and things?
14 A. Only what I know.
15 Q. And that would have been your
16 observations of the destruction of your home
17 and areas around your home?
18 A. Yes.
19 Q. And is there anything else besides
20 that that you would expect to testify about?
21 A. Not that I can recall right now.
22 Q. The next item on the witness list
23 under your name is destruction of properties
24 within the class area.
25     Do you know what the class area is?

Page 18

1    A.  I assume I do, yes.
2    Q.  What is the class area?
3    A.  The area within that area where I
4  lived.
5    Q.  Okay.
6    A.  Can you clarify?
7    Q.  Well, the plaintiffs have alleged a
8  class area, and I want to get a sense of the
9  area that you have knowledge about.  So when
10 you say the area where you lived, can you give
11 me some sense of what streets or areas would be
12 the boundaries of that?
13   A.  From Chartres Street to Florida
14 Avenue, from Jourdan Avenue to Delery Street.
15   Q.  And that's the area within which you
16 observed destruction and devastation, as you
17 put it.
18   A.  Yes.
19   Q.  The last item on the witness list
20 under your name says emotional damages due to
21 all of the foregoing.
22       Do you see that?
23   A.  Yes.
24   Q.  Do you understand that the foregoing
25 refers to the other subjects that are listed

Page 19

1  under your name on this witness list?
2    A.  Yes.
3    Q.  And whose emotional damages would you
4  expect to testify about?
5    A.  Mine's.
6    Q.  I'm sorry.  I didn't hear you.
7    A.  Mine's.
8       (Off the record.)
9  EXAMINATION BY MR. RAFFMAN:
10   Q.  Mr. Harris, is it fair to say, then,
11 that the source of your emotional distress was
12 the evacuation and displacement and the
13 destruction of property?
14   A.  Yes.
15   Q.  What is your current address?
16   A.  924 Lamanche Street.
17   Q.  When were you born?
18   A.  December 6th, 1966.
19   Q.  Where were you born?
20   A.  New Orleans, Louisiana.
21   Q.  Have you lived in New Orleans -- well,
22 before Hurricane Katrina had you lived in New
23 Orleans all your life?
24   A.  Yes.
25   Q.  Since the storm, where have you lived?

Page 20

1    A.  In New Orleans.
2    Q.  You've been here continuously
3  throughout.
4    A.  Yes.
5    Q.  Are you married?
6    A.  Yes.
7    Q.  What's your wife's name?
8    A.  April W. Harris.
9    Q.  When did you and she get married?
10   A.  January, 1991.
11   Q.  Do you and she have any children?
12   A.  Yes.
13   Q.  How many?
14   A.  Two.
15   Q.  And who are they?
16   A.  Abrielle Danielle Harris and Jameka
17 Janae Harris.
18   Q.  What is Abrielle's birth date?
19   A.  July 31st, 1991.
20   Q.  What is Jameka's birth date?
21   A.  August 15th, 1984.  I have a
22 correction on our wedding date.  It was '89,
23 not '91.  I'm sorry.  My wife will beat me for
24 that.
25   Q.  Were both your daughters living with

Page 21

1  you at the time of Hurricane Katrina?
2    A.  No.
3    Q.  Okay.  At the time of Hurricane
4  Katrina, were either of your daughters living
5  with you?
6    A.  Yes.
7    Q.  Which daughter was living with you at
8  the time of Katrina?
9    A.  Abrielle.
10   Q.  Where was your daughter Jameka living
11 at the time of Katrina?
12   A.  In an apartment in New Orleans East.
13   Q.  Before you married April W. Harris had
14 you been married previously?
15   A.  Yes.
16   Q.  To whom had you been married?
17   A.  Dana Lynn Simms.
18   Q.  When did you and Ms. Simms get
19 married?
20   A.  When did we get married?
21   Q.  Yes, sir.
22   A.  Gosh, 1985.  I don't remember the
23 exact month.
24   Q.  And when did that marriage end?
25   A.  October, 1987.

Page 130

1   verification. And is Exhibit 14 dated on or
2   around May 23rd, 2008?
3      A.  Yes.
4      Q.  And you signed it?
5      A.  Yes.
6      Q.  And before signing it you reviewed
7   written discovery responses that were made on
8   your behalf, right?
9      A.  Yes.
10     Q.  When you reviewed them you didn't
11  notice anything that caused you to be unable to
12  verify the correctness of what was there,
13  right?
14     A.  Yes.
15     Q.  You thought everything in the
16  documents you read was true and correct as you
17  understood it.
18     A.  Yes.
19     Q.  And when you read the discovery
20  responses did you pay particular attention to
21  the ones that had your name on them?
22     A.  Yes.
23     Q.  Harris 15 is a document that bears the
24  heading Supplemental Answers to Interrogatories
25  Propounded by Barge Entities and dated 24th of

Page 131

1   January, 2008. I'm going to point your
2   attention to the answer to Interrogatory
3   Number 26 which asks for each individual
4   plaintiff, identify every injury or harm for
5   which damages are sought by that person. And
6   it goes on from there. And I've tabbed a page
7   for you. Have a look at that. (Tendering.)
8         Was this answer one of the answers
9   that you reviewed before you signed the
10  verification?
11     A.  Yes.
12     Q.  The answer to this interrogatory lists
13  a number of elements of damage that you seek
14  damages for; right?
15     A.  Yes.
16     Q.  And when it says seeks damages, do you
17  understand that that means that you're seeking
18  monetary compensation?
19     A.  Explain it to me.
20     Q.  That you would like to be paid an
21  amount of money for the items of damages which
22  are listed here.
23     A.  Okay. Yes.
24     Q.  So you want to be paid money for past
25  and future mental, pain, suffering and anguish,

Page 132

1   correct?
2      A.  Yes.
3      Q.  And you want to be paid money for past
4   and future mental health care expense, right?
5      A.  Yes.
6      Q.  And you want to be paid money for past
7   and future loss and destruction of and damage
8   to immovable and movable property, right?
9      A.  Yes.
10     Q.  And you want to be paid money for past
11  and future loss of immovables and movables.
12     A.  Yes.
13     Q.  Another item is you want to be paid
14  for past and future expenses for demolition and
15  salvage of immovable and movable property;
16  right?
17     A.  Yes.
18     Q.  Another one is that you want to be
19  paid money for diminution of property value.
20     A.  Yes.
21     Q.  Another item of your damages that
22  you're claiming is past and future loss of
23  enjoyment of lifestyle, correct?
24     A.  Yes.
25     Q.  Another item of damage is

Page 133

1   inconvenience, right?
2      A.  Yes.
3      Q.  And then another one here, it says any
4   and all others proven. Do you see that item
5   there?
6      A.  Yes.
7      Q.  Do you, as you sit here today, know of
8   any and all other elements of damage for which
9   you're seeking compensation in this case?
10     A.  No.
11     Q.  Do you know from whom you are seeking
12  those damages?
13     A.  Not exactly, no.
14     Q.  Tell me as best you can your
15  understanding of from whom you're seeking these
16  damages.
17     A.  From whatever -- whomever had the
18  ownership of the barge.
19     Q.  And you are not seeking damages in
20  this case from anybody other than somebody who
21  is responsible for the barge; right?
22     A.  Yes.
23        MR. WEBB:
24            Objection to the vague and
25        ambiguous nature of the question.

Page 154

1    Q.  When did you first hire a lawyer to
2  sue the barge defendants on your behalf, if you
3  remember?
4    A.  I don't remember.
5    Q.  How did you come to hire a lawyer to
6  sue the barge defendants?
7    A.  I don't remember exactly how I arrived
8  at that position, I don't remember.
9    Q.  Have you attended any of the court
10 hearings in this case?
11   A.  No.
12   Q.  Did you attend a trial of Ingram and
13 Domino?
14   A.  No.  No.
15   Q.  Have you attended any of the
16 depositions of anybody in this case?
17   A.  No.
18   Q.  Apart from the interrogatory answers
19 that you verified, have you reviewed any court
20 documents for the purpose of commenting on
21 them?
22   A.  No.
23   Q.  Describe for me, if you will, your
24 participation, if any, in the direction and
25 control of this litigation.

Page 155

1    A.  I don't understand.  I don't --
2    Q.  Do you participate in the direction
3  and control of the lawsuit against the barge
4  entities?
5    A.  I haven't.  No, I haven't.
6    Q.  Do you understand that you've been
7  proposed as a class representative in this
8  case?
9    A.  Yes.
10   Q.  All right.  What is your understanding
11 of what it means to be a class representative?
12   A.  To be one of the representatives to
13 sit forward and explain my losses, what
14 happened to me during the flood.
15   Q.  Do you know which classes or
16 subclasses you're being proposed to represent?
17   A.  No.
18   Q.  Do you want the Court to certify you
19 as a class representative?
20   A.  Yes.
21   Q.  Why do you want the Court to do that?
22   A.  Because someone have to present what
23 happened to the whole community as a whole.
24 Someone have to be what we call a mouthpiece,
25 to speak out.  I'm just one of them.

Page 156

1    Q.  If the Court decides that this case
2  cannot be a class action, would you go ahead
3  with your suit on an individual basis?  Would
4  that be your intention?
5    A.  Maybe.
6    Q.  You wouldn't rule it out.
7    A.  No.
8    Q.  Has anybody other than a lawyer asked
9  you to be a class representative in this case?
10   A.  No.
11   Q.  Have you ever served as a class
12 representative in any other lawsuit?
13   A.  No.
14   Q.  What understanding do you have, if
15 any, about how the expenses of this lawsuit for
16 the plaintiffs --
17   A.  I don't have any.
18   Q.  All right.  I need to finish my
19 question because I didn't finish it.  But then
20 I know what your answer is.  What understanding
21 do you have, if any, about how the expenses of
22 this lawsuit for the plaintiffs are being
23 borne?
24   A.  I don't know.
25   Q.  Have you paid any expenses up until

Page 157

1  now for the cost of this lawsuit?
2    A.  No.
3    Q.  Have you ever filed for bankruptcy?
4    A.  No.
5    Q.  Have you ever been subject to a
6  retraining order?
7    A.  No.
8    Q.  Have you ever been convicted of a
9  crime other than traffic offense?
10   A.  No.
11      (Off the record.)
12 EXAMINATION BY MR. RAFFMAN:
13   Q.  Where did your family do its grocery
14 shopping before the storm?
15   A.  In Chalmette, right in the
16 neighborhood.  Judge Perez is right there,
17 um -- ten minutes from the house.
18   Q.  I have no other questions.
19      MR. GILBERT:
20         Does the American Club in
21      attendance at this deposition for
22      discovery purposes have any questions?
23      MR. KITTO:
24         No questions.
25      MR. GILBERT:

40 (Pages 154 to 157)