# **<u>Exhibit 32</u>**

RICHE, MICHAEL

8/6/2008

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


IN RE: KATRINA CANAL BREACHES   * CIVIL ACTION

                                * NO. 05-4182

PERTAINS TO: BARGES             * Consolidated

                                * SECTION "K(2)"

Boutte v. Lafarge      05-5531 *

Mumford v. Ingram      05-5724 * JUDGE DUVAL

Lagarde v. Lafarge     06-5342 *

Perry v. Ingram        06-6299 * MAG. WILKINSON

Benoit v. Lafarge      06-7516 *

Parfait Family v. USA  07-3500 *

Lafarge v. USA         07-5178 *

   *  *  *  *  *  *  *  *  *  *  *


        Deposition of MICHAEL JOSEPH RICHE,

given at Chaffe McCall, L.L.P., 2300 Energy

Centre, 1100 Poydras Street, New Orleans,

Louisiana 70163-2300, on August 6th, 2008.



REPORTER BY:

        JOSEPH A. FAIRBANKS, JR., CCR, RPR

        CERTIFIED COURT REPORTER #75005

RICHE, MICHAEL

8/6/2008

Page 170

1    A. Yes.
2    Q. Is there anything associated with that
3 item of damages other than what you've
4 testified about today?
5    A. Well, yeah, like we used to be able to
6 go on vacation every year, which we haven't
7 gone on vacation since the storm because we
8 can't afford it. You know, our lifestyle has
9 completely changed.
10    Q. Is part of the change in your
11 lifestyle that you no longer live in your
12 neighborhood with all your neighbors on Charles
13 Drive?
14    A. That's part of it, yeah.
15    Q. Inconvenience is the next item on your
16 list. You see that?
17    A. Yes.
18    Q. Is there anything about inconvenience
19 that you want to add to what you've testified
20 about earlier today?
21    A. No.
22    Q. The last item on your list there, do
23 you see that it says any and all others proven?
24    A. Yes.
25    Q. Are there any other element of damages

Page 171

1 for which you seek compensation in this
2 lawsuit?
3    A. Not that I know of.
4    Q. You understand this is lawsuit is
5 filled as a class action.
6    A. Right.
7    Q. And you're being deposed today as a
8 prospective class representative. Do you
9 understand that?
10    A. Right.
11    Q. What is a class representative?
12    A. That's, um -- one who represents --
13 like myself, a small businessman in
14 St. Bernard, I'm representing the other
15 business people in St. Bernard.
16    Q. So you represent Wal-Mart?
17    A. No way.
18    Q. You're not a representative for
19 Wal-Mart.
20    A. No way.
21    Q. And you sort of smile and laugh when
22 you say that. Why do you smile and laugh when
23 you say that?
24    A. Because we're not in the same
25 ballpark.

Page 172

1    Q. And when you say you're not in the
2 same ballpark, what do you mean by that?
3    A. Let's see. What can I compare that
4 to? I guess New York City with Chalmette.
5    Q. New York is bigger than Chalmette?
6    A. Yeah. Money and big and all.
7    Q. Wal-Mart is bigger than you?
8    A. A little bit, yeah.
9    Q. You, as a small business person,
10 wouldn't purport to represent the interests of
11 a much larger business such as a Wal-Mart.
12    A. No.
13    Q. Are there grocery stores and gas
14 stations in the class area?
15    A. Um -- there were some, yeah. Are they
16 now?
17    Q. Before the storm, were there?
18    A. Before the storm, yeah. Yeah. There
19 were.
20    Q. These are businesses who are not
21 necessarily subject to the kinds of business
22 upturns and downturns that you've had?
23    A. Not as extreme as I have, but I'm
24 sure -- you know, my dad used to have a corner
25 grocery store, too, and when times were tough

Page 173

1 you could feel it even in the grocery store.
2    Q. Their experience of an economic
3 downturn would not be the same as yours; right?
4    A. I can't say that.
5    Q. You don't know.
6    A. No.
7    Q. Are there any manufacturing plants or
8 operations in the class area?
9    A. Um -- there may have been. I can't
10 think of any offhand. I don't know if you'd
11 call like a sugar refinery and, um -- what is
12 that, Mobil or whatever the refinery is on the
13 east side -- or west side of Paris Road, and,
14 um -- I don't know if that might have been some
15 gutter shops or something like that, you know,
16 T-shirt shops, I don't know if you call that
17 manufacturing, that did the screen printing,
18 you know.
19    Q. Are those businesses that you as an
20 owner of a small business in Chalmette would
21 represent in a class action?
22    A. The small ones, yeah. Again, I
23 couldn't represent the refinery or the -- the
24 sugar refinery or the oil refinery. But like
25 the T-shirt shops, the silk screening and all,

RICHE, MICHAEL

8/6/2008

---

Page 174

1    yeah, they'd be a mom and pop type operation.
2        Q.  So your understanding of being a class
3    representative is that you're comfortable
4    representing other mom and pop type operations
5    in Chalmette.
6        A.  Yes.  Yes.
7        Q.  How did you come to be a proposed
8    class representative; how did that happen?
9        A.  When I filled out the forms for the
10   lawyers they asked me if I would be willing to
11   be a representative.
12       Q.  And you put down that you would.
13       A.  Yes.
14       Q.  Somebody called you and you had a
15   discussion -- I don't want to hear what you
16   said to and from, because I'm going to get an
17   instruction from Mr. Wiedemann.  But there was
18   a communication between you and someone else in
19   which you confirmed you were willing to do
20   that.
21       A.  Yes.
22       Q.  What's your understanding of your
23   duties as a class representative?
24       A.  To do the things we're doing today.
25       Q.  Giving a deposition?

Page 175

1        A.  Right.  Giving a deposition, providing
2    whatever information I can provide to tell them
3    my story.
4        Q.  Is there anything else?
5        A.  No.
6        Q.  Do you have any understanding about a
7    duty to supervise and direct the litigation in
8    any way?
9        A.  No.
10       Q.  You have not supervised or directed
11   the litigation in any way, have you?
12       A.  No.
13       Q.  Have you attended any of the court
14   hearings in the case?
15       A.  No.
16       Q.  Have you offered comments on any of
17   the court documents that have been filed, apart
18   from your interrogatory answers?
19       A.  No, just my part.
20       Q.  When you say just your part, it's
21   those answers that pertain specifically to you,
22   Mr. Riche.
23       A.  Right.
24       Q.  If the Court decides that this case
25   cannot proceed as a class action, would you

Page 176

1    nonetheless continue with your lawsuit to seek
2    compensation for the losses that you have
3    identified in your interrogatory responses?
4        A.  I'd have to consult with the
5    attorneys.  I'm a ribbon salesman, not an
6    attorney.
7        Q.  You might fold up your tents and go
8    away, but you just don't know?
9        A.  I don't know.
10       Q.  Have you ever served as a class
11   representative in any other lawsuit?
12       A.  No.
13       Q.  Do you have any understanding about
14   who bears the expenses of this lawsuit?
15       A.  Yes.
16       Q.  Do you understand that you may bear
17   any of those expenses?
18       A.  Yes, that's what I'm told.
19       Q.  What expenses might you bear?
20       A.  I don't know.
21       Q.  Have you borne any expenses so far?
22       A.  No.
23       Q.  Have you ever been convicted of a
24   crime other than a traffic offense?
25       A.  No.

Page 177

1        Q.  Have you ever been subject to a
2    restraining order?
3        A.  No.
4        Q.  Let me direct your attention back very
5    briefly to Riche Exhibit 7.  (Tendering.)
6    There is an item -- second item down, do you
7    see where it says -- this is on Riche 000014.
8    There is an entry there that says Temporary
9    Retraining Order Number 87116 against Michael
10   J. Riche dated and recorded March 3rd, 1999.
11   Can you tell us what that's about?
12       A.  I guess that's when we were divorced.
13   I didn't even go to the house, and apparently
14   she put a restraining order on me.  I didn't
15   even remember it.
16       Q.  You don't remember one way or the
17   other what happened.
18       A.  No.  Like I said, we were divorced and
19   I didn't even go to the house.  Well,
20   apparently she put a restraining on order on
21   me.  I don't know why.
22       (Brief recess.)
23       MR. RAFFMAN:
24           All right.  On the record, I
25       don't have any other questions at this

45 (Pages 174 to 177)