# Exhibit 33

Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

IN RE:   KATRINA CANAL BREACHES      CIVIL ACTION
CONSOLIDATED LITIGATION
                                     NO. 05-4182
                                        "K" (2)

PERTAINS TO:   BARGE                 JUDGE DUVAL

                                     MAG. WILKINSON


BOUTTE V. LAFARGE           05-5531
MUMFORD V. INGRAM           05-5724
LAGARDE V. LARFARGE         06-5342
PERRY V. INGRAM             06-6299
BENOIT V. LAFARGE           06-7516
PARFAIT FAMILY V. USA       07-3500
LAFARGE V. USA              07-5178


     DEPOSITION OF HERMAN HILTON KOCH,
506 Country Club Drive, Picayune, Mississippi
39466, taken in the offices of Chaffe, McCall,
2500 Energy Centre, 1100 Poydras Street, New
Orleans, Louisiana 70163, on Friday, August 8,
2008.

KOCH, HERMAN

8/8/2008

Page 218

1  on that house, including contractors,
2  materials, labor, everything.
3      Q.  Has your wife prepared a worksheet
4  tabulating the totals for each of the
5  properties?
6      A.  I think she did.  I am not sure, but
7  I think she did tab a worksheet and she's got
8  that figure.
9      Q.  All right.  So you believe your wife
10 has a worksheet from which I can determine
11 your total repair costs for each of these
12 properties?
13     A.  Yes, I'm almost sure she does.
14         MR. BLANCHARD:
15            Well, Karl, we haven't received
16       those worksheets.  So I am going to
17       request those as well.
18         MRS. AIDA KOCH:
19            I just want to say one thing.
20         MR. WIEDEMANN:
21            No.  No, ma'am, no.
22         MRS. AIDA KOCH:
23            No?
24         MR. BLANCHARD:
25            No.

Page 219

1  EXAMINATION BY MR. BLANCHARD:
2      Q.  Have you been able to repair your
3  properties for less than the insurance
4  proceeds that you received?
5      A.  That, I couldn't tell you, because I
6  don't know what I really got from the
7  insurance and what it cost for the properties
8  to be repaired.  I'd have to refer to my wife
9  and ask her that question.
10     Q.  So she's a better person to go to
11 for that?
12     A.  She's a better person with numbers
13 and figures than I am.
14     Q.  So after I look at these insurance
15 files that you have and her worksheets I
16 should be able to determine that?
17     A.  You should be able to determine
18 that.
19     Q.  Mr. Koch, do you know what a class
20 action is?
21     A.  Let see.  A class action is a group
22 of people to form a lawsuit.  Right?
23     Q.  Is that your understanding?
24     A.  Well, it's a group of people that
25 has one aim in mind, is to form a lawsuit

Page 220

1  against a company.  Right?
2      Q.  Do you understand that you're a
3  class representative in this lawsuit?
4      A.  Yes, I do.
5      Q.  When did you learn that you'd be a
6  class representative?
7      A.  Oh, sometime back.  I don't know the
8  exact date.  But it was the first time that I
9  went to see Brian Gilbert's office that he
10 told me he picked me as a class representative
11 for the lawsuit.
12     Q.  Did you have a prior relationship
13 with Mr. Gilbert before you saw him?
14     A.  No, I did not.
15     Q.  Have you ever retained Mr. Gilbert
16 in any lawsuit other than the one we're here
17 for today?
18     A.  No, I have not.
19     Q.  Have you ever retained Mr. Wiedemann
20 in any lawsuit other than the one we're here
21 for today?
22     A.  No, I have not.
23     Q.  Who do you understand you are
24 representing in this case?
25     A.  I am representing the people that

Page 221

1  got flooded.  As I said, I am representing the
2  people that got flooded in the Lower Ninth
3  Ward and in St. Bernard Parish.
4      Q.  Have you been a class representative
5  in any other lawsuit?
6      A.  No, I haven't.
7      Q.  Are you a class representative in
8  the lawsuit filed by your New York lawyer?
9      A.  No, I am not.
10     Q.  You told me earlier that you
11 estimated your property damage claim at
12 $700,000; right?
13     A.  Right.
14     Q.  And your personal injury claim at
15 $50,000; right?
16     A.  Yes.
17     Q.  So your total claim you believe is
18 $750,000?
19     A.  Yes.
20     Q.  If the Court in this case decides
21 that this case cannot go forward as a class
22 action, will you be continuing this lawsuit in
23 an individual capacity?
24     A.  That, I don't know.  I haven't made
25 up my mind yet.

56 (Pages 218 to 221)

Johns Pendleton Court Reporters                              800 562-1285

Page 222

1   Q.  Have you spoken to any other class
2   members in this lawsuit?
3   A.  No, I haven't.
4   Q.  Have you talked to any class
5   representatives in this lawsuit?
6   A.  No.
7   Q.  Do you know the names of any other
8   class representatives?
9   A.  No, I don't.
10  Q.  Do you know whether or not you're
11  representing different subclasses in this
12  case?
13  A.  Subclasses?  Can you define
14  "subclasses" for me?
15  Q.  What sort of damage claims do you
16  think you are representing the class on in
17  this case?
18  A.  What is -- Yeah, but you never told
19  me what is a subclasses yet.
20  Q.  Well, I changed the question, Mr.
21  Koch.
22  A.  What do you mean by "subclasses"?
23  Q.  Well, --
24  A.  Well, okay, you changed --
25  Q.  I am striking the question and

Page 223

1   asking you this question.
2   A.  Okay.
3   Q.  You understand you're a class rep in
4   this case; correct?
5   A.  Yes.  Yes.
6   Q.  And for what sort of damages or
7   claims are you representing this class for?
8   A.  For all that the people lost in the
9   storm Katrina and Rita such as their houses,
10  their appliances, their automobiles, and all
11  like that.  This is what I am representing
12  these people for.
13  Q.  Do you understand that there will be
14  expenses associated with this lawsuit?
15  A.  Yes, I do.
16  Q.  Who will be paying those expenses?
17  A.  My lawyers.
18  Q.  By your lawyers, you mean Mr.
19  Wiedemann?
20  A.  Mr. Wiedemann, yes, Karl and
21  Edward.  That's part of it.
22  Q.  Has anyone given you an estimate of
23  the cost of this lawsuit?
24  A.  No.
25  Q.  Do you have any estimate of the

Page 224

1   total costs in this lawsuit?
2   A.  No, I have not.
3   Q.  Is it your understanding that you
4   will have any financial obligations with
5   respect to the costs associated with this
6   lawsuit?
7   A.  No.  I haven't -- As far as them
8   charging me anything, no, they haven't charged
9   me anything.
10  Q.  Have you paid any costs in
11  association with this lawsuit?
12  A.  No.
13  Q.  Have you received any bills for
14  costs associated with this lawsuit?
15  A.  No.
16  Q.  Have you ever filed for bankruptcy?
17  A.  No.
18  Q.  Have you ever been convicted of a
19  crime?
20  A.  No.
21  Q.  Have you ever been subject to a
22  restraining order?
23  A.  No.
24  Q.  How did you come about to hire your
25  lawyers in this case?

Page 225

1   A.  I seen it advertised in the paper or
2   some place.  They were advertising for people
3   that got flooded and -- in the Lower Ninth
4   Ward and in St. Bernard Parish.
5   Q.  And what name do you remember seeing
6   on the ad?
7   A.  I remember seeing Brian Gilbert's
8   name.
9   Q.  What did you do after you saw this
10  ad?
11  A.  Well, he had his name and his -- his
12  phone number and it said to contact him.  So I
13  contacted Brian.  Brian Gilbert.
14  Q.  Have you ever met with Mr. Gilbert?
15  A.  Not prior to that, no.
16  Q.  Well, have you ever met with him at
17  any time?
18  A.  No.
19  Q.  Did you ever meet with Mr. Wiedemann
20  or Mr. Moreno before today?
21  A.  No.
22  Q.  Have you ever had any other
23  conversations over the telephone with Mr.
24  Gilbert other than the first conversation you
25  had?

KOCH, HERMAN

8/8/2008

Page 226

1    MR. WIEDEMANN:
2        Let me just caution the witness
3    not to talk about anything you may
4    have discussed with your attorneys.
5    Subject to that, you can answer the
6    question.
7    THE WITNESS:
8        Would you repeat the question,
9    please?
10   EXAMINATION BY MR. BLANCHARD:
11   Q.  Sure.  I am not asking you for the
12   content of the conversation.  You told me
13   earlier that you had a conversation with Mr.
14   Gilbert after you saw the ad in the paper.
15   A.  Right.
16   Q.  Right?
17   A.  Right.
18   Q.  After that time did you have any
19   other conversations with him over the
20   telephone?
21   A.  Not that I can remember, no.
22   Q.  Do you have a written agreement with
23   your lawyers in this lawsuit?
24   A.  Yes, I think.  Yes.
25   Q.  Did the agreement that you have with

Page 227

1    your lawyers say that those lawyers would
2    represent you with respect to any claims you
3    might have against the United States
4    government?
5    A.  I don't remember having that
6    clause.  It might have, but I don't remember
7    seeing that.  I can't answer that.
8    Q.  Have you ever attended any of the
9    hearings in this case?
10   A.  No.
11   Q.  Did you attend the trial involving
12   Ingram and Domino in this case?
13   A.  No.
14   Q.  Have you attended any depositions in
15   this case other than the one we're here for
16   today?
17   A.  No.
18   Q.  Have you reviewed any of the papers
19   that your lawyers have filed in court?
20   A.  No.
21   Q.  Have you ever seen a copy of the
22   Complaint that was filed on your behalf in
23   court?
24   A.  No.
25   Q.  Mr. Koch, I'm going to show you a

Page 228

1    document previously marked as Exhibit Koch
2    Number 2, which is Supplemental Answers to
3    Interrogatories propounded by Barge Entities.
4    I ask you to take a quick look at that.
5        This is a document that you
6    testified that you reviewed earlier today.  Is
7    that correct?
8    A.  Yes.  Yes.  Uh-huh (affirmatively).
9    Q.  And when you reviewed that document,
10   did you pay particular attention to the
11   portions of it that related to you?
12   A.  Yes, I did.
13   Q.  And when you looked at those
14   particular portions that dealt with you, was
15   the information in those responses accurate?
16   A.  Yes, they were.
17       They have one accusation that, if
18   I can remember right, in one -- it only
19   mentioned that I had one apartment at 8545 and
20   47.  That was the inaccuracy I seen in one of
21   them.  Whereas I had -- it was a duplex and
22   they had it down as a single dwelling.  Now, I
23   don't know which one it was, but I remember
24   one of them --
25   Q.  Other than that, do you remember

Page 229

1    anything else in those responses that was
2    inaccurate?
3    A.  No.  No, I don't.
4    Q.  I'm going to show you an exhibit
5    marked as Koch Number 31, which is a
6    verification form.  Is that your signature on
7    the document marked as Koch Exhibit 31?
8    A.  Yes, that's my signature.
9    Q.  And before you signed that, did you
10   read that verification?
11   A.  Yes, I did.
12   Q.  And when you signed that, did you
13   verify that all of the interrogatory responses
14   that had been provided in this case on your
15   behalf were accurate?
16   A.  Yes.
17   Q.  Mr. Koch, there's a section in that
18   interrogatory related to Interrogatory number
19   26.  Maybe your lawyer can direct that portion
20   to you.
21   A.  26.
22   Q.  You see that, Mr. Koch?
23   A.  Yes.  Yes, I see it.
24   Q.  And that question concerned every
25   item of damages which you seek in this case.

58 (Pages 226 to 229)

Johns Pendleton Court Reporters                                        800 562-1285