LEXSEE 2006 U.S. DIST. LEXIS 60013

CHAZ CONCRETE CO., LLC, GRANT TRUCKING, INC., SWEENEY
ENTERPRISES, INC. d/b/a KENTUCKY TRANSFER LINE, and GREEN RIVER
SEED AND SOD, INC., on behalf of themselves and a class of persons similarly
situated, PLAINTIFFS, v. JAMES C. CODELL, III, Secretary of the Kentucky
Transportation Cabinet, in his personal capacity, and J.M. YOWELL,, Kentucky
State Highway engineer, in his personal capacity, DEFENDANTS.

CIVIL ACTION NO. 3:03-52-KKC

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
KENTUCKY

2006 U.S. Dist. LEXIS 60013

**August 23, 2006, Decided**

**SUBSEQUENT HISTORY:** Summary judgment granted by *Chaz Concrete Co., LLC v. Codell, 2007 U.S. Dist. LEXIS 43387 (E.D. Ky., June 14, 2007)*

**PRIOR HISTORY:** *Chaz Constr., LLC v. Codell, 137 Fed. Appx. 735, 2005 U.S. App. LEXIS 8453 (6th Cir. Ky., 2005)*

**COUNSEL:** [*1] For Chaz Construction, LLC, on behalf of itself and a class of persons similarly situated, Grant Trucking Co., on behalf of itself and a class of persons similarly situated, Chaz Concrete Company, LLC, on behalf of themselves and a class of persons similarly situated, Grant Trucking, Inc, on behalf of themselves and a class of persons similarly situated, Green River Seed and Sod, Inc, on behalf of themselves and a class of persons similarly situated, Sweeney Enterprises, Inc, on behalf of themselves and a class of persons similarly situated doing business as Kentucky Transfer Line, Plaintiff: J. Kent Wicker, Steven S. Reed, Reed Wicker PLLC, Louisville, KY.

For James C. Codell, III, Secretary of the Kentucky Transportation Cabinet in his personal capacity, Defendant: David J. Guarnieri, Joseph Patrick Bowman, William E. Johnson, Johnson, True & Guarnieri, LLP, Frankfort, KY.

For J. M. Yowell, Kentucky State Highway Engineer in his personal capacity, Defendant: Amanda Lester, Bridget L. Dunaway, Taylor, Keller, Dunaway & Tooms, PLLC, London, KY.

Promark, Inc., N.H. Stone, Inc., Olivia Stone, Contractors Corporation, Movant, Pro se.

**JUDGES:** Karen K. Caldwell, United States [*2] District Judge.

**OPINION BY:** Karen K. Caldwell

**OPINION**

**OPINION AND ORDER**

This matter is before the Court on the Motion for Class Certification (Rec. No. 52) filed by the Plaintiffs. This matter has been fully briefed and the parties have been heard. Having considered the briefs, the parties arguments at the hearing and the evidence they have submitted on this issue, for the following reasons, the Court will DENY the motion.

**I. FACTS.**

**A. The DBE Program.**

Plaintiffs are Chaz Concrete Company, L.L.C., Grant Trucking, Inc., Sweeney Enterprises d/b/a Kentucky Transfer Line and Green River Seed and Sod, Inc. They are all companies that have been certified by the

Kentucky Transportation Cabinet (the "Cabinet") as a Disadvantaged Business Enterprise ("DBE"). A DBE is a small business which is at least 51 percent owned and managed by women or minorities who are both socially and economically disadvantaged. (Rec. No. 52, Mem. Supporting Pfs' Mot. for Class Cert. at 2). The DBE program was authorized by Congress in 1983 to assist women and minorities in the construction industry. (Rec. No. 36, Amended Complaint P 17). Congress further authorized the United States Department of Transportation [*3] to promulgate regulations to prevent discrimination in highway construction projects funded by the federal government. *Id.* The US DOT regulations require that 10% of federally-assisted construction contracts be awarded to DBEs. (Rec. No. 36, Amended Complaint P 18).

As a result of prior opinions by this court and the Sixth Circuit in *Chaz Construction, LLC v. Codell, 137 Fed. Appx. 735 (6th Cir. 2005)*, the sole claims remaining in this case are the Plaintiffs' claims against the Defendants James C. Codell III ("Codell") and J.M. Yowell ("Yowell") in their individual capacities. Codell was the Chief Executive Officer of the Cabinet. (Rec. No. 36, Amended Complaint P 8). Yowell was the Cabinet's State Highway Engineer and was responsible for overseeing all highway projects in the state. (Rec. No. 36, Amended Complaint P 9). Neither Codell nor Yowell still work for the Cabinet. In accordance with the proposed class definition offered by Plaintiffs' counsel at the hearing on this matter, the Court assumes that Codell and Yowell worked at the Cabinet from 1996 to 2003.

Plaintiffs assert that the individual Defendants violated the Racketeering Influence and Corrupt [*4] Organizations Act ("RICO"), *18 U.S.C. § 1961, et seq.*, and conspired to violate RICO by operating the Cabinet as an enterprise to commit fraud in the awarding of contracts under the DBE program. (Rec. No. 52, Mem. Supporting Pfs' Mot. for Class Cert. at 1-2).

In a report dated October 19, 2001, an attorney retained by the Cabinet found that the Cabinet had violated both the letter and intent of the DBE program and had participated in fraud related to the program by awarding DBE contracts with the knowledge that the designated DBEs would not be doing the work. (Rec. No. 36, Amended Complaint P 25).

**B. The Civil RICO Action.**

The Plaintiffs contend that the Defendants violated RICO by conducting the Cabinet's affairs through a pattern of "racketeering activity." *18 U.S.C. § 1962(c)*. "Racketeering activity" is defined in *18 U.S.C. § 1961(1)(B)* as any act "indictable" under certain enumerated federal criminal laws, including *18 U.S.C. § 1341* which makes mail fraud a criminal offense. *Central Distributors of Beer, Inc. v. Conn, 5 F.3d 181, 183 (6th Cir. 1993)*. Pursuant [*5] to *18 U.S.C. § 1964(c)*, any person injured in his business or property by a violation of *section 1962* may file suit in federal court to recover the damages he sustained.

"A civil RICO action does not require that there be a prior criminal conviction for the conduct forming the predicate act; however, the conduct used to support a civil RICO action must be *indictable.*" *Central Distributors, 5 F.3d at 183*. Thus, the plaintiff must prove each prong of the predicate offense. *Id. at 183-84*. Moreover, a plaintiff only has standing to pursue a civil RICO action if he has been injured in his business or property by the predicate acts constituting the RICO violation. *Id. at 184*.

The Plaintiffs allege that the Defendants engaged in racketeering activity by committing mail fraud. Thus, to maintain their RICO action, the Plaintiffs must show that the Defendants committed each element of mail fraud. "To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States [*6] mails in furtherance of the scheme; and (3) the defendants did so with specific intent to deceive or defraud." *Id.* (quoting *Schreiber Distributing Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1399-1400 (9th Cir. 1986))*.

To establish standing in a civil RICO case relying on the predicate act of mail fraud, the Plaintiffs must show that the Defendants made misrepresentations or omissions of material fact to each plaintiff and that the plaintiff relied on those misrepresentations or omissions to its detriment. *Id.; See also, Chaz Construction, 137 Fed. Appx. at 738-39* (clarifying that *Central Distributors* does not hold that reliance is a predicate-act requirement but instead holds that a showing of reliance is required to establish standing in a civil RICO case).

The Plaintiffs assert that the Defendants committed fraud in the DBE program by : 1) certifying as DBEs

businesses that were not minority- or women-owned and operated, and 2) permitting DBEs, which actually were minority- or women-owned and operated, not to perform the work or supply the materials for projects as required under their contracts, but to merely "broker" the supply of [*7] work and materials, with the actual work performed by or materials supplied by companies who were not eligible for DBE certification. (Rec. No. 52, Mem. Supporting Pfs' Mot. for Class Cert. at 4).

The Plaintiffs allege they relied on Defendants' alleged misrepresentations that they fairly and legally administered the DBE program; that a business wishing to be certified as a DBE had to comply with the DBE Program requirements; and that if the plaintiffs caused their companies to be certified as DBEs, they would be given an honest chance to compete for contracts administered by the Cabinet. *See Chaz Construction, 137 Fed. Appx. at 739*;(Rec. No. 36, Amended Complaint PP 83- 133).

The Plaintiffs allege that the Defendants made these statements in public speeches, in private meetings with the plaintiffs; and in letters. *Id. at 739*. In its prior opinion in this matter, the Sixth Circuit stated that, "in mail fraud cases, fraudulent statements not contained in the mail, but connected to the scheme are appropriately considered by the court as part of the overall scheme." *Id. at 740*. "As a result, the fact that only some of the claims were [*8] made in the mail does not render the cause of action defective." *Id.*

The Plaintiffs allege that they relied on the Defendants' alleged misrepresentations and consequently expended time and money to obtain DBE certification, to maintain their businesses as DBEs and to bid for contracts under the DBE program. *See Chaz Construction, 137 Fed. Appx. at 740*;(Rec. No. 36, Amended Complaint PP 83- 133). The Sixth Circuit determined that the Plaintiffs allege they were injured by participating in the Cabinet's bidding process. *Chaz Construction, 137 Fed. Appx. at 740*. The Sixth Circuit determined that this injury "arises regardless of whether [the Plaintiffs] would have actually received the contracts in question and is sufficient for standing." *Id.* At the hearing on this matter, however, Plaintiffs' counsel indicated that Plaintiffs seek damages equal to the value of contracts that were awarded to improperly certified DBEs, stating that "[b]ecause of the Racketeering Act, the contracts went to companies that were not properly certified as DBEs, and that hurts the class."

Plaintiffs' counsel further clarified at the hearing that the Plaintiffs [*9] seek "[d]amages for work that went to improper DBEs that should have gone to the plaintiff class." He further stated as to damages that, "I think we're going to have to show that a particular DBE actually took some action to bid on a job, either by bidding or making arrangements with the prime contractor, and yet that job went to one of the four illegitimate DBEs. . . [the class members] are going to have to come to Court and say, 'this job in 2001, I bid on it. This is what I proposed to do, and this is what my profits would have been had this job been awarded to me, as opposed to some other company.'"

The Supreme Court has held that the RICO violation must be the "proximate cause" of plaintiff's injury. *Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)*. More recently, the Supreme Court has clarified that "[w]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 126 S.Ct. 1991, 1998, 164 L. Ed. 2d 720 (June 5, 2006)*.

For purposes of this motion, the Court will accept the legal sufficiency of [*10] the Plaintiffs' RICO claim and the damages they seek.

## II. ANALYSIS.

### A. Rule 23.

The party seeking to certify a class action has the burden of demonstrating that all of the prerequisites of *Rule 23(a)* are met, and that the case falls within one of the subcategories listed in *Rule 23(b)*. *Senter v. General Motors Corp., 532 F.2d 511, 522 (6th Cir. 1976)*.

*Rule 23(a)* provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or

defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Plaintiffs argue that this suit fits within category 3 of *Rule 23(b)* which provides the following:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition. . . (3) the court finds that the questions of law or fact common to the members of the class predominate [*11] over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Fed. R. Civ. P. 23(b)(3)*.

The party seeking class certification has the burden of proof. *In re American Medical Systems, Inc., 75 F.3d 1069, 1079 (6th Cir. 1996)*. This Court must conduct a "rigorous analysis" into whether the prerequisites of *Federal Rule of Civil Procedure 23* are met before certifying a class action. *General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)*. "The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of *Rule 23*." *American Medical Systems, 75 F.3d at 1079*.

In considering a motion for class certification, the court may not inquire into the merits of the claim. *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)*. "The court must accept all of the factual allegations within the complaint as being correct and draw all reasonable inferences from those facts. [*12] " *Mayo v. Sears, Roebuck & Co., 148 F.R.D. 576, 579-80 (S.D. Ohio 1993)*. "[W]hen determining the maintainability of a class action, the district court must confine itself to the requirements of *Rule 23* and not assess the likelihood of success on the merits." *Weathers v. Peters Realty Corp., 499 F.2d 1197, 1201 (6th Cir. 1974)*.

After certification of a class, "the class definition is subject to refinement based upon further development of the record, and can be expanded or contracted if the facts so warrant...." *Boggs v. Divested Atomic Corp, 141 F.R.D. 58, 61- 62 (S.D. Ohio 1991)*. Pursuant to *Rule 23(c)(4)*, "an action may be brought or maintained as a class action with respect to particular issues." *Fed. R. Civ. P. 23(c)(4)(A)*.

"[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon, 457 U.S. at 160*. The Sixth Circuit has stated:

> Mere repetition of the language of *Rule 23(a)* is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement is fulfilled. [*13] Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide. . . The parties should be afforded an opportunity to present evidence on the maintainability of the class action.

*American Medical Systems, Inc., 75 F.3d at 1079* (quoting *Weathers, 499 F.2d at 1200*).

### B. Class Definition.

"Before delving into the 'rigorous analysis' required by *Rule 23*, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Bentley v. Honeywell International, Inc., 223 F.R.D. 471, 477 (S.D. Ohio 2004)*. Important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner. *Id.*

Proper identification of the proposed class services two purposes: it permits the Court to determine whether a class action is [*14] truly the most efficient way of trying the case; and it ensure that those individuals actually harmed by the defendants' wrongful conduct will be the recipients of the awarded relief. *Oshana v. Coca-Cola Company, 225 F.R.D. 575, 580 (N.D. Ill. 2005)*(citing *Simer v. Rios, 661 F.2d 655, 670 (7th Cir. 1981))*. The identities of the class members do not need to be specified for certification, but the proposed class

must be sufficiently definite in order to demonstrate that a class actually exists. *Id.* "Requiring an objectively ascertainable class is important because without one, it will be unclear who is bound by the judgment. . . ." *Rodriguez v. Gates, 2002 U.S. Dist. LEXIS 10654, 2002 WL 1162675 at \*9 (C.D. Cal. 2002)*. "The class definition identifies the persons who are entitled to relief, bound by final judgment, and entitled to notice under *Rule 23(b)(3)*. As such, it implicates substantial due process rights for both class members and the Defendants." *196 F.R.D. 430, 442*.

"Common class certification issues include evaluating proposed classes that are ill-defined or too broad." *McGee v. East Ohio Gas Company, 200 F.R.D. 382, 388 (S.D Ohio 2001)*. [*15] Where extensive factual inquires are required to determine whether individuals are members of a proposed class, class certification is likely improper. *Snow v. Atofina Chemicals, Inc., 2003 U.S. Dist. LEXIS 27295, 2006 WL 1008002 at \* 8-9 (March 31, 2003)*; *Bostick v. St. Jude Med., Inc., 2004 U.S. Dist. LEXIS 29997, 2004 WL 3313614 at \* 16 (W.D. Tenn. 2004)*("an inquiry into the merits of the case should not be required of the court in its determination of whether a person is a member of class").

A proposed class may be deemed overly broad if it "would include members who have not suffered harm at the hands of the Defendant and are not at risk to suffer such harm." *McGee, 200 F.R.D. at 388*. "A properly defined class includes only members who would have standing to bring suit in their own right." *R.C. v Nachman, 969 F.Supp. 682, 695 (M.D. Ala. 1997)*; *see also, Pottinger v. City of Miami, 720 F.Supp. 955, 957 (S.D. Fla. 1989)*("[t]he description of the class is sufficiently definite if any member of the proposed class would have the requisite standing to sue on his own behalf.").

### C. *Rule 23(a)* Factors.

The *Rule 23(a)* factors are commonly referred [*16] to as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

#### 1) Numerosity.

*Rule 23(a)* requires the class to be "so numerous that joinder of all members is impracticable." *Fed. R. Civ. P. 23(a)(1)*. A proposed class meets the numerosity requirement by demonstrating the impracticality, not the impossibility, of joinder. *Fox v. Massey-Ferguson, Inc., 172 F.R.D. 653, 660 (E.D. Mich. 1995)*. There is no magic number or strict test for determining impracticality of joinder. *Senter, 532 F.2d at 523 n.24*.

"When class size reaches substantial proportions. . . the impracticability requirement is usually satisfied by the numbers alone." *American Medical Systems, 75 F.3d at 1079*. Nevertheless, in determining impracticability, the court should also consider the geographical dispersion of the class, the lack of sophistication of the class members and the reluctance of individual class members to sue individually. *See Roman v. Korson, 152 F.R.D. 101, 105-06 (W.D. Mich. 1993)*; *Young v. Trailwood Lakes, Inc., 61 F.R.D. 666, 668 (E.D. Ky. 1974)*. [*17]

"When a class numbers in the hundreds or thousands, the impracticability of joinder is obvious." *Michigan State University Faculty Ass'n v. Michigan State University, 93 F.R.D. 54, 56 n. 1 (W.D. Mich. 1981)*. Classes numbering three hundred or so members are routinely held to satisfy the numerosity requirement. *Id. at 56*. Nonetheless, courts have certified classes as small as 18 members. *Brady v. Thurston Motor lines, 726 F.2d 136, 145 (4th Cir. 1984)*. Some courts hold that "a class of 40 or more members is sufficient to establish numerosity." *Appoloni v. United States, 218 F.R.D. 556, 561 (W.D. Mich. 2003)*. In determining whether to certify a class, it is not necessary for the Court to know the precise number of class members. Instead, the Court may rely upon reasonable inferences drawn from the known facts. *American Medical Systems, 75 F.3d at 1079*.

#### 2) Commonality.

*Rule 23(a)(2)* provides that, in order for a class to be certified, there must be "questions of law or fact common to the class." *Fed. R. Civ. P. 23(a)(2)*. This is because, where there are [*18] common questions of law or fact, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under *Rule 23*." *General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)*(citation omitted).

For the commonality requirement of *Rule 23(a)(2)*, "there need only be a single issue common to all members of the class." *American Medical, 75 F.3d at 1080*. "Although *Rule 23(a)(2)* refers to common questions of law or fact, in the plural, there need only be

one question common to the class -- though that question must be a 'common issue the resolution of which will advance the litigation.'" *Alkire v. Irving, 330 F.3d 802, 820 (6th Cir. 2003)*(quoting *Sprague v. General Motors, 133 F.3d 388, 397 (6th Cir. 1998))*.

Some courts hold that when the legality of the defendant's standardized conduct to the class is at issue, the commonality factor is normally met. *Appoloni, 218 F.R.D. at 561*; *Bentley v. Honeywell International, Inc., 223 F.R.D. 471, 481 (S.D. Ohio 2004)* [*19] ("where, as here, Plaintiffs allege a common course of conduct by Defendants that caused harm, class certification is proper."). This includes, for example, cases where the Defendants mail illegal formletters or documents to the proposed class. *Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998)*.

### 3) Typicality.

*Rule 23(a)(3)* requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." *Fed. R. Civ. P. 23(a)(3)*. The purpose of this requirement is to assure that the named representatives' interests align with those of the class. *American Medical Systems, 75 F.3rd at 1082*. A named plaintiff's claim is considered to be typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*

While the class representatives' claims must be typical, "*Rule 23* does not require absolute homogeneity." *Tucker v. Union Underwear Co., Inc., 144 F.R.D. 325, 329 (W.D. Ky. 1992)*. "*Rule 23(a)(3)* typicality 'determines whether [*20] a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. Byrider, 228 F.3d 709, 717 (6th Cir. 2000)*(quoting *Sprague v. General Motors, 133 F.3d 388, 399 (6th Cir. 1998))*. The inquiry focuses special attention on "differences between class representative claims and class claims that would defeat the representative nature of the class action." *Van Vels v. Premier Athletic Center of Plainfield, Inc., 182 F.R.D. 500, 510 (W.D. Mich. 1998)*.

### 4) Adequacy of Representation.

Pursuant to *Rule 23(a)(4)*, a class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." *Fed. R. Civ. P. 23(a)(4)*. "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *American Medical Systems, 75 F.3d at 1083*. The Sixth Circuit has established a two-part test for determining adequacy of representation: (1) the representative [*21] must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter, 532 F.2d at 525*.

"The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *American Medical Systems, 75 F.3d at 1083*.

### D. *Rule 23(b)(3)* - Predominance and Superiority.

*Rule 23(b)* provides that an action may be maintained as a class action if the prerequisites of *subdivision (a)* are satisfied and, in addition, "the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*(emphasis added).

The rule provides that the "matters pertinent to the findings include: (A) the interest of members of the class in individually [*22] controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action. *Fed. R. Civ. P. 23(b)(3)*.

*Rule 23(b)(3)* "parallels *subdivision (a)(2)* [commonality] in that both require that common questions exist, but *subdivision (b)(3)* contains the more stringent requirement that common issues 'predominate' over individual issues." *American Medical Systems, 75 F.3d at 1084*.

In *Olden v. LaFarge Corp., 383 F.3d 495 (6th Cir. 2004)*, the Sixth Circuit determined that, even though

"individual *damage* determinations might be necessary," a class action may still be appropriate where "the plaintiffs have raised common allegations which would likely allow the court to determine liability (including causation) for the class as a whole." *Id. at 508*. Citing to *Rule 23(c)(4)*, the Court further noted that [*23] the district court could bifurcate the liability issue from the damages issue with damages to be found by a special master or other method. *Id. at 509*; *see also Simon v. Philip Morris Inc., 200 F.R.D. 21, 30 (E.D.N.Y. 2001)*("By bifurcating issues like general liability or general causation and damages, a court can await the outcome of a prior liability trial before deciding how to provide relief to the individual class members.").

With regard to fraud actions in particular, the Advisory Committee Notes to the 1996 Amendments to *Rule 23* state:

> a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action. . . On the other hand, ...a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

Specifically with regard to RICO actions based on the predicate act of mail fraud, the Fifth Circuit has determined that "[t]he pervasive issues of individual reliance that generally exist in RICO fraud actions create a working presumption against [*24] class certification." *Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Insurance Co., 319 F.3d 205, 219 (5th Cir. 2003)*. Other courts, however, have found class certification appropriate in RICO fraud actions where the misrepresentations are similar.

In *Klay v. Humana, Inc., 382 F.3d 1241, 1257 (11th Cir. 2004)*, the Plaintiffs were doctors who had submitted at least one claim to any of the defendant HMOs between 1990 and 2002. *Id. at 1246*. They asserted a RICO fraud claim against the HMOs, alleging that the defendants conspired with each other to program their computer systems to systematically underpay physicians for their services. *Id.* The defendants argued that class certification was inappropriate in a RICO claim based on allegations of mail and wire fraud because the individual issue of reliance *necessarily* predominates. *Id. 1258*.

The Court clarified that, under Eleventh Circuit precedent, the issue of individual reliance does not necessarily preclude class certification. Instead, "[i]f there is any material variation in the representations made or in the degrees of reliance thereupon, a [*25] fraud case may be unsuited for treatment as a class action. . . .[i]f the writings contain material variations, emanate from several sources, or do not actually reach the subject investors, they are no more valid a basis for a class action than dissimilar oral representations. "*Id.* (citing *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 482 F.2d 880, 882 (5th Cir. 1973)*.

Thus, a case is not well-suited to a class action if the plaintiffs fail to prove "any standardized representations by [the defendant]." *Id.* (citing *Simon, 482 F.2d at 883*); *see also Simon 482 F.2d at 882* ("Thus courts usually hold that an action based substantially, as here, on oral rather than written misrepresentations cannot be maintained as a class action"); *Gibbs Properties Corp. v. Cigna Corp., 196 F.R.D. 430, 440 (M.D. Fla. 2000)*("The Court notes that class certification has generally been rejected in fraud cases where the alleged misrepresentations were oral, due to the predominance of individual reliance issues.") Certification may be proper, however, "if the plaintiffs can prove that the oral misrepresentations were uniform [*26] and no material variations existed in statements made to each class member." *Id.*

In *Poulos v. Caesars World, Inc., 379 F.3d 654 (9th Cir. 2004)*, the Ninth Circuit specifically undertook to "clarify the extent to which a class action plaintiff must establish individualized reliance to meet the causation requirement of a civil [RICO] claim predicated on mail fraud -- an issue that bears heavily on a plaintiff's ability to meet the predominance and superiority requirements of class certification." *Id. at 658*. The Court concluded that "Class Representatives, like all plaintiffs asserting civil RICO claims, must prove individualized reliance where that proof is otherwise necessary to establish actual or proximate causation." *Id.*

The Court explained that, "[c]ausation lies at the heart of a civil RICO claim. Lumping claims together in a class action does not diminish or dilute this requirement." *Id. at 664*. Citing to *Holmes,* the Court further stated that "[i]t is well settled that, to maintain a civil RICO claim

predicated on mail fraud, a plaintiff must show that the defendants' alleged misconduct proximately caused [*27] the injury." *Id.* "The misrepresentations standing alone have little legal significance. To connect the dots between the bare allegations and the injury, the class needs something more." *Id.* Reliance, the Court explained, provides the key causal link.

Some courts have "presumed" reliance in certain narrow contexts in civil fraud actions. Nevertheless, presuming reliance in civil RICO actions is "generally disfavored." *Chisolm v. TranSouth Financial Corp., 194 F.R.D. 538, 560 (E.D. Va. 2000)*. The Supreme Court has presumed reliance in the securities litigation context under the fraud-on-the-market theory. *Id.* In *Rohlfing v Manor Care, Inc., 172 F.R.D. 330 (N.D. Ill. 1997)*, the court explained that the requirement that Plaintiffs charging a RICO violation must prove reliance derives from RICO's requirement of proximately caused injury." *Id. at 338*. "When the fraud was perpetrated in a uniform manner against every member of the class, such as when all plaintiffs received virtually identical written materials from the defendants, courts typically hold that individual reliance questions do not predominate." *Id. at 338.* [*28] "But when the fraudulent conduct was not uniform with respect to all plaintiffs such as when numerous oral misrepresentations are alleged or when claims are based on advertisements that may or may not have been seen by every plaintiff, courts treat individual reliance questions as predominating over the common RICO issues." *Id.*

**D. Consideration of Class Definition and *Rule 23* Factors.**

**1) Commonality and Predominance.**

Considering all of the these factors, the Court concludes that this action is not appropriate for a class action. This becomes most apparent in considering the commonality and predominance inquiry mandated by *Rule 23*. The commonality inquiry of *subsection (a)* is related but much less rigorous than the predominance analysis of *subsection (b)*. This action clearly meets the commonality requirement. As explained, the Plaintiffs' RICO claim is based on the assertion that at least one of the two the individual Defendants made oral and/or written misrepresentations to the DBEs in letters, meetings and/or public presentations that the program was legally and fairly administered and that the DBEs relied on those misrepresentations in deciding to enter into or [*29] remain in the DBE program. Issues common to all members of the class will be whether the Defendants certified companies as DBEs knowing that they did not meet the legal qualifications and whether the Defendants awarded contracts to DBEs knowing they would not actually perform the work. These issues are susceptible to proof on a class-wide basis.

Nevertheless, because of the varied nature of the misrepresentations alleged in this action and the varied nature of the recipients of the misrepresentations, the issues of reliance and causation in this matter will involve extensive individual factual inquiries for each proposed class member. These individual issues are dispositive and will predominate over the common issue of whether contracts were fraudulently awarded in the DBE program.

This is not a case where the Court can presume reliance by each class member. As explained above, the Court could likely presume reliance if this were, for example, a class action claiming fraud against a credit card company, where all proposed class members applied for a credit card after receiving a written offer from the credit card company and the alleged misrepresentations were made in the written [*30] offer. In such a case, the Court could presume reliance on the representations contained in the document given to each applicant.

Here, however, there is no allegation that the proposed class members received a standard written document that induced them to act. Nor is there any allegation that the Plaintiffs were the recipients of uniform oral representations. Instead, the Plaintiffs assert that the misrepresentations occurred at different times, in different places and contexts and in different manners -- some written some oral; some private, some public. The alleged misrepresentations occurred over a seven-year time period. The misrepresentations were not made by a single entity but by two individuals. Some misrepresentations were made by Codell; others by Yowell. Indeed, as will be explained further below, it is not even clear that the Defendants' alleged misrepresentations even reached each member of the class proposed by the Plaintiffs.

Moreover, the proposed class members will consist of DBEs who entered into the DBE program at various times and have remained in it for various time periods. Thus, the degree of reliance on the statements of the two individual Defendants will [*31] vary among the proposed class members.

It may be presumed that no company would enter into the DBE program if it knew that the program was being fraudulently run. It may also be presumed that the proposed class members believed the program was not fraudulently run. Nevertheless, such presumptions are not enough to establish the necessary reliance in this action. The Plaintiffs claim specifically that the two *individual Defendants* made the misrepresentations. Thus, even if the Court can presume that the proposed class members relied on a general belief that the DBE program was not fraudulent when they decided to enter into it and/or stay in it, such general reliance is not sufficient to establish the reliance on the individual Defendants that the plaintiffs must prove in this case.

Instead, the reliance issue will depend upon such individual factual inquiries as the content of the misrepresentation that each Plaintiff allegedly received; the source of the misrepresentation; the source of any other information about the DBE program the class member had received; the timing of the alleged misrepresentation; and the class member's experience in the DBE program.

Furthermore, because [*32] of the nature of the damages the Plaintiffs seek, the issue of causation will require individualized factual inquiries. If the Plaintiffs merely sought the cost of becoming certified, the cost of maintaining certification and the cost of bidding on Cabinet projects, then the issue of causation would be a somewhat simpler matter after individual reliance was established. Plaintiffs, however, seek the value of the contracts awarded to illegitimate DBEs. Assuming that such damages are recoverable in this action, to demonstrate causation, the plaintiffs will have to show that it was the Defendants' conduct that caused the plaintiffs not to be awarded the contracts at issue.

As the Plaintiffs' counsel recognized at the hearing of this motion, if the Plaintiffs' claims were tried individually, then the Defendants would most likely defend by stating that it was not their conduct that caused the Cabinet to not award a contract to a particular Plaintiff. Instead, the Defendants would argue, the Plaintiff was not qualified to receive the contract for any host of reasons such as the DBE did not have the equipment or employees to finish the job; its bid was too high; it was not located in the [*33] vicinity of the job, etc. These are not individual issues of damages. These are individual issues of causation, the resolution of which will require intensive factual inquiries regarding each DBE and each project.

These individual issues of reliance and causation also militate against finding that a class action is the superior method of adjudicating the potential claims here. Furthermore, given that the potential plaintiffs are companies seeking the value of contracts they were not awarded, this is not likely a case where the costs of litigation outweighs any potential recovery.

**2) Class Definition and Numerosity.**

The unsuitability of this action for class action also becomes apparent when attempting to define the class. The Plaintiffs have variously defined the proposed class as "all companies who have properly been certified by the Kentucky Transportation Cabinet as a Disadvantaged Business Enterprise ("DBE") from January 1, 1996, to the present;" (Rec. No. 52, Mem. Supporting Pfs' Mot. for Class Cert. at 1); and "all properly certified DBEs who were qualified to and who were denied the opportunity to receive a DOT contract pertaining to road construction in Kentucky." [*34] (Rec. No. 68, Reply at 3). At the hearing on this matter, Plaintiffs' counsel stated that the proposed class definition is "all DBEs certified between January 1996 and June 2003 to work on highway construction projects."

However, any class definition that includes DBEs who entered into and remained in the DBE program without relying on a misrepresentation from either of the individual Defendants in this action is overly broad. Such a class would include DBEs who were not harmed by the Defendants. Again, this is not an action in which reliance by each class member can be presumed. Nor can the Court presume that each class member even received a deceptive communication from one of the two Defendants. Accordingly, the class must be defined to include only those properly certified DBEs who took some action in reliance on one of the Defendant's misrepresentations.

For example, the class could be defined as all properly certified DBEs that became certified, maintained DBE certification and/or bid on DBE projects in reliance on at least one misrepresentation made by the individual defendants. The problem with this definition, however, is that it requires the Court to make individual factual [*35] inquiries regarding reliance in order to determine the members of the proposed class. In other words it requires

the Court to make an inquiry into the merits of the case in determining whether a person is a member of the class.

At the hearing on this matter, Plaintiffs' counsel suggested that the Court could wait and determine which DBEs had relied on the individual Defendants' misrepresentations after the trial of the four named Plaintiffs' claims. The problem with this approach, however, is that the Court has no way of determining the proposed class size until *after* certifying this matter as a class action. In other words, the Court would be required to certify the class without addressing the numerosity requirement of *Rule 23(a)*.

Given the requirement that the Plaintiffs in a RICO mail fraud action must prove reliance to establish the Defendants' liability, the Plaintiffs' proposed class definition is overly broad if it includes DBEs who did not act in reliance on representations made by the individual Defendants. However, given the individual issues of reliance in this action, if the class is redefined in some manner to include only those DBEs who entered into the DBE program, [*36] remained in the DBE program or bid on particular contracts in reliance on the individual Defendants' misrepresentations, the identification of the members of the class requires extensive factual inquiries which render this action inappropriate for a class action.

Because the Plaintiffs have produced no evidence regarding the number of DBEs who were actually injured by the conduct of one of the two individual Defendants, the Court has no evidence by which it can evaluate the number of proper class members.

In their opening brief on this issue, Plaintiffs estimate that the size of the proposed class is approximately 400 businesses. In support of this number, they produce the Cabinet's DBE directory which indicates that there are currently 278 companies registered as DBEs. The Plaintiffs assert that, given the rate at which new companies are added to the program and withdrawn from the program, the class likely includes 400 businesses. (Rec. No. 52, Mem. Supp. Pfs' Mot. for Class Cert. at 7).

In their Reply brief, the Plaintiffs estimate that the proposed class consists of 300-400 businesses. (Rec. No. 68, Reply at 3). The Plaintiffs state that the Transportation Cabinet's directory [*37] lists at least 161 companies that would have the ability to perform work on a Kentucky road project and that, "[a]ssuming a modest turnover of 10 percent per year for a 10 year period, the plaintiff class consists of more than 320 members." (Rec. No. 68, Reply at 4).

With these numbers, however, Plaintiffs only provide estimates of the number of businesses certified as DBEs or the number of businesses certified as DBEs who are qualified to work on Kentucky highway construction projects. Plaintiffs do not provide any evidence of the number of DBEs certified to work on highway construction projects who were damaged by one of the two individually named Defendants in this action. For this reason, Plaintiffs have failed to meet the numerosity requirement.

### 3) Typicality and Adequacy of Representation.

Because of the varying nature of the alleged misrepresentations and proposed plaintiffs, it cannot be said that the named Plaintiffs' claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members. Thus, the Court cannot find that the Plaintiffs' claims are typical of the remainder of the proposed class.

There is no real dispute [*38] that Plaintiffs' counsel are qualified and competent to represent the class of Plaintiffs. However, because typicality is lacking here, the Court cannot conclude that the named plaintiffs will adequately represent the class. For all the reasons discussed above, this is not a case that lends itself to "representative" plaintiffs.

### III. CONCLUSION

For all the above reasons, it is hereby ORDERED that the Plaintiffs' Motion for Class Certification (Rec. No. 52) is DENIED.

Dated this 23rd day of August, 2006.

**Signed By:**

*Karen K. Caldwell*

**United States District Judge**