LEXSEE 2007 U.S. DIST. LEXIS 56617

IN RE OSB ANTITRUST LITIGATION. THIS DOCUMENT RELATES TO: ALL INDIRECT ACTIONS

Master File No. 06-826

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2007 U.S. Dist. LEXIS 56617*; *68 Fed. R. Serv. 3d (Callaghan) 1008*; *2007-2 Trade Cas. (CCH) P75,843*

August 3, 2007, Decided
August 3, 2007, Filed

**SUBSEQUENT HISTORY:** Class certification granted by *In re OSB Antitrust Litig., 2007 U.S. Dist. LEXIS 56584 (E.D. Pa., Aug. 3, 2007)*

**COUNSEL:** For SAWBELL LUMBER CO., Plaintiff: MARIO N. ALIOTO, LAUREN C. RUSSELL, LEAD ATTORNEYS, TRUMP ALIOTO TRUMP & PRESCOTT, LLP, SAN FRANCISCO, CA; DARLA JO BOGGS, W. JOSEPH BRUCKNER, RICHARD A. LOCKRIDGE, ELIZABETH R. ODETTE, LOCKRIDGE GRINDAL NAUEN & HOLSTEIN P.L.L.P., MINNEAPOLIS, MN; WILLIAM P. BUTTERFIELD, MICHAEL D. HAUSFELD, PATRICK A. TILLOU, CHARLES E. TOMPKINS, LEAD ATTORNEYS, COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C., WASHINGTON, DC; SCOTT R. CAMPBELL, CRAIG C. CORBITT, LOREL A. KISH, FRANCIS O. SCARPULLA, PAMELA E. WOODSIDE, LEAD ATTORNEYS, ZELLE, HOFMANN, VOELBEL, MASON & GETTE, LLP, SAN FRANCISCO, CA; JEFFREY J. CORRIGAN, JEFFREY L. KODROFF, EUGENE A. SPECTOR, LEAD ATTORNEYS, JAY S. COHEN, SPECTOR, ROSEMAN & KODROFF, PHILADELPHIA, PA; DAVID H. FINK, E. POWELL MILLER, LEAD ATTORNEYS, THE MILLER LAW FIRM PC, ROCHESTER, MI; KENNETH G. GILMAN, GILMAN & PASTOR LLP, LEAD ATTORNEYS, GILMAN & PASTOR LLP, BOSTON, MA; DAVID J. GUIN, TAMMY MCCLENDON STOKES, LEAD ATTORNEYS, DONALDSON & GUIN, L.L.C., BIRMINGHAM, AL; JOHN C. MURDOCK, LEAD ATTORNEY, MURDOCK GOLDENBERG SCHNEIDER & GROH LPA, CINCINNATI, OH; KRISHNA B. NARINE, LEAD ATTORNEY, LAW OFFICE OF KRISHNA B. NARINE, ELKINS PARK, PA; SIMON BAHNE PARIS, LEAD ATTORNEY, SALTZ MONGELUZZI BARRETT & BENDESKY, P.C., PHILADELPHIA, PA; JOSEPH M. PATANE, LEAD ATTORNEY, LAW OFFICE OF JOSEPH M. PATANE, SAN FRANCISCO, CA; RICHARD ALEXANDER SAVERI, CADIO ZIRPOLI, LEAD ATTORNEYS, SAVERI & SAVERI INC, SAN FRANCISCO, CA; JONATHAN SHUB, SEEGER WEISS LLP, PHILADELPHIA, PA.

For J.M. HUBER CORPORATION, Defendant: WILLIAM J. BAER, MICHAEL B. BERNSTEIN, DAVID S. EGGERT, LEAD ATTORNEYS, ARNOLD & PORTER LLP, WASHINGTON, DC; STEVEN A. LUPIN, LEAD ATTORNEY, STEVEN H LUPIN, HAMBURG, RUBIN, MULLIN, MAXWELL & LUPIN, P.C., LANSDALE, PA.

For LOUISIANA-PACIFIC CORPORATION, Defendant: TERESA T. BONDER, KRISTINE MCALISTER BROWN, LEAD ATTORNEYS, JAMES C. GRANT, MICHAEL P. KENNY, LEIGH R. RHOADS, ALSTON & BIRD LLP, ATLANTA, GA; CAROLYN HAZARD FEENEY, DAVID J. STANOCH, JOSEPH A. TATE, LEAD ATTORNEYS, DONALD C. LE GOWER, REID KRESS WEISBORD, DECHERT LLP, PHILADELPHIA, PA; PAUL H. FRIEDMAN, LEAD ATTORNEY, DECHERT LLP, WASHINGTON, DC; WILL W. SACHSE, LEAD ATTORNEY,

Case 2:05-cv-04182-SRD-JCW   Document 16571-17   Filed 12/01/08   Page 2 of 18

Page 2

2007 U.S. Dist. LEXIS 56617, *; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

DECHERT, PRICE & RHOADS, PHILADELPHIA, PA.

For WEYERHAEUSER COMPANY, Defendant: PETER BRESLAUER, RICHARD L. SCHEFF, MONTGOMERY MCCRACKEN WALKER & RHOADS LLP, PHILADELPHIA, PA; BARACK S. ECHOLS, JAMES HOWARD MUTCHNIK, JAMES H. SCHINK, LEAD ATTORNEYS, SANDRA MAJA FABULA, BENJAMIN W. HULSE, KIRKLAND & ELLIS LLP, CHICAGO, IL.

For GRANT FOREST PRODUCTS, INC., Defendant: ROBERT E. BROWNE, JR., JAMES K. GARDNER, VERONICA GOMEZ, LEAD ATTORNEYS, NEAL, GERBER & EISENBERG, LLP, CHICAGO, IL; PETER J. HOFFMAN, LEAD ATTORNEY, TIMOTHY J. BURKE, JOAN D. PLUMP, MCKISSOCK & HOFFMAN, P.C., PHILADELPHIA, PA; SCOTT J. FISHER, LEAD ATTORNEY, NEAL GERBER & EISENBERG LLP, CHICAGO, IL.

For POTLATCH CORPORATION, Defendant: MARY KAY CHRISTODOULOU, DAVID L. COMERFORD, EDWARD F. MANNINO, REGINALD D. STEER, LEAD ATTORNEYS, KATHERINE M. KATCHEN, AKIN GUMP STRAUSS HAUER & FELD LLP, PHILADELPHIA, PA.

For NORBORD, INC., NORBORD INDUSTRIES, INC., Defendants: MICHAEL L. DENGER, LEAD ATTORNEY, GIBSON DUNN & CRUTCHER LLP, WASHINGTON, DC; ROBERT L. EBBY, WILLIAM T. HANGLEY, SOZI PEDRO TULANTE, LEAD ATTORNEYS, HANGLEY ARONCHICK SEGAL AND PUDLIN, PHILADELPHIA, PA; GABRIEL HERRMANN, LEAD ATTORNEY, GIBSON DUNN & CRUTCHER LLP, NEW YORK, NY; GEORGE A. NICOUD, III, LEAD ATTORNEY, GIBSON DUNN & CRUTCHER LLP, SAN FRANCISCO, CA.

For GEORGIA-PACIFIC CORPORATION, Defendant: DOUGLAS M. GARROU, BENJAMIN HATCH, ROBERT W. LOFTIN, THOMAS G. SLATER, JR., LEAD ATTORNEYS, HUNTON & WILLIAMS LLP, RICHMOND, VA; AMY B. MINER, LEAD ATTORNEY, DRINKER BIDDLE & REATH LLP, PHILA, PA; R. HEWITT PATE, RYAN SHORE, LEAD ATTORNEYS, HUNTON AND WILLIAMS, WASHINGTON, DC.

For AINSWORTH LUMBER CO. LTD., Defendant: SHEPARD GOLDFEIN, KAREN M. HOFFMAN, JAMES A. KEYTE, LEAD ATTORNEYS, MATTHEW M. MARTINO, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, NEW YORK, NY; JOHN G. HARKINS, JR., ELEANOR MORRIS ILLOWAY, HARKINS CUNNINGHAM LLP, PHILADELPHIA, PA.

For GEORGIA-PACIFIC CORPORATION, AINSWORTH LUMBER CO. LTD., GRANT FOREST PRODUCTS, INC., J.M. HUBER CORPORATION, LOUISIANA-PACIFIC CORPORATION, NORBORD INDUSTRIES, INC., POTLATCH CORPORATION, WEYERHAEUSER COMPANY, Defendants: PAUL H. SAINT-ANTOINE, LEAD ATTORNEY, DRINKER, BIDDLE & REATH LLP, PHILADELPHIA, PA.

**JUDGES:** [*1] Paul S. Diamond, J.

**OPINION BY:** Paul S. Diamond

**OPINION**

**MEMORANDUM**

**Diamond, J.**

Plaintiffs, indirect purchasers of Oriented Strand Board, allege a horizontal price-fixing conspiracy among eight major OSB manufacturers in violation of the Sherman Antitrust Act and numerous state antitrust provisions. See *15 U.S.C. § 1*; see, e.g., *Ariz. Rev. Stat. § 44-1402*; *D.C. Code § 28-4502*; *Fla. Stat. § 501.204*. Plaintiffs ask me to certify two classes: under the antitrust and consumer protection laws of 21 states, a multistate class of individuals and businesses who indirectly purchased either OSB for their own use or structures containing OSB; and a similarly defined nationwide class under federal law. Defendants contend that Plaintiffs cannot satisfy the requirements of *Federal Rule of Civil Procedure 23* for either class, and challenge Plaintiffs' standing to maintain a class action in Arizona, New Mexico, and South Dakota.

I agree with Defendants that for the home buyer segment of the proposed classes, Plaintiffs have not shown that impact and causation are susceptible of common proof, and thus have met neither *Rule 23(b)(3)*'s predominance requirement nor *Rule 23(b)(2)*'s equitable relief requirement. Accordingly, I will [*2] strike home

Case 2:05-cv-04182-SRD-JCW    Document 16571-17    Filed 12/01/08    Page 3 of 18

Page 3

2007 U.S. Dist. LEXIS 56617, *2; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

buyers from the proposed classes and will not certify those subclasses whose representatives are home buyers: California, the District of Columbia, Florida, Massachusetts, Nevada, New York, and Wisconsin. I further agree with Defendants that, lacking named representatives from Arizona, New Mexico, and South Dakota, Plaintiffs do not have standing to maintain a class action in those states. Finally, I conclude that the representatives from Minnesota, Vermont, and West Virginia are inadequate.

Accordingly, I will certify two classes of individuals and businesses that purchased actual OSB for end use: (1) under *Rule 23(b)(3)*, a multistate class with eight state subclasses -0 Iowa, Kansas, Maine, Michigan, Mississippi, North Carolina, North Dakota, and Tennessee -- and (2) under *Rule 23(b)(2)*, a nationwide class.

## BACKGROUND

OSB is a structural wood-based paneling product widely used in residential and other construction. *Indirect Purchaser Pl. Second Amended Compl. P 80-81*. Defendants -- Ainsworth Lumber Co., Ltd., Georgia-Pacific Corporation, J.M. Huber Corporation, Louisiana-Pacific Corporation, Norbord Industries, Inc., Potlatch Corporation, Tolko Industries, Inc., and Weyerhauser [*3] Company -- manufacture OSB and together control 95% of the OSB market in North America. *Indirect Purchaser Pl. Second Amended Compl. P 115*. Plaintiffs indirectly purchased OSB structural panels manufactured by one or more of the Defendants, either for their own construction use or as part of a newly bought, newly built, or newly renovated structure.

There are many chains of OSB distribution: some Defendants distribute OSB directly to large contractors and home building companies; others sell OSB to home improvement warehouses, lumber yards, dealers, and other retailers, who may then resell the OSB to contractors or to end-users. *Indirect Purchaser Pl. Second Amended Compl. P 92-95*. Thus, individual end-users may have purchased their OSB from home improvement centers such as Home Depot or Lowe's, from dealers, or from retailers. The OSB in homes may have been distributed through home improvement centers, lumber yards, or retailers before reaching building contractors and, finally, the homes themselves.

Plaintiffs allege that on or about June 1, 2002, Defendants together tacitly agreed to raise OSB prices and so revitalize the stagnating OSB market. *Indirect Purchaser Pl. Second Amended* [*4] *Compl. P 1, 5, 107, 109, 100*. Plaintiffs allege that the conspiracy was wildly successful, "transforming Defendants' previously moribund OSB business into a highly profitable one in a matter of months." *Pl. Class Cert. Mem. at 1*. Plaintiffs charge that the conspiracy continues to the present day.

Plaintiffs claim that Defendants took the following concerted actions to reduce the supply of OSB (and so drive up the price): (1) kept OSB from the market through mill shutdowns; (2) delayed or canceled the construction of new OSB mills; (3) bought OSB from competitors instead of manufacturing it themselves (which they could have done at a lower cost); and (4) maintained low operating rates at mills. *Indirect Purchaser Pl. Second Amended Compl. P 2, 131*. Plaintiffs allege that Defendants fixed and maintained the price of OSB through the use of a twice-weekly published price list in *Random Lengths*, an industry periodical. *Indirect Purchaser Pl. Second Amended Compl. P 171-173*. Plaintiffs claim that because *Random Lengths* included lists of OSB prices by region, Defendants could monitor their competitors and ensure that no member of the conspiracy "cheated" by offering significantly different [*5] prices. *Indirect Purchaser Pl. Second Amended Compl. P 173*. Plaintiffs also allege that Defendants confirmed their agreements during meetings at industry trade shows and events. *Indirect Purchaser Pl. Second Amended Compl. P 177-179*.

Plaintiffs contend that because direct purchasers and intermediate indirect purchasers passed their increased costs down the varied chains of distribution, Plaintiffs, as end users, paid illegally inflated OSB prices. *Indirect Purchaser Pl. Second Amended Compl. P 3, 4*. Plaintiffs seek injunctive relief for the proposed nationwide class, and damages and disgorgement of Defendants' illegally inflated profits for the multistate class. *Indirect Purchaser Pl. Second Amended Compl. P 7, 8, 9*.

## LEGAL STANDARDS

To certify, I must conclude that Plaintiffs have satisfied all the prerequisites of *Fed. R. Civ. P. 23(a)*, and fulfilled one of the requirements of *Rule 23(b)* for each proposed class. See, e.g., *Georgine v. Amchem Prods, Inc., 83 F.3d 610, 624 (3d Cir. 1996)*, aff'd, *521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*. It is Plaintiffs' burden to show that the classes should be certified. See

Case 2:05-cv-04182-SRD-JCW   Document 16571-17   Filed 12/01/08   Page 4 of 18

Page 4

2007 U.S. Dist. LEXIS 56617, *5; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

*Freedman v. Arista Records, 137 F.R.D. 225, 227 (E.D. Pa. 1991)*(citing *Davis v. Romney, 490 F.2d 1360, 1366 (3d Cir. 1974))*.

In [*6] determining whether to certify, I must accept as true all substantive allegations in the Amended Complaint. See *Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975)*, cert. denied, *429 U.S. 816, 97 S. Ct. 57, 50 L. Ed. 2d 75 (1976)*; see also *Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 209 (E.D. Pa. 2000)*; *Steward v. Assocs. Consumer Discount Co., 183 F.R.D. 189, 193 (E.D. Pa. 1998)*. Although I may not consider whether Plaintiffs will prevail on the merits, I may look beyond the four corners of the Amended Complaint if Plaintiffs' allegations are unsupported, or even rebutted, by a well-developed record. See *Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)*(internal quotations omitted); *Johnston v. HBO Film Management, Inc., 265 F.3d 178, 186 (3d Cir. 2001)*.

**DISCUSSION**

**I. Multistate Class Pursuant to *Rule 23(b)(3)***

Plaintiffs seek to certify, under the antitrust and consumer protection laws of 21 states, a class of customers who indirectly purchased, between June 1, 2002 and the present, either OSB for their own use or structures containing OSB. Plaintiffs seek over $ 5,000,000 in damages, as well as disgorgement of Defendants' profits attributable to any illegal overcharge. Plaintiffs propose to allocate these [*7] awards through fluid recovery -- distribution at the claims phase of aggregate damages awarded at trial. Under the Class Action Fairness Act of 2005, I have original jurisdiction over these state law damages claims. See *28 U.S.C. § 1332(d)(2)(A)*.

As a threshold matter, Plaintiffs must overcome the Supreme Court's bar on indirect purchaser antitrust claims for damages under federal law. See *Illinois Brick Co. v. Illinois, 431 U.S. 720, 97 S. Ct. 2061, 52 L. Ed. 2d 707 (1977)*(indirect purchasers do not have standing to maintain antitrust treble-damages action under the Sherman Act because injury is too remote). Indirect purchaser plaintiffs may seek damages only under the laws of states that have enacted Illinois Brick "repealer" statutes. See, e.g., *D.R. Ward Constr. Co. v. Rohm & Haas Co., 470 F. Supp. 2d 485, 503 (E.D. Pa. 2006)*; *In re Hydrogen Peroxide Antitrust Litig., 2006 U.S. Dist. LEXIS 18790, 2006 WL 999955, at *1, n. 2 (E.D. Pa. Apr. 11, 2006)*. As I noted in my Order of September 25, 2006 (Doc. No. 172), at present, these are: Arizona, California, the District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nevada, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, [*8] Vermont, West Virginia, and Wisconsin. See *Barnes v. American Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998)*(district court may redefine, add, or eliminate subclasses as appropriate during the pendency of the litigation).

**A. *Rule 23(a)* Prerequisites**

*Numerosity*

*Rule 23(a)(1)* requires that the class be so numerous that joinder of its members is impracticable. "Generally, if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the numerosity requirement of *Rule 23(a)* has been met." *Ketchum v. Sunoco, Inc., 217 F.R.D. 354, 357 (E.D. Pa. 2003)*(citing *Stewart v. Abraham, 275 F.3d 220, 227-228 (3d Cir. 2001))*. The proposed class consists of thousands of people in 21 states. *Pl. Class Cert. Mem. at 9*. Although I am, at present, certifying a class of Plaintiffs in only eight states, it is apparent that Plaintiffs nonetheless meet Rule 23's numerosity requirement.

*Commonality*

Plaintiffs must also demonstrate that there are questions of law or fact common to the class. *Fed. R. Civ. P. 23(a)(2)*. A single such issue will suffice. *Johnston v. HBO Film Mgmt, Inc., 265 F.3d 178, 184 (3d Cir. 2001)*. Here, Plaintiffs have identified -- and Defendants do not dispute -- the following [*9] common issues: whether Defendants engaged in a conspiracy; the conspiracy's duration and extent; whether Defendants fraudulently concealed the existence of their illegal conduct; whether Defendants engaged in conduct that violated the antitrust, unfair competition, or consumer protection laws of the various states; whether Defendants unjustly enriched themselves at the expense of the class members; and whether Plaintiffs and the class members were injured by Defendants' conduct and, if so, the appropriate classwide measure of damages. *Pl. Class Cert. Mem. at 10-11*. These issues certainly satisfy the commonality requirement.

2007 U.S. Dist. LEXIS 56617, *9; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

*Typicality*

I must determine whether "the named plaintiff[s'] individual circumstances are markedly different or ... the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston, 265 F.3d at 184* (quoting *Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985))*. Here, Plaintiffs allege that all members of the multistate class suffered economic injury when they made indirect purchases of OSB manufactured by Defendants. *Pl. Class Cert. Mem. at 13*. Although individual damages may differ, each [*10] class representative bases his or her claim on the same legal theory as the class. Thus, as Defendants concede, Plaintiffs have shown their claims to be typical of those of the proposed class.

*Adequacy of Representation*

Finally, Plaintiffs must demonstrate that they will fairly and adequately protect the interests of the class. *Fed. R. Civ. P. 23(a)(4)*. Inevaluating this requirement, I must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston, 265 F.3d at 185*. Plaintiffs assert that they have no conflicts with each other or with the members of the proposed class, and that their attorneys are highly experienced antitrust class action litigators. *Pl. Class Cert. Mem. at 14-15*. Defendants contend, however, that three named Plaintiffs -- who are both end-users and resellers of OSB -- have a disabling conflict: in their depositions, they testified that as OSB resellers, they often did not pass on any overcharge to their customers. *Def. Mem. in Opp. to Class. Cert. at 67-68*. Defendants assert that a conflict exists because class counsel have "abandoned" the claims these resellers might [*11] have to recoup the overcharges they absorbed. *Def.Mem. in Opp. to Class. Cert. at 68-69*. Finally, Defendants argue that certain named Plaintiffs are inadequate class representatives because at their depositions, they could not identify the manufacturers of the OSB they purchased. *Def. Mem. in Opp. to Class. Cert. at 70*. Although these contentions are meritless, I nonetheless believe the reseller Plaintiffs are not adequate class representatives.

Benny Parr (of West Virginia), Steve Roberts (of Vermont), and Jack Wussler (of Minnesota) -- who are both resellers and end users of OSB -- testified that they understood that they were bringing claims solely in their capacity as end users. *See, e.g., Parr Dep. of February 16, 2007, at 30, Defs. Sur-Reply Mem., Exhibit B*. These individuals have thus chosen to pursue one claim -- as end users -- over whatever claim they may have as resellers. Others who are both resellers and end users may choose to bring claims as resellers. Those who have joined the end-user class have made their choice; there is no conflict that would prevent counsel from adequately representing the class. See *In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 145 (2d Cir. 2001)*(speculative [*12] conflicts at the class certification stage should be disregarded); *Hanrahan v. Britt, 174 F.R.D. 356, 364 (E.D. Pa. 1997)*(same).

Defendants previously raised issues of standing and adequacy as to those Plaintiffs who testified at their depositions that they were not certain whose OSB they had purchased. *See Defendants' Motion to Dismiss Certain Named Plaintiffs and in the Alternative Motion for Partial Summary Judgment*. Because these Plaintiffs later identified and offered photographic proof of the manufacturers of their OSB, I ruled that they had standing. See Order of May 24, 2007 (Doc. No. 407). I noted that Defendants could challenge the named Plaintiffs' adequacy at class certification. Unfortunately, Defendants merely restate their earlier standing arguments -- arguments I have already rejected. Accordingly, Defendants have not shown that the named Plaintiffs are inadequate class representatives either for lack of standing or by reason of misrepresentation or inattention to detail.

Counsel must have the ability and incentive to represent the class vigorously. *In re Cendant Corp. Litig., 264 F.3d 201, 265 (3d Cir. 2001)*. At the outset of this litigation, I appointed Gilman & Pastor [*13] LLP Lead Counsel for the Indirect Purchaser Plaintiffs. As Co-Lead Counsel, I appointed the firms of Straus & Boies, LLP; Trump, Alioto, Trump & Prescott; and Schubert & Reed LLP. See Order of May 25, 2006 (Doc. No. 78). To date, Lead and Co-Lead Counsel have vigorously and capably prosecuted this extremely demanding case, and I am satisfied that they will continue to do so.

Finally, although the admitted failure of Messrs. Parr, Roberts, and Wussler to pass through OSB overcharges does not create a conflict, it does render them inadequate class representatives. As I discuss at length below, the gravamen of Plaintiffs' theory of economic injury and causation is that OSB resellers

Case 2:05-cv-04182-SRD-JCW   Document 16571-17   Filed 12/01/08   Page 6 of 18

Page 6

2007 U.S. Dist. LEXIS 56617, *13; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

throughout the chain of distribution passed through 100% of Defendants' OSB price increases. The testimony of Parr, Roberts, and Wussler that they often passed through none of the price increases thus directly contradicts a critical class allegation and materially undermines their credibility as class representatives. In these circumstances, Messrs. Parr, Roberts, and Wussler are inadequate class representatives and I will disqualify them. See, e.g., *Kline v. Wolf, 702 F.2d 400, 403 (2d Cir. 1983)*(lack of credibility [*14] of class representatives renders them inadequate under *Fed. R. Civ. P. 23(a)(4)*).

Plaintiffs ask that in the event I disqualify, they be permitted to substitute three new class representatives from the states previously represented by Parr, Roberts, and Wussler. *See Indirect Purchaser Plaintiffs' Response to the Court's Order Dated July 10, 2007, at 5* (Doc. No. 454.) I will allow Plaintiffs a reasonable period in which to offer new class representatives from Minnesota, Vermont, and West Virginia. See *Birmingham Steel Corp. v. Tennessee Valley Authority, 353 F.3d 1331 (11th Cir. 2003)* (allowing a reasonable opportunity to substitute an adequate class representative is generally favored); see also *Little Caesar Enterprises, Inc. v. Smith, 172 F.R.D. 236, 244 (E.D. Mich. 1997)*(district court may condition class certification upon "plaintiffs' production of an adequate representative within a fixed period of time").

In sum, with the exception of Parr, Roberts, and Wussler, I believe that Plaintiffs have satisfied Rule 23's adequacy requirements.

**B. *Rule 23(b)(3)* Requirements**

To certify a class under *Rule 23(b)(3)*, Plaintiffs must show both that common questions of law and fact predominate [*15] over questions unique to individual plaintiffs, and that a class action is superior to other methods of adjudication. *Fed. R. Civ. P. 23(b)(3)*. Defendants vigorously contest predominance, but concede superiority.

*Predominance*

In determining predominance, I must consider whether Plaintiffs can establish the three elements of their case through common proof: (1) existence of the alleged conspiracy; (2) injury or impact; and (3) damages. See *In re Linerboard Antitrust Litig., 305 F.3d 145, 156 (3d Cir. 2002)*; *Hydrogen Peroxide, 240 F.R.D. at 172)*. At this stage, Plaintiffs need not actually prove these elements; rather, they must offer a valid and detailed method by which they will do so at trial. See *Hydrogen Peroxide, 240 F.R.D. at 170-72*; *In re Flat Glass Antitrust Litig., 191 F.R.D. 472, 486-87 (W.D. Pa. 1999)*.

Although Defendants concede that proof of conspiracy is common to the class, they argue that Plaintiffs have not established that impact and damages are susceptible of common proof. *Def. Mem. in Opp. to Class. Cert. at 25-60*. I agree in part.

**1. Common Proof of Impact**

Plaintiffs offer two methods of establishing injury or impact with common proof. First, they invoke the "Bogosian [*16] short cut," by which injury may be presumed in certain antitrust cases. See *Bogosian v. Gulf Oil Corp., 561 F.2d 434, 454-55 (3d Cir. 1977)*; *Pl. Class Cert. Mem. at 23*. Second, they propose to show that any overcharge in the price of OSB was actually passed through the chain of distribution to the end users. *Pl. Class Cert. Mem. at 23-27*.

Courts in this Circuit have applied the *Bogosian* doctrine almost exclusively in direct purchaser antitrust actions. See, e.g., *Linerboard, 305 F.3d at 152* (applying the Bogosian short cut); *Hydrogen Peroxide, 240 F.R.D. at 173* (same); *In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 188 (D. N.J. 2003)*(same). The plaintiffs in Bogosian alleged that major oil companies had conspired unlawfully to tie gas station leases to purchases of gasoline supplied by the lessors. The Third Circuit held that once the plaintiffs established that there was a nationwide conspiracy to raise prices, that the free market prices would be lower than the prices paid, and that the plaintiffs made some purchases at the higher price, economic injury to all class members could be presumed. See *Bogosian, 561 F.2d at 455*. Only one court in this Circuit has applied this "short [*17] cut" in an indirect purchaser antitrust action. See *Flat Glass, 191 F.R.D. at 479* (applying the Bogosian short cut to both direct and indirect purchaser classes). I am not prepared to presume classwide impact here.

In Illinois Brick, the Supreme Court acknowledged that it is immensely difficult to determine classwide economic impact in indirect purchaser antitrust actions:

> Under an array of simplifying assumptions, economic theory provides a

Case 2:05-cv-04182-SRD-JCW    Document 16571-17    Filed 12/01/08    Page 7 of 18

Page 7

2007 U.S. Dist. LEXIS 56617, *17; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

precise formula for calculating how the overcharge is distributed between the overcharged party (passer) and its customers (passees). If the market for the passer's product is perfectly competitive; if the overcharge is imposed equally on all of the passer's competitors; and if the passer maximizes its profits, then the ratio of the shares of the overcharge borne by the passee and passer will equal the ratio of the elasticities of supply and demand in the market for the passer's product. Even if these assumptions are accepted, there remains a serious problem of measuring the relevant elasticities the percentage change in the quantities of the passer's product demanded and supplied in response to a one percent change in price. In view of the difficulties [*18] that have been encountered, even in informal adversary proceedings, with the statistical techniques used to estimate these concepts ... it is unrealistic to think that elasticity studies introduced by expert witnesses will resolve the pass-on issue.

See *Illinois Brick*, 431 U.S. at 741.

As I explain below, Plaintiffs here will similarly have great difficulty in establishing classwide impact, especially with respect to those class members who claim that an increase in Defendants' OSB prices increased the price of homes that included very small amounts of OSB. In these circumstances, it is inappropriate to presume class wide impact. See *Execu-Tech Business Sys., Inc. v. Appleton Papers, Inc., 743 So. 2d 19, 22 (Fla. Fourth DCA 1999)*(indirect purchasers not entitled to presumption of impact for the reasons stated in Illinois Brick); Ren v. Philip Morris Inc., 2002 WL 1839983, at *5 (Mich. Cir. Ct. 2002)(same); cf. *Bruggers v. Eastman Kodak Co., 202 Ill. 2d 435, 781 N.E.2d 269, 269 Ill. Dec. 472, 2002 WL 31044228, at *4 (N.C. Super. 2002)*(detailing complex evidentiary issues with regard to tracing impact). But see *Romero v. Philip Morris Inc., 2005 NMCA 35, 137 N.M. 229, 109 P. 3d 768, 793 (N.M. App. 2005)*("As a rule of thumb, a price fixing antitrust conspiracy model [*19] is generally regarded as well suited for class treatment" for both direct and indirect purchasers)(internal citations omitted).

Even if the "short cut" applied here, any reliance on Bogosian alone is misplaced. In direct purchaser actions, the Third Circuit also requires proof of actual classwide economic injury - a "belt and suspenders" approach to establishing impact. See *Linerboard, 305 F.3d at 153*. Thus, Plaintiffs must show, exclusive of any "short cut," that they can prove actual classwide impact at trial. See *Weisfeld v. Sun. Chem. Corp., 210 F.R.D. 136, 144 (D. N.J. 2002)*("Plaintiff must establish that each class member has, in fact, been injured by the alleged conduct."), aff'd *84 Fed. App'x 257 (3d Cir. 2004)*. Plaintiffs believe that they can meet this burden through the expert opinion of Dr. Robert Tollison that a price-fixing conspiracy necessarily injured each class member because the overcharge pass-through was nearly 100%. *Pl. Class. Cert. Mem. at 24; Tollison Decl. of January 11, 2007 at PP 30-31, 69*.

An antitrust plaintiff may demonstrate predominance through expert opinion. Cf. *Linerboard, 305 F.3d at 153*. It is the plaintiff's burden to establish that the expert's [*20] methodology is generally accepted, "will comport with the basic principles of econometric theory, will have any probative value, and will primarily use evidence that is common to all members of the proposed class." *Nichols v. SmithKline Beecham Corp., 2003 U.S. Dist. LEXIS 2049, 2003 WL 302352, at *4 (E.D. Pa. Jan. 29, 2003)*; see also *Weisfeld v. Sun Chem. Corp., 84 Fed. Appx. 257, 261-262 (3d Cir. 2004)*(at class certification, a district court should consider only whether the expert will employ a valid methodology and whether he has supported his conclusions with appropriately detailed analysis).

The mere submission of an opinion from an expert -- no matter how impressive his or her background -- does not automatically satisfy the predominance requirement. Thus, in *Blades v. Monsanto Co.* -- a horizontal price-fixing conspiracy class action in which the plaintiffs sought to show predominance through expert opinion -- the Eighth Circuit held that although the district court could not resolve "disputes between the parties' experts that go to the merits of the case," it was obligated to determine whether the plaintiffs' expert could establish "classwide injury" through "common evidence." *400 F.3d 562, 575 (8th Cir. 2005)*. [*21] Accordingly, the Eighth Circuit ruled that the district court properly concluded that because the plaintiffs' expert did not

Case 2:05-cv-04182-SRD-JCW   Document 16571-17   Filed 12/01/08   Page 8 of 18

Page 8

2007 U.S. Dist. LEXIS 56617, *21; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

adequately consider individual market conditions and wide variations in list prices, he could not establish classwide injury. *Blades, 400 F.3d at 572-75*.

The situation in *Blades* obtains here. Dr. Tollison's analysis cannot establish through common proof the impact suffered in the home buyer segment of the proposed class. That portion of Dr. Tollison's opinion addressing the home buyer segment often makes no sense and confounds the English language. For example, Defendants contend that economic injury to home buyers is not susceptible of classwide proof because many resellers absorbed any OSB price increase and so did not "pass through" the increase to the end-users. Obviously, if only some home buyers paid increased home prices, this suggests that Plaintiffs will have to prove economic impact customer by customer - exactly what the *Linerboard* Court condemned. See *Linerboard, 305 F.3d at 157-58* (citing *Newton v. Merrill-Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154 (3d Cir. 2001)*).

In response, Dr. Tollison opines that in the housing market, absorption and pass [*22] through are economists' "terms of art." *See N.T. of June 14, 2007 at 100, 106*. Thus, Dr. Tollison's definition of pass-through includes even those instances where contractors do not charge the home buyer for any increase in materials costs, so long as the contractor makes any profit at all:

> Q: And the pass-through rate, in this particular instance, is, in your mind, simply whether the builder made a profit on the sale of that home?
>
> Dr. Tollison: Yes. ?.
>
> Q: Let's start with May of 2002, before the alleged conspiracy began ... the home builder and home buyer enter into a [fixed-price agreement] ... to build and sell, and ... to buy the home for $ 100,000. That's it. No ups, no escalations, no changes. ... In July of 2002, the builder receives a change up in its cost for OSB that it in fact is going to use in constructing this house. ... The home builder builds the house, is not able to change the price that it charges, so it sells the house for $ 100,000. In that example, the price paid by the home buyer has not changed; is that correct?
>
> Dr. Tollison: Correct.
>
> Q: Okay. Notwithstanding the absence of any change in the price paid by the home buyer, is it your testimony that the home buyer has suffered [*23] impact if we assume that the increase in the OSB price paid by the builder was due to an alleged unlawful agreement among manufacturers? ...
>
> Dr. Tollison: Well, I would say yes, I think that the home builder, under those circumstances, would take the price increase out of his margin, and therefore it's been passed through. ...
>
> Q: And when you say "there is room within the margin to pass them through," would I understand that to mean - is that as long as the builder makes a profit in the sale of a home, covers all of its costs, then there is, in your definition, pass-through?
>
> Dr. Tollison: Yes.

*Tollison Dep. of February 14, 2007 at 49, 66-67; Tollison Dep. of May 4, 2007 at 49-50.* Thus, according to Dr. Tollison, if the price of OSB rises but the price of the home does not, the builder has nonetheless "passed through" his costs even though he did not actually charge the buyer more. As remarkable, in Dr. Tollison's view, the buyer has somehow suffered injury even though he did not pay any more for the home than he would have absent any conspiracy. Significantly, in analyzing transactions not involving the purchase or sale of a home, Dr. Tollison apparently contradicts himself, explaining that [*24] a cost increase that does not result in a price increase is an example of absorption, not pass-through:

> Q: What would your estimate of Bata be ... if price stays the same and cost goes up?
> ...
>
> Dr. Tollison: Well, in that construction ... it would be negative.
>
> Q: Okay. And negative means no pass-through, right?
>
> Dr. Tollison: Negative pass-through.

Case 2:05-cv-04182-SRD-JCW   Document 16571-17   Filed 12/01/08   Page 9 of 18

Page 9

2007 U.S. Dist. LEXIS 56617, *24; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

*See Tollison Dep. of May 4, 2007 at 110.*

More disturbing than Dr. Tollison's apparent inability to distinguish home costs that are passed through from those that are absorbed, is his grossly incomplete analysis of the housing market. Dr. Tollison opines that contractors build anticipated cost increases into their margins, resulting in higher contract prices than would otherwise be found in a competitive market. *See Pl. Reply Mem. at 49; Tollison Dep. of May 4, 2007 at 51; N.T. of June 14, 2007 at 132-35*. Thus, in Dr. Tollison's view, the price of OSB -- which comprises approximately one to two percent of the price of an average house -- drives the cost of all new homes that include OSB. *See Tollison Supp. Decl. at P 15; Tollison Dep. of May 4, 2007*. Yet, Dr. Tollison acknowledges that a number of other factors -- most notably location, housing starts, [*25] and demand for housing -- significantly affect the price of homes. *See Tollison Dep. of May 4, 2007 at 78, 98-100*. He nonetheless has not explained how he will determine which factors actually cause housing prices to increase and which merely correlate to such increases.

Dr. Tollison proposes to employ a multiple regression analysis to explain the relationship between OSB price increases and home price increases. "Multiple regression analysis is a statistical technique designed to determine the effect that two or more explanatory independent variables have on a single dependent variable." *Flat Glass, 191 F.R.D. at 486*; see also Daniel L. Rubinfeld, Reference Guide on Multiple Regression, Reference Manual on Scientific Evidence at 181 (Federal Judicial Center 2000). Other than OSB, however, Dr. Tollison's regression analysis included only "other materials costs," which he found to be "statistically significant," and a "regional dummy variable." *See Tollison Dep. of May 4, 2007 at 58; Tollison Supp. Decl. at PP 64-65*. Dr. Tollison explained that the results indicate that "increases in OSB and/or other material costs are positively related to increases in the four regional home price indices," [*26] as they had been at the national level. *Tollison Supp. Decl. at PP 64-65*. He has not analyzed the impact of housing demand apart from its impact on OSB prices, however. *Tollison Dep. of May 4, 2007 at 79, 98*. Nor has he examined local housing markets state by state, or the availability of mortgages to potential home buyers. *Tollison Dep. of May 4, 2007 at 90-91*. Thus, when stripped of his often impenetrable jargon and cryptic use of language, Dr. Tollison apparently opines that since 2002 -- during a period of mild economic inflation -- the costs of both OSB and new homes that included OSB rose.

Although Dr. Tollison believes that if asked, he could perform a regression analysis incorporating other variables, he apparently concedes that he does not know if he even has the data to attempt it:

> Q: Would it be possible for you or Dr. McClave to have fit a regression that took into account housing starts?
>
> Dr. Tollison: Yes. I think ... you're driving at a fully-specified model of housing prices. A demand and supply system that you can solve, and that has all the determinants of housing prices in it ... And I haven't done that. Because I don't think it's required to do at this stage of the litigation. [*27] What happens down the road, I don't know. ...
>
> Q: And there are a number of local factors that influence supply and demand for housing in localized areas, correct?
>
> Dr. Tollison: I don't know. As I said, I haven't looked.

*Tollison Dep. of May 4, 2007, at 46-47, 90*. Plaintiffs' counsel confirmed that to show predominance, Dr. Tollison "didn't need to" account for any variables other than the increased cost of OSB. *N.T. of June 14, 2007 at 142*. I disagree. Chief Judge Lord's decision in *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.* is quite instructive here. *50 F.R.D. 13 (E.D. Pa. 1970)*. A class of homeowners alleged that a manufacturers' conspiracy to increase the price of plumbing fixtures had caused economic injury to the class. With reasoning particularly applicable to the instant case, Judge Lord granted the defendants' motion to dismiss:

> [P]laintiffs would have the Court believe that as the result of an overcharge of approximately ten to twenty dollars, a builder selling a twenty, twenty-five, or thirty thousand dollar house raised his price to reflect this overcharge (assuming such overcharge reached the builder) ... it would be incredible if the price [*28] of a

Case 2:05-cv-04182-SRD-JCW Document 16571-17 Filed 12/01/08 Page 10 of 18

Page 10

2007 U.S. Dist. LEXIS 56617, *28; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

> house were determined not by the shifts in supply ... [and] demand in the market for homes as a whole but rather by a relatively minuscule change ... in the price of the plumbing fixtures.

*Id., at 26.*

Without Dr. Tollison identifying either the data or the appropriate variables, I do not see how he can establish on a classwide basis that an increase in the price of OSB *actually caused* an increase in home prices. See *Rossi v. Standard Roofing, Inc., 156 F.3d 452, 483 (3d Cir. 1998)*(an antitrust plaintiff must "prove that the defendant's illegal conduct was a material cause of its injury")(internal citations omitted). Indeed, the Illinois Brick Court condemned arcane theories like that offered by Dr. Tollison precisely because they cannot establish classwide impact in indirect purchaser antitrust actions:

> "[I]n the real economic world rather than an economist's hypothetical model," the latter's drastic simplifications generally must be abandoned ... attention to "sound laws of economics" can only heighten the awareness of the difficulties and uncertainties involved in determining how the relevant market variables would have behaved had there been no overcharge.

See *Illinois Brick, 431 U.S. at 742* [*29] (internal citations omitted).

Dr. Tollison's opinion regarding pass-through for home buyers has little probative value because he has not conducted any analysis of the "real economic world." As the *Illinois Brick* Court presaged, Dr. Tollison has not identified the variables he would need to include to prove his theory; he has not determined whether he could obtain the data for these variables even if he knew what they were. He has relied almost entirely on economic theory and generalizations about market competitiveness and "elasticities" of supply and demand, without analyzing the competitiveness or elasticities of actual housing markets. *See Tollison Dep. of February 14, 2007, at 199-200.* See *Illinois Brick, 431 U.S. at 743* ("[I]t is unrealistic to think that elasticity studies introduced by expert witnesses will resolve the pass-on issue."). In these circumstances, Plaintiffs have not offered a valid method of establishing through common proof economic impact to the home buyer segment of the proposed class. See *Linerboard, 305 F.3d at 155*.

Not every member of Plaintiffs' proposed class is a home buyer, however. Plaintiffs also seek to include those customers who purchased actual OSB [*30] for their own use. Establishing how Defendants' alleged conspiracy affected the end-use price of OSB itself -- as opposed to the prices of thousands of houses that included small amounts of OSB -- obviously requires a different, simpler analysis. See *Illinois Brick, 431 U.S. at 742* ("It is quite true that these difficulties and uncertainties [of proving common impact in indirect purchaser actions] will be less substantial in some contexts than in others.").

For this portion of the class, Dr. Tollison's opinion appears to have probative value. He has analyzed considerable market data that would affect the price of OSB. He evaluated the competitiveness of the OSB market, including whether companies set prices independently, their number and size, and whether they can freely enter or leave the market. *Tollison Decl. at P 56*. He evaluated OSB demand, and found it to be highly inelastic. He based this conclusion on actual data pertaining to production costs for OSB and plywood, a significantly more expensive substitute. *Tollison Decl. at PP 57-58*. Using data obtained from *Random Lengths* and from third-party distributors such as Home Depot, Lowe's, and BlueLinx, he traced the channels of [*31] distribution between Defendant manufacturers, distributors, and resellers, and concluded that pass-through -- as that term is commonly understood -- for actual OSB products was nearly 100%. *Tollison Decl. at PP 67, 74, 81-85*. Finally, Dr. Tollison analyzed cost and price data from seven OSB retailers and distributors, including several direct purchaser plaintiffs, and concluded that they were highly correlated. *Tollison Supp. Decl. at PP 51-56*. Thus, Dr. Tollison appears to have considered appropriate variables and data in creating his "univariant price-cost regression model." *Tollison Supp. Decl. at P 51*.

Defendants argue that establishing an increase in the end-use price of OSB is not susceptible of classwide proof. In support, Defendants point to the testimony of Messrs. Parr, Roberts, and Wussler that they did not always pass through their increased OSB costs. *See N.T. of June 14, 2007 at 155, -156, 169-171*. Defendants'

Case 2:05-cv-04182-SRD-JCW   Document 16571-17   Filed 12/01/08   Page 11 of 18

Page 11

2007 U.S. Dist. LEXIS 56617, *31; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

argument proves too much. The Illinois Brick Court underscored that establishing classwide impact in indirect purchaser antitrust actions is invariably difficult. In any indirect purchaser action of any size, anecdotal evidence could undoubtedly be found showing [*32] that an allegedly illegal price increase was not passed through by every reseller. Were such an argument sufficient to defeat certification, it would effectively end indirect purchaser antitrust actions altogether. In the instant case, the anecdotal evidence provided by three OSB resellers is insufficient to defeat certification of the multistate class.

In sum, although Dr. Tollison's analysis is not probative of whether an increase in Defendants' OSB prices caused an increase in home prices, it is probative of whether an increase in Defendants' OSB prices caused an increase in the ultimate retail price of OSB. Accordingly, I conclude that Plaintiffs have shown that impact as to end users who purchased actual OSB is susceptible of common proof, and I will certify a class composed of these purchasers only.

The following class representatives are thus no longer part of the modified class because they are home buyers only: Lacy Lang of California; Thomas Moreno of the District of Columbia; Jimmy Mallory of Florida; Paula Pearce of Massachusetts; Paul Bahan of Nevada; Jonathan Weidlinger of New York; and Susan Keachie of Wisconsin. *See Lang Dep. of February 14, 2007, at 24; Moreno Dep. of* [*33] *February 16, 2007 at 57, 85-86; Mallory Dep. of February 13, 2007 at 68, 70, 74; Pearce Dep. of February 6, 2007 at 17, 20; Bahan Dep. of February 13, 2007 at 28-40; Weidlinger Dep. of January 26, 2007 at 24-25; Keachie Dep. of February 13, 2007 at 41-43*. Plaintiffs thus have no class representatives from these states, and I will strike the states from the class definition. I will allow Plaintiffs a reasonable period in which to substitute new class representatives. See *Birmingham Steel Corp., 353 F.3d at 1331*.

**2. Common Proof of Damages**

In addition to the fact of injury, Plaintiffs must offer common proof as to the degree to which the redefined class (i.e., Plaintiffs who purchased actual OSB) have sustained damage. Plaintiffs propose to do so through multiple regression and tax incidence analysis--both accepted methods of common proof in this Circuit. *Tollison Decl. at PP 12, 40-41*; *Pl. Class Cert. Mem. at 26*. See, e.g., *Hydrogen Peroxide, 240 F.R.D. at 175*. Although Dr. Tollison has not finalized his econometric models, he has identified the variables he would employ and the data he would need to do so, and has indicated that the data is readily available. *Tollison Decl. at 38-39,* [*34] *43-44*. Although damages will necessarily vary from customer to customer, this does not defeat class certification. See *In re Pharm. Indus. Average Wholesale Price Litig., 230 F.R.D. 197, 220 (E.D. Pa. 2001)*, aff'd, *305 F.3d 145 (3d Cir. 2002)* (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 817 (3d Cir. 1995))*. Accordingly, I find that Plaintiffs have shown that they can prove damages on a common basis for the redefined class.

*Superiority*

In determining whether a class action is superior to other forms of adjudication, I must consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

*Fed. R. Civ. P. 23(b)(3)*.

Defendants do not contest that any individual recovery would be far too small to justify individual suits, or that any Plaintiff who wishes to litigate individually will [*35] have the opportunity to opt out of the class. Defendants acknowledge that this suit was originally brought as a class action and consolidated in this Court. In addition, the Parties have identified no pre-existing individual litigation with which the class action might conflict.

Defendants also do not dispute the desirability of concentrating the litigation of Plaintiffs' claims in this Court. As I have noted, the law grants district courts original jurisdiction over claims of this nature. *28 U.S.C. § 1332(d)(2)(A)*. Congress thus envisioned that such claims -- involving thousands of plaintiffs from many states -- would be litigated in one forum.

As for the final factor, Defendants contend that this

Case 2:05-cv-04182-SRD-JCW   Document 16571-17   Filed 12/01/08   Page 12 of 18

Page 12
2007 U.S. Dist. LEXIS 56617, *35; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

class action will be unmanageable because of the complexity of the pass-through issues and because determining who is a member of the class will require thousands of mini-trials. *Def. Mem. in Opp. to Class. Cert. at 64; Def. Joint Sur-Reply Mem. at 51*.

Once again, I disagree. Whether the pass-through determination precludes common proof of impact and damages is a question of predominance, not superiority, and I have already addressed it.

Although Defendants are correct that each customer will [*36] have to prove class membership, this does not necessarily defeat superiority. At the class certification stage, the proposed class need only be ascertainable by some objective criteria; I need not actually ascertain it. See, e.g., *In re Methyl Tertiary Butyl Ether (MBTE) Products Liability Litig., 241 F.R.D. 185, 196 (S.D.N.Y. 2007)*("[I]t is the class, not each member, that must be ascertained ... the ascertainability of a class depends on whether there will be a definitive membership in the class once judgment is rendered."); *Chaz Concrete Co. v. Codell, 2006 U.S. Dist. LEXIS 60013, 2006 WL 2453302, at \*5* (E.D. Ky. Aug. 23, 2006 ("The identities of the class members do not need to be specified for certification, but the proposed class must be sufficiently definite in order to demonstrate that a class actually exists"). But see *Miller v. Janssen Pharm. Prods., L.P., 2007 U.S. Dist. LEXIS 31863, 2007 WL 1295824, at \*5 (S.D. Ill. May 1, 2007)*(the court must be able to determine from the outset whether a particular individual is a member of the proposed class).

The proposed class, as modified, is ascertainable by objective criteria: whether potential class members purchased actual OSB manufactured by one of the Defendants between June 1, 2002 and [*37] the present. Although class members will have to present some proof -- receipts or photographs, for example -- that they fall within this definition, such a determination should be straightforward and objective. As Plaintiffs suggest, this may be done after the liability determination, either by the Court or by the claims administrator. *See Pl. Reply Mem. at 17*.

Finally, Defendants do not contend that the number of state laws included in the multistate class renders the action unmanageable, and I do not believe that it does. Plaintiffs will be divided into subclasses by state and their claims tried separately.

Accordingly, I find that Plaintiffs have satisfied the superiority requirement.

**C. Fluid Recovery/Nature of Damages**

Plaintiffs propose to collect any damages in the form of fluid recovery, permitting them to allot portions of an aggregate award to individual Plaintiffs during claims administration. *Indirect Purchaser Pl. Second Amended Compl. at P 74*. Defendants argue that fluid recovery is inappropriate because it would permit Plaintiffs to avoid proving damages by common proof. *Def. Mem. in Opp. to Class. Cert. at 62*. Defendants also contend that fluid recovery would violate due [*38] process and the Rules Enabling Act because it would improperly calculate damages based on unsubstantiated claims of injury. *Def. Mem. in Opp. to Class. Cert. at 63-64*. See *28 U.S.C. § 2072(b)*.

Awarding damages through fluid recovery is controversial and varies by jurisdiction.

Although the Third Circuit has not yet addressed the practice, several district courts in this Circuit have condemned it. See *Perry v. Fleet Boston Fin. Corp., 229 F.R.D. 105, 117 (E.D. Pa. 2005)*(fluid recovery acceptable for settlement classes but not for contested adjudications); *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co., 162 F.R.D. 482, 487 (E.D. Pa. 1995)*(fluid recovery inappropriate based on facts of the case); *Jaroslawicz v. Engelhard Corp., 724 F. Supp. 294, 301 n.8 (D. N.J. 1989)*("Fluid recovery ... is marked by a complete divorce from individualized methods of proof, and by a disturbing tendency toward the wholesale redistribution of money for the 'common good.'"); *Al Barnett & Son., Inc. v. Outboard Marine Corp., 64 F.R.D. 43, 55 (D. Del. 1974)* (fluid recovery inappropriate in antitrust action because average awards erode due process)(citing *Eisen v. Carlisle & Jacquelin, 479 F.2d 1005 (2d Cir. 1973)*, [*39] rev'd on other grounds, *417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974))*.

Plaintiffs argue that "several" of the 21 indirect purchaser states (Plaintiffs have not specified which) permit, or at least do not prohibit, fluid recovery. *Pl. Reply Mem. at 57*. Defendants have not responded to this argument. Accordingly, I will reserve judgment on this issue until the damages phase of the litigation. Under Plaintiffs' proposed trifurcated trial plan (should I adopt it), the jury would determine damages only after

Case 2:05-cv-04182-SRD-JCW   Document 16571-17   Filed 12/01/08   Page 13 of 18

Page 13
2007 U.S. Dist. LEXIS 56617, *39; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

rendering a verdict on liability (including both the existence of a conspiracy and impact). *See Indirect Purchaser Plaintiffs' Proposed Trial Management Plan*. Moreover, because I have removed the home buyers from the class, the Parties may wish to refine their arguments concerning fluid recovery and other theories of aggregated damages.

### D. Standing to Maintain Actions Under the Laws of Arizona, New Mexico, and South Dakota

Defendants argue that because Plaintiffs have withdrawn the class representatives from Arizona and South Dakota (and have not replaced them), and have never had a class representative from New Mexico, Plaintiffs lack standing to raise claims on behalf of potential plaintiffs in those states. [*40] *Def. Joint Sur-Reply Mem. at 54; App. D to Def. Joint. Sur-Reply Mem., April 27, 2007 Letter from Daniel D'Angelo to Karen M. Hoffman; Indirect Purchaser Pl. Second Amended Compl. at P 14-37*. Plaintiffs argue that because the laws of those states are similar to the laws of other states included in the class, named Plaintiffs from other states may represent class members from Arizona, New Mexico, and South Dakota. *Pl. Mem. in Resp. to Def. Joint Sur-Reply, at 27*. I disagree.

These three states each require that at least some part of the alleged injury have occurred within the state and have affected consumers within the state. See *Ariz. Rev. Stat. § 44-1402* ("A contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce, any part of which is within this state, is unlawful."); *N.M. Stat. Ann. § 57-1-1* ("Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful."); *S.D.C.L. § 37-1-3.1* ("A [*41] contract, combination, or conspiracy between two or more persons in restraint of trade or commerce any part of which is within this state is unlawful."); *In re Terazosin Hydrochloride Antitrust Litigation, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001)*(under state statutes, named plaintiffs who do not reside in or did not make purchases in Arizona, New Mexico, or South Dakota do not have standing to assert claims on behalf of potential plaintiffs in those states); *Bunker's Glass Co. v. Pilkington, 202 Ariz. 481, 47 P. 3d 1119, 1130 (Ariz. App. Div. 2002)*(noting that cases brought under state antitrust laws affect only consumers within that state); *In re South Dakota Microsoft Antitrust Litigation, 2005 SD 113, 707 N.W.2d 85, 91 (S.D. 2005)*(same).

The remaining class representatives -- who reside outside Arizona, New Mexico, and South Dakota -- have not alleged that they sustained injury within these states. Moreover, by their own definition, they are not attempting to represent Plaintiffs in other states: "Each named Plaintiff seeks to represent a class of end users in their (sic) particular state." *Pl. Reply Mem. at 75*. Thus, Plaintiffs have not stated a claim on their own behalf under the laws of Arizona, New Mexico, [*42] or South Dakota, and may not represent class members within these states. See *Terazosin, 150 F. Supp. 2d at 1371 (S.D. Fla. 2001)*("None of these statutes authorizes antitrust actions based on commerce in other states, and the named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief."). Accordingly, I will strike Arizona, New Mexico, and South Dakota from the class definition.

### E. The Multistate Class

In sum, pursuant to *Rule 23(b)(3)*, I will certify a class of end user indirect purchasers of actual OSB only, divided into the following subclasses by state: Iowa, Kansas, Maine, Michigan, Mississippi, North Carolina, North Dakota, and Tennessee.

### II. Nationwide Class Pursuant to *Rule 23(b)(2)*

Plaintiffs also seek to represent a class of plaintiffs in all 50 states who, between June 1, 2002 and the present, indirectly purchased either OSB for their own use or structures containing OSB. A (b)(2) class action may be maintained if "the [*43] party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Fed. R. Civ. P. 23(b)(2)*. Plaintiffs acknowledge that Illinois Brick precludes them from seeking damages as a nationwide class under federal law, but argue that they have standing to seek injunctive relief only under *Section 16* of the Clayton Act. *Pl. Class Cert. Mem. at 16*. See *15 U.S.C. § 26*. The Third Circuit has held that indirect purchasers may request injunctive relief under this provision if they demonstrate that they meet the usual requirements for equitable relief: injury, causation, and redressability. *In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 400 (3d Cir. 2000)*.

2007 U.S. Dist. LEXIS 56617, *43; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

Defendants contend that Plaintiffs cannot maintain both (b)(2) and (b)(3) actions because the nature of relief sought renders them mutually exclusive, and that in any event Plaintiffs cannot maintain a (b)(2) action because they seek predominantly monetary damages.

**A.** *Rule 23(a)* **Prerequisites**

In addition to all the members of the multistate class, the nationwide class includes those [*44] individuals whose state laws do not allow indirect purchaser plaintiffs to recover damages. That difference notwithstanding, Plaintiffs meet the *Rule 23(a)* requirements with respect to the nationwide class for substantially the same reasons discussed with respect to the multistate class.

*Numerosity*

The proposed nationwide class is even larger than the multistate class, which I have already determined meets Rule 23's numerosity requirement. Moreover, the numerosity requirement is relaxed when the primary relief sought is injunctive. *Weiss v. York Hosp., 745 F.2d 786, 808 (3d Cir. 1984)*. As Defendants concede, Plaintiffs' proposed class -- consisting of potentially thousands of people -- certainly meets Rule 23's numerosity requirement.

*Commonality*

Plaintiffs have identified (and Defendants do not dispute) the following common issues of law or fact: whether Defendants engaged in a conspiracy; whether Defendants violated *Section 1* of the Sherman Act; the duration and extent of any conspiracy; whether Defendants fraudulently concealed the existence of their illegal conduct; whether Defendants' conduct injured Plaintiffs; and whether Plaintiffs and the proposed Nationwide Class are entitled [*45] to injunctive relief. *Pl. Class Cert. Mem. at 10-11*. Accordingly, I find that Plaintiffs have satisfied the commonality requirement.

*Typicality*

Defendants also concede this issue. Here, Plaintiffs allege that all members of the nationwide class suffered injury resulting from indirect purchases of OSB manufactured by Defendants. *Pl. Class Cert. Mem. at 13*. Each class member bases his or her claim on the same legal theory and seeks the same injunctive relief. Accordingly, I find that Plaintiffs have satisfied the typicality requirement. See *Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985)*.

*Adequacy of Representation*

Plaintiffs assert that they have no conflicts with each other or with the members of the proposed class, that all class members seek the same injunctive relief, and that their attorneys are highly experienced antitrust class action litigation. *Pl. Class Cert. Mem. at 14-15*.

The named Plaintiffs do not appear to present any conflicts of interest, either among themselves or with the proposed class. With the exceptions of Messrs. Parr, Roberts, and Wussler, they have presented similar allegations and are seeking the same type of relief. I am satisfied that they will fairly and [*46] adequately represent the other class members. As for Parr, Roberts, and Wussler, the credibility problems that make them inadequate to represent the (b)(3) multistate class also impugn their adequacy to represent the nationwide class.

As I have noted, Lead and Co-Lead Counsel are experienced class action litigators. They have capably prosecuted this case, and I am satisfied that they will continue to do so.

Accordingly, I find that Plaintiffs -- other than Parr, Roberts, and Wussler -- have satisfied the adequacy requirement for the nationwide class.

**B.** *Rule 23(b)(2)* **Requirements**

To certify a class under *Rule 23(b)(2)*, Plaintiffs must show that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief ... with respect to the class as a whole." *Fed. R. Civ. P. 23(b)(2)*. Thus, Plaintiffs must show: (1) actual or threatened injury "from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur"; (2) causation; and (3) likelihood that the equitable relief will redress the injury. See *Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 130, 89 S. Ct. 1562, 23 L. Ed. 2d 129 (1969)*; [*47] *Warfarin, 214 F.3d at 399*; *In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 520 (S.D.N.Y. 1996)*. Because (b)(2) classes must be cohesive, Plaintiffs must show that these elements are susceptible of common proof. See *Barnes v. American Tobacco Co.,*

Case 2:05-cv-04182-SRD-JCW Document 16571-17 Filed 12/01/08 Page 15 of 18

Page 15

2007 U.S. Dist. LEXIS 56617, *47; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

*161 F.3d 127, 143 (3d Cir. 1998)*; *In re Managerial, Prof'l and Technical Employees, 2006 U.S. Dist. LEXIS 249, WL 38937, at *6 (D. N.J. Jan. 5, 2006)*; *N.T. of June 14, 2007 at 98* (Plaintiff's counsel: "for purposes of the injunctive relief claim ... we do have to show impact ...").

Defendants argue that I may not certify because of the nature of the relief Plaintiffs seek. In addition, I am troubled by the proposed class' lack of cohesiveness.

*Injunctive Versus Monetary Relief*

Defendants contend that I may not certify a (b)(2) class because Plaintiffs primarily seek monetary damages. *Def. Mem. in Opp. to Class. Cert. at 72*. See, e.g., *Barabin v. Aramark Corp., 2003 U.S. App. LEXIS 3532, 2003 WL 355417, at *1 (3d Cir. 2003)*(for a (b)(2) class, monetary damages must be "incidental to the primary claim for injunctive or declaratory relief"). Plaintiffs respond that I need not even consider this issue because the claims for damages and injunctive relief are entirely separate -- they arise [*48] under different statutes (Clayton Act versus state statutes) and are brought on behalf of different classes. *Pl. Reply Mem. at 91*.

I agree with Plaintiffs. Although the classes are represented by the same named Plaintiffs, they are not identical. The nationwide class potentially includes many members from states that do not permit damages actions. Thus, a significant portion of the nationwide class seeks injunctive relief only. In these circumstances, it is appropriate to certify two separate classes under *Rules 23(b)(2)* and *23(b)(3)*. See *Jefferson v. Ingersoll Int'l. Inc., 195 F.3d 894, 899 (7th Cir. 1999)*("Divided certification also is worth consideration. It is possible to certify the injunctive aspects of the suit under *Rule 23(b)(2)* and the damages aspects under *Rule 23(b)(3)*."); *Cohen v. Chicago Title Ins. Co., 242 F.R.D. 295, 2007 U.S. Dist. LEXIS 26137, 2007 WL 1067034, at *5 (E.D. Pa. Apr. 5, 2007)* (same); *In re New Motor Vehicles Canadian Export Antitrust Litig., 2006 U.S. Dist. LEXIS 10240, 2006 WL 623591, at*7 (D. Me. Mar. 10, 2006)*(certifying separate classes under *Rules 23(b)(2)* and *23(b)(3)*).

*Cohesiveness*

As Plaintiffs note, "*Rule 23(b)(2)* contains two components, one requiring defendants to have acted in some uniform manner toward the class [*49] so as to require relief and a second that requires the class to be entitled to the same relief." *Pl. Reply Mem. at 90-91*. If Plaintiffs' allegations are true, Defendants have acted in a uniform manner toward the class. For the reasons I have already discussed, however, Plaintiffs cannot show through common proof that home buyers either have been or likely will be injured by Defendants' conduct and so are entitled to the same injunctive relief. See *Weiss v. York Hosp., 745 F.2d 786, 806-07* (for *Rule 23(b)(2)* actions, a showing of threatened injury will suffice). Thus, Plaintiffs have not shown that they can prove actual or potential injury, causation, or redressability on a common basis because of the "disparate factual circumstances" among the home buyers. *Barnes, 161 F.3d at 143*.

Plaintiffs have, however, presented probative evidence that the buyers of actual OSB for end use have been and will continue to be injured by any price-fixing conspiracy, that the Defendants' conduct, if wrongful, would be the cause of such injury, that an injunction will redress this injury, and that they can establish all of these elements through common proof. Accordingly, Plaintiffs have satisfied the [*50] cohesiveness inquiry as to the end user buyers of actual OSB, and I will certify for injunctive relief a nationwide class of these indirect purchasers only. I will strike from the class those representatives who are home buyers only.

**CONCLUSION**

In sum, Plaintiffs have not established predominance or cohesiveness with respect to home buyers, and so I will strike them from both proposed classes. In addition, Plaintiffs do not have standing to pursue claims in Arizona, New Mexico, or South Dakota, and so I will strike them from the proposed multistate class as well. Because I conclude that Messrs. Parr, Roberts, and Wussler are inadequate class representatives, I will also strike their states -- Minnesota, Vermont, and West Virginia -- from the multistate class. Finally, because Plaintiffs have no end-user class representatives from California, the District of Columbia, Florida, Massachusetts, Nevada, New York, or Wisconsin, I will also strike these states from the multistate class.

Accordingly, the Motion for Class Certification by Indirect Purchaser Plaintiffs is granted in part and denied in part. I certify the following classes:

2007 U.S. Dist. LEXIS 56617, *50; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

(1) Multistate Class Pursuant to *Rule 23(b)(3)*, [*51] for damages

All residents of the following states who, as end users, indirectly purchased for their own use, and not for resale, new OSB manufactured and sold by one or more of the defendants between June 1, 2002 and the present (the "Class Period"): Iowa, Kansas, Maine, Michigan, Mississippi, North Carolina, North Dakota, and Tennessee. Excluded from the Class are: all federal, state, or local governmental entities; Defendants and subsidiaries and affiliates of Defendants; all persons who purchased OSB directly from any Defendant or from any other manufacturer of OSB; all buying groups or co-operatives and all persons who purchased OSB through, or as part of, any buying groups or co-operatives; and all persons who purchased OSB only as part of a house or other structure. The Class shall be divided into subclasses by state.

(2) Nationwide Class Pursuant to *Rule 23(b)(2)*, for injunctive relief

All persons in the United States who, as end users, indirectly purchased for their own use, and not for resale, new OSB manufactured and sold by one or more of the defendants between June 1, 2002 and the present (the "Class Period"). Excluded from the Class are: all federal, state, or local governmental [*52] entities; Defendants and subsidiaries and affiliates of Defendants; all persons who purchased OSB directly from any Defendant or from any other manufacturer of OSB; all buying groups or co-operatives and all persons who purchased OSB through, or as part of, any buying groups or co-operatives; and all persons who purchased OSB only as part of a house or other structure.

An appropriate Order follows.

/s **Paul S. Diamond, J.**

**ORDER**

AND NOW, this 3rd day of August, 2007, upon consideration of Indirect Purchaser Plaintiffs' Motion to Certify Class (Doc. No. 262), Defendants' Joint Opposition (Doc. No. 316), Plaintiffs' Reply (Doc. No. 354), Defendants' Sur-reply (Doc. No. 385), Plaintiffs' Response (Doc. No. 416), and all related exhibits, and after oral argument, it is hereby ORDERED that the Motion for Class Certification is **GRANTED** in part and **DENIED** in part, as follows:

1. A multistate plaintiff class is hereby **CERTIFIED** pursuant to *Rule 23(b)(3)* consisting of:

All residents of the following states who, as end users, indirectly purchased for their own use, and not for resale, new OSB manufactured and sold by one or more of the defendants between June 1, 2002 and the present (the "Class Period"): [*53] Iowa, Kansas, Maine, Michigan, Mississippi, North Carolina, North Dakota, and Tennessee. Excluded from the Class are: all federal, state, or local governmental entities; Defendants and subsidiaries and affiliates of Defendants; all persons who purchased OSB directly from any Defendant or from any other manufacturer of OSB; all buying groups or co-operatives and all persons who purchased OSB through, or as part of, any buying groups or co-operatives; and all persons who purchased OSB only as part of a house or other structure. The Class shall be divided into subclasses by state.

2. The multistate class, and each state subclass, are certified for resolution of the following factual and legal issues:

a. Whether the Defendants and their co-conspirators engaged in a contract, combination or conspiracy among themselves to fix, raise, maintain, or stabilizes the prices of, or allocate the market for, OSB sold or distributed in the United States;

b. The duration and extent of the

2007 U.S. Dist. LEXIS 56617, *53; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

contract, combination, or conspiracy;

c. Whether each Defendant participated in the contracts, combinations, or conspiracies;

d. Whether the Defendants and their co-conspirators engaged in conduct that violated state [*54] antitrust, unfair competition, or consumer protection laws of the Indirect Purchaser States;

e. Whether the anti-competitive conduct of the Defendants and their co-conspirators caused prices of OSB to be artificially inflated to non-competitive levels;

f. Whether the Defendants and their co-conspirators unjustly enriched themselves as a result of their inequitable conduct at the expense of the members of the Classes;

g. Whether the Defendants and their co-conspirators fraudulently concealed the existence of their unlawful conduct; and

h. Whether the Plaintiffs and other members of the Classes were injured by Defendants' conduct and, if so, the appropriate measure of damages.

3. A nationwide plaintiff class is hereby **CERTIFIED** pursuant to *Rule 23(b)(2)* consisting of:

All persons in the United States who, as end users, indirectly purchased for their own use, and not for resale, new OSB manufactured and sold by one or more of the defendants between June 1, 2002 and the present (the "Class Period"). Excluded from the Class are: all federal, state, or local governmental entities; Defendants and subsidiaries and affiliates of Defendants; all persons who purchased OSB directly from any Defendant [*55] or from any other manufacturer of OSB; all buying groups or co-operatives and all persons who purchased OSB through, or as part of, any buying groups or co-operatives; and all persons who purchased OSB only as part of a house or other structure.

4. The nationwide class is certified for resolution of the following factual and legal issues:

a. Whether the Defendants and their co-conspirators engaged in a contract, combination or conspiracy among themselves to fix, raise, maintain, or stabilizes the prices of, or allocate the market for, OSB sold or distributed in the United States;

b. The duration and extent of the contract, combination, or conspiracy;

c. Whether each Defendant participated in the contracts, combinations, or conspiracies;

d. Whether the Defendants and their co-conspirators engaged in conduct that violated *Section 1* of the Sherman Act;

e. Whether the anti-competitive conduct of the Defendants and their co-conspirators caused prices of OSB to be artificially inflated to non-competitive levels; and

f. Whether Plaintiffs and the Class are entitled to injunctive relief.

5. The following representative parties will fairly and adequately protect the interests of the respective [*56] state classes:

a. Charles Lindaman of Iowa

b. Edward Sloane of Kansas

c. Allen Mazerolle of Maine

d. Donald Rogers of Michigan

e. Delynn Burkhalter of Mississippi

2007 U.S. Dist. LEXIS 56617, *56; 68 Fed. R. Serv. 3d (Callaghan) 1008;
2007-2 Trade Cas. (CCH) P75,843

  f. Mike Curlew of North Carolina

  g. Michael Burd of North Dakota

  h. Scott Kelly of Tennessee

6. The following representative parties will fairly and adequately protect the interests of the nationwide class:

  a. Charles Lindaman of Iowa

  b. Edward Sloane of Kansas

  c. Allen Mazerolle of Maine

  d. Donald Rogers of Michigan

  e. Delynn Burkhalter of Mississippi

  f. Mike Curlew of North Carolina

  g. Michael Burd of North Dakota

  h. Scott Kelly of Tennessee

7. Pursuant to *Rule 23(g)*, the following law firms are appointed as Class Counsel: Gilman & Pastor, LLP (Lead Counsel); Straus & Boies, LLP (Co-Lead Counsel); Schubert & Reed, LLP (Co-Lead Counsel); and Trump, Alioto, Trump & Prescott (Co-Lead Counsel).

8. By **September 4, 2007**, the Parties shall jointly submit a class notice program and forms of notice. If the Parties are unable to agree on forms of notice, the Parties shall submit proposed notice programs and forms of notice, accompanied by a memorandum explaining that Party's position. Each Party shall respond to the other's proposed notice [*57] programs and forms of notice no later than **September 11, 2007**.

9. No later than **August 24, 2007**, Plaintiffs shall offer any substitute class representatives for the following states: California, the District of Columbia, Florida, Maine,

Minnesota, Nevada, New York, Vermont, West Virginia, and Wisconsin.

AND IT IS SO ORDERED.

/s **Paul S. Diamond, J.**