

Newberg on Class Actions
Database updated December 2008

Alba Conte and Herbert B. Newberg

Chapter 3. Prerequisites for Maintaining a Class Action

References

### § 3:25. Adequate representation, Rule 23(a)(4)—Application of no conflicts test

Defendants have raised various challenges to the satisfaction of the adequacy of representation test, based on the contention that the plaintiff has a conflict with the class. Numerous conflicting situations that do not pertain to the class claims directly have been held not to bar a finding of adequate representation.[1] For example, in Linney v. Cellular Alaska Partnership,[2] a settled class action by minority partners in partnership that provided cellular telephone services against the majority partner, alleging breach of contract and breach of fiduciary duty, the court of appeals held that the class was adequately represented by counsel and class representatives, the settlement was fundamentally fair, adequate, and reasonable, and the district court was not required to make specific findings of fact regarding objections.

The court noted that there is no per se rule that the continued participation by previous class counsel, whose conflict of interest led the district court previously to deny class certification, constitutes inadequate representation under Rule 23(a). As was the case here, the addition of new and impartial counsel can cure a conflict of interest even where previous counsel continues to be involved in the case. In fact, the continued involvement of previous counsel can be highly beneficial to the class. Here, previous counsel possessed a wealth of experience related to the class actions, garnered after years of settlement negotiations with AT&T. A per se rule that would deprive new class counsel of the benefit of such experience clearly would not be in the best interests of the class. Of course, the district court had to, as it did in this case, inquire into whether impermissible conflict continues to taint the settlement proceedings. Here, after a fairness hearing to which all objectors were invited, the district court found that the settlement was reached during arm's-length negotiations. The district court committed no abuse of discretion in finding that the class was adequately represented.

The court also rejected the argument that new class counsel overestimated the perceived deficiencies in the class's claims in order to reach a quick settlement. The record reflected that new class counsel were being realistic about the class's chances of prevailing in litigation. First, new class counsel were not inadequate in recognizing the value of the settlement given considerable

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 2 of 19

CLASSACT § 3:25                                                                                          Page 2
1 Newberg on Class Actions § 3:25 (4th ed.)

statute of limitations problems. AT&T regularly notified minority owners of the management fees, and many members of the class complained at the time but chose not to sue. The fraudulent concealment doctrine would not have tolled the statute of limitations if the partners actually knew of the alleged wrongs, or if the partners were not reasonably diligent in informing themselves of the alleged wrongs. The court also declined to accept the argument that new class counsel erred by not insisting that the class be allowed to opt-out of the monetary portion of the settlement, citing cases to suggest that the option to opt-out is required where monetary relief is sought in addition to injunctive relief. However, this court has held that due process requires the option to opt-out only in the limited set of claims that are wholly or predominately for money judgments. In this case, the value of the injunctive relief ($20.9 million to $34.2 million) far outweighed the value of the settlement fund ($6 million before costs and attorney's fees, and approximately $3.7 to $4 million after). Thus, new class counsel were not inadequate for failing to insist on the option to opt-out given that such an option was not required and given the risk that AT&T would not settle for it.

Moreover, new class counsel were not wrong in their estimate of the class's damages. Appellants argued that counsel should have sought the diminution in value of the class's minority interests caused by defendants' conduct. However, individuals may not bring RICO claims for the diminution in value of their corporate interests. While appellants asserted in a footnote in their reply brief that this could easily have been cured by amendment, they provide no analysis in support of this proposition, thus, making it impossible to assess.

The district court did not abuse its discretion in finding that the class representatives were adequate under Rule 23(a)(4). Appellants made no arguments that class representatives were unqualified, were antagonistic to the class, did not share an interest with the class, or were in collusion with AT&T. Furthermore, merely pointing out that there were some class members who objected to the settlement is not enough to show that the representatives were inadequate.

Other conflict challenges relating to the class claims may represent potential conflicts only over damages distribution or type of relief sought, or speculative conflicts that may never materialize. Many courts have held that speculative conflict should be disregarded at the class certification stage.[3]

Potential conflicts relating to relief issues which would arise only if the plaintiffs succeed on common claims of liability on behalf of the class will not bar a finding of adequacy[4] and may be resolved, when the need arises, by the formation of subclasses at the relief stage.[5]

Still other conflict problems have been eliminated by the court's use of initial subclasses,[6] intervention,[7] class redefinition or limitation,[8] opt-out provisions,[9] or party realignment.[10]

Finally, some cases involve fundamental, irreconcilable conflicts with the class that render class representation inadequate.[11]

For example, in Amchem Products, Inc. v. Windsor,[12] the court of appeals properly found

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW    Document 16571-24    Filed 12/01/08    Page 3 of 19

CLASSACT § 3:25                                                                Page 3
1 Newberg on Class Actions § 3:25 (4th ed.)

that serious intra-class conflicts precluded the class from meeting the adequacy of representation requirement in an asbestos mass tort action. While the members of the class were united in seeking the maximum possible recovery for their asbestos-related claims, the Supreme Court, in an opinion by Justice Ginsberg, found that the settlement did more than simply provide a general recovery fund. Rather, as the Third Circuit noted, "it makes important judgments on how recovery is to be allocated among different kinds of plaintiffs, decisions that necessarily favor some claimants over others."[13]

> Most saliently, for the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future.

> The disparity between the currently injured and exposure-only categories of plaintiffs, and the diversity within each category are not made insignificant by the District Court's finding that petitioners' assets suffice to pay claims under the settlement. See 157 F.R.D., at 291. Although this is not a "limited fund" case certified under Rule 23(b)(1)(B), the terms of the settlement reflect essential allocation decisions designed to confine compensation and to limit defendants' liability. For example,…the settlement includes no adjustment for inflation; only a few claimants per year can opt out at the back end; and loss-of-consortium claims are extinguished with no compensation.[14]

The settling parties, thus, achieved a global compromise with no structural assurance of fair and adequate representation for the diverse groups and individuals affected. The Court noted that the Third Circuit found no assurance here, either in the terms of the settlement or in the structure of the negotiations, that the named plaintiffs operated under a proper understanding of their representational responsibilities.

Serious conflicts may involve the potential for attorney's fees. These conflicts can be remedied by replacing the class representative. In In re Discovery Zone Securities Litigation,[15] a class was certified in a securities fraud action alleging fraud-on-the-market theory under Rule 10b-5. Two class representatives had antagonistic interests. Stark was the personal stockbroker for proposed class counsel Mark Gardy, and Weisburgh served as personal broker to proposed class counsel Dennis Johnson.

> Defendants contend that Stark and Weisburgh's interest in maximizing their clients' attorneys' fees—fees that potentially could be invested with them—puts them at odds with the rest of the class, whose interest lies in being fully compensated for their losses. This opposition is said to be heightened given that the potential attorneys' fees far exceed the few hundred dollars that Stark and Weisburgh could recover in personal damages.

> Plaintiffs respond by claiming that the situation is no more nefarious than if the representatives were class counsel's grocer or gas station attendant. While counsel might indeed use the attorneys' fees the case generated to purchase more groceries or gas, plaintiffs maintain that

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 4 of 19

CLASSACT § 3:25                                                                                    Page 4
1 Newberg on Class Actions § 3:25 (4th ed.)

this would not taint the representation. Plaintiffs additionally point to Weisburgh's testimony that there are no "quid pro quos" for his acting as a plaintiff, and that he has never promised to refer clients to Johnson in exchange for Johnson's maintaining his account… .[16]

The court found the plaintiffs' arguments to be unpersuasive.

First, the grocer/gas station attendant analogy is inapposite. In contrast to stockbrokers, grocers and gas station attendants generally do not receive commissions from grocery sales and gas purchases. Moreover, conflict of interest concerns are intensified when, as here, the class representatives' possible recovery is dwarfed by potential attorneys' fees… .Finally, the Court's job under Rule 23(a)(4) is not to discern whether the class representative-class counsel, but rather to assess the likelihood that a conflict of interest may exist… .

As personal stockbrokers for class counsel, Stark and Weisburgh have sufficiently close business relationships with them to create a possible conflict of interest. First, they are in a position to render valuable investment tips to class counsel if their claims are given preferential treatment. The fact that Johnson has represented Weisburgh and those close to him in similar actions, and that Stark has referred clients to Gardy, demonstrates that class counsel and their brokers already have a close give-and-take relationship… .

In short, the relationship between Stark and Weisburgh and class counsel is inherently riddled with the appearance of and potential for impropriety. [17]

The court would not deny class certification on these grounds, but instead, would grant plaintiffs sixty days to replace Stark and Weisburgh with new representatives. With respect to the other two class representatives, the court rejected the defendants' argument that they did not possess sufficient knowledge to meet the standard of Rule 23(a)(4). The court noted that in "legally complex actions such as securities fraud litigation, a plaintiff need not have expert knowledge of all aspects to qualify as a class representative."[18]

Some of the conflict challenges grow out of parallel challenges to satisfaction of the typicality requirement of Rule 23(a)(3), while other conflict challenges raise independent circumstances that do not overlap with those involving claim typicality.[19]

> [FN1] Horton v. Goose Creek Independent School District, 677 F.2d 471, 4 Ed. Law Rep. 387, 34 Fed. R. Serv. 2d 221 (5th Cir. 1982), opinion vacated, by 690 F.2d 470 (Nov. 1, 1982) (civil rights/education). It was error for the trial court to deny class certification on the ground that many students supported defendant's policy.

> Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13 (W.D. N.Y. 1995). Class certification was granted in an action by retirees against a tire manufacturing company to enforce a contractual obligation to provide lifetime medical benefits. The court rejected the defendant's contention that the plaintiffs did not meet the adequacy of representation

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 5 of 19

CLASSACT § 3:25                                                                                                      Page 5
1 Newberg on Class Actions § 3:25 (4th ed.)

requirement. Plaintiffs' complaint demanded, among other things, injunctive relief requiring Goodyear to reinstate and provide the health care benefits negotiated by Goodyear and OCAW for class members and eligible dependents for the duration of their lives. According to defendant, this demand created conflicting interests among putative class members because the defendant "gratuitously enhanced benefits for certain class members beyond the benefits specified in the collective bargaining agreements." Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 14 to 15 (W.D. N.Y. 1995). The relief plaintiffs requested would injunctively require defendant to reinstate benefits to negotiated levels, reducing or canceling benefits for certain class members.

A fair reading of the complaint does not support this objection. Plaintiffs represent that they have brought this action "to vindicate the lifetime character of their benefits," not to eliminate or reduce benefits. This Court agrees that "[t]he Complaint, far from demanding the cancellation of subsequent coverage increases, is calculated to protect minimum contractual rights against unlawful infringement." (Response, p. 5.) An injunction "requiring Goodyear to reinstate and provide the health care benefits negotiated by Goodyear and OCAW for class members and eligible dependents for the duration of their lives" would accomplish just that. While requiring defendant to reinstate and provide certain benefits, it would not prevent defendant from providing additional gratuitous benefits. Reinstatement of negotiated benefits does not, on logic alone, preclude defendant from conferring additional benefits on anyone. This Court agrees with the Magistrate Judge that "defendant has not explained how judgment in favor of the class would require the company to reduce or cancel any retiree or spousal benefits." (R&R, p.9)

> Halford v. Goodyear Tire & Rubber Co., 161 F.R.D. 13, 15 (W.D. N.Y. 1995).
>
> In re Proxima Corp. Sec. Litig., Fed. Sec. L. Rep. (CCH) ¶98,236 (S.D. Cal. May 3, 1994) (no conflict of interest existed between those class members who bought and sold during the class period and those who retained their stock).
>
> Sherman v. Widder, Fed. Sec. L. Rep. (CCH) ¶98,054 (D. Cal. Jan 5, 1994). The named plaintiff was an adequate representative of a shareholder class despite the fact that he sold his shares at a profit during the class period when, if the plaintiff could prove that the price of the stock was artificially inflated as a result of material misrepresentations, he would have suffered damages.
>
> Gruby v. Brady, 838 F. Supp. 820 (S.D. N.Y. 1993) (ERISA). The certification of a class of participants in a union pension fund was not defeated on adequacy of representation grounds by the presence of both retired and active members in the proposed class.

While the interests of retired and active Members may have diverged with respect to whether benefits levels should have been reduced in light of the Fund's current financial crisis, all Fund Members seek the make-whole relief claimed by the named plaintiffs for breach of the defendants' fiduciary duties, as well as monies allegedly owed to the Fund by employers.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 6 of 19

CLASSACT § 3:25                                                                                       Page 6
1 Newberg on Class Actions § 3:25 (4th ed.)

Gruby v. Brady, 838 F. Supp. 820, 827 (S.D. N.Y. 1993). Moreover, as any recovery went to the fund as a whole, and as fund participants could bring an action only in a representative capacity on behalf of the entire fund, the proposed class had to include all fund participants, including retired and active members. The class was certified under Rule 23(b)(1)(B).

Simmons v. City of Kansas City, Kan., 129 F.R.D. 178 (D. Kan. 1989) (employment/race). In an action alleging a discriminatory promotion policy, defendants contented that the named plaintiffs had interests that were antagonistic to those of the proposed class members because some named plaintiffs had received promotions while others did not. The court held, "[A]t most, defendants have highlighted the inevitable factual variations among named plaintiffs and potential class members. Such variations are insufficient to undermine the adequacy of the named plaintiffs' representation." Simmons v. City of Kansas City, Kan., 129 F.R.D. 178, 180 (D. Kan. 1989).

Barefield v. Chevron, USA, 44 Fair Empl. Prac. Cas. (BNA) 1885 (N.D. Cal. Sept 9, 1987) (employment/race and ethnicity).

Goldwater v. Alston & Bird, 116 F.R.D. 342, 354 (S.D. Ill. 1987) (securities). A claim by the named plaintiff, in an action charging the fraudulent marketing of bonds, that relevant bonds were not tax-exempt did not render representation inadequate despite the defendants' contention that an affirmative finding on that point could potentially subject the entire class to tax liability on the interest they received but did not declare. The tax-exempt status of the bonds was an integral part of the fraudulent marketing scheme because they were sold in the tax-exempt bond market, and, thus, the plaintiff's allegation was not antagonistic to the subject matter of the litigation. "[I]t is in fact complementary to it… . The antagonism, if any, lies in the successful prosecution of the case, and this Court cannot state that potential tax liability presents an antagonistic interest that defeats the plaintiff's claims of being an adequate representative… ."

Jansen v. Greyhound Corp., 692 F. Supp. 1022 (N.D. Iowa 1986) (ERISA). A Rule 23(b)(2) class of retired employees of a meat packing company was certified in an action against the former operator of the plant. The fact that some earlier retirees retired under contracts where benefits initially were lower did not render their interests antagonistic to those of the class representatives because benefits for the earlier retirees were elevated to the same level as later retirees, in part through collective bargaining agreements.

In re Wickes Cos, Sec. Litig., Fed. Sec. L. Rep. (CCH) ¶9,057 (S.D. Cal. Jan 4, 1983) (securities).

Backman v. Polaroid Corp., 540 F. Supp. 667 (D. Mass. 1982) (securities). Sophistication of investor was not ground for finding conflict when it was unrelated to causation.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 7 of 19

CLASSACT § 3:25                                                                                     Page 7
1 Newberg on Class Actions § 3:25 (4th ed.)

See also Robin v. Doctors Officenters Corp., 686 F. Supp. 199 (N.D. Ill. 1988) (securities). On a motion to decertify the plaintiff class and for leave to serve third-party complaints on the managing underwriter of a public offering, the court held that the plaintiffs' business and social relationships with the putative third-party defendant and its principals did not render their representation inadequate. In previously granting the class certification motion, the court had considered the identical arguments in opposition and determined that neither the personal nor professional relationships between the relevant parties created a conflict, and the defendants had not offered any additional facts in support of the argument. Any potential conflict could be resolved by means other than decertification. The court noted that many absent class members used the proposed third-party defendant's brokerage services, and notice to the class would disclose that this party would not be a defendant for purposes of recovery by the class. Also, the class certification order would be amended to require the addition of at least one class representative, together with her or his counsel, who was not a social or business acquaintance of the underwriter or its principals. The fact that class counsel had rendered legal advice to the underwriter before the commencement of the action did not call for decertification when neither the plaintiffs nor the underwriter desired to disqualify class counsel, and the addition of another class representative and her or his legal counsel would circumvent any potential conflict.

Cf. In re Gulf Oil/Cities Service Tender Offer Litigation, 112 F.R.D. 383, 388 (S.D. N.Y. 1986) (securities). In litigation arising out of an abortive 1982 tender offer by the Gulf Oil Company for the stock of Cities Service Company, a former employee of Cities Service was a proper class representative when such employment did not present even the appearance of impropriety, but named plaintiffs who were currently employed by Cities Service were not qualified to serve as class representatives because their interests were potentially adverse to those of class members. Another named plaintiff who was a member of a law firm which was representing another class member was also disqualified when there was a sufficient number of class representatives and "to avoid even the slightest appearance of impropriety."

[FN2] Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 41 Fed. R. Serv. 3d 1079 (9th Cir. 1998).

[FN3] Chisholm v. U.S. Postal Service, 665 F.2d 482 (4th Cir. 1981) (employment discrimination). Award of promotion and front pay to class representative was too hypothetical a reason for finding plaintiff inadequate representative.

In re Appliance Store, Inc., 158 B.R. 384, 27 Fed. R. Serv. 3d 176 (Bankr. W.D. Pa. 1993), as amended, (Sept. 20, 1993) (bankruptcy). A class of former employees of a Chapter 7 debtor was certified in an adversary action against secured creditors, seeking unpaid wages. The court rejected the defendants' contention that it was likely that the amount of any recovery in this case would be insufficient to compensate all members of the class for the full amount of their claims and that the representative plaintiffs would have an

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 8 of 19

CLASSACT § 3:25 Page 8
1 Newberg on Class Actions § 3:25 (4th ed.)

incentive to depict the kinds of jobs they performed as more beneficial to the secured creditors in order to maximize their own recoveries at the expense of certain other class members. Sufficient funds were available with which to compensate each class member in full, and there was no reason to think that the extent, if any, to which services proved by one class member benefitted secured creditors was any greater or less than the extent to which services provided by another class member conferred a benefit.

Hoffman Elec, Inc. v. Emerson Elec. Co., Fed. Sec. L. Rep. (CCH) ¶95,821 (W.D. Pa. Jan 15, 1991) (securities). Plaintiffs in a limited partnership brought a securities class action arising from the defendant corporation's purchase of the limited partnership's assets. In a securities case, where a plaintiff will often have to rely heavily on the abilities, advice, and experience of counsel, there was no close professional relationship between the class representative and class counsel. If an attorney were disqualified because of a conflict of interest, another member of the firm could continue representation.

Alvarado Partners, L.P. v. Mehta, 130 F.R.D. 673, 17 Fed. R. Serv. 3d 319 (D. Colo. 1990) (securities). Defendant class of 33 underwriters was certified. "[C]ourts have generally declined to consider conflicts, particularly as they regard damages, generally sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." Alvarado Partners, L.P. v. Mehta, 130 F.R.D. 673, 676, 17 Fed. R. Serv. 3d 319 (D. Colo. 1990) (citing Newberg on Class Actions (2d ed.)).

Meiresonne v. Marriott Corp., 124 F.R.D. 619, 625 (N.D. Ill. 1989) (employment/sex). The court rejected defendant's argument that because class members competed against each other for the same promotions, none could adequately represent the class. Such a proposition would "doom almost every class action charging discrimination in promotion—a drastic rewrite of the law in this area."

Sheftelman v. Jones, 667 F. Supp. 859 (N.D. Ga. 1987) (securities). Representation of competing classes by class counsel against common defendants did not render representation inadequate in a Rule 10b-5 action by bond purchasers. Though the potential conflict of interest presented some concern, many of the alleged conflicts were illusory and speculative at that time, and there existed procedural safeguards which would resolve any conflict that could arise.

Anderson v. Bank of the South, N.A., 118 F.R.D. 136 (M.D. Fla. 1987) (securities). The fact that plaintiffs' counsel represented competing classes against common named defendants in at least four other class actions or proposed class actions did not defeat adequacy of representation when the conflict was speculative. Judgments had to be obtained, and defendants had to be unable to satisfy the judgments before a conflict could arise.

International Union, United Auto., Aerospace and Agr. Implement Workers of America,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 9 of 19

CLASSACT § 3:25                                                                  Page 9
1 Newberg on Class Actions § 3:25 (4th ed.)

UAW v. State of Mich., 45 Fair Empl. Prac. Cas. (BNA) 463, 1987 WL 109075 (E.D. Mich. 1987) (employment/sex). In this action by classified employees and a union on behalf of all classified employees of the State of Michigan employed in historically and predominantly female classifications, plaintiffs challenged the state's system for setting employee compensation. The plaintiff union was an adequate representative despite the fact that some class members were represented by other unions and others were unrepresented, and despite the union's representation of male-dominated and mixed job classifications as well as predominantly female classifications.

Ivy v. Meridian Coca-Cola Bottling Co., 108 F.R.D. 118 (S.D. Miss. 1985) (employment/race). The court rejected the defendant's contention that the named plaintiffs were not qualified for any promotion, and, therefore, were not adequate class representatives. The employer used wholly subjective standards to judge its employees' qualifications. Thus, the employer could not plead lack of qualification when its promotion process was challenged as discriminatory.

In re Unioil Securities Litigation, 107 F.R.D. 615 (C.D. Cal. 1985) (securities). Named plaintiffs were adequate representatives despite defendants' contention that they had interests adverse to short sellers, market makers, and ins-and-outs. Differences in damages do not preclude class certification. If conflicts arise later, the action may be bifurcated or the class members grouped into subclasses.

[FN4] Halderman v. Pennhurst State School & Hospital, 612 F.2d 84 (3d Cir. 1979), cert. granted, 447 U.S. 904, 100 S. Ct. 2984, 64 L. Ed. 2d 853 (1980) and judgment rev'd, 451 U.S. 1, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981) (mental health). Possible disagreement among class members as to appropriate relief is no bar to certification at liability stage.

Wilson v. Great American Industries, Inc., 94 F.R.D. 570, 33 Fed. R. Serv. 2d 1384 (N.D. N.Y. 1982) (securities). Plaintiff was adequate representative though he sought a remedy which might cause other shareholders to lose money. Remedy was pleaded in alternative, and it was for court to decide proper remedy if plaintiff prevailed.

[FN5] Fisher v. Procter & Gamble Mfg. Co., 613 F.2d 527 (5th Cir. 1980) (employment discrimination). Fifty-two class members who objected to consent decree should have been made into subclasses and formally recognized.

Cf. Kamerman v. Steinberg, Fed. Sec. L. Rep. (CCH) ¶92,913 (S.D.N.Y. Sept. 9, 1986) (securities). In a suit by shareholders of The Walt Disney Company against purchasers of Disney stock, proposed named plaintiffs were inadequate representatives. Their roles in both class and derivative litigation presented an impermissible conflict of interest, because recovery in the class suit could reduce potential recovery in the derivative suit. Also, the opposition of certain plaintiffs to the creation of a subclass favored by other plaintiffs indicated inability of plaintiffs to cooperate in litigation.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 10 of 19

CLASSACT § 3:25                                                                                                  Page 10
1 Newberg on Class Actions § 3:25 (4th ed.)

[FN6] U.S. Parole Commission v. Geraghty, 445 U.S. 388, 100 S. Ct. 1202, 63 L. Ed. 2d 479, 29 Fed. R. Serv. 2d 20 (1980) (criminal justice).

Boucher v. Syracuse University, 164 F.3d 113, 131 Ed. Law Rep. 635, 42 Fed. R. Serv. 3d 659 (2d Cir. 1999). In an action by female students against the University, alleging discrimination against female athletes in the University's allocation of participation opportunities and alleging that female athletes did not receive benefits equal to those received by male athletes, the district court should have certified present and future female softball players as a subclass, rather than merely excluding them from the certified class, but the students did not raise the broader claim on behalf of all current and future female students interested in varsity athletics at the University generally.

Plaintiff students "individually and on behalf of all others similarly situated" filed suit in May of 1995 against Syracuse University, alleging numerous violations of Title IX. Seven of the eight named plaintiffs were at that time members of Syracuse's club lacrosse team and the eighth was a member of the University's club softball team. The plaintiffs argued that Syracuse discriminated against female athletes in its allocation of participation opportunities (which included decisions regarding which varsity teams to field as well as how many opportunities for participation by female varsity athletes are thereby created as a result of those decisions), and alleged that Syracuse provided unequal benefits to varsity female athletes as compared to varsity male athletes, and provided unequal scholarship funding to varsity female athletes as compared to varsity male athletes. Just over 50% of Syracuse's student population was female, yet when this complaint was filed, women made up only 32.4% of its athletes. In its 1993-94 National Collegiate Athletic Association submission, Syracuse stated that of its 681 varsity student-athletes, 217 were women, while 464 were men. These numbers reflected a 19% disparity between the percentage of varsity athletes who were female and the percentage of the University's students who were female.

At the time that this suit was begun in May of 1995, the University funded eleven men's varsity teams and nine women's varsity teams. Just prior to the filing of the complaint, Syracuse announced a plan to add two new varsity women's teams to its athletic program: women's varsity soccer and women's varsity lacrosse. These teams began to play, respectively, in the 1996-97 and the 1997-98 academic years, thus, bringing the number of varsity teams funded by the school to eleven men's and eleven women's. The University established five of its nine women's varsity teams in 1971—when it first funded women's varsity sports. It dropped fencing in 1972, and replaced it with field hockey. Crew was added as a women's varsity team in 1977. Three additional women's sports were added to the varsity roster in 1981. After 1981, no new women's varsity team was created by the University until the addition of the varsity soccer team in 1997. Thus, until the filing of this complaint in 1995, fourteen years passed by without the University creating any new women's varsity teams. In the course of this litigation, Syracuse announced plans to institute a varsity women's softball team which, according to the University's

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW Document 16571-24 Filed 12/01/08 Page 11 of 19

CLASSACT § 3:25 Page 11
1 Newberg on Class Actions § 3:25 (4th ed.)

representations at oral argument, would begin play in the 1999-2000 academic year.

The court concluded that although the district court correctly found potential conflicts between members of a class that included both women interested in playing varsity lacrosse and women who wished to play varsity softball, it should have certified two sub-classes—one for each sport—rather than certifying only one class and excluding from that class members of the second.

Because full implementation of a varsity women's softball team would render the remaining live aspect of this case moot, the court again chose not to reach the merits of the University's safe harbor defense, and preferred instead to remand the case to the district court with instructions to dismiss the case if the University completed its plan to institute a varsity women's softball team by the date indicated. Should the University not live up to its representations, the district court was ordered to certify a class of current and future women students interested in playing varsity softball and to revisit the merits of the case at that time. Although nowhere in their complaint did plaintiffs challenge the allocation of funding between female and male club sports at Syracuse, the district court improperly certified a class of female club athletes to prosecute such a claim. The plaintiffs did not pursue discovery or take any action on this claim—which was essentially created by the district court. Nonetheless, the court granted summary judgment to Syracuse. A court cannot create a cause of action that a party did not raise and then decide the issue against that party.

The court could not create a class of those women who are interested in varsity athletics at Syracuse generally when that issue was never clearly presented in the complaint nor during the prosecution of this case. Too often, both in their briefs, and at oral argument, plaintiffs in this case made clear that their interests were more specific: equal treatment among varsity athletes, and varsity status for women's lacrosse and softball. Thus, the court would take no position on the merits of such a broader suit, and the applicability or not of the safe harbor provisions of Title IX as defenses to it were not before it.

Evans v. City of Chicago, 689 F.2d 1286 (7th Cir. 1982) (overruled on other grounds by, ) and (overruling on other grounds recognized by, Evans v. City of Chicago, 873 F.2d 1007 (7th Cir. 1989))Norman v. Johnson, 739 F. Supp. 1182 (N.D. Ill. 1990) (civil rights). The trial court properly subclassed plaintiffs according to arguments they raised against statute's effect on them.

Quintana v. Harris, 663 F.2d 78 (10th Cir. 1981) (government benefits). When a plaintiff class is denied certification because of conflict within the class, plaintiff should be given reasonable time to construct subclasses.

Williams v. State Bd. of Elections, 696 F. Supp. 1559 (N.D. Ill. 1988) (Voting Rights Act). A proposed class of African-American and Latino voting-age residents in a voting dilution

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 12 of 19

CLASSACT § 3:25                                                                                       Page 12
1 Newberg on Class Actions § 3:25 (4th ed.)

case would be divided into subclasses of African-American and Latino residents when the court was not persuaded that there would inevitably be common questions of fact with respect to all members of the proposed class.

[FN7] Cotterall v. Paul, 755 F.2d 777, 1 Fed. R. Serv. 3d 235 (11th Cir. 1985) (criminal justice). Trial court erroneously refused to certify a class on the basis of inadequate representation when it refused to permit a potentially adequate representative to intervene because a class had not been certified.

Woolen v. Surtran Taxicabs, Inc., 684 F.2d 324 (5th Cir. 1982) (antitrust). Intervention by persons who are already class members but who are highly antagonistic to class representative protects intervenors' interests because they cannot opt out even if class plaintiff does not represent them adequately and avoids subsequent collateral attacks on final judgment.

[FN8] Payne v. Travenol Labs, Inc., 673 F.2d 748 (5th Cir), cert denied, 459 U.S. 1038 (1982) (employment discrimination). When subclassing was not possible, it was proper for trial court to limit the class to African-American females, when the nature of the complaint put African-American males in direct competition with them.

Blake v. Arnett, 663 F.2d 906 (9th Cir. 1981) (property rights). When members of a counterclaim class seeking fishing rights on disputed territory were themselves at odds, class was narrowed to include only members of plaintiffs' own tribe.

Foster v. Center Tp. of LaPorte County, 527 F. Supp. 377 (N.D. Ind. 1981), aff'd, 673 F.2d 1334 (7th Cir. 1981) (government benefits). Persons who would not benefit from injunctive relief would be excluded from class.

[FN9] Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507 (9th Cir. 1978) (labor). Though an exclusion option is not always a complete answer to alleged conflict among class members, it would fairly protect the rights of any dissident members of a union suing an employer for back pay.

In re Potash Antitrust Litig., 1995-1 Trade Cas. (CCH) ¶70,885 (D. Minn. Jan 12, 1995). In an action by fertilizer producers alleging that potash producers conspired to fix the wholesale price of potash, the adequacy of representation requirement was met despite the defendants' claim that the named plaintiffs' long-term market objectives and interest conflict with those of the majority of the putative class, larger volume purchaser, who had a greater interest in securing a long-term source of potash for their customers. The fact that an illegally controlled potash market tended to favor the long-term interests of several large members of the putative class was not sufficient to prevent class certification. In addition, the large volume purchasers who did not wish to participate in the proposed class action could opt out of the suit.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 13 of 19

CLASSACT § 3:25                                                           Page 13
1 Newberg on Class Actions § 3:25 (4th ed.)

[FN10] White v. Local 942, Laborers' Intern. Union of North Am., 90 F.R.D. 368 (D. Alaska 1981), aff'd in part, vacated in part, rev'd in part, 688 F.2d 850 (9th Cir. 1982) (labor). Union members who approved of dues increase challenged by other members would be ably represented by defendant union.

Cf. Secretary of Labor v. Fitzsimmons, 805 F.2d 682, 6 Fed. R. Serv. 3d 155 (7th Cir. 1986) (ERISA). In an appeal by the Secretary of Labor of the approval of a comprehensive settlement of actions brought by the participants in a pension fund against trustees, the court of appeals held that the district court improperly certified a class of all persons on whose behalf a contribution was or was required to be made to a pension fund, which included benefit claimants as well as asset mismanagement claimants, when there was a clear conflict of interests between the two groups. The settlement provided for the liberalization of the pension benefit rules which would result in a greater number of members becoming eligible for pension benefits, and, thus, for every dollar spent on the benefits claimants, there would be one less dollar available for the mismanagement group. Though courts have held that on rare occasions the unnamed class plaintiffs whose interests are antagonistic to those of other class members may be adequately represented by defendants in a class action, in this case the defendant agreed in settlement to liberalize the pension benefit rules, which was "antithetical" to the interests of the asset management group.

[FN11] General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission, 446 U.S. 318, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980). "In employment discrimination litigation, conflicts might arise, for example, between employees and applicants who were denied employment and who will, if granted relief, compete with employees… . Under Rule 23, the same plaintiff could not represent these classes." General Tel. Co. of the Northwest, Inc. v. Equal Employment Opportunity Commission, 446 U.S. 318, 331, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980) (dictum).

Rutherford v. City of Cleveland, 137 F.3d 905, 40 Fed. R. Serv. 3d 66 (6th Cir. 1998). In an action by nonminority applicants for the position of police patrol officer challenging the constitutionality of a consent decree entered in a prior race discrimination action brought against the city by an organization representing African-American police officers, and this organization intervened as a party-defendant, the court of appeals held that the police officers' organization that had been a party to prior action had no commonality of interest or injury with nonminority applicants, and nonminority applicants, thus, were not prevented by § 108 of the Civil Rights Act of 1991 from bringing the current action. The district court improperly held that both this court's decision in Rafferty v. City of Youngstown, 54 F.3d 278, 1995 FED App. 154P (6th Cir. 1995) and § 108 deprived the appellants of standing to maintain this action. The district court reached its conclusion by determining that appellants' interests were adequately represented by the FOP and the CPPA throughout the course of the *Shield* litigation, especially in the negotiations

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 14 of 19

CLASSACT § 3:25                                                                Page 14
1 Newberg on Class Actions § 3:25 (4th ed.)

culminating in the amended consent decree entered in that litigation. The court of appeals concluded that neither § 108 nor its decision in *Rafferty* deprives appellants of standing to maintain this action. Section 108 of the Civil Rights Act of 1991, 42 U.S.C.A. § 2000e-2(n)(1)(B) provides in pertinent part as follows:

A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws—…(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

The Report of the House Education and Labor Committee stated:

Subsection 703(m)(1)(B) sets a standard analogous to that of Rule 23 of the Federal Rules of Civil Procedure, and permits preclusion of subsequent challenges to court decrees by persons whose interests "were adequately represented by another person who challenged such judgment or order prior to or after" entry. The term "adequately represented" is intended to have the meaning usually associated with the term under Rule 23.

H.R. REP. NO. 102-40(I), at 57, reprinted in 1991 U.S.C.C.A.N. 549, 595. The court noted that there are similarities in some of the concerns addressed by prerequisites 23(a)(2), 23(a)(3), and 23(a)(4), comparing Newberg on Class Actions (3d ed.) (the two factors that are now predominately recognized as the basic guidelines for the Rule 23(a)(4) prerequisite are absence of conflict and assurance of vigorous prosecution). Here, there was no commonality of interest or injury between the prior parties (the FOP and the CPPA) and the appellants who are seeking to become patrol officers, because the members of the FOP and the CPPA are all current employees. Those people who were already employed suffered no injury related to the hiring procedures for subsequent hires compelled by the amended consent decree. The FOP and the CPPA earlier opposed the consent decree, at least in part, because it covered promotions, the issue directly affecting their members, yet despite initial vigorous opposition to the extension of the consent decree, the two unions eventually agreed to the amended consent decree that just covered hiring, the issue not affecting their members (who already were employees), but only affecting applicants like the appellants. These circumstances established that far from there being a commonality of interest or injury, there was, in fact, a conflict of interest. The interest of the FOP and CPPA in securing promotion opportunities for their members was different from and posed a potential conflict with the interest asserted by appellants in securing hiring opportunities under the hiring process created by the amended consent decree. That potential conflict manifested itself in the decision by the FOP and CPPA to abandon their opposition to the amended consent decree covering the hiring process; it appeared they did so in exchange for the amended consent decree not covering the promotion process. As a result, in abandoning an issue affecting applicants only, the FOP and CPPA concomitantly abandoned any purported representation of the interests of applicants. The court found that in the absence of commonality and the presence of a conflict, the FOP and the CPPA did not meet the adequate representation requirements under Rule 23, and thereby failed to

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 15 of 19

CLASSACT § 3:25                                                                                              Page 15
1 Newberg on Class Actions § 3:25 (4th ed.)

qualify as adequate representatives under § 108.

The court found that the facts in *Rafferty* distinguish it from the facts presented in this case, and *Rafferty* was also distinguishable because it was decided under the law that existed prior to the enactment of § 108 of the 1991 Civil Rights Act.

Grasty v. Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC, 828 F.2d 123 (3d Cir. 1987) (overruling recognized by, ) and (overruling recognized by, *Collier v. Montgomery County Housing Authority*, 192 F.R.D. 176 (E.D. Pa. 2000))*Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) (labor/LMRA). The district court abused its discretion in denying certification of a class of union members on adequacy of representation grounds. It is not necessary that all named plaintiffs meet the Rule 23(a)(4) requirements (citing Newberg on Class Actions (2d ed.)). While it would appear proper to preclude one plaintiff from class representation when she was concededly an officer of the local as well as the local's delegate to the joint board during part of the relevant period, it was questionable as to whether another plaintiff's positions as vice-chair and secretary-treasurer of the shop association were determinative when there were no allegations of misconduct by the shop association, and her position with that association would not create a conflict affecting her ability to represent the class.

Roby v. St. Louis Southwestern Ry. Co., 775 F.2d 959, 3 Fed. R. Serv. 3d 269 (8th Cir. 1985) (employment/race). The district court properly decertified a class of African-American employees alleging racial discrimination by the defendant railway company when the plaintiffs failed to satisfy any of the requirements of Rule 23(a). In particular, the named plaintiffs were inadequate representatives because they were not members of the union which could negotiate certain contested bargaining agreements.

United Independent Flight Officers, Inc. v. United Air Lines, Inc., 756 F.2d 1274 (7th Cir. 1985) (employment/ADEA, ERISA, Railway Labor Act). Class certification was properly denied when a number of possible conflicts existed between the named plaintiffs and class members.

Hardin v. Harshbarger, 814 F. Supp. 703, 25 Fed. R. Serv. 3d 1139 (N.D. Ill. 1993) (civil rights). A plaintiff who sought a declaration that the state practice of charging a filing fee for the initiation of protection orders was unconstitutional and also sought damages did not have standing to represent the proposed class when the plaintiff's claims were moot; she had already obtained a permanent injunction prohibiting the court clerk from charging and collecting the fee, and the state legislature had passed a law prohibiting the filing fee requirement statewide at the time of the complaint. The plaintiff also lacked standing to represent those class members who sought protection orders in other counties when no case or controversy existed between plaintiff and other counties. Although the plaintiff may have had valid compensatory claims against defendants, these claims did not guarantee that the plaintiff would vigorously protect the interests of the remaining class members. Also,

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 16 of 19

CLASSACT § 3:25                                                      Page 16
1 Newberg on Class Actions § 3:25 (4th ed.)

defendants' defense that res judicata precluded any recovery by the plaintiff posed representation problems sufficient to deny certification on Rule 23(a)(4) grounds.

Leroy v. Paytel III Management Assocs, Fed. Sec. L. Rep. (CCH) ¶97,352 (S.D.N.Y. Nov 24, 1992). The putative class representative in a securities suit did not meet the typicality or adequacy of representation requirements when he was subject to statute of limitations defenses. There was a material issue of fact regarding whether the plaintiff was aware of the alleged fraud two years before filing suit.

Epifano v. Boardroom Business Products, Inc., 130 F.R.D. 295 (S.D. N.Y. 1990) (securities). A named plaintiff purchaser of stock units was not an adequate class representative when she purchased her units from a broker-dealer solely owned by her husband, and an SEC rule prohibits a broker from participating in a purchase for an account in which the broker has an interest. If this plaintiff were a class representative, counsel for the class might not conduct as rigorous an examination of potential claims against her, her husband, or her husband's business, and if the defendants had claims for contribution against her husband and his business, the plaintiff could have interests that conflicted with those of the class.

Warren v. City of Tampa, 693 F. Supp. 1051 (M.D. Fla. 1988), judgment aff'd, 893 F.2d 347 (11th Cir. 1989) (Voting Rights Act), citing Newberg on Class Actions (2d ed.) for the proposition that conflicts pertaining to the specific issues being litigated will bar class certification.

Block v. First Blood Associates, 691 F. Supp. 685 (S.D. N.Y. 1988). The numerosity requirement was not satisfied when there were, at most, only 57 investors in a limited partnership, the investors had invested at least $50,000 each, their names and addresses were available before the commencement of the action, and it was practicable to communicate with each class member. Moreover, potential conflicts regarding the named plaintiff's position with respect to the tax consequences of the relevant investment affected both numerosity and adequacy of representation.

Robin v. Doctors Officenters Corp., 123 F.R.D. 579 (N.D. Ill. 1988). A class was certified in light of allegations that the named plaintiff lacked neutrality and failed to obtain a substitute representative after being ordered to do so by the court. Deficiencies in representation cannot be cured by a Rule 23(c) notice, and decertification would not prejudice the unnamed class members who were the purported beneficiaries of the litigation. No class member responded to the class notice soliciting an additional class representative, and those who were interested in pursuing their claims individually could do so.

Katz v. Comdisco, Inc., 117 F.R.D. 403, 408 (N.D. Ill. 1987) (securities). One of two stock purchaser named plaintiffs was an inadequate representative when the plaintiff "suffered

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 17 of 19

CLASSACT § 3:25                                                                                                   Page 17
1 Newberg on Class Actions § 3:25 (4th ed.)

no injury, but instead profited during the alleged nondisclosure scheme," by selling more shares than he bought during the class period and earning proceeds of almost $60,000.

Margaret Hall Found., Inc. v. Strong, Fed. Sec. L. Rep. (CCH) ¶93,359 (D. Mass. July 30, 1987) (securities). Husband and wife named plaintiffs were inadequate representatives of a class of investors when they each provided inconsistent and conflicting testimony regarding reliance issues. Other named plaintiffs were adequate representatives.

Kamerman v. Steinberg, 113 F.R.D. 511 (S.D. N.Y. 1986), on reconsideration, 123 F.R.D. 66 (S.D. N.Y. 1988) and on reconsideration, 1990 WL 3247 (S.D. N.Y. 1990) (securities). In a suit by Disney shareholders against purchasers of Disney stock, proposed named plaintiffs were inadequate representatives when their roles in both class and derivative litigation presented an impermissible conflict of interest, because recovery in the class suit could reduce potential recovery in the derivative suit.

Kamean v. Local 363, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 109 F.R.D. 391 (S.D. N.Y. 1986) (labor). Named plaintiffs in suit against union were inadequate representatives of class when two of the three named plaintiffs, as well as some class members, currently belonged to a rival union having a recent history of antagonism toward, and competition with, defendant union, and third-named plaintiff had resigned from defendant union and was presently competing with class as self-employed contractor.

Kolin v. American Plan Corp., Fed. Sec. L. Rep. (CCH) ¶92,728 (E.D. N.Y. Apr. 8, 1986) (securities). One class of shareholders in a consolidated action was not certified when the broker who sold the securities to the plaintiffs was the son of two of the named plaintiffs, and the named plaintiffs were all connected either by family, friendship, or business.

Lester v. Lukhard, 622 F. Supp. 316 (W.D. Va. 1985) (government benefits). Plaintiff seeking second determination of disability independent of that done by the Social Security Administration could not adequately protect the interests of a class which included both those persons who were found by the SSA to be disabled and those determined not to be disabled, when a second determination could cause some claimants to lose their eligibility.

Cutler v. Lewiston Daily Sun, 617 F. Supp. 746 (D. Me. 1985) (antitrust). Newspaper subscribers charging that a publisher tied delivery of a Sunday edition to delivery of daily newspapers did not meet class action requirements when there was no allegation that any or all of the subscribers had suffered compensable economic injury.

[FN12] Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689, 37 Fed. R. Serv. 3d 1017 (1997). Cf. Duhaime v. John Hancock Mut. Life Ins. Co., 177 F.R.D. 54 (D. Mass. 1997). Class certification under Rule 23(b)(3) was appropriate in an action by policyholders against a life insurance company concerning alleged deceptive

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW    Document 16571-24    Filed 12/01/08    Page 18 of 19

CLASSACT § 3:25                                                                                           Page 18
1 Newberg on Class Actions § 3:25 (4th ed.)

and misleading sales practices. Settlement was approved with respect to both procedural fairness and substantive fairness. With respect to adequacy of representation unlike the class in Amchem, in which there were conflicts between class members with present injuries and class members with possible future injuries, here all class members were alleged to have been injured during the same period of time. Moreover, in this case all the class members were harmed in approximately the same way, rendering the pecuniary harm readily quantifiable. The court could discern no significant potential conflicts like those present in Amchem, where class members had suffered injury which manifested in many different ways. The differences among state laws regarding fraud or misrepresentation did not appear to be so great as to undermine the predominance of the common questions of law or fact.

[FN13] Georgine v. Amchem Products, Inc., 83 F.3d 610, 630, 34 Fed. R. Serv. 3d 407 (3d Cir. 1996), reh'g and suggestion for reh'g in banc denied, (June 27, 1996) and cert. granted, 519 U.S. 957, 117 S. Ct. 379, 136 L. Ed. 2d 297 (1996) and aff'd, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689, 37 Fed. R. Serv. 3d 1017 (1997).

[FN14] Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689, 37 Fed. R. Serv. 3d 1017 (1997).

[FN15] In re Discovery Zone Securities Litigation, 169 F.R.D. 104 (N.D. Ill. 1996).

[FN16] In re Discovery Zone Securities Litigation, 169 F.R.D. 104, 108 (N.D. Ill. 1996).

[FN17] In re Discovery Zone Securities Litigation, 169 F.R.D. 104, 108 to 109 (N.D. Ill. 1996).

[FN18] In re Discovery Zone Securities Litigation, 169 F.R.D. 104, 111 (N.D. Ill. 1996), citing In re Newbridge Networks Securities Litigation, 926 F. Supp. 1163, 1177 (D.D.C. 1996).

[FN19] Abron v. Black & Decker (U.S.) Inc., 654 F.2d 951 (4th Cir. 1981) (employment discrimination). Plaintiff with unique injury not resulting from general policy of defendant did not suffer same injury or have same interest as other class members.

Machella v. Cardenas, 653 F.2d 923 (5th Cir. 1981) (government benefits). Flood victim seeking full amount of forgiveness on flood relief loans, who refused to accept partial payment, was atypical of class members who had accepted some payment and whom he had included in the proposed class.

Cf. § 3:38, discussing ulterior motives of representative which compromise likelihood for plaintiff to prosecute vigorously on behalf of the class.

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Case 2:05-cv-04182-SRD-JCW   Document 16571-24   Filed 12/01/08   Page 19 of 19

CLASSACT § 3:25                                                                                          Page 19
1 Newberg on Class Actions § 3:25 (4th ed.)

© 2008 Thomson Reuters/West

CLASSACT § 3:25

END OF DOCUMENT