UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION | CIVIL ACTION<br><br>NO. 05-4182 |
| PERTAINS TO: BARGE<br>    *Boutte v. Lafarge* (05-5531)<br>    *Mumford v. Ingram* (05-5724)<br>    *Lagarde v. Lafarge* (06-5342)<br>    *Perry v. Ingram Barge* (06-6299)<br>    *Benoit v. Lafarge* (06-7516)<br>    *Parfait Family v. United States* (07-3500) | SECTION "K"(2) |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss (Rec. Doc. 14411) ("Mot.") by the Lake Borgne Basin Levee District and the Orleans Levee District ("Levee Districts").[1] Lafarge North America, Inc. ("Lafarge") has opposed the motion. (Rec. Doc. 15216) ("Opp."). The Levee Districts have filed a reply memorandum (Rec. Doc. 15585) ("Reply"), and Lafarge filed a surreply. (Rec. Doc. 15707) ("Surreply"). The Court has reviewed the pleadings, the exhibits, and relevant law, and finds that the motion to dismiss should be granted in part and denied in part.[2]

---

[1] The motion was originally filed only by the Lake Borgne Basin Levee District. On August 27, 2008, the Orleans Levee District filed a motion to dismiss in which it adopted the Lake Borgne Basin Levee District's arguments in their entirety. (Rec. Doc. 14648). Therefore, this Court will treat the present motion to dismiss as having been made on behalf of both levee districts.

[2] The present motion originally pertained only to *Parfait Family v. United States* (Civ. A. No. 07-3500), one of the cases consolidated within *In re Katrina Canal Breaches*. By motion dated November 14, 2008, the parties agreed to substitute the Lake Borgne Basin Levee District

1

**I. BACKGROUND**

The present motion comes before this Court in the course of the *In re Katrina Canal Breaches Consolidated Litigation*, Civ. A. No. 05-4182.  The "Barge" portion of this litigation is based upon a complaint filed by residents of New Orleans' Lower Ninth Ward who suffered property damage when the levees along the Industrial Canal was breached during Hurricane Katrina, causing massive flooding of the surrounding neighborhoods.  The residents sued Lafarge, the operator of a barge that became unmoored in the Industrial Canal during the hurricane and allegedly struck the retaining wall, causing the breach that led to the flooding.  Lafarge, in turn, filed a third party complaint against the Levee Districts on June 26, 2008.  Lafarge Third Party Complaint (Rec. Doc. 13649) ("Compl."); *see* Lafarge Sixth Supplemental Complaint and Third Party Complaint (Rec. Doc. 9032).  Lafarge asserts that it is entitled to indemnity or contribution from the Levee Districts for any damage allegedly caused by Lafarge's barge.  Lafarge specifically alleges that the Levee Districts failed to maintain their respective levees, thus causing the flooding of the Lower Ninth Ward during Hurricane Katrina.  In this motion, third party defendants Levee Districts seek dismissal of the claims for contribution and/or indemnity asserted against them by third party plaintiff Lafarge.

**II. ANALYSIS**

---

and the Orleans Levee District for Southeast Louisiana Flood Protection Authority - East, another third party defendant.  The parties likewise agreed that the briefing made on the present motion should apply to the other five named cases in the caption of this opinion, *supra*.  Accordingly, this Court will treat the present motion to dismiss as applying to all six cases numbered herein.

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). This Court will "accept the plaintiff's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007).

The threshold issue presented involves a choice of law question. The Levee Districts move for dismissal by claiming that Louisiana state law should apply to this case, and because Louisiana law does not permit claims for tort indemnity or contribution, Lafarge's claims must be dismissed. Lafarge responds on several grounds. First, it claims that Judge Helen Berrigan already decided these issues in a case of this subject matter, thus precluding any reconsideration by this Court under the law of the case doctrine. Second, even if the law of the case doctrine does not apply here, Fifth Circuit precedent commands that maritime law applies to this third party claim because the original complaint filed by the homeowner plaintiffs is governed by maritime law. Alternatively, should this Court find that Louisiana law does apply, under Louisiana choice of law principles this Court must apply maritime law.

**A. Law of the Case Doctrine**

Lafarge first argues that this Court must follow the prior decision by Judge Berrigan in *In re Ingram Barge Company*, Civ. A. No. 05-4419, 2007 WL 837181, at *1 (E.D. La. Mar. 14, 2007). *Ingram Barge* was a limitation proceeding brought by the owner of the barge at issue here that allegedly struck and destroyed a levee in the Industrial Canal during Hurricane Katrina.

The defendant in that proceeding was Lafarge, the barge operator and defendant in the present proceedings. Similar to this case, Lafarge filed a third party complaint against the United States alleging, *inter alia*, that the government's negligent construction and maintenance of the levees that failed during the hurricane caused plaintiffs' damage, and accordingly Lafarge was entitled to indemnification or contribution. *Id.* The United States filed a motion to dismiss, asserting that Lafarge's claim is barred under the Federal Tort Claims Act ("FTCA") because that law requires the application of the forum state's law, and Louisiana law does not recognize contribution or indemnification. *Id.* The United States further claimed that, should admiralty law apply, then the Admiralty Extension Act ("AEA") provided the only basis for jurisdiction and required Lafarge to fulfill certain administrative requirements.[3] Thus, in order to determine whether Lafarge's claim should be dismissed, Judge Berrigan proceeded to consider what law would apply to Lafarge's claim. Instead of making a definitive ruling on the issue, Judge Berrigan concluded that maritime law would apply regardless of which set of laws provided the basis for the case. She found that the Fifth Circuit's decision in *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229 (5th Cir. 1985) could dictate the application of maritime law, or alternatively the Federal Tort Claims Act would require the application of Louisiana state law, and Louisiana choice of law principles would require application of maritime law to the present case.

In the present case, Lafarge would have this Court apply the law of the case doctrine to preclude any reconsideration of the issues presented here. The law of the case doctrine states

---

[3] The United States also opposed a claim by Lafarge under the Little Tucker Act for an unconstitutional taking, but the resolution of this issue is not pertinent to the case before this Court.

that "an issue of law or fact decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal." *Fuhrman v. Dretke*, 442 F.3d 893, 896-97 (5th Cir. 2006) (citations omitted). This doctrine does not bind a court; instead, "[l]aw of the case directs a court's discretion, it does not limit the tribunal's power." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *Copeland v. Merrill Lynch & Co., Inc.*, 47 F.3d 1415, 1424 (5th Cir. 1995) ("[T]he law of the case doctrine is a discretionary rule of practice which does not limit the *power* of the court to revisit a legal issue.") (emphasis in original). Because the prior decision in *Ingram Barge* was not an appellate decision, this Court is not bound to follow it as precedent. While issues of comity suggest that this Court should follow Judge Berrigan's decision,[4] commentators have noted that subsequent trial judges must have discretion to reconsider rulings of prior judges in the same proceeding to ensure correctness of decision and promote judicial economy.[5] In particular, this Court is

---

[4]*See In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. 568, 571 (N.D. Cal. 1981) ("As a rule, the various judges who sit in the same court should not attempt to overrule the decisions of each other [.]  This rule is premised upon principles of comity and uniformity, and the need to preserve the orderly functioning of the judicial process.  But it does not raise an absolute bar to reexamining questions previously determined.") (citations and internal quotation marks omitted).

[5]As explained by Wright & Miller:

> The basic themes that apply to same-judge reconsideration carry forward to situations in which one trial-court judge is asked to reconsider a ruling by another trial-court judge.  Despite the desire to avoid an approach that would reward a disappointed party's efforts to replace one judge with another, a successor judge must be free to attempt the best possible disposition of the case.  As one court remarked, it would hardly do to reverse a correct ruling by the second judge on the simplistic ground that it departed from the "law of the case" established by an earlier ruling.

18B Charles Alan Wright, Arthur R. Miler & Edward H. Cooper, Federal Practice and Procedure

persuaded to avoid application of law of the case where the parties are different; the third party defendant in *Ingram Barge* was the United States, while the third party defendants here are the state-created Levee Districts.[6]  It is moreover noteworthy that Judge Berrigan did not definitively hold that Louisiana's choice of law rules would mandate application of maritime law.  Instead, she wrote, "Without definitively ruling on the issue, the Court is satisfied that Louisiana law may recognize a claim for indemnity and/or contribution in this case, which is all that is necessary to maintain a cause of action at this time."[7]  *Ingram Barge*, 2007 WL 837181, at *4.  While this Court will certainly give deference to the learned decision by Judge Berrigan, it appears clear that her decision is not the law of the case by any means here, and thus this Court is not bound by her ruling.

**B.  Choice of Law**

The next issue before the Court is what law is the basis for Lafarge's claim.  The Levee Districts assert that Louisiana law applies here, and that the motion should be granted because

---

§ 4478.1 (2008) (footnotes omitted).

[6] *See E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1219 n.1 (Fed. Cir. 2007) (holding prior decision did not create law of the case "as to parties and accused devices that were not yet part of the litigation when that decision was issued."); *United States v. Canamari*, 978 F.2d 1266 (9th Cir. 1992) (unpublished opinion) ("It is axiomatic that law of the case requires an identity of the parties to be bound.") (citing cases); *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 586 F.2d 917, 920 (2d Cir. 1978) ("Because the present case involves a different defendant and is before a different court, the earlier decision on the issue of overclaiming is neither 'law of the case' nor binding precedent in this circuit.").

[7] Lafarge described this quoted sentence as Judge Berrigan's holding in this case.  It seems very clear, however, that a statement prefaced by "Without definitively ruling on the issue" is, by definition, *not* a holding that would prompt application of the law of the case doctrine.  Lafarge's counsel would be advised to be more careful in suggesting what constitutes the holding of a court.

indemnity and contribution claims are banned under Louisiana law. Lafarge counters that the Fifth Circuit's *Marathon Pipe Line* decision commands the application of maritime law to this third party claim. Alternatively, if state law were to apply, Lafarge asserts that Louisiana's choice of law rules would prompt application of maritime law. The Levee Districts naturally dispute Lafarge's claim that *Marathon Pipe Line* should direct this Court's decision, and moreover they claim that Louisiana law would not require application of maritime law.

To determine whether Lafarge's claim can proceed, this Court must answer two questions: (1) Does federal maritime law apply to Lafarge's third party claims?; and (2) if so, has Lafarge adequately pleaded a cognizable indemnity or contribution claim?

**1. Which Law Applies?**

The first issue that this Court must address is which law forms the basis for this claim. Starting with Louisiana state law, the parties agree that Louisiana law generally does not permit an action for contribution or indemnity, while maritime law may permit such claims.[8] The Levee

---

[8]In an action based on admiralty jurisdiction, "through indemnity or contribution, the employer may recover from the third-party tortfeasor for part or all of any damages assessed against the employer." *Complaint of Liberty Seafood, Inc.*, 38 F.3d 755, 758 (5th Cir. 1994) (citing *Loose v. Offshore Navigation, Inc.,* 670 F.2d 493, 499-500 (5th Cir.1982)). With regards to Louisiana state law regarding indemnity and contribution for actions sounding in tort, the Louisiana Supreme Court has explained:

> With the 1996 amendments to Articles 2323 and 2324(B), however, the legislature has effected a total shift in tort policy. Prior to the enactment of the amendments, the policy behind Louisiana's tort law was ensuring that innocent victims received full compensation for their injuries. Now, however, Louisiana's policy is that each tortfeasor pays only for that portion of the damage he has caused and the tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of that other person. With the advent of this new policy, the right of contribution among solidary tortfeasors also disappeared since

Districts assert that Lafarge's claim arises under diversity jurisdiction, and as such the indemnity and contribution claims must be dismissed because they are barred under Louisiana law. However, the parties also agree that "[i]n diversity cases, a federal court must follow the choice of law rules of the forum state." *International Interests, L.P. v. Hardy*, 448 F.3d 303, 306 (5th Cir. 2006). Lafarge accordingly argues that, even if its claim does arise under diversity jurisdiction, Louisiana's choice of law rules would dictate application of federal maritime law. Lafarge primarily asserts, however, that the Fifth Circuit's opinion in *Marathon Pipe Line* requires federal maritime law to apply to its third party claim for tort indemnity and/or contribution.

      The Court must first address whether *Marathon Pipe Line* applies here. The Fifth Circuit in that case considered the issue of what law applies to a third party claim where the original plaintiff's claim is governed by maritime law. *Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA*, 761 F.2d 229 (5th Cir. 1985). The plaintiff's gas pipeline had ruptured after it was struck by a jack-up vessel owned by the defendant. During subsequent repairs to the pipeline, the line burst again due to a faulty repair job, requiring the plaintiff to spend additional funds for the second repair. The plaintiff sued the owner of the jack-up vessel for all costs, including those of the second repair. The defendant shipowner filed a third party action against the repair company seeking indemnity or contribution for the cost of the additional repair. The repair company, now third party defendant, sought to dismiss citing the lack of indemnity or

---

      it is no longer necessary in light of the abolishment of solidarity. The legislature
      has struck a new balance in favor of known, present and solvent tortfeasors
      instead of the previous priority that fully compensated injured victims.

*Dumas v. State ex rel. Dep't of Culture, Recreation & Tourism*, 828 So.2d 530, 538 (La. 2002).

contribution actions under Louisiana law.  The Fifth Circuit held, however, that "the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party."  *Id.* at 235.  In reaching its conclusion, the court strictly followed a Fifth Circuit case that similarly applied maritime law to a third party indemnity claim,[9] and it noted that the Restatement (Second) of Conflicts would suggest the same result because indemnity and contribution should be "'determined by the local law of the state . . . that has the most significant relationship' to the issue."  *Id.* (citing Restatement (Second) of Conflicts, § 173, 145 (1971)).  Accordingly, because the plaintiff's original action was premised on a maritime relationship and location, the third party claim was governed by maritime law as well.

The Levee Districts seek to distinguish *Marathon Pipe Line*, asserting that it is limited to third party claims where "the plaintiff(s) ha[ve] a colorable claim against both the main defendant *and* the third-party defendant."  Reply at 2 (emphasis in original).  The Levee Districts explain that *Marathon Pipe Line* only allowed the application of maritime law to the third party claim because the plaintiff in that case, the pipeline owner, had a direct claim against the third party defendant repair company.  Reply at 4.  The Levee Districts ask this Court to follow *Joiner v. Diamond M Drilling Co.*, 688 F.2d 256 (5th Cir. 1982).  In *Joiner*, a seaman was injured while cleaning a shipboard mud tank on a semi-submersible vessel.  He died while receiving subsequent treatment from his personal doctor, and his widow then sued his employer and the manufacturer of the mud tank for negligently causing his death.  The defendants filed third party complaints against the decedent's doctor, seeking indemnity and contribution for allegedly contributing to the seaman's death.  The district court dismissed the third party complaint,

---

[9]*In re Dearborn Marine Serv., Inc.*, 499 F.2d 263 (5th Cir. 1974).

however, by finding that the indemnity or contribution claim was premised on Louisiana law, and it was therefore barred by Louisiana's one-year medical malpractice statute of limitations. *Id.* at 260. The Fifth Circuit affirmed, reasoning that "[a] private land-locked physician who treats a patient who happens to have been injured at sea, does not thereby enter into an implied maritime contract" that would justify a maritime cause of action by a seaman's employer. *Id.* at 260-61.

      This Court finds that *Marathon Pipe Line* indeed does apply to this case. The Fifth Circuit did not predicate its holding on the fact that the original plaintiff had a direct action against the third party defendant. Instead, the Fifth Circuit based its holding on the Restatement of Conflicts, reasoning that a third party indemnity/contribution claim should be determined based on the jurisdiction to which there is the greater relationship. *Marathon Pipe Line*, 761 F.2d at 235. Because the tort in *Marathon Pipe Line* "occurred in a maritime place and that was where the relationship between the two parties . . . centered," likewise the third party claim "arising therefrom is also a maritime claim governed by maritime law." *Id.* at 235-36. Other federal courts have agreed that a third party claim for tort indemnity or contribution should be based on the same law as that of the original claim. *Vaughn v. Farrell Lines, Inc.*, 937 F.2d 953, 956 (4th Cir. 1991) ("We have determined that the underlying tort claims from which the indemnity claim is derived in this action are maritime tort claims to be adjudicated under federal admiralty jurisdiction. Therefore, a noncontractual indemnity claim arising therefrom is similarly a maritime claim.") (internal quotation marks and citation omitted); *General Contracting & Trading Co., LLC v. Interpole, Inc.*, 899 F.2d 109, 113 (1st Cir 1990) (holding that, where plaintiff's primary complaint arose under New Hampshire law, "we believe that

[defendant's] attempt to get noncontractual indemnity with respect thereto must also be determined under New Hampshire law, not in terms of COGSA"); *see Complaint of Kreta Shipping, S.A.*, 1 F. Supp. 2d 282, 284 (S.D.N.Y. 1998) (citing cases and stating that "the body of law that governs the indemnitee's primary liability also governs its noncontractual indemnity claims against a third party. . . . is a well established rule of law in several circuits"). The Levee Districts' reliance on *Joiner* is misplaced. Not only was *Marathon Pipe Line* decided two years after *Joiner*, that case limited itself to the issue of whether an implied warranty can arise between employers of injured seamen and the hospitals and doctors that treat those seamen. *Joiner*, 688 F.2d at 260 ("The appellants maintain that their claims against [plaintiff's treating physician] can be seen as actions for breach of an 'implied warranty of workmanlike performance' and therefore their third-party complaints set forth 'general maritime law' claims under the doctrine of maritime indemnity . . . ."). Accordingly, this Court finds that Fifth Circuit precedent mandates that, because the plaintiffs' claim against Lafarge arises under maritime law, likewise Lafarge's indemnity or contribution claim against the Levee Districts must be governed by maritime law.

The Levee Districts, however, assert that Lafarge's claim should be governed by Louisiana state law because Lafarge's third party suit is premised upon diversity jurisdiction. When sitting in diversity, "a federal court must follow the choice of law rules of the forum state." *International Interests, L.P. v. Hardy*, 448 F.3d 303, 306 (5th Cir. 2006). Despite the Levee Districts' claim, had this entire case come before a state court, the original claim by the residents harmed by the barge would still have been governed by federal admiralty law. As explained by the Fifth Circuit:

11

> A maritime issue may be raised in a diversity suit; this is one significance of the savings-to-suitors clause, 28 U.S.C. § 1333, which permits a litigant to obtain federal jurisdiction over, and jury resolution of, an admiralty question by invoking federal jurisdiction on an independent basis. *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); *Fitzgerald v. United States Lines Co.*, 374 U.S. 16, 83 S.Ct. 1646, 10 L.Ed.2d 770 (1963). A maritime claim may also be brought in state court. *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). However, while jurisdiction to decide the litigation may be concurrent with state courts or invoked in a federal court on some independent basis, maritime law determines the rights of the parties. *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946); *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942); *Chelentis v. Luckenbach S.S. Co., Inc.*, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918).

*Continental Cas. Co. v. Canadian Universal Ins. Co.*, 605 F.2d 1340, 1344 (5th Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980).[10]

In *Gibbs v. Falcon Drilling Company, Inc.*, 713 So.2d 669 (La. Ct. App. 3rd Cir. 1998), a seaman suffered a back injury in the course of his employment on a jack-up rig owned by Falcon Drilling Company, Inc. ("Falcon"). When the plaintiff sought to return to work, Falcon required that he be examined by doctors of its choosing. The physicians examined plaintiff and found him fit to return to work, and soon thereafter the plaintiff aggravated his injury during his employment. The seaman brought a Jones Act and general maritime claim in Louisiana state

---

[10]The savings-to-suitors clause, part of 28 U.S.C. § 1333, reads in relevant part:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

28 U.S.C. § 1333(1).

court against Falcon, and he later amended his complaint to include the physicians designated by Falcon to treat him. Falcon then brought a cross-claim against the physicians for indemnity and contribution for the faulty treatment. The physicians sought to dismiss the cross-claim, asserting that Louisiana law provided the rule of decision, and therefore the cross-claim had prescribed. Falcon countered that maritime law applied to the cross-claim, and thus his indemnity and contribution claim was permissible.

The Louisiana Third Circuit Court of Appeals agreed with Falcon and held that maritime law governed its claim. *Id.* at 673. The court first noted that "[i]n Jones Act and general maritime cases brought in state courts under the 'savings to suitors' clause, a state is free to adopt remedies, and attache to them such incidents as it sees fit so long as it does not attempt to make changes in the substantive maritime law." *Id.* at 672 (quoting *Green v. Indus. Helicopters, Inc.*, 593 So.2d 634 (La. 1992), *cert. denied* 506 U.S. 819, 113 S.Ct. 65, 121 L.Ed.2d 32 (1992)). It then explained, "[A] maritime claim brought in the common law state courts . . . is governed by the same principles as govern actions brought in admiralty, i.e., federal maritime law.'" *Id.* (quoting *Green*, 593 So.2d at 637 (citations omitted)). Because the original suit was brought under maritime law, the *Gibbs* court followed *Marathon Pipe Line* holding, stating, "It is thus of no consequence that the third party indemnitor may be liable to the primary plaintiff under a different body of law, whether contract law, the law of a foreign nation, or state law applied as surrogate federal law." *Id.* at 672 (quoting *Marathon Pipe Line*, 761 F.2d at 235). The court concluded that, because the original action was maritime in nature and Falcon had properly pleaded an indemnity action, maritime law applied to Falcon's cross-claim and permitted the action for indemnity and contribution. *Id.* at 673.

This Court finds that a Louisiana state court, presented with this case in the same posture, would reach the same conclusion as a federal court. *Gibbs*, which appears to be the only Louisiana case directly on point, followed *Marathon Pipe Line* in holding that maritime law applied to a third party indemnity tort indemnity claim. While Lafarge would have this Court proceed through Louisiana choice of law analysis, this Court finds that *Gibbs* persuasively counsels that a state court would be required to follow federal law on this point. Accordingly, Lafarge's indemnity and contribution claim is permitted here because its third party claim is governed by maritime law.

**2. Has Lafarge Sufficiently Pleaded *Marathon Pipe Line* Indemnity?**

Having determined that *Marathon Pipe Line* requires that a third party claim for tort indemnity or contribution be governed by the same body of law as the original claim, at least where the original claim is based upon maritime law, this Court must now determine if Lafarge has sufficiently pleaded an indemnity or contribution claim under *Marathon Pipe Line*.[11] Maritime law at one time recognized "a plethora of tort indemnity theories." *Rockwell Int'l Corp. v. M/V Incotrans Spirit*, 998 F.2d 316, 319 (5th Cir. 1993), *quoting Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833 (5th Cir. 1992). However, today "[o]nly a handful of viable indemnity

---

[11]Some courts appear to conflate these issues, i.e., they dismiss an indemnity claim where the pleader does not properly plead a recognized indemnity theory. However, it appears that *Marathon Pipe Line* does stand alone for the proposition that, "[t]he body of law that governs a claim for indemnity or contribution usually is the same body of law that establishes the indemnitee's primary liability to the plaintiff." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 830 n.7 (5th Cir. 1992), *citing Marathon Pipe Line*, 761 F.2d at 235. Because Louisiana substantive law generally does not recognize a cause of action for indemnity or contribution, this Court finds it appropriate to consider which law governs the action first, and then determine whether third party plaintiff Lafarge has adequately pleaded an indemnity claim.

14

theories remain."[12] *Hardy*, 949 F.2d at 833. *Marathon Pipe Line* provides one of those indemnity theories; however, the Fifth Circuit has clarified that *Marathon Pipe Line* indemnity applies only to "a vicariously liable or non-negligent tortfeasor" and permits that tortfeasor to seek indemnity "from a co-debtor guilty of actual fault." *Id.*, *quoting Marathon Pipe Line*, 761 F.2d at 236.

In *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833 (5th Cir. 1992), the Fifth Circuit addressed the application of *Marathon Pipe Line* indemnity. *Hardy* concerned a suit under the Jones Act and general maritime law by a seaman who was injured aboard a jack-up barge that was engaged in driving piles into the seabed. Bouygues Offshore S.A. ("BOS") had been retained by Zaire Gulf Oil Company ("ZAGOC") to place several submerged pipelines off the African Coast. BOS signed a contract to indemnify and hold ZAGOC harmless against any claims arising out of BOS's performance. In the course of driving the piles, BOS struck a hard object. BOS supervisors ordered the driving to continue to break through the object. Unknown to the officials, the object turned out to be a preexisting ZAGOC pipeline, which erupted and injured the plaintiff.[13] *Id.* at 828-29. Plaintiff sued BOS and ZAGOC in state court, and BOS removed the matter to federal district court. ZAGOC denied responsibility, and alternatively cross-claimed against BOS asserting indemnity under their contract. BOS, in turn, filed a cross-claim against ZAGOC for indemnity or, in the alternative, contribution for any judgment rendered against it. Prior to trial, the plaintiff settled his suit against ZAGOC. Plaintiff proceeded to trial

---

[12]As there is no claim by Lafarge that another tort indemnity theory applies here, this Court will only focus its attention on *Marathon Pipe Line* indemnity.

[13]Plaintiff was employed by On and Offshore Quality Control Specialists, Inc., which had been hired to inspect and supervised BOS operations. *Hardy*, 949 F.2d at 828.

against BOS, and the jury returned a verdict in his favor, finding BOS's negligence and the unseaworthiness of the barge to be the sole causes of the plaintiff's injuries. The jury further found that neither plaintiff nor ZAGOC had acted negligently. *Id.* at 829. BOS subsequently sought indemnity or contribution from ZAGOC for plaintiff's injuries, which the district court denied. BOS appealed to the Fifth Circuit. *Id.*

In addressing whether BOS could maintain an indemnity claim against ZAGOC, the Fifth Circuit concluded that no indemnity theory, including *Marathon Pipe Line* indemnity, could permit BOS to recover. BOS had argued that it was entitled to indemnity under *Marathon Pipe Line* because it had asserted that it was not negligent in the accident. The Fifth Circuit admitted that "the *Marathon Pipe Line* theory of indemnity applies equally to 'non-negligent tortfeasors' as well as to vicariously liable tortfeasors." *Id.* at 833 (quoting *Marathon Pipe Line*, 761 F.2d at 236). "However," explained the court:

> the term "non-negligent tortfeasor," as used in *Marathon Pipe Line,* applies only to those defendants on which the law imposes responsibility even though they committed no negligent acts. BOS is not such a defendant. Instead, BOS is an ordinary defendant that owes the plaintiff damages only if the jury agrees that it was negligent. An ordinary defendant, such as BOS, is adequately protected under the comparative negligence system. If the jury determines that an ordinary defendant is not negligent, then the defendant does not owe the plaintiff damages and has no need to pursue an indemnity action against a third-party defendant. If the jury determines that the defendant is negligent, and the defendant believes that the evidence does not support this determination, then the defendant can appeal the judgment in favor of the plaintiff. In either event, the general maritime law does not authorize an action for tort indemnity against a third-party defendant.

*Id.* at 833-34. As an "ordinary defendant," therefore, BOS could not maintain an action for tort indemnity against ZAGOC.

In the present case, Lafarge resembles the "ordinary defendant" in *Hardy* than those defendants in *Marathon Pipe Line*. *Marathon Pipe Line* permitted an employer who is

16

vicariously liable for his employee's injuries to seek indemnity or contribution from a negligent repair company. In a similar case, *Lakes of Gum Cove Hunting & Fishing, L.L.C. v. Weeks Marine, Inc.*, 182 F. Supp. 2d 537, 547 (W.D. La. 2001), a defendant dredging company was permitted to plead *Marathon Pipe Line* indemnity where it was accused of trespassing in the course of dredging a canal for U.S. Army Corps of Engineers. Because tort law imposes liability on the trespassers even if they "mistakenly believe that they are permitted to enter the land, either by consent or legal privilege," the district court found that the defendant could be held responsible for the Corps' negligence despite any negligence on the defendant's part, and therefore the defendant was allowed to file a third party indemnity claim against the Corps. *Id.* (citing Prosser & Keeton on the Law of Torts § 75 (5th ed. 1985)). *Hardy*, in contrast, involved two defendants that could have caused the plaintiff's injuries. However, had one been found to be not negligent, it would have no other duty (outside of contract law) to pay for the damage caused by the other defendant. Instead, the non-negligent defendant would simply be released from all liability.

The present case does not permit the application of *Marathon Pipe Line* indemnity because Lafarge cannot be held liable for the Levee Districts' negligence. The plaintiff residents have alleged that Lafarge was negligent in mooring its barge, causing it to become unmoored and puncture the levees in the Industrial Canal. Lafarge, in turn, asserts that the negligent party is the Levee Districts for their design, maintenance, and operation of the levees that allegedly caused the flood that, in turn, caused Lafarge's barge to become unmoored. However, similar to *Hardy*, if a jury finds Lafarge not negligent, it will not have to answer for the Levee Districts' negligence. The law does not impose any liability here upon Lafarge for the negligence of the

Levee Districts. If Lafarge is found partially negligent, it will be held liable only for its proportional damage. Accordingly, Lafarge does not qualify as a "non-negligent defendant" that may be held liable for the Levee Districts' negligence, but instead it qualifies as an "ordinary defendant" under *Hardy*'s terms. Lafarge's indemnity claim must be dismissed.

Lafarge's contribution claim does not appear as limited by *Marathon Pipe Line*. As observed by the Fifth Circuit in *Hardy*, "[i]ndemnity and contribution, although related concepts, are distinguishable." *Hardy*, 949 F.2d at 829. "When a trial court applies indemnity principles, it permits one tortfeasor to shift all of the loss onto another tortfeasor, provided that the latter should appropriately answer for the entirety of the loss;" however, "[w]hen the trial court applies contribution principles, it requires that each tortfeasor pay the proportion of the damages attributable to its actions." *Id.* at 829-30, *citing* Prosser & Keeton on The Law of Torts § 50, at 336-41 (5th ed. 1984). As observed by Judge Lemelle of this Court, "Unlike indemnity claims, contribution claims in general maritime law are valid as long as they are against a joint tortfeasor who is not statutorily immune from suit." *Pierce v. Five B's, Inc.*, Civ. A. No. 07-3263, 2008 WL 4091010, at *2 (E.D. La. Aug. 27, 2008). Lafarge alleges that the Levee District's negligence in designing and maintaining the levees contributed to the damage caused in the Industrial Canal during Hurricane Katrina. No claim of immunity has yet been asserted here, and there appears no other bar that would preclude an action for contribution at this time.[14]

---

[14]In *Hardy*, the Fifth Circuit also prevented a contribution claim from proceeding where defendant BOS was found liable, it entered into a post-trial settlement with plaintiff, and then sought contribution from defendant ZAGOC, which had settled before trial began. The Fifth Circuit reasoned that permitting such an action would "shatter the traditional finality of settlements." *Hardy*, 949 F.2d at 836. Here, however, Lafarge and the Levee Districts have not entered into any settlement with each other or the plaintiffs; accordingly, this portion of *Hardy* does not impact the contribution claim. It should be noted that "[c]laims for contribution are

Accordingly, it appears that Lafarge has adequately pleaded a contribution claim, which is permissible under maritime law, and therefore the contribution claim will not be dismissed.

### III. CONCLUSION

For the reasons provided herein, accordingly,

**IT IS ORDERED** that the Levee Districts' Motion to Dismiss (Rec. Doc. 14411) is hereby **GRANTED IN PART AND DENIED IN PART.** Those claims asserted by Lafarge in its complaints (Rec. Docs. 9032 & 13649) against the Levee Districts for indemnity are **DISMISSED.** Those claims by Lafarge against the Levee Districts for contribution shall remain.

New Orleans, Louisiana, this ____1st____ day of December, 2008.

                                               **STANWOOD R. DUVAL, JR.**
                                               **UNITED STATES DISTRICT JUDGE**

---

typically made after liability is apportioned or some of the parties have settled," and therefore Lafarge's contribution claim likely will not ripen until much later in this litigation. *Pierce*, 2008 WL 4091010, at *2 (citing *Hardy*, 949 F.2d at 835).