# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES
CONSOLIDATED LITIGATION

**CIVIL ACTION**
**No.: 05-4182**

FILED IN:    **05-4181, 05-4182, 05-4191, 05-4568, 05-5237, 05-6073,**
**05-6314, 05-6324, 05-6327, 05-6359, 06-0020, 06-1885,**
**06-0225, 06-0886, 06-11208, 06-2278, 06-2287, 06-2346,**
**06-2545, 06-3529, 06-4065, 06-4389, 06-4634, 06-4931,**
**06-5032, 06-5042, 06-5159, 06-5163, 06-5367, 06-5471,**
**06-5771, 06-5786, 06-5937, 06-7682, 07-0206, 07-0647,**
**07-0993, 07-1284, 07-1286, 07-1288, 07-1289.**

PERTAINS TO: LEVEE AND MR-GO

## MEMORANDUM IN SUPPORT OF JOINT REQUEST FOR ENTRY OF ORDER CERTIFYING PRELIMINARILY A SETTLEMENT CLASS AND APPROVING PRELIMINARILY THE PROPOSED SETTLEMENT

Except as otherwise expressly provided below or as the context otherwise requires, all capitalized terms used in this memorandum shall have the meanings and/or definitions given them in the Class Settlement Agreement, the original of which, together with all exhibits, is attached to the Joint Motion as *in globo* Exhibit "1".

Kenneth & Jeannine Armstrong, Chalmette, LA (Subclass 1), Thurman R. Kaiser, Metairie, LA (Subclass 2) and Donna Augustine, New Orleans, LA (Subclass 3), individually and on behalf of the proposed Class, and the Settling Defendants, respectfully submit this memorandum in support of their joint request for entry of the Order of Preliminary Certification of a Settlement Class, Preliminary Approval of Proposed Settlement and Stay of Certain Claims, in substantially the form attached as Exhibit "B" to the Class Settlement Agreement.

## FACTUAL & PROCEDURAL BACKGROUND

The Parties have entered into a Class Settlement Agreement in the captioned matter. This case arises out of Hurricanes Katrina and Rita and associated allegations of damages resulting from alleged Levee Failures. The suit, as amended, names as defendants, among others, the

Orleans, East Jefferson and Lake Borgne Basin levee districts, the Board of Commissioners for each Levee District, and St. Paul Fire and Marine Insurance Company (in its capacity as the insurer for any and/or all of the Levee Defendants). These parties are the Settling Defendants under the Class Settlement Agreement. The Persons released under the Class Settlement Agreement are the Settling Defendants above, together with the Board of Commissioners of the Southeast Louisiana Flood Protection Authority - East, the Southeast Louisiana Flood Protection Authority - East, and related Persons.

As set forth in the Class Settlement Agreement, the Parties have agreed to and do hereby propose the following Class for certification by the Court for settlement purposes only pursuant to the Class Settlement Agreement and Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure:

> [A]ll Persons (a) who at the time of Hurricane Katrina and/or Hurricane Rita (i) were located, present or residing in the Hurricane Affected Geographic Area, or (ii) owned, leased, possessed, used or otherwise had any interest in homes, places of business or other immovable or movable property on or in the Hurricane Affected Geographic Area, and (b) who incurred any losses, damages and/or injuries arising from, in any manner related to, or connected in any way with Hurricane Katrina and/or Hurricane Rita and any alleged Levee Failures and/or waters that originated from, over, under or through the Levees under the authority and/or control of all or any of the Levee Defendants. The term "Class" or "Settlement Class" shall expressly include all Plaintiffs and putative class members of the Pending Actions. The Settlement Class shall include and be divided into the following subclasses of Class Members whose alleged Claims are based in any way on, or result in any way from, the acts, omissions, or any sources of liability whatsoever of: (a) *Subclass 1* - the Lake Borgne Basin Levee District, the Lake Borgne Basin Levee District Board of Commissioners, and St. Paul Fire and Marine Insurance Company, in its capacity as insurer of each of the foregoing; (b) *Subclass 2* - the East Jefferson Levee District, the East Jefferson Levee District Board of Commissioners, and St. Paul Fire and Marine Insurance Company, in its capacity as insurer of each of the foregoing; and (c) *Subclass 3* - the Orleans Levee District, the Orleans Levee District Board of Commissioners, and St. Paul Fire and Marine Insurance Company, in its capacity as insurer of each of the foregoing (collectively, the "Subclasses" and each a "Subclass"). A Class Member may be included in more than one Subclass. Excluded from the Settlement Class are the

judge and/or magistrate judge to whom the Litigation is assigned at
the trial court or upon any appeal.

As used above in the definition of the proposed Settlement Class (and in the Class

Settlement Agreement), the following terms are defined as follows:

i.      The term "Hurricane Affected Geographic Area" shall mean the entire area
        located within the Parishes of Jefferson, Orleans, Plaquemine and St. Bernard,
        Louisiana, together with any body of water that is, in whole or in part, adjacent to
        or within any portion of these Parishes.

ii.     The term "Hurricane Katrina" shall mean the tropical cyclone named "Hurricane
        Katrina" by the National Weather Service's National Hurricane Center which
        made landfall in Louisiana on or about August 29, 2005, including but not limited
        to, its classification as a tropical depression, storm, hurricane and/or other weather
        event and any and all effects due to, caused by, or relating to Hurricane Katrina
        regardless of whether same occurred prior to, concurrently with, or following
        Hurricane Katrina's landfall including but not limited to, storm surge, flooding,
        rainfall, lighting, wind, and/or tornados.

iii.    The term "Hurricane Rita" shall mean the tropical cyclone named "Hurricane
        Rita" by the National Weather Service's National Hurricane Center which made
        landfall in Louisiana on or about September 24, 2005, including but not limited
        to, its classification as a tropical depression, storm, hurricane and/or other weather
        event and any and all effects due to, caused by, or relating to Hurricane Rita
        regardless of whether same occurred prior to, concurrently with, or following
        Hurricane Rita's landfall including but not limited to, storm surge, flooding,
        rainfall, lighting, wind, and/or tornados.

iv.     The term "Levees" shall include any and all levees, embankments, seawalls,
        jetties, breakwaters, water-basins, floodwalls, floodgates, gates, outfall canals,
        drainage canals, berms, spoil banks, and other works in relation to such projects,
        and/or any other flood or water control structure(s), whether man-made or natural.

v.      The term "Levee Failures" shall mean the actual or alleged breaching,
        overtopping, seepage, collapse, undermining, weakening or any other alleged
        failure of Levees regardless of cause, whether caused in whole or in part by an
        alleged defect, error or neglect with respect to the design, construction,
        maintenance, inspection, and/or operation of the Levees, and all dredging
        operations necessary in connection therewith or incidental thereto, and/or whether
        caused in whole or in part by any wind, waves, tide, rainfall, storm surge or other
        force or effect caused by or resulting from Hurricane Katrina and/or Hurricane
        Rita.

vi.     The term "Pending Actions" shall mean any and all lawsuits, administrative
        claims or other actions, however asserted (including but not limited to any all
        petitions, complaints, third-party demands, cross-claims and counter-claims), in
        which a Released Claim has been, or is, asserted (including but not limited to

- 3 -

those lawsuits identified on Exhibit "A" to the Class Settlement Agreement, as same shall be amended from time to time prior to the entry of the Final Order and Judgment).

The purposes and intentions of all parties to this proposed settlement are, *inter alia*, (a) to provide a fund for the benefit of the Settlement Class; (b) to provide a process by which the Claims of Class Members can be dealt with fairly; (c) to terminate and extinguish any liability of the Released Parties for all Released Claims of the Class Members; and (d) to dismiss on the merits and with prejudice all Claims against the Released Parties asserted in the Litigation.

### PRESENT RELIEF REQUESTED

Reserving Class Members' right to object and be heard on *both* the propriety of certification and approval of the settlement, the Parties initially seek only entry of the Preliminary Approval Order and the grant of the relief set forth therein, including preliminary certification of the Settlement Class, approval of the Class Notice, preliminary approval of the Class Settlement Agreement and stay of the federal Pending Actions.

This first step is typically an informal process. *See* 4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.24, at 36-37 (4th ed. 2002) ("Usually the court will informally review these proposed settlement papers with counsel and then direct that notice of the proposed settlement and the hearing thereon be issued to all class members" (citation omitted)). Certification of settlement classes and certification of litigation classes "pose different issues." *In re Bridgestone/Firestone, Inc.*, 333 F.3d 763, 766 (7th Cir. 2003). A court asked to certify a class for settlement purposes only "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

"The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

- 4 -

When presented with a class action settlement proposal, "a court often will conduct a preliminary review of [the] proposed settlement before ordering that notice be sent to the class." 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.165[2] (3d ed. 2007).

As a result of this preliminary inquiry, "the court may give the parties an opportunity to withdraw it and save themselves the time and expense of giving notice to the class" of a proposed settlement that the court finds is "obviously unfair." *Id.* Regardless of the court's finding in this preliminary review, the court "must hold a fairness hearing as a precondition to any finding that a proposed settlement . . . is fair, reasonable, and adequate." *Id.* at § 23.165[3]; *Hickerson v. Velsicol Chem. Corp.*, 121 F.R.D. 67, 69 (N.D. Ill. 1988) ("Before requiring notification of the absent class members, the proposed settlement must be preliminarily approved" and "a final determination as to the necessity of a [fairness] hearing will only be made after examining any written objections as to settlement that may be filed").

For the reasons outlined below, preliminary certification of the Settlement Class and preliminary approval of the Class Settlement Agreement is appropriate.

## LAW & ANALYSIS

**I.    The Parties are Requesting that the Court Certify the Settlement Class Under Rule 23(a) and (b)(1)(B).**

This is a classic limited fund case.    This Court should preliminarily grant class certification and approval of the settlement, as shown below.

### A. The Requirements of Rule 23(a).

The Settling Defendants do not concede that the requirements of Rule 23(a) could be satisfied in a litigation class and expressly reserve all rights and defenses in that regard. However, the Plaintiffs assert that the requirements of numerosity, commonality, typicality, and adequacy of representation under Rule 23(a) are satisfied. Specifically, the Plaintiffs assert that:

- 5 -

(i)   With respect to numerosity, the number of Persons in the Hurricane Affected Geographic Area satisfies the numerosity requirement.

(ii) With respect to commonality, all plaintiffs allege damages which they assert were caused by the fault of the Levee Defendants.  In addition, the fact that the fairness of the proposed settlement presents an overarching common question of law and fact also satisfies this requirement.

(iii) With respect to typicality, each of the three Class Representatives are members of the Settlement Class, are representative members of each sub-class, have claims typical of the Class Members in the Settlement Class generally, and have claims typical of the Class Members in their respective sub-classes.

(iv) And finally, with respect to adequacy of representation, the Class Representatives have the same interests as the other Class Members in that they are not receiving any extra-judicial premium for their services, thus, they have no other interest in the outcome of the settlement that is at odds with the interests of the Settlement Class they seek to represent.  The Declarations of the Class Representatives are attached to the Joint Motion as *in globo* Exhibit "2".  Class Counsel are intimately familiar with the factual and legal issues involved in this matter, and they are familiar with all aspects of the settlement.  And, there is no conflict of interest between the Class and Class Counsel.  The Affidavits of Class Counsel are attached to the Joint Motion as *in globo* Exhibit "3".

In this regard, the Supreme Court in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999), remarked on the potential for conflict between the interests of Class Counsel and the Class in light of "the potential for gigantic fees".  *Id.* at 527 U.S. 852. Here the Settlement Agreement minimizes this concern.  Under the Class Settlement Agreement, the Court has complete oversight in awarding any attorneys fees.  *See* Class Settlement Agreement, Section III(12 and 16).  Class Counsel have confirmed that they will not seek an

- 6 -

award of attorney's fees. And Class Counsel have even bound themselves to oppose any request for fees that others might make. *See* Class Settlement Agreement, Section III(16). There is, in short, no legitimate argument that this settlement is driven by a desire for fees.

### B. Rule 23(b)(1)(B)'s Requirements Are Satisfied.

The proposed Settlement Class satisfies Rule 23(b)(1)(B)'s requirements that "prosecuting separate actions by or against individual class members would create a risk of:"

> (B)     adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

Fed. R. Civ. P. 23(b)(1)(B). The Settlement Class should properly be treated as a mandatory (non opt-out) limited fund settlement class pursuant to Rule 23(b)(1)(B).

The United States Supreme Court in *Ortiz* discussed in depth the use of Rule 23(b)(1)(B), and after a thorough discussion of the history of "limited fund" class actions and the drafting history of Rule 23, the Court articulated three characteristics which it described as presumptively necessary:

> (1)     "the totals of the aggregated liquidated claims and the fund available for satisfying them, set at their maximums, demonstrates the inadequacy of the fund to pay all claims";
>
> (2)     "the whole of the inadequate fund [is] to be devoted to the overwhelming claims"; and
>
> (3)     "the claimants identified by a common theory of recovery [are] treated equitably among themselves."

*Ortiz*, 527 U.S. at 838-39.

Each of these points raised in *Ortiz* are satisfied in this case:

First, the Class Members must look to a limited fund of insurance proceeds, which is one of the classic examples of a limited fund class action. Under Louisiana law, the Levee Defendants' assets are immune from seizure. *See* the discussion below in Section II, pp. 11-14.

-7-

Once the insurance proceeds are exhausted, any Class Member with a judgment against a Levee Defendant will be unable to judicially enforce such judgment.  In the absence of a settlement, assuming *arguendo* that the Class Members' claims have merit and that the levee districts' insurance policies are triggered, the potentially available insurance proceeds could be depleted by a very small percentage of claimants, leaving the vast majority of claimants with nothing. Again assuming the Class Members' claims have merit, the total of their claims far exceeds the total aggregate insurance proceeds.

Second, as the Settlement Agreement makes clear, the entirety of the settlement funds is being paid into an escrow account that is being administered by the Court for the benefit of the Class.

Third, the proposed Class includes all potential claimants and the Settlement Agreement has been structured to avoid intra-class conflicts.  The proposed Class is divided into different sub-classes and each proposed sub-class includes all possible claimants against a particular levee district (and the corresponding insurance policy).  Further, this Court will have exclusive oversight with regard to the administration of the settlement fund which further guarantees that there will be no unfairness between sub-classes of claimants with the same interests.

Finally, the Class Members' due process rights are fully protected.  They are adequately represented.  They will be provided notice in a form and manner approved by this Court.  They will have an opportunity to object to both class certification and approval of the settlement.  And they will have a meaningful opportunity to participate in the process and be heard on all issues.

"The Supreme Court in *Ortiz* has read the 'limited fund' case as being moored to the Rule's historical antecedents, describing the classic actions as involving, for instance, 'claimants to trust assets, a bank account, <u>insurance proceeds</u>, company assets in a liquidation sale, proceeds of a ship sale in a maritime accident suit, and others.'" *In re Simon II Litig.*, 407 F.3d 125, 137 (2d Cir. 2005) (quoting *Ortiz*, 527 U.S. at 834) (emphasis added).  Indeed, no less then three of

- 8 -

the historical examples cited by the *Ortiz* Court dealt with a kind of insurance, either surety

bonds or an insurance policy:

> Equity, of course, recognized the same necessity to bind absent claimants to a limited fund when no formal imposition of a constructive trust was entailed. In *Guffanti v. National Surety Co.,* 196 N.Y. 452, 458, 90 N.E. 174, 176 (1909), for example, the defendant received money to supply steamship tickets and had posted **a $15,000 bond** as required by state law. He converted to personal use funds collected from more than 150 ticket purchasers, was then adjudged bankrupt, and absconded. One of the defrauded ticket purchasers sued the surety in equity on behalf of himself and all others like him. **Over the defendant's objection, the New York Court of Appeals sustained the equitable class suit, citing among other considerations the fact that all recovery had to come from a "limited fund out of which the aggregate recoveries must be sought" that was inadequate to pay all claims, and subject to pro rata distribution.** *Id.,* at 458, 90 N.E. 174, 90 N.E., at 176.   See Hazard, Gedid, & Sowle 1915 ("[*Guffanti*] explained that **when a debtor's assets were less than the total of the creditors' claims, <u>a binding class action was not only permitted but was required</u>; otherwise some creditors (the parties) would be paid and others (the absentees) would not"**). See also *Morrison v. Warren* 174 Misc. 233, 234, 20 N.Y.S.2d 26, 27 (1940) **(suit on behalf of more than 400 beneficiaries of an insurance policy following a fire appropriate where "the amount of the claims ... greatly exceeds the amount of the insurance");** *National Surety Co. v. Graves,* 211 Ala. 533, 534, 101 So. 190 (1924) **(suit against a surety company by stockholders "for the benefit of themselves and all others similarly situate who will join the suit" where it was alleged that individual suits were being filed on surety bonds that "would result in the exhaustion of the penalties of the bonds, leaving many stockholders without remedy").**

*Ortiz*, 527 U.S. at 836-37 (highlight and emphasis added).   And the Supreme Court expressly

recognized that insurance assets in that case were both limited "in the traditional sense" and

subject to demonstrable limit:

> The insurance assets would obviously be "limited" in the traditional sense if the total of demonstrable claims would render the insurers insolvent, or if the policies provided aggregate limits falling short of that total; calculation might be difficult, but the way to demonstrate the limit would be clear.

*Id.,* 527 U.S. 851.

The purpose of this type of limited fund class action is to prevent a feast that would later

lead to a famine for plaintiffs.  As explained by one commentator:  "The individual suits could

exhaust the fund before all members of the class were able to protect their interests."  7A Wright,

Miller & Kane, Federal Practice & Procedure § 1774, p. 32 (3d ed. 2005) (quoting Comment, Rule 23: Categories of Subsection (b), in The Class Action—A Symposium, 10 B.C. Ind. & Com. L. Rev. 539, 541 (1969)).

In the instant case, St. Paul Fire and Marine Insurance Company provides insurance coverage for each of the Levee District Defendants. This Court will be asked to confirm the extent of coverage as part of this process. Each levee district has a separate and distinct policy of insurance. No policy insures more than one levee district. Under the settlement, insurance proceeds of $17,000,000.00, plus legal interest on this amount from date of judicial demand through date of deposit, will be placed into the escrow account (the total is in excess of $ 20 million).

As stated above, a group of plaintiffs all looking to a limited pot of insurance proceeds is one of the "classic" cases for treatment as a limited fund class action. This is precisely the type of situation Rule 23(b)(1)(B) was designed to address.

## II.    The Levee Districts' Assets are Exempt From Seizure.

The Orleans Levee District was created by the Louisiana legislature in 1890 in order to protect New Orleans from floods. The Lake Borgne Basin Levee District was created to protect St. Bernard Parish from floods. *See* La R.S. 38:291(G). The East Jefferson Levee District was created by the Louisiana legislature and maintains and operates the flood protection system for the East Bank portion of Jefferson Parish. *See* La R.S. 38:291(D). The recently created Southeast Louisiana Flood Protection Authority – East[1] supervises the Orleans Levee District, the Lake Borgne Basin Levee District and the East Jefferson Levee District. *See* La. R.S. 38:330.1.

---

[1]  The Southeast Louisiana Flood Protection Authority – East was created post-Katrina in 2006.

NO.99912768.1

As political subdivisions of the State of Louisiana,[2] the levee districts are entitled to the

protections of Louisiana's anti-seizure provisions of La. Const. art. XII, § 10(C) and La. R.S.

13:5109(B)(2).  *Vogt v. Board of Commissioners of the Orleans Levee District*, 2001-0089 (La.

App. 4 Cir. 3/27/2002), 814 So.2d 648.

Section 10(C) of Article XII of the Louisiana Constitution makes clear that public

property and public funds are not subject to seizure:

> [T]he legislature by law may limit or provide for the extent of liability of the state,
> a state agency, or a political subdivision in all cases, including the circumstances
> giving rise to liability and the kinds and amounts of recoverable damages. It shall
> provide a procedure for suits against the state, a state agency, or a political
> subdivision and provide for the effect of a judgment, but no public property or
> public funds shall be subject to seizure. The legislature may provide that such
> limitations, procedures, and effects of judgments shall be applicable to existing as
> well as future claims. No judgment against the state, a state agency, or a political
> subdivision shall be exigible, payable, or paid except from funds appropriated
> therefore by the legislature or by the political subdivision against which the
> judgment is rendered.

Louisiana Revised Statute 13:5109 was enacted by the Louisiana legislature to effectuate

this prohibition:

> Any judgment rendered in any suit filed against the state, a state agency, or a
> political subdivision, or any compromise reached in favor of the plaintiff or
> plaintiffs in any such suit shall be exigible, payable, and paid only out of funds
> appropriated for that purpose by the legislature, if the suit was filed against the
> state or a state agency, or out of funds appropriated for that purpose by the named
> political subdivision, if the suit was filed against a political subdivision.

La. R.S. 13:5109.

The policy behind this established principle was described by Judge Vance in a case

involving the City of New Orleans as follows:

> [t]he government has limited resources, and the legislature expressly found that
> judgments have exceeded the government's ability to pay them on a current basis.

---

2 A "levee district" is a "political subdivision of this state organized for the purpose and charged with the duty of
constructing and maintaining levees, and all other things incidental thereto within its territorial limits." La. R.S.
38:281(6). A "political subdivision" is defined as any parish, municipality, "special district", school board, sheriff,
or "other public or governmental body of any kind which is not a state agency." La. R.S. 13:5102(B); *see also
Wynat Development Co. v. Board of Levee Commissioners*, 710 So.2d 783, 789-90 (1998) (stating that the Orleans
Levee District is a "special district" within the meaning of La. R.S. 13:5102(B)).

> Absent an anti-seizure provision, the assets of state and local governments could be dissipated through seizure actions, which could impair the ability of governments to perform vital public functions. Barring seizure and requiring an appropriation to pay judgments is a rational response to this predicament.

*Bennett v. City of New Orleans*, 2004 WL 60316 *7 (E.D. La.) (Vance, J.).

The United States Fifth Circuit as well as several Courts in this District have recognized and enforced the Louisiana anti-seizure provisions. For example, in *Specialty Healthcare Management, Inc. v. St. Mary Parish Hospital*, the Fifth Circuit vacated a writ of execution against the Parish Hospital defendant. 220 F.3d 650 (5th Cir. 2000). This diversity case involved enforcement of an arbitration award. *Id.* at 652-53. Specialty sued the hospital in federal district court seeking monetary damages as well as declaratory and injunctive relief in connection with a contractual dispute. *Id.* at 652. The hospital invoked a mandatory arbitration clause. *Id.* After Specialty obtained a $750,000.00 arbitration award, the court confirmed the award in a judgment requiring the hospital to pay within thirty (30) days, but the hospital refused. *Id.* Specialty then sought and obtained from the district court a writ of execution pursuant to Fed. R. Civ. P. 69, over the parish hospital's objection that Louisiana's anti-seizure provisions controlled. *Id.* at 653. The United States Fifth Circuit reversed the district court and vacated the writ holding that the Louisiana anti-seizure provisions applied and the district court could not issue a writ of execution. *Id.* at 653-56.

Similarly, *City of New Orleans v. Municipal Administrative Services, Inc.* was a diversity action before Judge Africk of the Eastern District of Louisiana based on a contract dispute between the Municipal Administrative Services ("MAS") and the City of New Orleans. 2004 WL 2496202 (E.D. La) (Africk, J.). MAS moved for contempt sanctions for the City's non-payment of a judgment based on breach of contract. *Id.* at *1 - *2. Judge Africk found that there was no dispute that the judgment was in effect, that it directed the City to pay a certain sum, and that the City had failed to pay. *Id.* at *2. Despite this, the Court found the City could not be

- 12 -

compelled, by contempt order, to satisfy a judgment as such order would conflict with the State's anti-seizure provision and Louisiana jurisprudence. *Id.* at *4. As observed by the Court, MAS simply sought "to accomplish indirectly what it [could not] accomplish directly." *Id.* at *4.

In support of his decision, Judge Africk quoted with approval the recognition of the *Vogt* Court that the judiciary has no legal authority to compel payment by political subdivisions:

> This court recognizes and sympathizes with plaintiff['s] plight in getting judgment against the State or political subdivision satisfied. Nonetheless, this court is without constitutional or statutory authority to compel [a political subdivision] to pay the judgment rendered against it.

*Id.* at *4, citing *Vogt*, 814 So.2d at 656.

In addition, the levee districts also cannot be subject to a writ of mandamus to require them to appropriate additional funds to satisfy the potential judgments in this case. *Hoag v. Louisiana*, 2004-0857 (La. 12/1/2004), 889 So. 2d 1019. The Louisiana Supreme Court in *Hoag* reaffirmed the long standing decisional law in Louisiana that "judgment creditors cannot mandamus political subdivisions to appropriate funds for payment of a judgment rendered against the respective political subdivisions." *Id.* at 1023 (citing *Jones v. Traylor*, 94-2520 (La. App. 4 Cir. 8/23/95), 660 So. 2d 933; *Landry v. City of Erath*, 93-308 (La. App. 3 Cir. 12/8/93), 628 So. 2d 1178; *State, Dept. of Trans. & Dev. v. Sugarland Ventures, Inc.*, 476 So. 2d 970 (La. App. 1 Cir. 1985); *Fontenot v. State, Through Dept. of Highways*, 358 So. 2d 981 (La. App. 1 Cir. 1978), *rev'd on other grounds*, 355 So. 2d 1324 (La. 1978)).

In *Hoag,* a group of coroners filed suit against the State of Louisiana to collect past due and future compensation under then La. R.S. 33:1599, and obtained a judgment in their favor. *Id.* at 1021. The Louisiana legislature never appropriated funds to satisfy the judgment. The plaintiffs thereafter filed suit seeking a writ of mandamus directing the state treasurer and legislature to appropriate funds to satisfy the judgment. *Id.* at 1022. The Louisiana Supreme

- 13 -

Court held that "a writ of mandamus directing the legislature to appropriate funds is an impermissible usurpation of legislative power by the judiciary."[3] *Id.* at 1025 (emphasis added).

Finally, the reach of Louisiana's anti-seizure provisions precludes even recordation of a judgment from creating a judicial mortgage on the property of the governmental entity. *See, Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*, 2006-0582 (La. 11/29/06), 943 So. 2d 1037.

In short, the putative Class Members before this Court have no legal right or remedy by which they may enforce judicially any judgment they might obtain against the levee districts.

### III.    The Proposed Class Notice Will Provide Adequate Notice of the Class Settlement to All Class Members

In addition to provisionally certifying the Settlement Class and granting preliminary approval to the settlement, this Court should authorize the Parties to provide notice to all Class Members and approve the form of the Class Notice and the manner such notice is to be given.

Federal Rule of Civil Procedure 23(e)(1) provides that "notice in a reasonable manner" must be sent "to all class members who would be bound by a proposed settlement." Fed. R. Civ. P. 23(e)(1). Further, Federal Rule of Civil Procedure 23(c)(2)(A) provides that in a non-settlement class certified *under Rule 23(b)(1)(B)* "the court may direct appropriate notice to the class". *Compare* Fed. R. Civ. P. 23(c)(2)(B) (describing the more detailed notice required statutorily for a non-settlement class certified *under Rule 23(b)(3)*).

Federal courts have broad discretion to fashion notice of settlement in class actions. *See Gottlieb v. Wiles*, 11 F.3d 1004, 1013 (10th Cir. 1993), *abrogated on other grounds, Devlin v. Scardelletti*, 536 U.S. 1 (2002) (noting that the content and form of Rule 23(e) notice are left to the court's discretion). Rule 23(e) notices need not spell out the precise details of the settlement. *Id.* A notice that merely summarizes the terms of the settlement, advises readers of the means by

---

3 The Court noted that mandamus can only lie when "the public official to whom the writ is directed may exercise

which they can register objections, and provides the location and time of a public fairness hearing, for example, has been held adequate to meet the requirements of Rule 23(e). *See Dillard v. City of Foley*, 926 F. Supp. 1053, 1059, 1063 (M.D. Ala. 1995).

To assure that the Class Members are fully informed, *inter alia*, of this proposed settlement, their right to retain counsel, their right to review the proposed settlement documents, their right to object to certification and to the proposed settlement, the means whereby they may make their objections, and their right to be heard thereon at a Certification Hearing and a Fairness Hearing to be held by the Court, the Parties have proposed the notice plan and forms of notice as set forth in the Affidavit of Shannon R. Wheatman, Ph.D. (with exhibits), attached as *in globo* Exhibit "4" to the Joint Motion.

The proposed Class Notice that will be provided to Class Members here easily meets the requirements of Rule 23(e)(1) and due process.[4] Accordingly, this Court should authorize notice, in substantially the manner and form proposed, to all members of the Settlement Class.

## IV. Subject To a Final Fairness Hearing, the Court Should Approve the Settlement Under Federal Rule of Civil Procedure 23(e).

The Class Settlement Agreement was negotiated by counsel for the Class and Settling Defendants at arm's length, and is fair to all Class Members.

Given the Insurance Policy Limits, allowing Class Members to individually and separately prosecute their Claims would, if successful, likely deplete the Insurance Policy Limits to the benefit of the first cases to proceed to verdict and to the detriment of all subsequent cases, likely resulting in full recovery for some Class Members and no recovery for the vast majority of Class Members. The proposed settlement avoids such an inequitable result and insures equitable treatment for each Class Member by, *inter alia*, requiring the administration of the settlement

---

no element of discretion when complying," and stated that "[t]he very act of appropriating funds is, by its nature, discretionary and specifically granted to the legislature by the constitution." *Id.*

- 15 -

fund be under the supervision of this Court. Thus, under the settlement terms, no preference is given to any single Class Member over the Class as a whole. *See Hickerson*, 121 F.R.D. at 69 (preliminarily approving settlement in part because it did not appear "to favor some class members over others").

Moreover, discovery has taken place over the years in the related litigation in which the Parties have been involved, including the MR-GO Consolidated Class Action and the Levee Consolidated Class Action. The Parties have thereby become more educated concerning the particular issues involved and have had ample opportunity to determine the fairness and adequacy of the settlement.

Additionally, the Settling Defendants contend that there are significant legal barriers to the Class Members' successful litigation of their claims, whether individually or on a class-wide basis. These barriers include proving liability as to the Levee Defendants. The Class Representatives dispute these points. Nevertheless, in entering into the negotiations that produced the settlement at issue here, both sides recognized the considerable costs and risks facing the Class Members in the pursuit of their Claims.

The Settling Defendants believe there are strong arguments that the Class Members' Claims are not appropriate for certification as a litigation class, and the Class Representatives of course believe the opposite. By resolving the individualized issues without the need for individualized litigation, the proposed settlement avoids the contentious issue of whether a class may be certified for litigation purposes.

Class Counsel are experienced class action litigators. Class Counsel believe that the settlement, as proposed, is fair and reasonable to the putative Settlement Class, especially in

---

[4] The Parties submit that the proposed notice plan also goes further -- to the extent that there is a distinction -- and meets the potentially more exacting standards for notice in a non-settlement context under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(c)(2)(A) and (B).

- 16 -

view of the uncertainties and vagaries of further litigation with the Settling Defendants, the nature and extent of the alleged damage to the Class, and the limited funds available from the Settling Defendants.

In sum, this Court should give preliminary approval to the settlement as fair and reasonable under Rule 23(e). Notice then will be sent to the members of the Settlement Class, and the Court may conduct a final Certification Hearing to determine the propriety of certification of the Settlement Class and thereafter a Fairness Hearing to determine for final purposes the settlement's "fairness, adequacy, and reasonableness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84-87 (2d Cir. 2001). At the Certification Hearing and Fairness Hearing, the Parties will have an additional opportunity to demonstrate to the Court that certification of the Settlement Class is proper and that the proposed settlement is indeed fair, reasonable, and adequate for all Class Members. Any Class Member who timely and properly objects to the settlement also will have an opportunity to be heard on all issues before final judgment is entered. Pending that Certification/Fairness Hearings, this Court should give preliminary approval to the settlement so that Class Notice can be provided to the Settlement Class.

### Other Relief Requested

By the Joint Motion, the Parties request additional relief in furtherance of the proposed preliminary certification of the Settlement Class and preliminary approval of the Class Settlement. This additional relief includes:

     i.     The approval of the following persons to serve as provisional representatives for the Settlement Class:  Kenneth & Jeannine Armstrong, Chalmette, LA (Subclass 1), Thurman R. Kaiser, Metairie, LA (Subclass 2) and Donna Augustine, New Orleans, LA (Subclass 3);

     ii.     The approval of Joseph M. Bruno, James P. Roy and Gerard E. Meunier to serve as Class Counsel;

- 17 -

iii.     The appointment of a Court Appointed Disbursing Agent;

iv.     The setting of the Certification and Fairness Hearings and related deadlines;

v.      The stay of all Claims asserted against the Settling Defendants in all federal
        Pending Actions    (including discovery) effective upon the entry of the
        Preliminary Approval Order, and the injunction of Class Members from pursuing
        such Claims absent further order of the Court; and

vi.     Related relief, all as more fully set forth in the Joint Motion and accompanying
        proposed Preliminary Approval Order.

## CONCLUSION

The Parties submit that the requests set forth in the Joint Motion for preliminary certification of the Settlement Class, preliminary approval of the Class Settlement Agreement, approval of the Class Notice and the entry of the Preliminary Approval Order (and for the additional relief requested therein), are well grounded in fact and law and should be granted.

The Parties further submit that, after appropriate notice to the Class and hearings, this Court should grant final certification of the Settlement Class and approval of the Class Settlement Agreement, and enter final judgment in this case as prayed for.

- 18 -

For the reasons stated, movants respectfully submit that the Joint Motion is well founded and should be granted.

Respectfully submitted,

LAW OFFICES OF JOSEPH M. BRUNO

BY: _____

Joseph M. Bruno (# 3604)
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Telecopier: (504) 561-6775
E-mail: jbruno@jbrunolaw.com

ON BEHALF OF CLASS COUNSEL, AND AS
LIAISON COUNSEL FOR LEVEE AND MR-GO-
PLAINTIFF SUBGROUP LITIGATION
COMMITTEES

Gainsburgh, Benjamin, David, Meunier &
Warshauer, L.L.C.

By: _____

Gerald E. Meunier (# 9471)
2800 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-2800
Telephone: (504) 522-2304
Facsimile: (504) 528-9973

LIAISON COUNSEL FOR LEVEE-PLAINTIFF
SUBGROUP LITIGATION COMMITTEE

- 19 -

NO.99912768.1

Domengeaux Wright Roy & Edwards

By: _____

     James P. Roy (# 11511)
     556 Jefferson Street
     Lafayette, LA 70502
     Telephone:  (337) 593-4190
     Facsimile:  (337) 233-2796

LIAISON COUNSEL FOR MR-GO-PLAINTIFF
SUBGROUP LITIGATION COMMITTEE


MCCRANIE, SISTRUNK, ANZELMO, HARDY,
MAXWELL & MCDANIEL

BY: _____

     Thomas P. Anzelmo (#2533)
     3445 N. Causeway Boulevard, Suite 800
     Metairie, Louisiana  70002
     Telephone: (504) 831-0946
     Facsimile:  (504) 831-2492

ATTORNEYS FOR THE BOARD OF
COMMISSIONERS FOR THE ORLEANS LEVEE
DISTRICT AND THE ORLEANS LEVEE
DISTRICT


DUPLASS, ZWAIN, BOURGEOIS, PFISTER &
WEINSTOCK

BY: _____

     Gary M. Zwain (# 13809)
     Three Lakeway Center, Suite 2900
     3838 North Causeway Boulevard
     Metairie, Louisiana 70002
     Telephone No.:  (504) 832-3700
     Facsimile No.:  (504) 837-3119

ATTORNEYS FOR THE BOARD OF
COMMISSIONERS FOR THE EAST
JEFFERSON LEVEE DISTRICT, THE EAST
JEFFERSON LEVEE DISTRICT, THE BOARD
OF COMMISSIONERS FOR THE LAKE
BORGNE BASIN LEVEE DISTRICT, AND THE
LAKE BORGNE BASIN LEVEE DISTRICT

- 20 -

Domengeaux Wright Roy & Edwards

By: _____

     James P. Roy (# 11511)
     556 Jefferson Street
     Lafayette, LA 70502
     Telephone:  (337) 593-4190
     Facsimile:  (337) 233-2796

LIAISON COUNSEL FOR MR-GO-PLAINTIFF
SUBGROUP LITIGATION COMMITTEE

MCCRANIE, SISTRUNK, ANZELMO, HARDY,
MAXWELL & MCDANIEL

BY: _____

     Thomas P. Anzelmo (#2533)
     3445 N. Causeway Boulevard, Suite 800
     Metairie, Louisiana  70002
     Telephone:  (504) 831-0946
     Facsimile:  (504) 831-2492

ATTORNEYS FOR THE BOARD OF
COMMISSIONERS FOR THE ORLEANS LEVEE
DISTRICT AND THE ORLEANS LEVEE
DISTRICT

DUPLASS, ZWAIN, BOURGEOIS, PFISTER &
WEINSTOCK

BY: _____

     Gary M. Zwain (# 13809)
     Three Lakeway Center, Suite 2900
     3838 North Causeway Boulevard
     Metairie, Louisiana 70002
     Telephone No.:  (504) 832-3700
     Facsimile No.:  (504) 837-3119

ATTORNEYS FOR THE BOARD OF
COMMISSIONERS FOR THE EAST
JEFFERSON LEVEE DISTRICT, THE EAST
JEFFERSON LEVEE DISTRICT, THE BOARD
OF COMMISSIONERS FOR THE LAKE
BORGNE BASIN LEVEE DISTRICT, AND THE
LAKE BORGNE BASIN LEVEE DISTRICT

- 20 -

Domengeaux Wright Roy & Edwards

By: _____

   James P. Roy (# 11511)
   556 Jefferson Street
   Lafayette, LA 70502
   Telephone: (337) 593-4190
   Facsimile: (337) 233-2796

LIAISON COUNSEL FOR MR-GO-PLAINTIFF
SUBGROUP LITIGATION COMMITTEE


MCCRANIE, SISTRUNK, ANZELMO, HARDY,
MAXWELL & MCDANIEL

BY: _____

   Thomas P. Anzelmo (#2533)
   3445 N. Causeway Boulevard, Suite 800
   Metairie, Louisiana 70002
   Telephone: (504) 831-0946
   Facsimile: (504) 831-2492

ATTORNEYS FOR THE BOARD OF
COMMISSIONERS FOR THE ORLEANS LEVEE
DISTRICT AND THE ORLEANS LEVEE
DISTRICT


DUPLASS, ZWAIN, BOURGEOIS, PFISTER &
WEINSTOCK

BY: _____

   Gary M. Zwain (# 13809)
   Three Lakeway Center, Suite 2900
   3838 North Causeway Boulevard
   Metairie, Louisiana 70002
   Telephone No.: (504) 832-3700
   Facsimile No.: (504) 837-3119

ATTORNEYS FOR THE BOARD OF
COMMISSIONERS FOR THE EAST
JEFFERSON LEVEE DISTRICT, THE EAST
JEFFERSON LEVEE DISTRICT, THE BOARD
OF COMMISSIONERS FOR THE LAKE
BORGNE BASIN LEVEE DISTRICT, AND THE
LAKE BORGNE BASIN LEVEE DISTRICT

- 20 -

NO.99912768.1

LUGENBUHL, WHEATON, PECK, RANKIN & HUBBARD

BY: _Ralph S. Hubbard III_

Ralph S. Hubbard III (# 7040)
601 Poydras Street, Suite 2775
New Orleans, LA  70130
Telephone:  (504) 568-1990
Telecopier:  (504) 310-9195

and

PHELPS DUNBAR LLP

BY: _____

S. Ault Hootsell III (# 17630)
Canal Place
365 Canal Street, Suite 2000
New Orleans, LA  70130-6534
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130

ATTORNEYS FOR ST. PAUL FIRE AND MARINE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing Memorandum in Support of Joint Request for Entry of Order has been served upon all counsel of record via electronic mail on this 9th day of December, 2008.

/s/ Gary M. Zwain

- 22 -