UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES CONSOLIDATED LITIGATION<br><br>PERTAINS TO: BARGE<br>Boutte, No. 05-5531<br>Mumford, No. 05-5724<br>Lagarde, No. 06-5342<br>Perry, No. 06-6299<br>Benoit, No. 06-7516<br>Parfait Family, No. 07-3500<br>Lafarge, No. 07-5178 | CIVIL ACTION<br><br>NO. 05-4182<br>& Consol. Cases<br><br>SECTION "K" (2)<br>JUDGE DUVAL<br><br>MAGISTRATE WILKINSON |

### MEMORANDUM OF THIRD-PARTY DEFENDANT, BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, IN OPPOSITION TO MOTION FOR LEAVE TO FILE BARGE PLAINTIFFS' SEVENTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES

**MAY IT PLEASE THE COURT:**

#### Introduction

Faced with a motion [Rec. Doc. No. 14710] by third-party defendant, Board of Commissioners of the Port of New Orleans (the "Dock Board"), to dismiss the third-party claims of defendant and third-party plaintiff, Lafarge North America, Inc. ("Lafarge"), on summary judgment, Barge Plaintiffs— despite six prior amendments to their Complaint— now seek leave of Court to file a Seventh Amended Complaint to introduce new and previously lacking references to Federal Rule of Civil Procedure 9(h), specific



- 1 -

characterizations of their action as one for maritime tort damages, and a so-called Rule 9(h) election to proceed under the court's maritime jurisdiction. As will be explained more fully below, Barge Plaintiffs' belated eleventh-hour epiphany regarding Rule 9(h)—occurring nearly a month after the Dock Board filed its summary-judgment motion— is nothing more than a veiled attempt to change the rules once the game has begun, defeat the Dock Board's meritorious effort to dismiss Lafarge's third-party claims, and preserve for Barge Plaintiffs a potential second bite at the apple in case their barge-only theory of liability fails. As such, Barge Plaintiffs' proposed Seventh Amended Complaint is unduly prejudicial to the Dock Board and leave of Court to so amend their Complaint should respectfully be denied.

1. **Denial of leave to amend a Complaint is justified when allowing the amendment would cause undue prejudice to a party opposing the amendment.**

In deciding Barge Plaintiffs' motion for leave to amend their Complaint, the court must consider the prejudice that a party opposing the amendment would suffer if the motion was granted. See, Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). In this regard, if granting leave to amend "would occasion undue prejudice to the opposing party, the denial of leave is a proper exercise of the district court's discretion." See, Ross v. Houston Independent School District, 699 F.2d 218, 228 (5th Cir. 1983). Generally, a court is justified in denying leave to amend a Complaint if the proposed amendment undermines a pending motion for summary judgment:

- 2 -

> The liberal amendment policy of the Federal Rules was not intended to allow a party to circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens.

See, Glesenkamp v. Nationwide Mut. Ins. Co., 71 F.R.D. 1, 4 (N.D.Cal. 1974), aff'd, 540 F.2d 458 (9th Cir. 1976)(per curiam).

2.  **Rule 14(c) impleader, which allows a defendant as a third-party plaintiff to bring into an action a third-party defendant who may be liable to either the original plaintiff or to the third-party plaintiff, and demand that a judgment be entered in favor of the original plaintiff against the third-party defendant, is only available if the original plaintiff has brought admiralty and maritime claims within the meaning of Rule 9(h) against the defendant.**

By way of general background relevant to the Dock Board's opposition, when multiple grounds of federal subject matter jurisdiction for a Plaintiff's action exist, and one of those grounds is admiralty or maritime jurisdiction, a Plaintiff has the "power to determine procedural consequences by the way in which he exercises the classic privilege given by the savings to suitors clause (28 U.S.C. §1333) or by equivalent statutory provisions." See, Advisory Committee Notes 1966 Amendment to Fed.R.Civ.P. 9. A Plaintiff's power to determine procedural consequences when admiralty and another ground of federal jurisdiction exist emanates from Rule 9(h) of the Federal Rules of Civil Procedure. Under Rule 9(h), "[i]f a claim for relief is within the admiralty or maritime jurisdiction and also within the court's subject matter jurisdiction on some other ground," a Plaintiff wishing to take advantage of "[c]ertain distinctive features of the admiralty practice," see, Advisory Committee Notes 1966 Amendment to Fed.R.Civ.P. 9, may, in his pleading, "designate the claim as an admiralty or maritime claim for purposes of Rules 14(c), 38(e), and 82 and the Supplemental Rules for

Admiralty or Maritime Claims and Asset Forfeiture Actions." See, Fed.R.Civ.P. 9(h). In other words, when a Plaintiff chooses to proceed under the court's admiralty or maritime jurisdiction, certain distinctive features of the admiralty practice such as the special rules regarding venue and the availability of an interlocutory appeal, the non-availability of a jury trial, and the availability of certain maritime remedies including Rule B attachment and the Rule C action in rem to enforce a maritime lien. See, T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc., 702 F.2d 585, 586-87 (5th Cir. 1983), cert denied, 464 U.S. 847, 104 S.Ct. 151 (1983).

Another procedural consequence of a Plaintiff designating his claim as an admiralty or maritime claim is the availability to the defendant of Rule 14(c) of the Federal Rules of Civil Procedure, which allows a defendant, as a third-party plaintiff, to not only implead a third-party defendant who may be liable in whole or in part to the original Plaintiff, but also to demand that a judgment be entered in favor of the original Plaintiff against the third-party defendant:

> If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable— either to the plaintiff or to the third-party plaintiff— for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences. ... The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant....

See, Fed.R.Civ.P. 14(c). In contrast, Rule 14(a) of the Federal Rules of Civil Procedure governs third-party impleader in non-admiralty actions. Under Rule 14(a), "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a

- 4 -

nonparty who is or may be liable to it for all or part of the claim against it." But unlike Rule 14(c), "[u]nder Rule 14(a), a third-party defendant may not be impleaded merely because he may be liable to the plaintiff." See, Owen Equipment and Erection Company v. Kroger, 437 U.S. 365, 368 n. 3, 98 S.Ct. 2396, 2400 n. 3 (1978). Rather, impleader under Rule 14(a) is based upon a third-party defendant's derivative or secondary liability to the original defendant, not the third-party defendant's liability to the original plaintiff:

> It is no longer possible under Rule 14[(a)], as it was prior to the 1948 amendment to the rule, to implead a third party claimed to be solely liable to the plaintiff. A proposed third-party plaintiff must allege facts sufficient to establish the derivative or secondary liability of the proposed third-party defendant. Thus, under Rule 14(a), a third-party complaint is appropriate only in cases where the proposed third-party defendant would be secondarily liable to the original defendant in the event the latter is held to be liable to the plaintiff.

See, Barab v. Menford, 98 F.R.D. 455, 456 (E.D.Pa. 1983). Also, under Rule 14(a), a third-party plaintiff may not demand that a judgment be entered against the third-party defendant in favor of the original plaintiff. See, Williams v. United States, 42 F.R.D. 609, 615 (S.D.N.Y. 1967).

Finally, interpreting Rule 9(h), the U.S. Fifth Circuit has held that "a party need not make a specific reference to Rule 9(h) in order to fall under [the court's] admiralty jurisdiction." See, Teal v. Eagle Fleet, Inc., 933 F.2d 341, 345 (5th Cir. 1991), reh'g denied, 951 F.2d 347 (5th Cir. 1991)(Table). Instead, the Fifth Circuit has stated that "a case cognizable under both admiralty and diversity jurisdiction will be treated as an admiralty action if the plaintiff asserts a simple statement asserting admiralty or

- 5 -

maritime claims." See, Teal, 933 F.2d at 345; see also, T.N.T. Marine Service, Inc., 702 F.2d at 587. It should be noted, however, that "[a] plaintiff's allegation that his claim is within the admiralty and maritime jurisdiction is not sufficient to make it an admiralty and maritime claim within the meaning of Rule 9(h), if the claim is also within the district court's jurisdiction on some other ground." See, Harrison v. Glendel Drilling Company, 679 F.Supp. 1413, 1418 (W.D.La. 1988).

3. **Barge Plaintiffs, in their original and six amended Complaints filed in Mumford, elected to proceed under this Honorable Court's diversity jurisdiction by alleging multiple grounds for federal subject matter jurisdiction, requesting a jury trial, and failing to designate their claims as admiralty or maritime claims.**

With this background information in mind, in their original and six subsequently amended Complaints, Barge Plaintiffs in Mumford make no reference whatsoever to the fact that they wish to assert admiralty or maritime claims for purposes of Rule 9(h) of the Federal Rules of Civil Procedure. Nor do Barge Plaintiffs assert an in rem claim, which would be cognizable only in admiralty, or make any reference whatsoever to Federal Rules of Civil Procedure 9(h), 14(c), 38(e), 82, or to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

According to the original "Suit for Damages Trial by Jury" filed in Mumford, Barge Plaintiffs alleged multiple grounds for the exercise of federal subject matter jurisdiction:

I.

> This Court has jurisdiction over this matter as follows: Diversity, under 28 USC 1332; General Maritime Law under 28 USC §1333; and the surrogate law of the state of Louisiana under the saving to suitor's clause of 28 USC §1333.

- 6 -

See, Suit for Damages Trial by Jury at ¶ 1, p. 1 (05-5724 Rec. Doc. 1). No further reference to either admiralty or maritime appears anywhere else in the original Mumford suit, nor is there any mention of Federal Rule of Civil Procedure 9(h) or any of the other federal rules associated with an incorporation of admiralty procedure into the action. Moreover, Barge Plaintiffs, in their original suit in Mumford, specifically asked for a jury trial, which is wholly inconsistent with the assertion of an admiralty or maritime claim under Rule 9(h):

> Plaintiff desires is [sic] entitled to trial by jury.
>
> \* \* \*
>
> Plaintiff's further pray for trial by jury and for all general and equitable relief required or necessary in the premises.

See, Suit for Damages Trial by Jury at p. 4, 5 (unnumbered allegations)[No. 05-5724 Rec. Doc. No. 1].

Over the next three years, Barge Plaintiffs amended their original Complaint in Mumford six more times. See, First Supplemental and Amended Complaint [No. 05-5724 Rec. Doc. No. 5]; Second Supplemental and Amended Complaint [No. 05-4419 Rec. Doc. No. 43]; Third Supplemental and Amended Complaint [No. 05-4419 Rec. Doc. No. 129]; Supplemental and Amended Complaint Adding Defendants Zito Fleeting, LLC and Zito Fleeting, Inc. [No. 05-4419 Rec. Doc. No. 449]; Fifth Supplemental and Amended Complaint [No. 05-4419 Rec. Doc. No. 719]; and Sixth Supplemental and Amended Complaint [No. 05-4182 Rec. Doc. No. 8779]. In none of these six amended Complaints, however, did Barge Plaintiffs insert any reference, either explicit or implicit,

to admiralty or maritime claims, or to Federal Rule of Civil Procedure 9(h). Moreover, Barge Plaintiffs' original jury request was specifically reiterated in their Fifth Supplemental and Amended Complaint:

> Petitioners further prays [sic] for trial by jury after all general and equitable relief required.

See, Fifth Supplemental and Amended Complaint at p. 5 [No. 05-4419 Rec. Doc. No. 719].

Applying the above-stated law, because Barge Plaintiffs in Mumford had: (1) alleged multiple grounds of federal subject matter jurisdiction including 28 U.S.C. §1332 (diversity of citizenship) and 28 U.S.C. §1333 (admiralty, maritime and prize cases); (2) failed to designate their claims as admiralty or maritime claims for purposes of Federal Rule of Civil Procedure 9(h); and (3) specifically requested a trial by jury; Barge Plaintiffs clearly elected for their action to proceed as a normal civil action, with a trial by jury, under the court's diversity jurisdiction. Consequently, those certain distinctive features of the former admiralty procedural rules now embodied in Federal Rules of Civil Procedure 14(c), 38 (e), and 82, and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions were not made applicable to the Mumford action.

Following the Barge Plaintiffs' Sixth Amended Complaint in Mumford, Lafarge filed a third-party complaint against the Dock Board and others denying that the barge in question had caused any of the breaches in the floodwalls and alleging, among other things, that the Barge Plaintiffs' damages were instead caused solely by the pre-hurricane negligence of the Dock Board and the other third-party defendants, and that

- 8 -

Lafarge was entitled to indemnity and/or contribution for the full amount of any liability that Lafarge may be caused to incur. See, Lafarge Answer to Sixth Supplemental and Amended Complaint and Third-Party Complaint in Mumford at ¶¶ 16, 64, 65, 78, and Prayer (4) [Rec. Doc. 9032]. Additionally, Lafarge demanded in their third-party complaint that a judgment be entered in favor of Barge Plaintiffs solely against the Dock Board and the other third-party defendants, and not against Lafarge. See, Lafarge Answer to Sixth Supplemental and Amended Complaint and Third-Party Complaint in Mumford at Prayer (3) [Rec. Doc. 9032]. As explained above, such theories of third-party liability asserted by Lafarge are wholly inconsistent with impleader practice under Rule 14(a), and, therefore, necessarily fail as a matter of law.

4. **Relying upon the Barge Plaintiffs' assertions in their original and six amended Complaints, the Dock Board timely filed a Motion for Summary Judgment seeking to dismiss Lafarge's meritless third-party claims. Barge Plaintiffs' proposed Seventh Amended Complaint— filed nearly a month after the Dock Board's summary-judgment motion and containing new assertions designed to thwart the Dock Board's motion— is a belated and highly prejudicial attempt at resuscitating and legitimizing Lafarge's improper and invalid Rule 14(c) claims against the Dock Board. Consequently, Barge Plaintiffs should respectfully be denied leave to file their Seventh Amended Complaint.**

In Case Management and Scheduling Order No. 7, this Honorable Court established a four-month window beginning on May 1, 2008, and ending on September 1, 2008, for any party to file a motion for summary judgment in the Barge Litigation. See, Case Management and Scheduling Order No. 7 at p. 2 [Rec. Doc. No. 12935]. On August 29, 2008, in reliance upon the allegations contained in the Barge Plaintiffs' original and six amended Complaints, and after incurring considerable time and

- 9 -

expense in researching and preparing a dispositive motion on the merits, the Dock Board timely filed a motion for summary judgment [Rec. Doc. No. 14710] seeking to dismiss all of the third-party complaints that Lafarge North America, Inc. had filed against it in the Barge litigation. The basic theory underlying the Dock Board's summary-judgment motion was that because Barge Plaintiffs had alleged both admiralty and diversity jurisdiction for their claims, and because Barge Plaintiffs had also specifically requested a jury trial and failed to designate their claims as admiralty or maritime claims within the meaning of Rule 9(h), Lafarge's third-party impleader of the Dock Board was governed by Rule 14(a) of the Federal Rules of Civil Procedure, and not by the more expansive Rule 14(c). Under Rule 14(a), Lafarge could not attempt to hold the Dock Board directly liable to the Barge Plaintiffs for their damages, but rather could only allege that the Dock Board was somehow secondarily or derivatively liable to Lafarge in the event that Lafarge was ultimately found liable to Barge Plaintiffs. Lafarge's third-party complaint, however, fails to contain any such allegations. Also, under Rule 14(a), Lafarge could not, as a matter of law, pray that a judgment be entered against the Dock Board and others directly in favor of Barge Plaintiffs. Consequently, Lafarge's third-party claims against the Dock Board necessarily fail as a matter of law and are ripe for dismissal on summary judgment.

Several weeks later, on September 19, 2008, Barge Plaintiffs filed a "Response" to the Dock Board's summary-judgment motion in which they claim that it has been their "collective intent as expressed in their initial pleadings and thereafter that these consolidated actions proceed as admiralty and maritime actions." See, Barge Plaintiffs'

- 10 -

Response to the Board of Commissioners of the Port of New Orleans' Motion for Summary Judgment and Orleans Levee District's Motion for Summary Judgment ("Barge Plaintiffs' Response") at p. 1 [Rec. Doc. No. 15071]. As demonstrated above, however, this statement by Barge Plaintiffs wholly lacks merit. Additionally, Barge Plaintiffs argued that they were preparing a new Master Complaint which, according to Barge Plaintiffs, "was conceived independently of the motions sub judice, but is intended to harmonize and clarify all of the Barge Plaintiffs' claims in light of all manner of issues that have arisen since consolidation into the Katrina Litigation." See, Barge Plaintiffs' Response at p. 4 [Rec. Doc. No. 15071]. Barge Plaintiffs further proclaimed that "[t]his pleading will be presented for leave of Court in due course, and will clarify for the sake of all parties and the Court that, inter alia, the Barge Plaintiffs have in fact invoked admiralty and maritime jurisdiction, and that the Barge Plaintiffs recognize and adopt the incidental effects thereon on the formal and substantive attributes of this litigation." See, Barge Plaintiffs' Response at p. 4 [Rec. Doc. No. 15071].

Approximately, one week later on September 25, 2008, but well past the Court's deadline for amending pleadings, Barge Plaintiffs filed the instant motion seeking leave of court to amend their original Complaint for the seventh time. In their supporting memorandum, Barge Plaintiffs fail to mention their alleged desire that this action now proceed as an admiralty or maritime claim. Instead, Barge Plaintiffs espouse, in glowing terms, the purported merits of their proposed seventh amended complaint, and represent to this Honorable Court that the amended complaint contains no new

- 11 -

allegations, that there is no potential for prejudice to anyone, and that there are no pending motions whose substance or relevance will be affected:

> The Barge Plaintiffs .. seek leave of Court to file ... the proposed Seventh Amended Consolidated Class Action Complaint for Damages submitted herewith, to clarify and harmonize prior piecemeal amendments, and to place the Barge Litigation Track in the best posture for class certification proceedings and trial. The proposed pleading fits within a framework which clarifies and harmonizes the multiple prior *Mumford* complaints, placing the Barge Plaintiffs' contentions— as articulated by proposed class representatives— within easy reach of the Court and parties.

\* \* \*

> The Seventh Amended Complaint also reflects undersigned's desire to repackage in a more "user friendly" and articulate manner all of the allegations contained in multiple Mumford complaints (original through sixth) filed to date.

\* \* \*

> [T]he Seventh Amended Complaint represents undersigned's anticipation the proposed pleading will be helpful to everyone.

\* \* \*

> The Barge Plaintiffs submit that there is no potential for prejudice to any defendants. There are no defense motions, pleadings or other matters pending whose substance or relevance will be affected by the Seventh Amended Complaint. The matters contained in the proposed Seventh Amended Complaint do not add allegations, but only clarify all that has been previously alleged in prior complaints.... The Seventh Amended Complaint does not allege any new cause of action, or any matter not central to the long-standing allegations that the Barge Entity defendants negligently failed to secure ING 4727, that it broke from its moorings, and that it caused the Industrial Canal breaches, thereby causing the Barge Plaintiffs' damages.
>
> Other than the addition of one named plaintiff, ... there are no new matters raised in the Seventh Amended Complaint which the Barge Plaintiffs have not already formally presented to the parties and Court.

\* \* \*

[T]his amendment brings not the slightest hardship to anyone.

\* \* \*

[The] amendment only clarifies for the benefit of all concerned what has already been well-pleaded.

See, Memorandum in Support of Motion for Leave to File Barge Plaintiffs' Seventh Amended Consolidated Class Action Complaint for Damages at pp. 2, 5, 7, 8 & 9 [Rec. Doc. No. 15356-2].

In reality, the Barge Plaintiffs' proposed Seventh Amended Complaint does not simply "clarify and harmonize" all of their earlier allegations as they contend. Rather, to the extreme detriment and prejudice of the Dock Board, the proposed Seventh Amended Complaint attempts, for the very first time, to: (1) add specific references to Rule 9(h); (2) characterize their action as one for maritime tort damages; and (3) make a so-called Rule 9(h) election to proceed under this court's maritime jurisdiction:

I.

### JURISDICTION, VENUE AND ELECTION UNDER RULE 9(h)

1.      Jurisdiction is specifically conferred on this Court by various federal statutes including, but not limited to, the following: Diversity of Citizenship, pursuant to 28 U.S.C. § 1332; Admiralty, Maritime and Prize cases, pursuant 28 U.S.C. § 1333; and, Fed. R. Civ. P. 9(h), as an action for maritime tort damages under and according to the admiralty and general maritime law of the United States of America. In addition to Fed. R. Civ. P. 9(h), this Court has jurisdiction over this action for maritime tort damages, pursuant to the Extension of Admiralty Act, 46 U.S.C. § 30101(a)....

\* \* \*

> 3. Pursuant to Fed. R. Civ. P. 9(h), Plaintiffs elect to proceed under the maritime jurisdiction of this Court.

See, Barge Plaintiffs' Seventh Amended Consolidated Class Action Complaint for Damages at ¶¶ 1 & 3, p. 1-2 [Rec. Doc. No. 15356-3].

Applying the law set forth above, to allow these new assertions by Barge Plaintiffs, if they are ultimately found to meet the requirements for a valid Rule 9(h) election to proceed in admiralty, would adversely affect the Dock Board's summary-judgment motion by, in essence, providing Barge Plaintiffs with a judicial "Mulligan" to, belatedly and well after the fact, potentially resuscitate Lafarge's improper and invalid Rule 14(c) style third-party claims against the Dock Board. Moreover, given that Barge Plaintiffs' newly found references to Rule 9(h), their characterization of their action as being one for maritime tort damages, and their attempted Rule 9(h) election to proceed under the court's maritime jurisdiction were nowhere to be found in any of Barge Plaintiffs' earlier Complaints, and given also the fact that Barge Plaintiffs, despite having had the opportunity in six previous amendments to their Complaints to make these assertions, waited only until after the Dock Board had filed a summary-judgment motion before suddenly realizing that they wished to now attempt to make a Rule 9(h) election and proceed under this court's admiralty jurisdiction, casts considerable doubt on the true purpose underlying the proposed amendment.

In order for Barge Plaintiffs to maintain their niche in the Katrina Litigation Umbrella as a separate class action on equal footing with the Levee and MRGO potential classes, their theory of the breakaway barge being solely responsible for

causing the flooding at issue is critical to their separate existence. If Barge Plaintiffs simply adopted the various defective levee and waterway theories espoused by the Levee and MRGO Plaintiffs, it is possible that Barge Plaintiffs' action would be wholly subsumed by Levee or MRGO. By amending their Complaint in an attempt for the first time to potentially assert admiralty or maritime claims within the meaning of Rule 9(h), Barge Plaintiffs now get the best of both worlds by continuing to assert their sole cause "breakaway-barge" theory, assuring their separate status, yet still allowing themselves, in case their barge-only theory fails, to fall back on Lafarge's Levee and MRGO-style defective levee and waterway design, construction, and maintenance theories of third-party liability. Without a Rule 9(h) designation and election, Barge Plaintiffs' get only one bite at the apple, and their success or failure rides squarely upon their ability to prove their unique barge-only theory. On the other hand, with a Rule 9(h) designation and election, Barge Plaintiffs potentially get the benefit of Lafarge's third-party claims and improperly get a second bite at the apple, outside of the Levee and MRGO actions, if their "breakaway-barge" theory ultimately cannot be proven.

In light of the foregoing, these newly found Rule 9(h) and other maritime assertions by Barge Plaintiffs— to the extent that the Court interprets them to mean that Barge Plaintiffs now wish to inject into this litigation certain procedural features of the former admiralty practice, including Rule 14(c) impleader— are highly prejudicial to the Dock Board. This is because the Dock Board, relying upon the allegations contained in Barge Plaintiffs' original through sixth amended Complaints, timely filed a motion for summary judgment seeking to dismiss Lafarge's Third-Party Complaints on the basis

that Rule 14(c) impleader is not available to Lafarge because Barge Plaintiffs had failed to identify their claims as admiralty or maritime claims for purposes of Rule 9(h). Consequently, Barge Plaintiffs' proposed seventh amended Complaint, contrary to its expressed purpose to be helpful to everyone, serves only to thwart the Dock Board's effort to dismiss Lafarge's third-party claims. Given the foregoing, because the Barge Plaintiffs' proposed amendment causes undue prejudice to the Dock Board by jeopardizing the Dock Board's previously filed summary-judgment motion against Lafarge, it is respectfully requested that Barge Plaintiffs' motion for leave to amend their Complaint be denied.

### 5. The fact that substantive admiralty and maritime law might apply to Barge Plaintiffs' claims against Lafarge does not determine whether the action proceeds as an admiralty action under Rule 9(h).

One final note, Barge Plaintiffs argue in their Response to the Dock Board's summary-judgment motion, that they intended all along for this action to proceed under the court's admiralty jurisdiction because, among other things, they claim to "have consistently posited that joint and several liability will govern as per *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) and *Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993)." See, Barge Plaintiffs' Response at p. 1-2 [Rec. Doc. No. 15071]. This notion is incorrect. The mere fact that substantive admiralty and maritime law might govern Barge Plaintiffs' action against Lafarge and others has no bearing on whether Barge Plaintiffs' have elected to proceed on what used to be called the "admiralty" side of the court under Rule 9(h). For example, if Barge Plaintiffs' claims against Lafarge are ultimately found to arise under General Maritime Law, then

- 16 -

substantive federal admiralty law will govern their claims against Lafarge regardless of whether Barge Plaintiffs had originally filed suit against Lafarge in state court under the savings-to-suitors' clause, or whether Barge Plaintiffs had filed suit in federal court under admiralty jurisdiction or in federal court under diversity jurisdiction. See, Kermarec v. Compagnie General Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 408-09 (1959); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 410-11, 74 S.Ct. 202, 205-06 (1953); Branch v. Schumann, 445 F.2d 175, 177-78 (5th Cir. 1971). This does not mean, however, that Federal Rules of Civil Procedure 14(c), 38(e), and 82, and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture would apply to maritime actions brought in state court or to those maritime actions brought in federal court under the court's diversity jurisdiction under the savings-to-suitors' clause. When, as in the case at bar, multiple grounds for federal subject matter jurisdiction exist, for admiralty procedural rules to apply, Barge Plaintiffs' needed to make a Rule 9(h) election, which they clearly failed to do in their original through sixth amended Complaints. Without a Rule 9(h) election, it is simply of no moment that substantive admiralty law might govern their claims against Lafarge. For these reasons, Barge Plaintiffs' argument on this point should respectfully be rejected.

## Conclusion

In reliance upon the allegations contained in Barge Plaintiffs' original through sixth amended Complaints, the Dock Board prepared and timely filed a summary-judgment motion to dismiss Lafarge's invalid third-party claims. Barge Plaintiffs, in a clear effort to thwart the Dock Board's motion, now seek leave to change the rules of

the game after the ball has been put into play by filing a Seventh Amended Complaint long after the deadline for such amendments has passed. Because Barge Plaintiffs' motion for leave to amend causes undue prejudice to the Dock Board by jeopardizing the Dock Board's pending summary-judgment motion, it is respectfully requested that this Honorable Court deny the Barge Plaintiffs' leave to amend their Complaint.

Respectfully submitted,

DAIGLE FISSE & KESSENICH, PLC

BY: /s/ Kirk N. Aurandt
J. FREDRICK KESSENICH (7354)
JONATHAN H. SANDOZ (23928)
MICHAEL W. MCMAHON (23987)
JON A. VAN STEENIS (27122)
KIRK N. AURANDT (25336)
P. O. Box 5350
Covington, Louisiana 70434-5350
Telephone: 985/871-0800
Facsimile: 985/871-0899
Attorneys for Board of Commissioners
of the Port of New Orleans

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by the Court's ECF system, this 6th day of October 2008.

/s/ Kirk N. Aurandt
KIRK N. AURANDT