UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: KATRINA CANAL BREACHES      CIVIL ACTION
CONSOLIDATED LITIGATION

NO.: 05-4182

SECTION "K"(2)

FILED IN: 05-4181, 05-4182, 05-4191, 05-4568, 05-5237,
05-6073, 05-6314, 05-6324, 05-6327, 05-6359,
06-0020, 06-1185, 06-0225, 06-0886, 06-11208,
06-2278, 06-2287, 06-2346, 06-2545, 06-3529,
06-4065, 06-4389, 06-4634, 06-4931, 06-5032,
06-5042, 06-5159, 06-5163, 06-5367, 06-5471,
06-5771, 06-5786, 06-5937, 06-7682, 07-0206,
07-0647, 07-0993, 07-1284, 07-1286, 07-1288,
07-1289

PERTAINS TO: LEVEE

_____

**LEVEE DEFENDANTS' JOINT REPLY DESIGNATIONS
FOR JAMES A. RICHARDSON, PH.D.**

I.    October 13, 2007 Deposition

| FROM | | TO | |
|---|---|---|---|
| PAGE | LINE | PAGE | LINE |
| 64 | 25 | 65 | 4 |
| 65 | 8 | 65 | 14 |
| 65 | 19 | 66 | 3 |



| | | | |
|---|---|---|---|
| 94  | 8  | 95  | 7 |
| 95  | 19 | 96  | 25 |
| 105 | 23 | 106 | 3 |
| 106 | 15 | 106 | 16 |
| 118 | 14 | 119 | 4 |
| 125 | 23 | 126 | 7 |
| 134 | 4  | 134 | 18 |
| 135 | 1  | 136 | 10 |
| 153 | 13 | 154 | 9 |
| 156 | 22 | 157 | 5 |
| 161 | 18 | 162 | 14 |
| 162 | 20 | 162 | 24 |
| 166 | 21 | 167 | 10 |
| 170 | 13 | 170 | 24 |

## II. <u>October 18, 2007 Testimony at Daubert Hearing</u>

| FROM | | TO | |
|---|---|---|---|
| PAGE | LINE | PAGE | LINE |
| 24 | 18 | 24 | 23 |
| 25 | 21 | 26 | 6 |
| 26 | 10 | 26 | 22 |
| 27 | 8  | 28 | 19 |
| 32 | 7  | 34 | 15 |
| 34 | 22 | 34 | 24 |
| 35 | 9  | 35 | 9 |
| 35 | 16 | 36 | 3 |
| 36 | 9  | 36 | 17 |
| 36 | 19 | 36 | 24 |
| 38 | 5  | 38 | 21 |
| 39 | 10 | 40 | 2 |

| | | | |
|---|---|---|---|
| 40 | 10 | 40 | 13 |
| | | (ending with the word "Definitely") | |
| 41 | 18 | 42 | 11 |
| 44 | 19 | 45 | 21 |
| 46 | 10 | 46 | 15 |
| 46 | 21 | 47 | 14 |
| 48 | 8 | 48 | 13 |
| 51 | 17 | 51 | 19 |
| 55 | 6 | 55 | 12 |
| 55 | 24 | 56 | 13 |
| 56 | 18 | 56 | 22 |
| 70 | 3 | 70 | 8 |
| 72 | 25 | 73 | 8 |

jr1003007

1

1         UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF LOUISIANA
2

3

4    IN RE:  KATRINA CANAL         CIVIL ACTION
     BREACHES CONSOLIDATED
5    LITIGATION                    NO. 05-4182 "K" (2)

6                                  JUDGE DUVAL
     PERTAINS TO:  LEVEE
7                                  MAG. WILKINSON

8    FILED IN:

9    05-4181, 05-4182, 05-4191,
     05-4568, 05-5237, 05-6073,
10   05-6314, 05-6324, 05-6327,
     05-6359, 06-0020, 06-1885,
11   06-0225, 06-0886, 06-11208,
     06-2278, 06-2287, 06-2346,
12   06-2545, 06-3529, 06-4065,
     06-4389, 06-4634, 06-4931,
13   06-5032, 06-5042, 06-5159,
     06-5163, 06-5367, 06-5471,
14   06-5771, 06-5786, 06-5937,
     06-7682, 07-0206, 07-0647,
15   07-0993, 07-1284, 07-1286,
     07-1288, 07-1289
16

17

18
            Deposition of JAMES A. RICHARDSON,
19   Ph.D., 3165 Kleinert Avenue, Baton Rouge,
     Louisiana 70806, taken in the offices of
20   Duplass, Zwain, Bourgeois, Morton, Pfister &
     Weinstock, 3838 N. Causeway Blvd., Suite
21   2900, Metairie, Louisiana on Wednesday, the
     3rd day of October, 2007 at 9:09 a.m.
22

23

24

25

                                               2

jr1003007

64

1  of that business in that little shopping
2  area, that little retail area, and its impact
3  on Livingston Parish looking at from the
4  sales tax perspective. And, of course, you
5  have property taxes, too, but the sales tax,
6  we focused more on the sales tax.
7     Q.  Okay. Because obviously you would
8  have focused more on the visitors than the
9  sales tax?
10    A.  Exactly.
11        MR. HONEYCUTT:
12        Can I get more coffee before we
13        jump off into the next?
14        MR. ZWAIN:
15        Do you want to take five minutes?
16        MR. HONEYCUTT:
17        Yes.
18        VIDEOGRAPHER:
19        Off the record. It is 10:10.
20        (OFF THE RECORD)
21        VIDEOGRAPHER:
22        Returning to the record. It is
23        10:24.
24  EXAMINATION BY MR. HONEYCUTT:
25    Q.  All right. Dr. Richardson, I want

65

```
                                      jr1003007
 1   to look at various aspects of your report
 2   that you prepared in connection with this
 3   litigation.  What was your assignment in
 4   connection with this litigation?
 5        A.   I think it's listed under the
 6   Purpose of the report.
 7        Q.   That's on page 3?
 8        A.   That's on page 3, yes, sir, it is.
 9   I can read it to you very carefully or I can
10   tell you what it is.  It is to look at
11   certain damages alleged in the Complaint and
12   to see if they realistically can be computed
13   on a class-wide basis or perhaps much better
14   on an individual-by-individual basis.
15        Q.   Okay.
16        A.   And then to look at other reports
17   prepared by other experts, plaintiffs'
18   experts, in this case and to evaluate them.
19        Q.   Okay.  And, in fact, you did render
20   an opinion concerning that purpose, correct?
21        A.   Yes, sir, I did.
22        Q.   And what was that opinion?
23        A.   That opinion was in the end, given
24   the characteristics of New Orleans, the class
25   models in my judgment would not render a very
                                           66


 1   effective total of damages or a distribution
 2   of damages.  That individual by individual
 3   cases would be much more appropriate.
 4        Q.   In connection -- on page 3, I
```

Page 58

jr1003007

8   Q.   Okay. So you looked at damages in
9   your report, all potential damages on behalf
10  of the class members?
11  A.   Yes, sir.
12  Q.   Okay. Whereas Dr. Kilpatrick only
13  referenced the diminished real estate,
14  correct?
15  A.   Yes.
16  Q.   Now, on bullet point 5 you state as
17  a conclusion that Dr. Kilpatrick's affidavit
18  "does not distinguish between diminished
19  property values attributable to the
20  defendants' alleged conduct," et cetera.
21  Basically, your issue there is that Dr.
22  Kilpatrick on bullet point 5 doesn't
23  distinguish the causation?
24  A.   That is correct.
25  Q.   And going to bullet point 6, I'm

95

1   not going to read it, it is fairly lengthy,
2   is the basic proposition in the
3   second-to-last line, the reason that you
4   believe Dr. Kilpatrick cannot apply the mass
5   appraisals technique is because of the
6   complex chain of events that occurred, i.e.,
7   the causation?
8   A.   Tell me where you are reading from
9   exactly so I know which one you are looking
10  at.
11  Q.   I had to number mine. Bullet point

Page 84

```
                                         jr1003007
12   6.
13          MR. ZWAIN:
14             Starting with the mass appraisal.
15          THE WITNESS:
16             The mass appraisal.
17   EXAMINATION BY MR. HONEYCUTT:
18      Q.  Yes.
19      A.  No, that is not causation exactly
20   by itself.  That's one element.  The other
21   element is the issue with the mass appraisal
22   technique, the issue with AVMs is they may be
23   very, very effective, very accurate in
24   homogeneous communities.  You get to a place
25   like New Orleans where your neighborhoods are
                                              96


 1   not homogeneous, your blocks are not
 2   necessarily homogeneous, you run into big
 3   problems.  That's part one right there.
 4      Q.  Okay.
 5      A.  You aren't going to get good
 6   numbers out of that.
 7      Q.  Okay.
 8      A.  Usable numbers.
 9      Q.  Okay.  And what other reason,
10   because you list a complex chain of events?
11      A.  Well, and other areas it is a
12   complex change in terms of the actual sources
13   of flooding or if there be overtopping,
14   breaching or failure of power stations,
                       Page 85
```

```
                                    jr1003007
15   whatever.
16       Q.   Okay.  But your basic -- let me
17   just make sure I'm clear on bullet point 6.
18   The reason in bullet point 6 you believe that
19   Dr. Kilpatrick's conclusions are wrong is,
20   one, because it's not heterogenous
21   neighborhoods?
22       A.   Not homogeneous neighborhoods.
23       Q.   Not homogeneous, correct.  And
24   second is because of causation issues?
25       A.   Yes.
                                              97


 1       Q.   Okay.  On the next bullet point
 2   that begins "It is my professional judgment,"
 3   that only pertains to net damages, and that's
 4   one of the reasons or that's the reason that
 5   conclusion is rendered, because of your
 6   applying net damages and not gross damages?
 7       A.   Well, I think you have to
 8   appreciate to get to net damages you first
 9   have to get to gross damages.  I think the
10   gross damages numbers will also be very
11   speculative because of the technique that he
12   is proposing is not going to work as well in
13   this community.  You have to start with gross
14   damages.  Net damages makes it even more
15   speculative.
16       Q.   And the reason, in your opinion,
17   his technique will not work is because the
18   neighborhoods are homogeneous and because of
```
Page 86

```
                                        jr1003007
15   quantify that.
16       Q.   Okay.  And, additionally, in that
17   paragraph you state that these are also which
18   "can be transferred to other parties, such as
19   private insurance companies," correct?
20       A.   Yes.
21       Q.   Or public assistance?
22       A.   Uh-huh.
23       Q.   So -- and I understand that overall
24   in your report you don't believe that you can
25   quantify these in a mass effort, correct,
                                             106


 1   these damages?
 2       A.   Right.  I don't believe you can
 3   quantify them accurately in a mass effort.
 4       Q.   You believe they can be quantified
 5   in a mass effort --
 6       A.   Sure.
 7       Q.   -- but you just don't think with an
 8   acceptable --
 9       A.   I can do any model you want to, if
10   you get a number.  The question is is it a
11   good number, is it the right number.
12       Q.   Okay.  So you can quantify and you
13   can do a model on it, but your opinion is the
14   model would not be sufficient?
15       A.   I think a case-by-case model is a
16   much better model in this case.
17       Q.   Okay.  Now, I'm not sure if I
18   understand the very last sentence on page 6
```