# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| | * | and consolidated cases |
| PERTAINS TO: BARGE | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge*  05-5531 | * | |
| *Mumford v. Ingram*  05-5724 | * | |
| *Lagarde v. Lafarge*  06-5342 | * | JUDGE |
| *Perry v. Ingram*  06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*  06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAGISTRATE |
| | * | JOSEPH C. WILKINSON, JR. |
| | * | |

# LAFARGE NORTH AMERICA INC.'S SURREPLY MEMORANDUM IN OPPOSITION

# TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

I.  **INDIVIDUAL ISSUES PREDOMINATE**.................................................................1

    A.  Individual Causation Issues Predominate ...............................................2

    B.  Individual Damages Issues Predominate ................................................8

II.  **CLASS ACTION LITIGATION IS NOT SUPERIOR**............................................14

III.  **PLAINTIFFS HAVE NOT SATISFIED RULE 23(a)**............................................15

**CONCLUSION** ................................................................................................15

# TABLE OF AUTHORITIES

**CASES:**                                                                                                          **Page**

*Alabama v. Blue Bird Body Co.*, 576 F.2d 309 (5th Cir. 1978)....................................................9, 13

*Bach v. Trident Steamship Co.*, 920 F.2d 322,
    *vacated*, 500 U.S. 949, *reinstated*, 947 F.2d 1290 (5th Cir. 1991).......................................5

*Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003) ....................................................9

*Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001).................................................15

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316 (3d Cir. 2003) ..........................................7

*Case v. ANPAC Louisiana Ins. Co.*, 466 F. Supp. 2d 781 (E.D. La. 2006)...............................6, 8

*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)..........................................................2, 3

*Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998) .......................................................4

*Corley v. Entergy Corp.*,220 F.R.D. 478 (E.D. Tex. 2004),
    *aff'd.,* 152 Fed. Appx. 350 (5th Cir. 2005) ..........................................................................10

*Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979) .......................4, 5, 6, 13

*Exxon Co. v. SOFEC, Inc.*, 517 U.S. 830 (1996)...........................................................................4

*Fulford v. Transport Serv. Co.,* 2004 U.S. Dist. LEXIS 9955
    (E.D. La. May 27, 2004)..........................................................................................................13

*Gartin v. S&M Nutec, LLC*, 245 F.R.D. 429 (C.D. Cal. 2007)........................................................15

*Gene & Gene v. Biopay, LLC*, 541 F.3d 318, (5th Cir. 2008) ..........................................................3

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) ................................................10

*In re Graphics Processing Units Antitrust Litig.,* 2008 U.S. Dist. LEXIS 95191
    (N.D. Cal. July 18, 2008)........................................................................................................11

*In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18 (N.D. Ga. 1997) .............................12

*Inter-Cities Nav. Corp. v. United States*, 608 F.2d 1079 (5th Cir. 1979) ........................................4

*Kirkman v. N. Carolina R.R.*, 220 F.R.D. 49 (M.D.N.C. 2004) ....................................................10

*LaBauve v. Olin Corp.*, 231 F.R.D. 632 (S.D. Ala. 2005)......................................................10, 12

*Little v. Brown & Williamson Tobacco Co.*, 243 F. Supp. 2d 480 (D.S.C. 2001).........................5

*McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994).....................................................................7

*Moser v. Texas Trailer Corp.*, 623 F.2d 1006 (5th Cir. 1980)........................................................4

*Nguyen v. St. Paul Travelers Ins. Co.*, 2008 U.S. Dist. LEXIS 87706
   (E.D. La. Oct. 6, 2008)...............................................................................................................4

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.*,
   487 F.3d 261 (5th Cir. 2007) ....................................................................................................11

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.,* 100 Fed. Appx. 296
   (5th Cir. 2004)...........................................................................................................................11

*Robertson v. Monsanto Co.*, 2008 U.S. App. LEXIS 15468 (5th Cir. July 18, 2008).....................2

*Robinson v. Texas Auto Dealers Ass'n*, 387 F.3d 416 (5th Cir. 2004) .......................................3, 8

*Rosen v. Ciba-Geigy Corp.*, 892 F. Supp. 208 (N.D. Ill. 1995)....................................................5

*Saden v. Kirby*, 660 So. 2d 423 (La. 1995)..................................................................................6

*St. Paul Fire & Marine Ins. Co. v. Nolen Group, Inc.*,
   2007 U.S. Dist. LEXIS 64603 (E.D. Pa. Aug. 31, 2007)..........................................................6

*Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006) ....................................2

*Turner v. Murphy Oil*, 234 F.R.D. 597 (E.D. La. 2006)................................................................4

*Unger v. Amedisys, Inc.*, 401 F.3d 316 (5th Cir. 2005) ...............................................................11

*United States v. Imperial Irrigation Dist.*, 799 F. Supp. 1052 (S.D. Ca. 1992) ............................6

*United States v. Reliable Transfer Co.*, 421 U.S. 397 (1975)........................................................7

*Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191 (5th Cir. 2007)....................................6

*Warwick Apartments Baton Rouge v. Louisiana*, 633 So. 2d 895 (La. Ct. App. 1994).................6

*Welch v. Atlas Roofing Corp.*, 2007 WL 3245444 (E.D. La. Nov. 2, 2007) .................................8

*Westchester Fire Ins. Co. v. Haspel-Kansas Inv. P'ship*, 342 F.3d 416
   (5th Cir. 2003)...........................................................................................................................4

*Wm. G. Roe & Co. v. Armour & Co.*, 414 F.2d 862 (5th Cir. 1969) ................................................6

**RULES AND REGULATIONS:**

Fed. R. Civ. P. 23(a) ...........................................................................................................15

Fed. R. Civ. P. 23(b)(3)...............................................................................................2, 9, 15

**OTHER AUTHORITIES:**

Restatement (Second) of Torts § 433A.................................................................................. 5-6

W. Prosser, *The Law of Torts*, (5th ed. 1984) ..............................................................................6

Plaintiffs' reply brief confirms they want the Court to address the most complex and catastrophic natural disaster in United States history as if it were a simple barge accident.

- Plaintiffs wrongly argue that the many types of property damage suffered by class members are irrelevant because plaintiffs' pleadings only pertain to "flood damage."  To the contrary, individualized analysis of the cause and extent of property damage is required.

- Plaintiffs wrongly argue that the various sources of flooding affecting the class area in different ways at different locations are irrelevant because LNA supposedly is liable for **all** of the flooding, from whatever source, if plaintiffs show the barge contributed a single drop of water. To the contrary, LNA is absolved from liability for levels of flooding it did not cause, and any liability for any flood damage must be allocated, as shown by the very sources plaintiffs cite.

- Plaintiffs wrongly argue that pervasive individualized damages issues can be ignored as not "significant," or wished away because their expert plans to figure out later how to address them.  To the contrary, plaintiffs' dismissive approach cannot mask the cold, hard fact that a class proceeding in this case will inevitably degenerate into hundreds or thousands of mini-trials.

- Plaintiffs wrongly argue that there is "no rational relationship" between this case and the competing claims of the putative MRGO class seeking the same damages for the same class from different defendants based on a theory that the barge did not cause any flooding.  To the contrary, the competing and overlapping claims of the MRGO plaintiffs pose intractable manageability problems in a class action setting.

For these and many other reasons, plaintiffs' class certification motion should be denied.

## I.  INDIVIDUAL ISSUES PREDOMINATE

Plaintiffs' reply brief pretends that class certification in mass tort cases is somehow "usual" or routine.  Reply Br. 23-25.  To the contrary, the Fifth Circuit has held that mass tort

and mass accident cases are **not** amenable to certification absent "exceptional features" that "warrant departing from the general rule" against certifying such cases. *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 604 (5th Cir. 2006). This "general rule" exists because individualized issues of causation and damages cause such cases to degenerate in practice into a series of separate trials, destroying predominance under Rule 23(b)(3). *Id.*; see also, *e.g.*, *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.19 (5th Cir. 1996).[1]

In this case, as we showed in our opposition brief (at 21-54), multiple individualized issues surrounding both causation and damages overwhelm any common issues that may be said to exist. Individual causation issues encompass both (a) whether damage was caused by flooding or something else; and (b) for damage caused by flooding, whether and to what extent it was caused by multiple levee breaches including two separate breaches along the IHNC. Individualized damages issues are present with respect to every one of the sixteen separate categories of harm alleged in plaintiffs' complaint and affirmed in their interrogatory responses, only three of which are included in plaintiffs' proposed "mass valuation" analysis.[2]

**A. Individual Causation Issues Predominate**

It is undisputed in this case that class members sustained property damage from multiple causes during and after Hurricane Katrina, including hurricane force winds, heavy rains, downed trees, vandalism, fires, flooding from multiple breaches, and so on. Plaintiffs argue, however,

---

[1] Plaintiffs' reply brief, though fifteen pages over the Court's limit, never addresses or distinguishes the many cases cited by LNA in support of this proposition (LNA Br. 17-18, 21-22, 46-54). Though plaintiffs now cite *Robertson v. Monsanto Co.*, 2008 U.S. App. LEXIS 15468 (5th Cir. July 18, 2008), that case supports LNA, not plaintiffs. There, the court held that individual causation and damages issues predominated based on the need for plaintiffs to show that defendants' conduct caused their "specific injuries." *Id.* at *20. Contrary to plaintiffs' assertion (Reply Br. 24), the court did not suggest that bifurcation is a "usual" way to submerge predominating individual causation and damages issues (which *Castano* expressly forbids, 84 F.3d at 745-46 n.21). Instead, the court was merely noting that the grant of summary judgment in that case had removed any potential predominating common liability issues.

[2] Plaintiffs say that "liability" issues are all common here (Reply Br. 27-29), but do not address or distinguish LNA's cases showing the extent of its duty is not common to all class members (LNA Br. 21 n.49). In any case, as just noted, individual causation and damages issues generally outweigh common liability issues in mass tort cases.

that the multiple forms of property damage are irrelevant because plaintiffs are the "masters of their complaint" which is "limited to damages resulting from the flooding."  Reply Br. 5-6.  This argument fails because the Fifth Circuit has held that "going beyond the pleadings is necessary," and that the court "must conduct an intense factual investigation" to ensure that the class does not "degenerat[e] into a series of individual trials." *Castano*, 84 F.3d at 744; see *Robinson v. Texas Auto Dealers Ass'n*, 387 F.3d 416, 420-21 (5th Cir. 2004).  Regardless of plaintiffs' pleading, LNA is entitled to defend by showing that the damage sustained by any given property was ***not*** the result of flooding, but rather one or more of the many other simultaneous damage-causing events associated with Hurricane Katrina, or even pre-existing damage.[3]

Ascertaining what caused plaintiffs' damages requires individualized consideration to determine whether such damages were caused by defendants' conduct, and if so what portion is allocable to each defendant.  The record is replete with examples of individualized damages that were ***not*** caused by the levee breaches or the barge, such as rainwater intrusion into buildings, vandalism losses occurring after plaintiffs returned to the area, and severe pre-existing termite damage. See LNA Br. 23-24 & nn. 53, 55, 58.  Though plaintiffs say they will attempt to isolate "damage to property values caused solely by flooding" based on supposed "common effects" such as "corrosion of electrical wiring" and "damage to drywall or plaster" (Reply Br. 6-7), they are not prepared to explain how their proposed model would do this (see below at 10-12), and LNA's expert structural engineer – the only expert to have actually inspected damage to buildings in the class area – observed no class-wide patterns in this supposedly "common" physical damage (LNA Br. 23, 29), while plaintiffs' expert disclaimed any expertise regarding

---

[3] See *Gene & Gene v. Biopay, LLC*, 541 F.3d 318, 327 (5th Cir. 2008) ("irrelevant" whether predominating individualized issues arise in the context of plaintiffs' claims or defendants' affirmative defenses, as long as they affect "how the proposed class-action trial will be conducted on the merits").

physical property damage.[4]  In any case, LNA has a due process right to contest whether its conduct caused "each individual's actual damages," including whether it caused any physical damage and/or property value loss as supposedly measured by plaintiffs' proof-by-proxy.[5]  Any adjudication of the cause of property damage sustained in Hurricane Katrina will necessarily involve individualized assessments, as courts have repeatedly held.  LNA Br. 18 & n.44.[6]

Plaintiffs' reply brief hinges on the erroneous premise that LNA can be held liable for the entire flood if it contributed "any degree of flooding," no matter how small (Reply Br. 11, 31). In fact, the law of causation does not recognize de minimis contributions to the harm.  As the Court stated in *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979), the case on which plaintiffs chiefly rely:  "In many cases, of course, the shipowner whose act or omission contributed only a very small percentage of the total negligence will avoid liability on the ground of lack of causation."  443 U.S. at 265 n.15.[7]  Thus, a de minimis contribution to the injuries sustained by a particular plaintiff will not give rise to a finding of ***any*** liability on the part of

---

[4] Plaintiffs' expert said he was "not opining with respect to physical damage" and is not qualified to do so.  LNA Ex. 24, Kilpatrick Dep. 142:9-13 ("I'm not a physical scientist.").

[5] *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 314-15 (5th Cir. 1998); see also *Nguyen v. St. Paul Travelers Ins. Co.*, 2008 U.S. Dist. LEXIS 87706 at *28 (E.D. La. Oct. 6, 2008) (denying class certification, despite plaintiffs' planned class-wide proof, because plaintiffs "fail to point out any law that would permit the Court to then foreclose the defendant from showing in an individual case" that the defendant had not caused the claimed damage).

[6] Though plaintiffs again rely on *Turner v. Murphy Oil*, 234 F.R.D. 597 (E.D. La. 2006) (Reply Br. 7-8), the court there held that "the remaining issues of whether there is crude oil on a plaintiff's property, and how much oil, do not require … extensive individualized proof."  234 F.R.D. at 607.  In this case, by contrast, ascertaining the cause and extent of property damage or even water damage requires significant individualized proof on a property-by-property basis.

[7] See also *Exxon Co. v. SOFEC, Inc.*, 517 U.S. 830, 842 (1996) ("A party whose fault did not proximately cause the injury is not liable at all." ); *Moser v. Texas Trailer Corp.*, 623 F.2d 1006, 1013 (5th Cir. 1980) ("A defendant's actions must be the cause in fact of a plaintiff's injuries in order for the plaintiff to be able to recover."); *Westchester Fire Ins. Co. v. Haspel-Kansas Inv. P'ship*, 342 F.3d 416, 421 (5th Cir. 2003) (defendant's negligence must be "necessary antecedent" to plaintiff's harm); *Inter-Cities Nav. Corp. v. United States*, 608 F.2d 1079, 1081 (5th Cir. 1979) ("[F]ault which produces liability must be a contributory and proximate cause of the collision, and not merely fault in the abstract.").

LNA, much less liability for the entirety of that plaintiff's damages.[8]  Consequently, causation is an individual issue in determining whether there is any liability at all.  The question whether the barge is more than a de minimis cause of a given plaintiff's harm (if it was any cause at all), based on the particular damages suffered by that plaintiff and the barge's role (if any) in causing them, must be assessed based on the facts as to that individual plaintiff.

Plaintiffs' reply brief also wrongly asserts that LNA can be held liable for flood damage it did not cause.  The joint and several liability principles relied on by plaintiffs are "inapplicable where the injury is divisible and the causation of each part can be separately assigned to each tortfeasor."  *Edmonds*, 443 U.S. at 260-61 n.8.  Plaintiffs argue, however, that "damages caused by flooding are 'indivisible' injuries for purposes of joint and several liability," and thus "multiple levee breaches" cannot be "parsed out into multiple distinct flooding events."  Reply Br. 10.  However, plaintiffs' own sources conclusively prove that flood damages are divisible and causation can be separately assigned.  In particular, while plaintiffs rely on comments to Restatement of Torts 2d  § 433A (at 10 n.6), they omit the relevant portions, which provide:

> Comment d: "There are other kinds of harm, which while not so clearly marked out as severable into distinct parts, are still capable of division upon a reasonable and rational basis, and of fair apportionment among the causes responsible.  … Such apportionment is commonly made in cases of private nuisance where … ***flooding*** … has interfered with the plaintiff's use or enjoyment of his land."
>
> Comment e: "The same kind of apportionment may be made where a part of the harm can fairly be assigned to an innocent cause, as where the defendant's dam or embankment combines with an unprecedented and unforeseeable rainfall to ***flood*** the plaintiff's land, and it is clear that a part of the harm caused would clearly

---

[8] See, *e.g., Bach v. Trident Steamship Co.*, 920 F.2d 322, 327 (5th Cir. 1991) (granting summary judgment to defendant where its negligence contributed no more than fifteen percent to plaintiff's injury); *Rosen v. Ciba-Geigy Corp.*, 892 F. Supp. 208, 210-11 (N.D. Ill. 1995) (declining to hold defendant liable where there was only a 5% chance that defendant's product contributed to plaintiff's injury because the effect of defendant's product was "insignificant" which "prevent[ed] it from being a substantial factor"); *Little v. Brown & Williamson Tobacco Co.*, 243 F. Supp. 2d 480, 499-500 (D.S.C. 2001) (finding 1% contribution to injury to be *de minimis* and granting summary judgment to defendant).  By contrast, none of the cases cited by plaintiffs (at 9-10 & n.5) actually found liability as to a defendant that was "only 1% at fault," and each of those cases relied on *Edmonds*, which noted that defendants will usually be absolved when their contribution is "very small."

have resulted from the innocent conduct of the defendant himself, and the extent of the harm has been aggravated by his tortious conduct."[9]

In *Saden v. Kirby*, 660 So.2d 423 (La. 1995), for instance, the court held that when a natural flood event combines with a defendant's negligence, "the defendant may be held liable for any damages that would not have occurred but for its own conduct or omission," and found the defendant liable only for "two and one half inches of additional flooding and a prolonged period of flooding," not the entire flood event. *Id. at 428-30.*[10] Thus, flooding is a divisible harm.[11] The multiple sources of flooding that affected the class area must be considered, raising individual issues as to causation. See *Case v. ANPAC Louisiana Ins. Co.*, 466 F. Supp. 2d 781, 794 (E.D. La. 2006) (multiple breaches involved "separate and distinct factual inquiries").

Moreover, even if flooding damages were "inseparable" (which they are not), damages would still need to be allocated based on "degree of fault" among any entities found to have caused a given plaintiff's damages, contrary to plaintiffs' "joint and several" argument. Reply Br. 8-10, 30-31. Though plaintiffs cite and quote *Edmonds* repeatedly, they omit the one relevant passage on this point: that under maritime law, "***damages are … allocated accordingly***" between joint tortfeasors whose conduct has combined to produce an injury, regardless of joint and several liability. 443 U.S. at 270-71 n.30 (emphasis added). As we

---

[9] Restatement of Torts (Second) § 433A, Comments a, d, e and Illustrations 4, 6 (emphasis added) (copy attached). Illustrations 4 and 6 provide examples of apportionment of damages in a flood, where the court can ascertain different causes of the flood and apportion liability in accordance with their contribution to causation.

[10] See also, *e.g.*, *Wm. G. Roe & Co. v. Armour & Co.*, 414 F.2d 862, 870 (5th Cir. 1969) ("Separate causes concurring during the same time period to produce injuries subject to rational division, such as the stream pollution cases, do not give rise to joint and several liability."); *United States v. Imperial Irrigation Dist.*, 799 F.Supp. 1052, 1069-70 (S.D. Cal. 1992) (apportioning damages based on flood levels as to each defendant); *Warwick Apartments Baton Rouge v. Louisiana*, 633 So.2d 895, 899 (La. Ct. App. 1994) (allocating based on increased flooding frequency and severity); see also W. Prosser, *The Law of Torts* at 349 (5th ed. 1984) (referring to flood damage and stating "the defendant is liable only for such portion of the total damage as may properly be attributed to the defendant's negligence").

[11] In the two cases cited by plaintiffs on this point, there was only one source of floodwater (*St. Paul Fire & Marine Ins. Co. v. Nolen Group, Inc.*, 2007 U.S. Dist. LEXIS 64603 (E.D. Pa. Aug. 31, 2007)), or the existence of multiple sources of flooding was irrelevant because the only issue was whether the damages were from flooding or not (*Vanderbrook v. Unitrin Preferred Ins. Co.*, 495 F.3d 191, 223 (5th Cir. 2007) (insurance issues)).

showed in our opposition brief (LNA Br. 22 n.51), the relative contributions of *all* causes of

plaintiffs' injuries, including those of defendants and third-party defendants and entities that

plaintiffs chose not to sue, must be assessed and determined under maritime law as well as

Louisiana law.[12]  Indeed, this Court has recognized that "[i]f Lafarge is found partially negligent,

it will be held liable *only for its proportional damage*."  Doc. 16574 at 18 (emphasis added).

Thus, allocation of plaintiffs' claimed damages is clearly required, regardless of whether joint

and several liability applies.  LNA's liability in this case must be adjudicated and allocated based

on the degree (if any) to which LNA's conduct caused the specific damages claimed by each

individual plaintiff and class member, and that liability and allocation (if any) will vary

depending on the circumstances of those individuals.  See LNA Br. 22-27.

Finally, plaintiffs are wrong to argue that this case does not multiple floodwall and levee

breaches impacting the class area in different ways at different locations.  Reply Br. 11-14, 25-

26.  Although plaintiffs assert that the MRGO breaches are irrelevant, their expert admitted that

the MRGO breaches added four feet of water to the class area, and flooded portions of the class

area first.  See LNA Br. 25 & n.62.  These MRGO waters had a differential impact on homes

within the class area, based on differing housing elevations and locations, raising individual

causation issues.  See LNA Br. 27.[13]  Moreover, the two IHNC breaches were clearly separate

events, notwithstanding plaintiffs' "theory" that the barge caused both of them (Reply Br. 14, 25,

---

[12] *E.g.*, *United States v. Reliable Transfer Co.*, 421 U.S. 397, 409 (1975) (requiring allocation under maritime law); *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 204 (1994) (requiring allocation to settling parties); *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 325 (3d Cir. 2003) (requiring allocation to parties that plaintiff chose not to sue).

[13] Because plaintiffs propose simply to ignore the impact of the MRGO breaches, they have no answer to the fact that assessing the breaches' impact requires individualized consideration.  Moreover, plaintiffs' theory that the IHNC breaches caused the "initial flooding" throughout the class area is far from established.  Not only do their expert's conclusions regarding the timing of the breaches depart from the independent studies such as IPET, ILIT, and Team Louisiana (see LNA Br. 27-28 n.69), but his conclusion that the south breach occurred at 5:30 am (Reply Br. 12) contrasts with plaintiffs' engineering expert's conclusion that the barge did not arrive at the south breach location until 7:00 a.m. at the earliest.  LNA Ex. 8, Marino Dep. at 134:13 to 136:9, 189:17-20.

31-32).[14]  In particular, the two breaches occurred at different times and due to different causal

mechanisms.[15]  Plaintiffs' proof as to each breach involves different alleged witnesses.[16]  A

finding that the barge was somehow involved at one breach does not imply that it was involved

at the other.  Because the breaches had differing effects at different locations within the class

area, causation of flooding damage is an individualized issue.  Thus, "the causes for each of the

failures involve separate and distinct factual inquiries, and the causation of individual damages

presents unique questions of fact for each claimant." *Case*, 466 F. Supp. 2d at 794.[17]

### B.  Individual Damages Issues Predominate

As we showed in our opposition brief, plaintiffs seek sixteen separate categories of

damages, only a few of which are included in their "mass appraisal" model, and all of which

require individualized assessment.  LNA Br. 28-46.  Plaintiffs' reply brief fails to establish that

*any* category of damages can be calculated on a class-wide basis.

To begin, there are several categories of "non-valuation" damages that plaintiffs' model

does not address.  See LNA Br. 29-33 (addressing physical damage, demolition and salvage, loss

of use, business interruption and other non-valuation damages, loss of income, and

inconvenience/loss of lifestyle).  Although plaintiffs now attempt to obfuscate their model by

claiming that some of these categories of damages are "incorporated" within it (Reply Br. 35),

---

[14] As noted above (at 3), class certification must be based on an "intense factual examination" rather than pleadings or theories.  *Robinson*, 387 F.2d at 420.

[15] The IPET, ILIT, and Team Louisiana studies all analyzed the north and south breaches separately and concluded separate causal mechanisms were involved, none of which involved the barge.  See LNA Br. 3 & n.8.  Plaintiffs' expert, Mr. Marino, likewise analyzed separate causal mechanisms involved in the two breaches, assigning the barge's presence to "exceptional wave action" at the north breach and wind at the south breach.  LNA Br. 25 & n.64.

[16] For instance, at the north breach, plaintiffs' proof is based on a single purported witness who testified he had "fuzzy" long-distance vision, was not wearing his glasses, and "couldn't tell what it was" that he was looking at. LNA Br. 3-4 & n.11.

[17] See also, *e.g, Welch v. Atlas Roofing Corp.*, 2007 WL 3245444, at *6 (E.D. La. Nov. 2, 2007) ("Should the court determine that not all Atlas shingles … contained a redhibitory defect, the Court would be forced to make individualized determinations as to Atlas's liability to each class member.").

these damages do not fit within a model intended to appraise property values "immediately prior to" and "immediately after" the event, as plaintiffs' expert testified.  LNA Ex. 21, Kilpatrick Dep. 74:10-21.[18]  Rather, many of these categories of damages, such as demolition and salvage expenses and the like, were not incurred until long after the event, and thus would not be incorporated in the model as plaintiffs have framed it.  Moreover, and in any event, individual proof is necessary to establish these elements of damages; for instance, demolition and salvage expenses must be individually established by identifying the amounts spent to repair or salvage the property, and confirming they were incurred to remedy damage caused by the defendants. See LNA Br. 30.  "Incorporating" such expenses into a model is a fiction -- once these costs have been established through individual proof, there is nothing more for the model to do.

In any event, the Fifth Circuit and other courts have held that the need for individualized proof to establish a plaintiff's claim to damages undermines predominance under Rule 23(b)(3). In *Alabama v. Blue Bird Body Co.,* 573 F.2d 309 (5th Cir. 1978), the Fifth Circuit said that "consideration should be given to whether the addition or subtraction of any of the plaintiffs to or from the class will have a substantial effect on the substance or quantity of evidence offered." *Id. at* 322.  Thus, if the adjudication requires "lengthy individualized examinations" of the facts underlying class members' damages, as opposed to minimal individual data from which damages can be "easily calculated," class certification is inappropriate.  *Id.* at 328 & n. 35.[19]  Here, establishing the class members' claimed property damages would require an intensive inquiry into individual facts regarding each class member's property, including its construction, pre-

---

[18] See Pl. Opening Br. 36 (mass appraisal model is designed to compare "the value of the property after the breach and flood event" with "the property value immediately prior to the flooding event" to determine the "loss in value"); Reply Br. 32 (mass appraisal will "assess the value of such damaged property").

[19] See also *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 307-08 (5th Cir. 2003) (rejecting certification, despite proffer of common formula, because "individual issues of fact [are] plainly necessary for any just estimate of the antitrust damages suffered by the class members").

storm condition, location, and so on, in addition to individualized post-storm repair costs and other damages incurred by class members. See LNA Br. 29-31.[20]  In these circumstances, courts have held that the need for significant individualized proof of damage to property undermines predominance even where a "formula" might incorporate such proof in some way.[21]

Plaintiffs' reply brief also totally fails to overcome the fundamental defect that "diminution of value" as measured by their model – *i.e.*, comparing pre- and post-storm property values – does ***not*** constitute a measure of damages attributable to defendants' alleged negligence. See LNA Br. 34-35.  As LNA's expert explained, and plaintiffs fail to rebut, numerous variables affected pre-storm versus post-storm property values, many of which are not barge-related or even flood-related.  LNA Br. 35; LNA Ex. 12, Ragas Report at 19-24 ¶¶ 69-79.  Plaintiffs concede that developing a method for separating out "barge" from "non-barge" factors affecting property value is "well beyond the scope of what we've done."  Reply Br. 30 n.25 (quoting Kilpatrick Dep.).  Indeed, when asked whether he had "any opinion on how you would go about allocating damage caused by the barge," plaintiffs' expert said he did not have any such opinion, and added that he had not even figured out whether that is "within the scope of my expertise to investigate."  LNA Ex. 21, Kilpatrick Dep. 144:23 to 145:7.  Thus, three full years into this

---

[20] Because individualized property factors are relevant and important to the damages suffered, plaintiffs are wrong to suggest that their proof of damages involves nothing more than the "existence of property alleged to have been damaged" (Reply Br. 32).  Also, the cases cited by plaintiffs (at 32 n.26) do not advance their cause.  In *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003), for instance, the court upheld certification of certain claims only because the damages calculations were not complex and would not involve individual inquiry.  *Id.* at 429.

[21] See, *e.g.*, *Corley v. Entergy Corp.*, 220 F.R.D. 478, 486-87 & n.10 (E.D. Tex. 2004) (rejecting certification for damage to land because, even if a per-foot formula could potentially be applied, such damages "cannot be calculated without examining the individual circumstances underlying land ownership" including "the specific characteristics of [the] land and the extent of the Defendants' trespass"), *aff'd mem.*, 152 Fed. Appx. 350 (5th Cir. 2005); *LaBauve v. Olin Corp.*, 231 F.R.D. 632, 672-73 (S.D. Ala. 2005) (common issues regarding defendants' conduct did not predominate because extensive individualized proof must be introduced to establish the claim including  "[w]hether a plaintiff's property is contaminated, the source(s) of such contamination, the cause and timing of harm, and the resulting damage (measured in diminution of property value)"); *Kirkman v. N. Carolina R.R.*, 220 F.R.D. 49, 54 (M.D.N.C. 2004) (rejecting certification because "the issue of damages would likely require a lengthy inquiry" due to the "variety of potentially impacted commercial, rural, and urban property" involved).

litigation, plaintiffs' expert has not developed a method to measure diminution in property value caused by the barge, and does not even know whether he is qualified to do so.[22]

Plaintiffs wrongly suggest, however, that they have satisfied their burden, despite their expert's inability to say how the model can actually be used to measure damages as opposed to mere changes in property value, as long as it is not "impossible" for their expert to figure this out at some future time.  Reply Br. 26, 36.  Such a position runs afoul of the Fifth Circuit's warning that "[a]t the certification stage reliance on unverifiable evidence is hardly better than relying on bare allegations."  *Unger v. Amedisys., Inc.*, 401 F.3d 316, 324 (5th Cir. 2005).  In *Oscar Private Equity Investments v. Allegiance Telecom., Inc.*, 487 F.3d 261 (5th Cir. May 16, 2007), the court denied class certification because plaintiff's expert failed to separate out other potential damage-causing factors, finding that "[plaintiffs'] evidence is little more than well-informed speculation" and that "plaintiffs must do better."  *Id.* at 271.[23]  Here, Dr. Ragas has shown that there are "numerous separate positive and negative externalities and not a single, uniform common externality," confounding any attempt to determine whether defendants' conduct "has caused an impact that is statistically measurable."[24]  By contrast, plaintiffs' expert has supplied nothing to

---

[22] Meanwhile, this same expert has rendered an opinion in another case attributing the **same** diminution in property values to the conduct of the MRGO defendants.   Doc. 8286-12 at 5-6 ¶ 9 (Kilpatrick report in MRGO litigation).

[23] See also, *e.g.*, *Piggley-Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 100 Fed. Appx. 296, *299-300, 2004 U.S. App. LEXIS 11160 **9-10 (5th Cir. June 7, 2004) (affirming denial of class certification where expert "did not offer a formula based on regression analysis, but merely opined that one could be found" and presented "only a preliminary overview of how damages might be calculated");  *In re Graphics Processing Units Antitrust Litig.*, 2008 U.S. Dist. LEXIS 95191 (N.D. Cal. July 18, 2008) (denying class certification because "[a]fter eight months of discovery, plaintiffs should have the data to formulate their regression analyses with more precision. … In short, plaintiffs should be able to provide more than promises at this late stage of the litigation").

[24] LNA Br. 35 (quoting LNA Ex. 12, Ragas Report at 12 ¶ 54).  Plaintiffs wrongly suggest that Dr. Ragas believes the many difficulties faced by the model can be overcome because he said that doing so may not be "impossible."  Reply Br. 26.  In fact, Dr. Ragas testified that what plaintiffs propose here is unprecedented in the literature, and he has never seen a model that could "begin to measure" what their expert proposes.  See Pl. Ex. 36, Ragas Dep. 28:14 to 30:11.  Similarly, plaintiffs mischaracterize Dr. Ragas as having "admit[ted]" that these problems can be cured by using sub-models (Reply Br. 35), whereas Dr. Ragas made no such admission.  Pl. Ex. 36, Ragas Dep. 69:16 to 70:22 ("I don't know whether that will solve the problems.").

show how the model can break out barge-caused damages from any pre- or post-storm property values, let alone that it can do so efficiently and as a valid measure of damages.  In *LaBauve v. Olin Corp.*, 231 F.R.D. 632 (S.D. Ala. 2005), the court refused to rely on "rosy, conclusory prognostications of a 'common, formulaic methodology'" by a similar "mass valuation" expert because the expert failed to show, among other things, that the model could "distinguish between diminution in property values … resulting from [defendant] and diminution in property value resulting from … other sources."  *Id.* at 676-78; see LNA Br. 38-39.[25]

For similar reasons, plaintiffs' approach to business loss and personal property damage cannot supply a basis for class certification.  As to business losses, plaintiffs' expert has done nothing more than propose three "approaches," without ever showing how they might be applied in some common way to the many and varied businesses in the class area, or how they might separate loss in value caused by the barge from the many non-barge factors affecting businesses.  LNA Br. 39-40.[26]  Plaintiffs also have no answer to the individualized problem of mitigation, which is necessary to any adjudication of economic harm to businesses and their owners.  LNA Br. 40-41.  Individual proof is also needed to establish personal property claims, involving not only individual proof of what "each class member actually lost," as plaintiffs admit  (Reply Br. 32), but also individual evidence regarding the pre-storm condition of the property, what caused

---

[25] The district court case relied upon by plaintiffs, *In re Polypropylene Carpet Antitrust Litig.*, 996 F. Supp. 18, 27 (N.D. Ga. 1997), did not involve mass valuation of real property and in any event does not support their argument. There, the antitrust plaintiffs' expert had actually identified the key variables to be included in the analysis and how they would establish antitrust damages, instead of merely deferring the entire issue until some future time as plaintiff's expert did in *LaBauve* and in this case.  996 F. Supp. at 27-28.  Also, the court there criticized defendant's failure to "proffer evidence to support their claims that Dr. Asher's regression analysis is doomed to fail," *id.* at 27, in contrast to what the defendants did in *LaBauve*  and what LNA has done here by introducing the analysis of Dr. Ragas regarding the non-flood and non-barge factors involved in property value analysis, and the difficulties of validly separating them, which plaintiffs have not rebutted.  Plaintiffs' attempted misuse of *In re Polypropylene* is inconsistent with the more recent cases cited above at note 23, which require "more than promises."

[26] Indeed, plaintiffs admit (Reply Br. 16 n.10) that large businesses must be "evaluated separately," creating the sort of individualized inquiry that undermines class certification.

it to be damaged, and the degree of damage sustained.  LNA Br. 43.  Also, any such damages

must be reduced by the percentage attributable to the plaintiff's own negligence.  *Edmonds*, 443

U.S. at 258.  Though plaintiffs attempt to argue that this is a "common" issue (Reply Br. 38), it

self-evidently requires individualized consideration, turning as it does on the individual class

member's reasons for failing to protect his or her property or person before the storm arrived.

Finally, plaintiffs are wrong to downplay the significance of individual damages issues

such as physical and emotional injuries.  For instance, though they repeat their assertion that

physical and emotional injury claims are limited to people who "failed to evacuate" (Reply Br.

36), plaintiffs have no answer to their own discovery responses and testimony showing that each

of the representatives is pursuing damages for emotional distress, even though they all evacuated

before the storm (LNA Br. 44-45).[27]  Likewise, plaintiffs' attempt to limit physical injury claims

to non-evacuees flies in the face of the physical injury claims actually asserted by evacuees

based on injuries sustained upon returning after the storm, for which plaintiffs again have no

answer.  LNA Br. 45-46 (discussing claim of class member Jeannie Armstrong).  Finally, there is

no apparent logic to plaintiffs' argument that "loss of income" damages are "limited" to people

who "worked at a business located in the class area" (Reply Br. 37), as residents who lived in the

class area and were displaced from their homes (and thus their jobs) might also assert such

claims.  In any event, even by plaintiffs' reckoning, class certification would require this Court to

adjudicate hundreds or even thousands of individual claims for emotional distress, physical

injury, wrongful death, and loss of income, resulting in a "multitude of mini-trials."  *Blue Bird*,

573 F.2d at 327; see also *Fulford v. Transport Serv. Co.,* 2004 U.S. Dist. LEXIS 9955 (E.D. La.

May 27, 2004) (300 individual cases unmanageable as class action).

---

[27] The same is true for the many individualized claims for "inconvenience" and "loss of lifestyle" damages claimed by the class representatives (who all evacuated) and by all class members.  See LNA Br. 32-33.

## II.  CLASS ACTION LITIGATION IS NOT SUPERIOR

Plaintiffs' reply brief summarily argues in favor of superiority (at 39-40), but never comes to grips with the intractable manageability and other problems that would arise if this case were certified as a class action.  For instance, whereas the Barge Plaintiffs assert that the competing MRGO/Levee litigation has "no rational relationship" to class certification issues presented here (Reply Br. 39), these same plaintiffs have previously argued that the MRGO class action "creates tension between competing evidence and theories of flood causation, as well as placing the several groups and their attorneys in a competitive and adverse position as to one another," and "puts the Barge plaintiffs at grave risk, given the MRGO attorneys' conflict of interest in proving the opposing version of the flooding."  Doc. 804 in No. 05-4419, at 3, 4.[28] Indeed, this Court has properly consolidated the Barge and MRGO tracks in recognition of the overlapping issues presented.  Doc. 12935.  Any attempt to try conflicting theories of liability on behalf of the same class members, represented by separate and antagonistic groups of lawyers and representatives, is doomed to failure; indeed, the complexities of providing adequate notice ensure that such litigation could not even get off the ground.  See LNA Br. 58-59.

There is also no merit to plaintiffs' argument that the Court would necessarily have to adjudicate "tens of thousands of trials" if the Court declines to certify a class.  Reply Br. 39. Only a handful of Barge cases have been filed thus far, and there is no reason to believe that thousands of additional cases would be brought if the pending individual claims were met with initial failure.  See LNA Br. 49-50.[29]  Conversely, class certification is sure to "bring in

---

[28] The MRGO Plaintiffs' experts have concluded, consistent with the results of all of the independent public studies, that the barge did not cause any levee or floodwall breaches.  See, e.g., Doc. 13845 Ex. 7 (excerpts from Robert Bea declaration concluding barge did not cause breaches).

[29] Also, plaintiffs admit that trial of their claims will be to the Court, not a jury.  Reply Br. 40.  There is no reason to credit plaintiffs' assertion that the Court, as trier of fact, will engage in a mind-numbing "waist [sic] of judicial resources" (Reply Br. 40) if it conducts individual trials.

thousands of possible claimants whose presence will in actuality require a multitude of mini-trials (a procedure which will be tremendously time consuming and costly)," and thus "the justification for class certification is absent." *Blue Bird*, 573 F.2d at 327-28.

### III.  PLAINTIFFS HAVE NOT SATISFIED RULE 23(a).

Because plaintiffs cannot satisfy Rule 23(b)(3), the Court need not linger on the Rule 23(a) preconditions for class certification.  Nevertheless, plaintiffs' reply brief shows they are unable to satisfy certain of those preconditions.  For instance, contrary to plaintiffs' arguments (Reply Br. 15-17), because the representative plaintiffs have no physical injury claims, they are not typical of class members who do.[30]  Moreover, regarding adequacy of representation, plaintiffs cannot plausibly contend that the existence of conflicts between Barge Plaintiffs and the MRGO Plaintiffs is "nonsensical" (Reply Br. 17-19), given their own warnings to this Court about "competing evidence and theories of flood causation" and "grave risk" to plaintiffs arising from the "advers[ity]" and "conflict of interest" between the Barge Plaintiffs and MRGO Plaintiffs.  Doc. 804 in No. 05-4419 at 3,4.  Finally, plaintiffs have failed to demonstrate a "sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting the litigation,'" a duty that plaintiffs mischaracterize as applying only in "securities litigation" (Reply Br. 19-21), but which in fact reflects the "generic standard" in all class action cases. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 482-83 (5th Cir. 2001); see LNA Br. 15-16.

### CONCLUSION

Plaintiffs' motion for class certification should be denied.

---

[30] LNA Br. 12-13; see also, *e.g., Gartin v. S&M Nutec, LLC*, 245 F.R.D. 429, 434-35 (C.D. Cal. 2007) (lack of physical harm distinguished class members from representatives on typicality grounds).

Respectfully submitted,

Robert B. Fisher, Jr., T.A. (#5587)
Derek A. Walker (#13175)
**CHAFFE MCCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone:  (504) 585-7000
Facsimile:  (504) 585-7075
Fisher@chaffe.com
Walker@chaffe.com

/s/ John D. Aldock
John D. Aldock
Richard M. Wyner
Mark S. Raffman
**GOODWIN PROCTER LLP**
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4240

Daniel A. Webb (#13294)
**SUTTERFIELD & WEBB, LLC**
Poydras Center
650 Poydras Street, Suite 2715
New Orleans, LA 70130
Telephone:  (504) 598-2715

*Attorneys for Lafarge North America Inc.*

December 9, 2008

**<u>Certificate of Service</u>**

I hereby certify that I have on this 9th day of December, 2008 served a copy of the foregoing pleading on counsel for all parties to this proceeding, by electronic filing notification.

/s/ John D. Aldock