1 January 1992
New Orleans District

# DATA FOR TESTIFYING OFFICERS ON FY 1993 CIVIL WORKS BUDGET
## MISSISSIPPI RIVER-GULF OUTLET, LOUISIANA

| Item | Page |
|---|---|
| AUTHORIZATION | |
| Authorizing Documents | 1 |
| Monetary Authorization | 2 |
| NEED FOR THE PROJECT | 2 |
| PLAN OF IMPROVEMENT | 3 |
| Main Channel | 3 |
| Protective Jetties and Dikes | 3 |
| Ship Lock & Connecting Channels | 3 |
| CHANGE IN SCOPE | 3 |
| MAJOR CHANGES IN DESIGN | 3 |
| BENEFIT-COST RATIO | 4 |
| Period of Economic Analysis | 4 |
| Derivation of B/C Ratio | 4 |
| PHYSICAL DATA | 4 |
| Land Requirements | 4 |
| Recreation Facilities | 4 |
| Disposal Areas | 4 |
| Fish and Wildlife | 4 |

| Item | Page |
|---|---|
| Relocation Standards | 4 |
| Operator's Quarter | 4 |
| JUSTIFICATION | 4-5 |
| Commerce | 6 |
| Power | 7 |
| LOCAL COOPERATION | 7 |
| Requirements | 7 |
| Req. of PL 91-611 & 91-646 | 8 |
| Current Status of Assurance | 8 |
| Action Taken by Local Interest to Compliance | 8 |
| Status of Clearances | 8 |
| Repayment Contracts | 8 |
| Other Difficulties | 8 |
| SUPPORT AND OPPOSITION | 8 |
| Senators & Representatives | 9 |
| Support/Opp-Local Interests | 9 |
| Attitude of Affected Property Owners | 9 |
| Adverse Effects | 9 |

MISSISSIPPI RIVER-GULF OUTLET

REFERENCE ER 11-2-240 WHICH STATES THAT BUDGETARY INFORMATION IS NOT TO BE RELEASED OUTSIDE THE DEPARTMENT OF THE ARMY

MISSISSIPPI RIVER-GULF OUTLET, LA

1 January 1992
New Orleans District

**AUTHORIZATION:**
Authorizations Documents.

## DATA FOR TESTIFYING OFFICERS ON FY 1993 CIVIL WORKS BUDGET
## MISSISSIPPI RIVER-GULF OUTLET, LOUISIANA

| Authorizations | | Estimated Cost and Year of Price Level |
|---|---|---|
| PL 455, 84th Congress, 2d Session, approved 29 March 1956. | Project authorization provides for the construction of a seaway canal 36 feet deep and 500 feet wide extending 70 miles as a land and water cut from a point south of the Intracoastal Waterway at Michoud south-easterly to Chandeleur Island, thence gradually increasing to a width of 600 feet and a depth of 38 feet in the Gulf of Mexico, with protective jetties at the entrance, a permanent retention dike through Chandeleur Sound and a wing dike along Breton Island as required. A turning basin is to be constructed at the landward end of the seaway canal, 36 feet deep, 1000 feet wide and 2000 feet long with a connecting channel 36 feet deep and 500 feet wide extending westerly along the Gulf Intracoastal Waterway from the turning basin to the Industrial Canal. Construction of a suitable highway bridge with approaches is authorized to carry Louisiana State Highway No. 47 over the channel. A cost estimate of $88,000,000 was included in the authorizing act for construction of the above feature. | $ 88,000,000 (1955) |
| | The project authorization also provides for a replacement of the existing lock or an additional lock with suitable connections when economically justified by obsolescence of the existing Industrial Canal lock or by increased traffic. Type, dimensions and cost estimates for the new features listed in the 1956 Act are to be approved by the Chief of Engineers. | |
| PL 587, 94th Congress, 2d Session, approved 22 October 1976. | Section 186, Water Resources Development Act of 1976, amends PL 455 making the construction of bridge relocations a Federal responsibility (not to exceed a cost of $71,500,000) when required by the construction of the Mississippi River-Gulf Outlet channel. | $ 55,670,000 (1976) |

---

[1] This project is a modification of the Mississippi River, Baton Rouge to the Gulf of Mexico project.

MISSISSIPPI RIVER-GULF OUTLET

AIN-167-000000338

1 January 1992
New Orleans District

MISSISSIPPI RIVER-GULF OUTLET, LA

AUTHORIZATION:
Authorizations Documents.

PL 99-622, 99th Congress,
2d Session, approved
17 November 1986

The Water Resources Development Act of 1986, modifies the project changing the cost sharing for the new shiplock feature. The cost of the lock shall be allocated between general cargo navigation and inland navigation. The shallow draft cost will be funded 50% from Inland Waterway Trust Fund and 50% from the general fund of the U.S. Treasury. The deep draft costs will be cost shared 75% (Fed.)-25% (non-Fed.) up to 45 feet deep and 50-50% for depths over 45 feet. The Act also provides that the lock and connecting channels shall be in the area of the existing lock or at the Violet site. Maximum effort to assure the full participation of minority groups living in the area in the construction is also included in the Act.

Estimated Cost and
Year of Price Level

$714,300,000 (1985).

Monetary Authorization: Full monetary authorization was provided in the River and Harbor Act of 1956 and the Water Resources Development Act of 1976 (PL 94-587).

NEED FOR THE PROJECT: The project is located in southeast Louisiana in Orleans, St. Bernard and Plaquemines Parishes, and is needed to provide waterfrontage for expansion of the port facilities in New Orleans and to provide a safer and shorter outlet to the Gulf of Mexico which will result in savings for ship operators in sailing time, ship turnaround time, reduction in navigation hazards and relief from congestion. Also, a second entrance into the port of New Orleans is necessary in the event of emergency, war, or blockage of the Mississippi River.

The existing channel (Mississippi River through Southwest Pass) is a meandering channel with shifting sand bars at its mouth. The Mississippi River route to New Orleans is approximately 40 miles longer than through the new channel. Shipping using existing docks along the Mississippi River is subject to larger fluctuations in river stage which increases cargo handling costs and makes navigation hazardous at high river stages.

The existing IHNC lock, completed in 1923, is dimensionally inadequate, not only in terms of the larger oceangoing vessels now being placed in service, but also in terms of common tow modules now using local waterways. It is also operating at near maximum capacity, and is in such a condition that it can only provide safe and dependable service, without major repair and reconditioning, for only a few more years.

Traffic through the existing lock is increasing, and waiting times for lockage of several hours are now the rule. As traffic on the waterways served by the lock continues to grow, waiting time will increase in exponential fashion to the point that further growth will be halted.

The major repair and reconditioning required to extend the life of the existing lock beyond 10 years can only be accomplished by taking the lock out of service for a protected period. The present volume of traffic through the lock renders the economic consequences of extended interruption unacceptable, which rules out the application of effective measures to extend the life of the lock.

Considerable quantities of war materials, including fuel for southern air bases are transported by barge through the existing facility. Operational failure of the existing lock would hamper our defense effort.

The fact that the existing lock is operating at near capacity and is dimensionally inadequate, plays a large role in local and national economy and defense posture and has a remaining lifespan on the order of the time required to design and construct a new lock, justifies the need for a new lock at an early date.

2

MISSISSIPPI RIVER-GULF OUTLET, LA

MISSISSIPPI RIVER-GULF OUTLET, LA

1 January 1992
New Orleans District

PLAN OF IMPROVEMENT: The general plan of improvement consists of the construction of the following items:

a. Main Channel: The project provides a tidewater ship channel, 36 feet deep and 500 feet wide from New Orleans to the Gulf of Mexico, a distance of 76 miles; and 9-mile entrance channel with the bottom gradually widening from 500 feet at Chandeleur Island to 600 feet in a 2.5 mile transition zone, thence continuing at 600 feet to the minus 38-foot contour in the Gulf. The project also provides a turning basin at the upper end of the channel.

b. Protective Jetties and Dikes: The project provides for permanent retention dikes in Breton Sound, to Mi 14.8 on the south side of the channel and to Mi 20.2 on the north side of the channel. In addition, extension of the northside dike to Mi 0 has been deferred until its need to reduce maintenance dredging has been determined. (See Additional Information, WDTO-7.)

c. Ship Lock and Connecting Channels: A ship lock and connecting channels and levees to be located adjacent to and on the east side of the existing IHNC Lock in Orleans Parish with dimensions 1,200 feet long, 110 feet wide, and a sill elevation of -40 feet NGVD. This plan may change pending the outcome of the ongoing evaluation studies.

CHANGE IN SCOPE:

| Year | Change in Scope Since Authorization | Estimated Cost |
|---|---|---|
| 1967 | The project was modified under the discretionary authority of the Chief of Engineers to include as a mitigating measure, the costs of protecting a portion of the foreshore lying between the Lake Pontchartrain and Vicinity Hurricane Protection project levees and the Mississippi River-Gulf Outlet. Construction of the Mississippi River-Gulf Outlet project exposed levees and their foreshore along both banks of the navigation canal in the City of New Orleans to damages from waves generated by sea-going vessels utilizing the waterway. The navigation project should have included adequate protection for these levees and their foreshore. The new levees in the Lake Pontchartrain project located adjacent to the Mississippi River-Gulf Outlet ship channel will also require protection. The cost of this work has been deleted from the Lake Pontchartrain project and added to the Mississippi River-Gulf Outlet project. (There are about 5 miles of levees along the north bank and 18 miles along the south bank of the Gulf Outlet navigation project which require protection.) | $5,337,000 (1967) |

The chairman of the House and Senate Committees on Appropriations were informed by the Chief of Engineers of the modification to include, as a mitigation measure, the wavewash protection for levees and foreshore and that the lock is being included in the project.

The above change in scope was first reflected in the project cost estimate presented to Congress in connection with the appropriation request for FY 1969.

MAJOR CHANGES IN DESIGN: The location of the turning basin was changed at the request of local interests, to the intersection of the outlet with the Inner Harbor Navigation Canal. The bridge across the waterway at Louisiana Highway No. 47 (Paris Road) was changed, at the request of local and shipping interests, from a vertical lift-type bridge to a fixed high-level-type bridge. The 1976 study recommended the lock to be located at Violet, LA and revised the lock size from 110 feet by 1200 feet long with a sill elevation of -40 feet NGVD to 150 feet wide by 1200 feet long with a sill elevation of -50 feet NGVD. The new lock size was interrelated on both the tidewater and river sides of the lock. The larger lock size was adopted on the belief that sufficient terminal facilities will remain, and/or sufficient growth of terminal development will take place on the river in future years to require the movement of significant numbers of large vessels through the lock. In 1977 when President Carter requested a review of all water resource projects, OCE requested that an incremental lock size study be made in spite of past planning studies. These studies were performed in conjunction with the draft evaluation report completed in April 1982. The tentatively selected plan, recommended in that report, was a lock located adjacent to, and east of, the existing IHNC Lock with a lock size of 40 feet deep by 1,200 feet wide by 110 feet long. Present studies may change the site and/or the size of the lock.

3

AIN-167-000000340

1 January 1992
New Orleans District

MISSISSIPPI RIVER-GULF OUTLET, LA

MAJOR CHANGES IN DESIGN: (Cont'd)

The Bayou LaLoutre Reservation was deleted from the project on 11 August 1980. This facility was to be used jointly by the Corps of Engineers and the U.S. Coast Guard as a field office. It was deleted because the U.S. Coast Guard decided they no longer required the use of this facility. It was not cost efficient for Corps use only.

BENEFIT-COST RATIO:

a. Period of Economic Analysis: The economic life of the project is 50 years based on the projected life of its structural and operating components and its capability of continuing adequate service for the future demands of waterborne commerce.

b. Derivation of Benefit-Cost Ratio: Based on the project functioning independently, benefits are credited to economies affected by savings in movement of ships and shallow draft vessels handling miscellaneous cargo and to reduction in hazards to navigation, savings in wharfage charges and enhancement of waterfront property.

PHYSICAL DATA:

a. Land Requirements: Scope, Status and Schedule of Acquisition: All easements, rights-of-way and disposal areas necessary for construction and maintenance of the project are furnished by local interests.

b. Recreation Facilities: None.

c. Disposal Areas: Disposal areas are individually owned and no land primarily used for disposal areas will be acquired in fee. Local interests have provided the United States with easements over such areas with the exception of areas required for the lock and connecting channels and levees.

d. Fish and Wildlife: Comment and recommendations for the preservation of the fish and wildlife have been resolved with the US Fish and Wildlife Service and the Louisiana Wildlife and Fisheries Commission during planning and construction of the project.

e. Relocation Standards: The bridge across the waterway of Louisiana Highway No 47 (Paris Road) was constructed to conform to the standards of the American Association of State Highway Officials.

f. Operator's Quarters: The needs of the Corps of Engineers for the Bayou LaLoutre Reservation have been reevaluated and it was determined that the facility is no longer required and it was eliminated from the project.

JUSTIFICATION:

a. Commerce:

(1) Water Dimensions: The project "Mississippi River-Gulf Outlet" is a manmade outlet from the main stem of the Mississippi River at New Orleans; therefore, tonnages and commerce on the Mississippi River between New Orleans and the Mouths of the Passes were used to justify this navigation project. Seagoing ships began to use the partially completed outlet between the Inner Harbor Navigation Canal and Paris Road in July 1960. An interim channel (36 feet by 250 feet and 38 feet by 300 feet) between Paris Road and the Gulf of Mexico was opened to shipping on 25 July 1963. Full project dimensions were made available in July 1965, except for a narrow restriction at Paris Road, which was removed in January 1968. Tonnages and commerce on the Mississippi River and the outlet are shown below.

4

MISSISSIPPI RIVER-GULF OUTLET, LA

AIN-167-000000341

MISSISSIPPI RIVER-GULF OUTLET, LA

1 January 1992
New Orleans District

JUSTIFICATION: (Cont'd)

a. Commerce: (Cont'd)

(2) Annual Tonnages and Ton-Miles.

| Year | Mississippi River[1] Tons | Ton-Miles | Gulf Outlet[2] Tons | Ton-Miles | INHC Lock[3] Tons | Lockages |
|---|---|---|---|---|---|---|
| 1957 | 73,692,181 | 5,275,400,155 | | | | |
| 1976 | 232,614,050 | 20,219,837,037 | | | | |
| 1980 | 292,334,680 | 28,030,499,775 | 6,970,648 | 350,341,435 | 28,150,926 | 16,146 |
| 1981 | 300,957,797 | 28,567,924,592 | 5,541,464 | 380,507,798 | 22,338,410 | 14,189 |
| 1982 | 260,319,463 | 24,464,182,319 | 5,794,760 | 378,267,636 | 21,743,392 | 14,866 |
| 1983 | 236,099,317 | 21,757,807,877 | 5,571,840 | 344,213,917 | 18,220,606 | 12,720 |
| 1984 | 233,735,984 | 20,439,082,370 | 5,434,613 | 333,037,736 | 17,996,967 | 15,696 |
| 1985 | 223,879,690 | 19,452,608,535 | 8,034,531 | 495,896,949 | 22,658,113 | 13,209 |
| 1986 | 234,372,044 | 20,193,082,452 | 6,916,446 | 443,959,674 | 23,292,070 | 13,524 |
| 1987 | 255,972,635 | 19,546,632,927 | 8,144,555 | 468,638,788 | 26,068,044 | 13,346 |
| 1988 | 266,707,139 | 23,004,612,076 | 7,702,801 | 442,911,057 | 25,800,540 | 13,717 |
| 1989 | 281,225,303 | 25,040,008,322 | 7,686,695 | 454,218,767 | 26,414,153 | 13,520 |
| 1990 [5] | --- | --- | 7,289,210 | 443,663,643 | 26,531,435 | 13,454 |
| | | | | | 23,530,285 | 12,017 |

Basis for Project Justification  3,250,000

(3) Existing and Anticipated Commerce. The volume of deep sea commerce at the Port of New Orleans has increased beyond the physical capacity of the port. Recent increases are due mainly to movements for general cargo. Even though the Board of Commissioners of the Port of New Orleans has expended large sums on providing and improving the port facilities, congestion at the terminal facilities has become a dominant factor in limiting the growth of commerce at New Orleans. In 1948, a very comprehensive study was made of the commerce, existing and prospective, of the Port of New Orleans. At that time it was estimated, conditioned on the provision of adequate port facilities, that the commerce in general cargo alone would reach an annual total of 7,500,000 tons. The capacity of existing general cargo terminals under conditions of most efficient and economical operation would handle 4,250,000 tons per year. Thus, it was estimated that 3,250,000 tons of general cargo will move thru the new terminals to be provided in the proposed tidewater harbor. To accommodate this traffic, the Board of Commissioners of the Port of New Orleans planned an expenditure of $136,900,000 comprised of the following items:

---

[1] Total tonnage Mississippi River, New Orleans to Mouth of Passes, Oceangoing and Internal. This tabulation is for Mile 106 to the Gulf which is the standard New Orleans reach of the Mississippi River used in the Waterborne Commerce Statistics.

[2] Mississippi River-Gulf Outlet, LA, Oceangoing and Internal.

[3] Total Traffic.

[4] Project authorized 29 March 1956.

[5] Last year available.

5

MISSISSIPPI RIVER-GULF OUTLET, LA

MISSISSIPPI RIVER-GULF OUTLET, LA

1 January 1992
New Orleans District

JUSTIFICATION: (Cont'd)

a. Commerce: (Cont'd)

| Item of Work | |
|---|---:|
| Public Bulk Terminal Development | $ 32,700 |
| Public Bulk Terminal Expansion | 18,200 |
| New Lock - Local Agency Costs | 65,700 |
| Mississippi River-Gulf Outlet Area Development | 20,300 |
| Total | $136,900 |

| Commodity | MISSISSIPPI RIVER TONS[1] | | GULF OUTLET TONS[2] | |
|---|---:|---:|---:|---:|
| | 1976 | 1989[3] | 1976 | 1989[3] |
| Grain | 7,223,588 | 26,601,807 | 89,433 | 25,489 |
| Coal | 7,808,629 | 27,933,375 | 1,373,964 | 0 |
| Crude Petroleum | 19,279,316 | 12,909,272 | 0 | 0 |
| Petroleum Products | 10,389,615 | 11,074,004 | 93,801 | 121,117 |
| Sulphur | 3,618,158 | 2,566,099 | 0 | 0 |
| Primary Metal Products | 5,261,298 | 2,841,470 | 120,082 | 654,721 |
| Industrial Chemicals | 1,371,786 | 1,037,061 | 420,622 | 217,708 |
| Agricultural Chemicals | 851,659 | 1,099,360 | 612,848 | 459,237 |
| Miscellaneous Metallic Ores and concentrates | 127,458 | 630,693 | 438,548 | 355,287 |
| Miscellaneous Nonmetallic Minerals and Cement Products | 181,538 | 1,359,429 | 702,017 | 505,687 |
| Wood and Paper Products | 1,054,604 | 1,100,758 | 720 | 0 |
| Food and kindred Products | 24,963,264 | 1,886,575 | 111,735 | 3,128 |
| Miscellaneous Cargo | 6,632,274 | 1,436,259 | 9,369 | 691,137 |
| Subtotal | 88,763,187 | 92,476,162 | 3,973,139 | 3,033,511 |
| Through Traffic | 143,850,863 | 188,744,141 | 2,998,509 | 4,706,082 |
| Total | 232,614,050 | 281,220,303 | 6,971,648 | 7,289,210 |

b. Power.  Not applicable

---

[1] Total tonnage Mississippi River, New Orleans to Mouth of Passes, Oceangoing and Internal. This tabulation is for Mile 106 to the Gulf which the standard New Orleans reach of the Mississippi River used in the Waterborne Commerce Statistics.

[2] Mississippi River-Gulf Outlet, LA, Oceangoing and Internal.

[3] Last Year available.

6

MISSISSIPPI RIVER-GULF OUTLET, LA

AIN-167-000000343

MISSISSIPPI RIVER-GULF OUTLET, LA

1 January 1992
New Orleans District

## LOCAL COOPERATION:

a. Requirements:

1. Traditional: That, prior to initiation of construction, local interests assure the Secretary of the Army that they will:

(a) Furnish free of cost to the United States all lands, easements, rights-of-way, and spoil disposal areas for the initial construction and when and as required for subsequent maintenance; (and as modified by PL 84-455 to include rights-of-way and spoil disposal areas for the initial construction of the lock and suitable connections, and when and as required for subsequent maintenance);

(b) Accept ownership of the highway bridge and approaches (Paris Road) upon completion of construction, together with maintenance, operation, and future replacement or alteration as may be required;

(c) Provide and maintain any other bridges required over the waterway and accomplish all necessary utility and other highway relocations and alterations and the maintenance thereof;

(d) Construct, maintain, and operate terminal facilities commensurate with requirements of the expanded port; and,

(e) Hold and save the United States free from all claims for damages due to construction, maintenance, and operation of the project.

Local interests are also required to comply with the provisions of the Uniform Relocations Assistance and Real Property Acquisition Policies Act of 1970 (PL 91-646), in acquiring real property.

Section 186 of the Water Resources Development Act of 1976 (PL 94-587), 2d Session approved 22 October 1976, amended the act authorizing construction of the Mississippi River-Gulf Outlet, by relieving local interests of the responsibility of bridge relocations and placing this responsibility with the Federal Government up to the amount of $71,500,000.

(f) Requirements of PL 91-611 and PL 91-646:

(1) PL 91-611 - Not applicable.  Construction started prior to 1 January 1972.

(2) PL 91-646 - A Constitutional Amendment was provided by the Louisiana Legislature on 1 February 1972, allowing local agencies to comply. The estimated cost to local interests is $55,000.

2. Cost Sharing: This project will be cost shared in accordance with the provisions of the Water Resources Development Act of 1986 (PL 99-662). See YDTO - 2 for details. However, an apportionment of cost between general cargo navigation and inland navigation is being deferred pending resolution of the lock location and determination by the Assistant Secretary of the Army, Civil Works, of use patterns in accordance with PL 99-662.

7

MISSISSIPPI RIVER-GULF OUTLET, LA

MISSISSIPPI RIVER-GULF OUTLET, LA

1 January 1992
New Orleans District

LOCAL COOPERATION: (Cont'd)

b. Current Status of Assurances:

1. Traditional: Assurances of local cooperation were executed by the Board of Commissioners, Port of New Orleans, on 4 April 1957, and accepted by the United States on 29 August 1957, for all features of the project including the lock and suitable connections. The Board of Commissioners was requested to furnish a supplemental assurance covering the provisions of PL 91-646 on 4 January 1973. These supplemental assurances were executed by the assuring agency on 3 March 1975, and accepted on behalf of the United States on 21 April 1975. Supplemental assurances to reflect the changes made necessary by the enactment of the Water Resources Development Act of 1976, were requested on 11 September 1978. By letter of 18 September 1978, local interests stated that they could not respond to our requests due to plans for the lock at the Inner Harbor Navigation Canal site being in a very preliminary stage. A meeting was held in November 1983, with the Board of Commissioners to inform them of the selected plan and its costs, including their share based on traditional cost sharing. By letter of 17 February 1984, the Board stated that they could not support the plan at that time because of the uncertainty of cost sharing and the financial situation of the State of Louisiana. However, by letter dated 11 February 1985, the Governor of Louisiana provided the necessary assurances to proceed.

2. Cost Sharing included in the Water Resources Development Act of 1986: Since details have not been finalized for this project, no coordination has been initiated with local interests concerning the Assurances.

c. Action Being Taken by Local Interests Toward Compliance: Rights-of-entry for channels and disposal areas have been furnished for the entire project except for the lock and connecting channels. The Board of Commissioners of the Port of New Orleans has expended approximately $10,000,000 as of 31 December 1973 for lands, damages and relocations. The Port Commission has spent an additional $220,268,000 in modernizing the public terminal facilities of the port since 1944. In addition to the above cost, $131,000,000 has or will be expended to provide for partial or expanded flood protection, improvement of navigable waterways and construction of terminal facilities in the project area.

d. Status of Clearances for Relocations or Other Negotiations Affecting Construction: All relocations except those required for the lock and connecting channel and levees have been accomplished.

e. Repayment Contracts: None.

f. Other Current and Anticipated Difficulties and Proposed Remedial Action: None.

SUPPORT AND OPPOSITION:

a. Interested Senators and Representatives and Nature and Extent of Support or Opposition:

Louisiana

Senator John B. Breaux - not known
Senator J. Bennett Johnston - not known

Representative Robert L. Livingston, Jr. (1st District) - not known
Representative William Jefferson (2nd District) - not known
Representative Billy Tauzin (3rd District) - not known

Former Senator Russell B. Long and Senator J. Bennett Johnston have appeared in behalf of the project at various times, in public meetings held by the Corps of Engineers when studying the project prior to reporting to Congress, and in public meetings held by the Committees and Subcommittees of the House and Senate on Appropriation Committees.

8

MISSISSIPPI RIVER-GULF OUTLET, LA

MISSISSIPPI RIVER-GULF OUTLET, LA

1 January 1992
New Orleans District

SUPPORT AND OPPOSITION: (Cont'd)

b. Support or Opposition by Local Interests: Deep and shallow draft industry representatives, labor, the State of Louisiana, the City of New Orleans, the Board of Commissioners of the Port of New Orleans, and various trade and maritime associations made statements in behalf of the project at the public meetings held on 29 November 1972, 9 December 1972, and 29 March 1977. Opposition has been voiced by the State Representative and Police Jury of St. Bernard Parish to the location of the new ship lock project anywhere within the parish. By resolution dated 28 April 1987, the St. Bernard Parish Planning Commission has recently expressed their opposition to the new ship lock being located in St. Bernard Parish. At a meeting held on 30 August 1988 state elected officials representing the Lower Ninth Ward expressed opposition to a lock at the IHNC site.

c. Attitude of Affected Property Owners: Opposition from affected land owners has been expressed to the Inner Harbor Navigation Canal site for the lock and any site proposed in St. Bernard Parish.

d. Adverse Effects: Adverse impacts of the ship lock include relocations of residences and businesses, a temporary increase in turbidity during construction, adverse impacts to historic structures and noise during construction.

9

MISSISSIPPI RIVER-GULF OUTLET, LA

MR-GO BUDG SUBM DISTR LIST - 31 Dec 91

| | | |
|---|---|---|
| 1 | CELMN-BC | GRIFFIN D. |
| 1 | CELMN-BC | GUNN A. |
| 1 | CELMN-BC | HARDY R. |
| 1 | CELMN-BC | O'HANLON K. |
| 1 | CELMN-BC | PITTMAN R. |
| 1 | CELMN-BC | FILE |
| 1 | CELMN-CD-CP | VISO S. |
| 1 | CELMN-CD-CQ-S | ANDERSON R. |
| 1 | CELMN-DC-B | VOLLENWEIDER |
| 1 | CELMN-DD-P | WAGAHOFF C. |
| 1 | CELMN-DE | DIFFLEY M. |
| 1 | CELMN-ED | TICKNER W. |
| 1 | CELMN-ED-D | MARSALONE D. |
| 1 | CELMN-ED-DL | DANFLOUS L. |
| 1 | CELMN-ED-E | FAIRLESS R. |
| 1 | CELMN-ED-S | SHELTON C. |
| 1 | CELMN-ED-SP | BARTON E. |
| 1 | CELMN-ED-SR | GAGLIANO |
| 1 | CELMN-LC | DICHARRY J. |
| 1 | CELMN-LC | LUCURE M. |
| 1 | CELMN-LC | NAOMI A. |
| 2 | CELMN-LC | USNER E. |
| 1 | CELMN-OD | SCHORR H. |
| 1 | CELMN-PA | ADDISON J. |
| 1 | CELMN-PD | CAVITT W. |
| 1 | CELMN-PD | SCHROEDER R. |
| 1 | CELMN-PD-E | BALDINI T. |
| 1 | CELMN-PD-F | KLIEBERT R. |
| 1 | CELMN-PD-A | BUISSON R. |
| 1 | CELMN-PD-FC | DYKES J. |
| 1 | CELMN-PD-FG | WAGUESPACK L. |
| 1 | CELMN-PD-RE | HAWES S. |
| 1 | CELMN-RE | BROWN T. J. |
| 1 | CELMN-RE-AP | REED |

PLEASE CALL PAM JOHNSON, PMO, EXT 2846, FOR CHANGES TO DISTR LIST

AIN-167-000000347

AIN-167-000000348