1955 WL 72515 (U.S.) Page 1

For Opinion See 76 S.Ct. 122

U.S., 2006.

Supreme Court of the United States.
INDIAN TOWING COMPANY, INC., et al., Petitioners,
v.
THE UNITED STATES.
No. 8.
October Term, 1955.
September 26, 1955.

On Writ of Certiorari to the United States Court of Appeals for the Fifth Circuit

Supplemental Brief for the United Stated on Reargument

Simon E. Sobeloff,
Solicitor General,
Warren E. Burger,
Assistant Attorney General,
Paul A. Sweeney,
Lester S. Jayson,
Attorneys, Department of Justice,
Washington 25, D.C.

*I INDEX

CITATIONS

Cases:

*Barnes v. District of Columbia,* 91 U. S. 540 ... 18

*Bevilacqua v. United States,* 122 F. Supp. 493 ... 13, 14

*Clark v. United States,* 218 F. 2d 446 ... 7

*Costley v. United States,* 181 F. 2d 723 ... 14

*Dalehite v. United States,* 346 U. S. 15 ... 2, 4, 5, 6, 12, 16, 19, 20

*Feres v. United States,* 340 U. S. 135 ... 2, 4, 6, 19, 20

*Geertson v. United States,* 223 F. 2d 68 ... 20

*Ger. Alliance Ins. Co. v. Home Water Co.,* 226 U. S. 220 ... 6

*Goodwill Industries of El Paso v. United States,* 218 F. 2d 270 ... 20

*Martin v. Bd. of Fire Com'rs for the City of New Orleans,* 132 La. 187, 61 So. 197 ... 18

*National Mfg. Co. v. United States,* 210 F. 2d 263, certiorari denied, 347 U. S. 967 ... 7

*Panella v. United States,* 216 F. 2d 622 ... 17, 18

*P. Dougherty Co., The v. United States,* 207 F. 2d 626, certiorari denied, 347 U. S. 912 ... 20

*Pennsylvania R. R. Co. v. United States,* 124 F. Supp. 52 ... 14, 15, 16

*Rayonier Incorporated v. United States,* C. A. 9, No. 14,329, September 1, 1955 ... 5, 19

*Texas City Disaster Litigation,* In re, 197 F. 2d 771, affirmed *sub nom. Dalehite v. United States,* 346 U. S. 15 ... 20

*Turner v. United States,* 248 U. S. 354 ... 6

*United States v. Inmon,* 205 F. 2d 681 ... 20

*United States v. Lawter,* 219 F. 2d 559 ... 17, 18, 19, 20

*United States v. Spelar,* 338 U. S. 217 ... 12

*United States v. Union Trust Company,* 221 F. 2d 62, pending on petition for certiorari, No. 296, October Term, 1955 ... 3, 13, 14, 16-17

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

**\*II** Statutes:

Act of August 7, 1789, 1 Stat. 53 ... 8, 9

Act of August 12, 1955, 69 Stat. 707 (Pub. Law 378, 84th Cong.) ... 12, 13

1 Stat. 137 ... 8, 9

1 Stat. 184 ... 9

1 Stat. 218 ... 8, 9

1 Stat. 246 ... 9

1 Stat. 251 ... 8, 9

1 Stat. 339 ... 8, 9

1 Stat. 353 ... 9

1 Stat. 368 ... 9

1 Stat. 393 ... 8, 9

1 Stat. 418 ... 9

1 Stat. 426 ... 9

1 Stat. 452 ... 9

1 Stat. 464 ... 9

1 Stat. 488 ... 8, 9

1 Stat. 540 ... 9

1 Stat. 553 ... 9

1 Stat. 607 ... 9

2 Stat. 151 ... 9

Tort Claims Act:

28 U. S. C. 1346 (b) ... 2, 3, 19

28 U. S. C. 2674 ... 2, 3, 4

28 U. S. C. 2680 (a) ... 2, 3, 14

28 U. S. C. 2680 (h) ... 7, 18

Miscellaneous:

1 *American State Papers, Commerce and Navigation* (1789-1815), p. 319 ... 10

H. Rep. 1305, 84th Cong., 1st Sess ... 12, 13

2 *Journal of the House of Representatives (3rd and 4th Congress)*, p. 414 ... 11

*Prosser on Torts* (1941), pp. 602-603 ... 15

Putnam, George R., *Lighthouses and Lightships of the United States* (1933):

pp. 1-30 ... 8

pp. 27-28 ... 10

S. Rep. 684, 84th Cong., 1st Sess ... 12

Weiss, George, *The Light House Service* (*Brookings Institute, Service Monographs of the United States Government, No. 40*) (1926), pp. 1-3 ... 8

**\*1**

Petitioners--in their main brief, their reply brief, their petition for rehearing, and in their brief on rehearing--consistently misconceive the nature of the Government's primary position in this case and thus they avoid coming to grips with the basic problem. They assume that the Government is defending the action on the theory that the claim arises out of the performance of an act of judgment or discretion and for that reason is barred by the discretionary function exception, 28 **\*2** U. S. C. 2680 (a); they argue that the failure of the light in the lighthouse did not stem from the exercise of administrative or executive judgment; consequently, they say, the claim is not within the coverage of that exception.

But it is *not* our basic contention that the claim arises out of the performance of a discretionary function *in the sense that those words mean the exercise of judgment.*[FN1] Rather, our defense is

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

based primarily on the view that the Tort Claims Act prescribes a "governmental function" exclusion from its coverage, an exception which includes the failure to maintain a lighthouse in working order (whatever the cause of that failure). In particular, our position is that the present claim fails to meet the analogous-privateliability requirement imposed by 28 U. S. C. 1346 (b) and 2674, as set forth in *Feres v. United States,* 340 U. S. 135, 141-2, and as applied in denying recovery for negligent firefighting and policing of the shipboard loading in *Dalehite v. United States,* 346 U. S. 15, 42-44.

> FN1. See, however, fn. 51 of our main brief, pp. 51-52.

Sections 1346 (b) and 2674 constitute the general grant of jurisdiction over certain claims. They permit suit against the United States on claims arising out of the negligent or wrongful acts or omissions of federal employees, but only "to the same extent as a private individual under like circumstances." Section 2680 (a) is a qualification ***3** and limitation upon that general grant of jurisdiction. It is our position, at the outset, that petitioners' claim is not even within the grant of jurisdiction set forth in Sections 1346 (b) and 2674. In that view, it becomes unnecessary to look to Section 2680 (a). But when reference is made to Section 2680 (a), we submit that its provisions also bar the claim. For in our reading of Section 2680 Congress intended the "discretionary function" exception to encompass not only claims arising from the exercise of executive judgment, but, additionally, all claims based upon uniquely governmental acts. See our main brief at pp. 26-27, and at fn. 24, pp. 23-24; see also the Government's petition for certiorari in *United States v. Union Trust Co.,* No. 296, this Term. As we there suggest, a review of the cases relating to governmental liability, municipal and state, in which liability was denied on the ground that the claim arose out of a "discretionary function" reveals that in many instances the activity causing damage to the plaintiff did not involve the exercise of judgment, but did stem from acts uniquely governmental in nature. To the extent that the "discretionary function" concept derives meaning from cases involving uniquely governmental acts, even though no judgment or discretion is present, Section 2680 (a) overlaps or coincides with Section 2674. It is only in that sense that we rely on Section 2680 (a) in the instant case.

**\*4** Our argument, briefly, is this: As this Court declared in *Feres, supra,* the Tort Claims Act itself prescribes "the test of allowable claims, which is, 'The United States shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances * * *,' with certain exceptions not material here. 28 U. S. C. § 2674. It will be seen that this is not the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence." Claims arising from acts of a "governmental nature or function" (see *Dalehite,* 346 U. S. at 28, 32, 42-44) cannot meet this test. For when such a claim is viewed in "all the circumstances," as the statute requires (*Feres, supra,* at 141, 142; *Dalehite, supra,* at 43), there can be no proper private analogy or parallel private liability. Private persons normally do not engage in such activities--like regulating commerce, or firefighting, or preserving the peace; they are under no obligation to do so and normally do not have the authority and power to undertake the activity; accordingly, they would not find themselves "under like circumstances."[FN2]

> FN2. Thus, in *Feres,* speaking of the uniquely governmental relationship between the United States and its soldiers, the Court said: "Nor is there any liability 'under like circumstances,' for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command." In *Dalehite,* 346 U. S. at 42-44, the principle was applied with reference to the Coast Guard's allegedly negligent acts in policing the ship-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

board storage of the fertilizer and in firefighting. Other cases applying the principle are noted at p. 34 of our main brief. And see the recent decision of the Ninth Circuit in *Rayonier Incorporated v. United States* (No. 14,329, Sept. 1, 1955), discussed *infra,* fn. 15, p. 19.

**\*5** When the gist of the claim is the misfunctioning or inadequate performance of the governmental activity itself, or the failure to attain the ultimate objective of that activity, no cause of action accrues. That is, when the plaintiff's complaint is that he did not receive the benefit of a public activity which is specially or uniquely governmental, and which would have been of help to him if properly carried out, there can be no recovery under the Tort Claims Act. Illustrative of such claims are those in which the plaintiff asserts his interests Were damaged by reason of negligent health inspection, or negligent weather reporting, or negligence in regulating the sale of securities, or failure to arrest a criminal--activities which are clearly governmental. These claims are distinguishable from those in which the plaintiff's complaint is not that he failed to receive the ultimate benefit of a uniquely public function without private parallel, but rather that his interests were directly damaged by improper performance of a particular activity which the government does undertake along with private individuals-- where, in other words, the negligence **\*6** occurs in the course of some intermediate step which does have a private parallel, for example, damage caused by negligence in *driving a truck* to a fire, in *erecting a tower* for weather forecasting, in *repairing the steps* of a post office building. Unquestionably, a person may obtain legal redress for negligent driving or negligent repair of a building, but the common law confers no actionable right if "he suffer loss because the carrier delayed in hauling the mail, or the policeman failed to walk his beat, or the fireman delayed in responding to an alarm, or the engine proved defective, resulting in his building being destroyed." *Ger. Alliance Ins. Co. v. Home Water Go.,* 226 U. S. 220, 231.

As noted in our main brief (pp. 54-55), the reason there is no liability is not because of the immunity of the sovereign to suit, but because of this lack of a substantive common law right to recover damages resulting from failure of a government or its officers to perform their public duties efficiently; therefore, even when a statute waives immunity, such a claim is not actionable unless the act creates a new substantive right. *Turner v. United States,* 248 U. S. 354, 358. It is settled, of course, that the Tort Claims Act does not create new substantive rights--it only permits recovery where the claim has analogy in the private law of torts. *Dalehite, supra,* 346 U. S. at 43-44; *Feres, supra,* 340 U. S. at 142. "Its effect is to waive immunity from recognized **\*7** causes of action and was not to visit the Government with novel and unprecedented liabilities." *Ibid.*

In the present case, the gist of the complaint is not that the United States created any hazard in the sea which caused the grounding of petitioners' tug; the essence of the complaint is that the grounding of the tug would have been averted if the United States had maintained a warning light marking the hazard. Failure to maintain the light affected the plaintiffs only insofar as it led to a failure to warn the ship of a navigational danger and to protect it from the shoals, The core of the claim, then, is that the Coast Guard negligently failed to accomplish its purely governmental objective of aiding mariners and of preventing a maritime accident. Such a claim is not within the coverage of the Tort Claims Act.[FN3]

> FN3. Even apart from the governmental function exclusion, a claim arising out the negligent performance of a public warning service is barred by the negligent misrepresentation exception of the Act, 28 U. S. C. 2680 (h). See *National Mfg. Co. v. United States,* 210 F. 2d 263, 275-276 (C. A. 8), certiorari denied, 347 U. S. 967, and *Clark v. United States,* 218 F. 2d 446, 452 (C. A. 9), both holding that the Act ex-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

cludes claims based upon erroneous warnings concerning the dangers of floods.

## II

We have already shown that, since the very beginning of the nation, the United States has assumed the obligation of establishing and operating ***8** the lighthouses.[FN4] Traditionally, and properly so, this has always been regarded as an exclusively governmental function. Its objective being to promote the welfare of the nation as a whole by preventing disasters at sea and, at the same time, to facilitate the nation's commerce, the activity involves a characteristically public duty, entirely unlike any borne by a private person. While a private person may have a **\*9** duty to warn others of any hazard he has himself created and which foreseeably might endanger others (as when a private individual builds a bridge over a river, or a railroad crosses a public road), there is no duty imposed at common law which requires a private person to go upon a publicly travelled route and warn others of nature's perils, no less to take measures voluntarily which he thinks might promote safety in commerce. The maintenance of general navigational aids is a uniquely public function, closely akin to other public services carried on solely by government to promote the welfare of the community as a whole. If the function fails to achieve its objective, even though through negligence, no private right of action accrues.

> FN4. See our main brief, pp. 11-16. We referred there to the ninth statute enacted by Congress, the Act of August 7, 1789, 1 Stat. 53, under which the United States became responsible for the operational expenses of all existing lighthouses and other aids to navigation. While that Act carried a proviso that the expenses would not be paid after one year unless the navigational facility were ceded to the United States, later enactments provided for their payment even though a lighthouse had not been ceded, and extended the time of the states to make the cession. *E. g.,* 1 Stat. 137 218, 251, 339, 393, 488.

The erection and maintenance of lighthouses has always been a governmental rather than a private function. The first lighthouse in America is said to be the one built by the Province of Massachusetts in 1716 at Boston Harbor. There were twelve lighthouses in existence when the present Federal Government was established. These had been built by the colonial governments during the period from 1716 to 1789, and, within a few years from the latter date, all were ceded to the Federal Government. George R. Putnam, *Lighthouses and Lightships of the United States* (1933), pp. 1-30; George Weiss, *The Light House Service* (*Brookings Institute, Service Monographs of the United States Government, No. 40*) (1926), pp. 1-3. The Coast Guard, whose files relating to this country's lighthouses reach back to 1837, advises us that they have no record of any privately operated lighthouse. In one or two instances, by special arrangement with the Coast Guard, a state has been authorized to maintain general navigational aids, as in the case of New York which maintains the aids on its canal system.

The importance of the activity as a function of the Federal Government, from its beginning, is evidenced by the fact that the first volume of the Statutes at Large is replete with enactments relating to the establishment and operation of lighthouses by the Federal Government, *e. g.,* 1 Stat. 53, 137, 184, 218, 246, 251, 339, 353, 368, 393, 418, 426, 452, 464, 488, 540, 553, 607. That Congress early recognized this to be an obligation of government, rather than of private individuals, is also reflected in an-appropriation in 1802 "for the reimbursement of the merchants of Plymouth and Duxbury, for monies expended by them in erecting a temporary light on the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Gurnet * * *." 2 Stat. 151.

More than 150 years ago, Congress was presented with a petition for private relief in a situation which is virtually identical to the one at bar. There were two small lighthouses at Newburyport ***10** Harbor built by Massachusetts in 1788 on Plum Island at the entrance to the Merrimac River, which were later turned over to the Federal Government. The range of these lights marked the channel into the river. See George R. Putnam, *Lighthouses and Lightships of the United States* (1933), pp. 27-28. A vessel was lost, assertedly because of the negligence of the lighthouse keepers, and the owners petitioned Congress for indemnity. A House Committee considered the claim and recommended rejection in a report submitted January 11, 1796 (4th Cong., 1st Sess.), which is as follows (1 *American State Papers, Commerce and Navigation* (1789-1815), p. 319):

William Smith and Joshua Carter state that they were owners of the ship Friendship, that sailed from Newburyport in August, 1794, and that the said ship, on her return to Newburyport, in September last, was lost by attempting to get into said place, in consequence of the negligence of those persons employed by Government to superintend the two lights there, in not having one of those lights (which is a moveable one) put into a position so as to correspond with the leading marks to enter into the said harbor, and which had been undermined by a storm, about fourteen days previous to the loss of the said ship: they, therefore, pray, inasmuch as their ship was lost by following false guides, through the negligence of persons employed**11** by Government, whose business, they say, it was, and who had sufficient time, to have repaired the injury, and, particularly, as those persons are not responsible for any neglect, that indemnification should be made them by the United States.

On this petition the committee would observe, that, although the tonnage money, paid by the holders of ships, for the purpose of supporting light houses, involves a duty, on the part of Government, to take, generally, such prudential measures as will embrace the object, yet it cannot be supposed that Government, while it was extending a convenience for the good of the citizens, ever contemplated it should be responsible for any losses that might accrue, in consequence of that convenience being incomplete in any instance arising from the neglect or omission of any of its agents, or from any other cause. They are, therefore, of opinion, that the prayer of the petition of William Smith and Joshua Carter cannot be granted, and that they have leave to withdraw the same.[FN5]

> FN5. The House subsequently rejected the claim. 2 *Journal of the House of Representatives* (*3rd and 4th Congress*), p. 414.

This report persuasively demonstrates the Congressional view, as far back as 1796, that in undertaking to provide aids to navigation the United States does not act as a guarantor or an insurer **\*12** of their faultless performance.[FN6] The language and the legislative history of the Tort Claims Act reflect a similar view in that Congress carefully excluded from the coverage of the Act claims based upon the performance of a governmental function. *Dalehite,* 346 U. S. at 27-28, 32, 42-44.[FN7]

> FN6. The Light List today warns mariners that unwatched lights, such as the Chandeleur Island Lighthouse, "may become irregular or extinguished." See fn. 2, at p. 5 of our main brief.
>
> FN7. In our main brief (p. 17), we noted Congress' awareness that, because of the exclusions and limited coverage of the Tort Claims Act, there would still be occasion for the private bill remedy. Cf. *United States v. Spelar,* 338 U. S. 217, 221. Thus, Public Law 378, 84th Congress, the Act of August 12, 1955, 69 Stat. 707, provides compensation for those who suffered damages by reason of the Texas City disaster (which was the subject of the *Dalehite* case). It is interesting to note that the

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

House Committee Report (H. Rept. No. 1305, 84th Cong., 1st Sess.) on the bill denies "any equitable or legal responsibility on the part of the United States" (*ibid.,* p. 3), stating that "the committee is of the considered opinion that the Federal Government was in no way negligent or otherwise responsible for the explosions" (*ibid.,* p. 7); it nevertheless recommended the measure "for compassionate reasons" (*ibid.,* p. 3) and contemplated that the awards would be "gifts in the nature of disaster relief" (*id.,* pp. 8-9). And the Senate Report (No. 684, 84th Cong., 1st Sess.), while stating that it believed the United States should be responsible because it had control of the project (*ibid.,* p. 5), states with reference to this Court's decision in *Dalehite* (emphasis supplied): "It should be emphasized however, that, in adopting House Resolution 296 [providing for an investigation of the Texas City claims against the Government], *Congress was not attempting to supersede or invalidate the controlling decision of the Supreme Court, laid down in the Dalehite case.* Congress, prior to the passage of the Tort Claims Act, repeatedly entertained claims and concerned itself with legislation which provided relief for parties in situations analogous to that submitted to the committee for investigation. In addition, since the passage of the Tort Claims Act, Congress has invariably exercised its jurisdiction to legislate when it was satisfactorily established that for compassionate reasons or in equity and in good conscience remedial legislation was necessary to fill a void created by existing law." *Ibid,* p. 8.

As enacted, the bill does not permit an award in excess of $25,000 on any claim and bars subrogated insurance company claims. The limitation and restriction were invoked, as the House Report (*supra,* at p. 9) indicates, because "the awards are intended as gratuities" ( and see *id.,* p. 3). Also in recognition of this attitude, Section 1 of Public Law 378 provides as follows:

The Congress recognizes and assumes *the compassionate responsibility* of the United States for the losses sustained by reason of the explosions and fires at Texas City, Texas, and hereby provides the procedure by which the amounts shall be determined and paid. [Emphasis supplied.]

*13 III

The cases relied on by petitioners in their main brief have already been discussed (see our main brief, pp. 35-37). We turn now to the additional authorities referred to in their subsequent briefs, *i. e.,* their reply, their petition for rehearing, and their brief on rehearing.

Petitioners (Reply, pp. 2-5) rely on the *Bevilacqua,*[FN8] the *Union Trust Company,*[FN9] and the *14 *South Amboy Explosion*[FN10] cases for two propositions: first, that the discretionary function exception, 28 U. S. C. 2680 (a), does not apply if the negligent act causing injury occurs *after* the discretionary function has been exhausted (*e. g.,* negligence during an operation following the discretionary determination to admit a nonmilitary patient into a military hospital, *Costley v. United States,* 181 F. 2d 723 (C. A. 5)); and, second, that the discretionary function exception applies only to high level policy decisions but not to discretionary acts at an operational level.

FN8. *Bevilacqua v. United States,* 122 F. Supp. 493 (W. D. Pa.).

FN9. *United States v. Union Trust Company,* 221 F. 2d 62 (C. A. D. C.), now pending before this Court on petition for certiorari, No. 296, this Term.

FN10. *Pennsylvania R. R.* Co. *v. United States,* 124 F. Supp. 52 (D. N. J.).

We do not dispute the first proposition; we seri-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

ously question the second (see the Government's petition for certiorari in *Union Trust Company,* No. 296, at pp. 30-35). But the short of the matter is that neither of these propositions is before the Court in the present case, for, as already noted (*supra,* pp. 1-3), the present case does not turn on the presence or absence of judgment or choice or discretion.

Although petitioners do not discuss these three cases from the viewpoint of the analogous-privateliability requirement or the governmental function exclusion, reference to that aspect of the cases is appropriate. *Bevilacqua,* which petitioners regard as "exactly parallel" to the case at bar (Reply, p. 2), is far from it. Liability was **\*15** imposed because of the Army's negligent failure to light up lanterns on the locks of a dam, which it built, resulting in the death of two fishermen whose boat went over the dam at night. Unlike the present case, the Government had itself created a structure which constituted a dangerous condition, a structure comparable to many erected by private persons. That case would seem to fall within the ambit of the rule of private tort liability that an individual is liable if he erects a structure or uses his property in a manner which is unreasonably dangerous to persons in the vicinity. *Prosser on Torts* (1941), pp. 602-603.

We believe that the decision of the New Jersey District Court sustaining the complaints in the South Amboy, N. J., explosion litigation (*Pennsylvania R. R. Co. v. United States, supra*)[FN11] is **\*16** totally irreconcilable with this Court's decision in *Dalehite,* 346 U. S. 15. In *Dalehite* the Court held squarely that Coast Guard "dereliction of duty in failing to police the shipboard loading" and "in failing to supervise the storage" of a commodity is not within the coverage of the Act (346 U. S. at 23-24, 42); in the *South Amboy* case, the district judge held it is (124 F. Supp. at 65). It is difficult to conceive of a function so typically governmental and so lacking in private counterpart as the enforcement of law. In view of the dispositive holding in *Dalehite,* the district court's contradictory ruling in *South Amboy* does not have great weight.

> FN11. The explosion at South Amboy occurred in 1950 while lighters were being loaded with explosives which had been manufactured and transported by private firms pursuant to a private contract of sale with a foreign country. The United States had no connection with the transaction, but, through the Coast Guard, had issued an emergency permit allowing the explosives to be loaded on a private vessel anchored at South Amboy, and had a Coast Guardsman at the pier to police the shipboard loading. The explosion resulted in 31 deaths and more than 12,000 persons claimed property damage. In addition to suing the manufacturers of the explosives, the carriers, and the lighterage company, the claimants brought numerous actions against the United States under the Tort Claims Act alleging negligence of the Coast Guard in the issuance of the permit without investigating certain factual representations made by those who had sought the permit, and in failing to discover violations of, or to enforce compliance with, safety regulations.
>
> The United States moved to dismiss the complaints contending that the claims were barred by Sections 2674 and 2680 (a). Denying the motion, the district judge held that the discretionary function exception does not extend to so-called operational level activities, that the duty of the Captain of the Port of New York to investigate the applicant's factual representations before issuance of a permit was an operational level duty not covered by the discretionary function exception. 124 F. Supp. at 64. Similarly, the duty of the Coast Guardsman, who was on the pier, to police the loading and to enforce safety regulations was held to be operational, and breach of that duty was held to be actionable. *Ibid.,*

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

at 64-65. There being no final judgment, that decision is not ripe for appeal.

*Union Trust Company*[FN12] does have a bearing **\*17** on this case, as our petition in No. 296 indicates. But it should be noted that there the court purported to acknowledge the governmental function aspect and the analogous-private-liability requirement of Section 2674, holding--mistakenly, we believe--that the regulation of air traffic does have a private counterpart. The court relied on the fact that, before the Civil Aeronautics Administration came into being and took over the function of regulating air traffic through the control towers, private individuals erected and operated such towers, and still do in some instances, and therefore no governmental function was involved. 221 F. 2d at 74. While we believe this reasoning to be fallacious--for the reasons stated in the Government's petition in that case-- the fact is that in the present case petitioners cannot even point to such a "private analogy"--the operation of lighthouses has always been a function of government and never a private undertaking.[FN13]

> FN12. That case involves a mid-air collision between two planes coming in for a landing on the same runway. Civil Aeronautics Administration employees, who regulate air traffic in a control tower at the airport, were found negligent in failing to warn each plane of the other's activities, and in clearing both planes to land on the same runway at the same time. The court held that the Tort Claims Act permits the imposition of liability for negligent regulation of air traffic by the control tower. Such regulation, it held, is operational level activity and not within the discretionary function exception. The United States has filed a petition for certiorari, No. 296, this Term.

> FN13. Apart from the *Lawter* case, discussed *infra,* perhaps reference should be made to three other cases mentioned by petitioners: *Panella v. United States,* 216 F. 2d 622 (C. A. 2), involving an attack by one inmate upon another inmate of a federal institution, relates solely to the assault and battery exception of the Tort Claims Act, 28 U. S. C. 2680 (h). No question concerning governmental functions was before the appellate court, and the Second Circuit carefully refrained from injecting it into the case. See 216 F. 2d at 623, fn. 2. *Martin v. Bd. of Fire Com'rs for the City of New Orleans,* 132 La. 187, 61 So. 197, held the city liable when its horse-driven fire truck, in a trial run, negligently ran down a pedestrian. The case is irrelevant; we do not contend that driving a truck in such circumstances is a characteristically governmental function (see our main brief, pp. 22-23). *Barnes v. District of Columbia,* 91 U. S. 540, accords with the usual rule in this country that a city is liable for a defective condition of its streets.

**\*18** 2. In their Petition for Rehearing (pp. 3-5), petitioners assert that in the subsequent case of *United States v. Lawter,* 219 F. 2d 559. (C. A. 5), where liability was imposed for Coast Guard negligence in the conduct of a helicopter air-sea rescue, the court below "disavowed" its decision in the present suit. Actually, there was no such disavowal; the court simply held that *Indian, Towing* was not controlling in the light of the facts in the *Lawter* case.[FN14] The opinion distinguished **\*19** the present case on two grounds: (a) that *Indian Towing* involved a negligent omission while *Lawter* involved affirmative negligent conduct, and (b) that the facts in *Lawter* called for application of the Good Samaritan doctrine, *viz.,* if a volunteer attempts to aid another, and takes control of the situation, he is liable if he fails to use reasonable care until the emergency ends, or if he negligently leaves the other in a worse condition. We believe *Lawter* is wrong in both aspects.[FN15] But even accepting *Lawter* as being **\*20** a correct exposition of the law, it has no relevance to the instant case for the court below in

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

*Lawter* did not in any manner repudiate the requirement of analogous-private-liability. It should be noted, in this aspect, that the court did not address itself to the governmental function exclusion, did not refer to or cite Section 2674, or *Feres,* or *Dalehite,* and for that reason it may fairly be inferred that the court believed--rightly or wrongly--that a Coast Guard rescue operation is not a uniquely public function, but one which has a private counterpart.[FN16] For, in other cases apart from *Indian Towing,* the Fifth Circuit has fully adhered to the dictate of Section 2674 that as a condition precedent to recovery there must be a private law analogy. *Goodwill Industries of El Paso v. United States,* 218 F. 2d 270, 272 (C. A. 5); *United States v. Inmon,* 205 F. 2d 681, 684 (C. A. 5); *In re Texas City Disaster Litigation,* 197 F. 2d 771, 780 (C. A. 5), affirmed *sub nom. Dalehite v, United States,* 346 U. S. 15. The **\*21** patent defect in petitioners' claim here is that there is no private liability "under like circumstances," for no private individual would ever find himself in like circumstances:--no one other than the Government maintains a lighthouse service to promote safety at sea and to foster the nation's commerce.

> FN14. A wave swamped decedent's boat, stranding her in rough water some four feet deep about 500 yards from shore. She was sighted by a Coast Guard rescue helicopter which dropped a cable to her, began raising her, but before she could be lifted into the cabin, she lost her grip and fell to her death. In a Tort Claims Act suit, the trial court found that the Coast Guardsman operating the cable had had no training in rescue work, and that the Government was negligent in not having the rescue operation conducted by an experienced man who was available in the helicopter. Liability was imposed, and the Fifth Circuit affirmed primarily on the basis of a volunteer's liability at common law.
>
> FN15. The Tort Claims Act certainly draws no distinction between negligent acts of omission and acts of commission either in claims on which liability may be imposed or in claims which are excluded from its coverage. 28 U. S. C. 1346 (b). The Good Samaritan doctrine, on the other hand, can have no application when the claim arises out of the performance of a governmental function; otherwise that exclusion would be nullified. See our main brief at pp. 56-58, and see the recent opinion of the Ninth Circuit in *Rayonier Incorporated v. United States* (C. A. 9, No. 14,329, Sept. 1, 1955). Rayonier brought an action for damage to its property from fire, alleging, *inter alia,* that the Forest Service was negligent in the manner in which it fought a forest fire, that it negligently failed to suppress the fire and permitted it to spread to its land. Affirming dismissal of the complaint for failure to state a cause of action, the Ninth Circuit applied the test of Section 2674, observed that the suppression of fires by Forest Rangers is a public function, quoted the portion of the *Dalehite* opinion which in turn quotes *Feres,* and concluded that, "In our opinion the Dalehite case compels the conclusion that the Government, when intervening in the prevention and control of forest fires, *may not be said to assume the common law obligation of a volunteer*" (slip op. pp. 4-5, emphasis added).
>
> FN16. Compare *The P. Dougherty Co. v. United States,* 207 F. 2d 626 (C. A. 3), certiorari denied, 347 U. S. 912, holding that liability may not be imposed on the United States under the Public Vessels Act for Coast Guard negligence in a rescue operation at sea, with *Geertson v. United States,* 223 F. 2d 68, 70 (C. A. 3), holding that liability may be imposed under that Act when the Coast Guard, having come to the aid of a rudderless motorboat, was negli-

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

gent in towing it to dock, "a task no different from that undertaken daily by tug boats in every busy harbor."

Appendix not available.

U.S., 2006.
Indian Towing Co., Inc. v. U.S.
1955 WL 72515 (U.S.)

END OF DOCUMENT

Indian Towing Co., Inc. v. U.S.
1955 WL 72515 (U.S. ) (Appellate Brief )

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.