# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § § § PERTAINS TO: ROAD HOME § *Louisiana State* C.A. No. 07-5528 § | CIVIL ACTION NO. 05-4182 "K"(2) JUDGE DUVAL MAGISTRATE WILKINSON |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE STATE'S MOTION TO SEVER

## INTRODUCTION

The State of Louisiana ("State") asks this Court to divide this case so that two parts of the very same insurance claim would be litigated in separate lawsuits, in different jurisdictions. The State wants to sever off and litigate in state court its claims as a purported partial assignee of policyholders' rights with respect to damage to their residences. At the same time, this Court would retain jurisdiction over the very same policyholders' claims that fall outside the scope of the purported partial assignment -- including claims for damage to their residence not compensated for by the Road Home grant; claims for damage to other structures, contents, and additional living expenses; and bad faith claims. Such claim splitting is contrary to well-established law, defies common sense, and could lead to inconsistent results.

The most efficient way to proceed with this case is for the Court to decide Defendants' Motion to Dismiss first. The Court should not consider whether this case could be severed until it first determines whether the State has any valid rights under the homeowners insurance

policies.  Defendants' Motion to Dismiss demonstrates that the purported partial assignments to the State are invalid under Louisiana law because they were made without the Defendants' consent, and because they are barred by anti-assignment provisions in the insurance policies.[1]  If the State has no valid rights under the homeowners policies as a matter of law, then there is no need to address severance.  This is precisely how Judge Zainey handled the State's Motion to Sever in a procedurally similar mass action brought by the State against several insurers.  *See, e.g.*, *State ex rel. Caldwell  v. Allstate Ins. Co.*, et al., No. 07-9409, Doc. 98 (E.D. La. Dec. 17, 2008) (Zainey, J.) (granting motion to dismiss and denying motion to sever as moot).

If the Court reaches the merits of this Motion to Sever, it should deny the motion because severance is both impermissible as a matter of law and impractical.  An insurance claim cannot be divided into pieces and litigated in different jurisdictions.  As this Court previously noted, severing the State's derivative claims from those of the policyholders is "like trying to divide a Siamese twin and one of them is going to die it seems like to me.  Or both."  (May 1, 2008 Hearing Tr. at 43, relevant portion attached hereto as Exhibit A.)  As the Fifth Circuit's decision in this case explains, because the purported assignment is only partial, under both Louisiana and federal law, the State is *required* to join the individual insureds as necessary parties.

The State also fails to meet the legal standard for severance, and its proposed severance would violate fundamental rules prohibiting claim splitting.  On each individual claim, the State's partial claim for damage to the policyholder's residence and the policyholder's remaining claims arise out of the very same transactions and occurrences, present common questions of law and fact, and involve the same witnesses and documentary evidence.  Granting severance would

---

[1]  To the extent that the State tries to characterize its rights as "subrogation" rather than  "assignment," that is also without merit.  As explained in Defendants' Motion to Dismiss, conventional subrogation is indistinguishable from an assignment under Louisiana law, and legal subrogation is available only in certain specific circumstances not applicable here.  (Doc. 16493-2, at 21-22.)

also countenance blatant manipulation of federal jurisdiction rules by the State.  The State chose to bring this suit as a putative class action in order to take advantage of the benefits it believed it could obtain from asserting class action allegations.  By doing so, the State subjected its suit to federal jurisdiction, as the Fifth Circuit held.  Now the State seeks severance to manipulate the rules in an effort to avoid federal jurisdiction.  The Class Action Fairness Act ("CAFA") prohibits such gamesmanship.

Even if the Motion to Sever were granted, remand would not be appropriate, for two reasons.  First, once original jurisdiction of the federal courts has attached based on a proper removal, the federal court generally cannot be divested of that jurisdiction by later events.  Second, even if the State's derivative claims were severed, the State would be required to join the individual policyholders as necessary parties because they would remain real parties in interest, creating federal jurisdiction under CAFA's mass action provision.  *See State ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008). For all of these reasons, if the Court reaches the merits, this Motion to Sever should be denied.

## BACKGROUND

### A.      The State's Purported Limited Rights Under Homeowners' Policies

The Louisiana Road Home program ("Road Home") is a federally funded program administered by the State of Louisiana, which provides grants to Louisiana residents for uninsured dwelling losses suffered as a result of Hurricanes Katrina and Rita.[2]  The State alleges that "[a]s a prerequisite to receiving funds under The Road Home Program, the State requires a recipient to execute, as part of the closing, a document titled The Road Home Program Limited

---

[2]   *See* U.S. Dept. Housing and Urban Dev. May 30, 2006 news release available at http://www.hud.gov/news/release.cfm?content=pr06-058.cfm (approving Louisiana's Road Home program and authorizing disbursement of funds via HUD's Community Development Block Grant Program).

Subrogation/Assignment Agreement" (hereinafter, the "Agreement"), which is attached as Exhibit A to the Amended Petition.  (Amended Petition, ¶ 11.)  The Amended Petition explains that "[p]ursuant to the Subrogation/Assignment Agreement, a recipient assigns, *to the extent of the grant proceeds awarded or to be awarded to the recipient*, the recipient's claims under any policy of casualty or property damage insurance on the damaged or destroyed residence . . . ." (*Id.*, ¶ 12 (emphasis added); *see also* Amended Petition at Exhibit A.)

The Agreement purports to assign claims or the right to insurance proceeds only as to dwelling claims (expressly excluding contents), and only to the extent of the grant payment. (Amended Petition at Exhibit A.)  The Agreement further provides that "[n]otwithstanding anything to the contrary contained herein, *this is a limited subrogation and assignment, and is limited to an amount not to exceed the amount of the grant received by the undersigned under the Program*, to which the State has not been reimbursed from other sources."  (*Id.* (emphasis added.))  Moreover, the State is only entitled to post-grant insurance proceeds to the extent that those proceeds would have reduced the amount of the grant if they had been received prior to the grant, *i.e.*, only if they represent duplicate payment for the same damage already compensated by the Road Home grant.  (*Id.*)

The maximum grant available under the Road Home program is $150,000.  (Amended Petition, ¶¶ 12, 13.)  Thus, even assuming that the purported transfer of rights to the State is valid, a grant recipient who sustained damage to his or her home in excess of $150,000, or in excess of the amount of the grant awarded by the Road Home program, retains his or her rights to pursue a claim against the insurer for any covered damage not compensated by the Road Home grant.  Moreover, because the assignment is limited to amounts paid by insurers for damage to the residence, *all* insureds retain their rights to pursue claims against their insurer for

damage to other structures (such as a garage or shed), contents, and additional living expenses (to the extent the individual policies at issue provided such coverage).

Insureds also retain their rights to assert extra-contractual claims against their insurer. The Agreement between the State and the policyholders does not transfer bad faith claims to the State, and such claims are not transferable, as explained in Defendants' Memorandum of Law in Support of Their Motion to Dismiss.  (Doc. 16493-2, at 26-27.)

### B.     The State's Claims In This Lawsuit

The State seeks to recover both on its own behalf and on behalf of a putative class of insureds.  The State's Amended Petition expressly alleges a putative class that the State defined to include individual insureds (Am. Petition at ¶¶ 21-23); it seeks monetary recovery on their behalf (Am. Petition ¶¶ 11, 79, 84, 89, 97, 106, Prayer ¶¶ f-h); and it seeks to certify those individuals as a class (Am. Petition at ¶¶ 21-23 and Prayer for Relief at ¶ a).  Most notably, the State's Amended Petition seeks "liquidated damages with respect to the [putative class members'] total loss of their residences—namely the full value stated on the face of their respective insurance policies" (Am. Petition ¶¶ 46, 61); and also "any and all monetary awards necessary to indemnify, pay, reimburse or repay the State *and members of the class* for the losses and damages they have or will incur, as pled herein."  (Am. Petition at Prayer for Relief (emphasis added).)     The State also seeks substantial declaratory and injunctive relief on behalf of the putative class members. (Am. Petition ¶¶ 33-46 and Prayer for Relief.)  The State asserts claims for declaratory judgment and injunctive relief, breach of contract, violation of the Valued Policy Law, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and penalties, attorneys' fees and costs (including violation of the Louisiana bad faith statutes, La. R.S. 22:658 and 22:1220), against all 203 Defendants.  (*Id.* ¶¶ 32-107.)

C.      Procedural History Of This Litigation

This lawsuit was filed by the former Louisiana Attorney General in the Civil District Court for the Parish of Orleans on August 23, 2007.  The case was removed to federal court primarily based on CAFA.  In October of 2007, the State filed a motion to remand.  On November 6, 2007, the Court entered a case management order setting a briefing schedule on the motion to remand, and barring the filing of any responsive pleadings until after the Court decided the motion to remand or, in the event of an appeal, after the court of appeals' decision.  (Docs. 8873, 11213.)

After briefing and oral argument on the motion to remand, the Court issued an oral decision denying the motion on November 14, 2007.  (Doc. 9066, at 82-91.)  The Court concluded that the requirements for CAFA jurisdiction were met, and that the Eleventh Amendment was inapplicable because the State is a plaintiff.  (*Id.* at 82-87.)  The Court held that there was minimal diversity because the members of the putative class of homeowners were real parties in interest, citing the fact that paragraph (g) of the State's prayer for relief sought damages on behalf of both the State and members of the class.  (*Id.* at 88.)  The Court further explained that "we know there's [a] $150,000 limit [for Road Home grants] and if you get a[] $200,000 recovery, the State certainly couldn't keep it; and that concerns me, because I must look at the complaint as pled."  (*Id.*)

The State sought discretionary review in the Fifth Circuit, which granted review in February of 2008.  (Doc. 11099.)  In the meantime, the parties made extensive efforts to develop a protocol for resolution of pending lawsuits of homeowners who are Road Home grant recipients.  (*See*, *e.g.*, Docs. 13202, 13348, 13528.)

At oral argument in the Fifth Circuit, the court of appeals raised the possibility of severance repeatedly in questions directed to the State's counsel.  The State's counsel repeatedly stated that the State did not believe that the case could be severed.

In April of 2008, the Fifth Circuit affirmed this Court's decision denying the State's motion to remand.  *In re Katrina Canal Breaches Litig.*, 524 F.3d 700 (5th Cir. 2008) (hereinafter, "*Road Home*").  The Fifth Circuit noted that "as partial assignees and assignors, both the State and the citizens are likely real parties in interest," and agreed with this Court's conclusion that "[w]ith citizens of Louisiana joined as plaintiffs there is minimal diversity" for purposes of establishing jurisdiction under CAFA.  *Id.* at 706.  The Fifth Circuit further noted that "[w]here an assignment or subrogation is partial in Louisiana, the failure to include either of the contracting parties in a suit constitutes non-joinder of a necessary party."  *Id.* at 707 n.19. The court concluded, however, that "because Louisiana brought a class action, we need not address whether Louisiana might have been compelled to join these additional parties [i.e., grant recipients] in any event, or its effects upon federal jurisdiction."  *Id.* at 707.  With respect to sovereign immunity, the Fifth Circuit held that the State had waived any immunity it had by bringing suit together with a class of private citizens, explaining that "any immunity the State may have cannot be conferred by the State upon the prosecution of suits by private citizens."  *Id.* at 711.  At the end of its opinion, the Fifth Circuit raised the possibility of severance, while making clear that it was expressing no view on whether severance would be legally permissible or practicable:

> We trust that given our caution in this matter of state sovereignty, the district court will explore the possibility of returning Louisiana to the state court while retaining the class suit – perhaps with new class representatives drawn from its membership.  ***We express no opinion regarding either the permissible or the practicable segmenting of this case.***  We make these observations against the backdrop of the settled power of the district courts.  We will affirm the decision

not to remand and will remand the case to the district court.  ***That court is the able manager of this complex litigation and we will not extend these appellate hands into that endeavor.***

*Id.* at 712 (emphasis added).

After the case was remanded by the Fifth Circuit in April, the State did not seek severance for more than seven months.  In the meantime, in June of 2008, the Court issued a case management order establishing a protocol for the resolution of pending lawsuits filed by homeowners who are Road Home grant recipients.  (Doc. 13598.)  The parties successfully resolved a significant number of individual claims.

At a status conference on October 28, 2008, the State asked the Court to defer consideration of Rule 12 motions until after the resolution of a second motion to remand that it intended to file.  The Court concluded that there was "no reason to delay further the filing of the Motion(s) to Dismiss," and set a briefing schedule for motions to dismiss, with a hearing date of January 30, 2009.  (Doc. 16194.)  Defendants filed their Motion to Dismiss in accordance with that schedule.  (Doc. 16493.)  Defendants' Motion to Dismiss demonstrates that:  (1) the State lacks standing to sue because the purported partial assignments are invalid as a matter of Louisiana law and under anti-assignment provisions in the insurance policies; (2) the State's claims for flood damage and under the Valued Policy Law are barred by controlling precedent; (3) the State's claims for extra-contractual damages or penalties fail as a matter of law; (4) the State's claims are prescribed if the insured did not file suit or assign their claims to the State prior to the applicable deadlines; and (5) the State's claims for breach of contract and bad faith are not adequately pled.

Shortly before Defendants were scheduled to file their motion to dismiss, the State filed a motion for leave to file the instant Motion to Sever.  (Doc. 16415.)  The Court granted leave and

set a briefing schedule, with a hearing scheduled for January 30, 2009.  (Doc. 16479.)

## ARGUMENT

### I.     Defendants' Dispositive Motion Should Be Decided Before This Motion To Sever

Defendants' Motion to Dismiss raises several arguments that would be dispositive of this Motion to Sever because Defendants challenge whether the State has standing to assert any claims under the insurance policies.  The Motion to Dismiss also raises arguments that would define and narrow the scope of the State's claims, and would impact the Court's analysis on this Motion to Sever.  In order to decide this Motion to Sever, the Court will need to resolve several of the same issues that are raised in the Motion to Dismiss.  This Court should therefore decide the Defendants' Motion to Dismiss before the State's Motion to Sever.

In fact, the State recently pursued a similar tactic when faced with a motion to dismiss in a procedurally analogous case pending before Judge Zainey.  *State ex rel. Caldwell  v. Allstate Ins. Co.*, et al., No. 07-9409 (E.D. La. Dec. 17, 2008) (Zainey, J.) ("*Caldwell*").  In *Caldwell*, as here, the State filed a lawsuit against several insurers, seeking to recover injunctive relief, as well as damages on behalf of individual policyholders.  (*Caldwell*, Doc. 1-2.)  Defendants removed the action to federal court pursuant to CAFA.  (*Id.*, Doc. 1.)  Judge Zainey denied the State's motion to remand and was affirmed by the Fifth Circuit on July 18, 2008.  *See State ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008).  On August 18, 2008, the defendants moved to dismiss.  (*Caldwell*, Doc. 72.)  At the same time as it responded to the defendants' motion (*id.*, Doc. 88), the State made a motion to sever its claim for injunctive relief from claims for money damages made on behalf of policyholders.  In support of its motion to sever, the State relied upon dicta from the Fifth Circuit comparable to that which it relies upon here.  (*Id.*, Doc. 87.)  Judge Zainey first considered the motion to dismiss, which he granted.  He then

denied the motion to sever as moot.  (*Id.*, Doc. 98.)   For the reasons discussed below, this sequence would also be the most efficient way of proceeding in this case.

> **A.     Defendants' Motion To Dismiss Will Render This Motion To Sever Moot Or Substantially Impact The Court's Analysis On Severance**

Defendants' Motion to Dismiss is dispositive of this case, and renders the Motion to Sever moot.  As the Motion to Dismiss explains, the State lacks standing to sue under the insurance policies for two reasons:  (1) partial assignments are not enforceable under Louisiana law without Defendants' consent; and (2) the purported assignments are barred by the anti-assignment provisions in Defendants' policies, which are expressly authorized by Louisiana law.  (Doc. 16493-2, at 10-20.)   In addition, the Agreement contains a condition precedent to the State's interest: the insured must first "abandon, dismiss, or release the claims" against their insurance company before the State has the right to step into the insured's shoes.  The State has not demonstrated that the insureds abandoned their rights.  (*Id.* at 20-21.)   It would make no sense to decide whether the State's purported derivative rights under the insurance policies can be separated from the insureds' rights and litigated separately, without first deciding whether the State has *any* valid rights at all.   If the Court agrees with Defendants' position that the Agreement is invalid, that would be dispositive of this case and there would be no need to consider severance.

There are other issues raised in the Motion to Dismiss that also impact the severance analysis, and will need to be decided in order to resolve this Motion to Sever.  For example, the Motion to Dismiss argues that the Agreement, by its terms, does not transfer bad faith claims to the State, and that such claims are not assignable as a matter of law.  (*Id.* at 26-28.)   If the bad faith claims were not validly transferred, the State's proposed severance of this case would result in the State's partial breach of contract claims being adjudicated separately from the bad faith

claims that arise from the very same alleged breach of contract. One court could conclude that there was no breach of contract while another court could find the insurer in bad faith – wholly inconsistent results.

Even if severance were appropriate (which it is not), this Court would have to ascertain which claims belong to the State and which claims belong to the insureds in order to implement any severance. That would involve deciding whether the State or the insureds have the rights to any bad faith claims, and whether either the State's or the insureds' claims are prescribed. Defendants' Motion to Dismiss demonstrates that the State's claims are prescribed where the insured did not file suit or execute the Agreement prior to the prescription deadlines. (*Id.* at 32-35.) While the State seeks to sever all claims that have been purportedly assigned to the State as of a date to be determined in the future, that would be plainly inappropriate if many of those claims were prescribed before the purported assignment was executed.

The issues raised in Defendants' Motion to Dismiss overlap with issues that will need to be decided on this Motion to Sever, and the Motion to Dismiss could render this motion moot. Principles of judicial economy therefore strongly favor deciding Defendants' dispositive motion before the State's Motion to Sever. If anything is left of this case after this Court rules on the Motion to Dismiss, severance can be taken up at that time, informed by a more focused view of the scope of the State's claims.

### B.  It Is Well Within This Court's Discretion To Decide Defendants' Motion To Dismiss First

There is no question that this Court has jurisdiction over this case, as the Fifth Circuit held, and therefore can decide the Motion to Dismiss before considering severance. This Court has ample discretion to decide the pending motions in the manner it deems appropriate. *See Road Home*, 524 F.3d at 712 (noting that this Court "is the able manager of this complex

litigation and we will not extend these appellate hands into that endeavor"); *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1230 (Fed. Cir. 2007) ("Trial judges are entitled to arrange the priority of issues in a manner that they consider efficient.").  Courts regularly decide motions to dismiss before considering motions to sever.  *See*, *e.g.*, *State ex rel. Caldwell  v. Allstate Ins. Co.*, et al., No. 07-9409, Doc. 98 (E.D. La. Dec. 17, 2008) (Zainey, J.); *Thibeaux v. Chevron Corp.*, 2005 WL 3359177, at *2 (W.D. La. Dec. 8, 2005) (granting motion to dismiss and denying motion to sever as moot); *Collier v. Batiste*, 2005 WL 3543824, at *9 (E.D. La. Oct. 21, 2005) (Fallon, J.) (deciding motions to dismiss and deferring ruling on motion to sever to a later date, noting that "further consideration is required to determine what claims and what Defendants remain in the case" before considering severance); *see also Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 1995 WL 17133045, at *2 (E.D. Tex. Sept. 22, 1995) (considering motion to dismiss together with motion to sever where they were "intertwined").

Deciding the Motion to Dismiss before considering severance is consistent with the Fifth Circuit's decision affirming this Court's remand denial.  Although the State's Motion to Sever suggests that the Fifth Circuit favored severance, that is simply not true.  The Fifth Circuit merely noted the possibility of severance, and expressly left it to this Court's discretion at what point and whether to consider severance.  *Road Home*, 524 F.3d at 712 (stating that "[w]e express no opinion regarding either the permissible or the practicable segmenting of this case," and noting that the district court "is the able manager of this complex litigation and we will not extend these appellate hands into that endeavor").  Nothing in the Fifth Circuit's ruling suggests that severance must be considered before an initial Rule 12 motion is adjudicated, and the State waited over seven months before seeking severance.  This Court should exercise its "wide discretion to control the course of litigation," and first consider Defendants' dispositive motion.

*In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) (citations omitted); *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).

## II.     The Individual Insureds Are Necessary Parties That Must Be Joined Under Both Federal And Louisiana Rules Of Procedure; It Is Improper To Sever Them From The State's Action

The Fifth Circuit recognized one of the major obstacles to severance of this case – if the State had not brought a putative class action, "Louisiana might have been compelled to join [the insureds] in any event" because "[w]here an assignment or subrogation is partial in Louisiana, the failure to include either of the contracting parties in a suit constitutes non-joinder of a necessary party." *Road Home*, 524 F.3d at 707 & n.19 (citing La. Code Civ. P. arts. 697 and 698). The Fifth Circuit's instincts were correct. Under Louisiana law, to the extent that partial assignments are permissible,[3] both the assignee and assignor to a partial assignment or partial subrogation have an interest in the claim and must be joined. *Road Home*, 524 F.3d at 707 n.19 (citing La. C.C.P. arts. 697 and 698); *Travelers Indem. Co. v. Westinghouse Elec. Corp.*, 429 F.2d 77, 79-80 (5th Cir. 1970) ("Louisiana does not recognize a cause of action by a partial subrogee absent joinder of the partial subrogor. Unless there has been a total subrogation, the action may be brought only by the subrogor and the subrogee. Neither one is entitled to bring the action alone. Since there was only a partial subrogation in this case and since the subrogor, CLECO, did not join in the action, the plaintiffs are not entitled to maintain the action. The remedy is to require the subrogor to join upon pain of dismissal"). Specifically, Articles 697 and 698 of the Louisiana Code of Civil Procedure require *both* the partial assignee and assignor (or partial subrogee and subrogor) to join together when they seek to judicially enforce a right. La. C.C.P. Art. 698 ("An incorporeal right which has been assigned, whether unconditionally or

---

[3] Partial assignments are not enforceable under Louisiana law without the consent of the obligor. *See* Defendants' Motion to Dismiss, at 10-12.

conditionally for purposes of collection or security, shall be enforced judicially by: (1) the assignor **and** the assignee, when the assignment is partial . . . .") (emphasis added); La. C.C.P. Art. 697 (same for subrogation).[4]

The Fifth Circuit has further held that where a partial assignment is at issue *both* the assignee and assignor are real parties in interest.  *See Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990) (holding that a partial assignment of the claim could not destroy diversity jurisdiction, and stating that "[w]ith a partial assignment . . . both the transferor and transferee [are] real parties in interest.") (citations omitted, emphasis omitted); *United States v. SCS Bus. & Tech. Inst., Inc.*, 173 F.3d 870, 884 (D.C. Cir. 1999) (citing *Wright & Miller* for the proposition that "in cases of partial assignments, the assignor and assignee are both real parties in interest"). Under Rules 17 and 19 of the Federal Rules of Civil Procedure, real parties in interest must be joined in the lawsuit.  *See* Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest."); Fed. R. Civ. P. 19(a).

Here, the insureds who purportedly assigned their claims to the State are necessary parties to any lawsuit by the State seeking to recover based on those purported assignments.[5] The State, for itself, is seeking to recover only a portion of certain insurance proceeds for damage to the dwelling, specifically that portion that duplicates compensation already received through a Road Home grant, up to the amount of the grant made to the homeowner (which has a

---

[4] In a diversity case, determination of whether a party is necessary involves a mixed question of state and federal law.  "[S]tate-law questions may arise in determining what interest the outsider actually has, but the ultimate question whether, given those state-defined interests, a federal court may proceed without the outsider is a federal matter."  *Morrison v. New Orleans Public Service, Inc.*, 415 F.2d 419, 423 (5th Cir. 1969) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n. 22 (1968)).

[5] There is an exception for class actions, Fed. R. Civ. P. 19(d), which would not apply if the State's claims were severed as the State requests.

-14-

$150,000 cap).  The insureds have a clear interest in being party to any determination of the extent of the State's rights vis-à-vis their own, including the determination of the extent to which any insurance recovery represents a duplicate payment.

This Court already recognized that the insureds have a substantial stake in this litigation when it denied the State's Motion to Remand, stating:  "the amended complaint at (g) in the prayer says 'for any and all monetary awards necessary to indemnify, pay, reimburse, or pay the State and members of the class for the loss of damages that they will have or will incur.  And we know that there's a $150,000 limit and if you get a $200,000 recovery, the State certainly couldn't keep it; and that concerns me, because I must look at the complaint as pled."  (Tr. of Hearing on Mot. to Remand, attached hereto as Exhibit B, at 88:4-10.)[6]  The State makes no claim to any amounts that may be recoverable for dwelling damage in excess of the amount of the grant, and no claim to any proceeds for damage to the contents of the home, other structures or additional living expenses.  In addition, even assuming the purported assignments are valid, the State has no rights under the bad faith statutes.  *See* Defendants' Motion to Dismiss, Doc. 16493-2, at 26-28.

Moreover, the State would not be entitled to repayment of the grant in the first instance except to the extent that any insurance proceeds, if received prior to the grant, would have reduced the grant amount.  In other words, the State's purported interest is limited to proceeds that represent a duplicate payment for damage compensated by the grant.  In the Court's example where the homeowner receives a $150,000 grant and $200,000 in insurance, the State would not be entitled any recovery if the total damage to the residence were $350,000 or greater, because

---

[6] Moreover, the State's counsel conceded at the remand argument before this Court that "[t]here are many individuals whose insurance is in excess of $150,000."  (Ex. B at 15:10-12.)  It is clear that recovery of these additional amounts is sought by the Petition.  (Am. Petition at Prayer for Relief (g).)

there would be no duplicative compensation. Thus, the total amount of dwelling damage sustained (both covered and uncovered) would need to be determined in every case in order to determine the extent of the State's interest, if any, vis-à-vis the insured's, and the insured would have a clear interest in being party to that determination.

Under these circumstances, the individual insureds are necessary parties under Rule 19(a) because they undoubtedly have an interest in the subject matter of this action, and the disposition of this case in their absence would impair their ability to protect their interest. *See Travelers Indem. Co.*, 429 F.2d at 79-80; *see also Mcauslin v. Grinnell Corp.*, 2000 U.S. Dist. LEXIS 11378 at \*21-22 (E.D. La. Aug. 1, 2000) (ultimately holding that joinder was not necessary under Rule 19(b) because it would destroy jurisdiction, but that the partial subrogee was a necessary party under Rule 19(a) "[b]ecause a partial subrogee can only sue for its portion of the total damages claimed, Lloyd's and the corporate insurers have independent substantive rights against the tortfeasors . . . [t]hus, . . . complete relief cannot be accorded to defendants if Lloyd's is not retained as a party"); *Phoenix Ins. Co. v. Woosley*, 287 F.2d 531, 533 (10th Cir. 1961) (holding that where insurance claim was partially assigned to several parties, "the assignor, assignees, debtor, and all parties claiming an interest in the indebtedness are necessary parties"). There is no need to determine whether the insureds are indispensable parties under Rule 19(b) because the joinder of the insureds, either in the form of a putative class or as individuals, would not destroy CAFA jurisdiction.

Moreover, the purpose of the joinder requirement is not only for judicial economy and the protection of the defendants, but also to protect the individual insureds' rights. Here, the State seeks to proceed separately only for its interest and to the potential detriment and prejudice of the claims of the insureds, many of whom the State's Motion to Sever concedes are actively

pursuing their claims in litigation.  (State Mem. at 7.)  Despite knowledge of these lawsuits, the State seeks to proceed on its own portion of these claims first, which would potentially undermine the insureds' lawsuits.

It would violate the individual Louisiana insureds' due process rights to allow the State to achieve the result it seeks here.  If the State is allowed to claim-split its portion of the claims, the decision in that litigation, if it occurs first, may be preclusive of the individual insureds' litigation.  It would be manifestly unjust to allow such a severance.

**III.    The State's Motion To Sever Also Fails To Comply With Rule 21 Because It Is Nothing More Than An Improper Attempt To Claim-Split**

The State's Motion seeks to sever "and remand all claims in which the State has closed a Road Home grant and received an executed Subrogation Agreement to state court for further proceedings."  (State Mem. at 1.)  The State seeks to proceed on its portion of the insurance claims in State court, while the putative class of individual insureds would proceed on the same claims in a separate lawsuit in this Court.  Neither the Federal Rules of Civil Procedure, nor any case law, supports such an unprecedented claim-splitting effort in order to engage in this kind of forum manipulation.  In fact, the State's Motion to Sever fails to meet *any* of the criteria for severance under Rule 21, and undermines the basic tenets of judicial economy and res judicata.

**A.     The State's Motion To Sever Fails To Meet The Standards Of Rule 21**

The Supreme Court has stated that "joinder rules should be interpreted to encourage 'the broadest possible scope of action consistent with fairness to the parties.'"  *Little v. Bellsouth Telecomm.*, 1995 U.S. Dist. LEXIS 11208 at *3 (E.D. La. Aug. 7, 1995) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ("joinder of claims, parties and remedies is strongly encouraged")).  Accordingly, when courts consider motions to sever, the interests of judicial economy and avoiding duplicative litigation are paramount, as well as: "(1) whether the claims

arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims." *See generally Fassbender v. Treasure Chest Casino, LLC*, 2008 U.S. Dist. LEXIS 15673 at *5 (E.D. La. Feb. 28, 2008) (quotation omitted).

Rule 21 contemplates severance only where the severed suits are capable of being resolved separately and independently, where the outcome in one suit will not affect the other. As one court has recognized:

> [A] district court may sever claims under Rule 21, creating two separate proceedings, so long as the two claims are discrete and separate . . .   In other words, *one claim must be capable of resolution despite the outcome of the other claim.*

*Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (internal punctuation and citations omitted, emphasis added); *see also Swofford v. B. & W. Inc.*, 336 F.2d 406, 415 (5th Cir. 1964) (severance permitted where an issue is "so distinct and separate from the others that a trial of it alone may be had without injustice").

Here, quite the opposite is true -- the two severed actions would involve identical claims that arise out of the same transactions and occurrences; present common questions of law and fact; and involve the same witnesses and documentary evidence.  The outcome of the state court action would likely be res judicata in this action and vice-versa.  *See Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1053 (9th Cir. 2007) (holding that, where insurer was partially subrogated to the interests of the insured and brought a subrogation suit that was resolved and dismissed with prejudice, insured's subsequent suit was properly dismissed on res judicata grounds because it was an "impermissible attempt to split a single cause of action").  This alone

weighs strongly against severance.

      **B.**      **The State's Motion To Sever Is An Improper Attempt To Split Claims**

The State seeks to have *identical* causes of action, based on identical facts, and identical legal issues, prosecuted in two separate actions that are distinguished only by the party seeking the relief.  Because the purported assignment is only partial, if the State has a valid interest then both the State and the individual policyholders share an interest in the same claims.  If the State's Motion to Sever were allowed, litigants sharing a common and joint interest in a claim could bring two (or more) identical lawsuits in order to gain a strategic advantage.  The insureds themselves plainly would not be permitted to split their claims in two and bring a portion of the claims in one lawsuit and the remainder of them in a second lawsuit.  A party is not permitted to "prosecute [its case] by piecemeal," instead all claims arising out of a single wrong must be presented in one action.  *Astron Industrial Associates, Inc. v. Chrysler Motors Corp.,* 405 F.2d 958, 960 (5th Cir. 1968) (quoting *Baltimore S.S. Co. v. Phillips*, 274 U.S. 316, 319-20 (1927)); *see also Baltimore S.S. Co.*, 274 U.S. at 322 (holding that a litigant is not allowed to engage in piecemeal litigation by asserting only one cause of action in one complaint, and other causes of action in other complaints); *United States v. California & Oregon Land Co.*, 192 U.S. 355, 358 (1904) (holding that a plaintiff must "try his whole cause of action and his whole case at one time[, h]e cannot even split up his claim").  Given that the insureds could not split their own claims, there is no justification for allowing such claim splitting by virtue of a purported partial assignment to the State.  Courts have not allowed such claim splitting.  *Intri-Plex Techs.*, 499 F.3d at 1053; *see also El Aguila Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 960-61 (S.D. Tex. 2001) (denying motion to sever claims of Texas and California plaintiffs because the issues of both sets of claims overlapped, so a severance would only result in unnecessary

duplicative litigation).

**C.    Defendants (And The Individual Insureds) Would Be Greatly Prejudiced By The Severance The State Seeks**

Defendants would suffer extreme prejudice if the State's Motion to Sever were granted. Such a severance would require unnecessary duplicative litigation, which in and of itself is prejudicial. Moreover, while the State is focused on recouping funds it allegedly expended under the Road Home program, the Petition also seeks injunctive relief that both the State and individual insureds could jointly pursue. In fact, in its filings with the Fifth Circuit the State conceded that the putative class has an interest in the injunctive relief sought in the Petition. (Ex. C, Petition for Permission to Appeal at 5,  IX.)   Thus, there is a potential for inconsistent results on any injunctive relief that may be ordered. Even more prejudice would ensue if the State could proceed first on its claims and then, if they fail, use the individual insureds' class action in this forum as a "second bite at the apple." This sort of forum shopping and duplicative litigation is clearly prejudicial to the Defendants, and completely improper.

The State's Motion to Sever should therefore also be denied because of the prejudicial effect such severance would have on the Defendants. As a court explained in a case involving analogous circumstances:

> To dismiss fifty-three plaintiffs from this case unconditionally without prejudice would subject defendants to the possibility of litigating suits based on the same claims in both this Court and in state court--a circumstance that would largely defeat the purpose of CAFA and significantly increase the expense and effort required of defendants in preparing for and trying at least two trials. Plaintiffs had to have understood, when filing a single mass action complaint in state court on behalf of 144 individuals, that they would be subject to federal jurisdiction under CAFA if the defendants chose to remove it, which they did. Having lost that gamble, they should not now be permitted to file a new, CAFA-proof action in a state court venue they believe would be more favorable to them, forcing defendants to litigate duplicative actions. In sum, the Court concludes that granting plaintiffs' motion without prejudice would

constitute plain legal prejudice to the defendants.

*Bullard v. Burlington Northern Santa Fe Railway Co.*, 2008 U.S. Dist. LEXIS 78517 at *31-32 (N.D. Ill. Aug. 29, 2008); *see also Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 (5th Cir. 1995) (district court has discretion to sever (or not sever) action based on considerations of delay and prejudice).

> **D.     The State's Motion Should Also Be Denied Because It Is An Improper Attempt To Manipulate Procedural Rules To Avoid CAFA Jurisdiction**

The State's Motion to Sever is the latest in its repeated, and unsuccessful, efforts to avoid federal court jurisdiction and have these claims decided by a Louisiana state court.  The State chose to bring this lawsuit as a putative class action, presumably because it believed it could assert more expansive claims in a class action than it could if it were limited to asserting its own rights to the limited number of claims on which it had received purported assignments as of August of 2007.  To allow the State to now sever off the putative class action, after it has obtained many thousands of additional purported assignments, would countenance blatant manipulation of procedural rules.  Severance would allow the State to take advantage of the benefits it believed it could obtain by bringing a class action subject to federal jurisdiction, and then, now that the State believes it no longer has any need for those benefits, would allow the State to manipulate the rules in an effort to avoid federal jurisdiction.

Other courts have refused to allow plaintiffs to manipulate their pleadings post-removal to avoid CAFA jurisdiction and obtain a remand.  The Seventh Circuit recently affirmed a district court's rejection of a plaintiff's attempt to reduce the number of joined claims below the CAFA mass action threshold of 100 *after* the case was removed.  *Bullard v. Burlington Northern Santa Fe Railway Co.*, 535 F.3d 759, 762 (7th Cir. 2008).  In so holding, the Seventh Circuit noted the rule that post-removal events generally do not divest the federal court of jurisdiction.

*Id.* (citations omitted).  Here, as in *Bullard*, the State's Motion to Sever is an improper attempt to divide this case into pieces in order to attempt to evade CAFA jurisdiction.  *Bullard*, 2008 U.S. Dist. LEXIS 78517 at \*31-32 (refusing plaintiffs' request to dismiss the claims of fifty-three plaintiffs in order to circumvent CAFA jurisdiction post-removal because the defendants would be substantially prejudiced by such an order as it would result in "the possibility of litigating suits based on the same claims in both [federal and] state court--a circumstance that would largely defeat the purpose of CAFA and significantly increase the expense and effort required of defendants in preparing for and trying at least two trials").

Similarly, the Fifth Circuit has repeatedly held that judicial rules should not be created or construed to encourage forum shopping.  *In re Shell Oil Co.*, 932 F.2d 1523, 1527-30 (5th Cir. 1991) (strictly applying the 30-day period for motions to remand under 28 U.S.C. § 1447(c) in light of the Congressional intent to avoid allowing litigants to hold jurisdictional defects in reserve as a means of forum shopping); *Marine Chance Shipping v. Sebastian*, 143 F.3d 216, 218-19 (5th Cir. 1998) (noting that it is within a court's discretion to refuse to grant declaratory relief if the party seeking such relief is attempting to forum shop).  Given the Congressional intent behind CAFA to expand the availability of a federal forum to class action defendants, and this Court's and the Fifth Circuit's rulings that CAFA jurisdiction exists in this case, the State's forum-shopping tactics should be rejected.

## IV.    Remand Would Not Be Appropriate Even If Severance Were Granted

Even if this case were severed, remand would still be inappropriate for two reasons. First, once federal subject matter jurisdiction attaches it cannot be divested by subsequent events. As the United States Supreme Court has recently reiterated, the "time of filing" rule holds federal subject matter jurisdiction is determined at the time of filing:

> It has long been the case that the jurisdiction of the Court depends upon the
> state of things at the time of the action brought.  This time-of-filing rule is
> hornbook law (quite literally) taught to first-year law students in any basic
> course on federal civil procedure.  It measures all challenges to subject-
> matter jurisdiction premised upon diversity of citizenship against the state
> of facts that existed at the time of filing . . . .
>
> We have adhered to the time-of-filing rule regardless of the costs it
> imposes.

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938); *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, (1991) (noting that "[w]e have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events"); *ANPAC v. Dow Quimica de Colombia S.A.*, 988 F.2d 559, 565 (5th Cir. 1993) ("[J]urisdiction is determined as of the time of removal and post-removal events will generally not deprive the court of jurisdiction.").

The time-of-filing rule has consistently been applied to a wide variety of post-removal events.  Thus, a district court retains jurisdiction "even if the plaintiff failed to prove his federal question claim, or if the amount in controversy falls below the jurisdictional amount, or if one of the parties changes its residency during the pendency of the suit."  *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1180-81 (5th Cir. 1987) (citation omitted); *see also In Re Enron Corp. Secs., Derivative & ERISA Litig.*, 535 F.3d 325, 336 (5th Cir. 2008) (confirmation of a bankruptcy plan did not divest the court of jurisdiction over related claims).[7]  This holds equally true in the

---

[7] The exceptions to the "time-of-filing" rule are narrow.  Certain statutory exceptions, not applicable here, are found in the removal statute.  *See* 22 U.S.C. § 1447(e) (remand after joinder of a non-diverse defendant).  Remand may also be permissible (but not required) in certain cases where the basis for the court's jurisdiction was discretionary.  *See Brockman v. Merabank*, 40 F.3d 1013, 1017 (9th Cir. 1994).  This exception, however, does not apply to diversity jurisdiction (which includes CAFA jurisdiction), "because the exercise of diversity jurisdiction is not discretionary."  *Id.*  The Supreme Court has declined to recognize further exceptions to the time-of-filing rule.  *See Grupo Dataflux*, 541 U.S. at 577; *see also In re Wilson Indus., Inc.*, 886 F.2d 93, 95 (5th Cir. 1989) ("With one exception [involving discretionary jurisdiction over pendant state law claims] . . . , it has long been held that a plaintiff may not precipitate a remand of an action by amending the complaint to eliminate the basis for removal.").

context of CAFA jurisdiction.  *Bullard*, 535 F.3d at 762.  As a result, if the State were allowed to sever this single suit into two separate suits, this Court would retain jurisdiction over both because it had jurisdiction over the claims at the time of filing.

Second, even if this Court were to order severance, the State's claims would still be subject to federal jurisdiction.  As noted above, the State, as an alleged partial assignee, would be required to join each and every individual insured.  Where there is a partial assignment, both the assignor and assignee must be joined as parties.  *Travelers Indem. Co.*, 429 F.2d at 79-80; La. C.C.P. Arts. 667 and 668.  Because the individual insureds would be necessary parties and real parties in interest, the State's case would be subject to CAFA jurisdiction as a "mass action."  28 U.S.C. § 1332(d)(11).

In an anti-trust lawsuit filed by the Louisiana Attorney General against six insurance companies and several other defendants, the Fifth Circuit recently held that there was federal jurisdiction under CAFA because the case qualified as a "mass action."  *State ex. rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008).  The Fifth Circuit concluded that individual policyholders, although not named as parties in the case, were real parties in interest because the State was seeking damages on their behalf.  *Id.* at 429.  The Fifth Circuit then held that, because the individual policyholders were real parties in interest, the case was properly removed under CAFA:

> Having determined that the policyholders are real parties in interest, we agree that this action was properly removed pursuant to CAFA because the requirements of a "mass action" are easily met given the factual circumstances of this case: this is a civil action involving the monetary claims of 100 or more persons that is proposed to be tried jointly on the ground that the claims involve common questions of law or fact; the aggregate amount in controversy is at least $5 million, this action involves claims of more than 100 Louisiana citizens who are minimally diverse from Defendants, and it is being brought in a representative capacity on behalf of those who allegedly suffered harm. *See* 28 U.S.C. § 1332(d)(11)(B)(I). Since we have concluded that this case was properly removed

> under CAFA's "mass action" provision, we need not address whether this lawsuit could, following further proceedings on remand, properly proceed as a class action under CAFA. We leave to the district judge's capable hands the manner by which the individual policyholders are to be added to this action.

*Id.*  The same result would apply here if the State's claims were severed from the putative class action.  Because the purported assignments are only partial, the policyholders would remain real parties in interest, whether named in the severed action or not.  *Road Home*, 524 F.3d at 706 ("as partial assignees and assignors, both the State and the citizens are likely real parties in interest"); *Grassi*, 894 F.2d at 185 (explaining that, when there is a partial assignment, "both the transferor and transferee are real parties in interest").  With 155,000 Road Home grant recipients having an interest in the severed case, it would easily meet the requirements for a "mass action" under CAFA, just as those requirements were easily satisfied in *Caldwell*.  Thus, the most efficient means of resolving this case is to proceed with Defendants' Motion to Dismiss and, if the case is not dismissed in its entirety, to deny the Motion to Sever.

## CONCLUSION

For all the foregoing reasons, the State's Motion to Sever should be denied in all respects.

Respectfully submitted,

*/s/ Wayne J. Lee*
Wayne J. Lee, 7916
wlee@stonepigman.com
Stephen G. Bullock, 3648
sbullock@stonepigman.com
Mary L. Dumestre, 18873
mdumestre@stonepigman.com
Andrea L. Fannin, 26280
afannin@stonepigman.com
          Of
STONE PIGMAN WALTHER
   WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana  70130
Telephone:  (504) 581-3200

Facsimile:  (504) 581-3361

And

Charles L. Chassaignac IV, 20746
 cchassaignac@phjlaw.com
Of
PORTEOUS, HAINKEL & JOHNSON, L.L.P.
343 Third Street, Suite 202
Baton Rouge, Louisiana  70801
Telephone:  (225)383-8900
Facsimile:  (225) 383-7900
*Attorneys for State Farm Fire and Casualty*
*Company and State Farm General Insurance*
*Company*

And

/s/ Maura Z. Pelleteri
_____
Maura Z. Pelleteri, 8463
Amy S. Malish, 28992
Of
KREBS, FARLEY & PELLETERI, L.L.C.
Texaco, Center, Suite 2500
400 Poydras Street
New Orleans, Louisiana  70130
Telephone:  (504) 299-3570
Facsimile: (504) 299-3582
*Attorneys for Aegis Security Insurance Company*

And

/s/ Howard B. Kaplan
_____
Howard B. Kaplan, 14414
Of
BERNARD CASSISA ELLIOTT & DAVIS
1615 Metairie Road
P.O. Box 55490
Metairie, Louisiana  70055-5490
Telephone:  (504) 834-2612
*Attorneys for Lafayette Insurance Company, United*
*Fire and Casualty Company and United Fire and*
*Indemnity Company*

And

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
                    Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701
*Attorneys for America First Insurance Company,*
*Liberty Mutual Fire Insurance Company, and*
*Liberty Mutual Insurance Company*

And

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
                    Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701
*Attorneys for Metlife, Inc., Economy Premier*
*Assurance Company, Metropolitan Casualty*
*Insurance Company, and Metropolitan Property &*
*Casualty Insurance Company*

And

*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
                    Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

And

Christopher W. Martin,
Texas Bar No. 13057620
Martin R. Sadler,
Texas Bar No. 00788842
          Of
MARTIN, DISIERE, JEFFERSON &
  WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas  77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101
*Attorneys for United Services Automobile*
*Association, also separately named by plaintiffs as*
*USAA, USAA Casualty Insurance Company and*
*USAA General Indemnity Company*


And


*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
          Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

Of Counsel:
Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
          Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000
*Attorneys for The Hanover Insurance Company,*
*The Hanover American Insurance Company, and*
*Massachusetts Bay Insurance Company*


And

*/s/ Deborah B. Rouen*
Deborah B. Rouen, 2084
Chris A. D'Amour, 26252
Of
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, Louisiana 70139
Telephone: (504) 581-3234
Facsimile: (504) 566-0210
*Attorneys for Union National Fire Insurance Company*

And

/s/ *Dominic J. Ovella*
Dominic J. Ovella, 15030
Anne E. Medo, 24556
Sean P. Mount, 27584
Of
HAILEY, MCNAMARA, HALL,
LARMANN & PAPALE, L.L.P.
One Galleria Boulevard, Suite 1400
P. O. Box 8288
Metairie, Louisiana 70011-8288
Telephone: (504) 836-6500
*Attorneys for Fidelity and Deposit Company of Maryland, Empire Fire and Marine Insurance Company, Empire Indemnity Insurance Company, Centre Insurance Company, ZC Sterling Insurance Agency, Inc., and ZC Sterling Corporation*

And

*/s/ Judy Y. Barrasso*
Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
Of
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, LLC
LL&E Tower
909 Poydras Street, Suite 1800
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (5040 589-9701

And

Of Counsel
Richard L. Fenton
Steven M. Levy
Anthony T. Eliseuson
Sonnenschein Nath & Rosenthal LLP
7800 Sears Tower
Chicago IL 60606
Telephone:  (312) 876-8000
*Attorneys for Allstate Insurance Company, Allstate Indemnity Company, Encompass Insurance Company, Encompass Insurance Company of America, and Encompass Property and Casualty Company*

And

*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
            Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

And

Of Counsel:
Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
            Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000
*Attorneys for Horace Mann Insurance Company, Teachers Insurance Company, and Horace Mann Property & Casualty Insurance Company*

And

*/s/ Alan J. Yacoubian*
Alan J. Yacoubian, 17213
Neal J. Favret, 24412
Rachel P. Catalanotto, 31095
    Of
JOHNSON, JOHNSON, BARRIOS &
 YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone:  (504) 528-3001
*Attorneys for Auto Club Family Insurance Company*

And

*/s/ Neil C. Abramson*
Neil C. Abramson, 21436
Nora B. Bilbro, 22955
Jacqueline M. Brettner, 30412
    Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

And

Marshall M. Redmon, 18398
    Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197
*Attorneys for Homesite Insurance Company*

And

31

*/s/ Harry Rosenberg*

Harry Rosenberg, 11465
Jacqueline M. Brettner, 30412
        Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
*Attorneys for Fidelity National Insurance Company
and Fidelity National Property and Casualty
Insurance Company*

And

*/s/ Marshall M. Redmon*

Marshall M. Redmon, 18398
        Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

And

Amy R. Sabrin
        Of
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Avenue, NW
Washington, DC  20005
Telephone:  (202) 371-7000
Facsimile:  (202) 393-5760
*Attorneys for Farmers Insurance Exchange,
Foremost Insurance Company, Foremost Property
and Casualty Company, and Foremost Signature
Insurance Company*

And

*/s/ Neil C. Abramson*
Neil C. Abramson, 21436
Jacqueline M. Brettner, 30412
                Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
*Attorneys for American Manufacturers Mutual*
*Insurance Company, Lumbermens Mutual Casualty*
*Company, Merastar Insurance Company, Unitrin*
*Preferred Insurance Company, Unitrin Auto and*
*Home Insurance Company, Trinity Universal*
*Insurance Company, and Trinity Universal*
*Insurance Company of Kansas, Inc.*

And

*/s/ Ralph S. Hubbard*
Ralph S. Hubbard, III, 7040
Seth A. Schmeeckle, 27076
                Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

And

Stephen E. Goldman
Wystan M. Ackerman
                Of
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut  06103-3597
Telephone:  (860) 275-8200
Facsimile:  (860) 275-8299

*Attorneys for The Standard Fire Insurance Company, "St. Paul" (a non-existent entity), "St. Paul Travelers Insurance Company" (a non-existent entity), St. Paul Fire & Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, St. Paul Protective Insurance Company, St. Paul Surplus Lines Insurance Company, Travelers Casualty Insurance Company of America, Travelers Casualty and Surety Company, Travelers Home & Marine Insurance Company, The Travelers Indemnity Company, The Travelers Indemnity Company of America, The Travelers Indemnity Company of Connecticut, Travelers Insurance Company (a non-existent entity), Travelers Property Casualty Company of America, Travelers Property Casualty Insurance Company, The Automobile Insurance Company of Hartford, Connecticut, Hartford Accident & Indemnity Company, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, Hartford Insurance Company of the Midwest, Hartford Insurance Company of the Southeast, "Hartford Insurance Group" (a non-existent entity), Hartford Underwriters Insurance Company, Property and Casualty Insurance Company of Hartford, and Twin City Fire Insurance Company*

And

/s/ Christopher R. Pennison
Jay M. Lonero, 20642
Christopher R. Pennison, 22584
Angie Arceneaux Akers, 26786
        Of
LARZELERE PICOU WELLS SIMPSON
  LONERO, LLC
Suite 1100 - Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA  70002
Telephone:  (504) 834-6500
Fax:  (504) 834-6565
*Attorneys for Republic Fire and Casualty Insurance Company,  American National Property and Casualty Company, American National General Insurance Company, and ANPAC Louisiana*

*Insurance Company*

And

*/s/ Gerard Wimberly, Jr.*
GERARD E. WIMBERLY, JR. (#13584) (T.A.)
ANTHONY ROLLO ( # 01133)
DANIEL T. PLUNKETT (# 21822)
McGlinchey Stafford, PLLC
601 Poydras Street, 12th Floor
New Orleans, LA 70130
Telephone: (504) 586-1200
Facsimile: (504) 596-0377

STEPHANIE G. JOHN (# 25111)
1001 McKinney St. Suite 1500
Houston, TX 77002
Telephone: (713) 520-1900
Fax: (713) 520-1025
*ATTORNEYS FOR BALBOA INSURANCE*
*COMPANY ANDMERITPLAN INSURANCE*
*COMPANY*

And

*/s/ John E. Unsworth*
JOHN E. UNSWORTH, JR., #09477
W. GLENN BURNS, #3698
LAUREN E. BRISBI, #29778
HAILEY, McNAMARA, HALL,
LARMANN & PAPALE, L.L.P.
One Galleria Blvd, Suite 1400
Post Office Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500
*Counsel for Defendant,*
*Clarendon National Insurance Company*

And

*/s/ Robert I. Siegel*
Robert I. Siegel, La. Bar No. 12063.
Gieger, Laborde & Laperouse, LLC
One Shell Square
701 Poydras St., Suite 4800
New Orleans, Louisiana 70139-4800
(504) 654-1307

And

Richard J. Doren
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
(213) 229-7038

Daniel W. Nelson
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
(202) 955-8500

*Attorneys for Lexington Insurance Company,
Audubon Insurance Company, and AIU Insurance
Company*

And

*/s/ Laurie L. DeArmond*
Patrick D. DeRouen
Laurie L. DeArmond
Porteous, Hainkel & Johnson
704 Carondelet Street
New Orleans, LA 70130
504-581-3838
*Counsel for Armed Forces Insurance*

*/s/ Andrew L. Plauche, Jr.*
ANDREW L. PLAUCHÉ, JR. (11023)
JAMES K. ORDENEAUX (28179)
PLAUCHÉ MASELLI PARKERSON, L.L.P.
701 Poydras Street, Suite 3800
New Orleans, LA 70139-3800
Office: 504.582.1142; Fax: 504.582.1172

And

H. ALSTON JOHNSON III (7293)
PHELPS DUNBAR, L.L.P.
445 North Blvd., Suite 701
Baton Rouge, LA 70802
Office: 225.346.0285; Fax: 225.381.9197

*Attorneys for Louisiana Farm Bureau Mutual
Insurance Company, Louisiana Farm Bureau
Casualty Insurance Company and Southern Farm
Bureau Casualty Insurance Company*

And

*/s/ Gordon P. Serou, Jr.*
Gordon P. Serou, Jr., 14432
     Of
LAW OFFICES OF
GORDON P. SEROU, JR., LLC
650 Poydras Street, Suite 1420
New Orleans, Louisiana 70130
Telephone: (504) 299-3421

And

Walter D. Willson
     Of
WELLS MARBLE & HURST, PLLC
300 Concourse Blvd., Suite 200
Ridgeland, Mississippi 39157
Telephone:  (601) 605-6944
*Attorneys for American Bankers Insurance
Company of Florida, American Security Insurance
Company, American Reliable Insurance Company,
Standard Guaranty Insurance Company, Voyager
Indemnity Insurance Company, and Voyager
Property and Casualty Insurance Company*

And

*/s/ John R. Walker*
John R. Walker, 02165
     Of
ALLEN & GOOCH
3900 N. Causeway Boulevard
Suite 1450
Metairie, Louisiana  70002
Telephone:  (504) 836-5210
*Attorneys for American Summit Insurance
Company and National Lloyds Insurance
Company*

And

*/s/ Julia A. Dietz*

Sidney W. Degan, III (#4804)
Julia A. Dietz (#18866)
Maryann G. Hoskins (#20869)
Degan, Blanchard & Nash
400 Poydras St., Suite 2600
New Orleans, LA  70130
(504) 529-3333 phone
(504) 529-3337 fax
*Attorneys for National Security Fire*
* and Casualty Company and Omega*
*One Insurance Company*

And

*/s/   Matthew A. Woolf*

Matthew A. Woolf, 27146
mwoolf@bakerdonelson.com
        Of
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000
*Attorneys for G.U.I.C. Insurance Company,*
*American Family Home Insurance Company,*
*American Modern Home Insurance Company,*
*American Southern Home Insurance Company, and*
*American Western Home Insurance Company*
And

*/s/ Nancy B. Gilbert*

John P. Wolff, III, Bar #14504
Nancy B. Gilbert, Bar #23095
Christopher K. Jones #28101
**KEOGH, COX & WILSON, LTD.**
701 Main Street (P. O. Box 1151)
Baton Rouge, Louisiana  70821
Telephone:  225.383.3796
Facsimile: 225.343.9612
*Attorneys for Amica Mutual Insurance Co.*

And

*/s/ Matthew J. Lindsay*
RICHARD E. KING (#25128)
DAVID M. MORAGAS (#29633)
MATTHEW J. LINDSAY (#30599)
GALLOWAY, JOHNSON, TOMPKINS,
        BURR & SMITH
701 Poydras Street, Suite 4040
New Orleans, Louisiana  70139
Telephone: (504) 525-6802
Facsimile:  (504) 525-2456
*Counsel for Defendants,*
*Assurance Company of America, Zurich American*
*Insurance Company, and Zurich North America*

And

*/s/ Thomas R. Blum*
Thomas R. Blum, 3170
M. Davis Ready, 24616
Simon, Peragine, Smith & Redfearn, L.L.P.
30th Floor - Energy Centre
1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 569 - 2030
Facsimile: (504) 569 - 2999
*Attorneys for Shelter Mutual Insurance Company*
*and Shelter General Insurance Company*

And

*/s/ Steven W. Usdin*
Steven W. Usdin, 12986
Stephen L. Miles, 31263
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  504/589-9700
*Attorney for Chubb Indemnity Insurance Company,*
*Chubb Custom Insurance Company, Chubb*
*National Insurance Company, Federal Insurance*
*Company, Great Northern Insurance Company, (for*
*itself and as erroneously sued as Chubb Insurance*
*Group, a non-entity, incapable of being sued), and*
*Vigilant Insurance Company*

39

And

*/s/Kelly Cambre Bogart*
KELLY CAMBRE BOGART (#22985)
LAWRENCE J. DUPLASS (#5199)
C. MICHAEL PFISTER (#14317)
JAIME M. CAMBRE (#29116)
DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK
Three Lakeway Center, Suite 2900
3838 N. Causeway Boulevard
Metairie, LA 70002
Tel.:    (504) 832-3700
kbogart@duplass.com
lduplass@duplass.com
mpfister@duplass.com
jcambre@duplass.com
*Attorneys for Fireman's Fund Insurance*
*Company, and The American*
*Insurance Company*

And

*/s/ Jacqueline M. Brettner*
Neil C. Abramson (Bar #21436)
Jacqueline M. Brettner (Bar #30412)
**PHELPS DUNBAR LLP**
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130

And

Marshall M. Redmon (Bar #18398)
445 North Boulevard, Suite 701
Baton Rouge, LA  70802
Telephone: (225) 346-0285
Fax: (225) 381-9197
*Attorneys for Defendants*
*The Involved Lloyd's Underwriters*

And

40

*/s/   Harry Rosenberg*
Harry Rosenberg (Bar #11465)
Jay R. Sever (Bar #23935)
Jacqueline M. Brettner (Bar #30412)
Canal Place
**PHELPS DUNBAR LLP**
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130
*Attorneys for Defendant Scottsdale Insurance*
*Company*

And

*/s/ Edward J. Lilly*
EDWARD J. LILLY, LSBA #8571
CRULL, CASTAING &  LILLY
601 Poydras Street, Suite 2323
New Orleans, LA 70130
Tel. (504)581-7700
Fax (504)581-5523
*Attorneys for Southwest Business Corporation*

And

/s/ Thomas H. Huval
Thomas H. Huval (Bar #21725)
Huval Veazey Felder & Aertker, L.L.C.
532 East Boston Street
Covington, LA 70433
(985) 809-3800 (telephone)
(985) 809-3801 (facsimile)
*Counsel for Security Plan Fire Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants' Memorandum in Opposition to

the State's Motion to Sever has been served upon all counsel of record by electronic notice from

the Court's CM/EC Filing System, this 19th day of December, 2008.

*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle