## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

In re: KATRINA CANAL BREACHES
     CONSOLIDATED LITIGATION

PERTAINS TO: MRGO, *Robinson* (06-2268)

CIVIL ACTION
NO. 05-4182 "K" (2)
JUDGE DUVAL
MAG. WILKINSON

### BRIEF OF *AMICI CURIAE* THE AT&T ENTITIES IN OPPOSITION TO DEFENDANT UNITED STATES' RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

{N1914336.1}

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

STATEMENT OF INTEREST............................................................................................. 1

BACKGROUND .................................................................................................................. 2

ARGUMENT........................................................................................................................ 5

      A.     The Corps' Negligence in Connection with the MRGO Is Not
           Protected by the Discretionary-Function Exception ............................................... 8

      B.     The Corps' Negligence in Connection with the MRGO Is Not
           Protected by the Due-Care Exception.................................................................... 20

CONCLUSION.................................................................................................................... 23

## TABLE OF AUTHORITIES

Page

### CASES

*Andrade v. Chojnacki*, 338 F.3d 448 (5th Cir. 2003) .................................................15

*Aslakson v. United States*, 790 F.2d 688 (8th Cir. 1986)..........................................9, 12

*Ayala v. United States*, 980 F.2d 1342 (10th Cir. 1992)................................................10

*Baldassaro v. United States*, 64 F.3d 206 (5th Cir. 1995)........................................14, 17

*Bear Medicine v. United States ex rel. Secretary of Interior*,
   241 F.3d 1208 (9th Cir. 2001) ............................................................5, 7, 10, 16

*Berkovitz v. United States*, 486 U.S. 531 (1988) ...........................................8, 9, 10, 11

*Buchanan v. United States*, 915 F.2d 969 (5th Cir. 1990).......................................20, 23

*Cazales v. Lecon, Inc.*, 994 F. Supp. 765 (S.D. Tex. 1997)......................................5, 13

*City Nat'l Bank v. United States*, 907 F.2d 536 (5th Cir. 1990) .....................................13

*Coleman v. School Bd. of Richland Parish*, 418 F.3d 511 (5th Cir. 2005).............................10, 11

*Cope v. Scott*, 45 F.3d 445 (D.C. Cir. 1995)...................................................9, 13, 15, 18

*Creppel v. U.S. Army Corps of Eng'rs*, 670 F.2d 564 (5th Cir. 1982) ...................................21, 22

*Doe v. Holy See*, 434 F. Supp. 2d 925 (D. Or. 2006)......................................................12

*Drake Towing Co. v. Meisner Marine Constr. Co.*, 765 F.2d 1060
   (11th Cir. 1985)...........................................................................................9

*FEMA Trailer Formaldehyde Prods. Liab. Litig. (In re)*, --- F. Supp. 2d ----,
   2008 WL 4534377 (E.D. La. Oct. 3, 2008) .................................................9, 11

*Glacier Bay (In re)*, 71 F.3d 1447 (9th Cir. 1995)........................................................11

*Gotha v. United States*, 115 F.3d 176 (3d Cir. 1997) ...................................................17

*Hayes v. United States*, 539 F. Supp. 2d 393 (D.D.C. 2008)............................................9

*Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018 (9th Cir. 1989) .................................15

*National Union Fire Ins. v. United States*, 115 F.3d 1415 (9th Cir. 1997) ...................................19

*O'Toole v. United States*, 295 F.3d 1029 (9th Cir. 2002)..........................................................15, 18

*Peavy v. WFAA-TV, Inc.*, 221 F.3d 158 (5th Cir. 2000) ....................................................11

*Stiward v. United States*, 551 F. Supp. 2d 478 (E.D. La. 2008) ......................................14

*Terbush v. United States*, 516 F.3d 1125 (9th Cir. 2008) ............................................. 15-16, 18, 19

*Theriot v. United States*, 245 F.3d 388 (5th Cir. 1998) ....................................................14

*United States v. Gaubert*, 499 U.S. 315 (1991) ...............................................................14

*Welch v. United States*, 409 F.3d 646 (4th Cir. 2005) ....................................................23

*Western Greenhouses v. United States*, 878 F. Supp. 917 (N.D. Tex. 1995) .................................15

*Whisnant v. United States*, 400 F.3d 1177 (9th Cir. 2005) .............................................9, 12, 18, 19

*White v. ARCO/Polymers, Inc.*, 720 F.2d 1391 (5th Cir. 1983).......................................13

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 2675(a) ...............................................................................................................1

28 U.S.C. § 2680(a) ........................................................................................................2, 4, 5

28 C.F.R. § 14.1 *et seq.*.........................................................................................................1

Fed. R. Civ. P. 56(c) ......................................................................................................10, 21

## OTHER AUTHORITIES

Compl., No. 08-5024 (E.D. La. filed Nov. 26, 2008)..............................................1, 3, 6, 9, 14, 20

USACE, N.O. Dist., *Mississippi River – Gulf Outlet, Louisiana*, Design
    Memorandum No. 1-B (rev. May 1959).........................................................................3, 22

Ivor L. van Heerden et al., Center for Study of Public Health Impacts of
    Hurricanes, LSU, *Initial Assessment of the New Orleans Flooding
    Event During the Passage of Hurricane Katrina* (2005)....................................................11

Ivor Ll. van Heerden, Ph.D., et al., *Team Louisiana: The Failure of the
    New Orleans Levee System During Hurricane Katrina* (Dec. 2006) ................................11

10A Charles Alan Wright et al., *Federal Practice and Procedure*
    (3d ed. 1998).........................................................................................................................23

## STATEMENT OF INTEREST

BellSouth Telecommunications, Inc., BellSouth Advertising & Publishing Corporation, BellSouth Long Distance, Inc., Gateway Rivers Insurance Company f/k/a Campanile Assurance Line Limited, New Cingular Wireless PCS, LLC, Acadiana Cellular General Partnership, Houma-Thibodaux Cellular Partnership, Lafayette MSA Limited Partnership, Louisiana RSA No. 7 Cellular General Partnership, and Louisiana RSA No. 8 Limited Partnership (collectively, the "AT&T entities") provide and/or own, among other things, communications, telecommunications, and Internet services and infrastructure throughout the United States, including in and around the Greater New Orleans metropolitan area. Many of the AT&T entities owned properties and other assets and/or provided services in the Greater New Orleans metropolitan area on or about August 29, 2005, when New Orleans suffered catastrophic losses as a result of the negligence of the United States Army Corps of Engineers ("Corps").

The AT&T entities' interests may be directly affected by this proceeding. In connection with Hurricane Katrina, and as a result of the negligence of the Corps with respect to, among other things, the Mississippi River Gulf Outlet ("MRGO"), the AT&T entities have suffered, and some will continue to suffer, substantial damages, including, but not limited to, damages to property and lost business and revenues. Accordingly, pursuant to 28 U.S.C. § 2675(a) and 28 C.F.R. § 14.1 *et seq.*, the AT&T entities filed Form 95s with the Corps in August 2007, the last of which was filed on August 28, 2007. On November 26, 2008, the AT&T entities filed a civil action in the United States District Court for the Eastern District of Louisiana alleging, among others things, that the Corps' negligence with respect to the MRGO caused the AT&T entities substantial damages. *See* Compl., No. 08-5024 (E.D. La. filed Nov. 26, 2008) ("AT&T Compl.").

1

The AT&T entities previously filed an unopposed motion to participate as *amici* in opposition to the United States' Renewed Motion To Dismiss or, in the Alternative, for Summary Judgment on Flood Control Act immunity grounds, which this Court granted. *See* Doc. Nos. 11009, 11010. Both plaintiffs and the United States have consented to the AT&T entities' participation as *amici* here.

## **BACKGROUND**

This Court is familiar with the history of the MRGO, as well as allegations and evidence of the Corps' negligence in connection with the MRGO, and the AT&T entities will not repeat that history, allegations, or evidence in full here. *See, e.g., In re Katrina Canal Breaches Consol. Litig.*, 471 F. Supp. 2d 684, 686 n.1 (E.D. La. 2007) ("*Motion To Dismiss Decision*"); *In re Katrina Canal Breaches Consol. Litig.*, 577 F. Supp. 2d 802, 805-16 (E.D. La. 2008) ("*Flood Control Act Summary Judgment Decision*"). A few crucial facts, however, bear emphasis because they underscore the flawed position that the United States has taken in moving for summary judgment under 28 U.S.C. § 2680(a) and demonstrate why summary judgment should be denied.

*First*, since Congress's authorization of the MRGO in 1956, the Corps has consistently operated under erroneous scientific and technical understandings regarding the dangers that the MRGO posed to New Orleans. Although intended to aid navigation by allowing ships to access the Greater New Orleans metropolitan area more directly, the MRGO also created a pathway for storm-driven surges to hit at the heart of New Orleans. Nonetheless, in constructing, operating, maintaining, and repairing the MRGO, the Corps has labored under the mistaken scientific belief that the MRGO would *not* increase storm-surge risks. In a 1958 Design Memorandum, for example, the Corps stated that, "[f]or major storms and hurricanes when tides roll across the marsh many feet deep, as well as through the open water connections, the effect of the new

2

channel *will be of no consequence.*"  USACE, N.O. Dist., *Mississippi River – Gulf Outlet, Louisiana*, Design Memorandum No. 1-B, at 3 (rev. May 1959) ("Design Mem. No. 1-B") (emphasis added); *see Flood Control Act Summary Judgment Decision*, 577 F. Supp. 2d at 808 (citing this report).  Indeed, this Court has already concluded that, based on the Corps' scientific judgment that the MRGO would have "negligible" storm-surge effects, "the MRGO was constructed without any consideration of [the MRGO] causing any 'surge.' " *Flood Control Act Summary Judgment Decision*, 577 F. Supp. 2d at 809.  To this day, the Corps continues to maintain that the MRGO had " 'little influence' " on the storm surge during Hurricane Katrina, although that conclusion is "not universally accepted and hotly contested." *Id.*  These scientific and technical judgments were, as the record reflects, far removed from policy considerations.

*Second*, since at least 1965, the Corps has been on notice of scientific disagreement with its assessment of the hazards its navigation project created for the residents of, and businesses in, New Orleans.  *See, e.g.*, Pls.' Mem. of Points & Authorities in Supp. of Mot. for Summ. Adjudication at 8-11 (filed Jan. 11, 2008) (Doc. No. 10337-2); Pls.' Statement of Uncontested Facts in Supp. of Mot. for Partial Summ. J. Concerning the Discretionary Function Exception ¶ 41 (filed Nov. 20, 2008) (Doc. No. 16510-4) ("Pls.' Statement of Uncontested Facts"); *see also* AT&T Compl. ¶¶ 40-44.  Prior to Hurricane Katrina, for example, the MRGO was described by a Louisiana State University study as a "superhighway" for storm surges and was described by a hurricane scientist as the "Crescent City's Trojan Horse." *See, e.g.*, First Am. Compl. ¶ 71, at 31 (filed June 13, 2008) (Doc. No. 13529) ("*Robinson* Am. Compl.").

*Third*, the Corps' erroneous scientific and technical understanding of the effects of the MRGO dominated the Corps' decision-making with respect to the design, construction, operation, maintenance, and repair of the channel.  *See* AT&T Compl. ¶¶ 102-109.  The United

States has, in fact, acknowledged in this litigation that it took no steps to counter the dangers the MRGO created because it believed the MRGO did not create any dangers: *"Because* [the Corps] thought that the new channel [would] be of *no consequence* in affecting water surface elevations for major storms and hurricanes, [the MRGO] was constructed with no barriers or other means to slow down storm-driven surges." Def. United States' Mem. in Supp. of Mot. To Dismiss at 12 (filed July 26, 2006) (Doc. No. 822-2) ("July 2006 U.S. Mem.") (citations and internal quotation marks omitted; emphases added); *see also Flood Control Act Summary Judgment Decision,* 577 F. Supp. 2d at 815 (quoting statements by United States at oral argument that the Corps concluded "that during major hurricane events, the MRGO played no role" and, *"for that reason,* the Corps saw no reason to take any steps" to remedy the dangers of the MRGO) (emphasis added). In other words, the Corps' decisions not to address the dangers created by the MRGO were based predominately, if not entirely, on the Corps' erroneous scientific and technical assessment of the risks posed by the MRGO. As a direct and foreseeable result of that negligence, residents and businesses in New Orleans, including the AT&T entities, suffered catastrophic damages on and after August 29, 2005.

The United States nonetheless has now moved to dismiss or, in the alternative, for summary judgment under 28 U.S.C. § 2680(a). The United States insists that, even if the Corps did err in assessing the risks of the MRGO and, moreover, that, even if the Corps' negligence led to catastrophic damages to New Orleans, the United States is entitled to full immunity under the discretionary-function and due-care exceptions to the Federal Tort Claims Act ("FTCA").

4

## **ARGUMENT**

The United States takes an extraordinary position in this litigation. In constructing, operating, maintaining, and repairing the MRGO, the Corps created substantial dangers for the city of New Orleans, and then, based on its erroneous scientific and technical assessments, negligently failed to take any actions to counter or remedy those dangers. The results for New Orleans were catastrophic. Yet the United States argues that the Corps is entirely immune from suit under the discretionary-function and due-care exceptions of the FTCA, 28 U.S.C. § 2680(a).

The United States — consistent with its expansive theories regarding the scope of Flood Control Act immunity and its previous position regarding the discretionary-function exception — has once again embraced an "overly broad" construction of a statute in an attempt to avoid defending on the merits the Corps' conduct with respect to the MRGO. *Motion To Dismiss Decision*, 471 F. Supp. 2d at 701. "The burden of proving the applicability of the discretionary function exception is on the United States," *Bear Medicine v. United States ex rel. Secretary of Interior*, 241 F.3d 1208, 1213 (9th Cir. 2001); *see also Cazales v. Lecon, Inc.*, 994 F. Supp. 765, 771 (S.D. Tex. 1997) ("The United States . . . bears the ultimate burden of proving that the discretionary function exception applies in a particular case."). But the United States, in moving for summary judgment, relies on little more than conclusory assertions that the Corps' decisions regarding the MRGO were grounded in policy judgments purportedly protected by the discretionary-function exception.

The record tells a different story. Plaintiffs have argued that the Corps' conduct in connection with the MRGO does not fit within the discretionary-function exception because, among other things, relevant decisions of the Corps involved not policy judgments but, rather, "technical, engineering and professional judgments about safety." Pls.' Mem. of Points & Authorities in Supp. of Mot. for Partial Summ. J. on Discretionary Function Exemption at 2

5

(filed Nov. 20, 2008) (Doc. No. 16510-2) ("Pls.' Mem."). That is well-supported by the evidence. As this Court has found, from the initial design of the MRGO to the present, the Corps — despite substantial scientific evidence to the contrary — has insisted that the MRGO had no possible effect on major hurricanes with respect to the Greater New Orleans metropolitan area. *See supra* pp. 3-4; AT&T Compl. ¶¶ 102-109. The Corps' scientific assessment of the dangers posed by the MRGO was deeply flawed; based on that mistaken analysis, moreover, the Corps took no actions to counter the MRGO's threat.

The United States has conceded in this litigation that its decisions not to remedy the dangers created by the MRGO were tantamount to scientific and technical conclusions that the MRGO did not create any such dangers. The United States has explained that, "*[b]ecause* [the Corps] thought that the new channel [would] be of *no consequence* in affecting water surface elevations for major storms and hurricanes, [the MRGO] was constructed with no barriers or other means to slow down storm-driven surges." July 2006 U.S. Mem. at 12 (citations and internal quotation marks omitted; emphases added). That explanation fundamentally contradicts positions the United States takes now — for example, its newly minted story that the Corps did not remedy the dangers of the MRGO because of phantom budgetary and legal constraints that made it impractical to have done so, not because the Corps had concluded that the MRGO posed no such dangers. The shifting and inconsistent positions of the United States drive home the point that there are material issues of fact in dispute that make summary judgment in favor of the United States unwarranted.

The United States seeks to avoid the record by asking this Court to ignore entirely the *actual* nature of the Corps' decisions and instead to focus upon policy considerations the Corps *might* have taken into account in deciding to do nothing about the MRGO's dangers. This

6

extreme position is untenable: the record establishes that the Corps' key decisions not to remedy the MRGO's dangers were founded predominately, if not entirely, upon the Corps' flawed scientific and technical conclusions. Consistent with settled precedent, such scientific and technical judgments are not protected by the discretionary-function exception. And, as explained more fully below, to allow the Corps to escape any liability for such negligence based on counterfactual descriptions of its decisions would eviscerate the FTCA — an important statute that "serves to enhance government accountability, eliminate the need for private bills seeking individual relief, and allocate loss across the federal taxpaying public." *Bear Medicine*, 241 F.3d at 1213. It is difficult to imagine a case in which government accountability for wrongs is more needed than here. The United States is therefore not entitled to summary judgment under the discretionary-function exception.

Nor does the FTCA's due-care exception foreclose plaintiffs' claims. The due-care exception precludes plaintiffs from using the FTCA to raise legal challenges to *statutes* in the guise of a challenge to government employees' actions implementing those statutes. Here, plaintiffs are not challenging the decision of any legislative body: they are challenging the negligent *manner* in which the Corps designed, constructed, operated, maintained, and repaired the MRGO. The United States maintains that the Corps was bound by the MRGO authorizing statute *not* to implement any measures to address the dangers the MRGO posed. But that position is impossible to square with the United States' previous explanation for why the Corps did not implement any remedial measures to counter the dangers from the MRGO. Moreover, as the United States has previously argued, the Corps was *not* bound to follow precisely the letter of the authorizing legislation in designing, constructing, operating, maintaining, and repairing the MRGO, and the United States points to no legal authority supporting the view that the Corps was

7

precluded from taking even basic steps to counter the threats from the dangerous hurricane highway that it had directed straight towards New Orleans. For those reasons, the United States is not entitled to summary judgment under the due-care exception.

## A. The Corps' Negligence in Connection with the MRGO Is Not Protected by the Discretionary-Function Exception

1. Application of the FTCA's discretionary-function exception involves two steps. "In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). This step requires analysis of the statutes and regulations governing an employee's conduct to determine if the employee is governed by mandatory rather than by discretionary duties. *See id.; see also* Pls.' Mem. at 2-25 (arguing summary judgment should be rendered against the United States on the first step of the inquiry); Amicus Curiae Br. of the State of Louisiana et al. Concerning the National Environmental Policy Act in Supp. of Pls.' Mot. for Partial Summ. Adjudication on Discretionary Function at 15-24 (filed Nov. 20, 2008) (Doc. No. 16507-3) ("Louisiana et al. Amicus Br.") (same).

Establishing that a decision is a matter of choice, however, is insufficient to bring a decision within the discretionary-function exception, as the United States acknowledges, *see* Def. United States' Mem. of Law in Supp. of Renewed Mot. To Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summ. J. at 15-16 (filed Nov. 20, 2008) (Doc. No. 16511-2) ("U.S. Mem."): the government must also establish that the "judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. Because the purpose of the discretionary-function exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy," "[t]he exception, properly construed, . . . protects *only* governmental actions and

8

decisions based on considerations of public policy." *Id.* at 536-37 (internal quotation marks omitted; emphasis added).[1]

Under this step of the discretionary-function inquiry, "matters of scientific and professional judgment — particularly judgments concerning safety — are rarely considered to be susceptible to social, economic, or political policy." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005); *see In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, --- F. Supp. 2d ----, 2008 WL 4534377, at \*22 (E.D. La. Oct. 3, 2008) (following *Whisnant* for the principle that "matters of scientific and professional judgment . . . are rarely considered to be susceptible to social, economic, or political policy") (internal quotation marks omitted). "'For the government to show merely that some choice was involved in the decision-making process is insufficient to activate the discretionary function exception. The balancing of policy considerations is a necessary prerequisite.'" *Aslakson v. United States*, 790 F.2d 688, 693 (8th Cir. 1986) (quoting *Drake Towing Co. v. Meisner Marine Constr. Co.*, 765 F.2d 1060, 1064 (11th Cir. 1985)). What is more, "[t]he question is not whether there is any discretion at all, but whether the discretion is *grounded* in the policy of the regulatory regime. The mere association of a decision with regulatory concerns is not enough; exempt decisions are those *fraught* with public policy considerations." *Cope v. Scott*, 45 F.3d 445, 449 (D.C. Cir. 1995) (citation, internal quotation marks, and ellipsis omitted; second emphasis added); *see also Hayes v. United States*, 539 F. Supp. 2d 393, 402-03 (D.D.C. 2008) (applying *Cope* and concluding an "engineering judgment" was not protected by the discretionary-function exception).

---

[1] Plaintiffs and other *amici* have argued comprehensively and persuasively that the first step of the discretionary-function inquiry is not satisfied here and that summary judgment therefore should be granted in favor of plaintiffs. *See* Pls.' Mem. at 2-25; Louisiana et al. Amicus Br. at 15-24; *see also* AT&T Compl. ¶ 111 (alleging the Corps violated mandatory, non-discretionary duties). To avoid repetition, the AT&T entities' filing focuses in the alternative on the second step of the discretionary-function inquiry.

9

The Supreme Court's decision in *Berkovitz* is instructive. The Court there explained that an allegation that an agency made an "incorrect" "determination that [a vaccine] complied with regulatory standards" would not fit within the discretionary-function exception if the agency's compliance decision "involve[d] the application of objective scientific standards." 486 U.S. at 544-45. Based on the record before it, the Court could not determine the nature of the agency's decision and remanded the issue to the lower court. *See id.* at 545. *Berkovitz* thus establishes that governmental decisions involving the application of scientific and technical principles are not decisions that fall within the scope of the discretionary-function exception. *See Ayala v. United States*, 980 F.2d 1342, 1349-51 (10th Cir. 1992) (applying *Berkovitz* and concluding that "incorrect and inadequate" technical advice was not discretionary because it involved "objective principles of electrical engineering") (internal quotation marks omitted); *Bear Medicine*, 241 F.3d at 1214 (under *Berkovitz*, "actions based on technical or scientific standards are not the kind of judgments meant to be protected from liability by the discretionary function exception because those actions do not involve a weighing of policy considerations").

**2.** A straightforward application of the above principles here makes clear that there are substantial disputes of material fact that render summary judgment in the United States' favor impossible on the second step of the discretionary-function inquiry. Summary judgment is appropriate only "if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 515 (5th Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). The party that moves for summary judgment, moreover, "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact," *id.* (internal quotation marks omitted), and the Court "view[s] all

10

evidence and reasonable inferences from the evidence in the light most favorable to the non-moving party," *id.* at 515-16. The "substantive law" "identif[ies] which facts are material" for purposes of summary judgment. *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 167 (5th Cir. 2000) (internal quotation marks omitted).

Plaintiffs have alleged, and there is substantial evidence that, the Corps made crucial scientific and technical misjudgments in failing to remedy the threats created by the MRGO. *See supra* pp. 2-4. In this case, as in *Berkovitz*, there is evidence that the Corps — "appl[ying] . . . objective scientific standards" — made an "incorrect" determination that the MRGO did not increase the hurricane risk to New Orleans. 486 U.S. at 544-45. A report by prominent hurricane scientists has concluded, for example, that "[t]he effect of these federally constructed and operated channels [*i.e.*, the MRGO and Gulf Intracoastal Waterway] on surge and waves has consistently been *underestimated* by the [Corps] from before Hurricane Betsy right through to the recent IPET report." Ivor Ll. van Heerden, Ph.D., et al., *Team Louisiana: The Failure of the New Orleans Levee System During Hurricane Katrina* 223 (Dec. 2006); *see also* Ivor L. van Heerden et al., Center for Study of Public Health Impacts of Hurricanes, LSU, *Initial Assessment of the New Orleans Flooding Event During the Passage of Hurricane Katrina* 4 (2005); *Flood Control Act Summary Judgment Decision*, 577 F. Supp. 2d at 809 (noting the issue of the MRGO's role in Hurricane Katrina is "hotly contested" and there is far from "universal[ ] accept[ance]" of the Corps' view). Such scientific and technical misjudgments are not protected by the discretionary-function exception. *See, e.g.*, *FEMA Trailer Litig.*, 2008 WL 4534377, at *22 ("FEMA's response to formaldehyde concerns involved decisions of professional and scientific judgment; it did not involve decisions of social, economic, or political policy."); *In re Glacier Bay*, 71 F.3d 1447, 1453 (9th Cir. 1995) (what was, at bottom, "a scientific hydrographic

11

judgment" was not protected discretionary decision even when "[a]n element of judgment is involved"); *Aslakson*, 790 F.2d at 693 ("[O]perational mismanagement in the maintenance of electrical transmission lines does not fall within the scope of the discretionary function exception.").[2]

Moreover, the Corps' decisions not to counter the dangers created by the MRGO were based not on policy judgments but predominately, if not entirely, upon its erroneous scientific and technical judgments. As explained above, the United States has conceded that the Corps' decisions turned on the Corps' scientific and technical understanding of the MRGO: it was "*[b]ecause* [the Corps] thought that the new channel [would] be of *no consequence* in affecting water surface elevations for major storms and hurricanes" that the MRGO "was constructed with no barriers or other means to slow down storm-driven surges." July 2006 U.S. Mem. at 12 (internal quotation marks omitted; emphases added). Moreover, as this Court has found, there is substantial evidence that the Corps' decisions with respect to the MRGO have long been driven by the Corps' scientific and technical conclusion that the MRGO created a "negligible" storm-surge risk. *See Flood Control Act Summary Judgment Decision*, 577 F. Supp. 2d at 807-09. As this Court has pointed out, counsel for the United States admitted at oral argument that the Corps "determined that the MRGO played no role in major hurricane events" and, "*for that reason*, the

---

[2] If the Corps *was* aware of the MRGO's risks and it did not act, then that decision is likewise not protected by the discretionary-function exception. *See, e.g., Doe v. Holy See*, 434 F. Supp. 2d 925, 955-56 (D. Or. 2006) (citing precedent for view that an agency that fails to ameliorate or warn of a known risk cannot avail itself of the discretionary-function exception). Under the discretionary-function exception, the Corps did not have discretion "to abdicate its responsibility" to remedy the dangers created by the MRGO, especially when its decision was based on erroneous scientific, "technical," and "professional judgments" regarding the existence of such dangers. *Whisnant*, 400 F.3d at 1185; *see id.* (claim that the "government negligently ignored health hazards that were called to its attention" "is not barred" by the discretionary-function exception).

Corps saw no reason" to take any steps to remedy the dangers of the MRGO. *Id.* at 815 (emphasis added).

In moving for summary judgment now, the United States appears to have changed course. Whereas, before, the Corps' failure to remedy the dangers created by the MRGO was explained by the Corps' scientific and technical belief that the "MRGO played no role in major hurricane events," the United States now argues that remedial actions like "[b]ank protection" and "surge barriers" "could serve very worthy ends" but that the Corps was somehow precluded from implementing such measures based on alleged budgetary concerns. U.S. Mem. at 39.

The United States' prior admission regarding the nature of the Corps' decisions should be binding here. *See, e.g.*, *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) (courts may "treat statements in briefs as binding judicial admissions of fact"); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983) ("factual assertions in pleadings and pretrial orders are considered to be judicial admissions conclusively binding"). The United States' shifting positions, at the least, suggest there is a dispute of fact with respect to the proper characterization of the Corps' decisions not to remedy the MRGO's dangers. Summary judgment on the fact-intensive and disputed issue of whether the Corps' decisions regarding the MRGO were fraught with policy considerations or were instead dominated by scientific and technical judgments would be improper. *See Motion To Dismiss Decision*, 471 F. Supp. 2d at 699 (finding there "are substantial questions of fact" regarding whether the Corps "exercis[ed] a policy choice" protected by the discretionary-function exception with respect to the MRGO); *see also Cope*, 45 F.3d at 449 (rejecting United States' view that the "faintest hint of policy concerns" renders a decision discretionary); *Cazales*, 994 F. Supp. at 771 ("The determination of

13

whether the discretionary function exception protects a governmental act or omission requires a particularized and fact-specific inquiry.") (internal quotation marks omitted).[3]

**3.** Recognizing the significant disputes of material fact on this issue, the United States seeks to avoid these questions by arguing that the focus of the discretionary-function exception is in the "abstract." According to the United States, "[i]f the nature of the challenged conduct reveals that a decision . . . *could* have involved a consideration of policy, then the exception applies." U.S. Mem. at 17. This line of argument is unavailing.

**a.** There is only a "presumption" that governmental actors afforded policy discretion by a statute or regulation actually exercised such policy discretion. *United States v. Gaubert*, 499 U.S. 315, 324 (1991). That presumption, however, may be overcome by *specific facts* about the actual bases for the decision of the governmental actors. *See id.* at 325; *see also id.* at 332-33 (reviewing plaintiffs' specific factual allegations to determine if there were allegations overcoming the presumption that "the discretionary acts performed by the [defendants]" were not susceptible to policy analysis). Therefore, courts in this circuit routinely have required that plaintiffs come forward with evidence to rebut the presumption.[4] That practice reflects the

---

[3] Indeed, this evidence suggests that the Corps' decisions with respect to wetlands, dredging, and other facets of the management of the MRGO were heavily influenced by the Corps' erroneous scientific and technical judgments regarding the channel, making summary judgment improper with respect to those decisions as well. *See* AT&T Compl. ¶¶ 104-110.

[4] *See Stiward v. United States*, 551 F. Supp. 2d 478, 497-98 (E.D. La. 2008) (finding second step of discretionary-function exception did not apply because no governmental employee actually "made a decision grounded in policy that the [ship] did not need insulin on board" and looking to "the only decision [that was] made" to determine the applicability of the exception; "[b]ecause no policy decision was ever made not to stock insulin . . . , the discretionary function exception does not apply"); *see also Theriot v. United States*, 245 F.3d 388, 399-400 (5th Cir. 1998) (per curiam) (deciding whether "government's decision . . . was based on considerations of public policy" based on the "underlying facts," including "testimony" regarding what factors influence decisions; applying the exception when that description was "not disputed by [plaintiffs]"); *Baldassaro v. United States*, 64 F.3d 206, 212 (5th Cir. 1995) ("[T]he burden is on [the plaintiff] to allege facts that would support a finding that the challenged

14

principle that, although application of the exception turns on "whether the decision is or is not 'susceptible to policy analysis,'" *Andrade v. Chojnacki*, 338 F.3d 448, 457 (5th Cir. 2003), "[e]vidence of the actual decision may be helpful in understanding whether the 'nature' of the decision implicated policy judgments" in the first place, *Cope*, 45 F.3d at 449.

Here, there are specific facts establishing that the Corps' relevant decisions were not grounded in policy considerations but, rather, were grounded in scientific and technical misjudgments of the dangers created by the channel. *See supra* pp. 2-4; July 2006 U.S. Mem. at 12. Indeed, evidence of the nature of the Corps' actual decisions is the admission by counsel for the United States before this Court. *See Flood Control Act Summary Judgment Decision*, 577 F. Supp. 2d at 807-09, 815. The evidence that the Corps' relevant decisions were dominated by scientific and technical judgments and not by policy concerns is plainly relevant to the question "whether the 'nature' of the decision implicated" and was "fraught with" "policy judgments," *Cope*, 45 F.3d at 449; *O'Toole v. United States*, 295 F.3d 1029, 1034 (9th Cir. 2002) (following *Cope* and holding protected decision must be "fraught with public policy considerations") (internal quotation marks and ellipsis omitted); *see also Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1031 (9th Cir. 1989) (rejecting application of discretionary-function exception where "[t]he government's own expert witness . . . testified that the contracting officer's on-site decisions would turn on sound engineering practices" and thus were not policy judgments). Because there is a genuine dispute of fact about the character of the Corps' decisions, summary judgment in the United States' favor is inappropriate. *See Terbush v. United*

action is not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."); *Western Greenhouses v. United States*, 878 F. Supp. 917, 928 (N.D. Tex. 1995) ("Plaintiffs have failed to produce any evidence to overcome the presumption that [Air Force base] officials were grounded in policy when making decisions concerning the investigation, monitoring and public notification of potential contamination.").

15

*States*, 516 F.3d 1125, 1134 (9th Cir. 2008) ("there . . . must be some support in the record that the decisions taken are 'susceptible' to policy analysis"; "[o]n this point, the government bears the burden," and "[i]t is not sufficient for the government merely to waive the flag of policy as a cover for anything and everything it does that is discretionary in nature").

*Bear Medicine* is instructive. There, the United States "argue[d] that the [Bureau of Indian Affairs' ('BIA')]" failure to ensure that adequate safety measures were taken was "due to limited resources," despite the absence of "record" evidence to support this description of the BIA's decision. 241 F.3d at 1216. There, as here, the United States argued that a "challenged decision need not be actually grounded in policy considerations" for the discretionary-function exception to apply. *Id.* (internal quotation marks omitted). The court of appeals rejected the United States' position: judicial "inquiry into the nature of a decision is not meant to open the door to ex post rationalizations by the Government in an attempt to invoke the discretionary function shield." *Id.* Rather, "[t]here must be reasonable support in the record for a court to find . . . that a decision was policy-based or susceptible to policy analysis." *Id.* Language in judicial opinions suggesting the discretionary-function exception is based only on whether a decision is susceptible in the abstract to policy analysis, the court said, "should not be used to allow the Government to create after-the-fact justifications for the purpose of liability protection." *Id.*

This case is on all fours with *Bear Medicine*. Record evidence establishes that the Corps' actual decision with respect to remedial measures to mitigate MRGO-created dangers was based predominately, if not entirely, on the Corps' scientific and technical conclusions that the MRGO created no such risks. *See supra* pp. 2-4. In the face of that record evidence and the United States' previous admissions on this subject, the United States cannot now counterfactually and *ex post facto* render the challenged decisions something they were not: namely, policy decisions.

16

*See* U.S. Mem. at 39-42. Such "after-the-fact justifications" should not be allowed to create "liability protection" for what were, at bottom, scientific and technical mistakes by the Corps.[5]

**b.** Despite substantial record evidence that the Corps' decisions not to remedy the dangers of the MRGO were based upon scientific and technical judgments, the United States argues that the discretionary-function exception applies because the Corps was left "considerable room . . . to weigh numerous considerations in deciding how to design, build, operate, repair, and maintain the channel." U.S. Mem. at 34. According to the United States, "the challenged acts and omissions — failure to 'armor' both banks of the MRGO in their entirety, failure to design and construct surge barriers, and failure to dredge more precisely . . . — are by nature readily susceptible to policy analysis." *Id.* In particular, the United States says that these decisions are connected to "the promotion of commerce and improvement of the national defense." *Id.* The United States also asserts in a conclusory fashion that adopting any remedial measures would have "required the weighing of costs, benefits, and alternatives." *Id.*

But, as explained above, there are substantial questions of fact regarding the grounds for the Corps' decisions not to remedy the MRGO's dangers, rendering summary judgment inappropriate. *See supra* pp. 2-4. That outcome is not changed by the United States' broad and conclusory invocation of "commerce" and "national security" as purported reasons the Corps did not implement basic remedial measures to counter the risks created by the MRGO. *See Gotha v. United States*, 115 F.3d 176, 181 (3d Cir. 1997) (Navy's invocation of broad national-security concerns with respect to claim of negligent failure to install railing was insufficient: "[t]his case

---

[5] This case is thus unlike *Baldassaro*, in which the court found the plaintiff "failed to . . . present specific facts sufficient to rebut the presumption that the particular design decision was grounded in the same policy considerations that underlie the statute authorizing the United States to exercise its discretion in determining which vessels are of value for national defense." 64 F.3d at 212. Here, there are specific facts — including admissions by the United States itself — that the Corps' decisions were predominately of a scientific and technical nature.

is not about a national security concern, but rather a mundane, administrative, garden-variety, housekeeping problem that is . . . far removed from the policies applicable to the Navy's mission"); *Terbush*, 516 F.3d at 1135 ("[I]f all that were required were a bald incantation of 'policy,' then such an approach would swallow the second prong of *Berkovitz*.").

Furthermore, inasmuch as the United States relies on resource concerns that could have influenced (or that did influence) the Corps' decision not to address the dangers created by the MRGO, *see* U.S. Mem. at 37 (arguing the Corps needed "to keep federal costs low"); *id.* at 3-4 (suggesting the addition of surge barriers would have "invalidated the cost-benefit calculations" underlying the MRGO), its reliance is misplaced. *See Whisnant*, 400 F.3d at 1183 (noting courts have "several times rejected" arguments that factors such as "costs and funding" automatically render decisions subject to the discretionary-function exception) (internal quotation marks omitted). The Ninth Circuit has held, for example, that — where the plaintiff "alleg[ed] . . . government negligence in the maintenance of its own property" — the "mere presence of budgetary concerns" could not be used to "shield allegedly negligent conduct from suit under the FTCA." *Id.* at 1184. "To hold otherwise," the court explained, "would permit the discretionary function exception to all but swallow the [FTCA]." *Id.* (internal quotation marks omitted). Furthermore, as the D.C. Circuit has said, "[b]udgetary constraints . . . underlie virtually *all* government activity," and, to prevent the discretionary-function exception from eviscerating the FTCA, a protected governmental decision must be "*grounded* in" or "fraught with" policy considerations. *Cope*, 45 F.3d at 449 (internal quotation marks omitted; first emphasis added); *see also O'Toole*, 295 F.3d at 1036 ("[A]n agency's decision to forego, for fiscal reasons, the routine maintenance of its property — maintenance that would be expected of any other landowner — is not the kind of policy decision that the discretionary function exception

18

protects."). As explained above, there is substantial evidence the Corps' key decisions were grounded in scientific and technical judgments, decisions to which the discretionary-function exception does not attach.[6]

Finally, contrary to the United States' arguments (at 32-35), this case is nothing like *National Union Fire Insurance v. United States*, 115 F.3d 1415 (9th Cir. 1997). The "critical decision" that the plaintiff challenged in that case was the Corps' decision "to put off the smaller improvement" to a breakwater, "while studying the possibility of a larger one." *Id.* at 1418. The court found, based on its review of the allegations and the evidence, that the Corps' decision was influenced by policy considerations, *see id.* at 1439, and therefore that the "case [was] more analogous" to decisions finding that discretionary-function exception applied, *id.* at 1421. Here, there is a significant dispute whether the Corps' decisions not to remedy the dangers of the MRGO were susceptible to policy analysis. *See supra* pp. 14-18. Furthermore, nothing in *National Union* suggests the court meant to immunize the Corps from negligent decisions dominated by scientific and technical concerns. And any such reading of the opinion would be foreclosed by subsequent Ninth Circuit decisions clearly establishing that the discretionary-function exception does *not* shield the United States from liability for errors of a scientific and technical nature. *See Whisnant*, 400 F.3d at 1181; *see also Terbush*, 516 F.3d at 1134.

---

[6] The United States' lengthy discussion of the evolution of case law relating to the "planning/operational dichotomy" is thus of no moment. *See* U.S. Mem. at 17-26. There is no question that it is the nature of the conduct that determines the applicability of the discretionary-function exception, not a categorical line between planning and operational decisions. The evidence here, however, raises a substantial question of fact regarding whether the Corps' decisions with respect to the MRGO were grounded in policy considerations.

**B.     The Corps' Negligence in Connection with the MRGO Is Not Protected by the Due-Care Exception**

The United States also argues that the dangers created by the MRGO were "ineradicable results" mandated by the statute authorizing the construction of the channel. U.S. Mem. at 2. The United States therefore contends that the FTCA's due-care exception bars plaintiffs' claims. *See id.* at 35-48. The United States is incorrect.

The due-care exception "exempts from judicial scrutiny the decisions of legislative bodies." *Buchanan v. United States*, 915 F.2d 969, 971 (5th Cir. 1990). But plaintiffs do not challenge any decision of a legislative body here: they seek to hold the Corps accountable for the negligent *manner* in which it designed, constructed, operated, maintained, and repaired the MRGO. *See Robinson* Am. Compl. ¶¶ 90-108; AT&T Compl. ¶¶ 98-117. There is substantial evidence that the Corps negligently failed to take any steps to remedy or counter the dangers that the MRGO created for New Orleans. *See, e.g.*, AT&T Compl. ¶ 104.

The United States attempts to shift the blame for the damages the MRGO caused from the Corps to Congress — and thereby to escape liability — by arguing (at 2-3) that measures that could have "eliminate[d] the supposedly harmful hydraulic effects [of the MRGO], namely, surge barriers and bank protection," were prohibited from being implemented by the congressional statute authorizing construction of the MRGO. *See also id.* at 38 ("Surge barriers could not be added to the project for one very fundamental reason: they would not advance the policies that underlay the project's authorization and funding."). This defense is insufficient to support summary judgment for at least two reasons.

*First*, as discussed above in connection with the discretionary-function exception, there is substantial evidence calling into question the Corps' description of why it did not implement measures, such as surge barriers, to counter the substantial dangers that the MRGO created for

New Orleans. *See supra* pp. 14-18. Among that evidence, of course, are the previous statements

of the United States itself that tell a different story about why such measures were not

implemented. *See* July 2006 U.S. Mem. at 12 (stating the Corps did not implement surge

barriers "[b]ecause [the Corps] thought that the new channel [would] be of no consequence in

affecting water surface elevations for major storms and hurricanes") (internal quotation marks

omitted). That dispute of material fact precludes the United States' entitlement to summary

judgment. *See* Fed. R. Civ. P. 56(c).[7]

*Second*, the United States' argument that the Corps had no options available to it to

remedy the dangers the MRGO created is legally unfounded. In support of its theory, the United

States maintains, for example, that "[a] shipping channel designed and constructed with surge

barriers . . . would not have been either the channel described in the Chief's report or one that

could fairly be characterized as 'substantially in accordance with' it." U.S. Mem. at 3. But, as

the Fifth Circuit has explained, "[e]ven when a project's purpose is authorized by Congress, the

executive officer charged with responsibility for the project may modify its purpose unless this

action is so foreign to the original purpose as to be arbitrary or capricious." *Creppel v. U.S.*

*Army Corps of Eng'rs*, 670 F.2d 564, 572 (5th Cir. 1982) (footnote omitted). Indeed, that is

precisely the position the United States has taken in this litigation: in arguing for Flood Control

Act immunity and in responding to plaintiffs' claims that the Corps deviated from

congressionally approved flood-control plans, it averred that the Corps "possesses *broad* latitude

---

[7] Furthermore, as plaintiffs have argued, the Corps' suggestion that it had no avenues
available to it for pursuing measures to counter the threats it created in the MRGO is wrong as a
matter of law. *See, e.g.*, Pls.' Mem. at 15-16 (arguing the Corps "was aware" of "feasible"
remedial measures but never pursued legal options available for implementing those measures);
Pls.' Statement of Uncontested Facts ¶ 31 (compliance with Fish and Wildlife Coordination Act
would allow for possible conservation measures); *id.* ¶ 51 (compliance with National
Environmental Policy Act may have prompted action with respect to the MRGO); *id.* ¶ 146
(Corps had legal options to remedy wetlands damages).

to revise plans after authorization has been granted." Def. United States' Opp. to Pls.' Mot. for

Summ. Adjudication at 3 (filed Feb. 1, 2008) (Doc. No. 11033) (emphasis added). In support of

that position, the United States cited legal authority that, it argued, supported the conclusion that

authorizing statutes providing that projects should be "'substantially in accordance with' the

Corps's recommendation do *not* prescribe a particular course of conduct but merely set

guidelines" and that the Corps may "*modify plans as the project proceeds*." *Id.* at 21 (emphases

added); *see* U.S. Mem. at 5 (stating the Corps had discretion "in carrying out Public Law

84-455"). The United States' newfound position that the Corps was foreclosed from doing

*anything* to remedy the substantial dangers the MRGO created is thus meritless.[8]

In short, it is implausible for the United States to argue that the reason the Corps did

nothing to remedy the fact that it had created a deadly hurricane alley directed at New Orleans is

because it was precluded from deviating in any manner from the original MRGO authorization

when (a) the United States has previously said that the Corps' decisions were driven by a

---

[8] It is no answer to say that remedial measures like surge barriers or bank protection would have been "so foreign to the original purpose as to be arbitrary or capricious." *Creppel*, 670 F.2d at 572. The United States offers nothing more than unsubstantiated and conclusory allegations that implementing basic measures to counter the substantial dangers that the MRGO created would have interfered with the MRGO's core purpose of facilitating commercial access to New Orleans. Indeed, those allegations are contradicted by the fact that the Corps *did* make scientific and technical judgments regarding the risks of the MRGO, *see* Design Mem. No. 1-B, at 2-4, 5 (discussing anticipated effects of the MRGO on storm surge, drainage and reclamation, salinity, and erosion, and making no "initial[ ]" "recommend[ation]" regarding "channel protection"); *see also id.* at 9-10 (mentioning the possibility of "dike[s]" and "[d]raglines" to minimize adverse environmental effects), that cannot be squared with the United States' current view that the Corps had no ability to consider such concerns or to remedy them. Crediting the United States' position that such measures were not part of the primary purpose of the project, moreover, would effectively insulate the Corps from negligent failure to remedy dangers in connection with any congressionally authorized project (it makes no sense to think that the primary purpose of *any* project would be to ensure that the project itself does not create substantial hazards), effectively granting the Corps an absolute exception from liability under the FTCA. In all events, the Corps had channels available to it for raising concerns about the dangers of the MRGO with Congress. *See supra* note 7.

different consideration — namely, the scientific and technical judgment that the MRGO did not create any risks that needed to be remedied; and (b) the Corps had legal authority to deviate from congressional authorization and to modify plans, a position the United States has previously embraced. The United States accordingly is not entitled to summary judgment under the FTCA's due-care exception.[9]

## CONCLUSION

For the foregoing reasons, the United States' Renewed Motion To Dismiss or, in the Alternative, for Summary Judgment should be denied.

---

[9] In all events, the due-care exception applies only when the United States is sued for the "action of its officers undertaken while *reasonably* executing the mandates of a statute." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005) (emphasis added); *Buchanan*, 915 F.2d at 971 (due-care exception "applies only if the actor has exercised due care" in carrying out a statutory instruction). Here, in light of plaintiffs' allegations and evidence, there is a substantial factual dispute regarding whether the Corps *reasonably* executed any statutory directives and whether it did so with *due care*. *See* Pls.' Statement of Uncontested Facts ¶¶ 1-149; *see also* 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2729, at 533 (3d ed. 1998) (noting that "motion[s] for summary judgment" on "negligence" issues are "not commonly interposed, and even less frequently granted").

23

Respectfully submitted,

*/s/ R. Patrick Vance*

Pending admission pro hac vice
MICHAEL K. KELLOGG
SCOTT H. ANGSTREICH
KELLY P. DUNBAR
KELLOGG, HUBER, HANSEN, TODD,
 EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (facsimile)

R. PATRICK VANCE, T.A. (LA BAR 13008)
EDWARD H. BERGIN (LA BAR 2992)
MARK A. MINTZ (LA BAR 31878)
JONES, WALKER, WAECHTER, POITEVENT,
 CARRÈRE & DENÈGRE, L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana 70170-5100
(504) 582-8000
(504) 582-8011 (facsimile)
E-mail: pvance@joneswalker.com
         nbergin@joneswalker.com
         mmintz@joneswalker.com

JAVIER AGUILAR (TX BAR 00936300)
AT&T SERVICES, INC.
208 South Akard Street, # 3115
Dallas, Texas 75202
(214) 757-3377

MARK F. MCINTOSH (MS BAR 2646)
AT&T SOUTHEAST
675 West Peachtree Street, N.W., Suite 4300
Atlanta, Georgia 30375-0001
(404) 927-2870

*Counsel for the AT&T Entities*

December 18, 2008

## CERTIFICATE OF SERVICE

I, R. Patrick Vance, hereby certify that, on December 18, 2008, I served a true and correct

copy of the Brief of *Amici Curiae* the AT&T Entities in Opposition to Defendant United States'

Renewed Motion To Dismiss or, in the Alternative, for Summary Judgment upon all counsel of

record by ECF or first-class mail.

*/s/ R. Patrick Vance*
R. Patrick Vance, T.A. (La. Bar. 13008)