Richard I. Durrett, P.E., P.L.S.
  Chairman
Kenneth L. McManis, Ph.D., P.E., P.L.S.
  Vice Chairman
Joseph C. Wink, Jr., P.E.
  Treasurer
Kerry M. Hawkins, P.E.
  Secretary
Donna D. Sentell
  Executive Secretary



Timothy J. Allen, P.L.S.
James D. Garber, Ph.D., P.E.
Rhaoul A. Guillaume, P.E.
Ali M. Mustapha, P.E.
Mark H. Segura, P.E.
Mark A. Juselis, P.E.
C. L. Jack Stelly, P.L.S.

## LOUISIANA PROFESSIONAL ENGINEERING AND LAND SURVEYING BOARD

### CERTIFICATE OF AUTHENTICITY

**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

    **BEFORE ME**, the undersigned Notary Public in and for the Parish of East Baton Rouge, State of Louisiana, personally came and appeared ROBERT E. EDDLEMAN, who declared that he is the Deputy Executive Secretary and Director of Enforcement for the Louisiana Professional Engineering and Land Surveying Board and in that capacity he is the legal custodian for the following described documents:

    1.    Licensure status for Modjeski & Masters, Inc. dated April 13, 2006.
    2.    Verification of licensure for Modjeski & Masters, Inc. dated April 13, 2006.

    ROBERT E. EDDLEMAN further declared that on the 20th day of April, 2006, he personally reviewed the above described documents and hereby certifies that the copies attached hereto are true and correct copies of the documents that now appear on file and of record in this office.

**WITNESSES:**

_Lesley Tedder_
   Lesley  Tedder

_Darlene Ashley_
   Darlene  Ashley

_Robert E. Eddleman_
**ROBERT E. EDDLEMAN**

    **SWORN TO AND SUBSCRIBED** before me in Baton Rouge, Louisiana this 20th day of April, 2006.

_____
**NOTARY PUBLIC**
My Commission is for Life.

*(SEAL)*

D. Scott Landry
Notary Public
State of Louisiana
Bar Roll Number 18996
Commission Expires at Death

61759-1

11

MODJESKI
EXHIBIT 1

9643 Brookline Avenue Suite 121 • Baton Rouge, Louisiana 70809-1433 • (225) 925-6291 • Fax (225) 925-6292 • www.lapels.com

Registered Firms                    Fax                      Apr 17 2006 09:35am P002/005
                                                                        Page 1 of 1



# PROFESSIONAL ENGINEERING AND LAND SURVEYING BOAR

**Status:ACTIVE**
**License:EF.0000570**
**Expiration Data:**
**9/30/2007**
Modjeski & Masters, Inc.
1055 Saint Charles Ave. Ste. 400
New Orleans, LA 70130-3994

Perform A New Search

Home



Fax                     Apr 17 2006 09:35am  P003/005

Rajan Sharafkhani, P.E.
  Chairman
Bob J. Green, P.E.
  Vice Chairman
Kenneth L. McManis, Ph.D., P.E., P.L.S.
  Treasurer
Richard L. Durrett, P.E., P.L.S.
  Secretary
E. Glen Kent, Jr., P.L.S.
  Executive Secretary



Kerry M. Hawkins, P.E.
C. L. Jack Stelly, P.L.S.
Joseph C. Wink Jr., P.E.
Rhaoul A. Guillaume, P.E.
Mark A. Juscelin, P.E.

## LOUISIANA PROFESSIONAL ENGINEERING AND LAND SURVEYING BOARD

As of 4/13/2006, the Louisiana Professional Engineering and Land Surveying Board has the following information on file:

**Firm:**          Modjeski & Masters, Inc.
**Address:**       1055 Saint Charles Ave. Ste. 400
                   New Orleans, LA 70130-3994
**License/Certification Class:**
**License No:**    EF.0000570
**Status:**
**Expiration Date:** 9/30/2007

13

9643 Brookline Avenue Suite 121 · Baton Rouge, Louisiana 70809-1433. · (225) 925-6291 · Fax (225) 925-6292 · www.lapels.com



LEGEND



EAST LEVEE
AND-FLOOD WALL

EAST LEVEE
BREACH

MODJESKI
EXHIBIT 2

This Contract entered into on this day by and between

>Orleans Levee District, State of Louisiana
>acting by and through William Slatten, President,
>and the Board of Levee Commissioners, both of
>whom are hereinafter referred to as "District";

and

>Modjeski and Masters, Consulting Engineers
>Room 510, 1055 St. Charles Avenue
>New Orleans, Louisiana  70130
>hereinafter referred to as "Engineers"

as follows, to-wit:

Whereas, the District is desirous of accomplishing necessary remedial and/or upgrading work to restore and/or improve the existing flood protection under its jurisdiction, and,

Whereas, the services of an Engineering firm are needed to assist with these projects, all as covered in the following provisions of this Contract;

Now, Therefore, "District" and "Engineer", for the consideration hereinafter set out, agree as follows:

1. <u>Employment of Engineers</u>:

The District hereby employs the Engineers and the Engineers agree to perform all necessary professional services hereinafter set forth in Article 2 of this Agreement.

2. <u>Character and Extent of Services</u>:

The Engineers shall furnish the following work and services; Perform various Engineering and related services required to accomplish preliminary design stages to final contract plans and specifications including design reports as required by the District.  An indefinite quantity option Contract is to be used. Work Packets will be issued to the Engineers under fixed price delivery orders issued against this Contract. Each Work Packet will be variable, with a minimum size of $2,000.00.  The work required under each Work Packet may consist of one or more of the following work items:

A.   <u>Site inspection</u> to determine existing conditions of particular flood protection works being repaired and/or upgraded.

B.   <u>Preparation of design feasibility reports</u> to include alternate cost comparison for repairing/upgrading any of the existing floodworks.

C.   <u>Engineering Design (Plans and Specifications)</u>:

1.  Prepare final design, plans, and specifications sufficient for the award of construction contracts on proposed, repairs, improvements and additions to the flood protection system as per Work Packet.  It is understood; that final plans and specifications will not be prepared for any Work Packet, or the District obligated for payment therefore, until said District has, in writing, ordered the Engineers to proceed with said final plans and specifications.

15

MODJESKI
EXHIBIT 3

2.   Attend all negotiations of contracts or openings of bids; review and tabulate contractors' proposals, and make recommendations concerning the award of the contract or contracts.

D.   General Inspection of Construction:

1.   Provide general construction inspection in the field to protect the District's interests in regard to project plans and specifications.

2.   Keep records of all construction quantities and amounts, issue certificates of payment to the contractor and handle the general administration and engineering inspection of the work.

E.   Resident Inspection:

When requested by the District, maintain a responsible representative or representatives on the job with authority to act as agent for the Engineers, as required, for the proper observation of the work.  It is specifically included herein that such inspection of construction will include the services of a qualified fulltime resident field representative or representatives at all times during construction of the facilities.

F.   Furnish the District two (2) copies of final construction plans modified to show changes made during construction.

G.   Assignments:

1.   Assignments will vary in scope to include the various types of work cited above.  The work packets will be issued on an intermittent basis over the one-year period of the contract, and shall require the services of design engineers (civil, structural, etc.) draftpersons, surveyors and miscellaneous support personnel.  The Engineers shall furnish all professional engineering, supervision, labor, plant, transportation, materials and other supplies necessary to perform the required services within the time specified on the delivery order issued for each packet.  All of the above shall be done under professional supervision in accordance with specifications.  The completed work will be delivered to the District's Chief Engineer.

2.   As a minimum, two work packets shall be issued under this contract as follows:

Packet 1 – Feasibility Study and Report – A study of levee improvement work along the 17th Street Outfall Canal required to conform to the Corps of Engineers High Level Plan for Lake Pontchartrain Flood Protection, the study to include the consideration of alternatives for both levee improvements and bridge retrofitting required.  A report of findings with recommendations will be made.

Packet 2 – Final Engineering Design – The preparation of Engineering Designs, Final Plans and Specifications for the bridge retrofitting and any levee improvements as decided upon by the Levee Board.

H.   Changes:

1.   The District may, as any time, by written order, make changes within the general scope of the contract in the services to be performed.  If such changes cause an increase or decrease in the Engineers cost, or time

16

required for, performance of any services under this contract, whether or not changes by any order, an equitable adjustment shall be made and the contract shall be modified in writing accordingly. Any claim of the Engineers for adjustment under this clause must be asserted in writing within 30 days form the date of receipt by the Engineer of the notification of change unless the District grants a further period of time before the date of final payment under the contract.

      2.   No services for which an additional costs or fee will be charged by the Engineer shall be furnished without the prior written authorization of the District.

    :.   Period of Service:

      The contract shall extend a minimum of one full year effective from the date of execution thereof. The Engineers shall be allowed to make any deliveries under this contract (90) ninety days beyond the contract completion late on work packets issued within the contract. This Engineering Contract may be extended at the option of the District in order to complete ongoing work or to accomplish additional work as required by the District.

3.   Compensation:

    For the Engineering services designated in Article 2, "Character and Extent of Services", the District shall pay the Engineers, fees established as follows:

    A.   Payment for engineering services described under Paragraph 2 will be made in accordance with the following unit prices and will be applied to the quantities used in developing the delivery order for each work packet.

ENGINEER'S FEES

| ITEM NO. | ITEM | UNIT | UNIT PRICE |
|----------|------|------|-----------|
| 1 | Principal (Project Manager) | Hour | $ 80.00 |
| 2 | Supervisor (Project Engineer) | Hour | $ 60.00 |
| 3 | Engineer | Hour | $ 50.00 |
| 4 | Pre-Professional Engineer | Hour | $ 35.00 |
| 5 | Engineering Technician | Hour | $ 30.00 |
| 6 | Draftsperson | Hour | $ 22.50 |
| 7 | Construction Inspector | Hour | $ 30.00 |
| 8 | Vehicle | Mile | $ 0.21 |

    B.   Payment will be made as the Engineers' invoice is received for all services satisfactorily performed. The Engineer may submit invoices on a monthly basis with supporting documentation for partial payment on a particular work packet.

    C.   If inspection is required to be furnished by the Engineers in accordance with Article 2, D and E hereof, the Engineers shall assign personnel, acceptable to the District, at salaries acceptable to the District. The fee for this work shall be on the basis of the actual salary paid to personel assigned to this project times a multiplier of 2.5, plus reimbursement of actual transportation expenses paid to such personnel. Payment of this fee shall be due and payable monthly during the construction period.

17

4.  Special Conditions:

These special conditions become a part of this Agreement:

A.   The Engineers shall secure and maintain such insurance as will protect them from claims under the Workmen's Compensation Acts, and from claims for Bodily Injury, Death or Property Damage which may arise from the performance of their services under this Agreement. This insurance shall be carried on the employees, cars and other equipment employed by the Engineers in connection with the District's work and the Engineers shall comply with all other requirements of Federal, State, and Local Laws.

B.   The Engineers shall furnish, without additional compensation, ten (10) sets of plans and ten (10) sets of all specifications. Additional copies of plans and specifications to be at the cost of others. The Engineers shall furnish without additional compensation 25 copies of each Engineering Report required by District.

C.   The District agrees to cooperate with the Engineers in the approval of all report, plans and specifications, or should they disaprove of any part of said plans and specifications, shall within thirty (30) days advise the Engineers of the changes desired in order that no undue expense will be caused the Engineers because of lack of decisions.

D.   If the Engineers are caused extra drafting or other expenses due to change ordered by the District after the completion and approval of the specifications and general working drawings, they shall be equitably paid for such extra expense in accordance with the service involved.

E.   It is understood that the Engineers may select, subject to the approval of the District, a Geotechnical Engineer for Soils and/or a reputable Testing Laboratory to make solid and field laboratory tests on materials and equipment. The Geotechnical Engineer and/or the Testing Laboratories will be employed directly by the District, which will pay the cost of this work.

F.   No deduction shall be made from the Engineers fee on account of penalty, liquidated damages, or other sums withheld from payment to Contractor.

G.   The undertaking of inspection by the Engineers, in accordance with provisions of Article 2, D and E hereof, or otherwise, shall not be construed as supervision of actual construction, since the Engineers or their authorized representative will, in no case, act as superintendent or foreman, or will they interfere with the management of the work. It further shall not be construed to make the Engineers or their authorized representative responsible for providing a safe place or safe conditions for the performance of work under the Contract, by: the contractor; the contractor's employees; subcontractor; employees of any supplier; or by any person for access, visits, work, travel or occupancy.

H.   Approval, by the Engineers, of any work done by the Material Testing Laboratory or by Soil Testing Laboratory shall not relieve said laboratories from the responsibility for errors of faulty work of any kind or their part in connection with material or soil testing or reports covering same, or shall such approval be construed as making the Engineers responsible for errors of any sort on the part of said laboratories.

5.  Ownership of Documents:

Original reports, drawings and specifications as instruments of service are the property of the Engineers, whether the work for which they are made by

executed or not.  Heretofore in this Agreement specified, District shall be furnished copies of these drawings and specifications and reproducibles of working drawings.

6.  Successors and Assigns:

The District and the Engineers each bind themselves, their partners, successors, executors, administrators, and assigns to the other parties to this Agreement, and to the partners, successors, executors, administrators, and assigns of such other party in respect of all convenants of this Agreement.

Except as above, neither the District nor the Engineers shall assign, sublet or transfer their interests in this Agreement without the written consent of the other.

Thus done, entered into and signed in the presence of the witnesses whose names are subscribed opposite each respective signature, on and as of the 9th day of March  19 84

WITNESSES:

ORLEANS LEVEE DISTRICT
STATE OF LOUISIANA

_President_

MODJESKI AND MASTERS

W.B. Conway, Partner

19

EXCAVATE METAIRIE RELIEF OUTFALL CANAL

UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF ORLEANS
CITY OF NEW ORLEANS

BE IT KNOWN, That on this _____22nd_____ day of the month of
_____AUGUST_____, in the year of Our Lord, one thousand nine hundred
and seventy-eight,

BEFORE ME, _____DAVID S. CRESSY_____, a Notary Public in and
for the Parish of Orleans, State of Louisiana, duly qualified and com-
missioned, and Official Notary of the City of New Orleans, and in the
presence of the two witnesses hereinafter named and undersigned,

PERSONALLY CAME AND APPEARED:

The HONORABLE ERNEST N. MORIAL, acting herein in his capacity as
President of the Sewerage and Water Board of New Orleans, according to
copy of resolution attached hereto, hereinafter designated as "BOARD";
and

MODJESKI & MASTERS, domiciled in the City of New Orleans, Parish
of Orleans, State of Louisiana, herein represented by _W. B. CONWAY_,
its duly authorized ___PARTNER___, hereinafter called the
"ENGINEERS";

Which said appearers declared:

WHEREAS, the Board, by resolution dated August 9, 1978, authorized
the employment of Modjeski & Masters for planning of the Excavation of
the Metairie Relief Canal Plant;

WHEREAS, the Engineers, in consideration of the covenants and
agreements hereinafter set forth, have agreed to furnish all engineering
services connected with the Excavation of the Metairie Relief Canal in
accordance with the suggested procedures of the American Society of
Civil Engineers as outlined in its "Manual No. 45", dated 1972, and
titled "Consulting Engineering, A Guide for the Engagement of Engineering
Services".

WITNESSETH:

SECTION 1.00 - THE ENGINEERS AGREE TO PERFORM THE FOLLOWING SERVICES:

Article 1.10 - PROJECT SCOPE

DESCRIPTION OF PROJECT - CAPITAL PROGRAM NO. 489

RE-EXCAVATE METAIRIE RELIEF (17TH ST.) OUTFALL
CANAL FROM STATION #6 TO LAKE

MODJESKI
EXHIBIT 4

Provide a complete set of plans for the re-excavation of the Metairie Relief Outfall Canal from Station #6 to the Lake that will provide the proper discharge flow according to the criteria and information supplied by the Sewerage and Water Board.  Cross-sections, taken at 500' intervals, will be supplied by the Sewerage and Water Board, however, any other cross-sections and any surveying that are necessary will be done by the Consultant under Article 1.70.  All cross-sections and surveying must be tied to the U.S.E.D. levee baseline.

Work shall include:

1.  Obtaining the dredging and deposit or disposal permit required by the United States Corps of Engineers. This will include the preparation of any preliminary plans that may be required.

2.  Obtaining all approvals from other agencies that are necessary to get this permit.

3.  Obtaining soil borings and making all soil studies and recommendations that are necessary to assure the stability of the levees.

4.  A complete study that will assure the proper performance of this canal under all operational conditions.

    The total estimated cost of the project shall not exceed $800,000.00.  This estimated cost is based on material and contractor costs for the year 1978.

Article 1.20 - PRELIMINARY ENGINEERING PLANS AND ESTIMATES

Prepare and submit to Board for review and written approval preliminary engineering plans and construction cost estimates of the project. In preparing these preliminary plans and construction cost estimates, the Engineers will perform the services set forth in Articles 1.21 through 1.24 to the extent necessary and reasonably required for this preliminary phase of the engineering service.

Article 1.21 - COORDINATION

a.  Consult with the Board's General Superintendent and his staff and coordinate with them throughout the planning period all matters pertinent to these proposed improvements.

b.  Consult with and coordinate pertinent engineering and permit matters with Federal, State and local agencies having jurisdiction.

Article 1.22 - SURVEYS AND INVESTIGATIONS

a.  Conduct ground reconnaissance of the area, and make visual inspection of the location

- 2 -

21

and other field conditions affecting the
proposed improvements.

b.  Plan and supervise surveys, subsurface in-
vestigations, and tests.

Article 1.23 – ENGINEERING STUDIES AND ANALYSIS

a.  Review with the Board's staff all existing
design data and flow requirements for the
Metairie Relief Canal.

b.  Based on the information provided by surveys
of property, topography, rights-of-way and
hydrography, determine the location of the
project and its appurtenances.

c.  Develop the project including structural and
hydraulic criteria for facilities to be provided.

d.  Prepare preliminary plans, elevations and
typical sections of the proposed project.

e.  Prepare descriptions of materials of con-
struction to be provided.

f.  Prepare preliminary cost estimate for the
proposed project.

g.  Prepare estimated schedules from design phase
to completion of project.

Article 1.24 – ENGINEERING REPORTS

a.  Review, correlate and evaluate all data
collected and prepare report of findings for
conferences with Board and its staff.

Article 1.30 – DESIGN, ENGINEERING PLANS AND SPECIFICATIONS
Prepare and submit to the Board for review and
written approval final designs, working plans
and specifications for solicitation of competi-
tive bids and for construction, including the
following engineering services:

Article 1.31 – Review preliminary engineering plans and estimates
with Board's Superintendent and staff, and continue
this coordination through design phase.

Article 1.32 – Consult with and coordinate all pertinent engineering

- 3 -

22

matters with public and private utilities involved.

Article 1.33 - Plan and supervise surveys, subsurface investigations and tests.

Article 1.34 - Designate for the Board, areas needed for rights-of-way, easements, and property acquisitions for construction of proposed improvements.

Article 1.35 - Prepare permit drawings and data and assist Board in preparation of permit applications with Federal, State and other agencies and obtain final approval of appropriate Federal, State and Local Agencies.

Article 1.36 - Develop final designs and draft specifications, contract documents, and cost estimates and submit to Board and appropriate Federal, State and local agencies for review and approval before proceeding with final plans.

Article 1.37 - Prepare contract drawings, and include in the contract documents provisions for receipt of alternate bids, as approved by the Board, so as to enable the Board to adjust the construction cost as established in Article 1.10.

Article 1.38 - Complete specifications and contract documents for construction and obtain final approval of Board. Develop detailed breakdown of quantities and cost estimated.

Article 1.40 - CONTRACT DOCUMENTS & BIDS

Article 1.41 - Furnish the Board three (3) sets of the plans and three (3) draft copies of the specifications, also the original tracings of the plans and masters of the specifications.

Article 1.42 - Assist in the preparation of invitations to Bidders, prepare addenda, attend bid openings, analyze the bids received and make recommendations to the Board.

Article 1.43 - Redesign any portion of the project as may be required by the Board to secure bids in conformity with limit of construction cost as set forth in Article 1.10, reasonable allowances to be made for

- 4 -

increases in construction cost resulting from any
undue delays by the Board in obtaining bids.

Article 1.44 – Prepare alternates as may be required by the
Board to secure bids in conformity with limits
of construction cost as set forth in Article 1.10,
reasonable allowances to be made for increases
in construction cost resulting from any undue
delays by the Board in obtaining bids.

Article 1.50 – CONTRACT ADMINISTRATION
To provide general administration of construction
contracts, which shall include the following
engineering services, in performance of which,
the Engineers will diligently endeavor to protect
the Board against defects and deficiencies in the
work, but do not guarantee the Contractors'
performance.

Article 1.51 – Consult with and advise the Board during construction.

Article 1.52 – Prepare and recommend for execution by the Board,
Work Orders, Stop Orders, Change Orders, Shipping
Orders, and similar notices to the Contractor.

Article 1.53 – Issue such additional instructions to the Contractor
as may be necessary for interpretation of the plans
and specifications or to illustrate changes required
in the work.

Article 1.54 – Review Shop Drawings, material samples and lists
and other data for approval submitted by the
Contractor.

Article 1.55 – Supervise and review Testing Laboratory services
for control and testing of materials used in the
work.

Article 1.56 – Make periodic visits to job site to check the
Contractor's work for compliance with contract
requirements.

Article 1.57 – Review construction progress schedule submitted
by Contractors and Suppliers in coordination with
job requirements, and approve such schedule when

- 5 -

they satisfactorily meet the construction program.

Article 1.58 - Review Contractors estimates of construction progress and materials stored, and prepare and execute Partial Payment Certificates of Work completed for periodic payments to the Contractor; make final inspection of and certification of completion of the work in accordance with the contract requirements for the Board's acceptance and for final payment to the Contractor.

Article 1.60 - COMPLETION

Engineer will assist the Board's engineering staff in turning over the completed Metairie Relief Canal to Board's operating personnel at completion of construction contracts.

Article 1.62 - Keep records of all approved field construction modifications and revise the reproducible set of plans to conform with construction methods.

Article 1.70 - ADDITIONAL ENGINEERING SERVICES

As provided by the American Society of Civil Engineers and outlined in its Manual No. 45 dated 1972, pages 28 and 29, the following services if and when required by the Board are to be performed by the Engineers, but at additional compensation, and are not included in the basic fee:

Article 1.71 - Soils investigations - including test borings, related analyses, and recommendations.

Article 1.72 - Detailed mill, shop, and/or laboratory inspection of materials and equipment.

Article 1.73 - Land surveys, establishment of boundaries and monuments, and related office computations and drafting.

Article 1.74 - Field surveys, photogrammetry, and field layouts of construction.

Article 1.75 - Technical inspection of construction by a full-time(licensed resident engineer and supporting staff, as required by the Board.

- 6 -

Article 1.76 - Additional copies of reports, contract drawings, and documents above the specified number furnished in the basic services.

Article 1.77 - Extra travel and subsistence for the Engineer and his staff beyond that normally required under basic circumstances, when authorized by the Board.

Article 1.78 - Assistance to the Board as expert witness in litigation arising from the development or construction of the project.

Article 1.79 - Investigation involving detailed consideration of operation, maintenance, and overhead expenses; and the preparation of rate schedules, earning and expense statements, feasibility studies, appraisals, valuations, and material audits or inventories required for certification of force account construction performed by the Board.

Article 1.80 - Preparation of applications and supporting documents, permits and studies required by Federal, State and Local Agencies.

Article 1.81 - Redesign of any portion of the project after written approval by the Board, except for redesign for correction of errors or omissions, and except as provided in Article 1.43 for which there will be no additional compensation.

Article 1.82 - Preparation of alternates authorized in writing by Board, except as provided in Article 1.44 for which there will be no additional compensation.

SECTION 2.00 - THE BOARD AGREES

Article 2.10 - Upon execution of the Contract for the Engineering Plans and Estimates, it may immediately authorize the Engineers to proceed with work as outlined in Articles 1.20 through 1.24.

Article 2.11 - When and as required, after written approval of preliminary Engineering Plans and Estimates, it may instruct and authorize the Engineers to proceed with design and engineering plans and specifications as outlined in Articles 1.30 through 1.38.

Article 2.12 - When and as required, after written approval of

- 7 -

Engineering Plans and Estimates, it may instruct
and authorize the Engineers to proceed with design
and engineering plans and specifications as outlined
in Articles 1.40 through 1.44,

Article 2.13 - When and as required, upon award of construction
contract, it may instruct and authorize the
Engineers to furnish Contract Administration and
Completion services as outlined in Articles 1.50
through 1.62.

Article 2.14 - When and as required, it may instruct and authorize
the Engineers to perform the applicable Additional
Engineering Services outlined in Articles 1.70
through 1.82 hereof.

Article 2.15 - It will assist the Engineers throughout the work
by placing at their disposal upon request all
available records and information in its possession,
including any construction drawings, property maps,
and soil reports or topographic maps of the area.

Article 2.16 - That all services stated to be furnished by the
Board shall be without cost to the Engineers.

Article 2.17 - To remunerate the Engineers in compensation for
their services as set forth in Section 3.00 hereof.

SECTION 3.00 - PAYMENTS

Article 3.10 - FOR BASIC ENGINEERING SERVICES

The Board shall pay the Engineer for performance
of the services described in Articles 1.20 through
1.62 except as noted a Basic Fee as follows:

(a) Preliminary Studies and Analysis

For Articles 1.20 through 1.24 except Article
1.21 (b) a Basic Fee of $33,000.00.
Services under Article 1.21 (b) shall be paid
under Article 3.22.

(b) Final Design Plans and Specifications

For Articles 1.30 through 1.38 except Article
1.35 a Basic Fee of $41,000.00.

- 8 -

Services under Article 1.35 shall be paid
under Article 3.22.

(c) Bid Documents

For Articles 1.40 through 1.44, a Basic Fee
of $1,400.00.

(d) Administration of Construction

For Articles 1.50 through 1.62, a Basic Fee
of $12,000.00.

Article 3.12 - If any part of this project is deferred or abandoned
by the Board after Engineering Services have begun,
the Engineers shall be paid for actual work per-
formed prior to notification of abandonment. The
fee for this work shall be a pro-rata share of the
basic fee based on the phase or percentage of
planning actually completed and the agreed esti-
mated construction contract cost of the abandoned
or deferred work.

Article 3.20 - The Board shall reimburse the Engineers addi-
tionally to the foregoing when applicable for
Additional Services as referred to in Articles
1.70 through 1.82 inclusive as follows:

Article 3.21 - For the time of principals, preparing for and
appearing in litigation or public hearings or
negotiations for permits as indicated in Article
1.78 payment shall be at the rate of Two Hundred
Dollars ($200.00) per day.

Article 3.22 - For the Services of Engineers' principals and
personnel employed under Articles 1.21 (b),
1.35, 1.79, 1.80, 1.81 and 1.82 - Additional
Engineering Services, when authorized by Board,
the salaries of such principals and personnel for
the hours actually engaged in performing work or
services, (such payment to be made at a rate
equal to the employees' annual salary divided by
1,900 scheduled working hours in the year for all
straight time worked and at $1\frac{1}{2}$ times such rate
for all overtime work exceeding eight (8) hours

- 9 -

in any one day or forty (40) hours in any work
week, or on Sunday, or holidays;) plus an amount
equal to One Hundred Twenty-five (125%) per cent
of the sum of such salary costs for taxes,
insurance, overhead and fee.

Article 3.23 - For the services of field staff including resident
engineers, inspectors, and clerks, for services in
connection with Article 1.75, charges based on
salary cost computed as described in Article 3.22
above, plus twenty-five (25%) per cent for direct
salary costs, and then plus Fifty (50%) per cent
of the sum of such costs for overhead and fee.

Article 3.24 - Direct engineering office and field expenses, in-
cluding printing, reproduction work and photographs,
telephone toll charges, telegrams, automobile
rental charges, authorized subsistance and travel
expenses (twelve (12¢) cents per mile to cover
the use of Engineers' automobiles, except those
of resident field personnel, when employed on
the work) and the cost of soil borings, load tests,
laboratory and inspection services, field surveys,
investigations and reports (Articles 1.71 through
1.82) all when specifically authorized and
chargeable directly to the work under this agree-
ment, plus ten (10%) per cent of the sum of all
such direct costs to cover general overhead only
but no fee or profit.

SECTION 4.00 - THE BOARD AND THE ENGINEERS FURTHER AGREE

Article 4.10 - ENGINEERS INDEPENDENT STATUS:  The Engineers shall
at all times during the life of this Agreement be
considered as, and acting in the capacity and not
as employees of the Board, nor shall the Board be
obligated to any person, firms or corporations in
any manner on account of any obligation contracted
for or on behalf of the Engineers in the performance

- 10 -

of their services under the terms of this Agreement,
except as described in Article 4.30.

Article 4.20 - ENGINEERS ON TRAVEL:  Travel by the Engineers
during performance of the design phases hereof,
as may be undertaken for their principal benefit,
but as may be intended to also benefit the Board
and the proposed improvements, shall be without
cost to the Board unless otherwise specifically
authorized.

Article 4.30 - CONTRACT ASSIGNMENT:  The Engineers shall have the
right to assign this Agreement to any bank to assist
in financing the services to be performed under this
Agreement.

Article 4.40 - INSURANCE

The Engineers shall secure and maintain at their
own expense such insurance as will protect them
from claims under the Workman's Compensation Acts
and from claims for bodily injury, death, or
property damage which may arise from the performance
of their services under this Agreement; and shall
carry Professional Liability Insurance.  Insurance
for bodily injury or death shall be in the amount
of $100,000.00 for one (1) person, and not less
than $300,000.00 for all injuries and/or deaths
resulting from any one (1) occurrence.  The
insurance for property damage shall be in the
amount of $300,000.00 for each accident and not
less than $300,000.00 aggregate.  Automotive
Liability P.I. $300,000.00/$300,000.00, P.D.
$300,000.00/$300,000.00.  The Professional
Liability Insurance shall be in the amount of
$1,000,000.00.

Article 4.50 - TERMINATION

This agreement may be terminated by either party
by thirty (30) days written notice forwarded to the
last known address of either party, except that such

- 11 -

termination shall not occur during the period of
progress of any one phase of this Contract as
defined in Articles 2.10, 2.11, 2.12 or 2.13.
Termination by either party may occur during the
period of progress of any one of these phases if
based upon a substantial failure to perform in
accordance with the terms hereof by one (1) party,
through no fault of the other party.  In case of
dissolution of either corporation, or the death,
incapacitation, or withdrawal of three (3) or more
of its principal officers engaged on the work, the
Board shall have the option to terminate this
Agreement in whole or in part.  If terminated,
the Engineers shall be paid for services performed
to the date of termination, including fees earned
and reimbursements then due, plus terminal expenses,
which expenses shall be subject to audit by the
Board.

THUS DONE, PASSED AND SIGNED in my office at New Orleans, Louisiana,
on the day, month and year first above written, in the presence of

KATHERINE SISK            and      KATHERINE G. HOLLIFIELD

competent witnesses, both of lawful age and domiciled in this City,
who hereunto sign these presents, together with the said parties and me,
Notary, after due reading of the whole.

SEWERAGE AND WATER BOARD OF NEW ORLEANS

BY: _____
            PRESIDENT

MODJESKI & MASTERS

BY: _____
            PARTNER

WITNESSES:

_____
_____

/s/ DAVID S. CRESSY
       NOTARY PUBLIC

APPROVED AS TO FORM:

_____
SPECIAL COUNSEL
SEWERAGE AND WATER BOARD
OF NEW ORLEANS

A TRUE COPY

_____
       NOTARY PUBLIC

- 12 -

31

R-110 78

## RESOLUTION

BE IT RESOLVED by the Sewerage and Water Board of New Orleans, at its regular meeting held on August 9, 1978, at which a quorum was present, that authority be and it is hereby conferred on the President or President Pro Tem of the Board to enter into an agreement with MODJESKI & MASTERS, as Engineers, for the following project:

> All engineering services in connection with the excavation of the Metairie Relief (17th Street) Outfall Canal from Station #6 to Lake.

All engineering services connected with said project shall be in accordance with the suggested procedures of the American Society of Civil Engineers as outlined in its "Manual No. 45", dated 1972, and titled "Consulting Engineering, A Guide for the Engagement of Engineering Services".

The estimated cost of the project shall not exceed $800,000.00 and is based on material and contractor costs for the year 1978. The fee of the Engineers shall be as set out in Article 3.10 of the Agreement.

BE IT FURTHER RESOLVED that the Officer herein named is author-ized, empowered and directed to enter into the necessary contract or agreement before the City Notary of New Orleans to sign, seal and deliver the same and to do and perform any act or deed legally necessary in order to properly effectuate the objects and purposes hereof.

---

I, Stuart H. Brehm, Jr., Executive Director, Sewerage and Water Board of New Orleans, do hereby certify that the above and foregoing is a true and correct copy of a Resolution adopted at the Regular Monthly Meeting of said Board, duly called and held, according to law, on August 9, 1978.

STUART H. BREHM, JR.
EXECUTIVE DIRECTOR
SEWERAGE AND WATER BOARD OF NEW ORLEANS

R-110-78

## RESOLUTION

BE IT RESOLVED by the Sewerage and Water Board of New Orleans, at its regular meeting held on August 9, 1978, at which a quorum was present, that authority be and it is hereby conferred on the President or President Pro Tem of the Board to enter into an agreement with MODJESKI & MASTERS, as Engineers, for the following project:

> All engineering services in connection with the excavation of the Metairie Relief (17th Street) Outfall Canal from Station #6 to Lake.

All engineering services connected with said project shall be in accordance with the suggested procedures of the American Society of Civil Engineers as outlined in its "Manual No. 45", dated 1972, and titled "Consulting Engineering, A Guide for the Engagement of Engineering Services".

The estimated cost of the project shall not exceed $800,000.00 and is based on material and contractor costs for the year 1978. The fee of the Engineers shall be as set out in Article 3.10 of the Agreement.

BE IT FURTHER RESOLVED that the Officer herein named is authorized, empowered and directed to enter into the necessary contract or agreement before the City Notary of New Orleans to sign, seal and deliver the same and to do and perform any act or deed legally necessary in order to properly effectuate the objects and purposes hereof.

---

I, Stuart H. Brehm, Jr., Executive Director, Sewerage and Water Board of New Orleans, do hereby certify that the above and foregoing is a true and correct copy of a Resolution adopted at the Regular Monthly Meeting of said Board, duly called and held, according to law, on August 9, 1978.

STUART H. BREHM, JR.
EXECUTIVE DIRECTOR
SEWERAGE AND WATER BOARD OF NEW ORLEANS

32

STATE OF LOUISIANA
PARISH OF ORLEANS

    I. **Stephen P. Bruno**, Custodian of Notarial Records.
Parish of Orleans, State of Louisiana, do hereby certify that the above and foregoing is a true
and correct copy of      **ACCEPTANCE OF CONTRACT**

NA#    946879
consisting of _____1_____ pages
dated the       20th            day of      Aug-92           executed before

                              Illegible                     a Notary Public of the

Parish of Orleans, State of Louisiana, the original of which document is on file in my office.
    New Orleans, Louisiana, this       19th      day of      Apr-06

No. 0 1 3 1 4 5

      **Stephen P. Bruno**
      CUSTODIAN OF NOTARIAL RECORDS
      PARISH OF ORLEANS
      Room B-4, Civil Courts Building
      421 Loyola Avenue
      New Orleans, Louisiana

MODJESKI
EXHIBIT 5

STATE OF LOUISIANA
PARISH OF ORLEANS

I. **Stephen P. Bruno**, Custodian of Notarial Records.
Parish of Orleans, State of Louisiana, do hereby certify that the above and foregoing is a true
and correct copy of         **ACCEPTANCE OF CONTRACT**

NA#        946879
consisting of ____1____ pages
dated the        20th        day of        Aug-92        executed before
                    Illegible        a Notary Public of the

Parish of Orleans, State of Louisiana, the original of which document is on file in my office.

New Orleans, Louisiana, this        19th        day of        Apr 06

No. 013145

**Stephen P. Bruno**
CUSTODIAN OF NOTARIAL RECORDS
PARISH OF ORLEANS
Room B-4, Civil Courts Building
421 Loyola Avenue
New Orleans, Louisiana

MODJESKI
EXHIBIT 5

*DPT*

STATE OF LOUISIANA

PARISH OF ORLEANS

INSTR. No. *128613*
MORTGAGE OFFICE
PARISH OF ORLEANS

ACCEPTANCE OF

CONTRACT

NO. 24306

BEFORE ME, the undersigned authority, duly commissioned and certified in and for the Parish of Orleans, personally came and appeared the Board of Commissioners of the Orleans Levee District, through Robert G. Harvey, President, duly authorized, who being by us sworn, deposed and said: that it entered into contract with ___Excavation & Flood Protection:___
_Hol Bros. Construction Co._ for _17th St. Canal, Ph. IB, Hammond Hwy to_ ___Southern Railroad___ New Orleans, Louisiana, under date of ___May 9, 1990___, by act before Richard J. McGinity, Notary Public, which contract was recorded in the Parish of Orleans, In Instrument No. _99035_ ___Recorded Dated:___ N. A. No. ___846895___, MOB _____, FOLIO ___5/29/90___ that the Contractor has apparently substantially completed all work required by the contract as of ___March 11, 1992___, and that the Board of Commissioners of the Orleans Levee District hereby accepts the work done under said contract, and authorizes and directs the Recorder of Mortgages for the Parish of Orleans to note this Acceptance thereof in the margin of said records.

Sworn to and subscribed before me
this ___ day of _____, 1992.

_____
NOTARY PUBLIC

Recommended Approval:

_____

THE BOARD OF COMMISSIONERS OF

THE ORLEANS LEVEE DISTRICT

_____
PRESIDENT

19 AUG 24 92

INSTR. No. _____
MORTGAGE OFFICE
PARISH OF ORLEANS
ACCEPT    = 15.00

08/24/92#3532A001

PARTNERS

W. B. CONWAY
H. H. SNYDER
C. F. COMSTOCK
J. J. SCHERRER
M. KULICKI

SENIOR ASSOCIATES

R. W. CHRISTIE
C. T. FORTRAN
H. E. WALDNER

CONSULTANTS

T. R. KEALEY
R. E. FELSBURG

## MODJESKI AND MASTERS

### CONSULTING ENGINEERS

*Founded 1893*

1055 ST CHARLES AVE
NEW ORLEANS LA 70130
TELEPHONE 504 - 524-4544

December 4, 1990

ASSOCIATES

H. E. ECKHOFF
T. Y. SOONG
J. E. PRICKETT
B. P. STRANK, JR
Q. F. SORGENFREI
B. T. MARTIN, JR
J. L. MCKENNEY
G. A. MURRAY
D. H. LEROY
R. A. LITTLE
L. V. BORDEN
E. W. ROHRBAUGH

Board of Commissioners of the
Orleans Levee District
Suite 202, Administration Building
New Orleans Lakefront Airport
New Orleans, Louisiana  70126

ATTN: Mr. Frederick M. Chatry,
Chief Engineer

RE: 17TH ST. CANAL FLOOD PROTECTION SYSTEM
CAPPING OF FLOODWALLS
OLB PROJECT NO. 2043-0207

Gentlemen:

In response to recent telephone request from Mr. Baudier of DEI, we transmit herewith a proposal to provide engineering services in connection with the placement of a concrete cap on the Orleans-side Floodwall along the 17th Street Canal. As per instructions the engineering fee is to be a percentage of the estimated construction cost based on Curve A of ASCE Manual 45.

The construction cost of this work was estimated by us to be $3,313,800 plus 20% contingencies or $3,976,560 in our letter of September 27, 1990. That estimate was based on an assumed cross section for the floodwall and with no adjustments required to the interim sheet pile floodwall, either in terms of tip elevation or cut off elevation of the sheet piles. Subsequently, a copy of Corps of Engineers Design Memorandum No. 20 has been made available to us. In that DM, the cost of the same floodwall is estimated to be only $2,531,800 including 10% contingency.

The considerable difference between the two estimates is due to the fact that the floodwall cross-section presented in DM20 is of considerably less area than was assumed in our original estimate and therefore the total quantity of concrete is considerably less, (6,265 CY vs 9,000 CY). We believe that the floodwall cross section as presented in the DM should be used in determining the engineering fee, since it is that floodwall configuration which will be constructed.

However, the DM20 construction cost estimate is not representative of the actual site situation on some other points. The DM20 cost estimate was made by the COE assuming concurrent construction of the sheet pile portion and concrete portions of the floodwall, without recognition of the interim high level floodwall now being constructed using sheet piling alone. That soon-to-be existing sheet pile floodwall will have to be adjusted for construction of the concrete floodwall, and such adjustment (either burning off the sheet pile, or driving them deeper) is not reflected in the DM20 cost estimate.

MODJESKI
EXHIBIT 6

MOOJESKI AND MASTERS
December 4, 1990

Board of Commissioners of the
  Orleans Levee District
ATTN:  Mr. Frederick M. Chatry,
          Chief Engineer

Page 2

Further it has been recently learned that the sheet pile tip elevation for part
of the reaches will have to be lowered somewhat by redriving to fit a newly
revised (subsequent to DM20) criteria.  In addition some structure excavation
will be required to permit the forming of the DM20 wall configuration on the
already existing sheet pile wall, and backfill, dressing and re-seeding after
completion of the sheet pile redriving and concrete floodwall construction.

All of the above indicates that a revised construction cost estimate is in
order.  We have made such estimate including the construction requirements
discussed above and attach it to this proposal. We now estimate the construc-
tion cost of placing a concrete floodwall on the already existing sheet pile
floodwall to be $2,876,840.

We therefore propose a total lump sum fee for engineering services in connection
with the concrete floodwall of $194,186.00 based on 6.75% of the construction
cost.  In accordance with Section 8.3 of our contract, we understand that 30% of
the fee will apply to the Preliminary Plan phase 45% of the fee will apply to
the Final Design phase, 5% to the  Bidding phase, 15% to the Construction phase
and 5% to the Record Drawing phase.  (We recognize that if construction is admi-
nistered by COE, our Construction phase services may not be required.)

We trust this proposal is responsive to your requirements and we are ready to
proceed with the preliminary plan phase upon receipt of your authorization.

Very truly yours,

MOOJESKI AND MASTERS
Consulting Engineers

William B. Conway

WBC:gls
Encls.

cc:  Mr. Walter Baudier
      Design Engineering Inc.

36

MODJESKI & MASTERS ENGINEERS   Project __17th St. Canal.__   Made by __WBC__ 12/3/80

Subject __Estimate of Const.__   Checked by _____

__Cost.__   Sheet No. __1__ of ____

1. Mobilization & Demobilization    say $40,000   (DM20)

2. Redriving Sheet Piling

| Sta. to Sta. | Length | Phase IB Top Eel. | Road Top Elev. | Pile length to Drive | Quantity sq ft |
|---|---|---|---|---|---|
| 8+20 to 68+00 | 5780 | 13.5 | 6.25 | 7.25 | 43,355 |
| 68+00 to 80+40 | 1240 | 13.5 | 7.25 | 6.25 | 7,750 |
| 80+40 to 89+00 | 860 | 14.0 | 8.25 | 5.75 | 4945 |
| 89+00 to 97+96 | 896 | 14.0 | 10.25 | 3.75 | 3360 |
| 97+96 to 116+20 | 1824 | 14.5 | 12.75 | 1.75 | 3192 |
| 116+20 to 125+87 | 967 | 14.5 | 11.75 | 2.75 | 2660 |
|  |  |  |  |  | 65,062 sq ft |

65,062 sq ft @ $2.50/sq = $162,655

+ Studs   say 4 avg. per 22" = 4 x 5400/183 = 17800 x 2 = ($35,800)

3. Concrete in Floodwall

Computed by WBC as 6440 cy. (COE figure 6265 cy).
6440 x $330 = $2,125,200

Reinf. — COE includes in concrete price of $330/cy.

OR

4. Structural Excavation for formwork

Excavation is 2' deep both sides — (say thickness of conc.)
1'-6 + 10" = 2'-4" say 2'6 x 2'2 (stud 1'-6.)

[2'-6" x 2' x 2]   11767/27 = 4358 cy. x $5 = $21,790

5. Compacted Backfill [1'-6 x 2' x 2 x 1.20]   11767/27 = 3138 cy x $10 = $31,380

6. Waterproof Finish (DM20)   234,190 x $1.00 = $234,190

| Item | Unit | Quantity | Unit price. | Est. Cost |
|---|---|---|---|---|
| Mob. & Demob. | Lump | Lump | 40,000 | 40,000 |
| Redrive Sheet Piling | sq ft | 65,000 | 2.50 | 162,750 |
| Conc. in Floodwall | c.y. | 6440 | 330.00 | 2,125,200 |
| Struct. Excav. | c.y. | 4358 | 5.00 | 21,790 |
| Compacted Backfill | c.y. | 3138 | 10.00 | 31,380 |
| Waterproof Finish | sq ft | 234,190 | 1.00 | 234,190 |
|  |  |  |  | 2,615,310 |

Total with 10% Contingency. 261,530 = $2,876,840.

VSU MASTERS    Project _____     Made by *DFS* 12-3-90
  ...ERS       S... _____       Checked by _____
               ... _____    Sheet No. ___ ___ of ___

## Drive Existing Sheet Piles Extra 5'

1. Drive from, water rig due to levee width.
2. Use vibratory hammer
3. Good experience in extracting piles that have been in this levee for a period of time, therefor locks not frozen.
4. Drive piling by pairs (3.82' linear)
5. Drive a pair of piles 5ft (elev) in 2 minutes
6. Rate / hour     20 pair x 3.82 x 5 = 382 SF/Hr
   20 minutes / hour for crane repositioning, misc.
7. Rate / day     382 x 7 = 2674 SF/day  (8 hr day)

Labor     7 x 25 x 2 x 8 x 1.2 = $3360
Mat'l     none
Equip     Crane    900 ⎫
          Floats   300 ⎬ Day = $2400
          Hammer   800 ⎪
          Tug      400 ⎭     $5760   Say $6000/day

$6000 ÷ 2674 = $2.24 / SF

with allowance ⟨ use 2.50 / sq ft ⟩
for supervision

38



$$\boxed{6490.88 \text{ cy}}$$

Sta          Length          A   A'   B   C   $C_1$   O

0 — 7+50                          40          6.5        8.5  7.5  14.0

750[ 2.5 x .875 + 3.75 x 1.75 + 5.75] = 7975/27  = (341.203)

8+20 — 70+00          (0.5)  1.5  3.5      3.5  6.25  14.0

6180[ 4.0 x 0.875 + 3.75 x 1.75 + 6.75] = 105300/27  = (3911.610)

70+00 — 80+40          1.5  3.5  4.5      6.5  7.25  14.0

1040[ 3.0 x 0.875 + 3.75 x 1.75 + 5.75] = 15555/27  = (575.71)

81+63 — 87+25          7.62   2.5   4.5   5.5   7.5   8.25  14.0

762 x [ 3.0 x 0.875 + 3.75 x 1.75 + 5.25 x 1] = 11006/27 = (407.94)

87+25 — 98+22          877   7.5   9.5   7.5   7.5   10.25  14.5

877 x [ 3.75 x 1.75 + 3.25 x 1.0 ] = 8610/27 = (318.87)

73+22 — 101+86          10.0   12.0   10.0  12.0  12.75  14.5

364 x 4.5 x 1.75 = 2866.5/27 = (106.16)

101+86 — 117+20          10   12   10  12  13.75 — 15.0

1534 x 5 x 1.75 = 13422.5/27 = (497.13)

117+20 — 125+87          9   11   9  11  11.75  15.0

877 x 6 x 1.75 = 9208.5/27 = (341.05)

39

PARTNERS
W B CONWAY
H SNYDER
C F COMSTOCK
J SCHERRER
M KULCHI

SENIOR ASSOCIATES
R W CHRISTIE
T FORTRAN
H E WALDNER

CONSULTANTS
R KEALEY
H E PELSBURG

**MODJESKI AND MASTERS**

CONSULTING ENGINEERS

*Founded 1893*

1055 ST CHARLES AVE
NEW ORLEANS LA 70130
TELEPHONE 504 · 524 4344

ASSOCIATES
H E ECKHOFF
T Y SCONG
J E PRICKETT
B H STRUM JR
D F SORGENFREI
B T MARTIN JR
J L MCKENNEY
G A MURRAY
D H LEROY
R A LITTLE
L V BORDEN
E W ROHRBAUGH

January 7, 1991

Board of Commissioners of the
  Orleans Levee District
Suite 202, Administration Bldg.
New Orleans Lakefront Airport
New Orleans, LA  70126

ATTN:  Mr. Frederick M. Chatry, Chief Engineer

RE:  17TH STREET CANAL FLOOD PROTECTION SYSTEM
     CAPPING OF FLOODWALLS
     OLB PROJECT NO. 2043-0207

Gentlemen:

Reference is made to our proposal of December 4, 1990 to provide
engineering services in connection with the placement of a concrete
cap on the Orleans-side Floodwall along the 17th Street Canal.
That proposal included a construction cost estimate of $2,878,840
based on the floodwall cross section as presented in Corps of
Engineers Design Memorandum No. 20 with appropriate adjustments for
actual site conditions.

However, we have now been informed by Design Engineering Inc. that
the DM 20 floodwall cross section should be modified to include
decorative wall treatment on the protected side. This will require
an increase in floodwall thickness as well as increased forming
costs.  Further, because high level flood protection now being
provided by the sheet pile wall can only be allowed to be breached
for a short segment (say 100 ft.) at any one time, costs of
redriving sheet pile, of forming concrete wall and of pouring the
wall will be considerably greater than normal. Additionally, there
will be some pile trimming required and some shear studs required
which were not included in the previous estimate.

All of these differences lead to the conclusion that the previously
submitted estimate should be revised.  Accordingly, we submit
herewith as Exhibit 1 a revised construction cost estimate for this
project.  We now estimate the construction cost of placing a
concrete floodwall on the already existing sheet pile floodwall to
be $3,933,790.

HARRISBURG, PA     NEW ORLEANS, LA     POUGHKEEPSIE, N.Y     BORDENTOWN, N.J.     LEESBURG, VA

MODJESKI
EXHIBIT 7

*B*

## M O D J E S K I   A N D   M A S T E R S

Bd. of Commissioners          January 7, 1991                    Page 2

We propose a revised total lump sum fee for engineering services in connection with the concrete floodwall of $255,645.00 based on 6.5% of construction cost.   In accordance with Section 8.3 of our contract, we understand that certain percentages of this fee are applicable to certain phases of the work and that if construction is administered by the COE, our Construction Phase Services may not be required.

We believe this proposal is now responsive to your requirements.

                      Very truly yours,

                      MODJESKI AND MASTERS
                      Consulting Engineers

                      WILLIAM B. CONWAY

WBC:jrb

cc:  Mr. Walter Baudier
    Design Engineering Inc.

41