## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re: KATRINA CANAL BREACHES CONSOLIDATED LITIGATION | § § § § | CIVIL ACTION NO. 05-4182 "K"(2) JUDGE DUVAL MAG. WILKINSON |
| | § | |
| PERTAINS TO: | § § | |
| MRGO | § § | |
| FILED IN: 05-4181, 05-4182, 05-5237, 05-6073, 05-6314, 05-6324, 05-6327, 06-0225, 06-0886, 06-2278, 06-2287, 06-4065, 06-4389, 06-4634, 06-4931, 06-5032, 06-5159, 06-5161, 06-5260, 06-5786, 06-5937, 07-1271 | § § § § § § § | |

### WASHINGTON GROUP INTERNATIONAL, INC.'S
### OBJECTIONS AND RESPONSES TO MRGO PLAINTIFFS'
### SUBGROUP LITIGATION COMMITTEE'S,
### REQUESTS FOR ADMISSION, INTERROGATORIES AND REQUESTS FOR
### PRODUCTION OF DOCUMENTS

In accordance with Fed. R. Civ. P. 33, 34 and 36, and Case Management and Scheduling

Order No. 4, § IV(B)(h), dated March 1, 2007 ("CMO No. 4"), Washington Group International,

Inc. ("WGII") hereby submits these Objections and Responses to MRGO Plaintiffs' Subgroup

Litigation Committee's Interrogatories, Requests for Admission, and Requests for Production of

Documents as follows:

### GENERAL OBJECTIONS:

The caption of the subject discovery served upon WGII reflects docket numbers of civil

actions which do not name WGII as a defendant and/or to which WGII has never been served



with process or otherwise made an appearance.[1]  Consequently, WGII objects to plaintiffs

serving written discovery upon WGII in cases in which WGII has not been made a party.  By

serving these Objections and Responses, WGII is responding exclusively to the discovery in

those actions in which it has made an appearance, and WGII does not waive any rights in regard

to the actions in which it has not been made a party and/or has not been served.

WGII further objects to these discovery requests as overbroad, unduly burdensome, not

relevant and not reasonably calculated to lead to the discovery of admissible evidence to the

extent they seek information unrelated to the plaintiffs' claims against WGII or WGII's defenses

thereto.  Specifically, paragraphs 40 through 45 of the MR-GO Master Consolidated Class

Action Complaint, dated March 15, 2007 ("MR-GO Complaint"), allege that WGII's demolition

and site preparation work in "the East Bank Industrial Area [("EBIA")] – a 32-acre site located

between Florida Avenue and Claiborne Avenue and extending from the canal to the

floodwall . . . . undermined the integrity of the levee, and/or floodwall along the eastern shoreline

of the IHNC/Industrial Canal, abutting the Lower Ninth Ward of Orleans Parish," which

ultimately caused and/or contributed to its failure.  MR-GO Complaint, ¶¶ 41, 43-44.  The

United States Army Corps of Engineers ("USACE") engaged WGII to perform this work, known

as Task Order 26 to the Total Environmental Restoration Contract ("Task Order 26"), in July

1999, and WGII completed all field activities in May 2005.[2]  At all times, WGII acted at the

---

[1] WGII has not been named as a Defendant in the following cases:  05-6359; 06-1884; 06-2152; 06-2824; 06-4024; 06-4066; 06-5155; 06-5162; 06-5771; 07-0206; 07-6021; 07-1073; 070-1285.  In addition, WGII has added case number 06-5786 to the above caption under the assumption that plaintiffs inadvertently omitted it.

[2] In August 1994, WGII (formerly, Morrison Knudsen Corporation) and the USACE entered into an Indefinite Delivery-Indefinite Quantity Contract for the remediation of various Hazardous, Toxic, and Radioactive Waste ("HTRW") sites on behalf of the USACE.  The contract, known as the Total Environmental Restoration Contract ("TERC"), provided general requirements for all of WGII's anticipated work on HTRW sites in the region with the understanding that the USACE would prepare more specific statements of work for each individual Delivery Order it issued under the contract.  On July 12, 1999, the USACE issued Task Order 26 to WGII for the purpose of demolishing the existing structures in the EBIA, removing surface and subsurface obstructions, characterizing the contaminants on the site and remediating the site in accordance with the Louisiana Department of

- 2 -

direction and under the supervision of the USACE.  Accordingly, to the extent Plaintiffs seek

information relating to locations other than the EBIA or IHNC/Industrial Canal and/or time

periods other than 1999-2005, WGII has interposed specific objections to these requests as set-

forth below.

WGII also objects to these discovery requests as unduly burdensome and harassing to the

extent they seek the production of documents and/or other materials that WGII previously

produced to MRGO Plaintiffs' Liaison Counsel in accordance with the Court's May 12, 2006

Order and/or the parties' July 2006 agreement. *See* Order, dated May 12, 2006, at 4 (requiring

defendants to produce to Plaintiffs' Liaison Counsel by June 1, 2006 all contracts with the U.S.

Army Corps of Engineers relating to this litigation); Ltr. from W. Treeby to J. Bruno, dated July

27, 2006 (describing the parties' agreement to produce documents relating to the government

contractor defense).[3]

WGII objects to these discovery requests to the extent they seek discovery protected by

the attorney-client privilege or attorney work product doctrine.  The inadvertent disclosure of any

privileged information shall not signify any intent by WGII to generally waive the rights to such

privilege.  To the extent so required, WGII will provide plaintiffs with a privilege log in

accordance with Federal Rule of Civil Procedure 26(b)(5) on or before February 29, 2008.

---

(continued...)

Environmental Quality's ("LDEQ") Risk Evaluation and Corrective Action Program ("RECAP") standards.  The USACE subsequently modified Task Order 26 fifty-seven times between July 1999 and the ultimate completion of field activities in May 2005.

[3] WGII already produced more than 800 pages of documents to plaintiffs on May 31, 2006, thirty-five boxes of documents on August 31, 2006, two boxes of color copies of photographs on December 12, 2006, and two boxes of documents on April 9, 2007.

- 3 -

WGII objects to each and every discovery request seeking information that is not in the custody and/or control of WGII, but rather in the custody and/or control of the plaintiffs or some other parties, persons or entities because each such request is unduly burdensome and harassing.

WGII states that it will supplement these discovery responses, as necessary, in accordance with Federal Rule of Civil Procedure 26(e).

Finally, while CMO No. 4, Section IV directs the parties to conduct discovery concerning "common liability issues," WGII, by responding to the instant discovery, does not agree that "common liability issues" exist or that any trial or trials on "common liability issues" is feasible, warranted or appropriate. The term "common liability issues" is defined in CMO No. 4 as "refer[ring] to the descriptions of all three claim categories set out above [Levee, MRGO and Insurance], but excludes quantification of individual damage claims and individual adjusting and other individual coverage issues asserted in the non-class action cases that are part of the Insurance category." CMO No. 4, § I(A). WGII denies that to the extent any liability issues exist in these consolidated cases, they are common to any of the parties in any way that would allow class certification of any liability issues for trial. WGII herein expressly reserves any and all rights to object to or to otherwise contest a trial or trials on "common liability issues." WGII's position in this regard shall be deemed applicable to any and all further responses to interrogatories, requests for production of documents and requests for admissions.

## SPECIFIC OBJECTIONS AND RESPONSES TO REQUESTS FOR ADMISSION:

## REQUEST FOR ADMISSION NO. 1:

Please admit or deny you have performed work or conducted maintenance activities on the IHNC/Industrial Canal, the GIWW, the MR-GO, the N.O. East Back End Levee/Citrus Back Levee, and the 40 Arpent Canal from 1965 to present.

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because the terms "work" and/or "maintenance activities" are not defined and are subject to multiple and different interpretations in this context. WGII also objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal and time periods other than 1999-2005 that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII admits only the following, and denies the Request in all other respects. Pursuant to a pre-existing Indefinite Delivery-Indefinite Quantity Contract with the USACE, on July 12, 1999, the USACE issued Task Order 26 to WGII for the purpose of demolishing existing structures in the EBIA, removing surface and subsurface obstructions, characterizing the contaminants on the site and remediating the site in accordance with the Louisiana Department of Environmental Quality's ("LDEQ") Risk Evaluation and Corrective Action Program ("RECAP") standards. WGII began field work in the EBIA in January 2001, and completed its field work, removed its equipment, and demobilized from the EBIA in May 2005. At all times WGII acted at the direction and under the supervision of the USACE pursuant to plans and specifications adopted and/or approved by the USACE.

**REQUEST FOR ADMISSION NO. 2:**

Please admit or deny that you have participated in the planning or design of engineering and/or construction projects on, in or along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1965 to the present.

- 5 -

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because the terms "planning,"

"design," and "engineering and/or construction projects" are not defined and are subject to

multiple and different interpretations in this context.  WGII also objects to this Request as

overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the

discovery of admissible evidence to the extent it seeks information relating to WGII's

participation in activities in locations other than the East Bank Industrial Area or

IHNC/Industrial Canal and time periods other than 1999-2005 that do not implicate and/or relate

to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII admits only that it participated in developing, preparing and submitting to

the USACE for review and approval, plans for clearing and remediating the EBIA.  To the extent

not otherwise admitted, WGII denies the remainder of this Request.

**REQUEST FOR ADMISSION NO. 3:**

Please admit or deny that the levees, floodwalls and/or spoilbanks along the
IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO,
and/or the 40 Arpent Canal failed to perform during and after Hurricane Katrina as originally
conceived, envisioned, planned, designed and/or intended.

**RESPONSE:**

WGII objects to this Request as overbroad, unduly burdensome, not relevant and not

reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks

information relating to locations other than the East Bank Industrial Area or IHNC/Industrial

Canal that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's

defenses thereto.  WGII also objects to this Request as vague and ambiguous because it fails to

specify a time period.

- 6 -

Subject to and without waiving these objections, and subject to the General Objections set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 4:

Please admit or deny that the levees, floodwalls and/or spoilbanks along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal failed to perform during and after Hurricane Katrina as anticipated, mandated by and/or reported or presented to Congress.

## RESPONSE:

WGII objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto. WGII also objects to this Request as vague and ambiguous because it fails to specify a time period.

Subject to and without waiving these objections, and subject to the General Objections set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 5:

Please admit or deny that the marshes and swamps of Southeast Louisiana provide a barrier or buffer zone to the Louisiana coastline and the Greater N.O. Area from hurricane storm surge.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because it fails to specify a time period.

- 7 -

Subject to and without waiving this objection, and subject to the General Objections set

forth above, after a reasonable inquiry, WGII is without sufficient information to admit or deny

this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 6:

Please admit or deny that the marshes and swamps of Southeast Louisiana are a necessary
and integral component of the natural and constructed hurricane protection system (e.g., levee
systems) for the Louisiana coastline and the Greater N.O. Area from hurricane storm surge.

## RESPONSE:

WGII objects to this Request as the terms "necessary" and "integral" are argumentative.

WGII also objects to this Request as vague and ambiguous because it fails to specify a time

period.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or

deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 7:

Please admit or deny that there was an alternative design for the construction, operation
and maintenance of the IHNC/Industrial Canal and the MR-GO prior to August 29, 2005, which
would have minimized the destruction, demise, and/or degradation of marshes, swamps and
coastline, and/or preserved or protected those land areas or wetlands in the vicinity of the Greater
N.O. Area from erosion.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "construction,"

"operation," and "maintenance" are not defined and are subject to multiple and different

interpretations in this context.

Subject to and without waiving this objection, and subject to the General Objections set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 8:

Please admit or deny that the design, engineering, construction, operation and maintenance of the IHNC/Industrial Canal and the MR-GO has resulted in the unnecessary and avoidable destruction, demise, and/or degradation of marshes, swamps and coastline vital to the protection of the Greater N.O. Area from the effects of hurricane storm surge.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "design," "engineering," "construction," "operation," and "maintenance" are not defined and are subject to multiple and different interpretations in this context. WGII also objects to this Request as the terms "unnecessary" and "avoidable" are argumentative. Finally, WGII objects to this Request as vague and ambiguous because it fails to specify a time period.

Subject to and without waiving these objections, and subject to the General Objections set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 9:

Please admit or deny that the failures in the design, engineering, construction, operation and maintenance of the IHNC/Industrial Canal, N.O. East Back end Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal caused, contributed to or exacerbated the effects of storm surge in the Greater N.O. Area.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "design," "engineering," "construction," "operation," and "maintenance" are not defined and are subject to multiple and different interpretations in this context. WGII also objects to this Request as vague

because it does not specify a time period or any other means to identify the storm surge
referenced.

Subject to and without waiving these objections, and subject to the General Objections
set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or
deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 10:

Please admit or deny that the maximum hurricane force winds in the immediate vicinity
of the IHNC/Industrial Canal were less than 110 mph.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the phrase "immediate
vicinity" is not defined and is subject to multiple and different interpretations in this context.
WGII also objects to this Request as vague and ambiguous because it does not specify a time
period or name the hurricane(s) to which it is referring.

Subject to and without waiving these objections, and subject to the General Objections
set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or
deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 11:

Please admit or deny that you have provided oversight or supervision of projects and/or
works performed or conducted on the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus
Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "oversight,"
"supervision" and "works" are not defined and are subject to multiple and different
interpretations in this context. WGII also objects to this Request as vague and ambiguous
because it does not specify a time period. WGII further objects to this Request as overbroad,

unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of

admissible evidence to the extent it seeks information relating to WGII's activities in locations

other than the East Bank Industrial Area or IHNC/Industrial Canal that do not implicate and/or

relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII admits only that it reviewed plans for, directed and inspected – with the

USACE – all field work performed by its subcontractors in the EBIA between 2001 and 2005.

At all times, WGII and its subcontractors performed such field work pursuant to USACE-

approved plans and specifications and under the USACE's direction.  To the extent not otherwise

admitted, WGII denies the remainder of this Request.

## REQUEST FOR ADMISSION NO. 12:

Please admit or deny that you or someone acting on your behalf or at your direction has
performed maintenance, including dredging, on, in or along the IHNC/Industrial Canal, N.O.
East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "maintenance"

and "dredging" are undefined and subject to multiple and different interpretations in this context.

WGII also objects to this Request as vague and ambiguous because it fails to specify a time

period.  WGII further objects to this Request as overbroad, unduly burdensome, not relevant and

not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks

information relating to locations other than the East Bank Industrial Area or IHNC/Industrial

Canal that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's

defenses thereto.

- 11 -

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII denies that it "performed maintenance, including dredging, on, in, or along" the IHNC/Industrial Canal. WGII admits only that it and/or its subcontractors performed the specific activities identified in the "Technical Completion Report and Record Drawings – Inner Harbor Navigation Canal – East Bank Industrial Area," dated August 2005 (WGI078124-279), including:  Site assessment and surveys; site investigation, sampling and analysis; geophysical surveying; grid trenching; above-ground structure demolition; surface cleanup, concrete foundation and onshore foundation piling removal; barge removal and disposal; wharf and offshore piling removal and disposal; RECAP soil excavation, remediation, and disposal; clearance sampling and analysis; canal bank and Surekote Road removal and disposal; miscellaneous abatement operations, and final site grading and restoration in the EBIA. At all times WGII performed these activities pursuant to plans and specifications approved by the USACE and at the direction and under the supervision of the USACE.

## REQUEST FOR ADMISSION NO. 13:

Please admit or deny that you or someone acting on your behalf or at your direction has sought or requested permits from the U.S. Army, Corps of Engineers to perform or conduct maintenance activities, including dredging, on, in or along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "maintenance activities" and "dredging" are undefined and subject to multiple and different interpretations in this context.  WGII also objects to this Request as vague and ambiguous because it fails to specify a time period.  WGII further objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to WGII's activities in locations other than the East Bank

- 12 -

Industrial Area or IHNC/Industrial Canal and during time periods other than 1999-2005, which

do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses

thereto.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII denies that it sought or requested permits from the USACE "to perform or

conduct maintenance activities, including dredging, on, in, or along the IHNC/Industrial Canal,

N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO or the 40 Arpent Canal."

## REQUEST FOR ADMISSION NO. 14:

Please admit or deny that you or someone acting on your behalf or at your direction has
received or been issued permits from the U.S. Army, Corps of Engineers to perform or conduct
maintenance activities, including dredging, on, in or along the IHNC/Industrial Canal, N.O. East
Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "maintenance

activities" and "dredging" are undefined and subject to multiple and different interpretations in

this context. WGII also objects to this Request as vague and ambiguous because it fails to

specify a time period. WGII further objects to this Request as overbroad, unduly burdensome,

not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the

extent it seeks information relating to WGII's activities in locations other than the East Bank

Industrial Area or IHNC/Industrial Canal and during time periods other than 1999-2005, which

do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses

thereto.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII denies that it received and/or was issued a permit from the USACE "to

perform or conduct maintenance activities, including dredging, on in or along the

- 13 -

IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO,

and/or the 40 Arpent Canal."

## REQUEST FOR ADMISSION NO. 15:

Please admit or deny that all work performed on, in or along the IHNC/Industrial Canal,
N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal
by you or someone acting on your behalf or at your direction was conducted pursuant to a permit
issued by the U.S. Army, Corps of Engineers.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because it fails to specify a time

period, and the term "work" is undefined and subject to multiple and different interpretations in

this context. WGII further objects to this Request as overbroad, unduly burdensome, not

relevant and not reasonably calculated to lead to the discovery of admissible evidence to the

extent it seeks information relating WGII's activities in locations other than the East Bank

Industrial Area or IHNC/Industrial Canal and during time periods other than 1999-2005, which

do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses

thereto.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII denies that "all work" performed on, in or along the IHNC/Industrial

Canal or EBIA was performed pursuant to a permit issued by the USACE. WGII admits only

that the field work it performed in the EBIA was done pursuant to a contract with the USACE

and in conformity with plans and specifications approved by the USACE.

## REQUEST FOR ADMISSION NO. 16:

Please admit or deny that all work performed on, in or along the IHNC/Industrial Canal,
N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal
by you or someone acting on your behalf or at your direction was conducted as part of a plan
approved by the U.S. Army, Corps of Engineers or under the supervision or oversight of the U.S.
Army, Corps of Engineers.

- 14 -

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because it fails to specify a time period, and the term "work" is undefined and subject to multiple and different interpretations in this context. WGII further objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to WGII's activities in locations other than the East Bank Industrial Area or IHNC/Industrial Canal that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII admits that all of its field work performed on, in or along the EBIA was conducted pursuant to plans and specifications authorized and/or approved by the USACE. Moreover, WGII performed such field work at all times under the direction and the supervision of the USACE.

**REQUEST FOR ADMISSION NO. 17:**

Please admit or deny that the IHNC/Industrial Canal, GIWW and the MR-GO are navigable waterways.

**RESPONSE:**

WGII objects to this Request as vague because the phrase "navigable waterways" is undefined and subject to multiple and different interpretations in this context. WGII also objects to this Request because it calls for a legal conclusion. WGII further objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

- 15 -

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII admits this Request.

## REQUEST FOR ADMISSION NO. 18:

Please admit or deny that all design, engineering and construction projects involving the levees, floodwalls and/or spoilbanks along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal were funded by or through the U.S. Army, Corps of Engineers.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "design," "engineering," and "construction projects" are undefined and subject to multiple and different interpretations in this context. WGII also objects to this Request as vague and ambiguous because it fails to specify a time period. WGII further objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto. Finally, WGII objects to this Request because it is not relevant and not reasonably calculated to lead to the discovery of admissible evidence regarding "common liability issues."

Subject to and without waiving these objections, and subject to the General Objections set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 19:

Please admit or deny that the levees, floodwalls and/or spoilbanks along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal were expected, intended and/or supposed to, at least in part, prevent the inundation of adjacent property or lands in the Greater N.O. Area.

- 16 -

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because it fails to specify a time

period, and it fails to specify or sufficiently identify who held the referenced expectations,

intentions, or suppositions. WGII also objects to this Request as argumentative. WGII further

objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably

calculated to lead to the discovery of admissible evidence to the extent it seeks information

relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal that do

not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or

deny this Request, and as such, WGII denies the Request.

**REQUEST FOR ADMISSION NO. 20:**

Please admit or deny that the levees, floodwalls and/or spoilbanks along the
IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO,
and/or the 40 Arpent Canal were expected, intended and/or supposed to, at least in part, protect
the health, safety and welfare of the people in the Greater N.O. Area.

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because it fails to specify a time

period, and it fails to specify or sufficiently identify who held the referenced expectations,

intentions, or suppositions. WGII also objects to this Request as argumentative. WGII further

objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably

calculated to lead to the discovery of admissible evidence to the extent it seeks information

relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal that do

not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 21:

Please admit or deny that the Orleans Levee District Board of Commissioners supervised all flood control projects along the East Bank Industrial Area of the IHNC/Industrial Canal and the N.O. East Back End Levee/Citrus Back Levee.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the term "supervised" is undefined and subject to multiple and different interpretations in this context. WGII also objects to this Request as vague and ambiguous because it fails to specify a time period. WGII further objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 22:

Please admit or deny that the Orleans Levee District Board of Commissioners supervised all demolition and removal activity projects along the East Bank Industrial Area of the IHNC/Industrial Canal from 1998 to August 29, 2005.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the term "supervised" is undefined and subject to multiple and different interpretations in this context. WGII also objects

- 18 -

to this Request as overbroad and unduly burdensome to the extent it seeks information relating to time periods prior to July 1999 that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII denies that the Orleans Levee District Board of Commissioners ("OLD") supervised WGII's and/or its subcontractors' "demolition and removal activity projects along the East Bank Industrial Area of the IHNC/Industrial Canal."

## REQUEST FOR ADMISSION NO. 23:

Please admit or deny that the Orleans Levee District Board of Commissioners required that permits be obtained to conduct demolition and removal activities along the East Bank Industrial Area of the IHNC/Industrial Canal pursuant to the Total Environmental Restoration Contract, Task Order 26.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because it fails to specify a time period.

Subject to and without waiving this objection, and subject to the General Objections set forth above, WGII denies that the OLD required WGII to obtain "permits" in order "to conduct demolition and removal activities along the EBIA."

## REQUEST FOR ADMISSION NO. 24:

Please admit or deny that the Orleans Levee District Board of Commissioners required that as a condition of approval to conduct demolition and removal activity at the East Bank Industrial Area of the IHNC/Industrial Canal, the Washington Group International, Inc., notify the Orleans Levee District Board of Commissioners that the demolition activities associated with Total Environmental Restoration Contract, Task Order 26 were completed so that an inspection and approval of the levee/flood wall condition may be made.

- 19 -

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because it fails to specify a time

period.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII denies that "the Orleans Levee District Board of Commissioners required

that WGII notify the Orleans Levee District Board of Commissioners that the demolition

activities associated with the TERC, Task Order 26 were completed so that an inspection and

approval of the levee/flood wall condition could be made."

### REQUEST FOR ADMISSION NO. 25:

Please admit or deny that the Orleans Levee District Board of Commissioners was not
notified that the demolition activities associated with the Total Environmental Restoration
Contract, Task Order 26 were completed so that an inspection and approval of the levee/flood
wall condition may be made.

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because it fails to specify a time

period.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or

deny whether the OLD was notified that demolition activities associated with Task Order 26

"were completed so that an inspection and approval of the levee/flood wall condition may be

made," and as such, WGII denies this Request.

### REQUEST FOR ADMISSION NO. 26:

Please admit or deny that the Orleans Levee District did not perform an analysis of the
levee/floodwall along the East Bank Industrial Area of the IHNC/Industrial Canal after the
completion of the demolition and removal activities at the East Bank Industrial Area of the
IHNC/Industrial Canal pursuant to the Total Environmental Restoration Contract, Task Order 26.

- 20 -

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because it fails to specify a time

period.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or

deny this Request, and as such, WGII denies the Request.

**REQUEST FOR ADMISSION NO. 27:**

Please admit or deny that Washington Group International, Inc. performed excavations in
the East Bank Industrial Area of the IHNC/Industrial Canal.

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because it fails to specify a time

period.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII admits that it and/or its subcontractors performed excavations in the EBIA

pursuant to plans and specifications approved by the USACE. All such excavation work was

monitored by and/or accepted by the USACE.

**REQUEST FOR ADMISSION NO. 28:**

Please admit or deny that Washington Group International, Inc. was aware that
excavations in the East Bank Industrial Area of the IHNC/Industrial Canal would allow the
subsurface migration of water from the IHNC/Industrial Canal.

**RESPONSE:**

Subject to and without waiving its General Objections set forth above, WGII denies this

Request.

- 21 -

## REQUEST FOR ADMISSION NO. 29:

Please admit or deny that excavations performed by the Washington Group International, Inc. in the East Bank Industrial Area of the IHNC/Industrial Canal did allow the subsurface migration of water from the IHNC/Industrial Canal.

## RESPONSE:

WGII objects to this Request as premature because liability discovery in the case has just

begun. WGII further objects to this Request as an improper acceleration of the June 30, 2008

deadline for WGII to submit its expert report(s). *See* CMO No. 4, § IV(E)(4).

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII states that it had no duty to monitor and/or evaluate the existence of any

alleged "subsurface migration of water from the IHNC/Industrial Canal;" accordingly, after a

reasonable inquiry, WGII is without sufficient information to admit or deny this Request, and as

such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 30:

Please admit or deny that the Total Environmental Restoration Contract, Task Order 26 performed by the Washington Group International, Inc. was a performance specifications contract in which the contract set forth an objective or standard to be achieved, and the Washington Group International, Inc. was expected to exercise its ingenuity in achieving that objective or standard of performance, selecting the means and assuming a corresponding responsibility for that selection as contemplated by the Court in *J.L. Simmons Co. v. United States*, 412 F.2d 1360, 1362 (1969).

## RESPONSE:

WGII objects to this Request as calling for a legal conclusion. WGII further objects to

this Request as beyond the permissible bounds of Federal Rule of Civil Procedure 36.

Subject to and without waiving the General Objections set forth above, WGII admits only

that it previously produced to plaintiffs the TERC, Task Order 26, all Statements of Work from

the USACE, as well as numerous work plans, specifications and/or designs that were approved

by the USACE in advance of any field work being implemented. WGII cannot be required to

- 22 -

provide legal conclusions regarding those documents, and accordingly, denies the remainder of this Request.

## REQUEST FOR ADMISSION NO. 31:

Please admit or deny that the Total Environmental Restoration Contract, Task Order 26 did not provide detailed design specifications.

## RESPONSE:

WGII objects to this Request as calling for a legal conclusion. WGII also objects to this Request as beyond the permissible bounds of Federal Rule of Civil Procedure 36. WGII further objects to this request as vague and ambiguous because the phrase "design specifications" is not defined, and is subject to multiple and different interpretations in this context.

Subject to and without waiving the General Objections set forth above, WGII admits only that it previously produced to plaintiffs the TERC, Task Order 26, all Statements of Work from the USACE, as well as numerous plans, specifications and/or designs that were approved by the USACE. WGII cannot be required to provide legal conclusions regarding those documents, and accordingly, denies the remainder of this Request.

## REQUEST FOR ADMISSION NO. 32:

Please admit or deny that the scope of the excavations performed by the Washington Group International, Inc. in the East Bank Industrial Area of the IHNC/Industrial Canal expanded after initial approval by the United States Army Corps of Engineers.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "scope of excavations" and "expanded" are undefined and subject to multiple interpretations in this context. WGII further objects to this Request as vague and ambiguous because it fails to specify a time period.

- 23 -

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII admits only that to the extent any excavations performed by WGII and/or

its subcontractors in the EBIA changed and/or differed in any way from the design and/or plan

originally approved by the USACE, such changes and/or differences were authorized by and/or

approved by the USACE.  To the extent not otherwise admitted, WGII denies the remainder of

this Request.

## REQUEST FOR ADMISSION NO. 33:

Please admit or deny that the Washington Group International, Inc. defined the scope of
the bank remediation to be performed in the East Bank Industrial Area of the IHNC/Industrial
Canal.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the phrase "defined the

scope of the bank remediation" is undefined and subject to multiple and different interpretations

in this context.  WGII further objects to this Request as vague and ambiguous because it fails to

specify a time period.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII denies this Request.

## REQUEST FOR ADMISSION NO. 34:

Please admit or deny that the scope of the bank remediation performed by the
Washington Group International, Inc. in the East Bank Industrial Area of the IHNC/Industrial
Canal expanded after initial approval by the U.S. Army, Corps of Engineers.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because the terms "scope of the

bank remediation" and "expanded" are undefined and subject to multiple interpretations in this

context. WGII further objects to this Request as vague and ambiguous because it fails to specify a time period.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII admits that to the extent any bank remediation performed by WGII and/or its subcontractors in the EBIA changed and/or differed in any way from the design and/or plan originally approved by the USACE, such changes and/or differences were authorized by and/or approved by the USACE. To the extent not otherwise admitted, WGII denies the remainder of this Request.

## REQUEST FOR ADMISSION NO. 35:

Please admit or deny that the Lake Borgne Basin Levee District supervised all flood control projects along the Mississippi River Gulf Outlet and the 40 Arpent Canal.

## RESPONSE:

WGII objects to this Request as vague and ambiguous because it fails to specify a time period. WGII further objects to this Request as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or deny this Request, and as such, WGII denies the Request.

## REQUEST FOR ADMISSION NO. 36:

Please admit or deny that the Total Environmental Restoration Contract, Task Order 26 was not a flood control project.

- 25 -

**RESPONSE:**

WGII objects to this Request because it calls for a legal conclusion.

Subject to and without waiving this objection, and subject to the General Objections set forth above, WGII admits that Task Order 26 was not "a flood control project."

**REQUEST FOR ADMISSION NO. 37:**

Please admit or deny that any document created, generated, or produced by you is deemed authentic and admissible into evidence under the Federal Rules of Civil Procedure and Code of Evidence.

**RESPONSE:**

WGII objects to this Request as overbroad, unduly burdensome, not relevant to "common liability" and not reasonably calculated to lead to the discovery of admissible evidence. WGII also objects to this Request as beyond the permissible bounds of Federal Rule of Civil Procedure 36.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII admits that CMO No. 4 provides that documents produced by a party "shall by reason of such production be presumed to be authentic documents under Fed. R. Evid. 901." CMO No. 4, § IV(C)(3)(d). Nevertheless, WGII is not in a position to stipulate to the authenticity of mass categories of documents, regardless of whether they have been produced by WGII, and as such, WGII denies that "any document created, generated, or produced by [WGII] is deemed authentic and admissible into evidence under Federal Rules of Civil Procedure and Code of Evidence." WGII reserves the right to rebut the presumption and to object to the authenticity of any such documents on a document-by-document basis at the appropriate time.

**REQUEST FOR ADMISSION NO. 38:**

Please admit or deny that the mechanism of failure of floodwalls along the East Bank Industrial Area of the IHNC/Industrial Canal at both areas of failure was due to, at least in part,

- 26 -

underseepage-induced instability as water from the IHNC/Industrial Canal passed beneath the sheet pile curtain of the floodwalls before, during and after Hurricane Katrina struck the Greater N.O. Area.

**RESPONSE:**

WGII objects to this Request as premature because liability discovery in the case has just

begun. WGII further objects to this Request as an improper acceleration of the June 30, 2008

deadline for WGII to submit its expert report(s). *See* CMO No. 4, § IV(E)(4).

Subject to and without waiving these objections, and subject to the General Objections

set forth above, after a reasonable inquiry, WGII is without sufficient information to admit or

deny this Request, and as such, WGII denies the Request.

**REQUEST FOR ADMISSION NO. 39:**

Please admit or deny that the soil stability of the area around the IHNC/Industrial Canal required that 750 yards be the minimum distance separating the works performed by Washington Group International, Inc. on structures along the IHNC/Industrial Canal.

**RESPONSE:**

WGII objects to this Request as vague and ambiguous because it fails to identify from

what "the works performed by Washington Group International, Inc." were "required" to be

separated by 750 yards. WGII further objects to this Request as argumentative and

incomprehensible.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII denies this Request.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

For each request for admission you denied, or for which you qualified your answer, please provide the following:

- 27 -

(i)     A list of all persons, by name and title, you contacted in formulating your response;

(ii)    A description of the information they provided to you in formulating your response; and

(iii)   An explanation of the basis for your denial or qualification of your response.

**RESPONSE:**

WGII's responses to Plaintiffs' Requests for Admission concerning common liability were formulated by WGII's litigation counsel. Identification of the specific names of and information possessed by litigation counsel is subject to the attorney-client privilege, and/or is protected attorney work product. WGII therefore objects to subparts (i) and (ii) of this interrogatory.

Subject to the General Objections stated above, as well as the specific objections already stated in WGII's responses to the Requests for Admissions, WGII provides the bases for its denial or qualification of response to Requests for Admission as follows:

*RFA 1*:

Qualified in that WGII denies performing "work" or conducting "maintenance activities" on the IHNC/Industrial Canal because these terms are undefined, vague and ambiguous; however, WGII admits to performing the field work described in RFA Response No. 1 as specified therein.

*RFA 2*:

Qualified in that WGII denies participating in the planning or design of "engineering and/or construction projects on, in or along the IHNC/Industrial Canal" because this phrase is vague and ambiguous; however, WGII admits to participating in the development, preparation and submission to the USACE for review and approval, plans for clearing and remediating the EBIA.

- 28 -

*RFA 3*:

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 4*:

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 5*:

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 6*:

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 7*:

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 8*:

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 9*:

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

- 29 -

*RFA 10*:

    After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 11*:

    Qualified in that WGII denies providing "oversight or supervision of projects and/or works performed or conducted on the IHNC/Industrial Canal" because this phrase is vague and ambiguous; however, WGII admits that it reviewed plans for, directed and inspected – with the USACE – all field work performed by its subcontractors in the EBIA between 2001 and 2005.

*RFA 12*:

    Qualified in that WGII denies performing "maintenance" and/or "dredging" on, in or along the IHNC/Industrial Canal because these terms are undefined, vague and ambiguous; however, WGII admits it and/or its subcontractors performed the following types of activities (at the direction and under the supervision of the USACE) in the EBIA:  Site assessment and surveys; site investigation, sampling and analysis; geophysical surveying; grid trenching; above-ground structure demolition; surface cleanup, concrete foundation and onshore foundation piling removal; barge removal and disposal; wharf and offshore piling removal and disposal; RECAP soil excavation, remediation, and disposal; clearance sampling and analysis; canal bank and Surekote Road removal and disposal; miscellaneous abatement operations, and final site grading and restoration in the EBIA.

*RFA 13*:

    WGII submits that this Request cannot be admitted because WGII is without information as to what the terms "maintenance" and "dredging" mean in this context.  In any event, WGII did not "dredge" the IHNC/Industrial Canal or otherwise request a "dredging" permit.

*RFA 14:*

WGII submits that this Request cannot be admitted because WGII is without information as to what the terms "maintenance" and "dredging" mean in this context. In any event, WGII did not "dredge" the IHNC/Industrial Canal or otherwise receive a "dredging permit."

*RFA 15:*

WGII qualifies that it did not perform work on, in or along the IHNC/Industrial Canal pursuant to a "permit" issued by the USACE. However, WGII did conduct work in the EBIA pursuant to permits issued by, *inter alia*, the Port of New Orleans, the LDEQ and the City of New Orleans. Copies of all permits obtained by WGII in connection with Task Order 26, to the extent they exist and are in WGII's custody, were previously produced to plaintiffs.

*RFA 16:*

Qualified in that WGII did not perform any work on, in or along the N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, or the 40 Arpent Canal.

*RFA 17:*

WGII cannot be required to provide a legal conclusion, but WGII otherwise admits this Request.

*RFA 18:*

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 19:*

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 20:*

      After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 21:*

      After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 22:*

      WGII states that it was not informed that the OLD would "supervise" and/or did "supervise" WGII's and/or its subcontractors' demolition and removal activity projects in the EBIA between 2001 and 2005.

*RFA 23:*

      WGII states that it is not aware that the OLD required WGII to obtain a permit "to conduct demolition and removal activities along the [EBIA] of the IHNC/Industrial Canal" pursuant to Task Order 26.

*RFA 24:*

      WGII states that it is not aware that the OLD informed WGII and/or its employees that WGII needed to notify the OLD when the demolition activities associated with Task Order 26 were completed so that an inspection and approval of the levee/flood wall condition could be made.

*RFA 25:*

      After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

**RFA 26:**

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

**RFA 27:**

Qualified in that all excavations WGII and/or its subcontractors performed in the EBIA were done pursuant to plans and specifications approved by the USACE. Moreover, all excavation work was monitored by and/or accepted by the USACE.

**RFA 28:**

WGII submits that it was not aware, and still is not aware, that excavations in the EBIA of the IHNC/Industrial Canal would allow the subsurface migration of water from the IHNC/Industrial Canal.

**RFA 29:**

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

**RFA 30:**

WGII cannot admit to this Request as it cannot be required to provide plaintiffs with a legal conclusion regarding the nature of its contract-related documents.

**RFA 31:**

WGII submits that this Request cannot be admitted because the phrase "detailed specifications" is undefined, vague and ambiguous. Moreover, WGII cannot be required to provide plaintiffs with a legal conclusion regarding the nature of its contract-related documents.

- 33 -

*RFA 32*:

Qualified in that WGII admits only that to the extent any excavations performed by WGII and/or its subcontractors in the EBIA changed and/or differed in any way from the design and/or plan originally approved by the USACE, such changes and/or differences were authorized by and/or approved by the USACE. WGII submits that it cannot admit that the "scope of the excavations performed by [WGII] . . . expanded after initial approval by the [USACE]" because this phrase is undefined, vague and ambiguous.

*RFA 33*:

WGII submits that this Request cannot be admitted because the phrase "defined the scope of bank remediation" is undefined, vague and ambiguous in this context. Further, all plans and any "scope of work" implemented by WGII in the EBIA were authorized and/or approved by the USACE.

*RFA 34*:

Qualified in that WGII admits only that to the extent any bank remediation performed by WGII and/or its subcontractors in the EBIA changed and/or differed in any way from the design and/or plan originally approved by the USACE, such changes and/or differences were authorized by and/or approved by the USACE. WGII submits that it cannot admit that the "scope of the bank remediation performed by [WGII] . . . expanded after initial approval by the [USACE]" because this phrase is undefined, vague and ambiguous.

*RFA 35*:

After a reasonable inquiry, WGII is without sufficient information to admit or deny this Request.

*RFA 36:*

Qualified in that WGII cannot be required to characterize Task Order 26, but WGII admits that it was not working on a flood control project in the EBIA.

*RFA 37:*

WGII submits that it is not in a position to stipulate to the authenticity of mass categories of documents, regardless of whether they have been produced by WGII, and as such, WGII denies that "any document created, generated, or produced by [WGII] is deemed authentic and admissible into evidence under Federal Rules of Civil Procedure and Code of Evidence." WGII reserves the right to rebut the presumption and to object to the authenticity of any such documents on a document-by-document basis at the appropriate time.

*RFA 38:*

WGII does not know, at this early stage of liability discovery, the cause(s) of the failure of floodwalls along the EBIA of the IHNC/Industrial Canal before, during and/or after Hurricane Katrina struck the Greater N.O. Area.

*RFA 39:*

WGII submits that this Request cannot be admitted because it vague, ambiguous and incomprehensible.

## **INTERROGATORY NO. 2:**

Please identify by longitude and latitude the coordinates of each breach, failure and/or overtopping of the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee system, the GIWW, the MR-GO and the 40 Arpent Canal. Please include in your answer the dates and times of each such breach, failure and/or overtopping.

- 35 -

**RESPONSE:**

WGII objects to this interrogatory because it is premature as liability discovery in the case has just begun, and it improperly accelerates the June 30, 2008 deadline for WGII to submit its expert report(s). *See* CMO No. 4, § IV(E)(4). WGII also objects to this interrogatory as vague and ambiguous with respect to the phrase "breach, failure and/or overtopping" because it is not defined and subject to multiple and different interpretations in this context. Finally, WGII objects to this interrogatory as overbroad and unduly burdensome to the extent it requests information relating to alleged breaches, failures and/or overtopping on, at or near locations that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that it currently is without knowledge to respond to this interrogatory.

**INTERROGATORY NO. 3:**

Please identify the cause of each breach, failure and/or overtopping identified in your Answer to Interrogatory No. 2 as revealed by any inspection or investigation by you and/or conducted or performed on your behalf. If you or anyone on your behalf has not inspected the location of each breach, failure and/or overtopping identified in response to Interrogatory No. 2, please identify what you contend or understand to be the cause of each breach, failure and/or overtopping and the basis for your contention or understanding.

**RESPONSE:**

WGII objects to this interrogatory because it is premature as liability discovery in that the case has just begun, and it improperly accelerates the June 30, 2008 deadline for WGII to submit its expert report(s). *See* CMO No. 4, § IV(E)(4). WGII also objects to this interrogatory as vague and ambiguous with respect to the phrase "breach, failure and/or overtopping" because it

- 36 -

is not defined and subject to multiple and different interpretations in this context. Finally, WGII objects to this interrogatory as overbroad, unduly burdensome, not relevant and reasonably calculated to lead to the discovery of admissible evidence to the extent it requests information relating to alleged breaches, failures and/or overtopping on, at or near locations that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that it currently is without knowledge to respond to this interrogatory.

**INTERROGATORY NO. 4:**

Please identify the maximum sustained hurricane force winds and water levels and/or storm surge heights and velocity prior to any breach, failure and/or overtopping identified in response to Interrogatory No. 2. Please included in your response the source, origin, means and manner by which such measurements or calculations were made or estimated, and the level or degree of scientific accuracy or reliability for each such measurement or calculation.

**RESPONSE:**

WGII objects to this interrogatory because it is premature as liability discovery in the case has just begun, and it improperly accelerates the June 30, 2008 deadline for WGII to submit its expert report(s). *See* CMO No. 4, § IV(E)(4). WGII also objects to this interrogatory as vague and ambiguous with respect to the phrase "breach, failure and/or overtopping" because it is not defined and subject to multiple and different interpretations in this context. Finally, WGII objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it requests information relating to alleged breaches, failures and/or overtopping on, at or near locations that do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections

- 37 -

set forth above, WGII responds that it currently is without knowledge to respond to this interrogatory.

## INTERROGATORY NO. 5:

Please describe with particularity the factual basis for each affirmative or separate defense or exception asserted in your answer to the MR-GO Master Consolidated Class Action Complaint and identify any evidence which you contend supports each such defense or exception.

## RESPONSE:

WGII objects to the interrogatory as premature because liability discovery in the case has just begun. WGII also objects to the interrogatory as premature when the named plaintiffs have not yet been deposed, and when plaintiffs failed to provide timely responses to class-certification discovery, such that WGII has just received those responses. WGII also objects to the interrogatory as an improper invasion of the attorney-client privilege and violation of the work-product doctrine because it calls for legal conclusions formulated by WGII's litigation counsel in preparing and filing the affirmative defenses. Moreover, WGII objects to the extent this interrogatory seeks a factual basis for certain legal defenses that apply as a matter of law.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds as follows:

A. *Failure to state a cause of action.* The factual basis for this affirmative defense has been asserted in WGII's Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(c) and Memorandum in Support thereof, filed May 2, 2007, and is fully incorporated herein by reference.

B.     *Prescription.*  To the extent that the named plaintiffs or members of their proposed class base their claims on alleged negligent acts of WGII that such plaintiffs knew or should have known existed more than one year prior to suit, such claims are barred.

C.     *No right of action.*  The named plaintiffs (and members of their proposed class) lack standing to bring claims for injuries and types of damages they have not sustained. Based on the plaintiffs' class-certification motion, it appears that the named plaintiffs seek to represent a proposed class for injuries that the named plaintiffs have not themselves sustained. Similarly, it is the burden of the named plaintiffs (and each member of their proposed class) to establish right, title and/or ownership to any property as to which they claim damages; in the absence of such proof, they lack standing or capacity to sue to recover damages to the property. Furthermore, to the extent the claims of the named plaintiffs or members of their putative class have been assigned to others, are affected by subrogation rights of others, or now belong to others due to a plaintiff's bankruptcy, the plaintiffs' standing or capacity to bring these claims may be limited or lacking. Finally, to the extent the named plaintiffs (and members of their proposed class) may have failed to exhaust their administrative remedies as required by law, they may lack standing or capacity to bring certain claims asserted in the complaint.

D.     *Failure to join indispensable parties.*  To the extent that plaintiffs' damages (or those of the members of their proposed class) were caused by other persons or entities not made parties to this case, such as those who designed, constructed, maintained, inspected or repaired aspects of the hurricane protection system, such parties may be indispensable to this litigation. For supporting evidence, see publicly available reports, including but not limited to, the IPET Report and Team Louisiana Report.

E.    *Duty/Risk.* The factual basis for this affirmative defense has been asserted in WGII's Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(c) and Memorandum in Support thereof, filed May 2, 2007, and is fully incorporated herein by reference. Moreover, the cause in fact and/or proximate cause of some or all of the injuries alleged by the named plaintiffs (and members of their proposed class) are wind; rain; fire; theft, vandalism, looting and other criminal acts; the acts of persons not a party to this action who designed, constructed, maintained, inspected, or repaired aspects of the hurricane protection system; or an Act of God. For supporting evidence, see publicly available reports, including, but not limited to, IPET Report and Team Louisiana Report. *See also* Washington Group International, Inc.'s Objections and Answers to MR-GO Plaintiffs' First Requests for Admissions, Interrogatories and Requests for Production of Documents, dated April 30, 2007 (Interrogatory Answer No. 14).

F.    *Comparative Fault.* WGII's factual bases for this affirmative defense are found in the MR-GO Master Consolidated Class Action Complaint ("MR-GO Complaint"), filed March 30, 2007, which alleges that United States of America and/or the U.S. Army Corps of Engineers, The Board of Commissioners of the Orleans Parish Levee District, The Board of Commissioners of the Lake Borgne Basin Levee District and St. Paul Fire and Marine Insurance Company, share liability and/or fault for plaintiffs' injuries. Further, to the extent the named plaintiffs or members of their proposed class were contributorily negligent or failed to mitigate their damages, and/or other unnamed parties otherwise contributed to the plaintiffs' alleged injuries (*e.g.*, parties who designed, constructed, maintained, inspected, or repaired aspects of the hurricane protection system, or parties who committed intervening criminal acts such as looting), such facts are the bases of WGII's comparative fault defense.

- 40 -

G.     *Act-of-God.*  WGII states that some or all of the injuries or damages alleged by the named plaintiffs and the proposed class members were due to wind, rain, levee overtopping, storm surge, and other factors associated with Hurricanes Katrina or Rita that were due to an Act of God. For supporting evidence, see publicly available reports, including but not limited to, the IPET Report and Team Louisiana Report, as well as Washington Group International, Inc.'s Objections and Answers to MR-GO Plaintiffs' First Requests for Admissions, Interrogatories and Requests for Production of Documents, dated April 30, 2007 (Interrogatory Answer No. 14).

H.     *Government Contractor Defense.*  At this point in the litigation, WGII's factual basis for this affirmative defense is described in a letter from WGII's counsel, William D. Treeby, to Plaintiffs' Liaison Counsel, Joseph Bruno, dated May 31, 2006, and is fully incorporated herein by reference. This defense is further supported by the documents produced to plaintiffs in connection with that letter.

I.     *Limitation of Liability.*  The factual bases for this defense is that WGII performed all its field work in the EBIA in accordance with established procedures and applicable state and federal laws. Moreover, WGII's work was performed in a non-negligent manner, and was not a proximate cause of the complained of injuries.

J.     *Discharge in Bankruptcy.*  The United States Bankruptcy Court for the District of Nevada confirmed WGII's bankruptcy on or about December 21, 2001, and went effective January 25, 2002. The Bankruptcy Code, WGII's plan of reorganization and modification thereto, and the orders entered by the Bankruptcy Court, including, but not limited to the bar date, assumption and confirmation orders, provide a legal basis to discharge all claims based upon pre-confirmation conduct that were neither made, scheduled or otherwise administered in

- 41 -

the Bankruptcy Court. Moreover, the Bankruptcy Court's bar date, assumption and confirmation orders barred, discharged and enjoined all claims against WGII, including those sounding in tort and/or contract. *See* Third Modification to Second Amended Joint Plan of Reorganization of Washington Group International, Inc., et al. as Modified, *In re Washington Group International, Inc., et al.*, Case No. BK-N-01-31627, at ¶ 31 (Bnkr. D. Nev. Nov. 9, 2001). The Bankruptcy Court also entered several separate orders barring all general unsecured or cure claims. To the extent Plaintiffs' claims against WGII existed as of the January 25, 2002 Effective Date, they are discharged by the Bankruptcy Court's order.

K.     *Adoption of affirmative and constitutional defenses available under federal law or the laws of other jurisdictions.* To the extent that the choice-of-law determination for the named plaintiffs or any member of their proposed class would require the application of the law of another jurisdiction to all or part of that plaintiff's claim, WGII will invoke the applicable affirmative and constitutional defenses of that jurisdiction. As to WGII's federal constitutional defenses, see the responses to subparts V and W below.

L.     *Adoption of affirmative defenses of other defendants.* WGII adopts and incorporates by reference any affirmative defense asserted by any other defendant to this action to the extent that such an affirmative defense applies to WGII, and WGII intends to rely upon any other defense that may become available or appear during the proceedings in this case.

M.     *Set-Off.* To the extent plaintiffs (and members of the proposed class) have settled or hereafter settle for any of the alleged injuries and damages with any persons, whether parties or non-parties, or should Plaintiffs receive any funds from insurance companies and/or federal or state agencies or programs, WGII is entitled to a credit and/or offset in the amount of said

- 42 -

settlement(s) and/or payment(s), which are not subject to the collateral source doctrine, and/or

for the amount of the settling and/or paying parties' allocated percentage of alleged fault.

N.     *Attorney's Fees Not Available.*  To the extent that Plaintiffs' Complaint seeks

attorney's fees, any such claims are barred by La. Code Civ. P. Art. 595(A).

O.     *Lack of Subject Matter Jurisdiction.*  The basis for this affirmative defense with

respect to the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1251, *et seq.*; 16

U.S.C. § 1451, *et seq*, is that the FWPCA addresses only "on-going pollution concerns, not the

alleged results of catastrophic flooding," as plaintiffs allege here.  *See Berthelot v. Boh Bros.*

*Construction Co.,* No. 05-4182, at 14 (E.D. La. July 19, 2006) (Duval, J.).  Moreover, the Court

has entered an Order (Docket No. 5435) establishing a briefing schedule to determine whether

the consolidated MRGO case sounds in admiralty.  *See* Suits in Admiralty Act ("SAA"), 46

U.S.C. §§ 741-52; Admiralty Extension Act, 46 U.S.C. § 740.

P.     *Improper Venue.*  The factual basis for this affirmative defense has been asserted

in WGII's Motion For Consolidation and Transfer of Venue to the Middle District of Louisiana

and Memorandum in Support thereof, filed January 24, 2007, and is fully incorporated herein by

reference.

Q.     *Political question doctrine.*  To the extent that the named plaintiffs (or members

of their proposed class) base their complaint upon political decisions, such as those about the

expenditure of public funds made with respect to the hurricane protection system's design,

construction, maintenance, inspection or repair, the complaint seeks to adjudicate questions that

are exclusively or predominantly political in nature, rather than judicial – the adjudication of

which questions would place the Court in conflict with another branch of government in

- 43 -

violation of the primary authority of that branch. To the extent that the complaint asks the Court to review controversies that revolve around policy choices and value determinations constitutionally committed to resolution in the Congress or state legislatures or to the executive branch, these matters are non-justiciable because judicial resolution of them would violate the separation of powers.

R.    *Res Judicata and preclusion.* To the extent plaintiffs (and members of the proposed class) and/or those in privity with them have participated and/or are participating in other cases before this Court or in other courts, certain claims of Plaintiffs (and members of the proposed class) or elements thereof, are or will be barred in whole or in part under the doctrines of res judicata, collateral estoppel, claim preclusion and/or issue preclusion.

S.    *Accord and satisfaction.* To the extent named plaintiffs (and members of their proposed class) have released, settled, or otherwise entered into an accord and satisfaction or compromised their claims, those claims are barred in whole or in part.

T.    *Laches, waiver, unclean hands, ratification or estoppel.* To the extent that the named plaintiffs (or members of their proposed class) seek to recover in equity, such equitable claims are barred by laches to the extent the plaintiff's assertion of his claim is untimely, by waiver to the extent the plaintiff has given up his claim, by unclean hands to the extent that the plaintiff's own conduct has not been equitable, by ratification to the extent the plaintiff has ratified the complained of actions of WGII, or by estoppel to the extent that the plaintiff by his own statements or action, is estopped to complain about WGII.

U.    *Intervening or superseding cause.* WGII's factual bases for this affirmative defense are found in the MR-GO Master Consolidated Class Action Complaint, filed March 30,

2007, which alleges that United States of America and/or the U.S. Army Corps of Engineers, The Board of Commissioners of the Orleans Parish Levee District, The Board of Commissioners of the Lake Borgne Basin Levee District and St. Paul Fire and Marine Insurance Company, caused and/or contributed to plaintiffs' damages. Further, any factual bases for this affirmative defense are equally available, if not more available, to named plaintiffs in this action, who have alleged in the MRGO Complaint, as well as in other complaints, that other parties, persons and/or entities caused and/or contributed to plaintiffs' damages. In addition, to the extent that plaintiffs' damages (or those of the members of their proposed class) were caused by wind; by rain; by fire; by theft; by vandalism, looting or other criminal acts; by other persons or entities not made parties to this case, such as those who designed, constructed, maintained, inspected or repaired aspects of the hurricane protection system; or were due to an Act of God, these are intervening or superseding causes. For supporting evidence, see publicly available reports, including but not limited to, the IPET Report and Team Louisiana Report, as well as Washington Group International, Inc.'s Objections and Answers to MR-GO Plaintiffs' First Requests for Admissions, Interrogatories and Requests for Production of Documents, dated April 30, 2007 (Interrogatory Answer No. 14).

V.     *Due process and access to courts.* WGII states that to the extent the named plaintiffs propose a trial plan for their proposed class action that would impair WGII's rights to present its own witnesses and to present relevant, individualized evidence, or would impair WGII's rights to cross-examine plaintiffs' witnesses on the basis of relevant, individualized evidence, such procedures would violate the federal and state constitutions. Denial of the right to present individualized proof relevant to each of the elements of liability, relevant to

- 45 -

affirmative defenses asserted, or relevant to each item of a plaintiff's (or proposed class member's) damages claim, would violate due process and WGII's right to access to the courts.

W.   *Seventh amendment.* WGII states that to the extent the named plaintiffs present a trial plan for their proposed class action that improperly divides issues so that a second jury reconsiders matters already decided by a first jury, or so that fact questions that defendants have the right to have the jury determine are not submitted to the jury, such a trial would violate WGII's Seventh Amendment rights.

X.   *Adequate remedy at law.* Plaintiffs' and their proposed class members' claims for equitable relief are barred because they have an adequate remedy at law, and WGII has insufficient information from plaintiffs regarding the bases, if any, for any claim for equitable relief.

Y.   *No class action.* WGII objects to this subpart of this interrogatory as it improperly accelerates the September 28, 2007 deadline (established by the Court in CMO No. 4) for WGII to state its basis for opposing class certification. Moreover, the interrogatory improperly seeks to shift the burden of proof by having WGII declare its position before WGII has seen plaintiffs' brief and evidence in support of their motion for class certification. Subject to the foregoing objections, the reasons why these claims may not be certified as a class action are set forth in Washington Group International, Inc.'s Objections and Answers to MR-GO Plaintiffs' First Requests for Admission, Interrogatories and Requests for Production of Documents, dated April 30, 2007 (Answers to Interrogatory Nos. 2, 3, 4, 5, 6, 7, 8 and 9).

Z.   *Improper joinder. See* Response to subparts V and Y above.

- 46 -

**INTERROGATORY NO. 6:**

Please identify any and all written or verbal agreements or contracts of any kind with or between you and any other Defendant named in the MR-GO Master Consolidated Class Action Complaint or any third party regarding any and all works performed on the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1951 until the present, as well as phone logs, letters, emails, faxes or other correspondence which in any way relate or refer to such agreements or contracts.

**RESPONSE:**

WGII objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal, and time periods other than 1999-2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that it produced its contract with the USACE and all related modifications relating to all works performed in the EBIA on May 31, 2006. *See* WGI000001-801. WGII similarly produced a chart identifying the entities that WGII subcontracted with to provide services in the EBIA on August 30, 2006. *See* WGI078213-19. Non-privileged documents responsive to the remainder of this interrogatory, to the extent they exist and have not already been produced, will be produced by February 29, 2008 in accordance with the Court's Case Management Order. *See* CMO No. 4, § IV(B)(1)(i).

**INTERROGATORY NO. 7:**

Please identify any and all documents of any kind relating to the design and implementation, authorization, or delineation of responsibility of or for any and all dredging projects on the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1951 through the present, as well as phone logs,

letters, e-mails, faxes or other correspondence which in any way relate or refer to such dredging projects.

## RESPONSE:

WGII objects to this interrogatory as vague and ambiguous with respect to the term "dredging projects" as it is not defined and subject to multiple and different interpretations in this context. WGII also objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the EBIA or IHNC/Industrial Canal, and time periods other than 1999-2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII and/or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that in 1999, the USACE engaged WGII to prepare the EBIA for subsequent construction by the USACE of a By Pass Channel for use during the Inner Harbor Navigation Canal Lock Replacement Project. The site preparation activities that WGII and/or its subcontractors performed between January 2001 and May 2005 at the direction of the USACE included the removal of existing buildings, building foundations, pilings, wharves, banks and contaminated soil. The USACE did *not* contract with WGII to construct the By Pass Channel through the EBIA. Based on a review of documents already produced in this litigation, the USACE ultimately planned to construct the By Pass Channel by removing soils and/or sediments in the EBIA to a depth of 22-feet using hydraulic dredges; however, WGII was not involved in the design or planning of that proposed work, and WGII did not enter into a contract with the USACE to perform such work. *See, e.g.*, WGI059585, WGI078132. Non-privileged documents responsive to this interrogatory, to the extent they exist and have not already been produced, will

- 48 -

be produced by February 29, 2008 in accordance with the Court's Case Management Order. *See*

CMO No. 4, § IV(B)(1)(i).

## INTERROGATORY NO. 8:

Please identify any and all permits obtained by or issued to you including, but not limited to, permits obtained from or issued by the U.S. Army, Corps of Engineers, to deepen and/or widen the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1951 through the present, as well as any phone logs, letters, e-mails, faxes or other correspondence which in any way relate or refer to such permits.

### RESPONSE:

WGII objects to this interrogatory as overbroad, unduly burdensome, not relevant and not

reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks

information relating to locations other than the East Bank Industrial Area or IHNC/Industrial

Canal, and time periods other than 1999-2005, which do not implicate and/or relate to any of

plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII responds that it has not obtained any permits "to deepen and/or widen the

IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO,

and/or the 40 Arpent Canal" between 1951 and the present.

## INTERROGATORY NO. 9:

Please identify all funds expended or earned by you in connection with any design, engineering, construction, operation or maintenance activities performed of, on or along the Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal between 1951 and the present.

WAI-2831000v3

**RESPONSE:**

WGII objects to this interrogatory as vague and ambiguous because the terms "engineering, construction, operation or maintenance activities of, on or along" are not defined and subject to multiple and different interpretations in this context. WGII also objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal, and time periods other than 1999-2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto. WGII further objects to this interrogatory as not relevant and not reasonably calculated to lead to the discovery of admissible evidence regarding "common liability" issues.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that it performed demolition and site preparation work in the EBIA, which included the removal of existing buildings, building foundations, pilings, wharves, banks and contaminated soil. On August 31, 2006, WGII produced to plaintiffs a series of "Task Order 26 Monthly Reports," which identify the amount paid to and expended by WGII in connection with this work as of the date of each Report. *See, e.g.*, Monthly Report for May 2005, at WGI054772. This information also is contained certain modifications to Task Order 26. *See, e.g.*, Modification No. 56 to Task Order 26, at WGI000788.

**INTERROGATORY NO. 10:**

Please identify any and all actions you determined to be necessary or required by the U.S. Army, Corps of Engineers of you relative to any design, engineering, construction, operation or maintenance activities performed of, on or along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal between 1951 and the present.

- 50 -

**RESPONSE:**

WGII objects to this interrogatory as vague and ambiguous because the phrases "actions you determined to be necessary" and "engineering, construction, operation or maintenance activities" are not defined and subject to multiple and different interpretations in this context. WGII also objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal, and time periods other than 1999-2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII and/or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that it performed demolition and site preparation work in the EBIA, which included the removal of existing buildings, building foundations, pilings, wharves, banks and contaminated soil. All such activities were performed under the direction and supervision of the USACE. Moreover, the USACE reviewed and approved all of WGII's work plans and specifications relating to such activities.

**INTERROGATORY NO. 11:**

Please identify the chain-of-command and/or management and/or decision-making structure for any and all design, engineering, construction, operation or maintenance activities, in which you participated in, were involved in, or performed on or along the IHNC/Industrial Canal, N.O. East Back End Levee//Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1951 through the present.

**RESPONSE:**

WGII objects to this interrogatory as vague and ambiguous because the phrases "chain-of-command and/or management and/or decision-making structure for any and all design, engineering, construction, operation or maintenance activities" is not defined and subject to

- 51 -

multiple and different interpretations in this context. WGII also objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal, and time periods other than 1999-2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that it performed demolition and site preparation work in the EBIA, which included the removal of existing buildings, building foundations, pilings, wharves, banks and contaminated soil. Moreover, Section 2 of the Project Work Plan for Project Site Development and Remedial Action of the East Bank Industrial Area, dated October 2000, outlines the basic organizational structure used to implement project work under the direction of the USACE New Orleans District (NOD) at the start of Task Order 26. *See* WGI041897-99. The USACE approved all of WGII and/or its subcontractors' work plans/specifications and any modifications thereto, and maintained an on-site presence in the EBIA at all times. Project Engineer James A. Montegut, III was the primary Point-Of-Contact (POC) and Contract Officer Representative (COR) for the USACE on the EBIA site from January 2001 to the completion of field activities in May 2005. Washington Group's Project Manager, Dennis O'Conner (and later, Richard Lesser) and/or Construction Manager, Phillip Staggs, reported directly to Mr. Montegut on a daily basis. WGII was informed by the USACE that Mr. Montegut was authorized to:

    a.    Verify that the contractor performs the technical requirements of the contract in accordance with the contract terms, conditions, and specifications. Specific emphasis should be placed on the quality provisions, for both adherence to the contract provisions and to the contractor's own quality control program.

- 52 -

b.      Perform, or cause to be performed, inspections necessary in connection with paragraph [a, above] and verify that the contractor has corrected all deficiencies. Perform acceptance for the Government of services performed under this contract.

c.      Maintain liaison and direct communications with the contractor.

d.      Monitor the contractor's performance, notify the contractor of deficiencies observed during surveillance, and direct appropriate action to effect correction. Record and report to the Contracting Officer incidents of faulty or nonconforming work, delays or problems.

Letter from J.M. Weatherly, Jr. to J. Montegut, cc: Stephen Roe (Jan. 30, 2001), WGI077088-92.

## INTERROGATORY NO. 12:

Please identify each of your liability or indemnity insurance policies for the years 1951 through the present, which may provide coverage for the matters alleged in the MR-GO Master Consolidated Class Action Complaint, and whether you have made demand upon an insurer or denied coverage to an insured for any portion of the policy limits.

## RESPONSE:

WGII objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to time periods prior to 1999, which do not implicate and/or relate to any of plaintiffs' claims against WGII and/or WGII's defenses thereto. WGII further objects to this interrogatory as not relevant and not reasonably calculated to lead to the discovery of admissible evidence regarding "common liability" issues.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that it will produce information responsive to this interrogatory as set forth in its response to Request for Production No. 1.

## INTERROGATORY NO. 13:

If you have given notice to, conferred, discussed, corresponded, or otherwise communicated with any of the insurers or insureds identified under any policy identified in

response to Interrogatory No. 12, please include the identification of each such notice, conference, discussion, correspondence and communication and state the reason for it.

**RESPONSE:**

WGII objects to this interrogatory as not relevant and not reasonably calculated to lead to

the discovery of admissible evidence regarding "common liability" issues.

**INTERROGATORY NO. 14:**

Since August 29, 2005, have you or someone on your behalf inspected the sites of the levee, floodwall and/or spoilbank breaches, failures and/or overtopping at or along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal? If so, please identify the following:

(i)     The name, address, telephone number, and employer of all persons conducting or present at such investigation;

(ii)    Any and all reports, draft reports, draft opinions, redacted materials, preliminary data, photographs, notes, videotapes, statements, etc obtained in connection with such investigation;

(iii)   The name, address, telephone number, and employer of the custodian of any materials identified in Subpart 17(B) above.

**RESPONSE:**

WGII objects to this interrogatory because it is premature as liability discovery in the

case has just begun, and it improperly accelerates the June 30, 2008 deadline for WGII to submit

its expert report(s). *See* CMO No. 4, § IV(E)(4). WGII objects to this interrogatory to the extent

it requires identification of WGII's and/or Defendants' draft reports and/or draft opinions in

violation of the Court's Case Management Order. *See* CMO No. 4, § IV(E)(2). WGII objects to

this interrogatory an improper invasion of the attorney-client privilege and a violation of the

attorney-work-product doctrine to the extent it requires the identification of WGII's litigation

counsel's work product and thought processes or inquires into inspections that may have been

done by WGII's litigation counsel. WGII objects to this interrogatory as overbroad, unduly

burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence because it requests information relating to alleged breaches, failures and/or overtopping on, at or near locations that pertain exclusively to the area of the New Orleans East Subclass as to which no claims have been alleged against WGII. Finally, WGII objects to Interrogatory 14(iii) because "Subpart 17(B)" is not defined and does not appear to exist.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that since August 29, 2005, Dr. Francisco Silva-Tulla (accompanied by WGII's litigation counsel and a representative from the USACE) visited sites along the east bank of the IHNC/Industrial Canal, between the Florida Avenue Bridge to the north and the Claiborne Avenue Bridge to the south, on behalf of WGII. Dr. Silva-Tulla took photographs during his field visit to this area, which are in Dr. Silva-Tulla's custody. Dr. Silva-Tulla's contact information is provided below; however, because he has been retained by WGII in this litigation, he should not be contacted by plaintiffs, except through WGII's counsel.

> Francisco Silva-Tulla, Sc.D., P.E.
> GeoEngineering and Environment
> 12 Baskin Road
> Lexington, Massachusetts, 02421
> (781) 862-1515

In addition, R. Lee Wooten, P.E., and Dr. Silva-Tulla, served as representatives of American Society of Civil Engineers Geo-Institute on the Levee Assessment Team sent to New Orleans following Hurricane Katrina, and Dr. Robert Dalrymple served as the leader of the American Society of Civil Engineers Coasts, Oceans, Ports, and Rivers Institute Levee Assessment Team sent to New Orleans following Hurricane Katrina. These assignments and the associated inspections, investigations, data collections, and reports were undertaken on behalf of the sponsoring authorities, and not on behalf of WGII. Contact information for Dr. Dalrymple

and Mr. Wooten is provided below; however, because they have now been retained by WGII in

this litigation, they should not be contacted by plaintiffs, except through WGII's counsel:

> Prof. Robert A. Dalrymple
> Department of Civil Engineering
> Johns Hopkins University
> 210 Latrobe Hall
> Baltimore, MD 21218
> (310) 516-7923

> Lee Wooten, PE
> GEI Consultants, Inc.
> 400 Unicorn Park Dr.
> Woburn, MA 01801
> (781) 721-4073

## INTERROGATORY NO. 15:

If you contend that any other Defendant or third party in any way caused or contributed
to the breaches, failures and/or overtoppings at or along the IHNC/Industrial Canal, N.O. East
Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal on or after
August 29, 2005, please detail each and every act or omission on the part of those Defendants or
third parties which you allege caused or contributed to the breaches and/or failures, including the
witnesses, documents and/or other evidence upon which you rely and base such contention or
understanding.

## RESPONSE:

WGII also objects to this interrogatory as vague and ambiguous with respect to the phrase

"breaches, failures and/or overtopping" because it is not defined and subject to multiple and

different interpretations in this context. WGII also objects to the interrogatory as premature

because liability discovery in the case has just begun, and it improperly accelerates the June 30,

2008 deadline for WGII to submit its expert report(s). *See* CMO No. 4, § IV(E)(4). WGII

further objects to this interrogatory as overbroad, unduly burdensome, not relevant and not

reasonably calculated to lead to the discovery of admissible evidence to the extent it requests

- 56 -

information relating to alleged breaches, failures and/or overtopping on, at or near areas that do

not implicate and/or relate to any of plaintiffs' claims against WGII.

## INTERROGATORY NO. 16:

Please identify any and all complaints regarding levee, floodwall, spoilbank and/or canal related breaks, breaches, sand boils, flooding, leak incidents, under seepage, flooded yards, water pooling, water running in trenches, etc. from anyone adjacent to or in the vicinity of the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal reported to you prior to August 29, 2005, and since Hurricane Betsy. For each such incident, please state the date and location of the incident, the name, address, and telephone number of the persons who reported the incident, and the name, address, and telephone number of the persons who were notified of and who responded to the report of the incident, as well as phone logs, letters, emails, faxes or other correspondence which in any way relate or freer to such incidents.

## RESPONSE:

WGII objects to this interrogatory as vague and ambiguous because the term

"complaints" and the phrase "in the vicinity" are not defined and are subject to multiple and

different interpretations in this context. WGII also objects to this interrogatory as overbroad,

unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of

admissible evidence to the extent it seeks information relating to locations other than the East

Bank Industrial Area or IHNC/Industrial Canal, and time periods prior to 1999, which do not

implicate and/or relate to any of plaintiffs' claims against WGII or any of WGII's defenses

thereto.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII responds that it is not aware that it received any "complaints regarding

levee, floodwall, spoilbank and/or canal related breaks, breaches, sand boils, flooding, leak

incidents, under seepage, flooded yards, water pooling, water running in trenches, etc. from

anyone adjacent to or in the vicinity of the IHNC/Industrial Canal" prior to August 29, 2005.

**INTERROGATORY NO. 17:**

Please identify whether you conducted or reviewed tests to determine the subsurface nature of the soils at locations where sheet pilings were installed on or along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1951 through the present. Please include the identify [sic] of the name and address of all persons participating in such testing, the dates of such testing, the reasons for such testing, the results and recommendations as a result of such testing, the corrective actions taken as a result of such testing, and the name and address of all contractors, engineers, third persons, government entities, and your employees participating in the corrective action.

**RESPONSE:**

WGII objects to this interrogatory as vague and ambiguous with respect to the phrase

"subsurface nature of the soils" because it is not defined and subject to multiple and different

interpretations in this context.  WGII also objects to this interrogatory as overbroad, unduly

burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible

evidence to the extent it seeks information relating to locations other than the East Bank

Industrial Area or IHNC/Industrial Canal, and time periods prior to 1999, which do not implicate

and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.  WGII also

objects to the interrogatory as premature because liability discovery in the case has just begun,

and it improperly accelerates the June 30, 2008 deadline for WGII to submit its expert report(s).

*See* CMO No. 4, § IV(E)(4).  WGII further objects to this interrogatory as overbroad and unduly

burdensome to the extent it seeks information relating to persons, entities and/or parties other

than WGII, its current or former employees or anyone acting on its behalf.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII responds that based on documents previously produced to plaintiffs on

August 31, 2006, it appears that WGII and/or its subcontractors and/or the USACE reviewed

information relating to "the subsurface nature of the soils at locations where sheet pilings were

installed" for the purpose of constructing temporary cofferdams in the IHNC/Industrial Canal

and/or EBIA. *See, e.g.,* WGI049230-47, WGI049224-29, WGI051686-745, WGI052218. WGII did not "conduct" the "testing" of the soils for this purpose, and is not aware of any "corrective actions taken as a result of such testing." Additional documents responsive to this interrogatory, to the extent they exist and have not already been produced, will be produced by February 29, 2008 in accordance with the Court's Case Management Order. *See* CMO No. 4, § IV(B)(1)(i).

## INTERROGATORY NO. 18:

Please describe all efforts you, anyone acting on your behalf, or anyone known to you have made to study and evaluate the suitability of and structural integrity of the levees, floodwalls and/or spoilbanks along the IHNC/Industrial Canal, N.O. East Back Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1965 through the present. Please include in your response the name and address of all persons participating in such studies, the dates of such studies, the reasons for such studies, the results and recommendations of such studies, the corrective actions taken, and the name and address of all persons in the corrective action.

## RESPONSE:

WGII objects to this interrogatory because it is premature as liability discovery in the case has just begun, and it improperly accelerates the June 30, 2008 deadline for WGII to submit its expert report(s). *See* CMO No. 4, § IV(E)(4). WGII also objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal, which do not implicate and/or relate to any of plaintiffs' claims against WGII and/or WGII's defenses thereto. WGII further objects to this interrogatory as overbroad and unduly burdensome to the extent it seeks information relating to persons, entities and/or parties other than WGII and/or its current or former employees or anyone acting on its behalf.

Subject to and without waiving these objections, and subject to the General Objections
set forth above, WGII responds that, apart from efforts undertaken to defend against the
plaintiffs' claims in this litigation, neither WGII (nor anyone acting on its behalf) were hired to,
were responsible for and/or have ever undertaken any efforts "to study and evaluate the
suitability of and structural integrity of the levees, floodwalls and/or spoilbanks along the
IHNC/Industrial Canal, N.O. East Back Levee/Citrus Back Levee, GIWW, the MR-GO, and/or
the 40 Arpent Canal."

## INTERROGATORY NO. 19:

Please identify any and all warnings from the U.S. Army Corps of Engineers or any other
person or entity that dredging the IHNC/Industrial Canal, N.O. East Back Levee/Citrus Back
Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal might weaken the stability of the canal
and/or the levees, floodwalls and/or spoil banks along the subject water bodies, as well as phone
logs, letters, e-mails, faxes or other correspondence which in any way relate or refer to such
warnings.

## RESPONSE:

WGII objects to this interrogatory as vague and ambiguous because the terms "dredging"
and "warnings" are not defined and are subject to multiple and different interpretations in this
context. WGII also objects to this interrogatory as vague and ambiguous because it fails to
specify a time period. WGII further objects to this interrogatory because it is premature as
liability discovery in the case has just begun. WGII finally objects to this interrogatory as
overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the
discovery of admissible evidence to the extent it seeks information relating to locations other
than the East Bank Industrial Area or IHNC/Industrial Canal, which do not implicate and/or
relate to any of plaintiffs' claims against WGII.

- 60 -

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that it was not hired to dredge the IHNC/Industrial Canal, N.O. East Back Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal, and it did not receive warnings from the USACE or any other person or entity that "dredging the IHNC/Industrial Canal, N.O. East Back Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal might weaken the stability of the canal and/or the levees, floodwalls and/or spoil banks along the subject water bodies."

## INTERROGATORY NO. 20:

Please identify and attach any and all versions of document/data retention and/or destruction policies used by you and identify documents or classes of documents that were subject to scheduled destruction from 1965 through the present, including those documents that relate to or reference the subject matter of this litigation.

### RESPONSE:

WGII objects to this interrogatory as not relevant and not reasonably calculated to lead to the discovery of admissible evidence regarding "common liability" issues. WGII also objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to time periods prior to 1999, which do not implicate and/or relate to any of plaintiffs' claims against WGII and/or WGII's defenses thereto. Finally, WGII objects to this interrogatory as an improper invasion of the attorney-client privilege and the work-product protection doctrine to the extent it requests information contained in drafts prepared by WGII's attorneys and/or communications to or from WGII's attorneys relating to WGII's "document/data retention and/or destruction policies that relate to or reference the subject matter of this litigation."

- 61 -

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII responds that on or before February 29, 2008, it will produce a copy of its

document retention policy, entitled "Records Management Program," which has been in effect

since on or before the start of Task Order 26 in July 1999.

## INTERROGATORY NO. 21:

Please indicate whether any of your employees, consultants, experts or representatives
who perform(ed) duties relative to the subject matter of this litigation, use portable devices in the
course of their employment that are not connected to your network and that are not backed up or
archived and please list all users and the devices they use.

### RESPONSE:

WGII objects to this interrogatory as overbroad, unduly burdensome, not relevant and/or

not reasonably calculated to lead to the discovery of admissible evidence regarding "common

liability issues." WGII also objects to this interrogatory as vague and ambiguous because it fails

to specify a time period.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII responds that to the extent computers were used by WGII employees

working on site at the EBIA, they were the property of the USACE, were not connected to

WGII's network and were returned to the USACE upon the completion of this project.

## INTERROGATORY NO. 22:

Please state the name, address, telephone number, and field of expertise of all consultants
contacted and/or retained by you in connection with projects associated with the IHNC/Industrial
Canal, N.O. East Back Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent
Canal from 1965 through the present, as well as phone logs, letters, e-mails, faxes or other
correspondence which in any way relate or refer to such consultants. For each such consultant,
please state the nature and scope of the project, as well as identify phone logs, letters, e-mails,
faxes or other correspondence which in any way relate or refer to such projects.

**RESPONSE:**

WGII objects to this interrogatory as vague and ambiguous because the term

"consultants" is not defined and is subject to multiple and different meanings in this context.

WGII also objects to this interrogatory as overbroad, unduly burdensome, not relevant and not

reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks

information relating to locations other than the East Bank Industrial Area/IHNC, and time

periods prior to 1999, which do not implicate and/or relate to any of plaintiffs' claims against

WGII. WGII further objects to this interrogatory as overbroad and unduly burdensome to the

extent it requests information relating to consultants "contacted by" (as opposed to "retained

by") WGII. WGII also objects to this interrogatory as overbroad and an improper invasion of the

attorney-client privilege and the work-product protection doctrine to the extent it requests the

names, addresses, telephone numbers, and fields of expertise of all non-testifying consultants

contacted and/or retained by WGII in connection with this litigation.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII responds that it retained various subcontractors to perform certain features

of work in the EBIA between 2000 and 2005, all of which are identified in response to

Interrogatory No. 6.

**INTERROGATORY NO. 23:**

Please state the name, address, telephone number, and field of expertise of all consultants
considered by you in connection with potential retention on projects associated with the

**RESPONSE:**

WGII objects to this interrogatory because it is appears to be incomplete, and therefore is

incomprehensible.

- 63 -

**INTERROGATORY NO. 24:**

Do you or anyone acting on your behalf, or known to you, contend that any person or entity in the course of their involvement with the IHNC/Industrial Canal, N.O. East Back Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal, including the U.S. Army, Corps of Engineers, violated any statute, ordinance, regulation or congressional mandate? If so, please identify each person, statute, ordinance, or regulation, the date on which such statute, ordinance, regulation, or congressional mandate was violated.

**RESPONSE:**

WGII objects to this interrogatory as premature because liability discovery in the case has

just begun. WGII also objects to this interrogatory as overbroad and unduly burdensome to the

extent it seeks information regarding the contentions of persons, parties or entities other than

WGII and its employees. WGII further objects to this interrogatory as an improper invasion of

the attorney-client privilege and violation of the work-product doctrine because, whether the

USACE violated any statute, ordinance, regulation or congressional mandate can be answered, if

at all, only by litigation counsel. Further, WGII objects to this interrogatory to the extent it calls

for legal conclusions.

**INTERROGATORY NO. 25:**

Please identify by name, address, and telephone number all of your employees, engineering or construction firms, and subcontractors and consultants who or which designed and/or fabricated and/or installed and/or gave final approval to the installation of each component part comprising the levee/floodwalls/spoilbanks at the locations of their August 29, 2005 breach sites, failures and/or over toppings at, on or along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and /or the 40 Arpent Canal.

**RESPONSE:**

WGII objects to this interrogatory as vague and ambiguous with respect to the term

"component part" and the phrase "breach sites, failures and/or over toppings" as they are not

defined and are subject to multiple and different interpretations in this context. WGII also

objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal, and time periods other than 1999-2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that none of its employees and/or former employees, and no engineering or construction firms, subcontractors and/or consultants acting pursuant to a contract with WGII "designed and/or fabricated and/or installed and/or gave final approval to the installation of any component part comprising the levee/floodwalls/spoilbanks at the locations of their August 29, 2005 breach sites, failures and/or over toppings at, on or along the IHNC/Industrial Canal."

## INTERROGATORY NO. 26:

Please provide the names, addresses, and telephone numbers of your employees and dates of employment who were responsible for maintaining and inspecting the levees/floodwalls, spoilbanks at, on or along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1965 through the present.

## RESPONSE:

WGII objects to this interrogatory as vague and ambiguous with respect to the term "maintaining" as it is not defined and is subject to multiple and different interpretations in this context. WGII also objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or

IHNC/Industrial Canal, and time periods other than 1999-2005, which do not implicate and/or
relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving the foregoing objections, WGII responds that none of its
employees "were responsible for maintaining and inspecting the levees/floodwalls, spoilbanks at,
on or along the IHNC/Industrial Canal."

## INTERROGATORY NO. 27:

Please identify any environmental impact studies regarding the destruction, demise,
degradation and/or erosion of natural marshes, swamps, barrier islands, or waterways resulting
from the design, engineering, implementation, operation and maintenance of the IHNC/Industrial
Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent
Canal from 1951 through the present.

## RESPONSE:

WGII objects to this interrogatory to the extent it seeks information that is obtainable
from some other source (i.e., as a matter of public record and/or from another party) that is more
convenient, less burdensome, less expensive, and as easily accessible and available to Plaintiff.
WGII also objects to this interrogatory because it is premature as liability discovery in the case
has just begun.

Subject to and without waiving these objections, and subject to the General Objections
set forth above, WGII responds that in 1997, the U.S. Army Corps of Engineers produced a
document entitled, "Final Environmental Impact Statement: Mississippi River-Gulf Outlet, New
Lock and Connecting Channels," ("EIS") the purpose of which apparently was "to determine the
best action for alleviating or eliminating navigation traffic associated with existing lock on the
Inner Harbor Navigation Canal (IHNC) in New Orleans, Louisiana."

**INTERROGATORY NO. 28:**

Please identify all project documents, including but not limited to, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (IS), Supplemental Environmental Impact Statements (IS), Barrier Plan, Parallel Plan, High Level Plans, studies, proposals, work orders, change orders, Request For Payments, etc., for the Lake Pontchartrain and Vicinity Hurricane Protection Project (LPVHPP) that regard or concern the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1951 through the present.

**RESPONSE:**

WGII objects to this interrogatory as vague and ambiguous because the terms

"investigations," "engineering investigations," and "studies" are not defined and are subject to

multiple and different interpretations in this context. WGII also objects to this interrogatory as

overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the

discovery of admissible evidence to the extent it seeks information relating to locations other

than the East Bank Industrial Area or IHNC/Industrial Canal, and time periods other than 1999-

2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's

defenses thereto. WGII further objects to this interrogatory to the extent it seeks information that

is obtainable from some other source (i.e., as a matter of public record and/or from another party)

that is more convenient, less burdensome, less expensive, and as easily accessible and available

to Plaintiff.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII responds that it was not involved in or responsible for preparing,

implementing and/or reviewing any "plans, specifications, surveys, modifications, design

memoranda, investigations, engineering investigations, Environmental Impact Statements (IS),

Supplemental Environmental Impact Statements (IS), Barrier Plan, Parallel Plan, High Level

Plans, studies, proposals, work orders, change orders, Request For Payments, etc., for the Lake

Pontchartrain and Vicinity Hurricane Protection Project (LPVHPP) that regard or concern the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal." Accordingly, WGII is not currently aware of any documents in its possession that are responsive to this interrogatory.

## INTERROGATORY NO. 29:

Please identify any and all known or suspected deviations or departures from any design plans for the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO and/or the 40 Arpent Canal from 1951 through the present.

## RESPONSE:

WGII objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal, and time periods other than 1999-2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto. WGII also objects to this interrogatory to the extent it seeks information that is obtainable from some other source (i.e., as a matter of public record and/or from another party) that is more convenient, less burdensome, less expensive, and as easily accessible and available to Plaintiff. WGII further objects to this interrogatory because it is premature as liability discovery in the case has just begun.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that it was not involved in or responsible for preparing, implementing and/or reviewing the design plans and/or any "suspected deviations" thereto for the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO and/or the 40 Arpent Canal. Accordingly, WGII does not currently have information in its possession that is responsive to this interrogatory.

- 68 -

## INTERROGATORY NO. 30:

Please identify any hydrology studies conducted of or on the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1951 through the present.

## RESPONSE:

WGII objects to this interrogatory to the extent it seeks information that is obtainable from some other source (i.e., as a matter of public record and/or from another party) that is more convenient, less burdensome, less expensive, and as easily accessible and available to Plaintiff. WGII also objects to this interrogatory as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information relating to locations other than the East Bank Industrial Area or IHNC/Industrial Canal, and time periods other than 1999-2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's defenses thereto.

Subject to and without waiving these objections, and subject to the General Objections set forth above, WGII responds that in 1997, the U.S. Army Corps of Engineers, New Orleans District, published a study entitled "Geology, Hydrogeology, and Hydrology of the IHNC, Specifically the Eastbank [*sic*] Industrial Area." WGII further responds that it no longer has a copy of this study in its possession, custody or control.

## INTERROGATORY NO. 31:

Please identify all documents correspondence, plans, specifications, surveys, modifications, design memoranda, investigations, engineering investigations, Environmental Impact Statements (IS), Supplemental Environmental Impact States (IS), studies, proposals, etc. relative to any alternative non-implemented plans, or modifications – which differed from standard engineering protocol, to the levee, floodwall and/or spoilbank construction plans along the IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO, and/or the 40 Arpent Canal from 1951 through the present.

- 69 -

**RESPONSE:**

WGII objects to this interrogatory as vague and ambiguous because the terms

"investigations," "engineering investigations," and "studies" are not defined and are subject to

multiple and different interpretations in this context.  WGII also objects to this interrogatory as

overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the

discovery of admissible evidence to the extent it seeks information relating to locations other

than the East Bank Industrial Area or IHNC/Industrial Canal, and time periods other than 1999-

2005, which do not implicate and/or relate to any of plaintiffs' claims against WGII or WGII's

defenses thereto.  WGII further objects to this interrogatory to the extent it seeks information that

is obtainable from some other source (i.e., as a matter of public record and/or from another party)

that is more convenient, less burdensome, less expensive, and as easily accessible and available

to Plaintiff.

Subject to and without waiving these objections, and subject to the General Objections

set forth above, WGII responds that it was not involved in or responsible for preparing,

implementing and/or reviewing "levee, floodwall and/or spoilbank construction plans along the

IHNC/Industrial Canal, N.O. East Back End Levee/Citrus Back Levee, GIWW, the MR-GO,

and/or the 40 Arpent Canal."  Accordingly, WGII is not currently aware of any documents in its

possession that are responsive to this interrogatory.

**INTERROGATORY NO. 32:**

Please define the scope of the work associated with Total Environmental Restoration
Contract, Task Order 26, including all applicable codes, rules and regulations governing the
work performed.