# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| IN RE:  KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO:  BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K"  (2) |
| *Boutte v. Lafarge*      05-5531 | * | |
| *Mumford v. Ingram*      05-5724 | * | |
| *Lagarde v. Lafarge*     06-5342 | * | JUDGE |
| *Perry v. Ingram*        06-6299 | * | STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge*      06-7516 | * | |
| *Parfait Family v. USA*  07-3500 | * | MAG. |
| *Lafarge v. USA*         07-5178 | * | JOSEPH C. WILKINSON, JR. |
| *Weber v. Lafarge*       08-4459 | * | |

## BARGE PLAINTIFFS' APPEAL FROM THE DENIAL OF THEIR RENEWED MOTION FOR LEAVE TO FILE THEIR REVISED PROPOSED SEVENTH AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR DAMAGES

Barge Plaintiffs submit this Appeal from the December 17, 2008 Order (Doc. # 16755) denying their December 1, 2008 Motion for Leave to File their Revised Proposed Seventh Amended Consolidated Class Action Complaint for Damages (Doc. # 16572).  Although that Motion involved a revised proposed pleading that cured all prejudice which the Magistrate Judge had found in an earlier version of the proposed Seventh Amended Complaint, the Order did not address the changes in the pleading or the changes in circumstance and stated that the Motion was:

> DENIED, for the same reasons that I previously denied Plaintiff's previous Motion for Leave to File a <u>Seventh</u> Amended Complaint.  "Good cause" has not been shown and this motion is grossly untimely in all respects.  <u>See</u> Record Doc. No. 15902.

This Appeal therefore requires a discussion of the previous denial.

In addition, a December 31, 2008 decision of the Fifth Circuit, *Anderson v. U.S. Dept. of Housing and Urban Development*, __ F.3d __, 2008 WL 5412870 (5th Cir. Dec. 31, 2008), has a substantial bearing on the decision of this Appeal.  A copy is attached as **Exhibit 2**.[1]

### A.    Introduction

#### 1.    Timeliness Under CMO 5

Part II (Pleadings) of CMO 5, entered on September 18, 2007 (Doc. # 7724), provided for the filing of Answers in section A, and stated in section B at pp. 3-4:

> (B) Pleading Deadline
>
> Except as required above, no further pleadings, amendments to pleadings, addition of parties, third-party actions, cross-claims and counterclaims will be allowed, except on motion, noticed for hearing, and based on a showing of good cause as required by Fed. R. Civ. P. 16(b).

Thus, if good cause for an amended pleading were shown, timeliness would not be an independent ground for denial of leave to file the amended pleading.

#### 2.    Plaintiffs' September 25, 2008 Motion and the Oppositions Thereto

On September 25, 2008 Barge Plaintiffs filed their Motion for Leave to File Barge Plaintiffs' Seventh Amended Consolidated Class Action Complaint for Damages (Doc. # 15356).[2]

Defendant Lafarge North America, Inc. ("Lafarge") represented that its only reason for opposition was the addition of a new Plaintiff and class representative in the September 25, 2008

---

[1] **Exhibit 1** is a List of Exhibits.
[2] The September 25, 2008 proposed Seventh Amended Complaint filed with that Motion is attached hereto as **Exhibit 3**.  Plaintiffs do not appeal the denial of that Motion.

version of the Seventh Amended Complaint:

> Lafarge North America Inc. ("LNA") opposes Plaintiffs' motion for leave to file a seventh amended complaint (Docs. 15356, 15502) <u>insofar as it seeks to add</u> a new Plaintiff and proposed class representative, Arcola Sutton.
>
> *                *                *
>
> Apart from the untimely and prejudicial addition of Ms. Sutton as a proposed class representative, <u>LNA does not otherwise oppose</u> the filing of Plaintiffs' proposed seventh amended complaint, and <u>agrees that the clarification of Plaintiffs' allegations is useful</u>.

October 7, 2008 Memorandum of Lafarge North America Inc. in Opposition to Motion for Leave to File Seventh Amended Complaint (Doc. # 15813) (emphases supplied), pp. 2-3.[3]

The third-party defendant Board of Commissioners of the Port of New Orleans ("Dock Board") represented that the September 25, 2007, version of the Seventh Amended Complaint prejudiced the Dock Board because of its references (a) to Rule 9(h), Fed. R. Civ. Pro., (b) to maritime tort damages, and (c) to a Rule 9(h) election.[4]  The Dock Board argued that the Rule 9(h) election would cause it prejudice in light of its pending Motion for Summary Judgment against Lafarge on Lafarge's third-party claims against the Dock Board, because that election allowed Lafarge to base its third-party claim on Rule 14(c), Fed. R. Civ. Pro., instead of the more restrictive Rule 14(a).  The Dock Board argued further that the Rule 9(h) election allowed Plaintiffs a "second bite at the apple" in case Plaintiffs failed to show that the barge caused the

---

[3] A copy of Lafarge's October 7, 2008 Opposition is attached hereto as **Exhibit 4**.

[4] October 6, 2008 Memorandum of Third-Party Defendant, Board of Commissioners of the Port of New Orleans, in Opposition to Motion for Leave to File Barge Plaintiffs' Seventh Amended Consolidated Class Action Complaint For Damages (Doc. # 15767), attached hereto as **Exhibit 5**, at pp 1-2.

flooding.[5]   Everything turned on the Rule 9(h) election:

> When, as in the case at bar, multiple grounds for federal subject matter jurisdiction exist, for admiralty procedural rules to apply, Barge Plaintiffs' needed to make a Rule 9(h) election, which they clearly failed to do in their original through sixth amended Complaints. Without a Rule 9(h} election, it is simply of no moment that substantive admiralty law might govern their claims against Lafarge. For these reasons, Barge Plaintiffs' argument on this point should respectfully be rejected.

Dock Board Memorandum at 17.  The Dock Board's October 14, 2008 Sur-Reply emphasized

that its claim of prejudice involved only the Rule 9(h) election:[6]

> Given the foregoing, to the extent that Barge Plaintiffs' have alleged causes of action against the various defendants that arise under General Maritime Law, substantive admiralty law will govern the rights and liabilities of the parties even though Barge Plaintiffs elected to proceed under the court's diversity jurisdiction and asked for a jury trial. A Rule 9(h) election is simply not necessary for substantive admiralty law to apply. Barge Plaintiffs' argument to the contrary is misplaced.

The third-party defendant Orleans Levee District ("OLD") adopted the Dock Board's

Opposition and did not identify any new ground to oppose Plaintiffs' Motion.[7]  Its October 14,

2008 Sur-Reply adopted the Dock Board's Sur-Reply and similarly did not identify any new

ground to oppose Plaintiffs' Motion.[8]

Defendants and third-party defendants thus objected to the timeliness of the September

25, 2008 proposed Seventh Amended Complaint only insofar as the proposed Complaint sought

to add a new Plaintiff or made a Rule 9(h) election.

---

[5] Dock Board Memorandum (**Exhibit 5**) at 15.

[6] October 10, 2008 Dock Board Sur-Reply (Doc. # 15898), attached hereto as **Exhibit 6**, at p. 9.

[7] October 7, 2008 Memorandum of Third-Party Defendant, Orleans Levee District, in Opposition to Motion for Leave to File Barge  Plaintiffs' Seventh Amended Consolidated Class Action Complaint for Damages (Doc. # 15817), attached hereto as **Exhibit 7**.

[8] October 7, 2008 Memorandum of Third-Party Defendant, Orleans Levee District, in Opposition to Motion for Leave to File Barge  Plaintiffs' Seventh Amended Consolidated Class

### 3.    The October, 2008 Order Denying Plaintiffs' Original Motion

On October 15, 2008 Magistrate Judge Wilkinson denied Plaintiffs' Motion,[9] finding that Plaintiffs had not presented any good reason for failure to make the amendments earlier, that the amendments were not important, and that defendants would be prejudiced by allowing the amendment to add a new Plaintiff or made a Rule 9(h) election.

### 4.    Lafarge's Mooting of the Dock Board's and OLD's Only Objection

The only ground on which third-party defendants Dock Board and OLD objected to the filing of Plaintiffs' proposed Seventh Amended Complaint was that the reference to Rule 9(h) and Rule 9(h) election would enable Lafarge to rely on Rule 14(c), Fed. R. Civ. Pro., in asserting its third-party claims.  Lafarge mooted this objection on November 4, 2008 when it withdrew its efforts to seek relief under Rule 14(c).[10]

### 5.    Plaintiffs' Curing of the Prejudice and Efforts to Obtain Consent

#### a)    Lafarge

On November 3, 2008—nineteen days after Magistrate Judge Wilkinson's October 15, 2008 Order, Plaintiffs e-mailed counsel for Lafarge requesting consent for filing a revised form of the Seventh Amended Complaint omitting Arcola Sutton as a named Plaintiff and satisfying the **sole stated ground** for Lafarge's objection.  The e-mail explicitly referred to the dropping of Arcola Sutton.  A copy of the e-mail is attached hereto as **Exhibit 11**.  A copy of the draft

---

Action Complaint for Damages (Doc. # 15901), attached hereto as **Exhibit 8**.

[9] October 15, 2008 Order on Motion (Doc. # 15902), attached hereto as **Exhibit 9**.

[10] A redacted copy of the November 4, 2008 Memorandum of Lafarge North America Inc. in Opposition to the Motion for Summary Judgment Filed by the Board of Commissioners of the Port of New Orleans and Adopted by the Orleans Levee District is attached hereto as **Exhibit 10**.

proposed revised Seventh Amended Complaint sent to counsel for Lafarge is attached hereto as **Exhibit 12**.[11]

Lafarge did not respond for eight days.  Then, there was a flurry of activity on Veterans' Day:

> ➢ On November 11, 2008 at 3:20 P.M. Central time, Plaintiffs' counsel again requested a response, and at 1:28 P.M. Pacific time counsel for Lafarge said that Lafarge would look at it again.  Defense counsel did not raise any concern of Lafarge,  but stated: ""Will look at it again today. However, the inclination was not to agree to a stip. unless you simply omit Arcola Sutton."[12]

> ➢ Plaintiffs responded shortly and confirmed the omission of Arcola Sutton.[13]

> ➢ A November 11, 2008 e-mail from Lafarge at 1:34 P.M. Pacific time said only that Lafarge thought that the reference to Rule 9(h) had been dropped to satisfy the Dock Board, *i.e.*, the Board of Port Commissioners.[14]

> ➢ Plaintiffs confirmed in a reply e-mail at 6:25 P.M. Pacific time that the references to Rule 9(h) had been removed to satisfy the Dock Board, and continued to say

---

[11] The final version of the Revised Proposed Seventh Amended Complaint submitted to the Court as Exhibit 15 to Plaintiffs' December 17, 2008 Reply Memorandum of Points and Authorities in Support of Their Motion for Leave to File their Revised Proposed Seventh Amended Consolidated Class Action Complaint for Damages (Doc. # 16754) is attached hereto as **Exhibit 13**.  It is closely similar and substantively identical to the version presented to Lafarge on November 3, 2008.  The final version deleted a mistaken surviving reference to Rule 9(h), made spellings consistent and made formatting changes.  A black-line comparison is attached hereto as **Exhibit 14**.

[12] A copy of these November 11, 2008 e-mails is attached hereto as **Exhibit 15**.

[13] A copy of Plaintiffs' November 11, 2008 3:29 P.M. Central time e-mail response to Lafarge's e-mail (**Exhibit 15**) is attached hereto as **Exhibit 16**.

[14] A copy of Lafarge's November 11, 2008 e-mail at 1:34 P.M. Pacific time is attached hereto

that the omission of references to Rule 9(h) should not concern Lafarge because its Opposition to the Port Commissioners' Motion for Summary Judgment had dropped Lafarge's earlier reliance on Rule 14(c), Fed. R. Civ. Pro.:[15]

> Yes. That is correct. However, based on my understanding, that should not be problematic to your client insofar as the 9(h) allegation was not made in the previous complaint versions, and regardless, your client recently withdrew its assertions relating to Rule 14(c) in its opposition to the Port's MSJ.

Finally, Lafarge stated on November 12, 2008 that it would **not** consent to the filing of the revised proposed Seventh Amended Complaint.  Its reasoning had nothing to do with Arcola Sutton, and nothing to do with the dropping of references to Rule 9(h), Fed. R. Civ. Pro., and nothing to do with Rule 9(h), Fed. R. Civ. Pro.  Instead, Lafarge stated—**and for the first time**—that it was opposed because its November 17, 2008 Opposition to Class Certification had referred throughout to the allegations of earlier pleadings and not to the Seventh Amended Complaint.[16]

Lafarge could have told Plaintiffs earlier that it would not agree to the proposed filing, but chose to drag it out.

Lafarge, of course, could also have used the two weeks between the November 3 revised version of the proposed Seventh Amended Complaint and the November 17 filing of its Opposition to class certification to draft its papers in light of the revised version of the proposed Seventh Amended Complaint. It chose not to do so, and instead cited irrelevancies as to Rule

---

as **Exhibit 17**.

[15] A copy of Plaintiffs' November 11, 2008 e-mail response to Lafarge's e-mail (**Exhibit 17**) is attached hereto as **Exhibit 18**.

[16] A copy of Lafarge's November 12, 2008 e-mail to Plaintiffs is attached hereto as

9(h) and dragged out its response until five days before its Opposition to class certification would be filed, and then relied on the self-created shortness of time before its class filing as a brand-new ground for opposition—its third successive ground.

### b)   The Dock Board's and OLD's Objections

Plaintiffs sent their proposed Seventh Amended Complaint to counsel for the third-party defendants Dock Board and OLD on November 4, 2008.[17]  The Dock Board did not cite any specific problem or prejudice that would be caused by the filing, but stated that it would oppose the filing out of general cautiousness:[18]

> We are weary of consenting to the filing of any amended Complaint while our summary-judgment motion against Lafarge is still pending. I am taking this cautious stand in order to prevent us from agreeing to something that may inadvertently undermine the basic theory of our motion or a later argument on appeal. That was the whole basis for our opposition to the previous attempt to amend the Complaint. Consequently, we would object to the filing of an amended Complaint at this time.

The OLD stated it would also oppose the filing but, like the Dock Board, failed to mention any specific problem or prejudice that would be caused by the filing.[19]

### 6.   Plaintiffs' December 1, 2008 Motion

On December 1, 2008 Plaintiffs moved for leave to file their revised proposed Seventh Amended Complaint,[20] curing the only grounds for prejudice presented to Magistrate Judge

---

**Exhibit 19**.

[17] A copy of Plaintiffs' November 4, 2008 e-mail to these third-party defendants is attached hereto as **Exhibit 20**.

[18] A copy of the Dock Board's November 7, 2008 e-mail to Plaintiffs is attached hereto as **Exhibit 21**.

[19] A copy of OLD's November 7, 2008 e-mail to Plaintiffs is attached hereto as **Exhibit 22**.

[20] Plaintiffs' December 1, 2008 Motion for Leave to File their Revised Proposed Seventh Amended Consolidated Class Action Complaint for Damages (Doc. # 16572) is attached hereto

Wilkinson by deleting the allegations as to an additional Plaintiff and class representative and deleting references to Rule 9(h), Fed. R. Civ. Pro., **even though this objection had previously been mooted.**  Plaintiffs also set forth the specific reasons why the allegations served important purposes, and why they were timely.[21]

> **B.**     **Argument**

*Southwestern Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003), held that four factors are important in determining whether there is good cause to allow an amendment of a pleading after a deadline:

> In determining good cause, we consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."

If these four factors are met, permission for amendments should be "'freely given'" under the standards of *Foman v. Davis*, 371 U.S. 178, 182 (1962).

> **1.**     **Plaintiffs' Explanation for the Delay**

Paragraphs 7-14 of Plaintiffs' December 1, 2008 Memorandum in Support of their Motion set forth the reasons for the delay:

> 7.     Plaintiffs' Amended Motion to Certify the Class and supporting materials have incorporated all of the refinements and adjustments resulting from the addition of experienced class action counsel to the Barge P.S.L.C. after the October 8, 2007, Sixth Supplemental and Amended Complaint (Doc. # 8779) was filed.  The Court's deferral of the filing of documents in support of class certification until September 28, 2008 allowed class counsel to have the benefits of class certification discovery prior to the filing of documents in support of class certification, and that must necessarily mean that counsel were to be able to use the fruits of such discovery, as well as more refined legal analysis,

---

as **Exhibit 23**.
[21] See Plaintiffs' Memorandum in Support of their December 1, 2008 Motion, attached hereto as **Exhibit 24**.

in shaping their class certification submissions and making such refinements and adjustments as were necessary.

8.     The Court's January 25, 2008 Order (Doc. # 10881)[22] required Plaintiffs' class certification motion to contain specific information:

> As to each proposed class representative, the motion must provide his or her full name, current address, occupation and age, and the street address of any property as to which he or she seeks to recover damages in these case, including whether he or she owned or leased the property, a brief description of the size of the property and any buildings or other improvements on it, and whether it was or is used for residential and/or business purposes, and identify for each class representative whether that class rep is making a personal injury or wrongful death claim.

9.     Plaintiffs' original January 31, 2008 Motion to Certify the Class (Doc. # 11005) and Plaintiffs' Amended Motion to Certify the Class both contain descriptions of the class representatives and their claims that complied with the Court's requirement.

10.     Plaintiffs' October 8, 2007, Sixth Supplemental and Amended Complaint (Doc. # 8779), contains some omissions and some mistakes in its allegations of specific facts as to the class representatives and their claims,[23] did not anticipate some of the Court's subsequent requirements, and some allegations have been overtaken by events. It is appropriate that the operative Complaint mirror the recitations of fact in the operative class certification papers. Defendant Lafarge has already taken extensive discovery into all claims of the class representatives. No party could be surprised or prejudiced by the inclusion of these facts in a new operative Complaint.

11.     Plaintiffs have previously timely listed in their responses to discovery all of the specific instances of negligence on which they rely to show defendants' liability. Plaintiffs' January 31, 2008 Motion to Certify the Class and Plaintiffs' Amended Motion to Certify the Class included such a list as part of its list of common issues. None of the Complaints previously filed in this action contained such a specification. It is appropriate that the operative Complaint mirror the recitations of fact in the operative class certification papers. Indeed, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007), an antitrust case, held that Plaintiffs should not merely allege conclusions as to unlawful actions, but should allege facts sufficient to permit the inference of the unlawful actions. No party could be surprised or prejudiced by the inclusion of these facts in an operative Complaint.

---

[22] A copy of the Order is attached hereto as **Exhibit 25**.

[23] For example, the allegations as to Ethel Mumford did not include all of the properties she owned, and did not include her subsequent restoration of one property and commencement of restoration of another.

12.     Plaintiffs' Sixth Supplemental and Amended Complaint (Doc. # 8779) names Rico Terrence Sutton and Kismet Bourgere (actually Bougere) as class representatives, but Plaintiffs have subsequently withdrawn them as class representatives. Plaintiffs' Amended Motion to Certify the Class does not mention them.  It is appropriate to have an operative pleading that does not mention them.  No party objected to their omission from the prior version of the Seventh Amended Complaint.

13.     Plaintiffs' Amended Motion to Certify the Class describes the subclasses Plaintiffs seek to represent, based on Plaintiffs' counsel's most up-to-date analyses of controlling case law and their application to the facts of this case.  They reflect the involvement of experienced class action counsel.  Plaintiffs' October 8, 2007, Sixth Supplemental and Amended Complaint (Doc. # 8779) sets forth a different set of subclasses.  Inasmuch as the Court's scheduling order seems to have intended that class counsel be able to take the additional time to refine and adjust their positions, Plaintiffs have timely set forth their amended proposals.

14.     The Fifth Circuit approved such adjustments and refinements in *In the Matter of Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004), *cert. denied sub nom. American Nat. Ins. Co. v. Bratcher*, 543 U.S. 870 (2004).  The Fifth Circuit stated:

> Second, holding Plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition.  District courts are permitted to limit or modify class definitions to provide the necessary precision. FN7  If the class is certified on remand, we trust that the Plaintiffs or district court will amend the definition accordingly.

> FN7. *See, e.g.*, *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir.1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly"); *Harris v. Gen. Dev. Corp.*, 127 F.R.D. 655, 659 (N.D.Ill.1989) ("[I]t is certainly within this court's discretion to limit or redefine the scope of the class"); *Meyer v. Citizens & S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D.Ga.1985) ("The Court has discretion in ruling on a motion to certify a class. This discretion extends to defining the scope of the class.") (citations omitted).

**The operative Complaint should reflect these timely and eminently proper adjustments and refinements.**

(Emphasis supplied.)

Some of the amendments could not have been made earlier, because the ongoing analysis

of how best to articulate the class and subclass definitions, and how best to present the claims of

the class, have been under intensive review for months and agreement on the final approach was reached only shortly before Plaintiffs timely filed their Memorandum and other papers in support of class certification on September 29, 2008.   The Sixth Amended Complaint does not reflect the changes of approach, changes of class and subclass representatives, and changes in the proposed handling of relief that are reflected in the Class Certification Memorandum, but the revised proposed Seventh Amended Complaint does.  **Inasmuch as the Court allowed until September 29, 2008 for refinements in the Plaintiffs' approach to class certification, the allowance of a Complaint mirroring these timely refinements should not be considered untimely.**

Lafarge's attempted distinction[24] of *In the Matter of Monumental Life Ins. Co.*, 365 F.3d 408, 414 (5th Cir. 2004), *cert. denied sub nom. American Nat. Ins. Co. v. Bratcher*, 543 U.S. 870 (2004), is without merit.  The decision stands for the proposition that Plaintiffs must be free to revise and update their class descriptions and approaches as the case progresses, and it is immaterial that the case did not involve a Motion to Amend a Complaint.  If a class description and approach can properly be revised as a case progresses, it cannot possibly be prejudicial to reflect the revision in an amended Complaint.

*Anderson v. U.S. Dept. of Housing and Urban Development*, __ F.3d __, 2008 WL 5412870 (5th Cir. Dec. 31, 2008) (**Exhibit 2** hereto), is another case in which the Fifth Circuit referred to the possibility of an amendment to the Complaint to support a class certification, although plaintiffs there, unlike the Barge Plaintiffs, had made no effort to conform their

---

[24] A copy of the December 9, 2008 Memorandum of Lafarge North America Inc. in Opposition to Barge Plaintiffs' Motion for Leave to File Their Revised Proposed Seventh

Complaint to the class certification proceedings. *Anderson* also emphasized the importance of fact allegations in the Complaint in light of the Supreme Court's decision in *Twombly*, as Plaintiffs had brought to the attention of the Magistrate Judge.

Independently, it must be kept in mind that, unlike the MRGO and Levee cases, when Case Management Order No. 5 was issued on September 18, 2007, Plaintiffs were only recently severed and transferred from a consolidated limitation action (*In Re Ingram Barge Company Petitioning for Exoneration From or Limitation of Liability*, C.A. 05-4419 c/w 06-3313, Sect. C), in which Plaintiffs were effectively stayed as to any adversarial discovery against defendants other than petitioners-in-limitation Ingram Barge Company, Joseph C. Domino, Inc., and Unique Towing, Inc.  Moreover, Barge Plaintiffs were in a phased litigation in which discovery relative to the Industrial Canal floodwall breaches, source and extent of flooding, and damages were off-limits until later phases which, though contemplated, were not implemented.  The admission *pro hac vice* of numbers of additional counsel with significant experience in class action law, but not necessarily in maritime law or Louisiana law, made the very substantial class filings possible, but illustrates the complexity of the case and the issues.

The Magistrate Judge did not consider these factors, but simply relied on his earlier reasons.  Plaintiffs respectfully submit that this was an abuse of discretion.  In addition, Plaintiffs rely on the *Anderson* decision, which was handed down since the Magistrate Judge made his decision and which he had had no opportunity to consider.

### 2.   The Importance of the Amendment

Paragraphs 1-5 of Plaintiffs' December 1, 2008 Memorandum in support of their Motion

---

Amended Complaint (Doc. # 16649), is attached hereto as **Exhibit 26**.

set forth the reasons why the amendment is important:

      1.     Plaintiffs' Sixth Supplemental and Amended Complaint (Doc. # 8779) alleges an emotional distress subclass that Plaintiffs no longer seek to certify:

### B. Personal Injury Claim Subclass (Subclass Two)

      All persons who/which have sustained personal injuries in the form of emotional distress to a common degree as a result of the flooding that occurred due to the breaches of the eastern Industrial Canal floodwall which damages were proximately caused by Defendants on Monday, August 29, 2005, and who/which on August 29, 2005, were residents of, or owned properties in, the following geographic area: the Industrial Canal floodwall on the East [sic], North to the Mississippi River Gulf Outlet, South to the Mississippi River, and East to Paris Road.

Plaintiffs' September 29, 2008 Memorandum in Support of Plaintiffs' Motion to Certify a Class and Potential Subclasses, to Appoint Class Counsel, and to Preliminarily Approve Plaintiffs' Proposed Trial Plan (Doc. # 15549-2) states: "While '[t]raditionally, neither the general maritime law nor the Jones Act recognized a right to recover damages for negligent infliction of emotional distress unaccompanied by some physical contact or injury [,] … [m]ore recently, courts have broadened the rule to permit recovery by an individual who was in the zone of danger' of a physical impact and suffered emotional trauma as a result." *Id.* at 37 n.20 (authorities omitted).

      2.     Defendant Lafarge North America's Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. # 16405) argues at p. 45 argues [sic] that "Plaintiffs should dismiss their claims for emotional distress and other intangible damages with prejudice, so that the record is clear," and objects that the failure to do so means that "this Court faces potential claims for emotional distress damages from every one of the proposed class members, numbering in excess of 40,000 persons."  The grant of this Motion would resolve defendant Lafarge's point.

      3.     Defendant Lafarge North America's Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. # 16405) goes on to argue at p. 45 that the failure to make such an amendment precludes class certification:

      In these circumstances, this case is easily distinguished from the case on which Plaintiffs rely, and in which the court made clear that "all, or a great majority" of the class members would not have ***any*** claims for personal injury or emotional damages. *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 607 n.6 (E.D. La. 2006).[125] The continued pendency of claims for intangible harms by all Plaintiffs and class members renders this case much more akin to *Ancar v. Murphy Oil USA, Inc.*, 2008 U.S. Dist. LEXIS 68490 (E.D. La. July 25, 2008), in

- 14 -

which the court denied class certification for emotional distress claims arising
from an oil refinery fire and asserted by property owners and residents like the
Plaintiffs in this case.

(Footnote omitted.)  Defendant Lafarge's argument means that the denial of Plaintiffs'
Motion could therefore prejudice Plaintiffs.[25]

    4.    Plaintiffs' October 8, 2007, Sixth Supplemental and Amended Complaint
(Doc. # 8779) contains a typographical error with respect to the class definition.  Part II
misstates the geographic boundaries of the proposed class as follows:

> The Named Plaintiffs, and the class they seek to represent, are all persons
> and/or entities who/which sustained injuries, death, loss and/or damages as a
> result of the flooding that occurred due to breaches of the eastern Industrial Canal
> floodwall, which damages were proximately caused by Defendants on Monday,
> August 29, 2005, and who/which on August 29, 2005, were residents of, or
> owned properties of businesses in, the following geographic area: the Industrial
> Canal floodwall on the East, North to the Public Belt or other Railway adjacent to
> and immediately north of Florida Avenue, and also North to the east-west channel
> or canal extending from the aforesaid railway to Paris Road, South to the
> Mississippi River, and East to Paris Road.

Plaintiffs' intent was to state that the Industrial Canal floodwall was the Western
boundary of the proposed class area, not the Eastern boundary.  Neither the Court nor any
defendant has indicated that it has been misled by the typographical error.  Plaintiffs'
Amended Motion to Certify the Class and Subclasses, to Appoint Class Counsel, and to
Approve Plaintiff's Proposed Trial Plan (Doc. # 15549), (hereinafter, "Plaintiffs'
Amended Motion to Certify the Class") corrects this error at p. 2, but the correction
should also be in a pleading.

Plaintiffs would be severely handicapped by denial of this Appeal.  The typographical

error in the class description could effectively destroy the class.  The disparity between the

earlier Complaints and the class certification papers as to the nature and definitions of the class

---

[25] This consideration was not before the Court when the Magistrate Judge denied
Plaintiffs' September 25, 2008 Motion for Leave to File an earlier version of the Seventh
Amended Complaint (Doc. # 15356), because Defendant Lafarge had not yet made this
argument.  As a result, this Court denied that Motion under the impression that the denial would
not injure Plaintiffs' claims.  Order of October 15, 2008 (Doc. # 15902) (**Exhibit 9**) at 2 ("As
indicated in the words of Plaintiffs' own memorandum in support of the motion, the amendment
is unimportant because it is submitted principally for purposes of clarification, harmonization

and subclasses, and the differences as to the class and subclass representatives, has resulted in confusion that Lafarge is already attempting to exploit, and in the event of review of the eventual class certification decision by the Fifth Circuit could result in a level of confusion that could be fatal to Plaintiffs' contentions.  See the *Anderson* decision, attached hereto as **Exhibit 2**.

Lafarge's opposition to class certification[26] sought to prejudice Plaintiffs for the absence in the Sixth Amended Complaint of the revised allegations for which Plaintiffs were seeking its consent,[27] while Lafarge's December 9 Opposition to Plaintiffs' December 1 Motion for Leave to File their Revised Proposed Seventh Amended Complaint audaciously referred to this Court's statement in its October 15, 2008 Order that Plaintiffs would not be prejudiced by the denial.[28] In essence, Lafarge argues that it should be able to keep the advantage it unfairly obtained by arguing that Plaintiffs would not be prejudiced by denial of their original Motion,[29] then creating the prejudice against Plaintiffs in its class certification papers.

The Fifth Circuit's December 31 decision in *Anderson v. U.S. Dept. of Housing and Urban Development*, __ F.3d __, 2008 WL 5412870 (5th Cir. Dec. 31, 2008) (**Exhibit 2**), underscores the importance of the proposed amendments.

---

and repackaging of their six prior complaints.")

[26] Lafarge's November 17, 2008 Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. # 16405) is attached hereto as **Exhibit 27**.

[27] See Plaintiffs' December 1, 2008 Memorandum in support of their Motion for Leave to File their Revised Proposed Seventh Amended Consolidated Class Action Complaint for Damages (Doc. # 16572) (**Exhibit 26**), ¶¶ 3 and 4 (also quoted above).

[28] See Lafarge's December 9, 2008 Opposition, **Exhibit 28** hereto, ¶ 2 at p. 3.  Lafarge ignores the substantive reasons why the amendment is necessary, and argues simplistically that, to the extent the amendment is unimportant, it is unimportant and therefore Plaintiffs will not be prejudiced by its denial.

[29] Lafarge's October 7, 2008 Opposition to Plaintiffs' original September 25, 2008 Motion for Leave to File Seventh Amended Complaint (Doc. # 15813), **Exhibit 4**, pp. 6-7.

The Magistrate Judge did not consider these factors, some of which had not even come into existence prior to his October 15, 2008 Order, but simply relied on his earlier reasons. Plaintiffs respectfully submit that this was an abuse of discretion.  In addition, Plaintiffs rely on the *Anderson* decision, which was handed down since the Magistrate Judge made his decision and which he had had no opportunity to consider.

3.    <u>**There is No Potential Prejudice**</u>

Plaintiffs have eliminated all grounds of prejudice on which the Magistrate Judge relied in October 15, 2008 Order.

Lafarge has now changed its position by arguing that it based its November 17, 2008 Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. # 16405) on Plaintiffs' Sixth Amended Complaint and it is therefore too late for Plaintiffs to file a Seventh Amended Complaint.  This is a self-created claim of prejudice, and a self-created claim of prejudice is insufficient to overcome Plaintiffs' showing of good cause for the amendment.

Even more audaciously, Lafarge claims that it should be entitled to claim prejudice as to parts of the Seventh Amended Complaint that were unchanged from the earlier rejected version, and which it previously welcomed.

Lafarge does not object to the specification of the allegations of negligence contained in the proposed revised Seventh Amended Complaint, but objects that the Prayer in the proposed pleading seeks only "general damages in an amount yet to be ascertained," "compensatory damages in an amount yet to be ascertained;" "exemplary/punitive damages in an amount yet to be ascertained;" "prejudgment interest according to law in an amount yet to be ascertained;" (f) "attorneys' fees in an amount yet to be ascertained;" "costs of suit in an amount yet to be

ascertained; and, "such other and further relief as this Court may deem proper." Lafarge objects that this does not explicitly detail the responses of individual Plaintiffs in discovery that they seek compensatory damages for specific injuries, or specific types of compensatory damages, and claims that Plaintiffs lack candor in failing to set forth the discovery responses.

This is baseless:

➢ Plaintiffs know of no authority—and Lafarge has cited none—to the effect that a Complaint must set forth every discovery response.

➢ Plaintiffs know of no authority—and Lafarge has cited none—to the effect that an Amended Complaint's failure to set forth every discovery response is therefore a lack of candor.

➢ Plaintiffs know of no authority—and Lafarge has cited none—to the effect that an Amended Complaint can alter a discovery response.

➢ Plaintiffs know of no authority—and Lafarge has cited none—to the effect that any of the types of compensatory damages listed in discovery responses cannot be awarded under the general descriptions in the proposed revised Seventh Amended Complaint.

➢ Plaintiffs know of no authority—and Lafarge has cited none—to the effect that any of the types of compensatory damages listed in the Sixth Amended Complaint cannot be awarded under the general descriptions in the proposed revised Seventh Amended Complaint.

➢ Plaintiffs know of no authority—and Lafarge has cited none—to the effect that any of the classwide relief described in Plaintiffs' class certification papers cannot

- 18 -

be awarded under the general descriptions in the proposed revised Seventh Amended Complaint.

The removal of any ground on which Lafarge could claim any Plaintiff-created prejudice—as opposed to the phantom claims of "prejudice" Lafarge deliberately inflicted on itself for purposes of its opposition to the instant Motion—automatically dispose of Lafarge's claims of prejudice based on the timing of the instant Motion.

The Dock Board and OLD both argue that Plaintiffs' proposed amendment would prejudice their motion for summary judgment as to Lafarge's efforts to seek relief from them under Rule 14(c), Fed. R. Civ. Pro.[30]  However, on November 4, 2008—*thirty-five days* before the Dock Board's December 9 Opposition to the instant Motion and *thirty-eight days* before OLD's December 12 Opposition to the instant Motion, Lafarge withdrew its efforts to seek relief under Rule 14(c).[31]  This ground for opposition was wholly mooted, and this was the sole basis for these parties' oppositions.

*Second*, the Dock Board and OLD have both admitted that Plaintiffs' assertion of general maritime law in the rejected September 25, 2008 version of the Seventh Amended Complaint did not matter to anyone because substantive maritime law governs Plaintiffs' claims regardless of

---

[30] Dock Board's December 9, 2008 Opposition, attached hereto as **Exhibit 30**, pp. 2-3; OLD's December 12, 2008 Opposition, attached hereto as **Exhibit 31**, p. 1 (adopting Dock Board's arguments) and p. 2 (attaching and incorporating by reference its Opposition to Plaintiffs' original September 25, 2008 Motion for leave to file the original version of their Seventh Amended Complaint for Damages (Doc. # 15356)); Attachment A to OLD's December 12, 2008 Opposition (OLD's Opposition to Plaintiffs' September 25, 2008 Motion, p. 2 (Rule 14(c) argument).

[31] A redacted copy of the November 4, 2008 Memorandum of Lafarge North America Inc. in Opposition to the Motion for Summary Judgment Filed by the Board of Commissioners of the Port of New Orleans and Adopted by the Orleans Levee District is attached hereto as **Exhibit**

whether Plaintiffs alleged that maritime law applied.[32]  In light of their concession that

substantive maritime law already applies to this case, it cannot possibly be prejudicial that

Plaintiffs seek to allege maritime tort damages.  The Dock Board and OLD have argued correctly

for an uncontested proposition of law that defeats their claim of prejudice.  They are hoist with

their own admitted petard.

      The Magistrate Judge did not consider these factors, some of which had not even come

into existence prior to his October 15, 2008 Order, but simply relied on his earlier reasons.

Plaintiffs respectfully submit that this was an abuse of discretion.

      4.     **There is No Need for a Continuance to Cure Nonexistent Prejudice**

      Because there is no prejudice, there is no need to consider a continuance to cure

prejudice.

      In its Opposition to Plaintiffs' December 1 Motion, Lafarge quoted the Magistrate

Judge's October 15 Order as to the disturbance of case management and scheduling orders that

would be caused by adding a new class representative and a new Rule 9(h) allegation, and

---

**10**.

    [32] Dock Board's December 9, 2008 Opposition (Doc. # 16661), **Exhibit 29**, pp. 1-2 (attaching and incorporating by reference its Opposition and Sur-Reply to Plaintiffs' original September 25, 2008 Motion for leave to file the original version of their Seventh Amended Complaint for Damages (Doc. # 15356), Attachment A to Dock Board's December 9, 2008 Opposition (Dock Board's Opposition to Plaintiffs' September 25, 2008 Motion, pp. 16-17; Attachment B to Dock Board's December 9, 2008 Opposition (Dock Board's Sur-Reply to Plaintiffs' September 25, 2008 Motion), pp. 3-9; OLD's December 12, 2008 untimely Opposition (Doc. # 16702), **Exhibit 30**, p. 1 (adopting Dock Board's arguments) and p. 2 (incorporating by reference the arguments contained in its Opposition and Sur-Reply to Plaintiffs' original September 25, 2008 Motion for leave to file the original version of their Seventh Amended Complaint for Damages (Doc. # 15356)); Attachment A to OLD's December 12, 2008 Opposition (OLD's Opposition to Plaintiffs' September 25, 2008 Motion, p. 2; Attachment B to OLD's December 12, 2008 Opposition (OLD's Sur-Reply, p. 2.

represents: "That prior reasoning is equally applicable here" without even mentioning that this Court's stated justification for that reasoning had disappeared with the deletion of allegations adding a new class representative, the deletion of allegations invoking Rule 9(h), and Lafarge's own withdrawal of its representations as to Rule 14(c), Fed. R. Civ. Pro., which was the reason Rule 9(h) had been perceived as a problem.

Rounding out the circle of inconvenient facts Lafarge chose not to mention was the Court's December 1, 2008 rescheduling of oral argument on the class certification motion from December 9, 2008 to February 11, 2009.[33]  The Court took that action pursuant to a telephone conference call that defense counsel attended, eight days before it made its representations to this Court that nothing important had changed as to the timing of the motion for leave to file the revised pleading.

The Magistrate Judge did not consider these factors, but simply relied on his earlier reasons. Plaintiffs respectfully submit that this was an abuse of discretion.

### 5.    <u>There is No Basis to Deny the Amendment</u>

The revised proposed Seventh Amended Complaint is critical for the protection of plaintiffs' rights, reflects the class filings that have been timely made, will not cause any prejudice to any party, and will avoid confusion in this court and on appeal.  Leave to amend should be "freely given," as the Supreme Court directed in *Foman v. Davis*, 371 U.S. at 182.

---

[33] A copy of the December 1, 2008 Minute Entry is attached hereto as **Exhibit 31**.  To the extent that Lafarge wishes to refer to any allegations of the Seventh Amended Complaint, it has ample time to fold that into its oral argument.

## <u>Conclusion</u>

For the reasons stated above, Plaintiffs pray that their Appeal be granted.

Respectfully submitted,

/s/_____
SHAWN KHORRAMI  (CA Bar #180411)
DYLAN POLLARD  (CA Bar #180306)
MATT BAILEY  (CA Bar #218685)
444 S. Flower St., Thirty-Third Floor
Los Angeles, California 90071
  Telephone: (213) 596-6000
  Facsimile: (213) 596-6010
  skhorrami@kpalawyers.com
  dpollard@kpalawyers.com
  mbailey@kpalawyers.com

/s/ Brian A. Gilbert
Brian A. Gilbert, Esq. (21297)
LAW OFFICE OF BRIAN A. GILBERT, P.L.C.
821 Baronne Street
New Orleans, Louisiana 70113
  Telephone: (504) 885-7700
  Telephone: (504) 581-6180
  Facsimile: (504) 581-4336
  e-mail: bgilbert@briangilbertlaw.com

/s/ Lawrence D. Wiedemann,
Lawrence D. Wiedemann.(13457)
Karl Wiedemann (18502)
Karen Wiedemann (21151)
WIEDEMANN & WIEDEMANN
821 Baronne Street
New Orleans, Louisiana 70113
  Telephone: (504) 581-6180
  Facsimile: (504) 581-4336
  e-mail: lawrence@wiedemannlaw.com,
  karl@wiedemannlaw.com, karen@wiedemannlaw.com,

- 22 -

/s/ Patrick J. Sanders
Patrick J. Sanders (18741)
3316 Ridgelake Drive
Suite 100
Metairie, LA 70002
   Telephone: 504-834-0646
   e-mail: pistols42@aol.com

/s/ Richard T. Seymour
Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
   Voice: 202-862-4320
   Cell:   202-549-1454
   Facsimile:  800-805-1065 and 202-828-4130
   e-mail: rick@rickseymourlaw.net

     Attorneys for Barge Plaintiffs

Dated: January 2, 2009

- 23 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document, the accompanying Memorandum and its attachments, the accompanying proposed form of Order, and the accompanying Notice, have been served upon counsel of record, by ECF upload, this 2d day of January, 2009.

/s/ _____
Richard T. Seymour (D.C. Bar #28100)
Law Office of Richard T. Seymour, P.L.L.C.
1150 Connecticut Avenue N.W., Suite 900
Washington, D.C.  20036-4129
    Voice: 202-862-4320
    Cell:   202-549-1454
    Facsimile:  800-805-1065 and 202-828-4130
    e-mail: rick@rickseymourlaw.net,