UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE KATRINA CANAL BREACHES<br>CONSOLIDATED LITIGATION<br><br>PERTAINS TO: BARGE<br>Boutte, No. 05-5531<br>Mumford, No. 05-5724<br>Lagarde, No. 06-5342<br>Perry, No. 06-6299<br>Benoit, No. 06-7516<br>Parfait Family, No. 07-3500<br>Lafarge, No. 07-5178 | CIVIL ACTION<br><br>NO. 05-4182<br>& Consol. Cases<br><br>SECTION "K" (2)<br>JUDGE DUVAL<br><br>MAGISTRATE WILKINSON |

**SUR-REPLY MEMORANDUM OF THIRD-PARTY DEFENDANT, THE
BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS, IN
OPPOSITION TO MOTION FOR LEAVE TO FILE BARGE
PLAINTIFFS' SEVENTH AMENDED CONSOLIDATED CLASS
ACTION COMPLAINT FOR DAMAGES**

**MAY IT PLEASE THE COURT:**

1. **The cases upon which Barge Plaintiffs rely are distinguishable.**

Barge Plaintiffs' primary reliance upon T.N.T. Marine Service, Inc. v. Weaver Shipyards & Dry Docks, Inc., 702 F.2d 585 (5th Cir. 1983), cert. denied, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983), to support their assertion that they originally elected to proceed in admiralty is misplaced. In T.N.T. Marine Service, Inc., a major distinguishing factor in the court's decision was the fact that the plaintiff therein also asserted an in rem claim against a vessel, which is cognizable only in admiralty:

- 1 -

> Of particular note in this case is that an action against the vessel in rem would fall within the exclusive admiralty jurisdiction and could not be brought under diversity jurisdiction.

See, T.N.T. Marine Service, Inc., 702 F.2d at 587. No such in rem claim appears in our action. Also distinguishable is the fact that in T.N.T. Marine Service, Inc., the Plaintiff alleged that, "[t]his is also a suit for breach of a maritime contract and for maritime tort." See, T.N.T. Marine Service, Inc., 702 F.2d at 587. Again, no such or similar allegation was made by Barge Plaintiffs. Finally, contrary to Barge Plaintiffs' assertion, a review of the allegations contained in the Barge Plaintiffs' original through sixth amended Complaints shows that Barge Plaintiffs failed to include any statement at all, much less a "simple statement," that their claims were "admiralty or maritime claims," or something equivalent, in their seven prior Complaints.

Barge Plaintiffs' further reliance on the unreported case of Rosales v. Bouchard Coastwise Management Corp., 2004 WL 1146953 (E.D.La. 2004), is similarly misplaced. In Rosales, unlike here, the court specifically recognized that the Plaintiff "neither invoked diversity jurisdiction nor requested a jury." See, Rosales, 2004 WL 1146953 at * 2. In our action, Barge Plaintiffs not only specifically alleged the existence of the court's diversity jurisdiction, but also specifically requested a jury trial.

Because the allegations contained in the Barge Plaintiffs' original through sixth amended Complaints fail to meet even the minimalist or low-threshold standard that Barge Plaintiffs now advocate be applied in determining whether or not they had originally elected to proceed in admiralty, Barge Plaintiffs' contention on this point should respectfully be rejected.

- 2 -

## 2. If Barge Plaintiffs' claims against defendants arise under General Maritime Law, then substantive admiralty law would govern their claims regardless of whether a Rule 9(h) election is now allowed.

Next, assuming for the sake of argument that Barge Plaintiffs' claims against Lafarge and the other defendants will be found to arise under General Maritime Law, Barge Plaintiffs' argument that if they are now denied the opportunity to make a Rule 9(h) election some body of law other than federal admiralty law might govern their claims, lacks merit.

It is, of course, well settled that a plaintiff having an in personam claim arising under General Maritime Law may bring that claim either in federal court under the court's admiralty jurisdiction, or in federal court under diversity of citizenship, if diversity and jurisdictional amount exists, or in state court:

> The Judiciary Act of 1789, ... while bestowing "exclusive" admiralty jurisdiction on the District Courts, saved to suitors, in all cases, the right of a common law remedy where the common law is competent to give it. Obviously, the "exclusivity" and the "saving" are pretty much correlatives. What is "exclusive" and what is "saved"?
>
> Summarily, the result of the cases is that a suitor who holds an in personam claim, which might be enforced by suit in personam in admiralty, may also bring suit, at his election, in the "common law" court— that is, by ordinary civil action in state court, or in federal court without reference to "admiralty", given diversity of citizenship and the requisite jurisdictional amount.

See, Grant Gilmore and Charles L. Black, Jr., The Law of Admiralty §1-13 (2nd ed. 1975). In contrast, an in rem action to enforce a maritime lien, may only be brought in federal court under the court's admiralty jurisdiction:

> Admiralty's jurisdiction is exclusive only as to those maritime causes of action begun and carried on as proceedings in rem, that is, where a vessel

- 3 -

or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien. It is this kind of in rem proceeding which state courts cannot entertain.

See, Madruga v. Superior Court, 346 U.S. 556, 560, 74 S.Ct. 298, 300-01, 98 L.Ed. 290 (1954).

The U.S. Supreme Court has determined that no matter where a Plaintiff having a maritime cause of action files his suit, whether in federal court under admiralty or diversity jurisdiction, or in state court, the law governing his claim will be substantive admiralty and maritime law, and not state law:

> Another argument is that Pennsylvania law must govern here because the District Court's jurisdiction was rested on diversity of citizenship under 28 U.S.C. §1332. For this contention the principle established in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is invoked. That case decided that federal district diversity courts must try state created causes of action in accordance with state laws. This ended a longstanding federal court practice under which the outcome of lawsuits to enforce state created causes of action often depended on whether they were tried in a state courthouse or a federal courthouse. *Erie R. Co. v. Tompkins* was thus designed to ensure that litigants with the same kind of case would have their rights measured by the same legal standards of liability. It appears to be contended here ... that one injured on navigable waters who sues in federal court under diversity jurisdiction somehow jeopardizes his right to have as full a recovery as he otherwise would. It is certainly contended that one who sues on the 'law side' of the docket has much less chance to recover than one who sues on the 'admiralty side.' Thus we are asked to use the Erie-Tompkins case to bring about the same kind of unfairness it was designed to end. Once again, the substantial rights of parties would depend on which courthouse, or even which 'side' of the same courthouse, a lawyer might guess to be in the best interests of his client. We decline to depart from the principle of equal justice embodied in the Erie-Tompkins doctrine. Of course the substantial rights of an injured person are not to be determined differently whether his case is labeled 'law side' or 'admiralty side' on a district court's docket. The District Court and Court of Appeals correctly refused to deny Hawn's federal right of recovery by applying the Pennsylvania contributory negligence rule.

- 4 -

See, Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 410-11, 74 S.Ct. 202, 205-06, 98 L.Ed. 143 (1953). In fact, the U.S. Supreme Court has also specifically held, in a landmark, but much criticized case, that states essentially have no right to enact any legislation which would potentially modify, change, or affect "characteristic features" of General Maritime Law, or destroy the "harmony and uniformity" of such law:

> And plainly, we think, no such legislation is valid if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations. This limitation, at the least, is essential to the effective operation of the fundamental purposes for which such law was incorporated into our national laws by the Constitution itself.

See, Southern Pacific Company v. Jensen, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917). Thus, a maritime Plaintiff's choice of forum under the saving to suitor's clause does not provide the Plaintiff with the power to determine that the defendant's liability will be determined by anything other than federal admiralty law:

> The distinction between rights and remedies is fundamental. A right is a well founded or acknowledged claim; a remedy is the means employed to enforce a right or redress an injury. Plainly, we think, under the saving clause a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law; but we find nothing therein which reveals an intention to give the complaining party an election to determine whether the defendant's liability shall be measured by common-law standards rather than those of the maritime law. Under the circumstances here presented, without regard to the court where he might ask relief, petitioner's rights were those recognized by the law of the sea.

See, Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 384, 38 S.Ct. 501, 504, 62 L.Ed. 1171 (1918).

- 5 -

This basic principle that the substantive law governing a maritime cause of action does not change simply because a litigant may choose, under the saving to suitor's clause, to bring his action in a common-law court, is well settled. Several representative excerpts of cases recognizing this basic principle are set forth immediately below:

> "The District Court was in error in ruling that the governing law in this case was that of the State of New York. Kermarec was injured aboard a ship upon navigable waters. It was there that the conduct of which he complained occurred. The legal rights and liabilities arising from that conduct were therefore within the full reach of the admiralty jurisdiction and measurable by the standards of maritime law. If this action had been brought in a state court, reference to admiralty law would have been necessary to determine the rights and liabilities of the parties. Where the plaintiff exercises the right conferred by diversity of citizenship to choose a federal forum, the result is no different, even though he exercises the further right to a jury trial. Whatever doubt may once have existed on that score was effectively laid to rest by Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 410-11, 74 S.Ct. 202, 204, 98 L.Ed. 143. It thus becomes necessary to consider whether prejudice resulted from the court's application of the substantive law of New York." Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959).

> "Washington law, and R.C.W. §4.22.060, do not control in this admiralty action. Admiralty law governs maritime tort actions whether filed in rem or in personam, whether filed in State or Federal court, or whether filed under admiralty, diversity, or any other jurisdictional statute." Sea-Land Service, Inc. v. American Logging Tool Corp., 637 F.Supp. 240 (W.D.Washington 1985).

> "Regardless of whether a maritime claim is brought on the admiralty or the law side of a federal district court, the parties' rights and liabilities are controlled by federal principles of maritime law. The choice of an action at law cannot serve to diminish the dimensions of the substantive rights accorded by maritime law." Neal v. McGinnis, Inc., 716 F.Supp. 996, 998 (E.D.Ky. 1989).

> "[I]t should be noted that contrary to the district court's understanding, the interpretation of the indemnity clause as part of a maritime contract is a matter governed by federal maritime law and not state law. That the district court's diversity, rather than its admiralty

- 6 -

jurisdiction had been invoked does not change the applicable law." Capozziello v. Brasileiro, 443 F.2d 1155, 1157 (2nd Cir. 1971).

"Although the complaint recites that jurisdiction is based upon diversity of citizenship, the cause of action is actually founded upon a maritime tort, cognizable in admiralty. The substantive law to be applied is the general maritime law of which the ultimate expositor is the Supreme Court of the United States." Mulvihill v. Furness, Withy & Co., 136 F.Supp. 201, 205 (S.D.N.Y. 1955).

"[T]he tort in the case at bar was a maritime tort, which might have been the subject-matter of admiralty jurisdiction. ... In The Max Morris, 137 U.S. 1, 11 Sup.Ct. 29, 34 L.Ed. 586, it was held that, where a person is injured on a vessel through a maritime tort arising partly from the negligence of the officers of the vessel and partly from his own negligence, and sues the vessel in admiralty for damages for his injuries, he is not debarred from all recovery because of the fact that his own negligence contributed to his injuries. The right to recover irrespective of contributory negligence is a right, and not a matter of procedure, nor is it governed by the choice of the forum. In the case at bar, plaintiff has sought his remedy at common law to obtain redress arising out of a maritime tort. He entered the common-law court with the same right as he would have entered the admiralty court. That was the right to recover, irrespective of his own negligence, provided, of course, he could show the negligence of his employer, and this right of plaintiff sprang into existence because he suffered a maritime tort." Port of New York Stevedoring Corporation v. Castagna, 280 F. 618, 623-24 (2nd Cir. 1922), cert denied, 258 U.S. 631, 42 S.Ct. 463, 66 L.Ed. 801 (1922).

Finally, as the following case excerpt shows, even a person who was injured boarding a vessel docked in navigable waters, but who sued the defendant in federal court under the court's diversity jurisdiction, with no mention of admiralty, and who specifically denominated her claims as state law negligence claims under the common law of Maine in hopes of avoiding the application of substantive admiralty law, could not escape the application of federal admiralty law to her claims because a maritime tort was involved:

- 7 -

Case 2:05-cv-04182-SRD-JCW Document 15584-4 Filed 10/16/2008 Page 8 of 10

Plaintiff was injured while attempting to board a fishing vessel, the SEA LION VII, which was docked at Defendant's wharf in Newington, New Hampshire.

\* \* \*

Plaintiff brings this action under 28 U.S.C. §1332 based on diversity jurisdiction, stating a cause of action on a theory of state common law negligence. ... Defendant argues that Plaintiff's claim constitutes a maritime tort and is governed by federal admiralty law. Therefore, Defendant claims that Plaintiff's cause of action is barred by the three year statute of limitations that governs maritime causes of action for personal injury under 46 U.S.C. App. §763a.

\* \* \*

Although the injury to Plaintiff was suffered while boarding a fishing vessel, the jurisdictional predicate asserted by Plaintiff for this case is diversity of citizenship. Plaintiff has not claimed admiralty and maritime jurisdiction as vested in the federal district courts under 28 U.S.C. §1333. Neither does Plaintiff's Complaint contain a Rule 9(h) identification of the claim as being within the federal admiralty and maritime jurisdiction. Rather, Plaintiff's claims is one of negligence under the common law of the State of Maine.

Plaintiff argues that because she claims diversity rather than admiralty jurisdiction, the Court must apply the state statute of limitations applicable to negligence claims. Plaintiff argues, in effect, that in bringing her action for negligence, she may choose whether or not to avail herself of federal district court admiralty jurisdiction. Plaintiff may properly assert diversity jurisdiction as a basis for her claim in this matter. Plaintiff's choice of diversity jurisdiction rather than admiralty jurisdiction, however, does not determine the substantive law that governs the case.

The United States Supreme Court opinion in *Pope and Talbot, Inc. v. Hawn*, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953), is instructive. In *Hawn*, the Supreme Court held that substantive federal maritime law applied where it had been determined that the basis of the underlying claim was a maritime tort. [According to the Court in Hawn:]

> Nor can we agree that Hawn's rights must be determined by the law of Pennsylvania.... True, Hawn was hurt inside Pennsylvania and ordinarily his rights would be determined by Pennsylvania law. But he was injured on navigable

- 8 -

> waters while working on a ship to enable it to complete its loading for safer transportation of its cargo by water. Consequently, the basis of Hawn's action is a maritime tort.... His right of recovery for unseaworthiness and negligence is rooted in federal maritime law. Even if Hawn were seeking to enforce a state created remedy for this right, federal maritime law would be controlling.
>
> The *Hawn* Court also suggested that applying state law to a maritime tort claim simply because diversity jurisdiction is alleged would lead to forum shopping, noting that the substantial rights of parties would depend on which courthouse, or even on which 'side' of the courthouse, a lawyer might guess to be in the best interests of his client. Faced with this likelihood, the Court held that the substantial rights of an injured person are not to be determined differently whether his case is labeled 'law side' or 'admiralty side' on a district court's docket. Under *Hawn*, a finding that the underlying cause of action constitutes a maritime tort mandates application of substantive federal admiralty law, Plaintiff's claim of diversity jurisdiction notwithstanding.
>
> \* \* \*
>
> [The court went on to determine that because the Plaintiff's claim was a maritime tort, the three-year federal admiralty statute of limitations for maritime torts, 46 U.S.C. App. §763a, applied to bar the late-filed action.]

See, Butler v. American Trawler Co., Inc., 707 F.Supp. 29, 30-31, 35 (D.Maine 1989)(some citations and quotation marks omitted), aff'd, 887 F.2d 20 (1st Cir. 1989).

Given the foregoing, to the extent that Barge Plaintiffs' have alleged causes of action against the various defendants that arise under General Maritime Law, substantive admiralty law will govern the rights and liabilities of the parties even though Barge Plaintiffs elected to proceed under the court's diversity jurisdiction and asked for a jury trial. A Rule 9(h) election is simply not necessary for substantive admiralty law to apply. Barge Plaintiffs' argument to the contrary is misplaced.

- 9 -

## Conclusion

Based upon the foregoing reasons, and also for those reasons set forth in the Dock Board's original opposition memorandum, the Barge Plaintiffs' motion for leave to amend their Complaint should respectfully be denied.

Respectfully submitted,

DAIGLE FISSE & KESSENICH, PLC

BY: /s/ Kirk N. Aurandt
J. FREDRICK KESSENICH (7354)
JONATHAN H. SANDOZ (23928)
MICHAEL W. MCMAHON (23987)
JON A. VAN STEENIS (27122)
KIRK N. AURANDT (25336)
P. O. Box 5350
Covington, Louisiana 70434-5350
Telephone: 985/871-0800
Facsimile: 985/871-0899
Attorneys for Board of Commissioners
of the Port of New Orleans

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record by the Court's ECF system, this 10th day of October 2008.

/s/ Kirk N. Aurandt
KIRK N. AURANDT

- 10 -