**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**IN RE KATRINA CANAL BREACHES**
**CONSOLIDATED LITIGATION**

**PERTAINS TO: ROAD HOME**
*State of Louisiana, C.A. No. 07-5528*

**CIVIL ACTION**

**NO. 05-4182**

**SECTION _K_ MAG _2_**

**JUDGE DUVAL**
**MAGISTRATE JUDGE**
**WILKINSON**

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO CERTAIN INSURERS' MOTION TO DISMISS**

## TABLE OF CONTENTS

OPENING STATEMENT …………………….…………………………………………2

INTRODUCTION…………………………………………………………………………..2

LEGAL STANDARDS………………………………………………………………..6

ARGUMENT…………………………………………………………………………….6

# TABLE OF AUTHORITIES

## CASES

*American Pipe & Construction Co., et al v. Utah, et al.,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974)……………………………………………………………………………..24

*Beazor-Williams v. St. Paul Fire and Marine Ins. Co.,* 598 So.2d 1249 (La.App. 4th Cir. 1992)……………………………………………………………………….......……22

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) …………………………………………...14

*Caruso v. Allstate Insurancy Co.,* 2007 WL 625830 (E.D. La. 2/26/07)………………………..22

*Conoco, Inc. v. Republic Insurance Co.*, 819 F.2d 120 (5th Cir. 1987) …………………………….7

*In re Consolidated Cos.*, 185 B.R. 223 (E.D. La. 1995), *aff'd mem.*, 106 F.3d 396 (5th Cir. 1996)……………………………………………………………………….18, 19, 20

*Cox v. Heroman & Co., Inc.,* 298 So.2d 848 (La. 1974)…………………………….….………11

*Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345…………………………………………………24

*Farciert v. American National Property & Casualty Co.*, No. 650-102 (La. 24th Jud. Dist. Ct. Oct. 27, 2008)…………………………………………………………..8

*Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)………………………….6

*In re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182, 2008 WL 3906760 (E.D. La. Aug. 26, 2008) …………………………………………………………..24

*L & A Contracting Co. v. Ram Industrial Coatings, Inc.,* 762 So. 2d 1223 (La. Ct. App. 1st Cir. 2000) …………………………………………………………………..7

*Landry v. Louisiana Citizens Property Insurance Co.*, 983 So. 2d 66 (La. 2008) ……………14, 16

*Lewis v. Kubena*, 800 So. 2d 68 (La. Ct. App. 4th Cir. 2001)……………………………………23

*Moise v. Mutual Reserve Fund Life Association*, 13 So. 170 (La. 1893) …………………………7

*N. Vo, Inc. v. Atlantic Casualty Insurance Co.*, No. 07-6861, 2008 WL 687188 (E.D. La. Mar. 10, 2008)………………………………………………………………………7

*Real Asset Management, Inc. v. Lloyd's of London*, 61 F.3d 1223 (5th Cir. 1995) ……………………………………………………………………….21, 22

*Seago v. Travelers Insurance Co.*, No. Civ. A. 02-1949, 2002 WL 31109366
(E.D. La. Sept. 20, 2002) ................................................................................................................7

**AUTHORITIES**

Fed. R. Civ. P. 15………………………………………………………………………….6

La. Civ. Code art. 2653……………………………………………………………….6, 9, 10

La. Civ. Code art. 2642………………………………………………………………..9, 12

La. Civ. Code art. 2643………………………………………………………………..9, 12

La. Civ. Code art. 1827………………………………………………………………..10

La. R.S. 22:695…………………………………………………………....16, 17, 18, 20, 21, 22

La. R.S. 22:691……………………………………………………………17,18, 19, 20, 21, 22

Louisiana Act of June 30, 2006, No. 802, 2006 La. Sess. Law Serv. 1918………………….…24

## OPENING STATEMENT----REMAND

As is clear, the issues raised by the instant motion are matters of Louisiana Law and implicate the right of the State of Louisiana to assert its sovereignty in the Civil District Court for the Parish of Orleans. Unless and until the pending issue of remand is addressed, any action on this motion should be deferred.

## INTRODUCTION

After having read the exaggerated, Introduction proffered by the Defendant-Insurers, (herein after the 'Insurance Industry" or "Insurers") one can only think that its conduct is not unlike a fox complaining that the hens fought back! The Road Home Program was designed to promote, encourage, and aid in the recovery of the State of Louisiana. It was not intended to provide a windfall for the Insurers or be a substitute for insurance coverage. Instead of stepping up and assisting in the recovery process, the Industry resisted all initial efforts of the State to protect its fiscal integrity by claiming a portion of the insurance proceeds available under Coverage A until it had no other choice but to cooperate in the adoption of the Approval Protocol now in place.  Certainly, the Industry was entitled to vigorously assert its interests as it saw them, but it must not now suggest its motives were altruistic and unselfish. Profit is the hallmark of the Insurance Industry.

The Louisiana Recovery Authority under its Road Home Program has made available in excess of Eight Billion dollars to Louisiana homeowners. It is this funding which the State seeks to recover by virtue of the Road Home Limited Subrogation/Assignment Agreement (hereinafter "Agreement").

The Louisiana Road Home program ("Road Home") is a federally funded grant program administered by the State of Louisiana to provide relief to Louisiana residents for dwelling losses suffered as a result of Hurricanes Katrina and Rita. The funds were appropriated by Congress and provided through HUD's Community Development Block Grant Program. The State established the Road Home program to distribute those federal funds. Consistent with federal law that prohibits providing relief funds that would duplicate payments from other sources; the Road Home program deducts any insurance payments from its grants, provided it is made aware of any prior insurance payments.

Similarly, the Road Home program requires grant recipients to reimburse the State to the extent they subsequently receive Coverage A (building coverage) insurance or other payments for losses covered by their grants. To the extent that the Road Home Program recovers funds pursuant to this Agreement, these funds are returned to the State for recycling under the Program.

As the State of Louisiana reads the motion papers, all Agreements in force and in effect as of September 1, 2007 (for Katrina claims) or October 1, 2007 (for Rita claims) are **not at issue** and the Industry will continue to comply with the existing Orders and Protocols now in place for calculating the recovery due the State. Nor do the Insurers take issue in circumstances where a suit was filed by the Insured before the two year anniversary but the Agreement was executed subsequently thereto.

As of today, approximately 90,000 Agreements have been executed by non-named litigant insureds since the two year anniversaries of these devastating storms. **It is these Agreements and the billions of dollars disbursed pursuant to those Agreements which are at issue.**

3

The Insurance Industry suggests that the State "…knows better than the insureds and the insureds' personal attorneys how much money they should receive from their insurance company for their Hurricane Katrina- and Rita-related losses."  To date, the State has only challenged a settlement where there appears, on its face, a fraudulent effort to defeat the State's right to share in the recovery of Coverage A settlement funds. The State has not engaged in "second guessing" any bona fide settlement agreement.

Clearly the thorn in the side of the Industry is that a number of Insureds have abandoned covered claims under their insurance policies once the Grant issued. In these circumstances, the Insurance Industry is the ultimate beneficiary of such non-action at the expense of the State. This litigation is intended to address this inequality----Road Home is not and was never intended to benefit the Industry as a substitute for insurance coverage.

In Footnote 1, the Insurance Industry asserts that "…Mississippi, with HUD approval, has decided not to seek to enforce any assignments/subrogation rights with respect to claims on which the homeowner has filed suit against an insurer and reached a settlement that does not specificially allocate payments to particular coverages".  Putting aside whether this assertion of HUD approval is false, which it is, so be it.  Similar approval for Louisiana has not been forthcoming and the Road Home Program remains obligated to seek recovery under the Agreements.

Contrary to the Insurance Industry's assertion, The State has never sought to use these Agreements to transform itself into the insured and to pursue additional recoveries even where the insured has already filed a separate lawsuit, where the insured was satisfied with the amount paid, or where the insured reached a settlement agreement with the insurer.  Where there

is pending litigation, the State has, in the absence of fraud, accepted the parties' settlement evaluation.

      As will be shown herein, the State of Louisiana possesses the right to sue on behalf of the Insured regardless of the existence or lack thereof the Agreement and regardless of the insurers' consent.  The State will also demonstrate that the State of Louisiana has the right to assert any cause of action which the Grantee possesses under its insurance policy.

**LEGAL STANDARDS**

**Federal Rule Of Civil Procedure 12(b)(6) and State Law**

The Insurance Industries' statement of the applicable legal standards to be applied is an accurate but incomplete analysis. It fails to note that where there is a deficient factual basis, the non-moving party must be allowed leave to amend to cure any factual deficiency. FRCP, *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed. 2d. 222 (1962).

**ARGUMENT**

I.   **The Amended Petition Should Not Be Dismissed Because The State Has Standing As the Asignee/Subrogee Of The Claim For Katrina or Rita Loss**

A)   **Consent Is Not Required Under the Referenced Policies To Assign A Claim, Language Prohibiting A Policy Assignment Notwithstanding**

The Insurers argue that LSA-C.C. Art. 2653 prohibits an assignment without its consent  where the contract of insurance prohibits such an assignment.  Art. 2353 reads as follows:

A right cannot be assigned when the contract from which it arises prohibits the assignment of that right. Such a prohibition has no effect against an assignee who has no knowledge of its existence.

Critical to this discussion is what it is that cannot be assigned. The policies at issue preclude assignments of "the Policy" without the written consent of the insurer. The term "policy" is clear and unambiguous. Not a single policy is cited by the Insurers suggesting that any of the insurance policies at issue herein preclude the assignment of a **claim** for loss under the policy.  The distinction between the term "policy" and "claim" is self apparent.

Further, under the terms of the Agreement, the State is not granted an assignment of coverage under an insurance policy. It is granted a **limited** assignment to pursue a Katrina or Rita claim standing in the shoes of the Insured. The Insurance Code does not prohibit the assignment of a claim. . The insurance contract remains as written notwithstanding the Agreement.  The parties to the Insurance Contract remain the same. An assignment of a claim once a casualty has occurred is appropriate and not prohibited by the Louisiana Civil Code.

The Insurers reliance in suggesting that a Coverage A claim under a policy of insurance for Katrina or Rita damage on *Moise v. Mut. Reserve Fund Life Ass'n*, 13 So. 170, 170 (La. 1893) is misplaced. The Court first noted its complete lack of jurisdiction and gratuitously added that involved death benefit assignment was not consented to and therefore invalid. In *L & A Contracting Co. v. Ram Indus. Coatings, Inc.*, 762 So. 2d 1223, 1230 (La. Ct. App. 1st Cir. 2000), also cited to the same effect, the entire policy of liability insurance was assigned to a successor entity. No claim for loss was at issue. Similarily, in *Seago v. Travelers Ins. Co.*, No. Civ.A.-02-1949, 2002 WL 31109366, at *2 (E.D. La. Sept. 20, 2002) the policy in its entirety was assigned.

 *N. Vo, Inc. v. Atl. Cas. Ins. Co.*, No. 07-6861, 2008 WL 687188, at *3 (E.D. La. Mar. 10, 2008) is inapplicable because the insured business was sold prior to the loss for which a claim was made. In *Conoco, Inc. v. Republic Insurance Co.*, 819 F.2d 120 (5th Cir. 1987), the issue was the validity of an assignment without consent not of a policy of insurance but of "any right" thereunder, which would necessarily include a claim for loss. With but one exception then, *Farciert v. Am. Nat'l Prop. & Cas. Co.*, No. 650-102 (La. 24th Jud. Dist. Ct. Oct. 27, 2008), apparently unopposed, none of the cases relied upon by

the Insurance Industry discuss the validity of an assignment of claim without the consent of the Insurer.

Given the lack of a clear, specific, and unambiguous policy prohibition against the assignment of a claim for loss already sustained, the Agreement assigning such rights to the State is effective and valid. Assignment of already-realized rights, such as a right to sue on a specific cause of action, is frequently discussed in case law and is a right to be exercised.

The State is not morphing or "transforming itself into a super-policyholder." Such an argument is intended only to confuse and obscure. No **coverage** is afforded the State. The Insured does not forfeit coverage for other present or future covered losses. The Insured remains obligated to pay the premium. The assignment does not increase the Insurers stated coverages. The State only stands in the shoes of the Insured to assert only the covered Katrina or Rita **claim for loss**.

Can it be said that the Insurers have waived any notice rights it has under the policies at issue? Upon an insured applying for a grant the carrier is notified of the application and asked to confirm coverage. By virtue of published regulations and or discussions with carriers, it was made clear to the Insurance Industry that an assignment would be required. The failure to then assert it right to consent operates as a waiver of its right to consent or, said another way, it's had given its implied consent to such assignment.

B)      **Consent To The Claim Assignments Is Not Required As A Matter Of Law**

Having demonstrated that C.C.Art. 2653 does not control since the policy provisions requiring consent to an assignment of the policy do not encompass an assignment of claims, the Insurers representation—"Louisiana courts have repeatedly held that partial assignments are not enforceable without the consent of the obligor. "----thereafter citing pre-1980's cases, is clearly wrong.

LSA-C.C.Arts. 2642 provides:

All rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor.

LSA-C.C.Arts. 2643 provides:

The assignment of a right is effective against the debtor and third persons only from the time the debtor has actual knowledge, or has been given notice of the assignment.

If a partial assignment unreasonably increases the burden of the debtor he may recover from either the assignor or the assignee a reasonable amount for the increased burden.

The legislative notes recognize that the Legislature's 1984 and 1985 amendments to former Civil Code Article 2643, moreover, showed that its intent was to allow partial assignments without the debtor's consent. These amendments conformed the Civil Code to "…contemporary commercial practices by permitting partial assignments without consent…" absent contractual language to the contrary."

Clearly, the law post 1985, does not prohibit the Limited subrogation and Assignment Agreement a issue here.

**C)      The State Of Louisiana is Subrogated To The Rights of The Insured and Thus No Consent is Necessary.**

It is clear that the Agreement executed by the insured grant recipient is both an assignment and a subrogation agreement. It is styled as such, the Road Home Limited Subrogation/Assignment Agreement. As a subrogee, the State would likewise stand in the shoes of the Insured and any contractual provision requiring consent to the subrogation agreement is without force or effect.  Consent of anyone other than the subrogor and subrogee is not required.

This is no argument that the Road Home Program was intended to offset the lack of available insurance coverage, billions and billions of dollars of loss were potentially unrecoverable because of the flood exclusion language in all of the policies at issue here. Without an infusion of billions of dollars of capital by the Road Home Program, insufficient insurance proceeds were available to rebuild the tens of thousands homes destroyed by Katrina and Rita. To say it another way, the decision of the Insurance Industry to assert its various coverage exclusions and aggressively challenge the nature and extent of the Insured losses, assured the lack of sufficient capital to rebuild these devastated parishes pending Court resolution of these coverage defenses.

The relevant Civil Code Articles include Art. 1827 which mandates that: "An obligee who receives performance from a third person may subrogate that person to the rights of the obligee, even **without the obligor's consent**. That subrogation is subject to the rules governing the assignment of rights." (Emphasis supplied).  It may be argued that the subsequent adoption of Art. 2653 applies to subrogated interest but the notes and comments do not so suggest. The cross references in the Act address assignment Articles not the subrogation Articles addressed here.

10

In Cox v. Heroman & Co., Inc., 298 So.2d 848 (La.1974), involving a situation of partial subrogation, the Louisiana Supreme Court held that the rule against partial assignments without the debtor's consent did not extend to cases where subrogation--whether legal or conventional--was involved. According to the Court:

"There is a substantial conceptual difference between, on the one hand, an 'assignment', which has the nature of the sale and acquisition of a credit so as to permit its enforcement of the assignee, and, on the other hand a conventional 'subrogation', which has for its primary purpose the negotiated discharge of a debt due to the creditor. Civil Law Translations (Aubry & Rau, Obligations), Section 321 (1965); Comment, 25 Tul.L.Rev. 358, 368-69 (1951). Thus, in a subrogation the interest of a creditor (here, Reulet) in receiving payment of his debt in return for subrogating the third party to his right to recover it, outweighs the interest of the debtor (here, Cox) in avoiding the division of the debt he owes into multiple claims, the policy of preventing partial assignments. No authority is cited to us which prevents partial subrogation. The Civil Code, in fact, recognized that a partial subrogation can take place in the case of a legal subrogation, Article 2161, and that, in the case of both legal and conventional subrogation, a partial subrogation may take place, Article 2162.... We could find no decisions which held that the consent of the debtor was necessary for the creditor to subrogate part of the debt due by receiving payment from the third person. On the other hand, we found decisions such as R.M. Walmsley & Co. v. Theus, 107 La. 417, 31 So. 869 (1902) and numerous collision insurer subrogation cases which without discussion allowed a partial subrogation by the creditor unconsented to by the debtor. 298 So.2d at 856."

The collision carrier subrogation cases alluded to in Cox are easily reconcilable with the articles of the Louisiana Civil Code on indivisible obligations because in the collision cases there is more than one obligor, and therefore the obligation involved is not within the purview of Article 1816. But there would seem to be an inconsistency in, on the one hand, allowing partial subrogation in cases where there is one creditor and one debtor and yet, on the other, disallowing partial assignment in such cases where there is no subrogation. If Cox was correctly decided, then the only thing an assignor who wishes to assign a part of an obligation without the debtor's consent need do is to grant a partial subrogation to the assignee. The legislature's 1984 and 1985 amendments to former Civil Code Article 2643 moreover, showed that the intent of the legislature was to allow partial assignment without the debtor's consent. See Acts 1984, No. 921; Acts 1985, No. 97. Revised Articles 2642 and 2643, conforming to a contemporary commercial practice, permit validity of the partial assignment without the consent of the debtor.

11

The subrogation of the Grantee's rights against his/her insurer is effective and valid notwithstanding the lack of consent by the Insurer.

The State, having paid the debt of another, i.e. the Insurers failure to fully pay all sums due under the policies of insurance at issue, are subrogated to the rights of the Insureds without the consent of the Insurer. This subrogation is no different than the subrogation to which these Insurers succeed when a claim for automobile damage is paid under a collision policy. The subrogation is partial; the insured retains the right to collect the deductible and the Insurer the balance of the loss. Neither the tortfeasor nor the liability insurer have a say in the matter, their consent is irrelevant, as it is here.

## II.       The Burden On The Insurance Industry Does Not Warrant Dismissal.

The Insurance Industry cites to numerous decisions of states other than Louisiana arguing these authorities nullify any limited assignment or subrogation where the burden on the Insurer is exacerbated. These authorities are without merit.

The Legislature has addressed this issue in Arts. 2642 and 2643, *supra.* Art. 2643 specifically provides that an obligor may recover from either the assignor or assignee the increased cost the assignment may create.

Even if burdensome was the test, these Insurers routinely defend limited collision subrogation claims involving property. The present matter is essentially no different.

The Insurers mislead the Court into believing that it is defending the same claim in two *fora.*  It is not. Where there is a pending, filed claim, the State has, absent fraud, not interjected itself into the trial preparations or settlement negotiations. The only role played by the State in these cases has been to request information so that the grant

recovery, with all proper credits given the grantee, can be calculated. The State has no plans to do more, absent some unforeseen fraud on the process.

The Insurers complain that where no suit has been "timely" filed it will be forced to litigate with a non-party, the State of Louisiana. The burden on the State to prove its claim will be no less or, for that matter, no more than the burden on an insured, if it were the party.  What difference does it make if the State is a party and/or the insured is a party if the property has been repaired?  What difference does it make if the State is a party and/or the insured is a party if the property has been flooded? None at all. Simply put, the Insurers believed they would not have to pry any unfilled claims until were confronted with litigating against the State in the present matter.  The true burden is that the Insurers may be forced to pay what should have paid—not an unfair or unreasonable burden.

Louisiana has addressed the proper remedy if the burden on the obligor is increased, costs may be taxed. The Legislature has rejected dismissal in such circumstances.

## III.   Insureds Have Chosen To Abandon Their Claims.

By not filing suit even to this day, it is fair to conclude that the insureds have abandoned any effort to seek recovery or additional recovery from their insurer. Thus, given this constructive abandonment, under the terms of the subrogation/assignment agreement, the State has the right to exercise its rights thereunder and bring this action.

Further, since the State is also subrogated as a matter of law upon funding a grant, it has every right to proceed against the Insurers regardless of abandonment by the insured.

## IV.   The Petition Properly Pleads Viable VPL Claims

First, the Defendant's appear to claim that in a class action that there can be no total loss of any property in the City of New Orleans.  The defendants just assume that, with respect to every property, that the substantial part of the loss was from an excluded peril.  This is contrary to what has been plead.  See Amended Petition at paragraph 46(a).  Furthermore, such an argument is without merit as the facts will show that there do, in fact, exist some properties in the class action in which the efficient proximate cause of the total loss was a covered peril.[1]

Second, the Defendant's cite the case of <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, (U.S. 2007) at page 1965, apparently for the proposition that in a class action that the Plaintiff must list each specific property covered by the class and specifically plead the extent of the covered damage for each property, the cost to repair the damage for each property, and the value of the specific property.  Such a requirement is contrary to the very essence of class actions and contrary to the holding in <u>Twombly</u>.

In <u>Twombly</u>, which involved the very complicated and sui generis area of anti-trust law, the anti-trust complaint alleged that the ILECs conspired to restrain trade (1) by engaging in parallel conduct in their respective service areas to inhibit the growth of upstart CLECs; and (2) by agreeing to refrain from competing against one another, as indicated by their common failure to pursue attractive business opportunities in contiguous markets and by a statement by one ILEC's chief executive officer that competing in another ILEC's territory did not seem right.  The United State Supreme

---

[1] Furthermore, while this issue is not before the Court in the motion at bar, the issue of the application of the efficient proximate cause doctrine in the case of the presence of a covered and non-covered peril was specifically remanded to the trial court for such a determination in <u>Landry v. Louisiana Citizens Property Ins. Co.,</u> 983 So.2d 66 (La. 5/21/08).  Should this issue become relevant to this Honorable Court, the Claimant requests the opportunity to brief that the anti-concurrent causation clause is unenforceable under Louisiana Law and that issue will be decided by Louisiana Courts.

Court specifically held that a detailed pleading of facts was not required contrary to the assertion of the Defendants in the case at bar but held the particular allegations in the anti-trust case did not meet the threshold to give the defendant fair notice of what the claim is and the grounds upon which it rests in pertinent part as follows:

> . . . Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).. . . .
>
> *      *      *
>
> . . . In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. . . .

In the case at bar, Defendants are clearly on notice in Amended Petition Paragraph 40 that the "recipients' losses were caused by covered perils, the efficient causes of their losses were covered perils and the efficient and proximate causes of loss were covered perils, . . .". See also Amended Petition Paragraphs 46(a) and 76. Further, that "many recipients whose residences were located in the City of New Orleans and elsewhere in the State suffered total losses to their residences from covered events." See Amended Petition Paragraph 41. See also paragraph 46 (e) and 76. Furthermore, the term "total loss" is both a legal and factual question. The ultimate factual question, as required by the VPL statute, is whether or not the loss is a total loss. To couch this term as legal only is simply incorrect. And to equate the term "total loss" to the sui generis anti-trust laws is simply unsupported. Clearly, the Claimant has adequately placed the Defendants on notice of what the VPL claim is and the grounds upon which it rests.

Third, the Defendants cite <u>Landry v. Louisiana Citizens Property Ins. Co.,</u> 983 So.2d 66, 2007-1907 (La. 5/21/08), for the proposition that the Louisiana Supreme Court has concluded that the VPL applies only to fire losses.  Such is not the case.  In fact, the Louisiana Supreme Court specifically did not resolve the question of the applicability of the VPL statute to homeowners policies as follows:

> The parties did not ask this court to resolve the issue of the applicability of La. R.S. 22:695 to the insurance policy at issue in this matter. Indeed, defendant conceded at oral argument before this court that it was not challenging the applicability of the statute in this case. Because of the unique issues presented with respect to the applicability of La. R.S. 22:695 to this homeowners' policy [FN10] and because we reach the same result whether the statute applies or does not apply to the instant case,[FN11] we need not resolve the question of the applicability of the statute in this particular case. Consequently, we will assume *arguendo* that La. R.S. 22:695 applies to this case for the remainder of this opinion.  (footnotes omitted)  <u>Landry v. Louisiana Citizens Property Ins. Co.,</u> 983 So.2d 66, 73-76, 2007-1907 (La. 5/21/08).

In dicta, in footnote 10, the Louisiana Supreme Court noted some thoughts about the legislative history of the VPL, and specifically stated:  ". . . However, it seems the insurance industry has always assumed that the use of the term "fire insurance policy" includes homeowners' policies. We need not resolve this issue in the instant matter because the result is the same whether the statute applies or not. We urge the legislature to consider this issue and to make changes to the language of La. R.S. 22:695 if needed." <u>Landry v. Louisiana Citizens Property Ins. Co.,</u> 983 So.2d 66, 76, 2007-1907 (La. 5/21/08).

Not only did the Louisiana Insurance Industry assume that the term fire insurance policy includes a homeowners policy, so did the Louisiana Department of Insurance.  The Statement of Compliance is "a form prescribed by the Louisiana Department of Insurance, detailing the requirements specific to a particular form of coverage and

contract type"[2].  The form prescribed by the Louisiana Department of Insurance, relevant to the proceedings at bar, for a comprehensive homeowners policy can be found at the below link.  Relevant to the proceedings at bar, is that section of the Statement of Compliance entitled "Limitations/Exclusions" which specifically deals with homeowners policy insurers excepting out of valued policy or complying with La. R.S. 695(A)[3].  For purposes of Louisiana homeowners' policies, the Insurer must provide whether the homeowners policy is excepting out of the valued policy clause or complying with the provisions of La. R.S. 22:695(A).  This evidence of the Statement of Compliance necessary for a homeowners policy form also demonstrates that the Louisiana Department of Insurance also views La. R. S. 22:695(A) as applicable to "homeowners policies".  In fact, a review of the Department's web site shows that the homeowners policy comes under the umbrella of "fire policies"[4].  Furthermore, the Louisiana Department of Insurance recently issued Advisory Letter 06-04 which states "it has come to my attention that the vast majority of homeowners policies issued to insureds in the state of Louisiana limit an insured's right to file suit on a homeowners insurance claim to a period of 12 months (LSA-R.S.22:691).[5]"  La. R. S. 22:691 specifically applies to fire insurance policies.  If a homeowners policy is not a fire insurance policy, then the applicable prescriptive period will be that of contract, i.e., ten years, and not governed by La. R.S. 22:691.   Jurisprudence cited below demonstrates that this is not the

---

[2] See Regulation 78 Policy Form Filing Requirements (LAC 37:XIII. Chapters 59 and 101) at Section 10113(A) at page 22 at:
http://www.ldi.la.gov/docs/commissionersoffice/legal/Regulations/Reg78_Cur_PolicyFormFilingRequ.pdf
[3] See State of Compliance form for a comprehensive homeowners policy at pages 2 at
http://www.ldi.state.la.us/ldipolicymatrix/reports/PFMSQLReport/soc_checklist.ashx?id=12683
[4] See http://www.ldi.state.la.us/ldipolicymatrix/
[5] See Advisory Letter 06-04 at
http://www.ldi.la.gov/docs/commissionersoffice/legal/Advisory%20Letters/AL06_04_Cur_ProceduresToProvideA.pdf

interpretation of Louisiana State Courts, Federal courts nor the Louisiana Department of Insurance, the administrative agency tasked with regulating property and casualty insurers.

There is nothing in Title 22, Chapter 1, Part XV, of the Louisiana Revised Statutes, or any other statute in the Louisiana Insurance Code, that supports the Defendant's contention that the VPL does not apply to non-fire losses. The Defendants cites In re Consolidated Companies, 185 B.R. 223 (E.D.La.1995), in support of its argument, but this case is an anomaly in the jurisprudence interpreting R.S. 22:695, and no other case on point supports its conclusion.

Consolidated Companies involved an appeal in a bankruptcy case over a claim for partial loss caused by theft and vandalism, which was covered by an all-risk commercial insurance policy. Appellant, Sunrise Investment Company, Inc., ("Sunrise") disputed the valuation of the partial loss by the insurer, Sun Insurance Company of New York ("Sun"), and argued that it was entitled to the un-depreciated value of the damaged property, pursuant to La. Rev. Stat. §. 22:695, rather than the actual cash value paid by the insurer. Consolidated Companies, 185 B.R. at 224. The District Court, sitting in its function as an appellate court in this bankruptcy proceeding, found "that provisions in Louisiana Revised Statute 22:695 should not be read into the Sun policy," and held that Sunrise was thus entitled only to the actual cash value as provided in Sun's policy. Id. at 225-226.

Although the Court recognized, correctly, that Sun's all-risk commercial insurance policy was subject to the provisions of La. Rev. Stat. § 22:691, it erred in its holding, for several reasons. First, the Court noted that Subsection 22:691(E)(2) states

18

that a policy which covers the peril of fire and other perils need not comply with the provisions of Subsections 22:691(A)-(B), provided, *inter alia*, that "such policy or contract shall afford coverage, with respect to the peril of fire, not less than the coverage afforded by the standard fire policy." In re Consolidated Companies, 185 B.R. at 225 (*quoting* La. Rev. Stat. § 22:691(E)(2)). Louisiana Rev. Stat. § 22:691(A) and (B) prescribe the designation and form of the standard fire policy. As previously stated, by permitting an insurer to deviate from these provisions, La. Rev. Stat. § 22:691(E)(2) thus allows a policy which covers the peril of fire and other perils to be designated as something other than the "standard fire insurance policy of the State of Louisiana," (*e.g.*, a "homeowners' policy"), and to use a form other than that codified at La. Rev. Stat. § 22:691(F).

The District Court further noted that in the event an insurer chooses to use its own forms, rather than those prescribed by La. Rev. Stat. § 22:691(A)-(B), and the insurer's policy forms "are not equivalent to or do not exceed the terms and conditions of the standard fire policy, all of the provisions of the standard fire policy shall become a part of the policy . . . ." In re Consolidated Companies, 185 B.R. at 225 (*quoting* La. Rev. Stat. § 22:691.2(B)). In other words, read together, La. Rev. Stat. § 22:691(E)(2) and La. Rev. Stat. § 22:691.2(B) provide that if an insurer uses its own policy forms, and forms do not provide coverage for the peril of fire that equals or exceeds the coverage provided by the standard fire policy, the standard fire policy is attached to and becomes a part of the policy, as a matter of law.

Because the policy issued by Sun was an all risk commercial property policy – and not the form of the standard fire insurance policy codified at Rev. Stat. § 22:691(F) –

the Court summarily concluded, without examining the actual Sun policy, that Sun's policy forms did not provide coverage for the peril of fire that equals or exceeds the coverage provided by the standard fire policy, and therefore that the provisions of the standard fire policy were necessarily incorporated by law into the Sun policy. This was the Court's first error. Without examining the actual terms of the Sun policy, the Court had no basis upon which to conclude that Sun's policy forms did not equal or exceed the terms of the standard fire policy, and that the standard fire policy must necessarily be incorporated into the Sun policy. Nevertheless, based upon this finding, the Court erroneously concluded "that Sections A and B of R.S. 22:691, which mandate a particular form with standard provisions, conditions, etc., and would also trigger application of R.S. 22:695 for valuation purposes, need not be complied with, with respect to non-fire perils covered by the policy." In re Consolidated Companies, 185 B.R. at 226 (emphasis added).

First, by the Court's own logic, if the provisions of the standard fire policy were necessarily incorporated by law into the Sun policy, this would "trigger the application of R.S. 22:695," as well as all other provisions of Title 22, Chapter 1, Part XV, of the Louisiana Revised Statutes. Second, La. Rev. Stat. § 22:691(A) and (B) prescribe the designation and form of the standard fire policy; they do not "trigger the application of R.S. 22:695." Third, La. Rev. Stat. § 22:691(E)(2) states that a policy need not comply with the designation and form prescribed by Sections A and B; it does not state that such a policy need not comply with any other provisions of Title 22, Chapter 1, Part XV, of the Louisiana Revised Statutes. Indeed, the Court's recognition that La. Rev. Stat. § 22:691.2(B) controls such a policy flatly contradicts the Court's own conclusion.

Most importantly, by its own terms, Rev. Stat. § 22:695(A) applies to "**any** fire insurance policy," not just to the standard form of fire insurance policy codified at R.S. 22:691(F).  *See* La. Rev. Stat. § 22:695(A) (emphasis added). Second, by its own terms, Rev. Stat. § 22:695 B applies to **any fire insurance policy** and it applies to **any covered loss of or damage to** the insured property, not just to damage caused by the peril of fire. La. Rev. Stat. § 22:695.

Notwithstanding Defendant's assertions to the contrary, federal and state courts in Louisiana have repeatedly applied La. Rev. Stat. § 22:695 to losses caused by perils other than fire.  In Real Asset Management, Inc. v. Lloyds of London, 61 F.3d 1223 (5th Cir.1995), the United States Court of Appeals for the Fifth Circuit endorsed the application of the VPL to perils other than fire.  In that case, the plaintiff, whose property was damaged by wind and rain from Hurricane Andrew, sued the insurer for failing to pay the full value of its policy even though the property was deemed a total loss.  The insurer refused to pay the full policy value, because the insured had paid less than half that value shortly before the storm.  The Fifth Circuit relied on Rev. Stat. § 22:695 to reject this argument.

> The defendants argue that allowing plaintiffs to recover the policy limits gives them a windfall when they paid less than half that as the purchase price a month before the storm.  However, as the defendants testified, they would not accept it as the value of the property for insurance purposes. Under Louisiana Valued Policy Law, if the insurer bases the premium on its valuation of the property, then in the event of a total loss, the insurer shall pay the actual cash value, or in other words, the policy amount.  The value that is determinative is the value placed on the property by the insurance company.  Moreover, it was the insurance company's own formulation that ultimately set the policy amount.

Real Asset Management, 61 F.3d at 1228 (internal citations omitted).

According to United States District Judge Sarah S. Vance, *Real Asset Management* "illustrates the Fifth Circuit's view that the VPL applies to a total loss caused by [sic] a peril other than fire." Caruso v. Allstate Ins. Co., 2007 WL 625830 (E.D.La. February 26, 2007). Like the Louisiana Supreme Court in Grice, the Fifth Circuit in Real Asset Management recognized that a property and casualty insurance policy covering the peril of fire and other perils is subject to the provisions of La. Rev. Stat. § 22:691, *et seq.*, including Rev. Stat. § 22:695(A), even when the loss or damage is caused by a peril other than fire.[6]

---

[6] *See also,* Florida Bldg., Inc. v. Standard Fire Ins. Co., 272 F.Supp. 400 (E.D.La.1967) (holding that La. Rev. Stat. 22:691 and La. Rev. Stat. 22:695 applied to claims under a standard fire insurance policy for damage caused by hurricane winds); Holloway v. Liberty Mutual Fire Ins. Co., 290 So.2d 791 (La.App. 1st Cir.1974)(applying La. Rev. Stat. 22:695(B) to determine valuation of partial loss caused by rain); Washington v. Allstate Insurance Company, 901 F.2d 1281 (5th Cir. 1990) (applying the one year prescriptive period required by La. Rev. Stat. 22:691(F) to an Allstate Homeowners Policy); Makofsky v. Indiana Lumbermens Mutual Ins. Co., 194 So.2d 442 (La.App. 4th Cir.1967) (applying provisions of La. Rev. Stat. 22:691 to claims under a standard fire policy for damage caused by the peril of windstorm); McBride v. Security Industrial Fire Ins. Co., 622 So.2d 743 (La.App. 3rd Cir.1993)(applying provisions of La. Rev. Stat. 22:691 to claims under a fire insurance policy for damage caused by hurricane winds); Beazor-Williams v. St. Paul Fire and Marine Ins. Co., 598 So.2d 1249 (La.App. 4th Cir.1992) (holding that plaintiffs homeowners policy contained the standard fire insurance policy provisions mandated by La. Rev. Stat. 22:691).

## V.      Subrogation and Assignment of the State

The subrogation/assignment agreement makes it cleat that the State can sue in both its name and that of the grantee. It stands in the shoes of the insured/grantee. The State is subrogated and assigned to:

all of my/our claims and future rights to reimbursement and all payments hereafter received or to be received by me/us:  (a) under any policy of casualty or property damage insurance or flood insurance on the residence, excluding contents ("*Residence*")

described in my/our application for Homeowner's Assistance under the Program ("_Policies_");

This language is broad enough to encompass the subrogation and assignment of rights under Sections 1220 and 658 of Title 22 in favor of the State since the claim arises under the policy. Alternatively, the State, in the name if the grantee, has the right to make such a claim and assert a preference over any recovery that may be had. These provisions, suit in name of the grantee, assignment of the policy, and the right of preference, makes it clear that the intent was to subrogate and assign these bad faith claims to the State and/or be brought in the name of the grantee satisfying the requirements of *Lewis v. Kubena*, 800 So. 2d 68, 72 (La. Ct. App. 4th Cir. 2001).

The same result applies with respect to the Breach of Fiduciary Duty claims asserted by the State. There is the intent to subrogate and assign these breach claims to the State and/or be brought in the name of the grantee.

If the Court believes these claims are properly asserted in the name of the grantee the State will do so timely and in sufficient time that these claims can be discovered and prepared for trial.

## VI.   The State's Claims Are Neither Prescribed Nor Prempted.

On the first page of their brief, the defendants claim that the State is imposing substantial litigation costs on the insurance industry, taxing the judicial system, and delaying settlement payments when putative class action lawsuits that make the same allegations are filed, thus pretermitting the necessity of the Road Home Litigation.

For the purposes of addressing the Insurers' argument that the cases are prescribed if a claimant did not file a suit by September 1, 2007 or October 1, 2007, the

State acknowledges that several class action lawsuits have been filed relating to insurance coverage. The filing of those class action lawsuits interrupted prescription for all those claimants who did not file a suit within the proscribed time limit as set forth in Act of June 30, 2006, No. 802, 2006 La. Sess. Law Serv. 1918, 1919 ("Act 802"). *American Pipe & Construction Co. et al. v. Utah*, et al., 414 U.S. 538; 94 S. Ct. 756; 38 L. Ed. 2d 713; 1974, including the breach of fiduciary claims asserted in the Amended Petition.

The Supreme Court has repeatedly stated that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action*." Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345 at 353-54 citing *American Pipe,* 414 U.S. at 554, 94 S. Ct. 756.

The initiation of a class action puts the defendant on notice, thus comporting with constitutional requirements of notice. *American Pipe*, 414 U. S. at 554, 94 St. Ct. 756. In *In Re: Katrina Canal Breaches Consolidated Litigation*, the Court said that the *American Pipe* tolling doctrine was created to protect class members from being forced to file individual suits in order to preserve their claims. *In Re: Katrina Canal Breaches Consolidated Litigation*, 2008 WL 2692674, E. D. LA. 2008.

In the case at bar, the original pleading was styled as a class action, thus invoking the tolling doctrine as discussed *supra*. The claims of the State are not prescribed if the insured did not file an individual lawsuit within the time period set forth in applicable Louisiana law.

**The State Has Failed To Adequately Plead Any Breach Of Contract Or Bad Faith Action.**

    **A.**    **The State Fails To Adequately Allege That The Insureds Complied With Their Duties Under The Policies, Which Is A Condition Precedent To Suit.**

    **B.**    **The State's Breach Of Contract Claims Fail To Plead Breach Of Specific Policy Provisions, As Required By Louisiana Law.**

    **C.**    **The State's Bad Faith Claims Fall Along With The Breach Of Insurance Contract Claims.**

    **D.**    **The State Does Not Allege Any Facts To Support Its Bad Faith Claims.**

**VII.    Pleading Deficiencies Are Curable**

The Insurance Industry complains that there are a number of pleading deficiencies that require dismissal. Specifically, the claims for bad faith, breach of contract claims, failure to plead specific policy provisions, fiduciary breach claims, and pre-suit compliance are challenged for lack of pleading specifics.

The State, at an appropriate time, is entitled to proffer an amendment to cure these deficiencies as argued above.

**VIII.  Conclusion**

The State of Louisiana filed suit to protect the integrity of the Road Home Program and the citizens of the State of Louisiana from what was a clear and unmistakable opportunity for the Insurance Industry to benefit and profit from the program. The Road Home Program was never intended to be a substitute for insurance coverage but circumstances demonstrate this intent was never realized.

The State suggests that its Amended Petition filed in the Civil District Court for the Parish of Orleans should be remanded for the reasons stated in the States Motion for Remand previously filed with this Court.  The State of Louisiana is entitled under the 11th

Amendment to a determination of the state law issues raised by the instant motion to be decided in the Civil District Court.

Alternatively, for the reasons argued above that the Motion to Dismiss be denied and dismissed.

Respectfully submitted,

**JAMES D. "BUDDY" CALDWELL
ATTORNEY GENERAL**

   s/Sallie J. Sanders
Sallie J. Sanders (Bar Roll # 11703)
James Trey Phillips (Bar Roll # 19978)
Stacie L. deBlieux (Bar Roll # 29142)
Assistant Attorney General
1885 North Third Street
Post Office Box 94005
Baton Rouge, Louisiana  70804-9005
Telephone: (225) 326-6400
Facsimile:  (225) 326-6499

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 12, 20089, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record in the captioned matter.

<u>___/s/ Sallie J. Sanders___</u>
Sallie J. Sanders