UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| In Re: § | |
| KATRINA CANAL BREACHES § | CIVIL ACTION NO. 05-4182 "K" (2) |
| CONSOLIDATED LITIGATION § | |
| § | JUDGE DUVAL |
| PERTAINS TO:  INSURANCE § | |
| § | MAGISTRATE WILKINSON |
| RYCK SOTO         NO.: 07-3079 § | |
| § | |
| VERSUS § | |
| § | |
| ALLSTATE INDEMNITY COMPANY § | |
| § | |

## MEMORANDUM IN SUPPORT OF MOTION TO ENFORCE SETTLEMENT AGREEMENT

Plaintiff knowingly and voluntarily entered into a written settlement of this case in full resolution of Plaintiff's claims against his insurer, Defendant Allstate Indemnity Company ("Allstate"). Plaintiff now refuses to comply with his obligations under that Settlement Agreement because he is experiencing "buyer's remorse" after learning that the State of Louisiana's Road Home Program seeks to be reimbursed a portion of the settlement funds. But both this Court and the Fifth Circuit Court of Appeals have rejected attempts to avoid settlement agreements due to such after-the-fact changes of heart. Accordingly, Allstate respectfully submits that this Court should enter an order enforcing the parties' Settlement Agreement, and requiring Plaintiff to sign a release of his claims against Allstate.

## BACKGROUND

**I.   Plaintiff's Claim.**

Plaintiff submitted a claim to Allstate for hurricane related damages to his property located at 865 Rosa Avenue, Metairie, Louisiana. Allstate issued homeowners insurance policy

1

number 910513343 to the Plaintiff for his property with Plaintiff's claim being assigned claim number 5113533978. Plaintiff filed suit against Allstate, on August 5, 2006, alleging additional coverage under the policy. Additionally, Plaintiff applied for a Road Home grant, which was awarded on August 31, 2007.

## II.     Settlement Discussions.

On July 31, 2008, the attorneys for each party participated in a face to face settlement conference at the Connick and Connick firm. At the conclusion of settlement negotiations, Brian Eiselen on behalf of Ryck Soto and undersigned counsel on behalf of Allstate agreed to compromise the claim for additional payments.

## III.    The Settlement Agreement.

On August 1, 2008, undersigned counsel e-mailed a letter agreement outlining the terms of the settlement agreement reached days before, and requested written confirmation of the settlement agreement. (Exhibit A.) On August 4, 2008, replying to the very same e-mail outlining the settlement terms, counsel for Soto confirmed in writing that the settlement terms were indeed agreed upon. (Exhibit B.) The Settlement Agreement provided, *inter alia*, that Plaintiff would seek and obtain approval from the Road Home program of the settlement; and execute a release before Allstate would tender the settlement checks. (*Id.*)

The settlement amount is $27,500 in total, comprised of $10,000 for structure coverage, $5,000 based upon mold coverage, and $12,500 for contents coverages. (*Id.*) Plaintiff's counsel confirmed Plaintiff's agreement to the settlement terms, stating: "[w]ith regard to our conversation today, my client accepts the settlement amount Allstate has offered outlined below." (*Id.*) Plaintiff's counsel also indicated that he could not represent whether any liens

existed, and requested Allstate to err towards including any possible lienholders as payees on the settlement check.  (*Id.*)

### IV.   The Parties Represent To This Court That The Case Is Settled, And This Court Enters A Ninety Day Dismissal Order In Reliance Upon That Joint Representation.

Subsequent to entering into the written settlement agreement, both parties orally represented to this Court that the case was settled and resolved in response to this Court's inquiry regarding a telephonic status report regarding all of the cases to which this Court had been assigned. (Exhibit C, Affidavit of Gregory Schwab).  At this Court's request, Allstate's counsel provided a follow-up written notice that the case had settled on September 30, 2008.  (Exhibit D.)  Following notice, this Court issued a dismissal order on October 2, 2008 which provided, *inter alia*:

> This Court having been advised by counsel for all the parties that all of the parties to this action have firmly agreed upon a compromise subject to Louisiana Recovery Authority/Road Home Program approval, It Is Ordered that this action be and it is hereby dismissed without costs and without prejudice to the right, upon good cause shown within 90 (ninety) days, to reopen the action or seek summary judgment enforcing the compromise if settlement is not consummated within a reasonable time.  The Court retains jurisdiction for all purposes, including enforcing the settlement agreement entered into by the parties.

(Oct. 2, 2008 Order, attached hereto as Exhibit E.)

### V.   In Compliance With The Settlement Agreement, Plaintiff Seeks Road Home Approval For The Settlement.

In compliance with the terms of the Settlement Agreement, on November 17, 2008, Plaintiff personally executed a written request to Road Home seeking approval of the specific settlement terms enumerated in the settlement agreement.  (Exhibit F.)  As part of Plaintiff's request for Road Home approval, Allstate was asked to submit the Road Home-required insurance carrier form.  (Exhibit F at 5.)

VI.  **Plaintiff Attempts To Renege On The Settlement Agreement After The Road Home Program Informs Him That It Will Seek Reimbursement.**

After Plaintiff submitted his request, the Road Home program informed Plaintiff that they would be seeking reimbursement of the settlement proceeds allocated to property damages, less attorneys' fees and costs. (Exhibit G, Dec. 30, 2008 email from Plaintiff's counsel.) On December 30, 2008, Plaintiff's counsel advised Allstate's counsel that Plaintiff had received the Road Home Program consent form. (*Id.* (describing why Plaintiff was changing his mind; Ex. C, Aff. of Gregory Schwab at 6.) Plaintiff's counsel further indicated that his client had decided to renege on the Settlement Agreement, and was refusing to execute the standard receipt and release signed by many other insureds represented by the same counsel. (*Id.*) Plaintiff's decision to attempt to avoid his obligations under the binding Settlement Agreement was based, according to his counsel, on the fact that the Road Home Program was seeking to be reimbursed funds from the settlement proceeds, and Plaintiff wanted to get more "in his pocket." (Exhibit G, December 30, 2008 e-mail.)

## ARGUMENT

I.  **The Parties Entered Into A Valid And Binding Settlement Agreement That Fully Complied With All Requirements Of Louisiana Law, And Is Enforceable.**

Plaintiff and Allstate have entered into a valid and enforceable written settlement agreement that fully complies with Louisiana law. Under Louisiana law, a binding written settlement agreement need only include mutual intent to put an end to the litigation, based upon reciprocal concessions of the parties in adjustment of their differences. *Rivett v. State Farm Fire & Cas. Co.*, 508 So. 2d 1356, 1359 (La. 1987). Specifically, Article 3071 states:

> A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.

> This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may otherwise be written in a more convenient form.

La. Civ. Code Art. 3071. Here, both these requirements are met.

### A. The Parties' Settlement Agreement Was Reduced To Writing.

The parties' settlement agreement was reduced to writing both in the parties' correspondence and in this Court's dismissal order. First, the terms of the Settlement Agreement were contained in, and agreed to, by all parties in emails dated August 1, 2008 and August 4, 2008. (Exhibits A and B.) The writing requirement of Article 3071 can be satisfied by multiple writings. *Felder v. Georgia Pacific Corp.*, 405 So. 2d 521, 523-24 (La. 1981) ("Where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by La.C.C. art. 3071, has been perfected") (citation omitted). The writing requirement can also be satisfied by this type of exchange of correspondence between counsel. *Rivett*, 508 So. 2d at 1359; *Sch. Bd. of St. Charles v. Roxco, Ltd.*, 2002 U.S. Dist. LEXIS 10098, at *5-6 (E.D. La. May 28, 2002) (granting motion to enforce settlement agreement, stating: "under Louisiana law, this exchange of correspondence [between counsel] is sufficient to evidence a valid and enforceable settlement agreement. It is the opinion of this Court that these two letters satisfy the writing requirement set forth by Louisiana law under Article 3071"); *Grace v. Zapata Off-Shore Co.*, 653 So. 2d 704, 704 (La. App. 4 Cir. 1995) (finding exchange of correspondence was a binding enforceable written settlement agreement under Louisiana law and Article 3071); *Michot v. Mose*, 649 So. 2d 441, 443 (La. App. 3 Cir. 1994) (same).

Additionally, this Court's October 2, 2009 Dismissal Order (Ex. E), which was entered based upon the representations of both parties' counsel, is a sufficient writing to satisfy this requirement of Louisiana law as the Fifth Circuit has previously held. *Mull v. Marathon Oil Co.*, 658 F.2d 386, 388 (5th Cir. 1981) (holding that a 60 day dismissal order satisfies the writing requirement).

### B. The Parties Manifested Their Intent To Put An End To This Litigation By Reciprocal Concessions.

The emails containing the parties' Settlement Agreement on its face satisfies this requirement because it shows that the parties manifested their intent to end this litigation by reciprocal concessions: Plaintiff was to seek and obtain Road Home Program approval (which he obtained) and sign a release (which he is now refusing to do), and in exchange Allstate agreed to pay Plaintiff $27,500 once Plaintiff signed the release. Plaintiff's counsel explicitly confirmed that Plaintiff accepted the terms of the Settlement Agreement, writing: "[w]ith regard to our conversation today, my client accepts the settlement amount Allstate has offered outlined below." (Ex. B.) Thus, the second element of Article 3071 is met based upon the face of the agreement.

Beyond the language of the Settlement Agreement itself, the litigation conduct of the parties clearly manifested their intent to put an end to this litigation. As discussed above, counsel for both parties represented to this Court that the case had settled, and sought the dismissal order, which satisfies this element. *See, e.g., Mull*, 658 F.2d at 388.

## II. This Court Should Enforce The Parties' Settlement Agreement.

This Court has the inherent power to recognize, encourage, and enforce the parties' settlement agreement. *Bell v. Schexnayder*, 36 F.3d 447, 449-50 (5th Cir. 1994). "Louisiana law favors compromises and courts must enforce them as written, unless clear and convincing

evidence shows that the compromise is invalid." *Morrison v. Allstate Ins. Co.*, Case No. 07-6644 at 4 (E.D. La. Jan. 12, 2009) (Feldman, J.) (granting motion to enforce settlement agreement) (citing *Jerome v. Duggan*, 609 So. 2d 1119, 1123 (La. App. 2d Cir. 1992)) (a copy of the *Morrison* order is attached hereto as Exhibit H.); *see also Noel v. Allstate Ins. Co.*, No. 08-1729 (E.D. La. Oct. 8, 2008) (granting motion to dismiss based upon accord and satisfaction and enforcing a Louisiana Hurricane Mediation Program settlement agreement); *Michel v. Allstate Ins. Co.*, No. 08-1312 (E.D. La. Nov. 4, 2008) (enforcing settlement agreement) (copies of the *Noel* and *Michel* orders are attached hereto as Exhibit I.)

Here, there is no dispute that the parties knowingly and voluntarily entered into the Settlement Agreement, the terms of which were clearly specified in counsels' August 1, 2008 and August 4, 2008 email. (Exs. A and B.) This included the fact that the settlement funds were to be allocated among various coverage types, and not exclusively to contents. In fact, Plaintiff's own signed and sworn consent form to the Road Home program sets forth that same allocation. (Ex. F at 5.) Plaintiff knew the allocations that were part of the agreement, and either knew, or should have known, that the Road Home Program was likely to seek reimbursement of the amounts allocated to property damage under the terms of the agreements between the Road Home Program and Plaintiff. Plaintiff's "buyer's remorse" after learning that the Road Home Program did indeed believe it was entitled to reimbursement is not a valid basis for avoiding the Settlement Agreement.

This case is strikingly similar to *Ruiz v. Allstate*, 2007 U.S. Dist. LEXIS 88371 (E.D. La. Apr. 5, 2007) *aff'd by* 2008 U.S. App. LEXIS 21228 (5th Cir. 2008).[1] In *Ruiz*, the parties

---

[1] The original order in *Ruiz* enforcing the parties' settlement agreement is not reported on any electronic database. A copy of that October 18, 2007 Order ("Order"), and the Fifth Circuit's unpublished per curium opinion affirming, are attached hereto as Exhibit J.

7

entered into a settlement agreement for a sum covering five properties.  (Ex. J, Order at 1-2.)  The *Ruiz* plaintiff objected to the allocation of settlement funds after the fact, presumably because he would have to reimburse more funds to the Road Home Program than he thought he would have to reimburse.  (Order at 3 n.3.)  The *Ruiz* court found that the parties had reached a binding settlement agreement despite the fact that the plaintiff disputed the allocation of payments and sought to have a different allocation to avoid his obligations to the Road Home Program.  (Order at 3-7.)

Importantly, in *Ruiz* both the trial court and Fifth Circuit enforced the settlement agreement under these facts, despite the fact that the specific allocation of funds was *not* included in the parties' agreement.  (Ex. J, Order at 1-2.)  Here, as discussed above, the allocation was explicitly included in the parties' Settlement Agreement (Exs. A and B), and was included by Plaintiff in his request for approval submitted to the Road Home Program (Ex. F).  Thus, there is an even stronger case for enforcing the Settlement Agreement here than in *Ruiz* because Plaintiff cannot argue that he was unaware of the allocation of the settlement proceeds like the plaintiff argued (unsuccessfully) in *Ruiz*.

Despite the above undisputed evidence that he intended to settle, Plaintiff apparently is now belatedly taking the position that the settlement was reached by his attorney without his authority.  But, as this Court has held, under Louisiana law "attorneys are presumed to have the authority to negotiate a settlement proposal for their clients," provided that "attorneys may not enter into a binding agreement without their client's clear and express consent."  *Melerine v. State Farm Ins. Co.*, 2008 U.S. Dist. LEXIS 12560 at *6-7 (E.D. La. Feb. 20, 2008) (Duval, J.) (quoting *Tran v. Allstate Ins. Co.*, 806 So.2d 103, 106 (La. Ct. App. 4th Cir. 2001)).  Here, the

evidence unequivocally demonstrates that Plaintiff's attorney had Plaintiff's consent to enter into the settlement.

Specifically, Plaintiff signed a "Request for Consent to Settle" form and submitted it to the Louisiana Road Home Program consistent with this Court's June 23, 2008 Case Management Order.  (*See* Exhibit F.)  This form included all the material terms of the parties' settlement. Plaintiff explicitly swore to and acknowledge that the contents of that Request for Consent Form would be used to determine whether he had to reimburse the Road Home Program.  (*Id.*)  This act further ratified the Settlement Agreement and demonstrates that Plaintiff knew full well the allocation of settlement proceeds, and intended to settle this case.  Put simply, the record is clear that Plaintiff consented to the settlement agreement, but then suffered "buyer's remorse" after learning that the Road Home Program wanted to be reimbursed for more funds than he thought he would have to give up when he consented to the settlement.  (*See* Exhibit G, Dec. 30, 2008 email from Plaintiff's attorney to Allstate's attorney).

In a nutshell, the above evidence demonstrates the parties' settlement in this case met all requirements of Louisiana law, and Plaintiff has not articulated any reason, much less a clear and convincing one, to preclude this Court from enforcing the parties' settlement agreement consistent with the strong public policy favoring settlement.  *Bass v. Phoenix Seadrill/78, Ltd.,* 749 F.2d 1154, 1164 (5th Cir. 1985) ("[P]ublic policy favors voluntary settlements which obviate the need for expensive and time-consuming litigation"); *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 428 (5th Cir. 1977) ("Settlement agreements are 'highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits'").

9

## CONCLUSION

The parties here entered into a written and binding Settlement Agreement that contained all the specific terms of that agreement, including the allocation. The written settlement agreement between the attorneys satisfies the elements of a contract of compromise, and the parties acted in conformity with the settlement terms. Allstate respectfully requests that this Court grant Allstate's motion to enforce the settlement agreement, require Plaintiff to comply with the agreement and render a judgment dismissing Plaintiff's claims with prejudice and at Plaintiff's costs.

Respectfully submitted,

*/s/   Gregory J. Schwab*
**GREGORY J. SCHWAB #21075**
100 Ramey Road, Suite B
Houma, Louisiana 70360
Telephone: (985) 223-4457
Facsimile:  (985) 851-5051
E-mail: gjschwab@exceedtech.net
Attorney for Allstate Indemnity Company

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January, 2009, a copy of the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system.

*/s/   Gregory J. Schwab*
**GREGORY J. SCHWAB**