IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**FILED**
October 8, 2008
Charles R. Fulbruge III
Clerk

No. 08-30026

JOHN RUIZ

               Plaintiff-Appellant

v.

ALLSTATE INSURANCE COMPANY; PAUL SCAFFIDI INSURANCE AGENCY, LLC

               Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CV-101

Before JOLLY, BARKSDALE, and HAYNES, Circuit Judges.

PER CURIAM:[*]

    John Ruiz appeals the district court's denial of his motion to remand after Defendant Allstate removed this case from the Civil District Court for the Parish of Orleans based on improper joinder. He also appeals the district court's subsequent order summarily enforcing the parties' purported settlement agreement. Finding no error, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

EXHIBIT J

No. 08-30026

## I. FACTS

Ruiz owns a residence and four rental properties located in New Orleans, Louisiana. After Hurricane Katrina destroyed the properties, Ruiz, an attorney licensed to practice in Louisiana, filed a pro se suit against his insurer, Allstate Insurance Company (Allstate), and his insurance agency, Paul Scaffidi Insurance Agency, LLC (Scaffidi Agency). Ruiz alleged that Allstate failed to fully compensate him under his homeowner's and landlord insurance policies, and that the Scaffidi Agency breached its fiduciary duty by failing to advise Ruiz of his potential need for flood insurance.

Allstate removed the case to the United States District Court for the Eastern District of Louisiana, invoking the court's original diversity jurisdiction. Ruiz filed a motion to remand, which Allstate opposed on the grounds that Ruiz improperly joined the non-diverse defendant, the Scaffidi Agency. Allstate asserted two bases for its improper joinder argument: (1) that Louisiana law perempted Ruiz's purported claims against the Scaffidi Agency and, alternatively, (2) that Ruiz failed to state any cognizable claims against the Scaffidi Agency.

Ruiz also submitted an affidavit alleging additional facts in support of his claims. He stated that in the summer of 2004, he became concerned about the sufficiency of coverage on his residence and rental properties. To allay these concerns, he contacted his insurance agent, Paul Scaffidi of the Paul Scaffidi Insurance Agency, and expressed his desire for "full and adequate coverage" on his properties. The two discussed various coverage options, and Scaffidi ultimately suggested that Ruiz purchase a new homeowner's policy with increased coverage limits. Ruiz did so. Still, Ruiz remained concerned about the sufficiency of his coverage and attempted to contact Scaffidi several times prior to Hurricane Katrina, to no avail. Although Ruiz also alleges that Scaffidi did not inform him that he lacked flood coverage, the only policy in the record

expressly excludes floods from the definition of covered losses. Additionally, the record contains five letters from the Scaffidi Agency, corresponding with Ruiz's five properties, dated August 26, 2004. Each of these letters informed Ruiz that his current policies lacked flood coverage and that the Scaffidi Agency could assist in securing this coverage. Although Ruiz suggested to the district court that he did not remember receiving these letters, he relies on them extensively in his appellate brief.[1] Finally, while Ruiz's affidavit only mentions that he purchased new homeowner's insurance after speaking with Scaffidi, Ruiz's appellate brief and Scaffidi's affidavit indicate that Ruiz also purchased new landlord policies.

The district court denied Ruiz's motion to remand, finding that Ruiz improperly joined the Scaffidi Agency in an effort to defeat diversity among the parties. The court concluded that Louisiana law imposes no duty on insurance agents to identify spontaneously a client's needs and advise him as to whether he is underinsured or carries the right type of coverage. The court did not reach Allstate's alternative argument that Louisiana law perempted any claims against the Scaffidi Agency.

Subsequent to the district court's denial of Ruiz's motion to remand, the parties negotiated a settlement of Ruiz's claims against Allstate. Allstate's counsel memorialized the terms of the parties' settlement agreement in a letter sent to Ruiz. According to the letter, Allstate agreed to settle Ruiz's claims for $202,700 and to pay Ruiz his reasonable court costs. The letter informed Ruiz that Allstate planned to send him a second letter indicating how Allstate would allocate the settlement funds amongst Ruiz's properties "per our discussion."

---

[1] Indeed, these letters form the basis for Ruiz's claim that the Scaffidi Agency agreed to an "undertaking" to procure insurance on which Ruiz relied. This claim would be nonsensical if Ruiz never got the letters.

3

The letter concluded by informing Ruiz that he would need to fax a two-line letter to the court confirming the parties' settlement. Ruiz did so the same day.

Although Allstate never sent Ruiz the promised letter indicating the allocation of funds amongst his properties, it delivered to Ruiz five release forms, one for each of the five insured properties, and four corresponding checks, which Ruiz cashed.[2] Despite having cashed these checks, Ruiz refused to execute the releases because he disagreed with their terms. Specifically, Ruiz alleged that Allstate had orally agreed to grant Ruiz discretion to allocate the settlement payment amongst his properties in a manner of his choosing, provided that the total payment did not exceed $202,700. Ruiz also alleged that he lacked the capacity to settle his claims because of injuries he suffered in a recent car accident. However, he provided no support for any implication that his capacity to consent was impaired. Because Ruiz refused to execute the releases, Allstate filed a motion to enforce the settlement agreement. The motion to enforce was originally set for a hearing, but, in its second continuance order following Ruiz's request for a continuance, the district court set the matter for consideration "on the papers." Ruiz did not object to the resetting "on the papers," nor did he request a hearing in his response to Allstate's motion to enforce.

The district court summarily enforced the parties' settlement agreement, finding that Ruiz's actions demonstrated that he assented to Allstate's method of allocating the settlement funds. Ruiz filed a motion for reconsideration or new trial in which he requested, for the first time, an evidentiary hearing to resolve his challenges to the validity of the settlement agreement. He suggested that the evidentiary hearing was necessary to consider "how badly Allstate is shortchanging plaintiff." The district court denied Ruiz's motion, noting that it

---

[2] As part of the settlement agreement, the parties agreed that Allstate would pay no funds for the damage to Ruiz's residence.

4

had fully considered his arguments and found them to lack merit. This appeal followed.

## II. DISCUSSION

Ruiz challenges both the district court's order denying his motion to remand and its order summarily enforcing the parties' settlement agreement. Regarding the failure to remand, Ruiz contends that the district court erred in finding that he improperly joined the non-diverse defendant, the Scaffidi Agency. Ruiz argues that his petition and subsequent affidavit state viable claims against the Scaffidi Agency under Louisiana law, namely that the Scaffidi Agency failed to procure flood insurance for Ruiz after agreeing to do so, or that the Scaffidi Agency failed to advise Ruiz that he needed flood insurance. Although Allstate disagrees that Ruiz can state viable claims against the Scaffidi Agency, it argues that this Court can affirm the district court's improper joinder ruling on the alternative grounds that Louisiana law perempted Ruiz's claims. Finally, Ruiz argues that the district court erred in denying his challenges to the validity of the parties' purported settlement agreement without holding an evidentiary hearing. We address Ruiz's arguments in turn.

A. Improper Joinder

This Court reviews de novo the denial of a motion to remand to state court. Campbell v. Stone Ins. Inc., 509 F.3d 665, 669 (5th Cir. 2007). Where the district court bases its denial of a motion to remand on the plaintiff's improper joinder of a non-diverse defendant, we must analyze whether (1) actual fraud exists in the pleading of jurisdictional facts or (2) the plaintiff is unable to state a viable claim against the non-diverse defendant. Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Under the second prong – the only prong relevant here – this Court must determine "whether the defendant has demonstrated that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Id. In

conducting this inquiry, we must resolve all contested facts and ambiguities in controlling state law in the plaintiff's favor. Guillory v. PPG Indus., Inc., 434 F.3d 303, 308 (5th Cir. 2005).

Allstate argues in this appeal, as it did below, that LA. REV. STAT. ANN. § 9:5606(A) (1999) perempts any viable claims that Ruiz might have brought against the Scaffidi Agency. Although the district court did not reach this issue, we can affirm the district court's improper joinder ruling on any grounds supported by the record. See, e.g., Sojourner T v. Edwards, 974 F.2d 27, 30 (5th Cir. 1992).

In relevant part, § 9:5606(A) states:

> No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered.

Ruiz filed his petition in Louisiana state court on August 29, 2006. Thus, § 9:5606(A) perempts any claims against the Scaffidi Agency that Ruiz discovered or should have discovered before August 29, 2005, the day Hurricane Katrina hit.

The peremptive period of § 9:5606(A) began to run on Ruiz's purported claim for failure to procure flood insurance when Ruiz discovered or should have discovered that any new policy procured by the Scaffidi Agency lacked flood coverage. The Scaffidi Agency procured a new homeowner's policy for Ruiz with coverage commencing on September 19, 2004. The exclusions section of the policy unambiguously states, "[w]e do not cover loss to property . . . consisting of or caused by . . . [f]lood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether

6

or not driven by wind." The policy also contains an advertisement for flood insurance, which informed Ruiz about the advantages of flood insurance and explained how he could purchase this additional coverage.

Although Ruiz contends that he assumed that this new policy covered flood damage, Louisiana law required Ruiz to read the clear provisions of his policy to the contrary. Motors Ins. Co. v. Bud's Boat Rental, Inc., 917 F.2d 199, 205 (5th Cir. 1990); Matthews v. Bus. Men's Assurance Co. of Am., 478 So. 2d 634, 637 (La. Ct. App. 1985). The copy of the homeowner's policy in the record is addressed to Ruiz at his residence in New Orleans. While the record does not contain a mailing receipt, Ruiz admits in his appellate brief that he received a copy of the policy sometime before Hurricane Katrina struck. This Court has the discretion to treat such statements made in appellate briefs as binding judicial admissions of fact. City Nat'l Bank & Tex. Bank v. United States, 907 F.2d 536, 544 (5th Cir. 1990). Accordingly, the record conclusively establishes that Ruiz either knew or should have known that the Scaffidi Agency had failed to procure flood insurance on his residence when Ruiz received a copy of his new homeowner's policy sometime before Hurricane Katrina. Thus, § 9:5606(A) perempts any claim that the Scaffidi Agency failed to procure flood insurance for Ruiz's residence.

The same basic analysis applies to Ruiz's claim that the Scaffidi Agency failed to procure flood insurance for Ruiz's rental properties. According to Scaffidi's affidavit, he procured new insurance policies for Ruiz's four rental properties in June or July of 2004. Scaffidi states that he mailed copies of those policies to Ruiz, and Ruiz admits in his appellate brief that he received those copies. Although the landlord policies are not contained in the record, both parties agree that the policies did not cover flood damage. As mentioned, Louisiana law charges Ruiz with knowledge of his insurance policies. Matthews, 478 So. 2d at 637. In addition, the Scaffidi Agency sent Ruiz correspondence

7

dated August 26, 2004 that informed Ruiz that none of his insurance policies covered flood damage. In his appellate brief, Ruiz relies upon these letters to support his claim; he should not, then, be permitted to deny their existence. It is clear that Ruiz knew or should have known some time prior to Hurricane Katrina that his new landlord policies did not cover flood damage. Accordingly, § 9:5606(A) perempts this claim as well.

Alternatively, Ruiz argues that the Scaffidi Agency's August 2004 letters somehow constituted a separate undertaking to procure flood insurance. The face of the letters belies this argument. The letters simply informed Ruiz that each of his properties lacked flood coverage and that the Scaffidi Agency could assist in securing this coverage. No reasonable jury could conclude that these letters are anything other than advertisements for flood insurance. But even if these letters constituted an August 2004 undertaking to procure flood insurance for Ruiz's rental properties, § 9:5606(A) would perempt any claim based on the letters. Ruiz alleges that, prior to Hurricane Katrina (i.e., more than one year before he filed suit), he attempted, on multiple occasions, to call the Scaffidi Agency about his coverage, to no avail. He does not contend that he received a policy purporting to cover flood loss or any other indication that the Scaffidi Agency complied with his purported "undertaking." While the exact date on which Ruiz knew or should have known that the Scaffidi Agency had failed to procure post-August 2004 flood insurance for Ruiz's rental properties is unclear, it is certainly within one year of the letters and certainly before he made the many phone calls he alleges, all of which occurred more than one year before suit. For these same reasons, § 9:5606(A) also perempts any claim based on the Scaffidi Agency's alleged failure to inform Ruiz of the need for flood coverage.

In sum, § 9:5606(A) perempts any claim that Ruiz could bring based on the Scaffidi Agency's purported failure to procure or advise of the need for flood insurance prior to August 29, 2005, the last relevant date for our purposes.

B. Enforcement of Settlement Agreement

Ruiz also contends that the district court abused its discretion by failing to afford an evidentiary hearing on his challenges to the validity of the parties' purported settlement agreement.[3] Despite notice that the court would not hold a hearing, Ruiz did not object to the district court's setting of Allstate's motion to enforce "on the papers," nor did he request an evidentiary hearing in his response to that motion. Rather, Ruiz raised the issue of an evidentiary hearing for the first time in his motion for reconsideration of the district court's enforcement order. Because Ruiz filed that motion within ten days of the order, the district court properly treated it as a motion to amend or alter its judgment under FED. R. CIV. P. 59(e). See United States v. One 1988 Dodge Pickup, 959 F.2d 37, 40 (5th Cir. 1992) (motion that calls into question the correctness of the court's ruling is treated as a motion under Rule 59(e)). We have held that Rule 59 motions "cannot be used to raise arguments which could, and should, have been made before the judgment issued." Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990) (citation omitted). Accordingly, Ruiz waived any right to an evidentiary hearing, and the district court did not err in denying his post-judgment request.[4] Id. In any event, the evidence supports the district court's enforcement of the settlement.

AFFIRMED.

---

[3] Ruiz also challenges the district court's jurisdiction to enforce the settlement agreement. Having found jurisdiction, this challenge is unavailing.

[4] Ruiz also contends, for the first time in his reply brief, that there is insufficient evidence of a settlement agreement under Louisiana law. Ruiz waived this argument by failing to raise it in his original brief. United States v. Jackson, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief . . . are waived."). Regardless, the argument is devoid of merit.

**From:** Eliseuson, Anthony T. [mailto:aeliseuson@sonnenschein.com]
**Sent:** Wednesday, January 14, 2009 5:06 PM
**To:** Levy, Steven M.; Lihosit, Steven (Law); Greg Schwab
**Subject:** RE: Motion to Enforce Soto Settlement Agreement

Here is a revised version that includes cites to all three of those cases. I also took out reference to Plaintiff's Road Home original application, which we do not have a copy of, and updated the exhibit lettering accordingly. (We do have Plaintiff's request for consent to the Road Home Program, which is cited as one of the key exhibits to the motion, and will be attached to our motion).

Unless anyone has any further changes, this should be good to file. Greg, there are some cites to you affidavit that will have to be updated to reference specific paragraphs.

Thank you,

Tony