UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: KATRINA CANAL BREACHES | * | CIVIL ACTION |
| CONSOLIDATED LITIGATION | * | NO. 05-4182 "K" (2) |
| | * | JUDGE DUVAL |
| | * | MAG. WILKINSON |
| | * | |
| | * | |
| PERTAINS TO: | * | |
| ALL LEVEE | * | |
| | * | |

### MEMORANDUM IN SUPPORT OF NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT

National Union Fire Insurance Company of Pittsburgh, Pa., ("National Union"), defendant, through undersigned counsel, in support of its motion for summary judgment that there is no National Union insurance policy that responds or is relevant to the plaintiffs' Katrina canal breaches claims states the following:

### Relevant Background

**1.     The Lawsuit**

On August 10, 2007, the plaintiffs filed the First Supplemental and Amending Levee Master Consolidated Class Action Complaint ("Master Complaint"), in which the plaintiffs added as a defendant, *inter alia*, National Union as the insurer of the Board of Commissioners of

1

East Jefferson Levee District ("EJLD"). The plaintiffs alleged that National Union "had in full force and effect a policy or policies of liability insurance, under the terms, provisions, and conditions of which it assumed the liability for the acts and/or negligence of its insured, EJLD, and against whom the Class Representatives assert their claim under the Louisiana Direct Action Statute, La.R.S. 22:655." (Appendix, p.0010, Master Complaint, Document No. 6194, ¶16(j)).[1] The plaintiffs also allege that EJLD had the legal responsibility and duty to conduct the dredging activity of the 17th Street Canal "in a manner that would not compromise the safety of the canal's levee/flood wall system." (Id., p.0037, ¶85). They further allege that "National Union is directly liable to these Plaintiffs as the liability insurer of Defendant EJLD." (Id.).

In the Master Complaint, the plaintiffs state that they are composed of five subclasses of individuals within specified geographic areas of the City of New Orleans, all of whom "sustained damages as a result of the inundation/flooding in this area which occurred during and immediately following the landfall of Hurricane Katrina on or about August 29, 2005, and who/which, as to the defendant Corps only, have, or by a date to be determined by the Court, will have fulfilled whatever administrative claim filing requirements this Court deems applicable in this matter." (Id., pp.0010, 0013, 0015, 0017, 0019, 0021, ¶¶17 & 18(a) – (e)). The plaintiffs seek to recover damages for property damage, personal injury, and societal harm. (Id., p.0063-0064, ¶191).

EJLD was first named as a defendant in *Gayle T. Bennett, et al. v. Board of Commissioners for the East Jefferson Levee District, et al.*, Docket No. 07-3130 ("Bennett") (Appendix, pp.0067-0081) filed August 28, 2006 and served on EJLD on September 12, 2006, and in *Leslie Sims, Jr., et al. v. The Board of Commissioners of the Orleans Levee District, et al.*,

---

[1]  For ease of reference and clarity, National Union has sequentially numbered all exhibits and attachments and provided them in an Appendix. Citation is made to the page number of the index rather than the specific document attached.

Docket No. 06-5116 ("Sims")(Appendix, pp.0082-0107) and *Elizabeth H. and William Keith DePass, et al. v. The Board of Commissioners of the Orleans Levee District, et al.*, Docket No. 06-5127 ("DePass")(Appendix, pp.0108-0133) both filed on August 28, 2006 and served on EJLD on October 16, 2006.[2] The plaintiffs in *Bennett* allege in the first paragraph that they are residents, property owners and businesses in Jefferson Parish who "suffered catastrophic flood-related damages during and after Hurricane Katrina." (App. p.0067, *Bennett* Petition, ¶1). They seek to represent a class consisting of certain Jefferson Parish residents, property owners and business entities, "who or which suffered damages as a result of Hurricane Katrina-related flooding on and after August 29, 2005, and thereafter suffered additional damages including but not limited to wrongful death, personal injury, loss of income and other non-economic losses, mental anguish, long term health risks associated with exposure to polluted flood waters, relocation expenses, damage to real property, and damage to personal property." (App. p.0072, *Bennett* Petition, ¶15). They allege that their homes "were flooded with a combination of water from the 17th Street Canal and water that came from other areas and was mixed with the 17th Street Canal." (App. p.0073, ¶29).

Similarly, the *Sims* and *DePass* plaintiffs allege they "suffered damages due to the failure of the flood protection and drainage system for the New Orleans East Bank". (App. pp.0082-0083 & 0108-0109, *Sims* and *DePass* Complaints, Opening Paragraph). The only significant substantive difference between the two complaints is the geographic location of the plaintiffs' residences. In paragraph 8 of each petition, the plaintiffs allege that they owned property that was "damaged and destroyed by flood and rain waters associated with Hurricane Katrina." (Id., pp.0086 & 0110, ¶8,). The *DePass* plaintiffs allege that EJLD failed to close drainage lines and

---

[2] The *Sims* and *DePass* cases were originally filed in federal court, while the *Bennett* case was filed in state court and removed to federal court on June 5, 2007. The Court remanded *Bennett* on August 31, 2007, which the Fifth Circuit affirmed. The *Sims* and *DePass* lawsuits are part of the Levee cases consolidated in this Section.

3

the Hoey Canal in order to prevent the flow of water "from the 17th Street Canal into Metairie, which flooded Plaintiffs (sic) properties". (App. p.0124, *DePass* Complaint, ¶¶76 & 77).  All of the Plaintiffs' claims arise out of the same facts and originate from the damage to their property and personal injuries from the canal breaches during and following Hurricane Katrina.

On August 26, 2008, this Court granted National Union's motion to dismiss all claims against National Union Policy No. 625-29-23 that was issued to EJLD with a policy period from January 1, 2006 through January 1, 2007. (Doc. 14631, Order & Reasons).  This "claims-made-and-reported" policy was the National Union policy in effect when the Plaintiffs' claim was first made against EJLD.  However, Plaintiffs speculated that there might be other National Union policies that might be applicable.  Therefore, the Court indicated that it would consider a wholesale dismissal of National Union if it could be represented to the Court that there are no other relevant policies.  (Id.).  Accordingly, National Union now files this motion, because there are no other relevant National Union policies.

    **2.**    **The National Union Policies**

According to its available records, National Union issued the following a claims-made-and-reported policies in which the named insured was East Jefferson Levee District:

(1)    Policy No. 435-45-04, effective 1/9/90 to 1/1/91 ("the 1990 Policy")(App. pp.0134-0151);[3]

(2)    Policy No. 436-82-32, effective 1/9/91 to 1/9/92 ("the 1991 Policy")(App. pp.0152-0176);

(3)    Policy No. 874-97-47, effective 1/1/02 to 1/1/03 ("the 2002 Policy")(App. pp.0177-0206);

(4)    Policy No. 985-89-92, effective 1/1/03 to 1/1/04 ("the 2003 Policy")(App. pp.0207-0238);

---

[3] It appears that the 1990 Policy was a renewal of another claims-made-and-reported Policy in 1989. National Union has been unable to locate a copy of this 1989 policy that ended more than 19 years ago. (App. pp.0341-0343, Affidavit).

4

(5) Policy No. 661-53-60, effective 1/1/04 to 1/1/05 ("the 2004 Policy")(App. pp.0239-0274);

(6) Policy No. 978-27-27, effective 1/1/05 to 1/1/06 ("the 2005 Policy")(App. pp.0275-0309);

(7) Policy No. 625-49-23, effective 1/1/06 to 1/1/07 ("the 2006 Policy");[4] and

(8) Policy No. 966-04-68, effective 1/1/07 to 1/1/08 ("the 2007 Policy")(App. pp.310-340).

The policies identified above, except the 2006 Policy, are attached herein as exhibits in the Appendix.[5]

As can be seen from there own terms and conditions, all of these policies are "claims-made-and-reported" policies. Claims made policies insure a different peril than "occurrence" policies. For these National Union policies, it is the making of a "claim" that is the peril insured and thus it is the making of a claim that triggers a "claims made" policy, *regardless* of when the occurrence took place. Robicheaux v. Adly, 779 So.2d 1048, 1052 (La. App. 3 Cir. 2001); see also, Sol Kroll, The Professional Liability Policy "Claim Made," 13 Forum 842, 843 (1978). Further, the "notice requirements in claims made policies allow the insurer to 'close its books' on a policy at its expiration and thus to attain a level of predictability unattainable under standard occurrence policies." Newpark Res., Inc. v. Marsh McLennan of La., Inc., 691 So.2d 208, 213 (La.App. 1 Cir. 1997), writs denied, 692 So.2d 1094 (La. 1997). Thus, the injured party has the burden of proving that a claim was first made and reported during the policy period as required by the terms of the "claims made" policy. See Anderson v. Ichinose, 760 So.2d 302, 306 (La. 1999); Sanches v. Morris, 802 So.2d 755, 764 (La.App. 5 Cir. 2001). Such policies are

---

[4] All claims against the 2006 Policy were dismissed by the Court on August 26, 2008, and therefore it is no longer at issue in this case. (Doc. 14631, Order & Reasons).

[5] Policy 884-78-97 which inadvertently was mentioned in National Union's prior motion to dismiss was not issued to East Jefferson. (App. pp.0341-0343, Affidavit).

undeniably valid and enforceable in Louisiana. Ichinose, 760 So.2d at 305-306; Livingston Parish Sch. Bd. v. Fireman's Fund Am. Ins. Co., 282 So.2d 478, 481 (La. 1973).  Under such policies, coverage is triggered *only if* a claim is made during the policy period. Ichinose, 760 So.2d at 307.

National Union now files this motion for summary judgment because the Plaintiffs' claims were not first made or reported during the Policy Period of any of these Policies.

### NATIONAL UNION MUST BE DISMISSED BECAUSE THERE IS NO COVERAGE

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact  and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one whose resolution in favor of one party might affect the outcome of the action under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).  A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  If the moving party shows the absence of any disputed material facts, the non-moving party must submit specific facts and cannot rely on conclusory rebuttals. Celotex Corp. v. Catrett, 477 U.S. 317, 324-325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  Summary judgment is appropriate when the moving party shows a lack of evidentiary support for an essential element of a claim of the non-moving party. Id. at 322-323.

In this case, the Plaintiffs have the burden of proof – they must prove the existence of the policy of insurance *and* that their claims are within the policy coverage. Norton v. Lewis, 623 So.2d 874, 876 (La. 1993)(citing Francois v. Ybarzabel, 483 So.2d 602, 605 (La. 1986)); Valdetero v. Commercial Union Ins. Co., 782 So.2d So.2d 1210, 1213 (La.App. 3 Cir. 2001);

Buffinet v. Plaquemines Parish Comm'n Council, 645 So.2d 631, 645-646 (La. App. 4 Cir. 1994); Hae Woo Youn v. Maritime Overseas Corp., 605 So.2d 187, 210 (La.App. 5 Cir. 1992)(citing Barber v. Best, 394 So.2d 779 (La. App. 4 Cir. 1981)).  Thus, National Union need only show the lack of evidentiary support for an essential element.  Here, Plaintiffs must prove all of the facts necessary to trigger coverage under any of the National Union policies.  They cannot do so, because no demand, lawsuit or administrative proceeding was made against any insured nor reported to National Union during the Policy Period of any of these additional Policies.  Therefore, National Union and all the claims against it should be DISMISSED WITH PREJUDICE.

**1.      No "Claim" was first made nor reported during the policy period of these National Union Policies.**

In Louisiana, an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La. 1994); see also Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003).  Thus, the Court's role is to determine the common intent of the parties as reflected by the words in the policy. Id.  An insurance contract thus forms the law between the parties and the obligations set forth therein are enforceable. Id.  "Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." Id. (citing Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190, 192 (La. 1974)).  Consequently, insurers are allowed to limit coverage to claims made during the policy period. Ichinose, 760 So.2d at 305-306.

All of the policies from 2002 to 2005 and 2007 include substantially the same insuring agreement.  They state:

7

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any **Claim first made against the Insured during the Policy Period** or the Discovery Period (if applicable) and reported to the Company pursuant to the terms of this policy for any Wrongful Act of the Insured in the performance of duties for the Public Entity.

(App. pp.0196, 0227, 0260, 0289, 0323, Policies for 2002 to 2005 & 2007)(emphasis supplied). These Policies clearly and unambiguously limit coverage to claims made during the policy period. Ichinose, 760 So.2d at 305-306.

The 1990 and 1991 National Union Policies state:

> A. The Company will pay on behalf of the Insureds all Loss which the Insureds shall be legally obligated to pay for any civil claim or claims **first made** against them because of a Wrongful Act, **provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period.**
>
> B. The Company will reimburse the Public Entity for all Loss which the Public Entity shall be required by law to indemnify the Insureds for any civil claim or claims **first made** against them because of a Wrongful Act, **provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period.**
>
> C. The Company will pay on behalf of the Public Entity all Loss which the Public Entity shall be legally obligated to pay for any civil claim or claims **first made** against it because of a Wrongful Act, **provided that the claim is first made during the policy period and written notice of said claim is received by the Company during the policy period.**

(App. pp.0136 & 0155, 1990 and 1991 Policies)(emphasis supplied). These Policies also clearly and unambiguously limit coverage to claims made during the policy period. Ichinose, 760 So.2d at 305-306.

EJLD was served with the first lawsuit of this litigation on or about September 12, 2006. The claim was therefore first made when the 2006 Policy was in effect. As such, there was no claim first made when the 1990 Policy, 1991 Policy, 2002 Policy, 2003 Policy, 2004 Policy, 2005 Policy and 2007 Policy were in effect. Accordingly, these policies do not provide coverage. Id.; see also Newpark Resources v. Marsh & McLennan, 691 So.2d 208, 213 (La. App.1st Cir. 1997), writs denied, 692 So.2d 1094 (La. 1997) (holding a claim can only be "first

made" once thereby triggering only one claims made policy).  As such, there are no relevant National Union policies other than the 2006 Policy, which has been addressed previously by this Court.  Therefore, National Union's motion for summary judgment should be GRANTED and all of the claims and complaints against National Union DISMISSED WITH PREJUDICE.

## CONCLUSION

All of the policies National Union issued in which EJLD was the named insured are "claims-made-and-reported" policies, which are triggered only by the making of a claim. The plaintiffs instituted their lawsuit against EJLD in August 2006 and served in September 2006, which is when the claim was first made against EJLD.  Consequently, the claim was first made during the 2006 Policy, and therefore none of the other National Union policies provides coverage.  National Union's motion for summary judgment should be GRANTED and all claims and complaints against National Union should be DISMISSED WITH PREJUDICE.

**WHEREFORE** Defendant National Union Fire Insurance Company of Pittsburgh, Pa. respectfully prays that its motion for summary judgment be GRANTED, the claims and complaints against it in all of the matters designated as "Levee" be DISMISSED WITH PREJUDICE at plaintiffs' cost, and for all other relief deemed just and proper.

Respectfully submitted,

/s/  Karen M. Dicke_____
**KAREN M. DICKE (#24781)**
**GEORGE D. FAGAN (#14260)**
Leake & Andersson, LLP
1100 Poydras Street, Suite 1700
New Orleans, Louisiana 70163-1701
Telephone:  (504) 585-7500
Facsimile:  (504) 585-7775
Email: kdicke@leakeandersson.com
            gfagan@leakeandersson.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing pleading has been delivered to all counsel of record on January 23, 2009, by ECF filing, and to the court-appointed liaison counsel by ECF filing, by hand delivery, by telephonic facsimile transmission, or by depositing a copy of same in the United States Mail, first class postage prepaid, at their last known addresses of record.

                                            /s/ Karen M. Dicke

F:\38803\2-Pleadings\National Union\word versions\MSJ\Final\MSJ - memo - final v. 2.doc