# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| In Re:  KATRINA CANAL BREACHES | § | CIVIL ACTION NO.  05-4182 "K"(2) |
| CONSOLIDATED LITIGATION | § | |
| | § | JUDGE DUVAL |
| | § | |
| | § | MAGISTRATE WILKINSON |
| | § | |
| PERTAINS TO:  ROAD HOME | § | |
| *Louisiana State* C.A. No. 07-5528 | § | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.    The State Lacks Standing To Sue As A Purported Assignee or Subrogee. ........................2

    A.    The Anti-Assignment Clauses Are Applicable And Enforceable ...........................2

    B.    Partial Assignments Without Consent Of The Assignee Are Unenforceable
          As A Matter Of Law. .............................................................................................5

    C.    The State Has No "Subrogation" Rights. ...............................................................6

    D.    The State Has No Standing To Sue Where Insureds Have Not Abandoned
          Their Claims. .........................................................................................................7

    E.    The State's Opposition Further Demonstrates Why It Lacks The Right To
          Assert Claims For Extra-Contractual Damages. ....................................................8

II.   The Complete Lack Of Factual Support For The State's Claims Demonstrates A
    Lack Of Injury, Which Requires Dismissal For Failure To Plead A Case Or
    Controversy. .......................................................................................................................9

III.  The State's Opposition Admits There Are Defects With Its Pleading, And Fails
    To Explain How Those Defects Can Be Corrected, Which Requires Dismissal
    With Prejudice. ................................................................................................................10

IV.   The VPL Claim Fails As A Matter Of Law. .....................................................................12

V.    Claims Which Had Not Been Assigned Prior to the Applicable Deadlines for
    Filing Suit Are Barred by the Express Terms of the Contract. .........................................15

    A.    Under Louisiana Law, Class Action Tolling Does Not Apply To
          Contractual Periods for Filing Suit. .....................................................................15

    B.    *American Pipe* Tolling Does Not Save the State's Stale Claims. ..........................18

CONCLUSION .....................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Al Copeland Enters. Inc. v. Slidell Mem'l Hosp.*,
 657 So. 2d 1292 (La. 1995) ............................................................ 6

*Alexander v. Fulco*,
 895 So. 2d 668 (La. App. 2d Cir. 2005) ......................................... 18

*Backhus v. Transit Cas. Co.*,
 549 So. 2d 283 (La. 1989) ............................................................. 6

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................ 10, 13

*Bilbe v. Belsom*,
 530 F.3d 314 (5th Cir. 2008) ....................................................... 13

*Bond County Cmty. Sch. Dist. No. 2 v. Ind. Ins. Co.*,
 647 N.E.2d 293 (Ill. App. 1995) .................................................. 16

*Boutte v. Dep't of Police*,
 950 So. 2d 861 (La. App. 4th Cir. 2007) ........................................ 5

*Cacamo v. Liberty Mut. Fire Ins. Co.*,
 764 So. 2d 41 (La. 2000) ............................................................... 6

*Cameron Parish Sch. Bd. v. RSUI Indem. Co.*,
 No. 06-1970, 2008 WL 4191270 (W.D. La. Sep. 5, 2008)............... 13

*Cassey v. Stewart*,
 727 So. 2d 655 (La. App. 2d Cir. 1999) ......................................... 4

*Chardon v. Fumero Soto*,
 462 U.S. 650 (1983)..................................................................... 18

*Chauvin v. State Farm Fire & Cas. Co.*,
 495 F.3d 232 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1075 (2008).......................... 12, 13

*Citizens Tri-County Bank v. Georgia Mut. Ins. Co.*,
 11 S.W.3d 120 (Tenn. Ct. App. 1999)............................................ 3

*City of New Orleans v. Mun. Admin. Servs.*,
 376 F.3d 501 (5th Cir. 2004) ......................................................... 8

*Cox v. Heroman & Co.*,
 298 So. 2d 848 (La. 1974) ......................................................... 5, 6

*Druker v. Fortis Health*,
 2007 U.S. Dist. LEXIS 402 (S.D. Tex. Jan. 4, 2007) ...................... 11

*Edwards v. Concord Dev. Corp., Inc.*,
    No. 174487, 1996 Mich. App. LEXIS 1807 (Mich. Ct. App. Sep. 17, 1996) ................... 3

*Eicher v. La. State Police*,
    710 So. 2d 799 (La. App. 1st Cir. 1998)........................................................................... 7

*Filson v. Windsor Court Hotel*,
    907 So. 2d 723 (La. 2005) ............................................................................................... 17

*Foman v. Davis*,
    371 U.S. 178 (1962)......................................................................................................... 10

*Fontenot v. Reddell Vidrine Water Dist.*,
    836 So. 2d 14 (La. 2003) ................................................................................................. 17

*FW/PBS, Inc. v. Dallas*,
    493 U.S. 215 (1990)........................................................................................................... 9

*Ga. Mut. Ins. Co. v. Glennville Bank & Trust Co.*,
    494 S.E.2d 103 (Ga. App. 1997)...................................................................................... 16

*Geo. H. Jett Drilling Co. v. Tibbits*,
    230 F. Supp. 58 (W.D. La. 1964)....................................................................................... 5

*Hernandez v. Garrison*,
    916 F.2d 291 (5th Cir. 1990) ........................................................................................... 11

*Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.*,
    943 So. 2d 1037 (La. 2006) ............................................................................................... 7

*In re Consol. Cos.*,
    106 F.3d 396, 1996 WL 773044 (5th Cir. Oct. 11, 1996) ............................................... 14

*In re Katrina Canal Breaches Consol. Litig.*,
    2007 WL 4293636 (E.D. La. Dec. 6, 2007)..................................................................... 13

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ................................................................................. 2, 13, 18

*In re Vioxx Prods. Liab. Litig.*,
    478 F. Supp. 2d 897 (E.D. La. 2007) ............................................................................... 15

*Jones v. UNUM Life Ins. Co.*,
    2006 U.S. Dist. LEXIS 87384 (E.D. Ark. Nov. 29, 2006) .............................................. 16

*Katz v. Allstate Ins. Co.*,
    917 So. 2d 443 (La. App. 4th Cir.), *writ denied*, 901 So. 2d 1069 (2005) ...................... 15

*Landry v. La. Citizens Prop. Ins. Co.*,
    983 So. 2d 66 (La. 2008) ............................................................................................ 13, 14

*Lee v. United Fire & Cas. Co.*,
    607 So. 2d 685 (La. App. 4th Cir. 1992) ......................................................................... 12

*Leonard v. Nationwide Mut. Ins. Co.*,
    499 F.3d 419 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1873 (2008)................................ 13

*Lila, Inc. v. Underwriters at Lloyd's, London*,
   994 So. 2d 139 (La. App. 4th Cir. 2008) ........................................................... 15, 16, 17

*Limestone Dev. Corp. v. Vill. of Lemont*,
   520 F.3d 797 (7th Cir. 2008) ....................................................................... 10

*Louque v. Allstate Ins. Co.*,
   314 F.3d 776 (5th Cir. 2002) ....................................................................... 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................... 9

*Malbco Holdings, LLC v. AMCO Ins. Co.*,
   No. 08-585, 2008 WL 5205202 (D. Or. Dec. 11, 2008) ..................................... 3

*Miss. State Democratic Party v. Barbour*,
   529 F.3d 538 (5th Cir. 2008) ........................................................................ 9

*Mosadegh v. State Farm Fire & Cas. Co.*,
   No. 07-4427, 2008 WL 4544361 (E.D. La. Oct. 8, 2008) ................................. 12

*Nguyen v. St. Paul Travelers Ins. Co.*,
   No. 06-4130, 2007 WL 3275133 (E.D. La. Nov. 5, 2007) ................................. 11

*Pelican Supply Co. v. Shreveport Plumbing Co.*,
   128 So. 2d 924 (La. App. 2d Cir. 1961) ........................................................... 5

*Pervis v. State Farm Fire & Cas. Co.*,
   901 F.2d 944 (11th Cir. 1990) ...................................................................... 12

*Pitts v. La. Citizens Prop. Ins. Corp.*,
   No. 08-1024, 2009 WL 103979 (La. App. 4th Cir. Jan. 7, 2009) ....................... 18

*Pumphrey v. City of New Orleans*,
   925 So. 2d 1202 (La. 2006) .......................................................................... 14

*Robbert v. Equitable Life Assur. Soc'y of the U.S.*,
   46 So. 2d 286 (La. 1949) ............................................................................. 12

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*,
   765 F.2d 1334 (5th Cir. 1985) ...................................................................... 19

*Sher v. Lafayette Ins. Co.*,
   988 So. 2d 186 (La. 2008) ........................................................................ 2, 13

*St. Germain v. Howard*,
   No. 08-30364, ___ F.3d ___ (5th Cir. Jan. 20, 2009) ..................................... 10

*Staples v. Rush*,
   99 So. 2d 502 (La. App. 2d Cir. 1957) ............................................................. 5

*Star Windshield Repair, Inc. v. Western Nat'l Ins. Co.*,
   744 N.W.2d 237 (Minn. Ct. App. 2008) .......................................................... 4

*State ex. rel. Div. of Admin. v. McInnis Bros. Constr., Inc.*,
   701 So. 2d 937 (La. 1997) ............................................................................ 15

*State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed to Do Business in the State of La.*,
  937 So. 2d 313 (La. 2006) ............................................................. 17, 18, 20

*Stein v. Williams Lumber Co.*,
  36 So. 2d 62 (La. App. Orleans 1948) .............................................................. 5

*Steptore v. Masco Constr. Co.*,
  643 So. 2d 1213 (La. 1994) .............................................................. 4

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) .............................................................. 10

*Treigle v. Allstate Indem. Co.*,
  No. 07-9519, 2008 WL 4809446 (E.D. La. Oct. 31, 2008) ............................................ 13

*Tuepker v. State Farm Fire & Cas. Co.*,
  507 F.3d 346 (5th Cir. 2007) .............................................................. 14

*United States Abatement Corp. v. Mobile Explor. & Producing U.S. Inc.*,
  79 F.3d 393 (5th Cir. 1996) .............................................................. 8

*Vaught v. Showa Denko K.K.*,
  107 F.3d 1137, (5th Cir. 1997) .............................................................. 15

*Viloria v. State Farm Fire & Cas. Co.*,
  2008 U.S. Dist. LEXIS 85225 (E.D. La. Oct. 22, 2008) ................................................ 12

*Wineski v. Aegis Sec. Ins. Co.*,
  No. 06-7187, 2008 WL 544544 (E.D. La. Feb. 27, 2008) .............................................. 13

## STATUTES

La. Civ. Code art. 1816 .............................................................. 6

La. Civ. Code art. 1827 cmt. (a) and (g) .............................................................. 7

La. Civ. Code art. 2049 .............................................................. 3

La. Civ. Code art. 2643 .............................................................. 5

La. Civ. Code art. 2653 .............................................................. 2

La. R.S. 22:658.3 .............................................................. 7

LSA C.C. art. 3466 .............................................................. 19

## RULES

Fed. R. Civ. P. 11 .............................................................. 13

Fed. R. Civ. P. 12(b)(6) .............................................................. 20

LSA C.C.P. art. 596 .............................................................. 15

v

**INTRODUCTION**

The State's Amended Petition, as currently pled, is wholly devoid of specific factual allegations sufficient to meet the *Twombly* standard or even establish an Article III case or controversy.  Although the State claims that its suit was filed to protect the rights of Road Home claimants who may not have preserved their own claims against their insurance companies, the Amended Petition fails to allege any specific facts identifying which of the thousands of underlying insured supposedly have such claims, the basis for any such claims, or the facts that would establish a right to recovery on behalf of any given claimant.  Instead, the State simply asks that this Court presume that because there **may** be policyholders who failed to pursue legitimate claims against their insurance carriers, that **all** policyholders of more than 200 different insurance carriers necessarily failed to do so.   These are precisely the kind of hypothetical, speculative disputes that fail to satisfy Rule 12 or even Article III.

The State has likewise failed to rebut Defendants' showing that, as a matter of law, the Agreement[1] cannot assign any rights or interest to the State, and that the State lacks subrogation rights.  Further, the State spends nearly half of its 25 pages of discussion attempting to convince this Court to ignore binding precedent of the Fifth Circuit, which rejected Valued Policy Law ("VPL") claims under the allegations contained in the State's Amended Petition.  Finally, the State attempts to avoid the preclusive effect of the prescription periods on claims of insureds that entered into the Agreement after such periods ended by making a legally deficient tolling argument.

Beyond that, the State's response completely fails to address several other dispositive defects in its Amended Petition, even though the State concedes that such defects exist.  The State merely claims that it should be allowed to cure those defects by amendment at some uncertain future date, without any explanation as to why no amendment has yet been proffered nearly 1 ½ years after this lawsuit commenced.  But there is simply no basis, and certainly the

---

[1] "The Road Home Limited Subrogation/Assignment Agreement" (hereinafter "Agreement") (emphasis in original).

State offers none, to believe that these threshold defects can be cured by amendment.

## ARGUMENT

I.      **The State Lacks Standing To Sue As A Purported Assignee or Subrogee.**

   A.      **The Anti-Assignment Clauses Are Applicable And Enforceable.**

The State does not dispute that the anti-assignment clauses in Defendants' policies are fully enforceable under Louisiana law.  *See* La. Civ. Code art. 2653 ("A right cannot be assigned when the contract from which it arises prohibits assignment of that right.").  Instead, the State argues only that certain of Defendants' policies prohibit assignment of the "Policy" and fail to also expressly prohibit assignment of a "claim" made under the "Policy."[2]  The term "Policy," however, plainly refers not only to the entire insurance policy but also to all of the insureds' rights and duties thereunder, such as the right to assert a claim.  Insurers need not list each and every element of or right under a policy in the clause in order to prohibit assignment thereof.

As the State would have it, an anti-assignment clause would prohibit an insured from transferring the entire Policy and all rights thereunder in one transaction, but would allow the insured to separate out specific rights under the Policy and assign them piece by piece in multiple transactions.  Such a result defies common sense.  *See Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 194-95 (La. 2008) (refusing to give flood exclusions a restrictive meaning because it was unjustified and "would lead to absurd results").  To interpret an anti-assignment clause as narrowly as the State advocates would largely eviscerate it.  *See* La. Civ. Code art. 2049 ("A

---

[2] On page 6 of its Opposition, the State erroneously represents that the insurers did not cite a single policy precluding the assignment of a claim. Fireman's Fund Insurance Company Conditions Form 5311 4-02 (La), applicable to both its Prestige Home Standard and Premier forms at the relevant time, provides: "Assignment of this policy or **claim** will not be valid unless we give our written consent." *See* Appendices A and B to Defendants' Memo. (emphasis added).  Accordingly, in addition to the reasons set forth in Defendants' Motion and this Reply, the assignment by policyholders whose policies contain Form 5311 is invalid and unambiguously precluded by the anti-assignment clause.  Any differences in policy language among the Defendants, however, cannot be used to find an ambiguity.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 210 (5th Cir. 2007) (holding that, under Louisiana law, ambiguity could not be found based on the fact that some insurers' policies included "more specific language" than others).  Other policies include anti-assignment language which provides that "no interest in this policy may be transferred" without the insurer's consent. The inclusion of this language, prohibiting the transfer of individual interests enunciated in the subject policies, fortifies the notion that the subject anti-assignment provisions are intended to preclude the assignment of all rights, duties and interests incorporated into said policies.

provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.").  Indeed, a number of courts have held that anti-assignment clauses prohibiting assignment of a "policy" bar assignment of individual claims or rights under that policy.[3]

Assuming Defendants' anti-assignment clauses permitted the assignment of claims proceeds (which they do not), the purported assignments in this case attempt to transfer much more than the mere proceeds of a claim, and are thus equivalent to an assignment of the entire policy (particularly where the policy has expired and there are no other pending claims).  The insurance policies require policyholders to comply with various duties in order to present and prove up their claim, including giving prompt notice of the damage, producing records, submitting to an examination under oath where requested, and submitting a signed, sworn proof of loss where requested.  (Defs.' Memo., Doc. 16493-2, at 35-36.)  With respect to claims on which the policyholder has not filed suit, the State seeks to take over these duties, which are non-delegable as a matter of law.  (*Id.* at 36-37.)  But even if these duties could be transferred, that would amount to an assignment of the policy, which is prohibited by the anti-assignment clauses. *See Malbco Holdings, LLC v. AMCO Ins. Co.*, No. 08-585, 2008 WL 5205202, at *13 (D. Or. Dec. 11, 2008) (explaining that, where both rights and duties were assigned, "[t]his was not simply a claim assignment, but was a policy assignment").

Moreover, even if the anti-assignment clauses would permit a "mechanical transfer of money" where an insured has already complied with his or her obligations to present and prove up a claim, a transfer of "the substantive right to litigate the amount of the insurance benefit" is impermissible.  *Star Windshield Repair, Inc. v. Western Nat'l Ins. Co.*, 744 N.W.2d 237, 240 (Minn. Ct. App. 2008).  The transfer in this case is clearly the latter.  The State seeks to

---

[3] *See, e.g., Citizens Tri-County Bank v. Georgia Mut. Ins. Co.*, 11 S.W.3d 120 (Tenn. Ct. App. 1999) (holding that, where Citizens purchased mortgage formerly held by another bank, even if an assignment of mortgagee interest had taken place, such assignment would be void in light of the clause in the policy prohibiting "assignment of this policy" without written consent); *Edwards v. Concord Dev. Corp., Inc.*, No. 174487, 1996 Mich. App. LEXIS 1807, * 5-*6 (Mich. Ct. App. Sep. 17, 1996) (enforcing anti-assignment clause barring "assignment of this policy" to invalidate assignment of insurance claim made without insurer's consent).

substantially increase the risk and burden on Defendants by requiring them to defend against claims brought by the State where the insurance claim was adjusted, paid and closed years ago, neither the policyholder nor the State has ever presented and proved up any supplemental claim for additional proceeds, and the property was either repaired or torn down long ago.  This is precisely the type of burden and increase in risk that anti-assignment clauses are intended to preclude.[4]  *Id.*

The State's contention that Defendants waived their rights under the anti-assignment clauses by responding to inquiries from the State is clearly without merit.  Under Louisiana law, "[w]aiver is generally understood to be the intentional relinquishment of a known right, power, or privilege."  *Steptore v. Masco Constr. Co.*, 643 So. 2d 1213, 1216 (La. 1994).  A party that expressly reserves its rights does not waive them.  *Cassey v. Stewart*, 727 So. 2d 655, 659 (La. App. 2d Cir. 1999).  Here, there is no allegation that any insurer intentionally relinquished its right to rely on the anti-assignment clause.  To the contrary, the record demonstrates that Defendants repeatedly reserved their rights, and the State acknowledged that reservation.[5]

## B.    Partial Assignments Without Consent Of The Assignee Are Unenforceable As A Matter Of Law.

Defendants' Memorandum of Law demonstrated that Louisiana has a well-established rule of law that a partial assignment is not valid without consent of the obligor.[6]  Louisiana

---

[4] The State claims that HUD has not approved Mississippi's decision not to seek to enforce any assignment/subrogation rights with respect to claims settled by the homeowner and insurer without a specific allocation of payments to particular coverages (State Opp. at 4), but counsel for the Mississippi Development Authority has expressly represented that its approach "has been formally approved by HUD."  (Exhibit A hereto.)

[5] The Case Management Order re: Road Home Settlement Protocol states that "Nothing contained herein shall be construed by any party as an admission as to the validity of the assignment and/or subrogation agreements referenced herein or a waiver of any defense."  (Doc. 13598, at 3.)  The form that Defendants agreed to fill out in connection with the settlement protocol implemented by this Court expressly states that the insurer is not consenting to any purported assignment or subrogation, and not waiving any of its rights.  (*Id.* at 9.)  The standard release form executed by the State further acknowledges that "payment by Insurer does not constitute and shall not operate as an admission of liability, validate the Assignment and Subrogation Agreement made part of The Road Home Program Grant process, or waive any of Insurer's defenses."  (*Id.* at 14.)

[6] *See* Defendants' Memo. at 10-12; *Pelican Supply Co. v. Shreveport Plumbing Co.*, 128 So. 2d 924, 925 (La. App. 2d Cir. 1961); *Staples v. Rush*, 99 So. 2d 502, 505 (La. App. 2d Cir. 1957); *Stein v. Williams Lumber Co.*, 36 So. 2d 62, 64 (La. App. Orleans 1948); *Geo. H. Jett Drilling Co. v. Tibbits*, 230 F. Supp. 58,

courts have reasoned that an obligor should not be required to deal with multiple claims or lawsuits by multiple assignees on the same debt.  *Staples*, 99 So. 2d at 505.  A Louisiana Supreme Court decision cited by the State recognizes this very rule.  *Cox v. Heroman & Co.*, 298 So. 2d 848, 856 (La. 1974) (stating rule that "partial assignment is not permitted without the consent of the debtor").  There is no dispute that the purported assignments by policyholders to the State are partial, so they are barred by established jurisprudence.

The State argues that this well-established line of cases was effectively overruled by the enactment of Article 2643 of the Civil Code in 1984, but Article 2643 contains no such language, and the State has failed to cite a single Louisiana decision that has reached that conclusion. Louisiana courts have refused to construe a statute as overriding a long line of jurisprudence where the statute is not explicit.  *See, e.g., Boutte v. Dep't of Police*, 950 So. 2d 861, 862 (La. App. 4th Cir. 2007) (concluding that legislature "would have used more explicit language" if it intended to override established, long standing jurisprudence).

Article 2643 does not allow partial assignments without consent, but rather provides that "[i]f a partial assignment unreasonably increases the burden of the debtor he may recover from either the assignor or the assignee a reasonable amount for the increased burden."  La. Civ. Code art. 2643.  A debtor that consents to a partial assignment can still sustain increased attorneys' fees and other expenses as a result of a partial assignment, and is entitled to recover those costs under Article 2643.  The commentary from the Louisiana Law Institute cited by the State cannot be used to insert a new rule of law into Article 2643, overriding decades of jurisprudence, where that rule appears nowhere in Article 2643 itself.  *See Cacamo v. Liberty Mut. Fire Ins. Co.*, 764 So. 2d 41, 44 (La. 2000) ("Courts are not free to rewrite laws to effect a purpose that is not otherwise expressed."); *Backhus v. Transit Cas. Co.*, 549 So. 2d 283, 291 (La. 1989) (same principle).[7]

---

62 (W.D. La. 1964).

[7]  The Civil Code further provides that "[w]hen there is only one obligor and only one obligee, a divisible obligation must be performed as if it were indivisible."  La. Civ. Code art. 1816.  This article further confirms that an insurance claim cannot be divided into pieces in the manner that the State has sought to accomplish.  On each claim, there is one obligor (the insurer) and one obligee (the policyholder), and thus

### C.      The State Has No "Subrogation" Rights.

The State's contention that it has valid "subrogation" rights in addition to purported assignment rights is without merit.  The State's acquisition of rights from policyholders is not subrogation.  As the Louisiana Supreme Court decision relied on by the State explains, "[t]here is a substantial conceptual difference between, on the one hand, an 'assignment', which has the nature of the sale and acquisition of a credit so as to permit its enforcement of the assignee, and, on the other hand, a conventional 'subrogation', which has for its primary purpose the negotiated discharge of a debt due to the creditor." *Cox*, 298 So. 2d at 856 (cited in State's Opposition at 11).[8]  In making a grant payment to a policyholder, the State was not discharging or extinguishing a debt owed by an insurer.  Any contention by the State that its grants were for the purpose of discharging insurers' obligations would be wholly contrary to the State's position that its grants are intended to cover only uninsured losses.

Moreover, Article 1827 reflects that it was intended to eliminate the distinction between conventional subrogation and assignment.  Article 1827 expressly provides that conventional "subrogation is subject to the rules governing the assignment of rights," and the official commentary explains that "a transferee of rights cannot claim any advantage based on the allegation that his right was acquired by subrogation rather than by assignment." La. Civ. Code art. 1827 official cmts. (a) and (g).  Thus, to the extent Article 1827 allows subrogation without the consent of the obligor, that is expressly restricted by the rules governing assignment of rights, including Article 2653, which requires enforcement of contractual anti-assignment clauses.  Article 2653 would be eviscerated if an anti-assignment clause could be rendered ineffective simply by using the word "subrogation" instead of or in addition to "assignment" in drafting an agreement for the transfer of rights.  *See Holly & Smith Architects, Inc. v. St. Helena Congregate*

---

under Article 1816 the insurer's obligation to pay the claim cannot be divided into pieces, with parts of the claim retained by the policyholder and other portions transferred to the State.

[8] *See also Al Copeland Enters. Inc. v. Slidell Mem'l Hosp.*, 657 So. 2d 1292, 1296 (La. 1995) (explaining that subrogation occurs when "an obligation, extinguished with regard to the original creditor by payment which he has received from a third person . . . is regarded as substituting in favor of this third person who in essence steps into the shoes of the original debtor").

*Facility, Inc.*, 943 So. 2d 1037, 1045 (La. 2006) (explaining that "where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter"); *Eicher v. La. State Police*, 710 So. 2d 799, 805 (La. App. 1st Cir. 1998) (same principle).

> ### D.   The State Has No Standing To Sue Where Insureds Have Not Abandoned Their Claims.

The Agreement drafted by the State and executed by policyholders provides the State with the right to sue only if the policyholder "choose[s] to abandon, dismiss, or release the claim against my insurance company . . . ." (Defendants' Memo. at Appendix C, Doc. 16493-19, at 2.) The State does not dispute this requirement, but argues that there was a "constructive abandonment" of the claim if the policyholder has not filed suit against his or her insurer. (State Opp. at 13.) The mere fact, however, that a policyholder did not file suit does not demonstrate that the policyholder abandoned the claim. While the State suggests that a policyholder would have no incentive to aggressively pursue a recovery or file suit where the policyholder received a grant, in fact the vast majority of policyholders who had applied for a grant had *not* received one before the prescription deadlines expired. The Amended Petition alleges that, as of August 13, 2007, the Road Home Program had paid only 41,071 grants out of 183,867 applications. (Am. Petition, ¶ 10.) The prescription deadlines for Hurricane Katrina and Hurricane Rita claims expired shortly thereafter -- September 1, 2007 for Katrina claims, and October 1, 2007 for Rita claims. *See* La. R.S. 22:658.3.

This Court cannot presume that tens of thousands of policyholders would "abandon" an insurance claim based on the mere possibility that they might be found eligible for a grant from a state agency and might receive a grant, if money were still available, in some unspecified amount to be determined in the future. To the contrary, any rational policyholder who believed that he or she had not received fair compensation for covered damage would file suit before the deadline, regardless whether he or she had a grant application pending. Thousands of policyholders in that situation did file suit, just as thousands of policyholders were satisfied that they received

adequate compensation for the portion of the damage to their home that was covered, and therefore did not file suit.  As the State concedes, "[t]he State has never sought to use these Agreements to transform itself into the insured and to pursue additional recoveries . . . where the insured was satisfied with the amount paid . . . ."  (State Opp. at 4.)  The State has not alleged any facts demonstrating which policyholders, if any, in fact abandoned their claims, which under the Agreement is a condition precedent to the State's right to bring suit.

     **E.**    **The State's Opposition Further Demonstrates Why It Lacks The Right To Assert Claims For Extra-Contractual Damages.**

The State's only response to Defendants' demonstration that the State's extra-contractual claims fail as a matter of law is to baldly assert that the language of the Agreement is broad enough to cover such extra-contractual claims.  (Opp. at 22-23.)  The State is simply in error. The plain language of the Agreement is limited to "all . . . claims" "***under any policy of casualty or property damage insurance***."  (Opp. at 22 (quoting the Agreement, emphasis added).)  The phrase "all claims" is limited by the phrase "under any policy," which by definition precludes extra-contractual claims that arise *outside* of the policy.  (*See* Defs.' Memo. at 26-29.)  On this basis alone, the Court should reject the State's argument and hold that all extra-contractual claims (bad faith, breach of fiduciary duty) must be dismissed from this case with prejudice.[9]

Even if the State's Agreement clearly and unambiguously attempted to assign these extra-contractual claims (which it did not), Louisiana law precludes the assignment of bad faith claims, because those claims are personal and unassignable.  (Defs.' Memo. at 28.)  The State's Opposition fails to even address these arguments and authorities, and thus concedes the point.

---

[9] Even if this language were ambiguous (which it is not), it was the State that drafted the language. Accordingly, that language must be construed against the State.  *See, e.g., City of New Orleans v. Mun. Admin. Servs.*, 376 F.3d 501, 505-06 (5th Cir. 2004) (holding that ambiguous provision "must be construed against the city as drafter"); *United States Abatement Corp. v. Mobile Explor. & Producing U.S. Inc.*, 79 F.3d 393, 400 (5th Cir. 1996) (same principle).

**II.    The Complete Lack Of Factual Support For The State's Claims Demonstrates A Lack Of Injury, Which Requires Dismissal For Failure To Plead A Case Or Controversy.**

The State bears the burden of pleading and establishing standing and ripeness.  *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008) (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).  This includes the requirement of demonstrating an injury-in-fact that is "actual or imminent, not conjectural or hypothetical."  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Moreover, the complaint must contain at least general factual allegations of injury resulting from defendant's conduct.  *Lujan*, 504 U.S. at 559-62 (finding standing lacking).

Here, the gist of the State's claim of injury is that some insureds *may* have been underpaid by their insurers for their Hurricane Katrina related losses; some of these insureds *may* have received Road Home funds and executed the Agreement; some of those insureds *may* have abandoned any suit they had against their insurer for such alleged underpayment; and accordingly, the State *may* have been injured *if* that happened.  The State's Amended Petition, as currently pled, however, fails to identify any specific insureds that were supposedly underpaid, much less the factual basis for claiming underpayment, nor does it identify those insureds who allegedly "abandoned"  a claim against their insurer as opposed to those who were fully compensated for their claims.

This Court cannot simply presume that each and every insured of more than 200 different carriers was undercompensated by their respective insurance company.  Even conceding for argument's sake the possibility that some insureds may have been undercompensated or have a legitimate claim against their insurer, the allegations of the Amended Petition are not sufficient to establish an *actual* controversy with respect to *any* policyholder. This type of conjectural and speculative allegation of "injury" wholly fails to satisfy *Twombly* (as discussed below) or even establish an Article III case or controversy.  *Barbour*, 529 F.3d at 545; *Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315, 319-21 (5th Cir. 2002) (finding *sua sponte*, on Rule 23(f) appeal, that

plaintiff and the class failed to allege an injury-in-fact because the allegations of injury failed to show they were injured).[10]

### III.   The State's Opposition Admits There Are Defects With Its Pleading, And Fails To Explain How Those Defects Can Be Corrected, Which Requires Dismissal With Prejudice.

Under *Twombly*, dismissal is proper where the complaint merely recites the elements of a claim in conclusory fashion, without providing meaningful *factual* allegations showing that the elements have been satisfied.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *St. Germain v. Howard*, No. 08-30364, ___ F.3d ___ (5th Cir. Jan. 20, 2009) (following *Twombly*).[11]   Here, the State is improperly trying to avoid *Twombly* by claiming it can simply cure any pleading deficiencies at some later date, citing a case that predates *Twombly* by over forty years.  (Opp. at 6 (citing *Foman v. Davis*, 371 U.S. 178 (1962).)  This vague notion of some "future cure" simply does not pass muster under *Twombly*.  The State's failure (and inability) to proffer a proposed amendment to cure the numerous deficiencies identified by the Defendants, or to explain how the State could cure such defects, requires dismissal *with prejudice*.

As one court stated in rejecting the very strategy the State seeks to follow here:

if courts allow parties to amend their complaints even when they fail to specifically show how such amendments would cure the respective defects, the

---

[10] Indeed, the State concedes that 90,000 of the Agreements under which it seeks to recover occurred *after* the two-year anniversaries of the hurricanes, thereby acknowledging that its claims under those Agreements were not ripe when the State filed its Petition and did not ripen within the prescriptive period. (Defs.' Mem. at 3.)

[11] Appellate courts applying *Twombly* have emphasized that in putative class actions or complex litigation, more detailed allegations are required to satisfy the *Twombly* standard.  *See, e.g., Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) ("For complaints involving complex litigation . . . a fuller set of factual allegations may be necessary to show that relief is plausible.  The Court in *Bell Atlantic* wished to avoid the 'in terrorem' effect of allowing a plaintiff with a 'largely groundless claim' to force defendants into either costly discovery or an increased settlement value.") (citation omitted); *Limestone Dev. Corp. v. Village of Lemont*, 520 F.3d 797, 802-03 (7th Cir. 2008) (explaining *Twombly* "teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case," and that "the defendant should not be put to the expense of big-case discovery on the basis of a thread-bare claim").

> futility limitation would be meaningless, as courts would have no way to foretell whether such amendments would be futile in the first place.  Obviously, such latitude would serve only to discourage parties from revealing their proposed pleading changes.

*Druker v. Fortis Health*, 2007 U.S. Dist. LEXIS 402, at *22 (S.D. Tex. Jan. 4, 2007) (granting motion to dismiss agent defendant with prejudice because plaintiff-insured failed to proffer an amended pleading correcting the defects) (following *Hernandez v. Garrison*, 916 F.2d 291, 293 (5th Cir. 1990)); *see also Hernandez*, 916 F.2d at 293 (holding that it is not an abuse of discretion to deny leave to amend where party fails to include a proposed amendment or at least explain how an amendment would cure the defect).

Here, the fact that the State is unable to identify even minimal *facts* supporting its claims demonstrates that the State's claims are not well grounded in fact.  For example, Defendants demonstrated that the Fifth Circuit requires a party asserting a breach of insurance contract claim to "allege a breach of a specific policy provision."  *Louque v. Allstate Ins. Co.*, 314 F.3d 776, 782 (5th Cir. 2002); *accord Nguyen v. St. Paul Travelers Ins. Co.*, No. 06-4130, 2007 WL 3275133, at *7 (E.D. La. Nov. 5, 2007).  The State has filed this lawsuit as an alleged partial assignee or subrogee of these claims, yet it is now clear the State is asserting claims for breach without even knowing the language of the policies at issue, or knowing if any specific provision was breached.  In similar cases involving a "mass joinder" of thousands of claims based on a vague, generalized pleading, this Court has required the filing of separate complaints detailing the facts of each individual claim, under penalty of dismissal.  The State has made no attempt to satisfy that requirement here, and it likely cannot do so.

As an alleged partial assignee and subrogee, the State would step into the shoes of the assignors and subrogors and would only be able to assert such claims if those assignors and subrogors fully complied with their obligations under the insurance policy.  (Defs.' Memo. at 35-36.)  The State does not allege such performance occurred, and the State's Opposition indicates it

cannot so allege.  On that basis alone, the Amended Petition should be dismissed with prejudice for failure to state an essential element of the claims.[12]

Moreover, the State baldly alleges that the Defendants are liable for penalties under the Louisiana bad faith statutes.  But very specific facts must be alleged to establish liability under these statutes.  *See, e.g., Viloria v. State Farm Fire & Cas. Co.*, 2008 U.S. Dist. LEXIS 85225, at *11 (E.D. La. Oct. 22, 2008) (noting that in order to establish bad faith, plaintiffs "bear the burden of proving (1) that Defendant received satisfactory proof of loss; (2) failed to pay the claim within the applicable statutory period; and (3) that the failure to timely tender a reasonable amount was arbitrary, capricious, or without probable cause").  Here, the inability of the State to cure the pleading defect on the penalty issue demonstrates that the State does not know if facts would support such a bad faith claim for any particular insured against any particular Defendant.

## IV.    The VPL Claim Fails As A Matter Of Law.

The State's brief devotes extraordinary attention to defending its VPL claim, notwithstanding the fact that this claim is barred by controlling precedent.  The Fifth Circuit has held that "the VPL only requires an insurer to pay the agreed face value of the insured property if the property is rendered a total loss from a covered peril," and "Louisiana's VPL does not apply when a total loss does not result from a covered peril."  *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 239, 241 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1075 (2008).  The Fifth Circuit further explained that the VPL does not "force the insurer to pay for damage resulting from a non-covered peril," and that "the statute signals no intent to expand coverage to excluded perils."  *Id.* at 239-40.[13]  *Chauvin* is fully consistent with the Louisiana Supreme Court's decision in

---

[12] *See, e.g., Robbert v. Equitable Life Assur. Soc'y of the U.S.*, 46 So. 2d 286, 292 (La. 1949) ("'The burden [is] clearly upon the insured to perform the condition required by the policy, failing which performance there could be no liability or obligation upon the insurer to bestow the benefits provided.'") (citation omitted); *Lee v. United Fire & Cas. Co.*, 607 So. 2d 685, 688 (La. App. 4th Cir. 1992) ("Courts have generally reviewed compliance with insurance policy provisions as a condition precedent to recovery."); *Pervis v. State Farm Fire & Cas. Co.*, 901 F.2d 944, 947 (11th Cir. 1990) (insured's duty to submit to examination under oath was condition precedent to suit); *Mosadegh v. State Farm Fire & Cas. Co.,* No. 07-4427, 2008 WL 4544361, at *3 (E.D. La. Oct. 8, 2008) (Feldman, J.) (appeal pending) (same).

[13] *See also In re Katrina Canal Breaches Consol. Litig.*, 2007 WL 4293636, at *2 (E.D. La. Dec. 6, 2007) (Duval, J.) (granting summary judgment for insurer on VPL claim because "an insured is not entitled to

*Landry v. La. Citizens Prop. Ins. Co.*, 983 So. 2d 66 (La. 2008), which explained (without reaching the question presented in *Chauvin*) that the VPL "is a valuation statute and does not address causation . . . ." *Id.* at 82.

Here, the State fails to allege that any specific property sustained a total loss as a result of a covered peril with the specificity required by *Twombly* as discussed above. While the State makes a vague allegation that "many" grant recipients "suffered total losses to their residences from covered events" (Am. Petition, ¶ 41; *see also id.*, ¶¶ 46(e), 76), that allegation must be read in conjunction with the remainder of the Petition, which alleges, at length, that flood exclusions are unenforceable and that flood is therefore a covered peril. (*Id.*, ¶¶ 43-69.) The State does not dispute Defendants' argument that its allegations seeking to recover for flood damage are barred by *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186 (La. 2008) and *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 214 (5th Cir. 2007). (*See* Defs' Memo., Doc. 16493-2, at 23-24.) In order to adequately plead a viable claim under the VPL after *Chauvin*, *Sher* and *Katrina Canal Breaches*, the State would have to allege, consistent with Fed. R. Civ. P. 11, that specific properties were in fact rendered a total loss from wind and wind-driven rain.[14] *Twombly*, 127 S. Ct. at 1965 (explaining that "[f]actual allegations must be enough to raise the right to relief above the

recover the full face value of a policy when the property was not rendered a total loss by a covered peril"); *Cameron Parish Sch. Bd. v. RSUI Indem. Co.*, No. 06-1970, 2008 WL 4191270, at *2 (W.D. La. Sep. 5, 2008) (Minaldi, J.) (holding that, where total loss did not result from a covered peril, "this case falls squarely within *Chauvin's* holding and there is no need to go further"); *Treigle v. Allstate Indem. Co.*, No. 07-9519, 2008 WL 4809446, at *6 (E.D. La. Oct. 31, 2008) (Lemmon, J.) (granting summary judgment for insurer on VPL claim because "[a]lthough the [insureds] allege that the property was damaged by wind and flood and that the home is a total loss, there is no allegation that the total loss was caused by wind or any other peril covered under the homeowner's policy"); *Wineski v. Aegis Sec. Ins. Co.*, No. 06-7187, 2008 WL 544544, at *2 (E.D. La. Feb. 27, 2008) (Barbier, J.) (applying *Chauvin*, explaining that "[a]s plaintiffs' property was damaged by a combination of water and wind, the total loss was not restricted to a covered peril and VPL is not applicable").

[14] While the State suggests in a footnote that it would like a further opportunity to brief the question of whether the "efficient proximate cause" doctrine applies, or whether anti-concurrent causation policy language is unenforceable, those contentions are barred by controlling precedent, and have previously been rejected by this Court. *Bilbe v. Belsom*, 530 F.3d 314, 317 n.3 (5th Cir. 2008); *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 430-31 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1873 (2008); *Tuepker v. State Farm Fire & Cas. Co.*, 507 F.3d 346, 354 (5th Cir. 2007); *see also* Order denying reconsideration of post-Sher Insurance Umbrella Case Management Order, Doc. 14394 (denying Docs. 13631 & 14323). *In re Katrina Canal Breaches Consol. Litig.*, 466 F. Supp. 2d 729, 762-63 (E.D. La. 2006) (Duval, J.) (holding Louisiana courts would enforce anti-concurrent cause policy language over judicial efficient proximate cause doctrine), *aff'd in part and rev'd in part on other grounds*, 495 F.3d 191 (5th Cir. 2007).

speculative level").   The State plainly has failed to do so, and thus the VPL claim must be dismissed.

The State's brief also discusses, at great length, the issue of whether the VPL applies only to fire insurance policies, or only to fire losses under policies that cover multiple perils.  Because the State's VPL claim should be dismissed under *Chauvin*, this Court need not reach this issue. In any event, while the Louisiana Supreme Court did not decide this issue in *Landry v. La. Citizens Prop. Ins. Co.*, 983 So. 2d 66 (La. 2008), its opinion contains a footnote of extraordinary length strongly suggesting how the Court would decide the question.   The Supreme Court concluded "[i]t appears to us that the legislative history of La. R.S. 22:695, combined with the definitions provided in La. R.S. 22:6(10) and (15), and the contrast of the language used in related statutes, reveals that the statute is intended to apply only to fire insurance policies, which may include coverage against other perils as allowed by La. R.S. 22:691 and is distinct from homeowners' policies."  *Id.* at 76 n.10.[15]

The Louisiana Supreme Court's decision in *Landry* is strongly supported by an unpublished decision of the Fifth Circuit cited by Defendants, which the State completely disregards.   *In re Consol. Cos.*, 106 F.3d 396 (table), 1996 WL 773044, at *3 (5th Cir. Oct. 11, 1996) (holding that VPL "applies only to fire insurance policies").  The State's lengthy attack on the district court opinion in *Consolidated Cos.* is without merit because, among other reasons, the district court opinion was affirmed by the Fifth Circuit.

---

[15] While the Louisiana Supreme Court also stated in *Landry* that the insurance industry may have assumed that the term fire insurance policy encompasses homeowners insurance policies, that is immaterial. The question in interpreting a statute is what the legislature intended when it reenacted the VPL in 1991, not what an insurer may have believed.  The Louisiana Supreme Court's lengthy footnote leaves no doubt as to what it believes the legislature intended.  For the same reason, the State's citation to Louisiana Department of Insurance materials is irrelevant because it does not bear on the legislative intent.  *Pumphrey v. City of New Orleans*, 925 So. 2d 1202, 1209 (La. 2006) (explaining that statutory interpretation "involves primarily a search for the Legislature's intent").

**V.    Claims Which Had Not Been Assigned Prior to the Applicable Deadlines for Filing Suit Are Barred by the Express Terms of the Contract.**

Relying solely on *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), the State contends the filing of various class actions "relating to insurance coverage" interrupted the prescriptive period for those policyholders who did not file suit prior to September 1, 2007 with respect to Katrina or October 1, 2007 with respect to Rita.  However, where a claim is governed by state substantive law, state tolling rules apply in determining whether the claim is time-barred. *See Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1145-47 (5th Cir. 1997); *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 907 (E.D. La. 2007).  Under Louisiana law, class action tolling does not apply to contractual suit limitation periods, but even if *American Pipe* did apply, it would still not save the stale claims that the State seeks to pursue.

**A.    Under Louisiana Law, Class Action Tolling Does Not Apply To Contractual Periods for Filing Suit.**

Article 596 of the Louisiana Code of Civil Procedure provides that **"[l]iberative prescription** on the claims arising out of the transactions or occurrences described in a petition brought on behalf of a class is suspended on the filing of the petition as to all members of the class as defined or described therein."   LSA C.C.P. art. 596 (emphasis added).   The term "liberative prescription" refers to a "period of time fixed by law for the exercise of a right." *State ex. rel. Div. of Admin. v. McInnis Bros. Constr., Inc.*, 701 So. 2d 937, 939 (La. 1997).  A prescription period agreed to in a contract is not established "by law" and is thus not a "liberative prescription" period subject to tolling.  *See, e.g., Lila, Inc. v. Underwriters at Lloyd's, London*, 994 So. 2d 139, 147 (La. App. 4th Cir. 2008) ("The two-year time limitation contained in the Lloyd's policy is not a prescriptive period subject to interruption or suspension . . . ."); *see also Katz v. Allstate Ins. Co.*, 917 So. 2d 443, 447 (La. App. 4th Cir.)  (holding that Article 596 did not suspend suit limitation period in homeowners policy during pendency of class action), *writ denied*, 901 So. 2d 1069 (2005); *Jones v. UNUM Life Ins. Co.*, 2006 U.S. Dist. LEXIS 87384, at *6-7 (E.D. Ark. Nov. 29, 2006) (holding that pendency of class action did not toll contractual

limitations period in insurance policy because "while courts might have the power to toll statutes of limitations . . . they generally do not have power to alter contractual agreements").

The rule against tolling contractual limitation periods is supported by sound public policy. "The public interest is served by permitting the insurer to limit the time of its exposure. Because the insurer's reserves must be sufficient to meet the possible losses, a shorter period of exposure results in lower premiums for insureds. At the same time, the rights of insureds are not impaired, because a one-year limitation is reasonable." *Ga. Mut. Ins. Co. v. Glennville Bank & Trust Co.*, 494 S.E.2d 103, 105 (Ga. App. 1997); *see also Bond County Cmty. Sch. Dist. No. 2 v. Ind. Ins. Co.*, 647 N.E.2d 293, 300 (Ill. App. 1995) (noting that if suit limitation period were not enforced, premiums "most surely would have been higher to cover the increased risks").

Because the periods for filing suit at issue here are set by contract, they are not subject to tolling. In *Lila*, for example, a policy between Lloyd's and the insured contained a two-year limitations period which would have run before the legislative extension. When the insured waited until October 8, 2007 to file a Katrina-related lawsuit, the court dismissed the claim as untimely under the contract and held that the contractual limitation was merely extended by the Legislature and was not subject to interruption. The court held:

> The two-year time limitation contained in the Lloyd's policy is not a prescriptive period subject to interruption or suspension, but rather, is merely a contractual pledge or agreement by the insurance company not to plead prescription if the insured institutes legal action within the two-year time frame . . . . Thus, pursuant to the express terms of the insuring agreement, which was the contract existing between the parties, [the insured] had two years from the date of the loss, or until 29 August 2007, within which to file its action against Lloyd's wherein Lloyd's would be contractually precluded from pleading prescription. Acts 802 and 739 extended this contractual period of prohibition as to Lloyd's for an additional three days, or until 1 September 2007, at the very latest.

*Lila*, 994 So. 2d at 147. Since the contractual period expired before the legislative deadline, the trial court granted Lloyd's motion to dismiss plaintiff's Petition as untimely and the Fourth Circuit affirmed.

Undoubtedly, the Legislature was aware that Katrina-related class actions were pending, and it is also presumed to have been aware of the class action tolling rule in Article 596. *See*

*Fontenot v. Reddell Vidrine Water Dist.*, 836 So. 2d 14, 24 (La. 2003).  If the Legislature had intended that the pendency of class actions would further extend the prescription period, at a time when a number of such class actions were pending, it would not have enacted a specific deadline beyond which all Katrina claims were "forever barred."  Act 802.

Moreover, Act 802 sets forth only one exception to this deadline, i.e., where "a contract or the parties thereto provide for a later date."  *Id.*  Having explicitly provided this single exception, the statute cannot be read to implicitly allow tolling based on the pendency of class actions.  The well-recognized principle "expressio unius est exclusio alterius" dictates that when the legislature specifically enumerates one or a series of things, its omission of other similar items that could easily have been included is deemed intentional.  *See, e.g., Filson v. Windsor Court Hotel*, 907 So. 2d 723, 728 (La. 2005).  As Louisiana's Fourth Circuit stated in *Lila*:  "The Legislature could not have been more clear:  if a party did not institute judicial proceedings to recover for damages sustained arising out of Hurricane Katrina by 30 August 2007, the party would not be able to sustain an action filed thereafter."  *Lila*, 994 So. 2d at 143.

Indeed, any extension of the period of time for filing suit beyond the date certain established by Acts 739 and 802 would be unconstitutional.  In *State v. All Prop. & Cas. Ins. Carriers Authorized & Licensed to Do Business in the State of Louisiana*, 937 So. 2d 313 (La. 2006), the Louisiana Supreme Court considered whether Acts 739 and 802 resulted in an unconstitutional impairment of contract.  *Id.* at 323.  This entailed a four part inquiry:  (1) Was there an impairment of contract; (2) was the interference of a constitutional dimension; (3) was the regulation justified by a legitimate public purpose, and (4) were there reasonable conditions limiting the scope of any impairment to that necessary to serve the public purpose.  *Id.* at 324.

The Louisiana Supreme Court answered the first two questions "yes."  That is, it found that Acts 739 and 802 did constitute an impairment of contract of a constitutional dimension.  *Id.* at 324-25, 327.  In concluding that the Acts were nonetheless constitutional, the Louisiana Supreme Court held that they were justified by the extreme devastation caused by Hurricanes Katrina and Rita, *id.* at 326, and were reasonably limited in both time and scope, *id.* at 327.  As

the Court stated: "The prescriptive period *is extended for only one additional year* and is limited to certain types of claims arising out of damage caused by Hurricanes Katrina and Rita." *Id.* (emphasis added).

Thus, the legislature narrowly extended the time for filing suit in recognition of the extraordinary nature of Hurricane Katrina. It made clear, however, that it was not providing an indefinite extension of time in which to file suit. Rather, it provided a date certain (September 1, 2007) by which Katrina suits against insurers must be filed or forever barred.[16]

### B. *American Pipe* Tolling Does Not Save the State's Stale Claims.

Even if *American Pipe* had any application here, the State's reference to unidentified previously filed class actions fails to allege sufficient facts to bring it within the *American Pipe* tolling doctrine, which is its burden. *See Alexander v. Fulco*, 895 So. 2d 668, 672 (La. App. 2d Cir. 2005). For example, the State does not identify when any such class actions were filed, the definitions of the proposed class actions, the claims asserted, against which Defendants, or the disposition of the class claims. As a result, the State cannot show that *American Pipe* saves any of the claims assigned to it after the deadlines provided in Acts 739 and 802.

Significantly, the State does not identify the tolling effect of any putative class action upon which it relies. *See Chardon v. Fumero Soto*, 462 U.S. 650, 661 (1983). For example, where a Hurricane Katrina class action was filed in August 2006 and class allegations were stricken three months later, putative class members would have one year (the period provided in their policies), plus three months to file suit. *See* LSA C.C. art. 3466. Putative class members

---

[16] The recent decision in *Pitts v. Louisiana Citizens Prop. Ins. Corp.*, No. 08-1024, 2009 WL 103979 (La. App. 4th Cir. Jan. 7, 2009), is fatally flawed for two reasons. The Fourth Circuit distinguished (but did not overrule) its prior decision in *Katz*, by noting that in *All Property*, the Louisiana Supreme Court held that the legislature *could* interrupt a contractual period for filing suit. *See Pitts*, 2009 WL 103979, at *3. However, regardless whether the Louisiana legislature *could* enact a statute that subjects contractual periods for filing suit to class action tolling, it has not done so. Second, the legislature's ability to impair contracts is constitutionally constrained. In contrast to the limited contractual impairment that the Louisiana Supreme Court held was constitutional in *All Property*, the State proposes to substitute for a fixed date to file suit a nearly indefinite time period based upon the pendency of class actions. This Court is not bound by decisions of an intermediate appellate court that are inconsistent with Louisiana codal law and the decisions of the Louisiana Supreme Court. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1231 (2008).

only get the benefit of one class action tolling period, and contemporaneous or successive putative class actions do not extend the tolling.  *See Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir. 1985).

The tolling must be applied to the original prescriptive period, and not the time provided by Acts 739 and 802, for two reasons.  First, by their express terms, the acts do not provide a *period* of time (e.g., one year) within which to file suit, but a date certain.  As a result, even if the days during which a putative class action was pending were not "counted," the Hurricane Katrina deadline would still expire on September 1.  Second, Acts 739 and 802 themselves provide for an interruption of prescription.  The State has not cited any authority for the proposition that *American Pipe* allows for the tacking of successive periods of interruption.  To the contrary, as the Fifth Circuit recognized in *Salazar-Calderon*, to permit such an additive effect would be contrary to public policy.  Thus, even if *American Pipe* were applicable, a plaintiff could avail himself of the benefit of class action tolling or the legislative extension provided by Acts 739 and 802, but not both.

Finally, the State's attempt to toll any contractual period of prescription by filing this class action days before the deadline is patently unconstitutional and without effect.[17]  The State has stated that it filed this class action for the express purpose of tolling prescription as to claims that had not yet been assigned to it.  However, as discussed above, when the State acts to impair contractual rights (as it is clearly attempting to do here), its conduct is subject to constitutional scrutiny.  As the Louisiana Supreme Court has explained, where the State's impairment of contract is in furtherance of its own self-interest, deference to the State is not appropriate.  *See All Prop.*, 937 So. 2d at 327.  Here, the State purports to do so by circumventing the Louisiana legislature is all the more reason that its actions should not be sanctioned.[18]

---

[17] Significantly, as to the following Defendants, this lawsuit is the first (and only) class action arising out of Hurricanes Katrina or Rita filed against them:  Shelter Mutual Insurance Company, Shelter General Insurance Company, Balboa Insurance Company, and Meritplan Insurance Company.

[18] Even if Article 596 were applicable, it would suspend prescription only with respect to "claims arising out of the transactions or occurrences described" in the class complaint, and only on behalf of the "members of the class as defined or described therein."  La. Code Civ. P. art. 596.  Thus, in order to benefit from Article 596, the State would have to establish that each insured-assignor was a putative class member of a

The State also failed to respond to Defendants' argument that, even if the claims were not prescribed, the State could not bring suit as an assignee with respect to claims that were not assigned to it when it filed suit.  (Defs.' Mem. at 32.)  Even if the State would have standing to assert claims on behalf of a putative class of policyholders, the State could not be a class representative for itself and thereby pursue claims for which it did not have assignments.

## CONCLUSION

For all the foregoing reasons, the Amended Petition should be dismissed in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

class action in which the claims alleged in this lawsuit were raised.  Whether the claim is prescribed would then depend on how long the applicable class action was pending and when the claim was purportedly assigned to the State.  The State has failed to make any such showing.

Dated: January 23, 2009                    Respectfully submitted,

                                           */s/ Wayne J. Lee*
                                           Wayne J. Lee, 7916
                                            wlee@stonepigman.com
                                           Stephen G. Bullock, 3648
                                            sbullock@stonepigman.com
                                           Mary L. Dumestre, 18873
                                            mdumestre@stonepigman.com
                                           Andrea L. Fannin, 26280
                                            afannin@stonepigman.com
                                                       Of
                                           STONE PIGMAN WALTHER
                                            WITTMANN L.L.C.
                                           546 Carondelet Street
                                           New Orleans, Louisiana  70130
                                           Telephone:  (504) 581-3200
                                           Facsimile:  (504) 581-3361
                                                     And
                                           Charles L. Chassaignac IV, 20746
                                            cchassaignac@phjlaw.com
                                                       Of
                                           PORTEOUS, HAINKEL & JOHNSON, L.L.P.
                                           343 Third Street, Suite 202
                                           Baton Rouge, Louisiana  70801
                                           Telephone:  (225)383-8900
                                           Facsimile:  (225) 383-7900

                                           *Attorneys for State Farm Fire and Casualty
                                           Company and State Farm General Insurance
                                           Company*

                                           */s/ Maura Z. Pelleteri*
                                           Maura Z. Pelleteri, 8463
                                           Amy S. Malish, 28992
                                                       Of
                                           KREBS, FARLEY & PELLETERI, L.L.C.
                                           Texaco, Center, Suite 2500
                                           400 Poydras Street
                                           New Orleans, Louisiana  70130
                                           Telephone:  (504) 299-3570
                                           Facsimile:  (504) 299-3582

                                           *Attorneys for Aegis Security Insurance Company*

*/s/ Howard B. Kaplan*

Howard B. Kaplan, 14414
                Of
BERNARD CASSISA ELLIOTT & DAVIS
1615 Metairie Road
P.O. Box 55490
Metairie, Louisiana  70055-5490
Telephone:  (504) 834-2612

*Attorneys for Lafayette Insurance Company, United*
*Fire and Casualty Company and United Fire and*
*Indemnity Company*


*/s/ Judy Y. Barrasso*

Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
                Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

*Attorneys for America First Insurance Company,*
*Liberty Mutual Fire Insurance Company, and*
*Liberty Mutual Insurance Company*


*/s/ Judy Y. Barrasso*

Judy Y. Barrasso, 2814
H. Minor Pipes, III, 24603
Stephen L. Miles, 31263
                Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

*Attorneys for Metlife, Inc., Economy Premier*
*Assurance Company, Metropolitan Casualty*
*Insurance Company, and Metropolitan Property &*
*Casualty Insurance Company*

22

*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
   Of
LUGENBUHL, WHEATON, PECK,
 RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990
  And
Christopher W. Martin,
Texas Bar No. 13057620
Martin R. Sadler,
Texas Bar No. 00788842
   Of
MARTIN, DISIERE, JEFFERSON &
 WISDOM, L.L.P.
808 Travis Street, Suite 1800
Houston, Texas  77002
Telephone:  (713) 632-1700
Facsimile:  (713) 222-0101

*Attorneys for United Services Automobile*
*Association, also separately named by plaintiffs as*
*USAA, USAA Casualty Insurance Company and*
*USAA General Indemnity Company*

*/s/ Seth A. Schmeeckle*
Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
   Of
LUGENBUHL, WHEATON, PECK,
 RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

  And

Of Counsel:
Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
                    Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

*Attorneys for The Hanover Insurance Company,
The Hanover American Insurance Company, and
Massachusetts Bay Insurance Company*

*/s/ Deborah B. Rouen*
Deborah B. Rouen, 2084
Chris A. D'Amour, 26252
                    Of
ADAMS AND REESE LLP
4500 One Shell Square
New Orleans, Louisiana  70139
Telephone:  (504) 581-3234
Facsimile:  (504) 566-0210

*Attorneys for Union National Fire Insurance
Company*

*/s/ Dominic J. Ovella*
Dominic J. Ovella, 15030
Anne E. Medo, 24556
Sean P. Mount, 27584
                    Of
HAILEY, MCNAMARA, HALL,
  LARMANN & PAPALE, L.L.P.
One Galleria Boulevard, Suite 1400
P. O. Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500

*Attorneys for Fidelity and Deposit Company of
Maryland, Empire Fire and Marine Insurance
Company, Empire Indemnity Insurance Company,
Centre Insurance Company, ZC Sterling Insurance
Agency, Inc., and ZC Sterling Corporation*

24

_/s/ Judy Y. Barrasso_

Judy Y. Barrasso, 2814
Edward R. Wicker, Jr., 27138
Of
BARRASSO USDIN KUPPERMAN
  FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana  70112
Telephone:  (504) 589-9700
Facsimile:  (504) 589-9701

Of Counsel:
Richard L. Fenton
Steven M. Levy
Anthony T. Eliseuson
Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

_Attorneys for Allstate Insurance Company, Allstate Indemnity Company, Encompass Insurance Company, Encompass Insurance Company of America, and Encompass Property and Casualty Company_

_/s/ Seth A. Schmeeckle_

Seth A. Schmeeckle, 27076
Ralph S. Hubbard, III, 7040
Of
LUGENBUHL, WHEATON, PECK,
  RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990

And

Of Counsel:
Kevin P. Kamraczewski
Alan S. Gilbert
Paul E. B. Glad
David R. Simonton
                    Of
SONNENSCHEIN NATH &
  ROSENTHAL LLP
7800 Sears Tower
Chicago, Illinois  60606
Telephone:  (312) 876-8000

*Attorneys for Horace Mann Insurance Company,
Teachers Insurance Company, and Horace Mann
Property & Casualty Insurance Company*


*/s/ Alan J. Yacoubian*
Alan J. Yacoubian, 17213
Neal J. Favret, 24412
Rachel P. Catalanotto, 31095
                    Of
JOHNSON, JOHNSON, BARRIOS &
  YACOUBIAN
701 Poydras Street, Suite 4700
New Orleans, Louisiana  70139-7708
Telephone:  (504) 528-3001

*Attorneys for Auto Club Family Insurance Company*

26

*/s/ Neil C. Abramson*

Neil C. Abramson, 21436
Nora B. Bilbro, 22955
Jacqueline M. Brettner, 30412
Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130
And
Marshall M. Redmon, 18398
Of
PHELPS DUNBAR LLP
City Plaza
445 North Boulevard, Suite 701
Baton Rouge, Louisiana  70802
Telephone:  (225) 346-0285
Facsimile:  (225) 381-9197

*Attorneys for Homesite Insurance Company*

*/s/ Harry Rosenberg*

Harry Rosenberg, 11465
Jacqueline M. Brettner, 30412
Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

*Attorneys for Fidelity National Insurance Company
and Fidelity National Property and Casualty
Insurance Company*

*/s/ Marshall M. Redmon*

Marshall M. Redmon, 18398

Of

PHELPS DUNBAR LLP

City Plaza

445 North Boulevard, Suite 701

Baton Rouge, Louisiana  70802

Telephone:  (225) 346-0285

Facsimile:  (225) 381-9197

And

Amy R. Sabrin

Of

SKADDEN, ARPS, SLATE,

  MEAGHER & FLOM LLP

1440 New York Avenue, NW

Washington, DC  20005

Telephone:  (202) 371-7000

Facsimile:  (202) 393-5760

*Attorneys for Farmers Insurance Exchange,*
*Foremost Insurance Company, Foremost Property*
*and Casualty Company, and Foremost Signature*
*Insurance Company*

*/s/ Neil C. Abramson*

Neil C. Abramson, 21436

Jacqueline M. Brettner, 30412

Of

PHELPS DUNBAR LLP

Canal Place

365 Canal Street, Suite 2000

New Orleans, Louisiana  70130-6534

Telephone:  (504) 566-1311

Facsimile:  (504) 568-9130

*Attorneys for American Manufacturers Mutual*
*Insurance Company, Lumbermens Mutual Casualty*
*Company, Merastar Insurance Company, Unitrin*
*Preferred Insurance Company, Unitrin Auto and*
*Home Insurance Company, Trinity Universal*
*Insurance Company, and Trinity Universal*
*Insurance Company of Kansas, Inc.*

_/s/ Harry Rosenberg_
Harry Rosenberg, 11465
Jay R. Sever, 23935
Jacqueline M. Brettner, 30412
                    Of
PHELPS DUNBAR LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana  70130-6534
Telephone:  (504) 566-1311
Facsimile:  (504) 568-9130

_Attorneys for Scottsdale Indemnity Company and_
_Scottsdale Insurance Company_

_/s/ Sidney W. Degan, III_
Sidney W. Degan, III, 480
Julia A. Dietz, 18866
Attorney at Law
            Of
DEGAN, BLANCHARD & NASH
400 Poydras St., Suite 2600
New Orleans, LA  70130
(504) 529-3333 phone
(504) 529-3337 fax

_Attorneys for National Security Fire &  Casualty_
_Company and Omega One Insurance Company_

29

_/s/ Ralph S. Hubbard_
Ralph S. Hubbard, III, 7040
Seth A. Schmeeckle, 27076
Of
LUGENBUHL, WHEATON, PECK,
 RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana  70130
Telephone:  (504) 568-1990
And
Stephen E. Goldman
Wystan M. Ackerman
Of
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, Connecticut  06103-3597
Telephone:  (860) 275-8200
Facsimile:  (860) 275-8299

_Attorneys for The Standard Fire Insurance
Company, "St. Paul" (a non-existent entity), "St.
Paul Travelers Insurance Company" (a non-existent
entity), St. Paul Fire & Marine Insurance Company,
St. Paul Guardian Insurance Company, St. Paul
Mercury Insurance Company, St. Paul Protective
Insurance Company, St. Paul Surplus Lines
Insurance Company, Travelers Casualty Insurance
Company of America, Travelers Casualty and
Surety Company, Travelers Home & Marine
Insurance Company, The Travelers Indemnity
Company, The Travelers Indemnity Company of
America, The Travelers Indemnity Company of
Connecticut, Travelers Insurance Company (a non-
existent entity), Travelers Property Casualty
Company of America, Travelers Property Casualty
Insurance Company, The Automobile Insurance
Company of Hartford, Connecticut, Hartford
Accident & Indemnity Company, Hartford Casualty
Insurance Company, Hartford Fire Insurance
Company, Hartford Insurance Company of the
Midwest, Hartford Insurance Company of the
Southeast, "Hartford Insurance Group" (a non-
existent entity), Hartford Underwriters Insurance
Company, Property and Casualty Insurance
Company of Hartford, and Twin City Fire
Insurance Company_

30

_/s/ Christopher R. Pennison_

Jay M. Lonero, 20642

Christopher R. Pennison, 22584

Angie Arceneaux Akers, 26786

Of

LARZELERE PICOU WELLS SIMPSON
  LONERO, LLC

Suite 1100 - Two Lakeway Center

3850 N. Causeway Boulevard

Metairie, LA  70002

Telephone:  (504) 834-6500

Fax:  (504) 834-6565

_Attorneys for Republic Fire and Casualty Insurance
Company, American National Property and
Casualty Company, American National General
Insurance Company, and ANPAC Louisiana
Insurance Company_

_/s/ Gordon P. Serou, Jr._

Gordon P. Serou, Jr., 14432

Of

LAW OFFICES OF

GORDON P. SEROU, JR., LLC

650 Poydras Street, Suite 1420

New Orleans, Louisiana 70130

Telephone: (504) 299-3421

And

Walter D. Willson

Of

WELLS MARBLE & HURST, PLLC

300 Concourse Blvd., Suite 200

Ridgeland, Mississippi 39157

Telephone: (601) 605-6944

_Attorneys for American Bankers Insurance
Company of Florida, American Security Insurance
Company, American Reliable Insurance Company,
Standard Guaranty Insurance Company, Voyager
Indemnity Insurance Company, and Voyager
Property and Casualty Insurance Company_

31

DUPLASS, ZWAIN, BOURGEOIS,
PFISTER & WEINSTOCK

/s/ *Kelly Cambre Bogart*
LAWRENCE J. DUPLASS (#5199)
C. MICHAEL PFISTER (#14317)
KELLY CAMBRE BOGART (#22985)
JAIME M. CAMBRE (#29116)
3838 North Causeway Boulevard
Three Lakeway Center, Suite 2900
Metairie, Louisiana 70002
Telephone: (504) 832-3700
Facsimile: (504) 837-3119

*Attorneys for The American Insurance Company
and Fireman's Fund Insurance Company*

PLAUCHÉ MASELLI PARKERSON L.L.P.

 s/ *James K. Ordeneaux*
ANDREW L. PLAUCHÉ, JR. (Bar No. 11023)
JAMES K. ORDENEAUX (Bar No. 28179)
701 Poydras St., Ste. 3800
New Orleans, LA   70139
Office: 504.582.1142; Fax: 504.582.1172

H. ALSTON JOHNSON III (Bar No. 7293)
PHELPS DUNBAR, L.L.P.
445 North Blvd., Suite 701
Baton Rouge, LA 70802
Office:  225.346.0285; Fax:  225.381.9197

*ATTORNEYS FOR LOUISIANA FARM
BUREAU MUTUAL INSURANCE COMPANY AND
LOUISIANA FARM BUREAU CASUALTY
INSURANCE COMPANY*

HAILEY, McNAMARA, HALL,
LARMANN & PAPALE, L.L.P.

By: */s/ John E. Unsworth, Jr.*
JOHN E. UNSWORTH, JR., #09477
W. GLENN BURNS, #3698
LAUREN E. BRISBI, #29778
One Galleria Blvd, Suite 1400
Post Office Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500

*Attorneys for Clarendon National Insurance
Company*

*s/Gerard Wimberly, Jr.*
GERARD E. WIMBERLY, JR. (#13584) (T.A.)
ANTHONY ROLLO ( # 01133)
DANIEL T. PLUNKETT (# 21822)
McGlinchey Stafford, PLLC
601 Poydras Street, 12th Floor
New Orleans, LA 70130
Telephone: (504) 586-1200
Facsimile: (504) 596-0377

STEPHANIE G. JOHN (# 25111)
1001 McKinney St. Suite 1500
Houston, TX 77002
Telephone: (713) 520-1900
Fax: (713) 520-1025

*ATTORNEYS FOR BALBOA INSURANCE
COMPANY AND MERITPLAN INSURANCE
COMPANY*

RICHARD E. KING (#25128)
DAVID M. MORAGAS (#29633)
MATTHEW J. LINDSAY (#30599)
GALLOWAY, JOHNSON, TOMPKINS,
BURR & SMITH
701 Poydras Street, Suite 4040
New Orleans, Louisiana  70139
Telephone: (504) 525-6802
Facsimile:  (504) 525-2456

*Attorneys for Assurance Company of America,
Zurich American Insurance Company, and Zurich
North America*


/s/ Richard J. Doren
Richard J. Doren
        Of
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071-3197
(213) 229-7038

Daniel W. Nelson
            Of
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
(202) 955-8500

Robert I. Siegel, La. Bar No. 12063.
            Of
GIEGER, LABORDE & LAPEROUSE, LLC
One Shell Square
701 Poydras St., Suite 4800
New Orleans, Louisiana 70139-4800
(504) 654-1307

*Attorneys for Lexington Insurance Company,
Audubon Insurance Company, and AIU Insurance
Company*

/s/ Thomas R. Blum_____
Thomas R. Blum, 3170
M. Davis Ready, 24616
Simon, Peragine, Smith & Redfearn, L.L.P.
30th Floor – Energy Centre
1100 Poydras Street
New Orleans, LA  70163
Telephone:  (504) 569-2030
Facsimile:  (504) 569-2999

*Attorneys for Shelter Mutual Insurance Company
And Shelter General Insurance Company*


 /s/ Patrick D. DeRouen_____

Patrick D. DeRouen (pderouen@derouenlaw.com)
Laurie L. DeArmond
(ldearmond@derouenlaw.com)
DeRouen Law Firm
650 Poydras Street
Suite 2230
New Orleans, LA 70130
504-274-3660
Fax: 504-274-3664

*Attorneys for Armed Forces Insurance*


/s/   Matthew A. Woolf_____
Matthew A. Woolf, 27146
 mwoolf@bakerdonelson.com
         Of
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, Louisiana  70170
Telephone:  (504) 566-5200
Facsimile:  (504) 636-4000

*Attorneys for G.U.I.C. Insurance Company,
American Family Home Insurance Company,
American Modern Home Insurance Company,
American Southern Home Insurance Company, and
American Western Home Insurance Company*

35

PHELPS DUNBAR LLP

 /s/ Jacqueline M. Brettner
Neil C. Abramson (Bar #21436)
Jacqueline M. Brettner (Bar #30412)
Canal Place
365 Canal Street • Suite 2000
New Orleans, Louisiana 70130-6534
Telephone: (504) 566-1311
Telecopier: (504) 568-9130

and

Marshall M. Redmon (Bar #18398)
445 North Boulevard, Suite 701
Baton Rouge, LA  70802
Telephone: (225) 346-0285
*Fax: (225) 381-9197*

*Attorneys for Defendants The Involved Lloyd's
Underwriters*

*/s/ John R. Walker*
John R. Walker
                    Of
ALLEN & GOOCH
3900 North Causeway Boulevard
Suite 1450
Metairie, Louisiana  70002
Telephone:  (504) 836-5210
Facsimile:  (504) 836-5215

*Attorneys for American Summit Insurance Company
and National Lloyds Insurance Company*

/s/ Edward J. Lilly
EDWARD J. LILLY, LSBA #8571
CRULL, CASTAING & LILLY
601 Poydras Street, Suite 2323
New Orleans, LA 70130
Tel. (504)581-7700
Fax (504)581-5523

*Attorneys for Southwest Business Corporation*

36

/s/ Steven W. Usdin
Steven W. Usdin, 12986
Stephen L. Miles, 31263
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street
Suite 2400
New Orleans, Louisiana  70112
Telephone:  504/589-9700

*Attorney for Chubb Indemnity Insurance Company, Chubb Custom Insurance Company, Chubb National Insurance Company, Federal Insurance Company, Great Northern Insurance Company, (for itself and as erroneously sued as Chubb Insurance Group, a non-entity, incapable of being sued), and Vigilant Insurance Company*

## CERTIFICATE

I hereby certify that a copy of the foregoing Defendants' Reply In Support of Motion to Dismiss has been served upon all counsel of record by electronic notice from the Court's CM/EC Filing System, this 23rd day of January, 2009.

/s/ Judy Y. Barrasso