

**BALCH & BINGHAM LLP**

Alabama • Georgia • Mississippi • Washington, DC

Attorneys and Counselors
1310 Twenty Fifth Avenue
P.O. Box 130 (39502)
Gulfport, Mississippi 39501
(228) 864-9900
(228) 864-8221 Fax
www.balch.com

August 7, 2007

John R. Santa Cruz, Esquire
Merlin Law Group, P.A.
718 Dunbar Avenue, Suite 1A
Bay St. Louis, MS 39520

      Re:    MDA- HAP grant program
                Subrogation – Insurance Policy

Dear Randy:

      Pursuant to your request, I am writing this letter on behalf of my client, the Mississippi Development Authority. Specifically, you have requested a written statement or letter from MDA regarding its subrogation policy as it relates to such global settlements. A written statement on the MDA subrogation-insurance policy is attached hereto as Exhibit "A" to this letter. Exhibit "A" is the MDA subrogation-insurance policy expressed in written form in "HAP Program I Technical Modification Number 5". This Technical Modification and written expression of the MDA subrogation-insurance policy for the HAP grant program has been formally approved by HUD.

      The above mentioned MDA subrogation-insurance policy was posted at our website, after formal HUD approval. Insurance settlement information and this exact written statement of our MDA subrogation-insurance policy may now be found at:

    (1)    www.mississippi.org
           then "Recovery Action Plans";
           then click "Read More"
           then Phase I, look at Modification #5 Subrogation-Insurance
           Settlements

    (2)    Also the following website:

           www.mshomehelp.gov/subrogation.htm

      An earlier group settlement was addressed by a direct letter to the attorney and law firm handling that group of lawsuits and claims against an insurance company. At that time, our policy had been approved by HUD, but we had not received final written approvals and the policy was not publicly available. Because of the multitude of plaintiffs, defendants, attorneys and law firms handling these important claims, the most

83891V03

**EXHIBIT 'A'**

Letter to R. Santa Cruz
August 7, 2007
Page two (2).

consistent, fair and uniform way of handling such inquiries, is to make the policy publicly available. For your inquiry and other inquiries in the future, the MDA will refer all parties to the HUD approved posted policy.

Sincerely,

Balch & Bingham, LLP

*[signature]*

John H. Rice

JHR/jh
Attachments – Tech Mod #5

83891V03

HAP Program 1 Technical Modification Number 5

Background and Scope

As part of the issuance of Homeowner Grants to victims of Hurricane Katrina, each grant recipient signed a subrogation agreement giving the Mississippi Development Authority (MDA) the right to offset future insurance payments for physical damage to the structure of their primary residence, i.e. "structure" damage, against the grant award. Because the Grant Program compensated recipients solely for "structure" damage, MDA's subrogation agreement does not apply to subsequent payments for damage to "contents," "loss of use," or any coverage other than damage to "structure," nor does it apply to payments for settlement of other causes of action against an insurance company.

Many Mississippi homeowners, including grant recipients, have filed lawsuits against their insurance companies in the eighteen months since Katrina made landfall. Causes of action include claims for breach of contract, fraud, equitable estoppel, unjust enrichment, loss of use, bad faith in not paying claims, improper certification in/out of a flood zone, and other claims. There are thousands of lawsuits filed by a wide assortment of attorneys and attorney groups throughout the Mississippi Gulf Coast. Only some of these lawsuits involve grant recipients.

Based on discussion with counsel for the settling homeowners the potential settlements may or may not provide a specific breakdown of the nature of the payments being made. In addition, a possible legal position taken on behalf of the settling homeowners will be that the proceeds are a result of a global settlement of all legal causes of action the homeowner filed, or could have filed, against their insurance company and represent substantial payments for claims other than "structure" damage (for instance fraud claims) and thus are not subject to subrogation under the Plan. These funds are essential for the speedy recovery of the Mississippi Gulf Coast.

As a result MDA is required to clarify a HUD-approved policy on an executable definition of duplication of benefits that are paid as a result of legal settlements and judgments which is consistent with the Homeowner's Grant Program and does not violate the Stafford Act's prohibition on duplication of benefits.

The MDA policy must cover the enforcement and execution of subrogation rights for various fact patterns of legal and class action judgments and settlements.

The MDA has determined that this does not represent a substantial amendment to the plan requiring formal submission or public comment. The nature, purpose, scope and beneficiaries of the Partial Action Plan remain the same subsequent to the modification. Additionally, this technical modification will not negatively impact potential beneficiaries who have applied for assistance under the program.

I. **Subrogation Policies:**

1) If grant recipient receives a settlement payment from their insurance company as a result of a settlement of legal claims that does not provide specific information as to what portion (if any) of the settlement is for structural damage to the primary residence then the full proceeds are not subject to subrogation. Proceeds would not be subject to collection by the State and would not be considered by HUD to be prohibited duplicative benefits under the Stafford Act.

    a) This position is based on the fact that legally driven settlements that result in proceeds to the Homeowner as a result of class action-type legal settlements and settlements based on complaints with a myriad of damage counts are outside of the intended purpose of the subrogation agreement and the State's subrogation interest in "structure" damage in such settlements is not defined. Such settlements are truly extraordinary events, not contemplated by the Plan or the Subrogation made a part of the said Plan.

2) If grant recipient receives a settlement payment from their insurance company as a result of a settlement of legal claims that provides information as to a specific payment for "structure" damage, then the State will pursue its collection of potential state's rights for structural proceeds under the subrogation agreement, in accordance with HUD approved policies.

II. **Program Purpose**

The Program Purpose and Performance Requirements remain the same, as follows: "the purpose of the Homeowner Grant Assistance program is to provide a one-time grant payment, up to a maximum or $150,000, to eligible homeowners who suffered flood damage to their primary residence as of August 29, 2005 from Hurricane Katrina. In exchange for the grant payment, qualifying homeowners must agree to a covenant on their property that establishes building code, flood insurance, and elevation requirements for them or any future owner of the land. After certain deductions, homeowners have complete discretion of the use of the grant funds, as allowable by State and Federal law, as they work through their personal disaster recovery situation."

The Program Details as defined in the Partial Action Plan also remain the same for Applicant Eligibility and Awarded Grant Homeowner Requirements and as previously stated in the Partial Action Plan, "the Homeowner Assistance Program offers recovery assistance for homeowners who, while outside the flood zone, maintained property insurance and in some cases, flood insurance, but in insufficient amounts. By partially filling the insurance gap with the homeowner grant, eligible homeowners can begin the recovery process – which will help to drive and stabilize economic development crucial to the recovery of the Mississippi Gulf Coast".

### III. Summary Conclusion

The program and subrogation process did not contemplate many of the types of lawsuits filed against insurance companies by Mississippi homeowners. The subrogation agreement is only enforceable in regards to structural damage compensation. It is expected that any proposed settlements will encompass substantial monies to cover non-structural compensation and that many settlements will not include specific information as to what portion (if any) of settlement payments are for structural damage. MDA proposes solving this issue by coming to a clear definition of what settlements will be subject to subrogation.

Therefore, the Partial Action Plan Modification Amendment Number 5 is to clarify the policies that will be used to enforce the state's subrogation rights for forthcoming settlements. Because the HAP grant only compensated applicants for structural damage, the subrogation policies of HAP will be to pursue subrogation only in cases in which the applicant's settlement specifically establishes the amount of compensation due for structural damage.