APPENDIX "D"

# NEPA MANDATES AND VIOLATIONS

<table>
<tr><th>Chronology of Events</th><th>Statutorily Mandated Conduct</th><th>Violation by USACE</th><th>Causal Connection/ Consequence</th></tr>
<tr><td></td><td></td><td></td><td></td></tr>
<tr><td>FY 1970 (O&M Dredging Events based on start date)
<table>
<tr><th>Contracts/FY Government dredging</th><th>CY's</th></tr>
<tr><td>70</td><td>3,900,020</td></tr>
<tr><td>70</td><td>230,543</td></tr>
<tr><td>70-C-0073</td><td>3,277,368</td></tr>
<tr><td>70-C-0079</td><td>4,923,633</td></tr>
<tr><td>70-C-0136</td><td>9,726,715</td></tr>
<tr><td>70-C-0158</td><td>9,012,633</td></tr>
<tr><td>70-C-0228</td><td>4,467,814</td></tr>
</table></td>
<td>All dredging events listed here and below were "major federal actions" directly affecting the human environment and required the Corps, under NEPA, to prepare and submit an environmental analysis which shall address the direct, foreseeable indirect and cumulative effects of incremental actions added to other "past, present, and reasonably foreseeable future actions". 40 CFR § 1508.7<br><br>An EIS shall include a serious and thorough evaluation of alternatives and environmental mitigation options to fulfill NEPA's process-oriented and action-forcing requirements. 40 CFR § 1508.25(b), §1502.14(f), § 1502.16(h), § 1505.2(c)<br><u>NOTE</u>: Each entry below for Annual O&M dredging activities was subject to the same Statutory Mandates. Rather than repeat the same entry for each Fiscal Year, the notation "See FY 1970" will appear.</td>
<td>USACE proceeded with these dredging events without any environmental analysis or disclosure.<br><br>Conduct that was not presented, studied, or approved through an EIS could not be a legally authorized action.<br><br><u>NOTE</u>: Each entry below for Annual O&M dredging activities was subject to the same/similar violation by the USACE. Rather than repeat the same entry for each Fiscal Year, the notation "See FY 1970" will appear.</td>
<td>Decision makers were not given an opportunity to give serious weight and consideration to environmental factors in making decisions about proposed Corps actions.<br><br>Expansion of the MRGO (eventually by 300%) destroyed tens of thousands of acres of surge-buffering wetlands significantly impacting the effects of Hurricane Katrina. The wider channel, due to O&M of the MRGO, increased the fetch during the storm, resulting in among other things an almost five-fold increase in wave energy.<br><br>Congress' inability to make informed decisions regarding environmental policy caused Plaintiffs' harm in that it allowed the Corps to continue its tortious O&M without scrutiny and denied Congress the opportunity to require corrective measures that would have avoided or materially reduced the catastrophic flooding.</td></tr>
</table>

| | | | |
|---|---|---|---|
| | | | USACE dredging operations resulted in more loss of wetlands & channel widening and erosion which caused the top width of the MRGO to increase from 650 feet to an average of 1,500 feet and resulting in a material impact on the amplitude of storm surge, wave generation, onset of flooding, duration of flooding and rate of overtopping; and thereby had a significant effect on the extent of flooding in three polders. (PUF 23, 64-69 and 83-87).<br><br>**NOTE*****: Each entry below for Annual O&M dredging activities had the same causal connection and contributed to the same consequential effect. Rather than repeat the same entry for each year the notation "See FY 1970" will appear.*** |
| FY 1971 (O&M Dredging Events based on start date)<br><br>Contract/FY for Gvt dredging — CY's<br>71 — 1,517,000<br>71-C-0075 — 5,446,000 | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |

| | | | |
|---|---|---|---|
| FY 1972 (O&M Dredging Events based on start date)<br><br>Contract/FY for Gvt dredging — CY's<br>72 — 1,346,500<br>72-C-0051 — 4,215,738<br>72-C-0163 — 9,122,902<br>72-C-0173 — 1,026,456 | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |
| FY 1973 (O&M Dredging Events based on start date)<br><br>Contract/FY for Gvt dredging — CY's<br>73-C-0171 — 5,584,081 | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |
| December 1974 (DEIS) Composite Draft EIS for Operation and Maintenance Work on Three Navigation Channels in the Lake Borgne Vicinity Louisiana | NEPA mandated that the Corps file a full and complete Environmental Impact Statement which identified and analyzed all direct, foreseeable indirect and cumulative impacts on the human environment, as well as, alternatives and mitigation options and circulate same for interagency review and comment. | In violation of NEPA requirements, the 1974 DEIS omitted discussions of known significant impacts of continued operation of the MRGO on adjacent marshes, the role of vessel traffic and maintenance dredging, channel widening, bank erosion or wetlands loss. The cumulative effects of the O&M of the MRGO on storm hazard potential, proposals for mitigation and alternatives to O&M were all unevaluated issues. | The effect of the 1974 DEIS was to make the 1976 FEIS inadequate and prevented a hard look at MRGO's impact on safety and the human environment. |

| | | | |
|---|---|---|---|
| FY 1974 (O&M Dredging Events based on start date)<br><br>Contract/FY for Gvt dredging / CY's<br>74 / 56,966<br>74-C-0265 / 9,750,800 | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |
| 1976 Legislative Request The original MRGO authorizing legislation, 70 Stat. 65 (1956) was amended by P.L. 94-587 (1976) | Within 30 days of a legislative request for Congressional action, the USACE was statutorily mandated to include a detailed EIS in its request and/or report to Congress. This EIS may not be replaced by an EA and must be made available in time for Congressional hearings and deliberations. 40 CFR § 1506.8(a). | In violation of §1506.8(a), the Corps admittedly only prepared EAs (which are not submitted to Congress) and never prepared an EIS responsive to these legislative acts. | The Corps' conduct prevented any "hard look" at effects on safety and the human environment and denied Congress any opportunity to consider potential mitigative and/or alternative measures. |
| FY 1976 & 1976 TQ (O&M Dredging Events based on start date)<br><br>Contract/FY for Gvt dredging / CY's<br>76 / 285,000<br>76-C-0087 / 11,538,249<br>76 (TQ) / 2,211,000 | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |
| | | | |

| | | | |
|---|---|---|---|
| March 1976 (FEIS) Final Composite Environmental Statement for Operation and Maintenance Work on Three Navigation Projects in the Lake Borgne Vicinity Louisiana | By statute, the 1976 FEIS submitted by USACE to Congress was required to be a detailed report addressing the direct and foreseeable indirect impacts of bank erosion, channel widening, wetlands loss and the funnel effect on storm surge potential on the human environment. | The USACE unilaterally declared that the 1976 FEIS was limited in scope and thus "full analysis of environmental impacts was inappropriate".<br>The 1976 FEIS failed to address the significant and foreseeable impact of the MRGO on hurricane-caused storm surges, known proposals for mitigation, alternatives to the O&M (including closure). (PUFs 45, 65-80).<br>The 1976 FEIS omitted a report to Congress of the known significant impact of the continued operation and maintenance of the MRGO on the marshes adjacent to the channel, and the role that vessel traffic and maintenance dredging and dredge material disposal played in the channel widening, bank erosion and resulting loss of wetlands.<br>In violation of express mandates under NEPA, the USACE, without further study or analysis, unilaterally dismissed as "not appropriate" comments/objections by the U.S. Environmental Protection Agency, the U.S. Department of the Interior and the Louisiana Wildlife and Fisheries Commission regarding the synergistic long-term and future impacts of increased water salinity, spoil disposal, erosion, widening of the surface width of the channel and deterioration of the high quality marsh. | The Corps' conduct prevented any "hard look" at effects on safety and the human environment and denied Congress any opportunity to consider or make an informed decision regarding potential mitigative and/or alternative measures. |

<table>
<tr><td></td><td></td><td>The cumulative effects of the O&M of the MRGO on storm hazard potential of the channel, known proposals for mitigation, alternatives to the O&M (including consideration of closure) were all unevaluated issues; despite substantive responses raised in inter-agency comments during the review process. (PUFs 48, 65-80).<br>The 1976 FEIS actually removed all references to O&M impacts of the MRGO caused by disposal of spoil and also removed references to hurricane storm surge and did not include any consideration of erosion of marshlands adjacent to the channel.</td><td></td></tr>
<tr><td>FY 1977 (O&M Dredging Events based on start date)<table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>77-C-0149</td><td>8,764,919</td></tr><tr><td>77</td><td>343,603</td></tr><tr><td></td><td></td></tr></table></td><td>See FY 1970</td><td>See FY 1970</td><td>See FY 1970</td></tr>
</table>

<table>
<tr>
<td>October 1977<br>Executive Order No. 11990—“Protection of Wetlands”</td>
<td>In furtherance of NEPA and in order to avoid adverse impacts and new construction in wetlands, agencies shall modify their procedures to avoid undertaking new construction in wetlands. Any request for new authorizations shall indicate, if an action to be proposed will be in wetlands and address: “(a) public health, safety, and welfare, including water supply, quality…..flood and storm hazards; and sediment and erosion” §7(b) defines “new construction” as including dredging and related activities and any structures or facilities begun or authorized after October 1977.</td>
<td>From October 1977 through Katrina, the Corps obtained appropriations for 18 new maintenance dredging contracts that took place directly within the inland wetlands area and excavated almost 49 million cubic yards of sediment. (Ptlfs Ex. 85 at pp. 13-15). In direct violation of Exec. Order No. 11990, the USACE prepared no NEPA related documentation for Congress assuring that no practicable alternative existed to the dredging and that all practicable measures to minimize harm to the wetlands would be utilized.</td>
<td>Congress was not given an opportunity to give serious weight and consideration to environmental factors prior to authorizing these 18 dredging events.</td>
</tr>
<tr>
<td>FY 1978 (O&M Dredging Events based on start date)
<table>
<tr><th>Contract/FY for Gvt dredging</th><th>CY’s</th></tr>
<tr><td>78</td><td>578,667</td></tr>
<tr><td>78</td><td>1,252,301</td></tr>
<tr><td>78-C-0149</td><td>7,871,907</td></tr>
<tr><td>78-C-0281</td><td>8,381,608</td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
<tr>
<td>FY 1979 (O&M Dredging Events based on start date)
<table>
<tr><th>Contract/FY for Gvt dredging</th><th>CY’s</th></tr>
<tr><td>79</td><td>595,659</td></tr>
<tr><td>79</td><td>134,777</td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
</table>

| | | | |
|---|---|---|---|
| FY 1980 (O&M Dredging Events based on start date)<br><table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>80</td><td>1,093,496</td></tr></table> | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |
| FY 1981 (O&M Dredging Events based on start date)<br><table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>81</td><td>2,420,962</td></tr><tr><td>81-C-0220</td><td>10,425,144</td></tr></table> | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |

| | | | |
|---|---|---|---|
| December 15, 1980<br>EA (Environmental Assessment) # 15 entitled "Transfer of Land Along Mississippi River- Gulf Outlet Jourdan Road Terminal to Inner Harbor Navigation Canal" with Finding of No Significant Impact (FONSI). | Multiple interrelated actions must have their cumulative environmental impacts addressed in a single EIS which reports the direct, foreseeable indirect and cumulative effects of their impact on the human environment.<br><br>***<u>NOTE</u>: Each of the 27 EAs listed herein were subject to the same statutory mandates under NEPA. Rather than repeat the same requirement for each a notation: "See EA#15 (1980)" will be listed for each.*** | This segmented analysis of the environmental impacts of discrete activities without examining cumulative impacts of the MRGO O&M as a whole and without thorough examination was a direct violation of NEPA.<br>The Corps' multiple EAs do not satisfy the "Independent Utility Test" since each action would not have existed without the MRGO and thus an EIS was required.<br>The Corps prepared 26 EAs subsequent to the 1976 FEIS related to MRGO O&M but never acknowledged or analyzed cumulative impacts and granted themselves an inappropriate FONSI without further study or environmental analysis.<br>***<u>NOTE</u>: In violation of NEPA, each of the 27 EAs listed herein were inappropriately followed by a FONSI with no further study or environmental analysis. Rather than repeat the same violation for each a notation: "See EA#15 (1980)" will be listed for each.*** | The synergistic cumulative environmental effects of O&M of the MRGO on the storm hazard potential of the channel was never analyzed (PUF 92) and cumulatively resulted in dramatic channel widening, major destruction of wetlands, significant bank erosion and ultimately enhanced storm surge and wave energy; which were substantial contributing factors in the catastrophic losses sustained by the plaintiffs.<br>The cumulative impact of MRGO's four defects increased surge elevation along Reach 1/GIWW & IHNC by at least three feet. (PUF 27-30)<br>***<u>NOTE:</u> The causal connection/ consequence associated with each of the 27 EAs listed herein were the same or substantially similar. Rather than repeat the same connection/consequence for each a notation: "See EA#15 (1980)" will be listed for each.*** |
| FY 1982 (O&M Dredging Events based on start date)<br>Contract/FY for Gvt dredging — CY's<br>82 — 973,555<br>82-C-0327 — 10,922,722 | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |

<table>
<tr><td>FY 1983 (O&M Dredging Events based on start date)<br><table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>83</td><td>2,001,054</td></tr><tr><td>83-C-0066</td><td>637,909</td></tr><tr><td>83-C-0071</td><td>542,806</td></tr><tr><td>83-C-0079</td><td>1,440,716</td></tr><tr><td>83-C-0088</td><td>3,011,259</td></tr><tr><td>83-C-0106</td><td>1,890,971</td></tr><tr><td></td><td></td></tr><tr><td>83-C-0164</td><td>6,609,631</td></tr></table></td><td>See FY 1970</td><td>See FY 1970</td><td>See FY 1970</td></tr>
<tr><td>August 15, 1983 EA #38, entitled “MR-GO, Foreshore Protection Test Section”, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
<tr><td>FY 1984 (O&M Dredging Events based on start date)<br><table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>84-C-0090</td><td>13,853,693</td></tr></table></td><td>See FY 1970</td><td>See FY 1970</td><td>See FY 1970</td></tr>
</table>

<table>
<tr>
<td>FY 1985 (O&M Dredging Events based on start date)<br>
<table>
<tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr>
<tr><td>85-C-0091</td><td>5,434,104</td></tr>
<tr><td>85-C-0158</td><td>5,470,779</td></tr>
<tr><td></td><td></td></tr>
<tr><td></td><td></td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
<tr>
<td>January23, 1985<br>EA #47, entitled “MR-GO Foreshore Protection”, with a signed FONSI</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
</tr>
<tr>
<td>July 11, 1985 Supplemental Information Report #8, “to evaluate the ongoing removal of allowable over depth and advanced maintenance during routine maintenance dredging”</td>
<td>Under NEPA, the Corps was mandated to submit an environmental analysis which shall address the direct, foreseeable indirect and cumulative effects of incremental actions added to other “past, present, and reasonably foreseeable future actions”. 40 CFR § 1508.7<br><br>An EIS shall include a serious and thorough evaluation of alternatives and environmental mitigation options to fulfill NEPA’s process-oriented and action-forcing requirements. 40 CFR § 1508.25(b), §1502.14(f), § 1502.16(h), § 1505.2(c)</td>
<td>No EIS was prepared or submitted.</td>
<td>Modeling data (Scenarios 1 & 3) established that waves crossing the MRGO grew significantly due to the depth of the channel and its fetch which led directly to early and catastrophic breaching. (PUF 30-33)</td>
</tr>
</table>

<table>
<tr>
<td>FY 1986 (O&M Dredging Events based on start date)<br><table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>85-C-0160</td><td>2,113,113</td></tr><tr><td>86</td><td>308,453</td></tr><tr><td>86-C-0107</td><td>5,695,352</td></tr><tr><td>86-C-0128</td><td>3,043,519</td></tr><tr><td></td><td></td></tr></table></td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
<tr>
<td>April 1, 1986 EA #54 South Bank Mississippi River – Gulf Outlet - Borrow Site (Re: Contract #DACW29-86-C-0125) was followed by a signed FONSI.</td>
<td>See EA#15 (1980)</td>
<td>Using the MR-GO channel bank as a “borrow pit” for construction material to construct the EBSBs in the vicinity of and on alignment with the MR-GO navigation channel would foreseeably connect the EBSBs with the GIWW and MR-GO Reach 1 to the north to confine and convey or “funnel” storm surge from Lake Borgne into the narrow IHNC.<br><br>In violation of NEPA this significant direct impact was not reported in an EIS.</td>
<td>This action of the Corps predictably exacerbated excessive and prolonged water flow into the confined GIWW - MR-GO Reach 1 and IHNC during hurricane storm surge conditions ('funnel effect').</td>
</tr>
</table>

| | | | |
|---|---|---|---|
| 1986<br>Corps amended its initial legislative authorization for the MRGO and modified the language of that authorization to permit construction of the IHNC Lock Project. (WRDA § 844) | Within 30 days of a legislative request, the Corps was statutorily mandated to furnish a detailed EIS to Congress and shall include as serious and thorough evaluation of environmental mitigation options. 40 CFR § 1508.25 (b), § 1502.16(h), §1505.2(c). | In violation of NEPA's mandate, the Corps filed no detailed environmental report outlining the direct, indirect or cumulative effects of the MRGO on the human environment to accompany its request for reauthorization. The only environmental documents filed contemporaneous with this legislation were two FONSIs that permitted them to act without Congressional review. | Congress was not given an opportunity to give serious weight and consideration to environmental factors prior to authorizing these 18 dredging events. |
| | | | |
| 1986<br>The Corps unilaterally issued a FONSI for EA#54 despite noting that the removal of this material would eliminate 55 acres of wetlands marsh and 31 acres of scrub/shrub upland habitat. | The Corps was required to thoroughly analyze and report the impact of removal of 800,000 cubic yards of material from a borrow site located on the South Bank of the MRGO. The Corps was required to prepare "Supplements" to its EIS (SEIS) whenever there were "substantial changes in the proposed action that are relevant to environmental concerns" or where there are "significant new circumstances or information" relevant to environmental concerns and bearing on the proposed action or its impacts. 40 CFR §§ 1502.9 (c)(i) & (ii), §1502.16, §1508.7-8. NEPA further mandates that the USACE had a continuing obligation to "reassess ongoing projects to avoid or minimize adverse environmental effects". 40 CFR § 1500.13 | The USACE only filed one EIS (1976 FEIS) and it is devoid of any analysis of well documented direct, foreseeable indirect and/or cumulative impacts. Subsequent, to the 1976 FEIS, the Corps prepared 26 EA's related to MRGO O&M and never acknowledged or addressed cumulative effects. In direct violation of NEPA the Corps "segmented" individual actions, intentionally ignored that they were each part of a complete and interrelated wetland area and failed to prepare a mandatory comprehensive EIS.<br>These acts were also in violation of Executive Order 11990, 42 F.R. 26961 (1977) §§ 3, 5(a) and 7(b) which require agency assurance of no alternative and certification that all mitigative measures have been undertaken prior to dredging and shall identify factors relevant to the proposal's effect on the survival and quality of the wetland including public | Congress was not given an opportunity to give serious weight and consideration to environmental factors prior to commencement of this project. |

<table>
<tr><td></td><td></td><td>health, safety and welfare….flood and storm hazards and sediment and erosion.</td><td></td></tr>
<tr><td></td><td></td><td></td><td></td></tr>
<tr><td></td><td></td><td></td><td></td></tr>
<tr><td>FY 1987 (O&M Dredging Events based on start date)<table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>87</td><td>1,687,187</td></tr><tr><td>87</td><td>1,173,640</td></tr><tr><td>87-C-0174</td><td>1,333,080</td></tr><tr><td></td><td></td></tr></table></td><td>See FY 1970</td><td>See FY 1970</td><td>See FY 1970</td></tr>
<tr><td>FY 1988 (O&M Dredging Events based on start date)<table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>88</td><td>1,173,640</td></tr><tr><td>88-C-0082</td><td>918,344</td></tr><tr><td>88-C-0096</td><td>2,539,435</td></tr></table></td><td>See FY 1970</td><td>See FY 1970</td><td>See FY 1970</td></tr>
<tr><td>May 26, 1988 EA #72, entitled “MR-GO Breton Sound Jetty Repairs”, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
</table>

<table>
<tr>
<td>1988<br>In 1988, the Corps' Bank Erosion Reconnaissance Report, acknowledged severe bank erosion along the MRGO navigation channel was substantially greater than had been anticipated and that "principally due to O&M" the top width of the channel had increased from 650 feet to an average of 1,500 feet by 1987</td>
<td>The Corps was required to prepare "Supplements" to its EIS (SEIS) whenever there were "substantial changes in the proposed action that are relevant to environmental concerns" or where there are "significant new circumstances or information" relevant to environmental concerns and bearing on the proposed action or its impacts. 40 CFR §§ 1502.9 (c)(i) & (ii), §1502.16, §1508.7-8.<br>NEPA further mandates that the USACE had a continuing obligation to "reassess ongoing projects to avoid or minimize adverse environmental effects". 40 CFR § 1500.13</td>
<td>This report predicted significant environmental impacts and specifically concluded that without corrective action "loss of the buffering marsh will allow the open water areas of Lake Borgne and Breton Sound and the MRGO to merge".<br><br>Despite this knowledge, neither an EA nor an EIS on this subject was ever prepared or submitted.</td>
<td>The reduction in protective wetlands (both in the Golden Triangle and Central Wetlands Unit) and the increase in channel width had demonstrable effects of flooding levels. (PUF 34-37)</td>
</tr>
<tr>
<td>FY 1989 (O&M Dredging Events based on start date)
<table>
<tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr>
<tr><td>88-C-0144</td><td>4,126,629</td></tr>
<tr><td>89</td><td>54,451</td></tr>
<tr><td>89</td><td>251,733</td></tr>
<tr><td>89-C-0030</td><td>739,600</td></tr>
<tr><td></td><td></td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
<tr>
<td>FY 1990 (O&M Dredging Events based on start date)
<table>
<tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr>
<tr><td>90-C-0088</td><td>1,384,656</td></tr>
<tr><td></td><td></td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
</table>

| | | | |
|---|---|---|---|
| FY 1991 (O&M Dredging Events based on start date)<br>Contract/FY for Gvt dredging — CY's<br>91 — 717,832<br>91-C-0061 — 5,573,638<br>91-C-0062 — 1,995,538<br>91-C-0064 — 4,909,409 | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |
| September 11, 1991 EA #143 Mississippi River – Gulf Outlet - New Canal, Remedial Dredging, with a signed FONSI | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** |
| November 21, 1991 EA #152, entitled "MR-GO St. Bernard Parish, LA, Bank Stabilization, Miles 50.5 to 55.0", with a signed FONSI | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** |
| December 23, 1991 EA #154 Mississippi River – Gulf Outlet - Major Rehabilitation of the South Jetty in Breton Sound, with a signed FONSI | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** |

<table>
<tr>
<td>FY 1992 (O&M Dredging Events based on start date)
<table>
<tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr>
<tr><td>91-C-0115</td><td>3,895,602</td></tr>
<tr><td>92</td><td>429,542</td></tr>
<tr><td>92-C-0053</td><td>10,000,000</td></tr>
<tr><td>92-C-0084</td><td>120,085</td></tr>
<tr><td>92-C-0085</td><td>1,667,758</td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
<tr>
<td>July 10, 1992 EA #162, entitled “Mississippi River – Gulf Outlet, St. Bernard and Plaquemines Parishes, LA - Marsh Enhancement/ Creation and Berm Construction”, with a signed FONSI</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
</tr>
<tr>
<td>FY 1993 (O&M Dredging Events based on start date)
<table>
<tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr>
<tr><td>93-C-0028</td><td>4,620,004</td></tr>
<tr><td>93-C-0082</td><td>11,141,950</td></tr>
<tr><td>93-C-0100</td><td>163,235</td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
</table>

<table>
<tr>
<td>October 6, 1993<br>In an internal memo the Corps concluded that any necessary shore protection remedial activity would require alerting Congress of the environmental concerns inherent in the MRGO via a full [statutorily mandated] EIS.</td>
<td>The Corps was required to prepare “Supplements” to its EIS whenever there were “substantial changes in the proposed action that are relevant to environmental concerns” or where there are “significant new circumstances or information” relevant to environmental concerns and bearing on the proposed action or its impacts. 40 CFR §§ 1502.9 (c)(i) & (ii)<br>NEPA further mandates that the USACE had a continuing obligation to “reassess ongoing projects to avoid or minimize adverse environmental effects”. 40 CFR § 1500.13</td>
<td>By at least 1993, the USACE in considering bank protection measures, concluded that a SEIS was required.<br><br>NEPA affords no discretion as to whether a SEIS is triggered, yet no SEIS was ever prepared or submitted by the USACE.</td>
<td>Congress was not given an opportunity to give serious weight and consideration to environmental factors prior to commencement of this project.</td>
</tr>
<tr>
<td>FY 1994 (O&M Dredging Events based on start date)
<table>
<tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr>
<tr><td>94</td><td>810,777</td></tr>
<tr><td>94-C-0067</td><td>4,599,581</td></tr>
<tr><td>94-C-0098</td><td>1,570,182</td></tr>
<tr><td></td><td></td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
</table>

<table>
<tr>
<td>January 1994 Mississippi River-Gulf Outlet, St. Bernard Parish, La. Bank Erosion Reconnaissance Report</td>
<td>The Corps was required to prepare “Supplements” to its EIS whenever there were “substantial changes in the proposed action that are relevant to environmental concerns” or where there are “significant new circumstances or information” relevant to environmental concerns and bearing on the proposed action or its impacts. 40 CFR §§ 1502.9 (c)(i) & (ii)<br>NEPA further mandates that the USACE had a continuing obligation to “reassess ongoing projects to avoid or minimize adverse environmental effects”. 40 CFR § 1500.13</td>
<td>No EIS or SEIS was ever prepared or submitted.</td>
<td>Congress was not given an opportunity to give serious weight and consideration to environmental factors prior to commencement of this project.</td>
</tr>
<tr>
<td>FY 1995 (O&M Dredging Events based on start date)
<table>
<tr><th>Contract/FY for Gvt dredging</th><th>CY's</th></tr>
<tr><td>95</td><td>1,564,619</td></tr>
<tr><td>95-C-0036</td><td>3,797,557</td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
<tr>
<td>FY 1996 (O&M Dredging Events based on start date)
<table>
<tr><th>Contract/FY for Gvt dredging</th><th>CY's</th></tr>
<tr><td>95-C-0101</td><td>1,628,719</td></tr>
<tr><td>96</td><td>2,230,000</td></tr>
<tr><td>96-C-0018</td><td>3,208,648</td></tr>
<tr><td>96-C-0028</td><td>1,446,034</td></tr>
<tr><td>96-C-0068</td><td>1,965,314</td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
</table>

| | | | |
|---|---|---|---|
| July 30, 1996<br>EA #244 MR-GO Back Dike (CWPPRA), Disposal Area Marsh Protection, Back<br>Dike, with a signed FONSI | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** |
| September 24, 1996<br>EA #247, entitled "MR-GO St. Bernard Parish, LA, Bank Stabilization Miles 55.0 to 56.1", with a signed FONSI | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** |
| 1996 Legislative Request Corps amended its initial legislative authorization again for the MRGO (WRDA § 326) | Within 30 days of a legislative request, the Corps was statutorily mandated to furnish a detailed EIS to Congress and shall include as serious and thorough evaluation of environmental mitigation options. 40 CFR § 1508.25 (b), § 1502.16(h), §1505.2(c). | In violation of NEPA's mandate, the Corps filed no detailed environmental report outlining the direct, indirect or cumulative effects of the MRGO on the human environment to accompany its request for reauthorization. The only environmental documents filed contemporaneous with this legislation were two FONSIs that permitted them to act without Congressional review. | Congress was not given an opportunity to give serious weight and consideration to environmental factors prior to authorizing these 18 dredging events. |

<table>
<tr>
<td>1996-1997<br>The 1996 Foreshore Protection Evaluation Report recognized the erosion and disappearance of marsh at higher than anticipated rates caused by operation of the MRGO and the 1997 "Feasibility Report Wetlands Creation Protection Project MRGO" recognized that larger than anticipated vessels were causing impacts on the marshes adjacent to the channel far greater than had been earlier envisioned.</td>
<td>The Corps was required to prepare "Supplements" to its EIS whenever there were "substantial changes in the proposed action that are relevant to environmental concerns" or where there are "significant new circumstances or information" relevant to environmental concerns and bearing on the proposed action or its impacts. 40 CFR §§ 1502.9 (c)(i) & (ii)<br>NEPA further mandates that the USACE had a continuing obligation to "reassess ongoing projects to avoid or minimize adverse environmental effects". 40 CFR § 1500.13</td>
<td>Despite these "significant new circumstances or information" mandating a SEIS, no SEIS was ever prepared or submitted.</td>
<td>By failing to honor their NEPA obligations, the Corps continued to operate & maintain (O&M) the MRGO causing direct negative impact on substantially increasing oceanographic stresses on LPV flood control structures due to earlier onset and more prolonged duration of surge above critical elevation. (PUF 41-43); significantly increasing the rate of surge water introduction. (PUF 49, 58).</td>
</tr>
<tr>
<td>FY 1997 (O&M Dredging Events based on start date)
<table>
<tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr>
<tr><td>97</td><td>5,993,568</td></tr>
<tr><td>97-C-0003</td><td>924,501</td></tr>
<tr><td>97-C-0004</td><td>853,860</td></tr>
<tr><td>97-C-0006</td><td>1,062,981</td></tr>
<tr><td>97-C-0009</td><td>1,708,242</td></tr>
<tr><td>97-C-0011</td><td>1,167,553</td></tr>
<tr><td>97-C-0042</td><td>6,669,461</td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
<tr>
<td>February 12, 1997<br>EA #255, entitled "MR-GO, LA, Wetland Creation, Miles 15.0 to 23.0, St. Bernard and Plaquemines Parish, LA", with a signed FONSI</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
</tr>
</table>

<table>
<tr><td></td><td></td><td></td><td></td></tr>
<tr><td>1997<br>Feasibility Report Wetlands Creation and Protection Project MRGO, Mile 14 to Mile 11<br><br>This report confirmed that approximately 4,200 acres of “highly productive marsh adjacent to the channel had been lost due to erosion occasioned by the passage of large displacement vessel traffic”.</td><td>The Corps was required to prepare “Supplements” to its EIS whenever there were “substantial changes in the proposed action that are relevant to environmental concerns” or where there are “significant new circumstances or information” relevant to environmental concerns and bearing on the proposed action or its impacts. 40 CFR §§ 1502.9 (c)(i) & (ii)<br>NEPA further mandates that the USACE had a continuing obligation to “reassess ongoing projects to avoid or minimize adverse environmental effects”. 40 CFR § 1500.13</td><td>In violation of NEPA the Corps did not prepare an EIS or SEIS.</td><td>The Corps’ failure to comply with NEPAs mandated disclosures and reporting requirements denied decision makers an opportunity to evaluate alternatives and permitted the continued implementation of dangerously destructive O&M activities.</td></tr>
<tr><td>FY 1998 (O&M Dredging Events based on start date)<table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>97-C-0085</td><td>1,468,329</td></tr><tr><td>98</td><td>2,709,353</td></tr><tr><td>98-C-0008</td><td>358,433</td></tr><tr><td></td><td></td></tr></table></td><td>See FY 1970</td><td>See FY 1970</td><td>See FY 1970</td></tr>
<tr><td>March 24, 1998<br>EA #269, entitled “MR-GO, LA, South of Lake Borgne Additional Disposal Areas, St. Bernard Parish, LA”, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
<tr><td></td><td></td><td></td><td></td></tr>
</table>

<table>
<tr>
<td>July 10, 1998<br>EA #274 MR-GO, Additional Disposal Areas, Hopedale Marshes, with a signed FONSI</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
</tr>
<tr>
<td>FY 1999 (O&M Dredging Events based on start date)
<table>
<tr><th>Contract/FY for Gvt dredging</th><th>CY's</th></tr>
<tr><td>98-C-0070</td><td>18,259,523</td></tr>
<tr><td>99</td><td>190,101</td></tr>
<tr><td>99</td><td>730,940</td></tr>
<tr><td>99-C-0001</td><td>1,539,076</td></tr>
<tr><td>99-C-0004</td><td>1,350,694</td></tr>
<tr><td>99-C-0015</td><td>1,368,004</td></tr>
<tr><td>99-C-0019</td><td>1,375,612</td></tr>
<tr><td>99-C-0030</td><td>2,324,797</td></tr>
<tr><td>99-C-0055</td><td>5,575,313</td></tr>
<tr><td>99-C-0056</td><td>1,246,806</td></tr>
</table>
</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
<td>See FY 1970</td>
</tr>
<tr>
<td>June 17, 1999<br>EA #294, entitled "Beneficial Use of Dredged Material for Restoration of Breton Island, Plaquemines Parish, Louisiana", with a signed FONSI</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
</tr>
<tr>
<td>November 8, 1999<br>EA #288, entitled “MR-GO Mile 43 to Mile 41 North Bank Stabilization, St. Bernard Parish, LA”, with a signed FONSI</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
<td>See EA#15 (1980)</td>
</tr>
</table>

| | | | |
|---|---|---|---|
| FY 2000 (O&M Dredging Events based on start date)<br><table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>00-</td><td>499,523</td></tr><tr><td>00-</td><td>1,187,245</td></tr><tr><td></td><td></td></tr></table> | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |
| June 2000<br>EA #269-B, entitled "MR-GO, South of Lake Borgne Additional Disposal Areas plus Deflection Dike and Floatation Channels, St. Bernard Parish, LA", with a signed FONSI | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** |
| FY 2001 (O&M Dredging Events based on start date)<br><table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>00-C-0070</td><td>1,892,167</td></tr><tr><td>01-</td><td>213,190</td></tr><tr><td>01-</td><td>1,403,767</td></tr><tr><td>01-C-0015</td><td>5,897,072</td></tr><tr><td>01-C-0036</td><td>308,375</td></tr><tr><td>01-C-0051</td><td>3,939,336</td></tr><tr><td></td><td></td></tr></table> | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |

| | | | |
|---|---|---|---|
| September 6, 2001<br>EA #277, entitled "MR-GO, LA, Shell Beach Disposal Areas, St. Bernard Parish,<br>LA", with a signed FONSI | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** |
| October 2, 2001<br>EA #269-C, entitled "MR-GO, LA, Construction of Flotation Channels Miles 51.0 to 48.0, St. Bernard Parish, LA", with a signed FONSI | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** |
| October 2, 2001<br>EA #277-A, entitled "MR-GO, LA, Construction of Flotation Channels Miles 49.0 to 38.0, St. Bernard Parish, LA", with a signed FONSI | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** | ***See EA#15 (1980)*** |
| FY 2002 (O&M Dredging Events based on start date)<br>Contract/FY for Gvt dredging — CY's<br>02- — 279,569<br>02-C-0008 — 215,936<br>02-C-0014 — 1,676,583<br>02-C-0032 — 2,403,223<br>02-C-0069 — 493,165 | ***See FY 1970*** | ***See FY 1970*** | ***See FY 1970*** |

<table>
<tr><td>August 15, 2002<br>EA #349, entitled “MR-GO, Miles 32-27, Additional Disposal Areas - Hopedale Marshes, St. Bernard Parish, LA”, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
<tr><td>FY 2003 (O&M Dredging Events based on start date)<br><table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>03-</td><td>242,443</td></tr><tr><td>03-C-0006</td><td>2,370,240</td></tr><tr><td>03-C-0013</td><td>2,064,603</td></tr><tr><td>03-C-0055</td><td>7,709,434</td></tr><tr><td></td><td></td></tr></table></td><td>See FY 1970</td><td>See FY 1970</td><td>See FY 1970</td></tr>
<tr><td>January 29, 2003<br>EA #361, entitled “MR-GO, LA, Test Installation of Articulated Concrete Mattressing, Miles 39.0 to38.0”, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
<tr><td>June 30, 2003<br>EA #355 MR-GO Mile 27.0 to – 0, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
</table>

<table>
<tr><td>FY 2004 (O&M Dredging Events based on start date)<br><table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>04-</td><td>474,296</td></tr><tr><td>04-</td><td>216,760</td></tr><tr><td>04-C-0018</td><td>1,239,715</td></tr><tr><td>04-C-0032</td><td>1,898,348</td></tr><tr><td>04-C-0056</td><td>1,281,838</td></tr></table></td><td>See FY 1970</td><td>See FY 1970</td><td>See FY 1970</td></tr>
<tr><td>February 9, 2004<br>EA #354, entitled “MR-GO, Additional Disposal Area Designation Miles 66.0 to 49.0, St. Bernard Parish, LA”, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
<tr><td>March 22, 2004<br>EA #403, entitled “MR-GO, Hopper Dredging Miles 27.0 To 66.0”, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
<tr><td>October 19 2004EA #411, entitled “MR-GO, Installation of Articulated Concrete Mattressing, Miles 37.4 to 36.5, St. Bernard Parish, Louisiana”, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
</table>

<table>
<tr><td>December 16, 2004<br>EA #402, entitled “Lake Borgne – MR-GO, Shoreline Protection Project, St. Bernard Parish, LA”, with a signed FONSI</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td><td>See EA#15 (1980)</td></tr>
<tr><td>FY 2005 (O&M Dredging Events based on start date)<table><tr><td>Contract/FY for Gvt dredging</td><td>CY's</td></tr><tr><td>04-C-0057</td><td>2,193,439</td></tr><tr><td>05-C-0009</td><td>5,407,577</td></tr><tr><td>05-</td><td>257,536</td></tr><tr><td>05-</td><td>503,633*</td></tr></table><br>*Completed at the mouth of the MRGO, one day before Hurricane Katrina</td><td>See FY 1970</td><td>See FY 1970</td><td>See FY 1970</td></tr>
<tr><td>June 2005<br>USACE Internal Memo, over the course of the history of the MRGO the Corps initiated and completed 147 dredging events removing over 492,000,000 cy of material; which individually and cumulatively were “significant circumstances” that the Corps failed to take a “hard look” at and never prepared a Supplemental EIS.</td><td>The Corps was under a statutory mandate to thoroughly analyze in one comprehensive EIS the direct, foreseeable indirect and cumulative impacts of 147 separate dredging events and the operation of vessel traffic along the MRGO.<br><br>“The cumulative impact of all the changes that have already occurred, since preparation of the 1976 EIS, alone constituted a significant impact on the environment, compared to the O&M plan described in the EIS, although there has been no supplemental EIS (SEIS) prepared. (PUF 119).</td><td>The systematic refusal to present Congress with the full picture of the environmental impacts of the MRGO on the human environment denied Congress the opportunity to knowingly consent to the Corps’ actions. As the Corps admitted in 2005, the MRGO project, “as implemented”, was not what had been proposed and authorized, and therefore the Corps’ continuing O&M conduct was in direct violation of NEPAs statutory mandates.</td><td>Discretion cannot be properly exercised where decision-makers have been denied and adequate environmental record under NEPA. The Corps’ violations of NEPA caused the harm that Congress specifically sought to prevent viz. the inability to make informed decisions regarding government actions that impact the quality of the human environment. This allowed the Corps to continue its tortious O&M without scrutiny and denied Congress the opportunity to mandate corrective measures that would have avoided or materially reduced the catastrophic flooding.</td></tr>
</table>

| | | | |
|---|---|---|---|
| | | | |