IN RE: KATRINA CANAL BREACHES  CIVIL ACTION
CONSOLIDATED LITIGATION

NO. 05-4182

PERTAINS TO LEVEE:  SECTION "K"(2)

MORIAL,  No. 07-4551
WHITE,    No. 07-4553
METROLAB INC. OF PITTSBURG, No. 07-4557
SAVOY PLACE ASSOCIATES, LP No. 07-4558
MINTZ, No: 07-4559
HURWITZ MINTZ FINES FURNITURE
   STORE SOUTH, L.L.C. No. 07-4560
DOLEY, No. 07-4561
MORIAL, No. 07-4563
DILLARD UNIVERSITY, No. 07-4948
ST. AUGUSTINE HIGH SCHOOL, No. 07-4949
HARRISON, No. 07-4952
LIBERTY BANK & TRUST CO., No. 07-4953
GERDES, No. 07-4957
UNION LTD. PARTNERSHIP, No.  07-4959
HERTZ 909 POYDRAS, LLC, No. 07-4960
PRYTANIA MEDICAL COMPLEX, OWNERS,
    No.  07-4963
PRAT, No. 07-4964
BERENSON, No. 07-4966
ADLER, No.  07-4967
ABUNDANCE SQUARE ASSOCIATES,
LP, No.  07-4869
REDEMPTORIST LTD PARTNERSHIP,
   No. 07-4970
OMEGA HOSPITAL LLC, No. 07-4971
DOLEY, No. 07-4972
WELLS, No. 07-4973
ROBERT, No. 07-4974
MILLER, No. 07-4975
ENTERCOM COMMUNICATION CORP,
   No. 07-4976
ADLER, No. 07-4977
SMYTH, No. 07-4978
WHITE III LLC, No. 07-4979
HAYDEL, No. 07-4980

PATTERSON, NO. 07-4981
TREASURE VILLAGE ASSOCIATES,
  No. 07-4982
DOMINION N.O. CENTRE LLC, No. 07-4984
BAGNERIS, No. 07-4985
MORIAL, No. 07-4988
LOUISIANA INDEPENDENT FEDERATION
  of ELECTORS, INC., No. 07-4989
TANNER, No. 07-4990
ADLER, No. 07-4991
SOUTHPOINT TECHNOLOGIES, No. 07-4992
ADLER'S SPECIAL ACCOUNT, No. 07-4993
BERENSON, No. 07-4994
CII CARBON LLC, No. 07-4995
TOURO INFIRMARY, No. 07-4996
IMPERIAL TRADING COMPANY, No. 07-4997
PHYSICIAN MANAGEMENT SERVICES
  OF LOUISIANA LLC, No. 07-4998
DOLEY, No. 07-5000
ROBERT, No. 07-5001
SHOPS AND GARAGE AT CANAL PLACE,
  No. 07-5002
GREYSTAR DEVELOPMENT &
CONSTRUCTION LLC, No. 07-5003
CAMBRIDGE REALTY WEST LLC,
No. 07-5004
MAJESTIC LIFE INSURANCE CO.,
No. 07-5005
WHITE, 07-5006
UNITED RESTAURANT ENTITIES
  LLC, No. 07-5008
DAVIS, No. 07-5009
WETCO RESTAURANT GROUP LLC,
  No. 07-5012
DOLEY, No. 07-5014
MAJESTIC MORTUARY SERVICE, INC.
  No. 07-5015
UNIVERSAL HEALTH SERVICES, INC.
  No. 07-5016
REID, No. 07-5018
XAVIER UNIVERSITY OF LOUISIANA,
  No. 07-5018
EMBRY, No. 07-5019
GREEN-JOHNSON, No. 07-5155

CURTIS, No. 07-5193
UNIVERSAL HEALTH SERVICES, INC.
  No. 07-5254
UNIVERSAL HEALTH SERVICES,
  No. 07-5286
DAVIS, No. 07-5314
OMEGA HOSPITAL LLC, No. 07-5315
GERDES, No. 07-5316
ABUNDANCE SQUARE ASSOCIATION
  LP, No. 07-5317
UNION LTD PARTNERSHIP, No. 07-5318
DOLEY, No. 07-5319
SHOPS AND GARAGE AT CANAL PLACE,
  No. 07-5321
WELLS, No. 07-5322
IMPERIAL TRADING COMPANY, No. 07-5323
PHYSICIAN MGT. SERVICES OF LA.
  No. 07-5324
BERENSON, NO. 07-5325
ST. AUGUSTINE HIGH SCHOOL, No. 07-5326
ADLER, No. 07-5329
PRYTANIA MEDICAL COMPLEX
  OWNERS ASSOCIATION, No. 07-5334
LOUISIANA INDEPENDENT FEDERATION
  OF ELECTORS, INC., 07-5338
WETCO RESTAURANT GROUP LLC,
  No. 07-5339
CAMBRIDGE REALTY WEST LLC,
  No. 07-5340
ROBERT, No. 07-5341
UNITED RESTAURANT ENTITIES LLC,
  No. 07-5342
ADLER'S SPECIAL ACCOUNT, No. 07-5345
MILLER, NO. 07-5346
LIBERTY BANK & TRUST CO., No. 07-5347
DOLEY, No. 07-5348
GREYSTAR DEVELOPMENT & CONSTRUCTION
  LP, No. 07-5349
UNIVERSAL HEALTH SERVICES, INC.,
  No. 07-5350
TREASURE VILLAGE ASSOCIATES LP,
  No. 07-5351
TOURO INFIRMARY, No. 07-5352
EMBREY, No. 07-5353

**REDEMPTORIST LTD PARTNERSHIP,**
  No. 07-5354
**CII CARBON, No. 07-5355**
**WHITE, No. 07-5356**
**DILLARD UNIVERSITY, No. 07-5359**
**WHITE, No. 07-5360**
**HERTZ 909 POYDRAS LLC, No. 07-5361**
**MORIAL, No. 07-5362**
**PRAT, No. 07-5363**
**DOMINION/NEW ORLEANS CENTRE**
 **LLC, No. 07-5364**
**BERENSON, No. 07-5365**
**XAVIER UNIVERSITY OF LOUISIANA,**
  No. 07-5367
**DOLEY, NO. 07-5368**
**ADLER, No. 07-5369**
**SOUTHPOINT TECNOLOGIES LLC,**
  No. 07-5371
**GREEN-JOHNSON, No. 07-5373**
**HAYDEL, No. 07-5374**
**ENTERCOM COMMUNICATIONS**
  **CORP., No. 07-5375**
**ADLER, No. 07-5376**
**BAGNERIS, No. 07-5378**
**HARRISON, No. 07-5494**
**REID, No. 07-5495**
**SMYTHE, No. 07-5496**

## ORDER AND OPINION

Before the Court in each of the captioned cases is a "Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)(Failure to State a Claim)" filed on behalf of defendant CSX Transportation, Inc. ("CSXT").[1] Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motions.

1. BACKGROUND

---

[1] Doc. 10690.

4

The plaintiffs in the 116 captioned cases are individuals and business entities that sustained damage as a result of Hurricane Katrina and the failure of the levees which resulted in catastrophic flooding in the Greater New Orleans Metropolitan area. These plaintiffs filed suit against a number of defendants,[1] including CSX Transportation, Inc. ("CSXT") and its parent company CSX Corporation. The allegations against the CSX entities[2] in each complaint are virtually identical and state:[3]

> On or about September 11, 2004, a New Orleans Public Railroad Train derailment caused a thirty-two and a half foot wide gap in Floodgate W-30, which is part of the floodwall system situated immediately west of the Industrial Canal.
>
> On December 14, 2004, PBR paid OLD $427,387.96, the full estimated cost of the reconstruction of Floodgate W-30, but on information and belief, both PBR and OLD failed to assure these repairs were made prior to the August 2005 catastrophe giving rise to this action, resulting in extensive damage to [plaintiff's] property.
>
> Further, upon information and belief CSX designed and constructed a railroad crossing at or near the Industrial Canal's flood protection structures. In doing so, CSX utilized highly erodible, lightweight, and/or porous material, including, but not limited to, "shell sand" and gravel, which caused CSX's structure to be significantly weaker than the surrounding flood protection structures. Upon information and belief, CSX also failed to install a "sheet pile cutoff" or similar device to prevent or limit erosion of its structure. Indeed, CSX could

---

[1] Plaintiffs also named as defendants: United States of America, Board of Commissioners of the Orleans Levee District, Board of Commissioners of the East Jefferson Levee District, Sewerage and Water Board of New Orleans, St. Paul Fire & Marine Insurance Company, National Union Fire Insurance Company, National Union Fire Insurance Company of Pittsburgh, Board of Commissioners for the Port of New Orleans, and The Public Belt Railroad Commission for the City of New Orleans.

[2] The allegations in the complaints refer to "CSX" which includes both CSX Corporation and CSX Transportation, Inc..

[3] The allegations appear in different paragraphs of the various suits. Therefore, paragraph numbers will not be used to avoid confusion.

> have prevented the failure of its structure at minimal cost by installing concrete "sheet pads" or other erosion protection devices at the base of the I-walls of the Industrial Canal.
>
> . . .
>
> The Corps, PNO, CSX, and PBR had a legal responsibility and duty to [plaintiffs] to cause, allow, and/or conduct the design and construction of the levees and flood walls of the Industrial Canal in a manner that would not compromise the safety of the canal's levee/flood wall system. As discussed *supra*, the Corps, PNO, CSX, and PBR knew or should have known of the deficiencies in the design, construction, and maintenance of the Industrial Canal.
>
> . . .
>
> The Corps, CSX, PBR and PNO be held liable for all of [plaintiffs's] damages caused by their negligence in the design, construction, and maintenance of the Industrial Canal, . . ..

Doc. 1 .

There is no significant difference between the allegations in these 116 complaints and the allegations in the "Superseding Master Consolidated Class Action Complaint" filed in *O'Dwyer*, No. 05-4181, *Tauzin*, No. 06-0020, *O'Dwyer*, No. 06-4389, *Adams,* No. 06-4634, and *O'Dwyer*, 06-5786 which are consolidated in *In Re: Katrina Canal Breaches Consolidated Litigation*, No. 05-4182.

CSXT seeks to dismiss plaintiffs' state law negligence claims against it asserting that it had no duty to protect the plaintiffs from flooding. Additionally, CSXT contends that even if it were negligent in a manner causing damage to the plaintiffs, that plaintiffs' claims must nonetheless be dismissed because the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. §10101, *et seq.* ("ICCTA") and the Federal Railroad Safety Act, 49 U.S.C. §20101, *et seq.* ("FRSA") preempt plaintiffs' state law claims.

LAW AND ANALYSIS

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank*, *N.A.,* 781 F.2d 440, 442 (5th Cir. 1980). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, ___, 127 S.Ct. 1955, 1969 (2007), the Supreme Court "retired" the *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Id.* at ___, 127 S.Ct. at 1969. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In Re: Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at ___, 127 S.Ct. at 1974. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at ___, 127 S.Ct. at 1965. "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997) quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969).

a) Duty

The Court has previously granted a motion to dismiss substantially similar allegations against CSXT brought by residents and citizens of Orleans Parish damaged by flooding following Hurricane Katrina and the failure of the levees concluding, after a thorough analysis of "duty" under Louisiana law, that CSXT had no general duty under Louisiana law to protect those plaintiffs from flooding. *In Re: Katrina Canal Breaches Consolidated Litigation*, No. 05-5182 (E.D. La. December 27, 2007), Doc. 9856. The allegations against CSXT in this case cannot be legally distinguished from those in the prior case. Because the Court's prior analysis of "duty" in the context of Louisiana Civil Code Article 2315[4] is equally applicable in this case to plaintiffs' claims brought pursuant to Article 2315, the Court grants CSXT's motion with respect to state law negligence claims brought pursuant to Civil Code Article 2315 for failure to protect plaintiffs from flooding.

Plaintiffs urge that CSXT, a common carrier, owed plaintiffs a duty of care to operate its railway cars in a safe manner, and that CSXT breached that duty when "a locomotive operated by one of its employees crashed into a floodgate designed to protect the people and businesses in New Orleans from flood and rising water." Doc. 11194, p. 8. Contrary to plaintiffs' assertion, their complaints do not contain an allegation that a CSXT employee was operating the train that impacted Floodgate W-30. Thus, plaintiffs' contention is not persuasive.

Moreover, other plaintiffs in this consolidated litigation have unsuccessfully sought to recover damages from CSXT based on allegations that a CSXT employee was operating the train

---

[4] Article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

that impacted Floodgate W-30 in September, 2004.[5] In those cases, the Court granted CSXT's motion for summary judgment on plaintiffs' claims relying on the declaration of Tom May, the CSXT Terminal Manager-New Orleans, stating that "CSXT employees were not operating the train that derailed and damaged Floodgate W-30 on September 11, 2004, nor was the train in CSXT's custody[]" and the affidavit of Jim Bridger, the General Manager of the Public Belt Railroad Commission for the City of New Orleans (PBRC) which states in pertinent part that:

- "On September 11, 2004, some of the rail cars in a train operated by Public Belt employees derailed near the Industrial Canal in New Orleans, Louisiana";

- "At least one of the derailed cars struck and damaged Floodgate W-30 and the support system of that floodgate, causing damage to the structure";

- On December 10, 2004, PBRC issued a check in the amount of $427,387.96 payable to Orleans Levee Board for the estimated cost to reconstruct Floodgate W-30; . . ..

Based on that evidence the Court granted CSXT's motion for summary judgment concluding that CSXT had demonstrated the absence of a genuine issue of material fact concerning whether it was operating the train at the time the train struck Floodgate W-30. *Bourgeois v. The Port of New Orleans*, No. 06- 5131, *Ferdinand v. The Port of New Orleans*, No. 06-5132, Doc. 11551.

Because it has previously been demonstrated to the Court that CSXT was not operating the train that hit the Floodgate W-30, permitting plaintiffs to amend their complaints to allege a claim against CSXT for negligent operation of the train would be futile. Therefore, plaintiffs need not be offered the opportunity to amend their complaints to allege such a claim. See *Briggs v. Mississippi*,

---

[5]*Bourgeois v. The Port of New Orleans,* No. 06-5132; *Ferdinand v. The Port of New Orleans*, No. 06-5132.

331 F.3d 499, 508 (5th Cir. 2003).

Plaintiffs also urge that Louisiana Civil Code Article 2317.1[6] and La. Rev. Stat. 38:§223[7] impose a duty on CSXT with respect to their railroad tracks and the design and construction of the roadbed and other areas of the track.[8] No extensive analysis of these contentions is necessary. Even assuming that those provisions of Louisiana law impose a duty on CSXT, as urged by plaintiffs, for the reasons discussed hereinafter, any state law negligence claims arising from a breach of those

---

[6]Article 2317.1 provides in pertinent part:
> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice or defect, only upon a showing that he knew, or in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

[7] The statute provides:
> No person shall:
>
> Place or cause to be placed upon or within six feet of any part of the levees fronting any waterway subject to the control or surveillance of police juries, levee boards, municipal corporations, or other authorized boards or departments any object, material, or matter of any kind or character which obstructs or interferes with the safety of the levees or is an obstacle to the inspection, construction, maintenance, or repair of any levee; or place or cause to be placed any object, structure, material, or matter of any kind or character upon any part of any land which the state or any agency or subdivision thereof may own or acquire by deed, lease, servitude, charge, or otherwise, and through its authorized representative, may donate, grant, or otherwise convey to the United States right-of-way, easements, or other servitudes for the construction, improvement, or maintenance of any flood-control structures or natural or other waterway, which may obstruct or interfere with the improvement or maintenance of such waterway or use of the land for flood-control purposes.

duties would be preempted by ICCTA.

### b) Preemption

CSXT contends that even if it had a duty to protect plaintiffs from flooding that plaintiffs' claims must be dismissed because any state law claims flowing from that duty are preempted by the ICCTA. The Supremacy Clause of the Constitution is the foundation of the federal preemption doctrine. The Supremacy Clause states in pertinent part that "the Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl.2. The Supremacy Clause permits Congress to preempt state law in the legitimate exercise of its legislative authority. *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. 355, 369, 106 S. Ct. 1890, 1989-99, 90 L.Ed.2d 369 (1986).

Federal preemption occurs when Congress expressly prohibits state regulation and the intent of Congress to preempt state law is clear and explicit, when Congress pervasively occupies a field of regulation and thereby implicitly leaves no room for state regulation, or when state law actually conflicts with federal law. *See Friberg v. Kansas City Southern Railway Company*, 276 F.3d 439, 442 (5th Cir. 2001), citing *English v. General Electric Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). Regardless of the type of preemption urged, the preemption analysis "starts with the assumption that the historic police powers of the States are not to be superseded by . . . Federal Act unless that is the clear and manifest purpose of Congress. Accordingly, [t]he purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407. (internal quotation and citation omitted). To put it another way, "[t]he critical question in any pre-emption analysis is always

11

whether Congress intended that federal regulation supersede state law." *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. at 369, 106 S.Ct. at 1899.

With a goal of deregulating the rail transportation industry, ICCTA abolished the Interstate Commerce Commission and replaced it with the Surface Transportation Board. ICCTA granted the Surface Transportation Board exclusive jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance or spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

49 U.S.C. §10501(b). ICCTA includes an express preemption provision which states that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are **exclusive** and **preempt** the remedies provided under Federal or State law." 49 U.S.C. §10501(b)(2) (emphasis added).

"It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *CSX Transportation, Inc. v. Georgia Public Service Commission*, 944 F.Supp. 1573, 1581 (N.D. Ga. 1996). The preemption provision of ICCTA "is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent. *Friberg v. Kansas City Southern Railway Company*, 267 F.3d at 443. Nevertheless, the reach of the preemption provision is not unlimited. ICCTA's preemption of state law remedies is restricted to those "with respect to regulation of rail transportation." 49 U.S.C. §10501(b)(2).

Plaintiffs' complaints challenge CSXT's design and construction of "a railroad crossing at

12

or near the Industrial Canal's flood protection structures." In their "Opposition to CSX Transportation, Inc.'s Motion to Dismiss" plaintiffs' state that their "claims do not arise from the negligent design and construction of railroad crossings, **which is the intersection of a railway line with a road, street, or bridge.** Rather, plaintiffs' claims arise in part from the negligent design and construction of the roadbed and other areas of the track that caused flooding to their property." Doc. 11194, p. 11. The preemption analysis is the same for state law claims arising from negligent design and construction of railroad crossings and from negligent design and construction of roadbeds and other areas of track. The relevant issue is whether a state law claim challenging the design and construction of a railroad crossing, railroad tracks, or roadbed involves a state law remedy "with respect to regulation of rail transportation." ICCTA broadly defines "transportation" to include:

> (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use, and
>
> (B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange or passengers and property.

49 U.S.C. §10102(9). There can be no doubt that a railroad crossing, railroad tracks, and a roadbed for track constitute "property . . . . related to the movement or passengers or property . . . by rail." Therefore, ICCTA's "transportation" criterion is satisfied.

Because ICCTA does not define "regulation," the Court must look elsewhere to determine its meaning. "Regulation" has been defined as the "act or process of controlling by rule or restriction." Blacks Law Dictionary (8th ed. 2004). The application of state law negligence principles to assess and evaluate the suitability of the design and construction of a railroad crossing,

13

railroad tracks, and roadbed for railroad tracks qualifies as an attempt at state law "regulation" in respect to rail transportation.

In analyzing the preemptive scope of ICCTA, the Surface Transportation Board has held that:

> [T]he courts have found two broad categories of state and local actions to be preempted regardless of the context or rationale for the action. The first is any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized.
>
> Second, there can be no state or local regulation of matters directly regulated by the Board - such as the construction, operation or abandonment of rail lines . . ..

*CSX Transportation, Inc.-Petition for Declaratory Order,* 2005 WL 1024490, at *2-*4 (Surface Transportation Bd. May 3, 2005) (citations and footnote omitted). The design and construction of a railroad crossing and the roadbed for tracks is necessarily inextricably intertwined with the design and construction of the railroad tracks located at the crossing. Additionally, the design and construction of the railroad crossing, tracks, and roadbed relates directly to CSXT's rail activity. ICCTA makes it clear that the Surface Transportation Board has exclusive jurisdiction over the "construction" of railroad tracks. Thus, the plaintiffs' claim that CSXT negligently designed and constructed the railroad crossing, tracks, and roadbed is preempted.

The Court's analysis is consistent with that applied in other cases that have concluded that ICCTA preempts state law negligence claims. In *Maynard v. CSX Transportation, Inc.*, 360 F.Supp. 836 (E.D. Ky. 2004). plaintiffs, individuals who owned land in the immediate vicinity of a side track located on property owned by a railroad, brought state law claims related to the use of the side track. Among other things, plaintiffs urged that the railroad's use of a side track blocked

access to their property for excessive time periods, and that the railroad by virtue of the side track negligently permitted drainage from the adjoining properties to escape onto their property thereby diminishing the value of their property. The district court concluded that "[b]ecause it is CSX's construction and operation of the side tracks . . . which gave rise to Plaintiffs' claims, those claims are expressly preempted by the ICCTA." *Id.* at 842. *See also Friberg v. Kansas City Southern Railway Company*, 267 F.3d at 444 ( plaintiffs's state law negligence claims arising from railroad's alleged obstruction of a primary road due to its use of a side track preempted by ICCTA).

The Court acknowledges that the courts have not been unanimous in concluding that all state law claims urged against a railroad are preempted. Where plaintiffs have asserted against a railroad a state law claim that does not directly relate to railroad operations, the state law claim has been found to not be preempted. In *Rushing v. Kansas City Southern Railway, Co.,* 194 F.Supp.2d 493 (S.D. Miss. 2001), plaintiffs, landowners living in close proximity to a railroad switching station, alleged that an earthen berm constructed on the grounds of the switching station had damaged their property because the berm caused pooling of rainwater on the plaintiff's property. Relying upon state nuisance and negligence law, plaintiffs sought an order requiring the defendant railroad to modify the berm. The defendant railroad admitted that it had constructed the berm "to reflect and absorb noise emissions originating from the rail yard." *Id.* at 501. The district court concluded that ICCTA did not preempt the plaintiffs' state law claim, in part, because the design and construction of the berm, did not "directly relate to the manner in which the Defendant conducts its switching operations." *Id.* Here however, unlike in *Rushing,* plaintiffs' claims of negligence resulting from the design and construction of the railroad crossing relate directly to CSXT's operations at the railroad crossing. Thus, this case is readily distinguished from *Rushing*.

15

This case can also be distinguished from *Emerson v. Kansas City So. Railway*, 503 F.3d 1126, 1131 (10th Cir. 2007), cited by plaintiffs in support of their contention that their claims are not preempted by ICCTA. In *Emerson* the plaintiffs brought a state law claim seeking to recover damages resulting from flooding alleged to have been caused as a result of the railroad discarding old rail road ties into a wastewater ditch adjacent to the tracks and failing to maintain the ditch. The *Emerson* Court concluded that "[t]hese acts (or failure to act) are not instrumentalities related to the movement of passengers or property. Rather, they are possibly tortious acts committed by a landowner who happens to be a railroad company. Because these acts or omission are not 'transportation' under §10102(9), the ICCTA does not expressly preempt the generally applicable state common law governing the Railroad's disposal of waste and maintenance of the ditch." *Id.* at 1130. Unlike the railroad"s acts in *Emerson*, CSXT's allegedly negligent acts, i.e., the design and construction of a railroad crossing, roadbed, and railroad tracks, is integrally related to "transportation." The claim is preempted.

Additionally, mindful of its obligation to construe a complaint broadly in the light most favorable to the plaintiff, the Court notes that even if plaintiffs' claim is construed as one to enforce the state's traditional police power to protect the health and safety of its citizens, the claim is preempted by ICCTA. "Congress made no blanket exception for a state's police power when describing the ICCTA's preemption scope." *A&W Properties, Inc. v. The Kansas City Southern Railway Company,* 200 S.W.3d 342, 347 (Tex. App. 2006). "[W]here cases have made reference to a state's police power in the course of ICCTA preemption analysis, the premise for the discussion is inevitably that the state retains its traditional police power in terms of public health and safety *except* where the state's actions regulate rail transportation." *Id*. (collecting cases).

16

Accordingly, CSXT's motion to dismiss is GRANTED.[9]

New Orleans, Louisiana this 26th day of January, 2009.

                                                                  STANWOOD R. DUVAL, JR.
                                                                  UNITED STATES DISTRICT JUDGE

---

[9] Having concluded that plaintiffs have failed to state a claim against CSXT pursuant to Article 2315 and any claim under Article 2317.1 or La. Rev. Stat. 38:§223 would be preempted by ICCTA, the Court need not address CSXT's contention that the plaintiffs' claims are also preempted by the Federal Railroad Safety Act, 49 U.S.C. §20101, *et seq.*("FRSA").