

Circular No. A-87 Revised, 2004 WL 1367024 (O.M.B.)

Executive Office of the President
Office of Management and Budget (O.M.B.)

COST PRINCIPLES FOR STATE, LOCAL, AND INDIAN TRIBAL GOVERNMENTS

May 10, 2004

1. Purpose. This Circular establishes principles and standards for determining costs for Federal awards carried out through grants, cost reimbursement contracts, and other agreements with State and local governments and federally-recognized Indian tribal governments (governmental units).

2. Authority. This Circular is issued under the authority of the Budget and Accounting Act of 1921, as amended; the Budget and Accounting Procedures Act of 1950, as amended; the Chief Financial Officers Act of 1990; Reorganization Plan No. 2 of 1970; and Executive Order No. 11541 ("Prescribing the Duties of the Office of Management and Budget and the Domestic Policy Council in the Executive Office of the President").

3. Background. As part of the governmentwide grant streamlining effort under P.L. 106-107, *Federal Financial Award Management Improvement Act of 1999,* OMB led an interagency workgroup to simplify and make consistent, to the extent feasible, the various rules used to award Federal grants. An interagency task force was established in 2001 to review existing cost principles for Federal awards to State, local, and Indian tribal governments; Colleges and Universities; and Non-Profit organizations. The task force studied Selected Items of Cost in each of the three cost principles to determine which items of costs could be stated consistently and/or more clearly. A proposed revised Circular reflecting the results of those efforts was issued on August 12, 2002 at 67 FR 52558. Extensive comments on the proposed revisions, discussions with interest groups, and related developments were considered in developing this revision.

4. Rescissions. This Circular rescinds and supersedes Circular **A-87**, as amended, issued May 4, 1995.

5. Policy. This Circular establishes principles and standards to provide a uniform approach for determining costs and to promote effective program delivery, efficiency, and better relationships between governmental units and the Federal Government. The principles are for determining allowable costs only. They are not intended to identify the circumstances or to dictate the extent of Federal and governmental unit participation in the financing of a particular Federal award. Provision for profit or other increment above cost is outside the scope of this Circular.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

6. <u>Definitions</u>. Definitions of key terms used in this Circular are contained in At-
tachment A, Section B.

7. <u>Required Action</u>. Agencies responsible for administering programs that involve
cost reimbursement contracts, grants, and other agreements with governmental units
shall issue regulations to implement the provisions of this Circular and its At-
tachments.

8. <u>OMB Responsibilities</u>. The Office of Management and Budget (OMB) will review
agency regulations and implementation of this Circular, and will provide policy in-
terpretations and assistance to insure effective and efficient implementation. Any
exceptions will be subject to approval by OMB. Exceptions will only be made in par-
ticular cases where adequate justification is presented.

9. <u>Information Contact</u>. Further information concerning this Circular may be ob-
tained by contacting the Office of Federal Financial Management, Financial Stan-
dards and Reporting Branch, Office of Management and Budget, Washington, DC 20503,
telephone 202-395-3993.

10. <u>Policy Review Date</u>. OMB Circular **A**-**87** will have a policy review three years
from the date of issuance.

11. <u>Effective Date</u>. This Circular is effective as follows:
   - Except as otherwise provided herein, these rules are effective June 9, 2004.

OMB CIRCULAR NO. **A-87**
COST PRINCIPLES FOR STATE, LOCAL AND INDIAN TRIBAL GOVERNMENTS
TABLE OF CONTENTS

Attachment A - General Principles for Determining Allowable Costs
Attachment B - Selected Items of Cost
Attachment C - State/Local-Wide Central Service Cost Allocation Plans
Attachment D - Public Assistance Cost Allocation Plans
Attachment E - State and Local Indirect Cost Rate Proposals
                                    ATTACHMENT A

                     GENERAL PRINCIPLES FOR DETERMININGALLOWABLE COSTS

TABLE OF CONTENTS

A. Purpose and Scope

1. Objectives

2. Policy guides

3. Application

B. Definitions

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Circular No. A-87 Revised, 2004 WL 1367024 (O.M.B.)                                     Page 3

1. Approval or authorization of the awarding or cognizant Federal agency

2. Award

3. Awarding agency

4. Central service cost allocation plan

5. Claim

6. Cognizant agency

7. Common rule

8. Contract

9. Cost

10. Cost allocation plan

11. Cost objective

12. Federally-recognized Indian tribal government

13. Governmental unit

14. Grantee department or agency

15. Indirect cost rate proposal

16. Local government

17. Public assistance cost allocation plan

18. State

C. Basic Guidelines

1. Factors affecting allowability of costs

2. Reasonable costs

3. Allocable costs

4. Applicable credits

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.



D. Composition of Cost

1. Total cost

2. Classification of costs

E. Direct Costs

1. General

2. Application

3. Minor items

F. Indirect Costs

1. General

2. Cost allocation plans and indirect cost proposals

3. Limitation on indirect or administrative costs

G. Interagency Services

H. Required Certifications

A. <u>Purpose and Scope</u>

1. Objectives. This Attachment establishes principles for determining the allowable costs incurred by State, local, and federally-recognized Indian tribal governments (governmental units) under grants, cost reimbursement contracts, and other agreements with the Federal Government (collectively referred to in this Circular as "Federal awards"). The principles are for the purpose of cost determination and are not intended to identify the circumstances or dictate the extent of Federal or governmental unit participation in the financing of a particular program or project. The principles are designed to provide that Federal awards bear their fair share of cost recognized under these principles except where restricted or prohibited by law. Provision for profit or other increment above cost is outside the scope of this Circular.

2. Policy guides.

a. The application of these principles is based on the fundamental premises that:

(1) Governmental units are responsible for the efficient and effective administration of Federal awards through the application of sound management practices.

(2) Governmental units assume responsibility for administering Federal funds in a manner consistent with underlying agreements, program objectives, and the terms and conditions of the Federal award.

(3) Each governmental unit, in recognition of its own unique combination of staff, facilities, and experience, will have the primary responsibility for employing whatever form of organization and management techniques may be necessary to assure

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

proper and efficient administration of Federal awards.

b. Federal agencies should work with States or localities which wish to test alternative mechanisms for paying costs for administering Federal programs. The Office of Management and Budget (OMB) encourages Federal agencies to test fee-for-service alternatives as a replacement for current cost-reimbursement payment methods in response to the National Performance Review's (NPR) recommendation. The NPR recommended the fee-for-service approach to reduce the burden associated with maintaining systems for charging administrative costs to Federal programs and preparing and approving cost allocation plans. This approach should also increase incentives for administrative efficiencies and improve outcomes.

3. Application.

a. These principles will be applied by all Federal agencies in determining costs incurred by governmental units under Federal awards (including subawards) except those with (1) publicly-financed educational institutions subject to OMB Circular A-21, "Cost Principles for Educational Institutions," and (2) programs administered by publicly-owned hospitals and other providers of medical care that are subject to requirements promulgated by the sponsoring Federal agencies. However, this Circular does apply to all central service and department/agency costs that are allocated or billed to those educational institutions, hospitals, and other providers of medical care or services by other State and local government departments and agencies.

b. All subawards are subject to those Federal cost principles applicable to the particular organization concerned. Thus, if a subaward is to a governmental unit (other than a college, university or hospital), this Circular shall apply; if a subaward is to a commercial organization, the cost principles applicable to commercial organizations shall apply; if a subaward is to a college or university, Circular A-21 shall apply; if a subaward is to a hospital, the cost principles used by the Federal awarding agency for awards to hospitals shall apply, subject to the provisions of subsection A.3.a. of this Attachment; if a subaward is to some other non-profit organization, Circular A-122, "Cost Principles for Non-Profit Organizations," shall apply.

c. These principles shall be used as a guide in the pricing of fixed price arrangements where costs are used in determining the appropriate price.

d. Where a Federal contract awarded to a governmental unit incorporates a Cost Accounting Standards (CAS) clause, the requirements of that clause shall apply. In such cases, the governmental unit and the cognizant Federal agency shall establish an appropriate advance agreement on how the governmental unit will comply with applicable CAS requirements when estimating, accumulating and reporting costs under CAS-covered contracts. The agreement shall indicate that OMB Circular A-87 requirements will be applied to other Federal awards. In all cases, only one set of records needs to be maintained by the governmental unit.

e. Conditional exemptions.

(1) OMB authorizes conditional exemption from OMB administrative requirements and cost principles circulars for certain Federal programs with statutorily-authorized consolidated planning and consolidated administrative funding, that are identified by a Federal agency and approved by the head of the Executive department or establishment. A Federal agency shall consult with OMB during its consideration of whether to grant such an exemption.

(2) To promote efficiency in State and local program administration, when Federal non-entitlement programs with common purposes have specific statutorily-authorized consolidated planning and consolidated administrative funding and where most of the State agency's resources come from non-Federal sources, Federal agencies may exempt these covered State-administered, non-entitlement grant programs from certain OMB grants management requirements. The exemptions would be from all but the allocability of costs provisions of OMB Circulars A-87 (Attachment A, subsection C.3), "Cost Principles for State, Local, and Indian Tribal Governments," A-21 (Section C, subpart 4), "Cost Principles for Educational Institutions," and A-122 (Attachment A, subsection A.4), "Cost Principles for Non-Profit Organizations," and from all of the administrative requirements provisions of OMB Circular A-110, "Uniform Administrative Requirements for Grants and Agreements

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations," and the agencies' grants management common rule.

(3) When a Federal agency provides this flexibility, as a prerequisite to a State's exercising this option, a State must adopt its own written fiscal and administrative requirements for expending and accounting for all funds, which are consistent with the provisions of OMB Circular **A-87**, and extend such policies to all subrecipients. These fiscal and administrative requirements must be sufficiently specific to ensure that: funds are used in compliance with all applicable Federal statutory and regulatory provisions, costs are reasonable and necessary for operating these programs, and funds are not be used for general expenses required to carry out other responsibilities of a State or its subrecipients.

## B. Definitions

1. "Approval or authorization of the awarding or cognizant Federal agency" means documentation evidencing consent prior to incurring a specific cost. If such costs are specifically identified in a Federal award document, approval of the document constitutes approval of the costs. If the costs are covered by a State/local-wide cost allocation plan or an indirect cost proposal, approval of the plan constitutes the approval.

2. "Award" means grants, cost reimbursement contracts and other agreements between a State, local and Indian tribal government and the Federal Government.

3. "Awarding agency" means (a) with respect to a grant, cooperative agreement, or cost reimbursement contract, the Federal agency, and (b) with respect to a subaward, the party that awarded the subaward.

4. "Central service cost allocation plan" means the documentation identifying, accumulating, and allocating or developing billing rates based on the allowable costs of services provided by a governmental unit on a centralized basis to its departments and agencies. The costs of these services may be allocated or billed to users.

5. "Claim" means a written demand or written assertion by the governmental unit or grantor seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of award terms, or other relief arising under or relating to the award. A voucher, invoice or other routine request for payment that is not a dispute when submitted is not a claim. Appeals, such as those filed by a governmental unit in response to questioned audit costs, are not considered claims until a final management decision is made by the Federal awarding agency.

6. "Cognizant agency" means the Federal agency responsible for reviewing, negotiating, and approving cost allocation plans or indirect cost proposals developed under this Circular on behalf of all Federal agencies. OMB publishes a listing of cognizant agencies.

7. "Common Rule" means the "Uniform Administrative Requirements for Grants and Cooperative Agreements to State and Local Governments; Final Rule" originally issued at 53 FR 8034-8103 (March 11, 1988). Other common rules will be referred to by their specific titles.

8. "Contract" means a mutually binding legal relationship obligating the seller to furnish the supplies or services (including construction) and the buyer to pay for them. It includes all types of commitments that obligate the government to an expenditure of appropriated funds and that, except as otherwise authorized, are in writing. In addition to bilateral instruments, contracts include (but are not limited to): awards and notices of awards; job orders or task orders issued under basic ordering agreements; letter contracts; orders, such as purchase orders, under which the contract becomes effective by written acceptance or performance; and, bilateral contract modifications. Contracts do not include grants and cooperative agreements covered by 31 U.S.C. 6301 et seq.

9. "Cost" means an amount as determined on a cash, accrual, or other basis acceptable to the Federal awarding or cognizant

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

agency. It does not include transfers to a general or similar fund.

10. "Cost allocation plan" means central service cost allocation plan, public assistance cost allocation plan, and indirect cost rate proposal. Each of these terms are further defined in this section.

11. "Cost objective" means a function, organizational subdivision, contract, grant, or other activity for which cost data are needed and for which costs are incurred.

12. "Federally recognized Indian tribal government" means the governing body or a governmental agency of any Indian tribe, band, nation, or other organized group or community (including any native village as defined in Section 3 of the Alaska Native Claims Settlement Act, 85 Stat. 688) certified by the Secretary of the Interior as eligible for the special programs and services provided through the Bureau of Indian Affairs.

13. "Governmental unit" means the entire State, local, or federally-recognized Indian tribal government, including any component thereof. Components of governmental units may function independently of the governmental unit in accordance with the term of the award.

14. "Grantee department or agency" means the component of a State, local, or federally-recognized Indian tribal government which is responsible for the performance or administration of all or some part of a Federal award.

15. "Indirect cost rate proposal" means the documentation prepared by a governmental unit or component thereof to substantiate its request for the establishment of an indirect cost rate as described in Attachment E of this Circular.

16. "Local government" means a county, municipality, city, town, township, local public authority, school district, special district, intrastate district, council of governments (whether or not incorporated as a non-profit corporation under State law), any other regional or interstate government entity, or any agency or instrumentality of a local government.

17. "Public assistance cost allocation plan" means a narrative description of the procedures that will be used in identifying, measuring and allocating all administrative costs to all of the programs administered or supervised by State public assistance agencies as described in Attachment D of this Circular.

18. "State" means any of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, any territory or possession of the United States, or any agency or instrumentality of a State exclusive of local governments.

C. Basic Guidelines

1. Factors affecting allowability of costs. To be allowable under Federal awards, costs must meet the following general criteria:

a. Be necessary and reasonable for proper and efficient performance and administration of Federal awards.

b. Be allocable to Federal awards under the provisions of this Circular.

c. Be authorized or not prohibited under State or local laws or regulations.

d. Conform to any limitations or exclusions set forth in these principles, Federal laws, terms and conditions of the Federal award, or other governing regulations as to types or amounts of cost items.

e. Be consistent with policies, regulations, and procedures that apply uniformly to both Federal awards and other activities of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

the governmental unit.

f. Be accorded consistent treatment. A cost may not be assigned to a Federal award as a direct cost if any other cost incurred for the same purpose in like circumstances has been allocated to the Federal award as an indirect cost.

g. Except as otherwise provided for in this Circular, be determined in accordance with generally accepted accounting principles.

h. Not be included as a cost or used to meet cost sharing or matching requirements of any other Federal award in either the current or a prior period, except as specifically provided by Federal law or regulation.

i. Be the net of all applicable credits.

j. Be adequately documented.

2. Reasonable costs. A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person under the circumstances prevailing at the time the decision was made to incur the cost. The question of reasonableness is particularly important when governmental units or components are predominately federally- funded. In determining reasonableness of a given cost, consideration shall be given to:

a. Whether the cost is of a type generally recognized as ordinary and necessary for the operation of the governmental unit or the performance of the Federal award.

b. The restraints or requirements imposed by such factors as: sound business practices; arms length bargaining; Federal, State and other laws and regulations; and, terms and conditions of the Federal award.

c. Market prices for comparable goods or services.

d. Whether the individuals concerned acted with prudence in the circumstances considering their responsibilities to the governmental unit, its employees, the public at large, and the Federal Government.

e. Significant deviations from the established practices of the governmental unit which may unjustifiably increase the Federal award's cost.

3. Allocable costs.

a. A cost is allocable to a particular cost objective if the goods or services involved are chargeable or assignable to such cost objective in accordance with relative benefits received.

b. All activities which benefit from the governmental unit's indirect cost, including unallowable activities and services donated to the governmental unit by third parties, will receive an appropriate allocation of indirect costs.

c. Any cost allocable to a particular Federal award or cost objective under the principles provided for in this Circular may not be charged to other Federal awards to overcome fund deficiencies, to avoid restrictions imposed by law or terms of the Federal awards, or for other reasons.

d. Where an accumulation of indirect costs will ultimately result in charges to a Federal award, a cost allocation plan will be required as described in Attachments C, D, and E.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

4. Applicable credits.

a. Applicable credits refer to those receipts or reduction of expenditure-type transactions that offset or reduce expense items allocable to Federal awards as direct or indirect costs. Examples of such transactions are: purchase discounts, rebates or allowances, recoveries or indemnities on losses, insurance refunds or rebates, and adjustments of overpayments or erroneous charges. To the extent that such credits accruing to or received by the governmental unit relate to allowable costs, they shall be credited to the Federal award either as a cost reduction or cash refund, as appropriate.

b. In some instances, the amounts received from the Federal Government to finance activities or service operations of the governmental unit should be treated as applicable credits. Specifically, the concept of netting such credit items (including any amounts used to meet cost sharing or matching requirements) should be recognized in determining the rates or amounts to be charged to Federal awards. (See Attachment B, item 11, "Depreciation and use allowances," for areas of potential application in the matter of Federal financing of activities.)

D. Composition of Cost

1. Total cost. The total cost of Federal awards is comprised of the allowable direct cost of the program, plus its allocable portion of allowable indirect costs, less applicable credits.

2. Classification of costs. There is no universal rule for classifying certain costs as either direct or indirect under every accounting system. A cost may be direct with respect to some specific service or function, but indirect with respect to the Federal award or other final cost objective. Therefore, it is essential that each item of cost be treated consistently in like circumstances either as a direct or an indirect cost. Guidelines for determining direct and indirect costs charged to Federal awards are provided in the sections that follow.

E. Direct Costs

1. General. Direct costs are those that can be identified specifically with a particular final cost objective.

2. Application. Typical direct costs chargeable to Federal awards are:

a. Compensation of employees for the time devoted and identified specifically to the performance of those awards.

b. Cost of materials acquired, consumed, or expended specifically for the purpose of those awards.

c. Equipment and other approved capital expenditures.

d. Travel expenses incurred specifically to carry out the award.

3. Minor items. Any direct cost of a minor amount may be treated as an indirect cost for reasons of practicality where such accounting treatment for that item of cost is consistently applied to all cost objectives.

F. Indirect Costs

1. General. Indirect costs are those: (a) incurred for a common or joint purpose benefiting more than one cost objective, and (b) not readily assignable to the cost objectives specifically benefitted, without effort disproportionate to the results achieved. The term "indirect costs," as used herein, applies to costs of this type originating in the grantee department, as well as those incurred by other departments in supplying goods, services, and facilities. To facilitate equitable distribution of indirect ex-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

penses to the cost objectives served, it may be necessary to establish a number of pools of indirect costs within a governmental unit department or in other agencies providing services to a governmental unit department. Indirect cost pools should be distributed to benefitted cost objectives on bases that will produce an equitable result in consideration of relative benefits derived.

2. Cost allocation plans and indirect cost proposals. Requirements for development and submission of cost allocation plans and indirect cost rate proposals are contained in Attachments C, D, and E.

3. Limitation on indirect or administrative costs.

a. In addition to restrictions contained in this Circular, there may be laws that further limit the amount of administrative or indirect cost allowed.

b. Amounts not recoverable as indirect costs or administrative costs under one Federal award may not be shifted to another Federal award, unless specifically authorized by Federal legislation or regulation.

G. Interagency Services. The cost of services provided by one agency to another within the governmental unit may include allowable direct costs of the service plus a pro rata share of indirect costs. A standard indirect cost allowance equal to ten percent of the direct salary and wage cost of providing the service (excluding overtime, shift premiums, and fringe benefits) may be used in lieu of determining the actual indirect costs of the service. These services do not include centralized services included in central service cost allocation plans as described in Attachment C.

H. Required Certifications. Each cost allocation plan or indirect cost rate proposal required by Attachments C and E must comply with the following:

1. No proposal to establish a cost allocation plan or an indirect cost rate, whether submitted to a Federal cognizant agency or maintained on file by the governmental unit, shall be acceptable unless such costs have been certified by the governmental unit using the Certificate of Cost Allocation Plan or Certificate of Indirect Costs as set forth in Attachments C and E. The certificate must be signed on behalf of the governmental unit by an individual at a level no lower than chief financial officer of the governmental unit that submits the proposal or component covered by the proposal.

2. No cost allocation plan or indirect cost rate shall be approved by the Federal Government unless the plan or rate proposal has been certified. Where it is necessary to establish a cost allocation plan or an indirect cost rate and the governmental unit has not submitted a certified proposal for establishing such a plan or rate in accordance with the requirements, the Federal Government may either disallow all indirect costs or unilaterally establish such a plan or rate. Such a plan or rate may be based upon audited historical data or such other data that have been furnished to the cognizant Federal agency and for which it can be demonstrated that all unallowable costs have been excluded. When a cost allocation plan or indirect cost rate is unilaterally established by the Federal Government because of failure of the governmental unit to submit a certified proposal, the plan or rate established will be set to ensure that potentially unallowable costs will not be reimbursed.

ATTACHMENT B

SELECTED ITEMS OF COST

TABLE OF CONTENTS

1. Advertising and public relations costs

2. Advisory councils

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

3. Alcoholic beverages

4. Audit costs and related services

5. Bad debts

6. Bonding costs

7. Communication costs

8. Compensation for personal services

9. Contingency provisions

10. Defense and prosecution of criminal and civil proceedings, and claims

11. Depreciation and use allowances

12. Donations and contributions

13. Employee morale, health, and welfare costs

14. Entertainment costs

15. Equipment and other capital expenditures

16. Fines and penalties

17. Fund raising and investment management costs

18. Gains and losses on disposition of depreciable property and other capital assets and substantial relocation of Federal pro-grams

19. General government expenses

20. Goods or services for personal use

21. Idle facilities and idle capacity

22. Insurance and indemnification

23. Interest

24. Lobbying

25. Maintenance, operations, and repairs

26. Materials and supplies costs

27. Meetings and conferences

28. Memberships, subscriptions, and professional activity costs

29. Patent costs

30. Plant and homeland security costs

31. Pre-award costs

32. Professional service costs

33. Proposal costs

34. Publication and printing costs

35. Rearrangement and alteration costs

36. Reconversion costs

37. Rental costs of building and equipment

38. Royalties and other costs for the use of patents

39. Selling and marketing

40. Taxes

41. Termination costs applicable to sponsored agreements

42. Training costs

43. Travel costs.

Sections 1 through 43 provide principles to be applied in establishing the allowability or unallowability of certain items of cost. These principles apply whether a cost is treated as direct or indirect. A cost is allowable for Federal reimbursement only to the extent of benefits received by Federal awards and its conformance with the general policies and principles stated in Attachment A to this Circular. Failure to mention a particular item of cost in these sections is not intended to imply that it is either allowable or unallowable; rather, determination of allowability in each case should be based on the treatment or stan-dards provided for similar or related items of cost.

1. Advertising and public relations costs.

a. The term advertising costs means the costs of advertising media and corollary administrative costs.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Advertising media include magazines, newspapers, radio and television, direct mail, exhibits, electronic or computer transmittals, and the like.

b. The term public relations includes community relations and means those activities dedicated to maintaining the image of the governmental unit or maintaining or promoting understanding and favorable relations with the community or public at large or any segment of the public.

c. The only allowable advertising costs are those which are solely for:

(1) The recruitment of personnel required for the performance by the governmental unit of obligations arising under a Federal award;

(2) The procurement of goods and services for the performance of a Federal award;

(3) The disposal of scrap or surplus materials acquired in the performance of a Federal award except when governmental units are reimbursed for disposal costs at a predetermined amount; or

(4) Other specific purposes necessary to meet the requirements of the Federal award.

d. The only allowable public relations costs are:

(1) Costs specifically required by the Federal award;

(2) Costs of communicating with the public and press pertaining to specific activities or accomplishments which result from performance of Federal awards (these costs are considered necessary as part of the outreach effort for the Federal award); or

(3) Costs of conducting general liaison with news media and government public relations officers, to the extent that such activities are limited to communication and liaison necessary keep the public informed on matters of public concern, such as notices of Federal contract/grant awards, financial matters, etc.

e. Costs identified in subsections c and d if incurred for more than one Federal award or for both sponsored work and other work of the governmental unit, are allowable to the extent that the principles in Attachment A, sections E. ("Direct Costs") and F. ("Indirect Costs") are observed.

f. Unallowable advertising and public relations costs include the following:

(1) All advertising and public relations costs other than as specified in subsections c, d, and e;

(2) Costs of meetings, conventions, convocations, or other events related to other activities of the governmental unit, including:

(a) Costs of displays, demonstrations, and exhibits;

(b) Costs of meeting rooms, hospitality suites, and other special facilities used in conjunction with shows and other special events; and

(c) Salaries and wages of employees engaged in setting up and displaying exhibits, making demonstrations, and providing

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

briefings;

(3) Costs of promotional items and memorabilia, including models, gifts, and souvenirs;

(4) Costs of advertising and public relations designed solely to promote the governmental unit.

2. Advisory councils. Costs incurred by advisory councils or committees are allowable as a direct cost where authorized by the Federal awarding agency or as an indirect cost where allocable to Federal awards.

3. Alcoholic beverages. Costs of alcoholic beverages are unallowable.

4. Audit costs and related services.

a. The costs of audits required by, and performed in accordance with, the Single Audit Act, as implemented by Circular A-133, "Audits of States, Local Governments, and Non-Profit Organizations" are allowable. Also see 31 USC 7505(b) and section 230 ("Audit Costs") of Circular A-133.

b. Other audit costs are allowable if included in a cost allocation plan or indirect cost proposal, or if specifically approved by the awarding agency as a direct cost to an award

c. The cost of agreed-upon procedures engagements to monitor subrecipients who are exempted from A-133 under section 200(d) are allowable, subject to the conditions listed in A-133, section 230 (b)(2).

5. Bad debts. Bad debts, including losses (whether actual or estimated) arising from uncollectable accounts and other claims, related collection costs, and related legal costs, are unallowable.

6. Bonding costs.

a. Bonding costs arise when the Federal Government requires assurance against financial loss to itself or others by reason of the act or default of the governmental unit. They arise also in instances where the governmental unit requires similar assurance. Included are such bonds as bid, performance, payment, advance payment, infringement, and fidelity bonds.

b. Costs of bonding required pursuant to the terms of the award are allowable.

c. Costs of bonding required by the governmental unit in the general conduct of its operations are allowable to the extent that such bonding is in accordance with sound business practice and the rates and premiums are reasonable under the circumstances.

7. Communication costs. Costs incurred for telephone services, local and long distance telephone calls, telegrams, postage, messenger, electronic or computer transmittal services and the like are allowable.

8. Compensation for personal services.

a. General. Compensation for personnel services includes all remuneration, paid currently or accrued, for services rendered during the period of performance under Federal awards, including but not necessarily limited to wages, salaries, and fringe benefits. The costs of such compensation are allowable to the extent that they satisfy the specific requirements of this Circular, and that the total compensation for individual employees:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(1) Is reasonable for the services rendered and conforms to the established policy of the governmental unit consistently applied to both Federal and non-Federal activities;

(2) Follows an appointment made in accordance with a governmental unit's laws and rules and meets merit system or other requirements required by Federal law, where applicable; and

(3) Is determined and supported as provided in subsection h.

b. Reasonableness. Compensation for employees engaged in work on Federal awards will be considered reasonable to the extent that it is consistent with that paid for similar work in other activities of the governmental unit. In cases where the kinds of employees required for Federal awards are not found in the other activities of the governmental unit, compensation will be considered reasonable to the extent that it is comparable to that paid for similar work in the labor market in which the employing government competes for the kind of employees involved. Compensation surveys providing data representative of the labor market involved will be an acceptable basis for evaluating reasonableness.

c. Unallowable costs. Costs which are unallowable under other sections of these principles shall not be allowable under this section solely on the basis that they constitute personnel compensation.

d. Fringe benefits.

(1) Fringe benefits are allowances and services provided by employers to their employees as compensation in addition to regular salaries and wages. Fringe benefits include, but are not limited to, the costs of leave, employee insurance, pensions, and unemployment benefit plans. Except as provided elsewhere in these principles, the costs of fringe benefits are allowable to the extent that the benefits are reasonable and are required by law, governmental unit-employee agreement, or an established policy of the governmental unit.

(2) The cost of fringe benefits in the form of regular compensation paid to employees during periods of authorized absences from the job, such as for annual leave, sick leave, holidays, court leave, military leave, and other similar benefits, are allowable if: (a) they are provided under established written leave policies; (b) the costs are equitably allocated to all related activities, including Federal awards; and, (c) the accounting basis (cash or accrual) selected for costing each type of leave is consistently followed by the governmental unit.

(3) When a governmental unit uses the cash basis of accounting, the cost of leave is recognized in the period that the leave is taken and paid for. Payments for unused leave when an employee retires or terminates employment are allowable in the year of payment provided they are allocated as a general administrative expense to all activities of the governmental unit or component.

(4) The accrual basis may be only used for those types of leave for which a liability as defined by Generally Accepted Accounting Principles (GAAP) exists when the leave is earned. When a governmental unit uses the accrual basis of accounting, in accordance with GAAP, allowable leave costs are the lesser of the amount accrued or funded.

(5) The cost of fringe benefits in the form of employer contributions or expenses for social security; employee life, health, unemployment, and worker's compensation insurance (except as indicated in section *22*, Insurance and indemnification); pension plan costs (see subsection e.); and other similar benefits are allowable, provided such benefits are granted under established written policies. Such benefits, whether treated as indirect costs or as direct costs, shall be allocated to Federal awards and all other activities in a manner consistent with the pattern of benefits attributable to the individuals or group(s) of employees whose salaries and wages are chargeable to such Federal awards and other activities.

e. Pension plan costs. Pension plan costs may be computed using a pay-as-you-go method or an acceptable actuarial cost method in accordance with established written policies of the governmental unit.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(1) For pension plans financed on a pay-as-you-go method, allowable costs will be limited to those representing actual payments to retirees or their beneficiaries.

(2) Pension costs calculated using an actuarial cost- based method recognized by GAAP are allowable for a given fiscal year if they are funded for that year within six months after the end of that year. Costs funded after the six month period (or a later period agreed to by the cognizant agency) are allowable in the year funded. The cognizant agency may agree to an extension of the six month period if an appropriate adjustment is made to compensate for the timing of the charges to the Federal Government and related Federal reimbursement and the governmental unit's contribution to the pension fund. Adjustments may be made by cash refund or other equitable procedures to compensate the Federal Government for the time value of Federal reimbursements in excess of contributions to the pension fund.

(3) Amounts funded by the governmental unit in excess of the actuarially determined amount for a fiscal year may be used as the governmental unit's contribution in future periods.

(4) When a governmental unit converts to an acceptable actuarial cost method, as defined by GAAP, and funds pension costs in accordance with this method, the unfunded liability at the time of conversion shall be allowable if amortized over a period of years in accordance with GAAP.

(5) The Federal Government shall receive an equitable share of any previously allowed pension costs (including earnings thereon) which revert or inure to the governmental unit in the form of a refund, withdrawal, or other credit.

f. Post-retirement health benefits. Post-retirement health benefits (PRHB) refers to costs of health insurance or health services not included in a pension plan covered by subsection e. for retirees and their spouses, dependents, and survivors. PRHB costs may be computed using a pay-as-you-go method or an acceptable actuarial cost method in accordance with established written polices of the governmental unit.

(1) For PRHB financed on a pay as-you-go method, allowable costs will be limited to those representing actual payments to retirees or their beneficiaries.

(2) PRHB costs calculated using an actuarial cost method recognized by GAAP are allowable if they are funded for that year within six months after the end of that year. Costs funded after the six month period (or a later period agreed to by the cognizant agency) are allowable in the year funded. The cognizant agency may agree to an extension of the six month period if an appropriate adjustment is made to compensate for the timing of the charges to the Federal Government and related Federal reimbursements and the governmental unit's contributions to the PRHB fund. Adjustments may be made by cash refund, reduction in current year's PRHB costs, or other equitable procedures to compensate the Federal Government for the time value of Federal reimbursements in excess of contributions to the PRHB fund.

(3) Amounts funded in excess of the actuarially determined amount for a fiscal year may be used as the government's contribution in a future period.

(4) When a governmental unit converts to an acceptable actuarial cost method and funds PRHB costs in accordance with this method, the initial unfunded liability attributable to prior years shall be allowable if amortized over a period of years in accordance with GAAP, or, if no such GAAP period exists, over a period negotiated with the cognizant agency.

(5) To be allowable in the current year, the PRHB costs must be paid either to:

(a) An insurer or other benefit provider as current year costs or premiums, or

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(b) An insurer or trustee to maintain a trust fund or reserve for the sole purpose of providing post-retirement benefits to retirees and other beneficiaries.

(6) The Federal Government shall receive an equitable share of any amounts of previously allowed post-retirement benefit costs (including earnings thereon) which revert or inure to the governmental unit in the form of a refund, withdrawal, or other credit.

g. Severance pay.

(1) Payments in addition to regular salaries and wages made to workers whose employment is being terminated are allowable to the extent that, in each case, they are required by (a) law, (b) employer-employee agreement, or (c) established written policy.

(2) Severance payments (but not accruals) associated with normal turnover are allowable. Such payments shall be allocated to all activities of the governmental unit as an indirect cost.

(3) Abnormal or mass severance pay will be considered on a case-by-case basis and is allowable only if approved by the cognizant Federal agency.

h. Support of salaries and wages. These standards regarding time distribution are in addition to the standards for payroll documentation.

(1) Charges to Federal awards for salaries and wages, whether treated as direct or indirect costs, will be based on payrolls documented in accordance with generally accepted practice of the governmental unit and approved by a responsible official(s) of the governmental unit.

(2) No further documentation is required for the salaries and wages of employees who work in a single indirect cost activity.

(3) Where employees are expected to work solely on a single Federal award or cost objective, charges for their salaries and wages will be supported by periodic certifications that the employees worked solely on that program for the period covered by the certification. These certifications will be prepared at least semi-annually and will be signed by the employee or supervisory official having first hand knowledge of the work performed by the employee.

(4) Where employees work on multiple activities or cost objectives, a distribution of their salaries or wages will be supported by personnel activity reports or equivalent documentation which meets the standards in subsection (5) unless a statistical sampling system (see subsection (6)) or other substitute system has been approved by the cognizant Federal agency. Such documentary support will be required where employees work on:

(a) More than one Federal award,

(b) A Federal award and a non-Federal award,

(c) An indirect cost activity and a direct cost activity,

(d) Two or more indirect activities which are allocated using different allocation bases, or

(e) An unallowable activity and a direct or indirect cost activity.

(5) Personnel activity reports or equivalent documentation must meet the following standards:

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(a) They must reflect an after-the-fact distribution of the actual activity of each employee,

(b) They must account for the total activity for which each employee is compensated,

(c) They must be prepared at least monthly and must coincide with one or more pay periods, and

(d) They must be signed by the employee.

(e) Budget estimates or other distribution percentages determined before the services are performed do not qualify as support for charges to Federal awards but may be used for interim accounting purposes, provided that:

(i) The governmental unit's system for establishing the estimates produces reasonable approximations of the activity actually performed;

(ii) At least quarterly, comparisons of actual costs to budgeted distributions based on the monthly activity reports are made. Costs charged to Federal awards to reflect adjustments made as a result of the activity actually performed may be recorded annually if the quarterly comparisons show the differences between budgeted and actual costs are less than ten percent; and

(iii) The budget estimates or other distribution percentages are revised at least quarterly, if necessary, to reflect changed circumstances.

(6) Substitute systems for allocating salaries and wages to Federal awards may be used in place of activity reports. These systems are subject to approval if required by the cognizant agency. Such systems may include, but are not limited to, random moment sampling, case counts, or other quantifiable measures of employee effort.

(a) Substitute systems which use sampling methods (primarily for Temporary Assistance to Needy Families (TANF), Medicaid, and other public assistance programs) must meet acceptable statistical sampling standards including:

(i) The sampling universe must include all of the employees whose salaries and wages are to be allocated based on sample results except as provided in subsection (c);

(ii) The entire time period involved must be covered by the sample; and

(iii) The results must be statistically valid and applied to the period being sampled.

(b) Allocating charges for the sampled employees' supervisors, clerical and support staffs, based on the results of the sampled employees, will be acceptable.

(c) Less than full compliance with the statistical sampling standards noted in subsection (a) may be accepted by the cognizant agency if it concludes that the amounts to be allocated to Federal awards will be minimal, or if it concludes that the system proposed by the governmental unit will result in lower costs to Federal awards than a system which complies with the standards.

(7) Salaries and wages of employees used in meeting cost sharing or matching requirements of Federal awards must be supported in the same manner as those claimed as allowable costs under Federal awards.

i. Donated services.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(1) Donated or volunteer services may be furnished to a governmental unit by professional and technical personnel, consultants, and other skilled and unskilled labor. The value of these services is not reimbursable either as a direct or indirect cost. However, the value of donated services may be used to meet cost sharing or matching requirements in accordance with the provisions of the Common Rule.

(2) The value of donated services utilized in the performance of a direct cost activity shall, when material in amount, be considered in the determination of the governmental unit's indirect costs or rate(s) and, accordingly, shall be allocated a proportionate share of applicable indirect costs.

(3) To the extent feasible, donated services will be supported by the same methods used by the governmental unit to support the allocability of regular personnel services.

9. <u>Contingency provisions</u>. Contributions to a contingency reserve or any similar provision made for events the occurrence of which cannot be foretold with certainty as to time, intensity, or with an assurance of their happening, are unallowable. The term "contingency reserve" excludes self-insurance reserves (see Attachment B, section 22.c.), pension plan reserves (see Attachment B, section 8.e.), and post-retirement health and other benefit reserves (see Attachment B, section 8.f.) computed using acceptable actuarial cost methods.

10. <u>Defense and prosecution of criminal and civil proceedings, and claims</u>.

a. The following costs are unallowable for contracts covered by <u>10 U.S.C. 2324(k)</u>, "Allowable costs under defense contracts."

(1) Costs incurred in defense of any civil or criminal fraud proceeding or similar proceeding (including filing of false certification brought by the United States where the contractor is found liable or has pleaded nolo contendere to a charge of fraud or similar proceeding (including filing of a false certification).

(2) Costs incurred by a contractor in connection with any criminal, civil or administrative proceedings commenced by the United States or a State to the extent provided in <u>10 U.S.C. 2324(k)</u>.

b. Legal expenses required in the administration of Federal programs are allowable. Legal expenses for prosecution of claims against the Federal Government are unallowable.

11. <u>Depreciation and use allowances</u>.

a. Depreciation and use allowances are means of allocating the cost of fixed assets to periods benefiting from asset use. Compensation for the use of fixed assets on hand may be made through depreciation or use allowances. A combination of the two methods may not be used in connection with a single class of fixed assets (e.g., buildings, office equipment, computer equipment, etc.) except as provided for in subsection g. Except for enterprise funds and internal service funds that are included as part of a State/local cost allocation plan, classes of assets shall be determined on the same basis used for the government-wide financial statements.

b. The computation of depreciation or use allowances shall be based on the acquisition cost of the assets involved. Where actual cost records have not been maintained, a reasonable estimate of the original acquisition cost may be used. The value of an asset donated to the governmental unit by an unrelated third party shall be its fair market value at the time of donation. Governmental or quasi-governmental organizations located within the same State shall not be considered unrelated third parties for this purpose.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

c. The computation of depreciation or use allowances will exclude:

(1) The cost of land;

(2) Any portion of the cost of buildings and equipment borne by or donated by the Federal Government irrespective of where title was originally vested or where it presently resides; and

(3) Any portion of the cost of buildings and equipment contributed by or for the governmental unit, or a related donor organization, in satisfaction of a matching requirement.

d. Where the depreciation method is followed, the period of useful service (useful life) established in each case for usable capital assets must take into consideration such factors as type of construction, nature of the equipment used, historical usage patterns, technological developments, and the renewal and replacement policies of the governmental unit followed for the individual items or classes of assets involved. In the absence of clear evidence indicating that the expected consumption of the asset will be significantly greater in the early portions than in the later portions of its useful life, the straight line method of depreciation shall be used.

Depreciation methods once used shall not be changed unless approved by the Federal cognizant or awarding agency. When the depreciation method is introduced for application to an asset previously subject to a use allowance, the annual depreciation charge thereon may not exceed the amount that would have resulted had the depreciation method been in effect from the date of acquisition of the asset. The combination of use allowances and depreciation applicable to the asset shall not exceed the total acquisition cost of the asset or fair market value at time of donation.

e. When the depreciation method is used for buildings, a building's shell may be segregated from the major component of the building (e.g., plumbing system, heating, and air conditioning system, etc.) and each major component depreciated over its estimated useful life, or the entire building (i.e., the shell and all components) may be treated as a single asset and depreciated over a single useful life.

f. Where the use allowance method is followed, the use allowance for buildings and improvements (including land improvements, such as paved parking areas, fences, and sidewalks) will be computed at an annual rate not exceeding two percent of acquisition costs. The use allowance for equipment will be computed at an annual rate not exceeding 6 2/3 percent of acquisition cost. When the use allowance method is used for buildings, the entire building must be treated as a single asset; the building's components (e.g., plumbing system, heating and air condition, etc.) cannot be segregated from the building's shell.

The two percent limitation, however, need not be applied to equipment which is merely attached or fastened to the building but not permanently fixed to it and which is used as furnishings or decorations or for specialized purposes (e.g., dentist chairs and dental treatment units, counters, laboratory benches bolted to the floor, dishwashers, modular furniture, carpeting, etc.). Such equipment will be considered as not being permanently fixed to the building if it can be removed without the destruction of, or need for costly or extensive alterations or repairs, to the building or the equipment. Equipment that meets these criteria will be subject to the 6 2/3 percent equipment use allowance limitation.

g. A reasonable use allowance may be negotiated for any assets that are considered to be fully depreciated, after taking into consideration the amount of depreciation previously charged to the government, the estimated useful life remaining at the time of negotiation, the effect of any increased maintenance charges, decreased efficiency due to age, and any other factors pertinent to the utilization of the asset for the purpose contemplated.

h. Charges for use allowances or depreciation must be supported by adequate property records. Physical inventories must be taken at least once every two years (a statistical sampling approach is acceptable) to ensure that assets exist, and are in use. Governmental units will manage equipment in accordance with State laws and procedures. When the depreciation method is followed, depreciation records indicating the amount of depreciation taken each period must also be maintained.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

12. Donations and contributions.

a. Contributions or donations rendered. Contributions or donations, including cash, property, and services, made by the governmental unit, regardless of the recipient, are unallowable.

b. Donated services received:

(1) Donated or volunteer services may be furnished to a governmental unit by professional and technical personnel, consultants, and other skilled and unskilled labor. The value of these services is not reimbursable either as a direct or indirect cost. However, the value of donated services may be used to meet cost sharing or matching requirements in accordance with the Federal Grants Management Common Rule.

(2) The value of donated services utilized in the performance of a direct cost activity shall, when material in amount, be considered in the determination of the governmental unit's indirect costs or rate(s) and, accordingly, shall be allocated a proportionate share of applicable indirect costs.

(3) To the extent feasible, donated services will be supported by the same methods used by the governmental unit to support the allocability of regular personnel services.

13. Employee morale, health, and welfare costs.

a. The costs of employee information publications, health or first-aid clinics and/or infirmaries, recreational activities, employee counseling services, and any other expenses incurred in accordance with the governmental unit's established practice or custom for the improvement of working conditions, employer-employee relations, employee morale, and employee performance are allowable.

b. Such costs will be equitably apportioned to all activities of the governmental unit. Income generated from any of these activities will be offset against expenses.

14. Entertainment. Costs of entertainment, including amusement, diversion, and social activities and any costs directly associated with such costs (such as tickets to shows or sports events, meals, lodging, rentals, transportation, and gratuities) are unallowable.

15. Equipment and other capital expenditures.

a. For purposes of this subsection 15, the following definitions apply:

(1) "Capital Expenditures" means expenditures for the acquisition cost of capital assets (equipment, buildings, land), or expenditures to make improvements to capital assets that materially increase their value or useful life. Acquisition cost means the cost of the asset including the cost to put it in place. Acquisition cost for equipment, for example, means the net invoice price of the equipment, including the cost of any modifications, attachments, accessories, or auxiliary apparatus necessary to make it usable for the purpose for which it is acquired. Ancillary charges, such as taxes, duty, protective in transit insurance, freight, and installation may be included in, or excluded from the acquisition cost in accordance with the governmental unit's regular accounting practices.

(2) "Equipment" means an article of nonexpendable, tangible personal property having a useful life of more than one year and an acquisition cost which equals or exceeds the lesser of the capitalization level established by the governmental unit for financial statement purposes, or $5000.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(3) "Special purpose equipment" means equipment which is used only for research, medical, scientific, or other technical activities. Examples of special purpose equipment include microscopes, x-ray machines, surgical instruments, and spectrometers.

(4) "General purpose equipment" means equipment, which is not limited to research, medical, scientific or other technical activities. Examples include office equipment and furnishings, modular offices, telephone networks, information technology equipment and systems, air conditioning equipment, reproduction and printing equipment, and motor vehicles.

b. The following rules of allowability shall apply to equipment and other capital expenditures:

(1) Capital expenditures for general purpose equipment, buildings, and land are unallowable as direct charges, except where approved in advance by the awarding agency.

(2) Capital expenditures for special purpose equipment are allowable as direct costs, provided that items with a unit cost of $5000 or more have the prior approval of the awarding agency.

(3) Capital expenditures for improvements to land, buildings, or equipment which materially increase their value or useful life are unallowable as a direct cost except with the prior approval of the awarding agency.

(4) When approved as a direct charge pursuant to Attachment B, section 15.b (1), (2), and (3) above, capital expenditures will be charged in the period in which the expenditure is incurred, or as otherwise determined appropriate and negotiated with the awarding agency. In addition, Federal awarding agencies are authorized at their option to waive or delegate the prior approval requirement.

(5) Equipment and other capital expenditures are unallowable as indirect costs. However, see section 11, Depreciation and use allowance, for rules on the allowability of use allowances or depreciation on buildings, capital improvements, and equipment. Also, see section 37, Rental costs, concerning the allowability of rental costs for land, buildings, and equipment.

(6) The unamortized portion of any equipment written off as a result of a change in capitalization levels may be recovered by continuing to claim the otherwise allowable use allowances or depreciation on the equipment, or by amortizing the amount to be written off over a period of years negotiated with the cognizant agency.

(7) When replacing equipment purchased in whole or in part with Federal funds, the governmental unit may use the equipment to be replaced as a trade-in or sell the property and use the proceeds to offset the cost of the replacement property.

16. Fines and penalties. Fines, penalties, damages, and other settlements resulting from violations (or alleged violations) of, or failure of the governmental unit to comply with, Federal, State, local, or Indian tribal laws and regulations are unallowable except when incurred as a result of compliance with specific provisions of the Federal award or written instructions by the awarding agency authorizing in advance such payments.

17. Fund raising and investment management costs.

a. Costs of organized fund raising, including financial campaigns, solicitation of gifts and bequests, and similar expenses incurred to raise capital or obtain contributions are unallowable, regardless of the purpose for which the funds will be used.

b. Costs of investment counsel and staff and similar expenses incurred to enhance income from investments are unallowable. However, such costs associated with investments covering pension, self-insurance, or other funds which include Federal participation allowed by this Circular are allowable.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

c. Fund raising and investment activities shall be allocated an appropriate share of indirect costs under the conditions described in subsection C.3.b. of Attachment A.

18. Gains and losses on disposition of depreciable property and other capital assets and substantial relocation of Federal programs.

a. (1) Gains and losses on the sale, retirement, or other disposition of depreciable property shall be included in the year in which they occur as credits or charges to the asset cost grouping(s) in which the property was included. The amount of the gain or loss to be included as a credit or charge to the appropriate asset cost grouping(s) shall be the difference between the amount realized on the property and the undepreciated basis of the property.

(2) Gains and losses on the disposition of depreciable property shall not be recognized as a separate credit or charge under the following conditions:

(a) The gain or loss is processed through a depreciation account and is reflected in the depreciation allowable under sections *11* and *15*.

(b) The property is given in exchange as part of the purchase price of a similar item and the gain or loss is taken into account in determining the depreciation cost basis of the new item.

(c) A loss results from the failure to maintain permissible insurance, except as otherwise provided in subsection *22*.d.

(d) Compensation for the use of the property was provided through use allowances in lieu of depreciation.

b. Substantial relocation of Federal awards from a facility where the Federal Government participated in the financing to another facility prior to the expiration of the useful life of the financed facility requires Federal agency approval. The extent of the relocation, the amount of the Federal participation in the financing, and the depreciation charged to date may require negotiation of space charges for Federal awards.

c. Gains or losses of any nature arising from the sale or exchange of property other than the property covered in subsection a., e.g., land or included in the fair market value used in any adjustment resulting from a relocation of Federal awards covered in subsection b. shall be excluded in computing Federal award costs.

19. General government expenses.

a. The general costs of government are unallowable (except as provided in Attachment B, section 43, Travel costs). These include:

(1) Salaries and expenses of the Office of the Governor of a State or the chief executive of a political subdivision or the chief executive of federally-recognized Indian tribal government;

(2) Salaries and other expenses of a State legislature, tribal council, or similar local governmental body, such as a county supervisor, city council, school board, etc., whether incurred for purposes of legislation or executive direction;

(3) Costs of the judiciary branch of a government;

(4) Costs of prosecutorial activities unless treated as a direct cost to a specific program if authorized by program statute or regulation (however, this does not preclude the allowability of other legal activities of the Attorney General); and

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(5) Costs of other general types of government services normally provided to the general public, such as fire and police, unless provided for as a direct cost under a program statute or regulation.

b. For federally-recognized Indian tribal governments and Councils Of Governments (COGs), the portion of salaries and expenses directly attributable to managing and operating Federal programs by the chief executive and his staff is allowable

20. Goods or services for personal use. Costs of goods or services for personal use of the governmental unit's employees are unallowable regardless of whether the cost is reported as taxable income to the employees.

21. Idle facilities and idle capacity.

a. As used in this section the following terms have the meanings set forth below:

(1) "Facilities" means land and buildings or any portion thereof, equipment individually or collectively, or any other tangible capital asset, wherever located, and whether owned or leased by the governmental unit.

(2) "Idle facilities" means completely unused facilities that are excess to the governmental unit's current needs.

(3) "Idle capacity" means the unused capacity of partially used facilities. It is the difference between: (a) that which a facility could achieve under 100 percent operating time on a one-shift basis less operating interruptions resulting from time lost for repairs, setups, unsatisfactory materials, and other normal delays; and (b) the extent to which the facility was actually used to meet demands during the accounting period. A multi-shift basis should be used if it can be shown that this amount of usage would normally be expected for the type of facility involved.

(4) "Cost of idle facilities or idle capacity" means costs such as maintenance, repair, housing, rent, and other related costs, e.g., insurance, interest, property taxes and depreciation or use allowances.

b. The costs of idle facilities are unallowable except to the extent that:

(1) They are necessary to meet fluctuations in workload; or

(2) Although not necessary to meet fluctuations in workload, they were necessary when acquired and are now idle because of changes in program requirements, efforts to achieve more economical operations, reorganization, termination, or other causes which could not have been reasonably foreseen. Under the exception stated in this subsection, costs of idle facilities are allowable for a reasonable period of time, ordinarily not to exceed one year, depending on the initiative taken to use, lease, or dispose of such facilities.

c. The costs of idle capacity are normal costs of doing business and are a factor in the normal fluctuations of usage or indirect cost rates from period to period. Such costs are allowable, provided that the capacity is reasonably anticipated to be necessary or was originally reasonable and is not subject to reduction or elimination by use on other Federal awards, subletting, renting, or sale, in accordance with sound business, economic, or security practices. Widespread idle capacity throughout an entire facility or among a group of assets having substantially the same function may be considered idle facilities.

22. Insurance and indemnification.

a. Costs of insurance required or approved and maintained, pursuant to the Federal award, are allowable.

b. Costs of other insurance in connection with the general conduct of activities are allowable subject to the following limita-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

tions:

(1) Types and extent and cost of coverage are in accordance with the governmental unit's policy and sound business practice.

(2) Costs of insurance or of contributions to any reserve covering the risk of loss of, or damage to, Federal Government property are unallowable except to the extent that the awarding agency has specifically required or approved such costs.

c. Actual losses which could have been covered by permissible insurance (through a self-insurance program or otherwise) are unallowable, unless expressly provided for in the Federal award or as described below. However, the Federal Government will participate in actual losses of a self insurance fund that are in excess of reserves. Costs incurred because of losses not covered under nominal deductible insurance coverage provided in keeping with sound management practice, and minor losses not covered by insurance, such as spoilage, breakage, and disappearance of small hand tools, which occur in the ordinary course of operations, are allowable.

d. Contributions to a reserve for certain self-insurance programs including workers compensation, unemployment compensation, and severance pay are allowable subject to the following provisions:

(1) The type of coverage and the extent of coverage and the rates and premiums would have been allowed had insurance (including reinsurance) been purchased to cover the risks. However, provision for known or reasonably estimated self-insured liabilities, which do not become payable for more than one year after the provision is made, shall not exceed the discounted present value of the liability. The rate used for discounting the liability must be determined by giving consideration to such factors as the governmental unit's settlement rate for those liabilities and its investment rate of return.

(2) Earnings or investment income on reserves must be credited to those reserves.

(3) Contributions to reserves must be based on sound actuarial principles using historical experience and reasonable assumptions. Reserve levels must be analyzed and updated at least biennially for each major risk being insured and take into account any reinsurance, coinsurance, etc. Reserve levels related to employee-related coverages will normally be limited to the value of claims (a) submitted and adjudicated but not paid, (b) submitted but not adjudicated, and (c) incurred but not submitted. Reserve levels in excess of the amounts based on the above must be identified and justified in the cost allocation plan or indirect cost rate proposal.

(4) Accounting records, actuarial studies, and cost allocations (or billings) must recognize any significant differences due to types of insured risk and losses generated by the various insured activities or agencies of the governmental unit. If individual departments or agencies of the governmental unit experience significantly different levels of claims for a particular risk, those differences are to be recognized by the use of separate allocations or other techniques resulting in an equitable allocation.

(5) Whenever funds are transferred from a self-insurance reserve to other accounts (e.g., general fund), refunds shall be made to the Federal Government for its share of funds transferred, including earned or imputed interest from the date of transfer.

e. Actual claims paid to or on behalf of employees or former employees for workers' compensation, unemployment compensation, severance pay, and similar employee benefits (e.g., subsection 8.f. for post retirement health benefits), are allowable in the year of payment provided (1) the governmental unit follows a consistent costing policy and (2) they are allocated as a general administrative expense to all activities of the governmental unit.

f. Insurance refunds shall be credited against insurance costs in the year the refund is received.

g. Indemnification includes securing the governmental unit against liabilities to third persons and other losses not compensated by insurance or otherwise. The Federal Government is obligated to indemnify the governmental unit only to the extent

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

expressly provided for in the Federal award, except as provided in subsection d.

h. Costs of commercial insurance that protects against the costs of the contractor for correction of the contractor's own defects in materials or workmanship are unallowable.

23. Interest.

a. Costs incurred for interest on borrowed capital or the use of a governmental unit's own funds, however represented, are unallowable except as specifically provided in subsection b. or authorized by Federal legislation.

b. Financing costs (including interest) paid or incurred which are associated with the otherwise allowable costs of building acquisition, construction, or fabrication, reconstruction or remodeling completed on or after October 1, 1980 is allowable subject to the conditions in (1) through (4) of this section 23.b. Financing costs (including interest) paid or incurred on or after September 1, 1995 for land or associated with otherwise allowable costs of equipment is allowable, subject to the conditions in (1) through (4).

(1) The financing is provided (from other than tax or user fee sources) by a bona fide third party external to the governmental unit;

(2) Thee assets are used in support of Federal awards;

(3) Earnings on debt service reserve funds or interest earned on borrowed funds pending payment of the construction or acquisition costs are used to offset the current period's cost or the capitalized interest, as appropriate. Earnings subject to being reported to the Federal Internal Revenue Service under arbitrage requirements are excludable.

(4) For debt arrangements over $1 million, unless the governmental unit makes an initial equity contribution to the asset purchase of 25 percent or more, the governmental unit shall reduce claims for interest cost by an amount equal to imputed interest earnings on excess cash flow, which is to be calculated as follows. Annually, non-Federal entities shall prepare a cumulative (from the inception of the project) report of monthly cash flows that includes inflows and outflows, regardless of the funding source. Inflows consist of depreciation expense, amortization of capitalized construction interest, and annual interest cost. For cash flow calculations, the annual inflow figures shall be divided by the number of months in the year (i.e., usually 12) that the building is in service for monthly amounts. Outflows consist of initial equity contributions, debt principal payments (less the pro rata share attributable to the unallowable costs of land) and interest payments. Where cumulative inflows exceed cumulative outflows, interest shall be calculated on the excess inflows for that period and be treated as a reduction to allowable interest cost. The rate of interest to be used to compute earnings on excess cash flows shall be the three-month Treasury bill closing rate as of the last business day of that month.

(5) Interest attributable to fully depreciated assets is unallowable.

24. Lobbying.

a. General. The cost of certain influencing activities associated with obtaining grants, contracts, cooperative agreements, or loans is an unallowable cost. Lobbying with respect to certain grants, contracts, cooperative agreements, and loans shall be governed by the common rule, "New Restrictions on Lobbying" published at 55 FR 6736 (February 26, 1990), including definitions, and the Office of Management and Budget "Government-wide Guidance for New Restrictions on Lobbying" and notices published at 54 FR 52306 (December 20, 1989), 55 FR 24540 (June 15, 1990), and 57 FR 1772 (January 15, 1992), respectively.

b. Executive lobbying costs. Costs incurred in attempting to improperly influence either directly or indirectly, an employee or

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

officer of the Executive Branch of the Federal Government to give consideration or to act regarding a sponsored agreement or a regulatory matter are unallowable. Improper influence means any influence that induces or tends to induce a Federal employee or officer to give consideration or to act regarding a federally-sponsored agreement or regulatory matter on any basis other than the merits of the matter.

25. <u>Maintenance, operations, and repairs</u>. Unless prohibited by law, the cost of utilities, insurance, security, janitorial services, elevator service, upkeep of grounds, necessary maintenance, normal repairs and alterations, and the like are allowable to the extent that they: (1) keep property (including Federal property, unless otherwise provided for) in an efficient operating condition, (2) do not add to the permanent value of property or appreciably prolong its intended life, and (3) are not otherwise included in rental or other charges for space. Costs which add to the permanent value of property or appreciably prolong its intended life shall be treated as capital expenditures (see sections *11 and 15*).

26. <u>Materials and supplies costs.</u>

a. Costs incurred for materials, supplies, and fabricated parts necessary to carry out a Federal award are allowable.

b. Purchased materials and supplies shall be charged at their actual prices, net of applicable credits. Withdrawals from general stores or stockrooms should be charged at their actual net cost under any recognized method of pricing inventory withdrawals, consistently applied. Incoming transportation charges are a proper part of materials and supplies costs.

c. Only materials and supplies actually used for the performance of a Federal award may be charged as direct costs.

d. Where federally-donated or furnished materials are used in performing the Federal award, such materials will be used without charge.

27. <u>Meetings and conferences.</u> Costs of meetings and conferences, the primary purpose of which is the dissemination of technical information, are allowable. This includes costs of meals, transportation, rental of facilities, speakers' fees, and other items incidental to such meetings or conferences. But see Attachment B, section 14, Entertainment costs.

28. <u>Memberships, subscriptions, and professional activity costs.</u>

a. Costs of the governmental unit's memberships in business, technical, and professional organizations are allowable.

b. Costs of the governmental unit's subscriptions to business, professional, and technical periodicals are allowable.

c. Costs of membership in civic and community, social organizations are allowable as a direct cost with the approval of the Federal awarding agency.

d. Costs of membership in organizations substantially engaged in lobbying are unallowable.

29. <u>Patent costs.</u>

a. The following costs relating to patent and copyright matters are allowable: (i) cost of preparing disclosures, reports, and other documents required by the Federal award and of searching the art to the extent necessary to make such disclosures; (ii) cost of preparing documents and any other patent costs in connection with the filing and prosecution of a United States patent application where title or royalty-free license is required by the Federal Government to be conveyed to the Federal Government; and (iii) general counseling services relating to patent and copyright matters, such as advice on patent and copyright laws, regulations, clauses, and employee agreements (but see Attachment B, sections 32, Professional service costs, and 38, Royalties and other costs for use of patents and copyrights).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

b. The following costs related to patent and copyright matter are unallowable:

(i) Cost of preparing disclosures, reports, and other documents and of searching the art to the extent necessary to make disclosures not required by the award

(ii) Costs in connection with filing and prosecuting any foreign patent application, or (ii) any United States patent application, where the Federal award does not require conveying title or a royalty-free license to the Federal Government (but see Attachment B, section 38., Royalties and other costs for use of patents and copyrights).

30. Plant and homeland security costs. Necessary and reasonable expenses incurred for routine and homeland security to protect facilities, personnel, and work products are allowable. Such costs include, but are not limited to, wages and uniforms of personnel engaged in security activities; equipment; barriers; contractual security services; consultants; etc. Capital expenditures for homeland and plant security purposes are subject to section 15., Equipment and other capital expenditures, of this Circular.

31. Pre-award costs. Pre-award costs are those incurred prior to the effective date of the award directly pursuant to the negotiation and in anticipation of the award where such costs are necessary to comply with the proposed delivery schedule or period of performance. Such costs are allowable only to the extent that they would have been allowable if incurred after the date of the award and only with the written approval of the awarding agency.

32. Professional service costs.

a. Costs of professional and consultant services rendered by persons who are members of a particular profession or possess a special skill, and who are not officers or employees of the governmental unit, are allowable, subject to subparagraphs b and c when reasonable in relation to the services rendered and when not contingent upon recovery of the costs from the Federal Government.

In addition, legal and related services are limited under Attachment B, section 10.

b. In determining the allowability of costs in a particular case, no single factor or any special combination of factors is necessarily determinative. However, the following factors are relevant:

(1) The nature and scope of the service rendered in relation to the service required.

(2) The necessity of contracting for the service, considering the governmental unit's capability in the particular area.

(3) The past pattern of such costs, particularly in the years prior to Federal awards.

(4) The impact of Federal awards on the governmental unit's business (i.e., what new problems have arisen).

(5) Whether the proportion of Federal work to the governmental unit's total business is such as to influence the governmental unit in favor of incurring the cost, particularly where the services rendered are not of a continuing nature and have little relationship to work under Federal grants and contracts.

(6) Whether the service can be performed more economically by direct employment rather than contracting.

(7) The qualifications of the individual or concern rendering the service and the customary fees charged, especially on non-Federal awards.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

(8) Adequacy of the contractual agreement for the service (e.g., description of the service, estimate of time required, rate of compensation, and termination provisions).

c. In addition to the factors in subparagraph b, retainer fees to be allowable must be supported by available or rendered evidence of bona fide services available or rendered.

33. Proposal costs. Costs of preparing proposals for potential Federal awards are allowable. Proposal costs should normally be treated as indirect costs and should be allocated to all activities of the governmental unit utilizing the cost allocation plan and indirect cost rate proposal. However, proposal costs may be charged directly to Federal awards with the prior approval of the Federal awarding agency.

34. Publication and printing costs.

a. Publication costs include the costs of printing (including the processes of composition, plate-making, press work, binding, and the end products produced by such processes), distribution, promotion, mailing, and general handling. Publication costs also include page charges in professional publications.

b. If these costs are not identifiable with a particular cost objective, they should be allocated as indirect costs to all benefiting activities of the governmental unit.

c. Page charges for professional journal publications are allowable as a necessary part of research costs where:

(1) The research papers report work supported by the Federal Government: and

(2) The charges are levied impartially on all research papers published by the journal, whether or not by federally-sponsored authors

35. Rearrangement and alteration costs. Costs incurred for ordinary and normal rearrangement and alteration of facilities are allowable. Special arrangements and alterations costs incurred specifically for a Federal award are allowable with the prior approval of the Federal awarding agency.

36. Reconversion costs. Costs incurred in the restoration or rehabilitation of the governmental unit's facilities to approximately the same condition existing immediately prior to commencement of Federal awards, less costs related to normal wear and tear, are allowable.

37. Rental costs of buildings and equipment.

a. Subject to the limitations described in subsections b. through d. of this section, rental costs are allowable to the extent that the rates are reasonable in light of such factors as: rental costs of comparable property, if any; market conditions in the area; alternatives available; and, the type, life expectancy, condition, and value of the property leased. Rental arrangements should be reviewed periodically to determine if circumstances have changed and other options are available.

b. Rental costs under "sale and lease back" arrangements are allowable only up to the amount that would be allowed had the governmental unit continued to own the property. This amount would include expenses such as depreciation or use allowance, maintenance, taxes, and insurance.

c. Rental costs under "less-than-arms-length" leases are allowable only up to the amount (as explained in Attachment B, section 37.b) that would be allowed had title to the property vested in the governmental unit. For this purpose, a less-than-arms-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

length lease is one under which one party to the lease agreement is able to control or substantially influence the actions of the other. Such leases include, but are not limited to those between (i) divisions of a governmental unit; (ii) governmental units under common control through common officers, directors, or members; and (iii) a governmental unit and a director, trustee, officer, or key employee of the governmental unit of his immediate family, either directly or through corporations, trusts, or similar arrangements in which they hold a controlling interest. For example, a governmental unit may establish a separate corporation for the sole purpose of owning property and leasing it back to the governmental unit.

d. Rental costs under leases which are required to be treated as capital leases under GAAP are allowable only up to the amount (as explained in subsection b) that would be allowed had the governmental unit purchased the property on the date the lease agreement was executed. The provisions of Financial Accounting Standards Board Statement 13, Accounting for Leases, shall be used to determine whether a lease is a capital lease. Interest costs related to capital leases are allowable to the extent they meet the criteria in Attachment B, section 23. Unallowable costs include amounts paid for profit, management fees, and taxes that would not have been incurred had the governmental unit purchased the facility.

38. <u>Royalties and other costs for the use of patents.</u>

a. Royalties on a patent or copyright or amortization of the cost of acquiring by purchase a copyright, patent, or rights thereto, necessary for the proper performance of the award are allowable unless:

(1) The Federal Government has a license or the right to free use of the patent or copyright.

(2) The patent or copyright has been adjudicated to be invalid, or has been administratively determined to be invalid.

(3) The patent or copyright is considered to be unenforceable.

(4) The patent or copyright is expired.

b. Special care should be exercised in determining reasonableness where the royalties may have been arrived at as a result of less-than-arm's-length bargaining, e.g.:

(1) Royalties paid to persons, including corporations, affiliated with the governmental unit.

(2) Royalties paid to unaffiliated parties, including corporations, under an agreement entered into in contemplation that a Federal award would be made.

(3) Royalties paid under an agreement entered into after an award is made to a governmental unit.

c. In any case involving a patent or copyright formerly owned by the governmental unit, the amount of royalty allowed should not exceed the cost which would have been allowed had the governmental unit retained title thereto.

39. <u>Selling and marketing.</u> Costs of selling and marketing any products or services of the governmental unit are unallowable (unless allowed under Attachment B, section 1. as allowable public relations costs or under Attachment B, section 33. as allowable proposal costs.

40. <u>Taxes</u>.

a. Taxes that a governmental unit is legally required to pay are allowable, except for self-assessed taxes that disproportionately affect Federal programs or changes in tax policies that disproportionately affect Federal programs. This provision becomes effective for taxes paid during the governmental unit's first fiscal year that begins on or after January 1, 1998, and ap-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

plies thereafter.

b. Gasoline taxes, motor vehicle fees, and other taxes that are in effect user fees for benefits provided to the Federal Government are allowable.

c. This provision does not restrict the authority of Federal agencies to identify taxes where Federal participation is inappropriate. Where the identification of the amount of unallowable taxes would require an inordinate amount of effort, the cognizant agency may accept a reasonable approximation thereof.

41. Termination costs applicable to sponsored agreements. Termination of awards generally gives rise to the incurrence of costs, or the need for special treatment of costs, which would not have arisen had the Federal award not been terminated. Cost principles covering these items are set forth below. They are to be used in conjunction with the other provisions of this Circular in termination situations.

a. The cost of items reasonably usable on the governmental unit's other work shall not be allowable unless the governmental unit submits evidence that it would not retain such items at cost without sustaining a loss. In deciding whether such items are reasonably usable on other work of the governmental unit, the awarding agency should consider the governmental unit's plans and orders for current and scheduled activity.

Contemporaneous purchases of common items by the governmental unit shall be regarded as evidence that such items are reasonably usable on the governmental unit's other work. Any acceptance of common items as allocable to the terminated portion of the Federal award shall be limited to the extent that the quantities of such items on hand, in transit, and on order are in excess of the reasonable quantitative requirements of other work.

b. If in a particular case, despite all reasonable efforts by the governmental unit, certain costs cannot be discontinued immediately after the effective date of termination, such costs are generally allowable within the limitations set forth in this Circular, except that any such costs continuing after termination due to the negligent or willful failure of the governmental unit to discontinue such costs shall be unallowable.

c. Loss of useful value of special tooling, machinery, and equipment is generally allowable if:

(1) Such special tooling, special machinery, or equipment is not reasonably capable of use in the other work of the governmental unit,

(2) The interest of the Federal Government is protected by transfer of title or by other means deemed appropriate by the awarding agency, and

(3) The loss of useful value for any one terminated Federal award is limited to that portion of the acquisition cost which bears the same ratio to the total acquisition cost as the terminated portion of the Federal award bears to the entire terminated Federal award and other Federal awards for which the special tooling, machinery, or equipment was acquired.

d. Rental costs under unexpired leases are generally allowable where clearly shown to have been reasonably necessary for the performance of the terminated Federal award less the residual value of such leases, if:

(1) the amount of such rental claimed does not exceed the reasonable use value of the property leased for the period of the Federal award and such further period as may be reasonable, and

(2) the governmental unit makes all reasonable efforts to terminate, assign, settle, or otherwise reduce the cost of such lease. There also may be included the cost of alterations of such leased property, provided such alterations were necessary for the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

performance of the Federal award, and of reasonable restoration required by the provisions of the lease.

e. Settlement expenses including the following are generally allowable:

(1) Accounting, legal, clerical, and similar costs reasonably necessary for:

(a) The preparation and presentation to the awarding agency of settlement claims and supporting data with respect to the terminated portion of the Federal award, unless the termination is for default (see Subpart ___ .44 of the Grants Management Common Rule implementing OMB Circular A-102); and

(b) The termination and settlement of subawards.

(2) Reasonable costs for the storage, transportation, protection, and disposition of property provided by the Federal Government or acquired or produced for the Federal award, except when grantees or contractors are reimbursed for disposals at a predetermined amount in accordance with Subparts ___ .31 and ____ .32 of the Grants Management Common Rule implementing OMB Circular A-102.

f. Claims under subawards, including the allocable portion of claims which are common to the Federal award, and to other work of the governmental unit are generally allowable.

An appropriate share of the governmental unit's indirect expense may be allocated to the amount of settlements with subcontractors and/or subgrantees, provided that the amount allocated is otherwise consistent with the basic guidelines contained in Attachment A. The indirect expense so allocated shall exclude the same and similar costs claimed directly or indirectly as settlement expenses.

42. Training costs. The cost of training provided for employee development is allowable.

43. Travel costs.

a. General. Travel costs are the expenses for transportation, lodging, subsistence, and related items incurred by employees who are in travel status on official business of the governmental unit. Such costs may be charged on an actual cost basis, on a per diem or mileage basis in lieu of actual costs incurred, or on a combination of the two, provided the method used is applied to an entire trip and not to selected days of the trip, and results in charges consistent with those normally allowed in like circumstances in the governmental unit's non-federally-sponsored activities. Notwithstanding the provisions of Attachment B, section 19, General government expenses, travel costs of officials covered by that section are allowable with the prior approval of an awarding agency when they are specifically related to Federal awards.

b. Lodging and subsistence. Costs incurred by employees and officers for travel, including costs of lodging, other subsistence, and incidental expenses, shall be considered reasonable and allowable only to the extent such costs do not exceed charges normally allowed by the governmental unit in its regular operations as the result of the governmental unit's written travel policy. In the absence of an acceptable, written governmental unit policy regarding travel costs, the rates and amounts established under subchapter I of Chapter 57, Title 5, United States Code ("Travel and Subsistence Expenses; Mileage Allowances"), or by the Administrator of General Services, or by the President (or his or her designee) pursuant to any provisions of such subchapter shall apply to travel under Federal awards (48 CFR 31.205-46(a)).

c. Commercial air travel.

(1) Airfare costs in excess of the customary standard commercial airfare (coach or equivalent), Federal Government contract airfare (where authorized and available), or the lowest commercial discount airfare are unallowable except when such ac-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

commodations would:

(a) require circuitous routing;

(b) require travel during unreasonable hours;

(c) excessively prolong travel;

(d) result in additional costs that would offset the transportation savings; or

(e) offer accommodations not reasonably adequate for the traveler's medical needs. The governmental unit must justify and document these conditions on a case-by-case basis in order for the use of first-class airfare to be allowable in such cases.

(2) Unless a pattern of avoidance is detected, the Federal Government will generally not question a governmental unit's determinations that customary standard airfare or other discount airfare is unavailable for specific trips if the governmental unit can demonstrate either of the following: (a) that such airfare was not available in the specific case; or (b) that it is the governmental unit's overall practice to make routine use of such airfare.

d. Air travel by other than commercial carrier. Costs of travel by governmental unit-owned, - leased, or -chartered aircraft include the cost of lease, charter, operation (including personnel costs), maintenance, depreciation, insurance, and other related costs. The portion of such costs that exceeds the cost of allowable commercial air travel, as provided for in subsection c., is unallowable.

e. Foreign travel. Direct charges for foreign travel costs are allowable only when the travel has received prior approval of the awarding agency. Each separate foreign trip must receive such approval. For purposes of this provision, "foreign travel" includes any travel outside Canada, Mexico, the United States, and any United States territories and possessions. However, the term "foreign travel" for a governmental unit located in a foreign country means travel outside that country.

## ATTACHMENT C

## STATE/LOCAL-WIDE CENTRAL SERVICE COST ALLOCATION PLANS

<u>TABLE OF CONTENTS</u>

A. General

B. Definitions

1. Billed central services

2. Allocated central services

3. Agency or operating agency

C. Scope of the Central Service Cost Allocation Plans

D. Submission Requirements

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

E. Documentation Requirements for Submitted Plans

1. General

2. Allocated central services

3. Billed services

a. General

b. Internal service funds

c. Self-insurance funds

d. Fringe benefits

4. Required certification

F. Negotiation and Approval of Central Service Plans

G. Other Policies

1. Billed central service activities

2. Working capital reserves

3. Carry-forward adjustments of allocated central service costs

4. Adjustments of billed central services

5. Records retention

6. Appeals

7. OMB assistance

A. <u>General</u>.

1. Most governmental units provide certain services, such as motor pools, computer centers, purchasing, accounting, etc., to operating agencies on a centralized basis. Since federally-supported awards are performed within the individual operating agencies, there needs to be a process whereby these central service costs can be identified and assigned to benefitted activities on a reasonable and consistent basis. The central service cost allocation plan provides that process. All costs and other data used to distribute the costs included in the plan should be supported by formal accounting and other records that will support the propriety of the costs assigned to Federal awards.

2. Guidelines and illustrations of central service cost allocation plans are provided in a brochure published by the Department of Health and Human Services entitled "A Guide for State and Local Government Agencies: Cost Principles and Procedures for Establishing Cost Allocation Plans and Indirect Cost Rates for Grants and Contracts with the Federal Government." A

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

copy of this brochure may be obtained from the Superintendent of Documents, U.S. Government Printing Office.

B. <u>Definitions</u>.

1. "Billed central services" means central services that are billed to benefitted agencies and/or programs on an individual fee-for-service or similar basis. Typical examples of billed central services include computer services, transportation services, insurance, and fringe benefits.

2. "Allocated central services" means central services that benefit operating agencies but are not billed to the agencies on a fee-for-service or similar basis. These costs are allocated to benefitted agencies on some reasonable basis. Examples of such services might include general accounting, personnel administration, purchasing, etc.

3. "Agency or operating agency" means an organizational unit or sub-division within a governmental unit that is responsible for the performance or administration of awards or activities of the governmental unit.

C. <u>Scope of the Central Service Cost Allocation Plans</u>. The central service cost allocation plan will include all central service costs that will be claimed (either as a billed or an allocated cost) under Federal awards and will be documented as described in section E. Costs of central services omitted from the plan will not be reimbursed.

D. <u>Submission Requirements</u>.

1. Each State will submit a plan to the Department of Health and Human Services for each year in which it claims central service costs under Federal awards. The plan should include (a) a projection of the next year's allocated central service cost (based either on actual costs for the most recently completed year or the budget projection for the coming year), and (b) a reconciliation of actual allocated central service costs to the estimated costs used for either the most recently completed year or the year immediately preceding the most recently completed year.

2. Each local government that has been designated as a "major local government" by the Office of Management and Budget (OMB) is also required to submit a plan to its cognizant agency annually. OMB periodically lists major local governments in the <u>Federal</u> <u>Register</u>.

3. All other local governments claiming central service costs must develop a plan in accordance with the requirements described in this Circular and maintain the plan and related supporting documentation for audit. These local governments are not required to submit their plans for Federal approval unless they are specifically requested to do so by the cognizant agency. Where a local government only receives funds as a sub-recipient, the primary recipient will be responsible for negotiating indirect cost rates and/or monitoring the sub-recipient's plan.

4. All central service cost allocation plans will be prepared and, when required, submitted within six months prior to the beginning of each of the governmental unit's fiscal years in which it proposes to claim central service costs. Extensions may be granted by the cognizant agency on a case-by-case basis.

E. <u>Documentation Requirements for Submitted Plans</u>. The documentation requirements described in this section may be modified, expanded, or reduced by the cognizant agency on a case-by-case basis. For example, the requirements may be reduced for those central services which have little or no impact on Federal awards. Conversely, if a review of a plan indicates that certain additional information is needed, and will likely be needed in future years, it may be routinely requested in future plan submissions. Items marked with an asterisk (*) should be submitted only once; subsequent plans should merely indicate any changes since the last plan.

1. General. All proposed plans must be accompanied by the following: an organization chart sufficiently detailed to show

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

operations including the central service activities of the State/local government whether or not they are shown as benefiting from central service functions; a copy of the Comprehensive Annual Financial Report (or a copy of the Executive Budget if budgeted costs are being proposed) to support the allowable costs of each central service activity included in the plan; and, a certification (see subsection 4.) that the plan was prepared in accordance with this Circular, contains only allowable costs, and was prepared in a manner that treated similar costs consistently among the various Federal awards and between Federal and non-Federal awards/activities.

2. Allocated central services. For each allocated central service, the plan must also include the following: a brief description of the service*, an identification of the unit rendering the service and the operating agencies receiving the service, the items of expense included in the cost of the service, the method used to distribute the cost of the service to benefitted agencies, and a summary schedule showing the allocation of each service to the specific benefitted agencies. If any self-insurance funds or fringe benefits costs are treated as allocated (rather than billed) central services, documentation discussed in subsections 3.b. and c. shall also be included.

3. Billed services.

a. General. The information described below shall be provided for all billed central services, including internal service funds, self-insurance funds, and fringe benefit funds.

b. Internal service funds.

(1) For each internal service fund or similar activity with an operating budget of $5 million or more, the plan shall include: a brief description of each service; a balance sheet for each fund based on individual accounts contained in the governmental unit's accounting system; a revenue/expenses statement, with revenues broken out by source, e.g., regular billings, interest earned, etc.; a listing of all non-operating transfers (as defined by Generally Accepted Accounting Principles (GAAP)) into and out of the fund; a description of the procedures (methodology) used to charge the costs of each service to users, including how billing rates are determined; a schedule of current rates; and, a schedule comparing total revenues (including imputed revenues) generated by the service to the allowable costs of the service, as determined under this Circular, with an explanation of how variances will be handled.

(2) Revenues shall consist of all revenues generated by the service, including unbilled and uncollected revenues. If some users were not billed for the services (or were not billed at the full rate for that class of users), a schedule showing the full imputed revenues associated with these users shall be provided. Expenses shall be broken out by object cost categories (e.g., salaries, supplies, etc.).

c. Self-insurance funds. For each self-insurance fund, the plan shall include: the fund balance sheet; a statement of revenue and expenses including a summary of billings and claims paid by agency; a listing of all non-operating transfers into and out of the fund; the type(s) of risk(s) covered by the fund (e.g., automobile liability, workers' compensation, etc.); an explanation of how the level of fund contributions are determined, including a copy of the current actuarial report (with the actuarial assumptions used) if the contributions are determined on an actuarial basis; and, a description of the procedures used to charge or allocate fund contributions to benefitted activities. Reserve levels in excess of claims (1) submitted and adjudicated but not paid, (2) submitted but not adjudicated, and (3) incurred but not submitted must be identified and explained.

d. Fringe benefits. For fringe benefit costs, the plan shall include: a listing of fringe benefits provided to covered employees, and the overall annual cost of each type of benefit; current fringe benefit policies*; and procedures used to charge or allocate the costs of the benefits to benefitted activities. In addition, for pension and post-retirement health insurance plans, the following information shall be provided: the governmental unit's funding policies, e.g., legislative bills, trust agreements, or State-mandated contribution rules, if different from actuarially determined rates; the pension plan's costs accrued for the year; the amount funded, and date(s) of funding; a copy of the current actuarial report (including the actuarial assumptions); the plan trustee's report; and, a schedule from the activity showing the value of the interest cost associated with late funding.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

4. Required certification. Each central service cost allocation plan will be accompanied by a certification in the following form:

## CERTIFICATE OF COST ALLOCATION PLAN

This is to certify that I have reviewed the cost allocation plan submitted herewith and to the best of my knowledge and belief:

(1) All costs included in this proposal [identify date] to establish cost allocations or billings for [identify period covered by plan] are allowable in accordance with the requirements of OMB Circular **A**-**87**, "Cost Principles for State, Local, and Indian Tribal Governments," and the Federal award(s) to which they apply. Unallowable costs have been adjusted for in allocating costs as indicated in the cost allocation plan.

(2) All costs included in this proposal are properly allocable to Federal awards on the basis of a beneficial or causal relationship between the expenses incurred and the awards to which they are allocated in accordance with applicable requirements. Further, the same costs that have been treated as indirect costs have not been claimed as direct costs. Similar types of costs have been accounted for consistently.

I declare that the foregoing is true and correct.

Governmental Unit: _____

Signature: _____

Name of Official: _____

Title: _____

Date of Execution: _____

F. <u>Negotiation and Approval of Central Service Plans</u>.

1. All proposed central service cost allocation plans that are required to be submitted will be reviewed, negotiated, and approved by the Federal cognizant agency on a timely basis. The cognizant agency will review the proposal within six months of receipt of the proposal and either negotiate/approve the proposal or advise the governmental unit of the additional documentation needed to support/evaluate the proposed plan or the changes required to make the proposal acceptable. Once an agreement with the governmental unit has been reached, the agreement will be accepted and used by all Federal agencies, unless prohibited or limited by statute. Where a Federal funding agency has reason to believe that special operating factors affecting its awards necessitate special consideration, the funding agency will, prior to the time the plans are negotiated, notify the cognizant agency.

2. The results of each negotiation shall be formalized in a written agreement between the cognizant agency and the governmental unit. This agreement will be subject to re-opening if the agreement is subsequently found to violate a statute or the information upon which the plan was negotiated is later found to be materially incomplete or inaccurate. The results of the negotiation shall be made available to all Federal agencies for their use.

3. Negotiated cost allocation plans based on a proposal later found to have included costs that: (a) are unallowable (i) as specified by law or regulation, (ii) as identified in Attachment B of this Circular, or (iii) by the terms and conditions of Federal awards, or (b) are unallowable because they are clearly not allocable to Federal awards, shall be adjusted, or a refund

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

shall be made at the option of the Federal cognizant agency. These adjustments or refunds are designed to correct the plans and do not constitute a reopening of the negotiation.

G. Other Policies.

1. Billed central service activities. Each billed central service activity must separately account for all revenues (including imputed revenues) generated by the service, expenses incurred to furnish the service, and profit/loss.

2. Working capital reserves. Internal service funds are dependent upon a reasonable level of working capital reserve to operate from one billing cycle to the next. Charges by an internal service activity to provide for the establishment and maintenance of a reasonable level of working capital reserve, in addition to the full recovery of costs, are allowable. A working capital reserve as part of retained earnings of up to 60 days cash expenses for normal operating purposes is considered reasonable. A working capital reserve exceeding 60 days may be approved by the cognizant Federal agency in exceptional cases.

3. Carry-forward adjustments of allocated central service costs. Allocated central service costs are usually negotiated and approved for a future fiscal year on a "fixed with carry-forward" basis. Under this procedure, the fixed amounts for the future year covered by agreement are not subject to adjustment for that year. However, when the actual costs of the year involved become known, the differences between the fixed amounts previously approved and the actual costs will be carried forward and used as an adjustment to the fixed amounts established for a later year. This "carry-forward" procedure applies to all central services whose costs were fixed in the approved plan. However, a carry-forward adjustment is not permitted, for a central service activity that was not included in the approved plan, or for unallowable costs that must be reimbursed immediately.

4. Adjustments of billed central services. Billing rates used to charge Federal awards shall be based on the estimated costs of providing the services, including an estimate of the allocable central service costs. A comparison of the revenue generated by each billed service (including total revenues whether or not billed or collected) to the actual allowable costs of the service will be made at least annually, and an adjustment will be made for the difference between the revenue and the allowable costs. These adjustments will be made through one of the following adjustment methods: (a) a cash refund to the Federal Government for the Federal share of the adjustment, (b) credits to the amounts charged to the individual programs, (c) adjustments to future billing rates, or (d) adjustments to allocated central service costs. Adjustments to allocated central services will not be permitted where the total amount of the adjustment for a particular service (Federal share and non-Federal) share exceeds $500,000.

5. Records retention. All central service cost allocation plans and related documentation used as a basis for claiming costs under Federal awards must be retained for audit in accordance with the records retention requirements contained in the Common Rule.

6. Appeals. If a dispute arises in the negotiation of a plan between the cognizant agency and the governmental unit, the dispute shall be resolved in accordance with the appeals procedures of the cognizant agency.

7. OMB assistance. To the extent that problems are encountered among the Federal agencies and/or governmental units in connection with the negotiation and approval process, OMB will lend assistance, as required, to resolve such problems in a timely manner.

ATTACHMENT D

PUBLIC ASSISTANCE COST ALLOCATION PLANS

TABLE OF CONTENTS

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

A. General

B. Definitions

1. State public assistance agency

2. State public assistance agency costs

C. Policy

D. Submission, Documentation, and Approval of Public Assistance Cost Allocation Plans

E. Review of Implementation of Approved Plans

F. Unallowable Costs

A. General. Federally-financed programs administered by State public assistance agencies are funded predominately by the Department of Health and Human Services (HHS). In support of its stewardship requirements, HHS has published requirements for the development, documentation, submission, negotiation, and approval of public assistance cost allocation plans in Subpart E of 45 CFR Part 95. All administrative costs (direct and indirect) are normally charged to Federal awards by implementing the public assistance cost allocation plan. This Attachment extends these requirements to all Federal agencies whose programs are administered by a State public assistance agency. Major federally-financed programs typically administered by State public assistance agencies include: *Temporary Assistance to Needy Families (TANF)*, Medicaid, Food Stamps, Child Support Enforcement, Adoption Assistance and Foster Care, and Social Services Block Grant.

B. Definitions.

1. "State public assistance agency" means a State agency administering or supervising the administration of one or more public assistance programs operated by the State as identified in Subpart E of 45 CFR Part 95. For the purpose of this Attachment, these programs include all programs administered by the State public assistance agency.

2. "State public assistance agency costs" means all costs incurred by, or allocable to, the State public assistance agency, except expenditures for financial assistance, medical vendor payments, food stamps, and payments for services and goods provided directly to program recipients.

C. Policy. State public assistance agencies will develop, document and implement, and the Federal Government will review, negotiate, and approve, public assistance cost allocation plans in accordance with Subpart E of 45 CFR Part 95. The plan will include all programs administered by the State public assistance agency. Where a letter of approval or disapproval is transmitted to a State public assistance agency in accordance with Subpart E, the letter will apply to all Federal agencies and programs. The remaining sections of this Attachment (except for the requirement for certification) summarize the provisions of Subpart E of 45 CFR Part 95.

D. Submission, Documentation, and Approval of Public Assistance Cost Allocation Plans.

1. State public assistance agencies are required to promptly submit amendments to the cost allocation plan to HHS for review and approval.

2. Under the coordination process outlined in subsection E, affected Federal agencies will review all new plans and plan amendments and provide comments, as appropriate, to HHS. The effective date of the plan or plan amendment will be the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

first day of the quarter following the submission of the plan or amendment, unless another date is specifically approved by HHS. HHS, as the cognizant agency acting on behalf of all affected Federal agencies, will, as necessary, conduct negotiations with the State public assistance agency and will inform the State agency of the action taken on the plan or plan amendment.

E. Review of Implementation of Approved Plans.

1. Since public assistance cost allocation plans are of a narrative nature, the review during the plan approval process consists of evaluating the appropriateness of the proposed groupings of costs (cost centers) and the related allocation bases. As such, the Federal Government needs some assurance that the cost allocation plan has been implemented as approved. This is accomplished by reviews by the funding agencies, single audits, or audits conducted by the cognizant audit agency.

2. Where inappropriate charges affecting more than one funding agency are identified, the cognizant HHS cost negotiation office will be advised and will take the lead in resolving the issue(s) as provided for in Subpart E of 45 CFR Part 95.

3. If a dispute arises in the negotiation of a plan or from a disallowance involving two or more funding agencies, the dispute shall be resolved in accordance with the appeals procedures set out in 45 CFR Part 75. Disputes involving only one funding agency will be resolved in accordance with the funding agency's appeal process.

4. To the extent that problems are encountered among the Federal agencies and/or governmental units in connection with the negotiation and approval process, the Office of Management and Budget will lend assistance, as required, to resolve such problems in a timely manner.

F. Unallowable Costs. Claims developed under approved cost allocation plans will be based on allowable costs as identified in this Circular. Where unallowable costs have been claimed and reimbursed, they will be refunded to the program that reimbursed the unallowable cost using one of the following methods: (a) a cash refund, (b) offset to a subsequent claim, or (c) credits to the amounts charged to individual awards.

ATTACHMENT E

STATE AND LOCAL INDIRECT COST RATE PROPOSALS

TABLE OF CONTENTS

A. General

B. Definitions

1. Indirect cost rate proposal

2. Indirect cost rate

3. Indirect cost pool

4. Base

5. Predetermined rate

6. Fixed rate

Circular No. A-87 Revised, 2004 WL 1367024 (O.M.B.)                                      Page 41

7. Provisional rate

8. Final rate

9. Base period

C. Allocation of Indirect Costs and Determination of Indirect Cost Rates

1. General

2. Simplified method

3. Multiple allocation base method

4. Special indirect cost rates

D. Submission and Documentation of Proposals

1. Submission of indirect cost rate proposals

2. Documentation of proposals

3. Required certification

E. Negotiation and Approval of Rates

F. Other Policies

1. Fringe benefit rates

2. Billed services provided by the grantee agency

3. Indirect cost allocations not using rates

4. Appeals

5. Collections of unallowable costs and erroneous payments

6. OMB assistance

A. <u>General</u>.

1. Indirect costs are those that have been incurred for common or joint purposes. These costs benefit more than one cost objective and cannot be readily identified with a particular final cost objective without effort disproportionate to the results achieved. After direct costs have been determined and assigned directly to Federal awards and other activities as appropriate, indirect costs are those remaining to be allocated to benefitted cost objectives. A cost may not be allocated to a Federal award

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

as an indirect cost if any other cost incurred for the same purpose, in like circumstances, has been assigned to a Federal award as a direct cost.

2. Indirect costs include (a) the indirect costs originating in each department or agency of the governmental unit carrying out Federal awards and (b) the costs of central governmental services distributed through the central service cost allocation plan (as described in Attachment C) and not otherwise treated as direct costs.

3. Indirect costs are normally charged to Federal awards by the use of an indirect cost rate. A separate indirect cost rate(s) is usually necessary for each department or agency of the governmental unit claiming indirect costs under Federal awards. Guidelines and illustrations of indirect cost proposals are provided in a brochure published by the Department of Health and Human Services entitled "A Guide for State and Local Government Agencies: Cost Principles and Procedures for Establishing Cost Allocation Plans and Indirect Cost Rates for Grants and Contracts with the Federal Government." A copy of this brochure may be obtained from the Superintendent of Documents, U.S. Government Printing Office.

4. Because of the diverse characteristics and accounting practices of governmental units, the types of costs which may be classified as indirect costs cannot be specified in all situations. However, typical examples of indirect costs may include certain State/local-wide central service costs, general administration of the grantee department or agency, accounting and personnel services performed within the grantee department or agency, depreciation or use allowances on buildings and equipment, the costs of operating and maintaining facilities, etc.

5. This Attachment does not apply to State public assistance agencies. These agencies should refer instead to Attachment D.

B. <u>Definitions</u>.

1. "Indirect cost rate proposal" means the documentation prepared by a governmental unit or subdivision thereof to substantiate its request for the establishment of an indirect cost rate.

2. "Indirect cost rate" is a device for determining in a reasonable manner the proportion of indirect costs each program should bear. It is the ratio (expressed as a percentage) of the indirect costs to a direct cost base.

3. "Indirect cost pool" is the accumulated costs that jointly benefit two or more programs or other cost objectives.

4. "Base" means the accumulated direct costs (normally either total direct salaries and wages or total direct costs exclusive of any extraordinary or distorting expenditures) used to distribute indirect costs to individual Federal awards. The direct cost base selected should result in each award bearing a fair share of the indirect costs in reasonable relation to the benefits received from the costs.

5. "Predetermined rate" means an indirect cost rate, applicable to a specified current or future period, usually the governmental unit's fiscal year. This rate is based on an estimate of the costs to be incurred during the period. Except under very unusual circumstances, a predetermined rate is not subject to adjustment. (Because of legal constraints, predetermined rates are not permitted for Federal contracts; they may, however, be used for grants or cooperative agreements.) Predetermined rates may not be used by governmental units that have not submitted and negotiated the rate with the cognizant agency. In view of the potential advantages offered by this procedure, negotiation of predetermined rates for indirect costs for a period of two to four years should be the norm in those situations where the cost experience and other pertinent facts available are deemed sufficient to enable the parties involved to reach an informed judgment as to the probable level of indirect costs during the ensuing accounting periods.

6. "Fixed rate" means an indirect cost rate which has the same characteristics as a predetermined rate, except that the difference between the estimated costs and the actual, allowable costs of the period covered by the rate is carried forward as an adjustment to the rate computation of a subsequent period.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

7. "Provisional rate" means a temporary indirect cost rate applicable to a specified period which is used for funding, interim reimbursement, and reporting indirect costs on Federal awards pending the establishment of a "final" rate for that period.

8. "Final rate" means an indirect cost rate applicable to a specified past period which is based on the actual allowable costs of the period. A final audited rate is not subject to adjustment.

9. "Base period" for the allocation of indirect costs is the period in which such costs are incurred and accumulated for allocation to activities performed in that period. The base period normally should coincide with the governmental unit's fiscal year, but in any event, shall be so selected as to avoid inequities in the allocation of costs.

C. <u>Allocation of Indirect Costs and Determination of Indirect Cost Rates</u>.

1. General.

a. Where a governmental unit's department or agency has only one major function, or where all its major functions benefit from the indirect costs to approximately the same degree, the allocation of indirect costs and the computation of an indirect cost rate may be accomplished through simplified allocation procedures as described in subsection 2.

b. Where a governmental unit's department or agency has several major functions which benefit from its indirect costs in varying degrees, the allocation of indirect costs may require the accumulation of such costs into separate cost groupings which then are allocated individually to benefitted functions by means of a base which best measures the relative degree of benefit. The indirect costs allocated to each function are then distributed to individual awards and other activities included in that function by means of an indirect cost rate(s).

c. Specific methods for allocating indirect costs and computing indirect cost rates along with the conditions under which each method should be used are described in subsections 2, 3 and 4.

2. Simplified method.

a. Where a grantee agency's major functions benefit from its indirect costs to approximately the same degree, the allocation of indirect costs may be accomplished by (1) classifying the grantee agency's total costs for the base period as either direct or indirect, and (2) dividing the total allowable indirect costs (net of applicable credits) by an equitable distribution base. The result of this process is an indirect cost rate which is used to distribute indirect costs to individual Federal awards. The rate should be expressed as the percentage which the total amount of allowable indirect costs bears to the base selected. This method should also be used where a governmental unit's department or agency has only one major function encompassing a number of individual projects or activities, and may be used where the level of Federal awards to that department or agency is relatively small.

b. Both the direct costs and the indirect costs shall exclude capital expenditures and unallowable costs. However, unallowable costs must be included in the direct costs if they represent activities to which indirect costs are properly allocable.

c. The distribution base may be (1) total direct costs (excluding capital expenditures and other distorting items, such as pass-through funds, major subcontracts, etc.), (2) direct salaries and wages, or (3) another base which results in an equitable distribution.

3. Multiple allocation base method.

a. Where a grantee agency's indirect costs benefit its major functions in varying degrees, such costs shall be accumulated into

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

separate cost groupings. Each grouping shall then be allocated individually to benefitted functions by means of a base which best measures the relative benefits.

b. The cost groupings should be established so as to permit the allocation of each grouping on the basis of benefits provided to the major functions. Each grouping should constitute a pool of expenses that are of like character in terms of the functions they benefit and in terms of the allocation base which best measures the relative benefits provided to each function. The number of separate groupings should be held within practical limits, taking into consideration the materiality of the amounts involved and the degree of precision needed.

c. Actual conditions must be taken into account in selecting the base to be used in allocating the expenses in each grouping to benefitted functions. When an allocation can be made by assignment of a cost grouping directly to the function benefitted, the allocation shall be made in that manner. When the expenses in a grouping are more general in nature, the allocation should be made through the use of a selected base which produces results that are equitable to both the Federal Government and the governmental unit. In general, any cost element or related factor associated with the governmental unit's activities is potentially adaptable for use as an allocation base provided that: (1) it can readily be expressed in terms of dollars or other quantitative measures (total direct costs, direct salaries and wages, staff hours applied, square feet used, hours of usage, number of documents processed, population served, and the like), and (2) it is common to the benefitted functions during the base period.

d. Except where a special indirect cost rate(s) is required in accordance with subsection 4, the separate groupings of indirect costs allocated to each major function shall be aggregated and treated as a common pool for that function. The costs in the common pool shall then be distributed to individual Federal awards included in that function by use of a single indirect cost rate.

e. The distribution base used in computing the indirect cost rate for each function may be (1) total direct costs (excluding capital expenditures and other distorting items such as pass-through funds, major subcontracts, etc.), (2) direct salaries and wages, or (3) another base which results in an equitable distribution. An indirect cost rate should be developed for each separate indirect cost pool developed. The rate in each case should be stated as the percentage relationship between the particular indirect cost pool and the distribution base identified with that pool.

4. Special indirect cost rates.

a. In some instances, a single indirect cost rate for all activities of a grantee department or agency or for each major function of the agency may not be appropriate. It may not take into account those different factors which may substantially affect the indirect costs applicable to a particular program or group of programs. The factors may include the physical location of the work, the level of administrative support required, the nature of the facilities or other resources employed, the organizational arrangements used, or any combination thereof. When a particular award is carried out in an environment which appears to generate a significantly different level of indirect costs, provisions should be made for a separate indirect cost pool applicable to that award. The separate indirect cost pool should be developed during the course of the regular allocation process, and the separate indirect cost rate resulting therefrom should be used, provided that: (1) the rate differs significantly from the rate which would have been developed under subsections 2. and 3., and (2) the award to which the rate would apply is material in amount.

b. Although this Circular adopts the concept of the full allocation of indirect costs, there are some Federal statutes which restrict the reimbursement of certain indirect costs. Where such restrictions exist, it may be necessary to develop a special rate for the affected award. Where a "restricted rate" is required, the procedure for developing a non-restricted rate will be used except for the additional step of the elimination from the indirect cost pool those costs for which the law prohibits reimbursement.

D. <u>Submission and Documentation of Proposals</u>.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1. Submission of indirect cost rate proposals.

a. All departments or agencies of the governmental unit desiring to claim indirect costs under Federal awards must prepare an indirect cost rate proposal and related documentation to support those costs. The proposal and related documentation must be retained for audit in accordance with the records retention requirements contained in the Common Rule.

b. A governmental unit for which a cognizant agency assignment has been specifically designated must submit its indirect cost rate proposal to its cognizant agency. The Office of Management and Budget (OMB) will periodically publish lists of governmental units identifying the appropriate Federal cognizant agencies. The cognizant agency for all governmental units or agencies not identified by OMB will be determined based on the Federal agency providing the largest amount of Federal funds. In these cases, a governmental unit must develop an indirect cost proposal in accordance with the requirements of this Circular and maintain the proposal and related supporting documentation for audit. These governmental units are not required to submit their proposals unless they are specifically requested to do so by the cognizant agency. Where a local government only receives funds as a sub-recipient, the primary recipient will be responsible for negotiating and/or monitoring the sub-recipient's plan.

c. Each Indian tribal government desiring reimbursement of indirect costs must submit its indirect cost proposal to the Department of the Interior (its cognizant Federal agency).

d. Indirect cost proposals must be developed (and, when required, submitted) within six months after the close of the governmental unit's fiscal year, unless an exception is approved by the cognizant Federal agency. If the proposed central service cost allocation plan for the same period has not been approved by that time, the indirect cost proposal may be prepared including an amount for central services that is based on the latest federally-approved central service cost allocation plan. The difference between these central service amounts and the amounts ultimately approved will be compensated for by an adjustment in a subsequent period.

2. Documentation of proposals. The following shall be included with each indirect cost proposal:

a. The rates proposed, including subsidiary work sheets and other relevant data, cross referenced and reconciled to the financial data noted in subsection b. Allocated central service costs will be supported by the summary table included in the approved central service cost allocation plan. This summary table is not required to be submitted with the indirect cost proposal if the central service cost allocation plan for the same fiscal year has been approved by the cognizant agency and is available to the funding agency.

b. A copy of the financial data (financial statements, comprehensive annual financial report, executive budgets, accounting reports, etc.) upon which the rate is based. Adjustments resulting from the use of unaudited data will be recognized, where appropriate, by the Federal cognizant agency in a subsequent proposal.

c. The approximate amount of direct base costs incurred under Federal awards. These costs should be broken out between salaries and wages and other direct costs.

d. A chart showing the organizational structure of the agency during the period for which the proposal applies, along with a functional statement(s) noting the duties and/or responsibilities of all units that comprise the agency. (Once this is submitted, only revisions need be submitted with subsequent proposals.)

3. Required certification. Each indirect cost rate proposal shall be accompanied by a certification in the following form:

**CERTIFICATE OF INDIRECT COSTS**

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

This is to certify that I have reviewed the indirect cost rate proposal submitted herewith and to the best of my knowledge and belief:

(1) All costs included in this proposal [identify date] to establish billing or final indirect costs rates for [identify period covered by rate] are allowable in accordance with the requirements of the Federal award(s) to which they apply and OMB Circular **A-87**, "Cost Principles for State, Local, and Indian Tribal Governments." Unallowable costs have been adjusted for in allocating costs as indicated in the cost allocation plan.

(2) All costs included in this proposal are properly allocable to Federal awards on the basis of a beneficial or causal relationship between the expenses incurred and the agreements to which they are allocated in accordance with applicable requirements. Further, the same costs that have been treated as indirect costs have not been claimed as direct costs. Similar types of costs have been accounted for consistently and the Federal Government will be notified of any accounting changes that would affect the predetermined rate.

I declare that the foregoing is true and correct.

Governmental Unit: _____

Signature: _____

Name of Official: _____

Title: _____

Date of Execution: _____

E. Negotiation and Approval of Rates.

1. Indirect cost rates will be reviewed, negotiated, and approved by the cognizant Federal agency on a timely basis. Once a rate has been agreed upon, it will be accepted and used by all Federal agencies unless prohibited or limited by statute. Where a Federal funding agency has reason to believe that special operating factors affecting its awards necessitate special indirect cost rates, the funding agency will, prior to the time the rates are negotiated, notify the cognizant Federal agency.

2. The use of predetermined rates, if allowed, is encouraged where the cognizant agency has reasonable assurance based on past experience and reliable projection of the grantee agency's costs, that the rate is not likely to exceed a rate based on actual costs. Long-term agreements utilizing predetermined rates extending over two or more years are encouraged, where appropriate.

3. The results of each negotiation shall be formalized in a written agreement between the cognizant agency and the governmental unit. This agreement will be subject to re-opening if the agreement is subsequently found to violate a statute, or the information upon which the plan was negotiated is later found to be materially incomplete or inaccurate. The agreed upon rates shall be made available to all Federal agencies for their use.

4. Refunds shall be made if proposals are later found to have included costs that (a) are unallowable (i) as specified by law or regulation, (ii) as identified in Attachment B of this Circular, or (iii) by the terms and conditions of Federal awards, or (b) are unallowable because they are clearly not allocable to Federal awards. These adjustments or refunds will be made regardless of the type of rate negotiated (predetermined, final, fixed, or provisional).

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

F. Other Policies.

1. Fringe benefit rates. If overall fringe benefit rates are not approved for the governmental unit as part of the central service cost allocation plan, these rates will be reviewed, negotiated and approved for individual grantee agencies during the indirect cost negotiation process. In these cases, a proposed fringe benefit rate computation should accompany the indirect cost proposal. If fringe benefit rates are not used at the grantee agency level (i.e., the agency specifically identifies fringe benefit costs to individual employees), the governmental unit should so advise the cognizant agency.

2. Billed services provided by the grantee agency. In some cases, governmental units provide and bill for services similar to those covered by central service cost allocation plans (e.g., computer centers). Where this occurs, the governmental unit should be guided by the requirements in Attachment C relating to the development of billing rates and documentation requirements, and should advise the cognizant agency of any billed services. Reviews of these types of services (including reviews of costing/billing methodology, profits or losses, etc.) will be made on a case-by-case basis as warranted by the circumstances involved.

3. Indirect cost allocations not using rates. In certain situations, a governmental unit, because of the nature of its awards, may be required to develop a cost allocation plan that distributes indirect (and, in some cases, direct) costs to the specific funding sources. In these cases, a narrative cost allocation methodology should be developed, documented, maintained for audit, or submitted, as appropriate, to the cognizant agency for review, negotiation, and approval.

4. Appeals. If a dispute arises in a negotiation of an indirect cost rate (or other rate) between the cognizant agency and the governmental unit, the dispute shall be resolved in accordance with the appeals procedures of the cognizant agency.

5. Collection of unallowable costs and erroneous payments. Costs specifically identified as unallowable and charged to Federal awards either directly or indirectly will be refunded (including interest chargeable in accordance with applicable Federal agency regulations).

6. OMB assistance. To the extent that problems are encountered among the Federal agencies and/or governmental units in connection with the negotiation and approval process, OMB will lend assistance, as required, to resolve such problems in a timely manner.

Circular No. A-87 Revised, 2004 WL 1367024 (O.M.B.)
END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.