## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| | * | |
| IN RE: KATRINA CANAL BREACHES | * | |
| CONSOLIDATED LITIGATION | * | CIVIL ACTION |
| | * | |
| | * | NO. 05-4182 |
| PERTAINS TO: BARGE | * | and consolidated cases |
| | * | |
| | * | SECTION "K" (2) |
| *Boutte v. Lafarge* | 05-5531 | * |
| *Mumford v. Ingram* | 05-5724 | * |
| *Lagarde v. Lafarge* | 06-5342 | * JUDGE |
| *Perry v. Ingram* | 06-6299 | * STANWOOD R. DUVAL, JR. |
| *Benoit v. Lafarge* | 06-7516 | * |
| *Parfait Family v. USA* | 07-3500 | * MAG. |
| *Lafarge v. USA* | 07-5178 | * JOSEPH C. WILKINSON, JR. |
| *Weber v. Lafarge* | 08-4459 | * |

## BARGE PLAINTIFFS' SUR-SUR-REPLY IN SUPPORT OF MOTION TO CERTIFY CLASS

**MAY IT PLEASE THE COURT:**

*Lafarge North America Inc.'s Surreply Memorandum in Opposition to Plaintiffs' Motion for Class Certification,* Record Doc. 16675, misstates and misapplies the maritime law of joint and several liability governing the maritime torts sued upon here.  Lafarge summarizes its erroneous argument on p. 1 of its Sur-Reply as follows:

> "Plaintiffs wrongly argue that the various sources of flooding affecting the class area in different ways at different locations are irrelevant because LNA supposedly is liable for ***all*** of the flooding, from whatever source, if plaintiffs show the barge contributed a single drop of water. To the contrary, LNA is absolved from liability for levels of flooding it did not cause, and any liability for any flood damage must be allocated, as shown by the very sources plaintiffs cite. Plaintiffs' reply brief hinges on the erroneous premise that LNA can be held liable for the entire flood if it contributed "any degree of flooding," no matter how small (Reply Br. 11, 31)." Sur-

1

Reply of Lafarge North America, Inc.

Further, Lafarge misquotes the law to this Court through the statement, " '[i]f Lafarge is found partially negligent, it will be held liable ***only for its proportional damage***.' Doc. 16574 at 18 (emphasis added)." Lafarge Sur-Reply at p. 7.

Simply put, these statements do not reflect the applicable maritime law of joint and several liability governing this case.

Because the maritime law of joint and several liability bears directly upon the common questions of liability and causation, it is materially important to the issue of class certification. Understanding of the applicable law is critical to an analysis of the merit, *vel non*, of the argument raised by Lafarge in opposition to class certification herein.  As set forth herein, the rule of maritime joint and several liability is such that a single joint-tortfeasor may be held liable for an entire indivisible injury, regardless of the degree of fault.

### Joint and Several Liability Among Joint Maritime Tortfeasors<br>The Atlas, Edmonds and their Progeny

"For more than a century, general maritime law has held joint tortfeasors jointly and severally liable for all of the plaintiff's damages suffered at their hand. Under that rule, the risk of noncollection is borne by the defendants. The plaintiff can collect his entire judgment from a single defendant, leaving to the defendants allocation of fault among themselves."  *Coats v. Penrod Drilling Corp*., 61 F.3d 1113, 1119 (5th Cir. 1995) (*en banc*)*.*  Joint and several liability among maritime tortfeasors is predicated not on statutory enactments authored by legislators, but on *stare decisis* created by learned Judges, primarily in the Federal system. Since the 1876 United States Supreme Court decision, *The Atlas*, the United States Admiralty has embraced an equitable

interpretation of joint and several liability compatible with the needs and responsibilities of maritime commerce in cases involving multiple wrong-doers and the victims of their wrongdoing.[1] The general rule holds that the victim has the unabridged option to sue one joint tortfeasor, or all, for the entirety of the loss, reduced only by the victim's own fault, if any.   This is to be understood with certain more recent modifications of the doctrine, which nonetheless yield the same result in the context of the claims against Lafarge.

In 1979, the United States Supreme Court, in *Edmonds v. Compagnie Generale Transatlantique*,   443 U. S. 256, 271 (1979),  reaffirmed its prior holding in *The Atlas* - that a joint tortfeasor may be held entirely liable for a harm of which it was only a partial cause.[2]

> "...as a matter of maritime tort law, the shipowner would be responsible to the longshoreman in full for the remainder, even if the stevedore's negligence contributed to the injuries. FN7.  This latter rule is in accord with the common law, which allows an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident. FN8"  *Edmonds* at 260.[3]

> FN7. See, *e. g., Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 108, 113, 94 S.Ct. 2174, 2178, 40 L.Ed.2d 694 (1974)

---

[1] 93 U.S. 302 (1876).  Joint and several liability also governs LHWCA and Jones Act claims. *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1119 (5th Cir. 1995).

[2]  See *Edmonds v. Compagnie Generale Transatlantic*, 443 U. S. 256, 271 (1979). reiterating *The Atlas*, infra, rule of maritime law, to wit: "Of course, our conclusion that Congress did not intend to change the judicially created rule that the shipowner can be made to pay all the damages not due to the plaintiff's own negligence does not decide whether we are free to and should change that role so as to make the vessel liable only for the damages in proportion to its own negligence. Indeed, some *amici* in support of respondent share the view that Congress did not change the rule but argue that this Court should do so. We disagree."

[3]*Cf. Simeon v. T. Smith & Son, Inc*., 852 F.2d 1421 (5th Cir. 1988)*; Jefferson Barracks Marine Service v. Casey*, 763 F.2d 1007 (8th Cir. 1985);

(longshoreman could have recovered entire damages from shipowner responsible for 50% of the total fault); *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.,* 342 U.S. 282, 283, 72 S.Ct. 277, 278, 96 L.Ed. 318 (1952) (shipowner responsible for 25% of negligence required to pay 100% of damages, and contribution unavailable from negligent shoreside contractor, an employer under the Act). See also *The Atlas,* 93 U.S. 302, 23 L.Ed. 863 (1876); *The Juniata,* 93 U.S. 337, 23 L.Ed. 930 (1876). We stated the common-law rule in *The Atlas* and adopted it as part of admiralty jurisprudence: "Nothing is more clear than the right of a plaintiff, having suffered such a loss, to sue in a common-law action all the wrong-doers, or any one of them, at his election; and it is equally clear, that, if he did not contribute to the disaster, he is entitled to judgment in either case for the full amount of his loss." 93 U.S., at 315, 23 L.Ed. 863.

FN8. Restatement (Second) of Torts §§ 433A, 875, and 879 (1965 and 1979); T. Cooley, Law of Torts 142-144 (1879); W. Prosser, Law of Torts § 47, pp. 297-299, and § 52, pp. 314-315 (4th ed. 1971); cf. *Washington & Georgetown R. Co. v. Hickey,* 166 U.S. 521, 527, 17 S.Ct. 661, 663, 41 L.Ed. 1101 (1897). A tortfeasor is not relieved of liability for the entire harm he caused just because another's negligence was also a factor in effecting the injury. "Nor are the damages against him diminished." Restatement, *supra,* § 879, Comment a. Likewise, under traditional tort law, a plaintiff obtaining a judgment against more than one concurrent tortfeasor may satisfy it against any one of them. *Id.*, § 886. A concurrent tortfeasor generally may seek contribution from another, *id.*, § 886A, but he is not relieved from liability for the entire damages even when the nondefendant tortfeasor is immune from liability. *Id.,* § 880. These principles, of course, are inapplicable where the injury is divisible and the causation of each part can be separately assigned to each tortfeasor. *Id.*, §§ 433A(1) and 881.

_____*Edmonds*' policy of providing "full compensation" to victims by permitting them to obtain full recovery from a joint tortfeasor regardless of the degree of fault was further explained by the Court in *Becker V. Crounse Corp.*, 822 F. Supp. 386 (W.D.Ky. 1993), as follows:

"Maritime tort law seeks first to assure full compensation to victims for their injuries. That policy dictates the general imposition of joint and several liability upon multiple wrongdoers whose negligence precipitates an accident. As the Supreme Court has commented, this maritime doctrine "is in accord with the common law, which allows

an injured party to sue a tortfeasor for the full amount of damages for an indivisible injury that the tortfeasor's negligence was a substantial factor in causing, even if the concurrent negligence of others contributed to the incident." Edmonds v. Compagnie Generale Transatlantique, 443 U.S. 256, 260, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521 (1979). ... There can be little doubt that, as between the plaintiff and several wrongdoers, the plaintiff should be able to insist upon a full recovery from any tortfeasor, regardless of that tortfeasor's comparative liability."

Thus, *Edmonds* reflects "the belief that a tortfeasor should be responsible for all consequences stemming from his actions, regardless of the fortuitous circumstance that others may also have contributed to the injury." *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1125 (5th Cir. 1995); accord, *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 76 (2d Cir. 2001).

### Indivisiblity of Injury

The Barge Plaintiffs' injury is damage due to flooding of the proposed class geography. Though water from varying sources may have mixed, Barge Plaintiffs' hydrology expert, Melvin Spinks, and indeed, experts retained by other parties to this matter, agree that the Industrial Canal breached and flooded the class geography before any significant quantity of water from the MRGO came west of Paris Road. This is corroborated by countless eyewitnesses and video footage showing massive quantities of water moving eastward through Chalmette before the MRGO is said to have contributed to the flood. Regardless of timing, direction or source, water from MRGO and the Industrial Canal is indistinguishable in terms of the damage caused.

Where a fair allocation of liability cannot be made among multiple tortfeasors, the federal common law permits imposition of joint and several liability. See, e.g., Restatement (Second) of Torts § 879 (1979) ("If the tortious conduct of each of two or more persons is a legal cause of harm that cannot be apportioned, each is subject to liability for the entire harm, irrespective of whether their conduct is concurring or consecutive."). *Project Hope v. M/V IBN SINA*, 250 F.3d 67, 76 (2d

5

Cir. 2001).

The reason for this rule is that "...[c]ertain results, by their very nature, are obviously incapable of any reasonable or practical division and . . . [n]o ingenuity can suggest anything more than a purely arbitrary apportionment of such harm.  Where two or more causes combine to produce [a single loss], each may be a substantial factor in bringing about the loss, and if so, each is charged with all of it."  See *Id.* at p. 76, quoting W. Page Keeton, Prosser and Keeton on Torts § 52, at 347-48 (5th ed. 1984).  Thus, where two or more causes combine to produce [a single loss], each may be a substantial factor in bringing about the loss, and if so, each is charged with all of it.

### *Substantial Factor*

Barge Plaintiffs allege Lafarge's negligence in the breakaway of ING 4727, and further, that ING 4727 struck the eastern Industrial Canal floodwall in the two locations where the wall failed.  At the very least, the barge was a significant factor contributing to the breaches of a wall not designed to withstand the forces thus directed against it during Katrina.[4]  More likely, however, given eyewitness testimony, physical evidence obtained from the barge and floodwall, certain features of the Industrial Canal breaches, as well as expert opinion, the barge punched through the intact eastern floodwall at both locations.  Whether Lafarge's negligence and the barge's impact with the wall are substantial factors causing the Barge Plaintiffs' damage is the salient area of inquiry.

> "[T]he general rule is that a person whose negligence   is a substantial factor in the plaintiff's   indivisible injury is entirely liable even if other   factors concurred in causing the injury. Normally, the chosen tortfeasor may seek contribution from another concurrent tortfeasor. If both are already before the court — for example,

---

[4] "Analytical analysis of the barge in the IHNC indicate that the barge impact is a potential contributor to failure of a floodwall and variable draft and details of the collision are primary variables in this determination." Intragency Performance Evaluation Taskforce, *Performance Evaluation Status and Interim Results*, Part 2 of a Series, 10 March 2006; Ch. V, p. 2.

> when the plaintiff  himself is the concurrent tortfeasor or when the two  tortfeasors
> are suing each other as in a collision  case like [U.S. v.] Reliable Transfer [Co., Inc.]
> [421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975)] ..."

See *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421 (5th Cir. 1988).

In *Edmonds*, The United States Supreme Court affirmed the lower court's finding that the vessel was 20% at fault for the damage, and cast the vessel for 90% of the total liability (subject to 10% reduction for victim fault).  The Court described  the vessel's 20% fault as a "substantial factor," *Edmonds* at p. 260, though a "minor cause, " *Edmonds* at p.269.

In *Coats v. Penrod Drilling Corp.*,  5 F.3d 877 (5th Cir.1993), cert. denied, 510 U.S. 1195, 114 S.Ct. 1303, 127 L.Ed.2d 654, reh'g en banc granted, 20 F.3d 614 (5th Cir.1994), 61 F.3d 1113, 1119 (5th Cir. 1995) (*en banc),* the Fifth Circuit considered "substantial factor" inquiry. During Coats' employment with MIS, Penrod Drilling Corporation, contracted for MIS to perform pressure testing on Penrod's Rig 69.   While working for MIS, Coats lived on shore and worked on various jack-up rigs owned by different customers of MIS. The majority of Coats' work consisted of operating a hydraulically powered torque wrench used to loosen and tighten large nuts and bolts. MIS assigned Coats to perform the pressure testing for Penrod. Coats was inexperienced at this task and had to ask for assistance from Penrod personnel.   As Coats was working aboard Rig 69, Penrod's "bullplug" failed at a pressure less than it was rated to withstand, causing the fluid under pressure to erupt.   The jury found the  plaintiff to be 20% at fault for his own injury, Penrod to be 20% at fault, and Coats' employer, MIS, to be 60% at fault. Penrod appealed, assigning as erroneous the proposition that under the maritime law of joint and several liability, Penrod could be held for 80% of the judgment.  The Fifth Circuit, demonstrating approval of joint and several liability of a tortfeasor whose negligence is a substantial factor in causing the harm, affirmed.  5 F.3d 877 (5th

7

Cir.1993). The United States Supreme Court denied *certiorari*, and the Fifth Circuit, in rehearing *en banc*, affirmed.

*Moore v. M/V ANGELA*, 353 F.3d 376 (5th Cir. 2003), involved injury to a longshoreman struck by falling cargo. The Fifth Circuit addressed substantial factor inquiry to determine breach of duty under *Scindia Steam Navigation v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981):

> "In addition to establishing a duty owed by the vessel to the deceased, the plaintiff must establish that the latent defect in the crane was the "legal cause" of the accident such that it was a "substantial factor" in the injury. Donaghey v. ODECO, 974 F.2d 646, 649 (5th Cir. 1992). Therefore, to sustain liability, Moore must show that Angela had (or should have had) knowledge of a latent defect in the crane which was not, and could not have been, discovered by Stevedores and was a substantial factor in the accident."

See *Moore*, 353 F.3d at 388. Applying this rule, the Court upheld the jury's finding that the defendant should have known of the crane's latent defect:

> "The evidence supports the district court's finding that erratic motions such as jerking of the crane caused the T-bar to fall from the load. Trial testimony also supports the inference that, had Stevedores been duly warned about problems with the crane, it would have conducted its operations differently. To be a legal cause of a plaintiff's injury, breach of a Scindia duty must be a "`substantial factor' in the injury." Donaghey v. ODECO, 974 F.2d 646, 649 (5th Cir. 1992). The evidence at trial amply supports the finding that the vessel's breach of the turnover duty was a substantial factor in causing the accident and Moore's death, so that the district court did not clearly err in its finding"

*See Moore,* 353 F.3d at 383.

### *Modifications to Pure Joint and Several Liability - AmClyde v. McDermott is Inapplicable*

*Edmonds* espouses a pure joint and several apportionment scheme. Though Federal Courts have resisted at every opportunity any degradation of this longstanding maritime doctrine, the United States Supreme Court, in *AmClyde v. McDermott*, 511 U.S. 202 (1994), articulated a modified

approach to joint and several liability.[5]

> ".... Instead [referring to *Edmonds*] the Court allowed the plaintiff to collect from the shipowner the entirety of his damages, after adjusting for the plaintiff's own negligence. There is no inconsistency between that result and the rule announced in this opinion....unlike the rule in *Edmonds*, the proportionate share rule announced in this opinion applies when there has been a settlement."

See *AmClyde*, 511 U.S. at 220.

This modification has nothing to do with the Barge Plaintiffs' claims, and belies any effort by Lafarge to limit its responsibility to its proportionate share of fault.   *AmClyde* held that when a plaintiff settles with a ***jointly liable*** tortfeasor, the remaining joint tortfeasors are liable only for their proportionate share of fault.  Proportionate liability arises only when the settling tortfeasor is joint, and does not affect the long standing rule that "[j]oint and several liability applies where there has been a judgment against multiple defendants, whereas, in admiralty law, a defendant may be liable for the proportion of fault assignable to another culpable party who was not named as a defendant." ; See *Doyle v. Graske,* 8:05CV21 (Neb. 6-10-2008) (quoting *McDermott, Inc. v. AmClyde*, 511 U.S. at 221); *Matheny v. TVA*, 523 F.Supp.2d 697, 712. (U.S.D.C. M.D.Tenn. 2007).

The Fifth Circuit has articulated that the proportionate share approach only arises when the "settling" tortfeasor is jointly liable with the "nonsettling" tortfeasors, that is, were defendants are negligent in concert, under a common legal theory:

> "We find that the trial court made an implicit, if not explicit, finding that this case involved two separate torts which caused two distinct harms and tried the case accordingly. Based on our review of the briefs and the record, we agree that J.N.T. was not a joint tortfeasor with the settling defendants with respect to the casualty tried, and that no joint damages were awarded by the trial court. Because we believe

---

[5]"For a number of reasons, we are unpersuaded that Congress intended to upset a 'long-established and familiar principl[e]' of maritime law by imposing a proportionate-fault rule. Cf. *Isbrandtsen Co.* v. *Johnson*,343 U.S. 779, 783 (1952)."

9

that the trial court correctly refused to credit J.N.T. and Atlas for the amount paid in settlement of the damages incurred while the vessel was stored at Douglas Marine, we affirm."

*Westinghouse Credit Corp. v. M/V New Orleans*, 39 F.3d 553 (5th Cir. 1994).  See also *Mota v. Univ.of Texas Houston Health Science*, 261 F.3d 512, 528 - 529, fn 54 (5th Cir. 2001).

Barge Plaintiffs did not sue the United States Government, or any other entity alleged to have *garde* over any flood protection structures, or to have played a role in the evolution of the MRGO. This is of no effect on Lafarge's joint and several liability.  The legal theories of liability against these entities (i.e., Lafarge's contribution claims) have nothing to do with negligent mooring of ING 4727, or its floodwall alisions.[6]

## CONCLUSION

### *The Effect on Class Certification*

Lafarge argues for "an intense factual investigation" to insure that the class does not degenerate into a series of individual trials.  The Court's burden is actually much lower.  If Lafarge's negligence is found to be a substantial factor in causing the Barge Plaintiffs' indivisible flood damages, Lafarge is liable for the whole, regardless of the contribution of other joint tortfeasors, subject to reduction for victim fault, if any.  In absence of a common legal theory of legal liability, the United States Army Corps of Engineers and other co-defendants are not joint tortfeasors, and therefore their degree of fault is relevant only to Lafarge's contribution claims.   Lafarge is not entitled to a "proportionate share" approach, and therefore, the Court's inquiry need concern only those factors articulated in *The Atlas*, *Edmonds*, and their progeny.

---

[6]Nor do alleged  termites, vandalism or other purported causes of property damage.

January 27, 2009                        Respectfully submitted,

            /s/ Lawrence D. Wiedemann

_____                          LAWRENCE D. WIEDEMANN, (13457)
                                        KARL WIEDEMANN, (18502)
                                        KAREN WIEDEMANN, (21151)
                                        Wiedemann & Wiedemann
                                        821 Baronne Street
                                        New Orleans, Louisiana 70113
                                        Telephone: (504) 581-6180
                                        Facsimile: (504) 581-4336
                                        ldwiedeman@aol.com
                                        karenwiedemann@bellsouth.net
                                        karlwied@bellsouth.net


                                        /s/ Brian A. Gilbert
                                        BRIAN A. GILBERT (21297)
                                        Law Office of Brian A. Gilbert, P.L.C.
                                        821 Baronne Street
                                        New Orleans, Louisiana 70113
                                        Telephone: (504) 581-6180
                                        Facsimile: (504) 581-4336
                                        bgilbert@briangilbertlaw.com


                                        /s/ Patrick J. Sanders
                                        PATRICK J. SANDERS (18741)
                                        3316 Ridgelake Drive
                                        Metairie, Louisiana 70002
                                        Telephone: (504) 834-0646
                                        pistols42@aol.com

                                        /s/ Richard T. Seymour
                                        RICHARD T. SEYMOUR (D.C. Bar # 28100)
                                        Law Office of Richard T. Seymour, P.L.L.C
                                        1150 Connecticut Avenue N.W., Suite 900
                                        Washington, D.C. 20036-4129
                                        Telephone: (202) 862-4320
                                        Cell: (202) 549-1454
                                        Facsimile: (800) 805-1065 & (202) 828-4130
                                        rick@rickseymourlaw.net


                                        11

/s/ Shawn Khorrami
SHAWN KHORRAMI (CA Bar #180411)
DYLAN POLLARD (CA Bar #180306)
MATT BAILEY (CA Bar #218685)
444 S. Flower St., 33rd Floor
Los Angeles, California 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010
skhorrami@kpalawyers.com
dpollard@kpalawyers.com
mbailey@kpalawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the

CM/ECF system which send a notice of electronic filing to CM/ECF participants. I further certify

that I forwarded the foregoing document and the notice of electronic filing by facsimile, and/or E-

mail,  to non-CM/ECF participants.

New Orleans, Louisiana, this 27th  day of January, 2009.


\S\Brian A. Gilbert